**Hearing Date:  January 16, 2019 at 9:30 a.m. (Atlantic Standard Time)**
**Objection Deadline: November 16, 2018 at 5:00 p.m. (Atlantic Standard Time)**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>        Plaintiff,<br><br>v.<br><br>BETTINA WHYTE,<br><br>        as agent of | Adv. Proc. No. 17-00257 (LTS) |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE PUERTO RICO SALES TAX FINANCING
CORPORATION,

     Defendant.

**COMMONWEALTH OF PUERTO RICO'S MOTION PURSUANT TO
BANKRUPTCY RULE 9019 FOR ORDER APPROVING
SETTLEMENT BETWEEN COMMONWEALTH OF PUERTO RICO
AND PUERTO RICO SALES TAX FINANCING CORPORATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ..................................................................................................... 2

Jurisdiction and Venue .................................................................................................... 4

Background ....................................................................................................................... 4

    A.    Commencement of the Title III Cases .............................................. 4

    B.    The Commonwealth Fiscal Plan ...................................................... 5

    C.    The Mediation .................................................................................. 7

    D.    COFINA and the Issuance of Existing Securities .......................... 7

    E.    The Commonwealth-COFINA Dispute and Lex Claims Litigation .................... 13

    F.    COFINA Bondholders' Constitutional Claims Proceeding ............... 15

    G.    The Whitebox Adversary Proceeding ............................................. 16

    H.    The Ambac Action ........................................................................... 17

    I.    The Interpleader Action ................................................................... 17

    J.    The Commonwealth-COFINA Procedures Stipulation and Order ............... 19

    K.    The Commonwealth-COFINA Dispute Adversary Proceeding ............... 21

    L.    The Agreement in Principle .............................................................. 28

    M.    Disputed Funds Orders .................................................................... 29

    N.    The Plan Support Agreement ........................................................... 30

    O.    The Commonwealth-COFINA Dispute Settlement ......................... 32

    P.    The COFINA Plan of Adjustment .................................................. 35

Basis for Relief ............................................................................................................... 36

    A.    Probability of Success ...................................................................... 39

    B.    Complexity of Litigation Involved and Expense, Inconvenience and Delay
        Attending It. ..................................................................................... 42

    C.    Interest of the Creditors .................................................................... 44

Entry into the Settlement Agreement is Within the Scope of the Procedures Order ................... 47

Notice ............................................................................................................................. 51

No Prior Request ............................................................................................................ 51

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bird v. Crown Convenience (In re NWFX, Inc.)*,
    864 F.2d 588 (8th Cir. 1988) .....................................................50

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
    699 F.2d 599 (2d Cir. 1983)......................................................37

*Hill v. Burdick (In re Moorhead Corp.)*,
    2008 B.R. 87 (B.A.P. 1st Cir. 1997) .........................................37

*In re Am. Cartage, Inc.*,
    656 F.3d 82 (1st Cir. 2011)..........................................37, 44, 46

*In re C.P. del Caribe, Inc.*,
    140 B.R. 320 (Bankr. D.P.R. 1992) ..........................................38

*In re Chinichian*,
    784 F.2d 1440 (9th Cir. 1986) ...................................................50

*In re City of Detroit*,
    524 B.R. 147 (Bankr. E.D. Mich. 2014) .....................................1

*In re City of Stockton*,
    486 B.R. 194 (Bankr. E.D. Cal. 2013) ........................................1

*In re Cooper Properties Liquidating Trust, Inc.*,
    61 B.R. 531 (Bankr. W.D. Tenn. 1986).....................................50

*In re Fibercore, Inc.*,
    391 B.R. 647 (Bankr. D. Mass. 2008) ..................................40, 44

*In re Hansen*,
    2017 Bankr. LEXIS 1120 (Bankr. D.N.H. Apr. 25, 2017) .........39

*In re Healthco Int'l, Inc.*,
    136 F.3d 45 (1st Cir. 1998)...............................................37, 39

*In re Indian Motorcycle Co.*,
    289 B.R. 269 (B.A.P. 1st Cir. 2003) ...................................37, 38

*In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*,
    2009 Bankr. LEXIS 2846 (Bankr. P.R. Mar. 31, 2009) ....38, 42, 45

*In re Receivership Estate of Indian Motorcycle Mfg., Inc.*,
    299 B.R. 8 (D. Mass. 2003) ...............................................................37

*Jeffrey v. Desmond*,
    70 F.3d 183 (1st Cir. 1995) ................................................37, 38, 43

*Jeremiah v. Richardson*,
    148 F.3d 17 (1st Cir. 1998) ...............................................................37

*Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi)*,
    411 Fed. Appx. 342 (5th Cir. 2011) ..................................................39

## STATUTES

11 U.S.C. § 105 ....................................................................................50

11 U.S.C. § 105(a) ...................................................................36, 49, 50

11 U.S.C. § 105(a) ..................................................................................4

11 U.S.C. § 105(a) ................................................................................29

11 U.S.C. § 502 ................................................................................4, 36

11 U.S.C. § 503 ................................................................................4, 36

11 U.S.C. § 544(a)(1) ...........................................................................21

11 U.S.C. § 547(b) ................................................................................21

11 U.S.C. § 548(a)(1)(B) ......................................................................21

11 U.S.C. § 549(a) ................................................................................21

11 U.S.C. § 552(a) ................................................................................22

11 U.S.C. § 904 ......................................................................................1

48 U.S.C. §§ 2101-2241 ...................................................................1, 32

P.R. Act No. 101-2015 ..........................................................................11

P.R. Act No. 117-2006 ..........................................................................11

P.R. Act No. 18-2014 ............................................................................11

P.R. Act No. 56-2007 ..............................................................................7

P.R. Act No. 91-2006 ..................................................................... passim

P.R. Laws Ann. tit. 13, §§ 11(a)–16 ........................................................................7

P.R. Laws Ann. tit. 13, § 12 ...........................................................................10, 12

PROMESA § 101(b) ........................................................................................4

PROMESA § 101(d)(1) ....................................................................................4

PROMESA § 104 ..........................................................................................48

PROMESA § 104(b) ......................................................................................48

PROMESA § 104(g) ......................................................................................48

PROMESA § 104(j) ........................................................................................5

PROMESA § 204(b) ......................................................................................13

PROMESA § 204(c)(3) ..................................................................................13

PROMESA § 206 ............................................................................................5

PROMESA § 301 ..........................................................................................49

PROMESA § 301(a) ..................................................................................4, 36

PROMESA § 301(d) ......................................................................................36

PROMESA § 303 ............................................................................................4

PROMESA § 304 ............................................................................................4

PROMESA § 304(a) ........................................................................................5

PROMESA § 305 ............................................................................................1

PROMESA § 305 ............................................................................................4

PROMESA § 306(a) ....................................................................................4, 2

PROMESA § 306(d) ................................................................................16, 17

PROMESA § 307(a) ....................................................................................4, 2

PROMESA § 310 ..................................................................................1, 4, 36

PROMESA § 315 ............................................................................................4

PROMESA § 315(a) ......................................................................................49

PROMESA § 315(b) ......................................................................................................5, 32, 36, 49

PROMESA § 405................................................................................................................................7

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act,
    Act No. 21-2016.........................................................................................................................13

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9019 ............................................................................................................ passim

P.R. Const. art. VI, § 8....................................................................................................................14

To The Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this motion (the "Motion"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to this case pursuant to PROMESA section 310, for entry of an order substantially in the form attached hereto as **Exhibit A** (the "Settlement Order"), approving the terms of the global compromise and settlement (the "Settlement")[2] between the Commonwealth and the Puerto Rico Sales Tax Financing Corporation ("COFINA") resolving the Commonwealth-COFINA Dispute[3] pursuant to the terms and provisions of that certain Settlement Agreement, dated October 19, 2018, between the Oversight Board, as the Title III representative of the Commonwealth, and the COFINA Agent (as defined below), a copy of which is attached to the

---

[1]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[2]   A debtor under PROMESA Title III is not required to seek court approval of settlements pursuant to Bankruptcy Rule 9019, and by filing this Motion, the Commonwealth does not waive any argument as to whether any other settlement or compromise entered into by the Commonwealth is subject to the requirements of Bankruptcy Rule 9019. *See In re City of Stockton*, 486 B.R. 194, 195-200 (Bankr. E.D. Cal. 2013) ("11 U.S.C. § 904 gives a chapter 9 debtor freedom to decide whether to ignore or to follow the Rule 9019 compromise-approval procedure . . . ."); PROMESA § 305 (incorporating similar provisions as 11 U.S.C. § 904); *see also In re City of Detroit*, 524 B.R. 147, 198-99 (Bankr. E.D. Mich. 2014) (recognizing that "the City exercised its right under § 904 not to request Court approval of this memorandum of understanding." (citing *In re City of Stockton*, 486 B.R. 194, 199 (Bankr. E.D. Cal. 2013)).  The Commonwealth has elected to file this Motion to approve the Settlement as part of the orderly administration of the Commonwealth's Title III Case, as a condition of the Settlement Agreement, and in conjunction with the Amended and Restated Plan Support Agreement for COFINA, dated as of September 20, 2018, where the Commonwealth agreed to seek approval of the Settlement Agreement contemporaneously with the confirmation of COFINA's plan of adjustment.

[3]   The "Commonwealth-COFINA Dispute," as defined in the Procedures Order (as defined below), means the dispute relating to "[w]hether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt . . . are property of the Commonwealth or COFINA under applicable law . . . ." Procedures Order ¶ 4.

Settlement Order as Schedule 1 (the "<u>Settlement Agreement</u>").[4]  In further support of this Motion,
the Commonwealth respectfully represents as follows:

<u>**Preliminary Statement**</u>

1.      The Settlement is a watershed moment in the Title III Cases of the Commonwealth
and COFINA.  Since before the commencement of the Title III Cases, the dispute regarding
whether the Commonwealth or COFINA own the pledged sales tax revenue, which, at present,
represents approximately $783 million in annual revenues (and grows annually by 4% until it
reaches $1.85 billion in 2041), has been an overarching and gating issue that is one of the keys to
Puerto Rico's overall restructuring.  Resolution of such dispute would determine what tax revenues
might be available to the Commonwealth to address "essential services" and for debt service to
satisfy COFINA debt or to pay Commonwealth expenses.  Without a consensual resolution of the
dispute, a litigated outcome will present each side with an all-or-nothing result.  In each instance,
regardless of the winner or loser in such litigation, the byproduct would be significant delay, cost,
and uncertainty to all of Puerto Rico's stakeholders.

2.      After commencement of the Title III Cases, it was necessary to first establish
procedures among the various parties to create a structure to resolve the Commonwealth-COFINA
Dispute.  Accordingly, on August 10, 2017, the Procedures Order (as defined below) was entered,
pursuant to which the Commonwealth Agent (as defined below) and the COFINA Agent were
appointed.  Various parties to the dispute simultaneously engaged in mediation, while the dispute
continued to be litigated in the Adversary Proceeding (as defined below).  The magnitude and

---

[4]   As set forth herein, the Oversight Board believes the COFINA Agent's entry into the Settlement Agreement on
behalf of COFINA is within the authority granted to her pursuant to the Procedures Order (as defined below).
Nonetheless, if the Court determines that it is outside the scope of the order, pursuant to the Motion and set forth
more fully below, the Oversight Board requests that the COFINA Agent be granted independent authority to enter
into the Settlement Agreement on behalf of COFINA.

complexity of issues involved in the Adversary Proceeding are apparent from the nine parties allowed to intervene, and the filing of six independent cross motions for summary judgment.

3.       On June 7, 2018, the Agents announced an Agreement in Principle to resolve the Commonwealth-COFINA Dispute.  Building upon the progress and momentum of the Agreement in Principle, the Oversight Board, after weeks of participation in court-sanctioned mediation, announced on August 8, 2018 that it had reached an agreement with certain holders of Existing Securities and insurers on the economic treatment of the Existing Securities, terms of the compromise and settlement of the Commonwealth-COFINA Dispute, and terms of new COFINA securities to be incorporated into a COFINA plan of adjustment.  This was memorialized in the Original Plan Support Agreement (as defined below), which was amended and restated in the A&R Plan Support Agreement to, among other things, include holders of Existing Securities who also hold GO Bonds (as defined below) and Puerto Rico's government, as represented by AAFAF.

4.       This Motion is the culmination of over a year of negotiations and litigation regarding the Commonwealth-COFINA Dispute under the auspices of this Court's appointed mediation team,[5] and establishes an important cornerstone for the Commonwealth's Title III Case to move towards its conclusion, and towards the Commonwealth's overall economic recovery and access to the capital markets.  The terms of the Settlement are fair and reasonable in light of the complex issues and risks attendant to costly and time-consuming litigation of the Commonwealth-COFINA Dispute, and satisfy the requirements for approval under Bankruptcy Rule 9019.  At bottom, the Settlement eliminates the inherent risks, delays, expense, and uncertainty of further protracted litigation of the Commonwealth-COFINA Dispute and the inevitable appeals that could take years to resolve.  The Settlement ultimately will allow the Commonwealth's Title III Case to

---

[5] *See infra* note 18.

proceed, with the assurance that certain sales and use tax revenues will be available to partially address the needs of the Commonwealth, its citizens and its creditors  Accordingly, the Court should grant this Motion and approve the Settlement.

## Jurisdiction and Venue

5.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

6.      Venue is proper pursuant to PROMESA section 307(a).

7.      The statutory predicates for the relief sought herein are sections 303, 305 and 306(b) of PROMESA, sections 105(a), 502, and 503 of the Bankruptcy Code, made applicable to this case pursuant to section 301(a) of PROMESA, and Bankruptcy Rule 9019, made applicable to this case by section 310 of PROMESA.

## Background

### A.  Commencement of the Title III Cases

8.      On June 30, 2016, the Oversight Board was established for the Commonwealth pursuant to PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

9.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

10.      On September 30, 2016, the Oversight Board designated COFINA as a "covered territorial instrumentality" pursuant to PROMESA section 101(d)(1), making it subject to the requirements of PROMESA.

11.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Commonwealth's Title III Case").

12.     On May 5, 2017 (the "COFINA Petition Date"), the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA pursuant to PROMESA section 304(a), commencing a case under title III thereof ("COFINA's Title III Case," and together with the Commonwealth's Title III Case, the "Title III Cases").

13.     By operation of PROMESA and pursuant to section 315(b), the Oversight Board is the representative of the Commonwealth and COFINA as debtors in each of their respective Title III Cases.

14.     On June 1, 2017, the Court entered an order granting the joint administration of the Title III Cases, for procedural purposes only [Case No. 17-3283, ECF No. 242].

**B. The Commonwealth Fiscal Plan**

15.     Among its responsibilities under PROMESA, the Oversight Board is charged with working with the government of Puerto Rico to develop fiscal plans and budgets that are in compliance with the applicable PROMESA requirements for the Commonwealth and covered territorial instrumentalities. On March 13, 2017, Puerto Rico's Fiscal Agency and Financial Advisory Authority ("AAFAF"), established under Puerto Rico law to represent the interests of the government and its instrumentalities in connection with any restructuring of debts, submitted a joint fiscal plan of the Commonwealth, which included COFINA (as amended and corrected, the

"Fiscal Plan"),[6] to the Oversight Board.  On that date, the Oversight Board certified the Fiscal Plan subject to certain amendments.

16.      Promptly after certification of the Fiscal Plan, the Oversight Board and the Commonwealth undertook a joint effort to formulate restructuring proposals for all major creditors based on the debt sustainability analysis in the Fiscal Plan.  However, the determination of which funds were available to service COFINA's debt and the Commonwealth's debt was dependent upon which entity, the Commonwealth or COFINA, owns the portion of the Commonwealth's general sales and use tax (the "SUT") that was transferred to COFINA pursuant to Act 91 (as defined below).  The Resolution (as defined below) states that the SUT was pledged by COFINA to secure the COFINA bonds.  The amount at issue is significant—approximately $783 million in the current fiscal year alone,[7] which amount grows at four percent (4%) annually until it reaches $1.85 billion in fiscal year 2041 and remains fixed at that amount until COFINA's bonds are repaid in accordance with their terms (the "Pledged Sales Tax Base Amount").  Under the Fiscal Plan, this would result in many billions of funds over the next forty (40) years.  Therefore, if the Pledged Sales Taxes (as defined below) were property of COFINA, the Commonwealth would have $783 million less in fiscal year 2019 (which annual amount would increase over time) to pay its liabilities and expenses; if the Pledged Sales Taxes were property of the Commonwealth, then the Oversight Board believes there may not be any funds available to pay COFINA's debt.[8]

---

[6]   The Fiscal Plan has evolved over the past nineteen (19) months based upon a multitude of factors, including the devastation caused by Hurricanes Irma and Maria and the resulting effect upon Puerto Rico and its inhabitants. A separate fiscal plan for COFINA was certified on October 18, 2018, and the Fiscal Plan for the Commonwealth will continue to evolve and as more data is collected and additional modifications to Puerto Rico and its economy occur.

[7]   *See* COFINA Fiscal Plan, as Certified by the Financial Oversight and Management Board for Puerto Rico, Oct. 18, 2018, at 23, *available at* http://oversightboard.pr.gov/COFINAFP.

[8]   The Oversight Board believes that the COFINA Agent may take a different position, and some COFINA creditors assert that, if they do not in fact have a lien on the Pledged Sales Taxes, they would have claims against the Commonwealth.  COFINA and significant COFINA bondholders filed billions of dollars of proofs of claim against

Accordingly, resolution of the Commonwealth-COFINA Dispute is a key gating issue for formulating restructuring plans for both the Commonwealth and COFINA.

### C.  The Mediation

17.     In March 2017, prior to the commencement of the Title III Cases, the Oversight Board and AAFAF requested that holders of GO Debt and Existing Securities (as those terms are defined below) participate in mediation with the Oversight Board and AAFAF in an attempt to, among other things, resolve the Commonwealth-COFINA Dispute.  The mediation began on April 13, 2017, under the auspices of former Bankruptcy Judge Allan Gropper, who was nominated by a plurality of creditors.  Despite several mediation sessions and other private negotiations, no agreement was reached before the expiration of the pre-Title III stay provided in PROMESA section 405 on May 1, 2017.  After competing bondholder groups commenced litigation against the Commonwealth and COFINA, it became clear that the best path forward was to file the Title III Cases for the Commonwealth and COFINA in an effort to afford the two debtors additional breathing room by extending the automatic stay to protect Puerto Rico and its citizens, as well as the respective rights and interests of creditors by avoiding a race to the courthouse, and ensure equitable and fair treatment of similarly situated creditors.

### D.  COFINA and the Issuance of Existing Securities[9]

18.     _Issuance of Existing Securities_.  COFINA is a statutory instrumentality of the Commonwealth created by Act No. 56-2007, 2007 P.R. Laws 173 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11(a)–16) (as amended, "Act 56") as an independent corporation attached to

---

the Commonwealth in respect of COFINA bonds.  All such claims against the Commonwealth will be released if the settlement described in this Motion and the Settlement Agreement is approved.

[9]   This section is qualified in its entirety by reference to the legislation cited herein or otherwise governing COFINA and/or any pledged taxes.

the Government Development Bank (the "GDB"), for the purpose of financing the payment, retirement, or defeasance of certain debt obligations of the Commonwealth outstanding as of June 30, 2006.

19.     COFINA issued bonds pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended and restated on June 10, 2009 (as amended and supplemented, the "Resolution").[10]   COFINA bonds can be grouped into the following tranches: (i) Senior Current Interest Bonds; (ii) Senior Capital Appreciation Bonds; (iii) Subordinate Current Interest Bonds; and (iv) Subordinate Capital Appreciation Bonds (as such terms are defined in the Resolution[11]) (collectively, the "Existing Securities").   Pursuant to the Resolution, Bank of New York Mellon ("BNYM") acts as trustee for the Existing Securities.   A chart of each series of Existing Securities, corresponding supplements to the Resolution, and principal amounts is attached hereto as **Exhibit B**.

20.     The Senior Current Interest Bonds and Senior Capital Appreciation Bonds were issued between 2007 and 2011 (the "Senior Bonds"), bear interest rates between 3.80% and 6.35% and were scheduled to mature between August 1, 2036 and August 1, 2057.   The Senior Capital Appreciation Bonds do not pay interest on a current basis, but rather, accrete interest until maturity, when the entire compounded amount becomes due and payable.   As of the day prior to the COFINA Petition Date, there was approximately $7.761 billion aggregate principal amount of the Senior Bonds outstanding, consisting of $4.048 billion aggregate principal amount of Senior Current Interest Bonds, and $3.713 billion aggregate principal amount of Senior Capital

---

[10]   A copy of the Resolution is attached as Exhibit A to the *Declaration of Jeffrey W. Levitan in Support of the Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation*, filed concurrently with this Motion (the "Levitan Declaration").

[11]   Section 101 of the Resolution defines "Capital Appreciation Bonds," "Current Interest Bonds," "Senior Bonds," and "Subordinate Bonds."

Appreciation Bonds.  Approximately $2.4 billion of Senior Bonds are insured by Ambac Assurance Corp. ("Ambac") or National Public Finance Guarantee Corporation ("National").

21.    The Subordinate Current Interest Bonds and Subordinate Capital Appreciation Bonds were issued between 2009 and 2011 (the "Subordinate Bonds"), bear interest rates between 3.38% and 7.48% and were scheduled to mature between August 1, 2036 and August 1, 2050. Similar to the Senior Capital Appreciation Bonds, the Subordinate Capital Appreciation Bonds do not pay interest on a current basis, but rather accrete interest until maturity, when the entire compounded amount is due.  As of the day prior to the COFINA Petition Date, there was approximately $9.876 billion aggregate principal amount of the Subordinate Bonds outstanding, consisting of $7.492 billion aggregate principal amount of Subordinate Current Interest Bonds, and $2.384 billion Compounded Amount (as defined in the Resolution) of Subordinate Capital Appreciation Bonds.  Approximately $271,238,000, in the aggregate, of the Subordinate Bonds are insured by Assured Guaranty Municipal Corp. ("Assured"), with approximately $21,000,000.00 having been insured in the secondary market.

22.    *Security for Existing Securities*.  The Resolution states that the Existing Securities do not have recourse to the Commonwealth or any of its other instrumentalities, and are payable solely from, and secured by, a security interest granted under Act 91 (as defined below) and the Resolution in the Pledged Property (as defined in the Resolution). The pledged property consists of (i) all "Revenues" (as defined in the Resolution and discussed below), and all right, title and interest of COFINA in and to the Revenues and all rights to receive the same, (ii) the funds, accounts and subaccounts held by BNYM (subject in each case to certain limited exceptions), and certain other moneys, securities and cash equivalents from time to time held by BNYM pursuant to the terms of the Resolution, (iii) any and all other rights and property of every kind and nature

from time to time pledged by COFINA to BNYM in accordance with the Resolution as and for additional security for the Existing Securities, and (iv) any and all cash and non-cash proceeds, products, offspring, rents, and profits from any of the Pledged Property described in clauses (i) through (iii) above, including those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of any of the foregoing.  Resolution § 101 (definition of "Pledged Property").

23.     The Resolution also provides that "Revenues" consists of all the sales and use tax pledged by COFINA to secure debt that is received by COFINA or BNYM and other revenues, fees, charges, surcharges, rents, proceeds or other income and receipts received by or on behalf of COFINA or by BNYM, lawfully available for the purposes of the Resolution and deposited by or on behalf of COFINA or by BNYM in any fund, account or subaccount held by BNYM (subject in each case to certain limited exceptions).  Resolution § 101 (definition of "Revenues"). COFINA's annual share of the SUT is collected from first revenues of the SUT and is the greater of (i) the Pledged Sales Tax Base Amount (which is currently approximately $783 million, and grows at four percent (4%) per annum), or (ii) the product of the amount of SUT collected that is shared between the Commonwealth and COFINA multiplied by a fraction, the numerator of which is 2.75% and the denominator of which is 5.5%.  *See* Act of May 13, 2006, No. 91-2006, 2006 P.R. Laws 246 *et seq.* (codified as amended at P.R. Laws Ann. tit. 13, § 12) (as amended, "Act 91"), Article 3(a)(i).  Currently, the Pledged Sales Tax Base Amount exceeds the 2.75% portion of the SUT because Puerto Rico's economic activity, population growth, and collections of SUT have not grown at the annual 4% growth rate set forth at the time the COFINA bonds were issued.[12]

---

[12] *See* Financial Information and Operating Data Report (Dec. 18, 2016), at 91, *available at* http://www.gdb.pr.gov/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf.

24. _Flow of Commonwealth SUT Revenues_.  Pursuant to Act 117-2006, approved July 4, 2006, the Commonwealth imposed for the first time a general tax on the sales and use of a broad range of goods and services in Puerto Rico at a rate of 5.5% and authorized its municipalities to impose an additional separate rate of 1.5% (the sales and use tax revenues at the 5.5% rate, the "Dedicated Sales Taxes" or "SUT Revenues," and the portion of the Dedicated Sales Taxes allocated to COFINA, the "Pledged Sales Taxes").  On July 1, 2015, the Commonwealth further imposed a 4.5% sales and use tax surcharge.  Based upon the foregoing increases, the total SUT in Puerto Rico (allocated among the Commonwealth, municipalities, and COFINA) was increased to, and remains at 11.5%.[13]

25. Each month, merchants and retailers are required to file sales tax returns and pay all SUT revenues collected during the prior month (including the Dedicated Sales Tax revenues) to Banco Popular de Puerto Rico ("Banco Popular") or such other agent designated by the Secretary of the Treasury of Puerto Rico.  Banco Popular is required to transfer all SUT revenues (including the Dedicated Sales Taxes) to a joint collection account (the "Sales Tax Account") in the name of COFINA and the Government Development Bank.[14]  Once the moneys are deposited in the Sales Tax Account, Banco Popular then transfers, on a daily basis (with a 2-day delay), to the account established pursuant to Act 91 (the "Dedicated Sales Tax Fund") and held at Banco Popular's Trust Department in the name of COFINA.  Act 91 provides that the Dedicated Sales Tax Fund, all funds deposited in the Dedicated Sales Tax Fund, and all future funds that must be

---

[13] _See_ Act of Jan. 24, 2014, No. 18-2014, art. 4, § 6080.14, 2014 P.R. Laws 12. The total SUT is divided as follows: (I) a 4.5% portion of the SUT is paid to the Commonwealth pursuant to Act of July 1, 2015, No. 101-2015, sec. 6, § 4210.01(b); (II) a 6% portion of the SUT is divided between the Commonwealth, municipalities, and COFINA pursuant to Act of Jan. 24, 2014, No. 18-2014, art. 2–3, 2014 P.R. Laws 12; and (III) a 1% portion of the SUT goes directly to Puerto Rico's municipalities pursuant to Act of Jan. 24, 2014, No. 18-2014, art. 4, § 6080.14, 2014 P.R. Laws 12.

[14] The Oversight Board is advised that certain large taxpayers are required to file tax returns and pay twice monthly.

deposited into the Dedicated Sales Tax Fund pursuant to the provisions of Act 91, are "the property of COFINA." P.R. Laws Ann. tit. 13, § 12.

26. Commencing with the beginning of each Commonwealth fiscal year, which year begins on July 1 (the "Fiscal Year"), Banco Popular transfers on a daily basis all moneys on deposit in the Dedicated Sales Tax Fund to an account (the "Revenue Account") that also is owned by COFINA and held at BNYM until an amount equal to the Pledged Sales Tax Base Amount has been deposited therein. Thereafter, all Dedicated Sales Tax revenues collected in such Fiscal Year are distributed to the Puerto Rico Treasury Department for general use by the Commonwealth until the Commonwealth also has received an amount equal to the Pledged Sales Tax Base Amount. The Resolution provides that, once such amount has been obtained, one-half of all Dedicated Sales Tax revenues collected is transferred to the Revenue Account to serve as collateral for the Existing Securities and the other half is transferred to the Treasury Department for use by the Commonwealth.

27. On the last business day of each calendar month, amounts deposited in the Revenue Account are transferred to certain debt service accounts and debt service reserve accounts established for the Existing Securities until each debt service account holds sufficient funds to make principal and interest payments for the next 12-month period (or 15-month period for bonds that pay debt service quarterly or monthly) and each debt service reserve account holds an amount calculated under the applicable supplemental resolution adopted by COFINA with respect to each series of Existing Securities issued. The funds transferred to the debt service accounts are then allocated to a principal subaccount, an interest subaccount, and a holding subaccount (collectively, with the Revenue Account, the debt service accounts, and the debt service reserve accounts, the "Project Accounts"). Payments on the Existing Securities are made from the principal and interest

12

subaccounts. The Project Accounts are accounts of COFINA that are maintained by BNYM and are subject to the lien of the holders of Existing Securities.

### E.  The Commonwealth-COFINA Dispute and Lex Claims Litigation

28.     The Commonwealth has issued or guaranteed approximately $17.8 billion in general obligation bond indebtedness (the "GO Debt").  The GO Debt falls into two categories: (i) the Commonwealth's general obligation bonds, which bonds were issued by the Commonwealth and are backed by a pledge of the Commonwealth's good faith, credit, and taxing power (the "GO Bonds") ; and (ii) bonds issued by certain of the Commonwealth's public corporations, which bonds are guaranteed by the same pledge of the Commonwealth's good faith, credit, and taxing power.

29.     On July 20, 2016, certain holders of GO Bonds filed a complaint in the U.S. District Court for the District of Puerto Rico against the Governor, Secretary of Treasury, and Office of Management and Budget Director seeking (a) declaratory relief that the *Puerto Rico Emergency Moratorium and Financial Rehabilitation Act*, Act 21-2016 ("Act 21"), which authorized the Governor to, among other things, declare a temporary moratorium on debt service payments and stay creditor remedies, and an executive order issued pursuant to Act 21 announcing a moratorium on the Commonwealth's general obligations bonds, are preempted by PROMESA section 204(c)(3), and (b) an injunction to prevent certain measures taken by the government permitting transfers outside of the ordinary course.  *Lex Claims, LLC v. Garcia-Padilla*; District Court, District of Puerto Rico, July 20, 2016, Case No. 16-2374-FAB (the "Lex Claims Litigation").  On November 4, 2016, the plaintiffs filed a second amended complaint adding new causes of action, including three causes of action relating to COFINA, and adding COFINA and other parties as defendants.  On December 16, 2016, COFINA filed an answer to the second amended complaint

13

generally denying the allegations and asserting various affirmative defenses.  Certain COFINA
bondholders who intervened in the Lex Claims Litigation also filed answers generally denying the
allegations and asserting various defenses and counter- and cross-claims.

30.     Plaintiffs in the Lex Claims Litigation argue, among other things, that the
Commonwealth Constitution requires the Commonwealth to pay the GO Debt ahead of any other
expenditure.  Lex Claims Litigation, ECF No. 78, at 4.  They claim that, pursuant to Article VI,
Section 8 of the Commonwealth Constitution, if Puerto Rico's "available resources" are
insufficient to meet all its appropriations, "interest on the public debt and amortization thereof
shall first be paid, and other disbursements shall thereafter be made in accordance with the order
of priorities established by law."  P.R. Const. art. VI, § 8.  They allege the Pledged Sales Taxes
are an "available resource" and COFINA was created and has issued bonds in an attempt to evade
the claim of holders of GO Debt on available resources and related constitutional limitations on
the quantity of public debt the Commonwealth was permitted to issue.  Lex Claims Litigation,
ECF No. 78, at 7.  Plaintiffs requested two declaratory judgments that challenge the legal validity
of COFINA: (1) a declaration that the Pledged Sales Taxes constitute "available resources" and
that such funds cannot be deposited with COFINA or its bondholders; and (2) a declaration that
the Commonwealth is obligated to afford the GO Debt absolute priority, including priority over
required deposits with COFINA and its bondholders.

31.     Holders and insurers of Existing Securities, permitted to intervene in the Lex
Claims Litigation, asserted that the Pledged Sales Taxes were legislatively rendered property of
COFINA from their inception, thereby eliminating any possibility the taxes may be property or
available resources of the Commonwealth.  Lex Claims Litigation, ECF No. 232, at 30.  Such
holders and insurers rely upon Act 91 providing the Pledged Sales Taxes "shall [not] constitute

14

available resources of the Commonwealth of Puerto Rico nor be available for the use of the Secretary." Act 91 § 2. They further asserted that the question whether COFINA's property constitutes available resources should be certified to the Supreme Court of Puerto Rico because, in their view, its resolution would involve a pure and undecided issue of Puerto Rico Constitutional law that would have long-lasting consequences for the Commonwealth. They asserted that COFINA is essential in permitting Puerto Rico to access the capital markets on favorable terms, and likewise that the plaintiffs in the Lex Claims Litigation were able to extract higher interest payments precisely because COFINA's property was not available to repay them. Lex Claims Litigation, ECF No. 232, at 2, 24-25.

32.     Prior to the commencement of COFINA's Title III Case, certain defendants, including the Governor, Secretary of Treasury, and Office of Management and Budget Director,[15] responded to the second amended complaint by filing a notice of automatic stay, arguing that the holders of GO Debt conceded that the bulk of their claims were temporarily stayed by PROMESA and therefore the entire case should be stayed to avoid piecemeal litigation that would contravene the purposes of PROMESA. Lex Claims Litigation, ECF No. 84, at 2, 17-18. On May 17, 2017, following the commencement of COFINA's Title III Case, the District Court entered an order staying the Lex Claims Litigation. Lex Claims Litigation, ECF No. 280.

### F.  COFINA Bondholders' Constitutional Claims Proceeding

33.     On May 2, 2017, a group of holders of COFINA Senior Bonds initiated an action (the "COFINA Bondholders' Action") in the U.S. District Court for the District of Puerto Rico claiming, among other things, that the expansion of AAFAF's powers under Act 2 of 2017 to give it exclusive authority to bind COFINA in matters relating to restructuring the Commonwealth's

---

[15] COFINA joined in the notice of automatic stay.  Lex Claims Litigation, ECF No. 163, at 3.

outstanding debts, its proposal of the March 13, 2017 Fiscal Plan that provided for the commingling of COFINA's Pledged Sales Taxes and debt service with the Commonwealth's assets and liabilities, and the Legislative Assembly's enactment of House Bill 938 (the "Fiscal Plan Act") which purported to "take the necessary measures" to comply with the Fiscal Plan were unlawful and unconstitutional impairments to the COFINA bondholders' property and contractual rights. *Rodríguez Perelló v. Roselló Nevares*, Case No. 3:17-cv-1566-FAB (D.P.R. May 2, 2017), ECF No. 1. The plaintiffs therefore sought declaratory judgment that the defendants, including the Governor, AAFAF, COFINA, the GDB, and related individuals had breached their constitutional, statutory, and contractual obligations to COFINA bondholders. On May 17, 2017, following the commencement of COFINA's Title III Case, the District Court entered an order staying the COFINA Bondholders' Action.

### G. The Whitebox Adversary Proceeding

34.     Pursuant to a complaint, dated April 12, 2017, Whitebox Multi-Strategy Partners, L.P. initiated an action (the "Whitebox Action") in the Supreme Court of New York claiming BNYM, as the trustee for the Existing Securities, failed to investigate and enforce alleged events of default relating to the Existing Securities. On May 18, 2017, BNYM removed the Whitebox Action to the United States District Court for the Southern District of New York (the "SDNY Court") pursuant to PROMESA section 306(d). *Whitebox Multi-Strategy Partners, L.P. v. The Bank of New York Mellon*, Case No. 17-3750-LTS (S.D.N.Y. May 18, 2017). On May 23, 2017, the SDNY Court transferred the Whitebox Action to this Court. *Whitebox Multi-Strategy Partners, L.P., et al. v. The Bank of New York Mellon*, Adv. Proc. No. 17-00143, ECF No. 7. Pursuant to the Interpleader Order (as defined below), the Court stayed the Whitebox Action before any answer or other responsive pleading to the complaint was filed. Whitebox Action, ECF No. 10.

### H.  The Ambac Action

35.    On May 2, 2017, Ambac Assurance Corporation ("Ambac") initiated an action (the "Ambac Action") in the Supreme Court of New York claiming BNYM, as the trustee for the Existing Securities, failed to protect the holders of Ambac-insured Existing Securities, failed to enforce alleged events of default relating to the Existing Securities, despite repeated requests from Ambac and holders of Existing Securities, and in doing so, breached its contractual, fiduciary, and other duties to Ambac and holders of Existing Securities.  On May 19, 2017, BNYM removed the Ambac Action to the SDNY Court pursuant to PROMESA section 306(d).  On May 24, 2017, BNYM filed a motion to transfer the Ambac Action to this Court.  *Ambac Assurance Corp. v. Bank of New York Mellon*, Case No. 17-3804-LTS, ECF No. 10 (S.D.N.Y. May 24, 2017).  Before briefing on the motion to transfer the Ambac Action to this Court, the Ambac Action was stayed pursuant to the Interpleader Order (as defined below).

### I.  The Interpleader Action

36.    On May 16, 2017, BNYM, as the trustee for the Existing Securities, filed an interpleader action in this Court[16] to determine certain parties' respective rights and interests to funds generated from the Pledged Sales Taxes held, or to be deposited in BNYM's accounts (the "Disputed Funds").[17]  Through the Interpleader Action, parties in interest asserted claims to the Disputed Funds based on, among other things, the existence or non-existence of an uncured default arising from certain actions of the Commonwealth and COFINA, including the passage of the

---

[16]   *Bank of New York Mellon v. COFINA, et al.*, Adv. Proc. No. 17-00133 (the "Interpleader Action").

[17]   The Disputed Funds include the funds on deposit prior to July 1, 2018 in the debt service, reserve and such other accounts and including earnings thereon held by BNYM, as the trustee for the Existing Securities, for the benefit of the bondholders.  As summarized below, the Commonwealth-COFINA Settlement provides for the distribution of the Disputed Funds.

Fiscal Plan Act purportedly enabling the Governor to use Pledged Sales Taxes to cover deficiencies in the Commonwealth's cash flow.

37.     On May 30, 2017, this Court granted the interpleader request and ordered that the Disputed Funds remain in trust and that no distributions be made until the Court issues a final ruling in the Interpleader Action.  Interpleader Action, ECF No. 110 (the "Interpleader Order"). Additionally, the Court stayed all actions, claims, and proceedings in any court or tribunal which relate to or would have an effect upon the Disputed Funds, including the Whitebox Action and the Ambac Action.  A similar order was entered in the Whitebox and Ambac Actions.

38.     From June to September 2017, several parties, including BNYM and certain creditors, served document requests and deposition subpoenas on various Puerto Rico Government entities, affiliates, and officials, including COFINA, the Government Development Bank for Puerto Rico, the Commonwealth, AAFAF, and the Oversight Board. The subpoenaed entities and individuals produced documents, depositions were taken of Banco Popular, and AAFAF, COFINA, the Commonwealth, and the Oversight Board each stipulated to binding statements of facts in lieu of depositions.  Interpleader Action, ECF Nos. 415, 420.

39.     On July 6 and August 1, 2017, the Court denied intervention motions brought by, respectively, the Ad Hoc Group of GO Bondholders and the statutory committee of unsecured claimholders appointed by the United States Trustee on June 15, 2017 (the "Committee"). Interpleader Action, ECF Nos. 276, 301.

40.     On November 6, 2017, several parties and parties in interest, including BNYM and certain creditors, filed motions for summary judgment.  Interpleader Action, ECF Nos. 430, 431, 433, 434, 435, 436, 439, 440.

41.     Briefing on the summary judgment motions was completed on January 5, 2018.  On September 27, 2018, the Court, *sua sponte,* entered an order terminating the pending summary judgment motions without prejudice to restoration of such motions on or after October 1, 2018. Interpleader Action, ECF No. 518.

### J.   The Commonwealth-COFINA Procedures Stipulation and Order

42.     In light of the disputes regarding ownership of the Pledged Sales Taxes, on June 10, 2017, the Oversight Board filed the *Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (the "Commonwealth-COFINA Dispute Procedures Motion") [ECF No. 303] to authorize a procedure to resolve the Commonwealth-COFINA Dispute in furtherance of fulfilling its responsibilities under PROMESA.

43.     On June 28, 2017 (the "Hearing"), the Court denied the Commonwealth-COFINA Dispute Procedures Motion, without prejudice, but (a) requested that the Oversight Board seek the agreement of all interested parties to a procedure for resolving the Commonwealth-COFINA Dispute through confidential mediation with Chief Bankruptcy Judge Barbara Houser of the Northern District of Texas,[18] and (b) authorized the Oversight Board to file a revised motion with or without unanimous support of interested parties.  Following the Hearing, the Oversight Board worked with Chief Bankruptcy Judge Houser and creditors to formulate procedures agreeable to the interested parties. On July 21, 2017, the Oversight Board filed the *Revised Motion of Debtors for Order Approving Stipulation Providing Procedure to Resolve Commonwealth-COFINA*

---

[18]   On June 23, 2017, the Court entered the *Order Appointing Mediation Team* [ECF No. 430] "to further the goal of the successful, consensual resolution of the issues raised in these debt adjustment proceedings." The members of the mediation team currently include: (1) Judge Barbara Houser (Bankr. N.D. Tex.); (2) Judge Thomas Ambro (3d. Cir.); (3) Judge Nancy Atlas (S.D. Tex.); (4) Judge Victor Marrero (S.D.N.Y.); and (5) Judge Roberta Colton (Bankr. M.D. Fla.).  Following the entry of the Procedures Order, the Agents along with certain creditor parties engaged in confidential mediation led by Chief Bankruptcy Judge Barbara Houser.

*Dispute* [ECF No. 718] seeking approval of a stipulation establishing a protocol to address the Commonwealth-COFINA Dispute, including appointing an agent for the Oversight Board as debtor representative for the Commonwealth and an agent for the Oversight Board as debtor representative for COFINA to litigate, mediate, and/or settle the Commonwealth-COFINA Dispute, and providing a procedure and timeline for the Agents to consult with creditors and their respective debtors.

44.     On August 10, 2017, the Court entered the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [ECF No. 996] (the "Procedures Order"), which provides, among other things, that (a) the Oversight Board, as representative of the Commonwealth in its Title III case, authorized the Committee to serve as the Commonwealth representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of the Commonwealth (the "Commonwealth Agent"); and (b) the Oversight Board, as representative of COFINA in its Title III case, authorized Bettina Whyte to serve as the COFINA representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA (the "COFINA Agent" and together with the Commonwealth Agent, the "Agents").  The Procedures Order also expressly acknowledges that the Oversight Board retains its authority to separately develop a settlement of the Commonwealth-COFINA Dispute and propose plans of adjustment for the Commonwealth and COFINA.  Specifically, the Procedures Order provides that "the Oversight Board shall remain the only party authorized by PROMESA to propose a title III plan of adjustment, **and to carry out that power and duty, the Oversight Board may, at any time, propose title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of the Commonwealth-COFINA Dispute developed by the Agents or developed by the Oversight Board, and the Oversight Board may negotiate and mediate with creditors**

**to achieve such settlement of the Commonwealth-COFINA Dispute . . . .**" Procedures Order ¶ 4(n) (emphasis added).

45.     The Procedures Order further provides that "[i]f the Oversight Board determines it is impracticable to schedule a timely confirmation hearing on a Commonwealth plan of adjustment embodying the proposed settlement negotiated by the Agents, then any proposed settlement negotiated by the Agents that can be implemented by the Commonwealth independently of a plan of adjustment (*e.g.*, a settlement that allocates the Pledged Sales Taxes between COFINA and the Commonwealth, but does not provide for how the Commonwealth will distribute such assets to creditors), may be submitted for this Court's approval with respect to the Commonwealth only by the Commonwealth Agent or the Oversight Board." Procedures Order ¶ 4(j).

### K. The Commonwealth-COFINA Dispute Adversary Proceeding

46.     On September 8, 2017, the Commonwealth Agent commenced an adversary proceeding[19] to prosecute the Commonwealth-COFINA Dispute, and, in its complaint (the "Complaint"), sought declaratory judgments that, among other things, (a) Act 91 did not transfer present ownership of future SUT revenues to COFINA; (b) Act 91 did not assign to COFINA any "right to receive" future SUT revenues; (c) the transfer language in Act 91 was, at most, an unsecured promise of a future transfer that can be breached or otherwise rejected in Title III; (d) COFINA has no enforceable security interest in future SUT revenues; (e) any unperfected security interest in SUT revenues is avoidable under sections 544(a)(1) and 547(b) of the Bankruptcy Code; (f) in the event that any security interest is not avoidable under section 544(a)(1) or section 547(b) any transfer made within two years of the petition date is still avoidable as a fraudulent transfer pursuant to section 548(a)(1)(B); (g) any post-petition transfer is avoidable under section 549(a);

---

[19]  *Official Committee of Unsecured Creditors v. Whyte*, Adv. Proc. No. 17-00257 (the "Adversary Proceeding").

(h) any security interest held by COFINA is subordinate to rights of the Oversight Board acting as trustee/lien creditor; (i) any security interest was "cut off" by the commencement of the Title III case pursuant to section 552(a), as post-petition SUT revenues are after-acquired property; (j) any non-UCC post-petition transfers are avoidable because they were incomplete at the time the Title III petition was filed; (k) any post-petition transfer of SUT revenues to non-Commonwealth entities violates the automatic stay; (l) Act 91 is unconstitutional because it evades the debt provisions of the Commonwealth Constitution; and (m) the COFINA structure is unconstitutional because Act 91 was enacted in violation of the balanced budget clause of the Commonwealth Constitution.  Adversary Proceeding, ECF No. 1.

47.     The Commonwealth Agent asserted in its Complaint that the Pledged Sales Taxes are property of the Commonwealth because (a) the COFINA enabling legislation (including Act 91) did not grant COFINA a right to future revenues, merely an unsecured promise that such revenues would be transferred to COFINA in the future and, even if there were a security interest, it is unperfected and therefore avoidable under Title III and the Bankruptcy Code, and (b) the COFINA structure is unconstitutional because the result of the enabling legislation was to violate the debt limit, priority of payment to public debtholders, and balanced budget provisions of the Commonwealth Constitution.  Adversary Proceeding, ECF No. 1.

48.     On September 15, 2017, the COFINA Agent filed her answer to the Complaint (as amended on October 30, 2017, the "Answer and Counterclaims"), vigorously disputing the Commonwealth Agent's claims, asserting various counterclaims, and seeking declaratory judgments that, among other things: (a) the COFINA enabling legislation is constitutional and thereby made the Pledged Sales Taxes transferred to COFINA and the fund into which it was deposited property of COFINA and not "available resources" of the Commonwealth, or in the

22

alternative, COFINA has a perfected unavoidable lien in the Pledged Sales Taxes; (b) the Commonwealth's misappropriation of the Pledged Sales Taxes and COFINA's account violates the United States and Commonwealth Constitutions; (c) the Fiscal Plan Act violates PROMESA; (d) Act No. 84-2016, which purportedly amended the COFINA enabling legislation to decrease the amount of first revenues of the SUT that COFINA receives from 6% to 5.5%, violates PROMESA, and COFINA is entitled to 6% of the first revenues of the SUT until the Pledged Sales Tax Base Amount is reached each year; (e) the Resolution constitutes a contract among COFINA, BNYM and the COFINA creditors, and the Commonwealth committed tortious interference with respect to such contract; (f) to the extent the Commonwealth prevails on its theories that the COFINA structure violates the Commonwealth's Constitution, the Commonwealth fraudulently induced COFINA creditors to invest in COFINA bonds; and (g) any non-COFINA debt, including GO Bonds, issued in violation of the debt limit provisions in the Commonwealth Constitution are not entitled to priority under the Commonwealth Constitution's debt priority provisions. Adversary Proceeding, ECF No. 27.

49.    The COFINA Agent's Answer and Counterclaims also sought injunctive relief, including that: (y) the Court impose a constructive trust in COFINA's favor over the Pledged Sales Taxes in order to prevent the Commonwealth's alleged tortious interference and fraud with respect to such revenues; and (z) the Court enter an order permanently enjoining the Commonwealth from, among other things, diverting or transferring the Pledged Sales Taxes away from COFINA, designating such revenues as "available resources," and taking any action to breach, revoke or reject the transfer of such revenues to COFINA or to otherwise interfere with COFINA's rights to such revenues. *Id.*

50.     In addition to the claims asserted by the Commonwealth Agent and the COFINA Agent, multiple groups of COFINA and GO Debt bondholders, as well as other parties that had been permitted to intervene in the Adversary Proceeding, filed counterclaims and cross-claims regarding ownership of the Pledged Sales Taxes.  Adversary Proceeding, ECF Nos. 88, 90, 94.

51.     On December 21, 2017, the Court entered an order dismissing, without prejudice, several of the Commonwealth Agent's and the COFINA Agent's claims and counterclaims as outside the scope of the Commonwealth-COFINA Dispute, as well as several claims asserted by the intervening parties (the "Dismissed Claims").  Adversary Proceeding, ECF No. 167 (the "Scope Order").  The Court found that the scope of the dispute, as defined in the Procedures Order, is confined to whether the Commonwealth or COFINA owns the Pledged Sales Taxes.  The Dismissed Claims, the Court found, were outside the scope of the Commonwealth-COFINA Dispute because they presumed either the Commonwealth or COFINA's ownership of the Pledged Sales Taxes or addressed other issues that were not antecedent to the ownership question.

52.     Following the Court's order and subsequent order permitting the Commonwealth to amend its Complaint, the remaining claims asserted by the Commonwealth Agent are that (a) Act 91 did not transfer present ownership of future SUT revenues to COFINA, (b) Act 91 did not assign to COFINA any right to receive future SUT revenues, and (c) the COFINA enabling act was designed to, and did, violate the debt and balanced budget provisions of the Commonwealth Constitution.  The remaining claims asserted by the COFINA Agent are that the COFINA enabling legislation is constitutional and the Pledged Sales Taxes and Dedicated Sales Tax Fund are COFINA's property.

53.     On February 1, 2018, the Oversight Board and the Agents filed a joint motion seeking to expand the authority, and the coverage of orders relating to immunity protection and

compensation of the Agents and their professionals, in connection with the mediation of the Dismissed Claims, Adversary Proceeding, ECF No. 274, which the Court granted pursuant to an order entered on February 10, 2018, Adversary Proceeding, ECF No. 284.

54.      On February 21, 2018, the Agents and several of the intervening parties filed cross-motions for summary judgment.  The Commonwealth Agent asserted that (a) Act 91 did not transfer to COFINA a present property interest in potential future tax revenues because no such property exists to be transferred; (b) there was no "true sale" of future tax revenues to COFINA because the Commonwealth retained the power to substitute, reduce, or even eliminate those revenues, and the Commonwealth and COFINA both accounted for the transaction in question as a "collateralized borrowing" by the Commonwealth rather than a "sale" of revenues to COFINA; (c) Act 91 did not transfer to COFINA the Commonwealth's "right to receive" future tax revenues because the Act says nothing to that effect, and the Commonwealth has no "right to receive" tax revenues until a taxable transaction occurs; and (d) Act 91 and the purported SUT revenue transfer are unconstitutional because the Legislative Assembly cannot create financing structures that operate as an evasion of the debt and balanced budget provisions of the Commonwealth Constitution.  Adversary Proceeding, ECF Nos. 321, 322, 323, 324.  The intervening parties which filed cross-motions in favor of the Commonwealth asserted, among other things, that (a) the scope of the Adversary Proceeding is limited to ownership of post-petition and future SUT revenues which cannot have been transferred to COFINA due to the automatic stay; (b) under the Puerto Rico Civil Code, the Commonwealth did not transfer ownership of future SUT revenues to COFINA; (c) under the Bankruptcy Code, a "right to receive" future SUT revenues is not an asset that can be transferred; (d) the Pledged Sales Taxes remain property of the Commonwealth because they are "available resources" under the Commonwealth Constitution, and (e) Act 56 did not

transfer ownership of the Pledged Sales Taxes to COFINA. <u>Adversary Proceeding</u>, ECF Nos. 300, 314.

55.    Conversely, in her motion for summary judgment, the COFINA Agent asserted, among other things, that the Legislative Assembly has the power to, and did, transfer the Pledged Sales Taxes to COFINA through Act 91 and that the tax revenue stream and the account into which it is deposited are not "available resources" of the Commonwealth.  <u>Adversary Proceeding</u>, ECF Nos. 312, 316, 317.  The intervening parties who filed cross-motions in favor of COFINA asserted, among other things, that (a) the Commonwealth's transfer of the Pledged Sales Taxes to COFINA was valid under the Commonwealth Constitution, (b) the Pledged Sales Taxes are not "available resources" under the Commonwealth Constitution, (c) it is not "legally impossible" to transfer future SUT revenues, and (d) the plain terms of COFINA's enabling legislation clearly transferred ownership of the Pledged Sales Taxes to COFINA. <u>Adversary Proceeding</u>, ECF Nos. 307, 318, 320, 325.  The Court heard argument on the cross-motions for summary judgment on April 10, 2018.

56.    On February 26, 2018, the COFINA Agent filed the Motion and Incorporated Memorandum of Law of the COFINA Agent to Certify Questions Under Puerto Rico Law to the Supreme Court of Puerto Rico, <u>Adversary Proceeding</u>, ECF No. 329 (the "<u>Certification Motion</u>"),[20] seeking an order certifying certain questions under Puerto Rico law to the Supreme Court of Puerto Rico (the "<u>PR Supreme Court</u>").  Specifically, the COFINA Agent sought to certify the following questions to the PR Supreme Court (among others):

---

[20]   The COFINA Senior Bondholders' Coalition filed a statement in support of, and joinder to, the Certification Motion.  <u>Adversary Proceeding</u>, ECF No. 332.  The Mutual Fund Group and the Puerto Rico Funds filed a similar motion adopting and incorporating the arguments in the Certification Motion.  <u>Adversary Proceeding</u>, ECF No. 331.

a. Whether Act 56, which amended Act 91, transferred ownership to COFINA of the Dedicated Sales Tax Fund (as defined in Act 91) and all future Pledged Sales Taxes.

b. Whether the Puerto Rico Legislative Assembly's transfer of ownership to COFINA of the Dedicated Sales Tax Fund and the Pledged Sales Taxes in return for bond proceeds was invalid as a matter of law (as alleged by the Commonwealth Agent) because the COFINA enabling legislation violates certain provisions of the Commonwealth Constitution.

c. Whether the enactment of the COFINA enabling legislation as a means to finance the repayment of the Commonwealth's outstanding debt or the amendment of Act 91 in 2009 to expand the permitted uses of proceeds of the Existing Securities were invalid because they violated the Commonwealth Constitution.

d. Whether the Puerto Rico Legislative Assembly's enactment of the COFINA enabling legislation, which provided that the Dedicated Sales Tax Fund and Pledged Sales Taxes transferred to COFINA shall not be resources available to the Commonwealth, was invalid as a matter of law (as alleged by the Commonwealth Agent) because the COFINA enabling legislation violates certain provisions of the Puerto Rico Constitution.

Certification Motion ¶¶ 1-5.

57. A number of parties, including the Oversight Board, the Commonwealth Agent, and AAFAF, opposed the Certification Motion, asserting, among other things, that the proposed questions are not proper for certification because they involve issues of federal law, the proposed questions will not resolve the Commonwealth-COFINA Dispute, certification is an improper attempt at forum shopping and not in the best interest of the Debtors, including COFINA, and certification would delay resolution of the Commonwealth-COFINA Dispute. Adversary Proceeding, ECF Nos. 339, 421, 437, 438. Ambac and National also filed a limited objection to the Certification Motion, while seeking, in the alternative, to certify an alternative formulation of the questions in the Certification Motion. Adversary Proceeding, ECF No. 421, at 7-9.

58. On May 24, 2018, the Court denied the Certification Motion, holding that certification is unwarranted because (a) the issues underlying the Commonwealth-COFINA Dispute, as defined in the Procedures Order, present a mixed question of federal and Puerto Rico

27

law, and (b) certification would delay resolution of the Commonwealth-COFINA Dispute. <u>Adversary Proceeding</u>, ECF No. 483.

### L.  The Agreement in Principle

59.     In the weeks following the conclusion of arguments in connection with the Motions for Summary Judgment, and with the spectre of a determination looming, the Agents recommenced court-sanctioned mediation in the hope of resolving the Commonwealth-COFINA Dispute. Through the auspices of the mediation team, the Agents reached an understanding set forth in that certain Agreement in Principle, (the "<u>Agreement in Principle</u>" a copy of which is attached hereto as **<u>Exhibit C</u>**).  On June 5, 2018, the Agents jointly moved to hold the Court's decision on the pending Motions for Summary Judgment in abeyance for sixty (60) days due to their agreement, a period deemed necessary to definitively document the understanding developed.  <u>Adversary Proceeding</u>, ECF No. 484 (the "<u>Abeyance Motion</u>").  The Agents announced the terms of the Agreement in Principle on June 7, 2018.  <u>Adversary Proceeding</u>, ECF No. 486-1.  At its core, the Agreement in Principle provides for the allocation of the Pledged Sales Taxes between the Commonwealth and COFINA, and for SUT revenues collected on or after July 1, 2018 to be deposited into an escrow account pending approval by the Court of the settlement contemplated in the Agreement in Principle.  However, various parties, including the Oversight Board and AAFAF, asserted that, among other things, the Agreement in Principle exceeded the scope of the Adversary Proceeding and the Procedures Order by attempting to, among other things, dictate terms of plans of adjustment in the Title III Cases and limit the availability and use of funds.  <u>Adversary Proceeding</u>, ECF Nos. 487, 488, 489, 490, 491.

60.     The Court entered an order granting the Abeyance Motion on June 11, 2018, holding the Motions for Summary Judgment in abeyance until August 4, 2018 (as such period may

be extended or subsequently renewed by further order of the Court, the "Abeyance Period").
Adversary Proceeding, ECF No. 492.  On August 3, 2018, upon a joint motion of the Agents, the
Court extended the Abeyance Period to September 13, 2018.  Adversary Proceeding, ECF No.
539.  On September 12, 2018, upon a joint motion of the Commonwealth Agent and the COFINA
Agent, the Court further extended the Abeyance Period to October 3, 2018.  Adversary Proceeding,
ECF No. 543.[21]

### M. Disputed Funds Orders

61.     On June 14, 2018, consistent with the Agreement in Principle, the Commonwealth
Agent filed the Commonwealth Agent's Urgent Motion, Pursuant to Bankruptcy Code Section
105(a) and Bankruptcy Rule 9019, for Order Establishing Procedures Governing 5.5% SUT
Revenues Collected on or After July 1, 2018, Adversary Proceeding, ECF No. 495 (the "Disputed
Funds Motion"), seeking an order establishing procedures governing the 5.5% portion of the SUT
collected by Banco Popular or other authorized collector of the SUT on or after July 1, 2018,
pending implementation of the settlement of the Commonwealth-COFINA Dispute.  Following
discussions with a number of parties, the Commonwealth Agent resolved virtually all issues raised
with respect to the Disputed Funds Motion and filed a revised proposed order.   Adversary
Proceeding, ECF No. 517.

62.     On June 29, 2018, the Court entered an order, Adversary Proceeding, ECF No. 525,
(the "Disputed Funds Order") establishing procedures governing revenues received from the
Pledged Sales Taxes on deposit and to be deposited with BNYM, as trustee for the Existing
Securities.  The Disputed Funds Order provides, among other things, that BNYM will separately

---

[21] Subsequently, on September 27, 2018, the Court, *sua sponte,* entered an Order terminating the pending summary
judgment motions without prejudice to restoration of the motions on or after October 3, 2018.  Adversary
Proceeding, ECF No. 544.

account for (i) Pledged Sales Tax revenues currently in BNYM accounts or received on or before

June 30, 2018, (ii) Pledged Sales Tax revenues received by BNYM on or after July 1, 2018, and

prior to the earlier of the end of the Abeyance Period plus thirty (30) calendar days or the date of

a ruling by the Court on the pending motions for summary judgment in the Adversary Proceeding,

and (iii) Pledged Sales Tax revenues received by BNYM following the end of the Abeyance

Period.

63.     Following entry of the Disputed Funds Order, the Commonwealth Agent and

BNYM reached an agreement resolving BNYM's concern regarding sufficient notice to beneficial

holders of Existing Securities with respect to the order.  Subsequently, the Court entered an order

modifying and replacing the Disputed Funds Order incorporating the agreement between the

Commonwealth and BNYM.  Adversary Proceeding, ECF No. 534.

**N.  The Plan Support Agreement**

64.     Building upon the Agreement in Principle, and as a result of over two weeks of

mediation among the interested parties, the Oversight Board announced on August 8, 2018 that it

had reached an agreement with certain holders and insurers of Existing Securities on the economic

treatment of Existing Securities and the terms of new exchange securities for a proposed COFINA

plan of adjustment consistent with the Oversight Board's authority to separately develop a

settlement of the Commonwealth-COFINA Dispute pursuant to the Procedures Order.[22]

65.     The Oversight Board, COFINA, AAFAF, certain holders of Senior COFINA

Bonds, Ambac, National, certain holders of Junior COFINA Bonds, Assured, and Bonistas del

Patio, Inc. (collectively, the "Settlement Parties") entered into that certain Plan Support

---

[22] Financial Oversight and Management Board, Press Release, *Oversight Board Reaches Deal with COFINA
Bondholders* (Aug. 8, 2018).

Agreement, dated as of August 29, 2018 (the "Original Plan Support Agreement"), that contemplates, among other things, (a) terms to the compromise and settlement of the Commonwealth-COFINA Dispute developed by the Oversight Board and consistent with the terms of the Agreement in Principle, which, among other things, allocates an amount up to fifty-three and sixty five one-hundredths percent (53.65%) of the annual Pledged Sales Tax Base Amount to COFINA, and confirms that COFINA is the sole owner of the amounts held at BNYM as of June 30, 2018; (b) approval by the Court of the terms of the compromise and settlement of the Commonwealth-COFINA Dispute concurrently through a plan of adjustment in COFINA's Title III Case and this Motion in the Commonwealth's Title III Case; (c) filing of this Motion in the Commonwealth Title III Case and a disclosure statement and plan of adjustment for COFINA in COFINA's Title III Case; and (d) the agreement of the Settlement Parties to support the confirmation of a COFINA plan of adjustment consistent with the term sheet attached to the Original Plan Support Agreement.

66.   After further mediation, on September 20, 2018, the Settlement Parties amended and restated the Original Plan Support Agreement (the "A&R Plan Support Agreement")[23] to include additional holders of Existing Securities, who also hold significant amounts of GO Bonds and were among the plaintiffs in the Lex Claims Litigation.[24]  Among other things, the A&R Plan

---

[23]   A copy of the A&R Plan Support Agreement is attached as Exhibit B to the Levitan Declaration.

[24]   In late August 2018, certain holders of COFINA bonds reached out to Autonomy Capital (Jersey) L.P. ("Autonomy") requesting that Autonomy participate in the mediation regarding the plan of adjustment for COFINA and the Original Plan Support Agreement, and, specifically, that Autonomy evidence its decision not to object to settlement of the Commonwealth-COFINA Dispute or confirmation of the plan of adjustment for COFINA.  Although not a holder of COFINA bonds, Autonomy entered into that certain Plan Support Agreement Letter (the "PSA Letter"), dated as of September 21, 2018, by and between Autonomy, Aurelius Capital Master, Ltd. ("Aurelius") and Six PRC Investments LLC ("Six PRC"), on the one hand, and COFINA, AAFAF and the Oversight Board, on the other hand, pursuant to which, Autonomy agreed (i) not to object to this Motion or to confirmation of the plan of adjustment for COFINA, (ii) to instruct its counsel to state at the hearing for approval of this Motion and at the hearing for confirmation of the plan of adjustment for COFINA that Autonomy does not object to approval of this Motion and the confirmation of the plan of adjustment for COFINA, and (iii) to be bound

Support Agreement provides that Aurelius Capital Master, Ltd. and Six PRC Investments LLC, and each of their applicable affiliates, who are significant holders of Existing Securities, will request dismissal, with prejudice, of their claims and causes of action in the Lex Claims Litigation premised on challenges to COFINA's constitutionality, COFINA's entitlement to proceeds of the SUT revenues purportedly transferred by the Commonwealth to COFINA, and any other claims and causes of action which may challenge the transactions contemplated in the A&R Plan Support Agreement, COFINA's plan of adjustment, or this Motion, effective upon the entry of an order approving the Settlement and confirmation of COFINA's plan of adjustment incorporating the Settlement.  A&R Plan Support Agreement § 4.13.

### O.  The Commonwealth-COFINA Dispute Settlement

67.     On August 13, 2018, the Commonwealth Agent filed an informative motion indicating that it was not prepared to enter into a definitive agreement for the Agreement in Principle because the Oversight Board's most recent certified Fiscal Plan for the Commonwealth was dramatically different than when the Agreement in Principle had been reached.  Adversary Proceeding, ECF No. 540.[25]

68.     Based upon conversations with the COFINA Agent, the Oversight Board, as representative of the Commonwealth in its Title III Case pursuant to section 315(b) of PROMESA, pursuant to the Oversight Board's authority to negotiate and mediate with creditor to achieve a settlement of the Commonwealth-COFINA Dispute pursuant to Paragraph 4(n) of the Procedures Order, together with AAFAF, as the entity authorized to act on behalf of the Commonwealth under the authority granted to it under the Enabling Act of the Fiscal Agency and Financial Advisory

---

by certain provisions of the A&R Plan Support Agreement.  The terms of the PSA Letter were negotiated in good faith by the parties as part of the larger mediation supervised by Chief Bankruptcy Judge Houser.

[25]  The Agreement in Principle does not contain any conditions premised on the Commonwealth's fiscal plan.

Authority, Act 2-2017, negotiated and executed the Settlement Agreement with the COFINA Agent.

69.    The salient terms of the Settlement are as follows:[26]

| COFINA Interests | COFINA will be granted an ownership interest in the present and future revenues and collections generated by the five and one-half percent (5.5%) sales and use taxes imposed by the Commonwealth (the "COFINA Pledged Taxes") and all rights thereto (including the right to receive the COFINA Pledged Taxes as set forth under Section II(E)(7) of the Term Sheet[27] (First Dollars Funding)) in an amount up to fifty-three and sixty-five one hundredths percent (53.65%) of the Pledged Sales Tax Base Amount in any given fiscal year of the Commonwealth until the COFINA (as defined in the Term Sheet) and COFINA Parity Bonds (as defined in the Term Sheet) have been paid or satisfied in full in accordance with their terms (the "COFINA Portion"). <br><br> The COFINA Portion shall not, now or hereafter, be property of the Commonwealth, and in the event of any subsequent Title III case under PROMESA or similar or other proceedings of the Commonwealth, in any forum, it is the express intent of the Commonwealth and COFINA that the COFINA Portion shall not be subject to the automatic stay under 11 U.S.C. §§ 362 and 922, or similar stay. |
|---|---|
| Commonwealth Interests | The Commonwealth will be granted an ownership interest that is second in priority of payment, funding and collections, in all circumstances, subject and pursuant to Section II(E)(7) of the Term Sheet (First Dollars Funding), in the COFINA Pledged Taxes and all rights thereto, including the right to receive (a) the residual amount of the COFINA Pledged Taxes in the amount, if any, in excess of the COFINA Portion in any given fiscal year of the Commonwealth, and (b) all COFINA Pledged Taxes after the COFINA Bonds and COFINA Parity Bonds have been paid or satisfied in full in accordance with their terms (the "Commonwealth Portion"). |

---

[26]  Any summary of the terms of the Settlement or Settlement Agreement herein is qualified in its entirety by reference to the Settlement Agreement, a copy of which is attached to the Settlement Order as Schedule 1.  In the event that there are any inconsistencies between summaries in the Motion and the terms of the Settlement Agreement, the terms of the Settlement Agreement shall control.

[27]  "Term Sheet" shall mean the COFINA Restructuring Proposal Summary of Terms and Conditions, attached to the A&R Plan Support Agreement.

<table>
<tr><td></td><td>Under all circumstances, the Commonwealth Portion shall exclude in its entirety the COFINA Portion, and the Commonwealth shall have no ownership interest in the COFINA Portion.<br><br>Subject to Sections II(E)(4) (Additional Bonds Test) and II(E)(7) (First Dollars Funding) of the Term Sheet, the Commonwealth will have no right to receive any revenues or collections generated by the COFINA Pledged Taxes for a fiscal year of the Commonwealth unless and until COFINA has received the COFINA Portion.<br><br>The Commonwealth will have no right to receive Debt Service Savings (as defined in the Term Sheet) in any fiscal year of the Commonwealth unless and until all debt service payments on the COFINA Bonds and COFINA Parity Bonds required to be made or set aside in such fiscal year, including any overdue debt service payments from all prior fiscal years of the Commonwealth, are made as required, as provided in Section II(E)(4) (Additional Bonds Test) of the Term Sheet.</td></tr>
<tr><td><strong>Distribution of Amounts Held in BNYM Debt Service, Reserve, and Other Accounts</strong></td><td><u>Pre-FY2019 BNYM Deposits</u><br><br>One hundred percent (100%) of the funds on deposit prior to July 1, 2018 in the debt service, reserve and such other accounts and any earnings thereon held by BNYM for the benefit of the bondholders (collectively, the "<u>Pre-FY2019 BNYM Deposits</u>") are held by BNYM, as the COFINA bond trustee, for the benefit of the bondholders in accordance with the Adversary Proceeding and such others entered in connection therewith; provided, however, that:<br><br>Seventy-Eight Million Three Hundred Fifty-Five Thousand Eight Hundred and Thirty-Seven Dollars and Sixty-Three Cents ($78,355,837.63) of Pre-FY2019 BNYM Deposits shall be distributed as follows (the "<u>Initial Distributions</u>"):<br><br>(i) Thirty-Three Million Three Hundred Fifty-Five Thousand Eight Hundred Thirty-Seven Dollars and Sixty-Three Cents ($33,355,837.63) will be distributed to the Commonwealth,<br><br>(ii) Five Million Dollars ($5,000,000.00) will be allocated to fund an operating expense fund for COFINA, and<br><br>(iii) Forty Million Dollars ($40,000,000.00) will be allocated to the Taxable Election Cash (as defined</td></tr>
</table>

34

| | in the COFINA Plan of Adjustment) distributable under the COFINA Plan of Adjustment. If the Taxable Election Cash distributable under the COFINA Plan of Adjustment is less than Sixty Million Dollars ($60,000,000.00) (the amount of such difference, the "Tax Election Remainder Amount"), then the Tax Election Remainder Amount will be distributed (I) *first*, to further fund the operating expense fund for COFINA up to an additional Ten Million Dollars ($10,000,000.00), and (II) *second*, to the extent of any further remainder, to be distributed evenly to COFINA, on the one hand, and the Commonwealth, on the other hand.

*FY2019 BNYM Deposits*

On the effective date of the COFINA Plan of Adjustment, one hundred percent (100%) of the funds deposited on or after July 1, 2018, to the debt service, reserve and such other accounts (collectively, the "FY2019 BNYM Deposits"), on a first dollars basis up to the amount of fifty-three and sixty-five one hundredths percent (53.65%) of the Pledged Sales Tax Base Amount, plus any earnings thereon (collectively, the "COFINA FY2019 BNYM Deposits") held by BNYM in accordance with the Adversary Proceeding, and such other orders entered in connection therewith, will be the exclusive property of COFINA and will be distributed to COFINA for purposes of distribution in accordance with COFINA's plan of adjustment.

*Residual FY2019 BNYM Deposits*

Any remaining FY2019 BNYM Deposits after distribution of the COFINA FY2019 BNYM Deposits will be distributed in its entirety to the Commonwealth. |
|---|---|

## P.  The COFINA Plan of Adjustment

70.     Concurrently with the filing of this Motion, and in accordance with Paragraph 4(n) of the Procedures Order, which provides that the Oversight Board may, at any time, propose a Title III plan of adjustment for COFINA that incorporates a settlement of the Commonwealth-COFINA Dispute developed by the Oversight Board, the Oversight Board filed a disclosure statement and plan of adjustment for COFINA incorporating, among other matters, the terms of the Settlement.

Indeed, the Settlement forms the foundation of, and is inextricably intertwined with, COFINA's plan of adjustment, and without it, the COFINA plan cannot proceed.

## Basis for Relief

71.　　The Oversight Board files this Motion as the representative of the Commonwealth debtor under section 315(b) of PROMESA and consents to this Court's consideration of the Settlement under the compromise-approval procedure under Bankruptcy Rule 9019 and section 310 of PROMESA.[28]　The Procedures Order also contemplates that the Oversight Board may submit a settlement of the Commonwealth-COFINA Dispute in the Commonwealth Title III Case for this Court's approval, either as part of, or independent from, a Commonwealth plan of adjustment. *See* Procedures Order ¶¶ 4(j), (n).

72.　　The Settlement is a product of extensive negotiations among the Oversight Board, AAFAF, and other interested parties as part of an intensive mediation process led by a panel of distinguished federal jurists appointed by the Court, and reflects a global compromise of various complex legal issues and both pre- and post-petition claims asserted by, against, and between the Commonwealth, COFINA, and their respective creditors. *See* 11 U.S.C. §§ 502, 503 (made applicable to this case by PROMESA § 301(a)).  Applying Bankruptcy Rule 9019, the Court may issue an order under section 105(a) of the Bankruptcy Code approving this Settlement. *See* 11 U.S.C. § 105(a) (providing that a court may issue any order "necessary and appropriate to carry out the provisions of this title"); *id.* § 301(a) (incorporating section 105 of the Bankruptcy Code into title III of PROMESA); § 301(d) (references to "this title" in sections of the Bankruptcy Code incorporated into title III shall be deemed as references to title III of PROMESA).

---

[28] *See* supra note 2.

73.     Bankruptcy Rule 9019(a) provides that a court may approve a debtor's "compromise and settlement" after notice and a hearing.  Bankruptcy Rule 9019(a).  The U.S. Court of Appeals for the First Circuit (the "First Circuit") has emphasized that "[s]tipulations of settlement are favored by the courts, and they will rarely be set aside absent fraud, collusion, mistake or other such factor." *In re Indian Motorcycle Co.*, 289 B.R. 269, 282 (B.A.P. 1st Cir. 2003); *see also In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 n.5 (1st Cir. 1998).

74.     The approval of settlements is within the court's "wide discretion."  *See Jeremiah v. Richardson*, 148 F.3d 17, 22 (1st Cir. 1998).  However, while a court should apply its own independent judgment to determine whether to approve a settlement, it should also afford deference to the judgment of the trustee or debtor in possession; *see In re Am. Cartage, Inc.*, 656 F.3d 82, 92 (1st Cir. 2011); *In re Receivership Estate of Indian Motorcycle Mfg., Inc.*, 299 B.R. 8, 21 (D. Mass. 2003) (the court should give "substantial deference to the business judgment of a bankruptcy trustee when deciding whether to approve a settlement"); *Hill v. Burdick (In re Moorhead Corp.)*, 2008 B.R. 87, 89 (B.A.P. 1st Cir. 1997) ("The [bankruptcy] judge . . . is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." (citation omitted)); *In re Healthco Int'l, Inc.*, 136 F.3d at 50 n.5; and consider the paramount interests of creditors; *see Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995) (noting that court should give proper deference to the reasonable views of creditors).  Accordingly, a settlement should generally be approved unless it "falls below the lowest point in the range of reasonableness."  *City Sanitation, LLC v. Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.),* 656 F.3d 82, 91 (1st Cir. 2011) (citing *Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983)).

75.     In determining the reasonableness of a settlement, courts in the First Circuit consider the following four factors: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views in the premise. *Jeffrey*, 70 F.3d at 185; *see also In re Indian Motorcycle Co.*, 289 B.R. at 283; *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9 (Bankr. P.R. Mar. 31, 2009); *In re C.P. del Caribe, Inc.*, 140 B.R. 320, 325 (Bankr. D.P.R. 1992).

76.     The Oversight Board respectfully submits that consideration of the relevant factors shows that the Settlement is eminently reasonable, and should be approved. The issues resolved pursuant to the Settlement Agreement are complex, many of which present questions of first impression. Even putting aside any consideration of the relative strength of the various parties' arguments, the complexity and lack of clear precedent renders the likelihood that the Commonwealth would prevail far from certain. Both sides have put forward credible arguments that would lead to a binary result: either the Commonwealth or COFINA owns all of the Pledged Sales Taxes. The Commonwealth currently receives ***none*** of the Pledged Sales Tax Base Amount. If COFINA were determined to be the owner of the Pledged Sales Taxes, including future SUT Revenues, the Commonwealth would not lose access to any funds that it currently receives; but in that case, ***none*** of the $783 million Pledged Sales Tax Base Amount (which grows at 4% each year) would be available for the Commonwealth's use towards payment for essential services or for distribution to its creditors. Even a total victory for the Commonwealth could have negative ramifications, as it might limit the Commonwealth's ability and flexibility to issue bonds in the future. And, regardless of this Court's ruling in the Adversary Proceeding, it is almost certain that

38

multiple appeals would follow. The reality of protracted litigation, potentially for years, comes at a substantial cost to the Commonwealth, both as a result of the significant expenses that would be incurred and because its ability to formulate a confirmable plan of adjustment would be significantly delayed.

77. Meanwhile, the Settlement, among other things, (a) ensures that the Commonwealth will have access to a (rather significant) portion of the SUT Revenues it does not have today—over $360 million in Fiscal Year 2019, which amount will increase in the coming years at four percent (4%) annually, (b) curtails costly, time consuming litigation, (c) extinguishes billions of dollars of claims that have been asserted by COFINA and COFINA bondholders against the Commonwealth, and (d) will facilitate the Commonwealth's progression more quickly towards a confirmable plan of adjustment and regain access to the capital markets.

## A. Probability of Success

78. In examining the probability of success in the litigation being compromised, courts look to the legal and evidentiary obstacles to litigating the claim. *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 (1st Cir. 1998); *In re Hansen*, 2017 Bankr. LEXIS 1120, at *12 (Bankr. D.N.H. Apr. 25, 2017). In addition, the probability of success is measured against the "definitive, concrete and immediate benefit" that a settlement provides against the uncertainty and delay of litigation. *See Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi)*, 411 Fed. Appx. 342, 346-47 (5th Cir. 2011) (citing *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 (1st Cir. 1998)). In deciding the probability of success in the litigation, the court is not required to decide the merits of the litigation, but rather, to assess the probability that the debtor would succeed on its claims. *In re Hansen*, 2017 Bankr. LEXIS 1120, at *12-13.

79.     The Commonwealth's likelihood of success in litigating the Commonwealth-COFINA Dispute is uncertain given the number of novel legal issues implicated, touching on the Commonwealth Constitution and Commonwealth law within the context of the Bankruptcy Code and PROMESA.   Indeed, this Court recognized that "the issues raised by the Commonwealth-COFINA Dispute are novel and are of great importance to the people of Puerto Rico (as well as their fellow stakeholders) . . . . Because federal law issues are thus necessarily bound up in the antecedent question of ownership, the Commonwealth-COFINA Dispute presents a mixed question of federal and Puerto Rico law . . . ." *See Memorandum Order*, Adversary Proceeding, ECF No. 483, at 4-6.   The Court explained that "[n]othing in the [Procedures Order] limits the dispute to Puerto Rico law and, ultimately, the Court must decide what the relevant property rights are within the context of these Title III proceedings, under PROMESA and federal bankruptcy law provisions that Congress has incorporated into PROMESA."  *Id.* at 5.

80.     Critically, a central issue in determining the Commonwealth-COFINA Dispute is the interpretation of Act 91.   As evident in the briefing by various parties in connection with numerous summary judgment motions, while COFINA parties consider the language of Act 91 to be "crystal clear" (Adversary Proceeding, ECF No. 375, at 5), the Commonwealth Agent has raised various arguments in support of a contradictory interpretation of Act 91.   Adversary Proceeding, ECF No. 322, at 12-26.   Where parties' positions are so far apart, courts generally favor the certainty of a settlement.  *See In re Fibercore, Inc.*, 391 B.R. 647, 655 (Bankr. D. Mass. 2008) ("[W]hat is 'clear' to one party appears foggy to another and the Trustee believes it is better to pursue a guaranteed, relatively immediate payment to the estate . . . than pursue litigation hoping for more.  This Court cannot quarrel with that conclusion.").

81.     The Commonwealth Agent has also asserted a number of challenges to the constitutionality of the transfer of the Pledged Sales Taxes to COFINA under the Commonwealth Constitution's debt limit, debt priority, and balanced budget provisions.  <u>Adversary Proceeding</u>, ECF No. 322, at 30-42.  The COFINA Agent, however, has disputed the Commonwealth Agent's interpretation of the Commonwealth Constitution.  <u>Adversary Proceeding</u>, ECF No. 357.   The COFINA Agent has also asserted its own claims and seeks summary judgment in its favor, asserting that, among other things, (a) the Legislative Assembly properly exercised its broad taxing and police powers to enact legislation transferring the SUT revenues to COFINA; (b) the debt limit provisions of the Commonwealth Constitution do not prohibit the transfer of the Pledged Sales Tax to COFINA because the COFINA bonds are not  "direct obligations of the Commonwealth" under the relevant provisions of the Commonwealth Constitution, nor are proceeds from the COFINA bonds "money borrowed directly by the Commonwealth"; (c) the balanced budget provision of the Commonwealth Constitution does not preclude the transfer of SUT revenues to COFINA, nor is it applicable to the COFINA bonds because they are not debts of the Commonwealth, and (d) the plain language of Act 91 transferred ownership of the SUT Revenues to COFINA.  <u>Adversary Proceeding</u>, ECF No. 317.  A number of other parties have filed motions for summary judgment in the Adversary Proceeding taking positions similar to those of either the Commonwealth Agent or the COFINA Agent.  <u>Adversary Proceeding</u>, ECF Nos. 300, 307, 314, 318.

82.     Given the broad swath of arguments that have already been briefed in connection with the Commonwealth-COFINA Dispute, it is uncertain that the Commonwealth would prevail. And, even a victory for the Commonwealth would be only a first step in a long, difficult road to the Commonwealth obtaining all of the Pledged Sales Taxes.  The Settlement, meanwhile, ensures

the Commonwealth access to hundreds of millions of sollars each year for its use to service debt and pay for essential services and facilitating the Commonwealth's continued progress in its Title III Case. *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *9-10 (Bankr. D.P.R. Mar. 31, 2009) ("The Court concludes that the uncertainty of the litigation between the debtors and Citibank weighs heavily in favor of the approval of the Settlement Agreement. . . . The parties have engaged in extensive litigation in numerous contested matters, which has come at great expense and has caused years of delay. Given the history of these cases and a cursory review of the ample dockets, it would be unrealistic to conclude that the disputes between the debtors and Citibank could be expeditiously and inexpensively resolved, with the debtors prevailing in all of the litigation.").

### B.   Complexity of Litigation Involved and Expense, Inconvenience and Delay Attending It.

83.     As discussed, the Commonwealth's likelihood of success is uncertain in large part because of the complexity of the issues involved.  The complexity of the Commonwealth-COFINA Dispute is evident by not only the difficulty of the legal issues involved, but also, the number of parties involved, the multiple actions that have been filed, the significant costs incurred, and the ramifications of delay in resolving the dispute.  The briefing in the Adversary Proceeding has been extensive—for example, no fewer than six summary judgment motions have been filed by various parties that include, in addition to the Commonwealth Agent and the COFINA Agent, the Official Committee of Retirees of the Commonwealth of Puerto Rico, the COFINA Senior Bondholders' Coalition, the Ad Hoc Group of General Obligation Bondholders, the Mutual Fund Group, and the Puerto Rico Funds.  Adversary Proceeding, ECF Nos. 300, 307, 314, 317, 318, 322.  The Court has entered orders allowing nine separate parties to intervene in the Adversary Proceeding, in addition to the numerous signatories to the Procedures Order allowed to intervene in the Adversary

Proceeding. <u>Adversary Proceeding</u>, ECF Nos. 128, 131; <u>Procedures Order</u> ¶ 5. The issues underlying the Commonwealth-COFINA Dispute have spanned multiple lawsuits, which include the Lex Claims Litigation, the COFINA Bondholders' Action, and the Interpleader Action. Given the stakes involved in the litigation, it is not surprising that the litigation has been contentious, raising novel and complicated issues that cut across Puerto Rico statutory and constitutional law as well as federal restructuring law.

84.      In light of the foregoing, continued litigation of the Commonwealth-COFINA Dispute will invariably invite a number of appeals. *See Memorandum Order*, <u>Adversary Proceeding</u>, ECF No. 483, at 4 ("[T]he issues raised by the Commonwealth-COFINA Dispute are novel and are of great importance to the people of Puerto Rico (as well as their fellow stakeholders) . . . ."). These appeals would undoubtedly impede progress towards a Commonwealth plan of adjustment, postpone the conclusion of the Commonwealth's Title III Case, and delay the Commonwealth's access to the capital markets. Indeed, this Court has recognized such broader negative implications of protracted litigation of the Commonwealth-COFINA Dispute on the Commonwealth's Title III Case in denying certification of certain questions to the PR Supreme Court. *See Memorandum Order*, <u>Adversary Proceeding</u>, ECF No. 483, at 6 ("Certification is also unwarranted here because it will delay resolution of this particular dispute, impede progress towards a plan of adjustment, postpone the conclusion of these Title III proceedings, and consequently delay the debtors' ability to regain access to financial markets.").

85.      Thus, the complexity of the issues, and the expense and delay caused by protracted litigation of the Commonwealth-COFINA Dispute weigh in favor of granting the Motion. *See Jeffrey v. Desmond*, 70 F.3d 183, at 187 (1st Cir. 1995) ("[C]oupled with the bankruptcy court's inquiries and findings regarding the inconvenience and expense to the estate in attending the state

court action, and the fact that the compromise would provide creditors with an immediate and certain payment of a large percentage of the outstanding debt, illustrates that the bankruptcy court did not abuse its discretion in approving the compromise."); *In re Fibercore, Inc.*, 391 B.R. 647, 656 (Bankr. D. Mass. 2008) ("To pursue the actions which Silica Tech proposes would likely result in a significant delay in administering the estate without the guaranty of success - and an indeterminable increase in administrative costs.").

86.     Moreover, even if the Commonwealth were to prevail in the litigation, the Commonwealth would need to address (a) the billions of dollars in claims asserted by COFINA bondholders against the Commonwealth, and (b) its ability to access the capital markets.  The Settlement eliminates these complicated issues.

### C.  Interest of the Creditors

87.     One of the primary benefits of this Settlement is that, by providing certainty about the amounts available for the Commonwealth's debt service and other uses and resolving billions of dollars of claims that have been asserted against the Commonwealth by the COFINA Agent and COFINA's creditors, it enables the Commonwealth to move forward with its own Title III Case and ultimately to confirmation of a plan of adjustment.   And, the more quickly that a Commonwealth plan of adjustment can be confirmed, the sooner it can achieve fiscal responsibility and its creditors can receive distributions on account of their claims.   In contrast, extended litigation of the Commonwealth-COFINA Dispute, with no guarantee of success, will ensure that the Commonwealth's creditors will have to wait for the novel issues underlying the dispute to be resolved on appeal before the Commonwealth can begin to move forward with its Title III Case. *See City Sanitation, LLC v. Allied Waste Servs. of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 93 (1st Cir. 2011) ("Finally, the bankruptcy court appropriately took into account the

paramount interest of the creditors. Settling quickly for $12,000 allowed the trustee to distribute something to creditors.  In bankruptcy, as in life, half a loaf is sometimes better than none."); *In re Laser Realty, Inc. v. Fernandez (In re Fernandez)*, 2009 Bankr. LEXIS 2846, at *11-12 (Bankr. D.P.R. Mar. 31, 2009) (holding that the interest of creditors weighs in favor of the settlement because "[with the settlement], the Court anticipates the expeditious conclusion of these bankruptcy cases and the attendant distribution to all other creditors.").  Moreover, a loss for the Commonwealth in the Adversary Proceeding would deprive the Commonwealth of access to any portion of the approximately $783 million Pledged Sales Tax Base Amount, which annual amount increases over time.  In that case, the Commonwealth would not lose access to any funds that is currently receives, but it would be deprived of much needed funds that are not otherwise available for payment of essential services or distribution to its creditors.

88.     Additionally, the sooner the Commonwealth can exit Title III, the sooner it will be able to regain access to the capital markets and begin its long road to economic recovery.  A healthier Commonwealth economy is clearly in the best interests of its citizens, many of whom are also its creditors.

89.     Moreover, the Settlement is expressly supported by significant Commonwealth creditors, who are party to the A&R Plan Support Agreement.[29]  Specifically, these holders of GO Bonds have agreed not to oppose the Settlement in the Commonwealth Title III case.[30]  In addition, the A&R Plan Support Agreement provides that these GO Bondholders will seek dismissal, with prejudice, of claims asserted in the Lex Claims Litigation upon the approval and effectiveness of

---

[29]  Such parties include Aurelius Capital Master, Ltd. and Six PRC Investments LLC, as well as other creditors and insurers who hold or insure billions of dollars of Commonwealth debt.

[30]  *See* A&R Plan Support Agreement at 1; art. V; Press Release, Financial Oversight and Management Board for Puerto Rico, Oversight Board Finalizes Amended Plan Support Agreement with COFINA Bondholders (Sept. 21, 2018).

the Settlement Agreement pursuant to this Motion and confirmation of COFINA's plan of adjustment incorporating the Settlement.  A&R Plan Support Agreement § 4.13.  It is also actively supported by AAFAF, acting on behalf of the Governor of Puerto Rico.

90.    At bottom, the Settlement provides a more than reasonable solution to an extraordinarily complex dispute.  *See Am. Cartage*, 656 F.3d at  91-92 (the court should "canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness.")   As a result of hard-fought negotiations amongst numerous parties, the Settlement provides that, over the next forty (40) years, the Commonwealth will receive $363 million to $857 million of SUT Revenues per year that may be used to service debt and pay for essential services.  The Commonwealth will be able to use those funds, as well as resources that otherwise would have been spent litigating the Commonwealth-COFINA Dispute, to work towards confirming a plan of adjustment and emerging from these proceedings.  Moreover, by reaching a largely consensual deal with holders and insurers of over approximately $9 billion of COFINA bonds that preserves and strengthens the COFINA structure, the Commonwealth will be able to have future access to the capital markets through lower-cost securitizations like COFINA.  Put simply, the protocol, negotiated among all interested parties under the supervision of Chief Bankruptcy Judge Houser and established by this Court pursuant to the Procedures Order, worked as designed by achieving a fair and equitable compromise of complex and novel litigation through a comprehensive settlement that will provide significant value for the benefit of the Commonwealth, COFINA, and their respective creditors.  Indeed, the best evidence of the reasonableness of the settlement is the overwhelming creditor support on both sides of the aisle.

**Entry into the Settlement Agreement is Within the Scope of the Procedures Order**

91.     Pursuant to the Paragraph 4(n) of the Procedures Order, the Oversight Board "may, at any time, propose title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight Board, and the Oversight Board may negotiate and mediate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute . . . ." Procedures Order ¶ 4(n).  As noted above, the Oversight Board, through negotiations with creditors and the COFINA Agent, built the Settlement upon the understanding the Agents reached in the Agreement in Principle.  The terms of the Settlement are incorporated into, and form the foundation of, COFINA's plan of adjustment.

92.     A Commonwealth plan of adjustment that incorporates the Settlement, however, is not ready to be proposed on the same timeframe as the confirmation of the COFINA plan of adjustment.  In this event, the Procedures Order permits the Oversight Board to submit the Settlement to the Court for approval outside a Commonwealth plan of adjustment.  Paragraph 4(j) of the Procedures Order provides, "[i]f the Oversight Board determines that it is impracticable to schedule a timely confirmation hearing on a Commonwealth plan of adjustment embodying the *proposed* settlement negotiated by the Agents, then any *proposed* settlement negotiated by the Agents that can be implemented by the Commonwealth independently of a plan of adjustment . . . may be submitted for this Court's approval with respect to the Commonwealth only by . . . the Oversight Board."  Procedures Order ¶4(j) (emphasis added).  In using the term "proposed," the Procedures Order does not require that any settlement be finalized or executed by the Agents in order for the Oversight Board to seek court approval of the settlement.  The Agreement in Principle is such proposed settlement, which includes the terms for the allocation of the Pledges Sales Tax

Base Amount between the Commonwealth and COFINA.  Accordingly, it is within the Oversight Board's authority pursuant to the Procedures Order to seek court approval of the Settlement.

93.     In addition, given the current status of the Commonwealth Title III Case, it is impracticable and premature to schedule a timely confirmation hearing on a Commonwealth plan of adjustment embodying the proposed settlement negotiated by the Agents. Rather, that the proposed settlement negotiated by the Agents can be (and should be) implemented by the Commonwealth independently of a plan of adjustment since the proposed settlement allocates the Pledged Sales Taxes between COFINA and the Commonwealth without providing how the Commonwealth will distribute such assets to creditors.  Based on the foregoing, the Oversight Board is filing this Motion, on behalf of the Commonwealth, in the Commonwealth Title III Case in accordance with Bankruptcy Rule 9019 seeking the approval of the compromise and settlement of the Commonwealth-COFINA Dispute set forth in the Agreement in Principle to the extent incorporated in the Settlement Agreement.[31]

94.     Furthermore, the COFINA Agent is authorized to enter into the Settlement Agreement on behalf of COFINA pursuant to the Procedures Order.  Pursuant to PROMESA section 104(b), the Oversight Board may appoint an agent to take any action that the Oversight Board is authorized to take pursuant to PROMESA section 104.  Pursuant to the Procedures Order, the Oversight Board appointed the COFINA Agent to "litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA."  Procedures Order ¶ 4(a).  PROMESA section 104(g) provides that the Oversight Board may enter into contracts appropriate to carry out its responsibilities under PROMESA, which includes the Oversight Board's authority to prosecute a

---

[31]  As set forth above, the Oversight Board and AAFAF have asserted that certain provisions included in the Agreement in Principle, exceeded the scope of the Agents' authority under the Procedures Order.  Adversary Proceeding, ECF Nos. 487, 488, 489, 490, 491.  As such, those provisions have not been included in the Settlement Agreement.

Title III case as the debtor's sole representative pursuant to PROMESA section 315(b). Such

authority necessarily includes entry into a settlement agreement to resolve the Commonwealth-

COFINA Dispute. Indeed, the authority of the Oversight Board to negotiate and settle the

Commonwealth-COFINA Dispute is confirmed in the Procedures Order, which provides that

"[n]otwithstanding anything in [the Procedures Order], the Oversight Board may negotiate and

mediate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute . . . ."

Procedures Order ¶ 4(n).

95.     Moreover, the Procedures Order compels the COFINA Agent to "endeavor to the

best of the Agent's ability under the circumstances to litigate and negotiate from the perspective

of what result is best for the Debtor the Agent represents," and authorizes the COFINA Agent to

"consider what result, through litigation, negotiation and mediation, will render its Debtor best

able to achieve fiscal responsibility and access to the capital markets, in the judgment of [the

COFINA Agent]." Procedures Order ¶¶ 4(f) and 4(g). According to the COFINA Agent, in her

judgment, pursuing the Settlement is in the best interests of COFINA and is the best path to re-

open access to financing.

96.     However, if the Court determines that the Procedures Order does not grant the

COFINA Agent the authority to enter into the Settlement Agreement on behalf of COFINA to

settle the Commonwealth-COFINA Dispute, the Oversight Board independently requests that the

Court authorize the COFINA Agent to do so as an agent appointed by the Oversight Board to settle

the Commonwealth-COFINA Dispute on behalf of COFINA, pursuant to PROMESA sections

104(b), 315(a), and Bankruptcy Code section 105(a).

97.     PROMESA section 301 makes applicable Bankruptcy Code section 105(a) to title

III cases. Section 105(a) provides, in relevant part: "The court may issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §

105(a). Under section 105(a), the Court has expansive equitable powers to fashion any order or

decree that carries out the statute. *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986)

("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant

to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864

F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable

principles govern."); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr.

W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a duty to protect

whatever equities a debtor may have in property for the benefit of its creditors as long as that

protection is implemented in a manner consistent with the bankruptcy laws.").

98.     As discussed above, the Settlement is reasonable and provides a myriad of benefits

as compared to the protracted litigation that would otherwise ensue absent a settlement of the

Commonwealth-COFINA Dispute.  The Settlement, which the COFINA Agent supports, provides

significant benefits to COFINA, allowing COFINA to move towards confirmation of a plan of

adjustment that is supported by various COFINA creditors party to the A&R Plan Support

Agreement.  Specifically, the Settlement provides COFINA with, among other things, a substantial

share of the Pledged Sales Tax Base Amount.  In contrast, if the Commonwealth-COFINA Dispute

were to be litigated and the Commonwealth were determined to be the owner of the Pledged Sales

Taxes, including future SUT Revenues, none of the approximate $783 million Pledged Sales Tax

Base Amount would be available for COFINA to distribute to its creditors.  Accordingly, if the

Court determines that the Procedures Order does not authorize the COFINA Agent to enter into

the Settlement Agreement on behalf of COFINA, it is necessary and appropriate to carry out the

provisions of Title III to supplement the Procedures Order to authorize the COFINA Agent to do

so as an appropriate counterparty to the Oversight Board, acting as representative of the Commonwealth in its capacity as a Title III debtor.

## **Notice**

99.     The Commonwealth has provided notice of this Motion in accordance with the Case Management Procedures to the following parties: the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable for the Debtors' bonds; (c) the entities on the list of creditors holding the twenty largest unsecured claims against the Commonwealth and COFINA; (d) counsel to the statutory committees appointed in these Title III cases; (e) the Office of the United States Attorney for the District of Puerto Rico; (f) the Puerto Rico Department of Justice; (g) the Other Interested Parties;[32] and (h) all parties filing a notice of appearance in these Title III cases.  The Oversight Board submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **No Prior Request**

100.    No prior request for the relief sought in this Motion has been made to this or any other court.

*Remainder of Page Intentionally Left Blank*

---

[32]  The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors; and (i) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

WHEREFORE the Commonwealth respectfully requests the Court to enter the Settlement

Order, granting the relief requested herein and any other relief as is just and proper.

Dated: October 19, 2018
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Commonwealth*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and*
*Management Board as representative for the*
*Commonwealth*

52

## Exhibit A

**Proposed Order**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
|     as representative of | Case No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | (Jointly Administered) |
|         Debtors.[1] | |
| THE OFFICIAL COMMITTEE OF UNSECURED<br>CREDITORS OF THE COMMONWEALTH OF<br>PUERTO RICO, | |
|     as agent of | Adv. Proc. No. 17-00257 (LTS) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO | |
|     as representative of | |
| THE COMMONWEALTH OF PUERTO RICO, | |
|     Plaintiff, | |
| v. | |
| BETTINA WHYTE, | |
|     as agent of | |

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

    as representative of

THE PUERTO RICO SALES TAX FINANCING
CORPORATION,

Defendant.

## ORDER APPROVING SETTLEMENT
## BETWEEN COMMONWEALTH OF PUERTO RICO
## AND PUERTO RICO SALES TAX FINANCING CORPORATION

Upon the *Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 2019 For Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (the "Motion");[2] and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having found that the relief requested in the Motion is in the best interests of the Commonwealth, its creditors, and other parties in interest; and the Court having found that the Commonwealth provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having reviewed the Motion and having heard the statements of counsel in support of the Motion at a hearing held before the Court (the "Hearing"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and any objections to the relief requested herein having been withdrawn or overruled on the merits; and upon the record herein, after due deliberation thereon,

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in that certain Settlement Agreement, dated October 19, 2018, attached to this Order as Schedule 1.

the Court having found that good and sufficient cause exists for the granting of the relief as set

forth herein,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on the terms set forth in this Order.

2.      The settlement embodied in the Agreement attached hereto as <u>Schedule 1</u> is

APPROVED.

3.      The Commonwealth is authorized take any action that is necessary or appropriate

to give effect to this Order.

4.      The COFINA Agent is authorized to enter into the Agreement on behalf of

COFINA and take any action that is necessary or appropriate to give effect to this Order; and such

actions taken by the COFINA Agent pursuant to such authority are hereby deemed a good faith

exercise of her duties under the Procedures Order.

5.      On the Effective Date, the Agreement fully, finally, and forever resolves and

releases, except to the extent necessary to enforce the Agreement or the COFINA Plan, all claims

against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits

and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and

counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii)

concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as

expanded by the Mediation Scope Order); <u>provided</u>, <u>however</u>, that nothing herein or in the

Agreement shall affect any rights, claims, or interests that creditors of the Commonwealth may

have with respect to the COFINA Pledged Taxes that are (x) not allocated to COFINA consistent

with the Agreement in Principle and (y) received by the Commonwealth.

102335940v4

6.      Notwithstanding the proviso in Paragraph 5 of this Order, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the COFINA Agent, COFINA, and its current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members, and any creditors or insurers of debt of COFINA, (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits.

7.      (a) The foregoing releases in Paragraphs 5 and 6 of this Order shall not release any claims that a beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities, may have against the insurer of such Existing Securities (or any claims that such insurer may have against the beneficial holder of such Existing Securities) under or relating to the policy of insurance issued by such insurer except as the COFINA Plan may otherwise provide and (b) there shall be no release of any claims by any party against the insurers or underwriters of the Existing Securities or the general obligation bonds issued by the Commonwealth, including their current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.

8.      Any claims by COFINA, against any underwriter of the COFINA Bonds (such claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its

4

instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the nature of contribution, reimbursement, or indemnification, however denominated or described, in connection with, arising out of, or in any way related to such claims (the "Covered Claims"). Any underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.

9.      Except as otherwise authorized or permitted by the Term Sheet, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; provided, however, that nothing in this Order or the Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17-3283, ECF No. 3269] and other orders of the Court.

102335940v4

10.     The terms and conditions of this Order will be immediately effective and enforceable upon its entry.

11.     The Court retains exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Order.


Dated: _____, 2018       _____

                                      HONORABLE LAURA TAYLOR SWAIN
                                      UNITED STATES BANKRUPTCY JUDGE

6

102335940v4

Schedule 1

Settlement Agreement

EXECUTION VERSION

## SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT (the "Agreement"), dated October as of 19, 2018, between the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), and (ii) Bettina M. Whyte, in her capacity as the court-appointed agent (the "COFINA Agent") of the Oversight Board, as representative of the Puerto Rico Sales Tax Financing Corporation ("COFINA"). The Oversight Board and the COFINA Agent are sometimes hereinafter referred to individually as a "Party" and collectively as the "Parties".

## RECITALS

A.    On May 3, 2017, the Commonwealth commenced a proceeding in the United States District Court for the District of Puerto Rico (the "Title III Court") under title III of the Puerto Rico Oversight, Management and Financial Stability Act ("PROMESA"), which proceeding was assigned Case No. 17-BK-3283 (the "Commonwealth Title III Case").

B.    On May 5, 2017, COFINA commenced a proceeding in the Title III Court under title III of PROMESA, which proceeding was assigned Case No. 17-BK-3284 (the "COFINA Title III Case" and, collectively with the Commonwealth Title III Case and the other cases filed under title III of PROMESA by other instrumentalities of the Commonwealth as of the date of this Agreement, the "Title III Cases").

C.    Prior to the commencement of the Title III Cases, certain parties asserted various claims relating to COFINA, including that (i) the formation and use of COFINA was unconstitutional under the Puerto Rico Constitution, and (ii) the present and future revenues and collections generated by the five and one-half percent (5.5%) of the sales and use taxes ("SUT") imposed by the Commonwealth (the "COFINA Pledged Taxes"), purportedly pledged by COFINA to secure the various series of bonds issued pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions (collectively, the "Bond Resolutions"), and set forth on Schedule 1 hereto (collectively, the "Existing Securities") and other obligations of COFINA, constituted "available resources" of the Commonwealth pursuant to Article VI, Section 8 of the Puerto Rico Constitution and must be used for the payment of "public debt" as specified therein. Such claims were stayed pursuant to PROMESA prior to any court issuing a ruling on the merits of such claims.

D.    Subsequent to the filing of the COFINA Title III Case, the Oversight Board sought an orderly process to resolve the disputes relating to COFINA and the ownership of the COFINA Pledged Taxes. On August 10, 2017, the Title III Court entered that certain *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [Docket No. 996][1] (the "Stipulation"), executed by various stakeholders of the Commonwealth and COFINA, pursuant to which, under certain circumstances, the Oversight Board delegated the authority to litigate to a determination or compromise and settle "whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use

---

[1]    All docket references are to the Commonwealth Title III Case unless indicated otherwise.

EXECUTION VERSION

taxes purportedly pledged by COFINA to secure debt… are property of the Commonwealth or COFINA under applicable law" (the "Commonwealth-COFINA Dispute"), Stipulation ¶4, to the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Commonwealth Agent," and collectively with the COFINA Agent, the "Agents") and the COFINA Agent on behalf of the Commonwealth and COFINA, respectively.  The Stipulation envisioned the resolution of the Commonwealth-COFINA Dispute by December 15, 2017.

E.      On September 8, 2017, the Commonwealth Agent commenced an adversary proceeding styled The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico as agent of the Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico v. Bettina Whyte, as agent of The Financial Oversight and Management Board for Puerto Rico as representative of The Puerto Rico Sales Tax Financing Corporation, Adv. Proc. No. 17-257-LTS (the "Adversary Proceeding"), by filing a complaint against COFINA asserting various claims and causes of action, including seeking declarations that Act 91 did not transfer a present ownership in future SUT revenues to COFINA and that Act 91 is unconstitutional because the substantial result of the COFINA structure was evasion of Puerto Rico's Constitutional debt limit, Constitutional balanced budget provision, and Constitutional debt priority.

F.      On September 15, 2017, the COFINA Agent filed an answer and counterclaims against the Commonwealth asserting various claims and causes of action, including seeking declarations that Act 91 is constitutional and that the stream of COFINA Pledged Taxes and the Dedicated Sales Tax Fund, as defined in the Bond Resolutions, are property of COFINA. Additionally, various Permitted Intervenors, as defined in the Stipulation, asserted various claims and causes of action (all claims and causes of action filed in the Adversary Proceeding, the "Commonwealth-COFINA Claims").

G.      Pursuant to the Stipulation, mediation of the Commonwealth-COFINA Dispute, led by Mediation Team Leader Hon. Barbara J. Houser, began in September 2017 and included the participation of the Agents and the Permitted Intervenors.

H.      On September 20, 2017, Hurricane Maria made landfall on Puerto Rico devastating the island and suspending certain proceedings related to the Commonwealth-COFINA Dispute.  As a result, the Agents modified their litigation schedule with the consent and approval of the Title III Court, with dispositive motions due to be filed by January 31, 2018, and a trial, if necessary, to be held in early March 2018.

I.      On November 3, 2017, the Title III Court entered an order [Docket No. 1612] that granted the protections of 48 U.S.C. § 2125 (the "Immunity Protections") to the Agents and their respective professionals and employees with respect to all actions taken in good faith to carry out their duties under the Stipulation.

J.      On December 21, 2017, the Title III Court entered an order [Adv. Proc. No. 167][2] (the "Initial Scope Order") clarifying the scope of the Agents' authority and dismissing, without prejudice, certain of the Commonwealth-COFINA Claims.

---

[2]      All references to "Adv. Proc. No." are docket references to the Adversary Proceeding.

2

EXECUTION VERSION

K.      On January 24, 2018, the Title III Court entered an order [Adv. Pro. No. 257] (the "Amended Scope Order") granting the Commonwealth Agent's motion to reconsider the Initial Scope Order and allowed the Commonwealth Agent to amend certain claims and causes of action that had been dismissed, without prejudice, pursuant to the Initial Scope Order (all claims and causes of action in the Adversary Proceeding that were dismissed, without prejudice, following the entry of the Amended Scope Order, the "Dismissed Commonwealth-COFINA Claims," and all claims and causes of action in the Adversary Proceeding that were not dismissed, without prejudice, following the entry of the Amended Scope Order, the "Surviving Commonwealth-COFINA Claims").

L.      On February 10, 2018, the Title III Court entered an order [Adv. Pro. No. 284] (the "Mediation Scope Order") (i) authorizing the Agents to mediate and attempt to compromise and settle the Commonwealth-COFINA Claims (except for any claim or cause of action that is owned by a creditor and not owned by the Commonwealth or COFINA, as applicable) pursuant to the terms and conditions of the Stipulation relating to the settlement of the Commonwealth-COFINA Dispute, and (ii) granting the Immunity Protections to the Agents, their professionals and employees with respect to any actions taken in good faith pursuant to the authority granted.

M.      On or around February 21, 2018, the Agents and certain Permitted Intervenors each filed competing motions for summary judgment on the Surviving Commonwealth-COFINA Claims (the "Motions for Summary Judgment").

N.      On February 26, 2018, the COFINA Agent, joined by certain COFINA stakeholders, filed a motion to certify the Surviving Commonwealth-COFINA Claims to the Puerto Rico Supreme Court (collectively, the "Certification Motions"), which were opposed by, among others, the Commonwealth Agent and the Oversight Board citing, among other things, the mixed questions of federal and Puerto Rico law and the need for an expeditious conclusion of the Commonwealth-COFINA Dispute.

O.      On April 10, 2018, the Title III Court heard argument with respect to the Motions for Summary Judgment.

P.      On May 14, 2018, certain of the Permitted Intervenors, consisting of significant holders and insurers of general obligations of the Commonwealth and significant holders and insurers of senior bonds of COFINA announced they had reached a tentative settlement of the Commonwealth-COFINA Dispute (the "GO-COFINA Senior Agreement"), which agreement had been presented to, but was not supported by, the Agents, the Oversight Board, or AAFAF, as defined below.

Q.      On May 14, 2018, the Oversight Board announced that it would not proceed with the GO-COFINA Senior Agreement, but that, consistent with its authority and the terms and provisions of paragraph 4(n) of the Stipulation, the Oversight Board would seek to negotiate with creditors on terms that were affordable, sustainable, and consistent with certified fiscal plans for the island and its instrumentalities.

R.      On May 24, 2018, the Title III Court entered an order [Adv. Pro. No. 483] denying the Certification Motions.

3

EXECUTION VERSION

S.      On June 5, 2018, the Agents filed a joint informative motion with the Title III Court [Adv. Pro. No. 484] (the "Joint Urgent Motion") (i) disclosing that, on June 5, 2018, the Agents had reached an agreement in principle (the "Agreement in Principle") to resolve the Commonwealth-COFINA Dispute and all other claims and causes of action that may be settled by the Agents pursuant to the Stipulation and the Mediation Scope Order, including, without limitation, by allocating one hundred percent (100%) of the cash held in trust by Bank of New York Mellon ("BNYM"), as trustee for the Existing Securities, to COFINA and the COFINA Pledged Taxes to COFINA and the Commonwealth in the amounts of fifty-three and sixty-five one hundredths percent (53.65%) and forty-six and thirty-five one hundredths percent (46.35%), respectively, of the existing pledged sales tax base amount with COFINA retaining its "first dollars" priority rights thereto and (ii) requesting that the Title III Court hold its ruling on the Motions for Summary Judgment in abeyance for sixty (60) days until August 4, 2018 (as such period may be extended or renewed, the "Abeyance Period"), to allow the Agents to document a formal settlement agreement and ensure that certain specified conditions to effectiveness of the Agreement in Principle would be satisfied.  The Agreement in Principle was thereafter filed on the docket on June 7, 2018 [Adv. Pro. No. 486-1].

T.      The Agreement in Principle also provides that, unless otherwise extended in writing by the Agents, the understanding reached therein ("except for the section "Post-July 1, 2018 Collection of SUT") shall terminate automatically unless the Agents are able to agree on the terms of definitive documentation within sixty (60) days of execution of the Agreement in Principle.  In connection with the serial extensions of the Abeyance Period, the Agents informally agreed not to terminate the Agreement in Principle.

U.      On June 12, 2018, the Title III Court entered an order [Adv. Pro No. 492] granting the Joint Urgent Motion and holding a ruling on the Motions for Summary Judgment in abeyance until August 4, 2018.  Pursuant to subsequent consensual motions by the Agents, the Title III Court has entered orders [Adv. Pro. Nos. 539, 543] extending the Abeyance Period up to and including October 3, 2018.

V.      Pursuant to orders of the Title III Court, dated June 9, 2018 [Adv. Pro. No. 525] and July 24, 2018 [Adv. Pro. No. 534], and consistent with the Agreement in Principle, Bank of New York Mellon ("BNYM"), as trustee for the holders of Existing Securities, has placed into escrow funds received on deposit (i) prior to July 1, 2018 in the debt service, reserve and such other accounts and any earnings thereon (the "Pre-FY2019 BNYM Deposits") and (ii) on or after July 1, 2018 to the debt service, reserve and such other accounts (the "FY2019 BNYM Deposits").

W.      On July 25, 2018, the Commonwealth Agent informed the Title III Court and parties in interest that it continued to support the settlement reached with the COFINA Agent, but the Commonwealth Agent had concerns about the feasibility of moving forward to further document the Agreement in Principle in light of the Oversight Board's then most recent fiscal plan, certified on Jun 29, 2018.

X.      On August 8, 2018, and following two weeks of mediation led by the Mediation Team, the Oversight Board announced that it had reached an agreement, predicated upon the allocation of ownership of the Pre-FY2019 BNYM Deposits and COFINA Pledged Taxes developed by the Agents and set forth in the Agreement in Principle, with holders and insurers of

102824080v4

EXECUTION VERSION

senior and junior bonds of COFINA, with respect to the terms of new securities to be issued
pursuant to a consensual plan of adjustment for COFINA.

Y.    On August 13, 2018, the Commonwealth Agent filed an Informative Motion with
respect to the Oversight Board's announcement on August 8, 2018 [Adv. Pro. No. 540], wherein
the Commonwealth Agent expressed continuing concerns about the feasibility of the agreement
in Principle in light of the then most recent certified fiscal plan.

Z.    By order, dated September 27, 2018 [Adv. Pro. No. 544], the Title III Court
terminated the Motions for Summary Judgment, without prejudice to restoration of such motions
on or after October 3, 2018, in light of the Agreement in Principle and ongoing discussions
regarding a plan of adjustment for COFINA(the "SJ Termination Order").

AA.    As of September 30, 2018, there is approximately $1,203,272,884.15 and
$366,835,440.45 of COFINA Pledged Taxes in Pre-FY2019 BNYM Deposits and FY2019
BNYM Deposits, respectively.

BB.    Paragraph 4(j) of the Stipulation provides that the Oversight Board may seek
approval of a proposed settlement negotiated by the Agent that allocates the Pledged Sales Taxes
between COFINA and the Commonwealth, but that does not provide for how the
Commonwealth would distribute such assets to creditors, by filing a motion in the
Commonwealth Title III Case provided that such motion would be heard on at least forty-five
(45) days notice and contemporaneously with a Title III plan of adjustment for COFINA.

CC.    Paragraph 4(n) of the Stipulation provides in pertinent part that the Oversight
Board shall remain the only party authorized by PROMESA to propose a title III plan of
adjustment and, to carry out that power and duty, the Oversight Board may, at any time, propose
title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of
the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight
Board, and the Oversight Board may negotiate and mediate with creditors to achieve such
settlement of the Commonwealth-COFINA Dispute.

DD.    On August 29, 2018, the Oversight Board, the Commonwealth, COFINA, the
Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") and various parties to the
Commonwealth-COFINA Dispute executed that certain Plan Support Agreement, which
agreement was amended and restated by that certain Amended and Restated Plan Support
Agreement (the "Amended PSA"), dated as of September 20, 2018.  Attached to the Amended
PSA as Exhibit "C" is a term sheet the "Term Sheet"), and hereto as Exhibit "A", which term
sheet incorporates the allocation of the COFINA Pledged Taxes developed by the Agents in the
Agreement in Principle as a foundation and sets forth, among other things, the terms of the
securities to be issued pursuant to a plan of adjustment for COFINA (the "COFINA Plan").[3]

NOW, THEREFORE, after good faith, arm's-length negotiations between the Parties,
and after consideration by the Parties of, among other things, the GO-COFINA Senior
Agreement and the Agreement in Principle, together with the merits and likelihood of success of

---

[3]    Capitalized terms used but not otherwise defined herein have the meanings given to them in the Amended
PSA and the Term Sheet.

EXECUTION VERSION

the various Commonwealth-COFINA Claims and the risk of further litigation, and in
consideration of the foregoing recitals and of the mutual agreements, covenants and releases set
forth herein, and after considering what result is best for the Commonwealth and COFINA, as
opposed to what result is best for any particular type of creditor of the Commonwealth or
COFINA, and after considering the standard for settlement set forth in Protective Committee of
Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414 (1968), and for
other good and valuable consideration, the sufficiency and adequacy of which is acknowledged
by the Parties, and by the authority granted to the Parties pursuant to the Stipulation, and in the
exercise of their respective judgment in accordance with the terms of the Stipulation, the Parties
hereto agree to settle the Commonwealth-COFINA Dispute and all other claims and causes of
action that may be settled by the Parties pursuant to the Stipulation and/or the Mediation Scope
Order as follows:

**AGREEMENT**

1.  **Recitals.**  The Recitals above are an integral part of this Agreement and are
incorporated herein by reference.

2.  **Settlement Motion.**  On or prior to October 19, 2018, the Oversight Board on
behalf of the Commonwealth, shall file the Settlement Motion in the Commonwealth Title III
Case in accordance with Bankruptcy Rule 9019 seeking the approval of the compromise and
settlement of the Commonwealth-COFINA Dispute set forth in the Agreement in Principle to the
extent incorporated in Section 3 hereof and in the Term Sheet.  The Parties shall use
commercially reasonable efforts to promptly take any action, and negotiate in good faith
definitive documentation, in each case, that is required to effectuate the compromise and
settlement set forth in this Agreement, including to (a) support this Agreement and (as
applicable) make the filings with the Title III Court contemplated by this Agreement, including
the COFINA Plan and the Settlement Motion, and (b) not take any action that would interfere
with, delay, or postpone the Title III Court's consideration or approval of (x) this Agreement or
(y) the filings with the Title III Court contemplated by this Agreement, including, without
limitation, the COFINA Plan, the Settlement Motion, and the entry of orders of the Title III
Court approving this Agreement and confirming the COFINA Plan (collectively, the "Approval
Orders")  Consideration and confirmation of the COFINA Plan in the COFINA Title III Case
shall be contemporaneous with consideration and approval of the Settlement Motion in the
Commonwealth Title III Case; provided, however, that, in all circumstances, the effective date of
the order granting the Settlement Motion shall be contemporaneous with, and its
contemporaneous occurrence shall be a condition to, the effective date of the COFINA Plan (the
"Effective Date").

3.  **Settlement Terms.**

(a)  The Commonwealth-COFINA Dispute shall be compromised and settled pursuant
to the Settlement Motion and the COFINA Plan, with (i) COFINA being granted ownership of
the COFINA Portion, and (ii) the Commonwealth being granted ownership of the
Commonwealth Portion; provided, however, that, except as expressly set forth in the Term Sheet
(a) one hundred percent (100%) of the Pre-FY2019 BNYM Deposits are held by BNYM, as the
COFINA bond trustee, for the benefit of the bondholders in accordance with the Adversary
Proceeding and such other orders entered in connection therewith; provided, however, that, (i) of

6

EXECUTION VERSION

Seventy-Eight Million Three Hundred Fifty-Five Thousand Eight Hundred and Thirty-Seven
Dollars and Sixty-Three Cents ($78,355,837.63) of the Pre-FY2019 BNYM Deposits, (x) Thirty-
Three Million Three Hundred Fifty-Five Thousand Eight Hundred Thirty-Seven Dollars and
Sixty-Three Cents ($33,355,837.63) shall be distributed to the Commonwealth, (y) Five Million
Dollars ($5,000,000.00) shall be allocated to fund an operating expense fund for COFINA, and
(z) Forty Million Dollars ($40,000,000.00) shall be allocated to the Taxable Election Cash
distributable under the COFINA Plan and if the Taxable Election Cash distributable under the
COFINA Plan is less than Sixty Million Dollars ($60,000,000.00), the Tax Election Remainder
Amount shall be distributed (I) *first*, to further fund the operating expense fund for COFINA up
to an additional Ten Million Dollars ($10,000,000.00), and (II) *second*, to the extent of any
further remainder, to be distributed evenly to COFINA, on the one hand, to increase the
COFINA Cash Available for Distribution and increase recoveries to all COFINA bondholders,
and the Commonwealth, on the other hand, (b) one hundred percent (100%) of the FY2019
BNYM Deposits, on a first dollars basis up to the amount of fifty-three and sixty-five one
hundredths percent (53.65%) of the PSTBA, plus any earnings thereon (the "COFINA FY2019
BNYM Deposits") held by BNYM in accordance with the Adversary Proceeding and such other
orders entered in connection therewith, will, on the Effective Date, be the exclusive property of
COFINA and will be distributed to COFINA for purposes of distribution in accordance with the
COFINA Plan of Adjustment and (c) any FY2019 BNYM Deposits net of the COFINA FY2019
BNYM Deposits, shall be distributed in its entirety to the Commonwealth.

(b)     Unless (i) approval of the Settlement Motion is denied by the Title III Court or
(ii) the Effective Date does not occur, the effective date of the compromise and settlement (the
"Compromise Date") shall be retroactive to July 1, 2018 and, in addition to receipt of the Pre-
FY2019 BNYM Deposits, net of amounts allocated pursuant to the provisions of the Term Sheet,
and the COFINA FY2019 BNYM Deposits on the Effective Date, COFINA will own, and will
be entitled to receive, the COFINA Portion commencing as of FY2019.  Until the Effective Date,
all revenues attributable to the PSTBA, including, without limitation, the COFINA Portion and
the Commonwealth Portion, shall be maintained in accordance with orders of the Title III Court
entered in the COFINA Title III Case, the Commonwealth Title III Case, the Adversary
Proceeding and the Interpleader Action.

(c)     On the Effective Date, pursuant to the Settlement Order and the Confirmation
Order, which orders shall amend and supersede such orders of the Title III Court entered in the
COFINA Title III Case, the Commonwealth Title III Case, the Adversary Proceeding and the
Interpleader Action to the extent that such orders are inconsistent therewith, (1) BNYM shall
make distributions as set forth in the Term Sheet, (2) the Adversary Proceeding shall be
dismissed, with prejudice, and all other claims and causes of action asserted therein by the
Commonwealth Agent, the COFINA Agent and the Permitted Intervenors, as defined in the
Adversary Proceeding, shall be deemed dismissed, with prejudice, and the Commonwealth
Agent and the COFINA Agent and their respective professionals shall be deemed to have
satisfied any and all of their respective obligations in connection with the Adversary Proceeding
and the COFINA Agent shall be deemed to have been released from any and all liabilities
associated therewith, (3) the Interpleader Action will be dismissed, with prejudice, and all other
claims and causes of action asserted therein shall be dismissed, with prejudice, and the funds
deposited in connection therewith shall be distributed in accordance with the terms and
provisions of this Term Sheet.

EXECUTION VERSION

**4.   Conditions Precedent.**   This Agreement shall become effective upon the following conditions precedent having been satisfied or waived by the Parties:

(i)      The Approval Orders have each been entered, are unstayed, and as to which orders (A) the deadline to file a notice of appeal or petition for certiorari has lapsed (including any extension provided by Bankruptcy Rule 8002(b)(1)) and no appeal or petition is pending or, (B) if the subject of a timely appeal or petition, no stay, suspension, or injunction precluding effectiveness has been granted and is continuing;

(ii)      The Commonwealth will have provided protection of COFINA's property through legislation and covenants to be included for the benefit of COFINA and its creditors in the COFINA Plan and the Definitive Documentation.  Without in any way limiting the foregoing, but subject to the occurrence of the Effective Date, the Commonwealth will own and will be entitled to receive the Commonwealth Portion; and

(iii)      Entry of the Approval Order approving this Agreement in the Commonwealth Title III Case shall be a condition to confirmation of the COFINA Plan and entry of the Approval Order confirming the COFINA Plan in the COFINA Title III Case shall be a condition to entry of the Approval Order in the Commonwealth Title III Case.

**5.   Releases.**

(a)      On the Effective Date, this Agreement fully, finally, and forever resolves and releases, except to the extent necessary to enforce this Agreement or the COFINA Plan, all claims against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii) concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as expanded by the Mediation Scope Order); provided, however, that nothing herein shall affect any rights, claims, or interests that creditors of the Commonwealth may have with respect to the COFINA Pledged Taxes that are (x) not allocated to COFINA consistent with the Agreement in Principle and (y) received by the Commonwealth.

(b)      Notwithstanding the proviso in Section 5(a) hereof, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the COFINA Agent, COFINA, and its current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members, and any creditors or insurers of debt of COFINA, (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits.

102824080v4

EXECUTION VERSION

(c)     For the avoidance of doubt, (a) the foregoing releases shall not release any claims that a beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities, may have against the insurer of such Existing Securities (or any claims that such insurer may have against the beneficial holder of such Existing Securities) under or relating to the policy of insurance issued by such insurer except as the COFINA Plan may otherwise provide and (b) there shall be no release of any claims by any party against the insurers or underwriters of the Existing Securities or the general obligation bonds issued by the Commonwealth, including their current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.

(d)     Any claims by COFINA, against any underwriter of the COFINA Bonds (such claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the nature of contribution, reimbursement, or indemnification, however denominated or described, in connection with, arising out of, or in any way related to such claims (the "Covered Claims"). Any underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.

(e)     The Title III Court's approval of this Agreement, including the order confirming the COFINA Plan, shall specifically grant releases and injunctions consistent with this Section 5.

**6.     COFINA Agent Support.**  The COFINA Agent shall support confirmation of the COFINA Plan properly embodying this Agreement.  In the event that the Title III Court reinstates one or both of the Motions for Summary Judgment as contemplated by the SJ Termination Order, the Parties shall jointly seek to extend the Abeyance Period until the earlier to occur of (a) the Effective Date and (b) the termination of this Agreement pursuant to the terms hereof.

**7.     Fees and Expenses**.  Except as otherwise authorized or permitted by the Term Sheet, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; provided, however, that nothing in this Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3269] and other orders of the Title III Court.

9

EXECUTION VERSION

8.    **Termination**.

(a)    This Agreement shall terminate automatically if the effective date of the COFINA Plan incorporating this Agreement does not occur or the Settlement Motion is not approved, in each case, by March 1, 2019; provided, however, that, upon notice provided by the Oversight Board, such date shall be extended up to and including June 1, 2019.

(b)    The COFINA Agent may terminate this Agreement by providing written notice to the Oversight Board upon the occurrence of any of the following events, with termination being effective immediately upon receipt of such notice:

(i)    The Title III Court enters an order that no confirmable COFINA Plan can be proposed that is consistent with this Agreement.

(ii)    The Title III Court enters an order on the merits of the Motions for Summary Judgment (except for an order resolving the Motions for Summary Judgment on the basis that this Agreement has been approved and the Effective Date has occurred).

(iii)    The COFINA Title III Case is dismissed prior to confirmation of the COFINA Plan.

(iv)    The COFINA Plan is modified to be materially inconsistent with the Term Sheet in the COFINA Agent's reasonable discretion.

(c)    In the event that this Agreement is terminated by the COFINA Agent, then (i) except as set forth in the order entered by the Title III Court [Adv. Pro. No. 534] governing the COFINA Pledged Taxes collected as of June 30, 2018 (the "SUT Procedures Order"), which order shall survive any termination of this Agreement, this Agreement shall be null and void *ab initio* and of no force or effect and (ii) each of the Parties shall be returned to the Parties' position *status quo ante* (except as set forth in the SUT Procedures Order), and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein, and nothing herein shall be deemed an admission of any kind.

9.    **Rules of Construction.**  The headings of the sections of this Agreement are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining or modifying, in any manner, the language or meaning of those sections or subsections.  Each of the exhibits, annexes, signature pages, and schedules annexed hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes, and schedules.  When a reference is made in this Agreement to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this Agreement unless otherwise indicated.  Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement, (c) the words "include,"

EXECUTION VERSION

"includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the Party drafting such agreement or document.

10. **No Admission.** Each Party expressly recognizes that neither this Agreement, nor any other action taken to comply with this Agreement represents an admission of liability or responsibility on the part of either Party. Neither this Agreement nor any action taken to comply with its provisions shall be construed as, or used as, an admission of any fault, wrongdoing, or liability whatsoever in this or any other matter.

11. **Entire Agreement.** The Parties acknowledge that no promise, inducement, or agreement not stated herein has been made to them in connection with this Agreement, and that this Agreement constitutes the entire agreement between them.

12. **No Oral Modifications.** This Agreement may be amended, modified or otherwise changed only in a writing signed by both Parties.

13. **Severability.** If any provision of this Agreement, or application of such provision to any person or circumstance, shall be held invalid by a court of competent jurisdiction, then such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and this Agreement shall be construed, performed, and enforced as if the reformed provision had been included in this Agreement at inception, and the invalidity of any provision of this Agreement shall not affect the remainder of this Agreement.

14. **Choice of Law; Jurisdiction.** This Agreement shall be governed by, and construed under and in accordance with, the laws of the State of New York, determined without reference to principles of conflicts of law (other than Section 5-1401 of the New York General Obligations Law). The Parties agree that the Title III Court shall have exclusive jurisdiction over any disputes relating to this Agreement until both the Commonwealth Title III Case and the COFINA Title III Case have been closed. The Parties irrevocably waive any objection on the grounds of venue, *forum non conveniens* or any similar grounds.

15. **Counterparts.** This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Each of the Parties may execute this Agreement by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original. This Agreement shall not be binding until signed by both Parties.

16. **Inconsistencies.** To the extent that any of the terms and provisions set forth herein are inconsistent with the terms and provisions of the Term Sheet, the terms and provisions of the Term Sheet shall govern in all respects.

102824080v4

EXECUTION VERSION

     **IN WITNESS WHEREOF**, this Agreement is executed as of the date first written above.

               **BETTINA M. WHYTE**
               **IN HER CAPACITY AS COFINA AGENT**

               By:
               Name:   Bettina M Whyte
               Title:    COFINA Agent

               **THE FINANCIAL OVERSIGHT**
               **AND MANAGEMENT BOARD FOR PUERTO**
               **RICO**

               By:
               Name:
               Title:

12

EXECUTION VERSION

**IN WITNESS WHEREOF**, this Agreement is executed as of the date first written above.

**BETTINA M. WHYTE**
**IN HER CAPACITY AS COFINA AGENT**

By: _____
Name: _____
Title: _____


**THE FINANCIAL OVERSIGHT**
**AND MANAGEMENT BOARD FOR PUERTO**
**RICO**

By: _____*Natalie A. Jaresko*_____
Name: _____Natalie A. Jaresko_____
Title: _____October 19, 2018_____

12

EXECUTION VERSION

**Schedule 1**

**COFINA Bond Issuances**

| COFINA Bond Series | Date of Issuance | Principal Amount of Issuance |
|---|---|---|
| Series 2007A | July 13, 2007 | $2,667,603,572.60 |
| Series 2007B | July 17, 2007 | $1,333,101,779.90 |
| Series 2007C | December 18, 2007 | $499,996,627.90 |
| Series 2008A | June 25, 2008 | $737,046,992.35 |
| Series 2009A | June 10, 2009 | $4,118,153,700.00 |
| Senior Series 2009C | June 10, 2009 | $237,875,000.00 |
| First Subordinate Series 2009B | June 19, 2009 | $1,217,915,799.20 |
| First Subordinate Series 2010A | January 28, 2010 | $1,823,757,271.30 |
| First Subordinate Series 2010C | June 24, 2010 | $1,619,404,596.60 |
| First Subordinate Series 2010D | June 24, 2010 | $89,435,000.00 |
| First Subordinate Series 2010E | June 24, 2010 | $92,755,000.00 |
| First Subordinate Series 2011A-1 | November 16, 2011 | $397,758,386.20 |
| First Subordinate Series 2011A-2 | November 16, 2011 | $337,037,187.75 |
| First Subordinate Series 2011B | November 16, 2011 | $45,620,000.00 |
| Senior Series 2011C | December 1, 2011 | $1,006,474,702.00 |
| Senior Series 2011D | December 1, 2011 | $91,155,000.00 |

102824080v4

**Exhibit B**

**COFINA Bonds**

| Resolution | Bond Series | Amounts |
|---|---|---|
| First Supplemental Sales Tax Revenue Bond Resolution, adopted on July 13, 2007 | Senior Series 2007A | $2,667,603,573 |
| Second Supplemental Sales Tax Revenue Bond Resolution, adopted on July 17, 2007 | Senior Series 2007B | $1,333,101,780 |
| Third Supplemental Sales Tax Revenue Bond Resolution, adopted December 18, 2007 | Senior Series 2007C | $499,996,628 |
| Fourth Supplemental Sales Tax Revenue Bond Resolution, adopted on June 25, 2008 | Senior Series 2008A | $737,046,992 |
| Seventh Supplemental Sales Tax Revenue Bond Resolution, adopted on June 10, 2009 | First Subordinate Series 2009A | $4,118,153,700 |
| Eighth Supplemental Sales Tax Revenue Bond Resolution, adopted on June 17, 2009 | First Subordinate Series 2009B | $1,217,915,799 |
| Seventh Supplemental Sales Tax Revenue Bond Resolution, adopted on June 10, 2009 | Senior Series 2009C | $237,875,000 |
| Twelfth Supplemental Sales Tax Revenue Bond Resolution, adopted on January 28, 2010 | First Subordinate Series 2010A | $1,823,757,271 |
| Fourteenth Supplemental Sales Tax Revenue Bond Resolution, adopted on June 24, 2010 | First Subordinate Series 2010C | $1,619,404,577 |
| Fifteenth Supplemental Sales Tax Revenue Bond Resolution, adopted on June 24, 2010 | First Subordinate Series 2010D | $89,435,000 |
| Sixteenth Supplemental Sales Tax Revenue Bond Resolution, adopted on June 24, 2010 | First Subordinate Series 2010E | $92,755,000 |
| Eighteenth Supplemental Sales Tax Revenue Bond Resolution, adopted November 16, 2011 | First Subordinate Series 2011A-1<br><br>First Subordinate Series 2011A-2 | $397,758,386<br><br>$337,037,188 |
| Nineteenth Supplemental Sales Tax Revenue Bond Resolution, adopted November 16, 2011 | First Subordinate Series 2011B | $45,600,000 |
| Twentieth Supplemental Sales Tax Revenue Bond Resolution, adopted December 1, 2011 | Senior Series 2011C | $1,006,474,702 |
| Twenty First Supplemental Sales Tax Revenue Bond Resolution, adopted December 1, 2011 | Senior Series 2011D | $91,155,000 |

**<u>Exhibit C</u>**

**Joint Informative Motion of Commonwealth Agent and
COFINA Agent Disclosing Agreement in Principle**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of

THE COMMONWEALTH OF PUERTO RICO *et al.*,

       Debtors.[1]

--------------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE COMMONWEALTH OF
PUERTO RICO,

       as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

       as representative of

THE COMMONWEALTH OF PUERTO RICO,

       Plaintiff,

v.

BETTINA WHYTE,

       as agent of

|  |  |
|---|---|
| : | PROMESA |
| : | Title III |
| : | Case No. 17-BK-3283 (LTS) |
| : | (Jointly Administered) |
| : | Adv. Proc. No. 17-00257-LTS |

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

THE FINANCIAL OVERSIGHT AND :
MANAGEMENT BOARD FOR PUERTO RICO :
                                   :
        as representative of       :
                                   :
THE PUERTO RICO SALES TAX FINANCING :
CORPORATION,                       :
                                   :
        Defendant.                 :
-------------------------------------------------------------------x

### JOINT INFORMATIVE MOTION OF COMMONWEALTH AGENT AND COFINA AGENT DISCLOSING AGREEMENT IN PRINCIPLE

To The Honorable United States District Court Judge Laura Taylor Swain:

1.      On June 5, 2018, the Commonwealth Agent[2] and the COFINA Agent submitted the *Joint Motion of Commonwealth Agent and COFINA Agent Requesting that Court Hold Decision on Motions for Summary Judgment in Abeyance for 60-Day Period* [Adv. Pro. No. 17-257, Dkt. No. 484]. (the "Joint Urgent Motion"), which disclosed that the Agents have reached an agreement in principle to settle the Commonwealth-COFINA Dispute and those related issues that may be mediated pursuant to the order expanding the scope of the Agents' mediation authority.[3]

2.      The Commonwealth Agent and the COFINA Agent respectfully submit this joint informative motion in order to disclose the agreement in principle, which is attached hereto as Exhibit A.

3.      Under paragraph 4(i) of the Stipulation, any settlement requires the consent of at least one of the two Commonwealth Creditor Representatives.  The Official Committee of

---

[2]     All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Stipulation and Order Approving Procedures to Resolve Commonwealth-COFINA Dispute* [Dkt. No. 996] (the "**Stipulation**").

[3]     *Order Granting Joint Urgent Motion of the Financial Oversight and Management Board for Puerto Rico, the Commonwealth Agent, and the COFINA Agent for an Order Expanding for Mediation Purposes Only Authority and Immunity Protections* [Adv. Pro. No. 17-257, Dkt. No. 284].

Retirees is one of the Commonwealth Creditor Representatives. The Official Committee of
Retirees has advised the Commonwealth Agent that the Official Committee of Retirees supports
the agreement in principle (which support by the Official Committee of Retirees is conditioned
on definitive documentation, as it is for both Agents).

4.     Although the Agents have reached an agreement in principle, holders of claims
that would be affected by a settlement should be aware that there are various conditions
precedent and subsequent that may prevent the settlement from ever becoming effective.

*[The remainder of this page is intentionally left blank]*

Dated: June 7, 2018                Respectfully submitted,
      New York, New York

   /s/ *Luc A. Despins*

Luc A. Despins, Esq. (*Pro Hac Vice*)
James R. Bliss, Esq. (*Pro Hac Vice*)
James B. Worthington, Esq. (*Pro Hac Vice*)
G. Alexander Bongartz, Esq. (*Pro Hac Vice*)
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
Facsimile: (212) 319-4090
Email: lucdespins@paulhastings.com
       jamesbliss@paulhastings.com
       jamesworthington@paulhastings.com
       alexbongartz@paulhastings.com

*Counsel to the Commonwealth Agent*


   /s/ *Juan J. Casillas Ayala*

Juan J. Casillas Ayala, Esq.
(USDC – PR 218312)
Diana M. Batlle-Barasorda, Esq.
(USDC – PR 213103)
Alberto J.E. Añeses Negrón, Esq.
(USDC – PR 302710)
Ericka C. Montull-Novoa, Esq.
(USDC – PR 230601)
**CASILLAS, SANTIAGO & TORRES LLC**
El Caribe Office Building
53 Palmeras Street, Suite 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
Facsimile: (787) 523-3433
Email: jcasillas@cstlawpr.com
      dbatlle@cstlawpr.com
      aaneses@cstlawpr.com
      emontull@cstlawpr.com

*Local Counsel to the Commonwealth Agent*

Dated: June 7, 2018
New York, New York

Respectfully submitted,

By: /s/ *Matthew A. Feldman*
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Martin L. Seidel (*pro hac vice*)
James C. Dugan (*pro hac vice*)
Jeffrey B. Korn (*pro hac vice*)
Paul V. Shalhoub (*pro hac vice*)
Antonio Yanez, Jr. (*pro hac vice*)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
jminias@willkie.com
mseidel@willkie.com
jdugan@willkie.com
jkorn@willkie.com
pshalhoub@willkie.com
ayanez@willkie.com

*Counsel to the COFINA Agent*

Kenneth N. Klee (*pro hac vice*)
Daniel J. Bussel (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
**KLEE, TUCHIN, BOGDANOFF &
STERN LLP**
1999 Avenue of the Stars
39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: kklee@ktbslaw.com
dbussel@ktbslaw.com
jweiss@ktbslaw.com
*Special Municipal Bankruptcy Counsel
to the COFINA Agent*

/s/ *Nilda M. Navarro-Cabrer*
Nilda M. Navarro-Cabrer
(USDC – PR No. 201212)
**NAVARRO-CABRER LAW OFFICES**
El Centro I, Suite 206
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 764-9595
Facsimile: (787) 765-7575
Email: navarro@navarrolawpr.com

*Local Counsel to the COFINA Agent*

# <u>EXHIBIT A</u>

**Agreement in Principle**

<u>**Terms and Conditions of Agreement in Principle to**</u>
<u>**Resolve Commonwealth-COFINA Dispute**</u>

<u>Economic Terms of Settlement</u>

➢ COFINA and the Commonwealth would agree to share the statutory Pledged Sales Tax Base Amount ("<u>PSTBA</u>").

➢ COFINA will receive (a) 53.65% of the yearly scheduled PSTBA (beginning with payments made on 7/1/18), and (b) 100% of the cash held in trust at Bank of New York Mellon as of 6/30/18.
  o COFINA's 53.65% portion of the PSTBA would be the first dollars of the 5.5% SUT distributed each year.
  o Securities to be structured subsequently.
  o COFINA's Title III plan of adjustment shall provide that, to the extent permitted under applicable law, all restructured securities issued by reorganized COFINA (or a new entity established pursuant to COFINA's Title III plan of adjustment) will be tax-exempt, with the COFINA Agent being satisfied (in its sole discretion), prior to execution of the settlement agreement, that this condition will be met.
  o The PSTBA shall be equal to the sum of "original fixed income" as prescribed in section 3 of Act 91 (as amended and currently in effect), i.e., the amount of $783.2 million for Fiscal Year 2019, growing at 4% annually up to a cap of $1.85 billion by Fiscal Year 2041. In no event shall the make-whole provision of section 5(d) of Act 91 (as amended and currently in effect) operate to fund amounts on COFINA bonds by reason of any purported acceleration or defaults.

➢ The Commonwealth will receive 46.35% of the yearly scheduled PSTBA (beginning with payments made on 7/1/18), any residual of the 5.5% SUT, and the additional 4.5% SUT surcharge.
  o The Commonwealth's 46.35% share of the PSTBA would be received by the Commonwealth each year after COFINA receives its full 53.65% share of the PSTBA.

➢ COFINA shall own each year the first dollars of the 5.5% SUT up to the amount of COFINA's 53.65% share of the PSTBA, and the Commonwealth shall own each year the 5.5% SUT in excess of such amount.

<u>Escrow Account</u>

➢ The Commonwealth's share of the PSTBA will be held in escrow by an escrow agent selected by the Commonwealth Agent (in its sole discretion, but after consultation with the Oversight Board) and approved pursuant to an order of the Title III court, with such escrowed funds being allocated to holders of claims against the Commonwealth under a Commonwealth Title III plan of adjustment;

provided, however, that the Commonwealth shall have recourse to the funds in escrow (after exhausting its ordinary sources of liquidity) to the extent necessary to pay for essential services, as determined by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") (or a subsequent entity (if any) having similar supervisory authority as the Oversight Board after confirmation of the Commonwealth's Title III plan of adjustment).

<u>Post-July 1, 2018 Collection of SUT</u>

- SUT revenues collected on or after July 1, 2018 (up to the PSTBA amount) shall be deposited into an escrow account at Delaware Trust Company (the "Interim Escrow Account") pending approval of the settlement by the Title III court, provided that:

  ➢ upon the effective date of the settlement, such escrowed funds shall be released to COFINA and the Commonwealth (subject to the escrow arrangement above) in accordance with the percentage shares of the PSTBA set forth above; and

  ➢ in the event that either (i) the Agents do not execute a settlement agreement within 60 days after the date that the Commonwealth Agent and the COFINA Agent agree to the terms set forth herein, or (ii) the effective date of COFINA's Title III plan of adjustment approving the settlement does not occur within 200 days after the Commonwealth Agent and the COFINA Agent have executed the settlement agreement (as such deadlines may be extended pursuant to the terms hereof), then the ruling by the Title III court concerning the ownership of Pledged Sales Taxes not yet collected by the Commonwealth (as of June 30, 2018) shall be determinative of the disposition of the funds in the Interim Escrow Account (it being understood that neither party is waiving any appellate rights with respect to such determination).

<u>Injunction</u>

The effectiveness of the settlement is conditioned on the following:

  ➢ An injunction (or some federal legislative action) barring, as part of the settlement, any future challenges to (i) all of the terms of the settlement, (ii) the 5.5% SUT, and (iii) the COFINA structure and its related legislation, with the COFINA Agent being satisfied (in its sole discretion), prior to execution of the settlement agreement, that this condition will be met; provided, however, that any factual or legal findings made by the Title III court in connection with the approval of the settlement (*i.e.*, the order confirming COFINA's Title III plan of adjustment and the order approving the settlement in the Commonwealth's Title III case) with respect to the COFINA structure and its related legislation shall have no preclusive, collateral estoppel, *res judicata*, precedential, or other similar effect on any aspect of the Title III cases of the Commonwealth of Puerto Rico and its instrumentalities (whether such cases are currently pending before the Title III court or to be commenced in the future) (collectively, the "Title III Cases"), (b) no factual or legal inference may be drawn from such findings in

connection with any aspect of the Title III Cases, and (c) no party or counsel for any party shall be precluded from taking a position inconsistent with such findings in any other proceeding or contested matter in the Title III Cases, except (in each of (a), (b), or (c)) to the extent necessary to protect or enforce the terms of the settlement (whether in the Title III Cases or in any other court or proceeding). The purpose and goal of an injunction would be to preclude any future challenges to COFINA and the Commonwealth's respective ownership and other rights to the 5.5% SUT under the settlement.

Title III court to retain jurisdiction over implementation of the settlement, including, without limitation, the allocation of the PSTBA to COFINA and the Commonwealth.

The 5.5% SUT would not be subject to repeal, limit, restraint, priming or dilution by any other lien or loan, or any other interference, with the COFINA Agent being satisfied, prior to execution of the settlement agreement, that this condition will be met; provided, however, that the issuance of Additional Securities (as defined below) shall not be deemed to be a violation of this condition.

## Non-Recourse to Commonwealth and 40-Year Maturity

➢ The restructured COFINA securities will (a) be non-recourse to the Commonwealth (including the portion of the PSTBA allocated to the Commonwealth under the terms of the settlement) and (b) have a fixed maturity of not more than 40 years commencing on July 1, 2018.

## Commutation

➢ Treatment of monoline insurance policies and commutation will be addressed in COFINA's Title III plan of adjustment.

## Event of Default and Acceleration

➢ COFINA will agree to forbear from seeking acceleration against the full 5.5% SUT, but upon an event of default under the restructured COFINA securities, COFINA bondholders will have the right to accelerate their restructured COFINA securities only against COFINA's annual 53.65% share of the PSTBA. For the avoidance of doubt, such acceleration will not affect the Commonwealth's right to receive its 46.35% share of the PSTBA each year or create an obligation on the part of the Commonwealth to top up COFINA's annual 53.65% share of the PSTBA.

## Fees and Expenses

➢ No costs (including without limitation professional fees) incurred by the COFINA-side parties (including without limitation COFINA, the COFINA

3

bondholders, and insurers of COFINA bonds) with respect to COFINA (including without limitation the litigation of the Commonwealth-COFINA Dispute, COFINA's Title III plan of adjustment and the structuring of the new securities) shall be borne by the Commonwealth or shall affect the amount of SUT to which the Commonwealth is entitled under the settlement; provided, however, nothing shall affect the right of the COFINA Agent and her professionals to be compensated in accordance with prior orders of the Title III court.

Conditions to Effectiveness

1. Effectiveness of settlement to be conditioned on:

   ➤ Title III court enters (a) an order in COFINA's Title III case confirming COFINA's Title III plan of adjustment that incorporates the settlement and (b) an order in the Commonwealth's Title III case approving the Commonwealth's entry into the settlement.  Entry of the settlement order in the Commonwealth's Title III case shall be a condition to confirmation of COFINA's Title III plan of adjustment.

   The settlement shall terminate automatically if the effective date of COFINA's Title III plan of adjustment approving the settlement does not occur within 200 days after the Commonwealth Agent and the COFINA Agent have executed the settlement agreement; provided, however, that the Commonwealth Agent may extend, in its sole discretion, the outside date for the effective date of COFINA's Title III plan of adjustment.  If the Oversight Board determines it is impracticable to schedule a timely confirmation hearing on a Commonwealth Title III plan of adjustment embodying the settlement, then the Commonwealth Agent shall use reasonable best efforts to seek approval by the Title III court of the settlement agreement in its Title III case (by filing a motion in its Title III case on or before the later of (a) three days after the deadline to vote on COFINA's Title III plan of adjustment or (b) the day that is 45 days before the date scheduled for the hearing on confirmation of COFINA's Title III plan) contemporaneously with confirmation of COFINA's Title III plan of adjustment incorporating the settlement.  The COFINA Agent shall use reasonable best efforts to obtain confirmation of its Title III plan of adjustment incorporating the settlement (accounting for the fact that the Oversight Board is the only party that may propose a Title III plan of adjustment).

   At or before execution of the settlement agreement, the Commonwealth Agent shall be satisfied (in its sole discretion) that a sufficient number of holders of COFINA debt will support COFINA's Title III plan of adjustment incorporating the settlement.

2. The settlement would not be conditioned or tied to the confirmation or effectiveness of a Commonwealth Title III plan of adjustment.

Permitted Future Debt Issuances

> COFINA may issue securities to refinance the restructured COFINA securities issued under COFINA's Title III plan of adjustment, subject to the limitations that (a) regardless of the terms of such new securities, COFINA shall not be entitled to an increase of its share of the PSTBA under the settlement and (b) the maturity date of such new securities is no later than the maturity date of the restructured COFINA securities.

> To the extent the Oversight Board determines that it is beneficial to the Commonwealth and/or COFINA, the restructured COFINA securities would be callable after a period of time on terms to be negotiated with the Oversight Board.

> The Commonwealth may cause COFINA to issue future debt or securities out of COFINA (the "Additional Securities"); provided, however, that COFINA will be prohibited from issuing such Additional Securities, unless (i) the interests of the holders of such Additional Securities in the portion of the 5.5% SUT in COFINA's 53.65% share of the PSTBA under the settlement, or subsequently transferred to COFINA by the Commonwealth, is subordinate to the interests of the holders of restructured COFINA securities (or any securities refinancing such securities) in the portion of the 5.5% SUT allocated in COFINA's 53.65% share of the PSTBA under the settlement, (ii) the preceding year's collections of the 5.5% SUT (grown annually at a percentage that is equal to (a) for the fiscal years 2019 through 2023, the SUT growth rates as stated in the Certified Fiscal Plan dated April 19, 2018, and (b) for the fiscal years after fiscal year 2023, the average SUT growth rate for the preceding 5 years) is at least 1.75x times the COFINA debt service for each year (pro forma for any new debt/securities), (iii) the preceding year's collections of the 5.5% SUT is at least 1.10x the maximum COFINA debt service for any year (pro forma for any new debt/securities), and (iv) such Additional Securities are included for purposes of calculating the Commonwealth's debt limitation under Article VI, Section 2 of the Puerto Rico Constitution.

Releases

> Except as set forth in the settlement agreement, the settlement fully, finally, and forever resolves and releases all claims against and ownership interests in any SUT revenues, including without limitation all claims, causes of action, and counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii) concerning or relating to the Pledged Sales Taxes or the Commonwealth-COFINA Dispute.[1]

> Except as to the rights expressly set forth in the settlement agreement, COFINA, all insurers of COFINA bonds, and all holders of COFINA bonds shall be barred

---

[1] Defined terms used in this bullet have the meanings ascribed to such terms in the Stipulation [Docket No. 996].

Case:17-03283-LTS Doc#:4067 Filed:10/08/18 Entered:10/08/18 16:36:08 Desc: Main
Case:17-00257-LTS Doc#:486 Filed:10/08/18 Entered:10/08/18 16:36:08 Desc:
Document Page 96 of 98
Exhibit A Page 96 of 98

JUNE 5, 2018

from bringing or pursuing any and all claims (a) in the case of the insurers of
COFINA bonds and holders of COFINA bonds, arising out of their capacities as
COFINA bondholders/insurers in any way related to the COFINA structure, the
SUT, or the Pledged Sales Taxes and (b) in the case of COFINA, in any way
related to the COFINA structure, the SUT, or the Pledged Sales Taxes, against the
Commonwealth, its instrumentalities, the Commonwealth Agent, the COFINA
Agent, the Oversight Board, and each of their respective current and former
officers, directors, agents, attorneys, employees, affiliates, advisors, consultants,
attorneys, and members.

➢ For the avoidance of doubt, there shall be no release of any claims by any party
against the underwriters of the COFINA bonds or the GO bonds, including their
current and former officers, directors, agents, attorneys, employees, affiliates,
advisors, consultants, attorneys, and members.

Definitive Documentation and Implementation Process

➢ The definitive documentation will include (i) the settlement agreement, (ii) the
documentation governing the securities to be issued by COFINA, and (iii)
COFINA's Title III plan of adjustment (collectively, the "Definitive
Documentation").

➢ The Commonwealth Agent and the COFINA Agent will cooperate with each
other with respect to the drafting of the settlement agreement, and, to the extent
that the Commonwealth Agent and the COFINA Agent are part of the process of
drafting the Definitive Documentation other than the settlement agreement, the
Commonwealth Agent and COFINA Agent shall use reasonable best efforts to
ensure that the Definitive Documentation is not inconsistent with the settlement.

➢ Upon the Commonwealth Agent and COFINA Agent having agreed to the terms
set forth herein, the Commonwealth Agent and the COFINA Agent shall jointly
submit a letter or motion to the Title III court requesting that the court not rule on
the Commonwealth-COFINA Dispute for a period of 60 days, so as to allow the
parties to document the settlement agreement.

➢ The agreement set forth in this document shall terminate automatically (except for
the section "Post-July 1, 2018 Collection of SUT," which shall survive
termination) if the Commonwealth Agent and the COFINA Agent are unable to
agree on the terms of the settlement agreement within 60 days after the date that
the Commonwealth Agent and the COFINA Agent agree to the terms set forth
herein (unless both parties agree in writing to extend such outside date).

➢ After execution of the settlement agreement, the Commonwealth Agent shall file
a motion in COFINA's Title III case requesting entry of an order granting
intervention rights to the Commonwealth Agent to appear and be heard with

6

Case:17-03283-LTS Doc#:4067-1 Filed:10/08/18 Entered:10/08/18 16:36:08 Desc:Main
Case:17-00257-LTS Doc#:486-1 Filed:08/07/18 Entered:08/07/18 16:26:13 Desc:
Document Page 97 of 98
Exhibit A Page 8 of 9

JUNE 5, 2018

respect to all matters in that case concerning the settlement, and the COFINA
Agent shall file a statement in support of such motion. Failure by the Title III
court to enter such an order shall not permit either the Commonwealth Agent or
the COFINA Agent to terminate the settlement agreement.

[The remainder of this page is intentionally left blank]

The Commonwealth Agent and COFINA Agent hereby agree to act in good faith to negotiate the definitive documents and formalize the terms of the foregoing agreement in principle into a final settlement agreement (subject to the approval of the Court pursuant to the terms of the Stipulation).  Notwithstanding anything to the contrary herein, once this Term Sheet has been executed by both Agents, (i) the section "Post-July 1, 2018 Collection of SUT" shall be immediately effective and shall survive any termination or expiration of this Term Sheet, and (ii) the section "Definitive Documentation and Implementation Process" shall be immediately effective.

**ACCEPTED AND AGREED:**

**COFINA AGENT**

Signature:  /s/ Bettina M. Whyte
Name:  Bettina M. Whyte
Date:  June 5, 2018

**COMMONWEALTH AGENT (through its counsel, Paul Hastings LLP)**

Signature:  /s/ Luc A. Despins
Name:  Luc A. Despins
Date:  June 5, 2018