**Hearing Date:** November 7, 2018 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: October 27, 2018 at 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- X
                                                                       :
In re:                                                                 :
                                                                       :
THE FINANCIAL OVERSIGHT AND                                            :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                      :   Title III
                                                                       :
     as representative of                     :   Case No. 17-BK-3283 (LTS)
                                                                       :
                                                                       :   **Re: ECF Nos. 3914, 3916,**
                                                                       :         **3966, 4038**
THE COMMONWEALTH OF PUERTO RICO *et al.,*                              :
                                                                       :   (Jointly Administered)
                                                                       :
     Debtors.[1]                               :
---------------------------------------------------------------------- X

### MOVANTS' REPLY TO OBJECTION OF THE COMMONWEALTH TO MOTION FOR RELIEF FROM AUTOMATIC STAY FILED BY AMPR AND AMPR-LS

To the Honorable United States District Court Judge Laura Taylor Swain:

      Asociación de Maestros de Puerto Rico ("AMPR"), and its Union, Asociación de Maestros de Puerto Rico-Local Sindical ("AMPR-LS"), both of which are affiliates of the American Federation of Teachers, AFL-CIO ("AFT"), for themselves and in representation of four hundred and twelve (412) of their members, all of which are currently retired teachers from the Department of Education of the Commonwealth (hereinafter collectively "Movants"), respectfully submit this reply ( the "Reply") to the Objection of the Commonwealth [ECF No. 4038] ( the "Objection")

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

and for the reasons stated herein and those stated in the Motion to Lift Stay [ECF No. 3914] (the "<u>Motion</u>") respectfully request the Honorable Court to grant the Motion and consequently lift the stay in favor of Movants, after arguments are heard by the parties during the November 7, 2018 Omnibus Hearing pursuant to the Notice of Hearing to be filed by Movant today in conjunction with this Reply.

## **PRELIMINARY STATEMENT**

1. On October 10, 2018, the Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") filed its Objection to Movants' Motion and as part of its Objection it stated that Movants' claim should be resolved through the claims resolution process and not by the Commonwealth Court. Movants herein contend that said averment by the Commonwealth may not be supported, in whole or in part, by the Commonwealth and the Oversight Board (herein after collectively the "Government Parties") own actions and consequently, as part of the arguments in support of this this Reply, Movants respectfully request the Honorable Court to consider, whether the Government Parties expressly excluded Movants' claims from the Bar Date Order [ECF No. 2521] and thus, excluded the Lawsuit indirectly or directly, from the application of the Title III automatic stay and the claims resolution process of the Commonwealth Title III case.

2. Movants are aware that the specific grounds in support for this argument were not incorporated on their Motion. However, Movants are of the position that this Honorable Court should nonetheless consider the argument, inasmuch as it goes to the center of the controversy as to whether Movants' claims are or not expressly excluded from the claims resolution process, by the Government Parties' own statements and request for relief in their Bar Date Motion and Order. A ruling by this Honorable Court on the issue of whether the Government Parties excluded Movants' like claims from the Bar Date Order would resolve whether Movants' Lawsuit is also

2

exempted from the Title III automatic stay. In light of the aforementioned, Movants address this argument first, before addressing the Commonwealth's particular objections to the Motion under the *Sonnax* test.

**The Commonwealth Expressly Excluded Movants' Like Claims from the Bar Date Order and Gave Notice to Movants and Other Similarly Situated Not to File Proof of Claims**

3. The Government Parties' Bar Date Motion and, consequently the order entered by this Honorable Court, *Order (A) Establishing Deadlines and Procedure for Filing Proof of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Bar Date Order") on its Sixth Paragraph establishes which persons were not required to file proof of claims by the applicable bar date. *See*, Bar Date Order ¶ 6, subsections (*a*) to (*o*). The Government Parties, on subsection (*g*) of ¶ 6 of the Bar Date Order expressed that certain union or non-union employee, including former employees were not required to file claims for compensation and employee benefits, including without limitation, wages, salaries, employee medical benefits and/or insurance benefits or workers' compensation. Defining, those claims that were exempted as Compensation Claims. Subsection (g), reads as follows:

> Persons NOT Required to File Proofs of Claim by the Applicable Bar Dates. The following persons and entities are not required to file proof of claims on or before the applicable Bar Dates:
>
> a. Allowed Claims: Any person or entity whose claim was previously allowed by an order of this Court entered on or before the applicable Bar Date;
> b. …. .
>  ….
>
> g. Union or Non-Union Employee Claims: Any union-represented or non-union represented employee, furloughed employee, or former employee for compensation and employments benefits, including, without limitation, wages, salaries, employee medical

3

>>benefits and/or insurance benefits or workers' compensation claims ("Compensation Claims"); provided, however, that Compensation Claims shall not include claims asserted or to be asserted in any lawsuit or administrative proceeding based on tort or non-employment-related common law, statutory law, or regulation even where such claims assert as damages an entitlement to wages, salaries, employee medical benefits and/or insurance benefits;

*See*, Bar Date Order ¶ 6, subsections (*g)*.

4. The broad language in subsection (g) of the Sixth Paragraph of the Bar Date Order that directs individual employees and former employees <u>not to file claims for unpaid wages and salaries</u>, among other employment benefits, squarely encompasses Movants' unpaid sick leave claims in the Lawsuit. There is no controversy, or dispute to be resolved in the Lawsuit, either of law or fact, as to the following: (1) Movants are former employees of the Commonwealth; (2) Movants legally earned and accrued before the Title III petition day excess sick leave, through their multiple years of employment for the Commonwealth. (See, Objection ¶19, 20, 25).

5. Movants' well pleaded allegations and cited case law in the Motion established, and the Commonwealth did not cite case law to the contrary to dispute that the unpaid sick leave of Commonwealth employees: (i) is defined and constitutes earned salary or wages under the definition of Commonwealth law. *See*, <u>Junta de Relaciones del Trabajo de Puerto Rico v. Orange Crush of Puerto Rico, Inc.</u>, 86 D.P.R. 652 (1962)(the term "*Salary*" encompasses and includes all types of compensation to the employee, including, sick leave pay.); and (ii) that under Commonwealth law, Commonwealth employees have a vested property right over their career positions and earned salaries and wages. *See*, <u>Lupiáñez v. Srio de Instrucción</u>, 105 D.P.R. 696 (1977); *see also*, <u>Pierson Muller I v. Feijoó</u>, 106 D.P.R. 838 (1978)(proprietary right over their employment position, encompasses and extends to any salaries earned).

6. On its Objection, the Commonwealth did not dispute, and readily admitted it the aforementioned facts and concede it that all Movants legally accrued and earned wages and salaries, in the form of excess unpaid sick leave, up to 90 days, before their separation from service in prior years of employment. This is a simple verifiable fact, since the Commonwealth is the custodian of Movants' payroll records.

7. Having admitted and conceded as much, the Commonwealth will be hard press to now argue that Movants' claim for unpaid sick leave in the Lawsuit is the kind excluded by the definition of Compensation Claims found in subsection g of Paragraph Sixth of the Bar Date Order. Since, the Commonwealth itself stated on its Objection that there is no dispute of law or fact that Movants through the years of employment for the Commonwealth earned excess sick leave, up to 90 days. See, Objection ¶19, 20, 25.

8. The Lawsuit is not for the purposes of determining or declaring whether Movants have, as damages, an entitlement to alleged wages or salaries. Nor is the Lawsuit's purpose to determine if the wages or salaries, in the form of accrued sick leave, were in fact earned by Movants in prior multiple years. Since, all accrued and unused sick leave in excess, is by Commonwealth law definition, a previously earned salary of the Commonwealth employee, earned on prior years of employment. Rather, the purpose of the Lawsuit is to obtain a declaration as to whether the Commonwealth's action of retroactively applying Act 26 to deprive Movants of their earned and unpaid salaries from prior years of employment, in the form of accrued excess unpaid sick leave, constitutes a taking of Movants' property (salaries in the form of unpaid sick leave), without due process, under the contract clause of the Commonwealth Constitution, amounting to a *State Action* in violation of Movants' constitutional rights.[2]

---

[2] In further support of the clear and patent violation of Movants' Constitutional Rights under the contracts clause, by actions that can only be described, as debtor misconduct under the Sonnax test, Movants well pleading allegations in

9. Is clear that the language found in subsection (g) requiring the filing of a proof of claims to certain individual employees is not applicable to Movants' claim, as Movants' claims cannot be categorized as employee lawsuits based on tort or non-employment-related common law, statutory law, or regulation, asserting as damages an entitlement to wages, salaries, employee medical benefits and/or insurance benefits. This is evident in the undisputed fact that under Commonwealth law, for an employee of the Commonwealth to have accrued excess sick leave, subject to liquidation upon separation from service, it must first needed to have fully earned that salary on prior years of employment.

10. Is for this reason that the Lawsuit does not assert a claim for determining a future entitlement to salaries and wages. There is no dispute that under Commonwealth law sick leave earned by Movants, is defined as a salary earned in prior years of employment. For that reason, the Lawsuit only seeks a declaration that compels the Commonwealth to disburse or release to Movants their prior earned salary. Rendering the exclusion incorporated in subsection (g) of the Sixth Paragraph of the Bar Date Order clearly inapplicable to Movants' Lawsuit. Since the Government Parties sought to leave out of the claims resolution process any claim of employees and former employees, like Movants, that only sought payment of salaries and wages, previously earned or accrued while working for the Commonwealth, it would be difficult to justify application of the Title III stay to Movants' claims, since they were expressly excluded in the Bar Date Order from the persons that need it to file a proof of claim before the applicable bar date.

11. The fact that AFT filed a proof of claim on behalf of Movants and Four Hundred (400) similarly situated teachers do not change the underlying fact, that the Commonwealth

---

the Motion made a showing that the Commonwealth retroactive application of Act 26, was not only a State Action amounting to a taking, but also expressly prohibited by Article 3 of the Puerto Rico Civil Code, which prohibits the retroactive application of a statute to deprive a right granted by a prior statute. This, Movants respectfully contend fully satisfied the likelihood of success factor under Sonnax.

6

determine to exclude from the claims subject to the claims resolution process, and thus, one can only conclude from the Title III automatic stay, claims for wages and salaries of the like of Movants.

12. Now, the Government Parties cannot purport to go against its own actions and statements, and request that the Title III automatic stay apply, solely to Movants' claims for wages and salaries previously earned, and not to the universe of employees and former employees it directed in the Bar Date Order not to file a proof of claim, because it deemed those claims for wages and salaries exempted from the claims resolution process. It would be an anomaly that the Government Parties directed, specifically individual employees and former employees not to file proof of claims for any unpaid salaries or wages, excluding them from the claims resolution process, and would also attempt to apply to them the Title III automatic stay, if that same individual employee or former employee sought to file a suit in state court for the sole purpose of claiming payment of his last month paycheck.

13. Which begs the question, what recourse, if any, the Government Parties sought to provide that individual employee or former employee? He or she would not have his claim resolved under the claims resolution process, inasmuch as she or he followed the Government Parties directive in the Bar Date Order and did not file a claim. But by the same token, will be precluded to claim in state court his or her prior month's paycheck, since the Commonwealth, like it has done here to Movants, will likely seek the application of the Title III automatic stay to his or her suit to collect his or her last month's paycheck.

14. Technical issues of bankruptcy law, specifically matters concerning the application of the automatic stay have a clear and important role in allowing a Debtor a breathing spell from creditors to restructure its debts. However, bankruptcy courts are courts of law and equity and

7

cannot turn a blind eye to matters, that even if fall outside the technicalities created by well-established case law, deserve a relief in equity based on principles of fairness and justice.

15. Leaving a Commonwealth employee, who's monthly salary is but a fraction at times, of a single billing hour of some of the highly skill professionals in these PROMESA cases, without a true recourse at law to claim something as basic as his last month's paycheck, will serve nothing if not to fully distant these Title III proceedings and all its participants from the harsh realities the inhabitants of Puerto Rico are suffering day to day. And, is Movants humble contention, that it will not serve the interest of justice.

16. For the aforementioned reasons, Movants seek an Order from the Honorable Court, after due notice and hearing, declaring that in light that the Commonwealth expressly excluded from the Bar Date Order and the claims resolution process, all individual employees and former employees claims for wages and salaries, and Movants' claims amount to nothing more that claims by former Commonwealth employees for earned and unpaid salaries and wages, in the form of unpaid accrued sick leave, the Lawsuit falls within said express exclusion and application of the the Title III automatic stay is not warranted to Movants' Lawsuit.

### Movants' Reply to Objection of Commonwealth to Motion to Lift Stay

17. Although Movants are of the position that the express exclusions incorporated in the Bar Date Order exempt Movants' Lawsuit from the claims resolution process and/or the Commonwealth Title III automatic stay. Movants herein reiterate said position and incorporate the same, as literally transcribed herein and make it part of the following arguments that show that even if, assuming *arguendo*, that the Title III automatic stay was applicable to Movants' Lawsuit, which Movants strongly content and refute, Movants have shown that cause exist in the Motion

under the *Sonnax* factors and the two additional factors of *In re Ulpiano Unanue-Casal, infra,* to lift the Title III automatic stay.

### A. Movants' Arguments are Availing and is Not Premature to Evaluate the Merits of Movants' Lawsuit and its Likelihood of Prevailing in Determining to Lift the Stay.

18. The crux of the Commonwealth's Objection is that Movants allegedly "*gave lip service to Sonnax and the analysis it mandates, they largely ignore it in favor of pressing the merits of their underling claims*". Contending that under *Sonnax* the merits of Movants' underlying claims are irrelevant. The Commonwealth provides no case law support for this blanket statement. *See*, Objection ¶ 13, 37 38, 39.

19. As Movants espoused in the Motion, courts have relied on only a few factors, or even a single factor, in deciding to lift the stay. *"In weighting these factors, this Court does not need to specifically address each of the various factors, but instead only needs to consider those factors relevant to the particular case, and this Court does not need to assign them equal weight."* In re R.J. Groover Construction, LLC, 411 B.R. 460, 464 (S.D. Ga. 2008) (citations omitted). On *In re Ulpiano Unanue-Casal, infra*, the Court also rely on two additional factors; *i.e.,* the misconduct of the debtor and whether the creditor has a probability of prevailing on the merits. Ulpiano Unanue-Casal, 159 B.R. 90, 95-96 (D.P.R. 1993), affd. by 23 F.3d 395. (1st Cir. 1994). *Id.* at 96.

20. The cases cited by Movants, specifically for the proposition that "[e]*ven a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case"* do support that this Honorable Court entertain and evaluate the merits of Movants' claims in determining to lift the stay. See, All Am. Plazas, Inc. v. Petro Franchise Sys.,

9

LLC (In re All Am. Props.), 2010 Bankr. LEXIS 1286, (court in determining to lift the stay entered to analyze whether a Texas law explicitly recognized the enforceability of a non-compete covenant in certain settings to enforce a non-compete franchise agreement. Holding that despite having inadequate evidence to determine if covenant was enforceable, movant had shown a probability of success on the merits under Texas law, which afforded enforcement of such covenants if they were reasonable).

21. Movants showed in the Motion that Defendants' refusal to liquidate Movants' completely vested property right to their previously earned salary, in the form of excess accumulated sick leave pay, earned throughout many years of employment for the Commonwealth, as afforded by Act 3 and Act 8, citing the freeze imposed by subsequent enactment of Act 26 on April 29, 2018, was contrary to the express prohibition established by Article 3 of the Civil Code of Puerto Rico, 31 L.P.R.A. Sec. 3 which states that laws shall not have retroactive effect, unless they expressly so decree and that in no case or circumstance, shall the retroactive effect of a law impair the acquired rights provided by a prior statute. See, 31 L.P.R.A. Sec. 3. See also, Puerto Rico Teachers Retirement System, *supra.*

22. Movants herein, just like in *All Am. Plazas, Inc. v. Petro Franchise Sys.,* have made a showing to the Court that under Commonwealth law their proprietary statutory right to their previously earned salaries, in the form of accrued excess sick leave pay, cannot be impaired by retroactive application of a subsequently enacted statute. See, 31 L.P.R.A. Sec. 3. Such showing, is akin to the analysis undergone by the Court in *All Am. Plazas, Inc. v. Petro Franchise Sys., supra,* where the court relied on the text of a Texas statute and the language of the franchise agreement.

10

23. In the Motion and in this Reply, Movants have averred that all records of payroll for the accrued sick leave are in the custody of the Commonwealth. This, since the Department of Education was Movants' former employer. Therefore, the Commonwealth needs not to make any significant discovery to ascertain the accrued excess sick leave of any particular Movant. Furthermore, the Commonwealth enacted all statutes that provide Movants with their proprietary right to earned and unpaid excess sick leave. All economic benefits that Movants have, as former Teachers, are established by Commonwealth statute, inasmuch as teachers' current collective agreement provides no economic terms.

24. Therefore in analyzing the probability of success on the merits of Movants' claim in order to determine if the stay is lifted, the Court needs only to look at the current statutes that both, provided Movants with the benefits of liquidation of sick leave accrued in excess, up to 90 days, upon retirement (Act 3 and Act 8 of 2017) and the statute that froze those benefits prospectively (Act 26 of April 29, 2018). In regards to any questions of whether Movants had already vested into their property, the Court needs to look no further than to the language of Act 3 and Act 8 of 2017 and the statute that governs Movants' retirement and its separation from service (Act 160 of 2013). And in analyzing if Movants, former teachers, and other Commonwealth employees have a statutory and proprietary right to their positions of employment and salaries, which may be afforded the due process of law, may look at the cases cited by Movants and other statutes of the Commonwealth.

25. Therefore, the Commonwealth's arguments that the Court may only look into the merits of the claims, if Movants had offered into evidence documentation supporting its claim, is unavailing, as courts have, in determining in favor of lifting the automatic stay based on movants slight probability of success on the merits given considerable weight to the text of the law and the

well pleaded allegations of movants, even if available evidence submitted was inadequate. *See*, All Am. Plazas, Inc. v. Petro Franchise Sys. *supra*.

26. Given Movants' showing of likelihood to succeed on their underlying claims based on the clear text of Article 3 of the Civil Code and other statutes and given that even a slight probability of success on the merits may be sufficient to support lifting the stay in an appropriate case, Movants respectfully request this Honorable Court to assign great weight to this particular factor, inasmuch as this Court does not need to specifically address each of the various factors under *Sonnax*, to determine to lift the stay, but instead only needs to consider those factors relevant to the particular case, and this Court does not need to assign them equal weight. *See,* In re R.J. Groover Construction, LLC, 411 B.R. 460, 464 (S.D. Ga. 2008) (citations omitted).

### B. Applicable *Sonnax* Factors are Meet by Movants

27. ***Sonnax* Factor 1**: Whether relief will result in a partial or complete resolution of the issues weights in favor of lifting the automatic stay. The Government Parties left out of the claims resolution process the type of claims brought by Movants in the Lawsuit before Commonwealth Court. Given that the claims of Movants, and at least Four Hundred 400 teachers similarly situated to Movants, for excess accrued unpaid sick leave, up to 90 days, where left out of the claims resolution process by the Bar Date Order, Movants and the estimated additional Four Hundred 400 teachers similarly situated to Movants, have only the Commonwealth Court now to entertain and resolve their claims against their former employer, the Commonwealth, for the earned and unpaid salaries, upon a finding by this Honorable Court that the Title III Stay is not applicable to their claims. Thus, is Movants contention that the First *Sonnax* factor of whether relief will result in a partial or complete resolution of the issues weighs heavily in favor of lifting the automatic stay.

12

28. ***Sonnax* Factors 2 and 4**: Lack of any connection with or interference with the bankruptcy case and whether a specialized tribunal has been established to hear the action at issue. - these second and four factor weigh heavily in favor of lifting the automatic stay. The Commonwealth argues that lifting the automatic stay to allow resolution of Movants' claims in another forum would interfere with the centralized claims resolution process contemplated under the Title III cases.

29. Given that the claims of Movants, and at least Four Hundred 400 teachers similarly situated to Movants, for excess accrued unpaid sick leave, up to 90 days, where left out of the centralized claims resolution process by the Bar Date Order, Movants and the estimated additional Four Hundred 400 teachers similarly situated to Movants, have only the Commonwealth Court now to entertain and resolve their claims against its former employer the Commonwealth for the earned and unpaid salaries. Therefore, there appears not to be any connection or interference with the Title III case centralized claims resolution process, if the Commonwealth Court entertains and rules on Movants' claims. Thus, is Movants contention that the Second and Fourth *Sonnax* factors weighsheavily in favor of lifting the automatic stay.

30. ***Sonnax* Factors 5 and 6:** Movants' agree with the Commonwealth's position that this two factors are inapplicable.

31. ***Sonnax* Factors 7:** Whether litigation could prejudice the interest of other creditors. Movants are currently experiencing a real hardship and given their age and economic status should be able to proceed with the Litigation on a prompt basis. Movants' earned salary at issue here are but a drop in the Commonwealth's fiscal bucket, but they are of overwhelming importance in the lives of these retirees who earned and actually own them. Unlike other

13

employees of the Commonwealth, Movants are teachers, whom pursuant to Commonwealth law did not contribute, nor will receive Social Security during their retirement.

32. In support of this factor, the Commonwealth cites to the importance of a Debtor avoiding the cost of litigation to save its resources, by the breathing spell provided by the automatic stay. That is inapposite to the Commonwealth's actions. For example, the Declaratory Judgment filed by Movants' can be address by the Commonwealth's Department of Justice highly trained counsels and attorneys in matters of Commonwealth law, which continue to be employed by the Commonwealth. Litigation of the Lawsuit before the Commonwealth Court, does not require, as it involves purely matters under Puerto Rico law, the engagement of highly trained professionals in the subject of Large or Municipal Bankruptcy Law, that receive payment of their attorneys'fees in these Title III cases from the limited resources of the Commonwealth, and which billing hours and rates can reach up to $1,400.00 per hour.

33. In fact, if the Commonwealth would have chosen not to oppose the lifting of the automatic stay during the confer period, the cost regarding the Objection would have likely covered most of the Lawsuit's litigation cost before the Commonwealth Court, as it relates to a matter of law, and is not fact intensive. In light of the aforementioned, Movants are of the position that the Seventh Factor of *Sonnax* weighs heavily on lifting the automatic stay.

34. ***Sonnax* Factors 10, 11 and 12:** Movants will discuss jointly the remaining *Sonnax* factors, to wit, the interest of justice and the status of the Lawsuit, or nature of the Lawsuit and the balance of harms, all of which weigh heavily in favor of lifting the automatic stay in favor of Movants.

35. The Lawsuit is a declaratory judgment request, which as stated before may be resolved by the Commonwealth Court, in some cases, by examining the current enacted and

14

superseded statutes that provide economic benefits and froze certain economic benefits of Commonwealth employees, such as Movants, and the Four Hundred and Twelve (412) former teachers. All the pay-roll records of Movants' accrued sick leave, the retirement request forms and pertinent documentation, are already in the custody of the Commonwealth, as the Department of Education was Movants' former employer and the Teachers Retirement Systems manages their request to separate from service. Therefore, there is no real need for extensive discovery and the interest of justice will be serve by allowing the Lawsuit to proceed on a prompt basis.

36. The fact that the litigation is in an early stage, should not weigh against lifting the stay, as the Commonwealth Court may declare the rights of parties under a statute or statutes, as is the case here and the parties may have to conduct, limited to no discovery. Lastly, as to the balance of harms, is clear from Movants' previous statements in this Reply, that not affording a prompt resolution of this Lawsuit by lifting the stay, will affect Movants' livelihood severely, now and into the future, and will represent, no additional cost or very little additional cost to the Commonwealth.

## CONCLUSION

Pursuant to the aforementioned arguments, the automatic stay in the Litigation should be lifted pursuant to 11 U.S.C. Sec. 362 (d) (1) for *cause,* including, but not limited to reasons stated in this Reply and in the Motion for relief from automatic stay to allow the Commonwealth Court not only to enter the appropriate declarations as to Movants' right under Commonwealth law, but also to allow the Commonwealth Court to issue and enforce a remedy, in equity or in law, redressing any deprivation by Defendants to Movants' right to due process and property rights.

**RESPECTFULLY SUBMITTED**

In San Juan, Puerto Rico, this 19th of October, 2018.

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

/s/ *Jose Luis Barrios-Ramos*
Jose Luis Barrios-Ramos
USDC 223611
1801 McLeary Ave. Suite 303
San Juan, P.R. 00911
Telephone: (787) 593-6641
Facsimile: (787)764-4430
Email: barrios.jl@outlook.com