## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 4011**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO ("ERS"),<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>**This Objection relates to ERS<br>and shall be filed in Lead Case<br>No. 17 BK 3283-LTS and Case<br>No. 17 BK 3566-LTS.** |
| COOPERATIVA DE AHORRO Y CRÉDITO<br>VEGABAJEÑA<br><br>Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

as representative of

EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO ("ERS"),

Respondent.

**OBJECTION OF THE EMPLOYEE RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE COMMONWEALTH OF
PUERTO RICO TO MOTION FOR LIFT OF STAY FILED BY
<u>THE COOPERATIVA DE AHORRO Y CRÉDITO VEGABAJEÑA</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

OBJECTION............................................................................................................... 2

    I.     THE MOTION SHOULD BE DENIED AS MOVANT HAS FAILED TO
           ESTABLISH CAUSE EXISTS TO LIFT THE STAY ........................................ 2

    II.    MOVANT'S REQUEST FOR DECLARATORY JUDGMENT ON ITS
           ASSERTED CLAIM IS PROCEDURALLY IMPROPER................................ 14

CONCLUSION.......................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Acevedo v. Solivellas & Co.,*
  49 D.P.R. 633 (P.R. 1936) ........................................................................6

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,*
  217 F. Supp. 3d 508, 518, 529 (D.P.R. 2016)...............................................5,9

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.,*
  369 B.R. 87, 94-5 (D.P.R. 2007) .................................................................5

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),*
  28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ...................................................10

*FCC v. NextWave Pers. Commc'ns Inc.,*
  537 U.S. 293, 302 (2003) ...........................................................................7

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),*
  2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ......................10

*In re 234-6 West 22nd St. Corp.,*
  214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ..................................................4

*In re BFW Liquidation, LLC,* No. 09-00634-BGC-11,
  2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ...........................8

*In re Breitburn Energy Partners LP,* No. 16-10992,
  2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017)..............................5

*In re Cummings,*
  221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) .................................................6

*In re Gatke Corp.,*
  117 B.R. 406, 410 (Bankr. N.D. Ind. 1989).................................................9

*In re Jefferson Cnty.,*
  491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) .................................................3

*In re Motors Liquidation Co.,* No. 09- 50026,
  2010 WL 4630327, at *4 (S.D.N.Y. 2010) ..................................................11

*In re Murrin,*
  477 B.R. 99, 109 (D. Minn. 2012) ..............................................................6

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2
006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ...................................9

*In re Plumberex Specialty Prod., Inc.*,
311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) ..............................................11

*In re Residential Capital, LLC*, No. 12-12020,
2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) .....................................9-10,12

*In re Taub*,
413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)............................................................5

*In re Unanue-Casal*,
159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ...........................4-5

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) ............................................................3

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
537 B.R. 128, 140 (Bankr. D.P.R. 2015) ............................................................3

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) .....................................5

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
980 F.2d 110, 117 (2d Cir. 1992).....................................................................8

*Soares v. Brockton Credit Union (In re Soares)*
107 F. 3d 969, 975 (1st Cir. 1997)...................................................................3

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
907 F.2d 1280, 1286, 1287 (2d Cir. 1990)..........................................................4-5,7,9-14

*Unisys Corp. v. Dataware Prods., Inc.*,
848 F.2d 311, 313 (1st Cir. 1988)...................................................................3

iii

## TABLE OF AUTHORITIES
(continued)

Page(s)

## **STATUTES**

11 U.S.C. § 101 ................................................................................................................12

11 U.S.C. § 362(a) .........................................................................................................1, 4

11 U.S.C. § 362(d) .............................................................................................................3

11 U.S.C. § 362(d)(1) ........................................................................................................5

11 U.S.C. § 541 (a) ............................................................................................................9

48 U.S.C. § 2101 ...............................................................................................................8

PROMESA § 301(a) .....................................................................................................1,4-5

PROMESA § 315(b) ...........................................................................................................1

Article 2-119 of Act No. 447-1951, as amended by Act No. 196-2011.......................2

Act No. 196-2011 § 1 .....................................................................................................1-2

Act No. 106-2017 ...............................................................................................................7

Fed. R. Bankr. P. 7001......................................................................................................13

Fed. R. Bankr. P. 7003......................................................................................................13

P.R. LBR 4001-1................................................................................................................13

## **OTHER AUTHORITIES**

H.R. Rep. No. 95-595 at 309, 340 (1977).......................................................................3,7

House Concurrent Resolution 188,

    P.R. House of Reps., 18th Leg. Assembly (Jun. 6, 2017).........................................7

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico (the "Debtor" or "ERS"), pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the *Motion for Lift of Stay Seeking the Modification of the Automatic Stay to Enforce Liens on Employee Withholding Funds Currently Held by the Employee Retirement System of the Government of the Commonwealth of Puerto Rico* [ECF No. 4011] (the "Motion") filed by the Cooperativa de Ahorro y Crédito Vegabajeña ("Movant"). The Debtor respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1.     On October 4, 2018, Movant filed the Motion seeking an order lifting the automatic stay to allow the Movant to enforce its alleged statutory lien on alleged individual employee retirement pension accounts held by the Debtor. In addition, Movant also seeks an order from the Court "stating that Cooperativa is entitled to enforce its lien interest and to receive payment of the asset property assigned to it from numerous retirement pension funds in the names of the individual Cooperativa borrowers." Motion ¶ 6.

2.     As further explained below, the Motion should be denied as Movant has failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code").  As a purported assignee of potential claims Movant's borrowers have against ERS, Movant has failed to show any security interest or lien

---

[2]   The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized AAFAF to file this Objection on behalf of the Debtor.

over any assets of ERS that it is entitled to enforce, or how any alleged collateral is diminishing in value.[3]  Movant has thus failed utterly to demonstrate the extraordinary circumstances necessary to show why any valid claims it has against ERS should not be resolved through the claims resolution process to be undertaken in the Title III cases.  Allowing Movant to enforce its purported claim against ERS would prejudice other similarly situated creditors of ERS, who must wait for their claims to be addressed in the Title III claims resolution process.  Considering the foregoing, Movant has failed to show any interest entitled to adequate protection, and the majority of the *Sonnax* factors weigh in favor of maintaining the automatic stay and denying the Motion.

## **OBJECTION**

## I.   **THE MOTION SHOULD BE DENIED AS MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY**

3.     Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a).  The application of Bankruptcy Code section 362(a) to the Debtor's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and*

---

[3]     Article 2-119, of Act No. 447-1951, as amended by Act No. 196-2011, cited by Movant, Motion ¶ 2, does not create a statutory lien as the language of the Article is not self-executing, but rather authorizes recipients of pension and retirement benefits to assign to a credit union (1) up to twenty-five percent (25%) of their retirement benefits, or (2) the lesser of sixty-five percent (65%) or $25,000 of the employee's contributions.  Act No. 196-2011, § 1.  The form of assignment agreement attached as Exhibit A to the Motion confirms the same.  Motion, Exhibit A, at 1-2.

*Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections*
[ECF No. 543] (the "Title III Stay Order").

4.      "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

5.      An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).  To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1)   whether relief would result in complete or partial resolution of the issues;

(2)   the lack of any connection with or interference with the bankruptcy case;

(3)   whether the foreign proceeding involves the debtor as fiduciary;

(4)   whether a specialized tribunal has been established to hear the cause of action at issue;

(5)   whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)   whether the action essentially involves third parties rather than the debtor;

(7)   whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.*, 907 F.2d at 1286.

6.      Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

7.      No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Here, the *Sonnax* factors squarely support maintaining the automatic stay and merit against awarding the remedy Movant seeks.

8.      ***Sonnax* Factor 1:**  The first *Sonnax* factor, "whether relief will result in a partial or complete resolution of the issues," weighs against lifting the automatic stay.  The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing

5

the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*,

221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-

bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

9.     Here, Movant has failed to show how allowing a lawsuit to be initiated in a Puerto

Rico state court would resolve any issues relevant to the Debtor's Title III case. Movant seeks to

enforce purported claims against consumer-borrowers that were allegedly secured by certain

individual employee retirement pensions and benefits such consumer-borrowers receive from the

Debtor. The rights of such consumer-borrowers to ERS pensions and benefits were purportedly

assigned to Movant as collateral for loans made to such consumer-borrowers. *See* Motion ¶ 2.

Movant, therefore, is stepping into the shoes of such consumer-borrowers to enforce their pension

and retirement benefit claims against ERS.[4] Such claims, if any, as with similar claims of other

pension and retirement benefit recipients, can be resolved through the claims resolution process to

be undertaken in the Title III cases.

10.     Moreover, Movant has no better claim against ERS than its consumer-borrowers

do, as it is seeking to recover property allegedly belonging to these borrowers that is allegedly in

ERS's possession. As a matter of Puerto Rico law, since the enactment of Act 106-2017, Movant's

consumer-borrowers no longer make any contributions to ERS or receive any retirement benefits

---

[4]    The Debtor reserves all rights, arguments, objections, and defenses with respect to the validity and enforceability of Movant's asserted claims and lien on assets of the Debtor. Movant proceeds on the mistaken assumption that a consumer-borrower's assignment of his or her rights to receive ERS pension and retirement benefits grants Movant a greater right to such pension and retirement benefits than what such consumer-borrower would have against ERS. However, it is a basic precept of contract law that an assignor can assign no greater right than it has, nor can an assignee obtain a right greater than that held by the assignor. *See, e.g.,* 1A Asset Based Financing: A Transactional Guide § 3.04 (2018) ("In general, the rights of a secured party are derivative of the rights of its debtor. In discussing the debtor's 'rights in collateral' the academic literature refers to the '**nemo dat**' rule. In its affirmative form it means 'a transferee gets what its transferor had.'" (emphasis in original)); *Acevedo v. Solivellas & Co.*, 49 D.P.R. 633 (P.R. 1936) ("In the first place, Solivellas & Co. could not constitute a mortgage on another mortgage which no longer belonged to it, nor could it assign any right by means of such submortgage, for *nemo dat quod non habet.*" (citations omitted)). Movant's claim against ERS, if any, is limited to whatever rights against ERS the consumer-borrower had when it purportedly assigned its rights to ERS pension and retirement benefits to Movant.

from ERS, and all assets of ERS were to be transferred to the Commonwealth of Puerto Rico (the "Commonwealth") to help fund "pay-as-you-go" ("PayGo") obligations of the Commonwealth as established by the Act.  All retirement saving by public employees is to be made from contributions to defined contribution accounts to be established by the Commonwealth, and all retirement benefits are paid by the Commonwealth under PayGo. *See* Act No. 106-2017;  House Concurrent Resolution 188, P.R. House of Reps., 18th Leg. Assembly (Jun. 6, 2017).  Movant's borrowers thus have no present rights against ERS,[5] and because Movant's rights are derivative of its borrowers, it has no claim against ERS to resolve.  Therefore, the first *Sonnax* factor supports denying the Motion.

11.     ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay.  First, lifting or modifying the stay to allow the resolution of Movant's claims in a separate proceeding and forum would interfere with the centralized claims resolution process contemplated under Title III. The claims adjustment process under Title III applies with respect to all debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

---

[5]   As a point of fact, no individual retirement accounts were ever established at ERS while it served as administrator of retirement benefits.

12.     As an asserted claimant of the Debtor, Movant's claims are subject to the claim
resolution process that will be undertaken in the Title III Case. In fact, Movant has already filed
thirty-seven (37) proofs of claim against ERS (some of which were subsequently amended).  Proof
of Claim Nos. 23361, 23824, 24408, 25063, 25092, 25702, 25863, 25870, 26425, 26438, 26707,
26709, 26714, 26732, 26779, 26782, 26794, 27129, 27195, 27923, 28267, 28310, 28366, 29131,
29165, 29855, 29864, 29869, 31946, 32811, 35230, 48313, 48924, 48940, 48976, 58484, 59120,
73183, 78845, 79353, 84586, 88604, 97078, 102692, 114770, 119084, 141625, 142670, and
154658.[6] Requiring the Debtor to defend Movant's claims separately would undermine that
process and upend the "strong bankruptcy code policy that favors centralized and efficient
administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States
(In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In
re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala.
Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and requiring debtors to
defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those
suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic
stay and the summary process for adjudicating and liquidating claims.").

13.     Second, lifting or modifying the stay to allow the Movant to initiate a lawsuit to
enforce its alleged claim will interfere with the Title III case by diverting the Debtor's attention
and resources to defending Movant's claims in another forum and will encourage other claimants
to seek similar relief.  Should every plaintiff with an asserted claim be given carte blanche to
litigate their claims, the combined result would have a substantial and negative impact on the
Debtor's fiscal plan and budget.  This would impede the restructuring process, and should be

---

[6]   The Debtor reserves all rights, arguments, objections, and defenses to object to any proofs of claim filed by Movant.

avoided.  *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").[7]

14.     Thus, *Sonnax* factor 2 weighs in favor of denying the Motion, and Movant's statement that "[r]elief from the automatic stay will in no way interfere with the Title III bankruptcy case…" (Motion ¶ 8) fails to satisfy Movant's heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

15.     ***Sonnax* Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. As

---

[7]   Movant cites Bankruptcy Code section 541(a)(7) to argue that "[t]he funds would qualify under [Bankruptcy Code section 541(a)(7)] as exempt from individual bankruptcies because they were withheld by an employer from wages of employees for payment as contributions to an employee benefit plan."  Motion at 6-7.  This assertion has no relevance here.  Section 541 does not apply to Title III cases pursuant to PROMESA section 301(a), PROMESA § 301(a), and the concept of exempt assets (retirement or otherwise) has no application outside cases involving individuals.

Motion acknowledges, it seeks to enforce its purported claims against ERS in "Puerto Rico state court."  Motion ¶ 6. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

16.      **_Sonnax_ Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion.  No insurer of the Debtor has assumed any financial responsibility as the action has not even been commenced, and Movant does not allege any facts to the contrary.  Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

17.      **_Sonnax_ Factor 6**:  The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather whether the Lawsuit primarily involves third parties *rather than* the debtor.  *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

18.      Here, at bottom, Movant seeks to lift the automatic stay to pursue rights against its individual borrowers and their purported interest in assets of ERS. Its sole rights, if any, are completely derivative of such borrowers.  Motion ¶ 6. Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the

debtor's estate].").

19.     ***Sonnax* Factor 7**:   The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.  The Debtor would have to expend considerable time and expense to litigate a lawsuit by responding to the complaint, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial.  Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation.  *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors").

20.     Movant argues that the "Cooperativa's proceedings in the Puerto Rico courts to enforce its lien interest in the withheld funds will not prejudice the interest of other creditors and/or parties, because the funds are not assets of the ERS bankruptcy proceeding but belong to the individual employees and were assigned prepetition to the Cooperativa." Motion ¶ 9(d).  As noted above, Movant seeks to lift the automatic stay to enforce rights of certain consumer-borrowers to ERS pension and retirement benefits that were purportedly assigned to Movant as collateral for loans to such consumer-borrowers.  It thus wants to stand in the shoes of individual participants (actually, former participants) in ERS to withdraw assets allegedly belonging to such participants.  If Movant were allowed to enforce its alleged assigned claim against ERS, other similarly situated

creditors of ERS asserting claims for pension and retirement benefits, including retirees who did not assign such claims to a third party, would seek similar relief to recover purported retirement assets.   Moreover, ERS does not hold any property of individual employees.  Such individual employees (a) have no retirement accounts at ERS, (b) make no ongoing contributions to ERS, and (c) will not receive further retirement benefit payments from ERS.  Most of ERS's remaining assets were transferred to the Commonwealth as part of the PayGo legislation, and any remaining assets are in its general fund.    Accordingly, *Sonnax* factor 7 does not support granting the Motion.

21.    ***Sonnax* Factors 10 and 11:**  The interests of judicial economy and the fact that *no lawsuit has been filed* also weigh against stay relief.  As discussed above, the Movant's seek an order lifting the automatic stay in order to *initiate* a proceeding in a Puerto Rico state court. Movant has filed thirty-seven proofs of claim against ERS, which should be addressed in the Title III claims resolution process along with all similar claims of other creditors of ERS.  As such, granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

22.    ***Sonnax* Factor 12:**  The balance of the harms clearly favors denial of the Motion. The impact on the Debtor if the Motion were to be granted would outweigh any harm that Movant

would suffer if the automatic stay remains in place. The fact that no lawsuit is pending, and ERS's own lack of assets (including individual retirement accounts) after the passage of the PayGo legislation, indicate Movant will suffer little or no harm if the automatic stay remains in place.  By contrast, the large number of pending lawsuits against all the Title III Debtors, the diversion of ERS's resources to defend Movant's claims in a non-Title III forum, the likelihood of similar actions by retirees seeking to pursue essentially the same rights as Movant (*i.e.*, access to alleged retirement accounts at ERS that do not exist), and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay and indicate ERS will suffer significant harm if the stay is lifted as Movant requests.  Litigation of Movant's alleged rights will not save the Debtor any time or money. Rather, it will force the Debtor to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

23.     On the other hand, postponing liquidation of the Movant's claims is a hardship that is shared with other creditors so the Debtor can focus on its restructuring and recovery efforts for the benefit of all creditors, and would promote judicial economy.  Any claim Movant may have can and should be dealt with during the Title III claims process, as any other creditor's claims. And, given that no action has been initiate, there is no guaranty that the resolution of any action would come any sooner than the resolution of Movant's purported claims in the Title III case. Movant's assertion that "[w]ithout relief from the automatic stay, [Movant] has no other avenue to seek an enforcement of its lien interests in its borrower's pension funds which remain under the possession of ERS" is belied by the fact that Movant has filed thirty-seven (37) proofs of claims against ERS as a purported assignee of certain consumer-borrower pension and retirement benefit rights against ERS.  Motion at 7.  Thus, on balance, *Sonnax* factor 12 weighs in favor of denying

the Motion.[8]

## II.   MOVANT'S REQUEST FOR DECLARATORY JUDGMENT ON ITS ASSERTED CLAIM IS PROCEDURALLY IMPROPER

24.     Movant requests "an order stating that [Movant] is entitled to enforce its lien interest and to receive payment of the asset property assigned to it from numerous retirement pension funds in the names of individual [Movant] borrowers." Motion ¶ 6.  Movant's request for declaratory relief and to recover property from the Debtor is procedurally improper under Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and Local Rule 4001-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), made applicable to these Title III case pursuant to the *Order (A) Imposing and Rendering Applicable Local Bankruptcy Rules to These Title III Cases, (B) Authorizing Establishment of Certain Notice, Case Management, and Administrative Procedures, and (C) Granting Related Relief* [ECF No. 249].  Bankruptcy Rules 7001 and 7003 provide that any proceeding to recover money or property or to obtain declaratory judgment relating to the foregoing must be commenced by filing a complaint with the Court.  Furthermore, Local Rule 4001-1 specifically provides that "[a] motion for relief from stay shall not be combined with any other type of relief unless so authorized by the court . . . ." Local Rule 4001-1.  Accordingly, the Court should dismiss Movant's request for declaratory relief and to recover property from the Debtor as procedurally improper.

---

[8]   The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

## **CONCLUSION**

25.    Movant has failed to establish cause to justify lifting the automatic stay in the Debtor's Title III case to allow an action to be initiated.  Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: October 25, 2018
San Juan, Puerto Rico

                                      Respectfully submitted,

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Email: lmarini@mpmlawpr.com

*/s/ Carolina Velaz-Rivero*
Carolina Velaz-Rivero
USDC No. 300913
Email: cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal*
*Agency and Financial Advisory Authority*

15