# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>    Debtors. | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>    v.<br><br>BETTINA WHYTE,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>    Defendant. | Adv. Proc. No. 17-00257 |

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

# REPLY OF THE OFFICIAL COMMITTEE OF
# RETIRED EMPLOYEES OF THE COMMONWEALTH
# OF PUERTO RICO IN SUPPORT OF MOTION TO CHANGE THE
# <u>OBJECTION DEADLINE FOR COFINA SETTLEMENT MOTION</u>

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") respectfully files this reply (the "**Reply**") in support of its motion (the "**Motion**") [Dkt. No. 4100] to change the deadline to file objections to the Settlement Motion.[2]

1. The Oversight Board's opposition (the "**Opposition**") [Dkt. No. 4116] to the Motion rests on the conclusion that the Retiree Committee does not have standing to object to the confirmation of the COFINA plan. (Opposition ¶¶ 2, 9-11.) This argument is a red herring. The extension that the Retiree Committee seeks is to the objection deadline for the Settlement Motion filed in the Commonwealth title III case where the Retiree Committee is a statutory creditors committee with the right to be heard under 11 U.S.C. § 1109 (as incorporated by 48 U.S.C. § 2161 into PROMESA). Standing in the COFINA title III case has no relevance whatsoever to the relief sought in the Motion. The Oversight Board does not challenge (nor could it) the Retiree Committee's standing to object to the Settlement Motion, and the Motion simply asks the Court to set an objection deadline for the Settlement Motion that is reasonable and complies with the Case Management Procedures. (*See generally* Opposition.)

2. Further, as the Oversight Board acknowledges in its Opposition, it unilaterally set an Objection Deadline that violated the plain terms of the Court's Case Management Procedures—it was more than 15 days prior to the hearing and this Court did not authorize the deviation. (Opposition ¶14.) Notably, the Unsecured Creditors Committee in its statutory capacity as the Commonwealth Agent has joined the Retiree Committee in asking that this violation be corrected

---

[2] Capitalized terms not defined herein have the meanings set forth in the Motion.

(the "**Commonwealth Agent's Joinder**"). [Dkt. No. 4118.] For the reasons set forth herein, the Court can and should reset the objection deadline.

**A. The Court Does Not Have To Address The Retiree Committee's Standing In the COFINA Title III Case To Correct The Deadline For Objecting To The Settlement Motion That The Oversight Board Filed In The Commonwealth Case.**

3. It is a cardinal principle of jurisprudence that courts should rule on the narrowest grounds possible and decide only those issues necessary to resolve the matter at hand. *See, e.g., Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Research*, 2010 WL 11582946, at *3 n.4 (D. Mass. Feb. 10, 2010) (refusing to consider issues raised in objection that were "beyond the scope" of the underlying motion). The Oversight Board's Opposition asks this Court to deviate from that long-standing rule to address an issue wholly irrelevant to the motion at hand—the Retiree Committee's standing in the COFINA title III case to assert an objection to plan confirmation that the Retiree Committee has not yet even filed (and may not ultimately file). (*See* Opposition ¶¶ 2, 9-11.) The Oversight Board's request for a premature ruling on standing should be denied for at least three reasons.

4. *First*, the objection deadline at issue is one set in the Commonwealth case; so standing to object to a COFINA plan of adjustment has nothing to do with the relief sought and is beside the point. *Second*, addressing the Retiree Committee's standing to object to the COFINA plan, *before* the Retiree Committee has even filed an objection to the plan, puts the cart before the horse and is a request by the Oversight Board for an advisory opinion. The Court thus lacks jurisdiction to entertain this request. *See, e.g.*, *ACP Master Ltd. v. Puerto Rico (In re Fin. Mgmt. and Oversight Bd.)*, 300 F. Supp. 3d 328, 336-37 (D. P.R. 2018). *Third*, only after the Retiree Committee actually objects to a COFINA plan and sets forth its reasons for doing so will the Court be able to actually decide the merits of any standing issue (assuming the Oversight Board or some other party objects on those grounds). Prudential reasons dictate that the Court not decide in the

3

abstract an issue as important as the standing of 167,000 retirees to be heard on a matter, a presently hypothetical matter. Only if there is a real dispute should the Court address that issue.

**B. Extending The Objection Deadline Is Consistent With The Case Management Procedures And Necessary To Ensure All Parties Have Adequate Time To Assess The Settlement's Impact On The Commonwealth.**

5. On its merits, the extension is warranted for at least three reasons. *First*, the Oversight Board's objection deadline does not comply with the case management procedures. The Case Management Procedures dictate that "[t]he deadline to file an Objection . . . to any Pleading shall be (i) 4:00 p.m. (Atlantic Standard Time) on the date that is fifteen (15) calendar days before the applicable hearing date or (ii) any date otherwise *ordered by the Court*." Case Management Procedures ¶ III.I (emphasis added). The Oversight Board admits that it did not comply with the Case Management Procedures because it unilaterally set an objection deadline that was not 15 days before the hearing and it did not ask the Court in advance to modify the date. (Opposition ¶14.) These case management rules exist for a reason, and the Court should not condone the Oversight Board's unilateral flouting of these rules.

6. *Second*, given the importance of the proposed settlement to the Commonwealth's restructuring, allowing parties all of the allotted time to determine whether to object to the settlement and on what grounds is warranted. Significant concerns have already been raised in the press and elsewhere, including by four United States Congresspersons, about the Commonwealth's ability to afford the proposed settlement.[3] As the statutory representative of the Commonwealth's

---

[3] *See, e.g.,* Letter from Rep. José Serrano, Rep. Nydia M. Velázquez, Rep. Darren Soto, and Sen. Elizabeth Warren to Jose Carrion III, Chairman of the Financial Oversight and Management Board for Puerto Rico (October 30, 2018) (reported on here: http://www.nydailynews.com/news/national/ny-news-puerto-rico-fiscal-plan-nydia-velazquez-20181030-story.html); *see also 4 Congressional Democrats Call PROMESA Board's New Fiscal Plan, Recent Restructuring Deals 'Overly Generous' to Creditors*, REORG RESEARCH, Oct. 31, 2018 (available here: app.reorg.com/v3#/items/intel/1869?item_id=62793); A. Weiss, B. Setser, & D. Lachman, *Puerto Rico Needs a Better Debt Deal*, BLOOMBERG, Oct. 8, 2018 (available here: https://www.bloomberg.com/opinion/articles/2018-10-08/puerto-rico-needs-a-better-debt-deal); B. Setser,

4

single largest creditor group—167,000 retirees owed in excess of $50 billion—the Retiree Committee has an obligation to its constituents to study this complicated economic issue very carefully. The need for careful study is amplified by the fact that the fiscal plans for the Commonwealth have radically changed over the last six months and the Oversight Board only certified the most recent fiscal plan just a few days after filing its settlement motion. Further, the Court can take judicial notice that obtaining underlying information about fiscal plans is never easy in this case—even for the advisors to the statutory committees—and thus the Retiree Committee is likely to need significant time to obtain all needed information and determine whether it will object.

7. With respect to this point, the Retiree Committee must correct one particular misstatement in the Opposition. The Oversight Board states that the Retiree Committee "voted in favor of the announced agreement in principle" inferring that it does not need time to formulate its views on the settlement. (Opposition ¶ 3.) Not true. The Retiree Committee expressed to the Commonwealth Agent its support of an agreement in principle approved by the Commonwealth Agent in June 2018 that relied upon the May 30, 2018 certified fiscal plan. But that agreement was never formalized in definitive documentation and, more importantly, the fiscal plan changed radically thereafter. The Retiree Committee is now evaluating how, in light of those economic changes, the settlement will impact the Commonwealth's 167,000 retirees who have a very real economic interest in ensuring that the Commonwealth can pay pensions in the future and successfully execute on a Commonwealth plan of adjustment. Further, after June, 2018, unlike the

---

*Will the Proposed Restructuring of COFINA Bonds Assure Puerto Rico's Return to Debt Stability?*, COUNCIL ON FOREIGN RELATIONS, Sept. 27, 2018 (available here: https://www.cfr.org/blog/will-proposed-restructuring-cofina-bonds-assure-puerto-ricos-return-debt-sustainability). The Retiree Committee cites these news articles to demonstrate that there are substantial questions regarding the COFINA plan, not to indicate its endorsement of each statement in the articles.

5

Commonwealth Agent who regularly consulted with the Retiree Committee, the Oversight Board chose not to consult with the Retiree Committee as the Oversight Board decided to move forward with a COFINA plan of adjustment based on the earlier agreement in principle, notwithstanding changed economic circumstances. Thus, for the Oversight Board to state that the Retiree Committee "voted in favor" of the settlement set forth in the Settlement Motion is disingenuous. The Retiree Committee must not evaluate the Settlement Motion in the context of a new Commonwealth fiscal plan, just certified on October 23, 2018, for which underlying projections and related information have not yet been provided to the Retiree Committee's advisors. Such an evaluation is a complex undertaking. Therefore, the Court should allow the Retiree Committee the full amount of time contemplated in the Case Management Order to assess the settlement and object as the Retiree Committee deems appropriate.

8. *Third*, the Opposition incorrectly asserts that the Retiree Committee seeks to set the objection deadline for the Settlement Motion contemporaneous with the objection deadline for the COFINA Plan "without any rationale." (Opposition ¶ 7.) In fact, as the Retiree Committee set forth in its Motion (and in its correspondence with the Oversight Board regarding the extension) because the Settlement Motion and the COFINA Plan are predicated on the same foundational settlement and therefore implicate many identical issues, it makes good sense to set their objection deadlines together. The Oversight Board argues that because this Court will apply different standards to the approval of the Settlement Motion and confirmation of the COFINA plan, "the issues to be considered by the Court could not be more distinct." (Opposition ¶ 12.) The Retiree Committee disagrees that the differing standards of review render the COFINA plan, which is premised on the proposed settlement, "distinct" from the court's consideration of the Settlement Motion. There will

6

be significant overlap in the factual issues and any discovery, and it is therefore appropriate to set a contemporaneous objection deadline for the Settlement Motion and the COFINA Plan.

C. **The Retiree Committee Has Standing To Object To The COFINA Plan.**

9. As explained above, it is unnecessary and outside of the Court's jurisdiction to address the Oversight Board's standing arguments in a vacuum. But to the extent that the Court reviews those arguments, the Retiree Committee makes three points.

10. *First*, the Oversight Board is simply wrong when it suggests that the only parties with standing to object to a plan are those entitled to vote on the plan. *See In re Zenith Electronics Corp.*, 241 B.R. 92, 98-99 (Bankr. D. Del. 1999) (concluding official equity committee had standing to object to the disclosure statement even though its constituents were not entitled to vote on a plan). *Second*, by entering into the Stipulation and Order Approving Procedure to Resolve the Commonwealth-COFINA Dispute, which Stipulation recognized the Retiree Committee as a representative for Commonwealth creditors in the dispute, the Oversight Board acknowledged that the Retiree Committee has a significant economic interest in the outcome of the COFINA dispute and standing to be heard. [Dkt. 996, at ¶ 4.] To the same point, it must be recognized that COFINA is an affiliated entity of the Commonwealth, and its proposed plan (a) is being funded with tax dollars from the Commonwealth and (b) if confirmed, will have an important economic impact on the Commonwealth and will likely affect any plan of adjustment that is proposed by the Commonwealth. In light of this inextricable relationship between the title III cases, it is hyper-technical and ignores reality to assert that the Commonwealth's Retiree Committee does not have standing even to be heard in COFINA's Title III case with respect to a matter that may profoundly impact the Commonwealth.

11. *Finally*, the cases the Oversight Board cites—*In re Johns-Manville Corp.*, 52 B.R. 879 (Bankr. S.D.N.Y. 1985), and *In re Dow Corning Corp.*, 199 B.R. 896 (Bankr. E.D. Mich.

1996)—are not to the contrary. (Opposition ¶10.) In *Dow Corning*, a creditor committee established for tort claimants sought authority to expand the scope of its counsel's retention to allow for lobbying activity. 199 B.R. at 897. The court denied the request on the grounds that lobbying was outside of the scope of the committee's powers under section 1103(c). *Id.* at 902-03. In *Johns-Manville*, a member of the equity committee brought an action in state court, both individually and on behalf of the equity committee, seeking to compel the debtor to hold a shareholders' meeting. 52 B.R. at 880-81. The equity committee did not request leave from the bankruptcy court to bring the state court action, but it did file an application to retain special counsel to assist with the case. *Id.* The court denied the retention application on the grounds that, since the equity committee itself was not a stockholder, it was not entitled to bring the state law action and therefore did not need the assistance of its proposed counsel. *Id.* at 884. In both cases, the focus was on the extent of the committee's powers—not the committee's standing.

12. As discussed above, the issue of standing has been improperly raised by the Oversight Board in connection with the Motion, and with inadequate notice. Indeed, the Retiree Committee has not yet decided whether it wishes to file pleadings and be heard specifically in the COFINA Title III case and has filed no such pleadings to date. Therefore, the Retiree Committee reserves all rights with respect to the issue of its standing and/or its rights to appear in, object to, or otherwise participate in any matter or proceeding relevant to COFINA's Title III case.

13. Finally, if the Court were left with any doubt on this subject, it should be dispelled by the Commonwealth Agent's Joinder. As the Commonwealth Agent, it unquestionably has standing to object to the COFINA Plan and has requested that the Settlement Deadline be "much later" than the date improperly set by the Oversight Board.

## CONCLUSION

WHEREFORE, the Retiree Committee respectfully requests that the Court grant the relief requested in the Motion and grant such other relief as may be just.

| | |
|---|---|
| October 31, 2018 | Respectfully submitted, |
| JENNER & BLOCK LLP | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
| By:<br>*/s/ Robert Gordon*<br>Robert Gordon (admitted *pro hac vice*)<br>Richard Levin (admitted *pro hac vice*)<br>919 Third Avenue<br>New York, NY 10022-3908<br>rgordon@jenner.com<br>rlevin@jenner.com<br>212-891-1600 (telephone)<br>212-891-1699 (facsimile) | By:<br>*/s/ A.J. Bennazar-Zequeira*<br>A.J. Bennazar-Zequeira<br>Héctor M. Mayol Kauffmann<br>Edificio Union Plaza<br>1701 Avenida Ponce de León #416<br>Hato Rey, San Juan<br>Puerto Rico 00918<br>ajb@bennazar.org<br>hector.mayol@bennazar.com<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile) |
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>312-222-9350 (telephone)<br>312-239-5199 (facsimile) | *Counsel for The Official Committee of Retired Employees of Puerto Rico* |