# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re | )    **PROMESA** |
| | )    **Title III** |
| | ) |
| THE FINANCIAL OVERSIGHT AND | )    **No. 17 BK 3283-LTS** |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | )    **(Jointly Administered)** |
| | ) |
| As a representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO | ) |
| *et al.*, | )    **Hearing date:** November 7, 2018 at 9:30 a.m. |
| | )    (Atlantic Standard Time) |
| Debtors.[1] | )    **Objections filed:** none |
| | ) |

## FEE EXAMINER'S THIRD INTERIM REPORT ON PROFESSIONAL FEES AND EXPENSES (February 1, 2018-May 31, 2018)

**I.**    **SUMMARY OF UNCONTESTED FEE APPLICATIONS FOR THE THIRD INTERIM AND PRIOR COMPENSATION PERIODS**

**II.**    **NOTICE OF DEFERRAL OF SPECIFIC SECOND AND THIRD INTERIM APPLICATIONS FOR CONSIDERATION AT THE DECEMBER 19 OMNIBUS HEARING OR AT A LATER DATE**

**III.**    **INFORMATIVE MOTION REGARDING ATTENDANCE AND PARTICIPATION AT NOVEMBER 7, 2018 HEARING**

TO:    HON. LAURA TAYLOR SWAIN,
        UNITED STATES DISTRICT JUDGE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## SUMMARY OF RECOMMENDATIONS

With this report, the Fee Examiner:

--Recommends Court approval of the interim fee applications detailed on **Exhibit A**; and

--Notifies the Court, consistent with paragraphs 2.h and 2.k of the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 3269] (the "Interim Compensation Order"), that the Fee Examiner and the applicants listed on **Exhibit C** are in productive discussions and—to continue their dialogue— have agreed to adjourn their consideration to the December 19, 2018 omnibus hearing or another date convenient for the Court.

## INTRODUCTION

With this third period report, the PROMESA fee review process enters its second year. The interim fees requested through May 31, 2018 total $228,361,835.02. In the first year of the review process, the fees billed have reflected professional services involving dozens of contested issues with resulting opinions and 37 U.S. Court of Appeals cases, including the touchstone Aurelius motion scheduled for argument on December 3, 2018. The Oversight Board, the government, the statutory committees and their professionals have engaged in extensive mediation with promising results. Throughout the mediation and litigation, the professionals have brought demonstrated skill, determination, and massive resources to the process.

A full year and three review cycles provide a predicate for an assessment of the "reasonableness and necessity" of the services discussed in this and two previous reports, both individually and collectively. The Court has commented at least three times on the need for greater efficiency in staffing and greater coordination where goals are shared. Yet overstaffing continues. The serial fee and expense applications reflect some progress—but only some.

In the Third Interim Fee Period, for example, the full cost of the Aurelius decision (more than $3 million to prepare four separate briefs successfully opposing a motion to dismiss) has

become apparent.  So has the imposition of initial rate increases, as great as 150 percent for

individual attorneys in some instances, that over the course of these proceedings will have

exponential effect.  Billing errors and misjudgments continue—a single obviously mistaken daily

entry for 210 hours, for example, that represented $52,500 in fees on the face of the application.

This report recommends deferring most of those issues for more thorough treatment in

connection with the December 19 omnibus hearing but for the first time, it addresses

substantively, the work of McKinsey & Co. on behalf of the Oversight Board.  For the Third

Interim Fee Period, the applications of McKinsey and the four principal law firms account for

about 51 percent of the total requested.  Given the respective interests of their clients—the

Oversight Board, AAFAF, and the two statutory committees—that is not surprising.  Nor is it

surprising that many applications require more time for analysis, discussion, disagreement, and

adjustment.  Discussions continue with many professionals.  However, the adjusted applications

of the retiree committee group, PREPA counsel, and the unadjusted applications of McKinsey

are ready for the Court's consideration on November 7, 2018.

## THIRD INTERIM FEE PERIOD OBSERVATIONS

This Court-ordered report addresses some of the professional fees and expenses timely

submitted for approval and subject to review and recommendation for the Third Interim Fee

Period (February 1, 2018 – May 31, 2018), along with held over applications from the two prior

interim fee periods.  Compared with the first two interim periods, fees and expenses subject to

review have increased from approximately $67.7 million in the second fee period to more than

$83 million in the third.[2]  This reflects the addition of several new professionals to the fee review

process, as well as a general increase in the intensity of fiscal plan development, mediation,

---

[2] The review also encompasses non-Title III services provided to some Debtors.

negotiation and litigation resolving gateway issues that, ultimately, help pave the way for confirmation proceedings.  It also reflects the firm-by-firm confidential review, reporting and negotiating process, which has continued largely constructively and in good faith.

At a hearing on September 13, 2018, the Court granted the unopposed *Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3790], questioning counsel about the standards' anticipated application and reiterating the Court's concern about professional fees and expenses.  Though the resulting order post-dates the services provided during the Third Interim Fee Period, the Fee Examiner nonetheless had applied the presumptive standards because they are wholly consistent with the guidance provided at the outset of the process.  More importantly, they are designed to advance the reasonableness and necessity requirements in the unique context of these PROMESA proceedings.

It is fair to say that some professionals have not fully embraced the presumptive standards or the way they have been applied.  Several have suggested that the process inappropriately might influence the strategy of their representation which, they appropriately note, is not the role of any fee review process.  While probably genuine, the perception is misplaced.  In a purely advisory role, the Fee Examiner believes that billing discipline and efficient advocacy are as important in the review process as they are in the overall debt restructuring.  In short, all of the participants here should hold themselves to higher standards than might apply in the "ordinary" major Chapter 11 context.  What is reasonable in a large corporate Chapter 11 may not be reasonable under PROMESA, and given the absence of precedent or even helpful analogous authority, the Court ultimately establishes the boundaries.  Should the process go too far, no doubt contested proceedings will allow the Court to address

directly that which it has—to date—addressed in general though pointed terms in the absence of any formal objection.

The list of applications recommended for approval on November 7, 2018 is notably shorter than those that preceded it—with good reason. The third interim fee applications highlight the differing perspectives brought to some of the fundamental assumptions of professional service providers and their clients—particularly in staffing where some clients still may have half a dozen attorneys at a mediation session. These are among the assumptions the fee review process questions.

### *Rate Increases and Discounts*

The first of these assumptions involves the hourly rates charged. Most, but not all, professionals offered some "discount" from the hourly rates they normally charge corporate clients in recognition of the public interest nature of the engagement and the Commonwealth's particular challenges. The discounts vary widely and, in some instances, the nature of the discount and its ultimate application are both deferred and, at best, ambiguous. The UCC's counsel and financial advisors, for example, state that they apply a 20 percent discount, but have asked to "count" any deductions the Fee Examiner recommends against this pre-agreed discount—making the actual discount from *reasonable* fees less than 20 percent. Even if the arrangement were to the ultimate benefit of the Commonwealth and its creditors, comparing the magnitude and effect of any one voluntary pricing concession to others is impossible because of the differing methodology underlying them.

Compounding this problem are hourly rate increases, which almost every major firm charging hourly rates has imposed and will likely again impose for 2019. The Fee Examiner began monitoring rate adjustments at the beginning of this engagement. The third fee period, entirely falling after January 1, 2018, has shown the most significant impact so far, and more

than $3.9 million in fees charged since the petition dates are the direct result of rate increases.

While some rate adjustment might be appropriate in a case of sufficient duration, some limits on

rate increases are necessary.

Many applications held over for hearing for December 19 include significant amounts

attributable to rate increases, and the Fee Examiner will present a motion or omnibus objection to

some of them no later than December 4, 2018.[3]  In the interim, the Fee Examiner has sought the

professionals' agreement to limit rate adjustments and will—for consideration at the

December 19 hearing—suggest standards to address them prospectively.

***Expert Retentions***

The "rules" related to the retention of expert witnesses reflect another assumption in

dispute.  The initial memorandum advised all professionals:

> In general, Retained Professionals should not submit
> reimbursement requests for any other firm's professional (legal,
> financial advisory, investment banking, or accounting) services.  If
> retention terms allow for sub-retentions, contract professionals
> must nonetheless submit detailed billing statements.  All
> professional fees are subject to the same standards of review for
> detail, accuracy and, ultimately, reasonableness.

*See* November 10, 2017 Mem. to PROMESA Title III Professionals at 9.  Nonetheless, during

the Third Interim Fee Period, two parties submitted more than $1 million in financial expert

witness fees as "expenses" along with their copying costs, travel expenses, and transcript fees.

For parties required to ask the Court's permission before retaining professionals, this practice is

subject to abuse, avoiding PROMESA's clear—albeit not uniformly applied—professional

retention requirements.  This issue will be addressed as well in a forthcoming omnibus objection

or motion.

---

[3] Interim Compensation Order ¶ 2(h) (requiring Fee Examiner objections 15 days prior to adjourned fee hearing).

*Duplication of Roles*

In a number of instances, significant overlap or duplication of services between and among professionals continues to characterize some applications for compensation.  Without showing a disqualifying conflict requiring separate representation, or meeting the "best interest of the estate" requirement for special counsel retained under 11 U.S.C. § 327(e),[4] a party's lead law firm normally should handle all matters on behalf of that party.  When the retention of a separate professional *is* appropriate, then the party in interest's lead counsel necessarily need defer to special or conflicts counsel on that aspect of the engagement.  Undisciplined duplicative representation is one reason professional fees have become so large so quickly.  When two or three firms address identical issues on behalf of one client, without a showing of special need, it is generally not reasonable.

*Filsinger Energy Partners*

One of the deferred applications—that of Filsinger Energy Partners—is deferred not due to differences over presumptive standards or challenged assumptions but because of incompatibility between the nature of its work and the fee review process itself.  Retained by AAFAF for PREPA post-hurricane in December 2017, Filsinger serves as the Chief Financial Advisor to PREPA, with responsibility for a panoply of functions including budgeting, cash management, the development of operational reforms, coordinating federal disaster recovery funding and compliance requirements, advising on fiscal and transformation plans and

---

[4] While Congress elected *not* to expressly incorporate sections 327 and 328 of the Bankruptcy Code into PROMESA, the Bankruptcy Code's mechanism for mitigating the proliferation of estate-paid professionals is an appropriate administrative analogue for the Title III Court in fulfilling its obligation to ensure the reasonableness and necessity of professional fees.  *See also* PROMESA § 316(d)(1)(requiring disallowance of compensation for unnecessary duplication of services).

projections, and—ultimately—implementing the fiscal and transformation plans.  In its first two interim applications, Filsinger billed more than $7.3 million in fees on an hourly basis.

Based on the recommendations in the second interim report, the Court approved Filsinger's first interim application after a consensual adjustment.  That recommendation followed a series of extended discussions between the Fee Examiner and counsel and Filsinger's principal about the firm's services—nearly two-thirds of which have addressed operation and restoration unrelated to the Title III proceedings.  This includes extensive work in the field for PREPA's rehabilitation and recovery.  While the engagement provides for hourly billing, the services do not lend themselves to the quantitative and qualitative standards applied to most of the other professionals.  Yet the amounts sought are substantial, the work critical to the Commonwealth's recovery, and subject to review at AAFAF's request.

Filsinger and the Fee Examiner have agreed to defer its pending fee application, which requests about $5 million based on more than 8,000 hours of work, to the December hearing.  In the meantime, the Fee Examiner will work to develop an appropriate review process and make a recommendation to the Court, recognizing the unique nature of this professional's work.  The development of this model will include a meeting with Filsinger personnel in the field at the conclusion of the November 7, 2018 hearing.

**FEE REVIEW PROCESS**

For the professionals whose interim applications *are* recommended for Court approval in this report, the Fee Examiner's conceptual concerns are either not present, a consensual adjustment has been made, or their impact is so minimal that the Fee Examiner does not object to them.  He has continued to reserve his rights on all of these issues in connection with subsequent interim or final fee applications.

This report incorporates by reference the Fee Examiner's Initial Report on March 1, 2018, which the Court heard on March 7, 2018 [Dkt. No. 2911], and its second report dated May 30, 2018, which the Court heard on June 6, 2018 [Dkt No. 3193].  The fee review process for the third interim fee period generally has remained consistent with that described in the first two reports, and the standards have been applied uniformly to the extent possible when subjective determinations are required, as they often are.  Two exceptions are notable: *de minimis* flat fee professionals and McKinsey & Company, Inc., Washington D.C.

### De Minimis Professionals

The Fee Examiner has implemented an abridged review process for *de minimis* flat fee professionals that recognizes the "improvident" standard under section 328(a) of the Bankruptcy Code.  Under that standard, a Court may allow departure from pre-arranged compensation "if such terms and conditions prove to have been improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions."  Practically, this process verifies that services provided fall within the scope of the professional's retention and the fees charged are consistent with the parties' agreement.  Initially, however, it makes no subjective judgments about the individual tasks performed, the number of timekeepers employed, or the way professional activities are reported and described.[5]  The Fee Examiner has advised this group of professionals that such factors *could* become pertinent if, at the end of the case, the Court makes a finding of improvidence, but no adjustments or deductions from interim fees are proposed here.

---

[5] The abridged process does verify that expenses comply with case guidelines.

*McKinsey & Company, Inc.*

The second procedural exception has been for the applications of McKinsey & Company, Inc., Washington D.C. ("McKinsey"), the consultant retained by the Oversight Board to provide comprehensive advisory services in the Commonwealth, PREPA and HTA Title III cases. McKinsey presents a special case for reasons discussed on the record with the Court.  Tr. June 6, 2018 [Dkt. No. 3278] at 52-58.  Its fees are among the largest charged by any professional in these cases, totaling $27,437,000.00 through the Third Interim Fee Period.  However, as the Court has heard, its billing practices do not lend themselves to analysis under the standards in sections 316 and 317 of PROMESA.  *See id.*  Those standards include "the time spent on such services," "the rates charged for such services" and "whether the services were performed within a reasonable amount of time…."  In the absence of hourly work records, the Fee Examiner has worked with McKinsey to develop a process to evaluate, however imperfectly, McKinsey's work under PROMESA's reasonableness standards.

The Fee Examiner has consulted with Oversight Board representatives, including its General Counsel and Executive Director, about the role McKinsey professionals continue to play for the Oversight Board.  McKinsey's services are, according to many, both central and indispensable to the Oversight Board's work.  The client's expressed satisfaction has been unequivocal, and the certification of the revised Commonwealth Fiscal Plan on October 23, 2018 reflects the sheer scope of the task and the skill and resources with which McKinsey executed its assignment.

In response to the Fee Examiner's initial comments, and the Court's instructions, McKinsey has added significant detail to its monthly fee statements, including a listing of all team members by name and title/position, stating whether each team member performed services

10

on a full-time[6] or part-time basis, and detailed descriptions of the services performed, including specific activities and work product.  McKinsey facilitated the Fee Examiner's and counsel's in-person interviews of McKinsey's project managers in Washington, D.C., and the opportunity to "shadow" a project manager and team.  McKinsey also provided much more detailed pricing information than that originally included in the fee applications, including a reference at the U.S. General Service Administration (GSA) to verify McKinsey's representations about the basis for its fees.

The Board engaged McKinsey pursuant to a Consulting Agreement executed in September 2017 that took effect on July 3, 2017.[7]  The Agreement provides for services under three distinct "Scope of Work" documents:  Commonwealth, PREPA, and HTA.  Each group's compensation was set on a "firm fixed price" basis based on a Federal Supply Services schedule with the GSA (the "Pricelist").[8]  The Pricelist took effect in January 2017, the second five-year renewal of a contract that began in January 2006.  The Pricelist represents the U.S. government's negotiated "most favored customer pricing" applicable to all GSA users.[9]

---

[6] At McKinsey, a full-time position comes with the reported expectation that the employee will work 60 or more hours per week.

[7] PROMESA gives the Oversight Board both the power to hire professionals, § 101(h)(1), and the authority— through the Executive Director—to enter into contracts.  § 104(g).

[8] The Pricelist is publicly available at https://www.gsaadvantage.gov/ref_text/GS10F0118S/0R5IB1.3GN2F5_GS-10F-0118S_MCKINSEYGS10F0118SJANUARY2017.PDF.

[9] *See* General Services Administration Acquisition Manual § 538.27-1(containing the regulation's price reduction clause).  Organizations are eligible to use GSA sources and pricing if they are executive agencies, other federal agencies, or one of many other types of qualified organizations identified in the GSA regulations.  *See* GSA Order OCP 4800.21, July 19, 2016, ¶ 7 and Appendices.  The Oversight Board does not appear on the GSA list of eligible users, though it is entitled to request administrative support services from the GSA. *See* Oversight Board Bylaws Approved on September 30, 2016 and as amended October 14, 2016 and January 28, 2018 § 7.2.  As such, the Pricelist is not a cap on McKinsey's pricing, but it represents a floor beneath which the McKinsey rates could not fall without adjusting the pricing of all government contracts.

The Pricelist offers clients the choice of five team approaches (A through E), which vary in price depending on the number of team members engaged.  Though the Consulting Agreement does not explicitly so state, the Oversight Board initially engaged "Team B" for each of the three working groups.  That includes a full-time Engagement Manager and two full time Associates or Business Analysts,[10] two Partners or Senior Partners to manage the engagement,[11] content experts, a research team, and any outside consultants necessary.  During the Fee Examiner's August 21, 2018 day-long visit at McKinsey, counsel observed the PREPA daily "team check-in" with at least ten active participants and a problem-solving session that included two Ph.D. economists in addition to the core Commonwealth working group.[12]

The Pricelist establishes the minimum weekly cost of Team B, and the Scope of Work documents translate that into a monthly fee.[13]  Initially, this fee was $720,000 per month for the HTA working group and $740,000 per month for each of the Commonwealth and PREPA working groups.  McKinsey and the Oversight Board have amended the Consulting Agreement twice:  once in November 2017 in the wake of hurricanes Maria and Irma and a second time in April 2018 to extend the terms of the engagement.  The first amendment, because it addressed the extraordinary circumstances following the storms, added team members and increased the

---

[10] "Engagement Managers" typically have a graduate degree and five to seven years' experience.  "Business Analysts" typically have a bachelor's degree and up to two years' experience.

[11] "Senior Partners" generally have graduate degrees from leading academic institutions and ten to twenty years' experience.  Most "Partners" have a graduate degree and between five and fifteen years' experience.

[12] One of the economists was Andrew Wolfe, whom the Board has separately retained and whose $25,000 per month flat fee is recommended for Court approval in this Report.  The fees of the second economist, as are all out-of-pocket expenses including travel and lodging, are included in McKinsey's fixed price.

[13] The starting monthly fee for the Oversight Board engagement was approximately seven percent higher than the GSA Pricelist weekly charge for Team B.  Government contracts with McKinsey do not include travel costs, whereas the Oversight Board's contract does—accounting for at least some of the difference.  *See also supra* p. 11 n.9 (noting that the Oversight Board is not an authorized GSA pricing user).

monthly fee for the Commonwealth team, eliminated the HTA fee for October 2017, and

lowered the HTA monthly fee prospectively.[14]

McKinsey's three pending interim fee applications for each of the working groups are

summarized here:

| McKinsey Working Group | 1st Interim Fee Application | 2nd Interim Fee Application | 3rd Interim Fee Application |
|---|---|---|---|
| Commonwealth | $1,480,000.00 | $6,550,000.00 | $7,237,000.00[15] |
| PREPA | $1,480,000.00 | $2,960,000.00 | $2,960,000.00 |
| HTA | $2,160,000.00 | $1,025,000.00 | $1,585,000.00 |
| **Total** | **$5,120,000.00** | **$10,535,000.00** | **$11,782,000.00** |
| **Total for all Working Groups for Three Interim Fee Periods** | | | **$27,437,000.00** |

Assuming that each full-time team participant contributes 60 hours per week and each part-time

team participant contributes 25 hours per week (probably conservative estimates), McKinsey's

overall blended hourly rate for these three interim fee periods would be $689.38 per hour.[16]

Though it is a very imprecise measure of "value" given the at times around-the-clock nature of

the engagement and the varied skills and backgrounds of the team members, this hourly rate does

not appear unreasonable compared to other advisors and consultants submitting fees through the

Title III fee process.

Based on a review of McKinsey's work records, the site visit, the client interviews and

expressed satisfaction, and the fee applications themselves, the fees the Oversight Board has

agreed to pay McKinsey are reasonable.  McKinsey's work is not only necessary but essential to

---

[14] The PREPA team price has remained $740,000 per month throughout the engagement, notwithstanding the two amendments.

[15] This is the amount stated on the face of the fee application, but it is understated by $500.00.  The contractual fee for May 2018 was $1,417,500.00, but McKinsey requested only $1,417,000.00.

[16] An exhibit identifying the number and seniority of working group participants for each month of the engagement and the blended rate calculation is attached to this report as **Exhibit B**.

the administration of the Title III cases.  It is clear that the parameters of McKinsey's work—
which are both broad and dynamic—are established and directed by the Oversight Board in
furtherance of its statutory mandate.  It is also clear that McKinsey has provided and continues to
provide thousands of hours of valuable services each month.  The Fee Examiner, therefore,
recommends the Court's approval of the McKinsey applications, as outlined on **Exhibit A**,
without adjustment.[17]

### *Remaining Professionals*

With respect to the other interim applications recommended for approval, no objections
have been filed to any of them.  **Exhibit A** attached here lists all of the Third (and prior deferred)
Interim Fee Period applications now recommended for approval and the recommended
adjustments to each of them.  These adjustments are both consistent among professionals and
with the presumptive standards and guidelines the Fee Examiner has applied since the outset and
that the Court has now adopted by order.

Where deviation from the presumptions has been permitted, the professional has made a
showing sufficient to overcome the presumption.  **Exhibit C** lists applications that have been

---

[17] The Fee Examiner is aware of recent media coverage of concerns raised about the extent to which McKinsey has disclosed, or should disclose, connections to the Title III debtors or other interested parties.  *See, e.g.*, Mary Williams Walsh, *McKinsey Advises Puerto Rico on Debt.  It May Profit on the Outcome*.  N.Y. Times Sept. 27, 2018, at B1.  *See also In re Alpha Nat. Res., Inc.*, 763 F. App'x 412 (4th Cir. 2018), *aff'g Mar-Bow Value Partners, LLC v. McKinsey Recovery & Transformation Svcs. US, LLC*, Nos. 16-612, 16-799, 2017 WL 4414155 (E. D. Va. Sept. 30, 2017) (denying challenge to McKinsey's disinterestedness disclosure).  The Fee Examiner takes no position on the disclosure issue.  Congress did not impose a disinterestedness requirement on Board professionals when it enacted PROMESA.  The Consulting Agreement addresses the issue as follows:  "It is McKinsey's long-standing policy to serve competing clients and clients with potentially conflicting interests as well as counter-parties in merger, acquisition and alliance opportunities and to do so without compromising McKinsey's professional responsibility to maintain the confidentiality of client information.…  To avoid situations of potential conflict, McKinsey will not, for a period of one year following an engagement for the Client, assign any project, including a directly-conflicting engagement with the Government of Puerto Rico.  Notwithstanding the foregoing, the Client understands and agrees that so long as McKinsey has appropriate procedures in place to mitigate any potential conflict, it may serve the Government of Puerto Rico on unrelated matters."  Consulting Agreement ¶ 6 [Dkt. No. 2073, Verification of Tyler Duvall, Ex. A].

consensually deferred, as discussed above, as well as applications filed after the Fee Examiner's

deadline or applications initially supported by insufficient data and documentation.  Like every

fee and expense application, whenever submitted, they all remain subject to Court approval of

final applications at the conclusion of these proceedings.  As negotiations continue, this Report

and **Exhibit A** may be supplemented and additional proposed orders submitted.

### RELIEF REQUESTED

For the reasons stated in this report, and in the absence of any objection, the Fee

Examiner recommends that the Court approve under PROMESA sections 316 and 317 the

Applications listed on **Exhibit A** and permit the deferral of the other applications listing on

**Exhibit C** to the omnibus hearing scheduled for December 19, 2018 or a later date.

### INFORMATIVE MOTION

The Fee Examiner submits this informative motion pursuant to the procedures outlined in

the Court's prior orders on hearing attendance.  In support, he respectfully states that the Fee

Examiner and counsel, Katherine Stadler of Godfrey & Kahn, S.C. and Eyck Lugo of Edge

Legal Strategies, PSC, will appear in person to present and respond to questions regarding this

Report and to respond to any matters raised by the Court or by any party in connection with the

fee review process—all in Courtroom 3 of the United States District Court for the District of

Puerto Rico, 150 Carlos Chardón Street, Federal Building, San Juan, Puerto Rico 00918-1767.

No additional persons representing the Fee Examiner are expected to attend the hearing.

Dated: October 31, 2018.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

EDGE LEGAL STRATEGIES, PSC

*s/Eyck O. Lugo*
Eyck O. Lugo
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone: (787) 522-2000
Facsimile: (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 257-3911
Facsimile: (608) 257-0609

Brady Williamson (*Pro Hac Vice*)
*Fee Examiner*

Katherine Stadler (*Pro Hac Vice*)
*Counsel for the Fee Examiner*

19699960.1

16

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.,
PROMESA Title III No. 17 BK 3283-LTS

**EXHIBIT A**

First, Second, and Third Interim Fee Period Applications Recommended for Court Approval:

| | Applicant / Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|
| | *Strategic Consultants to Debtors - Commonwealth* | | | | | | |
| 1-a | McKinsey & Company, Inc. [Dkt. No. 2073]<br>05/03 - 09/30/2017 | $ 5,120,000.00 | $ - | $ - | $ - | $ 5,120,000.00 | $ - |
| | *Strategic Consultants to Debtors - Commonwealth* | | | | | | |
| 1-b | McKinsey & Company, Inc. [Dkt. No.2756-1]<br>10/01 - 1/31/2018 | $ 6,550,000.00 | $ - | $ - | $ - | $ 6,550,000.00 | $ - |
| | *Strategic Consultants to Debtors - HTA* | | | | | | |
| 1-c | McKinsey & Company, Inc. [Dkt. No.2756-2]<br>10/01 - 1/31/2018 | $ 1,025,000.00 | $ - | $ - | $ - | $ 1,025,000.00 | $ - |
| | *Strategic Consultants to Debtors - PREPA* | | | | | | |
| 1-d | McKinsey & Company, Inc. [Dkt. No.2756-3]<br>10/01 - 1/31/2018 | $ 2,960,000.00 | $ - | $ - | $ - | $ 2,960,000.00 | $ - |
| | *Macroeconomic Consultant to Debtors* | | | | | | |
| 2 | Andrew Wolfe [Dkt. No. 2718]<br>10/01 - 1/31/2018 | $ 100,000.00 | $ - | $ 12,391.30 | $ 567.55 | $ 100,000.00 | $ 11,823.75 FN1 |
| | *Financial Advisor to Official Committee of Unsecured Creditors* | | | | | | |
| 3 | Zolfo Cooper, LLC [Dkt. No. 2739]<br>10/01 - 1/31/2018 | $ 1,965,880.50 | $ 125,030.00 | $ 9,725.67 | $ 64.17 | $ 1,840,850.50 | $ 9,661.50 |
| | *Macroeconomic Consultant to Debtors* | | | | | | |
| 4 | Andrew Wolfe [Dkt. No. 3521]<br>2/01 - 5/31/2018 | $ 100,000.00 | $ - | $ 13,157.16 | $ 567.54 | $ 100,000.00 | $ 12,589.62 |
| | *Pension Consultant to Oversight Board* | | | | | | |
| 5 | Pension Trustee Advisors, Inc. [Dkt. No. 3522]<br>2/01 - 5/31/2018 | $ 29,596.50 | $ 627.50 | $ - | $ - | $ 28,969.00 | $ - |
| | *Financial Advisor to Mediation Team* | | | | | | |
| 6 | Phoenix Management Services, LLC [Dkt. No. 3523]<br>2/05 - 6/03/2018 | $ 411,040.50 | $ 2,346.50 | $ 19,039.99 | $ 371.00 | $ 408,694.00 | $ 18,668.99 |
| | *Special Counsel to Oversight Board* | | | | | | |
| 7 | Luskin, Stern & Eisler LLP [Dkt. No. 3530]<br>2/01 - 5/31/2018 | $ 125,126.00 | $ 2,000.00 | $ 471.42 | $ - | $ 123,126.00 | $ 471.42 |
| | *Financial Advisor to Oversight Board* | | | | | | |
| 8 | Ernst & Young LLP [Dkt. No. 3532]<br>2/01 -4/30/2018 | $ 1,114,251.25 | $ 31,654.54 | $ - | $ - | $ 1,082,596.71 | $ - |
| | *Counsel for Retirees Committee* | | | | | | |
| 9 | Jenner & Block LLP [Dkt. No. 3535]<br>2/01 - 5/31/2018 | $ 1,969,909.52 | $ 30,315.44 | $ 71,940.52 | $ 2,524.11 | $ 1,939,594.08 | $ 69,416.41 |
| | *Information Agent for Retirees Committee* | | | | | | |
| 10 | Marchand ICS Group [Dkt. No. 3536]<br>2/01 - 5/31/2018 | $ 82,519.00 | $ - | $ 9,558.11 | $ - | $ 82,519.00 | $ 9,558.11 |
| | *Actuaries and Consultants for Retirees Committee* | | | | | | |
| 11 | Segal Consulting [Dkt. No. 3537]<br>2/01 - 5/31/2018 | $ 268,316.00 | $ 12,752.67 | $ 4,015.79 | $ - | $ 255,563.33 | $ 4,015.79 |
| | *Financial Advisor for Retirees Committee* | | | | | | |
| 12 | FTI Consulting, Inc. [Dkt. No. 3543]<br>2/01 - 5/31/2018 | $ 1,877,094.50 | $ 55,000.00 | $ 18,368.45 | $ - | $ 1,822,094.50 | $ 18,368.45 |
| | *Retirees Committee* | | | | | | |
| 13 | Members of Retirees Committee [Dkt. No. 3547]<br>2/01 - 5/31/2018 | $ - | $ - | $ 539.30 | $ - | $ - | $ 539.30 |
| | *Counsel for PREPA and AAFAF* | | | | | | |
| 14 | Greenberg Traurig LLP [Dkt. No. 3556]<br>2/01 - 5/31/2018 | $ 4,536,263.70 | $ 112,255.37 | $ 129,139.80 | $ 2,973.68 | $ 4,424,008.33 | $ 126,166.12 |
| | *Financial Advisor and Investment Banker for AAFAF* | | | | | | |
| 15 | Rothschild Inc. [Dkt. No. 3561]<br>4/01 - 5/31/2018 | $ 2,020,000.00 | $ - | $ - | $ - | $ 2,020,000.00 | $ - |
| | *Puerto Rico Counsel to Official Committee of Unsecured Creditors* | | | | | | |
| 16 | Casillas, Santiago & Torres LLC [Dkt. No. 3562]<br>2/01 - 5/31/2018 | $ 294,120.50 | $ - | $ 12,052.09 | $ - | $ 294,120.50 | $ 12,052.09 |
| | *Communications Advisor to Official Committee of Unsecured Creditors* | | | | | | |
| 17 | Kroma Advertising Inc. [Dkt No. 3566]<br>2/15 - 4/15/2018 | $ 60,000.00 | $ - | $ 19,509.35 | $ - | $ 60,000.00 | $ 19,509.35 |
| | *Member of Official Committee of Unsecured Creditors* | | | | | | |
| 18 | Drivetrain LLC and SEIU [Dkt. No. 3567]<br>1/01 - 5/31/2018 | $ - | $ - | $ 5,726.96 | $ 220.00 | $ - | $ 5,506.96 |
| | *Counsel to AAFAF - COFINA* | | | | | | |
| 19-a | McKinsey & Company, Inc. [Dkt. No. 3580]<br>2/01 - 5/31/2018 | $ 7,237,000.00 | $ - | $ - | $ - | $ 7,237,000.00 | $ - |

Case:17-03283-LTS Doc#:4126 Filed:10/31/18 Entered:10/31/18 17:09:19 Desc: Main Document Page 18 of 23

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of the Commonwealth of Puerto Rico, et al.

PROMESA Title III No. 17 BK 3283-LTS

EXHIBIT A

First, Second, and Third Interim Fee Period Applications Recommended for Court Approval:

| Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|
| *Consulting Services Provider to Debtors - HTA* | | | | | | | |
| 19-b **McKinsey & Company Inc [17-3567 Dkt. No. 467]** | 2/01 - 5/31/2018 | $ 1,585,000.00 | $ - | $ - | $ - | $ 1,585,000.00 | $ - |
| *Consulting Services Provider to Debtors - PREPA* | | | | | | | |
| 19-c **McKinsey & Company Inc [17-04780 Dkt. No. 919]** | 2/01 - 5/31/2018 | $ 2,960,000.00 | $ - | $ - | $ - | $ 2,960,000.00 | $ - |
| *Puerto Rico Counsel to AAFAF - COFINA* | | | | | | | |
| 20-a **Marini Pietrantoni Muniz, LLC [Dkt. No. 3583]** | 3/01 - 5/31/2018 | $ 3,286.35 | $ 777.03 | $ - | $ - | $ 2,509.32 | $ - |
| *Puerto Rico Counsel to AAFAF - ERS* | | | | | | | |
| 20-b **Marini Pietrantoni Muniz, LLC [Dkt. No. 3584]** | 3/01 - 5/31/2018 | $ 10,631.70 | $ 777.04 | $ - | $ - | $ 9,854.66 | $ - |
| *Puerto Rico Counsel to AAFAF - HTA* | | | | | | | |
| 20-c **Marini Pietrantoni Muniz, LLC [Dkt. No. 3586]** | 3/01 - 5/31/2018 | $ 38,402.10 | $ 777.04 | $ 1,511.49 | $ 34.27 | $ 37,625.06 | $ 1,477.22 |
| *Puerto Rico Counsel to AAFAF - COMMONWEALTH* | | | | | | | |
| 20-d **Marini Pietrantoni Muniz, LLC [Dkt. No. 3587]** | 3/01 - 5/31/2018 | $ 203,956.65 | $ 777.04 | $ 7,323.38 | $ 34.27 | $ 203,179.61 | $ 7,289.11 |

FN1 This reccommendation includes the allowance of first class air travel specifically authorized by the Oversight Board due to extenuating circumstances.

19228930.1

**McKinsey & Company, Inc.**                                    **EXHIBIT B**

**Title III Fee Summary**

**First, Second, and Third Interim Fee Periods:**

| | Senior Partners[2] | Partners | Associate Partners | Engagement Managers | Associates[3] | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | Commonwealth Working Group Team Participation by Month[1] | | | | | |
| July 2017 | | | | | | | | | |
| August 2017 | 3 | | | 1 | 3 | | $740,000.00 | 1,120 | $660.71 |
| September 2017 | 3 | | | 1 | 3 | 1 | $740,000.00 | 1,220 | $606.56 |
| October 2017 | 4 | 1 | 1 | 2 | 2 | 1 | $740,000.00 | 1,520 | $486.84 |
| November 2017 | 4 | 3 | 1 | 3 | 5 | 4 | $2,220,000.00 | 2,420 | $917.36 |
| December 2017 | 4 | 2 | 2 | 3 | 4 | 3 | $1,650,000.00 | 2,220 | $743.24 |
| January 2018 | 3 | 4 | 1 | 1 | 3 | 3 | $1,940,000.00 | 1,920 | $1,010.42 |
| February 2018 | 3 | 4 | 1 | 1 | 3 | 3 | $1,940,000.00 | 1,920 | $1,010.42 |
| March 2018 | 3 | 3 | 2 | 1 | 3 | 3 | $1,940,000.00 | 1,920 | $1,010.42 |
| April 2018 | 3 | 3 | 1 | 1 | 2 | 3 | $1,940,000.00 | 1,720 | $1,127.91 |
| May 2018 | 3 | 3 | 1 | 1 | 3 | 3 | $1,417,500.00 | 1,820 | $778.85 |
| | | | | | | | **$15,267,500.00** | **17,800** | **$857.72** |

| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
|---|---|---|---|---|---|---|---|---|---|
| | | | | PREPA Working Group Team Participation by Month | | | | | |
| July 2017 | | | | | | | | | |
| August 2017 | 1 | 1 | 2 | 1 | 1 | 1 | $740,000.00 | 1,120 | $660.71 |

[1] Three team members per month are designated as full time at an estimated 60 hours per week. All remaining team members are estimated at 25 hours per week.

[2] During some months, this category includes one or more Senior Vice Presidents.

[3] Includes senior associates.

| | | PREPA Working Group Team Participation by Month | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
| September 2017 | 1 | 1 | 2 | 1 | 2 | 1 | $740,000.00 | 1,220 | $606.56 |
| October 2017 | 3 | 1 | 3 | 1 | 1 | 1 | $740,000.00 | 1,420 | $521.13 |
| November 2017 | 2 | 1 | 1 | 1 | 2 | 2 | $740,000.00 | 1,320 | $560.61 |
| December 2017 | 2 | 1 | 1 | 1 | 1 | 1 | $740,000.00 | 1,120 | $660.71 |
| January 2018 | 2 | 1 | 1 | 1 | 1 | 1 | $740,000.00 | 1,120 | $660.71 |
| February 2018 | 2 | 1 | 2 | 1 | 3 | 1 | $740,000.00 | 1,420 | $521.13 |
| March 2018 | 2 | 1 | 2 | 1 | 1 | 2 | $740,000.00 | 1,320 | $560.61 |
| April 2018 | 2 | 1 | 2 | 2 | 2 | 1 | $740,000.00 | 1,420 | $521.13 |
| May 2018 | 2 | 1 | 2 | 1 | 1 | 1 | $740,000.00 | 1,220 | $606.56 |
| | | | | | | | **$7,400,000.00** | **12,700** | **$582.68** |

| | | HTA Working Group Team Participation by Month | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
| July 2017 | | 1 | 1 | 1 | 2 | | $720,000.00 | 920 | $782.61 |
| August 2017 | | 1 | 1 | 1 | 1 | | $720,000.00 | 820 | $878.05 |
| September 2017 | | 1 | 1 | 1 | 2 | | $720,000.00 | 920 | $782.61 |
| October 2017 | | | | | | | | | |
| November 2017 | | 1 | 2 | 1 | 1 | | $300,000.00 | 920 | $326.09 |
| December 2017 | | 1 | 2 | 1 | 1 | | $300,000.00 | 920 | $461.96 |
| January 2018 | | 1 | 2 | 1 | 1 | | $425,000.00 | 920 | $461.96 |
| February 2018 | | 1 | 2 | 1 | | 1 | $425,000.00 | 920 | $461.96 |
| March 2018 | | 1 | 2 | 1 | | 1 | $425,000.00 | 920 | $416.96 |

2

| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
|---|---|---|---|---|---|---|---|---|---|
| **HTA Working Group Team Participation by Month** | | | | | | | | | |
| April 2018 | | 1 | 2 | 1 | 1 | 1 | $425,000.00 | 1,020 | $416.67 |
| May 2018 | | 1 | 2 | 1 | | 2 | $310,000.00 | 1,020 | $303.92 |
| | | | | | | | **$4,770,000.00** | **9,300** | **$512.90** |

| | | |
|---|---|---|
| **Overall Totals for All 3 Working Groups** | **$27,437,500.00** | **39,800** | **$689.38** |

19707897.2

3

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

**UNRESOLVED Second and Third Interim Fee Period Applications Recommended for Adjournment to December 19, 2018 or later:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| | *Bankruptcy Counsel to Debtors Commonwealth* | | | | | | | |
| 1-a | **Proskauer Rose LLP [Dkt. No. 2868]** | 10/01 - 01/31/2018 | $ 5,453,686.60 | | $ 294,582.75 | | | |
| | *Bankruptcy Counsel to Debtors COFINA* | | | | | | | |
| 1-b | **Proskauer Rose LLP [Dkt. No.2870]** | 10/01 - 01/31/2018 | $ 562,239.80 | | $ 5,584.22 | | | |
| | *Bankruptcy Counsel to Debtors ERS* | | | | | | | |
| 1-c | **Proskauer Rose LLP [Dkt. No. 2872]** | 10/01 - 01/31/2018 | $ 2,121,996.20 | | $ 52,896.53 | | | |
| | *Bankruptcy Counsel to Debtors PREPA* | | | | | | | |
| 1-d | **Proskauer Rose LLP [Dkt. No. 2876]** | 10/01 - 01/31/2018 | $ 2,062,304.20 | | $ 37,003.99 | | | |
| | *Bankruptcy Counsel to Debtors HTA* | | | | | | | |
| 1-e | **Proskauer Rose LLP [Dkt. No. 2874]** | 10/01 - 01/31/2018 | $ 1,256,420.60 | | $ 39,216.07 | | | |
| | *Financial Advisors to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | |
| 2-a | **Ankura Consulting Group, LLC [Dkt. No.  2751]** | 10/01 - 1/31/2018 | $ 3,937,979.00 | | $ 175,457.10 | | | |
| | *Financial Advisors to PREPA* | | | | | | | |
| 2-b | **Ankura Consulting Group, LLC [Dkt. No. 2755]** | 10/01 - 1/31/2018 | $ 3,475,283.50 | | $ 153,684.90 | | | |
| | *Investment Banker and Financial Advisor to FOMB* | | | | | | | |
| 3 | **Citigroup Global Markets Inc. [Dkt. No. 2944]** | 1/27/2017 - 1/31/2018 | $ 625,000.00 | | $ 60,971.21 | | | |
| | *Counsel for Oversight Board* | | | | | | | |
| 4 | **Munger Tolles & Olson [Dkt. No. 3519]** | 8/1/2017 - 5/31/2018 | $ 787,714.54 | | $ 3,397.75 | | | |
| | *Chief Financial Advisor - PREPA* | | | | | | | |
| 5 | **Filsinger Energy Partners [Dkt. No. 3526]** | 2/01 - 05/31/2018 | $ 5,072,116.80 | | $ 333,333.15 | | | |
| | *Puerto Rico Counsel for Retirees Committee* | | | | | | | |
| 6 | **Bennazar, Garcia & Milan [Dkt No. 3539]** | 2/01 - 5/31/2018 | $ 352,581.25 | | $ 21,979.16 | | | |
| | *COFINA Agent* | | | | | | | |
| 7 | **Bettina M. Whyte [Dkt. No. 3540]** | 2/01 - 5/31/2018 | $ 448,730.00 | | $ 18,649.09 | | | |
| | *Counsel for COFINA Agent* | | | | | | | |
| 8 | **Willkie Farr & Gallagher LLP [Dkt. NO. 3541]** | 2/01 - 5/31/2018 | $ 4,634,348.89 | | $ 957,142.80 | | | |
| | *Special Municipal Bankruptcy Counsel for COFINA Agent* | | | | | | | |
| 9 | **Klee, Tuchin, Bogdanoff & Stern LLP [Dkt. No. 3542]** | 2/01 - 5/31/2018 | $ 869,739.50 | | $ 27,854.77 | | | |
| | *Puerto Rico Counsel for COFINA Agent* | | | | | | | |
| 10 | **Nilda Navarro-Cabrer [Dkt. No. 3545]** | 2/01 5/31/2018 | $ 103,025.00 | | $ 2,379.82 | | | |
| | *Puerto Rico Counsel to Oversight Board* | | | | | | | |
| 11 | **O'Neill & Borges LLC [Dkt. No. 3559]** | 2/01 - 5/31/2018 | $ 511,739.32 | | $ 16,759.49 | | | |
| | *Puerto Rico Counsel to PREPA* | | | | | | | |
| 12 | **Cancio, Nadal, Rivera & Diaz, PSC [Dkt. No. 3560]** | 2/01 - 5/31/2018 | $ 536,525.00 | | $ 4,218.39 | | | |
| | *Financial Advisors to Commonwealth* | | | | | | | |
| 13-a | **Ankura Consulting Group LLC [Dkt. No. 3564]** | 2/01 - 5/31/2018 | $ 2,002,323.50 | | $ 128,217.60 | | | |
| | *Financial Advisors to PREPA* | | | | | | | |
| 13-b | **Ankura Consulting Group LLC [17-04780 Dkt. No. 918; First Amended Dkt. No. 3658]** | 2/01 - 5/31/2018 | $ 3,325,832.00 | | $ 261,639.11 | | | |
| | *Financial Advisors to Official Committee of Unsecured Creditors* | | | | | | | |
| 14 | **Zolfo Cooper, LLC [Dkt. No. 3565]** | 2/01 - 5/31/2018 | $ 3,161,231.75 | | $ 19,295.62 | | | |
| | *Counsel to Official Committee of Unsecured Creditors* | | | | | | | |
| 15 | **Paul Hastings LLP [Dkt. No. 3568]** | 2/01 - 5/31/2018 | $ 8,676,112.75 | | $ 586,993.66 | | | |

19228930.1

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

**EXHIBIT C**

**UNRESOLVED Second and Third Interim Fee Period Applications Recommended for Adjournment to December 19, 2018 or later:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| | *Counsel to AAFAF* | | | | | | | |
| 16 | **DLA Piper [Dkt. No. 3569]** | 2/01 - 5/31/2018 | $ 902,090.92 | | $ 15,937.82 | | | |
| | *Counsel for Debtors - COFINA* | | | | | | | |
| 17-a | **Proskauer Rose [Dkt. No. 3571]** | 2/01 - 5/31/2018 | $ 94,488.00 | | $ 4,277.94 | | | |
| | *Counsel for Debtors - ERS* | | | | | | | |
| 17-b | **Proskauer Rose [Dkt. No. 3590]** | 2/01 - 5/31/2018 | $ 445,503.70 | | $ 16,638.88 | | | |
| | *Counsel for Debtors - HTA* | | | | | | | |
| 17-c | **Proskauer Rose [Dkt. No. 3576]** | 2/01 - 5/31/2018 | $ 1,219,419.80 | | $ 40,404.55 | | | |
| | *Counsel for Debtors - PREPA* | | | | | | | |
| 17-d | **Proskauer Rose [Dkt. No. 3582]** | 2/01 - 5/31/2018 | $ 3,246,887.10 | | $ 169,316.96 | | | |
| | *Counsel for Debtors - Commonwealth* | | | | | | | |
| 17-e | **Proskauer Rose [Dkt. No. 3588]** | 2/01 - 5/31/2018 | $ 5,434,013.80 | | $ 286,122.56 | | | |
| | *Counsel to AAFAF - COFINA* | | | | | | | |
| 18-a | **O'Melveny & Myers [Dkt. No. 3575]** | 2/01 - 5/31/2018 | $ 837,368.29 | | $ 3,688.16 | | | |
| | *Counsel to AAFAF - ERS* | | | | | | | |
| 18-b | **O'Melveny & Myers [Dkt. No. 3578]** | 2/01 - 5/31/2018 | $ 194,579.33 | | $ 13,657.88 | | | |
| | *Counsel to AAFAF - HTA* | | | | | | | |
| 18-c | **O'Melveny & Myers [Dkt. No. 3579]** | 2/01 - 5/31/2018 | $ 155,651.42 | | $ 451.10 | | | |
| | *Counsel to AAFAF - Commonwealth* | | | | | | | |
| 18-d | **O'Melveny & Myers [Dkt. No. 3581]** | 2/01 - 5/31/2018 | $ 6,871,237.76 | | $ 101,437.64 | | | |
| | *Debtor's Financial Advisor* | | | | | | | |
| 19 | **Deloitte Financial Advisory Services LLP [Dkt. No. 3831]** | 2/01 - 5/31/2018 | $ 3,124,262.00 | | $ 129,381.88 | | | |
| | *Investment Banker and Financial Advisor to FOMB* | | | | | | | |
| 20 | **Citigroup Global Markets Inc. [Dkt. No. 4020]** | 2/01 - 5/31/2018 | $ 1,803,571.43 | | $ 40,912.98 | | | |

19228930.1