IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | PROMESA |
|    as representative of | ) | Title III |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO | ) | |
| *et al.*, | ) | Case No. 3:17-03283 |
|    Debtors[1] | ) | (LTS) |
| ------------------------------------------------------------------ | ) | |
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | Title III |
|    as representative of | ) | |
| | ) | Case No. 3:17-03566 |
| THE EMPLOYEES RETIREMENT SYSTEM OF | ) | (LTS) |
| THE GOVERNMENT OF THE | ) | |
| COMMONWEALTH OF PUERTO RICO, | ) | |
| | ) | |
|    Debtor. | ) | |
| ---------------------------------------- | ) | |

**COOPERATIVA DE AHORRO Y CRÉDITO VEGABAJEÑA'S REPLY
TO OBJECTION OF THE EMPLOYEE RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO
MOTION FOR LIFT OF STAY**

---

[1] The Debtors in this Title III case are: (i) The Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3283-LTS); (ii) The Employees Retirement System of the Govt. of the Commonwealth of Puerto Rico (Bankr. Case No. 17-bk-3566-LTS); (iii) Puerto Rico Sales Tax Financing Corporation (Bankr. Case No. 17-bk-3284-LTS); (iv) Puerto Rico Highways and Transportation Authority (Bankr.Case No. 17-bk-3567-LTS); and (v) Puerto Rico Electric Power Authority (Bankr. Case No. 17-bk-4780-LTS).

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES ................................................................................................. 3

INTRODUCTION .............................................................................................................. 4

ARGUMENT ...................................................................................................................... 5

   I.   THE STATUTORY BASIS OF COOPERATIVA'S LIEN INTEREST ............................ 5

   II.   COOPERATIVA'S MOTION FOR RELIEF OF THE AUTOMATIC
STAY SHOULD BE GRANTED UNDER *IN RE SONNAX INDUS.,
INC.*, 907 F.2nd 1280 (2nd CIR. 1990) ................................................................... 9

CONCLUSION .................................................................................................................. 13

NOTICE OF SERVICE ..................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases** **PAGE**

*In re Builders Group & Dev. Corp.*, 502 B.R. 95 (2013) ................................................................. 11

*In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2nd Cir. 1990) ......................................... 9, 10, 11, 12

*Pepper v. Litton*, 306 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939) ............................................... 11

*Rivera-Flores v. Puerto Rico Telephone Co.*, 64 F.3d 742 (1st Cir. 1995) .................................... 10

*U.S. v. Puerto* Rico, 287 F.3d 212 (1st Cir. 2002) ....................................................................... 10

**Statutes**

11 U.S.C. § 362 .................................................................................................................. 4, 5, 9

48 U.S.C. § 2161 ..................................................................................................................... 4, 10

**Other Authorities**

2011 L.P.R. 196 ............................................................................................................. 5, 6, 7, 8, 9

P.R. Act 106-2017 ............................................................................................................ 5, 9, 10, 12

**TO THE HONORABLE COURT:**

Comes Now secured creditor *Cooperativa de Ahorro y Crédito Vegabajeña ("Cooperativa"),* represented by its undersigned attorneys, and respectfully states, alleges, and prays the following:

**INTRODUCTION**

Cooperativa, a secured creditor of Debtor Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), served its Lift Stay Notice on August 15, 2018 pursuant to Section III.Q of the *Sixth Amended Notice, Case Management and Administrative Procedures* (ECF 3804-1) to counsel for the Financial Oversight and Management Board for Puerto Rico, as representative of the Debtors, and to counsel for the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"). On September 12, 2018, AAFAF's counsel notified its disagreement with Cooperativa's proposed modification of the automatic stay.

Thereafter, on October 4, 2018, Cooperativa filed its Motion for Lift of Stay Seeking the Modification of the Automatic Stay to Enforce Liens on Employee Withholding Funds Currently Held by the Employee Retirement System of the Government of the Commonwealth of Puerto Rico. (ECF No. 4011) On October 25, 2018, ERS filed its Objection. (ECF No. 4098). Cooperativa files this Reply to ERS's Objection and for each of the reasons stated, respectfully moves for relief from the automatic stay imposed pursuant to Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), *see* 48 U.S.C. § 2161(a) (incorporating 11 U.S.C. § 362) in both Case No.

4

3:17-bk-03283 and Case No. 3:17-bk-03566. As additional support of the Motion, Cooperativa states as follows:

1. Pursuant to 11 U.S.C. §362(d) and 2011 L.P.R. 196, Cooperativa seeks relief from the automatic stay to enforce its statutory lien interests in individual employee retirement pension accounts funds established pre-petition and prior to the enactment of P.R. Act 106-2017.

2. Cooperativa's Motion for Lift of Stay (ECF No. 4011) requests that the automatic stay imposed in both Case No. 3:17-03283 and in Case No. 3:17-03566, be modified and lifted for the limited purpose of allowing it to seek to enforce its statutory lienhold interest on the individual employee funds currently held by ERS at this time in Puerto Rico state court, but assigned prepetition to Cooperativa by the individual borrowers.

3. ERS's Objection misrepresents the actual property interests Cooperativa seeks to enforce, which property belongs to individual borrowers and was duly assigned to Cooperativa. The Objection also ignores Cooperativa's statutory right to the property it seeks to pursue in state court. Further, ERS's Objection misrepresents the impact, which is nonexistent, that Cooperativa's state court action will have on the Title III bankruptcy case because Cooperativa is not seeking to recover any property of the Debtor.

## ARGUMENT

### I. THE STATUTORY BASIS OF COOPERATIVA'S LIEN INTEREST

4. ERS's Objection misrepresents Cooperativa's secured interest and the reasons why Cooperativa seeks relief from the automatic stay. Because Cooperativa's lien

interests do not attach to Title III estate property, if granted, Cooperativa's relief from the automatic stay will not interfere with the Title III bankruptcy case or prejudice other creditors seeking their portion of estate property.

5. Cooperativa's status as a secured creditor arises from state law enacted in 2011, 2011 L.P.R. 196, which allowed credit unions, such as Cooperativa, to enter into individual loan agreements with ERS participants who were either officers or employees of the Puerto Rico government; members or employees of the Puerto Rico legislature; or officers or employees of public corporations and municipalities of Puerto Rico. Each loan agreement at issue in this proceeding was entered into after 2011, and before the 2017 filing of the Title III case. Copy of a duly certified English translation of Act 2011 L.P.R. 196, is attached hereto as *Exhibit A.*

6. 2011 L.P.R. 196 substantially modified an earlier state statute. It was enacted for the purpose of encouraging credit unions and other financial institutions to make loans to individual borrowers during a time of prolonged economic downturn in Puerto Rico. The statute was intended to stimulate local economies by creating a more favorable environment for both lenders and borrowers to enter into loan agreements. Under the statute, participants of the ERS who entered into loan agreements with a credit union, or other financial institution, could assign up to 65% of his or her contributions to the ERS or $25,000, whichever is less, as collateral for a loan granted by the credit union.

7. Cooperativa participated in the loan program offered under 2011 L.P.R. 196. To be eligible for loans, individual borrowers of Cooperativa, who were also participants in the ERS, agreed to pledge a portion of their retirement funds to Cooperativa to secure

the loan agreement. These retirement funds were salary deductions diverted directly into the participant's retirement account. Years before the Title III bankruptcy filing, ERS agreed to the assignment of individual salary contributions to be used as collateral for individual loan agreements. *See:* **Exhibits A and B.**

8. Section 4-110 of 2011 P.R. 196[2], established that Cooperativa held a statutory lien on the pledged retirement funds in each individual loan. This lien, which ERS approved, allows Cooperativa to collect the pledged funds from the ERS if the individual borrower defaults and is duly notified of default. Again, the ERS was duly notified and agreed to the individual Commonwealth employee and/or retiree assignment of salary

---

2 Art, 4-110, *inter alia,* states: "…Section – 4-110.- Loan Collections and Administration; Credit Priority.- The Administrator is hereby empowered to collect, from any amount a participant is entitled to receive as a final liquidation for accrued regular vacation or sick leave owed by the agency, entity, or department in which he/she worked, or from the savings liquidation that the Puerto Rico Government Employee Association must make, or from the contributions or interest accrued on the System, any amount owed for personal, cultural, or mortgage loans, or loans originated as provided in Section 2-119 of this Act, by said participant when he/she permanently ceases or separates from service. Debts owed to the System on account of personal, cultural, or mortgage loans, or loans originated or acquired by a Savings and Credit Union or the Cooperative Bank of Puerto Rico, as provided in Section 2-119 of this Act, shall have priority over any other debt of the participant. The Administrator shall determine the manner and conditions under which such loan amounts and any interest accrued thereon, with respect to the loans of the System, shall be collected.

Personal loans originated or acquired by a Savings and Credit Unions of the Cooperative Bank of Puerto Rico up to the limit provided in Section 2-119 of this Act, and personal, mortgage, and cultural loans originated by the System shall be secured, with priority over any other debt, by the contributions made and those subsequently accrued in the System, the pension, benefit, or reimbursement exceeding the contributions designated by the participant or pensioner pursuant to Sections 2-119 and 4-106, and in the amount that, in case of death of the participant or pensioner, may correspond to his/her estate or any beneficiary as designated by him/her according to the provisions of Sections 4-105 to 4-108 of this Act. **The statutory lien created in this Section 4-110 shall remain in full force and effect in the event that mortgage or personal loans are transferred by the Administrator to third parties pursuant to Section 4-106 of this Act**. Such contributions and amounts may be applied by the Administrator to the repayment of any debt owed on account of any loan that the participant or pensioner may have with the System, Savings and Credit Unions or the cooperative Bank of Puerto Rico upon their request. Pensioners shall pledge their pension annuities to secure their loans with the same priority that participants pledge their contributions, benefits, or reimbursements. **The priority among the debts owed by participants or pensioners to the System, Savings and Credit Unions, and the Cooperative Bank of Puerto Rico shall be determined based on the date on which such loans where granted…".** (Emphasis is ours).

7

contributions to the ERS pension plan. With respect to each guaranteed loan, the ERS together with and as an attachment to the *Assignment Agreement for Pensioners and/or Assignment Agreement for Participants*, executed a *Certificate of Estoppel and Recognition of Notification of Assignment* of Funds. *See* **Exhibits B and C.** Debtor's surprising assertion that "*…no individual retirement accounts were ever established at ERS…*", (*see:* Objection at paragraph 10, footnote number 5), simply stated, is unfounded. Not only it is contrary to the clear statutory language of 2011 L.P.R. 196, Sections 2-119 and 4-110, but inapposite to ERS's contractual obligations under the *Assignment Agreement for Pensioners and/or Assignment Agreement for Participants*, executed a *Certificate of Estoppel and Recognition of Notification of Assignment* of Funds. *See* **Exhibits B and C.** "**…The statutory lien created in this Section 4-110 shall remain in full force and effect in the event that mortgage or personal loans are transferred by the Administrator to third parties pursuant to Section 4-106 of this Act**…. **The priority among the debts owed by participants or pensioners to the System, Savings and Credit Unions, and the Cooperative Bank of Puerto Rico shall be determined based on the date on which such loans where granted…**". (Emphasis is ours).

9. Prior to the filing of the Title III bankruptcy case, the borrowers connected with Cooperativa's 37 claims in the Title III case defaulted on their loans and were duly notified of their default status. In most cases, as demonstrated by the list of claims, attached hereto as *Exhibit D*, these borrowers sought bankruptcy protection after their default. During the bankruptcy proceedings, the bankruptcy court approved the individual debtor's assignment of their property interest in their existing ERS retirement

8

account to Cooperativa. These assigned funds, therefore, are not ERS property as of the date of the Title III bankruptcy filing.

10. Contrary to ERS's Objections, Cooperativa is now seeking to enforce only its lien interests in the defaulted individual borrowers ERS monies, which statutory lien ERS approved of, and which assignment of property was later approved by the bankruptcy court.

## II. COOPERATIVA'S MOTION FOR RELIEF OF THE AUTOMATIC STAY SHOULD BE GRANTED UNDER *IN RE SONNAX INDUS., INC.*, 907 F.2nd 1280 (2nd CIR. 1990)

11. ERS's objections under the *In re Sonnax Indus., Inc.,* 907 F.2d 1280 (2nd Cir. 1990), factors applied by courts to determine cause to lift the automatic stay under 11 U.S.C. §362(c) are also flawed for the following reasons:

12. First, contrary to ERS's objection, P.R. Act 106-2017, enacted August 23, 2017, the statute which now precludes government employees from making contributions to ERS or to receive retirement benefits, is not applicable to Cooperativa's motion for relief from the automatic stay and does not bar relief in any way. As explained above, Cooperativa's lien interest in a portion of the individual borrowers' retirement funds attached before the enactment of Act 106-2017.

13. Further, the 2017 law has no retroactive effect. In fact, Art. 7.6 of the law specifically states that all loans that the Retirement Systems had already granted and approved prior to the date of the law "…*shall be administered in accordance with the statutes under which they were granted.*" (Translation is ours). This includes loans previously

9

issued in accordance with Law 196-2011. Further, Art. 3.06 of P.R. Act. 106-2017 states that "…[p]*articipants of the New Defined Contributions Plan shall have ergo omnes property rights over the balances in their Defined Contributions account.*" (Translation is ours). Art. 7.6 plainly states that all prior loans—including the ones Cooperativa seeks to enforce at this time—must be administered under the statute that granted them, and not by P.R. Act. 106-2017.

14. It is axiomatic that a legal presumption exists that a statute may not be applied retroactively unless the statute expressly so states. **_Rivera-Flores v. Puerto Rico Telephone Co.,_** 64 F.3d 742 (1st Cir. 1995). *See also:* **_U.S. v. Puerto_ Rico,** 287 F.3d 212 (1st Cir. 2002). In this case, P.R. Act 106-2017 specifically states that it has no retroactive effect as to the loans at issue here. Therefore, ERS's objection that "…*movant's borrowers have no present rights against ERS*", *(See:* Objection at paragraph 10), is erroneous under the specific circumstances of the borrowers' loans with Cooperativa. Cooperativa is seeking to enforce existing, pre-2017 loans with enforceable statutory liens on collateral securing loans it executed with borrowers and duly acknowledged by the ERS.

15. Second, cause exists to grant relief from the automatic stay under the second *Sonnax* factor, for the narrow purpose of enforcing its statutory lien interest because Cooperativa's proposed state court action will not interfere with the Title III centralized claims process in any way. This is because Cooperativa's lien interests are attached to property which individual borrower previously assigned to Cooperativa and which are not, therefore, part of ERS's Title III bankruptcy estate. Furthermore, for this same reason, ERS erroneously mischaracterizes Cooperativa's proposed state court lien enforcement

10

claims. Contrary to ERS's claim, the state court lien enforcement claims will not burden ERS with defending numerous lawsuits in various forums. Under PROMESA, 48 U.S.C. § 2161(c)(5), "property of the estate" means, as it does under Title 11, property of the debtor. The collateral Cooperativa seeks in its proposed state lawsuits is property of the individual borrowers, not ERS property. The collateral is only held by the ERS.

16. Again, the individual borrowers pledged a portion of the ERS retirement funds at the time the loans were executed. Later, while in bankruptcy, the court approved the assignment of this property by the individual borrowers to Cooperativa. It would be grossly inequitable and unjust for this Court to ignore the controlling state law which governs these individual loans and the court approved assignment of the retirement funds to Cooperativa. Congress did not preempt the pre-Title III governing statutes and none can be inferred. *See:* **In re Builders Group & Dev. Corp.,** 502 B.R. 95 (2013). This Court is bound to apply this rule and other rules of equity jurisprudence to ensure that manifest justice is done. **Pepper v. Litton,** 306 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

17. Third, cause exists for Cooperativa to be relieved from the automatic stay under the sixth *Sonnax* factor. That is, contrary to ERS's misrepresentations or its confusion about the nature of Cooperativa's proposed state court lien-enforcement action, Cooperativa is seeking to enforce its statutory lien interest in certain borrower's retirement funds, its rights arise under state law and are not "…*completely derivative of [each] borrower." (See:* Objection at paragraph 10). Furthermore, ERS, the debtor, is not the main party to the proposed state court litigation.

11

18. Fourth, cause exists for Cooperativa to be relieved from the automatic stay under the seventh *Sonnax* factor because, as stated above, the statutory liens Cooperativa seeks to enforce are attached to property currently held by ERS, but are not the Debtor's property. Thus, contrary to ERS's misstatements, granting Cooperativa relief from the automatic stay will not drain ERS's resources or result in protracted litigation. As explained above, under 2011 L.P.R. 196, the collateral securing the loan agreements between Cooperativa and the individual borrowers is property belonging to the individual borrowers—a certain percentage of their pre-2017 salary contributions to their ERS retirement account—and not to ERS. The "Pay-Go" law referenced in ERS's objection is also not applicable to Cooperativa's proposed state lien enforcement actions.

19. Fifth, cause exists for Cooperativa to be relieved from the automatic stay under the tenth and eleventh *Sonnax* factors because the interests of judicial economy and efficiency support Cooperativa's motion. The distinction raised in ERS's objection that Cooperativa seeks to initiate suit in state court, rather than complete pending lawsuits is not material. Because the collateral Cooperativa seeks to recover by enforcing its statutory liens is not part of the bankruptcy estate, it is extremely beneficial to the bankruptcy court to allow Cooperativa's 37 claims to be resolved directly and efficiently in state court.

20. Finally, cause exists for Cooperativa to be relieved from the automatic stay because the *Sonnax* balance-of-harm factor weighs heavily in favor of Cooperativa's motion. Because Cooperativa's proposed state court action does not involve ERS's property, the state claim will not have a detrimental impact on the debtor. If Cooperativa

12

is required to hold off on pursuing and enforcing its statutory liens on loans which have been in default for years and where the bankruptcy court has already assigned the individual borrower's property interest to Cooperativa, until the Title III bankruptcy case is dismissed, Cooperativa will be greatly and unnecessarily harmed. Contrary to ERS's assertions, postponing the liquidation of Cooperativa's claims is not a hardship shared with other creditors, because the collateral Cooperativa seeks to liquidate was previously assigned to Cooperativa pre-petition, and is not property of the ERS. Under the specific circumstances of Cooperativa's secured status and its proposed state court actions, the balance of harm weighs in favor of granting Cooperativa's motion for relief from the automatic stay for cause at this time.

## CONCLUSION

For each of the reasons stated herein, *Cooperativa de Ahorro y Crédito Vegabajeña* respectfully requests this Court to grant its Motion for Lift of Stay and for whatever further relief this Court deems just and proper at this time.

Respectfully submitted.

## NOTICE OF SERVICE

I certify that on this date I filed a true and correct copy of the foregoing *Cooperativa de Ahorro y Crédito Vegabajeña's Reply to Objection of the ERS of the Government of the Commonwealth of P.R. to Motion to Lift Stay,* with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

13

CM/ECF participants: **Hermann Bauer, Esq.,** Hermann.Bauer@oneillborges.com; **Ubaldo M. Fernández Barrera, Esq.,** ubaldo.fernandez@oneillborges.com; counsel to The Financial Oversight & Management Board For Puerto Rico; **Diana M. Pérez, Esq,** dperez@omm.com; **Luis C. Marini Biaggi, Esq.,** lmarini@mpmlawpr.com; **Carolina Veraz-Rivero, Esq.,** cvelaz@mpmlawpr.com; counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority; and by USPS to the U.S. Trustee.

In San Juan, P.R, this 1st day of November 2018.

/s/ Carlos A. Quilichini Paz
USDCPR 120906
Jessica M. Quilichini Ortíz
USDCPR 223803
Attorneys for Cooperativa de
Ahorro y Crédito Vegabajeña
Post Office Box 9020895
San Juan, Puerto Rico 00902-0895
Telephone: (787) 729-1720
Facsimile: (787) 724-6000
Email: quilichinipazc@microjuris.com