**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** as representative of the<br>**COMMONWEALTH OF PUERTO RICO,**<br><br>Debtor.<br>_____<br>**ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC.,**<br><br>Movant,<br><br>v.<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**<br><br>as representative of the<br><br>**COMMONWEALTH OF PUERTO RICO,**<br><br>Respondent. | **BANKRUPTCY NO. 17-3283**<br>(CIVIL NO. 17-1578)<br><br><br><br>RE:<br>Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Tittle III Petition for Adjustment of Debts |

**MOTION FOR RELIEF FROM STAY**

**TO THE HONORABLE COURT**:

**APPEARS NOW** the Asociación Puertorriqueña de la Judicatura, Inc. ("APJ"), through the undersigned counsel, and hereby states, alleges, and requests as follows:

**I. PRELIMINARY STATEMENT**

Judicial independence is critical to democracy and justice. The concept of an independent judiciary was embedded into the United States Constitution by our Founding

1

Fathers. Any attempt to impinge judicial independence does violence to this core value that is fundamental to our form of government.

Each co-equal branch in the American system of government has its own unique role within the overall structure. As Alexander Hamilton so aptly put it: the Judiciary is the branch least able to defend itself and advocate for its rights and proper place in the constitutional structure. Specifically, he wrote about the importance of preserving judicial independence in Federalist Paper Number 78:

> Whoever attentively considers the different departments of power must perceive, that, in a government in which they are separated from each other, the judiciary, from the nature of its functions, will always be the least dangerous to the political right of the Constitution; because it will be least in a capacity to annoy or injure them. [. . .]
> This simple view of the matter suggests several important consequences. It proves incontestably, that the judiciary is beyond comparison the weakest of the three departments of power; that it can never attack with success either of the other two; and that all possible care is requisite to enable it to defend itself against their attacks. [. . .] And it proves, in the last place [. . .] that as, from the natural feebleness of the judiciary, it is in continual jeopardy of being overpowered, awed, or influenced by its co-ordinate branches; and that as nothing can contribute so much to its firmness and independence as permanency in office, this quality may therefore be justly regarded as an indispensable ingredient in its constitution, and, in a great measure, as the citadel of the public justice and the public security. *The Federalist Papers*, Mentor, 1961, pages 465-466.

Hamilton also wrote in Federalist Paper Number 79 that: "Next to permanency in office, nothing can contribute more to the independence of the judges than a fixed provision for their support [. . .] In the general course of human nature, a power over a man's subsistence amounts to a power of his will." *The Federalist No. 79*, at 400.

It was the view of Alexander Hamilton, shared by others such as James Madison, that the judiciary should be separate and co-equal to the other branches of government, which led to the incorporation of the "No-Diminution Clause" in Article III, Section 1 of

2

the the United States Constitution. Essentially, it places the judiciary members' remuneration, once established, out of reach from the other two branches of government for purposes of reduction. This provides a guarantee that judicial power will be exercised objectively, without seeking favor or for fear of retribution from the executive or legislative branch. (*See DePascale v. State of New Jersey,* 211 N.J. 40 (2012) at 49-50.)

This approach to judicial independence and a *bona fide* separation of powers between the three branches of government was made a part of Puerto Rico's trajectory when Congress allowed the Puerto Rican people to draft their own Constitution and "organize a government pursuant to a Constitution of their own adoption." *Act of July 3,* 1950, Section 1. 64 Stat. 319. Congress enacted Public Law 600 in 1950 to allow for this, and the constitution that would arise under it had to "provide a republican form of government" and "include a bill of rights", with all other matters to be agreed upon in a constitutional convention. *See Act of July 3,* 1950, Section 2, 64 Stat. 319. The document that eventually was born from this, the Puerto Rico Constitution, created the Commonwealth of Puerto Rico, whose three-branched government resounded of American founding principles. *See Puerto Rico v. Sánchez Valle,* 136 S.Ct. 1863, at 1869 (2016).

In *Booth v. United States,* 291 U.S. 339 (1934), the United States Supreme Court was faced with the question of whether a judge who was retiring under section 260 of the Judicial Code continued to have a vested interest in his compensation sufficient to merit protection under the Compensation Clause. The Court found that in situations such as that, the judge "does not relinquish his office" and as such, his salary must remain intact. It is clear that "compensation" was construed in this case to include pensions, and that

3

upon retirement, a judge is entitled to receive a pension commensurate with what had been fixed by law prior to his retirement.

On May 3rd, 2017 the *Asociación Puertorriqueña de la Judicatura, Inc*. filed a Complaint for Declaratory Judgment (DN 1), closely followed by an Amended Complaint for Declaratory Judgment (DN 2) against the Financial Oversight and Management Board for Puerto Rico, et als, Civil No. 17-1580. In essence, the *Asociación Puertorriqueña de la Judicatura* (hereinafter "APJ") submits that the Fiscal Plan that the Oversight Board insists that the Government of Puerto Rico adopt is an outright violation of *Brau Linares v. E.L.A.,* 190 D.P.R. 315 (2014) as well as the United States and Puerto Rico Constitutions because it purports to reduce judicial pensions. *Brau Linares, Id* held that the judicial independence concept in the "non-reduction clauses" applies to judicial pensions. The APJ is seeking Declaratory Judgment to the effect that the Oversight Board acted *ultra vires* in mandating a retroactive reduction in the pensions of the Puerto Rico Judiciary.

The automatic stay that was issued in case 17 BK 3283 – LTS, *In re: The Financial Oversight Management Board for Puerto Rico as representative of the Commonwealth of Puerto Rico* was extended to this case. For the reasons that will be fully set forth below, the APJ requests the automatic stay be lifted with regards to its case.

## II. STATEMENT OF FACTS

The APJ is a membership association comprised by acting and retired judges of Puerto Rico's judicial branch. (*See* DN 2 *Amended Complaint* Civil No. 17-1580 at par. 7). One of its core values is judicial independence and its protection given its vital importance to a republican form of government. The Oversight Board (hereinafter "OB"),

4

on the other hand, was designed to, among other things, devise a timeline for the process of development, submission, approval, and certification of Fiscal Plans for the Commonwealth and any covered territorial instrumentalities. (*See* DN 2 *Amended Complaint* Civil No. 17-1580 at par. 14).

In 2016, the OB recommended an amendment of the government-proposed draft Fiscal Plan that to reduce pensions by fiscal year 2020. Among these pensions were the judicial branch pensions. Specifically, the OB provided that the public pension systems, jointly, would absorb a progressive reduction of their outlays by the year 2020 and conditioned its approval of the Fiscal Plan for Puerto Rico on this measure, among other unrelated ones.

The OB noted that the public pension systems are composed of: Employees' Retirement System (ERS), Teachers Retirement System (TRS), and Judiciary Retirement System (JRS). The JRS is completely different from the TRS and the ERS because of its origin in the principle of separation of powers, emanating from the United States and Puerto Rico Constitutions, Public Laws 600 and 447. By directing the reduction of judicial pensions, the OB is directly violating Federal and State law. At no time during this process has the OB made mention of the constitutional requirement of protection of judiciary salaries and pensions based on separation of powers in the republican form of government.

These actions by the OB constitute a direct violation of the Congressional requirement of a republican form of government in Puerto Rico because they violate the principle of judicial independence and separation of powers.

After all, in the *Sánchez Valle, supra* case, the United States Supreme Court has stated that all sovereignty of Puerto Rico derives from the Federal Constitution. When determining whether Puerto Rico and the United States could prosecute one defendant for the same conduct, the United States Supreme Court held that they could not, "because the oldest roots of Puerto Rico's power to prosecute lie in federal soil." *Sánchez Valle,* 136 S.Ct at 1868 (2016). The Court explained that "Puerto Rico today has a distinctive, indeed exceptional, status as a self-governing Commonwealth. But our approach is historical. And if we go back as far as our doctrine demands – to the 'ultimate source' of Puerto Rico's prosecutorial power [. . .] we once again discover the U.S. Congress." *Sánchez Valle, Id* at 1874.

> Put simply, Congress conferred the authority to create the Puerto Rico Constitution, which in turn confers the authority to bring criminal charges. That makes Congress the original source of power for Puerto Rico's prosecutors- as it is for the Federal Government's. The island's Constitution, significant though it is, does not break the chain. *Sánchez Valle, Id* at 1875-1876.

Logically, the Puerto Rico Constitution, a creature of Congress, emanates from the mandates of the United States Constitution, and embodies the mandates and rights established by it.

The aforementioned actions by the OB dramatically overstep federal law as well; specifically, Public Laws 600 and 447 and go against Congressional authority to allow for separation of powers and judicial independence in Puerto Rico.

Additionally, the Puerto Rico Constitution recognizes administrative autonomy and independence of the Judicial Branch, as does the United States' Constitution. (*See* DN 2 *Amended Complaint* Civil No. 17-1580 at par. 46; *see also Brau Linares v. E.L.A.,* 109 D.P.R. 315, 345 (2014).) Like the United States Constitution from which its power

6

derives, under the Territorial Clause, the Puerto Rico Constitution also recognizes that the salaries of appointed judges are to be set by special law and not reduced during the length of the term of their appointment (*See* Art. VI, Sec. 11 of the Puerto Rico Constitution), that no law shall reduce the salaries of a public officer after their election or appointment (*See* Art. VI, Sec. 10 of the Puerto Rico Constitution), and that the Legislature will establish a mandatory retirement plan for judiciary members upon reaching the age of seventy (70) (*See* Art. VI, Sec. 10 of the Puerto Rico Constitution).

The Puerto Rico Supreme Court in *Brau, Linares v. ELA*, 190 D.P.R. 315 (2014) has explicitly established this. It held that judicial compensation includes pensions, and that neither salaries nor pensions may be reduced retroactively.

Additionally, the OB has repeatedly reiterated the demand that a freeze clause be implemented on the judiciary pension accrual. This affects the active judges' pensions dramatically. The freeze, as stated in the certified Fiscal Plan, takes away the pension in its entirety for some active judges. Moreover, the elimination of the Christmas bonus for all public employees is also contemplated.

The APJ has been in constant communication with the OB and its legal counsel in an attempt to kick-start good-faith negotiations on these issues and avoid litigation altogether. The first encounter took place on May 16th, 2017, when the undersigned met with legal counsel for the OB, AAFAF, and the Commonwealth. This evolved into a second meeting on May 24th, 2017 with legal counsel for the OB and AAFAF. Mediation on this matter began and the undersigned met with Chief Mediator Hon. Judge Barbara Houser on August 11th, 2017 and then again on February 7th, 2018. Following the February 7th, 2018 meeting with Judge Houser, the undersigned reached out directly to

7

the OB's legal counsel in an attempt to begin negotiations. On May 3rd, 2018, and later on June 7th, 2018, the undersigned met with legal counsel for the OB and made earnest efforts to continue negotiations with the OB on this matter, to no avail.

The parties even filed a *Notice of Presentment of Stipulation and Request for Court Approval* (DN 327) with the corresponding *Stipulation and Request for Approval* (DN 327-1) as an exhibit. The parties stipulated two main points: 1) that during the time that negotiations were ongoing, APJ would "voluntarily refrain from filing a motion to lift the stay as a sign of good faith to encourage ongoing negotiations." (*Stipulation and Request for Approval* (DN 327-1 at par. 10); and 2) that:

> [A]t the time that, and if at all, the current negotiations are deemed unsuccessfully terminated by the parties, and this Honorable Court is so informed by joint or separate motion to that effect, in defending any position presented by the APJ before this Honorable Court in case number 17-1578 or 17-1580 and/or any other proceeding related to the matters in the identified cases, the FOMB and AAFAF will not present any defense or defenses the basis of which is the failure by the APJ to act in any manner during the time that the conversations are ongoing. (*Stipulation and Request for Approval* (DN 327-1 at par. 11);

To date, the OB has effectively indicated to the APJ that they will not mediate this issue now, more than one and a half years after the initial complaint was filed in this case. Proceedings are at a standstill and the Judicial Retirement System is in peril with every moment that passes without the issue of this Declaratory Judgment being able to be resolved by the Court.

**III. ARGUMENT**

"The decision of whether to lift the stay [is committed] to the discretion of the bankruptcy judge." *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir 1990) citing

*Holdtamp v. Littlefield*, (*In re Holtkamp*), 669 F.2d 505, 507 (7th Cir. 1982); *Rich v. Maryland National Bank,* 42 B.R. 350, 354 (D.Md. 1984).

### a. CAUSE

This Honorable Court has jurisdiction to entertain and grant the request made in this Motion pursuant to 11 U.S.C. 362(d)(1), which the Puerto Rico Oversight, Management, and Economic Stability Act of 2016 (PROMESA), 48 U.S.C. 2161, has made applicable to this proceeding. The Bankruptcy Code at 11 U.S.C. 362(d)(1) specifically states that "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay [. . .] (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [. . .]"

"The question of what is cause [. . .] is developed primarily by case law". *In re Unanue-Casal,* 159 B.R. 90, 96 (D.P.R. 1993). The movant of a motion requesting lifting of a stay has the burden of proof, as explained by the Second Circuit in *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir 1990). The *Sonnax* Court acknowledges that the term "cause" as set forth in 11 U.S.C. 362(d)(1) is a broad and general one, and suggests that the legislative intent is that each case should be evaluated individually to determine whether the remedy of lifting the stay is appropriate to that particular set of circumstances.

"Because the Bankruptcy Code provides no definition of what constitutes 'cause', the courts must determine when discretionary relief is appropriate on a case-by-case basis." *Claughton v. Mixton,* 33 F.3d 4, 5 (4th Cir. 1994) citing *Robbins v. Robbins* (*In re Robbins*), 964 F.2d 342, 345 (4th Cir. 1992).

### b. FACTORS TO EVALUATE

The *Sonnax* Court also adopts the *Curtis*[1] factors for determining whether or not a stay should be lifted to allow litigation of the matter that has been paralyzed by the filing of an alternate bankruptcy proceeding. *Sonnax, Id* at 1286. These factors are:

1. Whether relief would result in a partial or complete resolution of the issues;
2. Lack of any connection with or interference with the bankruptcy case;
3. Whether the other proceeding involves the debtor as a fiduciary;
4. Whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
5. Whether the debtor's insurer has assumed full responsibility for defending it;
6. Whether the action primarily involves third parties;
7. Whether litigation in another forum would prejudice the interests of other creditors;
8. Whether the judgment claim arising from the other action is subject to equitable subordination;
9. Whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
10. The interests of judicial economy and the expeditious and economical resolution of litigation;
11. Whether the parties are ready for trial in the other proceeding;
12. Impact of the stay on the parties and the balance of harms. *Sonnax, Id*

Referencing this list of factors, the Second Circuit stated that "not all of these factors will be relevant in every case." *Mazzeo v. Lenhart (In re Mazzeo)*, 167 F.3d 139, 143 (2d Cir. 1999). The *Sonnax* Court suggested that this list is not one that all cases must ascribe to, and that a particular case does not have to meet all twelve factors. Rather, the Court selected several factors that it understood were applicable to that particular case and conducted the evaluation of whether or not to grant the stay based on those. This was supported by the Court in *In re Unanue-Casal*, 159 B.R. 90 (D. P.R. 1993) when it stated that "[t]he moving party [. . .] need not prove a plurality of *Curtis* factors or any other

---

[1] *In re Curtis*, 40 B.R. 795 (Bankr.D.Utah 1984).

factors before it has shown cause existed for lifting the stay. Generally, courts have relied on only a few factors, and one court has used only one non-*Curtis* factor, to determine that sufficient cause existed to lift the stay." *Unanue, Id* at 96.

"Cause may exist for lifting the stay whenever the stay harms the creditor and lifting the stay will not unduly harm the debtor." *In re Turner*, 161 B.R. 1, 3 (Bankr. D. Me. 1993). "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *In re Tribune Co.*, 418 B.R. 116, 129 (Bankr. D. Del. 2009).

"The Court's ultimate task is to perform a careful balancing of the equities involved. It must assess the hardships realistically borne by plaintiffs if their requested relief is denied and determine whether those outweigh the harm likely to be visited upon the Commonwealth defendants if that relief is granted." *Brigade Leveraged Capital Structures Fund Ltd. v. Alejandro García Padilla, et al*, 217 F.Supp.3d 508, 518-519 (1st Cir. 2016).

### c. APPLICATION OF FACTS TO OUR CASE

This Honorable Court has discretion in evaluating whether the stay should be lifted here. It need not interpret the full list of *Curtis* factors as set forth in the *In re: Sonnax, supra* case. In the case of the Asociación Puertorriqueña de la Judicatura, the *Curtis* factors that weigh heavily in favor of lifting the stay are: (1) Whether relief would result in a partial or complete resolution of the issues; (2) The interests of judicial economy and the expeditious and economical resolution of litigation; (3) Whether the parties are ready for trial in the other proceeding; (4) Impact on the stay on the parties and the balance of harms. We will proceed to discuss each one individually.

11

Document Page 12 of 15

### i. Whether relief would result in a partial or complete resolution of the issues

The APJ has requested Declaratory Judgment be issued on the matter of the OB's acts as contrary to the principles of judicial independence. Lifting the stay in Civil No. 17-1580 will result in a complete resolution of the issues because it will allow the District Court to hear the parties on their respective sides of this matter and facilitate judicial interpretation of the relevant facts and case law to come to a final conclusion. The interpretation that the Honorable District Court for the District of Puerto Rico will make of the OB's acts, in conjunction with the reasoning contained in *Brau Linares, supra,* will dispose completely of the issue at bar. Thus, this factor is one that this Honorable Court should consider in analyzing whether the lifting of the stay is appropriate here.

### ii. The interest of judicial economy and the expeditious and economical resolution of litigation

Lifting the stay in this matter favors the interest of judicial economy and expedient resolution of the litigation because it would allow the parties to present their case to the District Court to evaluate and make a ruling on Declaratory Judgment versus continuing to employ judicial resources in fruitless meetings and negotiations. Moreover, resolving this issue now will avoid more contentious litigation down the line because the matter can be decided once and for all before the Fiscal Plan is certified and in full effect. The reason for that is if the Court makes a ruling on Declaratory Judgment, the OB will have a clear directive as to what it can or cannot do regarding judicial pensions and additional benefits. The District Court should be given the opportunity to hear this matter in the least amount of time possible, and lifting the stay in this matter will provide that opportunity.

### iii. Whether the parties are ready for trial in the other proceeding

The parties are ready to proceed to trial in the other proceeding because little to no discovery is warranted in this Declaratory Judgment action. The District Court must make a ruling based on the interpretation of *Brau Linares, supra*, the Puerto Rico and United States Constitutions, and the acts of the OB as detailed by public record. If the stay were lifted in this case, the parties would be ready to proceed with presenting their sides to the Honorable District Court, who would, in turn, issue Declaratory Judgment on the issues.

### iv. Impact on the stay on the parties and the balance of harms

The stay is detrimental to the members of APJ and the entire Puerto Rico Judiciary because as long as the matter of whether the acts of the OB in reducing judiciary pensions is contrary to constitutional directives and judicial precedent is resolved, the OB can essentially continue to affect the emoluments that members of the Puerto Rico Judicial Branch receive and have had a right to for decades. Moreover, the longer that the stay is in place with regards to this matter, the more danger the judiciary pensions are in, since a Fiscal Plan can be certified at any time and include the judiciary pension reduction, judiciary pension freeze, and judiciary Christmas bonus elimination without a firm interpretation and ruling by the District Court on whether those acts are, in fact, allowed. The harm to APJ's membership is evident in the fact that many of them will immediately begin receiving dramatically reduced pensions. This hardship is direct; it is not collateral.

On the other hand, lifting the stay would not be detrimental to the OB and Commonwealth because the Judiciary represents a minimal percentage in the grander scheme of the Puerto Rico Retirement System. Were the District Court rule that the OB's

13

acts in including the reduction of judicial pensions is contrary to constitutional mandate and legal precedent, the impact it would have on the OB's Fiscal Plan is a minimal percentage of projected savings in the Retirement System area. Moreover, should the stay be lifted, the OB would be benefited by a clear directive on what it can and cannot do with regards to the Puerto Rico judiciary.

When these impacts are placed on the balance of justice, it is clear to see that the members of the Puerto Rico Judicial Branch would be more affected by the stay remaining in place than lifting the stay would have on the OB and the Commonwealth. The danger of essentially losing their retirement benefits weighs heavily on the minds of the Puerto Rican judges, and should weigh heavily in favor of lifting the stay in this case.

### IV. CONCLUSION

The Puerto Rico Judicial Retirement System is in danger of being severely affected by the acts of the OB. Including the judicial pensions in the reduction plan to allow for savings goes against the principle of judicial independence. How can a judge rule impartially when their compensation is being threatened? That is the essence behind this case. The APJ does not seek declaratory relief regarding a threatened governmental action, but rather regarding an action which course is certain.

Lifting the stay will assist in the resolution of this issue: it will allow the District Court to interpret, once and for all, whether the Oversight Board's actions in proposing a reduction of judicial retirement benefits goes against the Constitution and judicial precedent. This matter meets four of the *In re: Sonnax* factors mentioned above, and thus, the stay should be lifted to allow this matter to go forward.

**WHEREFORE**, APJ, on behalf of and for its members, respectfully requests this Honorable Court **GRANT** relief from the automatic stay, allowing APJ to continue its Declaratory Judgment action Civil No. 17-1580 currently pending in the District Court.

**CERTIFICATE OF SERVICE: I HEREBY CERTIFY** that on this day, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF Filing System which will send notification to the parties and subscribed users.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 6th day of November, 2018.

        **INDIANO & WILLIAMS, P.S.C.**
        207 del Parque Street; 3rd Floor
        San Juan, P.R. 00912
        Tel: (787) 641-4545; Fax: (787) 641-4544
        david.indiano@indianowilliams.com
        jeffrey.williams@indianowilliams.com

    by: *s/ David C. Indiano*
          DAVID C. INDIANO
          USDC-PR NO. 200601

    by: *s/ Jeffrey M. Williams*
          JEFFREY M. WILLIAMS
          USDC-PR No. 202414

15