Hearing Date:  November 20, 2018 at 10:30 a.m. (Atlantic Standard Time)
Objection Deadline:  November 13, 2018 at 12:00 p.m. (Atlantic Standard Time)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>   Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This filing relates to COFINA only |

**OBJECTION OF THE BANK OF NEW YORK MELLON, AS TRUSTEE, TO THE DISCLOSURE STATEMENT FOR THE TITLE III PLAN OF ADJUSTMENT OF THE DEBTS OF PUERTO RICO SALES TAX FINANCING CORPORATION**

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747).

The Bank of New York Mellon ("BNYM"), as trustee under the Amended and Restated Sales Tax Revenue Bond Resolution (as amended and supplemented, the "Existing Bond Resolution"), adopted on July 13, 2007, by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), through its undersigned counsel, hereby objects to approval of the *Disclosure Statement for the Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation* [Doc. No. 4073] (the "Disclosure Statement"), accompanying the *Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Doc. No. 4072] (the "Plan"), and in support hereof, respectfully represents as follows:[2]

## PRELIMINARY STATEMENT

1. BNYM serves as trustee for all of the Existing Securities issued by COFINA under the Existing Bond Resolution. Under the express terms of the Resolution, BNYM acts for the equal benefit, protection, and security of all holders of beneficial interests in the Existing Securities, all of which are of equal rank without preference, priority, or distinction, except as expressly provided in the Existing Bond Resolution.

2. The Plan provides that certain institutional holders of beneficial interests in the Existing Securities, which participated in the mediation process and executed the Plan Support Agreement, receive additional compensation over and above that provided to other holders in the same class. This payment is to be made from all holders' shared collateral. The Disclosure Statement describes this payment, in the aggregate amount of approximately $332 million, as compensation for the cost of negotiation, confirmation, and consummation of the Term Sheet and the Plan.

---

[2] Capitalized terms used but not defined in this objection have the meanings given in the Plan.

3. In its role as trustee for all of the Existing Securities, BNYM seeks to ensure that holders who did not participate in the mediation process receive disclosure necessary for them to make an informed, intelligent decision with regard to the Plan. BNYM has received numerous inquiries from individual retail and other holders of beneficial interests in the Existing Securities regarding payment of the Consummation Costs. The Disclosure Statement does not explain the basis under PROMESA and applicable provisions of the Bankruptcy Code for making this payment from holders' shared collateral to selected institutional holders generally and, more specifically, in the amount of $332 million.

4. With this in mind, BNYM believes that additional disclosure is required with regard to the proposed payment of additional compensation to selected holders of beneficial interests in the Existing Securities, notwithstanding the equal and ratable nature of the Existing Securities, that is not shared with other holders in the same class. Disclosure of the circumstances factually warranting and legally permitting such payment is particularly appropriate because the Consummation Costs are being paid from the holders' shared collateral, without reference to actual fees and expenses incurred, and to the exclusion of holders of claims in the same class.

5. Accordingly, BNYM requests that the Title III Court condition approval of the Disclosure Statement on amendments that address the issues raised in this objection.[3]

---

[3] Prior to filing this objection, BNYM raised multiple concerns regarding the adequacy of information contained in the Disclosure Statement of importance to holders of beneficial interests in the Existing Securities that did not participate in the Title III Court-approved mediation process. BNYM supplied COFINA with proposed language addressing these concerns. Based on communications between counsel, BNYM anticipates that COFINA will address most of BNYM's concerns through amendments to the Disclosure Statement. To the extent these concerns remain unresolved, BNYM reserves the right to supplement this objection or address them at the hearing on the adequacy of the Disclosure Statement.

**FACTUAL BACKGROUND**

6. BNYM serves as trustee for multiple series of senior and subordinate Existing Securities issued by COFINA under the Existing Bond Resolution. The Existing Bond Resolution constitutes a contract, and the covenants and agreements therein are for the "equal benefit, protection and security" of all holders of beneficial interests in the Existing Securities, "all of which . . . shall be of equal rank without preference, priority or distinction . . . except as otherwise provided in or permitted by the [Existing Bond Resolution]." Existing Bond Resolution § 103.

7. In its capacity as trustee, BNYM filed timely master proofs of claim on behalf of itself and all holders of beneficial interests in the Existing Securities for principal, interest, and other amounts due under the Existing Securities and related documents. See Proof of Claim Nos. 16760 and 16284.

8. On October 19, 2018, the Board filed the Plan and the accompanying Disclosure Statement. See Doc. Nos. 4072 and 4073. The Plan and the Disclosure Statement are the product of extensive negotiations among the Oversight Board, COFINA, AAFAF, the Insurance Parties, Bonistas del Patio, Inc., and certain institutional holders of beneficial interests in the Existing Securities, through the Title III Court-authorized mediation process, that resulted in those parties' execution of the Plan Support Agreement and the Term Sheet. Disclosure Statement § I.B.1. at 5-6. The Plan Support Agreement and the Term Sheet outlined the terms of the Plan, including the settlement of the Commonwealth-COFINA Dispute, the issuance of new bonds by Reorganized COFINA to holders of Existing Securities, and the allocation of certain existing cash deposits between the Commonwealth and COFINA and, from COFINA's portion, among holders of the Existing Securities. Id.

9. As provided in the Plan Support Agreement and the Term Sheet, and incorporated into section 3.3 of the Plan, COFINA agreed "to compensate [the] Consummation Cost Parties for the cost of negotiation, confirmation and consummation of the Term Sheet and the Plan" in an aggregate "amount equal to two percent (2.0%)" of the total amount of bond claims minus $1 billion. Plan § 3.3. The Plan classifies the Consummation Costs as an Administrative Expense Claim against COFINA. Id. § 1.7(g).

10. The Consummation Costs are to be paid from the Pre-FY2019 BNYM Deposits—proceeds of the Sales Tax deposited with BNYM prior to July 1, 2018, and held in trust for the benefit of BNYM and all holders of beneficial interests of the Existing Securities. See Plan §§ 1.156, 2.1(b), 3.3; see also Existing Bond Resolution § 5.3. The Plan confirms that all holders of the Existing Securities are secured by the Pre-FY2019 BNYM Deposits. Plan § 2.1(d)(iii).

11. The Disclosure Statement tracks the description of the Consummation Costs as set forth in the Plan without providing any additional explanation as to the rationale and legal basis for paying the Consummation Costs to select institutional holders generally and, more specifically, in the amount of $332 million, and without any reference to or analysis of actual fees and expenses incurred. Specifically, section IV.E.4. of the Disclosure Statement provides:

> In order to compensate the parties for the cost of negotiation, confirmation and consummation of the Term Sheet and the Plan of Adjustment, and in consideration of (a) the execution and delivery of the Amended PSA by certain of the parties thereto and (b) the obligations and covenants contained in the Amended PSA provides [sic] that each Consummation Cost Party (as defined in the Plan of Adjustment) is entitled to receive, in accordance with the terms set forth in the Term Sheet and the Plan of Adjustment, based upon such entity's respective positions (insured or otherwise) as of 5:00 p.m. (EDT) on August 7, 2018, a pro rata a [sic] share of cash in an amount equal to two percent, truncated to two decimal points, of (i) the aggregate amount of the Senior COFINA Bond Claims, Senior COFINA Bond Claims (Ambac), Senior COFINA Bond Claims (National), Junior COFINA Bond Claims, Junior COFINA Bond Claims (Assured), Senior COFINA Bond

>Claims (Taxable Election) and Junior COFINA Bond Claims (Taxable Election) (calculated without duplication, minus (ii) One Billion Dollars ($1,000,000,000.00).

Disclosure Statement § IV.E.4. at 69; accord id. § VI.C.3. at 77. The Disclosure Statement identifies the Consummation Cost Parties by name, see Disclosure Statement, Ex. B (Plan Support Agreement), Ex. C. (Term Sheet), Ex. B (List of Consummation Cost Parties), and estimates that the aggregate Consummation Costs distributed under the Plan will be $332,742,277.00. See id. Sch. 2 (Application of BNYM Pre-7/1/2018 Debt Service Fund Monies).

12. The Consummation Cost Parties include the Insurance Parties and those institutional holders of beneficial interests in the Existing Securities that were included in the mediation process and that executed the Plan Support Agreement. The Consummation Cost Parties exclude all retail and other institutional holders of beneficial interests in the Existing Securities.

13. The Disclosure Statement provides that COFINA intends to treat receipt of the Consummation Costs as an amount paid under the Existing Securities (*e.g.*, principal or interest), while also recognizing that the Consummation Costs may be treated for tax purposes as a separate fee reported as ordinary income. Disclosure Statement § XIII.B.2(a)i.c.(2) at 191.

## **OBJECTION**

14. The Title III Court should condition approval of the Disclosure Statement on the inclusion of amendments addressing the factual circumstances and legal basis for paying the Consummation Costs, from the holders' shared collateral, without reference to actual fees and expenses incurred, and to the exclusion of holders of claims in the same class. Without such amendments, the Disclosure Statement fails to provide adequate information under section 1125 of the Bankruptcy Code.

15. A disclosure statement containing adequate information is a prerequisite to soliciting votes to accept or reject a plan of adjustment. 11 U.S.C. § 1125(b). The primary purpose of a disclosure statement is to provide all material information that creditors affected by a plan reasonably may require in order to make an informed, intelligent decision as to whether to vote for or against a plan. See In re Clamp-All Corp., 233 B.R. 198, 204 (Bankr. D. Mass. 1999) ("The purpose of requiring an approved disclosure statement is to ensure that all claim holders are provided with adequate information to enable them to make an informed judgment regarding whether to vote for or against a reorganization plan."). The disclosure statement should identify "all those factors presently known to the plan proponent that bear upon the success or failure of the proposals contained in the plan." In re Scioto Valley Mortgage Co., 88 B.R. 168, 170 (Bankr. S.D. Ohio 1988) (citing In re Stanley Hotel, Inc., 13 B.R. 926, 929 (Bankr. D. Colo. 1981)).

16. The requirement of adequate disclosure to parties in interest is a key feature of the reorganization process, In re Clamp-All Corp., 233 B.R. at 208, and courts have an independent obligation to determine whether a disclosure statement includes adequate information within the meaning of, and as required by, the Bankruptcy Code. In re Eastern Maine Elec. Co-op, Inc., 125 B.R. 329 (Bankr. D. Me. 1991). The Bankruptcy Code defines "adequate information," in relevant part, as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records . . . that would enable . . . a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a); see Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp), 25 F.3d 1132, 1136 (2d Cir. 1994). What constitutes "adequate information" in any particular case must be considered on a case-by-case basis. In re El

Comandante Mgmt. Co., LLC, 359 B.R. 410, 414 (Bankr. D.P.R. 2006) ("The determination of what is adequate information in a disclosure statement is a practical and variable inquiry made on a case-by-case basis."); In re Ferretti, 128 B.R. 16, 18 (Bankr. D.N.H. 1991); In re Oxford Homes, Inc., 204 B.R. 264, 269 (Bankr. D. Me. 1997) ("[W]hat constitutes 'adequate information' will vary from case to case[.]").

17. In order to enable a hypothetical reasonable retail holder of beneficial interests in the Existing Securities who was not included in the mediation process to make an informed decision to accept or reject the Plan, the Disclosure Statement should disclose the factual circumstances and legal basis supporting payment of the Consummation Costs to selected institutional investors and others and to the exclusion of all other holders.

18. Mere disclosure that payment of the Consummation Costs is on account of an Administrative Expense Claim and in consideration of "the negotiation, execution and delivery of the Amended PSA" and "the obligations and covenants contained in the PSA," see Disclosure Statement § VI.C.3 at 77, without reference to any actual fees and expenses incurred, does not satisfy the requirements of the Bankruptcy Code.

19. Insofar as COFINA proposes to pay the Consummation Costs as Administrative Expense Claims under section 503(b) of the Bankruptcy Code, the Disclosure Statement fails to provide information sufficient to enable a hypothetical investor in the Existing Securities to make an informed judgment about the Plan.[4] The Disclosure Statement does not

---

[4] Section 503(b) of the Bankruptcy Code, made applicable to this Title III Case by section 301 of PROMESA, authorizes the Title III Court to allow, as an administrative expense, (i) "the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by . . . a creditor . . . in making a substantial contribution" in this Title III Case, 11 U.S.C. § 503(b)(3), and (ii) "reasonable compensation for professional services rendered by an attorney or an accountant" of a creditor in making a substantial contribution and "reimbursement for actual, necessary expenses incurred by such attorney or accountant."  11 U.S.C. § 503(b)(4).

explain how each Consummation Cost Party made a "substantial contribution" to the Title III Case or how the proposed aggregate payment of 2% of bond claims less $1 billion represents "reasonable compensation" and "actual, necessary" expenses of the Consummation Cost Parties. Explaining the methodology by which COFINA arrived at the aggregate payment amount would assist a hypothetical retail investor who did not participate in the mediation process in making an informed judgment about the Plan. This should include any contemporary analysis of the compensation and expenses sought by each Consummation Cost Party and an explanation for transferring approximately $332 million of the holders' shared collateral to certain institutional investors and to the exclusion of others.

20. Insofar as COFINA proposes to pay the Consummation Costs on account of the Existing Securities (*e.g.*, as a recovery of principal or interest), as suggested in the discussion of tax implications in the Disclosure Statement, the Disclosure Statement fails to provide sufficient information to enable a hypothetical investor in the Existing Securities to make an informed judgment about the Plan. Section 1123(a)(4) of the Bankruptcy Code, made applicable to this Title III Case by section 301 of PROMESA, provides that a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment . . . ." 11 U.S.C. § 1123(a)(4). The Disclosure Statement does not explain the factual circumstances and legal basis for the Consummation Cost Parties to receive a materially greater recovery under the Plan on account of their pre-petition bond claims than other holders of bond claims in the same class. The Disclosure Statement also does not explain why holders of claims not entitled to the Consummation Costs should vote to accept a plan that treats their claims less favorably than the bond claims of Consummation Cost Parties in the same class.

21. For all of these reasons, the Disclosure Statement should be amended to address the factual circumstances and legal basis justifying payment of the Consummation Costs generally and, more specifically, in the stated amount.

WHEREFORE, the Trustee respectfully requests that the Court enter an order (i) sustaining this objection, (ii) conditioning approval of the Disclosure Statement on the inclusion of amendments addressing the issues raised in this objection, and (iii) granting such other and further relief in favor of the Trustee as may be just and proper.

*[The remainder of this page was intentionally left blank.]*

Dated: November 13, 2018
      San Juan, Puerto Rico

Respectfully submitted,

SEPULVADO, MALDONADO & COURET

By: */s/ Albéniz Couret-Fuentes*
Elaine Maldonado-Matías
USDC-PR Bar No. 217309
Albéniz Couret-Fuentes
USDC-PR Bar No. 222207
José Javier Santos Mimoso
USDC-PR Bar No. 208207
304 Ponce de León Ave. – Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: emaldonado@smclawpr.com
Email: acouret@smclawpr.com
Email: jsantos@smclawpr.com

REED SMITH LLP

*/s/ Eric A. Schaffer*
Eric A. Schaffer
Luke A. Sizemore
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile : (412) 288-3063
Email : eschaffer@reedsmith.com
Email : lsizemore@reedsmith.com

Kurt F. Gwynne
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7550
Facsimile: (302) 778-7575
Email: kgwynne@reedsmith.com

*Counsel to The Bank of New York Mellon,
as indenture trustee*