Search:

Español 



Our People    Corporate Structure    Governance and Policies    History    Company Statements

# Assured Guaranty Urges Puerto Rico Oversight Board to Reconsider Unlawful Fiscal Plan

**May 15, 2018**

*Dominic Frederico, President and Chief Executive Officer of Assured Guaranty Ltd., sent the following letter on May 15, 2018, to the Financial Oversight and Management Board for Puerto Rico in response to the Revised Commonwealth Fiscal Plan it approved on April 19, 2018.*

Jose B. Carrion III
Andrew G. Biggs
Carlos M. Garcia
Arthur J. Gonzalez
Jose R. Gonzalez
Ana J. Matosantos
David A. Skeel, Jr.

**Revised Commonwealth Fiscal Plan**

Dear Members of the Oversight Board:

This letter is being sent by Assured Guaranty Corp. and Assured Guaranty Municipal Corp. ("Assured") as insurer of approximately $1.6 billion of bonds issued or guaranteed by the Commonwealth of Puerto Rico, and approximately $1.9 billion of secured revenue bonds issued by HTA, COFINA, PRCCDA, University of Puerto Rico, and PRIFA.

You will recall that on October 6, 2017, Assured voluntarily withdrew a lawsuit[1] that Assured had been compelled to bring in response to the illegality and unconstitutionality of the fiscal plan that the Oversight Board approved on March 13, 2017 (the "Original Fiscal Plan").  As Assured noted in that lawsuit, the Original Fiscal Plan violated numerous provisions of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), of the United States Constitution (the "U.S. Constitution"), and of the Constitution of the Commonwealth of Puerto Rico (the "Commonwealth Constitution").

Assured withdrew its lawsuit because it had been led to believe that the Oversight Board sought to "reset" its relations with Puerto Rico's creditors and that the Original Fiscal Plan would be re-drafted.  Assured hoped that this "reset" would entail a more open fiscal plan development process aimed at producing a constitutional and PROMESA-compliant fiscal plan benefitting from the input and support of creditors.

Unfortunately, the Oversight Board again formulated a fiscal plan without appropriate transparency of information and assumptions, and without collaboration with creditors.

Like the Original Fiscal Plan, the revised fiscal plan (the "Revised Fiscal Plan") approved on April 19, 2018, violates many of PROMESA's most significant statutory requirements, including:

- The requirement that a Fiscal Plan "respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to the date of enactment [PROMESA]."  (PROMESA § 201(b)(1)(N).)  The Revised Fiscal Plan fails to satisfy this requirement, because, among other things, it (i) prioritizes general government expenditures over payment of the public debt in violation of Article VI, Section 8 of the Commonwealth Constitution, and (ii) allows for payment of Commonwealth general expenses from revenues that are pledged to the payment of bonds issued by HTA, PRCCDA, PRIFA, and other public corporations.  The Revised Fiscal

This website uses cookies. By using this website, you agree to our use of cookies. Click OK to agree and remove this banner, or visit our Privacy Policy to learn how we use cookies and to opt out.

OK

- The requirement that a Fiscal Plan "ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory." (PROMESA § 201(b)(1)(M).)  Instead of prohibiting such illegal transfers of property from one government entity to another, the Revised Fiscal Plan actually mandates such illegal transfers by assuming the diversion of pledged revenues from HTA, PRCCDA, PRIFA, and their respective bondholders to the Commonwealth.

- The requirement that a Fiscal Plan ensure the funding of only "essential public services." (PROMESA § 201(b)(1)(B).)  The Revised Fiscal Plan fails even to identify which public services are "essential," and therefore can hardly purport to ensure the funding of essential services (and only of essential services).

- The requirement that a Fiscal Plan provide a method to achieve "access to the capital markets." (PROMESA §§ 101(a); 201(b).)  By disrespecting the rights and property interests of Puerto Rico's existing creditors, the Revised Fiscal Plan essentially guarantees that both retail and institutional investors will avoid investing in Puerto Rico for the foreseeable future.

We submit that the Oversight Board lacked authority to develop and approve a fiscal plan that, on its face, fails to even attempt to address these and other requirements of PROMESA.Furthermore, in addition to violating PROMESA for the reasons stated above, the Revised Fiscal Plan violates both the U.S. Constitution and the Commonwealth Constitution by substantially impairing the contractual rights of Assured and other creditors and by depriving them of property without just compensation or due process of law.

In addition to these legal defects, the Revised Fiscal Plan suffers from flawed methodologies and assumptions that result in an artificially pessimistic projection of Puerto Rico's future revenues, economic growth, and debt capacity.These include (i) an unrealistic and overly conservative assumption concerning the increase in healthcare costs paid by the Commonwealth and reduction in federal healthcare funding, notwithstanding that the Revised Fiscal Plan also projects significant population decline; (ii) failure to include federal funding beyond what is currently committed, ignoring Congress's practice of allocating additional funds on an ad hoc basis; and (iii) economic growth assumptions that do not fairly reflect stimulus from Community Disaster Loans, FEMA funds, and economic activity spurred by reconstruction efforts.  The Revised Fiscal Plan also suffers from the ongoing lack of up-to-date audited financial statements or other public information sufficient to develop or assess a realistic fiscal plan.  Notably, PROMESA required the Oversight Board to certify at the time of the Commonwealth's Title III filing that the Commonwealth had "adopted procedures necessary to deliver timely audited financial statements" (see PROMESA § 206(a)(2)(A)), and yet the Commonwealth has failed to deliver audited financial statements for fiscal years 2015, 2016, or 2017, notwithstanding that such financial statements are a fundamental and critical predicate to proper preparation of a fiscal plan.

We understand that the Oversight Board has attempted to be extremely "conservative" in its economic assumptions.We respectfully submit, however, that when extremely conservative assumptions are layered one upon another, those assumptions collectively move beyond conservative and simply become unrealistic.We expect that these unrealistic assumptions in conjunction with a lack of respect for lawful liens and Constitutional priorities will seriously impair Puerto Rico's access to capital markets for its development needs, and burden the residents of Puerto Rico with the cost of extended litigation and an exorbitant Oversight Board process.

In view of these grave legal, constitutional, and methodological infirmities, Assured requests that the Oversight Board revoke its purported approval of the Revised Fiscal Plan.In the event of such a revocation, Assured remains willing to work with the Oversight Board and other stakeholders to develop a sound fiscal plan that complies with PROMESA and with the U.S. and Commonwealth Constitutions.

Very truly yours,

Dominic. J. Frederico
President and Chief Executive Officer

_____

[1] Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al. (In re Financial Oversight and Management Board for Puerto Rico as representative of Commonwealth of Puerto Rico), Adv. Proc. No. 17-125-LTS (D.P.R.).

This website uses cookies. By using this website, you agree to our use of cookies. Click OK to agree and remove this banner, or visit our Privacy Policy to learn how we use cookies and to opt out.   OK