Case:17-03283-LTS   Doc#:4215-11   Filed:11/13/18   Entered:11/13/18 12:08:37   Desc: Exhibit Attachment to September 20   2018 Letter to Judge Swain   Page 1 of 3

# The Protesters vs. the Bondholders

The oversight board for Puerto Rico has a careful balancing act.

By David Skeel

Sept. 13, 2018 6:57 p.m. ET

69 Comments



Students of the University of Puerto Rico protest as a meeting of the Financial Oversight and Management Board takes place in San Juan, March 31, 2017. PHOTO: ALVIN BAEZ/REUTERS

'Wanted" posters with my picture on them recently appeared all over the campus where I teach. As one of the seven members of Puerto Rico's financial-oversight board, I am, the posters claimed, a "mercenary" who "demands the blood of Puerto Rican people to pay rich Wall Street bondholders."

If the anonymous authors of the sepia-toned, Wild West-style posters could only meet a few of the "rich Wall Street bondholders," they might see my colleagues and me a little differently. Perhaps a virtual introduction will suffice.

Start with Aurelius, a prominent hedge fund with large holdings of Puerto Rico bonds. In a lawsuit against the oversight board, Aurelius claims the process by which we were selected violates the Constitution's Appointments Clause. According to Aurelius, the actions we have taken are therefore null and void. A federal district judge rejected this argument; Aurelius is appealing.

Why blow up the work of the board? Because we're trying to reduce Puerto Rico's $74 billion of debt. On May 3, 2017, we filed bankruptcy-like proceedings (known as Title III) on behalf of the Commonwealth of Puerto Rico, as Congress authorized us to do in the Puerto Rico Oversight, Management, and Economic Stability Act of 2016, known as Promesa. Title III stops creditors from trying to collect what they're owed while we and the creditors negotiate the terms of a plan of adjustment. This would all go up in smoke if Aurelius prevailed in court. The hedge fund presumably believed it could force Puerto Rico to pay during the chaos that would ensue.

Other bondholders complain about the five-year fiscal plan we have certified, which is based largely but not entirely on adjustments proposed by Gov. Ricardo Rosselló. According to these creditors, the plan's cost savings and reforms (including "right sizing" of government and reductions in health-care costs) don't go far enough. They insist we also should use rosier projections of Puerto Rico's future economic growth, and of the amounts it can afford to pay creditors.

I'm certain the protesters who made the posters wouldn't agree. Other posters targeted Julia Keleher, Puerto Rico's education secretary and the architect of one of the most important reforms already initiated by Mr. Rosselló: a tough but needed restructuring of Puerto Rico's education system that involves school consolidations and closings to improve educational outcomes.

The oversight board has for the past two years navigated between the protesters' and creditors' perspectives, based on a conclusion that Puerto Rico can't climb out of its fiscal morass unless every constituency bears some of the sacrifice. The debt needs to be restructured, the cost of government reduced and pensions reformed.

Promesa instructed the oversight board to help "achieve fiscal responsibility and access to the capital markets." This can be translated as "make everyone unhappy, and help put Puerto Rico on a path to financial recovery, so that the oversight board will no longer be necessary." We seem to have achieved the first of these objectives. We're working hard on the second.

*Mr. Skeel is a professor at the University of Pennsylvania Law School.*