## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 03283-LTS<br><br>(Jointly Administered) |
| AMERICAN FEDERATION OF TEACHERS, AFL-CIO and AMERICAN FEDERATION OF STATE, COUNTY & MUNICIPAL EMPLOYEES, AFL-CIO,<br><br>    Plaintiffs,<br><br>v.<br><br>THE COMMONWEALTH OF PUERTO RICO; HON. RICARDO ANTONIO ROSSELLO NEVARES, in his official capacity as Governor of the Commonwealth of Puerto Rico; RAUL MALDONADO GAUTIER, in his official capacity as Chief Financial Officer for the Commonwealth of Puerto Rico; TERESA FUENTES, in her official capacity as Secretary of the Treasury for the Commonwealth of Puerto Rico; THE RETIREMENT BOARD OF THE GOVERNMENT OF PUERTO RICO; NYDZA IRIZARRY, REINALDO DEL VALLE CRUZ, JESUS RODRIGUEZ ROSA, | Adv. No.18- _____-LTS |

---

[1]    The Debtors in these title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566- LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

| | |
|---|---|
| EDWARD MORENO ALFONSO, CARLOS MOLINA RODRIGUEZ, and ROLANDO ORTIZ VELAZQUEZ, in their official capacity as the voting members of the Retirement Board of the Government of Puerto Rico; PUERTO RICO FISCAL AND FINANCIAL ADVISORY AUTHORITY; CHRISTIAN SOBRINO VEGA, in his official capacity as Executive Director of Puerto Rico Fiscal and Financial Advisory Authority; BANCO POPULAR DE PUERTO RICO; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; and John Does 1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## ADVERSARY COMPLAINT

Plaintiffs, American Federation of Teachers, AFL-CIO ("AFT") and American Federation of State, County and Municipal Employees International Union, AFL-CIO ("AFSCME"), on behalf of themselves, their local affiliates in Puerto Rico, and the Puerto Rico public employees and retirees they represent (collectively, the "Unions"), by and through their undersigned counsel, bring this Adversary Complaint against defendants the Commonwealth of Puerto Rico ("Commonwealth"); Commonwealth Governor Ricardo Antonio Rosselló Nevares; Commonwealth Chief Financial Officer Raúl Maldonado Gautier; Commonwealth Secretary of the Treasury Teresa Fuentes; the Retirement Board of the Government of Puerto Rico ("Retirement Board"); Retirement Board members Nydza Irizarry, Reinaldo Del Valle Cruz, Jesús Rodríguez Rosa, Edward Moreno Alfonso, Carlos Molina Rodríguez, and Rolando Ortiz Velázquez; the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"); AAFAF Executive Director Christian Sobrino Vega; Banco Popular de Puerto Rico ("Banco Popular"); the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"); and John Does 1-10 (collectively, "Defendants"), and hereby allege as follows:

2

## NATURE OF THE ADVERSARY PROCEEDING

1.     AFT and AFSCME bring this action to protect and enforce the pension and

property rights of Union-represented public employees and retirees of the Commonwealth of

Puerto Rico.  Those rights are being trampled upon by a Commonwealth administration that has

blatantly violated a law of its own enactment that was intended to safeguard the retirement

contributions of employees and retirees represented by the Unions.  In particular, this action

seeks to vindicate the rights of Union-represented employees and retirees to the individual

defined contribution retirement accounts promised by Puerto Rico Law 106 of 2017 ("Law

106")—accounts which, pursuant to both that statute and mandates in every Oversight Board

fiscal plan to date, are funded exclusively by deductions from public employees' own wages, and

which are supposed to be investable by the account holders in order to build the retirement

savings required for their financial support following long careers as modestly-paid public

servants.

2.     For decades, the Commonwealth and its responsible officials have been entrusted

by law with the obligation to ensure that the Commonwealth's public pensions are adequately

funded and that pension funds are prudently invested.  This legal duty extends to ensuring

employee pension contributions are protected from commingling and dissipation, and that

segregated individual retirement accounts for active Commonwealth employees' ongoing

mandatory retirement contributions are established.

3.     For decades, the Commonwealth and its officials have betrayed that trust.  By the

time of the Commonwealth's bankruptcy filing in May 2017, the Commonwealth's public

employee pension systems were left in ruin by years of government mismanagement, drastic

underfunding, poor investments and repeatedly failed attempts at legislative "reform."  The

Commonwealth had driven Puerto Rico's public employee pension plans into insolvency and, in

3

violation of existing law, the Commonwealth's existing public employee pension systems were cannibalizing supposedly segregated employee pension contribution accounts to pay off current pension obligations and other Commonwealth expenses.

4.      In August 2017, in a public admission of the imminent collapse of Puerto Rico's public employee pension systems and "the misguided government policies that led to this fiscal situation," the Commonwealth enacted Law 106 for the announced purpose of "ensur[ing] that the pensioners of Puerto Rico will receive the pensions that, with so much sacrifice and effort, they were able to obtain by giving their best years to the service of the People of Puerto Rico." Law 106 pp. 2, 11.[2]  But no sooner had Law 106 gone into effect than the Commonwealth, Retirement Board and AAFAF—with the active involvement and approval of Banco Popular, and without being held to account at all by the Oversight Board—betrayed the statute's lofty purposes and returned to the well-worn path of breaching their of fiduciary duties and violating employee pension rights.

5.      Although Law 106 requires that mandatory wage deductions collected from individual employees participating in its new retirement plan must be held in newly created, segregated and employee-controlled retirement accounts (which, like certain past accounts, were, by statute, the property of individual contributors), such defined contribution accounts have never been created.

6.      While Law 106 created the Retirement Board supposedly to protect employee and retiree interests, the Commonwealth took advantage of the opportunity of Law 106's enactment to eliminate the existing pension watchdogs—the boards of the Employee Retirement System

---

[2]      Quotations from Law 106 and Joint Resolution 188 (defined below) are from certified English translations submitted as attachments to the Amended and Supplemented Adversary Complaint (Docket No. 39, Nov. 8, 2017) in Adversary Proceeding 17-00219.

("ERS") and Teachers Retirement System ("TRS")—but has yet to appoint a fully constituted

Retirement Board to replace them.  Those individuals who have been appointed to the

Retirement Board—most of them handpicked by the Commonwealth Governor—have failed to

discharge their statutory and fiduciary duties to implement the provisions of Law 106 and to

establish and safeguard individual employee retirement accounts.  Current and future retirees

have been left unprotected and deprived of the protections contemplated by Law 106.

7.     According to AAFAF's own public reporting, as of July 31, 2018, public

employees covered by Law 106 had been forced to contribute a total of $316 million to the

promised individual employee retirement accounts.  Yet, despite the fact that Law 106 took

effect on August 23, 2017, public employees and retirees still cannot access their own self-

funded accounts to invest the money.  For all intents and purposes, the Commonwealth is seizing

employees' own funds and hiding them under a mattress—in this case, upon information and

belief, government bank accounts at Banco Popular earning virtually zero interest.  During the

time that the government has been stashing these hundreds of millions of dollars of its public

servants' own money with Banco Popular, public employees and retirees have missed out on

historically-high stock market returns.

8.     The Commonwealth and AAFAF have acknowledged most of these facts.  Thus,

on January 19, 2018, the Commonwealth (through AAFAF) publicly released a report of its 2017

end-of-year bank account balances (the "2017 EOY Bank Account Balances") that stated (at pp.

8-9) approximately $133 million in "employees/participants withholdings . . . for defined

contribution retirement accounts" were being held in *government* accounts, rather than individual

employee 401(k)-style accounts investable by the employees in low-cost index funds as required

by Law 106.  And on August 28, 2018, the Commonwealth publicly reported (the "July 31, 2018

Bank Account Balances") that, between June 30, 2018 and July 31, 2018, the amount of

employee dollars withheld but not investable had grown from $286 million to $316 million—

suggesting that the government is still, more than a year since the passage of Act 106, seizing

and then hiding away as much as $30 million of public employee property each month.

9.      It will not suffice for the Commonwealth, AAFAF or the Retirement Board to

plead that implementation of Law 106 has been delayed by Hurricane Maria or exigencies of the

Commonwealth's bankruptcy.  In the year since Hurricane Maria, the Commonwealth, AAFAF

and the Oversight Board have nevertheless found the time to negotiate consensual restructuring

deals for the Puerto Rico Government Development Bank, Puerto Rico Electric Power Authority,

and Puerto Rico Sales Tax Financing Corporation bondholders.  In contrast, during that same

year the Commonwealth, AAFAF and the Retirement Board have done virtually nothing to

implement Law 106.  By AAFAF's own admission, the Retirement Board did not even issue a

Request for Proposals ("RFP") from prospective providers of administrative services for Law

106's defined contribution plan until *September 28, 2018,* more than a year after Law 106's

enactment.  Under the Retirement Board's current timetable, the individual employee-controlled

retirement accounts promised by Law 106 will not be in operation, at the earliest, until the

summer of 2019, *two years after Law 106 went into effect*.

10.     It has become painfully clear that the Commonwealth, AAFAF and the

Retirement Board have no intention of complying with Law 106 in any reasonable time frame.

In violation of the plain requirements of Law 106, and in violation of their fiduciary duties to the

employees and retirees whose funds they hold in trust, these Defendants have preferred the

interests of Banco Popular and Puerto Rico's financial creditors and, consistent with the

Commonwealth's dismal history of ignoring public pension rights, they have pushed its public servants to the back of the line.

11.     Certain Defendants have compounded that injury to public sector workers and retirees by directing or permitting the deposit of employees' mandatory wage deductions into accounts earning effectively zero interest income at Banco Popular, a financial institution which, according to the Oversight Board's own independent investigator, was censured and fined by FINRA in November 2014 "for its failure to have in place adequate systems for monitoring customer account purchases"; which went so far as to underwrite bond issuances (and earn the attendant underwriting fees) even "after recommending against their issuance" in the first place; and which may have even had a "potential conflict" of interest in, of all things, its prior dealings with employee pension funding.[3]  Buoyed by these unlawful and virtually cost-free deposits of hundreds of millions of dollars of public employee money, Banco Popular has posted record profits.

12.     Despite the fact that Law 106 explicitly requires that employee retirement monies be held in trust, Banco Popular has aided and abetted the Commonwealth, AAFAF and Retirement Board's violations of Law 106 and breaches of fiduciary duty by accepting deposits of those monies into *government* accounts which are *not* trusts, keeping money there well past the date intended by Law 106 for the transition to true individual retirement accounts investable by the employees, and profiting itself handsomely in the process by holding these hundreds of millions of dollars of deposits at virtually zero interest.

---

[3]     Independent Investigator's Final Investigative Report, August 20, 2018, pp. 524, 542-43, 558.

13.     The Oversight Board has been derelict in discharging its duties as the
Commonwealth's bankruptcy trustee by failing to take any action to require the Commonwealth,
AAFAF and the Retirement Board to implement and enforce Law 106.  Although the Oversight
Board pays lip service to the law by publicly admonishing the Commonwealth that it must enroll
public employees in the defined contribution plan with the segregated and self-directed accounts
promised by Law 106, the Oversight Board has failed to exercise its statutory powers to force
compliance with the law.  In fact, the Oversight Board has certified a Fiscal Plan for the
Commonwealth that, by the Oversight Board's own admission, does not comply with Law 106.

14.     Based on these facts, and as described in more detail below, Plaintiffs seek
declaratory and injunctive relief that Defendants have violated the plain legislative dictates of
Law 106, breached their fiduciary duties or aided and abetted breaches of fiduciary duties, and
been unjustly enriched by forcing employees to contribute from their wages to individual
retirement accounts which, in fact, have not been established as required by law and do not exist
for the employees to invest as is their right.  The employee property should be immediately
placed in trust and subsequently transferred to investable defined contribution accounts by the
end of the calendar year, and all employees whose property has been illegally frozen in
government accounts until now must be compensated for the investment income they have lost
as a result of the Defendants' misfeasance.

15.     Plaintiffs further seek the equitable remedy of an accounting to determine the
extent to which the Commonwealth and Banco Popular have been unjustly enriched at Union
members' expense.

## PARTIES

16.     AFT is a labor union affiliated with the AFL-CIO that represents over 1.6 million
members (primarily teachers) in more than 3,000 local affiliates across the United States.  AFT's

8

affiliated local chapters in Puerto Rico, the Asociación de Maestros de Puerto Rico ("AMPR")
and Asociación de Maestros de Puerto Rico Local Sindical ("Local Sindical"), are the
Commonwealth's largest public employee labor organizations, representing approximately
30,000 active teachers and other public school employees and retirees.

17.      AFSCME, a labor union representing public servants nationwide and affiliated
with the AFL-CIO, has two local chapters in Puerto Rico: Servidores Públicos Unidos, AFSCME
Council 95 ("SPU"), and Capítulo de Retirados de SPU, the independently-chartered AFSCME
chapter for retired employees of the Commonwealth of Puerto Rico. SPU serves as the exclusive
collective bargaining representative under Commonwealth law for approximately 12,000 active
Commonwealth employees, ranging from social workers to corrections officers to nurses who
care for juvenile wards of the Commonwealth.

18.      Defendant Commonwealth is a territory of the United States.

19.      Defendant Ricardo Antonio Rosselló Nevares is the Governor of the
Commonwealth. The Governor has the ultimate authority over the implementation and
enforcement of Law 106. Plaintiffs sue the Governor in his official capacity.

20.      Defendant John Doe 1 is any successor to Ricardo Antonio Rosselló Nevares as
Governor of the Commonwealth. Plaintiffs sue John Doe 1 in his or her official capacity.

21.      Defendant Raúl Maldonado Gautier is Chief Financial Officer of the
Commonwealth. In that capacity, he has authority over the implementation and enforcement of
Law 106 and the maintenance of the account(s) holding mandatory individual retirement account
contributions seized from Union members every pay period. Plaintiffs sue the Chief Financial
Officer in his official capacity.

22.     Defendant John Doe 2 is any successor to Raúl Maldonado Gautier as Chief Financial Officer of the Commonwealth.  Plaintiffs sue John Doe 2 in his or her official capacity.

23.     Defendant Teresa Fuentes is Secretary of the Treasury for the Commonwealth of Puerto Rico.  In that capacity, she has authority over the implementation and enforcement of Law 106 and the maintenance of the account(s) holding mandatory individual retirement account contributions seized from Union members every pay period.  Plaintiffs sue the Secretary of the Treasury in her official capacity.

24.     Defendant John Doe 3 is any successor to Teresa Fuentes as Secretary of the Treasury of the Commonwealth.  Plaintiffs sue John Doe 3 in his or her official capacity.

25.     Defendant Retirement Board is a board created under Law 106 to act as the governing authority for all of the Commonwealth's public employee pensions and, as such, is directly responsible for the implementation and enforcement of Law 106.

26.     Defendant Nydza Irizarry is a voting member of the Retirement Board and, in that capacity, is responsible for the implementation and enforcement of Law 106.  Plaintiffs sue Ms. Irizarry in her official capacity.

27.     Defendant Reinaldo Del Valle Cruz is a voting member of the Retirement Board and, in that capacity, is responsible for the implementation and enforcement of Law 106. Plaintiffs sue Mr. Del Valle in his official capacity.

28.     Defendant Jesús Rodríguez Rosa is a voting member of the Retirement Board and, in that capacity, is responsible for the implementation and enforcement of Law 106. Plaintiffs sue Mr. Rodríguez in his official capacity.

29.    Defendant Edward Moreno Alfonso is a voting member of the Retirement Board and, in that capacity, is responsible for the implementation and enforcement of Law 106. Plaintiffs sue Mr. Moreno in his official capacity.

30.    Defendant Carlos Molina Rodríguez is a voting member of the Retirement Board and, in that capacity, is responsible for the implementation and enforcement of Law 106. Plaintiffs sue Mr. Molina in his official capacity.

31.    Defendant Rolando Ortiz Velázquez is a voting member of the Retirement Board and, in that capacity, is responsible for the implementation and enforcement of Law 106. Plaintiffs sue Mr. Ortiz in his official capacity.

32.    Defendants John Does 4-9 are any successors to the voting members of the Retirement Board.  Plaintiffs sue John Does 4-9 in their official capacities.

33.    Defendant AAFAF is a public corporation organized under the laws of the Commonwealth.  AAFAF is actively involved in and responsible for the implementation and enforcement of Law 106.

34.    Defendant Christian Sobrino Vega is the Executive Director of AAFAF.  In that capacity, he is actively involved in and responsible for the implementation and enforcement of Law 106.  Plaintiffs sue the AAFAF Executive Director in his official capacity.

35.    Defendant John Doe 10 is any successor to Christian Sobrino Vega as Executive Director of AAFAF.  Plaintiffs sue John Doe 10 in his or her official capacity.

36.    Defendant Banco Popular is a bank with its principal place of business in Puerto Rico and the depository institution for numerous accounts of the Commonwealth, including the government accounts holding public employee retirement contributions mandatorily made pursuant to Law 106.

37.     Defendant Oversight Board was created under Section 101(b)(1) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, 48 U.S.C. §§2102-2241 ("PROMESA") (48 U.S.C. § 2121(b)(1)) as an "entity within the [Commonwealth] government." 48 U.S.C. § 2121(c)(1).  The Oversight Board serves as a trustee with respect to the Commonwealth's bankruptcy and, among other things, certifies the Commonwealth's Fiscal Plan and has ongoing responsibility for review and approval of any budgets or contracts proposed by the Commonwealth, as well as laws and regulations concerning the Commonwealth's finances, including Law 106.

## JURISDICTION AND VENUE

38.     This is an adversary proceeding under Rule 7001 of the Federal Rules of Bankruptcy Procedure, made applicable herein by 48 U.S.C. § 2170.

39.     This Court has jurisdiction over this action pursuant to 48 U.S.C. §§ 2126 and 2166 because this action is brought against the Oversight Board and arises in, or is related to, a case under title III of PROMESA.

40.     This Court has personal jurisdiction over all of the Defendants pursuant to 48 U.S.C. § 2166(c).

41.     This is an appropriate action for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.  This Court may grant temporary and preliminary injunctive relief pursuant to Fed. R. Civ. P. 65 and Fed. R. Bankr. P. 7001, (applicable in title III under Fed. R. Bankr. P. 7065).

42.     Further, under the All Writs Act, 28 U.S.C. § 1651, the Court may issue any writ necessary or appropriate in aid of its jurisdiction and aggregable to the usages and principles of law.

43.     Venue is proper in this District under 28 U.S.C. § 1391(b) because all or a substantial part of the events or omissions giving rise to the claims occurred, and continue to

occur, in this District.  Venue is also proper in this District under 48 U.S.C. § 2167 because this
adversary proceeding is brought in a proceeding under title III of PROMESA.

44.      An actual and justiciable controversy has arisen and exists between the parties
with respect to the issues and claims alleged herein.

45.      This action presents an actual controversy that is ripe for adjudication.  As
detailed below, the Commonwealth and other Defendants have already caused Union-
represented workers untold millions of dollars of actual damages by violating existing Puerto
Rico pension laws and fiduciary duties, thereby unjustly enriching the Commonwealth and
Banco Popular at the expense of Union members.

46.      Section 106(e) of PROMESA does not deprive the Court of jurisdiction over the
Unions' claims against the Oversight Board and its members because the claims asserted herein
do not challenge the certification of a Fiscal Plan or any other certification determination.

## FACTUAL BACKGROUND

### A.  THE UNIONS' PENSIONS PRIOR TO 2017

47.      The Government of Puerto Rico operates two public employee retirement systems
relevant here: the ERS and TRS.

### i.    ERS

48.      ERS was established by Act 447 of 1951 ("Act 447").  Act 447 made ERS
participation a mandatory condition of employment for full-time employees of the
Commonwealth Government and its instrumentalities.  Under Act 447, among other benefits,
each member of ERS was "entitled to receive" a guaranteed retirement annuity, *i.e.*, a defined
benefit pension ("DB Pension"), upon retirement and satisfaction of various conditions.

49.      The Commonwealth modified the ERS retirement plan through the enactment of
Act 1 of 1990 ("Act 1").  Act 1 left Act 447 benefits in place for incumbent employees and

retirees ("Act 447 members"), but created a new, lower tier of DB Pension benefits for
Commonwealth employees hired on or after Act 1's effective date ("Act 1 members").

50.     In 1999, the Commonwealth enacted Act 305 of 1999 ("Act 305"), which adopted
an entirely different (but still mandatory) retirement plan for employees hired on or after its
effective date of January 1, 2000 ("System 2000 members").  Under Act 305, the
Commonwealth established individual employee retirement savings accounts ("System 2000
RSAs") for System 2000 members, as well as any Act 447 members or Act 1 members who
elected to convert their DB Pension benefits into a System 2000 RSA (collectively, the "System
2000 participants").  System 2000 RSAs were funded solely through contributions made by
employees through wage deductions, without any contributions from the Commonwealth or
other ERS-participating employers (e.g., municipalities).

51.     In 2013, the Commonwealth enacted Act 3 of 2013 ("Act 3"), which established a
new retirement plan for existing and future Commonwealth employees (other than public school
employees), including Act 447 members, Act 1 members, and System 2000 members.  Act 3
required the ERS administrator to "establish and maintain in the System an account with the
contributions of each participant" (a "DC Account"), which had to be "credited and debited" in
accordance with the various provisions of Act 3 (Section 5-104).  DC Accounts were similar to
System 2000 RSAs insofar as both were individual accounts funded solely by mandatory
employee wage deductions—without any contributions from the Commonwealth or other ERS-
participating employers—which were then credited with a return on investment.

52.     To transition to the new plan, System 2000 participants' individual System 2000
RSA balances were to be transferred into a corresponding Act 3 DC Account.  Act 447 members
and Act 1 members who had not elected to transfer to System 2000 RSAs were to retain their

14

accrued DB Pensions, but, going forward, would not accrue additional DB Pension entitlements
(*i.e.*, the DB Pensions were "frozen") and would accrue new benefits through their contributions
to a DC Account.

53.     Act 3 provided that participants would "always have one hundred percent (100%)
right over the initial balance transfer" from a System 2000 RSA (to the extent applicable), as
well as to "their contributions to the [DC Accounts]."  (Section 5-108).

**ii.     TRS**

54.     TRS covers approximately 37,700 active workers and retirees, including all of the
Puerto Rico teachers and other public school employees and retirees represented by the Union.

55.     Act 218 of 1951 ("Act 218") created a retirement fund for Puerto Rico's public
school teachers that could "not be used for purposes other than those authorized" by Act 218
(Section 4).  Under Act 218, among other benefits, each eligible retiree was entitled to a
guaranteed retirement annuity, *i.e.*, a DB Pension, upon retirement and satisfaction of various
conditions.

56.     Through the enactment of Act 91 of 2004 ("Act 91"), the Commonwealth created
and transferred the Act 218 pension fund to the TRS, which was an "entity independent and
separate from others of the Government of the Commonwealth of Puerto Rico" (Sections 3, 4).
Teachers continued to receive DB Pension benefits under Act 91.  Act 91 also created a TRS
Board of Trustees responsible for the administration and operation of TRS.

57.     Law 160 of 2013 ("Law 160") implemented a new defined contribution program
and a new minimum pension guaranteed for active teachers.  Law 160 was clear, however (the
Commonwealth found it "necessary to point out"), that "the benefits accrued by teachers until
the effective date of this Act, shall remain and be paid in accordance with the provisions of Act
No. 91."  Those teachers were to receive a pension that would be a combination of (i) the annuity

15

resulting from the benefits accumulated until July 31, 2014, plus (ii) the annuity to be calculated on the basis of what they have accrued under the new Defined Contribution Plan as of August 1, 2014, until their separation from service.

58.    In *Asociación de Maestros de Puerto Rico v. Sistema de Retiro de Maestros de Puerto Rico*, 190 D.P.R. 854 (2014), the Supreme Court of Puerto Rico held that Law 160's attempt to deprive teachers of their existing DB Pension rights violated the Puerto Rico Constitution and, despite the new defined contribution program created by Law 160, all active teachers enrolled in TRS at the time of the enactment of Law 160 were constitutionally entitled to DB Pensions.

59.    Thus, while teachers hired prior to August 2014 retain their rights to a DB Pension, those hired from August 2014 onward were supposed to be provided with the Defined Contribution Accounts created by Law 160.[4]

## B. PROMESA AND THE ENACTMENT OF LAW 106

### i. PROMESA

60.    Broadly speaking and as relevant here, PROMESA, which became law on June 30, 2016, establishes the Oversight Board to oversee the Commonwealth's finances (title I); sets forth a process for the Oversight Board to certify a Fiscal Plan governing the territory's future finances and budgets, and also to certify each annual territory budget (title II); and allows a territory to declare and emerge from bankruptcy if necessary and consistent with the Fiscal Plan (title III).

---

[4]    This Complaint asserts claims on behalf of only those AMPR and Local Sindical-represented employees and retirees who are entitled to the Defined Contribution Accounts created by Law 160. The DB Pension rights of public school employees and retirees hired prior to August 2014 are not affected by Laws 160 and 106 and are not the subject of this Adversary Proceeding.

61.     Specifically, Section 201(b)(1)(C) of PROMESA explicitly provides that the Fiscal Plan shall "provide adequate funding for public pension systems"; Section 202(e) of PROMESA requires the Oversight Board to certify a territory budget before it can be "in full force and effect" for "the applicable fiscal year"; and Section 204 allows the Oversight Board to "take such actions as it considers necessary . . . to ensure that the enactment or enforcement of" any Commonwealth law, including rules, regulations and executive orders, "will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law."

62.     Section 301(c)(7) of PROMESA provides that the Oversight Board serves as a trustee within the meaning of title 11 of the United States Code and as made applicable in the Commonwealth's bankruptcy by PROMESA Section 301(a).

**ii.     The March 2017 Fiscal Plan and Joint Resolution 188**

63.     On March 13, 2017, the Governor submitted a "Fiscal Plan for Puerto Rico" (the "March 2017 Fiscal Plan") to the Oversight Board for certification.  The March 2017 Fiscal Plan stated that it would "segregate prospective employee contributions" to their retirement accounts.

64.     That same day, clearly viewing as insufficient the Governor's conclusory statement about segregation of retirement funds, the Oversight Board issued a resolution (the "March 2017 Fiscal Plan Certification") stating that it had "determined to approve and certify" the March 2017 Fiscal Plan "as modified by" two amendments, the second of which demanded that the "Commonwealth and the [Oversight] Board" together formulate a pension "system overhaul . . . on or before June 30, 2017," which would, among other things:

- "progressively reduce total pension outlays by 10% by fiscal year 2020 . . . with protections to ensure that no member is pushed below the federal poverty line as a result of the reductions" (pp. 3-4)[5];

- "Enroll all active members and new hires in defined contribution accounts that segregate and protect their contributions to pay for their own future benefits" (p. 4);

- "Offer employees diversified, low-cost 'index funds' similar to the federal government's Thrift Savings Plan" (*id.*); and

- "Ensure that employees retain the full return on their contributions[.]" (*Id.*)

65.     On May 3, 2017, the Commonwealth filed for bankruptcy protection under title III of PROMESA.

66.     On June 23, 2017, the Government of Puerto Rico adopted Joint Resolution 188, to take effect July 1, 2017, which "put[] forth the pay-as-you-go system as a new method for safeguarding pensions for Government retirees" as demanded by the March 2017 Fiscal Plan Certification.  Joint Resolution 188 did nothing, however, to enroll active government employees in new individual defined contribution accounts; segregate their ongoing retirement contributions into those accounts; offer them diversified, low-cost index funds (or any other investment options); or ensure that they retained the full return on their contributions, as demanded by the March 2017 Fiscal Plan Certification.

67.     Despite the fact that Joint Resolution 188 did not comply with the Oversight Board's March 2017 Fiscal Plan Certification—and the Commonwealth failed to otherwise officially propose an alternative plan for such compliance—the Oversight Board, on June 28,

---

[5]     While not the subject of this Adversary Proceeding, employees and retirees represented by AMPR and Local Sindical vigorously oppose any effort to freeze or reduce their constitutionally guaranteed DB Pension benefits.

2017, approved Joint Resolution 188 as part of the Commonwealth budget for FY 2018 to take effect on July 1, 2017.

### iii.    Law 106

68.    On August 23, 2017, the Commonwealth enacted Law 106, which stated among its purposes (pp. 9-10) the "faithful compliance with the Fiscal Plan certified by the Oversight Board on March 13, 2017," specifically including "the provisions on pension reform in the Fiscal Plan."

69.    Law 106 promised (p. 11) "to prospectively establish a New Plan for Defined Contributions, to be supported by the contributions made by public servants" which would "safeguard the contributions that they make for their retirement" by "establish[ing] stringent penalties and sanctions on the heads of public agencies or officials who fail to comply with their ministerial duties to promptly remit contributions to the accounts of the Participants."  Law 106 continues:

> Today, more than ever, we cannot allow the poor performance of ministerial duties to jeopardize the dignified retirement of thousands of public employees . . . . [N]o person, whether natural or legal, shall have legal immunity in the face of an intentional or negligent act that puts the future sustenance of thousands of public servants at risk . . . .  [A] new system of defined contributions is created, which will give Participants a cause of action to defend their contributions and in which the requirements of extensive experience and competence will be imposed on the administrators of the investments of our public servants.

*Id.* p. 12

70.    Law 106 makes a number of other overarching and comprehensive commitments respecting ongoing individual retirement account contributions by active Commonwealth employees, including the following:

- "[A]s a corrective measure, contributions by public servants will have to be segregated and a new Defined Contribution Plan established that will secure the future of our public servants." (Section 1.3); and

- "With this Law, we ensure that [our public servants] will have a retirement that is dignified . . . by segregating their personal contributions, guaranteeing them and establishing a new defined contribution plan, in trusts or a similar instrument, which will allow them to protect and guarantee their contributions in separate accounts." (Section 1.4)

71.     Section 3.1 of Law 106 creates a "New Defined Contribution Plan" "to consist of the establishment of a trust fund . . . which will contain an individual account for each" eligible active employee.  Section 3.1(b)(1) provides in relevant part that the employees eligible to participate in the New Defined Contribution Plan include "[a]ll active Participants in the Retirement Systems . . . with the exception of those teachers and members of the [TRS] who are contributing under the under the provisions of [Law 91]."  Section 2.6 likewise makes an exception to coverage under Law 106 for teachers contributing to the TRS under Law 91.

72.     "Contributions to the made to the New Defined Contribution Plan by each Participant will be credited to the individual accounts, in addition to the return on investment in accordance with Section 3.6 herein."  Section 3.6(a)(2), in turn, entitles participants to a "return on investment" based on "the investments selected by the Participant."

73.     Section 3.3(a) requires that "[t]he individual contributions made by the Participants shall be funneled to a New Defined Contribution Plan, in which a Defined Contribution Account shall be set up and maintained, in trust, separate from the general assets and accounts of the Government, as an individual account for each Participant."  Section 3.3(a) further provides that the "individual contributions and funds in each Defined Contribution Account shall be the exclusive property of the corresponding Participant."

74. Section 1.6(i) of Law 106 defines the "Defined Contribution Account," for participants in the New Defined Contribution Account as an "account in trust, separate from general assets and Government Accounts, to be created after July 1, 2017 in the name of each" eligible active employee. These individual accounts are to be wholly distinct from the "Accumulated Pensions Payment Account," defined by Section 1.6(j) as an independent "account in trust, separate from general assets and Government accounts, designed to pay" legacy pension benefits by the Commonwealth through the "pay as you go system." Indeed, Section 2.4(d) specifies that "[a]s of July 1, 2017, [active employees] will no longer make any individual contributions or payment to the Accumulated Pensions Payment Account or any additional contributions to their respective Retirement Systems."

75. Section 3.4 provides that "[a]s of the date this Law takes effect," all Commonwealth employees "will be required to contribute at least 8.5% of their monthly remuneration to their Defined Contribution Account."

76. Section 3.5 provides that it is the obligation of the public employer to withhold those employee "contributions required under Section 3.4 . . . and immediately transfer them to the Defined Contribution Plan for deposit into the Defined Contribution Account" or else be subject to fines and penalties including conviction of a misdemeanor and six months imprisonment.

77. Section 3.6(a) of Law 106 requires that all employee contributions to the New Defined Contribution Plan "shall be credited [to the Defined Contribution Account of each participant] as soon as they are remitted by the employer."

78. Section 3.6(b) promises that the entire Defined Contribution Account of each employee—including not only the contribution but also the return on investment—shall be the

property of the employee who enjoys "*erga omnes* ownership of the balances in their Defined

Contribution Accounts."

79.     Section 4.1 of Law 106 further provides for the creation of the Retirement Board

to be appointed within sixty days from approval of the law, *i.e.,* October 23, 2017.  Under Law

106, the Retirement Board is to be comprised of thirteen members, including the Executive

Director of AAFAF (who shall serve as Chairman) and the Secretary of the Treasury, both of

whom are Defendants in this action.

80.     As part of its powers and duties under Law 106, the Retirement Board, under

Section 4.2, is to "[e]stablish, implement and oversee the best practices of prudence, integrity,

diligence and rules applicable to the New Defined Contribution Plan, with regard to its operation,

Participants' rights, administrator responsibilities, fiduciary duties" and "shall have and exercise

all the powers, duties and authority granted to the Boards of Trustees of the Retirement

Systems."  This includes fiduciary duties.

81.     Under Section 4.2(g) of Law 106, the Retirement Board shall "[e]nter into

reasonable and appropriate agreements . . . including trust incorporation deeds, that are necessary

and convenient to implement the provisions of this Law."

82.     Under Section 5.1(a) of Law 106, "[u]ntil such time as the Retirement Board is

duly constituted with quorum required by this Law, the Executive Director of the AAFAF shall

have and exercise all the powers corresponding to the Retirement Board. . . . ."

83.     In tension with the above statutory requirements—all of which contemplate the

immediate creation of individual Defined Contribution Accounts to receive employees'

mandatory wage deductions, which employees then have control over as their own property to

invest in the financial markets—Section 3.3(c) of Law 106 allows a narrow, temporary window

of time "[b]etween the time this Law is enacted and the time the Retirement Board contracts the services of an Administrative Entity to manage the New Defined Contribution Plan" during which "the Secretary of the Treasury shall have the authority and power to collect and deposit into a trust fund . . . which will be separated from the general assets and accounts of the Government, with the Individual Contributions made by Participants under his or her supervision."  Soon, "[a]fter the Administrative Entity begins to provide its services, the Secretary of the Treasury will transfer to it the funds from the Individual Contributions to be deposited into each Participant's Defined Contribution Account."

84.    Section 5(b) of Law 106 provides that the transition to the New Defined Contribution Plan "must take place on or before December 31, 2017" (approximately four months after Law 106's passage) and that such deadline may only be extended "for a *reasonable* time" (emphasis added) by resolution of AAFAF.

## C.  DEFENDANTS' VIOLATIONS OF LAW 106

### i.    Defendants' Unconscionable Delay in Implementing Law 106

85.    Upon information and belief, on or about December 20, 2017, without notice to the public, much less notice to the tens of thousands of active and retired public employees directly affected, AAFAF adopted a resolution by which it purported to extend the time for transition to the New Defined Contribution Plan to June 30, 2018, *more than ten months after enactment of Law 106*.

86.    Upon information and belief, AAFAF, again without notice to the public, has since extended the deadline by another six months to December 31, 2018, *more than sixteen months after the enactment of Law 106*.

87.    On January 19, 2018, almost five months after the passage of Law 106, and despite numerous commitments that ongoing employee contributions would be properly

segregated into individual 401(k)-style accounts, the Commonwealth (through AAFAF) publicly released the 2017 EOY Bank Account Balances in which it revealed (at pp. 8-9) that approximately $133 million in "employees/participants withholdings . . . for defined contribution retirement accounts" were being held in *government* accounts, rather than individual employee retirement accounts as required by Law 106.  On August 28, 2018, the Commonwealth's July 31, 2018 Bank Account Balances publicly reported that, between June 30, 2018 and July 31, 2018, this number has grown from $286 million to $316 million—suggesting that the government is seizing and then hiding away as much as $30 million of public employee property each month.

88.     On January 24, 2018, following Hurricane Maria, the Governor issued a new draft fiscal plan for certification (the "January 2018 Draft Fiscal Plan").  The January 2018 Draft failed to say anything about the status of setting up the New Defined Contribution Accounts required by the Oversight Board since March 13, 2017.

89.     On February 5, 2018, the Oversight Board issued a "notice of violation" to the Governor (the "February 2018 Notice of Violation") under Section 210(c)(3)(B)(i) of PROMESA, stating that the January 2018 Draft Fiscal Plan required revisions, including that "[t]he Government should set clear, immediate deadlines to have all employees enrolled in a defined contribution plan with segregated and self-directed accounts."

90.     Notwithstanding the Oversight Board's February 2018 Notice of Violation demanding that the Commonwealth set "immediate" deadlines for the creation of the true individual Defined Contribution Accounts, the Commonwealth has not done so in any of the numerous subsequent draft fiscal plans it has submitted in the nine months since.

91.     Indeed, the fiscal plan certified by the Oversight Board on October 23, 2018, stated definitively that "current commitments" under Law 106 "have not yet been fulfilled"

24

including "the transition to the new defined contribution system."  New Fiscal Plan for Puerto Rico, October 23, 2018, p. 120.  Yet the Oversight Board has done nothing real to curb this delinquency or enforce its own defined contribution mandate, despite the Oversight Board's statutory power to enforce its mandates under Section 204 of PROMESA.  By purporting to mandate that the Commonwealth set up these accounts immediately, but then sitting on its hands as those mandates were repeatedly flouted at the expense of public servants, the Oversight Board has breached its own fiduciary duties as the Commonwealth's bankruptcy trustee and aided and abetted the breaches of statutory and fiduciary duty by the Commonwealth, the Retirement Board, AAFAF and their respective officials.

92.     All the while that the Oversight Board was looking the other way, the Retirement Board and its members have totally failed to meet their statutory duties to create and administer a system for managing the New Defined Contribution Plan.  The Retirement Board did not even issue an RFP from prospective providers of administrative services for Law 106's defined contribution plan until *September 28, 2018,* more than a year after Law 106's enactment.  Under the Retirement Board's best-case estimate, the individual employee-controlled retirement accounts promised by Law 106 will not be in operation, at the earliest, until the summer of 2019, *two years after Law 106 went into effect*.

93.     Upon information and belief, no actual trust has been created to house employee contributions as required by Law 106.

94.     In fact, on information and belief, since enactment of Law 106 in August 2017, all funds of the Union's public employee members have been held in cash in government accounts at Banco Popular where they earn nominal or zero interest.

95.     Banco Popular earnings have been buoyed by these accounts.  The torrent of government deposits with Popular increased to $7.5 billion in the Second Quarter of this fiscal year, up from $6.9 billion the first quarter.  The bank attributes the liquidity build up, at least in part, to the government "not paying its debt."

**ii.     Defendants' Ongoing Violations of Law 106**

96.     Defendants are engaged in and/or are aiding and abetting multiple and ongoing violations of Law 106.

97.     In violation of Sections 1.6(i) and 3.3(a) of Law 106, the Commonwealth, Retirement Board, AAFAF and their responsible officials have failed to create Defined Contribution Accounts for each eligible active employee.

98.     In violation of Sections 3.3(a) and 3.5 of Law 106, the Commonwealth, Retirement Board, AAFAF and their responsible officials have failed to immediately transfer individual employee pension contributions to the New Defined Contribution Plan for deposit into Defined Contribution Accounts.

99.     In violation of Sections 3.3(c) and 5.1(b) of Law 106, the Commonwealth, Retirement Board, AAFAF and their responsible officials have delayed unreasonably the implementation of the New Defined Contribution Plan, including the creation of individual Defined Contribution Accounts as required by statute.

100.     In violation of Section 3.6 of Law 106, participants in the New Defined Contribution Plan have been deprived of the opportunity to invest their pension funds in investments of their own selection and to earn market returns on their investments.  Currently, the Unions' public employee members have received no investment control over the individual Defined Contribution Accounts required by Law 106.

101.    On information and belief, since enactment of Law 106 in August 2017, all funds of the Union's public employee members have been held in cash in a government account at Banco Popular where they earn nominal or zero interest, unjustly enriching the Commonwealth and Banco Popular at the expense of public servants.

102.    The unconscionable delay in implementing Law 106, a delay which is illegal under both statute and common law, has been perpetrated by the Commonwealth, Retirement Board, AAFAF and their responsible officials and condoned by the Oversight Board despite repeated complaints from the Unions.  As a result of that delay, public employees and retirees represented by the Unions are suffering severe and incalculable injury to their property rights in their individual pension accounts.

## FIRST CLAIM FOR RELIEF

**(For Declarative and Injunctive Relief Pursuant to U.S.C. §§ 2201 and 2202 for Violation of Law 106 Against Defendants Commonwealth, Rosselló, Maldonado, Fuentes, Retirement Board, Irizarry, Del Valle, Rodríguez, Moreno, Molina, Ortiz, AAFAF and Sobrino)**

103.    Plaintiffs repeat and reallege the allegations contained in the foregoing paragraphs as if fully set forth herein.

104.    Under Section 1.6(i) of Law 106, the Commonwealth is required to establish Defined Contribution Accounts for employees, defined as an "account in trust, separate from general assets and Government Accounts, to be created after July 1, 2017 in the name of each" eligible active employee.

105.     Under Section 3.1, "A New Defined Contribution Plan is hereby created, to consist of the establishment of a trust fund . . . which will contain an individual account for each" eligible active employee and "contributions to be made to the New Defined Contribution Plan by each Participant will be credited to the individual accounts."

27

106.    Section 3.3(a) of Law 106 requires that "[t]he individual contributions made by the Participants shall be funneled to a New Defined Contribution Plan, in which a Defined Contribution Account shall be set up and maintained, in trust, separate from the general assets and accounts of the Government, as an individual account for each Participant."  Section 3.3(a) further provides that the "individual contributions and funds in each Defined Contribution Account shall be the exclusive property of the corresponding Participant."

107.    Section 4.1 of Law 106 further provides for the creation of the Retirement Board to be appointed within sixty days from approval of the law.  As part of its powers and duties under Law 106, the Retirement Board is to "[e]stablish, implement and oversee the best practices of prudence, integrity, diligence and rules applicable to the New Defined Contribution Plan, with regard to its operation, Participants' rights, administrator responsibilities, fiduciary duties . . . ."

108.    The aforementioned provisions of Law 106, among others, have been violated by Defendants Commonwealth, Rosselló, Maldonado, Fuentes, Retirement Board, Irizarry, Del Valle, Rodríguez, Edward Moreno, Molina, Ortiz, AAFAF and Sobrino.

109.    Demand has been made by the Unions to comply with and effectuate Law 106 by establishing individual accounts and funding such accounts with employees' contributions and interest thereon, and creating a true trust.

110.    Defendants Commonwealth, Rosselló, Maldonado, Fuentes, Retirement Board, Irizarry, Del Valle, Rodríguez, Edward Moreno, Molina, Ortiz, AAFAF and Sobrino have failed and refused to comply with Law 106.

111.    Such refusal has irreparably harmed Plaintiffs and those they have the duty to represent.

112.     A clear, present and justiciable controversy exists with respect to Defendants' obligation to comply with Law 106 and take necessary action to ensure the Commonwealth complies.

113.     Plaintiffs are entitled to a declaration that the failure to set up individual and segregated Defined Contribution Accounts as provided in Law 106, violates Puerto Rico law.

114.     Plaintiffs are entitled to an injunction requiring that the Defined Contribution Accounts be set up by December 31, 2018.

## SECOND CLAIM FOR RELIEF

**(For Declaratory and Injunctive Relief Pursuant to 28 U.S.C. §§ 2201 and 2202 for Breach of Fiduciary Duty or Aiding and Abetting Breach of Fiduciary Duty Against All Defendants)**

115.     Plaintiffs repeat and reallege the allegations contained in the above paragraphs, as if fully set forth herein.

116.     Law 106 requires the Commonwealth to hold employee contributions in trust for participants and beneficiaries, including the Union-represented active employees and retirees of the Commonwealth.

117.     Defendants Commonwealth Rosselló, Maldonado, Fuentes, Retirement Board, Irizarry, Del Valle, Rodríguez, Moreno, Molina, Ortiz, AAFAF and Sobrino, by statute and common law, all have fiduciary duties to the trust and its beneficiaries.

118.     The Oversight Board, as trustee for the Commonwealth, has the same fiduciary duties.

119.     Such Defendants are fiduciaries and have a fiduciary duty to employees and beneficiaries of the trusts.

120.    Such Defendants have a duty to administer the trusts, diligently and in good faith, in accordance with applicable law.

121.    Such Defendants have a duty to the beneficiaries to keep and render clear and accurate accounts with respect to the administration of the trust.

122.    Such Defendants have a duty to the beneficiaries to use reasonable care and skill to preserve the trust property as *"Un Buen Padre de Familia"* in accordance with general principles of Puerto Rico Law and the mandates of Law 106.  At a minimum, such Defendants are under a duty to assure payment of a reasonable market of interest on trust property.

123.    Such Defendants are under a duty to the beneficiaries to keep the trust property separate from other property and to see that the property is designated as property of the trust. Fundamental in the law of trusts is the principle that courts will give to beneficiaries of a trust the remedies necessary for the protection of their interests.

124.    Plaintiffs are entitled to a declaration of the illegality of the failure to establish segregated accounts, to fund those accounts, and to otherwise act prudently, loyally and in the best interests of the beneficiaries of the trust.

125.    Plaintiffs are entitled to a declaration that Defendants Oversight Board and Banco Popular have aided and abetted the other Defendants in these violations.

126.    Plaintiffs are further entitled to an injunction enjoining all Defendants from any further breach of their fiduciary duties, or aiding and abetting such breach, including but not limited to an injunction that there be no further extension of the deadline for establishing the individual defined contribution accounts and making them available to account holders to invest in low-cost index funds like the Federal Thrift Savings Plan.

## THIRD CLAIM FOR RELIEF

**(For Declaratory and Other Equitable Relief for Unjust Enrichment Against
Defendants Commonwealth and Banco Popular)**

127.    Plaintiffs repeat and reallege the allegations contained in the above paragraphs, as
if fully set forth herein.

128.    The Commonwealth has been unjustly enriched by misappropriating employee
property that should have been deposited in Defined Contribution Accounts as required by Law
106 and instead depositing those funds in government accounts at Banco Popular.

129.    Banco Popular has been unjustly enriched by the wrongful deposit with it of
hundreds of millions of dollars of employee money, funds on which Banco Popular pays
virtually zero interest.

130.    Plaintiffs are entitled to a declaration that this misappropriation of employee
property has resulted or will result in an unjust enrichment of the Commonwealth and Banco
Popular at the expense of those the Unions represent.

131.    Plaintiffs are further entitled to an injunction enjoining the Commonwealth and
Banco Popular from continuing to be unjustly enriched at the expense of the Commonwealth's
public-sector workers.

132.    All those represented by the Unions are entitled to the equitable remedy of
restitution in the form of restoration of lost investment income as a result of Defendants' failure
to establish individual accounts which employees and retirees covered by Law 106 could invest,
and the resulting unjust enrichment of Defendants, as measured by the average rate of return of
accounts in the Federal Thrift Savings Plan used as a benchmark by the Oversight Board in its
March 2017 Fiscal Plan.

133.    All those represented by the Unions are entitled to the equitable remedy of disgorgement of all financial benefits earned as a result of Defendants' failure to establish individual accounts which employees and retirees covered by Law 106 could invest, as measured by the average rate of return of accounts in the Federal Thrift Savings Plan used as a benchmark by the Oversight Board in its March 2017 Fiscal Plan.

134.    All those represented by the Unions are further entitled to a declaration that any claim for restitution, disgorgement or other monetary award by reason of the Commonwealth and Banco Popular's unjust enrichment cannot be impaired by any plan of adjustment in the Commonwealth's Title III bankruptcy case.

## FOURTH CLAIM FOR RELIEF

### (For an Accounting by the Commonwealth and Banco Popular)

135.    Plaintiffs repeat and reallege the allegations contained in the above paragraphs, as if fully set forth herein.

136.    The Commonwealth and Banco Popular have wrongfully obtained and are holding property of active and retired employees without their consent in violation of law.

137.    Plaintiffs are entitled to an equitable accounting to determine whether the transfer of property from employees to the Commonwealth and Banco Popular or any other third party that took place in the past or takes place in the future has resulted or will result in an unjust enrichment of the Commonwealth at the expense of those the Unions represent.

## FIFTH CLAIM FOR RELIEF

### (For Damages Pursuant to 42 U.S.C. § 1983; Unconstitutional Taking By Banco Popular and the Commonwealth)

138.    Plaintiffs repeat and reallege the allegations contained in the above paragraphs, as if fully set forth herein.

139.     The employees' money currently held government accounts at Banco Popular, constitute personal property.

140.     Under the Takings Clause of the Fifth Amendment to the United States Constitution, which applies to Puerto Rico, private property shall not be "taken for public use, without just compensation."  The Fifth and Fourteenth Amendments to the United States Constitution further prohibit the "deprivat[ion] of life, liberty or property without due process of law."

141.     Article II, Section 9 of the Puerto Rico Constitution likewise provides that "private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law."  The provision is analogous to the Takings Clause of the United States Constitution and provides at least the same level of protection against takings without just compensation.  Article II, Section 7 of the Puerto Rico Constitution further provides that "the right to life, liberty, and the enjoyment of property is recognized as a fundamental right of man…No person shall be deprived of his liberty or property without due process of law."  The provision is analogous to the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution and provides at least the same level of protection.

142.     The Commonwealth and Banco Popular's misappropriation of employee property that should have been deposited in Defined Contribution Accounts as required by Law 106 is not a reasonable and necessary means of achieving a legitimate public purpose.  The Commonwealth and Banco Popular's taking of the employee property without just compensation was unlawful.

143.     Banco Popular and the Commonwealth's failure to set up individual and investable trust accounts as required by Law 106 and their wrongful misappropriation of

33

hundreds of millions of dollars of employee funds that should have been deposited in Defined

Contribution Accounts without just compensation constitutes an unconstitutional taking of

employee property in violation of the Fifth and Fourteenth Amendments to the United States

Constitution and Article II, Sections 7 and 9 of the Puerto Rico Constitution.

144.    But for this unconstitutional taking, Union-represented employees and retirees

would have benefited from market returns on their misappropriated funds.

145.    Plaintiffs, on behalf of the thousands of employees and retirees who have been

damaged by Defendants' wrongful taking of employee property are entitled to damages as a

result of Defendants unconstitutional actions.

## PRAYER FOR RELIEF

Wherefore the Union prays that judgment be entered for it and against the Defendants as

follows:

A.    A declaration that Defendants have violated Puerto Rico Law 106 of 2017

B.    A declaration that Defendants have violated their fiduciary duty to public

employees and retirees covered by Puerto Rico Law 106 of 2017, whether themselves or by aiding

and abetting the fiduciary duty violations of other Defendants;

C.    An injunction requiring that any employee retirement account contributions made

under Law 106 to this point be immediately placed in a trust account, and that any future such

contributions be placed in that trust account until the Law 106 Defined Contribution Accounts are

established and investable by the employees and retirees;

D.    An injunction requiring the individual Defined Contribution Accounts under Law

106 to be set up and investable by December 31, 2018;

E.      An accounting of any unjust enrichment by Defendants as a result of holding the property of public employees and retirees covered by Law106;

F.      Disgorgement of any and all financial benefits earned by Defendants as a result of the conversion of, and unjust enrichment from, employee property described above;

G.      A declaration that any claim for restitution, disgorgement or other monetary award by reason of the Commonwealth and Banco Popular's unjust enrichment cannot be impaired by any plan of adjustment in the Commonwealth's Title III bankruptcy case;

H.      Damages to be measured according to the average rate of return of accounts in the Federal Thrift Savings Plan over the relevant time period—for all employees and retirees represented by the Union who are covered by Law 106 but who have not been able to invest their own funds; and

I.      Any other relief that the Court deems just and proper.


Dated: November 15, 2018


/s/ José Luis Barrios-Ramos
JOSÉ LUIS BARRIOS-RAMOS, ESQ.
McLeary Ave., Suite #303
San Juan, Puerto Rico 00936-8006
Telephone:      (787) 593-6641
barrios.jl@outlook.com


-and-

By:      /s/ Curtis C. Mechling
Curtis C. Mechling (admitted *pro hac vice*)
Sherry J. Millman (admitted *pro hac vice*)
David J. Kahne (*pro hac vice* pending)
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane.
New York, New York 10038

Telephone:      (212) 806-5400
Facsimile:      (212) 806-6006
cmechling@stroock.com
smillman@stroock.com

*Attorneys for the American Federation of Teachers*
*AFL-CIO, as authorized agent for the Asociación de*
*Maestros de Puerto Rico-Local Sindical, and*
*American Federation of State, AFL-CIO County*
*and Municipal Employees*


*/s/ Judith E. Rivlin*

AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES,
AFL-CIO

Judith E. Rivlin (*pro hac vice*)
Teague P. Paterson *(pro hac vice)*
Miachael Artz *(pro hac vice)*
1101 17th Street NW, Suite 900
Washington, DC 20011
Telephone:      (202) 775-5900
Facsimile:      (202) 452-0556
jrivlin@afscme.org; tpaterson@afscme.org;
mblumin@afscme.org


    -and-

*/s/ Manuel A. Rodriguez Banchs*

MANUEL A. RODRIGUEZ BANCHS
P.O. Box 368006
San Juan, Puerto Rico 00936-8006
Telephone:      (787) 764-8896
Facsimile:      (787) 721-0975
manuel@rodriguezbanchs.com

*Attorneys for the American Federation of State,*
*County and Municipal Employees, AFL-CIO*