# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>          as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>          Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**Re: ECF No. 4011, 4098 and 4194**<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO ("ERS"),<br><br>          Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS<br><br>**This Declaration relates to ERS and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 3566-LTS.** |
| COOPERATIVA DE AHORRO Y CRÉDITO VEGABAJEÑA<br><br>          Movant,<br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO ("ERS"),<br><br>          Respondent. | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**DECLARATION OF LUIS M. COLLAZO-RODRIGUEZ IN SUPPORT OF OBJECTION OF THE EMPLOYEES RETIREMENT SYSTEM TO MOTION FOR LIFT OF STAY FILED BY THE COOPERATIVA DE AHORRO Y CRÉDITO VEGABAJEÑA AND IN COMPLIANCE WITH ORDER [ECF NO. 4194]**

I, Luis M. Collazo-Rodríguez, pursuant to 28 U.S.C. 1746, declare and state as follows:

1. I am the Administrator of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Executive Director of the Retirement Board of the Government of Puerto Rico (the "Retirement Board"). I have been in the position of Administrator since May 1, 2017 and the position of Executive Director since August 16, 2018.

2. I submit this declaration in support of ERS's Objection to Motion for Lift of Stay filed by the Cooperativa de Ahorro y Crédito Vegabajeña (the "Objection") and in compliance with this Court's order on the record of the hearing held in the above-captioned matter on November 7, 2018 [ECF No. 4194]. The information provided herein is based on my personal knowledge and a review of the applicable laws and public documents detailed in this declaration.

3. ERS was established in 1951 to administer the payment of pensions and certain other benefits for the retired employees of the Commonwealth government, certain public corporations in Puerto Rico, and certain municipalities. *See* 3 L.P.R.A. § 761 (2016). Since July 1, 2017, the Department of Treasury of Puerto Rico ("Treasury") is paying all retirement benefits, while ERS continues to carry out certain administrative functions. To the best of my knowledge, ERS has never created or administered segregated funds corresponding to retirement accounts for individual retirees or government employees participating in the retirement system. Moreover, I am not aware that ERS has ever represented that such segregated funds had in fact been maintained. Rather, as described below, contributions by participants in the retirement system's plans were recorded by individual accounts, but such contributions were pooled in common funds

1

and used by ERS to pay retirement benefits.

### A. Historical Function of ERS and Initial Reforms

4. Puerto Rico's public pension system is and has been in crisis for many years for many reasons, including underfunding of its employee retirement plans. This situation has been well-documented publicly and subject to numerous attempts at reform. Under Act 447 of May 15, 1951, all government employees whose retirement benefits were administered by ERS were to receive defined benefits calculated based on a statutory formula that considered factors including the employee's salary and years of service. *See* 3 L.P.R.A. § 761, *et seq.* (2016).

5. By 1999, ERS's defined benefit plan was significantly underfunded. As of June 30, 1998, ERS was in "critical condition with an actuarial deficit that exceed[ed] five point nine billion dollars, according to the projections of [ERS's] actuaries." *See* Act 305 of September 24, 1999, Statement of Legislative Intent, ("Act 305-1999") (Ex. A). Act 305-1999 was one of the first attempts to reform the retirement system.[2] *See* Ex. A. In that regard, Act 305-1999 sought to address structural underfunding at ERS by establishing a defined contribution model for new employees hired on or after January 1, 2000 and for current employees who elected to transfer from the existing defined benefit plan ("System 2000"). *See* Ex. A, Statement of Legislative Intent. Under System 2000, a "savings account" was established for each participant that enrolled in the retirement system on or after January 1, 2000. Ex. A, § 3-101(a).[3]

6. Each System 2000 participant was required to make contributions to ERS. *Id.* § 3-104(a). Contributions and investment earnings thereon were credited for accounting purposes to

---

[2] Act 305-1999 amended Act 447 of May 15, 1951.

[3] ERS does not take any position with respect to the rights of ERS participants and retirees in their contributions and retirement benefits. Nothing herein should be deemed or construed as taking a position regarding the rights of ERS participants and retirees. ERS reserves all rights with respect to such issues.

the employees' notional savings accounts and used to calculate their benefits upon retirement. *Id.* §§ 3-108, 3-109(a). Under System 2000, at retirement employees were to receive a benefit equal to the aggregate notional value attributable to their savings account. *Id.* § 3-109(a).

7. Under Act 305-1999, participants could select from among three "Investment Options": (i) a fixed income option where the yield was calculated by reference to two-year treasury yields; (ii) an option that tracked the return on ERS's investment portfolio; and (iii) any additional options that ERS's Board of Trustees may establish. Ex. A, § 3-107(b). Act 305-1999 required that the investment yield be calculated at the close of each semester based on the average monthly balance in the savings account during the semester. *Id.* § 3-107(a)(3). Act 305-1999 also provided that the "contributions of each participant of [System 2000] and the investment yield shall be credited to [a] savings account." *Id.* § 3-101(a).

**B. No Requirement to Segregate Funds and Corresponding Public Disclosures**

8. While System 2000 provided for the "establishment of a savings account for each participant," it did not create a system under which employee contributions were to be held in trust or segregated into individual accounts. The participants' savings accounts were to be employed as a mechanism to track contributions and calculate benefits. All contributions to ERS were pooled and invested together. Retirement benefits under the defined benefit plan and System 2000 were paid from ERS's pooled assets.

9. As detailed below, the fact that no participant in the retirement system had segregated funds of his or her own was well-known and widely publicized. For example, the "Financial Information and Operating Data Report" for the Commonwealth of Puerto Rico as of June 30, 2015 (the "2015 Commonwealth Report"), provided, in pertinent part:

> *System 2000 is not a separate plan as there are no separate accounts*

3

> *for System 2000 Participants.* Contributions received from System 2000 Participants are pooled and invested by the Employees Retirement System together with the assets corresponding to the defined benefit structure. Thus, future benefit payments under the defined benefit structure of Act 447 and Act 1 of 1990 and the defined contribution structure of System 2000, as amended by Act 3-2013, will be paid from the same pool of assets of the Employees Retirement System.

*See* 2015 Commonwealth Report at 159 (emphasis added) (Ex. B).[4]

10. Likewise, the "Financial Information and Operating Data Report" of the Commonwealth of Puerto Rico as of June 30, 2016 ("2016 Commonwealth Report"), provided, in pertinent part:

> *System 2000 was not established as a separate plan, however, and there are no segregated accounts for System 2000 Participants. Contributions received from System 2000 Participants were pooled and invested by the ERS together with the assets corresponding to the defined benefit structure.* Thus, future benefit payments under the defined benefit structure of Act 447 and Act 1 of 1990 and the defined contribution structure of System 2000, as amended by Act 3-2013, are payable from the same pool of assets of the ERS.

*See* 2016 Commonwealth Report at 210 (emphasis added) (Ex. C).[5]

11. Reports published by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") also acknowledged that the System 2000 structure did not provide for actual segregated accounts for the benefit of participants. *See* Explanatory Memorandum on Pension Reform (Aug. 4, 2017) (Ex. D). For example, the Oversight Board's "Explanatory Memorandum on Pension Reform" stated that System 2000 participants "participate in a hybrid 'cash balance' plan, in which amounts equal to their contributions are credited to a notional account." *See* Ex. D at 6. The Oversight Board further explained "there is no separate account in

---

[4] Published at: http://www.gdb.pr.gov/documents/CommonwealthReport11-06-15.pdf.

[5] Published at: http://www.gdb.pr.gov/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf.

4

which [participants'] contributions are segregated." *See id.*

### C. Continued Financial Deterioration and Further Attempts at Reform

12. Notwithstanding the System 2000 reforms, ERS's financial system and the health of Puerto Rico's public employee retirement and pension system continued to deteriorate. Structural deficits led to further underfunding as "the annual benefit payments and administrative expenses of [ERS] were significantly larger than the member and employer contributions made to [ERS]." *See* Ex. B at 73–74. On information and belief, ERS was using investment income and its assets to cover the negative cash flow resulting from obligations to retirees and, as a result, its "total (gross) assets were projected to be exhausted by fiscal year 2019." *Id.* at 74.

13. In 2013, additional measures were taken to address ERS's dire financial situation. Act 3 of April 4, 2013 ("Act 3-2013"), adopted a comprehensive reform of ERS. *See* Act 3-2013 (Ex. E). Among other measures, Act 3-2013 (i) increased the retirement age; (ii) increased contributions to the system; and (iii) in the case of active employees who were participants in the defined benefit plan, all retirement benefits accrued through June 30, 2013 were frozen, and thereafter the benefits of such participants would begin to accrue under a defined contribution formula. *See* Ex. E; *see also* Ex. B at 73–74, 159.

14. Nonetheless, ERS's financial condition continued to worsen. *See* Ex. B at 159. As the Congressional Task Force on Economic Growth in Puerto Rico ("Task Force") found in its report to Congress, as of June 30, 2015, ERS was "in a negative funded position" and "at risk of becoming insolvent." *See* Congressional Task Force on Economic Growth in Puerto Rico, Report to the House and Senate (Dec. 20, 2016) (Ex. F). The Task Force further reported that as of June 30, 2015, ERS has a "net pension liability of $33.2 billion with a funded ratio of [negative] 1.8 percent." Ex. F at 12; *see also* Ex. B at 40 ("[t]he assets of the Commonwealth's retirement

5

systems will be completely depleted within the next few years unless the Commonwealth makes significant additional contributions to the retirement systems").

### D. The Rosselló Administration's Response

15. When the current Administration came into office in 2017, it moved to address the financial crisis at ERS and safeguard retirement benefits.

16. As described in Statement of Legislative Intent accompanying Act 106 of August 23, 2017 ("Act 106-2017"):

> Despite the fact that the reforms implemented in the past have not been effective, doing nothing is not an option. The wellbeing of public servants and our retirees is a priority for this Administration.
>
> . . .
>
> This being the case, all available viable options for dealing with the current crisis in the Retirement Systems have been carefully analyzed. . . . [D]ue to the imminent insolvency of the Retirement Systems, this Legislative Assembly considers it reasonable and necessary that the General Fund would assume responsibility to cover the payments that the Retirement Systems are unable to make to our pensioners. . . . This demonstrates the commitment of this Administration to our pensioners. To do otherwise would deprive our retirees of their pensions, with all the consequences this would involve for them, as well as for the Government and society in general.

Act 106-2017, Statement of Legislative Intent (Ex. G).

17. On June 25, 2017, Puerto Rico's Legislative Assembly (the "Legislature") passed the Joint Resolution for Other Allocations for Fiscal Year 2017-2018 ("Joint Resolution 188"). On August 23, 2017, the Legislature passed and Governor Rosselló Nevares signed into law Act 106-2017.

18. Together, Act 106-2017 and Joint Resolution 188 require that ERS sell its assets and transfer the proceeds, in addition to any existing available funds it held, to Treasury's General

Fund.  Act 106 and Joint Resolution 188 also implemented a pay-as-you-go system where the Commonwealth assumed the obligation to pay retirement benefits from the General Fund as they come due.  These provisions "ensure that the pensioners of Puerto Rico will receive the pensions that, with so much sacrifice and effort, they were able to obtain by giving their best years to the service of Puerto Rico."  Ex. G, Statement of Legislative Intent.

19. Act 106-2017 mandated that substantially all government employees participate in a new defined contribution system to be established.  *See* Ex. G, § 3.1.  Act 106-2017 also provided, for the first time, for the creation of segregated accounts held in trust for the benefit of individual retirees.  In contrast to prior regimes, Act 106 provided that a "New Defined Contribution Plan is hereby created, to consist of the establishment of a *trust fund* . . . , which will contain an individual account for each Participant in the Retirement Systems that becomes part of said program . . . ." *Id.* (emphasis added).  Similarly, Act 106 provided that the "individual contributions made by the Participants shall be funneled to a New Defined Contribution Plan, in which a Defined Contribution Account shall be set up and maintained, *in trust, separate from the general assets and accounts of the Government, as an individual account for each Participant,* and credited and debited as set forth in this Chapter." *Id.* § 3.2(a) (emphasis added).[6]

20. In accordance with Act 106-2017, the Government of Puerto Rico has been in the

---

[6] As used in Act 106-2017, (i) "Defined Contribution Account" means the "account in trust, separate from general assets and Government accounts, to be created after July 1, 2017 in the name of each Participant as set forth in Chapter 3" of Act 106-2017, titled "Defined Contribution Program"; (ii) "New Defined Contribution Plan" means the "new plan for defined contributions in which Participants will participate, as provided in Chapter 3" of Act 106-2017; and (iii) "Participants" means "active employees of the Government of Puerto Rico, Teachers and members of the Teachers Retirement System, Municipal employees, and the employees of Public Corporations, with the exception of employees of the University of Puerto Rico and the Electric Power Authority.  In addition, it includes those employees who work or who have worked within a Public Private Partnership and any member of the Puerto Rican Government Employee Retirement System that has made contributions to said System and these contributions have not been reimbursed.  This term includes former employees of the Government of Puerto Rico who left public service and were not reimbursed for their contributions and/or any accrued benefit up to the date of separation."  *See* Ex. G, § 1.6.

7

process of establishing the individual accounts with a third-party entity that will manage the defined contribution plan. The new Retirement Board established as an independent government entity under Act 106 has published a Request for Proposal for an entity to undertake "the implementation, administration and management of the newly created Defined Contribution Plan for government employees." Request for Proposal 2018-001 (Sept. 28, 2018) (Ex. H).

21. During the transition period, Act 106-2017 authorizes the Secretary of the Treasury to "collect and deposit into a trust fund, . . . which will be separated from the general assets and accounts of the Government, [the employee contributions] made by Participants." Ex. G, § 3.3(c). I understand that Treasury has, pursuant to its authority under Act 106-2017, created a segregated account for the purpose of holding employee contributions until the individual segregated accounts are established and has been depositing employee contributions in that account since July 1, 2017. As of September 28, 2018, the segregated account holding employee contributions had a balance of $321.3 million, an increase from $301.3 million as of August 31, 2018.

22. Once the individual accounts are established, Treasury will transfer all employee contributions made since July 1, 2017 to the appropriate segregated trust account. Ex. G, § 3.3(c). In the meantime, employees can contact ERS to receive an accounting of their contributions.

23. Under Act 106-2017, participants no longer make contributions to ERS and their System 2000 savings accounts have been frozen. *Id.* § 2.5(d). Upon retirement, System 2000 participants will be entitled to an annuity based on the notional value of their savings account as provided under Act 305-1999. *Id.* §§ 2.3, 2.4(a).

24. In sum, this Administration has taken the necessary steps to reform the retirement system and safeguard the payments to retirees, including the first ever establishment of segregated accounts for the benefit of retirement system participants.

25. I declare under penalty of perjury that the foregoing is true and correct.

*Signature Page Follows*

San Juan, Puerto Rico

November 15, 2018

                                        */s/ Luis M. Collazo-Rodríguez*

                                        Luis M. Collazo-Rodríguez