**EXHIBIT A**

(S. B. 1685)
(Reconsidered)

**(No. 305)**

(Approved September 24, 1999)

# AN ACT

To amend the Title; add Chapter 1; amend the last paragraph of Section 1, and renumber said Section as Section 1-101; add a new Section 1-102; to renumber Section 2 as Section 1-103; amend paragraphs 12, 13 and 26 and add new paragraphs 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37 and 38 and renumber paragraph 27 as paragraph 39 of Section 3, and renumber said Section as Section 1-104; amend subsection (B) of Section 4 and renumber said Section as Section 1-105; renumber Sections 5, 5A, 6B and 6C as Sections 1-106, 1-107, 1-108 and 1-109, respectively; amend subsection (c) of Section 22 and renumber said Section as Section 1-110; add Chapter 2; renumber Sections 6, 6A and 6D as Sections 2-101, 2-102 and 2-103, respectively; amend the first paragraph of Section 6E and renumber said Section as Section 2-104; repeal Section 7; renumber Section 8 as Section 2-105; amend Section 8A and renumber it as Section 2-106; amend subsection (a) of Section 9 and renumber said Section as Section 2-107; amend Section 9A and renumber it as Section 2-108; amend the first and second paragraphs of Section 10 and renumber said Section as Section 2-109; amend Section 10A and renumber it as Section 2-110; renumber Section 11 as Section 2-111; amend the third paragraph of Section 12 and renumber said Section as Section 2-112; amend subsection (a) and the first paragraph of subsection (b) of Section 13 and renumber said Section as Section 2-113; renumber Section 14 as Section 2-114; renumber Section 20 as Section 2-115; amend subclause (ii) of clause (2) of subsection (c) of Section 21 and renumber said Section as Section 2-116; amend Section 22A and renumber it as Section 2-117; amend the third and fourth paragraphs of Section 23 and renumber said Section as Section 2-118; amend Sections 24 and 25 and renumber them as Sections 2-119 and 2-120, respectively; add a new Chapter 3 and Sections 3-101, 3-102, 3-103, 3-104, 3-105, 3-106, 3-107, 3-108, 3-109, 3-110, 3-111 and 3-112; add a new Chapter 4; renumber Sections 15, 16 and 17 as Sections 4-101, 4-102 and 4-103, respectively; amend the second

paragraph of Section 18 and renumber said Section as Section 4-104; amend the introductory paragraph of subsection (a) of Section 19 and renumber said Section as Section 4-105; amend subclause (3) of clause (a) of subsection (1) of Section 19A and renumber said Section as Section 4-106; renumber Sections 19B, 19C, 21A, 24A, 25A, 25A (second) and 26 as Sections 4-107, 4-108, 4-109, 4-110, 4-111, 4-112 and 4-113, respectively; and amend Section 27 and renumber it as Section 4-114 of Act No. 447 of May 15, 1951, as amended, in order to create a Retirement Savings Account Program for the employees of the Government of Puerto Rico, its instrumentalities and municipalities, through which retirement benefits shall be provided for persons employed after January 1, 2000, and any other employee who voluntarily chooses not to be part of the present defined retirement benefits system, and instead chooses to participate in a retirement savings account, and to harmonize the provisions in effect.

## STATEMENT OF MOTIVES

One of the matters to which the Government of Puerto Rico has given special attention for the past five years is the condition of the government retirement systems, especially focused on taking measures that will lead to the reduction of their actuarial deficits. For the past years, said systems have implemented entrepreneurial efficiency strategies that are based on a general blueprint focused on obtaining total quality through the re-engineering of the operational processes.

Notwithstanding the efforts of the Government of Puerto Rico, the systems at present have a situation of actuarial deficiencies that are projected at over six billion dollars. The Employees Retirement System of the Government of Puerto Rico and its Instrumentalities is in the most critical condition with an actuarial deficit that exceeds five point nine billion dollars, according to the projections of the actuaries of said system as of June 30, 1998.

Since the implementation of the System, many Acts have been passed which have increased the benefits offered to its participants without having

provided appropriations to finance the cost of these new benefits. The lack of long-term planning did improve the benefits of the participants, but the system was not provided with the proper mechanisms to meet its obligations.

Among the causes for the high actuarial deficit of the system we can indicate the following: the intrinsic structural shortfall associated to the defined benefits systems, caused by poor financial planning at the time the program was established; demographic factors that altered the relationship between the active participants and the retirees; the high incidence of participants who have availed themselves of disability retirement benefits; poor financial management of the investment assets before their management was privatized; and finally, the lack of uniformity.

The System does not have a mechanism to automatically readjust the amount that the participants, and the Government must contribute according to the corresponding actuarial studies.

The functional structure of the System is summarized in four main points, to wit: there are no individual accounts since they are distribution systems in which even though there is a record of the contributions of the participants individually, all contributions are covered into a common fund; the financing mechanism is mainly touch and go, since the active participants finance the pensions of the retirees, and the Government of Puerto Rico is responsible for covering the deficits that have been produced to date; the benefits as well as the contributions are previously defined, since not only the amounts of the contributions are predefined, but the benefits obtained at the time of retirement are also determined by what is stated in the enabling act itself; and its management is also governmental.

The most recent actuarial projections reflect an extremely critical situation in the System. These projections indicate that if the required

financing is not made viable, or the structural base of the systems is not reformed, it will collapse before the year 2030, which would make the Government to have to invest billions of dollars to keep up with the pensions of the retired persons.   This measure answers the need to give immediate attention to the precarious condition of the System, which jeopardizes the benefits acquired by the participants and pensioners of the System.

To such effects, a reform of the structural base of the system is contemplated.  The first stage shall consist in establishing a retirement savings program, which shall be known as the "Retirement Savings Account Program," based on a defined model of contributions.  All persons who enter the System on or after January 1, 2000, shall be compelled to participate in this new program.  Although the Savings Account Program shall apply prospectively, the employees who participate in the system as of December 31, 1999, shall be given the opportunity to avail themselves of the Savings Account Program, and waive the benefits they have enjoyed to that date.   The Savings Account Program shall be part of the System and shall be managed by the Employees Retirement System of the Government of Puerto Rico and its Instrumentalities Administration, and shall be under the supervision of the Board of Trustees of the System.  The amendments and changes promoted by this measure in the structure of the Retirement System do not have the purpose of affecting the tax treatment of the present participants of the System, nor that of future participants, since the legislative intent is to provide a tax treatment to all the participants of the Retirement Saving Program equal to that granted by the Puerto Rico Internal Revenue Code of 1994, as amended, and the Retirement System Act, to the other government employees who shall continue to participate under the provisions of the System.

**BE IT ENACTED BY THE LEGISLATURE OF PUERTO RICO:**

Section 1.—The Title of Act No. 447 of May 15, 1951, as amended, is hereby amended to read as follows:

"To establish a retirement system and other benefits for officials and employees of the Government of Puerto Rico and its Instrumentalities; the members and employees of the Legislature, the officials and employees of every public enterprise, and of every municipality; provide what is needed for the financing of said system; and establish a retirement savings account program."

Section 2.—Chapter 1 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"CHAPTER 1.—CREATION OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO AND ITS INSTRUMENTALITIES.—"

Section 3.—The last paragraph of Section 1 is hereby amended, and said Section renumbered as Section 1-101 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 1-101.—Employees Retirement System.—Creation:  Effective Dates and Application; Coordination with Social Security.—

...

As of the effective date fixed in the modification of the Agreement signed between the Agency in Charge, the Secretary of Health and the Secretary of Education, pursuant to the provisions of Act No. 396 of May 12, 1952, as amended, the benefits of Chapter 2 of this Act shall be coordinated with the benefits of Title II of the United States Social Security Act.  In no case shall the combined payments of annuities of the Social Security and the

Retirement System under Chapter 2 of this Act be less than the annuity that would have corresponded to the participant of the System under Chapter 2, pursuant to the provisions of this Act.  Retirement benefits provided under Chapter 3 of this Act shall not be coordinated with the benefits of Title II of the United States Social Security Act."

Section 4.—A new Section 1-102 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 1-102.—Retirement Benefits for Employees of the System.—

This Act shall consist of four chapters.  Chapter 1 shall contain the provisions related to the creation of the System.  Chapter 2 shall contain the provisions related to the retirement benefits program defined for the employees who become a part of the System prior to January 1, 2000.  Those employees who become a part of the system prior to January 2000, shall only enjoy the benefits provided in Chapters 2 and 4 and shall not be entitled to any other benefit provided by this Act, unless, pursuant to the provisions of Section 3-102 of this Act, they choose to participate in the Retirement Savings Account Program.  Chapter 3 shall contain the provisions related to the Retirement Savings Account Program.  The participants of the Retirement Savings Account Program shall only enjoy the benefits provided in Chapters 3 and 4 of this Act, and shall not be entitled to any other benefit provided by this Act. Chapter 4 shall contain the provisions related to the administration of the System and the investment of the System's funds."

Section 5.—Section 2 is hereby renumbered as Section 1-103 of Act No. 447 of May 15, 1951, as amended.

Section 6.—Paragraphs 12, 13, and 26 are amended; new paragraphs 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37 and 38 are added; and paragraph 27 is

renumbered as paragraph 39 of Section 3, and is hereby renumbered as Section 1-104 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 1-104.—Definitions.—

The following terms and phrases, as used in this Act, shall have the meaning stated below, except when the context clearly indicates another meaning:

...

'Prior Services' shall mean any service that, prior to the effective date of the System, a participant has rendered as an employee, and for which he/she shall receive the corresponding credit pursuant to Section 1-106 of this Act. It shall also mean every creditable service under subsection E of Section 1-106 of this Act rendered by a participant at any time, regardless of the date of his/her enrollment in the System.

'Subsequent Services' shall mean every service from said effective date of the System rendered as an employee, as provided in Section 1-106 of this Act.

…

'Superseded Pension Funds' shall mean any pension fund or plan constituted or in operation as provided in the various Acts listed in Section 1-103 of this Act.

…

'Program' shall mean the Retirement Savings Account Program established under the System pursuant to the provisions of Chapter 3 of this Act.

'Initial Transfer Balance' shall mean the individual contributions plus the accrued interest of the participant of the Program under the System or any other retirement system of the employer that are transferred to the Program.

'Fifty-percent (50%) Joint and Survivorship Annuity Contract' shall mean a non-cancelable annuity contract issued by an insurance company authorized by the Insurance Commissioner of Puerto Rico to conduct business in Puerto Rico, under which the insurance company shall make equal monthly payments during the life of the participant of the Program, and after his/her death, when the surviving spouse reaches the age of sixty (60) and until his/her death, the insurance company shall pay an amount each month equal to fifty percent (50%) of the monthly payment that the participant received when living.

'Life Annuity Contract' shall mean a non-cancelable annuity contract that is issued by an insurance company authorized by the Insurance Commissioner of Puerto Rico to conduct business in Puerto Rico, under which the insurance company shall make equal monthly payments during the life of the participant of the Program.

'Surviving Spouse' shall mean the person who is married to the participant of the Program when the separation from Service occurs and who survives the participant.

'Savings Account' shall mean the retirement saving account established and maintained under Section 3-103 of this Act for each participant of the Program.

'Normal Date of Retirement' shall mean under Chapter 3 of this Act:

(a)     General Rule.—The first day of the month that coincides with or is subsequent to the date that the participant of the Program reaches the age of sixty (60), except as provided in subsection (b) of this paragraph.

(b)     Police Officers and Firefighters.—In the case of members of the Puerto Rico Police and the Puerto Rico Firefighters Corps, it shall

mean the first day of the month that coincides with, or is subsequent to the date that the Participant reaches the age of fifty-five (55), years.

'Transfer Option' shall mean the choice to participate in the Program pursuant to Section 3-102 of this Act by each participant of the System who is an employee as of December 31, 1999, or by each employee who is a member of an employer's retirement system as of December 31, 1999, and who subsequent to this date becomes a participant of the System.

'Participant of the Program' shall mean every person for whom the Administrator maintains an account under the Retirement Savings Account Program pursuant to the provisions of Section 3 of this Act.

'Investment Yield' shall mean the investment yield that shall be credited to the savings account of the participant of the Program pursuant to Section 3-107(a)(3) of this Act.

'System' shall mean the Employees Retirement System of the Government of Puerto Rico and its Instrumentalities.

'Totally and Permanently Disabled' shall mean, for the purposes of Section 3 of this Act, being totally and permanently disabled as determined by the Social Security Administration.  In the case of those employees who are not covered by the Social Security Act, the Administrator, or the person designated by him/her, shall determine whether the person is disabled.

…"

Section 7.—Subsection (B) of Section 4 is amended, and said Section renumbered as Section 1-105 of Act No. 447 of May 15, 1951 as amended, to read as follows:

"Section 1-105.—Membership.—

(A)   …

(B)     Officials and regular employees of those public enterprises and municipalities who are participating employers of the System shall also be participating members of the system, subject to what is established in Section 1-110 of this Act."

Section 8.—Sections 5, 5A, 6B, and 6C are hereby renumbered as Sections 1-106, 1-107, 1-108 and 1-109, respectively, of Act No. 447 of May 15, 1951, as amended.

Section 9.—Subsection (c) of Section 22 is hereby amended, and said Section renumbered as Section 1-110 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 1-110.—Participation of Public Enterprises and Municipalities.—

(a)     …

(c)     For the purposes of Chapter 2 of this Act, the Administrator, pursuant to the procedure established in Section 2-116 of this Act, shall determine the rates of contributions or equivalent amounts which the public enterprises and municipalities shall contribute as employers.  For the purposes of Chapter 2 of this Act, the Administrator may fix an employer contribution rate for a corporation that is lower than the maximum required to cover the total cost of its obligations as an employer, but if said rate were greater than 9.275 percent, the minimum rate to be paid shall be 9.275 percent.

(d)     …"

Section 10.—Chapter 2 is hereby added to Act No. 451 of May 15, 1951, as amended.

"CHAPTER 2.—DEFINED RETIREMENT BENEFITS PROGRAM."

Section 11.—Sections 6, 6A, and 6D are hereby renumbered as Sections 2-101, 2-102 and 2-103, respectively, of Act No. 447 of May 15, 1951, as amended.

Section 12.—The first paragraph of Section 6E is hereby amended, and said Section renumbered as Section 2-104 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-104.—Periodic Increase of Pensions.—

Commencing January 1, 1992, and subsequently, every three (3) years, all annuities paid under this Act for age, years of service, or disability that are in effect on that date and which have been received for at least three (3) years before, shall be increased by three percent (3%). In years after 1992, the triennial increase shall be subject to there being a favorable recommendation of the Actuary of the System and to compliance of the provisions of Section 4-101 of this Act, with regard to the financing of the increase. Upon compliance of these requirements, the Board of Trustees shall submit the increase to the Legislature of Puerto Rico for its approval.

…"

Section 13.—Section 7 of Act No. 447 of May 15, 1951, as amended, is hereby repealed.

Section 14.—Section 8 is hereby renumbered as Section 2-105 of Act No. 447 of May 15, 1952[sic], as amended.

Section 15.—Section 8-A is hereby amended and renumbered as Section 2-106 of Act No. 447 of May 15, 1981[sic], as amended, to read as follows:

"Section 2-106.—Coordination of the Transferred Annuity with Social Security Benefits.—

Any participant who opts for a transferred annuity after the date of coordination with Social Security, and whose annuity is recomputed pursuant to the provisions of subsection E of Section 2-101 upon reaching the age of 65, and becomes fully insured and is thus eligible for Social Security benefits, shall have his/her transferred annuity recomputed on the basis of the resulting recomputed retirement annuity.  A new transferred retirement annuity benefit shall be established in this case in harmony with the reduction of the annuity resulting from the application of the provisions of said Section."

Section 16.—Subsection (a) of Section 9 is hereby amended, and said Section renumbered as Section 2-107 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-107.—Occupational Disability Annuity.—

Any participant who, as a result of a disability that originated as a result of his/her employment and arises during its course, is rendered disabled for service, shall be entitled to receive an occupational disability annuity, provided that:

(a)    As provided in Section 2-111 of this Act, sufficient medical evidence is received with regard to the mental or physical disability of the participant pursuant to normally accepted criteria in the disability compensation field fixed by the Administrator through Regulations;

(b)    …"

Section 17.—Section 9A is hereby amended and renumbered as Section 2-108 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-108.—Coordination of Disability Annuity with Social Security Benefits.—

Any participant who is receiving an occupational disability annuity, shall receive a recomputed annuity from the System, as of the date he/she reaches the age of 65 and acquires a fully insured status under the United States Social Security Act, and is eligible for primary benefits under said Act, based on the formula and subject to the conditions prescribed in subsection E of Section 2-101 of this Act."

Section 18.—The first and second paragraphs of Section 10 are hereby amended, and said Section renumbered as Section 2-109 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-109.—Non-Occupational Disability Annuity.—

Any participant who has at least ten (10) years of creditable service and becomes totally and permanently disabled for service due to a mental or physical condition not provoked by habitual vices, intemperance or misconduct; and that because of this condition, is unable to perform the duties of any office that the employer would have assigned to him/her in his service, or is unable to work in any type of paid employment for a salary at least equal to that he/she was earning, shall be entitled to a non-occupational disability annuity. The participant's retirement shall take place at his petition or request, or at the petition of the head of his/her department or office while said participant is in service, pursuant to the rules on disability annuities provided in Section 2-111 of this Act.

Upon retirement for disability, every participant shall receive an annuity equal to thirty (30) percent of the average salary for the first ten (10) years of creditable service, plus one (1) percent of the average salary for each year of creditable services in excess of ten (10) years. The annuity shall not exceed fifty (50) percent of the average salary in any case. If the participant entered the System for the first time after the first of April of 1990, upon retiring for disability he/she shall receive an annuity equal to twenty-five (25) percent of the average salary for the first ten years of creditable services plus one (1) percent of the average salary for each year of creditable services in excess of ten (10) years, but in no case shall the annuity exceed forty (40) percent of the average salary computed as established in Section 1-108 of this Act. In those cases of participants who as of December 31, 1951, were members of superseded pension systems, the non-occupational retirement annuity as of December 31, 1960, shall not be less than that which would have corresponded to him/her under the provisions of the superseded systems.

…"

Section 19.—Section 10A is hereby amended and renumbered as Section 2-110 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-110.—Coordination of Non-Occupational Disability Annuity with Social Security Benefits.—

Any participant who is receiving a non-occupational disability annuity from the System, as of the date he/she reaches the age of 65 and acquires a fully insured status under the United States Social Security Act and is eligible for the primary benefits of said Act, shall receive an annuity recomputed on the basis of the formula and subject to the conditions prescribed in Subsection E of Section 2-101 of this Act, without said recomputed annuity exceeding fifty (50) percent of the average compensation."

Section 20.—Section 11 is hereby renumbered as Section 2-111 of Act No. 447 of May 15, 1951, as amended.

Section 21.—The third paragraph of Section 12 is hereby amended, and said Section renumbered as Section 2-112 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-112.—Annuity in Case of Occupational Death.—

…

If the wife and children under eighteen (18) years of age or children who are studying do not survive the participant, the payments shall be made as provided in the first paragraph of Section 2-113 of this Act. If the sum of the payments made to a widow or children were less than the total payments provided in the first paragraph of Section 2-113 of this Act, the remainder shall be paid to the heirs of the deceased participant."

Section 22.—Subsection (a) and the first paragraph of subsection (b) of Section 13 are hereby amended, and said Section renumbered as Section 2-113 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-113.—Death Payments; Active Participants; Retired Participants.—

Upon the death of a participant while rendering services or while enjoying a regular leave with pay or authorized sick or disability leave, or for studying, the following shall be paid to the person or persons that he/she has designated in a written order duly recognized and filed with the Administrator, or to his heirs, if no such designation has been made:

(a)     Contributions accrued in behalf of the participant up to his/her date of death. These contributions shall not be reimbursed in the case of a   participant who dies for causes that are compensated under the Work Accident Compensation Act, except as provided

in Section 2-112 of this Act.   Contributions shall not be reimbursed, either, when the beneficiaries of the deceased employee are granted a pension under special Acts.

(b)   Death benefits provided with contributions made by the employer if within a period of twelve (12) months after the date of his/her death, the participant had been receiving a salary, unless he/she leaves dependents entitled to receive an annuity for the occupational death of the participant as provided in Section 2-112 of this Act.  This death benefit shall be equal to the annual salary rate in effect on the date of death, if the employee is in active service, or on the date that he/she last rendered services. In the case of new participants who enter the System for the first time after April 1, 1990, the death benefit shall be equal to one hundred (100) percent of the salary in effect on the date of the death, if the employee is in active service, or on the last date that he/she rendered services.

...."

Section 23.—Section 14 is hereby renumbered as Section 2-114 of Act No. 447 of May 15, 1951, as amended.

Section 24.—Section 20 is hereby renumbered as Section 2-115 of Act No. 447 of May 15, 1951, as amended.

Section 25.—Subclause (ii) of clause (2) of subsection (c) of Section 21 is hereby amended, and said Section renumbered as Section 2-116 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-116.—Employer Contribution.—

(a)   ...

(c)   The Administrator shall determine, annually, at the beginning of the fiscal year, the percent of the monthly contribution required to cover the costs of the System, as follows:

(1)   …

(2)   The following shall be subtracted from the above total:

(i)   …

(ii)   the present value of the future employee contributions, calculated on the basis of the rates of the contributions established by Section 2-115 of this Act and the actuarial guidelines, including a projection of the salaries, used in the determination of the present value of the total obligations for benefits.

(3)   …"

Section 26.—Section 22A is hereby amended and renumbered as Section 2-117 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-117.—Payment from the State Insurance Fund, the Industrial Commission and the Isabela Irrigation System.—

The State Insurance Fund, the Industrial Commission and the Isabela Irrigation System shall pay the contributions related to its employees from its general funds, pursuant to the provisions of Section 2-116 of this Act."

Section 27.—The third and fourth paragraphs of Section 23 are hereby amended, and said Section renumbered as Section 2-118 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-118.—Exchange of Rights.—

…

With regard to every person who, upon becoming a member of this System, would have accrued certain contributions and creditable services in an independent retirement plan or pension fund maintained by any employer covered by this Act, the Administrator is hereby authorized to receive the accrued contributions made by the participant from said plan or independent fund, and to register these contributions in behalf of the participant in this System. The Administrator shall also register, for the purposes of this System, the subsequent services of said participant, for the contribution periods accrued and hereby transferred, as well as the prior services subject to the provisions of Section 1-106 of this Act. If any contributions accrued and transferred to this System as indicated, exceed the amount that the employee would have accrued if he/she had been a member of this System for a period equal to that of his participation in the other pension or retirement plan, an adjustment shall be made through which the employee shall receive the corresponding reimbursement of whatever excess there is of his/her contributions. But, if the amount equal to the accrued contributions were less than said amount, the participant shall make the corresponding additional payment according to the rules prescribed to such effects by the Board.

Every participant who has been a member of an independent retirement plan or pension fund, and has lost his/her rights thereunder upon accepting the reimbursement of his /her contributions, or upon waiving any other benefits, shall not be entitled to the validation in this System of neither subsequent nor prior services corresponding to the period for which he would have lost his rights, upon receiving the said reimbursement. If said participant wishes to

validate his/her creditable services for the period of services rendered as a participant of said independent retirement plan or pension fund, he/she shall be required to contribute to this System, along with the corresponding interest at the prescribed rates, the amounts that he/she would have paid to this System, or any superseded pension fund, as defined in this Act, during said period of services, subject to the provisions of Section 1-106 of this Act."

Section 28.—Section 24 is hereby amended and renumbered as Section 2-119 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 2-119.—Benefits as Personal Rights, Exemptions.—

The right to retirement or disability annuities, death benefits, or any other benefits pursuant to the provisions of this Act, regardless of their designation, as well as the collection of reimbursements, is a personal right of the recipient thereof, and the transfer or assignment of said benefits and reimbursements, or any part thereof, shall be null, except as provided in this Act.  None of said pensions, benefits or reimbursements may be claimed for the payment of debts contracted by the recipients, except the loans contracted by participants of the Savings and Credit Unions, which shall encumber up to twenty-five percent (25%) of the pension, benefit, or reimbursement of the participant, and also excepting what is provided in Section 4-105 of this Act, nor may they be garnished nor impaired by any judicial proceeding.  However, the amounts that were accredited to a member of the System through contributions made through wage or salary withholdings, including interest, and pursuant to the provisions of this Act or the provisions of any law regarding superseded pension funds, which amounts are subject to reimbursement pursuant to the conditions provided herein, may be designated by the participant as security for any loan requested by him/her from any fund, association, public enterprise, or any other lending agency created by an

employer to make loans to its employees, or by a Savings and Credit Union created to make loans to its members, and non-members, up to twenty-five percent (25%) of said amount.  Said amounts may be withheld by the Secretary of the Treasury, or garnished through the pertinent judicial proceeding, to be applied to the payment of any loan made by any of these agencies and by Savings and Credit Unions, solely in those cases that the participant has been permanently separated from the employer's service without having made the pertinent arrangements for the repayment of said loan, to the satisfaction of said agency."

Section 29.—Section 25 is hereby renumbered as Section 2-120 of Act No. 447 of May 15, 1951, as amended.

Section 30.—A new Chapter 3 and Sections 3-101, 3-102, 3-103, 3-104, 3-105, 3-106, 3-107, 3-108, 3-109, 3-110, 3-111, and 3-112 are hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"CHAPTER 3.—RETIREMENT SAVINGS ACCOUNT PROGRAM.—

Section 3-101.—Creation of the Retirement Savings Account Program.—

(a) Creation of the Program.—A Retirement Savings Account Program is hereby created which consists in the establishment of a savings account for each participant of the System who becomes a part of said program as provided in this Chapter.  The contributions of each participant of the Program and the investment yield shall be credited to the savings account pursuant to Section 3-107 of this Chapter.  The benefits to be provided to each participant upon separation from the service, whether by retirement or otherwise, shall depend on the total accrued in the savings account.

(b)   Participants of the Program.—The following persons shall participate in the Program:

(1)   Every new employee who enters the System for the first time on or after January 1, 2000.

(2)   Every person who has been a participant of the System before January 1, 2000, has been separated from the service before, on, or after January 1, 2000, has received reimbursement of his/her contributions to the System pursuant to Section 2-114 of Chapter 2 of this Act, and after December 31, 1999, becomes an employee and a participant of the System.

(3)   Every person who is an employee and a participant of the System as of December 31, 1999, and avails him/herself of the transfer option granted by Section 3-102 of Chapter 3 of this Act.

(4)   Every person who is an employee and a member of an employer retirement system as of December 31, 1999, and after that date becomes a participant of the System and avails him/herself of the transfer option granted by Section 3-102 of Chapter 3 of this Act.

Section 3-102.—Transfer to the Program.—

(a)   Transfer to the Program.—Every employee who is a participant of the System as of December 31, 1999, and every employee who is a member of an employer retirement system as of December 31, 1999, and who after said date becomes a participant of the System, may choose to waive the benefits provided under this Act and any other Act that supplements this Act, and commences

his/her participation in the Program, effective January 1, 2000, or on the date he/she commences to participate in the System, respectively, as provided in this Section. The employee's determination to avail him/herself of the transfer option or not, is irrevocable.   The savings account of every employee who participates in this System, or who participates in any other employer system and chooses to change to the Program, shall be initially credited with the amounts provided in Section 3-107(a)(1) of this Chapter.

(b)   Notice of the Transfer Option.—The Administrator shall notify the employees who are participants of the System as of December 31, 1999, and every employee who is a member of an employer's retirement system as of December 31, 1999, and subsequently becomes a participant of the System, of the right to avail him/herself of the transfer option.  The notice must be made on the date, and contain such information that be established by the Board.

(c)   Exercise of the Transfer Option, Irrevocability.—Once the employees are notified as provided in subsection (b) of this Section, they shall inform the Administrator of their decision to exercise the transfer option granted by this Section or not, in the form, manner and on the date established by the Administrator.  It shall be construed that any persons not exercising the transfer option in the form, manner, and on the date the Administrator provides, have chosen not to avail themselves of the transfer option.

Section  3-103.—Establishing of Retirement Savings Accounts.—

The Administrator shall establish and maintain a savings account for each participant of the Program in the System, which shall be credited and debited pursuant to Sections 3-107 and 3-108 of this Chapter.

Section  3-104.—Contributions of the Participants of the Program.—

(a)    Contribution to the Account.—Every participant of the Program shall compulsorily have to contribute eight point two hundred and seventy-five percent (8.275%) of his/her salary while he/she is an employee.  In addition, every participant of the Program may voluntarily contribute an additional amount to his/her savings account which added to the compulsory contribution may not exceed ten percent (10%) of the annual salary of the participant of the Program.  These contributions shall be credited to the savings account of each participant of the Program, pursuant to Section 3-107 of this Chapter.

(b)    Voluntary Contribution for the Purchase of Long-Term Disability Insurance.—Every participant of the Program may voluntarily purchase the long-term disability insurance provided in Section 3-111 of this Chapter, for which he/she shall have to contribute such sums, fixed in dollars or a percent of the salary, that the Administrator, with the approval of the Board, determines that are needed to provide the long-term disability benefit.  The contributions made pursuant to this subsection may be credited against and will reduce the contributions that the participant of the Program is bound to pay to the Commonwealth of Puerto Rico Employees Association as provided in Section 8 of Act No. 133 of

June 28, 1966, as amended.  The contributions made under this subsection shall not be deposited in the savings account.

Section 3-105.—Employer Contributions under the Program.—

Every employer shall compulsorily contribute to the System a sum equal to nine point two hundred and seventy-five percent (9.275%) of the salary of each participant of the Program as long as the participant is an employee. These contributions shall be deposited in the System to increase the level of the assets of the System, reduce the actuarial deficit, and enable the System to meet its future obligations.

Section 3-106.—Obligations of the Employer, Sanctions.—

Every employer who is bound to deduct and withhold the contributions of the participants of the Program and make contributions to the System pursuant to the provisions of this Chapter, shall have the following obligations:

(a)  Obligation to Deduct and Withhold the Contributions of the Participants and Remit the Employer and Participants Contributions to the System.—Every employer of a participant of the Program shall deduct and withhold the contributions provided in Section 3-104 from the salary of the participant.  The Secretary of the Treasury, or any paymaster of the employer, is hereby authorized to make the deductions, even if the salary to be paid in cash to the participant as a result of these deductions is reduced to less than any minimum prescribed by Law.  The contributions of the participants of the Program shall be remitted by the employer along with the employer contributions that the employer is bound to make to the System, on or before the fifteenth (15th) day of the month following the date the withholding was made, as provided

in Section 3-105.  The Administrator shall establish the form and manner that the contributions shall be remitted.

(b)  Liability for the Contributions.—Every employer that is bound to deduct and withhold the contributions of the participants of the Program and to remit the contributions of the participants and the employer provided in this Chapter, shall be liable to the System for the full payment of said contributions. If the employer should fail to make the deduction or remit the contributions, the sums that should have been withheld and the unpaid contributions shall be collected from the employer by the Administrator, following the procedure established in Section 4-109 of this Act.

(c)  Interest on Indebted Contributions.—Every employer who does not remit his/her contributions and those of the participants of the Program within the established term, shall be liable to the System for the payment of interest on the indebted contribution from the day the contribution should have been remitted to the System until the date that the contribution is remitted, at the rate determined by the Board.  Interest owed by an employer shall be collected by the Administrator following the procedure established in Section 4-109 of this Act.

(d)  Crediting of Investment Yield.—If an employer does not remit the contributions of the participants of the Program within the established term, the Administrator shall credit the investment yield to the account of the participants of the Program affected thereby, as of the date set for the employer to remit the contributions, pursuant to Section 3-107(a)(3) of this Chapter.

Section 3-107.—Credits to Savings Account, Investment Yield, and Rights to the Savings Account.—

(a)    Credits.—The Administrator shall credit the following items to the savings account of each participant of the Program:

(1)    Initial Transfer Balance.—In the case of participants of the System or of employees participating in any other employer retirement system who availed themselves of the transfer option granted by this Act, the initial transfer balance that is transferred to the Program when the savings account is established, shall be credited.

(2)    Contribution of the Participant to the Program.—The contributions made by the participant of the Program as required by this Act shall be credited once they are remitted to the System by the employer.

(3)    Investment Yield.—The investment yield shall be credited at the close of each semester of each fiscal year pursuant to the investment option or combination of investment options selected by the participant of the Program, pursuant to subsection (b) of this Section.  The investment yield shall be computed on the last business day of each semester of the fiscal year, on the average monthly balance in the savings account of the participant of the Program during the semester in question.

(b)    Investment Options of the Savings Account of the Participant.—

(1)    Selection of Investment.—Every new participant of the Program shall have to select the investment to be applied to his/her savings account, in multiples of ten percent (10%),

from among the options or combination thereof provided in clause (3) of this subsection.  The initial selection must be made in the form, manner and on the date prescribed by the Administrator.

(2)    Changes of Selection.—The participant of the Program may change the investment selection to be applied to his/her savings account, in multiples of ten percent (10%), to any other investment option or combination thereof provided in clause (3) of this subsection, once during each fiscal year. The change of selection must be made in the form, manner and on the date prescribed by the Administrator and shall be effective on the first day of the month of the next fiscal year.

(3)    Investment Options.—The participants of the Program may opt for the yield of his/her savings account to be determined from among the following investment options or combination of investment options:

(i)     Fixed Income.—Under this option, the yield shall be equal to the average monthly yield of the Two-Year Constant Maturity Treasuries during each semester of each fiscal year.

(ii)    System's Investment Portfolio.—Under this option, the yield shall be equal to seventy-five percent (75%) of the investment portfolio yield of the System during each semester of each fiscal year minus management fees such as, but not limited to, fees payable to administrators of the portfolio.

(iii)  Additional Investment Options.—The Board may establish additional investment options through regulations, an order or a resolution.

(c)  Retirement Savings Account Rights.—

The participants of the Program shall always have one hundred percent (100%) vested rights on the initial transfer balance provided in clause (1) of subsection (a) of this Section, their contributions to the savings account, and the investment option yield provided in clause (3) of subsection (a) of this Section.

Section 3-108.—Debits to the Savings Account.—

The Administrator shall debit the savings account established for each participant of the Program for record keeping expenses and those sums used for the purchase of an annuity for the payment of benefits or to make a global distribution pursuant to Sections 3-109 and 3-110 of this Chapter.  Once the annuity is purchased or the total balance of the savings account is distributed, the account shall cease to exist.

Section 3-109.—Benefits on Separation from Service.—

(a)  Retirement Benefit.—Upon permanent separation from service, when the separation is not due to death or total and permanent disability, the balance in the savings account of the participant of the Program shall be distributed to the participant by the Administrator in the form and on the date provided in subsections (b) and (c) of this Section, respectively.

(b)  Form of Payment.—

(1)  Married Participants of the Program.—If the participant of the Program is married as of the date of his/her permanent

separation from service, the Administrator shall use the balance in the savings account for the purchase of a fifty-percent (50%) joint and survivorship annuity contract. The Administrator may give the participant of the Program the option to choose from among several insurance companies authorized by the Insurance Commissioner to conduct business in Puerto Rico, for the purchase of the fifty-percent (50%) joint and survivorship annuity contract.

(2)    Single Participants of the Program.—If the participant of the Program is not married as of the date of his/her permanent separation from service, the Administrator shall use the balance in the savings account of the participant to purchase a life annuity contract.  The Administrator may give the participant of the Program the option to choose from among several insurance companies authorized by the Commissioner of Insurance to conduct business in Puerto Rico, for the purchase of the life annuity contract.

(3)    Savings Accounts of Less Than Ten Thousand Dollars ($10,000).—If the balance of the savings account of the participant of the Program is less than ten thousand dollars ($10,000) at the time of his/her permanent separation from service, the Administrator shall distribute the balance to the participant in a single lump sum.

(4)    Payment Options.—The Board may establish payment options through regulations, orders or resolutions.  The selection of any payment option by a participant of the Program who is married at the time of his/her permanent

separation from service, must be consented to by the spouse of the participant of the Program, in writing, before a representative of the Administrator or a Notary Public.

(c)     Purchase Date of the Annuity Contract and Commencement of Distribution.—The purchase of any annuity contract provided in this Section, or by the Board pursuant to clause (4) of subsection (b) of this Section, shall be made after the normal retirement date of the participant of the Program, but not later than sixty (60) days from that date.  The monthly payments provided in this Section or under any other option provided by the Board pursuant to clause (4) of subsection (b) of this Section, shall commence after the normal retirement date of the participant of the Program, but not later than ninety (90) days from that date.  The distribution of the balance of the savings account of the participant of the Program, in one lump sum, shall be made not later than sixty (60) days from the date the participant is permanently separated from service.

Section 3-110.—Benefits Upon Separation from Service by Death, Disability or Terminal Illness.—

(a)     Separation from Service by Death.—The balance in the savings account of every participant of the Program who dies shall be paid in one single lump sum to the person or persons that the participant has designated as beneficiary in the form and manner established by the Administrator.  In the event that the participant had not designated any person as his/her beneficiary, the balance of the savings account shall be paid in a single lump sum to the

persons entitled thereto under the applicable law provisions on community property, joint ownership, and estate.

(b)   Separation from Service by Disability or Terminal Illness.—The balance in the savings account of every participant of the Program who is permanently separated from service due to total and permanent disability as provided in this Act, who is separated from service due to disability pursuant to Act No. 127 of June 27, 1958, as amended, or due to terminal illness, as determined by the Administrator, shall be distributed to the participant by the Administrator, at the option of the participant, in a lump sum, or through the purchase of an annuity contract, or any other optional form of payment pursuant to Section 3-109 of this Act.

(c)   Date of Purchase of the Annuity Contract and Commencement of Distribution.—The purchase of any annuity contract provided in this Section shall be made after the separation from service due to total and permanent disability, disability under Act No. 127 of June 27, 1958, as amended, or terminal illness, but not later than sixty (60) days from that date.  Monthly payments provided in this Section shall commence after the separation from service due to total and permanent disability, but not later than ninety (90) days from that date.  The single lump sum distribution of the savings account of the participant of the Program shall be made not later than sixty (60) days from the date the participant of the Program is permanently separated from service.

Section 3-111.—Long-Term Disability Insurance.—

The Administrator, with the approval of the Board, shall establish a long-term disability benefits program, which shall provide an annuity in the

event of total and permanent disability.  Disability benefits must be provided through one or more disability insurance contracts with one or more insurance companies authorized by the Insurance Commissioner of Puerto Rico to conduct business in Puerto Rico.  The determination as to whether a person is totally and permanently disabled, shall be made by the insurance company that issues the insurance policy covering the person.  All the participants of the Program who are employees may avail themselves of the long-term disability benefits program in the manner and form established by the Administrator.

Section  3-112.—Application of the Uniform Securities Act.—

The interest of any participant in the Program shall not constitute a security for the purposes of Act No. 60 of June 18, 1963, as amended, known as the Uniform Securities Act."

Section 31.—A new Chapter 4 is hereby added to Act No. 447 of May 15, 1951, as amended, to read as follows:

"CHAPTER  4.— SYSTEM ADMINISTRATION AND
INVESTMENT.—"

Section 32.—Sections  15,  16,  and  17  are  hereby  renumbered  as Sections  4-101,  4-102,  and  4-103  of Act No.  447  of  May  15,  1951,  as amended.

Section 33.—The second paragraph of Section 18 is hereby amended, and said Section renumbered as Section 4-104 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 4-104.—Treasurer and Attorney of the System.—

The Secretary of the Treasury shall be the treasurer of the System, and shall:

(a)    …

The Secretary of Justice of Puerto Rico may represent the System in any judicial proceedings except in any kind of suits, trials, actions and proceedings related to the investments made by the Administrator as specified in Sections 4-105, 4-106, 4-107, and 4-108 of this Act.

…"

Section 34.—The introductory paragraph of subsection (a) of Section 19 is hereby amended, and said Section renumbered as Section 4-105 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 4-105.—Investment and Reinvestment of Reserves.—

(a)     *Definitions*.—For the purposes of this Section and Sections 4-106, 4-107, and 4-108 of this Act, the following terms shall have the meaning stated below:

    (1)     …"

Section 35.—Subclause (3) of clause (a) of subsection (1) of Section 19A is hereby amended, and said Section renumbered as Section 4-106 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 4-106.—Investment of System Funds in Loans to Employees.—

(1)     …

    (a)     …

        (1)     …

        (3)     The loan shall be secured by a first mortgage on the real property for whose acquisition, extension or refinancing the loan was made, for the contributions accrued and to be accrued in behalf of the borrower in the System, and for the amount that may correspond to the heirs or the person the borrower

would have designated as a beneficiary in case of the death of the borrower, as provided in Sections 2-113 and 2-114 or Section 3-110 of this Act. Said contributions and amounts may be applied by the Administrator to the payment of any of the participant's debts with the System.

    (4) …

   (b) …"

Section 36.—Sections 19B, 19C, 21A, 24A, 25A, 25A (second) and 26 are hereby renumbered as Sections 4-107, 4-108, 4-109, 4-110, 4-111, 4-112, and 4-113, respectively, of Act No. 447 of May 15, 1951, as amended.

Section 37.—Section 27 is hereby amended and renumbered as Section 4-114 of Act No. 447 of May 15, 1951, as amended, to read as follows:

"Section 4-114.—Statutory Intent—Repeal.—

Any Act or part thereof contravening this Act is hereby repealed. This Act does not have the purpose of repealing the diverse Acts cited in Section 1-103 of this Act. Inasmuch as these Acts are not in contention with the provisions of this Act, and up to the point that they are applicable with respect to the vested rights and benefits payable under the said Acts, these shall continue in effect after the effective date of this Act."

Section 38.—This Act shall take effect immediately after its approval.

February  5, 2001

Dynorah R. Requena-Gallego, Esq., Acting Director of the Office of Legislative Services of the Legislature of Puerto Rico, hereby certifies to the Secretary of State that she has duly compared the English and Spanish texts of Act No. 305 (S.B. 1685) (Reconsidered) of the 5th Session of the 14th Legislature of Puerto Rico, entitled:

**AN ACT** to amend the Title; add Chapter 1; amend the last paragraph of Section 1, and renumber said Section as Section 1-101; add a new Section 1-102; to renumber Section 2 as Section 1-103; amend paragraphs 12, 13 and 26 and add new paragraphs 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37 and 38 and renumber paragraph 27 as paragraph 39 of Section 3, and renumber said Section as Section 1-104; amend subsection (B) of Section 4 and renumber said Section as Section 1-105; etc.,

and finds the same are complete, true and correct versions of each other.

Dynorah R. Requena-Gallego