Hearing Date: January 16, 2019 at 9:30 a.m. (Atlantic Standard Time)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>    Debtors. | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>v.<br><br>BETTINA WHYTE,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>    Defendant. | Adv. Proc. No. 17-00257 |

---

[1] The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

**THE OFFICIAL COMMITTEE OF RETIRED EMPLOYEES OF
THE COMMONWEALTH OF PUERTO RICO'S
LIMITED OBJECTION TO THE COMMONWEALTH
OF PUERTO RICO'S MOTION PURSUANT TO BANKRUPTCY
RULE 9019 FOR ORDER APPROVING SETTLEMENT BETWEEN
COMMONWEALTH OF PUERTO RICO AND PUERTO RICO
<u>SALES TAX FINANCING CORPORATION</u>**

## **TABLE OF CONTENTS**

**Page**

Preliminary Statement .................................................................................................................... 1

Limited Objection .......................................................................................................................... 3

    A.    The Settlement Should Be Conditioned On Subjecting (At a Minimum) Any Additional Securities To Puerto Rico's Constitutional Debt Limit. ..................................................... 3

    B.    The Retiree Committee Requires Additional Information To Evaluate The Settlement.... 5

Conclusion ...................................................................................................................................... 8

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City Sanitation, LLC v. Allied Waste Servs. Of Mass, LLC (In re Am. Cartage, Inc.)*,
   656 F.3d 82 (1st Cir. 2011) .................................................................................................5

*In re C.P. del Caribe, Inc.*,
   140 B.R. 320 (Bankr. D.P.R. 1992) .................................................................................3, 5

*In re Capmark Financial Group, Inc.*,
   438 B.R. 471 (Bankr. D. Del. 2010) ....................................................................................5

*In re Delta Air Lines, Inc.*,
   374 B.R. 516 (S.D.N.Y. 2007) .............................................................................................5

*In re Glieberman*,
   2017 WL 4681805 (E.D. Mich. Oct. 11, 2017) ...................................................................5

*Jeffrey v. Desmond*,
   70 F.3d 183 (1st Cir. 1995) ...............................................................................................3, 5

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") respectfully files this limited objection (the "**Limited Objection**") to the *Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (the "**Settlement Motion**") [Dkt. 4067].[2] In support of this Limited Objection, the Retiree Committee states as follows:

### Preliminary Statement

1. The Retiree Committee represents the interests of approximately 167,000 retired government workers, holding at least $58 billion in claims relating to their pensions. As the representative of the largest—and truly public—group of creditors in the Title III Cases, the Retiree Committee is singularly focused on ensuring that Puerto Rico's restructuring delivers long-term economic stability for the Island and its pensioners. With this objective in mind, the Retiree Committee recognizes that a resolution of the dispute between the Commonwealth and COFINA over the ownership of the Pledged Sales Taxes is a critical component of a successful restructuring for Puerto Rico. Although the Retiree Committee previously expressed its support of the June 5, 2018 Agreement in Principle between the Commonwealth Agent and the COFINA Agent, the Settlement now proposed by the Oversight Board does not include a key component of the Agreement in Principle, and is supported by a new fiscal plan that has not been subject to creditor diligence. For these two reasons, the Retiree Committee does not support the Settlement at this time and in its present form.

---

[2] Capitalized terms not defined herein have the meanings set forth in the Settlement Motion.

2. ***First,*** a critical term of the Agreement in Principle was that any "Additional Securities" that the Commonwealth subsequently caused COFINA to issue, using the Commonwealth Portion of the COFINA Pledged Taxes, must be included for purposes of calculating the Commonwealth's debt limitation under Article VI, Section 2 of the Puerto Rico Constitution. (Settlement Motion, Ex. C at Ex. A, p. 5.) Neither the Settlement nor the Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation [Dkt. 4072] (the "**COFINA Plan**") include this safeguard.[3] The Retiree Committee is concerned that permitting the Settlement to proceed without this vital negotiated "check" on future COFINA debt issuances and overall Commonwealth indebtedness is dangerously short-sighted, as it could lead to the same problem that contributed to the Island's current financial distress—an unsustainable debt burden. Indeed, it may be wise and appropriate as part of the Settlement to also include a portion of the restructured COFINA securities in the debt that is subject to the Constitutional debt limit.

3. ***Second,*** the Agreement in Principle was negotiated against the backdrop of the May 30, 2018 fiscal plan (the "**May 30 Fiscal Plan**"). That fiscal plan's projections supported the economics of the proposed settlement. But as the Oversight Board acknowledges, the fiscal plan has "evolved" over time and will "continue to evolve." (Settlement Motion at ¶ 15, n.6.) The May 30 Fiscal Plan has been twice replaced, first by the June 29, 2018 fiscal plan (the "**June 29 Fiscal Plan**") that, as the Commonwealth Agent put it, would render "a settlement along the lines of the Agreement in Principle neither feasible nor desirable" [Dkt. 4057 at ¶ 2], and second by the October 23, 2018 fiscal plan (the "**October 23 Fiscal Plan**"). In light of the turbulence in the Commonwealth's fiscal plan projections, and the nexus between those projections and the desirability and prudence of the Settlement, the Retiree Committee should be afforded the

---

[3] The Settlement differs from the Agreement in Principle in other respects, and the Retiree Committee reserves its right to raise objections on those grounds.

2

opportunity to take targeted discovery before this Court hears the Settlement Motion.

### Limited Objection

4.  Courts in the First Circuit consider several factors to determine the reasonableness of a proposed settlement, including "the paramount interest of the creditors and a proper deference to their reasonable views in the premise." *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also In re C.P. del Caribe, Inc.*, 140 B.R. 320, 325 (Bankr. D.P.R. 1992) ("The court should emphasize the paramount interests of the creditors and give proper deference to their reasonable objections."). As the representative of the largest class of creditors in the Commonwealth's Title III Cases, the Retiree Committee submits that its limited objections to the Settlement should be given substantial deference.

### A. The Settlement Should Be Conditioned On Subjecting (At a Minimum) Any Additional Securities To Puerto Rico's Constitutional Debt Limit.

5.  The Agreement in Principle included important restrictions on the Commonwealth's ability to use the Commonwealth Portion of the Pledged Sales Taxes to cause COFINA to issue future debt securities ("**Additional Securities**"). (Settlement Motion, Ex. C at Ex. A, p. 5.) Certain of those restrictions benefited existing COFINA bondholders by making any Additional Securities subordinate to the interests of the holders of restructured COFINA securities. Importantly, the Agreement in Principle's restrictions also included a significant protection for the Commonwealth and its creditors: it required that any "such Additional Securities are included for purposes of calculating the Commonwealth's debt limitation under Article VI, Section 2 of the Puerto Rico Constitution." (*Id.*)

6.  Like the Agreement in Principle, the COFINA Plan contemplates the issuance of Additional Securities. (COFINA Plan, §§1.190; 16.3.) To protect the existing COFINA bondholders, the COFINA Plan makes clear that these new securities—defined in the COFINA

3

Plan as "Subordinated Lien Bonds"—are "secured by subordinated second or more junior Lien on the COFINA Pledged Taxes and which, in all respects, shall be subordinated in respect of priority, payment funding, and remedies to the COFINA Bonds and the COFINA Parity Bonds." (*Id.* at §1.190.) Section 16.3 of the COFINA Plan includes an "Additional Bonds Test," further protecting the interests of existing COFINA Bondholders.

7. But unlike the Agreement in Principle, the COFINA Plan fails to include a requirement that any new securities be subject to Puerto Rico's Constitutional debt limit. Without this safeguard, the Retiree Committee cannot support the Settlement, as it could invite the Commonwealth to repeat history and once again evade the Constitutional debt limit that is intended to impose fiscal discipline on the Commonwealth. These concerns are validated by the Independent Investigator's recent recommendations.[4] The Independent Investigator examined whether Puerto Rico's interpretation and application of the Constitutional debt limit contributed to its current financial distress. (Independent Investigator's Report at p. 253.) It recommended that, "in light of Puerto Rico's debt crisis," Puerto Rico consider "the methods pursuant to which Puerto Rico determines the types of debt servicing payments to be included within the Debt Limit Calculation." (*Id.* at 267.) Indeed, the Retiree Committee submits that it would be prudent to make both any newly issued securities *and* a portion of the restructured COFINA securities subject to the Constitutional debt limit.

8. In short, to protect the long-term interests of the Commonwealth's pensioners, the Settlement should be conditioned upon a requirement that any subsequent COFINA debt issued using the Commonwealth Portion of the Pledged Sales Taxes be subject to Puerto Rico's

---

[4] *See* https://drive.google.com/file/d/19-lauVo3w9MPS03xYVe0SWhQin-Q6FEf/view (the "**Independent Investigator's Report**") at pp. 252-267.

4

Constitutional debt limit, thus protecting the "paramount interest of the creditors." *Jeffrey*, 70 F.3d at 185 (1st Cir. 1995); *C.P. del Caribe, Inc.*, 140 B.R. at 325.

**B.  The Retiree Committee Requires Additional Information To Evaluate The Settlement.**

9.  Interested parties must have the opportunity to conduct discovery to evaluate the merits of a proposed settlement to give effect to the "paramount interest of creditors" factor. *See, e.g., In re Glieberman*, 2017 WL 4681805, at *8-9 (E.D. Mich. Oct. 11, 2017); *In re Capmark Financial Group Inc.*, 438 B.R. 471, 520 (Bankr. D. Del. 2010) (noting that the objecting party had the opportunity to conduct "extensive discovery" in finding that the paramount interests of creditors factor was satisfied); *In re Delta Air Lines, Inc.*, 374 B.R. 516, 526 (S.D.N.Y. 2007) (same). In *Glieberman*, the district court reversed a bankruptcy court's approval of a settlement motion because a key party was denied the opportunity to take discovery regarding the settlement, explaining: "the Bankruptcy Court could not properly consider the fourth [] factor (deference to the paramount interests of creditors), owing first to the Trustee's failure to disclose documents that informed its decisions on the proposed compromise, and then to the Bankruptcy Court's refusal to authorize discovery of the same." 2017 WL 4681805 at *8-9.

10.  The same rationale applies here. This Court should not approve the Settlement until the Retiree Committee is permitted to conduct discovery to evaluate the merits of the Settlement, in particular, whether in light of the Commonwealth's ever-changing fiscal plans, the Settlement is prudent and leaves the Commonwealth with a viable restructuring path. The Oversight Board cites *City Sanitation, LLC v. Allied Waste Servs. of Mass, LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 93 (1st Cir. 2011) to support the Settlement, quoting, "[s]ettling quickly for $12,000 allowed the trustee to distribute something to creditors." (Settlement Motion at ¶ 87.) But here, at least under the June 29 Fiscal Plan, "settling quickly" would have yielded *nothing* to the

5

Commonwealth's creditors. Given what is at stake in these cases, it is only appropriate for the Retiree Committee to take discovery to determine whether the October 23 Fiscal Plan actually corrects that course.

11. The Oversight Board admits that the fiscal plan has "evolved" over time and "will continue to evolve." (Settlement Motion at ¶ 15, n.6.) This is understandable. The devastation caused by the hurricanes and the uncertainty of the amount and timing of federal relief funds, among other factors, have caused dramatic swings in the Commonwealth's fiscal plans. But given the nexus between the fiscal plan's projections and the desirability of the Settlement, it is critical that creditors have reasonable opportunity to diligence the latest iteration of the fiscal plan. Illustrating the point, the Commonwealth Agent filed an urgent motion on October 17, 2018, in which it argued:

> [A]fter taking into account the COFINA debt service under the COFINA Settlement, the projected cash flows under the June 29, 2018 certified fiscal plan would reflect an approximate $28 billion (in nominal dollars) deficit for the Commonwealth and that deficit amount assumes that no **Commonwealth creditor would receive a plan distribution**. To add another point of reference, the June 29 certified fiscal plan reduced the 40-year cash flow as presented in the May 30 certified fiscal plan by an amount that is several billions of dollars more than the total proceeds to be received by the Commonwealth under the Agreement in Principle. The Commonwealth Agent, when determining the appropriate action with respect to the Commonwealth-COFINA dispute may "consider what result, through litigation, negotiation and mediation, will render [the Commonwealth" best able to achieve fiscal responsibility and access to capital markets, in the judgment of the [Commonwealth] Agent. Stipulation, ¶ 4g. Accordingly, the Commonwealth Agent believes that as long as the current fiscal plan is in effect (or a fiscal plan which suffers from the same deficiencies), neither a COFINA settlement based upon the Agreement in Principle nor the COFINA Settlement can be executed and/or consummated

[Dkt. 4057 at ¶ 3 (emphasis in original).] While the October 23 Fiscal Plan seems to have assuaged the Commonwealth Agent's concerns about the Settlement for now, the Retiree Committee has

6

not yet reached this level of comfort.[5] The Retiree Committee questions the prudence of proceeding with a Settlement that was viewed as untenable only one month ago without reasonable further diligence of the October 23 Fiscal Plan.

12. Although the short-term projections in the October 23 Fiscal Plan are improved over those in the June 29 Fiscal Plan, the Retiree Committee has significant questions about the model and assumptions supporting the fiscal plans that the Oversight Board must answer before the hearing on the Settlement Motion. The Oversight Board appears to anticipate this discovery, having stated in its opposition to the Retiree Committee's motion to move the objection deadline as to the 9019 Motion: "<u>Likewise, such periods were designed to permit discovery to be undertaken by parties which may interpose an objection to the Settlement Motion in a timely and efficient manner without the overlap of the intervening holidays</u>." [Dkt. 4116 at ¶ 1 (emphasis in original).]

13. The Retiree Committee's limited, targeted discovery requests (served contemporaneously with this Limited Objection and attached hereto as <u>Exhibit A</u>) include discovery regarding the fiscal plans' structural reforms, forecast of GNP growth, inflation assumptions, and the effect and timing of disaster relief funds.[6] The Retiree Committee cannot evaluate whether the Settlement is in the best interests of its constituents without conducting this diligence, and it further submits that it would be premature for the Court to hold a hearing on the

---

[5] The recently So-Ordered stipulation among the Commonwealth Agent, the Oversight Board, the Commonwealth, and the COFINA Agent permits the Commonwealth Agent to challenge the Settlement Motion, subject to certain timing restrictions, if there is a materially new fiscal plan or a material change to the current fiscal plan. [Dkt. 4202 at ¶ 4.]

[6] While the Retiree Committee's discovery may result in it supporting the Settlement (subject to amending the Settlement to address the Constitutional debt limitation issue), the Retiree Committee reserves its right to seek leave from the Court to raise additional substantive objections to the Settlement after it has had the opportunity to engage in meaningful discovery.

7

Settlement Motion before creditors have had the opportunity to engage in such meaningful discovery.

## Conclusion

14. The Retiree Committee sees value in a rational resolution of the dispute over the Pledged Sales Taxes, but any such resolution must be aligned with the Commonwealth's long-term economic stability, and also must be subject to creditor diligence. Based on the information presently available to it, the Retiree Committee files this Limited Objection to the Settlement Motion.

| | |
|---|---|
| November 16, 2018 | Respectfully submitted, |
| JENNER & BLOCK LLP | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
| By:<br>*/s/ Robert Gordon*<br>Robert Gordon (admitted *pro hac vice*)<br>Richard Levin (admitted *pro hac vice*)<br>919 Third Avenue<br>New York, NY 10022-3908<br>rgordon@jenner.com<br>rlevin@jenner.com<br>212-891-1600 (telephone)<br>212-891-1699 (facsimile) | By:<br>*/s/ A. J. Bennazar-Zequeira*<br>A. J. Bennazar-Zequeira<br>Héctor M. Mayol Kauffmann<br>Edificio Union Plaza<br>1701 Avenida Ponce de León #416<br>Hato Rey, San Juan<br>Puerto Rico 00918<br>ajb@bennazar.org<br>hector.mayol@bennazar.com<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile) |
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>312-222-9350 (telephone)<br>312-239-5199 (facsimile) | *Counsel for The Official Committee of Retired Employees of Puerto Rico* |

8