**Estimated Hearing Date**: March 13, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: December 7, 2018 at 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
|     as representative of | Case No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
|     Debtors.[1] | |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17-BK-3284-LTS |
|     as representative of | **This Application relates only to COFINA, and shall be filed in the lead Case No. 17 BK 3283-LTS, and COFINA's Title III Case (Case No. 17 BK 3284-LTS)** |
| PUERTO RICO SALES TAX FINANCING<br>CORPORATION, *et al.*, | |
|     Debtor. | |

---------------------------------------------------------------x

## SUMMARY SHEET
## TO FOURTH INTERIM FEE APPLICATION OF PROSKAUER
## ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND
## REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE
## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
## AS REPRESENTATIVE OF THE DEBTOR, PUERTO RICO SALES TAX FINANCING
## <u>CORPORATION, FOR THE PERIOD JUNE 1, 2018 THROUGH SEPTEMBER 30, 2018</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**<u>Schedule 1</u>**

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("<u>Proskauer</u>") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | June 1, 2018 through September 30, 2018 (the "<u>Compensation Period</u>") |
| Amount of Fees Sought: | $1,177,407.10 |
| Amount of Expense Reimbursement Sought: | $59,541.78 |
| Total Fees and Expenses Sought for Compensation Period: | $1,236,948.88 |

This is a(n)   ____ Monthly  __X__ Interim ___ Final Fee Application

This is the fourth interim fee application filed by Proskauer in the Debtor's Title III case.  The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

1

**Fourth Interim Compensation Period**
**June 1, 2018 – September 30, 2018**

| Statement and Date Served | Period Covered | Total Fees Incurred | Total Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Fourteenth** 7/20/18 | 6/1/18 to 6/30/18 | $18,127.20 | $16,314.48 | $17.10 | $16,314.48 | $17.10 |
| **Fifteenth** 9/418 | 7/1/18 to 7/31/18 | $48,115.30 | $43,303.77 | $149.08 | $43,303.77 | $149.08 |
| **Sixteenth** 9/24/18 | 8/1/18 to 8/31/18 | $490,549.00 | $441,494.10 | $8,620.11 | $441,494.10 | $8,620.11 |
| **Seventeenth** 10/4/18 | 9/1/18 to 9/30/18 | $599,667.20 | $539,700.48 | $50,755.49 | $539,700.48 | $50,755.49 |
| **Seventeenth (Puerto Rico)** 10/4/18 | 9/1/18 to 9/30/18 | $20,948.40 | $18,853.56 | $0.00 | $18,853.56 | 0.00 |
| | **Totals:** | **$1,177,407.10** | **$1,059,666.39** | **$59,541.78** | **$1,059,666.39** | **$59,541.78** |

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys | $759.00[2] |
| Blended Rate in This Application for All Timekeepers | $742.14 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $1,059,666.39 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $59,541.78 |
| Number of Professionals Included in this Application[3] | 33 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client[4] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period | 18 |
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No.  As explained in the Second Interim Application (as defined below), rates increased in accordance with Proskauer's engagement letter on January 1, 2018.  Rates have not increased during the Compensation Period. |

---

[2]  This rate excludes non-attorneys (*e.g.*, paralegals).

[3]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[4]  As noted in the budget Staffing Plan, the number of timekeepers expected to work on the matter during the Compensation Period was 36, and thus the actual number of timekeepers was 3 fewer than anticipated.

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period June 1, 2018 through September 30, 2018**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[5] | TOTAL HOURS BILLED (in this application) | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Barak, Ehud | BSGR&B[6] – 2010 | $759 | 6.00 | $4,554.00 |
| Bienenstock, Martin J. | BSGR&B  – 1978 | $759 | 1.20 | $910.80 |
| Corn, Richard M. | Tax - 2005 | $759 | 50.80 | $38,557.20 |
| Ferrara, Ralph C. | Litigation – 1970 | $759 | 5.50 | $4,174.50 |
| Firestein, Michael A. | Litigation – 1983 | $759 | 1.20 | $910.80 |
| Gerkis, James P. | Corporate – 1984 | $759 | 77.60 | $58,898.40 |
| Hamilton, Martin T. | Tax - 2004 | $759 | 63.00 | $47,817.00 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $759 | 82.00 | $62,238.00 |
| Mungovan, Timothy W. | Litigation – 1994 | $759 | 1.00 | $759.00 |
| Possinger, Paul V. | BSGR&B – 1993 | $759 | 7.30 | $5,540.70 |
| Ratner, Stephen L. | Litigation – 1975 | $759 | 2.40 | $1,821.60 |
| Richman, Jonathan E. | Litigation – 1984 | $759 | 0.20 | $151.80 |

---

[5]  In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases.  Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2.  Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1. Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates will be increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.  Because Proskauer's fees under the Engagement Letter are a blended rate (currently $759) for all attorneys and another, lower blended rate (currently $260) for all paraprofessionals, no annual step increases will be applicable to the rates charged in this matter.  As detailed in the Second Interim Application, Proskauer's rates under the Engagement Letter increased from $730 per hour for attorneys and $250 per hour for paraprofessionals to $759 per hour for attorneys and $260 per hour for paraprofessionals on January 1, 2018, during the second interim compensation period. Rates have not increased during this Compensation Period.

[6]  Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[5] | TOTAL HOURS BILLED (in this application) | FEES BILLED |
|---|---|---|---|---|
| Rosen, Brian S. | BSGR&B – 1983 | $759 | 509.00 | $386,331.00 |
| **Total for Partners:** | | | **807.20** | **$612,664.80** |
| *SENIOR COUNSEL* | | | | |
| Forman, Daniel L. | Corporate - 2009 | $759 | 38.40 | $29,145.60 |
| **Total for Senior Counsel:** | | | **38.40** | **$29,145.60** |
| *ASSOCIATES* | | | | |
| Clark, Brandon C. | Litigation – 2014 | $759 | 2.10 | $1,593.90 |
| Desatnik, Daniel S. | BSGR&B – 2016 | $759 | 3.00 | $2,277.00 |
| Habenicht, Yomarie S. | Tax – 2017 | $759 | 157.70 | $119,694.30 |
| Hayes, Christopher M. | BSGR&B – 2013 | $759 | 6.20 | $4,705.80 |
| Kim, Mee R. | Litigation – 2016 | $759 | 11.10 | $8,424.90 |
| Ma, Steve | BSGR&B – 2014 | $759 | 221.30 | $167,966.70 |
| Park, Sejin | Tax – 2018 | $759 | 69.50 | $52,750.50 |
| Pellegrino, Nicholas | Corporate  – 2017 | $759 | 37.10 | $28,158.90 |
| Pollick, Daniel C. | Corporate  – 2018 | $759 | 6.00 | $4,554.00 |
| Simon, David V. | Corporate  – 2016 | $759 | 83.00 | $62,997.00 |
| Stevens, Elliot R. | BSGR&B  – 2018 | $759 | 33.70 | $25,578.30 |
| Theodoridis, Chris | BSGR&B – 2011 | $759 | 43.60 | $33,092.40 |
| Webb, Jeramy D. | BSGR&B – 2015 | $759 | 0.80 | $607.20 |
| Zerjal, Maja | BSGR&B – 2012 | $759 | 12.20 | $9,259.80 |
| **Total for Associates:** | | | **687.30** | **$521,660.70** |
| *PARAPROFESSIONALS* | | | | |
| Geary, Laura M. | Litigation Paralegal – N/A | $260 | 1.40 | $364.00 |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[5] | TOTAL HOURS BILLED (in this application) | FEES BILLED |
|---|---|---|---|---|
| Giddens, Magali | BSGR&B Paralegal – N/A | $260 | 3.80 | $988.00 |
| Miller, Tiffany | Labor & Employment Paralegal – N/A | $260 | 0.40 | $104.00 |
| Petrov, Natasha | BSGR&B Paralegal – N/A | $260 | 28.80 | $7,488.00 |
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $260 | 19.20 | $4,992.00 |
| **Totals for Paraprofessionals:** | | | **53.60** | **$13,936.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys, Law Clerks, and Paraprofessional Totals:** | **1,586.50** | **$1,177,407.10** |

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period June 1, 2018 through September 30, 2018**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 2.90 | $2,201.10 |
| 202 | Legal Research | 8.20 | $6,223.80 |
| 204 | Communications with Claimholders | 277.30 | $205,580.50 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 0.50 | $379.50 |
| 206 | Documents Filed on Behalf of the Board | 25.60 | $19,430.40 |
| 207 | Non-Board Court Filings | 5.10 | $3,870.90 |
| 210 | Analysis and Strategy | 21.70 | $16,470.30 |
| 211 | Non-Working Travel Time | 10.20 | $7,741.80 |
| 212 | General Administration | 1.80 | $468.00 |
| 215 | Plan of Adjustment and Disclosure Statement | 934.90 | $704,100.10 |
| 216 | Confirmation | 10.20 | $7,741.80 |
| 217 | Tax | 250.30 | $189,977.70 |
| 218 | Employment and Fee Applications | 37.80 | $13,221.20 |
| | **Total for All Project Categories:** | **1,586.50** | **$1,177,407.10** |

7

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period June 1, 2018 through September 30, 2018**

| EXPENSE CATEGORY | AMOUNTS |
|---|---|
| Airplane | $1,544.12 |
| Dinner Voucher/SWeb | $432.03 |
| Food Service/Conf. Dining | $46,576.17 |
| Lexis/ Westlaw | $6,262.00 |
| Litigation Support/Docketing | $146.38 |
| Local Meals | $432.03 |
| Lodging | $2,171.42 |
| Out of Town Meals | $116.70 |
| Out of Town Transportation | $159.88 |
| Printing, Binding, etc. | $258.95 |
| Reproduction | $1,367.80 |
| Taxi, Carfare, Mileage and Parking | $74.30 |
| **Total:** | **$59,541.78** |

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | BILLED<br><br>Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy* | BILLED<br><br>In this fee application[7] |
| Partners | $1,144 | $759 |
| Senior Counsel | $978 | $759 |
| Associates (7 or more years since first admission) | $852 | $759 |
| Associates (4-6 years since first admission) | $820 | $759 |
| Associates (1-3 years since first admission) | $690 | $759 |
| Law Clerks | $545 | N/A |
| Paraprofessionals | $320 | $260 |
| Other | $491 | $260 |
| **All Timekeepers Aggregated:** | **$860** | **$742** |

---

[7] As explained in more detail herein and in the Engagement Letter, in connection with its representation of the Oversight Board, both inside and outside of Title III, Proskauer agreed to a custom fee arrangement, whereby (a) prior to January 1, 2018, partners, counsel, and associates were billed at $730 per hour, and all other staff were billed at $250 per hour, and (b) as of January 1, 2018, partners, counsel, and associates are billed at $759 per hour, and all other staff are billed at $260 per hour.

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | Case No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |

-------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17 BK 3284-LTS |
| as representative of | **This Application relates only to** |
| PUERTO RICO SALES TAX FINANCING<br>CORPORATION, et al., | **COFINA, and shall be filed in<br>the lead Case No. 17 BK 3283-<br>LTS, and COFINA's Title III** |
| Debtor. | **Case (Case No. 17 BK 3284-<br>LTS)** |

-------------------------------------------------------------x

## FOURTH INTERIM FEE APPLICATION OF PROSKAUER
## ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED AND
## REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR THE
## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,
## AS REPRESENTATIVE OF THE DEBTOR, PUERTO RICO SALES TAX FINANCING
## CORPORATION,  FOR THE PERIOD JUNE 1, 2018 THROUGH SEPTEMBER 30, 2018

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and

Management Board for Puerto Rico (the "Oversight Board") as representative of the Puerto Rico

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

Sales Tax Financing Corporation (the "Debtor" or "COFINA"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), [2] hereby submits this fourth interim application (the "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17 BK 3283-LTS, ECF No. 3269] (the "Interim Compensation Order"), for (a) allowance of interim compensation for professional services performed by Proskauer for the period commencing June 1, 2018 through and including September 30, 2018 (the "Compensation Period") in the amount of **$1,177,407.10,** $1,156,458.70 of which represents fees earned outside of Puerto Rico and $20,948.40 of which represents fees earned in Puerto Rico, and (b) reimbursement of its actual and necessary expenses in the amount of **$59,541.78** incurred during the Compensation Period.  In support of the Application, Proskauer respectfully avers as follows:

---

[2]  PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]  The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III case and does not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of other Title III debtors, or (b) outside the Title III process.

[4]  The Bankruptcy Rules are made applicable to the Debtor's Title III case pursuant to PROMESA section 310.

**Jurisdiction**

1.      The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief requested herein are PROMESA sections

316 and 317.

**Background**

4.      On June 30, 2016, the Oversight Board was established under PROMESA section

101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting

members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this

subchapter is the representative of the debtor" and "may take any action necessary on behalf of

the debtor to prosecute the case of the debtor, including filing a petition under section [304] of

[PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court."

PROMESA § 315(a), (b).

6.      On September 30, 2016, the Oversight Board designated the Debtor as a "covered

entity" under PROMESA section 101(d).

7.      On November 25, 2016, the Oversight Board retained Proskauer at substantial

discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5**

above.

8.      On May 5, 2017, the Oversight Board issued a restructuring certification pursuant

to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA

pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Debtor's

Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's

representative in the Debtor's Title III Case.

9.      Background information regarding the Debtor and the commencement of the Debtor's Title III Case is contained in the *Notice of Filing of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Case No. 17 BK 3283-LTS, ECF No. 1], attached to the Commonwealth of Puerto Rico's Title III petition.

10.     On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Sales Tax Financing Corporation, for the Period May 5, 2017 through September 30, 2017* [Case No. 17 BK 3283-LTS, ECF No. 2043] (the "First Interim Application").

11.     On April 9, 2018, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Sales Tax Financing Corporation, for the Period October 1, 2017 through January 31, 2018* [Case No. 17 BK 3283-LTS, ECF No. 2870] (the "Second Interim Application").

12.     On July 16, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, Puerto Rico Sales Tax Financing Corporation, for the Period February 1, 2018 through May 31, 2018* [Case No. 17 BK 3283-LTS, ECF No. 3571] (the "Third Interim Application").

13.     On July 20, 2018, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its fourteenth monthly fee statement for the period June 1, 2018 through June 30, 2018.  On September 4, 2018, Proskauer served on the Notice Parties its fifteenth monthly fee statement for the period July 1, 2018 through July 31, 2018.  On September 24, 2018, Proskauer served on the Notice Parties its sixteenth monthly fee statement for the period August 1, 2018 through August 31, 2018.  On October 4, 2018, Proskauer served on the Notice Parties its seventeenth monthly fee statement for the period September 1, 2018 through September 30, 2018.

14.     In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$1,119,208.17** (payment of ninety percent (90%) of the compensation sought and reimbursement of one-hundred percent (100%) of expenses incurred) and has received **$1,119,208.17** with respect to fee statements filed during the Compensation Period.

**<u>Summary of Services Rendered by Proskauer During the Compensation Period</u>**

15.     This Application is Proskauer's fourth for interim compensation in the Debtor's Title III Case.  Proskauer has continued its representation of the Oversight Board to carry out its statutory missions of restoring fiscal responsibility and reacquiring market access.  This has involved legal representation and advocacy on multiple fronts, including without limitation, (a) defending the Oversight Board (for itself or as representative of a Title III debtor) in over seventy lawsuits brought mostly by creditors, but also by the government or legislature in two instances, (b) formulating confirmable debt restructurings, (c) negotiating resolutions of debt and other issues, and (d) counselling the Oversight Board on the carrying out of its duties to restructure debt and spearhead economic growth.  The Compensation Period (which ended September 30, 2018) continued and manifested significant progress achieved during the first,

5

second, and third interim compensation periods.   In the first interim period, Proskauer transitioned the Commonwealth and certain of its instrumentalities to Title III, and, among other things, proposed and negotiated a mechanism to resolve the Commonwealth-COFINA dispute over which entity owns billions of dollars of sales and use tax revenues, and successfully defended against attempts by creditors to (a) seize the toll revenues HTA needed to maintain the Commonwealth's transportation system and (b) seize PREPA and its revenues by putting PREPA in the hands of a receiver.   In the second interim period, in the face of the devastation wrought by Hurricanes Irma and Maria, Proskauer worked with the Oversight Board's officers and other professionals to assess the situation, take actions to ensure the provision of basic services, and reformulate restructuring initiatives to reflect the changing economic landscape. Proskauer also successfully defended against numerous creditor efforts to enjoin the Oversight Board from proceeding toward a plan of adjustment based on the certified fiscal plan and to seize many revenue streams.   In the third interim period, Proskauer secured emergency authorization for the Commonwealth to lend $300 million to PREPA on a superpriority basis, despite significant opposition by creditor groups, and continued its leading role in assisting the Oversight Board with the development, certification, and defense of revised fiscal plans that provide the blueprint for Puerto Rico's future prosperity and fiscal responsibility. Proskauer also successfully defended against numerous creditor efforts to delay or frustrate the debtors' restructurings during these periods.

16.    In this Compensation Period, Proskauer built on these important achievements and initiated restructuring negotiations, some of which have already shown substantial progress. Proskauer took the Commonwealth-COFINA settlement that emerged from the mechanism the Oversight Board proposed at the outset of the Commonwealth Title III case, and, through negotiations, transformed it into a consensual Title III plan of adjustment for COFINA.  Without

finalizing the Commonwealth-COFINA dispute there was no way of knowing what revenues the Commonwealth would have for its fiscal plans, budgets, and plan of adjustment. Likewise, Proskauer represented the Oversight Board as the Administrative Supervisor in the Title VI qualifying modification resolving debt of the Government Development Bank for Puerto Rico ("GDB"). Simultaneously, Proskauer has represented the Oversight Board in negotiations seeking to restructure a major portion of PREPA's debt. COFINA and GDB alone account for over $20 billion of the $74 billion of bond debt in need of restructuring. PREPA accounts for over $9 billion more. Thus, substantial progress is being made. Additionally, Proskauer vigorously protected the Oversight Board's fiscal plan and budgetary powers, as well as the certified fiscal plan and budget themselves, in adversary proceedings commenced by the Governor and Legislature challenging the Oversight Board's authority. Proskauer also drafted appellate briefs and presented oral arguments before the First Circuit defending orders in this Court and protecting HTA and PREPA from creditor attempts to seize their revenues, and worked with several of the Title III Debtors and their related advisors in opposing a multitude of motions seeking to terminate the automatic stay.

17. Proskauer's notable undertakings during this Compensation Period, in furtherance of the Oversight Board's mandate to return fiscal responsibility and access to capital markets to Puerto Rico include, among others:

- Commonwealth-COFINA Dispute Resolution. During the Compensation Period, Proskauer furthered the Oversight Board's important role in driving a resolution to the Commonwealth-COFINA dispute. Since before even the commencement of the Title III cases, the dispute centered on whether the Commonwealth or COFINA owns the disputed pledged sales tax revenue. The dispute has been an overarching and gating issue, the resolution of which is one of the keys to Puerto Rico's overall restructuring. During the Compensation Period, Proskauer devoted a large amount of resources and hours to settling the dispute, including researching, formulating and drafting pleadings that will resolve the dispute once and for all. These pleadings included (*i*) a Rule 9019 settlement motion between the Commonwealth and COFINA (the "Settlement Motion"); (*ii*) a disclosure statement for COFINA; (*iii*) a plan of adjustment for

COFINA; and (*iv*) a motion to approve the disclosure statement.  The Settlement Motion and the consensual resolution to the dispute it embodies are the culmination of over a year of negotiations and litigation relating to the Commonwealth-COFINA dispute.  They form a key milestone in the Debtor's Title III Case and in the overall economic recovery of the island.

- <u>Certification and Defense of Fiscal Plans and Budgets</u>.  Proskauer played an instrumental and substantive role in the development and defense of new and revised fiscal plans and budgets for the Commonwealth and its instrumentalities, recertified to account for ongoing economic and fiscal developments in Puerto Rico.  While the Oversight Board worked closely with the Commonwealth in trying to certify plans and budgets submitted by the Puerto Rican government, it ultimately rejected the fiscal plans and budgets proposed by the Governor as noncompliant with PROMESA and developed and certified several of its own fiscal plans and budgets.  Proskauer assisted the Oversight Board in this regard, working with the Oversight Board's financial advisors to rigorously analyze data, assess the economic and structural impact of proposed fiscal plans, and ultimately assist the Oversight Board in drafting and certifying fiscal plans and budgets that will help achieve PROMESA's purpose of instilling fiscal responsibility and restoring the island's access to capital markets.  When the Governor and the Legislature challenged the Oversight Board's certified Commonwealth fiscal plan by commencing adversary proceedings, Proskauer worked on a very short deadline to research and draft responses to these complaints. The Court adopted many of the positions Proskauer presented in its briefs and dismissed the majority of the counts in the Governor's case and the entirety of the Legislature's complaint.  Proskauer's successes in these cases will be instrumental in ensuring the Oversight Board has the authority it needs to fulfill its statutory mandate to restore economic growth to the island of Puerto Rico.

- <u>Defense of GDB Restructuring</u>. For decades, the Government Development Bank for Puerto Rico ("<u>GDB</u>") provided the Commonwealth and its instrumentalities with billions of dollars in financial support during periods of economic distress.  Proskauer assisted the Oversight Board, in its capacity as Administrative Supervisor, in overseeing the consensual modification of GDB's bonded debt pursuant to PROMESA Title VI.   While the Title VI case was awaiting approval, the Official Committee of Unsecured Creditors (the "<u>UCC</u>") commenced a multi-front assault on the GDB restructuring, initiating no less than five separate actions to halt the process and stop the modification of GDB's debt.  Proskauer expended significant effort opposing the UCC's challenges to GDB's restructuring.   Proskauer's defense of the UCC's derivative standing motion was of particular importance. The UCC sought to usurp the Oversight Board's role as the sole representative of the Commonwealth and to assert the purported rights of the Commonwealth against GDB.  The UCC's actions were resolved by a stipulation that increased the Commonwealth's recoveries from the GDB Title VI case while at the same time resulting in the UCC's various actions being withdrawn with prejudice.

- <u>UCC's Rule 2004 Motion</u>.  Proskauer continued its defense against the renewed motion by the UCC seeking to undertake an expansive discovery program pursuant to Rule 2004. Following Judge Dein's order affirming the Oversight Board's position that a wholesale production of documents relating to the development of fiscal plans

was unwarranted and would be counterproductive, the Oversight Board's independent investigator released its comprehensive report pursuant to PROMESA section 104(o). During the Compensation Period, Proskauer worked with the various interested stakeholders in an attempt to resolve the pending issues related to this massive discovery process.

18.      In addition to the above, one of Proskauer's primary roles has been the defense of the Title III debtors' interests in numerous, multi-billion-dollar adversary proceedings and contested matters brought by various bondholders and monoline insurers.  Such matters seek, among other things, to enjoin the Oversight Board from (*i*) enforcing fiscal plans and budgets, (*ii*) consummating a Title VI restructuring, and (*iii*) proposing a plan of adjustment consistent with the Commonwealth's certified fiscal plan.  Other matters also seek to compel turnovers of billions of dollars of revenues critical to the Commonwealth's viability and the provision of public services on the island in the wake of the hurricanes.  Proskauer has defended against these challenges and raised numerous legal issues, many of first impression, involving, among other things, creditor challenges to the constitutionality of various PROMESA provisions, the correct interpretation of various sections of PROMESA and the Bankruptcy Code, and the validity of certain creditors' asserted liens.  The following is a summary of major litigation matters. Proskauer served as lead counsel for the Title III debtors in the following cases:

- Rosello Nevares v. The Financial Oversight and Management Board for Puerto Rico, Adv. Proc. No. 18-00080: On July 5, 2018, plaintiffs, the Hon. Ricardo Antonio Rosselló Nevares, in his official capacity as the Governor of the Commonwealth of Puerto Rico, and the Puerto Rico Fiscal Agency and Advisory Authority ("AAFAF"), filed a complaint (the "Rosselló Complaint") against the Oversight Board seeking declarations that the Oversight Board lacks the authority to impose policy initiatives on the Government through certified fiscal plans and/or budgets as well as an injunction against the Oversight Board prohibiting them from implementing and enforcing policy recommendations contained in a certified fiscal plan or budget.  This action threatened to substantially curtail the Oversight Board's authority under PROMESA and significantly jeopardize the restructuring of Puerto Rico and the island's economic and fiscal future.

  On July 7, 2018, the Court entered an order drastically shortening the period the Oversight Board had to respond to the Rosselló Complaint, giving Proskauer only seven (7) days to file an answer or dispositive motion (during which time Proskauer

also had to respond to the Rivera-Schatz Complaint discussed below).  Over the course
of the next few weeks, Proskauer responded to the Rosselló Complaint, devoting
significant time and energy to research and draft a motion to dismiss the complaint,
while at the same time opposing motions to intervene in the proceedings filed by
various parties-in-interest.  On July 12, 2018, Proskauer filed a motion to dismiss the
Rosselló Complaint.  This motion was opposed by plaintiffs, and on July 20, 2018
Proskauer filed a reply in support of its motion on a severely truncated timeline.  On
July 25, 2018, Proskauer argued the merits of its motion to dismiss.

On August 7, 2018, after taking the matter under advisement, the Court issued a ruling
dismissing most of the claims contained in the Rosselló Complaint and adopting many
of the positions argued by Proskauer in defense of the Oversight Board's position.
Proskauer's success in this litigation is instrumental in enabling the Oversight Board to
fulfill its statutory mandate and assist Puerto Rico in achieving prosperity and fiscal
responsibility once more.

Since the Court's ruling, Proskauer has continued its work in defense of the Oversight
Board's statutory powers under PROMESA, in respect of plaintiffs' urgent motion
seeking certification of the Court's August 7, 2018 opinion and order for immediate
appeal.

- <u>Rivera-Schatz et al v. The Financial Oversight and Management Board for Puerto Rico
et al.</u>, Adv. Proc. No. 18-00081: On July 9, 2018, plaintiffs, the Hon. Thomas Rivera-
Schatz, in his official capacity and on behalf of the Senate of Puerto Rico, and the
Hon. Carlos J. Méndez-Núñez, in his official capacity and on behalf of the House of
Representatives (collectively, the "<u>Legislative Assembly</u>"), filed a complaint (the
"<u>Rivera-Schatz Complaint</u>") against the Oversight Board seeking (*i*) a declaration the
Oversight Board overreached its powers by demanding the Legislative Assembly
approve a bill repealing Law 80 as a condition for the approval of the
Commonwealth's budget and (*ii*) an injunction prohibiting the Oversight Board from
implementing its FY 2018-19 budget and requiring it to instead certify the FY 2018-19
budget approved by the Legislative Assembly.

  Proskauer was required to respond to the Rivera-Schatz Complaint on a severely
shortened timeline and at the same time it defended against the Rosselló Complaint.
Proskauer worked day and night researching responses, formulating arguments in
defense of the Oversight Board, and drafting a motion to dismiss the Rivera-Schatz
Complaint (as well as responses to certain motions to intervene filed by various
parties-in-interest).  On July 18, 2018, Proskauer filed a motion to dismiss the Rivera-
Schatz Complaint.  On July 21, 2018, the Legislative Assembly filed an opposition to
the motion to dismiss.  In the space of two days, Proskauer was required to respond to
the significantly different arguments raised by the Legislative Assembly's opposition.
The merits of the motion to dismiss were argued at a hearing held on July 25, 2018.

  On August 7, 2018, the Court issued a ruling dismissing all counts of the Rivera-
Schatz Complaint and adopting many of the positions argued by Proskauer on behalf
of the Oversight Board.  The same as with the result achieved in the case filed by
AAFAF and the Governor, Proskauer's success in disposing of the Rivera-Schatz

Complaint is critical in ensuring the Oversight Board can carry out its statutory mandate and restore Puerto Rico's fiscal responsibility.

On August 13, 2018 the plaintiffs filed a notice of appeal to the First Circuit. Since that date, Proskauer has again taken up the task of defending the Oversight Board. The deadline for Proskauer to file its Appellee's brief is December 14, 2018.

- <u>Cooperativa de Ahorro y Credito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.</u>, Adv. Proc. No. 18-00028: On March 22, 2018, plaintiff credit unions (holding billions of dollars of debt issued by the Commonwealth), brought an action against the Oversight Board, the Commonwealth, and its instrumentalities, among others, seeking (*i*) a declaratory judgment that their claims are nondischargeable on the basis of fraud; (*ii*) the designation of their claims as a separate class in an eventual plan of adjustment; (*iii*) a declaratory judgment that their claims are nondischargeable under PROMESA; (*iv*) damages for breach of contract; (*v*) remedies available under Commonwealth and federal securities laws and Commonwealth negligence, fiduciary duty, and fraud laws, and (*vi*) unspecified common law damages. Proskauer took the lead in defending the Oversight Board's interest, filing a motion to dismiss the action on August 6, 2018.

- <u>Assured Guaranty Corp., et al. v. Commonwealth of Puerto Rico, et al.</u>, Adv. Proc. No. 18-00059: On May 24, 2018, plaintiffs filed a complaint alleging the revised fiscal plan developed and approved by the Oversight Board on April 19, 2018, as well as the Compliance Law (Act No. 21-2016), the Moratorium Law (Act No. 5-2017), and certain Moratorium Orders enacted by the Commonwealth, violate PROMESA and the United States Constitution, including the Contracts, Takings, and Due Process Clauses. The plaintiffs seek a declaratory judgment the Oversight Board cannot use the revised fiscal plan as a basis for proposing a plan of adjustment in the Debtor's Title III Case. Proskauer, working with the other defendants, researched, prepared and filed an urgent motion to stay the litigation on June 25, 2018, arguing that the complaint in this adversary proceeding is substantially similar, if not identical, to that in *Ambac Assurance Corp. v. Commonwealth of Puerto Rico, et. al.*, Adv. Proc. No. 17-00159, in which the Court granted a motion to dismiss that is currently on appeal in the First Circuit. The Court granted the motion to stay the proceedings pending a decision from the First Circuit.

- <u>Pinto-Lugo, et al. v. United States of America, et al.</u>, Adv. Proc. No. 18-00041: On April 24, 2018 plaintiffs in this case filed a complaint with this Court seeking (*i*) a declaratory judgment that PROMESA is unlawful under various provisions of domestic and international law, including the United Nations Charter, the United States Declaration of Independence, the United Nations Declaration of Human Rights, and the International Covenant of Civil and Political Rights, as well as damages for the violation of these legal codes; (*ii*) a declaratory judgment that PROMESA is unlawful under the Declaration of Independence and the First, Fifth, and Fourteenth Amendments of the Constitution, as well as damages for the violation of these legal provisions; (*iii*) a forensic audit of Puerto Rico's public debt; and (*iv*) an order prohibiting any sale of PREPA. The plaintiffs filed an amended complaint on July 26, 2018. The firm led the charge in defending against the *Pinto-Lugo* complaint,

11

expending significant time and effort developing responses to plaintiffs' arguments. Proskauer drafted a motion to dismiss plaintiffs' original complaint and was substantially ready to file it when plaintiffs requested, and were granted, leave to amend their complaint. Proskauer had to substantially revise its motion to dismiss in light of the amended complaint. On August 23, 2018, Proskauer filed a motion to dismiss the amended complaint.

- PFZ Properties, Inc. v. Commonwealth of Puerto Rico, Adv. Proc. No. 18-00056: Plaintiff in this action, PFZ Properties, Inc. ("PFZ"), is a creditor of the Commonwealth of Puerto Rico whose only asset is beachfront land comprising approximately 1,300 acre located in the Municipality of Loíza. The Commonwealth commenced eminent domain proceedings in 2008, but eventually voluntarily dismissed the proceedings without prejudice due to a lack of resources to litigate or pay PFZ. PFZ seeks a declaration that the Commonwealth effected a regulatory taking of the property for which the Takings Clause of the Fifth Amendment of the U.S. Constitution requires just compensation in the amount of $75.55 million. PFZ also seeks interest plus attorney's fees on account of the Commonwealth's conduct. Proskauer spent considerable time and effort negotiating with PFZ in an attempt to obtain a consensual resolution of this case. Eventually, a stipulation was reached with PFZ under which PFZ agreed to dismiss its complaint with prejudice, on certain conditions.

- PBJL Energy Corp. v. Puerto Rico Electric Power Authority, Adv. Proc. No. 18-00063: On May 29, 2018 plaintiff, a power company focused on renewable energy, filed a breach of contract claim against PREPA. The plaintiff claims it executed a contract with PREPA on December 20, 2011, pursuant to which PREPA agreed to (*i*) purchase all of plaintiff's net electricity production, (*ii*) work together with the plaintiff to develop renewable energy projects, and (*iii*) cooperate in good faith to meet the requirements for establishing certain facilities. Plaintiff, alleging PREPA failed to meet its contractual obligations, seeks damages, as well as specific performance of the contract. In addition, plaintiff seeks a declaratory judgment that the contract is a "forward contract" that cannot be disallowed or avoided pursuant to Bankruptcy Code section 546(e). The plaintiff additionally brings a claim under the *Racketeer Influenced Corrupt Organizations Act* seeking treble damages. After researching the issues raised in the complaint, Proskauer filed a motion to dismiss the case on October 15, 2018.

- Western Surety Co., et. al. v Puerto Rico Highways and Transportation Authority, Adv. Proc. No. 18-00065: On May 30, 2018 plaintiffs filed a complaint alleging they issued bonds in connection with public work contracts owned by HTA and have paid bond claims that were payable by HTA in relation to those contracts. The plaintiffs seek declaratory judgments that (*i*) funds remitted by HTA to the prime contractors in these projects are not property of HTA's estate in its Title III case, but are instead property of plaintiffs, and (*ii*) plaintiffs have a security interest over "all contract rights and proceeds" of HTA. Proskauer filed a motion to dismiss the complaint on September 14, 2018.

- <u>Union de Empleados de la Corporacion del Fondo del Seguro del Estado v. Government of the United States of America, et al.</u>, Adv. Proc. No. 18-00066: On May 30, 2018, plaintiffs, two labor unions and a labor association representing approximately 2,950 Puerto Rican citizens, brought an action seeking declaratory judgments holding that (*i*) PROMESA and certain acts taken by the Oversight Board pursuant to PROMESA are unconstitutional under the Thirteenth and Fifteenth Amendments of the United States Constitution, (*ii*) that PROMESA violates one or more international agreements on human rights, (*iii*) and that the various defendants in the case should be enjoined from pursuing any Title III cases or exercising any authority under PROMESA.   Proskauer expended considerable effort analyzing the complaint, coordinating with the other defendants, and researching and preparing a response to plaintiffs' allegations.  Proskauer has drafted and twice had to revise its response to the plaintiffs' complaint, which has been substantially amended two times.  The deadline to file an answer to the second amended complaint is November 30, 2018.

- <u>Hernandez-Montanez et al. v. Financial Oversight and Management Board for Puerto Rico et al.</u>, Adv. Proc. No. 18-00090: On July 25, 2018, the leader of the Popular Democratic Party Minority in the Puerto Rico House of Representatives filed a complaint seeking a declaratory judgment (*i*) that PROMESA violates the Appointments Clause of the United States Constitution, and (*ii*) that the Oversight Board overstepped its statutory authority by certifying fiscal plans and budgets containing certain provisions.  The Court issued an order certifying matters arising from the alleged violations of the United States Constitution to the Attorney General of the United States.  During the Compensation Period, Proskauer has researched the issues raised by the plaintiffs and prepared a motion to dismiss the complaint, which was filed on October 4, 2018.

19.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings that included both contested and uncontested matters; (c) researched jurisprudence regarding proposed plan issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

20.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of **$1,177,407.10** as compensation for professional services rendered, $1,156,458.70 of which represents fees earned outside of Puerto Rico and $20,948.40 of which represents fees earned in Puerto Rico, and **$59,541.78** as reimbursement for actual and necessary

expenses incurred during the Compensation Period in connection with such professional services.  Notably, the Application reflects aggregate voluntary reductions made during the Compensation Period to Proskauer's request for compensation and reimbursement of expenses in the amount of $12,321.80 and $2,958.99, respectively, on top of the sizeable discount embedded in its engagement letter with the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the hourly rates of its most senior partners.

21.     Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor.  Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

22.     Proskauer's budget and staffing plan for the Compensation Period are attached hereto as **Exhibit D**.[5]

23.     Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board is set forth on **Schedule 2**. During the Compensation Period, Proskauer billed the Oversight Board for time expended by attorneys based on a set rate of $759.[6]  The professional services performed by Proskauer on

---

[5]  Budgets are only provided for matters Proskauer actually billed time to in a given month. If no time was billed to a given matter during the month, no monthly budget has been provided for that matter.

[6]  In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases.  Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2.  Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at  https://oversightboard.pr.gov/documents/)  (the "Engagement Letter") provides that Proskauer's rates will be increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.  Because Proskauer's fees under the Engagement Letter are a blended rate (currently $759) for all attorneys and another, lower blended rate (currently $260) for all paraprofessionals, no annual step increases will be applicable to the rates charged in this matter.  As detailed in the Second Interim Application, Proskauer's rates under the Engagement Letter increased from $730

14

behalf of the Oversight Board as representative of the Debtor during the Compensation Period required an aggregate expenditure of 845.60 recorded hours by Proskauer's partners and senior counsel; 687.30 recorded hours by associates; and 53.60 recorded hours by paraprofessionals. As required by the Guidelines, **Exhibit C** to this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the aggregate recorded hours each professional incurred.    In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**.  The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board.  The standard rates Proskauer charges for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedules 2** and **5** show the rates Proskauer charges on an hourly basis are below the competitive, market rates for bankruptcy and non-bankruptcy matters charged by the other professionals representing the Commonwealth and statutory committees.  No Proskauer rates are increased as a result of the geographic location of a bankruptcy case.

24.    All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual providing the services.  Each Project Category is organized in accordance with

---

per hour for attorneys and $250 per hour for paraprofessionals to $759 per hour for attorneys and $260 per hour for paraprofessionals on January 1, 2018, during the second interim compensation period. Rates have not increased during this Compensation Period.

Guidelines paragraph C.8.b. If a Project Category does not appear in a particular application, Proskauer did not bill time or expenses for that Project Category during the Compensation Period, but may bill time for that Project Category in the future.

### Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5

25.     The following answers are provided in response to the questions set forth in Guidelines paragraph C.5:

| | |
|---|---|
| **Question**: | Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain. |
| Response: | Yes. As explained in more detail in the Engagement Letter, in connection with its representation of the Oversight Board, both inside and outside of Title III, Proskauer agreed to a custom fee arrangement, whereby (a) prior to January 1, 2018, partners, counsel, and associates were billed at $730 per hour, and all other staff were billed at $250 per hour, and (b) as of January 1, 2018, partners, counsel, and associates are billed at $759 per hour, and all other staff are billed at $260 per hour. |
| **Question**: | If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client? |
| Response: | The total fees sought in this Application did not exceed total budgeted fees. |
| **Question**: | Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case? |
| Response: | No. |
| **Question**: | Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees. |
| Response: | No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements. However, the Application does include time related to the preparation of the firm's monthly fee statements. This work is unique and non-duplicative of the firm's interim application efforts. Proskauer expended approximately 5.00 hours for a total charge of approximately $3,795.00 in performing activities relating to |

16

such preparation, or approximately 0.32 % of total fees incurred.

**Question**:   Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:   No time was spent redacting time records on account of privilege concerns.  However, the Application does include time related to reviewing time records to redact time entries pursuant to Court-ordered mediation confidentiality.

**Question**:   If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:   The Engagement Letter agreed to in advance by the Oversight Board provides that Proskauer's rates will be increased on January 1 (rather than on November 1, the beginning of Proskauer's fiscal year) by the lower of the percentage rate increase announced as of November 1 and four percent. Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent on January 1, 2018.  Rates have not increased during this Compensation Period.

## Hearings and Conferences

26.     Proskauer attorneys attended hearings and participated in numerous teleconferences with the Oversight Board, the Board's other professional advisors, AAFAF and its professional advisors, the Unsecured Creditors' Committee and its professional advisors, the Official Committee of Retired Employees and its professional advisors, and the Debtor's creditors and their professional advisors.  Proskauer attorneys also participated in internal meetings and conferences.  The Debtor's Title III Case poses complex, often interrelated issues that frequently require the attendance of more than one professional at hearings and conferences. This facilitates the sharing of information among professionals handling different but related work streams and possessing different areas of expertise that is brought to bear on a multitude of issues.  Having more than one Proskauer attorney participate in hearings and conferences is often essential when one attorney is not handling every issue, and is beneficial to the Oversight Board

when attendance by more than one attorney (telephonic and/or in-person) reduces the need for internal de-briefing meetings and therefore allows Proskauer to represent the Debtor in a more cost-efficient manner that avoids unnecessary duplication and expense. Proskauer limits multiple participation to the most critical work streams for which attendance by more than one professional is actually necessary to provide efficient and appropriate representation for the Debtor.

27.     The Court and the Fee Examiner have identified certain presumptive standards applicable to the Fee Examiner's review of fee applications filed in the Title III cases. Under these standards, fees and expenses incurred by timekeepers for attending hearings in which at least one professional anticipates a speaking role, other than fees and expenses related to (*i*) those with meaningful speaking roles and (*ii*) one additional timekeeper per speaker, are presumed non-compensable. Likewise, for monitoring hearings (whether in person or by telephone) in which the professional has no meaningful speaking role, fees and expenses incurred by any more than one timekeeper per professional are presumed to be non-compensable. During the Compensation Period (June 2018 through September 2018), Proskauer continued to strive to staff hearings and events efficiently and leanly, utilizing timekeepers with actual or potential speaking roles, necessary supporting timekeepers, and, in some instances, additional timekeepers for the purposes of monitoring strategic issues. During the relevant time period, Proskauer staffed the following hearings as follows:

- **June 5, 2018 oral argument to the First Circuit in *Peaje*.** Three timekeepers invoiced efforts in connection with attending this event: (1) Jeffrey W. Levitan presented oral argument; (2) John E. Roberts provided strategic advising and logistical support to Mr. Levitan; and (3) Lucy Wolf provided additional logistical and organizational support to Mr. Levitan. Given the scope of the arguments presented and the significance of the issues under discussion, it is Proskauer's position that the variance from the presumptive standard – one additional supporting timekeeper – is justified. Ms. Wolf's supporting role was not duplicative of Mr. Roberts' strategic

advising role, and she had played a lead role in preparing the supporting materials relevant to the hearing.

- **June 5, 2018 oral argument to the First Circuit in the PREPA Receiver Motion Appeal**. Five timekeepers invoiced efforts in connection with attending this event: (1) Martin J. Bienenstock presented the oral argument; (2) John E. Roberts provided strategic advising and logistical support to Mr. Bienenstock; (3) Lucy Wolf provided additional logistical and organizational support to Mr. Bienenstock. Additionally, Jeffrey W. Levitan, who had presented argument to the First Circuit earlier in the day in the *Peaje* matter, invoiced for monitoring a portion of the oral argument, and Michael A. Firestein invoiced efforts for telephonically monitoring a portion of the oral argument. Given the scope of the arguments presented and the significance of the issues, it is Proskauer's position that the variance from the presumptive standard – three additional supporting timekeepers – is justified. Ms. Wolf's supporting role was not duplicative of Mr. Roberts' strategic advising role, and she had played a lead role in preparing the supporting materials relevant to the hearing. Mr. Levitan's attendance efforts were minimal (0.70 hours) and were directly related to monitoring the First Circuit's handling of issues overlapping with his role in the *Peaje* matter. Mr. Firestein billed minimal efforts to telephonically monitor a portion of the hearing (0.60 hours) for purposes of assessing broader strategic issues. Had the monitoring timekeepers not attended a portion of the hearing telephonically, each timekeeper would have incurred additional time reviewing the transcript of this proceeding.

- **June 6, 2018 omnibus hearing**. Four timekeepers invoiced efforts in connection with attending this event: (1) Brian S. Rosen played a meaningful speaking role during the hearing; (2) Timothy W. Mungovan also played a meaningful speaking role during the hearing; (3) Ehud Barak provided strategic support during the event; and (4) Paul Possinger provided additional strategic support during the hearing. Proskauer's staffing of this event -- two speakers and one supporting timekeeper per speaker -- complies with the presumptive standards.

- **June 11, 2018 hearing in the *Altair v. US* matter before the Court of Federal Claims**. One timekeeper invoiced monitoring efforts in connection with the contested hearing in this related proceeding involving the same bondholders as the *ERS* matter (Williams D. Dalsen). Proskauer's staffing of this event -- one monitoring timekeeper -- complies with the presumptive standards.

- **June 18, 2018 hearing on UCC's renewed Rule 2004 motion**. Two timekeepers invoiced efforts in connection with attending this event: (1) Timothy W. Mungovan played a meaningful speaking role during the hearing; (2) Margaret A. Dale provided strategic and logistical support to Mr. Mungovan. Proskauer's staffing of this event -- one speaker and one supporting timekeeper per speaker -- complies with the presumptive standards.

- **July 25, 2018 omnibus hearing**. Four timekeepers undertook meaningful speaking roles during this event: (1) Martin J. Bienenstock; (2) Paul Possinger; (3) Brian S.

Rosen; and (4) Margaret A. Dale. The speaking timekeepers were supported in person by Timothy W. Mungovan and Ehud Barak, and telephonically by Jeffrey W. Levitan and Daniel Desatnik. Four additional timekeepers invoiced minimal efforts to telephonically monitor portions of the proceedings: (1) Ralph C. Ferrara (1.60 hours); (2) Elliot Stevens (1.70 hours); (3) Guy Brenner (1.30 hours); and (4) Chris Theodoridis (0.90 hours). Given the scope of the hearing and the myriad of actual and potential issues under discussion, it is Proskauer's position that the efforts of the additional timekeepers beyond the presumptive standards -- four additional timekeepers -- were reasonable, necessary, and justified. The additional monitoring efforts were minimal and tailored to inform strategic issues across other related matters.

- **September 13, 2018 omnibus hearing**. Seven timekeepers invoiced speaking, support, and monitoring efforts in connection with this event: (1) Martin J. Bienenstock provided a meaningful speaking role during the hearing; and (2)-(7) Paul Possinger (2.90 hours), Daniel Desatnik (2.90 hours), Michael A. Firestein (2.90 hours), Jeffrey W. Levitan (2. 30 hours), Ralph C. Ferrara (0.90 hours), and Steve Ma (0.70 hours) each monitored the hearing or a portion thereof. It is Proskauer's position that the efforts of the additional timekeepers beyond the presumptive standard (which appears to allow for two of the seven total timekeepers) were reasonable and necessary, and justified under the circumstances given the scope and breadth of the hearing and issues under discussion. For example, the additional timekeepers monitored the hearing in real time (rather than waiting several days to review the hearing transcript) for purposes of informing and shaping strategic considerations across all matters. In fact, it would have been counterproductive and wasteful for the additional timekeepers to await the hearing transcript; their real-time ingestion of how the court and counsel addressed certain issues affected strategic issues contemporaneously facing each timekeeper.

28. In summary, Proskauer remains committed to staffing hearings and events with a minimal amount of necessary timekeepers. In each instance during the Compensation Period where Proskauer's attendance activities exceeded the presumptive standards adopted by the Court, such variances were necessary and justified under the circumstances.

## **Professionals Billing Fewer Than Five Hours per Month**

29. The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary. As a general matter, because of the size and

complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services. Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and with specific adversary proceedings to ensure that positions taken by the Oversight Board are consistent across all the Title III cases, as well as to deal with global strategic issues.  Furthermore, occasionally the urgency of certain briefing schedules requires pulling in professionals from different work streams to assist on time-sensitive matters.[7]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Barak, Ehud | July, August | Mr. Barak is a partner in Proskauer's BSGR&B group who advised on sales and use tax ("SUT")-related issues and participated in court-ordered mediation. |
| Bienenstock, Martin J. | August | Mr. Bienenstock is a partner in Proskauer's BSGR&B group who advised on multiple issues related to the Debtor's proposed plan of adjustment and plan support agreement. |
| Clark, Brandon C. | September | Mr. Clark is an associate in Proskauer's litigation department who assisted with researching and drafting an omnibus claims objections procedure motion, and with analyzing claims against COFINA. |
| Desatnik, Daniel S. | July - September | Mr. Desatnik is an associate in Proskauer's BSGR&B group who assisted with analyzing SUT-related issues and with drafting the disclosure statement for the Debtor's proposed plan of adjustment. |

---

[7] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and without PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Ferrara, Ralph C. | August, September | Mr. Ferrara is a partner in Proskauer's litigation department who advised on litigation issues related to the Debtor's proposed plan of adjustment and the Debtor's fiscal plan. |
| Firestein, Michael A. | June, August, September | Mr. Firestein is a partner in Proskauer's litigation department who advised on SUT-related issues and on the Debtor's proposed plan of adjustment. |
| Geary, Laura M. | September | Ms. Geary is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Giddens, Magali | July | Ms. Giddens is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Kim, Mee R. | June - September | Ms. Kim is an associate in Proskauer's litigation department who assisted with the preparation of Proskauer's monthly fee statements and with drafting the disclosure statement for the Debtor's proposed plan of adjustment. |
| Miller, Tiffany | September | Ms. Miller is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Mungovan, Timothy W. | August, September | Mr. Mungovan is a partner in Proskauer's litigation department who advised on litigation issues related to the Debtor's proposed plan of adjustment. |
| Pellegrino, Nicholas | August | Mr. Pellegrino is an associate in Proskauer's corporate department who analyzed bond-related issues for the Debtor's proposed plan of adjustment. |
| Petrov, Natasha | July | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's interim fee applications. |
| Possinger, Paul V. | June - September | Mr. Possinger is a partner in Proskauer's BSGR&B group who advised on the COFINA/Deutsche Bank settlement and on restructuring issues and timing. Mr. Possinger also participated in court-ordered mediation relating to the Debtor. |

22

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Ratner, Stephen L. | August, September | Mr. Ratner is a partner in Proskauer's litigation department who advised on litigation issues related to the Debtor's proposed plan of adjustment. |
| Richman, Jonathan E. | August | Mr. Richman is a partner in Proskauer's litigation department who advised on the litigation strategy in the COFINA/BNYM dispute. |
| Stevens, Elliot R. | June, July | Mr. Stevens is an associate in Proskauer's BSGR&B group who assisted with drafting Proskauer's interim fee applications. |
| Webb, Jeramy D. | July | Mr. Webb is an associate in Proskauer's BSGR&B group who assisted with drafting Proskauer's interim fee applications. |
| Zerjal, Maja | August, September | Ms. Zerjal is an associate in Proskauer's BSGR&B group who assisted with drafting the disclosure statement for the Debtor's proposed plan of adjustment. |

### Summary Description of Professional Services

30.     The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period.[8]  Only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

### I.     Matter No. 33260/010 (PROMESA Title III: COFINA) and No. 33260/027 (PROMESA Title III: COFINA Puerto Rico)

31.     These matter numbers cover time spent relating to the core COFINA Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

---

[8]  Proskauer prepared a separate invoice for each month in the Compensation Period in which any of its professionals billed time to the Debtor while physically in Puerto Rico.  Each such invoice is labeled as applying only to services rendered in Puerto Rico.

   (a)   <u>Communications with Claimholders (Project Category 204)</u>
       (Fees: <u>$205,125.10</u>; Hours: <u>276.70</u>)
       (Fees for work performed in Puerto Rico:  <u>$455.40</u>; Hours:  <u>0.60</u>)
       (Aggregate Fees: <u>$205,580.50</u>; Aggregate Hours: <u>277.30</u>)

32.    This Project Category includes time spent communicating with the Debtor's various claimholders.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating and participating in meetings with advisors to COFINA's bondholders and to statutory committees on a variety of legal issues in preparation for court-ordered mediation sessions and court hearings; and
- Preparing for and participating in court-ordered mediation sessions and drafting related memoranda to Judge Houser.

   (b) <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
       (Fees:  <u>$19,430.40</u>; Hours:  <u>25.60</u>)
       (Fees for work performed in Puerto Rico:  <u>$0.00</u>; Hours:  <u>0.00</u>)
       (Aggregate Fees:  <u>$19,430.40</u>; Aggregate Hours:  <u>25.60</u>)

33.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys spent time conducting research and analysis for and drafting the proposed motion to approve the settlement of the Commonwealth-COFINA dispute.

   (c)   <u>Analysis and Strategy (Project Category 210)</u>
       (Fees: <u>$14,800.50</u>; Hours: <u>19.50</u>)
       (Fees for work performed in Puerto Rico: <u>$1,669.80</u>; Hours: <u>2.20</u>)
       (Aggregate Fees: <u>$16,470.30</u>; Aggregate Hours:  <u>21.70</u>)

34.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

   (d)   <u>Non-Working Travel Time (Project Category 211)</u>
       (Fees: <u>$7,741.80</u>; Hours: <u>10.20</u>)
       (Fees for work performed in Puerto Rico: <u>$48,727.80</u>; Hours: <u>0.00</u>)
       (Aggregate Fees: <u>$7,741.80</u>; Aggregate Hours: <u>10.20</u>)

35.     This Project Category includes time spent traveling on behalf of the Oversight Board and the Debtor, during which no billable work is performed.  Fees in this Project Category are billed at fifty percent (50%).

(e)   <u>Plan of Adjustment and Disclosure Statement (Project Category 215)</u>
(Fees: <u>$685,580.50</u>; Hours: <u>910.50</u>)
(Fees for work performed in Puerto Rico: <u>$18,519.60</u>; Hours: <u>24.40</u>)
(Aggregate Fees: <u>$704,100.10</u>; Aggregate Hours: <u>934.90</u>)

36.     This Project Category includes time spent on issues related to the terms of a proposed Title III plan.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conferring with the Oversight Board, statutory committees, bondholders, and their respective advisors;

- Drafting the Debtor's proposed disclosure statement, plan of adjustment, plan support agreement, term sheets, and other plan documents;

- Conducting research and analysis of various plan of adjustment-related issues, including, among other things, potential plan structures, voting rights, and solicitation and confirmation procedures, tax issues, restructuring fees, swap issues, and the standards for disclosure statements, and drafting related memoranda to the Oversight Board and creditors;

- Conferring with Prime Clerk regarding the logistics of solicitation and voting on the Debtor's plan of adjustment.

(f)   <u>Confirmation (Project Category 216)</u>
(Fees: <u>$7,741.80</u>; Hours: <u>10.20</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$7,741.80</u>; Aggregate Hours: <u>10.20</u>)

37.     This Project Category includes time spent reviewing materials relating to plan confirmation.  Specifically, Proskauer attorneys and paraprofessionals spent time researching and analyzing confirmation requirements, standards, and other confirmation-related issues for the Debtor's anticipated plan of adjustment, and drafting related memoranda for the Oversight Board.

(g) Tax (Project Category 217)
   (Fees: $189,977.70; Hours: 250.30)
   (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
   (Aggregate Fees: $189,977.70; Aggregate Hours: 250.30)

38.    This Project Category includes time spent on tax matters involving the Debtor.

Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conferring with the Oversight Board and its other advisors;
- Researching and analyzing tax-related issues in connection with the Debtor's proposed plan of adjustment, and drafting tax-related sections of the plan documents and related memoranda for the Oversight Board;
- Reviewing the proposed disclosure statement, plan of adjustment, plan support agreement, term sheets, and other plan related documents to assess the adequacy of their tax-related disclosures.

(h)    Employment and Fee Applications (Project Category 218)
   (Fees: $13,221.20; Hours: 37.80)
   (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
   (Aggregate Fees: $13,221.20; Aggregate Hours: 37.80)

39.    This Project Category includes time spent on issues related to the compensation of Proskauer, and the retention and compensation of other Oversight Board professionals. Specifically, Proskauer attorneys and paraprofessionals spent time preparing Proskauer's monthly fee statements and drafting Proskauer's third and fourth interim fee applications.

*        *        *        *

40.    The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, the Commonwealth's residents, and other stakeholders. Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved. The professional services were performed with expedition and in an efficient manner.

26

41.     In accordance with the factors enumerated in the Bankruptcy Code, the amount of
fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b)
the time expended; (c) the nature and extent of the services rendered; (d) the value of such
services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of
comparable services other than in a case under the Bankruptcy Code.

### Actual and Necessary Expenses of Proskauer

42.     Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and
necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor
during the Compensation Period.

43.     In accordance with paragraph C.13 of the Appendix B Guidelines and as more
fully itemized in **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable
expenses, including: (a) reproduction, (b) online research, (c) local travel to and from airports,
(d) out-of-town travel and lodging, (e) out-of-town meals, (f) litigation support, and (g)
professional services.  All expense entries detailed in **Exhibit B** comply with the requirements
set forth in the Guidelines, including an itemization of the expenses by category, the date the
expense was incurred, and the individual incurring the expense, where available.  The reasons for
the expenses are self-explanatory.  In compliance with Appendix B Guidelines paragraph C.13,
the requested expenses are of the kind customarily charged to Proskauer's non-bankruptcy
clients and by other comparable professionals.

44.     Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per
page for photocopying expenses. The rates charged by the firm for Westlaw and Lexis
computerized research vary according to the type of research conducted and the specific files
researched, but, in any event, Proskauer does not profit from the use of computer assisted legal
research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not

requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.  The expenditures Proskauer is seeking reimbursement for and which are detailed on **Schedule 4** are all of the type customarily billed to clients.

45.     During the Compensation Period, Proskauer has disbursed **$59,541.78** as necessary and reasonable expenses. These charges cover Proskauer's direct operating costs, which costs are not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon clients who do not require extensive photocopying and other facilities and services).  Only clients who actually benefit from services of the kind set forth in **Exhibit B** are separately charged for such services.  Proskauer has made every effort to minimize its expenses in the Debtor's Title III Case.  The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to effectively serve the needs of the Debtor in its Title III case.

### Compensation Paid and Its Source

46.     All services for which Proskauer seeks compensation, and expenses for which it seeks reimbursement, were performed on behalf of the Oversight Board as representative of the Debtor.  In connection with the matters covered by this Application, Proskauer received no payment and no promises of payment for services rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or understanding between Proskauer and any other person, other than members of the firm, for the sharing of compensation received for services rendered in this Title III case.

47.     PROMESA sections 316 and 317 provide for interim compensation of professionals and govern the Court's award of such compensation.  PROMESA section 316 provides that a court may award a professional person employed by the Debtor or the Oversight Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered

by the professional person, or attorney and by any paraprofessional person employed by any

such person; and (2) reimbursement for actual, necessary expenses."   PROMESA § 316(a).

Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded … the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

48.   As noted above, the professional services and expenditures for which Proskauer

seeks compensation and reimbursement in this Application were necessary and beneficial to the

Oversight Board as representative of the Debtor, and included, among other things, anticipating

or responding to the Oversight Board's needs and assisting in the Oversight Board's navigation

of the Debtor's very complex Title III case.  The compensation requested herein is reasonable in

light of the nature, extent, and value of such services to the Oversight Board.  The Oversight

Board has reviewed and approved this Application.

**Reservations**

49.     To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

**Notice**

50.     Pursuant to the Interim Compensation Order, notice of this Application has been filed in the Debtor's Title III Case and the jointly-administered Commonwealth of Puerto Rico's Title III case and served upon:

(a)  the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;

(b)  attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC,  250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@ oneillborges.com);

(c)  attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com), and Diana M. Perez, Esq. (dperez@omm.com);

(d)  attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muniz LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan P.R. 00917, Attn.: Luis C. Marini-Biaggi, Esq., (lmarini@mpmlawpr.com) and Carolina Velaz-Rivero Esq. (cvelaz@mpmlawpr.com);

(e)  the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

(f)  attorneys for the Official Committee of Unsecured Creditors, Paul
Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A.
Despins, Esq. (lucdespins@paulhastings.com);

(g)  attorneys for the Official Committee of Unsecured Creditors, Casillas,
Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras
Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala,
Esq. (jcasillas@cstlawpr.com) and Alberto J.E. Añeses Negrón, Esq.
(aaneses@cstlawpr.com);

(h)  attorneys for the Official Committee of Retired Employees, Jenner &
Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert
Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq.
(rlevin@jenner.com); and Jenner & Block LLP, 353 N. Clark Street,
Chicago, IL 60654, Attn: Catherine Steege, Esq. (csteege@jenner.
com) and Melissa Root, Esq. (mroot@jenner.com);

(i)  attorneys for the Official Committee of Retired Employees, Bennazar,
García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce
de León, Hato Rey, PR 00918, Attn: A.J. Bennazar- Zequeira, Esq.
(ajb@bennazar.org);

(j)  the Puerto Rico Department of Treasury, PO Box 9024140, San Juan,
PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of
Central   Accounting   (Reylam.Guerra@hacienda.pr.gov);   Omar  E.
Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting
(Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez,
Deputy Assistant Secretary of Internal Revenue and Tax Policy
(angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant
Secretary   of   Internal   Revenue   and   Tax   Policy
(francisco.pares@hacienda.pr.gov); and Francisco Peña Montañez,
CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda.
pr.gov);

(k)  attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252
Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR
00918, Attn: Eyck O. Lugo (elugo@edgelegalpr.com); and

(l)  attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main
Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler
(KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing

interim compensation for professional services rendered during the Compensation Period in the

amount of **$1,177,407.10** (which represents 100% of compensation sought for the Compensation Period, including the 10% professional compensation holdback amount), $1,156,458.70 of which represents fees earned outside of Puerto Rico and $20,948.40 of which represents fees earned in Puerto Rico, and reimbursement for actual and necessary expenses Proskauer incurred in connection with such services during the Compensation Period in the amount of **$59,541.78**; (b) directing the Debtor to pay promptly to Proskauer the difference between (i) the amount of interim compensation for professional services rendered and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (ii) the amounts for such compensation and expenses previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application; and (d) granting Proskauer such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: November 16, 2018
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com
      mzerjal@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M. Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board as Representative of the Debtor*