**Exhibit E**

**Audited Financial Statements for COFINA for the Year Ended June 30, 2015**



## GOVERNMENT OF PUERTO RICO

### Puerto Rico Fiscal Agency and Financial Advisory Authority

## Municipal Secondary Market Disclosure Information Cover Sheet
## Municipal Securities Rulemaking Board (MSRB)
## Electronic Municipal Market Access System (EMMA)

**THIS FILING RELATES TO A SINGLE BOND ISSUE:**

Name of bond issue exactly as it appears on the cover of the Official Statement:

Nine-digit CUSIP* numbers if available, to which the information relates:

**THIS FILING RELATES TO ALL OR SEVERAL SECURITIES ISSUED BY THE ISSUER, OR ALL OR SEVERAL SECURITIES OF A SPECIFIC CREDITOR:**

Issuer's Name:    **Puerto Rico Sales Tax Financing Corporation (COFINA)**

Other Obligated Person's Name (if any):

Six-digit CUSIP* number(s):  **74529J**

**TYPE OF INFORMATION PROVIDED:**

A.  ☐ **Annual Financial Information and Operating Data pursuant to Rule 15c2-12**

   **Fiscal Period Covered:**

B.  ☒ **Audited Financial Statements or CAFR pursuant to Rule 15c2-12**

   **Fiscal Period Covered:  2014-15**

C.  ☐ **Notice of Failure to Provide Annual Financial Information as Required:**

I represent that I am authorized by the issuer, obligor or its agent to distribute this information publicly.


*/s/ Sebastián M. Torres Rodríguez*
Sebastián M. Torres Rodríguez
Puerto Rico Fiscal Agency and Financial Advisory Authority,
   as Fiscal Agent for the Commonwealth

Dated: September 19, 2018



**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Basic Financial Statements and
Required Supplementary Information

June 30, 2015

(With Independent Auditors' Report Thereon)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

**Table of Contents**

|  | Page |
|---|---|
| Independent Auditors' Report | 1–2 |
| Management's Discussion and Analysis (Unaudited) | 3–7 |
| Basic Financial Statements: | |
| Governmental Funds Balance Sheet and Statement of Net Position (Deficit) | 8 |
| Reconciliation of Governmental Funds Balance Sheet to the Statement of Net Position (Deficit) | 9 |
| Governmental Funds Statement of Revenues, Expenditures, and Changes in Fund Balances and Statement of Activities | 10 |
| Reconciliation of the Governmental Funds Statement of Revenues, Expenditures, and Changes in Fund Balances to the Statement of Activities | 11 |
| Notes to Basic Financial Statements | 12–38 |



KPMG LLP
American International Plaza
Suite 1100
250 Muñoz Rivera Avenue
San Juan, PR 00918-1819

### Independent Auditors' Report

The Board of Directors
Puerto Rico Sales Tax Financing Corporation:

We have audited the accompanying financial statements of the governmental activities and each major fund of the Puerto Rico Sales Tax Financing Corporation (the Corporation), a component unit of the Commonwealth of Puerto Rico, as of and for the year ended June 30, 2015, and the related notes to the financial statements, which collectively comprise the Corporation's basic financial statements as listed in the table of contents.

**Management's Responsibility for the Financial Statements**

Management is responsible for the preparation and fair presentation of these financial statements in accordance with U.S. generally accepted accounting principles; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of financial statements that are free from material misstatement, whether due to fraud or error.

**Auditors' Responsibility**

Our responsibility is to express opinions on these financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the financial statements. The procedures selected depend on the auditors' judgment, including the assessment of the risks of material misstatement of the financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinions.

**Opinions**

In our opinion, the financial statements referred to above present fairly, in all material respects, the respective financial position of the governmental activities and each major fund of the Puerto Rico Sales Tax Financing Corporation as of June 30, 2015, and the respective changes in financial position for the year then ended in accordance with U.S. generally accepted accounting principles.

**Emphasis of Matters**

*Uncertainty about Ability to Continue as a Going Concern*

The accompanying financial statements have been prepared assuming that the Corporation will continue as a going concern. As discussed in note 3 to the basic financial statements, on May 5, 2017, the Oversight Board,

KPMG LLP is a Delaware limited liability partnership and the U.S. member
firm of the KPMG network of independent member firms affiliated with
KPMG International Cooperative ("KPMG International"), a Swiss entity.



created by the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), filed a petition for relief under Title III of PROMESA similar to bankruptcy. Also as discussed in note 3, the Corporation has stated that substantial doubt exists about its ability to continue as a going concern. Management's evaluation of the events and conditions and management's plans regarding these matters are described in note 3. The basic financial statements do not include any adjustments that might result from the outcome of this uncertainty. Our opinions are not modified with respect to this matter.

**Other Matters**

*Required Supplementary Information*

U.S. generally accepted accounting principles require that the management's discussion and analysis on pages 3 through 7 be presented to supplement the basic financial statements. Such information, although not a part of the basic financial statements, is required by the Governmental Accounting Standards Board who considers it to be an essential part of financial reporting for placing the basic financial statements in an appropriate operational, economic or historical context. We have applied certain limited procedures to the management's discussion and analysis in accordance with auditing standards generally accepted in the United States of America, which consisted of inquiries of management about the methods of preparing the information and comparing the information for consistency with management's responses to our inquiries, the basic financial statements, and other knowledge we obtained during our audit of the basic financial statements. We do not express an opinion or provide any assurance on the information because the limited procedures do not provide us with sufficient evidence to express an opinion or provide any assurance.

KPMG LLP

San Juan, Puerto Rico
September 17, 2018

Stamp No. E348568 of the Puerto Rico
Society of Certified Public Accountants
was affixed to the record copy of this report.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2015

As management of the Puerto Rico Sales Tax Financing Corporation ("the Corporation" or "COFINA"), we offer readers of the Corporation's financial statements this narrative overview and analysis of the financial performance during the fiscal year ended June 30, 2015. Please read it in conjunction with the Corporation's basic financial statements including the notes thereto, which follow this section.

**Financial Highlights**

- Net deficit in the statement of net position (deficit) increased to $6,459.8 million at June 30, 2015 from $5,474.5 million at June 30, 2014. The increase in net deficit is mainly due to interest expense on Sales Tax Revenue Bonds and other expenses, of approximately $959.4 million, and the recognition of a custodial credit loss on deposits placed in the Government Development Bank for Puerto Rico ("the Bank") amounting to $26.2 million.

- Receipt of sales and use tax increased to $669.5 million in fiscal year 2015 from $643.7 million in fiscal year 2014, an increase of $25.8 million. This increase was due to a statutory rate increase of 4% provided by Act No. 91, as amended. See note 1 to the basic financial statements.

- In September 2014, the Board of Directors of COFINA, due to Moody's Investment Services (Moody's) and Fitch Ratings (Fitch) downgrades of COFINA's credit rating triggering the Additional Termination Event (ATE) on the swap agreement, entered into an agreement with Goldman Sachs (GS) that required COFINA to post collateral over a period of time, and allow the swap to remain in place and remove all ATE's. As of June 30, 2015, said collateral amounted to $27 million. See note 9 to the basic financial statements.

**Overview of the Financial Statements**

These basic financial statements include the management's discussion and analysis section, the independent auditors' report, and the basic financial statements of the Corporation. The basic financial statements also include notes that explain in more detail some of the information in the basic financial statements.

**Required Financial Statements**

- The statement of net position (deficit) provides information about the nature and amounts of resources (assets) and the Corporation's obligations (liabilities).

- Current year revenues and expenses are accounted for in the statement of activities. This statement measures the results of the Corporation's operations over the past year.

- Governmental funds' financial statements present the financial position and results of operations of the Corporation's two governmental fund types using a current financial resources measurement focus. The statement of revenues, expenditures, and changes in fund balances can be used to determine, for example, whether and how the Corporation met its debt service requirements for the year.

**Financial Analysis**

In evaluating the Corporation's finances, in addition to the Corporation's assets and liabilities, one needs to consider various non-financial factors, such as changes in economic conditions, and new or changed government legislation. Due to the nature of the Corporation's activities, the Corporation's financial strength and ability to repay its obligations is solely dependent on the sales and use tax transferred to the Corporation by law and used to fund the debt service fund.

For additional information about the sales tax transferred to the Corporation, refer to note 1 to the basic financial statements.

3

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2015

**Government-Wide Financial Analysis**

The government-wide financial statements were designed so that the user could evaluate the Corporation's financial condition at the end of the year. The following is a condensed summary of net position (deficit) for the Corporation at June 30, 2015 and 2014 (in thousands):

| | June 30 | | Change | |
|---|---|---|---|---|
| | 2015 | 2014 | Amount | Percent |
| Assets: | | | | |
| Receivable from Commonwealth of Puerto Rico | $ 10,330,795 | 10,997,814 | (667,019) | (6.1)% |
| Other assets | 430,453 | 436,590 | (6,137) | (1.4) |
| Total assets | 10,761,248 | 11,434,404 | (673,156) | (5.9) |
| Total deferred outflow of sources | 96,481 | 103,172 | (6,691) | (6.5) |
| Liabilities: | | | | |
| Accounts payable and other | 261,606 | 268,553 | (6,947) | (2.6) |
| Liabilities payable from restricted assets | 16,955,656 | 16,640,869 | 314,787 | 1.9 |
| Total liabilities | 17,217,262 | 16,909,422 | 307,840 | 1.8 |
| Total deferred inflow of sources | 100,237 | 102,617 | (2,380) | (2.3) |
| Net position (deficit) – unrestricted | $ (6,459,770) | (5,474,463) | (985,307) | 18.0% |

As noted above, the Corporation's net position (deficit) at June 30, 2015, amounted to $(6,459.8) million, an increase of $985.3 million or 18% from $(5,474.5) million at June 30, 2014. The increase in net deficit is mainly due to interest expense on Sales Tax Revenue Bonds and other expenses, of approximately $959.4 million, and the recognition of a custodial credit loss on deposits placed in the Government Development Bank for Puerto Rico (the "Bank") amounting to $26.2 million. At June 30, 2015, the Corporation had $16,955.7 million of bonds payable outstanding, an increase of $314.8 million or 1.9% from $16,640.9 million at June 30, 2014. As of June 30, 2015 and 2014, the Corporation has recorded $3.4 million to cover for any unfavorable outcome related to a claim in connection with the termination of an interest rate exchange agreement in 2008, refer to note 10 to the basic financial statements.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2015

Condensed revenues, expenses, and change in net position (deficit) for the year ended June 30, 2015 and 2014, are presented below (in thousands):

| | | June 30 | | Change | |
| | | 2015 | 2014 | Amount | Percent |
|---|---|---|---|---|---|
| Expenses: | | | | | |
| Interest on long-term debt | $ | (959,437) | (945,971) | (13,466) | 1.4% |
| Custodial credit loss on interest bearing deposits with Government Development Bank | | (26,157) | — | (26,157) | (100.0)% |
| Other | | (145) | (3,254) | 3,109 | (95.5) |
| Total expenditures | | (985,739) | (949,225) | (36,514) | 3.8 |
| Program revenues: | | | | | |
| Investment earnings | | 432 | 252 | 180 | 71.4 |
| Other | | — | 9,666 | (9,666) | 100.0 |
| Total revenues | | 432 | 9,918 | (9,486) | (95.6) |
| Change in net position (deficit) | $ | (985,307) | (939,307) | (46,000) | 4.9% |

Total interest on long term debt for the year ended June 30, 2015 amounted to approximately $959.4 million, an increase of $13.5 million when compared to 2014. The increase in the interest expense on long-term debt is mainly related to a slight increase in the rate on variable-interest rate bonds and the impact of discount on capital appreciation bonds. Also, during the fiscal year ended June 30, 2015, the Corporation recorded a custodial credit loss on deposits in the Bank amounting to $26.2 million.

**Governmental Fund Financial Analysis**

The Corporation's governmental funds reported a total fund balance as of June 30, 2015 and 2014, of $429.6 million and $432.2 million, respectively. The debt service fund is funded with the receipts of sales and use tax and interest thereon. For the years ended June 30, 2015 and 2014, the receipts of sales and use tax amounted to $669.5 million and $643.7 million, respectively.

**Debt Administration**

As of June 30, 2015, the Corporation's outstanding bonds balance was $16,955.7 million, after taking into account an unamortized bond premium of $82.5 million, and an unaccreted discount of $110 million. As of June 30, 2014, the Corporation's outstanding bonds and note balance were $16,640.9 million, after taking into account unamortized bond premium of $86.3 million, and an unaccreted discount of $112.6 million. The bonds are payable in various dates through fiscal year 2058.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2015

During the fiscal year 2015, COFINA was subject to certain credit downgrades by the major credit rating agencies. The following table summarizes the Corporation's credit ratings as of June 30, 2015 and 2014:

| Agency | Date | Sales Tax Revenue Bonds | |
| | | Senior Lien Series | First Subordinate Series |
|---|---|---|---|
| Moody's | 06/30/15 | Caa2 | Caa3 |
| | 06/30/14 | Baa1 | Baa2 |
| S&P | 06/30/15 | CCC- | CCC- |
| | 06/30/14 | AA- | A+ |
| Fitch | 06/30/15 | CC | CC |
| | 06/30/14 | AA- | A+ |

**Going Concern**

Management believes that there is substantial doubt about the Corporation's ability to continue as a going concern because of the following:

On June 30, 2016, the U.S. Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which grants the Commonwealth and its component units' access, including COFINA, to an orderly mechanism to restructure their debts in exchange for significant federal oversight over the Commonwealth's finances. In broad strokes, PROMESA seeks to provide Puerto Rico with fiscal and economic discipline through the creation of the Financial Oversight and Management Board (the Oversight Board), relief from creditors and lawsuits through the enactment of a temporary stay on litigation, and two alternative methods to adjust unsustainable debt.

On May 5, 2018, the Oversight Board filed a petition for relief under Title III of (PROMESA.) Title III of PROMESA incorporates the automatic stay provisions of Bankruptcy Code section 362 and 922, which are made applicable to the Title III cases to PROMESA section 301 (a). As further discussed in note 11, certain stakeholders (bondholders, creditors, guarantors, investors and others) commenced legal proceedings challenging the constitutionality of the law that created COFINA and the ownership of the future SUT revenues.

As further discussed in note 11, the Oversight Board also approved and certified the fiscal plan of the Commonwealth and certain other governmental entities (the Fiscal Plan). The Fiscal Plan contemplates that for each of the next 5 fiscal years (FY 2018-2023) some portion of the Pledged Sales Tax will be used by the Commonwealth for purposes other than payment of COFINA debt service.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Management's Discussion and Analysis (Unaudited)

June 30, 2015

*Remediation Plan*

Management believes that the outcome of the Title III proceeding in the federal court is highly uncertain at this time and the resolution of the legal conflicts could result in the redirection of revenues to pay-non COFINA's bondholders and other government creditors or significantly modifying or terminating COFINA purpose. The Corporation assumes that the Plan of Adjustment that will be filed in the Title III case will address the Corporation's liabilities. Management of the Corporation believes that the aforementioned events and the further circumstances also described in note 11, raise substantial doubt about the Corporation ability to continue as going concern.

**Request for Information**

This financial report is designed to provide those interested with a general overview of the Corporation's finances and to enhance the Corporation's accountability for the funds it receives. Questions about this report or requests for additional information should be addressed to Puerto Rico Sales Tax Financing Corporation, PO Box 42001, San Juan, Puerto Rico, 00940-2001.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Governmental Funds Balance Sheet and Statement of Net Position (Deficit)

June 30, 2015

| | | Governmental Funds Balance Sheet | | | |
| --- | ---: | ---: | ---: | ---: | ---: |
| | General Fund | Debt Service Fund | Total | Adjustments | Statement of Net Position (Deficit) |
| **Assets:** | | | | | |
| Interest-bearing deposits with Government Development Bank for Puerto Rico | $ 5,167,570 | 360,939 | 5,528,509 | – | 5,528,509 |
| Deposit placed with commercial bank | – | 27,000,000 | 27,000,000 | – | 27,000,000 |
| Cash held by trustee | – | 4,763 | 4,763 | – | 4,763 |
| Receivable from the Commonwealth of Puerto Rico | – | 10,330,795,348 | 10,330,795,348 | – | 10,330,795,348 |
| Accrued interest receivable | – | 2,932 | 2,932 | – | 2,932 |
| Other receivables | – | 656,223 | 656,223 | – | 656,223 |
| Investments | 165,635 | 397,094,919 | 397,260,554 | – | 397,260,554 |
| Total assets | 5,333,205 | 10,755,915,124 | 10,761,248,329 | – | 10,761,248,329 |
| **Deferred outflows of resources:** | | | | | |
| Accumulated decrease in fair value of hedging derivative | – | – | – | 53,199,611 | 53,199,611 |
| Deferred loss on bonds refunding | – | – | – | 43,281,672 | 43,281,672 |
| Total deferred outflows of resources | – | – | – | 96,481,283 | 96,481,283 |
| **Liabilities:** | | | | | |
| Accounts payable and accrued liabilities | 178,795 | 623,945 | 802,740 | 3,400,000 | 4,202,740 |
| Accrued interest payable | – | – | – | 204,203,893 | 204,203,893 |
| Interest rate swap liability | – | – | – | 53,199,611 | 53,199,611 |
| Unearned revenue – sales and use tax | – | 10,330,795,348 | 10,330,795,348 | (10,330,795,348) | – |
| Bonds and notes payable in more than one year, net | – | – | – | 16,955,656,623 | 16,955,656,623 |
| Total liabilities | 178,795 | 10,331,419,293 | 10,331,598,088 | 6,885,664,779 | 17,217,262,867 |
| **Deferred inflows of resources:** | | | | | |
| Deferred gain on bond refundings | – | – | – | 100,237,016 | 100,237,016 |
| **Fund balance/net position (deficit):** | | | | | |
| Fund balance: | | | | | |
| Restricted | – | 424,495,831 | 424,495,831 | (424,495,831) | – |
| Unassigned | 5,154,410 | – | 5,154,410 | (5,154,410) | – |
| Total fund balance | 5,154,410 | 424,495,831 | 429,650,241 | (429,650,241) | – |
| Total liabilities and fund balance | $ 5,333,205 | 10,755,915,124 | 10,761,248,329 | | |
| **Net position (deficit):** | | | | | |
| Unrestricted | | | | (6,459,770,271) | (6,459,770,271) |
| Net position (deficit) | | | | $ (6,459,770,271) | (6,459,770,271) |

See accompanying notes to basic financial statements.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Reconciliation of Governmental Funds Balance Sheet to the
Statement of Net Position (Deficit)

June 30, 2015

| | | |
|---|---|---:|
| Total fund balances - governmental funds: | $ | 429,650,241 |
| Amounts reported for governmental activities in the statement of net position (deficit) are different because: | | |
| Deferred outflows of resources do not constitute current financial resources and, therefore, are not reported in the funds | | 53,199,611 |
| Accrued interest payable is not due and payable in the current period, and, therefore, is not reported in the fund financial statements | | (204,203,893) |
| Contingent liabilities are not due and payable in the current period, and, therefore, are not reported in the fund financial statements | | (3,400,000) |
| Bonds and notes payable are not due and payable in the current period, and, therefore, are not reported in the funds financial statements | | (16,955,656,623) |
| Deferred loss on bond refundings is not reported as an expenditure in the governmental fund financial statements; however, such loss is deferred and amortized over the remaining life of the refunded bonds | | 43,281,672 |
| Deferred gain on bond refundings is not reported as revenue in the governmental fund financial statements; however, such gain is deferred and amortized over the remaining life of the refunded bonds | | (100,237,016) |
| Interest rate swap liability is not due and payable in the current period, and therefore, is not reported in the funds financial statements | | (53,199,611) |
| Receivable from the Commonwealth does not constitute current financial resources, and, therefore, is unearned in the fund financial statements | | 10,330,795,348 |
| Net position (deficit) of governmental activities | $ | (6,459,770,271) |

See accompanying notes to basic financial statements.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Governmental Funds Statement of Revenues,
Expenditures, and Changes in Fund Balances and Statement of Activities
Year ended June 30, 2015

| | General Fund | Debt Service Fund | Total | Adjustments | Statement of Activities |
|---|---|---|---|---|---|
| **Expenditures/expenses:** | | | | | |
| General government: | | | | | |
| Payment of obligations of the Commonwealth of Puerto Rico | $ 2,461,802 | - | 2,461,802 | (2,461,802) | - |
| Custodial credit loss | 19,732,380 | 6,424,842 | 26,157,222 | - | 26,157,222 |
| Other | 93,555 | 51,464 | 145,019 | - | 145,019 |
| Debt service: | | | | | |
| Interest | - | 643,668,454 | 643,668,454 | 315,768,063 | 959,436,517 |
| Total expenditures/expenses | 22,287,737 | 650,144,760 | 672,432,497 | 313,306,261 | 985,738,758 |
| **Program revenues:** | | | | | |
| Payments from Commonwealth of Puerto Rico – sales and use tax | - | 669,480,293 | 669,480,293 | (669,480,293) | - |
| Investment earnings | 36 | 401,876 | 401,912 | - | 401,912 |
| Other income | 30,000 | - | 30,000 | - | 30,000 |
| Total revenues | 30,036 | 669,882,169 | 669,912,205 | (669,480,293) | 431,912 |
| Net program (expenses) revenue | (22,257,701) | 19,737,409 | (2,520,292) | (982,786,554) | (985,306,846) |
| **Other financing sources (uses):** | | | | | |
| Transfers in (out) | 21,970,750 | (21,970,750) | - | - | - |
| Total other financing sources (uses) | 21,970,750 | (21,970,750) | - | - | - |
| Excess (deficiency) of revenues and other financing sources over expenditures and other financing uses | (286,951) | (2,233,341) | (2,520,292) | 2,520,292 | - |
| Change in net position (deficit) | - | - | - | (985,306,846) | (985,306,846) |
| **Fund balance/net position (deficit):** | | | | | |
| At beginning of year | 5,441,361 | 426,729,172 | 432,170,533 | (5,906,633,958) | (5,474,463,425) |
| At end of year | $ 5,154,410 | 424,495,831 | 429,650,241 | (6,889,420,512) | (6,459,770,271) |

See accompanying notes to basic financial statements.

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(An Component Unit of the Commonwealth of Puerto Rico)

Reconciliation of Governmental Funds Statement of Revenues, Expenditures, and Changes in
Fund Balances to the Statement of Activities

Year ended June 30, 2015

| | |
|---|---:|
| Net changes in fund balances - total governmental funds: | $ (2,520,292) |
| Amounts reported for governmental activities in the statement of activities are different because: | |
| Net change in interest payable reported in the statement of activities does not require the use of current financial resources and, therefore, is not reported as expenditure in the governmental funds | 3 |
| Accretion on capital appreciation bonds does not require the use of current financial resources and, therefore, is not reported as expenditure in the governmental funds | (315,944,254) |
| Payments from the Commonwealth of Puerto Rico – Sales and Use Tax provide current financial resources to governmental funds; however, represent repayments of the receivable from the Commonwealth of Puerto Rico in the statement of activities | (669,480,293) |
| Payments of obligations of the Commonwealth of Puerto Rico in exchange for future collections of Sales and Use Tax constitute secured borrowing transactions recorded as receivable from Commonwealth of Puerto Rico in the statement of net position (deficit) | 2,461,802 |
| The amortization of bond discount/premium, and gain/loss on bond defeasance do not require the use of current financial resources and, therefore, are not reported as revenues/expenditures in governmental funds: | |
| Amortization of bond discount/premium | 1,156,874 |
| Amortization of gain/loss on bonds defeased | (980,686) |
| Change in net position (deficit) of governmental activities | $ (985,306,846) |

See accompanying notes to basic financial statements.

11

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

**(1)    Reporting Entity**

Puerto Rico Sales Tax Financing Corporation (the Corporation) is a component unit of the Commonwealth of Puerto Rico (the Commonwealth) and a related entity of Government Development Bank for Puerto Rico (the Bank or GDB), another component unit of the Commonwealth. The Corporation was created under Act No. 91 of the Legislative Assembly of the Commonwealth (the Legislative Assembly), approved on May 13, 2006; as amended by Act No. 291, approved on December 26, 2006; Act No. 56, approved on July 6, 2007; Act No. 1, approved on January 14, 2009; Act No. 7, approved on March 9, 2009; and Act No. 18, approved on May 22, 2009 (collectively, Act No. 91). The Corporation was originally created for the purpose of financing the payment, retirement or defeasance of certain debt obligations of the Commonwealth outstanding as of June 30, 2006 (the 2006 Appropriation Debt).

The Commonwealth imposes a sales and use tax ("SUT") on a broad range of goods and services. The total tax imposed is 7% and is allocated as follows: 5.5% for the benefit of the Commonwealth (the Commonwealth Sales Tax), and 1.5% for the municipalities of the Commonwealth.

Act No. 91 established the Dedicated Sales Tax Fund, a special fund held and owned by the Corporation separate and apart from the Commonwealth's General Fund. Act No. 91 requires that the following amounts be deposited in the Dedicated Sales Tax Fund in each fiscal year, whichever is greater: (i) a minimum fixed amount, referred to in Act No. 91 as the Pledged Sales Tax Base Amount, or (ii) the product of the amount of the Commonwealth Sales Tax collected during such fiscal year multiplied by a fraction, the numerator of which is two point seventy-five percent (2.75%) and the denominator of which is the rate of the Commonwealth Sales Tax (the greater of (i) and (ii) being referred to as the Pledged Sales Tax). In each fiscal year, the first collections of the Commonwealth Sales Tax are deposited in the Dedicated Sales Tax Fund and applied to fund the Pledged Sales Tax Base Amount. The Pledged Sales Tax Base Amount for the fiscal year ended June 30, 2015, was $669,480,293. The Pledged Sales Tax Base Amount increases each fiscal year thereafter at a statutory rate of 4% up to $1,850,000,000. Under Act No. 91, the moneys on deposit in the Dedicated Sales Tax Fund may be used for the payment of the Corporation's bonds or satisfaction of the Authorized Uses (as defined below).

During 2009, the Legislative Assembly expanded the purposes of the Corporation. The Corporation is authorized to pay or finance, in whole or in part, or fund, in addition to the 2006 Appropriation Debt: (i) the debt of the Secretary of the Treasury of the Commonwealth (the Secretary of the Treasury) with the Bank in the amount of $1 billion, a portion of the proceeds of which were used to cover the budgetary deficit of the Commonwealth for fiscal year 2009, (ii) certain financing granted to the Secretary of the Treasury by the Bank payable from future Commonwealth general obligation bonds, and any debt of the Commonwealth outstanding as of December 31, 2008, that did not have a source of repayment or was payable from budgetary appropriations, (iii) a portion of the accounts payable to suppliers of the Commonwealth, (iv) operational expenses of the Commonwealth for fiscal years 2009, 2010, and 2011, (v) operational expenses of the Commonwealth for fiscal year 2012, to the extent included in the annual budget of the Commonwealth, (vi) the Puerto Rico Economic Stimulus Fund, (vii) the Commonwealth Emergency Fund in order to cover expenses resulting from catastrophic events such as hurricanes or floods, and (viii) the Economic Cooperation and Public Employees Alternatives Fund (all such uses, together with the 2006 Appropriation Debt, the Authorized Uses).

12

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

On October 9, 2013, an amendment to Act No. 91 was signed into law which increased from 2.75% to 3.50% the portion of the Pledge Sales Tax deposited in the Dedicated Sales Tax Fund and expanded the Authorized Uses of Corporation's bond proceeds to include, among others, the refinancing of Bond Anticipation Notes and the financing of the Commonwealth's deficit for fiscal years 2013, 2014 and 2015.

Regardless of the level of Commonwealth Sales Tax collections, Act No. 91 requires that in each fiscal year all collections of the Commonwealth Sales Tax be deposited in the Dedicated Sales Tax Fund until an amount equal to the Pledged Sales Tax Base Amount is deposited before any collections of the Commonwealth Sales Tax are deposited in the Commonwealth's General Fund.

(2)   **Summary of Significant Accounting Policies**

The preparation of basic financial statements in conformity with U.S. generally accepted accounting principles (US GAAP) requires management to make estimates and assumptions that affect the reported amounts of assets and liabilities and disclosure of contingent assets and liabilities at the date of the financial statements, and the reported amounts of changes in net position (deficit) during the reporting period. Actual results could differ from those estimates.

The accounting and reporting policies of the Corporation conform to accounting principles generally accepted in the United States of America, as applicable to governmental entities. The Corporation follows GASB under the hierarchy established by Statement No. 55, *The Hierarchy of Generally Accepted Accounting Principles for State and Local Governments*, in the preparation of its basic financial statements.

Following is a description of the Corporation's most significant accounting policies:

*(a)*   ***Basis of Presentation***

The financial activities of the Corporation consist only of governmental activities. For its reporting purposes, the Corporation has combined the fund and government-wide financial statements using a columnar format that reconciles individual line items of fund financial data to government-wide data in a separate column.

Government-Wide Financial Statements – The statement of net position (deficit) and the statement of activities report information on all activities of the Corporation. The effect of interfund balances has been removed from the statement of net position (deficit). Governmental activities are financed through revenue of the SUT deposited in the Dedicated Sales Tax Fund and other financing sources.

The statement of net position (deficit) presents the Corporation's assets and liabilities, with the difference reported as net position (deficit). Net position (deficit) is reported in two categories:

- Restricted Net Position – Results when constraints placed on net position use are either externally imposed by creditors, grantors, contributors, and the like, or imposed by law through constitutional provisions or enabling legislation.

- Unrestricted Net Position – Consist of net position that does not meet the definition in the preceding category. Unrestricted net position often is designated in order to indicate that management does not consider them to be available for general operations. Unrestricted net position often has constraints on use that are imposed by management, but such constraints may be removed or modified.

13                                                                                      (continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

The statement of activities demonstrates the degree to which direct expenses of a given function or segment are offset by program revenues. Direct expenses are those that are clearly identifiable within a specific function. Program revenues consist of investment earnings (including the change in fair value of ineffective investment derivative). Other items not meeting the definition of program revenues are reported as general revenues.

Governmental Funds Financial Statements – The accounts of the Corporation are organized on the basis of funds, each of which is considered a separate accounting entity. Separate financial statements are provided for governmental funds. Major individual governmental funds are reported as separate columns in the fund financial statements. All funds of the Corporation are major funds.

Fund Accounting – The financial activities of the Corporation are recorded in individual funds, each of which is deemed to be a separate accounting entity. Fund accounting is designed to demonstrate legal compliance and to aid financial management by segregating transactions related to certain government functions or activities. A fund is a separate accounting entity with a self-balancing set of accounts. The financial activities of the Corporation that are reported in the accompanying basic financial statements have been classified into the following major governmental funds:

- General Fund – The general fund of the Corporation is used to account for all financial resources, except those required to be accounted for in another fund.
- Debt Service Fund – The debt service fund is used to account for the SUT deposited in the Dedicated Sales Tax Fund for the payment of interest and principal on long-term obligations.

Fund balances for each governmental fund are displayed in the following classifications depicting the relative strength of the spending constraints placed on the purposes for which resources can be used:

- Nonspendable – amounts that cannot be spent because they are either not in a spendable form (such as inventories and prepaid amounts) or are legally of contractually required to be maintained intact.
- Restricted – amounts that can be spent only for specific purposes because of constraints imposed by external providers (such as grantors, bondholders, and higher levels of government), or imposed by constitutional provisions or enabling legislation. Effectively, restrictions may be changed or lifted only with the consent of the resource provider or by constitutional provisions or enabling legislation.
- Committed – amounts that can be spent only for specific purposes determined by a formal action of the government's highest level of decision-making authority.  The Corporation's highest decision-making level of authority rests with the Board of Directors. The Corporation did not have any committed resources as of June 30, 2015.
- Assigned – amounts the government intends to use for specific purposes that do not meet the criteria to be classified as restricted or committed (generally executive orders approved by the Corporation's Executive Director).
- Unassigned – amounts that are available for any purpose.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

*(b)*   ***Measurement Focus, Basis of Accounting and Financial Statement Presentation***

The accounting and financial reporting treatment is determined by the applicable measurement focus and basis of accounting. Measurement focus indicates the type of resources being measured such as current financial resources or economic resources. The basis of accounting indicates the timing of transactions or events for recognition in the financial statements.

Government-Wide Financial Statements – Government-wide financial statements are reported using the economic resources measurement focus and the accrual basis of accounting. Revenue is recorded when earned and expenses are recorded when a liability is incurred, regardless of the timing of related cash flows.

Governmental Funds Financial Statements – The governmental fund's financial statements are reported using the current financial resources measurement focus and the modified accrual basis of accounting. Revenues are recognized when they become measurable and available. Revenue is considered to be available when it is collectible within the current period or soon enough thereafter to pay liabilities of the current period. For this purpose, the Corporation considers revenues to be available if they are collected within 30 days of the end of the current fiscal year-end. Expenditures generally are recorded when a liability is incurred as under accrual accounting, except that interest on general long-term obligations is generally recognized when paid, and debt service principal expenditures and claims and judgments are recorded only when payment is due. Expenses paid on behalf of the Commonwealth are recorded as an increase in the receivable from the Commonwealth of Puerto Rico in the government-wide financial statements.

Payments from the Commonwealth of Puerto Rico for SUT are recognized as revenue in the fund financial statements upon collection or when the Commonwealth is obligated to make the payments. In the government-wide financial statements, these payments reduce the receivable from the Commonwealth of Puerto Rico. Collections of SUT received after the receivable from the Commonwealth of Puerto Rico has been liquidated are reported as revenue in the statement of activities.

*(c)*   ***Budgetary Accounting***

The Corporation is not required to submit a budget for approval by the Legislative Assembly; consequently, no formal budgetary accounting procedures are followed.

*(d)*   ***Investments***

Investments are reported at fair value, except for money market instruments with a remaining maturity at the time of purchase of one year or less and investment positions in 2a7 (Securities and Exchange Commission Rule 2a7 of the Investment Company Act of 1940) like external investment pools, which are carried at cost or the pool's share price. Fair value is determined based on quoted market prices and quotations received from independent broker/dealers or pricing service organizations.

*(e)*   ***Bond Issue Costs and Premium/Discount on Bonds***

Premium (discounts) on bonds are amortized in a systematic manner over the life of the debt in the government-wide financial statements. Premium (discounts) are recognized in the period when the related long-term debt is issued in the governmental funds financial statements, and therefore are not

15                                                                              (continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

accounted for in subsequent periods. Bond issue costs are expensed as incurred in both government-wide and governmental fund financial statements.

*(f)*   ***Interfund Transactions***

Transfers represent flows of assets (such as cash or goods) without equivalent flows of assets in return and without a requirement for repayment. In governmental funds, transfers are reported as other financing uses in the fund making transfers and as other financing sources in the funds receiving transfers.

*(g)*   ***Refundings***

Refundings involve the issuance of new debt whose proceeds are used to repay immediately (current refunding) or at a future time (advance refunding) previously issued debt. The difference between the reacquisition price and the net carrying amount of the old debt is deferred and amortized as a component of interest expense over the remaining life of the old debt or the life of the new debt, whichever is shorter. The deferred amount is recorded on the statement of net position (deficit) as either a deferred inflow or deferred outflow of resources.

*(h)*   ***Derivative Instruments***

The Corporation uses derivative financial instruments to manage the economic impact of fluctuations in interest rates. Derivative instruments are reported at fair value in the statement of net position (deficit).

*(i)*   ***Deferred Outflows / Inflows of Resources***

In addition to assets, the statement of net position (deficit) includes a separate section for deferred outflows / inflows of resources.  These separate financial statement elements, deferred outflows / inflows of resources, represent a depletion (expense/expenditure) or accretion (income) of net position (deficit) that applies to future periods and so will not be recognized as an outflow / inflow of resources until then.  The following table shows the deferred outflows / inflows of resources elements at June 30, 2015:

| | | |
|---|---|---:|
| Deferred outflows of resources: | | |
| Accumulated decrease in fair value of hedging derivative | $ | 53,199,611 |
| Deferred loss on bond refundings | | 43,281,672 |
| | $ | 96,481,283 |
| Deferred gain on bonds refunding | $ | 100,237,016 |

16

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

*(j)*     ***New  Accounting Standard Adopted and Accounting Pronouncements Issued But Not Yet
Effective***

**Accounting Standard Adopted**

The following new accounting pronouncement was early adopted by the Corporation effective July
1, 2014:

- GASB Statement No. 72, Fair Value Measurement and Application. This Statement required a
government to use valuation techniques that are appropriate under the circumstances and for which
sufficient data are available to measure fair value. The techniques should be consistent with one or
more of the following approaches; the market approach, the cost approach, or the income approach.
This Statement also establishes a hierarchy of inputs to valuation techniques used to measure fair value.
That hierarchy has three levels. Level 1 inputs are quoted prices (unadjusted) in active markets for
identical assets or liabilities. Level 2 inputs are inputs, other than quoted prices, included within Level 1
that are observable for the assets or liability, either directly or indirectly. Finally, Level 3 inputs are
unobservable inputs, such as management's assumptions of the default rate among underlying
mortgages of a mortgage-backed security. Implementation of this standard had no effect on the
beginning fund balances of governmental funds.  For further details of such impact in the Corporation's
basic financial statements refer to Notes 6 and 9.

**Accounting Pronouncements Issued but not yet Effective**

- The following new accounting standards has been issued but not yet effective: GASB Statement
No. 79, *Certain External Investment Pools and Pool Participants*. This Statement addresses accounting
and financial reporting for certain external investment pools and pool participants. Specifically, it
establishes criteria for an external investment pool to qualify for making the election to measure all of
its investments at amortized cost for financial reporting purposes. An external investment pool qualifies
for that reporting if it meets all of the applicable criteria established in this Statement. The specific
criteria address (1) how the external investment pool transacts with participants; (2) requirements for
portfolio maturity, quality, diversification, and liquidity; and (3) calculation and requirements of a
shadow price. Significant noncompliance prevents the external investment pool from measuring all of
its investments at amortized cost for financial reporting purposes. Professional judgment is required to
determine if instances of noncompliance with the criteria established by this Statement during the
reporting period, individually or in the aggregate, were significant. If an external investment pool does
not meet the criteria established by this Statement, that pool should apply the provisions in paragraph 16
of Statement No. 31, *Accounting and Financial Reporting for Certain Investments and for External
Investment Pools*, as amended. If an external investment pool meets the criteria in this Statement and
measures all of its investments at amortized cost, the pool's participants also should measure their
investments in that external investment pool at amortized cost for financial reporting purposes. If an
external investment pool does not meet the criteria in this Statement, the pool's participants should
measure their investments in that pool at fair value, as provided in paragraph 11 of Statement 31, as
amended. This Statement establishes additional note disclosure requirements for qualifying external
investment pools that measure all of their investments at amortized cost for financial reporting purposes
and for governments that participate in those pools. Those disclosures for both the qualifying external
investment pools and their participants include information about any limitations or restrictions on
participant withdrawals. This Statement is not effective until fiscal year 2016, except for certain
provisions on portfolio quality, custodial credit risk, and shadow pricing. Those provisions are not
effective until fiscal year 2017.

17                                                                          (continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

- GASB Statement No. 80, *Blending Requirements for Certain Component Units*. This Statement improves financial reporting by clarifying the financial statement presentation requirements for certain component units. This Statement amends the blending requirements established in paragraph 53 of Statement No. 14, *The Financial Reporting Entity*, as amended. This Statement amends the blending requirements for the financial statement presentation of component units of all state and local governments. The additional criterion requires blending of a component unit incorporated as a not-for-profit corporation in which the primary government is the sole corporate member. The additional criterion does not apply to component units included in the financial reporting entity pursuant to the provisions of Statement No. 39, *Determining Whether Certain Organizations Are Component Units*. This Statement is not effective until fiscal year 2017.

- GASB Statement No. 81, *Irrevocable Split-Interest Agreements*. This Statement improves accounting and financial reporting for irrevocable split-interest agreements by providing recognition and measurement guidance for situations in which a government is a beneficiary of the agreement. Split-interest agreements are a type of giving agreement used by donors to provide resources to two or more beneficiaries, including governments. Split-interest agreements can be created through trusts, or other legally enforceable agreements with characteristics that are equivalent to split-interest agreements, in which a donor transfers resources to an intermediary to hold and administer for the benefit of a government and at least one other beneficiary. Examples of these types of agreements include charitable lead trusts, charitable remainder trusts, and life-interests in real estate. This Statement requires that a government that receives resources pursuant to an irrevocable split-interest agreement recognize assets, liabilities, and deferred inflows of resources at the inception of the agreement. Furthermore, this Statement requires that a government recognize assets representing its beneficial interests in irrevocable split-interest agreements that are administered by a third party, if the government controls the present service capacity of the beneficial interests. This Statement requires that a government recognize revenue when the resources become applicable to the reporting period. This Statement is not effective until fiscal year 2018.

Management is evaluating the impact that these Statements will have on the Corporation's basic financial statements.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

**(3) Going Concern**

Management believes that there is substantial doubt about the Corporation's ability to continue as a going concern because of the following:

On June 30, 2016, the U.S. Congress enacted the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which grants the Commonwealth and its component units' access, including COFINA, to an orderly mechanism to restructure their debts in exchange for significant federal oversight over the Commonwealth's finances. In broad strokes, PROMESA seeks to provide Puerto Rico with fiscal and economic discipline through the creation of the Financial Oversight and Management Board (the Oversight Board), relief from creditors and lawsuits through the enactment of a temporary stay on litigation, and two alternative methods to adjust unsustainable debt.

On May 5, 2018, the Oversight Board filed a petition for relief under Title III of (PROMESA.) Title III of PROMESA incorporates the automatic stay provisions of Bankruptcy Code section 362 and 922, which are made applicable to the Title III cases to PROMESA section 301 (a). As further discussed in note 11, certain stakeholders (bondholders, creditors, guarantors, investors and others) commenced legal proceedings challenging the constitutionality of the law that created COFINA and the ownership of the future SUT revenues.

As further discussed in note 11, the Oversight Board also approved and certified the fiscal plan of the Commonwealth and certain other governmental entities (the Fiscal Plan). The Fiscal Plan contemplates that for each of the next 5 fiscal years (FY 2018-2023) some portion of the Pledged Sales Tax will be used by the Commonwealth for purposes other than payment of COFINA debt service.

*Remediation Plan*

Management believes that the outcome of the Title III proceeding in the federal court is highly uncertain at this time and the resolution of the legal conflicts could result in the redirection of revenues to pay-non COFINA's bondholders and other government creditors or significantly modifying or terminating COFINA purpose. The Corporation assumes that the Plan of Adjustment that will be filed in the Title III case will address the Corporation's liabilities. Management of the Corporation believes that the aforementioned events and the further circumstances also described in note 11, raise substantial doubt about the Corporation ability to continue as going concern.

**(4) Deposits**

Custodial credit risk is the risk that, in the event of a bank failure of a depository financial institution, the Corporation will not be able to recover deposits or will not be able to recover collateral securities that are in possession of an outside party. The Corporation does not have a policy for custodial credit risk.

The table presented below discloses the level of custodial credit risk assumed by the Corporation at June 30, 2015. As of June 30, 2015, $58,435,731 of the depository bank balance of $58,690,494 was uninsured as follows:

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

|  | Carrying amount | Depository bank balance | Amount uninsured and uncollateralized |
|---|---|---|---|
| Interest-bearing deposits with GDB | $ 5,528,509 | $ 31,685,731 | $ 31,685,731 |
| Deposits placed with banks | 27,000,000 | 27,000,000 | 26,750,000 |
| Cash held by trustee | 4,763 | 4,763 | — |
| Total | $ 32,533,272 | $ 58,690,494 | $ 58,435,731 |

GDB faces significant risk and uncertainties and it currently does not have sufficient liquid financial resources to meet obligations as they become due. Therefore, deposits held at GDB were subject to strict restrictions and limitations during fiscal year 2015, and subsequent periods. GDB served as the primary depository agent of the Commonwealth, its instrumentalities and municipalities' funds; depositors' cash and cash equivalents with GDB are thus subject to custodial credit risk. Management determined that a custodial credit loss existed as of June 30, 2015 for the deposits held at GDB. Based on an evaluation of the availability and recoverability of such deposits, a custodial credit loss on these deposits has been recorded on the financial statements as follows:

|  | Amount |
|---|---|
| Governmental activities: | |
| Carrying value before loss | $ 31,685,731 |
| Custodial credit loss | (26,157,222) |
| Net carrying value | $ 5,528,509 |

The aforementioned custodial credit loss of approximately $26.2 million was recognized as general government expenditures of the governmental activities.

GDB is currently in a process directed to restructure its obligations. Such restructuring may require the offset between financial instruments assets and liabilities held by GDB. The proposed restructuring remains subject to different milestones. Upon an eventual restructuring of GDB obligations and the execution of the milestones noted in the GDB Restructuring Support Agreement, the recorded and unrecorded custodial credit loss on the interest-bearing deposits disclosed above may change.

At February 28, 2018 (last reporting period that GDB has available financial information prior to its business discontinuance effective March 23, 2018), the Corporation holds deposits at GDB of approximately $26.1 million (unaudited). The ultimate custodial credit loss related to the deposits held at GDB subsequent to June 30, 2015, if any, cannot be determined until GDB concludes its restructuring process.

(5)   **Receivable from the Commonwealth of Puerto Rico**

At June 30, 2015, the receivable from the Commonwealth of Puerto Rico consist of SUT amounts for which the Commonwealth is obligated to make payments.

As previously disclosed in note 1, regardless of the level of Commonwealth sales tax collections, Act No. 91 requires that in each fiscal year all collections of the Commonwealth sales tax be deposited in the Dedicated

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

Sales Tax Fund until an amount equal to the Pledged Sales Tax Base Amount is deposited before any collections of the Commonwealth sales tax are deposited in the Commonwealth's General Fund.

**(6)   Investments**

In accordance with investment guidelines promulgated by the Bank for agencies and public corporations of the Commonwealth under the authority provided by Act No. 113 of August 3, 1995, and Executive Order 1995-50A (the investment guidelines), the Corporation is authorized to purchase or enter into the following investment instruments:

- U.S. government and agencies obligations

- Certificates of deposit

- Bankers acceptances

- Commercial paper

- Participations in the Puerto Rico Government Investment Trust Fund (PRGITF)

- Obligations of the Commonwealth of Puerto Rico, its agencies, municipalities, public corporations, and instrumentalities

- Obligations of state and local governments of the United States of America

- Mortgage and asset-backed securities

- Corporate debt, including investment contracts

- External investment pools

The Corporation's investment policies establish limitations and other guidelines on maturities and amounts to be invested in the aforementioned investment categories and by issuer/counterparty and on exposure by country. In addition, such policies provide guidelines on the institutions with which investment transactions can be entered into. In addition, the Asset Liability Management Committee (ALCO) of the Bank, in conjunction with the board of directors of the Corporation will determine, from time to time, other transactions that the Corporation may enter into.

Investments held by the debt service fund are purchased following the provisions of the related trust indenture.

***Interest Rate Risk*** – Interest rate risk is the risk that changes in interest rates will adversely affect the fair value of an investment.  The Corporation's investment policies also provide that the Bank's ALCO is responsible for implementing and monitoring the interest rate risk policies and strategies. The Bank's ALCO meets on a monthly basis to coordinate and monitor the interest rate risk management of interest sensitive assets and interest sensitive liabilities, including matching of their anticipated level and maturities, consistent with the corresponding laws and the Board of Directors objectives.

The following table summarizes the type and maturities of investments held by the Corporation at June 30, 2015:

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

| Investment type | | Due within one year |
|---|---|---|
| U.S. Treasury State and Local Government Series (SLGs) | $ | 14,595,810 |
| Corporate debt: | | |
| Credit Agricole Corp. | | 22,900,000 |
| Abbey National North America | | 44,990,261 |
| Institutional Secured Funding | | 49,988,300 |
| Anglesea Funding PLC | | 49,989,179 |
| Banque Populaire and Caisse d'Epargne | | 31,991,264 |
| Societe Generale Group | | 31,895,276 |
| External investment pools: | | |
| Dreyfus Government Cash Management | | 150,373,556 |
| Puerto Rico Government Investment Trust Fund (PRGITF) | | 536,908 |
| Total investments | $ | 397,260,554 |

Investments in external investments pools consist of $536,908 invested in PRGITF, an internal investment pool of the Commonwealth, and $150,373,556 invested in Dreyfus Government Cash Management (Dreyfus) with the Bank of New York Mellon, which is an investment pool registered with the Securities and Exchange Commission.

*Credit Risk* – Credit risk is the risk that an issuer or other counterparty to an investment will not fulfill its obligations. The Corporation's investment policies provide that investment transactions shall be entered into only with counterparties that are rated BBB+/A-1 or better by Standard & Poor's or equivalent rating by Moody's or Fitch, depending on the type and maturity of the investment and the counterparty to the transaction. Any exceptions must be approved by the Corporation's board of directors. The investment policies also provide that purchases and sales of investment securities shall be made using the delivery versus payment procedures.

Investments in U.S. Treasury SLGs carry the explicit guarantee of the U.S. government. As of June 30, 2015, the credit rating of PRGITF, Dreyfus and the Corporate Debt portfolio was "AAAm", "A-1+", and "A-1", respectively, by Standard & Poor's. The investment in PRGITF was held by the Corporation, while the investments in Corporate Debt and Dreyfus were held by Bank of New York Mellon, as trustee, in the name of the Corporation.

*Concentration of Credit Risk* – The Corporation places no limits on the amount it may invest in any one issuer. As of June 30, 2015, 3.7% of the Corporation's investments are in U.S. Treasury State and Local Government Series, 58.3% are in corporate debt, and 38% are in external investment pools.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

The following table shows the investments by fair value level held by the Corporation at June 30, 2015:

| Investments by fair value level | As of June 30, 2015 | | Fair Value Measurement Levels | | |
| --- | --- | --- | --- | --- | --- |
| | | Level 1 | | Level 2 | Level 3 |
| Debt securities: | | | | | |
| U.S. Treasury State and Local Government Series (SLGs) | $ 14,595,810 | $ — | $ | 14,595,810 | $ — |
| Corporate debt: | | | | | |
| Credit Agricole Corp. | 22,900,000 | — | | 22,900,000 | — |
| Abbey National North America | 44,990,261 | — | | 44,990,261 | — |
| Institutional Secured Funding | 49,988,300 | — | | 49,988,300 | — |
| Anglesea Funding PLC | 49,989,179 | — | | 49,989,179 | — |
| Banque Populaire and Caisse d'Epargne | 31,991,264 | — | | 31,991,264 | — |
| Societe Generale Group | 31,895,276 | — | | 31,895,276 | — |
| External investment pools: | | | | | |
| Dreyfus Government Cash Management | 150,373,556 | — | | 150,373,556 | — |
| Puerto Rico Government Investment Trust Fund (PRGITF) | 536,908 | — | | 536,908 | — |
| Total investments by fair value level | $ 397,260,554 | $ — | $ | 397,260,554 | $ — |

The debt securities, corporate debt and the external investment pools classified in Level 2 of the fair value hierarchy are valued using inputs other than quoted prices under Level 1 that are observable for the assets, either directly or indirectly on the measurement date.

**(7)   Transactions with the Bank and the Commonwealth**

The Corporation is a related entity of the Bank. During the year ended June 30, 2015, the Bank provided certain management and administrative services to the Corporation at no cost.

In accordance with Act No. 91, the Corporation incurred expenses on behalf of the Commonwealth amounting to approximately $2.5 million for Authorized Uses.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

**(8)   Bonds Payable**

As of June 30, 2015, bonds payable of the Corporation consist of the following (in thousands):

| Description | Face/Effective Interest Rate | Amount |
|---|---|---|
| Sales Tax Revenue Bonds, Series 2007A: | | |
| Capital Appreciation Bonds due from August 1, 2040 to August 1, 2056 | 4.96%–5.34% | $    2,485,741 |
| Fixed Rate Bonds due on August 1, 2057, including unamortized premium of $14,787 | 5.25% | 578,672 |
| LIBOR-Based Adjustable Rate Bonds due on August 1, 2057 | 1.11% | 136,000 |
| Sales Tax Revenue Bonds, Series 2007B: | | |
| Capital Appreciation Bonds due from August 1, 2027 to August 1, 2032 | 6.20%–6.25% | 239,930 |
| Fixed Rate Bonds due from August 1, 2036 to August 1, 2057, net of unaccreted discount of $2,529 | 6.05%–6.35% | 1,183,471 |
| Sales Tax Revenue Bonds, Series 2007C: | | |
| Capital Appreciation Bonds due from August 1, 2022 to August 1, 2038 | 6.10% | 133,567 |
| Term Bonds due from August 1, 2022 to August 1, 2038 | 6.00% | 415,305 |
| Sales Tax Revenue Bonds, Series 2008A: | | |
| Capital Appreciation Bonds due from August 1, 2024 to August 1, 2036 | 6.23% | 382,804 |
| Term Bonds due from August 1, 2027 to August 1, 2038 | 6.13% | 488,885 |
| Subtotal carried forward | | 6,044,375 |

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

| Description | Face/Effective Interest Rate | Amount |
|---|---|---|
| Sales Tax Revenue Bonds, First Subordinate Series 2009A: | | |
| Fixed Rate Bonds due from August 1, 2015 to August 1, 2029, including unamortized premium of $8,979, net of unaccreted discount of $11,273 | 3.75%–6.13% | $ 1,066,076 |
| Term Bonds due from August 1, 2036 to August 1, 2044, including unamortized premium of $14,901, and net of unaccreted discount of $44,429 | 5.75%–6.50% | 1,785,473 |
| Capital Appreciation Bonds due from August 1, 2030 to August 1, 2034 | 6.88%–7.13% | 212,166 |
| Convertible Capital Appreciation Bonds due on August 1, 2030 to August 1, 2032 (1) | 6.75% | 513,556 |
| Sales Tax Revenue Bonds, First Subordinate Series 2009B: | | |
| Fixed Rate Bonds due from August 1, 2025 to August 1, 2039 | 6.05%–6.35% | 918,920 |
| Capital Appreciation Bonds due from August 1, 2033 to August 1, 2035 | 7.38%–7.48% | 83,442 |
| Convertible Capital Appreciation Bonds due from August 1, 2025 to August 1, 2031 (2) | 6.90%–7.00% | 313,291 |
| Sales Tax Revenue Bonds, Senior Series 2009C – Fixed Rate: | | |
| Bonds due on August 1, 2057 | 5.75% | 237,875 |
| Sales Tax Revenue Bonds, First Subordinate Series 2010A: | | |
| Fixed Rate Bonds due from August 1, 2016 to August 1, 2040, including unamortized premium of $1,129 and net of unaccreted discount of $2,319 | 3.38%–5.63% | 305,421 |
| Term Bonds due from August 1, 2036 to August 1, 2042, net of unaccreted discount of $22,749 | 5.38%–5.50% | 1,214,591 |
| Capital Appreciation Bonds due from August 1, 2031 to August 1, 2036 | 6.65%–6.77% | 186,204 |
| Convertible Capital Appreciation Bonds due on August 1, 2029 to August 1, 2033 (3) | 6.13%–6.25% | 209,347 |
| Subtotal carried forward | | 13,090,737 |

(1) Convertible to fixed-rate interest bonds on August 1, 2016.
(2) Convertible to fixed-rate interest bonds on August 1, 2016 and August 1, 2020 for bonds maturing on August 1, 2030 and 2031.
(3) Convertible to fixed-rate interest bonds on August 1, 2019.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

| Description | Face/Effective Interest Rate | | Amount |
|---|---|---|---|
| Sales Tax Revenue Bonds, First Subordinate Series 2010C: | | | |
| Fixed Rate Bonds due from August 1, 2035 to August 1, 2041, including unamortized premium of $14,071 and net of unaccreted discount of $776 | 5.13%–6.50% | $ | 464,510 |
| Term Bonds due from August 1, 2033 to August 1, 2041, net of unaccreted discount of $22,608 | 5.00%–5.50% | | 1,047,862 |
| Capital Appreciation Bonds due from August 1, 2037 to August 1, 2039 | 6.63% | | 135,847 |
| Sales Tax Revenue Bonds, First Subordinate Series 2010D – Fixed Rate Bonds due on August 1, 2042 | 5.75% | | 89,435 |
| Sales Tax Revenue Bonds, First Subordinate Series 2010E – Fixed Rate Bonds due on August 1, 2042 | 5.75% | | 92,755 |
| Sales Tax Revenue Bonds, First Subordinate Series 2011A-1: | | | |
| Fixed Rate Bonds due on August 1, 2043, including unamortized premium of $2,578 and net of unaccreted discount of $2,608 | 5.00%–5.25% | | 354,999 |
| Capital Appreciation Bonds due from August 1, 2023 to August 1, 2041 | 5.25%–6.50% | | 52,197 |
| Sales Tax Revenue Bonds, First Subordinate Series 2011A-2 | | | |
| Capital Appreciation Bonds due from August 1, 2043 to August 1, 2050 | 7.00% | | 433,488 |
| Sales Tax Revenue Bonds, First Subordinate Series 2011B: | | | |
| Fixed Rate Bonds due from August 1, 2031 and August 1, 2036 | 5.00%–5.15% | | 45,620 |
| Sales Tax Revenue Bonds, Senior Series 2011C: | | | |
| Fixed Rate Bonds due from August 1, 2020 to August 1, 2039, including unamortized premium of $12,144 and net of unaccreted discount of $712 | 4.00%–5.00% | | 192,362 |
| Term Bonds due from August 1, 2040 and August 1, 2046, including unamortized premium of $13,949 | 5.00%–5.25% | | 737,704 |
| Capital Appreciation Bonds due from August 1, 2034 to August 1, 2041 | 6.15%–6.25% | | 126,986 |
| Sales Tax Revenue Bonds, Senior Series 2011D: | | | |
| Fixed Rate Bonds due on August 1, 2023 | 3.80% | | 45,000 |
| Term Bonds due from August 1, 2025 and August 1, 2036 | 4.10%–4.85% | | 46,155 |
| Bonds payable – net | | $ | 16,955,657 |

All term bonds have fixed interest rates.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

Bonds and note payable activity for the year ended June 30, 2015 is as follows (in thousands):

| Description | Balance at June 30, 2014 | Additions | Reductions | Balance at June 30, 2015 |
|---|---|---|---|---|
| Bonds payable | $ 11,474,555 | — | — | 11,474,555 |
| Capital appreciation bonds – principal | 23,716,216 | — | — | 23,716,216 |
| Discount on capital appreciation bonds | (18,523,595) | 315,944 | — | (18,207,651) |
| Less: | | | | |
| Unamortized bond premium (discount), net | (26,306) | — | (1,157) | (27,463) |
| Bonds and note payable – net | $ 16,640,870 | 315,944 | (1,157) | 16,955,657 |

As of June 30, 2015, debt service requirements for bonds outstanding were as follows:

| Year ending June 30 | Principal | Interest | Interest subsidy (1) | Total |
|---|---|---|---|---|
| 2016 | $ 11,300,000 | 647,350,179 | (3,834,522) | 654,815,657 |
| 2017 | 38,295,000 | 674,289,879 | (3,834,522) | 708,750,357 |
| 2018 | 18,745,000 | 693,590,212 | (3,834,522) | 708,500,690 |
| 2019 | 47,950,000 | 692,042,637 | (3,834,522) | 736,158,115 |
| 2020 | 79,765,000 | 697,230,034 | (3,834,522) | 773,160,512 |
| 2021-2025 | 826,370,000 | 3,514,559,732 | (19,172,612) | 4,321,757,120 |
| 2026-2030 | 1,996,735,000 | 3,226,854,358 | (19,172,612) | 5,204,416,746 |
| 2031-2035 | 3,649,845,000 | 2,707,847,854 | (19,172,612) | 6,338,520,242 |
| 2036-2040 | 5,673,625,000 | 1,999,524,575 | (19,172,612) | 7,653,976,963 |
| 2041-2045 | 7,677,065,000 | 748,279,580 | (8,627,677) | 8,416,716,903 |
| 2046-2050 | 6,492,368,317 | 316,602,249 | — | 6,808,970,566 |
| 2051-2055 | 5,285,143,349 | 313,364,874 | — | 5,598,508,223 |
| 2056-2058 | 3,393,564,581 | 149,188,804 | — | 3,542,753,385 |
| | 35,190,771,247 | $ 16,380,724,967 | (104,490,735) | 51,467,005,479 |

| | | |
|---|---|---|
| Plus (less): | | |
| Unamortized premium | 82,540,851 | |
| Unaccreted discount | (110,003,933) | |
| Unaccreted interest | (18,207,651,542) | |
| Bonds payable – net | $ 16,955,656,623 | |

(1)     Sales Tax Revenue Bonds, First Subordinate Series 2010D and 2010E were issued as Build America Bonds. The Corporation will receive a subsidy payment from the federal government equal to 35% and 45%, respectively, of the amount of each interest payment. On June 24, 2013, the IRS sent notice that 8.7% of the subsidy payment on the Build America Bonds will be sequestered due to adjustments to the Federal Government budget.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

At June 30, 2015, the Corporation has $136,000,000 of LIBOR based adjustable-rate bonds maturing on August 1, 2057. As discussed in note 9, the Corporation has entered into a $136,000,000 interest rate swap, whereby it receives the same rate paid on the adjustable rate bonds and pays a fixed rate of 4.92% through August 1, 2057. Accordingly, the Corporation has synthetically fixed the interest rate on the adjustable rate bonds. Assuming the rate effective as of June 30, 2015 remains the same, debt service requirements for the adjustable rate bonds and net swap payments for their term, are as follows:

| Year ending June 30 | Adjustable-Rate Bonds | | Interest Rate Swap, Net | Total |
| | Principal | Interest | | |
|---|---|---|---|---|
| 2016 | $            — | 1,619,745 | 5,071,455 | 6,691,200 |
| 2017 | — | 1,844,867 | 4,846,333 | 6,691,200 |
| 2018 | — | 1,844,867 | 4,846,333 | 6,691,200 |
| 2019 | — | 1,844,867 | 4,846,333 | 6,691,200 |
| 2020 | — | 1,844,867 | 4,846,333 | 6,691,200 |
| 2021-2025 | — | 9,224,336 | 24,231,664 | 33,456,000 |
| 2026-2030 | — | 9,224,336 | 24,231,664 | 33,456,000 |
| 2031-2035 | — | 9,224,336 | 24,231,664 | 33,456,000 |
| 2036-2040 | — | 9,224,336 | 24,231,664 | 33,456,000 |
| 2041-2045 | — | 9,224,336 | 24,231,664 | 33,456,000 |
| 2046-2050 | — | 9,224,336 | 24,231,664 | 33,456,000 |
| 2051-2055 | — | 9,224,336 | 24,231,664 | 33,456,000 |
| 2056-2058 | 136,000,000 | 6,457,035 | 10,270,965 | 152,728,000 |
| Total | $   136,000,000 | 80,026,600 | 204,349,400 | 420,376,000 |

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

The amount deposited each year in the Dedicated Sales Tax Fund is pledged for the payment of the Corporation's bonds payable.  The minimum amount to be deposited is the SUT Base Amount, which for the fiscal year ended June 30, 2015, was $669,480,293. The SUT Base Amount increases each fiscal year at a statutory rate of 4% up to $1,850,000,000.  At June 30, 2015, the estimated SUT Base Amount, by year, is as follows:

| Year ending June 30 | Amount |
|---|---|
| 2016 | $      696,259,504 |
| 2017 | 724,109,884 |
| 2018 | 753,074,279 |
| 2019 | 783,197,250 |
| 2020 | 814,525,140 |
| 2021-2025 | 4,588,200,125 |
| 2026-2030 | 5,582,246,999 |
| 2031-2035 | 6,791,657,012 |
| 2036-2040 | 8,263,089,218 |
| 2041-2045 | 9,250,000,000 |
| 2046-2050 | 9,250,000,000 |
| 2051-2055 | 9,250,000,000 |
| 2056-2058 | 5,550,000,000 |
| | $   62,296,359,411 |

On September 2014, the Board of Directors of COFINA, due to Moody's and Fitch downgrade of COFINA's credit triggering the Additional Termination Event (ATE) on the      agreement, entered into an agreement with Goldman Sachs (GS) that required COFINA to post collateral over time, and allow the swap to remain in place and remove all ATE's. As of June 30, 2015 said collateral amounted to $27 million.

On July 29, 2014, Fitch lowered its rating on the Commonwealth's COFINA Sales Tax Revenue Bonds, Senior Series, and the COFINA Sales Tax Revenue Bonds, First Subordinate Series, from "AA-" to "BB-", and from "A+" to "BB-", respectively. Subsequently, Fitch lowered the Corporation's credit ratings two more times. As of June 30, 2015 the Corporation's credit ratings was "CC" for both the Senior Series, and the First Subordinate Series.

On July 11, 2014, Standard & Poor's Ratings Services (S&P) lowered its rating on the Commonwealth's COFINA Sales Tax Revenue Bonds, Senior Series, and COFINA Sales Tax Revenue Bonds, First Subordinate Series, from "AA-" to "BBB", and from "A+" to "BBB-", respectively. Subsequently, S&P lowered the Corporation's credit ratings three more times. As of June 30, 2015 the Corporation's credit ratings was "CCC-" for both the Senior Series, and the First Subordinate Series.

On July 1, 2014, Moody's lowered its rating on the Commonwealth's COFINA Sales Tax Revenue Bonds, Senior Series, and COFINA Sales Tax Revenue Bonds, First Subordinate Series, from "Baa1" to "Ba3", and from "Baa2" to "B1", respectively. Subsequently, Moody's lowered the Corporation's credit ratings on February 19, 2015 and May 21, 2015. As of June 30, 2015 the Corporation's credit ratings was "Caa2" for the COFINA Sales Tax Revenue Bonds, Senior Series, and "Caa3" for the COFINA Sales Tax Revenue Bonds, First Subordinate Series.

29                                                                                    (continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

On November 23, 2011, the Corporation issued $397.7 million Series 2011A-1 bonds. Part of the proceeds from the Series 2011A-1 bonds was used to advance refund part of the outstanding Series 2009A bonds aggregating $52,780,000 and bearing interest ranging from 4.00% to 6.125%. The Corporation used approximately $65,867,000 from the net proceeds of the issued Series 2011A-1 bonds and other funds to purchase U.S. government securities, which were deposited in an irrevocable trust fund with an escrow agent to provide for all future debt services payments of the refunded Series 2009A bonds. On November 23, 2011, the Corporation also issued its Series 2011 B bonds amounting to approximately $45.6 million to advance refund part of the outstanding Series 2009 B bonds aggregating $38,490,000 and bearing interest at 6.05%. The Corporation used the net proceeds of the issued Series 2011B bonds and other funds to purchase U.S. government securities, which were deposited in an irrevocable trust fund with an escrow agent to provide for all future debt services payments of the refunded Series 2009 B bonds. Accordingly, the Series 2009A and the Series 2009B refunded bonds are considered to be defeased and the liabilities have therefore been removed from the statement of net position. As a result of these advance refundings, the Corporation expects to increase its total debt service requirements by approximately $34.3 million over the next 25 years and will incur an economic loss (the difference between the present values of the debt service payments of the refunded bonds and the refunding bonds) of approximately $4.7 million. The outstanding balance of the advance refunded bonds was $91,270,000 at June 30, 2015.

**(9)   Derivative Instruments**

By using derivative financial instruments to hedge the exposure to changes in interest rates, the Corporation exposes itself to interest rate risk, credit risk, and termination risk.

Interest rate risk is the adverse effect on the value of a financial instrument that results from a change in interest rates. The Corporation is exposed to interest rate risk on its pay-fixed, receive-variable swap; as LIBOR decreases, the Corporation's net payment on the swap increases. At the same time, interest payments on the hedged adjustable rate bonds decrease. The interest rate risk associated with interest rate swap contracts is managed by establishing and monitoring parameters that limit the types and degree of interest rate risk that may be undertaken.

Credit risk is the failure of the counterparty (or its guarantor) to perform under the terms of the derivative contract. When the fair value of a derivative contract is positive, the counterparty owes the Corporation, which creates credit risk for the Corporation. When the fair value of a derivative contract is negative, the Corporation owes the counterparty and, therefore, does not possess credit risk. The Corporation minimizes the credit risk in derivative instruments by entering into transactions with counterparties whose credit rating is acceptable under the investment policies of the Corporation. At June 30, 2015, there is no credit risk since the fair value of derivative instrument is negative.

Termination risk is the possibility that a hedging derivative instrument's unscheduled end will affect the Corporation's liability strategy or will present the Corporation with potentially significant unscheduled termination payments to the counterparty. The Corporation or its counterparties may terminate a derivative instrument if the other party fails to perform under the terms of the contract. The Corporation is at risk that the counterparty will terminate a swap at a time when the Corporation owes it a termination payment. The Corporation has mitigated this risk by specifying that the counterparty has the right to terminate only as a result of certain events, including: a payment default by the Corporation; insolvency of the Corporation (or similar events); or a downgrade of the Corporation's credit rating below BBB+ or Baa1. If at the time of termination, an investment derivative instrument is in a liability position, the Corporation would be liable to the counterparty for a payment equal to the liability, subject to netting arrangements.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

The Corporation has entered into an interest rate exchange agreement (swap) with a counterparty in connection with the issuance of LIBOR-Based Adjustable Rate Bonds within the Sales Tax Revenue Bonds Series 2007A (the Adjustable Rate Bonds). The Adjustable Rate Bonds expose the Corporation to variability in interest payments due to changes in interest rates. Management believes that it is prudent to limit the variability of interest payments on the Adjustable Rate Bonds. To meet this objective, management entered into an interest rate swap agreement to manage fluctuations in cash flows resulting from interest rate risk. This swap effectively changes the variable rate cash flow exposure on the Adjustable Rate Bonds to fixed cash flows. Under the terms of the interest rate swap, the Corporation receives variable interest rate payments equal to the interest payment on the Adjustable Rate Bonds, and makes fixed interest rate payments, thereby creating the equivalent of a fixed rate debt. At June 30, 2015, the credit rating of the counterparty to this swap agreement was A-1 by Standard & Poor's.

On July 1, 2014, Moody's issued a downgrade on the LIBOR 2007A Bonds to a rating of Ba3. On September 24, 2014, rather than terminate the Swap Agreement, the Corporation and GS entered into a new credit annex (the "2014 Credit Support Annex") as well as an Amendment to the ISDA Master Agreement (the "2014 ISDA Amendment") to permit the Corporation to collateralize its obligations under the Swap Agreement and to amend the termination events thereunder. The impact of the new agreement was for the Corporation to post $12 million in collateral to GS, as well as set up a restricted account in which a portion of the collateral be deposited for the benefit of GS. In addition, from now until fiscal year 2018, COFINA is committed to post up to $15 million annually in additional collateral by March 15 of each year. Overt time, the maximum amount COFINA would have to post is $60 million. On January 28, 2015, COFINA posted the $15 million additional collateral due on March 31, 2015. As of June 30, 2015, the collateral amount held by GS is $27 million.

The fair value and notional amount of the derivative instrument outstanding at June 30, 2015, classified by type, was as follows:

| Notional amount | Fair value | Change in Fair value | Floating rate indicator | Maturity date | Receives | | Pays | | Cash outflows |
|---|---|---|---|---|---|---|---|---|---|
| | (In thousands) | (In thousands) | | | Type | Rate | Type | Rate | (in thousands) |
| Hedging Derivative Instrument: | | | | | | | | | |
| $  136,000 | $   53,200 | $3,330 | 67% of 3m LIBOR plus 0.93 | 8/1/2057 | Variable | 1.101% | Fixed | 4.920% | 5,210 |

The fair value of the interest rate swap classified in Level 2 of the fair value hierarchy was estimated using the zero-coupon method. This method calculates the future net settlement payments required by the swap, assuming that the current forward rate implied by the yield curve correctly anticipates future spot interest rates. These payments are then discounted using the spot rates implied by the current yield curve for hypothetical zero-coupon bonds due on the date of each future net settlement on the swaps.

**(10) Contingency**

In connection with the termination of an interest rate exchange agreement (swap) with a notional amount of $218 million by the Corporation relating to its Sales Tax Revenue Bonds, Series 2007A, the Corporation made a termination payment to the counterparty in November 2008. The counterparty subsequently asserted that it is entitled to a termination payment in excess of that paid by the Corporation in November 2008, plus interest at a default rate, amounting to approximately $64.0 million as of fiscal year end 2011. The

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

counterparty alleged that the date of the termination notice used by the Corporation for purposes of calculating the termination payment was not in accordance with the agreement. In addition, the counterparty alleged that the termination payment should have been based on the value of replacement swaps entered into by the Corporation, which actually have different credit terms than those contained in the terminated swap.

During the year ended June 30, 2011, the Corporation accrued $3.4 million in connection with this matter. This amount is presented as accounts payables and accrued liabilities in the accompanying statement of net position (deficit).

The Corporation intends to contest this matter vigorously. Among other things, it is the opinion of the Corporation's management that, even assuming that the counterparty's allegations regarding improper termination are correct, the amounts claimed by the counterparty are not correct. Accordingly, management does not expect that the ultimate costs to resolve this matter will have a material adverse effect on its financial position or results of operations.

**(11)   Subsequent Events**

Subsequent events were evaluated through September 17, 2018 to determine if any such events should either be recognized or disclosed in the 2015 basic financial statements. Management believes that the subsequent events disclosed below are intrinsically related to the financial statements of the Corporation. These might have been disclosed elsewhere in these financial statements, but management believes they require specific mentioning based on their relevance and materiality as a whole.

**Significant legislation and Other Events after Year End:**

   *a)   Puerto Rico Oversight, Management and Economic Stability Act*

On June 30, 2016, the U.S. President signed the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), which grants the Commonwealth and its component units' access to an orderly mechanism to restructure their debts in exchange for significant federal oversight over the Commonwealth's finances. In broad strokes, PROMESA seeks to provide Puerto Rico with fiscal and economic discipline through the creation of a control board, relief from creditors and lawsuits through the enactment of a temporary stay on litigation, and two alternative methods to adjust unsustainable debt: (a) a voluntary debt modification process under Title VI of PROMESA, which establishes a largely out-of-court debt restructuring process through which modifications to financial debt can be accepted by a supermajority of creditors; and (b) a quasi-bankruptcy proceeding under Title III of PROMESA, which establishes an in-court debt restructuring process substantially based upon incorporated provisions of Title 11 of the United States Code (U.S. Bankruptcy Code). Each of these elements are divided among PROMESA's seven titles.

Title I of PROMESA established the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"). See PROMESA § 101(b). As stated in PROMESA, "the purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a).

Title II of PROMESA established the Fiscal Plan and Budget Certification process and compliance. This title sets forth the requirements for proposing and certifying fiscal plans and budgets for the Commonwealth and its instrumentalities. "Each fiscal plan serves as the cornerstone for structural

32                                                                                    (continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

reforms the Oversight Board deems necessary to ensure the territory, or instrumentality, will be on a path towards fiscal responsibility and access to capital markets." H.R. Rep. 114-602(I), 2016 WIL 312480, at *45 (2016); PRIMESA § 201 (b)(1).

On March 13, 2017, the Oversight Board approved and certified the fiscal plan of the Commonwealth and certain other governmental entities (the "Fiscal Plan"). The Fiscal Plan was revised and certified by the Oversight Board on May 31, 2017 (the "Revised Fiscal Plan"). The Fiscal Plan and the Revised Fiscal Plan contemplate that for each of the next 5 fiscal years (FY 2018-2023) some portion of the Pledged Sales Tax will be used by the Commonwealth for purposes other than payment of COFINA debt service.

Title III of PROMESA establishes an in-court process for restructuring the debts of Puerto Rico and other United States territories that is modeled after the process under Chapter 9 of the U.S. Bankruptcy Code. In order to be a debtor under Title III, the territory and/or its instrumentalities must: (i) have an Oversight Board established for it or be designated a "covered entity"; (ii) have the Oversight Board issue a restructuring certification under PROMESA section 206(b); and (iii) "desire to effect a plan to adjust its debt.• PROMESA § 302. The Oversight Board has sole authority to file a voluntary petition seeking protection under Title III of PROMESA. *See* PROMESA § 304(a). As of the date hereof, the Oversight Board has commenced Title III cases for the Commonwealth, COFINA, PRHTA, ERS, and PREPA, as discussed below.

In a Title III case, the Oversight Board acts as the debtor's representative and is authorized to take any actions necessary to prosecute the Title III case. *See* PROMESA § 315. Immediately upon filing the Title III petition, Bankruptcy Code section 362 (which is incorporated into Title III cases under PROMESA) applies to automatically stay substantially all litigation against the debtor (the Title III Stay). After the Title III case is commenced, the Chief Justice of the United States Supreme Court must designate a district court judge to sit by designation and preside over the Title III case. PROMESA also provides that the commencement of a Title III case "does not limit or impair the powers of a covered territory to control by legislation or otherwise the exercise of the political or governmental powers of the territory or territorial instrumentality." PROMESA § 303.

The core component of the Title III case is the confirmation of a plan of adjustment of the debts of the debtor. The Oversight Board has the exclusive authority to file and modify a plan of adjustment prior to confirmation. *See* PROMESA § 312. In order to be confirmed, a proposed plan of adjustment must meet the requirements set forth under PROMESA section 314.

Title IV of PROMESA established the Temporary Stay of Litigation, Government Reporting, and Other Miscellaneous Provisions. Pursuant to this title (PROMESA section 405), the enactment of PROMESA immediately and automatically imposed a temporary stay (the Title IV stay) from June 30, 2016 (the date of PROMESA's enactment) through February 15, 2017 of all "Liability Claim" litigation commenced against the Commonwealth and its instrumentalities after December 18, 2015.

Title V of PROMESA established the position of the Revitalization Coordinator under the Oversight Board and provides a framework for infrastructure revitalization.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

Title VI of PROMESA establishes an out-of-court process for modifying Puerto Rico's debts. Under PROMESA section 601(d), the Oversight Board is authorized to establish "pools" of bonds issued by each Puerto Rico government-related issuer based upon relative priorities.

Title VII of PROMESA sets forth the sense of Congress that "any durable solution for Puerto Rico's fiscal and economic crisis should include permanent, pro-growth fiscal reforms that feature, among other elements, a free flow of capital between possessions of the United States and the rest of the United States."

*b)* *Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Financial Emergency and Fiscal Responsibility of Puerto Rico Act and Related Executive Orders*

On April 6, 2016, the Commonwealth enacted Act. No. 21 of 2016, known as the Puerto Rico Emergency Moratorium and Rehabilitation Act (as amended, the Moratorium Act). Pursuant to the Moratorium Act, on June 30, 2016, the Governor signed an Executive Order, EO-2016-030 ("EO No. 2016-30"), declaring the Commonwealth to be in state of emergency and declaring a moratorium on the Commonwealth's obligation to make payments on bonds, and notes issued or guaranteed by the Commonwealth.

On January 29, 2017, the Governor signed Act No. 5 of 2017, Puerto Rico Fiscal Responsibility and Financial Emergency Act, superseding and amending Act No. 21 of 2016, Emergency Moratorium and Financial Rehabilitation of Puerto Rico Act. Act No. 5 of 2017 declares the Commonwealth to be in state of emergency and declaring a moratorium on the Commonwealth's obligation to make payments on bonds, and notes issued or guaranteed by the Commonwealth. EO 30 suspends any obligation of the Office of Management and Budget of the Commonwealth to include an appropriation in the proposed budget submitted to the Legislative Assembly for the payments of bonds issued by the Public Finance Corporation.

*c)* *Sales and Use Tax*

Effective on July 1, 2015, the Commonwealth Sales Tax increased from a current 6% to a 10.5%, as required by Act No. 72 of May 29, 2015, an amendment to the Puerto Rico Internal Revenue Code of 2011, (the Act No. 72). The Act No. 72 also imposes a Commonwealth Sales Tax of 4% to professional and business-to business services rendered after September 30, 2015, until April 1, 2016. The Act No. 72 serves as a bridge mechanism between the actual SUT to an integrated new tax reform. As per Act No. 72, the new tax reform should incorporate certain virtues of the general excise tax and the actual SUT to reach a Value-Added Tax (IVA, by its Spanish acronym) as the desirable consumption tax for Puerto Rico. Such tax reform emerges from the recommendations presented by the Alternatives for the Consumption Tax Transformation Commission.

*d)* *Civil Actions Filed by Several Bondholder Groups and Other Creditors Against the Corporation.*

On November 4, 2016, plaintiffs in *Lex Claims, LLC v. Garcia-Padilla* (Case No. 16-2374-FAB (D.P.R. July 20, 2016)), who are beneficial owners of General Obligation debt, filed a Second Amended Complaint, adding the Corporation as a defendant in their action against Commonwealth officials. The Second Amended Complaint requested two declaratory judgments that challenge the legal validity of

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

the Corporation: (1) a declaration that the portion of the SUT pledged to the Corporation for purposes of debt service on the Corporation's sales tax revenue bonds (the "Pledged Sales Tax") constitutes "available resources" under Article VI, Section 8 of the Puerto Rico Constitution and that such funds cannot be deposited with the Corporation or its Bondholders; and (2) a declaration that the Commonwealth is obligated to afford the General Obligation debt absolute priority, including priority over required deposits with the Corporation and its Bondholders. On May 17, 2017, the District Court stayed the *Lex Claims* case until further court order.

On June 9, 2017, various parties and parties in interest, including the Trustee, the Senior Bondholders' Coalition, National Public Finance Guarantee Corp., Whitebox Asymmetric Partners, L.P., Ambac Assurance Corp., and Assured Guaranty Corp. (the "Requesting Parties"), served discovery requests and subpoenas on the Oversight Board and various Government entities, affiliates, and individuals. The subpoenaed entities and individuals served their Responses and Objections on June 21, 2017, and produced documents in response to the requests and subpoenas between July and October. On July 24 the Requesting Parties served subpoenas and/or notices of deposition on the Oversight Board and the Governmental entities and individuals. The subpoenaed entities and individuals served their Responses and Objections to the deposition subpoenas on August 7 and August 8, 2017. In lieu of depositions, FAFAA and the Oversight Board each submitted binding Statements of Facts.

On November 6, 2017, various parties and parties in interest, including the Trustee, the Senior Bondholders' Coalition, Whitebox Asymmetric Partners, L.P., Ambac Assurance Corp., the Mutual Fund Group and Puerto Rico Funds, and Assured Guaranty Corp., filed motions for summary judgment. Summary judgment briefing was completed on January 5, 2018. The Court has not yet ruled on the motions.

On March 22, 2018, several credit unions chartered under Puerto Rico law filed an adversary complaint against the Commonwealth, the Oversight Board, other Commonwealth's instrumentalities including the Corporation seeking a declaratory judgment that their Puerto Rico debt holdings are not dischargeable and monetary damages for alleged fraud in issuing and encouraging local credit unions to purchase Puerto Rico debt service instruments. On August 6, 2018, the Oversight Board, the Corporation, the Commonwealth of Puerto Rico and several of its instrumentalities filed a notice of motion to dismiss the complaint in this adversary proceeding, along with an accompanying memorandum of law. Also on August 6, 2018, the Government Development Bank filed a separate motion to dismiss. In addition, several parties filed joinders to the motions to dismiss or were granted leave from the Court to file joinders at later dates. The Court ordered that any objection to the motions to dismiss filed in this adversary proceeding and joinders thereto must be filed by November 6, 2018 and any reply must be filed by January 9, 2019. The Court will thereafter take the motions to dismiss on submission unless determined otherwise.

*e)*   *Oversight Board Commencement of Title III Case, Mediation in the Title III Case, and Key Contested Motions in the Title III Case*

On May 3, 2017, in the United States District Court for the District of Puerto Rico (the "Court"), the Oversight Board commenced a Title III (bankruptcy) case under PROMESA for the Commonwealth. On May 5, 2017, the Oversight Board followed with a similar filing for the Corporation.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

On May 16, 2017, the Bank of New York Mellon (the "Trustee"), in its capacity as trustee for the sales tax revenue bonds issued by the Corporation, filed an adversary complaint in the Corporation's Title III proceeding for interpleader to preserve the funds held by the Trustee in trust pending resolution by the Court of all disputes with respect to ownership of the funds. The Trustee's adversary complaint commenced the adversary proceeding captioned The Bank of New York Mellon v. Puerto Rico Sales Tax Financing Corporation (COFINA), et. al. (Adv. Pro. No. 17-00133-LTS (D. P.R. May 16, 2017)).

On May 30, 2017, the Court ordered the Trustee, commencing with the $16.3 million bond payment due on June 1, 2017, to interplead and hold all disputed funds in the accounts into which they had been deposited, on behalf of the party or parties ultimately determined by the Court to be entitled to such funds. The Court's order allowed creditors to litigate competing claims to the funds held by the Trustee.

*f)*   *The Commonwealth-COFINA Dispute*

The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico as Agent of the Commonwealth of Puerto Rico v. Bettina Whyte as Agent of the Puerto Sales Tax Financing Corporation (In re: The Financial Oversight and Management Board for Puerto Rico, Adv. Pro. No. 17-00257-LTS (D.P.R. September 8, 2017).

On August 10, 2017, the Court issued an order to approve a protocol for resolving the disputes between the Commonwealth and the Corporation (the "Commonwealth–COFINA Dispute") and appointing 1) an agent for the Oversight Board as debtor's representative for the Commonwealth (the "Commonwealth Agent"); and 2) an agent for the Oversight Board as the debtor's representative for COFINA (the COFINA Agent).

On September 8, 2017, the Commonwealth Agent filed a complaint asserting that the SUT revenue pledged by COFINA bond debt is "the exclusive property of the Commonwealth". The complaint alleges that the COFINA enabling legislation "did not transfer to COFINA present ownership of future SUT revenues" and did not assign to COFINA the Commonwealth right to receive such revenues. The complaint argues that the transfer to COFINA of SUT revenues was at most an unsecured promise to transfer revenues in the future. The complaint further alleges that even if the transfer of future SUT revenues to COFINA had any legal effect, such transfers are merely a grant of a security interest in acquired property governed by Article 9 of the Uniform Commercial Code. The complaint alleges that any security interest of COFINA in SUT revenues is unenforceable against the Commonwealth or, in the alternative, is unperfected and therefore avoidable and otherwise subordinate to the rights of the Oversight Board as trustee. The Complaint further asserts that the Commonwealth Title III case cuts off any security interest.

The Complaint also alleges that COFINA's structure is unconstitutional because it circumvents the Puerto Rico Constitution's debt limitations.

FAFAA filed a motion to dismiss certain claims of the Commonwealth Agent and counterclaims of the COFINA Agent on the ground that they exceeded the scope of their authority. Document production and discovery were completed in February 2018. On February 21, 2018, parties filed summary judgment motions. The Court heard oral arguments on April 10, 2018 and took the motions under advisement.

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

On February 26, 2018, the COFINA Agent filed a motion to certify five questions to the Puerto Rico Supreme Court regarding whether the COFINA enabling legislation transferred to COFINA present ownership of future SUT revenues, and whether the enabling legislation is unconstitutional because it allegedly violates various provisions of the Puerto Rico Constitution. Various COFINA bondholder groups joined in the motion in whole or in part; the Commonwealth Agent, the Oversight Board, and the Ad Hoc Group of general obligation bondholders opposed the motion in whole or in part. The Court heard oral arguments on May 9, 2018, and took the motion under advisement.

On May 14, 2018, certain Commonwealth creditors and certain Corporation's creditors announced a purported settlement of the Commonwealth and the Corporation dispute. Neither FAFAA, nor the Oversight Board, nor the named parties in this adversary proceeding joined the purported settlement.

On June 5, 2018, the Commonwealth Agent and the Corporation Agent filed a joint motion requesting the Court to delay any decision on the summary judgement motions for 60 days in light of a proposed settlement in principle that they had reached (the proposed settlement). The proposed settlement was publicly disclosed on June 7, 2018.

Under the proposed settlement (which is subject to definitive documentation as well as Title III Court approval), a portion of the 5.5% SUT revenue currently conditionally allocated to the Corporation – which portion is referred to as Pledge Sales Tax Base Amount (PSTBA) – would be shared between the Corporation and the Commonwealth. The PSTBA is the base amount of SUT revenue allocated to the Corporation that the Corporation must receive under the Act No. 91 before that balance of the 5.5% of SUT revenue allocated to the Corporation can be made available to the Commonwealth. Currently, the PSTBA is approximately $783.2 million for fiscal year 2019 and grows 4% annually until it reaches approximately $1.85 billion in fiscal year 2041. The proposed settlement would divide the PSTBA so that the Corporation receives 53.65% of the PSTBA starting in fiscal year 2019 while the Commonwealth receives the other 46.35% for the benefit of holders' claims, subject to certain restrictions and exceptions. The balance of the 5.5% SUT revenue conditionally allocated to the Corporation would continue to flow to the Commonwealth. The Proposed settlement also allocates to the Corporation 100% of certain previously collected SUT revenue held at Bank of New York Mellon (trustee) that is the subject of litigation. This description is a summary of the terms of the proposed settlement. For a full description of its terms, readers are directed to the language of the proposed settlement, which is a public document.

As discussed above court appointment agents for general obligation and COFINA creditors had already reached an agreement in principle in June 2018 regarding the allocation of future sales tax generated in Puerto Rico. On August 8, 2018, the Oversight Board announced that will honor the terms of that agreement that appears to resolve the lingering dispute between senior and subordinate sales tax revenue bondholders. Senior and subordinate COFINA bondholders would both receive senior lien bonds in exchange for existing securities. The Oversight Board expects existing senior lien COFINA holders to recover between 93-95 cents on the dollar. Subordinate bondholders' recoveries are expected to range between 56-58 cents on the dollar. The mono-line bond insurers have agreed to the terms of the settlement.

On August 29, 2018, the Oversight Board and the Government of Puerto Rico announced that they have entered into a plan support agreement and term sheet with a significant portion of the COFINA bondholders and other stakeholders under the terms and conditions of the proposed COFINA bondholder

(continued)

**PUERTO RICO SALES TAX FINANCING CORPORATION**
(A Component Unit of the Commonwealth of Puerto Rico)

Notes to Basic Financial Statements

June 30, 2015

deal announced on June 7, 2018 and agreed upon on August 8, 2018. The proposed settlement, which provides nearly 32% reduction in COFINA debt, gives Puerto Rico approximately $17.5 billion in debt service savings and enables bondholders to receive a significant recovery, it is still subject to approval by the Title III Court.

g)  *Other specific subsequent events that relates to the Corporation*

On April 28, 2017, the Bank's management concluded that an orderly wind-down of its operations and consensual negotiations with its creditors would be the optimal path to mitigate the impact to its stakeholders (municipalities, depositors, and other creditors, etc.). The Bank's operational wind-down was completed on March 23, 2018, with all fundamental operations having ceased or transferred to other Commonwealth's instrumentalities and workforce restructuring completed with minimal human resources remaining to conclude legal and operational matters through fiscal year 2019.

Hurricane Maria, a category 4 storm, made landfall in Puerto Rico on September 20, 2017, less than two weeks after Hurricane Irma, a category 5 storm, passed north of Puerto Rico leaving over a million local residents without electric power. Hurricane Maria caused catastrophic property damages throughout Puerto Rico, including homes, businesses, roads, bridges, power lines, commercial establishments, and public facilities. In addition, it caused flooding in some areas, displaced many local residents, and severely disrupted business operations and economic activities. Catastrophic damages to the island were approximately $94 billion.

\*\*\*