## <u>Exhibit F</u>

**English Version of the New Bond Legislation**

"ENGLISH VERSION OF THE PUERTO RICO SALES TAX FINANCING CORPORATION ACT:

## STATEMENT OF MOTIVES

Puerto Rico faces an unprecedented fiscal and economic crisis.  This bill, as well as the restructuring agreement reached with the creditors of Government Development Bank for Puerto Rico, will enhance Puerto Rico's credibility. With this agreement, we will achieve significant adjustments in the repayment of the government's debts incurred by other administrations, but that it is now our responsibility to resolve. This way, we ensure that the Government is able to continue operating and serving the people of Puerto Rico.

The positions assumed and actions taken by the prior administration caused Puerto Rico to lose access to the capital markets and precipitated the collapse of our public finance system.  These actions accelerated the contraction of the Puerto Rico economy and increased the outmigration of residents of Puerto Rico to the United States mainland.

The prior administration developed a hostile relationship with participants of the financial markets, including tens of thousands of residents of Puerto Rico that invested their savings trusting the good name and credit of the Commonwealth and that of its public corporations.  This hostile environment towards Puerto Rico also pervaded the United States Congress due to the lack of transparency and honesty, while generating consistently negative news coverage for Puerto Rico at the local, national and global level.

Misguided decisions of the prior administration led to the bankruptcy of the Commonwealth of Puerto Rico and its need to gather its resources to address and provide essential services to the people of Puerto Rico.  This, in turn, acted as a catalyst for a controversy that challenged the structure pursuant to which the Puerto Rico Sales Tax Financing Corporation ("COFINA" by its Spanish acronym) issued its bonds.   In particular, certain parties asserted claims arguing, among other things, that (i) COFINA's issuance of its bonds violated the Puerto Rico Constitution and (ii) the portion of the sales and use tax imposed by the Commonwealth at a rate of 5.5% (the "SUT") and transferred to COFINA constituted "available resources" of the Commonwealth pursuant to Article VI, Section 8, of the Puerto Rico Constitution and must be used for the payment of the Commonwealth's "public debt."  Certain creditors also challenged the scope of the Puerto Rico Constitution based on the whether the Spanish term "recursos disponibles" or the English term "available revenues, plus surplus" was used.  On May 5, 2017, the Financial Oversight and Management Board ("Oversight Board") created pursuant to the provisions of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA") commenced a proceeding as representative of COFINA under Title III.

The Commonwealth's and COFINA's various stakeholders sought an orderly process to resolve the disputes relating to COFINA and the ownership of the SUT (collectively, the "Commonwealth-COFINA Dispute"). To that end, on August 10, 2017, the Title III Court entered a stipulation and order appointing the Commonwealth's Official Committee of Unsecured Creditors to act as agent for the Oversight Board in its capacity as representative of the Commonwealth (the "Commonwealth Agent") and Bettina M. Whyte to act as agent for the Oversight Board in its capacity as representative of COFINA (the "COFINA Agent") in an effort to facilitate a settlement of the Commonwealth-COFINA Dispute.

On June 5, 2018, the Commonwealth Agent and the COFINA Agent announced that they had reached an agreement in principle to resolve the Commonwealth-COFINA Dispute (the "Agreement in Principle"). The Agreement in Principle was premised on splitting the fixed amount of the SUT transferred to COFINA each fiscal year (the "PSTBA") between the Commonwealth and COFINA beginning in fiscal year 2019, with COFINA receiving 53.65% of the yearly scheduled PSTBA and the Commonwealth receiving 46.35% of the yearly scheduled PSTBA plus all other revenues collected on account of the SUT.

Consistent with the public policy implemented by the Governor of Puerto Rico, the Fiscal Agency and Financial Advisory Authority, the Oversight Board, and various creditors and insurers of COFINA bonds executed a plan support agreement (as amended and restated on September 21, 2018, the "Plan Support Agreement"), which incorporates the Agreement in Principle's PSTBA split and provides for the settlement of the Commonwealth-COFINA Dispute pursuant to a plan of adjustment for COFINA under Title III of PROMESA (the "COFINA Plan").

The Legislative Assembly is now called upon to implement the agreement by and among the parties of the Commonwealth-COFINA Dispute by amending the provisions of Act No. 91, which created COFINA and authorized it to issue bonds.  These amendments will serve to release the lien that holders of COFINA bonds currently have over approximately $17.5 billion of previously pledged SUT revenues. These revenues will now be available for use by the Government of Puerto Rico to better serve and provide for its citizens.  By implementing the Plan Support Agreement, this legislation also puts an end to the costly litigation between the agents appointed by the Oversight Board and settles the claims of COFINA's bondholders, while also making clear the original legislative intent of Act 91-2006, as amended.  Moreover, as a result of this implementing legislation, we will be saving the Government of Puerto Rico approximately $437.5 million per year, which will now be available to the Government for the benefit of the people of Puerto Rico.

Equally important, this legislation shows that the Legislative Assembly is determined to take the steps necessary to enable Puerto Rico's return to the capital

markets. As one of the steps required to implement the Plan Support Agreement, this legislation will allow for the restructuring of the COFINA debt under Title III of PROMESA, act as a catalyst for other restructurings, setting the stage for Puerto Rico's emergence from bankruptcy, reduce costly litigation, and accelerate termination of the Oversight Board in accordance with PROMESA.

This Act demonstrates the Legislative Assembly's continued public policy commitment to correct Puerto Rico's financial crisis, honor Puerto Rico's financial obligations, regain access to the capital markets, and achieve economic certainty and debt sustainability for Puerto Rico.

1   *CHAPTER 1. – TITLE AND DEFINITIONS*

2   *Article 1.1.-Title.*

3   *This Act shall be known as the "Puerto Rico Sales Tax Financing Corporation Act."*

4   *Article 1.2.-Definitions.*

5   *The following terms shall have the meanings stated below:*

6   *(a)   "AAFAF"– means the Puerto Rico Fiscal Agency and Financial Advisory*

7   *Authority.*

8   *(b)   "Act"– means Act 91-2006, as amended, also known as the "Puerto Rico Sales Tax*

9   *Financing Corporation Act".*

10   *(c)   "Ancillary Agreements"– means the Bond Indenture, the Settlement Agreement,*

11   *and any other agreement or instrument entered into by the Corporation or the Indenture Trustee*

12   *in connection with, or in furtherance of, the Restructuring Transaction and in accordance with,*

13   *or in furtherance of, the Corporation Plan of Adjustment.*

14   *(d)   "Authorized Activities"– means the activities authorized to be carried out by the*

15   *Corporation under Article 2.4 of this Act.*

16   *(e)   "Board of Directors"– means the Board of Directors of the Corporation.*

1       *(f)*      *"Bond Indenture" – means one or more trust agreements, bond indentures and any*

2  *supplements or amendments thereto, or similar contracts or agreements, entered into by the*

3  *Corporation and the Indenture Trustee pursuant to which Plan of Adjustment Bonds are issued,*

4  *and establishing the rights and responsibilities of the Corporation and of the holders of Plan of*

5  *Adjustment Bonds issued thereunder.*

6       *(g)*      *"Chair" – means the chairperson of the Board of Directors.*

7       *(h)*      *"COFINA Revenues" – means the First Funds up to an amount equal to fifty-three*

8  *and sixty-five one hundredths percent (53.65%) of the Fixed Income for each Fiscal Year and all*

9  *legal and equitable rights, title and interest thereto (including the right to receive the First Funds*

10  *as set forth under Article 4.1 of this Act).*

11       *(i)*      *"COFINA Revenues Fund" – means the segregated fund or funds owned by the*

12  *Corporation into which the COFINA Revenues are deposited (1) which account shall be held in*

13  *the name of the Indenture Trustee for the benefit of the holders of the Plan of Adjustment Bonds,*

14  *(2) may not be owned or controlled in any way by the Government of Puerto Rico or any*

15  *Government Entity other than the Corporation, and (3) is maintained in one or more mainland*

16  *U.S. banks.*

17       *(j)*      *"Corporation" – means the Puerto Rico Sales Tax Financing Corporation created*

18  *by this Act.*

19       *(k)*      *"Corporation Plan of Adjustment" – means the plan of adjustment consummated*

20  *in connection with the Corporation's case under Title III of PROMESA, including the order of*

21  *the District Court confirming such plan of adjustment.*

1   (l)   "District Court" – means the United States District Court for the District of

2   Puerto Rico.

3   (m)   "Effective Date" – means the date on which the Corporation Plan of Adjustment

4   becomes effective in accordance with its terms.

5   (n)   "Financing Costs" – means all costs associated with the Restructuring

6   Transaction, including the costs, fees and expenses to (1) issue, service, repay or refinance the Plan

7   of Adjustment Bonds, whether such costs are incurred upon issuance of such Plan of Adjustment

8   Bonds or over the term of the Plan of Adjustment Bonds, (2) make payments as required by the

9   Ancillary Agreements, (3) pay any stamp, issuance or similar taxes and other charges related to

10   the Restructuring Transaction, provided, that this provision does not limit in any way the

11   exemption from taxes set forth in Article 2.8 hereof, (4) prepare for and enter into the

12   Restructuring Transaction, and (5) perform all ongoing activities relating to the Restructuring

13   Transaction.  For the avoidance of doubt, Financing Costs also includes pre-closing and post-

14   closing administrative fees and expenses incurred in connection with all Ancillary Agreements,

15   but does not include payments of principal and interest on the Plan of Adjustment Bonds.

16   (o)   "First Funds" – means the first funds comprising the Pledged Taxes in any Fiscal

17   Year as described in Article 4.1 of this Act.

18   (p)   "Fiscal Year" – means the fiscal year of the Government of Puerto Rico, which

19   begins on July 1 and ends on June 30.

20   (q)   "Fixed Income" – means, for Fiscal Year 2018-2019, seven hundred eighty-three

21   million, one hundred ninety-seven thousand, two hundred and fifty-one dollars ($783,197,251)

22   and, for each subsequent Fiscal Year, the Fixed Income for the prior Fiscal Year plus four percent

1    (4%) of such Fixed Income, up to the Maximum Amount.  The Fixed Income for each Fiscal Year

2    shall be funded from the first revenues collected of the Pledged Taxes.

3          (r)    "Government Entity" – means any agency, department, office, public corporation,

4    trust, fund, system, instrumentality, political subdivision, taxing authority or municipality of the

5    Government of Puerto Rico.

6          (s)    "Government of Puerto Rico"– means the Commonwealth of Puerto Rico and the

7    government thereof.

8          (t)    "Indenture Trustee"– means the Person designated as trustee or indenture trustee

9    under the Bond Indenture, including any successor trustee or indenture trustee under the Bond

10   Indenture.

11         (u)    "Maximum Amount" – means One Billion Eight Hundred and Fifty Million

12   dollars ($1,850,000,000.00).

13         (v)    "Oversight Board" – means the Financial Oversight and Management Board for

14   Puerto Rico established pursuant to Article 1.1 of PROMESA.

15         (w)    "Person" – means any natural person or legal entity, including, but not limited to,

16   the Government of Puerto Rico, any Government Entity, or any firm, partnership, joint venture,

17   trust, estate, limited liability company, corporation of individuals, association, or public or private

18   corporation, organized or existing under the laws of Puerto Rico, the United States of America,

19   any state or any other jurisdiction, or any state, municipality, political subdivision, taxing

20   authority, agency or instrumentality of the United States of America, any state or any other

21   jurisdiction, or any combination thereof.

1       *(x)    "Plan of Adjustment Bonds" – means any Restructuring Bonds and any*

2    *Refunding Bonds.*

3       *(y)    "Pledged Taxes" – means, subject to the provisions of Article 3.3 hereof, (1) the*

4    *present and future revenues and collections generated by the portion of the Sales Tax that*

5    *corresponds to a tax rate of five and one-half percent (5.5%), and (2) the Substituted Collateral, if*

6    *any.*

7       *(z)    "PROMESA" – means the "Puerto Rico Oversight, Management, and Economic*

8    *Stability Act", Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C. 2101 et. seq.*

9       *(aa)    "Refunding Bonds" – means the bonds issued by the Corporation pursuant to the*

10   *Act and the Ancillary Agreements, on a pari passu basis with the Restructuring Bonds, to retire,*

11   *refinance or defease any Plan of Adjustment Bonds.*

12      *(bb)    "Restructuring Bonds" – means the bonds issued by the Corporation pursuant to*

13   *this Act, the Corporation Plan of Adjustment, and the Ancillary Agreements, having terms that*

14   *conform to, and that are authorized, determined to be valid, and distributed in accordance with,*

15   *the Corporation Plan of Adjustment.*

16      *(cc)    "Restructuring Resolution" – means one or more resolutions of the Board of*

17   *Directors authorizing: (1) the issuance of Plan of Adjustment Bonds and describing the terms*

18   *thereof; and (2) the payment of the Financing Costs, each in accordance with the terms of the*

19   *Corporation Plan of Adjustment.*

20      *(dd)    "Restructuring Transaction" – means the transactions contemplated by, or in*

21   *furtherance of, the Corporation Plan of Adjustment.*

1   (ee) "Sales Tax" – means the sales and use taxes imposed by the Government of Puerto

2 Rico pursuant to Sections 4020.01 and 4020.02 of Subchapter D of Act No. 1-2011, as amended,

3 known as the Internal Revenue Code for a New Puerto Rico.

4   (ff) "Settlement Agreement" – means the Settlement Agreement, dated as of October

5 [15], 2018, between the Oversight Board, on behalf of the Government of Puerto Rico, and the

6 agent for the Corporation appointed by the Oversight Board to settle or litigate the dispute between

7 the Government of Puerto Rico and the Corporation regarding the ownership of the Sales Tax.

8   (gg) "Substituted Collateral" – means all or a portion of a tax of general applicability

9 throughout Puerto Rico that is enacted in full substitution of the Pledged Taxes or otherwise

10 constitutes like or comparable security for the Plan of Adjustment Bonds.

11   (hh) "Substitution Requirements" – means (1) the enactment of legislation providing

12 for Substituted Collateral that also provides (A) that the Substituted Collateral in an amount equal

13 to the COFINA Revenues has been irrevocably transferred to and is owned solely and exclusively

14 by the Corporation to the full extent provided under Article 2.2 of this Act, (B) that, following

15 such transfer, such Substituted Collateral in an amount equal to the COFINA Revenues is not,

16 and shall not constitute, "available resources" or "available revenues" of the Government of

17 Puerto Rico as that term is used in Section 8 of Article VI of the Puerto Rico Constitution or as

18 otherwise used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or

19 English version of the Puerto Rico Constitution), (C) for a lien on such Substituted Collateral in

20 favor of the Indenture Trustee for the benefit of the holders of Plan of Adjustment Bonds to the full

21 extent provided for under Article 3.2 of this Act, and (D) that the Government of Puerto Rico and

22 the Government Entities shall continue to provide the covenants set forth in Article 3.3 of this Act

1   *with respect to such Substituted Collateral, and (2) prior to the substitution of the Substituted*

2   *Collateral, the ratings requirements set forth in the Ancillary Agreements are satisfied with respect*

3   *to the Substituted Collateral.*

4   *CHAPTER 2. - THE PUERTO RICO SALES TAX FINANCING CORPORATION*

5   *Article 2.1. - Creation and Separate Legal Existence of the Corporation.*

6   *There is created a public corporation and instrumentality of the  Government of Puerto*

7   *Rico, which constitutes a corporate and political entity independent and separate from the*

8   *Commonwealth of Puerto Rico to be known as the Puerto Rico Sales Tax Financing Corporation.*

9   *The Corporation, which was created pursuant to the provisions of this Act, is and shall be*

10  *recognized for all purposes as an independent and separate legal entity from the Government of*

11  *Puerto Rico and any other Government Entity. It shall be operated independently, and its business*

12  *and affairs shall be governed by or under the direction of its Board of Directors.*

13  *Article 2.2. - Ownership of the COFINA Revenues.*

14  *(a)     Any and all ownership interests and rights to the COFINA Revenues were, have*

15  *been or are hereby transferred to the Corporation.*

16  *(b)     The transfer described in (a) above is an absolute transfer of all legal and equitable*

17  *right, title and interest, and not a pledge or other financing.*

18  *(c)     The Corporation is and will be the sole and exclusive owner of the COFINA*

19  *Revenues until such time as the Plan of Adjustment Bonds, together with any interest thereon,*

20  *and all amounts and obligations under all Ancillary Agreements, have been completely paid in*

21  *cash in full or have otherwise been discharged in accordance with their terms.*

1  (d)  Persons designated as withholding agents for purposes of the imposition and
2  collection of the Sales Tax pursuant to the Act 1-2011, as amended, also known as the Internal
3  Revenue Code for a New Puerto Rico, shall be deemed to collect any portion of the Sales Taxes in
4  which the Corporation has an ownership interest on behalf of the Corporation.   Any such
5  withholding agent will continue to be subject to any and all obligations and responsibilities
6  imposed by the Internal Revenue Code for a New Puerto Rico, on withholding agents in relation
7  to the imposition and collection of the Sales Tax.

8  (e)  The COFINA Revenues do not constitute "available resources" or "available
9  revenues" of the Government of Puerto Rico as used in Section 8 of Article VI of the Puerto Rico
10  Constitution or as otherwise used in the Puerto Rico Constitution (whether construed pursuant
11  to the Spanish or English version of the Puerto Rico Constitution).

12  Article 2.3.-Purpose of the Corporation.

13  On and after the Effective Date, the Corporation's purpose will be to (a) issue the Plan of
14  Adjustment Bonds, (b) own and administer the COFINA Revenues, and (c) issue any other bonds,
15  notes or evidence of indebtedness of the Corporation as may be permitted by the Corporation Plan
16  of Adjustment and the Ancillary Agreements and which will be payable from such sources as may
17  be provided for by the Legislative Assembly.

18  Article 2.4.-The Corporation's Activities.

19  The Corporation's activities shall be limited to the following Authorized Activities:

20  (a)  receiving and owning the COFINA Revenues and such other revenues or property
21  as may be provided or transferred to the Corporation;

22  (b)  adopting the Restructuring Resolution;

1      (c)    *issuing, from time to time, Plan of Adjustment Bonds and any bonds, notes or*

2 *evidences of indebtedness the issuance of which is authorized by Article 2.3 of this Act;*

3      (d)    *entering into and performing the Ancillary Agreements;*

4      (e)    *to pay any bonds, notes or evidences of indebtedness the issuance of which is*

5 *authorized by Article 2.3 of this Act by pledging, on a basis subordinate in all respects to the lien*

6 *established in Article 3.2 of this Act, (1) any amounts remaining of the COFINA Revenues after*

7 *the payment of principal and interest on the Plan of Adjustment Bonds or (2) any other funds or*

8 *property that may be allocated to the Corporation after the Effective Date; and*

9      (f)    *taking any and all other actions as may be necessary or appropriate to effectuate the*

10 *Restructuring Transaction and the Corporation Plan of Adjustment, including making*

11 *amendments to, exchanging and/or canceling bonds issued by the Corporation prior to the*

12 *Effective Date and amending and restating agreements of the Corporation relating thereto.*

13      *Article 2.5.-Ancillary Powers.*

14      *In order to carry out the Authorized Activities, without limiting the foregoing, the*

15 *Corporation shall have the power to:*

16      (a)    *sue and be sued in any Commonwealth court or the District Court;*

17      (b)    *adopt, alter and use a seal;*

18      (c)    *formulate, adopt, amend and revoke rules for the administration and management*

19 *of its affairs, and such standards, rules and regulations that may be necessary or convenient to*

20 *exercise and perform the Authorized Activities;*

21      (d)    *open and maintain bank accounts, including the COFINA Revenues Fund;*

22      (e)    *acquire, hold, lease, sell and otherwise transfer property;*

1   *(f)  have complete legal and equitable dominion over its properties (including the*

2 *COFINA Revenues), subject to the statutory lien established under Article 3.2 of this Act;*

3   *(g)  make, execute and amend contracts and all other instruments necessary or*

4 *convenient to perform the Authorized Activities;*

5   *(h)  appoint and remove officers, agents, employees and contractors, establish their*

6 *compensations, powers and duties, in each case, in accordance with the Ancillary Agreements;*

7   *(i)  pay its operating expenses and the Financing Costs;*

8   *(j)  procure insurance, including insurance covering the Corporation's directors and*

9 *officers, against loss in connection with its activities, properties or assets;*

10   *(k)  invest funds and establish and maintain reserves as required by, and pursuant to*

11 *standards set forth in, the Ancillary Agreements;*

12   *(l)  indemnify the members of the Board of Directors, its officers, agents, employees,*

13 *contractors and other third parties for conduct that does not constitute gross negligence, willful*

14 *misconduct or fraud;*

15   *(m)  exercise such other powers, not inconsistent herewith, as may be necessary to carry*

16 *out the Authorized Activities;*

17   *(n)  take any action or measure necessary or convenient to carry out its purposes and*

18 *exercise the powers expressly granted in this Article;*

19   *(o)  delegate to its officers, agents, employees or contractors authority to take actions in*

20 *furtherance of this Act; and*

21   *(p)  execute, file and amend any relevant returns, forms, elections or statements with*

22 *any governmental authority.*

1  *Article 2.6.-Prohibited Activities.*

2  *While the Plan of Adjustment Bonds are outstanding, the Corporation shall not be*
3  *authorized to:*

4  *(a)    merge or consolidate, directly or indirectly, with any Person;*

5  *(b)    incur, guarantee or otherwise become obligated to pay any debt or other obligations*
6  *other than the Plan of Adjustment Bonds, operating costs, the Financing Costs and any bond, note*
7  *or evidence of indebtedness permitted under Article 2.3 hereof;*

8  *(c)    pledge, create or record liens on any of its properties (including the COFINA*
9  *Revenues), other than (1) the pledge to secure the payment of Plan of Adjustment Bonds created*
10  *pursuant to Article 3.2 of this Act or (2) any pledge or lien to secure any bond, note or evidence of*
11  *indebtedness permitted under Article 2.3 hereof but only to the extent such pledge or lien is*
12  *subordinate in all respects to the lien established in Article 3.2 of this Act;*

13  *(d)    engage in business activities other than as expressly authorized in this Act;*

14  *(e)    dissolve, liquidate, sell or, except as permitted by Article 2.4(e), otherwise transfer*
15  *any or all of its properties (including the COFINA Revenues); and*

16  *(f)    take any other action that is inconsistent with the Corporation's purpose set forth*
17  *in this Act or ancillary thereto.*

18  *Article 2.7.-Board of Directors.*

19  *The powers of the Corporation shall be exercised by the Board of Directors.*

20  *(a)    Composition of the Board of Directors.*

21  *The Board of Directors shall be composed of three (3) members, who shall meet the*
22  *requirements set forth in Article 2.7 (b)(iii) of this Act and shall be appointed by the Governor of*

1    *Puerto Rico; provided, that, pursuant to the provisions of the Ancillary Agreements, certain*

2    *holders of Plan of Adjustment Bonds may submit up to three (3) recommendations for the*

3    *Governor's consideration of the initial appointment of the Corporation's directors but the*

4    *Governor shall be under no obligation to appoint any such recommended persons.*

5       *(b)      General Provisions regarding the Board of Directors.*

6          *(i)      Each member of the Board of Directors shall be appointed for a term of three*

7    *(3) years and may serve consecutive terms as an appointed member; provided, that the*

8    *Governor may remove any member prior to the expiration of their term if such member*

9    *fails to uphold the responsibilities set forth in this Act or for gross negligence, willful*

10   *misconduct or fraud;*

11          *(ii)      each member of the Board of Directors shall be entitled to one (1) vote;*

12          *(iii)     each member of the Board of Directors shall satisfy the independence and*

13   *qualification standards (including that no member of the Board of Directors may be an*

14   *officer, employee or director of any Government Entity other than the Corporation) set*

15   *forth in the Ancillary Agreements;*

16          *(iv)     all decisions and actions of the Board of Directors shall require the*

17   *affirmative vote of the majority of the members of the Board of Directors at the time serving;*

18   *provided, that, the Corporation's bylaws may require a higher approval threshold for*

19   *particular matters described therein; and*

20          *(v)      the members of the Board of Directors shall select a Chair from among*

21   *themselves.*

22   *(c)      Vacancies.*

1    *In the event of a vacancy in the office of a member of the Board of Directors by death,*

2    *removal, resignation or otherwise, a successor member who meets the requirements set forth in*

3    *Article 2.7 (b)(iii) of this Act shall be appointed by the Governor of Puerto Rico subject to Article*

4    *2.7(b)(i) hereof.*

5    *(d)    Compensation.*

6    *Members of the Board of Directors shall receive such compensation as is authorized*

7    *pursuant to the Ancillary Agreements.*

8    *(e)    Adoption and Amendment of Rules.*

9    *As soon as practicable after the appointment of all members and appointment of the Chair,*

10   *the Corporation shall adopt rules and procedures governing its activities under this Act. The Board*

11   *of Directors shall be entitled to amend such rules and procedures from time to time.*

12   *(f)    Quorum.*

13   *A majority of the members of the Board of Directors at the time serving shall constitute a*

14   *quorum to make decisions or exercise any power or function of the Corporation. Any one or more*

15   *members may participate in a meeting of the Board of Directors by teleconference or similar*

16   *communications equipment. Participation by such means shall constitute presence in person at*

17   *the meeting. Any action necessary or allowed in any meeting of the Board of Directors shall be*

18   *authorized with no need for a meeting, if all the members of the Board of Directors give their*

19   *written consent concerning such action.*

20   *(g)    Delegation.*

1       *The Board of Directors may delegate to one or more of the members, or to the Corporation's*

2       *officers, agents and employees, such powers and duties as the Board of Directors may deem*

3       *appropriate.*

4              *Article 2.8.-Tax Exemption.*

5       *(a)      It is hereby found and declared that the activities of the Corporation are for a public*

6       *purpose. As a result, the Corporation shall be totally exempt from, and shall not be required to pay*

7       *any kind of taxes, assessments, licenses, stamps, fees or other similar charges levied by the*

8       *Government of Puerto Rico or any Government Entity upon any of the property that the*

9       *Corporation owns, possesses, holds or uses or on its activities, or upon any income, payment or*

10      *gain derived therefrom.*

11      *(b)      The Plan of Adjustment Bonds, including, but not limited to, any payments or*

12      *income with respect to the Plan of Adjustment Bonds and the transfer of the Plan of Adjustment*

13      *Bonds, shall, at all times, be totally exempt from all kinds of taxes, assessments, licenses, stamps,*

14      *fees and other charges levied by the Government of Puerto Rico or any Government Entity.*

15      *Holders and beneficial owners of the Plan of Adjustment Bonds shall not be subject to any tax*

16      *return filing or any other tax reporting or similar requirement in respect of the Government of*

17      *Puerto Rico or any Government Entity by reason of holding, owning or transferring the Plan of*

18      *Adjustment Bonds.*

19             *Article 2.9.–Inapplicability of Certain Laws.*

20             *The following laws or provisions shall not apply to the Corporation notwithstanding that*

21      *they may appear to apply to the Corporation:*

1        (a)      Chapters 4 and 6 of Act 26-2017, as amended, known as the "Fiscal Plan

2   Compliance Act";

3        (b)      Act 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of

4   2011";

5        (c)      Act 103 of May 25, 2006, as amended, known as the "Act for the Fiscal Reform of

6   the Government of the Commonwealth of Puerto Rico of 2006";

7        (d)      Act 8-2017, as amended, known as the "Act for the Transformation of the

8   Government's Human Resources";

9        (e)      Act 237-2004, as amended, known as the "Act to Establish Uniform Parameters

10  for Contracting Professional and Consulting Services by Agencies and Instrumentalities of the

11  Government of Puerto Rico";

12       (f)      Act 197-2002, as amended, known as the "Act to Regulate the Transition Process

13  of the Government of Puerto Rico";

14       (g)      Act 78-2011, as amended, known as the "Electoral Code of Puerto Rico for the XXI

15  Century";

16       (h)      Act 38-2017, known as the "Uniform Administrative Procedures Act of the

17  Government of Puerto Rico";

18       (i)      Plan 3-2011, as amended, known as "General Services Reorganization Plan";

19       (j)      Act 230 of July 23, 1974, as amended, known as the "Government Accounting

20  Act";

21       (k)      Act 3-2017, known as the "Law to Address the Economic, Fiscal and Budgetary

22  Crisis and Ensure the Functioning of the Government of Puerto Rico"; and

1       *(l)*     *Act 14 of April 17, 1972, as amended.*

2   *CHAPTER 3. - THE RESTRUCTURING TRANSACTION*

3       *Article 3.1.–Issuance of Plan of Adjustment Bonds.*

4       *(a)*     *From and after the Effective Date, the Corporation shall be authorized to issue Plan*

5 *of Adjustment Bonds, from time to time, pursuant to the Corporation Plan of Adjustment and the*

6 *terms and conditions authorized by the Corporation and set forth in the applicable Restructuring*

7 *Resolution and the Ancillary Agreements.*

8       *(b)*     *Plan of Adjustment Bonds shall be dated, shall bear interest at such rates and shall*

9 *mature at such time or times as may be determined by the Corporation and authorized in the*

10 *applicable Restructuring Resolution in accordance and consistent with the Corporation Plan of*

11 *Adjustment. The Corporation shall determine the form of Plan of Adjustment Bonds and the*

12 *manner of execution of Plan of Adjustment Bonds, and shall fix the denomination or*

13 *denominations of Plan of Adjustment Bonds and the place or places of payment of principal thereof*

14 *and interest thereon, the terms of redemption and purchase in lieu of redemption and the other*

15 *terms thereof, all in accordance and consistent with the Corporation Plan of Adjustment. Such*

16 *Plan of Adjustment Bonds may be sold at public or private sale for such price or prices as the*

17 *Corporation shall determine, or issued in exchange for existing bonds of the Corporation in*

18 *accordance with the Plan of Adjustment.*

19       *(c)*     *Plan of Adjustment Bonds shall be payable solely from the COFINA Revenues in*

20 *accordance with the terms of this Act and the Ancillary Agreements.*

1    (d)    *The Corporation may purchase bonds issued by the Corporation on the terms and*

2    *in accordance with the Corporation Plan of Adjustment and applicable Ancillary Agreements at*

3    *a price not exceeding the redemption price thereof.  All bonds so purchased shall be cancelled.*

4    (e)    *Neither the members of the Board of Directors nor any natural Person executing*

5    *such bonds shall be liable personally on the bonds or be subject to any personal liability or*

6    *accountability by reason of the issuance thereof.*

7    (f)    *Plan of Adjustment Bonds shall not constitute a debt of the Government of Puerto*

8    *Rico or of any Government Entity other than the Corporation. This statement shall be included in*

9    *the Plan of Adjustment Bonds, the Bond Indenture and the disclosure documentation relating to*

10   *such bonds.*

11   *Article 3.2.-Statutory Lien.*

12   *Plan of Adjustment Bonds shall automatically, upon the issuance of such Plan of*

13   *Adjustment Bonds, be secured by a statutory first lien on all of the Corporation's right, title and*

14   *interest in and to the Pledged Taxes, including any moneys, income, revenues, accounts, contract*

15   *rights or general intangibles derived therefrom, in favor of the Indenture Trustee for the benefit of*

16   *the holders of Plan of Adjustment Bonds.  Such statutory first lien shall occur automatically and*

17   *shall automatically attach and be perfected, valid and binding from and after the Effective Date,*

18   *without any further act or agreement by any Person. No instrument needs to be executed or*

19   *delivered or recorded in any official record or in any government registry or office in order to*

20   *perfect or continue such statutory first lien or to establish or maintain the priority thereof. No*

21   *commingling of the Pledged Taxes with any property of the Government of Puerto Rico, any other*

22   *Government Entity or any other Person shall limit, defeat, impair or interfere with such statutory*

1   *lien. Such lien shall be valid, binding, perfected and enforceable against all Persons having claims*

2   *of any kind in tort, contract or otherwise against the Corporation or its assets irrespective of*

3   *whether such Persons have notice of such lien.*

4   *Article 3.3.-Covenants Regarding Plan of Adjustment Bonds and the Restructuring*

5   *Transaction.*

6   *The Government of Puerto Rico, with the intent of being contractually bound, hereby*

7   *agrees and covenants with the Corporation and each Person that holds Plan of Adjustment Bonds,*

8   *and authorizes the Corporation to include such covenant in the Bond Indenture for the benefit of*

9   *the holders of Plan of Adjustment Bonds, that it will not, and no Government Entity shall be*

10   *authorized to, until the Plan of Adjustment Bonds, together with the interest thereon, and all*

11   *amounts and obligations under all Ancillary Agreements, have been completely paid in cash in*

12   *full or otherwise discharged in accordance with their terms:*

13   *(a)   take any action that would (A) impair the Corporation's right to receive the*

14   *COFINA Revenues, (B) limit or alter the rights vested in the Corporation in accordance with the*

15   *Corporation Plan of Adjustment to fulfill the terms of any agreements with the holders of Plan of*

16   *Adjustment Bonds, (C) materially and adversely impair the collection of the Pledged Taxes in any*

17   *Fiscal Year, or (D) impair the rights and remedies of the holders of the Plan of Adjustment Bonds*

18   *or the collateral security established under Article 3.2 of this Act;*

19   *(b)   reduce the Pledged Taxes to a rate less than five and one-half percent (5.5%) unless,*

20   *in connection with such reduction, the credit rating and other requirements set forth in the*

21   *Ancillary Agreements are satisfied; provided, however, that, notwithstanding the foregoing, until*

22   *all obligations with respect to the Plan of Adjustment Bonds have been paid or satisfied in full in*

1    *accordance with their terms, if the rate of the Pledged Taxes is reduced below three percent (3%),*

2    *then, in connection with such reduction, the Government of Puerto Rico must comply with the*

3    *Substitution Requirements;*

4        *(c)    impair, limit, restrict, rescind, delay or modify the rights or powers of the*

5    *Corporation, the Indenture Trustee or the holders of Plan of Adjustment Bonds under this Act or*

6    *relating to the COFINA Revenues, or the Corporation's ability to meet its obligations to its*

7    *bondholders;*

8        *(d)    amend this Act to impair, limit, restrict, rescind, delay or modify any obligation or*

9    *commitment of the Corporation to the holders of Plan of Adjustment Bonds; and*

10       *(e)    limit or restrict the rights or powers of the appropriate officers of the Government*

11   *of Puerto Rico to impose, maintain, charge or collect the Pledged Taxes, provided that the foregoing*

12   *shall not preclude the Government of Puerto Rico from exercising its power, through a change in*

13   *law, replace the portion of the Sales Tax that corresponds to a tax rate of five and one half percent*

14   *(5.5%) with Substituted Collateral in accordance with the Substitution Requirements.*

15   *CHAPTER 4. - FUNDING OF THE CORPORATION; DEPOSITS AND DISBURSEMENTS.*

16       *Article 4.1.-First Dollars Funding of COFINA Revenues.*

17       *(a)    Each Fiscal Year, the first funds comprising the Pledged Taxes shall be transferred*

18   *to, and deposited with, the Corporation, or any account or fund (including the COFINA Revenues*

19   *Fund or an account or fund controlled by the Indenture Trustee designated in the Bond Indenture*

20   *pursuant to which obligations were incurred in accordance with this Act and the Ancillary*

21   *Agreements) designated by the Corporation, until such time as the Corporation has received an*

22   *amount equal to the COFINA Revenues for such Fiscal Year. The requirement that the first funds*

1   *comprising the Pledged Taxes up to the COFINA Revenues be deposited with the Corporation or*

2   *in any account or fund (including the COFINA Revenues Fund or an account or fund controlled*

3   *by the Indenture Trustee designated in the Bond Indenture pursuant to which obligations were*

4   *incurred in accordance with this Act and the Ancillary Agreements) designated by the*

5   *Corporation may not be modified; provided, that the Bond Indenture may contain provisions*

6   *allowing for the quarterly distribution of the Pledged Taxes between the Corporation and the*

7   *Government of Puerto Rico upon satisfaction of the requirements set forth in the Bond Indenture*

8   *and consistent with the Corporation Plan of Adjustment.  The Corporation shall have the rights*

9   *set forth in this Article 4.1 until such time as the Plan of Adjustment Bonds, together with any*

10  *interest thereon, and all obligations under all Ancillary Agreements, have been completely paid in*

11  *cash in full or have otherwise been discharged in accordance with their terms.*

12      *(b)     During each Fiscal Year, the Indenture Trustee or such other Person as may be*

13  *designated in the Bond Indenture shall determine, on a monthly basis, if the Corporation has*

14  *received the COFINA Revenues.  Once the Indenture Trustee or such other Person determines*

15  *that the COFINA Revenues have been deposited with the Indenture Trustee (or that portion of the*

16  *COFINA Revenues as the Corporation may be entitled to the extent the quarterly distribution*

17  *referenced in Article 4.1(a) above is in effect), all revenues of the Pledged Taxes received after such*

18  *determination shall be transferred to the Government of Puerto Rico.*

19      *(c)     No Person who collects or holds the Pledged Taxes shall have any legal or equitable*

20  *right, title or interest thereto solely by virtue of the fact that it collects or holds the Pledged Taxes.*

21      *Article 4.2.-Excess Funding.*

1    *The amounts deposited with the Corporation each Fiscal Year in excess of the amounts*

2    *required to pay principal and interest on the Plan of Adjustment Bonds then due and payable*

3    *(including the principal and interest due and payable on any past due Plan of Adjustment Bonds),*

4    *satisfy obligations assumed pursuant to the Bond Indenture or other Ancillary Agreements then*

5    *due and payable, pay its Financing Costs or operating expenses as provided in the Ancillary*

6    *Agreement, or make any other payment related to other obligations incurred by the Corporation,*

7    *will be transferred to the Corporation, free and clear of the lien established by Article 3.2 of this*

8    *Act and any other lien established by the Bond Indenture or other Ancillary Agreement.*

9    *CHAPTER 5. - MISCELLANEOUS PROVISIONS.*

10   *Article 5.1. -Severability.*

11   *This Act shall be interpreted in a manner to render it valid to the extent practicable in*

12   *accordance with the Puerto Rico Constitution and the U.S. Constitution. If any clause, paragraph,*

13   *subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter,*

14   *subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order*

15   *to such effect will neither affect nor invalidate the remainder of this Act. The effect of such an order*

16   *shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision,*

17   *section, subsection, title, chapter, subchapter, heading, or part of this Act so annulled or declared*

18   *unconstitutional. If the application to a Person or circumstance of any clause, paragraph,*

19   *subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter,*

20   *subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order*

21   *to such effect will neither affect nor invalidate the application of the remainder of this Act to such*

22   *Persons or circumstances to which it may be validly applied. It is the express and unequivocal*

1   *intent of this Legislative Assembly that the courts of law enforce the provisions and application of*

2   *this Act to the greatest possible extent, even if any of its parts is annulled, invalidated, affected or*

3   *declared unconstitutional, or even if the application thereof to any Person or circumstance is*

4   *annulled, invalidated or declared unconstitutional. This Legislative Assembly would have passed*

5   *this Act regardless of the ruling on severability that a Court may issue.*

6       *Article 5.2.- Language Conflict.*

7       *This Act shall be adopted both in English and Spanish. If in the interpretation or*

8   *application of this Act any conflict arises as between the English and Spanish texts, the English*

9   *text shall govern."*

10      Sección 26.- Se derogan los Artículos 2 y 4 de la Ley 116-2013, según enmendada.

11      Sección 27.- Se enmienda el Artículo 25-A de la Ley 44 del 21 de junio de 1988,

12  según enmendada, para que lea en su totalidad como sigue:

13      "(a)…

14      …

15      (k) Durante el período comprendido entre la fecha de aprobación de esta Ley y el

16  31 de diciembre de 2012, la Autoridad habrá de disponer de los activos depositados en la

17  Cuenta del Corpus de la siguiente manera:

18          (i) ...

19          (ii) el remanente, permanecerá en la Cuenta del Corpus y se utilizará para

20              comprar un bono de apreciación de capital emitido por la Corporación para

21              el Fondo de Interés Apremiante de Puerto Rico con un vencimiento no

22              menor de 30 años ni mayor de 40 años y a una tasa de interés de no menos

1      de 7.00%. El Sistema de Retiro de Empleados del Estado Libre Asociado de

2      Puerto Rico y la Autoridad para el Financiamiento de la Infraestructura de

3      Puerto Rico no podrán disponer voluntariamente del bono de la

4      Corporación del Fondo de Interés Apremiante de Puerto Rico, a menos que

5      dicha disposición sea autorizada por *la Autoridad de Asesoría Financiera y*

6      *Agencia Fiscal de Puerto Rico* **[el Banco Gubernamental de Fomento para**

7      **Puerto Rico y en el caso del bono depositado en la Cuenta del Corpus,**

8      **aprobada mediante Resolución Conjunta por la Asamblea Legislativa]."**

9      Sección 28.- Separabilidad.

10     Esta Ley se interpretará de tal manera para hacerla válida, en la medida que sea

11     factible, de acuerdo a la Constitución de Puerto Rico y la Constitución de los Estados

12     Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra,

13     artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de

14     esta Ley fuera anulada o declarada inconstitucional, la orden a tal efecto dictada no

15     afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha orden

16     quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo,

17     disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma

18     que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una Persona

19     o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra,

20     artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de

21     esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o

22     sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta

1    Ley a aquellas Personas o circunstancias en que se pueda aplicar válidamente. Es la

2    voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan

3    cumplir las disposiciones y la aplicación de esta Ley en la mayor medida posible, aunque

4    se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus

5    partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a

6    alguna persona o circunstancia. Esta Asamblea Legislativa hubiera aprobado esta Ley sin

7    importar la determinación de separabilidad que el Tribunal pueda hacer.

8            Sección 29.- Supremacía.

9            Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición

10   general o específica de cualquier otra ley o reglamento del Gobierno de Puerto Rico que

11   sea inconsistente con esta Ley.

12           Sección 30.- Vigencia.

13           Esta Ley comenzará a regir en la Fecha de Efectividad, según dicho término está

14   definido en la Ley 91-2016, según enmendada por esta Ley.