**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

**OMNIBUS REPLY OF PUERTO RICO
SALES TAX FINANCING CORPORATION TO
OBJECTIONS TO MOTION FOR ORDER (I) APPROVING
DISCLOSURE STATEMENT, (II) FIXING VOTING RECORD
DATE, (III) APPROVING CONFIRMATION HEARING NOTICE,
(IV) APPROVING SOLICITATION PACKAGES AND DISTRIBUTION
PROCEDURES, (V) APPROVING FORMS OF BALLOTS AND ELECTION
NOTICES, AND VOTING AND ELECTION PROCEDURES, (VI) APPROVING
NOTICE OF NON-VOTING STATUS, (VII) FIXING VOTING AND ELECTION
DEADLINES, AND (VIII) APPROVING VOTE TABULATION PROCEDURES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

103689405v5

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Sales Tax Financing Corporation ("COFINA"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA")[2] (the Oversight Board, in its capacity as representative of COFINA, is sometimes hereinafter referred to as the "Debtor"), respectfully submits this omnibus reply (the "Omnibus Reply") to the objections interposed to the *Puerto Rico Sales Tax Financing Corporation's Motion For Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Election Notices, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting and Election Deadlines, and (VIII) Approving Vote Tabulation Procedures* [Case No. 17-3284, ECF No. 307] (the "Disclosure Statement Motion"). In support of this Omnibus Reply, the Debtor respectfully states as follows:

**Preliminary Statement**

1. The Commonwealth-COFINA Dispute Settlement,[3] which is the foundation upon which the Plan is built, is a watershed moment in the Title III cases of COFINA and the Commonwealth of Puerto Rico (the "Commonwealth"). Since before the commencement of such Title III cases, the dispute regarding whether the Commonwealth or COFINA own the pledged sales tax revenue, which, at present, represents approximately $783 million in annual revenues (and is projected to grow annually by 4% until it reaches $1.85 billion in 2041), has

---

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3] Capitalized terms used but not defined herein shall have the meanings given to them in the Disclosure Statement Motion.

been an overarching and gating issue that is one of the keys to Puerto Rico's overall restructuring. Resolution of such dispute would determine what tax revenues might be available to the Commonwealth to address "essential services" and for debt service to satisfy both Commonwealth and COFINA outstanding indebtedness. Without a consensual resolution of the dispute, a litigated outcome presents COFINA and the Commonwealth, and, as a result, their respective creditors, with an all-or-nothing result. In each instance, regardless of the winner or loser in such litigation, the by-product would be significant delay, cost, and uncertainty to all of Puerto Rico's stakeholders.

2. After months of complex litigation, negotiation and, ultimately, documentation, the COFINA Agent and the Commonwealth Agent reached the Agreement in Principle, which formed the foundation for a further Court-mediated Plan Support Agreement and the development of the Plan. The filing of the Disclosure Statement and approval of the Disclosure Statement Motion are critical first steps toward reaching the goals set forth in PROMESA and providing a restructuring of billions of dollars of indebtedness and a rebirth of the Commonwealth.

3. The objections interposed to the adequacy of the information contained in the Disclosure Statement (collectively, the "Objections") are few in number and limited in substance. Given the number of parties in interest in COFINA's Title III Case, this is a testament to the thoroughness and comprehensiveness of the Disclosure Statement and the fact that the Plan has garnered overwhelming creditor support. Further, as described in more detail in the chart attached hereto as **Exhibit A** (the "Omnibus Reply Chart"), the Objections have been either addressed by the limited revisions to the Disclosure Statement or should be overruled.

4. Accordingly, the Debtor submits that the Disclosure Statement satisfies the requirements of section 1125 of title 11 of the United States Code (the "Bankruptcy Code"), made applicable pursuant to section 301 of PROMESA. Accordingly, and for all the reasons set for in the Disclosure Statement Motion and this Omnibus Reply, the Disclosure Statement Motion should be approved and the Debtor should be authorized to solicit acceptances and rejections to the Plan and elections of distributions in connection therewith.

**Background**

5. On October 19, 2018, the Debtor filed (i) the *Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3284, ECF No. 309] (as the same may be amended or modified, including all exhibits and attachments thereto, the "Plan"), (ii) the *Disclosure Statement for the Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3284, ECF No. 310] (as the same may be amended or modified, including all exhibits and attachments thereto, the "Disclosure Statement"), and (iii) the Disclosure Statement Motion requesting entry of an order (the "Disclosure Statement Order") approving the Original Disclosure Statement and establishing, among other things, solicitation and voting procedures in connection with the Plan.

6. Pursuant to the *Order Granting Urgent Motion of Puerto Rico Sales Tax Financing Corporation for Order (I) Setting Deadline for Filing Objections to COFINA Disclosure Statement and Replies Thereto and (II) Shortening Notice Period for Disclosure Statement Hearing* [Case No. 17-3284, ECF No. 306], the Court established November 13, 2018 at 12:00 p.m. (AST) as the deadline to file objections to the Disclosure Statement Motion and the adequacy of the information contained in the Disclosure Statement (the "Objection Deadline"). Only five (5) objections were interposed:

3

103689405v5

- *Objection of the Bank of New York Mellon, as Trustee, to the Disclosure Statement for the Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, ECF No. 4210] (the "BONY Objection");

- *Objection of Lehman Brothers Holdings, Inc. as Plan Administrator for Lehman Brothers Special Financing, Inc. to the Disclosure Statement* [Case No. 17-3283, ECF No. 4213] (the "Lehman Objection");

- *Objections to the Plan of Adjustment and the Adequacy of the COFINA Disclosure Statement and the Relief Requested in the Disclosure Statement with Reservation of Rights* [Case No. 17-3283, ECF No. 4215] (the "Mangiaracina Objection");

- *Objection to the Disclosure Statement by Four Credit Unions who are Creditors in this Case* [Case No. 17-3283, ECF No. 4225] (the "Credit Unions Objection"); and

- *Objection to Adequacy of the Disclosure Statement and Purported Settlement* [Case No. 17-3283, ECF No. 4244] (the "Dvores Objection").

7. Contemporaneously with the filing of this Omnibus Reply, the Debtor has filed (i) the *Amended Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3284, ECF No. 352], and (ii) the *Disclosure Statement for the Amended Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3284, ECF No. 353].

**Omnibus Reply to the Objections**

8. Several of the Objections, most notably, the BONY Objection, are procedurally improper and premature as they are objections to confirmation of the Plan, and do not relate to whether the Disclosure Statement contains adequate information as required by Bankruptcy Code section 1125, made applicable by PROMESA section 301(a). The Debtor submits that, with respect to such Objections, consideration is appropriate in connection with a hearing regarding confirmation of the Plan. With respect to the limited other Objections, the annexed Omnibus Reply Chart (**Exhibit A**) sets forth the reasons such Objections should be overruled or

4

that the revisions to the Disclosure Statement and/or the Plan, to the extent necessary, have allayed any such concerns.

9. Additionally, to address various concerns raised by non-objecting parties in interest, and in light of the revised Disclosure Statement, the Debtor has attached a revised Disclosure Statement Order hereto as **Exhibit B** (the "Revised Disclosure Statement Order"). For convenience, a redline comparing the Revised Disclosure Statement Order against the Disclosure Statement Order is attached hereto as **Exhibit C**.

10. Based upon the foregoing, and the reasons set forth in the Omnibus Reply Chart, the Objections should be overruled in their entirety.[4]

*[Remainder of page intentionally left blank]*

---

[4] Failure of the Debtor to address other arguments made in the Objections does not constitute a waiver of the Debtor's rights to object to such arguments at the hearing(s) to consider approval of the Disclosure Statement or confirmation of the Plan. The Debtor denies many of the factual and legal assertions and characterizations contained in the Objections. Nothing contained herein shall be deemed an admission or acceptance of any statement contained in the Objections.

WHEREFORE the Debtor respectfully requests entry of an order, substantially in the form of the Revised Disclosure Statement Order attached hereto as **Exhibit B**, (i) overruling the Objections, (ii) granting the Disclosure Statement Motion and approving the adequacy of the information contained in the Disclosure Statement, and (iii) granting the Debtor such other and further relief as the Court may deem just and proper.

Dated: November 16, 2018
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Chris Theodoridis (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

## Exhibit A

**Omnibus Reply Chart**

103689405v5

| I. The Lehman Objection [Case No. 17-3283, ECF No. 4213] ||
|---|---|
| **Objection** | **Response** |
| Lehman Brothers Holdings, Inc., as Plan Administrator for Lehman Brothers Special Financing, Inc. ("Lehman"), asserts that:<br><br>(a) the Disclosure Statement fails to describe Lehman's contract rights under that certain Debt Service Deposit Agreement among COFINA, Lehman, and the Bank of New York (the "Trustee"), dated July 1, 2008 (the "DSDA") and how the DSDA and claims resulting therefrom will be treated pursuant to the Plan;<br><br>(b) the Plan provides for third party releases, including for the Trustee, of all claims and causes of action released under the Plan and in accordance with the Plan Support Agreement and that the Trustee may be liable to Lehman under the DSDA for losses from the Trustee's gross negligence, willful misconduct, and breach of the Trustee's representations and warranties;<br><br>(c) the Disclosure Statement fails to adequately discuss COFINA's assets, including claims and causes of action, whether COFINA investigated potential causes of action, whether COFINA will retain any causes of action and their nature, the possibility of recovery under any such actions, and whether potential recoveries are unencumbered. Additionally, the Disclosure Statement states obligations to indemnify directors and officers will be assumed, but fails to discuss such policies and whether any are in effect; and<br><br>(d) the Plan fails to assess the likelihood of success of various causes of action challenging the constitutionality of PROMESA, the Oversight Board, and COFINA. | (a) The Disclosure Statement has been modified to provide a more complete discussion of the DSDA and the unsecured nature of any claims arising therefrom. *See* Disclosure Statement II.A.4. The Disclosure Statement further notes that, to the extent that the DSDA remains an executory contract, it will be deemed rejected pursuant to Plan § 18.1 as of the Effective Date unless otherwise rejected in the interim. *See id*. Consistent with the proof of claim filed by Lehman (Claim No. 42158), to the extent that Lehman has a Claim against COFINA arising under the DSDA (or the rejection thereof), such Claim has been classified in Class 9 as a general unsecured claim pursuant to the Plan.<br><br>(b) The revised Plan does not provide for third party releases, including for the Trustee.<br><br>(c) Throughout the Disclosure Statement, the Debtor discloses pending material litigation and causes of action COFINA has been pursuing or that otherwise concern COFINA and specifies in detail the types of causes of action that are being released by COFINA. *See* Disclosure Statement § VI.Q.5. The provision Lehman notes (*see* Disclosure Statement § VI.Q.10), providing that Reorganized COFINA retains the right to pursue causes of action that are not released under the Plan, is protective, and included to ensure any qualifying causes of action can be pursued by Reorganized COFINA at a future time. Lehman fails to provide evidence that any causes of action, other than the ones listed in the Disclosure Statement, exist. Lehman also fails to identify any instance where COFINA has not properly investigated or prosecuted any cause of action. Critically, the treatment for general unsecured claims in Class 9 is fixed under the Plan (as described in the Disclosure Statement), and is not dependent on any potential recoveries of COFINA's causes of action. Moreover, Lehman's objection to the lack of disclosure of COFINA's indemnification obligations is baseless. COFINA's (minimal, if any) indemnification obligations do not impact Plan distributions, and the disclosure thereof does not affect the adequacy of the information in the Disclosure Statement.<br><br>(d) The Disclosure Statement discusses the details of the causes of action challenging the constitutionality of PROMESA, the Oversight Board, and |

| | COFINA. *See, e.g.,* Disclosure Statement § IV. The descriptions of the causes of action contained therein provide sufficient information to inform creditors of the issues at stake to enable them to consult their own advisors on the likely results of the litigation. The Debtor cannot speculate as to the supposed merits of the causes of action, nor can the Debtor provide creditors with legal advice. Furthermore, such actions shall be dismissed, with prejudice, on the Effective Date. |
|---|---|
| **II. The BONY Objection [Case No. 17-3283, ECF No. 4210]** ||
| **Objection** | **Response** |
| The Bank of New York Mellon, as trustee for the Existing Securities (the "Trustee"), asserts that:<br><br>(a) the Disclosure Statement should include information addressing the factual circumstances and legal basis for paying the Consummation Costs to selected institutional investors only, from the holders' shared collateral, without reference to actual fees and expenses incurred, and to the exclusion of holders of Claims in the same Class;<br><br>(b) current disclosure that the Consummation Costs are administrative expenses in consideration for negotiating the Amended PSA are insufficient, and the Disclosure Statement should explain how such costs qualify under Bankruptcy Code section 503;<br><br>(c) the Disclosure Statement should explain the methodology by which COFINA arrived at the aggregate payment amount of the Consummation Costs, including an analysis of the compensation and expenses sought by each Consummation Cost Party; and<br><br>(d) the Disclosure Statement does not explain the legal basis for the Consummation Cost Parties to receive a materially greater recovery under the Plan on account of their pre-petition bond Claims than other holders of bond Claims in the same Class, in violation of Bankruptcy Code section 1123(a)(4). The Disclosure Statement also does not explain why holders of Claims not entitled to the Consummation Costs should vote to accept the Plan, which treats their Claims less favorably than the bond Claims of Consummation Cost Parties in the same Class. | (a) Throughout the Disclosure Statement, the Debtor describes the factual basis for the payment of the Consummation Costs—the settlement negotiations, the entry into the Plan Support Agreement and the Amended PSA, the exorbitant challenges attendant thereto, and the elimination of multi-party, multi-faceted litigation that would likely ensue for years if the Plan were not confirmed. Notwithstanding, the Disclosure Statement has been modified to provide more information surrounding the Consummation Costs. *See* Disclosure Statement VI.C.3. Additionally, the BONY Objection simply assumes that the Consummation Costs are being paid from funds that constitute the bondholders' "shared collateral," but this is inaccurate. For instance, the funds used to pay the Consummation Costs could be the Commonwealth's property (there is extensive litigation surrounding this very issue) or the funds could be unencumbered property of COFINA in the event the bondholders' purported security interest in such funds is determined to be unperfected and/or avoidable. Accordingly, there is no guarantee that the funds being used to pay the Consummation Costs would have been distributed to bondholders collectively in the absence of the Consummation Cost provision.<br><br>(b) The Consummation Costs qualify under section 503(b)(1)(A) as actual, necessary costs of preserving COFINA's property. *See* Plan § 1.6(g). Pursuant to the Agreement in Principle resolving the Commonwealth-COFINA Dispute, *see* Case No. 17-AP-257, ECF No. 486-1 (the "Agreement in Principle"), the settlement was conditioned on a sufficient number of COFINA bondholders pledging to support COFINA's Plan. *See* Agreement in Principle at 4. To satisfy this condition, the Debtor endeavored, and succeeded, to negotiate the Amended PSA with its creditors. Such efforts cost time and money, and to guarantee that a requisite number of bondholders would enter into the Amended |

2

|  | PSA, the Debtor agreed, among other things, to reimburse their transaction costs, with the Consummation Costs used as a proxy. *See* Disclosure Statement § VI.C.3. Without the Amended PSA, the Debtor would have risked unraveling the Agreement in Principle, ultimately keeping the Debtor embroiled in very costly litigation. <br><br> (c) During lengthy and complex negotiations among the Government Parties, the PSA Creditors and Bonistas del Patio, Inc. ("Bonistas"), supervised by three federal judges acting as Court-appointed mediators, the Consummation Cost Parties agreed to various conditions and covenants set forth in the Amended PSA, including a pledge to support the Plan of Adjustment, the imposition of restrictions on the transfer of their bonds, and a waiver of their right to seek reimbursement of expenses through other means through substantial contribution claims. As consideration for their efforts in assisting in the formulation of the Plan of Adjustment that has garnered significant creditor support, continuing to assist in the finalization of definitive agreements and ancillary documents, and the costs incurred in those and other efforts (including the expenses of defending COFINA's property interests for which the PSA Creditors asserted a right to seek substantial contribution claims), the Oversight Board determined that the Consummation Cost Parties should be paid the Consummation Costs. <br><br> (d) The Trustee misreads the Plan. It is clear that all creditors within a Class, and even across all bondholder Classes, are receiving the same treatment. The payment of Consummation Costs is separate and apart from any Bond Claim distribution pursuant to the Plan. The Debtor will provide ample legal justification that the Plan satisfies Bankruptcy Code section 1123(a)(4) in its brief in support of confirmation of the Plan. Addressing Plan confirmation issues in connection with Disclosure Statement objections is inappropriate. |
|---|---|
| **III. The Mangiaracina Objection [Case No. 17-3283, ECF No. 4215]** ||
| **Objection** | **Response** |
| Stephen T. Mangiaracina, Esq. ("Mangiaracina"), on behalf of himself and MaryAnn V. Mangiaracina, Kim A. Schidrich, and Steven Schidrich, as retail holders of "First Subordinate" Existing Securities, asserts that: <br><br> (a) the Disclosure Statement and the Court's scheduling order to file objections lack due process, as retail COFINA junior bondholders were not given equal | (a) The Disclosure Statement does not deny any retail bondholders due process. Importantly, retail bondholders were represented throughout the process by Bonistas, a signatory to the Amended PSA. In doing so, Bonistas looked after the interests of bondholders and was successful negotiating for increased distributions for all "on island" bondholders. Additionally, the Disclosure Statement is similar to those used in recent, large municipal bankruptcies and |

3

103689405v5

| | |
|---|---|
| representation in negotiating the Plan, and, based on cost/benefit considerations, retail bondholders cannot use attorneys. Consequently, these bondholders will not object in large numbers nor will they raise the appropriate funds to meaningfully object. Further, the Court's failure to rule on whether COFINA was validly formed pursuant to the Commonwealth Constitution denies retail bondholders due process; and<br><br>(b) the filing of COFINA for Title III constituted bankruptcy fraud and was the birth date of a criminal enterprise to get control over COFINA for the purpose of wrongfully taking the property rights of COFINA bondholders. The Court should refer the matter to the Department of Justice to be investigated. The Court itself may be aiding and abetting a criminal enterprise by its aggressive commitment to settle and avoid making a decision. Federal agents have to conduct a forensic accounting on the history of the financial solvency of COFINA, why COFINA was put into Title III, how the Oversight Board got to represent both sides and pay their legal fees, how the settlement team was put together, what went into the settlement negotiations and how the Plan and Disclosure Statement were concocted. | contains substantially similar types of information. *See, e.g., In re City of Detroit*, Case No. 13-53846, ECF No. 4391 (Bankr. E.D. Mich. May 5, 2014) (disclosure statement totaling 197 pages excluding exhibits); *In re Jefferson County*, Case No. 11-5736-TBB, ECF No. 1977 (Bankr. N.D. Ala. Aug. 8, 2013) (disclosure statement totaling 251 pages excluding exhibits). Moreover, the *Solicitation Statement*, recently issued in connection with the Qualifying Modification of the Government Development Bank for Puerto Rico [Case No. 18-1561, ECF No. 155 ¶ 2.a], contains substantially similar information as the Debtor's Disclosure Statement and is also of significant length (338 pages including exhibits). The Disclosure Statement must be comprehensive and sufficiently detailed to provide adequate information for a creditor to make an informed vote on the Plan and satisfy Bankruptcy Code section 1125.<br><br>(b) This aspect of the Mangiaracina Objection does not concern the adequacy of the information in the Disclosure Statement or whether the Disclosure Statement satisfies Bankruptcy Code section 1125. Furthermore, the objection is procedurally improper. The affirmative relief Mangiaracina seeks with respect to a Court determination of the existence of bankruptcy fraud or other criminality or a Court order referring such matters to the Department of Justice to initiate an investigation is inappropriate in the context of an objection to the Disclosure Statement. *See, e.g.,* Bankruptcy Rule 7001. |

**IV. The Dvores Objection [Case No. 17-3283, ECF No. 4244]**

| **Objection** | **Response** |
|---|---|
| Lawrence B. Dvores, as the owner of certain uninsured "First Subordinate" Existing Securities, objects to the Disclosure Statement on similar grounds as Mangiaracina. | See the Debtor's response to the Mangiaracina Objection above. |

**V. The Credit Unions Objection [Case No. 17-3283, ECF No. 4225]**

| **Objection** | **Response** |
|---|---|
| Cooperativa de Ahorro y Crédito de Rincón, Cooperativa de Ahorro y Crédito Dr. Manuel Zeno Gandía, Cooperativa de Ahorro y Crédito del Valenciano and Cooperativa de Ahorro y Crédito de Juana Díaz (the "Credit Unions") assert that: | (a) The revised Disclosure Statement contains the requested information. *See* Disclosure Statement VI.D.2.<br><br>(b) The revised Disclosure Statement contains this information. *See* Disclosure Statement IV.C.3. |

4

| | |
|---|---|
| (a) the Disclosure Statement lacks information as to the estimated amounts of Claims in each Class as well as the estimated recoveries for each Class; and<br><br>(b) the Disclosure Statement does not identify the existence of *Cooperativa de Ahorro y Crédito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Proc. No. 18-00028, which remains pending before the Court; the description of this adversary proceeding is necessary for other creditors and parties in interest to be informed on the risks assumed while voting for the Plan. | |