RECEIVED & FILED

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

CLERK'S OFFICE
U.S. DISTRICT COURT
SAN JUAN

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | PROMESA[1]<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS |

*"Truth is not what you want it to be; it is what it is.*
*And you must bend to its power or live a lie."*
- Miyamoto Musashi, Japanese samurai

## MOTION IN RECONSIDERATION OF JUDGMENT (Doc. 3952) ARISING FROM CORREPONDENCE RECEIVED BY THE COURT ON AUGUST 27, 2018, AND OTHER RELIEFS

To the Honorable Judge Laura Taylor Swain:

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780- LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Javier Mandry-Mercado, pro-se, ("objector" or "the litigant") hereby files the opposition to oppose the facts of the report. As party to the contract to which the attorneys are representing me by means of coercion, I request that it be voided and a new one should be ordered; Not requiring them to list the parties has allowed the attorneys to manipulate the truth regarding the parties they represent. The attorneys should be sanctioned accordingly commensurate to the severity of their actions. Additionally, I will explain a real issue, to which I have standing which entails USDA funds, and why I am requesting a referral to the US DOJ an investigation as well as a class-certification pursuant to FRCP Rule 23, which would resolve certain key-issues of this case. This motion is divided into two parts: the first part involves the joint-report, the request for sanctions and reconsideration of earlier judgment on the same; The second part is presented, both as a proof of my allegation that the government is acting to further the obstruction of justice and to prevent discovery of that which is concealed, and as an independent request for class certification for a due process violation

## **PART ONE: JOINT-STATUS REPORT**
### 1 – Introduction and Procedural History

1. On August 27, 2018, this objector emailed directly to this court, regarding an issue, which in summary, objects to the fact that Ms., Vicens, Esq. insists in proceeding to engage in contracts of stipulation before this court and obtaining a relief, without my prior consent. In the email, I also included the following statement: "**I also have a claim against the PR Highway Administration for their part in placing a forced condemnation case on automatic stay, for purposes of benefitting of cash flow, in violation of the Takings Clause.**" [The latter part what I now recognize is what contained my developing allegation, which was the central point of the judicial notice. Although is no less important, I will explain why the second part involves the administration of the debtor's estate.]

2. As per Docket 3893, This Court issued the following order : "The Court hereby directs the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and Ms. María E. Vicens Rivera to provide a joint status report regarding the Civil Action, including a summary of the relief sought, the parties involved, and the procedural status of the Civil Action.

3. In compliance with the previously mentioned order, the AAFAF and Ms. Vicens filed a report (Docket 3948) which I will demonstrate does not only misrepresents the parties but evades to

comply with the order.

4. On September 20, 2018, this Court issued summary judgment denying all reliefs requested. (Docket 3952)

5. On September 24, 2018, I underwent back surgery. Any prior answer would have been physically impossible. This, and a handicap which makes typing extremely onerous, is offered to explain the tardiness of this rehearing motion.

6. My objective for this motion is as follows:

   A. Demonstrate how three attorneys joined forces to misrepresent the material facts about the state case ('the forced condemnation email issue'), notwithstanding the order required the truth;

   B. Demonstrate how three attorneys violated ethical conduct by improper usage of logical methods of confusion as an attack of reputation (ad hominem) of this litigant, and as a diversion of important issues. The tactic itself is meant as a means to obstruct justice by means of improper influence (coercion) of the rational decision-making process of a federal judge.

   C. How the attorneys used coercion to cause the justice system to fail, and even led the Court to deny a hypothetical or prospective adversary complaint

   D. Finally, I will provide my opinion, and demonstrate-by-example how this coercion technique is being used in a similar fashion as a means for the government to conceal the improper sourcing of funds, and to explain why I believe the Promesa Act is a farce because it is based on a lie to Congress, a lie which includes various occasions when the government has ignored the mandate of the People of Puerto Rico, the most important which includes an amendment to the Constitution of PR to consider the legislative body as unicameral. The importance of this motion is that it doubles as a petition to the United States Department of Justice to understand that the Commonwealth of PR has been violating Public Law 600, or the United States has been sponsoring an antidemocratic government.

## II – Reconsideration of Judgement

7. The attorneys concocted a contract of stipulation where the attorneys did not describe the parties they represent. I will demonstrate by that which they answered that they manipulated the truth by means of coercion and material misrepresentation of material facts, actions which should be considered equal to intentionally lying to a federal judge while acting as an officer of the court. (See Appendix . This is an official document produced by the PR Highway Authority, as part of the requirements to exercise its eminent domain power)

8. The attorneys did not provide a joint report, but rather separate answers that can be demonstrated are conflictive with respects to key matters. The separate, but together, is suggested was part of the regarding the material facts of the state case.

9. The joint-report does not reveal that one of the parties that Ms. Vicens purports to represent, Estrella Aparicio-Vazquez, passed away on August 28, 2018. (see appendix)

## III – Answer and Opposition to Joint-report (Facts)

10. I am including this section, in addition to the discussion [next section] to answer and address the individual items; This is to demonstrate the manipulation of facts and the actual intent. This is suggested to be relevant to allow this court to properly assess the nuances and the aggravating factors, which in turn would enable this Court to properly gauge the ethical violations, along with the mitigating factors.

    A. **AAFAF**

¶1- It is denied that "Exhibit A" represents all the parties because the case that she is referencing, KEF2011-0041, is one that is substantially different from case KEF2011-0044), state forced condemnation claim which was subjected to an automatic stay and its relief. After all, if the effects of the automatic stay placed the case as a whole 'on hold', not just one of the groups of people that comprise the case. I claim that this is a concealment of a material fact of the case. Ms. Pierantoni, Esq., in page three alludes to 'other parties of interest'. In doing so, she misrepresents

the fact that they are indispensable parties to the stipulation, part of the alleged misfeasance intended to mislead the court. [This involves the harmless argument, and why I claim that it is not harmless.]

¶2- Ms. Pierantoni, in her report, point (i), admitted indirectly to the fact that the case involves the power of eminent domain of the state by stating that the state deposited the just compensation. It is denied that the withdrawal of the remaining deposit terminates the "estate's" participation at the state court case, or for the other co-owners are litigating the just compensation amount.

¶3- It is denied that 'Sucesion Pastor Mandry' is an estate. This misrepresents the fact that Pastor Mandry (my grandfather) and his estate (passed away circa 1984) would have not been adjudicated, and it has. The art of confusion is suggested to have been intentionally added to obtain an erroneous judgment. After three generations since Pastor Mandry, the successors' estates have been redistributed per adjudication, and estates continue to "dissolve" into the co-ownership community. The fact that it bears the name of an estate does not make it so;

¶4 As per the report, point (ii), this objector agrees that the statement is factually correct.

¶5- As per the report, point (iii), Denied in the sense that Ms. Pierantoni attempts to confuse by argument that: 1) I am allegedly restating or possibly attempting to relitigate anything that was previously part of any agreement; 2) That AAFAF did not consult with this objector because Ms. Vicens was not required to do so 'because [Ms. Vicens] represented the interests of all the remaining members of the Estate" in the Lift of Automatic Stay, appearing to allude to a determination that this court did not issue regarding the ethical considerations, not because this Court the intentional omission the action of Ms. Vicens in the Lift of automatic stay correct, but because this court considered that the error was harmless.]; 3) That the Stipulation is consistent with the state court's determination by allowing the Estate to withdraw the remaining funds… that

"he is not obliged to withdraw his part of the of the remaining deposit". 4) [page 5] That this objector has filed similar motions that are unfounded, and that the correspondence is similarly unfounded with no basis in law or fact; 5) That this Objector is not entitled to any relief by this Title III Court; 6) that "Mr. Mandry did not issue and independent lift stay notice". Federal Law requires one to be issued per automatic relief granted. See: Local Rule 9013-5(a); 7) "Any other allegation that he would have with regards to the Remaining Deposit and the Civil Action should be brought before the Commonwealth court." This objector identifies it as *ad hominem* strategy used in multiple occasions for purposes attacking this objector's reputation, often used to provide a 'nudge' as to prevent that this Court would resolve the issue in its merits. The attorney claims that I have no allegation to make in this Court. She already knows that I have an allegation of conspiracy involving the government.

B. Atty. Vicens

¶1- Denied as stated. It is true that this litigant is a pro se. However, it is also true that Atty. Vicens has a Federal Bar license. Although I may err in the theory of law, I would not intentionally conceal a material fact to the court. If I were be an attorney, it would subject me to disbarment, so I would respect the ethics of my profession. Regarding the understanding that this Objector fails to understand the automatic stay, that is a conclusion that the Court would make, especially when it entails a novel question of law where the "state" is the debtor and is subject to application of Fifth and Fourteenth Amendments of the Constitution of the United States.

¶2 - Objector recognizes item two of the answer as the 'so what' argument. Interpreting her argument, claims that while she did not represent me in the Lift of Automatic stay, and that she recognized me as indispensable party (in fine print and as part of a footnote as per Docket 305, et seq.), that this Court would be considered as an ethical practice, that all attorneys should follow

Ms. Vicens's example by not contacting an indispensable party on relief of automatic stay, only because they do not own a majority share. It will be demonstrated that such an argument would be clearly erroneous, as the Bankruptcy Code mandates otherwise.

¶3 - Denied that Article 332 of the PR Civil Code has any relevancy to state court proceedings in general. Referenced Article 332 only relates the administration or management of the community of co-ownership. They are using a defective interpretation of law to appear to make it also valid in court. Such an interpretation would also be erroneous per the due process requirement which is required for property-type cases.

¶4- Admitted that she does not owe me a fiduciary duty. However, the damages I claim arise from their misfeasance does not violate the duty of the attorney as an officer of the court, or that her omissions that the duty that she owes the court can cause a disturbance in the procedure of the court.

¶5 - Again, it is Denied that 'Sucesion Pastor Mandry' is an estate, but rather a co-ownership community. The 21.25% to which Ms. Vicens is making a reference of the hereditary rights of my great-grandmother's percentage. This is represented in the

### IV - Discussion

11. The email that I sent directly to this Court was my attempt to inform of a multi-faceted problem; Even though the primary reason for sending it involves a persecution of my rights as a litigant, I will not focus on this at this time, in this main case, but on how it affects the rights of others. Here, I will attempt to explain how the coercive tactics used by the attorneys are indicative of the norm, and how I believe and will demonstrate an example of how the government of the People of Puerto Rico is interfering with the proper administration of the Promesa Act, or how certain ambiguities of the law are being used are being used as an excuse to cause numerous as-applied constitutional deprivations. The stipulation has a fundamental problem: that the attorneys are not listing the parties they represent. The attorneys presented indirectly a 'so what argument', in the meaning that to not have included all the parties of the case did not make a difference. If this

were so, they would not have presented intentionally deceitful evidence which does not apply to the state eminent domain case.

12. The 'stunt' (as I classify the joint-report) created a strong presumption that the *pro se* litigant is wrong, in fact, law or both. My hope is to be able to convey how the intentional acts of error are being used as instruments to misguide the perception of the truth, and thus lead to a very different conclusion to that of what would be considered a material fact. As a whole, the joint-report did not answer directly any order. Viewed from the side of the truth, which I will answer pursuant to FRCP 9(b) and includes the previous section, I will demonstrate how each statement created a false conclusion and will do so by providing the evidence that the attorneys <u>should have provided, but did not</u>.

13. Appendix 1 is an official report produced by the PR Highway Authority, which includes the individual lots and the individual parties (persons and/or corporations) involved in this complex case. In the joint-report, the attorneys annexed a document that references case KEF2011-0241, case which only entailed the Sucesion Pastor Mandry and its members. The case which was subjected to the relief was KEF2011-0244, which required that at least five "sucesiones" to be joined. Appendix 2 is an official notice sent by the PR Court System regarding the case KEF2011-0244. This document lists the attorneys and the pro-se litigants, not the parties represented by counsel. This is to demonstrate how the perception can be manipulated by providing false and/or misleading evidence. Appendix 3 is a motion requesting withdrawal of funds. The notification section of this appendix motion shows that all the parties were notified. This demonstrates that they know who were the parties that should have been notified in the instant case, but the attorney decided were not indispensable.

14. Neither attorney explained that 'Sucesion Pastor Mandry' is a misnomer, or how Puerto Rican law does not consider it an estate, but rather a Pro indiviso ownership (otherwise known as common property) which occurs where each of two or more proprietors has an absolute, restricted right (Puerto Rican law differs to that of Common Law in this respects) to a fractional share of a unit of property. However, the document they included as appendix for case kEF2011-0241 does include the Estate of Salvador Mandry, my late father.

15. The attorneys did not explain how the contract of stipulation complied with Restatement of Contracts (Second) and per the requirement pursuant to Puerto Rican law to include those parties

that were being represented in the contract. Because neither attorney is a party to the forced condemnation claim, then it would be expected for them to include the parties they represent. For one person to claim that he or she was not represented, or notified, is subject to vacation of judgment and annulment of the contract of stipulation.

16.     The forced condemnation state case that was subjected to the automatic stay, I was a defendant pursuant to PR Rule of Procedure 16.1. Regardless, I suggest that this should be resolved with federal law. PR Bank. Ct. Local Rule 9013-5(a) requires that Ms. Vicens, not the government, to have notified me. This was not optional, but a requirement. I included this allegation for the inverse condemnation issue, docket 822, page two. Ms. Vicens knew and ignored, making her action intentionally reckless. They know that Courts frown upon having to vacate judgments, making it more difficult for a pro se who is attempting to plead a legal theory.

17.     Early on the instant case, Ms. Vicens in Docket 305, and used tactics to appear as if she represented all co-owners, is commonly known as Sucesion Pastor Mandry[2]. The same tactics are present here. It was not until I appeared in this case that I made it clear that she did not represent me. Although it is not an entity that can represent itself as one, it has be is categorically distinct to an estate but the 'sucesion' may contain an estate that has not been adjudicated. Such is the case in our sucesion.) What shocks the conscience is not just that Ms. Vicens used the tactic once, but that she used it a second time. I claim that neither her, nor the other two attorneys, have any respect for this Court nor for their federal bar license. I claim coercion is used in the answer as a tool of extrinsic fraud and the logical fallacies were the instruments used to cause an interruption of the decision-making process by means of 'undue influence' of the rational decision-making process of a Federal Title III Judge.

18.     I suggest that the answer satisfied the presumption, but not truth because it is creating a façade or backdrop to manipulate the reasoning process; The result is therefore <u>worst than a lie</u> because in the joint-report the attorney were forced the court to issue judgment based false reliance on bluntly false and/or defective information, but relying on the low likelihood that the pro se litigant would be able to produce a motion that would prevail on both merits and mootness. The

---

[2] Even as if 'sucesion' would translate to *estate*, the term is a misnomer because there is no estate to adjudicate. Even though the name itself is unimportant, *sucesores de Pastor Mandry*, which translates to English as *Successors of Pastor Mandry*, would most precisely define the legal status as co-ownership community, where no matter how large the percentage a particular co-owner may possess, they ownership *pro indiviso* share of the property.

answer also confused this litigant because the joint-report "twisted the logic" of the reader, making the reader forget what the original problem was. I claim that what the attorneys did is an epitome of what would be considered unethical because they are knowingly providing misleading data with the express intent which was to obtain the desired result from the judge.

19. For a pro se, it is more difficult to prove actions of this caliber because, not only do you have to understand the law, but you have to learn how to avoid attacks of credibility. *Faretta v. California* and its progeny requires, *sub silentio*, that courts would qualify the litigant. The opposition should not take advantage of this to such a degree where the attorneys knowingly mislead the judge. The ethical question is whether attorneys are forced to act properly to a pro se by providing false or misleading information. I declare to have ample experience in all the techniques used against me; As someone who has studied Faretta and its progeny, no case has addressed how the attorneys can maliciously move the Court to prematurely consider the pro se litigant as recalcitrant or wrong, only to prevent that the Court would realize that the pro se is attempting to inform the court of fraud of process, abuse of a privilege as officer of the court and for purposes of extrinsic fraud and obstruction of justice; Prejudgment occurs when the opposing party manages to be considered the pro se litigant as disruptive, and that he or she does not know how to identify and plead substantive law becomes a hindrance of the judicial process, when the attorney moves the Court to apply the Faretta presumptions to the oppositions' advantage. Per *Scola v. Boat Frances R., Inc.*, 546 F.2d 459 (1st Cir., 1976), United States v. Throckmorton, 1878, 98 U.S. 61, 66, 25 L.Ed. 93."The distinguishing characteristic of extrinsic fraud is that, by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court." From this objector's point of view, what the attorneys did is tantamount to extrinsic fraud because I they know have an allegation regarding the automatic stays against third parties;

20. An officer of the court[3] is *any person who has an obligation to promote justice and effective operation of the judicial system, including judges, the attorneys who appear in court, bailiffs, clerks and other personnel. As officers of the court lawyers have an absolute ethical duty to tell judges the truth, including avoiding dishonesty or evasion about reasons the attorney or his/her*

---

[3] https://dictionary.law.com/Default.aspx?selected=1385

*client is not appearing, the location of documents and other matters related to conduct of the courts*. There is no doubt that the three attorneys who were involved in the joint-status report are officers of the court. However, even though this objector is not considered an officer of the court, it is this litigant's prerogative to act as such, especially to denounce when the other attorneys failed in their duty to the truth and duty to the ethics of the profession.

21. The difference between coercion and persuasion is that coercion inhibits the person's liberality (freedom) to think properly[4], while persuasion uses only words. In this case, to not think properly means that the judge was not afforded the facts but rather a constructive deception to force a defective and clearly erroneous decision. I claim this because the reading causes a logical error using logical fallacies. The degree to which it has affected this Court outside of this matter is unknown, but what I can identify is the techniques the attorneys used as similar to those that Adolf Hitler used; This is highly concerning to this objector who believes in the judicial system which is based on an exposition of facts, a prayer for relief, and for a judge to exercise its discretion. In analyzing the joint-report in minute detail, it was designed to confuse. A straight answer to this Court's order would have been admission to guilt. So, to prevent this they proceeded to do what I clam they do best: concealing and misrepresenting. To execute a plan to attack this process is to act contrary to that which should be considered an officer of this court and **should not be tolerated**.

22. I claim that intentional misjoinder is not only the means to an end, which is suggested was to shift the attention to a different issue than the one that they know I want to focus on, mater which I will discuss in the next section. Even as the answer lead this court to comply with the preponderance of the evidence ("more likely than not") or clear and convincing evidence, this Court asked specific questions which not only remained unanswered, misleading this Court create presumptions which were false when the truth was that they were missing more than ten people.

23. In conclusion, my experience dealing with this government is contrary to this Honorable Court's presumption that the attorneys are honorable and acting pursuant to the standards of ethics; The presumption of correctness of the stipulation agreement is based on the ethics of the legal professionals; However, the manipulation or abuse of the presumption that this Court is a direct

---

[4] American Heritage Dictionary defines **coercion** as: 1. **To force to act or think in a certain manner**; 2. To dominate, restrain, or control by force; 3. To bring about by force. [In my opinion, the third definition 'by force' means that the person engaging in coercion sets forth a mechanism to

reflection of their bad faith. I claim that their allegedly monumental stunt shifted the burden of proof by misleading this court to believe:

> 1) **That I was the only missing party**, [missing at least a dozen people] by improper use of inclusion and exclusion to confuse the perception by leading to a misrepresentation or the truth;
>
> 2) **That I was attempting to relitigate the issues** [I will demonstrate how stating as such is the manner how in doing so, they are acting as my legal representation because they are incorrectly misleading the court about what allegation I <u>could have</u>, as to mean that it is ], or that the error is harmless.
>
> 3) **Intentional error** : That the Sucesion Pastor Mandry is an estate, when the truth is that it is a co-ownership community, not stating the fact that the only estate that has not been adjudicated is the estate of Salvador Mandry. Probate case JJV2011-1103 is still pending resolution in the Ponce Tribunal of First Instance.

## The Harmless Argument / Obstruction of Justice

24. The attorneys claimed indirectly in the joint-report that there would be no harm done by not notifying this objector. Such a statement cannot represent my stance, but they do so in disregard to the ethics. Here, they moved the Court to pre-judge based on evidence they knowingly know to be false or misleading. The energy expended in creating a deceitful joint-report, and how they handled the facts lead this litigant to the belief that the Commonwealth of Puerto Rico used as a method of diversion of attention from the truly important issue which I started to plead in the email sent to this Court: the issue with respects to the automatic stays being applied to forced condemnation claims. I claim obstruction of justice, mainly because I claim that the attorneys have actively moved this Court to a faulty interpretation of the Promesa Act, the Bankruptcy Code, and the Constitution of the USA; From experience, the amount of energy used to confuse is commensurate to that which wants to be achieved. From studying the thought-process yielded from a reading of the joint-report, I realized that the report included a defective device intended to efface any trace of the initial problem.

25. Firstly, the automatic stay does not have an intention for constitutional rights to be violated.

, *In re*, 994 F.2d 42 (C.A.1 (Mass.), 1993), citing *Martin-Trigona v. Champion Fed. Sav. & Loan Assoc.*, 892 F.2d 575, 577 (7th Cir.1989) "*[The purpose of the automatic stay] ...is to protect the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had the opportunity to marshal the estate's assets and distribute them equitably among the creditors.*" It would seem ludicrous to consider the People's lawsuits against the state involving property, damages, etcetera, as a violation of property and liberty rights. Any other interpretation would need to comply with the nexus test and be considered the express intent of Congress in the Promesa Act.

26. For an automatic stay to be relieved, generally a party would not present an objection to a relief of automatic stay, especially when the stay could be considered a nuisance which caused a delay to withdrawal of funds; [The reason I claim it is a nuisance is important to this section] However, nothing prevents a third-party from presenting valid claim. People in this Promesa case have accepted the stay as true and correct, without performing a Constitutional Law inquiry as to whether the legislation intended for this to happen. This is suggested to be a novel question of law because the automatic stay was intended for the happenstance where the debtor is a corporate or personal entity, not considering the variant where it is a state actor or its implications.

27. As part of the unethical conduct was what they were supporting a framework that the attorneys created, as to the application of the automatic stay to forced condemnation state claims. Not only do I claim that the Commonwealth of PR failed to properly defend the citizens' property rights, but the automatic stay has an expiration date which has not been honored (applicable to creditors' claims as well). *Why has the state not acted? Does the state or its officials have a duty towards the people? This, especially when all the automatic stay should have expired, in the meaning that the stay loses its effect.* See: In re Korgan, 52 B.R. 557 (Bankr.D.Or.1985) (automatic stay expired upon confirmation of Chapter 11 plan); McKinney v. Waterman S.S. Corp., 925 F.2d 1 (1st Cir., 1990)

28. It is suggested that a third-parties (here citizens of Puerto Rico) cannot be considered creditors of the debt being administered. Per *In re: Skorich*, 482 F.3d 21 (1st Cir., 2007), the First Circuit Court clarified the Bankruptcy Code and some technical definitions: "*A "creditor" is any entity that has a claim against the debtor that arose before the bankruptcy petition was filed, 11 U.S.C. § 101(10);* "[a] *debt means liability on a claim," id. § 101(12) and a "claim" is a: (A)*

*right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, \matured, unmatured, disputed, undisputed, secured, or unsecured Id. § 101(5)."*

29. The issue can be further summarized as follows: *Were the Promesa Act and the automatic stay provision of the Bankruptcy code intended to be applied to the unique case where the state is a debtor and the affected party and its finances bears no relevance with the actual debt? Is it a 'design' flaw of the Promesa Act that causes an as applied constitutional deprivation as a result of the exercise of the state's eminent domain power, benefiting from moneys deposited in state court for purposes of just compensation considered a due process violation for depriving the property owner of its constitutional right to be justly compensated? Should have the United States Congress foreseen that the Commonwealth of Puerto Rico to have misused the automatic stay provision (as state action) of the Bankruptcy Code to benefit from the stay and reap the benefits of the moneys that were prevented from being withdrawn, allowing the state to 'steal from its own citizens'?*

30. If I am correct in my analysis that the improper use of automatic stays has been used as an improper use of funding which would mean that the Commonwealth of Puerto Rico is **diverting funds without the knowledge of the Fiscal Board,** or negligently misrepresenting the presumed (legality) sourcing of funds, as that which was approved in the fiscal plan. Even as if the Fiscal Board would not care whether the People of PR are being unjustly affected to meet its agreements, it should matter to this Court, who in turn should not allow that a constitutional debt be accrued, allowing the state to conceal behind the false light provided behind the veil of transparency. Arguendo, I can only begin to estimate the number of cases and the total dollar amount of forced condemnation cases that were subjected to the automatic stay. *Who benefitted from the interest charges? Were the bank funds diverted to be used for other purposes during that time?* Should the general public be forced to silence and not denounce this violation of property? Even if I am not correct that the misfeasance was intentional, the People of Puerto Rico have a claim against the United States of America for violation of the Takings Clause. The Commonwealth of PR relied on the ambiguity of the Promesa Act. The Takings Clause is a Constitutional mandate; The Promesa Act does not preempt the US Constitution to allow for a violation of property rights.

31. Because the Promesa Act does not recognize state action from private action, nor does it intend for the federal legislation to interfere with the US Constitution, then such interference should be deemed as prohibited. See: Webb's Fabulous Pharms., Inc. v. Beckwith, 449 U.S. 155, 164 (1980) ("a State, by *ipse dixit*, may not transform private property into public property without compensation.")

32. I claim that the stay violated the 14th and 5th amendment rights, mainly because there was no bankruptcy purpose (no direct link that would affect the debtor for such a stay, and because certain the kinds of debts that represent the cases of citizens against the state) any interference should be classified as an arising from either the First or Fourteenth Amendment. I claim that the Commonwealth of PR rushed to take advantage of this, causing a constitutional violation of property rights. (emphasis supplied) Per In Re Residential Capital, LLC) (2nd Cir., 2013) (The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate.) Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property.

33. The Bankruptcy Code does not specify whose responsibility it lies to defend the Puerto Rican people from undue deprivation property and/or liberty rights. This Court was either incorrectly led to believe that the government would defend the People of Puerto Rico, or it was misled into preventing that the matter be discussed. However, it was a foreseeable fact that Puerto Rico was a state per the Bankruptcy Code. It is suggested that the automatic stay does not apply to third-parties because in doing so, the automatic nature of the 'automatic stay' violates due process.

## PART TWO: OTHER PROMESA-RELATED RULE 23 ALLEGATIONS

34. I suggest that this section is important because it has been the main problem behind this case, that the government has a primary objective to conceal information and money. Per my analysis, they act by analyzing the ambiguities of laws and actively "filling the gaps" with their own interpretation of laws or behind presumptions of good faith; I sustain that it has been a mistake to rely on much of what has been provided to this court and the fiscal board. The People of Puerto Rico have been urging transparency. Although the Fiscal Board not that it is against transparency, but that it has been unduly relying on the information/data that the Commonwealth of PR has been

providing. My main goal in this is to demonstrate why and how the lack transparency is affecting this Court's orders has been led to approve fiscal plans, in false reliance that the fiscal status is properly depicted in the budget of the Commonwealth of Puerto Rico. I contend that one of the problems Puerto Ricans face is the generalized disrespect of constitutional rights by both the state courts and its legislative bodies.

### Capacity of the Commonwealth of PR: Unicameral Legislative Body

35. On July 5, 2005, the People of Puerto Rico voted on a referendum[5] to change the legislative assembly of the Commonwealth of Puerto Rico from a bicameral body to a single or unicameral system. This poses a problem to the capacity of the Commonwealth of PR defective government lies in a fact that is common knowledge to all attorneys in this court. See Appendix 4A

36. In the manner that it was written, the law was a mandate to the legislative body. The Supreme Court of Puerto Rico, per *Irritugui* 2007 TSPR 133, declared[6] that the legislation that led to the referendum includes a mandate to the legislative body which is inofficious. Furthermore, it resolved that it lacked jurisdiction to order the legislative assembly to initiate an amendment to the Constitution of the Commonwealth of Puerto Rico. Nevertheless, the People of Puerto Rico voted for an unicameral legislative body, whose main purpose was to reduce expenses, is issue that is relevant to this case. Despite the latter, the Commonwealth of Puerto Rico has not requested any court to invalidate the referendum or its mandate.

37. Because of the current state of affairs, the government will never allow the People of Puerto Rico to amend its Constitution of the Commonwealth of PR; The People voted for unicameralism and the government decided that it was not going to comply. As an American Citizen whose First and Fourteenth Amendments must be respected, I bring this to the attention because this matter affects this case and all prior agreements that may be rendered null and void because the government of the People of Puerto Rico does not comply with the Due Process Amendment because the government is refusing a clear mandate of the People. This also presents a First Amendment violation because it is limiting the rights of the People to decide the form of its

---

[5] https://en.wikipedia.org/wiki/Puerto_Rican_unicameralism_referendum,_2005
[6] "En vista de ello, resolvemos que el mandato allí establecido resulta inoficioso y, por ende, no se puede exigir judicialmente."

government.

### USDA SNAP Funds and how the Commonwealth of PR mismanages benefits

38. This sub-section is not directly related to the misfeasance that is alleged relates to the joint-report, but rather how yet another variant of misfeasance has been affecting this Court's proper functioning. Like the automatic stay issue, this includes a due process violation. However, this also includes a possible qi tam because it involves a continuous act of manipulation of federal funds. Per my analysis using a simple mathematical model, the agency of the Commonwealth of PR has been foreseeably limiting the availability of its funds to its beneficiaries, for what I believe is to obtain an unjust enrichment of third-parties or the government itself, to compensate for non-approved spending.

39. The Department of Children and Families of Puerto Rico, an agency of the Commonwealth of Puerto Rico, ( herein forth, "the agency") hosts the local counterpart of the SNAP Program known as "PAN" (Nutritional Assistance Program.).

40. Since graduating from Civil Engineering on 2016, this litigant (Javier Mandry-Mercado) procured and was granted welfare benefits.

41. Per their organic law of said agency, the Commonwealth of Puerto Rico has standing to represent said agency in these proceedings.

42. On an unknown date, the agency commenced to host a farmers' market program where local farmers were charged an unknown fee for participation at the event and usage of the proprietary card system belonging to Banco Popular de PR, Inc. and/or its subsidiaries.

43. The funds belonging to the usda are believed to be deposited in the Banco Popular of Puerto Rico. It is unknown whether the account is an interest-bearing account.

44. The beneficiary of the program is provided a card. Every month, the agency deposits xx amount in funds for "food", xx amount for "cash" and "xx" amount for in agency hosted farmers' markets exclusively. Per the agency's website, four (4) percent of the total amount of the benefit is allotted to be consumed in farmers markets that are promoted by the state.

45. In doing the latter, the agency separated funds an unknown amount or percentage from USDA funds destined for Cash and Food, in a separate category of funds that could not be used in

a grocery store, and only in the farmers' market.

46. Before Hurricane Maria, The farmers' market program regularly took place every other weekend in most municipalities of the island. It took place in pre-determined locations, Saturday and Sunday from ~7am to 1pm. After Hurricane Maria razed the island, the agency discontinued hosting the farmers' market program in most municipalities. [Source: state agency website ]

47. The direct consequence of having discontinued the farmer's market program is to render money that the agency designated for 'farmers' market' as unusable. Before Hurricane Maria struck the island, it was necessary to schedule a trip during the farmers' market hours and dates. After September 2017, the money in the category known as "farmers' market" kept accumulating, making it virtually impossible to use.

48. Per 7 CFR 271.2, under definitions of a retail store where the SNAP funds may be used, the farmers' market is considered one of the various locations where the funds may be accepted.[7]

---

[7] *Retail food store* means:
(1) An establishment or house-to-house trade route that sells food for home preparation and consumption normally displayed in a public area, and either offers for sale qualifying staple food items on a continuous basis, evidenced by having no fewer than seven different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety, including at least one variety of perishable foods in at least three such categories, (Criterion A) as set forth in § 278.1(b)(1) of this chapter, or has more than 50 percent of its total gross retail sales in staple foods (Criterion B) as set forth in § 278.1(b)(1) of this chapter as determined by visual inspection, marketing structure, business licenses, accessibility of food items offered for sale, purchase and sales records, counting of stockkeeping units, or other accounting recordkeeping methods that are customary or reasonable in the retail food industry as set forth in § 278.1(b)(1) of this chapter. Entities that have more than 50 percent of their total gross retail sales in: Food cooked or heated on-site by the retailer before or after purchase; and hot and/or cold prepared foods not intended for home preparation and consumption, including prepared foods that are consumed on the premises or sold for carry-out are not eligible for SNAP participation as retail food stores under § 278.1(b)(1) of this chapter. Establishments that include separate businesses that operate under one roof and share the following commonalities: Ownership, sale of similar foods, and shared inventory, are considered to be a single firm when determining eligibility to participate in SNAP as retail food stores.
(2) Public or private communal dining facilities and meal delivery services; private nonprofit drug addict or alcoholic treatment and rehabilitation programs; publicly operated community mental health centers which conduct residential programs for drug addicts and/or alcoholics; public or private nonprofit group living arrangements; public or private nonprofit shelters for battered women and children; public or private nonprofit establishments, approved by an appropriate State or local agency, that feed homeless persons; or a restaurant that contracts with an appropriate State agency to provide meals at concessional (low or reduced) prices to homeless SNAP households;
(3) Any stores selling equipment for procuring food by hunting and fishing to eligible households in Alaska, as specified in the definition of eligible foods;
(4) Any private nonprofit cooperative food purchasing venture, including those whose members pay for food prior to receipt of the food; and
(5) A farmers' market.

Nothing in the definitions intends for the farmers market to be a program to be exclusionary, or to benefit neither the government, nor Banco Popular de Puerto Rico, nor its subsidiaries. I have the belief that this was performed with express intent to obtain a benefit.

49. 7 CFR 278 goes on to describe the approval of retail food store in order to participate as a SNAP authorized retailer, which includes farmers markets. Per the agency, the farmers markets are considered separate entities, violating the legislative intent for having included the farmers markets in the first place; The manner in which the agency considers a farmer's market would require the legislation to consider it as such. The state agency chosen to ignore that the legislation considers the farmers market as yet another retail location. To allow the state agency the allocation that can only be used in the state-sponsored farmer's market is precisely what is allowing the state agency to amass federal funds, while restricting the access of the beneficiaries. The restriction is what is causing the violation of due process pertaining to Javier Mandry and others similarly situated.

50. On August 20 and August 25, 2018, I sent Cesar Casul an email[8] [See Appendix 4B], Head of the farmer's market division at the agency. I shared my findings which were based on US law, and asked him to correct; Otherwise, I promised to inform this Court that the agency was using funds illegally. In response, on August 28, 2018, my card #5077122286179388062 was invalidated[9] by the agency, and summarily closing my case without a hearing nor prior notice. This I consider was done in response to my inquiry and in reprisal. At the time, there was a balance of funds due to the objector related to the farmer's market allotment. The agency deprived this objector of its benefit.

51. Per Goldberg v. Kelly, 397 U.S. 254, 262 & n.8 (1970) (termination of welfare benefit triggers procedural due process protection; "may be realistic today to regard welfare entitlements as more like 'property' than a 'gratuity.'").

Wherefore, this litigant request the judgment regarding the determination of and certification of class of those affected by the automatic stay and the other issues discussed in this motion, including damages and costs, etc, pursuant to FRCP Rule 23, et seq. Additionally, I request assignment of

---

[8] copying the Secretary of Justice,
[9] This fact was obtained by the card service support line.

counsel for the class-action and for celebration of any hearing on this motion. Regarding the ethics issue, I suggest that severe sanctions (fines) pursuant to Rule 11 should be administered commensurate with the severity of their actions. Disbarment should be considered.

Date: 11/19/2018     Declarant/Plainiff:

Javier Mandry Mercado
3092 Ave Fagot
Ponce, PR 00716

## Certificate of Service

I hereby certify that on November 19, 2018, I electronically filed the foregoing document with the United States Court of Appeals for the First Circuit by using the CM/ECF system. I certify that the following parties or their counsel of record are registered as ECF Filers and that they will be served by the CM/ECF system