# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | ) **PROMESA** <br> ) **Title III** <br> ) <br> **THE FINANCIAL OVERSIGHT AND** ) <br> **MANAGEMENT BOARD FOR PUERTO RICO,** ) **No. 17 BK 3283-LTS** <br> ) <br> as representative of ) **(Jointly Administered)** <br> ) <br> **THE COMMONWEALTH OF PUERTO RICO** ) <br> *et al.,* ) **Objection deadline:** December 4, 2018 at <br> ) 4:00 p.m. (Atlantic Standard Time) or such other <br> **Debtors.**[1] ) deadline as ordered by the Court <br> ) <br> ) **Hearing date:** December 19, 2018 at 9:30 a.m. <br> ) (Atlantic Standard Time) or such other hearing <br> ) date as ordered by the Court <br> ) |

## FEE EXAMINER'S MOTION TO IMPOSE ADDITIONAL PRESUMPTIVE STANDARDS: RATE INCREASES AND THE RETENTION OF EXPERT WITNESSES OR OTHER SUB-RETAINED PROFESSIONALS

TO:   THE HONORABLE LAURA TAYLOR SWAIN
      UNITED STATES DISTRICT JUDGE:

The Fee Examiner in these proceedings, pursuant to the Court's October 6, 2017 *Order*

*Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a*

*Fee Examiner and Related Relief* (the "**Fee Examiner Order**") [Dkt. No. 1416] and the *First*

*Amended Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code*

*Section 105(A) Appointing a Fee Examiner and Related Relief* [Dkt. No. 3324] (the "**Amended**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Fee Examiner Order**"), moves the Court to enter an *Order Imposing Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or Other Sub-Retained Professionals*–a draft of which is attached as **Exhibit A** (the "**Proposed Order Imposing Additional Presumptive Standards**").  This motion articulates presumptive but rebuttable standards of reasonableness and necessity for specific categories of professional services of particular concern, including the requirement of prior client approval of rate increases.  In support of the motion, the Fee Examiner and his counsel represent that:

## SUMMARY OF RELIEF REQUESTED

This motion focuses on two components of professional fees and expenses—each with dramatic effects on the cost of these Title III proceedings.  The first is the observed practice by some professionals of charging, as expenses, the fees and cost of experts and consultants retained by the professionals on behalf of clients.  Through the fourth interim period, those expenses total more than $1 million.[2]  The second component is professional hourly rate increases.  Through the third interim period, the total amount attributable to rate increases alone is nearly $3.9 million, with the cumulative cost of rate increases in fourth interim fee applications (many, but not all, filed on or about November 16, 2018) not yet determined.  Inevitably, rate increases multiply exponentially, making the true cost to the estates both hidden (for now) and significant.  Without limiting the ability to object to any particular fee application, this motion requests additional presumptive standards addressing each of these components.

---

[2] Not all professionals have submitted applications and/or supporting data for the fourth interim fee period, which ended on September 30, 2018.

## BACKGROUND

1.      The Court entered the Fee Examiner Order on October 6, 2017 and the Amended Fee Examiner Order on June 20, 2018.

2.      On November 8, 2017, on the motion of the Fee Examiner, the Court entered the *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 1715] (the "**First Amended Interim Compensation Order**").  On June 6, 2018, the Court entered the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Dkt. No. 3269] (the "**Second Amended Interim Compensation Order**").

3.      The Fee Examiner periodically has submitted reports (or supplemental reports) on professional fees and expenses [Dkt. Nos. 2645, 2909, 3193, 3613, 3865 and 4126], and the Court has accepted the Fee Examiner's recommendations through its entry of a series interim compensation orders.  *See* Dkt. Nos. 2685, 2911, 3279, 3656, 3874, and 4200.

4.      On June 20, 2018, in the Amended Fee Examiner Order [Dkt. No. 3324], the Court extended the scope of the Fee Examiner's appointment to include services performed before a professional's formal appointment or retention and, in limited circumstances, in matters other than these Title III proceedings.

5.      Pursuant to the Interim Compensation Order, the First Amended Interim Compensation Order, and the Second Amended Interim Compensation Order (the "**Interim Compensation Procedures**"), on November 16, 2018, professionals began submitting applications for the "**Fourth Interim Compensation Period**" (June 1 – September 30, 2018) that, to date, total more than $59 million.  Fees and expenses requested through the Title III

review process for the first through fourth interim compensation periods now total more than

$295 million.[3]

## FIRST PRESUMPTIVE STANDARDS MOTION AND ORDER

6.       On August 21, 2018, the Fee Examiner filed the *Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3790].

7.       After a colloquy at the September 13, 2018 omnibus hearing, the Court entered the *Order Granting 3790 Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932] (the "**Presumptive Standards Order**").

## GROUNDS FOR ADDITIONAL PRESUMPTIVE STANDARDS

8.       The Fee Examiner's reports and the transcripts of the September 13 and November 7, 2018 omnibus hearings provide the support necessary for the relief requested.

9.       Based on the experience reviewing the first three interim period applications—including extensive discussions with professionals—the Fee Examiner has concluded that selected recommendations from the interim reports are appropriately the subject of a Court order.

## FACTS

### *Sub-Retained Professionals*

10.      Through the Fourth Interim Compensation Period, professionals have requested a total of $9 million in reimbursable expenses.  While that total primarily includes travel, service of process, transcripts, copying, and other direct expenses, more than $1 million in third and fourth interim period expense submissions are professional fees of expert witnesses and consultants neither appointed nor approved under PROMESA.

---

[3] This figure does not precisely reflect the total fees and expenses requested for Title III services because it includes non-Title III services provided to some Debtors, reviewed at the specific request of those Debtors.  In addition, for some professional services, the distinction between Title III and non-Title III work is not a bright line.

11.     At least two firms reported the retention and payment of experts as an out-of-pocket expense without notice, Court approval, or documentation of the experts' engagement terms.[4]  Those sub-retained professionals, in turn, apparently have employed the services of at least 26 individuals to prepare for expert testimony.

12.     Whether or not that would be permitted under Chapter 11, *see* 11 U.S.C. § 327, it should not be permitted in a PROMESA Title III proceeding.  The circumstances here warrant transparency, and the submission of professional fees as out-of-pocket expenses does not provide that.  Significant expert and consultant fees should be subject to the same review process and standards as the fees and expenses of other professionals.

### *Rate Increases*

13.     Through just the third interim period, professionals have requested nearly $3.9 million in compensation attributable solely to rate increases—that is, fees that would not have been charged if hourly rates had been maintained at the initial billing rate charged by each timekeeper on the first day of their work on these cases.[5]

14.     In the first year of these proceedings, those increases ranged from zero to 13.33 percent on a firm average and up to 28 percent for individual timekeepers.  At one firm, hourly rate increases for just two attorneys have accounted for an additional $277,000 in billings.  As of July, 2018, the average associate rate increase was 17.3 percent at that firm—in three separate increases since February 2018.

---

[4] In one instance, an expert's sub-retention may conflict with a Court order disapproving the retention of a financial advisor and expert.  *See Order Denying Application of COFINA Agent for Entry of Order Authorizing Retention of Centerview Partners LLC as Financial Advisor and Expert* [Dkt. No. 1461].

[5] Updated calculations including the recently-filed Fourth Interim Compensation Period applications will be provided as they become available, dependent upon the professionals' timely submission of billing data.

15.    Many professionals raise rates, firm-wide, at the beginning of the calendar or fiscal year.  In addition, a second series of annual increases for associates as a result of increasing seniority, often called "step increases," is the norm at most firms.  Here, at least one professional firm already has imposed one set of firm-wide rate increases and two sets of associate step increases.  These and other observed hourly rate increases are outside the norm.

16.    No professional has sought prior Court approval for rate increases, though professional engagement letters almost universally provide that rates may be adjusted from time to time in the professional's sole discretion.  That unfettered discretion is not reasonable.  Many clients in private engagements require professionals to disclose intended rate increases and obtain client approval before imposing them.

17.    Further, continuing rate increases will soon erode, if they have not already eroded, any initial "discounts" from the fees charged by some professionals.

18.    In 2017, according to Lexis-Nexis, the year-over-year hourly growth rate for partners at New York law firms was 5.7 percent; the three-year compound annual rate growth was 4.2 percent.[6]

19.    The annual rate of inflation in the New York metropolitan area was 2 percent as of October 2018.[7]  In the Commonwealth, the inflation rate has fluctuated between .8 percent and 1.9 percent since November 2017.[8]

---

[6] Kris Satkunas, *2018 LexisNexis CounselLink Enterprise Legal Management Trends Report* (Feb. 2018), https://www.counsellink.com/trends (last visited Nov. 26, 2018).

[7] *See* https://www.bls.gov/regions/new-york-new-jersey/news-release/2018/consumerpriceindex_newyorkarea_20181114.htm.

[8] *See* https://tradingeconomics.com/puerto-rico/inflation-cpi.

20.     Few cases have evaluated the reasonableness and necessity of rate increases.  *See, e.g., In re Teraforce Tech. Corp.*, 347 B.R. 838, 860 (Bankr. N.D. Tex. 2006) (Houser, J., approving rate increase totaling $45,000, noting "the rate increases objected to were not so large as to overly concern the Court."); *In re Hungry Horse, LLC*, 574 B.R. 740, 743 (Bankr. D.N.M. 2017) (noting that "billing rates should be stable" absent a change in circumstances or a "particularly long case.")

21.     Reported decisions do recognize the appropriateness of rate increases, but most have involved relatively small amounts incurred in cases of comparatively short duration.  At best, it is premature in these proceedings to endorse—implicitly or explicitly—rate increases outside the norm.  The New Year will most certainly trigger another round of contemplated rate increases for many professional firms.

22.     The U.S. Trustee Guidelines recognize "step increases" as "historically awarded…in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion."  *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under United States Code by Attorneys in Larger Chapter 11 Cases*, 28 C.F.R. Part 58, App. B, B.2.d n.2.  But the guideline recognizes only "annual," not multiple, increases in an even shorter period.  Moreover, as a guideline, it is subject to case- and circumstance-specific adjustment.  This Title III proceeding requires—at least in the interim—just such an adjustment.

## REQUESTED PRESUMPTIONS/MOTION

23.     The Fee Examiner moves the Court to enter an Order establishing the following

additional rebuttable presumptions to supplement those already incorporated in the Presumptive

Standards Order:[9]

a)  Professionals seeking fees or expenses through the Title III fee process shall not
    submit reimbursement requests for any other firm's professional (legal, financial
    advisory, investment banking, or accounting) services, whether or not those services
    are characterized as expert witness or consultant fees.

    1.  If a professional's retention order or agreement allows for the sub-retention of
        other professionals, including expert witnesses, any such sub-retention shall
        be the subject of a notice containing all of the required elements of an
        application pursuant to 11 U.S.C. § 327(e).  The notice shall certify that the
        professional has the prior written consent of its client to retain the expert or
        consultant.  Any party in interest may object to the retention for any reason,
        including that the services to be provided are unnecessarily duplicative of
        another professional's services; and

    2.  Any sub-retained consultant or expert witness fees charged as expenses in
        another professional's fee application should be accompanied by all of the
        supporting information and data required of retained professionals; and

    3.  This presumption shall not apply to sub-retained professionals billing less than
        $30,000 in any four-month interim compensation period or $150,000 in the
        aggregate.

b)  Hourly billing rate increases imposed by professionals submitting fees for Court
    approval shall be presumptively unreasonable unless:

    1.  The professional firm certifies that it has obtained the express written
        permission of its client for the rate increases on a timekeeper-by-timekeeper
        basis; and

    2.  The professional has filed a notice, at least 21-days prior to the
        implementation of such rate increases, informing the Court and public of the
        proposed rate adjustment on a timekeeper-by-timekeeper basis; and

---

[9] This Motion does not address any prospective rate increases or adjustments that may be necessary to offset the
impact of new Puerto Rico tax legislation, noted by the Debtors' counsel at the November 7, 2018 omnibus hearing,
which is under evaluation.

    3.   The rate increases do not exceed, for any individual timekeeper during any calendar year:

        i.   Five percent of the rates previously charged for any owner, director, partner, shareholder, special counsel, or senior counsel; or

        ii.   Ten percent of the rates previously charged for any associate or non-owner professional engaged in his or her field of practice for a period of 10 or fewer years.[10]

    4.   The term "rate increases" includes any increase in rates above those initially charged, whether denominated "step increases" or otherwise.

c)  Any party in interest may object to rate increases for any reason, including, but not limited to, their failure to comply with these presumptions.

24.    These proposed presumptions are rebuttable and incorporate standards already in use by the Fee Examiner and counsel.  The burden, however, remains on each professional to demonstrate the reasonableness and necessity of fees and expenses in light of the facts and circumstances presented.

25.    If adopted, these additional presumptions do not restrict any party, including the U.S. Trustee and the Fee Examiner, from objecting to a professional's fees and expenses even within the parameters of these presumptions.

26.    This motion recognizes the unique aspects of these cases and the fact that the various professionals and interested parties are not all necessarily similarly situated.  The Fee Examiner retains the ability to elect *not* to apply a presumption to a professional application if, in his judgment, application of the presumption would be unreasonable under the circumstances.

27.    Nothing in any order arising from this Motion shall prevent any party from challenging or rebutting any of the proposed presumptions set forth herein.

---

[10] Associates may undergo rate increases twice in a calendar year, but the cumulative effect should not exceed ten percent for any twelve-month period.

28.      Fees incurred by applicants to provide the basis for rebutting a presumption in an initially filed fee application will be considered compensable if they are otherwise reasonable, taking into account the good faith basis for the applicant's position.

29.      Ordering the relief requested, as with all case administration matters, is soundly within the discretion of the Court.

30.      The Fee Examiner may request additional presumptions based on issues that emerge in the review of pending or subsequent interim fee applications.

## RELIEF REQUESTED

31.      For all of these reasons, this motion seeks the entry of the **Order Imposing Additional Presumptive Standards**, attached as **Exhibit A**.

## CERTIFICATION

32.      Given the nature of the relief requested and the circumstances giving rise to this Motion, the Fee Examiner has consulted generally with the professionals on the subject of this motion and anticipates objections, which he will endeavor to resolve prior to the December 19, 2018 hearing on this Motion.

**WE HEREBY CERTIFY**: that on this date, we electronically filed the foregoing Motion with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

Dated: November 27, 2018.

EDGE Legal Strategies, PSC

_s/Eyck O. Lugo_
Eyck O. Lugo
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR  00918
Telephone:  (787) 522-2000
Facsimile:  (787) 522-2010

*Puerto Rico Counsel*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI  53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Katherine Stadler (*Pro Hac Vice*)

*Counsel for the Fee Examiner*

19801057.3

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| In re | ) **PROMESA** |
| | ) **Title III** |
| THE FINANCIAL OVERSIGHT AND | ) |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) **No. 17 BK 3283-LTS** |
| | ) |
| as a representative of | ) **(Jointly Administered)** |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO | ) |
| *et al.*, | ) |
| | ) |
| Debtors.[1] | ) |
| | ) |

## ORDER IMPOSING ADDITIONAL PRESUMPTIVE STANDARDS: RATE INCREASES AND THE RETENTION OF EXPERT WITNESSES OR OTHER SUB-RETAINED PROFESSIONALS

Upon the *Fee Examiner's Motion to Impose Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or other Sub-Retained Professionals* (the "**Motion**"); and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having found that the relief requested in the Motion is in the best interests of the Debtors, their creditors, and other parties in interest; and the Court having found that the Fee Examiner provided adequate and appropriate notice of the Motion

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

under the circumstances, including that the relief sought in the Motion is supported by good

cause as contemplated by Bankruptcy Rule 9006, and that no other or further notice is required;

and the Court having reviewed the Motion and the Court having determined that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.    The Motion is **GRANTED**;

2.    The following additional presumptive standards, which the Fee Examiner has

represented embody standards generally and consistently applied since the outset of the review

process, shall continue to be applied in the review of fee applications filed in these Title III cases

after the entry of this Order:

    a) Professionals seeking fees or expenses through the Title III fee process shall not
submit reimbursement requests for any other firm's professional (legal, financial
advisory, investment banking, or accounting) services, whether or not those services
are characterized as expert witness or consultant fees.

        1.  If a professional's retention order or agreement allows for the sub-retention of
other professionals, including expert witnesses, any such sub-retention shall
be the subject of a notice containing all of the required elements of an
application pursuant to 11 U.S.C. § 327(e). The notice shall certify that the
professional has the prior written consent of its client to retain the expert or
consultant. Any party in interest may object to the retention for any reason,
including that the services to be provided are unnecessarily duplicative of
another professional's services; and

        2.  Any sub-retained consultant or expert witness fees charged as expenses in
another professional's fee application should be accompanied by all of the
supporting information and data required of retained professionals; and

        3.  This presumption shall not apply to sub-retained professionals billing less than
$30,000 in any four-month interim compensation period or $150,000 in the
aggregate.

    b) Hourly billing rate increases imposed by professionals submitting fees for Court
approval shall be presumptively unreasonable unless:

1. The professional firm certifies that it has obtained the express written permission of its client for the rate increases on a timekeeper-by-timekeeper basis; and

2. The professional has filed a notice, at least 21-days prior to the implementation of such rate increases, informing the Court and public of the proposed rate adjustment on a timekeeper-by-timekeeper basis; and

3. The rate increases do not exceed, for any individual timekeeper during any calendar year:

    i. Five percent of the rates previously charged for any owner, director, partner, shareholder, special counsel, or senior counsel; or

    ii. Ten percent of the rates previously charged for any associate or non-owner professional engaged in his or her field of practice for a period of 10 or fewer years.[2]

4. The term "rate increases" includes any increase in rates above those initially charged, whether denominated "step increases" or otherwise.

c) Any party in interest may object to rate increases for any reason, including, but not limited to, their failure to comply with these presumptions.

3. The burden remains on each professional to demonstrate the reasonableness and necessity of fees and expenses exceeding these standards in light of the facts and circumstances presented.

4. Nothing in this Order shall restrict any party, including the U.S. Trustee and the Fee Examiner, from objecting to a professional's fees and expenses even within the parameters of these presumptions.

5. Nothing in this Order shall restrict the Fee Examiner from, in his discretion, electing *not* to apply a presumption to a professional application if, in his judgment, application of the presumption would be unreasonable under the circumstances.

---

[2] Associates may undergo rate increases twice in a calendar year, but the cumulative effect shall not exceed ten percent for any twelve-month period.

3

6.      Nothing in this Order shall prevent any party from challenging or rebutting any of the presumptions set forth herein, which are general guidelines only.

7.      Nothing in this Order shall alter the terms of the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932], which remains in full force and effect.

8.      Fees incurred by applicants to provide the basis for rebutting a presumption in an initially filed fee application are compensable if they are otherwise reasonable, taking into account the good faith basis for the applicant's position.

9.      The Fee Examiner may, upon notice and a hearing, request additional presumptions based on issues that emerge in the review of subsequent or pending but unresolved interim fee applications.

10.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

11.      This Order resolves docket entry no. _____.

SO ORDERED.

Dated: _____, 2018

                                        _____
                                        LAURA TAYLOR SWAIN
                                        United States District Judge

19809604.1

4