**Hearing Date**: December 19, 2018 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: December 4, 2018 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

---

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, et
al.,

Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION,

               Debtor.

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3284-LTS

**This Motion Relates Only to
COFINA and Shall be Filed in
Case No. 17 BK 3283-LTS and
in Case No. 17 BK 3284-LTS**

---

# MOTION OF PUERTO RICO
## SALES TAX FINANCING CORPORATION,
### PURSUANT TO BANKRUPTCY CODE SECTION 365(a), FOR
### ENTRY OF AN ORDER AUTHORIZING REJECTION OF THE DEBT SERVICE
### DEPOSIT AGREEMENT WITH LEHMAN BROTHERS SPECIAL FINANCING INC.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

JURISDICTION AND VENUE..................................................................................................1

BACKGROUND........................................................................................................................2

    A.   COFINA's Title III Case..................................................................................2

    B.   The Debt Service Deposit Agreement ...........................................................3

RELIEF REQUESTED ..............................................................................................................4

BASIS FOR RELIEF .................................................................................................................4

NOTICE ......................................................................................................................................7

NO PRIOR REQUEST...............................................................................................................7

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bildisco & Bildisco*,
465 U.S. 513 (1984) .................................................................................................. 5

*Computer Sales Int'l, Inc. v. Federal Mogul (In re Fed. Mogul Global, Inc.)*,
293 B.R. 124 (D. Del. 2003) ...................................................................................... 6

*In re BankVest Capital Corp.*,
360 F.3d 291 (1st Cir. 2004) ...................................................................................... 5

*In re City of Cent. Falls*,
2011 Bankr. LEXIS 5432 (Bankr. D.R.I. Nov. 2, 2011) ........................................... 6

*In re Dehon, Inc.*,
352 B.R. 546 (Bankr. D. Mass. 2006) ....................................................................... 5

*In re HQ Global Holdings, Inc.*,
290 B.R. 507 (Bankr. D. Del. 2003) .......................................................................... 6

*In re Instituto Medico Del Norte, Inc.*,
76 B.R. 14 (Bankr. D.P.R. 1987) ............................................................................... 5

*In re Szenda*,
406 B.R. 574 (Bankr. D. Mass. 2009) ....................................................................... 5

*In re Trans World Airlines, Inc.*,
261 B.R. 103 (Bankr. D. Del. 2001) .......................................................................... 6

*Moran v. City of Central Falls*,
475 B.R. 323 (D.R.I. 2012) ....................................................................................... 6

STATUTES

11 U.S.C. § 306(a) ............................................................................................................ 1

11 U.S.C. § 365(a) ................................................................................................... 1, 4, 5, 6

11 U.S.C. § 365(g)(1) ....................................................................................................... 5

11 U.S.C § 503(b)(9) ........................................................................................................ 4

11 U.S.C. § 1141(d) .......................................................................................................... 5

48 U.S.C. §§ 2101–2241 ................................................................................................... 1

PROMESA § 104(j) .................................................................................................................2

PROMESA § 206 ....................................................................................................................2

PROMESA § 301(a) ..............................................................................................................1

PROMESA § 304(a) ..............................................................................................................2

PROMESA § 307(a) ..............................................................................................................1

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Sales Tax Financing Corporation ("COFINA")[2] pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[3] respectfully submits this motion (the "Motion"), pursuant to section 365(a) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to this Title III case by PROMESA section 301(a), for entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the rejection of that certain Debt Service Deposit Agreement, dated July 1, 2008, by and among The Bank of New York (the "Trustee"), COFINA, and Lehman Brothers Special Financing Inc. ("Lehman"), a copy of which is attached hereto as **Exhibit B** (the "DSDA").[4]   In support of this Motion, the Debtor respectfully represents as follows:

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory predicate for the relief sought herein is Bankruptcy Code section 365(a), made applicable to this Title III case by PROMESA section 301(a).

---

[2] The Oversight Board, in its capacity as representative of COFINA, is referred to as the "Debtor".

[3] PROMESA has been codified in 48 U.S.C. §§ 2101–2241.

[4] All capitalized terms undefined herein shall have the meanings given to them in the DSDA.

## BACKGROUND

### A.    *COFINA's Title III Case*

4.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant
to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the
Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under title III
thereof (the "Commonwealth's Title III Case").

5.      On May 5, 2017 (the "COFINA Petition Date"), the Oversight Board issued a
restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary
petition for relief for COFINA pursuant to PROMESA section 304(a), commencing a case under
title III thereof ("COFINA's Title III Case").

6.      On June 1, 2017, the Court entered an order granting the joint administration of
the Commonwealth's Title III Case and COFINA's Title III Case, for procedural purposes only
[ECF No. 242].[5]

7.      On October 19, 2018, the Debtor filed the *Title III Plan of Adjustment of Puerto
Rico Sales Tax Financing Corporation* [Case No. 17 BK 3284, ECF No. 309], as amended on
November 16, 2018 [Case No. 17 BK 3284, ECF No. 352], and as further amended on
November 26, 2018 [Case No. 17 BK 3284, ECF No. 367] (as may be further amended,
supplemented or modified, the "Plan").   On October 19, 2018, the Debtor also filed the
*Disclosure Statement for the Title III Plan of Adjustment of the Debts of Puerto Rico Sales Tax
Financing Corporation* [Case No. 17 BK 3284, ECF No. 310], as amended on November 16,

---

[5] Unless indicated otherwise, ECF number references shall be to pleadings filed in the Commonwealth's Title III
Case, No. 17 BK 3283.

2018 [Case No. 17 BK 3284, ECF No. 353], and as further amended on November 26, 2018 [Case No. 17 BK 3284, ECF No. 368] (as may be further amended, the "Disclosure Statement").

8.      On November 20, 2018, at the hearing to consider the adequacy of information contained in the Disclosure Statement (the "Disclosure Statement Hearing"), the Court orally approved the Disclosure Statement, subject to certain revisions outlined on the record.   On November 26, 2018, and as requested by the Court at the Disclosure Statement Hearing, the Debtor filed a revised order approving the Disclosure Statement by notice of presentment.  [Case No. 17 BK 3284, ECF No. 369].

### B.      The Debt Service Deposit Agreement

9.      On June 6, 2005, the Puerto Rico Public Finance Corporation entered into six separate debt service deposit agreements with Lehman (the "Prior Agreements").  Certain of the bonds that were the subject of the Prior Agreements were redeemed, defeased, refunded or otherwise pre-funded, resulting in diminished cash flows to Lehman thereunder.

10.      In lieu of paying Lehman for the reduction of cash flows in connection with the Prior Agreements, COFINA, the Trustee, and Lehman entered into the DSDA, pursuant to which Lehman may cause certain "Qualified Securities" to be delivered to the Trustee on certain specified dates.  In the event that Lehman were to deliver such securities, the Trustee would be obligated to purchase them at par out of funds available in the applicable debt service account. Similar to the Prior Agreements, in the event that COFINA were to redeem, defease, repurchase, or refund any of the "Senior" Existing Securities (as defined in the Plan) covered under the DSDA (Series 2007A, Series 2007B and Series 2007C), COFINA would be obligated to pay Lehman the "Termination Amount," an amount designed to preserve the economic equivalent of Lehman's rights under the DSDA.  Upon information and belief, no payments have been made

3

with respect to COFINA's "Senior" Existing Securities for several years, and no transactions pursuant to the DSDA have occurred over such span.  Moreover, as discussed below, with the cancellation of such Existing Securities pursuant to the Plan, the DSDA provides no value to COFINA.

11.     On May 29, 2018, Lehman Brothers Holdings Inc. ("<u>Lehman Brothers</u> <u>Holdings</u>"), as Plan Administrator for Lehman, filed a proof of claim (Claim No. 42158) against COFINA, attached hereto as **Exhibit B** (the "<u>Proof of Claim</u>"), asserting damages pursuant to the DSDA and stating that Lehman's claim "is contingent and unliquidated and relates to an executory contract that has been neither assumed or rejected."  Proof of Claim, at 6.  The Proof of Claim also provides that Lehman's claim is unsecured, not subject to a right of setoff, and not entitled to administrative priority pursuant to Bankruptcy Code section 503(b)(9).  *See* Proof of Claim, at 3-4.

## RELIEF REQUESTED

12.     By this Motion, the Debtor requests entry of an order, substantially in the form of the Proposed Order attached hereto as **Exhibit A**, authorizing the rejection of the DSDA pursuant to Bankruptcy Code section 365(a).

## BASIS FOR RELIEF

13.     Bankruptcy Code section 365(a) provides that a debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  The ability to assume or reject executory contracts and unexpired leases is one of the basic, and most powerful, reorganizational tools available to debtors under the Bankruptcy Code.  *See In re BankVest Capital Corp.*, 360 F.3d 291, 296 (1st Cir. 2004); *In re Dehon, Inc.*, 352 B.R. 546, 558 (Bankr. D. Mass. 2006); *In re Szenda*, 406 B.R. 574, 580 (Bankr.

4

D. Mass. 2009).  Subject to the requirement of court approval, Bankruptcy Code section 365(a) allows a debtor to evaluate its executory contracts and unexpired leases and decide which to assume or reject.

14.    The rejection of an executory contract that has not been previously assumed constitutes a breach of such contract immediately before the petition date.  Any resulting rejection damages claim is a general unsecured claim against the debtor.  *See* 11 U.S.C. § 365(g)(1) (". . . [T]he rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease (1) if such contract or lease has not been assumed . . ., immediately before the date of the filing of the petition.").  *See also Gray v. W. Envtl. Servs. & Testing, Inc. (In re Dehon, Inc.)*, 352 B.R. 546, 558-59 (Bankr. D. Mass. 2006) ("If the contract is rejected, the rejection gives rise to a claim for damages as if the contract had been breached prepetition.  The claim created by the rejection of the contract . . . is then afforded treatment similar to all other unsecured claims that are either provided for in the plan or are discharged through § 1141(d).") (internal citations omitted).  Pursuant to Bankruptcy Code section 562(a), if a securities contract (as defined in Bankruptcy Code section 741(7)) is rejected, damages shall be measured as of the earlier of (1) the date of rejection; or (2) the date or dates of liquidation, termination, or acceleration.  *See* 11 U.S.C. § 562(a).

15.    The standard for rejection of executory contracts and unexpired leases pursuant to Bankruptcy Code section 365(a) is whether such exercise by a debtor is conducted with reasonable business judgment and provides a benefit to the estate.  *See Bildisco & Bildisco*, 465 U.S. 513, 523 (1984) (recognizing the business judgment standard used to approve rejection of executory contracts); *In re Instituto Medico Del Norte, Inc.*, 76 B.R. 14, 16 (Bankr. D.P.R. 1987) ("A debtor-in-possession's decision to reject a contract is based on the 'business judgment'

rule."); *Moran v. City of Central Falls*, 475 B.R. 323, 332 (D.R.I. 2012) (stating that the decision "to reject an executory contract is reviewed under the business-judgment rule, which consists of a determination of what is 'in the best interest of the estate.'"); *see also Computer Sales Int'l, Inc. v. Federal Mogul (In re Fed. Mogul Global, Inc.)*, 293 B.R. 124, 126 (D. Del. 2003); *In re Trans World Airlines, Inc.*, 261 B.R. 103, 123 (Bankr. D. Del. 2001) ("the focus [in analyzing a lease rejection motion] is the benefit to the debtor's estate").  Thus, a court must examine the Debtor's decision to reject an executory contract under the business judgment rule to determine if rejection would benefit the estate.

16.     The business judgment rule mandates that a court approve a debtor's business decision unless the decision is the product of bad faith, whim, or caprice.  *See In re City of Cent. Falls*, 2011 Bankr. LEXIS 5432 at *15 (Bankr. D.R.I. Nov. 2, 2011) (holding that a court "should approve the rejection of an executory contract under § 365(a) unless it finds that the debtor-in-possession's conclusion that rejection would be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice."); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003); *see also Fed. Mogul Global, Inc.*, 293 B.R. at 126 ("The business judgment test dictates that a court should approve a debtor's decision to reject a contract unless that decision is the product of bad faith or a gross abuse of discretion.").

17.     Here, rejection of the DSDA is a proper exercise of COFINA's business judgment and should be approved.  The Plan provides for, among other things, the exchange of COFINA's Existing Securities for new securities that will be issued on the Plan's effective date.  Indeed, on the Plan effective date, COFINA's Existing Securities, including, without limitation, the securities that are subject to the DSDA, will be deemed automatically cancelled, terminated and

of no further force or effect against COFINA.  *See* Section 19.6 of the Plan.  As of the date

hereof, the DSDA provides no value to COFINA and, accordingly, the Court should authorize

the rejection of the DSDA as a proper exercise of COFINA's business judgment.  In the event

that the Court grants this Motion, and acknowledged by Lehman in the Proof of Claim, any

resulting rejection damages claim shall be a general unsecured claim, with the damages

measured as of the date of the Court's order.

## **NOTICE**

18.     The Debtor has provided notice of this Motion to: (a) the Office of the United

States Trustee for the District of Puerto Rico; (b) the Trustee; (c) the entities on the list of

creditors holding the 20 largest unsecured claims against COFINA; (d) the statutory committees

appointed in these Title III Cases; (e) the Office of the United States Attorney for the District of

Puerto Rico; (f) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority; (g)

the Puerto Rico Department of Justice; (h) the United States Securities and Exchange

Commission; and (i) all parties filing a notice of appearance in these Title III Cases.  The

Oversight Board submits that, in light of the nature of the relief requested, no other or further

notice need be given.

## **NO PRIOR REQUEST**

19.     No prior request for the relief sought in this Motion has been made to this or any

other court.


*[Remainder of Page Intentionally Left Blank]*

7

WHEREFORE the Oversight Board, as representative of COFINA, respectfully requests the Court to enter an order, substantially in the form attached hereto as **Exhibit A**, (a) granting this Motion, (b) rejecting the DSDA, and (c) granting COFINA such other relief as is just and proper.

Dated: November 27, 2018
     San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock
Brian S. Rosen
Jeffrey W. Levitan
Chris Theodoridis
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board
as representative for COFINA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial
Oversight and Management Board
as Representative for COFINA*

104040611v7

## Exhibit A

**Proposed Order**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

--------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO, *et
al.*,

Debtors.[6]

--------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION,

Debtor.

--------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3284-LTS

**This Order Relates Only to
COFINA and Shall be Filed in
Case No. 17 BK 3283-LTS and
in Case No. 17 BK 3284-LTS**

## ORDER APPROVING MOTION OF PUERTO RICO SALES TAX FINANCING
## CORPORATION, PURSUANT TO BANKRUPTCY CODE SECTION 365(a), FOR
## ENTRY OF AN ORDER AUTHORIZING REJECTION OF THE DEBT SERVICE
## DEPOSIT AGREEMENT WITH LEHMAN BROTHERS SPECIAL FINANCING INC.

Upon the *Motion of Puerto Rico Sales Tax Financing Corporation, Pursuant to*

*Bankruptcy Code Section 365(a), for Entry of an Order Authorizing Rejection of the Debt*

---

[6]The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4)
digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico
(Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax
Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:
8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS)
(Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the
Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax
ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS)
(Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to
software limitations).

104040611v7

*Service Deposit Agreement with Lehman Brothers Special Financing Inc.* (the "Motion");[7] and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having found that the relief requested in the Motion is a proper exercise of the COFINA's business judgment, it is **HEREBY ORDERED THAT**:

1.      The Motion is granted as set forth herein.

2.      The DSDA shall be rejected effective as of the date of this Order.

3.      Nothing in this Order shall affect the right of any counterparty to the DSDA to file claims for rejection damages, if applicable, and COFINA shall retain all rights to object to any such claims, as appropriate.

4.      Pursuant to this Court's *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521], any holder of a claim arising from the rejection of the DSDA must file a proof of claim based on such rejection on or before 4:00 p.m. (Atlantic Standard Time) on the first business day that is thirty-five (35) calendar days after the entry of this Order.

5.      Nothing in this Order shall constitute any waiver of any claims or defenses by COFINA that it has or may have against of the counterparties to the DSDA.

6.      The terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

7.      This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

---

[7]Capitalized terms used but not otherwise defined herein have the meanings given to them in the Motion.

2

SO ORDERED.

Dated: December _____, 2018
       San Juan, Puerto Rico

                                                                         LAURA TAYLOR SWAIN
                                                                      United States District Judge

## **Exhibit B**

**Lehman Proof of Claim No. 42158**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO / TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS PARA EL DISTRITO DE PUERTO RICO**

| Fill in this information to identify the case (Select only one Debtor per claim form). / Llene esta información para identificar el caso (seleccione sólo un deudor por formulario de reclamación). | | |
|---|---|---|
| ☐ Commonwealth of Puerto Rico<br>El Estado Libre Asociado de Puerto Rico | Case No. 17-bk-03283 | Petition Date:<br>May 3, 2017 |
| ☑ Puerto Rico Sales Tax Financing Corporation (COFINA)<br>La Corporación del Fondo de Interés Apremiante de Puerto Rico | Case No. 17-bk-03284 | Petition Date:<br>May 5, 2017 |
| ☐ Puerto Rico Highways and Transportation Authority<br>La Autoridad de Carreteras y Transportación de Puerto Rico | Case No. 17-bk-03567 | Petition Date:<br>May 21, 2017 |
| ☐ Employees Retirement System of the Government of the<br>Commonwealth of Puerto Rico<br>El Sistema de Retiro de los Empleados del Gobierno del Estado<br>Libre Asociado de Puerto Rico | Case No. 17-bk-03566 | Petition Date:<br>May 21, 2017 |
| ☐ Puerto Rico Electric Power Authority<br>La Autoridad de Energía Eléctrica de Puerto Rico | Case No. 17-bk-04780 | Petition Date:<br>July 2, 2017 |

RECEIVED

MAY 29 2018

PRIME CLERK LLC

Modified Official Form 410 / Formulario Oficial 410 Modificado

# Proof of Claim / Evidencia de reclamación

04/16

**Read the instructions before filling out this form.** This form is for making a claim for payment in a Title III case. Do not use this form to make a request for payment of an administrative expense, other than a claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9). Make such a request according to 11 U.S.C. § 503.

**Filers must leave out or redact** information that is entitled to privacy or subject to confidentiality on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

**Lea las instrucciones antes de completar este formulario.** Este formulario está diseñado para realizar una reclamación de pago en un caso en virtud del Título III. No utilice este formulario para solicitar el pago de un gasto administrativo que no sea una reclamación que reúna los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b) (9) del U.S.C. Ese tipo de solicitud debe realizarse de conformidad con el Título 11 § 503 del U.S.C.

**Quienes presenten la documentación deben omitir o editar** información que reúna los requisitos para ser tratada con privacidad o confidencialidad en este formulario o en cualquier otro documento adjunto. Adjunte copias editadas de cualquier otro documento que respalde la reclamación, tales como pagarés, órdenes de compra, facturas, balances detallados de cuentas en funcionamiento, contratos, resoluciones judiciales, hipotecas y acuerdos de garantías. **No adjunte documentos originales,** ya que es posible que los documentos adjuntos se destruyan luego de analizarlos. En caso de que los documentos no estén disponibles, explique los motivos en un anexo.

**Fill in all the information about the claim as of the Petition Date.**

**Complete toda la información acerca de la reclamación a la fecha en la que se presentó el caso.**

☐ Date Stamped Copy Returned
☐ No Self-Addressed Stamped Envelope
☒ No Copy Provided

| Part 1 / Parte 1 | Identify the Claim / Identificar la reclamación |
|---|---|

1. **Who is the current creditor?**

   **¿Quién es el acreedor actual?**

   Lehman Brothers Special Financing Inc.

   Name of the current creditor (the person or entity to be paid for this claim)
   Nombre al acreedor actual (la persona o la entidad a la que se le pagará la reclamación)

   Other names the creditor used with the debtor
   Otros nombres que el acreedor usó con el deudor  _____



170328380009461

**Claim Number: 42158**

| 2. | Has this claim been acquired from someone else?<br><br>¿Esta reclamación se ha adquirido de otra persona? | ☑ No / No<br>☐ Yes. From whom?<br>    Sí. ¿De quién? _____ |

| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)<br><br>¿A dónde deberían enviarse las notificaciones al acreedor?<br><br>Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g | **Where should notices to the creditor be sent?**<br>**¿A dónde deberían enviarse las notificaciones al acreedor?**<br><br>See attachment<br>Name / Nombre<br><br>_____<br>Number / Número    Street / Calle<br><br>_____<br>City / Ciudad  State / Estado  ZIP Code / Código postal<br><br>_____<br>Contact phone / Teléfono de contacto<br><br>_____<br>Contact email / Correo electrónico de contacto | **Where should payments to the creditor be sent?**<br>(if different)<br>**¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente)**<br><br>Kristine Dickson, c/o Lehman Brothers Holdings Inc.<br>Name / Nombre<br><br>277 Park Avenue, 46th Floor<br>Number / Número    Street / Calle<br><br>New York, New York  10172<br>City / Ciudad  State / Estado  ZIP Code / Código postal<br><br>646-285-9000<br>Contact phone / Teléfono de contacto<br><br>kristine.dickson@lehmanholdings.com<br>Contact email / Correo electrónico de contacto |

| 4. | Does this claim amend one already filed?<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☑ No / No<br>☐ Yes.  Claim number on court claims registry (if known)<br>    Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>    Filed on / Presentada el _____ (MM /DD/YYYY) / (DD/MM/AAAA) |

| 5. | Do you know if anyone else has filed a proof of claim for this claim?<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☑ No / No<br>☐ Yes. Who made the earlier filing?<br>    Sí.  ¿Quién hizo la reclamación anterior?_____ |

**Part 2 / Parte 2:**    Give Information About the Claim as of the Petition Date
Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.

| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☐ No / No<br>☑ Yes. Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí. Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>The Debtor is a specific agency or department of the Commonwealth of Puerto Rico |

| 7. | Do you supply goods and / or services to the government?<br><br>¿Proporciona bienes y / o servicios al gobierno? | ☑ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

| 2. | Has this claim been acquired from someone else?<br><br>¿Esta reclamación se ha adquirido de otra persona? | ☑ No / No<br>☐ Yes. From whom?<br>Sí. ¿De quién? _____ | |
|---|---|---|---|

**3.** Where should notices and payments to the creditor be sent?

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

¿A dónde deberían enviarse las notificaciones al acreedor?

Norma federal del procedimiento de quiebra (FRBP, por sus siglas en inglés) 2002(g)

| Where should notices to the creditor be sent?<br>¿A dónde deberían enviarse las notificaciones al acreedor? | Where should payments to the creditor be sent? (if different)<br>¿A dónde deberían enviarse los pagos al acreedor? (En caso de que sea diferente) |
|---|---|
| See attachment<br>Name / Nombre | Lehman Brothers Special Financing Inc.<br>Name / Nombre<br>c/o Kristine Dickson, Lehman Brothers Holdings Inc. |
| Number / Número    Street / Calle | 277 Park Avenue, 46th Floor<br>Number / Número    Street / Calle |
| City / Ciudad    State / Estado    ZIP Code / Código postal | New York, New York  10172<br>City / Ciudad    State / Estado    ZIP Code / Código postal |
| Contact phone / Teléfono de contacto | 646-285-9000<br>Contact phone / Teléfono de contacto |
| Contact email / Correo electrónico de contacto | kristine.dickson@lehmanholdings.com<br>Contact email / Correo electrónico de contacto |

| 4. | Does this claim amend one already filed?<br><br>¿Esta reclamación es una enmienda de otra presentada anteriormente? | ☑ No / No<br>☐ Yes.  Claim number on court claims registry (if known) _____<br>Sí.  Número de reclamación en el registro de reclamaciones judiciales (en caso de saberlo)_____<br>Filed on / Presentada el _____ (MM /DD/YYYY) / (DD/MM/AAAA) |
|---|---|---|
| 5. | Do you know if anyone else has filed a proof of claim for this claim?<br><br>¿Sabe si alguien más presentó una evidencia de reclamación para esta reclamación? | ☑ No / No<br>☐ Yes. Who made the earlier filing?<br>Sí.  ¿Quién hizo la reclamación anterior?_____ |

**Part 2 / Parte 2:**  Give Information About the Claim as of the Petition Date
Complete toda la información acerca de la reclamación desde la fecha en la que se presentó el caso.

| 6. | Do you have a claim against a specific agency or department of the Commonwealth of Puerto Rico?<br><br>¿Tiene una reclamación en contra de algún organismo o departamento específico del Estado Libre Asociado de Puerto Rico? | ☐ No / No<br>☑ Yes. Identify the agency or department and contact name. (A list of Commonwealth of Puerto Rico agencies and departments is available at: https://cases.primeclerk.com/puertorico/.)<br>Sí. Identifique el organismo o departamento y nombre del representante. (Una lista de agencias y departamentos del Estado Libre Asociado de Puerto Rico está disponible en: https://cases.primeclerk.com/puertorico/).<br><br>The Debtor is a specific agency or department of the Commonwealth of Puerto Rico<br>or department of the Commonwealth |
|---|---|---|
| 7. | Do you supply goods and / or services to the government?<br><br>¿Proporciona bienes y / o servicios al gobierno? | ☑ No / No<br>☐ Yes. Provide the additional information set forth below / Sí. Proporcionar la información adicional establecida a continuación:<br><br>Vendor / Contract Number | Número de proveedor / contrato: _____<br><br>List any amounts due after the Petition Date (listed above) but before June 30, 2017:<br>Anote la cantidad que se le debe después de la fecha que se presentó el caso (mencionados anteriormente), pero antes del 30 de junio de 2017  $ _____ |

| | |
|---|---|
| 8.  How much is the claim?<br><br>¿Cuál es el importe de la reclamación? | $ _See Attachment_ . **Does this amount include interest or other charges?**<br>¿Este importe incluye intereses u otros cargos?<br>❑ No / No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other<br> charges required by Bankruptcy Rule 3001(c)(2)(A).<br> Sí. Adjunte un balance con intereses detallados, honorarios,<br> gastos u otros cargos exigidos por la Norma de Quiebras<br> 3001(c)(2)(A). |

| | |
|---|---|
| 9. What is the basis of the claim?<br><br>¿Cuál es el fundamento de la reclamación? | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). Limit disclosing information that is entitled to privacy, such as health care information.<br><br>Por ejemplo: Venta de bienes, préstamo de dinero, arrendamiento, prestación de servicios, lesiones personales u homicidio culposo, o tarjetas de crédito. Adjunte copias editadas de cualquier documento que respalde la reclamación conforme a lo exigido por la Norma de Quiebras 3001(c). Limite la divulgación de información que reúne los requisitos para ser tratada con privacidad, tal como información sobre atención médica.<br><br>_See Attachment_ |

| | |
|---|---|
| 10. Is all or part of the claim secured?<br><br>¿La reclamación está garantizada de manera total o parcial? | ☑ No / No<br>❑ Yes. The claim is secured by a lien on property.<br> Sí. La reclamación está garantizada por un derecho de retención sobre un bien.<br><br> **Nature of property / Naturaleza del bien:**<br> ❑ Motor vehicle / Vehículos<br><br> ❑ Other. Describe:<br>  Otro. Describir: _____<br><br> **Basis for perfection / Fundamento de la realización de pasos adicionales:** _____<br> _____<br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br> Adjunte copias editadas de documentos, si los hubiere, que demuestre la realización de pasos adicionales para hacer valer un derecho de garantía (por ejemplo, una hipoteca, un derecho de retención, un certificado de propiedad, una declaración de financiamiento u otro documento que demuestre que se ha presentado o registrado un derecho de retención.<br><br> **Value of property / Valor del bien:**  $_____<br> **Amount of the claim that is secured /**<br> Importe de la reclamación que está garantizado: $_____<br><br> **Amount of the claim that is unsecured /**<br> Importe de la reclamación que no está garantizado: $_____<br> (The sum of the secured and unsecured amounts should match the amount in line 7.)<br> (La suma del importe garantizado y no garantizado debe coincidir con el importe de la línea 7.)<br><br> **Amount necessary to cure any default as of the Petition Date /**<br> Importe necesario para compensar toda cesación de pago a la fecha que se presentó el caso : $_____<br> _____<br><br> **Annual Interest Rate** (on the Petition Date)<br> Tasa de interés anual (cuando se presentó el caso)_____%<br> ❑ Fixed / Fija<br> ❑ Variable / Variable |

| | |
|---|---|
| 11. Is this claim based on a lease?<br><br>¿Esta reclamación está basada en un arrendamiento? | ☑ No / No<br><br>❑ Yes. Amount necessary to cure any default as of the Petition Date.<br> Sí. Importe necesario para compensar toda cesación de pago a partir de la que se presentó el caso$ _____ |

| | |
|---|---|
| **12. Is this claim subject to a right of setoff?**<br><br>¿La reclamación está sujeta a un derecho de compensación? | ☑ No / No<br><br>☐ Yes. Identify the property /<br>Sí. Identifique el bien: _____ |
| **13. Is all or part of the claim entitled to administrative priority pursuant to 11 U.S.C. § 503(b)(9)?**<br><br>¿La reclamación, total o parcial, cumple los requisitos para ser tratada como prioridad administrativa conforme al Título 11 § 503(b)(9) del U.S.C.?** | ☑ No / No<br><br>☐ Yes. **Indicate the amount of your claim arising from the value of any goods received   $_____**<br>**by the debtor within 20 days before the Petition Date in these Title III case(s), in which the goods have been sold to the debtor in the ordinary course of such debtor's business. Attach documentation supporting such claim.**<br><br>Sí. Indique el importe de la reclamación que surge del valor de cualquier bien recibido por el deudor dentro de los 20 días anteriores a la fecha de inicio en estos casos del Título III, en el que los bienes se han vendido al deudor en el transcurso normal de los negocios del deudor. Adjunte la documentación que respalda dicha reclamación. |

| **Part 3 / Parte 3:** | **Sign Below / Firmar a continuación** |
|---|---|

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**La persona que complete esta evidencia de reclamación debe firmar e indicar la fecha. FRBP 9011(b).**

Si presenta esta reclamación de manera electrónica, la FRBP 5005(a)(2) autoriza al tribunal a establecer normas locales para especificar qué se considera una firma.

*Check the appropriate box / Marque la casilla correspondiente:*

☐ I am the creditor. / Soy el acreedor.

☑ I am the creditor's attorney or authorized agent. / Soy el abogado o agente autorizado del acreedor.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004. / Soy el síndico, el deudor o su agente autorizado. Norma de quiebra 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005. / Soy el garante, fiador, endosante u otro codeudor. Norma de quiebra 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

Comprendo que una firma autorizada en esta *Evidencia de reclamación* se considera como un reconocimiento de que al calcular el importe de la reclamación, el acreedor le proporcionó al deudor crédito para todo pago recibido para saldar la deuda

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

He leído la información en esta *Evidencia de reclamación* y tengo motivos razonables para suponer que la información es verdadera y correcta.

I declare under penalty of perjury that the foregoing is true and correct. / Declaro bajo pena de perjurio que lo que antecede es verdadero y correcto.

Executed on date / Ejecutado el ___05/25/2018____ (MM/DD/YYYY) / (DD/MM/AAAA)

Signature / Firma   *Thomas E. Hommel*

Print the name of the person who is completing and signing this claim / Escriba en letra de imprenta el nombre de la persona que completa y firma esta reclamación:

| Name | Thomas | E. | Hommel |
|---|---|---|---|
| | First name / Primer nombre | Middle name / Segundo nombre | Last name / Apellido |

Title / Cargo    Senior Vice President

Company / Compañía    Lehman Brothers Holdings Inc., as Plan Administrator for Lehman Brothers Special Financing Inc.

Identify the corporate servicer as the company if the authorized agent is a servicer.
Identifique al recaudador corporativo como la compañía si el agente autorizado es un recaudador.

| Address / Dirección | 277 Park Avenue, 46th Floor | |
|---|---|---|
| | Number / Número   Street / Calle | |
| | New York | New York  10172 |
| | City / Ciudad | State / Estado   ZIP Code / Código postal |

Contact phone / Teléfono de contacto 646-285-9000   Email / Correo electrónico thomas.hommel@lehmanholdings.com

In re Financial Oversight and Management Board for Puerto Rico, as Representative for the Puerto Rico Sales Tax Financing Corporation (Case No. 17-bk-03284 (LTS))

## ATTACHMENT TO PROOF OF CLAIM FORM

| | |
|---|---|
| Debtor and Case Number: | Puerto Rico Sales Tax Financing Corporation, |
| | Case No. 17-bk-03284 (LTS) |
| Claimant: | Lehman Brothers Special Financing Inc. |
| Claim Amount: | Claim is contingent and unliquidated and relates to an |
| | executory contract that has been neither assumed or |
| | rejected. |

This attachment is incorporated into the proof of claim form to which it is attached (the "Claim Form"). All capitalized terms used but not defined herein have the meanings given them at the heading of this Attachment, in the Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof [ECF No. 2521 in Case No. 17-bk-03283 (LTS)] (the "Bar Date Order") or under the Agreement (as defined below), as applicable.

This proof of claim is filed by Claimant, by and through Lehman Brothers Holdings Inc., as Plan Administrator under Claimant's own confirmed Chapter 11 plan. Claimant, the Debtor and The Bank of New York, as Trustee, are parties to that certain Debt Service Deposit Agreement dated as of July 1, 2008 (as amended, supplemented and otherwise modified from time to time, the "Agreement"), which is attached hereto as Exhibit 1. The Agreement has yet to be assumed or rejected and Claimant accordingly hereby files this claim as a contingent and unliquidated one only.

Claimant reserves the right (i) to withdraw, amend, clarify, modify or supplement this Claim, including to specify rejection damages under Paragraph 3(b) of the Bar Date Order;

In re Financial Oversight and Management Board for Puerto Rico, as Representative for the Puerto Rico Sales Tax Financing Corporation (Case No. 17-bk-03284 (LTS))

(ii) to assert additional claims (including, without limitation, additional administrative expense claims (including, without limitation, claims arising from post-petition dealings, activity, torts etc. of the Debtor), claims for which a bar date has not yet been set, secured claims and/or general unsecured claims); and (iii) to assert additional grounds for its claims against the Debtor. Claimant also reserves all rights accruing to it or its affiliates against the Debtor or its estate, and the submission of this Claim is not intended to be and shall not be construed as (a) an election of remedies or (b) a waiver or limitation of any rights of Claimant or its affiliates.  In addition, Claimant reserves the right to supplement this Claim with relevant documents to the extent necessary.  Furthermore, Claimant reserves the right to withdraw this Claim for any reason whatsoever.  In addition, Claimant reserves all rights and remedies against affiliates of the Debtor or any other third parties.

This Claim shall not be deemed to be a waiver of Claimant's right (i) to trial by jury in any proceeding so triable in this case or any case, controversy, or proceeding related to this case (to the extent such right has not otherwise been waived), or (ii) to any other rights, claims, actions, defenses, setoffs, or recoupments to which Claimant is or may be entitled, in law or in equity, all which rights, claims, actions, defenses, setoffs, and recoupments Claimant expressly reserves.  To the extent that the Debtor has made or makes any claims against Claimant, Claimant reserves its set-off rights, such that all or part of the Claim may be secured to the extent of such set-off rights.

ALL NOTICES WITH RESPECT TO THIS CLAIM SHOULD BE SENT TO:

Lehman Brothers Holdings Inc., as Plan Administrator for
    Lehman Brothers Special Financing Inc.
277 Park Avenue, 46th Floor
New York, New York  10172

A-2

In re Financial Oversight and Management Board for Puerto Rico, as Representative for the Puerto Rico Sales Tax Financing Corporation (Case No. 17-bk-03284 (LTS))

Attention:     Abhishek Kalra
Telephone:   646-285-9000

With a copy to:

Jones Day
250 Vesey Street
New York, New York  102801
Attention:     Locke R. McMurray
Telephone:   212-326-3939

**EXHIBIT 1**

**Debt Service Deposit Agreement**

Execution Copy

[COFINA Bonds]

## DEBT SERVICE DEPOSIT AGREEMENT

This DEBT SERVICE DEPOSIT AGREEMENT (this "Agreement"), dated as of July 1, 2008 by and among THE BANK OF NEW YORK, as trustee under the Resolution (the "Trustee"), PUERTO RICO SALES TAX FINANCING CORPORATION (the "Issuer") and LEHMAN BROTHERS SPECIAL FINANCING INC., a Delaware corporation ("Lehman").

WHEREAS the Issuer has previously issued the Bonds referred to below, which are payable from Pledged Property (as defined in the Resolution referred to below);

WHEREAS each Pledged Property is deposited with the Trustee pursuant to the Resolution referred to below;

WHEREAS the Issuer wishes to invest moneys held by the Trustee from time to time pursuant to this Agreement;

WHEREAS Lehman and the Puerto Rico Public Finance Corporation (the "Prior Issuer") have previously entered into the Prior Agreements (as defined below); *

WHEREAS certain of the bonds which were the subject of the Prior Agreements have been redeemed, defeased, refunded or otherwise pre-funded, resulting in diminished cash flows thereunder; and

WHEREAS the Issuer is an independent governmental instrumentality of the Commonwealth of Puerto Rico newly created under Act No. 91 of the Legislative Assembly of Puerto Rico, approved May 13, 2006, as amended by Act No. 291 approved December 26, 2006 and by Act No. 56 approved July 6, 2007 ("Act 91"), for the purpose, among others, of financing the payment, retirement or defeasance of certain debt obligations of the Prior Issuer outstanding as of June 30, 2006; and

WHEREAS in consideration of the Prior Agreements, Lehman made upfront fee payments to the Prior Issuer and Lehman, the Issuer and the Trustee are entering into this Agreement in lieu of the payment of amounts which would otherwise be due to Lehman by the Prior Issuer in connection with the reductions of the cash flows under the Prior Agreements; and

NOW, THEREFORE, the parties agree as follows:

SECTION 1.   DEFINITIONS

For purposes of this Agreement, unless the context clearly indicates otherwise, the words and terms defined in this Section 1 have the respective meanings given to them herein:

"Bonds" means the Issuer's Sales Tax Revenue Bonds, Series 2007A, Series 2007B and Series 2007C.

"Bond Payment Date" means with respect to each Deposit Date, such date identified as a "Bond Payment Date" on Exhibit A-1 hereof, unless such date is not a Business Day, in which case "Bond Payment Date" means the immediately succeeding Business Day provided that in determining whether

COFINA Bonds
NYK 1164867-4 071379.0011

---

any such date is a Business Day no effect shall be given to clause (c) or (d) of the definition of Business Day.

"Business Day" means any day other than (a) a Saturday or Sunday, (b) a day on which the principal corporate trust office of the Trustee is authorized or required by law to close, (c) a day on which banking institutions in the City of New York are authorized or required by law to close, or (d) a day on which any Qualified Securities which may be delivered hereunder are not subject to delivery in the City of New York.

"Closing Date" means July 1, 2008.

"Coupon Payment" means, for any Qualified Security, a payment of interest which is due to be paid thereon prior to the scheduled maturity of such Qualified Security.

"Dealer" means a leading dealer in the relevant markets selected by Lehman in good faith (a) from among dealers of the highest credit standing which satisfy all the criteria that Lehman applies generally at the time in deciding whether to offer or to make an extension of credit and (b) to the extent practicable, from such dealers having an office in the same city.

"Debt Service Fund" means the fund created pursuant to Section 502 of the Resolution and designated thereunder as the Debt Service Account.

"Default Rate" means a rate per annum equal to the lesser of (a) Federal Funds Rate plus 1% per annum and (b) the maximum rate permitted by law, calculated on the basis of daily compounding.

"Delivery Notice" means a notice substantially in the form of Exhibit E or on such other form as provided by the Qualified Dealer and is reasonably acceptable to the Trustee.

"Deposit Amount" means for each Deposit Date the amount set forth in Exhibit A-1 hereof.

"Deposit Date" means each date identified as a "Deposit Date" on Exhibit A-1 hereof, unless such date is not a Business Day, in which case "Deposit Date" means the immediately succeeding Business Day.

"Differential" means the amount, if any, by which the Maturity Amount of any Qualified Security delivered hereunder exceeds the Market Value thereof.

"Eligible Securities" means the securities identified in Exhibit F.

"Federal Funds Rate" means for any day, the rate per annum (rounded upwards, if necessary, to the nearest 1/100th of 1%) equal to the weighted average of the rates on overnight Federal funds transactions with members of the Federal Reserve System arranged by Federal funds brokers on such day, as published by The Wall Street Journal on the Business Day next succeeding such day, and if such day is not a Business Day, the Federal Funds Rate for such day shall be such rate on such transactions on the next preceding Business Day as so published on the next succeeding Business Day.

"First Supplemental Bond Resolution" means the First Supplemental Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, by the Issuer.

"Illegality" means the adoption of, or any change in, any applicable law after the date on which this Agreement is entered into, or the promulgation of, or any change in, the interpretation, by any court,

COFINA Bonds
NYK 1164867-4 071379.0011
2

---

tribunal or regulatory authority with competent jurisdiction of any applicable law after such date, as a result of which it becomes unlawful for the Issuer to perform any absolute or contingent obligation to make a payment or delivery or to receive a payment or delivery in respect of this Agreement or to comply with any other material provision of this Agreement.

"Incipient Illegality" means (a) the enactment by any legislative body with competent jurisdiction over the Issuer of legislation which, if adopted as law, would render unlawful the performance by the Issuer of any absolute or contingent obligation to make a payment or delivery or to receive a payment or delivery in respect of this Agreement or the compliance by the Issuer with any other material provision of this Agreement, (b) any assertion in any proceeding or forum in respect of the Issuer or in respect of any entity located or organized under the laws of the Commonwealth of Puerto Rico or the laws of the United States of America to the effect that performance under this Agreement or similar agreements is unlawful or (c) the occurrence with respect to the Issuer of any event that constitutes an Illegality.

"Issuer Event of Default" means the occurrence of an event specified in Section 7.2.

"Loss Amount" has the meaning specified in Section 7.5 hereof.

"Market Value" means with respect to any Qualified Security, the market value thereof (including accrued interest thereon) as specified by the Qualified Dealer delivering that security, provided that the Market Value of any Qualified Security shall in no event exceed the Maturity Amount thereof.

"Maturity Amount" means, with respect to any Qualified Security, the amount, payable in cash, representing the principal and interest due thereon on or prior to its maturity date.

"Permitted Investment" means "Investment Obligations" as such term is defined in the Resolution.

"Pledged Property" has the meaning given to such term in the Resolution.

"Prior Agreements" means, collectively, (i) the Debt Service Deposit Agreement, dated as of June 6, 2005, by and among the Trustee, Puerto Rico Finance Corporation and Lehman with respect to the Act 164 Bonds, (ii) the Debt Service Deposit Agreement, dated as of June 6, 2005, by and among the Banco Santander Puerto Rico, Puerto Rico Finance Corporation and Lehman with respect to the Treasury Bonds, (iii) the Debt Service Deposit Agreement, dated as of June 6, 2005, by and among the Banco Popular Puerto Rico, Puerto Rico Finance Corporation and Lehman with respect to the OMEP Bonds, (iv) the Debt Service Deposit Agreement, dated as of June 6, 2005, by and among the Banco Santander Puerto Rico, Puerto Rico Finance Corporation and Lehman with respect to the Maritime Shipping Bonds, (v) the Debt Service Deposit Agreement, dated as of June 6, 2005, by and among the U.S. Bank Trust National Association, Puerto Rico Finance Corporation and Lehman with respect to the 2004 Refunding Bonds and (vi) the Debt Service Deposit Agreement, dated as of June 6, 2005, by and among the Banco Popular Puerto Rico, Puerto Rico Finance Corporation and Lehman with respect to the AFASS Bonds.

"Qualified Dealer" for any Deposit Date means Lehman Brothers Inc., its successors or assigns, or any other dealer in Eligible Securities selected by Lehman.

"Qualified Securities" for any Deposit Date means Eligible Securities which shall (i) mature not later than the related Bond Payment Date and (ii) have a Maturity Amount which does not exceed the related Deposit Amount.

COFINA Bonds
NYK 1164867-4 071379.0011
3

---

"Resolution" means, collectively, the Sales Tax Revenue Bond Resolution, the First Supplemental Bond Resolution, the Second Supplemental Bond Resolution and the Third Supplemental Bond Resolution.

"Resolution Acceptance" means, collectively, each instrument of acceptance executed and delivered by the Trustee in connection with the Resolution.

"Sales Tax Revenue Bond Resolution" means the Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, by the Issuer.

"Second Supplemental Bond Resolution" means the Second Supplemental Sales Tax Revenue Bond Resolution, adopted on July 17, 2007, by the Issuer.

"Specified Indebtedness" means any obligation of the Issuer (whether present or future, contingent or otherwise, as principal or surety or otherwise) in respect of borrowed money payable from the Pledged Property.

"Termination Amount" means an amount, as determined by Lehman reasonably and in good faith on the basis of the arithmetic mean of quotations from at least three Dealers, of the amount, if any, that each such Dealer would require Lehman to pay to the Dealer in consideration of such Dealer entering into an agreement with Lehman which would have the effect of preserving for Lehman the economic equivalent of its rights under this Agreement commencing on the termination date of this Agreement, provided, however, that:

(i)     if more than three quotations are provided, the Termination Amount will be the arithmetic mean of such quotations, without regard to the quotations having the highest and lowest values.

(ii)    if exactly three quotations are provided, the Termination Amount will be the quotation remaining after disregarding the highest and lowest quotations,    ●

for purposes of clauses (i) and (ii), if more than one quotation has the same highest value or lowest value, then one of such quotations shall be disregarded, and

(iii)   if Lehman is unable to obtain three such quotations, the Termination Amount shall be the amount, as reasonably determined in good faith by Lehman, of its total losses and costs in connection with a termination of this Agreement, including any loss of bargain, cost of funding or, at the election of Lehman but without duplication, any loss or cost incurred as a result of its terminating, liquidating, obtaining or reestablishing any hedge or related trading position, and

provided further, however, that in any event the Termination Amount shall also include (without duplication) (a) losses and costs in respect of any payment required to have been made (satisfying satisfaction of each applicable condition precedent) on or before the date on which this Agreement shall be terminated or deemed terminated as provided herein and not made and (b) if such Termination Amount is being paid in connection with a termination of this Agreement following a Trustee or an Issuer Event of Default, any incidental costs and expenses incurred by Lehman in connection with such termination and the enforcement of its rights hereunder (including reasonable attorneys' fees). Any determination of the Termination Amount by Lehman shall be conclusive and binding on the parties hereto absent manifest error.

"Third Supplemental Bond Resolution" means the Third Supplemental Sales Tax Revenue Bond Resolution, adopted on December 18, 2007, by the Issuer.

COFINA Bonds
NYK 1164867-4 071379.0011
4

"Trustee Event of Default" means the occurrence of an event specified in Section 7.1.

SECTION II.   PURCHASE AGREEMENT

Section 2.1.   Purchase and Sale of Qualified Securities.

(a) In consideration of the reduction of the cash flows under the Prior Agreements and in lieu of the payment to Lehman of any amounts which would otherwise be due under the Prior Agreements in connection therewith, Lehman may, at its option, cause a Qualified Dealer to deliver to the Trustee, on any Deposit Date, in accordance with the delivery requirements of Section 2.2 hereof, Qualified Securities selected by Lehman or the Qualified Dealer.

(b) If Lehman caused a Qualified Dealer to deliver Qualified Securities, the Trustee shall, out of funds available in the applicable Debt Service Fund, at the time of the delivery of such Qualified Securities, purchase such Qualified Securities and pay to the Qualified Dealer or Lehman, as applicable, in accordance with Section 2.2(b) hereof, an amount equal to the Maturity Amount thereof.

(c) Neither Lehman nor the Qualified Dealer is required to own any Qualified Securities at the time of Lehman's execution of this Agreement or at any time prior to the respective Deposit Dates thereof. The Qualified Securities, and the interest thereon, will inure to the benefit of the Trustee, be the sole property of the owner thereof, and any profit or loss with respect to the holding or sale of any Qualified Securities delivered hereunder, even if purchased and identified to fulfill Lehman's obligations under this Agreement, shall, prior to such delivery, be for the sole account of the owner thereof.

Section 2.2.   Delivery Payment.

(a) Lehman shall cause the Qualified Dealer to send a Delivery Notice to the Trustee to the account specified in Section 9.1 hereof, in such manner as at the time is generally acceptable for delivery of Qualified Securities. All Qualified Securities delivered hereunder shall be delivered to the Trustee on a "delivery versus payment" basis.

(b) (i)   Lehman shall cause the Qualified Dealer to effect the delivery of any Qualified Securities. The Trustee may conclusively rely upon any Delivery Notice and may presume that any securities Lehman delivers under this Section II constitute Qualified Securities delivered by a Qualified Dealer. The Trustee may conclusively rely on the specification by the Qualified Dealer of the Market Value and the Maturity Amount of a Qualified Security.

(ii)   Concurrently with the delivery of any Qualified Securities, unless otherwise directed by Lehman in writing, the Trustee shall, subject to clause (iii) below, pay the Qualified Dealer delivering such Qualified Securities, or its individual capacity, the Market Value thereof, and to the Qualified Dealer as agent for Lehman, the Differential, if any.

(iii)   Lehman may in the Delivery Notice, direct the Trustee to pay (a) to the Qualified Dealer, the Market Value of any Qualified Securities delivered to the Trustee hereunder, and (b) to Lehman, the Differential, if any. Any such payment to Lehman shall be at Lehman's account as set forth in the Delivery Notice.

COFINA Bonds
NYK 164867-4 071379.0011

5

---

(iv)   All payments to be made hereunder (either to Lehman or the Qualified Dealer) shall be made in immediately available funds from the applicable Debt Service Fund by means of a bank or Federal funds wire as specified in Section 9.1 hereof.

(c) The Trustee and the Issuer have been advised by Lehman that the Maturity Amount for any Qualified Security delivered hereunder shall, in almost all cases, exceed the Market Value thereof.

Section 2.3.   Subsequent Deliveries. If any Qualified Securities delivered by a Qualified Dealer pursuant to Section 2.1 hereof (a) mature prior to the Bond Payment Date for which such Qualified Securities were delivered, or (b) have a Coupon Payment, Lehman shall have the right, upon at least two Business Days' prior written notice to the Trustee in the form of the Delivery Notice, to cause a Qualified Dealer to deliver to the Trustee, at any time on or after the maturity date of such Qualified Securities (or, as applicable, on or after the interest payment date of such Coupon Payment) but prior to the date which is one Business Day before such Bond Payment Date, other Qualified Securities, provided that the Maturity Amount thereof does not exceed the Maturity Amount of the securities which have so matured (or as applicable, the amount of the Coupon Payment). Any such deliveries by the Qualified Dealer shall conform to the requirements of Section 2.2(a) hereof. Upon the delivery by the Qualified Dealer of such Qualified Securities, the Trustee shall pay the Maturity Amount thereof in the manner required by Section 2.2(b)(iv) hereof.

Section 2.4.   Late Delivery; Failure to Deliver.

(a) If Lehman does not cause a Qualified Dealer to deliver Qualified Securities on any Deposit Date or the securities which are so delivered have a Maturity Amount which is less than the Deposit Amount, Lehman may, at any time after such Deposit Date and on or prior to the Business Day immediately preceding the related Bond Payment Date, by delivering a Delivery Notice to the Trustee as provided in Section 2.2 hereof, direct the Trustee to purchase (in which case the Trustee shall purchase) Qualified Securities with any amounts not invested in Qualified Securities on such Deposit Date. On any date the Deposit Amount has not been fully applied to purchase Qualified Securities as provided herein, at any time on or after 4:00 P.M., New York City time, on such date, the Trustee may invest such uninvested funds in overnight investments otherwise permitted under the Resolution. The Trustee will not invest any Deposit Amounts not applied to purchase Qualified Securities on any Deposit Date except as expressly provided in this Section 2.4.

(b) No failure on Lehman's part to cause a Qualified Dealer to deliver Qualified Securities hereunder shall terminate or affect Lehman's right to cause future sales of Qualified Securities in accordance with this Agreement.

Section 2.5.   Direction by Issuer to Trustee. The Issuer hereby irrevocably instructs the Trustee and the Trustee agrees to take the actions and to make the purchases required hereby.

SECTION III.   DEFEASANCE OR REFUNDING

Section 3.1   Defeasance or Refunding.

(a) The Issuer may, by giving Lehman at least fifteen (15) Business Days' prior notice, but without the consent of Lehman redeem, defease, repurchase, or refund any of the Bonds, either in whole or in part, as provided in the Resolution, provided that if the Issuer takes any such action, the Issuer shall, subject to paragraph (c) of this Section, pay or cause the Trustee to pay to Lehman in immediately available funds from the applicable Debt Service Fund the Termination Amount (calculated with respect to a partial termination solely on the basis of the terminated portion hereof) by no later than the

COFINA Bonds
NYK 164867-4 071379.0011

6

---

later of (x) one Business Day after receipt of notice of the Termination Amount from Lehman or (b) the date of such redemption, defeasance, repurchase or refunding. Such payment shall be made in immediately available funds, to or at the direction of Lehman. Notwithstanding anything else herein to the contrary, with respect to any partial termination, this Agreement shall continue in full force and effect with respect to such portion of this Agreement that has not been terminated.

(b) Immediately upon payment of the Termination Amount (calculated with respect to a partial termination solely on the basis of the terminated portion hereof) in accordance with this Section 3.1 (i) this Agreement shall terminate with respect to such terminated portion and (ii) the parties hereto shall treat such amendments of this Agreement as are necessary to have this Agreement pertain to the remaining Deposit Amounts, Deposit Dates and Bond Payment Dates. The Issuer agrees that it shall not redeem, defease, refund or repurchase the Bonds, either in whole or in part, unless the Issuer shall have sufficient funds to pay any Termination Amount which may be due as provided herein and the amount of any such Termination Amount is paid to Lehman prior to or upon any such redemption, defeasance, refunding or repurchase of the Bonds.

(c) If pursuant to clause (a) above this Agreement would be terminated, either in whole or in part, in connection with the issuance of bonds to refund any of the Bonds (the "Refunding Bonds") and a Termination Amount (calculated with respect to a partial termination solely on the basis of the terminated portion hereof) would be payable to Lehman, the Issuer may, by written notice to Lehman, request that Lehman continue this Agreement and have such Agreement apply to the Refunding Bonds and to such of the Bonds as shall remain outstanding after the issuance of the Refunding Bonds. Lehman agrees that if it receives such a request, it shall agree, to so continue this Agreement with respect to the Refunding Bonds and the Bonds remaining outstanding after such refunding, provided that:

(i)   Lehman receives such request (together with all relevant details relating thereto) at least 30 days in advance of the issuance of the Refunding Bonds;

(ii)   on or prior to the date any Bonds are to be refunded (the "Refunding Date") the Issuer and the trustee or similar fiduciary, if any, of the Refunding Bonds enter into such amendments of this Agreement with Lehman (the "Amended Agreement") as are necessary to have this Agreement pertain to the deposit amounts, deposit dates and bond payment dates applicable to the Refunding Bonds and to any Bonds which remain outstanding after giving effect to such refunding (the "Amended Cash Flows");

(iii)   if, as determined on the Refunding Date, the Termination Amount payable to Lehman with respect to the Deposit Amounts, Deposit Dates and Bond Payment Dates that would be remaining hereunder on such date, assuming that the Bonds were not then refunded (the "Original Cash Flows"), would be greater than the Termination Amount payable to Lehman for the termination of Lehman's rights with respect to the Amended Cash Flows on such date (for purposes of this paragraph, the "Termination Differential"), the Issuer shall on or before the Refunding Date pay to Lehman the Termination Differential;

(iv)   the last Deposit Date under the Amended Agreement is no later than the last Deposit Date hereunder;

(v)   the Refunding Bonds are secured by the same security as the security of the Bonds and payable from the same source of revenues from which the Bonds are payable; and

COFINA Bonds
NYK 164867-4 071379.0011

7

---

(vi)   Lehman receives any opinions and other assurances it may reasonably request to assure that the protections afforded it hereunder will continue under the Amended Agreement.

If the conditions described in paragraphs (i), (ii), (iv), and (vi) are satisfied and the Termination Amount that would be payable to Lehman on the Refunding Date for the termination of its rights with respect to the Amended Cash Flows would be greater than the Termination Amount payable to Lehman for the termination of its rights with respect to the Original Cash Flows on such date (for purposes of this paragraph, the "Termination Differential"), Lehman shall, at its option, either pay the Issuer the Termination Differential or retain its rights only with respect to such portion of the Amended Cash Flows the Termination Amount of which would equal the Termination Amount of the Original Cash Flows.

SECTION IV.   REPRESENTATIONS AND WARRANTIES

Section 4.1.   Representations and Warranties. Each of the Issuer and Lehman represents and warrants to the other parties hereto that:

(a) it is duly organized and validly existing under the laws of its jurisdiction, incorporation or establishment;

(b) it has the power to enter into and perform its obligations under this Agreement (including, in the case of the Issuer, to pay the Termination Amount in accordance herewith and to enter into and perform its obligations under the Resolution);

(c) this Agreement has been duly authorized, executed and delivered by it and, assuming the due authorization, execution and delivery hereof by the other parties hereto, constitutes a legal, valid and binding obligation of it enforceable against it in accordance with its terms hereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity regardless of whether enforcement is sought in a proceeding in equity or at law;

(d) its execution and delivery of this Agreement and the performance of its obligations hereunder do not and will not constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under, its charter or by-laws (or equivalent organizational documents or statutory or constitutional provisions), or any other agreement (including, in the case of the Issuer, the Resolution), instrument, law, ordinance, regulation, judgment, injunction or order applicable to it or any of its property;

(e) there is no proceeding pending or threatened against it at law or in equity, or before any governmental instrumentality or in any arbitration, which would materially impair its ability to perform its obligations under this Agreement, and there is no such proceeding pending against it which purports or is likely to affect the legality, validity or enforceability of this Agreement; and

(f) in the case of the Issuer:

(i)   all Deposit Dates, Bond Payment Dates and Deposit Amounts as indicated on Exhibit A-1 of this Agreement are true and correct in all respects;

(ii)   it is not entitled to claim, and shall not assert any claim, with respect to itself or its revenues, assets or property (irrespective of the use or intended use thereof), of immunity on the grounds of sovereignty or similar grounds from suit, jurisdiction of any court, relief by way of injunction,

COFINA Bonds
NYK 164867-4 071379.0011

8

order for specific performance or for recovery of property, attachment of its assets (whether before or after judgment, in aid of execution, or otherwise) and execution or enforcement of any judgment to which it or its revenues or assets or property might otherwise be entitled in any suit, action or proceeding relating to this Agreement in the courts of any jurisdiction, nor may there be attributed to such party or its revenues, assets or property any such immunity (nor shall such attribution be claimed by such party);

(iii)   it has delivered to Lehman its most recent annual audited statement of financial condition and its most recent unaudited statement of financial condition and it has not experienced since the date of its last published financial statement any material adverse change in its business, assets, operations or financial condition;

(iv)   it has not nor does it anticipate that there shall be any occurrence or existence of (1) a default, event of default or other similar condition or event (however described and including any such conditions or events which will become events of default with the passing of time or the giving of notice) in respect of it under one or more agreements or instruments relating to any Specified Indebtedness of it which has resulted in any Specified Indebtedness becoming, or becoming capable at such time of being declared, due and payable under such agreements or instruments, before it would otherwise have been due and payable or (2) a default by it in making one or more payments on the due date thereof under such agreements or instruments (after giving effect to any applicable notice requirement or grace period);

(v)   it is executing this Agreement for authorized business purposes and not for any other purposes, including without limitation, to delay or hinder its creditors;

(vi)   it is solvent and has, and will have after giving effect to this Agreement, sufficient capital to conduct its business and to pay its debts as they become due;

(vii)   it has not experienced any Incipient Illegality with respect to this Agreement;

(viii)   it is not subject to any administrative, governmental or other investigation, special review or order, or pending order or similar event;

(ix)   the Eligible Securities as shown in Exhibit F hereof are Permitted Investments and the deposit of such Eligible Securities into the Debt Service Fund would not violate any applicable law or any agreement applicable to the Issuer; and

(x)   the Eligible Securities are legal for the investment of public funds under the laws of the Commonwealth of Puerto Rico;

(xi)   it has not entered into any agreements providing for the forward delivery of Eligible Securities or for the investment of funds held under the Resolution except for this Agreement;

(xii)   the Resolution has been duly authorized, executed and delivered by it;

(xiii)   the Resolution constitutes its legal, valid and binding obligation, enforceable against it in accordance with the terms thereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity regardless of whether enforcement is sought in a proceeding in equity or at law;

(xiv)   the Resolution is in full force and effect on the date hereof and no amendment, waiver or course of dealing has modified or terminated any of the terms thereof since the original

COFINA Bonds
NYK 1 146154-12 170 0011

9

execution and delivery of the Resolution, except such as may have been delivered to Lehman pursuant to Section 6.1(e) hereof; and

(xv)   no "event of default" or event which would with the passage of time or the giving of notice constitute an event of default has occurred and is continuing under the Resolution.

Section 4.2   Representations and Warranties of the Trustee.   The Trustee represents and warrants to the other parties hereto that:

(a)   it is duly organized and validly existing under the laws of its jurisdiction, incorporation or establishment;

(b)   it has the corporate power to enter into and perform its obligations under this Agreement (including to pay the Termination Amount in accordance herewith and to enter into the Resolution Acceptance and perform its obligations under the Resolution);

(c)   this Agreement has been duly authorized, executed and delivered by it and, assuming the due authorization, execution and delivery hereof by the other parties hereto and the enforceability of this Agreement against the other parties hereto, constitutes a legal, valid and binding obligation of it enforceable against it in accordance with the terms hereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity regardless of whether enforcement is sought in a proceeding in equity or at law;

(d)   its execution and delivery of this Agreement does not violate or conflict with (a) its articles of incorporation or bylaws or (b) any of the applicable laws of the State of New York and the federal laws of the United States of America, in each case under this clause (b) relating to the banking and trust powers and functions of the Trustee;

(e)   the Resolution Acceptance has been duly authorized, executed and delivered by it; and

(f)   assuming the due authorization, execution and delivery of the Resolution by the Issuer and the enforceability of the Resolution against the Issuer, the Resolution Acceptance constitutes the legal, valid and binding obligation of the Trustee, enforceable against it in accordance with the terms thereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity regardless of whether enforcement is sought in a proceeding in equity or at law.

SECTION V.   COVENANTS AND ACKNOWLEDGMENTS

Section 5.1.   Covenants.   (a) Each of Lehman and the Issuer covenants to the other parties to this Agreement that so long as it shall have any obligations under this Agreement it shall:

(i)   maintain in full force and effect all authorizations and agreements of and exemptions, consents, licenses, actions, or approvals by, and all filings with or notices to, any governmental or other authority that are required to be obtained or made by such party with respect to this Agreement and will use all reasonable efforts to obtain or make any that may become necessary in the future;

(ii)   comply in all material respects with all applicable laws, rules, regulations and orders to which it may be subject if failure so to comply could materially impair its ability to perform its obligations under this Agreement;

COFINA Bonds
NYK 1 146154-12 170 0011

10

(iii)   if it is the Issuer, it shall maintain in full force and effect the Resolution and it shall not enter into any amendment or modification of the Resolution which could impair the ability to perform its obligations to Lehman hereunder, except that nothing contained herein shall restrict the Issuer's ability to issue additional bonds under the Resolution.

(b)   The Trustee covenants to the other parties to this Agreement that so long as it shall have any obligation under this Agreement it shall:

(i)   maintain in full force and effect all authorizations and agreements of and exemptions, consents, licenses, actions, or approvals by, and all filings with or notices to, any governmental or other authority that are required to be obtained or made by the Trustee under the laws of the State of New York and the federal laws of the United States (in each case relating to the banking and trust powers and functions of the Trustee) with respect to this Agreement and will use all reasonable efforts to obtain or make any that may become necessary in the future; and

(ii)   comply in all material respects with all applicable laws, rules, regulations and orders of the State of New York and the federal laws of the United States (in each case relating to the banking and trust powers and functions of the Trustee) to which it may be subject if failure so to comply could materially impair its ability to perform its obligations under this Agreement.

Section 5.2.   Role of Lehman; Independent Judgment.   The Issuer acknowledges and agrees and for purposes of subsection (iii) of this Section 5.2 the Trustee acknowledges and agrees, that in connection with its decision to enter into this Agreement and its subsequent negotiation and execution of this Agreement, (i) neither Lehman, nor any of its directors, officers, employees, agents or affiliates (each of the foregoing, including Lehman, a "Lehman Party") has acted as a fiduciary or financial or investment advisor to or agent or other representative of the Issuer; (ii) the Issuer has, to the extent it has deemed necessary, consulted with its own legal, tax, regulatory, accounting, financial and investment advisors in determining the suitability and appropriateness of this Agreement as well as in negotiating the specific terms hereof and has not relied upon any advice from any Lehman Party, with respect to such matters and it understands the terms, conditions and risks of this Agreement and is capable of assuming such risks, and (iii) the terms and conditions of this Agreement have been individually negotiated by the Issuer and the Trustee and are the result of arms-length negotiations among Lehman, the Trustee and the Issuer.

Section 5.3.   No Liability.   Each of the Issuer and the Trustee agrees that no Lehman Party shall be liable or responsible for: (i) the payment of any amounts owing on or with respect to the Bonds; (ii) the Trustee's use or application of any moneys payable to the Trustee hereunder; (iii) any acts or omissions of the Issuer or the Trustee under, or with respect to, the Bonds or the Resolution or any related document; or (iv) determining whether the Issuer or the Trustee is in compliance with any applicable statute, regulation or law, the Bonds, the Resolution or any other related document.

Section 5.4.   Rate of Return.   The Issuer understands that it is foregoing its right to receive investment earnings on the Deposit Amounts deposited into the Debt Service Fund in the future by entering into this Agreement. The parties further acknowledge that neither the Trustee nor the Issuer nor Lehman shall pay any upfront payments to any party hereto in connection with the execution and delivery of this Agreement.

Section 5.5.   Termination Amount.   Each of the Issuer and the Trustee understands that if under any of the circumstances provided herein (including upon the occurrence of a redemption, defeasance, repurchase or refunding of the Bonds on or prior to the last Deposit Date), a Termination Amount would be due Lehman, the size of such Termination Amount will vary depending on market and other variables (including, but not limited to, prevailing interest rates, the time remaining from the

COFINA Bonds
NYK 1 146154-12 170 0011

11

circumstances giving rise to the Termination Amount being due to Lehman until the then expected final Maturity Date, the shape of the yield curve and applicable credit spreads) at the time such Termination Amount is calculated. In certain market conditions the amount of the Termination Amount owed to Lehman by, as applicable, the Trustee or Issuer may exceed the amount of the original fee amounts paid to Lehman in the Prior Agreements.

Section 5.6.   Fees and Commissions.   The Issuer acknowledges that Lehman has not paid any broker's or arrangement fee to the Issuer or the Trustee on the Issuer's behalf.

SECTION VI.   CONDITIONS PRECEDENT

Section 6.1.   Conditions Precedent.   The performance of the obligations of the parties hereunder are conditioned upon satisfaction of the following conditions:

(a)   delivery to Lehman and the Issuer of an opinion of counsel to the Trustee, in the form of Exhibit B;

(b)   delivery to Lehman and the Trustee of an opinion of counsel to the Issuer, in the form of Exhibit D;

(c)   delivery to the Trustee and the Issuer of an opinion of counsel to Lehman, in the form of Exhibit C;

(d)   delivery to Lehman by Issuer of a copy of each official statement for the Bonds;

(e)   delivery to Lehman by the Issuer of a copy of the Resolution;

(f)   delivery to Lehman of a copy of any consent received by the Issuer to enter into this Agreement;

(g)   delivery by the Issuer to the Trustee, with a copy to Lehman, of the direction letter in the form of Exhibit G hereto; and

(h)   delivery to Lehman and the Trustee of a copy of the statutory or regulatory authority pursuant to which the Issuer is authorized to enter into this Agreement and a certified copy of any resolution or resolutions of the Issuer authorizing it with each is authorized to enter into this Agreement.

SECTION VII.   DEFAULTS; TERMINATION

Section 7.1.   Trustee Events of Default.   The occurrence of any of the following events shall constitute a Trustee Event of Default:

(a)   the Trustee shall fail for any reason, other than that the Issuer has failed to deposit the related Deposit Amount, to purchase, at the Maturity Amount therefor, any Qualified Securities delivered by the Qualified Dealer in accordance with this Agreement, provided, that such failure shall not be a Trustee Event of Default if (i) such failure is cured within three (3) Business Days of written notice thereof from Lehman to the Trustee and the Issuer, and (ii) the Trustee or the Issuer, as applicable, promptly pays to Lehman on demand in immediately available funds the Loss Amount pursuant to Section 7.5 hereof, if any;

COFINA Bonds
NYK 1 146154-12 170 0011

12

(b)   the Trustee shall default in the performance of any other covenant or obligation under this Agreement and such default is not cured within five (5) Business Days of written and telephonic notice thereof from Lehman or the Issuer; or

(c)   any representation or warranty of the Trustee contained in this Agreement proves to have been incorrect, false or misleading in any material respect as of the date on which it was made.

Section 7.2.   Issuer Events of Default.   The occurrence of any of the following events shall constitute an Issuer Event of Default:

(a)   the amount in the Debt Service Fund available to purchase Qualified Securities on any Deposit Date is less than the applicable Deposit Amount;

(b)   the Issuer shall default in the performance of any covenant or obligation under, or incorporated by reference in, this Agreement, other than as described in clause (a) above and such default is not cured within five (5) Business Days of notice thereof from Lehman or the Trustee;

(c)   any representation or warranty of the Issuer contained in this Agreement proves to have been incorrect, false or misleading in any material respect as of the date on which it was made;

(d)   the Issuer is dissolved (other than pursuant to a consolidation, amalgamation or merger); (2) becomes insolvent or is unable to pay its debts or fails or admits in writing its inability generally to pay its debts as they become due; (3) makes a general assignment, arrangement or composition with or for the benefit of its creditors; (4) institutes or has instituted against it a proceeding seeking a judgment of insolvency or bankruptcy or any other relief under any bankruptcy or insolvency law or other similar law affecting creditors' rights, or a petition is presented for its winding-up or liquidation, and, in the case of any such proceeding or petition instituted or presented against it, such proceeding or petition (a) results in a judgment of insolvency or bankruptcy or the entry of an order for relief or the making of an order for its winding-up or liquidation or (b) is not dismissed, discharged, stayed or restrained in each case within 30 days of the institution or presentation thereof; (5) has a resolution passed for its winding-up, official management or liquidation (other than pursuant to a consolidation, amalgamation or merger); (6)(x) seeks or becomes subject to the appointment of an administrator, provisional liquidator, conservator, receiver, trustee, custodian or other similar official for it or for all or substantially all its assets or (b)(f) there shall be appointed or designated with respect to it, an entity such as an organization, board, commission, authority, agency or body to monitor, review, oversee, recommend or declare a financial emergency or similar state of financial distress with respect to it or (II) there shall be declared or introduced or proposed for consideration by it or by any legislative or regulatory body with competent jurisdiction over it, the existence of a state of financial emergency or similar state of financial distress in respect of it; (7) has a secured party take possession of all or substantially all its assets or has a distress, execution, attachment, sequestration or other legal process levied, enforced or sued on or against all or substantially all its assets and such secured party maintains possession, or any such process is not dismissed, discharged, stayed or restrained, in each case within 30 days thereafter; (8) causes or is subject to any event with respect to it which, under the applicable laws of any jurisdiction, has an analogous effect to any of the events specified in clauses (1) to (7) (inclusive); or (9) takes any action in furtherance of, or indicating its consent to, approval of, or acquiescence in, any of the foregoing acts;

(e)   the Issuer consolidates or amalgamates with, or merges with or into, or transfers all or substantially all its assets to, another entity (or, without limiting the foregoing, if an entity such as an organization, board, commission authority, agency or body succeeds to the principal functions of, or powers and duties granted, to the Issuer) and, at the time of such consolidation, amalgamation, merger or

COFINA Bonds
NY1:\1468714\07\379.0011

13

transfer either (i) the resulting or surviving or transferee entity fails to assume all the obligations of the Issuer, as applicable, under this Agreement or by operation of law or pursuant to an agreement reasonably satisfactory to Lehman or (ii) the creditworthiness of the resulting, surviving or transferee entity is materially weaker than that of the Issuer;

(f)   a Trustee Event of Default has occurred and is continuing; or

(g)   the Issuer shall default with respect to the Bonds and any of any Specified Indebtedness.

Section 7.3.   Remedies Upon Occurrence of a Trustee Event of Default.   Upon the occurrence of a Trustee Event of Default, Lehman shall have the right to:

(a)   cause a Qualified Dealer to redeliver to the Trustee or sell to any other purchaser the Qualified Securities which were to be delivered in connection with any Deposit Date and which have not theretofore been delivered to and purchased by the Trustee and, subject to Section 8.2, make demand for the payment of its losses (calculated in accordance with Section 7.5) arising out of the Trustee's failure to purchase such Qualified Securities; and/or

(b)   immediately terminate this Agreement by giving notice thereof to the Trustee with a copy to Issuer and, subject to Section 8.2, make demand upon the Trustee for the payment of the Termination Amount; provided, however, (i) if such Trustee Event of Default arises under Section 7.1(a), Lehman shall not terminate this Agreement unless the Trustee has failed, on two (2) or more prior dates within the previous 24 months, to purchase, as the Maturity Amount therefore, any Qualified Securities delivered by the Qualified Dealer in accordance with this Agreement and, (ii) Lehman shall not terminate this Agreement if, no later than sixty (60) days from such Trustee Event of Default, a successor Trustee has been appointed by the Issuer; provided further however, if such Trustee Event of Default has occurred pursuant to Section 7.1(a), the Trustee, subject to Section 8.2 hereof, shall pay the Loss Amount to Lehman, as calculated pursuant to Section 7.5 hereof for such period up to but excluding the date on which the appointment of such successor trustee becomes effective; and/or   ●

(c)   if the Trustee fails to pay the Loss Amount to Lehman at any time upon demand therefor, immediately terminate this Agreement by giving notice thereof to the Trustee with a copy to Issuer and, subject to Section 8.2, make demand upon the Trustee for the payment of the Termination Amount.

If the Termination Amount is payable pursuant to this Section 7.3(b), the Trustee shall promptly, but by no later than one (1) Business Day after notice that such amount is due from Lehman, pay such amount, in immediately available funds, to Lehman. If any such amount is not paid when due, the Trustee shall pay interest on such amount for each date such amount is due and not paid at the Default Rate. Any amounts payable pursuant to Section 7.5 shall be payable upon demand as provided therein.

Notwithstanding anything to the contrary in this Agreement, the Trustee shall have no direct liability to Lehman hereunder except to the extent, if any, that the losses incurred by Lehman upon a Trustee Event of Default are caused by the Trustee's gross negligence or willful misconduct or by a breach of the Trustee's representations and warranties hereunder.

Section 7.4.   Remedies Upon Occurrence of an Issuer Event of Default.   Upon the occurrence of an Issuer Event of Default, Lehman shall have the right to:

(a)   cause a Qualified Dealer to redeliver to the Trustee or sell to any other purchaser the Qualified Securities which were to be delivered in connection with any Deposit Date and which have not theretofore been delivered to and purchased by the Trustee and make demand for the payment of its losses

COFINA Bonds
NY1:\1468714\07\379.0011

14

(calculated in accordance with Section 7.5) arising out of the Trustee's failure to purchase such Qualified Securities; and/or

(b)   immediately terminate this Agreement by giving notice thereof to Issuer with a copy to the Trustee, and make demand upon the Issuer for the payment of the Termination Amount.

If a Termination Amount is payable pursuant to this Section 7.4(b), Issuer shall promptly, but by no later than one (1) Business Day after notice that such amount is due from Lehman, pay such amount, in immediately available funds, to or at the direction of Lehman.   If any such amount is not paid when due, Issuer shall pay interest on such amount for each date such amount is due but not paid at the Default Rate.

Section 7.5.   Loss Amount if Failed or Late Purchase.   Subject to Section 8.2, if the Trustee fails to purchase any Qualified Securities delivered by a Qualified Dealer in accordance with this Agreement and provided that Lehman has not terminated this Agreement in connection with such herein (in which case the Termination Amount shall be due), the Trustee, in the case of a Trustee Event of Default under Section 7.1(a) or the Issuer under any other circumstances, shall pay to Lehman as liquidated damages for its losses and not as a penalty, on demand by Lehman, the sum (such sum, the "Loss Amount") of (w) interest on the Maturity Amount of such Qualified Securities for each day from and including the deposit date thereof to but excluding the date on which such securities are resold to a third party or to the Trustee, (x) the excess, if any, of the Maturity Amount of such Qualified Securities over the amount received by the Qualified Dealer upon such resale of the securities (the "Shortfall Amount"), (y) interest on the Shortfall Amount from and including the resale date to but excluding the date on which the Trustee or the Issuer, as applicable, compensates Lehman for its losses as described herein, and (z) any incidental costs and expenses incurred by Lehman in connection with the Trustee's failure to so purchase such Qualified Securities.   Interest shall accrue at a rate per annum equal to the Default Rate for purposes of clauses (w) and (y).

Section 7.6.   Application of Excess Funds.   The Issuer hereby directs the Trustee and the Trustee agrees that if at any time any amounts are due Lehman from the Issuer in connection with an Issuer Event of Default, the Trustee shall, upon demand from Lehman, and without further direction or instruction from the Issuer, apply any funds available under the Resolution which are not subject to the lien of the Resolution (including any funds which would otherwise be released to the Issuer) to the payment of such amounts, to the extent permitted by the Resolution.

Section 7.7.   Limited Rights Against the Debt Service Fund.   Neither Lehman nor any Qualified Dealer shall have any right to any amounts held in the Debt Service Fund except as expressly provided herein upon the delivery of a Qualified Security in accordance with this Agreement.

Section 7.8.   No Waiver; Remedies Cumulative.   No failure or delay on Lehman's part in exercising any right or remedy hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any such right or remedy preclude any other or further exercise thereof or the exercise of any other right or remedy.   Lehman's rights and remedies hereunder are cumulative and not exclusive of any rights or remedies provided by law, this Agreement or otherwise.

SECTION VIII.   THE TRUSTEE

Section 8.1.   Acceptance by Trustee.   By execution and delivery of this Agreement, the Trustee accepts its duties and obligations hereunder, as an addition to its duties and obligations as Trustee under the Resolution.

COFINA Bonds
NY1:\1468714\07\379.0011

15

Section 8.2.   Liability of the Trustee; Consultation with Legal Counsel.

(a)   The Trustee shall not be liable to any person for any action taken or neglected to be taken in performing or attempting to perform its obligations hereunder or preserving or seeking to preserve the funds it maintains under the Resolution or to discharge the Resolution identified pursuant to this Agreement, except for actions arising from its gross negligence or willful misconduct.

(b)   The Trustee may act through its officers, employees, agents and attorneys.

(c)   The Trustee undertakes to perform such duties and only such duties as are specifically set forth in this Agreement, and no implied duties, covenants or obligations shall be read into this Agreement against the Trustee.

(d)   Whenever the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking, suffering or omitting any action under this Agreement, such matter may be deemed to be conclusively established by a certificate signed by an authorized officer of the Issuer or Lehman, as the case may be. The Trustee may conclusively rely, as to the correctness of statements, conclusions and opinions therein, upon any certificate, report instruction, request, direction or opinion or other document furnished to the Trustee pursuant to any provision of this Agreement; the Trustee shall be fully protected and shall not be liable for acting or proceeding, in reliance upon any such document delivered to it, and believed by it, in good faith, to be genuine and to have been signed or presented by the proper party or parties; and the Trustee shall be under no duty to make any investigation or inquiry as to any statements contained or matters referred to in any such instrument.

(e)   Solely as between the Issuer and the Trustee, the Issuer agrees that the Trustee shall have all of the rights, benefits, privileges and immunities granted to the Trustee under the Resolution, all of which are incorporated herein and made applicable hereto mutatis mutandis as if set forth herein in full herein. As between the Issuer and the Trustee, the Issuer agrees that the Trustee shall be entitled to indemnification from the Issuer against all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, expenses and disbursements of whatsoever kind or nature, to the same extent and subject to the limitations as set forth in Section 804 of the Resolution, whose provisions are hereby incorporated by reference to the same extent as if set forth in full here. Indemnification provided under this paragraph (e) shall survive the termination of this Agreement.

(f)   In no event shall the Trustee be liable to any holder of the Bonds, the Issuer, Lehman or any third party for any special, punitive, indirect or consequential loss or damages of any kind whatsoever (including but not limited to loss of profit), even if the Trustee has been advised of the likelihood of such loss or damage and regardless of the form of action. The Trustee acknowledges that the Termination Amount and any Loss Amount payable hereunder do not constitute special, punitive, indirect or consequential losses.

(g)   Except as expressly set forth herein, no provision in this Agreement shall require the Trustee to expend or risk its own funds or otherwise incur financial liability in the performance of any of its duties, or in the exercise of its rights and powers hereunder.

(h)   The Trustee shall not be obligated to institute any legal action hereunder which might in its judgment involve any expense or liability, unless the Trustee shall have been furnished with indemnity satisfactory to it.

(i)   The Trustee may consult with counsel (who may be counsel to the Issuer) with respect to any questions relating to its duties and responsibilities and, except as expressly set forth herein, the advice

COFINA Bonds
NY1:\1468714\07\379.0011

16

or opinion of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by it hereunder in good faith and in reliance thereon.

Section 8.3.  Payment of Trustee Fees.  Lehman has no liability or responsibility for payment of the Trustee's fees or expenses for its services hereunder, including any such fees or expenses arising out of or in connection with the liquidation of the Qualified Securities as provided herein.

Section 8.4.  Trustee Cooperation.  The Trustee shall not make any payments or distributions from the Debt Service Fund other than payments or distributions (i) required by this Agreement, (ii) to pay principal of and redemption premium and interest on the Bonds or (iii) to make payments required by the Resolution. Notwithstanding anything contained herein to the contrary, including, without limitation, the preceding sentence, in the event that the Trustee is in contravention of its obligations hereunder or invests amounts in the Debt Service Fund other than pursuant to this Agreement, whether required by the Resolution or otherwise, any such act may constitute an Issuer Event of Default hereunder.

Section 8.5.  Successor Trustee.  If the Trustee shall resign or be discharged from its duties and obligations under the Resolution, the Issuer shall appoint a successor Trustee pursuant to the terms of the Resolution; provided, however, that the successor trustee shall be reasonably acceptable to Lehman. The Issuer agrees that if the Trustee fails for any reason to perform its duties to Lehman under this Agreement in accordance with the terms hereof, or is at any time insolvent or breaches in any material respect its representations and warranties to Lehman hereunder, the Issuer shall promptly, upon request of Lehman, appoint a successor trustee acceptable to Lehman. As used herein "Insolvent" means (i) the Trustee shall (1) commence a voluntary case under the federal bankruptcy laws (as in effect on the date of this Agreement or hereafter), (2) file a petition seeking to take advantage of any other law, relating to bankruptcy, insolvency, reorganization, winding up or composition or adjustment of debts, (3) consent to any petition filed against it in an involuntary case under such bankruptcy or insolvency or other laws, (4) apply for or consent to the appointment of, or the taking of possession by, a trustee, receiver, custodian, liquidator or the like of itself or for all or a substantial part of its property, (5) admit in writing its inability to pay, or generally not be paying, its debts as they come due, (6) make a general assignment for the benefit of creditors, or (7) take any official action for the purpose of affecting any of the foregoing; or (ii) a case or other proceeding shall be commenced against the Trustee in any court of competent jurisdiction seeking (1) relief under the federal bankruptcy laws (as in effect on the date of this Agreement or hereafter) or under any other law relating to bankruptcy, insolvency, reorganization, winding up or composition or adjustment of debts, or (2) the appointment of a trustee, receiver, custodian, liquidator or the like for the Trustee or for all or a substantial part of its property.  If the Trustee consolidates with, merges or converts to, or sells or transfers all or substantially all of its corporate trust business to, another corporation or national banking association, the resulting, surviving or transferee corporation or national banking association without further act shall assume the obligations of the Trustee hereunder with the same effect as if it had been named the Trustee herein.

SECTION IX.  MISCELLANEOUS

Section 9.1.  Notices.  All notices, demands or other communications hereunder shall be given or made in writing and shall be delivered personally, or sent by certified or registered mail, postage prepaid, return receipt requested, or overnight delivery service, telex or telecopy to the party to whom they are directed at the following addresses, or at such other addresses as may be designated by notice from such party to all other parties:

To Lehman:

Lehman Brothers Special Financing Inc.

745 Seventh Avenue, 5th Floor
New York, NY 10019

Attention:    Municipal Financial Products - Middle Office
Telephone:    212-526-2240
Fax:          646-758-298

To the Trustee:

The Bank of New York
101 Barclay St., 7W
New York, NY 10286

Attention: Diana Torres; Christopher Byrnes
Phone: (212) 815-6955; (212) 815-5541
Fax: (212) 815-5595

DELIVERY INSTRUCTIONS GOVERNMENT OBLIGATIONS

BK of NYC
ABA #021000018
Account #: TAS A/C 313607

DELIVERY INSTRUCTIONS FOR DTC ELIGIBLE SECURITIES

The Bank of New York
Participant #901
Puerto Rico Sales Tax Financing Corp.
Account #: TAS A/C 313607 – COFINA DS-TAXABLE

To the Issuer:

Puerto Rico Sales Tax Financing Corporation
c/o Government Development Bank for Puerto Rico
Roberto Sanchez Vilella Government Center
Avenida de Diego, Parada 22
San Juan, Puerto Rico 00940

Attn: Executive Director
Phone: (787) 722-2525, ext. 2001 or 2016
Fax: (787) 721-1443

Any notice, demand or other communication given in a manner prescribed in this Section shall be deemed to have been delivered on receipt.

Section 9.2.  Binding Effect; Transfer.  This Agreement shall be binding upon the Trustee, the Issuer and Lehman and upon their respective permitted successors and transferees.  Lehman shall be entitled to transfer all or any portion of this Agreement and its interests and obligations hereunder (i) to

any subsidiary or affiliate of Lehman, or to any office, branch or subsidiary of any affiliate of Lehman upon notice to the Issuer and the Trustee, and (ii) to any other party with the consent of the Issuer (such consent not to be unreasonably withheld or delayed) and with notice to the Trustee; provided, however, (A) that if the Issuer does not consent or object to such transfer within ten (10) Business Days of the request therefor, the Issuer's consent shall have be deemed to have been received, (B) that no such consent shall be required if such transfer is to any entity rated at least an "A-", "A3", or "A-" by Standard & Poor's Ratings Group, a division of the McGraw-Hill Companies ("S&P"), Moody's Investors Service, Inc. ("Moody's") or Fitch IBCA, Inc., respectively, and (C) that in all such instances the transferee shall assume all of the rights and obligations of Lehman hereunder.  Neither the Trustee nor the Issuer may transfer this Agreement without the prior written consent of Lehman.  Any Person (as defined in the Resolution) into which the Trustee may be merged or converted or with which it may be consolidated, or any Person resulting from any merger, conversion or consolidation to which the Trustee shall be a party, or any Person succeeding to the corporate trust business of the Trustee, shall be the successor of the Trustee hereunder without the execution or filing of any paper or any further act on the part of any of the parties hereto, anything herein to the contrary notwithstanding.

Section 9.3.  Limitation.  Nothing expressed or implied herein is intended or shall be construed to confer upon any person, firm or corporation other than the parties hereto, any right, remedy or claim by reason of this Agreement or any term hereof, and all terms contained herein shall be for the sole and exclusive benefit of the parties hereto, and their successors and permitted transferees.

Section 9.4.  Governing Law.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York.

Section 9.5.  Counterparts.  This Agreement may be executed in one or more counterparts and when each party hereto has executed at least one counterpart, this Agreement shall become binding on all parties and such counterparts shall be deemed to be one and the same document.

Section 9.6.  Entire Agreement.  This Agreement constitutes the entire agreement and understanding of the parties with respect to its subject matter and supersedes all oral communication and prior writings with respect thereto.

Section 9.7.  Severability.  If one or more provisions of this Agreement or the applicability of any such provisions to any set of circumstances shall be determined to be invalid or ineffective for any reason, such determination shall not affect the validity and enforceability of the remaining provisions or the applicability of the same provisions or any of the remaining provisions to other circumstances.

Section 9.8.  Amendments, Changes and Modifications.  This Agreement may be amended or any of its terms modified only by a written document authorized, executed and delivered by each of the parties hereto.

Section 9.9.  Termination.  Unless earlier terminated pursuant to Section 3.1, 7.3, or 7.4 hereof, this Agreement shall terminate on the later of the last Bond Payment Date set forth in Exhibit A-1 hereof, and the date on which the Trustee and Issuer have satisfied all of their obligations hereunder.

Section 9.10.  Submission to Jurisdiction.  Lehman, the Trustee and the Issuer each hereby irrevocably submits to the exclusive jurisdiction of any court of the State of New York located in the Borough of Manhattan or the United States District Court for the Southern District of the State of New York located in the Borough of Manhattan for the purpose of any suit action or other proceeding arising out of this Agreement, or any of the agreements or transactions contemplated hereby, at the election of the party initiating any such suit, action or other proceeding, which is brought by or against Lehman, the

Trustee or the Issuer, and each party hereby irrevocably agrees that all claims in respect of any such suit, action or proceeding may be heard and determined by any such court.

Section 9.11.  Waiver of Trial By Jury.  EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LITIGATION DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT.

IN WITNESS WHEREOF, the Trustee, the Issuer and Lehman have caused this Debt Service Deposit Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

THE BANK OF NEW YORK, as Trustee

By: _____
Name: **H. WILLIAM WEBER**
Title: **VICE PRESIDENT**

PUERTO RICO SALES TAX FINANCING CORPORATION

By: _____
Name:
Title:

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:
Title: Robert B. Guglielmo
Senior Vice President

COFINA Bonds
NYK 1164667-4.071358.0011

21

IN WITNESS WHEREOF, the Trustee, the Issuer and Lehman have caused this Debt Service Deposit Agreement to be executed by their respective duly authorized officers, all as of the date and year first above written.

THE BANK OF NEW YORK, as Trustee

By: _____
Name:
Title:

PUERTO RICO SALES TAX FINANCING CORPORATION

By: _____
Name:
Title:

LEHMAN BROTHERS SPECIAL FINANCING INC.

By: _____
Name:
Title:

COFINA Bonds
NYK 1164667-4.071370.0011

21

## EXHIBIT A-1

### Debt Service Account

| Deposit Date* | Bond Payment Date* | Deposit Amount |
|---|---|---|
| 12/1/2008 | 1/1/2009 | $8,105,942 |
| 12/1/2008 | 2/1/2009 | 22,907,923 |
| 12/1/2008 | 3/1/2009 | 8,105,942 |
| 12/1/2008 | 4/1/2009 | 8,105,942 |
| 12/1/2008 | 5/1/2009 | 8,105,942 |
| 12/1/2008 | 6/1/2009 | 8,105,942 |
| 12/1/2008 | 7/1/2009 | 8,105,942 |
| 12/1/2008 | 8/1/2009 | 22,907,923 |
| 12/1/2009 | 1/1/2010 | 8,105,942 |
| 12/1/2009 | 2/1/2010 | 22,907,923 |
| 12/1/2009 | 3/1/2010 | 8,105,942 |
| 12/1/2009 | 4/1/2010 | 8,105,942 |
| 12/1/2009 | 5/1/2010 | 8,105,942 |
| 12/1/2009 | 6/1/2010 | 8,105,942 |
| 12/1/2009 | 7/1/2010 | 8,105,942 |
| 12/1/2009 | 8/1/2010 | 22,907,923 |
| 12/1/2010 | 1/1/2011 | 8,105,942 |
| 12/1/2010 | 2/1/2011 | 22,907,923 |
| 12/1/2010 | 3/1/2011 | 8,105,942 |
| 12/1/2010 | 4/1/2011 | 8,105,942 |
| 12/1/2010 | 5/1/2011 | 8,105,942 |
| 12/1/2010 | 6/1/2011 | 8,105,942 |
| 12/1/2010 | 7/1/2011 | 8,105,942 |
| 12/1/2010 | 8/1/2011 | 22,907,923 |
| 12/1/2011 | 1/1/2012 | 8,105,942 |
| 12/1/2011 | 2/1/2012 | 22,907,923 |
| 12/1/2011 | 3/1/2012 | 8,105,942 |
| 12/1/2011 | 4/1/2012 | 8,105,942 |
| 12/1/2011 | 5/1/2012 | 8,105,942 |
| 12/1/2011 | 6/1/2012 | 8,105,942 |
| 12/1/2011 | 7/1/2012 | 8,105,942 |
| 12/1/2011 | 8/1/2012 | 22,907,923 |
| 12/1/2012 | 1/1/2013 | 8,105,942 |
| 12/1/2012 | 2/1/2013 | 22,907,923 |
| 12/1/2012 | 3/1/2013 | 8,105,942 |
| 12/1/2012 | 4/1/2013 | 8,105,942 |
| 12/1/2012 | 5/1/2013 | 8,105,942 |

* If any Deposit Date or Bond Payment Date specified above is not a Business Day, such date will be the immediately succeeding Business Day; provided, however, that with respect to any date specified as a Bond Payment Date, the determination of whether such date is a Business Day shall be made without giving effect to clauses (c) and (d) of the definition of Business Day.

A-1-1

NYK 1164667-4.071370.0011

| Deposit Date* | Bond Payment Date* | Deposit Amount |
|---|---|---|
| 12/1/2012 | 6/1/2013 | 8,105,942 |
| 12/1/2012 | 7/1/2013 | 8,105,942 |
| 12/1/2012 | 8/1/2013 | 22,907,923 |
| 12/1/2013 | 1/1/2014 | 8,105,942 |
| 12/1/2013 | 2/1/2014 | 22,907,923 |
| 12/1/2013 | 3/1/2014 | 8,105,942 |
| 12/1/2013 | 4/1/2014 | 8,105,942 |
| 12/1/2013 | 5/1/2014 | 8,105,942 |
| 12/1/2013 | 6/1/2014 | 8,105,942 |
| 12/1/2013 | 7/1/2014 | 8,105,942 |
| 12/1/2013 | 8/1/2014 | 22,907,923 |
| 12/1/2014 | 1/1/2015 | 8,105,942 |
| 12/1/2014 | 2/1/2015 | 22,907,923 |
| 12/1/2014 | 3/1/2015 | 8,105,942 |
| 12/1/2014 | 4/1/2015 | 8,105,942 |
| 12/1/2014 | 5/1/2015 | 8,105,942 |
| 12/1/2014 | 6/1/2015 | 8,105,942 |
| 12/1/2014 | 7/1/2015 | 8,105,942 |
| 12/1/2014 | 8/1/2015 | 22,907,923 |
| 12/1/2015 | 1/1/2016 | 8,105,942 |
| 12/1/2015 | 2/1/2016 | 22,907,923 |
| 12/1/2015 | 3/1/2016 | 8,105,942 |
| 12/1/2015 | 4/1/2016 | 8,105,942 |
| 12/1/2015 | 5/1/2016 | 8,105,942 |
| 12/1/2015 | 6/1/2016 | 8,105,942 |
| 12/1/2015 | 7/1/2016 | 8,105,942 * |
| 12/1/2015 | 8/1/2016 | 22,907,923 |
| 12/1/2016 | 1/1/2017 | 8,105,942 |
| 12/1/2016 | 2/1/2017 | 22,907,923 |
| 12/1/2016 | 3/1/2017 | 8,105,942 |
| 12/1/2016 | 4/1/2017 | 8,105,942 |
| 12/1/2016 | 5/1/2017 | 8,105,942 |
| 12/1/2016 | 6/1/2017 | 8,105,942 |
| 12/1/2016 | 7/1/2017 | 8,105,942 |
| 12/1/2016 | 8/1/2017 | 22,907,923 |
| 12/1/2017 | 1/1/2018 | 8,105,942 |
| 12/1/2017 | 2/1/2018 | 22,907,923 |
| 12/1/2017 | 3/1/2018 | 8,105,942 |
| 12/1/2017 | 4/1/2018 | 8,105,942 |
| 12/1/2017 | 5/1/2018 | 8,105,942 |
| 12/1/2017 | 6/1/2018 | 8,105,942 |
| 12/1/2017 | 7/1/2018 | 8,105,942 |
| 12/1/2017 | 8/1/2018 | 22,907,923 |
| 12/1/2018 | 1/1/2019 | 8,105,942 |
| 12/1/2018 | 2/1/2019 | 22,907,923 |
| 12/1/2018 | 3/1/2019 | 8,105,942 |
| 12/1/2018 | 4/1/2019 | 8,105,942 |
| 12/1/2018 | 5/1/2019 | 8,105,942 |

A-1-2

NYK 1164667-4.071370.0011

**A-1-3** (top left)

| Deposit Date* | Bond Payment Date* | Deposit Amount |
|---|---|---|
| 12/1/2018 | 6/1/2019 | 8,105,942 |
| 12/1/2018 | 7/1/2019 | 8,105,942 |
| 12/1/2018 | 8/1/2019 | 22,907,923 |
| 12/1/2019 | 1/1/2020 | 8,105,942 |
| 12/1/2019 | 2/1/2020 | 22,907,923 |
| 12/1/2019 | 3/1/2020 | 8,105,942 |
| 12/1/2019 | 4/1/2020 | 8,105,942 |
| 12/1/2019 | 5/1/2020 | 8,105,942 |
| 12/1/2019 | 6/1/2020 | 8,105,942 |
| 12/1/2019 | 7/1/2020 | 8,105,942 |
| 12/1/2020 | 8/1/2020 | 22,907,923 |
| 12/1/2020 | 1/1/2021 | 8,105,942 |
| 12/1/2020 | 2/1/2021 | 22,907,923 |
| 12/1/2020 | 3/1/2021 | 8,105,942 |
| 12/1/2020 | 4/1/2021 | 8,105,942 |
| 12/1/2020 | 5/1/2021 | 8,105,942 |
| 12/1/2020 | 6/1/2021 | 8,105,942 |
| 12/1/2020 | 7/1/2021 | 8,105,942 |
| 12/1/2021 | 8/1/2021 | 22,907,923 |
| 12/1/2021 | 1/1/2022 | 8,105,942 |
| 12/1/2021 | 2/1/2022 | 22,907,923 |
| 12/1/2021 | 3/1/2022 | 8,105,942 |
| 12/1/2021 | 4/1/2022 | 8,105,942 |
| 12/1/2021 | 5/1/2022 | 8,105,942 |
| 12/1/2021 | 6/1/2022 | 8,105,942 |
| 12/1/2021 | 7/1/2022 | 8,105,942 * |
| 12/1/2022 | 8/1/2022 | 27,637,923 |
| 12/1/2022 | 1/1/2023 | 8,088,467 |
| 12/1/2022 | 2/1/2023 | 22,890,448 |
| 12/1/2022 | 3/1/2023 | 8,088,467 |
| 12/1/2022 | 4/1/2023 | 8,088,467 |
| 12/1/2022 | 5/1/2023 | 8,088,467 |
| 12/1/2022 | 6/1/2023 | 8,088,467 |
| 12/1/2022 | 7/1/2023 | 8,088,467 |
| 12/1/2023 | 8/1/2023 | 30,000,448 |
| 12/1/2023 | 1/1/2024 | 8,062,192 |
| 12/1/2023 | 2/1/2024 | 22,864,173 |
| 12/1/2023 | 3/1/2024 | 8,062,192 |
| 12/1/2023 | 4/1/2024 | 8,062,192 |
| 12/1/2023 | 5/1/2024 | 8,062,192 |
| 12/1/2023 | 6/1/2024 | 8,062,192 |
| 12/1/2023 | 7/1/2024 | 8,062,192 |
| 12/1/2023 | 8/1/2024 | 45,119,173 |
| 12/1/2024 | 1/1/2025 | 7,979,967 |
| 12/1/2024 | 2/1/2025 | 22,781,948 |
| 12/1/2024 | 3/1/2025 | 7,979,967 |
| 12/1/2024 | 4/1/2025 | 7,979,967 |
| 12/1/2024 | 5/1/2025 | 7,979,967 |

**A-1-4** (top right)

| Deposit Date* | Bond Payment Date* | Deposit Amount |
|---|---|---|
| 12/1/2024 | 6/1/2025 | 7,979,967 |
| 12/1/2024 | 7/1/2025 | 7,979,967 |
| 12/1/2024 | 8/1/2025 | 56,926,948 |
| 12/1/2025 | 1/1/2026 | 7,933,192 |
| 12/1/2025 | 2/1/2026 | 22,735,173 |
| 12/1/2025 | 3/1/2026 | 7,933,192 |
| 12/1/2025 | 4/1/2026 | 7,933,192 |
| 12/1/2025 | 5/1/2026 | 7,933,192 |
| 12/1/2025 | 6/1/2026 | 7,933,192 |
| 12/1/2025 | 7/1/2026 | 7,933,192 |
| 12/1/2026 | 8/1/2026 | 61,515,173 |
| 12/1/2026 | 1/1/2027 | 7,846,317 |
| 12/1/2026 | 2/1/2027 | 22,648,298 |
| 12/1/2026 | 3/1/2027 | 7,846,317 |
| 12/1/2026 | 4/1/2027 | 7,846,317 |
| 12/1/2026 | 5/1/2027 | 7,846,317 |
| 12/1/2026 | 6/1/2027 | 7,846,317 |
| 12/1/2026 | 7/1/2027 | 7,846,317 |
| 12/1/2026 | 8/1/2027 | 95,913,298 |
| 12/1/2027 | 1/1/2028 | 7,732,067 |
| 12/1/2027 | 2/1/2028 | 22,534,048 |
| 12/1/2027 | 3/1/2028 | 7,732,067 |
| 12/1/2027 | 4/1/2028 | 7,732,067 |
| 12/1/2027 | 5/1/2028 | 7,732,067 |
| 12/1/2027 | 6/1/2028 | 7,732,067 |
| 12/1/2027 | 7/1/2028 | 7,732,067 * |
| 12/1/2027 | 8/1/2028 | 130,679,048 |
| 12/1/2028 | 1/1/2029 | 7,732,067 |
| 12/1/2028 | 2/1/2029 | 22,534,048 |
| 12/1/2028 | 3/1/2029 | 7,732,067 |
| 12/1/2028 | 4/1/2029 | 7,732,067 |
| 12/1/2028 | 5/1/2029 | 7,732,067 |
| 12/1/2028 | 6/1/2029 | 7,732,067 |
| 12/1/2028 | 7/1/2029 | 7,732,067 |
| 12/1/2028 | 8/1/2029 | 135,004,948 |
| 12/1/2029 | 1/1/2030 | 7,694,767 |
| 12/1/2029 | 2/1/2030 | 22,496,748 |
| 12/1/2029 | 3/1/2030 | 7,694,767 |
| 12/1/2029 | 4/1/2030 | 7,694,767 |
| 12/1/2029 | 5/1/2030 | 7,694,767 |
| 12/1/2029 | 6/1/2030 | 7,694,767 |
| 12/1/2029 | 7/1/2030 | 7,694,767 |
| 12/1/2029 | 8/1/2030 | 168,686,748 |
| 12/1/2030 | 1/1/2031 | 7,605,142 |
| 12/1/2030 | 2/1/2031 | 22,407,123 |
| 12/1/2030 | 3/1/2031 | 7,605,142 |
| 12/1/2030 | 4/1/2031 | 7,605,142 |
| 12/1/2030 | 5/1/2031 | 7,605,142 |

**A-1-5** (bottom left)

| Deposit Date* | Bond Payment Date* | Deposit Amount |
|---|---|---|
| 12/1/2030 | 6/1/2031 | 7,605,142 |
| 12/1/2030 | 7/1/2031 | 7,605,142 |
| 12/1/2030 | 8/1/2031 | 177,802,123 |
| 12/1/2031 | 1/1/2032 | 7,282,492 |
| 12/1/2031 | 2/1/2032 | 22,084,473 |
| 12/1/2031 | 3/1/2032 | 7,282,492 |
| 12/1/2031 | 4/1/2032 | 7,282,492 |
| 12/1/2031 | 5/1/2032 | 7,282,492 |
| 12/1/2031 | 6/1/2032 | 7,282,492 |
| 12/1/2031 | 7/1/2032 | 7,282,492 |
| 12/1/2032 | 8/1/2032 | 196,259,473 |
| 12/1/2032 | 1/1/2033 | 7,215,317 |
| 12/1/2032 | 2/1/2033 | 22,017,298 |
| 12/1/2032 | 3/1/2033 | 7,215,317 |
| 12/1/2032 | 4/1/2033 | 7,215,317 |
| 12/1/2032 | 5/1/2033 | 7,215,317 |
| 12/1/2032 | 6/1/2033 | 7,215,317 |
| 12/1/2032 | 7/1/2033 | 7,215,317 |
| 12/1/2032 | 8/1/2033 | 208,752,298 |
| 12/1/2033 | 1/1/2034 | 6,586,524 |
| 12/1/2033 | 2/1/2034 | 21,388,505 |
| 12/1/2033 | 3/1/2034 | 6,586,524 |
| 12/1/2033 | 4/1/2034 | 6,586,524 |
| 12/1/2033 | 5/1/2034 | 6,586,524 |
| 12/1/2033 | 6/1/2034 | 6,586,524 |
| 12/1/2033 | 7/1/2034 | 6,586,524 * |
| 12/1/2033 | 8/1/2034 | 234,065,505 |
| 12/1/2034 | 1/1/2035 | 5,727,038 |
| 12/1/2034 | 2/1/2035 | 20,529,019 |
| 12/1/2034 | 3/1/2035 | 5,727,038 |
| 12/1/2034 | 4/1/2035 | 5,727,038 |
| 12/1/2034 | 5/1/2035 | 5,727,038 |
| 12/1/2034 | 6/1/2035 | 5,727,038 |
| 12/1/2034 | 7/1/2035 | 5,727,038 |
| 12/1/2034 | 8/1/2035 | 232,574,019 |
| 12/1/2035 | 1/1/2036 | 4,816,036 |
| 12/1/2035 | 2/1/2036 | 19,618,018 |
| 12/1/2035 | 3/1/2036 | 4,816,036 |
| 12/1/2035 | 4/1/2036 | 4,816,036 |
| 12/1/2035 | 5/1/2036 | 4,816,036 |
| 12/1/2035 | 6/1/2036 | 4,816,036 |
| 12/1/2035 | 7/1/2036 | 4,816,036 |
| 12/1/2035 | 8/1/2036 | 260,388,018 |
| 12/1/2036 | 1/1/2037 | 3,877,208 |
| 12/1/2036 | 2/1/2037 | 18,679,190 |
| 12/1/2036 | 3/1/2037 | 3,877,208 |
| 12/1/2036 | 4/1/2037 | 3,877,208 |
| 12/1/2036 | 5/1/2037 | 3,877,208 |

**A-1-6** (bottom right)

| Deposit Date* | Bond Payment Date* | Deposit Amount |
|---|---|---|
| 12/1/2036 | 6/1/2037 | 3,877,208 |
| 12/1/2036 | 7/1/2037 | 3,877,208 |
| 12/1/2036 | 8/1/2037 | 283,329,190 |
| 12/1/2037 | 1/1/2038 | 2,727,893 |
| 12/1/2037 | 2/1/2038 | 17,529,874 |
| 12/1/2037 | 3/1/2038 | 2,727,893 |
| 12/1/2037 | 4/1/2038 | 2,727,893 |
| 12/1/2037 | 5/1/2038 | 2,727,893 |
| 12/1/2037 | 6/1/2038 | 2,727,893 |
| 12/1/2037 | 7/1/2038 | 2,727,893 |
| 12/1/2038 | 8/1/2038 | 338,266,874 |
| 12/1/2038 | 1/1/2039 | 1,439,030 |
| 12/1/2038 | 2/1/2039 | 16,241,011 |
| 12/1/2038 | 3/1/2039 | 1,439,030 |
| 12/1/2038 | 4/1/2039 | 1,439,030 |
| 12/1/2038 | 5/1/2039 | 1,439,030 |
| 12/1/2038 | 6/1/2039 | 1,439,030 |
| 12/1/2038 | 7/1/2039 | 1,439,030 |
| 12/1/2038 | 8/1/2039 | 39,194,030 |
| 12/1/2039 | 1/1/2040 | 53,805,663 |
| 12/1/2039 | 2/1/2040 | 4,058,333 |
| 12/1/2039 | 3/1/2040 | 15,860,315 |
| 12/1/2039 | 4/1/2040 | 1,058,333 |
| 12/1/2039 | 5/1/2040 | 1,058,333 |
| 12/1/2039 | 6/1/2040 | 1,058,333 |
| 12/1/2039 | 7/1/2040 | 1,058,333 * |
| 12/1/2039 | 8/1/2040 | 93,665,315 |
| 12/1/2040 | 1/1/2041 | 1,058,333 |
| 12/1/2040 | 2/1/2041 | 15,860,315 |
| 12/1/2040 | 3/1/2041 | 1,058,333 |
| 12/1/2040 | 4/1/2041 | 1,058,333 |
| 12/1/2040 | 5/1/2041 | 1,058,333 |
| 12/1/2040 | 6/1/2041 | 1,058,333 |
| 12/1/2040 | 7/1/2041 | 1,058,333 |
| 12/1/2040 | 8/1/2041 | 626,670,315 |
| 12/1/2041 | 1/1/2042 | 1,058,333 |
| 12/1/2041 | 2/1/2042 | 15,860,315 |
| 12/1/2041 | 3/1/2042 | 1,058,333 |
| 12/1/2041 | 4/1/2042 | 1,058,333 |
| 12/1/2041 | 5/1/2042 | 1,058,333 |
| 12/1/2041 | 6/1/2042 | 1,058,333 |
| 12/1/2041 | 7/1/2042 | 1,058,333 |
| 12/1/2042 | 8/1/2042 | 653,060,315 |
| 12/1/2042 | 1/1/2043 | 1,058,333 |
| 12/1/2042 | 2/1/2043 | 15,860,315 |
| 12/1/2042 | 3/1/2043 | 1,058,333 |
| 12/1/2042 | 4/1/2043 | 1,058,333 |
| 12/1/2042 | 5/1/2043 | 1,058,333 |

| Deposit Date* | Bond Payment Date* | Deposit Amount |
|---|---|---|
| 12/1/2042 | 6/1/2043 | 1,058,333 |
| 12/1/2042 | 7/1/2043 | 1,058,333 |
| 12/1/2042 | 8/1/2043 | 681,730,315 |
| 12/1/2043 | 1/1/2044 | 1,058,333 |
| 12/1/2043 | 2/1/2044 | 15,860,315 |
| 12/1/2043 | 3/1/2044 | 1,058,333 |
| 12/1/2043 | 4/1/2044 | 1,058,333 |
| 12/1/2043 | 5/1/2044 | 1,058,333 |
| 12/1/2043 | 6/1/2044 | 1,058,333 |
| 12/1/2043 | 7/1/2044 | 1,058,333 |
| 12/1/2043 | 8/1/2044 | 710,920,315 |
| 12/1/2044 | 1/1/2045 | 1,058,333 |
| 12/1/2044 | 2/1/2045 | 15,860,315 |
| 12/1/2044 | 3/1/2045 | 1,058,333 |
| 12/1/2044 | 4/1/2045 | 1,058,333 |
| 12/1/2044 | 5/1/2045 | 1,058,333 |
| 12/1/2044 | 6/1/2045 | 1,058,333 |
| 12/1/2044 | 7/1/2045 | 1,058,333 |
| 12/1/2044 | 8/1/2045 | 741,285,315 |
| 12/1/2045 | 1/1/2046 | 1,058,333 |
| 12/1/2045 | 2/1/2046 | 15,860,315 |
| 12/1/2045 | 3/1/2046 | 1,058,333 |
| 12/1/2045 | 4/1/2046 | 1,058,333 |
| 12/1/2045 | 5/1/2046 | 1,058,333 |
| 12/1/2045 | 6/1/2046 | 1,058,333 |
| 12/1/2045 | 7/1/2046 | 1,058,333** |
| 12/1/2045 | 8/1/2046 | 772,860,315 |

A-1-7

NYK 1164857-4.071270.0011

---

**EXHIBIT B**

[LETTERHEAD OF COUNSEL TO TRUSTEE]

[To be provided by Trustee.]

B-1

NYK 1164857-4.071270.0011

---

**EXHIBIT C**

[LETTERHEAD OF COUNSEL TO LEHMAN]

July 1, 2008

Puerto Rico Sales Tax Financing Corporation
[address]

The Bank of New York
[address]

Ladies and Gentlemen:

We have acted as counsel to Lehman Brothers Special Financing Inc. ("Lehman") and are delivering this opinion in connection with the Debt Service Deposit Agreement dated as of July 1, 2008 (the "Agreement") by and among Lehman, The Bank of New York, as Trustee (the "Trustee") and Puerto Rico Sales Tax Financing Corporation (the "Issuer"). Capitalized terms used herein and not defined herein have the respective meanings given to them in the Agreement.

In connection with this opinion, we have examined originals or copies, certified or otherwise identified to our satisfaction, of such documents, corporate records, certificates of public officials and other instruments and have conducted such investigations of fact and law as we have deemed necessary or appropriate for purposes of this opinion. In such examination, we have assumed the authenticity of all documents submitted to us as originals and the conformity with the originals of all documents submitted to us as certified, conformed or photostatic copies. We have also assumed that the Agreement has been duly executed and delivered by the Trustee pursuant to appropriate corporate authority.

Upon the basis of the foregoing, we are of the opinion that:

1. Lehman is a corporation organized and existing and in good standing under the laws of the State of Delaware.

2. The execution, delivery and performance of the Agreement by Lehman are within Lehman's corporate power and have been duly authorized by all necessary corporate action.

3. The Agreement has been duly executed and delivered by Lehman and constitutes a legal, valid and binding obligation of Lehman enforceable against Lehman in accordance with its terms, except as the enforceability thereof may be limited by bankruptcy, insolvency, reorganization, moratorium, or other laws affecting the enforcement of creditors' rights generally or by general equity principles.

4. To the best of our knowledge, all federal, state, and local governmental, public, and regulatory authority approvals, consents, notices, authorizations, registrations, licenses, exemptions, and filings that are required to have been obtained or made by Lehman with respect to the authorization, execution, delivery, and performance by, or the enforcement against or by, Lehman of the Agreement have been obtained and are in full force and effect and all conditions of such approvals, consents, notices, authorizations, registrations, licenses, exemptions, and filings have been fully complied with.

With respect to the opinions given in paragraph 3, we express no opinion as to the legality, validity, binding effect or enforceability of any provision of the Agreement related to (A) forum selection

C-1

NYK 1164857-4.071270.0011

---

or submission to jurisdiction (including, without limitation, any waiver of any objection to venue in any court or of any objection that a court is an inconvenient forum) to the extent that the legality, validity, binding effect or enforceability of any such provision is to be determined by any court other than a court of the State of New York, or (B) choice of governing law to the extent that the legality, validity, binding effect or enforceability of any such provision is to be determined by any court other than a court of the State of New York or a federal district court sitting in the State of New York, in each case, applying the choice of law principles of the State of New York, including Sections 5-1401 and 5-1402 of the New York General Obligations Law.

We have relied as to certain matters on information obtained from public officials, officers of Lehman and other sources believed by us to be responsible and we have assumed that the signatures on all documents examined by us are genuine, assumptions which we have not independently verified.

This opinion is limited to the laws of the State of New York and the Federal laws of the United States. The opinions in this letter are expressed solely as of the date hereof for your benefit and for the benefit of your successors and permitted assigns under the Agreement and may not be relied upon in any manner or for any purposes by any other person.

Very truly yours,

C-2

NYK 1164857-4.071270.0011

**EXHIBIT D**

[LETTERHEAD OF COUNSEL TO ISSUER]

July 1, 2008

The Bank of New York
[address]

Lehman Brothers Special Financing Inc.
New York, NY

Re:  [NAME OF BONDS]

Ladies and Gentlemen:

We have acted as counsel to Puerto Rico Sales Tax Financing Corporation (the "Issuer") in connection with the execution and delivery of the Debt Service Deposit Agreement, dated as of July 1, 2008 (the "Debt Service Deposit Agreement"), by and among Lehman Brothers Special Financing Inc. ("Lehman"), The Bank of New York, as Trustee (the "Trustee") and the Issuer and its execution and delivery of the Resolution (as defined in the Debt Service Deposit Agreement). Capitalized terms used herein and not defined herein have the respective meanings given to them in the Debt Service Deposit Agreement.

In rendering this opinion, we have examined, among other things, copies of the Debt Service Deposit Agreement and the Resolution.

In connection with the foregoing, we have also examined originals or copies satisfactory to us of all such corporate records, agreements, certificates and other documents as we have deemed relevant and necessary as a basis for the opinions hereinafter expressed. In such examination we have assumed the genuineness of all signatures, the authenticity of all documents submitted to us as originals, and the conformity with the original documents of all documents submitted to us as copies.

In giving the opinions expressed below we do not purport to be experts in or generally familiar with or qualified to express legal opinions based on the laws of any jurisdiction other than the laws of the Commonwealth of Puerto Rico (the "Commonwealth").

Based upon the foregoing examination and review, we are of the opinion that:

(i)   The Issuer has full legal right, power and authority to enter into the Debt Service Deposit Agreement and the Resolution and to authorize and direct the Trustee, pursuant to the Debt Service Deposit Agreement, to make purchases of the Qualified Eligible Securities in accordance with the terms therein.

(ii)   The Debt Service Deposit Agreement and the Resolution have been duly authorized, executed and delivered by the Issuer.

(iii)   The stipulation of New York law as the governing law of the Debt Service Deposit Agreement is enforceable under the laws of the Commonwealth.

D-1

(iv)   Assuming for purposes of the opinion expressed in this paragraph (iv) that Commonwealth law and New York law are the same, each of the Debt Service Deposit Agreement and the Resolution is a legal, valid and binding obligation of the Issuer, enforceable against it in accordance with the terms thereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(v)   The Issuer's execution and delivery of the Debt Service Deposit Agreement and the performance of its obligations thereunder do not and will not conflict with or constitute or result in a default under, a breach or violation of, or the creation of any lien or encumbrance on any of its property under the Resolution or any other agreement, instrument, judgment, injunction or order applicable to it or any of its property.

(vi)   The Resolution is a legal, valid and binding obligation of the Issuer, enforceable against it in accordance with the terms thereof, subject to applicable bankruptcy, insolvency and similar laws affecting creditors' rights generally, and subject, as to enforceability, to general principles of equity (regardless of whether enforcement is sought in a proceeding in equity or at law).

(vii)   The Trustee is authorized under the Resolution to enter into the Deposit Agreement and directed to do so by the Issuer.

(viii)   The obligation of the Issuer to make payments of the Deposit Amount to the Trustee on each Deposit Date constitute general obligations of the Issuer.

(ix)   The Issuer is not entitled to claim immunity on the grounds of sovereignty or other similar grounds with respect to itself or its revenues or assets (irrespective of their use or intended use) from (i) suit, (ii) jurisdiction of any court, (iii) relief by way of injunction, order for specific performance or for recovery of property, (iv) attachment of its assets (whether before or after judgment) or (v) execution or enforcement of any judgment to which it or its revenues or assets might otherwise be made subject in any suit, action or proceeding relating to the Agreement in the courts of any jurisdiction and no such immunity (whether or not claimed) may be attributed to the Issuer or its revenues or assets.

(x)   All consents, authorizations and approvals requisite for its execution, delivery and performance of this Debt Service Deposit Agreement have been obtained and remain in full force and effect and all conditions thereof have been duly complied with, and no other action by, and no notice to or filing with, any governmental authority, regulatory body or any other entity is required for such execution, delivery or performance.

(xi)   The Eligible Securities are legal for the investment of public funds under the laws of the Commonwealth of Puerto Rico.

(xii)   The Agreement is a Permitted Investment.

I am furnishing this opinion to you solely for your benefit and no other person is entitled to rely hereon. This opinion is not to be used, circulated, quoted or otherwise referred to for any other purpose.

Very truly yours,

D-2

**EXHIBIT E**

Lehman Brothers Special Financing Inc.
Notice of Tender
Under the Debt Service Deposit Agreement
Dated as of:

To:                          , as Trustee
        Attention:
        Fax:
        Phone:

From:   Lehman Brothers Inc.
        Attention:
        Fax:
        Phone:

Date:  [                ]

Re:    [                ]

**Date and Price**
Purchase Date:                  
Specified Purchase Price:        

**Specific Government Obligations**

| Cusip | Type | Maturity | Coupon | Face Amount | Maturity Amount | Accrued Interest |
|-------|------|----------|--------|-------------|-----------------|------------------|
|       |      |          |        |             |                 |                  |

**Delivery vs Payment (Book Entry Delivery)**

On the Purchase Date, LBI will deliver Face value [        ] [BILLS/NOTES] maturing [        ]

Re:

On the Purchase Date, LBI will receive [        ]

Chase NYC/Lehman
ABA Number 021-000-021
Account Number 066206677

E-1

**EXHIBIT F**

ELIGIBLE SECURITIES

(i)   Any of the following which are not callable or redeemable at the option of the issuer thereto:

(a)   direct obligations of, or obligations the principal of and the interest on which are unconditionally guaranteed by, the United States of America and entitled to the full faith and credit thereof ("Government Obligations");

(b)   certificates, depository receipts or other instruments which evidence a direct ownership interest in obligations described in clauses (a) above or in any specific interest or principal payments due in respect thereof; provided, however, that the custodian of such obligations or specific interest or principal payments shall be a bank or trust company organized under the laws of the United States of America, of the Commonwealth, or of any state or territory of the United States of America or of the District of Columbia, with a combined capital stock, surplus and undivided profits of at least $50,000,000 or the custodian, is appointed by or on behalf of the United States of America; and provided further, however, that except as may be otherwise required by law, such custodian shall be obligated to pay to the holders of such certificates, depository receipts or other instruments the full amount received by such custodian in respect of such obligations or specific payments and shall not be permitted to make any deduction therefrom; or

(c)   a share or interest in a mutual fund, partnership or other find wholly comprised of obligations described in clauses (a) or (b) above.

(ii)   Any bonds or other obligations of any state or territory of the United States of America, of the Commonwealth of Puerto Rico, or of any agency, instrumentality or local governmental unit of any such state or territory or Commonwealth of Puerto Rico which are not callable at the option of the obligor prior to maturity or as to which irrevocable instructions have been given by the obligor to call on the date specified in the notice; and

(a)   which are rated, based on an irrevocable escrow account or fund (the "escrow"), in the highest rating category of any rating agency; or

(b)   (I) which are fully secured as to principal, interest and redemption premium, if any, by an escrow consisting only of cash or Government Obligations, which escrow may be applied only to the payment of such principal and interest and redemption premium, if any, on such bonds or other obligations on the maturity date or dates thereof or the specified redemption date or dates pursuant to such irrevocable instructions, as appropriate, and (II) which escrow is sufficient, as verified by a nationally recognized independent certified public accountant, or other nationally recognized certification agent, to pay principal and interest and redemption premium, if any, on the bonds or other obligations described in this paragraph on the maturity date or dates specified in the irrevocable instructions referred to above, as appropriate.

(iii)   direct general obligations of any state of the United States to the payment of the principal of and interest on which the full faith and credit of such state is pledged which are rated in either of the two highest rating categories by a rating agency.

F-1

(iv)   direct obligations of, or obligations guaranteed as to timely payment of principal and interest by, Fannie Mae, the Federal Home Loan Mortgage Corporation, or the Federal Farm Credit System.

(v)   prime commercial paper of a corporation incorporated under the laws of any state of the United States of America, rated "P-1", "A-1" or "F 1" by Moody's, Standard & Poor's or Fitch, respectively.

(vi)   any other obligations conforming to any Issuer guidelines for investment, so long as such obligations are rated at least in the two highest rating categories of each of the rating agencies and are approved by any applicable Credit Facility Provider (as defined in the Resolution).

F-2

---

**EXHIBIT G**

[LETTERHEAD OF ISSUER]

DIRECTION LETTER

July 1, 2008

The Bank of New York, as Trustee
[address]

Re: [NAME OF BONDS]

Ladies and Gentlemen:

Reference is made to the Debt Service Deposit Agreement, dated as of July 1, 2008 (the "Agreement"), by and among The Bank of New York, as Trustee (the "Trustee"), Puerto Rico Sales Tax Financing Corporation and Lehman Brothers Special Financing Inc. ("Lehman"), relating to the above-referenced Bonds (the "Bonds"). Capitalized terms used herein and not defined herein have the meanings given to them in the Agreement.

Pursuant to the power and authority vested in us by the Resolution, including Section 6.02 thereof, we hereby authorize and direct you to execute and deliver the Agreement and to perform "all obligations" of the Trustee thereunder, including to invest certain deposits in the Debt Service Fund in Qualified Securities pursuant to the terms of the Agreement.

You agree that the performance of your duties and responsibilities under the Agreement shall be deemed to be duties specifically set forth in the Resolution and, therefore, you and we shall each be entitled to the benefits of the provisions contained in the Resolution.

We agree to indemnify you in accordance with the provisions of the Resolution for any liabilities, claims or expenses arising from your participation in the transactions contemplated by the Agreement, except to the extent such liabilities, claims or expenses result from your gross negligence or willful misconduct, and agree that you shall be entitled to follow the instructions given to you by Lehman to the extent that you believe that such instructions are in accordance with the Agreement. The Trustee shall not be liable for any Termination Amount that may be payable under the Agreement.

Very truly yours,

PUERTO RICO SALES TAX FINANCING CORPORATION

By: _____
Name:
Title:

Acknowledged and accepted:

THE BANK OF NEW YORK, as Trustee

By: _____

G-1

https://cloud.psship.com/index.php

1. Fold the first printed page in half and use as the shipping label.
2. Place the label in a waybill pouch and affix it to your shipment so that the barcode portion of the label can be read and scanned.
3. Keep the second page as a receipt for your records. The receipt contains information useful for tracking your package.

FOLD on this line and place in shipping pouch with bar code and delivery address visible

LOCKE MCMURRAY
2123263939
JONES DAY
250 VESEY STREET
NEW YORK NY 10281

1 LBS                    1 OF 1

DWT: 16,11,3

SHIP TO:

C/O PRIME CLERK,LLC
2122575450
COMMONWEALTHPUERTORICO CLAIMS CTR
SUITE 412
850 THIRD AVENUE

**BROOKLYN NY 11232-1523**

NY 112 9-01

UPS NEXT DAY AIR                    1

TRACKING #: 1Z 104 45E A2 9336 0899

BILLING: P/P
ADULT SIGNATURE REQUIRED-MIN 21

Reference No.1: 105143-600068
Reference No.2: JP017106

XOL 18.03.09   NV45 99.0A 04/2018

RECEIVED

MAY 29 2018

PRIME CLERK LLC

5/24/2018