Ibk9pra

```
 1                      UNITED STATES DISTRICT COURT
                         DISTRICT OF PUERTO RICO
 2      ------------------------------x
        In re:
 3                                              PROMESA
                                                     Title III
 4
        THE FINANCIAL OVERSIGHT AND
 5      MANAGEMENT BOARD FOR PUERTO RICO,

 6      as representative of

 7
                                            No. 17 BK 3283-LTS
 8                                          (Jointly Administered)

 9      THE COMMONWEALTH OF PUERTO
        RICO, et al.,
10
                        Debtors.
11
        ------------------------------x
12      In re:

13                                              PROMESA
                                                     Title III
14
        THE FINANCIAL OVERSIGHT AND
15      MANAGEMENT BOARD FOR PUERTO RICO,

16      as representative of

17
                                            No. 17 BK 3284-LTS
18
        PUERTO RICO SALES TAX
19      FINANCING CORPORATION
        (COFINA),
20
                        Debtor.
21
        ------------------------------x
22
                                            New York, N.Y.
23                                          November 20, 2018
                                            9:53 a.m.
24

25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ibk9pra

1                              MOTION HEARING

2       Before:

3                        HON. LAURA TAYLOR SWAIN

4                                                    District Judge

5                              APPEARANCES

6       PROSKAUER ROSE LLP
             Attorneys for Financial Oversight and Management Board for
7       Puerto Rico
        BY:  MARTIN J. BIENENSTOCK, ESQ.
8            BRIAN S. ROSEN, ESQ.
             CHRIS THEODORIDIS, ESQ.
9            STEVE MA, ESQ.

10      QUINN EMANUEL URQUHART & SULLIVAN, LLP
             Attorney for The COFINA Senior Bondholders' Coalition
11      BY:  SUSHEEL KIRPALANI, ESQ.

12      REED SMITH LLP
             Attorneys for The Bank of New York Mellon
13      BY:  KURT F. GWYNNE, ESQ.
             ERIC A. SCHAFFER, ESQ.

14

15      HALPERIN BATTAGLIA BENZIJA, LLP
             Attorney for Lehman Brothers Holdings, Inc.
        BY:  WALTER BENZIJA
16           DEBRA COHEN

17      LAWRENCE DVORES
             Pro Se

18

19

20

21

22

23

24

25

                     SOUTHERN DISTRICT REPORTERS, P.C.
                            (212) 805-0300

1          THE COURT: *Buenos días*.  Please be seated.

2          (Case called)

3          THE COURT:  Again, *buenos días*.  Welcome, counsel,

4    parties in interest, members of the public and the press, those

5    in San Juan and the observers by telephone.

6          As usual, I remind you that, consistent with Court and

7    Judicial Conference policies and the orders that have been

8    issued, there is to be no use of any electronic devices in the

9    courtroom to communicate with any person, source, or outside

10   repository of information nor to record any part of the

11   proceedings.  Thus, all electronic devices must be turned off

12   unless you are using a particular device to take notes or to

13   refer to notes or documents already loaded on the device.  All

14   audible signals, including vibration features, must be turned

15   off.  No recording or retransmission of the hearing is

16   permitted by any person, including but not limited to the

17   parties or the press.

18         And anyone who is observed or otherwise found to have

19   been texting, e-mailing, or otherwise communicating with a

20   device from a courtroom during a court proceeding will be

21   subject to sanctions, including but not limited to confiscation

22   of the device and denial of future requests to bring devices

23   into the courtroom.

24         Today we are here for a status report concerning the

25   COFINA claims and anticipated use of the bulk objection

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ibk9pra

1    procedures that were approved at the most recent omnibus

2    hearing and for argument on the application for approval of the

3    disclosure statement and certain procedures in connection with

4    the proposed plan of adjustment for COFINA.

5            We'll begin with the status report.

6            Mr. Rosen, good morning.

7            MR. ROSEN:  Thank you, your Honor.

8            THE COURT:  Just one second.  We're having a problem

9    with audio to San Juan so if you'll just hold off until we get

10   that straightened out.  Thank you.

11           This is just a test of audio.  Testing.  One, two,

12   three.

13           Mr. Rosen, would you say, "Testing.  One, two, three."

14           MR. ROSEN:  Testing.  One, two, three.

15           THE COURT:  Sorry.  We're still having technical

16   difficulties so we're trying to get them straightened out as

17   quickly as possible.

18           Testing.  One, two, three.

19           So I'm moving my microphone a lot closer and

20   apparently that helps.

21           So we can go on, Mr. Rosen.

22           MR. ROSEN:  Thank you very much, your Honor.  Brian

23   Rosen, Proskauer Rose.  I'm here on behalf of the Oversight

24   Board along with my partner, Mr. Martin Bienenstock.

25           Your Honor you indicated at the outset that we're here

Ibk9pra

1    actually for two separate items.  One is the status report and

2    the other is the disclosure statement hearing.  But, as you

3    noted, those are inextricably linked to each other because of

4    the voting, the solicitation process.

5         So I'd like to start off, first, by thanking the

6    people who have allowed us to get here today for what I believe

7    is a virtually uncontested disclosure statement hearing.  And

8    specifically I'd like to note the assistance that we had from

9    Judges Houser, Ambro and Atlas in connection with the mediation

10   process and actually throughout the process to this day we've

11   been in constant communication and without their efforts I

12   believe that we would not have been able to get to this point

13   in time in the COFINA case.

14        I'd also like to thank all of the parties who are in

15   this room for making those negotiations, although sometimes

16   long and tedious, but ultimately successful and specifically

17   the COFINA agent, the Commonwealth agent and all of the parties

18   to the amended PSA.

19        Your Honor, with respect to the first item on the

20   agenda, that is with respect to the claim status report.  As

21   you will recall, I've given several status reports before about

22   the number of claims that have been filed in these cases.  And

23   pursuant to the various bar date orders, the first and then the

24   extension to it, there have been approximately 3,478 -- so

25   3,480 -- claims filed against COFINA.  And, your Honor, we

Ibk9pra

1    intend to actually file eleven omnibus objections in the COFINA

2    case to approximately 3,170 of those claims.

3         The reason for that obviously, your Honor, is because

4    we would like to work within the solicitation procedures and

5    the bankruptcy rules so that we can obviate the need to send

6    multiple packages of solicitation materials to the same parties

7    who may not actually need it.

8         And specifically, your Honor -- and I'll get to this

9    in a second -- with respect to the bond claims, your Honor,

10   there are master bond claims that have been placed on file by

11   the Bank of New York Mellon which is the trustee.  But we've

12   also had a myriad of -- and I'll go through those in a

13   minute -- number of individual bond claims that have been filed

14   by holders of bond claims unnecessarily so.

15        So those people will be solicited through the nominee

16   process that is used in all of major cases where you have

17   retail holders, your Honor.  So we wanted to make sure that we

18   reduced the cost as much as possible, file objections to those

19   claims so that we didn't have to send those multiple packages.

20        The current contemplation, your Honor, is that -- well

21   let me backup even more.  Your Honor, you asked us by way of

22   the orders that you entered last week to file with the Court a

23   form of notice that would be used in connection with the

24   omnibus objections.  We filed that on Friday after consultation

25   with the Unsecured Creditors Committee and, of course, after

Ibk9pra

1    having discussions with the Administrative Office,

2    Ms. Elizabeth Abdelmasieh, and I hope I pronounced that

3    correctly.

4            Your Honor, we thought at that time that we had

5    actually filed the English and the Spanish version of that.  It

6    turns out we found out last night that the Spanish version was

7    not attached to that notice of presentment.  So we refiled it

8    last evening so that the Court has both the English and the

9    Spanish versions available.

10           Those are notice for presentment for Thanksgiving, and

11   we didn't think you would do it at halftime of one of the

12   football games.  But, your Honor, if the Court would consider

13   those orders or that form of notice as soon as possible next

14   week, we would greatly appreciate it.

15           THE COURT:  Do you want to talk about it now or do you

16   want to go through your presentation?

17           MR. ROSEN:  Any way you want to go, your Honor.

18           THE COURT:  Well my concern in asking for a filing of

19   the exemplar of the notice and in setting the specific

20   subtopics that I was asking you to discuss today is to maximize

21   the clarity of the notice regarding the practical effect on

22   unrepresented individual bondholders, minimize confusion,

23   minimize the need for follow-up inquiries about voting or the

24   effect of the objection, and, frankly, to ensure the ability of

25   the Court's staff to continue to manage the case smoothly over

Ibk9pra

1    the holidays.

2            And the proposed generic form of notice that has been

3    filed takes the, I'll call it, legally cautious and correct

4    track of saying this is something important that affects your

5    rights.  And what typically follows from that, especially in

6    the context as we saw it with the bar date order is that there

7    are a lot of individual people who don't have lawyers who have

8    questions about what this means, and they come to the

9    courthouse, and our courthouse staff is limited.

10           And so, as I understand it from what you've said here

11   and the contextual information I've been able to glean from the

12   filings, you are using this procedure in order to eliminate

13   multiplication of a claim that is likely valid or may well be

14   valid.  So this is a procedure in which the, at least as to

15   duplicative claims, the intent is not to leave someone with no

16   claim of record at all or no opportunity to vote.  Well, we

17   have a little Tweety Bird effect.  These are always

18   interesting.  All right.

19           MR. ROSEN:  Your Honor, if I could try and address

20   exactly what your concern is.  We have what we filed with the

21   Court was a form of notice with respect to the initial omnibus

22   objection that we're going to file.  And that omnibus objection

23   is for subsequently amended claims and very few that would be

24   included in there.  It is our intention, your Honor, to tailor

25   each notice, though, specifically for the form of omnibus

Ibk9pra

1    objection that is being filed.  So in subsequent ones where it

2    is a duplicate bond claim or for one there was a cross debtor

3    duplicate claim.  We are going to make it very clear that this

4    is not removing their claim or their entitlement to a recovery

5    but rather just that we are removing the claim from the claims

6    register.

7            And even, your Honor, in situations where it is an

8    incorrect debtor, we are making very clear in the form of

9    notice that their claim will be transferred to the appropriate

10   debtor and be considered at a time down the road on a more

11   substantive basis.

12           We have been working with Prime Clerk and with the

13   Court personnel to ensure that there is not the concern that

14   the Court had or that the Clerk's Office in Puerto Rico had in

15   connection with the initial bar date itself.  We have, and

16   Prime Clerk has even offered to be on-site to assist the clerk,

17   but it's my understanding that the Clerk of the Court at this

18   time has indicated that that may not be necessary.

19           So, we have made -- we're doing everything we can to

20   work with the Clerk's Office, Prime Clerk, and even the

21   administrative office in Washington to make sure that there are

22   no concerns.

23           But the most important one that you've already

24   articulated is that there will be a banner on each of these

25   notices as to exactly what will happen depending upon what is

Ibk9pra

1   being covered in the omnibus objection itself so that they

2   don't have that concern that they will not actually have a

3   claim.  These are purely nonsubstantive, ridding the registry

4   of claims that didn't need to be filed in the first instance

5   because they're covered elsewhere.

6          THE COURT:  I'm glad to hear that that's the plan.  I

7   don't see such a banner on the one that you filed.

8          MR. ROSEN:  That one only actually pertains to three

9   claims also, your Honor.  I apologize for not getting that out

10  there.

11         THE COURT:  And as to voting, the procedure that

12  you're asking me to approve says that amended claims are

13  automatically deemed to supercede the original claims for

14  voting purposes anyway.

15         So what I will ask you to do is to follow up with

16  exemplars of the banners and continue the follow-up

17  conversations with the Administrative Office and the Clerk's

18  Office and, of course, we'll facilitate making sure that the

19  people who need to be available to you are available to you so

20  that any -- so that the notices are as clear as possible and

21  any on-site arrangements to facilitate the ability of Prime

22  Clerk and court personnel to direct inquirers back to the

23  written materials and not be in an awkward position of not

24  being able to give legal advice --

25         MR. ROSEN:  Yes.

Ibk9pra

1          THE COURT:  Is done in a way that is best for all.

2          MR. ROSEN:  Yes, your Honor.  It's our intention at

3     this point to file something that the Court were to authorize

4     the form of notice, but to file on or before November 30, so a

5     week from this coming Friday, eleven omnibus objections, the

6     first four of which, your Honor, pertain to approximately 30

7     claims in total.  It is the five --

8          THE COURT:  The first four are for 30 claims in total,

9     not for --

10          MR. ROSEN:  About 35 in total.  But they're a group.

11     The first one is 3.  The second is 13.  The third is 5.  And

12     the fourth is 12; so approximately 33 to 35 omnibus -- claims

13     covered by those first four omnibus objections.

14          The 5th through the 11th, though, your Honor, and

15     just specifically the 5th through the 9th, each of those

16     have five hundred claims on them because that is the amount

17     that the Court authorized us to include on an omnibus

18     objection.  And the 10th has 350 on it.

19          Those are all duplicate bond claims, your Honor.  So

20     we don't foresee any issues associated with that and, as I

21     said, we'll make sure that the banner reflects exactly how they

22     are covered.

23          And the 11th, your Honor, pertains to 284 claims for

24     the incorrect debtor.  And, again, instead of disallowance we

25     are planning, so that those claims are moot, to the appropriate

Ibk9pra

1   debtors titled to the case.

2          Your Honor, if it makes it easier for you, my

3   suggestion would be that we provide the Court with the form for

4   all eleven so that you feel comfortable that we are making sure

5   that each of these people know that their claims are not being

6   wiped out in total; we're just getting rid of them from a

7   nonsubstantive basis.

8          THE COURT:  Yes.  I would appreciate that.  So what

9   we'll do is terminate the docket entries on the current notices

10  of presentment in anticipation of getting updated notices of

11  presentment that are more comprehensive.

12         MR. ROSEN:  Due to the holiday, your Honor, I just

13  want to say that that may be on Monday that it gets filed.

14         THE COURT:  We'll be looking out for it whenever that

15  comes.

16         Is the gentleman still here who is working on the

17  sound?

18         THE DEPUTY CLERK:  Yes.

19         THE COURT:  All right.  Would it be helpful to him if

20  we stop talking with the Tweety Bird sound effect?

21         THE DEPUTY CLERK:  It's better to keep talking, they

22  said.

23         THE COURT:  All right.

24         MR. ROSEN:  Your Honor, just to continue a little bit

25  more with the claims process.  We have included the provisions

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ibk9pra

1   that the Court asked of me when we met on November 7.  So it

2   isn't entirely possible that these -- when we do file those

3   eleven omnibus objections, they may not even come on for

4   hearing until the omnibus hearing date later in January, even

5   after the COFINA confirmation hearing, because it's irrelevant

6   from our standpoint once the objection is filed that they

7   actually be heard prior to the confirmation hearing.

8          So, your Honor, unless you have any more questions

9   with respect to claims process, that is all I have to add on

10  that.

11         THE COURT:  I think that I covered my concerns.  Let

12  me -- we covered my concerns.  Let me just check.

13         And so do you anticipate that you're making any

14  objections on the basis of untimely filing?

15         MR. ROSEN:  No, your Honor.

16         THE COURT:  All right.

17         MR. ROSEN:  Not at this time and I'm not sure if we

18  ever would anyway, but not at this time.

19         THE COURT:  All right.  So just one moment.

20         (Pause)

21         THE COURT:  All right.  We're doing the

22  hyper-technical move of turning the system on and off.  So

23  let's all be patient.

24         (Pause)

25         MR. ROSEN:  Testing.  One, two, three.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ibk9pra

```
 1              THE COURT:  Testing.  One, two, three.

 2              Great.  So we're just checking to make sure that we

 3    can be heard in Puerto Rico.  We can?

 4              MR. ROSEN:  Perhaps if the gentleman waves in the

 5    video.

 6              THE COURT:  If you can hear me in Puerto Rico, please

 7    wave your hand.

 8              THE DEPUTY CLERK:  We're good.

 9              THE COURT:  All right.  Maximum courtroom demeanor in

10    Puerto Rico.

11              MR. ROSEN:  Your Honor, if I could just go back one

12    more time.  If we were to file the notice of presentment on

13    Monday as I indicated, I think under the local rules that would

14    require a seven-day notice period and that will kick me past

15    the 11-30 solicitation time.  So if I can make an oral motion

16    right now, your Honor, to reduce that time period or even, as

17    long as we file it, the Court will consider it and enter it

18    because it's not a situation where we're looking for objections

19    to be filed or anticipate any objections to be filed.

20              THE COURT:  The oral motion to shorten the time on the

21    notice of presentment for the revised objection cover notices

22    is granted.  We will use a two-day, 48-hour notice of

23    presentment period.

24              MR. ROSEN:  Thank you very much, your Honor.

25              THE COURT:  Thanks very much.
```

Ibk9pra

1          So now we'll move to the main motion regarding the

2     disclosure statement and procedures and we're going to set you

3     up with a 30-minute clock for your opening statements.

4          MR. ROSEN:  Hopefully I won't even need that, your

5     Honor.

6          Your Honor, again, Brian Rosen and Martin Bienenstock

7     from Proskauer Rose in connection with the disclosure statement

8     hearing.

9          Your Honor, as the Court is well aware, the plan of

10    adjustment for COFINA and the disclosure statement related to

11    it is predicated upon the settlement or the compromising

12    settlement which is also subject to the 9019 motion, all of

13    which we filed on October 19, last month.

14          Your Honor --

15          THE COURT:  It's a little busy in here but we're all

16    right.  Let's keep focused and keep going.

17          MR. ROSEN:  Doing my best.

18          THE COURT:  Thank you.

19          MR. ROSEN:  Your Honor, the plan of adjustment, as I

20    indicated before, was the hard work of many different parties

21    in connection with the mediation process led by the three

22    judges I referred to earlier.  We had many sessions at the

23    Proskauer Offices and we were able to achieve an understanding,

24    based upon the agreement in principle that had been reached by

25    the COFINA agent and the Commonwealth agent, then the Oversight

Ibk9pra

1    Board got involved in that process, your Honor, to build out

2    the securities and develop the plan of adjustment that were --

3    are currently included in the plan of adjustment and the

4    subject of the disclosure statement here today.

5           As part of that process, your Honor, the amended and

6    restated plan and support agreement has the support of over

7    $10 billion worth of bond claims to either the holders

8    themselves or the monoline insurers of those bond claims, your

9    Honor.  As such, we believe it has an overwhelming support.

10   And I believe by the fact that we only had five extremely

11   limited objections interposed to the disclosure statement, it's

12   a testament to the work that was put in over the summer and to

13   get to the plan of adjustment and the disclosure statement

14   phase.  And even, your Honor, today I'm happy to report that I

15   believe that we have been reduced, out of those five

16   objections, to one remaining objection and that is on behalf of

17   a pro se claimant.  But I'll let the other people speak for

18   themselves at the appropriate time.

19          Your Honor, as I indicated there were five objections

20   interposed.  The first was by Lehman Brothers.

21          And we've included all of these, your Honor, if you

22   don't have the benefit of it, in our response, we put forth a

23   chart there that went through the five objections and our

24   position and what they asserted in theirs.

25          THE COURT:  Yes.  And I have reviewed both the

Ibk9pra

1    objections and your chart.

2         MR. ROSEN:  OK.

3         Well, your Honor, in connection with all of that, when

4    we filed the amended plan last Friday, and when we filed the

5    revised disclosure statement, we made certain changes to the

6    disclosure statement to account for not only changes that had

7    been suggested by the five objecting parties but also multiple

8    other parties that informally contacted us to convey their

9    thoughts and also for the change in circumstances that have

10   occurred since October 19 when the original plan and disclosure

11   statement were filed.

12        Specifically, your Honor, one of the main changes was

13   that the new bond legislation that is a condition precedent to

14   effectiveness of the plan has been enacted by the Commonwealth.

15   And so there is a detailed description in the disclosure

16   statement.

17        Your Honor, I apologize.  We provided black line

18   copies of the plan and disclosure statement to parties that

19   asked.  We also filed them with the Court yesterday.  I don't

20   know if the Court --

21        THE COURT:  I appreciate that.  Yes.

22        MR. ROSEN:  We do, for those that still need one, we

23   have multiple copies here in the courtroom if anybody would

24   like one.

25        So, your Honor, while you may see some deletions or

Ibk9pra

1    some additions that look like a lot were actually done, they

2    are really just accounting for a change in circumstances for

3    the most part: Like the new bond legislation, like inclusion

4    of provisions associated with the new bond indenture that is

5    being negotiated by the parties.  And even though we've

6    included a lot of those, we do refer in that particular

7    instance to the plan supplement that will be filed with the

8    Court before the voting deadline because we know that that

9    indenture is an evolutionary product, and we're constantly

10   getting more and more comments to it, and we wanted it to be a

11   live document and let everybody know where we are at this point

12   in time.

13          The other main deletion or what looks like a main

14   deletion from the -- not only the disclosure statement but also

15   the plan was one of the provisions that we had in the plan was

16   that the monoline insurers could make an election prior to the

17   commencement of the disclosure statement hearing.  We got word

18   last week that Assured had made its election and they asked us

19   to delete the secondary treatment that was offered pursuant to

20   the plan.  So we did that, your Honor.

21          So you'll see a lot of red, if you were looking at the

22   black line, and all that really does is takes out one of the

23   options because Assured had already made its election.

24          We also, your Honor, because, to the point that you

25   made at the outset about clarity for a lot of people who might

Ibk9pra

1    not want to wade all the way through a document, and I know

2    that one of the objections, I think it might be from

3    Mr. Dvores, was about -- or the other pro se claimant was about

4    612 or 621 pages of gobbledygook and they didn't have the

5    ability to wade through it.

6            We put at the beginning of the disclosure statement a

7    Q and A of short questions and short answers which would allow

8    them to understand exactly what is being done pursuant to the

9    plan, what their rights are in the solicitation process, do

10   they have to vote, do they not have to vote, do they need to

11   make an election, do they not need to make an election.

12           So that is at the outset of the disclosure statement.

13   And we thought it would be much easier for a lot of people, and

14   certainly in the retail world, to understand that.  So that is,

15   I think, the first ten pages or so.  But it really is a

16   distillation of the six hundred and some odd pages that are

17   behind it.

18           THE COURT:  So by way of an executive summary, at a

19   normal person level.

20           MR. ROSEN:  Exactly.  If they were to log online and

21   ask for FAQs, this is what it actually is.  So we put the FAQs

22   in writing for them.

23           THE COURT:  Thank you.

24           MR. ROSEN:  As I said, your Honor, there were very few

25   substantive changes to the disclosure statement because -- and

Ibk9pra

1    we felt that there weren't really many that needed to be

2    addressed.  There were some changes throughout the process to

3    account for just some word changes that people had asked for,

4    some inclusions in the tax section.  But all of those, I submit

5    to your Honor, were relatively insignificant or insignificant

6    in full.

7             If I can move on to the five objections that were

8    interposed, your Honor.  The first was by Lehman.  And Lehman

9    had -- is a party to what is referred to as the DSDA.  And they

10   had some questions or they asked us to more fully describe the

11   DSDA and what the treatment was.

12            We had included the treatment, in our mind, your

13   Honor, as a general unsecured claim.  And this was especially

14   so because Lehman in its proof of claim had said that it was a

15   general unsecured claim.

16            So, your Honor, it's very clear now, pursuant to the

17   changes that we have made in the disclosure statement, that it

18   is an unsecured claim and it is our intention to either, prior

19   to the hearing on confirmation or at the confirmation hearing,

20   pursuant to the terms of the plan, to reject the DSDA,

21   resulting in general unsecured claim and damages associated

22   with it.

23            I believe, your Honor, and counsel will stand up when

24   they think it's appropriate, to -- I believe that this resolves

25   the objections along with minor other changes that we put in

Ibk9pra

1  the disclosure statement about claims and causes of actions

2  that may exist.  So I hope and I believe that the Lehman

3  objection to confirmation -- excuse me, to the disclosure

4  statement itself has been taken care of.

5       THE COURT:  Now, as I recall, the Lehman objection

6  also queried a provision on third party releases.  That was

7  tied up in Lehman's perception of how it was going to be

8  treated, but I do see that in the revised disclosure statement

9  and plan you indicated that there is a change in the third

10 party release provision and so this seems as good a time as any

11 for you to help me understand that.

12      MR. ROSEN:  Absolutely, your Honor.

13      We were contacted, your Honor, by one of the federal

14 agencies asking us to remove the third party release and the

15 deemed consent provision that was included in the Plan of

16 Adjustment; specifically, if a holder were to receive a

17 distribution, they were deemed to consent to provide a third

18 party release.  There was also a provision in the Plan of

19 Adjustment that provided for if you don't effectively opt out

20 you are deemed to provide a third party release.

21      They asked us, because of the nature of the retail

22 holdings and the people in Puerto Rico, to remove that

23 provision from the plan.  So we have taken out the third party

24 release in its entirety from the plan.  There are certain other

25 limited releases that are included in the plan but they are not

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ibk9pra

1    of the third party nature.

2            There is one that I will get to later, your Honor,

3    concerning the stipulation that we entered into with the

4    Unsecured Creditors Committee/Commonwealth agent as to how that

5    works, but it's not in the context of the great unwashed not

6    knowing about a third party release.  It's specifically with

7    respect to the parties to the Amended Plan and Support

8    Agreement.  I can go through that now if you'd like, your

9    Honor.

10           THE COURT:  That will be helpful.

11           MR. ROSEN:  OK.

12           Your Honor, pursuant to the stipulation that we

13   reached with the Unsecured Creditors Committee and even the

14   Amended Plan and Support Agreement, the parties to the Plan

15   Support Agreement agreed to provide the government releasees,

16   which includes the Oversight Board, AAFAF, COFINA, the

17   Commonwealth and what's defined as the related persons, a third

18   party release.  So those parties to the PSA have contractually

19   agreed to provide that third party release.

20           As part of the stipulation that the Court approved in

21   connection with the understanding reached by the Oversight

22   Board of the COFINA agent and the Commonwealth agent, we've

23   agreed that under certain circumstances the Commonwealth agent

24   will similarly receive exculpation under what is now 30.7 of

25   the Plan of Adjustment and a release which would be in 30.2 of

Ibk9pra

1    the plan from the PSA parties.

2           The amended plan that was filed on Friday did not

3    include those scenarios.  So, one of the things that we will

4    like to include when we get -- I'll move up my comments, when

5    we submit to the Court a revised or finalized disclosure

6    statement and a second amended plan will include a provision

7    that the Commonwealth agent will be entitled to a third party

8    release solely from the PSA parties that previously agreed to

9    provide one to them.  And it would be only in the event that

10   the Commonwealth agent did not file what's referred to in that

11   stipulation as a motion to enforce, or did not object to

12   confirmation of the plan, or did not object to the 9019 motion

13   which is currently on file.

14          THE COURT:  And so the government party releases, are

15   those only being provided by parties to the PSA or is there a

16   release of current or former government officials, service

17   providers and professionals baked into plan confirmation that

18   would affect everyone?

19          MR. ROSEN:  The answer is no.

20          The difference or the distinction --

21          THE COURT:  That was an either/or.

22          MR. ROSEN:  OK.  The difference between the government

23   releasees versus the debtors is the inclusion of, obviously,

24   the Commonwealth AAFAF and the Oversight Board.  The Oversight

25   Board gets the benefit of the exculpation because it's for the

Ibk9pra

1   period from the Title III case going forward.

2          To your direct question, though, it is not extending

3   back to all of those things and all of those people and all of

4   those extended groups that you referred to.  It is solely from

5   the PSA parties and no one else.

6          And the debtor will –– COFINA will get the benefit of

7   the discharge provision and the release of claims that

8   otherwise it would be entitled to.

9          THE COURT:  COFINA the entity, but not ––

10         MR. ROSEN:  Yes.

11         THE COURT:  –– all third parties relating to COFINA?

12         MR. ROSEN:  That's correct, your Honor.

13         THE COURT:  Thank you.

14         MR. ROSEN:  My pleasure.

15         The next objection, your Honor, was from Bank of

16  New York Mellon.  And Bank of New York Mellon had some

17  questions or was requesting some additional information in

18  connection with the consummation costs that are going to be

19  paid pursuant to the Plan of Adjustment.

20         And I would say that, just to be clear at the outset,

21  this is not with respect to any objections that they may have

22  in connection with confirmation of the plan, either for the

23  consummation costs or any other issues that it may raise.  This

24  is solely with respect to the disclosure statement and all of

25  those other objections that they may have, obviously, would be

Ibk9pra

1   preserved.

2          But they did ask for some additional information and

3   we believe that we've provided, as set forth in the response, a

4   lot of information.

5          But even subsequent to the filing on Friday, counsel

6   for Bank of New York Mellon asked for some other information.

7          Specifically, there was a question as to whether or

8   not the Oversight Board had reviewed billing statements that --

9   with respect to the fees and expenses that have been incurred

10  by the amended PSA parties.

11         Your Honor, the answer is we have not.  We have relied

12  upon the representations of counsel, that they have told us the

13  fees and expenses that have been incurred by them and their

14  respective clients.

15         And based upon information that we have received to

16  date, those fees and expenses, we will include this in a

17  modification to the disclosure statement as requested by Bank

18  of New York Mellon, they exceed $135 million since the petition

19  date going forward, to today.  They may incur additional

20  expenses in connection with consummation of the plan, including

21  their heavy involvement, your Honor, in the negotiation of the

22  new bond indenture.  They've been actively involved in the

23  promotion of the new bond legislation, which, as I indicated,

24  has been enacted, and there are a myriad of other things that

25  we are in constant contact with the amended PSA parties to

Ibk9pra

1   further develop to get it to the effective date of the COFINA

2   Plan of Adjustment.  But as of now it's been reported to us

3   $135 million have been incurred postpetition.

4           THE COURT:  Postpetition.  So that notwithstanding the

5   references to Lex Claims and other prepetition litigation in

6   some of the submissions, it does not take into account those

7   expenses?

8           MR. ROSEN:  That is my understanding, your Honor,

9   based upon the information provided to us.

10          So we will make that change as requested by Bank of

11  New York Mellon.

12          THE COURT:  And may I assume that in the advocacy on

13  the merits for confirmation you will provide evidentiary

14  support and legal argument supporting the proponents' theory of

15  propriety of the consummation cost payments and meeting -- oh,

16  no, the birds are back -- the legal arguments that were

17  surfaced in this round of submissions?

18          MR. ROSEN:  Yes, your Honor.  We will absolutely

19  include in our brief in support of confirmation as well as any

20  the declarations that we file with the Court the evidence

21  supporting the consummation costs.

22          THE COURT:  Thank you.  And I apologize to everyone.

23  We'll try to get this fixed again but let's go on and everyone

24  who hears birds just bear with us.  We hear them too.

25          MR. ROSEN:  Thank you, your Honor.

Ibk9pra

 1          Your Honor, Bank of New York Mellon also asked us to

 2  state on the record with respect to the balance of the

 3  consummation costs, meaning that 313 million minus the 135

 4  million, what that relates to.  And as we've indicated in our

 5  papers and I believe as the senior coalition or --

 6          THE COURT:  I'm sorry.  It's not working for the court

 7  reporter either.  So we'll just be quiet for a minute.

 8          THE DEPUTY CLERK:  They're on the way, Judge.

 9          THE COURT:  The AV people are on their way.

10          MR. ROSEN:  Your Honor, could we take a five-minute

11  recess while they do this and people may want to discuss some

12  issues?

13          THE COURT:  Yes.  Let's call it -- now it's gone away.

14  Should we seize the moment or should we take a break?

15          Let's seize the moment and when it starts up again we

16  will then take the break.

17          MR. ROSEN:  OK, your Honor.  Your Honor, those, I

18  think, were the remaining points that Bank of New York Mellon

19  had asked me to make clear on the record.  But I'll leave to

20  Mr. Gwynne if he has any remaining issues that he'd like to

21  discuss.

22          Your Honor, there was an objection also interposed by

23  what we referred to as the credit unions and it's my

24  understanding that they are not here today.  We believe that we

25  included the requested information, however, that they sought

Ibk9pra

1    with respect to their adversary proceeding and that there

2    was -- and also the existence of the unions themselves and

3    their role in the case.  So I don't think that there's anything

4    more that we need to include with respect to the unions.

5           There was -- there were two pro se objections that

6    were interposed.  One was by -- and I apologize, if the

7    gentleman is on the phone, for butchering the name, by

8    Mr. Stephen Mangiaracina I believe it is.  And also by

9    Mr. Lawrence Dvores.  And I apologize if I mispronounced that.

10   Mr. Dvores is here in the courtroom.  The first gentleman is

11   not.

12          Your Honor, they had raised certain questions about

13   the timing of the filing of objections, the breadth of the

14   disclosure statement itself.  And there was even a question

15   about the need to bring some criminal charges against people

16   involved in COFINA and in connection with the Title III case

17   itself.

18          Your Honor, we believe that there has been appropriate

19   due process.  The timeframe that was laid out by the Court has

20   been followed to the tee.  The disclosure statement filed in

21   connection with the Plan of Adjustment has been filed in

22   accordance with the terms of PROMESA and the applicable

23   provisions of the Bankruptcy Code.

24          While it is long, any disclosure statement is

25   necessarily long, and it's probably, as we noted in our reply

Ibk9pra

1    chart, your Honor, it's consistent with the length that's also

2    been filed in the other municipal cases which are out there.

3         But as I indicated also at the outset, your Honor,

4    we've tried to simplify this process for retail holders by the

5    Q and A that we put at the front of the disclosure statement

6    which distills all of the information in there and makes it

7    easy.  Likewise, of course, your Honor, there is a table of

8    contents which allows them to go to a specific reference in the

9    disclosure statement if they think it's appropriate.

10        I believe, your Honor, that this addresses the pro se

11   objections, although Mr. Dvores has indicated to me that he

12   would like some time to address the Court so, obviously, we

13   should allow that.  And if I could then, with respect to that,

14   your Honor, reserve any time to respond to what Mr. Dvores has

15   to say.

16        Your Honor, in the event that the Court is inclined to

17   approve the form of disclosure statement -- and as I said, we

18   would probably file a short modification to it that would be

19   black lined to address some of the things that we've talked

20   about here today.

21        We have filed a proposed form of disclosure statement,

22   approval order, together with all of the ballots.  We would

23   want to refile that with the Court to include things that were

24   done today, any rulings that the Court made today, and include,

25   as I said, modifications to the disclosure statement.

Ibk9pra

1          Your Honor, there is one other piece of information

2      that I would like to provide to everybody, and I apologize, I

3      have it here on my phone that I need to read it from.  So if I

4      could just open that back up, if I put in the correct password.

5      Yes.

6          Your Honor, as I've indicated we have -- and the

7      Oversight Board has undergone a process since the inception of

8      the Title III cases consistent with PROMESA to certify fiscal

9      plans.  And the most recent certification of fiscal plans --

10     and by the way, your Honor, this is not directly applicable to

11     the COFINA disclosure statement but I wanted the benefit of the

12     Court -- I want the Court to have the benefit of this

13     information as well as the populace and whoever is on the

14     phone.

15         The COFINA fiscal plan was certified on October I

16     believe 18.  And the Commonwealth fiscal plan was certified,

17     the latest one, on October 23 of this year.

18         And, your Honor, through ongoing due diligence, as we

19     always indicate and we even told Judge Houser that we needed to

20     do more due diligence before we got to the mediation of the

21     next process, it's been determined by the Oversight Board that

22     there was an error or there's new information associated with

23     projected pension forecasts and projected PayGo payments that

24     were certified in the Commonwealth fiscal plan.  Those errors

25     are currently being reviewed by the Oversight Board and it is

Ibk9pra

1     believed that we will have more complete information on or

2     prior to December 7 of next month, your Honor.  And at that

3     time the Oversight Board will make a disclosure as to what it

4     understands the magnitude of that pension forecast or

5     calculation error that it had.

6            At this point, your Honor, the Oversight Board does

7     not envision making any revised or certifying a revised fiscal

8     plan prior to the January 16 COFINA confirmation hearing and,

9     as I indicated, your Honor, this is solely a Commonwealth

10    issue; it is not a COFINA issue.

11           THE COURT:  But January 16 is also a date for the 9019

12    motion on the Commonwealth side and the projections are at

13    issue in that connection as well and so do you anticipate a

14    supplemental filing in these matters that discloses and

15    explains the change and whatever impact the Board expects it to

16    have?

17           MR. ROSEN:  Well, your Honor, actually we've received

18    only three objections to the 9019 motion.  If the Court

19    recalls, the objection deadline was last Friday.

20           I know at least with respect to the Retiree Committee,

21    the Retiree Committee has tried to draw a linkage between the

22    9019 motion and the compromise and settlement and what the

23    Commonwealth fiscal plan provides.  Obviously we believe, and I

24    believe a lot of other parties in this courtroom believe, that

25    there is no such linkage.  Nevertheless, we will address each

Ibk9pra

1     and every one of those issues with the Retiree Committee and

2     any of the other parties that did interpose an objection.

3              The Retiree Committee has also served upon the

4     Oversight Board a limited discovery request associated with

5     solely fiscal plans and nothing having to do with the

6     compromise and settlement itself.  We will address those issues

7     with the Retiree Committee itself.

8              So there will be some information provided, your

9     Honor.  But, to be clear, we believe that there is absolutely

10    no linkage between the Commonwealth fiscal plan and the

11    recoveries pursuant to the compromise and settlement and the

12    compromise and settlement itself.

13             THE COURT:  Thank you.

14             MR. ROSEN:  Your Honor, with that I'd like to reserve

15    the balance of my time.

16             THE COURT:  I just have probably just one little

17    question for you.  Let me make sure it's one.

18             So this is the one that I know I have for you.  In the

19    current proposed order there's a provision that the debtor may

20    waive any defects or irregularities as to any particular

21    ballot, and that is linked up with a general statement in the

22    procedures that ballots can be rejected for various reasons.

23             May I assume that to the extent waivers are granted

24    they will be done in a manner that's consistent and reasonable

25    as to similarly situated ballots and that you'll include an

Ibk9pra

1    attorney certification to that effect with the tabulation?

2                  MR. ROSEN:  We will, your Honor.

3                  THE COURT:  And if you could throw in a couple words

4    to that effect in the revised order in that paragraph, I would

5    be grateful.

6                  MR. ROSEN:  We will, your Honor.

7                  THE COURT:  Thank you.

8                  MR. ROSEN:  Again, if I could reserve the balance of

9    time?

10                 THE COURT:  Yes.

11                 So I have Mr. Kirpalani down for three minutes for the

12   COFINA seniors.

13                 MR. KIRPALANI:  Thank you, your Honor.

14                 Good morning.  Susheel Kirpalani of Quinn Emanuel

15   Urquhart & Sullivan on behalf of the COFINA Senior Bondholders'

16   Coalition.

17                 Your Honor, we filed an updated Rule 2019 statement

18   reflecting our group's current holdings.  We currently have in

19   excess of $5 billion of senior and subordinate bonds issued by

20   COFINA.

21                 First, I'd like to express my heartfelt gratitude to

22   the governor of Puerto Rico, and to AAFAF, and to the

23   leadership of the Legislative Assembly, to the Oversight Board,

24   to the Court-appointed agent, the COFINA agent, Ms. Bettina

25   Whyte, who is here in the courtroom today.  And we all owe her

Ibk9pra

1    a debt of gratitude for a very difficult job.  And to the all

2    star mediation team that your Honor appointed.

3           I think all of these parties, including the various

4    private parties that participated in the mediation process,

5    worked hard to make order out of absolute chaos.  And while the

6    litigation machine previously unknown to man or woman may not

7    be completely shutting down, we are pleased to contribute, as

8    we said we would, in the a meaningful way to Puerto Rico's

9    financial future.

10          COFINA itself, your Honor, is perhaps the largest

11   single municipal bankruptcy in the history of the United

12   States.  And to have before us a paved path towards emergence

13   and the first Plan of Adjustment under PROMESA is a major step

14   that shouldn't be minimized.  It is also a major step towards

15   rebuilding confidence in the capital markets for Puerto Rico

16   which is critical under the legislation in order to liberate

17   Puerto Rico from the Oversight Board itself.

18          We know, your Honor, and have read the statements of

19   bondholders asking why they are not getting paid more money

20   from COFINA.  Trust me, I have a lot of clients who are not shy

21   and they feel the same way.  Folks on the Commonwealth side,

22   for their part, are feeling that not enough was given by

23   COFINA.  And in my experience, your Honor, that is probably the

24   hallmark of a good settlement.  It's easy to forget how high

25   the stakes were and how difficult this was in terms of it being

Ibk9pra

1    an all-or-nothing litigation that many of us worked on for

2    three-and-a-half years.  But the risks to both sides are

3    abundantly disclosed in the disclosure statement and we think

4    it's time for the vote.

5          The number of people that had to come together to make

6    this happen is staggering.  And I look forward, your Honor, to

7    seeing you on January 16 in San Juan and hopefully with

8    overwhelming support for the plan.

9          We'd like to wish the Court and your staff here in

10   New York and in San Juan a happy and healthy holiday season.

11         THE COURT:  Thank you very much.

12         Next on my list is counsel for Bank of New York

13   Mellon.  Mr. Gwynne.

14         MR. GWYNNE:  Good morning, your Honor.  For the

15   record, Kurt Gwynne from Reed Smith along with my partner, Eric

16   Schaffer, on behalf of the Bank of New York Mellon as trustee

17   for the COFINA bonds.

18         THE COURT:  Good morning.

19         MR. GWYNNE:  The beneficial holders, your Honor, of

20   the COFINA bonds are a diverse group.  Certainly there are a

21   number of well financed institutional investors but there are

22   thousands of retail COFINA holders that include single mothers,

23   retirees and other hard-working folks that rely upon the income

24   from the COFINA bonds to pay their living expenses.

25         Many of those retail holders could not afford

Ibk9pra

1    representation of counsel or to participate in the mediation.

2              Many of those retail holders either sent letters or

3    e-mails to your Honor expressing their concern for uneven

4    information.

5              Illiana Paz-Castellanos wrote to your Honor and

6    expressed her concern what it felt like to be losing her

7    hard-earned money while waiting everyday for the newspapers to

8    arrive because she didn't have a big enough claim to

9    economically be able to participate in the mediation.

10             Luis Abbott wrote a feeling of being in complete

11   darkness regarding the mediation and the settlement process.

12             Seema Balwada wrote to your Honor and specifically

13   questioned the 332-million-dollar payment to the mediation

14   participants.

15             There was one sentence in the 600-plus-page disclosure

16   statement originally relating to that two percent payment to

17   the consummation cost party.  For that reason, the Bank of

18   New York Mellon objected to the disclosure statement.

19             On pages 90 and 91 of the redline disclosure

20   statement, the debtor has made a much more complete disclosure

21   and will add the information that Mr. Rosen indicated would be

22   added to the disclosure statement before serving it and

23   soliciting votes from the holders.

24             Based on those additional disclosures made by the

25   debtors, Bank of New York Mellon's objection is resolved.

Ibk9pra

1          I do just want to make the record clear though, your

2     Honor, that there are a host of confirmation issues that Bank

3     of New York Mellon has and will raise.  Today is just about

4     disclosure, not about confirmation of the plan.

5          That's all I have unless your Honor has any questions.

6          THE COURT:  Thank you, Mr. Gwynne.

7          MR. GWYNNE:  Thank you, your Honor.

8          THE COURT:  And now for Lehman, Mr. Benzija.

9          MR. BENZIJA:  Good morning, your Honor.

10         Walter Benzija of Halperin Battaglia Benzija on behalf

11    of Lehman Brothers Holdings, Inc. as plan administrator for

12    Lehman Brothers Special Financing.  In the courtroom with me is

13    my colleague, Debra Cohen.

14         THE COURT:  Good morning.

15         MR. BENZIJA:  I'd like to confirm Mr. Rosen's

16    representations that following the filing of the omnibus reply

17    the bulk of the -- in fact, all of the objections with respect

18    to the disclosure statement that Lehman Brothers has filed has

19    been resolved.  We do have new language which adequately

20    describes the context of the debt service deposit agreement,

21    and we're also heartened to see that the third party releases

22    have been eliminated from the plan which was a concern of

23    Lehman's going in.

24         We do not, however, obviously for purposes of the

25    disclosure statement, condone or support the characterization

Ibk9pra

1    of Lehman's claim within the case and reserve our rights,

2    obviously, to object to its classification and its potential

3    treatment under the plan.  So that is not a disclosure

4    statement issue for today, your Honor, but obviously is

5    something that we've reserved the right to raise down the line.

6            As is often the case, even in cases as large as this,

7    the disclosure statement hearing is an opportunity to

8    potentially vet and to flag issues that may arise at

9    confirmation.  And we're grateful that a dialogue has begun

10   with the debtors with respect to our particular treatment and

11   hope to continue that in a beneficial manner.

12           Thank you, your Honor.

13           THE COURT:  Thank you.

14           I understand that there at least was at one point a

15   representative of the Cooperativa in San Juan.  Does anyone

16   wish to be heard from San Juan?

17           I think he's coming to the podium.  Thank you.

18           You may proceed.

19           OK.  We are not getting sound from San Juan now.  I

20   think that you can hear me.  Would you wave your hand if you

21   can hear me?

22           So you're waving your hand.  You can hear me.  That's

23   very good.

24           I was told that you might simply be withdrawing the

25   objection.  If that's true, would you give us a thumbs up on

Ibk9pra

1    the screen?

2              All right.  Thank you.  The Cooperativa objection is

3    withdrawn.  Thank you so much, sir.

4              We have trouble with sound everywhere this morning.

5              But now I understand that Mr. Dvores wishes to speak.

6              Good morning, sir.

7              MR. DVORES:  Good morning, your Honor.  My name is

8    Lawrence Dvores.  I'm here pro se for myself.  However, I am

9    happy to hear that there is another objector, Mr. Stephen

10   Mangiaracina -- I'm sorry.

11             THE COURT:  Mangiaracina, I think.

12             MR. DVORES:  Forgive me.  I have read his letters.

13   They are very good.  I don't necessarily go along with the idea

14   of charging criminality but certainly there's been an

15   abdication of duty on the part of the trustee to represent the

16   bondholders of COFINA.  Bank of New York Mellon has not done a

17   good job there, not done any job in my opinion.

18             In the same light, and going to the main question of

19   the adequacy of the notice of this disclosure, I think

20   Mr. Rosen has already indicated to the Court that the original

21   notice that was sent out to all of the holders of bonds such as

22   myself that was done on October 19 was inadequate.  The three

23   or four pages that that notice was didn't say anything about

24   the substance of the agreement, that plan of confirmation, Plan

25   of Adjustment, whatever you want to call it, didn't say

Ibk9pra

1   anything about that coming along.  And what the reference was

2   to this document online, of over six hundred pages of legal

3   jargon, which most folks, certainly myself, wouldn't be able to

4   interpret and understand.  So, what Mr. Rosen has done, very

5   kindly, is admit to the Court this morning that that was not a

6   sufficient document for disclosure purposes and that they have

7   amended and filed another disclosure document, this one with an

8   executive summary of some ten pages that would highlight the

9   main portions of the settlement, so-called, and refer to other

10  items within the main document if the participants, the

11  bondholders wanted to go further to understanding what's going

12  on.

13          I see that as an absolute admission that this first

14  document which I received -- and I haven't received the second

15  one because it was just filed, and I don't have access to the

16  same kind of electronic document service that he has.  The

17  document, such as I understand it, it's referencing an

18  agreement that is being proposed for a confirmation hearing.

19  And this agreement is going to give a split of the sales tax

20  collection which is subject to a lien of both the junior lien

21  bondholders and the senior lien bondholders.  It's going to

22  give this a split which is very satisfactory to the senior

23  bondholders because it's 93 percent recovery plus another

24  2 percent for their effort at mediating and bringing about this

25  Plan of Adjustment, while it only gives 56.4 percent recovery

Ibk9pra

1    to the junior lien bondholders.  That is, on its face, terribly

2    unfair.

3            Adding insult to injury is the fact that I've also

4    learned that the agreement, this Plan of Adjustment, is going

5    to allow the senior bondholders the past interest which has

6    been held by the Order of the Court, by the trustee, not paid

7    out as of August 1, 2017.  That money has been held in escrow.

8    It's almost two years worth of interest payments now.  That

9    money is going to go to the seniors.  What happens to the

10   juniors?  They don't get anything of that money that's been

11   held in escrow.  Why?

12           The problem here, however, hasn't started with this

13   Plan of Adjustment.  The start -- the problem started with a

14   bankruptcy filing itself.  It doesn't make sense.  COFINA was

15   solvent.  COFINA was paying its debts.  It owed money that it

16   collected from the sales taxes.  It owed that money first and

17   foremost, priority, to the bondholders, seniors and juniors.

18   They both had a statutory lien claim on that money.

19           That was recognized in the law that created COFINA.

20   It was recognized in the prospectuses that was given to

21   bondholders when they bought the bonds.  It's also been

22   recognized in the bond issuances and prospectuses that were

23   given to general obligation bondholders after COFINA was

24   enacted so that people who are buying general obligation bonds

25   were on notice of the COFINA claims -- of COFINA bondholder

Ibk9pra

1 claims of priority.

2          Now, I understand that the bankruptcy was contested by

3 a motion for summary judgment that was brought by different

4 parties, including insurance companies for the uninsured

5 bonds -- for the insured bonds, and by the unsecured senior --

6 uninsured senior lien bondholders.  So they brought that motion

7 for summary judgment to get a ruling from the Court upholding

8 the priority of the lien.  And somehow or other there was no

9 ruling made because the parties that were involved in that

10 motion decided we'll try and settle this all.  So they went

11 ahead with the blessing of the Court, which gave a stay.  And

12 they've been going onward with this business of mediation among

13 themselves to figure out who is going to get what.

14          Well their mediation efforts did not include the

15 junior sales tax bondholders.  So the mediation is not -- it's

16 not legitimate.  It's self-dealing.  And they dealt with

17 themselves pretty good because they've come up with a plan, as

18 I said, that's 93 percent recovery for the senior bondholders,

19 plus the back interest, plus another 2 percent, just for good

20 measure, for mediating.  And they left the junior bondholders

21 out in the cold.

22          Now the junior bondholders are very upset.  I can't

23 speak for anybody but myself.  But I've read letters that were

24 addressed to the Court by I'll call him Mr. M for short.  He's

25 from South Carolina.  He's done a magnificent job of outlining

Ibk9pra

1    for the Court all the things that were wrong with the

2    bankruptcy filing, how that was invalid, that was illegal, and

3    why it needs to be investigated.  He's done a magnificent job

4    in outlining the provisions of the settlement and so has a

5    woman named Seema Balwada who is a certified financial analyst.

6    So they've done that.  It's on the record of the Court.

7            It's for the Court now to decide that this Plan of

8    Adjustment that's been worked out by the senior bondholders and

9    the Puerto Rico general obligation people and who knows who

10   else was a party there to these secret negotiations is a very

11   flawed way of handling this case.  It has been the -- an

12   instrument through which an injustice is being made and which

13   it has to be corrected by the Court.  It needs a ruling on the

14   motion that was made that's been held up for these many months

15   as to the status of the lien of the bondholder on COFINA, both

16   the juniors and the seniors.

17           There's only one difference between the juniors and

18   the seniors under that lien.  If COFINA had not collected

19   enough money from the sales taxes to pay both the juniors and

20   the seniors, then the priority would go to the seniors.  They

21   would get the money.  If there was something leftover, then it

22   goes to the juniors.  That's the only difference.

23           This case and the way it's being handled is a very

24   strange case because I heard Mr. Rosen talk about the fact that

25   there's only -- well there's been one objection myself that's

Ibk9pra

1     here in court.  Others may have filed with the Court.  And

2     there's been 10 million bonds have been spoken for that more or

3     less approve the plan of confirmation, the Plan of Adjustment,

4     and that they represent a majority of I think 17 million COFINA

5     bonds that are outstanding.

6             Well, that other 7 million that have not agreed are

7     the little guys, the little people, the little women.  They're

8     the ones that are out in the cold.  They haven't spoken up.

9     You haven't heard from them except for a few.  Because of the

10    complexity of the case, it's so difficult to understand what

11    they're doing, what you're doing, the fact that it requires

12    tons of money to get a lawyer to represent you, which people

13    don't have, and even today the difficulty of coming to this

14    disclosure hearing, the hearing on the disclosure settlement.

15    I came because I live in New Jersey.  So it's very possible for

16    me to get on a bus and get on the subway and get here.  But the

17    others are scattered all around the country, and they're not

18    coming to this hearing, and neither are they going to go down

19    to Puerto Rico for the confirmation hearing.

20            So what is needed today is a recognition that this

21    process was flawed from the beginning.  It should never have

22    gone into a bankruptcy judgment because COFINA had the money,

23    was paying it.  It was only done at the direction of the

24    federal Oversight Board which was neglecting its own duties to

25    straighten out Puerto Rico's bad management; instead,

Ibk9pra

1    concentrating on how it could take a little group of

2    bondholders -- not little, many, but weak, divided, and always

3    be unrepresented and take advantage of them.  So, it's quite a

4    difficult thing to contemplate that this kind of injustice

5    could be carried out.

6              I'm reminded -- I wasn't a bondholder but I read about

7    it -- of -- it was around 1973 and New York City was on its

8    knees in terms of its finances and it actually signaled that it

9    was going to have to default on the payment of one-year notes.

10   And the bondholders in that case took the case up to -- they

11   were general obligation bonds, notes.  They took it up to the

12   Court of Appeals of New York State and New York State said:

13   No, you can't do that, the lien -- the obligation to that

14   bondholders takes precedent.  So for the other needs that you

15   have, legitimate needs, but you'll have to pay them.  And

16   you'll have to pay interest penalty on top of what you owe

17   them.

18             Well, long story short.  New York City was on its

19   knees.  If you remember the headline in the Daily News,

20   President Ford.  The City.  Drop Dead.  No Federal Aid for You

21   Guys.

22             Contrast that with the present.  New York City is now

23   AA rated, one of the strongest municipal credits that's around.

24             Puerto Rico, when the COFINA bonds were first sold,

25   Puerto Rico was like a BBB minus.  It was at the bottom in

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ibk9pra

1    terms of its rating.  Just above Jello.  The only way they

2    could get additional monies from the investment world was to

3    bring them out, COFINA, with its security pledge to the

4    bondholders.

5            THE COURT:  Mr. Dvores, I would just like to ask you

6    to wrap up.

7            MR. DVORES:  I'll wrap up right now.

8            So I just want to say bringing up the New York City

9    example, New York City was a mess.  It's now greatly improved,

10   OK.  It's not perfect, but there's a world of difference.

11           I'm saying to you and to all the people that have been

12   crying on their shoulders about Puerto Rico, Puerto Rico has

13   the opportunity to become the diamond in the Caribbean if it

14   has good management.  It's part of the USA.  None of the other

15   countries have that.  They have everything going for them.

16   They've gotten billions of dollars of federal aid.  They don't

17   need to take the little people who have invested in good faith

18   with Puerto Rico and bought their bonds and really take

19   advantage of them in the way that this enterprise has been

20   taking advantage of them to now.

21           Thank you.

22           THE COURT:  Thank you, Mr. Dvores.  And you thank you

23   for coming to court today.

24           Mr. Rosen.

25           MR. ROSEN:  Thank you, your Honor.

Ibk9pra

1          And I thank you, Mr. Dvores.

2          Your Honor, I don't think I admitted that the notice

3    of the disclosure statement hearing was inadequate.  In fact,

4    that was not at all what I said.

5          And the reason with respect to the FAQ, your Honor,

6    was not because we thought that the disclosure statement itself

7    was inadequate.  We wanted to try and make it easier for

8    everybody.

9          I understand Mr. Dvores's concerns.

10          I would like to just note for the record, your Honor,

11    that in the mediation process that Judges Houser, Ambro, and

12    Atlas conducted, there were not just members of the senior

13    coalition involved.  Rather, there were bondholders who were

14    also junior bondholders and, most importantly, the Bonistas del

15    Patio, which is the group that has been organized to represent

16    the interests of retail on-island bondholders.  They were an

17    active participant in all of the mediation sessions.  And, in

18    fact, they are a party, as also the junior bondholders are a

19    party, to the Amended and Restated Plan Support Agreement.

20          So this is not something that was put together just by

21    senior holders and certainly not to take advantage of any

22    junior holders.  Rather, this was a compromise and settlement

23    on the foundational point between the two agents and the

24    agreement in principle and then furthered by the Oversight

25    Board itself when it conducted negotiations with the mediation

Ibk9pra

1    team, with the respective holders of senior, junior, and the

2    Bonistas itself.

3           Your Honor, with that, I would ask, because it's been

4    requested of me, if we could take a very short recess just to

5    talk about one or two more issues and then come back very

6    quickly to the Court.

7           THE COURT:  Is ten minutes sufficient?

8           MR. ROSEN:  Plenty, your Honor.  Thank you.

9           THE COURT:  All right.  We will reconvene in ten

10   minutes.

11          MR. DESPINS:  Your Honor, may we use your jury room in

12   the back?

13          THE COURT:  Yes.  You may use the jury room.

14          (Recess)

15          THE COURT:  Please be seated.

16          MR. ROSEN:  Thank you, your Honor.  I appreciate the

17   opportunity.

18          There was an issue that was correctly raised and I

19   want to correct something that I said and that we need to be

20   sure is clear not only on the record but in the plan -- in the

21   disclosure statement.

22          Your Honor, when we were talking about the releases

23   and the Commonwealth being included in certain release

24   provisions, one thing we want to make absolutely clear is that

25   the Commonwealth will be receiving a release from all COFINA

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Ibk9pra

1    holders in consideration for the compromise and settlement so

2    that there can be no dispute that there is a COFINA holder

3    going to raise a claim against the Commonwealth itself based

4    upon the COFINA relationship, or the bringing of the adversary

5    proceeding, or anything, because we cannot have those other

6    claims going back towards the Commonwealth.

7            So we wanted to be clear that that will be included in

8    the 9019 settlement because that's probably where it primarily

9    lies as a result of the compromise and settlement of all

10   claims.  But we also want to make clear that we will include a

11   provision like that in the disclosure statement and in the

12   confirmation order itself, that the Commonwealth will get the

13   release from the COFINA holders.

14           So with that, your Honor, I submit that's all I have.

15           THE COURT:  Thank you.  I have considered very

16   carefully all of these submissions in advance of today and I

17   have listened very carefully to everything that has been said

18   on the record here today.

19           Pending before the Court is the Puerto Rico Sales Tax

20   Financing Corporation's motion for an order:

21           One, approving disclosure statement;

22           Two, fixing voting record date;

23           Three, approving confirmation hearing notice;

24           Four, approving solicitation packages and distribution

25   procedures;

Ibk9pra

1          Five, approving forms of ballots and election notices

2     and voting and election procedures;

3          Six, approving notice of nonvoting status;

4          Seven, fixing voting and election deadlines; and,

5          Eight, approving vote tabulation procedures that was

6     filed as docket entry no. 307 in case 17-3284 and I will refer

7     to it generally as "the motion."

8          The Court has considered carefully the motion, the

9     objections filed with respect to the motion, the letters and

10    petition directed to the Court regarding the plan and the

11    proposed Commonwealth COFINA settlement and the arguments made

12    today.

13         The pro se objections and many of the letters and the

14    petition object to the fact that a plan for COFINA is being

15    pursued at this time or to specific economic features of the

16    proposed plan.  These objections, the focus of these objections

17    ranges from the division of SUT between COFINA and the

18    Commonwealth, to the different rates of return proposed for

19    junior and senior COFINA bonds, to the absence of proposed bond

20    maturity dates between 2043 and 2058 and cover other issues as

21    well.  These are serious issues and they reflect the ways in

22    which the proposed plan paints a very painful picture for large

23    numbers of people, but the adequacy and the legality of the

24    plan are not before the Court today.

25         The objections by Bank of New York Mellon, the Lehman

Ibk9pra

51

1    entity and the credit unions have been withdrawn.  The

2    objections filed by Mr. Mangiaracina and Mr. Dvores have not

3    been withdrawn.

4         Today's question is simply whether the proposed

5    disclosure statement as amended provides information sufficient

6    to permit a hypothetical creditor or investor to make an

7    informed judgment about the proposed Plan of Adjustment.

8         The Court is satisfied that the disclosure statement

9    does that job of providing sufficient information.

10        The solicitation materials have been prepared in a

11   manner consistent with applicable law.

12        The proposed procedures are a reasonable and

13   appropriate means to provide an opportunity for stakeholders to

14   respond to the proposed plan as necessary and for bondholders

15   to cast an informed ballot with respect to the proposed Plan of

16   Adjustment.

17        Accordingly, the Court hereby overrules the remaining

18   objections to the form of the disclosure statement and grants

19   the disclosure statement approval motion, including the

20   proposed solicitation, election, voting, and tabulation

21   procedures.  This approval is subject to the additional changes

22   and supplemental disclosures discussed on the record today.

23   This is not a ruling on any objections to the substance of the

24   proposed plan.

25        The approval and issuance of the disclosure statement

Ibk9pra

1   begin the next phase of the process in which parties in

2   interest will be able to file additional opposition submissions

3   addressing the substance of the COFINA Plan of Adjustment

4   itself.

5        All objections to the substance of the COFINA Plan of

6   Adjustment and the Commonwealth COFINA Settlement will be

7   adjudicated at the hearing scheduled for January 16, 2019.

8        Today's hearing, therefore, concerned and my ruling

9   concerned only the written disclosure statement that summarizes

10  and supports the proposed Plan of Adjustment and the procedures

11  relating to soliciting the creditors' votes and the filing of

12  objections to the plan.

13       The Court will consider the economics and structure of

14  the proposed Plan of Adjustment as well as the legality of the

15  elements of the plan in connection with the hearing scheduled

16  for January 16, 2019 in San Juan.

17       The movant is directed to file a further revised

18  proposed order and exemplars of the objection cover sheet forms

19  on two days presentment and to submit a Word version of the

20  revised proposed form of approval order to my chambers as well

21  as redline showing changes against the most recently filed

22  proposed order.

23       I would like to thank all of the participants today

24  and the court staff here in New York and in Puerto Rico who

25  facilitated this hearing.  I thank everyone for their patience

Ibk9pra

1   with the technical difficulties which we continue to work on

2   and we hope won't arise in the future.

3           Our next scheduled hearing is December 19 for an

4   omnibus hearing in San Juan and I thank all who worked to bring

5   us to this stage.

6           MR. ROSEN:  Your Honor, thank you very much for

7   everything.  Have a happy holiday.

8           THE COURT:  Thank you.  Happy, safe, and healthy

9   holidays to everyone and safe travels to those who are

10  traveling.  We are adjourned.

11          (Adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Ibk9pra

UNITED STATES DISTRICT COURT)

                              ) ss.
OF PUERTO RICO                )

                    REPORTER'S CERTIFICATE


        I, Karen Gorlaski, do hereby certify that the above

and foregoing pages, consisting of the preceding 155 pages

constitutes a true and accurate transcript of our stenographic

notes and is a full, true, and complete transcript of the

proceedings to the best of our ability.

        Dated this 26 day of November, 2018.

        S/Karen Gorlaski _____

           Karen Gorlaski, RMR, CRR

        Official Court Reporters

        500 Pearl Street

        New York, NY 10007

        212-805-0320