# EXHIBIT 1

**2018-19 Agreement**



## INDEPENDENT CONTRACTOR SERVICES AGREEMENT
## ANDREW WOLFE

### EFFECTIVE DATE: JULY 1ST, 2018

THIS INDEPENDENT CONTRACTOR SERVICES AGREEMENT (the "**Agreement**") is made by and between THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO (the "**Board**") created by the Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. chapter 20 ("**PROMESA**"), and **ANDREW WOLFE**, (the "**Contractor**"). The Board and Contractor hereby agree as follows:

    **1.**    **Engagement of Services.** The Board may offer Project Assignments to Contractor in the form attached to this Agreement as *Exhibit A ("Project Assignment")*. Subject to the terms of this Agreement, Contractor will render the services set forth in Project Assignment(s) accepted by Contractor by the completion dates set forth therein.

    **2.**    **Compensation.** The Board will pay Contractor the fees set forth in each Project Assignment for services rendered pursuant to this Agreement. Contractor is responsible for all reasonable expenses incurred in the performance of services under this Agreement. Contractor will be reimbursed only for expenses which are expressly provided for in a Project Assignment or which have been approved in advance in writing by the Board. Contractor must furnish all documentation for authorized expenses the Board reasonably requests. Payment of Contractor's fees and expenses will be in accordance with terms and conditions set forth in the applicable Project Assignment. Upon termination of this Agreement for any reason, Contractor will be paid fees on the basis stated in the Project Assignment(s) for work which has been completed.

    **3.**    **Independent Contractor Relationship.**

    **3.1**    Contractor's relationship with the Board is that of an independent contractor, and nothing in this Agreement is intended to, or should be construed to create a partnership, agency, joint venture or employment relationship. Contractor is not authorized to make any representation, contract or commitment on behalf of the Board unless specifically requested or authorized in writing to do so by the Board.

    **3.2**    Contractor shall be responsible for exercising independent discretion and judgment to achieve the results specified in this Agreement and in any Project Assignments, and no member, officer, agent or employee of the Board shall have the authority to direct Contractor as to the manner or means employed to achieve such results.

    **3.3**    Contractor shall be responsible for providing all tools and equipment necessary to perform services under this Agreement and any Project Assignments. Contractor shall bear all expenses associated with the provision of services under this Agreement and in any Project Assignments, except as otherwise agreed to pursuant to Section 2 of this Agreement.

1

3.4    Contractor will not be entitled to any of the benefits that the Board may make available to its employees, including, but not limited to, group health or life insurance, profit-sharing or retirement benefits.

3.5    Contractor is solely responsible for, and will file, on a timely basis, all tax returns and payments required to be filed with, or made to, any applicable tax authority with respect to the performance of services and receipt of fees under this Agreement.

3.6    Contractor's compensation will be subject to withholding by the Board for the payment of any applicable income taxes.

3.7    Any employees or agents of Contractor shall be the sole responsibility of Contractor, and shall not be employees or agents of, or paid by, the Board. Neither the Contractor nor its employees or agents are entitled to invoke any of the laws or protections that may apply to employees of the United States government or the Commonwealth of Puerto Rico. Contractor shall have full liability for their acts. Contractor shall bear all expenses associated with the employment of such individuals, and assume sole responsibility for compliance with applicable laws, rules, regulations and orders regarding Contractor's employees.

**4.    Nondisclosure.**

4.1    **Recognition of Board's Rights; Nondisclosure.**  Contractor understands and acknowledges that the Board has a protectable interest in its Confidential Information (defined below). At all times during the term of this Agreement and thereafter, Contractor will hold in strictest confidence and will not disclose, use, lecture upon or publish any of the Board's Confidential Information, except as such disclosure, use or publication may be required in connection with Contractor's services for the Board, or unless the Board expressly authorizes such in writing. Contractor will obtain the Board's written approval before publishing or submitting for publication any material (written, verbal, or otherwise) that relates to Contractor's services for the Board and/or incorporates any Confidential Information. Contractor hereby assigns to the Board any rights Contractor may have or acquire in such Confidential Information and recognizes that all Confidential Information shall be the sole property of the Board and its assigns. Contractor will take all reasonable precautions to prevent the inadvertent or accidental disclosure of Confidential Information.

4.2    **Confidential Information.**  The term "**Confidential Information**" shall mean any and all confidential and/or proprietary knowledge, data or information of or used by the Board, whether having existed, now existing, or to be developed during the term of this Agreement. By way of illustration but not limitation, "**Confidential Information**" includes (a) trade secrets, inventions, mask works, ideas, processes, formulas, source and object codes, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques and any other proprietary technology and all Proprietary Rights therein (hereinafter collectively referred to as "**Inventions**"); (b) information regarding research, analysis, development, business plans, budgets and unpublished financial statements, licenses, prices and costs, margins, credit terms, future plans and potential strategies, financial projections and business strategies, operational plans, financing and capital-raising plans, activities and agreements, internal services and operational manuals, methods of conducting Board business, suppliers and supplier information, and purchasing; (c) information regarding any of the Board's contractors, vendors, or representatives and their services, including names, representatives, proposals, bids, contracts and their contents and parties, the type and quantity of products and services received by the Board, and other non-public information relating to Board contractors, vendors, or representatives; and (d) information regarding personnel, employee lists, compensation, and employee skills. Notwithstanding

2

the foregoing, it is understood that, at all such times, Contractor is free to use information which is generally known publicly or in the trade or industry through no breach of this Agreement or other act or omission by Contractor.

**4.3     Third Party Information.**  Contractor understands, in addition, that the Board has received and in the future, will receive from third parties, including the Commonwealth of Puerto Rico, confidential and/or proprietary knowledge, data, or information ("**Third Party Information**") subject to a duty on the Board's part to maintain the confidentiality of such information and to use it only for certain limited purposes.  During the term of this Agreement and thereafter, Contractor will hold any Third Party Information disclosed by the Board or obtained in connection with its work in the strictest confidence and will not disclose to anyone (other than Board members and personnel who need to know such information in connection with their work for the Board) or use, except in connection with Contractor's services for the Board, Third Party Information unless expressly authorized by the Executive Director or a member of the Board in writing.  Contractor shall comply with all applicable laws, rules, and regulations concerning confidentiality.

**4.4     Term of Nondisclosure Restrictions.**  Contractor understands that Confidential Information and Third-Party Information is never to be used or disclosed by Contractor, as provided in this Section 4.  If, however, a court decides that this Section 4 or any of its provisions is unenforceable for lack of reasonable temporal limitation and the Agreement or its restriction(s) cannot otherwise be enforced, Contractor and the Board agree that the two (2) year period after the termination of this Agreement shall be the temporal limitation relevant to the contested restriction, provided, however, that this sentence shall not apply to trade secrets protected without temporal limitation under applicable law.

**4.5     No Improper Use of Information.**  During the term of this Agreement, Contractor will not improperly use or disclose any Confidential Information or trade secrets of any person or entity to whom Contractor has an obligation of confidentiality, and Contractor will not bring onto the premises of the Board any documents or any property belonging to any person or entity to whom Contractor has an obligation of confidentiality unless consented to in writing by that person or entity.  During Contractor's engagement as an independent contractor performing services for the Company, Contractor may also have access to "Inside" or non-public information about one or more companies associated with the Board's work.  Use of "Inside," Confidential Information or Third-Party Information in making any investment is absolutely prohibited, and Contractor represents and warrants that Contractor will comply with all applicable securities laws and regulations.

**5.     Records.**  To the extent that Contractor is required to develop, review and/or analyze Confidential Information or Third-Party Information, Contractor further shall to store and maintain all Confidential Information in a secure place.  Such material shall at all times remain the exclusive property of the Board and/or the applicable third party, unless otherwise agreed to in writing by a Board member or the Board's Executive Director.

**6.     Return of Board Property.**  On the earlier of termination of this Agreement or a request by the Board's Executive Director, Contractor shall return to the Board all the Board property which Contractor obtained from the Board or created in the course of any Project Assignment, including any Confidential Information and Third-Party Information.  Contractor acknowledges that all such property shall at all times remain the exclusive property of the Board, unless otherwise agreed to in writing by a Board member or the Board's Executive Director.

**7.     No Conflict of Interest.**  During the term of this Agreement, Contractor will not accept work, enter into a contract, or accept an obligation from any third party, inconsistent or incompatible with

3

Contractor's obligations, or the scope of services rendered for the Board, under this Agreement or any Project Assignment. Contractor shall not take actions during the term of this Agreement or any Project Assignment that would constitute or could create the appearance of a conflict of interest with the Board's mission or the work performed by the Contractor for the Board. Contractor represents that Contractor's performance of all the terms of this Agreement and any accepted Project Assignment does not and will not breach any agreement or obligation of any kind made prior to the execution of this Agreement, including any noncompete agreement or any agreement to keep in confidence information acquired by Contractor in confidence or in trust. Contractor has not entered into, and Contractor shall not enter into, any agreement either written or oral in conflict herewith. Contractor shall indemnify the Board from any and all loss or liability incurred by reason of the alleged breach by Contractor of any services agreement with any third party. Contractor, after the termination of this Agreement, shall not provide services on the matters on which Contractor was engaged to others having interests adverse to the Board's interests.

**8.**     **Compliance with Laws, Regulations, and Vendor Code of Conduct.** While providing services for the Board, Contractor shall comply with all applicable laws, rules and regulations, as well as all applicable Board policies and rules, including without limitation the Board's Vendor Code of Conduct and its disclosure certification. A copy of the Vendor Code of Conduct and its Vendor Code of Conduct Disclosure Certification is attached as ***Exhibit B*** hereto.

**9.**     **Term and Termination.**

**9.1**     **Term.** Unless earlier terminated as provided in this Agreement or by mutual written agreement of the parties, this Agreement shall expire on June 30, 2019. The parties may renew the Agreement for an additional time by mutual, written agreement prior to the expiration of the term.

**9.2**     **Termination by Board.** The Board may terminate this Agreement or any Project Assignment upon the earlier of (i) thirty (30) days written notice, and (ii) Contractor's material breach of either Section 4 ("Nondisclosure") or section 10 ("Noninterference with Business") of this Agreement. Termination shall neither eliminate accrued amounts owing to Contractor nor any amounts owing to the Board due to Contractor's breach.

**9.3**     **Termination by Contractor.** Contractor may terminate this Agreement or any Project Assignment upon thirty (30) days written notice in the event of a material breach by the Board of this Agreement or any Project Assignment.

**9.4**     **Survival.** The rights and obligations contained in Sections 4 ("Non-Disclosure") of this Agreement and 10 ("Noninterference with Business") shall survive the termination or expiration of this Agreement regardless of the reason, and the assignment of this Agreement by the Board to any successor in interest or other assignee.

**10. Noninterference with Business.** During this Agreement, and for a period of two (2) years immediately following its termination, Contractor shall not interfere with the business or activities of the Board in any manner. By way of example and not of limitation, Contractor shall not:

**10.1**     solicit, induce, encourage, or participate in soliciting, inducing, or encouraging any employee of the Board to terminate his or her relationship with the Board;

**10.2**     hire, or employ, or attempt to hire or employ any person employed by the Board or who has left the employment of the Company within the preceding six (6) months or discuss any potential employment or business association with such person, even if Contractor does not initiate the discussion or seek out the contact;

4

    **10.3**  solicit, induce or attempt to induce any consultant or independent contractor with whom Contractor had direct or indirect contact or whose identity Contractor learned as a result of Contractor's engagement with the Board, to terminate, diminish, or materially alter in a manner harmful to the Board its relationship with the Board; or

    **10.4**  for two years after the termination of this Agreement, represent or provide assistance pertaining to matters on which Contractor was engaged to any other entity or person having interests adverse to the Board's interests.

  **11.**  **Successors and Assigns.** Contractor may not subcontract or otherwise delegate its obligations under this Agreement without the prior written consent of the Executive Director of the Board. Subject to the foregoing, this Agreement will be for the benefit of the Board's successors and assigns, and will be binding on Contractor's assignees. Notwithstanding the foregoing, nothing in this Agreement shall prevent Contractor from utilizing Contractor's employees to perform services under the Agreement or any Project Assignment.

  **12.**  **Indemnification.** Contractor shall indemnify and hold harmless the Board and its members, officers, directors and employees from (a) all taxes, penalties and interest the Board may be required to pay as a result of Contractor or any of Contractor's personnel being deemed an employee of the Board; (b) any other tax liability or payments related to or resulting from this Agreement or the services rendered by Contractor for the Board; (c) any claims, losses, actions (including attorney's fees) or liability resulting from or related to any action taken or omitted by Contractor or any of its personnel. In no event will the Board be liable for any consequential, indirect, exemplary, special or incidental damages arising from or relating to this Agreement. The Board's total cumulative liability in connection with this Agreement, whether in contract or tort or otherwise, will not exceed the aggregate amount of fees and expenses owned by the Board to Contractor for services performed under this Agreement.

  **13.**  **Non-Disparagement.** Contractor will not, during the term of the Agreement, and for two (2) years thereafter, disparage the Board, its members, officers, or employees. Contractor shall indemnify and hold the Board, its members, officers, directors, and shareholders harmless from and against any and all losses, claims, damages, or expenses, (including attorneys' and experts' fees) arising from or growing out of any disparaging statement made by Contractor in violation of this Section 13.

  **14.**  **Reasonableness of Restrictions.**

    **14.1**  Contractor has read this entire Agreement and understands it. Contractor acknowledges the restrictions contained in this Agreement are reasonable, proper, and necessitated by the Board's legitimate business interests.

    **14.2**  In the event that a court finds this Agreement, or any of its restrictions, to be ambiguous, unenforceable, or invalid, Contractor and the Board agree that this Agreement will be automatically modified to provide the Board with the maximum protection of its business interests allowed by law and Contractor shall be bound by this Agreement as modified.

  **15.**  **Legal and Equitable Remedies.**

    **15.1**  Contractor acknowledges it may be impossible to assess the damages caused by Contractor's violation of Sections 4 ("Non-Disclosure") and 10 ("Noninterference with Business") of this Agreement. Any threatened or actual violation of such Sections of this Agreement will constitute immediate and irreparable injury to the Board and the Board shall have the right to enforce those Sections

of this Agreement by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Board may have for a breach or threatened breach of those Sections or any other Section of this Agreement.

      **15.2**   If the Board is successful in whole or in part in any legal or equitable action against Contractor under this Agreement, the Board shall be entitled to payment of all costs, including reasonable attorneys' fees, from Contractor.

      **15.3**   In the event Company enforces this Agreement through a court order, the restrictions of Section 10 shall remain in effect for a period of twelve (12) months from the effective date of the Order enforcing the Agreement.

      **16.**    **Notices.**  Any notices required or permitted hereunder shall be given to the Board at its primary office location, at Contractor's address as listed below, or at such other address as the party shall specify in writing.  Such notice shall be deemed given upon personal delivery to the appropriate address or three (3) days after the date of mailing if sent by certified or registered mail.

      **17.**    **Governing Law; Consent to Personal Jurisdiction; Waiver of Jury Trial.**  This Agreement shall be governed by the laws of the Commonwealth of Puerto Rico independent of its choice of law principles.  This Agreement is not a United States government contract or contract of the Commonwealth of Puerto Rico.  Consequently, United States and Commonwealth contracting and contract protest laws do not apply to this Agreement.  Any action against the Board shall be brought in accordance with PROMESA § 106.  Contractor hereby expressly consents to the personal jurisdiction and venue of the federal court in Puerto Rico.  The Board and Contractor each waive all rights to jury trial under Commonwealth of Puerto Rico law and federal law.

      **18.**    **Severability.**  In case any one or more of the provisions, subsections, or sentences contained in this Agreement shall, for any reason, be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such invalid, illegal or unenforceable provision had never been contained herein.  Moreover, if any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

      **19.**    **Waiver.**  No waiver by the Board of any breach of this Agreement shall be a waiver of any preceding or succeeding breach.  No waiver by the Board of any right under this Agreement shall be construed as a waiver of any other right.  The Board shall not be required to give notice to enforce strict adherence to all terms of this Agreement.  Nothing herein waives any exemption from liability or other rights of the Board under PROMESA.

      **20.**    **Entire Agreement.**  This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between the parties.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged.

*[Signature Page Follows]*

**In Witness Whereof,** the parties have executed this Agreement as of the date first written above.

**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

By: _Natalie A. Jaresko_

Name: _Natalie A. Jaresko_

Title: _Executive Director_

**ANDREW WOLFE
Contractor**

By: _Andrew Wolfe_

Name: _Andrew Wolfe_

Title: _Economic Advisor_

Address: _2634 Starboard Point Dr._

_Houston, TX 77054_

7

**PROJECT ASSIGNMENT # 6
UNDER INDEPENDENT CONTRACTOR SERVICES AGREEMENT
TITLE III
ANDREW WOLFE**

**DATED: JULY 1ST, 2018**

**PROJECT:**

Contractor shall render shall render services to assist the Board in connection with matters relating to its certification and eventual monitoring of a fiscal plan for the Commonwealth of Puerto Rico through the Title III process pertaining to the debts and plan of adjustment, without limiting the generality of the foregoing:

1. Evaluating the macroeconomic framework underlying the fiscal plan and making recommendations to the Board;

2. Analyzing the fiscal projections in the fiscal plan, including evaluations of the underlying policies, consistency with the macroeconomic framework, and shortfalls vis-a-vis fiscal needs and potential;

3. Providing advice on additional policies that could be enacted, including structural reforms to bolster growth and fiscal performance;

4. Providing an assessment of debt sustainability under the fiscal plan and carrying out an IMF-style debt sustainability analysis;

5. Assisting the Board's outside counsel in pending and threatened litigation concerning fiscal plans and other Board decisions, *provided, however,* that any such assistance shall be governed by the terms of a separate engagement letter between outside counsel and Contractor, and invoices for work done for outside counsel should be separated from invoices for work done for the Board;

6. Providing advice on monitoring developments under a certified fiscal plan and assisting in the monitoring process; and

7. Any other tasks mutually agreed upon.

**SCHEDULE OF WORK:**

The work commenced or will commence on July 1st, 2018 and shall end on June 30th, 2019 unless extended by parties. Contractor shall devote at least half of the month's normal business hours to services for the Board for the term of this Project Assignment in order to earn the monthly fee set forth below.

**FEES AND REIMBUSRSMENT:**

    **A.** Fixed Fees: Contractor will bill for its services in accordance to a monthly rate of $25,000 and subject to the maximum charge below.

    **B.** Reimbursement for air travel which, due to Mr. Wolfe's medical condition related to flying, can he first class, as long as it is at or below the cost of full economy coach, and one class below first for travel by train, as well as costs of hotels consistent with the Title III guidelines on such expenditures. The Board, in its discretion, determines that any costs incurred by Mr. Wolfe for legal fees associated with Title III filings shall also be reimbursable in full. Any other expenses to be incurred and for which reimbursement is sought should he approved in advance by the Executive Director or the Chairman of the Board.

        Reimbursement at cost for reasonable out of pocket expenses such as (a) filing fees or Internal Revenue Stamps or vouchers incurred on your behalf with any United States, Puerto Rico or state (a) photocopying charges; (b) fax charges; (c) long distance telephone charges; (d) delivery expenses and the like; none of which will be incurred unless necessary to provide the above services.
Contractor shall invoice the Board monthly for services and expenses and shall provide receipts, copies of time records showing portions of days worked and services performed by Contractor and such other documentation of expense as the Board requests.
Payment terms: Net Thirty (30) days from receipt of invoice for all valid charges. Contractor shall invoice the Board on or before the tenth day of each month for services rendered and expenses incurred during the previous month.

    **C.** Maximum amount chargeable by this Contractor on this Project Assignment is $275,000 plus valid reimbursed expenses, unless changed in a writing signed by the Executive Director of the Board.

    **D.** Contractor will be responsible for the payment of any applicable payroll and income taxes. If the Contractor physically renders services in Puerto Rico, he will be responsible to file applicable income tax return in Puerto Rico.

**ADDITIONAL TERMS:**

    Pursuant to Section 4.2 of the Agreement, all basic economic models in the possession of the Contractor prior to engagement with the Board pursuant to the Independent Contractor Services Agreement shall remain the property of the Contractor after termination of the Agreement Adjustments to these models for the specifics of Puerto Rico and the work of the Board shall remain with the Board upon termination of the Agreement.

    Contractor shall execute and deliver to the Board a Vendor Conflict of Interest Disclosure Certification in the form of Appendix A attached hereto.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have executed this Project Assignment as of the date first written above.

**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

By: _Natalia Jaresko_

Name: _Natalie A. Jaresko_

Title: _Executive Director_

**ANDREW WOLFE CONTRACTOR**

By: _Andrew Wolf_

Name: _Andrew Wolf_

Title: _Economic Advisor_