**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 4211**

(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO

    Debtor.

---------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO
MOTION FOR RELIEF FROM STAY FILLED BY PLAINTIFFS IN
RIVERA-CARRASQUILLO, ET. AL. V. EDUARDO BHATIA-GAUTIER,
ET. AL., AND TORRES-TORRES, ET. AL. V. PERELLÓ-BORRÁS, ET. AL.**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1
OBJECTION .................................................................................................................................. 6
    I.    MOVANT HAS FAILED TO ESTABLISH CAUSE EXISTS TO LIFT
          THE STAY ................................................................................................................ 6
CONCLUSION ............................................................................................................................ 15

## TABLE OF AUTHORITIES

Page(s)

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
    217 F. Supp. 3d 508, 518, 529 (D.P.R. 2016) ................................................................................7

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
    369 B.R. 87, 94-5 (D.P.R. 2007) ....................................................................................................7

*Celotex Corp. v. Edwards,*
    15 S. Ct. 1493, 1501 (1995) ............................................................................................................9

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
    28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ...................................................................................12

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ....................................................12

*Hafer v. Melo,*
    502 U.S. 21, 25 (1991) ..................................................................................................................10

*In re 234-6 West 22nd St. Corp.*,
    214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ...................................................................................6

*In re Breitburn Energy Partners LP*, No. 16-10992,
    2017 WL 1379363, (Bankr. S.D.N.Y. Apr. 14, 2017) ...................................................................7

*In re Cummings*,
    221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ..................................................................................8

*In re City of Stockton,*
    484 B.R.372 (Bankr. E.D. Cal. 2012) .....................................................................................11, 14

*In re Cuba Electric & Furniture Corp.,*
    430 F. Supp. 689 (D.P.R. 1977) .....................................................................................................8

*In re Motors Liquidation Co.*, No. 09- 50026,
    2010 WL 4630327, at *4 (S.D.N.Y. 2010) ..................................................................................14

*In re Mu'min,*
    374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) ....................................................................................8

*In re Murrin*,
    477 B.R. 99, 109 (D. Minn. 2012) .................................................................................................8

*In re Residential Capital, LLC*, No. 12-12020,
    2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ..................................................... 11-13

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Taub*,
　　413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)..................................................................................8

*In re Unanue-Casal*,
　　159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ............................ 6-7

*Matter of Garofalo's Finer Foods, Inc.*,
　　186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ..........................................................................13

*Peaje Invs. LLC v. Garcia-Padilla*,
　　2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ...........................................7

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
　　907 F.2d 1280, 1286, 1287 (2d Cir. 1990)........................................................ 1, 6-9, 11-15

*Walker v. Birmingham*,
　　388 U.S. 307, 314 (1967)....................................................................................................10

## **STATUTES**

11 U.S.C. § 105..............................................................................................................................10

11 U.S.C. § 362..............................................................................................................................13

11 U.S.C. § 362(a) ........................................................................................................................1,3

11 U.S.C. § 362(a)(1) .....................................................................................................................10

11 U.S.C. § 362(a)(3) .....................................................................................................................10

11 U.S.C. § 362(d) ...........................................................................................................................6

11 U.S.C. § 362(d)(1) ......................................................................................................................6

PROMESA § 301(a) .....................................................................................................................1,3

PROMESA § 315(b) ........................................................................................................................1

3085 – 3092a P.R. Laws Anno. tit. 32, §§ 3085, 3092 .................................................................11

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 4211] (the "Motion") filed by plaintiffs (collectively, "Movants") in the cases, *Rivera-Carrasquillo, et. al. v. Eduardo Bhatia-Gautier, et. al.*, Case No. 13-01296 (PG), and consolidated cases (collectively, the "Rivera-Carrasquillo Lawsuits"); and *Torres-Torres, et. al. v. Perelló-Borrás, et. al.*, Case No. 13-01560 (PG), and consolidated cases (collectively, the "Torres-Torres Lawsuit" and together with the Rivera-Carrasquillo Lawsuits, the "Prepetition Actions"), before the United States District Court for the District of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

### Preliminary Statement

*A.     The Rivera-Carrasquillo Lawsuits*

1.     On April 15, 2013, Movants commenced the Rivera-Carrasquillo Lawsuits against various officials of the Senate of Puerto Rico[3] for events that allegedly occurred before the commencement of this Title III case on May 3, 2017.

2.     On May 25, 2016, the individual defendants and Movants in the Rivera-Carrasquillo Lawsuits entered into that certain Confidential Settlement Agreement (the "Rivera-Carrasquillo Settlement Agreement")[4] to settle all controversies in the Rivera-Carrasquillo Lawsuits, and any state action arising directly or indirectly from the facts averred in the Rivera-Carrasquillo Lawsuits. Pursuant to the Rivera-Carrasquillo Settlement Agreement, "the

---

[2] The Financial Oversight and Management Board for Puerto Rico, as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3] The Senate of Puerto Rico is a governmental branch of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

[4] A copy of the Rivera-Carrasquillo Settlement Agreement is attached to Proof of Claim No. 26081.

Settlement Amount will be paid by the Commonwealth of Puerto Rico in full settlement of all claims, damages and requests for relief alleged in [the Rivera-Carrasquillo Lawsuits], and any other action related directly or indirectly to these cases." (the "Rivera-Carrasquillo Settlement Amount"). Rivera-Carrasquillo Settlement Agreement ¶ 4.

3. On May 3, 2017, the Commonwealth filed a petition under Title III of PROMESA to commence its Title III case.

4. On January 9, 2018, the Commonwealth filed, in the Rivera-Carrasquillo Lawsuits, a *Notice of Automatic Stay of Proceedings Pursuant to the Commencement of Case Under Tittle III of PROMESA* requesting that the District Court take notice of, among other things, the automatic stay applicable to the Rivera-Carrasquillo Lawsuits. The District Court denied the Commonwealth's request to stay the Rivera-Carrasquillo Lawsuits. [Case No. 13-01296, ECF No. 373]. Following the District Court's decision, the Commonwealth moved the District Court to reconsider its denial of the Commonwealth's stay request. [Case No. 13-01296, ECF No. 378]. On April 13, 2018, the District Court granted the Commonwealth's motion for reconsideration and stayed the Rivera-Carrasquillo Lawsuits. [Case No. 13-01296, ECF No. 391] (the "Rivera-Carrasquillo Stay Order").

5. Thereafter, on May 11, 2018, Movants filed (i) a motion for an order instructing the officials and former officials of the Commonwealth who are defendants in the Rivera-Carrasquillo Lawsuits, in their individual capacity, to make payments due pursuant to the Rivera-Carrasquillo Settlement Agreement [Case No. 13-01296, ECF No. 398], and (ii) an informative motion in support of their payment request [Case No. 13-01296, ECF No. 399].[5] On May 24, 2018,

---

[5] Identical motions were filed in the Torres-Torres Lawsuits. *See infra* ¶ 10.

2

the District Court denied Movants' request for an order instructing payment from defendants in their individual capacity. [Case No. 13-01296, ECF Nos. 403].

6. On May 25, 2018, Movants in the Rivera-Carrasquillo Lawsuits filed a proof of claim asserting a claim against the Commonwealth arising from the Rivera-Carrasquillo Settlement Agreement. *See* Proof of Claim No. 26081.[6]

### B. The Torres-Torres Lawsuits

7. On July 18, 2013, Movants commenced the Torres-Torres Lawsuits against various officials of the House of Representative of Puerto Rico[7] for events that allegedly occurred before the commencement of this Title III case on May 3, 2017.

8. On October 4, 2016, the individual defendants and Movants in the Torres-Torres Lawsuits entered into that certain Confidential Settlement Agreement (the "Torres-Torres Settlement Agreement"[8] and together with the Rivera-Carrasquillo Settlement Agreement, the "Settlement Agreements") to settle all controversies in the Torres-Torres Lawsuits, and any state action arising directly or indirectly from the facts averred in the Torres-Torres Lawsuits. Pursuant to the Rivera-Carrasquillo Settlement Agreement, "the Settlement Amount will be paid by the Commonwealth of Puerto Rico in full settlement of all claims, damages and requests for relief alleged in [the Torres-Torres Lawsuits], and any other action related directly or indirectly to these cases." (the "Torres-Torres Settlement Amount" and together with the Rivera-Carrasquillo Settlement Amount, the "Settlement Amounts"). Torres-Torres Settlement Agreement ¶ 5.

---

[6] The Commonwealth reserves all rights, arguments, objections, and defenses with respect to any proofs of claim filed by Movant.

[7] The House of Representative of Puerto Rico is a governmental branch of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

[8] A copy of the Torres-Torres Settlement Agreement is attached to Proof of Claim No. 29009.

3

9. Following the commencement of the Commonwealth's Title III case, on January 25, 2018, the Commonwealth filed, in the Torres-Torres Lawsuits, a *Notice of Automatic Stay of Proceedings Pursuant to the Commencement of Case Under Tittle III of PROMESA* requesting that the District Court take notice of, among other things, the automatic stay applicable to the Torres-Torres Lawsuits. On April 13, 2018, the Court entered an order granting the Commonwealth's motion to stay the Torres-Torres Lawsuits pursuant to Title III of PROMESA (the "Torres-Torres Stay Order" and together with the Rivera-Carrasquillo Stay Order, the "Stay Orders"). [Case No. 13-01560, ECF No. 234].

10. Thereafter, on May 11, 2018, Movants filed (i) a motion for an order instructing the officials and former officials of the Commonwealth who are defendants in the Rivera-Carrasquillo Lawsuits, in their individual capacity, to make payments due pursuant to the Rivera-Carrasquillo Settlement Agreement [Case No. 13-01560, ECF No. 239], and (ii) an informative motion in support of their payment request [Case No. 13-01296, ECF No. 240]. On May 24, 2018, the District Court denied Movants' request for an order instructing payment from defendants in their individual capacity. [Case No. 13-01296, ECF Nos. 244].

11. On May 25, 2018, Movants in the Rivera-Carrasquillo Lawsuits filed a proof of claim asserting a claim against the Commonwealth arising from the Torres-Torres Settlement Agreement. *See* Proof of Claim No. 29009.[9]

C. *Appeal of the Stay Orders*

12. The Movants appealed the District Court's orders in the Prepetition Actions denying their request for an order instructing the officials or former officials of the

---

[9] The Commonwealth reserves all rights, arguments, objections, and defenses with respect to any proofs of claim filed by Movants.

4

Commonwealth, in their individual capacity, to make the payments due pursuant to the Settlement Agreements.

13. On October 10, 2018, the United States Court of Appeals for the First Circuit (the "First Circuit") confirmed the applicability of the automatic stay to the enforcement of the Settlement Agreements against the Commonwealth and officials and former officials of the Commonwealth:

> The orders on appeal in Nos. 18-1743 and 18-1744 confirmed in essence **that the continued enforcement of the settlement agreement between the parties is automatically stayed in light of the Commonwealth of Puerto Rico's PROMESA Title III case**, and that "[t]he stay may be lifted should the judge presiding over the bankruptcy proceeding grant relief from the stay or upon the conclusion of the bankruptcy proceedings, whichever first shall occur."

Cases Nos. 18-1073, 18-1743, 18-1744 (Doc. 00117349630) (emphasis added).

14. On November 13, 2018, Movants filed the Motion seeking relief from the automatic stay to proceed with the execution and enforcement of the Settlement Agreements solely against the officials or former officials of the Commonwealth in their personal capacity. At its core, Movants seek to enforce claims of prepetition, unsecured creditors **against the Commonwealth** pursuant to the Settlement Agreements under the guise of enforcement against the "non-debtor defendants." However, (i) the Settlement Agreements require the Commonwealth, and not the "non-debtor defendants," all of whom are officials or former officials of the Commonwealth, to pay the Settlement Amounts,[10] and (ii) even if Movants were to succeed in enforcing their claims against the "non-debtor defendants," the Commonwealth would ultimately be liable on the same claims to the "non-debtor defendants" because, as further discussed below, the Commonwealth assumes the legal representation and payment of any subsequent adverse judgment against every official, ex-official, employee or ex-employee of the Commonwealth.

---

[10] Rivera-Carrasquillo Settlement Agreement ¶ 4; Torres-Torres Settlement Agreement ¶ 5.

5

15. As further explained below, the Motion should be denied as Movant has failed to show "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"). Lifting the automatic stay would allow Movants to receive preferential treatment of their prepetition, unsecured claims against the Commonwealth, while the Commonwealth's other prepetition, unsecured creditors must wait to have their claims treated under a plan of adjustment.

## Objection

### I. MOVANTS HAVE FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY

22. Movants have not established that cause exists to lift the Title III Stay. An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1) whether relief would result in complete or partial resolution of the issues;

(2) the lack of any connection with or interference with the bankruptcy case;

(3) whether the foreign proceeding involves the debtor as fiduciary;

(4) whether a specialized tribunal has been established to hear the cause of action at issue;

(5) whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6) whether the action essentially involves third parties rather than the debtor;

6

(7) whether the litigation could prejudice the interest of other creditors;

(8) whether a judgment in the foreign action is subject to equitable subordination;

(9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10) the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11) whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12) the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

23. Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

24. No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movants bear the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

7

25. Movants have not established that cause exists to lift the Title III Stay. Instead, Movant are seeking preferential treatment on their claim by seeking to enforce the Settlement Agreements that require the Commonwealth to pay the Settlement Amounts, which would undermine the purpose of the automatic stay "to prevent interference with, or diminution of, the debtor's property." *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets.") The *Sonnax* factors point squarely toward maintaining the automatic stay and against the relief Movants seek.

26. ***Sonnax* Factor 1:** The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—militates against the lifting of the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"). Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues." *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

27. Here, Movants do not identify any bankruptcy issue related to the Title III cases that would be resolved by allowing Movants to enforce the Settlement Agreements. Movants

8

merely argue that "granting the relief requested would certainly help resolve, either completely or partially, the only pending matter left in the proceedings before U.S. District Court Judge Juan Pérez-Giménez: for Movants to collect what is owed to them in principal, interest accrued, and monetary sanctions pursuant to the Settlement Agreements." Motion at 13, ¶ 26. Movants also intimate that lifting the stay would resolve the issue of whether "the non debtor defendants are directly, and personally liable for the amounts owed to the Movants, notwithstanding the Commonwealth's promise to indemnify the non-debtor defendants." *See id*. Movants' arguments are unavailing. As noted above, the first *Sonnax* factor does not focus on the issues in the stayed litigation—here, the Consolidated Cases. Therefore, the first *Sonnax* factor does not support granting the Motion.

28. ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay. The Commonwealth would be required to disburse funds to fulfill its obligations under the Settlement Agreements, which would interfere with its Title III case and overall restructuring by diverting critical funds from its recovery efforts. Movants attempt to disguise the enforcement of their claims against the Commonwealth by couching their request as the enforcement of their claims solely against officials and former officials of the Commonwealth. Motion at 14-17. In doing so, Movants seek to collaterally attack the First Circuit's decision that the automatic stay applies to the enforcement of Movants' claims against officials and former officials of the Commonwealth. *See* Cases No. 18-1073, 18-1743, 18-1744 (Doc. 00117349630) (1st Cir. Oct. 10, 2018). ("[T]he continued enforcement of the settlement agreement between the parties is automatically stayed in light of the Commonwealth of Puerto Rico's PROMESA Title III case . . . ."); *see Celotex Corp. v. Edwards*, 115 S. Ct. 1493, 1501 (1995) (holding that bankruptcy court's injunction under

9

Bankruptcy Code Section 105 cannot be collaterally attacked in a separate proceeding, and noting "it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." (quoting *Walker v. Birmingham*, 388 U.S. 307, 314 (1967)); *Memorandum Order Denying Alvin Marrero-Méndez's Motion for Relief from Stay (Docket Entry No. 952)* [ECF No. 1234] at 2-3 ("As a preliminary matter, the Court will not consider whether the automatic stay . . . applies to the Lawsuit. That issue has already been decided by Judge García-Gregory.").

29. Furthermore, this Court has recognized the applicability of the automatic stay to official-capacity suits in an order denying a similar request to lift the Title III Stay:

> An official-capacity suit against a Commonwealth official is functionally a suit against the Commonwealth. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Moreover, as this Court has previously explained, **the Commonwealth has assumed the legal defense and the responsibility for any monetary judgments against the Defendants in the Lawsuit. As a result, the Lawsuit is subject to the automatic stay** pursuant to Section 362(a)(1) and (a)(3) of the Bankruptcy Code, as the Movants seek the continuation of a judicial action against the Debtor that was commenced pre-petition and are attempting to obtain or control property of the Debtor through a judgment against the defendants providing equitable relief and damages, responsibility for payment of which lies with the Commonwealth.

*See Order on Motion for Reconsideration Filed by Beatriz Nieves-López, et al.*, at 3 [ECF No. 2723]; *cf. Memorandum Order Denying Alvin Marrero-Méndez's Motion for Relief from Stay (Docket Entry No. 952)*, at 2–3 [ECF No. 1234] (noting that the court in the prepetition action had determined that the Title III Stay applies to the prepetition action against three police officers).[11]

---

[11] The First Circuit has also stayed pending appeals in connection with official-capacity suits, suggesting the First Circuit's stance that the Title III Stay applies to cases where Commonwealth officials are sued in both their official and personal capacities. *See Order of Court*, *Cano-Rodriguez v. De Jesus-Cardona, et al.*, Case No. 16-1532 (1st Cir. Nov. 27, 2017) (Doc. No. 117225999) (staying appeal in case against the Commonwealth and a Commonwealth official); *Order of Court*, *Besosa-Noceda, et al v. Capo-Rivera, et al.*, Case No. 16-2117 (1st Cir. Jan. 23, 2018) (Doc. No. 117246419) (staying appeal of case against a Commonwealth official).

10

Notably, this Court confirmed that the protections of Bankruptcy Code section 922(a)(1) "apply in all respects to the Debtors' officers in both their official **and personal capacities** with respect to actions whereby parties pursuing such actions seek to enforce claims against any of the Debtors." *Order Pursuant to PROMESA Section 201(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* ¶ 5 (emphasis added) [ECF No. 543]. Under Law 104 and Regulation 8405, the Commonwealth both assumes the legal representation of and payment of a subsequent adverse judgment against every official, ex-official, employee or ex-employee of the Commonwealth covered by provisions 3085-3092a. P.R. Laws Ann. tit. 32, §§ 3085, 3092.[12] The Commonwealth bears the cost of litigation of suits, and pays for the vast majority of adverse judgments, against its employees and officials regardless of the capacity in which they are sued. If Movants seek to enforce their claims against officials and former officials of the Commonwealth in the Prepetition Actions, they will litigate against Commonwealth lawyers, negotiate settlements with Commonwealth lawyers, and if they prevail, secure payment from the Commonwealth.

30. Thus, the second *Sonnax* factor weighs in favor of denying the Motion. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *In re*

---

[12] While the initial decision to either assume the representation of the officer-defendant or pay the adverse judgment lies with the Commonwealth's Secretary of Justice, Law 104 provides all officer-defendants with an avenue for judicial review. *See* 32 L.P.R.A. § 3087. Although the Commonwealth may initially decline to represent or pay the adverse judgment of an officer-defendant, the officer-defendant may seek judicial review of such denial and a court may well impose on the Commonwealth both the duty to defend, and the duty to indemnify from the adverse judgment. *Id.*

11

*City of Stockton*, 484 B.R. 372, 378 (Bankr. E.D. Cal. 2012) (denying lift-stay motion where it would consume the time and attention of the debtor's officers).

31. **_Sonnax_ Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal has been established to hear the Consolidated Cases. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

32. **_Sonnax_ Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed full or indeed any financial responsibility for compliance with the Settlement Agreements. Thus, *Sonnax* factor 5 does not support granting the Motion.

33. **_Sonnax_ Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

34. Here, Movants fail to show how any non-debtor parties in the Consolidates Cases are the *primary parties* to the action. In fact, the Commonwealth will be required to expend its

12

own funds to comply with the Settlement Agreements and to defend and indemnify the officials and former officials Movants seek to enforce their claims against. Accordingly, the Commonwealth would be significantly impacted by the enforcement of the Settlement Agreements. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

35. **_Sonnax_ Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—weighs in favor of denying the Motion. First, lifting the automatic stay would give Movants an unfair and undue advantage over other creditors. Movants' claims pursuant to the Settlement Agreements should be treated under the claims resolution process in the Commonwealth's Title III case and ultimately treated pursuant to a plan of adjustment, as with all other similarly situated claims. Allowing Movants to proceed now would be in sharp contrast to Bankruptcy Code section 362's purpose to provide the debtor temporary relief while it conducts an orderly adjustment of its debts. *See Matter of Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ("[The automatic stay] protects all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims."). Movants proffers no adequate reason that it should be prioritized over other creditors and granted such an unfair advantage, nor why the purpose of the automatic stay should be ignored in their case.

36. Second, any time and money expended by the Commonwealth to comply with the Settlement Agreements, or to provide the legal defense of officials and former officials in the Prepetition Actions, is time and money diverted from the overall recovery and reorganization of

the Commonwealth and from the ultimate distribution to other creditors, a factor that numerous courts have recognized counsels against the lifting of a bankruptcy stay. *See, e.g., In re Residential Capital*, 2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. at 379 (declining to lift stay in part because it "will deplete the coffers of the City treasury"). Accordingly, *Sonnax* factor 7 does not support granting the Motion.

37.  ***Sonnax* Factor 10:** The tenth *Sonnax* factor— the interest of judicial economy and the expeditious and economical determination of litigation for the parties—weighs against granting the Motion. Because judgments have already been entered in the Prepetition Actions, the only thing that lifting the stay would expedite is Movants' own recovery. Movants have not met their burden of showing how lifting the automatic stay would advance the interest of judicial economy, but rather, merely makes the conclusory statement that lifting the stay will "save judicial resources, by having this matter resolved in the district court which approved the Settlement Agreement, and retained jurisdiction 'over all matters relating to [the Settlement Agreement] and the disbursement of all monies pursuant thereto, including for the enforcement of the same, until final payment is made to the [Movants].'" Motion at 19-20, ¶ 14. Thus, *Sonnax* factor 10 weighs in favor of denying the Motion.

14

38. ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motions were to be granted would outweigh any harm that Movants would suffer if the automatic stay remains in place. As previously noted, the Commonwealth would be required to disburse a substantial amount of funds to comply with the Settlement Agreements and provide for the defense of the officials and former officials in the Prepetition Actions with respect to the determination whether such officials directly and personally liable for amount owed to Movants pursuant to the Settlement Agreement between the Commonwealth and Movants. The diversion of the Commonwealth's resources would in turn prejudice the interests of other similarly situated creditors. On the other hand, any harm Movants would suffer from delay in collection of their asserted claim is similarly shared with all other creditors of the Commonwealth. Maintaining the automatic stay would simply preserve the status quo pending the Commonwealth's restructuring and recovery efforts under Title III. Movants' claims will be addressed in the claims resolution process and a plan of adjustment in the Commonwealth's Title III case. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.[13]

## CONCLUSION

39. Movants have failed to establish cause to justify lifting the automatic stay in the Commonwealth's Title III case to allow the Consolidates Cases to proceed. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: December 4, 2018
      San Juan, Puerto Rico               Respectfully submitted,

                                            **WANDA VÁZQUEZ GARCED**
                                            Secretary of Justice

---

[13] The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor; and (11) whether the foreign proceedings have progressed to the point where parties are prepared for trial) are not addressed as they are inapplicable here.

15

*/s/ Wandymar Burgos Vargas*
**WANDYMAR BURGOS VARGAS**
USDC 223502
Deputy Secretary in Litigation
Department of Justice
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
Phone: 787-721-2940 Ext. 2500, 2501
wburgos@justicia.pr.gov

*Attorneys for the Commonwealth of Puerto Rico*

16