# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-----------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE COMMONWEALTH OF
PUERTO RICO,

     as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Plaintiff,

v.

BETTINA WHYTE

     as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE PUERTO RICO SALES TAX FINANCING
CORPORATION,

     Defendant.

-----------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

Adv. Proc. No. 17-00257

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

**COMMONWEALTH OF PUERTO RICO'S OMNIBUS REPLY TO
OBJECTIONS TO MOTION PURSUANT TO BANKRUPTCY RULE 9019
FOR ORDER APPROVING SETTLEMENT BETWEEN COMMONWEALTH OF
PUERTO RICO AND PUERTO RICO SALES TAX FINANCING CORPORATION**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Preliminary Statement ……………………………………………………………………..1

Background ……………………………………………………………………...4

Omnibus Reply ………………..…………………………………………………...8

    A.    The Objections Mischaracterize the Appropriate Legal Standard
for Evaluating a Settlement Pursuant to Bankruptcy Rule 9019………………..8

    B.    The Settlement Meets the Requirements for Court Approval Pursuant to
Bankruptcy Rule 9019 …………………………………………………..…….…10

    C.    The Commonwealth Fiscal Plan is Irrelevant to the Court's
Determination Whether to Approve the Motion ..…………………….………..…13

    D.    A Comparison of the Settlement with the Agreement in Principle is
Irrelevant to the Court's Inquiry Pursuant to Bankruptcy Rule 9019………......14

    E.    Any Related Discovery Should Not Delay the Court-Approved Timeline
for Considering the Motion or the COFINA Plan ……………………..…...17

104278729v9

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
   699 F.2d 599 (2d Cir. 1983) ................................................................8

*Hill v. Burdick (In re Moorhead Corp.)*,
   208 B.R. 87 (1st Cir. B.A.P. 1997) .......................................................9

*In re 110 Beaver St. P'ship*,
   244 B.R. 185 (Bankr. D. Mass. 2000)..............................................8, 9

*In re C.R. Stone Concrete Contractors, Inc. v. Anderson (In re C.R. Stone
Concrete Contractors, Inc.)*,
   346 B.R. 32 (Bankr. D. Mass. 2006)..............................................9, 10

*In re Capmark Fin. Grp. Inc.*,
   438 B.R. 471 (Bankr. D. Del. 2010) ....................................................8

*In re Genesys Research Inst., Inc.*,
   Case No. 15-12794-JNF, 2016 WL 3583229 (Bankr. D. Mass. June 24, 2016).....................9

*In re Healthco Int'l*,
   136 F.3d 45 (1st Cir. 1998) ........................................................8, 9, 11

*In re High Voltage Eng'g Corp.*,
   403 B.R. 163 (D. Mass. 2009) ..............................................................9

*In re Hydronic Enter., Inc.*,
   58 B.R. 363 (Bankr. D.R.I. 1986).........................................................10

*In re Mailman Steam Carpet Cleaning Corp.*,
   212 F.3d 632 (1st Cir. 2000).............................................................8, 9

*In re Manuel Mediavilla, Inc.*,
   568 B.R. 551 (B.A.P. 1st Cir. 2017) .....................................................9

*In re Servisense.com*,
   382 F.3d 68 (1st Cir. 2004) ..................................................................8

*In re Wolverine, Proctor & Schwartz, LLC*,
   436 B.R. 253 (D. Mass. 2010)..............................................................9

*Jeffrey v. Desmond*,
   70 F.3d 183 (1st Cir. 1995) ..................................................................9

104278729v9

*Kenton County Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.),*
  374 B.R. 516 (S.D.N.Y. 2007) .................................................................................. 17

*Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi),*
  411 Fed. App'x 342 (5th Cir. 2011)........................................................................ 9, 11

STATUTES

48 U.S.C. §§ 2101-2241 ................................................................................................ 1

PROMESA § 310 ............................................................................................................ 4

PROMESA § 312 .......................................................................................................... 15

PROMESA § 315(b) ....................................................................................................... 1

OTHER AUTHORITIES

Fed. R. Bankr. P. 9019 ........................................................................................... passim

To The Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[1] respectfully submits this omnibus reply (the "Omnibus Reply") to the objections interposed to the *Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, ECF No. 4067] (the "Motion").[2]   In support of this Omnibus Reply, the Commonwealth respectfully states as follows:

## **Preliminary Statement**

1.      The Settlement, which is the foundation that underpins the COFINA Plan (defined below), is a watershed moment in the Title III Cases of the Commonwealth and COFINA.  Since before the commencement of the Title III Cases, the dispute regarding whether the Commonwealth or COFINA owns the Pledged Sales Taxes (at present amounting to approximately $783 million in annual revenues and projected to grow annually by 4% until it reaches $1.85 billion in 2041) has been a gating issue not only for COFINA's restructuring, but also for Puerto Rico's revival in general.   Without a consensual resolution of the dispute, a litigated outcome presents the Commonwealth and COFINA, and, as a result, their respective creditors and constituents, with an all-or-nothing result.  In each instance, regardless of the winner or loser, the by-products would be significant delay, cost, and uncertainty to all of Puerto Rico's stakeholders.

---

[1] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[2] Capitalized terms used but not defined herein shall have the meanings given to them in the Motion.

2.      The Motion is the culmination of over a year of intense mediation, negotiations, and litigation regarding the Commonwealth-COFINA Dispute and establishes an important cornerstone for the Commonwealth's Title III Case to move towards its conclusion, and towards the Commonwealth's overall economic recovery and access to the capital markets.  The terms of the Settlement are fair and reasonable to both the Commonwealth and COFINA in light of the complex issues and risks attendant to costly and time-consuming litigation of the Commonwealth-COFINA Dispute, and satisfy the requirements for approval pursuant to Bankruptcy Rule 9019. The Settlement will not only permit the COFINA Title III Case to rapidly conclude with creditors holding approximately $10 billion in COFINA bonds already voicing their support for the negotiated resolution and resultant COFINA Plan, but ultimately, will also allow the Commonwealth's Title III Case to proceed with the assurance that certain sales and use tax revenues will be available to address the needs of the Commonwealth, its citizens and its creditors.

3.      Objections (the "Objections") to the Motion, which do not question the fairness of the compromise embodied in the Settlement Agreement, were interposed by (a) the Service Employees International Union and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America [Case No. 17-3283, ECF No. 4233] (the "SEIU/UAW Objection");[3] (b) PROSOL-UTIER [Case No. 17-3283, ECF No. 4251] (the "PROSOL-UTIER Objection," and together with the SEIU/UAW Objection, the "Union Objections");[4] (c) the Official Committee of Retired Employees of the Commonwealth of Puerto

---

[3]  The SEIU/UAW Objection is accompanied by (i) the *Motion to Join the Objection of Service Employees International Union and UAW to Commonwealth of Puerto Rico's Motion Pursuant to Rule 9019 for Order to Approve Settlement (Docket 4067)* [Case No. 17-3283, ECF No. 4239], and (ii) the *Joinder of Federación Central de Trabajadores, U.F.C.W., Local 481 ("FCT") to the Objection of SEIU and UAW to Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation [Docket Entry 4067]* [Case No. 17-3283, ECF No. 4248].

[4]  The PROSOL-UTIER Objection is accompanied by the *Joinder of Federación de Maestros de Puerto Rico to Docket Entry 4251: Objection of PROSOL-UTIER to Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule*

2

Rico, which filed a limited objection [Case No. 17-3283, ECF No. 4266] (the "Retiree Committee Objection"); and (d) Lawrence B. Dvores [Case No. 17-3283, ECF No. 4244] (the "Dvores Objection").

4.      Given the number of parties in interest in the Commonwealth's Title III Case and the magnitude of the Commonwealth's debt, the limited number of Objections is a testament to creditors' overwhelming support for the Settlement.[5]  Nonetheless, the Union Objections generally assert that (i) the Commonwealth should receive the vast majority, if not all, of the Pledged Sales Taxes, (ii) the Settlement will not result in a sufficient impairment of COFINA debt, and (iii) the Settlement is not as favorable for the Commonwealth as the Agreement in Principle (defined below).  The Retiree Committee Objection contends that (i) the Settlement should subject COFINA's restructured bonds to the Puerto Rico Constitution's debt limit and (ii) the Retiree Committee should be afforded the opportunity to take discovery in light of changing fiscal plan projections.  The Dvores Objection does not address the merits of the Settlement but asserts that the recovery of subordinate COFINA bondholders is unfair relative to the senior COFINA bondholders.[6]

5.      Critically, the Objections fail to address, or even mention, the inherent uncertainty surrounding continued litigation and the risks of an adverse outcome, and they ignore the underlying dispute regarding whether COFINA or the Commonwealth owns the Pledged Sales Taxes.  As described further below, the Objections should be overruled, because the Settlement

---

*9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation [Docket Entry 4067]* [Case No. 17-3283, ECF No. 4258].

[5]  While the parties to the A&R Plan Support Agreement support the Settlement, positions taken with respect to specific legal issues in this Omnibus Reply should not be attributed to parties to the A&R Plan Support Agreement other than the Oversight Board.

[6]  The Dvores Objection raises COFINA Plan confirmation issues and should not be addressed in connection with the Motion.

3

represents a fair compromise of the complex issues raised in the Commonwealth-COFINA Dispute and is the result of arm's length negotiations. The Settlement readily satisfies the standard underlying Bankruptcy Rule 9019, made applicable pursuant to section 310 of PROMESA and the Procedures Order (defined below). As such, and for all the reasons set forth in the Motion and this Omnibus Reply, the Court should grant the Motion and approve the Settlement resolving the Commonwealth-COFINA Dispute.

## **Background**

6.    On August 10, 2017, the Court entered the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [Case No. 17-3283, ECF No. 996] (the "Procedures Order"), which provides, among other things, that the Oversight Board, as representative of the Commonwealth in its Title III case, authorized (a) the Committee to serve as the Commonwealth representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of the Commonwealth (the "Commonwealth Agent"); and (b) Bettina Whyte to serve as the COFINA representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA (the "COFINA Agent" and together with the Commonwealth Agent, the "Agents"). The Procedures Order also contemplates that the Oversight Board may submit a settlement of the Commonwealth-COFINA Dispute in the Commonwealth Title III Case for this Court's approval, either as part of, or independent from, a Commonwealth plan of adjustment. *See* Procedures Order ¶¶ 4(j), (n).[7]

---

[7]   *See also* Term Sheet attached to the Amended and Restated Plan Support Agreement as Exhibit C, at I.A ("[t]he Oversight Board, on behalf of the Commonwealth of Puerto Rico, shall file a motion in the Commonwealth PROMESA Proceedings in accordance with Bankruptcy Rule 9019 seeking the approval of the compromise and settlement of the dispute between the Commonwealth and COFINA regarding ownership of the sales and use taxes purportedly transferred by the Commonwealth to COFINA . . . .").

7.     On September 8, 2017, the Commonwealth Agent commenced an adversary proceeding seeking a resolution of the Commonwealth-COFINA Dispute (the "Adversary Proceeding"), as more fully described in the Motion.  On September 15, 2017, the COFINA Agent filed her answer to the Complaint, as amended on October 30, 2017, vigorously disputing the Commonwealth Agent's claims, asserting various counterclaims, and seeking declaratory judgments and injunctive relief.  On February 21, 2018, the Agents and several of the intervening parties on both sides of the dispute filed cross-motions for summary judgment.

8.     In the weeks following the conclusion of the hearing on the summary judgment motions, and with the risk of a court decision looming, the Agents recommenced court-sanctioned mediation in the hope of consensually resolving the Commonwealth-COFINA Dispute. On June 7, 2018, through the auspices of the mediation team, the Agents reached a consensual resolution as set forth in that certain Agreement in Principle [Adversary Proceeding, ECF No. 486-1] (the "Agreement in Principle").  The central component of the Agreement in Principle, and the only issue authorized to be resolved in accordance with the Procedures Order, was the 53.65% / 46.35% allocation of the disputed sales and use tax revenue between COFINA and the Commonwealth, respectively.[8]  While a giant leap forward, various parties, including the Oversight Board and AAFAF, pointed out that, among other things, the Agreement in Principle exceeded the scope of the Adversary Proceeding and the Procedures Order by attempting to, among other things, dictate terms of plans of adjustment in the Title III Cases and limit the availability and use of funds.  *See* Adversary Proceeding, ECF Nos. 487, 488, 489, 490, 491.

9.     As a result of over two weeks of mediation among interested parties, the Oversight Board announced on August 8, 2018 that, based upon the general understanding reached by the

---

[8]  Notably, the Retiree Committee supported the Agreement in Principle based on this very allocation.

Agents in the Agreement in Principle, the Oversight Board had reached an agreement with certain holders and insurers of COFINA's existing securities and AAFAF on the economic treatment of existing securities and the terms of new securities to be issued pursuant to a proposed COFINA plan of adjustment. The agreement embodies the important compromise reached in the Agreement in Principle regarding the allocation of disputed sales and use tax revenue and provides for additional terms and conditions that were required to reach a final settlement, which was agreeable to the myriad parties that ultimately supported it and could be turned into a confirmable COFINA plan of adjustment. Critically, the agreement was one hundred percent consistent with the Oversight Board's authority to separately develop a settlement of the Commonwealth-COFINA Dispute pursuant to the Procedures Order.[9]

10.     After the August 8, 2018 announcement, the Oversight Board negotiated the terms of the Settlement Agreement with the COFINA Agent, consistent with the economic terms of the Agreement in Principle, and worked with interested parties to prepare a COFINA plan of adjustment, disclosure statement, and related pleadings. On October 19, 2018, the Oversight Board, on behalf of the Commonwealth, filed the Motion, seeking entry of an order approving the Settlement resolving the Commonwealth-COFINA Dispute pursuant to the terms and provisions of the Settlement Agreement.

11.     Concurrently with the filing of the Motion, the Oversight Board, on behalf of COFINA, filed (i) the *Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3284, ECF Nos. 309, 352, 367, 380] (as amended, modified, or supplemented, the "COFINA Plan")[10], (ii) the *Disclosure Statement for the Title III Plan of Adjustment of the Debts*

---

[9]  Financial Oversight and Management Board, Press Release, *Oversight Board Reaches Deal with COFINA Bondholders* (Aug. 8, 2018).

[10]  Additional ECF numbers represent the Amended COFINA Plan, Second Amended COFINA Plan, and the corrected version of the Second Amended COFINA Plan.

*of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3284, ECF Nos. 310, 353, 368] (as amended, modified, or supplemented, the "COFINA Disclosure Statement"),[11] and (iii) the *Puerto Rico Sales Tax Financing Corporation's Motion For Order (I) Approving Disclosure Statement, (II) Fixing Voting Record Date, (III) Approving Confirmation Hearing Notice, (IV) Approving Solicitation Packages and Distribution Procedures, (V) Approving Forms of Ballots and Election Notices, and Voting and Election Procedures, (VI) Approving Notice of Non-Voting Status, (VII) Fixing Voting and Election Deadlines, and (VIII) Approving Vote Tabulation Procedures* [Case No. 17-3284, ECF No. 307] (the "COFINA Disclosure Statement Motion") requesting entry of an order (the "COFINA Disclosure Statement Order") approving the COFINA Disclosure Statement and establishing, among other things, solicitation and voting procedures in connection with the COFINA Plan.

12.     On November 20, 2018, at the hearing to consider the adequacy of information contained in the Disclosure Statement (the "Disclosure Statement Hearing"), the Court approved the COFINA Disclosure Statement Motion, subject to certain revisions outlined on the record.   At the Disclosure Statement Hearing, counsel to the Oversight Board noted to the Court that, in connection with the Settlement, the Commonwealth would be receiving a release from potential claims that could be asserted by COFINA bondholders relating to the COFINA relationship or the Adversary Proceeding.  On November 29, 2018, the Court entered the revised COFINA Disclosure Statement Order [Case No. 17-BK-3284, ECF No. 375].

---

[11] Additional ECF numbers represent the Disclosure Statement for the Second Amended COFINA Plan and the Disclosure Statement for the Second Amended COFINA Plan.

104278729v9

**Omnibus Reply**

### A. The Objections Mischaracterize the Appropriate Legal Standard for Evaluating a Settlement Pursuant to Bankruptcy Rule 9019

13.      In essence, the Union Objections assert that the Motion can be approved only if the Settlement is the best possible settlement of the Commonwealth-COFINA Dispute for the Commonwealth.  *See* SEIU/UAW Objection ¶¶ 51-53; PROSOL-UTIER Objection ¶¶ 32-34.  In other words, the Union Objections argue that a settlement must give the Commonwealth all, or the vast majority, of the disputed sales and use tax revenue in order to be approved by the Court.  The Union Objections ignore the requirement that the Court should carefully and analytically assess the risks attendant to a litigation and the fact that the Agreement in Principle was heavily negotiated between independent representatives of both the Commonwealth and COFINA with the benefit of the Court-appointed mediation team.  As such, the Union Objections fail to recognize that, not only is this a settlement, but also, in the opinion of the Commonwealth Agent, as supported by the Oversight Board, the Settlement is the best possible resolution for the Commonwealth.

14.      In fact, the "law governing settlement under Bankruptcy Rule 9019 is well-settled,"[12] and the proponent of the settlement need only satisfy the standard "that the proposed compromise falls above the lowest point in the range of reasonableness."[13]  The cases are clear that "the Court will defer to the trustee's judgment and approve the compromise, provided the trustee demonstrates that the proposed compromise falls within the 'range of reasonableness' and thus is not an abuse of his or her discretion."[14]  Even the cases cited in the Union Objections are

---

[12] *In re Capmark Fin. Grp. Inc.*, 438 B.R. 471, 475 (Bankr. D. Del. 2010).

[13] *In re 110 Beaver St. P'ship*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000) (internal quotations omitted).

[14] *In re 110 Beaver St. P'ship*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000).  *See also In re Mailman Steam Carpet Cleaning Corp.*, 212 F.3d 632, 634-635; *In re Servisense.com*, 382 F.3d 68, 71-72 (1st Cir. 2004) ("[T]he responsibility of the bankruptcy judge … is … to canvass the issues and see whether the settlement falls below the lowest point of range of reasonableness."); *In re Healthco Int'l*, 136 F.3d 45, at 51 (1st Cir. 1998) (quoting *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir. 1983) (internal quotation marks and alterations

in accord with this universal proposition.  Significantly, in *In re C.R. Stone Concrete Contractors, Inc. v. Anderson (In re C.R. Stone Concrete Contractors, Inc.)*, 346 B.R. 32 (Bankr. D. Mass. 2006), the court noted that, "[w]hen augmentation of an asset involves protracted investigation or potentially costly litigation, with no guarantee as to the outcome, the trustee must tread cautiously – and an inquiring court must accord him wide latitude should he conclude that the game is not worth the candle." *C.R Stone*, 346 B.R. at 49 (citing *LeBlanc v. Salem* (*In re Mailman Steam Carpet Cleaning Corp.*), 212 F.3d 632, 635 (1st Cir. 2000)).

15.    When assessing the reasonableness of a settlement, courts in the First Circuit consider the following four factors: (i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it, and (iv) the paramount interest of the creditors and proper deference to their reasonable views in the premise.  *Jeffrey v. Desmond*, 70 F.3d 183, 185 (1st Cir. 1995); *see also In re Yacovi*, 411 F. App'x 342, 346 (1st Cir. 2011); *In re High Voltage Eng'g Corp.*, 403 B.R. 163, 167 (D. Mass. 2009); *In re Manuel Mediavilla, Inc.*, 568 B.R. 551, 570-71 (B.A.P. 1st Cir. 2017).   While the Retiree Committee conveniently emphasizes only one of the four preceding factors (*see* Retiree Committee Objection ¶ 4),[15] the cases cited by the Union Objections correctly recognize that all four factors must be considered in weighing the reasonableness of a settlement pursuant to Bankruptcy Rule 9019.  *See In re 110 Beaver St. P'ship*, 244 B.R. 185, 187 (Bankr. D. Mass 2000);

---

omitted); *In re Wolverine, Proctor & Schwartz, LLC*, 436 B.R. 253, 267 (D. Mass. 2010) ("[t]he [bankruptcy] judge ... is not to substitute her judgment for that of the trustee, and the trustee's judgment is to be accorded some deference." *In re Healthco Int'l*, 136 F.3d at 50 n. 5 (1st Cir. 1998) (quoting Hill v. Burdick (In re Moorhead Corp.), 208 B.R. 87, 89 (1st Cir. B.A.P. 1997)); *In re Genesys Research Inst., Inc.*, Case No. 15-12794-JNF, 2016 WL 3583229, *25 (Bankr. D. Mass. June 24, 2016) ("When considering ... [a settlement] ..., deference should also be given to the Trustee's judgment regarding the settlement, provided that the trustee can demonstrate that the proposed compromise falls within a 'range of reasonableness.'") (internal citations omitted).

[15] In any event, as noted below, this factor does not support the Retiree Committee Objection.

9

*In re Hydronic Enter., Inc.*, 58 B.R. 363, 365 (Bankr. D.R.I. 1986); *In re C.R. Stone Concrete Contrs., Inc. v. Anderson (In re C.R. Stone Concrete Contrs., Inc.)*, 346 B.R. 32, 50-51 (Bankr. D. Mass. 2006).

## B. The Settlement Meets the Requirements for Court Approval Pursuant to Bankruptcy Rule 9019

16.     The relevant factors courts consider in approving settlements pursuant to Bankruptcy Rule 9019 weigh heavily in favor of granting the Motion.[16]  <u>First</u>, as further discussed in the Motion, the Commonwealth-COFINA Dispute presents many complex issues that would require significant cost and delay to resolve.  None of the Objections has disputed the complexity and expense of litigating the Commonwealth-COFINA Dispute.   Indeed, the SEIU/UAW Objection concedes that "[t]he litigation has been expensive and complex."  SEIU/UAW Objection ¶ 71.

17.     The briefing in the Adversary Proceeding has been extensive—for example, no fewer than six summary judgment motions have been filed by various parties that include, in addition to the Commonwealth Agent and the COFINA Agent, the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, the COFINA Senior Bondholders' Coalition, the Ad Hoc Group of General Obligation Bondholders, the Mutual Fund Group, and the Puerto Rico Funds.  Adversary Proceeding, ECF Nos. 300, 307, 314, 317, 318, 322.  The Court has entered orders allowing nine separate parties to intervene in the Adversary Proceeding, in addition to the numerous signatories to the Procedures Order allowed to intervene.  Adversary Proceeding, ECF Nos. 128, 131; Procedures Order ¶ 5.  The issues underlying the Commonwealth-COFINA Dispute have spanned multiple lawsuits, which include the Lex Claims Litigation, the COFINA Bondholders' Action, and the Interpleader Action, all as more fully described in the Motion.  Given

---

[16] The factor regarding collection difficulty is inapplicable here.

the stakes involved in the litigation, it is not surprising that the litigation has been contentious, raising novel and complicated issues that cut across Puerto Rico statutory and constitutional law as well as federal restructuring law.

18.    <u>Second</u>, the Commonwealth's likelihood of success in litigating the Commonwealth-COFINA Dispute is far from certain.  Instead, while conceding that litigation of the Commonwealth-COFINA Dispute "has been expensive and complex," the SEIU/UAW Objection notes that it would be far more expensive "if the Commonwealth becomes insolvent again in coming years, and has to undergo another entire round of restructuring . . . ."  SEIU/UAW Objection ¶ 71.  However, speculation over the effect of the Settlement on Puerto Rico's economic health at some unspecified time in the future is not relevant to the inquiry this Court must conduct pursuant to Bankruptcy Rule 9019 in general or to the Commonwealth's likelihood of success in the Commonwealth-COFINA Dispute in particular.  Specifically, courts weigh the "definitive, concrete and immediate benefit" that a settlement provides against the uncertainty and delay of litigation.  *See Yacovi v. Rubin & Rudman, L.L.P. (In re Yacovi)*, 411 F. App'x 342, 346-47 (5th Cir. 2011) (citing *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 (1st Cir. 1998)).  In assessing the uncertainty and delay of litigation, courts look to the <u>legal and evidentiary obstacles to litigating the claim</u>.  *In re Healthco Int'l, Inc.*, 136 F.3d 45, 50 (1st Cir. 1998).

19.    Even putting aside any consideration of the relative strength of the various parties' arguments, the complexity and lack of clear precedent renders the likelihood that the Commonwealth would prevail in the Commonwealth-COFINA Dispute far from certain.  Both sides have put forward credible arguments that would lead to a binary result: either the Commonwealth or COFINA owns all of the Pledged Sales Taxes.  The Commonwealth currently receives <u>none</u> of the Pledged Sales Taxes.  If COFINA were determined to be the owner of the

11

Pledged Sales Taxes, none of the $783 million Pledged Sales Tax Base Amount (which grows at 4% each year) would be available for the Commonwealth's use towards payment for essential services or for distribution to its creditors.  Even a total victory for the Commonwealth could have negative ramifications, as it might limit Puerto Rico's ability and flexibility to issue bonds in the future and COFINA creditors would continue to assert claims against the Commonwealth.  And, regardless of this Court's ruling in the Adversary Proceeding, it is almost certain that multiple appeals would follow.  The reality of protracted litigation, potentially for years, comes at a substantial cost to the Commonwealth, both as a result of the significant expenses that it would incur and because its ability to formulate a confirmable plan of adjustment of all its other obligations would be significantly hindered and delayed.

20.    Meanwhile, the Settlement provides definitive, concrete, and immediate benefits. Among other things, the Settlement (a) ensures that the Commonwealth will have access to a significant portion of the SUT Revenues it does not have today—over $360 million in Fiscal Year 2019, which amount will increase in the coming years at four percent (4%) annually, (b) curtails costly, time consuming litigation, (c) extinguishes billions of dollars of claims that have been asserted by COFINA and COFINA bondholders against the Commonwealth, and (d) will facilitate and expedite the Commonwealth's progression towards a confirmable plan of adjustment and its ability to access to the capital markets.  Additionally, in accordance with the terms and conditions therein, the COFINA Plan allows for additional subordinated bond issuances, with the proceeds flowing to the Commonwealth.

21.    Third, as noted in the Motion, the interests of the creditors also weigh in favor of approving the Settlement.  Among other things, the Settlement provides certainty about the amount of SUT Revenues available for essential services and for the Commonwealth's debt and essential

12

services, and resolves billions of dollars of claims that the COFINA creditors have asserted against the Commonwealth.   While the Retiree Committee argues that its limited objection to the Settlement should be given substantial deference, it bears noting that the Commonwealth Agent/the Creditors' Committee, which represents a significant cross-section of Commonwealth creditors, has not objected to the Motion pursuant to the terms of the *Stipulation and Agreed Order Related to Commonwealth 9019 Motion* [Case No. 17-3283, ECF No. 4202] (the "Enforcement Motion Stipulation").   Given the magnitude of the dispute and the complexity of issues presented by the Commonwealth-COFINA Dispute, it is unlikely that all parties will be satisfied with any settlement.   Absence of universal satisfaction, however, is not grounds to withhold approval of a settlement as important as this one.

## C.  The Commonwealth Fiscal Plan is Irrelevant to the Court's Determination Whether to Approve the Motion

22.     The Objections are littered with references to, and characterizations of, the Commonwealth's fiscal plan, which was certified by the Oversight Board on October 23, 2018 (the "Commonwealth Fiscal Plan").   For example, the SEIU/UAW Objection attempts to calculate the Commonwealth's maximum annual debt service and then argues that the Settlement jeopardizes the long-term financial stability of the Commonwealth.   *See* SEIU/UAW Objection ¶¶ 21-23, 54-62.   In addition, the PROSOL-UTIER Objection argues that the Court should reject the Settlement because "it gives too much to COFINA and leaves too little tax revenue to meet debt obligations, funding for essential services and pension payments . . . ."   PROSOL-UTIER Objection ¶ 37.

23.     However, the Commonwealth Fiscal Plan simply is not relevant to the Motion.[17] The litigation being settled pursuant to the Settlement Agreement is the Commonwealth-COFINA Dispute and, accordingly, the sole focus of the analysis pursuant to Bankruptcy Rule 9019 is the compromise and settlement of such dispute, not the Commonwealth Fiscal Plan.  As demonstrated in the Motion and above in this Omnibus Reply, the Settlement is plainly reasonable upon consideration of the relevant factors.

## D. A Comparison of the Settlement with the Agreement in Principle is Irrelevant to the Court's Inquiry Pursuant to Bankruptcy Rule 9019

24.     The Objections also argue that the Settlement Agreement is less advantageous for the Commonwealth than the Agreement in Principle in certain respects and, therefore, the Settlement Agreement should be rejected as it is not in the best interest of creditors.  *See, e.g.,* Retiree Committee Objection ¶¶ 5-8.  This argument is not only irrelevant, but also misapprehends the nature and effect of the Agreement in Principle.  The Agreement in Principle was the foundation upon which the Settlement Agreement and the COFINA Plan was built.  The mandates of the Commonwealth Agent and the COFINA Agent, however, were limited, and the Oversight Board used its authority to crystallize the Agreement in Principle into the definitive Settlement Agreement.  Any differences between the Agreement in Principle and the Settlement Agreement

---

[17] Even if one were to consider the Commonwealth Fiscal Plan, for completeness, the Union Objections do not accurately represent the Commonwealth Fiscal Plan.  For instance, the SEIU/UAW Objection asserts that "[i]n its May 30, 2018 certified fiscal plan . . . , the Oversight Board found Puerto Rico's FY2018 tax revenue (excluding federal funds) to be approximately $10 billion, and it projected the revenue to stay in that range through FY2023." SEIU/UAW Objection ¶ 59.  It is not clear how the $10 billion figure was derived, as the SEIU/UAW Objection does not cite to a specific location in the Commonwealth Fiscal Plan certified on May 30, 2018.  In fact, such fiscal plan projects revenues (excluding federal funds) for FY2018 to be $14.046 billion and FY2023 revenues to be $14.3 billion.  *See* Commonwealth Fiscal Plan (certified on May 30, 2018), at 123.  Also, the most recent Commonwealth Fiscal Plan, which was certified on October 23, 2018, projects revenues (excluding federal funds) for FY2018 to be $15.545 billion (excluding 53.65% of the Pledged Sales Tax Base Amount, which will flow to COFINA pursuant to the Settlement), a figure more than $5.5 billion larger than the SEIU/UAW Objection represents.  *See* Commonwealth Fiscal Plan (certified October 23, 2018), at 139.

14

are irrelevant to the Court's analysis, which is only concerned with whether the terms of the Settlement Agreement satisfy the legal standard pursuant to Bankruptcy Rule 9019.

25.     Certain of the Objections argue that the Settlement unnecessarily provides that COFINA shall continue to receive its portion of the sales and use tax revenue until the restructured COFINA bonds have been paid or satisfied in full.  *See* SEIU/UAW Objection ¶ 43.  Critically, and as noted above, provisions regarding restructured COFINA securities are outside the scope of the Agents' authority pursuant to the Procedures Order.  Such provisions are to be included in a plan of adjustment for COFINA, and the Oversight Board is the only entity authorized to file a COFINA plan of adjustment pursuant to PROMESA section 312.  In the Oversight Board's judgment, such provision was appropriate to include in the COFINA Plan and was critical to garnering the support of COFINA bondholders as they needed to be certain that the consideration they bargained for would be realized.  Moreover, regarding the objections to the call provisions in the Settlement Agreement for the restructured COFINA bonds, the Agreement in Principle expressly provided that the call provisions for the restructured COFINA bonds were to be negotiated.  Without these provisions, the Settlement Agreement, and indeed the COFINA Plan, could unravel.

26.     The Objections also argue that the Settlement Agreement inappropriately provides for "consummation costs" to be paid by the Commonwealth to various bondholder parties.  *See* SEIU/UAW Objection ¶¶ 45, 67.  As indicated in the COFINA Disclosure Statement, the consummation costs are consideration for (a) the negotiation, execution and delivery of the A&R Plan Support Agreement and (b) the obligations and covenants contained in the A&R Plan Support Agreement.  Critically, the COFINA Plan provides for the payment of consummation costs.  Therefore, the portion of the Objections regarding the consummation costs should not be addressed

15

in connection with the Motion, as the propriety of the consummation costs will be addressed by the Oversight Board, and considered by the Court, in connection with confirmation of the COFINA Plan.[18]

27.     Lastly, the Objections argue that the Settlement Agreement does not subject the restructured COFINA bonds to the Puerto Rico Constitutional debt limit (the "Constitutional Debt Limit").  *See* SEIU/UAW Objection ¶ 46; Retiree Committee Objection ¶¶ 5-8.  That objection is misplaced for precisely the same reason discussed above: this Court's role pursuant to Bankruptcy Rule 9019 is not to compare the Settlement Agreement to other potential settlements of the Commonwealth-COFINA Dispute, but rather, merely to evaluate the Settlement Agreement's reasonableness standing alone.  Moreover, putting aside whether application of the Constitutional Debt Limit to COFINA-issued debt would be beneficial, the Objections provide no explanation as to how the Constitutional Debt Limit (which, by its terms, only applies to Commonwealth-issued debt and Commonwealth-guaranteed debt)[19] could be modified as part of a settlement agreement.

28.     Notably, none of the Objections would be resolved by modifying the Settlement Agreement to conform more closely with the Agreement in Principle, which is further evidence that, even if it were relevant, the Court should not engage in a side-by-side comparison of the Settlement Agreement and the Agreement in Principle.  The Settlement Agreement is the only settlement before the Court pursuant to the Motion, and the Court should evaluate the reasonableness of the Settlement Agreement pursuant to Bankruptcy Rule 9019 and the legal standard discussed throughout the Motion and this Omnibus Reply.

---

[18] In any event, the Objections do not even attempt to show how the consummation costs are unreasonable.
[19] S*ee* P.R. Constitution Article VI, Section 2.

16

**E.   Any Related Discovery Should Not Delay the Court-Approved Timeline for Considering the Motion or the COFINA Plan**

29.     The Retiree Committee served the Oversight Board with discovery requests on November 16, 2018 (the "Discovery Requests").  The Discovery Requests are overly broad and unduly burdensome.  What is more, virtually all of the Discovery Requests seek information that is irrelevant to the reasonableness of the Settlement Agreement and, thus, they are immaterial to the Court's inquiry pursuant to Bankruptcy Rule 9019.

30.     Nevertheless, to facilitate a consensual resolution of the Discovery Requests, the Oversight Board is willing to make a production of documents and is discussing such a production with the Retiree Committee.  If the Oversight Board and the Retiree Committee are unable to agree to a reasonable discovery process, the Oversight Board will request that this Court adjudicate the discovery dispute at the December 19, 2018 omnibus hearing.

31.     It is critical, however, that the discovery process not interfere with or delay the Court-sanctioned timeline for consideration of the Motion and the COFINA Plan.  The Court has approved the January 16, 2019 hearing date to consider the Motion and confirmation of the COFINA Plan, as well as the respective objection and reply deadlines.  There is sufficient time for any discovery process to take place within the established timeline.  Indeed, one of the cases cited in the Retiree Committee Objection provided for a discovery process within a much more constrained timeframe.  *See Kenton County Bondholders Comm. v. Delta Air Lines, Inc. (In re Delta Air Lines, Inc.)*, 374 B.R. 516, 520-21 (S.D.N.Y. 2007) ("On March 8, 2007, Delta submitted a motion pursuant to Bankruptcy Rule 9019 for the Bankruptcy Court to approve the Settlement. The appellants filed an objection to the Settlement Motion, but after limited expedited discovery and extensive argument, the Bankruptcy Court entered the Settlement Order on April 24, 2007, with a written decision following on April 25, 2007.").

17

WHEREFORE the Commonwealth respectfully requests the Court to enter the Revised Settlement Order, granting the relief requested in the Motion and any other relief to the Commonwealth as is just and proper.

Dated: December 7, 2018
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Chris Theodoridis (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Commonwealth*

18

104278729v9