## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et.al.*, | |
| Debtors. [1] | |

### REPLY TO OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO MOTION FOR RELIEF FROM STAY FILED BY PLAINTIFFS IN RIVERA-CARRASQUILLO, ET. AL. V. EDUARDO BHATIA-GAUTIER, ET. AL., AND TORRES-TORRES, ET. AL. V. PERELLÓ-BORRÁS, ET. AL.

### TO THE HONORABLE COURT:

**NOW COME** one hundred and nine (109) plaintiffs that comprise *Rivera-Carrasquillo, et.al. v. Eduardo Bhatia-Gautier, et.al.*, Civil Case No. 13-1296 (PG), and consolidated cases; [2] and eighty-two (82) plaintiffs that comprise *Torres-Torres, et.al. v. Perelló-Borrás, et.al.*, Civil

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567- LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780- LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] These are: *García-Matos, et.al. v. Bhatia-Gautier, et.al.*, Civil No. 13-1384 (PG), *Rodríguez-Colón, et.al. v. Bhatia-Gautier, et.al.*, Civil No. 13-1812 (PG), *Náter-Arvelo, et.al. v. Bhatia-Gautier, et.al.*, Civil No. 13-1860 (PG), and *Jiménez, et.al. v. Bhatia-Gautier, et.al.*, Civil No. 13-1896 (PG)

Case No. 13-1560 (PG), and consolidated cases [3] (collectively, the "<u>Movants</u>") through the undersigned attorneys, who respectfully state and pray as follows:

## <u>INTRODUCTION</u>

1. On November 13, 2018, the Movants filed a "*Motion for Relief from Stay*" (the "<u>Motion</u>"). [4] See, Docket No. ("<u>Dkt</u>.") 4211. In a nutshell, Movants argued that the automatic stay under §§ 362 and 922 of the Bankruptcy Code, made applicable in the instant Title III proceedings pursuant to § 301 of the Puerto Rico Oversight, Management and Economic Stability Act ("<u>PROMESA</u>"), did not apply to the individual defendants named in Civil Cases Nos. 13-1296 (PG), 13-1560 (PG) and all consolidated cases (the "<u>non-debtor defendants</u>"), notwithstanding the Commonwealth's promise to indemnify them under the Puerto Rico indemnification statute, P.R. Laws Ann. tit. 32, §§ 3085–3092; 32 L.P.R.A. §§ 3085–3092 ("<u>Law 9</u>"). Movants further argued that there was "cause" to lift the automatic stay as to the non-debtor defendants, pursuant to several relevant "*Sonnax*" factors, as set forth in *In re Sonnax Indus., Inc.*, 907 F.2d 1280 (2d Cir. 1990).

2. Movants requested that the automatic stay be lifted only as to the non-debtor defendants in order for Movants to execute and enforce the non-debtor defendants' personal, settlement liability.

3. On December 4, 2018, the Commonwealth filed an "*Objection of the Commonwealth of Puerto Rico to Motion for Relief from Stay Filed by Plaintiffs in Rivera-Carrasquillo, et. al. v.*

---

[3] These are: *Medina-Vilariño, et.al. . v. Perelló-Borrás, et.al.*, Civil No. 13-1820 (PG); *Robles-Rodríguez, et.al. v. Perelló-Borrás, et.al.*, Civil No. 13-1862 (PG); *Malavé-Vargas, et.al. v. Perelló-Borrás, et.al.*, Civil No. 13-1895 (PG); and *Maldonado-Martínez, et.al. v. Perelló-Borrás, et.al.*, Civil No. 15-2738 (PG)

[4] Movants incorporate by reference herein all of the Motion's contents.

*Eduardo Bhatia-Gautier, et. al., and Torres-Torres, et. al. v. Perelló-Borrás, et. al.*" (the
"Objection"). See, Dkt. 4403.

4.      Movants address below the issues in the Objection which warrant a reply.[5]

## ARGUMENT

    *i.      Sonnax factor 1: allowing the district court to determine the amount and scope of
the Commonwealth's and the non-debtor defendants' liability, if any, would help
resolve issues in the Commonwealth's Title III case.*

5.      In the Motion, the Movants asserted that *Sonnax* factor 1 weighs in favor of granting the
Motion because, among other things, it would help resolve the issue regarding the enforceability
of the non-debtor defendant's liability arising under the Settlement Agreements. See, Motion, p.
4, 13. In the Opposition, the Commonwealth counters that this issue is unimportant to the Title
III case. See, Opposition, p. 8-9.

6.      The Commonwealth, however, is incorrect. For instance, the district court can quantify
the amount that is owed to the Movants. Moreover, a determination regarding the scope and
extent of the non-debtors' liability will also inevitably lead to a determination regarding the
scope and extent of the Commonwealth's liability under the Settlement Agreements and Law 9.
The district court has yet to determine whether the obligation to pay Movants is exclusive of the
Commonwealth, or, as argued by Movants, the Settlement Agreements *and* Law 9 impose an
obligation on the non-debtor defendants and the Commonwealth to pay the Movants what is
owed to them.

7.      These issues are important to the Commonwealth's Title III case. If the district court
determines that the non-debtor defendants are not liable to Movants under the Settlement

---

[5] According to this court's "Order Scheduling Briefing of Motion for Relief from Stay" the deadline to file Movants'
reply papers is December 11, 2018 at 4:00 p.m. (Atlantic Standard Time). See, Dkt. 4223, p. 1.

Agreements, and the Commonwealth contractually bound itself to pay Movants directly,

Movants would most likely have to forego recovering what is owed to them from the non-

debtors, and follow the claims process under Title III of PROMESA. This outcome is consistent

with the Commonwealth's interests in the Title III case.

8.      Thus, determinations by the district court that approved the Settlement Agreements

regarding the amount, scope and extent of the Commonwealth's and the non-debtor defendants'

liability under the Settlement Agreements and/or Law 9 would resolve issues material to the

Commonwealth's Title III case. See, e.g. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No.

17 BK 3283-LTS, 2017 WL 7161844, at *2 (D.P.R. Aug. 4, 2017) (Allowing partial lifting of

automatic stay because, *inter alia*, "it could also resolve the question of quantification of the

Commonwealth's and PREPA's financial liability, if any, on [Movant's] personal injury claim.")

*In re Mildred Deli Grocery, Inc.*, No. 18-10077 (MG), 2018 WL 1136017, at *4 (Bankr.

S.D.N.Y. Feb. 28, 2018) (Allowing lifting of automatic stay because it would "result in the

District Court determining whether the Debtor is liable and the amount of the claim would be

liquidated, thus resolving the Movants' FLSA claims completely.")

    *ii.*      ***Sonnax factor 2: this court is not collaterally estopped from determining whether
the automatic stay applies to the non-debtor defendants.***

9.      In the Opposition, the Commonwealth argues that Movants cannot seek to "collaterally

attack the First Circuit's decision that the automatic stay applies to the enforcement of Movant's

claims against the [non-debtor defendants]." See, Opposition p. 9. The Commonwealth,

however, misinterprets the First Circuit's order:

> "The orders on appeal in Nos. 18-1743 and 18-1744 confirmed in essence that the
> continued enforcement of the settlement agreement between the parties is
> automatically stayed in light of the Commonwealth of Puerto Rico's PROMESA
> Title III case, and that "[t]he stay may be lifted should the judge presiding over
> the bankruptcy proceeding grant relief from the stay or upon the conclusion of the

bankruptcy proceedings, whichever first shall occur." Appeal Nos. 18-1743, 18-1744, and 18-1073 shall be held in abeyance pending further stay-related proceedings in the Title III case. This court takes no view at present concerning any of the issues presented by these appeals. The parties shall file status reports with this court every 90 days from the date of this order."

10.    The First Circuit made clear that it took "no view at present concerning any of the issues presented by these appeals" pending "further stay-related proceedings in the Title III case." The First Circuit did not rule that the case was stayed, that the stay applied to the non-debtor defendants, much less explain why the stay applied. The First Circuit's order also did not limit the proceedings in this court solely to a determination whether the stay should be lifted or not ("Appeal Nos. 18-1743, 18-1744, and 18-1073 shall be held in abeyance pending further stay-related proceedings in the Title III case.") That is, the First Circuit's order did not preclude this court from determining whether the stay applies to the non-debtor defendants.

11.    Moreover, the factors for collateral estoppel to apply are not met here. For collateral estoppel to apply, "the following factors must be met:

> an identity of issues (that is, that the issue sought to be precluded is the same as that which was involved in the prior proceeding), (2) actuality of litigation (that is, that the point was actually litigated in the earlier proceeding), (3) finality of the earlier resolution (that is, that the issue was determined by a valid and binding final judgment or order), and (4) the centrality of the adjudication (that is, that the determination of the issue in the prior proceeding was essential to the final judgment or order)." .

> See, *Gonzalez-Pina v. Rodriguez*, 407 F.3d 425, 430 (1st Cir. 2005) (citing, *Faigin v. Kelly*, 184 F.3d 67, 78 (1st Cir.1999)).

12.    For starters, the Commonwealth has not satisfied its burden of establishing that collateral estoppel applies. See, *Connell v. BRK Brands, Inc.,* No. CIV.A. 10-12101-TSH, 2013 WL 3989649, at *5 (D. Mass. Aug. 1, 2013) ("The party invoking issue preclusion has the burden of establishing that all necessary elements have been satisfied.") The Commonwealth only asserts in conclusory fashion that the First Circuit determined that the automatic stay applied.

13.     Additionally, the Movants did not have a fair opportunity to fully, and fairly litigate the issue whether the automatic stay applies to the non-debtor defendants. Movants first raised this issue regarding the non-applicability of the automatic stay under PROMESA by motion on May 11, 2018, when they sought an order from the district court to "instruct the defendants in their individual capacities to pay the amounts owed by them, notwithstanding the Commonwealth's invocation of the automatic stay in PROMESA." See, Dkt. 398 in Civil Case No. 13-1296; Dkt. 239 in Civil Case No. 13-1560. The district court ruled on that motion without a reasoned explanation why the case was stayed, and without the non-debtor defendants' arguments (nor the Commonwealth's arguments, since it was not a party in the district court proceedings), and importantly, without affording Movants a hearing on the matter. Moreover, the district court's decision was not a "valid and binding final judgment or order." Had it been so, the First Circuit would have allowed Movants' appeals to go forward. Instead, it held Movants' appeals "in abeyance pending further stay-related proceedings in the Title III case."

14.     This court should also account for the fact that it is a specialized court, and the custodian of the automatic stay with exclusive jurisdiction of the Commonwealth's bankruptcy case. It should have the final say [6] over the applicability of the automatic stay as to the non-debtor defendants, and decide if the non-debtor defendants will continue to benefit from the automatic stay that applies to the Commonwealth, the "debtor" in the above-captioned Title III

---

[6] Courts have held that "[t]he state or federal forum handling the nonbankruptcy litigation has concurrent jurisdiction to initially determine whether § 362(a)-(b) [of the Bankruptcy Code] stays the proceeding, but the federal bankruptcy forum may entertain a collateral attack on that ruling." See, *In re Mid-City Parking, Inc.*, 332 B.R. 798, 805 (Bankr. N.D. Ill. 2005) (citing, *In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348-49 (2d Cir. 1985) (involving a federal district court in another district); *In re Benalcazar*, 283 B.R. 514, 529 (Bankr. N.D. Ill. 2002); *In re Conference of African Union First Colored Methodist Protestant Church*, 184 B.R. 207, 216 (Bankr. D. Del. 1995)).

proceedings. As such, collateral estoppel does not bar this court from determining whether the automatic stay applies to the non-debtor defendants.

### iii.   Sonnax factor 2: The Commonwealth failed to address Movants' arguments that granting the Motion would not interfere with the Commonwealth's Title III case.

15.     Additionally, the Commonwealth failed to address *any* of Movants' arguments that the Commonwealth is not required to indemnify the non-debtor defendants, there is no risk of a claim for indemnification by the non-debtor defendants against the Commonwealth if Movants' motion is granted, and that any claim for indemnification by the non-debtors would be stayed under PROMESA. Rather, the Commonwealth asserts that "[i]f Movants seek to enforce their claims against officials and former officials of the Commonwealth in the Prepetition Actions, they will litigate against Commonwealth lawyers, negotiate settlements with Commonwealth lawyers, and if they prevail, secure payment from the Commonwealth." See, Dkt. 4403, p. 11. That is clearly an argument meant for another case. The circumstances here are different; there is no ongoing litigation, and the claims have been settled.

16.     Also, the cases and orders cited by the Commonwealth are inapposite; they do not involve enforcement of a monetary judgment against an individual and the interplay of indemnification by the state.[7] The only analogous case cited by the Commonwealth is *In re City of Stockton, Cal.*, 484 B.R. 372 (Bankr. E.D. Cal. 2012). That case, however, is also

---

[7] See, e.g. Order at Dkt. 1234 referenced at p. 10 of the Objection (Finding there was no cause to lift stay because, among other things, the "[t]he Lawsuit is not ready for trial, as dispositive motion practice has not occurred. Continuation of the Lawsuit thus would not necessarily result in an expeditious resolution of Movant's claims."); Order No. 00117172163 issued on June 28, 2017 by the First Circuit Court of Appeals in *Roberto Cano-Rodriguez v. Narciso De Jesus-Cardona* ("This is an appeal from the entry of summary judgment in favor of Commonwealth of Puerto Rico officials in a case alleging political discrimination. Judgment entered in the district court on March 29, 2016 and plaintiff appealed."); *In re Residential Capital, LLC*, No. 12-12020 MG, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (Denying relief from stay due, in part, because "the Gilbert Litigation is in its early stages. The Defendants have not even filed an answer to the complaint because the case was initially dismissed for failure to state a claim.")

distinguishable. *In re City of Stockton, Cal* involved ongoing litigation against the City of Stockton, which had filed for bankruptcy under Chapter 9 of the Bankruptcy Code, and two "officials" of the debtor-city, the city manager, and deputy city manager. The district court maintained the stay under § 922 as to the individual officers of the debtor-city because of the costs associated with litigating the case all the way to trial, and because the city "will be required to pay the judgment" pursuant to California's indemnification statute. See, 484 B.R. at 378-79 ("The City, having undertaken the defense of the City Manager and Deputy City Manager, is generally obliged to pay a judgment against them in the civil action. Cal. Gov't Code § 825. If the individuals were to pay any portion of such a judgment, then they are entitled to reimbursement. Cal. Gov't Code § 825.2.")

17.     The factual scenario here is much different. As opposed to California's indemnification statute, Law 9 does not *require* indemnification, and as explained in the Motion, no indemnification claim would ensue against the Commonwealth until such time as the Puerto Rico Department of Justice denies or revokes the decision to indemnify the non-debtor defendants. To Movants' knowledge, this has not happened. Moreover, there is no ongoing litigation here; the Commonwealth has already borne the cost of it.  And unlike the city-debtor in *In re City of Stockton, Cal*, the Commonwealth was not brought as a defendant in the complaints. Further, Movants are not attempting to enforce the Commonwealth's *indemnification obligation*. They most likely cannot because of the Commonwealth's Eleventh Amendment Immunity, and they have no standing to do so. See, P.R. Laws Ann. Tit. 32, § 3085; 32 L.P.R.A. § 3085 ("[T]hese provisions shall not be construed, for any reason whatsoever . . . as a waiver of the sovereign immunity of the Commonwealth."); *Ortiz-Feliciano v. Toledo-Davila*, 175 F.3d 37, 40-41 (1st Cir. 1999); *Colón-Colón v. Negrón-Fernández*, No. 14-1300 (GAG), 2018 WL

8

2208053 at *3 (D.P.R. May 14, 2018). As such, *In re City of Stockton, Cal* does not help the
Commonwealth.

    **iv.**    ***Sonnax* factor 4: The court which presided over the settlement agreement is better
suited to resolve the issues involving the non-debtors' and the Commonwealths'
settlement liability.**

18.    In the Opposition, the Commonwealth argues that *Sonnax* factor 4 does not support
granting the Motion because "[n]o specialized tribunal has been established to hear the
Consolidated Cases." However, courts that apply the fourth *Sonnax* factor do not necessarily
focus on whether a "specialized tribunal" has been created *per se*. Rather, courts look at whether
the non-bankruptcy court is better suited to resolve the issues. See, *e.g. In re Morris*, No. 10-
60113, 2010 WL 2197717, at *3 (Bankr. N.D.N.Y. May 27, 2010) (Applying fourth *Sonnax*
factor, and allowing action to proceed in state court because, *inter alia*, "the state court that so-
ordered the Settlement Stipulation is best able to interpret its disputed provisions.")

19.    Thus, the fourth *Sonnax* factor weighs in favor of lifting the automatic stay as to the non-
debtor defendants because the district court that presided over the litigation, was involved in the
settlement negotiations, approved the Settlement Agreements, and retained jurisdiction for
enforcement purposes and "all matters relating" to the Settlement Agreements is better suited to
resolve the pending issues. Namely, determining the scope and extent of the non-debtor
defendants' and the Commonwealths' settlement liability, if any, and presiding over the
execution and enforcement of the judgment against the non-debtor defendants.

    **v.**    ***Sonnax* factors 6, 7, 10 and 12: the Commonwealth was not a party in Civil Cases
13-1296, 13-1560 and consolidated cases. The Commonwealth has not shown that
granting the Motion would interfere with the Title III case.**

20.    The Commonwealth argues that the sixth *Sonnax* factor weighs against granting the
Motion because Movants "fail[ed] to show how any non-debtor parties in the Consolidated cases

are the *primary parties* to the action." See, Objection p. 12. This argument is surprising; the Movants established in the Motion that the Commonwealth was not a party in Civil Cases 13-1296, 13-1560 and the consolidated cases. See, Motion, p. 6.

21.     Finally, the Commonwealth repeats the same argument regarding *Sonnax* factors 6, 7, 10 and 12 (p. 13-15 of Objection): that granting the Motion would adversely affect the Commonwealth's creditors, and interfere with the Commonwealth's Title III case because the Commonwealth would have to comply with the Settlement Agreements and indemnify the non-debtor defendants. This perfunctory argument should be disregarded for the same reasons stated in the discussion involving *Sonnax* factor 2, *supra*. Movants established in the Motion that Law 9 and its implementing regulation favor the Commonwealth insofar granting the Motion would not interfere with the Title III case whatsoever. The Commonwealth avoided addressing these arguments and supporting authorities in the Objection; it has not shown absence of cause for granting the relief requested in the Motion.

     **WHEREFORE**, Movants respectfully request that the Motion be granted.

     Respectfully submitted this December 11, 2018, by,

**ALDARONDO & LÓPEZ BRAS, P.S.C.**
ALB Plaza, Suite 400,
#16 Carr.199
Guaynabo, Puerto Rico 00969
Tel. 787-474-5447 / Fax. 787-474-5451

*s/ Eliezer Aldarondo-Ortiz*
ELIEZER ALDARONDO-ORTIZ
USDCPR 125402
E-mail: ealdarondo@alblegal.net

*s/ Claudio Aliff-Ortiz*
CLAUDIO ALIFF-ORTIZ
USDCPR No. 205313
E-mail – califf@alblegal.net

*s/ Sheila Torres-Delgado*
SHEILA TORRES-DELGADO
USDCPR 222706
E-mail: storres@alblegal.net

*s/ David Rodríguez-Burns*
DAVID RODRÍGUEZ-BURNS
USDCPR No. 212505
E-mail – drodriguez.alb@gmail.com

*Counsel for the Movants*

## CERTIFICATE AND NOTICE OF SERVICE

**I HEREBY CERTIFY** that on December 11, 2018, I electronically filed the instant

motion with the Clerk of the Court by means of the CM/ECF System, which shall send

notification of such filing to the attorneys of record. Moreover, notice of this Motion shall be

served in accordance with the operative Case Management Procedures.

*s/ David Rodríguez-Burns*
DAVID RODRÍGUEZ-BURNS
USDCPR No. 212505
E-mail – drodriguez.alb@gmail.com