UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------x

In re:                                              PROMESA
                                                    Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of                           No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO,                    (Jointly Administered)
et al.,

    Debtors.[1]

-------------------------------------------------------x

NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT

    The Court has received and reviewed the attached correspondence, described

below, from interested persons in the above-captioned cases.  Although the Court cannot respond

individually to all of those who have expressed their thoughts or concerns, the Court is deeply

mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the

importance of the issues that are raised in these unprecedented cases.

    1.      Letter dated November 15, 2018 from Rocio Hernandez
    2.      Letter dated November 16, 2018 from Seema Balwada.
    3.      Letter dated December 3, 2018 from Leopold Montanaro.
    4.      Letter dated December 4, 2018 from Adam Jacobs.

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

5.      Letter dated December 4, 2018 from Jack Girton.

6.      Letter dated December 4, 2018 from Jerry Reynolds.

7.      Letter dated December 4, 2018 from larry Hollrah.

8.      Letter dated December 4, 2018 from Larry Kenna.

9.      Letter dated December 4, 2018 from Manley.

10.     Letter dated December 4, 2018 from Martin and Marilyn Feldman.

11.     Letter dated December 4, 2018 from Mike Streets.

12.     Letter dated December 4, 2018 from Jose Sepúlveda.

13.     Letter dated December 4, 2018 from Robert Ackerman.

14.     Letter dated December 4, 2018 from Ron Reed.

15.     Letter dated December 4, 2018 from Sion Zerah.

16.     Letter dated December 5, 2018 from Craig Hayes.

17.     Letter dated December 5, 2018 from Julian Roberts.

18.     Letter dated December 6, 2018 from Jane Walmsley.

19.     Email dated December 6, 2018 from Leslie Pokrass.

Dated:  December 10, 2018

Attachment included sensitive wealth management information

November 15, 2018

▪▪▪▪▪▪▪▪▪▪

Judge Laura Taylor Swain
San Juan, P.R.

Dear Judge Swain:

Adjunto le envío copia carta le envié en Julio 9,
2017, que espero haya leído... (incluyo copias recibos
correo certificados.— Se que es una persona
muy ocupada y hasta se me sonroja la cara
de tener que escribirle y (dejarle) dejarle saber,
cómo me estoy sintiendo, a una persona tan
importante como usted...! Espero repase la
carta de Julio 9, 2017 para no tener que
explicarle lo mismo.
Llegué a mencionarle Cofina, pues eso me
comentó una secretaria UBS; si los tuve Nose,
pues mi esposo, que murió, estaba a cargo de todo.
Los productos son P.R. Fixed income; adjunto envío
copia estados, y copia del Electronic Funds Transfer.
Aparte de todo lo que le comento, llega "María"
se le vá el techo a mi cuarto y cocina !!!

*Sonó timbre celular y me asusté; perdón!

*(dejarle)

Fema me ayuda y consigue para mi un préstamo con Small Business de 25,000.00! — Llega el cheque y lo deposito en (cheque Small B.) el Banco Santander mi cuenta de cheques... y que sucede al final... he tenido que utilizar dinero queda préstamo Small Business para cubrir ~~_____~~ un pago de 565.— de un préstamo personal que tengo! (Creo mis cachetes van a explotar del caliente en la cara) ó sea 565.00 — 420.00 cheque UBS... faltan 145.— para completar pago tengo que sacarlo de balance préstamo SMB! — Y... el resto, con que cómo pago mis gastos fijos y miscelaneos? En la carta anterior le había comentado el ck. s.s. está en otro Banco comprometido con otras cosas.

Se que hay muchas personas ~~____~~ que están igual o peor que yo, pero me quejo con todo el respeto ante usted, pues no se cuanto más pueda aguantar, aparte de que a mi hijo menor de 47 años le dió un derrame hace dos meses. Fuerte verdad?! Aparte de todo... se escribir en Inglés, pero encuentro me puedo *desahogar mejor! PUFF!

*("get something (off your chest")

P.S.
- "Enclosures"
- Espero una contestación, por favor!

Atentamente,

Rocío Hernández

Rocío Hernández

November 16, 2018

Seema Balwada, CFA

████████████

Judge Laura Taylor Swain
U.S. District Court for the District of Puerto Rico
Fed. Court of PR Office 150, Fed. Building
San Juan, Puerto Rico 00918

Mr. Rob Bishop of Utah, Chairman
U.S. House of Representatives
Committee on Natural Resources
Washington D.C. 20515

Dear Judge Swain and Rep. Bishop,

American tax payers could become the biggest victims of Puerto Rico's debt restructuring debacle. Although the U.S. government said it will not 'bail out' Puerto Rico, American taxpayers could end up footing a bill that is many times more than Puerto Rico's outstanding debt.

"The Puerto Rico Effect" is such that securitization or priority-lien revenue bond pledges are no longer a structure that can be utilized to create more investor security and lower rates for issuers. The entire $3.8 trillion municipal bond market will be in jeopardy of repricing in the aftermath of the Court approving the COFINA Plan Support Agreement ('PSA'). The PSA violates Statutory Liens by taking away Junior COFINA bondholders' constitutional rights of contract law, takings clause and due process.

"Super-downgrades" are now anticipated in the municipal bond market conditioned on the COFINA PSA. S&P has warned issuers and investors that 85% of 1,300 different priority-lien tax revenue bonds will see rating changes to reflect the markets' view on securitized bonds in light of Puerto Rico Title III bankruptcy.

COFINA an issuer of triple tax exempt secured bonds and a solvent entity, did not even fulfill the conditions for its Title III petition or provide a recent audit. The outcome of COFINA debt restructuring casts doubts on all priority-lien revenue bonds commonly issued by states and local governments to issue bonds at more favorable rates.

The COFINA settlement stands to save $17 billion for Puerto Rico, but will cost the American taxpayer tens of billions of dollars more in the years to come. The $3.8 trillion municipal bond market is beginning to feel the 'The Puerto Rico Effect'. What is happening in Puerto Rico is about to affect the American taxpayer.

Please see below a Bloomberg article discussing the unfortunate fallout of the COFINA settlement.

Thanks & Regards

Seema Balwada, CFA

# Billions in Muni-Bonds Had Ratings Slashed. Blame Puerto Rico

- Market hit with wave of upgrades, downgrades by S&P this week
- New York, Connecticut bonds cut over change in methodology

By Amanda Albright

(Bloomberg) -- More than $40 billion of bonds sold by New York were stripped of their AAA status this week. Some $3.7 billion in debt issued by Chicago's convention center operator vaulted out of junk. And more than $6 billion of Connecticut debt was slashed two notches.

Nothing about the governments has changed. The only difference was a new yardstick being used by S&P Global Ratings.

The rating company's reevaluation of so-called priority lien debt -- which has a top claim on certain state and local government revenue -- comes amid doubts about whether that legal security would withstand a financial collapse like the one in Puerto Rico, which is in the midst of a record bankruptcy. S&P said the shift pushes the ratings on such securitized debt closer to those of the underlying government, reflecting the risk that officials could try to tap those funds if they experience distress.

Investors and issuers have been put on notice that many ratings are poised to change: S&P, which grades 1,300 different priority-lien tax-revenue obligations, estimates that as much as 45 percent of those ratings could rise or fall two notches or more. Just 15 to 25 percent of ratings are expected to stay the same, it said in a report.

Frances Lewis, a managing director at MacKay Municipal Managers, said it's been tough for the market to digest the changes so far. "Super-downgrades are just very detrimental to the market," she said. "The rating agencies lose credibility."

Puerto Rico used the securitization technique on bonds backed by sales-tax revenue, known as Cofinas. That debt, initially rated A+ in 2007, well above the island's general-obligation rating at the time, was created to provide a well-rated source of financing. Now, Cofina bondholders will likely have to share those funds with general-obligation bondholders as part of a restructuring agreement reached this year, even if owners of some of the highest priority Cofinas stand to recoup almost all of their investment.

## Not An Island

Charles Doraine, CEO of Doraine Wealth Management Group, said that outcome casts doubt on the legal claims that stand behind other securitized bonds.

"What happens in Puerto Rico will affect the whole country," said Doraine, whose clients own Puerto Rico sales tax debt. "If anybody can figure out a way to get past the securitized paper and use it to pay off the GOs, then the whole world changes. Securitized no longer means anything and everything reprices."

The structure was used by other financially-strapped issuers, including Chicago and Connecticut, which have driven down their borrowing costs by selling debt that has legal claim on sales-tax funds. That makes them more secure than debt backed only by a promise to repay.

S&P changed its criteria to reflect a shift in how the market views such debt in light of Puerto Rico and other municipal bankruptcies, said Sarah Sullivant, an analyst at the company. "That change hasn't happened overnight, our evolution of thinking also didn't happen overnight," she said.

The New York sales-tax and personal-income tax bonds were downgraded because the revenues backing the bonds "might not receive priority" in cases of distress, S&P said. The rating was cut to AA+ from AAA, making it now in line with New York state's rating.

Rival Fitch Ratings made a similar change to its criteria earlier this year, which also triggered multi-notch downgrades. Moody's Investors Service already discounts the safety of the securities by generally capping the ratings of dedicated-tax bonds at the same level as a government's general-obligation bonds.

Related: Once-Safest Muni Bonds Tainted as Investors Await Downgrades



**Puerto Rico COFINA Bonds**

Aol  to: swaindprcorresp                                    12/03/2018 09:40 PM

From:      ███████████████

To:        swaindprcorresp@nysd.uscourts.gov

Honourable Judge Swain.
Dear Judge , I am a 79 year old retired citizen of the United States living on
a income dedicated to interest income on my bond investments . I bought COFINA
bonds based on the assurance that these bonds were secured by sales tax of the
Puerto Rico government and protected by the legal assurances that pledged
revenue was protected by contract law & the Commonwealth  of Puerto Rico .On
November 20th as Judge on the restructuring case approved the disclosure
statement covering the COFINA plan of adjustment ! Unfortunately u are not
protecting or respecting my bond holders rights under the law by confiscating
my bond holder property a Un American decision on u part ! I cannot believe u
will ignore the needs of tax paying senior citizens of the United States like
myself and favour large hedge funds in the process. I trust u will take this
letter to heart and consideration and treat my bonds in a fair and equitable
manner .
I remain respectfully yours , Leopold W. Montanaro
Sent from my iPhone

### PUERTO RICO COFINA Bonds

ajraj3    to: swaindprcorresp                                    12/04/2018 08:58 AM

From: [redacted]

To: swaindprcorresp@nysd.uscourts.gov

**Dear Judge Swain:**
**My name is Adam Jacobs and I am a bond owner of the Puerto Rico COFINA**
**bonds.**
**I bought these bonds with my ROTH IRA monies with the understanding that they are**
**secured by the statutory lien of sales tax revenues. The interest was going to be a source**
**of some my retirement monies to live on. I have not received a distribution in over a year and a half**
**causing me extreme financial burdens.**
**Based on the report forwarded to me by Mr. Paul Mante the broker from the GMS group who sold me**
**the bonds, it is evident that consideration of the restructure of the Puerto Rico debt is is one sided,**
**and not fair to me at all**
**On or about Tuesday November 20th (you) Judge Swain who is overseeing the Title III Puerto Rico debt**
**restructuring cases approved the disclosure statement covering the COFINA Plan of Adjustment. The**
**Disclosure Statement covers the date of record, confirmation hearing notice, solicitation/recovery**
**package, voting ballot, distribution procedures and various other procedures necessary to receive and**
**tabulate the bondholder vote to either ACCEPT or REJECT the COFINA Plan of Adjustment.**
**The Judge made it very clear that the Court has only approved that the proposed procedures are a**
**reasonable and appropriate means to provide bondholders a means to respond to the COFINA Plan of**
**Adjustment. The Court ruling will allow bondholders to cast an informed ballot with respect to the**
**proposed Plan of Adjustment. Judge Swain said the Court approval is subject to additional changes and**
**supplemental disclosures. You made a point that the disclosure and procedure approval ruling**
**made today is not in any way a ruling on any objections to the substance of the proposed Plan.**
**Judge Swain stated, "The Court will consider the economics and structure of the**

proposed Plan of
Adjustment as well as the legality of the elements of the Plan."
All objections to the substance of the COFINA Plan of Adjustment and the
Commonwealth
COFINA settlement will be adjudicated at the Court hearing scheduled for
January 16, 2019 in San
Juan with formal rulings and decisions to follow.
You pointed out that the pro se objections made by some individual investors
and many of
the letters she received from individual investors object to the fact that a COFINA
Plan of Adjustment is
being proposed at this time. It appears that you received objections similar to
objections GMS
has received, that it is premature to file a Plan of Adjustment for a solvent
COFINA that has sufficient
revenues to pay all bondholders, especially since the Commonwealth, whose
2019 general fund budget is
less than $9 billion is holding $12 billion of cash in various accounts, most of
which is unpaid debt
service. The Oversight Board has yet to provide audited financial statements that
prove the
Commonwealth's self-proclaimed bankruptcy is legitimate and the
Commonwealth is truly insolvent.
You said the Court has also received letters on the legality of the division of the
pledged sales
tax which by law is not available to the Commonwealth. The Plan of Adjustment
ignores the law and makes
46% of the COFINA pledged revenue available to the Commonwealth. The Puerto
Rico legislature also
disregarded their previous law that gave COFINA bondholders the pledged
COFINA revenue and passed a
new law, which is not allowed under PROMESA and contract law. The new law
that changes the existing
Statutory Lien and allows the Commonwealth to confiscate 46% of COFINA
pledged revenue. The 46% is
predominately Subordinate COFINA bondholder money that is being confiscated.
Numerous letters were received by the Court objecting to Senior bondholders
receiving a 93%
recovery, including back interest/cash from the escrowed COFINA funds, while
the Subordinate
bondholders secured by the same Statutory Lien on pledged revenues sufficient
to pay both Senior and
Junior bondholders, receive a 56.4% recovery and no back interest from the $1.2
billion of COFINA
escrow funds. The money in the fund is unpaid debt service owed all COFINA

bondholders.
Letters have also brought attention to the fact Subordinate bondholders are
mostly retail investors
that are unorganized and therefore were not represented at the negotiating table.
The Senior bondholders,
mostly hedge funds, accumulated over the past year what they believe to be a
sufficient amount of
Subordinate bonds at distressed prices to control the negotiations and the vote.
Along with the
Commonwealth and the Financial Oversight Board the Senior bondholders
authored the COFINA Plan of
Adjustment by taking advantage of their position and acting in their own interest
rather than in the interest
of all COFINA bondholders. The mediation/negotiation should be deemed illegal
as the participants are
guilty of self-dealing. Based on the excellent treatment given to Seniors
bondholders and the
Commonwealth, self-dealing is the only conclusion that can be reached.
COFINA is a solvent and very successful entity, the Statutory Lien and pledged
revenue covers
both Senior and Subordinate bondholders. However Senior bondholders will
receive a 93% plus cash
recovery and Subordinate bondholders will only receive a 56.4% recovery and no
cash. The Plan appears
to have been manipulated, liens and laws appear to have been broken, the Plan is
not fair to all
stakeholders. A glaring inequity is U.S. Subordinate bondholders who live on the
mainland will recover
56.4% of face value, while Puerto Rico Subordinate bondholders will recover
58.4% even though they are
in the same class and own the same bonds. Therefore, according to PROMESA
guidelines the Plan is
illegal. The Court has a fiduciary responsibility to make sure all bondholders are
treated fairly and those
in the same class are treated equally.
It appears in order for the proposed settlement to be approved the Statutory Lien
that covers Senior
and Subordinate bondholders must be ruled legal. The Statutory Lien and
COFINA structure are being used
in the proposed Plan of Adjustment so the Statutory Lien and structure should be
considered legal and valid.
Junior bondholders were not represented in the negotiations other than by
mainland Senior
bondholders who own a lesser amount of Junior bonds than they do Seniors. In
addition, the escrowed

debt service being held by the BNY Mellon is only being used to pay Senior bondholders legal expenses,
back interest and a mediation fee of 2%, which is equal to over $320 million dollars, Subordinate
bondholders are not receiving any of the escrowed funds.
The first 5.5% of COFINA revenues pledged to bondholders is around $1.3 billion. The 5.50%
pledged was lowered to a Pledged Sales Tax Base Amount (PSTBA) of which 46% up to $425 million
will now go to the Commonwealth leaving considerably less money to pay COFINA bondholders. In
essence COFINA bondholders pledged revenue which was sufficient to pay all COFINA debt service has
been illegally reduced. As a result Seniors will receive 93% of the adjusted funds available for COFINA
debt service while mainland Subordinate bondholders will receive only 56.4% and Puerto Rico
Subordinate bondholders for some unknown reason will receive 58.4%.
The Commonwealth COFINA Plan of Adjustment settlement is premature and illegal for a number
of reasons.
 The Commonwealth has yet to produce acceptable Audited Financials to prove insolvency.
 The Financial Oversight Board has not been transparent, they have not allowed creditors a means of
discovery to quantify the Oversight Board's assumptions of general revenue available to the
Commonwealth to pay debt in their Fiscal Plans. To date the Board's financial assumptions have been
20% too low and essential services expense has never been addressed. No one knows Puerto Rico's
real financial position.
 COFINA is not insolvent and debt adjustment was never negotiated in Title VI, a PROMESA
prerequisite to enter Title III bankruptcy.
 Buying and selling of COFINA bonds by mediating/negotiating hedge funds and others with insider
information was allowed to continue to take place until November 20, 2018, the bondholder date of
record for eligibility to vote.
 Unethical, maybe illegal, buying and selling has allowed insider hedge funds to purchase bonds in
order to manipulate the outcome of the vote to the detriment of Subordinate bondholders. In other
words the negotiating parties may be guilty of self-dealing.

 Puerto Rico government has passed legislation that changes the 2006 law Act 91, which was the
enabling law that created COFINA. Changing the law to the detriment of bondholders while bonds are
outstanding is not legal under PROMESA, the takings clause of the U.S. Constitution and contract law.

 Unrepresented secured U.S. mainland Subordinate COFINA bondholders are victims of self-dealing,
(Senior COFINA bondholders recovery 93%, secured mainland Subordinate COFINA bondholders
recovery 56.4% and Puerto Rico Subordinate bondholders, represented by former government officials,
will receive 58.4% recovery).

 To date the Court has not stopped the Financial Oversight Board debt restructuring negotiations from
bypassing many prerequisites of PROMESA.

COFINA BACKGROUND REFRESHER: During the 2006 Puerto Rico financial crisis the
Commonwealth created COFINA. Investors had lost confidence in the Puerto Rico government's ability to
manage the finances of the Commonwealth. Since investors did not trust the Puerto Rico government the
Commonwealth could not access the bond market at reasonable rates. The security and main components of
COFINA bonds that attracted investors were a Statutory Lien on pledged Sales Tax revenue and the fact
that this dedicated revenue source was not available under any circumstances to the Puerto Rico
government, who had lost the trust of investors. The fact that the Puerto Rico government's intent was to
protect bondholders when they established COFINA and the Statutory Lien is unquestionable. For the next
10 years the Puerto Rico government under 3 governors, legislatures and Department of Justices continued
to assure COFINA bondholders and inform General Obligation bond investors that pledged COFINA
revenues secured by a Statutory Lien were not available to the Commonwealth.
Most individual investors who purchased Subordinate COFINA bonds were aware the Puerto Rico
government was not credible and the Commonwealth was in financial trouble. It is a matter of record that
corruption, mistrust and mismanagement were the reason the secured COFINA structure had to be
created. A structure was necessary that did not allow the Puerto Rico Treasury access to bondholder

pledged revenue. The intent of the COFINA Statutory Lien was to make bondholders feel secure enough
to lend money to Puerto Rico.

Most individuals purchased Subordinate COFINA bonds prior to when the U.S. Congress passed
the Puerto Rico Oversight Management and Economic Stability Act (PROMESA). They bought the bonds
for the following reasons.

A. A Priority Statutory Lien on pledged dedicated sales tax revenue that was more than sufficient to
pay all COFINA debt. The dedicated revenue was unavailable to the government of Puerto Rico.

B. High investment grade rating when issued, "A+" second only to Senior COFINA bonds which
were slightly higher rated by one notch "AA-". A long term Subordinate COFINA bond's market
value was equivalent to around 1 to 2 points or 1 to 2% less than a similar Senior bond's market
value. (Under the proposed Plan the difference in recovery between Seniors and Subordinate
bonds is around 40 points or 40%.)

C. Legal assurance from the Puerto Rico government that by law the Puerto Rico treasury did not
have access to the pledged revenues and such was stated in Official Offering Statements for
General Obligation (GO) and COFINA bonds issues. The Puerto Rico government also was
obligated to defend the COFINA bond structure, which they are now attacking.

D. The Commonwealth and its Agencies had to take all steps necessary to meet their obligations
because up until June 2016, the Commonwealth did not have access to Chapter 9 bankruptcy or
any form of debt adjustment. In June 2016 PROMESA was created as a mechanism to reduce
Puerto Rico's debt by respecting bondholders rights, priority of payment and legal Liens.

Unfortunately PROMESA and Title III have not been about respecting bondholders rights,
the law and liens, it has evolved into innocent bondholders being forced to bailout the U.S.
government and the corrupt Puerto Rico government. The COFINA settlement was driven by the
Financial Oversight Board's fear of the risks and consequences associated with a court ruling in the
Commonwealth vs. COFINA dispute that would have resulted in all COFINA

bondholders being
treated fairly. If an unfavorable ruling for the Commonwealth were allowed to happen it would not
be possible for the Oversight Board to confiscate the Subordinate bondholders property. If the
Commonwealth believed the Court would have ruled against current COFINA bondholders, Senior
bondholders would not be receiving a 93% plus cash recovery. GMS believes the proposed Plan is a
result of self-dealing.
Many individuals who own Subordinate COFINA bonds have written Judge Swain stating various
reasons, many mentioned in this UPDATE, why the proposed settlement is grossly unfair to Junior Lien
bondholders. Unbelievably, contract law and legal Liens have been ignored. The proposal has changed the
Statutory Lien and amount of dedicated pledged revenues available to pay COFINA bondholders, which
is inconceivable in the annals of municipal bonds bankruptcies. Pledged revenues, that by law are not
available to the Commonwealth, are being made available to the Commonwealth. The negotiating parties
did not include a representative for U.S. mainland Subordinate bondholders, which is not equitable. What
is really not equitable is Puerto Rican Subordinate bond investors that live on the Island, who do not pay
U.S. income taxes, will receive a recovery of 58.4% while U.S. investors that live on the mainland and
pay U.S. income taxes recover only 56.4%. The whole process is questionable and self-dealing by the
negotiating parties appears evident.
A detailed illustrative example of recovery for 50 Subordinate bonds is attached, the
explanation below is a simplified example:
An individual who lives on the mainland and holds $50,000 Subordinate bonds would receive
$44,000 face value of new Senior bonds worth around $28,000 as follows: $21,000 face value of current
interest bonds and $23,000 face value of 0% (zero interest) bonds as follows: Current interest bonds,
$1,000 face value 4.50% bond due 2034, $7,000 face value of 4.55% bonds due 2040, $3,000 face value
of 4.75% bonds due 2053, $10,000 face value of bonds 5% due 2058, total $44,000 face value, annual
income $1,006. 0% (zero) interest bonds with a total present value of $7,112,

which will amount to
around $23,000 face value.
Beside the overall inequity of a 56.4% recovery, a serious complaint from U.S. retail
Subordinate bondholders that live on the mainland will be the poor marketability of the small odd
lots of bonds they would receive in the exchange and the fact that Puerto Rico retai1 Subordinate
bondholders will receive a 58.4% recovery all in a more marketable one block of $28,000 interest
paying bonds and no zero coupon bonds.
Judge Swain - I would like you to consider all of the issues I mentioned above and note my formal objection
and protest to the restructuring proposal.
I respectfully await your reply.
Thank-you for your consideration
Adam Jacobs

**Cofina**
Jack Girton    to: swaindprcorresp                    12/04/2018 04:27 AM

From:    ████████████████

To:    swaindprcorresp@nysd.uscourts.gov

As a subordinate bond holder, I object to the attempt of the Puerto Rico government to avoid or diminish promised payments to us, as they have the funds and shouldn't be allowed to take advantage of us. We are individuals who lent our money from our retirement accounts in good faith and shouldn't become victims in this swindle.    Sincerely,  Jack Girton

Sent from my iPad



**COFINA Plan of Adjustment**

Jerry Reynolds    to: swaindprcorresp                         12/04/2018 03:00 PM

From: ████████████████████████████

To:      swaindprcorresp@nysd.uscourts.gov

To the Honorable Judge Swain,

I am a holder of $130,000 of Junior and Senior COFINA bonds, as well as
other Puerto Rico and U.S. municipal bond securities. As such, I recently
read a summary of the proposed COFINA Plan of Adjustment. My reaction
is one of extreme disappointment regarding the inequities between (i) the
Junior and Senior COFINA bondholders and (ii) the Junior COFINA
bondholders domiciled on the mainland and those residing in Puerto Rico.

I'm an accountant by trade and in my professional life I've had first hand
experience with U.S. bankruptcy proceedings. Realizing that the Puerto
Rico circumstances are not precisely the same thing from a legal
perspective, I'm nevertheless surprised to learn of the disparate treatment
to be afforded bondholders with seemingly the same legal rights and claims
against collateral (i.e., the historical and prospective sales tax revenue
stream(s) that appear to be sufficient to provide for all COFINA debt service
payments).

I truly hope that before any plan is formally approved you will reconsider
the ostensible inequities in the proposed COFINA Plan of Adjustment,
which include, among other things, significantly different rates of overall
recovery by bondholder class, the reinstatement of back interest for all
Junior COFINA bondholders, the issuance of cash interest-bearing bonds
versus zero-coupon bonds, the use of small odd bond lots versus "more
marketable" single bond instruments, etc.

Thank you in advance for your consideration of my concerns during the
deliberation process.

Regards,

Gerald A. Reynolds



**puerto rico subordinate bonds**

ljhollrah   to: swaindprcorresp           12/04/2018 01:47 PM

From: ██████████████

To:     swaindprcorresp@nysd.uscourts.gov

Let's not screw the little gut ---all like bonds must be treated the same.

Larry Hollrah, ████████████████

Case:17-03283-LTS Doc#:4581-1 Filed:12/16/18 Entered:12/16/18 10:56 Desc: Main
Exhibit Exhibit E Page:19 of 31



**Cofna seattlement**

Larry Kenna    to: swaindprcorresp@nysd.uscourts.gov                12/04/2018 11:10 AM

From:    ██████████████████

To:    "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>

I know the big hedge funds are trying to manipulate the settlement, but our bonds were
guaranteed by sales tax and that's were they are trying to steal our funds and screw us. I am a
small investor with not a lot of money ,I invested in these bonds because it was rated a+ because
they are backed by sales tax. As far as I'm concerned the Goverment of Puerto Rico is as
crooked as it gets. They don't pay any income tax to the U S but we bailed them out with billions
after the hurricane as far as I am concerned we should have let them sink into the ocean. I know
when this is all settled I am going to cash out and Puerto Rico is probably going to have a hard
time sellingbonds to anyone. So what I am saying to you follow the law and at least make the
settlement equal and fare for all parties.


Thank you
Larry Kenna

**FYI Bondholder from Florida**

**Manley**    to: swaindprcorresp                                                    12/04/2018 09:53 AM
Cc:  tranqu

| From: | █████████████████ |
|---|---|
| To: | swaindprcorresp@nysd.uscourts.gov |
| Cc: | ████████████ |

Dear Honorable Swain,

   I've been caring for 4 senior citizens since 1997 when my mum, dad and uncle passed on.   I invested everything they left,  for this purpose, plus my own decades of careful living, to invest in tax-free bonds.  My bonds were giving me, 21k, then 47k, 61k, then 72k yearly in interest that I used to pay 3 rents and 1 mortgage and food and medical, etc. for 4 seniors in the family who were struggling.  I've not even informed them of the bankruptcy and lost of funds.  I've tightened my budget, no TV,  stop using air conditioning, no leisure activities, no restaurants, no gifts to anyone. You can't imagine what that first year did to my stress level and health.

   I  worked hard to pay off my mortgage but was forced to take out an equity loan for 80,000  and have about 10 credit cards maxed out.  My credit score is still 740, so that shows the type of responsible person I've been ALL my life.   I just did another balance transfer for 16,000 to help me get through AGAIN to when the bond interest is released. (I keep hearing new dates- in June I think there was an agreement but then someone asked for 60 days to iron out some things, then I heard Oct, then Nov, now Jan.  This is difficult .  The GO people were jealous that Sales tax were receiving funds when they were not.

   I purposely traded most of my PR bonds to sales tax, having faith in everything I heard.   What I've learned and experienced and adjustments I've made in my life,  I must be honest,  God is good,  what I learned I would not have learned had there been no bankruptcy.   I am not bitter but  I look forward to when I can return to normalcy.

   Thank you for all you've done,  Respectfully,

   Manley



**Plan for COFINA settlement**
<span style="color:orange">mmf</span>   to: swaindprcorresp@nysd.uscourts.gov                    12/04/2018 06:40 PM

From:        ███████████
To:          "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>

As an 89+ year old retiree, with an 86 year old wife, living  on a fixed
income, I have invested a significant portion of our retirement funds in
COFINA bonds.
 My investments felt secure because they were guaranteed by a fund not
accessible to anyone but the trustee for the bond holders, regardless of
whether they were senior of junior obligations.

The fund currently has enough cash to pay all bondholders, regardless of Sr.
or Jr. status. The current plan not only violates the law by making the fund
cash available to non-COFINA bondholders, but distributes the portion for the
bondholders unfairly. This unfair distribution seems to have occurred because
small investors like us had no voice at the table during all the negotiations.

We trust in your sense of fairness to adjust the current plan with equity to
all bond holders.

Sincerely,

Martin & Marilyn Feldman




Sent from my iPad

### Puerto Rico settlement

**Mike Steets**   to: swaindprcorresp                    12/04/2018 11:31 AM

From:   ██████████████

To:   swaindprcorresp@nysd.uscourts.gov

Dear Judge Swain,

        I object to the plan of restructuring of the Puerto Rico sub sales tax bonds. This plan will go against the statutory lien the bondholders have and undermine the rules of law and contracts.



### Fwd: Subordinate (Junior) Puerto Rico Sales Tax Bonds COFINA

robert ackerman    to: swaindprcorresp                    12/04/2018 03:08 PM

From:    ████████████████████████████

To:      swaindprcorresp@nysd.uscourts.gov

---------- Forwarded message ----------
From: "robert ackerman" ███████████████████████
Date: Dec 4, 2018 3:03 PM
Subject: Subordinate (Junior) Puerto Rico Sales Tax Bonds COFINA
To: <swainprcorresp@nysd.uscourts.gov>
Cc:

Your Honor,
I am a middle income social worker in Brooklyn N.Y. My wife and I own the subordinate
(junior) Puerto Rico COFINA bonds.
Losses due to owning these bonds have already had a very bad effect on my living and
retirement plans and my ability to help my children as ongoing needs arise.
We have been hard working and honest citizens all our lives.
We do not think it is fair that our bond holdings will be paid at a lower rate than the senior
bonds.Just because institutions have more clout than the individual to advocate dosen't mean
that they are more deserving.We have worked hard to create retirement savings and shouldn't
suffer a lesser treatment when it comes to payment for our bonds.
There is something elementally unfair about being paid less for what are the same bonds
created by the same concept of backing with the Puerto Rico sales tax.In your wise
deliberations put yourself in our place.
Thank you for your kind consideration.
Sincerely,
Robert Ackerman
Roberta Shiffman





**Fwd: PR Junior sales tax bonds**
**Ron Reed**   to: swaindprcorresp                    12/04/2018 12:19 PM

From:        ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

To:          swaindprcorresp@nysd.uscourts.gov

To: Judge Swain

From: Ron Reed, holder of the stated bonds

I ask the court's attention to equity in the coming decisions on whether the junior bond holder should stand at par with the senior bond holders. The reasons both the senior and junior bond holders originally purchased the bonds was to help PR with funding during a period of substantial distrust of PR. That distrust has been confirmed by actions of the government. However, the backing of both tax bonds has been proven valid by substantial excess funds sent to the government. In other words both classes of bonds were safe in accordance with the issuance prospectus.

Now hedge funds, etc. are trying to step in front of junior holders during the bankruptcy, excluding junior holder representation, trading on inside information from the holder committee, and making backroom agreements with PR residents for exclusive deals.

All I ask for is equitable treatment vis a vie senior holders and the prospectus under which the bonds were issued. In my opinion the two classes should been treated equally.

Yours truly,



Ron Reed

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮



**Cofina Bonds**

rene zerah    to: swaindprcorresp@nysd.uscourts.gov                12/04/2018 11:34 AM

From:        ███████████████████████

To:          "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>

What's on your mind?

Honorable Judge Swain

I am a subordinate Cofina Bondholder.

I bought these bonds because I was under the impression that they were statutorily protecting me.

Unbelievably I now understand that this protection is being negotiated away.

How can that be? How can this possibly be legal?

Case:17-03283-LTS Doc#:4481-8 Filed:12/14/18 Entered:12/14/18 16:51:48 Desc: Main Document Exhibit Exhibit E Page 26 of 31

I, an 87 year old, vehemently object to having my protection taken away.

Also why is a person who lives in Puerto Rico, who has the same bonds as I do, get a better deal than myself who lives on the mainland and pays US Taxes?

Why am I not getting back interest which I need to pay bills?

Has my subordinate class of bondholders been adequately represented at the negotiations?

Has Puerto Rico proven that they are entitled to protection under that bankruptcy

laws?

Your honor, I trust that in your infinite wisdom you will rectify these injustices.

Sion Zerah



**COFINA SUBS**
**Craig Hayes**   to:  swaindprcorresp

12/05/2018 05:28 PM
Hide Details

From: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

To: <swaindprcorresp@nysd.uscourts.gov>

Judge Swain:                         December 5, 2018

     Voting is now underway, I believe, on the Plan resolving Puerto Rico's financial issues, including major debt relief and reissuance of bonds.
It's good to see the economic recovery after historic storm damage to an impoverished island. There seems now to be a surplus in the General Fund, revenues
exceeding forecasts, and a trust account at Mellon Bank filled with cash for interest due COFINA bond holders.
     Instead of paying out the interest accrued by all COFINA holders during negotiations, however, the proposed Plan fails to recognize the interest being due or
provide for distribution. How can such a result be upheld by the court?
     Many bond holders expected back interest to be paid as part of any equitable settlement, even a settlement with a capital "haircut". This is not the case for
subordinate COFINA bond holders, who stand now to lose about 44% of their capital and *all* of their back interest.
     The proposed Plan takes unfair advantage of COFINA subs, who were not fully nor fairly represented at the negotiating table.
Again, how can such discrimination be allowed in a court of law?

     I hope you will see the injustice being done the subordinate COFINA holders, and decide on a more inclusive final course for all concerned.

Respectfully Submitted,

Craig Hayes

12/06/2018 11:00 AM
Hide Details

**Puerto Rico Cofina bond settlement**

to: swaindprcorresp

From:

To:      <swaindprcorresp@nysd.uscourts.gov>

**Please respond to**

Dear Judge Swain ; I am writing to you because I feel wronged as to the total lack of honesty on the results coming on the
outcome of the bonds. These bonds were bought with the purpose in mind as to support my income as i have been retired for a
number of years an need this money to live on. To see the billions sitting in the bank and you not releasing the funds ius not
fair and in my opnion not legal.This has been going on for over six interest payments which have been held by you.The whole
situation smells .Between  Puerto Rico lying and their coverups of being total corrupt and we the bond holder being screwed by
them as well as the courts is just terrible and dishonest to the bond holders. I am asling you to please render an honest
verdict so that we can go on with our lives and not be consumed with the every day story of the dishonesty of all the people
involved.   Sincerely ; Julian Roberts

12/06/2018 01:04 PM
Hide Details

**Puerto Rico COFINA Bonds Plan of Adjustment**

Jane Walmsley  to: swaindprcorresp

From:

To: <swaindprcorresp@nysd.uscourts.gov>

Dear Judge Swain,

**Puerto Rico COFINA Bonds Plan of Adjustment**

I am a private US citizen, and holder of the subordinate bonds the future of which you are now determining. I have been following the progress of the proceedings via briefings from my broker. It seems that a settlement may be near - and one likely to discriminate unfairly against private bondholders.

Whether or not Cofina is fully solvent, it does not seem fair or just that I and my cohort of bondholders might end up with a far worse settlement than either senior bond bondholders, or even Puerto Rican holders of the same bonds as us - who, I gather, might have a higher settlement in new bonds in a more marketable form, together with cash. None of these benefits seem likely to be offered to us. In fact, as I understand it, Cofina is solvent and therefore in a position to offer a much higher percentage settlement than that which appears on offer, as well as one more equitable between the interested parties.

In reaching your conclusion, I hope that you will have in mind that in so many instances, the little guy seems to end up with the short straw. I hope that this case will not be another such one.

Yours sincerely,
Jane Walmsley

12/06/2018 11:25 AM
Hide Details

**OBJECTIONS TO THE PROPOSED PLAN of ADJUSTMENT**

**Les Pokrass**   to: swaindprcorresp

From:
To:   swaindprcorresp@nysd.uscourts.gov

Honorable Judge Swain,

My name is Leslie Pokrass and my wife Arlene are individual owners of Subordinate Puerto Rico COFINA Municipal Bonds.

Regarding this proposal we find it totally objectionable. All indications are that Sales Tax revenues have continued to be collected
for the last 3 or so years and are being held in various accounts that total in excess of $12 Billion dollars. All of these
mentioned dollars were held instead of paying the debt service on my bonds as well as other individual owners.

The institutions like hedge funds have been buying and selling these bonds up until recently on speculation of profit. They
only seek the gold at the end of the tunnel. We individuals only seek the income, the tax free status of the bonds, the promise
to pay on a semi annual basis the interest back by the SALES TAX REVENUES collected by Puerto Rico. The revenues of these bonds
was pledged to COFINA by a statutory lien not to used for General Obligation purposes.

There are just so many objectionable adjustments that is the courts responsibility to see that everyone is treated Fair and
Equitably to the individual bondholders to remain equal to the Senior bond holders.

It appears that Puerto Rico's willingness to pay it's debt should be more in question than it's ability to pay it's debt. I
understand that Puerto Rico has proposed to lower taxes, raise the minimum wage for government workers and is paying Christmas
bonuses. Really!!!

As you are aware we the individual owners have little say in this matter but to write to the court.


Leslie Pokrass