EXHIBITS A-B


A-Complaint in State Court

B-Translation of Complaint in State Court

COMPLAINT IN STATE COURT EXIBIT A

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**SALA SUPERIOR DE AGUADILLA**

| | |
|---|---|
| CORPORACIÓN MARCARIBE INVESTMENT; Y VICENTE PÉREZ ACEVEDO<br><br>DEMANDANTES<br><br>V.<br><br>DEPARTAMENTO DE RECURSOS NATURALES Y AMBIENTALES DE PUERTO RICO; JUNTA DE PLANIFICACIÓN DE PUERTO RICO; Y EL ESTADO LIBRE ASOCIADO DE PUERTO RICO; FIRSTBANK PUERTO RICO; PABLO LUIS MELÉNDEZ BONILLA, NYDIA MARÍA NEGRÓN CONTRERAS Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>DEMANDADOS | CIVIL NÚM. AAC2015-0050<br><br><br>SOBRE:<br>EXPROPIACIÓN A LA INVERSA; SENTENCIA DECLARATORIA; DAÑOS Y PERJUICIOS; VIOLACIÓN DE DERECHOS CONSTITUCIONALES; |

**SEGUNDA DEMANDA ENMENDADA**

**AL HONORABLE TRIBUNAL:**

Comparece Corporación Marcaribe Investment y Vicente Pérez Acevedo, a través de su representante legal, que suscribe y muy respetuosamente EXPONEN, ALEGAN y SOLICITAN:

**I. LAS PARTES**

1. La parte co-demandante, Corporación Marcaribe Investment (en adelante "Marcaribe") es una corporación incorporada bajo las leyes del Estado Libre Asociado de Puerto Rico, con capacidad para demandar y ser demandada, cuya dirección es PMB 73, Calle Sierra Morena, San Juan, PR 00926-5583.

2. La parte co-demandante, Vicente Pérez Acevedo, mayor de edad, soltero, propietario y vecino de la ciudad de Weston del estado de Massachusetts de los Estados Unidos de América, con capacidad para demandar y ser demandado, con dirección física y postal en el 306 Merriam St., Weston MA 02493.

3. La parte co-demandada, el Estado Libre Asociado de Puerto Rico (en adelante "ELA") con capacidad para demandar y ser demandado, representado por el Secretario de Justicia de Puerto Rico, cuya dirección física es Calle Olimpo esq. Axtmayer, Pda. 11 Miramar, San Juan, PR 00907 y dirección postal en Apartado 9020192, San Juan, PR 00902-0192.

4. La parte co-demandada, el Departamento de Recursos Naturales y Ambientales de Puerto Rico (en adelante "DRNA") es una entidad ejecutiva del ELA creada por la Ley Núm. 23 del 20 de junio de 1972, según enmendada, con capacidad para demandar y ser demandado, con dirección

física en Carr. 8838, Km. 6.3, Sector El Cinco, Río Piedras, PR 00926 y dirección postal en PO BOX

366147, San Juan, PR 00936.

5. La parte co-demandada, la Junta de Planificación de Puerto Rico (en adelante la "Junta de

Planificación") es una entidad ejecutiva del ELA creada por la ley 75 de 24 de junio de 1975, según

enmendada, con capacidad para demandar y se demandada, cuya dirección física y postal es Centro

Gubernamental Roberto Sánchez Vilella, Apartado 4119, Santurce, PR 00940-1119.

6. La parte co-demandada, Firstbank Puerto Rico (en adelante "Firstbank") es una entidad

bancaria organizada bajo las leyes del ELA con capacidad para demandar y ser demandado, con

dirección física en el 1519 Ponce de León Ave., Parada 23, Santurce P.R. 00908, y dirección postal

en el PO BOX 9146, San Juan, PR 00908.

7. La parte co-demandada, Pablo Luis Meléndez Bonilla, Nydia María Negrón Contreras y la

Sociedad Legal de Gananciales compuesta por ambos (en adelante "Meléndez-Negrón"), con

capacidad para demandar y ser demandado, con dirección física y postal en la Urb. Country Club,

Calle 260 GY-29, Carolina, P.R. 00982.

## II- HECHOS

8. El 24 de junio de 2004 la Administración de Activos de la Extinta C.R.U.V., adscrita al

Departamento de la Vivienda de Puerto Rico (en adelante "Departamento de la Vivienda") sometió

a consideración de la Junta de Planificación la segregación de solar 172-BB, de la Urbanización

Manuel Corchado Juarbe, Isabela, Puerto Rico (en adelante "Solar 172-BB"). La segregación fue

aprobada mediante Resolución de fecha 20 de septiembre de 2004 en el caso 2004-02-0519-JGT.

Según esta Resolución el propósito de la segregación fue para la venta del solar y construcción de

viviendas, y su descripción es la siguiente:

> RUSTICA: Predio de terreno con un área superficial de 8,894.2070
> metros cuadrados, equivalentes a 2.2641 cuerdas, que en el PRHA-78-
> 2-7, Proyecto Manuel Corchado Juarbe, en el barrio Guayabos de
> Isabela, PR. En lindes por el Norte, con Ramón Maldonado; por el
> Sur, con el solar 112, camino dedicado a uso público y solar 172-AA;
> por el Este, con Enrique Cerezo; y por el Oeste, con Ramón
> Maldonado". Segregado de la finca 4126 inscrita al folio 33 del tomo
> 70 de Isabela, Registro de la Propiedad de Aguadilla. Presentada al
> Asiento 151 del Diario 822 el 28 de junio de 2006.

9. El 30 de mayo de 2006 el Sr. Pablo Luis Meléndez Bonilla y la Sra. Nydia María Negrón

Contreras (en adelante ambos conocidos como "Meléndez-Negrón") le compraron al Departamento

de la Vivienda el Solar 172-BB, según consta de la escritura número 4 otorgada en San Juan ante la

notario Raquel Fernández Álvarez. Al momento de firmar la escritura de compraventa la zonificación del Solar 172-BB era Residencial Uno (R-1).

10. El día 21 de febrero de 2007 se radicó consulta de ubicación ante la Junta de Planificación proponiendo la construcción de 80 unidades multifamiliares en el Solar 172-BB junto con otro solar colindante, caso número 2007020090JPU. Al momento de radicar la consulta de ubicación la zonificación del Solar 172-BB era Residencial Uno (R-1).

11. El día 27 de marzo de 2007 Marcaribe le compró el Solar 172-BB a Meléndez-Negrón según la escritura 18 otorgada en San Juan ante el Notario Pablo F. Jiménez Meléndez, junto con todos los derechos de la consulta de ubicación. Al momento de firmar la escritura de compraventa a favor de Marcaribe la zonificación del Solar 172-BB era Residencial Uno (R-1).

12. El día 11 de julio de 2007 el DRNA emitió un comentario en la que solicitaba un estudio de flora y fauna debido a que el solar 172-BB colinda con el Área de Planificación Especial de Isabela (en adelante "APE"). Expresó además que el predio tenía una vegetación arbórea sumamente densa, aún cuando el mismo DRNA seis (6) meses antes autorizó la remoción total de la corteza terrestre mediante permiso número 302-01130012-6350. Al momento de emitir este comentario la zonificación vigente tanto del Solar 172-BB como de sus colindantes era Residencial Uno (R-1).

13. El 12 de julio de 2007, el Municipio de Isabela junto al DRNA y demás agencias gubernamentales celebraron vistas públicas sobre el propuesto Plan de Ordenamiento Territorial del Municipio de Isabela. De los mapas propuestos y demás documentos, se propuso zonificar el Solar 172-BB como Residencial Intermedio (R-I) y Suelo Urbano (SU).

14. El 18 de septiembre de 2008, DRNA emitió otro comentario pero esta vez indicando que parte del Solar 172-BB se encontraba dentro de los límites del APE, y en un Distrito de Zonificación de Conservación de Recursos Uno1 (CR-1), provocando que el proyecto no fuera viable debido a que este tipo de zonificación solo permitía la ubicación de facilidades recreativas o públicas en el terreno, por lo tanto, no se pudo terminar la consulta de ubicación de la forma propuesta. Al momento de emitir este comentario la zonificación vigente del Solar 172-BB era Residencial Uno (R-1).

15. El día 29 de noviembre de 2010 se aprobó el Reglamento Conjunto de la Junta de Planificación convirtiendo la zonificación del Solar 172-BB a Residencial Intermedio (R-I), lo que

---

[1] Codificación del distrito de zonificación según el Reglamento Núm. 4 vigente para el 2008

representaba una mejora en la zonificación para la construcción de vivienda, por lo que se comenzó a preparar un nuevo diseño de 33 unidades de vivienda.

16. El 18 de enero de 2011 el DRNA envió una notificación en la que recomendaba proteger toda el área del Solar 172-BB por las siguientes razones:

> "Además, al revisar el expediente en conjunto a la información actualizada en el banco de datos del DRNA nos percatamos que el predio confronta limitaciones al desarrollo debido a su ubicación dentro de los límites del Área de Prioridad de Conservación Bajura según la División de Patrimonio Natural. Asimismo, el predio objeto de desarrollo ubica en la Zona Cársica de Puerto Rico y más especialmente dentro de las áreas seleccionadas para conservación en el Estudio del Carso efectuado por el DRNA en conformidad a las disposiciones de la Ley Núm. 292 de 21 de agosto de 1999 (Ley Para la Protección y Conservación de la Fisiografía Cársica de Puerto Rico). Esta ley destaca la importancia de la zona cársica para recargar los acuíferos del área norte de la Isla. Además, reconoce la importancia de la formación vegetativa de esta zona, constituida por una gran cantidad de especies de plantas nativas cuya distribución es única de esta formación geológica y que son de suma importancia para la vida silvestre. De hecho, el Tribunal de Primera Instancia dictó sentencia para el Caso Civil K PE2002-2448 (907) el 30 de enero de 2009 y en la misma ordena a la Junta de Planificación (JP) a incorporar las recomendaciones del Estudio del Carso preparado por el DRNA a sus reglamentos de zonificación."

17. El 4 de mayo de 2012 Marcaribe fue disuelta mediante sentencia en el caso civil núm. KAC2010-1317 seguido en el Tribunal de Primera Instancia de San Juan. Los accionistas de Marcaribe son el co-demandante, Vicente Pérez Acevedo con un 50%; y Meléndez-Negrón con el otro 50%.

18. El 10 de octubre de 2012 el co-demandante Vicente Pérez Acevedo radicó quiebra bajo el capítulo 13 en la corte de quiebra del estado de Massachusetts en el caso civil núm. 12-18240. Como parte de los activos del quebrado se incluyó su interés en Marcaribe.

19. El 4 de julio de 2014, la Junta de Planificación acogió la recomendaciones del DRNA y clasificó el Solar 172-BB  como Conservación de Recursos (CR)  y Distrito Superpuesto Área Especial – Restringida del Carso (APE-RC), privando a Marcaribe de todo uso efectivo de la propiedad, y además aprobó el Plan de Manejo y Reglamentación del Área de Planificación Especial del Carso (en adelante conocido como "PRAPEC").

20. El día 5 de abril de 2015 Vicente Pérez Acevedo radicó ante la corte de quiebra moción solicitando autorización para radicar demanda sobre expropiación a la inversa y utilizar los fondos del quebrado para financiar la demanda de expropiación a la inversa. En dicha moción se le informó al Tribunal de Quiebras que de los fondos obtenidos de la demanda se pagarían todas las obligaciones de Marcaribe, incluyendo la deuda con Firstbank, y de esta forma culminar el proceso

4

de liquidación de la corporación y distribución de las ganancias a los accionistas. Tanto Firstbank como Meléndez-Negrón no se opusieron a la solicitud de radicar la demanda, ni tampoco solicitaron ser incluidos en la demanda como parte con interés, por lo que el Tribunal de Quiebra concedió el pedido para radicar la demanda de expropiación a la inversa.

21. El 4 de mayo de 2015 Marcaribe con la autorización de la Corte de Quiebra se radicó la demanda de epígrafe solicitando la justa compensación en contra del Estado por la incautación por reglamentación del solar 172-BB propiedad de Marcaribe.

22. El 5 de noviembre de 2015 este Honorable Tribunal concedió quince días para incluir en la demanda como parte con interés a las siguientes partes:

  a. Vicente Pérez Acevedo

  b. Firstbank

  c. Meléndez-Negrón

### III- CAUSAS DE ACCIÓN

#### A- Expropiación a la Inversa

23. En el momento que se segregó el Solar 172-BB o durante los trámites de la consulta de ubicación, tanto el DRNA o la Junta de Planificación tenían el deber ministerial de informar a Marcaribe las propuestas restricciones del Carso y de la demanda incoada en su contra, pero solo se limitaron a informar que la propiedad se encontraba colindante y/o dentro de un área de planificación especial de conservación sin que existieran en ese momento al alcance del público las guías y reglamentaciones de las propuestas restricciones

24. El DRNA al amparo de la Ley Núm. 292 le dio la facultad para proteger, conservar y manejar los terrenos que ubican en el área fisiográfica cársica de Puerto Rico y determinar que terrenos debían ser conservados como Patrimonio Natural.

25. Al momento de radicar la consulta de ubicación y hasta el 4 de julio de 2014 la zonificación vigente para todos los efectos legales del Solar 172-BB era residencial (R-1 o R-I), lo que resulta contrario a lo expresado por el DRNA en sus notificaciones que proponía conservarlo como Patrimonio Natural de Estado. Dichas notificaciones de la DRNA también resultan contrarias al propósito por el cual el Departamento de la Vivienda segregó el inmueble.

26. La implantación de la PRAPEC es totalmente incompatible a la zonificación residencial que gozó el Solar 172-BB por casi diez (10) años, lo que constituye una incautación total de la propiedad al declarar el área total de la propiedad como Patrimonio Natural del Estado.

27. La acción de expropiación a la inversa se ha instituido para aquellos casos de ocupación física, incautación de un derecho real o restricciones por reglamentación a la propiedad hechas por el Estado sin haberse presentado una acción de expropiación.

28. Cuando el Estado implanta restricciones totalmente confiscatorias sobre la totalidad de una propiedad privada para uso público viene obligado a indemnizar al propietario que fue privado de todo uso efectivo y económico de su propiedad. Art. II, Sec. 9, Const. E.L.A. L.P.R.A., Tomo 1; Enmiendas V y XIV de la Constitución de los Estados Unidos.

29. Para el 11 de julio de 2007, fecha en la cual por primera vez el DRNA indico que el Solar 172-BB estaba protegido, su valorización era de $850,000.00, y al momento de la implantación de la PRAPEC, o sea al 4 de julio de 2014 estaba valorado en $395,000.00.

30. Las actuaciones del DRNA y la Junta de Planificación desde el 2007 hasta la implantación de la reglamentación del caso fue una incautación temporera por reglamentación que privó a los demandantes de todo uso productivo y económico de la propiedad, por lo que procede la indemnización en contra del Estado y/o Demandados, por la devaluación del Solar 172-BB, la cual se estima en una suma no menor en $455,000.00. Esta suma seria la justa compensación requerida por ley por la incautación temporera por reglamentación.

31. Debido a la incautación total del Solar 172-BB por reglamentación protectora al declararlo Patrimonio Natural del Estado, procede la acción de expropiación a la inversa instada por Marcaribe para ser indemnizada por la suma de $395,000.00, que representa la justa compensación requerida por ley por la incautación total de la propiedad y es el valor de la propiedad al momento de la implantación de la PRAPEC.

32. La parte demandante tiene derecho a intereses por el tiempo de la incautación temporera y también por la incautación total. Los intereses por la incautación temporera serian por el tiempo desde el 11 de julio de 2007 hasta el 4 de julio de 2014 y los intereses por incautación total por el periodo de tiempo entre el 4 de julio de 2014 hasta el pago de la justa compensación. Los intereses serán aplicados a la justa compensación que declare el tribunal para la incautación temporera y para la incautación total. Los intereses forman parte de la justa compensación requerida por ley por la incautación.

**B- Daños y Perjuicios**

33. En el momento que se segregó el Solar 172-BB o durante los trámites de la consulta de ubicación, tanto el DRNA o la Junta de Planificación tenían el deber ministerial de informar a Marcaribe las propuestas restricciones del Carso y de la demanda incoada en su contra, pero solo se

6

limitaron a informar que la propiedad se encontraba colindante y/o dentro de un área de planificación especial de conservación sin que existieran en ese momento al alcance del público las guías y reglamentaciones de las propuestas restricciones. No fue hasta la notificación de 11 de enero de 2011 que Marcaribe se enteró que las restricciones indicadas por el DRNA se relacionaban a la ley 292 del carso, provocando que la corporación comprara una propiedad que de saber sus posibles restricciones no hubiera comprado.

34. El Estado y/o los Demandados a través sus entidades gubernamentales debió poner a la disposición a Marcaribe y el público en general las guías y reglamentos propuestos tanto de la APE y la PREPAC, antes de requerirle atemperar su diseño residencial a las reglamentaciones propuestas.

35. Al momento de la radicación de la consulta de ubicación o mientras duró el proceso de la consulta, tanto el DRNA como la Junta de Planificación tenían el deber ministerial de informar a Marcaribe del pleito judicial sobre las regulaciones restrictivas del carso, sobre todo cuando se proponía declarar al Solar 172-BB Patrimonio Natural del Estado, pero no se informó hasta el 18 de enero de 2011; momento en cual ya la corporación había comprado una propiedad que no hubiera comprado de tener la información disponible.

36. Al momento de radicar la consulta de ubicación y hasta el 4 de julio de 2014 la zonificación vigente para todos los efectos legales del Solar 172-BB era residencial (R-1 o R-I), lo que resulta contrario a lo expresado por el DRNA en sus notificaciones que proponía conservarlo como Patrimonio Natural de Estado. Dichas notificaciones de la DRNA también resultan contrarias al propósito por el cual el Departamento de la Vivienda segregó y vendió el inmueble.

37. Según se expresó en la Orden Ejecutiva que aprueba la PRAPEC, las vistas públicas para evaluar las nuevas regulaciones se celebraron el 25 y 26 de septiembre de 2013 y 1ro.de octubre de 2013, por lo tanto, Marcaribe tuvo acceso a la PRAPEC pasado seis (6) años de habérseles requerido atemperar su proyecto a estas restricciones, lo que provocó que la consulta de ubicación no fuera terminada al no tener a su alcance los parámetros de diseño, y frustró todo uso efectivo y económico de su propiedad.

38. Que las acciones del Estado y/o Demandados al no divulgar toda la información de la APE, la PRAPEC y de la demanda en contra de DRNA y la Junta de Planificación, causaron que Marcaribe no pudiera desarrollar la propiedad ni realizar gestión alguna con ella. Estas actuaciones ilícitas en conjunto con las anteriormente descritas han causado daños en angustias mentales, y han provocaron la bancarrota de uno de los accionistas de Marcaribe, el co-demandante Vicente Pérez

7

Acevedo, frustrando además todo tipo de actividad económica relacionada a la propiedad; estos daños se estiman en una suma no menor de $150,000.00.

### C- Sentencia Declaratoria

39. Por todo lo antes expuesto, Marcaribe tiene el derecho además a que el Tribunal emita una Sentencia Declaratoria determinando que las actuaciones del Estado y/o Demandados son inconstitucionales e ilegales que resultaron en una privación de todo uso efectivo y económico de su propiedad sin brindarle la justa compensación.

**POR TODO LO CUAL**, se solicita de este Honorable Tribunal declare Ha Lugar la presente demanda en todos sus extremos y conceda los siguientes remedios:

a. ordene al Estado y/o Demandados al pago de $150,000.00 por concepto de daños por las actuaciones negligentes e ilícitas de la parte demandada,

b. ordene al Estado y/o Demandados al pago de la justa compensación requerida por ley por la incautación temporera por reglamentación sobre el Solar 172-BB; lo cual serian $455,000.00 por la devaluación del Solar 172-BB,

c. ordene al Estado y/o Demandados al pago de la justa compensación requerida por ley por la incautación total por reglamentación sobre el Solar 172-BB; lo cual serian $395,000.00 que representa el valor por tasación del Solar 172-BB al momento de la incautación total por la reglamentación de la PRAPEC,

d. ordene al Estado y/o Demandados al pago de intereses sobre la cantidad concedida en concepto de justa compensación por ambas la incautación temporera y permanente del Solar 172-BB por el tiempo señalado anteriormente en esta demanda,

e. emita Sentencia Declaratoria determinando que las actuaciones del Estado y/o Demandados son inconstitucionales e ilegales que iban dirigidas a privar a Marcaribe de todo uso efectivo y económico de su propiedad sin brindarle la justa compensación, y

f. con cualquier pronunciamiento que en derecho proceda.

## CERTIFICACIÓN DE NOTIFICACIÓN

Certifico haber enviado copia fiel y exacta de esta Moción por correo ordinario a la Lcda. Yamilza M. Vázquez Cuevas, Departamento de Justicia, Secretaría Auxiliar de lo Civil, Apartado 179, Mayagüez, PR 00681; (2) Departamento de Recursos Naturales y Ambientales de Puerto Rico, PO

BOX 366147, San Juan, PR 00936; y (3) Junta de Planificación de Puerto Rico; Centro Gubernamental Roberto Sánchez Vilella, Apartado 4119, Santurce, PR 00940-1119.

**RESPETUOSAMENTE SOMETIDA**

En Cabo Rojo, Puerto Rico, a 23 de noviembre de 2015.

_____
**LCDO. CARLOS L. SEGARRA MATOS**
RUA 15,441
P.O. BOX 582
BOQUERÓN, PUERTO RICO 00622
CLSEGARRA@YAHOO.COM
TEL./ FAX: 787. 851.3582

9

TRANSLATION OF COMPLAINT EXHIBIT B

**COMMONWEALTH OF PUERTO RICO**
**FIRST INSTANCE COURT**
**SUPERIOR COURT OF AGUADILLA**

| | |
|---|---|
| CORPORACIÓN MARCARIBE INVESTMENT; AND VICENTE PÉREZ ACEVEDO<br>PLAINTIFFS<br><br>V.<br>DEPARTMENT OF NATURAL AND ENVIRONMENTAL RESOURCES OF PUERTO RICO; BOARD OF PLANNING OF PUERTO RICO; AND THE ASSOCIATED FREE STATE OF PUERTO RICO; FIRSTBANK PUERTO RICO; PABLO LUIS MELÉNDEZ BONILLA, NYDIA MARÍA NEGRÓN CONTRERAS AND THE LEGAL SOCIETY OF PROFITS COMPOSED BY BOTH; CENTER OF MUNICIPAL REVENUES AND INCOME<br>DEFENDANTS | CIVIL NO.: AAC2015-0050<br><br><br>INVERSE CONDEMNATION; DECLARATORY SENTENCE; DAMAGES; VIOLATION OF CONSTITUTIONAL RIGHTS |

**SECOND AMENDED COMPLIANT**

**O THE HONORABLE COURT**:

NOW COMES, Corporación Marcaribe Investment and Vicente Pérez Acevedo, through their legal representative, who subscribes and very respectfully **EXPOSE, ALLEGED** and **REQUEST**:

**I. THE PARTIES**

1. The co-plaintiff, Marcaribe Investment Corporation (hereinafter "Marcaribe") is a corporation incorporated under the laws of the Commonwealth of Puerto Rico, with capacity to sue and be sued, whose address is PMB 73, Calle Sierra Morena , San Juan, PR 00926-5583.

2. The co-plaintiff, Vicente Pérez Acevedo, of legal age, single, owner and neighbor of the city of Weston of the State of Massachusetts of the United States of America, with capacity to sue and be sued, with physical and postal address at 306 Merriam St., Weston MA 02493.

3. The co-defendant, the Commonwealth of Puerto Rico (hereinafter "ELA") with capacity to sue and be sued, represented by the Secretary of Justice of Puerto Rico, whose physical address is Calle Olimpo esq. Axtmayer, Pda. 11 Miramar, San Juan, PR 00907 and postal address in Apartado 9020192, San Juan, PR 00902-0192.

4. The co-defendant, the Department of Natural and Environmental Resources of Puerto Rico (hereinafter "DRNA") is an executive entity of the Commonwealth of Puerto Rico created by Act No. 23 of June 20, 1972, as amended, with capacity to sue and be sued, with physical address in Carr. 8838, Km. 6.3, Sector El Cinco, Río Piedras, PR 00926 and postal address in PO BOX 366147, San Juan, PR 00936.

5. The co-defendant party, the Puerto Rico Planning Board (hereinafter the "Planning Board") is an executive entity of the Commonwealth of Puerto Rico created by Act 75 of June 24, 1975, as amended, with capacity to sue and sued, whose physical and postal address is Roberto Sánchez Vilella Government Center, Apartado 4119, Santurce, PR 00940-1119.

6. The co-defendant, Firstbank Puerto Rico (hereinafter "Firstbank") is a bank entity organized under the laws of the Commonwealth of Puerto Ricowith the capacity to sue and be sued, with physical address at 1519 Ponce de León Ave., Stop 23 , Santurce PR 00908, and postal address at PO BOX 9146, San Juan, PR 00908.

7. The co-defendant, Pablo Luis Meléndez Bonilla, Nydia María Negrón Contreras and the Conjugal Community Partnership composed by them (hereinafter "Meléndez-Negrón"), with capacity to sue and be sued, with physical and postal address in the Urb. Country Club, 260 GY-29 Street, Carolina, PR 00982.

## II- FACTS

8. On June 24, 2004, the Office of Liquidation of the assets of the Extinct Urban Renewal and Housing Corporation (CRUV), attached to the Department of Housing of Puerto Rico (hereinafter "Department of Housing"), submitted for consideration by the Planning Board the segregation of Lot 172-BB, of Manuel Corchado Juarbe Urbanization, Isabela, Puerto Rico (hereinafter "Lot 172-BB"). The segregation was approved by Resolution of September 20, 2004 in  case 2004-02-0519-JGT. According to this Resolution, the purpose of the segregation was for the sale of the lot and housing construction, and its description is as follows:

> RUSTIC: Land plot with a surface area of 8,894,2070 square meters, equivalent to 2.2641 cuerdas, than in the PRHA-78-2-7, Manuel Corchado Juarbe Project, in the Guayabos neighborhood of Isabela, PR. In boundaries by the North, with Ramón Maldonado; by the South, with the solar 112, road dedicated to public use and solar 172-AA; for the East, with Enrique Cerezo; and in the West, with Ramón Maldonado. "Segregated from property 4126 inscribed in Page 33 of Volume 70 of Isabela, Registry of Deeds of Aguadilla. Filed at Entry 151 of Journal 822 on June 28, 2006.

9. On May 30, 2006, Mr. Pablo Luis Meléndez Bonilla and Mrs. Nydia María Negrón Contreras (hereinafter both known as "Meléndez-Negrón") purchased Lot 172-BB from the Department of Housing, according to Deed No. 4 executed in San Juan before Notary Raquel Fernández Álvarez. When signing the deed of sale the zoning of the Lot 172-BB was Residential One (R-1).

10. On February 21, 2007, a proposed development was filed at the Planning Board, proposing the construction of 80 multifamily units on Lot 172-BB together with another adjacent Lot, case no. 2007-02-0090-JPU. At the moment the proposed development was filed, the zoning of the Solar 172-BB was Residential One (R-1).

11. On March 27, 2007 Marcaribe bought the Lot 172-BB from Meléndez-Negrón according to the deed 18 executed in San Juan before the Notary Pablo F. Jiménez Meléndez,

together with all the rights of proposed development. At the time of signing the Purchase and Sale deed in favor of Marcaribe, the zoning of the Solar 172-BB was Residential One (R-1).

12. On July 11, 2007 the DRNA issued a comment requesting a flora and fauna research because Lot 172-BB is adjacent to the Special Planning Area of Isabela (hereinafter "APE"). It also stated that the site had extremely dense arboreal vegetation, even though the same DRNA six (6) months ago authorized the total removal of the earth's crust by means of permit number 302-01130012-6350. At the time of issuing this comment, the current zoning of Lot 172-BB and adjacent Lot was Residential One (R-1).

13. On July 12, 2007, the Municipality of Isabela together with the DRNA and other government agencies held public hearings on the proposed Territorial Ordinance Plan for the Municipality of Isabela. From the proposed maps and other documents, it was proposed to zoning the Solar 172-BB as Intermediate Residential (R-I) and Urban Land (SU).

14. On September 18, 2008, DRNA issued another commentary but this time indicating that part of Lot 172-BB was within the boundaries of the APE, and in a Conservation Resource One Zoning District (CR-1), causing that the project was not viable because this type of zoning only allowed the location of recreational or public facilities in the field, therefore, the location assessment could not be completed per the proposed proposal. At the time of the issuing of this commentary, the current zoning of the Solar 172-BB was Residential One (R-1).

15. On November 29, 2010, the Joint Regulation of the Planning Board was approved, converting the zoning of  Solar 172-BB to Intermediate Residential (R-I), which represented an improvement in zoning for housing construction, so that a new design for the 33 housing units started all preparations.

16. On January 18, 2011 the DRNA sent a notification recommending to protect the entire area of Lot 172-BB for the following reasons:

> "In addition, when reviewing the file together with the updated information in the DNER data bank we noticed that the property faces limitations due to its location within the limits of the Priority Area of Conservation Lowland according to the Natural Heritage Division. Likewise, the property subject to development is located in the Cársica Zone of Puerto Rico and more especially within the areas selected for conservation in the Carso Study carried out by the DNER in accordance with the provisions of Act No. 292 of August 21, 1999 (Law for the Protection and Conservation of the Cársica Physiography of Puerto Rico). This law highlights the importance of the karst area to recharge the aquifers of the northern area of the island. It also recognizes the importance of the vegetative formation of this area, constituted by a large number of native plant species whose distribution is unique to this formation geological and that are of utmost importance to wildlife. In fact, the Court of First Instance issued judgment for Civil Case K PE2002-2448 (907) on January 30, 2009 and in the same order to the Planning Board (JP) to incorporate the recommendations of the Carso Study prepared by the DNER to its zoning regulations. "

17. On May 4, 2012, Marcaribe was dissolved by judgment in civil case no. KAC2010-1317 followed in the Court of First Instance of San Juan. The shareholders of Marcaribe are the co-plaintiff, Vicente Pérez Acevedo with 50%; and Meléndez-Negrón with the other 50%.

18. On October 10, 2012, co-plaintiff Vicente Pérez Acevedo filed for bankruptcy under chapter 13 in State of Massachusetts, case no. 12-18240. Marcaribe's interest was included as part of the bankruptcy estate.

19. On July 4, 2014, the Planning Board accepted the recommendations of the DRNA classified Lot 172-BB as Conservation Resource (CR) and Superposed Special Area - Carso Restricted District (APE-RC), depriving Marcaribe of all effective use of the property, and also approved the Management and Regulation Plan of the Special Planning Area of Carso (hereinafter known as "PRAPEC").

20. On April 5, 2015, Vicente Pérez Acevedo filed a motion in the bankruptcy case requesting authorization to file an inverse condemnation complaint and use the funds of the bankrupt to finance the inverse condemnation complaint. In this motion, the Bankruptcy Court was informed that all Marcaribe's obligations, including the debt with Firstbank, would be paid from the funds obtained from the complaint and thus complete the liquidating process of the corporation and distribute the profits to the shareholders. Both Firstbank and Meléndez-Negrón did not oppose the request to file the complaint, nor did they request to be included in the civil action as an interested party, hence the Bankruptcy Court granted the request to file the inverse condemnation complaint.

21. On May 4, 2015, Marcaribe, with the authorization of the Bankruptcy Court, the inverse condemnation complaint was filed requesting the fair compensation from the State for the seizure by regulation of Lot 172-BB owned by Marcaribe.

22. On November 5, 2015, this Honorable Court granted fifteen days to include in the complaint as interest parties the following persons:

    a. Vicente Pérez Acevedo

    b. Firstbank

    c. Meléndez-Negrón

### III- CAUSES OF ACTION

**A- Inverse Condemnation**

23. At the time Lot 172-BB was segregated or during the permit's procedures, both DRNA and the Planning Board had the ministerial duty to inform Marcaribe of the proposed Carso restrictions, and the lawsuit filed in against them, but the information gave was only limited to inform that the property was adjacent and/or within the plan special conservation area

without existing at that time available to the public the guidelines and regulations of the proposed restrictions.

24. DRNA under Act No. 292 had the power to protect, conserve and manage the lands that they locate in the Carstic physiographic area of Puerto Rico and determine which lands should be conserved as Natural Heritage.

25. At the moment the proposed development was filed and until July 4, 2014, the current zoning for all legal purposes of Lot 172-BB was residential (R-1 or RI), which is contrary to what was expressed by DRNA in its notifications that proposed conserve it as a Natural Heritage of State. DNRA's notifications are also contrary to the purpose for which the Department of Housing segregated the property.

26. The implementation of PRAPEC is totally incompatible with the residential zoning enjoyed by Lot 172-BB for almost ten (10) years, which constitutes a total seizure of the property when declaring the total area of the property as a Natural Heritage of the State.

27. The action of inverse condemnation has been instituted for those cases of physical occupation, seizure of a real right or restrictions by property regulation made by the State without an action of eminent domain being filed.

28. When the State imposes totally confiscatory restrictions on the totality of private property for public use, it is obliged to compensate the owner who was deprived of any effective and economic use of his property. V and XIV Amendments of the Constitution of the United States; Art. II, Sec. 9 of the Constitution of the Commonwealth of Puerto Rico.

29. On July 11, 2007, the date on which the DRNA indicated for the first time that Lot 172-BB was protected, its valuation was $ 850,000.00, and at the time of the implementation of the PRAPEC, that is, at 4 July 2014 was valued at $ 395,000.00.

30. The actions of the DRNA and the Planning Board from 2007 until the implementation of the Carst regulation was a temporary seizure by regulation that deprived the plaintiffs of all productive and economic use of the property, so a compensation it is require from the State and/or Defendants, for the devaluation of Lot 172-BB, which is estimated at a sum not less than $ 455,000.00. This amount would be the fair compensation required by law for temporary seizure by regulations.

31. Due to the total seizure of the Solar 172-BB by protective regulations when declaring it a Natural Patrimony of the State, the inverse condemnation action is proper to indemnify Marcaribe in the amount of $ 395,000.00, which represents the fair compensation required by law for the total seizure of the property and is the value of the property at the time of the implementation of PRAPEC.

32. The plaintiffs are entitled to recover interest for the time of the temporary seizure and also for the total seizure. The interest for the temporary seizure would be from July 11, 2007 to July 4, 2014 and the interest for total seizure for the period of time between July 4, 2014 until the payment of the fair compensation. The interest will be applied to the fair compensation declared by the court for the temporary seizure and for the total seizure. The interests are part of the fair compensation required by law for the seizure.

**B- Damages**

33. At the time Lot 172-BB was segregated or during the permit's procedures, both DRNA and the Planning Board had the ministerial duty to inform Marcaribe of the proposed Carso restrictions, and the lawsuit filed in against them, but the information gave was only limited to inform that the property was adjacent and/or within the plan special conservation area without existing at that time available to the public the guidelines and regulations of the

proposed restrictions. It was not until the notification of January 11, 2011 that Marcaribe learned

that the restrictions indicated by the DRNA were related to law 292 of the Carso, causing the

corporation to purchase a property that if the possible restrictions had been known, it would not

have been acquired.

34. The State and/or the Defendants through their governmental entities should have

made available to Marcaribe and the general public the proposed guidelines and regulations of

APE and PREPAC, before requiring to adjust the residential design to the proposed regulations.

35. At the time of the permit proceeding or during the consultation process, DRNA and

the Planning Board had a ministerial duty to inform Marcaribe of the complaint regarding the

restrictive Carso regulations, especially when it proposed to declare Lot 172-BB Natural

Heritage of the State, but it was not informed until January 18, 2011; At that time, the

corporation had already purchased a property that if the information has been available it would

not have been acquired.

36. At the moment of the permits proceedings and until July 4, 2014, the current zoning

for all legal purposes of Lot 172-BB was residential (R-1 or RI), which is contrary to what was

expressed by the DRNA in its notifications that proposed to conserve it as a Natural Heritage of

State. Such DRNA notifications are also contrary to the purpose for which the Department of

Housing segregated and sold the property.

37. As stated in the Executive Order that approved PRAPEC, public hearings to evaluate

the new regulations were held on September 25 and 26, 2013 and October 1, 2013, therefore,

Marcaribe had access to PRAPEC after six (6) years of being required to temper the

development to these restrictions, which caused that the permits proceedings were not completed

due that the design parameters were not available, frustrating all productive and economic use of the property.

38. That the actions of the State and/or Defendants by not disclosing all the information about APE, PRAPEC and the lawsuit against DRNA and the Planning Board, caused Marcaribe could not develop the property or conduct transaction with it. These illicit actions together with those described above have caused mental distress, and have led to the bankruptcy to one of Marcaribe's shareholders, co-plaintiff Vicente Pérez Acevedo, also frustrating all types of economic activity related to property; these damages are estimated at a sum not less than $150,000.00.

**C- Declaratory Sentence**

39. For all of the above, Marcaribe has the right from the Court to issue issuing Declaratory Judgment declaring that the actions of the State and/or Defendants are unconstitutional and illegal, resulting in a deprivation of all effective and economic use of the property without just compensation.

WHEREFORE, it is requested of this Honorable Court to declare the present petition in all its extremes and grant the following remedies:

    a.  order the State and /or Defendants to pay $150,000.00 in damages for the negligent and unlawful actions of the defendants,

    b.  order the State and/or Defendants to pay just compensation required by law for the temporary seizure by regulation of Lot 172-BB; which would be $455,000.00 for the devaluation of Lot 172-BB,

    c.  order the State and/or Defendants to pay just compensation required by law for the total seizure by regulation of Lot 172-BB; which would be

$395,000.00 representing the appraisal value of Lot 172-BB at the time of the

total seizure by the PRAPEC regulations,

d.   order the State and /or Defendants to pay interest on the amount awarded as

just compensation for the temporary and permanent seizure of the Solar 172-

BB for the time indicated above in this application,

e.   issue a declaratory judgment determining that the actions of the State and /or

Defendants are unconstitutional and illegal, which were aimed at depriving

Marcaribe of all effective and economic use of its property without providing

just compensation; and

f.   with any other relief as the Court deems just and proper.

## CERTIFICATION OF SERVICE

I certify that I have sent a true and exact copy of this Motion by ordinary mail to the Lcda. Yamilza M. Vázquez Cuevas, Department of Justice, Auxiliary Secretariat for Civil Matters, Section 179, Mayagüez, PR 00681; (2) Department of Natural and Environmental Resources of Puerto Rico, PO BOX 366147, San Juan, PR 00936; and (3) Puerto Rico Planning Board; Government Center Roberto Sánchez Vilella, Apartado 4119, Santurce, PR 00940-1119.

**RESPECTFULLY SUBMITTED**

In Aguadilla, Puerto Rico, November 20, 2015.


_____ _____ _____
LCDO. CARLOS L. SEGARRA MATOS
RUA 15,441
P.O. BOX 582
BOQUERÓN, PUERTO RICO 00622
CLSEGARRA@YAHOO.COM
TEL./ FAX: 787. 851.3582