UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

### DECLARATION OF PAUL KONSIG IN SUPPORT OF OBJECTION OF THE GMS GROUP, LLC TO TITLE III PLAN OF ADJUSTMENT OF PUERTO RICO SALES TAX FINANCING CORPORATION

PAUL KONSIG, of full age, says:

1. I am the Chief Executive Officer and Chairman of the Board of The GMS Group, LLC ("GMS").

2. GMS is the holder of in excess $500 million Subordinated COFINA bonds (the "GMS Bonds") in approximately 5,000 retail client accounts, including approximately $40 million in GMS proprietary accounts (the "Proprietary Bonds"). The bonds are held at Perishing LLC, a subsidiary of Bank of New York Mellon ("BNYM"), the indenture trustee under the bonds.

142489574.4

3.      I submit this declaration in support of the objection of GMS to the Title III Plan of Adjustment Of Puerto Rico Sales Tax Financing Corporation (the "Plan") (dkt. no. 4392).I am familiar with the facts relating to the Bonds and the Plan based upon my personal knowledge or review of GMS business records relating to this loan that are relevant to this declaration.

4.      GMS is a business.  I am personally familiar with the asset management practices and procedures of GMS with regard to holding of bonds in retail client and proprietary accounts. GMS holds such accounts in the regular course of its business and makes, in the regular course of its business, records of the acts, transactions, custody of documents, events and occurrences regarding and pertaining to the accounts it holds.  In addition, GMS in holding these assets in the regular course of its business utilizes records prepared by other agents of GMS (the "Agents"). Records of such acts, transactions, custody of documents, events and occurrences are made in the regular course of the business of GMS and the other Agents, and it is the regular course of business of GMS and the Agents to make these records at the time of the acts, transactions, events and occurrences or within a reasonably prompt time thereafter.

5.      Attached hereto as Exhibit A is a true and correct copy of a set of ratings statements from established ratings agencies giving the Bonds an investment grade rating of "A+", second only to Senior COFINA bonds which were slightly higher rated by one notch "AA-".

6.      Attached hereto as Exhibit B is a true and correct copy of Bloomberg screen shots in 2010 and 2018 showing prices for senior and subordinate bonds, indicating long term subordinate COFINA bonds market value then equivalent to around 1 to 2 points or 1 to 2% less than a similar Senior bonds market value.

7.      Attached hereto as Exhibit C is a true and correct copy of Statement Of Undisputed Material Facts In Further Support Of The Motion For Summary Judgment By The COFINA Agent

- 2 -

142489574.4

filed in the adversary proceeding bearing docket no. 17-257-LTS (the "SUF"). GMS respectfully requests that the Court take judicial notice of the SUF, the supporting declaration of Antonio Yanez, Jr. dated February 21, 2018 ("Yanez Decl.") and the exhibits attached to the Yanez Decl. (the "Exhibits"), and GMS adopts the SUF, the Yanez Decl. and the Exhibits in support of the objection to the Plan that GMS is filing. The SUF, the Yanez Decl. and the Exhibits contain citations to sections detailing the Statutory Lien, the transfer of the sales tax revenues to COFINA and the lack of right of the Commonwealth to resort to these revenues.

8. Paragraph 11 of the SUF and the Exhibits referenced therein set forth citations to statutes of the Commonwealth enacted in 2009 and 2015 wherein the Legislative Assembly reiterated in 2009 that the Pledged Sales Tax shall not "be available for use by the Secretary of Treasury of the Commonwealth" and in 2015 reaffirmed that the Pledged Sales Tax "shall not be deposited in the Treasury of Puerto Rico, nor shall these constitute resources available to the Commonwealth of Puerto Rico, nor shall these be available for use by the Secretary of Treasury of the Commonwealth of Puerto Rico."

9. Paragraph 14 of the SUF cites to a list of exhibits containing what COFINA has asserted are true and correct copies of a set of statements over the last ten years by the Government of the Commonwealth of Puerto Rico declaring that payment on COFINA bonds is secured by the lien created under P.R. Laws Ann. tit. 13, §§ 11 to 16 (the "Statutory Lien").

10. Paragraph 21 of the SUF contains a set of representations from the Commonwealth investors in GO Bonds that the proceeds from the sales tax revenues that are subject to the Statutory Lien were not available to service general obligation debt.

11. Paragraph 25 of the SUF contains a set of statements in showing how the Statutory Lien permitted the issuance of lower interest rate bonds that allowed the Commonwealth to save

142489574.4

between $1.1 billion to $2.2 billion in interest costs on the over $16 billion of COFINA, which included almost $10 billion Junior COFINA bonds.

12. Attached hereto as Exhibit D is a true and correct copy of the cover sheet of the Official Offering Statements for General Obligation (GO) 2014 bonds.

13. Attached hereto as Exhibit E is a true and correct copy of a letter from Gerardo Portela-Franco of the Puerto Rico Fiscal Agency and Financial Advisory Authority admitting that audited financial statements for the Commonwealth of Puerto Rico (the "Commonwealth") for fiscal year 2015 are the last ones that have been prepared (and promising the 2016 ones by August 27, 2018, a deadline not met). To my knowledge, the Commonwealth has not issued any audited financials since then.

14. Attached hereto as Exhibit F is a true and correct copy of an editorial in *Money Consult* dated November 20, 2018 from Financial Oversight Board member Arthur Gonzales.

15. Attached hereto as Exhibit G is a true and correct copy of a financial report prepared by the Oversight Board and dated October 23, 2018 showing the following:

- One year after Hurricane Maria, record high general fund revenues of $833 million were collected in September 2019;
- The main driver is increased corporate income tax collections;
- Puerto Rico's economy is expected to grow 7.8% in the current fiscal year, 5.5% in 2020, 2.9% in 2021 and 2.5% in 2022;
- $20 billion in federal funds have been granted to the Commonwealth for its economic growth
- General fund revenues $2.24 billion for the first quarter of 2019 have surpassed budget by $330 million and prior year by $358 million;

- 4 -

142489574.4

- Over $12 billion of cash available for debt service in Puerto Rico government bank accounts shows steady growth on the heels of growing general fund tax collections accumulated by not paying the debt.

16. Attached hereto as Exhibit H is a true and correct copy of a statement contained in an article with a web address of https://www.elnuevodia.com/english/english/nota/rossellodidnotdetailsavingstopayforthechristmasbonus-2464016/ of Governor Rosselló of the Commonwealth declaring: "It's not us challenging the Board, it is the Board challenging government of Puerto Rico. If we have the money, and we have identified it, why do they want to interfere in something like this?"

17. That same article reflects payment by Puerto Rico of $85 million in Christmas bonuses in December 2018 without detailing from where the savings would come.

18. Attached hereto as Exhibit I is a true and correct copy of a statement contained in an article with a web address of https://caribbeanbusiness.com/puerto-rico-gov-says-he-didnt-defy-fiscal-board-by-paying-the-christmas-bonus/ reflecting a statement in November 2018 from Oversight Board chair Natalie Jaresko, warning that any Christmas bonus payment would only from offsetting payroll related savings to avoid 'more drastic measures'.

19. Attached hereto as Exhibit J is a true and correct copy of a report of the Government Accountability Office dated May 9, 2018.

20. Attached hereto as Exhibit K is a true and correct copy of a report of the Federal Reserve Bank of New York dated June 2012.

21. Attached hereto as Exhibit L is a true and correct copy of a report of Municipal Secondary Market Disclosure Information Cover Sheet and supporting report dated December 3, 2018 showing the following economic data:

142489574.4

- The Commonwealth's unemployment rate is around 8%, the lowest in decades;
- Sales tax revenues are at record levels
- The Puerto Rico Treasury has $12 billion of cash in various accounts, the majority of this money is the result of not paying annual debt service for almost 3 years;
- The Puerto Rico government has proposed to lower taxes, raise the minimum wage for government workers and has given Christmas bonuses;
- The average absenteeism for mainland public workers is 5.9% vs 35% for Puerto Rico public workers

22. Attached hereto as Exhibit M is a true and correct copy of statements of economic interests of senior bondholders showing the following:

- Over $1 billion of Junior COFINA bonds were bought by some mediating Institutions between August 2017 and August 2018 by several institutions at prices ranging from the teens;
- During this time period, it appears that these institutions were also confidentially mediating the Commonwealth-COFINA Dispute and were privy to insider information on the confidential mediations closed to the public.

23. I note that Paragraph 27 of the SUF references several letters attached as Exhibits to the Yanez Decl. to show the issuance of that legislative statements and official legal opinions concluding that the COFINA bonds are "insulated from the [Commonwealth's] broader budget and financial problems."

24. It is my understanding as the head of a bond trading company that COFINA's high ratings were in contrast to the substantially lower ratings issued to the Commonwealth's general obligation bonds supported by the Commonwealth's promise to pay.

142489574.4

I declare under penalty of perjury that the foregoing is true and correct.

Date: December 20, 2018
Livingston, New Jersey

142489574.4