



OPINION

# Lawful Restructuring Compromises Are Key to Puerto Rico's Future

BY **ARTHUR J. GONZALEZ**
November 20, 2018

When Congress set out to legislate a solution that would help address Puerto Rico's debt crisis almost three years ago, one of its main bipartisan objectives was to avert catastrophe. That is why the Puerto Rico Oversight, Management, and Economic Stability Act seeks to facilitate, where possible, constitutional and lawful compromises between the Commonwealth and creditors.

The reality is that Puerto Rico's restructuring has always been about more than bondholders and budget cuts. With more than $120 billion in public debt and unfunded pension liabilities, the socioeconomic future of an island that is home to roughly 3 million American citizens is at stake.

With this context in mind, the Financial Oversight and Management Board has held the view that negotiated restructuring agreements should ideally take precedence over winner-take-all litigation. This was certainly our position when it came to the restructuring of $17.6 billion in bonds issued by the Puerto Rico Sales Tax Financing Corporation, which is also known as COFINA.

The island's largest bond issuance, COFINA accounts for approximately one quarter of the total bond debt that Puerto Rico needs to restructure. So resolving the legal dispute between COFINA bondholders and the Commonwealth's creditors challenging their property and repayment rights has been considered a foundational step on the path to the island's financial recovery.

In this case, a litigated resolution represented a dangerous gamble. The court would either find that COFINA and its bondholders own the island's sales tax revenues, which would sharply reduce the funds available for other constituencies, or that the Commonwealth has the right to claw them back. A loss for the Commonwealth would be a particularly devastating setback, costing the local government billions of dollars in reduced debt and recouped revenue over the coming decades.

To facilitate a resolution of this pivotal issue, the board proposed – and PROMESA's Title III court agreed – to appoint independent fiduciaries to represent the interests of COFINA and the Commonwealth. These agents subsequently litigated, negotiated, and mediated for more than nine months before agreeing in principle to split the part of the sales tax revenues in dispute. COFINA would concede almost half (46.35 percent) of the Pledged Sales Tax Base Amount to the Commonwealth moving forward.

Although the board did not participate or take a position, we respected the hard-fought

agreement and proceeded promptly to develop the formal plan of adjustment for COFINA. Working with judicially appointed mediators, the Commonwealth and COFINA's creditors, the board reached agreement on the terms of the restructuring within the confines of the agents' agreement and within the strictures of PROMESA.

The settlement reflects a reasonable resolution of a dispute while avoiding a potentially catastrophic winner-take-all result. Under the proposed plan of adjustment, Puerto Rico would reduce its COFINA bond debt service by 32 percent, saving approximately $17.5 billion.

Although the settlement has received significant support from major constituencies, some may believe it does not leave sufficient funds for the Commonwealth to prosper. But the COFINA settlement was driven by the risks of litigation and consequences thereof.

As stated earlier, if the dispute were litigated and the court found that COFINA's ownership the sales tax revenues is valid and its bondholders secured by the sales tax receipts, any further effort to strip them of that interest would be challenged as "taking" under the United States Constitution. There is nothing in PROMESA that could alter that result to lessen its impact on the Commonwealth. This settlement avoids the potential of that catastrophic result.

All stakeholders must remember this is not a sovereign debt restructuring in which rights of

creditors often collide with the power of a sovereign, leaving court decisions at times difficult or impossible to enforce. Here, the parties operate within a structure where court decisions can not only be rendered, but enforced as well. So the catastrophic result from an adverse litigated outcome would be visited fully upon the Commonwealth.

The board is not free to ignore fundamental property rights regardless of what may be argued would provide an easier pathway for Puerto Rico. Rather, the board's efforts must be consistent with PROMESA and the United States Constitution. Given this reality, the settlement is a major achievement and a crucial step forward.

*Judge Arthur J. Gonzalez (Retired) is a senior fellow at NYU School of Law and member of the Financial Oversight and Management Board.*

Morning Consult welcomes op-ed submissions on policy, politics and business strategy in our coverage areas. Updated submission guidelines can be found here.