# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

----------------------------------------------------------------- x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.,*

     Debtors.[1]

----------------------------------------------------------------- x

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.,*

     and

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF ALL TITLE III DEBTORS (OTHER
THAN COFINA),

     Plaintiffs,

v.

PUERTO RICO PUBLIC BUILDINGS AUTHORITY,

     Defendant.

----------------------------------------------------------------- x

PROMESA
Title III

Case No. 17-BK-3283 (LTS)

(Jointly Administered)

Adv. Proc. No. _____

**COMPLAINT FOR
DECLARATORY RELIEF
AND DISALLOWANCE OF
ADMINISTRATIVE RENT
CLAIMS**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), and (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

Pursuant to (i) Federal Rules of Bankruptcy Procedure 7001(7) and (9), made applicable to these Title III cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act (48 U.S.C. § 2170) ("PROMESA"), and (ii) the Court's March 15, 2018 order [Case No. 17-3283, Docket No. 2716] (the "Rent Motion Order"), resolving the Rent Motion (as defined herein), the Financial Oversight and Management Board for Puerto Rico ("FOMB"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), *et al*. and its related Title III debtors (the "Debtors"), and the Official Committee of Unsecured Creditors of all Debtors other than COFINA (the "Committee" and, together with FOMB, "Plaintiffs"), by and through their undersigned counsel, allege as follows:[2]

## NATURE OF PROCEEDING

1.      PBA is an instrumentality of the Commonwealth created to issue bonds (the "PBA Bonds") to finance the acquisition, construction and/or improvement of office space and other facilities (collectively, the "PBA Facilities") used by departments, agencies, instrumentalities, authorities, public corporations, and municipalities of the Commonwealth (the "Public Occupants") for government operations and providing essential services to the public. Currently, more than $4 billion in aggregate principal amount of PBA Bonds remain outstanding. PBA also enters into purported leases (the "Leases"), pursuant to which it ostensibly leases the PBA Facilities to the Public Occupants (the "Lessees").[3]  In reality, however, the Leases are not arm's length rental transactions designed to grant the Public Occupants temporary use of the PBA Facilities; rather, the sole purpose of the Leases is to provide a vehicle for the

---

[2]     Plaintiffs believe the Committee has direct standing to bring this action as plaintiff and that no grant of standing is required for the Committee to join FOMB as co-plaintiff.  To the extent that a grant of standing is required, FOMB consents to such standing.

[3]     The use of the words "Leases," "Lessees," and "rent" herein is not intended to suggest that the purported leases are "true leases" or that payments due thereunder are entitled to treatment as lease payments under section 365(d)(3) of Title 11 of the United States Code (the "Bankruptcy Code").  To the contrary, Plaintiffs believe the Leases are not true leases but rather parts of disguised financing transactions.

Commonwealth to repay the PBA Bonds through the Lessees' purported "rent" payments.   In

the aggregate, the Leases provide for the payment of approximately $401.6 million in annual

"rent," with in excess of $600 million in unpaid "rent" having accrued since the Debtors'

respective petition dates.

2.      Consistent with the economic reality of the Leases, this adversary proceeding

seeks a declaratory judgment that the Leases are not "true leases," but, rather, disguised

financing transactions.  As a result, PBA has no right under PROMESA or the Bankruptcy Code

to receive post-petition rent payments from the Debtors or administrative claims against the

Debtors.  In addition, this adversary proceeding seeks a declaratory judgment that certain of the

Leases do not give rise to administrative claims against the Debtors because the Lessees are non-

debtor entities.

3.      The relief sought herein is important to the Debtors' emergence from Title III.

Holders of PBA Bonds have previously alleged before this Court that the "rent" payments due

under the Leases are entitled to administrative expense treatment under the Bankruptcy Code and

PROMESA.  If they were correct, and they are not, the Debtors would have to pay these "rent"

payments in cash, in full, rather than treating them as giving rise to mere unsecured pre-petition

claims, which treatment is appropriate given that the Leases are disguised financings.

## **PARTIES**

4.      Plaintiff FOMB was established by PROMESA to help Puerto Rico "achieve

fiscal responsibility and access to the capital markets."  PROMESA § 101(a).  PROMESA grants

extensive authority to FOMB, including the power to approve and certify proposed fiscal plans

for the Commonwealth and its instrumentalities.  PROMESA §§ 101(d)(1), 201(c)(3), 201(e).

2

5.      Plaintiff the Committee was appointed by the United States Trustee on June 15,

2017.  The Committee serves as the official representative of unsecured creditors of the

Commonwealth and its related Title III Debtors (other than COFINA).

6.      Defendant PBA is an instrumentality of the Commonwealth created by Act No.

56 of the Puerto Rico Legislature, approved on June 19, 1958 (as amended, the "Enabling Act").

22 L.P.R.A. § 901 *et seq.*

## JURISDICTION AND VENUE

7.      On February 13, 2018, certain holders of PBA Bonds (the "PBA Funds")[4] filed a

motion [Case No. 17-3283, Docket No. 2492] (the "Rent Motion") in the consolidated Title III

cases seeking an order from the Court that the Debtors must continue making current rent

payments under the Leases pursuant to section 365(d)(3) of the Bankruptcy Code during the

pendency of the cases and that the Leases give rise to administrative priority claims against the

Debtors under section 503(b) of the Bankruptcy Code.

8.      FOMB and the Committee objected to the Rent Motion, arguing, among other

things, that the PBA Funds lacked standing to pursue the relief requested and that the Leases are

not true leases and, therefore, are not entitled to the special rights accorded landlords under

section 365(d)(3) of the Bankruptcy Code and do not give rise to administrative claims in favor

of PBA.  [Case No. 17-3283, Dkt. Nos. 2586, 2587.]

9.      On March 15, 2018, the Court entered an order [Case No. 17-3283, Dkt. No.

2716] (the "Rent Motion Order") resolving the Rent Motion.  The order provided that PBA shall

have allowed administrative priority claims ("Administrative Rent Claims") against the Debtors

with respect to unpaid rent "**[u]nless and to the extent the [Leases] are subsequently**

---

[4]    These holders of PBA Bonds consist of a group of investment funds that includes (a) Fir Tree Partners, (b)
Candlewood Investment Group, and (c) Inglesea Capital, LLC.

**adjudged not to be leases for purposes of Bankruptcy Code section 365(d)(3).**"  (emphasis added).

10.     The Rent Motion Order also provided, among other things, that (i) "[a]ny and all Administrative Rent Claims and their allowance or disallowance shall remain subject to all rights, claims, defenses, and setoffs available to each Debtor, as applicable, and the Debtors and the Official Committee of Unsecured Creditors retain all rights to assert objections or defenses to the Administrative Rent Claims;" (ii) "[f]or the avoidance of doubt, the issues of whether the PBA Leases are 'true leases' entitled to treatment under section 365(d)(3) of the Bankruptcy Code . . . and whether a debtor-guarantor who is not the tenant under the subject lease is subject to the performance obligations of section 365(d)(3), are expressly preserved;" and (iii) the parties' arguments concerning the PBA Funds' lack of standing to pursue the relief are preserved.

11.     An actual and justiciable controversy exists between Plaintiffs and PBA.  Section 2201(a) of title 28 of the United States Code provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

12.     This court has jurisdiction over the subject matter of this adversary proceeding pursuant to section 306(a) of PROMESA. 48 U.S.C. § 2166(a).

13.     Venue is proper in this district pursuant to section 307(a) of PROMESA.  48 U.S.C. § 2167(a).

4

## BACKGROUND

### I.        Overview of PBA

14.        PBA, an instrumentality of the Commonwealth, is governed by a seven-member board, the members of which are, directly or by virtue of their holding positions in the Executive Branch of the Commonwealth, appointed by the Governor of Puerto Rico.  3 L.P.R.A. App. § VII; 22 L.P.R.A. § 904.

15.        Pursuant to the Enabling Act, PBA was authorized to (a) issue the PBA Bonds to finance the PBA Facilities and (b) enter into the Leases for the purposes of (i) leasing the PBA Facilities to the Lessees, and (ii) providing a source of payment for the PBA Bonds.  22 L.P.R.A. §§ 906, 907, and 916.   Thus, PBA serves no role or purpose other than to issue the PBA Bonds and enter into Leases that provide for the repayment of the PBA Bonds.

### II.       The PBA Bonds

16.        PBA issued multiple series of PBA Bonds pursuant to certain bond resolutions, including: (i) Resolution No. 77, adopted on November 16, 1970 (the "1970 Bond Resolution"); (ii) Resolution No. 468, adopted on June 22, 1995 (the "1995 Bond Resolution"; and, together with the 1970 Bond Resolution, the "Bond Resolutions"), as supplemented by separate resolutions authorizing the issuance of each series of PBA Bonds under the 1995 Bond Resolution, including without limitation, (a) Resolution No. 1596, adopted on August 10, 2011, authorizing the issuance of the PBA Government Facilities Revenue Bonds, Series R (the "Series R Bonds"), and (b) Resolution No. 1618, adopted on December 19, 2011, authorizing the issuance of the PBA Government Facilities Revenue Bonds, Series T (the "PBA Series T

Bonds").[5]  By statute, (i) the Commonwealth has guaranteed the payment of rent under the PBA

Leases with the Pubic Occupants other than municipalities,[6] and (ii) the Commonwealth has

guaranteed the payment, when due, of principal of and interest on the PBA Bonds.[7]

17.     As of February 2017, PBA had approximately $4 billion in aggregate principal

amount of bonds outstanding under the Bond Resolutions, as follows:[8]

| Bond Resolution | Approx. Amount Outstanding | Tax Exempt |
|---|---|---|
| 1970 Bond Resolution | $37.3 million | Y |
| 1995 Bond Resolution, Series R Bonds | $756.4 million | N |
| 1995 Bond Resolution, Series T Bonds | $121.5 million | N |
| 1995 Bond Resolution, Bonds of Other Series | $3.117 billion | Y[9] |

18.     Pursuant to the Enabling Act and the Bond Resolutions, the PBA Bonds are

payable from "rent" payments under the Leases, and that "rent" is required to be sufficient, in the

aggregate, to pay, when due, the principal of and interest on the PBA Bonds.  22 L.P.R.A. §§

907(g) and 916; 1995 Bond Resolution §§ 208(c), 701.

19.     Pursuant to the Bond Resolutions, all payments in respect of debt service on the

PBA Bonds must immediately be deposited into certain specified accounts, purportedly to be

held in trust for the bondholders.  The PBA Bonds are purportedly secured by a lien on all funds

---

[5]   Although beyond the scope of this adversary proceeding, Plaintiffs reserve the right to challenge the validity and enforceability of the PBA Bonds, the guarantees by the Commonwealth of the PBA Bonds, and/or the entire PBA structure.

[6]   22 L.P.R.A. § 916.

[7]   Act No. 17-1968 of the Puerto Rico Legislative Assembly, as amended.

[8]   These principal amounts exclude all accretion on outstanding capital appreciation bonds and convertible capital appreciation bonds.

[9]   One relatively small series of PBA Bonds outstanding under the 1995 Bond Resolution is not tax exempt.

in such accounts.  *Id*. § 502.  The PBA Bonds are not secured by mortgages on any of the PBA

Facilities or by an assignment of the Leases.

**III.**     **The Leases**

20.      Upon information and belief, more than 1,900 Leases are currently in effect

between PBA, as lessor, and the Lessees, under which aggregate annual "rent" of approximately

$401.6 million is payable.

21.      The Lessees under some of the Leases are not Debtors (the "Non-Debtor

Leases").  For example, one of the Lessees is the Municipal Revenue Collection Center, or

"CRIM," a non-Debtor entity.  Similarly, other lessees are non-Debtor instrumentalities or public

corporations of the Commonwealth.  These entities, as distinguished from departments and

agencies of the Commonwealth, are not part of the Commonwealth's central government.  Thus,

they are not debtors against which claims may be asserted in the Title III cases, and section

365(d)(3) of the Bankruptcy Code does not apply to them.

22.      Additionally, some of the Leases are structured as subleases (the "Subleases"), in

connection with which, on the same date, and for the same term, (i) the Commonwealth (as

owner of the facilities) leased the facilities to PBA for a nominal rent payment of as low as $10,

and (ii) PBA subleased the facilities back to a Lessee for "rent" calculated based upon debt

service due on the PBA Bonds.  Structured in this way, the Subleases exist for no other reason

than to provide a source of payment for debt service on PBA Bonds that finance facilities and/or

improvements to facilities **already owned by the Commonwealth**.

23.      Two examples of Subleases are (i) the Master Sublease Contract, dated as of

August 24, 2011, between PBA, as sublessor, and the Commonwealth Department of Education,

as sublessee (the "DOE Series R Lease"), and (ii) the Master Sublease Contract, dated as of

December 22, 2011, between PBA, as sublessor, and the Commonwealth Department of

Education, as sublessee (the "DOE Series T Lease").  The DOE Series R Lease and the DOE

Series T Lease are attached hereto as **Exhibits A and B**, respectively.

**IV.**   **Debt Service Disguised as "Rent" Payments**

24.    As required by the Enabling Act and the Bond Resolutions, the "rent" payments

under the Leases are specifically designed to cover debt service on the PBA Bonds.  The "rent"

payments are not in any way tied to the market rents a tenant might ordinarily pay a landlord for

the use of similar properties under a true lease arrangement.

25.    For example, the DOE Series R Lease[10] provides for the payment of "Debt

Service Rentals" comprised of "such annual amount or amounts as shall be determined from time

to time by the Authority to be necessary to pay the principal of . . . and the interest on all [Series

R] Bonds under the [1995] Bond Resolution as the same becomes due and payable."  DOE

Series R Lease, § 2.01(a).  The DOE Series R Lease further provides that the Debt Service

Rental will be adjusted upward or downward, as necessary, depending on whether or not PBA

receives certain interest subsidy payments from other sources, decides to issue additional PBA

Bonds to finance additional costs of the PBA Facilities subject to the DOE Series R Lease,

and/or retires existing Series R Bonds.  *Id*. §§ 2.02.[11]  The fact that "rent" payments decrease

when outstanding PBA Bonds are retired demonstrates that such payments bear no relation to

market rents but, instead, are designed to service PBA's debt.

26.    For another example, the Lease Contract, dated March 1, 1997 (the "Treasury

Department Lease"), between PBA, as lessor, and the Treasury Department of the

---

[10]    Various provisions of certain specific Leases are cited herein as examples of the types of terms and
conditions that the Leases contain.  Upon information and belief, all other Leases contain provisions that
are similar to the cited provisions.

[11]    *See also, e.g.,* Lease Contract, dated as of August 1, 2009, between PBA, as lessor, and the South Central
Area of Investment in Labor Force, as lessee (the "ASIFAL Lease"), attached hereto as **Exhibit C**, §§
2.01(b), 2.06; DOE Series T Lease, §§ 2.01, 2.02, 2.04.

Commonwealth of Puerto Rico, as lessee, provides for the payment of Debt Service Rentals comprised of the "Lessee's Proportionate Share" of "such annual amount or amounts as shall be determined from time to time by [PBA] to be necessary to pay the principal of . . . and the interest on the Bonds [issued under the 1995 Bond Resolution] as the same become due and payable." "Lessee's Proportionate Share" is defined as "the percentage determined by dividing the cost of the [PBA Facilities subject to the Treasury Department Lease] by the cost of all [PBA Facilities] payable from the proceeds of all Bonds [issued under the 1995 Bond Resolution]." As a consequence, the Lessee is required to pay a pro rata share of the principal of and interest on all Bonds issued under the 1995 Bond Resolution. A copy of the Treasury Department Lease is attached as **Exhibit D**.

27.     To ensure that the Leases will facilitate **full** repayment of the PBA Bonds, the term of each Lease is set to expire on the maturity date of the PBA Bonds that it supports. *See*, e.g., DOE Series R Lease, Article I.

28.     The Leases contain provisions designed to ensure that the Public Occupants' payments will never be reduced below the amount necessary to cover debt service on the PBA Bonds. Specifically, each Lease states that it may not be amended or modified in a way that "reduce[s]" or "postpone[s]" the Debt Service Rental relative to the required amounts referred to in the Bond Resolution or otherwise "materially and adversely affect[s] the security or interest of the holders of the bond[s] issued under the Bond Resolution." DOE Series R Lease, § 6.06; Treasury Department Lease, § 6.07. The required "rent" amounts under each Lease are "amounts which in the aggregate will be sufficient to provide the sums needed from time to time to pay [the principal of, premium, if any, and interest on] the PBA Bonds issued in connection with the [PBA Facilities subject to such Lease]." 1995 Bond Resolution, § 701. Each Lease further provides that, in the event of any conflict between the Lease and the applicable Bond

Resolution, the terms of the Bond Resolution shall control.  *See, e.g.,* DOE Series R Lease, §

6.05; Treasury Department Lease, § 6.06.

29.     In addition, each Lease contains an "absolute and unconditional obligation"

provision requiring the Lessee to pay "rent" in full at all times and under all circumstances for

the remainder of the lease term, **even if the property has been sold or destroyed, including**

**due to the fault of PBA**.  Thus, even if the Lessee cannot use or occupy the facility and thus

receives no benefit whatsoever from the Lease, it must nevertheless continue to provide a source

of payment for the PBA Bonds until they are repaid in full.

30.     For example, the DOE Series R Lease provides that "[t]he [lessee] agrees that its

obligation to pay rentals for the full term of [this lease] at the times and in the amounts specified

or referred to in [this lease] shall be absolute and unconditional and shall continue whether or not

the [leased facilities] or any part thereof shall be completed or shall be occupied by the [lessee],

or be sold, transferred or otherwise disposed of, or be damaged or destroyed from any cause

whatsoever or otherwise become unusable by the [lessee] for any period of time and regardless

of any other cause of any nature, [including] but not limited to, any default by the [PBA] under

this [lease]."  DOE Series R Lease, Art. V; *see also, e.g.*, Treasury Department Lease, § 4.01.

31.     The payments due under the Leases also include an "Operating Rental"

component designed to reimburse PBA for its operating expenses.  *See, e.g.*, Treasury

Department Lease, § 2.01(c).  The Operating Rental covers, among other things, all expenses of

"operating, maintaining and repairing" the leased facilities.  *See*, *e.g.*, *id*. § 3.03.  The Operating

Rental is to be adjusted as necessary to ensure that all of PBA's actual operating expenses are

fully assumed by the Public Occupants.  *Id*. § 2.02.  This pass-through of expenses to the Public

Occupants serves as further evidence that the Leases are not "true" leases, because all costs of

ownership of the properties—including all maintenance and repairs—are borne by the Public

Occupants, not by PBA.  Tellingly, the Operating Rental also covers "fees and expenses of the bond trustees and paying agents and other expenses in connection with the payment of the principal and interest on such bonds issued by [PBA], including redemption premiums, and the administration of the trusts created in connection with such bonds."  *Id*. § 3.03.  This provision shows that PBA's "operations" are not those of a "landlord," but rather, those of what is, in effect, an administrative agent facilitating the repayment of the PBA Bonds.

32.     Furthermore, the Leases contain other provisions making clear that they are not arm's length true lease agreements but rather methods of financing entered into between related parties that are ultimately controlled by the same person.  For example, to the extent a dispute arises under the Leases concerning "rent" payments or any other issue, "the matter shall be submitted to the Governor of Puerto Rico (the 'Governor'), or his duly authorized representative, for his determination."  *See, e.g.*, DOE Series R Lease, § 6.02.  The Governor ultimately controls both the Lessees and PBA, and his determination of any dispute is binding on both parties.  *Id*. ("When such dispute shall be decided by the Governor or his duly authorized representative, the Authority and the Sublessee shall be bound by such determination.")  The Leases do not set forth a right to appeal his decision to a neutral party.

## V.     Ownership and Occupation of "Leased" Properties

33.     In the case of the Subleases, the Commonwealth owns the property subject to the Sublease.  When the Sublease and related master lease terminate, the Commonwealth will continue to own the property and may occupy and use it as the Commonwealth sees fit.

34.     For all Leases other than the Subleases, PBA is the ostensible owner of the "leased" property.  Upon information and belief, however, because PBA and the Lessees are under the common control of the Governor, the Lessees will be able to continue occupying and

using the properties following termination of the Leases.  The Leases contain no provisions

providing for the eviction of the Lessees upon non-payment or expiration of the Leases.

35.     PBA's sole reason for entering into the Leases is to repay the PBA Bonds.  Apart

from the Commonwealth's guarantee of the payments due under the Leases to Public Occupants

(other than municipalities) and the Commonwealth's guarantee of the debt service on the PBA

Bonds, the Public Occupants are the sole source of payment for the PBA Bonds.

## FIRST CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Section 365(d)(3)
### (Declaration That Leases Are Not Subject to Section 365(d)(3) Treatment)

36.     Paragraphs 1-35 are incorporated by reference as if fully set forth herein.

37.     Section 365(d)(3) of the Bankruptcy Code, made applicable to these cases by

PROMESA section 301(a), provides, in relevant part, that a debtor-in-possession shall "timely

perform all the obligations  . . .  arising from and after the order for relief under any unexpired

lease of nonresidential real property, until such lease is assumed or rejected . . . ."  11 U.S.C. §

365(d)(3).  This section, however, only applies to "true leases" and not agreements governing

disguised financing transactions.

38.     Congress has recognized that municipal leases of government properties used to

finance bond issuances are in fact not "true leases" and, therefore, are not subject to section 365

of the Bankruptcy Code.  *See* 6 Collier on Bankruptcy ¶ 929.02 (16th ed. 2017); *see also* H.R.

Rep. No. 100-1011, at 8 (1988) ("financial leases" of municipalities "are generally marketed as

debt obligations and treated as debt obligations for tax purposes; to be consistent, new section

929 treats municipal leases as such for bankruptcy purposes.").

39.     The Leases are designed to be the source of payment for the PBA Bonds rather

than to "lease" the PBA Facilities to the Lessees.

40.      The Leases contain a number of indicators that establish that they are, in reality, disguised financing mechanisms, including:

a.   establishing "rent" payments at levels required to be sufficient, in the aggregate, to pay, when due, the principal of and interest on the PBA Bonds;

b.   termination on the date on which the principal of and interest on the PBA Bonds have been repaid in full; and

c.   providing that the "rent" payment obligations of the Lessees are absolute and unconditional, such that the Lessees must continue making "rent" payments even if the leased property is destroyed or otherwise rendered unusable, including due to the fault of PBA.

41.      In addition, the Leases bear none of the indicia of a "true lease" entered into at arm's length between a landlord and tenant.  For starters, the "landlord" (PBA) and "tenant" (the Lessee) are both controlled by the same person: the Governor of Puerto Rico.  At the end of its Lease, each "tenant" will have no difficulty continuing to use and occupy the property as it sees fit.  Moreover, the "rent" payments under the Leases bear no relationship to market rents.   PBA is not in the business of renting properties at market rates in arm's length transactions with tenants.  Rather, the function of PBA is to issue PBA Bonds to finance the acquisition or improvement of properties for the government's exclusive use and then enter into leases with the Public Occupants to facilitate the repayment of those bonds.

42.      The Subleases are especially transparent in serving as financing mechanisms in that they involve a sublease by PBA to the Lessees of property **owned by the Commonwealth** and leased on the same day by the Commonwealth to PBA pursuant to a main lease.  PBA pays only nominal "rent" ($10) under the main lease, while the Lessees pay "rent" under the Subleases based upon the debt service due on the related PBA Bonds (as the Lessees do under all

13

Leases).  Thus, the Subleases directly finance facilities and/or improvements to facilities that the Commonwealth already owns and will continue to own at the end of the lease term.

43.     For all of these reasons, each of the Leases, including the Subleases, is not a "true lease" for purposes of section 365(d)(3) of the Bankruptcy Code.

44.     Accordingly, the Commonwealth is entitled to a declaration pursuant to 28 U.S.C. § 2201(a) that the Leases are not entitled to section 365(d)(3) treatment and, therefore, the Debtors have no obligation to make payments to PBA under the Leases.

## SECOND CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Sections 503(b) and 507(a)(2)
### (Declaration That PBA Does Not Have Administrative Claim Against Debtors Under Leases and That Any Such Claim is Disallowed)

45.     Paragraphs 1-44 are incorporated by reference as if fully set forth herein.

46.     Section 503(b)(1) of the Bankruptcy Code, made applicable to these cases by PROMESA section 301(a), provides that a creditor will receive an administrative expense claim for the "actual, necessary costs and expenses of preserving the estate."  Section 507(a)(2) of the Bankruptcy Code, also made applicable to these cases by PROMESA section 301(a), sets forth the priority of payment of such administrative expense claims.

47.     Because the Leases are not "true leases" that allow the Debtors to "rent" property from PBA to facilitate post-petition operations, but rather, are disguised financing arrangements, the payments owed by the Debtors to PBA under the Leases are not actual and necessary costs or expenses of preserving the Debtors' estates.  The borrowings that occurred pre-petition pursuant to the PBA Bonds do not provide any post-petition benefits to any of the Debtors.

48.     Accordingly, the Commonwealth is entitled to a declaration pursuant to 28 U.S.C. § 2201(a) that (i) PBA is not entitled to a priority administrative expense claim under the Leases

14

pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, and (ii) any such claim

filed or asserted against the Debtors is disallowed in full.

### THIRD CAUSE OF ACTION

**28 U.S.C. § 2201(a)**
**Bankruptcy Code Sections 365(d)(3), 502, and 503(b)**
**(Declaration That Non-Debtor Leases Are Not Subject to Section 365(d)(3) Treatment, Do
Not Give Rise to Administrative Claim, and Any Such Claim is Disallowed)**

49.     Paragraphs 1-48 are incorporated by reference as if fully set forth herein.

50.     Even if certain of the Leases were entitled to treatment in accordance with section

365(d)(3) of the Bankruptcy Code, PBA is not entitled to payment under section 365(d)(3) or an

administrative claim under section 503(b) under the Non-Debtor Leases.

51.     Section 365(d)(3) of the Bankruptcy Code applies only to lessees.  It does not

apply to a party that is not a lessee, even if such party is otherwise liable for rent payments due

under a lease (e.g., as guarantor).  Any payment of rent by a non-lessee party will not constitute

an actual and necessary cost or expense of preserving the debtor's estate.

52.     No Debtor is a lessee under the Non-Debtor Leases.

53.     Accordingly, the Commonwealth is entitled to a declaration pursuant to 28 U.S.C.

§ 2201(a) that (i) the Debtors have no payment obligation under section 365(d)(3) of the

Bankruptcy Code under the Non-Debtor Leases, (ii) PBA is not entitled to an administrative

priority claim under section 503(b) of the Bankruptcy Code for any "rent" payable under the

Non-Debtor Leases, and (iii) any such claim filed or asserted against the Debtors is disallowed in

full.

### PRAYER FOR RELIEF

WHEREFORE the Commonwealth respectfully requests judgment as follows:

15

     A.      On the First Cause of Action, declaring that the Leases are not subject to treatment in accordance with section 365(d)(3) of the Bankruptcy Code and, therefore, the Debtors have no obligation to make payments to PBA under the Leases;

     B.      On the Second Cause of Action, declaring that PBA is not entitled to a priority administrative expense claim under the Leases pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code and that any such claim is disallowed in full;

     C.      On the Third Cause of Action, declaring that (i) the Debtors have no payment obligation under section 365(d)(3) of the Bankruptcy Code under the Non-Debtor Leases, (ii) PBA is not entitled to an administrative priority claim under section 503(b) of the Bankruptcy Code for any "rent" payable under the Non-Debtor Leases, and (iii) any such claim filed or asserted against the Debtors is disallowed in full; and

     D.      Granting such other and further relief as the Court deems just and proper.


Dated: December 21, 2018        Respectfully Submitted,
       San Juan, Puerto Rico

          */s/   Martin J. Bienenstock*
          Martin J. Bienenstock (*pro hac vice*)
          Brian S. Rosen (*pro hac vice*)
          Paul V. Possinger (*pro hac vice*)
          **PROSKAUER ROSE LLP**
          Eleven Times Square
          New York, NY 10036
          Tel: (212) 969-3000
          Fax: (212) 969-2900

          *Attorneys for the Financial Oversight and Management Board as Representative for the Commonwealth of Puerto Rico*

          -and-

          */s/ _Hermann D. Bauer*
          Hermann D. Bauer
          USDC No. 215205

O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management
Board as Representative for the Commonwealth of Puerto Rico*

-and-

By:   /s/  Luc A. Despins
Luc A. Despins  (*pro hac vice*)
PAUL HASTINGS LLP
200 Park Avenue
New York, New York  10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett (*pro hac vice*)
PAUL HASTINGS LLP
875 15th Street, N.W.
Washington, D.C.  20005
Telephone:  (202) 551-1902
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for
all Title II Debtors (except for COFINA)*

-and-

/ s/   Juan J. Casillas

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*

17

*for all Title III Debtors (except for COFINA)*