Hearing Date: January 16, 2019 at 9:30 a.m. (Atlantic Standard Time)
Objection Deadline: January 2, 2019 at 5:00 p.m. (Atlantic Standard Time)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This filing relates to COFINA only |

RESERVATION OF RIGHTS OF THE BANK OF NEW
YORK MELLON, AS TRUSTEE, REGARDING SECTION 19.5 OF
THE SECOND AMENDED TITLE III PLAN OF ADJUSTMENT OF
<u>PUERTO RICO SALES TAX FINANCING CORPORATION</u>

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................................... 1
FACTUAL BACKGROUND..................................................................................................... 5
A.      THE BOND RESOLUTION ................................................................................. 5
      1.      The Bondowner, Beneficiaries, and Beneficial Holders.......................... 5
      2.      BNYM's Limited Duties and Rights to Payment and Indemnification.................. 5
B.      THE AMBAC AND WHITEBOX ACTIONS.................................................... 7
C.      THE INTERPLEADER ACTION ....................................................................... 9
D.      PROOFS OF CLAIM ......................................................................................... 10
E.      THE PLAN ......................................................................................................... 11
RESERVATION OF RIGHTS ................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Ambac Assurance Corp. v. The Bank of New York Mellon,
    652356/2017 (Sup. Ct. N.Y. May 2, 2017)..................................................................................8

Ambac Assurance Corp. v. The Bank of New York Mellon,
    No. 17-3804-LTS (S.D.N.Y.), Doc. No. 2..................................................................................9

Elliott Assocs. v. J. Henry Schroder Bank & Trust Co.,
    838 F.2d 66 (2d Cir. 1988)........................................................................................................6

Magten Asset Mgmt. Corp. v. Bank of New York,
    15 Misc. 3d 1132, 841 N.Y.S.2d 219 (N.Y. Sup. Ct. 2007) ......................................................6

Meckel v. Cont'l Res. Co.,
    758 F.2d 811 (2d Cir. 1985)......................................................................................................5

Whitebox Multi-Strategy Partners, L.P., et al. v. Bank of New York Mellon Corp.,
    651969/2017 (Sup. Ct. N.Y. County April 12, 2017).................................................................7

**Statutes**

P.R. Laws Ann. tit. 13, §§ 11a-16...................................................................................................11

P.R. Laws Ann. tit. 13, § 13(b) .......................................................................................................11

The Bank of New York Mellon ("BNYM"), as trustee under the Amended and Restated Sales Tax Revenue Bond Resolution (as amended and supplemented, the "Bond Resolution"), adopted on July 13, 2007, by the Puerto Rico Sales Tax Financing Corporation ("COFINA"), through its undersigned counsel, hereby files this reservation of rights regarding section 19.5 of the *Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Doc. No. 4392] (the "Plan"), and in support hereof, respectfully represents as follows:[2]

### PRELIMINARY STATEMENT

1. BNYM has an unliquidated secured claim against COFINA for fees and expenses and indemnification under the Bond Resolution. BNYM's claim against COFINA is the result of lawsuits filed by Whitebox and Ambac against BNYM prior to the commencement of this Title III Case—lawsuits that no other holder of the Existing Securities or monoline insurer joined. The lawsuits are premised upon allegations that an event of default occurred under the Bond Resolution prior to April 29, 2017, and that BNYM breached alleged duties to Whitebox and Ambac by failing to declare such defaults.

2. The threshold issues underlying the lawsuits—whether a default or event of default occurred under the Bond Resolution and, if so, when—are the subject of cross-motions for summary judgment filed in stage two of the Interpleader Action.

3. Certain parties to the Interpleader Action, including COFINA, Whitebox, Ambac, and other holders of beneficial interests ("Beneficial Holders") in the Existing Securities and monoline insurers, entered into the Plan Support Agreement, pursuant to which the Interpleader Action may be dismissed with prejudice, but with Whitebox and Ambac retaining

---

[2] Capitalized terms used but not defined in this reservation have the meanings given in the Plan. All docket numbers cited in this reservation refer to Case No. 17 BK 3283-LTS, unless otherwise specified.

any claims against BNYM for gross negligence, willful misconduct, and intentional fraud. Because the lawsuits are not being dismissed with prejudice as part of the Plan, open disputes exist regarding payment pursuant to the Bond Resolution of fees and expenses incurred by BNYM after the Effective Date and in connection with the lawsuits.

4. Under the Bond Resolution, COFINA is obligated to pay BNYM from time to time reasonable compensation for all services rendered and all reasonable expenses incurred in connection with the performance of its powers and duties under the Bond Resolution. COFINA also is obligated to indemnify and save BNYM harmless against any loss, liability, or expenses arising out of or in connection with the acceptance or administration of the trusts under the Bond Resolution, except to the extent that such loss is due to its own gross negligence or willful misconduct. These obligations survive satisfaction and discharge of the Bond Resolution.

5. BNYM's rights to payment are secured and contractually senior to those of the Bondowners.[3] Pursuant to section 804 of the Bond Resolution, COFINA's obligation to pay BNYM's reasonable compensation and expenses is secured by a lien prior to that of the Bondowners on any and all funds at any time held by BNYM under the Bond Resolution.[4] Additionally, pursuant to section 1103.1 of the Bond Resolution, the funds held by BNYM after the occurrence of an event of default may be applied to amounts due on the Existing Securities only *after* making provision for payment of any reasonable expenses of and liabilities incurred and advances made by BNYM and its agents and attorneys under the Bond Resolution. Pursuant to section 501.1 of the Bond Resolution, COFINA's pledge of the COFINA Pledged Taxes secures BNYM's claims under the Bond Resolution and is subject to BNYM's charging lien

---

[3] As used in this reservation, the term "Bondowner" has the meaning given in the Bond Resolution. See Resolution § 101 ("Bondowner" is defined as "any person who shall be the registered owner" of any Existing Security).

[4] BNYM holds in excess of $1.8 billion under the Bond Resolution.

under section 804 and other provisions of the Bond Resolution, including section 1103.1, permitting the application of the COFINA Pledged Taxes for the purposes and on the terms and conditions set forth therein.

6. The Plan recognizes that COFINA and other Beneficial Holders should not be penalized for the intransigence of Whitebox and Ambac in continuing to pursue the lawsuits despite an otherwise global settlement. With this purpose in mind, the Plan provides generally that BNYM's rights to payment and indemnification under the Bond Resolution in connection with the fees and expenses incurred in defense of the lawsuits shall be enforced solely against Whitebox and Ambac. Section 19.5 of the Plan provides that, at the Confirmation Hearing, the Title III Court shall determine what amount, if any, shall be withheld from the distributions to Whitebox and Ambac or otherwise posted by Whitebox and Ambac as collateral for the reimbursement of fees and expenses which may be incurred by BNYM in defense of the lawsuits, and whether such amounts may be paid on a current basis. The Title III Court's determination and the fulfillment of any obligations of Whitebox and Ambac under section 19.5 must satisfy in full any obligations of COFINA and any rights of BNYM under the Bond Resolution and applicable law with respect to payment of BNYM's fees and expenses and indemnification arising from or relating to the lawsuits.

7. The Plan in essence makes Whitebox and Ambac responsible for satisfaction of COFINA's and the Bondowners' obligations to BNYM under the Bond Resolution and applicable law (including Title III and the Bankruptcy Code), but does not assign to Whitebox and Ambac any rights of COFINA or the Bondowners. Rather than COFINA or BNYM withholding funds from distributions to all Bondowners pending the liquidation of BNYM's claim against COFINA, as a reserve against future fees and expenses as contemplated

by the Bond Resolution, COFINA asks the Court to determine (i) what BNYM is entitled to receive under the Bond Resolution and in accordance with the confirmation standards of Title III and the Bankruptcy Code and (ii) to enforce those rights solely as against Whitebox and Ambac by having BNYM withhold funds from their individual distributions or by compelling them to post substitute collateral.  This mechanism ensures that BNYM receives the amounts to which it is entitled under the Bond Resolution and applicable law, that the burden of the lawsuits is borne by the two disaffected claimants, that COFINA is not caught in the middle, and that other Beneficial Holders receive their distributions on a timely basis.

        8.        In consideration of COFINA's proposed mechanism to satisfy BNYM's rights under the Bond Resolution and applicable law through section 19.5 of the Plan, and other revisions that COFINA has agreed to incorporate in a third amended version of the Plan to be filed on or before January 9, 2019, BNYM has agreed not to object to confirmation of the Plan. This reservation of rights reviews the factual background underlying the creation of section 19.5 of the Plan and confirms that BNYM is not waiving, but is expressly preserving, (i) all rights, claims, counterclaims, and defenses against Whitebox and Ambac that have been or may be asserted in connection with section 19.5 of the Plan, the lawsuits, the Interpleader Action, or any related litigation, (ii) its rights under the *Order Granting Urgent Consensual Motion for Entry of Order Establishing Procedures Regarding Section 19.5 of the COFINA Plan of Adjustment* [Doc. No. 4518] (the "<u>Procedures Order</u>") to submit briefs, declarations, responsive papers, and evidence in connection with section 19.5 of the Plan, (iii) its arguments that any determination of Whitebox's and Ambac's obligations under section 19.5 of the Plan must satisfy BNYM's rights under the Bond Resolution and the confirmation standards of Title III and the Bankruptcy Code as they relate to the treatment of BNYM's secured claim against COFINA, and (iv) its right to

- 4 -

appeal from any order that determines the parties' rights and obligations under section 19.5 of the Plan.

# FACTUAL BACKGROUND

A.   **THE BOND RESOLUTION**[5]

9.   COFINA issued multiple series of senior and subordinate Existing Securities.  See generally Bond Resolution.  The Existing Securities are special obligations of COFINA payable from the COFINA Pledged Taxes.  See id. § 201.  Payments of principal and interest and other amounts due under the Bond Resolution, including to BNYM, are secured by, among other things, an assignment of the COFINA Pledged Taxes.  Id. § 501.

   **1.   The Bondowner, Beneficiaries, and Beneficial Holders**

10.   The Bond Resolution is a contract, serving as a bond indenture, among BNYM, as trustee, COFINA, the Bondowners, and the Beneficiaries (as defined in the Bond Resolution).  See Bond Resolution §§ 103, 801.  Cede & Co. ("Cede") is the only registered owner of the Existing Securities and, as such, is the sole Bondowner under the Bond Resolution.  See Bond Resolution § 101.  Cede, Ambac, National, and Assured are Beneficiaries under the Bond Resolution.  See id.  Other PSA Creditors, including Whitebox, claim to be Beneficial Holders and, as such, they are neither Bondowners nor Beneficiaries under the Bond Resolution.

   **2.   BNYM's Limited Duties and Rights to Payment and Indemnification**

11.   The rights, duties, privileges, and immunities of BNYM under the Bond Resolution are governed by New York law.  Bond Resolution § 1211.  Consistent with New York law, BNYM has no duties beyond those expressly set forth in the Bond Resolution.[6]  Bond

---

[5]   A copy of the Bond Resolution is attached hereto as **Exhibit A**.
[6]   "Unlike [an] ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement." Meckel v. Cont'l Res. Co., 758 F.2d 811, 816 (2d

- 5 -

Id. § 802.  BNYM "undertakes to perform . . . only such duties as are specifically set forth in [the Bond] Resolution, and no implied covenants or obligations shall be read into [the Bond] Resolution against [BNYM]."  Id.  BNYM's express duties under the Bond Resolution are limited.  Among other limitations, BNYM has no obligation to perform any act that would involve it in expense or liability, or to exercise any of the rights or powers vested in it by the Bond Resolution at the request or direction of Bondowners, unless the Bondowners offer BNYM "security or indemnity satisfactory to [BNYM] against the costs, expenses and liabilities which might be incurred by it in compliance with such request or direction."  Id.  Further, BNYM's permissive rights under the Bond Resolution cannot be construed as duties.  Id.

12. The Bond Resolution also provides BNYM with important protections.  For example, BNYM cannot be liable in connection with the performance of its duties except for its own gross negligence or willful misconduct.  Bond Resolution § 802.

13. COFINA is obligated to pay BNYM "from time to time reasonable compensation for all services rendered under the [Bond] Resolution" and "all reasonable expenses, charges, counsel fees and other disbursements, including those of its attorneys, agents, and employees, incurred in and about the performance of their powers and duties under the [Bond] Resolution."  Bond Resolution § 804.  COFINA also is obligated to indemnify and save BNYM harmless against "any loss, liability or expenses . . . arising out of or in connection with the acceptance or administration of the trust or trusts" under the Bond Resolution, "including the costs and expenses of defending itself against any claim . . . or liability in connection with the

---

Cir. 1985); see also Elliott Assocs. v. J. Henry Schroder Bank & Trust Co., 838 F.2d 66, 71 (2d Cir. 1988) (it is "well-established" under New York law that the "duties of an indenture trustee are strictly defined and limited to the terms of the indenture."). "[C]ourts 'have consistently rejected the imposition of additional duties on the trustee.'" Magten Asset Mgmt. Corp. v. Bank of New York, 15 Misc. 3d 1132, *6, 841 N.Y.S.2d 219 (N.Y. Sup. Ct. 2007) (quoting Elliott Assocs., 838 F.2d at 71).

exercise or performance of any of its powers or duties" under the Bond Resolution, "except to the extent that such loss, damage, claim, liability or expense is due to its own gross negligence or willful misconduct." Id. The obligations of COFINA under section 804 of the Bond Resolution "survive the satisfaction and discharge of the [Existing Securities]" and "the termination for any reason of the [Bond] Resolution." Id.

14. BNYM's rights to payment from COFINA are secured and contractually senior to those of the Bondowners. COFINA's obligation to pay BNYM's reasonable compensation and fees and expenses is secured by "a lien prior to that of the Bondowners and other Beneficiaries . . . on any and all funds at any time held by [BNYM] under the [Bond] Resolution." Bond Resolution § 804. Additionally, the funds held by BNYM and any other moneys received or collected by BNYM after the occurrence of an event of default are applied to amounts due on the Existing Securities only "*after* making provision for the payment of any reasonable expenses of [BNYM] and its agents and attorneys" and for "the payment of the reasonable charges and expenses and liabilities incurred and advances made by [BNYM] and its agents and attorneys in the performance of their duties under the [Bond] Resolution." Id. § 1103.1 (emphasis added). COFINA's pledge of the COFINA Pledged Taxes as security for payment of the Bonds expressly is "subject to Section 804"—BNYM's rights to payment and charging lien—and other "provisions of the [Bond] Resolution permitting the application of the [COFINA Pledged Taxes] for the purposes and on the terms and conditions set forth in the [Bond] Resolution," including BNYM's priority of payment vis-à-vis the Bondowners in section 1103.1. Id. § 501.1.

B. THE AMBAC AND WHITEBOX ACTIONS

15. On April 12, 2017, Whitebox commenced a civil action against BNYM in the New York Supreme Court, County of New York, styled *Whitebox Multi-Strategy Partners,*

- 7 -

*L.P., et al., v. Bank of New York Mellon Corp.*, 651969/2017 (Sup. Ct. N.Y. County April 12, 2017) (the "Whitebox Action"). Whitebox asserted causes of action against BNYM for negligence, breach of trust, breach of fiduciary duty, waste, breach of contract, breach of the implied covenant of good faith and fair dealing, and a declaratory judgment. Each cause of action is premised upon allegations that an event of default occurred under the Bond Resolution prior to April 29, 2017, and that BNYM breached alleged duties to Whitebox by failing to declare such defaults and resign as trustee of the senior or the subordinate Existing Securities. The Whitebox Action was removed to the United States District Court for the Southern District of New York,[7] and venue was transferred to the Title III Court.[8] Pursuant to an order entered by the Title III Court in the Interpleader Action, the Whitebox Action is stayed pending further order of the Title III Court. See Adv. Proc. No. 17-133-LTS (D.P.R.), Doc. No. 110.

    16. On May 2, 2017, Ambac commenced a civil action against BNYM in the New York Supreme Court, County of New York, styled *Ambac Assurance Corp. v. The Bank of New York Mellon*, 652356/2017 (Sup. Ct. N.Y. May 2, 2017) (the "Ambac Action" and, together with the Whitebox Action, the "Lawsuits"). Ambac asserted causes of action against BNYM for breach of fiduciary duty, breach of contract, breach of the implied covenant of good faith and fair dealing, gross negligence / breach of trust, a declaratory judgment, and injunctive relief. Each cause of action is premised upon allegations that an event of default occurred under the Bond Resolution prior to April 29, 2017, and that BNYM breached alleged duties to Ambac by failing to declare such defaults and resign as trustee of the senior or the subordinate Existing Securities. The Ambac Action was removed to the United States District Court for the Southern District of

---

[7] See Whitebox Multi-Strategy Partners, L.P., et al. v. Bank of New York Mellon Corp., Adv. Proc. No. 17-00143-LTS (D.P.R.), Doc. No. 1.
[8] See id., Doc. No. 8.

New York,[9] after which Ambac filed a First Amended Complaint.[10]  BNYM has requested that venue be transferred to the Title III Court.[11]  Pursuant to an order entered by the Title III Court in the Interpleader Action, the Ambac Action is stayed pending further order of the Title III Court. See Adv. Proc. No. 17-133-LTS (D.P.R.), Doc. No. 110.

17. The Lawsuits, including any claims and causes of action for gross negligence, willful misconduct, or intentional fraud that are not deemed dismissed pursuant to the Plan, lack merit.  The Lawsuits reflect an improper attempt to extract a supplemental recovery from BNYM for the benefit of two disaffected claimants to the detriment of all other Beneficial Holders.

C. THE INTERPLEADER ACTION

18. On May 16, 2017, BNYM commenced the Interpleader Action seeking a court order determining competing claims to the COFINA Pledged Taxes held by BNYM in trust pursuant to the Bond Resolution (the "Disputed Funds") by certain Beneficial Holders, including Whitebox; insurers of the Existing Securities, including Ambac; and COFINA.  See Adv. Proc. No. 17-133-LTS (D.P.R.), Doc. No. 1.

19. In the first stage of the Interpleader Action, the Title III Court recognized the parties' competing claims, granted BNYM's request to interplead the Disputed Funds, and ordered BNYM to hold the Disputed Funds (net of BNYM's fees and expenses) on behalf of the parties ultimately determined by the Title III Court to be entitled to them.  Id., Doc. No. 110.

20. In the second stage of the Interpleader Action, parties fully briefed five cross-motions for summary judgment relating to (a) the defendants' respective interests in the

---

[9] See Ambac Assurance Corp. v. The Bank of New York Mellon, No. 17-3804-LTS (S.D.N.Y.), Doc. No. 2.
[10] See id., Doc. No. 8.
[11] See id., Doc. No. 9.

- 9 -

Disputed Funds and (b) whether a default or event of default occurred under the Bond Resolution in 2017 and, if so, when. See id., Doc. Nos. 431, 433, 435, 439, 440. BNYM's cross-motion sought an order granting partial summary judgment on the third and fourth causes of action of its complaint, in which BNYM requested declaratory relief against all defendants, including Whitebox and Ambac, relating to the existence or non-existence of a default or an event of default under the Bond Resolution in 2017. See id., Doc. No. 435.

21. On September 27, 2018, the Court entered an order terminating each of the cross-motions for summary judgment "for statistical purposes only" and "without prejudice to the rights and positions of all parties." Id., Doc. No. 518. The Court invited "any movant [to] file a motion requesting the reinstatement of its respective motion" on or after October 1, 2018. Id. On November 27, 2018, BNYM moved to reinstate its cross-motion for partial summary judgment because a decision on the merits would resolve live disputes between BNYM, on the one hand, and Whitebox and Ambac, on the other, that were not settled as part of the Title III Court-authorized mediation process and the resulting Plan Support Agreement. See id., Doc. No. 519, ¶ 6. BNYM's motion to reinstate its cross-motion for summary judgment remains pending.[12]

**D. PROOFS OF CLAIM**

22. BNYM filed timely master proofs of claim on behalf of itself and all Bondowners and Beneficial Holders for principal, interest, and other amounts due under the Existing Securities and related documents. See Proof of Claim Nos. 16760 and 16284. In

---

[12] The Title III Court's scheduling order in the Interpleader Action provides that BNYM's requests for declaratory relief and any counterclaims of Whitebox and Ambac against BNYM, to the extent not resolved through stage two, will be determined in the third stage of the Interpleader Action. See Adv. Proc. No. 17-133-LTS (D.P.R.), Doc. No. 154.

describing the nature and amount of BNYM's claims against COFINA, BNYM included in each master proof of claim a demand for payment of:

> All amounts due and becoming due to [BNYM] for services rendered under the [Bond] Resolution and reimbursement of all reasonable expenses, disbursements, advances made or incurred by [BNYM], its agents, and employees in connection with its powers and duties under the [Bond] Resolution, for indemnification, and for all other amounts due or becoming due to [BNYM].

Proof of Claim Nos. 16760, ¶ 18, and 16284, ¶ 19. As described above and in the proofs of claim, BNYM's claims are secured. See Bond Resolution §§ 501.1, 804, 1103.1; see also Act No. 91 of May 13, 2006 (as amended and supplemented from time to time and codified at P.R. Laws Ann. tit. 13, §§ 11a-16, the "COFINA Enabling Act"). BNYM's security interests were perfected automatically pursuant to the COFINA Enabling Act. See P.R. Laws Ann. tit. 13, § 13(b). In the alternative, UCC-1 financing statements and continuation statements were filed with the Department of State of the Commonwealth of Puerto Rico. See Proof of Claim Nos. 16760, ¶ 21, and 16284, ¶ 22. BNYM's lien prior to that of the Bondowners on any funds held under the Bond Resolution also is perfected by possession.

### E.  THE PLAN

23.  The Disclosure Statement provides that the Plan is the product of extensive negotiations among the Oversight Board, COFINA, AAFAF, the Insurance Parties, Bonistas del Patio, Inc., and certain institutional Beneficial Holders, through the Title III Court-authorized mediation process, that resulted in those parties' execution of the Plan Support Agreement and the Term Sheet. Disclosure Statement § I.B.1. at 5-6. BNYM is not a party to the Plan Support Agreement.

24.  Notwithstanding the settlements embodied in the Plan, the Plan preserves any claims of Whitebox and Ambac against BNYM for gross negligence, willful misconduct,

- 11 -

and intentional fraud.  BNYM understands that Whitebox and Ambac may pursue such claims following the Effective Date.  Because the Lawsuits are not being dismissed with prejudice, open disputes exist regarding payment pursuant to the Bond Resolution of fees and expenses incurred by BNYM after the Effective Date and in connection with defense of the Lawsuits.

25. Recognizing BNYM's secured claim for fees and expenses under the Bond Resolution, section 19.13 of the Plan provides for payment of the Trustee Claims and preservation of BNYM's Lien and priority rights.  Plan § 19.13.  BNYM's right to exercise its Lien and priority rights under section 19.13 of the Plan is subject to the further provision that "no distribution to be made pursuant to the Plan . . . may be withheld as a result of, or on account of, the claims, causes of action and damages being asserted, or which could have been asserted, in the Ambac Action and the Whitebox Actions . . . ."  Plan § 19.5.  With regard to this subset of Trustee Claims, the Plan provides that the Title III Court shall determine at the Confirmation Hearing:

> (a) what amount, if any, shall be either (i) withheld by the Disbursing Agent or BNYM as trustee for the Existing Securities or (ii) posted by Ambac and Whitebox as collateral for the reimbursement of fees and expenses which may be incurred by BNYM in connection with the defense of the Ambac Action and the Whitebox Actions, and (b) whether BNYM shall be reimbursed by Ambac and Whitebox for the incurrence of any such fees and expenses from either the holdback amount or collateral posted and referred to in the preceding subsection (a) on a current basis or upon entry of a Final Order in connection with the Ambac Action and the Whitebox Actions.

Plan § 19.5.[13]  This provision is intended to ensure that BNYM's rights under the Bond Resolution and applicable law with respect to payment of BNYM's fees and expenses and

---

[13] By agreement between BNYM and the Oversight Board, BNYM understands that the Oversight Board will incorporate certain modifications to sections 19.5 and 19.13 of the Plan, as well as other sections of the Plan, as part of a third amended Plan to be filed on or before January 9, 2019.

indemnification arising from or relating to the Lawsuits are determined by the Title III Court at the Confirmation Hearing and satisfied by Whitebox and Ambac, so that distributions to other Beneficial Holders are not affected by Whitebox's and Ambac's obstinance.

26. On December 19, 2018, the Title III Court granted the parties' urgent consensual motion to establish certain procedures regarding section 19.5 of the Plan. See generally Procedures Order. On January 2, 2019, BNYM must file "any brief/declarations supporting the amount BNYM contends should either be withheld from distributions to Whitebox and Ambac or posted by Whitebox and Ambac pursuant to Section 19.5 of the [Plan]." Id. ¶ 2. On the same date, Whitebox and Ambac must file "any brief/declarations supporting their position that no amounts are required either to be withheld from their distributions or posted by Whitebox and Ambac pursuant to the COFINA Plan or applicable documents and laws." Id. ¶ 3. The parties must file responsive papers by January 9, 2019. Id. ¶¶ 4-5. The hearing to consider whether any amounts should be withheld from distributions to Whitebox and Ambac or posted by Whitebox and Ambac in accordance with section 19.5 of the Plan and applicable documents and laws shall be held contemporaneously with the Confirmation Hearing. Id. at ¶ 7. In the event that the Title III Court determines that some amounts should be withheld or posted, evidence regarding the amounts to be so withheld or posted shall be presented at the Confirmation Hearing. Id.

## RESERVATION OF RIGHTS

27. Subject to certain modifications to the Plan that the Oversight Board has agreed to incorporate as part of a third amended Plan to be filed on or before January 9, 2019, BNYM does not object to confirmation of the Plan. BNYM files this reservation of rights to confirm that it is not waiving, but is expressly preserving, all rights, claims, defenses, and

arguments under the Bond Resolution and applicable law relating to Whitebox and Ambac and implementation of section 19.5 of the Plan.

28. BNYM hereby reserves all rights, claims, counterclaims, and defenses against Whitebox and Ambac, including any rights, claims, counterclaims, or defenses that have been or may be asserted in connection with section 19.5 of the Plan, the Lawsuits, the Interpleader Action, or any related litigation.

29. BNYM hereby reserves its rights under the Procedures Order to submit briefs, declarations, and responsive papers in accordance with the Procedures Order, and to present evidence, including through fact and expert witnesses, at the Confirmation Hearing, in connection with its rights as against Whitebox and Ambac under section 19.5 of the Plan.

30. Without waiving any other arguments, BNYM hereby reserves its right to argue through its submissions in accordance with the Procedures Order and at the Confirmation Hearing that any determination of BNYM's entitlement to collateral under section 19.5 of the Plan, whether through withholding funds from distributions to Whitebox and Ambac or by replacement collateral posted by Whitebox and Ambac, must satisfy BNYM's rights under the Bond Resolution and the applicable confirmation standards of Title III and the Bankruptcy Code with respect to the treatment of BNYM's secured claim against COFINA and must be feasible, mechanically and otherwise.[14]

31. Notwithstanding that BNYM is not objecting to confirmation of the Plan, BNYM hereby reserves its right to appeal from any order that determines the parties' rights and obligations under section 19.5 of the Plan, but solely as such order relates to BNYM's rights and

---

[14] For the holdback mechanism to satisfy the requirement of feasibility, the applicable parties must reach agreement on a feasible mechanism to permit any holdback ordered by the Title III Court to be made solely from distributions to Whitebox and Ambac, and Whitebox and Ambac must cooperate in good faith to implement that mechanism, before distributions are made to all Bondowners.

the obligations of Whitebox and Ambac under section 19.5 of the Plan.  BNYM does not contemplate that such appeal would impact the Effective Date of the Plan or distributions to any Beneficial Holders other than Whitebox and Ambac.

| | |
|---|---|
| Dated:  January 2, 2019<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>SEPULVADO, MALDONADO & COURET<br><br>By:    */s/ Albéniz Couret-Fuentes*<br>Elaine Maldonado-Matías<br>USDC-PR Bar No. 217309<br>Albéniz Couret-Fuentes<br>USDC-PR Bar No. 222207<br>José Javier Santos Mimoso<br>USDC-PR Bar No. 208207<br>304 Ponce de León Ave. – Suite 990<br>San Juan, PR 00918<br>Telephone: (787) 765-5656<br>Facsimile:  (787) 294-0073<br>Email: emaldonado@smclawpr.com<br>Email:  acouret@smclawpr.com<br>Email:  jsantos@smclawpr.com<br><br>REED SMITH LLP<br><br>*/s/ Eric A. Schaffer*<br>Eric A. Schaffer<br>Luke A. Sizemore<br>225 Fifth Avenue, Suite 1200<br>Pittsburgh, PA 15222<br>Telephone: (412) 288-3131<br>Facsimile :  (412) 288-3063<br>Email :  eschaffer@reedsmith.com<br>Email :  lsizemore@reedsmith.com<br><br>Kurt F. Gwynne<br>1201 N. Market Street, Suite 1500<br>Wilmington, DE 19801<br>Telephone: (302) 778-7550<br>Facsimile:  (302) 778-7575<br>Email: kgwynne@reedsmith.com<br><br>*Counsel to The Bank of New York Mellon,*<br>*as indenture trustee* |

- 15 -