Case:17-03283-LTS Doc#:4606-3 Filed:01/02/19 Entered:01/02/19 16:23:38 Desc: Exhibit 2 - Peter Hein Declaration Page 1 of 13

Exhibit 2

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

    Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA)

    Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

-----------------------------------------------------------------x

### DECLARATION OF PETER C. HEIN

Pursuant to 28 USC § 1746, I declare under penalty of perjury that the following statements are true and correct to the best of my knowledge and belief:

1.    I filed my Objection dated December 27, 2018 on December 28, 2018 (by sending it to the United States District Court for the District of Puerto Rico for delivery on December 28, 2018 during the business day). I filed a supplement dated December 31, 2018 that was sent by Federal Express to the United States District Court for the District of Puerto Rico, Clerk's

Office, for delivery during the business day on January 2, 2019. The factual statements in both my Objection and my Supplement are true and correct to the best of my knowledge and belief.

2. I referenced in my Objection and in the Supplement a number of documents that are in the public record, available on publicly accessible websites or that are available in a court docket in the District of Puerto Rico or in the Court of Appeals for the First Circuit. The documents that I reference can be located by conducting the Internet search that I specified in my Objection or Supplement or by going to the docket number or citation that I specified. For the Court's convenience I am attaching the following items as exhibits to this declaration:

**Trading Data for the Bonds**

3. Attached as Exhibit A is a screenshot from the publicly available EMMA website maintained by the Municipal Securities Rulemaking Board that lists coupon bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA") on June 30, 2010 as part of COFINA's Series 2010C bond issue. One can find a list of bonds for each Series issued by going to emma.msrb.org, then type in "Puerto Rico Sales Tax Financing" in the search box, then scroll down to a particular bond issue (here, I use Series 2010C). This displays what I printed out and marked as Exhibit A, which lists the Series 2010C coupon bonds.

4. To find historic day-by-day bond price and trading data, click on a CUSIP for a particular tranche. Here I started with CUSIP 74529JLM5, Series 2010C, 5.25%, maturing 8/1/2041, which were sold at a modest discount (thus the yield to maturity at par would be modestly higher than the 5.25% coupon).

5. By clicking on CUSIP 74529JLM5, one displays trade data beginning with the most recent trade. Here, I clicked on "last," so I could start looking at trade data on or about the date of issuance, here June 24, 2010 (which I believe is the trade date on a "when issued" basis, since the "dated date" for the bonds on Exhibit A is June 30, 2010).

6. Attached as Exhibit B are screenshots showing some of the trading data for the 5.25% coupon Series 2010C maturing 2041, CUSIP 74529JLM5. Trading price data is publicly

available on the EMMA website maintained by the Municipal Securities Rulemaking Bond. Type in the CUSIP, click on "Trade Activity," and scroll back in time for historical day-to-day price data for prior months or years, going back to the inception of the issuance.

7. The Series 2010C 5.25% coupon 2041 bonds began selling at the original offering price of 96.724% of par, but by the next trade date had moved in price above par (i.e., above 100). The pages in Exhibit B are arranged in chronological sequence, albeit the trades on each page are listed in reverse chronological order with the most recent trades appearing first.

8. As Exhibit B shows, the bonds traded up as high as 110.375% of par on 2/27/2012. The bonds continued to trade above 100 (par) for over three years after they were issued, through 7/03/2013. Even as of 6/02/2014, the bonds traded above 80% of par.

9. But toward the end of June 2015, then-Gov. Padilla (who took office in January 2013) publicly declared that Puerto Rico's debt was (supposedly) "not payable." *See, e.g.*, report in the *New York Times* on 6/28/2015. This drove down the bond price from about 60% of par on 6/23/2015 to about 35% of par on 7/31/2015.

10. By asserting Puerto Rico's debt was (supposedly) "not payable," Puerto Rico's officials provided the opportunity for opportunistic investors to buy bonds at steep discounts from par (*e.g.*, 29,015,000 bonds of this one CUSIP traded in the range of 36.75% of par to 39.65% of par on one day, August 5, 2015, alone).

11. The anticipation of, and then the filing of this Title III proceeding by the FOMB on May 9, 2017, prompted yet another decline in COFINA bond prices, giving opportunistic buyers more opportunities to buy bonds at very depressed prices. For example, the bond price dropped from about 35% of par on 4/4/2017 to about 23% of par or 24% of par by 5/12/2017, when 3,845,000 of bonds in this one CUSIP alone were traded.

12. As the price dropped further, opportunistic buyers were able to pick up bonds for less than 10% of par in December 2017. Millions of bonds of this single CUSIP were traded at prices ranging from about 8% of par to about 10% of par in this period.

13. The interests of opportunistic buyers who bought at prices as low as 8% of par differ from those of purchasers in the original offering like me (or purchasers in the aftermath of the original offering) at prices in the area of par (100). A projected recovery of 56.414% may result in a substantial profit to an opportunistic buyer of bonds at low, depressed prices – depressed by the acts of Puerto Rico and FOMB officials in furtherance of their efforts to avoid payment to the people (like me) to whom the bonds were originally sold.

14. I believe the projected recovery amount for subordinated bondholders referenced in the Disclosure Statement of 56.414% (plus 2% of par for certain favored parties) is overstated, and that the actual recovery amount – at least to individual investors in the 50 states – is in fact less than 56.414%. Nevertheless the opportunistic buyer at depressed prices in the wake of the efforts of Puerto Rico and FOMB to avoid payment may do very well. But the average individual investor like me who bought at or about par takes a huge loss under the proposed COFINA plan.

15. In effect, Puerto Rico and the opportunistic investors at depressed prices "split" the benefits to themselves under the COFINA plan at the expense of the individual investor: Puerto Rico (illegitimately and in violation of the U.S. Constitution) takes a large portion of the individual investor's property, and the opportunistic buyer enjoys a profit on its purchases made at depressed prices.

16. Attached as Exhibit C is trading data for the 5.375% coupon Series 2010C maturing 2036, CUSIP 74529JLH6, another CUSIP which shows the same trading pattern. This is likewise publicly accessible on EMMA. There are many individual CUSIPs, and the trading for all can be reviewed online.

**Official Statements – COFINA**

17. Attached as Exhibit D is a copy of the COFINA Series 2010C official statement. As noted in my Objection, the Official Statements are publicly available on the Municipal

Securities Rulemaking Board's EMMA website. One can simply type in a CUSIP (*e.g.*, 74529JLH6 for the 2010C 2036 maturity) and click on "Disclosure Documents."

18. As my Objection noted, the Official Statements represented that the bonds are secured by pledged sales tax revenues. *See, e.g.*, Exhibit D, Series 2010C OS at 4-16, 22-29 ("Pledged Sales Tax"; "Security for the Bonds"). Under "Security for the Bonds," COFINA described the "Commonwealth Non-Impairment Covenant," "Pursuant to Act 91," whereby the Commonwealth by statute "agrees and commits with any person" "which acquires the Series 2010C Bonds" – that would include me –

> that it will not limit or restrain the rights and powers conferred by Act 91 or the rights of the Corporation to comply with its agreements with holders of its Bonds until said Series 2010C Bonds, together with the interest thereon, are completely retired and that no amendment to Act 91 shall impair any obligation or commitment of the Corporation. (*Id.* at page 22.)

19. The Official Statements were explicit that no modification or amendment of the bond resolution or of the rights of the owners of bonds may permit a reduction in the principal amount (or compounded amount, if applicable) or the redemption price or the rate of interest "without the consent of each Bondholder affected thereby." *E.g.*, Exhibit D, 2010C OS (6/24/2010) at B-44.

20. As my Objection also noted, the subordinate COFINA bonds, at the time they were offered and purchased by me, were highly rated – as the Official Statement shows, the subordinate COFINA bonds at the time of sale were rated A+ (S&P), A1 (Moody's) and A+ (Fitch), which were solidly investment-grade ratings. *See* covers and "Ratings" sections of the Official Statements (p. 41 in the 2010C OS Exhibit D).

21. As stated in my Objection, the fact Puerto Rico's Secretary of Justice had opined on multiple occasions, over many years, at the time each series of COFINA securities was sold, as to the legality and constitutionality of the COFINA structure was repeatedly referenced in the

official statements issued by the Puerto Rico Sales Tax Financing Corporation. *See, e.g.*, Exhibit D, Series 2010C OS (6/24/2010) at 31-32.

22. The Official Statement for Series 2010C (Exhibit D), on pages 35 and 36, presented tables showing adequate to ample debt service coverage, depending upon the rate of growth in sales tax revenues. The table on page 35 assumed a 4% long-term nominal growth rate. This table projected sales tax revenues of $1,502,445,065 for the year ended 6/30/2018. The table on page 36 assumed a long-term nominal growth rate of 1.57%, projecting sales tax revenue of $1,243,116,551 for the year ended 6/30/2018.

23. As of 6/29/2018, the actual sales tax revenues collected for the fiscal year ended on June 30, 2018 were at least $1,640,047,000, and I believe actually a total of $1,956,047,000 when the amount of SUT collections that Puerto Rico describes in note 3 as flowing to the COFINA bank account are added back to the $1,640,042,000 number. This despite two hurricanes and the aftermath thereof in the fiscal year ended 6/30/18. Either number exceeds the projected numbers for the fiscal year ended June 30, 2018 in the Series 2010C OS under either the 4% or the 1.57% growth assumption table. *See* Exhibit R, FAFAA, Puerto Rico Department of Treasury Single account ("TSA") FY 2018 cash flow as of June 29, 2018, physical page 8 table. (One may add (i) "Actual YTD" line 3 "Sales and Use Tax" revenue of $1,640,047,000, which presumably includes amounts that went into the TSA account as well as perhaps some amounts that went into the COFINA bank account, plus (ii) the $316,000,000 that per note 3 (in the right margin) additionally flowed to the COFINA bank account.) As of the 2011 Series D bond issue, total annual senior and subordinated debt service in fiscal 2018 was projected at $736,935,534. *See* 2011D O.S. (Exhibit F) at 35. Plainly, COFINA has the capacity to service all of its debt.

24. Attached as Exhibit E is the COFINA Series 2011A Official Statement dated November 16, 2011 (referred to at places in my Objection).

25. Attached as Exhibit F is a copy of the Senior Series 2011D Official Statement dated December 1, 2011 (referred to at places in my Objection and herein).

-6-

### Bond Resolution

26. Attached as Exhibit G is the Puerto Rico Sales Tax Financing Corp., Amended and Restated Sales Tax Revenue Bond Resolution, adopted 7/13/2007, amended 6/10/2009, Section 1002, quoted in part in my Objection on page 3 note 3, appears on page 70.

### GDB website representations as to the security for the COFINA bonds

27. As noted in my Objection, the Government Development Bank for Puerto Rico "Investor Resources Information" web page for COFINA has continued to emphasize that the Dedicated Sales Tax Fund created by Puerto Rico legislation provided "Security" for the COFINA bonds. Attached as Exhibit H is a copy of the GDB website posting as of 7/24/2015. For the current webpage, type in "Government Development Bank for Puerto Rico – Tax-Exempt Securities by Issuer"; scroll down to "Puerto Rico Sales Tax Financing Corporation (COFINA)"; click and scroll down to "Security"; this is attached as Exhibit I.

### Puerto Rico and COFINA representations to investment community

28. Attached as Exhibit J is the transcript of the October 31, 2013 investor call hosted by the Government Development Bank for Puerto Rico and referred to by Puerto Rico as "Conference Call about COFINA Legal Opinions," October 31, 2013. The transcript is also available on the GDB's Investor Resources website.

### Admission by Oversight Board in brief before First Circuit

29. Attached as Exhibit K is FOMB's motion to stay the Lex Claims, LLC action against then Gov. Padilla, Civil No. 16-02374 (FAB), U.S. District Court for the District of Puerto Rico, Docket #211 (filed 3/15/2017). This annexes the Oversight Board's March 2017 First Circuit brief (discussed on pages 6-7 of my 12/27/2018 Objection) in which the Oversight Board itself acknowledged that the COFINA bonds are "secured by a statutory lien against alleged SUT revenue" and that "the COFINA enabling act makes clear that SUT income does not constitute a resource 'available' to the Commonwealth."

**New Bond Legislation "Statement of Motives"**

30. Attached as Exhibit L is Exhibit F to the Disclosure Statement which includes the "Statement of Motives" of the Puerto Rico Legislature in enacting the New Bond Legislation. This document is one of the many documents on the flash drive I received by mail with the Notice of Hearing on Confirmation on December 17, 2018. The New Bond Legislation – in this "Statement of Motives" – states that "[t]hese amendments will serve to release **the lien that holders of COFINA bonds currently have** over approximately $17.5 billion of previously pledged SUT revenues. These revenues will now be available for use by the Government of Puerto Rico …" and that "this legislation will allow for the restructuring of the COFINA debt." (emphasis added). This can also be found at Docket 4364-6 at 3 of 27 to 4 of 27.

31. So, on top of everything else, the Puerto Rico legislature even in 2018 admits that holders of COFINA bonds – like me – have a lien on pledged SUT revenues, and the Oversight Board told the First Circuit in 2017 that there was a statutory lien. It would seem quite clear that COFINA bondholders have a lien on the pledged SUT revenues.

**Official Statements for Puerto Rico GO Issues**

32. Attached as Exhibit M is Puerto Rico general obligation Series 2011D & E Official Statement dated June 29, 2011. My Objection referenced the fact that this official statement reflects the ratings in 2011 for Puerto Rico general obligation bonds, which were lower rated than the COFINA subordinate bonds, but still investment-grade, as is evident from the ratings specified in the upper right hand corner of the cover and with the ratings section on page 34.

33. The fact that COFINA had issued bonds "payable from **sales and use tax collections transferred to COFINA**" was clearly disclosed in the G.O. bond offering O.S. *See*, *e.g.*, p. 5 (emphasis added). The G.O. O.S. also explains Act 91 (on page 20) and that pursuant to Act 91 "the sales and use tax pledged to COFINA do not constitute 'available Commonwealth resources' of the Commonwealth for purposes of Section 2 and Section 8 of Article VI of the Constitution of Puerto Rico and are not available for use by the Secretary of the Treasury. As a

result, the portion of the Commonwealth sales and use tax allocated to COFINA is not available for the payment of principal of and interest on the Bonds." (Page 20).

34. The discussion of "Constitutional Debt Limitation" on page 21 further explains that

> In addition, the portion of the sales and use tax allocated to COFINA is also not included as internal revenues consistent with the legislation creating COFINA, which legislation transfers ownership of such portion of the sales and use tax to COFINA and provides that such portion is not 'available Commonwealth resources' under the above cited Constitutional provisions relating to public debt.

And the table of "Commonwealth of Puerto Rico Public Sector Debt" on page 27 makes clear that "Sales and Use Tax (COFINA) debt" is **not** part of the "Total General Fund Related Debt."

35. The G.O. debt had its own solid security under Puerto Rico's statutes and Constitution, as described on page 19. The fact that Puerto Rico authorities are failing to respect these laws and the Puerto Rico Constitution is a reason to require compliance with these laws and the Puerto Rico Constitution – not a reason to violate the property, contract and U.S. Constitution rights of COFINA bondholders.

**Claim No. 10701 and "Hard Case, Destabilizing Decision" analysis by Weiser-Varon and Kannel**

36. Attached as Exhibit N is my Claim No. 10701, which in turn annexes as Exhibit B an article entitled "Commentary Puerto Rico: Hard Case, Destabilizing Decision," Len Weiser-Varon and William Kannel, Bond Buyer, published 3/21/2018, annexed as Exhibit B (pp. 11, 13-16) to Claim 10701 filed 5/4/2018 (available on Prime Clerk website by typing in claim number).

**COFINA can pay so long as pledged tax revenues on which there is a statutory lien are not transferred to the Commonwealth**

37. Attached as Exhibit O is the 12/4/2018 Notice to Holders from BNY Mellon as COFINA Bond Trustee (available on EMMA; type in the bond CUSIP, click on "Disclosure

Document," scroll down to "Other event-based disclosures"), discussed in my Objection at 11; see also Objection at 28-29 and at paragraphs 22 to 23 above.

**The Commonwealth's ability to cover essential expenditures without taking property that does not belong to it**

38. Attached as Exhibit P is the Summary of Bank Account Balances for the Government of Puerto Rico and Its Instrumentalities, dated Nov. 30, 2018, reporting Puerto Rico and its instrumentalities recently reported bank account balances of $12.1 billion as of 10/31/2018. See page 4. (Go to "aafaf.pr.gov"; click on tab for "Publications & Reports"; click on "Summary of Bank Account Balances"; scroll down to "Summary of Account Balances"; click on "November 30, 2018 Summary" at 4 ("Executive Summary" page).)

39. Attached as Exhibit Q is a Puerto Rico Department of Treasury report in which it reported a Treasury Single Account balance as of 12/7/2018 of $3.6 billion. See p. 6. (Go to "aafaf.pr.gov"; click on "Publications & Reports"; click on "December 18, 2018 – Treasury Single Account … As of December 7, 2018," p. 6.)

40. Attached as Exhibit R is the FAFAA Puerto Rico Department of Treasury Single Account ("TSA") FY 2018 cash flow report as of June 29, 2018 (which on page 8 reflects SUT revenues through 6/29/18 as discussed above in paragraph 23).

41. Attached as Exhibit S is a presentation made in a Commonwealth of Puerto Rico investor webcast on October 15, 2013. On page 57, Puerto Rico was explicit that "any comparison of the public debt levels of Puerto Rico with the states should include state, local and federal debt" and that "If one factors in the federal debt load, PR would rank **last** in outstanding debt per capita among all US jurisdictions" (emphasis added), citing to US Bureau of the Census and the Government Development Bank for Puerto Rico as the source of the data. This is available by going to "Government Development Bank of Puerto Rico – Investor Presentations," on the Internet, scroll down to 10-15-2013, click on Presentations, go to page 57.

42. Attached as Exhibit T is PWC, "Puerto Rico – Individual Taxes on Income" which shows that the top marginal individual rate in Puerto Rico is 33%.

-10-

43. Attached as Exhibit U is Commonwealth of Puerto Rico Tax Reform Assessment Project, Executive Summary Oct. 31, 2014 (available on the Internet; type in "KPMG Commonwealth of Puerto Rico Tax Reform Assessment Project"). See page 7.

44. Attached hereto as Exhibit V is an "Office of the Administration and Transformation of Human Resources" Attendance Report as of June 30, 2018 prepared for the FOMB with the logo "FAFAA, Puerto Rico Fiscal Agency and Financial Advisory Authority." See physical p. 3. Available on the Internet at aafaf.pr.gov/assets/oatrh-informes-asistencia-june-30-2018.pdf.

45. Exhibit W is from the Bureau of Labor Statistics website, a page showing "Labor Force Statistics from the Current Population Survey," "household data annual averages," "47. Absences from work of employed full-time wage and salary workers by occupation and industry." Available on the Internet at www.bls.gov/cps/cpsaat47.htm.

46. Attached as Exhibit X is a report by Eva Llorens Velez, Caribbean Business, 8/13/2018, "Puerto Rico CFO to review contract salaries, focus on local resources," which states that "since the start of fiscal year 2018, the government signed more than 400 contracts for media and public relations services, totaling over $400 million."

47. Attached as Exhibit Y and Z are printouts of data from the Puerto Rico Comptroller, who maintains a database of contracts undertaken by Puerto Rican agencies. Type in "https://contratos.ocpr.pr/." Then select Service Category "Advertising, Representation or Artistic Services"; then put in the date range 7/1/18 to 1/1/19. The database shows **1,412** "Advertising, Representation or Artistic Services" contracts since July 1, 2018 alone.

48. Attached as Exhibit AA is a November 15, 2018 press release (posted on the AAFAF "other documents" section of its website) in which Puerto Rico's governor announced that Puerto Rico would again pay Christmas bonuses in 2018. These bonuses are reportedly in the amount of at least $85 million (according to Exhibit BB, attached, a report in Caribbean Business, 12/5/2018, "Puerto Rico Gov. says he didn't defy fiscal board by paying a Christmas bonus").

49. Attached as Exhibit CC is a report by *Reuters*, "Puerto Rico Governor signs bill for $2 billion on tax relief," 12/10/18 (on Internet) (reporting that Puerto Rico recently lowered taxes by about $2 billion).

50. Attached as Exhibit DD are excerpts from the 2019 World Bank "Doing Business" report (full text available on the Internet) that, on page 5, ranks Puerto Rico (U.S.) (treated for this purpose by the World Bank as an "economy" separate from the rest of the U.S.) as #64 in the world.

**Legislative history for 48 U.S.C. § 737**

51. Attached as Exhibit EE is 93 Cong. Rec. Part 8 at 10402, col. 3 (July 26, 1947) (available on the Internet).

52. Attached as Exhibit FF is Senate Report 422, 80th Cong., 1st Sess. at 3-4 (July 2, 1947) (stating that "Legislation in Puerto Rico has discriminated against nonresident American citizens," and that "The purpose of this addition is to assure that the citizens of the United States not residing in Puerto Rico will have the same treatment in Puerto Rico as local residents.")

**Materials in Court Docket**

53. I am not attaching the materials referenced in my 12/27/2018 Objection or 12/31/2018 Supplement to Objection that are in the court record already in instances where I have cited to such matters with an identification of the docket number. My belief is that the Court has ready access to items already on file in the court's docket and I did not want to burden the court with additional copies of voluminous materials already before the Court.

54. I realize that I failed to reference in my Supplement several letters from other subordinate bondholders that I request that the Court consider because – as noted in my Supplement at 14-15 – while I may not agree with everything these individuals have to say, I believe that these subordinate bondholders have a right to be heard on whether the COFINA plan should be confirmed. *See* Docket 3859, pages 16, 19 and 31 of 37 (8/8/18, 8/15/18 and 8/31/18

emails of Luis Abbott), pages 25 to 27 of 37 (8/27/18 letter from Seema Balwada), pages 28-29 of 37 (8/28/18 letter of Mark Elliott).

Dated: January 2, 2019

                                                                                                         _/s/ Peter C. Hein_
                                                                                                               Peter C. Hein