HEARING DATE: JAN. 16, 2019 AT 9:30 A.M. (ATLANTIC STANDARD TIME)
RESPONSE DEADLINE: JAN. 9, 2019 AT 4:00 P.M. (ATLANTIC STANDARD TIME)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re* <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.*, <br><br> Debtors.¹ | PROMESA <br> Title III <br><br><br> No. 17 BK 3283-LTS <br><br> (Jointly Administered) |
| *In re* <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"), <br><br> Debtor. | PROMESA <br> Title III <br><br><br> No. 17 BK 3284-LTS |

*Caption Continued on Following Page*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee,<br><br>                                  Plaintiff,<br>        v.<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION, WHITEBOX MULTI-STRATEGY PARTNERS, L.P.; WHITEBOX ASYMMETRIC PARTNERS, L.P.; WHITEBOX INSTITUTIONAL PARTNERS, L.P.; PANDORA SELECT PARTNERS, L.P.; AMBAC ASSURANCE CORPORATION; FRANKLIN ADVISERS, INC., and CEDE & CO., as nominee for The Depository Trust Company,<br><br>                                  Defendants. | Adv. Pro. No. 17-00133-LTS |

**AMENDED MEMORANDUM OF LAW OF WHITEBOX MULTI-STRATEGY PARTNERS, L.P. AND CERTAIN OF ITS AFFILIATES PURSUANT TO SECTION 19.5 OF COFINA'S AMENDED TITLE III PLAN OF ADJUSTMENT**

To the Honorable United States District Judge Laura Taylor Swain:

Whitebox Multi-Strategy Partners, L.P. and certain of its affiliates (collectively, "Whitebox") respectfully submit this amended memorandum pursuant to Section 19.5 of the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation (the "Plan").[2]

**PRELIMINARY STATEMENT**

1. Section 19.5 of the Plan provides that, at the Confirmation Hearing, this Court shall determine what amount, if any, shall be either withheld by The Bank of New York Mellon ("BNYM") or posted by Ambac Assurance Corporation ("Ambac") and Whitebox as security for the reimbursement of post-confirmation fees and expenses that may be incurred by

---

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

BNYM in connection with the defense of lawsuits brought against it by Ambac (the "Ambac Action") and Whitebox (the "Whitebox Action"), and whether BNYM shall be reimbursed for the incurrence of such fees and expenses on a current basis or upon entry of a final order in connection with the foregoing actions.[3]

2. BNYM may not withhold any amount from distribution to Whitebox under the Plan, or require the posting of a collateral to secure any purported obligation by Whitebox, for the simple reason that the Resolution (as defined below) expressly obligates *COFINA* — not Whitebox — to indemnify BNYM for certain liabilities and expenses. Whitebox never agreed to unconditionally assume COFINA's indemnity obligations under the Resolution. Indeed, a federal court recently rejected an identical request by BNYM to withhold distributions from bondholders that had sued BNYM for its willful misconduct, reasoning that "[t]he bondholders never agreed to assume any of [the borrower's indemnity] obligations" under the loan agreement. Becker v. Bank of N.Y. Mellon Tr. Co., N.A., 172 F. Supp. 3d 777, 801 (E.D. Pa. 2016).

3. Moreover, *even if* COFINA's indemnity obligations were somehow assumed by Whitebox, the plain language of the Resolution is clear that BNYM does not have

---

[3] Section 19.5 of the Plan reads in relevant part:

> [W]ith respect to Ambac and Whitebox and the Ambac Action and the Whitebox Actions, respectively, at the Confirmation Hearing, the Title III Court shall determine (a) what amount, if any, shall be either (i) withheld by the Disbursing Agent or BNYM as trustee for the Existing Securities or (ii) posted by Ambac and Whitebox as collateral for the reimbursement of fees and expenses which may be incurred by BNYM in connection with the defense of the Ambac Action and the Whitebox Actions, and (b) whether BNYM shall be reimbursed by Ambac and Whitebox for the incurrence of any such fees and expenses from either the holdback amount or collateral posted and referred to in the preceding subsection (a) on a current basis or upon entry of a Final Order in connection with the Ambac Action and the Whitebox Actions.

the right to be indemnified in respect of claims for gross negligence, willful misconduct or intentional fraud, which are the only claims that Whitebox will assert in the Whitebox Action post-confirmation. Likewise, nothing in Section 804 of the Resolution entitles BNYM to be reimbursed for those legal expenses on a current basis. Nor does BNYM's charging lien on COFINA's cash extend to indemnification of legal expenses in connection with the Whitebox Action.[4] As such, BNYM seeks more from Whitebox than it could possibly be entitled to from COFINA under Section 804 of the Resolution.

## BACKGROUND

4. On April 12, 2017, Whitebox filed a lawsuit against BNYM in the Supreme Court of New York.[5] The Whitebox Action asserts causes of action against BNYM for breach of fiduciary duty, breach of the COFINA Amended and Restated Sales Tax Revenue Bond Resolution (the "Resolution"), breach of the implied covenant of good faith and fair dealing, and gross negligence/breach of trust. The Whitebox Action alleges that BNYM, acting as the trustee for both Senior and Subordinate COFINA Bondholders, failed to protect the holders of Senior COFINA Bonds. Specifically, Whitebox contends that given the existence of numerous and continuous events of default beginning as early as September 2015, BNYM owed a duty to the Senior Bondholders to perform its obligations under the Resolution with due care and to avoid any conflicts of interest. However, mired in an intractable conflict of interest that it took no steps to eliminate, BNYM refused to acknowledge the obvious: That the interests of the

---

[4] This memorandum does not address whether the *amount* of security requested by BNYM is reasonable or appropriate. Pursuant to the Court's scheduling order entered on December 19, 2018 [ECF No. 4518 in Case No. 17-03283-LTS], Whitebox will address that issue in a subsequent memorandum.

[5] Having been removed to federal court subsequent to COFINA's Title III filing [see ECF Nos. 108 in Case No. 17-03284-LTS], the Whitebox Action has been stayed since May 30, 2017, pursuant to this Court's Interpleader Order [ECF No. 110 in Adv. Pro. No. 17-133-LTS]. As a result, no answer or other responsive pleading to the complaint have been filed.

- 3 -

Senior and Subordinate COFINA Bondholders had diverged. BNYM failed to appoint separate or co-trustees under the Resolution and, relatedly, failed to enforce numerous events of default and accelerate the COFINA Bonds, all despite demands from the Senior COFINA Bondholders (including Whitebox) to do so. As a result, BNYM breached its contractual, fiduciary, and extra-contractual duties to Whitebox, causing it enormous economic harm.

5. During mediated negotiations over the COFINA Plan Support Agreement and the Plan, Whitebox agreed with the Debtor to forgo its ordinary negligence-based claims against BNYM and maintain only claims for gross negligence, willful misconduct, and intentional fraud.[6] Whitebox agreed to do so in light of the fact that the Resolution requires COFINA to indemnify BNYM for claims sounding in ordinary negligence. In contrast, Section 804 of the Resolution does not obligate COFINA to indemnify BNYM for claims alleging gross negligence or willful misconduct, except for reimbursement of reasonable costs and expenses should BNYM prevail in defending against such claims. Nor does the Resolution provide for an advancement of BNYM's costs while such claims are pending against it.

6. The Plan contains two provisions reflecting the above state of affairs. First, the Litigation Dismissal at Section 2.1(c) of the Plan provides that, as of the Effective Date, the Whitebox Action and the Ambac Action are dismissed except for gross negligence, willful misconduct and intentional fraud. Second, Section 19.5 provides that, at the Confirmation Hearing, this Court shall determine what amount, if any, Whitebox and Ambac are required to bond (or what amount if any will be withheld from their distributions) to reimburse BNYM for its legal fees in the event it prevails in the Whitebox Action and Ambac Action, as well as

---

[6] Upon information and belief, Ambac also agreed to forgo its ordinary negligence-based claims against BNYM, which were asserted in the Ambac Action, and maintain only claims for gross negligence, willful misconduct, and intentional fraud.

- 4 -

whether BNYM is entitled to have its expenses paid on a current basis from such holdback or bond.

## ARGUMENT

### A. Whitebox Owes No Indemnity Obligations to BNYM

7. It is undisputed that Whitebox is not responsible for BNYM's legal fees in connection with the Whitebox Action under non-bankruptcy principles. The "American Rule" of apportioning legal fees to litigants provides that, absent a statute or agreement to the contrary, each party to a litigation is responsible for its own legal fees, no matter which party prevails. Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 491 (1989) ("[A]ttorney's fees are incidents of litigation and a prevailing party may not collect them from the loser unless an award is authorized by agreement between the parties, statute or court rule.").[7]

8. BNYM's right to indemnification in connection with the Whitebox Action – including for its legal fees and expenses – is specifically addressed by the Resolution. The second sentence of Section 804 — the "Indemnification Provision" — addresses indemnification for claims brought against BNYM, including those brought by Bondowners or their insurers:

> *The Corporation [COFINA]* further agrees to indemnify and save the Trustee harmless against any loss, liability or expenses including taxes . . . , arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses of defending itself against any claim (whether asserted by [COFINA] or any Bondowner or any other Person) or liability in connection with the exercise or performance of any of its powers or duties hereunder, or in connection with enforcing the provisions of this Section 804, except to the extent that such loss, damage, claim, liability or expense is due to its own gross negligence or willful misconduct.

---

[7] Section 1211 of the Resolution provides that "to the maximum extent permitted by applicable law, the rights, duties, privileges and immunities of the Trustee . . . shall be governed by the law of the jurisdiction in which its Corporate Trust Office is located," *i.e.*, New York.

- 5 -

Resolution § 804 (emphasis added).[8]

9. The Resolution thus expressly obligates *COFINA* — not Whitebox — to indemnify BNYM for certain liabilities and expenses. BNYM contends, however, that because the Plan grants COFINA a broad release of claims against it, including any indemnification responsibilities it may have to BNYM pursuant to the Resolution, Whitebox should effectively be forced to assume COFINA's indemnity obligations to BNYM. The Court should reject this argument because there is no basis to deviate from the parties' express agreement, as embodied in the Resolution.

10. Becker v. Bank of N.Y. Mellon, 172 F. Supp. 3d 777 (E.D. Pa. 2016), is instructive. There, the governing loan agreement provided that the borrower "shall indemnify [BNYM as indenture trustee] against any liabilities which it may incur in the exercise and performance of its powers and duties under the Indenture, provided that such liabilities are not caused by the gross negligence, or [willful] misconduct of [BNYM]." Id. at 790. Certain bondholders had sued BNYM for willful misconduct in connection with its failure to perfect security interests in the property securing the bonds. While the lawsuit was pending, BNYM received a cash distribution pursuant to the borrower's confirmed Chapter 11 plan. BNYM refused to distribute the funds to the bondholders, however, asserting a right to withhold its fees, expenses, and costs, including those incurred in the bondholder litigation. The court ruled for the bondholders, reasoning that pursuant to the "plain meaning" and "explicit language" of the loan agreement, "[t]he bondholders never agreed to assume any of [the borrower's] obligations." Id. at 801.

---

[8] The Resolution is available at ECF No. 441-3 in Adv. Pro. No. 17-133-LTS.

11. Here, too, Whitebox never agreed to assume COFINA's indemnity obligations under the Resolution. As such, BNYM has no right to withhold its fees, expenses, and costs incurred in the Whitebox Action from Whitebox's distributions, or require that Whitebox post a bond or other collateral to secure the foregoing purported obligations.

12. Additionally, even if COFINA's indemnity obligations could be imposed upon Whitebox post-confirmation — which they cannot — under no circumstances should Whitebox bear *greater* responsibility for BNYM's legal fees than COFINA bears under the Resolution. As demonstrated below, COFINA has no obligation under the Resolution to bond or otherwise set aside any funds for BNYM's legal fees, or to pay BNYM its legal fees on a current basis.

### B. The Resolution Does Not Provide For a Charging Lien In Connection With COFINA's Indemnity Obligations

13. Section 804 of the Resolution addresses "Compensation and Indemnification" of the Trustee. Two separate and distinct provisions are relevant. The first sentence of Section 804 — the "Compensation Provision" — declares that:

> [COFINA] shall pay to the Trustee from time to time reasonable compensation for all services rendered under the Resolution . . . , and also all reasonable expenses, charges, counsel fees and other disbursements, including those of its attorneys, agents, and employees, incurred in and about the performance of their powers and duties under the Resolution and the Trustee shall have a lien prior to that of the Bondowners and other Beneficiaries therefor on any and all funds at any time held by it under the Resolution.

Resolution § 804. This Compensation Provision, which grants a charging lien on the funds held by BNYM, addresses *compensation for services* that the Resolution requires BNYM to perform, and for reimbursement of expenses associated with BNYM's "powers and duties under the Resolution." It does *not* address indemnification for BNYM's own liability for claims brought

- 7 -

by parties to the Resolution, including COFINA, Bondowners, or their insurers, or expenses incurred by BNYM in defending itself from such claims.

14. The second sentence of Section 804 — the Indemnification Provision — addresses indemnification for claims brought against BNYM and, unlike the Compensation Provision, addresses claims brought by Bondowners or their insurers:

> [COFINA] further agrees to indemnify and save the Trustee harmless against any loss, liability or expenses including taxes . . . , arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses of defending itself against any claim (whether asserted by [COFINA] or any Bondowner or any other Person) or liability in connection with the exercise or performance of any of its powers or duties hereunder, or in connection with enforcing the provisions of this Section 804, except to the extent that such loss, damage, claim, liability or expense is due to its own gross negligence or willful misconduct.

Resolution § 804.

15. In short, the Compensation Provision — which explicitly provides for a lien — does not cover indemnification, while the Indemnification Provision nowhere mentions a lien. Further, the fact that the Indemnification Provision explicitly covers claims by Bondowners against BNYM indicates that the omission of such claims from the Compensation Provision is intentional. Accordingly, under the plain meaning of the Resolution BNYM does not have a charging lien for the costs of defending the Whitebox Action.[9] See Becker, 172 F. Supp. 3d at

---

[9] Nor does Section 1103 grant BNYM a lien with respect to COFINA's indemnity obligations. Section 1103 begins with the clause "Subject to Section 804" and is derivative of that Section, thus providing no additional right to indemnification. At most Section 1103 provides that, following an Event of Default (as defined in the Resolution), the Trustee's right to compensation under the Compensation Provision of Section 804 is preserved even "in the event that the funds held by the Trustee shall be insufficient for the payment of interest and principal . . . then due on the Bonds . . . ." Any right of BNYM to use available funds to reimburse itself is subject to the fact that, under Section 804, there is no lien for indemnification and there is no right to reimbursement with respect to costs that arose from BNYM's gross negligence or willful misconduct.

801 (BNYM did not have a charging lien on distributions to bondholders to secure the indemnification of BNYM's liabilities because the explicit language of the loan agreement did not provide for one); see also Bernkopf Goodman, LLP v. Sheepshead Landing LLC, No. 27062/2008, 2011 WL 7989431, at *3 (N.Y. Sup. Ct. June 27, 2011) ("The rules of construction advise that where one section contains specific language, in this case, to recover legal fees, and another similar section omits such language, specific language will not be read into a section into which it was not written."). The Resolution therefore does not provide for a charging lien in connection with COFINA's indemnity obligations.

### C. BNYM Is Not Entitled To Advancement of Legal Fees Prior To The Resolution of The Whitebox Action

16. As a matter of New York law (see n.7, supra), BNYM is not entitled to advancement of legal fees prior to the resolution of the Whitebox Action. It is well settled that "[o]utside the context of insurance policies, contractual defense obligations are generally treated like any other contractual provision," and, as such, "must be strictly construed to avoid inferring duties that the parties did not intend to create." Dresser-Rand Co. v. Ingresoll Rand Co., No. 14-CV-7222 (KPF), 2015 WL 4254033, at *7 (S.D.N.Y. July 14, 2015). Adhering to the foregoing principle, in UMB Bank, N.A. v. Sanofi, No. 15-CV-8725 (GBD), 2016 WL 4938000 (S.D.N.Y. Sept. 8, 2016), Judge Daniels rejected the plaintiff-trustee's demands for advancement, during litigation, of legal expenses, even though the governing agreement between the parties provided that the defendant was required "to reimburse the Trustee upon its request for all reasonable expenses, disbursements and advances incurred or made by the Trustee in accordance with any provision of this CVR Agreement." Id. at *4. Judge Daniels, applying New York law, reasoned that the above provision did "not obligate payment of expenses prior to the resolution of this action because the language of the CVR Agreement d[id] not waive the benefit of the American

- 9 -

Rule," under which waiver must be "unmistakably clear." Id. at *7 (quoting Hooper, 74 N.Y.2d at 492). Similarly, in Rishell v. Medical Card System, Inc., Judge Besosa applied Puerto Rico law to deny a former corporate officer advancement of legal fees where the employment agreement and corporate bylaws provided for indemnification and advancement for current officers, but only indemnification for former corporate officers. 925 F. Supp. 2d 211, 217-18 (D.P.R. 2013).

17. Likewise, in Becker, BNYM demanded the payment of its costs in the pending bondholder litigation before distributing funds to the bondholders under a Chapter 11 plan. 172 F. Supp. 3d at 801. The court rejected BNYM's position, reasoning that any purported indemnification right must be supported through explicit and unequivocal language in the indenture:

> It is well settled that both an agreement to indemnify another for his own negligence, and an agreement to indemnify another for his contractual liability to a third party, "must be stated plainly, in clear and unequivocal language." The agreements in this case in no way express in unequivocal terms any intent or purpose on the part of the bondholders to indemnify the Indenture Trustee for loss resulting from its negligence or misconduct. Instead, the Indenture clearly and unequivocally states that the Indenture Trustee can be held liable for "its own [willful] misconduct or negligence."

Id. (internal citations omitted).

18. The Resolution's indemnification provision contains no explicit right to advancement. Absent any unequivocally clear language to the contrary, the Resolution requires that BNYM bear its own costs in defending the Whitebox Action as it incurs them, subject to an indemnification claim against COFINA (unsupported by a lien) — to the extent such claim is not released under the Plan — should it prevail in defending these claims. There is therefore no

- 10 -

contractual basis to withhold distributions from Whitebox or to require Whitebox to bond or advance BNYM's legal fees in connection with the Whitebox Action.

19. Nor is there any equitable basis to withhold distributions from or require Whitebox to bond or advance BNYM's legal fees. Under the Resolution, BNYM is only entitled to reimbursement of such fees from COFINA if it prevails on the underlying claim, and only after a determination that its claimed legal fees were reasonable. The relief BNYM seeks presupposes such a result and determination. Indeed, permitting BNYM to withhold Whitebox's distributions while the Whitebox Action is pending "would contradict the fundamental principle that no one shall be permitted to take advantage of his own wrong by allowing it to avoid one of the costs imposed by intentional tort liability — i.e., the costs of defending itself against these claims." Barbagallo v. Marcum LLP, No. 11-CV-1358, 2012 WL 1664238, at * 5 (E.D.N.Y. May 11, 2012). The Court should deny BNYM's request for this additional reason.

## CONCLUSION

In light of the foregoing, the Court should deny BNYM's request for security in connection with the Whitebox Action in its entirety.

Dated: January 8, 2019
       San Juan, Puerto Rico

| KASOWITZ BENSON TORRES LLP | ARROYO & RIOS LAW OFFICES, P.S.C. |
|---|---|
| By: /s/ *Andrew K. Glenn* <br> Andrew K. Glenn <br> (admitted *pro hac vice*) <br> Shai Schmidt <br> (admitted *pro hac vice*) <br> 1633 Broadway <br> New York, New York 10019 <br> Telephone: (212) 506-1700 <br> Facsimile: (212) 506-1800 <br> Email: aglenn@kasowitz.com <br> sschmidt@kasowitz.com | By: /s/ *Moraima S. Ríos Robles* <br> Moraima S. Ríos Robles <br> (USDC-PR Bar No. 224912) <br> 1353 Ave. Luis Vigoreaux <br> Guaynabo, P.R. 00966 <br> Telephone: (787) 522-8080 <br> Facsimile: (787) 523-5696 <br> Email: mrios@arroyorioslaw.com |

*Attorneys for Whitebox Multi-Strategy Partners, L.P.*
*and its Above-Captioned Affiliates*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Moraima S. Ríos Robles*
Moraima S. Ríos Robles
(USDC-PR Bar No. 224912)
1353 Ave. Luis Vigoreaux
Guaynabo, P.R. 00966
Telephone: (787) 522-8080
Facsimile: (787) 523-5696
Email:  mrios@arroyorioslaw.com