UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------x

In re:                                                   PROMESA
                                                         Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of                              No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO,                         (Jointly Administered)
et al.,

     Debtors.[1]

--------------------------------------------------------x

NOTICE OF CORRESPONDENCE RECEIVED BY THE COURT

     The Court has received and reviewed the attached correspondence, described

below, from interested persons in the above-captioned cases. Although the Court cannot respond

individually to all of those who have expressed their thoughts or concerns, the Court is deeply

mindful of the impact of the fiscal crisis on lives, institutions, and expectations, and of the

importance of the issues that are raised in these unprecedented cases.

1.     Email dated December 27, 2018 from Eduardo Perez
2.     Email dated December 27, 2018 from Jennifer Lamont
3.     Email dated December 27, 2018 from Joseph Pousada Arbona
4.     Email dated December 27, 2018 from Larkin E. Babbitt

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number and the last four (4) digits of each Debtor's federal tax identification number, as
applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS)
(Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation
("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID:
8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No.
17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System
of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK
3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power
Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax
ID: 3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software
limitations).

5.      Email dated December 28, 2018 from Arthur Samodovitz
6.      Email dated December 28, 2018 from Melvin Feldman
7.      Email dated December 28, 2018 from Nellie Zambrana Ortiz
8.      Email dated December 28, 2018 from Nylia Rodriguez
9.      Email dated December 29, 2018 from Arthur Samodovitz
10.     Email dated December 30, 2018 from Adam Jacobs
11.     Email dated December 30, 2018 from Michael B. George
12.     Email dated December 31, 2018 from Anita Winkis
13.     Email dated December 31, 2018 from Anonymous
14.     Email dated December 31, 2018 from Arthur Samodovitz
15.     Email dated December 31, 2018 from Jose A. Latorre
16.     Email dated January 1, 2018 from Lucilla Fuller Marvel
17.     Email dated January 1, 2018 from Shyama Orum
18.     Email dated January 2, 2018 from Arthur Samodovitz
19.     Email dated January 3, 2018 from Ana Llompart
20.     Email dated January 4, 2018 from Jennifer Maldonado
21.     Email dated January 4, 2018 from Russell Stoever
22.     Email dated January 5, 2018 from Eduardo Melendez
23.     Email dated January 6, 2018 from Ricardo Acosta

Dated:  January 9, 2019



**Cofina agreement**

███████████████ to: swaindprcorresp@nysd.uscourts.gov          12/27/2018 08:10 AM

From:  ██████████████████████

To:  "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>

█████████████████████████████

JUDGE TAYLOR SWAIN's EMAIL: swaindprcorresp@nysd.uscourts.gov
cc:██████████████████████████
Subject:
REJECT the agreement between COFINA and the FOMB on Jan. 16

Email Content:
Dear Honorable Judge Taylor Swain,

I am Eduardo  Perez . I write to you because I am very disappointed and worried about the actions that the Financial Oversight and Management Board (FOMB) is taking to address the fiscal crisis. The agreement made with COFINA bondholders will drag Puerto Rico into another never-ending economic crisis that will lead Puerto Rico into another debt default and will only cause more harsh austerity measures, cuts in public services and pensions. The measures dictated by the FOMB have been implemented in a disorganized, illogical, and irresponsible manner so far, endangering the safety of citizens, limiting thousands of Puerto Ricans from a real opportunity to get affordable education and healthcare, and limiting the capacity of people to become and remain employed in the island.

Instead of just moving forward with this unjust and anti-constitutional agreement, we request a fair renegotiation of the agreements that is legal, fair and not burdensome for the country. The weak attempts of the board to fake an audit process are not going to work on us; we know this debt has been imposed on Puerto Rico without a due process of a real comprehensive audit that allows us to really know how the debt was issued and to ensure that is it paid justly and legally. Please do what is right and rule against this agreement on January 16th's 2019 hearing.

Sincerely,

Eduardo Perez

Mayaguez Puerto Rico,00680



**Reject COFINA**
Jennifer Lamont    to: swaindprcorresp                    12/27/2018 02:45 PM

From:    ████████████████████████████████

To:    swaindprcorresp@nysd.uscourts.gov

Dear Honorable Judge Taylor Swain,
I am Jennifer Lamont. I am writing to you because I am incredibly disappointed
and worried about the actions that the Financial Oversight and Management
Board (FOMB) is taking to address the fiscal crisis. The agreement made with
COFINA bondholders will drag Puerto Rico into another never-ending economic
crisis that will lead Puerto Rico into another debt default and will only
cause more harsh austerity measures, cuts in public services and pensions. We
request a fair renegotiation of the agreements that is legal, fair and not
burdensome for the country. We know this debt has been imposed on Puerto Rico
without a due process of a real comprehensive audit that allows us to really
know how the debt was issued and to ensure that is it paid justly and legally.
Please do what is right and rule against this agreement on January 16th's 2019
hearing. Reject the COFINA agreement.

Sincerely, Jennifer Lamont

**Puerto Rico**
Joseph Pousada    to: swaindprcorresp                        12/27/2018 06:27 PM
Cc: diasporaenresistencia

From: ████████████████████████████
To:   swaindprcorresp@nysd.uscourts.gov
Cc:   ████████████████████

Dear Honorable Judge Taylor Swain,


Good Day. I write to you because I am very disappointed and worried about the actions that the
Financial Oversight and Management Board (FOMB) is taking to address the fiscal crisis. The
agreement made with COFINA bondholders will drag Puerto Rico into another never-ending
economic crisis that will lead Puerto Rico into another debt default and will only cause more
harsh austerity measures, cuts in public services and pensions. We request a fair renegotiation of
the agreements that is legal, fair and not burdensome for the country. We know this debt has
been imposed on Puerto Rico without a due process of a real comprehensive audit that allows us
to really know how the debt was issued and to ensure that is it paid justly and legally. Please do
what is right and rule against this agreement on January 16th's 2019 hearing. I thank you for your
time and service.
Sincerely,

Joseph Pousada Arbona

### COFINA ruling

Larkin B.     to: swaindprcorresp                                   12/27/2018 03:16 PM
Cc:  diasporaenresistencia

From: ████████████████
To:     swaindprcorresp@nysd.uscourts.gov
Cc:     ████████████████

Dear Honorable Judge Taylor Swain,
I am a student activist, living in the diaspora. I write to you because I am
very disappointed and worried about the actions that the Financial Oversight
and Management Board (FOMB) is taking to address the fiscal crisis. The
agreement made with COFINA bondholders will drag Puerto Rico into another
never-ending economic crisis that will lead Puerto Rico into another debt
default and will only cause more harsh austerity measures, cuts in public
services and pensions. We request a fair renegotiation of the agreements that
is legal, fair and not burdensome for the country. We know this debt has been
imposed on Puerto Rico without a due process of a real comprehensive audit
that allows us to really know how the debt was issued and to ensure that is it
paid justly and legally. Please do what is right and rule against this
agreement on January 16th's 2019 hearing.
Sincerely,

Larkin E. Babbitt



**Misleading statements in Cofina Plan of Adjustment**
<span style="color:orange">arthursail</span>   to: 'swaindprcorresp@nysd.uscourts.gov'                    12/28/2018 10:06 AM

From:     ████████████

To:       "'swaindprcorresp@nysd.uscourts.gov'" <swaindprcorresp@nysd.uscourts.gov>

Judge Swain,  I think the recovery rate for Jr. Cofina bonds under the existing Plan of Adjustment is only 43%, not 56.4% as stated.  My analysis follows:

## Possible Misleading Statements in the Cofina Restructuring Proposal (called the "Plan of Adjustment")

There may be misleading statements in the Cofina Plan of Adjustment filed 11/19/2018:

1.  The Plan of Adjustment states that the Jr. Cofina Bondholders will recover 56.4%:  "Class 5 – Junior Cofina Bond holders. … Projected Recovery under the Plant of Adjustment – No Taxable Election: **56.4%**."  (The media published this recovery rate as well.)

    But, consider the example in Table 2B of the Plan of Adjustment, where the original Jr. Cofina bond had a $50,000 principal.  Under the Plan of Adjustment, this bond will be replaced with an interest bearing bond with $21,112 principal and a capital appreciation bond with $7,000 starting principal for a total of $28,112 principal.  (This is equal to about 56.4% X $50,000.)  However, the average interest rate for the replacement bonds will only be about 4.6% whereas the original bond had an interest rate between 5% and 6% depending on the original bond that is being replaced.  This is about a 14% reduction on average in the *value*  of the replacement bond.  So, **this appears to reduce the recovery to about 48% on average for the Jr. Cofina Bonds.**  (There is a similar, apparent reduction in the *value*  of the replacement bonds for the original Sr. Cofina bonds down to about 81% recovery.)

2.  Also, it does not appear that the unpaid interest due on August 1, 2017 and February 1, 2018 was included in the calculation of the 56.4% recovery for the Jr. Cofina bonds.  It also does not appear that any of this interest will ever be paid to the bondholders.  **If this unpaid interest was not included in the 56.4% recovery calculation and will never be paid, this will further reduce the recovery to about 43% for the Jr. Cofina bonds.**  (There would be a similar reduction in the *value*  of the replacement bonds for the

original Sr. Cofina bonds down to about 76% recovery.)

**Disclaimer:  I am not an accountant, and the Plan of Adjustment is complex, so I cannot confirm the foregoing analysis and resultant recovery estimates.**  However, the foregoing analysis is sufficiently transparent and logical to warrant investigation by independent experts, and delay of the vote until this investigation is complete.

Arthur Samodovitz, Cofina bondholder



Possible Misleading Statements in Cofina Restructuring ProposalV3.docx

**Fw: PUERTO RICO ELECTIONS**
Melvin Feldman    to: swaindprcorresp@nysd.uscourts.gov                12/28/2018 11:02 AM

From:
To:            "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>

Honorable Judge L. Swain-

I am a 72 year old investor who is about to retire and a strong believer of contract law.

Before investing in Puerto Rico Sales Tax subordinate bonds I carefully read the official statement.  I am confident that you are more familiar with this official statement then I might be as a result of the enormous task you have been chosen to rule on.

My purpose in this communication is to point out that the official statement clearly states on several occasions that sales tax collections are deposited in the dedicated tax fund.  These funds are not "available resources" to the commonwealth.   As a result if the commonwealth believes all funds are their property they should seek a legal opinion that would defend this belief.  Instead they are attempting to make a "deal" rather than seeking a legal interpretation of the law.

I am highlighting and enclosing the official statement to attempt to point out what I believe are the facts:

On page 2 of the official statement, Act 91 established the dedicated tax fund which states is separate and apart from the commonwealth's general fund.  Act 91 requires certain amounts to be deposited in the dedicated sales tax fund each fiscal year.  There is a formula referred to as the 2.75% formula.  In each fiscal year the first collection of sales tax revenue are applied to fund the pledged sales tax base amount.   This amount increases each year in the dedicated sales tax fund, to be used for payment on the sales tax bonds.  Act 91 requires that each year the sales tax collections be deposited in the dedicated sales tax fund before the funds due to the general fund (the commonwealth's share).  Under Act 91, the monies on deposit may be used for payment of the corporations bonds.

On page 5 (source of payment and security for the bonds) it clearly states there is a security interest granted under the resolution in the property consisting primarily of the pledged sales tax.

On page 24 (commonwealth non-impairment) the non-impairment covenant states the pursuant to Act 91 sources of payment or liquidity for the bonds will not be limited or restrained by the commonwealth under the rights and powers conferred by Act 91, until the holders of the bonds together with the interest are completely retired and no amendment to Act 91 shall impair any obligation or commitment of the corporation.  In addition on page 24 it clearly states in the last  paragraph that any substitution of any security for the pledged sales tax shall not qualify as "like or comparable security" unless the bond trustee has been provided with written confirmation of bond ratings, written opinions of secretary of justice, national recognized bond council and Puerto Rico counsel expert in public finance matters each concluding that the Puerto Rico Supreme Court if presented with the issue would conclude that

substituted  assets and revenues have been validly imposed by law and have been validly transferred to the Puerto Rico sales tax finance corporation and <u>DO NOT CONSTITUTE</u> "available resources" of the commonwealth for purposes of section 2 and section 8 of article VI of the constitution of Puerto Rico, nor shall they be available for use by the secretary of the treasury of the commonwealth.  Also on page 35 of the official statement it states that the motive of Act 56 which amended Act 91, that it is the intent of the legislative assembly that the monies deposited in the dedicated sales tax fund not constitute available resources of the commonwealth for any purpose including for the purpose set forth in the constitution debt priority provisions act.

Lastly on page 35, the last paragraph states on the date of issuance of first subordinate series 2011 bonds the secretary of justice of the commonwealth who acts as attorney general for the commonwealth stated his opinion that Act 91 and each of the statutes amending  Act 91 were validly enacted by the commonwealth and are in full force and effect and once again stated the dedicated sales tax fund, the funds on deposit and the pledged sales tax are not available for use by the secretary of the treasury.  In connection with the issuance of each series of outstanding senior and first subordinate bonds the then secretary of justice issued an opinion reaching the same conclusion.

To conclude it clearly states that sales tax funds are not an available resource to the commonwealth. The commonwealth issued sales tax bonds because the security and the ratings at the time were far superior to the commonwealths general obligation bond.  As a result they could access capital at the far lower cost (commonwealth gets their applicable share of sales tax revenues).

Assuming all the facts presented in the official statement are facts of law and bond council and underwriters presented these facts in a truthful manner, if a sales tax bond holder gets anything less than 100% of their investment plus interest then how in good faith can an investor rely on contract law, a prospectus or an official statement when making an investment.

The way I see it the dispute between commonwealth general obligation holder and sales tax investors is occurring because commonwealth general obligation holders are reluctant to litigate on an issue that they know they have little to no chance  of winning on a "clawback" that doesn't exist.  As a result they are attempting to make "a deal", whereby an increase in the percentage of sales tax revenue would be transferred to general obligation bond holders to increase their value.  The real issue here is not the deal but to uphold contract law which will result in an investor feeling confident that what was put in place in a prospectus  or official  statement will be adhered to .


Sincerely,

Melvin Feldman



**REJECT the agreement between COFINA and the FOMB on Jan . 16**

Nellie J Zambrana Ortiz    to: swaindprcorresp                    12/28/2018 01:20 PM
Cc: diasporaenresistencia

From:    ████████████████████████████████
To:      swaindprcorresp@nysd.uscourts.gov
Cc:      ██████████████████████

JUDGE TAYLOR SWAIN's EMAIL:

Dear Honorable Judge Taylor Swain,

I am Dr. Nellie Zambrana Ortiz. I write to you because I am very disappointed and worried about
the actions that the Financial Oversight and Management Board (FOMB) is taking to address
the fiscal crisis. The agreement made with COFINA bondholders will drag Puerto Rico into
another never-ending economic crisis that will lead Puerto Rico into another debt default and
will only cause more harsh austerity measures, cuts in public services and pensions. The
measures dictated by the FOMB have been implemented in a disorganized, illogical, and
irresponsible manner so far, endangering the safety of citizens, limiting thousands of Puerto
Ricans from a real opportunity to get affordable education and healthcare, and limiting the
capacity of people to become and remain employed in the island.

Instead of just moving forward with this unjust and anti-constitutional agreement, we request a
fair renegotiation of the agreements that is legal, fair and not burdensome for the country. The
weak attempts of the board to fake an audit process are not going to work on us; we know this
debt has been imposed on Puerto Rico without a due process of a real comprehensive audit
that allows us to really know how the debt was issued and to ensure that is it paid justly and
legally. Please do what is right and rule against this agreement on January 16th's 2019 hearing.

Sincerely,
**Nellie Zambrana Ortiz, Ph.D.**



*"Sin emoción no hay curiosidad, no hay atención, no hay aprendizaje, no hay memoria... y somos memoria."*  razo, 2011

**This message contains confidential information and is intended only for the individual or group named. If you are not the
named addressee you should not disseminate, distribute or copy this e-mail. Please notify the sender immediately by
e-mail if you have received this message by mistake and delete it from your system. E-mail transmission cannot be
guaranteed to be safe or error-free as information could be intercepted, corrupted, lost, destroyed, arrive late or
incomplete, or contain viruses. The sender therefore does not accept liability for any errors or omissions in the contents of
this message, which arise as a result of e-mail transmission.**



**NYILA RODRIGUEZ**   to: swaindprcorresp                          12/28/2018 03:32 PM

From:   ███████████████

To:     swaindprcorresp@nysd.uscourts.gov

I STAND WITH THE PUERTO RICAN PEOPLE ON THEIR STRUGGLE, SO I ASK JUDGE
SWAIN TO REJECT COFINA AGREEMENT

IF THIS IS PASSED JANUARY 16 THIS WILL BRING OUR ISLAND INTO ANOTHER
ECONOMIC CRISIS THAT WILL LEAD TO ANOTHER DEBT DEFAULT which means
harsher cuts into public services and pensions..... WE THE DIASPORA STAND WITH OUR
ISLAND AGAINST this agreement.

☐☐☐☐



**Cofina Plan of Adjustment**
arthursail   to: 'swaindprcorresp@nysd.uscourts.gov'                    12/29/2018 11:46 PM

From:
To:            "'swaindprcorresp@nysd.uscourts.gov'" <swaindprcorresp@nysd.uscourts.gov>

I have prepared a substitute analysis of the Cofina Plan of Adjustment below and attached.
Please disregard (and discard) my previous analysis sent on 12/28/2018.

<u>Material Omissions and Misleading Statements in</u>
<u>the Cofina Plan of Adjustment filed 11/19/2018</u>

**Because of the material omissions in the Plan of Adjustment noted
below and the difficulty in calculating actual recovery rates, this letter
is a substitute for my previous letter entitled "Possible Misleading
Statements in the Cofina Restructuring Proposal" sent on 12/28/2018.
My previous letter should be disregarded.**

1.  The Plan of Adjustment states, "Class 5 – Junior Cofina Bond holders. …
Projected Recovery under the Plant of Adjustment – No Taxable Election:
56.4**%**."  (The media also published this recovery rate so presumably the
voters are relying on it.)

There is one set of (nontaxable) replacement bonds for all Jr. Cofina
bonds.  The average interest rate for the (nontaxable) set of replacement
bonds will be 4.85% with an average life span of 28.2 years according to
part 18 of the Plan of Adjustment.  According to the Plan of Adjustment and
its Table 2B, $50,000 of original Jr. Cofina bonds will be replaced with
$28,112 of replacement bonds, (which is about 56.4% of the original
principal).

However, the actual recovery rate also depends on the interest rate and
maturity date of the original bonds, and this varies.  The Plan of Adjustment
states that the original Jr. Cofina bonds had fixed interest rates in the range
of 3.63% to 7.48% (depending in part on the maturity date).  For those
original Jr. Cofina bonds with a greater interest rate than 4.85%, the actual
recovery rate will be reduced to less than 56.4% because of the reduction
in the interest rate.  The original Jr. Cofina bonds with the lower interest
rates than 4.85% were likely shorter term, and the increased interest rates
of the replacement bonds will likely be offset by the longer, 28.2 yr maturity
of the replacement bonds.

The following is a real example for original Jr. Cofina bond CUSIP 74529JKM6 which has a 5.5% interest rate and 08/01/2041 maturity date (i.e. about 22 1/2 years remaining).  The first step in the Plan of Adjustment is to replace $50,000 of CUSIP 74529JKM6 with $28,112 of the 4.85% replacement bonds due in 28.2 years on average.  That reduces the principal to 56.4% of the original principal.  But, the replacement bonds have a significantly lower interest rate and longer average maturity date than CUSIP 74529JKM6 which further reduces the actual recovery rate.

The Plan of Adjustment should have reported the actual recovery rate for each original Jr. Cofina bond, because it varies substantially as explained above and is too difficult for most people to calculate.  These are material omissions.  Also, the published recovery rate of 56.4% is misleading because the actual recovery rate varies substantially based on the interest rate and maturity date of each original Jr. Cofina bond.

The Plan of Adjustment also states, "Estimated Percentage Recovery – No Taxable Election:  93.015%."  (The media also published this recovery rate so presumably the voters are relying on it.)

There is one set of (nontaxable) replacement bonds for all Sr. Cofina bonds.  The average interest rate for the set of (nontaxable) replacement bonds will be 4.85% with an average life span of 28.2 years according to part 18 of the Plan of Adjustment.  The Plan of Adjustment also discloses that the original Sr. Cofina bonds had fixed interest rates in the range of 3.8% to 6.35% (depending on the maturity date).  This range of interest rates is lower than that of the original Jr. Cofina bonds.  For those original Sr. Cofina bonds with a greater interest rate than 4.85%, the recovery rate will be reduced to less than 93.015% because of the lower interest rate of the replacement bonds.  The original Sr. Cofina bonds with lower interest rates than 4.85% were likely shorter term, and the increased interest rates of the replacement bonds will likely be offset by the longer, 28.2 yr maturity of the replacement bonds.

The Plan of Adjustment should have reported the actual recovery rate for each original Sr. Cofina bond, because it varies substantially as explained above and is too difficult for most people to calculate.  These are material omissions.  Also, the published recovery rate of 93.015% for the Sr. Cofina

bonds is misleading because it varies substantially based on the interest rate and maturity date of each original Sr. Cofina bond.

2. Also, it does not appear that the unpaid interest due on August 1, 2017 and February 1, 2018 was included in the calculation of the stated 56.4% recovery for the Jr. Cofina bonds and the stated 93.0153% recovery for the Sr. Cofina bonds.  It also does not appear that any of this interest will ever be paid to either the Jr. Cofina bond holders or the Sr. Cofina bondholders. **If this unpaid interest was not included in the 56.4% recovery calculation for the Jr. Cofina bonds and will never be paid, this will further reduce the recovery rate by 5% or more for the Jr. Cofina bonds.  If this unpaid interest was not included in the 93.015% recovery calculation for Sr. Cofina bonds and will never be paid, this will further reduce the recovery rate by about 5% for the Sr. Cofina bonds.**

The voting on the Plan of Adjustment should be delayed until the material omissions are supplied and the actual recovery rate for each Jr. Cofina bond and each Sr. Cofina bond is calculated by an independent expert and published.

**Disclaimer:  This matter is very complex and I am not an expert in this field so everyone should rely on their own, expert advisor.**

Arthur Samodovitz, Cofina bondholder



MaterialOmissionsAndMisleadingStatementsInCofinaPlanOfAdjustmentV6.docx



**Protest of the Puerto Rico Restructuring Proposal**
ajraj3     to: swaindprcorresp                                    12/30/2018 02:58 PM

From:  ███████████████
To:       swaindprcorresp@nysd.uscourts.gov,

**Dear Judge Swain:**
**My name is Adam Jacobs and I am a bond owner of the Puerto Rico COFINA**
**bonds.**
**This is my second response to the proposed Puerto Rico COFINA bond proposed**
**restructuring,**
**as to date I have not from your office regarding my intial protest.**
**After my letter on this e-mail, please see additional  documentation below labled**
**"Puerto Rico**
**Update"  dated 12/21/2018, which also help  guide me in my decision making**
**process.**
**I bought these bonds with my ROTH IRA monies with the understanding that they**
**are**
**secured by the statutory lien of sales tax revenues. The interest was going to be a**
**source**
**of some my retirement monies to live on. I have not received a distribution in over**
**a year and a half**
**causing me extreme financial burdens.**
**Based on the  report forwarded to me by Mr. Paul Mante the broker from the GMS**
**group who sold me**
**the bonds, it is evident that consideration of the restructure of the Puerto Rico**
**debt is is one sided,**
**and not fair to me at all**
**On or about Tuesday November 20th (you) Judge Swain who is overseeing the**
**Title III Puerto Rico debt**
**restructuring cases approved the disclosure statement covering the COFINA Plan**
**of Adjustment. The**
**Disclosure Statement covers the date of record, confirmation hearing notice,**
**solicitation/recovery**
**package, voting ballot, distribution procedures and various other procedures**
**necessary to receive and**
**tabulate the bondholder vote to either ACCEPT or REJECT the COFINA Plan of**
**Adjustment.**
**The Judge made it very clear that the Court has only approved that the proposed**
**procedures are a**
**reasonable and appropriate means to provide bondholders a means to respond to**
**the COFINA Plan of**
**Adjustment. The Court ruling will allow bondholders to cast an informed ballot**
**with respect to the**

proposed Plan of Adjustment. Judge Swain said the Court approval is subject to additional changes and
supplemental disclosures. You made a point that the disclosure and procedure approval ruling
made today is not in any way a ruling on any objections to the substance of the proposed Plan.
Judge Swain stated, "The Court will consider the economics and structure of the proposed Plan of
Adjustment as well as the legality of the elements of the Plan."
All objections to the substance of the COFINA Plan of Adjustment and the Commonwealth
COFINA settlement will be adjudicated at the Court hearing scheduled for January 16, 2019 in San
Juan with formal rulings and decisions to follow.
You pointed out that the pro se objections made by some individual investors and many of
the letters she received from individual investors object to the fact that a COFINA Plan of Adjustment is
being proposed at this time. It appears that you received objections similar to objections GMS
has received, that it is premature to file a Plan of Adjustment for a solvent COFINA that has sufficient
revenues to pay all bondholders, especially since the Commonwealth, whose 2019 general fund budget is
less than $9 billion is holding $12 billion of cash in various accounts, most of which is unpaid debt
service. The Oversight Board has yet to provide audited financial statements that prove the
Commonwealth's self-proclaimed bankruptcy is legitimate and the Commonwealth is truly insolvent.
You said the Court has also received letters on the legality of the division of the pledged sales
tax which by law is not available to the Commonwealth. The Plan of Adjustment ignores the law and makes
46% of the COFINA pledged revenue available to the Commonwealth. The Puerto Rico legislature also
disregarded their previous law that gave COFINA bondholders the pledged COFINA revenue and passed a
new law, which is not allowed under PROMESA and contract law. The new law that changes the existing
Statutory Lien and allows the Commonwealth to confiscate 46% of COFINA pledged revenue. The 46% is
predominately Subordinate COFINA bondholder money that is being confiscated.
Numerous letters were received by the Court objecting to Senior bondholders receiving a 93%

recovery, including back interest/cash from the escrowed COFINA funds, while the Subordinate
bondholders secured by the same Statutory Lien on pledged revenues sufficient to pay both Senior and
Junior bondholders, receive a 56.4% recovery and no back interest from the $1.2 billion of COFINA
escrow funds. The money in the fund is unpaid debt service owed all COFINA bondholders.
Letters have also brought attention to the fact Subordinate bondholders are mostly retail investors
that are unorganized and therefore were not represented at the negotiating table. The Senior bondholders,
mostly hedge funds, accumulated over the past year what they believe to be a sufficient amount of
Subordinate bonds at distressed prices to control the negotiations and the vote. Along with the
Commonwealth and the Financial Oversight Board the Senior bondholders authored the COFINA Plan of
Adjustment by taking advantage of their position and acting in their own interest rather than in the interest
of all COFINA bondholders. The mediation/negotiation should be deemed illegal as the participants are
guilty of self-dealing. Based on the excellent treatment given to Seniors bondholders and the
Commonwealth, self-dealing is the only conclusion that can be reached.
COFINA is a solvent and very successful entity, the Statutory Lien and pledged revenue covers
both Senior and Subordinate bondholders. However Senior bondholders will receive a 93% plus cash
recovery and Subordinate bondholders will only receive a 56.4% recovery and no cash. The Plan appears
to have been manipulated, liens and laws appear to have been broken, the Plan is not fair to all
stakeholders. A glaring inequity is U.S. Subordinate bondholders who live on the mainland will recover
56.4% of face value, while Puerto Rico Subordinate bondholders will recover 58.4% even though they are
in the same class and own the same bonds. Therefore, according to PROMESA guidelines the Plan is
illegal. The Court has a fiduciary responsibility to make sure all bondholders are treated fairly and those
in the same class are treated equally.
It appears in order for the proposed settlement to be approved the Statutory Lien that covers Senior
and Subordinate bondholders must be ruled legal. The Statutory Lien and

COFINA structure are being used
in the proposed Plan of Adjustment so the Statutory Lien and structure should be
considered legal and valid.
Junior bondholders were not represented in the negotiations other than by mainland Senior
bondholders who own a lesser amount of Junior bonds than they do Seniors. In addition, the escrowed
debt service being held by the BNY Mellon is only being used to pay Senior bondholders legal expenses,
back interest and a mediation fee of 2%, which is equal to over $320 million dollars, Subordinate
bondholders are not receiving any of the escrowed funds.
The first 5.5% of COFINA revenues pledged to bondholders is around $1.3 billion. The 5.50%
pledged was lowered to a Pledged Sales Tax Base Amount (PSTBA) of which 46% up to $425 million
will now go to the Commonwealth leaving considerably less money to pay COFINA bondholders. In
essence COFINA bondholders pledged revenue which was sufficient to pay all COFINA debt service has
been illegally reduced. As a result Seniors will receive 93% of the adjusted funds available for COFINA
debt service while mainland Subordinate bondholders will receive only 56.4% and Puerto Rico
Subordinate bondholders for some unknown reason will receive 58.4%.
The Commonwealth COFINA Plan of Adjustment settlement is premature and illegal for a number
of reasons.
 The Commonwealth has yet to produce acceptable Audited Financials to prove insolvency.
 The Financial Oversight Board has not been transparent, they have not allowed creditors a means of
discovery to quantify the Oversight Board's assumptions of general revenue available to the
Commonwealth to pay debt in their Fiscal Plans. To date the Board's financial assumptions have been
20% too low and essential services expense has never been addressed. No one knows Puerto Rico's
real financial position.
 COFINA is not insolvent and debt adjustment was never negotiated in Title VI, a PROMESA
prerequisite to enter Title III bankruptcy.
 Buying and selling of COFINA bonds by mediating/negotiating hedge funds and others with insider
information was allowed to continue to take place until November 20, 2018, the

bondholder date of
record for eligibility to vote.
☐ Unethical, maybe illegal, buying and selling has allowed insider hedge funds to purchase bonds in
order to manipulate the outcome of the vote to the detriment of Subordinate bondholders. In other
words the negotiating parties may be guilty of self-dealing.
☐ Puerto Rico government has passed legislation that changes the 2006 law Act 91, which was the
enabling law that created COFINA. Changing the law to the detriment of bondholders while bonds are
outstanding is not legal under PROMESA, the takings clause of the U.S. Constitution and contract law.
☐ Unrepresented secured U.S. mainland Subordinate COFINA bondholders are victims of self-dealing,
(Senior COFINA bondholders recovery 93%, secured mainland Subordinate COFINA bondholders
recovery 56.4% and Puerto Rico Subordinate bondholders, represented by former government officials,
will receive 58.4% recovery).
☐ To date the Court has not stopped the Financial Oversight Board debt restructuring negotiations from
bypassing many prerequisites of PROMESA.
COFINA BACKGROUND REFRESHER: During the 2006 Puerto Rico financial crisis the
Commonwealth created COFINA. Investors had lost confidence in the Puerto Rico government's ability to
manage the finances of the Commonwealth. Since investors did not trust the Puerto Rico government
Commonwealth could not access the bond market at reasonable rates. The security and main components of
COFINA bonds that attracted investors were a Statutory Lien on pledged Sales Tax revenue and the fact
that this dedicated revenue source was not available under any circumstances to the Puerto Rico
government, who had lost the trust of investors. The fact that the Puerto Rico government's intent was to
protect bondholders when they established COFINA and the Statutory Lien is unquestionable. For the next
10 years the Puerto Rico government under 3 governors, legislatures and Department of Justices continued
to assure COFINA bondholders and inform General Obligation bond investors that pledged COFINA
revenues secured by a Statutory Lien were not available to the Commonwealth.
Most individual investors who purchased Subordinate COFINA bonds were aware

the Puerto Rico
government was not credible and the Commonwealth was in financial trouble. It is a matter of record that
corruption, mistrust and mismanagement were the reason the secured COFINA structure had to be
created. A structure was necessary that did not allow the Puerto Rico Treasury access to bondholder
pledged revenue. The intent of the COFINA Statutory Lien was to make bondholders feel secure enough
to lend money to Puerto Rico.
Most individuals purchased Subordinate COFINA bonds prior to when the U.S. Congress passed
the Puerto Rico Oversight Management and Economic Stability Act (PROMESA). They bought the bonds
for the following reasons.
A. A Priority Statutory Lien on pledged dedicated sales tax revenue that was more than sufficient to
pay all COFINA debt. The dedicated revenue was unavailable to the government of Puerto Rico.
B. High investment grade rating when issued, "A+" second only to Senior COFINA bonds which
were slightly higher rated by one notch "AA-". A long term Subordinate COFINA bond's market
value was equivalent to around 1 to 2 points or 1 to 2% less than a similar Senior bond's market
value. (Under the proposed Plan the difference in recovery between Seniors and Subordinate
bonds is around 40 points or 40%.)
C. Legal assurance from the Puerto Rico government that by law the Puerto Rico treasury did not
have access to the pledged revenues and such was stated in Official Offering Statements for
General Obligation (GO) and COFINA bonds issues. The Puerto Rico government also was
obligated to defend the COFINA bond structure, which they are now attacking.
D. The Commonwealth and its Agencies had to take all steps necessary to meet their obligations
because up until June 2016, the Commonwealth did not have access to Chapter 9 bankruptcy or
any form of debt adjustment. In June 2016 PROMESA was created as a mechanism to reduce
Puerto Rico's debt by respecting bondholders rights, priority of payment and legal Liens.
Unfortunately PROMESA and Title III have not been about respecting bondholders rights,

the law and liens, it has evolved into innocent bondholders being forced to bailout the U.S.
government and the corrupt Puerto Rico government. The COFINA settlement was driven by the
Financial Oversight Board's fear of the risks and consequences associated with a court ruling in the
Commonwealth vs. COFINA dispute that would have resulted in all COFINA bondholders being
treated fairly. If an unfavorable ruling for the Commonwealth were allowed to happen it would not
be possible for the Oversight Board to confiscate the Subordinate bondholders property. If the
Commonwealth believed the Court would have ruled against current COFINA bondholders, Senior
bondholders would not be receiving a 93% plus cash recovery. GMS believes the proposed Plan is a
result of self-dealing.
Many individuals who own Subordinate COFINA bonds have written Judge Swain stating various
reasons, many mentioned in this UPDATE, why the proposed settlement is grossly unfair to Junior Lien
bondholders. Unbelievably, contract law and legal Liens have been ignored. The proposal has changed the
Statutory Lien and amount of dedicated pledged revenues available to pay COFINA bondholders, which
is inconceivable in the annals of municipal bonds bankruptcies. Pledged revenues, that by law are not
available to the Commonwealth, are being made available to the Commonwealth. The negotiating parties
did not include a representative for U.S. mainland Subordinate bondholders, which is not equitable. What
is really not equitable is Puerto Rican Subordinate bond investors that live on the Island, who do not pay
U.S. income taxes, will receive a recovery of 58.4% while U.S. investors that live on the mainland and
pay U.S. income taxes recover only 56.4%. The whole process is questionable and self-dealing by the
negotiating parties appears evident.
A detailed illustrative example of recovery for 50 Subordinate bonds is attached, the
explanation below is a simplified example:
An individual who lives on the mainland and holds $50,000 Subordinate bonds would receive
$44,000 face value of new Senior bonds worth around $28,000 as follows: $21,000 face value of current

interest bonds and $23,000 face value of 0% (zero interest) bonds as follows: Current interest bonds,

$1,000 face value 4.50% bond due 2034, $7,000 face value of 4.55% bonds due 2040, $3,000 face value

of 4.75% bonds due 2053, $10,000 face value of bonds 5% due 2058, total $44,000 face value, annual

income $1,006. 0% (zero) interest bonds with a total present value of $7,112, which will amount to

around $23,000 face value.

Beside the overall inequity of a 56.4% recovery, a serious complaint from U.S. retail

Subordinate bondholders that live on the mainland will be the poor marketability of the small odd

lots of bonds they would receive in the exchange and the fact that Puerto Rico retai1 Subordinate

bondholders will receive a 58.4% recovery all in a more marketable one block of $28,000 interest

paying bonds and no zero coupon bonds.

Judge Swain - I would like you to consider all of the issues I mentioned above and note my formal objection

and protest to the restructuring proposal.

I respectfully await your reply.

Thank-you for your consideration

Adam Jacobs

**COFINA Bonds**
Mbg14614   to: swaindprcorresp                                      12/30/2018 02:16 PM

From: ██████████████████████

To:        swaindprcorresp@nysd.uscourts.gov

Dear Judge Swain,

I am one of the thousands of retail investors who were excluded from the COFINA restructuring negotiations and I appreciate the opportunity to provide my thoughts regarding the COFINA process and plan that is to be presented to your court for consideration.

A few days ago, I received a number of proxies to vote in this matter. Unfortunately, I did not receive any type of analysis to demonstrate a credible basis for a shortfall in the sales tax revenue that might perhaps justify a debt restructuring.

My financial advisor has explained that my bonds have been assigned to a class whereby I am being asked to forfeit more than 50 percent of my investment principal and 100 percent of the income that is being held in trust for me.

I wanted you to know that I am a senior citizen and did not have a high (or even low) paying corporate or government career that provided me with a guaranteed retirement income or pension. As such, my late wife and I scrimped and saved every penny we could to save and prepare for our retirement needs.

In preparing for our retirement, we avoided buying equities because, to me, the equity markets are nothing more than legalized gambling; dominated by electronic, machine driven trading. The ordinary investor has no way to provide a consistent and safe income from equity investments. We, therefore, focused on fixed income investments; mostly government, tax exempt bonds.

Our analysis of the COFINA bonds prior to purchasing them indicated that there would be no shortfall in the sales tax revenue that secured this investment and loan. The fact that the COFINA bonds had a constitutional guarantee to receive Puerto Rico's sales tax revenue provided great assurance that our investment was safe.

In facing our retirement years, we needed the assurance that our income would be stable and principal secure. Of course, this did not guarantee that the government officials of Puerto Rico would not mismanage the rest of their responsibilities or breach their fiduciary responsibilities.

Our COFINA holdings represent approximately 75 percent of our retirement income; which as you know was stopped when this process began, even though the money is there to pay us. This action has had a disastrous impact on our ability to pay our bills and enjoy our hard earned retirement.

I look at the COFINA bonds similar to the Municipal Utility District bonds that are common in the state where we live. As you may know, MUD bonds are used to develop and pay for the

water infrastructure in our communities and are funded and secured by the property taxes of those communities.  So long as there are homes and shopping centers in those communities, the associated property taxes will fully pay for the bonds.  In my mind, this is similar to the COFINA bonds.  So long as there is sales tax revenue in Puerto Rico, our bond interest and principal would be paid.   Period, end of story.

Puerto Rico has a reputation for its poor (to put it kindly) management of its finances.  Under the proposed plan, it seems that Puerto Rico is being rewarded for mismanaging and breaching their fiduciary responsibilities by being allowed to take the sales tax revenue that secures our COFINA loan.  The COFINA bonds are not in default.  There is sufficient sales tax revenue to pay them.  It is a known fact that Puerto Rico has hid money in previously undisclosed bank accounts to create a false impression of distress that is unrelated to the COFINA bonds.

I'm now being asked to vote on a plan that was controlled by professional money & hedge fund managers who bought bonds at distressed prices and where the retail investor was excluded from the process and negotiations.  To make matters worse, these same people created "classes" of bond holders where none existed and further impaired the value of my holdings and retirement. What is the government of Puerto Rico giving up?  Nothing.  What are the employees of Puerto Rico giving up?  Nothing.  What are the retirees of Puerto Rico giving up?  Nothing. What are the citizens of Puerto Rico giving up?  Nothing.  This is a grave injustice to the people who bought the COFINA bonds in good faith.

Given that all of the COFINA bonds are secured by the same revenue stream, I would expect all bond holders to be treated equally and pro-rata on the amount of their "loan"; since we are all sharing the same sales tax revenue risk.  There are no preferential payments associated with these bonds.

The government of Puerto Rico and the US Oversight Board have failed to perform their duties and are attempting to use your court as the tool to camouflage their failures…….and to steal the sales tax revenue that guarantees my bond income.  I fail to understand the rational and process that improperly defaults the COFINA bonds under the presumption that the sales tax revenue is insufficient to pay them, but then takes that same sales tax revenue, divides it up and gives some of it to the general fund of Puerto Rico?  This action and proposal alone says to me that the COFINA bonds are not in any risk of default due to a shortage of sales tax revenue.

When the textbooks are written, the COFINA process, if approved as it stands today, will go down as the biggest swindle in the history of municipal financing.  Every ordinary, retail investor will question the integrity and may never again trust the provisions of any municipal financing proposal.  I wouldn't be surprised if someone will use the COFINA process as a precedent to conclude that "the full faith and credit" of the United States isn't what it means and down the road will enable the United States to default on its obligations.

However, you have the opportunity to see through this COFINA injustice and do the right thing. Why should the "professionals" and hedge fund managers, who bought bonds at pennies on the dollar, be entitled to a GAINS of 200, 300, 400 percent or more, while the retail investor realizes a LOSS?  This does not seem like an equitable or fair remedy of justice.

Given that these classes are fabricated, why don't we just create a class for the small investors who were excluded from the process and return them 100 percent of their money?  It seems no less reasonable than what has been proposed.

The entire government of Puerto Rico should be placed under the management of a public accounting firm and independent trustee who together can and will make the hard decisions to control the spending and ensure that Puerto Rico adopts sound fiscal behavior and practices, and honors all of their obligations.  Their annual budget needs to be frozen at a realistic level until the COFINA bonds are fully redeemed.  (I would endorse an early redemption without penalty.)  Then and only then, should the budget freeze be ended and Puerto Rico be allowed to access the sales tax revenue that has been promised and guaranteed to the COFINA bond holders.

This was the primary job of the Oversight Board, but they breached their fiduciary responsibility and failed to make any attempt to do the job that was assigned to them.   Without a doubt, Puerto Rico has influenced the Oversight Board for their advantage.  Why didn't the Oversight Board fulfill its obligations?  What is being done about that?  Isn't that part of the real problem?  By the Oversight Board not fulfilling its obligations, I can also argue that the US Federal Government is now responsible and should make up any shortfall and pay the bondholders.

I pray that you will see through the actions and shenanigans of these professional opportunists and declare the plan before you not only improper, but illegal.  Puerto Rico, its leaders, and the Oversight Board may have all breached their fiduciary responsibilities and be ethically bankrupt; the COFINA bonds, most certainly, are not.

Sincerely,

Michael B. George



P.S.  I am also mailing this email to you at your court in case it gets caught in a spam folder.

**Puerto Rico**

**Anita**    to: swaindprcorresp                                      12/31/2018 06:33 PM
Cc:  diasporaenresistencia

From:        ███████████████████

To:          swaindprcorresp@nysd.uscourts.gov

Cc:          ███████████████████████

Dear Honorable Judge Taylor Swain,

My name is Anita Winkis and I am writing to you because I am very disappointed and worried about the actions that the Financial Oversight and Management Board (FOMB) is taking to address the fiscal crisis.

The agreement made with COFINA bondholders will drag Puerto Rico into another never-ending economic crisis that will lead Puerto Rico into another debt default and will only cause more harsh austerity measures, cuts in public services and pensions.

We request a fair renegotiation of the agreements that is legal, fair and not burdensome for the country. We know this debt has been imposed on Puerto Rico without the due process of a real comprehensive audit that allows us to really know how the debt was issued and to ensure that is it paid justly and legally.

Please do what is right and rule against this agreement on January 16th's 2019 hearing.

Respectfully,

Anita Winkis



**Cofina Bonds**

warren1us   to: swaindprcorresp                                      12/31/2018 12:38 PM

From: ████████████████

To: swaindprcorresp@nysd.uscourts.gov


Attn: Judge Swain

I am a Municipal bond investor nearing "Retirement" I only by bonds that are
back by revenue ( sales tax, property tax or a revenue source ) and in
touchable revenue streams!
I currently own  200k Cofina bonds which have a debt ratio of almost 2 times
debt service . Which investors were told Puerto Rico could not touch
Which is why investors put money in to Puerto Rico  Cofina issue!
As of the writing if this letter
I have not gotten 3 consecutive semi annual payments that total $16715.72
And Feb-1-2019 another $ 5571.87 is due. The money to pay Bondholders is being
held RANSOM ,is not fair  this is not a bond that is not in trouble.
My suggestion
Would be to pay all back monies due bond holders , give the excess money to
the Govt of Puerto Rico and as the bond reach maturity the bond  should be
retired at face value ,
I think in this scenario everyone is treated fairly!
The current plan STINKS as the little guys gets hurt

These bond would have never sold without the lock box money that was to pay
the debt,  it was basically an insured bond as long as enough sales tax was
collected. Which currently is at least 2 times current debt service.
I truly hope the law is followed as bond investors will be watching & worrying
if their Bond will be next !

Thank you for taking the time to read this.

Happy New Year

Sent from my iPhone



**Cofina Plan of Adjustment**

arthursail   to: 'swaindprcorresp@nysd.uscourts.gov'                    12/31/2018 11:43 PM

From:   ▮▮▮▮▮▮▮

To:      '"swaindprcorresp@nysd.uscourts.gov'" <swaindprcorresp@nysd.uscourts.gov>

Judge Swain, I supplemented my previous letter on this subject below and attached, to identify additional unpaid interest that was not included in the published recovery rates of 56.4% and 93%, and will further decrease the recovery rates. I also noted additional objections and deficiencies in the Plan of Adjustment. (I also corrected a few typographical errors.)

December 31, 2018.

### My Objection to the Cofina "Plan of Adjustment"
### filed 11/19/2018, Case 17-03283-LTS, Doc #4342

First, and foremost, the Cofina Plan of Adjustment and failure to pay back interest represent "Takings" under the Fifth Amendment (of the US Constitution) of the bondholder's property, i.e. their valid lien on the Puerto Rico sales and use tax. The Plan of Adjustment does not provide just compensation to the Cofina bondholders, i.e. full payment of tax-free interest and principal when due. Therefore, the Plan of Adjustment violates the US Constitution. Also, Promesa states that valid liens of creditors should be respected, which is not the case here. The lien of the Cofina bondholders is prima facie valid, and remains valid, until adjudicated otherwise.

Moreover, certain statements, below, in the Plan of Adjustment are misleading, and important information is missing. This will improperly skew the voting in favor of the Plan of Adjustment.

1. The Plan of Adjustment states, "Class 5 – Junior Cofina Bond holders. … Projected Recovery under the Plant of Adjustment – No Taxable Election:  56.4**%**."  (The media also published this recovery rate so presumably the voters are relying on it.)  The summary accompanying the ballot similarly describes the offer as follows, "If you do not elect to receive the Junior Taxable Bond Distribution, you will receive a distribution consisting primarily of Cofina bonds approximately equal to 56.414% of your "First Subordinate" existing securities and no cash".

There is one set of (nontaxable) replacement bonds for all Jr. Cofina bonds. The average interest rate for the (nontaxable) set of replacement bonds will be 4.85% with an average life span of 28.2 years according to

part 18 of the Plan of Adjustment.  According to the Plan of Adjustment and
its Table 2B, $50,000 of original Jr. Cofina bonds will be replaced with
$28,112 of replacement bonds, (which is about 56.4% of the original
principal).

However, the actual recovery rate also depends on the interest rate and
maturity date of the original bonds, and this varies.  The Plan of Adjustment
states that the original Jr. Cofina bonds had fixed interest rates in the range
of 3.63% to 7.48% (depending in part on the maturity date).  For those
original Jr. Cofina bonds with a greater interest rate than 4.85%, the actual
recovery rate will be reduced to less than 56.4% because of the reduction
in the interest rate of the replacement bonds.  The original Jr. Cofina bonds
with the lower interest rates than 4.85% were likely shorter term, and the
increased interest rates of the replacement bonds will likely be offset by the
longer, 28.2 yr maturity of the replacement bonds.

The following is a real example for original Jr. Cofina bond CUSIP
74529JKM6 which has a 5.5% interest rate and 08/01/2041 maturity date
(i.e. about 22 1/2 years remaining).  The first step in the Plan of Adjustment
is to replace $50,000 of CUSIP 74529JKM6 with $28,112 of the nontaxable
4.85% replacement bonds due in 28.2 years on average.  That reduces the
principal to 56.4% of the original principal.  But, the replacement bonds
have a significantly lower interest rate and longer average maturity date
than CUSIP 74529JKM6 which further reduces the actual recovery rate.

The Plan of Adjustment should have reported the actual recovery rate for
each original Jr. Cofina bond, because it varies substantially as explained
above and is too difficult for most people to calculate.  These are material
omissions.  Also, the published recovery rate of 56.4% is misleading
because the actual recovery rate varies substantially based on the interest
rate and maturity date of each original Jr. Cofina bond.

The Plan of Adjustment also states, "Estimated Percentage Recovery – No
Taxable Election:  93.015%."  (The media also published this recovery rate
so presumably the voters are relying on it.)  The summary accompanying
the ballot similarly describes the offer as follows, "If you do not elect to
receive the Senior Taxable Bond Distribution, you will receive a distribution

consisting primarily of Cofina bonds approximately equal to 93.015% of your "Senior" existing securities and no cash".

There is one set of (nontaxable) replacement bonds for all Sr. Cofina bonds.  The average interest rate for the set of (nontaxable) replacement bonds will be 4.85% with an average life span of 28.2 years according to part 18 of the Plan of Adjustment.  The Plan of Adjustment also discloses that the original Sr. Cofina bonds had fixed interest rates in the range of 3.8% to 6.35% (depending on the maturity date).  This range of interest rates is lower than that of the original Jr. Cofina bonds.  For those original Sr. Cofina bonds with a greater interest rate than 4.85%, the recovery rate will be reduced to less than 93.015% because of the lower interest rate of the replacement bonds.  The original Sr. Cofina bonds with lower interest rates than 4.85% were likely shorter term, and the increased interest rates of the replacement bonds will likely be offset by the longer, 28.2 yr maturity of the replacement bonds.

The Plan of Adjustment should have reported the actual recovery rate for each original Sr. Cofina bond, because it varies substantially as explained above and is too difficult for most people to calculate.  These are material omissions.  Also, the published recovery rate of 93.015% for the Sr. Cofina bonds is misleading because it varies substantially based on the interest rate and maturity date of each original Sr. Cofina bond.

2.  Also, it does not appear that the unpaid interest due on August 1, 2017 and February 1, 2018 was included in the calculation of the stated 56.4% recovery for the nontaxable Jr. Cofina bonds and the stated 93.0153% recovery for the nontaxable Sr. Cofina bonds.  It also does not appear that any of this interest will ever be paid to either the Jr. Cofina bond holders or the Sr. Cofina bondholders who receive nontaxable replacement bonds.  **If this unpaid interest was not included in the 56.4% recovery calculation for the Jr. Cofina bonds and will never be paid, this will further reduce the recovery rate for the Jr. Cofina bond holders who receive the nontaxable replacement bonds.  If this unpaid interest was not included in the 93.015% recovery calculation for Sr. Cofina bonds and will never be paid, this will further reduce the recovery rate for the**

**Sr. Cofina bond holders who receive the nontaxable replacement bonds.**


3.  Also, the interest due on August 1, 2018 was not paid to either the Jr. Cofina bondholders or the Sr. Cofina bondholders.  Instead, the replacement bonds under the Plan of Adjustment will begin to accrue or accrete interest on July 1, 2018.   So apparently under the Plan of Adjustment, the Jr. Cofina bondholders and Sr. Cofina bondholders who receive the nontaxable replacement bonds will lose another 5 months of interest from February 1, 2018 until July 1, 2018.  This represents an additional decrease in recovery rate for the Jr. Cofina bondholders and the Sr. Cofina bondholders who receive the nontaxable replacement Cofina bonds.  This additional reduction was not included in the calculation of the stated 56.4% recovery for the nontaxable Jr. Cofina bonds and the stated 93.0153% recovery for the nontaxable Sr. Cofina bonds.

4.  Typically, a restructuring resolves all issues, so in exchange for reduced recovery, all challenges are resolved.  But, that is not the case here.  There is no final resolution of the challenge to the Cofina bonds as being issued in excess of the Puerto Rico constitutional limit.  There is no final resolution of the challenge by all GO bondholders to their claim on the Cofina sales and use tax as "available resources".  The Plan of Adjustment does not clearly explain this either.  And what if the Commonwealth cannot pay providers of "essential services" or pensions of essential government employees.  Do they, as individuals, have standing to claim the Cofina sales and use taxes as needed for "essential services"?  This was not explained either.


5.  Also, if a bondholder agrees to the Plan of Adjustment, will that bondholder be precluded from seeking compensation in the US Court of Federal Claims for unconstitutional Taking of his/her property?  This was not explained in the Plan of Adjustment, and is material.

In Summary, the Plan of Adjustment is a shame to our Constitution and the rights of US citizens.  The residents of Puerto Rico recently voted overwhelmingly to become a State, so they should respect the US Constitution.

Sincerely,

Arthur Samodovitz, electronically signed
Cofina bondholder, pro se.





MaterialOmissionsAndMisleadingStatementsInCofinaPlanOfAdjustmentV8.docx



**Financial Oversight & Management Board**

Jose Latorre   to: swaindprcorresp                          12/31/2018 06:12 PM
Cc:  diasporaenresistencia

From:          ████████████████████████

To:            swaindprcorresp@nysd.uscourts.gov

Cc:            ████████████████████████

Dear Honorable Judge Taylor Swain, I am Jose A. Latorre. I write to you because I
am very disappointed and worried about the actions that the Financial Oversight and
Management Board (FOMB) is taking to address the fiscal crisis. The agreement made
with COFINA bondholders will drag Puerto Rico into another never-ending economic
crisis that will lead Puerto Rico into another debt default and will only cause more harsh
austerity measures, cuts in public services and pensions. We request a fair
renegotiation of the agreements that is legal, fair and not burdensome for the country.
We know this debt has been imposed on Puerto Rico without a due process of a real
comprehensive audit that allows us to really know how the debt was issued and to
ensure that is it paid justly and legally. Please do what is right and rule against this
agreement on January 16th's 2019 hearing.

Sincerely, Jose A. Latorre



**Request to not approve COFINA agreement**

Lucilla Marvel   to: swaindprcorresp                                    01/01/2019 07:49 AM

From:          ████████████████████

To:            swaindprcorresp@nysd.uscourts.gov

Dear Honorable Judge Taylor Swain:

I am Lucilla Fuller Marvel, a resident of San Juan, Puerto Rico. I
write to you because I am very concerned about the actions that the
Financial Oversight and Management Board (FOMB) is taking to address
the fiscal crisis. The agreement made with COFINA bondholders will
drag Puerto Rico into another never-ending economic crisis that will
lead Puerto Rico into another debt default and will only cause more
harsh austerity measures, and cuts in public services and pensions. We
request a fair renegotiation of the agreement that is legal, fair and
not burdensome for the country. We know this debt has been imposed on
Puerto Rico without a due process of a real comprehensive audit that
allows us to really know how the debt was issued and to ensure that is
it paid justly and legally. I respect that you will do what is legally
right and just and rule against this agreement at the January 16, 2019
hearing.

Sincerely,
Lucilla Fuller Marvel
████████████████████████

Lucilla Fuller Marvel
██████████████████



**Reject Agreement between Cofina bondholders and the Financial Board**
Shyama Orum    to: swaindprcorresp                                          01/01/2019 08:06 PM

From:    ████████████████████████
To:      swaindprcorresp@nysd.uscourts.gov

1/1/19

Dear Judge Taylor Swain,

Please REJECT the agreement between Cofina bondholders and the Financial Oversight and
Management Board as it will drag Puerto Rico into another economic crisis, due to the
imposition of more austerity measures, cuts in public services and pensions, and would lead to a
new debt default.  Instead, I call on  you to  recommend  a fair renegotiation of the agreements
that is not burdensome for the country.  Thank you for your attention to these concerns.



**Cofina Plan of Adjustement Problem with "Prospectus" accompanying ballot
for Jr. Cofina bonds.**

arthursail   to: 'swaindprcorresp@nysd.uscourts.gov'          01/02/2019 11:45 AM

From:          ████████████████

To:            '"swaindprcorresp@nysd.uscourts.gov"' <swaindprcorresp@nysd.uscourts.gov>

Judge Swain,  The "prospectus" accompanying the ballot refers to a 56.4%
recovery for the nontaxable, Jr. Cofina bonds, but does not mention that the
replacement bonds will only pay 4.85% with an average maturity date of 28.2
years or that 1 year 5 months of interest on the original bonds will be
forfeited.  The typical, individual bondholder will not read the entire Plan
of Adjustment, or even know where to find it, and will naturally assume that
his/her replacement bonds will pay the same interest rate and have the same
maturity as his/her original bonds.  For those original bonds with an interest
rate greater than 4.85% and a maturity less than 28.2 years (most if not all
of the original Jr. Cofina bonds had less remaining life than 28.2 years), the
bondholders will receive less than 56.5% recovery, not to mention the
forfeited interest.  Therefore, the "prospective" has material omissions and
is misleading.  I will refer this issue to the SEC, FBI and DA to investigate.
Arthur Samodovitz



**REJECT the agreement between COFINA and the FOMB on Jan. 16**
**Ana Llompart** to: swaindprcorresp@nysd.uscourts.gov
Cc:

01/03/2019 02:11 AM
Hide Details

From:
To: "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>
Cc:

Dear Honorable Judge Taylor Swain,

I am Ana Llompart. I write to you because I am very disappointed and worried about the actions that the Financial Oversight and Management Board (FOMB) is taking to address the fiscal crisis. The agreement made with COFINA bondholders will drag Puerto Rico into another never-ending economic crisis that will lead Puerto Rico into another debt default and will only cause more harsh austerity measures, cuts in public services and pensions. The measures dictated by the FOMB have been implemented in a disorganized, illogical, and irresponsible manner so far, endangering the safety of citizens, limiting thousands of Puerto Ricans from a real opportunity to get affordable education and healthcare, and limiting the capacity of people to become and remain employed in the island.

Instead of just moving forward with this unjust and anti-constitutional agreement, we request a fair renegotiation of the agreements that is legal, fair and not burdensome for the country. The weak attempts of the board to fake an audit process are not going to work on us; we know this debt has been imposed on Puerto Rico without a due process of a real comprehensive audit that allows us to really know how the debt was issued and to ensure that is it paid justly and legally. Please do what is right and rule against this agreement on January 16th's 2019 hearing.

Thank you kindly.

Sincerely,

Ana Llompart

--
"We cannot always build the future for our children...but we can build our children for the future." - Franklin D. Roosevelt

**Reject Cofina's Agreement**

Jennifer Maldonado  to: swaindprcorresp@nysd.uscourts.gov

Cc: ██████████████████████

01/04/2019 10:56 AM

Hide Details

From: ██████████████████████
To: "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>
Cc: ██████████████████████

Dear Honorable Judge Taylor Swain,

I am Jennifer Maldonado from Toa Baja, Puerto Rico. I write to you because I am very disappointed and worried about the actions that the Financial Oversight and Management Board (FOMB) is taking to address the fiscal crisis. The agreement made with COFINA bondholders will drag Puerto Rico into another never-ending economic crisis that will lead Puerto Rico into another debt default and will only cause more harsh austerity measures, cuts in public services and pensions. We request a fair renegotiation of the agreements that is legal, fair and not burdensome for the country. We know this debt has been imposed on Puerto Rico without a due process of a real comprehensive audit that allows us to really know how the debt was issued and to ensure that is it paid justly and legally. Please do what is right and rule against this agreement on January 16th's 2019 hearing.

Sincerely,

Jennifer Maldonado

██████████████



**FW: Insured COFINA**
**Russell Stoever**   to: swaindprcorresp@nysd.uscourts.gov

01/04/2019 01:25 PM
**Hide Details**

From:
To:          "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>

Hon. Laura Taylor Swain. With regards to the COFINA bonds that are insured by AMBAC and National, the individuals holding these bonds are put at a big disadvantage to have to vote to maintain insurance that they paid for when they bought these bonds. Most of the people who hold these bonds are old and wanted the security of the investment to supplement income, which is why they paid for the insurance in the first place.. If they are traveling, sick or forget to call their broker, they will lose their insurance. I estimate this will be approximately 10% of the bondholders. Although they are given a security that is supposedly worth 93 cents plus 5.25% from the insurance company, the secured COFINA bonds are presently trading in the market in the 73-75 range, indicating that will be about what they are worth when they are free to trade. Now the investor who had an insured bonds now has something worth 10 to 20 % less and if Puerto Rico goes through another bankruptcy it will be worse. I'm sure the insurance companies would be very happy, not having to pay the bondholder which is why this is happening but this is very unfair for the investor. I have tried to contact the regulators of the municipal bond market but it seems nobody regulates the insurance company for all the states. Please make the insurance companies maintain their insurance or if they want the bondholder to take the other option they can vote for it. Happy New Year, Russ

**Russell Stoever**





**Puerto rico**

**Eduardo Melendez**   to: swainDPRcorresp   01/05/2019 04:13 PM

Cc: diasporaenresistencia   Hide Details

From:

To:   swainDPRcorresp@nysd.uscourts.gov

Cc:

Jueza Laura Taylor Swain,    Part of this debt is not legal when bond issues were issued and Puerto Rico had serious financial problems we have an unaudited debt without knowing if it existed or was billed without existence. we all know that our governors and politicians on the island are corrupt, we have to solve the details of some 1 productive young people are leaving the island 2 security 3 education 4 health, 5 corruption, nothing works at capacity we pay the highest taxes, the money we do not know where it goes we deserve a better country, puerto rico is a town of good people, we ask God that all his knowledge is for the best decision of our country.

att Eduardo Melendez



**REJECT the agreement between COFINA and the FOMB on Jan. 16**

**Ricardo Acosta**   to: swaindprcorresp@nysd.uscourts.gov      01/06/2019 11:24 AM

Cc:                                                                    Hide Details

From:

To:          "swaindprcorresp@nysd.uscourts.gov" <swaindprcorresp@nysd.uscourts.gov>

Cc:

Dear Honorable Judge Taylor Swain,

I am Ricardo Acosta. I write to you because I am very disappointed and worried about the actions that the Financial Oversight and Management Board (FOMB) is taking to address the fiscal crisis. The agreement made with COFINA bondholders will drag Puerto Rico into another never-ending economic crisis that will lead Puerto Rico into another debt default and will only cause more harsh austerity measures, cuts in public services and pensions. The measures dictated by the FOMB have been implemented in a disorganized, illogical, and irresponsible manner so far, endangering the safety of citizens, limiting thousands of Puerto Ricans from a real opportunity to get affordable education and healthcare, and limiting the capacity of people to become and remain employed in the island.

Instead of just moving forward with this unjust and anti-constitutional agreement, we request a fair renegotiation of the agreements that is legal, fair and not burdensome for the country. The weak attempts of the board to fake an audit process are not going to work on us; we know this debt has been imposed on Puerto Rico without a due process of a real comprehensive audit that allows us to really know how the debt was issued and to ensure that is it paid justly and legally. Please do what is right and rule against this agreement on January 16th's 2019 hearing.

Sincerely,

Ricardo Acosta