HEARING DATE: JAN. 16, 2019 AT 9:30 A.M. (ATLANTIC STANDARD TIME)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re* | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |
| *In re* | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| as representative of | No. 17 BK 3284-LTS |
| PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"), | |
| Debtor. | |

*Caption Continued on Following Page*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee,<br><br>          Plaintiff,<br><br>  v.<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION, WHITEBOX MULTI-STRATEGY PARTNERS, L.P.; WHITEBOX ASYMMETRIC PARTNERS, L.P.; WHITEBOX INSTITUTIONAL PARTNERS, L.P.; PANDORA SELECT PARTNERS, L.P.; AMBAC ASSURANCE CORPORATION; FRANKLIN ADVISERS, INC., and CEDE & CO., as nominee for The Depository Trust Company,<br><br>          Defendants. | Adv. Pro. No. 17-00133-LTS |

**RESPONSE OF WHITEBOX MULTI-STRATEGY PARTNERS, L.P. AND CERTAIN OF ITS AFFILIATES TO RESERVATION OF RIGHTS OF THE BANK OF NEW YORK MELLON, AS TRUSTEE, REGARDING SECTION 19.5 OF THE SECOND AMENDED TITLE III PLAN OF ADJUSTMENT OF PUERTO RICO SALES TAX FINANCING CORPORATION**

To the Honorable United States District Judge Laura Taylor Swain:

    Whitebox Multi-Strategy Partners, L.P. and certain of its affiliates (collectively, "<u>Whitebox</u>") respectfully submit this response to the *Reservation of Rights of The Bank of New York Mellon, as Trustee, Regarding Section 19.5 of the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* ("<u>Reservation of Rights</u>" or "<u>Res. of Rights</u>").[2]

## PRELIMINARY STATEMENT

    1.  In their opening brief, Whitebox and Ambac Assurance Corporation ("<u>Ambac</u>") demonstrated that they have no indemnity obligations to BNYM, and that BNYM is

---

[2]  ECF No. 4599 in Case No. 17-03283-LTS. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan or, as applicable, Whitebox's amended opening brief [Case No. 17-03283-LTS, Dkt. No. 4646] ("<u>Whitebox Opening Brief</u>").

not entitled to any charging lien, bond or other security for their defense costs of the litigation commenced against it under the Resolution.

2. In response, several of the Debtors' stakeholders have claimed that Whitebox and Ambac somehow violated the Plan Support Agreement merely by arguing in the opening brief that the only party legally obligated to indemnify BYNM is COFINA. Ambac was thus pressured to change its position and is assuming COFINA's indemnity obligations, not on the merits, but under the threat of forfeiture of the substantial Plan Support Agreement fees to which Ambac is entitled. Whitebox, however, will not succumb to these dubious threats.

3. BNYM's Reservation of Rights concedes that the Resolution obligates COFINA — *and only COFINA* — to indemnify BNYM for certain liabilities and expenses. Unable to point to even a shred of evidence that Whitebox ever agreed to assume COFINA's indemnity obligations, BNYM argues — without citing *any* legal support for its argument — that Section 19.5 of the Plan "generally" and "in essence" provides that COFINA's indemnity obligations shall be enforced against Whitebox. Res. of Rights at ¶¶ 6-7. This fails as a matter of law. The Plan Support Agreement — the *only* agreement between COFINA and its stakeholders concerning the contents of the Plan — does not even address BNYM's purported indemnity obligations.[3]

4. To be enforceable, an agreement to indemnify must be reflected in a clear and explicit written agreement. Nothing in the Plan, including Section 19.5, even implies that Whitebox has agreed to assume COFINA's indemnity obligations, let alone explicitly articulates

---

[3] Whitebox is litigating this matter to determine the scope of its obligations under Section 19.5 of the Plan, which it is entitled to do under Section 4.4(d) of the Plan Support Agreement. This provision states in pertinent part: "[N]one of the Senior Holders shall be limited or prohibited from . . . taking any action that any such Senior Holder shall deem necessary or appropriate to preserve, protect or defend any of its rights under this Agreement, the Plan, or the other Definitive Documents . . . ." Thus, participation in this litigation cannot be a violation of the Plan Support Agreement. Whitebox will continue to abide by all of its obligations under the Plan Support Agreement.

such an agreement.[4]

5. In a cynical attempt to deflect from the merits of its position, BNYM argues that its purported indemnification claim against COFINA is secured and will dilute bondholder recoveries. This is clearly wrong. Under the plain terms of the Resolution, only claims for the bondholders' principal, interest and premium are secured. Nor does the Resolution grant BNYM a charging lien on its indemnity claims. Thus, any indemnity claim asserted by BNYM against COFINA is *unsecured* and will not dilute any bondholder recoveries. Because recoveries for unsecured creditors under the Plan are insignificant, none of COFINA's stakeholders would be harmed by BNYM's assertion of indemnification from COFINA — to the extent such claim is not released under the Plan.

6. Facing a similar problem in Becker v. Bank of N.Y. Mellon, BNYM asserted that "[a]ll parties knew and agreed that [the] indemnification claims had priority and would be paid before any distributions to bondholders" even though there was no evidence in the record of such agreement. Becker v. Bank of N.Y. Mellon Tr. Co., N.A., Case No. 11-6460, 2016 WL 6397415, at *7 (E.D. Pa. Oct. 28, 2016). The court disagreed:

> [T]he record belies these assertions. A searching review of the dockets . . . fails to disclose any evidence that [the borrower] and BNYM agreed — or that any other parties to the stipulated and consensual Plan for reorganization of the [borrower] ever intended — that the Indenture Trustee's right to indemnification by [the borrower] would be satisfied from funds that [the borrower] paid as part of the bankruptcy process . . . .

---

[4] Whitebox reserves all its rights under the Plan Support Agreement in connection with any future purported amendment of Section 19.5 of the Plan, including in an attempt to effectuate an assumption by Whitebox of COFINA's indemnity obligations.

Id. Likewise, the Court here should prevent BNYM from withholding any amount from distributions from Whitebox and all other bondholders because nothing in the Plan or any other document permits BNYM to do so.

7. The inequity of BNYM's position — and any stakeholders that join it — is that there are billions of dollars of COFINA bonds that will neither release BNYM nor be subject to the purported indemnification obligations that would be imposed on Whitebox. Such bondholders are free to sue at any time post-confirmation without restriction. There is no precedent for such discriminatory treatment of Whitebox, and the Court should reject it.

8. Accordingly, as set forth herein, any request by BNYM for a charging lien, bond or any other form of indemnification should be denied.

## RESPONSE

### A. The Plan Does Not Effectuate an Assumption by Whitebox of COFINA's Indemnity Obligations to BNYM Under the Resolution.

9. BNYM acknowledges that the Resolution expressly obligates *COFINA* — not Whitebox — to indemnify BNYM for certain liabilities and expenses. See Res. of Rights at ¶ 1 ("BNYM has an unliquidated secured claim *against COFINA* for fees and expenses and indemnification under the Bond Resolution.") (emphasis added).

10. BNYM argues, however, without citing *any* legal support, that the Plan "in essence" makes Whitebox "responsible for satisfaction of COFINA's . . . obligations to BNYM under the Bond Resolution." Res. of Rights at 3. BNYM specifically relies on Section 19.5 of the Plan, asserting that it "is intended" to ensure that COFINA's indemnity obligations to BNYM are "satisfied by Whitebox . . . ." Res. of Rights at ¶ 25. Tellingly, BNYM cites no law supporting its inference from this language.

11. Nothing in Section 19.5 of the Plan, however, reflects Whitebox's or any

- 4 -

other party's intent to effectuate an assumption by Whitebox of COFINA's indemnity obligations.  All Section 19.5 does is provide a mechanism for the Court to determine whether BNYM is entitled to *any* indemnification from Whitebox in connection with the Whitebox Action:

> [W]ith respect to Ambac and Whitebox and the Ambac Action and the Whitebox Actions, respectively, at the Confirmation Hearing, the Title III Court shall determine (a) what amount, *if any*, shall be either (i) withheld by the Disbursing Agent or BNYM as trustee for the Existing Securities or (ii) posted by Ambac and Whitebox as collateral for the reimbursement of fees and expenses which may be incurred by BNYM in connection with the defense of the Ambac Action and the Whitebox Actions, and (b) whether BNYM shall be reimbursed by Ambac and Whitebox for the incurrence *of any* such fees and expenses from either the holdback amount or collateral posted and referred to in the preceding subsection (a) on a current basis or upon entry of a Final Order in connection with the Ambac Action and the Whitebox Actions.

(emphases added).

12.   It is well established that a "plan is a contract between the debtor and its creditors that is subject to the general rules governing the interpretation of contracts under the law of the state in which the plan was confirmed." Swiss Chalet, Inc. v. McCloskey Diaz (In re Swiss Chalet, Inc.), Case No. 11-4414, 2013 WL 1342457, at *6 (Bankr. D.P.R. Apr. 2, 2013) (internal citation omitted); see also Solus Alt. Asset Mgmt. LP v. Delphi Auto. PLC (In re DPH Holdings Corp.), 553 B.R. 20, 25 (Bankr. S.D.N.Y. 2016) ("Confirmed chapter 11 plans are construed as contracts").  As such, BNYM must show that Whitebox is contractually bound under applicable law to answer for COFINA's indemnity obligations under the Resolution.  BNYM, however, has not, and, indeed, cannot make such a showing.

13. Whether New York or Puerto Rico law applies here,[5] any purported agreement by Whitebox to assume COFINA's indemnity obligations must be clear and explicit. "[T]o enforce an obligation to indemnify," the contractual language must be clear and unambiguous, and the court will not "rewrite the contract to and supply a specific obligation the parties themselves did not spell out." Tonking v. Port Auth. of N.Y. & N.J., 3 N.Y.3d 486, 490 (N.Y. Ct. App. 2004). "No theory of implied indemnity should be invoked to add a provision to a contract which fails to provide indemnity." Rosado v. Proctor & Schwartz, Inc., 106 A.D.2d 27, 30, (1984), aff'd, 66 N.Y.2d 21 (1985). "Inasmuch as a promise by one party to a contract to indemnify the other for attorney's fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own attorney's fees, the court should not infer a party's intention to waive the benefit of the rule unless the intention to do so is unmistakably clear from the language of the promise." Hooper Assocs., Ltd. v. AGS Computers, Inc., 74 N.Y.2d 487, 492 (1989).

14. Furthermore, New York's Statute of Frauds provides that an agreement to "answer for the debt" of another person must "be in writing, and subscribed by the party to be charged therewith."[6] Therefore, a party "is not personally liable for the obligations" of another person "absent clear evidence of that [party's] intent to be bound." Ashkir v. Wilson, Case No. 98-2632, 1999 WL 710788, at *9 (S.D.N.Y. Sept. 13, 1999); see also Paul, Weiss, Rifkind, Wharton & Garrison v. Westergaard, 75 N.Y.2d 755, 756 (N.Y. Ct. App. 1989) (denying an action to recover legal fees from an individual shareholder because it was "not supported by any

---

[5] The Plan is governed by PROMESA and Puerto Rico law; see Section 30.15 of the Plan. Section 1211 of the Resolution, however, provides that "to the maximum extent permitted by applicable law, the rights, duties, privileges and immunities of the Trustee . . . shall be governed by the law of the jurisdiction in which its Corporate Trust Office is located," i.e., New York.

[6] N.Y. Gen. Oblig. Law § 5-701.

evidence of an enforceable independent promise by the individual to pay the limited partnership's obligation and is clearly barred by the Statute of Frauds."); Vincent Crisafulli Testamentary Tr. v. AAI Acquisition, LLC, Case No. 6784-17, 2018 WL 3978477, at *6 (N.Y. Sup. Ct. Aug. 10, 2018) ("a statement in a contract purporting to bind the signing officer individually 'is not sufficient for Statute of Frauds purposes without some *direct and explicit evidence of actual intent* . . . [which] *must be gathered from the writing itself*'") (citing Savoy Record Co. v. Cardinal Exp. Corp., 15 N.Y.2d 1 (N.Y. Ct. App. 1964); (emphasis added)).

15. Similarly, "[u]nder Puerto Rico law, the parties may generally bargain for a hold harmless agreement that indemnifies the indemnitee for varying degrees of liability . . . . *If the parties' intent is clear, these provisions will be upheld* so long as the court finds no breach of duty to the public." Sanchez v. Esso Standard Oil de Puerto Rico, Inc., No. CIV 08-2151, 2010 WL 3809990, at *13 (D.P.R. Sept. 29, 2010) (internal quotation marks and citations omitted) (emphasis added) (analyzing contractual language and finding that "the pertinent contractual provisions do not allow [the counterclaimant] to seek indemnification.").

16. Further, under Puerto Rico law, an assumption of another person's debt requires a showing that the purported new debtor accepts responsibility for the preexisting obligation, becomes a debtor, and releases the original debtor. See Fed. Deposit Ins. Corp. v. Prann, 694 F. Supp. 1027, 1035 n.12 (D.P.R. 1988) (assumption of debt is a "vehicle whereby a third party . . . took on a preexisting debt, thus making himself a debtor while liberating the original debtor without changing the basic elements of the original contract.").

17. Far from establishing by "direct and explicit evidence" that Whitebox has agreed to assume COFINA's indemnity obligations under the Resolution, all BNYM has shown

- 7 -

is that Section 19.5 of the Plan preserves BNYM's arguments concerning its purported entitlement to indemnification from Whitebox, "if any," to be determined by the Court at confirmation. See Vincent Crisafulli Testamentary Tr. v. AAI Acquisition, 2018 WL 3978477, at *6. Nor has BNYM shown that Whitebox ever agreed to assume and release COFINA of its indemnity obligations. See Prann, 694 F. Supp. 1035 n.12 (D.P.R. 1988).

18. Consistent with the foregoing, Whitebox and Ambac argued in their original opening brief that they never agreed to assume COFINA's indemnity obligations under the Resolution.[7] Upon information and belief, immediately after Ambac and Whitebox filed their joint brief, Ambac was threatened that it would risk losing its fees under the Plan Support Agreement if it stood by its argument that only COFINA bears the indemnity obligations under the Resolution. Ambac consequently filed an amended opening brief, stating that "Ambac has agreed with the Debtors to assume COFINA's indemnification obligations to BNYM . . . ."[8]

19. Regardless of Ambac's inconsistent positions, it is clear that Whitebox has never agreed to assume COFINA's indemnity obligations under the Resolution. Indeed, BNYM has failed to cite even a single contractual provision in the Plan or otherwise reflecting such an agreement. Indeed, the Plan Support Agreement — which is the only agreement between COFINA and its stakeholders concerning the contents of the Plan — does not even mention BNYM's purported right to indemnification.

20. This is not the first time BNYM has attempted to impose a borrower's indemnity obligations on bondholders based on a mere reservation of BNYM's *right to argue* that it *may* recover its alleged indemnity from bondholder distributions. In Becker v. Bank of

---

[7] Original Opening Brief, Case No. 17-03283-LTS, Dkt. No. 4646 at ¶¶ 7-12.

[8] Ambac's Amended Opening Brief, Case No. 17-03283 Dkt. No. 4633 at ¶ 7.

N.Y. Mellon, the confirmed plan provided that the loan agreement would continue in effect solely to achieve certain "specified objectives," including "to preserve any rights of [BNYM] to payment of fees, expenses, and indemnification obligations, including as against property distributed under the Plan to [BNYM] . . . [and] to permit [BNYM] to assert its charging lien, if any, against distributions on account of the Bonds." 172 F. Supp 3d at 796. BNYM argued that under the foregoing provision the borrower's indemnity obligations "were discharged as to BNYM's recourse against [the borrower], but . . . BNYM can still recoup its right to indemnification by [the borrower] from the bondholders' funds." Id. at 798.

21. The court rejected BNYM's argument, reasoning that BNYM's "proposed interpretation reads content into the Plan . . . that is not to be found in the express terms." Id. at 797. The plan "did not create additional rights beyond those contained in the Bond Documents — instead, it only preserved specific rights and obligations created by the Bond Documents, in order to permit the Indenture Trustee to achieve the specified goals." Id. at 797. The court therefore denied BNYM's request to withhold distributions from the bondholders, explaining that "[t]he bondholders never agreed to assume any of [the borrower's indemnity] obligations." Id. at 801.

22. Here, too, the Plan merely preserves BNYM's right to argue that it is entitled to indemnification from Whitebox. But BNYM has not shown — nor can it show — that Section 19.5 constitutes an agreement by Whitebox to assume COFINA's indemnity obligations. The Court should therefore deny BNYM's request to withhold its fees, expenses and costs incurred in the Whitebox Action from Whitebox's distribution.

    **B.    BNYM's Purported Right to Indemnification Does Not Give Rise to a Secured or Contractually Senior Claim.**

23. In a specious attempt to manufacture the threat of diminished recoveries

for COFINA's secured creditors (including its bondholders), BNYM argues that its purported indemnification claim against COFINA is secured and "contractually senior to those of the Bondowners." See Res. of Rights at ¶ 14. Under the plain terms of the Resolution, however, the foregoing claim is *unsecured* and not entitled to any contractual seniority over the bondholders' claims.

24. As a threshold matter, the security agreement established under Article V of the Resolution, the Pledged Property includes only the principal, interest and premium. Resolution at § 601. Thus, nothing in the granting clause entitling BNYM to a secured claim for any of COFINA's indemnity obligations under the Resolution.

25. Nor does BNYM have a charging lien as it suggests. Selectively quoting from Section 804 of the Resolution, BNYM argues that "COFINA's obligation to pay BNYM's reasonable compensation and fees and expenses is secured by 'a lien prior to that of the Bondowners and other Beneficiaries . . . on any and all funds at any time held by [BNYM]" under the Resolution. Res. of Rights at ¶ 14. As shown in the Whitebox Opening Brief, however, Section 804 of the Resolution expressly provides for a charging lien *only* in connection with *compensation for services* that the Resolution requires BNYM to perform, and for reimbursement of expenses associated with BNYM's "powers and duties under the Resolution." Whitebox Opening Brief at ¶ 13. Section 804 does not provide for a charging lien in connection with BNYM's right to indemnification. Id. Accordingly, under the plain meaning of the Resolution, BNYM does not have a charging lien for the costs of defending the Whitebox Action. See Becker v. Bank of N.Y. Mellon, 172 F. Supp. 3d at 801 (BNYM did not have a charging lien on distributions to bondholders to secure the indemnification of BNYM's liabilities because the explicit language of the loan agreement did not provide for one).

- 10 -

26. BNYM's next argument — similarly supported by selective quotations from the Resolution — is that "pursuant to section 1103.1 of the Bond Resolution, the funds held by BNYM . . . may be applied to amounts due on the [bonds] only *after* making provision for payment of any reasonable expenses of and liabilities incurred and advances made by BNYM" under the Resolution.  Res. of Rights at ¶ 5 (emphasis in original).  Section 1103.1, however, does not grant BNYM a lien with respect to COFINA's indemnity obligations.  Nor does it grant BNYM a "contractually senior" claim.

27. As explained in the Whitebox Opening Brief, Section 1103 begins with the clause "Subject to Section 804" and is derivative of that Section.  As such, any right of BNYM to use available funds to reimburse itself is subject to the fact that, under Section 804, there is no charging lien for indemnification.  Whitebox Opening Brief at 8 n.9.  Furthermore, Section 1103.1 only allows BNYM to "make provision" for the payment of (i) the "reasonable expenses of the Trustee and its agents and attorneys *necessary in the opinion of the Trustee to protect the interests of the Owners of the Bonds and the other Beneficiaries*," and (ii) "the reasonable charges and expenses and liabilities incurred and advances made by the Trustee and its agents and attorneys *in the performance of their duties under the Resolution*" (emphases added).  BNYM does not explain — nor can it explain — how the charges and expenses it incurs in defending the Whitebox Action are "necessary" to "protect the interests" of the bondholders or are incurred "in the performance of [BNYM's] duties under the Resolution."  Indeed, BNYM has no duty under the Resolution to defend the Whitebox Action, which BNYM is litigating solely to protect its own interests.

28. In <u>Becker v. Bank of N.Y. Mellon</u>, the indenture provided that "the Trustee may deduct the amounts owing to it from any moneys coming into its hands before

- 11 -

making any payment on any Bonds." 172 F. Supp. 3d at 799. BNYM argued that the foregoing provision supported its right to indemnity for "any liabilities [BNYM] may incur," and that it "directly reinforces the concept of priority in payment following a default." Id. The court disagreed, holding that under the indenture BNYM was only entitled to payment for its "reasonable services" and "reasonable expenses and disbursements" — not a general right to indemnity. Id. Furthermore, there was "no evidence" that the parties "agreed in advance that the bondholders would compensate [BNYM] for any services, expenses, or disbursements whatsoever," including its alleged claim for indemnification. Id. Similarly, Section 1103.1 of the Resolution — which is expressly subject to Section 804 and limited to types of expenses that are plainly irrelevant here — does not afford BNYM the right to withhold distributions to Whitebox on account of BNYM's purported right to indemnification.

29. Likewise, Section 501.1 of the Resolution — which provides that COFINA's "Pledged Property" secures payment of the obligations under the Resolution — is explicitly subject to Section 804, and does not create an independent indemnity claim. As such, it does not grant BNYM a secured claim in respect of its purported right to indemnification.

30. Finally, BNYM's proofs of claim do not establish that BNYM's purported claim for indemnification is secured. See Res. of Rights at ¶ 22. Rejecting a similar argument, the *Becker* court held that BNYM's "proof of claim did not create or 'establish' any substantive rights to indemnification or priority payment," and that "[n]othing in the record suggests that [BNYM's] personal claims for indemnification and priority payment of its fees and expenses were secured." Becker v. Bank of N.Y. Mellon, 2016 WL 6397415, at *5-6.

31. In light of the foregoing, it is clear that BNYM has failed to cite even a single basis for treating its purported claim for indemnification as a secured or contractually

- 12 -

senior claim. Furthermore, because recoveries for unsecured creditors under the Plan are insignificant, none of COFINA's stakeholders would be harmed by BNYM's assertion of indemnification against COFINA (to the extent such claim is not released under the Plan).[9]

## CONCLUSION

For the reasons set forth herein and in the Whitebox Opening Brief, the Court should deny BNYM's request to withhold its fees, expenses and costs incurred in the Whitebox Action from Whitebox's distribution, and should not require that Whitebox post a bond or other collateral to secure the foregoing purported obligations.

Dated: January 9, 2019
San Juan, Puerto Rico

**KASOWITZ BENSON TORRES LLP**

By: /s/ *Andrew K. Glenn*
    Andrew K. Glenn
    (admitted *pro hac vice*)
    Shai Schmidt
    (admitted *pro hac vice*)
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800
    Email: aglenn@kasowitz.com
           sschmidt@kasowitz.com

**ARROYO & RIOS LAW OFFICES, P.S.C.**

By: /s/ *Moraima S. Ríos Robles*
    Moraima S. Ríos Robles
    (USDC-PR Bar No. 224912)
    1353 Ave. Luis Vigoreaux
    Guaynabo, P.R. 00966
    Telephone: (787) 522-8080
    Facsimile: (787) 523-5696
    Email: mrios@arroyorioslaw.com

*Attorneys for Whitebox Multi-Strategy Partners, L.P.*
*and its Above-Captioned Affiliates*

---

[9] Second Amended Title III Plan of Adjustment, Case No 17-03283, Dkt. No. 4392 at § 13.1.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Moraima S. Ríos Robles*
Moraima S. Ríos Robles
(USDC-PR Bar No. 224912)
1353 Ave. Luis Vigoreaux
Guaynabo, P.R. 00966
Telephone: (787) 522-8080
Facsimile: (787) 523-5696
Email: mrios@arroyorioslaw.com