UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION (COFINA)

Debtor.

PROMESA
Title III

No. 17 BK 3284-LTS

---------------------------------------------------------------x

[Responding to Docket 4607 (Objection of certain unions and other parties), Docket 4570 (Request of United States on behalf of IRS to stay deadline to object) and Docket 4635 (FOMB's summary chart of correspondence)]

**SECOND SUPPLEMENT TO OBJECTION, OF INDIVIDUAL COFINA SUBORDINATE BONDHOLDER RESIDING IN THE 50 STATES WHO PURCHASED AT THE ORIGINAL OFFERING PRICES, TO CONFIRMATION OF PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA") PLAN SCHEDULED FOR HEARING JANUARY 16, 2019, AND RESPONSE AND OPPOSITION TO COFINA'S THIRTEENTH OMNIBUS OBJECTION TO INDIVIDUAL CLAIM NO. 10701**

Dated: January 8, 2019

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1

I. OBJECTION OF CERTAIN UNIONS AND OTHER PARTIES (DOCKET 4607) ...............1

    A. The objection of certain unions and other parties underscores that a decision as to the validity of the COFINA structure and lien cannot be avoided and must be made before any Plan is confirmed ................................................................3

    B. At the very least, disclosure of the new legal challenges to the New Bond Legislation (and the COFINA structure and lien thereunder) must be made and bondholders be given an opportunity to re-vote .....................................................5

II. REQUEST OF UNITED STATES ON BEHALF OF THE IRS TO STAY DEADLINE TO OBJECT (DOCKET 4570) ..........................................................................7

III. RESPONSE TO FOMB'S SUMMARY CHART OF CORRESPONDENCE (DOCKET 4635)..............................................................................................................9

IV. SUPPLEMENTAL INFORMATION CONCERNING CONTRACT CLAUSE PROHIBITION ON IMPAIRMENT OF OBLIGATIONS........................................................9

V. UPDATE AND SUPPLEMENTAL INFORMATION CONCERNING THE NUMBER OF ADVERTISING AND CONSULTING CONTRACTS AND THE EXPENSES INCURRED AND TO BE INCURRED BY PUERTO RICO IN ITS EFFORTS TO AVOID ITS OBLIGATIONS TO BONDHOLDERS ...................................10

VI. REQUEST FOR THE OPPORTUNITY TO RESPOND IN WRITING TO PLAN PROPONENTS AND TO APPEAR IN NEW YORK AT THE JANUARY 16, 2019 HEARING..................................................................................................................11

**PRELIMINARY STATEMENT**

This Second Supplement is being submitted to address the implications of certain objections filed January 2, 2019 opposing confirmation of the Second Amended Title III Plan of Adjustment of COFINA (Docket 4607) and of the United States' request to stay its time to object (Docket 4570), to address the FOMB's summary chart of correspondence (Docket 4635), and to update and supplement other information provided in my prior Objection (Docket 4585) and Supplement (Docket 4595).

I. **OBJECTION OF CERTAIN UNIONS AND OTHER PARTIES (DOCKET 4607)**

Certain unions and other parties state in their objection (Docket 4607) (i) that a Puerto Rican House member and certain other parties have brought a lawsuit challenging the constitutionality of Act 241 (the New Bond Legislation) (see page 3); (ii) that, in the same complaint, the plaintiffs are challenging the constitutionality of Act 91 (the 2006 enactment that established the COFINA structure and lien) (see pages 4-5); and (iii) that "none of the parties subject to the agreement and proposed Plan of Adjustment can waive the right of any natural of juridical person of Puerto Rico to contest before a court of law, the legality and constitutionality of a government act including the enactment of a statute" (see page 5).

The COFINA Plan proposes — without having the Court make any decision on whether the existing COFINA structure and lien established by Act 91 is in fact lawful — to modify the lien by giving away 46.35% of the collateral. *See, e.g.*, Docket 4364 at 39 of 263.

But, as set forth in the objection of certain unions and other parties, there is a pending challenge now to the validity of the framework established by the New Bond Legislation that, if successful, would invalidate the COFINA structure and lien even in its diminished 53.65% form. And there is a clear intention of these objectors to, if necessary, enlist others to press future challenges to the New Bond Legislation.

In short, unless and until the Court rules on the validity of the COFINA structure and lien, the Plan gives up 46.35% of the collateral but leaves legal challenges to the COFINA structure and

lien in place. Worse yet, from the point of view of COFINA bondholders, the legal challenges against the New Bond Legislation include grounds for invalidating the New Bond Legislation (referenced in the Objection of certain unions and other parties, Docket 4607 at pages 3-4) that do not exist relative to Act 91, which established the current COFINA structure and lien. So potentially a Puerto Rico court could rule that Article 91 was legal, but the New Bond Legislation is not.

And that is not all: COFINA bondholders (and in particular bondholders who bought in the original offerings) currently can cogently object to any modification of their property and contract rights by pointing out that the existing Act 91 establishing COFINA and the statutory lien pre-dated Title III of PROMESA and also pre-dated any notice to bondholders of a challenge to the legality of the COFINA structure and lien. Under settled constitutional law principles, Puerto Rico authorities cannot abrogate the property and contract rights of these pre-PROMESA purchasers, and no executive, legislative or judicial authority — Commonwealth or federal — can take the property of these pre-PROMESA purchasers without just compensation. *See* 12/27/18 Objection (Docket 4585), Section II.(4), pp. 17-25, and 12/31/18 Supplement (Docket 4595) at 3-4, 8-9 (citing Supreme Court case law to the effect that Congress cannot by legislation abrogate constitutional rights).

But in pressing the recently filed (or a future) challenge to the New Bond Legislation and the New COFINA Bonds, those pressing the challenge may argue that the New Bond Legislation and New Bonds post-date PROMESA and those who voluntarily voted for the Plan did so with full awareness of Title III of PROMESA and in the face of legal challenges that were a matter of public record (whether or not actually known to all bondholders). Thus, not only will 46.35% of the pledged sales tax revenue be given away under the COFINA Plan, the ability of bondholders who voluntarily vote for the Plan to resist abrogation of their rights in the future — whether through a challenge brought under Puerto Rico law or through a new PROMESA Title III proceeding — may be weaker than at present with the existing COFINA structure and lien.

In short, the proposed Plan not only abrogates property, contract and constitutional rights of individual bondholders in the 50 states, but also puts bondholders — in particular those who vote for

the Plan — at greater future risk of legal jeopardy of their rights under any New Bonds than is currently the case with the existing COFINA structure and lien.

### A. The objection of certain unions and other parties underscores that a decision as to the validity of the COFINA structure and lien cannot be avoided and must be made before any Plan is confirmed

The legal challenges to the New Bond Legislation underscore the point I made in my Objection and Supplement as to why it is essential that this Court rule upon the validity of the COFINA structure and lien **before** making any ruling on Plan confirmation. As previously discussed in those filings, at least absent a final order that the COFINA structure and lien is not valid, the Court simply cannot approve a Plan that abrogates the property, contract and constitutional rights of objecting bondholders. *A fortiori*, the Court cannot properly approve a plan that not only abrogates property, contract and constitutional rights of bondholders, but also puts bondholders at greater risk of legal jeopardy of their rights under any newly-issued bonds than is currently the case with the existing COFINA structure and lien.

What is the point, from a COFINA bondholder perspective — and certainly from the perspective of individuals who bought their bonds at or about par — of a "deal" whereby they are issued new bonds, if the legality of those new bonds is being challenged? Why give up almost half the collateral securing the current bonds only to have legal challenges pressed as to the new bonds? And *a fortiori* when, as the Docket 4607 filing notes, the challenges to the New Bond Legislation include grounds for challenge that do not exist for a challenge to the existing Act 91.

It appears inevitable that there will be a determination at some point by some court as to the validity of the COFINA structure and lien. The question is: does the issue get resolved only after COFINA bondholders are forced to give up almost half of their collateral or is the issue decided before that? If one presses ahead with a Plan whereby almost half the collateral is given up before any determination is made concerning the lawfulness of the COFINA structure and lien, there is the prospect that, after giving up almost half the collateral, COFINA bondholders find that a court ultimately upholds the validity of the COFINA structure and lien — as I believe will be the case.

Think of the recriminations at that point where bondholders have been forced — with inadequate disclosure (*see* Section B below) — into a Plan that gave up almost half of the collateral even though the COFINA structure and lien is ultimately found completely lawful, as it should be. Alternatively, were the Plan to be pushed through, and new bonds issued, the security for the new bonds could be invalidated — perhaps on new grounds for challenge that do not even exist as to the existing COFINA structure and liens. And COFINA bondholders may have gone ahead with the Plan only to be left in a situation where on-island bondholders get paid out through 2040, but then a second renege occurs post-2040 and individual bondholders from the 50 states (relegated to longer-maturity bonds under the Plan) are left holding the bag.

The 2% of par cash fee, of course, is paid out upfront to some favored parties pursuant to an approved Plan (including on-island bondholders who opt for favored treatment). Those favored persons who get it will actually have that cash. For a subordinated bondholder who gets the preferential 2% cash that is actually a very significant component of their cost basis, particularly if they bought on a steeply discounted basis. For example, since the 2% is 2% of par (100), the opportunistic buyers who bought in December 2017 or January 2018 when millions in par amount of bonds traded at prices ranging from about 8 to 10 percent of par will actually be getting back a significant portion of their cost basis through the 2% of par fee alone, because that 2% of par fee equates to 20% of the cost of bonds bought at a price of 10% of par. *See, e.g.*, Docket 4606-3, Hein Decl. 1/2/19, ¶¶ 3-16 and Exhibit B (Docket 4606-4 at pages 19-21 of 173).

Meanwhile, a retired individual bondholder in the 50 states is left with 11 splintered securities ranging in maturity as far out as 2058. That's 40 years from now. Imagine that you are 70 years old. You bought the COFINA bonds when originally issued — perhaps as long as 11 years ago — when you were 59, to provide cash income during your retirement. Now you have to wait 40 more years to get your money back. But wait, that 70-year-old will have to live to 110 to perhaps get his or her money back, finally, in 2058. And that assumes there is not a second renege before 2058. On top of the legal and constitutional violations discussed in my Objection and Supplement,

the unfairness that underlies the Plan is manifest. To order such a result without first resolving the legality of the COFINA structure and lien, respectfully, compounds the injustice.

### B. At the very least, disclosure of the new legal challenges to the New Bond Legislation (and the COFINA structure and lien thereunder) must be made and bondholders be given an opportunity to re-vote

At the very least, there must be a supplemental disclosure of the fact that there is a currently pending litigation challenging the legal validity of the bonds to be issued under the New Bond Legislation. Current COFINA bondholders are being asked whether to give up a significant portion of the pledged sales tax revenues as part of the COFINA Plan. They should be told before voting is finalized that there is a currently pending litigation challenging the legal validity of the new bonds they would receive if the COFINA Plan is approved by the Court, and be given a new voting card or form and an opportunity to change any vote previously cast. They should also be told that opponents of the New Bond Legislation have taken the position in this Court that anyone in Puerto Rico can contest the validity of the New Bond Legislation in the future.

Express disclosures of the current challenge to the New Bond Legislation — and a concrete likelihood of future challenges — are particularly important to individual bondholders in the 50 states. Unlike local on-island bondholders who would be receiving coupon bonds that are scheduled to be fully paid by their 2040 maturity, the bonds individual bondholders in the 50 states are to receive under the Plan are mostly due after 2040. In light of the existing litigation challenging the New Bond Legislation, as well as the declaration by the objections in Docket 4607 that no one can waive the right of any person in Puerto Rico to contest the legality and constitutionality of the New Bond Legislation in the future, the concern I expressed in my 12/27/18 Objection (p. 9) — that if on-island bondholders are fully paid out in 2040 there could be a second renege after 2040 in an effort to stiff bondholders in the 50 states — is particularly acute.

Bondholders should be told, before they vote (or before the time for voting is final), the following:

- There is currently a pending challenge by certain unions and others in Puerto Rico to the legality of the bonds to be issued under the New Bond Legislation.
- Not only are the new bonds to be issued pursuant to the Plan now the subject of a legal challenge, but the legal challenge to the new bonds to be issued under the Plan asserts grounds for the challenge above and beyond those that might be asserted against the current COFINA bonds issued pursuant to Act 91.
- The new bonds you receive under the proposed Plan, if approved, could be ruled illegal.
- There is a declaration by certain unions and others that anyone else in Puerto Rico has a right to bring future challenges to payment of the new bonds.
- The bonds that you will be issued under the Plan are mostly payable **after** 2040, but the bonds going to local on-island bondholders are to be fully paid by 2040, i.e., years before your bonds are fully paid.
- You thus face the prospect that the point of view of some in Puerto Rico today (to not pay the mainland bondholders) will again rise to the fore after local bondholders are paid off in 2040 and will interrupt the flow of funds that you are promised post-2040 under the Plan.

It is not sufficient that the current disclosure statement vaguely discloses, under the header "COFINA may be subject to future claims and legal actions," that "Reorganized COFINA may be subject to various claims and legal actions arising in the ordinary course of its activities that arise after the Effective Date." Docket 4364 at 228 of 263. There now actually is a pending challenge. This is material information for COFINA bondholders — particularly individual bondholders in the 50 states.

It is also no answer to say that a successful challenge to the New Bond Legislation seems unlikely. I would have thought under the circumstances here — including the FOMB representing to the First Circuit that the existing COFINA bonds are "secured by a statutory lien" (12/27/18

Objection I.F, pp. 6-7 and 1/2/19 Hein Decl. (Docket 4606-3) at ¶ 29 and Ex. K), and the Puerto Rico Legislature acknowledging in its recent "Statement of Motives" that COFINA bondholders currently have a lien (1/2/19 Hein Decl. (Docket 4606-3) at ¶¶ 30-31 and Ex. L) — that the challenge to the existing COFINA structure and lien would have been summarily rejected, as it should have been, but that has not yet occurred. Thus, why would one assume — particularly once on-island investors are repaid in 2040 — that meritless legal challenges to the New Bonds will be dispatched with dispatch? In short, since a pending challenge to the New Bond Legislation exists, bondholders must be told about it irrespective of one's views as to its likelihood of success, and bondholders must be given an opportunity to vote (or re-vote) with that new information.

## II. REQUEST OF UNITED STATES ON BEHALF OF THE IRS TO STAY DEADLINE TO OBJECT (DOCKET 4570)

The United States advised this Court by Motion (Docket 4570) on December 20, 2018 that it required a stay of its deadline to object to the COFINA Plan on behalf of the IRS.

The proponents of the Plan recognize the importance of issues relating to the tax treatment of the new COFINA bonds, and included sections in the Disclosure Statement on "Risks Related to Tax Treatment" (Docket 4364 at pages 230-232 of 263) and "Material United States Federal Income Tax Considerations" (Docket 4364 at page 232-252 of 263).

And, notably, 11 U.S.C. § 1125(a)(1) highlights, as one of the key attributes of "adequate information," the requirement for "a discussion of the potential material Federal tax consequences of the plan to … a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan."

At present, the Disclosure Statement, under the header "Taxation of COFINA Bonds," states:

> While the Commonwealth expects that, under existing law as of the date of this Disclosure Statement, interest on at least a portion of the COFINA Bonds will be excluded from gross income for U.S. federal income tax purposes, **the tax status of the COFINA Bonds cannot be determined as of the date of the Disclosure Statement.** The Commonwealth expects to cause an opinion of nationally recognized bond counsel ("Bond Counsel") addressing the tax status of the COFINA Bonds to be

-7-

delivered with the COFINA Bonds on the Effective Date. Recipients of the COFINA Bonds should refer to such opinion for more information on the tax status of the COFINA Bonds. (Docket 4364, at 239 of 263, emphasis added).

In light of the importance of tax considerations to any Plan involving the mandated exchange of new bonds for billions of dollars of bonds issued as tax-exempt bonds, it is respectfully requested that the Court defer any further consideration of the Plan until the IRS has an adequate opportunity to comment **and** until such time as there is a full disclosure to bondholders of the IRS' position. Depending upon the IRS' position, what are currently described as "risks" or observations that "it is possible that the IRS ... may disagree" (e.g., Docket 4364 at 230 of 263) may — once the IRS is heard from — need to be the subject of a supplemental disclosure to reflect what the IRS actually says.

Furthermore, to say "the Commonwealth expects that ... interest on at least a portion of the COFINA Bonds" will be tax exempt but that "the tax status of the COFINA Bonds cannot be determined as of the date of the Disclosure Statement" (Docket 4364, at 239 of 263) fails to provide meaningful information that bondholders need to know before they are called upon to vote for the Plan. And this is not simply a disclosure point. The original bonds were sold as tax exempt. Anything less than assured tax-exempt status for the bonds to be distributed to investors in the 50 states is yet another reason why the grossly unfair Plan should not be approved in derogation of bondholders' contract, property and constitutional rights.

I recognize the Government shutdown may result in a delay as we await the IRS' position. That is beyond the control of this Court and the participants in this proceeding. However, to press ahead without full consideration of, and disclosure of, the IRS' position would be very unfair to bondholders. The absence of a clear disclosure concerning the tax status of the bonds — including the IRS' position, and the lack of an assurance that the new bonds distributed to investors in the 50 states will be tax exempt, is yet a further reason the Plan does not meet the standards for confirmation.

### III. RESPONSE TO FOMB'S SUMMARY CHART OF CORRESPONDENCE (DOCKET 4635)

I have reviewed this summary, and I am familiar with a number of the letters which, in my Supplement and Declaration, I have asked the Court to consider. *See* Supplement (Docket 4595) at 13-15 and Declaration (Docket 4606-3) at p.12 ¶ 54.

I do not believe the FOMB adequately summarizes the points made in a number of the more substantive letters submitted by subordinate COFINA bondholders, and I respectfully submit that a review of the FOMB's summary should not be viewed as a substitute for reading the actual letters that I reference in my Supplement and Declaration, with cites to not only the docket number, but also the page numbers at which the letters are located.

### IV. SUPPLEMENTAL INFORMATION CONCERNING CONTRACT CLAUSE PROHIBITION ON IMPAIRMENT OF OBLIGATIONS

The Contract Clause prohibition is discussed in the Objection (Docket 4585), Section II.(4).A, pp. 18-20. The contractual provisions that cannot be impaired include those in Act 91, the Official Statements and Bond Resolutions, including those discussed in the Objection (Docket 4585 at 18-20) and 1/2/2019 Hein Declaration (Docket 4606-3 at pages 4-7).

Among other things, the very filing of this Title III by the FOMB (assertedly a territorial instrumentality, *see* 48 U.S.C. § 2121(c) and 7/13/18 Opinion and Order (Docket 3503) at p. 34), contravenes the non-impairment covenant in Act 91, the representations and covenants in the Official Statements (e.g., Section 2010C O.S. (1/2/19 Hein Decl. Ex. D) at 22 and B-44) and the covenants in the Bond Resolution (e.g., Section 1002, 1/2/19 Hein Decl. Ex. G at 70), and for this reason alone the Title III filing, and any Plan resulting from it, is illegal and void.[1]

Contract Clause violations have already occurred, including the adoption by Puerto Rico of the New Bond Legislation that expressly purports "to release the lien that holders of COFINA bonds currently have." Objection (Docket 4585) at 18. Nothing this Court can do can absolve the Puerto Rico authorities of their unconstitutional conduct. And this Court also cannot properly sanction this

---

[1] Other reasons this Title III filing is illegal and void are set out elsewhere, including 12/27/18 Objection at 25.

unconstitutional conduct. Since this Court is bound by the U.S. Constitution, confirmation of a Plan that would sanction violations of the Constitution is not permissible for that reason alone (as well violative of other law, including 48 U.S.C. § 2174(b)(3)).

V. **UPDATE AND SUPPLEMENTAL INFORMATION CONCERNING THE NUMBER OF ADVERTISING AND CONSULTING CONTRACTS AND THE EXPENSES INCURRED AND TO BE INCURRED BY PUERTO RICO IN ITS EFFORTS TO AVOID ITS OBLIGATIONS TO BONDHOLDERS**

In my declaration dated January 2, 2019 (Docket 4606-3 at page 11 ¶ 47), I cited to the Puerto Rico Comptroller's website showing that there were 1412 "advertising, representation or artistic services" contracts since July 1, 2018 alone. To update the Court, just four business days later, there has been a further increase in advertising contracts, to 1430 since 7/1/2018. *See* "contratos.ocpr.gov.pr," Office of the Comptroller, Consultation of the Registry of Contracts; select "Service Category" "Advertising, Representation or Artistic Services"; select 7/1/2018 to 1/8/2019 (now shows 1430 contracts).

And if one clicks on the category for "consulting services," one will see that there are 1314 "consulting services" contracts since July 1, 2018. *Id.* "Service Category" "Consulting Services".

In my 12/27/18 Objection (Docket 4585 at 32-33), I also referenced the extraordinary levels of professional fees ($295 million requested through 9/30/18 through the Title III review process), expenses of the FOMB (budgeted at about $65 million/year) and tens of millions of dollars of expenditures of the Commonwealth being incurred in the Title III process in an effort to avoid payments of the debts of Puerto Rico and its corporations and authorities. In addition, a review of the Puerto Rico Comptroller's website shows over $213 million spent by Puerto Rico **pre-PROMESA** on lawyers and consultants in its efforts to avoid its debts,[2] and the "New Fiscal Plan for Puerto Rico," dated October 23, 2018, certified by the FOMB, states on page 29 that it is projected that $1.5 billion of PROMESA-related expenditures will be incurred in fiscal 2018 through 2023,

---

[2] This amount, $213,236,766, can be ascertained by doing searches for contracts with the following firms for dates prior to the filing of these Title III cases: Cleary, Millco, Kirkland, Alix, Conway, E&Y, Proskauer.

-10-

comprised of $1.1 billion of professional fees and $430 million of funding for the Oversight Board.[3] Factoring in all of these components, on the current trajectory the cost of Puerto Rico seeking to avoid its debt seems on track to exceed $2 billion.

Meanwhile, although PROMESA would allow the payment of interest (*cf.* 48 U.S.C. § 2194(l)),[4] bondholders with statutory liens do not get paid, and the bondholders who have a Constitutional "first claim" on available Commonwealth resources[5] likewise do not get paid. It would appear that in Puerto Rico today almost everyone gets paid — consultants, advisors, lawyers, legislators, members of the executive branch, public employees, advertising contractors, and consulting contractors. But **not** the people who — at a time when there was no legislation that would even purport to authorize suspension of debt payments — lent their money to Puerto Rico or one of its authorities or corporations based on representations and covenants of Puerto Rico, including representations and covenants that bondholders are secured by a statutory lien or had a "first claim" on available Commonwealth resources. To say that what is occurring here is fundamentally unfair, as well as in derogation of the rule of law, is an understatement.

## VI. REQUEST FOR THE OPPORTUNITY TO RESPOND IN WRITING TO PLAN PROPONENTS AND TO APPEAR IN NEW YORK AT THE JANUARY 16, 2019 HEARING

The order that, *inter alia*, approves the confirmation hearing notice (Docket 4382 filed 11/29/2018) makes no provisions for objecting parties to respond to filings that the debtor and other parties in interest may make on January 9, 2019 in further in support of confirmation. I respectfully

---

[3] Go to AAFAF website (aafaf.pr.gov), click on "Other Documents," click on "Fiscal Plans," click on "October 23, 2018 – Fiscal Plan for Puerto Rico," p. 29 (PDF p. 30).

[4] 48 U.S.C. ¶ 2194(l) provides, in part, that "to the extent the Oversight Board, in its sole discretion, determines it is feasible, the Government of Puerto Rico shall make interest payments on outstanding indebtedness when such payments become due during the length of the stay."

[5] The covers of the Puerto Rico G.O. Official Statements included in bold print the statement: **"The Bonds are general obligations of the Commonwealth. The good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and interest on the Bonds. The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a first claim on available Commonwealth resources."** *See, e.g.*, 1/2/19 Hein Decl. Exhibit M (cover 2011 D & E G.O. O.S.).

request that all objectors be given a reasonable time to respond, in written form, to the legal and factual arguments that may be advanced in such January 9, 2019 filings by the Debtor and others, even if that is after the January 16, 2019 hearing date.

As previously noted in my Supplement (Docket 4595 at 15-16), I request an opportunity to participate in the January 16, 2019 hearing from Your Honor's New York courtroom (or some other location in New York) by webcast, video or teleconference. I understand that Your Honor has made provision for members of the public to request to speak on January 16, 2019 (Docket 4634), and that those plans appear to contemplate the ability to speak from the New York courtroom. Thus, if it is feasible for an objector to speak at the hearing from the New York courtroom, I respectfully request that opportunity.[6]

Respectfully Submitted,

_____
Peter C. Hein, Pro Se
101 Central Park West, Apt. 14E
New York, NY 10023
petercheinsr@gmail.com

---

[6] In accordance with my 12/27/2018 Objection (p.7 n.4), and 1/2/2019 Supplement (p. 15), I continue to reserve the right to further correct, amend or supplement my objections and to further supplement the legal authorities and factual materials referenced therein; and to join in or address other objections to the COFINA Plan that have been filed or that may be filed by other persons.

## CERTIFICATE OF SERVICE

I have caused to be mailed a copy of this Second Supplement to Objection, Of Individual Bondholder Residing In The 50 States Who Purchased At The Original Offering Prices, To Confirmation of Puerto Rico Sales Tax Financing Corporation ("COFINA") Plan Scheduled for Hearing on January 16, 2019, and Response And Opposition To COFINA's Thirteenth Omnibus Objection To Individual Claim No. 10701, by first class mail to each of the parties or their attorneys on the attached service list.

Dated: January 8, 2019

_____
Peter C. Hein

Office of the United States Trustee for the District of
    Puerto Rico
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, Puerto Rico 00901
(re: In re: Commonwealth of Puerto Rico)

O'Neill & Borges LLC
250 Mutioz Rivera Ave.
Suite 800
San Juan, Puerto Rico 00918-1813
Attn: Hermann D. Bauer, Esq.

Marini Pietrantoni Muniz, LLC
MCS Plaza
255 Ponce de Leon Ave., Suite 500
San Juan, Puerto Rico 00901
Attn: Luis C. Marini-Biaggi, Esq.

Casillas, Santiago & Torres LLC
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901
Attn: Juan J. Casillas Ayala, Esq., and Alberto J.E. Arieses
    Negron Esq.

Jenner & Block LLP
353 N. Clark Street
Chicago, IL 60654
Attn: Catherine Steege, Esq., and Melissa Root, Esq.

Milbank, Tweed, Hadley & McCloy LLP
28 Liberty Street
New York, NY 10005
Attn: Dennis Dunne, Esq., and Atara Miller, Esq.

Proskauer Rose LLP
11 Times Square
New York, NY 10036
Attn: Martin J. Bienenstock, Esq., Brian Rosen, Esq.,
    Paul V. Possinger, Esq. Ehud Barak, Esq. and
    Maja Zeral, Esq.

O'Melveny & Myers LLP
Times Square Tower
7 Times Square
New York, NY 10036
Attn: John J. Rapisardi, Esq., Suzzanne Uhland, Esq.,
    and Diana M. Perez, Esq.

Paul Hastings LLP
200 Park Ave.
New York, NY 10166
Attn: Luc A. Despins, Esq., James Bliss, Esq., Andrew V.
    Tenzer, Esq., Michael E. Comerford, Esq., James
    Worthington, Esq. and G. Alexander Bongartz, Esq.

Jenner & Block LLP
919 Third Ave.
New York, NY 10022
Attn: Robert Gordon, Esq., and Richard Levin Esq.

Bennazar, Garcia & Milian, C.S.P.
Edificio Union Plaza
416 Ave. Ponce de Leon, PH-A
Hato Rey, Puerto Rico 00918
Attn: A.J. Bennazar-Zequeira, Esq.

Cadwalader, Wickersham & Taft
200 Liberty Street
New York, NY 10281
Attn: Mark Ellenberg Esq., Lary Stromfeld, Esq.,
    Ivan Loncar, Esq., and Casey Servais, Esq.

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, NY 10153
Attn: Marcia L. Goldstein, Esq., and Gabriel Morgan, Esq.

Quinn Emanuel Urquhart & Sullivan LLP
51 Madison Avenue
New York, NY 10010
Attn: Susheel Kirpalani, Esq., and Eric Kay, Esq.

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Attn: Thomas Moers Mayer, Esq., Amy Caton, Esq., and Douglas Buckley, Esq.

McDermott, Will & Emery LLP
444 West Lake Street
Chicago, IL 60606
Attn: William P. Smith, Esq., David L. Taub, Esq., and Alexandra C. Scheibe, Esq.

White & Case LLP
200 South Biscayne Boulevard
Miami, FL 33131
Attn: John K. Cunningham, Esq., and Fernando de la Hoz, Esq.

Davis, Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attn: Donald Bernstein, Esq., and Brian Resnick, Esq.

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
Attn: Lawrence A. Larose, Esq., and Eric Daucher, Esq.

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Attn: Ira S. Dizengoff, Esq., and Philip C. Dublin, Esq.

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Attn: Sandy Qusba, Esq., and Nicholas Baker, Esq.

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Attn: Daniel A. Fliman, Esq.

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Attn: Andrew N. Rosenberg, Esq.