# Int'l Ge v. Concrete Builders of P.R.

Supreme Court of Puerto Rico

May 19, 1976, Decided

No. R-76-48.

**Reporter**
104 D.P.R. 871; 1976 PR Sup. LEXIS 2352

INTERNATIONAL GENERAL ELECTRIC, PUERTO RICO, INC., Plaintiff and Appellant, v. CONCRETE BUILDERS OF P.R., INC., ET AL., Defendants and Appellees.

**Notice:** OFFICIAL TRANSLATION

**Prior History:** Review. APPEAL from judgment of Edna Abrufía Rodríguez, Judge (San Juan), dismissing a complaint for recovery of money as to one of the defendants-appellees. The writ of review is issued, the judgment entered is reversed, and in its stead another is rendered ordering the defendant Berens Mortgage Bankers, Inc. to pay to appellant the amount of $21,825 plus the costs.

**Disposition:** The writ requested will be issued and judgment will be rendered consistent with the pronouncements herein, pursuant to Rule 50 of the Rules of this Court. Reversed.

## Core Terms

contractor, juridical, good faith, materials, own act, declaration, letter of credit, Mortgage

## Headnotes/Summary

**Headnotes**

1. CONTRACTS - IN GENERAL - CONSTRUCTION - GENERAL RULES OF CONSTRUCTION -INTENT OR WILL OF CONTRACTING PARTIES - IN GENERAL - ESTOPPEL. There are two fundamental forms of effectiveness involved in the will of juridical transaction in the field of contracting and of the spiritual juridical construction: that in which the basis of the obligation lies in the express will and that which should be based on the strength of the trust deposited on the declaration.

2. BOND - IN GENERAL - REQUISITES AND. VALIDITY - STATUTORY BONDS - CONTRACTORS. Pursuant to Act No. 111 of June 22, 1961, a contractor shall furnish a payment bond to secure the payment of the wages earned by its workers and employees in their work.

3. WORDS AND PHRASES.

Good Faith - The concept of good faith - as a hermeneutical criterion in view of which a contract should be construed - is defined in the opinion.

4. ESTOPPEL - EQUITABLE ESTOPPEL - GROUNDS OF ESTOPPEL - CONTRACTS - IN GENERAL.

A party to a contract cannot assume a conduct contradictory to the one it originally assumed and with which he created a legal situation which gained the trust of a third person who relied and acted upon said original conduct.

5. ID. - ESTOPPEL BY DOCUMENT - CREATION AND EFFECT - STATEMENTS IN DOCUMENTS -IN GENERAL.

It is not lawful for anyone to go or act against his own acts.

6. CONTRACTS - IN GENERAL - CONSTRUCTION - GENERAL RULES OF CONSTRUCTION -INTENT OR WILL OF CONTRACTING PARTIES - IN GENERAL - ESTOPPEL. In the autonomous juridical construction which shapes the rule of not going against a person's own acts, the effect is produced in an objective manner, in which the true will of the author of the acts does not count at all, that is, a court should entirely set aside the doctrine of declaration of will to directly impose a juridical effect.

7. ESTOPPEL - ESTOPPEL BY DOCUMENT - CREATION AND EFFECT - IN GENERAL - DOCTRINAL BASIS.

Case:17-03283-LTS Doc#:4732-1 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc: Exhibit International General Electric v. Concrete Builders of P.R. Inc. 104 D Page 2 of 4

Int'l Ge v. Concrete Builders of P.R.

The rule stating that nobody is allowed to go against his own acts is grounded on the general principle of law which orders that, in juridical life, acts should be done in good faith.

8. ID. - EQUITABLE ESTOPPEL - GROUNDS OF ESTOPPEL - INCONSISTENT ATTITUDES OR STANDING OF A PARTY.

A court should prevent the contradictory behavior of a party.

9. ID. - ESTOPPEL BY DOCUMENT - CREATION AND EFFECT - IN GENERAL - ESTOPPEL.

In English Law, the principle that nobody is allowed to go against his own acts is called estoppel.

10. WORDS AND PHRASES.

Estoppel - Estoppel etymologically means nuisance, impediment, obstacle, detention.

11. ESTOPPEL - ESTOPPEL BY DOCUMENT - CREATION AND EFFECT - STATEMENTS IN DOCUMENTS - REQUISITES FOR ESTOPPEL.

The necessary premises or constituting elements needed for the application of the juridical rule that no one can go against his own acts are: (a) a certain behavior of a subject; (b) the fact that he has generated a situation contrary to reality, that is, apparent, and that through such appearances, he might influence the behavior of others; and, (c) that it be the basis of the trust of another party which has acted in good faith and that, therefore, has acted in a manner which would prejudice him if his trust was defrauded.

**Counsel:** Jorge F. Romany for appellant.; Virgilio Méndez Cuesta for appellees.

**Judges:** MR. JUSTICE DIAZ CRUZ delivered the opinion of the Court. Mr. Chief Justice Trias Monge took no part in this decision.

**Opinion by:** DIAZ CRUZ

# Opinion

MR. JUSTICE DIAZ CRUZ delivered the opinion of the Court.

[1] Our case law follows an unmistakable path seeking the most ample protection for the interests of workers and materialmen in the execution of building contracts, delaying through a liberal construction the usefulness of the bond given to secure compliance with said contracts. Ferrer v. Alliance Company of P.R., Inc., 93 P.R.R. 1 (1966). In the huge field of contracting and of the spiritual juridical construction the objects of law are not restricted by the orthodox forms or by the classical lineaments composing the presumptions of express or implied consent, declaration of will, quasi-contract or provision in benefit of a third person. Puig Brutau agrees with Nirk that there are two fundamental forms of effectiveness involved in the will of juridical transaction: that in which the basis of the obligation lies in the expressed will and that which should be based on the strength of the trust deposited on the declaration. 1-2 Fundamentos de Derecho Civil 86, 2d ed. 1959. Our Civil. Code,., wisely anticipating. that it could not spell a just provision in each one of its articles for the expansive birth and development of new modalities in obligations, insufflated an emphasized effectiveness to the text adopted from art. 6 of the Spanish Civil Code[1] which in art. 7 of Puerto Rico (31 L.P.R.A. § 7) orders:

> ". . . .
> "When there is no statute applicable to the case at issue, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration."

[2] Appellant International General Electric delivered materials and electronic equipment amounting to $21,825.00 to contractor Concrete Builders of P.R. Inc. Said materials were used in a construction work performed by the latter for the Cooperativa de Viviendas La Hacienda, a building financed with a $2, 776,000 loan furnished by defendant and appellee Berens Mortgage Bankers, Inc. to the Cooperativa. The latter's credit was secured with a first mortgage and insured by the Federal Home Administration (F.H.A.). As of December 1971, when the contracting instruments were executed, an act which requires the posting of a payment bond to answer for the payment to the contractor's laborers "and employees of the wages earned by them in the work"[2]

---

[1] The pertinent provision of the Spanish Civil Code restrictively states as follows: "When there is no statute exactly applicable to the point at issue, the custom of the place shall be applied and, in default thereof, the general principles of law."

[2] This Act is No. 111 of June 22, 1961 (**29 L.P.R.A. § 195 et**

Case:17-03283-LTS Doc#:4732-1 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc:
Exhibit International General Electric v. Concrete Builders of P.R. Inc. 104 D Page 3 of 4

Int'l Ge v. Concrete Builders of P.R.

had been in effect in Puerto Rico for ten years. This bond requirement should be, therefore, besides a compulsory requirement, a detail of basic knowledge for all the persons involved in the building industry as contractors, materialmen, and bondsmen. Within that legal situation, on January 17, 1972 an executive vice-president of Berens issued a written evidence which it delivered to the contractor Concrete Builders and in which it stated[3] to have in its possession a letter of credit which stands for the payment and performance bond reiterating in its second paragraph that the said letter of credit serves as assurance for payment of <u>material</u> and <u>labor</u> on the project. Berens' letter, as we can see, did not limit its reference to salaries but included <u>materials</u>, going beyond the guarantee required by the cited Act No. Ill of 1961. The contractor presented this letter to General Electric and obtained the materials whose payment Berens refuses to make alleging that the same was a private communication between the latter and the contractor and that it did not create an obligation on its part towards the materialman. As we will see, its intention or will upon signing and delivering the letter do not weigh in the adjudication of this controversy.

[3-5] The situation of facts is quite decisively dominated by the fact that Berens' letter or testimony did not remain in the particular ambit of its business with the contractor, and that appellant received it, and after getting acquainted with its text, released the materials for the work. In its written message, Berens, even without wishing it, assured General Electric that it had in its possession sufficient assurance, as good as the bond, to answer for the value of said materials, and the terms of the document were worthy of the trust of the materialman which had no reason to doubt of the good faith[4] of the representation it was given. Berens caused a legal situation upon which General Electric relied, cf. <u>Serra, Garabis & Co.</u> v. <u>Municipality</u>, 42 P.R.R. 452, 468 <u>et seq.</u>; it cannot assume now a conduct contradictory to the one which eair.ed appellant's trust. <u>Cantro de Dependientes v. Montalvo</u>, 72 P.R.R. 381, 384 (1951); <u>Lausell Marxuach v. Díaz de Yáñez</u>, *103 D.P.R. 533 (1975)*; <u>Crossroads Dev. Corp. v. E.L.A.</u>, *103 D.P.R. 789 (1975)*.

---

<u>seq.</u>) and it requires in its pertinent part:

<u>Art. 1</u> - "Any contractor in charge of the construction, reconstruction, extension, modification or repair of a work, building or structure whose estimated cost as specified in the construction permit issued by the Permit Office of the Planning Board is greater than fifteen thousand (15,000) dollars shall post a payment bond in favor of the Secretary of Labor, which shall be binding and effective on and after the date the work is started."

<u>Art. 2</u> - "The bond above mentioned shall be posted by the contractor in cash, certified check, or with the undertaking of a bonding company authorized to do business in Puerto Rico, and said payment bond shall answer jointly and severally with the contractor, up to the limit of the bond liability, for the payment to the contractor's laborers and employees of the wages earned by them in the work. The amount of the payment bond shall not be less than 10 percent of the estimated cost of the work under construction."

[3] The verbatim text of this document is the following:

"January 17, 1972

"Concrete Builders of Puerto Rico, Inc.

Box 13098

Santurce, Puerto Rico

"<u>ATTENTION</u> : Mr. Rolando Díaz, President

'<u>REGARDING</u>; Cooperativa de Vivienda la Hacienda FHA //056-44032-MAN

"Dear Mr. Díaz:

"This is to verify that Berens Mortgage Bankers, Inc. holds in its possession a Letter of Credit in lieu of a Payment and Performance Bond, for the above cited project. This Letter of Credit satisfies the requirements of Berens Mortgage Bankers as well as the requirements of the United States Department of Housing and Urban Development.

"Said Letter of Credit serves as assurance for payment of material and labor on this project.

"Very truly yours,

"BERENS MORTGAGE BANKERS, INC.

[Signed] "FRANK ELORRIAGA EXECUTIVE VICE PRESIDENT"

[4] "The good faith, in the pertinent sense herein, is the loyalty in the dealing, the honest and faithful conduct. It presumes the keeping of faithfulness to the word given and not to defraud the trust, or abuse thereof; it presumes a manner of conduct as it should be expected from those who, with an honest thinking, take part in the traffic as contractors. What it is sought to be achieved, it has been said, is that the development of the juridical relations, the exercise of the rights, and the performance of obligations, be produced according to a series of principles which the juridical conscience considers necessary, even if they have not been formulated. The good faith, says Betti, is presented as a hermeneutical criterion in view of which the contract should be construed, and as a criterion of conduct according to which obligations should be performed." Diez-Picazo, <u>La Doctrina de los Propios Actos</u>, 1963 ed., page 157.

Case:17-03283-LTS Doc#:4732-1 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc: Exhibit International General Electric v. Concrete Builders of P.R., Inc. 104 D Page 4 of 4

Int'l Ge v. Concrete Builders of P.R.

It is not lawful for anyone to go or act against his own acts.

[6] In the autonomous juridical construction which shapes the rule of not going against a person's own acts, the effect is produced in an objective manner, in which the true will of the author of the acts does not count at all. The trust which these acts produce in third persons is protected, since going against them would obviously constitute an attack upon good faith. When a person is precluded from going against his own acts, all the doctrine of declaration of will to impose directly a juridical effect is entirely set aside.[5]

Analyzing a situation of facts similar to that of the present case, Puig Brutau comments: "What has been unilaterally declared may have influenced the conduct of others and in the extent it has thus happened, it may be necessary to protect the trust deposited in the appearances. If the juridical relation between the interests of two persons does not arise from what has been declared by the one and the other, it may arise, however, from the conduct of both in their reciprocal influence. As a fundamental postulate of juridical policy the need to protect the trust deposited in what has been pretended by the declaration appears once more. The problem whether a sole declaration of will shall produce effects should be decided—as every juridical problem—according to criteria of juridical policy which in this case are those which advise that said trust should be protected." 1-2 Fundamentos de Derecho Civil. 1959 ed., page 82.

[7-10] The contents of the rule that nobody is allowed to go against his own acts is grounded and rooted in the general principle of Law which orders that one should act in good faith in the juridical life. Contradictory behavior has no place in the field of Law, and should be prevented. This principle has as a parallel in English Law the doctrine of "estoppel."[6] The minimum typical effect which should be acknowledged to unilateral acts[7] is that they set up an "estoppel". The latter prevents that the subject upon whom the unilateral act may be charged may act in contradiction with his declared will.

[11] Since this "going against one's own acts" is a general principle of Law, of universal validity, it spontaneously issues from the provision of art. 6 of the Civil Code instructing that when there is no statute applicable to the case, the court shall decide in accordance with equity, which means that natural justice, as embodied in the general principles of jurisprudence and in accepted and established usages and customs, shall be taken into consideration. Its efficacy, its entailing strength has life and effect of its own, which tend to protect the trust deposited in the appearances, which by extension is the protection of a social interest or the attainment of an ideal of justice. The necessary premises[8] or constituting elements for the application of the juridical rule that no one can go against his own acts may be summarized as follows: (a) A certain behavior of a subject, (b) that he has given life to a situation contrary to reality, that is, apparent and, through such appearances, may influence the behavior of others, and (c) that it be the basis of the trust of another party which has acted in good faith and that, for that reason, has acted in a manner which would cause him prejudice if his trust was defrauded.

Berens is precluded by its own act from rectifying, through a contradictory conduct, its unilateral act which served as bridge, proposed on trust and good faith, for the delivery of materials by General Electric which otherwise would suffer a clear prejudice.

Mr. Chief Justice Trias Monge took no part in this decision.

---

**End of Document**

---

[5] Diez-Picazo, La Doctrina de los Propios Actos, page 151; Puig Brutau, Estudios de Derecho Comparado, page 126 et seq.

[6] "Estoppel" etymologically means nuisance, impediment, obstacle, detention. Lord Coke characterized it in his classical phrase: "because a man's own act or acceptance stoppeth or closeth up his mouth to allege or plead the truth." Diez-Picazo, op. cit., pages 62-3.

[7] "The will or intention [to contract] is shown in an implied manner . . . The most outstanding characteristic which may be attributed abstractly to the implied declaration consists in that it would suppose an incongruency or true contradiction that certain act would not entail the possibility to trust in it as proof that the intention or will to contract exists." II-I Puig Brutau, op. cit., pages 82-3.

[8] Puig Brutau, Estudios de Derecho Comparado - La Doctrina de los Actos Propios. 1951 ed., page 112.