[CERTIFIED TRANSLATION]

## *Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent*

Supreme Court of Puerto Rico

September 28, 2010

AC-2009-14

**Reporter**

179 D.P.R. 990 *; 2010 PR Sup. LEXIS 188 **; 2010 TSPR 206

Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

**Prior History: [**1]** Subject Matter: Appeal of Decision. Court of Appeals: Judicial Region of San Juan, Panel III. Assigned Justice: Hon. Nestor S. Aponte Hernández.

## Summary of the Case

**Main Terms**

Decision, parties, Court, arbitration, case, divorce, as, respondent, this, petitioner, instance, process, property, right, on, matters, to be, arbitration, procedure, dispute, execution, forum, everything, liquidation, mechanism, judgment, since, through, in addition, others

**Attorneys:** Attorneys for Petitioner: Ms. Lizabel M. Negrón Vargas, Esq., Mr. Victor Maldonado Gómez, Esq.

Attorney for Respondent: Ms. Magda C. Morales Torres, Esq.

**Justices:** Opinion of the Court issued by Associate Justice Pabón Charneco. Dissenting and Concurring Opinion issued by Associate Justice Rodríguez, who is joined by Associate Justice Mrs. Fiol Matta.

**Opinion by:** Mildred G. Pabón Charneco

## Opinion

[*993] In San Juan, Puerto Rico, on September 28, 2010.

Today, we are deciding on a dispute pertaining to one of the most crucial aspects of the arbitration process: the execution of the Arbitration Award and its connection with judicial efforts. We must decide whether after an appeal process regarding an Award that ended up being confirmed, it must be concluded that the obligation contained in a certain provision should have been fulfilled upon expiration of the thirty (30) day period that begins to run when the Award is issued as stated in the Award, or on the contrary, when the judicial proceedings end.

We hereby conclude that the rights and obligations [**2] contained in an Award that has been confirmed by the courts are valid and enforceable since the date that they are issued. This is in accordance with the purpose of the arbitration process and the aim of the Award. However, in view of the particular facts of this case, in which, due to the very acts of the party who was favored by the decision, it was impossible to comply with such period, we cannot allow the failure to comply with this term to favor this party.

[*994] I

In a Judgment dated June 3, 1999, the marriage between Mr. Jorge Alfredo Vivoni Farage, hereinafter, the petitioner, and Mrs. María de Lourdes Ortíz Carro, hereinafter, the respondent, was dissolved. The Judgment included a series of stipulations, among which, the following: submitting to arbitration the matters pertaining to the division and liquidation of the community property that they had, once Divorce by mutual consent was declared.[1]

---

[1] The parties stipulated that the Award would be final, enforceable and unappealable, and they did not agree that it would be issued in accordance with the law. Subsequently, they

Case:17-03283-LTS Doc#:4732-2 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc: Page 2 of 18
Exhibit Vivoni Farage v. Ortiz Carro 179 D.P.R. 990 (2010) Page 2 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

 [**3] The dispute that is before our consideration involves one of the properties to be liquidated, the conjugal home located in the *La Península* Subdivision in Cidra (hereinafter "*La Península*"). This real estate property was registered to the name of Steri-Tech, Inc., a corporation authorized and organized to conduct business under the laws of Puerto Rico and whose sole shareholders were both ex-spouses.

After several procedural events, including the denial of the appeal of the *Partial Award* [2] and the *Final Award* [3] filed by the respondent, the arbitrator issued an *Updated Final Award* on March 13, 2001. He thereby definitively distributed the real and personal assets of the community property, including the Steri-Tech, Inc. [*995] corporation and *La Península*. In relation to the corporation, the Award held that:

> The corporate shares of Steri-Tech, Inc. were awarded to VIVONI [...] VIVONI is granted a thirty (30) day period from the date of receipt of this award to pay to ORTÍZ the sum of $1,716,752 pay off the balance of her stake in the community property, which includes the shares that she holds therein. Appendix of [**4] Writ of Appeal, p. 867.

With respect to *La Península*, the Award held that:

> Because one of the real estate properties awarded to ORTIZ (the residence in *Urb. La Península* in Cidra, Puerto Rico) and the personal property assets located in said property belong to the Steri-Tech, Inc. corporation, VIVONI is obligated to make the pertinent efforts, while meeting all legal requirements, for these properties to be transferred to ORTÍZ free and clear of any charges and liens. If for any reason whatsoever, the title to these properties cannot be transferred to ORTÍZ, within thirty (30) days of the date of this Award, VIVONI shall be obligated to pay to ORTÍZ <u>in cash</u> the sum corresponding to the value assigned to this property in the division of assets, including the value assigned to the items of personal property located within the property. [4]

> Because the owner of these properties is the Steri-Tech, Inc. corporation, the transfer of the properties to ORTÍZ may involve a tax impact. VIVONI shall assume any tax debt or liability that may arise as a consequence of the transfer from the corporation to [**5] ORTÍZ of the corresponding properties, because ORTÍZ must receive the properties for the value assigned to these hereunder, free and clear of any charges or [sic] liens. Appendix 11 of the Writ of Appeal, p. 870.

 [**6] It is worth pointing out that on April 6, 2001, the petitioner, through his legal counsel, asked the respondent to let him know when they could execute the necessary deeds to transfer the real properties awarded to her. [5]

 [*996] On her part, on May 1, 2001, the respondent petitioned the Court of First Instance to vacate the *Updated Final Award* and to refuse to put it into effect. Essentially, she argued that the Award had failed to resolve all the disputes that were submitted to the Arbitrator; that the arbitrator had violated her right to due process when he conducted *ex parte* interviews with employees of Steri-Tech, Inc.; and that the Arbitrator exceeded the powers granted in the submission agreement, resolving matters in patent disregard for the law. The lower court denied this request. Moreover, the petitioner asked for the Award to be corrected and modified in terms of the amounts and calculations [**7] of certain items. To this request, the court of instance ruled "[n]othing further to decide on."

In disagreement with the decisions of the court of first instance, both parties turned to the Court of Appeals. On

---

modified the initial agreement several times—to extend the issue date of the Award; to exclude certain assets from the award; and to covenant that in the event of any trouble or impasse in implementing and/or executing agreements related to the management, administration of assets or appeal of the arbitration Award, the parties could resort to the ordinary procedure laid down in relevant regulations.

[2] Both parties requested that a Partial Award be issued to distribute the assets as soon as possible, because certain information requested by the Arbitrator in order to issue the Final Award was not available and because of the alleged precarious financial situation that one of the parties was going through. The Award was issued on May 15, 2000. Appendix 11 of the Writ of Appeal, p. 828. On May 30, 2000, the respondent filed a "Motion to Vacate Partial Award."

[3] On May 31, 2000, the Arbitrator issued the Final Award reserving for later his final computation of certain items, because he had yet to receive updated information. On June 28, 2000, the respondent appealed the Final Award. The Court of First Instance ruled that the arbitrator had to complete his task with a period of forty-five (45) days.

[4] The total value assigned by the Award to *La Península* and the personal property contained therein was $1,100,000.

[5] Appendix 7 of the Writ of Appeal, p. 394.

September 19, 2002, the intermediate appellate court vacated the appealed Resolutions and concluded that the Award should be reviewed. Consequently, it remanded the case to the lower court for it to determine whether the Award should be vacated, because it deviated from what was agreed and constituted a violation of due process, and whether there were errors in the computation of the items in question. Furthermore, it ordered the appointment of a Commissioner to update the items that would be awarded to each party and for the necessary precautionary measures to be taken to ensure that the assets would be protected and managed effectively.

Then on December 6, 2005, the court of instance issued a Judgment dismissing the appeal of the *Updated Final Award* and confirming the Award. However, it modified and updated several items.

As the record shows, the petitioner, through his legal counsel, contacted the respondent again on December 28 **[**8]**, 2005, asking her to coordinate the execution of the pertinent Deeds.

Dissatisfied with the decision of the Court of First Instance, the respondent turned to the Court of Appeals again, making thirty-two (32) assignments of **[*997]** error. On December 28, 2006, the appellate court concluded that the *Updated Final Award* was valid and that it had resolved all the disputes existing between the parties, therefore, the fact that it was being questioned did not affect its finality but rather its enforceability. It also modified certain items.[6] With regard to this decision, the respondent turned to us. Through a Resolution issued on April 20, 2007, we denied the petition for writ of certiorari and two (2) reconsiderations that she had filed for. The mandate was remanded to the Court of First Instance on July 17, 2007.

On July 28, 2007, the petitioner **[**9]** sent a letter to the respondent to perform the pertinent transfers of title of the real estate properties contained in the award. On August 1, 2007, the petitioner appeared before the court of first instance seeking partial execution of the award with respect to the real estate properties. Subsequently, the petitioner was ordered to prepare a draft order on partial execution.

On October 4, 2007, the respondent filed with the Court of Instance a request for the liquid sum of one million one hundred thousand dollars ($ 1,100,000) corresponding to the award of *La Península*. She also requested interest on this sum at a rate of ten point fifty percent (10.50%) – the prevailing legal interest rate as of the issue date of the Award on March 13, 2001. She also indicated "that even if the aforementioned 30-day period is calculated from the date when the Resolution entered by the Supreme Court in this case became final and enforceable, the period has expired."[7]

**[**10]** On October 5, 2007, notified on November 14, 2007, the Court of First Instance Granted the petitioner's request and issued an Order to issue **[*998]** writs for the pertinent Deeds to be done to transfer any and all real estate property between the parties. However, on November 13, 2007, the respondent filed a second motion reiterating her request of October 4, 2007. The Court of First Instance gave the petitioner the opportunity to express himself with regard to the motions filed by the respondent. Then, on December 3, 2007, the respondent filed a third request for partial execution of Award. These were denied by the Court of First Instance on December 10, 2007.

Finally, on December 19, 2007, the pertinent writ was issued, and on February 4, 2008, the ordered Deeds were executed.[8] Mrs. Ortíz appealed this Order with the Court of Appeals on January 9, 2008. The appeal was issued on March 4, 2008, and all proceedings before the Court of First Instance were consequently stayed.

**[**11]** On November 26, 2008, the intermediate appellate court vacated the appealed decision and declared null and void the writs issued and the Deeds executed, on the grounds that since the thirty (30) day period laid down in the Award had expired and "no efforts whatsoever had been initiated for the transfer," it was ordering the payment in cash of the amount corresponding to the value assigned to the property in dispute, plus legal interest thereon, since April 12, 2001, until the payment was made. It based its decision on the

---

[6] Mrs. Ortíz Carro filed a Motion to Reconsider on January 22, 2007. The motion was denied in a Resolution of February 9, 2007.

[7] Appendix of the Writ of Appeal, p. 718.

The record shows that the respondent also sent a communication by fax to the petitioner on September 10, 2007,

expressing that it he had to satisfy the sum of one million one hundred thousand dollars ($1,100,000), plus interest thereon at the prevailing legal rate on the issue date of the Award, in cash.

[8] On February 4, 2008, through a Deed of Assignment, Steri-Tech, Inc., represented by the petitioner, assigned ownership of *La Península* to the respondent who was represented by the Bailiff of the Court.

fact that the motions filed had not challenged what was provided in the Award with regard to *La Península*. It concluded that counting the thirty (30) day period since July 17, 2007, would constitute an amendment of the Award, which is a power that the court of instance does not have.[9]

In disagreement, the petitioner turned to this Court **[*999]** through a writ of appeal, making **[**12]** the following assignments of error:

> **The Court of Appeals erred when it held that the provisions of the arbitration award were enforceable since the date that the award was issued, despite the fact that the respondent filed multiple appeals from the award, which prevented it from being executed.**
>
> **The Honorable Court of Appeals was barred from deciding on disputes already resolved through judgments of the intermediate appellate court, which are final, enforceable and unappealable. Furthermore, it erred when it annulled certain orders [sic] of the CFI of which review was not sought in a timely fashion and/or through a petition for writ of certiorari, but rather, through motions in aid of jurisdiction that were flatly denied by the Court of Appeals**.[10]

In a Resolution **[**13]** issued on July 17, 2009, we granted the petition for writ of certiorari filed by the petitioner and granted the respondent time to show cause as to why we should not issue the writ.

In his petition for writ of certiorari, the petitioner, on the one hand, argues that the Award became enforceable when the mandate was remanded on June 17, 2007; which is the date when he could turn to the court of instance to seek enforcement of the Award. He stated that this is a direct consequence of the right that parties have to appeal an Arbitration Award or seek to have them corrected. Prior to this date, the appeal filed prevented the provisions of the Award from being specifically performed and enforced.

The petitioner also argues that, given the facts of the case, the Doctrine of Estoppel is applicable here, because the respondent is now trying to benefit from the fact that the term granted expired as a result of her own actions.

On her part, the respondent argues that the Award had to be executed ever since it was issued, particularly when the **[*1000]** issues pertaining to the property were never questioned.[11] Furthermore, she states that the Orders of the Court of First Instance alter the rule of judicial abstention **[**14]** in matters resolved by an Arbitration Award. In this regard, she states that "the existing rule is that courts shall not intervene in, or alter, an arbitrator's decision in order to apply applicable laws."[12]

She also states that Steri-Tech, Inc. and the petitioner have failed to provide proper maintenance to *La Península*.

Furthermore, she indicates that when the petition for writ of **[**15]** certiorari had already been filed with the Court of Appeals, the petitioner went ahead and executed the Deeds before a Bailiff.[13]

Having examined the arguments of both parties, we hereby decide as follows.

---

[9] The petitioner filed a Motion to Reconsider on December 22, 2008, which was denied by the Court of Appeals.

[10] Given the conclusion that we have reached and the fact that the record shows that the petition for writ of certiorari filed by the respondent with the Court of Appeals was filed in a timely manner, it is unnecessary to discuss this assignment of error that the petitioner makes.

[11] We are not going to further analyze the respondent's argument that the issues pertaining to the property were never questioned. The extensive record shows that at all times the respondent questioned the validity of the Award in its entirety. In fact, in the appellate process held in relation to her appeal of the Updated Final Award, she argued that there was still a community of assets pending liquidation between the parties, because the arbitrator had been stripped of the duty to carry out the division and liquidation thereof.

[12] *Motion to Oppose Issuance of Writ of Certiorari*, p. 2.

[13] Given that the Deeds were executed on February 4, 2008, and the writ of certiorari was issued by the Court of Appeals on March 4, 2008, we refer to Rule 35(A)(1) of the Regulations of the Court of Appeals which provides that:

> **The filing of a petition for writ of certiorari shall not stay proceedings pending before the Court of First Instance**, unless an order providing otherwise is issued, either on its own initiative, or at the request of a party, by the Court of Appeals. The issuance of the writ of certiorari shall stay proceedings before the Court of First Instance, unless the Court of Appeals orders otherwise. 4 L.P.R.A. App. XXII-B R.35. (Emphasis added.)

Case:17-03283-LTS Doc#:4732-2 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc: Exhibit Vivoni Farage v. Ortiz Carro 179 D.P.R. 990 (2010) Page 5 of 18 Page 5 of 18

Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

II

For several decades, many jurisdictions have adopted alternative dispute resolution methods. Puerto Rico has joined [**16] this trend and has promoted the development of informal alternative dispute resolution mechanisms,[14] first through mediation programs [*1001] and, subsequently, through arbitration and neutral evaluation.

Thus, this Court has declared that:
> … it is the public policy of the Judicial Branch to foster the utilization of mechanisms that supplement the traditional adjudicative system in order to provide justice in a more efficient, speedy and cost-effective manner. Rule 1.01 of the Alternative Dispute Resolution Methods Regulations, 4 L.P.R.A. App. XXIX R.1(1.01).

The alternative methods of reference have been applied to a variety of disputes filed in court, which go beyond the traditional commercial, labor-relations disputes. Among these: collection of monies, child support, visitation rights, assaults, landlord-tenant [**17] disputes, disputes between couples, relatives and neighbors, and disputes pertaining to construction, services or sales contracts.[15]

Now, we must analyze a very important aspect that arises in the instant case and its long arbitration and judicial process: the use of arbitration for the division and liquidation of marital property after a Divorce by mutual consent has been decreed. Although neither of the parties have argued this issue, we cannot ignore that this question is extremely related to the dispute brought before us by the parties. We must necessarily express ourselves in this regard. Otherwise, the silence of the Court in this regard may be construed to mean that the Court tacitly approves this and promotes such actions.

[**18] A

Our legal system favors the use of alternative dispute resolution methods, especially arbitration. Act No. 376 of May 8, 1951, known as the Puerto Rico Arbitration Act, *32 L.P.R.A. Section 3201*, through broader and more flexible [*1002] language than its federal counterpart,[16] allows for two (2) or more parties to agree in writing that will submit to arbitration any dispute that may be the object of an action existing between them as of the date of the arbitration clause agreement. *32 L.P.R.A. Section 3201*. See, D.M. Helfeld, *La Jurisprudencia Creadora: Factor Determinante en el Desarrollo de Arbitraje en Puerto Rico* [Creative Case Law: Determining Factor in the Development of Arbitration in Puerto Rico], 70 Rev.Jur. U.P.R. 1, 54-55 (2001).

Hence, we have examined the use of stipulations by which parties agree to submit any disputes between them to arbitration [**19] in order to remove from the court any commercial disputes. *Febus y otros v. MARPE Const. Corp., 135 D.P.R. 206 (1994)*. In this regard, we have expressed that as a general rule, the judge will accept the stipulations submitted to him or her by the parties in order to put an end to an action or an incident within the action. Rodríguez Rosado v. Zayas Martínez, 133 D.P.R. 406, 410 (1993). That is because stipulations "seek to avoid delays, drawbacks and expenses and their use must be encouraged in order to fulfill the purpose of providing speedy and inexpensive justice." Mun. de San Juan v. Prof. Research, 171 D.P.R. 219, 238 (2007). In view of this, we cannot ignore that such purposes are in keeping with the purposes of arbitration.

However, courts are not obligated to approve stipulations that are submitted to them. *Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61, 72 (1987)*. See also, Rodríguez Rosado v. Zayas Martínez, supra. The autonomy of intent that contracting parties have is not unrestricted, because "[c]ontracting parties can establish any covenants, clauses and conditions that they may deem convenient, as long as these are not contrary to the law, [**20] morals, or public order." Art. 1207 of the Civil Code of Puerto Rico, *31 L.P.R.A. Section 3372*.

To that effect, we have been particularly careful when examining stipulations filed in family cases and insistent [*1003] in cases pertaining to child support. Rodríguez Rosado v. Zayas Martínez, supra; *Negrón Rivera y Bonilla, Ex parte, supra*. Likewise, today, we wish to emphasize again that judges must exercise great prudence when examining stipulations filed in family cases, especially stipulations between spouses in a case of divorce by mutual consent.

---

[14] Statement of Purpose, Act No. 19 of September 22, 1983, 1983 Laws of Puerto Rico 422.

[15] See, Alternative Dispute Resolution Methods Bureau, Aggregated Data from Dispute *Mediation Centers for Fiscal Year 2005-2006*. Available at http://www.ramajudicial.pr/NegMed/Centros_Mediación/datos/CMC05-06.pdf.

[16] Pub. Act No. 282 of July 30, 1947, as amended (61 Stat. 669), 9 U.S.C. sec. 1 et seq., known in English as the *Federal Arbitration Act*.

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc:
Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 6 of 18   Page 6 of 18

Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

**B**

Moreover, in *Figueroa Ferrer v. E.L.A., 107 D.P.R. 250, 277 (1978)*, we acknowledged the ground of mutual consent for divorce and pointed out that no petition for divorce by mutual consent whatsoever would be accepted unless the parties involved attach to their petition a stipulation on the division of their assets; the support to be provided between the parties; as well as other consequences of the divorce. That is because we acknowledge how delicate these matters are and, also, to make sure that no petition for divorce is filed out of rashness or coercion, until the Legislative Assembly enacts [**21] rules providing otherwise. *Íd.* Furthermore, we have stated that:

> … the purpose of imposing the **requirement for parties to stipulate certain matters pertaining to the division of their assets is for the parties not to have to face each other again once their divorce is decreed, in order to discuss matters pertaining to the liquidation of an economic regime, which can give rise to hostility and disagreement between the parties**. All components involved in this process—judges, attorneys and petitioners—must make sure that before such stipulations are drafted, the parties have gone through a deliberative process that has allowed them to reflect upon the economic consequences that the divorce will have for each of them. Sometimes parties are in a hurry to get a divorce and consequently reach agreements that they are unable to fulfill, which has the effect of overburdening the courts with incidents related to the breach of stipulations. *Igaravidez v. Ricci, 147 D.P.R. 1, 7* esc. 2 (1998) (Emphasis added).

In the instant case we have seen how the purpose of one of the rules established in *Figueroa Ferrer v. E.L.A., supra*, was distorted, using the stipulation to refer the action to an arbitration process, and the consequences [**22] that this misuse caused. The court of instance authorized the dissolution of the marriage bonds existing between the petitioner and the respondent [*1004] on the grounds of mutual consent.[17] Furthermore, the court approved the stipulation that indicated that any matters pertaining to the consequent liquidation of their community property would be resolved through arbitration. Eleven (11) years later, the parties are still litigating these assets. Throughout the entire arbitration and judicial process there has been a lack of consensus between the parties about the liquidation of their assets.

Based on everything stated above, and given the fact that using arbitration in these cases can exacerbate other problems, due to a lack of clear parameters delimiting the use of arbitration in this type of relationship, this Court hereby rejects the use of stipulations to submit to arbitration [**23] matters pertaining to the division and liquidation of a couple's community property after their **Divorce has been decreed, on the grounds of mutual consent**. Otherwise, very important and delicate aspects that need to be resolved upon dissolving the marital bonds would remain unresolved.

We want to point out that we are not at all denying the benefits that arbitration can provide in the essential aspects of a divorce and other types of family disputes.[18] [**24] [*1005] Although for certain couples

---

[17] The divorce action in the instant case was originally filed on grounds of fault. Subsequently, the parties agreed to modify this to mutual consent.

[18] Various authors have acknowledged the benefits of the various dispute resolution methods available for family law matters, especially divorce, both to address matters before, and after, the divorce. See, J.F. Kessler et al., *Why Arbitrate Family Law Matters?*, 14 J.Am. Acad. Matrimonial Law 333 (1997); T.E. Carbonneau, *A Consideration of Alternatives to Divorce*, 1986 U. Ill. L. Rev. 1119, 1156; R.R. Block, *Divorce Arbitration: An Alternative to Mediation* in *Contemporary Matrimonial Law Issues: A Guide to Divorce Economics and Practice*, New York, Ed. Law and Business, Inc., 1985, p. 784-794.

Likewise, some authors have argued in favor of developing special laws to regulate arbitration for marital disputes and acknowledge the difficulty involved in this type of arbitration, based on general arbitration statutes. See, F.L. McGuane, Jr., *Model Marital Arbitration Act: A Proposal*, 14 J. Am. Acad. Matrimonial Law 393 (1997). See also, T.E. Carbonneau, *supra*, p. 1127. ("[T]raditional techniques of arbitral adjudication would be of only limited utility in the divorce context."). In 1999 the State of North Carolina had already adopted an arbitration statute designed for family law cases. The statute has undergone certain amendments. Other states such as Colorado, Connecticut, Indiana, Michigan, New Hampshire and New Mexico have provided legislation to that effect. While some jurisdictions have permitted, through case law, the arbitration of certain family law matters in light of their general arbitration statutes, other jurisdictions have supplemented their general statutes with specific rules to deal with family law matters. See, L.P. Burleson, *Family Law Arbitration: Third Party Alternative Dispute Resolution*, 30 Campbell L. Rev. 297, 297-98 (2008) ("Unfortunately, due to the unique nature and needs of matrimonial cases, general commercial arbitration statutes are

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc:
Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 7 of 18   Page 7 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

adversary proceedings in court is the best option to resolve all matters pertaining to their divorce, such proceedings may not be the best option for other couples.[19] Nonetheless, in Puerto Rico there are no parameters to deal with the economic effects of divorce by arbitration. It is not incumbent on us to create these. The situation would be different if the Legislative Assembly were to authorize this and establish parameters for these cases.

As opposed to what occurs in commercial and labor relations, a divorce and everything that a divorce entails is charged with the most intimate of emotions, feelings and not necessarily both spouses are in the same financial and emotional position, among other aspects.[20] [**25] This makes it difficult for us to put divorce arbitration proceedings on a level with commercial arbitration proceedings.[21]

Nonetheless, given how long the parties have been litigating this case, it would be extremely detrimental for them if we were to disregard the arbitration and judicial processes that have been carried out over the past eleven (11) years. After all, the judgment that established it has become final and [*1006] enforceable. However, we do warn that we do not favor the distorted use of arbitration in divorce cases, much less that court authorize this type of stipulation in cases of divorce by mutual consent. In those cases, the stipulation must cover issues pertaining to the division of assets. *Figueroa Ferrer v. E.L.A., supra*.

Thus, today, we reiterate our statement in *Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61 (1987)*, hoping that this time our words will be taken into consideration:

> The facts of the case before us demonstrate the problems that can arise in cases of divorce on [**26] the grounds of mutual consent. These demonstrate once again the urgent need to enact standard guidelines and regulations in this crucial area of family law and the need for greater, effective and adequate involvement on the part of the courts and the parties' attorneys in the process. These also reflect the lack of responsible advice from attorneys to their clients. *Íd. p. 66*.

Having said this, let us analyze the particular dispute brought before our consideration.

III

A dispute has been brought before us regarding the execution of an Award that was confirmed to be valid by the courts, in accordance with Act No. 376, *supra*. Let us point out that our examination is limited to the execution of the Award with regard to the *La Península* real estate property.

A

In our legal code, there is a public policy that favors that parties submit themselves to arbitration proceedings, in accordance with the autonomy that contracting parties have, as long as this is stipulated and the process is limited to what is stipulated. *32 L.P.R.A. Section 3201*; *31 L.P.R.A. Section 3372*. See, *Municipio de Mayagüez v. Lebrón, 167 D.P.R. 713 (2006)*; [**27] *Crufon Const. v. Aut. Edif. Púbs., 156 D.P.R. 197 (2002)*.

Through this alternative dispute resolution method, the parties replace the courts with an arbitrator who [*1007] decides on all the questions of fact and of law existing between them. *Autoridad sobre Hogares v. Tribl. Superior, 82 D.P.R. 344 (1961)*; *Junta Relaciones del Trabajo v. N.Y.&P.R. S/S Co., 69 D.P.R. 782 (1949)*. Once the proceedings before the arbitrator have ended,

---

often deficient and provide insufficient authority to address all of the issues that we face in our matrimonial cases.") See also, G.K. Walker, *Family Law Arbitration: Legislation and Trends*, *21 J. Am. Acad. Matrimonial law 521 (2008)*; G.K. Walker, *Arbitrating Family Law Cases by Agreement*, *18 J. Am. Acad. Matrimonial Law 429 (2003)*.

[19] M.S. Herrman *et al., Mediation and Arbitration Applied to Family Conflict Resolution: The Divorce Settlement*, 34(1) The Arbitration Journal 17, 18, 21 (1979). (It expresses that "[t]he use of an adversarial model to reach a settlement usually increases trauma and escalates conflict." However, "[t]here are extreme cases, both positive and negative, where the techniques are not appropriate. Couples deciding on an equitable settlement prior to seeking legal assistance do not require third-party intervention. The techniques would also not be appropriate if the level of conflict between the parties is too high to permit communication….")

[20] As to the potential inequality between the parties, see, A.R. Imbrogno, *Arbitration as an Alternative to Divorce Litigation: Redefining the Judicial Role*, *31 Cap. U.L. Rev. 413, 427, 437 (2003)*("The problem is that to be effective, ADR demands that the participating parties be in a position of relatively equal power.").

[21] See, M. Domke, *Domke on Commercial Arbitration*, 3rd. ed., Minnesota, Ed. West Thomson, 2009, Vol. I, p. 41-1; T.E. Carbonneau, *supra*, 1154-55.

Case:17-03283-LTS Doc#:4732-2 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc: Exhibit Vivoni Farage v. Ortiz Carro 179 D.P.R. 990 (2010) Page 8 of 18 Page 8 of 18

Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

the arbitrator's rulings in the award are, as a general rule, final and unappealable, therefore, any questions addressed in the award cannot be litigated before the courts. *J.R.T v. Otis Elevator Co., 105 D.P.R. 195 (1976)*. This rule is based on the principle of self-restriction and the deference that we, the courts, must show arbitrators. *Febus y otros v. MARPE Const. Corp., supra.*

Nevertheless, our legal code acknowledges certain occasions when court intervention is authorized. Judicial review is permitted when the parties expressly agree that the dispute submitted to the arbitrator must be resolved in accordance with the law. *Íd.,* p. 216-17; **[\*\*28]** *U.C.P.R. v. Triangle Engineering Corp., 136 D.P.R. 133, 142 (1994)*; *Rivera v. Samaritano & Co., Inc., 108 D.P.R. 604, 608 (1979)*. Furthermore, Act No. 376, *supra*, grants a period of one (1) year for an award to be confirmed and a period of three (3) months to move for revocation, modification or correction of an award, limited to the grounds set forth in the law, which were previously examined by this Court. *32 L.P.R.A. Sections 3221* and *3224*. Also see, *Autoridad sobre Hogares v. Tribl. Superior, supra.*

Upon concluding the process and issuing an Order confirming, modifying, correcting or vacating the award, the court accordingly issues a judgment that "shall have the same force and effect, in all aspects, and shall be subject to the same legal provisions that apply to judgments in a civil action" and such judgment can be appealed through a petition for writ of certiorari. *32 L.P.R.A. sections 3225*, 3227, 3228.

In the instant case the courts intervened because the parties timely filed petitions for the court to vacate the Award on the one hand and to correct the Award on the other hand. However, **[\*1008]** one of the parties turned to us petitioning that we examine **[\*\*29]** specifically when an Award—which orders the performance of a legal transaction within a period of time that starts running on the issue date of the Award—becomes final and enforceable. Therefore, we are focusing our attention on the enforceability of an arbitration award.

**B**

In many cases, awards are executed voluntarily by the parties. M. Domke, *Domke on Commercial Arbitration*, 3rd. ed., Minnesota, Ed. West Thomson, 2009, Vol. II, p. 41-1; D.M. Helfeld, *supra*, p. 100 (2001). Under these circumstances, our statement pursuant to Article 21 of Act No. 376, *supra*, to the effect that "[j]udicial confirmation of the validity and effectiveness of an award that is otherwise valid is not necessary" is applicable here. *Autoridad sobre Hogares v. Tribl. Superior, supra, p. 361*.

However, there are situations where the parties – or one of the parties – disagrees with the validity or accuracy of an award, refuses to comply with it, or simply prefers to have the courts confirm the award. In these situations, in the event that a party does not voluntarily comply with the award, the party that is seeking execution of the award can seek confirmation of the **[\*\*30]** award through summary proceedings and its subsequent execution through the procedures established for the execution of judgments. *32 L.P.R.A.* Sections *3202*, 3221, 3225, 3227. See also, M. Domke, *supra*, p. 42-1; S.J. Ware, *Principles of Alternative Dispute Resolution*, 2nd. ed., Minnesota, Ed. West Thomson, 2001, p. 22, 109-10.

It is worth pointing out that the fact that an award is confirmed by judgment does not imply that the award lacked validity and effectiveness until the judicial process ended. And rejecting it during such period of time would defeat the final and binding nature that distinguishes an arbitration award and would foster the use of delay tactics so as to not comply with the award.[22] Therefore **[\*1009]**, we conclude that the rights and obligations of the parties were determined in the Award and not by the judgment that confirmed it. However, given the absence of voluntary execution, the Award certainly cannot be enforced without other coercive measures, but for

---

[22] We had previously held that an award must be complied with from the moment that it is issued in labor relations arbitration. This is regardless of the subsequent judicial process. See, **Junta de Relaciones del Trabajo v. N.Y.&P.R. S/S. Co., 69 D.P.R. 814, 816 (1949)** ("The award involved here is not ours. It was entered by the Committee and it was issued on June 21, 1948. When it is enforced, therefore, it is enforced retroactively to the date when it was issued. To determine otherwise would allow employers to use delay tactics in actions as a means to postpone for months the effective date of an award that validly orders reinstatement."] Also see, **Marion Mfg. Co. v. Long, 588 F.2d 538 (6to Cir. 1978)**.

Although we do not rule out that an arbitration may entail for good cause an extensive subsequent judicial process, we will not tolerate the use of delay tactics that affect the purpose of arbitration and attempt to relitigate disputes in courts. *J.R.T. v. Otis Elevator Co., 105 D.P.R. 195 (1976)*; **Autoridad sobre Hogares v. Tribl. Superior, 82 D.P.R. 344 (1961)**. Let us warn that the abuse of unfounded judicial proceedings to delay an arbitration process or the execution of an award may result in sanctions.

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc:
Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 9 of 18   Page 9 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

reasons of equity as we will discuss below, this failure to execute cannot benefit the party who initially refused to comply with the Award.

 [**31] Moreover, the Legislative Assembly contemplated the situation in which one of the parties sought confirmation of an award while the other party timely moved for the revocation, modification or correction thereof, in accordance with the above-cited Act No. 376. *32 L.P.R.A. Section 3224*. When faced with such a situation the statute clearly provides that the judge may stay the proceedings initiated by the other party to seek enforcement of the Award, while the request to revoke, modify or correct the award is addressed. *Íd*.

It is indisputable that on occasions the court will prefer not to order the execution of an award that a party is appealing or seeking to modify, until a decision is issued on the motion to revoke, modify or correct it. Under other circumstances, such as when certain provisions of the award are not questioned and can be separated from the provisions that are questioned,[23] the court may allow the proceedings to enforce the award to continue. This is up to the sound discretion of the trier of facts.

 [**32] [*1010] In the instant case, none of the parties turned to the courts to seek the confirmation and execution of the *Updated Final Award* as soon as it was issued. On the contrary, the respondent timely sought its revocation, and the petitioner argued to have it corrected. The Award was finally confirmed with certain corrections and updates that by no means affected the provisions regarding *La Península*. Therefore, the provision that awarded to the respondent the property – or an amount equivalent to its value – was valid and binding from the moment the Award was issued.

However, the principles governing arbitration are not absolute either. The petitioner's argument regarding the application of the Doctrine of Estoppel to the respondent's request does have merit. Thus, we will now analyze the doctrine of reference.

**C**

The prohibition against *venire contra factum* or "going against one's own acts " forms part of Article 7 of the Civil Code, 32 L.P.R.A., Section 7, and it is based on the need to act in good faith in "developing legal relations, exercising rights and fulfilling obligations." **[**33]** *Int. General Electric v. Concrete Builders., 104 D.P.R. 871, 876* esc. 4, 877 (1976). That is why we have held that "[c]ontradictory conduct has no place in the field of law, and must be barred." *Íd, p. 877*.

Furthermore, we have adopted three (3) elements that justify the application of the Doctrine of Estoppel:[24]

> (a) The determined conduct of a subject, (b) that has led to a situation contrary to reality, that is, apparent and that, through such appearance, could influence the conduct of others, and (c) that is the basis for the trust placed by another party who has acted in good faith and as a result has acted in a manner such that if the party's trust **[*1011]** were to be defrauded, the party would be adversely affected. *Íd., p. 878*.

 [**34] In the instant case, the respondent at all times rejected the transfer of the property that she now argues was never in dispute; she asked the court not to enforce the Award; she argued that the validity of the Award was on hold and therefore the petitioner could not enforce it.

Moreover, the petitioner asked the respondent by letter on several occasions to execute the Deed to transfer *La Península*, even before the respondent had challenged the *Updated Final Award*. Furthermore, the petitioner deposited in court some of the sums due. In due course, he also petitioned the court of first instance to enforce the Award as to *La Península*.

In view of these facts, we are surprised that the respondent is now seeking to have the Award enforced retroactively to the date when it was issued, because the petitioner could have moved for its execution earlier through coercive means; for the thirty (30) day period to be deemed to have expired; and to be granted the payment of the liquid sum, with interest accrued thereon for more than nine (9) years. Her intent is clearly seeking an outcome that is contrary to her prior declarations.

We hereby conclude that all three **[**35]** (3) elements of the Doctrine of Estoppel are met in this case: the respondent engaged in conduct before and during the judicial process that influenced the actions of the

---

[23] J.R.T. v. Otis Elevator Co., supra, p. 202 (1976).

[24] See, J. Puig Brutau, *Estudios de Derecho Comparado: la doctrina de los actos propios* [Comparative Law Studies: the Doctrine of Estoppel], Barcelona, Ariel Pub. Co., 1951, p. 112. See also, L. Díez-Picazo, *La doctrina de los Propios Actos: Un Estudio Crítico sobre la Jurisprudencial del Tribunal Supremo* [The Doctrine of Estoppel: A Critical Study of Supreme Court Caselaw], Barcelona, Bosch Pub. Co., 1963.

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc:
Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 10 of 18   Page 10 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

petitioner to transfer the property. To demand that the petitioner pay the liquid sum and interest thereon nine (9) years after the Award was issued would undoubtedly be detrimental for the petitioner. Therefore, we hereby reject the respondent's request.

Moreover, the respondent claims that the property was not given proper maintenance as required by the intervening corporation.[25] In principle, the Award required that [*1012] the respondent inform the intervening company of any need for maintenance, but at some point in time, the respondent and the minors changed their place of residence and the property ended up in the possession of Steri-Tech, Inc.

[**36] Given that we only have the allegations of the respondent in this regard, and despite our desire to put an end to this dispute as soon as possible, we have no choice but to remand the case to the Court of First Instance for said court to determine whether the intervening company must make any type of repair to the property due to its failure to provide the required maintenance or must make up for the lack of maintenance up until transfer to the respondent.

## IV

Based on the foregoing, we are issuing the requested writ, and reversing the appealed Judgment. We are remanding the case to the Court of First Instance for the proceedings to continue in accordance with what is provided herein.

[*1013] Judgment shall be entered accordingly.

Mildred G. Pabón Charneco

Associate Justice

## JUDGMENT

In San Juan, Puerto Rico, on September 28, 2010.

Based on the foregoing, we issue the requested writ and set aside the appealed Judgment. We remand the case to the Court of First Instance for the proceedings to continue in accordance with what is provided herein.

So agreed by the Court and certified by the Clerk of the Supreme Court. Chief Justice Hernández Denton concurs and makes the following statement [**37] for the record:

> Chief Judge Hernández Denton concurs with the Opinion of the Court. Although he agrees with the outcome reached by the majority, he believes that in strict legality, it was not necessary to have set in this case a rule on the appropriateness of arbitration in cases of divorce by mutual consent. Such dispute was not brought forward by the parties or the forums from which appeals were filed. Therefore, it was not

---

[25] In relation to La Península, the Award specifies that:

> [I]t was the responsibility of both parties to contribute to the funds required to cover all payments related to the real property. The same is true for all the real estate properties that form part of the community property, except the residence located in Urb. La Península in Cidra (which belonged to the Steri-Tech, Inc. corporation and for which the following was agreed:
>
> > 'With regard to the maintenance expenses associated with the real property, which include extermination, electrical systems, air conditioners, the cistern, power generator, electric gate; the intervener shall cover these, and the petitioner shall inform the intervener of the need for these, in writing, or electronically. Moreover, the intervener shall repair the damages caused by Hurricane Georges, <u>except for painting the structure</u>'.
>
> ORTÍZ refused to make any contribution whatsoever and VIVONI had to use [loans received from Steri-Tech, Inc. and withholdings made from the return to be paid to ORTIZ] to make some of the payments.

Moreover, Steri-Tech, Inc. also failed to fulfill its obligation to give the stipulated maintenance to the property in Urb. La Península. Based on the evidence presented, most of the properties that the conjugal partnership was responsible for maintaining did not receive proper maintenance. The same is true for the property that Steri-Tech, Inc. was supposed to give maintenance to.

It is the Arbitrator's conclusion that all of the parties failed to comply with their obligations in this regard and the Arbitrator consequently orders the following:

[…]

**3- Steri-Tech, Inc., at its own expense, must hire the necessary technical personnel to make the necessary repairs to the residence located in Urb. La Península, within the next 30 days**.

**4- Steri-Tech, Inc. must provide to this property the usual maintenance required, until the award is executed**. *Appendix to Petition for Writ of Certiorari*, p. 867. (Emphasis added).

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc:
Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 11 of 18   Page 11 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

discussed or argued during any stage of the judicial process. Thus, what was expressed by the Court about the validity of the arbitration mechanism stipulated by the parties to liquidate their conjugal partnership is a mere **dictum**.

Associate Justice Rodríguez Rodríguez dissents and concurs with written Opinion which is joined by Associate Justice Fiol Matta.

Aida Ileana Oquendo Graulau

Clerk of the Supreme Court

San Juan, Puerto Rico, on September 28, 2010

**Dissension By:** Anabelle Rodríguez Rodríguez

# Dissension

Dissenting and Concurring Opinion issued by Associate Justice Rodríguez Rodríguez which is joined by Associate Justice Fiol Matta

I disagree with the course of action that the majority of this **[\*\*38]** Court has announced today. The opinion before our consideration presents a dispute brought forward by the parties and another dispute created by the Court. The first dispute requires us to determine from which moment on an arbitration award is enforceable. The other dispute, of judicial origin, deals with the issue of whether the arbitration mechanism is available for divorces on the grounds of mutual consent for purposes of liquidating and adjudicating the assets of the conjugal partnership. With respect to the latter, the Court determined by dictum that this mechanism is not available, although, paradoxically, it does validate it in the instant case. I disagree with the position of the majority because I consider that nothing in our legal code mandates such an outcome and it is based **[\*1014]**, among other things, on an unfortunate interpretation of the scope of our ruling in *Figueroa Ferrer v. E.L.A., 107 DPR 250 (1978)*. But above all, because not only does this address a dispute that was not part of what the parties brought forward, but also, because deciding on this issue establishes a limited vision of the scope of our judicial function to resolve new disputes of law.

Moreover, I am concerned by the fact that a majority of the **[\*\*39]** members of this Court are reluctant to use alternative dispute resolution mechanisms in untraditional areas; e.*g.*, *The People on behalf of the interests of minor A.V. L., res. February 17, 2010, 178 DPR    , 2010 TSPR 20*. I consider that this attitude disregards what has been a qualitative advance in the form and manner in which we attempt to address and resolve interpersonal disputes. The Court's position is contrary to the most modern tendencies that foster finding consensual solutions to disputes as a mechanism to promote the good and peaceful coexistence of citizens.

It also worries me that the majority tends to "protect" citizens who try to find solutions to their problems involving personal and family privacy, imposing controls on such statements of intent. That is, protecting a citizen from him or herself. We must remember that in our legal system family relations have been analyzed from the perspective of the right to privacy. *Rexach vs. Ramírez, 162 D.P.R. 130 (2004)*. One of the dimensions of the right to privacy, which is the platform on which our decision in **[\*\*40]** *Figueroa Ferrer, supra*, is based and that the majority cites to validate its decision, is aimed precisely at granting citizens autonomy in making personal decisions. See, M. Galán Juárez, *Intimidad nuevas dimensiones de un viejo derecho* [Intimacy, New Dimensions of an Old Law] Madrid, Ramón Areces University Pub., 2004, p. 130. This implies, inevitably, the acknowledgement of individual freedom as a vehicle to choose and develop one's own life plan, which is why the decision to marry or divorce someone is included in the dimension of **[\*1015]** autonomy of the right to privacy. It is from this perspective that the dispute created by the court and ignored by the majority in this case must be analyzed.

On the contrary, I consider that as judges we must respect the capacity that individuals have to govern their own destiny and their family's destiny. Therefore, I see no problem whatsoever with parties, in appropriate cases, being able to choose to liquidate their marital property through an orderly arbitration process. I consider that "[m]aking the commitment to give parties the power to take responsibility for their own problems and make decisions that they will have to live with **[\*\*41]** for years," will make non-adversary dispute resolution proceedings an everyday reality in our society, which will make "citizens freer to choose the manner in which they wish JUSTICE to be made." L. García Villaluenga, *Mediación en Conflictos Familiares, Una construcción desde el Derecho de familia* [Mediation in Family Disputes, A Construction from Family Law], Reus Pub. Co., Madrid, 2006, p. 509. (Emphasis in original.)

With regard to the only dispute brought forward by the parties, the reasoning of the majority seems confusing and not very convincing. I do agree with the outcome, but

on other grounds.

Let us review summarily the facts of this case.

I

Mr. Jorge Alfredo Vivoni Farage and Mrs. María de Lourdes Ortíz Carro got a divorce by mutual consent on June 3, 1999. As part of the stipulations contained in the petition, they agreed that the division of their conjugal partnership would be done through an arbitration procedure. After several procedural incidents, on March 13, 2001, an *Updated Final Award* was issued, which liquidated all marital assets, awarding to Mrs. Ortíz Carro a piece of real property **[**42]** in Cidra (La Península), that the Steri-Tech, Inc., corporation had ownership of.

**[*1016]** As to the adjudication of La Península, the Award established that it had to be delivered to Mrs. Ortíz Carro free and clear of any charges and liens "within thirty (30) days of the date of the award." If the property was not transferred within the established term, Mr. Vivoni would be bound to deliver the sum of $1,100,000 equivalent to the cash value of the real estate asset. Then on April 6, 2001, Mr. Vivoni sent a letter to Mrs. Ortíz Carro asking her to set a date for the transfer of the real property.

Nevertheless, Mrs. Ortíz Carro filed a request to vacate the Award with the Court of First Instance. Mr. Vivoni then requested a modification of the award with respect to certain items. The Court of Instance denied both petitions. Both turned to the Court of Appeals. The Court of Appeals reversed both resolutions of the Court of First Instance and ordered said court to examine the allegations of both petitioners. After several procedural incidents, on December 6, 2005, the Court of First Instance issued a judgment **[**43]** dismissing Mrs. Ortíz Carro's appeal, but modifying several items of the *Updated Final Award*.

On December 28, 2005, Mr. Vivoni contacted Mrs. Ortíz Carro again to execute the deeds pertaining to the transfer of La Península. However, Mrs. Ortíz Carro, still dissatisfied, turned to the Court of Appeals petitioning it to vacate the judgment issued by the lower court. The appellate court confirmed the award but modified certain items. This Court refused to review the judgment of the intermediate court, and also denied the two motions to reconsider filed by Mrs. Ortíz Carro. The mandate was remanded on July 17, 2007.

On July 28, 2007, Mr. Vivoni asked Mrs. Ortíz Carro to meet and arrange the transfer of La Península. On August 1, 2007, he turned to the Court of Instance to seek partial execution of the judgment. Parallelly, on October 4, 2007, Mrs. Ortíz Carro **[*1017]** petitioned the court for the liquid sum of $1,100,000 pertaining to the award of La Península, as she alleged that the term established in the Award for the transfer had expired **[**44]**, even if it were to be counted from the date when the mandate was remanded to the Court of First Instance. The latter granted Mr. Vivoni's request and issued an Order to transfer the real estate properties. Mrs. Ortíz Carro reiterated her request of October 4, but the lower court denied her request on December 10, 2007.

Mrs. Ortíz Carro turned to the intermediate court, claiming that the Court of Instance erred when it ordered the property to be transferred but not the cash payment, despite the award's language. Before the appellate court issued the writ of certiorari, the Court of First Instance issued the pertinent writ for the execution of the deeds, and on February 4, 2008, the transfer was carried out. Mr. Vivoni appeared on behalf of Steri-Tech Inc. and the Bailiff of the Court appeared on behalf of Mrs. Ortíz Carro. Subsequently, the Court of Appeals reversed the judgment of the Court of Instance and declared null and void the deeds that were executed, on the grounds that the property was not delivered within the period of thirty (30) days established in the *Updated Final Award* of March 13, 2001.

In disagreement, **[**45]** Mr. Vivoni turned to this Court. On July 17, 2009, we issued an order to show cause, ordering the respondent to express herself as to why the writ should not be issued and the decision of the intermediate appellate court reversed. The respondent appeared and the Court now decides as advised.

II

As we stated at the beginning, today, this Court has determined that, due to the rule set in *Figueroa Ferrer v. E.L.A., supra*, the arbitration mechanism is not available for purposes of liquidating and awarding the assets of a conjugal partnership in cases of divorce by mutual consent. The Court states that **[*1018]** in *Figueroa Ferrer*, "we pointed out that no petition for divorce by mutual consent whatsoever would be accepted, unless the parties involved attach to their petition a stipulation on the division of their assets; the support to be provided between the parties; and other consequences of the divorce. That is because we acknowledge how delicate these matters are and, also, to make sure that a petition for divorce is not filed out of rashness or coercion, until the Legislative Assembly enacted other rules."

Case:17-03283-LTS Doc#:4732-2 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc:
Exhibit Vivoni Farage v. Ortiz Carro 179 D.P.R. 990 (2010) Page 13 of 18 Page 13 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

With this background, the majority concludes that in the instant case "the purpose of one of the **[\*\*46]** rules established in *Figueroa Ferrer* was distorted, using the stipulation to refer the action to an arbitration procedure, and the consequences caused by such misuse." It went on to state that:

> "throughout the arbitration and judicial process there has been a lack of consensus between the parties in relation to the liquidation of their assets. Based on everything stated above, and given the fact that the use of arbitration in such cases can exacerbate other problems, due to a lack of clear parameters delimiting the use of arbitration in this type of relationship, this Court hereby rejects the use of stipulations to submit to arbitration matters pertaining to the division and liquidation of a couple's community property after their **Divorce has been decreed by the Court, on the grounds of mutual consent**. Otherwise, very important and delicate aspects than need to be resolved upon dissolving the marital bonds would remain unresolved." (Emphasis in original).

In other words, the Court deems that the liquidation and award of the assets of a conjugal partnership cannot be done after the divorce is decreed, and that, instead, this must be done contemporaneously with the action **[\*\*47]** for divorce, if the grounds invoked are mutual consent. The Court also states that "in Puerto Rico there are no parameters to deal with the economic effects of divorce by arbitration. The situation would be different if the Legislative Assembly authorized this and established parameters for such cases."

 **[\*1019]** In summary, based on the foregoing reasoning, we can conclude that the majority considers that arbitration is not acceptable on the following grounds: 1. Due to the rule set in *Figueroa Ferrer, supra*. 2. Because there was a lack of consensus in this case. 3. Because there aren't any clear parameters to guide the use of arbitration. 4. Because the matter of liquidating marital assets is a delicate matter that cannot be left for after a divorce.

Having ruled out arbitration as a mechanism to liquidate a conjugal partnership, the Court expresses the following:

> "Nonetheless, given how long the parties have been litigating this case, it would be extremely detrimental for the parties involved if we were to disregard the arbitration and judicial processes that have been carried out over the past eleven (11) years. **After all, the judgment that established this has become final [\*\*48] and enforceable**. However, we do warn that we do not favor the distorted use of arbitration in divorce cases, much less that court authorize this type of stipulation in cases of divorce by mutual consent. In those cases, the stipulation must cover issues pertaining to the division of assets. (Emphasis added.)

Let us begin by the end. If the judgment that validated the use of arbitration to liquidate the conjugal partnership in this case is final and enforceable, which it clearly is, and as the majority has concluded, 'why is this Court issuing an opinion on this and ruling that this was not the ideal mechanism for this and that its use will not be permitted in future cases' **Especially when the availability of the arbitration mechanism for purposes of dividing the marital assets was not one of the assignments of error brought before us in the appeal that was filed.** We are dealing with a "dispute" created by the court with regard to which this Court has not given the parties the opportunity to express themselves prior to issuing a decision. [26]

 **[\*\*49] [\*1020]** The majority opinion gives rise to several questions: 'What will happen to people who are currently immersed in an arbitration procedure because they

---

[26] It is a reiterated doctrine of the appellate courts, that courts will not consider matters that were not argued before the lower courts. To that effect, nearly eighty years ago we said that "[w]e do not need to resolve or discuss any question that was not specifically brought forward in assignments of error or openly presented through the arguments made in any of the briefs." **Banco Territorial y Agrícola v. Vidal, 42 D.P.R. 869, 872 (1931)**. Also see, among others, *Misión Industrial de Puerto Rico v. Junta de Planificación, 146 D.P.R. 64, 145 (1998)*; **Trabal Morales v. Ruiz Rodríguez, 125 D.P.R. 340, 351 (1990)**; **Murcelo v. H.I. Hettinger & Co., 92 D.P.R. 411, 426 (1965)**; **Garaje Rubén, Inc. v. Tribunal Superior, 101 D.P.R. 236, 242 (1973)**; **Autoridad sobre Hogares v. Sagastivelza, 71 D.P.R. 436, 439 (1950)**.

This rule is not based on excessive reverence for procedural rites, but rather on considerations of fair treatment toward the parties who have not had the opportunity to present their legal positions regarding an issue. Disregarding this principle works against the justiciability of the action because the litigants are not given the opportunity to argue their positions vigorously before the court. See, *Noriega v. Hernández Colón, 135 D.P.R. 406, 427 (1994)*. Of course, in extreme situations where abiding rigidly by a rule would cause a party severe harm there is room for discretion to consider a question that was not brought forward. That is clearly not the situation before our consideration.

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc:
Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 14 of 18
Page 14 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

stipulated this in the divorce stipulations that they submitted and were accepted by the court of instance?' 'Is the divorce decreed in such cases valid or null?' 'What if they remarried?' I find it alarming that this Court has gotten itself involved in the resolution of an issue that is so significant for Family Law and has such severe repercussions for those who are currently involved in divorce proceedings, when this issue was never even argued by the parties and without considering the effects of this decision, as it is evident has occurred in this case.

Moreover, in the quote transcribed above, the court states that "we do not favor the distorted use of arbitration **in divorces**." (Emphasis added.) 'Is it indicated by that statement that arbitration is not available for purposes of liquidating a conjugal partnership, regardless of the grounds for the divorce?' 'Or is it that the rule established only applies to divorces on the grounds of mutual consent?' I interpret the **[\*\*50]** statement made by the Court in the sense that it applies to all divorces. If that were the case, 'there would be no need to explain why such a long rule is needed **[\*1021]**, when the reason for ruling out this mechanism is what was decided in *Figueroa Ferrer*'

Let us go back then to evaluating the arguments that we summarized earlier as the Court's grounds for ruling out the use of arbitration in the field of Family Law, specifically in cases of divorce by mutual consent.

As we already stated, the Court considers that *Figueroa Ferrer, supra*, does not permit the use of arbitration for purposes of liquidating a conjugal partnership. I do not assign such a scope to what is stated there. What is stated in *Figueroa Ferrer* is that a petition for divorce must be accompanied by "a stipulation on the division of assets." *Figueroa Ferrer, supra*, p. 277. And strictly speaking, I consider that is what happened here. The parties in this case acknowledged in the stipulation that they signed that there was a community of assets comprised of the assets that they acquired during their marriage, and they agreed that the community assets would be split up 50% each. They attached to **[\*\*51]** the document a list of the assets and their debts. The parties stipulated that, if the community of assets that they expressly acknowledged in the agreement submitted to the Court of Instance was not divided, they would submit themselves to a binding arbitration process. They established in detail, in the document that they submitted to the consideration of the judge, what the arbitrator's powers would be; how he would be selected; and the terms within which he would have to decide on the matters brought to his attention. In addition, they established that the award would be enforceable and unappealable and that his fees would be prorated between the parties.

There is no doubt that the parties stipulated—which is none other than agreeing, concerting or covenanting, *Diccionario de la Lengua Española*, Espasa Calpe Pub. Co., Madrid, 2001, p. 998—how the marital assets would be divided. And they used the mechanism of an arbitrator, whose powers they listed in the document, to carry out the adjudication of the such assets. Let us advise that in *Figueroa Ferrer, supra*, we did not require that the parties **[\*1022]** liquidate and award the assets of the partnership before the divorce was decreed or in the act of the divorce, but rather, that they stipulate **[\*\*52]** the division of their assets as a requirement for divorce. We consider that this interpretation of our decision in *Figueroa Ferrer, supra,* is the one that best conforms to the grounds that we outlined to validate the grounds of divorce by mutual consent. This facilitates divorce proceedings so that couples can put an end to the marital relationship that they voluntarily assumed and that, for infinite reasons, they do not wish to continue.

Another argument that the majority makes in rejecting the use of arbitration as a tool to liquidate marital assets is that this "would leave unresolved very important and delicate aspects than need to be resolved upon dissolving the marital bonds." If this were a legitimate argument under the law, I consider that the Court must order this to be the case **in all divorces, regardless of the grounds thereof**. You would have to ask yourself why in cases of divorce based on other grounds, such as, for example, cruel treatment, adultery, or separation, the liquidation and adjudication of marital assets is not required in order to declare the marriage bonds to have been dissolved. 'Or is it that the division and adjudication **[\*\*53]** of marital assets is only very "important and delicate" when parties invoke the grounds for divorce rooted in the constitution?' 'Why?' 'What makes the process of divorce by mutual consent different so as to impose requirements that are not imposed in divorces based on other grounds?' We find that in following proper legal methodology, this Court is bound to consider these questions in order to validate its conclusion.

In my judgment, the Court is engaging in an apparent contradiction when it rules out arbitration for purposes of dealing with the economic effects of a divorce, but not for purposes of dealing with other matters of Family Law. Let me explain myself. In the opinion, the Court expresses the following: "We want to point out that by no means are

we denying the benefits that arbitration can provide **in essential aspects of a divorce or other types [*1023] of family disputes.**" (Emphasis added.) By which the Court appears to support the use of arbitration to deal with certain Family Law matters, but without explaining which ones or which parameters must be used to consider the use thereof. 'A dispute related **[**54]** to the custody of minors, or parental rights [patria potestas], or the father's or mother's visitation rights, or even the divorce itself can be submitted to arbitration, as long as it is not on the grounds of mutual consent.' Are such matters 'less "important and delicate" than the division of assets acquired during the marriage to such an extent that these can be resolved in arbitration?' Some people might think the exact opposite—that some of these topics are even more sensitive than the adjudication of assets because they involve minors "who are more worthy of protection due to their age and lack of capacity to govern themselves." E. Roca Trías, Crisis Matrimonial y Arbitraje [Marital Crisis and Arbitration], *Anuario Justicia Alternativa*, No. 6, 2005, 171, 177. In my opinion the foregoing is an example of how internally inconsistent the opinion supported by the majority really is. This may be the result of what we stated earlier, that the parties did not have the opportunity to discuss and argue vigorously this "dispute" and bring to our attention all of its potential ramifications.

Now, I also deem equally erroneous the majority's position that the alternative resolution mechanism selected by the parties is inappropriate because "in Puerto Rico there are no parameters to deal **[**55]** with the financial effects of a divorce through arbitration." The Court is wrong. First of all, in this case the parties specifically covenanted the terms of the arbitration process. Nothing was left to chance or up to the discretion of one of the parties. Therefore, it cannot be affirmed that there were no parameters in this case to guide the adjudication of the marital assets through arbitration.

The mechanism demanded by the Court is the one stipulated by the parties in this case. Given their importance, we quote below, in their **[*1024]** entirety, the provisions pertaining to the arbitration process that are included in the stipulation signed by the parties:

> Within ten (10) days of the date when the Judgment becomes final and enforceable the petitioners shall select by drawing lots from a list of three persons, an arbitrator who shall address all aspects pertaining to the liquidation and division of the community property.
>
> To this end, the arbitrator shall have the power to: 1. Receive testimonial, documentary and expert evidence from the petitioners; 2. Make the findings of facts and conclusions of law that he deems appropriate; 3. Resolve arguments regarding evidence and the likes; 4. Summon witnesses to the hearings. **[**56]** The arbitrator shall deal with all disputes pertaining to the division and liquidation of community property.
>
> The arbitrator shall have thirty calendar days to issue his award after the parties rest and the case is submitted to his consideration, but never after December 31, 1999.
>
> The award that he issues shall be final, enforceable and unappealable for the petitioners. And his fees shall be prorated between the petitioners. Each party shall also pay their respective legal fees.
>
> Until the arbitration award is issued, which must be rendered by December 31, 1999, the petitioner shall co-administer the community assets. Furthermore, the petitioner shall continue to receive a return of $5,000.00 monthly as stipulated between them. This payment shall be made on or before the 15th of every month, and until the result of the arbitration procedure or the 31st of December 1999. In addition, she will continue to earn the $2,500.00 salary that she receives from the corporation. The intervener, Steri-Tech, shall make the mandatory withholdings required by law.
>
> The petitioners have agreed among themselves that in the event that force majeure or acts of God prevent the award from **[**57]** being issued on or before December 31, 1999, the term shall be extended by a term equal to the length thereof and the agreements contained in this petition shall be extended for the same term.

There is no doubt that the parties who are before us today adequately regulated the arbitration process that they submitted themselves to and imposed the basic requirements needed for the adopted tool to operate efficiently. So much so that none of the parties has objected to the arbitration procedure or how the procedure was conducted by the arbitrator. This, in my opinion, indicates that **[*1025]** regardless of the potential objections to one of the multiple issues addressed and resolved by the arbitrator, both parties were satisfied with the mechanism that they adopted to liquidate the community assets and how it operated. Thus, it cannot be concluded that there weren't adequate guidelines to conduct the arbitration procedure in this case. I deem that the reason provided by the majority for holding that this non-adversary dispute resolution method is not effective

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc: Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 16 of 18
Page 16 of 18
Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

in the field of Family Law has been overcome. In my opinion, in view of today's reality, **[\*\*58]** nothing prevents us from validating the agreement reached by the parties to liquidate the assets that they acquired during their marriage through arbitration.

Moreover, the statement regarding the lack of parameters doesn't seem to consider the existence of the Alternative Dispute Resolution Methods Regulations, 4 L.P.R.A. App. XXIX, (the "Regulations") enacted by the Supreme Court, precisely, to regulate alternative tools such as arbitration in civil cases filed in the courts of our country. I consider that the majority should have explained why these Regulations are inadequate to govern arbitration processes aimed at adjudicating marital assets once a divorce has been decreed.

The Regulations declare that it is the public policy of the Judicial Branch "to foster the use of mechanisms that supplement the traditional adjudicative system in order to provide justice in a more efficient, speedy and cost-effective manner." 4 L.P.R.A. App. XXIX, R. 1.01. One of the mechanisms regulated by the Regulations is arbitration, the aim of which is described as a tool that allows "the parties to have an opportunity to present their version of the facts, **[\*\*59]** legal theories, and evidence as part of an adjudicative procedure that is speedier and more informal than the judicial procedure." 4 L.P.R.A. App. XXIX, R. 8.01(a). It also provides that the "parties have the power to decide whether or not they will submit themselves to such a process." *Íbid*. The Regulations provide that **[\*1026]**: "any action of a civil nature that is not excluded hereunder" may be submitted to arbitration. (Emphasis added.) 4 L.P.R.A. App. XXIX, R. 8.02. None of the exclusions contained in Rule 8.03 mentions matters pertaining to the liquidation of conjugal partnerships. Therefore, in principle, and subject to the parties' agreement, the Regulations permit arbitration in cases of liquidation and adjudication of marital property.

Moreover, the Regulations do establish that the court shall have "discretion to exclude any case that does not fall under any of the categories" excluded by the rules when "in its judgment, the nature of the case, the complexity of the disputes or any other circumstance render it inappropriate for arbitration." 4 L.P.R.A. App. XXIX, R. 8.04(b). Therefore, even though the Regulations allow the liquidation **[\*\*60]** and adjudication of assets of a conjugal partnership to be submitted to arbitration, the ultimate decision in this regard will depend on whether or not the judge of the court of first instance deems this convenient in a particular case. We must assume that when a judge concludes that a case is ideal for referral to arbitration, it is because he or she has weighed all of the factors revolving around the dispute and has concluded that the parties' interests will be better served if the matter is referred to an arbitration process to resolve their family disputes.

Thus, it is incorrect to argue that our legal code does not provide adequate mechanisms to regulate arbitration processes in cases of liquidation of conjugal property. Despite the provisions of the Regulations, the Court fails to state anything about why the provisions of the Regulations are inadequate or insufficient to deal with matters of this nature.

Lastly, the Puerto Rico Arbitration Act, *32 L.P.R.A. Sections 3201* et seq., can be used, as the majority does in its opinion, to regulate an arbitration process dealing with the liquidation of a conjugal partnership. There is no reason, then, to deny the scope of its application to matters of Family **[\*\*61]** **[\*1027]** Law. See, R. Serrano Geyls, *Derecho de Familia de Puerto Rico y Legislación Comparada* [Puerto Rico Family Law and Comparative Legislation], Interamerican University of Puerto Rico, San Juan, vol I, 2002, p. 712-713.

I maintain that in cases such as the one before our consideration, when a judge is faced with a petition to refer to arbitration the adjudication of community property, the judge must ponder the following factors, before approving this: first, make sure that the parties understand the legal consequences of divorce; second, that they understand the implications of submitting to arbitration the liquidation of their community property; third, that none of the parties is acting under coercion; fourth, that they both have the complete capacity to act; fifth, that the agreement does not breach the principles and values that Family Law is based on or what is known as family public order; and sixth, that the agreement clearly provides for the award to be issued in accordance with the law and that it permits judicial review.

We must point out that although this type of agreement constitutes a manifestation of the modern trend to validate personal autonomy in the regulation **[\*\*62]** of intimate personal and family matters, which is why we must consider these favorably, the contents thereof are not completely left up to the parties' negotiation autonomy, because the topics that they deal with involve delicate family issues. That is why I believe that the judge must evaluate rigorously and in accordance with the criteria stated above any request to refer to arbitration the liquidation of marital property in a divorce case. See, M. D. Díaz-Ambrona Bardaji, F. Hernández Gil, *Lecciones de Derecho de Familia* [Lectures on Family Law],Centro

Case:17-03283-LTS   Doc#:4732-2   Filed:01/11/19   Entered:01/11/19 15:25:15   Desc:
Exhibit Vivoni Farage v. Ortiz Carro   179 D.P.R. 990 (2010)   Page 17 of 18

Page 17 of 18

Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

de Estudios Ramón Areces Pub. Co., S.A., Madrid, 1999, p. 219.

We must acknowledge that situations stemming from a divorce involve the most intimate of matters for the people involved, the most heated and sensitive passions, and the interests most worthy of protection under the law. Thus, these "are difficult to reconcile and it is difficult for the court resolutions issued to that effect to be able to satisfactorily resolve the situation of conflict between the spouses." [*1028] Díaz-Ambrona Badalají, Hernández Gil, *op. cit*,, p. 218. This however cannot constitute grounds to reject and disregard flatly the arbitration [**63] process as an alternative mechanism to settle the consequences of a purely proprietary nature that stem from a divorce, but possibly the exact opposite instead. It is correct that not every case of liquidation of community property is ideal for referral to an arbitration process. That is why the judge, prior to approving a petition to that effect, must make sure that the agreement is not detrimental for one of the spouses, using the aforementioned parameters. But this is about defining any exceptions with a thin paintbrush, on a case-by-case basis, not painting this with a broad paintbrush, banning it from our legal code. That is because the utilization of alternative dispute resolution methods such as arbitration, "allows us to transform disputes because they help us confront problems in a more collaborative way and imply a change of approach: instead of trying to make the other party's options worse for purposes of distributive negotiation, the possibilities of achieving joint gains that can be shared by the parties are increased." García Villaluenga, *op. cit*., p. 149. That is what we should strive for.

III

To conclude, and very summarily, after deciding on the issue of [**64] arbitration the Court then addresses the issue of when an award becomes enforceable. The opinion states that in most cases, arbitration awards are voluntarily executed by the parties, because, as stated in Article 21 of Act No. 376 of 1951, the validity of an award that is otherwise valid shall not be affected by the fact that a motion to confirm it is not filed. Nevertheless, in instances where parties disagree with the validity or accuracy of an award, Act 376 provides ways for parties to be compelled to comply with it. Among these, Act 376 provides for the filing—on any date within a year after [*1029] the award—of summary proceedings to confirm the award in the court of instance, who must enter judgment confirming the award, which shall be enforceable in accordance with the Rules of Civil Procedure. Likewise, anyone who does not agree with the award may—within a period of 3 months of receiving notice of the award—file a motion to vacate, modify, or correct the award.

However, Act 376 itself states that when dealing with a motion to vacate, modify, or correct an award, the Court of First Instance may stay any proceedings [**65] initiated by the nonmovant for purposes of enforcing the award. *See*, 32 L.P.R.A. Section 3224. This assumes that the opposite party may initiate proceedings to enforce the award even before the terms provided to seek revocation, modification or correction of the award have passed. Therefore, the opinion seems to hold that an arbitration award is enforceable ever since it is issued while at the same time the Court of First Instance can stay such proceedings, if a motion for revocation, modification or correction of the award is filed.

In the instant case the opinion states that none of the parties sought confirmation or execution of the award as soon as it was issued. The fact that it was appealed did not affect the provisions regarding La Península at all. Therefore, the provision that awarded the property to Mrs. Ortíz Carro was enforceable ever since the award was issued. Yet, upon applying the doctrine of estoppel, the opinion concludes that—given that it was because of the appeals filed by Mrs. Ortíz Carro that the award could not be executed within the terms established therein— she cannot now benefit from such noncompliance. Therefore, [**66] the Court reverses the judgment of the Court of Appeals and remands the matter to the Court of First Instance in order for said court to determine whether or not the Steri-Tech, Inc. corporation made certain repairs that it allegedly had to make before transferring the property.

As to the outcome reached by the majority to the effect that the award is enforceable from the moment it is issued, I consider that this is in [*1030] keeping with the purpose that awards should have and the statutory provisions of the arbitration act, even though in principle it would seem illogical to permit the execution of an award while another party can still seek the correction, modification or even revocation of the award. However, the explanation of what happened in this case, and why the doctrine of estoppel should be applied is not convincing.[27] I prefer to think that because Mr. Vivoni

---

[27] It is alarming that absent an express determination that procedural bad faith has occurred a person who resorts to a procedural mechanism available to him or her can penalized.

Case:17-03283-LTS Doc#:4732-2 Filed:01/11/19 Entered:01/11/19 15:25:15 Desc: Exhibit Vivoni Farage v. Ortiz Carro 179 D.P.R. 990 (2010) Page 18 of 18 Page 18 of 18

Jorge Alfredo Vivoni Farage, Petitioner v. María de Lourdes Ortíz Carro, Respondent

asked Mrs. Ortíz Carro to execute the deeds in April 2001, within the original thirty (30) day period, and the fact that she failed to answer his request and then filed a motion challenging the award in May 2001, that in itself constitutes sufficient grounds to invoke the doctrine of estoppel. However, if Mr. Vivoni had not done anything within the first 30 days, **[**67]** it would not have mattered whether Mrs. Ortíz Carro subsequently challenged the award or not, if the condition had already been breached, based on the ruling, that is, that the award is enforceable from the moment it is issued, therefore, the 30-day period started to run on March 13, 2001. In which case, I have no objection to this case being remanded to the court of first instance.

Anabelle Rodríguez Rodríguez

Associate Justice

End of Document

CERTIFICATION OF TRANSLATION

I, Carol G. Terry, a US-Court-Certified-Interpreter, Certificate No. 03-001, and translator with an MA in Translation from the University of Puerto Rico, do hereby certify that, to the best of my knowledge and abilities, the foregoing EIGHTEEN (18) PAGES are a true and correct translation of the original document in Spanish.

Carol G. Terry

---

Gutiérrez Vázquez v. Hernández Hernández, 2007 TSPT 174. See also, J. Picó I. Junoy, El Principio de la Buena Fe Procesal [The Principle of Procedural Good Faith], J.M. Bosch Editor, Madrid, 2003.