HEARING DATE: JAN. 16, 2019 AT 9:30 A.M. (ATLANTIC STANDARD TIME)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                                Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>                                Debtor. | PROMESA<br>Title III<br><br><br>No. 17 BK 3284-LTS |

*Caption Continued on Following Page*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee,<br><br>                      Plaintiff,<br><br>     v.<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION, WHITEBOX MULTI-STRATEGY PARTNERS, L.P.; WHITEBOX ASYMMETRIC PARTNERS, L.P.; WHITEBOX INSTITUTIONAL PARTNERS, L.P.; PANDORA SELECT PARTNERS, L.P.; AMBAC ASSURANCE CORPORATION; FRANKLIN ADVISERS, INC., and CEDE & CO., as nominee for The Depository Trust Company,<br><br>                      Defendants. | Adv. Pro. No. 17-00133-LTS |

**REPLY OF WHITEBOX MULTI-STRATEGY PARTNERS, L.P. AND CERTAIN OF ITS AFFILIATES TO MEMORANDUM OF LAW OF THE BANK OF NEW YORK MELLON, AS TRUSTEE, REGARDING SECTION 19.5 OF THE PLAN**

To the Honorable United States District Judge Laura Taylor Swain:

Whitebox Multi-Strategy Partners, L.P. and certain of its affiliates (collectively, "Whitebox") respectfully submit this reply to the *Memorandum of Law of The Bank of New York Mellon, as Trustee, Regarding Section 19.5 of the Plan* ("BNYM Memo of Law").[2]

**PRELIMINARY STATEMENT**

Whitebox and BNYM take sharply differing views concerning whether Section 19.5 of the Plan shifts COFINA's indemnity obligations under the Resolution to Whitebox. To accept BNYM's position, however, the Court must find specific and direct language in Section 19.5 in which Whitebox assumed these obligations. Because there is no such language, BNYM's argument fails.

---

[2] ECF No. 435 in Case No. 17-03284-LTS. Capitalized terms used but not defined herein have the meanings ascribed to them in the Plan or, as applicable, Whitebox's amended opening brief [Case No. 17-03283-LTS, Dkt. No. 4646] ("Whitebox Opening Brief") and Whitebox's response to BNYM's Reservation of Rights [Case No. 17-03283-LTS, Dkt. No. 4653].

BNYM contends, without citing any authority, that even though Whitebox does not "have a direct contractual indemnification obligation to BNYM," it must nonetheless "stand in the shoes of COFINA" for purposes of COFINA's indemnity obligations.[3] The Court should reject this argument because it contradicts the plain terms of the Plan and because Whitebox's *undisputed* rights under state law must not be "analyzed differently simply because an interested party is involved in a bankruptcy proceeding."[4] See Travelers Cas. & Sur. Co. of Am. v. PG&E, 549 U.S. 443, 451 (2007).

Nor does BNYM have a secured claim for indemnity against COFINA under the Resolution in any event. First, nothing in the Resolution grants BNYM a secured claim against COFINA for indemnity obligations. Second, BNYM does not have a charging lien against *any* bondholders under the plain meaning of Section 804. BNYM's attempt to shoehorn its purported indemnification claim into the Compensation Provision of Section 804 renders the more specific Indemnification Provision superfluous, and impermissibly nullifies its gross negligence carve-out. Moreover, the Indemnification Provision does not require the advancement of legal fees and expenses; under New York law, advancement of defense costs is required only where, unlike here, there is specific advancement language. Third, BNYM does not have a contractually senior claim under Section 1103 because it is expressly subject to the limitations of Section 804.

Accordingly, the Court should deny BNYM's request for indemnity from Whitebox and COFINA.

---

[3] BNYM Memo of Law at 4 n.5, 22.

[4] Whitebox reserves all its rights concerning BNYM's argument that Whitebox "lacks standing" to "question BNYM's superior rights" under the Resolution. BNYM Memo of Law at 30. Whitebox clearly has standing to defend itself against BNYM's attempt to force it to assume COFINA's contractual obligations. Nat'l Cas. Co. v. Gateway Acoustics Corp., 2014 WL 1330851, at *4 (E.D.N.Y. Mar. 31, 2014) (even parties who are not nominal defendants in an action have standing where their "substantive rights" may be affected by the action, and must be afforded the "opportunity to vindicate them").

**REPLY**

I. **BNYM'S PURPORTED RIGHT TO INDEMNIFICATION DOES NOT GIVE RISE TO A SECURED OR CONTRACTUALLY SENIOR CLAIM.**

    A. **BNYM Does Not Have a Charging Lien Under Section 804 of the Resolution.**

1. Section 804 of the Resolution includes two relevant provisions: the Compensation Provision and the Indemnification Provision.[5] The parties do not dispute that (i) the Compensation Provision provides BNYM with a charging lien for matters covered thereby, and (ii) the Indemnification Provision does *not* provide BNYM with a charging lien. BNYM Memo of Law at 15. All parties further agree that the Indemnification Provision does apply because it specifically addresses the indemnification of BNYM for "the costs and expenses of defending itself against any claim . . . or liability in connection with the exercise or performance of any of its powers or duties hereunder . . . except to the extent that such loss, damage, claim, liability or expense is due to its own gross negligence or willful misconduct."

2. However, BNYM claims that the Compensation Provision *also* applies to its indemnification claims, and grants it a charging lien. BNYM is wrong.

        i. **BNYM's Interpretation of Section 804 Defies Its Plain Meaning.**

3. "When an agreement is unambiguous on its face, it must be enforced according to [its] plain meaning." Lockheed Martin Corp. v. Retail Holdings N.V., 639 F.3d 63, 69 (2d Cir. 2011). Further, a court "must consider *the entire writing* and not view particular words in isolation." Wachter v. Kim, 82 A.D.3d 658, 661 (N.Y. App. Div. 2011) (emphasis added).

4. BNYM claims that the Compensation Provision – which provides for reimbursement of BNYM's expenses "*incurred in and about* the performance of [BNYM's] powers and duties *under the Resolution*" – applies here because the Whitebox Action and Ambac

---

[5] See Whitebox Opening Brief, at ¶¶ 13-14.

Action (the "Actions") are "in or about the performance of BNYM's duties" and "BNYM has the legal right or 'power' to defend itself" against the Actions. BNYM Memo of Law at 13-14 (emphasis added).

5. BNYM's argument ignores two key phrases in the Compensation Provision. First, defending the Actions is not a "power" or "[duty] *under the Resolution*." It is a "power" of any litigant to defend against a lawsuit. Second, BNYM's expenses incurred in defending the Actions are not "*incurred in and about* the performance of [its] powers and duties under the Resolution" (emphasis added). BNYM would have the Court read the Compensation Provision to provide that all expenses that are "somehow related to" the performance of BNYM's powers and duties under the Resolution are subject to a charging lien. In addition, this provision uses the word "incurred," which only implicates past liabilities, not future ones like those requested here.

6. BNYM's interpretation of the Compensation Provision to encompass BNYM's expenses incurred in defending the Actions therefore contradicts the plain meaning of the Resolution. The Court should reject it for this reason alone.

### ii. BNYM's Interpretation of Section 804 Ignores Its Specific Terms.

7. "[C]ourts construing contracts must give specific terms and exact terms . . . greater weight than general language." Cty. of Suffolk v. Alcorn, 266 F.3d 131, 139 (2d Cir. 2001) (internal citations and quotation marks omitted). Thus, "a specific contract provision should prevail over a general one," Sompo Japan Ins. Co. of Am. v. Norfolk S. Ry. Co., 762 F.3d 165, 179 (2d Cir. 2014), and the court should read "all provisions of [the Resolution] together as a harmonious whole." Schlaifer Nance & Co. v. Estate of Andy Warhol, 119 F.3d 91, 100 (2d Cir. 1997).

8. Here, the Indemnification Provision – *which does not provide for a charging lien or advancement of payment* – specifically addresses BNYM's purported right to indemnification

- 4 -

of "the costs and expenses of defending itself" against the Actions. BNYM concedes that the Compensation Provision is a more general provision that purportedly encompasses "all expenses incurred in and about the performance of [BNYM's] powers and duties." BNYM Memo of Law at 13-14. Where, as here, there are both general and specific provisions arguably on the same subject, the specific provision – here, the Indemnification Provision – must prevail. See Sompo Japan, 762 F.3d at 179. BNYM therefore does not have a charging lien in respect of its indemnification claims.

### iii. BNYM's Interpretation of Section 804 Would Render Contractual Terms Under the Resolution Superfluous.

9. "An interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless . . . is not preferred and will be avoided if possible." LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) (internal quotation marks and alterations omitted).

10. BNYM argues that "both components of section 804 – compensation and reimbursement, and indemnification – entitle BNYM to recover counsel fees." BNYM Memo at 14. Indeed, BNYM's interpretation of the Compensation Provision renders the Indemnification Provision superfluous because there would never be a need for BNYM to utilize the Indemnification Provision. Thus, as a matter of law, this interpretation must fail.

### iv. BNYM's Interpretation of Section 804 Would Nullify the Gross Negligence Carve-Out and Render the Resolution Unlawful.

11. "A reading of the contract should not render any portion meaningless." Beal Sav. Bank v. Sommer, 8 N.Y.3d 318, 324 (N.Y. 2007). If, as BNYM argues, BNYM had a charging lien for its defense costs under the Compensation Provision – which does not exclude expenses that are due to BNYM's gross negligence or willful misconduct – it could bypass the Indemnification Provision, which does include this carve-out, rendering it null and superfluous.

The Court should therefore reject BNYM's interpretation.

12. Furthermore, under New York law, indemnity contracts are contrary to public policy and unlawful if "they purport to indemnify a party for damages flowing from an injury that was intentional." St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 86 (2d Cir. 2005). "[A]greements should be construed, if possible, to render them lawful rather them unlawful." Herrera v. Katz Commc'ns, Inc., 532 F. Supp. 2d 644, 647 (S.D.N.Y. 2008). BNYM's interpretation of Section 804 would render the Resolution unlawful because it would allow BNYM to receive a charging lien for expenses stemming from intentional misconduct, which is not excluded under the Compensation Provision. The Court should reject it for this additional reason.

### B. BNYM Does Not Have a Contractually Senior Claim Under Section 1103.1 of the Resolution.

13. BNYM argues that its defense costs are entitled to priority of payment under Section 1103.1 of the Resolution. BNYM Memo of Law at 23-26. BNYM is wrong.

14. First, because it is "[s]ubject to Section 804," which does not provide advancement of defense costs or a charging lien, Section 1103.1 cannot afford BNYM benefits that Section 804 restricts. BNYM argues that subjecting Section 1103.1 to the limitations of Section 804 would render the former "superfluous" because "this section does not merely provide priority for payment for fees [and] expenses . . . under Section 804; it also provides priority of payment for two entirely distinct categories of expenses, including, broadly, 'liabilities incurred.'" BNYM Memo of Law at 25. The phrase "subject to Section 804," however, does not mean that *only* expenses allowed under Section 804 are also allowed under Section 1103.1. It means that if certain expenses are *not* allowed under Section 804 – such as BNYM's expenses here – then Section 1103.1 is of no avail. See R.A. Mackie & Co., L.P. v.

- 6 -

Petrocorp Inc., 329 F. Supp. 2d 477, 505 (S.D.N.Y. 2004) ("The words 'subject to', used in their ordinary sense, mean 'subordinate to', 'subservient to' or 'limited by.'"); Peters v. Smolian, 49 Misc. 3d 408, (N.Y. Sup. Ct.), judgment entered, (N.Y. Sup. Ct. 2015), aff'd, 154 A.D.3d 980 (N.Y. App. Div. 2017) ("subject to" means "subordinate to, subservient to or limited by.")

15. Second, under the plain meaning of Section 1103.1, BNYM is not entitled to contractual priority. Section 1103.1 only allows BNYM to "make provision" for the payment of (i) the "reasonable expenses of the Trustee . . . *necessary in the opinion of the Trustee to protect the interests of the Owners of the Bonds and the other Beneficiaries*," and (ii) "the reasonable charges and expenses and liabilities *incurred* . . . by the Trustee . . . *in the performance of their duties under the Resolution*" (emphases added). BNYM argues that those categories apply here because (i) Whitebox's "allegations *relate to* BNYM's performance of its duties under the Resolution and they implicate the integrity of the Resolution, the existence of an event of default, and the rights of and relationship between Bondowners"; and (ii) "in the opinion" of BNYM, "defending the [Actions] is necessary to protect the interests of the Bondowners that are not bringing such specious claims." BNYM Memo of law at 25-26 (emphasis added).

16. Both of the foregoing arguments fail. First, Section 1103.1 requires that the relevant expenses be "*incurred . . . in the performance* of [BNYM's] duties under the Resolution" (emphasis added). That Whitebox's allegations may "relate to" BNYM's performance under the Resolution does not matter. BNYM does not argue – nor can it argue – that its defense costs were "incurred in the performance" of its duties under the Resolution. Second, it defies credulity to assert – as BNYM does – that defending the Actions is necessary to protect bondholders. BNYM does not even attempt to explain – nor could it – how its defense is necessary to protect anyone but itself. BNYM Memo of Law at 26. Thus, the Court should

reject BNYM's argument concerning Section 1103.1 as contrary to its "plain meaning." Lockheed Martin, 639 F.3d at 69.[6]

### C. BNYM Does Not Have a First Priority Lien Under the Resolution.

17. BNYM argues that because Section 501.1 of the Resolution grants a pledge to the Trustee "subject to Section 804 . . . and subject to the provisions of the Resolution permitting the application of the Pledged Property for the purposes and on the terms and conditions set forth in the Resolution," "BNYM's claims under section 804 and its priority of payment under section 1103.1 are secured by a first priority lien . . . ." BNYM Memo of Law at 19-20. However, because BNYM's defense costs are not compensable under either Section 804 or Section 1103.1, Section 501.1 does not grant BNYM a first priority lien. BNYM does not – indeed it cannot – point to any other provision in Section 501.1 or the Resolution at large that would support its argument.

### II. BNYM DOES NOT HAVE AN UNSECURED CLAIM FOR ADVANCEMENT OF ITS DEFENSE COSTS UNDER THE INDEMNIFICATION PROVISION.

18. BNYM does not dispute that the Indemnification Provision does not grant it a charging lien. BNYM Memo of Law at 15-20. As such, the only dispute is as to the timing of accrual of BNYM's purported unsecured claim.

19. As Whitebox has explained, BNYM is not entitled to advancement of legal fees because it is well settled that "contractual defense obligations . . . must be strictly construed to avoid inferring duties that the parties did not intend to create."[7] None of the cases BNYM cites warrants a different conclusion. BNYM Memo of Law at 15-19. In Wilson v. Nat'l Med. Health

---

[6] Section 1103.3 of the Resolution does not afford BNYM an independent right to withhold a reserve because, as BNYM acknowledges, it is expressly subjected to the "waterfall" provisions of Section 1103.1. BNYM Memo of Law at 26.

[7] Dresser-Rand Co. v. Ingresoll Rand Co., No. 14-CV-7222 (KPF), 2015 WL 4254033, at *7 (S.D.N.Y. July 14, 2015); see also UMB Bank, N.A. v. Sanofi, No. 15-CV-8725 (GBD), 2016 WL 4938000 (S.D.N.Y. Sept. 8, 2016); Becker v. Bank of N.Y. Mellon Tr. Co., N.A., 172 F. Supp. 3d 777, 801 (E.D. Pa. 2016).

- 8 -

Cad, IPA, Inc., 2009 WL 10701804 (E.D.N.Y. May 5, 2009), the court approved the requested indemnification because it found that the defendant was <u>not</u> grossly negligent.[8] The Court has made no such finding here. In PIMCO Absolute Return v. Wells Fargo Bank, Nat'l Ass'n, No. 654743/2017 (N.Y. Sup. Ct. Nov. 13, 2017), the court granted indemnification because there was no *allegation* by the plaintiff of gross negligence.[9] Here there are pending lawsuits alleging gross negligence committed by BNYM. Finally, the four RMBS cases BNYM cites are inapposite because there the trustee had been withdrawing trust funds to pay for its defense costs, and the plaintiff requested that the court change the status quo based on an affirmative finding of gross negligence.[10] To avoid duplicative findings concerning the trustee's conduct, the courts stayed the indemnification dispute until the underlying litigation concluded.[11] Here, *BNYM* seeks to change the status quo – not Whitebox. Further, Whitebox is *not* seeking a finding of gross negligence as part of this proceeding because the law and the Resolution are clear that BNYM is not entitled to indemnification until it secures a finding that it was *not* grossly negligent.

### III. THE PLAN DOES NOT EFFECTUATE AN ASSUMPTION BY WHITEBOX OF COFINA'S INDEMNITY OBLIGATIONS TO BNYM.

20. COFINA owes no indemnity obligations to BNYM under the Resolution in connection with BNYM's defense costs in the Actions. But even if such obligations existed,

---

[8] Id. at *12.
[9] BNYM Memo of Law, Ex. 1 at 18:6-7.
[10] Royal Park Invs. SA/NV v. Wells Fargo Bank, N.A., No. 17-cv-6687 (KPF), Dkt. No. 37 (S.D.N.Y. Jan. 22, 2018) (Failla, J.) (BNYM Memo of Law, Ex. 2) ("RPI v. Wells Fargo"); see also Complaint, RPI v. Wells Fargo, Dkt. No. 1; Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, No. 14-cv-2590 (VM), 2018 WL 6920768 (S.D.N.Y. Nov. 30, 2018) (Marrero, J.) ("RPI v. U.S. Bank"); see also Complaint, RPI v. US Bank, No. 17-6778, Dkt. No. 1; Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co., No. 17-cv-5916 (AJN), 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018) (Nathan, J.) ("RPI v. Deutsche Bank"); see also Complaint, RPI v. Deutsche Bank, Dkt. No. 1; Royal Park Invs.SA/NV v. HSBC Bank USA, Nat'l Ass'n, No. 17-cv-7684 (VEC), Dkt. No. 64 (S.D.N.Y. Aug. 2, 2018) (Caproni, J.) (BNYM Memo of Law, Ex. 3) ("RPI v. HSBC"); see also Complaint, RPI v. HSBC, Dkt. No. 1.
[11] See RPI v. Wells Fargo at 1, RPI v. U.S. Bank at *9., RPI v. Deutsche Bank at *3, and RPI v. HSBC, at 2.

Whitebox has not assumed them. Incredibly, BNYM contends that "Whitebox's argument that it is not obligated to indemnify BNYM and it never assumed COFINA's indemnity obligations is a red-herring" and "irrelevant." BNYM Memo of Law at 4 n.5, 8. BNYM has cited no basis in law or fact to force Whitebox to "[stand] in the shoes of COFINA." BNYM Memo of Law at 22. A plan cannot arbitrarily shift the debtor's obligations under state law to third parties without any legal basis. See Travelers, 549 U.S. at 451 (holding that "state law governs the substance of claims" and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding."). Equally nonsensical is BNYM's argument that it is entitled to the "indubitable equivalent" of its "secured claim" pursuant to 11 U.S.C. § 1129(b)(2)(A)(iii). BNYM Memo of Law at 21. That section is wholly irrelevant here because COFINA is not seeking to "cram down" BNYM. Nor has BNYM explained why *Whitebox* should grant BNYM the indubitable equivalent of its purported claim.

## CONCLUSION

For the reasons set forth herein and in the Whitebox's previous briefs, the Court should deny BNYM's request to withhold its fees, expenses and costs incurred in the Whitebox Action from Whitebox's distribution, and should not require that Whitebox post a bond or other collateral to secure the foregoing purported obligations.

[*Remainder of page intentionally left blank.*]

Dated: January 12, 2019
San Juan, Puerto Rico

**KASOWITZ BENSON TORRES LLP**

By: /s/ *Andrew K. Glenn*
   Andrew K. Glenn
   (admitted *pro hac vice*)
   Shai Schmidt
   (admitted *pro hac vice*)
   1633 Broadway
   New York, New York 10019
   Telephone: (212) 506-1700
   Facsimile: (212) 506-1800
   Email: aglenn@kasowitz.com
          sschmidt@kasowitz.com

**ARROYO & RIOS LAW OFFICES, P.S.C.**

By: /s/ *Moraima S. Ríos Robles*
   Moraima S. Ríos Robles
   (USDC-PR Bar No. 224912)
   1353 Ave. Luis Vigoreaux
   Guaynabo, P.R. 00966
   Telephone: (787) 522-8080
   Facsimile: (787) 523-5696
   Email: mrios@arroyorioslaw.com

*Attorneys for Whitebox Multi-Strategy Partners, L.P.*
*and its Above-Captioned Affiliates*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Moraima S. Ríos Robles*
Moraima S. Ríos Robles
(USDC-PR Bar No. 224912)
1353 Ave. Luis Vigoreaux
Guaynabo, P.R. 00966
Telephone: (787) 522-8080
Facsimile: (787) 523-5696
Email: mrios@arroyorioslaw.com