HEARING DATE: JAN. 16, 2019 AT 9:30 A.M. (ATLANTIC STANDARD TIME)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.¹ | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>    Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

*Caption Continued on Following Page*

---

¹ The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee,<br><br>         Plaintiff,<br><br>  v.<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION, WHITEBOX MULTI-STRATEGY PARTNERS, L.P.; WHITEBOX ASYMMETRIC PARTNERS, L.P.; WHITEBOX INSTITUTIONAL PARTNERS, L.P.; PANDORA SELECT PARTNERS, L.P.; AMBAC ASSURANCE CORPORATION; FRANKLIN ADVISERS, INC., and CEDE & CO., as nominee for The Depository Trust Company,<br><br>         Defendants. | Adv. Pro. No. 17-00133-LTS |

**REPLY MEMORANDUM OF AMBAC ASSURANCE CORPORATION PURSUANT TO SECTION 19.5 OF COFINA'S AMENDED TITLE III PLAN OF ADJUSTMENT**

    Ambac Assurance Corporation ("Ambac"), pursuant to Section 19.5 of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation (the "Plan"), and the Court's Order entered on January 10, 2019 [ECF No. 452], respectfully submits this reply memorandum in response to the *Memorandum of Law of The Bank of New York Mellon, as Trustee, Regarding Compliance With Section 19.5 of the Plan* [ECF No. 435] (the "BNYM Memorandum" or "BNYM Mem.").[2]

**PRELIMINARY REPLY STATEMENT**

    1.  By collapsing the first and second sentences of Resolution Section 804, BNYM contends that, with respect to its right of indemnification of legal defense costs, it is a secured creditor of COFINA. Those two sentences read separately, however — as New York law requires them to be read — produce a contrary result. The first sentence recognizes a

---

[2]  Docket citations are to Case No. 17 BK 3284-LTS unless otherwise noted. Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan.

charging lien in connection with BNYM's compensation as Trustee and for reimbursement of certain costs, *but does not mention indemnification rights.* The second sentence recognizes (and limits) BNYM's indemnity rights, but does not grant BNYM any lien. Thus, under all relevant canons of contract construction, BNYM is an *unsecured* creditor of COFINA with respect to its indemnification rights.

2. BNYM's assertion that it is entitled to draw down on any bond or holdback on a current-pay basis likewise conflates the first and second sentences of Section 804. The first sentence requires COFINA to pay BNYM its expenses "from time to time;" the second sentence does not. BNYM offers no legal or contractual support for its assertion that that any current-pay right in the first sentence should be transposed to the second sentence. For this reason and for those reasons that follow, BNYM should have no right to a bond, holdback or current-pay with respect to the Ambac Action.

## REPLY POINTS

### A. Section 804 Does Not Provide BNYM With a Charging Lien With Respect to its Indemnification Rights

3. The first sentence of Section 804 (the "Compensation Provision") provides for compensation, and *certain* expense reimbursements to BNYM, and recognizes a charging lien in favor of BNYM with respect to such amounts:

> The Corporation shall pay to the Trustee from time to time reasonable compensation for all services rendered under the Resolution . . . and also all reasonable expenses, charges, counsel fees and other disbursements, including those of its attorneys, agents, and employees, incurred in and about the performance of their powers and duties under the Resolution and the Trustee shall have a lien prior to that of the Bondowners and other Beneficiaries therefor on any and all funds at any time held by it under the Resolution.

Resolution § 804.[3] The Compensation Provision does not address indemnification for BNYM's own liability for claims brought by parties to the Resolution, including COFINA, Bondowners, or their insurers, or expenses incurred by BNYM in defending itself from such claims.

4. BNYM relies upon the clause in the Compensation Provision that provides for reimbursement to BNYM for "counsel fees…including those of its attorneys, agents and employees." (BNYM Mem. at 13). But that right is limited by the clause that follows, *i.e.*, it applies only with respect to those fees "incurred in and about the performance of their powers and duties under the Resolution." Resolution § 804. BNYM is not, by funding its defense to the Ambac Action, incurring an expense pursuant to a powers or duty "under the Resolution." Nothing in the Resolution empowers or obligates BNYM to defend itself in Court.

5. To be sure, BNYM has the option (but is not required under the Resolution) to defend itself, and the second sentence of Section 804 — the "Indemnification Provision" — addresses indemnification for its expenses in so doing. The Indemnification Provision provides:

> The Corporation further agrees to indemnify and save the Trustee harmless against any loss, liability or expenses including taxes … arising out of or in connection with the acceptance or administration of the trust or trusts hereunder, including the costs and expenses of defending itself against any claim (whether asserted by [COFINA] or any Bondowner or any other Person) or liability in connection with the exercise or performance of any of its powers or duties hereunder, or in connection with enforcing the provisions of this Section 804, except to the extent that such loss, damage, claim, liability or expense is due to its own gross negligence or willful misconduct.

Resolution § 804. The Indemnification Provision specifically addresses BNYM's "costs and expenses of defending itself against any claim." This is the *specific* provision applicable to these

---

[3] Throughout this memorandum, emphasis is supplied unless otherwise noted.

- 3 -

circumstances, and therefore the applicable one. See Ventures Int'l v. Republic of Arg., 652 F.3d 266, 271 (2d Cir. 2011) (where general provision in an agreement spoke of a lien in favor of bondholders but did not address what happened in the event of a bond exchange, the more specific provision addressing an exchange governed); Aramony v. United Way of Am., 254 F.3d 403, 413-14 (2d Cir. 2001) (quoting Restatement (Second) of Contracts § 203(c) (1981)) ("[I]t is a fundamental rule of contract construction that 'specific terms and exact terms are given greater weight than general language.'"); Muzak Corp. v. Hotel Taft Corp., 1 N.Y.2d 42, 46 (1956) ("Even if there was an inconsistency between a specific provision and a general one (we find none), the specific provision controls").

6. To reach the conclusion that BNYM asks the Court to reach — that Section 804's Compensation Provision provides BNYM a charging lien for the indemnification rights in the Indemnity Provision — BNYM has to puzzle together Section 804's Compensation Provision and Indemnity Provision to read as follows:

| | |
|---|---|
| (Compensation Provision) | The Corporation shall pay to the Trustee from time to time reasonable compensation for all services rendered under the Resolution … and also all reasonable expenses, charges, counsel fees and other disbursements, including those of its attorneys, agents, and employees, incurred in and about the performance of their powers and duties under the Resolution … + |
| (Indemnity Provision) | … including the costs and expenses of defending itself against any claim (whether asserted by [COFINA] or any Bondowner or any other person) or liability … except to the extent that such loss, damage, claim, liability, or expense [arising therefrom] its own gross negligence or willful misconduct … + |
| (Compensation Provision) | … and the Trustee shall have a lien prior to that of the Bondowners and other Beneficiaries therefor on any and all funds at any time held by it under the Resolution. |

7. This Dr. Frankenstein re-creation of Section 804 is not the Section 804 before the Court. In actuality, Section 804 contains two distinct provisions, which New York

- 4 -

law requires be read in a manner that gives effect to each one and renders neither superfluous. See Hooper Assocs., Ltd. v. AGS Computs., Inc., 74 N.Y.2d 487, 493 (1989) (the interpretation of an indemnity provision should "afford[ ] a fair meaning to all of the language employed by the parties in the contract and leave[ ] no provision without force and effect"). Under BNYM's approach, its right in the Indemnity Provision to be reimbursed for legal fees incurred in defending Bondholder claims would be entirely redundant to the reference to "counsel fees" in the Compensation Provision. See Law Debenture Tr. Co. of N.Y. v. Maverick Tube Corp., 595 F.3d 458, 468 (2d Cir. 2010) (a contract must be read as a whole "to safeguard against adopting an interpretation that would render any provision superfluous") (citation omitted); see also LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005) ("[a]n interpretation of a contract that has the effect of rendering at least one clause superfluous or meaningless … is not preferred and will be avoided if possible.") (citation and marks omitted).[4]

8. In sum, the Compensation Provision — which explicitly provides for a lien — does not cover indemnification, while the Indemnification Provision nowhere mentions a lien. Further, the fact that the Indemnification Provision explicitly covers claims by Bondholders against BNYM indicates that the omission of such claims from the Compensation Provision is intentional.

---

[4] Contrary to BNYM's assertions to the contrary, the boilerplate cumulative-rights provision in Section 1108 of the Resolution does not overwrite the clear language of the Resolution and does not displace established canons of contract interpretation. See, e.g., Mizuho Corp. Bank, LTD. v. Enron Corp. (In re Enron Corp.), 302 B.R. 463, 475 (Bankr. S.D.N.Y. 2003) (a cumulative rights provision "merely establishes that the [party] could enforce whatever rights that were not inconsistent with the … Agreement …. A provision declaring that rights granted are cumulative is intended to preserve available alternative remedies when a party initially elects to pursue other available remedies.").

### B. BNYM Is Not Entitled Under the Resolution to Pay Counsel on a Current Basis

9. BNYM seeks under Section 19.5 a determination that it is entitled — not only to obtain security from Ambac — but to draw down on that security "on a current basis." Plan § 19.5. BNYM relies upon the clause in the Compensation Provision requiring COFINA to "pay to [BNYM] from time to time reasonable compensation … and also all reasonable expenses… including those of its attorneys…incurred in and about the performance of their powers and duties under the Resolution." (BNYM Mem. at 13) (arguing that it should be entitled to pay its counsel on a "periodic, current basis"). But, again, BNYM ignores the limiting impact of the final clause — "incurred in and about the performance of their powers and duties under the Resolution" — and skips over the plain fact that defending itself in the Ambac Action is not a power or duty "under the Resolution."

10. BNYM also cannot transpose the "from time to time" clause from the Compensation Provision to the Indemnification Provision, which contains no such language. The Indemnification Provision does not provide for payment "from time to time" and implies no such duty upon COFINA. The Court should not read into the Indemnification Provision any such duty, since contractual indemnification provisions "must be strictly construed to avoid inferring duties that the parties did not intend to create." Dresser-Rand Co. v. Ingersoll Rand Co., No. 14-CV-7222 (KPF), 2015 WL 4254033, at *7 (S.D.N.Y. July 14, 2015); UMB Bank, N.A. v. Sanofi, No. 15-CV-8725 (GBD), 2016 WL 4938000, at *4, *7 (S.D.N.Y. July 14, 2015) (provision requiring the reimbursement of trustee's reasonable expenses, disbursements, and advances "upon its request" did not obligate payment of expenses prior to resolution of the action).

11. BNYM fails to distinguish Judge Forrest's opinion in <u>Dresser-Rand</u> and Judge Daniels' decision in <u>Sanofi</u>. (BNYM Mem. at 31-32, 33). BNYM concedes that <u>Dresser-Rand</u> requires that the specific language of the governing indenture must be strictly construed to exclude any implied rights in favor of the trustee. BNYM also acknowledges that in <u>Sanofi</u>, Judge Daniels held that the contract's lack of an express waiver of the American Rule meant that the trustee was not entitled to payment of its defense costs "unless and until it prevailed in litigation." (BNYM Mem. at 33). Here too, the Resolution does not include an express waiver of the American Rule, and BNYM is not entitled to payment of its defense costs unless and until it prevails.

12. BNYM's reliance on the residential mortgage-backed securities (RMBS) cases is also misplaced (BNYM Mem. at 17-19), as those cases arose in a wholly distinguishable context. The trustees in those cases, defending multiple actions, were drawing upon the trust *res* to fund their defense. Plaintiffs asked the courts to enjoin the trustees from further draw downs, alleging that the trustees had no right to reimbursement from the trust *res* on account of defense costs until having obtained a final judgment in their favor, and demanded that the trust *res* be distributed to the certificate holders instead. The courts permitted the trustees to continue drawing upon the trust to fund their defenses because the bank-trustees in those cases were credit worthy and could reimburse the trusts if found to have engaged in non-indemnifiable conduct, while the certificate holders were widely disbursed investors, from whom there lacked a practical way to claw back amounts due to the trustees if the trustees prevailed. That has no similarity to the facts here. Here, BNYM could only be *conceivably* entitled to current-pay if the Court were first to determine that BNYM is entitled to security for its defense costs. With security in place,

there is no adverse party credit risk like there was in the RMBS cases, and the RMBS cases thus have no application here.

13. Finally, BNYM ignores that current-pay necessarily raises practical considerations that at worst render the concept unworkable, and at best, entails a significant practical burden on the Court and is unfair to Ambac. Even assuming that BNYM had a right to current-pay vis-à-vis COFINA in connection with fees incurred in the Ambac Action, COFINA at least would have the right to review Reed Smith's invoices and object if appropriate. Here, Ambac is an adverse litigant to BNYM, and BNYM will likely not wish to share its counsel's timesheets during litigation, which means that Ambac would be in a *worse* position than COFINA. Thus, BNYM seems to propose that Ambac supply a blank check, where Ambac would lack any opportunity to test the reasonableness of the legal fees in real time.[5] In the alternative, BNYM would apparently saddle the Court (or its delegate) with the obligation to review bills on a month-to-month basis. But, if BONY finds itself in need of cash, the far more equitable and least burdensome approach would be for BNYM to make an application to the Court to draw down on the bond at the conclusion of the stage of the case in which BNYM prevails, if it does prevail.[6]

---

[5] This is particularly troubling in light of BNYM's position that it anticipates incurring fees of *$25 million to $40 million* to defend the Ambac and Whitebox Actions, and that BNYM expects Ambac to fund its *counterclaims* and *third-party claims*, to which it has no right to security under Section 19.5. (Goldberg Decl. ¶¶ 83-84) [ECF No. 412-1]. Without the ability to challenge current-pay in real-time, Ambac lacks any meaningful ability to prevent this kind of abuse.

[6] BNYM's reliance on In re River East Plaza, LLC, 669 F.3d 826 (7th Cir. 2012) to suggest that a cash bond is inadequate here is misplaced. (BNYM Mem. at 23 n.24). Even if BNYM were (i) secured and (ii) entitled to current payment of its defense costs, the Court is capable of ordering — and these sophisticated parties are capable of procuring — a form of bond that BNYM could draw upon. Such a bond would not create a different "risk profile" or deprive BNYM of its bargained-for security, as was the concern with respect to the 30-year T-bills in In re River East Plaza, LLC. Id. at 831-33.

### C. Section 1103 Does Not Expand BNYM's Rights Beyond Section 804

14. BNYM continues to argue that Section 1103, after an Event of Default, grants BNYM priority over Ambac with respect to COFINA's indemnity obligations. (BNYM Mem. at 24). But BNYM acknowledges (as it must) that Section 1103 begins with the clause "Subject to Section 804" and is derivative of that Section, thus providing no additional right to indemnification. Any right of BNYM to use available funds to reimburse itself is subject to the fact that, under Section 804, there is no lien for indemnification.[7]

15. BNYM argues in a footnote (BNYM Mem. at 26 n.26) that even if it is unsecured as to its indemnification rights (which it is), BNYM should still be entitled to a reserve because Section 1103 is somehow an "intercreditor agreement" by which Ambac *consensually* prioritized BNYM's right to reimburse itself for indemnifiable legal expenses. But that is not true for at least two reasons. *First*, Section 1103 does not mention indemnifiable expenses. It provides that BNYM could, prior to making distributions to Bondholders under the Resolution following an Event of Default, reimburse itself for two kinds of expenses:

> [i] reasonable expenses of the Trustee and its agents and attorneys necessary in the opinion of the Trustee <u>to protect the interests of the Owners of the Bonds and the other Beneficiaries</u>, and [ii] for the payment of the reasonable charges and expenses and liabilities incurred and advances made by the Trustee and its agents and attorneys <u>in the performance of their duties under the Resolution</u>[.]

Resolution § 1103.1 (enumeration supplied). Neither of the two enumerated categories applies with respect to legal defense costs, since such costs are *not* incurred to (i) protect "the Owners of the Bonds and other Beneficiaries," or (ii) "in the performance of [BNYM's] duties under the

---

[7] BNYM's reliance on Section 501 of the Resolution (BNYM Mem. at 19) fails too because its rights under that Section are "subject to Section 804" and are limited thereby.

Resolution." As shown above, BNYM is defending itself in the Ambac Action for the benefit of BNYM, not because the Resolution requires it to do so.

16. The second reason that Section 1103 does not help BNYM is that BNYM is not making any distribution to Bondholders under Section 1103. BNYM is making distributions *exclusively* pursuant to the Plan. Nothing in the Plan carries forward any unsecured putative "intercreditor" priorities that BNYM contends to have in Section 1103. Section 1103 is therefore irrelevant.[8]

## CONCLUSION

BNYM's over-reaching demand for current-pay is wholly inequitable. There is neither a legal justification nor a practical mechanism for current-pay, and BNYM's request for it is a litigation tactic, nothing more. Ambac respectfully submits that the Court should reject BNYM's request for security in connection with the Ambac Action. In the event the Court concludes that BNYM is entitled to security, however, BNYM can — like any bonded party in a litigation setting —reasonably charge against the bond at the conclusion of the proceedings, if it were to prevail.

---

[8] BNYM advances the extraordinary argument that Ambac, despite being a Beneficiary under the Resolution and a direct participant in this Section 19.5 dispute, lacks standing to even *oppose* BNYM's claimed entitlement to security in connection with its rights under Section 1103. (BNYM Mem. at 30). BNYM misses the mark for a number of reasons, at least because Section 19.5 explicitly grants standing to Ambac in connection with the 19.5 dispute, and because Ambac would suffer injury-in-fact if BNYM were somehow deemed entitled to holdback funds due to Ambac under the Plan distribution scheme.

Dated: January 12, 2019
        San Juan, Puerto Rico

| **CURTIS, MALLET-PREVOST,<br>COLT & MOSLE LLP** | **FERRAIUOLI LLC** |
|---|---|
| By: /s/ *Gabriel Hertzberg*<br>   Michael J. Moscato<br>   (admitted *pro hac vice*)<br>   Gabriel Hertzberg<br>   (admitted *pro hac vice*)<br>   101 Park Avenue<br>   New York, NY 10178<br>   Telephone: (212) 696-6000<br>   Facsimile: (212) 697-1559<br>   Email: mmoscato@curtis.com<br>             ghertzberg@curtis.com | By: /s/ *Roberto Cámara-Fuertes*<br>   Roberto Cámara-Fuertes<br>   (USDC-PR No. 219002)<br>   Sonia Colón<br>   (USDC-PR No. 213809)<br>   221 Ponce de León Avenue, 5th Floor<br>   San Juan, PR 00917<br>   Telephone: (787) 766-7000<br>   Facsimile: (787) 766-7001<br>   Email: rcamara@ferraiuoli.com<br>            scolon@ferraiuoli.com |

*Attorneys for Ambac Assurance Corporation*

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

*/s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com

33917279