**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

----------------------------------------------------------------x

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.[1]

----------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE COMMONWEALTH OF
PUERTO RICO,

    as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

    as representative of

THE COMMONWEALTH OF PUERTO RICO,

    Plaintiff,

v.

BETTINA WHYTE

    as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

    as representative of

THE PUERTO RICO SALES TAX FINANCING
CORPORATION,

    Defendant.

----------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

Adv. Proc. No. 17-00257

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

1

**DECLARATION OF NATALIE A. JARESKO IN SUPPORT OF COMMONWEALTH OF PUERTO RICO'S MOTION PURSUANT TO BANKRUPTCY RULE 9019 FOR ORDER APPROVING SETTLEMENT BETWEEN COMMONWEALTH OF PUERTO RICO AND PUERTO RICO SALES TAX FINANCING CORPORATION**

I, Natalie A. Jaresko, hereby declare and state as follows:

1. I am the Executive Director of the Puerto Rico Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth of Puerto Rico (the "Commonwealth"), the Puerto Rico Sales Tax Financing Corporation ("COFINA"), the Puerto Rico Electric Power Authority, the Puerto Rico Highways and Transportation Authority, and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA").

2. I received my Master's Degree in Public Policy from the Harvard University Kennedy School of Government in 1989, and my Bachelor of Science Degree in Accounting from DePaul University in Chicago, Illinois in 1987. From 1989 to 1992, I served in various economic positions at the U.S. State Department in Washington, D.C. From 1992 to 1995, I served as the Chief of the Economic Section of the U.S. Embassy in Ukraine, where I was responsible for building a new economic relationship between the United States and newly-independent Ukraine. From 2014 to 2016, I served as Minister of Finance of Ukraine at one of the most critical times in Ukraine's history, rocked by a deep recession, foreign occupation, and war on part of its territory. During my tenure, I led the successful negotiation and implementation of one of the largest IMF programs in the institution's history, as well as a complex sovereign and sovereign-guaranteed debt restructuring. As a result of the Ukrainian government's actions during my tenure, Ukraine is seeing its first signs of recovery, including

stabilization of the domestic currency, growth in banking system deposits, sharply reduced inflation, and growth in industrial production.

3. On June 30, 2016, President Obama signed into law PROMESA, establishing the Oversight Board pursuant to PROMESA section 101(b). On August 31, 2016, President Obama appointed the Oversight Board's seven voting members. In March 2017, I was designated Executive Director of the Oversight Board.

4. As Executive Director of the Oversight Board, I am responsible for, among other things, (i) managing and leading the affairs of the Oversight Board as its highest-level executive, under the guidance and supervision of the Oversight Board, (ii) organizing and participating in the Oversight Board's meetings and other meetings associated with the Oversight Board's business and operations, (iii) coordinating the discussion, negotiation and certification of the Commonwealth's fiscal plan and fiscal plans of covered territorial instrumentalities, as well as the analysis and certification process of annual budgets of the Commonwealth and the covered territorial instrumentalities, (iv) assisting and participating, as required, in voluntary negotiations, creditor collective actions, and debt restructuring processes of the Commonwealth and the covered territorial instrumentalities, and (v) promoting initiatives that create the necessary foundation for economic growth and restore opportunity to the people of Puerto Rico and access to the capital markets.

5. In this role, I am in constant communication with the Oversight Board's members, counsel and financial advisors and consultants, the court-appointed mediation team led by Chief Bankruptcy Judge Barbara Houser, and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") and its counsel, financial advisors, and consultants. In consultation with the

members of the Oversight Board and its counsel and advisors, I review legal analyses and make recommendations to the Oversight Board on policy positions and strategies.

6. I submit this declaration in support of the *Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation*, filed on October 19, 2018 [Case No. 17-3283, ECF No. 4067] (the "Motion"),[2] and the *Commonwealth of Puerto Rico's Omnibus Reply to Objections to Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation*, filed on December 7, 2018 [Case No. 17-3283, ECF No. 4434], and in response to the objections interposed to the relief requested in the Motion by (a) the Service Employees International Union and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America [Case No. 17-3283, ECF No. 4233], (b) PROSOL-UTIER [Case No. 17-3283, ECF No. 4251], (c) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico, which filed a limited objection that was subsequently withdrawn as noted below [Case No. 17-3283, ECF No. 4266], and (d) Lawrence B. Dvores [Case No. 17-3283, ECF No. 4244].

7. I am familiar with the Oversight Board's discussions, negotiations, and deliberations with respect to the Commonwealth-COFINA Dispute, the Procedures Order, the appointment of the Commonwealth Agent and the COFINA Agent, the Agents' announcement of the Agreement in Principle, the A&R Plan Support Agreement, the Settlement and entry into the Settlement Agreement.[3]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion.

[3] All references to Exhibits herein shall refer to the exhibits contained in the *Appendix of Consolidated Exhibits Referenced in the (I) Declaration of David M. Brownstein in Support of COFINA's Plan of Adjustment, (II) Declaration of Natalie A. Jaresko in Support of COFINA's Plan of Adjustment, and (III) Declaration of Natalie*

4

8. The Settlement Agreement is a necessary component for the Commonwealth to maximize recoveries for its stakeholders. Prior to the commencement of the Commonwealth's Title III Case, the Oversight Board recognized that resolution of the Commonwealth-COFINA Dispute is a critical component to the Commonwealth's restructuring. Of the approximately $74 billion in aggregate Puerto Rico funded debt, the GO Debt and COFINA's Existing Securities together account for approximately 55% of the total funded indebtedness to be restructured. The determination of which funds are available to service COFINA's debt and the Commonwealth's debt is dependent upon which entity, the Commonwealth or COFINA, owns the portion of the Commonwealth's general sales and use tax (the "SUT") that was purportedly transferred to COFINA pursuant to Act of May 13, 2006, No. 91-2006, 2006 P.R. Laws 246 *et seq.* (codified as amended at P.R. Laws Ann. tit. 13, § 12) (as amended, "Act 91"), as well as other related legal issues. The Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended and restated on June 10, 2009 (as amended and supplemented, the "Resolution"),[4] states that the SUT was pledged by COFINA to secure the repayment of the COFINA bonds. The amount at issue is significant—approximately $783 million in the current fiscal year alone, which amount grows at four percent (4%) annually until it reaches $1.85 billion in fiscal year 2041 and remains fixed at that amount until COFINA's bonds are repaid in accordance with their terms (the "Pledged Sales Tax Base Amount"), which would total billions of dollars over the next forty (40) years, as the Fiscal Plan recognizes.[5] Therefore, if the Pledged Sales Taxes were property of COFINA (and not the Commonwealth), the Commonwealth would

---

*A. Jaresko in Support of Approval of the Commonwealth's 9019 Settlement Motion* filed concurrently with this declaration. *See* Exhibits DX-B, DX-C, DX-D, and DX-E for true and correct copies of the Procedures Order, the Agreement in Principle, the A&R Plan Support Agreement, and the Settlement Agreement, respectively.

[4] *See* Exhibit DX-K for a true and correct copy of the Resolution.
[5] *See* Exhibit DX-L for a true and correct copy of the Fiscal Plan.

5

have $783 million less in fiscal year 2019 (which annual amount would increase over time) to pay its liabilities and expenses, including addressing the essential services of the Commonwealth and the needs of its citizens. Conversely, if the Pledged Sales Taxes were property of the Commonwealth, the Oversight Board believes there would not be any funds available to address and satisfy COFINA's outstanding indebtedness. Until a resolution was reached on the Commonwealth-COFINA Dispute, the Oversight Board would not be able to begin to formulate a Title III plan of adjustment for the Commonwealth, COFINA, or certain of their other debtor-affiliates.

9. *Evaluation of the Commonwealth-COFINA Dispute*. In approving entry into the Settlement Agreement, the Oversight Board reviewed the complex issues involved in the Commonwealth-COFINA Dispute implicating, among other things, Commonwealth law. In addition the Oversight Board, with its advisors, reviewed and analyzed (a) the Resolution and related documents pursuant to which the Existing Securities were issued and the rights of bondholders thereunder, (b) the applicable legislation by which the Commonwealth imposed a general tax on the sales and use of a broad range of goods and services, and the process and procedures by which such sales and use tax revenues are collected and held, and (c) the procedures and accounts through which payment on the Existing Securities are made.

10. *Existing Litigation of Commonwealth-COFINA Dispute*. The Oversight Board recognized that the Commonwealth-COFINA Dispute is a long-standing issue that spawned litigation prior to the commencement of the Commonwealth's Title III case. Specifically, on July 20, 2016, certain holders of GO Bonds filed a complaint in the U.S. District Court for the District of Puerto Rico against the Governor, Secretary of Treasury, and Office of Management and Budget Director seeking (a) declaratory relief that the Puerto Rico Emergency Moratorium

and Financial Rehabilitation Act, Act 21-2016 ("Act 21"), which authorized the Governor to, among other things, declare a temporary moratorium on debt service payments and stay creditor remedies, and an executive order issued pursuant to Act 21 announcing a moratorium on the Commonwealth's general obligations bonds, are preempted by PROMESA section 204(c)(3), and (b) an injunction to prevent certain measures taken by the government permitting transfers outside of the ordinary course. *Lex Claims, LLC v. Garcia-Padilla*; District Court, District of Puerto Rico, July 20, 2016, Case No. 16-2374-FAB (the "Lex Claims Litigation").[6] On November 4, 2016, the plaintiffs filed a second amended complaint, as further described below, adding new causes of action, including three causes of action relating to COFINA, and adding COFINA and other parties as defendants.[7] On December 16, 2016, COFINA filed an answer to the second amended complaint generally denying the allegations and asserting various affirmative defenses.[8] Certain COFINA bondholders who intervened in the Lex Claims Litigation also filed answers generally denying the allegations and asserting various defenses and counter- and cross-claims.

11. The Oversight Board, together with its advisors, carefully reviewed and evaluated (i) the various positions of the parties, including with respect to the issue of whether the Commonwealth Constitution requires the Commonwealth to pay the GO Debt ahead of any other expenditure, and (ii) the complexity of the issues involved and the number of holders and insurers of Existing Securities, permitted to intervene in the Lex Claims Litigation, and their positions with respect to whether the Pledged Sales Taxes were legislatively rendered property of

---

[6] *See* Exhibit DX-M for a true and correct copy of the Lex Claims Litigation complaint.
[7] *See* Exhibit DX-N for a true and correct copy of the Lex Claims Litigation second amended complaint.
[8] *See* Exhibit DX-O for a true and correct copy of COFINA's answer to the second amended complaint in the Lex Claims Litigation.

COFINA from their inception, thereby eliminating any possibility the taxes may be property or "available resources" of the Commonwealth.[9]

12. *The Oversight Board's Steps to Resolve the Commonwealth-COFINA Dispute*. Promptly after certification of the Fiscal Plan on March 13, 2017, the Oversight Board and the Commonwealth undertook a joint effort to formulate restructuring proposals for all major creditors based on the debt sustainability analysis in the Fiscal Plan. The Oversight Board and AAFAF requested that holders of GO Debt and COFINA's Existing Securities participate in mediation with the Oversight Board and AAFAF. The mediation began on April 13, 2017, under the auspices of former Bankruptcy Judge Allan Gropper. Despite several mediation sessions and other private negotiations, no agreement was reached before the pre-Title III stay provided in PROMESA section 405 expired on May 1, 2017.

13. After competing bondholder groups commenced litigation against the Commonwealth and COFINA, it became clear to the Oversight Board, in consultation with the Government and at the request of the Government, and after consideration of creditor support for a Title III filing, that the best path forward for the Commonwealth and COFINA to resolve the Commonwealth-COFINA Dispute was to file the Title III Cases to afford the Commonwealth and COFINA additional time and breathing room to seek to resolve the impasse.

14. On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof. On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to

---

[9] *See* Exhibit DX-P for a true and correct copy of the *Intervenor-Defendant Ambac Assurance Corporation's Motion to Dismiss Plaintiff's PROMESA § 303(3) Claim, to Strike Certain Portions of the SAC's Prayer for Relief, or, in the Alternative, to Certify the COFINA Question to the Supreme Court of Puerto Rico*. Lex Claims Litigation, ECF No. 232, at 30.

8

PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA pursuant to PROMESA section 304(a), commencing a case under Title III thereof.

15. Pursuant to PROMESA section 315(b), the Oversight Board is representative of the Commonwealth and COFINA in their respective Title III cases. Given the importance of the issues involved in the Commonwealth-COFINA Dispute, the Oversight Board analyzed various options for resolving the dispute and determined that the best path forward was to have arm's length negotiations between the Commonwealth and COFINA to resolve the dispute. Shortly following the commencement of the Commonwealth's Title III Case, the Oversight Board sought to institute procedures for an orderly process to resolve the Commonwealth-COFINA Dispute, which process involved the appointment of independent Oversight Board agents to serve separately as the respective representatives of the Commonwealth and COFINA in the Commonwealth-COFINA Dispute. On June 10, 2017, the Oversight Board filed *the Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [Case No. 17-3284, ECF No. 303] (the "Commonwealth-COFINA Dispute Procedures Motion").[10] On June 28, 2017, the Court denied the Commonwealth-COFINA Dispute Procedures Motion, without prejudice, but (a) requested that the Oversight Board seek agreement of all interested parties to a procedure for resolving the Commonwealth-COFINA Dispute through confidential mediation with Chief Bankruptcy Judge Barbara Houser of the Northern District of Texas and (b) authorized the Oversight Board to file a revised motion with or without unanimous support of interested parties.[11]

---

[10] *See* Exhibit DX-V for a true and correct copy of Commonwealth-COFINA Dispute Procedures Motion.

[11] *See* Exhibit DX-W for a true and correct copy of the Order Denying, Without Prejudice, Commonwealth-COFINA Dispute Procedures Motion [Case No. 17-3283, ECF No. 544].

16. Consistent with the Court's request, the Oversight Board worked with Chief Bankruptcy Judge Houser and any creditor party who sought to participate to formulate procedures agreeable to the interested parties. On July 21, 2017, the Oversight Board filed the Revised Motion of Debtors for Order Approving Stipulation Providing Procedure to Resolve Commonwealth-COFINA Dispute [ECF No. 718][12] seeking approval of a stipulation establishing a protocol to address the Commonwealth-COFINA Dispute, including the appointment of respective agents for the Oversight Board as debtor representatives for the Commonwealth and COFINA to litigate, mediate, and/or settle the Commonwealth-COFINA Dispute, and providing a procedure and timeline for the Agents to consult with creditors and their respective debtors.

17. On August 10, 2017, the Court entered the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [ECF No. 996] (the "Procedures Order"), which provides, among other things, that (a) the Oversight Board, as representative of the Commonwealth in its Title III case, authorized the Committee to serve as the Commonwealth representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of the Commonwealth; and (b) the Oversight Board, as representative of COFINA in its Title III case, authorized Bettina Whyte to serve as the COFINA representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA.

18. *The Adversary Proceeding*. With respect to the adversary proceeding commenced by the Commonwealth Agent on September 8, 2017 to seek a resolution of the Commonwealth-COFINA Dispute (the "Adversary Proceeding"),[13] the Oversight Board and its advisors have

---

[12] *See* Exhibit DX-X for a true and correct copy of the *Revised Motion of Debtors for Order Approving Stipulation Providing Procedure to Resolve Commonwealth-COFINA Dispute* [Case No. 17-3283, ECF No. 718].

[13] *See* Exhibit DX-Y for a true and correct copy of the complaint in *Official Committee of Unsecured Creditors v. Whyte*, Adv. Proc. No. 17-00257, ECF No. 1.

reviewed the filings and, to the extent appropriate, participated in the Adversary Proceeding, and, in doing so, are familiar with the complexity of the issues raised in the dispute involving multiple groups of COFINA and GO Debt bondholders, as well as other parties that had been permitted to intervene in the Adversary Proceeding. Adversary Proceeding, ECF Nos. 88, 90, 94.[14] The Oversight Board and its advisors carefully evaluated and discussed the various competing positions of the myriad parties involved in the Adversary Proceeding.

19. In addition, the Oversight Board reviewed, evaluated, and discussed the issues involved with respect to the COFINA Agent's *Motion and Incorporated Memorandum of Law of the COFINA Agent to Certify Questions Under Puerto Rico Law to the Supreme Court of Puerto Rico*, Adversary Proceeding, ECF No. 329 (the "Certification Motion"),[15] seeking an order certifying certain questions under Puerto Rico law to the Supreme Court of Puerto Rico (the "PR Supreme Court"), and considered the number of parties involved in the issue, including the Oversight Board, the Commonwealth Agent and AAFAF, and the various competing positions, and the Court's May 24, 2018 decision denying the Certification Motion, holding that certification is unwarranted because (a) the issues underlying the Commonwealth-COFINA Dispute, as defined in the Procedures Order, present a mixed question of federal and Puerto Rico law, and (b) certification would delay resolution of the Commonwealth-COFINA Dispute. Adversary Proceeding, ECF No. 483.[16]

---

[14] *See* Exhibits DX-AA, DX-BB, and DX-CC for true and correct copies of the filed answers, counterclaims, and cross-claims filed in the Adversary Proceeding, ECF Nos. 88, 90, 94.

[15] *See* Exhibit DX-MM for a true and correct copy of the Certification Motion. The COFINA Senior Bondholders' Coalition filed a statement in support of, and joinder to, the Certification Motion, *see* Exhibit DX-NN for a true and correct copy. Adversary Proceeding, ECF No. 332. The Mutual Fund Group and the Puerto Rico Funds filed a similar motion adopting and incorporating the arguments in the Certification Motion, *see* Exhibit DX-OO for a true and correct copy. Adversary Proceeding, ECF No. 331.

[16] *See* Exhibit DX-TT for a true and correct copy of ECF No. 483 in the Adversary Proceeding.

20. *The Agreement in Principle and Entry into the Settlement Agreement*. In September 2017, following entry of the Procedures Order and concurrently with the litigation of the Adversary Proceeding, the Agents and various parties to the Commonwealth-COFINA Dispute engaged in mediation led by mediation team leader Hon. Barbara J. Houser to resolve the dispute, while the dispute continued to be litigated in the Adversary Proceeding. At the time, such efforts were unsuccessful.

21. Following oral argument regarding the respective motions for summary judgment, the Mediation Team and the Agents rekindled such discussions. The Oversight Board was not a party to such mediation efforts, other than to be informed of their existence. Likewise, the Oversight Board was unaware of all of the parties that may have participated in such mediation. On June 7, 2018, the Agents announced an Agreement in Principle to resolve the Commonwealth-COFINA Dispute. While the Oversight Board asserted that, among other things, the Agreement in Principle exceeded the scope of the Adversary Proceeding and the Procedures Order by attempting to, among other things, dictate the terms of plans of adjustment in the Title III Cases and limit the availability and use of funds, the Oversight Board determined, after reviewing the extensive litigation history and issues raised in the Adversary Proceeding, assessing the likelihood of success for the Commonwealth in the litigation, and in consultation with its advisors, that the central component of the Agreement in Principle—the 53.65% / 46.35% allocation of the disputed sales and use tax revenue between COFINA and the Commonwealth, respectively—was a fair and reasonable settlement and compromise of the Commonwealth-COFINA Dispute given the substantial risks, uncertainty and extended time frame of litigation, and determined to build upon the central component of the Agreement in Principle to garner support for a confirmable COFINA plan of adjustment.

22. On August 8, 2018, following over two weeks of court-sanctioned mediation among interested parties convened by the mediation team, the Oversight Board announced that it had reached an agreement with certain holders and insurers of COFINA's Existing Securities and AAFAF on the economic treatment of COFINA's Existing Securities and the terms of new securities to be issued pursuant to a proposed COFINA plan of adjustment, of which the Agreement in Principle was the foundation.[17] This agreement was memorialized in the Original Plan Support Agreement, which was amended and restated in the A&R Plan Support Agreement, and embodies the important compromise reached in the Agreement in Principle regarding the allocation of disputed sales and use tax revenue and provides for additional terms and conditions that were required to reach a final settlement.

23. After the August 8, 2018 announcement, the Oversight Board negotiated the terms of the Settlement Agreement with the COFINA Agent, consistent with the economic terms of the Agreement in Principle. On August 13, 2018, the Commonwealth Agent filed an informative motion stating that it was not prepared to enter into a definitive agreement for the Agreement in Principle, because the Oversight Board's then most-recent certified Fiscal Plan for the Commonwealth was allegedly materially different from the one in effect when the Agreement in Principle had been announced.[18] The Oversight Board did not believe this concern was relevant because the certified Fiscal Plan did not alter the assessment of the merits or risks in litigating the Commonwealth-COFINA Dispute, or the economics of the allocation of the disputed sales and use tax revenue.

---

[17] *See* Exhibit DX-UU for a true and correct copy of the August 8, 2018 press release.

[18] *See* Exhibit DX-VV for a true and correct copy of the *Commonwealth Agent's Informative Motion With Respect to Oversight Board's Announcement, Dated August 8, 2018, Regarding Certain Terms for COFINA Plan of Adjustment* [Case No. 17-00257, ECF No. 540].

13

24. On October 19, 2018, after extensive discussion and deliberations, the Oversight Board, as representative of the Commonwealth, approved entry into the Settlement Agreement with the COFINA Agent. In approving entry into the Settlement Agreement, the Oversight Board considered, among other things, (i) the nature of the Commonwealth-COFINA Dispute as an overarching and gating issue that must be resolved before the Commonwealth's restructuring can proceed, (ii) the substantial litigation between the Commonwealth and COFINA and their respective creditor constituencies with respect to the dispute, (iii) the central component of the Agreement in Principle reached between the Commonwealth Agent and the COFINA Agent providing for the 53.65% / 46.35% allocation of the disputed sales and use tax revenue between COFINA and the Commonwealth, respectively, and (iv) the extensive discussions among representatives of the Oversight Board, its consultants, and attorneys with representatives of the Governor, the court-appointed mediation team, and representatives of certain creditors of COFINA and the Commonwealth to develop a consensus on the terms of a COFINA plan of adjustment and settlement of the Commonwealth-COFINA Dispute. Critically, the Settlement Agreement (a) ensures that the Commonwealth will have access to a significant portion of the SUT Revenues it does not have today—over $360 million in Fiscal Year 2019, which amount will increase in the coming years at four percent (4%) annually, (b) curtails costly, time consuming litigation, (c) extinguishes billions of dollars of claims that have been asserted by COFINA and COFINA bondholders against the Commonwealth, and (d) will facilitate and expedite the Commonwealth's progression towards a confirmable plan of adjustment and its ability to access the capital markets. The Oversight Board evaluated such benefits against the likelihood of success and risks of continued litigation absent a settlement of the Commonwealth-COFINA Dispute, which include a return to complex, protracted and novel litigation, and the

14

risk that, if the litigation were decided in favor of COFINA, none of the Pledged Sales Tax Base Amount would be available for the Commonwealth for payment of essential services or distribution to Commonwealth creditors on behalf of the billions of dollars of claims filed in the Commonwealth Title III Case.

25. Based on the foregoing, the Oversight Board concluded that the Settlement is fair and reasonable and is in the best interest of the Commonwealth and its stakeholders.

26. *Creditor Support for the Settlement.* On October 17, 2018, the Commonwealth Agent/the Creditors' Committee, which represents a significant cross-section of Commonwealth creditors, filed the *Urgent Motion of Commonwealth Agent Requesting Entry of Order Establishing Hearing Date and a Briefing Schedule for Motion to Enforce Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute in Title III Case of Commonwealth of Puerto Rico* [Case No. 17-3283, ECF No. 4057] (the "Scheduling Motion"),[19] seeking a hearing and briefing schedule on a yet-to-be-filed motion (the "Enforcement Motion") to enforce the Procedures Order. The Commonwealth Agent claimed at that time, among other things, that the Oversight Board did not have authority to seek approval of a COFINA settlement in the Commonwealth Title III Case unless (1) the Oversight Board does so as part of confirmation of a Commonwealth plan of adjustment that incorporates such settlement, or (2) the settlement in question was negotiated by the Agents. Following the filing of the Scheduling Motion, the Oversight Board engaged in discussions with the Commonwealth Agent to resolve the issues to be asserted in the Enforcement Motion, culminating in the filing and entry of the *Stipulation and Agreed Order Related to Commonwealth 9019 Motion* [Case No. 17-3283, ECF

---

[19] *See* Exhibit DX-ZZ for a true and correct copy of the *Urgent Motion of Commonwealth Agent Requesting Entry of Order Establishing Hearing Date and a Briefing Schedule for Motion to Enforce Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute in Title III Case of Commonwealth of Puerto Rico* [Case No. 17-3283, ECF No. 4057].

No. 4202] (the "Enforcement Motion Stipulation"), resolving the Commonwealth Agent's concerns. The Commonwealth Agent has not filed the Enforcement Motion, nor has it objected to the Motion pursuant to the terms of the Enforcement Motion Stipulation.[20]

27. Finally, the A&R Plan Support Agreement shows that there is significant support for the Settlement by holders of GO Bonds, which include Aurelius Capital Master, Ltd. and Six PRC Investments LLC, as well as other creditors and insurers who hold or insure billions of dollars of Commonwealth debt, and who have agreed not to oppose the Settlement in the Commonwealth Title III Case. See A&R Plan Support Agreement at 1; art. V.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: January 12, 2019　　　　　　　　　　　　/s/ Natalie A. Jaresko
San Juan, Puerto Rico　　　　　　　　　　　　Natalie A. Jaresko
　　　　　　　　　　　　　　　　　　　　　　Oversight Board, Executive Director

---

[20] See Exhibit DX-AAA for a true and correct copy of the Enforcement Motion Stipulation.