EXECUTION VERSION

# SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT (the "Agreement"), dated October as of 19, 2018, between the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), and (ii) Bettina M. Whyte, in her capacity as the court-appointed agent (the "COFINA Agent") of the Oversight Board, as representative of the Puerto Rico Sales Tax Financing Corporation ("COFINA"). The Oversight Board and the COFINA Agent are sometimes hereinafter referred to individually as a "Party" and collectively as the "Parties".

## RECITALS

A. On May 3, 2017, the Commonwealth commenced a proceeding in the United States District Court for the District of Puerto Rico (the "Title III Court") under title III of the Puerto Rico Oversight, Management and Financial Stability Act ("PROMESA"), which proceeding was assigned Case No. 17-BK-3283 (the "Commonwealth Title III Case").

B. On May 5, 2017, COFINA commenced a proceeding in the Title III Court under title III of PROMESA, which proceeding was assigned Case No. 17-BK-3284 (the "COFINA Title III Case" and, collectively with the Commonwealth Title III Case and the other cases filed under title III of PROMESA by other instrumentalities of the Commonwealth as of the date of this Agreement, the "Title III Cases").

C. Prior to the commencement of the Title III Cases, certain parties asserted various claims relating to COFINA, including that (i) the formation and use of COFINA was unconstitutional under the Puerto Rico Constitution, and (ii) the present and future revenues and collections generated by the five and one-half percent (5.5%) of the sales and use taxes ("SUT") imposed by the Commonwealth (the "COFINA Pledged Taxes"), purportedly pledged by COFINA to secure the various series of bonds issued pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions (collectively, the "Bond Resolutions"), and set forth on Schedule 1 hereto (collectively, the "Existing Securities") and other obligations of COFINA, constituted "available resources" of the Commonwealth pursuant to Article VI, Section 8 of the Puerto Rico Constitution and must be used for the payment of "public debt" as specified therein. Such claims were stayed pursuant to PROMESA prior to any court issuing a ruling on the merits of such claims.

D. Subsequent to the filing of the COFINA Title III Case, the Oversight Board sought an orderly process to resolve the disputes relating to COFINA and the ownership of the COFINA Pledged Taxes. On August 10, 2017, the Title III Court entered that certain *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [Docket No. 996][1] (the "Stipulation"), executed by various stakeholders of the Commonwealth and COFINA, pursuant to which, under certain circumstances, the Oversight Board delegated the authority to litigate to a determination or compromise and settle "whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use

---

[1] All docket references are to the Commonwealth Title III Case unless indicated otherwise.

1

102824080v4

DX-E

EXECUTION VERSION

taxes purportedly pledged by COFINA to secure debt… are property of the Commonwealth or COFINA under applicable law" (the "Commonwealth-COFINA Dispute"), Stipulation ¶4, to the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Commonwealth Agent," and collectively with the COFINA Agent, the "Agents") and the COFINA Agent on behalf of the Commonwealth and COFINA, respectively. The Stipulation envisioned the resolution of the Commonwealth-COFINA Dispute by December 15, 2017.

  E. On September 8, 2017, the Commonwealth Agent commenced an adversary proceeding styled The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico as agent of the Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico v. Bettina Whyte, as agent of The Financial Oversight and Management Board for Puerto Rico as representative of The Puerto Rico Sales Tax Financing Corporation, Adv. Proc. No. 17-257-LTS (the "Adversary Proceeding"), by filing a complaint against COFINA asserting various claims and causes of action, including seeking declarations that Act 91 did not transfer a present ownership in future SUT revenues to COFINA and that Act 91 is unconstitutional because the substantial result of the COFINA structure was evasion of Puerto Rico's Constitutional debt limit, Constitutional balanced budget provision, and Constitutional debt priority.

  F. On September 15, 2017, the COFINA Agent filed an answer and counterclaims against the Commonwealth asserting various claims and causes of action, including seeking declarations that Act 91 is constitutional and that the stream of COFINA Pledged Taxes and the Dedicated Sales Tax Fund, as defined in the Bond Resolutions, are property of COFINA. Additionally, various Permitted Intervenors, as defined in the Stipulation, asserted various claims and causes of action (all claims and causes of action filed in the Adversary Proceeding, the "Commonwealth-COFINA Claims").

  G. Pursuant to the Stipulation, mediation of the Commonwealth-COFINA Dispute, led by Mediation Team Leader Hon. Barbara J. Houser, began in September 2017 and included the participation of the Agents and the Permitted Intervenors.

  H. On September 20, 2017, Hurricane Maria made landfall on Puerto Rico devastating the island and suspending certain proceedings related to the Commonwealth-COFINA Dispute. As a result, the Agents modified their litigation schedule with the consent and approval of the Title III Court, with dispositive motions due to be filed by January 31, 2018, and a trial, if necessary, to be held in early March 2018.

  I. On November 3, 2017, the Title III Court entered an order [Docket No. 1612] that granted the protections of 48 U.S.C. § 2125 (the "Immunity Protections") to the Agents and their respective professionals and employees with respect to all actions taken in good faith to carry out their duties under the Stipulation.

  J. On December 21, 2017, the Title III Court entered an order [Adv. Pro. No. 167][2] (the "Initial Scope Order") clarifying the scope of the Agents' authority and dismissing, without prejudice, certain of the Commonwealth-COFINA Claims.

---

[2] All references to "Adv. Pro. No." are docket references to the Adversary Proceeding.

2

102824080v4

EXECUTION VERSION

K.  On January 24, 2018, the Title III Court entered an order [Adv. Pro. No. 257] (the "Amended Scope Order") granting the Commonwealth Agent's motion to reconsider the Initial Scope Order and allowed the Commonwealth Agent to amend certain claims and causes of action that had been dismissed, without prejudice, pursuant to the Initial Scope Order (all claims and causes of action in the Adversary Proceeding that were dismissed, without prejudice, following the entry of the Amended Scope Order, the "Dismissed Commonwealth-COFINA Claims," and all claims and causes of action in the Adversary Proceeding that were not dismissed, without prejudice, following the entry of the Amended Scope Order, the "Surviving Commonwealth-COFINA Claims").

L.  On February 10, 2018, the Title III Court entered an order [Adv. Pro. No. 284] (the "Mediation Scope Order") (i) authorizing the Agents to mediate and attempt to compromise and settle the Commonwealth-COFINA Claims (except for any claim or cause of action that is owned by a creditor and not owned by the Commonwealth or COFINA, as applicable) pursuant to the terms and conditions of the Stipulation relating to the settlement of the Commonwealth-COFINA Dispute, and (ii) granting the Immunity Protections to the Agents, their professionals and employees with respect to any actions taken in good faith pursuant to the authority granted.

M.  On or around February 21, 2018, the Agents and certain Permitted Intervenors each filed competing motions for summary judgment on the Surviving Commonwealth-COFINA Claims (the "Motions for Summary Judgment").

N.  On February 26, 2018, the COFINA Agent, joined by certain COFINA stakeholders, filed a motion to certify the Surviving Commonwealth-COFINA Claims to the Puerto Rico Supreme Court (collectively, the "Certification Motions"), which were opposed by, among others, the Commonwealth Agent and the Oversight Board citing, among other things, the mixed questions of federal and Puerto Rico law and the need for an expeditious conclusion of the Commonwealth-COFINA Dispute.

O.  On April 10, 2018, the Title III Court heard argument with respect to the Motions for Summary Judgment.

P.  On May 14, 2018, certain of the Permitted Intervenors, consisting of significant holders and insurers of general obligations of the Commonwealth and significant holders and insurers of senior bonds of COFINA announced they had reached a tentative settlement of the Commonwealth-COFINA Dispute (the "GO-COFINA Senior Agreement"), which agreement had been presented to, but was not supported by, the Agents, the Oversight Board, or AAFAF, as defined below.

Q.  On May 14, 2018, the Oversight Board announced that it would not proceed with the GO-COFINA Senior Agreement, but that, consistent with its authority and the terms and provisions of paragraph 4(n) of the Stipulation, the Oversight Board would seek to negotiate with creditors on terms that were affordable, sustainable, and consistent with certified fiscal plans for the island and its instrumentalities.

R.  On May 24, 2018, the Title III Court entered an order [Adv. Pro. No. 483] denying the Certification Motions.

3

102824080v4

EXECUTION VERSION

S. On June 5, 2018, the Agents filed a joint informative motion with the Title III Court [Adv. Pro. No. 484] (the "Joint Urgent Motion") (i) disclosing that, on June 5, 2018, the Agents had reached an agreement in principle (the "Agreement in Principle") to resolve the Commonwealth-COFINA Dispute and all other claims and causes of action that may be settled by the Agents pursuant to the Stipulation and the Mediation Scope Order, including, without limitation, by allocating one hundred percent (100%) of the cash held in trust by Bank of New York Mellon ("BNYM"), as trustee for the Existing Securities, to COFINA and the COFINA Pledged Taxes to COFINA and the Commonwealth in the amounts of fifty-three and sixty-five one hundredths percent (53.65%) and forty-six and thirty-five one hundredths percent (46.35%), respectively, of the existing pledged sales tax base amount with COFINA retaining its "first dollars" priority rights thereto and (ii) requesting that the Title III Court hold its ruling on the Motions for Summary Judgment in abeyance for sixty (60) days until August 4, 2018 (as such period may be extended or renewed, the "Abeyance Period"), to allow the Agents to document a formal settlement agreement and ensure that certain specified conditions to effectiveness of the Agreement in Principle would be satisfied. The Agreement in Principle was thereafter filed on the docket on June 7, 2018 [Adv. Pro. No. 486-1].

T. The Agreement in Principle also provides that, unless otherwise extended in writing by the Agents, the understanding reached therein ("except for the section "Post-July 1, 2018 Collection of SUT") shall terminate automatically unless the Agents are able to agree on the terms of definitive documentation within sixty (60) days of execution of the Agreement in Principle. In connection with the serial extensions of the Abeyance Period, the Agents informally agreed not to terminate the Agreement in Principle.

U. On June 12, 2018, the Title III Court entered an order [Adv. Pro No. 492] granting the Joint Urgent Motion and holding a ruling on the Motions for Summary Judgment in abeyance until August 4, 2018. Pursuant to subsequent consensual motions by the Agents, the Title III Court has entered orders [Adv. Pro. Nos. 539, 543] extending the Abeyance Period up to and including October 3, 2018.

V. Pursuant to orders of the Title III Court, dated June 9, 2018 [Adv. Pro. No. 525] and July 24, 2018 [Adv. Pro. No. 534], and consistent with the Agreement in Principle, Bank of New York Mellon ("BNYM"), as trustee for the holders of Existing Securities, has placed into escrow funds received on deposit (i) prior to July 1, 2018 in the debt service, reserve and such other accounts and any earnings thereon (the "Pre-FY2019 BNYM Deposits") and (ii) on or after July 1, 2018 to the debt service, reserve and such other accounts (the "FY2019 BNYM Deposits").

W. On July 25, 2018, the Commonwealth Agent informed the Title III Court and parties in interest that it continued to support the settlement reached with the COFINA Agent, but the Commonwealth Agent had concerns about the feasibility of moving forward to further document the Agreement in Principle in light of the Oversight Board's then most recent fiscal plan, certified on Jun 29, 2018.

X. On August 8, 2018, and following two weeks of mediation led by the Mediation Team, the Oversight Board announced that it had reached an agreement, predicated upon the allocation of ownership of the Pre-FY2019 BNYM Deposits and COFINA Pledged Taxes developed by the Agents and set forth in the Agreement in Principle, with holders and insurers of

4

EXECUTION VERSION

senior and junior bonds of COFINA, with respect to the terms of new securities to be issued pursuant to a consensual plan of adjustment for COFINA.

Y. On August 13, 2018, the Commonwealth Agent filed an Informative Motion with respect to the Oversight Board's announcement on August 8, 2018 [Adv. Pro. No. 540], wherein the Commonwealth Agent expressed continuing concerns about the feasibility of the agreement in Principle in light of the then most recent certified fiscal plan.

Z. By order, dated September 27, 2018 [Adv. Pro. No. 544], the Title III Court terminated the Motions for Summary Judgment, without prejudice to restoration of such motions on or after October 3, 2018, in light of the Agreement in Principle and ongoing discussions regarding a plan of adjustment for COFINA(the "SJ Termination Order").

AA. As of September 30, 2018, there is approximately $1,203,272,884.15 and $366,835,440.45 of COFINA Pledged Taxes in Pre-FY2019 BNYM Deposits and FY2019 BNYM Deposits, respectively.

BB. Paragraph 4(j) of the Stipulation provides that the Oversight Board may seek approval of a proposed settlement negotiated by the Agent that allocates the Pledged Sales Taxes between COFINA and the Commonwealth, but that does not provide for how the Commonwealth would distribute such assets to creditors, by filing a motion in the Commonwealth Title III Case provided that such motion would be heard on at least forty-five (45) days notice and contemporaneously with a Title III plan of adjustment for COFINA.

CC. Paragraph 4(n) of the Stipulation provides in pertinent part that the Oversight Board shall remain the only party authorized by PROMESA to propose a title III plan of adjustment and, to carry out that power and duty, the Oversight Board may, at any time, propose title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight Board, and the Oversight Board may negotiate and mediate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute.

DD. On August 29, 2018, the Oversight Board, the Commonwealth, COFINA, the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") and various parties to the Commonwealth-COFINA Dispute executed that certain Plan Support Agreement, which agreement was amended and restated by that certain Amended and Restated Plan Support Agreement (the "Amended PSA"), dated as of September 20, 2018. Attached to the Amended PSA as Exhibit "C" is a term sheet the "Term Sheet"), and hereto as Exhibit "A", which term sheet incorporates the allocation of the COFINA Pledged Taxes developed by the Agents in the Agreement in Principle as a foundation and sets forth, among other things, the terms of the securities to be issued pursuant to a plan of adjustment for COFINA (the "COFINA Plan").[3]

**NOW, THEREFORE,** after good faith, arm's-length negotiations between the Parties, and after consideration by the Parties of, among other things, the GO-COFINA Senior Agreement and the Agreement in Principle, together with the merits and likelihood of success of

---

[3] Capitalized terms used but not otherwise defined herein have the meanings given to them in the Amended PSA and the Term Sheet.

5

102824080v4

EXECUTION VERSION

the various Commonwealth-COFINA Claims and the risk of further litigation, and in consideration of the foregoing recitals and of the mutual agreements, covenants and releases set forth herein, and after considering what result is best for the Commonwealth and COFINA, as opposed to what result is best for any particular type of creditor of the Commonwealth or COFINA, and after considering the standard for settlement set forth in <u>Protective Committee of Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414 (1968), and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the Parties, and by the authority granted to the Parties pursuant to the Stipulation, and in the exercise of their respective judgment in accordance with the terms of the Stipulation, the Parties hereto agree to settle the Commonwealth-COFINA Dispute and all other claims and causes of action that may be settled by the Parties pursuant to the Stipulation and/or the Mediation Scope Order as follows:

**AGREEMENT**

1. **Recitals**.  The Recitals above are an integral part of this Agreement and are incorporated herein by reference.

2. **Settlement Motion**.  On or prior to October 19, 2018, the Oversight Board on behalf of the Commonwealth, shall file the Settlement Motion in the Commonwealth Title III Case in accordance with Bankruptcy Rule 9019 seeking the approval of the compromise and settlement of the Commonwealth-COFINA Dispute set forth in the Agreement in Principle to the extent incorporated in Section 3 hereof and in the Term Sheet.  The Parties shall use commercially reasonable efforts to promptly take any action, and negotiate in good faith definitive documentation, in each case, that is required to effectuate the compromise and settlement set forth in this Agreement, including to (a) support this Agreement and (as applicable) make the filings with the Title III Court contemplated by this Agreement, including the COFINA Plan and the Settlement Motion, and (b) not take any action that would interfere with, delay, or postpone the Title III Court's consideration or approval of (x) this Agreement or (y) the filings with the Title III Court contemplated by this Agreement, including, without limitation, the COFINA Plan, the Settlement Motion, and the entry of orders of the Title III Court approving this Agreement and confirming the COFINA Plan (collectively, the "<u>Approval Orders</u>")  Consideration and confirmation of the COFINA Plan in the COFINA Title III Case shall be contemporaneous with consideration and approval of the Settlement Motion in the Commonwealth Title III Case; <u>provided</u>, <u>however</u>, that, in all circumstances, the effective date of the order granting the Settlement Motion shall be contemporaneous with, and its contemporaneous occurrence shall be a condition to, the effective date of the COFINA Plan (the "<u>Effective Date</u>").

3. **Settlement Terms**.

(a) The Commonwealth-COFINA Dispute shall be compromised and settled pursuant to the Settlement Motion and the COFINA Plan, with (i) COFINA being granted ownership of the COFINA Portion, and (ii) the Commonwealth being granted ownership of the Commonwealth Portion; <u>provided</u>, <u>however</u>, that, except as expressly set forth in the Term Sheet (a) one hundred percent (100%) of the Pre-FY2019 BNYM Deposits are held by BNYM, as the COFINA bond trustee, for the benefit of the bondholders in accordance with the Adversary Proceeding and such other orders entered in connection therewith; <u>provided</u>, <u>however</u>, that, (i) of

6

102824080v4

EXECUTION VERSION

Seventy-Eight Million Three Hundred Fifty-Five Thousand Eight Hundred and Thirty-Seven Dollars and Sixty-Three Cents ($78,355,837.63) of the Pre-FY2019 BNYM Deposits, (x) Thirty-Three Million Three Hundred Fifty-Five Thousand Eight Hundred Thirty-Seven Dollars and Sixty-Three Cents ($33,355,837.63) shall be distributed to the Commonwealth, (y) Five Million Dollars ($5,000,000.00) shall be allocated to fund an operating expense fund for COFINA, and (z) Forty Million Dollars ($40,000,000.00) shall be allocated to the Taxable Election Cash distributable under the COFINA Plan and if the Taxable Election Cash distributable under the COFINA Plan is less than Sixty Million Dollars ($60,000,000.00), the Tax Election Remainder Amount shall be distributed (I) *first*, to further fund the operating expense fund for COFINA up to an additional Ten Million Dollars ($10,000,000.00), and (II) *second*, to the extent of any further remainder, to be distributed evenly to COFINA, on the one hand, to increase the COFINA Cash Available for Distribution and increase recoveries to all COFINA bondholders, and the Commonwealth, on the other hand, (b) one hundred percent (100%) of the FY2019 BNYM Deposits, on a first dollars basis up to the amount of fifty-three and sixty-five one hundredths percent (53.65%) of the PSTBA, plus any earnings thereon (the "COFINA FY2019 BNYM Deposits") held by BNYM in accordance with the Adversary Proceeding and such other orders entered in connection therewith, will, on the Effective Date, be the exclusive property of COFINA and will be distributed to COFINA for purposes of distribution in accordance with the COFINA Plan of Adjustment and (c) any FY2019 BNYM Deposits net of the COFINA FY2019 BNYM Deposits, shall be distributed in its entirety to the Commonwealth.

(b) Unless (i) approval of the Settlement Motion is denied by the Title III Court or (ii) the Effective Date does not occur, the effective date of the compromise and settlement (the "Compromise Date") shall be retroactive to July 1, 2018 and, in addition to receipt of the Pre-FY2019 BNYM Deposits, net of amounts allocated pursuant to the provisions of the Term Sheet, and the COFINA FY2019 BNYM Deposits on the Effective Date, COFINA will own, and will be entitled to receive, the COFINA Portion commencing as of FY2019. Until the Effective Date, all revenues attributable to the PSTBA, including, without limitation, the COFINA Portion and the Commonwealth Portion, shall be maintained in accordance with orders of the Title III Court entered in the COFINA Title III Case, the Commonwealth Title III Case, the Adversary Proceeding and the Interpleader Action.

(c) On the Effective Date, pursuant to the Settlement Order and the Confirmation Order, which orders shall amend and supersede such orders of the Title III Court entered in the COFINA Title III Case, the Commonwealth Title III Case, the Adversary Proceeding and the Interpleader Action to the extent that such orders are inconsistent therewith, (1) BNYM shall make distributions as set forth in the Term Sheet, (2) the Adversary Proceeding shall be dismissed, with prejudice, and all other claims and causes of action asserted therein by the Commonwealth Agent, the COFINA Agent and the Permitted Intervenors, as defined in the Adversary Proceeding, shall be deemed dismissed, with prejudice, and the Commonwealth Agent and the COFINA Agent and their respective professionals shall be deemed to have satisfied any and all of their respective obligations in connection with the Adversary Proceeding and the COFINA Agent shall be deemed to have been released from any and all liabilities associated therewith, (3) the Interpleader Action will be dismissed, with prejudice, and all other claims and causes of action asserted therein shall be dismissed, with prejudice, and the funds deposited in connection therewith shall be distributed in accordance with the terms and provisions of this Term Sheet.

7

EXECUTION VERSION

**4.** **Conditions Precedent.** This Agreement shall become effective upon the following conditions precedent having been satisfied or waived by the Parties:

(i) The Approval Orders have each been entered, are unstayed, and as to which orders (A) the deadline to file a notice of appeal or petition for certiorari has lapsed (including any extension provided by Bankruptcy Rule 8002(b)(1)) and no appeal or petition is pending or, (B) if the subject of a timely appeal or petition, no stay, suspension, or injunction precluding effectiveness has been granted and is continuing;

(ii) The Commonwealth will have provided protection of COFINA's property through legislation and covenants to be included for the benefit of COFINA and its creditors in the COFINA Plan and the Definitive Documentation. Without in any way limiting the foregoing, but subject to the occurrence of the Effective Date, the Commonwealth will own and will be entitled to receive the Commonwealth Portion; and

(iii) Entry of the Approval Order approving this Agreement in the Commonwealth Title III Case shall be a condition to confirmation of the COFINA Plan and entry of the Approval Order confirming the COFINA Plan in the COFINA Title III Case shall be a condition to entry of the Approval Order in the Commonwealth Title III Case.

**5.** **Releases.**

(a) On the Effective Date, this Agreement fully, finally, and forever resolves and releases, except to the extent necessary to enforce this Agreement or the COFINA Plan, all claims against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii) concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as expanded by the Mediation Scope Order); provided, however, that nothing herein shall affect any rights, claims, or interests that creditors of the Commonwealth may have with respect to the COFINA Pledged Taxes that are (x) not allocated to COFINA consistent with the Agreement in Principle and (y) received by the Commonwealth.

(b) Notwithstanding the proviso in Section 5(a) hereof, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the COFINA Agent, COFINA, and its current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members, and any creditors or insurers of debt of COFINA, (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits.

102824080v4

EXECUTION VERSION

(c)     For the avoidance of doubt, (a) the foregoing releases shall not release any claims that a beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities, may have against the insurer of such Existing Securities (or any claims that such insurer may have against the beneficial holder of such Existing Securities) under or relating to the policy of insurance issued by such insurer except as the COFINA Plan may otherwise provide and (b) there shall be no release of any claims by any party against the insurers or underwriters of the Existing Securities or the general obligation bonds issued by the Commonwealth, including their current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.

(d)     Any claims by COFINA, against any underwriter of the COFINA Bonds (such claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the nature of contribution, reimbursement, or indemnification, however denominated or described, in connection with, arising out of, or in any way related to such claims (the "Covered Claims"). Any underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.

(e)     The Title III Court's approval of this Agreement, including the order confirming the COFINA Plan, shall specifically grant releases and injunctions consistent with this Section 5.

6.     **COFINA Agent Support**.  The COFINA Agent shall support confirmation of the COFINA Plan properly embodying this Agreement.  In the event that the Title III Court reinstates one or both of the Motions for Summary Judgment as contemplated by the SJ Termination Order, the Parties shall jointly seek to extend the Abeyance Period until the earlier to occur of (a) the Effective Date and (b) the termination of this Agreement pursuant to the terms hereof.

7.     **Fees and Expenses**.  Except as otherwise authorized or permitted by the Term Sheet, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; provided, however, that nothing in this Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3269] and other orders of the Title III Court.

9

102824080v4

EXECUTION VERSION

      **8.**    **Termination.**

(a)    This Agreement shall terminate automatically if the effective date of the COFINA Plan incorporating this Agreement does not occur or the Settlement Motion is not approved, in each case, by March 1, 2019; provided, however, that, upon notice provided by the Oversight Board, such date shall be extended up to and including June 1, 2019.

(b)    The COFINA Agent may terminate this Agreement by providing written notice to the Oversight Board upon the occurrence of any of the following events, with termination being effective immediately upon receipt of such notice:

    (i)    The Title III Court enters an order that no confirmable COFINA Plan can be proposed that is consistent with this Agreement.

    (ii)    The Title III Court enters an order on the merits of the Motions for Summary Judgment (except for an order resolving the Motions for Summary Judgment on the basis that this Agreement has been approved and the Effective Date has occurred).

    (iii)    The COFINA Title III Case is dismissed prior to confirmation of the COFINA Plan.

    (iv)    The COFINA Plan is modified to be materially inconsistent with the Term Sheet in the COFINA Agent's reasonable discretion.

(c)    In the event that this Agreement is terminated by the COFINA Agent, then (i) except as set forth in the order entered by the Title III Court [Adv. Pro. No. 534] governing the COFINA Pledged Taxes collected as of June 30, 2018 (the "SUT Procedures Order"), which order shall survive any termination of this Agreement, this Agreement shall be null and void *ab initio* and of no force or effect and (ii) each of the Parties shall be returned to the Parties' position *status quo ante* (except as set forth in the SUT Procedures Order), and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein, and nothing herein shall be deemed an admission of any kind.

      **9.**    **Rules of Construction.**  The headings of the sections of this Agreement are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining or modifying, in any manner, the language or meaning of those sections or subsections. Each of the exhibits, annexes, signature pages, and schedules annexed hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes, and schedules. When a reference is made in this Agreement to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this Agreement unless otherwise indicated. Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement, (c) the words "include,"

10

EXECUTION VERSION

"includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the Party drafting such agreement or document.

10. **No Admission**. Each Party expressly recognizes that neither this Agreement, nor any other action taken to comply with this Agreement represents an admission of liability or responsibility on the part of either Party. Neither this Agreement nor any action taken to comply with its provisions shall be construed as, or used as, an admission of any fault, wrongdoing, or liability whatsoever in this or any other matter.

11. **Entire Agreement**. The Parties acknowledge that no promise, inducement, or agreement not stated herein has been made to them in connection with this Agreement, and that this Agreement constitutes the entire agreement between them.

12. **No Oral Modifications**. This Agreement may be amended, modified or otherwise changed only in a writing signed by both Parties.

13. **Severability**. If any provision of this Agreement, or application of such provision to any person or circumstance, shall be held invalid by a court of competent jurisdiction, then such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and this Agreement shall be construed, performed, and enforced as if the reformed provision had been included in this Agreement at inception, and the invalidity of any provision of this Agreement shall not affect the remainder of this Agreement.

14. **Choice of Law; Jurisdiction**. This Agreement shall be governed by, and construed under and in accordance with, the laws of the State of New York, determined without reference to principles of conflicts of law (other than Section 5-1401 of the New York General Obligations Law). The Parties agree that the Title III Court shall have exclusive jurisdiction over any disputes relating to this Agreement until both the Commonwealth Title III Case and the COFINA Title III Case have been closed. The Parties irrevocably waive any objection on the grounds of venue, *forum non conveniens* or any similar grounds.

15. **Counterparts**. This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Each of the Parties may execute this Agreement by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original. This Agreement shall not be binding until signed by both Parties.

16. **Inconsistencies**. To the extent that any of the terms and provisions set forth herein are inconsistent with the terms and provisions of the Term Sheet, the terms and provisions of the Term Sheet shall govern in all respects.

11

102824080v4

EXECUTION VERSION

**IN WITNESS WHEREOF**, this Agreement is executed as of the date first written above.

BETTINA M. WHYTE
IN HER CAPACITY AS COFINA AGENT

By: *[signature: Bettina Whyte]*
Name: Bettina M Whyte
Title: COFINA Agent


THE FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD FOR PUERTO
RICO

By: _____
Name: _____
Title: _____

EXECUTION VERSION

**IN WITNESS WHEREOF**, this Agreement is executed as of the date first written above.

**BETTINA M. WHYTE**
**IN HER CAPACITY AS COFINA AGENT**

By: _____
Name: _____
Title: _____


**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO**

By: *Natalie A. Jaresko* (signature)
Name: Natalie A. Jaresko
Title: October 19, 2018

102824080v4

EXECUTION VERSION

## Schedule 1

**COFINA Bond Issuances**

| COFINA Bond Series | Date of Issuance | Principal Amount of Issuance |
|---|---|---|
| Series 2007A | July 13, 2007 | $2,667,603,572.60 |
| Series 2007B | July 17, 2007 | $1,333,101,779.90 |
| Series 2007C | December 18, 2007 | $499,996,627.90 |
| Series 2008A | June 25, 2008 | $737,046,992.35 |
| Series 2009A | June 10, 2009 | $4,118,153,700.00 |
| Senior Series 2009C | June 10, 2009 | $237,875,000.00 |
| First Subordinate Series 2009B | June 19, 2009 | $1,217,915,799.20 |
| First Subordinate Series 2010A | January 28, 2010 | $1,823,757,271.30 |
| First Subordinate Series 2010C | June 24, 2010 | $1,619,404,596.60 |
| First Subordinate Series 2010D | June 24, 2010 | $89,435,000.00 |
| First Subordinate Series 2010E | June 24, 2010 | $92,755,000.00 |
| First Subordinate Series 2011A-1 | November 16, 2011 | $397,758,386.20 |
| First Subordinate Series 2011A-2 | November 16, 2011 | $337,037,187.75 |
| First Subordinate Series 2011B | November 16, 2011 | $45,620,000.00 |
| Senior Series 2011C | December 1, 2011 | $1,006,474,702.00 |
| Senior Series 2011D | December 1, 2011 | $91,155,000.00 |

102824080v4