## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| LEX CLAIMS, LLC, | |
| JACANA HOLDINGS I LLC, | |
| JACANA HOLDINGS II LLC, | |
| JACANA HOLDINGS III LLC, | |
| JACANA HOLDINGS IV LLC, | Case No. 1:16-cv-____ (___) |
| JACANA HOLDINGS V LLC, | |
| MPR INVESTORS LLC, | |
| ROLSG, LLC, | |
| RRW I LLC, | |
| -and- | |
| SL PUERTO RICO FUND II L.P., | |
| Plaintiffs, | |
| v. | |
| ALEJANDRO GARCÍA PADILLA, in his official capacity as Governor of the Commonwealth of Puerto Rico, | **COMPLAINT** |
| JUAN ZARAGOZA GOMEZ, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico, | |
| -and- | |
| LUIS CRUZ BATISTA, in his official capacity as Director of the Office of Management and Budget of the Commonwealth of Puerto Rico, | |
| Defendants. | |

Plaintiffs Lex Claims, LLC, Jacana Holdings I LLC, Jacana Holdings II LLC, Jacana Holdings III LLC, Jacana Holdings IV LLC, Jacana Holdings V LLC, MPR Investors LLC, ROLSG, LLC, RRW I LLC, and SL Puerto Rico Fund II, L.P. for their Complaint against

DX-M

Defendants Alejandro García Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico; Juan Zaragoza Gomez, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico; and Luis Cruz Batista, in his official capacity as Director of the Office of Management and Budget of the Commonwealth of Puerto Rico, allege as follows:

## NATURE OF THE ACTION

1.      This is an action for declaratory and injunctive relief under Section 204(c)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act, Pub. L. 114-187 ("PROMESA" or the "Act").  PROMESA authorizes the establishment of a Financial Oversight and Management Board (the "Oversight Board" or the "Board") to address Puerto Rico's fiscal condition and related issues (PROMESA § 101) and simultaneously imposes a stay on certain litigation by Puerto Rico's creditors (PROMESA § 405).  Recognizing that appointment of the Board according to the statutorily prescribed process cannot be accomplished instantaneously, the Act prohibits Puerto Rico from taking certain action after enactment but before the Board is appointed and operating.

2.      More particularly, Section 204(c)(3), titled "PROHIBITION ON ACTION UNTIL OVERSIGHT BOARD IS APPOINTED," provides that, "[d]uring the period after a territory becomes a covered territory and prior to the appointment of all members and the Chair of the Oversight Board," Puerto Rico "shall not enact new laws that either permit the transfer of any funds or assets outside the ordinary course of business or that are inconsistent with the constitution or laws of the territory as of the date of enactment of this Act."  A manifest purpose of this provision is to prohibit Puerto Rico from capitalizing on the stay on certain bondholder litigation by enacting laws that siphon money away from creditors—especially those that are protected under the Puerto Rico Constitution—before the Board is operational.

3.      Plaintiffs are beneficial owners of substantial amounts of the bonds that are explicitly protected by Puerto Rico's Constitution, and are therefore protected by PROMESA Section 204(c)(3).  Those constitutionally protected bonds fall into two categories: (i) the Commonwealth's general obligation bonds ("GO Bonds"), which were issued by the Commonwealth and are protected and secured by a first lien on all available resources of the Commonwealth and backed by a pledge of the Commonwealth's good faith, credit, and taxing power; and (ii) bonds issued by certain of the Commonwealth's public corporations and guaranteed by the same first lien and pledge by the Commonwealth ("GO-Guaranteed Bonds"). Together, these bonds are known as the "Constitutional Debt" because they are—alone among Puerto Rico's obligations—expressly protected under Article VI of the Puerto Rico Constitution.

4.      The Puerto Rico Constitution is explicit in this regard.  Section 8 of Article VI of the Puerto Rico Constitution provides that if Puerto Rico's "available resources" are insufficient to meet all of its desired spending, "*interest on the public debt and amortization thereof shall first be paid*, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  P.R. Const. Art. VI, Sec. 8 (emphasis added).  This promise of first priority (the "Constitutional Debt Priority Guarantee") unambiguously requires Puerto Rico to pay Constitutional Debt ahead of any other expenditure.   Indeed, when Puerto Rico approached the capital markets in late 2013 to issue additional GO Bonds, Governor García Padilla acknowledged that "[o]ur Constitution gives first priority over all revenues to payments on our general obligation debt," and pledged that Puerto Rico's government would "do everything necessary for Puerto Rico to honor all of its commitments."  *See* Ex. A.  As recently as June 29, 2016, Governor García Padilla again acknowledged that "general obligation bonds" are "the island's senior credits protected by a constitutional lien on revenues."  *See* Ex. B ¶ 9.

5.    Despite this crystal-clear constitutional guarantee and PROMESA's equally explicit prohibition on new measures that violate Puerto Rico's laws or constitution or permit transfers "outside the ordinary course of business," PROMESA § 204(c)(3), Puerto Rico has undertaken extraordinary measures in flagrant disregard of the Constitutional Debt Priority Guarantee.  Indeed, within hours of PROMESA's enactment, Puerto Rico commenced a series of actions doing exactly what Section 204(c)(3) of PROMESA was designed to prevent.

6.    First, Governor García Padilla issued Executive Order 2016-30, which relied on a Puerto Rico statute that was *preempted* by PROMESA (*see* PROMESA § 303).  That order violated the Constitution by declaring a moratorium on the Commonwealth's obligation to repay its Constitutional Debt, despite (by the Commonwealth's own admission) having hundreds of millions of dollars in cash on hand and "available to pay GO and Commonwealth-guaranteed indebtedness" (*see* Ex. C ¶ 3), and despite having "clawed back" almost $300 million of cash that had been earmarked for the payment of debt service by other entities *for the express purpose of paying Constitutional Debt*.

7.    Second, the Commonwealth enacted a budget for Fiscal Year 2017 that does not purport to pay Constitutional Debt, yet makes huge transfers outside the ordinary course of business and diverts vast resources to purposes that apparently enjoy political favor but are indisputably junior to Constitutional Debt.  This includes outsized contributions to Puerto Rico's public employee pension systems of approximately $800 million—which is roughly $150 million more than the Commonwealth appropriated last year—and legislation currently on the Governor's desk would increase that amount by at least $170 million.  The Fiscal Year 2017 budget also diverts approximately $250 million from the general fund to prop up the insolvent

Government Development Bank ("GDB") or to replace certain GDB functions—and, again, pending legislation would increase that amount by $115 million.

8.      These and other actions plainly are transfers "outside the ordinary course of business" and are "inconsistent with the constitution or laws" of Puerto Rico.  PROMESA § 204(c)(3).   Accordingly, Plaintiffs seek declaratory relief under Section 204(c)(3) of PROMESA invalidating the Commonwealth's efforts to violate its constitutional and legal obligations to Constitutional Debt.  Plaintiffs also seek limited injunctive relief to reverse the effects of the most egregious measures and transfers described in this Complaint.  To be clear, this lawsuit does not seek to compel payment on Plaintiffs' bonds; rather, it seeks to prevent the Commonwealth from unlawfully dissipating these assets before the Oversight Board is fully operational.

## PARTIES

9.      Plaintiffs Lex Claims, LLC, Jacana Holdings I LLC, Jacana Holdings II LLC, Jacana Holdings III LLC, Jacana Holdings IV LLC, Jacana Holdings V LLC, MPR Investors LLC, ROLSG, LLC, RRW I LLC, and SL Puerto Rico Fund II L.P. are the beneficial owners of a substantial amount of Constitutional Debt, including both GO Bonds and GO-Guaranteed Bonds.

10.      Defendant Alejandro García Padilla is Governor of the Commonwealth of Puerto Rico and is being sued in his official capacity.

11.      Defendant Juan Zaragoza Gomez is Secretary of the Treasury of the Commonwealth of Puerto Rico and is being sued in his official capacity.

12.      Defendant Luis Cruz Batista is Director of the Office of Management and Budget of the Commonwealth of Puerto Rico and is being sued in his official capacity.  Pursuant to 23

L.P.R.A. § 104(c), Defendant Governor García Padilla may delegate certain authority for implementing payment priorities to Defendant Cruz.

13.     Defendants are responsible for implementing the unlawful measures identified in this Complaint and for ensuring that the Commonwealth complies with its legal and constitutional obligations when setting and following fiscal priorities.

### JURISDICTION AND VENUE

14.     This action arises under Section 204(c)(3) of PROMESA, which was signed into law on June 30, 2016; 42 U.S.C. § 1983; and 28 U.S.C. §§ 2201, 2202. If the Court were to determine that PROMESA's stay provisions applied to this action (contra ¶ 64, *infra*), this action would also arise under Section 405(e) of PROMESA, which grants the district court jurisdiction to consider requests to lift the stay for cause. This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3).

15.     Venue is proper in this district pursuant to Section 106(a) of PROMESA, which provides that "any action . . . arising out of this Act, in whole or in part, shall be brought in a United States district court for the covered territory."

### FACTUAL ALLEGATIONS

I.     **Puerto Rico's Strategy Of Default And Federal Intervention**

A.     **Puerto Rico's First Choice: "Super" Chapter 9**

16.     On June 29, 2015, Defendant Governor García Padilla delivered a television address in which he declared that Puerto Rico's debt is "unpayable" and that "Puerto Rico does not today have the capacity to continue paying under the actual terms" of its debt. He went on to assert that bondholders must accept a "sacrifice" and that Puerto Rico should not be "force[d] to choose" between paying bondholders and competing financial priorities.

17.     Those threats were a prelude to Puerto Rico's primary strategy.  Over the next twelve months, Puerto Rico spent many tens of millions of dollars on advisors and lobbyists who urged the Commonwealth not to honor its Constitutional Debt (or most of its other debt), but instead to seek shelter in federal legislation.

18.     Notably, Puerto Rico *resisted* federal legislation that would have made Puerto Rico eligible to invoke the traditional federal restructuring regime for municipal debt set forth in Chapter 9 of the federal Bankruptcy Code.  Instead, Puerto Rico sought unprecedented federal legislation colloquially referred to as "*Super* Chapter 9," which would have allowed Puerto Rico to retain control over its fiscal affairs and to put all of its debt—beyond what would be permitted for any of the 50 States eligible to authorize their municipalities to access Chapter 9—into a federal bankruptcy regime.  Congress proved unwilling to enact Super Chapter 9.

**B.     PROMESA**

19.     Instead, Congress passed PROMESA, and the President signed it into law on June 30, 2016.  PROMESA imposes a much more restrictive set of compromises and conditions than Puerto Rico had sought.  The law spans some 68 sections, many of which incorporate further statutory provisions (largely from the federal Bankruptcy Code).  It is not necessary to set forth all of those detailed provisions here; for present purposes, it suffices to describe three main features of the Act.

*1.     The Oversight Board*

20.     First, the Act imposes the Oversight Board "to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets."  PROMESA § 101(a).  To that end, the Act grants the Board significant powers over Puerto Rico's budgeting and expenditures,

seeking to reverse years of mismanagement, waste, and a lack of transparency in the Commonwealth's finances. *Id.* § 104.

21.    The Act simultaneously blocks Puerto Rico from attempting to impose a restructuring regime, declare a moratorium on debt payments, or otherwise impair creditors' lawful priorities.  As relevant here, Section 303(1) of PROMESA provides that "a territory law prescribing a method of composition of indebtedness or a moratorium law . . . may not bind any creditor of a covered territory or any covered territorial instrumentality thereof that does not consent to the composition or moratorium."   Section 303(3) further provides that "unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act."

22.    The Oversight Board will "consist of seven members appointed by the President" of the United States according to a statutorily prescribed procedure. *Id.* § 101(e)(1)(A).  That process includes provisions designed to promote the prompt appointment of Oversight Board members (*see, e.g.*, *id.* § 101(e)(2)(G)), but there is no set date by which the Oversight Board must be fully constituted.  At present, none of the Oversight Board's members has been appointed.

23.    The Act also contemplates the selection of an Executive Director and certain advisors and staff to the Oversight Board.  *Id.* § 103.  Given the significant duties of the Oversight Board—not to mention the disarray that pervades the Commonwealth's financial reporting—the Board and its staff will require some period of time after appointment to be fully functional.  At present, no Executive Director has been named, nor has any staff been hired.

### 2.    *A Stay On Certain Bondholder Litigation*

24.    Section 405 of PROMESA stays certain bondholder litigation and other actions relating to Puerto Rico's debt.  The purpose of the stay was, in essence, to preserve the status quo until the Oversight Board became fully operational.  The stay took effect immediately upon PROMESA's enactment.  As principally relevant here, the Act imposes a stay on

> the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Government of Puerto Rico that was or could have been commenced before the enactment of this Act, or to recover a Liability Claim against the Government of Puerto Rico that arose before the enactment of the Act.

*Id.* § 405(b)(1).

25.    The Act defines a "Liability" to include

> a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money, including rights, entitlements, obligations whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law related to such a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness . . . of which—
>
> > (A) the issuer, obligor, or guarantor is the Government of Puerto Rico; and
> >
> > (B) the date of issuance or incurrence precedes the date of enactment of this Act.

*Id.* § 405(a)(1).

26.    The Act defines a "Liability Claim" to mean

> as it relates to a Liability—
>
> > (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> >
> > (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

9

*Id.* § 405(a)(2).

27.     The Act provides that relief from the stay may be granted under certain circumstances.  *See, e.g., Id.* § 405(e)(2) ("cause"); *id.* § 405(g) ("irreparable damage").

28.     Accordingly, by preventing bondholders from suing to "recover a Liability Claim against the Government of Puerto Rico," *id.* § 405(b)(1), the stay provision quoted above operates to prevent bondholders from suing for payment.  The potential for mischief is palpable: With bondholders unable to sue for payment, the Commonwealth could attempt to divert resources toward more politically popular interests, even if doing so violates existing legal requirements.  That would be the exact opposite of the preservation of the status quo that the stay was intended to protect.

29.     This lawsuit does not seek payment on Plaintiffs' bonds.  To be clear, however, Plaintiffs do not concede the validity of PROMESA's stay provisions, or any other provision that impairs in any way the rights of holders of Constitutional Debt, and Plaintiffs reserve the right to challenge any and all such provisions in due course.

### 3.      *PROMESA Expressly Prohibits Puerto Rico From Exploiting The Stay On Litigation After Enactment Of PROMESA But Before The Oversight Board Is Appointed*

30.     Recognizing that there would be some period of time after the stay took effect but before appointment of the Oversight Board and its Chair, PROMESA severely restricts Puerto Rico's ability to take certain action that would impair its creditors (and, in particular, holders of Constitutional Debt).  To that end, Section 204(c)(3)(A) of the Act declares that Puerto Rico

> shall not enact new laws that either permit the transfer of any funds or assets outside the ordinary course of business or that are inconsistent with the constitution or laws of the territory as of the date of enactment of this Act, provided that any executive or legislative action authorizing the movement of funds or assets during this time period may be subject to review and rescission by the Oversight Board upon appointment of the Oversight Board's full membership.

31.     This section addresses Congress's concern that Puerto Rico might seek to exploit bondholders' inability to sue for payment before the Oversight Board is operational to siphon money away from (among others) bondholders protected by the Puerto Rico Constitution.  As noted above and described in further detail below, Constitutional Debt (including bonds held by Plaintiffs) is, alone among the various categories of debt, expressly granted top priority over all other expenditures by Article VI of the Puerto Rico Constitution.  Section 204(c)(3) thus preserves the Commonwealth's assets from efforts by Puerto Rico to pursue its own political preferences, rather than the requirements established and respected by PROMESA for a budget and fiscal plan subject to approval by the Oversight Board.  *See id.* §§201-212.

32.     Section 204(c)(3)(A) accordingly serves to protect the interests of bondholders whose lawsuits to recover payment may be stayed by other provisions of PROMESA and who stand to be injured (directly or otherwise) by the Commonwealth's efforts to divert resources before the Oversight Board is fully operational.  Those protected creditors include holders of Constitutional Debt, including the Plaintiffs in this action.

33.     Section 204(c)(3)(B) of the Act further grants the Oversight Board power to "review, and in its sole discretion, rescind, any law that—(i) was enacted during the period between . . . May 4, 2016, and the date of appointment of all members and the Chair of the Oversight Board" and "(ii) alters pre-existing priorities of creditors in a manner outside the ordinary course of business or inconsistent with the territory's constitution or the laws of the territory as of . . . May 4, 2016."

## II.    Puerto Rico's Constitutional Debt

34.    Section 204(c)(3)'s prohibition on constitutional violations is aimed directly at protecting holders of the Constitutional Debt. The Constitutional Debt is set apart from all other debt issued by the Commonwealth and related entities by a series of contractual, statutory, and constitutional promises that ensure that the payments on Constitutional Debt are made promptly when due and, critically, *before* Puerto Rico's expenditures for all other purposes.

35.    The Commonwealth currently has approximately $12.5 billion in principal amount of GO Bonds outstanding. The Commonwealth has pledged its good faith, credit, and taxing power for the timely payment of principal and interest on these GO Bonds, a pledge that represents an absolute and enforceable obligation to pay the GO Bonds when due, including by raising taxes if necessary to do so.

36.    In addition, Puerto Rico has pledged its good faith, credit, and taxing power to guarantee timely payment on approximately $5.8 billion in additional GO-Guaranteed Bonds. In the event that the issuing entities fail to make payments on the GO-Guaranteed Bonds, the Commonwealth's guarantee represents an absolute and enforceable obligation to make those payments, including by raising taxes if necessary to do so.

37.    The total amount of Constitutional Debt protected and secured by the Constitutional Debt Priority Guarantee is less than $18.3 billion (although that amount is increasing because of the July 1, 2016, non-payment)—as noted above, this amounts to only a portion of the $70 billion figure that Puerto Rico has repeatedly asserted as its total debt load (which figure includes debts not only of the Commonwealth but also of its public corporations, instrumentalities, and municipalities).

38.     The Commonwealth's Constitutional Debt is "public debt" within the meaning of
the Puerto Rico Constitution, and is therefore entitled—in addition to the good faith, credit, and
taxing power pledge—to the highest priority among all of Puerto Rico's expenditures.  Section 8
of Article VI provides that if Puerto Rico's "available resources" are insufficient to fund all of its
desired spending, "interest on the public debt and amortization thereof shall first be paid, and
other disbursements shall thereafter be made in accordance with the order of priorities
established by law."  P.R. Const. art. VI, § 8.  (The English version of Puerto Rico's Constitution
refers to "available revenues," but, as the Commonwealth itself has acknowledged, the word
used in the corresponding Spanish text—"recursos"—is more aptly translated as "resources."
*See, e.g.*, Official Statement for Commonwealth of Puerto Rico General Obligation Bonds of
2014, Series A, at p. 28.  That phrasing underscores Puerto Rico's commitment to tap all of its
financial resources—whether or not they may be described as revenues—to make the required
payments on its Constitutional Debt.)  Accordingly, Constitutional Debt has a first claim and lien
on all available resources of the Commonwealth.

39.     For decades, the absolute priority of Constitutional Debt has been further
recognized in the Puerto Rico statute that defines the remaining "order of priorities" mentioned
in Article VI, Section 8 of the Puerto Rico Constitution.  That statute, 23 L.P.R.A. § 104(c),
recognizes that Constitutional Debt must be paid first above all other expenditures, even (and
especially) when resources are scarce.  "In keeping with Section 8, Article VI," the statute
provides a hierarchy of priorities governing the "disbursement of public funds . . . when
resources available for a fiscal year are insufficient to cover the appropriations made for that
year."  One—and only one—category is given the highest priority:  "[T]he payment of interest
and amortizations corresponding to the public debt."  (Puerto Rico attempted to modify Section

13

104(c) earlier this year, but that act and any executive order seeking to implement it are preempted by Section 303 of PROMESA. *See* ¶ 21, *supra*.)

40.     In addition to the guarantee of first priority for Constitutional Debt set forth in Article VI, Section 8, the Puerto Rico Constitution provides further safeguards that function to ensure full and timely payment of Constitutional Debt in times of financial hardship.

41.     For example, Article VI, Section 6 of the Puerto Rico Constitution, states:

> If at the end of any fiscal year the appropriations necessary for the ordinary operating expenses of the government *and for the payment of interest on and amortization of the public debt* shall not have been made, the several sums appropriated in the last appropriation acts for the objects and purposes therein specified, so far as the same may be applicable, shall continue in effect item by item, and *the Governor shall authorize the payments necessary* for such purposes until corresponding appropriations are made.

(Emphasis added).  This provision thus ensures that if the government does not appropriate funds for the payment of interest and principal on the public debt when due, such payments will nonetheless be automatically appropriated.  That protection is reinforced by the Puerto Rico statutes authorizing issuance of Constitutional Debt, which have provided continuous appropriations to fund debt service on the issued bonds.  *See, e.g.*, 13 L.P.R.A. §§ 37, 38.

42.     Article VI, Section 2 of the Puerto Rico Constitution provides an additional protection for holders of Puerto Rico's public debt by limiting the Commonwealth's capacity to incur debt with this first-priority status, thus ensuring that the Commonwealth will retain the capacity to honor its Constitutional Debt Priority Guarantee.

43.     There is, in short, no serious dispute that the Puerto Rico Constitution and laws such as 23 L.P.R.A. § 104(c) grant Constitutional Debt absolute and highest priority among all of Puerto Rico's expenses.  Accordingly, PROMESA's prohibition on new measures that violate Puerto Rico's Constitution and laws are aimed squarely at Constitutional Debt.  The Act

14

therefore prohibits Puerto Rico from taking action after PROMESA's enactment that would divert resources away from Constitutional Debt.

### III.    Immediately Upon PROMESA's Enactment, Puerto Rico Violated Section 204(c)(3)

44.    Within hours of PROMESA's enactment, Puerto Rico violated Section 204(c)(3). As explained below, Puerto Rico immediately embarked on a systematic plan to default on and impair Constitutional Debt while paying certain other, lower-priority obligations, and to divert resources to politically preferred purposes. These actions were "outside the ordinary course of business" and in direct violation of Puerto Rico's laws and Constitution—exactly what PROMESA Section 204(c)(3) was designed to prevent.

### A.    Puerto Rico Deliberately And Needlessly Defaulted On Constitutional Debt Despite Holding Hundreds Of Millions Of Dollars In Cash That Was Expressly Earmarked For Payment Of Constitutional Debt

45.    The first such action was Executive Order 2016-30 ("EO 2016-30"), which Governor García Padilla issued on June 30, 2016, almost immediately after the President signed PROMESA into law. *See* Ex. D. EO 2016-30 directly violates the Puerto Rico Constitution by announcing a moratorium on the Commonwealth's obligation to repay its Constitutional Debt, even while the Commonwealth continued to spend funds for other purposes and had hundreds of millions in cash on hand that were required by law to be devoted to payment of the Constitutional Debt.

46.    EO 2016-30 relied on "Act 21-2016, as amended, known as the 'Puerto Rico Emergency Moratorium and Rehabilitation Act.'" That legislation purported to give Governor García Padilla authority to declare a payment moratorium on certain debt payments by declaring a "state of emergency" via executive order. Act 21-2016 § 102. That legislation and EO 2016-30 are plainly foreclosed and preempted by Section 303 of PROMESA. *See* ¶ 21, *supra*. Despite its clear legal duty to pay Constitutional Debt in full, on July 1, 2016, Puerto Rico

defaulted on approximately $817 million due on its Constitutional Debt—almost the entirety of what it owed.

47.    Puerto Rico's decision to choose near-total default on these bonds was not only clearly illegal under both the Constitution and PROMESA, it was also unnecessary.  As Puerto Rico's GDB has acknowledged, the Commonwealth had $200 million in its operating account when the July 1 payment came due—funds that even the Commonwealth must concede constitute "available resources" that could, and should, have been used to pay Constitutional Debt.  Indeed, in the press release announcing the default, the GDB openly admitted that there were hundreds of millions of dollars in cash on hand "available to pay GO and Commonwealth-guaranteed indebtedness expected to be payable on July 1."  Ex. C ¶ 3.  The Commonwealth simply chose not to follow its legal duty to pay Constitutional Debt, apparently preferring to divert that cash to other purposes.

48.    What is more, the Commonwealth decided not to devote even a single cent (outside of two issue-specific reserve accounts) to GO Bonds even though the Commonwealth had clawed back hundreds of millions of dollars in revenue conditionally earmarked for the payment of other debt, *for the express purpose of paying Constitutional Debt*.    The Commonwealth's recent (and long overdue) financial disclosures state that the Commonwealth clawed back $289 million during the second half of Fiscal Year 2016.  Roughly half of these funds have purportedly been deposited with the insolvent GDB, where the Commonwealth has chosen to restrict withdrawals.  Approximately $150 million more was, by the GDB's admission, being held at a commercial bank and was indisputably available for the July 1 payment.  *See* Ex. C ¶ 3.  As the Commonwealth previously recognized in executive orders initiating the clawback of the earmarked revenue, these funds *must* be devoted to the payment of the public

16

debt. *See, e.g.,* Ex. E, point "Third" (providing that clawed back funds "shall be kept in a separate account and shall be used only to make public debt payments as they become due").

49.     At the same time as the Commonwealth chose near-total default on its Constitutional Debt, hundreds of millions of dollars were paid to other, lower-priority obligations. Those include (to name but a few examples) payments on bonds issued by the Puerto Rico Highways and Transportation Authority, the Puerto Rico Convention Center District Authority, the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, and $200 million on June 30, 2016, in payment of certain tax and revenue anticipation notes. Those payments were in addition to billions of dollars that the Commonwealth spent on other purposes that are junior to Constitutional Debt over the months leading up to its July 1 default on its Constitutional Debt. Choosing to default on Constitutional Debt, having made these other, lower-priority payments, plainly violated the express terms of the Puerto Rico Constitution and 23 L.P.R.A. § 104(c)—and thereby violates Section 204(c)(3)(A) of PROMESA as well.

50.     To be clear, there was no basis for even a partial default on Constitutional Debt. The Commonwealth's Fiscal Year 2016 budget included a full appropriation for the July 1 payments; if the Commonwealth lacked the funds necessary to make this payment, that is due to Puerto Rico's failure to manage expenditures as necessary to respect Constitutional Debt's absolute priority. *See also* 23 L.P.R.A. § 104(d)(1) (requiring mid-year adjustment of appropriations if necessary so that priorities set forth in 23 L.P.R.A. § 104(c) can be respected).

**B.** **Puerto Rico Enacted A Fiscal Year 2017 Budget That Fails To Pay Constitutional Debt In Full, Despite Clawing Back Revenue Expressly Designated For That Purpose, And Diverts Massive Resources To Politically Preferred Uses**

51. Puerto Rico's first violation of Section 204(c)(3) was compounded by a second series of violations resulting from the Commonwealth's recently passed general fund budget for Fiscal Year 2017. That budget devotes zero dollars to Constitutional Debt. Related legislation (H.B. 2959), which the Governor has yet to sign, would devote at most $451 million to payment of Constitutional Debt—just 31 percent of what is required to fund the payments due over the course of the year (to say nothing of the payments missed on July 1, 2016). And H.B. 2959 would simultaneously make still further extraordinary diversions of resources to expenses that are indisputably junior to Constitutional Debt. All of this is well outside the "ordinary course of business" and flouts the Puerto Rico Constitution, which expressly requires appropriations for full payment of Constitutional Debt.

52. However, Puerto Rico's violations of its Constitution (and hence PROMESA) go far beyond not appropriating for and paying the Constitutional Debt in full. For starters, approximately $412 million in funds to be clawed back in Fiscal Year 2017 from other entities for the express purpose of funding payments on Constitutional Debt will be diverted to other purposes. (This spending spree may be expanded to include $289 million of the funds clawed back during Fiscal Year 2016 for purposes of paying the Constitutional Debt—money that appears to be unaccounted for.)

53. This double-speak—clawing back money for the purpose of paying Constitutional debt, but then refusing to pay the Constitutional Debt—is emblematic of the Commonwealth's refusal to use the tools at its disposal to respect the Constitution. All told, there is approximately $863 million in annual revenue that is, by the express terms of the relevant documents, subject to

claw back if necessary to pay Constitutional Debt. Interest expense on the Constitutional Debt is very near to that amount. To respect the Constitution (at least in large part), Puerto Rico would simply need to exercise the claw back rights and then follow its legal duty to use those funds to pay the Constitutional Debt. Instead, the Commonwealth has invoked claw back rights that can be used only to *protect* Constitutional Debt, yet simultaneously *refuses* to make full payment on that debt. The Commonwealth's hypocrisy defies explanation and flouts the rule of law. There is no lawful justification for diverting clawed back revenue to any purpose except payment of Constitutional Debt.

54.     Adding insult to constitutional injury, the budget contemplates an *increase* of more than $500 million in non-debt service spending. In other words, even as the Commonwealth claims that it lacks sufficient funds to pay its Constitutional Debt, it plans additional spending for other purposes.

55.     Governor García Padilla has attempted to justify the decision to default by contending that essential services must be prioritized above payments to bondholders. As a legal matter, that contention is demonstrably wrong. As explained above, the Commonwealth's Constitution and laws prioritize payment of GO Bonds over even what the Commonwealth may characterize as essential services.

56.     Even if it were not patently unconstitutional and unlawful, Defendant Governor García Padilla's position cannot justify the Fiscal Year 2017 budget, which includes more than $1 billion in spending for purposes that cannot, by any stretch of the imagination, be described as "essential." These include, to list but a few examples: approximately $250 million devoted to financing the insolvent GDB and assuming certain of its functions (plus another $115 million if the Governor signs a pending bill, P.S. 1575); approximately $800 million in pension funding

(which is $150 million *more* than the Commonwealth contributed last year, and which would jump by at least another $170 million under H.B. 2959); subsidies of more than $800 million to the University of Puerto Rico (to maintain artificially low tuition rates well below what comparable state universities in fiscally balanced States charge); and a number of other smaller appropriations—such as $2.5 million to fund the Office of the First Lady, and $1.2 million for "development of high performance Puerto Rican athletes." The spending decisions reflected in the budget are simply political calculations in clear violation of Puerto Rico's unambiguous legal duties under PROMESA, the Puerto Rico Constitution, and related laws.

*       *       *

57.    The actions detailed above are just some of the more obvious examples of the Commonwealth's effort to violate its Constitution in the wake of PROMESA. Given the Commonwealth's woefully inadequate financial reporting and the disturbing lack of transparency in the government's operations, further violations will no doubt come to light in the days and weeks ahead and may require further legal action.

**FIRST CAUSE OF ACTION**<br>**Declaratory and Injunctive Relief**<br>**PROMESA § 204(c)(3); 42 U.S.C. § 1983; 28 U.S.C. § 2201(a)**

58.    Plaintiffs re-allege and incorporate paragraphs 1–57 above.

59.    The Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, states that "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Plaintiffs seek a declaration that the Commonwealth's conduct described above violates Section 204(c)(3) of PROMESA.

20

60. Defendants have violated Section 204(c)(3) by implementing new laws and measures having the force of law that "permit the transfer of . . . funds or assets outside the ordinary course of business" and "that are inconsistent with the constitution or laws" of Puerto Rico as of PROMESA's enactment. These actions have caused direct and substantial injury to Plaintiffs, and, if left unremedied, will continue to cause further direct and substantial injury to Plaintiffs.

61. Section 204(c)(3)(A) grants Plaintiffs a right to enforce the requirements of that provision against Defendants. Creditors protected by the laws and Constitution of Puerto Rico are directly injured by the dissipation of assets in violation of Section 204(c)(3). That is particularly true for holders of Constitutional Debt, including Plaintiffs, who alone among creditors are protected by the clear rights established in Article VI of the Puerto Rico Constitution.

62. Moreover, because the Oversight Board does not yet exist during this interim period, enforcement of this provision necessarily falls to Puerto Rico's creditors such as Plaintiffs. While the Oversight Board maintains certain rights of rescission with respect to violations of 204(c)(3), until the Board is constituted and operational only private enforcement can prevent the Commonwealth or others from later arguing that the unlawful results of these measures cannot, as a legal or practical matter, be fully unwound. Private enforcement is thus consistent with—indeed, it is absolutely necessary to—full and proper functioning of PROMESA's scheme of rights and remedies.

63. The actions described above deprive Plaintiffs of rights, privileges, and immunities secured by the laws of the United States, including Section 204(c)(3) of PROMESA.

The actions do so under color of law of the territory of Puerto Rico. Accordingly, Defendants' conduct adopting, applying, or enforcing these measures violates 42 U.S.C. § 1983.

64. This lawsuit is not stayed by PROMESA. As described above, the relevant stay provisions under Section 405 of PROMESA apply to claims seeking to enforce certain creditors' "right to payment" (PROMESA § 405(a)(2)(A)) or "an equitable remedy for breach of performance if such breach gives rise to a right to payment" (*id.* § 405(a)(2)(B)). Although Plaintiffs fully reserve all legal and equitable rights—including the right to challenge the validity of PROMESA, including (but not limited to) its stay provisions—this lawsuit does not seek relief that would violate the stay. This lawsuit does not seek to compel payment of Constitutional Debt; rather, it seeks a declaration that Puerto Rico has violated PROMESA's prohibition on new measures authorizing transfers "outside the ordinary course of business" and violating Puerto Rico's Constitution and laws.

65. Plaintiffs also seek a narrowly tailored injunction segregating and preserving assets affected by several of the most egregious violations of PROMESA Section 204(c)(3). Plaintiffs do not concede that such relief reflects the full scope of their legal rights (or even reflects all of the unlawful measures identified above), because Constitutional Debt is senior to *all* expenditures of the Commonwealth's available resources. The requested injunctive relief, however, would afford at least partial protection from the Commonwealth's most flagrant dissipation of assets. Accordingly, the requested injunction seeks to preserve the funds transferred (or to be transferred) by these extraordinary, unconstitutional, and unlawful measures until the Oversight Board is appointed, fully operational, and has made a determination as to the propriety of these measures. More particularly, Plaintiffs seek an injunction:

a.      requiring the Defendants, in their official capacities as Commonwealth officers, to segregate and preserve all funds clawed back, to be clawed back, or available to be clawed back under contractual and legal provisions expressly acknowledging that those funds are subject to turnover for purposes of paying of Constitutional Debt;

b.      prohibiting the Defendants, in their official capacities as Commonwealth officers from implementing the outsized transfers to the public employee pension funds contemplated in the Fiscal Year 2017 budget and limiting the Commonwealth to the contribution it made in Fiscal Year 2016; and

c.      prohibiting the Defendants, in their official capacities as Commonwealth officers, from implementing the diversion to the insolvent GDB the approximately $250 million contemplated by the Fiscal Year 2017 budget, or such other amounts (such as those allocated in pending legislation).

66.     The requested injunctive relief would not require payment to be made to Plaintiffs, but would forbid Defendants from transferring funds or assets pursuant to those laws found to violate PROMESA Section 204(c)(3) and to preserve those assets until such time as the Oversight Board is fully operational.  Plaintiffs currently lack an adequate remedy at law; the Commonwealth will otherwise dissipate these and other assets and then claim that it lacks funds sufficient to pay Constitutional Debt as required.  The requested injunctive relief is therefore necessary and appropriate.

## SECOND CAUSE OF ACTION
### Relief from Stay
### PROMESA § 405(e)

67.     Plaintiffs re-allege and incorporate paragraphs 1–66 above.

68.     If this lawsuit is deemed to fall within PROMESA's stay provisions, Plaintiffs respectfully request relief from the stay under Section 405(e) of PROMESA.

69.     Section 405(e)(1) of PROMESA, titled "JURISDICTION, RELIEF FROM STAY" states that "[t]he United States District Court for the District of Puerto Rico shall have original and exclusive jurisdiction of any civil actions arising under or related to this section."

70.     Section 405(e)(2) of PROMESA states that "[o]n motion of or action by a party in interest and after notice and a hearing, the United States Court for the District of Puerto Rico, for cause shown, shall grant relief from the stay provided under subsection (b) of this section."

71.     Plaintiffs are a party in interest within the meaning of Section 405(e)(2).  They have a direct and substantial interest in the protections afforded to Constitutional Debt by Section 204(c)(3) of PROMESA and, in turn, by the Puerto Rico Constitution and related laws.

72.     Plaintiffs have shown cause for relief from the stay.  As noted above, Plaintiffs seek relief that will prevent Puerto Rico from siphoning assets away from Constitutional Debt.  The Commonwealth has no legitimate interest in unlawfully preferring certain creditors or expenditures over payment of Constitutional Debt.  Plaintiffs will suffer significant harm if the Commonwealth's unlawful actions are not stopped.  The Commonwealth has repeatedly asserted that it lacks resources sufficient to pay Constitutional Debt despite its clear legal duty to do so, and in fact has defaulted on that debt.  Accordingly, preventing further unlawful dissipation of assets will prevent the Commonwealth from arguing that further non-payment is required.

24

73.     The possibility of retrospective action by the Oversight Board is not sufficient to protect Plaintiffs' rights and interests under Section 204(c)(3) of PROMESA. The Commonwealth may well argue that certain transfers cannot be undone, and as a practical matter, funds transferred or disbursed under these unlawful measures may prove difficult to retrieve from third parties or subsequent transferees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the entry of judgment as follows:

A.      Declaring that the Commonwealth's post-PROMESA measures permitting transfers outside the ordinary course of business or in violation of Puerto Rico's Constitution and laws to the detriment of holders of Puerto Rico's Constitutional Debt are invalid under Section 204(c)(3) of PROMESA.

B.      Enjoining enforcement or implementation of certain of those measures until the Oversight Board has made a determination as to their propriety, with such injunction:

(1)      requiring the Defendants, in their official capacities as Commonwealth officers, to segregate and preserve all funds clawed back, to be clawed back, or available to be clawed back under contractual and legal provisions expressly acknowledging that those funds are subject to turnover for purposes of paying of Constitutional Debt;

(2)      prohibiting the Defendants, in their officials capacities as Commonwealth officers, from implementing the outsized transfers to the public employee pension funds contemplated in the Fiscal Year 2017 budget and limiting the Commonwealth to the contribution it made in Fiscal Year 2016; and

(3)      prohibiting the Defendants, in their official capacities as Commonwealth officers, from implementing the diversion to the insolvent GDB the approximately $250

million contemplated by the Fiscal Year 2017 budget, or such other amounts (such as those allocated in pending legislation).

C.      If such relief is deemed necessary, an order granting relief under Section 405(e) from PROMESA's stay on certain creditor litigation, insofar as is necessary to prevent harm to the interests of holders of Constitutional Debt.

D.      An order awarding Plaintiffs costs and attorneys' fees, as authorized under 42 U.S.C. § 1983.

E.      Granting such other and further relief as the Court deems just and proper.

In San Juan, Puerto Rico this 20th day of July 2016.

Respectfully submitted,

<u>s/ *Raúl M. Arias-Marxuach*</u>
Raúl M. Arias-Marxuach
USDC-PR BAR NO. 209706
MCCONNELL VALDÉS LLC
270 Muñoz Rivera Avenue
Hato Rey, Puerto Rico 00918
Telephone: (787) 759-9292
Facsimile: (787) 759-8282
rma@mcvpr.com

Mark T. Stancil (*pro hac vice* forthcoming)
Gary A. Orseck (*pro hac vice* forthcoming)
Ariel N. Lavinbuk (*pro hac vice* forthcoming)
Donald Burke (*pro hac vice* forthcoming)
ROBBINS, RUSSELL, ENGLERT, ORSECK
   UNTEREINER & SAUBER LLP
1801 K Street, NW
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
mstancil@robbinsrussell.com
gorseck@robbinsrussell.com
alavinbuk@robbinsrussell.com
dburke@robbinsrussell.com

*Counsel for Plaintiffs*

# Exhibit A

THE WALL STREET JOURNAL.   Wednesday, October 23, 2013 | **A5**

"… the measures taken [by Puerto Rico] to narrow the
fiscal year 2014 budget gap exceed any steps taken by
states or local mainland municipal governments."

**Alan Schankel, Janney Capital Markets** 9/10/2013

"Puerto Rico is moving in the right direction."

**OppenheimerFunds,** 8/24/13



An Open Letter from
**Governor Alejandro García Padilla**

In nine months, my Administration has made the difficult decisions
necessary to address many of the island's historical fiscal challenges.
We have created jobs, reformed our main pension system, and taken
significant steps to balance our budget and turn our public corporations
into self-sufficient entities.

These actions, which have protected our credit and investment grade
ratings, stand in stark contrast with many other U.S. jurisdictions,
and previous Commonwealth administrations, that failed to address
similar challenges.

We have acted with urgency and determination, but we know there is
more work to do. We will eliminate our deficit. Most importantly,
we will continue to create jobs in the short term and develop a
long-term approach to achieve sustainable economic growth.
Nothing is more important.

Our Constitution gives first priority over all revenues to payments
on our general obligation debt. We are proud of the importance our
Constitution's framers gave to honoring our financial commitments.
We will do everything necessary for Puerto Rico to honor all its
commitments; it is not only a constitutional, but also our
moral obligation.

Hon. Alejandro García Padilla
Governor of the Commonwealth of Puerto Rico

# Puerto Rico

**Rebuilding for a Brighter Future**

Paid for by the Commonwealth of Puerto Rico.

# Exhibit B



| VALUE | CAPABILITY | Build Your FRONTIER |
|---|---|---|
| | DEPENDABILITY | Learn More |

More Vehicle Information

## POLITICS

POLITICS | ELECTIONS | WHITE HOUSE | CONGRESS | LAW | TAXES

# There's no choice: Puerto Rico will default on more than $1 billion in debt on Friday

Alejandro García-Padilla, the governor of Puerto Rico
Wednesday, 29 Jun 2016 | 10:00 AM ET

663 SHARES

92 COMMENTS  Join the Discussion



Getty Images

Governor Alejandro Garcia Padilla of Puerto Rico

Puerto Rico does not have the ability to repay the $70 billion debt that was generated by past administrations and their creditors. The debt must be restructured fairly and equitably to both the people of Puerto Rico and the bondholders.

A fair solution to the problem is critical in order to bring progress back to the island. The case of Puerto Rico is similar to New York City's and Detroit's, except they had the tools to restructure their debt, and Puerto Rico does not.

My administration has acted swiftly. Puerto Rico adopted the most stringent austerity measures. The Island's budget has been cut by billions during my term. The payroll has been reduced dramatically. We have deferred other obligations. We have withheld tax refunds.

Payables to suppliers have reached more than $2 billion. The inability to pay our suppliers has resulted in the loss of commercial credit and

▶ LET'S GO

FROM THE WEB                    Sponsored Links by Taboola

The Makings of a "Good" Purchase [Infographic]
Synchrony Financial

How Andre Agassi Found His True Purpose - Off the Court
Bank of America

Finally! 2 New Stock Picks from the Motley Fool
The Motley Fool

Relax And Enjoy The Ride: This Year's 10 Most Enjoyable SUVs
Kelley Blue Book

by Taboola

many services must now be paid on delivery. Without supplier credit, medicines and supplies for public hospitals and air-ambulance service to trauma centers are now in jeopardy.

The emergency measures we have taken are unsustainable, harm our economy, reduce revenues and diminish our capacity to repay our debts. Puerto Rico cannot endure any more austerity.

In order to yield a permanent fix to the debt crisis, lacking the



tried to negotiate a settlement with the creditors to no avail. This is why we sought the support of Congress. Their response was PROMESA, the Puerto Rico Oversight, Management and Economic Stability Act.

PROMESA is a mixed bag. On the one hand, it provides the tools needed to protect the people of Puerto Rico from disorderly actions taken by the creditors. The immediate stay granted by the bill on all litigation is of the utmost importance in this moment. Most importantly, the authority to adjust our debt stock provides the legal tools to complete a broad restructuring and route Puerto Rico's revitalization.

On the other hand, PROMESA has its downsides. It creates an oversight board that unnecessarily undercuts the democratic institution of the Commonwealth of Puerto Rico. But facing the upsides and downsides of the bill, it gives Puerto Rico no true choice at this point in time.

On July 1, 2016, Puerto Rico will default on more than $1 billion in general obligation bonds, the island's senior credits protected by a constitutional lien on revenues. Creditors and bond insurers have initiated multiple lawsuits and last week, hedge funds filed an injunction before the Southern District of New York claiming the "absolute highest priority" over government resources, including those needed for essential public services. That complaint minces no words and states that, in "times of scarcity," bondholders should be paid before essential services.

No amount of contingency planning can shield us from the fallout of the defaults in the coming days; no amount of contingency planning will replace the necessity of a debt restructuring regime. We have suffered a decade of economic contraction. We are facing a government less capable of providing the services which the public needs.

As governor, I will use my remaining time in office to benefit from the tools provided by PROMESA and develop a fiscal plan that is faithful to the best interests of the people of Puerto Rico.

*Commentary by Alejandro Garcia Padilla, an attorney and the governor of the Commonwealth of Puerto Rico. Follow him on Twitter @agarciapadilla.*

*For more insight from CNBC contributors, follow @CNBCopinion on Twitter.*

---

Mike Pence just destroyed Trump's chances of winning over Bernie Sanders voters

In eight days, 'Pokemon' has solved the problem malls still can't figure out

  

worried he'll be 'the last Republican president'

Melania Trump's plagiarism matters because it exposes Donald Trump's profound laziness

Trump reportedly called people at midnight asking if he could change VP pick

Fox News' Megyn Kelly accuses Roger Ailes of sexual harassment: Report

MOST POPULAR



1. Why tonight's full moon is called a 'buck moon'



2. To the mattresses: Cash levels highest in nearly 15 years



3. Copy that: Melania Trump's odds of a word match



4. How Melania Trump's speech veered off course and sparked an uproar

Fox nearing decision on Roger Ailes, likely to

MORE FROM CNBC <span>by Taboola</span>

result in his departure: Sources

Mike Pence just destroyed Trump's chances of winning over Bernie Sanders voters

In eight days, 'Pokemon' has solved the problem malls still can't figure out

George W. Bush worried

TOP STATES FOR BUSINESS ›



r Business 2016: The full list



Queen Latifah talks about 'Ice Age' sequel, Minnesota shooting (TODAY.com)

Katy Perry introduces world premiere of her Olympic song 'Rise' (TODAY.com)

These 5 states could be biggest casualties in Trump immigration war

5 ways states are luring small businesses

America's Top States for Business over the last 10 years

FROM THE WEB                     Sponsored Links by Taboola

Sponsored

How to Maximize Business Value For IoT Projects Using Advanced Analytics
Vitria IoT Analytics

1. Reverse Loan Calculator

How Andre Agassi Found His True Purpose - Off the Court
Bank of America

2. Best IRA Accounts of 2016

3. Low Interest Home Loans

Wow, There Are Some Amazing Offers for Balance Transfers Out There Right Now
Credit Cards Offers

4. 10 Best Retirement Savings

Tick Tips: Here's How to Safeguard Yourself Against the Tiny Lyme Disease Carriers
Einstein Healthcare Network

5. Best IRA Investment Options

GenXers Are Drinking So Much Wine They're Changing How It's Sold
Greatist | Tasting Room

Know The 5 Ways Your Insurer May Keep You From Getting Your Medicine
Access Better Coverage by PhRMA

Sponsored

Reverse Loan Calculator        Gold IRA Rollover

Best IRA Accounts of 2016      0% Interest Credit Cards

Low Interest Home Loans        Top Cashback Credit Cards

10 Best Retirement Savings     0% Interest Student Loans

Best IRA Investment Options    Debt Consolidation Loans

SHOW COMMENTS



Terms of Service - New     Independent Programming     News Releases     Switch to mobile view

## NEWSLETTERS

- ☑ Make It
- ☑ Breaking News
- ☑ Morning Squawk
- ☑ Evening Brief

**More Free Newsletters**

Email (Required)

SUBMIT

Get these newsletters delivered to your inbox, and
more info about about our products and service

Privacy Policy

Data is a real-time snapshot *Data is delayed at least 15 minutes
Global Business and Financial News, Stock Quotes, and Market Data and Analysis

Data also provided by  THOMSON REUTERS

© 2016 CNBC LLC. All Rights Reserved. A Division of NBCUniversal

# Exhibit C






*GDB Contact: Betsy Nazario (787) 960-2089 • Betsy.Nazario@bgfpr.com*

**GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO AND PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY STATEMENT ON IMPLEMENTATION OF EMERGENCY MEASURES UNDER ACT 21**

**July 1, 2016**

**San Juan** – The Government Development Bank for Puerto Rico ("GDB") and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") released the following statement today regarding the implementation of further emergency measures by the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to Act 21-2016, the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, as amended ("Act 21"):

"On June 30, the Governor of Puerto Rico took a historic step to protect the Commonwealth's ability to provide essential public services to the residents of Puerto Rico and to put the Commonwealth on the path to recovery. Under the powers granted to the Governor under Act 21, the Governor issued two executive orders, Executive Order No. OE-2016-30 and Executive Order No. OE-2016-31 (the "Executive Orders"), that declare a moratorium on the payment of the Commonwealth's debt and the debt of certain other instrumentalities, implement various cash and liquidity preservation measures and protect the Commonwealth and its instrumentalities from the exercise of creditor remedies as the Commonwealth addresses its fiscal and economic crisis.

"The fiscal situation of the Commonwealth on the last day of fiscal year 2016 is dire. Despite extraordinary liquidity and cash management measures implemented by this Administration over the last fiscal year, the Commonwealth is expected to end the month of June with approximately $200 million of cash in its operating account (such account known as the "Treasury Single Account" or "TSA"), and another approximately $150 million in funds that were directed from certain public corporations pursuant to Executive Orders OE-2015-046 and OE-2015-049 and held in the "Clawback Account". Against this very strained liquidity, the Commonwealth faces, on July 1, approximately $1 billion of general obligation ("GO") and Commonwealth-guaranteed debt service obligations coming due that would typically be paid out of the TSA, either directly or, in the case of certain guaranteed indebtedness such as that of the Puerto Rico Public Buildings Authority, indirectly through appropriations (including for lease payments) from the TSA that would in turn be used for debt service.[1] After accounting for reserves available to pay GO and Commonwealth-guaranteed indebtedness expected to be payable on July 1, the Commonwealth projects that GO and Commonwealth-guaranteed creditors will still be owed over $800 million on July 1, 2016.[2] Even if the Commonwealth were to devote every last penny in the TSA and the Clawback Account to debt service on July 1, it would still owe holders of the public debt hundreds of millions of dollars.

---

[1] Consistent with the Commonwealth's historical reporting, the approximately $1 billion of debt service referenced is net of capitalized interest amounts and mandatory principal redemptions from escrowed funds, but is *not* reported net of debt service reserves, including monthly set-aside amounts deposited with any bond trustee, if applicable.

[2] Creditors may receive some portion of this amount through insurance policies on their bonds, if available.

"The Department of the Treasury's cash flow projections for this fiscal year paint a similarly challenging picture. Based on the Commonwealth's projections, the government will need to continue implementing certain extraordinary liquidity measures over the coming six months -- such as delaying payments to vendors and special contributions to the Commonwealth's retirement systems, extending internal financing to the Commonwealth from certain of its instrumentalities and delaying capital expenditures -- in order to continue to provide essential services to Puerto Rico's citizens. These measures will need to be taken *even if the Commonwealth does not pay any of the GO and Commonwealth-guaranteed indebtedness over the period*. After these extraordinary measures, based on current revenue and expense projections, the TSA will exhaust its liquidity balance in the next 30 to 60 days. Even after the implementation of the measures in the Executive Orders, the balance in the TSA is *still* projected to fall below approximately $95 million during the remainder of this year.[3] This is a dangerously low cash position for a government that funds services to millions of Puerto Ricans.

"The Executive Orders signed by the Governor yesterday respond to the critical financial position of the Commonwealth that currently exists and that is anticipated to only worsen over the coming months.

- *First*, the Executive Orders declare the Commonwealth and several additional government entities to be in a state of emergency, and extend the state of emergency that was previously declared for certain other governmental entities. These include operating entities such as the Puerto Rico Highways and Transportation Authority, the University of Puerto Rico and the Metropolitan Bus Authority, who provide essential services to Puerto Rico's citizens, and financing entities such as the Puerto Rico Infrastructure Financing Authority, whose debt service obligations are supported by tax revenues paid for by the people of Puerto Rico.

- *Second*, the Executive Orders allow the Commonwealth and the other issuers to suspend the transfer of certain funds to and from the entities, in order to support the conservation of cash at the central government and, as a result, avoid a government shutdown and the consequences for the millions of Puerto Rico's citizens who depend on the services provided by the government.

- *Third*, the Executive Orders implement a stay on creditor remedies against these entities. This is a crucial element of enabling the Commonwealth to seek a debt restructuring and right the island's ship, without which Puerto Rico's human and financial resources would be diverted to dealing with dozens of lawsuits seeking a piece of a rapidly dwindling pie – and resources and funds consumed by litigation will serve only to further affect our creditors' recoveries.

- *Fourth*, the payment obligations of the Commonwealth under its GO and guaranteed debt, along with the payment obligations of certain other issuers, are suspended until January 31, 2017.

"While the measures implemented yesterday are unprecedented for the island, they are not without forewarning. Even as the Commonwealth has spent the last year developing a sustainable fiscal and economic growth plan and attempting to bring creditors to the table to reach a voluntary plan for debt relief, the government has always said that Puerto Rico's debt is unpayable and that the music would stop. The temporary measures contained in the Executive Orders issued yesterday are necessary for the

---

[3] In addition to this amount, the Clawback Account (assuming no further deposits or application of funds contained in such account) would continue to have approximately $150 million.

Commonwealth to fulfill its duty to provide essential services to the people of Puerto Rico and necessary for the Commonwealth to have the tools to finally reach an agreement with its creditors without the legal and economic distractions posed by chaotic and disorderly defaults. These actions are part of this government's commitment to correcting the fiscal mistakes of the past decades, as opposed to continuing them by accepting a band-aid of short-term financing that saddles Puerto Rico with further unpayable debt. The measures enacted yesterday will not, however, take the place of either the real and significant debt relief that the Commonwealth must achieve or the hard work that must be done by the government itself to rein in spending, boost revenues and re-ignite the island's economy.

"Today, with these measures and PROMESA's federal restructuring authority in place, the Commonwealth is finally in a position to return to prosperity."

*   *   *

### Not an Offering of Securities

This statement does not constitute, nor does it form part of, an offer to sell or purchase, or the solicitation of an offer to sell or purchase, any securities or an offer or recommendation to enter into any transaction. This presentation has been prepared for informational purposes only. Any offer or sale of any security may only be made pursuant to the relevant offering documents and binding transaction document and is subject to the detailed provisions therein, including risk considerations. Prospective purchasers should obtain a copy of the relevant offering materials prior to making any investment decisions.

### Forward-Looking Statements

The information included in this statement contains certain forward-looking statements. These forward looking statements may relate to the fiscal and economic condition, economic performance, plans and objectives of the Commonwealth of Puerto Rico or its agencies or instrumentalities. All statements contained herein that are not clearly historical in nature are forward looking.

This statement is not a guarantee of future performance and involves certain risks, uncertainties, estimates, and assumptions by the Commonwealth and/or its agencies or instrumentalities that are difficult to predict. The economic and financial condition of the Commonwealth and its agencies or instrumentalities is affected by various financial, social, economic, environmental, and political factors. These factors can be very complex, may vary from one fiscal year to the next, and are frequently the result of actions taken or not taken, not only by the Commonwealth and/or its agencies or instrumentalities, but also by entities such as the government of the United States of America or other nations that are not under the control of the Commonwealth. Because of the uncertainty and unpredictability of these factors, their impact cannot, as a practical matter, be included in the assumptions underlying the Commonwealth's or its agencies or instrumentalities' projections.

# Exhibit D

COMMONWEALTH OF PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

Administrative Bulletin Num. EO-2016-30

**EXECUTIVE ORDER ISSUED BY THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, PURSUANT TO ACT NO. 21-2016, AS AMENDED, KNOWN AS THE "PUERTO RICO EMERGENCY MORATORIUM AND REHABILITATION ACT," TO ORDER THE IMPLEMENTATION OF MEASURES THAT ARE REASONABLE AND NECESSARY TO ALLOW FOR THE CONTINUED PROVISION OF ESSENTIAL SERVICES TO PROTECT THE HEALTH, SAFETY AND WELFARE OF THE RESIDENTS OF THE COMMONWEALTH OF PUERTO RICO**

**WHEREAS:**   On April 6, 2016, I signed into law Act 21-2016, as amended, known as the "Puerto Rico Emergency Moratorium and Rehabilitation Act" (the "Act"). Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Act.

**WHEREAS:**   The Act declared a state of emergency in recognition of the fiscal crisis faced by the Commonwealth and related Government Entities—namely, that both are threatened with the prospect of disorderly default on outstanding obligations.

**WHEREAS:**   The Secretary of the Treasury has advised me that, after paying for the necessary expenses to protect the public health, safety, education, and welfare of the residents of Puerto Rico, the Commonwealth (1) will have insufficient funds to make the total debt service payments on the Public Debt (as defined in the Act) due on July 1, 2016, and (2) will remain in a fragile liquidity position during fiscal year 2016-2017, during which time it will be required to take extraordinary measures, including those provided herein and in Section 108 of the Act, to ensure the continuation of essential government operations.

**WHEREAS:**   The Commonwealth of Puerto Rico has the responsibility and the duty to ensure the public health, safety, education, and welfare of its residents through the exercise of its police power.

**WHEREFORE:**   I, ALEJANDRO J. GARCÍA PADILLA, Governor of the Commonwealth, by virtue of the inherent powers of my position and the authority vested in

me by the Constitution and the laws of the Commonwealth of Puerto Rico, do hereby order as follow:

FIRST:   Pursuant to Sections 201 and 202 of the Act, I hereby declare the Commonwealth to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for the Commonwealth. I further hereby declare (1) a moratorium on the Commonwealth's obligation to make payments on any bonds or notes issued or guaranteed by the Commonwealth, other than those described in the EIGHTH paragraph; (2) that the Commonwealth's obligation to transfer cigarette excise taxes (the "Cigarette Taxes") to the Metropolitan Bus Authority ("AMA") pursuant to Section 3060.11 of the Puerto Rico Internal Revenue Code of 2011, as amended, is an Enumerated Obligation under the Act, and is hereby suspended; (3) that the payment obligations of the Commonwealth and its departments and agencies with respect to leases entered into with the Puerto Rico Public Buildings Authority ("PBA") are Enumerated Obligations under the Act, and, to the extent not included in the fiscal year 2016-2017 general fund budget, are hereby suspended; and (4) any obligation of the Office of Management and Budget of the Commonwealth to include an appropriation in the proposed budget submitted to the Legislative Assembly for the payment of bonds issued by the Puerto Rico Public Finance Corporation ("PFC") is an Enumerated Obligation under the Act, and is hereby suspended.

SECOND:   Administrative Bulletin No. OE-2016-18, as it relates to the Puerto Rico Highways and Transportation Authority ("HTA"), shall continue in effect, except that the Emergency Period declared therein shall be extended through the entirety of the covered period. I further hereby suspend payment of all debt obligations of HTA that come due during the Emergency Period issued pursuant to its Resolution No. 68-18, dated as of June 13, 1968, as amended, and its Resolution No. 98-06, dated as of February 26, 1998, as amended.

THIRD:   Administrative Bulletin Nos. OE-2016-14 and OE-2016-27, as they relate to the Puerto Rico Infrastructure Financing Authority ("PRIFA"), shall continue in effect. I further suspend payment of bonds of PRIFA that come due during the Emergency Period that are payable from petroleum products excise tax revenues transferred to PRIFA under Section 3060.11A of the Puerto Rico Internal Revenue Code of 2011, as amended, and Article 34 of Act. No. 44 of June 12, 1988, as amended (the "PRIFA Crudita") and

2

federal rum excise tax revenues transferred to PRIFA under Section 25 of Act No. 44 of June 21, 1988, as amended.

FOURTH:    Pursuant to Sections 201 and 202 of the Act, I hereby declare the Puerto Rico Public Buildings Authority ("PBA") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for PBA. I further hereby declare that PBA's obligation to transfer, pursuant to its Resolution No. 77, dated November 16, 1970, authorizing and securing the Revenue Refunding Bonds, Series L, and any supplemental resolution thereto, and Resolution No. 468, dated June 22, 1996, authorizing and securing the Government Facilities Refunding Revenue Bonds (Series C, D, F, G, H, I, K, M, N, P, Q, R, S, T and U), and any supplemental resolution thereto, all Debt Service Rentals to the Fiscal Agent (defined, in each case, in such resolutions), and any related obligation of PBA set forth in Act No. 56 of June 19, 1958, as amended, to transfer such Debt Service Rentals to the Fiscal Agent are Enumerated Obligations under the Act, and are hereby suspended. I further hereby suspend payment of all Covered Obligations of PBA that come due during the Emergency Period.

FIFTH:    Pursuant to Sections 201 and 202 of the Act, I hereby declare the Puerto Rico Metropolitan Bus Authority ("AMA") to be in a state of emergency and announce the commencement, as of the date of this Executive Order, of an Emergency Period for AMA. I further hereby suspend any obligation to make payments on any debt obligations of AMA. This Executive Order does not suspend the payment or transfer of any obligation of AMA other than as provided for in this paragraph.

SIXTH:    Pursuant to Section 103(l)(ii) of the Act,[1] I hereby clarify that debt service payments, but solely to the extent that such debt service payment shall become due and owing according to their scheduled terms, that can be made from funds on deposit with a trustee are not Covered Obligations.

SEVENTH:    Pursuant to Section 201(b) of the Act, no act shall be done, and no action or proceeding shall be commenced or continued in any court of any jurisdiction that is related to or arises under any Covered Obligation of any Government Entity, including actions or proceedings related to or arising under such obligations listed in the FIRST, SECOND, THIRD, FOURTH, and FIFTH paragraphs of this Executive Order.

---

[1]    [Spanish Provision: Section 103(x)(ii)].

3

**EIGHTH:** Notwithstanding any provision herein, this Executive Order does not suspend or prohibit the payment of the loans or other indebtedness of any Government Entity owed to the Government Development Bank for Puerto Rico ("GDB"), the proceeds of which shall be used to disburse funds deposited at GDB to ensure the provision of essential services, consistent with Executive Order 2016-10.

**NINTH:** SEVERABILITY. This Executive Order shall be interpreted in a manner to render it valid to the extent practicable in accordance with the Constitution of the Commonwealth of Puerto Rico and otherwise applicable law. If any clause, paragraph, subparagraph, provision or part of this Executive Order were to be preempted by federal legislation or declared unconstitutional or unlawful by a competent court, the preemption or the order to such effect issued by such court will neither affect nor invalidate the remainder of this Executive Order. The effect of such preemption or order shall be limited to the clause, paragraph, subparagraph, provision or part of this Executive Order preempted or declared unconstitutional and only with respect to the application thereof to the particular obligation subject to such challenge.

**TENTH:** REPEAL. This order shall prevail over any other Executive Order that may, in whole or in part, be inconsistent with this Executive Order, to the extent of such incompatibility.

**ELEVENTH:** EFFECTIVENESS AND PUBLICATION. This Executive Order shall take effect immediately upon signature. Its widest publication and dissemination are hereby ordered. This Executive Order shall be enacted in English and Spanish. If in the interpretation or application of this Executive Order any conflict arises as between the English and Spanish texts, the English text shall govern.

**TWELFTH:** TERMINATION. This Executive Order shall remain in full force and effect until the earlier of (i) expiration of the Covered Period or (ii) revocation of this Executive Order as provided by the Governor in writing. Any suspension of payment, transfer, or otherwise directed by this Executive Order shall remain in effect until the termination of this Executive Order according to this paragraph or the revocation by the Governor in writing of the particular suspension.

IN TESTIMONY BY WHICH, I issue this order under my signature and I

stamp on it the Great Seal of the Commonwealth of Puerto Rico, in the city

of San Juan, today, the 30 day of June, 2016.



_____
ALEJANDRO J. GARCÍA PADILLA
GOVERNOR

Enacted pursuant to applicable law, on June 30, 2016.

_____
VÍCTOR A. SUÁREZ MELÉNDEZ
SECRETARY OF STATE

5

# Exhibit E

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**LA FORTALEZA**
**SAN JUAN, PUERTO RICO**

**Boletín Administrativo Núm. OE-2015-046**

**ORDEN EJECUTIVA DEL GOBERNADOR DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO, HON. ALEJANDRO J. GARCÍA PADILLA, PARA ORDENAR LA RETENCIÓN DE RECAUDOS QUE CORRESPONDERÍAN A LA AUTORIDAD DE CARRETERAS Y TRANSPORTACIÓN DE PUERTO RICO, LA AUTORIDAD PARA EL FINANCIAMIENTO DE LA INFRAESTRUCTURA, LA AUTORIDAD METROPOLITANA DE AUTOBUSES, LA AUTORIDAD DE TRANSPORTE INTEGRADO Y LA AUTORIDAD DEL DISTRITO DE CONVENCIONES DE PUERTO RICO CON EL PROPÓSITO DE CUMPLIR CON EL PAGO DE LA DEUDA PÚBLICA.**

**POR CUANTO:** La Sección 8 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico dispone que "cuando los recursos disponibles para un año económico no basten para cubrir las asignaciones aprobadas para ese año, se procederá en primer término, al pago de intereses y amortización de la deuda, y luego se harán los desembolsos de acuerdo con la norma de prioridades que se establezca por ley".

**POR CUANTO:** El Estado Libre Asociado de Puerto Rico tiene la responsabilidad y el deber de garantizar la salud, la seguridad, la educación y el bienestar público de sus habitantes mediante el ejercicio de su poder de razón de estado.

**POR CUANTO:** Esta Administración ha tomado medidas trascendentales para atajar la crisis fiscal por la que atraviesa el País mediante la reducción de los gastos del gobierno, un aumento en los ingresos y cambios estructurales. Además, desde junio de este año, se creó el Grupo de Trabajo para la Recuperación Fiscal y Económica de Puerto Rico el cual desarrolló un Plan Fiscal y de Crecimiento Económico a cinco años.

**POR CUANTO:** El 21 de octubre de 2015, la administración del Presidente de los Estados Unidos, Hon. Barack Obama, solicitó al Congreso que proveyera un marco legal al Estado Libre Asociado de Puerto Rico para atender sus obligaciones financieras de manera integral y

ordenada. No obstante, el Congreso no ha aprobado legislación al respecto.

**POR CUANTO:** A pesar de todas las gestiones realizadas, el Secretario de Hacienda y el Director de la Oficina de Gerencia y Presupuesto certificaron que la proyección de flujo de efectivo para el año fiscal en curso no es suficiente para pagar la deuda pública conforme a su vencimiento y continuar cubriendo los gastos necesarios para la protección de la salud, la seguridad, la educación y el bienestar público.

**POR CUANTO:** La proyección actualizada del flujo de efectivo consideró los recaudos reales hasta el presente, una proyección de recaudos revisada hasta el final del año fiscal en curso y un estimado de los gastos necesarios para mantener los servicios esenciales para la protección de la salud, la seguridad, la educación y el bienestar de los habitantes del País.

**POR CUANTO:** Ante esa situación, el Estado Libre Asociado de Puerto Rico no cuenta con recursos suficientes para cumplir con el pago de la deuda pública y, a su vez, garantizar los servicios esenciales de la salud, la seguridad, la educación y el bienestar público.

**POR TANTO:** Yo, ALEJANDRO J. GARCÍA PADILLA, Gobernador del Estado Libre Asociado de Puerto Rico, en virtud de los poderes inherentes a mi cargo y de la autoridad que me ha sido conferida por la Constitución del Estado Libre Asociado de Puerto Rico, por la presente dispongo lo siguiente:

**PRIMERO:** Se ordena al Secretario de Hacienda a retener los ingresos asignados a:

    a. la Autoridad de Carreteras y Transportación de Puerto Rico (ACT) para el pago de ciertas obligaciones de la ACT por virtud de la Sección 3060.11 de la Ley Núm. 1-2011, según enmendada, y la Sección 2301 de la Ley Núm. 22-2000, según enmendada,

    b. la Autoridad para el Financiamiento de la Infraestructura (AFI) para el pago de ciertas obligaciones de la AFI por virtud del Artículo 25 de la Ley Núm. 44 de 21 de junio de 1988, según enmendada, y la Sección 3060.11A de la Ley Núm. 1-2011, según enmendada,

2

        c.  la Autoridad Metropolitana de Autobuses (AMA) para el pago de ciertas obligaciones de la AMA por virtud de la Sección 3060.11 de la Ley Núm. 1-2011, según enmendada, y

        d.  la Autoridad de Transporte Integrado (ATI) para el pago de ciertas obligaciones de la ATI por virtud de la Sección 3060.11 de la Ley Núm. 1-2011, según enmendada.

**SEGUNDO:** Se ordena a la Compañía de Turismo de Puerto Rico a transferir al Departamento de Hacienda aquellas cantidades recaudadas y utilizadas por virtud del Artículo 24 de la Ley Núm. 272-2003, según enmendada, para el pago de ciertas obligaciones de la Autoridad del Distrito de Convenciones de Puerto Rico descritas en el Artículo 31, Sección A de dicha ley.

**TERCERO:** El Departamento de Hacienda retendrá solamente aquellos recursos que sean necesarios para el pago correspondiente de la deuda pública, mientras se continúa brindando los servicios esenciales para proteger la salud, la seguridad, la educación y el bienestar público de los habitantes de Puerto Rico. Los ingresos antes mencionados constituyen recursos disponibles sujetos al Artículo VI, Sección 8, de la Constitución del Estado Libre Asociado de Puerto Rico. La retención no afectará aquellos fondos que sean necesarios para la operación de las entidades. Estos fondos se mantendrán en una cuenta separada y serán utilizados únicamente para el pago de la deuda pública según es pagadera. Si no fuera necesario utilizar todos los fondos retenidos, se remitirán a la corporación pública aplicable para el pago de sus respectivas obligaciones.

**CUARTO:** <u>DEROGACIÓN</u>. Se deja sin efecto cualquier otra Orden Ejecutiva que en todo o en parte sea incompatible con esta, hasta donde existiera tal incompatibilidad.

**QUINTO:** <u>VIGENCIA Y PUBLICACIÓN</u>. Esta Orden Ejecutiva entrará en vigor inmediatamente. Se ordena su más amplia publicación y divulgación.

        EN TESTIMONIO DE LO CUAL, expido la presente Orden Ejecutiva bajo mi firma y hago estampar en ella el Gran Sello del Estado Libre

Asociado de Puerto Rico, en San Juan, Puerto Rico, hoy *30* de noviembre de 2015.

_____
ALEJANDRO J. GARCÍA PADILLA
GOBERNADOR

Promulgada de acuerdo a la ley, hoy *30* de noviembre de 2015.

_____
VÍCTOR A. SUÁREZ MELÉNDEZ
SECRETARIO DE ESTADO DESIGNADO

4

**TRANSLATION CERTIFICATION**

450 7th Avenue
10th Floor
New York, NY 10123
Tel 212.643.8800
Fax 212.643.0005
www.morningtrans.com

**County of New York**
**State of New York**

Date: July 20, 2016

To whom it may concern:

This is to certify that the attached translation from Spanish into English is an accurate representation of the documents received by this office.

The documents are designated as:

- COMMONWEALTH OF PUERTO RICO; Administrative Bulletin No. OE-2015-046

Riley Russell, Project Manager in this company, attests to the following:

"To the best of my knowledge, the aforementioned documents are a true, full and accurate translation of the specified documents."

_____
Signature of Riley Russell

Accurate Translation Services 24/7

COMMONWEALTH OF PUERTO RICO
LA FORTALEZA
SAN JUAN, PUERTO RICO

**Administrative Bulletin No. OE-2015-046**

**EXECUTIVE ORDER ISSUED BY THE GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, HON. ALEJANDRO J. GARCIA PADILLA, ORDERING THE WITHHOLDING OF FUNDS COLLECTED FOR THE HIGHWAYS AND TRANSPORTATION AUTHORITY OF PUERTO RICO, THE INFRASTRUCTURE FINANCE AUTHORITY, THE METROPOLITAN BUS AUTHORITY, THE INTEGRATED TRANSIT AUTHORITY AND THE PUERTO RICO CONVENTIONS DISTRICT AUTHORITY FOR THE PURPOSE OF HONORING PAYMENT OF THE PUBLIC DEBT.**

**WHEREAS**: Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico states that "when available revenue in any fiscal year is insufficient to meet the approved appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."

**WHEREAS:** The Commonwealth of Puerto Rico has the responsibility and the duty to guarantee the public health, safety, education and welfare of its citizens by exercising its power of national interest.

**WHEREAS**: This Administration has taken unprecedented measures to address the fiscal crisis that the country is going through by reducing government spending, increasing revenue and making structural changes. In addition, in June of this year, the Working Group for the Fiscal and Economic Recovery of Puerto Rico was created, which developed a five-year Fiscal and Economic Growth Plan.

**WHEREAS**: On October 21, 2015, the administration of the President of the United States, the Hon. Barack Obama, asked Congress to provide a legal framework to the Commonwealth of Puerto Rico that would allow it to address its financial obligations in a comprehensive and ordered fashion. Nevertheless, Congress did not pass any legislation in this regard.

**WHEREAS:** Despite all of the efforts made, the Secretary of the Treasury and the Director of the Office of Management and Budget certified that the cash flow projection for the current fiscal year is not enough to pay the public debt according to its maturity date, and to continue covering the expenses necessary to safeguard public health, safety, education and welfare.

**WHEREAS:** The updated cash flow projection included actual revenue collected to date, a revised revenue projection until the end of the current fiscal year, and an estimate of the expenditures necessary to sustain essential services required to protect the health, safety, education and welfare of the country's residents.

**WHEREAS**: In light of this situation, the Commonwealth of Puerto Rico does not have the necessary resources to honor its public debt payments and also guarantee essential public health, safety, education and welfare services.

**THEREFORE:** I, ALEJANDRO J. GARCIA PADILLA, Governor of the Commonwealth of Puerto Rico, by virtue of the powers vested in me and the authority granted to me by the Constitution of the Commonwealth of Puerto Rico, hereby order the following:

**FIRST:** The Secretary of the Treasury is hereby ordered to withhold the revenue allocated to:

a. The Highways and Transportation Authority of Puerto Rico *[Autoridad de Carreteras y Transportación]* (ACT) for the payment of certain ACT obligations under Section 3060.11 of Law No. 1-2011, as amended, and Section 2301 of Law No. 22-2000, as amended;

b. The Infrastructure Financing Authority *[Autoridad para el Financiamiento de la Infraestructura]* (AFI) for the payment of certain AFI obligations under Article 25 of Law No. 44 of June 21, 1988, as amended, and Section 3060.11A of Law 1-2011, as amended;

      c. The Metropolitan Bus Authority *[Autoridad Metropolitana de Autobuses]* (AMA) for the payment of certain AMA obligations under Section 3060.11 of Law No. 1-2011, as amended; and

      d. The Integrated Transit Authority *[Autoridad de Transporte Integrado]* (ATI) for the payment of certain ATI obligations under Section 3060.11 of Law No. 1-2011, as amended.

**SECOND:** The Tourism Company of Puerto Rico is hereby ordered to transfer all monies collected and used by virtue of Article 24 of Law No. 272- 2003, as amended, to the Treasury Department for the payment of certain obligations of the Puerto Rico Conventions District Authority described in Article 31, Section A of said law.

**THIRD:** The Department of the Treasury shall retain only those funds necessary to make the corresponding payments on the public debt, while continuing to provide essential services to safeguard the public health, safety, education and welfare of the residents of Puerto Rico. The revenue mentioned above constitutes available resources subject to Article VI, Section 8, of the Constitution of the Commonwealth of Puerto Rico. The withholding shall not affect those funds necessary for agency operations. These funds shall be kept in a separate account and shall be used only to make public debt payments as they become due. If it is not necessary to use all of the funds withheld, they shall be sent to the appropriate publicly-owned corporation to pay its respective obligations.

**FOURTH:** <u>REPEAL</u>: This Order hereby voids any other Executive Order that is either fully or partially inconsistent with this Executive Order, to the extent of said inconsistency.

**FIFTH**: <u>FORCE AND PUBLICATION.</u> This Executive Order shall immediately enter into full force and effect.  It is ordered to be published and circulated as widely as possible.

      IN WITNESS THEREOF, I issue this Executive Order under my signature and I affix

the Great Seal of the Commonwealth of Puerto Rico, in San Juan, Puerto Rico, today, the 30th of November of 2015.


_____[signature]_____

ALEJANDRO J. GARCIA PADILLA
GOVERNOR


Issued in accordance with the law, today, the 30th of November of 2015.


[illegible seal]


_____[signature]_____

VICTOR A. SUAREZ MELENDEZ
SECRETARY OF STATE DESIGNATE

JS 44 (Rev. 07/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Lex Claims, LLC; Jacana Holdings I LLC; Jacana Holdings II LLC; Jacana Holdings III LLC; Jacana Holdings IV LLC; Jacana Holdings V LLC; MPR Investors LLC; ROLSG LLC; RRW LLC and SL PR Fund II LP

**DEFENDANTS**
Alejandro Garcia Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico, et al

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
See Attachment

Attorneys *(If Known)*
Hon. Cesar Miranda Rodriguez, Olimpo Street corner of Axtmayer Street, Stop 11, Miramar, San Juan Puerto Rico 00911

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ❒ 1 U.S. Government Plaintiff
- ❒ 2 U.S. Government Defendant
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ❒ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❒ 1 | ❒ 1 | Incorporated *or* Principal Place of Business In This State | ❒ 4 | ❒ 4 |
| Citizen of Another State | ❒ 2 | ❒ 2 | Incorporated *and* Principal Place of Business In Another State | ❒ 5 | ❒ 5 |
| Citizen or Subject of a Foreign Country | ❒ 3 | ❒ 3 | Foreign Nation | ❒ 6 | ❒ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❒ 625 Drug Related Seizure of Property 21 USC 881 | ❒ 422 Appeal 28 USC 158 | ❒ 375 False Claims Act |
| ❒ 120 Marine | ❒ 310 Airplane | ❒ 365 Personal Injury - Product Liability | ❒ 690 Other | ❒ 423 Withdrawal 28 USC 157 | ❒ 376 Qui Tam (31 USC 3729(a)) |
| ❒ 130 Miller Act | ❒ 315 Airplane Product Liability | ❒ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ❒ 400 State Reapportionment |
| ❒ 140 Negotiable Instrument | ❒ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ❒ 410 Antitrust |
| ❒ 150 Recovery of Overpayment & Enforcement of Judgment | ❒ 330 Federal Employers' Liability | | | ❒ 820 Copyrights | ❒ 430 Banks and Banking |
| ❒ 151 Medicare Act | ❒ 340 Marine | ❒ 368 Asbestos Personal Injury Product Liability | | ❒ 830 Patent | ❒ 450 Commerce |
| ❒ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❒ 345 Marine Product Liability | | | ❒ 840 Trademark | ❒ 460 Deportation |
| | ❒ 350 Motor Vehicle | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ❒ 470 Racketeer Influenced and Corrupt Organizations |
| ❒ 153 Recovery of Overpayment of Veteran's Benefits | ❒ 355 Motor Vehicle Product Liability | ❒ 370 Other Fraud | ❒ 710 Fair Labor Standards Act | ❒ 861 HIA (1395ff) | ❒ 480 Consumer Credit |
| ❒ 160 Stockholders' Suits | ❒ 360 Other Personal Injury | ❒ 371 Truth in Lending | ❒ 720 Labor/Management Relations | ❒ 862 Black Lung (923) | ❒ 490 Cable/Sat TV |
| ❒ 190 Other Contract | ❒ 362 Personal Injury - Medical Malpractice | ❒ 380 Other Personal Property Damage | ❒ 740 Railway Labor Act | ❒ 863 DIWC/DIWW (405(g)) | ❒ 850 Securities/Commodities/ Exchange |
| ❒ 195 Contract Product Liability | | ❒ 385 Property Damage Product Liability | ❒ 751 Family and Medical Leave Act | ❒ 864 SSID Title XVI | ❒ 890 Other Statutory Actions |
| ❒ 196 Franchise | | | ❒ 790 Other Labor Litigation | ❒ 865 RSI (405(g)) | ❒ 891 Agricultural Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❒ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ❒ 893 Environmental Matters |
| ❒ 210 Land Condemnation | ❒ 440 Other Civil Rights | **Habeas Corpus:** | | ❒ 870 Taxes (U.S. Plaintiff or Defendant) | ❒ 895 Freedom of Information Act |
| ❒ 220 Foreclosure | ❒ 441 Voting | ❒ 463 Alien Detainee | | ❒ 871 IRS—Third Party 26 USC 7609 | ❒ 896 Arbitration |
| ❒ 230 Rent Lease & Ejectment | ❒ 442 Employment | ❒ 510 Motions to Vacate Sentence | | | ❒ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❒ 240 Torts to Land | ❒ 443 Housing/ Accommodations | ❒ 530 General | | | |
| ❒ 245 Tort Product Liability | ❒ 445 Amer. w/Disabilities - Employment | ❒ 535 Death Penalty | **IMMIGRATION** | | ☒ 950 Constitutionality of State Statutes |
| ❒ 290 All Other Real Property | ❒ 446 Amer. w/Disabilities - Other | **Other:** | ❒ 462 Naturalization Application | | |
| | ❒ 448 Education | ❒ 540 Mandamus & Other | ❒ 465 Other Immigration Actions | | |
| | | ❒ 550 Civil Rights | | | |
| | | ❒ 555 Prison Condition | | | |
| | | ❒ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ❒ 2 Removed from State Court
- ❒ 3 Remanded from Appellate Court
- ❒ 4 Reinstated or Reopened
- ❒ 5 Transferred from Another District *(specify)*
- ❒ 6 Multidistrict Litigation - Transfer
- ❒ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Section 204(c)(3) of P.L. 114-187 ("PROMESA"); 42 U.S.C. §1983

Brief description of cause:
Complaint for declaratory and injunctive relief under Section 204(c)(3) of "PROMESA"

## VII. REQUESTED IN COMPLAINT:
❒ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ❒ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE Hon. Francisco A. Besosa
DOCKET NUMBER 16-01037 and 16-01095

DATE
07/20/2016

SIGNATURE OF ATTORNEY OF RECORD
s//:Raul M. Arias-Marxuach

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse  (Rev. 07/16)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked**.  (See Section III below; NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerk(s) in the Administrative Office to determine the nature of suit.  If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.

Attorneys for Plaintffs

Raul M.Arias-Marxuach
McConnell Valdes LLC
PO Box 364225
San Juan, Puerto Rico 00936
(787) 250-2604

Mark T. Stancil (*pro hac vice* forthcoming)
Gary A. Orseck (*pro hac vice* forthcoming)
Ariel N. Lavinbuk (*pro hac vice* forthcoming)
Donald Burke (*pro hac vice* forthcoming)
ROBBINS, RUSSELL, ENGLERT, ORSECK UNTEREINER & SAUBER LLP
1801 K Street, NW
Washington, D.C. 20006
(202) 775-4520

# UNITED STATES DISTRICT COURT

## DISTRICT OF PUERTO RICO

## CATEGORY SHEET

**You must accompany your complaint with this Category Sheet, and the Civil Cover Sheet (JS-44).**

---

Attorney Name (Last, First, MI):  Arias-Marxuach, Raul M.

USDC-PR Bar Number:  209706

Email Address:  rma@mcvpr.com

---

1.  Title (caption) of the Case (provide only the names of the <u>first</u> party on <u>each</u> side):

    Plaintiff:  Lex Claims, LLC

    Defendant:  Alejandro Garcia Padilla

2.  Indicate the category to which this case belongs:

    ☐ Ordinary Civil Case
    ☐ Social Security
    ☐ Banking
    ☒ Injunction

3.  Indicate the title and number of related cases (if any).

    16-01037 (FAB) - Assured Guaranty Corp. v. Alejandro Garcia-Padilla
    16-01095 (FAB) - Financial Guaranty Insurance Company v. Alejandro Garcia-Padilla

4.  Has a prior action between the same parties and based on the same claim ever been filed before this Court?

    ☐ Yes
    ☒ No

5.  Is this case required to be heard and determined by a district court of three judges pursuant to 28 U.S.C. § 2284?

    ☐ Yes
    ☒ No

6.  Does this case question the constitutionality of a state statute?  (See, Fed.R.Civ. P. 24)

    ☒ Yes
    ☐ No

Date Submitted:  7/20/16

rev. Dec. 2009

[ Print Form ]   [ Reset Form ]

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Puerto Rico

| | |
|---|---|
| Lex Claims, LLC; Jacana Holdings I LLC; Jacana Holdings II LLC; Jacana Holdings III LLC; Jacana Holdings IV LLC; Jacana Holdings V LLC; MPR Investors LLC; ROLSG, LLC; RRW I LLC; et al. <br><br> *Plaintiff(s)* <br><br> v. <br><br> Alejandro Garcia Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico, et al <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Hon. Alejandro Garcia Padilla, in his official capacity as Governor of the
Commonwealth of Puerto Rico
63 Fortaleza Street
San Juan, Puerto Rico 00901

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Raul M. Arias-Marxuach
McConnell Valdes LLC
PO Box 364225
San Juan Puerto Rico 00936-4225

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____        _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.


Date: _____          _____
                                        *Server's signature*

                               _____
                                        *Printed name and title*

                               _____
                                        *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Puerto Rico

| | |
|---|---|
| Lex Claims, LLC; Jacana Holdings I LLC; Jacana Holdings II LLC; Jacana Holdings III LLC; Jacana Holdings IV LLC; Jacana Holdings V LLC; MPR Investors LLC; ROLSG, LLC; RRW I LLC; et al. <br> *Plaintiff(s)* <br> v. <br> Alejandro Garcia Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico; et al. <br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) <br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Hon. Alejandro Garcia Padilla, in his official capacity as Governor of the
Commonwealth of Puerto Rico,
through the Secretary of Justice, Hon. Cesar Miranda Rodriguez
Olimpo Street Corner of Axtmayer Street
Stop 11
Miramar, San Juan, Puerto Rico 00911

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Raul M. Arias-Marxuach
McConnell Valdes LLC
PO Box 364225
San Juan Puerto Rico 00936-4225

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                                              *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❐ I returned the summons unexecuted because _____ ; or

❐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Puerto Rico

| | |
|---|---|
| Lex Claims, LLC; Jacana Holdings I LLC; Jacana Holdings II LLC; Jacana Holdings III LLC; Jacana Holdings IV LLC; Jacana Holdings V LLC; MPR Investors LLC; ROLSG, LLC; RRW I LLC; et al. | ) ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | ) ) Civil Action No. |
| Alejandro Garcia Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico, et al | ) ) ) |
| *Defendant(s)* | ) ) ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Hon. Juan Zaragoza Gomez, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico,
Intendente Ramirez Building
10 Covadonga Street
San Juan, Puerto Rico 00901

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:  Raul M. Arias-Marxuach
McConnell Valdes LLC
PO Box 364225
San Juan Puerto Rico 00936-4225

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____     _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .


I declare under penalty of perjury that this information is true.


Date: _____

_____

*Server's signature*

_____

*Printed name and title*

_____

*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### District of Puerto Rico

| | | |
|---|---|---|
| Lex Claims, LLC; Jacana Holdings I LLC; Jacana Holdings II LLC; Jacana Holdings III LLC; Jacana Holdings IV LLC; Jacana Holdings V LLC; MPR Investors LLC; ROLSG, LLC; RRW I LLC; et al. | ) ) ) ) ) | |
| *Plaintiff(s)* | ) | |
| v. | ) ) | Civil Action No. |
| Alejandro Garcia Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico, et al | ) ) ) | |
| | ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*   Hon. Juan Zaragoza Gomez, in his official capacity as Secretary of the Treasury of the Commonwealth of Puerto Rico, through the Secretary of Justice, Hon. César Miranda Rodriguez
Olimpo Street Corner of Axtmayer Street
Stop 11
Miramar, San Juan, Puerto Rico 00911

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:   Raul M. Arias-Marxuach
McConnell Valdes LLC
PO Box 364225
San Juan Puerto Rico 00936-4225

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
                                                          *Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,
on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is
designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify)*:


My fees are $ _____ for travel and $ _____ for services, for a total of $ ____0.00____ .

I declare under penalty of perjury that this information is true.

Date: _____     _____
                                    *Server's signature*

                                    _____
                                    *Printed name and title*

                                    _____
                                    *Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

District of Puerto Rico

| | |
|---|---|
| Lex Claims, LLC; Jacana Holdings I LLC; Jacana Holdings II LLC; Jacana Holdings III LLC; Jacana Holdings IV LLC; Jacana Holdings V LLC; MPR Investors LLC; ROLSG, LLC; RRW I LLC; et al. | ) ) ) ) ) |
| *Plaintiff(s)* | ) |
| v. | )   Civil Action No. |
| Alejandro Garcia Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico, et al | ) ) ) |
| *Defendant(s)* | ) |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*  Hon. Luis Cruz Batista, in his official capacity as Director of the Office of Management and Budget of the Commonwealth of Puerto Rico,
254 Cruz Street
San Juan, Puerto Rico 00901

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:    Raul M. Arias-Marxuach
McConnell Valdes LLC
PO Box 364225
San Juan Puerto Rico 00936-4225

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____                    _____

*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT
for the

District of Puerto Rico

| | |
|---|---|
| Lex Claims, LLC; Jacana Holdings I LLC; Jacana Holdings II LLC; Jacana Holdings III LLC; Jacana Holdings IV LLC; Jacana Holdings V LLC; MPR Investors LLC; ROLSG, LLC; RRW I LLC; et al. <br><br> *Plaintiff(s)* <br><br> v. <br><br> Alejandro Garcia Padilla, in his official capacity as Governor of the Commonwealth of Puerto Rico, et al <br><br> *Defendant(s)* | ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)* Hon. Luis Cruz Batista, in his official capacity as Director of the Office of Management and Budget of the Commonwealth of Puerto Rico,
through the Secretary of Justice, Hon. César Miranda Rodríguez
Olimpo Street Corner of Axtmayer Street
Stop 11
Miramar, San Juan, Puerto Rico 00911

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:     Raul M. Arias-Marxuach
McConnell Valdes LLC
PO Box 364225
San Juan Puerto Rico 00936-4225

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____          _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

# PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❒ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❒ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❒ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❒ I returned the summons unexecuted because _____ ; or

❒ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .


I declare under penalty of perjury that this information is true.


Date: _____                    _____
                                                    *Server's signature*

                                                    _____
                                                    *Printed name and title*

                                                    _____
                                                    *Server's address*

Additional information regarding attempted service, etc: