**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------- x

WHITEBOX MULTI-STRATEGY
PARTNERS, L.P., WHITEBOX
ASYMMETRIC PARTNERS, L.P.,
WHITEBOX INSTITUTIONAL
PARTNERS, L.P., and PANDORA
SELECT PARTNERS, L.P.,

                Plaintiffs,

        -against-

THE BANK OF NEW YORK MELLON,

              Defendant.

Civ. A. No. _____

-------------------------------------------------------------- x

## NOTICE OF REMOVAL

    **PLEASE TAKE NOTICE** that The Bank of New York Mellon ("BNYM") files this

Notice of Removal pursuant to section 2166(d) of the Puerto Rico Oversight, Management, and

Economic Stability Act ("PROMESA"), 48 U.S.C. §§ 2101-2241, and removes to this Court the

above-entitled civil action from the Supreme Court of the State of New York, County of New

York (Index No. 651969/2017) (the "Civil Action"), and all claims and causes of action asserted

therein. This Court has original jurisdiction over the Civil Action and all claims and causes of

action therein pursuant to 48 U.S.C. § 2166(a)(2). In support of this Notice of Removal, BNYM

states as follows:

    1.      The state court action was commenced on April 12, 2017, by the filing of a

Summons and Complaint (the "Complaint" or "Compl.") in the Supreme Court of the State of

New York, County of New York (the "State Court").

    2.      Plaintiffs completed service of process by personal service on April 13, 2017.

3.      Pursuant to 48 U.S.C. § 2166(d) and Federal Rule of Bankruptcy Procedure 9027(a)(1),[1] BNYM consents, upon removal of the Civil Action and the claims and causes of action therein, to entry of final orders or judgment by the District Court.

4.      In accordance with 48 U.S.C. § 2166(d) and Federal Rule of Bankruptcy Procedure 9027(a)(1), true and correct copies of all process, pleadings and orders filed in the State Court to date are attached as **Exhibit A** to this Notice of Removal.

<u>**Timeliness**</u>

5.      BNYM has timely filed this notice of removal within the time permitted by Federal Rule of Bankruptcy Procedure 9027(a)(2) for the removal of civil actions filed prior to the commencement of a case under PROMESA.

<u>**Procedural Background**</u>

6.      On June 30, 2016, in response to the Commonwealth of Puerto Rico's (the "<u>Commonwealth</u>") financial and economic difficulties, President Obama signed PROMESA into law.

7.      PROMESA established a "Financial Oversight and Management Board" (the "<u>Oversight Board</u>") to help the Commonwealth "achieve fiscal responsibility and access to the capital markets." 48 U.S.C. §§ 2121 and (a)-(b)(1).

8.      PROMESA also provided for an out-of-court, voluntary restructuring process, *see id.* §§ 2231-2232, and a court-supervised restructuring process akin to Chapter 9 of the Bankruptcy Code ("<u>Title III</u>"), *see id.* §§ 2161 *et seq.*

---

[1]    Pursuant to PROMESA, the "Federal Rules of Bankruptcy Procedure shall apply to a case under this subchapter and to all civil proceedings arising in or related to cases under this subchapter." 48 U.S.C. § 2170.

9.  Title III of PROMESA, entitled "Adjustments of Debts," enables the Oversight Board to file a petition to restructure its debts in a court-supervised process similar to Chapter 9 of the Bankruptcy Code.

10.  PROMESA imposed a stay on collection actions against the Commonwealth until May 1, 2017.  48 U.S.C. § 2194(d).

11.  On April 12, 2017—prior to the expiration of the stay—Plaintiffs commenced the Civil Action against BNYM.  Plaintiffs allege that BNYM failed to investigate and enforce alleged "Events of Default" relating to bonds issued by the Puerto Rico Sales Tax Financing Corporation ("COFINA") and has caused and will continue to cause direct and foreseeable harm to Plaintiffs and other COFINA bondholders, in breach of BNYM's alleged contractual, fiduciary, and other duties to Plaintiffs.

12.  Resolution of Plaintiffs' allegations will affect which holders of the COFINA bonds will be entitled to receive payments on account of the COFINA bonds.

13.  On May 3, 2017, the Oversight Board filed a petition for the Commonwealth under Title III of PROMESA in the United States District Court for the District of Puerto Rico, styled *In re The Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico*, Case No. 17-bk-3283-LTS.

14.  On May 5, 2017, the Oversight Board filed a petition for COFINA under Title III of PROMESA in the United States District Court for the District of Puerto Rico, styled *In re The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Sales Tax Financing Corporation (COFINA)*, Case No. 17-bk-3284-LTS.

## Grounds for Removal[2]

15.     Removal is appropriate under 48 U.S.C. § 2166(d)(1).  Section 2166(d)(1) of

PROMESA provides, in relevant part:  "A party may remove any claim or cause of action in a

civil action . . . to the district court for the district in which the civil action is pending, if the

district court has jurisdiction of the claim or cause of action under this section."  *See* 48 U.S.C.

§ 2166(d)(1).

16.     This Court has original jurisdiction of the Civil Action and the claims and causes

of action therein pursuant to 48 U.S.C. § 2166(a)(2), which provides that the federal district

courts shall have "original but not exclusive jurisdiction of all civil proceedings arising under

[PROMESA], or arising in or related to cases under [PROMESA]."  The Civil Action is related

to COFINA's case under PROMESA.

17.     Although there is no case law addressing when a civil proceeding is "related to" a

case under PROMESA, decisions in the bankruptcy context provide an appropriate analog.

18.     The test for determining whether a civil proceeding is "related to" a bankruptcy

case is "whether the outcome of that proceeding could conceivably have any effect on the estate

being administered in bankruptcy."  *In re G.S.F. Corp.*, 938 F.2d 1467, 1475 (1st Cir. 1991)

(internal quotations and citations omitted).  Thus, the proceeding need not be against the debtor

or against the debtor's property.  *See Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

Rather, an action is "related to" bankruptcy if the outcome could "alter[] [the] debtor's rights,

liabilities, options, or freedom of action, or otherwise have an impact upon the handling and

administration of the bankrupt estate."  *G.S.F. Corp.*, 938 F.2d at 1475 (internal quotations and

citations omitted); *see also Kirschenbaum v. DOL (In re Robert Plan Corp.)*, 777 F.3d 594, 597

---

[2]     Federal Rule of Bankruptcy Procedure 9027(a)(1) requires a notice of removal to "contain a short and
plain statement of the facts which entitle the party filing the notice to remove" a civil action.  *See*
Fed.R.Bankr.P. 9027(a)(1).

(2d Cir. 2015) ("The standard for 'related to' jurisdiction is 'whether the outcome of the

proceeding could conceivably have any effect upon the debtors' estate being administered.'")

(quoting *In re Turner*, 724 F.2d 338, 341 (2d Cir. 1983) (quotation marks omitted)), *cert. denied*,

136 S.Ct. 317 (2015).

19.     The Civil Action is "related to" COFINA's Title III Case under PROMESA.

Plaintiffs directly challenge BNYM's actions as Trustee for COFINA-issued bonds, including

Senior and Subordinate Capital Appreciation Bonds and Senior and Subordinate Current Interest

Bonds.  Specifically, Plaintiffs allege that COFINA and the Commonwealth engaged in no less

than five material "Events of Default" under the Amended and Restated Sales Revenue Bond

Resolution (the "Resolution") pursuant to which BNYM acts as trustee, and that these "Events of

Default" pose an "existential threat to COFINA and jeopardize all COFINA Notes."  The

occurrence or non-occurrence of those alleged Events of Default determine the relative payment

priority of holders of the COFINA bonds.  *See Delaware Trust Co. v. Wilmington Trust, N.A.*,

534 B.R. 500, 513 (S.D.N.Y. 2015) ("The requirements for 'relating to' jurisdiction are clearly

met in this case because resolution of the allocation dispute certainly could have, at a minimum,

a 'conceivable effect' on TCEH's bankruptcy estate.").

20.     Moreover, pursuant to section 804 of the Resolution, COFINA "agree[d] to

indemnify and save the Trustee harmless against any loss, liability or expenses . . . arising out of

or in connection with the acceptance or administration of the trust or trusts [thereunder],

including the costs and expenses of defending itself against any claim . . . asserted by . . . any

Bondowner or any other Person . . . or liability in connection with the exercise or performance of

any of its powers or duties [thereunder], . . . except to the extent that such loss, damage, claim,

liability or expense is due to its own gross negligence or willful misconduct." *See* Resolution
§ 804.[3]

21.     The Civil Action also is "related to" COFINA's Title III case because COFINA is
contractually obligated to indemnify BNYM. *See Cambridge Place Inv. Mgmt. v. Morgan
Stanley & Co.*, No. 10-11376-NMG, 2010 WL 6580503, at *5 (D. Mass. Dec. 28, 2010)
("Clearly, a finding of liability pursuant to an indemnification agreement on claims of the
magnitude presented here would have such an impact."); *11 E. 36th LLC v. First Cent. Sav. Bank
(In re 11 E. 36th LLC)*, No. 13-11506 (JLG), 2016 WL 152924, at *5 (Bankr. S.D.N.Y. Jan. 12,
2016) ("the claims asserted in the Third Party Complaint do implicate the Court's noncore
jurisdiction as matters that are 'related to' the bankruptcy case based on the Debtors' contractual
agreement to indemnify the DIP Lender against claims arising out of the Postpetition
Financing"); *Pratt v. S. Cnty. Motor Sales, Inc.*, No. 4:12CV10492 ERW, 2012 WL 5906705, at
*3 (E.D. Mo. Nov. 26, 2012) ("courts have consistently found that 'related to' jurisdiction exists
when there is an underlying contractual right of indemnification").

22.     Therefore, the Civil Action implicates COFINA's liabilities and payments
thereon. As a result, the outcome of this case "could conceivably" have an effect on the
COFINA Title III case, including by altering COFINA's "rights, liabilities, options, or freedom
of action."[4]

---

[3]     On April 21, 2017, BNYM demanded in writing that COFINA indemnify it against any losses
        incurred or suffered by BNYM in any way arising out of, related to, or in connection with Plaintiffs'
        state court action.

[4]     It is "unnecessary to resolve" whether any of the claims and causes of action in the Civil Action
        "arises in" or "arises under" PROMESA for subject matter jurisdictional purposes because '[w]hether
        a particular proceeding ['arises in' or 'arises under'] represents a question wholly separate from that
        of subject-matter jurisdiction.'" *Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.)*, 505
        F.3d 237, 257 (3d Cir. 2007) (quoting *In re Marcus Hook Dev. Park, Inc.*, 943 F.2d 261, 266 (3d Cir.
        1991)). Therefore, this Court has jurisdiction of the claims and causes of action in the Civil Action so

## Venue

23.     Pursuant to 48 U.S.C. § 2166(d)(1), venue in this action is proper in this Court as the District Court for the district in which the Civil Action is pending.

### Transfer of Removed Civil Action

24.     PROMESA provides that "[a] district court *shall* transfer any civil proceeding arising under this subchapter, or arising in or related to a case under this subchapter, to the district court in which the case under this subchapter is pending."  48 U.S.C. § 2166(d)(3) (emphasis added).

### Filing and Service of Removal Papers

25.     Pursuant to Federal Rule of Bankruptcy Procedure 9027(b) and (c), BNYM will file a copy of this Notice of Removal with the Clerk of Court for the Supreme Court of the State of New York, County of New York.  BNYM also will promptly serve a copy of this Notice on counsel for Plaintiffs.

WHEREFORE, BNYM hereby removes the Civil Action, and all claims and causes of action therein, from the Supreme Court of the State of New York, County of New York, to the United States District Court for the Southern District of New York.

*[The remainder of this page was intentionally left blank.]*

---

long as they are at least "related to" COFINA's Title III case.  BNYM reserves all of its rights regarding the nature of such claims and causes of action.

- 7 -

Dated: May 18, 2017
New York, New York

Respectfully submitted,


      /s/ C. Neil Gray
    Eric A. Schaffer
    David M. Schlecker
    C. Neil Gray
REED SMITH LLP
599 Lexington Avenue
New York, New York 10022
(212) 541-5400
(212) 521-5450 (fax)
Email: eschaffer@reedsmith.com
Email: dschlecker@reedsmith.com
Email: cgray@reedsmith.com

*Attorneys for Defendant,*
*The Bank of New York Mellon*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send automatic notification of such filing to all CM/ECF participants.

I also mailed a copy of the foregoing, first class postage prepaid, addressed as follows:

Kenneth R. David
Daniel A. Fliman
Ryan P. Montefusco
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019

Dated: May 18, 2017

_____
/s/ C. Neil Gray
C. Neil Gray

## EXHIBIT A
**(True and correct copies of all process, pleadings and orders
filed in the State Court)**

Case 17-03283-LTS Doc# 4759-16 Filed 01/12/19 Entered 01/12/19 17:45:34 Desc:
Exhibit DX-Q2 Page 11 of 53

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

--------------------------------------------------------------------- x

WHITEBOX MULTI-STRATEGY PARTNERS, L.P.,        :
WHITEBOX ASYMMETRIC PARTNERS, L.P.,            :     Index No. _____
WHITEBOX INSTITUTIONAL PARTNERS, L.P., and     :
PANDORA SELECT PARTNERS, L.P.,                 :     **SUMMONS**
                                               :
                          Plaintiffs,          :     Plaintiffs designate New York
                                               :     County as the place of trial.
                     -against-                 :
                                               :     Venue is proper pursuant to
BANK OF NEW YORK MELLON CORPORATION,           :     CPLR § 503
                                               :
                          Defendant.           :
                                               :
--------------------------------------------------------------------- x

TO THE ABOVE-NAMED DEFENDANT:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a

copy of your answer on Plaintiffs' attorneys within twenty (20) days after the service of this

summons, exclusive of the day of service, or within thirty (30) days after the service is complete

if this summons is not personally delivered to you within the State of New York.  In case of your

failure to appear or answer, judgment will be taken against you by default for the relief demanded

in the complaint.

FILED: NEW YORK COUNTY CLERK 04/12/2017 01:03 PM INDEX NO. 651969/2017
NYSCEF DOC. NO. 1                                                    RECEIVED NYSCEF: 04/12/2017

Dated: New York, New York
        April 12, 2017

KASOWITZ BENSON TORRES LLP

By: _____
Kenneth R. David (kdavid@kasowitz.com)
Daniel A. Fliman (dfliman@kasowitz.com)
Ryan P. Montefusco (rmontefusco@kasowitz.com)

1633 Broadway
New York, New York 10019
(212) 506-1700

*Attorneys for Plaintiffs*

TO:
THE BANK OF NEW YORK MELLON CORPORATION
Attn.: General Counsel
One Wall Street
New York, New York, 10286

FILED: NEW YORK COUNTY CLERK 04/12/2017                    INDEX NO. 651969/2017

NYSCEF DOC. NO. 1                                         RECEIVED NYSCEF: 04/12/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------------ x

WHITEBOX MULTI-STRATEGY PARTNERS, L.P.,
WHITEBOX ASYMMETRIC PARTNERS, L.P.,
WHITEBOX INSTITUTIONAL PARTNERS, L.P., and
PANDORA SELECT PARTNERS, L.P.,

                           Plaintiffs,

              -against-

BANK OF NEW YORK MELLON CORPORATION,

                        Defendant.

------------------------------------------------------------------ x

Index No. _____

Date Issued: _____

**COMPLAINT**

Jury Trial Demanded

Plaintiffs Whitebox Multi-Strategy Partners, L.P., Whitebox Asymmetric Partners, L.P.,

Whitebox Institutional Partners, L.P., and Pandora Select Partners, L.P. ( "Plaintiffs"), for their

complaint against defendant Bank of New York Mellon Corporation ("BONY" or "Defendant"),

allege as follows:

## NATURE OF THE ACTION[1]

1.     This action arises from BONY's repeated failures over the last eighteen (18)

months to take appropriate measures to protect Plaintiffs and their COFINA Notes -- as BONY is

duty bound to do.[2]

2.     From the moment of its appointment as Trustee, BONY had an obligation to act on

behalf of all COFINA Notes with undivided loyalties and to insulate itself from any and all

conflicts of interest.  BONY breached that obligation when, upon COFINA's subsequent issuance

---

[1]     Undefined capitalized terms used in this section of the Complaint are given the definitions set forth
elsewhere in the Complaint.

[2]     "COFINA" is an acronym for Corporación del Fondo de Interés Apremiante or, as otherwise known, the
Puerto Rico Sales Tax Financing Corporation.  COFINA, a public corporation established by the Commonwealth of
Puerto Rico, is the issuer of various types of tax revenue bonds (the "COFINA Notes").

Case:17-03283-LTS Doc#:4759-16 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 14 of 53

of different types of COFINA Notes, each of which carried drastically different payment, maturity and priority rights, BONY expanded its mandate to cover such new notes. Despite its many opportunities to cure those conflicts, such as by appointing co-trustees for different types of notes, and several requests to do so, BONY has refused, and all COFINA Notes have suffered as a consequence. Indeed, BONY has allowed this conflict of interest to put it into a state of paralysis and inaction that continues to harm Plaintiffs to this day.

3.      Specifically, since September 2015, BONY knew of, and failed to adequately respond to, no less than five (5) Events of Default occurring under the Resolution governing the COFINA Notes. Those Events of Default arise from public positions taken by the Commonwealth of Puerto Rico that pose an existential threat to COFINA and jeopardize all COFINA Notes; positions the Commonwealth made a covenant never to take. The Events of Default also arise from COFINA's failures to do anything at all to abide by its covenant to -- *at all times* -- defend COFINA's viability and its ability to repay the COFINA Notes. Despite the Commonwealth's and COFINA's covenant breaches, which long ago ripened into Events of Default, BONY has done little to protect Holders. While it continues to collect fees, BONY has sat idly by and has not enforced the rights or powers entrusted to it under the Resolution. As a result, COFINA's subordinate debts have been improperly preferred over its senior debts.

4.      Indeed, the particular type of senior COFINA Notes held by Plaintiffs -- referred to as Senior CAB Notes -- have suffered most acutely as a result. Because those notes carry the longest dated maturities with no current cash payments, the Senior CAB Notes are at severe risk if the COFINA structure is compromised. Acceleration of the COFINA Notes, a power granted to BONY upon an Event of Default, which makes all senior COFINA Notes due immediately and on a pro rata basis, is thus a critical protection to the Senior CAB Notes because they otherwise would

2

Case 17-03283-LTS Doc#4759-16 Filed 01/12/19 Entered 01/12/19 17:45:34 Desc:
Exhibit DX-Q2 Page 15 of 53

be forced to wait on the sidelines as COFINA is stripped of the resources specifically allocated to it for the repayment of its notes (*i.e.*, sales and use tax revenues the Commonwealth has specifically dedicated to COFINA) and as other senior COFINA Notes and subordinate COFINA Notes are paid in full.

5.      BONY's duties to the Senior CAB Notes therefore required it to investigate and to enforce the Events of Default, either by accelerating the COFINA Notes or refraining from making any payments. Yet, shackled by its own divided interests and personal financial incentives, BONY failed to do so, with prejudice to Plaintiffs and others, and an improper benefit to subordinate COFINA Notes.

6.      This action therefore seeks damages against BONY for its negligent conduct, breaches of duties, contractual breaches and waste, as well as declaratory relief regarding BONY's serious conflicts of interest and other failures as Trustee.

## PARTIES

7.      Plaintiff Whitebox Multi-Strategy Partners, L.P. is a limited partnership organized in the British Virgin Islands, and brings this action in its own right and as holder of Senior CAB Notes issued by COFINA.

8.      Plaintiff Whitebox Asymmetric Partners, L.P. is a limited partnership organized in the Cayman Islands, and brings this action in its own right and as holder of Senior CAB Notes issued by COFINA.

9.      Plaintiff Whitebox Institutional Partners, L.P. is a limited partnership organized in Delaware, and brings this action in its own right and as holder of Senior CAB Notes issued by COFINA.

3

Case 17-03283-LTS Doc#4759-16 Filed 01/12/19 Entered 01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 16 of 53

10.     Plaintiff Pandora Select Partners, L.P. is a limited partnership organized in the British Virgin Islands, and brings this action in its own right and as holder of Senior CAB Notes issued by COFINA.

11.     Defendant BONY is a Delaware corporation with a principal place of business in New York, New York. BONY serves as Trustee for all series of notes issued by COFINA pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 10, 2009.

## JURISDICTION AND VENUE

12.     This Court has personal jurisdiction pursuant to CPLR §§ 301 and 302, because Defendant is a resident of the State of New York and the acts complained of occurred in the State of New York.

13.     Venue is proper in this Court pursuant to CPLR § 503 because Defendant resides in New York County.

## FACTUAL BACKGROUND

**I.      Facing Crisis, The Commonwealth Creates The COFINA Structure**

14.     In 2006, Puerto Rico faced an unprecedented fiscal crisis that led to a full government shutdown and left 100,000 public employees without pay and 500,000 children without school.   In response, the Legislative Assembly imposed for the first time a sales and use tax (the "SUT") and, by statute, transferred ownership of a portion of the sales and use tax revenue ("Dedicated SUT Revenues") to what would ultimately become COFINA.  Shortly thereafter, in early 2007, the Legislative Assembly nearly unanimously passed Act 56, which officially created COFINA and authorized COFINA to issue bonds backed by Dedicated SUT Revenues.

15.     COFINA is an isolated entity and the Dedicated SUT Revenues are, by statute, "*owned* by COFINA."  Act 56 expressly separated COFINA's funds from the Commonwealth's

4

Case:17-03283-LTS Doc#:4759-16 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 17 of 53

general fund, ensuring that they would not be diverted to the Treasury of Puerto Rico and not used
for other purposes. Indeed, Act 56 specified that the Dedicated SUT Revenues "shall not constitute
available resources of the Commonwealth of Puerto Rico *for any purpose.*"

16.    In July 2007, COFINA adopted its "Sales Tax Revenue Bond Resolution," which
was amended and restated on June 10, 2009, and as amended, modified, or supplemented thereafter
(the "Resolution").

17.    Pursuant to the Resolution and statutory enactments, the statutory transfer of the
Dedicated SUT Revenues to COFINA presently is accomplished through the following
mechanism: (1) the Commonwealth collects SUT at a rate of 11.5%, (2) out of the 11.5%
collected, 6% constitutes Dedicated SUT Revenues that are owned by and flow to COFINA until
it has received SUT up to a cap specified in the Resolution that is sufficient for COFINA's total
debt service for the fiscal year, (3) out of the remaining 5.5%, 1% flows to municipalities and 4.5%
flows to the general funds of the Commonwealth, and (4) Dedicated SUT Revenues in excess of
the aforementioned cap flow to the general funds of the Commonwealth.

18.    This structure, which transfers ownership of the Dedicated SUT Revenues to
COFINA, ensures that necessary debt service by COFINA is funded. Given the importance of this
structure, and the fact that the Dedicated SUT Revenues are the sole source of recovery for the
COFINA Notes, the Resolution acknowledges that any interruption of revenues flowing to
COFINA is an Event of Default.

19.    The isolation of COFINA from the credit risk of the Commonwealth's general fund,
through COFINA's ownership of the Dedicated SUT Revenues and the statutory lien granted for
the benefit of holders of COFINA notes (the "Holders"), enabled COFINA Notes to receive strong,
investment-grade ratings, consistently higher than the ratings for the Commonwealth's general

Case 17-03283-LTS   Doc#:4759-16   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-Q   Page 18 of 53

obligations bonds (the "GO Bonds"). In connection with the initial COFINA offerings, Standard & Poor's stated that its rating reflected "a strong legal structure that *separates* the revenue stream supporting the bonds *from* the Commonwealth of Puerto Rico, along with strong cash flows that, under severe stress assumptions, are still sufficient to make timely payments of interest and principal." It further stated that "[t]he legislative act creating COFINA ... *successfully separates* and *provides a priority interest* in the Commonwealth's sales and use taxes for the [COFINA] bondholders." Moody's echoed these assessments.

## II.   COFINA Issues $16 Billion Of Notes

20.     At the time of the Resolution's adoption in 2007, COFINA issued several types of COFINA Notes, comprised primarily of cash pay notes ("Senior Cash Pay Notes") and capital appreciation bonds ("Senior CAB Notes" and collectively with the Senior Cash Pay Notes, the "Senior Notes"). In total, during 2007 and 2008, COFINA issued approximately $5.2 billion in Senior Notes. The Senior Notes, because they were backed by the Dedicated SUT Revenues, afforded the Commonwealth with crucial, lower cost financing compared with the GO Bonds.

21.     By 2009, the Commonwealth was in need of additional resources. As such, through legislation, the Commonwealth increased the amount of Dedicated SUT Revenues owned by COFINA and caused COFINA to issue subordinate cash pay notes ("Subordinate Cash Pay Notes") and subordinate capital appreciation bonds ("Subordinate CAB Notes" and collectively with the Subordinate Cash Pay Notes, the "Subordinate Notes"). As used herein, "COFINA Notes" refers, collectively, to all Senior Notes and Subordinate Notes.

22.     The Subordinate Notes, which are structurally subordinate to all Senior Notes, carry higher interest rates than the Senior Notes and shorter maturities than most Senior Notes, including the Senior CAB Notes. Because of the inherently riskier nature of the Subordinate Notes, while they have a higher interest coupon, they have had a lower credit rating than the Senior Notes. In

6

Case 17-03283-LTS Doc#:4359-16 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 19 of 53

essence, the issuance of the Subordinate Notes provides credit support to all Senior Notes by effectively protecting the Senior Notes from material declines in the Dedicated SUT Revenues owned by COFINA. Nonetheless, when the Subordinate Notes were issued in 2009, the ratings agencies reaffirmed high ratings on the Senior Notes, in part, because of COFINA's strong legal structure.

23.    In total, investors on and off the island of Puerto Rico have purchased more than $16 billion of COFINA Notes.[3]   Of all bonds issued by the Commonwealth and its instrumentalities, COFINA is the most widely held by on-island investors; with a 7:1 ratio of on-island COFINA Notes holders versus on-island GO Bonds holders.

24.    As noted, the COFINA Notes consist of essentially these types of debt:    -

    a. **Senior Cash Pay Notes (approximately $4 billion principal amount outstanding),** which are entitled to periodic interest payments in cash, and mature between 2020 and 2057.

    b. **Senior CAB Notes (approximately $3.7 billion accreted amount outstanding),** which do not receive cash payments prior to stated maturity or acceleration. Senior CAB Notes mature between 2022 and 2056, and thus are the lowest weighted average yielding bonds issued by COFINA or any other Commonwealth entity. Initial principal amount is reinvested at a stated compounded rate and, upon stated maturity or acceleration, holders are entitled to receive the initial principal amount plus any then accrued appreciation at the compounded rate. Senior CAB Notes -- because they receive no periodic

---

[3]    While the current amount of COFINA Notes is approximately $17.2 billion, due to capital appreciation as explained below, the original value of all notes at issuance was approximately $16.3 billion.

Case:17-03283-LTS Doc#:4759-16 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 20 of 53

payments, have far off maturities, and are solely obligations of COFINA -- are critically dependent on the sanctity of the COFINA structure and the corresponding pledge of Dedicated SUT Revenues.

c. <u>**Subordinate Cash Pay Notes (approximately $8.2 billion principal amount outstanding)**</u>, which, absent an Event of Default, receive periodic interest payments in cash, and mature between 2017 and 2044.

d. <u>**Subordinate CAB Notes (approximately $1.7 billion accreted amount outstanding)**</u>, which do not receive cash payments prior to stated maturity or acceleration, and mature between 2023 and 2050. Subordinate CAB Notes accrue principal in the same manner as Senior CAB Notes, as described above.

25.     Section 1101 of the Resolution provides that "that Owners of Subordinate Bonds . . . may not declare an Event of Default, or cause the Trustee to take any remedial actions hereunder in the event such Subordinate Bonds . . . are not timely paid amounts due thereunder, until such time that Senior Bonds . . . are fully retired or are defeased in accordance with the provisions of this Resolution." *As such, Subordinate Notes have no rights to enforce payments on their notes until all Senior Notes are repaid in full.*

26.     Despite the clearly conflicting and competing rights and interests of these different types of COFINA Notes, BONY has at all times since 2007 purported to act as the sole trustee for all COFINA Notes.

### III.   The Resolution Aims To Preserve and Protect The COFINA Structure

27.     The Resolution sets forth (i) the terms governing all COFINA Notes and (ii) the rights of and protections for the holders of the COFINA Notes.

8

Case 17-03283-LTS Doc#4359-16 Filed 01/13/19 Entered 01/13/19 17:45:34 Desc:
Exhibit DX-Q Page 21 of 53

28.    Section 1211 of the Resolution provides that "the rights, duties, privileges and immunities of the Trustee . . . shall be governed by the law of the jurisdiction in which its Corporate Trust Office is located," which according to the Resolution is New York.[4]

29.    The Resolution creates a "continuing pledge of and lien on Pledged Property to secure the full and final payment of the principal of and premium, if any, and interest on, all of the Bonds issued" pursuant thereto (the "Pledge").

30.    "Pledged Property" is defined under the Resolution to include, among other things, Dedicated SUT Revenues. Section 501 of the Resolution provides that such funds are "pledged to the Trustee for the payment and as security for the payment of the Principal Installments and Redemption Price of and interest on the Bonds." The Resolution further provides that Pledged Property shall "immediately be subject to the lien of this pledge, without any physical delivery thereof or further act, and the lien of this pledge shall be valid and binding as against all parties having claims of any kind."

31.    Given that COFINA Notes are only payable by COFINA and that, via the Pledge, the Dedicated SUT Revenues constitute the only source of funding for the repayment of the COFINA Notes, the Resolution necessarily contains critical assurances concerning the continuing flow of funds to COFINA. Under normal circumstances, the treatment of revenues is governed by Section 505 of the Resolution, which provides that Dedicated SUT Revenues deposited into the COFINA "Revenue Account" may be withdrawn each month in accordance with the priority of the COFINA Notes. Any interruption of revenues flowing to COFINA is an Event of Default.

32.    Moreover, the Resolution contains key provisions intended to reflect and reaffirm the statutorily assured viability of COFINA and the sanctity of the Pledge. These assurances were

---

[4]    Ultra vires acts taken by BONY beyond its authority under the Resolution would cause BONY to incur liabilities outside its capacity as Trustee and beyond the provisions of the Resolution.

9

Case:17-03283-LTS Doc#:4359-16 Filed:01/13/19 Entered:01/13/19 17:45:34 Desc:
Exhibit DX-Q Page 22 of 53

delivered through affirmative and negative covenants from COFINA and the Commonwealth included in the Resolution.

33.   **First**, Section 705 of the Resolution requires COFINA to "*at all times* defend, preserve, and protect the pledge of the Pledged Property ... against all claims and demands of all persons whomsoever" (the "Covenant to Defend").

34.   **Second**, Section 706 provides, among other things, that the Commonwealth shall not "limit or restrict the rights ... of [COFINA] to meet its obligations to its Bondholders" (the "Covenant Not to Limit or Restrict").

35.   These covenants go to the heart of the Resolution and its protections of the COFINA Notes' ability to be repaid. These protections are indeed so critical to the COFINA Notes that the failure of either COFINA or the Commonwealth to adhere to such covenants trigger an Event of Default under the Resolution.

36.   Section 1101(1)(ii) provides, in pertinent part, that an Event of Default occurs upon a "failure to observe or refusal to comply with the covenants and agreements set forth in the Resolution, [if] such failure or refusal shall have continued for a period of thirty (30) days after written notice, specifying such failure and requesting that it be remedied, is given to the Corporation by the Trustee or any [Holder]."

37.   As such, a breach by COFINA of its Covenant to Defend in Section 705 or by the Commonwealth of its Covenant Not to Limit or Restrict in Section 706, if left uncured for 30 days after notice, constitutes an Event of Default under the Resolution.

38.   Section 1101(2) provides that following an Event of Default, payments are to be made in accordance with "Class Priority," which is defined under the Resolution to mean that "Senior Bonds" are to be paid "first until full funding or payment thereof," with payments then

Case 17-03283-LTS Doc#4359-16 Filed 01/12/19 Entered 01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 23 of 53

due and owing to Senior Notes entitled to *pari passu* treatment, and with payments flowing to the Subordinate Notes only after the Senior Notes are repaid in full.

39.    An Event of Default triggers both contractual obligations and heightened extra-contractual duties for BONY as Trustee, as well as authorizes the Trustee to accelerate all amounts outstanding under the Resolution.  Upon any such acceleration, the Resolution provides, the principal and "accrued interest on the accelerated Bonds shall become due and payable immediately, and the Trustee shall make demand for payment upon [COFINA] in an amount sufficient to pay principal … and interest accrued on the accelerated Bonds to the date established for payment thereof."

40.    The remedy of acceleration thus affects each type of COFINA Notes differently. For example, if, upon acceleration, insufficient funds exist to repay all COFINA Notes in full, then principal and accrued interest are repaid ratably among the Senior Cash Pay Notes and Senior CAB Notes in the first instance.  In other words, and assuming COFINA's inability to pay all outstanding amounts, an acceleration entitles the Senior CAB Notes to *pari passu* treatment with the Senior Cash Pay Notes, but cuts off any right of the Subordinate Notes to payment.

41.    Any decision by BONY to accelerate is therefore subject to the competing and conflicting interests of the different types of COFINA Notes.  Perhaps in anticipation of that conflict, Section 810 of the Resolution empowers BONY to "appoint one or more Persons to act as a co-trustee or co-trustees, or separate trustee or separate trustees (including with respect to all or any part of the Pledged Property), and to vest in such Person or Persons, in such capacity and for the benefit of the Bondowners, subject to the other provisions of this Section, such powers, duties, obligations, rights and trusts as the Trustee may consider necessary or desirable."

11

FILED: NEW YORK COUNTY CLERK 04/12/2017 04:45 PM INDEX NO. 651969/2017
NYSCEF DOC. NO. 1                                            RECEIVED NYSCEF: 04/12/2017

42.    To do so would, of course, affect BONY's go-forward remuneration. Since its appointment as Trustee, BONY has received millions of dollars in compensation—earning, on average, more than $1.2 million per year. And an election under Section 810 would, upon information and belief, reduce those fees materially.

43.    As alleged herein, BONY failed to make use of this remedial measure or to otherwise resolve its impairing conflicts of interest, and has continued to earn millions of dollars in fees for its purported role as Trustee for all COFINA Notes. BONY's divided loyalties prevented it from prudently acting for Plaintiffs when the Commonwealth and COFINA breached their covenants in the Resolution, and its driving financial self-interest prevented it from relieving Plaintiffs of the burden and damage caused by BONY's own inaction.

## IV.    BONY's Failures To Protect Plaintiffs In Response to Numerous Events of Default

44.    BONY is obligated to thoroughly investigate any possible breaches of the Resolution and, upon a determination that any such breach or default occurred, to exercise remedies necessary to protect Plaintiffs.

45.    As discussed below, BONY has consistently failed to protect Plaintiffs and to act in their best interests over the last several years. As the financial crisis in the Commonwealth deepened and COFINA and the Pledge came under constant attacks, with increasing severity, *from the Commonwealth*, with *no defense by COFINA*, BONY sat idle. BONY's failures to act have harmed and continue to severely harm Plaintiffs.

### A.    The September 9th Fiscal Plan

46.    On September 9, 2015, the Working Group for the Fiscal and Economic Recovery of Puerto Rico (the "Working Group") -- a group established and empowered by an executive order issued by former Governor Alejandro García Padilla -- published the Puerto Rico Fiscal Economic Growth Plan (the "September 9, 2015 Fiscal Plan"). That plan listed debts of the

Case:17-03283-LTS Doc#:4359-16 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 25 of 53

Commonwealth and its instrumentalities in a manner that conflated COFINA's debt obligations with the general obligations of the Commonwealth. This constituted a drastic departure from past precedent, in which the Commonwealth, recognizing that it had transferred ownership of the Dedicated SUT Revenues to COFINA, and no longer had any interest in that property, kept the debt obligations of COFINA and the Commonwealth separate in audited financial statements, government budgets, plans and models.

47. Moreover, and despite the clear pledge of the Dedicated SUT Revenues to the repayment of COFINA Notes, the September 9, 2015 Fiscal Plan referenced a possible "*clawback* of revenues supporting certain Commonwealth tax supported debt" for the benefit of *all noteholders*, including the GO Bonds. Meaning, the plan contemplated the potential for Dedicated SUT Revenues covered by the Pledge to be made available not just for COFINA Notes, but other debts as well.

48. In these ways, the September 9, 2015 Fiscal Plan, prepared and published at the request of, and with the approval of, then Governor García Padilla, on behalf of the Commonwealth, breached the Commonwealth's Covenant Not to Limit or Restrict. Moreover, COFINA's failure to counter the September 9, 2015 Fiscal Plan, and its tacit approval of same as the then-Executive Director of COFINA was a member of the Working Group itself, was a breach of COFINA's Covenant to Defend.

49. BONY was well aware of the September 9, 2015 Fiscal Plan and of the Commonwealth's and COFINA's covenant breaches related thereto.

50. In a letter dated September 24, 2015, that was shared with BONY, counsel for certain Holders informed COFINA, that the September 9, 2015 Fiscal Plan "materially misrepresent[ed] the essential nature of COFINA's indebtedness to the investing public, and

Case 17-03283-LTS Doc#4759-16 Filed 01/12/19 Entered 01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 26 of 53

materially harm[ed] COFINA and its bondholders." The letter declared further that these representations "mis[led] the public by lumping the Commonwealth's own debt together with COFINA's," improperly attempted to "consolidate assets and liabilities of COFINA with that of the Commonwealth," and accused the Commonwealth of intending for the same to "signal to the investing public at large that the Commonwealth's struggling fiscal health threatens the health of COFINA, ignoring the fact that insulation from the Commonwealth's other liabilities prompted the creation of COFINA in the first place."

51.     These misstatements, the letter explained, were inconsistent with Section 501 and 201 of the Resolution, which together "make clear that the bonds issued by COFINA are *not* obligations of the Commonwealth." More significantly, COFINA's failure to correct these misstatements constituted a breach of COFINA's Covenant to Defend in Section 705. The letter therefore demanded that COFINA "promptly cure" these misstatements, "provide the necessary assurances of bondholders under the Resolution," and "untangle the COFINA debt and revenue from that of the Commonwealth."

52.     Despite having knowledge of the September 9, 2015 Fiscal Plan, the September 24, 2015 letter, and the absence of any cure by the Commonwealth or COFINA, including after passage of 30 days following such letter, BONY failed to take any actions to enforce the corresponding Events of Default or to otherwise protect Plaintiffs from such breaches. BONY also failed, as it is required to do under the Resolution, to give notice to all Holders of such Events of Default.

**B.     The February 1, 2016 Restructuring Proposal**

53.     On February 1, 2016, the Working Group presented publicly its first restructuring proposal (the "February 1, 2016 Restructuring Proposal") which, again, listed debts of the

Case:17-03283-LTS Doc#:4359-16 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-Q Page 27 of 53

Commonwealth and its instrumentalities in a manner that conflated COFINA's debt obligations with the general obligations of the Commonwealth.

54.     The February 1, 2016 Restructuring Proposal, approved by then Governor García Padilla on behalf of the Commonwealth, was a clear breach of the Commonwealth's Covenant Not to Limit or Restrict, and COFINA's decision to allow this proposal to proceed unchallenged was a clear violation of its Covenant to Defend.

55.     In a letter dated February 8, 2016, certain Holders advised COFINA and BONY of the covenant breaches arising from the February 1, 2016 Restructuring Proposal. The letter characterized the February 1, 2016 Restructuring Proposal and the accompanying press release as the "antithesis of protecting and defending the Pledged Property for the benefit of Bondowners." Specifically, the letter took issue with, among other things, the fact that the press release (i) "includes COFINA debt service within the Commonwealth's own debt service-to-revenue and then calculates that ratio with reference to the Constitutional limits on general obligation bonds *of the Commonwealth*," and (ii) "concludes by stating the Working Group's agenda is to 'improve *the Commonwealth's* credit-worthiness.'"

56.     The letter "demand[ed] that [COFINA] immediately publish its own press release renouncing the Working Group's treatment of and misstatements about COFINA" and demanded further that COFINA "appoint independent legal and financial advisors to protect and defend COFINA's Bondowners 'against all claims and demands of all persons whomsoever,' including any actions and misstatements by COFINA's own agents who have participated in the Working Group in breach of the Resolution."

57.     Despite having knowledge of the February 1, 2016 Restructuring Proposal, the February 8, 2016 letter, and the absence of any cure by the Commonwealth or COFINA, including

15

Case 17-03283-LTS   Doc#4359-16   Filed 01/12/19   Entered 01/12/19 17:45:34   Desc:
Exhibit DX-Q2   Page 28 of 53

after passage of 30 days following such letter, BONY failed to take any actions to enforce the corresponding Events of Default or to otherwise protect Plaintiffs from such breaches. BONY also failed, as it is required to do under the Resolution, to give notice to all Holders of such Events of Default.

### C.   The 2016 Moratorium Act

58.   The Moratorium Act, enacted by the Commonwealth on April 6, 2016, empowered the Governor, by executive order, to declare "any government entity to be in a state of emergency" and, "if the executive order so provides, no payment on a covered obligation of such … government entity shall be made."

59.   Article 201(b)(ii) provided further that, "[d]uring the emergency period for any government entity," many rights and remedies would be restricted, including restrictions on the "exercise [of] any remedy, which remedy shall include any right of acceleration or termination … related to any covered obligation of such government entity, under any contract or applicable law as a result of … (A) non-payment of any obligation arising under or relating to any covered obligation of such government entity; [or] (B) breach of any condition or covenant under or related to any covered obligation of such government entity."

60.   Article 201(d) provided that "[i]f ordered by the Governor during the emergency period created by this section, the following obligations may be suspended or modified, if applicable, until the end of the covered period … (ii) *any statutory or other obligation to transfer money (or its equivalent) to pay or secure any covered obligation (or take any action in furtherance thereof);* [and] *(iv) any statutory or other obligation to ensure payment of a covered obligation as if this Act were not enacted (or take any action in furtherance thereof).*"

61.   Article 601 stated that the Moratorium Act (and its provisions allowing the suspension of payments) would "take effect immediately upon enactment" and *included COFINA*

16

in its definition of "government entity," which meant that under the terms of the statute, the Governor could suspend COFINA's payments and make the Dedicated SUT Revenues available for the Commonwealth's obligations.

62.     The Moratorium Act, therefore, radically undercut COFINA's autonomy, and was a breach of the Commonwealth's Covenant Not to Limit or Restrict. [5]

63.     In a letter dated April 6, 2016 sent to COFINA, copying BONY, counsel for certain Holders notified COFINA that the "Moratorium Act constitute[d] an anticipatory breach of section 1101(1)(i) of the [COFINA] Resolution and Bonds because [it] permits the Governor to bar COFINA from making principal or interest payments" on any COFINA Notes.

64.     The letter also advised BONY that, in addition to the "improper restriction on COFINA paying its debts, the Moratorium Act further breaches sections 1101(1)(ii) of the Resolution" because it "restricts the rights of [bond owners] to exercise remedies if the Governor issues an executive order applicable to COFINA and [by] suspending or modifying any obligations of COFINA to cause the transfer of money to pay Bonds or to ensure payment of Bonds."

65.     In connection with that same notice, the Holders reminded COFINA (and BONY) of the continued Events of Default that had *already* occurred, namely COFINA's failure to cure the defaults noticed to it on September 24, 2015 and February 8, 2016, in connection with the September 9, 2015 Fiscal Plan and the February 1, 2016 Restructuring Proposal, respectively.

66.     Despite having knowledge of the Moratorium Act, the April 6, 2016 letter, and the absence of any cure by the Commonwealth or COFINA, including after passage of 30 days

---

[5]     On January 29, 2017, the Moratorium Act was replaced by the Puerto Rico Financial Emergency and Fiscal Responsibility Act (the "Emergency Act"). The Emergency Act extended the operative provisions of the Moratorium Act, through and including May 1, 2017, which term may be extended by the Governor for three months. On information and belief, despite knowing of the severe threat the Emergency Act placed on the ability of COFINA to repay its notes, BONY did nothing to protect the Holders' interests in advance of the Emergency Act's enactment.

following such letter, BONY failed to take any actions to enforce the corresponding Events of Default or to otherwise protect Plaintiffs from such breaches. BONY also failed, as it is required to do under the Resolution, to give notice to all Holders of such Events of Default.

### D. The *GO Bondholders'* Litigations

67.     BONY's failures continued as, in the summer of 2016, attacks on COFINA's structure and go-forward viability escalated.

68.     On June 21, 2016, holders of certain GO Bonds ("GO Bondholders") commenced a litigation in the United States District Court for the Southern District of New York, No. 16 Civ. 4072, against the Commonwealth, then Governor García Padilla, the Treasury Secretary of the Commonwealth of Puerto Rico and the Director of the Office of Management and Budget of the Commonwealth of Puerto Rico (the "Jacana Lawsuit").

69.     In the action, the GO Bondholders alleged, *inter alia*, that the Dedicated SUT Revenues were "available resources" for the purposes of satisfying the GO Bonds. The complaint directly challenged the rights of COFINA and the Holders with respect to the Dedicated SUT Revenues and the Pledged Property, and alleged that the Moratorium Act was invalid because it violated the Contract Clause of the United States Constitution by purportedly failing to prioritize general obligations over, among others, obligations of COFINA. The GO Bondholders' complaint further alleged that funds transferred to COFINA, *i.e.*, the Dedicated SUT Revenues, are subject to clawback in favor of holders of GO Bonds.

70.     Remarkably, COFINA failed to take any steps to defend against such challenges, in clear violation of COFINA's Covenant to Defend. Rather, COFINA sat idly by in the wake of the GO Bondholders' allegations. Likewise, the Commonwealth's only action in the litigation, rather than advocating for the COFINA structure, was to file a meek "notice of stay" based on passage of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),

18

Case: 17-02283-LTS  Doc#:4359-16  Filed: 01/12/18  Entered: 01/12/19 17:45:34  Desc:
Exhibit DX-Q  Page 31 of 53

Pub. Law 114-187, which was enacted on June 30, 2016.[6]  (The PROMESA stay, which stays certain acts by parties until May 1, 2017, is inapplicable to this action.)[7]

71.  The Commonwealth took no substantive position in the litigation and COFINA never intervened or otherwise appeared.

72.  In a letter dated June 23, 2016, certain Holders reminded BONY that "COFINA has a clear contractual obligation to defend the Pledged Property and the Bondowners" in connection with the Jacana Litigation.  The letter, citing Sections 801 and 802 of the Resolution, also informed BONY that the "Trustee is likewise obligated to enforce the Resolution and the rights of Bondowners" and put "the Trustee on notice that there [was] a judicial challenge to COFINA's property and, pending resolution of that judicial challenge, the Trustee must demand that COFINA undertake all actions to preserve any and all property that is collateral of the [COFINA] Bondowners, including the retention of independent counsel to dispute the allegations in the Complaint."  The failure to do so, the letter added, "would result in a direct breach of the most fundamental promise in COFINA's Bond Resolution and would cause a shortfall of statutorily required amounts of pledged sales tax revenues."

---

[6]  The plaintiffs in the Jacana Litigation conceded that the lawsuit was stayed by PROMESA.  However, shortly thereafter, on July 20, 2016, certain other holders of GO Bonds commenced a similar lawsuit in the United States District Court for the District of Puerto Rico (the "Lex Claims Litigation").  Plaintiffs are part of a group of Holders that intervened as defendants in the Lex Claims Litigation, which action involves entirely different parties, facts and claims than those that are the subject of this lawsuit, and, indeed, the claims herein would not be germane to the Lex Claims Litigation.  The plaintiffs in the Lex Claims Litigation insisted that the PROMESA stay did not apply to certain claims in their second amended complaint in that lawsuit.  On February 17, 2017, the District Court ruled that the PROMESA stay did not apply to such claims, but the United States Circuit Court of Appeals for the First Circuit reversed that holding on April 4, 2017.  As such, the Lex Claims Litigation and the Jacana Litigation are presently both stayed pending expiration of the PROMESA stay on May 1, 2017.

[7]  Plaintiffs note that this action is brought solely against BONY, and not against the Commonwealth, its representatives or COFINA (as was the case in the Jacana Litigation and the Lex Claims Litigation).  Moreover, this action only seeks to redress breaches committed by BONY that have harmed Plaintiffs, for which BONY must pay damages.  Importantly, this action does not seek to collect on any obligations owed by the Commonwealth or COFINA nor to take control of or obtain any property from or of the Commonwealth or COFINA.

19

FILED: NEW YORK COUNTY CLERK 04/12/2017 01:45 PM INDEX NO. 651969/2017

NYSCEF DOC. NO. 1                                    RECEIVED NYSCEF: 04/12/2017

73.    Significantly, the letter cautioned that, "[g]iven COFINA's continuing refusal to hire independent advisors and its failure to acknowledge the existing Events of Default, the Trustee cannot sit idly by and close its eyes to the situation and how it could potentially impair more than $7 billion of Senior Bonds."

74.    Despite having knowledge of COFINA's failure to defend in the Jacana Litigation and in all other instances of attack on its structure, as alleged *supra*, and the absence of any cure by COFINA, including after passage of 30 days, BONY failed to take any actions to enforce the corresponding Event of Default or to otherwise protect Plaintiffs from such breaches. BONY also failed, as it is required to do under the Resolution, to give notice to all Holders of such Event of Default.

### E.    The February 1, 2017 Payments

75.    Starting in early 2017, Plaintiffs commenced discussions with BONY concerning upcoming February 1, 2017 payments to certain Holders, for which BONY was holding funds already received from COFINA. Plaintiffs demanded that BONY refrain from making such payments based on the many existing Events of Default and the continuing attacks by the Commonwealth and others on COFINA and its viability.

76.    Plaintiffs also demanded that BONY seek confirmation from the Commonwealth that it intends to stand by the COFINA structure.

77.    In a letter dated January 31, 2017, Plaintiffs raised concerns with BONY's historic failures to act and to protect Plaintiffs and other Holders. As of the date of that letter, BONY was in possession of at least $810 million in Dedicated SUT Revenues, and Plaintiffs demanded that BONY "temporarily refrain from using [those funds] to make any payments on the COFINA Notes -- including, without limitation, by delaying any principal or interest payments that may allegedly be due on February 1, 2017 ... -- until the Commonwealth and COFINA commit to defend the

20

Case 17-03283-LTS   Doc 4759-16   Filed 01/13/19   Entered 01/13/19 17:45:34   Desc:
Exhibit DX-Q   Page 33 of 53

COFINA structure against all challenges." Failure to do so, Plaintiffs cautioned, would constitute a clear breach of BONY's duties to the COFINA Notes, particularly in light of its "failures over the last 17 months to take necessary steps to protect the COFINA Notes and to address the Trustee's crippling conflicts of interest."

78.     Plaintiffs reminded BONY that Events of Default "have plainly occurred and are continuing under the Resolution" and that they should have caused BONY to accelerate the COFINA Notes, entitling all Senior Notes to ratable payment. "That is a fundamental protection accorded to the CAB Notes in the Resolution," Plaintiffs advised BONY, "because, otherwise, the CAB Notes would be functionally subordinated to the Cash Pay Notes – which clearly was not provided for in the Resolution."

79.     Plaintiffs also advised BONY of its inherently conflicted role. Plaintiffs stated that BONY, as "Trustee for both the CAB Notes and the Cash Pay Notes, was conflicted when it previously refused to declare Events of Default and to accelerate the COFINA Notes. And, *today the Trustee remains conflicted*, with divided loyalties, as it maintains that no Events of Default have occurred and elects not to make the Feb. 1 Payments." Significantly, Plaintiffs urged BONY that "the Trustee's conflicts require it to retain the Collected Funds, which is the only way for the Trustee to avoid prejudicing one series of COFINA Notes for the benefit of another. After all, the Trustee cannot act in the best interest of *all* COFINA Notes, while at the same time picking and choosing who to pay and when."

80.     BONY did just the opposite. On February 1, 2017, BONY distributed a massive payment to Senior and Subordinate Cash Pay Notes holders notwithstanding its actual knowledge of existing Events of Default under the Resolution and of mounting attacks on the COFINA structure. BONY made these payments intentionally, and, with knowledge of the public concerns

21

regarding COFINA's on-going viability, was aware that the disbursement would risk a drastic impairment to the Senior CAB Notes.

81.     In a letter dated February 9, 2017, Plaintiffs reiterated their request that BONY "reach out to the new administration to obtain an affirmative commitment to protect and to defend the COFINA structure." Plaintiffs cautioned that should BONY fail to seek such commitment Plaintiffs would "seek to hold it liable for any harm suffered by" Plaintiffs if BONY's "untested assumption" that the Commonwealth will protect the COFINA structure "proves to be wrong."

82.     Plaintiffs' demand was especially well-founded given that just the week before, Elias Sanchez, the Commonwealth's representative on the Oversight Board created by PROMESA, made a public statement that strongly indicated that the Commonwealth was not fully committed to the COFINA structure or to honoring the statutory transfer of ownership of the Dedicated SUT Revenues to COFINA. In press accounts, on January 25, 2017, Mr. Sanchez was quoted as saying the Commonwealth "*currently*" had no plans to disrupt the flow of revenues to COFINA -- meaning that the Commonwealth's doing so was still a possibility. Moreover, in other press accounts, on February 2, 2017, Mr. Portela, director of the Financial Advisory & Fiscal Agency Authority, the agency in charge of debt restructuring efforts on behalf of the Commonwealth, was quoted as saying "at this time, the Puerto Rico government has *no position* over which credit is more senior than the other," when asked about disputes between COFINA and the GO Bonds.

83.     Indeed, at the time, BONY was aware of another then-recent event that should have caused BONY to investigate and to demand assurances from the Commonwealth. The Emergency Act, as first proposed, contained language that could have allowed the Governor to divert and to otherwise use Dedicated SUT Revenues. While the Emergency Act was revised at the last minute

FILED: NEW YORK COUNTY CLERK
NYSCEF DOC. NO. 1

before passage to remove such language, the initial inclusion of language was so potentially damaging to COFINA and to the COFINA Notes that it should have prompted action by BONY (and, indeed, would have prompted action by any unconflicted trustee acting prudently).

84.    Upon information and belief, BONY failed to investigate further or to seek any commitments or assurances from the Commonwealth.

F.    **The Fiscal Plan**

85.    On March 13, 2017, the Commonwealth prepared and submitted to the PROMESA Oversight Board its final Fiscal Plan for Puerto Rico (the "Fiscal Plan"), which was certified by the board.

86.    The Commonwealth's "Debt sustainability" analysis in the Fiscal Plan, which purportedly calculates the *total* amount available to service the Commonwealth's debt, assumes that *all* revenues, including the Dedicated SUT Revenues, are treated the same with no regard for the COFINA structure, and also assumes that the Dedicated SUT Revenues are made available to pay general Commonwealth expenditures.  The Commonwealth then projects how much debt it could service using *all* cash flows, meaning that the Commonwealth conveys it is prepared to use *any and all* revenues, including the Dedicated SUT Revenues, to pay general Commonwealth expenditures and to fund debt service payments going forward.

87.    Moreover, the Commonwealth's "Debt sustainability" analysis in the Fiscal Plan projects that the Commonwealth will have insufficient cash flows to cover even just the annual debt service payments to the COFINA Notes.  As such, the Fiscal Plan not only proposes to use Dedicated SUT Revenues to pay other debts of the Commonwealth and its instrumentalities, but also admits that in all circumstances there will occur a default on the payments due and owing on the COFINA Notes.

23

Case:17-03283-LTS Doc#:4759-16 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-QQ Page 36 of 53

88.     The Fiscal Plan plainly constitutes a clear breach of the Commonwealth's Covenant Not to Limit or Restrict.  And, in as much as COFINA sits idly by and takes no steps to counter the Fiscal Plan and the harm it poses to COFINA and the Holders, COFINA is in breach of its Covenant to Defend.

89.     Making those breaches even more apparent, a press release issued shortly after the Fiscal Plan was certified announced that the Commonwealth was actively working with certain GO Bond holders to resolve the Lex Claims Litigation.  The complaint in that action directly attacked the rights of COFINA and its noteholders with respect to the Dedicated SUT Revenues and the Pledged Property, and alleged that those funds were subject to clawback in favor of holders of GO Bonds.  But rather than defend COFINA's statutory and constitutional separateness, the Commonwealth declined to take "a definitive position on the merits" of those crucial constitutional questions.

90.     The Commonwealth's mystifying alignment with the GO Bonds in connection with the Fiscal Plan and its vague statements concerning the Lex Claims Litigation -- combined with the long history of attacks by the Commonwealth on the COFINA structure -- provided additional bases for BONY to investigate and to demand assurances from the Commonwealth.  This development, among other things, gave a strong basis for BONY to explore the level of influence that the GO Bonds were having on the Commonwealth, and to seek to understand the reasons for and ramifications of this alignment.  Upon information and belief, BONY took no such steps to investigate or to seek necessary assurances.

91.     In a letter to BONY dated March 31, 2017, Plaintiffs informed BONY of these breaches and demanded that BONY take necessary steps to protect Plaintiffs, including by issuing notices of default and by refraining, in the interim, from making further payments on account of

Case 17-03283-LTS Doc#4359-16 Filed 01/13/19 Entered 01/13/19 17:45:34 Desc:
Exhibit DX-Q2 Page 37 of 53

the COFINA Notes.  Plaintiffs demanded confirmation by April 4, 2017, that BONY will comply with such requests.  No such confirmation was provided.

92.     BONY thus failed once more to take appropriate measures to protect Plaintiffs and others to which it owes duties.  To date, and with regard to all Events of Default, BONY has failed to prudently investigate breaches of the Resolution (such as by seeking commitments or confirmations from the Commonwealth), failed to provide necessary notices of Events of Default to all Holders, and failed to either accelerate the COFINA Notes or to refrain from making payments to Holders until more certainty exists concerning COFINA's future.  BONY's continued refusal to take any such action to protect Plaintiffs constitutes a grossly negligent abdication of its duties as Trustee (despite continuing to receive fees to perform such duties).

## V.    BONY Causes Plaintiffs To Suffer Millions of Dollars in Damages

93.     Numerous Events of Default exist under the Resolution and yet BONY has taken no actions to protect Plaintiffs from such defaults, including by accelerating the COFINA Notes or taking any other remedial measures.  Meanwhile, BONY operates under severe conflicts of interest that allow it to receive higher fees as it represents all COFINA Notes, but prevent it from properly carrying out its duties and responsibilities to Plaintiffs.

94.     Since its appointment in 2007, BONY has received, on average, over $1.2 million in fees per year for its role as Trustee for all COFINA Notes under the Resolution.  Should a separate or co-trustee be appointed, BONY's fees would, upon information and belief, drop precipitously.  BONY's conflict therefore has, upon information and belief, persisted by reason of its own financial self-interest, and Plaintiffs have been harmed as a result.

95.     Plaintiffs' damages caused by BONY's conduct include, without limitation, amounts that Plaintiffs would have received on account of their Senior CAB Notes if, since the

Case 1:17-03283-LTS   Doc#4759-16   Filed 01/12/19   Entered 01/12/19 07:45:34   Desc:
Exhibit DX-Q2   Page 38 of 53

earliest Event of Default alleged here, funds held by BONY would have been allocated to, and

shared ratably by, all Senior Notes, to the exclusion of Subordinate Notes.

## FIRST CAUSE OF ACTION
### Negligence/Breach of Trust

96.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding

paragraphs above as if fully set forth herein.

97.     BONY owed Plaintiffs extra-contractual duties to perform its obligations with due

care and avoid conflicts of interest.  BONY's acts and omissions breached those duties in negligent

fashion by, among other things, (i) failing to prudently investigate potential Events of Default; (ii)

becoming subject to conflicts of interest in its role as Trustee and failing to eliminate those conflicts

by, among other things, appointing separate or co-trustees under the Resolution; and (iii) otherwise

exercising its discretion arbitrarily and in bad faith.

98.     BONY's grossly negligent breach of those duties has directly and proximately

caused damage to Plaintiffs by impairing Plaintiffs' ability to fully collect the amounts owed under

the Resolution, including, without limitation, by depriving them of accelerated disbursements

and/or improperly releasing collected funds and thereby reducing the amount available to Plaintiffs

upon a future monetary default and acceleration.

99.     Plaintiffs are entitled to an equitable order that BONY must appoint separate

Trustees.

## SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty

100.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding

paragraphs above as if fully set forth herein.

101.     Under New York law, after the occurrence of breaches that could ripen into Events

of Default, BONY owed a fiduciary duty to Plaintiffs.  These fiduciary obligations included,

26

Case 17-03283-LTS Doc 4759-16 Filed 01/12/19 Entered 01/12/19 17:45:34 Desc
Exhibit DX-Q Page 39 of 53

without limitation, duties to protect the interests of Plaintiffs, investigate both its own conflict of interests and potential Events of Default, and make prudent decisions concerning the exercise of appropriate remedies, whether contractual or extra-contractual, to address the same.

102.     BONY breached its fiduciary duties by, among other things, (i) failing to properly investigate and remedy its own conflicts of interest; (ii) failing to properly investigate potential Events of Default including, but not limited to, those alleged herein; (iii) failing to either accelerate the COFINA Notes or withhold payments to Senior Cash Pay Notes and Subordinate Cash Pay Notes pending an investigation into the ongoing Events of Default and/or receipt of adequate commitments from the Commonwealth and COFINA; and (iv) otherwise failing to act in the best interest of Plaintiffs or to protect their interests.

103.     BONY's material breaches of the Resolution have directly and proximately caused damage to Plaintiffs by impairing Plaintiffs' ability to fully collect the amounts owed under the Resolution, including, without limitation, by depriving them of accelerated disbursements and/or improperly releasing collected funds and thereby reducing the amount available to Plaintiffs upon a future monetary default and acceleration.

## THIRD CAUSE OF ACTION
### Waste

104.     Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

105.     BONY owed a duty to Plaintiffs to act in good faith, avoid conflicts of interest, and exercise all powers under the Resolution prudently to protect Plaintiffs.

106.     As alleged herein, Plaintiffs notified BONY that, because of the ongoing Events of Default, made worse by BONY's own conflicts of interest, it should refrain from disbursing payments to Cash Pay Notes pending BONY's investigation into the Events of Default or receipt

Case 1:17-03283-LTS   Doc#4759-16   Filed 01/13/19   Entered 01/13/19 17:45:34   Desc:
Exhibit DX-Q   Page 40 of 53

from either the Commonwealth or COFINA of adequate commitments. Notwithstanding that notice, on February 1, 2017 and at all other points alleged herein, BONY intentionally distributed payments to Cash Pay Notes despite its knowledge that such disbursements would impair Senior CAB Notes.

107. All such disbursements, and particularly the disbursement made on February 1, 2017, directly and materially impaired Plaintiffs' Senior CAB Notes.

108. BONY's impairment of Plaintiffs' Senior CAB Notes directly and proximately caused damage to Plaintiffs by impairing Plaintiffs' ability to fully collect the amounts owed under the Resolution, including, without limitation, by knowingly and wrongfully releasing collected funds and thereby reducing the amount available to Plaintiffs upon a future monetary default and acceleration.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**

109. Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

110. The Resolution is a valid contract between BONY, in its capacity as Trustee, and COFINA.

111. As owner of COFINA Notes, Plaintiffs are beneficiaries of the Resolution and an intended third-party beneficiary of the same. Plaintiffs performed their obligations under the Resolution and are entitled to enforce BONY's performance as Trustee.

112. An Event of Default occurred as early September 9, 2015, and, as described above, numerous other related Events of Default occurred over the following eighteen (18) months. BONY and its responsible officers had and continue to have actual notice that Events of Default occurred.

28

Case:17-03283-LTS Doc#:4759-16 Filed:01/13/19 Entered:01/13/19 17:45:34 Desc:
Exhibit DX-Q Page 41 of 53

113.   BONY breached the Resolution by, among other things, failing to provide Plaintiffs, with notice of such Events of Default, as it was required to do under Section 1110 of the Resolution.

114.   BONY's breaches constituted gross negligence and/or willful misconduct and directly and proximately caused Plaintiffs to suffer damages, including, at minimum, nominal damages.

### FIFTH CAUSE OF ACTION
### Breach of the Implied Covenant

115.   Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

116.   At all relevant times, including after the Events of Default discussed herein, BONY owed Plaintiffs, as express intended third-party beneficiaries under the Resolution, a duty of good faith and fair dealing that required BONY to ensure that it did not, by act or omission, injure Plaintiffs' rights to receive the benefits and protections provided for under the Resolution.

117.   BONY materially breached its duty of good faith and fair dealing under the Resolution and related implied covenants by, among other things, (i) failing in bad faith to prudently investigate potential Events of Default; (ii) failing to either accelerate the COFINA Notes or withhold payments to Cash Pay Notes pending an investigation into the ongoing Events of Default and/or receipt of adequate commitments from the Commonwealth and COFINA; and (iii) otherwise exercising its discretion arbitrarily and in bad faith under the Resolution.

118.   BONY's breaches of those implied covenants have directly and proximately caused damage to Plaintiffs by impairing Plaintiffs' ability to fully collect the amounts owed under the Resolution, including, without limitation, by depriving them of accelerated disbursements and/or

Case:17-03283-LTS Doc#:4759-16 Filed:01/13/19 Entered:01/13/19 17:45:34 Desc:
Exhibit DX-Q-4 Page 42 of 53

improperly releasing collected funds and thereby reducing the amount available to Plaintiffs upon a future monetary default and acceleration.

## SIXTH CAUSE OF ACTION
### Declaratory Judgment

119.    Plaintiffs repeat and reallege each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

120.    As alleged herein, actual and justiciable controversies exist between the parties with respect to the rights, duties and obligations of the parties due and owing under New York law and the Resolution.

121.    In addition to, and in the alternative of, their other claims for damages asserted herein, Plaintiffs are entitled to a declaratory judgment declaring, *inter alia*, that:

    a.  BONY breached its duties to Plaintiffs by (i) failing to prudently investigate potential Events of Default; (ii) becoming subject to conflicts of interest in its role as Trustee and failing to eliminate those conflicts by, among other things, appointing separate or co-trustees under the Resolution; and (iii) otherwise exercising its discretion arbitrarily and in bad faith; and that

    b.  BONY breached its fiduciary duties owed to Plaintiffs by (i) failing to properly investigate and remedy its own conflicts of interest; (ii) failing to properly investigate potential Events of Default; (iii) failing to either accelerate the COFINA Notes or withhold payments to Cash Pay Notes pending an investigation into the ongoing Events of Default and/or receipt of adequate commitments from the Commonwealth and COFINA; and (iv) otherwise failing to act in the best interest of Plaintiffs or to protect their interests; and that

Case 17-03283-LTS   Doc#4759-16   Filed 01/13/19   Entered 01/13/19 17:45:34   Desc:
Exhibit DX Q   Page 43 of 53

c.    BONY committed waste by intentionally distributing, on February 1, 2017 and at all other points alleged herein, payments to Cash Pay Notes despite its knowledge that such disbursements would impair Senior CAB Notes and materially impairing Plaintiffs' Senior CAB Notes as a result; and that

d.    BONY breached the Resolution by failing to provide Plaintiffs with notice of Events of Default, as it was required to do under Section 1110 of the Resolution; and that

e.    BONY breached its duty of good faith and fair dealing under the Resolution and related implied covenants by (i) failing in bad faith to prudently investigate potential Events of Default, (ii) failing to either accelerate the COFINA Notes or withhold payments to Cash Pay Notes pending an investigation into the ongoing Events of Default and/or receipt of adequate commitments from the Commonwealth and COFINA, and (iii) otherwise exercising its discretion arbitrarily and in bad faith under the Resolution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs demand judgment against BONY as follows:

(a)    Awarding compensatory and/or equitable relief in favor of Plaintiffs against BONY for breaches of its contractual and fiduciary duties, its gross negligence and ordinary negligence in an amount to be proven at trial; and

(b)    Nominal damages for its breach of contract claim; and

(c)    A declaration that BONY suffers from a conflict of interest under New York law and an order that BONY must appoint separate Trustees;

(d)    A declaration by this Court that BONY, in the manner alleged herein, (i) breached its fiduciary duties to Plaintiffs; (ii) disbursed funds in a manner constituting waste; (iii) breached

Case 17-02283-kTG   Doc#4759-16   Filed 01/13/19   Entered 01/13/19 17:45:34   Desc:
Exhibit DX-Q   Page 44 of 53

the Resolution; and (iv) breached the covenant of good faith and fair dealing implied in the

Resolution; and

(e)     Such other and further relief as the Court may deem just and proper.


Dated: New York, New York
       April 12, 2017

                                        KASOWITZ BENSON TORRES LLP

                                        By: _____
                                        Kenneth R. David (kdavid@kasowitz.com)
                                        Daniel A. Fliman (dfliman@kasowitz.com)
                                        Ryan P. Montefusco (rmontefusco@kasowitz.com)

                                        1633 Broadway
                                        New York, New York 10019
                                        (212) 506-1700

                                        *Attorneys for Plaintiffs*

# REQUEST FOR JUDICIAL INTERVENTION
UCS-840  (7/2012)

Supreme **COURT, COUNTY OF** New York

**Index No:** 651969/2017          **Date Index Issued:** 04/12/17

| For Court Clerk Use Only |
| --- |
| IAS Entry Date |
| |
| Judge Assigned |
| |
| RJI Date |

### CAPTION: Enter the complete case caption. Do not use et al or et ano. If more space is required, attach a caption rider sheet.

WHITEBOX MULTI-STRATEGY PARTNERS, L.P., WHITEBOX ASYMMETRIC PARTNERS, L.P., WHITEBOX INSTITUTIONAL PARTNERS, L.P., and PANDORA SELECT PARTNERS, L.P.,

Plaintiff(s)/Petitioner(s)

-against-

BANK OF NEW YORK MELLON CORPORATION,

Defendant(s)/Respondent(s)

### NATURE OF ACTION OR PROCEEDING: Check ONE box only and specify where indicated.

**MATRIMONIAL**

○ Contested

**NOTE:** For all Matrimonial actions where the parties have children under the age of 18, complete and attach the MATRIMONIAL RJI Addendum.
For Uncontested Matrimonial actions, use RJI form UD-13.

**TORTS**

○ Asbestos
○ Breast Implant
○ Environmental: _____ (specify)
○ Medical, Dental, or Podiatric Malpractice
○ Motor Vehicle
○ Products Liability: _____ (specify)
○ Other Negligence: _____ (specify)
○ Other Professional Malpractice: _____ (specify)
○ Other Tort: _____ (specify)

**OTHER MATTERS**

○ Certificate of Incorporation/Dissolution    [see NOTE under Commercial]
○ Emergency Medical Treatment
○ Habeas Corpus
○ Local Court Appeal
○ Mechanic's Lien
○ Name Change
○ Pistol Permit Revocation Hearing
○ Sale or Finance of Religious/Not-for-Profit Property
○ Other: _____ (specify)

**COMMERCIAL**

○ Business Entity (including corporations, partnerships, LLCs, etc.)
◉ Contract
○ Insurance (where insurer is a party, except arbitration)
○ UCC (including sales, negotiable instruments)
○ Other Commercial: _____ (specify)

**NOTE:** For Commercial Division assignment requests [22 NYCRR § 202.70(d)], complete and attach the COMMERCIAL DIV RJI Addendum.

**REAL PROPERTY:** How many properties does the application include? ___

○ Condemnation
○ Mortgage Foreclosure (specify):   ○ Residential   ○ Commercial
Property Address: _____
                  Street Address    City    State    Zip

**NOTE:** For Mortgage Foreclosure actions involving a one- to four-family, owner-occupied, residential property, or an owner-occupied condominium, complete and attach the FORECLOSURE RJI Addendum.

○ Tax Certiorari - Section: _____ Block: _____ Lot: _____
○ Tax Foreclosure
○ Other Real Property: _____ (specify)

**SPECIAL PROCEEDINGS**

○ CPLR Article 75 (Arbitration)    [see NOTE under Commercial]
○ CPLR Article 78 (Body or Officer)
○ Election Law
○ MHL Article 9.60 (Kendra's Law)
○ MHL Article 10 (Sex Offender Confinement-Initial)
○ MHL Article 10 (Sex Offender Confinement-Review)
○ MHL Article 81 (Guardianship)
○ Other Mental Hygiene: _____ (specify)
○ Other Special Proceeding: _____ (specify)

### STATUS OF ACTION OR PROCEEDING: Answer YES or NO for EVERY question AND enter additional information where indicated.

| | YES | NO | |
| --- | --- | --- | --- |
| Has a summons and complaint or summons w/notice been filed? | ◉ | ○ | If yes, date filed: 04/12/2017 |
| Has a summons and complaint or summons w/notice been served? | ○ | ◉ | If yes, date served: _____ |
| Is this action/proceeding being filed post-judgment? | ○ | ◉ | If yes, judgment date: _____ |

FILED: NEW YORK COUNTY CLERK 04/12/2017 01:00 PM INDEX NO. 651969/2017
NYSCEF DOC. NO. 2                                                    RECEIVED NYSCEF: 04/12/2017

## NATURE OF JUDICIAL INTERVENTION: Check ONE box only AND enter additional information where indicated.

- ○ Infant's Compromise
- ○ Note of Issue and/or Certificate of Readiness
- ○ Notice of Medical, Dental, or Podiatric Malpractice     Date Issue Joined: _____
- ○ Notice of Motion                    Relief Sought: _____    Return Date: _____
- ○ Notice of Petition                  Relief Sought: _____    Return Date: _____
- ○ Order to Show Cause                 Relief Sought: _____    Return Date: _____
- ○ Other Ex Parte Application          Relief Sought: _____
- ○ Poor Person Application
- ○ Request for Preliminary Conference
- ○ Residential Mortgage Foreclosure Settlement Conference
- ○ Writ of Habeas Corpus
- ● Other (specify): Assignment to the Commercial Division

## RELATED CASES: List any related actions. For Matrimonial actions, include any related criminal and/or Family Court cases. If additional space is required, complete and attach the RJI Addendum. If none, leave blank.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |
|  |  |  |  |  |

## PARTIES: For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in space provided. If additional space is required, complete and attach the RJI Addendum.

| Un-Rep | Parties: List parties in caption order and indicate party role(s) (e.g. defendant; 3rd-party plaintiff). | Attorneys and/or Unrepresented Litigants: Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case. For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N) | Insurance Carrier(s) |
|---|---|---|---|---|
| ☐ | Whitebox Multi-Strategy Partners, L.P. — Last Name; First Name; Primary Role: Plaintiff; Secondary Role (if any): | David — Last Name; Kenneth — First Name; Kasowitz Benson Torres LLP — Firm Name; 1633 Broadway — Street Address; New York — City; New York — State; 10019 — Zip; +1 (212) 506-1700 — Phone; +1 (212) 506-1800 — Fax; kdavid@kasowitz.com — e-mail | ○ YES  ● NO |  |
| ☐ | Whitebox Assymmetric Partners, L.P. — Last Name; First Name; Primary Role: Plaintiff; Secondary Role (if any): | David — Last Name; Kenneth — First Name; Kasowitz Benson Torres LLP — Firm Name; 1633 Broadway — Street Address; New York — City; New York — State; 10019 — Zip; +1 (212) 506-1700 — Phone; +1 (212) 506-1800 — Fax; kdavid@kasowitz.com — e-mail | ○ YES  ● NO |  |
| ☐ | Whitebox Institutional Partners, L.P. — Last Name; First Name; Primary Role: Plaintiff; Secondary Role (if any): | David — Last Name; Kenneth — First Name; Kasowitz Benson Torres LLP — Firm Name; 1633 Broadway — Street Address; New York — City; New York — State; 10019 — Zip; +1 (212) 506-1700 — Phone; +1 (212) 506-1800 — Fax; kdavid@kasowitz.com — e-mail | ○ YES  ● NO |  |
| ☐ | Pandora Select Partners, L.P. — Last Name; First Name; Primary Role: Plaintiff; Secondary Role (if any): | David — Last Name; Kenneth — First Name; Kasowitz Benson Torres LLP — Firm Name; 1633 Broadway — Street Address; New York — City; New York — State; 10019 — Zip; +1 (212) 506-1700 — Phone; +1 (212) 506-1800 — Fax; kdavid@kasowitz.com — e-mail | ○ YES  ● NO |  |

I AFFIRM UNDER THE PENALTY OF PERJURY THAT, TO MY KNOWLEDGE, OTHER THAN AS NOTED ABOVE, THERE ARE AND HAVE BEEN NO RELATED ACTIONS OR PROCEEDINGS, NOR HAS A REQUEST FOR JUDICIAL INTERVENTION PREVIOUSLY BEEN FILED IN THIS ACTION OR PROCEEDING.

Dated: 04/12/2017

_____
SIGNATURE

3006574
ATTORNEY REGISTRATION NUMBER

Kenneth R. David
PRINT OR TYPE NAME

[Print Form]

Case 1:17-03283-LTS  Doc#4350-16  Filed 01/13/19  Entered 01/13/19 17:45:34  Desc
Exhibit DX-Q  Page 47 of 53

## Request for Judicial Intervention Addendum

|                 |                |               |
|-----------------|----------------|---------------|
| __Supreme__ COURT, COUNTY OF __New York__ | Index No: __651969/2017__ | |

**For use when additional space is needed to provide party or related case information.**

**PARTIES:** For parties without an attorney, check "Un-Rep" box AND enter party address, phone number and e-mail address in Attorneys' space.

| Un-Rep | Parties: List parties in caption order and indicate party role(s) (e.g. defendant; 3rd-party plaintiff). | Attorneys and/or Unrepresented Litigants: Provide attorney name, firm name, business address, phone number and e-mail address of all attorneys that have appeared in the case. For unrepresented litigants, provide address, phone number and e-mail address. | Issue Joined (Y/N): | Insurance Carrier(s): |
|---|---|---|---|---|
| [X] | Bank of New York Mellon Corporation <br> Last Name <br> First Name <br> Primary Role: <br> Defendant <br> Secondary Role (if any): | Last Name    First Name <br> Firm Name <br> One Wall Street   New York   New York   10286 <br> Street Address   City   State   Zip <br> Phone   Fax   e-mail | ◯ YES <br> ● NO | |
| [ ] | Last Name <br> First Name <br> Primary Role: <br> Secondary Role (if any): | Last Name   First Name <br> Firm Name <br> Street Address   City   State   Zip <br> Phone   Fax   e-mail | ◯ YES <br> ◯ NO | |
| [ ] | Last Name <br> First Name <br> Primary Role: <br> Secondary Role (if any): | Last Name   First Name <br> Firm Name <br> Street Address   City   State   Zip <br> Phone   Fax   e-mail | ◯ YES <br> ◯ NO | |
| [ ] | Last Name <br> First Name <br> Primary Role: <br> Secondary Role (if any): | Last Name   First Name <br> Firm Name <br> Street Address   City   State   Zip <br> Phone   Fax   e-mail | ◯ YES <br> ◯ NO | |
| [ ] | Last Name <br> First Name <br> Primary Role: <br> Secondary Role (if any): | Last Name   First Name <br> Firm Name <br> Street Address   City   State   Zip <br> Phone   Fax   e-mail | ◯ YES <br> ◯ NO | |
| [ ] | Last Name <br> First Name <br> Primary Role: <br> Secondary Role (if any): | Last Name   First Name <br> Firm Name <br> Street Address   City   State   Zip <br> Phone   Fax   e-mail | ◯ YES <br> ◯ NO | |

**RELATED CASES:** List any related actions. For Matrimonial actions, include any related criminal and/or Family Court cases.

| Case Title | Index/Case No. | Court | Judge (if assigned) | Relationship to Instant Case |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

FILED: NEW YORK COUNTY CLERK 04/12/2017 01:08 PM INDEX NO. 651969/2017
NYSCEF DOC. NO. 3                                                    RECEIVED NYSCEF: 04/12/2017

SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF New York _____ x

WHITEBOX MULTI-STRATEGY PARTNERS, L.P., et al.

                                    Plaintiff(s)/Petitioner(s)

-against-

BANK OF NEW YORK MELLON CORPORATION

                                    Defendant(s)/Respondent(s) x

UCS-840C
3/2011

Index No. __651969/2017__

RJI No. (if any) _____

**COMMERCIAL DIVISION**
Request for Judicial Intervention Addendum

**COMPLETE WHERE APPLICABLE [add additional pages if needed]:**

**Plaintiff/Petitioner's cause(s) of action [check all that apply]:**

[x] Breach of contract or fiduciary duty, fraud, misrepresentation, business tort (e.g. unfair competition), or statutory and/or common law violation where the breach or violation is alleged to arise out of business dealings (e.g. sales of assets or securities; corporate restructuring; partnership, shareholder, joint venture, and other business agreements; trade secrets; restrictive covenants; and employment agreements not including claims that principally involve alleged discriminatory practices)

[ ] Transactions governed by the Uniform Commercial Code (exclusive of those concerning individual cooperative or condominium units)

[ ] Transactions involving commercial real property, including Yellowstone injunctions and excluding actions for the payment of rent only

[ ] Shareholder derivative actions — without consideration of the monetary threshold

[ ] Commercial class actions — without consideration of the monetary threshold

[ ] Business transactions involving or arising out of dealings with commercial banks and other financial institutions

[ ] Internal affairs of business organizations

[ ] Malpractice by accountants or actuaries, and legal malpractice arising out of representation in commercial matters

[ ] Environmental insurance coverage

[ ] Commercial insurance coverage (e.g. directors and officers, errors and omissions, and business interruption coverage)

[ ] Dissolution of corporations, partnerships, limited liability companies, limited liability partnerships and joint ventures — without consideration of the monetary threshold

[ ] Applications to stay or compel arbitration and affirm or disaffirm arbitration awards and related injunctive relief pursuant to CPLR Article 75 involving any of the foregoing enumerated commercial issues — without consideration of the monetary threshold

**Plaintiff/Petitioner's claim for compensatory damages [exclusive of punitive damages, interest, costs and counsel fees claimed]:**

$ in excess of $500,000 _____

**Plaintiff/Petitioner's claim for equitable or declaratory relief [brief description]:**

Plaintiffs seek declarations that, as specified in the complaint, Bank of New York Mellon Corporation ("BONY") breached duties owed to Plaintiffs pursuant to contract and New York law. Plaintiffs also seek an order requiring, as specified in the complaint, BONY to appoint separate trustees under the same contract.

**Defendant/Respondent's counterclaim(s) [brief description, including claim for monetary relief]:**

N/A.

I REQUEST THAT THIS CASE BE ASSIGNED TO THE COMMERCIAL DIVISION. I CERTIFY THAT THE CASE MEETS THE JURISDICTIONAL REQUIREMENTS OF THE COMMERCIAL DIVISION SET FORTH IN 22 NYCRR § 202.70(a), (b) AND (c).

Dated: 04/12/2017 _____

_____
SIGNATURE

Kenneth R. David.
PRINT OR TYPE NAME

Case 17-03283-LTS   Doc 4759-16   Filed 01/13/19   Entered 01/13/19 17:45:34   Desc
Exhibit DX-Q   Page 49 of 53

SUPREME COURT OF THE STATE OF NEW YORK                    COUNTY OF NEW YORK

| | |
|---|---|
| Plaintiff / Petitioner: | **AFFIDAVIT OF SERVICE** |
| Whitebox Multi-Strategy Partners, L.P., Whitebox Asymmetric Partners, L.P., Whitebox Institutional Partners, L.P. and Pandora Select Partners, L.P. | Index No: 651969/2017 |
| Defendant / Respondent: | |
| Bank of New York Mellon Corporation | |

The undersigned being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at 1802 Echo Place, Merrick, NY 11566. That on Thu, Apr 13, 2017 at 10:52 AM at 225 Liberty Street, 21st Floor, New York, NY 10286 deponent served the within Summons, Complaint, Plaintiffs' First Requests for Production of Documents to Defendant Bank of New York Mellon Corporation, Request for Judicial Intervention, Commercial Division Request for Judicial Intervention Addendum and Notice of Commencement of Action Subject to Mandatory Electronic Filing (Received Apr 12, 2017 at 4:10 am EDT) on Bank of New York Mellon Corporation

☐ **Individual:** by delivering a true copy of each to said defendant, personally; deponent knew the person so served to be the person described as said defendant therein.

☒ **Corporation:** Bank of New York Mellon Corporation, a defendant, therein named, by delivering a true copy of each to Marcheta Boyd, personally, deponent knew said corporation so served to be the corporation described, and knew said individual to be Authorized / Paralegal thereof.

☐ **Suitable Person:** by delivering thereat, a true copy of each to _____ a person of suitable age and discretion.

☐ **Affixing to Door:** by affixing a true copy of each to the door thereof, deponent was unable with due diligence to find defendant, or a person of suitable age or discretion thereat, having called thereon; at _____

☐ **Mailing:** Deponent completed service by depositing a copy of same in a first class and certified mailing in two envelopes properly addressed at _____, in an official depository under the exclusive care and custody of the United States Postal Service within New York State. The envelopes bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the respondent. A first class and certified mailing was effected on _____. (See attached receipt and certified mailing #: _____)

☐ **Military Service:** On _____ at _____ at _____, deponent asked whether respondent was in active military service of the United States or the State of New York in any capacity whatever or is a dependent of anyone in the military and received a negative reply and that the person so served wore ordinary civilian clothes and no military uniform. The source of my information and the grounds of my belief are the conversations and observations above narrated. Upon information and belief I aver that the respondent so served is not in the military service in either New York State or the United States as that term is defined in either the New York statutes or the Federal statutes including the Act of Congress known as the "Soldiers' and Sailors' Civil Relief Act of 1940" and the New York "Soldiers' and Sailors' Civil Relief Act.

**Description:**

| | | | | |
|---|---|---|---|---|
| Age: 32 | Ethnicity: African American | | Gender: Female | Weight: 150 |
| Height: 5'6" | | Hair: Black | Eyes: | Relationship: Authorized / Paralegal |

Other   Black skin

Sworn to before me on 13th day of April 2017

_Corey Guskin_
Corey Guskin
1094475

Notary Public

JOAN GUSKIN
Notary Public, State of New York
No. 01GU6230103
Qualified in Nassau County
Commission Expires November 01, 2018

FILED: NEW YORK COUNTY CLERK 05/02/2017 11:21 A

NYSCEF DOC. NO. 6                                    RECEIVED NYSCEF: 05/02/2017

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

WHITEBOX MULTI-STRATEGY PARTNERS, L.P.,           :    Index No. 651969/17
WHITEBOX ASYMMETRIC PARTNERS, L.P.,               :
WHITEBOX INSTITUTIONAL PARTNERS, L.P., and        :
PANDORA SELECT PARTNERS, L.P.,                     :    Honorable Jeffrey K. Oing
                                                   :
                    Plaintiffs,                    :    STIPULATION AND
                                                   :    [PROPOSED] ORDER
        -against-                                  :
                                                   :
BANK OF NEW YORK MELLON CORPORATION,               :
                                                   :
                    Defendant.                     :
------------------------------------------------------------x

WHEREAS, on April 12, 2017, Plaintiffs Whitebox Multi-Strategy Partners, L.P.,

Whitebox Asymmetric Partners, L.P., Whitebox Institutional Partners, L.P., and Pandora Select

Partners, L.P. ("Plaintiffs") filed a complaint against Bank of New York Mellon Corporation

asserting claims concerning notes issued by the Puerto Rico Sales Tax Financing Corporation

(the "COFINA Notes");

WHEREAS, Plaintiffs served Bank of New York Mellon Corporation with the summons

and complaint in this action, as well as requests for the production of documents, on April 13,

2017, and filed the corresponding affidavit of service on April 18, 2017;

WHEREAS, on April 12, 2017, Plaintiffs provided copies of the summons, complaint,

and requests for the production of documents via e-mail to counsel for The Bank of New York

Mellon, the indenture trustee for the COFINA Notes (the "Trustee"), and inquired whether it

would accept service of the same on behalf of Defendant Bank of New York Mellon

Corporation;

FILED: NEW YORK COUNTY CLERK 05/02/2017 11:21

*Whitebox Multi-Strategy Partners, L.P., et al.*
*v. Bank of New York Mellon Corporation*
Index No. 651969/2017

WHEREAS, counsel for the Trustee informed Plaintiffs that The Bank of New York Mellon (a New York State chartered bank), not Bank of New York Mellon Corporation (a Delaware corporation), was the indenture trustee for the COFINA Notes;

WHEREAS, Plaintiffs and the Trustee subsequently conferred and concluded that the proper legal name for the Trustee and the defendant in this action is "The Bank of New York Mellon;"

WHEREAS, Plaintiffs wish to amend the caption to name the Trustee as the defendant in this action; and

WHEREAS, to avoid burdening the Court with unnecessary, unopposed motion practice, Plaintiffs and the Trustee agreed to stipulate to the substitution of The Bank of New York Mellon as the named defendant in this action in place of Bank of New York Mellon Corporation, and to extend the Trustee's time to respond to the complaint and document requests in this action;

IT IS HEREBY STIPULATED AND AGREED, that, subject to the Court's approval, pursuant to CPLR 305(c), the caption in this action shall be amended to name "The Bank of New York Mellon" as the defendant in the place of Bank of New York Mellon Corporation, and that all documents filed or served in this action prior to the date hereof shall be deemed to reflect that amendment; and

IT IS FURTHER STIPULATED AND AGREED, that counsel for the Trustee, on behalf of the Trustee, shall be deemed to have accepted service of the complaint, summons, and the requests for the production of documents, as of April 12, 2017, the date on which the same materials were first sent to counsel; and

*Whitebox Multi-Strategy Partners, L.P., et al.*                    Page 3 of 3
*v. Bank of New York Mellon Corporation*
Index No. 651969/2017

**IT IS FURTHER STIPULATED AND AGREED,** that the time for the Trustee to

answer, move, or otherwise respond to the complaint in this action, as well as the time to respond

to Plaintiffs' requests for the production of documents, dated April 12, 2017, is hereby extended

up to and including May 19, 2017; and

**IT IS FURTHER STIPULATED AND AGREED,** that this stipulation may be

executed in counterparts via e-mail or facsimile, each of which will be deemed to be an original

and all of which shall constitute one and the same instrument, and that this stipulation may be

filed without further notice with the Clerk of Court.

Dated:  New York, New York
        April 28, 2017

KASOWITZ BENSON TORRES LLP                      REED SMITH LLP

By: *Kenneth R. David*                          By: *David M. Schlecker*
    Kenneth R. David                                Eric A. Schaffer
    Daniel A. Fliman                                David M. Schlecker
    1633 Broadway                                   599 Lexington Avenue
    New York, NY 10019                              New York, New York 10022
    (212) 506 1700                                  (212) 521-5400

*Attorneys for Plaintiffs*                       *Attorneys for Defendant The Bank of New*
                                                 *York Mellon*

IT IS SO ORDERED:

_____              5/2/17
Hon. Jeffrey K. Oing, J.S.C.
     JEFFREY K. OING
                J.S.C.

### CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send automatic notification of such filing to all CM/ECF participants.

I also mailed a copy of the foregoing, first class postage prepaid, addressed as follows:

Kenneth R. David
Daniel A. Fliman
Ryan P. Montefusco
KASOWITZ BENSON TORRES LLP
1633 Broadway
New York, NY 10019

Dated: May 18, 2017

_____ /s/ C. Neil Gray _____
C. Neil Gray