**Hearing Date**: August 9, 2017 at 9:30 a.m. (Prevailing Eastern Time)
**Objection Deadline**: July 28, 2017 at 4:00 p.m. (Prevailing Eastern Time)
(or as otherwise specified by the Court)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

      Debtors.[1]

-------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

*[Caption continued on next page]*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

i

DX-X

```
---------------------------------------------------------x
```

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of

THE COMMONWEALTH OF PUERTO RICO

       Debtor.

```
---------------------------------------------------------x
```

PROMESA
Title III


No. 17 BK 3283-LTS

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

       as representative of

PUERTO RICO SALES TAX FINANCING
CORPORATION,

       Debtor.

```
---------------------------------------------------------x
```

PROMESA
Title III


No. 17 BK 3284-LTS

This Document Relates to:[2]
17 BK 3283; 17 BK 3284

### REVISED MOTION OF DEBTORS FOR ORDER APPROVING STIPULATION PROVIDING PROCEDURE TO RESOLVE COMMONWEALTH-COFINA DISPUTE

To the Honorable United States District Court Judge Laura Taylor Swain:

       The Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales

Tax Financing Corporation ("COFINA," and together with the Commonwealth, the "Debtors"),

by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight

Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight,

Management, and Economic Stability Act* ("PROMESA"),[3] respectfully submit this revised

motion (the "Revised Motion"), pursuant to PROMESA sections 104(b), 315(a), and

---

[2] Pursuant to Paragraph 5 of the Joint Administration Order entered in lead Case No. 17 BK 3283-LTS [ECF No. 242], this pleading will be filed in both the lead Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS.

[3] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

Case:17-03283-LTS Doc#:4759-2 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX Page 3 of 40

sections 105(a), 503(b)(3)(B), 1103(c), and 1109(b) of title 11 of the United States Code (the "Bankruptcy Code"), made applicable by PROMESA section 301(a), for entry of an order approving a stipulation in the form attached hereto as **Exhibit A** (the "Agreed Order"), approving (a) appointment of the statutory committee of unsecured claimholders appointed by the United States Trustee on June 15, 2017 (the "Creditors' Committee") to serve as the Commonwealth agent in the "Commonwealth-COFINA Dispute" (defined below); (b) appointment of [____] to serve as the COFINA agent in the Commonwealth-COFINA Dispute; and (c) approving certain procedures related thereto, to be binding on all parties in interest in the Debtors' cases. In support of this Revised Motion, the Debtors respectfully represent as follows:

## <u>Table of Contents</u>

Jurisdiction and Venue ................................................................................................ 1

Background ................................................................................................................... 1

    A.   The COFINA Bonds ........................................................................................ 2

    B.   The Commonwealth-COFINA Dispute ......................................................... 4

    C.   The Fiscal Plan ............................................................................................... 6

    D.   The Commonwealth-COFINA Procedures Motion ........................................ 7

Relief Requested .......................................................................................................... 8

Basis for Relief ............................................................................................................ 8

Proposed Procedures .................................................................................................. 12

Notice ........................................................................................................................ 18

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bird v. Crown Convenience (In re NWFX, Inc.)*,
   864 F.2d 588 (8th Cir. 1988) ........................................................................ 10

*Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.)*,
   262 F.3d 96 (2d Cir. 2001) ............................................................... 11, 21, 22

*In re Chinichian*,
   784 F.2d 1440 (9th Cir. 1986) .................................................................... 10

*In re Cooper Properties Liquidating Trust, Inc.*,
   61 B.R. 531 (Bankr. W.D. Tenn. 1986) ..................................................... 10

*In re Sunset Hollow Properties, LLC*,
   359 B.R. 366 (Bankr. D. Mass. 2007) ................................................... 11, 22

*Lex Claims, et al. v. Garcia Padilla, et al.*,
   No. 16-02374-FAB (D.P.R. July 20, 2016) ................................................. 5

*Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*,
   330 F.3d 548 (3d Cir. 2003) ................................................................. 11, 21

*Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v.*
   *Anderson*,
   390 U.S. 414 (1968) ............................................................................ 11, 24

*Puerto Rico Fiscal Agency and Financial Advisory*
   *Authority*, Act 2-2017 (Jan. 18, 2017) ................................................ 15, 27

STATUTES

11 U.S.C. §§ 105(a), 503(b)(3)(B), 1103(c), and 1109(b) ........................... 7, 11, 21

PROMESA § 101(b) ..................................................................................... 1

PROMESA § 101(d) ..................................................................................... 1

PROMESA § 104(b) ............................................................................. 1, 1, 7

PROMESA § 104(j) ....................................................................................... 1

PROMESA § 104(j) ....................................................................................... 1

PROMESA § 105(a) ................................................................................. 1, 10

PROMESA § 1103(c) ..................................................................................... 1

PROMESA § 206 ................................................................................................................ 1

PROMESA § 301 .............................................................................................................. 10

PROMESA § 301(a) ....................................................................................................... 1, 1

PROMESA § 303 ............................................................................................. 13, 25, 29

PROMESA § 304 ................................................................................................................ 1

PROMESA § 304(a) ....................................................................................................... 1, 2

PROMESA § 305 ............................................................................................. 13, 25, 29

PROMESA § 306(a) ..................................................................................................... 1, 21

PROMESA § 307(a) ..................................................................................................... 1, 21

PROMESA § 314(b) ................................................................................................... 14, 26

PROMESA § 315 ................................................................................................................ 1

PROMESA § 315(a) ........................................................................................................... 1

PROMESA § 315(b) .......................................................................................... 1, 2, 12, 15

PROMESA § 315(b) .................................................................................................... 23, 27

PROMESA § 316 .............................................................................................................. 24

PROMESA § 503(b)(3)(B) ................................................................................................. 1

## Jurisdiction and Venue

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory bases for the relief requested herein are PROMESA sections 104(b), 315(a) and Bankruptcy Code section 105(a), made applicable in the Title III Cases by PROMESA section 301(a).

## Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as covered entities under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to section 304(a) of PROMESA, commencing a case under title III thereof (the "Commonwealth's Title III Case").

8.      On May 5, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for COFINA

pursuant to PROMESA section 304(a), commencing a case under title III thereof ("COFINA's Title III Case," and, together with the Commonwealth's Title III Case, the "Title III Cases").

9. By operation of PROMESA and pursuant to section 315(b) the Oversight Board is the representative of the Commonwealth and COFINA in these Title III Cases.

10. On June 1, 2017, the Court entered an order granting the joint administration of the Commonwealth's Title III Case and COFINA's Title III Case, for procedural purposes only [Docket No. 242].

11. Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Docket No. 1], attached to the Commonwealth's title III petition.

**A. The COFINA Bonds**

12. COFINA is a statutory instrumentality of the Commonwealth. It was created by Act of July 5, 2007, No. 56-2007, 2007 P.R. Laws 173 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a–16) (as amended, "Act 56") as a related entity for the Government Development Bank (the "GDB") for the purpose of financing the payment, retirement, or defeasance of certain debt obligations of the Commonwealth outstanding as of June 30, 2006.

13. COFINA issued bonds pursuant to the Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 10, 2009 (the "2009 Resolution" or the "Resolution"). COFINA bonds that have been issued can be grouped into the following tranches: (i) Senior Current Interest Bonds; (ii) Senior Capital Appreciation Bonds; (iii) Subordinate Current Interest Bonds; and (iv) Subordinate Capital Appreciation Bonds (collectively, the "COFINA Bonds").

14. The COFINA Bonds are non-recourse bonds and are payable solely from, and secured by, a security interest granted under the 2009 Resolution in the pledged property, consisting mainly of the pledged sales and use tax (the "Pledged Sales Tax"). As of July 1, 2015, the total sales and use tax in Puerto Rico (to be allocated among the Commonwealth, municipalities, and COFINA) was increased to 11.5%.[1] COFINA's annual share of the sales and use tax is the greater of (i) a fixed amount (currently ~$750 million), which grows at 4% per year (the "Pledged Sales Tax Base Amount"), or (ii) 2.75% of the sales and use tax collected that is shared between the Commonwealth and COFINA. *See* Act of May 13, 2006, No 91-2006, § 3(a). Presently, the Pledged Sales Tax Base Amount is in excess of the 2.75% portion of the sales and use tax.[2]

15. Act 56 requires the Commonwealth's Secretary of the Treasury to deposit the first receipts of the Commonwealth Sales Tax in each fiscal year in the amount specified by the Pledged Sales Tax in a special fund held separate and apart from the Commonwealth's general fund. Act No. 56, § 2; P.R. Laws Ann. tit. 13, § 12.

16. As of July 31, 2016, there is approximately $17.3 billion of COFINA Bonds outstanding ($7.6 billion of Senior Bonds and $9.7 billion of Subordinate Bonds).

---

[1] *See* Act of Jan. 24, 2014, No. 18-2014, art. 4, § 6080.14, 2014 P.R. Laws 12. The total sales and use tax ("SUT") is divided as follows: (I) a 4.5% SUT is paid to the Commonwealth pursuant to Act of July 1, 2015, No. 101-2015, sec. 6, § 4210.01(b); (II) a 6% SUT is divided between the Commonwealth, municipalities, and COFINA pursuant to Act of Jan. 24, 2014, No. 18-2014, art. 2–3, 2014 P.R. Laws 12; and (III) 1% SUT goes directly to Puerto Rico's municipalities pursuant to Act of Jan. 24, 2014, No. 18-2014, art. 4, § 6080.14, 2014 P.R. Laws 12.

[2] *See* Financial Information and Operating Data Report (Dec. 18, 2016), at 91.

Approximately $2.6 billion of COFINA bonds are insured.[3] COFINA's debt service requirement is approximately $750 million for the fiscal year ending June 30, 2018 and is projected to grow annually.

**B. The Commonwealth-COFINA Dispute**

17.     For purposes of the Title III Cases, a dominant issue is whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt are property of the Commonwealth or COFINA under applicable law (the "Commonwealth-COFINA Dispute"). If they are property of the Commonwealth, then there may be no funds available to pay COFINA debt.[4] If they are property of COFINA, then there will be approximately $750 million less available per year to pay Commonwealth liabilities and expenses, which annual amount increases over time.

18.     The Commonwealth has issued or guaranteed approximately $17.8 billion in general obligation bond debt (the "GO Debt"). The GO Debt falls into two categories: (i) the Commonwealth's general obligation bonds ("GO Bonds"), which were issued by the Commonwealth, and are backed by a pledge of the Commonwealth's good faith, credit, and taxing power; and (ii) bonds issued by certain of the Commonwealth's public corporations, which are guaranteed by the same pledge of the Commonwealth's good faith, credit, and taxing power ("GO-Guaranteed Bonds").

---

[3] Approximately 15% of COFINA debt is insured, including 31% of Senior Bonds and 3% of Subordinated Bonds. *See* Commonwealth of Puerto Rico Fiscal Plan Appendix, dated Oct. 14, 2016 (the "Fiscal Plan Appendix (Oct. 14, 2016)") at 11.

[4] Some COFINA creditors assert that if they do not have a lien against the sales and use taxes, they would have claims against the Commonwealth.

4

19.     On July 20, 2016, certain holders of the Commonwealth's general obligation debt filed a complaint against the Commonwealth's Governor, Secretary of Treasury, and Office of Management and Budget Director seeking (a) a declaratory judgment that certain measures taken by the Commonwealth permitting transfers outside of the ordinary course or in violation of the Puerto Rico Constitution were prohibited under PROMESA, and (b) an injunction to prevent such transfers. *See Lex Claims, et al. v. Garcia Padilla*, *et al*., No. 16-02374-FAB (D.P.R. July 20, 2016) (hereinafter, "Lex Claims").

20.     Holders of the GO Debt argue, among other things, that the Puerto Rico Constitution requires the Commonwealth to pay the GO Debt ahead of any other expenditure. *Lex Claims* [Docket No. 78], at 4.  They point to Article VI, Section 8 of the Puerto Rico Constitution which provides that, if Puerto Rico's "available resources" are insufficient to meet all its appropriations, "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  P.R. Const. art. VI, § 8.  In their view, the Pledged Sales Tax is an "available resource" and COFINA was created and has issued bonds in an attempt to evade the GO Debtholders' claim on available resources and related constitutional limitations on the quantity of public debt the Commonwealth was permitted to issue.  *Lex Claims* [Docket No. 78], at 7.

21.     Holders and insurers of COFINA Bonds argue that the sales and use taxes were legislatively rendered property of COFINA from their inception, thereby eliminating any possibility the taxes may be property or available resources of the Commonwealth.  *Lex Claims* [Docket No. 232], at 30.  They point to Act of May 13, 2006, No 91-2006, 2006 P.R. Laws 246 *et seq*. (codified as amended at P.R. Laws Ann. tit. 13, § 12) (as amended, "Act 91") providing

the Pledged Sales Tax "shall [not] constitute available resources of the Commonwealth of Puerto Rico nor be available for the use of the Secretary." Act 91, § 2. They further assert that COFINA was essential in permitting the Commonwealth to access the capital markets on preferable terms.

## C. The Fiscal Plan

22. On March 13, 2017, Puerto Rico's Fiscal Agency and Financial Advisory Authority ("AAFAF") submitted a joint fiscal plan (as amended and corrected, the "Fiscal Plan") to the Oversight Board. On that date, the Oversight Board certified the Fiscal Plan subject to certain amendments.

23. Whether the funds available for debt service under the Fiscal Plan should satisfy COFINA debt, Commonwealth debt, or be divided between the two depends on which entity(s) own the Pledged Sales Tax.

24. Promptly after certification of the Fiscal Plan, the Oversight Board and the Commonwealth undertook a joint effort to formulate restructuring proposals for all major creditors based on the debt sustainability analysis in the Fiscal Plan. In March 2017, the Oversight Board and the government requested holders of GO Debt and COFINA Bonds to participate in mediation with the Oversight Board and government, in an attempt to, among other things, resolve the Commonwealth-COFINA Dispute.

25. The mediation commenced on April 13, 2017, under the auspices of former Bankruptcy Judge Allan Gropper, who was nominated by a plurality of creditors. Despite several mediation sessions and other private negotiations, no agreements were reached before the expiration of the PROMESA stay on May 1, 2017. After certain creditors commenced litigation against the Commonwealth and COFINA, the Oversight Board and the Commonwealth decided

the best path forward was to file title III cases for the Commonwealth and COFINA to protect

Puerto Rico and its citizens.

26.     The Oversight Board has not taken sides in the Commonwealth-COFINA dispute.

**D. The Commonwealth-COFINA Procedures Motion**

27.     On June 10, 2017, the Oversight Board filed the *Motion of Debtors for Order

Approving Procedure to Resolve Commonwealth-COFINA Dispute* (the "Motion") [Dkt. No.

303] to authorize a procedure to resolve the Commonwealth-COFINA Dispute in furtherance of

fulfilling its responsibilities under PROMESA.

28.     At the omnibus hearing held in San Juan, Puerto Rico on June 28, 2017 (the

"Hearing"), the Court denied the Motion without prejudice.  At the Hearing, the Court directed

the Oversight Board to seek the agreement of all interested parties to a procedure for resolving

the Commonwealth-COFINA Dispute through confidential mediation with Chief Bankruptcy

Judge Houser of the Northern District of Texas (the "Mediation"), and authorized the Oversight

Board to file a revised motion with or without unanimous support of interested parties.

29.     Since the Hearing, Chief Bankruptcy Judge Barbara Houser has worked tirelessly

with the Oversight Board and creditors to formulate procedures agreeable to many of the

interested parties.  The revised proposed procedures at issue here incorporate many of the

comments and changes proposed by the interested parties.

30.     At many creditors' request, the revised proposed procedures are embodied in the

attached stipulation (the "Stipulation"), rather than a standard motion.  Accordingly, this Revised

Motion requests that the Stipulation be approved by its being SO ORDERED.  Because the

Stipulation was being negotiated right up to the last hours to file this Revised Motion, it was not

possible to collect signatures before filing it.  Nevertheless, the Stipulation has always provided

and contemplated that if SO ORDERED, it would be binding on all signatories (the "Signatories") and other parties in interest.

## Relief Requested

31.     By this Revised Motion, pursuant to PROMESA sections 104(b), 315(a), and Bankruptcy Code sections 105(a), 503(b)(3)(B), 1103(c), and 1109(b), the Debtors request that the Stipulation be SO ORDERED.   As explained below, the Stipulation appoints a Commonwealth Agent and COFINA Agent to litigate, mediate, and/or settle the Commonwealth-COFINA Dispute, and provides a procedure and timeline for the Agents to consult with creditors of their respective debtors.

## Basis for Relief

32.     The Oversight Board, as representative of the Commonwealth and COFINA, submits this Revised Motion in the interest of creating a fair, transparent, and efficient structure for resolving the Commonwealth-COFINA Dispute.   At the outset of these Title III Cases, counsel for the Oversight Board brought to the Court's attention the importance of the Commonwealth-COFINA Dispute and the procedural efforts to resolve it.   The Court expressed at that time that "transparency is important in these proceedings. And so a method that, if these matters are controversial, will make the steps and the issues as transparent as possible is appropriate."  May 17, 20-17 Hr'g Tr. 63:5-9 [Docket No. 207].

33.     The numbers clearly illustrate the importance of resolving the Commonwealth-COFINA Dispute.   Of the approximately $74 billion in aggregate debt owed by the Commonwealth, the GO Debt and COFINA Bonds together account for approximately 55% of the total bond debt to be restructured.   The outcome of the Commonwealth-COFINA Dispute will weigh heavily on the relative recoveries of the debt holders of COFINA and the Commonwealth.   The debt service on the COFINA Bonds alone is estimated to be approximately

$750 million in fiscal year 2017, and is projected to grow each fiscal year. On the other hand, the Fiscal Plan contemplates an average of $787 million in available funds for debt service. Should the Pledged Sales Taxes be determined to be property of COFINA, very little or no funds will be projected to be available for debt service at the Commonwealth, and vice versa. The Oversight Board is endeavoring to spearhead initiatives to grow investments in the Commonwealth to expand the pie for everyone, but new initiatives take time to generate results.

34. Time is of the essence to resolve the Commonwealth-COFINA Dispute because, if the Commonwealth is not entitled to any of the Pledged Sales Taxes,[5] it may, absent borrowing or further slashing expenses to a counterproductive extent, face acute cash management issues beginning December 15, 2017. If there is no settlement or final adjudication as to the Commonwealth-COFINA Dispute by December 15, 2017, the Commonwealth may need to borrow funds from COFINA to fund the Commonwealth's operating budget.

35. Further, until a resolution is reached on this gating issue, it is far less feasible for the Oversight Board to negotiate a consensual title III plan of adjustment for the Commonwealth and COFINA or any of their other Debtor-affiliates.

36. PROMESA grants the Oversight Board the power to delegate its authority to agents. Specifically, section 104(b) provides that "[a]ny member or agent of the Oversight Board may, if authorized by the Oversight Board, take any action that the Oversight Board is authorized to take by this section." PROMESA § 104(b).

37. PROMESA section 315(a) provides the Oversight Board with the power to take any action necessary to prosecute the Title III Cases. *See* PROMESA § 315(a) ("For the

---

[5] The Pledged Sales Tax relates solely to COFINA's potential share of the 6% SUT allocated to the Commonwealth, municipalities, and COFINA by Act of Jan. 24, 2014. Even if the Pledged Sales Tax is found to be valid, the Commonwealth will receive any remaining revenues from the 6% SUT collections.

9

purposes of this title, the Oversight Board may take any action necessary on behalf of the debtor to prosecute the case of the debtor . . .").  Given the importance of the Commonwealth-COFINA Dispute to Puerto Rico's overall restructuring, it is prudent to establish an independent debtor representative for each of the Commonwealth and COFINA to fully advocate, at arm's length, on behalf of each Debtor to reach a fair resolution.

38.    Congress mandated that the Oversight Board be the representative of every title III debtor, notwithstanding that it was self-evident that the title III debtors conduct thousands of transactions among themselves, creating significant claims among them.    Given the extraordinary magnitude of the Commonwealth-COFINA dispute, the proposed procedure submitted to the Court works within the framework that Congress contemplated: ensuring that each of the Debtors' (and their respective creditors') rights are protected and independently represented, while making sure that the Oversight Board remains in control of the overall restructuring of the Commonwealth and its instrumentalities.

39.    PROMESA section 301 makes applicable Bankruptcy Code section 105(a) to title III cases.  Section 105(a) provides, in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  Under section 105(a), the Court has expansive equitable powers to fashion any order or decree that carries out the statute.  *See, e.g., In re Chinichian*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Bird v. Crown Convenience (In re NWFX, Inc.)*, 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); *In re Cooper Properties Liquidating Trust, Inc.*, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("[T]he Bankruptcy Court is one of equity and as such it has a

duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

40.     With respect to the appointment of the Commonwealth Agent (as defined below), Bankruptcy Code sections 105(a), 503(b)(3)(B), 1103(c), and 1109(b) permit the Oversight Board to consensually grant standing to the Creditors' Committee, when necessary and beneficial to do so. *See Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.)*, 262 F.3d 96 (2d Cir. 2001) (setting forth test for consensual grant of derivative standing); *see generally Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (court may authorize creditors' committee to recover property for the benefit of the debtor's estate); *accord In re Sunset Hollow Properties, LLC*, 359 B.R. 366, 383 (Bankr. D. Mass. 2007) (approving of "standing derived from the [] debtor passed on to its Creditors' Committee" and citing with approval *Commodore Int'l Ltd. v. Gould et al, (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 98 (2d Cir. 2001) ("a debtor in possession may stipulate to representation by an unsecured creditors' committee 'so long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial.'")).

41.     After discussions with representatives of different types of COFINA creditors and Commonwealth creditors, it became evident the senior and subordinated COFINA creditors were concerned about which type of COFINA creditor the COFINA Agent (defined below) may try to serve.  To ameliorate that concern, the Oversight Board proposes that each Agent be instructed to assess settlements from the viewpoint of maximizing the result for the Debtor the Agent represents, as opposed to maximizing it for a particular type of creditor of each Debtor.  This is consistent with the settlement framework espoused by the United States Supreme Court in

11

*Protective Committee for Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390
U.S. 414, 424-425 (1968).

## Proposed Procedures

42.     The Stipulation provides the following procedures (the "Proposed Procedures") to
resolve the Commonwealth-COFINA Dispute:

a.     The Oversight Board, as representative of title III debtor Commonwealth of
Puerto Rico pursuant to PROMESA section 315(b), authorizes the Creditors'
Committee to serve as the Commonwealth representative to litigate and/or settle
the Commonwealth-COFINA Dispute on behalf of the Commonwealth (the
"Commonwealth Agent").

b.     The Oversight Board, as representative of title III debtor COFINA pursuant to
PROMESA section 315(b), authorizes [_____] to serve as the
COFINA representative to litigate and/or settle the Commonwealth-COFINA
Dispute on behalf of COFINA (the "COFINA Agent").

c.     Solely in respect of settlement discussions, the Commonwealth shall have two
creditor representatives (the "Commonwealth Creditor Representatives")
appointed as follows—

i.     One Commonwealth Creditor Representative shall be selected by the Ad
Hoc Group of GO Bondholders and Assured Guaranty Corp. (together,
"AGO"); [6] and

ii.     One Commonwealth Creditor Representative shall be the Official
Committee of Retirees;

d.     Each of the Commonwealth Agent and the COFINA Agent (each, an "Agent")
shall be entitled to retain legal and other professionals it reasonably deems
appropriate.  The COFINA Agent shall retain the law firm [_____],
with the matter led by [_____], to serve as its counsel.  The
Creditors' Committee's retained advisors, the COFINA Agent and its retained
advisors, and the Commonwealth Creditor Representatives shall be compensated
by the Debtor on whose behalf they are acting, in conformity with PROMESA

---

[6] If the Ad Hoc GO Group of GO bondholders becomes a Signatory, the following shall be added
to paragraph 4.c.(i) of the Stipulation:

For the avoidance of doubt, the Commonwealth Creditor Representatives
that are not statutory committees shall not, by virtue of their selection for
such position or their participation in settlement discussions, take on any
duty to refrain from trading any securities (or derivatives of securities),
provided, however, that nothing herein exempts any person or entity from
compliance with all applicable securities laws.

12

section 316 and any interim compensation procedures ordered by the Court; and in the case of counsel for the Creditors' Committee and counsel for the Official Committee of Retirees, the order of this Court authorizing the retention of such counsel.  For the avoidance of doubt, the Commonwealth Creditor Representative selected by the Ad Hoc Group of GO Bondholders and AGO shall be an individual.[7]  Such individual shall not be authorized to retain legal or other professionals at the expense of the Commonwealth to assist him/her in carrying out his/her functions in the Agreed Order, but the individual shall be compensated for his/her time and reasonable expenses.  The Official Committee of Retirees shall be entitled to compensation of its advisors, but not to compensation for its members' time.

e.  By no later than ten (10) days after the Agreed Order is so ordered, the Agents shall meet and confer regarding the time and form of commencement of litigation to resolve the Commonwealth-COFINA Dispute.  In advance of the commencement of such litigation, the Agents, the Oversight Board, AAFAF, and the Permitted Intervenors (as defined below) shall agree to a schedule constructed to enable the Court to rule, on a final basis, on the Commonwealth-COFINA Dispute, on or before December 15, 2017, unless extended by the Court, for cause, *sua sponte,* or upon application of any of the Signatories, in the absence of a prior settlement (the "Resolution Date"); provided, that, if the parties do not agree on a schedule within 15 days after entry of the Agreed Order, the Agents may together or separately seek approval from the Court by motion upon shortened notice of a proposed schedule.

f.  Each Agent shall have a duty of good faith, care, and loyalty to the Debtor the Agent represents.  In furtherance of such duties, each Agent shall, with the advice and assistance of counsel, endeavor to the best of the Agent's ability under the circumstances to litigate and negotiate from the perspective of what result is best for the Debtor the Agent represents, as opposed to what result is best for any particular type of creditor of the Debtor the Agent represents.  If the Agents negotiate a settlement, they should be guided by *Protective Committee of Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).  Neither the Agent nor its professionals (in their capacities as professionals to the Agent) shall litigate, nor attempt to negotiate, or participate in the mediation of, any of the rights of any bondholder versus another bondholder under the COFINA Bond Resolution, or any bondholder versus an insurer of such bonds.  Each Agent shall have the rights of its respective debtor solely in respect of the conduct of the litigation and settlement of the Commonwealth-COFINA Dispute.  In connection with fulfilling its duties hereunder, the Agent shall consult with the major creditor constituencies of the Debtor it represents and any Permitted Intervenors that intervene on that Agent's side of the Commonwealth-

---

[7] If the Ad Hoc GO Group of GO bondholders becomes a Signatory, the Commonwealth Creditor Representative selected by the Ad Hoc Group of GO Bondholders and Assured Guaranty Corp. may be an individual, group, or committee.  If it is a group or committee, its compensation shall not exceed compensation for the time of one individual.

13

COFINA Dispute.[8]  In agreeing to the Stipulation, no Signatory waives any right to object to a settlement negotiated by the Agent on any ground, including that such settlement is a denial of adequate protection or other right that may be asserted by such objector.  Each Agent shall have access to any information of the Debtor it represents reasonably necessary to the Agent performing its duties in resolving the Commonwealth-COFINA Dispute; provided that any objections of the Debtors may be resolved by the mediators.  For the avoidance of doubt, this does not include access to information of the Oversight Board.  To the extent a Debtor provides privileged information or work product, the Agent is not authorized to waive the privilege or to share the information with any third parties for any purpose, unless authorized to do so in writing by its Debtor.  Notwithstanding the foregoing, in the mediation process, (i) the Agent(s) reserve the right to seek access to relevant Commonwealth and/or Oversight Board information that is neither privileged nor work product that will allow them to understand the financial need that the Commonwealth anticipates satisfying from the Pledged Sales Taxes, and (ii) the Commonwealth and the Oversight Board reserve the right to oppose such access on any ground including that the certified fiscal plans show all financial needs to be satisfied.  The Assigned Mediator(s) (as defined in the Mediation Agreement) will work with all parties to attempt to resolve any dispute over access to this information (including disputes with respect to privilege and work product).  Nothing herein shall (a) preclude the Signatories from sharing with the Agents information obtained in the Mediation necessary to understand the financial need that the Commonwealth anticipates satisfying from the Pledged Sales Taxes, or from sharing privileged information with the Agents and Agents' counsel in furtherance of any common interest, and (b) entitle any Signatory to any privileged information or work product.

g.  In addition, each Agent may consider what result, through litigation, negotiation and mediation, will render its Debtor best able to achieve fiscal responsibility and access to the capital markets, in the judgment of each Agent.  Nothing herein waives any rights of the Commonwealth and AAFAF under PROMESA sections 303 and 305, except as provided by the Puerto Rico Constitution, the U.S. Constitution, and PROMESA.

h.  To the extent it is necessary or desirable to link a settlement to the treatment of creditors' claims in a title III plan of adjustment, the Oversight Board and AAFAF may participate in the negotiations and Mediation in an effort to reach such a settlement.

---

[8] If the Ad Hoc GO Group of GO bondholders becomes a Signatory, the following shall be added to paragraph 4.f. of the Stipulation:

To the extent not already required herein, the Commonwealth Agent shall consult with the Commonwealth Creditor Representatives, the Ad Hoc Group of GO Bondholders, and AGO (to the extent that the Ad Hoc Group of GO Bondholders and AGO have not been selected as a Commonwealth Creditor Representative) regarding the status of negotiations with respect to settlement of the Commonwealth-COFINA dispute.

14

i. Any settlement negotiated pursuant to the protocol approved herein shall be filed with the Court by the Agents upon reaching agreement but shall only be effective upon (i) with respect to the Commonwealth, (a) approval of the Commonwealth Agent and at least one of the Commonwealth Creditor Representatives, provided, however, the Commonwealth Creditor Representatives are not authorized to negotiate any proposed settlement, but only to consent thereto, and (b)(1) this Court's approval of such settlement pursuant to a final order as to which (A) the deadline to file a notice of appeal or petition for certiorari has lapsed (including any extension provided by Bankruptcy Rule 8002(b)(1)) and no appeal or petition is pending or, (B) if the subject of a timely appeal or petition, no stay, suspension, or injunction precluding effectiveness has been granted and is continuing (a "Final Order"), or (2) confirmation of a title III plan of adjustment in the Commonwealth title III case incorporating such settlement pursuant to a Final Order, and which plan has become effective; and (ii) with respect to COFINA, confirmation of a title III plan of adjustment in the COFINA title III case incorporating such settlement pursuant to a Final Order, and which plan has become effective; *provided, however*, that, other than with respect to ensuring that such settlement is properly embodied within the title III plan of adjustment, the COFINA Agent shall not participate in the negotiations of a title III plan of adjustment in the COFINA title III case. Any settlement negotiated pursuant to the protocol approved herein shall be presented simultaneously for approval to both Commonwealth Creditor Representatives

j. If the Oversight Board determines it is impracticable to schedule a timely confirmation hearing on a Commonwealth plan of adjustment embodying the proposed settlement negotiated by the Agents, then any proposed settlement negotiated by the Agents that can be implemented by the Commonwealth independently of a plan of adjustment (*e.g.*, a settlement that allocates the Pledged Sales Taxes between COFINA and the Commonwealth, but does not provide for how the Commonwealth will distribute such assets to creditors), may be submitted for this Court's approval with respect to the Commonwealth only by the Commonwealth Agent or the Oversight Board. Absent agreement of all Signatories, any proposed settlement outside a plan of adjustment for the Commonwealth shall be submitted for approval on not less than 45 days' notice, and shall be heard and if approved, approved contemporaneously with confirmation of a title III plan of adjustment in the COFINA title III case incorporating such settlement.

k. All parties in interest, including the Oversight Board and AAFAF, may appear and be heard with respect to any proposed settlement; *provided, however*, that neither the Oversight Board nor AAFAF shall have any right to contest any judgment made by the Agents pursuant to subparagraph f.

l. In the event that the Commonwealth-COFINA Dispute is resolved by a settlement developed under this protocol, the Oversight Board shall file a title III plan of adjustment for COFINA incorporating such settlement, with an accompanying disclosure statement, and the Oversight Board shall propose how COFINA's property will be distributed to COFINA creditors (consistent with the plan

15

distributions, if any, agreed to by all parties in the Mediation), no later than 45 days after such settlement is presented by the Agents to the Oversight Board; provided that, no hearing to consider approval of any settlement of the Commonwealth-COFINA Dispute with respect to COFINA shall occur, and objections to such settlement by COFINA's creditors and other parties in interest shall not be due, until a reasonable time after the Oversight Board files a title III plan of adjustment for COFINA, and such hearing date and objection deadline may be concurrent with the hearing date and objection deadline for the COFINA plan of adjustment. If any court of competent jurisdiction denies confirmation of the plan incorporating the settlement developed under this protocol, the Oversight Board shall use good faith efforts to file one or more amended plans, each of which incorporates such settlement, in order to comply with the confirmation requirements of section 314(b) of PROMESA; *provided*, *however*, that if the Court determines no confirmable plan for COFINA can be proposed consistent with the settlement, then the settlement shall be deemed null and void.

m. For the avoidance of doubt, the litigation or negotiation by the Agents shall not include issues other than the Commonwealth-COFINA Dispute; *provided, however,* that any resolution of the Commonwealth-COFINA Dispute implemented under a title III plan of adjustment shall be a final resolution of all issues affecting entitlements of each allowed claim against COFINA to its distributions under the plan, including with respect to the nature, validity, extent and priority of the liens pledged to secure the COFINA bonds, and may resolve all potential claims by holders of COFINA bonds against the Commonwealth, provided further that any such treatment of COFINA bondholders' claims, if any, against the Commonwealth as part of the settlement shall be on terms acceptable to the Commonwealth Agent and the Oversight Board.

n. Notwithstanding anything in the Agreed Order, the Oversight Board shall remain the only party authorized by PROMESA to propose a title III plan of adjustment, and to carry out that power and duty, the Oversight Board may, at any time, propose title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight Board, and the Oversight Board may negotiate and mediate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute; provided, however, that if the Agents reach a proposed settlement of the Commonwealth-COFINA Dispute before the Court fixes a date for a hearing on the disclosure statement of the Oversight Board's proposed plan of adjustment for COFINA, the Oversight Board shall amend its proposed disclosure statement so at the confirmation hearing on the proposed plan of adjustment for COFINA, the Agents' proposed settlement shall first be considered by the Court together with the proposed plan distributions, if any, agreed to by all parties in the Mediation, or otherwise, together with plan distributions proposed by the Oversight Board.

16

43.     Each of the creditor parties, statutory committees, and Creditor Representatives that are Signatories (the "Permitted Intervenors"), shall be authorized to intervene, in its individual capacity or as part of a group, and be heard in any litigation between the Agents to resolve the Commonwealth-COFINA Dispute without further order of the Court; *provided, however*, that the Court may impose reasonable limitations on participation by the Permitted Intervenors to avoid duplication and undue burdens on the Court.  AAFAF, as the government's agent in accordance with the *Puerto Rico Fiscal Agency and Financial Advisory Authority*, Act 2-2017 (Jan. 18, 2017) (the "AAFAF Enabling Act"), may also intervene as of right to exercise its rights to be heard under applicable law.  AAFAF shall not contravene the FOMB's statutory status as the Commonwealth's representative pursuant to PROMESA § 315(b).   Nothing herein waives the rights of any party in interest from asserting any intervenor is conflicted.  Nothing herein shall deprive AAFAF and the government of any other intervention rights they have and shall not deprive any other party in interest of any standing, intervention rights,  and other rights to appear that they have in any litigation relating to the Commonwealth-COFINA Dispute or any other litigation.  For the avoidance of doubt, the grant of intervention to any party, including the Permitted Intervenors, shall neither affect nor impair the ability of the Agents to settle the Commonwealth-COFINA Dispute in accordance with the Proposed Procedures above nor modify the standards for approval by the Court of any settlement reached by the Agents.

44.     Nothing contained in the Proposed Procedures or Agreed Order shall be deemed, asserted, or construed as an admission by any Signatory nor shall it substantively impact any party's rights, claims, defenses, or counterclaims in connection with the Commonwealth-COFINA Dispute or under the COFINA Bond Resolution.

45.     There shall be common interest and joint defense privileges for all communications (including work product shared) between or among an Agent and the Creditor Representatives or creditors of the Debtor such Agent represents.  All such communications shall be confidential and shall not be subject to discovery or other disclosure.

## Notice

46.     The Debtors have provided notice of this Revised Motion to the following parties (the "Notice Parties"): (a) the Office of the United States Trustee for the District of Puerto Rico; (b) the indenture trustees and/or agents, as applicable, for the Debtors' bonds; (c) the entities on the list of creditors holding the 20 largest unsecured claims against each Debtor; (d) the Office of the United States Attorney for the District of Puerto Rico; (e) counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority on behalf of the Governor of Puerto Rico; (f) the Puerto Rico Department of Justice; (g) the Other Interested Parties;[9] and (h) all parties filing a notice of appearance in these Title III Cases.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

*[Remainder of Page Intentionally Left Blank]*

---

[9] The "Other Interested Parties" include the following: (i) counsel to certain of the insurers and trustees of the bonds issued or guaranteed by the Debtors; and (ii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors.

Case:17-03283-LTS Doc#:4759-28 Filed:01/12/19 Entered:07/21/20 47:45:34 Desc: Main Document Page 25 of 40

WHEREFORE the Debtors respectfully request the Court SO ORDER the Stipulation and grant the Debtors such other and further relief as is just.

Dated: July 21, 2017
    San Juan, Puerto Rico

Respectfully submitted,

*/s/* Martin J. Bienenstock

Martin J. Bienenstock
Paul V. Possinger
Ehud Barak
Maja Zerjal
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for the Debtors*

*/s/* Hermann D. Bauer

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as Representative for the Debtors*

Case:17-03283-LTS Doc#:4189-1 Filed:09/21/17 Entered:09/21/17 23:27:50 Desc: Main Document Page 26 of 40

**Exhibit A**

**Stipulation and Agreed Order**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

             as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*

                Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

--------------------------------------------------------------x

[*Caption continued on next page*]

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

```
-----------------------------------------------------------x
```
In re:                                                    PROMESA
                                                          Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of                        No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO

          Debtor.
```
-----------------------------------------------------------x
```
In re:                                                    PROMESA
                                                          Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

PUERTO RICO SALES TAX FINANCING                           No. 17 BK 3284-LTS
CORPORATION,

          Debtor.
```
-----------------------------------------------------------x
```

## STIPULATION AND AGREED ORDER APPROVING
## PROCEDURE TO RESOLVE COMMONWEALTH-COFINA DISPUTE

      This stipulation and agreed order ("Stipulation") is entered into by the undersigned parties (the "Signatories") to resolve the issues raised by the *Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (the "Motion") and this Stipulation shall be noticed generally prior to consideration by the Court so the Court's ruling shall be binding on all parties in interest.[2]

---

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the Motion.

## RECITALS

**WHEREAS,** the Oversight Board filed the Motion in order to authorize a procedure to resolve the Commonwealth-COFINA Dispute in furtherance of fulfilling its responsibilities under PROMESA;

**WHEREAS**, the Court denied the Motion without prejudice at the omnibus hearing held in San Juan, Puerto Rico, on June 28, 2017 (the "Hearing");

**WHEREAS**, at the Hearing, the Court directed the Oversight Board to seek the agreement of all interested parties to a procedure for resolving the Commonwealth-COFINA Dispute through confidential mediation with Chief Bankruptcy Judge Houser of the Northern District of Texas (the "Mediation"), and authorized the Oversight Board to file a revised motion with or without unanimous support of interested parties;

**WHEREAS**, in an effort to advance the Title III Cases and facilitate the litigation or settlement of the Commonwealth-COFINA Dispute, the Signatories have agreed upon a revised procedure as set forth below and respectfully request the Court to enter this Stipulation as an agreed Order, binding on all parties in interest in the Debtors' cases.

**NOW, THEREFORE**, the Signatories agree and, upon the Court's approval, it shall be ordered and binding on all parties in interest as follows:

1.      Notice; Jurisdiction; Venue.  The Debtors provided adequate and appropriate notice of the Motion and of this Stipulation under the circumstances and no other and further notice is required.  The Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA.  Venue is proper pursuant to section 307(a) of PROMESA.

2.      Appointment Of Agents.  With respect to the appointment of the Commonwealth Agent (as defined below), Bankruptcy Code sections 105(a), 503(b)(3)(B), 1103(c), and 1109(b)

3

permit the Oversight Board to consensually grant standing to the Creditors' Committee (as defined below), when necessary and beneficial to do so (*see Commodore International, Ltd. v. Gould (In re Commodore International, Ltd.)*, 262 F.3d 96 (2d Cir. 2001) (setting forth test for consensual grant of derivative standing); *see generally Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) (court may authorize creditors' committee to recover property for the benefit of the debtor's estate); *accord In re Sunset Hollow Properties, LLC*, 359 B.R. 366, 383 (Bankr. D. Mass. 2007) (approving of "standing derived from the [] debtor passed on to its Creditors' Committee" and citing with approval *Commodore Int'l Ltd. v. Gould et al, (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 98 (2d Cir. 2001) ("a debtor in possession may stipulate to representation by an unsecured creditors' committee 'so long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial.'")).  Further, with respect to the appointment of the Commonwealth Agent and the COFINA Agent (as defined below and, together with the Commonwealth Agent, the "Agents") section 104(g) of PROMESA authorizes the Executive Director to enter into any contracts that are appropriate to carry out the Oversight Board's responsibilities under PROMESA and section 104(b) permits the appointment of an agent by the Oversight Board to take any action that the Oversight Board is authorized to take by section 104 of PROMESA.  The Signatories agree and, upon entry of the Stipulation by the Court, the Court finds, that approval of the procedures is necessary and appropriate to carry out the provisions of Title III of the Debtors' cases, the conferral of agent status on the Commonwealth Agent and COFINA Agent is (i) in the best interests of the Debtors and their respective property and (ii) necessary and beneficial to the efficient resolution of these cases, and this Stipulation constitutes a permitted contract pursuant to sections 104(b) and (g) of PROMESA.  This finding with

respect to section 104 of PROMESA is limited to the facts and circumstances presented by this Stipulation, and shall have no binding effect outside of these facts and circumstances. Solely to the extent, if any, that section 305 of PROMESA serves as a limitation on judicial power over the authority delegated to the Agents, the Oversight Board hereby consents.

3.    <u>Objections Withdrawn or Overruled</u>. All objections to the procedures approved herein by any Signatory have been withdrawn by such Signatory, subject to the explicit reservation of rights herein, or are overruled on the merits upon entry of this Stipulation by the Court; *provided, however* that nothing herein shall be deemed, asserted, or construed as an admission by any Signatory and nothing herein shall substantively impact any party's rights, claims, defenses, or counterclaims in connection with the Commonwealth-COFINA Dispute or under the COFINA Bond Resolution.

4.    <u>Procedures</u>. Upon entry by the Court of this Stipulation, and subject to paragraph 11 herein, the Oversight Board shall implement the following actions and procedures relating to this issue: Whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt (the "<u>Pledged Sales Taxes</u>") are property of the Commonwealth or COFINA under applicable law (the "<u>Commonwealth-COFINA Dispute</u>").[3]

> a.   The Oversight Board, as representative of title III debtor Commonwealth of Puerto Rico pursuant to PROMESA section 315(b), authorizes the statutory committee of unsecured claimholders appointed by the United States Trustee on June 15, 2017 (the "Creditors' Committee") to serve as the Commonwealth representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of the Commonwealth (the "<u>Commonwealth Agent</u>").
>
> b.   The Oversight Board, as representative of title III debtor COFINA pursuant to PROMESA section 315(b), authorizes _____ to serve as the COFINA

---

[3] If any creditors contend the determination of the foregoing issue requires determination of claims or defenses personal to such creditors and not owned by the Commonwealth or COFINA, the Court shall separately determine how such claims and defenses shall be adjudicated.

representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA (the "COFINA Agent").

c.  Solely in respect of settlement discussions, the Commonwealth shall have two creditor representatives (the "Commonwealth Creditor Representatives") appointed as follows—

i.   One Commonwealth Creditor Representative shall be selected by the Ad Hoc Group of GO Bondholders and Assured Guaranty Corp. ("AGO"); [4] and

ii.  One Commonwealth Creditor Representative shall be the Official Committee of Retirees;

d.  Each of the Commonwealth Agent and the COFINA Agent shall be entitled to retain legal and other professionals it reasonably deems appropriate.  The COFINA Agent shall retain the law firm _____, with the matter led by _____, to serve as its counsel.  The Creditors' Committee's retained advisors, the COFINA Agent and its retained advisors, and the Commonwealth Creditor Representatives shall be compensated by the Debtor on whose behalf they are acting, in conformity with PROMESA section 316 and any interim compensation procedures ordered by the Court; and in the case of counsel for the Creditors' Committee and counsel for the Official Committee of Retirees, the order of this Court authorizing the retention of such counsel.  For the avoidance of doubt, the Commonwealth Creditor Representative selected by the Ad Hoc Group of GO Bondholders and AGO shall be an individual.[5]  Such individual shall not be authorized to retain legal or other professionals at the expense of the Commonwealth to assist him/her in carrying out his/her functions in this Stipulation, but the individual shall be compensated for his/her time and reasonable expenses. The Official Committee of Retirees shall be entitled to compensation of its advisors, but not to compensation for its members' time.

e.  By no later than ten (10) days after this Stipulation is so ordered, the Agents shall meet and confer regarding the time and form of commencement of litigation to resolve the Commonwealth-COFINA Dispute.  In advance of the commencement

---

[4] If the Ad Hoc GO Group of GO bondholders becomes a Signatory, the following shall be added to paragraph 4.c.(i):

For the avoidance of doubt, the Commonwealth Creditor Representatives that are not statutory committees shall not, by virtue of their selection for such position or their participation in settlement discussions, take on any duty to refrain from trading any securities (or derivatives of securities), provided, however, that nothing herein exempts any person or entity from compliance with all applicable securities laws.

[5] If the Ad Hoc GO Group of GO bondholders becomes a Signatory, the Commonwealth Creditor Representative selected by the Ad Hoc Group of GO Bondholders and Assured Guaranty Corp. may be an individual, group, or committee.  If it is a group or committee, its compensation shall not exceed compensation for the time of one individual.

of such litigation, the Agents, the Oversight Board, AAFAF, and the Permitted Intervenors (as defined below) shall agree to a schedule constructed to enable the Court to rule, on a final basis, on the Commonwealth-COFINA Dispute, on or before December 15, 2017, unless extended by the Court, for cause, *sua sponte* or upon application of any of the Signatories, in the absence of a prior settlement (the "Resolution Date"); provided, that, if the parties do not agree on a schedule within 15 days after entry of this Stipulation, the Agents may together or separately seek approval from the Court by motion upon shortened notice of a proposed schedule.

f.   Each Agent shall have a duty of good faith, care, and loyalty to the Debtor the Agent represents. In furtherance of such duties, each Agent shall, with the advice and assistance of counsel, endeavor to the best of the Agent's ability under the circumstances to litigate and negotiate from the perspective of what result is best for the Debtor the Agent represents, as opposed to what result is best for any particular type of creditor of the Debtor the Agent represents. If the Agents negotiate a settlement, they should be guided by *Protective Committee of Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968). Neither the Agent nor its professionals (in their capacities as professionals to the Agent) shall litigate, nor attempt to negotiate, or participate in the mediation of, any of the rights of any bondholder versus another bondholder under the COFINA Bond Resolution, or any bondholder versus an insurer of such bonds. Each Agent shall have the rights of its respective debtor solely in respect of the conduct of the litigation and settlement of the Commonwealth-COFINA Dispute. In connection with fulfilling its duties hereunder, the Agent shall consult with the major creditor constituencies of the Debtor it represents and any Permitted Intervenors that intervene on that Agent's side of the Commonwealth-COFINA Dispute.[6] In agreeing to this Stipulation, no Signatory waives any right to object to a settlement negotiated by the Agent on any ground, including that such settlement is a denial of adequate protection or other right that may be asserted by such objector. Each Agent shall have access to any information of the Debtor it represents reasonably necessary to the Agent performing its duties in resolving the Commonwealth-COFINA Dispute; provided that any objections of the Debtors may be resolved by the mediators. For the avoidance of doubt, this does not include access to information of the Oversight Board. To the extent a Debtor provides privileged information or work product, the Agent is not authorized to waive the privilege or to share the information with any third parties

---

[6] If the Ad Hoc GO Group of GO bondholders becomes a Signatory, the following shall be added to paragraph 4.f.:

To the extent not already required herein, the Commonwealth Agent shall consult with the Commonwealth Creditor Representatives, the Ad Hoc Group of GO Bondholders, and AGO (to the extent that the Ad Hoc Group of GO Bondholders and AGO have not been selected as a Commonwealth Creditor Representative) regarding the status of negotiations with respect to settlement of the Commonwealth-COFINA dispute.

for any purpose, unless authorized to do so in writing by its Debtor. Notwithstanding the foregoing, in the mediation process, (i) the Agent(s) reserve the right to seek access to relevant Commonwealth and/or Oversight Board information that is neither privileged nor work product that will allow them to understand the financial need that the Commonwealth anticipates satisfying from the Pledged Sales Taxes, and (ii) the Commonwealth and the Oversight Board reserve the right to oppose such access on any ground including that the certified fiscal plans show all financial needs to be satisfied. The Assigned Mediator(s) (as defined in the Mediation Agreement) will work with all parties to attempt to resolve any dispute over access to this information (including disputes with respect to privilege and work product). Nothing herein shall (a) preclude the Signatories from sharing with the Agents information obtained in the Mediation necessary to understand the financial need that the Commonwealth anticipates satisfying from the Pledged Sales Taxes, or from sharing privileged information with the Agents and Agents' counsel in furtherance of any common interest, and (b) entitle any Signatory to any privileged information or work product.

g.  In addition, each Agent may consider what result, through litigation, negotiation and mediation, will render its Debtor best able to achieve fiscal responsibility and access to the capital markets, in the judgment of each Agent. Nothing herein waives any rights of the Commonwealth and AAFAF under PROMESA sections 303 and 305 subject to any limitations thereon imposed by the Puerto Rico Constitution, the U.S. Constitution, or PROMESA.

h.  To the extent it is necessary or desirable to link a settlement to the treatment of creditors' claims in a title III plan of adjustment, the Oversight Board and AAFAF may participate in the negotiations and Mediation in an effort to reach such a settlement.

i.  Any settlement negotiated pursuant to the protocol approved herein shall be filed with the Court by the Agents upon reaching agreement but shall only be effective upon (i) with respect to the Commonwealth, (a) approval of the Commonwealth Agent and at least one of the Commonwealth Creditor Representatives, provided, however, the Commonwealth Creditor Representatives are not authorized to negotiate any proposed settlement, but only to consent thereto, and (b)(1) this Court's approval of such settlement pursuant to a final order as to which (A) the deadline to file a notice of appeal or petition for certiorari has lapsed (including any extension provided by Bankruptcy Rule 8002(b)(1)) and no appeal or petition is pending or, (B) if the subject of a timely appeal or petition, no stay, suspension, or injunction precluding effectiveness has been granted and is continuing (a "Final Order"), or (2) confirmation of a title III plan of adjustment in the Commonwealth title III case incorporating such settlement pursuant to a Final Order, and which plan has become effective; and (ii) with respect to COFINA, confirmation of a title III plan of adjustment in the COFINA title III case incorporating such settlement pursuant to a Final Order, and which plan has become effective; *provided, however*, that, other than with respect to ensuring that such settlement is properly embodied within the title III plan of adjustment, the COFINA Agent shall not participate in the negotiations of a title III plan of

8

adjustment in the COFINA title III case. Any settlement negotiated pursuant to the protocol approved herein shall be presented simultaneously for approval to both Commonwealth Creditor Representatives.

j. If the Oversight Board determines it is impracticable to schedule a timely confirmation hearing on a Commonwealth plan of adjustment embodying the proposed settlement negotiated by the Agents, then any proposed settlement negotiated by the Agents that can be implemented by the Commonwealth independently of a plan of adjustment (*e.g.*, a settlement that allocates the Pledged Sales Taxes between COFINA and the Commonwealth, but does not provide for how the Commonwealth will distribute such assets to creditors), may be submitted for this Court's approval with respect to the Commonwealth only by the Commonwealth Agent or the Oversight Board. Absent agreement of all Signatories, any proposed settlement outside a plan of adjustment for the Commonwealth shall be submitted for approval on not less than 45 days' notice, and shall be heard and if approved, approved contemporaneously with confirmation of a title III plan of adjustment in the COFINA title III case incorporating such settlement.

k. All parties in interest, including the Oversight Board and AAFAF, may appear and be heard with respect to any proposed settlement; *provided, however*, that neither the Oversight Board nor AAFAF shall have any right to contest any judgment made by the Agents pursuant to subparagraph f.

l. In the event that the Commonwealth-COFINA Dispute is resolved by a settlement developed under this protocol, the Oversight Board shall file a title III plan of adjustment for COFINA incorporating such settlement, with an accompanying disclosure statement, and the Oversight Board shall propose how COFINA's property will be distributed to COFINA creditors (consistent with the plan distributions, if any, agreed to by all parties in the Mediation), no later than 45 days after such settlement is presented by the Agents to the Oversight Board; provided that, no hearing to consider approval of any settlement of the Commonwealth-COFINA Dispute with respect to COFINA shall occur, and objections to such settlement by COFINA's creditors and other parties in interest shall not be due, until a reasonable time after the Oversight Board files a title III plan of adjustment for COFINA, and such hearing date and objection deadline may be concurrent with the hearing date and objection deadline for the COFINA plan of adjustment. If any court of competent jurisdiction denies confirmation of the plan incorporating the settlement developed under this protocol, the Oversight Board shall use good faith efforts to file one or more amended plans, each of which incorporates such settlement, in order to comply with the confirmation requirements of section 314(b) of PROMESA; *provided*, *however*, that if the Court determines no confirmable plan for COFINA can be proposed consistent with the settlement, then the settlement shall be deemed null and void.

m. For the avoidance of doubt, the litigation or negotiation by the Agents shall not include issues other than the Commonwealth-COFINA Dispute; *provided, however,* that any resolution of the Commonwealth-COFINA Dispute implemented under a title III plan of adjustment shall be a final resolution of all

9

issues affecting entitlements of each allowed claim against COFINA to its distributions under the plan, including with respect to the nature, validity, extent and priority of the liens pledged to secure the COFINA bonds, and may resolve all potential claims by holders of COFINA bonds against the Commonwealth, provided further that any such treatment of COFINA bondholders' claims, if any, against the Commonwealth as part of the settlement shall be on terms acceptable to the Commonwealth Agent and the Oversight Board.

n. Notwithstanding anything in this Stipulation, the Oversight Board shall remain the only party authorized by PROMESA to propose a title III plan of adjustment, and to carry out that power and duty, the Oversight Board may, at any time, propose title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight Board, and the Oversight Board may negotiate and mediate with creditors to achieve such settlement of the Commonwealth-COFINA Dispute; provided, however, that if the Agents reach a proposed settlement of the Commonwealth-COFINA Dispute before the Court fixes a date for a hearing on the disclosure statement of the Oversight Board's proposed plan of adjustment for COFINA, the Oversight Board shall amend its proposed disclosure statement so at the confirmation hearing on the proposed plan of adjustment for COFINA, the Agents' proposed settlement shall first be considered by the Court together with the proposed plan distributions, if any, agreed to by all parties in the Mediation, or otherwise, together with plan distributions proposed by the Oversight Board.

5. <u>Intervention; Rights To Participate</u>. Each of the creditor parties, statutory committees, and Creditor Representatives, that are Signatories (the "<u>Permitted Intervenors</u>"), shall be authorized to intervene, in its individual capacity or as part of a group, and be heard in any litigation between the Agents to resolve the Commonwealth-COFINA Dispute without further order of the Court; *provided, however*, that the Court may impose reasonable limitations on participation by the Permitted Intervenors to avoid duplication and undue burdens on the Court. AAFAF, as the government's agent in accordance with the *Puerto Rico Fiscal Agency and Financial Advisory Authority*, Act 2-2017 (Jan. 18, 2017) (the "<u>AAFAF Enabling Act</u>"), may also intervene as of right to exercise its rights to be heard under applicable law. AAFAF shall not contravene the FOMB's statutory status as the Commonwealth's representative pursuant to PROMESA § 315(b). Nothing herein waives the rights of any party in interest from

asserting any intervenor is conflicted. Nothing herein shall deprive AAFAF and the government of any other intervention rights they have and shall not deprive any other party in interest of any standing, intervention rights, and other rights to appear that they have in any litigation relating to the Commonwealth-COFINA Dispute or any other litigation. For the avoidance of doubt, the grant of intervention to any party, including the Permitted Intervenors, shall neither affect nor impair the ability of the Agents to settle the Commonwealth-COFINA Dispute in accordance with paragraph 4 above nor modify the standards for approval by the Court of any settlement reached by the Agents.

6.      Effectiveness. Immediately upon entry by the Court of this Stipulation and Order, (a) the Debtors and the Oversight Board, as the Debtors' representative, are authorized to take all actions, and to execute all documents, necessary or appropriate, to effectuate the relief granted herein, and (b) this Stipulation and Order shall be binding on all entities having received prior notice of the hearing on this Stipulation and Order

7.      Jointly Drafted. The preparation of this Stipulation has been a joint effort of the Signatories and the resulting document shall not, solely as a matter of judicial construction, be construed more severely against one of the Signatories than the other.

8.      Retention Of Jurisdiction. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Stipulation and Order.

9.      Whole Agreement. This is the whole agreement among the Signatories in respect of its subject matter, and all prior statements and actions are merged herein.

10.     Amendment. This Stipulation may not be amended except in a writing signed by the Signatories and approved by the Court.

11.     <u>Rights Preserved</u>.  Except as expressly provided herein, no Signatory waives or releases any rights, including, without limitation, (i) the right to seek dismissal of the Commonwealth and/or COFINA Title III petitions, (ii) any rights under the COFINA Bond Resolution and any applicable bond resolutions, statutes, and constitutional provisions, (iii) the right, if any, to challenge any fiscal plan, (iv) the right to seek Court approval of certification to the Supreme Court of Puerto Rico of the Commonwealth law issues in the Commonwealth-COFINA Dispute, subject to all other parties' rights to oppose such relief on any ground including without limitation that similar relief was previously requested and denied, and (v) the right to seek a stay of other litigation in the Title III cases that may involve the Commonwealth-COFINA Dispute or property subject to it.  Except as provided in paragraph 2, the Oversight Board does not consent or otherwise release any rights of the Oversight Board under PROMESA or otherwise, including section 305 of PROMESA.  The rights and powers of the government of Puerto Rico under the Puerto Rico Constitution and PROMESA, including without limitation under sections 303 and 305 of PROMESA, are expressly reserved, subject to any limitations thereon imposed by the Puerto Rico Constitution, the U.S. Constitution, or PROMESA.

12.     <u>Confidentiality</u>.  There shall be common interest and joint defense privileges for all communications (including work product shared) between or among an Agent and the Creditor Representatives or creditors of the Debtor such Agent represents.   All such communications shall be confidential and shall not be subject to discovery or other disclosure.

13.     <u>Further Assurances</u>.  Each Signatory shall take such actions and sign such documents as necessary or desirable to carry out this Stipulation.

14.     Counterpart Originals.  This Stipulation may be signed in counterpart originals as if signed in one original document.  Emailed scans of this Stipulation signed by a Signatory shall be deemed an original for all purposes.

15.     No Conflict.  The representation by counsel to the Creditors' Committee of the Creditors' Committee as Commonwealth Agent with respect to the Commonwealth-COFINA Dispute shall not create an attorney-client relationship between such Creditors' Committee counsel and the Commonwealth, AAFAF, or the Oversight Board and therefore counsel for the Creditors' Committee shall be free to advocate positions adverse to such parties in the Title III cases.

Accepted and Agreed:

The Parties to the Stipulation:                    AD HOC GROUP OF GO BONDHOLDERS

                                                   _____
                                                   Name:
                                                   Title:


                                                   UBS FAMILY OF FUNDS/PUERTO RICO FAMILY OF FUNDS

                                                   _____
                                                   Name:
                                                   Title:

                                                   MUTUAL FUND GROUP

                                                   _____
                                                   Name:
                                                   Title:

COFINA SENIOR BONDHOLDERS

_____
Name:
Title:

AMBAC ASSURANCE CORP.

_____
Name:
Title:

NATIONAL PUBLIC FINANCE
GUARANTEE CORP.

_____
Name:
Title:

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS

_____
Name:
Title:

Dated: _____, 2017          SO ORDERED:
          San Juan, Puerto Rico

_____
Honorable Laura Taylor Swain
United States District Judge

14