# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------ x
```
*In re*                                                            :

THE FINANCIAL OVERSIGHT AND                                        :
MANAGEMENT BOARD FOR PUERTO RICO,                                  :

     as representative of                                      :

THE COMMONWEALTH OF PUERTO RICO *et al.,*                          :

     Debtors.[1]                                               :
                                                          :

PROMESA
Title III
Case No. 17-BK-3283 (LTS)
(Jointly Administered)

```
------------------------------------------------------------------ x
```
THE OFFICIAL COMMITTEE OF UNSECURED                                :
CREDITORS OF THE COMMONWEALTH OF                                   :
PUERTO RICO,                                                       :

     as agent of                                               :

THE FINANCIAL OVERSIGHT AND                                        :
MANAGEMENT BOARD FOR PUERTO RICO                                   :

     as representative of                                      :

THE COMMONWEALTH OF PUERTO RICO,                                   :

     Plaintiff,                                                :

v.                                                                 :

BETTINA WHYTE,                                                     :

     as agent of                                               :

THE FINANCIAL OVERSIGHT AND                                        :
MANAGEMENT BOARD FOR PUERTO RICO                                   :

     as representative of                                      :

THE PUERTO RICO SALES TAX FINANCING                                :
CORPORATION,                                                       :

     Defendant.                                                :

Adv. Proc. No. 17-00257-LTS

```
------------------------------------------------------------------ x
```

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## DX-MM

**MOTION AND INCORPORATED MEMORANDUM OF LAW OF THE
COFINA AGENT TO CERTIFY QUESTIONS UNDER PUERTO RICO LAW TO
<u>THE SUPREME COURT OF PUERTO RICO</u>**

Case:17-03283-LTS Doc#:3259 Filed:05/30/18 Entered:05/30/18 19:41:50 Desc: Main Document Page 3 of 20

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT .................................................................................1

QUESTIONS TO BE CERTIFIED ..........................................................................3

ARGUMENT .............................................................................................................5

I.      The Puerto Rico Law Questions Are All Questions Of First Impression Under Puerto Rico Law. ...........................................................................................7

II.     The Puerto Rico Law Questions Are Outcome Determinative.........................11

III.    The Puerto Rico Law Questions Are Fundamentally Important To Puerto Rico. .............13

CONCLUSION.......................................................................................................14

i

# TABLE OF AUTHORITIES

**Cases**

*Arizonans for Official English v. Arizona,*
    520 U.S. 43 (1997) .................................................................................... 2, 5, 8, 9

*Estate of McCall ex rel McCall v. United States,*
    642 F.3d 944 (11th Cir. 2011) ........................................................................... 9

*Fornaris v. Ridge Tool Co.,*
    400 U.S. 41 (1970) ................................................................................. 2, 8, 9

*González Cabán v. JR Seafood,*
    132 F. Supp. 3d 276 (D.P.R. 2015) ................................................................... 5

*González Cabán v. JR Seafood,*
    2017 TSPR 187 [P.R. Offic. Trans.] (P.R. Dec. 1, 2017) .............................. 6-7

*Guzmán Vargas v. Calderón,*
    164 D. P.R. 220 (P.R. 2005) ............................................................................. 6

*Lehman Bros. v. Schein,*
    416 U.S. 386 (1974) .......................................................................................... 8

*Lex Claims, LLC v. Padilla,*
    No. 16-cv-02374 (FAB) (D.P.R. Nov. 4, 2016) ...................................... 11, 12

*Muñiz-Olivari v. Stiefel Labs., Inc.,*
    496 F.3d 29 (1st Cir. 2007) ............................................................................. 13

*New Progressive Party (Partido Nuevo Progresista) v. Hernández Colón,*
    779 F. Supp. 646 (D.P.R. 1991) ....................................................................... 9

*Pagán-Colón v. Walgreens of San Patricio, Inc.,*
    697 F.3d 1 (1st Cir. 2012) ................................................................................. 5

*In re Pereira,*
    791 F.3d 180 (1st Cir. 2015) ..................................................................... 10, 13

*Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico,*
    478 U.S. 328 (1986) .......................................................................................... 5

*Quílez-Velar v. Ox Bodies, Inc.,*
    No. CT-2016-0010, 2017 WL 4125876, 2017 TSPR 165
    [P.R. Offic. Trans.] (P.R. Aug. 31, 2017) ................................................ 6, 11

*Rivera-Muñiz v. Horizon Line Inc.,*
    737 F. Supp. 2d 57 (D.P.R. 2010) .................................................................... 6

ii

*Showtime Entm't, LLC v. Town of Mendon*,
    769 F.3d 61 (1st Cir. 2014)................................................................9, 11, 13

*Tunick v. Safir*,
    209 F.3d 67 (2d Cir. 2000).........................................................................9

*Watchtower Bible Tract Soc. of New York, Inc. v. Municipality of Santa Isabel*,
    869 F. Supp. 2d (D.P.R. 2012)..................................................................10

*Watchtower Bible Tract Soc. of New York, Inc. v. Municipality of Santa Isabel*,
    No. 04-1452, 2013 WL 2554879 (D.P.R. June 11, 2013) ..........................10, 11

## **Statutes**

Judiciary Act of 2003, Act No. 201 of August 22, 2003
    (codified as 4 L.P.R.A. sec. 24s(f))...........................................................6

P.R. Const., art. VI § 2 .................................................................................3

Rule 25 of the Supreme Court of Puerto Rico
    (4 L.P.R.A. App. XXI-B, R. 25 (2016)) .......................................................7

Bettina M. Whyte (the "**COFINA Agent**"), in her capacity as the appointed agent of the Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**") as representative of the Puerto Rico Sales Tax Financing Corporation ("**COFINA**"), respectfully submits this memorandum of law in support of her motion to certify to the Supreme Court of Puerto Rico (the "**Motion to Certify**"), pursuant to Rule 25 of that Court, the novel and case-determinative questions of Puerto Rico law raised in this action.

## PRELIMINARY STATEMENT

If there ever were a case in which certification is appropriate, this is it. As the summary judgment motions filed last week make clear, this litigation seeks to resolve whether state law transferred ownership of state-created property to a state-created entity, and whether that state law transfer of property is valid as a matter of state constitutional law. These are issues of first impression under Puerto Rico law, will determine the outcome of this litigation, and are fundamentally important to the Commonwealth and its citizens.

The Commonwealth-COFINA Dispute[2] was commenced to resolve the question of "[w]hether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt (the 'Pledged Sales Taxes') are property of the Commonwealth or COFINA under applicable law." *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [Dkt. No. 996]. That question, as the Court's scope rulings have confirmed, turns entirely on the interpretation and application of Puerto Rico law and the Puerto Rico Constitution. More

---

[2]     Capitalized terms not defined herein shall have the same meaning as in the COFINA Agent's Memorandum of Law in Support of Motion for Summary Judgment ("**Summary Judgment Motion**") [Dkt. No. 317].

1

specifically, as discussed in the COFINA Agent's Summary Judgment Motion, the Commonwealth-COFINA Dispute will be resolved by:

- interpreting the COFINA Enabling Legislation to establish whether the Pledged Sales Tax was transferred to, and is owned by, COFINA;

- interpreting and applying the Debt Service Clause, the Debt Maturity Clause, and the Balanced Budget Clause to establish whether the transfer was constitutional under the Constitution of Puerto Rico; and

- interpreting and applying the Debt Priority Clause to establish whether Pledged Sales Tax revenues are "available resources" under the Constitution of Puerto Rico.

Under well-settled precedent, including clear authority from the United States Supreme Court, these are exactly the kind of questions that should be certified to the Supreme Court of Puerto Rico. Indeed, the United States Supreme Court has repeatedly instructed federal courts to respect the federalist system and refrain from declaring state law unconstitutional before a state's highest court has been afforded the opportunity to resolve relevant state law issues. *See, e.g.*, *Arizonans for Official English v. Arizona*, 520 U.S. 43, 79 (1997) ("Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law, for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court."); *Fornaris v. Ridge Tool Co*., 400 U.S. 41, 44 (1970) (reversing with instructions that district court should "hold its hand until the Puerto Rican Supreme Court has authoritatively ruled on the local law question" before addressing federal constitutionality concerns).

This Court is being asked to interpret a Puerto Rico statute that has never been interpreted, and then declare it unconstitutional under the Puerto Rico Constitution. The Court should not take that drastic step without guidance from the Supreme Court of Puerto Rico. It is the province of the Supreme Court of Puerto Rico to authoritatively interpret the Constitution and laws of the Commonwealth. It should be given the opportunity to do so here.

## QUESTIONS TO BE CERTIFIED

1.      Did Act No. 56 of July 5, 2007 ("**Act 56**"), which amended Act. No. 91 of
May 13, 2006 ("**Act 91**," and together with Act 56, the "**COFINA Enabling Legislation**"),
transfer ownership to COFINA of the Dedicated Sales Tax Fund (as defined in the COFINA
Enabling Legislation) and all future sales and use tax collections and any proceeds thereof that
must be deposited in the Dedicated Sales Tax Fund (the "**Pledged Sales Tax**")?

2.      Was the Legislative Assembly's transfer of ownership to COFINA of the
Dedicated Sales Tax Fund and the Pledged Sales Tax in return for bond proceeds invalid as a
matter of law, as alleged in paragraphs 138 – 142 of the Commonwealth Agent's Second Amended
Complaint, because the COFINA Enabling Legislation violates the following provision of Article
VI, Section 2 of the Puerto Rico Constitution (the "**Debt Service Clause**"):

> no direct obligations of the Commonwealth for money borrowed
> directly by the Commonwealth evidenced by bonds or notes for the
> payment of which the full faith credit and taxing power of the
> Commonwealth shall be pledged shall be issued by the
> Commonwealth if the total of (i) the amount of principal of and
> interest on such bonds and notes, together with the amount of
> principal of and interest on all such bonds and notes theretofore
> issued by the Commonwealth and then outstanding, payable in any
> fiscal year and (ii) any amounts paid by the Commonwealth in the
> fiscal year next preceding the then current fiscal year for principal
> or interest on account of any outstanding obligations evidenced by
> bonds or notes guaranteed by the Commonwealth, shall exceed 15
> percent of the average of the total amount of the annual revenues
> raised under the provisions of Commonwealth legislation and
> covered into the Treasury of Puerto Rico in the two fiscal years next
> preceding the then current fiscal year?

3.      Was the Legislative Assembly's transfer of ownership to COFINA of the
Dedicated Sales Tax Fund and the Pledged Sales Tax in return for bond proceeds invalid as a
matter of law, as alleged in paragraphs 138 – 142 of the Commonwealth Agent's Second Amended
Complaint, because the COFINA Enabling Legislation violates the provision in Article VI, Section

2 of the Puerto Rico Constitution which states that "no direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith credit and taxing power of the Commonwealth shall be pledged . . . shall mature later than 30 years from their date" (the "**Debt Maturity Clause**")?

4.      Was either the enactment of the COFINA Enabling Legislation as a means to finance the repayment of the Commonwealth's outstanding debt or the amendment of Act 91 in 2009 to expand the permitted uses of COFINA bond proceeds invalid as a matter of law, as alleged in paragraphs 160 – 173 of the Commonwealth Agent's Second Amended Complaint, because the Legislative Assembly violated Article VI, Section 7 of the Puerto Rico Constitution, which states:  "The appropriations made for any fiscal year shall not exceed the total revenues, including available surplus, estimated for said fiscal year unless the imposition of taxes sufficient to cover said appropriations is provided by law" (the "**Balanced Budget Clause**")?

5.      By either (a) enacting the COFINA Enabling Legislation, making the Dedicated Sales Tax Fund and a portion of a newly imposed sales and use tax the property of COFINA, or (b) amending Act 91 in 2009, and providing both in connection with the enactment and the amendment that, in exchange for bond proceeds being made available to the Commonwealth of Puerto Rico, the Dedicated Sales Tax Fund and Pledged Sales Tax transferred to COFINA shall not be resources available to the Commonwealth, did the Legislative Assembly violate as a matter of law, as alleged in paragraphs 143 – 145 of the Commonwealth Agent's Second Amended Complaint, Article VI, Section 8 of the Puerto Rico Constitution, which states: "In case the available resources including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law" (the "**Debt Priority Clause**")?

**ARGUMENT**

The United States Supreme Court has instructed that federal courts "lack competence to rule definitively on the meaning of state legislation." *Arizonans for Official English*, 520 U.S. at 48. For that reason, certification procedures were created to enable federal courts to send "novel or unsettled questions of state law" to the State's highest court and thereby avoid "[s]peculation by a federal court about the meaning of a state statute." *Id*. at 77, 79 (internal citations omitted). As the United States Supreme Court has further recognized, when faced with such state law questions, certification is often the wisest course, "reducing the delay, cutting the cost, and increasing the assurance of gaining an authoritative response." *Id.* at 76 (vacating injunction of state law because district court and Ninth Circuit improperly refused to certify state law question to Arizona Supreme Court); *see also Pagán-Colón v. Walgreens of San Patricio, Inc.*, 697 F.3d 1, 18 (1st Cir. 2012) (stating that "the prudent course is to certify the question to that court better suited to address the issue" where the "existing case law does not provide sufficient guidance to allow [the court] reasonably to predict how the state's courts would resolve the question").

Principles of federalism and comity further support certification of unsettled state law issues. "The idea of comity between local and federal courts is not a trifling concept." *González Cabán v. JR Seafood*, 132 F. Supp. 3d 276, 283 (D.P.R. 2015). This is especially true where, as here, the constitutionality of a state law is at issue. "Rather than boldly asserting itself as the ultimate authority of local law, a federal court should afford the local judiciary the opportunity to be the first to rule on the legality or constitutionality of local law." *Id*. at 284. As a result, "[t]he certification mechanism is widely applauded as increasing the likelihood of a federal court answering the substantive question correctly and demonstrating a federal court's respect for the state court." *Id*. This rule of deference is "particularly appropriate" in the case of

5

Puerto Rico, given its "unique cultural and legal history." *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 339 n.6 (1986); *see also Quílez-Velar v. Ox Bodies, Inc.*, 823 F.3d 712, 721 (1st Cir. 2016) (certifying question to the Supreme Court of Puerto Rico where there was no clear precedent and the question presented important public policy concerns); *Rivera-Muñiz v. Horizon Lines Inc.*, 737 F. Supp. 2d 57, 64 (D.P.R. 2010) (certification is particularly important where the resolution of a question will affect "a paramount matter of public policy for Puerto Rico").

For its part, the Supreme Court of Puerto Rico has adopted in recent years a "more flexible" approach to certification that has "made it easier for federal courts to submit . . . for a definitive answer, questions about doubtful matters related to Puerto Rican law." *Guzmán Vargas v. Calderón*, 164 D.P.R. 220, 229 (P.R. 2005). This flexible approach is embodied in the Judiciary Act of 2003, which provides that the Supreme Court of Puerto Rico:

> . . . shall be able to take cognizance of any matter certified to it by the United States Supreme Court, a United States Circuit Court of Appeals, a United States District Court . . . when thus requested by any of said courts, if there is any judiciary matter before the requesting court in which matters pertaining to Puerto Rican law are involved that may determine the outcome thereof, and with regard to which, in the opinion of the petitioning court, there are no clear precedents in the jurisprudence of said court.

P.R. Laws Ann., tit. 4, § 24s(f).

The Supreme Court of Puerto Rico has held that this provision, enacted in 2003, "substantially broadened the power of [the Supreme Court of Puerto Rico] to accept requests for certification made by the United States courts." *Guzmán Vargas*, 164 D.P.R. at 229. As the Supreme Court of Puerto Rico recently explained, through certification "our civil procedural law system allows us to address any question certified by a federal court or by the highest appellate court of any of the states when the question involves issues of Puerto Rican law that may determine the outcome of the case and about which no clear caselaw precedents exist." *González Cabán v.*

6

*JR Seafood*, 2017 TSPR 187 at 3 [P.R. Offic. Trans.] (P.R. Dec. 1. 2017).  To that end, Rule 25 of

the Rules of the Supreme Court of Puerto Rico provides that certification may be accepted:

> if there is any legal issue raised before the petitioner court involving
> questions of Puerto Rican law that may determine the outcome of
> the case, and with regard to which, in the opinion of the petitioner
> court, there are no clear-cut precedents in the caselaw of [the Puerto
> Rico Supreme Court].

4 L.P.R.A. App. XXI-B, R. 25 (2016).

Under these standards, the proposed questions here (the "**Puerto Rico Law**

**Questions**")—which raise entirely novel state statutory and constitutional law issues of

fundamental importance to the Commonwealth—clearly should be certified to the Supreme Court

of Puerto Rico.

## I.   THE PUERTO RICO LAW QUESTIONS ARE ALL QUESTIONS OF FIRST IMPRESSION UNDER PUERTO RICO LAW.

The legal issues controlling the outcome of the Commonwealth-COFINA Dispute

are governed by Puerto Rico law.  This proceeding is about whether the COFINA Enabling

Legislation—*i.e.*, Puerto Rico law—transferred ownership of the Pledged Sales Tax and Dedicated

Sales Tax Fund to COFINA, and whether that transfer violated or evaded the Debt Service Clause,

the Debt Maturity Clause, and/or the Balanced Budget Clause—*i.e.*, clauses of the Puerto Rico

Constitution.  In addition, both the Commonwealth Agent and the GO Bondholders contend that

Pledged Sales Tax revenues must be considered "available resources" for purposes of the Debt

Priority Clause, which is another question of Puerto Rico constitutional law.

These questions go to the heart of the Legislative Assembly's authority to exercise

its taxing and police powers to address the financial needs of the Commonwealth.  In response to

a financial crisis in 2006, the Legislative Assembly enacted the COFINA Enabling Legislation to

create a new entity (COFINA) to own a portion of the future revenues generated by a new state

sales and use tax (the Pledged Sales Tax) and raise low-cost capital for the Commonwealth by issuing bonds secured by that stream of revenue. Now, over ten years later, the Commonwealth Agent and others claim that the COFINA Enabling Legislation did not actually transfer ownership of the Pledged Sales Tax to COFINA, and that the Legislative Assembly could not have made that transfer without exceeding constitutional limits. To resolve this Dispute, and answer the Puerto Rico Law Questions, the Court will not only need to construe the COFINA Enabling Legislation, but also must define the boundaries of the Legislative Assembly's power to raise money through debt financing under the Puerto Rico Constitution.

These are quintessential issues of Puerto Rico law that have never been decided by any court. They should be decided by the Supreme Court of Puerto Rico. Indeed, the certification procedure was established for exactly these circumstances. For example, when the district court and Ninth Circuit failed to certify an issue of statutory interpretation to the Arizona Supreme Court that could have avoided a federal constitutional conflict, the United States Supreme Court in *Arizonans for Official English v. Arizona* vacated their decisions to afford the Arizona Supreme Court the opportunity to "rule definitively on the proper construction" of the state statute in another case. 520 U.S. 43, 79-80 (1997). As the United States Supreme Court explained, "[t]hrough certification of novel or unsettled questions of state law for authoritative answers by a State's highest court, a federal court may save 'time, energy, and resources and hel[p] build a cooperative judicial federalism.'" *Id.* at 77 (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

The United States Supreme Court reached a similar result in *Fornaris v. Ridge Tool Co.*, 400 U.S. 41 (1970). That case involved a constitutional challenge under the federal Contracts Clause to a Puerto Rico statute, the Dealer's Contract Law, which made certain dealer's contracts renewable indefinitely and imposed penalties on manufacturers who refused to comply. *Fornaris*, 400 U.S. at 41. After the First Circuit held the Dealer's Contract Law unconstitutional, the United

8

States Supreme Court reversed the decision because the statute had never been interpreted by the
Puerto Rico courts.  *Id.* at 43.  As the Court explained, Puerto Rico is a "Spanish-speaking
Commonwealth with a set of laws still impregnated with the Spanish tradition" that warrants
particular deference to Puerto Rico courts.  *Id*. at 42.  Because the Puerto Rico courts might
construe the Dealer's Contract Law in a manner that avoids the federal constitutional problem, the
United States Supreme Court reversed and remanded with instructions that the district court "hold
its hand until the Puerto Rican Supreme Court has authoritatively ruled on the local law question."
*Id.* at 44.

The reasoning of *Arizonans for Official English v. Arizona* and *Fornaris v. Ridge
Tool Co.* applies with even greater force here.  In each of those cases, certification was warranted
to construe a state statute before the federal courts passed on the statute's constitutionality under
the federal Constitution.  Here, the Court not only will need to construe a state statute, it will also
be required to interpret and apply the Puerto Rico Constitution.  No federal law issues at all are
involved in resolving the Commonwealth-COFINA Dispute.  It is difficult to imagine a clearer
case for certifying to the Supreme Court of Puerto Rico, as federal courts across the country have
done under similar circumstances.  *See, e.g.*, *Showtime Entm't, LLC v. Town of Mendon*, 769 F.3d
61, 82 (1st Cir. 2014) (certifying to Massachusetts Supreme Court claim premised "solely on issues
of state constitutional law"); *Estate of McCall ex rel McCall v. United States*, 642 F.3d 944, 952
(11th Cir. 2011) (certifying questions that "raise[] important questions about the interpretation and
application of Florida constitutional law in areas that remain unsettled"); *Tunick v. Safir*, 209 F.3d
67, 81-82 (2d Cir. 2000) (certifying to New York Court of Appeals claim that had the potential to
raise legal issue of grave importance under New York's constitution); *New Progressive Party
(Partido Nuevo Progresista) v. Hernández Colón*, 779 F. Supp. 646, 653 (D.P.R. 1991) (holding

9

that claims arising under the Constitution of Puerto Rico "are issues to be properly raised in the Commonwealth courts").

The authority in this District is in accord.  In *Watchtower Bible Tract Society of New York, Inc. v. Municipality of Santa Isabel*, 869 F. Supp. 2d 215 (D.P.R. 2012), as here, the court was asked to interpret a Puerto Rico state law and pass on its constitutionality under the Puerto Rico Constitution.  *Watchtower* involved a challenge to Puerto Rico's Access Control Law, which restricted access to gated urbanizations in Puerto Rico.  The central question was whether the Access Control Law allowed for "unmanned control access gates"—a question of state law interpretation—and, if so, whether the use of such gates "unconstitutionally intrudes upon Jehovah's Witnesses freedom of religion and religious expression." *Id.* at 218-19.  As to the latter question, the court observed that the First Circuit had ruled that unmanned gates are constitutional in certain instances under the federal Constitution, but that the Puerto Rico Constitution might afford broader protection and the "constitutionality of unmanned gates has never been ruled upon" by the Supreme Court of Puerto Rico. *Id.* at 217.  Faced with these important and novel issues of Puerto Rico statutory and constitutional law, the court concluded, "based on the principles of federalism and comity between the federal and state courts, the most respectful course of action is to certify this question to the Honorable Justices of the Puerto Rico Supreme Court." *Id.* at 219.

As in *Watchtower*, this Court is called on to construe a state law—determining whether the COFINA Enabling Legislation transferred ownership of the Pledged Sales Tax to COFINA—and pass on its constitutionality.  And as in *Watchtower*, these are pure and novel issues of Puerto Rico law, which the COFINA Agent respectfully submits should be certified to the Supreme Court of Puerto Rico.

10

## II.    THE PUERTO RICO LAW QUESTIONS ARE OUTCOME DETERMINATIVE.

Under both federal and Puerto Rico precedent, certification here is also particularly appropriate because the "outcome of . . . [the] state law arguments will control the case." *In re Pereira*, 791 F.3d 180, 185 (1st Cir. 2015); *see also Watchtower Bible Tract Soc. of New York, Inc. v. Municipality of Santa Isabel*, No. 04-1452, 2013 WL 2554879, at *5 (D.P.R. June 11, 2013) (certifying Puerto Rico law question where "[r]esolution of [the local law] issue is all that remains before the court"); *Showtime Entm't*, 769 F.3d at 79 (certifying challenge pursuant to Massachusetts Declaration of Rights that was "determinative" of the action); *Quílez-Velar v. Ox Bodies, Inc.*, No. CT-2016-0010, 2017 WL 4125876 at *3, 2017 TSPR 165 [P.R. Offic. Trans.] (P.R. Aug. 31, 2017) (accepting certification of question from the First Circuit because "our answer to the certified question would put an end to the judicial matter before the Court of Appeals, and there are no case law precedents that fully address the case").[3]

The Puerto Rico Law Questions will resolve all issues within the scope of this dispute.  (*See Order (A) Confirming Scope of COFINA and Commonwealth Agent's Authority Under Stipulation and Order and (B) Dismissing, Without Prejudice, Certain Claims That Exceed the Scope of the Commonwealth-COFINA Dispute* [Dkt. 167] at 5 ("The central issue of this adversary proceeding is whether the Commonwealth, on the one hand, or COFINA, on the other, owns the Pledged Sales Tax.").)  If the Supreme Court of Puerto Rico holds that the COFINA Enabling Legislation validly transferred ownership of the Pledged Sales Tax to COFINA consistent with the Puerto Rico Constitution, that ends the Commonwealth-COFINA Dispute.  No other issues are required to resolve the narrow question of ownership—the only matter currently

---

[3]    To be clear, although the Puerto Rico Law Questions *are* outcome determinative, the Puerto Rico Supreme Court would be likely to accept certification even if they were not.  *See* P.R. Laws Ann., tit. 4, § 24s(f) (certification appropriate "if there is any judiciary matter before the requesting court in which matters pertaining to Puerto Rican law are involved that *may determine* the outcome thereof . . .") (emphasis added).

in dispute between the parties. Indeed, the Court need look no further than the summary judgment

motions that were filed last week, in which the COFINA Agent, the Commonwealth Agent, and

the intervenors seek summary judgment solely based on Puerto Rico law.[4] (*See Memorandum of

Law in Support of Motion for Summary Judgment by the COFINA Agent* [Dkt. No. 317];

*Commonwealth Agent's Motion for Summary Judgment and Incorporated Memorandum of Law*

[Dkt. No. 322]; *Memorandum of Law of COFINA Senior Bondholders' Coalition in Support of

Motion for Summary Judgment* [Dkt. No. 307]; and *Motion for Summary Judgment of the Ad Hoc

Group of General Obligation Bondholders* [Dkt. No. 314].) And they each raise the same Puerto

Rico Law Questions that are the subject of this certification motion.[5]

---

[4]   This request for certification is different from the certification request made in connection with the *Lex Claims* action. In *Lex Claims*, the plaintiffs asserted PROMESA preemption in addition to Puerto Rico law claims. (*See* Second Amended Complaint, *Lex Claims, LLC v. Padilla*, No. 16-cv-02374 (FAB) (D.P.R. Nov. 4, 2016) [Dkt. No. 78].) Several *Lex Claims* defendants moved for certification, but COFINA's Title III petition was filed prior to any decision on those certification motions. After COFINA's title III filing, certain COFINA bondholders sought relief from the automatic stay to allow those certification motions to go forward. Case No. 17-BK-3283-LTS, Dkt. No. 139. The Court denied certification, finding that cause to lift the stay had not been demonstrated. That standard, however, is not applicable here. Moreover, although the parties to this adversary proceeding had originally asserted federal law claims, those claims are no longer at issue following this Court's decisions on scope. (Order Confirming Scope, Case No. 17-03283-LTS [Dkt No. 167]; Order Denying Request for Clarification of Scope Order, Case No. 17-03283-LTS [Dkt No. 209].) All that remain are issues of Puerto Rico law.

[5]   The Official Committee of Retirees (the "Retirees Committee") makes two arguments purportedly based on federal law. First, the Retirees assert that if the Court rules that COFINA owns the Pledged Sales Tax, the "Commonwealth has a remedy" pursuant to sections 362, 549 and 550 of the Bankruptcy Code. (*Motion for Summary Judgment of Intervenor Official Committee of Retirees* [Dkt. No. 300] at 10). That argument assumes that COFINA owns the Pledged Sales Tax and, therefore, raises issues that are outside the scope of the Dispute. Indeed, these assertions mirror the Commonwealth Agent's seventh and eleventh causes of action – seeking to avoid the transfers to COFINA under the Bankruptcy Code – which were dismissed precisely because "they assume that the Commonwealth owns the Pledged Sales Taxes and thus address issues outside the scope of the Commonwealth-COFINA Dispute." (*Order Confirming Scope* [Dkt. No. 167] at 6). Second, the Retirees Committee cites section 541 of the Bankruptcy Code in arguing that the Pledged Sales Tax belongs to the Commonwealth. But none of the causes of action pending before the Court raises any issues under section 541. Moreover, the Retirees Committee concedes that the existence and extent of property rights in the Pledged Sales Tax is defined by state law, not federal law, so any reference to section 541 does not raise a federal question. (*Motion for Summary Judgment of Intervenor Official Committee of Retirees* [Dkt. No. 300] at 11, 16).

III.   **THE PUERTO RICO LAW QUESTIONS ARE FUNDAMENTALLY
       IMPORTANT TO PUERTO RICO.**

         The paramount importance of the matters at issue here further counsels in favor of

certification.   As discussed, the Puerto Rico Law Questions concern the Legislative Assembly's

authority to exercise its taxing and police powers to address the financial needs of the

Commonwealth.   That is, the Court is being asked to define how and when the Legislative

Assembly may raise debt issued by state-created entities within the bounds of the Puerto Rico

Constitution.   Those are fundamental issues that are especially important now as Puerto Rico faces

the urgent need to access the capital markets in order to emerge from a financial crisis, recover

from the devastation caused by Hurricane Maria, and establish financial stability going forward.

Additionally, whether ownership of the Pledged Sales Tax and the Dedicated Sales Tax Fund is

ultimately determined to reside with the Commonwealth or COFINA, significant numbers of

investors—many of them Puerto Ricans who have invested substantial savings in COFINA

bonds—will be affected.

         The significance to both the Commonwealth and the people of Puerto Rico of these

issues, in itself, provides an additional reason why they should be resolved by the Supreme Court

of Puerto Rico.   *See In re Pereira*, 791 F.3d at 181-82 (holding that certification was warranted

because the state law questions implicated "significant policy concerns" which could "affect

considerable numbers of Massachusetts foreclosure proceedings"); *Showtime Entm't*, 769 F.3d at

82 (certifying "close issue of constitutional law" that "implicates a fundamental right of

Massachusetts citizens, and may have far-reaching impact on municipalities throughout

Massachusetts in their construction of local ordinances"); *Muñiz-Olivari v. Stiefel Labs., Inc.*, 496

F.3d 29, 39 (1st Cir. 2007) (questions regarding tort damages presented "questions of local policy, which are best addressed by the Supreme Court of Puerto Rico in the first instance").[6]

## **CONCLUSION**

For the foregoing reasons, the COFINA Agent respectfully requests that the Court grant her Motion to Certify and the relief requested therein.

---

[6]     Based upon Rule 25(e) of the Rules of the Supreme Court of Puerto Rico, the COFINA Agent has filed a Proposed Order certifying questions to the Supreme Court of Puerto Rico, which includes a statement of all facts relevant to the Puerto Rico Law Questions and show the nature of the controversy that gave rise to said questions.

Dated:  February 26, 2018
        New York, New York

By:   /s/ Antonio Yanez, Jr.
Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Antonio Yanez, Jr. (*pro hac vice*)
Martin L. Seidel (*pro hac vice*)
James C. Dugan (*pro hac vice*)
Jeffrey B. Korn (*pro hac vice*)
Paul V. Shalhoub (*pro hac vice*)
Alexander L. Cheney (*pro hac vice*)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone:  (212) 728-8000
Facsimile:  (212) 728-8111
Email: mfeldman@willkie.com
      jminias@willkie.com
      ayanez@willkie.com
      mseidel@willkie.com
      jdugan@willkie.com
      jkorn@willkie.com
      pshalhoub@willkie.com
      acheney@willkie.com

*Counsel to the COFINA Agent*

Kenneth N. Klee (*pro hac vice*)
Daniel J. Bussel (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
**KLEE, TUCHIN, BOGDANOFF & STERN LLP**
1999 Avenue of the Stars
39th Floor
Los Angeles, California 90067
Telephone:  (310) 407-4000
Facsimile:  (310) 407-9090
Email:  kklee@ktbslaw.com
      dbussel@ktbslaw.com
      jweiss@ktbslaw.com

*Special Municipal Bankruptcy Counsel*
*to the COFINA Agent*

Respectfully submitted,

By:   /s/ Nilda M. Navarro-Cabrer
Nilda M. Navarro-Cabrer
USDC – PR No. 201212
**NAVARRO-CABRER LAW OFFICES**
El Centro I, Suite 206
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Telephone:  (787) 764-9595
Facsimile:  (787) 765-7575
Email:  navarro@navarrolawpr.com

*Local Counsel to the COFINA Agent*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------- x
In re                                                            :
                                                                 :
THE FINANCIAL OVERSIGHT AND                                      :
MANAGEMENT BOARD FOR PUERTO RICO,                                :    PROMESA
                                                                 :    Title III
          as representative of                                   :    Case No. 17-BK-3283 (LTS)
                                                                 :    (Jointly Administered)
THE COMMONWEALTH OF PUERTO RICO et al.,                          :
                                                                 :
          Debtors.[1]                                            :
---------------------------------------------------------------- x
THE OFFICIAL COMMITTEE OF UNSECURED                              :
CREDITORS OF THE COMMONWEALTH OF                                 :
PUERTO RICO,                                                     :
                                                                 :
          as agent of                                            :
                                                                 :
THE FINANCIAL OVERSIGHT AND                                      :
MANAGEMENT BOARD FOR PUERTO RICO                                 :
                                                                 :
          as representative of                                   :
                                                                 :    Adv. Proc. No. 17-00257-LTS
THE COMMONWEALTH OF PUERTO RICO,                                 :
                                                                 :
          Plaintiff,                                             :
                                                                 :
v.                                                               :
                                                                 :
BETTINA WHYTE,                                                   :
                                                                 :
          as agent of                                            :
                                                                 :
THE FINANCIAL OVERSIGHT AND                                      :
MANAGEMENT BOARD FOR PUERTO RICO                                 :

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

DX-MM

```
                                                    :
           as representative of                     :
                                                    :
THE PUERTO RICO SALES TAX FINANCING                 :
CORPORATION,                                         :
                                                    :
           Defendant.                               :
------------------------------------------------------------------ x
```

### [PROPOSED] ORDER CERTIFYING QUESTIONS UNDER PUERTO RICO LAW TO THE SUPREME COURT OF PUERTO RICO

Upon the COFINA Agent's Motion to Certify Questions Under Puerto Rico Law to the Supreme Court of Puerto Rico (the "**Certification Motion**"), the Court hereby FINDS AND DETERMINES that (i) the Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; (ii) venue is proper before this Court pursuant to PROMESA section 307(a); and (iii) good and sufficient cause exists for the granting of the relief as set forth herein.

### Relevant Facts

Pursuant to Rule 25(e) of the Rules of the Supreme Court of Puerto Rico, the Court further FINDS AND DETERMINES that the following facts are relevant to resolution of the certified questions set forth below, and clearly demonstrate the nature of the dispute from which these matters arise.

A.  The COFINA Enabling Legislation.

In 2006, the Commonwealth of Puerto Rico enacted Act No. 91 of May 13, 2006 (codified at P.R. Laws Ann. tit. 13, § 12) ("**Act 91**"), which created a new fund called the Fondo de Interés Apremiante (referred to in English as the "Urgent Interest Fund") (the "**FIA**").

On December 26, 2006, the Legislative Assembly passed legislation authorizing the creation of the Corporación del Fondo de Interés Apremiante ("**COFINA**") (referred to in English as the "Puerto Rico Urgent Interest Fund Corporation") as a subsidiary of the Development

Bank of Puerto Rico (the "**GDB**").  *See* Act No. 291-2006 of Dec. 26, 2006 § 1 (codified as

amended at P.R. Laws Ann. tit. 13, §§ 11a-16) ("**Act 291**").

On July 4, 2006, the Legislative Assembly passed legislation imposing a new sales

and use tax.  *See* Act No. 117-2006 of July 4, 2006 ("**Act 117**") ("A tax on every sales transaction

of a taxable item in Puerto Rico shall be imposed, collected and paid.").

On July 5, 2007, the Legislative Assembly amended Act 91 by passing Act 56.  *See*

*generally* Act No. 56-2007 of July 5, 2007 (codified as amended P.R. Laws Ann. tit. 13, §§ 11a-

16) ("**Act 56**," and together with Act 91, the "**COFINA Enabling Legislation**").  Act 56

established the English name of the FIA as the "Dedicated Sales Tax Fund."  *Id.* § 2.  Act 56 also

created COFINA, and established that it would be known in English as the Puerto Rico Sales Tax

Financing Corporation.  *Id.* § 1.

Act 56 mandated that COFINA would be "a corporate and political entity

independent and separate from the Commonwealth," rather than a subsidiary of the GDB.  *Id.*  Act

56 further mandated that a portion of the proceeds from the new sales tax imposed by Act 117 (the

"**Pledged Sales Tax**") be deposited in the Dedicated Sales Tax Fund, and that:

> [t]he [Dedicated Sales Tax Fund] and all the funds deposited therein
> on the effective date of this act ***and all the future funds that must
> be deposited*** in the [Dedicated Sales Tax Fund] pursuant to the
> provisions of this law ***are hereby transferred to, and shall be the
> property of COFINA***.

Act 56 § 2 (emphasis added).

The Legislative Assembly repeated the same (or substantially similar) language

used in Act 56 regarding the transfer of the Pledged Sales Tax and Dedicated Sales Tax Fund to

COFINA in subsequent legislation.  *See* Act No. 1-2009 of Jan. 14, 2009 § 2 (codified as amended

at P.R. Laws Ann. tit. 13, §§ 11a-16) ("The [Dedicated Sales Tax Fund] and all the funds deposited

therein on the effective date of this Act and all the future funds that must be deposited in the

[Dedicated Sales Tax Fund] pursuant to the provisions of this Act are hereby transferred to, and shall be the property of COFINA. . . .”); Act No. 7-2009 of Mar. 9, 2009 § 50 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16) (same); Act No. 18-2009 of May 22, 2009 § 2 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16) (same); Act No. 116-2013 of Oct. 10, 2013 § 2 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16) (same); Act No. 101-2015 of July 1, 2015 § 1 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16) (same).

The Statement of Motives for Act 56 states that it was the Legislative Assembly’s intention that the Pledged Sales Tax and the Dedicated Sales Tax Fund “be owned by COFINA” and that they “shall not constitute available resources of the Commonwealth of Puerto Rico.” *See* Act 56, Statement of Motives.

B. <u>COFINA Issues Bonds Secured By The Pledged Sales Tax.</u>

The COFINA Enabling Legislation authorized COFINA to issue bonds secured by the Pledged Sales Tax revenue stream. *See* Act 56 § 3. The COFINA Enabling Legislation further directed that COFINA would use proceeds from its bond issuances to pay the Commonwealth’s extraconstitutional debt and for other legitimate public purposes. *Id.*, Statement of Motives; P.R. Laws Ann. tit. 13, §§ 11a-16 (emphasis added).

Beginning in 2007, COFINA issued bonds pursuant to the Amended and Restated Sales Tax Revenue Resolution (as amended and supplemented, the “**Resolution**”) entered into among COFINA, the Bank of New York Mellon (as trustee), COFINA bondholders, and certain other beneficiaries. (*See generally* Resolution (Exhibit 2 to the Declaration of Antonio Yanez, Jr. [Dkt. No. 316] (the “**Yanez Decl.**”)).) Pursuant to the Resolution, COFINA issued four types of bonds currently outstanding: (a) senior “current interest” bonds; (b) senior “capital appreciation” bonds; (c) subordinate “current interest” bonds; and (d) subordinate “capital appreciation” bonds

(together, the "**COFINA Bonds**").  (*Id.*)  The Resolution states that the COFINA Bonds are payable solely from the Pledged Sales Tax and the "Commonwealth shall not be liable on the [COFINA] Bonds." (*Id.* § 201).)  The Resolution, and Act 56, also state that COFINA Bonds are not backed by a pledge of the full faith and credit of the Commonwealth.  (*Id.*; *see also* Act 56 § 3).)

The Commonwealth raised more than $16 billion through the issuance of COFINA Bonds.  (COFINA Agent SUF ¶  22; Statement of Undisputed Material Facts In Support Of the Commonwealth Agent's Motion for Summary Judgement ¶ 10 [Dkt. No. 323] (the "**CW Agent SUF**").)  Many of the investors who purchased COFINA Bonds live in Puerto Rico, with COFINA Bonds representing the most widely-held investment by retirees and retail investors in the Commonwealth.  (Yanez Decl. Ex. 51 (Commonwealth Fiscal Plan at 71).)

C.  Procedural History

On May 3, 2017, the Oversight Board commenced a case on behalf of the Commonwealth under Title III of PROMESA.  (*In re The Financial Oversight and Management Board for Puerto Rico as representative of The Commonwealth of Puerto Rico*, 17-03283-LTS (Bankr. D.P.R. May 3, 2017) [Dkt. No. 1].)  Two days later, on May 5, the Oversight Board commenced a Title III case on behalf of COFINA.  (*In re The Financial Oversight and Management Board for Puerto Rico as representative of Puerto Rico Tax Financing Corporation*, 17-03284-LTS (Bankr. D.P.R. May 5, 2017) [Dkt. No. 1].)

On August 10, 2017, this Court so-ordered the Commonwealth-COFINA Dispute Stipulation, which was entered into by the Oversight Board (in its capacities as the title III representative of the Commonwealth and COFINA, respectively) and various parties in interest, including bondholders and bond insurers.  (*Commonwealth Title III Case* (Bankr. D.P.R. Aug. 10,

2017) [Dkt. No. 996].)  The Commonwealth-COFINA Dispute Stipulation appoints Bettina Whyte

as the COFINA Agent and the Official Committee of Unsecured Creditors of the Commonwealth

of Puerto Rico as the Agent of the Commonwealth.  (Commonwealth-COFINA Dispute Order ¶

4(a)-(b).)

The Commonwealth-COFINA Dispute Stipulation defines the dispute to be

litigated by the parties as follows:

> Whether, after considering all procedural and substantive defenses and
> counterclaims, including constitutional issues, the sales and use taxes
> purportedly pledged by COFINA to secure debt (the "Pledged Sales Taxes")
> are property of the Commonwealth or COFINA under applicable law.

(Commonwealth-COFINA Dispute Order ¶ 4.)

The Commonwealth Agent commenced this adversary proceeding on September 8,

2017 by filing its initial complaint.  [Dkt. No. 1.]  On October 25, 2017, the Commonwealth Agent

filed its amended complaint.  [Dkt. No. 73.]  On September 15, 2017, the COFINA Agent filed her

initial answer, defenses, and counterclaims.  [Dkt. No. 27.]  On November 6, 2017, various

signatories to the Commonwealth-COFINA Dispute Stipulation (the "**Intervenors**") filed notices

of intervention and their own initial pleadings.

On November 13 and 14, 2017, various parties filed motions challenging certain

causes of action as being outside the scope of the Commonwealth-COFINA Dispute or the

authority of either Agent.  [Dkt. Nos. 102-109.]  After briefing, on December 21, 2007, the Court

issued its *Order (A) Confirming Scope of COFINA and Commonwealth Agent's Authority Under*

*Stipulation and Order and (B) Dismissing, Without Prejudice, Certain Claims that Exceed the*

*Scope of the Commonwealth-COFINA Dispute* [Dkt. No. 167] (the "**Scope Order**"), dismissing

without prejudice (i) all but the Commonwealth Agent's first and second causes of action, (ii) all

but the COFINA Agent's first cause of action, and (iii) all non-duplicative counterclaims and

crossclaims of the Intervenors. This Court based its ruling in the Scope Order on the fact that "[t]he central issue of this adversary proceeding is whether the Commonwealth, on the one hand, or COFINA, on the other, owns the Pledged Sales Tax. Although the Stipulation refers to 'consideration of all procedural and substantive defenses and counterclaims, including constitutional issues,' it does so in a manner that authorizes the consideration of such issues only insofar as they arise antecedent to the resolution of the property ownership issue." (Scope Order at 5.)

On January 11, 2018, the Commonwealth Agent filed an urgent motion seeking to file a second amended complaint to bring its twelfth and thirteenth causes of action within the scope of the action. [Dkt. Nos. 211.] On January 13, 2018, the Court granted the motion [Dkt. No. 219] and, thereafter, the Commonwealth Agent filed a second amended complaint on January 16, 2018. [Dkt. No. 221].

As a result of this Court's decisions regarding the scope of the action, the only claims remaining in dispute are whether the COFINA Enabling Legislation transferred ownership of the Pledged Sales Tax and Dedicated Sales Tax Fund to COFINA, whether such a transfer is constitutional under the Constitution of Puerto Rico, and whether the Pledged Sales Taxes transferred to COFINA are "available resources" of the Commonwealth within the meaning of Article VI, Section 8 of the Puerto Rico Constitution.

\*     \*     \*

The Court having reviewed the Certification Motion and after due deliberation thereon, hereby further FINDS AND DETERMINES that (i) the certified questions present issues of purely Puerto Rico law and do not present any issues of federal law; (ii) the certified questions have no clear precedents in Puerto Rico or federal case law; (iii) the provisions of the Constitution

of the Commonwealth of Puerto Rico at issue in the certified questions have no equivalent in the

Federal Constitution; (iv) resolution of the certified questions will dispose of the sole remaining

controversy in this case; and (v) the Court having found that good and sufficient cause exists for

the granting of the relief as set forth herein,

THEREFORE, IT IS HEREBY ORDERED THAT:

      A.    The Certification Motion is granted.

      B.    The Court hereby certifies the following questions to the Supreme Court of

Puerto Rico:

> **1. Did Act No. 56 of July 5, 2007 ("Act 56"), which amended Act. No. 91 of May 13, 2006 ("Act 91," and together with Act 56, the "COFINA Enabling Legislation"), transfer ownership to COFINA of the Dedicated Sales Tax Fund (as defined in the COFINA Enabling Legislation) and all future sales and use tax collections and any proceeds thereof that must be deposited in the Dedicated Sales Tax Fund (the "Pledged Sales Tax")?**

> **2. Was the Legislative Assembly's transfer of ownership to COFINA of the Dedicated Sales Tax Fund and the Pledged Sales Tax in return for bond proceeds invalid as a matter of law, as alleged in paragraphs 138 – 142 of the Commonwealth Agent's Second Amended Complaint, because the COFINA Enabling Legislation violates the following provision of Article VI, Section 2 of the Puerto Rico Constitution (the "Debt Service Clause"):**

>> **no direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith credit and taxing power of the Commonwealth shall be pledged shall be issued by the Commonwealth if the total of (i) the amount of principal of and interest on such bonds and notes, together with the amount of principal of and interest on all such bonds and notes theretofore issued by the Commonwealth and then outstanding, payable in any fiscal year and (ii) any amounts paid by the Commonwealth in the fiscal year next preceding the then current fiscal year for principal or interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth, shall exceed 15 percent of the average of the total amount of the annual revenues raised under the provisions of**

Commonwealth legislation and covered into the
Treasury of Puerto Rico in the two fiscal years next
preceding the then current fiscal year?

     3. **Was the Legislative Assembly's transfer of ownership
to COFINA of the Dedicated Sales Tax Fund and the Pledged Sales Tax
in return for bond proceeds invalid as a matter of law, as alleged in
paragraphs 138 – 142 of the Commonwealth Agent's Second Amended
Complaint, because the COFINA Enabling Legislation violates the
provision in Article VI, Section 2 of the Puerto Rico Constitution which
states that "no direct obligations of the Commonwealth for money
borrowed directly by the Commonwealth evidenced by bonds or notes
for the payment of which the full faith credit and taxing power of the
Commonwealth shall be pledged . . . shall mature later than 30 years
from their date" (the "<u>Debt Maturity Clause</u>")?**

     4. **Was either the enactment of the COFINA Enabling
Legislation as a means to finance the repayment of the
Commonwealth's outstanding debt or the amendment of Act 91 in 2009
to expand the permitted uses of COFINA bond proceeds invalid as a
matter of law, as alleged in paragraphs 160 – 173 of the Commonwealth
Agent's Second Amended Complaint, because the Legislative Assembly
violated Article VI, Section 7 of the Puerto Rico Constitution, which
states: "The appropriations made for any fiscal year shall not exceed
the total revenues, including available surplus, estimated for said fiscal
year unless the imposition of taxes sufficient to cover said
appropriations is provided by law" (the "<u>Balanced Budget Clause</u>")?**

     5. **By either (a) enacting the COFINA Enabling
Legislation, making the Dedicated Sales Tax Fund and a portion of a
newly imposed sales and use tax the property of COFINA, or (b)
amending Act 91 in 2009, and providing both in connection with the
enactment and the amendment that, in exchange for bond proceeds
being made available to the Commonwealth of Puerto Rico, the
Dedicated Sales Tax Fund and Pledged Sales Tax transferred to
COFINA shall not be resources available to the Commonwealth, did
the Legislative Assembly violate as a matter of law, as alleged in
paragraphs 143 – 145 of the Commonwealth Agent's Second Amended
Complaint, Article VI, Section 8 of the Puerto Rico Constitution, which
states: "In case the available resources including surplus for any fiscal
year are insufficient to meet the appropriations made for that year,
interest on the public debt and amortization thereof shall first be paid,
and other disbursements shall thereafter be made in accordance with
the order of priorities established by law" (the "<u>Debt Priority Clause</u>")?**

        C.      The Clerk of Court shall transmit this certification to the Clerk of the Puerto Rico Supreme Court pursuant to P.R. LAWS ANN. tit. 4, app. XXI-A, 25 and shall include all appendices attached.

SO ORDERED.

Dated: _____, 2018

_____
LAURA TAYLOR SWAIN
United States District Judge