# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

In re:                                                    :

THE FINANCIAL OVERSIGHT AND               : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,         : Title III
                                          :
            as representative of          : Case No. 17-BK-3283 (LTS)
                                          :
THE COMMONWEALTH OF PUERTO RICO, *et al.,* : (Jointly Administered)
                                          :
            Debtors.[1]                   :

---------------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED       :
CREDITORS OF THE COMMONWEALTH OF PUERTO   : Adv. Proc. No. 17-00257-LTS
RICO,                                     :
                                          :
            as agent of                   :
                                          :
THE FINANCIAL OVERSIGHT AND MANAGEMENT    :
BOARD FOR PUERTO RICO,                     :
                                          :
            as representative of          :
                                          :
THE COMMONWEALTH OF PUERTO RICO,          :
                                          :
            Plaintiff,                    :
                                          :
v.                                        :
                                          :
BETTINA WHYTE,                            :
                                          :
            as agent of                   :

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a
bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax
identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-
3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government
of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of
Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case
No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing
Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID:
8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last
Four Digits of Federal Tax ID: 3747).

THE FINANCIAL OVERSIGHT AND MANAGEMENT   :
BOARD FOR PUERTO RICO,   :
   :
     as representative of   :
   :
THE PUERTO RICO SALES TAX FINANCING   :
CORPORATION,   :
   :
     Defendant.   :
---------------------------------------------------------------------x

## COMMONWEALTH AGENT'S INFORMATIVE MOTION WITH RESPECT TO OVERSIGHT BOARD'S ANNOUNCEMENT, DATED AUGUST 8, 2018, REGARDING CERTAIN TERMS FOR COFINA PLAN OF ADJUSTMENT

The Official Committee of Unsecured Creditors of all title III Debtors (other than

COFINA) (the "Committee"), as the "Commonwealth Agent" with respect to the

"Commonwealth-COFINA Dispute," as defined in the *Stipulation and Order Approving*

*Procedure to Resolve Commonwealth-COFINA Dispute* [Docket No. 996 in Case No. 17-03283-

LTS] (the "Commonwealth-COFINA Dispute Stipulation"),[2] submits this informative motion

(the "Informative Motion") with respect to the Oversight Board's announcement, dated August

8, 2018, regarding certain terms for a COFINA plan of adjustment, and respectfully states as

follows:

     1.      On August 8, 2018, the Oversight Board announced that it has reached an

agreement in principle with senior and junior COFINA bondholders and monoline insurers on

the economic treatment of COFINA bondholders and on the terms of new COFINA securities,

which the Oversight Board expects to lead to a consensual plan of adjustment for COFINA.[3]

---

[2]     All capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the *Stipulation and Order Approving Procedures to Resolve Commonwealth-COFINA Dispute* [Docket No. 996] (the "Stipulation").

[3]     A copy of the Oversight Board's press release is attached hereto as Exhibit A.  In connection with the press release, the Oversight Board also released a presentation setting forth certain terms of a proposed COFINA plan of adjustment (the "COFINA Plan Presentation").  A copy of that presentation is attached hereto as Exhibit B.

The Commonwealth Agent supports the efforts by the parties participating in the COFINA plan mediation[4] to reach a consensual resolution with respect to a COFINA plan of adjustment.

2.      However, the Commonwealth Agent files this Informative Motion to remind the parties in interest (and, respectfully, the Court) that issues previously raised by the Commonwealth Agent remain outstanding and need to be resolved before a settlement can be executed and/or consummated.[5]  In particular, the certification of a new Commonwealth fiscal plan on June 29, 2018 presents a material impediment to the execution and/or consummation of a settlement agreement.  The Oversight Board's June 29, 2018 certified fiscal plan materially revised certain of the underlying assumptions that formed the basis of the May 30, 2018 certified fiscal plan, which was in effect when the Agents entered into the Agreement in Principle on June 5, 2018 and on which the Commonwealth Agent relied when entering into the Agreement in Principle.

3.      In stark contrast to the cash flow projections in the May 30, 2018 certified fiscal plan, the revised assumptions in the June 29, 2018 certified fiscal plan result in a significant cash flow deficit (when including the COFINA debt service payments under the contemplated settlement) in the aggregate amount of approximately $28 billion (in nominal dollars),[6] even

---

[4]   The Commonwealth Agent was not included in the negotiations between the Oversight Board, the COFINA bondholders, and monoline insurers regarding the terms of a COFINA plan of adjustment.  In fact, the Commonwealth Agent only received a copy of the COFINA Plan Presentation when it was made public.

[5]   The Commonwealth Agent previously advised the Court of these issues at the July 25, 2018 omnibus hearing. *See* Hr'g Transcript, July 25, 2018, at 117:25-118:5 ("In light of recent developments involving the fiscal plan, some of these assumptions are no longer valid, thereby affecting these same revenue and expense and debt capacity projections. This, in turn, could have a very real effect on the feasibility of the settlement contemplated in the Commonwealth-COFINA agreement in principle.").  This was reiterated in the Agents' joint motion to extend the abeyance period [Docket No. 537 in Adv. Proc. No. 17-257 (LTS)] ("Additionally, as mentioned by counsel to the Commonwealth Agent at the omnibus hearing on July 25, 2018, there are several other issues that may require further negotiation and discussion, which may impact the timing, process, and execution of the Settlement Agreement.").

[6]   Because the projections underlying the certified fiscal plans are subject to confidentiality restrictions, the Commonwealth Agent is precluded from describing in this Informative Motion the full extent of the effects of the revised assumptions.  That said, the 40 year forecast, as presented in Exhibit 21 of the Commonwealth's June 29, 2018 certified fiscal plan, illustrates that the COFINA settlement is not feasible based on the projected

Case:17-03283-LTS Doc#:5459 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Document Page 4 of 22

assuming that the fiscal plan contemplated making no plan distributions to Commonwealth creditors. Obviously, assuming that there would be no payments to any Commonwealth creditors is unrealistic and would lead to an unconfirmable plan of adjustment for the Commonwealth.

4.     Given that the Commonwealth Agent must consider the interests of the Commonwealth itself,[7] the Commonwealth Agent does not believe that a settlement can be executed and/or consummated which would lead to a significant cash flow deficit (and thus the Commonwealth's inability to pay current expenses) of approximately $28 billion (in nominal dollars). The Commonwealth Agent believes that this Commonwealth feasibility issue needs to be resolved prior to execution and/or consummation of a settlement agreement. It also does not appear that this issue was addressed in the COFINA Plan Presentation.

5.     Furthermore, under paragraph 4(i) of the Stipulation, any settlement requires the consent of at least one of the two Commonwealth Creditor Representatives. At the time of execution of the Agreement in Principle, only the Official Committee of Retirees (the "Retiree Committee"), which is one of the Commonwealth Creditor Representatives, had advised the Commonwealth Agent that it supported the Agreement in Principle.[8] In connection with the negotiation of settlement documentation, the Retiree Committee has advised the Commonwealth

---

surplus/deficits, given that over the 40 year projection period the cumulative surplus, prior to any COFINA debt service payments under the contemplated settlement, is only $4 billion (in nominal dollars).

[7]     *See* Stipulation ¶4.f ("each Agent shall, with the advice and assistance of counsel, endeavor to the best of the Agent's ability under the circumstances to litigate and negotiate from the perspective of what result is best for the Debtor the Agent represents, as opposed to what result is best for any particular type of creditor of the Debtor the Agent represents"); ¶4.g ("each Agent may consider what result, through litigation, negotiation and mediation, will render its Debtor best able to achieve fiscal responsibility and access to the capital markets, in the judgment of each Agent").

[8]     The Retiree Committee's support was conditioned on definitive documentation.

4

Agent that it also views the resolution of the Commonwealth feasibility issue as a pre-condition to execution and/or consummation of a settlement agreement.[9]

6. The Commonwealth Agent remains dedicated to attempt to resolve this issue to allow for a settlement to proceed, although it recognizes that the formulation and certification of a revised fiscal plan is completely outside of its control. Nevertheless, the Commonwealth Agent will proceed with its discussions of this issue with parties in interest and continue its collaborative process with the COFINA Agent in order to reach agreement on a settlement agreement that conditions consummation thereof on the Oversight Board having certified a fiscal plan that projects Commonwealth net cash flows (after measures) over the next 40 years in an amount not materially less than the net cash flows (after measures) projected in the May 30, 2018 certified fiscal plan.

*[Remainder of page intentionally left blank.]*

---

[9] While the Stipulation expressly gives the Oversight Board the power to incorporate its own settlement of the Commonwealth-COFINA Dispute into a Commonwealth plan, *see* Stipulation ¶4.n, the Stipulation does not grant any such powers to the Oversight Board with respect to the filing of a Bankruptcy Rule 9019 motion and, in fact, expressly limits the Oversight Board in such context to filing a Bankruptcy Rule 9019 motion which incorporates a settlement reached between the Agents. *See* Stipulation ¶4.j. Obviously, a settlement agreement has not yet been entered into between the Agents at this time.

WHEREFORE, the Commonwealth Agent requests that the Court take notice of the

foregoing.

Dated:  August 13, 2018          */s/ G. Alexander Bongartz*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212)318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured Creditors for all Title III Debtors (except for COFINA), as Commonwealth Agent*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone:  (787)523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to Official Committee of Unsecured Creditors for all Title III Debtors (except for COFINA), as Commonwealth Agent*

Case 17-00257-LTS Doc#540-1 Filed 09/13/18 Entered 09/13/18 16:36:82 Desc: Exhibit A Page 1 of 3

# Exhibit A

**Oversight Board's Press Release, dated August 8, 2018**



**Financial Oversight and Management Board for Puerto Rico**

**PRESS RELEASE**

For Immediate Release

### OVERSIGHT BOARD REACHES DEAL WITH COFINA BONDHOLDERS

*Proposed COFINA Bondholders Agreement to save Puerto Rico over $17 billion*

*(San Juan, PR – August 8, 2018)*– The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), created by Congress under the bipartisan Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA" or the "Act"), and the Government of Puerto Rico today announced that they have reached a deal with Senior and Junior COFINA bondholders and monoline insurers on the economic treatment of COFINA bondholders and on the terms of new COFINA securities. The Board expects this deal to lead to a consensual plan of adjustment for COFINA and represents a significant milestone in resolving Puerto Rico's debt crisis.

"Our objective has been to achieve a debt restructuring agreement with all COFINA parties consistent with the agreement in principle reached by the agents for the COFINA and Commonwealth, the terms of which were announced on June 7, 2018, and we believe this agreement has honored that goal," said Natalie Jaresko, Executive Director of the Oversight Board. "Moreover, this consensual deal with all COFINA bondholders proves both the Board's and Government's commitment to reaching consensual agreements to Puerto Rico's debt wherever possible. We do want to thank the appointed federal judge mediators whose tireless efforts were essential to the constructive negotiation process we had with the COFINA bondholders, as well as the Ad Hoc Group of Senior bondholders, monolines insurers and other bondholders, who played an important role to create an acceptable consensual plan."

The deal provides for more than a 32% reduction in COFINA debt, gives Puerto Rico approximately $17.5 billion in debt service savings, avoids additional costly and time consuming litigation, enables local retail bondholders in Puerto Rico to receive a significant recovery, and provides flexibility to the Commonwealth in managing future debt refinancing, while avoiding the liquidity based borrowings that contributed to the current crisis.

PO Box 192018 San Juan, PR 00919-2018; www.oversightboard.pr.gov; comments@oversightboard.pr.gov

Case:17-00257-LTS Doc#:520-33 Filed:09/13/18 Entered:09/13/18 16:36:32 Desc:
Exhibit A-V Page 9 of 8

"We welcome this agreement which represents a big step forward to achieving PROMESA's mandates and continuing to restructure responsibly Puerto Rico's debt in a sustainable way. We look forward to furthering these efforts with all creditors," Jaresko added.

A copy of the final presentation of terms delivered to creditors in mediation is available on the Oversight Board's website at www.oversightboard.pr.gov and will be filed on EMMA.

###

Contact:
Forculus Strategic Communications
José Luis Cedeño
787-400-9245
jcedeno@forculuspr.com
info@forculuspr.com

Contact (Mainland):
APCO Worldwide
Gabriella Zen
202-778-1056
gzen@apcoworldwide.com

Board's Contact Information:
E-mail: comments@oversightboard.pr.gov

**Exhibit B**

**Presentation "Securities Terms for the COFINA Plan of Adjustment,"
dated August 7, 2018**



Prepared at the Direction of Counsel / Subject to FRE Rule 408 / Common Interest Privilege



# Securities Terms for the COFINA Plan of Adjustment

Dated August 7, 2018

Prepared at the Direction of Counsel
/ Subject to FRE Rule 408

# Summary of FOMB's Proposed Securities Terms

- The FOMB would like to reach a consensual COFINA Plan of Adjustment with all parties

- The FOMB's proposed new COFINA securities honor all property terms of the Settlement in Principle Agreement, including the following:

  — The 53.65% Pledged Sales Tax Base Amount ("PSTBA") cash flow through and including 2058 (40 years) is fully allocated to the New COFINA Bonds

  — All pre-FY19 BNYM cash is allocated to COFINA and subsequent deposits are split according to the Settlement in Principle percentage splits

  — All current COFINA holders receive new closed Senior Lien Bond secured by the 5.50% pledged SUT

    • No parity debt may be issued other than refinancing bonds that produce debt service savings in each year for COFINA (the "ABT Test")

- In accordance with PROMESA, the FOMB also seeks to create long-term market access for the Commonwealth with an expanded subordinate lien ABT

citi

Case 17-03283-LTS Doc#:520-23 Filed:08/13/18 Entered:08/13/18 16:36:32 Desc: Exhibit B Page 14 of 13

# Illustration of Agent "Settlement in Principle" Allocations

Prepared at the Direction of Counsel / Subject to FRE Rule 408



NOTE: All figures preliminary and subject to change

3

Prepared at the Direction of Counsel
/ Subject to FRE Rule 408

# New COFINA Senior Lien Bonds

All COFINA holders to receive their recovery in the form of Senior Lien Bonds.

## Overview of Senior Lien Bonds

- COFINA holders will receive Senior Lien Bonds

- Senior Lien Bonds designed to enhance liquidity for investors

- New COFINA Bonds in the Senior Lien would have a senior pledge of the 5.50% SUT up to the 53.65% PSTBA COFINA portion

- All bonds to bear fixed rates on a pro-rata basis which will include:

  — Current Interest Bonds ("CIBs") (pay cash interest); and

  — Capital Appreciation Bonds ("CABs") (accrete non-cash interest until maturity)

## Closed Lien

- Parity Bonds permitted to refinance Senior Lien Bonds if Annual Debt Service not increased in any year, final maturity not extended and debt service held below portion of 53.65% PSTBA allocated to the Senior Lien Bonds

NOTE: All figures preliminary and subject to change

citi

Prepared at the Direction of Counsel
/ Subject to FRE Rule 408



# Description of Senior Lien New COFINA Bonds

## Senior Lien Securities

- Senior Lien on 5.50% Pledged SUT to fund COFINA 53.65% portion of PSTBA from "first dollars"

- All Bonds begin to accrue interest beginning 8/1/2018 (dated date)

- CIB Term Bonds maturing in years 10, 14, 20 and 25 (2028, 2032, 2038 and 2043)

  — First sinking fund on 2028 maturity commences in 2019; annual sinkers thereafter

  — Term Bond sizes ranging from $995 Million to over $3.8 Billion

- CAB Term Bond maturing in 40 years (2058)

  — First sinking fund on term bond commences in 2043; annual sinkers thereafter

  — Term bond initial par value of ~$2.7 Billion

### Senior Lien Current Interest Bond Terms

| Year | Par | Cpn/Yld |
|---|---|---|
| Total/Avg | $9,249,560,000.00 | 4.543% |
| 2028 | 995,875,000.00 | 4.350% |
| 2032 | 1,206,510,000.00 | 4.500% |
| 2038 | 3,212,925,000.00 | 4.550% |
| 2043 | 3,834,250,000.00 | 4.600% |

### Senior Lien Capital Appreciation Bond Terms

| Year | Initial Value* | Accreted Value | Yield |
|---|---|---|---|
| Total/Avg | $2,697,682,642.20 | $15,401,229,579.75 | 5.500% |
| 2058 | 2,697,682,642.20 | 15,401,229,579.75 | 5.500% |

*Assumes CAB Initial Value of 8/1/18

|  |  |
|---|---|
| Average Coupon/Yield | 4.759% |
| Duration Weighted Yield to Par | 5.022% |

## Call Provisions

- 2028 CIB – non-call

- 2032 CIB – Par call commencing 2025 (7-year call)

- 2038 CIB – Par call commencing 2028 (10-year call)

- 2043 CIB – Par call commencing 2028 (10-year call)

- 2058 CAB – Callable at 107.5% AV 2028 through 2032, 105% AV 2033 through 2037, 103% AV 2038 through 2042, 100% AV 2043 through maturity

  (10-year call at 107.5% AV with declining premiums to 100% AV in year 25)

NOTE: All figures preliminary and subject to change. Coupons set forth are preliminary and result from discussions with Citi's UW desk and assume strong security and collateral package. No market test required; Assumes all FY 2019 53.65% PSTBA cash flow for Current Interest Bonds and dated date of 8/1/2018.

Case 17-00257-LTS Doc#:520-3 Filed 09/13/18 Entered 09/13/18 16:36:32 Desc
Exhibit B V Page 16 of 13

Prepared at the Direction of Counsel
/ Subject to FRE Rule 408

# Description of Senior Lien New COFINA Bonds (cont'd)

## Additional Bonds Test

- Subordinate Lien Bonds for CW purposes payable only from the 5.50% pledged SUT and issued if compliant with the following ABT tests (a) and (b) below are met:

   a) Preceding year's Pledged 5.5% SUT (if issued pre-2024, assumed to grow at April 2018 certified CW Fiscal Plan and, if issued after 2023, assumed to grow at average annual SUT growth rate for the preceding 5 Fiscal years) is greater than 1.50x the COFINA Bonds annual debt service in any succeeding year; AND

   b) The preceding year's collections from 5.5% SUT equal to or greater than 1.10x coverage to MADs

- After 2028, final maturity extension permissible for future CW new money bonds, but only with ABT test compliance

NOTE: All figures preliminary and subject to change.

citi

Prepared at the Direction of Counsel
/ Subject to FRE Rule 408

# Credit Metrics of the new Senior Lien Bonds

## Senior Lien COFINA Bonds meet several key AA category SUT revenue bond credit criteria.

### Senior Lien Credit Metrics

- Senior Lien on 5.5% Island-Wide SUT

- Projected Debt Service Coverage Ratio > 260% (2.6x)

- Historical 2018 Pledged Revenues MADs Coverage > 130% (1.3x)

- Parity borrowing limited to refunding bonds

- Refunding Bond ABT allows no increase to annual debt service

- "First Dollars" Funding from Pledged 5.50% SUT

- Non-Impairment Covenant

- Retention of Title III Court jurisdiction to ensure protection and enforcement of legal framework and security pledges

- **NOTE: While the Senior Lien Bonds are designed to meet certain metrics, the FOMB does not anticipate the bonds will receive investment grade ratings at issuance and the COFINA POA will not be contingent on receipt of ratings on the Bonds**

### Select AAA and AA SUT Rating Criteria Ranges

- Nature of Special Tax Pledge: Very Broad (AAA) to Broad (AA)

- Maximum Annual Debt Service Coverage Ratio: 4.5x (AAA) to 2.51x (AA)

- Parity Bond ABT Test range: 3.0x or closed (AAA) to 1.76x (AA)

- Revenue Trend: Significantly improving with no historical declines (AAA) to Generally improving with few historical declines (AA)

### Examples of SUT Credits rated AA or higher

- Massachusetts School Building Authority (Aa2/AA+/AA+)
  - Sr. ABT 1.4x & Sub. ABT 1.3x / MADS Coverage: 2.2x

- LA County Metropolitan Transportation Authority (Aa1/AAA/NR)
  - ABT 2.46x / MADS Coverage: 3.7x

- Sales Tax Securitization Corporation (IL) (NR/AAA/AA)
  - ABT 4.0x / MADS Coverage: 6.6x

- Utah Transit Authority (Aa2/AA/AAA)
  - Sr. ABT 2.0x & Sub. ABT 1.2x / Sr. MADS Coverage: 2.2x & Sub. MADS Coverage: 1.36x

NOTE: All figures preliminary and subject to change

Case 17-03283-LTS Doc#4750-23 Filed 01/12/19 Entered 01/12/19 16:36:32 Desc:
Exhibit B V Page 19 of 13

Prepared at the Direction of Counsel
/ Subject to FRE Rule 408

# Illustration of Cash Flows; Recovery and Coverage Metrics



| | Sr. Lien Coverage |
|---|---|
| 2019 MADS Coverage | 1.30x |
| Average Coverage | 2.64x |

| Fiscal Year | Sr. Lien Coverage | Fiscal Year | Sr. Lien Coverage |
|---|---|---|---|
| 2019 | 3.07x | 2039 | 2.17x |
| 2020 | 3.03x | 2040 | 2.14x |
| 2021 | 3.00x | 2041 | 2.12x |
| 2022 | 2.98x | 2042 | 2.17x |
| 2023 | 2.96x | 2043 | 2.23x |
| 2024 | 2.93x | 2044 | 2.28x |
| 2025 | 2.89x | 2045 | 2.34x |
| 2026 | 2.85x | 2046 | 2.40x |
| 2027 | 2.80x | 2047 | 2.47x |
| 2028 | 2.74x | 2048 | 2.53x |
| 2029 | 2.66x | 2049 | 2.60x |
| 2030 | 2.59x | 2050 | 2.67x |
| 2031 | 2.53x | 2051 | 2.74x |
| 2032 | 2.47x | 2052 | 2.81x |
| 2033 | 2.42x | 2053 | 2.88x |
| 2034 | 2.37x | 2054 | 2.96x |
| 2035 | 2.32x | 2055 | 3.04x |
| 2036 | 2.27x | 2056 | 3.13x |
| 2037 | 2.23x | 2057 | 3.21x |
| 2038 | 2.20x | 2058 | 3.30x |

| Aggregate Par + BNYM Recovery (in %) | |
|---|---|
| COFINA Sr. Recovery | 93.000% |
| COFINA Sub. Recovery | 56.399% |
| RSA Acceptance Charge | 2.000% |
| Aggregate Recovery | 74.505% |



**Legend:**
- Senior Lien CIB Debt Service
- 46.35% Pledged Sales Tax Base Amount
- Projected 5.50% SUT
- Senior Lien CAB Debt Service
- Excess 5.5% SUT
- 100% Pledged Sales Tax Base Amount

Chart annotations: 2019 Proj. 5.5% SUT; 1.30x MADS Overall Cov.; 3.07x Initial Overall Cov.

NOTE: All figures preliminary and subject to change; Recoveries shown above assume New COFINA Bond par plus ~$1.2 billion in BNYM cash and assume pre-petition interest only

8

Prepared at the Direction of Counsel / Subject to FRE Rule 408

# Key Features of Securities for the COFINA POA (continued)

## Debt Service Reserve Fund

- None required, given "first dollars" flow of funds structure for the 53.65% PSTBA to COFINA

## Non-Impairment Covenant

- COFINA Pledged SUT percentage may be reduced to a rate less than 5.50% if two rating agencies confirm at least an A2/A category or higher subsequent to such reduction and the Pledged SUT percentage is not reduced below 3.00%

## Collateral Substitution

- CW may only substitute New Collateral for Pledged SUT if (1) New Collateral is a tax of general application throughout Puerto Rico that is being enacted in full substitution for the SUT or otherwise constitutes like or comparable security for the COFINA Bonds and not be "available resources" of the Commonwealth; AND (2) after such substitution, all COFINA Bonds are and remain at A2/A category or higher by at least two of the following four rating agencies: S&P, Moody's, Fitch or Kroll, provided one of those two ratings shall be from either Standard & Poor's or Moody's if such agencies are still providing ratings and rating confirmations in the U.S. municipal securities market; (3) is protected by the same Non-Impairment rating threshold described above AND (4) Rating Confirmations are received from both such agencies prior to the effective date of such substitution

## Mark-to-Market Test

- None

## Rights of Acceleration

- New COFINA Bonds shall not have any rights of acceleration

## Ratings and Rating Metrics

- No ratings required for confirmation of COFINA POA or thereafter; two ratings to be sought
- As noted, Bonds designed to comply with investment grade rating criteria for coverage and ABT metrics

NOTE: All figures preliminary and subject to change

9

Case:17-00257-LTS Doc#:520-3 Filed:09/13/18 Entered:09/13/18 16:36:32 Desc:
Exhibit B Page 20 of 22

Prepared at the Direction of Counsel
/ Subject to FRE Rule 408

# Key Features of Securities for the COFINA POA (continued)

## RSA Acceptance Consideration

- Mediation parties who agreed on August 7th to negotiate and sign an RSA would receive consideration for their efforts based on their holdings as of that date

  – If RSA parties buy more bonds the RSA fee will not be extended to any additional bonds acquired after that record date

- 2.00% of consideration will be set aside in the form of Bonds/Cash

- On-Island Retail capped at $1.0 billion in par amount will be eligible to receive a fee equal to 2.00%, less certain costs

## Tax-Exemption

- Eligibility and Allocation to be determined by Section 103 Tax Counsel

- Common goal is to maximize the amount of restructured securities that are tax-exempt to the extent permitted by law – consideration to be given as to whether any remaining taxable amounts can be structured into a sub-series of bonds allocated to on-island holders

- Subject to any contrary elections made by bondholders, to the extent not all new COFINA bonds are Section 103 tax-exempt, all holders will receive a ratable strip of all securities issued

## Monoline Insurer Requests

- Subject to (a) confirmation from nationally recognized Section 103 tax counsel that the structure will not adversely affect the tax exempt treatment of either the existing tax-exempt COFINA Bonds or the new tax-exempt COFINA bonds and (b) Title III Court approval of structure, Monoline Insurers to receive New Bonds for deposit in Trust to secure Custody Receipts Structure

## Alternate Plan Treatment

- In the event the POA is not accepted by any class, COFINA reserves its rights to seek alternate treatment

citi

Prepared at the Direction of Counsel / Subject to FRE Rule 408

# Key Features of Securities for the COFINA POA (continued)

## Annual First Dollar Funding with Quarterly Funding permitted to Avoid TRANs borrowing if certain tests are met

- COFINA 53.65% PSTBA transfers to the COFINA Trustee will be funded annually from "first dollars" collected from the 5.5% Pledged SUT unless certain stringent tests for Quarterly First Dollars Funding are met

- Quarterly First Dollars may not be triggered prior to FY 2024

- Quarterly First Dollars permitted only if prior and current FY budget is balanced, quarterly bucketing shown to be necessary to avoid intra-fiscal year TRANs borrowing and prior year Pledged SUT collections provided 2X coverage of 53.65% PSTBA. **NOTE: Amount and timing of all debt service payments identical to "annual first dollars"**

- In each quarter until COFINA Bonds have been paid in full, the "First Dollars" collected from COFINA Pledged Taxes up to 25% of yearly scheduled COFINA's 53.65% Portion of the PSTBA shall be deposited into Debt Service Fund held by the Bond Trustee for payment to holders on their future scheduled P&I payment dates

- If CW Funding Bonds issued on Subordinate Lien, Subordinate Lien is funded on a Second Dollar basis subordinate to funding of Senior Lien

- SUT quarterly collections range tightly between 22-27% of the total annual SUT collections

| Fiscal Year Quarter | Q1 2014 | Q2 2014 | Q3 2014 | Q4 2014 | Q1 2015 | Q2 2015 | Q3 2015 | Q4 2015 |
|---|---|---|---|---|---|---|---|---|
| Quarter % of Annual Collections | 24.6% | 24.3% | 26.0% | 25.1% | 23.8% | 24.8% | 25.6% | 25.7% |
| Cumulative Annual Collections | 24.6% | 48.9% | 74.9% | 100.0% | 23.8% | 48.7% | 74.3% | 100.0% |

| Fiscal Year Quarter | Q1 2016 | Q2 2016 | Q3 2016 | Q4 2016 | Q1 2017 | Q2 2017 | Q3 2017 | Q4 2017 |
|---|---|---|---|---|---|---|---|---|
| Quarter % of Annual Collections | 22.0% | 24.7% | 27.0% | 26.2% | 24.5% | 24.8% | 26.0% | 24.7% |
| Cumulative Annual Collections | 22.0% | 46.7% | 73.8% | 100.0% | 24.5% | 49.3% | 75.3% | 100.0% |



Annual First Dollars Funding Approach

Quarterly First Dollars Funding Method

NOTE: All figures preliminary and subject to change

11

Prepared at the Direction of Counsel /
Subject to FRE Rule 408 / Common Interest Privilege

*IRS Circular 230 Disclosure: Citigroup Inc. and its affiliates do not provide tax or legal advice. Any discussion of tax matters in these materials (i) is not intended or written to be used, and cannot be used or relied upon, by you for the purpose of avoiding any tax penalties and (ii) may have been written in connection with the "promotion or marketing" of any transaction contemplated hereby ("Transaction"). Accordingly, you should seek advice based on your particular circumstances from an independent tax advisor.*

*In any instance where distribution of this communication is subject to the rules of the US Commodity Futures Trading Commission ("CFTC"), this communication constitutes an invitation to consider entering into a derivatives transaction under U.S. CFTC Regulations § § 1.71 and 23.605, where applicable, but is not a binding offer to buy/sell any financial instrument.*

Any terms set forth herein are intended for discussion purposes only and are subject to the final terms as set forth in separate definitive written agreements. This presentation is not a commitment to lend, syndicate a financing, underwrite or purchase securities, or commit capital nor does it obligate us to enter into such a commitment, nor are we acting as a fiduciary to you. By accepting this presentation, subject to applicable law or regulation, you agree to keep confidential the information contained herein and the existence of and proposed terms for any Transaction.

Prior to entering into any Transaction, you should determine, without reliance upon us or our affiliates, the economic risks and merits (and independently determine that you are able to assume these risks) as well as the legal, tax and accounting characterizations and consequences of any such Transaction. In this regard, by accepting this presentation, you acknowledge that (a) we are not in the business of providing (and you are not relying on us for) legal, tax or accounting advice, (b) there may be legal, tax or accounting risks associated with any Transaction, (c) you should receive (and rely on) separate and qualified legal, tax and accounting advice and (d) you should apprise senior management in your organization as to such legal, tax and accounting advice (and any risks associated with any Transaction) and our disclaimer as to these matters. By acceptance of these materials, you and we hereby agree that from the commencement of discussions with respect to any Transaction, and notwithstanding any other provision in this presentation, we hereby confirm that no participant in any Transaction shall be limited from disclosing the U.S. tax treatment or U.S. tax structure of such Transaction.

We are required to obtain, verify and record certain information that identifies each entity that enters into a formal business relationship with us. We will ask for your complete name, street address, and taxpayer ID. We may also request corporate formation documents, or other forms of identification, to verify information provided.

Any prices or levels contained herein are preliminary and indicative only and do not represent bids or offers. These indications are provided solely for your information and consideration, are subject to change at any time without notice and are not intended as a solicitation with respect to the purchase or sale of any instrument. The information contained in this presentation may include results of analyses from a quantitative model which represent potential future events that may or may not be realized, and is not a complete analysis of every material fact representing any product. Any estimates included herein constitute our judgment as of the date hereof and are subject to change without any notice. We and/or our affiliates may make a market in these instruments for our customers and for our own account. Accordingly, we may have a position in any such instrument at any time.

Although this material may contain publicly available information about Citi corporate bond research, fixed income strategy or economic and market analysis, Citi policy (i) prohibits employees from offering, directly or indirectly, a favorable or negative research opinion or offering to change an opinion as consideration or inducement for the receipt of business or for compensation; and (ii) prohibits analysts from being compensated for specific recommendations or views contained in research reports. So as to reduce the potential for conflicts of interest, as well as to reduce any appearance of conflicts of interest, Citi has enacted policies and procedures designed to limit communications between its investment banking and research personnel to specifically prescribed circumstances.

© 2018 Citigroup Global Markets Inc. Member SIPC. All rights reserved. Citi and Citi and Arc Design are trademarks and service marks of Citigroup Inc. or its affiliates and are used and registered throughout the world.

Citi believes that sustainability is good business practice. We work closely with our clients, peer financial institutions, NGOs and other partners to finance solutions to climate change, develop industry standards, reduce our own environmental footprint, and engage with stakeholders to advance shared learning and solutions. Highlights of Citi's unique role in promoting sustainability include: (a) releasing in 2007 a Climate Change Position Statement, the first US financial institution to do so; (b) targeting $50 billion over 10 years to address global climate change: includes significant increases in investment and financing of renewable energy, clean technology, and other carbon-emission reduction activities; (c) committing to an absolute reduction in GHG emissions of all Citi owned and leased properties around the world by 10% by 2011; (d) purchasing more than 234,000 MWh of carbon neutral power for our operations over the last three years; (e) establishing in 2008 the Carbon Principles; a framework for banks and their U.S. power clients to evaluate and address carbon risks in the financing of electric power projects; (f) producing equity research related to climate issues that helps to inform investors on risks and opportunities associated with the issue; and (g) engaging with a broad range of stakeholders on the issue of climate change to help advance understanding and solutions.

Citi works with its clients in greenhouse gas intensive industries to evaluate emerging risks from climate change and, where appropriate, to mitigate those risks.

efficiency, renewable energy and mitigation