Laws of Puerto Rico Annotated Currentness

The Constitution of the Commonwealth of Puerto Rico

Preamble

## Puerto Rico CONST Intro

## Introduction

We, the people of Puerto Rico, in order to organize ourselves politically on a fully democratic basis, to promote the general welfare, and to secure for ourselves and our posterity the complete enjoyment of human rights, placing our trust in Almighty God, do ordain and establish this Constitution for the commonwealth which, in the exercise of our natural rights, we now create within our union with the United States of America.

In so doing, we declare:

The democratic system is fundamental to the life of the Puerto Rican community.

We understand that the democratic system of government is one in which the will of the people is the source of public power, the political order is subordinate to the rights of man, and the free participation of the citizen in collective decisions is assured.

We consider as determining factors in our life our citizenship of the United States of America and our aspiration continually to enrich our democratic heritage in the individual and collective enjoyment of its rights and privileges; our loyalty to the principles of the Federal Constitution; the coexistence in Puerto Rico of the two great cultures of the American Hemisphere; our fervor for education; our faith in justice; our devotion to the courageous, industrious, and peaceful way of life; our fidelity to individual human values above and beyond social position, racial differences, and economic interests; and our hope for a better world based on these principles.

## ANNOTATIONS

### 1. Construction.

Supreme Court, after examining history of Commonwealth Constitution and its Preamble in particular, held that (a) Constitution did not bar change of status chosen by people of Puerto Rico or consecrate political program of any party about nature of such possible change; (b) said Constitution did not bind in any way political future of country; (c) our fundamental charter should not be used as grounds for any step that inclined or tried to incline political equilibrium towards any particular type of status, as considered by other segments of public opinion; and, (d) its Preamble neutral document in regards to future develop ments on status did not constitute adequate legal grounds for determination that financing possible development of particular political status for which funds were allocated could be construed as public purpose. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

Puerto Rico CONST Intro, PR CONST Intro

**Introduction, Puerto Rico CONST Intro**

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 1 Commonwealth of Puerto Rico constituted, Puerto Rico Const. Art. I, § 1

---

Laws of Puerto Rico Annotated **Currentness**

The Constitution of the Commonwealth of Puerto Rico

Article I. The Commonwealth

Puerto Rico Const. Art. I, § 1

§ 1 Commonwealth of Puerto Rico constituted

The Commonwealth of Puerto Rico is hereby constituted. Its political power emanates from the people and shall be exercised in accordance with their will, within the terms of the compact agreed upon between the people of Puerto Rico and the United States of America.

**History**

**Effectiveness.**

The Governor proclaimed the effectiveness of the Constitution of July 25, 1952. See 'Establishment of the Commonwealth of Puerto Rico and the Constituti on' under 'Historical Documents', ante, pages 134 148 of this volume.

**Cross references.**

Actions against the Commonwealth, see §§ 3077 et seq. of Title 32.

**CASE NOTES**

**11. Double jeopardy.**

Where respondents pled guilty to federal gun trafficking violations, dismissal of pending Commonwealth of Puerto Rico charges was proper under the dual-sovereignty carve-out from the Double Jeopardy Clause because the Double Jeopardy Clause bars both Puerto Rico and the United States from prosecuting a single person for the same conduct under equivalent criminal laws; the Commonwealth and the United States are not separate sovereigns, because the ultimate source of Puerto Rico's prosecutorial power is the Federal Government. Puerto Rico v. Sanch ez Valle, 136 S. Ct. 1863, 195 L. Ed. 2d 179, 2016 U.S. LEXIS 3773 (U.S. 2016).SUPREME COURT OF THE UNITED STATES

**ANNOTATIONS**

**1. New status Generally.**

Decision about ultimate political destiny or approval of measures affecting relationship with United States radically lies with people of Puerto Rico, not with Legislative Assembly. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

---

Treatment of question of status appears to be no longer exclusively federal, but is the core and beginning of a new, common approach to legal problems involving the relationship between the United States and Puerto Rico. The Judicial Process and the Status of Puerto Rico, 30 University of P.R. Law Review 145 (1961).

Opinion in United States v. Figueroa Rios, 140 F. Supp. 376 (1956); makes an effort to disregard conventional labels and to apply or not apply a federal statute on the basis of its own nature in terms of the present political reality of the Commonwealth, even against expressed intent of Congress at the time the act was passed. The Judicial Process and the Status of Puerto Rico, 30 University of P.R. Law Review 145 (1961).

Since the decision as to whether a law is 'locally inapplicable' under § 9 of the Federal Relations Act rests in the courts, giving added emphasis to § 9 in status cases broadens power of courts in extending or restricting t he nature of the compact. The Judicial Process and the Status of Puerto Rico, 30 University of P.R. Law Review 145 (1961).

There is a tendency in decisions to disregard the actual intent of Congress as extracted from the legislative history of Public Law 600. The Judicial Process and the Status of Puerto Rico, 30 University of P.R. Law Review 145 (1961).

The basis of the new political status of Puerto Rico rests upon the consent of both parties to the compact embodied in the approval and ratification of Public Law 600. Carrion v. Gonzalez, 125 F. Supp. 819, 1954 U.S. Dist. LEXIS 2770 (D.P.R. 1954), aff'd, Figueroa v. Puerto Rico, 232 F.2d 615, 1956 U.S. App. LEXIS 3068 (1st Cir. P.R. 1956).

## 2. Commonwealth.

As a matter of right, the Commonwealth is a political entity with autonomous features that possess an atmosphere of proper government, a sphere of governmental powers and of public authority which is exclusive. Miriam J. Ramirez de Ferrer v. Juan Mari Bras, 142 D.P.R. 941, 1997 PR Sup. LEXIS 352 (P.R. 1997).

Puerto Rico is a duly constituted, existing political entity, but it is not a state in the federal union as are the other 50 states. Sanchez v. United States, 376 F. Supp. 239, 1974 U.S. Dist. LEXIS 8275 (D.P.R. 1974).

As long as Puerto Rico retains its 'commonwealth' status, it may be fr ee in managing its own local affairs, but it does not have independent and separate existence and it is linked to the United States of America and hence is a part of its political system in a manner compatible with its federal structure. Feliciano v. United States, 297 F. Supp. 1935 (1969).

Puerto Rico is not a state of the Union, nor a territory, unincorporated or incorporated into the Union preparatory to statehood. Alcoa S.S. Co. v. Perez, 295 F. Supp. 187, 1968 U.S. Dist. LEXIS 9746 (D.P.R. 1968).

At the present time, Puerto Rico occupies, and has occupied, since 1952, the status of a self-governing Commonwealth as the result of a compact entered into with the United States. Pan American Standard Brands, Inc. v. United States, 177 F. Supp. 769 (Cust. Ct. 1959).

Puerto Rico is, under the terms of the Compact, sovereign over matters not ruled by the Constitution of the United States. Indeed, not only the legislative history of the Compact but governmental action supports this conclusion. Mora v. Mejias, 115 F. Supp. 610, 1953 U.S. Dist. LEXIS 2455 (D.P.R. 1953).

In the positive side, the Commonwealth of Puerto Rico has entered into a voluntary association with the United States, on the basis of a Compact, with the element of a common citizenship. Mora v. Torres, 113 F. Supp. 309, 1953 U.S. Dist. LEXIS 2572 (D.P.R.), aff'd, 206 F.2d 377, 1953 U.S. App. LEXIS 2756 (1st Cir. P.R. 1953).

See also the resolutions of the General Assembly of the United Nations of November 3, 1953, A/C.4/ L300, and November 27, 1953, A¶V.459.

## 3. Territory.

On the date in which the accused committed the crime and was prosecuted for the same, Puerto Rico was not a territory incorporated of the United States. The doctrine held in Balzac v. Puerto Rico, 258 U.S. 298, 42 S. Ct. 343 (1922), that Puerto

Rico is an organized unincorporated territory, was not overruled by Reid v. Covert, 354 U.S. 1, 77 S. Ct. 1222 (1957).Juan Jaca Hernandez v. Gerardo Delgado., 82 P.R.R. 389, 1961 PR Sup. LEXIS 345 (P.R. 1961).

Whatever the actual status of the Commonwealth of Puerto Rico may be in all its details, its present status is certainly not that of a state of the United States, nor is it even that of a territory incorporated into the union preparatory to statehood. Fonseca v. Prann, 282 F.2d 153, 1960 U.S. App. LEXIS 3716 (1st Cir. P.R. 1960), cert. denied, 365 U.S. 860, 81 S. Ct. 826, 5 L. Ed. 2d 822, 1961 U.S. LEXIS 1461 (U.S. 1961).

The Commonwealth of Puerto Rico is still a territory of the United States within the diversity of citizenship provision. 28 U.S.C. § 1332(b). Detres v. Lions Building Corporation, 234 F.2d 596 (7th Circuit) (1956) After the decision of this case, Congress passed Public Law No. 808, approved July 26, 1956, to the effect that: '(b) The word 'States', as used in this section, includes the Territories, the District of Columbia, and the Commonwealth of Puerto Rico.' .

Puerto Rico is no longer a territory in the sense that the term is used in the Constitution and the cases. Therefore, if the Congress of the United States proposes in the future to make a statute applicable to Puerto Rico, . . . it will have to make it so other than by the use of the term 'territory'. Cosenti no v. International Longshoremen's Asso., 126 F. Supp. 420, 1954 U.S. Dist. LEXIS 2494 (D.P.R. 1954).

### 4. State.

Within the context of the Act of February 1, 1928, enacted by the Congress of the United States 16 U.S.C. § 457 the word 'State' includes the C ommonwealth of Puerto Rico. Norman R. Gearheart v. Eugene Haskell Burress y U. S. Fidelity and Guaranty Company., 87 P.R.R. 53, 1963 PR Sup. LEXIS 174 (P.R. 1963).

The word 'State' may in the context of a particular act of Congress ha ve a broader connotation than a state in the federal union. It may be that the Commonwealth of Puerto Rico, organized as a body politic by the people of Puerto Rico under their own constitution, pursuant to the terms of the compact offered to them in Public Law 600 and by them accepted, is a State within the meaning of 28 U.S.C. § 2281, providing for a three-judge court in actions to enjoin the enforcement of State statutes. Under the preamble of the Constitution of the Commonwealth, Puerto Rico has not become a State in the Federal Union like the 48 states, but it would seem to have become a State within the common and accepted meaning of the word. It is a political entity created by the act and with the consent of the people of Puerto Rico and joined with the United States of America under the terms of the compact. The decision of this question, however, was not necessary, in this case. Mora v. Mejias, 206 F.2d 377, 1953 U.S. App. LEXIS 2756 (1st Cir. P.R. 1953).

Within the intendment and policy of 28 U.S.C. § 2281, the Commonwealth of Puerto Rico, which no longer is a territory and must be considered a state, a three-judge court in order to avoid 'unnecessary interference with the la ws of a sovereign state' must be convened in cases where the constitutiona lity of a statute is at stake. Mora v. Mejias, 115 F. Supp. 610, 1953 U.S. Dist. LEXIS 2455 (D.P.R. 1953).

See also § 23 of Title 31.

### 5. Status of Constitution.

Our Bill of Rights is of broader make than traditional one collecting common denominator of diverse cultural feelings about new categories of rights. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

Puerto Rico Constitution is neither entirely static nor immune to social change. It was enacted to last, and to respond to changing realities, not just to perpetuate status quo. Autoridad de Acueductos v. Union de Empleados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

Acceptance by Congress of our Constitution did not make the latter a federal law. Hence, to make more effective the right for trial by jury contained therein, it need not be guaranteed under the same conditions which guarantees it in the federal courts. El Pueblo de Puerto Rico v. Manuel Figueroa, 77 P.R.R. 175, 1954 PR Sup. LEXIS 351 (P.R. 1954), aff'd,

Puerto Rico, 232 F.2d 615, 1956 U.S. App. LEXIS 3068 (1st Cir. P.R. 1956).

Our Constitution is a local basic character of government and not a federal law. Consequently, the meaning of its provisions is for our local courts and not the federal courts to determine. El Pueblo de Puerto Rico v. Manuel Figueroa, 77 P.R.R. 175, 1954 PR Sup. LEXIS 351 (P.R. 1954), aff'd, Figueroa v. Puerto Rico, 232 F.2d 615, 1956 U.S. App. LEXIS 3068 (1st Cir. P.R. 1956).

### 6. Purpose.

The purpose of Public Law 600 was to enlarge and not to restrict the powers and the autonomy of Puerto Rico over its internal matters. Fournier v. Gonzalez., 80 P.R.R. 254, 1958 PR Sup. LEXIS 103 (P.R. 1958), aff'd, Fournier v. Gonzalez, 269 F.2d 26, 1959 U.S. App. LEXIS 3465 (1st Cir. P.R. 1959).

### 7. Powers of the commonwealth.

Unless authorized by people, Legislative Assembly cannot legislate in areas reserved to the people of Puerto Rico, such as presidential vote. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

Imposition of property taxes on broadcasting license of television station neither undermines nor destroys public policy of federal government or Federal Communications Commission, nor does it invade province of supremacy of U.S. Congress. WAPA T.V. Broadcasting Corporation v. Secretario de Hacienda., 105 D.P.R. 816, 1977 PR Sup. LEXIS 1944 (P.R. 1977).

State can collect revenue by taxing U.S. property for all the time said property is utilized by private citizen or corporation, provided taxation covers value of possession or use by citizen only. WAPA T.V. Broadcasting Corporation v. Secretario de Hacienda., 105 D.P.R. 816, 1977 PR Sup. LEXIS 1944 (P.R. 1977).

In exercising its police power to protect the general welfare, the state cannot act in an arbitrary or unreasonable manner when its exercise is subject to tests of reasonability. Estado Libre Asociado de Puerto Rico v. Rosalia Rodriguez y Roberto Gonzalez Lago, 103 D.P.R. 636, 1975 PR Sup. LEXIS 1824 (P.R. 1975).

The Commonwealth possesses many of the attributes of sovereignty, and has full power of local self-determination similar to the one the states of the Union have. Ursulich v. Puerto Rico Nat'l Guard, 384 F. Supp. 736, 1974 U.S. Dist. LEXIS 8932 (D.P.R. 1974).

The State a juridical figure composed of persons, properties, rights, an d duties acts, by necessity, through its agents. Clara Garcia Colon v. Secreta rio de Hacienda., 99 P.R.R. 757, 1971 PR Sup. LEXIS 97 (P.R. 1971).

Aesthetics, by itself alone, constitutes a valid ground for the exercise of the police power by the Legislature. Cerveceria Corona, Inc. v. Francisco Lizardi., 97 P.R.R. 43, 1969 PR Sup. LEXIS 107 (P.R. 1969).

The public and governmental powers of the Commonwealth of Puerto Rico within its exclusive authority the most fundamental of which is to levy tax flow from itself and from its own authority, exercising the power of taxation free from any higher authority, subject only to the limitations of its own Constitution and its Bill of Rights, and to those obligations which the people imposed on itself in accepting the federal relations, Act No. 600. R.C.A. Communications, Inc. v. Gobierno de la Capital., 91 P.R.R. 404, 1964 PR Sup. LEXIS 374 (P.R. 1964), overruled, Puerto Rico v. Northwestern Selecta, Inc., 185 D.P.R. 40, 2012 PR Sup. LEXIS 42 (P.R. 2012).

### 8. National defense.

The national defense cannot be regulated by the local government of Puerto Rico or any state. Feliciano v. United States, 297 F. Supp. 1356, 1969 U.S. Dist. LEXIS 9167 (D.P.R. 1969), aff'd, 422 F.2d 943, 1970 U.S. App. LEXIS 10335 (1st Cir. P.R. 1970).

§ 1 Commonwealth of Puerto Rico constituted, Puerto Rico Const. Art. I, § 1

Puerto Rico lacks the power to suit to local taste an act of Congress relating to national defense. Feliciano v. United States, 297 F. Supp. 1356, 1969 U.S. Dist. LEXIS 9167 (D.P.R. 1969), aff'd, 422 F.2d 943, 1970 U.S. App. LEXIS 10335 (1st Cir. P.R. 1970).

The authority of the President of the United States to designate defensive sea areas comprises Puerto Rico and it is not necessary to negotiate with the government of Puerto Rico in order to establish a defensive area in Puerto Rican waters. Feliciano v. United States, 297 F. Supp. 1356, 1969 U.S. Dist. LEXIS 9167 (D.P.R. 1969), aff'd, 422 F.2d 943, 1970 U.S. App. LEXIS 10335 (1st Cir. P.R. 1970).

## 9. Immunity.

The Commonwealth of Puerto Rico enjoys sovereign immunity and may not be sued in federal courts without its consent. Pla Aguirre v. Puerto Rico, 353 F. Supp. 1294, 1972 U.S. Dist. LEXIS 12173 (D.P.R. 1972).

## 10. Higher interest of state.

Court decision regarding constitutional challenge cannot relegate higher interest of state compelling state interest to lowest category concerning con stitutional rights alleged by individual, and transform this one into a privileged figure. Carmen N. Hermina Gonzalez v. Luis Silva Recio., 107 D.P.R. 667, 1978 PR Sup. LEXIS 575 (P.R. 1978).

Puerto Rico Const. Art. I, § 1, PR CONST Art. I, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| :--- |
| The Constitution of the Commonwealth of Puerto Rico |
| Article I. The Commonwealth |

Puerto Rico Const. Art. I, § 2

§ 2 Form of government

The government of the Commonwealth of Puerto Rico shall be republican in form and its legislative, judicial and executive branches as established by this Constitution shall be equally subordinate to the sovereignty of the people of Puerto Rico.

**History**

**Repealing clause.**

Section 1 of Act Apr. 10, 2008, No. 38, provides: 'Sections 2, 3, and 14 of the Political Code of 1902, related to the composition, seat and jurisdiction of the Insular Government, which have become obsolete upon the approval of Article I of the Constitution of Puerto Rico are hereby repealed.'

**Prior law.**

Article 2 of the Political Code of 1902, repealed by § 1 of Act Apr. 10 , 2008, No. 38, provided that the Executive, Legislative and Judicial Departments, as organized by the Organic Law of Puerto Rico, would constitute the Government of Puerto Rico.

Puerto Rico Const. Art. I, § 2, PR CONST Art. I, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                © 2019 Thomson Reuters. No claim to original U.S. Government Works.

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article I. The Commonwealth |

Puerto Rico Const. Art. I, § 3

§ 3 Geographic area

The political authority of the Commonwealth of Puerto Rico shall extend to the Island of Puerto Rico and to the adjacent islands within its jurisdiction.

**History**

**Repealing clause.**

See note under § 2 of this article.

**Prior law.**

See note under § 2 of this article.

Puerto Rico Const. Art. I, § 3, PR CONST Art. I, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

| |
|---|
| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article I. The Commonwealth |

Laws of Puerto Rico Annotated Currentness

The Constitution of the Commonwealth of Puerto Rico

Article I. The Commonwealth

Puerto Rico Const. Art. I, § 4

§ 4 Seat of government

The seat of the government shall be the city of San Juan.

**History**

**Repealing clause.**

See note under § 2 of this article.

**Prior law.**

See note under § 2 of this article.

Puerto Rico Const. Art. I, § 4, PR CONST Art. I, § 4

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 1 Human dignity and equality; discrimination prohibited, Puerto Rico Const. Art. II, § 1

---

Laws of Puerto Rico Annotated Currentness

The Constitution of the Commonwealth of Puerto Rico

Article II. Bill of Rights

Puerto Rico Const. Art. II, § 1

§ 1 Human dignity and equality; discrimination prohibited

The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality.

**History**

**Prior law.**

Political or religious test not required as a qualification to any office or public trust under Government, see Organic Act, 1917, § 2.

**Cross references.**

Civil Rights Act of Puerto Rico, see §§ 13 19 of Title 1.

Civil Rights Act of 1964 (Federal), see Title 42 U.S.C., §§ 1971 et se q.

**ANNOTATIONS**

**1. Birth.**

In view of the constitutional prohibition against discrimination by reason of birth, a claim where elucidation of the origin and motives in a filiation by adoption case is sought cannot be controlled by an interpretation carrying a lesser time limit than that applying in cases of biological children, in which § 2697 of the Civil Code applies to procedural or consent errors only. Ramon Dan iel Martinez Soria v. Ex parte Procuradora Especial de Relaciones de Familia, 151 D.P.R. 41, 2000 PR Sup. LEXIS 71 (P.R. 2000).

Nature of the filiation, as point of personal status, should be determined by law of domicile of child which in instant case is Puerto Rico, where there is no distinction between children based on legitimacy. Vega on behalf of Morales v. Bowen, 664 F. Supp. 659, 1987 U.S. Dist. LEXIS 15088 (D.P.R. 1987).

Clause in the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico prohibiting any and all discrimination for reasons of birth or origin is not violated by refusal to record birth of person in Vital Statistics Registry when said birth occurred outside Puerto Rico. Ada Angeles Leon Rosario v. Angel Luis Torres, 109 D.P.R. 804, 1980 PR Sup. LEXIS 118 (P.R. 1980).

---

§ 1 Human dignity and equality; discrimination prohibited, Puerto Rico Const. Art. II, § 1

Although the beneficiary in a petition for naturalization was an illegitimate son of a naturalized citizen of the United States and was never legitimated by his parents' subsequent marriage, his father's acknowledgment of paternity on his birth certificate constituted establishment of paternity, and therefore he was an acknowledged child under the laws of the Commonwealth of Puerto Rico and a 'child' for purposes of the Immigration and Nationality Act. Petition of Fraga, 429 F. Supp. 549, 1974 U.S. Dist. LEXIS 6412 (D.P.R. 1974).

The juridical effects which the declaration of daughter entails by virtue of the acknowledgment by a father deceased after July 24, 1952 are determine d by the law and the Constitution of Puerto Rico, and the same cannot be restricted or limited by acts of the father nor by judicial pronouncements. Carmen Rosario Garzot v. Tribunal Superior, Sala de Humacao., 90 P.R.R. 351, 90 D.P.R. 259, 1964 PR Sup. LEXIS 260 (P.R. 1964).

The courts of Puerto Rico are precluded, following the legislation of other States in conflict with ours, from passing on the condition of children of the litigants in a suit. Eulalia Lebron Cruz v. Sucesion de Carlos Yapor Elias., 90 P.R.R. 262, 1964 PR Sup. LEXIS 251 (P.R. 1964).

The provisions of this section are not retroactive to births occurring before it went into effect. Vazquez v. Ribicoff, 196 F. Supp. 598, 1961 U.S. Dist. LEXIS 2750 (D.P.R. 1961); Marquez v. Aviles, 252 F.2d 715, 1958 U.S. App. LEXIS 3756 (1st Cir. P.R.), cert. denied, 356 U.S. 952, 78 S. Ct. 917, 2 L. Ed. 2d 845, 1958 U.S. LEXIS 1118 (U.S. 1958); Carmen Delia Sanchez v. Telesforo Diaz Marrero., 78 P.R.R. 771, 1955 PR Sup. LEXIS 262 (P.R. 1955), overruled, Ramon Ocasio v. Andres Diaz., 88 P.R.R. 658, 1963 PR Sup. LEXIS 390 (P.R. 1963); Luz, Eduardo, Delia y Luz Maria Alvarez v. Maria Teresa, Ceferina, 77 P.R.R. 862, 1955 PR Sup. LEXIS 151 (P.R. 1955), overruled, Ramon Ocasio v. Andres Diaz., 88 P.R.R. 658, 1963 PR Sup. LEXIS 390 (P.R. 1963).

Neither § 1 of art. II of our Constitution nor Act No. 17 of 1952, whic h provides that all children have, with respect to their parents and to the estate left by them, the same rights that correspond to legitimate children, applies to the hereditary rights of natural persons born prior to the effectiveness of the Constitution. Abintestato de Clara Velez., 81 P.R.R. 634, 1960 PR Sup. LEXIS 44 (P.R. 1960), overruled, Ramon Ocasio v. Andres Diaz., 88 P.R.R. 658, 1963 PR Sup. LEXIS 390 (P.R. 1963).

Constitutional aspects of acknowledgment of sons, see 1956 Op. Sec. Jus. No. 37.

For discussion of the provision of this section concerning equality of birth, see Maria Figueroa Fuentes v. Telesforo Diaz, 75 P.R.R. 152, 1953 PR Sup. LEXIS 241 (P.R. 1953); Ramon Ocasio v. Andres Diaz., 88 P.R.R. 658, 1963 PR Sup. LEXIS 390 (P.R. 1963).

### 2. Religious beliefs.

Present status of federal jurisprudence allows sufficient base to hold validity of proposed contract of services of nurse belonging to religious order by Department of Health, particularly taking into consideration constitutional ban on discrimination for religious beliefs. 1967 Op. Sec. Jus. No. 22.

To deny the use of public plazas to religious groups, while it is granted to other groups in the locality, or even to the same citizens belonging to those religious groups when acting in a capacity other than as members thereof, clearly establishes a discrimination against them contrary to the constitutional provisions, and clearly does not fall within the separation doctrine as such has been construed. 1956 Op. Sec. Jus. No. 24.

### 3. Contracts.

A merchant who has issued a credit card to a customer is liable for those acts of his employees which, in contexts like the present one, are harmful to the dignity of other human beings. Moises Santiago Vassallo v. Sears, Roebuck de Puerto Rico, Inc., 102 D.P.R. 515, 1974 PR Sup. LEXIS 300 (P.R. 1974).

The luminous sense of our constitutional law designed for the protection of the human being does not permit the approval of a statute which turns a hu man being into a slave, or authorize a confiscatory contract, or alter the public trust which is the function of every State. Corporacion de Renovacion Urbana y Vivienda de Puerto Rico v. Jose Pena Ubiles, 95 P.R.R. 301,

1967 PR Sup. LEXIS 311 (P.R. 1967).

### 4. Federal programs.

Where Constitution of Puerto Rico guarantees for nondiscrimination principle also established by Federal Constitution, there is no bar whatsoever for Governor's pro forma declaration that there shall be no discrimination in use of c ontributions for Traffic Safety Program. 1968 Op. Sec. Jus. No. 27.

### 5. Statutory classifications.

In applying the standard of minimum rationality, § 533 of Title 31 is con stitutional because it has a legitimate end. .

Constitutional analysis should apply equally to legislative and judicial classifications to determine whether they violate the equal protection clause. Ramon G. Almodovar v. Maria Mendez Roman., 125 D.P.R. 218, 1990 PR Sup. LEXIS 125 (P.R. 1990).

The court should consider distinctions based on sex and contained in a statute, as inherently suspect classifications and as such, subject to strict judicial scrutiny with regard to constitutional issues, especially when said classifications tend to convey an inferior legal status to a class, disregarding individual potentialities and characteristics of its members. Zachry International of Puerto Rico Inc. v. Tribunal Superior de Puerto Rico., 104 D.P.R. 267, 1975 PR Sup. LEXIS 2404 (P.R. 1975).

### 6. Political ideas.

Temporary public employees are protected against political discrimination, even though they do not have an expectation of continued employment. Aponte Burgos v. Aponte Silva, 154 D.P.R. 117, 2001 PR Sup. LEXIS 66 (P.R. 2001).

Only those temporary public employees whose dismissal, at the end of the fixed term of the contract, was exclusively for political reasons have a right to a judicial remedy. Aponte Burgos v. Aponte Silva, 154 D.P.R. 117, 2001 PR Sup. LEXIS 66 (P.R. 2001).

It does not matter that the dismissal would have been also for political reasons, if the nominating authority can demonstrate by a preponderance of the evidence that the temporary contract was not going to be renewed due to a legitimate reason. Aponte Burgos v. Aponte Silva, 154 D.P.R. 117, 2001 PR Sup. LEXIS 66 (P.R. 2001).

In a discrimination action for political reasons, if an employee can demonstrate that political affiliation was a substantial factor in motivating the employer's action, the burden of proof falls on the government body to demonstrat e that there was a non-discriminatory reason for causing the dismissal, or that the employee enjoys a position in which political affiliation constitutes an appropriate qualification for said position. Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 1996 U.S. App. LEXIS 11325 (1st Cir. P.R. 1996).

The defense in cases of discrimination for political reasons, that political affiliation constitutes an appropriate qualification for a position, is designed to ensure that the government representative shall not be hindered by tactics that avoid the development of the new administration's public policy, a poli cy presumably sanctioned by the electorate. Ortiz-Pinero v. Rivera-Arroyo, 84 F.3d 7, 1996 U.S. App. LEXIS 11325 (1st Cir. P.R. 1996).

Basic facts which justify an inference of political discrimination are: (1) absence of reason to justify discharge, and (2) substitution of employee by another of a different political affiliation. Richard J. McCrillis v. Autoridad de las Navieras de P.R., 123 D.P.R. 113, 1989 PR Sup. LEXIS 71 (P.R. 1989).

In the case of a confidential employee the appointing authority has complete freedom to discharge, transfer, suspend or take any other action he considers necessary, but confidential employee classification is not as such deprived of protection against political discrimination. Richard J. McCrillis v. Autoridad de las Navieras de P.R., 123 D.P.R. 113, 1989 PR Sup. LEXIS 71 (P.R. 1989).

§ 1 Human dignity and equality; discrimination prohibited, Puerto Rico Const. Art. II, § 1

An assistant to the Governor has no right to qualified immunity for actions which violated civil rights of employees of lower category who were discharged for political affiliation. Rosario-Torres v. Hernandez-Colon, 889 F.2d 314, 1989 U.S. App. LEXIS 16845 (1st Cir. P.R. 1989).

Since political affiliation is not required for position of regional coordinator of an agency because said position does not involve a policymaking responsibility, politically motivated discharge of person who held that position was arbitrary and in obvious violation of the Constitution; thus, officials who ordered it lack qualified immunity and are liable for damages caused. Berberena Rosado v. Cordero Santiago, 668 F. Supp. 72, 1987 U.S. Dist. LEXIS 7952 (D.P.R. 1987).

Confidential public employees enjoy constitutional protection against discrimination on the base of political ideas; therefore, where no evidence was introduced to support the fact that the position occupied by claimant required certain political affiliation for the discharge of duties thereof, his reinstatement to such position does lie. Rodriguez v. Munoz, 603 F. Supp. 349, 1985 U.S. Dist. LEXIS 22345 (D.P.R. 1985), rev'd, in part, vacated, 808 F.2d 138, 1986 U.S. App. LEXIS 34866 (1st Cir. P.R. 1986).

Constitutional protection against discrimination due to political ideas does not protect public employee dismissed on grounds of his political beliefs, when one essential requirement for job performance is his political affiliation. Juan Feliciano Rodriguez v. Municipio de Fajardo e Hipolito Robles Suarez, 115 D.P.R. 675, 1984 PR Sup. LEXIS 154 (P.R. 1984).

Municipal Secretary may be dismissed without filing of charges or hearing, and cannot invoke political discrimination to challenge his dismissal. Juan Feliciano Rodriguez v. Municipio de Fajardo e Hipolito Robles Suarez, 115 D.P.R. 675, 1984 PR Sup. LEXIS 154 (P.R. 1984).

Whether the political affiliation of public official is indispensable condition for performance of duties is neither label nor job description, but real nature of functions carried out. Feliciano v. Mun. de Fajardo, 115 D.P.R. 675 (1984); 1982 Op. Sec. Jus. No. 2.

A public employee of the Commonwealth may not be dismissed from public employment solely on the grounds of political affiliation. Gonzalez v. Gonzalez, 385 F. Supp. 1226, 1973 U.S. Dist. LEXIS 11073 (D.P.R. 1973), vacated, 536 F.2d 453, 1976 U.S. App. LEXIS 8802 (1st Cir. P.R. 1976).

A mayor cannot remove from their work irregular employees without the protection of permanency under the Municipal Merit System, on account of political ideas in violation of art. II, § 1, of the Constitution of the Commonwealth. Andres Baez Cancel v. Santos Rivera Perez, 100 P.R.R. 980, 1972 PR Sup. LEXIS 194 (P.R. 1972).

There arises a strong presumption of discrimination on account of political ideas on a mayor's part against a group of irregular employees clearly ident ified with a political party when said officer fires them and immediately substitutes them with another group of persons of different party filiation, filiation which happens to be the same as the mayor's. Andres Baez Cancel v. Santos Riv era Perez, 100 P.R.R. 980, 1972 PR Sup. LEXIS 194 (P.R. 1972).

In the absence of a rational cause justifying the discharge of an irregular employee clearly identified with a political party and his substitution by the mayor with another of different political affiliation which happens to be t he same as the mayor's there arises a presumption of discrimination on account of political ideas which said officer is bound to rebut. Such a situation imposes on the courts the obligation of sifting the evidence in order to ascertain that no discrimination actually exists in the action of the nominating authority. Andres Baez Cancel v. Santos Rivera Perez, 100 P.R.R. 980, 1972 PR Sup. LEXIS 194 (P.R. 1972).

The fact that the powers of a mayor to employ and fire irregular employees are of a discretional nature cannot justify, excuse or forgive the discrimination for reason of political ideas. Andres Baez Cancel v. Santos Rivera Perez, 100 P.R.R. 980, 1972 PR Sup. LEXIS 194 (P.R. 1972).

### 7. Foreigners.

Section 264 (1) of Title 18 violates principles of equal protection of the law. Minerva De Paz Lisk v. Awilda Aponte Roque, 124 D.P.R. 472, 1989 PR Sup. LEXIS 143 (P.R. 1989).

§ 1 Human dignity and equality; discrimination prohibited, Puerto Rico Const. Art. II, § 1

Neither the constitutional provisions of Puerto Rico in the sense that there shall be no discrimination by reason of race, color, sex, birth, social origin or condition or for religious or political ideas and that no person shall be deprived of equal protection of law nor the statute that imposes liability on contractors for defects in building construction, were related with the statute which permits, with certain exceptions, only citizens of the United States to privately practice as civil engineers, as to make the law of the Commonwealth ambiguous and require the district court to abstain from reaching the merits of the question of whether the exclusiveness of the Puerto Rican statute on licenses for civil engineers in favor of citizens of the United States is constitutional. Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 96 S. Ct. 2264, 49 L. Ed. 2d 65, 1976 U.S. LEXIS 65 (U.S. 1976).

### 8. Effectiveness.

Sections 1 and 8 of art. II of our Constitution operate without need of any implementing statutes. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

### 9. Construction.

Medical student's cause of action against a Mexican university alleging violation of the Constitution of Puerto Rico failed to state a claim for which relief could be granted. Ortiz-Bou v. Universidad Autonoma de Guadalajara, 382 F. Supp. 2d 293, 2005 U.S. Dist. LEXIS 16242 (D.P.R. 2005).

The security system established by a telecommunications enterprise, using video cameras in the area where the employee-plaintiffs work, is not unconstitutional per se; the system is justified by the paramount interests of security and optimal functionality of the telecommunications system. Vega Rodriguez v. Telefonica de P.R., 156 D.P.R. 584, 2002 PR Sup. LEXIS 50 (P.R. 2002).

The peace, calm and tranquility of everyday social life are part of the right to human privacy and dignity. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Waiver of constitutional right to privacy must be clear, specific and unequivocal. Unless it is waived, right to privacy is inviolable, be it by the State, a private entity or any citizen. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

Right to privacy operates ex proprio vigore and may be enforced even among private parties. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

Statute valid on its face could result unconstitutional in its application by virtue of permissible discrimination. Jose R. Velez Reboyras etc. v. Secretario de Justicia., 115 D.P.R. 533, 1984 PR Sup. LEXIS 136 (P.R. 1984).

In absence of proven pattern of obvious discrimination and patent abuse of discretion, no person or entity can justify his own violation of statute based on fact that other violaters have not been prosecuted. Jose R. Velez Reboyras etc. v. Secretario de Justicia., 115 D.P.R. 533, 1984 PR Sup. LEXIS 136 (P.R. 1984).

This section dignity of human being has received recognition comparabl e to that received by § 8 of art. Sonia Figueroa Ferrer v. Estado Libre Asoci ado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

When existing by necessity, freedom restrictions should be express, not implied. Ponce Gas Service Corp v. Junta de Relaciones del Trabajo de Puerto Rico., 104 D.P.R. 698, 1976 PR Sup. LEXIS 1939 (P.R. 1976).

### 10. Determination of paternity.

Pursuant to provisions of this section which consecrate dignity of human being as inviolable right to seek and determine true paternity of person is e stablished even though it might involve challenge of alleged paternity. Lopez v. Santos, 109 D.P.R. 563, 1980 PR Sup. LEXIS 97 (P.R. 1980).

§ 1 Human dignity and equality; discrimination prohibited, Puerto Rico Const. Art. II, § 1

---

### 11. Credibility of women.

Statute providing a priori hurdles for credibility of women violates dignity of female human being as well as this section which prohibits discrimination for reasons of sex. Comision para los Asuntos de la Mujer, ex rel. A.I.A.R. v. Gimenez Munoz, 109 D.P.R. 715, 1980 PR Sup. LEXIS 172 (P.R. 1980).

### 12. Arrest without a warrant.

Arrest without warrant of people peacefully assembled anywhere by police in order to take them to headquarters with the sole purpose of photographing them with investigative motives violated the following clauses of the Commonwealth of Puerto Rico Constitution: (1) one which prohibits deprivation of liberty without due process (art. II, § 7); (2) one recognizing right to protection against abusive attacks to honor, reputation and privacy as well as family life of persons (art. II, § 8); (3) one prohibiting arrests, searches and seizures except by warrant issued by judicial authority and only upon determination of probable cause supported by oath or affirmation (art. II, § 10); and (4) one pertaining to inviolability of human being (this section). El Pueblo de Puerto Rico v. Carlos L. Rey Marrero, 109 D.P.R. 739, 1980 PR Sup. LEXIS 108 (P.R. 1980).

### 13. Discrimination.

Only plaintiff employee, who was the person who was allegedly unjustly terminated and was allegedly deprived of his constitutional rights as a result of such termination, had standing to protect his own rights; therefore, neither plaintiff's wife nor the conjugal partnership had standing to pursue any claim bec ause of the alleged violation of plaintiff employee's constitutional rights. R ivera-Cartagena v. Wal-Mart P.R., Inc., 767 F. Supp. 2d 310, 2011 U.S. Dist. LEXIS 22288 (D.P.R. 2011).

Plaintiff alleged sufficient facts that could plausibly satisfy his constitutional claims for violation of his rights to dignity and intimacy under art. II, §§ 1, 8, as plaintiff alleged that defendant retailer's district manage r and human resources specialist had knowledge of plaintiff's military status and training, that defendant's operations director put pressure on him to diss uade him from attending military training, that he was denied promotions and was transferred repeatedly because of the same discriminatory reasons, and that his employer reduced his 'Profit Bonus' in an amount equivalent to the two mont hs he was on military leave. Rivera-Cartagena v. Wal-Mart P.R., Inc., 767 F. Supp. 2d 310, 2011 U.S. Dist. LEXIS 22288 (D.P.R. 2011).

Puerto Rico and its legislature were not entitled to dismissal of a university student's action arising from her expulsion from an internship program ba sed on 'erratic' conduct; the district court could not find that discrimination based on bipolar disorder did not constitute a constitutional violation under P.R. Const. art. II, § 1. Concepcion v. Puerto Rico (Jan. 20, 2010).

Plaintiff employee's discrimination claims under § 146 of Title 29, a rt. II, §§ 1, 4, 6, 7, 8, 16 of the PR Constitution, and §§ 5141, 5142 o f Title 31, against defendant officials of state agency employer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Alejandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Summary judgment was properly granted to a former employer in a cause of action alleging employment discrimination based on a failure to rehire due to a mental condition because the conduct complained of did not rise to the level of actionable conduct as a matter of law. Velez v. Janssen Ortho LLC, 389 F. Supp. 2d 253, 2005 U.S. Dist. LEXIS 23134 (D.P.R. 2005), aff'd, 467 F.3d 802, 2006 U.S. App. LEXIS 27272 (1st Cir. P.R. 2006).

A federal court with personal jurisdiction may retain pendent jurisdiction over Commonwealth claims involving this section where federal claims are insubstantial. Franceschi v. Hyatt Corp., 747 F. Supp. 138, 1990 U.S. Dist. LEXIS 12816 (D.P.R. 1990).

Jurisprudence of the federal Supreme Court appears to indicate that persons infected with AIDS should be entitled to a medical evaluation prior to any decision which would adversely affect their employment, since to act otherwise would be discriminatory. 1987 Op. Sec. Jus. No. 42.

---

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 17 of 272

§ 1 Human dignity and equality; discrimination prohibited, Puerto Rico Const. Art. II, § 1

Pursuant to clause of the Constitution which prohibits discrimination by reason of sex, that part of the Automobile Accident Compensation Act which establishes benefits for a woman who becomes incapacitated to carry on her work as housewife (§§ 2052(8) and 2054(3)(g) of Title 9) should be read so as to include persons of both sexes. In the event of a suspect classification subject to strict scrutiny, benefits may be awarded to men and women alike. Manuel Amador Avila v. Admin. de Comp. por Accidentes de Auto, 117 D.P.R. 820, 1986 PR Sup. LEXIS 168 (P.R. 1986).

Transfer of teacher to a professional field closely related to her area of expertise, where she could undertake work for which she had specialized, within the same school building, with practically the same students assigned to her and without any alteration in salary, rank or other incidentals of her job, did not constitute discrimination on the basis of sex. Stitzer v. University of Puerto Rico, 617 F. Supp. 1246, 1985 U.S. Dist. LEXIS 16601 (D.P.R. 1985).

A family tradition through which the formulas to manufacture rum, allegedly secret, are transmitted from fathers to sons as to its application to a femi nine member of a family constitutes discrimination by reason of sex. Odette Go nzalez de Salas v. Tribunal de Puerto Rico, Sala de Mayaguez., 97 P.R.R. 788, 1969 PR Sup. LEXIS 187 (P.R. 1969).

### 14. Right to privacy.

Summary judgment was proper as to a former employee's invasion of privac y claim because there was no evidence controverting that the employee consented to the search. Pineiro v. United States (1st Cir. Apr. 15, 2013).

In an employee's interview during an investigation of a potential confli ct of interest between the employee and an auditor, there were no demeaning comments made towards her, no foul language was used, and nothing happened that could have been considered an 'insult or humiliation' or a violation of the empl oyee's constitutional rights of privacy. Rivera-Rosa v. Citibank, N.A., 567 F. Supp. 2d 289, 2008 U.S. Dist. LEXIS 56197 (D.P.R. 2008).

Claims for violations to dignity and privacy protections pursuant to Puerto Rico Constitution Art. II, §§ 1 and 8, brought by federal police officers who claimed that their rights were violated by surreptitious video surveillance of their locker-break room, could only be asserted against the United States under the Federal Tort Claims Act, 28 U.S.C.S. §§ 2671 to 2680. Marie Rexach v. Ramirez Velez, 162 D.P.R. 130, 2004 PR Sup. LEXIS 94 (P.R. 2004)

Section 591a of Title 31 is constitutional, but in applying it to cases of grandparents, judges are obliged to follow the directives established by the Supreme Court of the United States; and the courts must considerer certain criteria and desires of the parents. Marie Rexach v. Ramirez Velez, 162 D.P.R. 130, 2004 PR Sup. LEXIS 94 (P.R. 2004).

A store's practice of checking the sales receipt when a customer is abou t to leave, with the only intent of verifying that the purchase had just been made, is legitimate in order to safeguard the store's merchandise from theft, an d the Supreme Court resolves that the customer's privacy was not infringed. Ca stro Cotto v. Tiendas Pitusa, Inc. H/C Super Descuentos Pitusa de Bayamon, Compania de Seguros de Pitusa Fulano de Tal Uno al Diez, 159 D.P.R. 650, 2003 PR Sup. LEXIS 103 (P.R. 2003).

### 15. Employment.

Employer's termination of an employee did not violate the employee's r ight to dignity under P.R. Const. art. II, § 1 because the employee's viola tion of the employer's zero-tolerance alcohol and drug abuse policy gave the e mployer good cause to terminate the employee. Rivera-Cartagena v. Wal-Mart P.R., Inc., 802 F. Supp. 2d 324, 2011 U.S. Dist. LEXIS 45640 (D.P.R. 2011).

Puerto Rico Const. Art. II, § 1, PR CONST Art. II, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of

**§ 1 Human dignity and equality; discrimination prohibited, Puerto Rico Const. Art. II, § 1**

Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
  The Constitution of the Commonwealth of Puerto Rico
    Article II. Bill of Rights

Puerto Rico Const. Art. II, § 2

§ 2 Suffrage; electoral franchise

The laws shall guarantee the expression of the will of the people by means of equal, direct and secret universal suffrage and shall protect the citizen against any coercion in the exercise of the electoral franchise.

**History**

**Cross references.**

Elections, see art. VI, § 4 of the Constitution of Puerto Rico and Titl e 16.

**ANNOTATIONS**

**1. Municipalities.**

Although it is true that jurisprudence has determined that municipalities are an integral part of the Government and that, in addition, they are mere political subdivisions of the same, 'when it has been desired to include the munic ipal government within the terms of an act, the general practice has been to do it expressly without leaving room for doubts'. 1962 Op. Sec. Jus. No. 4.

**2. Construction.**

The power to determine the requirements to exercise the right to vote in this jurisdiction belongs to the Commonwealth, power limited only by the Constitution. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

If a state of the Union has the power to require US citizenship as a condition for the exercise of the right to vote, the state is not required to do so; such power is limited exclusively by the First and Fourteenth Amendments to the US Constitution. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

In light of the express and formal consent of the people in accepting american citizenship, the Legislative Assembly is justified in requiring american citizenship as a condition for exercising the right to vote. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

As compelling state interests exist that justify the regulation of voting, the requirement of being a US citizen serves to precisely delimit who constitutes the electoral body with the right to suffrage. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

§ 2 Suffrage; electoral franchise, Puerto Rico Const. Art. II, § 2

A Puerto Rican citizen whose Puerto Rican nationality is not questioned cannot be deprived of the right to vote in the polling stations of the country. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

As the right to vote is consecrated as one of the constitutional guarantees and is of universal character, in cases of incertainty of who has the right to vote, the interpretation of the electoral statute that favors the exercise of the right to vote shall prevail. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

The action of waiving american citizenship by a citizen whose Puerto Rico nationality is uncuestionable is carried out in the exercise of the right of free expression. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

Sanctioning a person for exercising the right to vote is parallel to the violation of the right to free speech and the right to not suffer political discrimination. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

Qualified electors with a clear right to vote are those who hold US citizenship, or those who are solely Puerto Rico citizens, as long as they meet the corresponding residency requirements, independent of the power of the Legislative Assembly to demand the requirement to be a US citizen as a condition for voting in the country. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

This section and § 1 of this article impose limitations on Legislative Assembly in exercise of its ample power to regulate formation of political parties. During four-year period in which legislation is approved, Assembly may not implement changes in requirements for registration. Any such action can take Effect only after the last general elections. Partido de Renovacion Puertorriquena v. Estado Libre Asociado de Puerto Rico., 115 D.P.R. 631, 1984 PR Sup. LEXIS 146 (P.R. 1984).

As a rule, legislation tending to make onerous the potential of minority opposition or new parties or to have other substantial negative effects upon or to create situations of inferiority can become vulnerable to constitutional challenge. Partido de Renovacion Puertorriquena v. Estado Libre Asociado de Puerto Rico., 115 D.P.R. 631, 1984 PR Sup. LEXIS 146 (P.R. 1984).

There is no incompatibility whatsoever between the provisions of §§ 2 and 7 of art. II of the Constitution of Puerto Rico, on the one hand, and § 7 of art. III of the said Constitution, on the other hand. Said provisions complement each other. Jaime B. Fuster v. Walter Buso y otros., 102 D.P.R. 327, 1974 PR Sup. LEXIS 255 (P.R. 1974).

### 3. Secret vote.

Under the provisions of the Constitution of Puerto Rico, the requirement that a citizen's vote be secret is not an absolute constitutional right, and is subject to grounded restrictions. Partido Nuevo Progresista v. Tribunal Electoral de Puerto Rico., 104 D.P.R. 741, 1976 PR Sup. LEXIS 1946 (P.R. 1976).

The purpose of the secret vote of a citizen is to guarantee and protect the citizen from coercions, to guarantee his freedom to enter the polling booth, secretly, alone with his conscience and to make his mark there, without its being anyone's concern as to how and where he did it. Partido Nuevo Progresista v. Tribunal Electoral de Puerto Rico., 104 D.P.R. 741, 1976 PR Sup. LEXIS 1946 (P.R. 1976).

### 4. Direct suffrage.

For the Constitution of Puerto Rico, direct suffrage of a voter reflects the method of popular election through which all qualified constituents intervene, rather than the indirect method of electoral votes. Juan M. Garcia Passalacqua v. Tribunal Electoral., 105 D.P.R. 49, 1976 PR Sup. LEXIS 2790 (P.R. 1976).

### 5. Voting procedure for 1980 elections.

**§ 2 Suffrage; electoral franchise, Puerto Rico Const. Art. II, § 2**

See annotations under § 3229 of Title 16.

Puerto Rico Const. Art. II, § 2, PR CONST Art. II, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 3 Freedom of religion, Puerto Rico Const. Art. II, § 3

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

Puerto Rico Const. Art. II, § 3

§ 3 Freedom of religion

No law shall be made respecting an establishment of religion or prohibiting the free exercise thereof. There shall be complete separation of church and state.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Religious freedom, see § 9 of Title 1.

ANNOTATIONS

1. Land transaction For valuable consideration.

When a transaction between the State and the Church is reputed to be purely commercial, the principle governs that the same does not infringe constitutional precepts that provide for separation of Church and State and that public property and funds will not be used for maintenance of institutions that do not belong to the State. 1971 Op. Sec. Jus. No. 30.

The prevailing criterion in transactions made between the Church and State has held that the constitutional precept providing for separation of Church and State is not infringed if the transaction can be reputed as purely commercial and the same is carried out in equal circumstances as with any other entity. 1970 Op. Sec. Jus. No. 22.

In any juridical negotiation in which there is involved interests of the State and of institutions or religious sects, the concept of a commercial transaction must be taken as a basis for the validity of the negotiation not only in appearance but in all other aspects; any paternalism or condescension must be excluded from such negotiation. 1960 Op. Sec. Jus. No. 80.

The State, if authorized by law, may sell real property to sectarian institutions, provided the conditions under which the transaction is carried out indicate that it is a pure and simple commercial transaction. 1960 Op. Sec. Jus. No. 80.

From a strictly constitutional point of view, in dealing with the leasing, to a religious order, of a piece of land belonging to the State, there would be nothing to bar the transaction, provided that such leasing is based on the criterion that directs the leasing made with religious entities; that is, that a reasonable rent be fixed and the transaction carried out on the same terms as it would be if the lessee were a private person. 1960 Op. Sec. Jus. No. 80.

§ 3 Freedom of religion, Puerto Rico Const. Art. II, § 3

### 2. Gratuitously.

The gratuitous cession to the Iglesia Samaria, a religious institution, of a municipal plot known as the Placita, would violate the constitutional requirement of separation of Church and State and the provisions of Act Feb. 27, 1902 (§ 9 of Title 1). 1958 Op. Sec. Jus. No. 8.

### 3. Plazas.

The use of public plazas must be granted by the municipalities to religious groups in the same form and subject to the same regulations as granted to other groups, the other alternative being to deny the use of said places to all the groups in general on valid grounds of public interest. 1956 Op. Sec. Jus. No. 24.

### 4. Child aid.

According to the theory of 'child welfare' when pupils are aided direc tly, the constitutional principle of separation of Church and State is not violated since such aid is not prohibited 'support'. 1961 Op. Sec. Jus. No. 34.

### 5. Undesirable noises.

Even though the State cannot interfere with worship and the religious beliefs of its citizens, it can interfere with the method used by those practicing them when it injures and offends up to the point of destroying the right to privacy of the family. La Sucesion de Victoria Capella y otros v. Iglesia de Dios Pentecostal., 102 D.P.R. 20, 1974 PR Sup. LEXIS 221 (P.R. 1974).

In the sanctuary of his home, a citizen is not a 'captive' who has to forbear undesirable practices and noises caused by the exercises and rites of a religious temple which upset him and destroy his right to privacy in his home, causing him torture and extreme moral sufferings. La Sucesion de Victoria Capella y otros v. Iglesia de Dios Pentecostal., 102 D.P.R. 20, 1974 PR Sup. LEXIS 221 (P.R. 1974).

### 6. Use of public funds for sectarian purposes.

The mere fact that an institution is religiously affiliated does not necessarily disqualify it from receiving government assistance. 1999 Op. Sec. Jus. No. 13.

The freedom of religion clause does not impede the participation of certain religious organizations in government assisted programs for promoting certain social welfare objectives, under certain circumstances. 1999 Op. Sec. Jus. No. 13.

The key to evaluating whether or not government assistance to a religiously affiliated organization or institution infringes the freedom of religion clause lies in investigating the degree of independence of their secular functions. 1999 Op. Sec. Jus. No. 13.

Attempting to establish procedural safeguards for the purpose of avoiding improper use of funds for sectarian endeavors would instigate excessive interference by the government in religious affairs, which is also proscribed by the freedom of religion clause. 1999 Op. Sec. Jus. No. 13.

The state and federal courts have sustained the validity of using government funds for non-sectarian activities by an institution that is primarily secular. 1999 Op. Sec. Jus. No. 13.

If secular and religious activities are so closely linked as to make it difficult to separate them it would necessarily mean the promoting of certain religious beliefs over others and therefore the contravention of the provisions of both the Commonwealth and federal constitutions. 1999 Op. Sec. Jus. No. 13.

That a state's intervention merely takes the form of facilitating the is suing of exempt bonds in local and U.S. markets does

not make it immune to abiding by constitutional provisions. 1999 Op. Sec. Jus. No. 13.

Even though state intervention is limited and public funds are not compromised, it would still benefit the corporation since by using the mechanism AFICA acquires benefits and advantages which it would not otherwise obtain, and acquiring those benefits and advantages for the purpose of promoting preeminently re ligious functions is contrary to constitutional provisions. 1999 Op. Sec. Jus. No. 13.

There are no legal grounds for Municipality of Mayaguez to contribute sum from bond issue for enlarging hospital owned and operated by sectarian institution, because, independently from constitutional ban regarding establishment of religion, purposes of bond issues are limited to those authorized to allocate funds. 1975 Op. Sec. Jus. No. 5.

The Constitution does not authorize a donation of public funds by the Municipality of Mayaguez to the Seventh Day Adventists Corporation for the expansion of their Bellavista Hospital. (Reaffirming the criterion stated in the Opinions of the Secretary of Justice, Nos. 1958-8, 1959-17 and 1973-39.) 1973 Op. Sec. Jus. No. 40.

Where the 'Salvation Army' is essentially a religious and sectarian in stitution, an appropriation of public funds in order to carry out its activities as has been requested would violate the constitutional principles of separation between Church and State and the provisions that public funds may be appropriated only for public purposes. 1973 Op. Sec. Jus. No. 39.

### 7. Use of public premises.

The practice, sponsored by the Department of Education throughout last year, of holding religious ecumenical services a sectarian activity in the conf erence halls of that Department, is absolutely forbidden by law. 1974 Op. Sec. Jus. No. 22.

Pursuant to the decisions of several state jurisdictions, the relevant criterion to determine whether the utilization of public premises for religious purposes violates the principle of separation between Church and State or not, is the continual and regular versus sporadic and transitory nature of such utilization. 1974 Op. Sec. Jus. No. 22.

### 8. Administrative action.

When a government action is challenged under the freedom of religion clause, the interested party is obligated to establish that the state does not have an appropriate public interest which will justify the act or that the act has impaired or burdened substantially the free exercise of religion. Asoc. Academias y Col. Cristianos v. E.L.A., 135 D.P.R. 150 (1994).

In case at bar, exercise of jurisdiction by Labor Relations Board was against religious tenets of appellant a Catholic elementary, intermediate and highschool and would violate appellant's constitutional rights, contrary to this section. Academia San Jorge v. Manuel Aponte Rosario., 110 D.P.R. 193, 1980 PR Sup. LEXIS 145 (P.R. 1980).

Actions of state with repercussion on Church justifiable in secular terms are not null and void. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

State should not dictate religious doctrine in controversies on questions essentially of faith. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

The subpoena of documents of Roman Catholic Church, Diocese of Puerto Rico, issued by Department of Consumer Affairs in the investigation of operating costs of Catholic schools, part of general plan to determine impact of spiraling inflationary tendencies on cost of private education, constitutes forbidden entanglement of affairs of Church and State and therefore violates religion clause of First Amendment. Surinach v. Pesquera De Busquets, 604 F.2d 73, 1979 U.S. App. LEXIS 12899 (1st Cir. P.R. 1979).

An investigation by Department of Consumer Affairs to determine cost of operating private schools of Puerto Rico cannot ever be construed as an attempt to invade areas of religious beliefs, and questionnaire sent to Catholic schools as part of that investigation could not have affected in any respect decisions of a religious organization in matters of internal discipline, faith, structure, rules, ethics or canon law. Consequently, the overall impact of said investigative program does not amount to excessive governmental meddling with religion. Surinach v. Pesquera De Busquets, 460 F. Supp. 121, 1978 U.S. Dist. LEXIS

§ 3 Freedom of religion, Puerto Rico Const. Art. II, § 3

14491 (D.P.R. 1978), rev'd, 604 F.2d 73, 1979 U.S. App. LEXIS 12899 (1st Cir. P.R. 1979).

A questionnaire prepared by Department of Consumer Affairs to determine operating costs of private education in Puerto Rico and sent to Catholic schools, requesting information about enrollment, number of teachers and salaries, scholarships, available funds and their sources, annual budgets and other details of the same nature, cannot be construed as a hindrance to the inalienable right of any individual or group to profess or practice a religion, because such request does not constitute an invasion into doctrinal matters. Surinach v. Pesquera De Busquets, 460 F. Supp. 121, 1978 U.S. Dist. LEXIS 14491 (D.P.R. 1978), rev'd, 604 F.2d 73, 1979 U.S. App. LEXIS 12899 (1st Cir. P.R. 1979).

In the absence of any indication of positive or negative bias, patronizing or hostility against any specific institution, the constitutional principle of the First Amendment relative to establishment of any religion cannot be considered violated by actions of Department of Consumer Affairs requesting Catholic schools to answer a questionnaire, part of a wide administrative plan to investigate operational costs of private schools in Puerto Rico. Surinach v. Pesquera De Busquets, 460 F. Supp. 121, 1978 U.S. Dist. LEXIS 14491 (D.P.R. 1978), rev'd, 604 F.2d 73, 1979 PR Sup. LEXIS 12899 (1st Cir. P.R. 1979).

### 9. Credits for education.

In light of the constitutional principle of total separation between Church and State, tax credits for parents or legal guardians who enroll children in sectarian private educational institutions are subject to challenge on grounds of unconstitutionality. 1978 Op. Sec. Jus. No. 30.

### 10. Construction.

Adjudication of a controversy between parishioners and their church over the title to some land and a building does not entail excessive interference by the state in religious matters, nor does it violate the separation of church and state or the freedom of worship clause. Victor L. Amador Parrilla v. Concilio Iglesia Universal de Jesucristo, 150 D.P.R. 571, 2000 PR Sup. LEXIS 45 (P.R. 2000).

The participation of the state through the courts in contractual disputes is not incisive in the operations of a catholic educational institution to the point that it constitutes a substantial burden on the free exercise of religion nor promotes the establishment of any religion; the courts can exercise jurisdiction as long as the contractual dispute does not require passing judgment on matters of doctrine, faith, or internal ecclesiastical organization. Mercado Rivera v. Universidad Catolica de P.R., 143 D.P.R. 610, 1997 PR Sup. LEXIS 436 (P.R. 1997).

The determination of a religious institution to suspend an employee for violations of the doctrine and morality of the catholic church is valid, as said provision corresponds to the mandate of the Canon Code, and the employee voluntarily and freely accepted such conditions upon signing his employment contract. Mercado Rivera v. Universidad Catolica de P.R., 143 D.P.R. 610, 1997 PR Sup. LEXIS 436 (P.R. 1997).

It is not contrary to the right to privacy the limitations established by the Catholic University to the professors with respect to second marriages, since the link between an educational institution and the Catholic Church are such that the former is converted into a religious institution and the regulatory provisions are based on the Canon Code. Mercado Rivera v. Universidad Catolica de P.R., 143 D.P.R. 610, 1997 PR Sup. LEXIS 436 (P.R. 1997).

State action does not exist by the fact that students of the Catholic University receive economic aid to pursue their studies, since said aid does not eliminate the religious character of the institution, and the decision to employ said funds in a higher educational religious institution does not necessarily violate the prohibition of establishment of any religion. Mercado Rivera v. Universidad Catolica de P.R., 143 D.P.R. 610, 1997 PR Sup. LEXIS 436 (P.R. 1997).

Even though the protection of marriage is a compelling state interest, the existence of said interest is not sufficient to justify the intervention of the courts with the religious freedom of the University, as a religious institution, when such action could significantly burden said institution in violation of the clause of the free exercise of religion. Mercado Rivera v. Universidad Catolica de P.R., 143 D.P.R. 610, 1997 PR Sup. LEXIS 436 (P.R. 1997).

§ 3 Freedom of religion, Puerto Rico Const. Art. II, § 3

Civil courts may not hear disputes over property rights relative to a church when to do so would involve judgments as to doctrine, discipline, faith or internal ecclesiastical organization. Jose M. Diaz Hernandez v. Colegio Nuestra Senora del Pilar., 123 D.P.R. 765, 1989 PR Sup. LEXIS 126 (P.R. 1989).

The Constitution cannot shield from judicial scrutiny facts which are completely secular merely because they were caused by officers of a religious organization. Jose M. Diaz Hernandez v. Colegio Nuestra Senora del Pilar., 123 D.P.R. 765, 1989 PR Sup. LEXIS 126 (P.R. 1989).

Exercise of judicial power to hear merits of allegation involving noncompliance with an employment contract between a lay teacher and a Catholic school is not an excessive burden on the practice of religion. Jose M. Diaz Hernandez v. Colegio Nuestra Senora del Pilar., 123 D.P.R. 765, 1989 PR Sup. LEXIS 126 (P.R. 1989).

For the state to prevail against a claim of establishment of religion it is necessary for the challenged law or conduct to have a secular purpose, for its primary effect not to be promotion or inhibition of religion and, finally, that it does not involve excessive entanglement of government with religion. Jose M. Diaz Hernandez v. Colegio Nuestra Senora del Pilar., 123 D.P.R. 765, 1989 PR Sup. LEXIS 126 (P.R. 1989).

Nonmandatory proclamation which did not refer to any particular religious sect or ideology, did not involve expenditure of public funds or encourage participation in religious or sectarian activities, and which only constituted mere exhortation to citizenry to know or familiarize itself with the Bible, as part of the interreligious celebration of National Bible Week, did not violate the constitutional principle of separation of Church and State. 1983 Op. Sec. Jus. No. 34.

This section includes three familiar clauses from the First Amendment to the Federal Constitution: the first one regarding freedom of worship; the second one, regarding prohibition of establishment of official religion; and the third one, reflecting the theory that the ideal relation between State and Church demands recognition of two separate spheres of action. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

An absolutist construction by court of Constitutional Clause of Separation between Church and State is inexact. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

### 11. 'Roman curia'.

For the Catholic Church, the 'Roman Curia' is the totality of Organs Sacred Congregations, Tribunals and Offices through which the Supreme Pontiff governs said Church. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

### 12. Court intervention.

Courts are authorized to review challenged ecclesiastic action provided existing secular interest of sufficient weight to allow their intervention is demonstrated. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

In view of findings in case at bar where group of parents of catholic hi gh school students tried to enjoin the closing of said school ordered by ecclesiastic authorities on grounds that it did not comply with genuine catholicity and academic excellence standards Supreme Court held that there was no sufficient secular interest to allow intervention of courts. State involvement in controversy under such circumstances would constitute attack against the very marrow of doctrine of separation between Church and State. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

Determination whether catholic high school meets genuine catholicity requirement which was found wanting by ecclesiastic authorities, and, therefore, mo tivated decision to close said school is matter of faith, and State should abs tain to intervene with it unless ecclesiastic decision would be clearly arbitrary, illegal or unduly oppressive for other members of Church.

§ 3 Freedom of religion, Puerto Rico Const. Art. II, § 3

Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

Notwithstanding inconveniences arising from closing of private catholic school for different sections of community, courts should abstain from reviewing such ecclesiastic action of Church. Ernesto Agostini Pascual v. Iglesia Catolica Apostolica y Romana de Puerto Rico, 109 D.P.R. 172, 1979 PR Sup. LEXIS 139 (P.R. 1979).

Puerto Rico Const. Art. II, § 3, PR CONST Art. II, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 4 Freedom of speech and press; peaceful assembly;..., Puerto Rico Const. Art....

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article II. Bill of Rights

Puerto Rico Const. Art. II, § 4

§ 4 Freedom of speech and press; peaceful assembly; petition for redress of grievances

No law shall be made abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Freedom of speech, see § 11 of Title 1.

Peaceable assembly and petitions for redress, see § 12 of Title 1.

**ANNOTATIONS**

**1. Price regulation.**

Regulation and fixing of prices on admission to theaters does not limit constitutional guarantee of this section. 1962 Op. Sec. Jus. No. 43.

**2. Taxes.**

As to whether constitutional guarantees to which this section refers are an obstacle to imposition of municipal tax on volume of business realized by radio stations, it is concluded that, even when dealing with the press, the State, or in this case the municipality, can impose license taxes, provided that the measure adopted is of a general character, that is, that it is applied to all business in the territorial jurisdiction, at least to those that are in equal conditions; that it is uniform in the percentage of tax imposed; and that it is reasonable. 1963 Op. Sec. Jus. No. 38.

**3. Censorship.**

Films and similar objects may not be confiscated except by means of constitutionally valid court order; anything else would constitute censorship. El Pueblo de Puerto Rico v. Felix Santos Vega, 115 D.P.R. 818, 1984 PR Sup. LEXIS 179 (P.R. 1984).

§ 4 Freedom of speech and press; peaceful assembly;..., Puerto Rico Const. Art....

An injunction prohibiting the publication of a written text is null and void when it constitutes a violation of the freedom of speech and of the press guaranteed by the Constitution of Puerto Rico, by the First Amendment of the Constitution of the United States, and a violation of the Act to Define Rights of the People, 1 L.P.R.A. § 9 et seq. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

A court, as a general rule, is compelled to reject and discredit the attempt by a party to restrain through an injunction the publication of written material. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

A court, upon considering an attempt of prior restraint of a written material, should take into consideration that said attempt bears a heavy presumption of unconstitutionality. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

Having examined Senate Bill No. 769, it is concluded that in view of the uncertainty as to what will be the maximum expression of the liberal doctrine which the United States Supreme Court in 1952 began to elaborate in deciding the Burstyn case, it would not be wise to place ourselves where a scant minority of states of the Union were when censorship of motion pictures was established on the grounds that, being a form of public show, they were disqualified from the protection of freedom of expression traditionally afforded to speech and to the press. 1956 Op. Sec. Jus. No. 33.

### 4. Restrictions.

To the extent that the type of forum determines the extent of government power to regulate expression, it is indispensable to identify the nature of the forum before deciding whether the regulation is vague or excessively broad. Regulation which could be impermissibly vague or excessively broad if applied to certain types of expression in particular places may be validly implemented in other locations. Unidad Nacional de Trabajadores de la Salud v. Jose E. Soler Zapata, 133 D.P.R. 153, 1993 PR Sup. LEXIS 208 (P.R. 1993).

Curfews for minors are a restriction of rights guaranteed by the Commonwealth and the federal Constitutions, and a municipal ordinance imposing such a curfew should be carefully drafted not to affect rights of expression, association and movement beyond the point necessary to achieve the goals of the ordinance. ( Reiterating Op. Sec. Just. of Oct. 14, 1986, unpublished, and No. 1987-3.) 1987 Op. Sec. Jus. No. 3; 1987 Op. Sec. Jus. No. 27.

There is no legal reason to deny access to public documents such as sentences in criminal cases. 1987 Op. Sec. Jus. No. 4.

Right of university authorities to issue necessary provisions to protect institutional peace derives from their duty to protect university persons and goods. Esaul Sanchez Carambot, Roberto Ortiz Feliciano v. Federico M. Matheu., 113 D.P.R. 153, 1982 PR Sup. LEXIS 189 (P.R. 1982).

University authorities have constructive regulatory powers to suspend students and to prohibit their entry into campus when these have violated disciplinary norms without involving judiciary. Esaul Sanchez Carambot, Roberto Ortiz Feliciano v. Federico M. Matheu, 113 D.P.R. 153, 1982 PR Sup. LEXIS 189 (P.R. 1982).

Prior experience of violence constitutes appropriate indication of possible outbreaks in the future which justify valid restriction of right to free expression, where violence: (1) is serious enough to produce personal injuries or property damage of consideration; (2) occurred at the same location where demonstrations are staged; (3) should be a continuous process following a real pattern and not an unfortunate past event, and (4) should have occurred recently. Esaul Sanchez Carambot, Roberto Ortiz Feliciano v. Federico M. Matheu., 113 D.P.R. 153, 1982 PR Sup. LEXIS 189 (P.R. 1982).

Right to free expression is not unrestricted, but rather it may be conditional when compelling public interests so require. When said right is to be conditioned, alternatives available to governing power by which to achieve its objective must be considered to keep damage to right of expression to a minimum. Pedro Juan Soto v. Miguel Gimenez Munoz, 112 D.P.R. 477, 1982 PR Sup. LEXIS 115 (P.R. 1982).

Adequate balance between right of citizen to information and State right to confidentiality of police and investigative records existed where governmental regulation (a) was issued by constitutional authority of Government; (b) fostered important or

substantial governmental interest; (c) governmental interest was not related to suppression of right to free speech, and (d) concurrent restriction to right of free speech was not greater than minimum essential to foster such interest. Pedro Juan Soto v. Miguel Gimenez Munoz, 112 D.P.R. 477, 1982 PR Sup. LEXIS 115 (P.R. 1982).

State may restrict access by citizens at large to investigation records, but not on the sole grounds that they are police records. Pedro Juan Soto v. Miguel Gimenez Munoz, 112 D.P.R. 477, 1982 PR Sup. LEXIS 115 (P.R. 1982).

Puerto Rico Legislature may approve legislation in order to remove certain documents or information pertaining to investigative phase of crime prevention and punishment from public scrutiny, the publicity on which may unnecessarily jeopardize current crime investigation, life of informants or witnesses and even of State employees and officers, and in any other way may endanger public security. Pedro Juan Soto v. Miguel Gimenez Munoz, 112 D.P.R. 477, 1982 PR Sup. LEXIS 115 (P.R. 1982).

Constitutional rights to freedom of expression and association consecrated in Bill of Rights of Constitution of Commonwealth of Puerto Rico are not absolute in nature and are subordinated to other interests when required by circumstances of public coexistence and need. Felix F. Rodriguez v. Dr. Ramon A. Cruz, 109 D.P.R. 251, 1979 PR Sup. LEXIS 145 (P.R. 1979).

In weighing scope of restrictions of rights to free expression and association established by administrative official against importance of government interest behind them, under light of banned conduct representing menace for State 's interests, Courts should consider alternatives of Government to obtain objective of such limitation in a way which would hurt right to free expression the least, as well as those of person to exercise freedom of expression and association without adversely affecting governmental pretenses. Felix F. Rodriguez v. Dr. Ramon A. Cruz, 109 D.P.R. 251, 1979 PR Sup. LEXIS 145 (P.R. 1979).

After examining the allegations in this case, the Court concludes that the same does not involve the violation of petitioner's right to freedom of speec h. Eddie Belmonte v. Agustin Mercado Reveron, 95 P.R.R. 250, 1967 PR Sup. LEXIS 304 (P.R. 1967).

### 5. Loudspeakers.

Reasonable regulation of loudspeakers on university campus is constitutionally valid. Esaul Sanchez Carambot, Roberto Ortiz Feliciano v. Federico M. Matheu., 113 D.P.R. 153, 1982 PR Sup. LEXIS 189 (P.R. 1982).

The use of loudspeakers for the dissemination of ideas and concepts is protected by the constitutional right which guarantees the freedom of speech. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968).

Any administrative provision with force of law which constitutes an attempt to silence the expression, not by the selection of the method utilized for the dissemination, but by the mesage sought to be disseminated, is void. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968).

As a general proposition, this section does not preclude the regulation of the use of loudspeakers as to time, place, and volume, not only for electoral purposes, but for any other lawful purpose. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968).

A rule promulgated by the Commonwealth Board of Elections in which 'The use of loudspeakers is strictly prohibited in any part of Puerto Rico on election day' is unconstitutional from its own face because it is in conflict with this section. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968).

### 6. School grounds.

A Department of Education rule had the illegal effect of restricting freedom of speech of a teachers' association; the rule established that the associa tion would not be able to discuss matters dealing with the terms and conditions of teacher employment, even during non-working hours, because it was understood that said task was delegated to an incumbent union.

§ 4 Freedom of speech and press; peaceful assembly;..., Puerto Rico Const. Art....

Asoc. de Maestros v. Srio. de Educacion, 156 D.P.R. 754, 2002 PR Sup. LEXIS 56 (P.R. 2002).

Teachers as well as students have constitutional rights to free expression and association while on school grounds. Esaul Sanchez Carambot, Roberto Ortiz Feliciano v. Federico M. Matheu., 113 D.P.R. 153, 1982 PR Sup. LEXIS 189 (P.R. 1982).

State schools and libraries constitute semipublic forums where State has right to maintain necessary tranquility in order to achieve fundamental purpose assigned thereof. However, State is not empowered to exclude expression and peaceful gathering compatible with their purposes from those institutions. Felix F. Rodriguez v. Dr. Ramon A. Cruz, 109 D.P.R. 251, 1979 PR Sup. LEXIS 145 (P.R. 1979).

School teachers as well as students enjoy basic rights guaranteed by Constitution of Puerto Rico during their stay on school grounds, and prohibition of exercise thereof by administrative officials must be due to reasons transcending mere desire to avoid trivial inconveniences. Felix F. Rodriguez v. Dr. Ramon A. Cruz, 109 D.P.R. 251, 1979 PR Sup. LEXIS 145 (P.R. 1979).

Prohibitions to exercise basic rights guaranteed by Constitution by teachers and students during their stay on school grounds freedom of expression an d association among them can be justified only when school authorities estab lish facts which reasonably have led them to conclude that permitting proscribed activity would lead to substantial alteration and cause serious intervention with educational activities; therefore, said authorities should concretely demonstrate that restrictions respond to real need for defending efficiency and integrity of public service. Felix F. Rodriguez v. Dr. Ramon A. Cruz, 109 D.P.R. 251, 1979 PR Sup. LEXIS 145 (P.R. 1979).

### 7. Freedom of speech.

Plaintiff employee's discrimination claims based on political affiliatio n under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Consti tution, and §§ 5141, 5142 of Title 31, against defendant officials of state agency employer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Ale jandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Even though freedom of speech of judges is protected, judges should abstain from making political remarks in situations which have nothing to do with the defense of judicial independence. In re Zaida Hernandez Torres., 167 D.P.R. 824, 2006 PR Sup. LEXIS 77 (P.R. 2006).

Given that the First Amendment is meant to prohibit anything that would obstruct the freedom of the press, the State is limited to not: (1) imposing taxes or special tariffs on the press; (2) imposing discriminatory tariffs that would prejudice development of the press, and (3) interfering with the judgment and editorial control of the press. 2001 Op. Sec. Jus. No. 5.

The right to privacy, although all-inclusive and relevant, does not justify the issuing of an injunction against a newspaper which would amount to prior restraint and would violate the freedom of the press; rather, before issuing an injunction be it preliminary or permanent the court should consider whether some other remedy at law may be available. Perez Vda. Muniz v. Criado, 151 D.P.R. 355 (2000).

Property owners may in no way prohibit free speech activities. Emp. Pur. Des., Inc. v. H.I.E. Tel., 150 D.P.R. 924 (2000).

The freedom of speech guaranteed by the Constitution of the Commonwealth does not allow protests carried out by employees in a private commercial mall to be unreasonably banned. Emp. Pur. Des., Inc. v. H.I.E. Tel., 150 D.P.R. 924 (2000).

Property owners may limit protest on the property to actions reasonably compatible with business purposes of the enterprise, which may include regulating the time, place and manner of protest so that business activities are not substantially affected. Emp. Pur. Des., Inc. v. H.I.E. Tel., 150 D.P.R. 924 (2000).

Three types of public property have been identified: (1) areas which traditionally have been used for peaceful meetings and public debate, such as streets, sidewalks and parks; (2) areas which are public fora by designation, that is, those which the government has opened to discussion and exchange of ideas by certain groups or on certain themes, and (3) non-public fora.

§ 4 Freedom of speech and press; peaceful assembly;..., Puerto Rico Const. Art....

Protection afforded to expression in traditional public fora does not extend to all state-owned property. Unidad Nacional de Trabajadores de la Salud v. Jose E. Soler Zapata, 133 D.P.R. 153, 1993 PR Sup. LEXIS 208 (P.R. 1993).

The government has the power to regulate freedom of speech of public employees who work in hospital facilities administered by the government in order to increase the efficiency of the public service. Unidad Nacional de Trabajadores de la Salud v. Jose E. Soler Zapata, 133 D.P.R. 153, 1993 PR Sup. LEXIS 208 (P.R. 1993).

In the area of the constitutional rights to freedom of expression and association, litigant has been permitted to challenge an overly broad law without having to demonstrate that his own conduct could not have been regulated by a properly drafted law. Under these circumstances, it is permitted to litigants to contest validity of law not because it violates their own right to free expression, but because mere existence of statute may cause others who are not before the court to abstain from constitutionally protected expressions. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Right of freedom of expression extends to correctional institutions, but some limitation of this right may be justified. 1987 Op. Sec. Jus. No. 45.

Purpose of this section is to guarantee open discussion of affairs of government and this involves permitting citizens to inspect documents belonging to the State. 1987 Op. Sec. Jus. No. 4.

Of all sectors of public employees the most important, in terms of discipline, is the Police, and the interest of the State in maintaining order can justify regulation of a demonstration by the Police. 1986 Op. Sec. Jus. No. 50.

Constitutional rights of free expression, association and petition are not absolute and unlimited and may be subordinated to other interests of the State in certain circumstances and when public convenience and necessity so require, and in circumstances of public health crisis the State may regulate a boycott by the P.R. Medical Association. 1986 Op. Sec. Jus. No. 17.

Films, books, magazines and other publications, as forms of expression, are protected by this section. For that reason, confiscation of film may not be treated in the same way as confiscation of arms, drugs, contaminated foods, stolen property or evidence of other crimes. El Pueblo de Puerto Rico v. Felix Santos Vega, 115 D.P.R. 818, 1984 PR Sup. LEXIS 179 (P.R. 1984).

Where police agents were transferred on the day following their open statements concerning prevailing corruption in the Corps, allegations that said transfers were reprisals stated sufficient cause of action. Santiago v. Superintendent of Police, 112 D.P.R. 205 (1982).

The greater the limitation of constitutional right to freedom of expression the greater the State interest requiring protection and the greater the injury to said interest. Felix F. Rodriguez v. Dr. Ramon A. Cruz, 109 D.P.R. 251, 1979 PR Sup. LEXIS 145 (P.R. 1979).

It is not proper to exercise certain forms of expression in places such as courts, hospitals, temples and schools. Felix F. Rodriguez v. Dr. Ramon A. Cruz, 109 D.P.R. 251, 1979 PR Sup. LEXIS 145 (P.R. 1979).

A corporation organized for a political purpose is protected by the right of peaceful assembly guaranteed by the Constitution of the Commonwealth of Puerto Rico (this section) and its objectives are perfectly viable within its principles of freedom of the press and freedom of speech. 1973 Op. Sec. Jus. No. 15.

In the constitutional law of the United States as well as in that of Puerto Rico the right of freedom of speech and of the press are human fundamental rights guaranteed to citizens as well as to aliens. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

The chief purpose of the First Amendment to the Constitution of the United States is to prevent prior restraint of a written material to be published. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

The right of free speech includes the right to be heard. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR

Sup. LEXIS 121 (P.R. 1968).

The right to freedom of expression undisputed root of the democratic sys tem of government does not assume an absolute nonrestriction, so that it canno t be subordinated to other interests when the public need and convenience so require. If a conflict would appear between said right and the public need and convenience of subordinating it to other interests, the courts will decide taking into consideration the attendant circumstances in each specific case. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968).

The primary purpose of the First Amendment to the Federal Constitution a s well as that of this section is to protect the free discussion of government al affairs. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968).

The right to freedom of expression entails the granting of an opportunity to the majority to express its view in an effective manner. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968).

Laws which in any way limit the constitutional right to freedom of expression should be strictly construed in order that such limitations may not transcend what is absolutely essential. Juan Mari Bras y Otros v. Juan F. Casanas., 96 P.R.R. 15, 1968 PR Sup. LEXIS 121 (P.R. 1968); El Pueblo de Puerto Rico v. Rafael A. Burgos Fuentes, 75 P.R.R. 517, 1953 PR Sup. LEXIS 278 (P.R. 1953).

**8. Freedom of the press.**

The press should not be subjected to limitations which impair its ability to draw conclusions or reasonable inferences from facts, but this does not mean that a newspaper may, intentionally or with gross negligence, defame a dead person, thereby disgracing his memory and disturbing his surviving relatives. Marcelino Mendez Arocho v. El Vocero de P.R., 130 D.P.R. 867, 1992 PR Sup. LEXIS 245 (P.R. 1992).

Possibility of prejudice occurs where press discloses information which the accused has not had the opportunity to confront in an adversarial proceeding. Puerto Rico v. Maria de Lourdes Miranda Santiago., 130 D.P.R. 507, 1992 PR Sup. LEXIS 219 (P.R. 1992).

Freedom of the press extends to incorrect information as well as correct information. Marta Villanueva v. Catalino Hernandez Class, 128 D.P.R. 618, 128 PR Sup. LEXIS 618 (P.R. 1991).

Special guarantee of freedom of the press should apply not only to those the courts can classify as press, but also to any one of any size, in any medium, which regularly undertakes the mission of the press. Angel Oliveras v. Reinaldo Paniagua Diez., 115 D.P.R. 257, 1984 PR Sup. LEXIS 105 (P.R. 1984).

Section 3141 et seq. of Title 32 have been modified regarding presumption and evidence of real malice and adjusted to new concept of freedom of the press guaranteed by this section and First Amendment to Federal Constitution. Vicente Garcia Cruz v. El Mundo, Inc., 108 D.P.R. 174, 1978 PR Sup. LEXIS 616 (P.R. 1978).

Freedom of the press guaranteed by constitution includes both correct and incorrect statements, and keen, aggressive, and sometimes unpleasantly sharp attacks on government and public officers. Jesus Zequeira Blanco v. Periodico El Mundo, Inc., 106 D.P.R. 432, 1977 PR Sup. LEXIS 3098 (P.R. 1977).

Demanding newspaper to verify news costly process in time, money and per sonnel where doubts did not arise from face of information itself about its ac curacy or where information could not be easily verified due to special circumstances, would violate constitutional guarantee of freedom of the press. Jose, mejor conocido por Pepito Torres Silva v. El Mundo, Inc., 106 D.P.R. 415, 1977 PR Sup. LEXIS 3097 (P.R. 1977).

The use of signs, painted messages, posters, etc., by individuals or groups as a means of dissemination of ideas, concerns, and discontent on all kinds of subjects including political messages and propaganda, as a general rule, constitutes an exercise of the freedom of speech and of the press. Juan Mari Bras y Otros v. Alcaide Carcel Municipal de San Juan y/Cualquier Otro Alcaide, 100 P.R.R. 504, 1972 PR Sup. LEXIS 106 (P.R. 1972).

§ 4 Freedom of speech and press; peaceful assembly;..., Puerto Rico Const. Art....

The allegation of whoever requests the issuance of an injunction to prohibit the publication of a written material an intervention with a citizen's right to freedom of speech and of the press that if published, the same would be scandalous, does not constitute a legal basis for its issuance particularly when said written material deals with matters of public interest. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

In the legitimate exercise of its constitutional right to freedom of expression and the rights derived from that, the Custody Officials Authentic Union, can distribute informative material and applications for membership with the purpose of winning supporters for its association, subject to the statutory and regulatory provisions that govern accreditation. 1965 Op. Sec. Jus. No. 22.

### 9. Obscenity.

In view of problems of freedom of expression involved, more rigorous standard for determining probable cause is required when soliciting search and seizure warrant in obscenity cases. El Pueblo de Puerto Rico v. Felix Santos Vega, 115 D.P.R. 818, 1984 PR Sup. LEXIS 179 (P.R. 1984).

States may regulate exhibition of obscene material in public places, but regulation adopted should not unduly limit freedom of expression. El Pueblo de Puerto Rico v. Felix Santos Vega, 115 D.P.R. 818, 1984 PR Sup. LEXIS 179 (P.R. 1984).

Warrant for entry, search and seizure should be based on information so detailed as to allow magistrate to make independent judgment as to obscenity of material. Magistrate should be sure, also, that declaration meets guidelines imposed on states in Miller v. California, 413 U.S. 15 (1973), for determining whether material is obscene. El Pueblo de Puerto Rico v. Felix Santos Vega, 115 D.P.R. 818, 1984 PR Sup. LEXIS 179 (P.R. 1984).

Confiscation of obscene material en masse, depriving exhibitor of all of his copies or of large number thereof is excessive and not permissible. Confiscation of on copy of each title for use as evidence is sufficient. El Pueblo de Puerto Rico v. Felix Santos Vega, 115 D.P.R. 818, 1984 PR Sup. LEXIS 179 (P.R. 1984).

Confiscation of alleged obscene material, particularly films, is governed by following minimum standards under Commonwealth Constitution: (1) films, books or other publications may not be subject to confiscation, except by means of court order to that effect, issued by impartial magistrate after probable cause as to obscenity of said material has been determined, (2) sworn statement on which it is based should be so detailed as to permit formation of independent judgment as to the obscenity of material to be confiscated; (3) Judge needs not to see film in order for probable cause to be determined; (4) film may not be subjected to any final restriction, such as, for example, a prohibition of its exhibition, or an order that it be destroyed, without a prior adversary hearing; (5) the confiscation of any more than one copy of each film designated in the order, which is sufficient to preserve the evidence, will not be permitted without prior adversary hearing; (6) the prior advisory hearing may be waived, provided that judge is shown, before issuing order, that such confiscation will not result in interruption of showings, because owner or exhibitor has more copies of film to be confiscated or because he will have to be given opportunity to copy sole one he has, or to otherwise obtain another, if order itself grants hearing for as soon as possible following confiscation; and (7) purpose of warrant for entry, search, and seizure may not be to prevent showing of film. El Pueblo de Puerto Rico v. Felix Santos Vega, 115 D.P.R. 818, 1984 PR Sup. LEXIS 179 (P.R. 1984).

### 10. Fiestas of patron saints.

There is no prohibition against participation of the Church in programming certain activities which are traditionally performed at municipal fiestas. 1983 Op. Just. No. 14.

Puerto Rico Const. Art. II, § 4, PR CONST Art. II, § 4

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of

**§ 4 Freedom of speech and press; peaceful assembly;..., Puerto Rico Const. Art....**

Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                       © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 5 Public education, Puerto Rico Const. Art. II, § 5

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

Puerto Rico Const. Art. II, § 5

§ 5 Public education

Every person has the right to an education which shall be directed to the full development of the human personality and to the strengthening of respect for human rights and fundamental freedoms. There shall be a system of free and wholly non-sectarian public education. Instruction in the elementary and secondary schools shall be free and shall be compulsory in the elementary schools to the extent permitted by the facilities of the state. Compulsory attendance at elementary public schools to the extent permitted by the facilities of the Commonwealth, as herein provided, shall not be construed as applicable to those who receive elementary education in schools established under nongovernmental auspices. No public property or public funds shall be used for the support of schools or educational institutions other than those of the state. Nothing contained in this provision shall prevent the state from furnishing to any child non-educational services established by law for the protection or welfare of children.

As amended in General Election of Nov. 4, 1952, effective Jan. 29, 1953.

**History**

**Codification.**

The amendment of this section was one of the conditions of the approval of the Constitution in Joint Resolution of Congress of July 3, 1952, c. 567, 66 Stat. 327, which provided that this section should have no force and effect until amended as therein provided. This condition was accepted in the name of the people of Puerto Rico by the Constitutional Convention in Resolution No. 34, July 10, 1952. The amendment was proposed to the voters in the general election of November 4, 1952, by Senate Concurrent Resolution No. 2 of Legislative Assembly approved July 28, 1952. By Administrative Bulletin No. 30, Jan. 29, 1953, the Governor proclaimed that the amendment had been approved by an overwhelming majority of the voters and that it should take effect from January 29, 1953.

In the text, the amendment is the same as the original section except that the fourth sentence has been inserted, containing the provision specified by the Joint Resolution of Congress of July 3, 1952.

**ANNOTATIONS**

**1. Generally.**

The principal purpose of this section is to define the collective aspirations with regard to education and to create a system of primary and secondary level public education, and it does not establish a right to obtain a university education from the state. Asoc. Academias y Col. Cristianos v. E.L.A., 135 D.P.R. 150 (1994).

§ 5 Public education, Puerto Rico Const. Art. II, § 5

### 2. Schools or educational institutions.

Provisions on aid to private schools although some of them be of religio us persuasion in P.L. 89-10 do not violate any constitutional or statutory pro vision applicable to Commonwealth of Puerto Rico. 1966 Op. Sec. Jus. No. 32.

Constitutional provisions and court jurisprudence have clearly established that there must be no economic help or cooperation on the part of governmental authorities to any religious sect, and that sectarian educational institutions are excluded from concept of 'public purposes'. 1961 Op. Sec. Jus. No. 45.

The word 'school' as used in the Constitution is to be taken as used i n its ordinary and traditional meaning, that is to relate to those educational institutions where systematic instruction in any or all branches of learning is given according to rules or methods fixed by the Department of Education for that purpose. 1959 Op. Sec. Jus. No. 27.

An application for help submitted by a noneducational, nonsectarian entity a convalescent home for mentally abnormal children is not embraced in the c onstitutional prohibition; nor is there a problem with the constitutional principle of separation of Church and State. 1959 Op. Sec. Jus. No. 27.

The giving of educational services in private schools or educational institutions is what the Constitution prohibits the Commonwealth from doing; the Instituto Psicopedagogico by its nature is not properly a school or educational institution in the sense in which such words are used in the Constitution, since the instruction given to the children in it is rather incidental to the ends and purposes for which it is established. 1959 Op. Sec. Jus. No. 27.

A loan to a school under religious auspices by the Government Development Bank would not be an action specifically inspired by the theory of child welfare, since it has to be done in the manner and under the same rules as such loans are granted for the development of the general economy of Puerto Rico. 1959 Op. Sec. Jus. No. 17.

Fact that some children are registered in private school is no bar for possibility of their registration in public schools and to receive instruction on subject matter which could be recognized and accepted by private school. 1955 Op. Sec. Jus. No. 45.

### 3. Bus compensation.

This section would not prevent the Metropolitan Bus Authority from being compensated by an appropriation for a reduction of its income caused by keeping 5-cent rate for pupils, which also benefits pupils attending private schools of sectarian nature. 1961 Op. Sec. Jus. No. 34.

### 4. Church and state.

Constitutional Assembly wished to establish language in Commonwealth of Puerto Rico Constitution for principle of separation between Church and State to be understood similarly to same principle as stated by the U.S. Constitution and construed by U.S. Supreme Court. 1966 Op. Sec. Jus. No. 32.

Doctrine of benefit to children holds that benefits to school age children from the State do not constitute support, and therefore, is not contrary to principle of separation between Church and State, notwithstanding fact that some of those children attend private religious schools. 1966 Op. Sec. Jus. No. 32.

### 5. Private universities.

Nothing in the Constitution of Puerto Rico nor in the education policy of Puerto Rico has made higher education in a private university a public function, or has put in doubt the traditional status of private institures and universities despite the argument that the provision of the Constitution of Puerto Rico that 'every person has the right to an education', construed jointly with the regulation and support by the Commonwealth of higher education, arrives at the conclusion that higher education is a public function and that the university was therefore subject to the legal standards of operation applicable to public institutions. Berrios v. Inter American University, 535 F.2d 1330, 1976 U.S. App. LEXIS 11235 (1st Cir. P.R. 1976).

### 6. Waiver of rights.

Waiver of fundamental right cannot be presumed; it must be expressed, not implied, as well as voluntary and with full understanding. Humberto Pagan Hernandez v. Universidad de Puerto Rico., 107 D.P.R. 720, 1978 PR Sup. LEXIS 582 (P.R. 1978).

Right to receive an education § 5 of Bill of Rights of Commonwealth C onstitution invoked in administrative proceedings cannot be dismissed alleging that petitioner implicitly waived it because he did not fulfill certain terms of administrative regulations. Humberto Pagan Hernandez v. Universidad de Puerto Rico., 107 D.P.R. 720, 1978 PR Sup. LEXIS 582 (P.R. 1978).

Puerto Rico Const. Art. II, § 5, PR CONST Art. II, § 5

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 39 of 272

§ 6 Freedom of organization, Puerto Rico Const. Art. II, § 6

Laws of Puerto Rico Annotated Currentness
  The Constitution of the Commonwealth of Puerto Rico
    Article II. Bill of Rights

Puerto Rico Const. Art. II, § 6

§ 6 Freedom of organization

Persons may join with each other and organize freely for any lawful purpose, except in military or quasi-military organizations.

**ANNOTATIONS**

**1. Generally Purpose.**

Legislative purpose in enacting § 755 of Title 3 was to grant municipal employees same rights as Government employees regarding deductions from salaries for payment of quotas as members of a bona fide group of public servants, in exercise of constitutional rights, and it is affirmed that they are those established in this section. 1961 Op. Sec. Jus. No. 47.

**2. Police.**

The Police Corps is not prevented from organizing associations of its members, for any legal purpose, provided such organizations do not have the character of a worker's union. 1960 Op. Sec. Jus. No. 13.

**3. Firemen.**

Creation of a group such as firemen in a manner similar to a military organization does not prohibit its members from organizing an association, provided that such organization is carried out with purposes considered constitutionally legal. 1962 Op. Sec. Jus. No. 47.

**4. Municipal employees.**

Irregular municipal employees have the constitutional right to join with each other and organize freely. 1963 Op. Sec. Jus. No. 57.

**5. Political activities.**

Plaintiff employee's discrimination claims based on political affiliation under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Constitution , and §§ 5141, 5142 of Title 31, against defendant officials of state agency e mployer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Alejandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Plaintiff employee's discrimination claims based on political affiliati on under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8,

§ 6 Freedom of organization, Puerto Rico Const. Art. II, § 6

the PR Consti tution, and §§ 5141, 5142 of Title 31, against defendant officials of state agency employer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Ale jandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Basic facts which justify an inference of political discrimination are: (1) absence of reason to justify discharge, and (2) substitution of employee by another of a different political affiliation. Richard J. McCrillis v. Autoridad de las Navieras de P.R., 123 D.P.R. 113, 1989 PR Sup. LEXIS 71 (P.R. 1989).

In the case of a confidential employee the appointing authority has complete freedom to discharge, transfer, suspend or take any other action he considers necessary, but confidential employee classification is not as such deprived of protection against political discrimination. Richard J. McCrillis v. Autoridad de las Navieras de P.R., 123 D.P.R. 113, 1989 PR Sup. LEXIS 71 (P.R. 1989).

Confidential employees enjoy constitutional protection against politically grounded discrimination, and where it was not demonstrated that position occupied by claimant required certain specific political affiliation for the proper discharge of his duties, reinstatement did lie. Rodriguez v. Munoz, 603 F. Supp. 349, 1985 U.S. Dist. LEXIS 22345 (D.P.R. 1985), rev'd, in part, vacated, 808 F.2d 138, 1986 U.S. App. LEXIS 34866 (1st Cir. P.R. 1986).

An administrative board or a court either may not, by administrative f iat or by judicial construction, extend a provision of law which may curb the freedom of political organization in any of its manifestations, as part of the right to vote, beyond its own terms for the purpose of broadening an express prohibition contained therein. Partido Nuevo Progresista v. Junta Estatal de Elecciones., 96 P.R.R. 937, 1968 PR Sup. LEXIS 170 (P.R. 1968).

The right of the citizens to organize in groups of the same beliefs as political parties and to propose candidates of their choice to participate in the electoral procedure has its origin in the fundamental right of suffrage, which is consubstantial with the existence itself of a political democracy. Vicente L. Gimenez v. Junta Estatal de Elecciones de Puerto Rico., 96 P.R.R. 919, 1968 PR Sup. LEXIS 81 (P.R. 1968).

The essential equality in the regulation of the right of suffrage is a sine qua non requirement for the validity of the electoral procedure. Vicente L. Gimenez v. Junta Estatal de Elecciones de Puerto Rico., 96 P.R.R. 919, 1968 PR Sup. LEXIS 81 (P.R. 1968).

### 6. Construction.

Neither right of association nor right to participate in electoral process is absolute in any case. Democratic Party v. Tribunal Electoral., 107 D.P.R. 1, 1978 PR Sup. LEXIS 627 (P.R. 1978).

Right to associate and organize freely for any licit purpose guaranteed by this section was not violated by either letter or spirit of prior § 2339 of Title 16. Democratic Party v. Tribunal Electoral., 107 D.P.R. 1, 1978 PR Sup. LEXIS 627 (P.R. 1978).

### 7. Political organization.

A corporation organized for a political purpose is protected by the right of peaceful assembly guaranteed by the Constitution of the Commonwealth of Puerto Rico (this section) and its objectives are perfectly viable within its principles of freedom of the press and freedom of speech. 1973 Op. Sec. Jus. No. 15.

Puerto Rico Const. Art. II, § 6, PR CONST Art. II, § 6

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish

**§ 6 Freedom of organization, Puerto Rico Const. Art. II, § 6**

version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 42 of 272

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Puerto Rico Const. Art. II, § 7

§ 7 Right to life, liberty, and enjoyment of property; no death penalty; due process; equal protection of laws; impairment of contracts; exemption of property from attachment

The right to life, liberty and the enjoyment of property is recognized as a fundamental right of man. The death penalty shall not exist. No person shall be deprived of his liberty or property without due process of law. No person in Puerto Rico shall be denied the equal protection of the laws. No laws impairing the obligation of contracts shall be enacted. A minimum amount of property and possessions shall be exempt from attachment as provided by law.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Maximum term for reserving private property for public use, see §§ 292 3 2927 of Title 32.

**ANNOTATIONS**

**1. Due process Generally.**

Video game owner's claims under 42 U.S.C.S. § 1983 and various consti tutional provisions asserting that the Secretary of the Treasury of Puerto Rico violated its rights by depriving it of its property as a result of cancelling its licenses and seizing some video entertainment machines at several of its establishments failed to survive the Secretary's motion to dismiss for failure to s tate a cause of action, because a claim against the Secretary was, in essence, a claim against the State barred by the Eleventh Amendment, which is applicable to the Commonwealth of Puerto Rico. Replay, Inc. v. Sec'y of the Treasury, 778 F. Supp. 2d 207, 2011 U.S. Dist. LEXIS 42443 (D.P.R. 2011).

Factual allegations in the complaint clearly established that the police officer's procedural due process rights were consistently violated because the superintendents failed to provide the police officer with evidence of his alleged 'medical condition', failed to provide answers or explanations for their failure to timely reinstate him according to the resolution, failed to explain why he was assigned new functions when he was briefly reinstated, and failed to provide him with copies of alleged detrimental letters and documentation in his personnel record. Puerto Rico v. Francisco Rivera Tirado, 117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

The actions of certain public officers in controlling access, without specific guides, to a public residence with road blocks violated §§ 7, 8 and 10 of Art. II of the Constitution, as it unreasonably interfered with the right of privacy of the residents,

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

and by not providing the minimum guarantees required by due process. Luis A. Nieves v. AM Contractors, Inc., 166 D.P.R. 399, 2005 PR Sup. LEXIS 180 (P.R. 2005).

Pursuant to a petition submitted by the mother of a minor child requesting an increase of support payment in favor of the child, the Court of First Instance issued an order, but the child's father who lived outside of Puerto Rico wa s denied due process because the court lacked jurisdiction and the father had not been brought before a judge until three days after he had been arrested. Alvarez Elvira v. Arias Ferrer, 156 D.P.R. 352, 2002 PR Sup. LEXIS 29 (P.R. 2002).

The Court of First Instance did not violate the due process amendment when it allowed the plaintiffs, parents of the deceased adoptive parent, to bring evidence refuting presumption of the adoption agreement by the adoptive parent, and it granted them, in addition, a greater participation than is allowed by the Adoptions Act. Zapata et al. v. Zapata et al., 156 D.P.R. 278 (2002).

The due process of law requires, as a general rule, a real and effective notice or citation conformed to the applicable statutory requirements. Constructive notice as an alternate method, including by inferences, is the exception; it is justified in particular circumstances, that are not present in this case. Asociacion de Residentes Parque Montebello v. Montebello Dev. Corp., 138 D.P.R. 412, 1995 PR Sup. LEXIS 355 (P.R. 1995); 138 D.P.R. 399.

The only thing that due process of law requires, before termination of employment of a public employee, is the so-called Loudermill hearing that provides the accused an opportunity to give his version of what happened; it is the first procedural step in which both parties informally express the charges and possible defenses that could be used later before the appellate court. Lucas Marrero Caratini v. Enrique Rodriguez Rodriguez., 138 D.P.R. 215, 1995 PR Sup. LEXIS 233 (P.R. 1995); Consejo de Educacion Superior de la Univ. de P.R. v. Pedro Rossello Gonzalez., 137 D.P.R. 83, 137 PR Sup. LEXIS 83 (P.R. 1994).

Three criteria should be weighed to determine what process is due before depriving an individual of a protected right: (1) the individual interests to be affected by official action; (2) the risk presented by the process of an erroneous determination which could deprive the individual of a protected interest and the probable value of additional guarantees; and (3) the government interest protected by the summary process and the availability of alternative methods. Rivera Rodriguez y Co. v. William Abram Lee Stowell Taylor, 133 D.P.R. 881, 1993 PR Sup. LEXIS 262 (P.R. 1993).

Constitutional requirements of due process are applicable to foreclosure procedures and to prohibitions to alienate regardless of whether the interference is temporary. Rivera Rodriguez y Co. v. William Abram Lee Stowell Taylor, 133 D.P.R. 881, 1993 PR Sup. LEXIS 262 (P.R. 1993).

A statute which does not provide sufficient time to pursue a remedy is unconstitutional. Jose Manuel Calo Morales v. Maritza Cartagena Calo., 129 D.P.R. 102, 1991 PR Sup. LEXIS 223 (P.R. 1991).

Prosecutor violates due process of law when he hides or omits favorable evidence requested by the defense and which is relevant to the guilt or punishment of the defendant regardless of the prosecutor's good or bad faith in so actin g. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 299, 1991 PR Sup. LEXIS 188 (P.R.), superseded, 128 D.P.R. 752 (P.R. 1991).

Constitutional guarantee of due process requires that statute regulating socioeconomic issues not be unreasonable, arbitrary or capricious and that the means used be rationally related to the interest to be protected. Modesto Salas v. Moca. Orlando Diaz Nieves v.Juan De Jesus., 119 D.P.R. 625, 1987 PR Sup. LEXIS 184 (P.R. 1987).

In determining constitutionality of a statute under the equal protection and due process clauses the courts should not consider the wisdom or efficacy of the legislative measure. Modesto Salas v. Moca. Orlando Diaz Nieves v.Juan De Jesus., 119 D.P.R. 625, 1987 PR Sup. LEXIS 184 (P.R. 1987).

Due process should occur in two dimensions: procedural and substantive. Tomas Rivera Santiago v. Secretario de Hacienda., 119 D.P.R. 265, 1987 PR Sup. LEXIS 150 (P.R. 1987).

Under substantive due process, courts examine validity of the substantive part of a law according to the Constitution. Tomas Rivera Santiago v. Secretario de Hacienda., 119 D.P.R. 265, 1987 PR Sup. LEXIS 150 (P.R. 1987).

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Procedural aspects of due process take into account minimum procedural guarantees that the State should provide individuals whose life, liberty or property is affected. Tomas Rivera Santiago v. Secretario de Hacienda., 119 D.P.R. 265, 1987 PR Sup. LEXIS 150 (P.R. 1987).

Applicability of due process in its procedural aspect requires an individual interest in liberty or property. Once this condition is met it is necessary to determine the required process. Tomas Rivera Santiago v. Secretario de Hacienda., 119 D.P.R. 265, 1987 PR Sup. LEXIS 150 (P.R. 1987).

Fundamental element of due process is opportunity to be heard. Junta de Relaciones del Trabajo de P.R. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 1987 PR Sup. LEXIS 139 (P.R. 1987).

The final sentence of subsection (1) of § 4109 (1) of Title 26, which s ets a maximum term of two years to initiate an action for medical malpractice, is unconstitutional as a violation of art. II, § 7 of the Constitution. Lydia E. Alicea v. Carlos E. Cordova Iturregui, 117 D.P.R. 676, 1986 PR Sup. LEXIS 157 (P.R. 1986).

A statute of limitations which can have the effect of requiring plaintiff to commence an action before plaintiff becomes aware of the cause of action violates due process of law. Lydia E. Alicea v. Carlos E. Cordova Iturregui, 117 D.P.R. 676, 1986 PR Sup. LEXIS 157 (P.R. 1986).

Due process of law requires the reversal of a conviction when the presiding judge had previously investigated the case, a circumstance which compromises his impartiality, if only in appearance. Puerto Rico v. Graciany Miranda Marchand, 117 D.P.R. 303, 1986 PR Sup. LEXIS 125 (P.R. 1986).

Construction and application of due process clause under Commonwealth Constitution belongs exclusively to Puerto Rico Supreme Court. Puerto Rico v. Moises Ortiz Tirado., 116 D.P.R. 868, 1986 PR Sup. LEXIS 81 (P.R. 1986).

Judgments, awards or orders issued in violation of due process cannot be enforced in Puerto Rico, notwithstanding their validity in other local jurisdictions. Jose Amy Angulo v. Administracion del Deporte Hipico., 116 D.P.R. 414, 1985 PR Sup. LEXIS 97 (P.R. 1985).

Administrative and judicial proceedings instituted regarding alleged discrimination for reasons of sex and of violation of right to free and full expression constituted due process in case at bar. Stitzer v. University of Puerto Rico, 617 F. Supp. 1246, 1985 U.S. Dist. LEXIS 16601 (D.P.R. 1985).

A restrictive construction of former §§ 757-1a to 757-1g of Title 3, c ontrary to the spirit and purpose of their enactment to remedy the financial situation of public employees by offering them special financial relief as soon as possible, is unreasonable, unjust and discriminatory, as well as being contrary to constitutional guarantees of equal protection of the law and equal pay for equal work. 1983 Op. Sec. Jus. No. 9.

Right to due process of law is not a rigorous mold applied in abstract, for its nature is eminently circumstantial and pragmatic. El Pueblo de Puerto Rico v. Adalberto Andreu Gonzalez y Otros., 105 D.P.R. 315, 1976 PR Sup. LEXIS 3006 (P.R. 1976).

Neither due process nor law itself coexist in order to allow impossible, absurd, useless or unnecessary demands. El Pueblo de Puerto Rico v. Adalberto Andreu Gonzalez y Otros., 105 D.P.R. 315, 1976 PR Sup. LEXIS 3006 (P.R. 1976).

The due process of law is circumstantial and pragmatical. El Pueblo de Puerto Rico v. Roberto Suarez Sanchez, 103 D.P.R. 10, 1974 PR Sup. LEXIS 355 (P.R. 1974).

As a general rule, that criminal statute of such indefinite and vague nature, that does not adequately inform the citizen that his act was forbidden and punished, violates the due process of law, and such lack of precision on the part of the Legislative Power compels the courts to declare said act an offense. El Pueblo de Puerto Rico v. Hector M. Santiago Vazquez, 95 P.R.R. 581, 1967 PR Sup. LEXIS 357 (P.R. 1967).

In a lease contract between U.R.H.C. as lessor and a private citizen as lessee, in relation to a dwelling in a public development housing project fina nced by federal and state funds said governmental corporation is subject to the

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

requirements of the due process of law. Corporacion de Renovacion Urbana y Vivienda de Puerto Rico v. Jose Pena Ubiles, 95 P.R.R. 301, 1967 PR Sup. LEXIS 311 (P.R. 1967).

The removal of an employee from the Noncompetitive Service of the Government of Puerto Rico is not on the margin of the due process of law for the mere fact that the Personnel Act does not provide that for the removal from said service the previous notice of the charges to the employee and the opportunity to be heard are necessary. Camilo Arcelay Rivera v. Superintendente de la Policia de Puerto Rico, 95 P.R.R. 205, 1967 PR Sup. LEXIS 294 (P.R. 1967).

The due process of law in administrative cases does not require that the testimony introduced at the hearings be weighed by the trial examiner who heard it and observed the witnesses. Jose Hernandez Garcia y Otros v. Junta de Relaciones del Trabajo de Puerto Rico., 94 P.R.R. 21, 1967 PR Sup. LEXIS 189 (P.R. 1967).

In the exercise of its rule-making power in the public interest, the State may adopt measures to protect the health, the morale, and general welfare of the community without the restrictions which flow from such measures being contrary to the concept of the due process of law. Only when this type of legislation is clearly arbitrary and bears no reasonable relation to the public purpose contemplated shall said legislation be declared unconstitutional. El Estado Libre Asociado de Puerto Rico v. Ramon Luis Marquez y Tomas Parrilla., 93 P.R.R. 382, 1966 PR Sup. LEXIS 80 (P.R. 1966).

The federal due process is applied in the Commonwealth of Puerto Rico and in the several states of the Union as well. Figueroa Ruiz v. Delgado, 359 F.2d 718, 1966 U.S. App. LEXIS 6352 (1st Cir. P.R. 1966).

Since the compact pursuant to P.L. 600, 81st Congress, the interpretation and application of due process guaranteed by the Constitution of the Commonwealth of Puerto Rico corresponds to the Supreme Court of Puerto Rico. Figueroa Ruiz v. Delgado, 359 F.2d 718, 1966 U.S. App. LEXIS 6352 (1st Cir. P.R. 1966).

The due process of law is not violated because a judge without making any determination as to defendant's innocence or guilt heard and examined under oath witnesses who appeared before him and on whose testimony he issued a search warrant to determine the existence of probable cause for defendant's ar rest and to file any information against said defendant and subsequently presides at the trial against said defendant. Puerto Rico v. Pacheco., 83 P.R.R. 275, 1961 PR Sup. LEXIS 448 (P.R. 1961), dismissed, Agripino Pacheco v. Puerto Rico, 300 F.2d 759, 1962 U.S. App. LEXIS 5473 (1st Cir. P.R. 1962).

The guarantee of due process demands only that the law shall not be unreasonable, arbitrary or capricious, and that the means selected shall be a real and substantial relation to the object sought to be attained. Antonio Roig, Sucrs., S. en C. v. Junta Azucarera de Puerto Rico y Asociacion de Colonos de Yabucoa, 77 P.R.R. 324, 1954 PR Sup. LEXIS 356 (P.R. 1954), aff'd, Antonio Roig Sucrs. S. En C. v. Sugar Board of Puerto Rico, 235 F.2d 347, 1956 U.S. App. LEXIS 3870 (1st Cir. P.R. 1956).

### 2. Under the U.S. Constitution.

A conviction based on perjured testimony is fundamentally unjust and should be overturned if there is reason to believe that the false testimony may have affected the verdict. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 299, 1991 PR Sup. LEXIS 188 (P.R.), superseded, 128 D.P.R. 752 (P.R. 1991).

The minimal guarantees of due process pursuant to the federal constitution in proceedings to revoke parole or suspended sentence privilege are (1) preliminary hearing to establish probable cause to believe the parolee has violated conditions for parole, and (2) final hearing prior to final decision on the merits of the case. However, preliminary hearing may not be necessary when parolee is neither arrested nor jailed during the procedure to request said revocation. Ramon A. Martinez Torres v. Santos Amaro Perez., 116 D.P.R. 717, 1985 PR Sup. LEXIS 132 (P.R. 1985).

Allegation that milk regulation which established an automatic formula for the monthly adjustment of prices in relation to changes in the prices of animal feed deprived milk consumers of due process fails to state a federal claim which would authorize the federal court to exercise its jurisdiction over the local claims. Rivera v. Chapel, 493 F.2d 1302, 1974 U.S. App. LEXIS 9397 (1st Cir. P.R. 1974).

No doubt under the Organic Act of 1917, the Insular government of Puerto Rico was subject to the due process clause of the Fifth Amendment of the U.S. Constitution. Under the terms of the compact offered to the people of Puerto Rico by Public

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Law 600, and by the Joint Resolution of Congress approving the Constitution adopted by the people of Puerto Rico pursuant thereto, the government of the Commonwealth of Puerto Rico is subject to 'the applicable provisions of the constitution of the United States.' That must mean that the people of Puerto R ico, who remain United States citizens, are entitled to invoke against the Commonwealth of Puerto Rico the protection of the fundamental guaranty of due process of law, as provided in the Federal Constitution. For our present purposes it is unnecessary to determine whether it is the due process clause of the Fifth Amendment or that of the Fourteenth Amendment which is now applicable; the important point is that there cannot exist under the American flag any governmental authority untrammeled by the requirements of due process of law as guaranteed by the Constitution of the United States. It is true that the Constitution of the Commonwealth of Puerto Rico contains a due process clause, which will be authoritatively interpreted and applied by the Supreme Court of Puerto Rico as a matter of local law. But the overriding federal constitutional guaranty of due process of law may be vindicated in the federal courts, and ultimately of course by the Supreme Court of the United States. The terms of the compact, under which the Commonwealth government was established, did not disturb the jurisdiction of the federal courts, as provided in the Judicial Code, 28 U.S.C. Mora v. Mejias, 206 F.2d 377, 1953 U.S. App. LEXIS 2756 (1st Cir. P.R. 1953).

### 2a. Clarity and precision; penal statutes.

Due process clause requires that statutes be clear and precise. The requirement of certainty for statutes which punish crimes is greater than that required of those which draw upon civil sanctions for their enforcement. The crime must be defined with adequate precision. There must be a determinable standard as to what constitutes criminal responsibility. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Vagueness of penal statute may consist in uncertainty as to which persons the law affects or as to the applicable standard for determining criminal responsibility. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Penal law must provide to every person of average intelligence an adequate guide by which they may perceive beforehand that their conduct is prohibited. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

An ambiguous penal law furthers the possibility of arbitrary and discriminatory implementation, as it impermissibly delegates to law enforcement officials determination of reach of legislation. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

All laws, even the most clear, require interpretation. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Just as police and prosecutors exercise certain degree of discretion in interpretations of penal statutes in carrying out their functions, so too do judges. The exercise of these interpretative functions does not necessarily signify that a law is ambiguous. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

All that is required by ambiguity doctrine is that minimum guidelines for its implementation have been established. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

An ambiguous law may restrain enjoyment of the freedoms protected by the Constitution. When this occurs, the law is unconstitutional on its face, not only as applied. The law is unconstitutional not by virtue of the manner in which it was applied in a particular case, but by reason of the many inconsistent and arbitrary ways it could be applied in other situations. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Statutes which punish disorderly conduct are subject to stricter criteria of certainty and clarity than is usual, and can be declared unconstitutional on their face, although a situation in which they could validly be applied is conceivable. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Rule that penal statutes must be interpreted restrictively does not demand that words of statute must conform to its most limited meaning, or should ignore clear intent of the legislature. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Due process of law does not prevent authorities from exercising discretion in commencing prosecutions. It is an impediment only when such prosecutorial discretion is based on personal predilection unrelated to police power, or an inexplicably contradictory or actively deceptive conduct by government officials. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Statutes which intend to restrict, make difficult or prohibit enjoyment of constitutional rights to freedom of expression and association in public forums must be based upon an overriding public interest, and their effect and reach should not be broader than necessary to achieve this legitimate and convincing goal, once expressed by legislature. Thus, excessive breadth of contested law must be substantial in relation to legitimate goal the measure may have. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

### 2b. Constitutional challenge.

As a general rule, no one may contest a statute on the basis that it would be unconstitutional in circumstances other than one's own, because constituti onal rights are personal and cannot be invoked vicariously. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

Four factors must be taken into consideration in determining standing of litigant to invoke constitutional rights of others: (1) the interest of litigant; (2) nature of right invoked; (3) relation between the litigant and third parties, and (4) feasibility of said third parties invoking such rights in independent actions. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

As an exception, standing of a litigant to defend the rights of third parties not present in case if no other effective means to preserve such rights exists is recognized. People v. Hernandez Colon, 118 D.P.R. 891 (1987).

### 3. Judicial proceedings Generally.

The requirement of adequate notification of the charges presented against the accused was not complied with when the prosecutor was permitted to not allege the condition of recidivism in the accusation. 169 D.P.R. 360.

The concept of res judicata in its modality of collateral estoppel by sentence applies to an impugnation of a confiscation to the extent that there was a dismissal of the accusations against a property owner for failure to fulfill the right to a speedy trial, and the Prosecutor did not present new charges. Suarez v. E.L.A., 162 D.P.R. 43 (2004).

The accused, charged with violating §§ 4002 of Title 33 and 455 460j of Title 25, argued that the court of instance had violated his right to a speedy trial because he was summoned to the preliminary hearing more than 60 days after lack of probable cause was determined; but the Circuit Court of Appeals erred in resolving that there was lack of jurisdiction, and the Supreme Court confirmed the opinion of the court of instance in concluding that there was no violation of the right to a speedy trial. Puerto Rico v. Jose J. Ramos Ayala, 159 D.P.R. 788, 2003 PR Sup. LEXIS 124 (P.R. 2003).

Even though §§ 3118 et seq. of Title 32 establish a procedure for clai ms made by employees against their employers for services rendered, if the defendant is a corporation, the one who is summonsed should have a certain level of capacity to represent it. Ivonne Lucero Cuevas v. San Juan Star Co., 159 D.P.R. 494, 2003 PR Sup. LEXIS 82 (P.R. 2003).

A judge violates Judicial Ethics Rules by behaving inflexibly and abuses her authority by finding the accused in contempt, showing her lack of a judicial temperament. In re Nilda I. Cruz Aponte, 159 D.P.R. 170, 2003 PR Sup. LEXIS 47 (P.R. 2003).

An obligation exists to provide an interpreter for an accused who does not understand Spanish and therefore cannot understand the proceedings of a preliminary hearing. Puerto Rico v. John Kelvin Branch, 154 D.P.R. 575, 2001 PR Sup. LEXIS 101 (P.R. 2001).

The accused has the burden to demonstrate to the court that he does not understand Spanish and therefore needs an interpreter. Puerto Rico v. John Kelvin Branch, 154 D.P.R. 575, 2001 PR Sup. LEXIS 101 (P.R. 2001).

Every person accused of an offense has a right to have his guilt proved beyond a reasonable doubt in a public, fair and impartial trial. Puerto Rico v. Jose L. Torres Rivera., 129 D.P.R. 331, 1991 PR Sup. LEXIS 234 (P.R. 1991).

Actions of parent company which refused to allow workers of subsidiary to receive adequate counsel from representatives of Department of Labor and Human Resources before being discharged did not constitute a cause of action for which relief can be granted. Alvarado Morales v. Digital Equipment Corp., 669 F. Supp. 1173, 1987 U.S. Dist. LEXIS 8825 (D.P.R. 1987),

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

aff'd, 843 F.2d 613, 1988 U.S. App. LEXIS 4367 (1st Cir. P.R. 1988).

Restriction of fundamental right to privacy is justified only when State can demonstrate an overriding interest such as the existence of special circumstances presenting genuine threat to national security or grave danger to social order. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

After a declaration of guilt convict cannot invoke constitutional guarantees pertaining to prior phase of procedure. Ramon A. Martinez Torres v. Santos Amaro Perez., 116 D.P.R. 717, 1985 PR Sup. LEXIS 132 (P.R. 1985).

Suspended sentence revocation, see annotations under Rule 197 of Criminal Procedure, App. II of Title 34.

Constitutional clause of due process of law bars effects of court judgment or order on person who was not party in case. Bolivar Perez Rios v. Hull Dobbs 65th Infantry Ford, Inc., 107 D.P.R. 834, 1978 PR Sup. LEXIS 594 (P.R. 1978).

Motu proprio order of District Attorney before defense or court raised any point about insanity of defendant to have defendant examined by Forensi c Psychiatric Committee of government Psychiatric Hospital on day following alleged criminal offenses, where said defendant had clinical record, in order to establish mental incapacity at time of offense he was going to be charged with, did not violate Fifth Amendment to U.S. Constitution or any provisions of Puerto Rico's. El Pueblo de Puerto Rico v. Francisco Castillo Torres., 107 D.P.R. 551, 1978 PR Sup. LEXIS 569 (P.R. 1978).

Defendant is entitled to free selection of defense attorney pursuant to Constitution. El Pueblo de Puerto Rico v. Jesus L. Durecort., 106 D.P.R. 684, 1978 PR Sup. LEXIS 208 (P.R. 1978).

Court cannot relieve defense attorney who accepted representation and was retained by defendant through expediency of appointment of public defender particularly when defendant is not destitute. El Pueblo de Puerto Rico v. Jesus L. Durecort., 106 D.P.R. 684, 1978 PR Sup. LEXIS 208 (P.R. 1978).

Where Supreme Court vacated decision affirming conviction of defendant appellant and, after review of case, reaffirmed sentence of trial court condemning defendant, rights of due process of law of appellant were not violated. El Pueblo de Puerto Rico v. Rafael Santiago., 106 D.P.R. 1, 1977 PR Sup. LEXIS 2496 (P.R. 1977).

Petitioner was denied due process of law because she was convicted in a trial at which the judge exercised the functions of both judge and prosecutor, and her right to trial de novo does not remedy the pre-existent lack of due process. Iglesias-Delgado v. Rivera-Rivera, 430 F. Supp. 309, 1976 U.S. Dist. LEXIS 13995 (D.P.R. 1976).

The sole fact of presiding the trial against other principals of the same offense charged upon appellant does not constitute a violation per se of the due process of law. El Pueblo de Puerto Rico v. Radames Martes Olan, 103 D.P.R. 351, 1975 PR Sup. LEXIS 1593 (P.R. 1975).

For the purpose of concluding that the trial judge's prior relation with the facts of the case, since he had previously tried other codefendants for the same offense, deprived appellant of his rights to enjoy the presumption of innocence and the due process of law, it is necessary that appellant point out to the court which the incidents were in the previous trial which caused the probable prejudice against him, as well as the specific degree of the connection of the judge with the evidence requiring the latter's nonintervention. El Pueblo de P uerto Rico v. Radames Martes Olan, 103 D.P.R. 351, 1975 PR Sup. LEXIS 1593 (P.R. 1975).

After examining the totality of the circumstances surrounding the identification procedure of the defendant in the case at bar where a lineup identifi cation was not carried out the court concludes that said circumstances are o f such a character as to give certainty to the identification of the defendant carried out by the victim, said procedure not constituting a violation of the due process of law to which the defendant is entitled. El Pueblo de Puerto Rico v. Juan Rivera Vazquez., 102 D.P.R. 758, 1974 PR Sup. LEXIS 345 (P.R. 1974).

The defenselessness of a party in a judicial procedure because of the unjustified absence of his attorney while a hearing is held is the extreme denial of the due process of law. In re Victor A. Coll., 101 D.P.R. 799, 1973 PR Sup. LEXIS 257 (P.R. 1973).

Where a complaint contains specific allegations as to the sections of the statute attacked, the constitutional grounds for each attack and why said sections are invalid under the Constitution and there exists a difficult question of constitutional due process, a three-judge court has jurisdiction of suit challenging the constitutionality of the Puerto Rico Private Detectives Act, §§ 285 et seq. of Title 25. Wackenhut Corp. v. Calero, 362 F. Supp. 715, 1973 U.S. Dist. LEXIS 14100 (D.P.R. 1973).

The fact that the verdict of a jury finding a defendant guilty of grand larceny is not unanimous but by a majority of not less than nine votes does not constitute a violation of the due process of law guaranteed by the Constitution of the United States and by the Constitution of the Commonwealth of Puerto Rico. El Pueblo de Puerto Rico v. Jaime Batista Maldonado, 100 P.R.R. 935, 1972 PR Sup. LEXIS 187 (P.R. 1972).

An instruction to the jury to the effect that the mere possession by defendant of stolen objects is not by itself sufficient to support a conviction for the offense of larceny, but that in the absence of direct evidence as to the act of illegal taking, the possession by the defendant of the recently stolen property together with other circumstances justify that the question be submitted to the jury for the determination with regard to said defendant's criminal liabili ty, is valid and does not constitute a violation of the due process of law. El Pueblo de Puerto Rico v. Jaime Batista Maldonado, 100 P.R.R. 935, 1972 PR Sup. LEXIS 187 (P.R. 1972).

A violation of the due process of law in the conduct of a confrontation for the identification by witnesses of a suspect of having committed a crime depends on the totality of the circumstances which surrounded the identificat ion procedure. El Pueblo de Puerto Rico v. Alfredo Montanez Ramos, 100 P.R.R. 910, 1972 PR Sup. LEXIS 185 (P.R. 1972); El Pueblo de Puerto Rico v. Luis Raul Morales Romero, 100 P.R.R. 434, 1972 PR Sup. LEXIS 119 (P.R. 1972); El Pueblo de Puerto Rico v. Ignacio Gomez Incera., 97 P.R.R. 243, 1969 PR Sup. LEXIS 140 (P.R. 1969).

The contention that a specific statute deprives a party of his property without due process of law having been raised in a suit, the court shall not enter into consideration of the wisdom of the legislative measure, but rather it will uphold its constitutionality unless it lacks a lawful public purpose, or that it is clearly arbitrary or that it bears no reasonable relation to the public purpose contemplated. Cornelio A. Morales v. Luis Lizarribar y Employers Commercial Union Insurance Company, 100 P.R.R. 717, 1972 PR Sup. LEXIS 156 (P.R. 1972).

All the circumstances in the case at bar which surrounded the identification procedure of the suspect who afterwards was accused and convicted having been examined, the Court concludes that said circumstances are of such a nature that they give certainty to the identification performed, and excludes any possibility to the effect that the procedure used is tainted in any manner whatsoever that it may constitute a violation of the due process of law. El Pueblo de Puerto Rico v. Luis Raul Morales Romero, 100 P.R.R. 434, 1972 PR Sup. LEXIS 119 (P.R. 1972).

The right to the due process of law of two defendants accused of the same offenses on separate informations is not violated in the joint trial held against both for having admitted in evidence an extrajudicial statement of defendant 'B' and an extrajudicial confession of defendant 'A', when the counsel for defendant 'A', defendant who was bound by the extrajudicial statement of defendant 'B', had the opportunity to cross-examine 'B' when he testified but failed to do so, and, even though the trial judge committed error in not permitting the counsel for 'B' to cross-examine defendant 'A' when he testified whose extrajudicial confession affected adversely defendant 'B' only, insofar as it placed him in the scene of the crime and walking in his company said error was not prejudicial, since 'B' himself testified at the trial that he was walking in the company of 'A' and went with the latter to the scene of the crime. El Pueblo de Puerto Rico v. Roberto Mendez Nadal., 97 P.R.R. 470, 1969 PR Sup. LEXIS 170 (P.R. 1969).

The suit by a landowner alleging that actions by defendant officials of the Commonwealth in directing him to reserve two parcels of land for future condemnation by the Commonwealth with no action having been taken with respect to said parcels for more than three years constitutes the taking of property without just compensation and a deprivation of his constitutional and civil rights, is a sufficient cause of action under the Civil Rights Act. Inmobiliaria Borinquen, Inc. v. Garcia Santiago, 295 F. Supp. 203, 1969 U.S. Dist. LEXIS 12573 (D.P.R. 1969).

The exhaustion of remedies in the state or Commonwealth jurisdiction is not a prerequisite to the invocation of the proper federal jurisdiction in civil rights cases. Inmobiliaria Borinquen, Inc. v. Garcia Santiago, 295 F. Supp. 203, 1969 U.S. Dist. LEXIS 12573 (D.P.R. 1969).

The suit by a landowner under the Civil Rights Act wherein he alleges that actions by defendant officials of the

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Commonwealth in directing him to reserve parcels for future condemnation by the Commonwealth deprived him of his civil and constitutional rights, did not constitute the alleged interference with lawful government functions of Commonwealth, and the invocation by such officials of the sovereign immunity of the Commonwealth as a defense to the action was subject to federal review. Inmobiliaria Borinquen, Inc. v. Garcia Santiago, 295 F. Supp. 203, 1969 U.S. Dist. LEXIS 12573 (D.P.R. 1969).

A psychiatric examination of a suspect made during the investigatory stage of the offense to which examination he submitted voluntarily for the pu rpose of protecting the defendant against an improper prosecution and of protecting The People by precluding the criminal action from becoming futile does not violate any constitutional right of the defendant. El Pueblo de Puerto Rico v. Honorio Adorno Lorenzana., 93 P.R.R. 768, 1966 PR Sup. LEXIS 158 (P.R. 1966).

The means provided by the Land Law, §§ 1 et seq. of Title 28, to confi scate without compensation from a third party the rights of an usufructuary of the program of Title V of said Act, 28 L.P.R.A. §§ 551 et seq., unlawfully ac quired by said third party person who is not a bona fide usufructuary accept ed by the Social Programs Administration of the Department of Agriculture are reasonable and do not establish a confiscation of property without the due process of law. El Estado Libre Asociado de Puerto Rico v. Ramon Luis Marquez y Tomas Parrilla., 93 P.R.R. 382, 1966 PR Sup. LEXIS 80 (P.R. 1966).

The Act regulating Claims of Workmen for Services Rendered of 1961 § § 3118 et seq. of Title 32, establishing a special proceeding of a summary nat ure for the claiming of wages for services rendered grants the employer the basic defense opportunities embodied in the due process of law, namely: (a) notice of complaint, (b) summons, (c) opportunity to answer, (d) public hearing, (e) opportunity to cross-examine the witnesses of the other party and opportunity to introduce the witnesses who are to sustain the allegations in the employer's favor, and (f) an opportunity to review by a court of higher instance the original judgment entered against him. Landrum Mills Corporation v. Tribunal Superior de Puerto Rico, Sala de San Juan., 92 P.R.R. 670, 1965 PR Sup. LEXIS 243 (P.R. 1965).

The judicial procedure followed in a criminal trial before the District Court of Puerto Rico established by §§ 28 and 29 of the Code of Criminal P rocedure, former §§ 58 and 59 of Title 34 does not violate the due proce ss of law guaranteed by the Fifth Amendment of the United States Constitution and by this section, or the separation of powers set forth in § 2 of art. I the rein, or the right to an impartial and fair trial to which every defendant is entitled. El Pueblo de Puerto Rico v. Cayetano Barranco y Juan Bones Gonzalez., 92 P.R.R. 543, 1965 PR Sup. LEXIS 231 (P.R. 1965).

It does not constitute reversible error of a court to refuse to require the Government to disclose the identity of a participant-informer when such refusal did not actually prejudice defendant, depriving him of a fair trial. El Pueblo de Puerto Rico v. Jose Luis Lopez Rivera., 91 P.R.R. 672, 1965 PR Sup. LEXIS 114 (P.R. 1965).

Where the right to a hearing or judicial review of the determination of nonperformance of the conditions of a pardon is recognized, due process of law is considered fulfilled if the pardonee as in this case is given an opportu nity to be heard through a petition for habeas corpus. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964).

In view of the terms and conditions under which the pardon was conceived and accepted in this case, and considering the nature of the executive grace herein exercised, it is improper to allege that there is a lack of due process of law in the mechanism of that document in the event of revocation on the ground of nonperformance of the condition imposed therein. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964).

An employee removed from his position in the Urban Renewal and Housing Corporation of Puerto Rico cannot complain of the lack of due process of law in his removal, if at some time during the subsequent judicial review, said employee had an opportunity to be heard and to present the evidence and the argument corresponding to the justice of his case, especially where the fact that the opportunity to be heard was not had at any time prior to the judicial review by reason of the employee's own inaction in failing to resort to the Board of Appeals of the Corporation as soon as he received the letter of removal. Angel L. Santiago Agricourt v. Corporacion de Renovacion Urbana y Vivienda de Puerto Rico., 90 P.R.R. 816, 1964 PR Sup. LEXIS 328 (P.R. 1964).

The due process of law to which every accused is entitled is not violated by the fact that the trial judge, at each adjournment, instructs the jury not to form any opinion on his innocence or guilt until the cause is finally submitted to them for consideration. El Pueblo de Puerto Rico v. Roberto Miranda Matta., 88 P.R.R. 805, 1963 PR Sup. LEXIS 393 (P.R. 1963).

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

The fact that the verdict of the jury pronouncing the defendant guilty of murder in the second degree is not by unanimity but for a majority of more than nine (9) votes does not constitute violation of the due process of law guaranteed by the Constitution of the United States and the Constitution of the Commonwealth of Puerto Rico. El Pueblo de Puerto Rico v. Modesto Cotto Torres., 88 P.R.R. 22, 1963 PR Sup. LEXIS 306 (P.R. 1963); Fournier v. Gonzalez., 80 P.R.R. 254, 1958 PR Sup. LEXIS 103 (P.R. 1958), aff'd, Fournier v. Gonzalez, 269 F.2d 26, 1959 U.S. App. LEXIS 3465 (1st Cir. P.R. 1959).

A defendant has no absolute constitutional right to enjoy legal representation or assistance at the investigatory stage of the offense. El Pueblo de Puerto Rico v. Jose Barreto Perez, 85 P.R.R. 723, 1962 PR Sup. LEXIS 294 (P.R. 1962).

The due process of law is not violated because the judge who has confined himself to examining, rather impersonally, an affidavit in order to determine whether there was probable cause to issue a search warrant and subsequently another affidavit in order to determine whether there was probable cause for the arrest of the defendant, presides thereafter the trial brought against the defendant in question. Puerto Rico v. Quiles Albino., 83 P.R.R. 61, 1961 PR Sup. LEXIS 385 (P.R. 1961).

In view of the attendant circumstances the action of the prosecuting attorney in not offering in evidence at the trial by jury the alleged confession of the defendant did not deprive the latter of his constitutional right to the due process of law. El Pueblo de Puerto Rico v. Alejandro Dumas Marquez., 82 P.R.R. 402, 1961 PR Sup. LEXIS 346 (P.R. 1961).

The death of the stenographer who reported the trial, separately considered, does not constitute sufficient constitutional ground to grant a new trial, if there exists an alternate method of review such as the statement of the case provided by the Code of Criminal Procedure. When this alternate method cannot be used, for which defendant cannot be held responsible, the courts, as a constitutional matter and not as a statutory matter, should grant a new trial and permit the review of the case on the merits. (People v. Reyes, 1954, 76 P.R.R. 277, distinguished and clarified.) Manuel Reyes Oyola v. Gerardo Delgado., 81 P.R.R. 906, 1960 PR Sup. LEXIS 70 (P.R. 1960).

The right to appeal, once it is granted, whether under the Constitution or under the statute, is a part of the due process of law. Manuel Reyes Oyola v. Gerardo Delgado., 81 P.R.R. 906, 1960 PR Sup. LEXIS 70 (P.R. 1960).

When the death of a stenographer who reported the trial and the impossibility of preparing a statement of the case for the purpose of an appeal defeat defendant's right to appeal, it is tantamount to a denial of the due process of l aw guaranteed by our Constitution. Manuel Reyes Oyola v. Gerardo Delgado., 81 P.R.R. 906, 1960 PR Sup. LEXIS 70 (P.R. 1960).

Representation by counsel prior to trial is not an absolute requirement of due process of law; and there is no inflexible rule that regardless of the particular circumstances involved an accused in either state or federal prosecutions is denied due process of law by the refusal of his request to confer with counsel during police questioning. Rivera Escute v. Delgado, 282 F.2d 335, 1960 U.S. App. LEXIS 3693 (1st Cir. P.R. 1960), cert. denied, 365 U.S. 883, 81 S. Ct. 1033, 6 L. Ed. 2d 193, 1961 U.S. LEXIS 1344 (U.S. 1961).

Refusal by the prosecuting authorities of a request by one accused of crime to retain counsel violates due process not only when the accused is deprived of counsel at the trial on the merits but also when he is deprived of counsel for any part of the pre-trial proceedings, provided that he is so prejudiced thereby as to infect his subsequent trial with an absence of 'that fundamental fairn ess essential to the very concept of justice'; and thus whether lack of counse l during pre-trial proceedings constitutes denial of due process of law must necessarily depend upon the circumstances of each particular case. Rivera Escute v. Delgado, 282 F.2d 335, 1960 U.S. App. LEXIS 3693 (1st Cir. P.R. 1960), cert. denied, 365 U.S. 883, 81 S. Ct. 1033, 6 L. Ed. 2d 193, 1961 U.S. LEXIS 1344 (U.S. 1961).

The failure to arraign the defendant or to give him or his attorney an opportunity to make proper plea before trial violates his constitutional right not to be deprived of his liberty without the due process of law. Ramon Valentin Cruz v. Emilio Torres Marrero., 80 P.R.R. 450, 1958 PR Sup. LEXIS 157 (P.R. 1958).

The fact that the jury verdict finding the defendant guilty of first-degree murder was not rendered by a unanimous vote but by a vote of more than nine, does not constitute a violation of the due process of law guaranteed by the Constitution of the United States and by the Constitution of the Commonwealth of Puerto Rico. Fournier v. Gonzalez., 80 P.R.R. 254, 1958 PR Sup. LEXIS 103 (P.R. 1958), aff'd, Fournier v. Gonzalez, 269 F.2d 26, 1959 U.S. App. LEXIS 3465 (1st Cir. P.R. 1959).

Due process of law requirements are met if hearings are granted by administrative or judicial act at any time before

government action becomes final. Nicolas Cardona y La Asociacion de Productores de Azucar de Puerto Rico v. Comision Industrial de Puerto Rico, 79 P.R.R. 633, 1956 PR Sup. LEXIS 212 (P.R. 1956).

### 3a. Boards of examiners.

See annotations under § 16 of this Article.

### 3b. Procedure for abritrage.

The violation of due process of law is one of the reasons for voiding an arbitration award. Junta de Relaciones del Trabajo de P.R. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 1987 PR Sup. LEXIS 139 (P.R. 1987).

The requirements of due process in an arbitration proceeding are met with the notification of the charges, a hearing and opportunity to submit evidence. Junta de Relaciones del Trabajo de P.R. v. Hato Rey Psychiatric Hosp., 119 D.P.R. 62, 1987 PR Sup. LEXIS 139 (P.R. 1987).

### 4. Taxation.

Equal protection of laws in tax area constitutes a pragmatic equation based on reasonability principle. Fact that some people in specific situations may be affected by a classification does not constitute per se grounds for unconstitutionality where predominant public interest is served. Concepcion Melendez vda. de Miranda y Otro v. Secretario de Hacienda., 114 D.P.R. 11, 1983 PR Sup. LEXIS 58 (P.R. 1983).

Tax statute fulfills due process of law whenever sufficient contacts exist between state powers to levy taxes and taxable activities or events, which can be verified by merely determining whether state has granted or offered benefits, protection or tax breaks. C. H. Vehicle Leasing Corp. v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 94, 1978 PR Sup. LEXIS 357 (P.R. 1978).

Pursuant to due process of laws clause, arbitrary tax statute which results in confiscatory situations or gross and apparent inequity and injustice is unconstitutional. C. H. Vehicle Leasing Corp. v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 94, 1978 PR Sup. LEXIS 357 (P.R. 1978).

In determining whether tax violates constitutional rights, neither its form nor its definition is important, rather its practical application and effect as a matter of fact. C. H. Vehicle Leasing Corp. v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 94, 1978 PR Sup. LEXIS 357 (P.R. 1978).

The state of the domicile and residence of a person has no other constitutional limitations under the Due Process Clause, than its estoppel to tax a resident and domiciled for the tangible property, whether personal or real, owned and located permanently outside of its territorial frontiers or, when the tax is, 'in substance and effect, the exertion of a different and forbidden power, as f or example, the taxation of a privilege protected by the First Amendment'. Car los F. Maristany v. Secretario de Hacienda de Puerto Rico., 94 P.R.R. 277, 1967 PR Sup. LEXIS 221 (P.R. 1967).

From the point of view of the constitutional protection of the due process it cannot be said that the Commonwealth of Puerto Rico does not afford to taxpayers herein, operating in interstate commerce, anything in exchange for what it takes, pursuant to the provisions of the License Tax Act of Puerto Rico of 1914. R.C.A. Communications, Inc. v. Gobierno de la Capital., 91 P.R.R. 404, 1964 PR Sup. LEXIS 374 (P.R. 1964), overruled, Puerto Rico v. Northwestern Selecta, Inc., 185 D.P.R. 40, 2012 PR Sup. LEXIS 42 (P.R. 2012).

The due process of law merely requires that there be sufficient nexus between the state's power to impose the tax and the activities subject to the tax, which requirement is met by merely determining whether the state has offered or granted benefit, protection or advantages to the activities or business yielding the profits. Libby, McNeill & Libby West Indies Co. v. Secretario de Hacienda de Puerto Rico., 82 P.R.R. 377, 1961 PR Sup. LEXIS 344 (P.R. 1961), aff'd, Libby, McNeill & Libby, West Indies Co. v. Secretary of Treasury, 299 F.2d 572, 1962 U.S. App. LEXIS 5853 (1st Cir. P.R. 1962).

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

## 5. Equal protection Classifications.

Upon applying a minimum rationality standard, § 533 of Title 31 is consti tutional as it has a legitimate purpose. ; .

The Constitution of the Commonwealth not only guarantees equal protection of the law but, unlike the federal Constitution, expressly prohibits discrimination according to gender. Puerto Rico v. Reinaldo Rivera Morales, 133 D.P.R. 444, 1993 PR Sup. LEXIS 236 (P.R. 1993).

Actions recognized by law to attack legitimate paternity or recognition are not comparable to actions by child for recognition in terms of equal protection analysis because parents and children are not similarly situated in the legal framework. Jose Manuel Calo Morales v. Maritza Cartagena Calo., 129 D.P.R. 102, 1991 PR Sup. LEXIS 223 (P.R. 1991).

The classification established by § 249d of Title 18 does not interfere with or prohibit the right to be a candidate for elective office. Hector Berberena v. Ileana Echegoyen, 128 D.P.R. 864, 1991 PR Sup. LEXIS 250 (P.R. 1991).

In determining the constitutional validity of a statute under the equal protection and due process clauses, court should not consider the wisdom or efficiency of the legislative measure. Hector Berberena v. Ileana Echegoyen, 128 D.P.R. 864, 1991 PR Sup. LEXIS 250 (P.R. 1991).

The clause which guarantees equal protection of the laws does not require equal treatment of all citizens; rather, it prohibits unjustified unequal treatment. Magdalena Mercado Vega v. Universidad de P.R., 128 D.P.R. 273, 1991 PR Sup. LEXIS 186 (P.R. 1991).

When a legislative classification affects fundamental rights or is suspicious it is subject to strict judicial scrutiny and in these situations the state should prove existence of pressing public need to justify classification and, moreover, that classification should advance the public purpose. Minerva De Paz Lisk v. Awilda Aponte Roque, 124 D.P.R. 472, 1989 PR Sup. LEXIS 143 (P.R. 1989).

Citizenship requirement for candidates for teacher's certificate establi shed by § 264 of Title 18 is unconstitutional. Minerva De Paz Lisk v. Awilda Aponte Roque, 124 D.P.R. 472, 1989 PR Sup. LEXIS 143 (P.R. 1989).

Classifications based on citizenship are inherently suspect. Minerva De Paz Lisk v. Awilda Aponte Roque, 124 D.P.R. 472, 1989 PR Sup. LEXIS 143 (P.R. 1989).

The Equal Protection Clause does not require equal treatment for all citizens, but prohibits an unequal and unjustified treatment. Modesto Salas v. Moca. Orlando Diaz Nieves v.Juan De Jesus., 119 D.P.R. 625, 1987 PR Sup. LEXIS 184 (P.R. 1987).

Where statute violates equal protection by reason of exclusion, two remedies exist: Either to declare it null and void, thus denying its benefits to all those benefited thereby or to extend said benefits to include those excluded thereunder. Partido de Renovacion Puertorriquena v. Estado Libre Asociado de Puerto Rico., 115 D.P.R. 631, 1984 PR Sup. LEXIS 146 (P.R. 1984).

Inequality based on some public interest and not on prejudice does not violate the Constitution. Concepcion Melendez vda. de Miranda y Otro v. Secretario de Hacienda., 114 D.P.R. 11, 1983 PR Sup. LEXIS 58 (P.R. 1983).

Existence of classification in statute does not mean per se that constitutional guarantee of equal protection of the law has been violated. Partido Socialista Puertorriqueno v. Gobernador Carlos Romero Barcelo., 110 D.P.R. 248, 1980 PR Sup. LEXIS 147 (P.R. 1980).

Reasonability of classification in statute, the constitutionality of which is challenged, should be determined by the court. Partido Socialista Puertorriqueno v. Gobernador Carlos Romero Barcelo., 110 D.P.R. 248, 1980 PR Sup. LEXIS 147 (P.R. 1980).

Clause of equal protection of laws does not guarantee individual advantages, and least of all, corruption and discrimination on part of employee. Carmen N. Hermina Gonzalez v. Luis Silva Recio., 107 D.P.R. 667, 1978 PR Sup. LEXIS 575 (P.R.

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

1978).

Constitutional clause of equal protection of laws does not demand that State choose between attacking all aspects of problem or desisting altogether. Legislature may select, without violating said clause, phase of specific field where legislative mind finds more pressing problems and apply remedy there and not on the rest. Carmen N. Hermina Gonzalez v. Luis Silva Recio., 107 D.P.R. 667, 1978 PR Sup. LEXIS 575 (P.R. 1978).

Tracing lines of differentiation in order to establish statutory classifications with reasonable base and corresponding to tolerant and estimative criteria is unavoidable function of legislature. Carmen N. Hermina Gonzalez v. Luis Silva Recio., 107 D.P.R. 667, 1978 PR Sup. LEXIS 575 (P.R. 1978).

Perfection in creating classifications by Legislative Assembly in statute is neither possible nor necessary, and said classifications are presumed valid. Carmen N. Hermina Gonzalez v. Luis Silva Recio., 107 D.P.R. 667, 1978 PR Sup. LEXIS 575 (P.R. 1978).

Foreign corporation statutorily authorized to do business in Puerto Rico is entitled as much as any individual person to equal protection of laws pursuant to this section; therefore, constitutional provision establishing that taxes would be levied uniformly in Puerto Rico is also applicable to it. International General Electric Puerto Rico, Inc. v. Secretario de Hacienda., 107 D.P.R. 467, 1978 PR Sup. LEXIS 561 (P.R. 1978).

Correction of past error by administrative agency did not violate equal protection of laws regarding different treatment of parties in similar situation. Julio del Rey v. Junta de Apelaciones Sobre Construcciones y Lotificaciones., 107 D.P.R. 348, 1978 PR Sup. LEXIS 625 (P.R. 1978).

Equal protection of laws does not imply equal protection of violation of laws. Julio del Rey v. Junta de Apelaciones Sobre Construcciones y Lotificaciones., 107 D.P.R. 348, 1978 PR Sup. LEXIS 625 (P.R. 1978).

Legislature of Puerto Rico has broad discretion to establish great variety of classifications within tax picture, and it suffices that any possible public interest be conceived to justify classification. C. H. Vehicle Leasing Corp. v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 94, 1978 PR Sup. LEXIS 357 (P.R. 1978).

Legislative classification in tax statute not arbitrary and with reasonable grounds did not discriminate due to fact that it did tax one class and exempted another. C. H. Vehicle Leasing Corp. v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 94, 1978 PR Sup. LEXIS 357 (P.R. 1978).

Pursuant to § 3 of Federal Relations Act and this section, legislation exempting concrete blocks manufactured in Puerto Rico from tax and not those manufactured in the United States, as well as other legislation on this matter, would be questionable. 1977 Op. Sec. Jus. No. 20.

Tax exemption for materials and products for construction manufactured in Puerto Rico constituted classification favoring specific group and excluding others; therefore, in order to stand constitutional challenge pursuant to equal protection of laws clause, it should be based on reasonable, not arbitrary, grounds. 1977 Op. Sec. Jus. No. 20.

Neither the constitutional provisions of Puerto Rico in the sense that there shall be no discrimination by reason of race, color, sex, birth, social origin or condition or for religious or political ideas and that no person shall be deprived of equal protection of law nor the statute that imposes liability on contractors for defects in building construction, were related with the statute which permits, with certain exceptions, only citizens of the United States to privately practice as civil engineers, as to make the law of the Commonwealth ambiguous and require the district court to abstain from reaching the merits of the question of whether the exclusiveness of the Puerto Rican statute on licenses for civil engineers in favor of citizens of the United States is constitutional. Examining Bd. of Engineers, Architects & Surveyors v. Flores de Otero, 426 U.S. 572, 96 S. Ct. 2264, 49 L. Ed. 2d 65, 1976 U.S. LEXIS 65 (U.S. 1976).

The rules which govern the constitutional principle of equal protection of the laws do not require equal treatment for all citizens, they prohibit an unjustified unequal treatment. Zachry International of Puerto Rico Inc. v. Tribunal Superior de Puerto Rico., 104 D.P.R. 267, 1975 PR Sup. LEXIS 2404 (P.R. 1975).

The State can make classifications without violating the constitutional equal protection of the laws clause, provided the classification is reasonable and for the purpose of achieving or protecting a legitimate public interest. Zachry International of Puerto Rico Inc. v. Tribunal Superior de Puerto Rico., 104 D.P.R. 267, 1975 PR Sup. LEXIS 2404 (P.R. 1975).

The two tests or legal doctrines set up to analyze 'legislative classifi cation' in order to determine whether or not it violates the constitutional eq ual protection of the laws clause if said classification is reasonable or un reasonable known as 'the traditional analysis' and 'the strict analysi s', are described in the opinion. Zachry International of Puerto Rico Inc. v. Tribunal Superior de Puerto Rico., 104 D.P.R. 267, 1975 PR Sup. LEXIS 2404 (P.R. 1975).

Even when according to the 'traditional analysis doctrine' used to determine whether or not a legislative classification is reasonable and therefore whether or not it violates the constitutional equal protection clause the burden of proof is placed on whoever alleges the unconstitutionality of the legislation in controversy, under 'the strict analysis' doctrine, the State must prove the existence of a compelling State interest which justifies the classification and prove that it necessarily contributes to the attainment of that interest. Zachry International of Puerto Rico Inc. v. Tribunal Superior de Puerto Rico., 104 D.P.R. 267, 1975 PR Sup. LEXIS 2404 (P.R. 1975).

A statute allowing distinctions based on sex does not violate the constitutional equal protection clause as long as said distinctions are not discriminatory. Zachry International of Puerto Rico Inc. v. Tribunal Superior de Puerto Rico., 104 D.P.R. 267, 1975 PR Sup. LEXIS 2404 (P.R. 1975).

For the determination of whether or not a legislative classification contained in a statute violates the constitutional clause of equal protection of the laws because it is reasonable or unreasonable a suspect classification is that in which the characteristics on which the classification is based bear no relation to the ability or aptitude of the persons affected by the classification. Zachry International of Puerto Rico Inc. v. Tribunal Superior de Puerto Rico., 104 D.P.R. 267, 1975 PR Sup. LEXIS 2404 (P.R. 1975).

Allegation that milk regulation which established an automatic formula for the monthly adjustment of prices in relation to change in the prices of animal feed deprived milk consumers of equal protection, fails to state a federal claim which would authorize the federal court to exercise its jurisdiction over the local claims. Rivera v. Chapel, 493 F.2d 1302, 1974 U.S. App. LEXIS 9397 (1st Cir. P.R. 1974).

The court shall decline to enter a decision as to whether public policy of the Commonwealth of Puerto Rico that squatters who established their communities on government lands prior to January 18, 1973, would be allowed to remain on the lands and would receive government assistance and services, while the squatters who invaded the government lands after said date would be charged with criminal violations, subjected to civil proceedings and forced to abandon the lands, is discriminatory and violated the equal protection right, since Court had no evidence before it which would permit it to decide whether the Commonwealth had any compelling interest in promulgating said public policy. Amezquita v. Colon, 378 F. Supp. 737, 1974 U.S. Dist. LEXIS 7512 (D.P.R. 1974), rev'd, 518 F.2d 8, 1975 U.S. App. LEXIS 5616 (1st Cir. P.R. 1975).

A classification in a statute does not violate the constitutional right to the equal protection of the laws when the same is not repugnant to the conscience for being based on illegitimate prejudgments or motivations or for being unfair. The Wackenhut Corporation y Otros v. Hon. Salvador Rodriguez Aponte y Otros, 100 P.R.R. 516, 1972 PR Sup. LEXIS 107 (P.R. 1972).

A statute does not violate the constitutional clause of the equal protection of the laws merely because the classifications contained in the same are imperfect. The Wackenhut Corporation y Otros v. Hon. Salvador Rodriguez Aponte y Otros, 100 P.R.R. 516, 1972 PR Sup. LEXIS 107 (P.R. 1972).

Statutory classifications in which the lines of demarcation are a bit rough will not be set aside by a court as a violation of the constitutional clause of the equal protection of the laws when the court concludes that said legislative determinations are justified by the state of facts. The Wackenhut Corporation y Otros v. Hon. Salvador Rodriguez Aponte y Otros, 100 P.R.R. 516, 1972 PR Sup. LEXIS 107 (P.R. 1972).

All that is required by the constitutional guaranty of the equal protection of the laws is that no difference be established in the application of the laws among persons belonging to the same group; that is, that there be no discrimination favoring some and injuring others. Said guaranty does not provide like treatment for all persons accused of public offenses. El Pueblo de Puerto Rico v. Rafael Velez Velez., 97 P.R.R. 119, 1969 PR Sup. LEXIS 94 (P.R. 1969); El Pueblo de Puerto Rico v. Manuel

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 56 of 272

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Matias Castro., 90 P.R.R. 515, 1964 PR Sup. LEXIS 283 (P.R. 1964).

In the aspect of criminal prosecution, the constitutional guaranty of the equal protection of the laws simply requires that persons charged with the commission of a particular offense be subject to identical procedure in their prosecution. El Pueblo de Puerto Rico v. Manuel Matias Castro., 90 P.R.R. 515, 1964 PR Sup. LEXIS 283 (P.R. 1964).

The Government Employees' Association is bound to respect the constituti onal provision of equal protection of the laws in its relations with its members. An unjustified or unreasonable refusal of the Association to grant the insurance benefit may result in a situation of unequal protection of the law. Berrios Miranda v. Asociacion de Empleados del Gobierno de P.R., 88 P.R.R. 791, 1963 PR Sup. LEXIS 392 (P.R. 1963).

The tax established by § 2 of Act No. 301 of 1945, p. 1146 (§ 342 of Title 27), does not infringe the due process and equal protection of the laws merely because it applies exclusively to the telephone and telegraph companies operating in Puerto Rico and in view of the wide legislative authority to establish reasonable classifications for the assessment of taxes, this classification is neither arbitrary nor oppressive or capricious. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

The legislative discretion to establish reasonable classifications for the assessment of taxes is not reduced because the class described in the Act, as a question of fact, includes only one taxpayer. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

The equal protection of laws clause does not deprive the legislative power of the right to establish classifications in adoption of laws of public order; rather it permits the exercise of ample discretion in that sense, but those classifications, in order to be considered valid, must rest on a reasonable basis as proof of their legality. 1960 Op. Sec. Jus. No. 61.

Equal protection of laws means submission to equal laws, applicable equally to anyone being in the same position. 1960 Op. Sec. Jus. No. 61.

There must be a purposeful discrimination against one person and in favor of another person in like case, with no rational basis for differentiation between the two to make not a denial of equal protection of laws. Marquez v. Aviles, 252 F.2d 715, 1958 U.S. App. LEXIS 3756 (1st Cir. P.R.), cert. denied, 356 U.S. 952, 78 S. Ct. 917, 2 L. Ed. 2d 845, 1958 U.S. LEXIS 1118 (U.S. 1958).

While legislature has broad powers of classification for purposes of taxation, equal protection clause requires that legislative classification be not arbitrary, but based on real substantial difference having reasonable relation to subject of particular legislation. Stagg, Mather & Hough v. Descartes, 244 F.2d 578, 1957 U.S. App. LEXIS 3122 (1st Cir. P.R. 1957).

The Legislative Assembly has full power to classify the objects of legislation or the persons affected by it so as to subject different classes to differing rates of taxation. However, such classification must be reasonably related to the object of the legislation and must be based upon some distinction which can rationally and fairly be made the reason for the difference in taxation. Jose Miranda Rodriguez v. Sol Luis Descartes, Secretario de Hacienda, 77 P.R.R. 159, 1954 PR Sup. LEXIS 349 (P.R. 1954).

Possible differences in the tax burden, not shown to be substantial, or which are based on discrimination not shown to be arbitrary or capricious, do not fall within the constitutional prohibition relative to the equal protection of the laws. Jose Miranda Rodriguez v. Sol Luis Descartes, Secretario de Hacienda, 77 P.R.R. 159, 1954 PR Sup. LEXIS 349 (P.R. 1954).

When the classification of the objects of legislation or the persons thereby affected is not arbitrary and rests on a reasonable basis, there is no discrimination because taxes are imposed on one class and not on another, or because different tax rates are established, or because exemptions are granted to some and not to others. Jose Miranda Rodriguez v. Sol Luis Descartes, Secretario de Hacienda, 77 P.R.R. 159, 1954 PR Sup. LEXIS 349 (P.R. 1954).

### 5a. Suspect classifications.

Classifications affecting the dignity of the individual or the principle of equality before the law are subject to strict scrutiny.

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Jose Manuel Calo Morales v. Maritza Cartagena Calo., 129 D.P.R. 102, 1991 PR Sup. LEXIS 223 (P.R. 1991).

Strict scrutiny is used when the classification affects a fundamental right of the person or establishes a suspect class which is not related to the ability or aptitudes of persons affected by the classification. Hector Berberena v. Ileana Echegoyen, 128 D.P.R. 864, 1991 PR Sup. LEXIS 250 (P.R. 1991).

All classifications tangent with dignity of human being and principle of equality before the law are inherently suspected for the purpose of using strict scrutiny criterion in constitutional analysis of clause of equal protection of laws. Ada Angeles Leon Rosario v. Angel Luis Torres, 109 D.P.R. 804, 1980 PR Sup. LEXIS 118 (P.R. 1980).

Classifications or discriminations for reasons of race, color, sex, birth, origin or social condition, political or religious ideas and nationality are inherently suspected. Ada Angeles Leon Rosario v. Angel Luis Torres, 109 D.P.R. 804, 1980 PR Sup. LEXIS 118 (P.R. 1980).

### 5b. Criteria.

Test to evaluate constitutionality of a law or ordinance that is socioeconomic in nature is rational basis, under which the classification will be found valid unless it is clearly arbitrary and no reasonable nexus can be established between it and a legitimate interest of the state. Modesto Salas v. Moca. Orlando Diaz Nieves v.Juan De Jesus., 119 D.P.R. 625, 1987 PR Sup. LEXIS 184 (P.R. 1987).

In many jurisdictions, constitutional analysis under equal protection clause utilizes three criteria: (1) strict scrutiny or detailed examination; (2) intermediate scrutiny, and (3) traditional minimal scrutiny or rational connection test, three-part classification which has been criticized in other forums. Jose R. Velez Reboyras etc. v. Secretario de Justricia., 115 D.P.R. 533, 1984 PR Sup. LEXIS 136 (P.R. 1984).

Where validity of social or economic legislation is challenged under equal protection clause, courts should use traditional minimum criterion and sustain validity of the law if classification challenged is not arbitrary, and rational connection can be established between it and purposes of statute. Jose R. Velez Reboyras etc. v. Secretario de Justicia., 115 D.P.R. 533, 1984 PR Sup. LEXIS 136 (P.R. 1984).

Under traditional criterion of minimal scrutiny or rational connection test, legislative classification is valid unless it is clearly arbitrary and no rational connection can be established between it and any legitimate interest of the State. Under this criterion it has been resolved that any law is constitutional, as long as set of facts justifying classification can be reasonably conceived, and burden of proof will always be upon whoever alleges the unconstitutionality of legislation in question. Jose R. Velez Reboyras etc. v. Secretario de Justicia., 115 D.P.R. 533, 1984 PR Sup. LEXIS 136 (P.R. 1984).

### 6. Challenge to classification; burden of proof.

It is up to the one who attacks the classification of the objects of legislation or to the persons affected by it to show that in so doing the Legislative Assembly exceeded its powers, and that the classification does not rest on a reasonable basis and that it is essentially arbitrary or capricious, or that it is not reasonably related to the object of the legislation, or that the purpose or aim of that classification is a hostile and oppressive discrimination against him and against other persons who are allegedly in the same position, and not the promotion of a permissible public aim. Jose Miranda Rodriguez v. Sol Luis Descartes, Secretario de Hacienda, 77 P.R.R. 159, 1954 PR Sup. LEXIS 349 (P.R. 1954).

### 7. Eminent domain.

See annotations under § 9, art. II of the Constitution.

### 8. Minors.

The Adoption Act is valid in view of the state's primary interest in eas ing adoption procedures and the methods provided by

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

law, by which the presumptive heirs of a deceased plaintiff are granted the right to contest established presumptions. Zapata et al. v. Zapata et al., 156 D.P.R. 278 (2002).

The constitutional guarantees applicable to criminal prosecutions are applicable to minors in the cases in which they are charged with faults which if committed by adults would constitute public offenses. R.A.M. v. Tribunal Superior de Puerto Rico., 102 D.P.R. 270, 1974 PR Sup. LEXIS 248 (P.R. 1974).

In what respect the basic constitutional guarantees, as of May 15, 1967 date on which the case In-the-Matter of Gault, 387 U.S. 1, was decided the re is no difference in the treatment of a defendant when he is a minor and when he is an adult. El Pueblo de Puerto Rico v. Israel Figueroa Gonzalez, 95 P.R.R. 96, 1967 PR Sup. LEXIS 280 (P.R. 1967).

The constitutional guarantees which a child may invoke in these proceedings before the juvenile court considering that they are not criminal cases are determined upon the requirements of due process and fair treatment to the minor and not upon the direct application of the different constitutional clauses which guarantee such rights to the citizen in ordinary criminal proceedings. Commonwealth in interest of R.M.R. Commonwealth in interest of R.M.R., 83 P.R.R. 235 (1961).

### 9. Forfeitures and seizures.

Compliance with the due process of law upon prohibiting that a person be deprived of his property by an ex parte action does not require a prelimi nary hearing or one prior to the seizure, if said hearing is provided at a subsequent stage and before a final determination is made. Ricardo Dominguez Talavera v. Tribunal Superior de Puerto Rico, Sala de San Juan., 102 D.P.R. 423, 1974 PR Sup. LEXIS 283 (P.R. 1974).

Statute of Puerto Rico under which leased pleasure yacht was seized in forfeiture proceedings without prior notice to its lessor or lessee and without prior hearing after authorities had discovered marijuana aboard the yacht, does not deny due process inasmuch as the seizure served the purpose of allowing Puerto Rico to assert its in rem jurisdiction over the property in order to carry on the forfeiture proceeding, notice prior to the seizure might have frustrated the purpose of the statute, and seizure was not initiated by self-interested private parties. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S. Ct. 2080, 40 L. Ed. 2d 452, 1974 U.S. LEXIS 140 (U.S. 1974).

Statute of Puerto Rico under which the leased pleasure yacht was forfeited after the authorities found marijuana aboard, is not unconstitutional with respect to its applicability to property interest of innocent lessor of the yacht, since the Puerto Rican forfeiture statutes further the punitive and deterrent purposes that have been found sufficient to uphold, against constitutional challenge, the application of other forfeiture statutes to the property of innocents. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 94 S. Ct. 2080, 40 L. Ed. 2d 452, 1974 U.S. LEXIS 140 (U.S. 1974).

Forfeiture is the means by which the State deprives the owner of his property without compensation by the due process of law of being notified and heard. El Pueblo de Puerto Rico v. Miguel Gonzalez Cortes, 95 P.R.R. 161, 1967 PR Sup. LEXIS 289 (P.R. 1967).

### 10. Fundamental rights.

The right to be a candidate for electoral office is a fundamental right. Hector Berberena v. Ileana Echegoyen, 128 D.P.R. 864, 1991 PR Sup. LEXIS 250 (P.R. 1991).

Motu proprio order of District Attorney before defense or court raised any point about insanity of defendant to have defendant examined by Forensi c Psychiatric Committee of government Psychiatric Hospital on day following alleged criminal offenses, where said defendant had clinical record, in order to establish mental incapacity at time of offense he was going to be charged with, did not violate Fifth Amendment to U.S. Constitution or any provisions of Puerto Rico's. People v. Castillo Torres, 107 D.P.R. 551 (1978).

A court shall join as party any person who may have a joint interest in the question in issue, particularly when said party can be deprived of his liberty or property without due process of law. Estrella Carrero Suarez v. Sergio Sanchez Lopez, 103 D.P.R. 77, 1974 PR Sup. LEXIS 439 (P.R. 1974).

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

The essence of the due process of law is that nobody be deprived of his property without being given an opportunity to be heard. Estrella Carrero Suarez v. Sergio Sanchez Lopez, 103 D.P.R. 77, 1974 PR Sup. LEXIS 439 (P.R. 1974).

The granting of a hearing, after a timely and adequate notice, right to be heard being confronted with the witnesses for the prosecution, and to present evidence and arguments in his defense, are conditions required by the constitutional right to the due process of law. Epifanio Ortiz Cruz v. Junta Hipica de Puerto Rico., 101 D.P.R. 791, 1973 PR Sup. LEXIS 254 (P.R. 1973).

Man's ambition to earn his livelihood in one of the occupations offered by his country is a right constitutionally protected by the clauses of the due process of law and equal protection of the laws. Epifanio Ortiz Cruz v. Junta Hipica de Puerto Rico., 101 D.P.R. 791, 1973 PR Sup. LEXIS 254 (P.R. 1973).

The 'liberty' mentioned in § 7 of art. II of the Constitution of Pu erto Rico compromises, among other things, freedom of speech and of the press. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

Our Constitution recognizes as one of the fundamental rights of man the enjoyment of property and the right of every person to the protection of the law against abusive attacks on his private and family life. Isidoro Infante v. Bob Leith, 85 P.R.R. 24, 1962 PR Sup. LEXIS 180 (P.R. 1962).

In our legislation animals are considered as objects of law, susceptible of forming part of real and contractual relations; they constitute part of the private patrimony of a citizen and the right of enjoyment considered a fundamental right of man is inherent therein. Isidoro Infante v. Bob Leith, 85 P.R.R. 24, 1962 PR Sup. LEXIS 180 (P.R. 1962).

### 11. Enjoyment of property.

The enjoyment of the property right involves the enjoyment of its economic worth. Eroilda Colon Velez v. Guadalupe Lebron., 97 P.R.R. 149, 1969 PR Sup. LEXIS 125 (P.R. 1969).

The Legislature may establish limitations on the right of ownership for the benefit of the general welfare. El Estado Libre Asociado de Puerto Rico v. Ramon Luis Marquez y Tomas Parrilla., 93 P.R.R. 382, 1966 PR Sup. LEXIS 80 (P.R. 1966).

The right of owners of land plots to lease them for the installation of licit amusement devices is guaranteed by the Constitution of the Commonwealth of Puerto Rico, which recognizes as a fundamental right the right to the enjoyment of property. 1956 Op. Sec. Jus. No. 23.

The Municipality of Bayamon may not limit the rights of owners of plots of land to lease them for the installation of licit amusement devices on the grounds that 'it could harm the interests of the person to whom the leasing of pub lic places is granted'. 1956 Op. Sec. Jus. No. 23.

### 12. Construction.

There is no incompatibility whatsoever between the provisions of §§ 2 and 7 of art. II of the Constitution of Puerto Rico, on the one hand, and § 7 of art. III of the said Constitution, on the other hand. Said provisions complement each other. Jaime B. Fuster v. Walter Buso y otros., 102 D.P.R. 327, 1974 PR Sup. LEXIS 255 (P.R. 1974).

### 13. Homestead.

The constitutional basis of the institution of homestead in this jurisdiction is this section. Ramon Aviles Vega v. Ricardo Torres Davila., 97 P.R.R. 140, 1969 PR Sup. LEXIS 124 (P.R. 1969).

### 14. Contractual obligations.

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Commonwealth's motion to dismiss the bondholders' claim that the Puerto Rico Public Corporation Debt Enforcement and Recovery Act violated P.R. Const. art. II, § 7, was denied where the Puerto Rico Electric Power Authority was permit ted to restructure its debts, including the bonds, the Act totally extinguished significant and numerous obligations, rights, and remedies, and the bondholders had sufficiently pled that the Act imposed a drastic impairment when several other moderate courses were available to address Puerto Rico's financial crisis. Franklin Cal. Tax-Free Trust v. Puerto Rico, 85 F. Supp. 3d 577, 2015 U.S. Dist. LEXIS 14855 (D.P.R.), aff'd, 805 F.3d 322, 2015 U.S. App. LEXIS 11594 (1st Cir. P.R. 2015).UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

Constitutional provision prohibiting interference with contracts does not impair the state's power to regulate in the public interest. Fernando Bayron T oro v. Rafael Serra., 119 D.P.R. 605, 1987 PR Sup. LEXIS 183 (P.R. 1987).

The applicable criteria for considering the validity of statutes under the clause prohibiting interference with contracts is one of reasonableness. Fernando Bayron Toro v. Rafael Serra., 119 D.P.R. 605, 1987 PR Sup. LEXIS 183 (P.R. 1987).

Reasonable and necessary changes required by changing circumstances and designated to preserve solvency of Retirement System do not constitute interference with contracts under this section. Fernando Bayron Toro v. Rafael Serra., 119 D.P.R. 605, 1987 PR Sup. LEXIS 183 (P.R. 1987).

Private contracting cannot, in principle, preclude the exercise of the police power of the State. Warner Lambert Company v. Tribunal Superior de Puerto Rico, Sala de San Juan., 101 D.P.R. 378, 101 PR Sup. LEXIS 378 (P.R. 1973).

Either under the guarantee of due process of law as well as under the constitutional clause against the impairment of contractual obligations, the reasonability tests are the ones to be used by a court to determine the validity of a legislative action which is intended to protect the social interest of promoting the common welfare. Warner Lambert Company v. Tribunal Superior de Puerto Rico, Sala de San Juan., 101 D.P.R. 378, 101 PR Sup. LEXIS 378 (P.R. 1973).

Even though the Legislative Assembly has ample powers to enact reasonable measures to safeguard the fundamental interests of the people and to protect the common welfare, however, said police power, no matter how ample, is not boundless, and its exercise can never be arbitrary or unreasonable. Warner Lambert Company v. Tribunal Superior de Puerto Rico, Sala de San Juan., 101 D.P.R. 378, 101 PR Sup. LEXIS 378 (P.R. 1973).

Whenever superior reasons of public policy exist, the protection in the juridical order of contractual relations may be subordinate to the police power of the State. Warner Lambert Company v. Tribunal Superior de Puerto Rico, Sala de San Juan., 101 D.P.R. 378, 101 PR Sup. LEXIS 378 (P.R. 1973).

In considering the validity of statutes, under the impairment of contractual obligations clause in our Constitution, the applicable test by a court is one of reasonability, the function of the court being that of establishing a reasonable balance between the social interest of promoting the common welfare and the interest, also social, of protecting the contractual transactions against the arbitrary and unreasonable application of the laws. Warner Lambert Company v. Tribunal Superior de Puerto Rico, Sala de San Juan., 101 D.P.R. 378, 101 PR Sup. LEXIS 378 (P.R. 1973).

The reasonability of the statute under the constitutional clause against the impairment of contractual obligations is determined by taking into consideration, mainly, the substantiality of the public interest promoted by the same and the dimension of the impairment caused by its retroactive application. Warner Lambert Company v. Tribunal Superior de Puerto Rico, Sala de San Juan., 101 D.P.R. 378, 101 PR Sup. LEXIS 378 (P.R. 1973).

Regarding constitutional prohibition against impairing obligation of contracts, Puerto Rico is not in a more favored position than a state or the federal government. Fornaris v. Ridge Tool Co., 423 F.2d 563, 1970 U.S. App. LEXIS 10265 (1st Cir. P.R.), rev'd, 400 U.S. 41, 91 S. Ct. 156, 27 L. Ed. 2d 174, 1970 U.S. LEXIS 4 (U.S. 1970).

Puerto Rico's Dealers' Contracts Act §§ 278 et seq. of Title 10 by which a manufacturer cannot terminate, despite provisions of contract, or refuse to renew the dealer's contract on its normal expiration, except for 'just cause', and which provides for substantial damages in case of nonfulfi lment of the obligation, gives rise to a retroactive modification of contractual provisions not constitutionally permitted. Fornaris v. Ridge Tool Co., 423 F.2d 563, 1970 U.S. App. LEXIS 10265 (1st Cir. P.R.), rev'd, 400 U.S. 41, 91 S. Ct. 156, 27 L. Ed. 2d 174, 1970 U.S. LEXIS 4 (U.S. 1970).

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

### 15. Elimination of positions.

The actions of a mayor of a city who advocated the elimination of the jobs of municipal inspectors and thereafter signing and executing the ordinance which eliminated these jobs did not deny the right to due process. Vargas v. Barcelo, 385 F. Supp. 879, 1974 U.S. Dist. LEXIS 5887 (D.P.R. 1974), aff'd, 532 F.2d 765, 1976 U.S. App. LEXIS 12156 (1st Cir. P.R. 1976).

The actions of a mayor consisting of having advocated the elimination of the jobs of municipal inspectors and who later signed and executed the ordinance eliminating these jobs did not deprive the inspectors of a property interest without due process of law because the inspectors had acquired tenure. Vargas v. Barcelo, 385 F. Supp. 879, 1974 U.S. Dist. LEXIS 5887 (D.P.R. 1974), aff'd, 532 F.2d 765, 1976 U.S. App. LEXIS 12156 (1st Cir. P.R. 1976).

The fact that an ordinance which eliminated the offices of municipal inspector was supposedly motivated by political vengeance and not as an economical measure as alleged, did not infringe the constitutional right of expression and association of those municipal inspectors. Vargas v. Barcelo, 385 F. Supp. 879, 1974 U.S. Dist. LEXIS 5887 (D.P.R. 1974), aff'd, 532 F.2d 765, 1976 U.S. App. LEXIS 12156 (1st Cir. P.R. 1976).

### 16. Administrative hearing.

A hearing before an administrative agency which bars evidence to show the lack of guilt of a citizen, who is not connected by any evidence whatsoever to an act in violation of certain regulations, constitutes a mere formality, a vain artifice which is only good for the record and therefore, void and unconstit utional. Epifanio Ortiz Cruz v. Junta Hipica de Puerto Rico., 101 D.P.R. 791, 1973 PR Sup. LEXIS 254 (P.R. 1973).

### 17. Cooperatives.

Receivership proceedings instituted against the cooperative did not deny it or its board of trustees due process on the theory that the administrator of the Cooperative Development Administration of Puerto Rico had actively participated, personally or through his staff, in the investigation carried on by the inspector of cooperatives, and his judging capacity had been impaired, where the only intervention of the administrator was to entertain the inspector's petition and to order the initiation of the receivership proceedings; therefore, the cooperative and its board of trustees are not entitled, under the Civil Rights Act, to an injunction to restrain the administrator from initiating the receivership proceedings. Federacion de Coop. Federacion de Coop. de Credito de Puerto Rico v. Burgos, 366 F. Supp. 1321 (1973).

### 18. Waiver of rights.

Constitutional right of defendant to be present at all stages of his trial can be waived. People v. Lourido Perez, 115 D.P.R. 798 (1984).

Defendant's waiver of right to be present at all stages of trial may be construed upon his voluntary absence therefrom but, in view of constitutional rank of that right, that should not be the rule. Voluntary waiver requires that the defendant be aware of his right and obligation to be present, and has no valid reason to be absent. People v. Lourido Perez, 115 D.P.R. 798 (1984).

Defendant failing to appear for sentencing because he is serving federal penalty, and who did not advise the court about such federal proceedings at appointment time, despite having had opportunity to do so, validly and voluntarily waived his right to be present at sentencing. People v. Lourido Perez, 115 D.P.R. 798 (1984).

Waiving of any rights must be clear and conscious. If fundamental rights are involved, presumption exists against waiver. Fondo del Seguro del Estado v. Comision Industrial de Puerto Rico., 105 D.P.R. 261, 1976 PR Sup. LEXIS 2895 (P.R. 1976).

### 19. Constitutional analysis.

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

Three criteria used in constitutional analysis of equal protection of laws clause are: (1) traditional minimal or rational connection; (2) strict scrutiny or thorough examination; and (3) intermediate. Ada Angeles Leon Rosario v. Angel Luis Torres, 109 D.P.R. 804, 1980 PR Sup. LEXIS 118 (P.R. 1980).

Criterion of strict scrutiny is normally used in analysis of constitutional clause of equal protection of laws when act establishes inherently suspected classification or when it affects fundamental rights. Ada Angeles Leon Rosario v. Angel Luis Torres, 109 D.P.R. 804, 1980 PR Sup. LEXIS 118 (P.R. 1980).

### 20. Arrest without a warrant.

Arrest without a warrant of people peacefully assembled anywhere by Police in order to take them to headquarters with the sole purpose of photographing them with investigative motives violated the following clauses of the Commonwealth of Puerto Rico Constitution: (1) One which prohibits deprivation of liberty without due process (this section); (2) one recognizing right to protection against abusive attacks to honor, reputation and privacy as well as family life of persons (Art. II, § 8); (3) one prohibiting arrests, searches and seizures except by warrant issued by judicial authority and only upon determination of probable cause supported by oath or affirmation (Art. II, § 10); and (4) one pertaining to inviolability of human being (Art. II, § 1). El Pueblo de Puerto Rico v . Carlos L. Rey Marrero, 109 D.P.R. 739, 1980 PR Sup. LEXIS 108 (P.R. 1980).

### 21. Voting procedure for 1980 elections.

See annotations under § 3229 of Title 16.

### 22. Actions against Commonwealth.

See annotations under § 3077 of Title 32.

### 23. Death penalty.

The Federal Death Penalty Act is locally inapplicable in Puerto Rico, in part, because the Commonwealth Constitution, which was adopted by the Puerto Rico people and approved by Congress, expressly prohibits capital punishment in Puerto Rico and Puerto Rico's culture, traditions, and values are repugnant to the death penalty. United States v. Acosta Martinez, 106 F. Supp. 2d 311, 2000 U.S. Dist. LEXIS 10370 (D.P.R. 2000), rev'd, 252 F.3d 13, 2001 U.S. App. LEXIS 11724 (1st Cir. P.R. 2001).

### 24. Extradition.

The Uniform Criminal Extradition Act, §§ 1181 et seq. of Title 34, is in conflict with Art. II, § 7, cl. 2 of the Puerto Rico Constitution, and Puerto Rico cannot invoke the Constitution, which prohibits the death penalty, to prevent extradition of the accused or to condition the same. 167 D.P.R. 741, 2006 PR Sup. LEXIS 69.

### 25. Political activities.

Plaintiff employee's discrimination claims based on political affiliation under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Constitution , and §§ 5141, 5142 of Title 31, against defendant officials of state agency e mployer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Alejandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Plaintiff employee's discrimination claims based on political affiliatio n under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Consti tution, and §§ 5141, 5142 of Title 31, against defendant officials of state agency employer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation.

§ 7 Right to life, liberty, and enjoyment of property; no..., Puerto Rico Const. Art....

jandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Puerto Rico Const. Art. II, § 7, PR CONST Art. II, § 7

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Puerto Rico Const. Art. II, § 8

§ 8 Protection against attacks on honor, reputation, and private life

Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life.

**ANNOTATIONS**

**1. Freedom of speech.**

Plaintiff employee's discrimination claims based on political affiliation under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Constitution , and §§ 5141, 5142 of Title 31, against defendant officials of state agency e mployer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Alejandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Plaintiff employee's discrimination claims based on political affiliatio n under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Consti tution, and §§ 5141, 5142 of Title 31, against defendant officials of state agency employer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Ale jandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Person holding position as district chairman with jurisdiction and close relation with residents' councils of several public housing units, regardless o f how well known, is not a 'public figure'. El Pueblo de Puerto Rico v. Edwi n Olivero Rodriguez, 112 D.P.R. 369, 1982 PR Sup. LEXIS 107 (P.R. 1982).

For the purpose of evaluating constitutional right to free speech vis a vis libel action, concept of 'public figure' is closely related due to offi cial position, power of involvement in public affairs to acquisition of high s tanding, prominence, fame or special or general notoriety in the community, resulting in easy access to communication media in order to express, promote or debate viewpoints before the public opinion, and also in the risk of becoming more exposed to scrutiny, attention and public interest than any private citizen. El Pueblo de Puerto Rico v. Edwin Olivero Rodriguez, 112 D.P.R. 369, 1982 PR Sup. LEXIS 107 (P.R. 1982).

A public figure in Puerto Rico the Archbishop of the Roman Catholic Apos tolic Church is not entitled to obtain an injunction prohibiting the publicati on of a certain report-letter on deficiencies in the religious organization which he presides, on the basis that, if published, it would violate his privacy. Arzobispo Luis Aponte Martinez v. Jose Luis Lugo, 100 P.R.R. 281, 1971 PR Sup. LEXIS 190 (P.R. 1971).

The right of freedom of speech or communication to promote in good faith the legitimate interests in labor disputes entails the obligation to abstain from publishing or communicating falsehoods, lies and slander. El Pueblo de Puerto Rico v. Rafael Rodriguez, 86 P.R.R. 625, 1962 PR Sup. LEXIS 399 (P.R. 1962).

**2. Enforcement.**

Video game owner's claims under 42 U.S.C.S. § 1983 and various consti tutional provisions asserting that the Secretary of the Treasury of Puerto Rico violated its rights by depriving it of its property as a result of cancelling its licenses and seizing some video entertainment machines at several of its establishments failed to survive the Secretary's motion to dismiss for failure to s tate a cause of action, because a claim against the Secretary was, in essence, a claim against the State barred by the Eleventh Amendment, which is applicable to the Commonwealth of Puerto Rico. Replay, Inc. v. SEC'y of the Treasury (Apr. 19, 2011).

Claims for violations to dignity and privacy protections pursuant to Puerto Rico Constitution Art. II, §§ 1 and 8, brought by federal police officers who claimed that their rights were violated by surreptitious video surveillance of their locker-break room, could only be asserted against the United States under the Federal Tort Claims Act, 28 U.S.C.S. §§ 2671 to 2680. Rosario v. Unit ed States (Mar. 19, 2008).

While the Constitution of the Commonwealth of Puerto Rico did include a specific protection for reputation in this section, the Puerto Rican courts had not afforded greater protections to reputation than stateside jurisdictions, and damage to one's reputation alone did not trigger the protections of the federal Due Process Clause. Ramirez-De Leon v. Mujica-Cotto, 345 F. Supp. 2d 174, 2004 U.S. Dist. LEXIS 23462 (D.P.R. 2004).

The Supreme Court of Puerto Rico recognizes cause in sexual harassment between persons of the same sex. Arcadio Afanador Irizarry v. Roger Elec. Co., 156 D.P.R. 651, 2002 PR Sup. LEXIS 54 (P.R. 2002).

Section 1 of art. II of Constitution of Commonwealth dignity of human be ing has received recognition comparable to that received by this section. Soni a Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

Sections 1 and 8 of art. II of our Constitution operate without need of any implementing statutes. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

This section is exact copy of article V of American Declaration of Human Rights and Duties and ties in directly with article 12 of Universal Declaration of Human Rights. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

This section operates ex proprio vigore without legislation being necess ary to implement it. Estado Libre Asociado de Puerto Rico y Otros v. Hermandad de Empleados del Negociado de Suguridad de EMpleos y Otros, 104 D.P.R. 436, 1975 PR Sup. LEXIS 2604 (P.R. 1975).

All constitutional provisions creating rights are self-exercisable, that is, the courts have the duty to give effect thereto even where there is no statute defining such rights. Pedro Juan Alberio Quinones v. Estado Libre Asociado de Puerto Rico., 90 P.R.R. 791, 1964 PR Sup. LEXIS 322 (P.R. 1964).

When in a constitution, a general rule is established art. II, § 8 of the Constitution of Puerto Rico legislation is not necessary to implement it. Petra Rafaela Gonzalez v. Arcadio Ramirez Cuerda., 88 P.R.R. 121, 1963 PR Sup. LEXIS 316 (P.R. 1963).

### 3. Abortion.

Rights of personal privacy as set out in decisions of the Supreme Court on abortion are fully applicable to the Commonwealth. Montalvo v. Colon, 377 F. Supp. 1332, 1974 U.S. Dist. LEXIS 8042 (D.P.R. 1974).

### 4. Squatters.

Physical destruction, without judicial authorization, of homes of squatters who had established a community in part of lands owned by the Commonwealth of Puerto Rico, by officials and employees of the Commonwealth, is in violation of squatters' constitutional right to privacy. Amezquita v. Colon, 378 F. Supp. 7 37, 1974 U.S. Dist. LEXIS 7512 (D.P.R. 1974), rev'd, 518 F.2d 8, 1975 U.S. App. LEXIS 5616 (1st Cir. P.R. 1975).

### 5. Libel and slander.

Employer and supervisor were improperly granted summary judgment sua sponte as to a former employee's defamation claim because there was no prior warnin g to the parties, the issue had not been briefed, and neither party had presented evidence. Baldatano v. Merck, Sharp & Dohme (i.Baltadano v. Merck, Sharp & Dohme (I.A.) Corp., 637 F.3d 38, 2011 U.S. App. LEXIS 4011 (1st Cir. P.R. 2011).

The Constitution of Puerto Rico approved in 1952 is the main source of protection against libel, not the Libel and Slander Act of 1902, §§ 3141 3149 of Title 32. Said Act survives only insofar as it is compatible with the Constitution. Nestor Cortes Portalatin v. Roberto Hau Colon, 103 D.P.R. 734, 1975 PR Sup. LEXIS 1839 (P.R. 1975).

**6. Pickets.**

The right to privacy of a public officer, under the circumstances of the case at bar, prevails over the freedoms of speech, of the petition for redress, and of assembly of a labor organization formed by public employees of the department managed by the public officer and deprives said organization of the right of organizing a residential picket line in front of said officer's home. Estado Libre Asociado de Puerto Rico y Otros v. Hermandad de Empleados del Negociado de Suguridad de EMpleos y Otros, 104 D.P.R. 436, 1975 PR Sup. LEXIS 2604 (P.R. 1975).

The issue of an injunction is justified in order to take care of the violations of law allegedly committed by demonstrators participating in a residential picket line in front of the public officer's home, there being no need to res ort to other types of criminal or civil sanctions. Estado Libre Asociado de Puerto Rico y Otros v. Hermandad de Empleados del Negociado de Suguridad de EMpleos y Otros, 104 D.P.R. 436, 1975 PR Sup. LEXIS 2604 (P.R. 1975).

**7. Inviolability of dwelling.**

Public servants have no less right to the tranquility of their home than private citizens. Estado Libre Asociado de Puerto Rico y Otros v. Hermandad de Empleados del Negociado de Suguridad de EMpleos y Otros, 104 D.P.R. 436, 1975 PR Sup. LEXIS 2604 (P.R. 1975).

**8. Right to privacy.**

Summary judgment was proper as to a former employee's invasion of privac y claim because there was no evidence controverting that the employee consented to the search. R os- Pineiro v. United States (1st Cir. Apr. 15, 2013).

Claims for violations to dignity and privacy protections pursuant to Puerto Rico Constitution Art. II, §§ 1 and 8, brought by federal police officers who claimed that their rights were violated by surreptitious video surveillance of their locker-break room, could only be asserted against the United States under the Federal Tort Claims Act, 28 U.S.C.S. §§ 2671 to 2680. Rosario v. Unit ed States (Mar. 19, 2008).

In an employee's interview during an investigation of a potential confli ct of interest between the employee and an auditor, there were no demeaning comments made towards her, no foul language was used, and nothing happened that could have been considered an 'insult or humiliation' or a violation of the empl oyee's constitutional rights of privacy. Rivera-Rosa v. Citibank, N.A., 567 F. Supp. 2d 289, 2008 U.S. Dist. LEXIS 56197 (D.P.R. 2008).

A wife waives her right to privacy when she enters into an agreement with her husband in a divorce case; therefore, the wife does not have the right to return of a videotape that the husband recorded with the wife's consent, in whic h showed nude images of the wife. Lopez v. Maldonado, 168 D.P.R. ; (2006).

A Special Commission of the Senate demanded that the Secretary of the Treasury hand over the tax information of the taxpayers, but the taxpayers have a right to privacy and the Legislative Branch has the responsibility of formally notifying the taxpayers of the investigation. Rullan v. Fas Alzamora, 166 D.P.R. ; (2006).

The actions of certain public officers in controlling access, without specific guides, to a public residence with road blocks violated §§ 7, 8 and 10 of Art. II of the Constitution, as it unreasonably interfered with the right of privacy of the residents, and by not providing the minimum guarantees required by due process. Luis A. Nieves v. AM Contractors, Inc., 166 D.P.R.

§ 8 Protection against attacks on honor, reputation, and..., Puerto Rico Const. Art....

399, 2005 PR Sup. LEXIS 180 (P.R. 2005).

In applying the standard of minimum rationality, § 533 of Title 31 is con stitutional because it has a legitimate end. 165 D.P.R. ; (2005).

Section 591a of Title 31 is constitutional, but in applying it to cases of grandparents, judges are obliged to follow the directives established by the Supreme Court of the United States; and the courts must considerer certain criteria and desires of the parents. Rexach v. Ramirez, 162 D.P.R. 130 (2004).

A store's practice of checking the sales receipt when a customer is abou t to leave, with the only intent of verifying that the purchase had just been made, is legitimate in order to safeguard the store's merchandise from theft, an d the Supreme Court resolves that the customer's privacy was not infringed. Ca stro Cotto v. Tiendas Pitusa, Inc. H/C Super Descuentos Pitusa de Bayamon, Compania de Seguros de Pitusa Fulano de Tal Uno al Diez, 159 D.P.R. 650, 2003 PR Sup. LEXIS 103 (P.R. 2003).

The security system established by a telecommunications enterprise, using video cameras in the area where the employee-plaintiffs work, is not unconstitutional per se; the system is justified by the paramount interests of security and optimal functionality of the telecommunications system. Vega et al. v. Telefonica, 156 D.P.R. 584 (2002).

The taking and publication of a photograph of a person's house does not constitute a violation of the right to privacy when the photograph is taken from a public roadway and the person does not know of the presence of the photographer. Mojica Escobar v. Roca, 926 F. Supp. 30, 926 F. Supp. 31, 1996 U.S. Dist. LEXIS 7066 (D.P.R. 1996).

The investigation of a subject does not constitute a violation of the right to privacy under the Puerto Rico Constitution while said investigation is conducted in a form that is non-ostensible and not unreasonably intrusive. Mojica Escobar v. Roca, 926 F. Supp. 30, 926 F. Supp. 31, 1996 U.S. Dist. LEXIS 7066 (D.P.R. 1996).

The infringement upon the right of the press to be present during judicial proceedings, except during the showing of video recordings, is minimal when compared with the damage that the defendants would suffer by the public showing of such videos, and the requirement to show that the proposed method is the least burdensome alternative available to protect the right of privacy is satisfied. Fulana de Tal v. Demandado A., 138 D.P.R. 610, 1995 PR Sup. LEXIS 269 (P.R. 1995).

It is insufficient to allege that the right of privacy has been damaged; it is necessary to analyze the seriousness of the alleged damage, and after submitting it to strict scrutiny, determine which of the competing rights should one has to prevail. Fulana de Tal v. Demandado A., 138 D.P.R. 610, 1995 PR Sup. LEXIS 269 (P.R. 1995).

In principal, the use of cameras to photograph those who evade paying tolls and the use of those photographs as corroborative evidence in a judicial proceeding is legally valid. 1989 Op. Sec. Jus. No. 40.

Drivers who pay the tolls are exempt from absolutely being photographed by any camera or mechanism installed. 1989 Op. Sec. Jus. No. 18.

To require a urine sample for the detection of controlled substances between officials and employees of the Department of Sports and Recreation and the Recreational Development Company constitutes a reasonable search. 1987 Op. Sec. Jus. No. 50.

The process of taking fingerprints and photographs of inmates does not invade the right to privacy. 1987 Op. Sec. Jus. No. 50.

The purposes of the Corrections Administration justify the limitation of the right to privacy of inmates and those subject to probation and parole. 1987 Op. Sec. Jus. No. 44.

The right to privacy is not absolute, and gives way to the right of individuals of the same hierarchy or to compelling interests of the state. 1987 Op. Sec. Jus. No. 44.

The right to privacy recognized in Puerto Rico is more extensive than that recognized in the federal system. 1987 Op. Sec.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 68 of 272

§ 8 Protection against attacks on honor, reputation, and..., Puerto Rico Const. Art....

Jus. No. 44; 1987 Op. Sec. Jus. No. 29.

The information contained in the clinical record of a patient is protected by this section. 1987 Op. Sec. Jus. No. 31.

The right to privacy of persons whose names appear in the files of the Intelligence Office of the Puerto Rico Police should be taken into account and be given serious consideration at the moment of determining whether to divulge such information. 1987 Op. Sec. Jus. No. 29.

The right to privacy gives way, in certain circumstances, to the compelling interests of the state in erradicating the harms that the F.U.R.A. program proposes to combat. 1987 Op. Sec. Jus. No. 21.

Personal data gathered by the state falls outside the ambit of inspection when it constitutes a clear and unreasonable invasion of the person's privacy; but the inspection of a personal or medical record does not always constitute a violation of a citizen's privacy. 1987 Op. Sec. Jus. No. 4.

The State can successfully raise a claim of confidentiality in a limited number of circumstances only, such as: (1) a law authorizes the claim; (2) the information is protected by an evidentiary privilege; (3) to reveal the information would violate fundamental rights of third persons; (4) the identity of an informant is involved, and (5) the information is official information according to this rule. Efrain Santiago v. Maggie Bobb, 117 D.P.R. 153, 1986 PR Sup. LEXIS 113 (P.R. 1986).

An employer's rule which calls for the suspension or dismissal of an emp loyee who refuses to take a polygraph test is an unconstitutional violation of the right to privacy. It is equally unconstitutional to require an employee to take such a test as a condition of employment. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

A worker in search of employment should not have to waive right to privacy by permitting employer to invade his mind and extract thoughts. Both the right to work and right to privacy are consubstantial with human dignity. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

When a person seeking employment consents to submit to a polygraph examination required by an employer, it should not be inferred that the job-seeker has voluntarily waived his right to privacy when said consent is required to retain or obtain a job. The risk of losing or not obtaining a job and the disadvantageous position which the worker occupies vis a vis the employer are impediments to a truly free and voluntary waiver. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

The waiver of the constitutional right to privacy must be clear, specific and unequivocal. Unless it has been waived, the right to privacy is inviolable, be it by the State, a private entity or any citizen. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

The right to privacy operates ex proprio vigore and can be invoked even among private parties. The same is true of the inviolability of human dignity and the right of every worker to protection against risk to personal integrity at work. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

There is a right to be compensated for injuries caused by interference of a private citizen with rights to privacy. An action for damages does not prevent an action for injunctive relief to protect these rights. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

In Puerto Rico, right to intimacy and protection against illegal searches and seizures can extend beyond the borders of federal doctrine, including United States Supreme Court decisions. Puerto Rico v. Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

Constitutional protection against abusive attacks against intimacy must be construed under light of circumstances of time and place. While a search of a family home without a warrant may be deemed abusive, the search, without a warrant, of a convict cell as a precautionary measure to preserve order in the correctional institution cannot be deemed so. Puerto Rico v. Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

This section does not shield citizen's activities from investigations ca rried out by the F.B.I. as alleged invasion of privacy,

Lopez Pacheco v. United States, 627 F. Supp. 1224 (1986), confirmed without opinion, In re Luc Levasseur, 815 F.2d 691, 1987 U.S. App. LEXIS 4776 (1st Cir. Mass. 1987).

In the United States, the right to privacy is based on the concept of personal liberty protected by Fifth and Fourteenth Amendments to the US Constitution, and is applicable to Puerto Rico. 1986 Op. Sec. Jus. No. 38.

The Department of Health lacks the power to provide family planning and contraception methods to minors without parental consent, except if said services were defrayed by funds coming from federal legislation. 1986 Op. Sec. Jus. No. 38.

Even though the right to privacy is fundamental, it is not absolute, and special circumstances that configure compelling state interests can tip the balance in favor of interference with this right. 1986 Op. Sec. Jus. No. 38.

Retention by State of photographs taken of arrested person later acquitted without any justification therefor constituted violation of right to privacy consecrated in this section. El Pueblo de Puerto Rico v. Jose E. Torres Albertorio., 115 D.P.R. 128, 1984 PR Sup. LEXIS 91 (P.R. 1984).

Where investigative powers of agency conflict with constitutional right to privacy, judicial discretion should be exercised carefully, taking into consideration that the main point is whether the individual has reasonable proprietary right to expect that his privacy be respected anywhere within the circumstances of the particular case. Estado Libre Asociado de Puerto Rico v. Puerto Rico Telephone Company., 114 D.P.R. 394, 1983 PR Sup. LEXIS 121 (P.R. 1983).

Right to privacy and its derivative, right against wiretapping can be waived like any other constitutional right. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Any person making a call to a phone tapped under court order after subscriber waiver does not waive his own right to privacy in the absence of any warning from said subscriber thereabout. Failure to fulfill the obligation to inform any bona fide caller regarding wiretapping could result in civil or penal liabilities, or both. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Injunctions are adequate remedies for violations of right to privacy. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

In certain cases as it does in case at bar right to privacy outranks r right to free speech. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Constitutional right to privacy barring any interference in private life person or family thereof operates ex proprio vigore not requiring any State a ction, and may be exercised by private parties. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983); Emilie Colon Vda. de Rivera v. Carlos Romero Barcelo, 112 D.P.R. 573, 1982 PR Sup. LEXIS 143 (P.R. 1982).

Violation of rights guaranteed by this section may be remedied by means of an injunction. El Pueblo de Puerto Rico v. Manuel Luzon y Miguel Bauza Torres., 113 D.P.R. 315, 1982 PR Sup. LEXIS 211 (P.R. 1982); Colon v. Romero Barcelo, 112 D.P.R. 573 (1982).

Only in clearly specified, extraordinary circumstances warrantless search of citizen's home may be justified. El Pueblo de Puerto Rico v. Donald Turner Goodman., 110 D.P.R. 734, 1981 PR Sup. LEXIS 81 (P.R. 1981).

Fulfillment by State Police of duty to relay information to the media in order to keep citizenry well informed should neither violate right to intimacy nor unnecessarily encroach upon privacy or sully honor of the people. El Pueblo de Puerto Rico v. Donald Turner Goodman., 110 D.P.R. 734, 1981 PR Sup. LEXIS 81 (P.R. 1981).

Fact that Constitution of Commonwealth of Puerto Rico expressly recognizes two values, intimacy of human being and its innate dignity this section and § 1 of this art. II visibly enlarges scope in our Constitution of the eq uivalent one in the Fourth Amendment to the Federal Constitution. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

§ 8 Protection against attacks on honor, reputation, and..., Puerto Rico Const. Art....

Constitutional right to intimacy has different history in Puerto Rico and in United States. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978); Estado Libre Asociado de Puerto Rico y Otros v. Hermandad de Empleados del Negociado de Seguridad de EMpleos y Otros, 104 D.P.R. 436, 1975 PR Sup. LEXIS 2604 (P.R. 1975).

Matters in which courts have extended constitutional right to intimacy are stated in opinion. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

Right to intimacy and protection of dignity of human being not expressly protected by U.S. Constitution are consecrated in clear text of Commonwealth Constitution. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

The right to enjoy peace at home is consecrated in the Constitution of Puerto Rico. El Pueblo de Puerto Rico v. David Figueroa Navarro., 104 D.P.R. 721, 1976 PR Sup. LEXIS 1944 (P.R. 1976).

The right to the protection of privacy and intimacy in the home is one of the key rights guaranteed by the Constitution of Puerto Rico. El Pueblo de Puerto Rico v. David Figueroa Navarro., 104 D.P.R. 721, 1976 PR Sup. LEXIS 1944 (P.R. 1976).

The citizen whose behavior disrupts the peace and quiet of a person's ho use subjecting its dwellers to an investigation which palpably attempts against their privacy and hurts their feelings grieving the person under investigation and his family, violates Art. 368 of the former Penal Code. El Pueblo de Puerto Rico v. David Figueroa Navarro., 104 D.P.R. 721, 1976 PR Sup. LEXIS 1944 (P.R. 1976).

Public peace is that sense of security and tranquility, so necessary to one's comfort, which every person feels under the protection of the law, and a b reach of the peace is an invasion of the protection which the law thus affords. El Pueblo de Puerto Rico v. David Figueroa Navarro., 104 D.P.R. 721, 1976 PR Sup. LEXIS 1944 (P.R. 1976).

The house of everyone is to him as his castle and fortress, as well as for his defense against injury and violence as for his repose. El Pueblo de Puerto Rico v. David Figueroa Navarro., 104 D.P.R. 721, 1976 PR Sup. LEXIS 1944 (P.R. 1976).

### 9. Public interest.

Anyone invoking the right to limit the access of public and press to court proceedings of a civil nature, will have to prove that there is no other less burdensome alternative available to protect such right. Fulana de Tal v. Demandado A., 138 D.P.R. 610, 1995 PR Sup. LEXIS 269 (P.R. 1995).

If it is true that public interest in having access to court proceedings is served by the presence of public and press during the witness's testimony st age, that interest must cease when showing a video recording taken of petitioner having sexual relations with the defendant; at this moment the petitioner's r ight to protect his private life against abusive attacks on his honor takes greater precedence over the right of access to court proceedings. Fulana de Tal v. Demandado A., 138 D.P.R. 610, 1995 PR Sup. LEXIS 269 (P.R. 1995).

Pursuant to Constitution of Commonwealth of Puerto Rico, State cannot invade zone of personal intimacy except to protect pressing public interests. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

### 10. Divorce by mutual consent.

In this jurisdiction pursuant to rights to intimacy and protection of human dignity guaranteed by Commonwealth Constitution (a) mutual decision of spouses to get a divorce (mutual consent), and (b) irreparable breach of marriage bonds are grounds for divorce. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

In divorce for mutual consent proceedings and until legislature opts, within present constitutional system, to issue different norms to guarantee that decision of spouses to get divorce is not product of lack of reflection, courts should not accept

§ 8 Protection against attacks on honor, reputation, and..., Puerto Rico Const. Art....

waivers of term to request review, provided that petition for divorce could be withdrawn at any time before decree becomes final. Legislature is empowered to establish other reasonable safeguards to protect family stability adequately provided rights pursuant to §§ 1 and 9 of art. II of our Constitution are not violated by means of mechanism for conciliation, minimum ter ms of duration of marriage before action may be filed in certain cases, as well as other measures based on pressing interests of State. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

### 11. Arrest without a warrant.

Arrest without warrant of people peacefully assembled anywhere by Police in order to take them to headquarters with the sole purpose of photographing them with investigative motives violated the following clauses of the Commonwealth of Puerto Rico Constitution: (1) one which prohibits deprivation of liberty without due process (art. II, § 7); (2) one recognizing right to protection against abusive attacks to honor, reputation and privacy as well as family life of persons (this section); (3) one prohibiting arrests, searches and seizures except by warrant issued by judicial authority and only upon determination of probable cause supported by oath or affirmation (art. II, § 10); and (4) one pertaining to inviolability of human being (art. II, § 1). El Pueblo de Puerto Rico v. Carlos L. Rey Marrero, 109 D.P.R. 739, 1980 PR Sup. LEXIS 108 (P.R. 1980).

### 12. Employment.

Plaintiff alleged sufficient facts that could plausibly satisfy his constitutional claims for violation of his rights to dignity and intimacy under art. II, §§ 1, 8, as plaintiff alleged that defendant retailer's district manager an d human resources specialist had knowledge of plaintiff's military status and training, that defendant's operations director put pressure on him to dissuade him from attending military training, that he was denied promotions and was transferred repeatedly because of the same discriminatory reasons, and that his employer reduced his 'Profit Bonus' in an amount equivalent to the two months he was on military leave. Rivera-Cartagena v. Wal-Mart P.R., Inc., 767 F. Supp. 2d 310, 2011 U.S. Dist. LEXIS 22288 (D.P.R. 2011).

Plaintiff alleged sufficient facts that could plausibly satisfy his constitutional claims for violation of his rights to dignity and intimacy under art. II, §§ 1, 8, as plaintiff alleged that defendant retailer's district manage r and human resources specialist had knowledge of plaintiff's military status and training, that defendant's operations director put pressure on him to diss uade him from attending military training, that he was denied promotions and was transferred repeatedly because of the same discriminatory reasons, and that his employer reduced his 'Profit Bonus' in an amount equivalent to the two mont hs he was on military leave. Rivera-Cartagena v. Wal-Mart P.R., Inc., 767 F. Supp. 2d 310, 2011 U.S. Dist. LEXIS 22288 (D.P.R. 2011).

Summary judgment was properly granted to a former employer in a cause of action alleging employment discrimination based on a failure to rehire due to a mental condition because the conduct complained of did not rise to the level of actionable conduct as a matter of law. Velez v. Janssen Ortho LLC, 389 F. Supp. 2d 253, 2005 U.S. Dist. LEXIS 23134 (D.P.R. 2005), aff'd, 467 F.3d 802, 2006 U.S. App. LEXIS 27272 (1st Cir. P.R. 2006).

### 13. Arbitration.

When a retailer sued a distributor for defamation, negligence, personal damages, and unlawful termination of the parties' contract, arbitration was requ ired because: (1) the parties' contract contained an arbitration provision; (2 ) the contract also contained a provision for electronic acceptance of the contract, and (3) the distributor proved the retailer electronically accepted the contract. Caguas Satellite Corp. v. Echostar Satellite LLC, 824 F. Supp. 2d 309, 2011 U.S. Dist. LEXIS 130989 (D.P.R. 2011).

Puerto Rico Const. Art. II, § 8, PR CONST Art. II, § 8

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of

§ 8 Protection against attacks on honor, reputation, and..., Puerto Rico Const. Art....

Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 9 Just compensation for private property, Puerto Rico Const. Art. II, § 9

---

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Puerto Rico Const. Art. II, § 9

§ 9 Just compensation for private property

Private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law. No law shall be enacted authorizing condemnation of printing presses, machinery or material devoted to publications of any kind. The buildings in which these objects are located may be condemned only after a judicial finding of public convenience and necessity pursuant to procedure that shall be provided by law, and may be taken before such a judicial finding only when there is placed at the disposition of the publication an adequate site in which it can be installed and continue to operate for a reasonable time.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Acquisition of property for public use, see § 5 of Title 1.

**ANNOTATIONS**

**1. Generally.**

Obligation of the state to pay just compensation can be incurred in three ways: (1) by direct exercise of the power of eminent domain, bringing an action for expropriation; (2) by means of a regulation it establishes; and (3) when a taking in fact occurs as a result of substantial physical interference with use of the property. Jose Velazquez Velazquez v. Puerto Rico., 135 D.P.R. 84, 1994 PR Sup. LEXIS 213 (P.R. 1994).

**2. Interest of lessee.**

Constitutional provision of compensation, for damaging as well as for taking property, does not require government, as condemnor, to pay owner of dominion title to condemned property its full value and in addition to pay fixed-term lessee for his interest in said property. El Pueblo de Puerto Rico v. La Sociedad McCormick, Alcaide y Co., S. en C., 78 P.R.R. 895, 1956 PR Sup. LEXIS 118 (P.R. 1956).

**3. Private use.**

---

§ 9 Just compensation for private property, Puerto Rico Const. Art. II, § 9

Due process of law is not denied because use for which the Industrial Development Company condemns parcel of land which it considers necessary or convenient to carry out its purposes industrialization program is private use, because of fact that Company will not make direct use of parcel or of building erected thereon, but one who will use it directly is industrialist to whom it is sold or leased for purpose of establishing an industry. El Estado Libre Asociado de Puerto Rico v. Fajardo Sugar Company y Central Victoria, Inc., 79 P.R.R. 303, 1956 PR Sup. LEXIS 170 (P.R. 1956).

### 4. Due process.

The concept of res judicata in its modality of collateral estoppel by sentence applies to an impugnation of a confiscation to the extent that there was a dismissal of the accusations against a property owner for failure to fulfill the right to a speedy trial, and the Prosecutor did not present new charges. Suarez v. E.L.A., 162 D.P.R. 43 (2004).

Alleged owner should bring action for inverse condemnation before making a claim under this section. Asociacion de Pescadores de Vieques, Inc. v. Santiago, 747 F. Supp. 134, 1990 U.S. Dist. LEXIS 13540 (D.P.R. 1990).

Neither courts, nor parliaments, agency or governmental official of any kind can eliminate or deprive of meaning a Constitutional Clause of condemnation of property in spite of radical changes it has undergone due to increasingly developing police power of State. The Richards Group of Puerto Rico, Inc. v. Junta de Planificacion de Puerto Rico, 108 D.P.R. 23, 1978 PR Sup. LEXIS 599 (P.R. 1978).

In determining boundaries between condemnation of property and police powers regarding use of private land for public purposes area in which decision process is painful and complicated by necessity courts must weigh, in each c ase, the values involved, openly identify said values and realities on which they are based, pinpoint their hierarchy, situation by situation, in order to achieve a balance between governmental actions demanding compensation and those that do not demand it deemed reasonable for the times during which we live. The Richards Group of Puerto Rico, Inc. v. Junta de Planificacion de Puerto Rico, 108 D.P.R. 23, 1978 PR Sup. LEXIS 599 (P.R. 1978).

When drawing line between condemnation and police powers, courts should consider factual situation in each case. The Richards Group of Puerto Rico, Inc. v. Junta de Planificacion de Puerto Rico, 108 D.P.R. 23, 1978 PR Sup. LEXIS 599 (P.R. 1978).

Relationship or connection between condemnation and police powers of the State, and nature of concept of property are analyzed in the opinion. The Richards Group of Puerto Rico, Inc. v. Junta de Planificacion de Puerto Rico, 108 D.P.R. 23, 1978 PR Sup. LEXIS 599 (P.R. 1978).

Certain state Constitutions demand prior deposit of just compensation for property in cases of condemnation, but not Puerto Rico's. Violation of such co nstitutional provisions in jurisdictions where they exist justifies award of damages in addition to fair price for property condemned. Maria Teresa Olivero v. Autoridad de Carreteras., 107 D.P.R. 301, 1978 PR Sup. LEXIS 547 (P.R. 1978).

Property, as well as liberty, regardless of its immunity against destruction pursuant to Constitution, is not immune against regulations essential for common good. Asociacion de Condominos Condominio Centro I y II v. Centro I, Inc., Centro II, Inc., 106 D.P.R. 185, 1977 PR Sup. LEXIS 2862 (P.R. 1977).

The authority of the State to condemn any private properties or rights is an exercise of the sovereign right of eminent domain that has only two limitations: (1) the property condemned must be assigned to a public purpose or use, and (2) a fair compensation must be paid to the owner. 1973 Op. Sec. Jus. No. 32.

The purpose of the action called inverse condemnation is to serve as protection for the owners to force the State to comply with the constitutional provisions guaranteeing that no one shall be deprived of his property without the due process of law and without having mediated compensation. Heftler International Inc. v. Junta de Planificacion y otros., 99 P.R.R. 454, 1970 PR Sup. LEXIS 197 (P.R. 1970).

Enforcement of the executive order which created the Culebra Island Defensive Sea Area did not constitute the taking of property of the island residents without compensation nor an unconstitutional restriction of personal liberty.

§ 9 Just compensation for private property, Puerto Rico Const. Art. II, § 9

United States, 297 F. Supp. 1356, 1969 U.S. Dist. LEXIS 9167 (D.P.R. 1969), aff'd, 422 F.2d 943, 1970 U.S. App. LEXIS 10335 (1st Cir. P.R. 1970).

The State cannot take or damage private property for public use without just compensation and in the manner provided by law. Estado Libre Asociado de Puerto Rico v. Tribunal Superior de Puerto Rico, 95 P.R.R. 328, 1967 PR Sup. LEXIS 317 (P.R. 1967).

The means provided by the Land Law §§ 1 et seq. of Title 28 to confiscate without compensation from a third party the rights of an usufructuary of the program of Title V of said Act, §§ 551 et seq. of Title 28, unlawfu lly acquired by said third party person who is not a bona fide usufructuary accepted by the Social Programs Administration of the Department of Agriculture are reasonable and do not establish a confiscation of property without the d ue process of law. El Estado Libre Asociado de Puerto Rico v. Ramon Luis Marquez y Tomas Parrilla., 93 P.R.R. 382, 1966 PR Sup. LEXIS 80 (P.R. 1966).

The constitutional contention that the action of the Sugar Board in relation to the retroactive payment of amounts not claimed by the colonos deprives the petitioners of their property without due process of law and impairs their contractual obligations lacks merit. Central Monserrate, Inc. v. Junta Azucarera de Puerto Rico., 83 P.R.R. 105, 1961 PR Sup. LEXIS 389 (P.R. 1961).

Where in a divorce decree issued by a court of Nevada the custody of the minor is granted to the mother and the minor files an action for support in a competent court in Puerto Rico, the contention of the defendant in said case, that since the trial court cannot pass upon the custody it cannot order him to give support and that in assuming jurisdiction and in ordering him to do so it deprived him of his property without the due process of law and denied him the equal protection of the laws, is one without merit. Amill v. Amill Antongiorgi., 83 P.R.R. 89, 1961 PR Sup. LEXIS 387 (P.R. 1961).

The power to fix the procedure to condemn streets and highways is one of eminent domain and subject to the constitutional limitations of due process, the right to be heard, and the prohibition against taking private property for a public use, except for a just reason upon payment of just compensation (§§ 7 an d 9, art. II of the Constitution). 1958 Op. Sec. Jus. No. 18.

### 5. Highways.

As this section did not apply it was not necessary for the Commonwealth to sue the property owner in condemnation for a portion of a highway in order to pay for damages which mainly consisted of a home being left on the border of a high slope which was about to tumble down. Armando Valle Toledo v. El Estado Libre Asociado de Puerto Rico., 82 P.R.R. 626, 1961 PR Sup. LEXIS 357 (P.R. 1961).

### 6. Destruction of restrictive conditions.

A property is taken without just compensation when a private party of the government violates or destroys restrictive conditions imposed on two adjacent lots where a residential development was to be built, it constitutes, also, a violation of the sale contracts of 17 buyers of dwellings and lots in the first of said two pieces of land, first part of the urbanizing project. George Sands y Otros v. Extension Sagrado Corazon, Inc., 103 D.P.R. 826, 1975 PR Sup. LEXIS 1953 (P.R. 1975).

### 7. Construction.

Even though the Constitution of Puerto Rico recognizes the right of a citizen to the enjoyment of his property, said enjoyment must yield to the needs of the community. Heftler International Inc. v. Junta de Planificacion y otros., 99 P.R.R. 454, 1970 PR Sup. LEXIS 197 (P.R. 1970).

The phrase 'public utility' in the Constitution of the Commonwealth al so means social utility, social interest, common welfare. El Estado Libre Asociado de Puerto Rico v. Jorge I. Rosso, 95 P.R.R. 488, 1967 PR Sup. LEXIS 347 (P.R. 1967), dismissed, Rosso v. Puerto Rico, 393 U.S. 14, 89 S. Ct. 46, 21 L. Ed. 2d 13, 1968 U.S. LEXIS 582 (U.S. 1968).

### 8. Inverse condemnation.

§ 9 Just compensation for private property, Puerto Rico Const. Art. II, § 9

Action for inverse condemnation is to be used in exceptional cases of physical occupation, interference with a real property right, or restrictions to the property by means of regulation and where an expropriation action has not been commenced. Jose Velazquez Velazquez v. Puerto Rico., 135 D.P.R. 84, 1994 PR Sup. LEXIS 213 (P.R. 1994).

### 9. Public use.

Video game owner's claims under 42 U.S.C.S. § 1983 and various consti tutional provisions asserting that the Secretary of the Treasury of Puerto Rico violated its rights by depriving it of its property as a result of cancelling its licenses and seizing some video entertainment machines at several of its establishments failed to survive the Secretary's motion to dismiss for failure to s tate a cause of action, because a claim against the Secretary was, in essence, a claim against the State barred by the Eleventh Amendment, which is applicable to the Commonwealth of Puerto Rico; further, the owner's takings claims failed since the Secretary did not take the machines for public use. Replay, Inc. v. SEC'y of the Treasury (Apr. 19, 2011).

Upon applying the standard of wide deference to a project with a public purpose, the courts should intervine when it has been decided that a taking for a public purpose. 166 D.P.R. 700, 2006 PR Sup. LEXIS 1.

Puerto Rico Const. Art. II, § 9, PR CONST Art. II, § 9

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

---

Laws of Puerto Rico Annotated Currentness
    The Constitution of the Commonwealth of Puerto Rico
        Article II. Bill of Rights

Puerto Rico Const. Art. II, § 10

§ 10 Searches and seizures; wire-tapping; warrants

The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated.

Wire-tapping is prohibited.

No warrant for arrest or search and seizure shall issue except by judicial authority and only upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons to be arrested or the things to be seized.

Evidence obtained in violation of this section shall be inadmissible in the courts.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Searches and seizures, see § 10 of Title 1.

**ANNOTATIONS**

**1. Powers of prosecuting attorney.**

In limiting power to issue warrants of arrest to judicial authority, the purpose of § 10 of art. II of our Constitution was to deprive the prosecuting attorneys of their authority to issue such warrants because it implied deter mination of probable cause and to fix bail bonds. However, this constitution al provision does not entitle defendants to examine affidavits which prosecuting attorneys submitted to the magistrate who issued warrants of arrest and incarceration against them. Juan Lopez Olivo v. Tribunal Superior de Puerto Rico, Sala de San Juan, 79 P.R.R. 470, 1956 PR Sup. LEXIS 191 (P.R. 1956).

Paragraph 3 of this section requires the previous judicial intervention and the previous determination by a judge as to the existence of probable cause only in connection with arrests, searches and seizures but not in the making and filing of an

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

information. El Pueblo de Puerto Rico v. Jose Angel Ortiz Gerena c/p Miguel Angel Ortiz y Sinforiano Maldonado Acosta., 76 P.R.R. 241, 1954 PR Sup. LEXIS 205 (P.R. 1954).

The proceeding provided by former §§ 3 and 127 of Title 34, for the ma king and filing of informations is not contrary to paragraph 3 of this section. El Pueblo de Puerto Rico v. Jose Angel Ortiz Gerena c/p Miguel Angel Ortiz y Sinforiano Maldonado Acosta., 76 P.R.R. 241, 1954 PR Sup. LEXIS 205 (P.R. 1954).

The provision in this section that no bench warrant shall be issued except by judicial authority, and only upon probable cause, and the limitation by the Judiciary Act of 1952, § 1 of Title 4, of the judicial power to the courts, e xpressly deprived prosecuting attorneys of their character of magistrates and, consequently, of power to issue bench warrants. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan, 75 P.R.R. 501, 1953 PR Sup. LEXIS 277 (P.R. 1953).

**2. Arrest or search.**

Once Treasury changed its investigative focus from one in which it requi red of the banking institutions the account numbers in which certain checks were fraudulently deposited to one in which it required information about personal transactions made with funds received from several sources it interfered with t he right to privacy of the accused. Puerto Rico v. Jose N. Loubriel Serrano., 158 D.P.R. 371, 2003 PR Sup. LEXIS 2 (P.R. 2003).

A general search of baggage of all passengers by I.R.S. agents without a warrant or where there was no threat or emergency situation was illegal and unconstitutional; the Court of First Instance erred in not suppressing the evidence of marijuana found in the passenger's baggage. El Pueblo de Puerto Rico v. Cede no Laclaustra, 157 D.P.R. 743, 2002 PR Sup. LEXIS 107 (P.R. 2002).

An agent who arrested and searched the accused without a warrant had no reasonable motive or probable cause, therefore the arrest and search were illegal in that there was only a memory of his having seen a photo of the accused at the jail, which memory does not prove reasonable motive. El Pueblo de Puerto Rico v. Calderon Diaz, 156 D.P.R. 549, 2002 PR Sup. LEXIS 41 (P.R. 2002).

The municipal guard was not acting as an undercover agent by virtue of being in civilian clothes; evidence was effectively indicated that a felony had been committed in the guard's presence, by which he was fully empowered to arrest the plaintiff and, as a result, the evidence was admissible. El Pueblo de Puerto Rico v. Cruz Calderon, 156 D.P.R. 61, 2002 PR Sup. LEXIS 5 (P.R. 2002).

The instrusion into the right of privacy should be minimal, therefore while the use of roadblocks could be adequate to meet the public interest, the existence of less burdensome alternatives may justify a finding of that it is unconstitutional. Puerto Rico v. Henry Yip Berrios, 142 D.P.R. 386, 1997 PR Sup. LEXIS 481 (P.R. 1997).

The use of empirical evidence in evaluating the effectiveness of a highway blockade may be an adequate instrument in furthering the public interest, and the existence of other less onerous and harmful alternatives for the realization of government objectives may justify an unconstitutional decision of the government action with the aim being minimal harm to personal privacy. Puerto Rico v. Henry Yip Berrios, 142 D.P.R. 386, 1997 PR Sup. LEXIS 481 (P.R. 1997).

The validity of a consented to search is a question of law that should be determined from an analysis of the totality of the circumstances, in particular the characteristics of the person who consented and the environment in which the consent was given. 138 D.P.R. 686.

With respect to exigent circumstances it must be shown by agents of public order that circumstances existed which prevented them from obtaining an arrest warrant and risk to public and police may be considered as well as the seriousness of the offense, the possibility of flight and that suspect could become violent, producing clear and imminent danger to lives of police agents. Pueblo v. Rivera Colon, 128 D.P.R. 672, 1991 PR Sup. LEXIS 212 (P.R. 1991).

When the confiscation has been effectuated without a court order, the state can always demonstrate the particular facts of the case that justified the police intervention. Pueblo v. Rivera Colon, 128 D.P.R. 672, 1991 PR Sup. LEXIS 212 (P.R. 1991).

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 79 of 272

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

Federal statutes of the Coast Guard, Customs Officers and the Internal Revenue Agents do not authorize Puerto Rico police officers to act on their own; the local authorities should act in conjunction with the federal officers. 1987 Op. Sec. Jus. No. 21.

The F.U.R.A. program, upon authorizing the interception or search of vehicles without probable cause or an order, should contain a general regulatory scheme that permits the general inspection of vehicles for a very specific purpose and under particular circumstances. 1987 Op. Sec. Jus. No. 21.

After the decisions in Torres v. Puerto Rico, 442 U.S. 465; 99 S. Ct. 2425; 61 L. Ed. 2d 1 (1979) and E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984), the constitutional validity of a border search in the ports and airports of the Island by local authorities without probable cause is doubtful, due to conflict with federal law or by the doctrine of unreasonableness. 1987 Op. Sec. Jus. No. 21.

In order to justify a search of the ferry from Puerto Rico to Santo Domingo or of the vehicles that enter or leave the ferry, without probable cause or in a coordinated action with federal customs officers, it is necessary to resort to the administrative registry declared in E.L.A. v. Coca Cola Bott. Co., 115 D.P.R. 197 (1984). 1987 Op. Sec. Jus. No. 21.

Arrest without warrant of people peacefully assembled anywhere by Police in order to take them to headquarters with the sole purpose of photographing them with investigative motives violated the following clauses of the Commonwealth of Puerto Rico Constitution: (1) one which prohibits deprivation of liberty without due process (art. II, § 7); (2) one recognizing right to protection against abusive attacks to honor, reputation and privacy as well as family life of persons (art. II, § 8); (3) one prohibiting arrests, searches and seizures except by warrant issued by judicial authority and only upon determination of probable cause supported by oath or affirmation (this section); and (4) one pertaining to inviolability of human being (art. II, § 1). El Pueblo de Puerto Rico v. Carlos L. Rey Marrero, 109 D.P.R. 739, 1980 PR Sup. LEXIS 108 (P.R. 1980).

For the purpose of considering validity of search or seizure without warrant, 'curtilage', so-called, refers to immediate vicinity of home which American jurisprudence has wanted to protect from application of doctrine of open fields in order to extend guaranty against unreasonable searches to such specific places. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

Subject to certain and limited exceptions, seizure without a warrant creates presumption of invalidity. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

Supreme Court held that evidence supported right of appellant to expect that fence on his property would not be transgressed, and the Police should have required warrant for search and seizure before entering said property and seize evidence incriminating the defendant. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

Requirements of Rule 6(b) of Criminal Procedure to issue warrant for arrest are based on constitutional mandate of this section and Fourth Amendment to the U.S. Constitution. El Pueblo de Puerto Rico v. de la Cruz Maceira, 106 D.P.R. 378, 1977 PR Sup. LEXIS 3094 (P.R. 1977).

Courts must determine, based on right to privacy, the extension of protection granted by this section against illegal searches and seizures to a motor vehicle. El Pueblo de Puerto Rico v. Bienvenido Vargas Delgado., 105 D.P.R. 335, 1976 PR Sup. LEXIS 3009 (P.R. 1976).

Right to privacy that protects against illegal searches and seizures d oes not exist in case of stolen automobile, notwithstanding fact that accused has not admitted theft, if such thing were proved in court. El Pueblo de Puerto Rico v. Bienvenido Vargas Delgado., 105 D.P.R. 335, 1976 PR Sup. LEXIS 3009 (P.R. 1976).

A warrantless search of the premises and furniture of a house which are not within the immediate reach of the person under arrest is not permissible, even though it is contemporaneous with a lawful arrest. El Pueblo de Puerto Rico v. Jose M. Costoso Caballero, 100 P.R.R. 146, 1971 PR Sup. LEXIS 170 (P.R. 1971).

Serious violations of the Vehicle and Traffic Law and of the Penal Code, but not mere lesser traffic offenses authorize a policeman to search a motor ve hicle without a search warrant. Jesus M. Rolon Marxuach v. Tribunal Superior de Puerto

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

Rico, Sala de San Juan., 96 P.R.R. 648, 1968 PR Sup. LEXIS 190 (P.R. 1968).

The mere commission of a minor traffic offense does not authorize a peace officer to search a motor vehicle without a judicial order to that effect. El Pueblo de Puerto Rico v. Victor de Jesus Franqui., 96 P.R.R. 629, 1968 PR Sup. LEXIS 188 (P.R. 1968).

The mere suspicion of a peace officer that a motor vehicle might have been stolen, on the ground that it was open and the ignition key was inserted, does not justify the search without the proper judicial order to that effect, particularly when said officer did not suspect that the vehicle in question was utilized to transport drugs or any other criminal material. El Pueblo de Puerto Rico v. Victor de Jesus Franqui., 96 P.R.R. 629, 1968 PR Sup. LEXIS 188 (P.R. 1968).

The constitutional guarantee against illegal searches and seizures does not cover the search of abandoned structures, nor the seizure of evidence which is abandoned or thrown by a person. El Pueblo de Puerto Rico v. Victor Erausquin Martinez y Luis A. Urbia Perez., 96 P.R.R. 1, 1968 PR Sup. LEXIS 117 (P.R. 1968).

A bench warrant is not necessary for the police to arrest legally a person when the latter is caught inside an abandoned structure, holding in one of his hands a small envelope of those known as 'decks'. El Pueblo de Puerto Rico v . Victor Erausquin Martinez y Luis A. Urbia Perez., 96 P.R.R. 1, 1968 PR Sup. LEXIS 117 (P.R. 1968).

The arrest and search of a person by peace officers is legal when the latter have reasonable grounds to believe that said person has committed an offense in their presence. Any evidence product of said arrest and search is admissible. El Pueblo de Puerto Rico v. Luis E. Acevedo Gonzalez, 95 P.R.R. 343, 1967 PR Sup. LEXIS 319 (P.R. 1967).

The search of an automobile is legal when its driver fails to halt at a 'Stop' sign for which reason he was going to cause an accident with another vehicle and when the police is about to detain him he tries to escape, constit uting said circumstances a justification for the search carried out. El Pueblo de Puerto Rico v. Aguirre Torres, 91 P.R.R. 862, 1965 PR Sup. LEXIS 126 (P.R. 1965); El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

The guarantee established by this section protects citizens from a search which, although legal, might be unreasonable. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

The mere fact that there is a legal arrest does not ipso facto legalize a search or seizure without a warrant. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

Upon examination of the evidence the Court concludes that the search of the automobile in this case was too remote in time and place to be considered incidental to the arrest of the driver of said vehicle since said search was not m ade to prevent defendant's escape, or to prevent an attack or assault on the p ersons who had detained him, or the destruction of evidence connected with the commission of the crime for which reason said search without warrant was, in ef fect, an unreasonable search violating this section. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

The seizure by a police officer of evidence thrown into a cane field a l ist used in connection with the illegal game of bolita, thrown by defendant's son who was traveling with him in an automobile is admissible in evidence, and said seizure does not constitute an illegal search. El Pueblo de Puerto Rico v. Flor Colon Colon., 88 P.R.R. 182, 1963 PR Sup. LEXIS 324 (P.R. 1963).

After the adoption of our Constitution, a public peace officer may only arrest a citizen without a warrant of arrest issued by competent judicial authority when he surprises him in the act of committing an offense in flagrante. (People v. Soto, 1954, 77 P.R.R. 193, followed.) Rodriguez v. Secretary of Public Works, 86 P.R.R. 345 (1962).

The arrest of a person without a warrant issued by competent authority being the exception and not the general rule, unless it is made strictly within the statutory provision, the arrest becomes illegal. Rodriguez v. Secretary of Public Works, 86 P.R.R. 345 (1962); People v. Santiago, 78 D.P.R. 627 (1955).

Even if a residence has a direct opening to an establishment licensed to retail alcoholic beverages, no search is in order unless it is the consequence of a valid arrest or a search warrant has been issued by a judge after determination of probable cause for

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

the search. 1956 Op. Sec. Jus. No. 52.

A citizen's right against unreasonable searches and seizures is guarante ed in Puerto Rico by the Constitution, by Act Feb. 27, 1902, and by the Criminal Procedure Code. 1956 Op. Sec. Jus. No. 52.

The phrase 'except in cases of offenses in flagrante delicto determined by the criminal law' used in the report rendered by the committee of the Bill of Rights to the Constitutional Convention in relation to this section refers to public offenses committed in the presence of a peace oficer, that is, to those cases where the officer surprises the violator or offender in the very act of committing the offense. El Pueblo de Puerto Rico v. Pablo Soto Rivera, 77 P.R.R. 193, 1954 PR Sup. LEXIS 352 (P.R. 1954).

### 3. Bank acounts.

The retroactive character of the constitutional norm established in RDT Constr. Corp. v. Ileana M. Col—'o—n Carlo., 141 D.P.R. 424, 1996 PR Sup. LEXIS 325 (P.R. 1996).

Since the relation between a taxpayer who has a bank account in a bank and the latter is one of creditor and debtor, and the books and records of the bank are its own property, the taxpayer has no property interest in those documents and he is not protected by the constitutional provisions against unreasonable searches and seizures guaranteed by § 10 of art. II of our Constitution and the Fourth Amendment of the Constitution of the United States. Secretario de Hacienda de P.R. v. de San Juan, 81 P.R.R. 648, 1960 PR Sup. LEXIS 84 (P.R. 1960).

In the examination of books, records, and other documents by the Secretary of the Treasury for the purpose of ascertaining the correction of the returns filed, the constitutional basis of the objection of the taxpayer that it violates his constitutional right to protection against unreasonable searches and seizures will be the unreasonableness, irrelevance or absence of the need of an investigation. In view of the scope and purpose of the investigation to be carried out, the kind of documents to be examined, the nature of the transactions involved in the investigation, and the specification of the periods of time and of the taxpayers to which the investigation refers, the unreasonableness, relevancy, and necessity of the investigation in the case cannot be denied. Secretario de Hacienda de P.R. v. de San Juan, 81 P.R.R. 648, 1960 PR Sup. LEXIS 84 (P.R. 1960).

It is improper for a court to consider questions of a constitutional nature that may arise or may be conceivable when the Secretary of the Treasury exercises his power of investigation under this section in cases different from the one in question. Secretario de Hacienda de P.R. v. de San Juan, 81 P.R.R. 648, 1960 PR Sup. LEXIS 84 (P.R. 1960).

### 4. Evidence.

Although a person has knowledge of his right not to consent to a warrantless search, and even if he is in full exercise of his mental capacities, if the police officer's threat along with other threatening circumstances lead him to believe in the inevitability of such search, and that it does not depend on his consent, and then he consents to the same, that consent is vitiated and the search is unreasonable and any evidence obtained from it is illegal and must be suppressed. People v. Perez Olmo, 138 D.P.R. 686 (1995).

The suppression of evidence does not proceed, when the corroboration is not limited to determine if the observed conduct is innocent or incriminatory, but when it determined the level of suspicion in regards to all the actions of the person, and its result leads to the seizure of the material informed in the confidence. People v. Perez Olmo, 138 D.P.R. 686 (1995).

A confidential information that indicates a suspicious activity along with police officer's corroboration that seized evidence originated such confident ial information should not be suppressed. People v. Perez Olmo, 138 D.P.R. 686 (1995).

A seizure without a warrant produces a presumption of invalidity subject to certain limited exceptions. Puerto Rico v. Carmelo Vazquez Mendez y Otro, 117 D.P.R. 170, 1986 PR Sup. LEXIS 115 (P.R. 1986).

Evidence obtained in violation of art. II, § 10, of the Constitution of Puerto Rico is inadmissible in the courts. El Pueblo de Puerto Rico v. Maria Gonzalez Rivera y Raul Olmedo Garcia, 100 P.R.R. 650, 1972 PR Sup. LEXIS 147 (P.R. 1972).

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

The constitutional guarantee against illegal searches and seizures does not cover abandoned structures or the seizure of evidence which is abandoned or thrown away by a person. El Pueblo de Puerto Rico v. Francisco Arroyo Ramirez., 96 P.R.R. 563, 1968 PR Sup. LEXIS 179 (P.R. 1968).

The constitutional guarantee against illegal searches and seizures does not cover the seizure of evidence which is abandoned or thrown out by a person. El Pueblo de Puerto Rico v. Hector Morales Soler y Rafael Delgado Reyes., 94 P.R.R. 366, 1967 PR Sup. LEXIS 230 (P.R. 1967); El Pueblo de Puerto Rico v. Richard Saura Gomez., 90 P.R.R. 780, 1964 PR Sup. LEXIS 320 (P.R. 1964); Puerto Rico v. Gonzalez Charon., 83 P.R.R. 432, 1961 PR Sup. LEXIS 423 (P.R. 1961).

Confession or any statement is inadmissible in evidence when it is given by a defendant after an illegal search of his person or belongings during which the fruits of the offense with which he is charged are seized provided said defendant establishes as in any other incident of suppression of evidence illegally obtained that the confession was induced as the result of the ill egal search, by the confrontation with its 'fruits'. El Pueblo de Puerto Ric o v. Jose Rodriguez Rivera., 91 P.R.R. 442, 1964 PR Sup. LEXIS 377 (P.R. 1964).

A confession or statement of the defendant following an illegal search is admissible in evidence when the prosecuting attorney establishes that he had knowledge of the facts respecting the defendant through an independent source, and not through the illegal search of the person or his belongings. El Pueblo de Puerto Rico v. Jose Rodriguez Rivera., 91 P.R.R. 442, 1964 PR Sup. LEXIS 377 (P.R. 1964).

Upon examination of the evidence in this law the Court concludes that neither from the direct examination nor from the examination of the witnesses for the prosecution does it appear that defendant's search was illegal so as to rend er the objects seized inadmissible. El Pueblo de Puerto Rico v. Carmelo Diaz Cintron., 91 P.R.R. 139, 1964 PR Sup. LEXIS 355 (P.R. 1964).

In the absence of special circumstances that is, the existence of a va lid justification for the search the mere commission of a minor traffic offe nse by the driver of a motor vehicle does not authorize the search of the vehicle without a warrant. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

Where the only evidence connecting defendant with the commission of the offenses with which he was charged was obtained by an unreasonable search and at the trial the admission of such evidence is challenged by the defense it is not admissible by constitutional mandate, and the acquittal of the defendant is in order. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

The constitutional guarantee against wrongful searches and seizures does not cover the seizure of an evidence which is abandoned or thrown into an open field, such as a public highway. Puerto Rico v. Del Valle Leon., 83 P.R.R. 439, 1961 PR Sup. LEXIS 426 (P.R. 1961); Puerto Rico v. Gonzalez Charon., 83 P.R.R. 432, 1961 PR Sup. LEXIS 423 (P.R. 1961).

### 5. Description of property.

The addendum appearing in a warrant to the effect that besides the revolver they were to search for 'any other articles possessed in violation of the la w', although not rendering the search warrant wholly void, has no legal value as being in violation of this section and Rules 229 and 231 of the Rules of Criminal Procedure, App. II of Title 34. Juan Flores Valentin y Margarita Vega Matos v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 782, 1965 PR Sup. LEXIS 167 (P.R. 1965).

It constitutes an illegal police attachment of another's personal proper ty that peace officers who search a business under the presumptive authority contained in the search warrant, to search for any other articles possessed in violation of the law seize for investigation, since their source has not bee n justified, merchandise, articles, and objects which do not resemble at all the article which said officers had to seize in conformance with the search warrant, when said merchandise, articles and objects have nothing to do with the previous or present commission of any offense, the material possession of which is not prohibited by law. Juan Flores Valentin y Margarita Vega Matos v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 782, 1965 PR Sup. LEXIS 167 (P.R. 1965).

### 6. Dwelling and privacy.

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

The simple fact of being an overnight guest in a residence is sufficient to demonstrate that guest had reasonable expectation that privacy would not be disturbed by person other than host and others authorized by him to enter the residence. 132 D.P.R. 363.

Constitutional protection extends to area of outbuildings and yard which, together with the residence, constitute a housing unit. Nevertheless, as part of their investigative functions, police may enter areas of curtilage of a residence which is apparently open to the public with the purpose of conversing with occupants of residence or locate a person. Puerto Rico v. Juan Lopez Lopez., 129 D.P.R. 287, 1991 PR Sup. LEXIS 232 (P.R. 1991); Pueblo v. Rivera Colon, 128 D.P.R. 672, 1991 PR Sup. LEXIS 212 (P.R. 1991).

Analysis to determine whether entry of agents constitutes unreasonable search depends on whether person had a reasonable expectation of privacy in the area, and the following criteria should be considered: (1) place searched; (2) nature and degree of police intrusion; (3) objective or purpose of intervention; (4) whether conduct of person indicated reasonable expectation of privacy; (5) existence of physical barriers which restricted entrance or visibility into the place searched; (6) number of persons with legitimate access to the area, and (7) social inhibitions related to the area searched. 129 D.P.R. 71.

It is reasonable to suppose that a greater expectation of privacy exists with regard to the interior of a residence, especially if the windows are closed or covered. Pueblo v. Rivera Colon, 128 D.P.R. 672, 1991 PR Sup. LEXIS 212 (P.R. 1991).

There are four factors to determine extent of curtilage: (1) proximity of house to area claimed as curtilage. If the area is very near the residence, this fact by itself makes it more probable that the area will be considered curtilage; (2) whether the area is within bounds of house; (3) nature and use of this area; (4) measures taken by resident to protect the area from observations by persons passing by. Pueblo v. Rivera Colon, 128 D.P.R. 672, 1991 PR Sup. LEXIS 212 (P.R. 1991).

Citizens residing in condominiums have reasonable right to expect respect to their privacy to a degree comparable with that of citizens residing in traditional residences. People v. Perez, 115 D.P.R. 827 (1984).

Condominium resident can reasonably expect that only other owners and their guests will pass through halls and other common areas of building. People v. Perez, 115 D.P.R. 827 (1984).

When outdoor vigilance by agents of public order is not sufficient, Police may come before magistrate and obtain, through required proceedings, authorization to enter common areas of property to establish satisfactory observation points. Except where immediate action is imperative, court order or authorization should be obtained before entering areas protected by right to privacy. People v. Perez, 115 D.P.R. 827 (1984).

When either building administrator, his delegate or another tenant authorize entry into a condominium, several courts recognize that police action to guard common areas is legitimate. People v. Perez, 115 D.P.R. 827 (1984).

Objective of constitutional guaranty against unreasonable searches and seizures is to deny best intended governments any efficacious and even indispensable means in order to achieve meritory objectives for the protection of individual liberties of citizens. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

Construction of guaranty against illegal search and seizure provided by this section has not been nor has it any reason to be parallel to that of Fourth Amendment to Federal Constitution, upon which it is based. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

Courts, when analyzing controversies about protection against searches and seizures should once it is determined that defendant is legitimized to invo ke said privilege determine first if State could have obtained court order w ithout compromising effectiveness of search or security of agents, and second, the reasonability of search, if State established that such order was not required for action. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

Social cost to be measured in each case by degree of obstruction confronted by criminal investigation and frustrating effect on the fundamental objective of trial, which is finding and declaring the truth, are general norms to be observed by courts in the application of constitutional provisions against illegal search and seizure. El Pueblo de Puerto Rico v. Jose A. Dominguez Fraguada., 105 D.P.R. 537, 1977 PR Sup. LEXIS 1829 (P.R. 1977).

Privacy does not follow documents as a shadow, rather it ends once people expose them willingly to public view and knowledge. El Pueblo de Puerto Rico v. Jose A. Dominguez Fraguada., 105 D.P.R. 537, 1977 PR Sup. LEXIS 1829 (P.R. 1977).

The essential purpose of this section protection against illegal searc h and seizure is to protect the right to privacy and not the right of proper ty. This constitutional provision safeguards against invasions into sanctity of home and privacies of life. El Pueblo de Puerto Rico v. Bienvenido Vargas Delgado., 105 D.P.R. 335, 1976 PR Sup. LEXIS 3009 (P.R. 1976).

A constitutional difference between homes and cars must be established regarding this section's provision protecting against illegal search and seizure. El Pueblo de Puerto Rico v. Bienvenido Vargas Delgado., 105 D.P.R. 335, 1976 PR Sup. LEXIS 3009 (P.R. 1976).

Whatsoever persons knowingly and publicly display even at home or office is not protected by provisions of this section. El Pueblo de Puerto Rico v. Bienvenido Vargas Delgado., 105 D.P.R. 335, 1976 PR Sup. LEXIS 3009 (P.R. 1976).

The constitutional guarantee of the inviolability of the house of a citizen does not protect the inviolability of a latrine of an unoccupied house trespassed upon by three intruders. El Pueblo de Puerto Rico v. Carmelo Diaz Cintron., 91 P.R.R. 139, 1964 PR Sup. LEXIS 355 (P.R. 1964).

This section consecrates the inviolability of the dwelling of a citizen. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 19, 1964 PR Sup. LEXIS 341 (P.R. 1964).

The provision of the Constitution of the Commonwealth of Puerto Rico warranting the inviolability of the dwelling of a citizen should be liberally construed by the courts. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 19, 1964 PR Sup. LEXIS 341 (P.R. 1964).

### 7. Construction.

Constitutional guarantee of this section applies to administrative as well as criminal proceedings. Puerto Rico v. Benjamin Rosario Igartua., 129 D.P.R. 1055, 1992 PR Sup. LEXIS 185 (P.R. 1992).

This section has three basic purposes: to protect privacy and dignity of individuals, protect their documents and other belongings, and interpose a judge between public officials and citizens to provide greater guarantee of reasonableness of intrusion. Pueblo v. Rodriguez, 128 D.P.R. 438 (1991).

Specific and personal examination under Rule 231 of Criminal Procedure Rules is not a constitutional requirement. Puerto Rico v. Rey Rivera Rodriguez., 123 D.P.R. 467, 1989 PR Sup. LEXIS 91 (P.R. 1989).

Constitutional guaranty against illegal search and seizure does not cover evidence cast or abandoned in the street. Puerto Rico v. Roberto Ortiz Martinez., 116 D.P.R. 139, 1985 PR Sup. LEXIS 62 (P.R. 1985).

In this jurisdiction, decisions of United States Supreme Court regarding Fourth Amendment indicate only the minimum content of this section. Estado Libre Asociado de Puerto Rico et al v. Coca Cola Bottling Company of Puerto Rico et al., 115 D.P.R. 197, 1984 PR Sup. LEXIS 80 (P.R. 1984).

Provisions of 'Federal Omnibus Crime Control Act' authorizing intercep tion of telephonic communications and their use as evidence are applicable in the Commonwealth of Puerto Rico, and constitutional ban to those interceptions which may be supreme law and principle of that Commonwealth, may not constitute grounds to challenge legislative policy of the U.S. Congress either as statute or as principle, in matters of its exclusive jurisdiction. United States v. Perez, 465 F. Supp. 1284, 1979 U.S. Dist. LEXIS 14023 (D.P.R. 1979).

The Constitution of the Commonwealth of Puerto Rico is not a federal statute. Therefore, telephonic conversations intercepted and recorded pursuant to provisions of 'Federal Omnibus Crime Control Act', a statute of primary application on a federal criminal case, and introduced as evidence, cannot be ruled illegally obtained in violation of said Constitution. United States v. Perez, 465 F. Supp. 1284, 1979 U.S. Dist. LEXIS 14023 (D.P.R. 1979).

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 85 of 272

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

Supreme Court of Puerto Rico is empowered to expand protection against illegal search and seizure beyond limits of Fourth Amendment to U.S. Constitution. El Pueblo de Puerto Rico v. Paul Dolce., 105 D.P.R. 422, 1976 PR Sup. LEXIS 3140 (P.R. 1976).

The constitutional protection against unreasonable searches and seizures extends to the lot and tract of land which together with the house constitute the dwelling unit as well as to the accessory structures connected thereto. El Pueblo de Puerto Rico v. Marcos Torres Resto., 102 D.P.R. 532, 1974 PR Sup. LEXIS 303 (P.R. 1974).

There is no illegal search because of the fact that a police officer entered into the boundaries of a property in investigative duties to talk with the occupants of the residence. If during the course of this legitimate activity, the agent observes within the residence, through the door, the commission of an offense, the arrest and incidental search is valid provided at least one of the purposes enumerated in People v. Costoso Caballero, 100 D.P.R. 146 (1971), is present. El Pueblo de Puerto Rico v. Marcos Torres Resto., 102 D.P.R. 532, 1974 PR Sup. LEXIS 303 (P.R. 1974).

The purpose of the third paragraph of this section is to guarantee the citizen's privacy and to limit the scope of the search. Said constitutional provi sion protects the person, his home, and his belongings, from arbitrary seizures. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 97 P.R.R. 504, 1969 PR Sup. LEXIS 174 (P.R. 1969).

The provisions of this section have no application to a discretional administrative determination made by the Executive in the first instance revoking a conditional pardon to a convict in the exercise of his constitutional power, pursuant to the terms of the very document of pardon. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964).

The concept 'house' appearing in this section is not confined to the p lace where the home is constituted. The protection of said constitutional provision to the citizen is much broader. El Pueblo de Puerto Rico v. Carmelo Diaz Cintron., 91 P.R.R. 139, 1964 PR Sup. LEXIS 355 (P.R. 1964).

The constitutional protection against unreasonable searches and seizures is extended to include a motor vehicle. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

### 8. Probable cause.

An uncorroborated confidential statement does not constitute probable cause to issue a search warrant. 138 D.P.R. 230.

To enter house of third person for purpose of arresting a suspect without a warrant, agents of public order should obtain sufficient information to believe that suspect will be found in said house and should demonstrate that, under the circumstances, it would have been unreasonable to attempt to obtain a warrant. Pueblo v. Rivera Colon, 128 D.P.R. 672, 1991 PR Sup. LEXIS 212 (P.R. 1991).

When agents have a founded suspicion that a traveler hides narcotics in their baggage, a canine-sniff search can be conducted; so long as the detention time is minimal in order to dissipate the suspicion; and if the search comes back positive, this satisfies the probable cause requirement to obtain a court order. 1987 Op. Sec. Jus. No. 21.

Warrantless search of home based on mere fact that there is probable cause to believe that objects existing therein may be subject to search, is unlawful. El Pueblo de Puerto Rico v. Donald Turner Goodman., 110 D.P.R. 734, 1981 PR Sup. LEXIS 81 (P.R. 1981).

A magistrate can issue a search warrant where there is probable cause that an offense is being committed on the premises sought to be searched. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 19, 1964 PR Sup. LEXIS 341 (P.R. 1964).

In determining probable cause, in the sense that an offense is being committed, for the issuance of a search warrant, a court is not called upon to determine whether the offense charged against a citizen has in fact been committed; it need only determine whether the affiant in the corresponding affidavit on which the warrant was issued had reasonable grounds at the time of his affidavit and the issuance of the warrant to believe that the law was being violated o n the premises sought to be searched. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 19, 1964 PR Sup. LEXIS 341 (P.R.

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

1964).

If the apparent facts set out in the affidavit on which the search warrant was issued are such that a reasonably discreet and prudent person would be led to believe that the offense charged has been committed, there is probable cause justifying the issuance of the warrant. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 19, 1964 PR Sup. LEXIS 341 (P.R. 1964).

In determining probable cause that an offense is being committed, ground for the issuance of a search warrant, the court should have in mind the factual and practical considerations of everyday life on which reasonable and prudent men and not legal technicians act. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 19, 1964 PR Sup. LEXIS 341 (P.R. 1964).

As a general rule, a search warrant should not be issued in the absenc e of probable cause that an offense is being committed, as required by this section where a period of time over 30 days has elapsed between the date of the application for said warrant and the date of the supporting affidavit. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 91 P.R.R. 19, 1964 PR Sup. LEXIS 341 (P.R. 1964).

### 9. Stop and frisk.

Whether security agent could perform stop and frisk of suspect without warrant, even when confidential information concerning suspect which has no signs of reliability has been investigated, or when reliable informer warned agent regarding specific crime about to be committed, or even when probable cause for suspect's arrest did not exist, provided agent had reasonable motives to believe t hat suspect was armed and dangerous, see People v. Diaz. El Pueblo de Puerto Rico v. Carmelo Diaz Diaz., 106 D.P.R. 348, 1977 PR Sup. LEXIS 3091 (P.R. 1977).

### 10. Reasonable search.

The entry of a public order agent onto a private neighborhood walkway to carry out a surveillance watch with binoculars, does not constitute an unreasonable search in violation of the Constitution; the walkway was accessible and open to the public, paved and there was no sign indicating that the location was private and it was prohibited to enter. 168 D.P.R. 46, 2006 PR Sup. LEXIS 197.

The receipt an establishment gives a consumer is an official document the store provides for the customer as a guarantee of business transacted, and when the store asks the consumer for such a receipt the invasion of privacy is minimal since the receipt is nothing other than a document containing the information of the completed transaction. 2000 Op. Sec. Jus. No. 3.

A clear need for access to information is strictly limited to using it as an additional measure of security by business establishments to protect not only their interests but those of the consumer, and in requesting a purchase receipt the establishment aims to avoid any action contrary to those interests. 2000 Op. Sec. Jus. No. 3.

Consumers should not anticipate a reasonable expectation of privacy with respect to a receipt of purchase, and having it, should acquiesce before a store 's need to take necessary steps to protect not only its business but of other c onsumers. 2000 Op. Sec. Jus. No. 3.

If asking for a receipt of purchase is part of a store's policy, the mos t appropriate step would be to so advise the consumer before he makes his purchase, thus giving the customer the option of agreeing to it before his receipt is asked for. 2000 Op. Sec. Jus. No. 3.

Consumers have a reasonable expectation of privacy with regard to the bags in which they carry goods they have purchased, and a store's routine practice of examining those purchases against the receipt constitutes an abusive and unreasonable invasion as it is dangerous and contrary to the personal integrity of the customers which could lead to an illegal restriction of liberty; but when a store's personnel have a reasonable suspicion that a person has committed a cr ime, the properly authorized personnel may require the person to show them the items in order to verify them against the purchase receipt. 2000 Op. Sec. Jus. No. 3.

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

To stop all drivers early in the morning when leaving their communities to check their licenses and car registration constitutes a violation of their right to privacy, especially when the roadblock is not part of a structured plan under neutral guidelines but part of several orders for arrest. Puerto Rico v. Henry Yip Berrios, 142 D.P.R. 386, 1997 PR Sup. LEXIS 481 (P.R. 1997).

The validity of a consensual search is an issue of law that will be determined after the analysis of the totality of circumstances, in particular the characteristics of the person who consents to the search and the environment in which that consent was given. People v. Perez Olmo, 138 D.P.R. 686 (1995).

Although a person knows of his right not to consent to a warrantless search, and even if he is in full exercise of his mental capacities, if the police officer's threat along with other threatening circumstances lead him to believe in the inevitability of such search, and then he consents to the search, that consent is vitiated and the search is unreasonable, and any evidence obtained from it is illegal and must be suppressed. People v. Perez Olmo, 138 D.P.R. 686 (1995).

A person unlawfully in an area has no standing to claim a right against unreasonable searches since he has no expectation of privacy and the burden to show that his presence was lawful is on the accused. 132 D.P.R. 363.

It would be unreasonable to require agents of public order to obtain a warrant before briefly investigating suspicious conduct which occurs in their presence in an area next to public property and where there are no indications of a reasonable expectation of privacy. Puerto Rico v. Juan Lopez Lopez., 129 D.P.R. 287, 1991 PR Sup. LEXIS 232 (P.R. 1991).

It is not objectionable that the police can get near a place that is accessible to anyone to investigate the identify of the owner of a vehicle dismantled in a place totally visible from the public road. Puerto Rico v. Juan Lopez Lopez., 129 D.P.R. 287, 1991 PR Sup. LEXIS 232 (P.R. 1991).

To determine the reasonableness of a search conducted in a state school, the following should be considered: (1) if in its origin the interaction with the person in the location to be searched is justified, and (2) if the scope of the search is reasonably related to the circumstances that justify the intervention. 129 D.P.R. 71.

Reasonability of intrusion into house of student should be measured in terms of age, gender, history in the school, the nature of the alleged infraction, opportunities for obtaining search warrant and reliability of information provided by confidential informant. 129 D.P.R. 71.

The fundamental norm in order to determine the reasonableness of a search consists in establishing a balance between the person's right to privacy and t he legitimate interest of the State that motivates the interference in that right. 1987 Op. Sec. Jus. No. 30; 1987 Op. Sec. Jus. No. 28.

The constitutional protection against unreasonable searches is applicable in criminal and administrative cases, and its purpose is to avoid an arbitrary intrusion into a person's right to privacy, and in some cases requires a previo us determination of probable cause, or at a minimum, a reasonable individual suspicion, and a judicial order to sustain the validity of the search. 1987 Op. Sec. Jus. No. 30.

A seizure without a warrant produces a presumption of invalidity subject to certain limited exceptions, among which are: (1) search incidental to legal arrest; (2) search of a motor vehicle, boat or wagon and when probable cause existed to believe it was transporting contraband or illegal merchandise; (3) when vehicle was confiscated and subsequent search of vehicle was related to reason for the arrest of occupant; (4) when property which was seized was in process of or at imminent risk of being destroyed; (5) when exigent circumstances made it imperative to proceed with a pre-arrest search, as when not to have conducted the search would have put lives of law enforcement personnel or others at risk, and (6) when consent to search was given, or constitutional right against unreasonable searches and seizures was waived. Puerto Rico v. Ismael Rivera Rivera, 117 D.P.R. 283, 1986 PR Sup. LEXIS 123 (P.R. 1986).

Where convict freely consented to taking of his blood sample, challenge alleging lack of prior court order did not lie. Puerto Rico v. Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

As a rule, any search and seizure without a warrant, regardless of procedure, is illegal per se. However, direct or indirect consent thereto, emergency circumstances or the weight of conflicting interest may lead to a different solution.

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

Guarantee against unreasonable entries, searches and seizures of this section extends to commercial establishments, whether or not they are corporate property. Estado Libre Asociado de Puerto Rico et al v. Coca Cola Bottling Company of Puerto Rico et al., 115 D.P.R. 197, 1984 PR Sup. LEXIS 80 (P.R. 1984).

There are differences between administrative and criminal searches, and even among different types of administrative searches. Most of them lie in standard of probable cause basis for court order authorizing entry or search. In administrative proceedings, a more flexible vision of constitutional guarantee regarding weight of probable cause is justified. Estado Libre Asociado de Puerto Rico et al v. Coca Cola Bottling Company of Puerto Rico et al., 115 D.P.R. 197, 1984 PR Sup. LEXIS 80 (P.R. 1984).

Degree of invasion upon privacy and dignity of subject is usually more intense in criminal than in administrative searches. Distinction justifies different, less rigorous standards on evidence required to establish probable cause in administrative search cases. However, the closer criminal and administrative searches become the more the procedures become unified. Estado Libre Asociado de Puerto Rico et al v. Coca Cola Bottling Company of Puerto Rico et al., 115 D.P.R. 197, 1984 PR Sup. LEXIS 80 (P.R. 1984).

Search of suspect and his vehicle, incidental to valid arrest without warrant executed as a realistic measure to protect agent and third persons is reasonable. El Pueblo de Puerto Rico v. Carmelo Diaz Diaz., 106 D.P.R. 348, 1977 PR Sup. LEXIS 3091 (P.R. 1977).

Under light of circumstances of case included in the opinion regarding the illegal arrest of appellant, the Supreme Court decided that police agent's se arch of appellant's car and seizure of packages of marihuana was reasonable, a nd rights of appellant under this section were not violated. El Pueblo de Puerto Rico v. Paul Dolce., 105 D.P.R. 422, 1976 PR Sup. LEXIS 3140 (P.R. 1976).

A search incidental to a lawful arrest must be reasonable. El Pueblo de Puerto Rico v. Jose Polanco Marcial, 95 P.R.R. 457, 1967 PR Sup. LEXIS 340 (P.R. 1967).

In the absence of evidence in the sense that a search incidental to a lawful arrest was performed due to the need to seize weapons or other things which might be used to prevent escaping detention, or to prevent the destruction, disappearance or concealment of evidence connected with the commission of an offense for which a suspect is detained, or to prevent or thwart an attack or assault on the one practicing the detention, said search is unreasonable, and it is proper to suppress its fruits. El Pueblo de Puerto Rico v. Jose Polanco Marcial, 95 P.R.R. 457, 1967 PR Sup. LEXIS 340 (P.R. 1967); El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

The search of an automobile after the arrest of the driver for driving in state of intoxication, and without having first obtained a search warrant, is unreasonable and, therefore, violates this section when said search: takes place in defendant's absence, the latter having already been arrested and und er police custody, and was at a place different and distant from the place where the vehicle was located. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

A search does not become reasonable because of the mere fact that the evidence tending to establish the commission of the crime may be seized. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

### 11. Searches incidental to arrest.

Mere fact of existing warrant for the arrest of the defendant did not justify complete search of house where he was found in the absence of specific search warrant. El Pueblo de Puerto Rico v. Donald Turner Goodman., 110 D.P.R. 734, 1981 PR Sup. LEXIS 81 (P.R. 1981).

Doctrine of legality of every search incidental to any legal arrest is not binding in this jurisdiction. El Pueblo de Puerto Rico v. Paul Dolce., 105 D.P.R. 422, 1976 PR Sup. LEXIS 3140 (P.R. 1976).

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

Legal arrest does not convalidate incidental search and seizure of things and people unless court may derive, from the entire atmosphere of the case, a reasonable conviction of the existence of additional special circumstances providing necessary justification for such search and seizure, that is, a good rationale for them. El Pueblo de Puerto Rico v. Paul Dolce., 105 D.P.R. 422, 1976 PR Sup. LEXIS 3140 (P.R. 1976).

No court order was required to seize and search automobile when circumstances made policeman reach reasonable conclusion that he had before him physical evidence of grand larceny; neither did he need it to arrest person in possession of automobile. El Pueblo de Puerto Rico v. Bienvenido Vargas Delgado., 105 D.P.R. 335, 1976 PR Sup. LEXIS 3009 (P.R. 1976).

Three suspects having been legally and validly arrested by the police inside a latrine of an abandoned house, the incidental search of said latrine performed by the police officers is legal. El Pueblo de Puerto Rico v. Marcos Torres Resto., 102 D.P.R. 532, 1974 PR Sup. LEXIS 303 (P.R. 1974).

A search incidental to a legal arrest may be extended to the person arrested and to the premises and things under his control. El Pueblo de Puerto Rico v. Marcos Torres Resto., 102 D.P.R. 532, 1974 PR Sup. LEXIS 303 (P.R. 1974).

A search incidental to a legal arrest of a person and the search of the vehicle wherein he travels is justified by the need to seize weapons and other objects which might be used to escape detention, as well as by the need to prevent the destruction of evidence connected with the commission of the offense or to prevent or thwart an attack or assault on the one practicing the detention. Jesus M. Rolon Marxuach v. Tribunal Superior de Puerto Rico, Sala de San Juan., 96 P.R.R. 648, 1968 PR Sup. LEXIS 190 (P.R. 1968).

The rule which permits searches contemporaneous with a legal arrest is justified by: (a) the necessity or convenience of seizing weapons and other objects which can be used to attack a peace officer or to carry out an escape, and (b) the necessity and convenience of avoiding the destruction of the evidence. El Pueblo de Puerto Rico v. Tomas Luis Riscard, 95 P.R.R. 394, 1967 PR Sup. LEXIS 329 (P.R. 1967).

Once an accused is under arrest and in custody, a search made at another place without a warrant is simply not 'incident to the arrest'. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

The rule of law allowing searches contemporaneous to a legal arrest which implies an absence of a search warrant is justified: (a) by the need of seizing weapons or other things which might be used by the defendant to escape detention, (b) by the need to prevent the destruction of evidence connected with the commission of the crime, and (c) to prevent an attack or assault on the persons who detain the defendant. El Pueblo de Puerto Rico v. Jose A. Sosa Diaz., 90 P.R.R. 606, 1964 PR Sup. LEXIS 296 (P.R. 1964).

### 12. Doctrines.

Doctrine of 'evidence in full view', of 'evidence found in open fiel d' and of 'evidence abandoned by defendant' all of which justify valid search or seizure without a warrant are explained in the opinion. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

'Doctrine of open field' an exception to guaranty against illegal or unreasonable search and seizure is limited under Constitution of Commonwe alth of Puerto Rico to evidence abandoned and only in places where within circumstances of case right to a reasonable expectancy of intimacy is not possibly considered. El Pueblo de Puerto Rico v. Antonio Lebron, 108 D.P.R. 324, 1979 PR Sup. LEXIS 59 (P.R. 1979).

### 13. Telephone conversations.

Determination of legality of electronic surveillance conducted by federal agents and other security corps in Puerto Rico constituted a conflict between the Commonwealth Constitution and federal law where international law principles do not govern. United States v. Gerena, 649 F. Supp. 1183, 1986 U.S. Dist. LEXIS 16714 (D. Conn. 1986).

Constitutional provision barring telephone tapping does not prevail over federal statutes, save in purely local matters; therefore, it did not prevail in evidence gathering proceedings conducted in several places in Puerto Rico regarding Omnibus Crime Control Act. United States v. Gerena, 649 F. Supp. 1183, 1986 U.S. Dist. LEXIS 16714 (D. Conn. 1986).

Right to privacy, like any other rights constitutional ones included, may be waived. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Subscriber who requested and consented to wiretapping of his telephone waived constitutional rights against such actions. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Bilateral express or implicit waiver is required to validate ipso jure telephone wiretappings, and unilateral waivers do not suffice. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Person calling a phone number tapped under court order after subscriber waiver did not waive his own right to privacy in the absence of any warning from said subscriber thereabout. Failure to fulfill the obligation to inform any bona fide caller regarding wiretapping could result in civil or penal liabilities, or both. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Any court order granting wiretapping request should state clearly the strict limits of the authorization, and that wiretapping be restricted to the minimum necessary time to detect nature of call, identify source and caller, and whether such call is accepted. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

In cases where bona fide callers identify themselves or are identified by the subscriber, the Telephone Company should abstain from listening longer than absolutely indispensable, where telephone has been wiretapped at the request of the subscriber in order to trace anonymous or offensive calls. Puerto Rico Telephone Co. v. Cielo Martinez Cardona y Elba Aponte de Rodriguez., 114 D.P.R. 328, 1983 PR Sup. LEXIS 114 (P.R. 1983).

Defendant's telephone conversations from Haiti intercepted and recorded by federal agents are admissible in evidence in spite of local statutory prohibition due to preponderance of federal statute governing which authorizes such wiretappings and recordings provided one of the parties gave consent thereto. United States v. Bennett, 538 F. Supp. 1045, 1982 U.S. Dist. LEXIS 12423 (D.P.R. 1982).

### 14. Administrative summons.

A Special Commission of the Senate of Puerto Rico demanded that the Secretary of the Treasury hand over the tax payers' information, but the tax payers have a constitutional right to privacy and the Legislative Branch has the responsibility to notify the tax payers of the investigation. Rullan v. Fas Alzamora, 166 D.P.R. ; (2006).

This section protects citizens against any unreasonable administrative summons. Estado Libre Asociado de Puerto Rico v. Puerto Rico Telephone Company., 114 D.P.R. 394, 1983 PR Sup. LEXIS 121 (P.R. 1983).

Reasonability of administrative summons can be determined using these accepted criteria: (1) the investigation must lie within the agency powers; (2) the request cannot be vague or undefined; and (3) the requested information must be pertinent to the investigation. Estado Libre Asociado de Puerto Rico v. Puerto Rico Telephone Company., 114 D.P.R. 394, 1983 PR Sup. LEXIS 121 (P.R. 1983).

### 15. Convicts.

Routine checks or searches needed for adequate protection in penal institutions do not violate constitutional bar against illegal searches. Puerto Rico v. Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

Taking blood samples from convicts constitutes search and is not subject to prior warrant. Puerto Rico v. Pedro Falu

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

Pursuant to the United States Supreme Court decisions, jailed convicts are not without the Constitutional protection, enjoying rights not incompatible with purposes of their confinement. Puerto Rico v. Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

The United States Supreme Court has held that jailed convicts have no reasonable expectation of intimacy constitutionally protected against illegal search and seizure. Puerto Rico v. Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

Jailed convicts may be deprived of liberty; however they are entitled to protection against attacks on their intimacy. Inviolability of human dignity cannot be restricted to those living free in the community. Puerto Rico v. Pedro Falu Martinez., 116 D.P.R. 828, 1986 PR Sup. LEXIS 77 (P.R. 1986).

### 16. Evidence of controlled substances.

The jurisprudence of the state and federal courts have established that the tests for the detection of controlled substances constitute a search within the context of the Fourth Amendment of the US Constitution and this section. 1987 Op. Sec. Jus. No. 30.

### 17. Hot pursuit.

Hot pursuit exception permits agents to enter and search residence of a third person when in immediate and uninterrupted pursuit of a suspect who enters the residence. Pueblo v. Rivera Colon, 128 D.P.R. 672, 1991 PR Sup. LEXIS 212 (P.R. 1991).

### 18. Consent.

Validity of consent to warrantless search granted by third person depends on whether person who consented had authority to consent and whether person who claims protection had a reasonable expectation of privacy. 132 D.P.R. 363.

Consent exception requires that owner, resident or any person with sufficient control over admission of visitors to the residences consents to the entrance of agents of public order. Pueblo v. Rivera Colon, 128 D.P.R. 672 (1991); 1981 Op. Sec. Jus. No. 2.

### 19. Inventory searches.

In every case of inventory search the state should show that: (1) situation justifies preliminary seizure for purposes of confiscation; (2) an administrative procedure exists establishing guidelines for this type of situation; (3) action of agents followed established procedure. Pueblo v. Rodriguez, 128 D.P.R. 438 (1991).

### 20. Emergency.

Only where emergency circumstances exist is it proper to enter student dormitory without knocking, identifying and announcing the purpose of the entrance to occupants. 129 D.P.R. 71.

### 21. Abandoned property.

When a person abandons property his expectation of privacy is lost and he cannot complain of subsequent use of property in evidence against him. 122 D.P.R. 567.

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

It is not considered abandonment everytime a person gives up possession or control of an object; what is fundamental is that the abandonment occurred under circumstances that indicates that the person did not retain an expectation of privacy over the object. 122 D.P.R. 567.

## 22. Highway blockade.

Insofar as subjective intrusion or the intrusion caused by the element of apprehension or surprise a highway blockade generates in people is concerned, the following must be taken into consideration: (1) the blockade must be clearly visible, that is, the amount of illumination in the area as well as the existence of advisories at a reasonable distance indicating police activity are important; (2) it must guarantee the security of those who go through it; and (3) interference with normal traffic flow should be minimal and, in any case, reasonable. Puerto Rico v. Henry Yip Berrios, 142 D.P.R. 386, 1997 PR Sup. LEXIS 481 (P.R. 1997).

In order for the stopping of a vehicle on a highway to be reasonable under constitutional standards, it must be guided by objective criteria that overcome arbitrary actions by state officers. For that reason elements like race, gender or age are not constitutionally valid, and objective and non-discriminatory criteria should be previously established for cases where not all vehicles will be stopped. Puerto Rico v. Henry Yip Berrios, 142 D.P.R. 386, 1997 PR Sup. LEXIS 481 (P.R. 1997).

## 23. Seizure.

During violent times, drug use, crime and the unease it causes in our daily lives, the rigorous implementation of the law is of primary interest, requiring judicial evaluation of difficult aspects and complex circumstances. Through this exercise, as much as possible, definitive judgments should arise that reconcile the public and private interests involved and provide just solutions without obstructing the work of the police in the legitimate prosecution of crime. Pueblo v. Ortiz Rodriguez, 147 D.P.R. 433 (1999).

Art. II, Sec. 10 of the Commonwealth Constitution and the federal Fourth Amendment protect the privacy and dignity of citizens as community values of the highest level. Its sphere safeguards private life and the sanctity of the home but does not defend the right to property, protecting human beings not places. Pueblo v. Ortiz Rodriguez, 147 D.P.R. 433 (1999).

Condominium residents have similar rights to privacy as do house owners. A condominium expects that only co-owners and their guests shall use the passageways and other common areas, and co-owners have the right to expect that intruders or trespassers not congregate in protected areas. A condominium's passageway s are not city streets and a garage is no less private than any other type of dwelling. Pueblo v. Ortiz Rodriguez, 147 D.P.R. 433 (1999).

It is irrelevant whether a housing complex has controlled access for purposes of determining whether a reasonable expectation of privacy exists. Access to housing complexes is limited not for the exclusive purpose of increasing the privacy of those who live there but primarily for augmenting the residents' secu rity in the face of rising crime; thus, using said factor as a rationale for assessing residents' privacy expectations is incorrect. Pueblo v. Ortiz Rodrigue z, 147 D.P.R. 433 (1999).

The rationale for determining the reasonableness of a search and seizure should take into consideration that the exclusion of any type of police activity from constitutional protection also signifies that it is removed from judicial control and the reasonablenesss requirement. Pueblo v. Ortiz Rodriguez, 147 D.P.R. 433 (1999).

Insofar as the passageways and stairways of a building are concerned, there commonly exists a level of social privacy, and social custom obliges people to behave prudently, especially so in the common areas of a condominium, as opposed to inside their apartments where they may expect and enjoy more privacy; therefore, the appellant did not have a reasonable expectation of privacy in the passageways and stairways of the building while he was using them to carry out illegal transactions. Pueblo v. Ortiz Rodriguez, 147 D.P.R. 433 (1999).

The high level of confidentiality in an investigation and the security measures and procedures for renting an apartment do not violate any constitutional provision. Pueblo v. Ortiz Rodriguez, 147 D.P.R. 433 (1999).

## 24. Generally.

§ 10 Searches and seizures; wire-tapping; warrants, Puerto Rico Const. Art. II, § 10

Requiring visitors to a penal institution to submit to a strip search meets the legitimate objective of avoiding the introduction of drugs and weapons, but the execution of this objective cannot destroy the person's expectation of p rivacy in their body. 149 D.P.R. 318.

The strip search of a visitor requires that: (1) the officials have a suspicion that the particular person intends to introduce contraband, (2) founded motives exist to believe that the contraband is located in a specific place. 149 D.P.R. 318.

Puerto Rico Const. Art. II, § 10, PR CONST Art. II, § 10

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

---

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Puerto Rico Const. Art. II, § 11

§ 11 Criminal prosecutions; jury trial; self-incrimination; double jeopardy; bail; imprisonment

In all criminal prosecutions, the accused shall enjoy the right to have a speedy and public trial, to be informed of the nature and cause of the accusation and to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, to have assistance of counsel, and to be presumed innocent.

In all prosecutions for a felony the accused shall have the right of trial by an impartial jury composed of twelve residents of the district, who may render their verdict by a majority vote which in no case may be less than nine.

No person shall be compelled in any criminal case to be a witness against himself and the failure of the accused to testify may be neither taken into consideration nor commented upon against him.

No person shall be twice put in jeopardy of punishment for the same offense.

Before conviction every accused shall be entitled to be admitted to bail.

Incarceration prior to trial shall not exceed six months nor shall bail or fines be excessive. No person shall be imprisoned for debt.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Special provisions.**

House Joint Resolution No. 30, June 22, 1979, provided for the holding of a referendum on April 6, 1980, for the purpose of approving or rejecting an amendment to the Constitution to propose that the right to bail is to exist only for misdemeanors, and that the Legislature would determine procedure in felonies.

Act Apr. 9, 1980, No. 14, p. 25, provided for the holding, its procedure and the appropriation of funds for plebiscite on June 29, 1980, but said plebiscite was enjoined by decision of the Superior Court, San Juan Part, on June 19, 1980, on ground of unconstitutionality of article 3, paragraph 1 of said Act No. 14, 1980.

---

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

Superior Court's decision was affirmed by the Supreme Court on June 24, 1980, Ortiz Anglero v. Barreto Perez, 110 D.P.R. 84, and its opinion states, in part, as follows: 'What we hold today does not detract from powers of Execut ive and Legislative Branches of Government to hold the plebiscite regarding right to bail provided it is done pursuant to constitutional applicable norms, within a reasonable time between the new partial registrations and the new date selected for the plebiscite.'

### Cross references.

Powers of government of Puerto Rico to punish for crime and to imprison or confine for protection of public peace or health, or of individual life or safety, see § 1 of Title 1.

Towns from which juries impanelled, see § 91 of Title 4.

### ANNOTATIONS

### 1. Self-incrimination.

The confession made by the accused evinces a voluntary, conscious and intelligent renunciation of the rights protecting her at that time: she was properly advised of her rights to not incriminate herself and to be represented by counsel; she understood the warnings made to her; she was accompanied by relatives interested in her welfare, and voluntarily confessed even though she understood the consequences. Pueblo v. Medina Hernandez, 158 D.P.R. 489 (2003).

The right guaranteed by the Commonwealth Constitution to every citizen of the country to remain silent when accused by the state so that he does not incriminate himself and his silence may not be used as evidence against him is one of the most fundamental and transcendental in this jurisdiction. Pueblo v. De Jesus, 148 D.P.R. 995 (1999).

It is a firmly established doctrine that if a person is suspected of a crime, the investigating officers who interrogate him are absolutely required to immediately advise him of a series of constitutional rights which our judicial system guarantees him; rights such as, among others, the right to remain silent. Pueblo v. De Jesus, 148 D.P.R. 995 (1999).

A confession before officers is inadmissible as evidence when said officers fail in their responsibility to advise the appellee of his constitutional rights at the start of the interview. Said appellee already being suspected of the acts under investigation, the officers may not postpone the warnings in effect to a time they consider more convenient. Pueblo v. De Jesus, 148 D.P.R. 995 (1999).

As soon as a person is considered suspicious the officers are obliged to warn him. It is not a game to see who is more ready but rather a matter that deals with the observance of fundamental rights guaranteed by the Commonwealth Constitution. Pueblo v. De Jesus, 148 D.P.R. 995 (1999).

A confession made before a prosecutor is inadmissible as evidence when the suspect believed he would not be accused of the acts involved because of promises made by the investigating officer. Pueblo v. De Jesus, 148 D.P.R. 995 (1999).

For an accused to prevent the state from using in evidence an admission or confession made during the investigative stage on grounds that his right against self-incrimination or to an attorney was violated the following must be shown: (1) at the moment the admission or confession was made the investigation had focused on the defendant; (2) at said moment accused was in custody of the state; (3) admission was product of interrogation by agents of the state; and (4) before interrogation started agents failed to provide warnings according to law and no waiver of rights occurred. Puerto Rico v. Oscar Lopez Guzman., 131 D.P.R. 867, 1992 PR Sup. LEXIS 298 (P.R. 1992).

When a criminal investigation conducted by public order agents is centered on a particular person and that person is under custody, if the agents intend to interrogate the suspect, they are obligated to inform the suspect of the right against self incrimination and the right to assistance of counsel. Puerto Rico v. Oscar Lopez Guzman., 131 D.P.R. 867, 1992 PR Sup. LEXIS 298 (P.R. 1992).

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

The constitutional right against self incrimination prevents the State from utilizing evidence submitted by the accused. Puerto Rico v. Orlando Rosaly Soto, 128 D.P.R. 729, 1991 PR Sup. LEXIS 247 (P.R. 1991).

A second confession obtained after an illegal one is admissible if it is demonstrated that, considering the totality of the circumstances, the chain of events has been broken so that the second confession is voluntary and is free of defects. 122 D.P.R. 287.

A second confession will be considered voluntary if the coercive effect of the first has been dissipated and the accused recovered his mental freedom to confess or deny participation in the crime. 122 D.P.R. 287.

Protection against self-incrimination does not extend to perjured testimony. Puerto Rico v. Angel Perez Casillas y Otros, 117 D.P.R. 380, 1986 PR Sup. LEXIS 132 (P.R.), cert. denied, Perez v. Puerto Rico, 479 U.S. 1013, 107 S. Ct. 661, 93 L. Ed. 2d 714, 1986 U.S. LEXIS 5234 (U.S. 1986).

Voluntary conversations of person with district attorneys at Police headquarters regarding felony committed where person insisted on waiting for distric t attorneys' arrival to tell story did not violate constitutional rights protecting said person against incrimination by his own testimony. El Pueblo de Puerto Rico v. Jorge L. Chaar Cacho, 109 D.P.R. 316, 1980 PR Sup. LEXIS 67 (P.R. 1980).

District attorney can validly take sworn deposition of secretary of counselor-at-law suspected of crime without violating right of suspect not to incriminate himself. El Pueblo de Puerto Rico v. Jorge L. Chaar Cacho, 109 D.P.R. 316, 1980 PR Sup. LEXIS 67 (P.R. 1980).

Constitutional right of suspect not to incriminate himself by his own testimony is of personal nature, and prohibits that person may be forced to testify against himself or to introduce and identify documents or personal effects that might tend to incriminate him. Such right is not extended to prohibit presentation in evidence of incriminating facts obtained without any need of compelling cooperation of person incriminated. El Pueblo de Puerto Rico v. Jorge L. Chaar Cacho, 109 D.P.R. 316, 1980 PR Sup. LEXIS 67 (P.R. 1980).

Courts, as a rule, except fingerprinting from application of self-incrimination clause of the Constitution. 1967 Op. Sec. Jus. No. 27.

No person can be compelled, in a criminal action, to be a witness against himself, and if the defendant does not testify, his silence shall not be taken into consideration or be commented upon against him. El Pueblo de Puerto Rico v. Eli Perales Figueroa., 92 P.R.R. 704, 1965 PR Sup. LEXIS 254 (P.R. 1965).

Rule 74 of the Rules of Criminal Procedure which requires advance notice to the prosecuting attorney of defendant's affirmative exculpatory defenses o f insanity and alibi does not bind the defendant to furnish evidence against h imself in violation of the constitutional provision which guarantees the defendant his constitutional right against self-incrimination. El Pueblo de Puerto Rico v. Tribunal Superior, Sala de San Juan., 92 P.R.R. 112, 1965 PR Sup. LEXIS 140 (P.R. 1965).

Statements supposedly made by the defendant during the investigation of a crime are admissible in evidence aside from the fact that appellant later deni ed having made said statements when what the evidence reveals is that the defe ndant, aware of his right to remain silent and without any physical coercion whatsoever while the prosecuting attorney examined him about the motives for the crime for no more than thirty minutes decided to make the statements attribute d to him. El Pueblo de Puerto Rico v. Tomas Diaz Diaz., 91 P.R.R. 737, 1965 PR Sup. LEXIS 159 (P.R. 1965).

It is incumbent on the judge and not on the jury to decide as a question of law and of fact whether the confessions made by a defendant, offered in evidence at the trial, are admissible. El Pueblo de Puerto Rico v. Raul Figueroa Garcia., 91 P.R.R. 707, 1965 PR Sup. LEXIS 154 (P.R. 1965).

A defendant's written confession made before the prosecuting attorney is admissible in evidence as in this case when from the face of the document i tself it appears that appellant testified 'subsequent to the pertinent legal w arnings made to me,-' and although said appellant testified during the tria l as to the involuntary character of his confession, he neither alleged nor tried to prove that the prosecuting attorney, at the time of taking his confession in writing, failed to make the pertinent legal warnings. El Pueblo de Puerto Rico v. Raul Figueroa Garcia., 91 P.R.R. 707, 1965 PR Sup. LEXIS 154 (P.R. 1965).

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

Alone or together, neither the unlawful detention of a defendant for many hours nor the deceit in confronting him with disguised police officers would be sufficient to vitiate the confession as unconstitutionally obtained. El Pueblo de Puerto Rico v. Jose Martinez Figueroa, 86 P.R.R. 390, 1962 PR Sup. LEXIS 361 (P.R. 1962); Puerto Rico v. Confesor Melendez Santos., 80 P.R.R. 759, 1958 PR Sup. LEXIS 152 (P.R. 1958).

When a member of the police is being subjected to an administrative investigation he could invoke the constitutional privilege of refusing to testify, if, because of his testimony, in addition to having administrative sanctions imposed on him, he could be processed criminally for a violation, but that does not relieve him from the administrative sanctions that the Superintendent of Police deems convenient to impose on him for refusing to testify; when the testimony carries only administrative sanction, no matter how severe, the privilege cannot be invoked. 1960 Op. Sec. Jus. No. 45.

The right against self-incrimination guaranteed by paragraph 3 of § 2 o f the Organic Act of 1917 is sanctioned in the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico paragraph 3, § 11, art. Miguel Cirilo Batalla v. Tribunal de Distrito de San Juan, 74 P.R.R. 266, 1953 PR Sup. LEXIS 140 (P.R. 1953).

The right against self-incrimination is waived by a defendant when he takes the stand in his own defense or in defense of a co-defendant or when he makes an extrajudicial confession voluntarily. Miguel Cirilo Batalla v. Tribunal de Distrito de San Juan, 74 P.R.R. 266, 1953 PR Sup. LEXIS 140 (P.R. 1953).

Where the extrajudicial confession of a defendant is obtained through coercion, threats, or promises of immunity, said confession as well as any other evidence discovered or obtained by the prosecuting officer as a result of the gaps opened by said confession is inadmissible in a prosecution against said defendant. Miguel Cirilo Batalla v. Tribunal de Distrito de San Juan, 74 P.R.R. 266, 1953 PR Sup. LEXIS 140 (P.R. 1953).

The right against self-incrimination includes not only the evidence which reveals the elements of the crime but also that evidence which assists the prosecuting officers in obtaining other proofs of the crime. Miguel Cirilo Batalla v. Tribunal de Distrito de San Juan, 74 P.R.R. 266, 1953 PR Sup. LEXIS 140 (P.R. 1953).

Self-incrimination, see also annotations under § 7 of Title 34.

Immunity from prosecution, see annotations under §§ 1476 1479 of Tit le 34.

**2. Jury trial.**

The essence of a jury trial is that the accused is judged by a group representative of the community in which he/she resides, so that the impartiality of the process is guaranteed. Puerto Rico v. Gilberto Rodriguez Zayas., 137 D.P.R. 792, 1995 PR Sup. LEXIS 181 (P.R. 1995).

The following preventive measures should be taken to ensure that jurors do not hear case with pre-formed opinion: (a) hold extensive and complete voir dire; (b) grant additional peremptory objections where necessary; (c) sequester the jury, and (d) provide careful and exhaustive instructions as to responsibility to render verdict based on evidence admitted at trial and not based on other information. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 752 (P.R. 1991).

A potential juror should not be disqualified by the simple fact of having read, seen or been exposed to any news; the person should be examined on how they were influenced by the news. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 752 (P.R. 1991).

The general norm is that the mere publication of newspaper articles regarding a trial does not prejudice by itself the constitutional guarantee of a fair trial; and news information that summarizes the evidence, eventhough there could be some errors, does not constitute prejudice. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 752 (P.R. 1991).

No one in Puerto Rico is constitutionally entitled to a jury trial in criminal cases. Santana v. Collazo, 533 F. Supp. 966, 1982 U.S. Dist. LEXIS 10757 (D.P.R. 1982), aff'd in part, vacated in part, 714 F.2d 1172, 1983 U.S. App. LEXIS 25225 (1st Cir.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 98 of 272

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

P.R. 1983).

Right to waiver trial by jury is not constitutionally protected. However, there may be cases where denial of right to be tried by judge may involve violation of right to a fair trial guaranteed by the federal Constitution and by this section. El Pueblo de Puerto Rico v. Freddie Borrero Robles., 113 D.P.R. 387, 1982 PR Sup. LEXIS 221 (P.R. 1982).

Selection of jury from community cross section is fundamental to right to jury trial. El Pueblo de Puerto Rico v. Jose A. Laboy., 110 D.P.R. 164, 1980 PR Sup. LEXIS 141 (P.R. 1980).

In administering justice, court cannot rely on ignorance of jurors, but rather on their integrity and seriousness of commitment to render verdict based only on evidence presented during trial, especially when, as in the case in question, evidence presented against defendant was of such trustworthy and convincing nature that it displaced during deliberations all other argument foreign to appreciation of evidence. El Pueblo de Puerto Rico v. Anthony J. Tursi., 105 D.P.R. 717, 1977 PR Sup. LEXIS 2114 (P.R. 1977).

Complaint from juror that, through a relative, undue influence in favor of defendant was attempted does not constitute error causing revocation of sentence, when sentencing judge analyzed the incident, without jurors present and with participation of district and defense attorneys, determined its triviality and ascertained that it had had no effect upon jury's impartiality, especially when case evidence was robust and sufficient and could not raise any inference that verdict was the product of prejudice and not of evidence. No indication of such thing happening in this case existed. El Pueblo de Puerto Rico v. Anthony J. Tursi., 105 D.P.R. 717, 1977 PR Sup. LEXIS 2114 (P.R. 1977).

In felony trial, defendant has the right to be judged by impartial jury. El Pueblo de Puerto Rico v. Luis Martin Aymat., 105 D.P.R. 528, 1977 PR Sup. LEXIS 1828 (P.R. 1977).

In the quantitative integration of a jury, neither Congress nor the state legislatures are restrained by the Sixth Amendment to the Constitution of the United States. El Pueblo de Puerto Rico v. Victor Baez Cintron., 102 D.P.R. 30, 1974 PR Sup. LEXIS 222 (P.R. 1974).

The right to trial by jury in felony cases is a right of constitutional stature in Puerto Rico. Gonzalez v. Delgado, 345 F. Supp. 1327, 1972 U.S. Dist. LEXIS 13637 (D.P.R. 1972).

Even though nowadays it is necessary for a felony defendant to expressly and personally waive his constitutional right to a trial by jury, there was no constitutional violation due to the fact that, at the time of defendant's prosec ution in June of 1960 on charge of first-degree burglary, a defense attorney in Puerto Rico could waive the right to trial by jury on behalf of his client; the fundamental requirement is that the waiver be done voluntarily and intelligently, and in this case there is nothing in the record which showed or suggested the contrary. Gonzalez v. Delgado, 345 F. Supp. 1327, 1972 U.S. Dist. LEXIS 13637 (D.P.R. 1972).

Whether the doctrine of the case of Baldwin v. New York, 399 U.S. 66 (1970) doctrine which limits the application of the right to trial by jury to offen ses whose maximum penalty exceeds six months in jail is applicable in this jur isdiction, see El Pueblo de Puerto Rico v. Inocencio Batista, 100 P.R.R. 219, 1971 PR Sup. LEXIS 182 (P.R. 1971).

The prerogative of a citizen to waive a constitutional right does not necessarily mean that said citizen may insist upon the opposite of that right. (Singer v. United States, 380 U.S. 24, 85 S. Ct. 783, 13 L. Ed. 2d 630, 1965 U.S. LEXIS 1730 (U.S. 1965).

After a criminal prosecution has commenced before a jury the defendant does not have an absolute right to waive that trial by jury and to insist on a trial by the court, the refusal of the judge sitting in the case to accept the waiver of the jury made by defendant not constituting a violation of the due process of law. El Pueblo de Puerto Rico v. Ismael Guzman Velez, 100 P.R.R. 196, 1971 PR Sup. LEXIS 179 (P.R. 1971).

A criminal prosecution having commenced before the jury, it is discretionary for the presiding judge to deny a motion from the defense waiving the jury and requesting that the prosecution be continued by the court without the jury. (People v. Rivera Suarez, 1967, 94 P.R.R. 485, followed.) El Pueblo de Puerto Rico v. Ismael Guzman Velez, 100 P.R.R. 196, 1971 PR Sup. LEXIS 179 (P.R. 1971).

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

The right to a jury trial in a civil action in the United States relies not on constitutional grounds but solely on statutory basis. Damian Garcia Mercado v. Tribunal Superior de Puerto Rico, Sala de San Juan., 99 P.R.R. 287, 1970 PR Sup. LEXIS 173 (P.R. 1970).

In this jurisdiction, a merchant marine, plaintiff in an action for damages for personal injuries suffered while navigating on board a vessel action fil ed under the authority of the provisions of the federal law known as the Jones Act of 1920 is not entitled to a trial by jury. Damian Garcia Mercado v. Tribun al Superior de Puerto Rico, Sala de San Juan., 99 P.R.R. 287, 1970 PR Sup. LEXIS 173 (P.R. 1970).

The People of Puerto Rico can eliminate the guaranty of jury trial of the Bill of Rights of the Puerto Rican Constitution through the amending process of said Constitution, without leave or authorization of the United States Congress. El Pueblo de Puerto Rico v. Basilio Figueroa Perez., 96 P.R.R. 6, 1968 PR Sup. LEXIS 118 (P.R. 1968).

A 'bill of attainder' statute which denies the right to a trial wher ein the affected persons may obtain an adjudication of their rights is a form used by the sovereign power to punish a named individual or ascertainable members of a group. El Pueblo de Puerto Rico v. Basilio Figueroa Perez., 96 P.R.R. 6, 1968 PR Sup. LEXIS 118 (P.R. 1968).

Under the legislation prior to the promulgation of the Constitution of Puerto Rico in 1952 date on which the right to trial by jury in cases of felony b ecame a constitutional right positive acts on the part of the defendant were r equired in cases where said right was proper in order that the trial be held before a jury. El Pueblo de Puerto Rico v. Florencio Rivera Suarez., 94 P.R.R. 485, 1967 PR Sup. LEXIS 247 (P.R. 1967).

A defendant must waive expressly and personally his right to trial by jury, the waiver to said right made solely through his counsel being ineffective. El Pueblo de Puerto Rico v. Florencio Rivera Suarez., 94 P.R.R. 485, 1967 PR Sup. LEXIS 247 (P.R. 1967).

A person accused of a crime shall be tried by twelve jurors, residents of his district. Jose Oscar Baez Montalvo v. Gerardo Delgado., 90 P.R.R. 594, 1964 PR Sup. LEXIS 294 (P.R. 1964).

The right of trial by jury guaranteed by the Constitution of the Commonwealth of Puerto Rico does not include any offense classified as a misdemeanor under the legislation enacted before said Constitution went into effect, which did not necessarily grant that right, despite the nature of the offense and the penalties provided by the law therefor. El Pueblo de Puerto Rico v. Manuel Matias Castro., 90 P.R.R. 515, 1964 PR Sup. LEXIS 283 (P.R. 1964); El Pueblo de Puerto Rico v. Leandro Miranda, 79 P.R.R. 667, 1956 PR Sup. LEXIS 215 (P.R. 1956).

The right to a speedy trial is not impaired if there is good cause for not submitting the defendant to a trial within the term of 120 days or if the defendant expressly or impliedly waives that right. El Pueblo de Puerto Rico v. Sala de Bayamon., 81 P.R.R. 874, 1960 PR Sup. LEXIS 69 (P.R. 1960).

Although trial by jury is now a constitutional right, it may be waived by defendant. El Pueblo de Puerto Rico v. Miguel Angel Palou Marquez., 80 P.R.R. 351, 1958 PR Sup. LEXIS 117 (P.R. 1958); El Pueblo de Puerto Rico v. Elvin Santiago Ramirez., 78 P.R.R. 64, 1955 PR Sup. LEXIS 161 (P.R. 1955).

Our Constitution converted the previous statutory right of trial by jury in felony cases into a constitutional right. Fournier v. Gonzalez., 80 P.R.R. 254, 1958 PR Sup. LEXIS 103 (P.R. 1958), aff'd, Fournier v. Gonzalez, 269 F.2d 26, 1959 U.S. App. LEXIS 3465 (1st Cir. P.R. 1959); El Pueblo de Puerto Rico v. Manuel Figueroa, 77 P.R.R. 175, 1954 PR Sup. LEXIS 351 (P.R. 1954), aff'd, Figueroa v. Puerto Rico, 232 F.2d 615, 1956 U.S. App. LEXIS 3068 (1st Cir. P.R. 1956).

The right to trial by jury in criminal cases is conferred by this section of the Constitution of the Commonwealth of Puerto Rico, and no rights under the federal laws of the U.S. Constitution are involved. Since this section contains no provision as to the waiver of the right, the provisions of 34 L.P.R.A. § 4 62 are still in effect, and waiver may be made by counsel. Figueroa v. Puerto Rico, 232 F.2d 615, 1956 U.S. App. LEXIS 3068 (1st Cir. P.R. 1956); Carrion v. Gonzalez, 125 F. Supp. 819 (1954), note on p. 921.

**2a. Fair and impartial.**

Mere publication of news items regarding trial does not violate right of accused to fair and impartial trial. Puerto Rico v. Maria de Lourdes Miranda Santiago., 130 D.P.R. 507, 1992 PR Sup. LEXIS 219 (P.R. 1992).

Every person accused of an offense has the right to have his guilt proven beyond a reasonable doubt in a fair, impartial and public trial and the presumption of innocence is part of due process of law. Puerto Rico v. Jose L. Torres Rivera., 129 D.P.R. 331, 1991 PR Sup. LEXIS 234 (P.R. 1991).

Where control of houses of prostitution constituted motive for murder, admission of evidence introduced by prosecution to demonstrate that defendant exploited such establishments did not violate his rights to a fair and impartial trial. El Pueblo de Puerto Rico v. Orlando Rios Alvarez, 112 D.P.R. 92, 1982 PR Sup. LEXIS 122 (P.R. 1982).

Fact that district attorney conducting investigation of criminal transactions and who did not participate in trial testified as witness for prosecution did not deprive defendant of fair and impartial trial, particularly when defendant voluntarily waived right to trial by jury and to introduce witnesses for his defense. El Pueblo de Puerto Rico v. Jorge L. Chaar Cacho, 109 D.P.R. 316, 1980 PR Sup. LEXIS 67 (P.R. 1980).

The guarantee of right to fair and impartial trial is the norm where guilty verdict for defendant must be based exclusively on evidence and arguments before court, the defendant having the right to be confronted by evidence against him and to be proved guilty by means of admissible evidence according to norms consecrated by experience of centuries in adversative process as to relevancy, trustworthiness and certainty of such evidence, and not by means of influences foreign to trial. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

An incident in the hearing of the instant case during the testimony of a witness is examined to conclude that the trial judge did not use the word 'now ' as an adverb of time meaning 'at this moment' but as a continuati ve conjunction to announce or introduce a thought of said judge, for which reason appellant was not deprived of an impartial trial. El Pueblo de Puerto Rico v. Tomas Diaz Diaz., 91 P.R.R. 737, 1965 PR Sup. LEXIS 159 (P.R. 1965).

### 3. Verdict.

In this jurisdiction, verdict agreed upon by majority of jurors where no less than nine members concur is valid. El Pueblo de Puerto Rico v. Irma Collazo Hiraldo., 105 D.P.R. 726, 1977 PR Sup. LEXIS 2115 (P.R. 1977).

In this jurisdiction, a verdict by majority of votes in which not less than nine members concur does not violate any constitutional provision whatsoever. El Pueblo de Puerto Rico v. Alfonso Dingui Ayala, 103 D.P.R. 528, 1975 PR Sup. LEXIS 1476 (P.R. 1975); People v. Baez Cintron, 102 D.P.R. 30 (1974).

The provision of the Constitution of Puerto Rico which provides that in prosecutions for felonies the accused has the right to trial by an impartial jury of 12 residents of the district who may render their verdict by a majority of the votes which, in no case, shall be less than nine, is constitutional. Torres v. Delgado, 510 F.2d 1182, 1975 U.S. App. LEXIS 16164 (1st Cir. P.R. 1975).

The Constitution of the United States does not impose greater restrictions upon Puerto Rico than it does on other states. Torres v. Delgado, 510 F.2d 1182, 1975 U.S. App. LEXIS 16164 (1st Cir. P.R. 1975).

In this jurisdiction, the verdict of a jury finding a defendant guilty by a majority of nine jurors out of 12 is valid. El Pueblo de Puerto Rico v. Jorge Ramon Girau., 102 D.P.R. 176, 1974 PR Sup. LEXIS 231 (P.R. 1974).

The requirement that a verdict of guilty should be unanimous is not fundamental to the federal constitutional right to trial by jury and, therefor this requirement does not apply to the courts of the Commonwealth of Puerto Rico whose Constitution permits, and whose rules provide, that a verdict of guilty may be less than unanimous. Torres v. Delgado, 391 F. Supp. 379, 1974 U.S. Dist. LEXIS 7763 (D.P.R. 1974), aff'd, 510 F.2d 1182, 1975 U.S. App. LEXIS 16164 (1st Cir. P.R. 1975).

Should it appear that a jury was prejudiced, its verdict is not valid and, therefor, can be nullified. Martinez v. Puerto Rico, 343 F. Supp. 897, 1972 U.S. Dist. LEXIS 15519 (D.P.R. 1972).

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

The fact that the jury's verdict finding some defendants guilty is not u nanimous, but was by a majority of not less than nine votes, does not constitute a violation of the due process of law guaranteed by the Constitution of the United States and by the Constitution of the Commonwealth of Puerto Rico. El Pueblo de Puerto Rico v. Candida Hernandez Soto., 99 P.R.R. 746, 1971 PR Sup. LEXIS 96 (P.R. 1971).

If the doctrine that a verdict not unanimously rendered by the jury is null and void were applicable to this jurisdiction, it is not available to defendant in the case at bar. El Pueblo de Puerto Rico v. Diomedes Domenech Melendez, 98 P.R.R. 63, 1969 PR Sup. LEXIS 205 (P.R. 1969); El Pueblo de Puerto Rico v. Jose Manuel Delgado Lafuente., 97 P.R.R. 260, 1969 PR Sup. LEXIS 142 (P.R. 1969).

In this jurisdiction, it is not required that the verdict of a jury be unanimous. El Pueblo de Puerto Rico v. Diomedes Domenech Melendez, 98 P.R.R. 63, 1969 PR Sup. LEXIS 205 (P.R. 1969); El Pueblo de Puerto Rico v. Gabriel Maldonado Dipini y Alberto de la Rosa Torres., 96 P.R.R. 874, 1969 PR Sup. LEXIS 103 (P.R. 1969).

The fact that the verdict of the jury finding defendant guilty of robbery is not unanimous does not constitute an infringement of the due process of law clause guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution. Puerto Rico v. Aponte Gonzalez., 83 P.R.R. 491, 1961 PR Sup. LEXIS 431 (P.R. 1961).

Verdict of guilty of murder in first degree, for which maximum sentence possible was life imprisonment, returned by less than a unanimous vote of jury was not a denial of due process of law guaranteed by Fifth Amendment to the Federal Constitution, and there was no constitutional guaranty of a unanimous jury verdict either before or after the approval in 1952 by Congress of the Constitution adopted by the people of Puerto Rico. Fournier v. Gonzalez, 269 F.2d 26, 1959 U.S. App. LEXIS 3465 (1st Cir. P.R. 1959).

Provisions of Constitution referring to enjoyment by accused in all criminal prosecutions of the right to be presumed innocent does not require a unanimous verdict when jury finds him guilty of a felony. Fournier v. Gonzalez., 80 P.R.R. 254, 1958 PR Sup. LEXIS 103 (P.R. 1958), aff'd, Fournier v. Gonzalez, 269 F.2d 26, 1959 U.S. App. LEXIS 3465 (1st Cir. P.R. 1959).

**4. Copy of complaint or information.**

The failure to deliver copy of the complaint filed against the defendant violates his constitutional right to be informed of the nature and cause of the accusation, in the absence of actual waiver of such right. Ramon Valentin Cruz v. Emilio Torres Marrero., 80 P.R.R. 450, 1958 PR Sup. LEXIS 157 (P.R. 1958).

Since right to receive a copy of information may be waived by defendant, same is actually waived if it is not seasonally asserted. Guillermo Flores v. Juan S. Bravo, 79 P.R.R. 476, 1956 PR Sup. LEXIS 192 (P.R. 1956).

See also annotations under § 11 of Title 34, note 8 and Rule 52, Title 34, App. II, note 104.

**4a. Contents of the accusation.**

The requirement of adequate notice of the charges presented is not met when the prosecutor is permitted to not allege the condition of recidivism in the accusation. 169 D.P.R. 360.

Subsections (b)(4) and (b)(5) of § 5204 of Title 9, in regards to exempti ng the prosecutor from alleging recidivism in the accusation, violates the procedural and substantive due process clause. 169 D.P.R. 360.

**5. Assistance of counsel.**

The filing of a motion for a new trial constitutes a discretionary recourse for which a right to assistance of counsel does not exist; 13 years after being found guilty, the petitioner was not at a critical stage of the criminal process with constitutional guarantees. Puerto Rico v. Luis A. Rivera Crespo., 167 D.P.R. 812, 2006 PR Sup. LEXIS 75 (P.R. 2006).

A motion for a new trial does not constitute a critical stage of the criminal process for which the assistance of counsel must

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

be provided. Puerto Rico v. Luis A. Rivera Crespo., 167 D.P.R. 812, 2006 PR Sup. LEXIS 75 (P.R. 2006).

A court-appointed counsel may not ask of the accused or his family for a certain amount of money to cover procedural costs. In re Garcia Munoz, 160 D.P.R. 744 (P.R. 2003).

An attorney violates professional ethics when he refuses to accept being named as a court-appointed counsel by the Court of First Instance and in doing so, unjustifiably, to offer his services to the court. In re Rodriguez Santiago, 157 D.P.R. 896, 2002 PR Sup. LEXIS 133 (P.R. 2002).

When an accused alleges ineffective assistance of counsel, the burden of proof initally falls on him. Puerto Rico v. Jose Bladimir Fernandez Simono, 140 D.P.R. 514, 1996 PR Sup. LEXIS 246 (P.R. 1996).

It is the right of every accused to have adequate legal representation. Puerto Rico v. Jose Bladimir Fernandez Simono, 140 D.P.R. 514, 1996 PR Sup. LEXIS 246 (P.R. 1996).

The right to effective or adequate legal representation may be infringed when: (a) the attorney is incompetent to perform the particular function at issue; (b) as a matter of fact the work performed demonstrates the ineffectiveness; (c) there is a potential or actual conflict of interests; and (d) the rulings or behavior of the court unreasonably limit the right to adequate assistance of counsel. Puerto Rico v. Gabriel Ortiz Couvertier., 132 D.P.R. 883, 1993 PR Sup. LEXIS 150 (P.R. 1993).

The right of an accused to legal assistance in the investigative stage has been recognized when this stage becomes accusatory, as well as during the reading of the indictment, during trial, at sentencing and upon appeal. Puerto Rico v. Gabriel Ortiz Couvertier., 132 D.P.R. 883, 1993 PR Sup. LEXIS 150 (P.R. 1993).

The right to counsel is violated where the accused indicates his desire to appeal and the attorney fails to do so without a reasonable excuse for the failure; this rule applies regardless of whether the attorney was employed by the accused or assigned by the court. Puerto Rico v. Gabriel Ortiz Couvertier., 132 D.P.R. 883, 1993 PR Sup. LEXIS 150 (P.R. 1993).

Defense of accused cannot be considered inadequate merely because evidence prejudicial to defendant was elicited during cross-examination of prosecution witness. Risk that evidence against defendant may be broadened and affirmed exists in all cross-examinations of prosecution witnesses. Puerto Rico v. Edwin F. Morales Suarez, 117 D.P.R. 497, 1986 PR Sup. LEXIS 142 (P.R. 1986).

Simple errors or mistakes on the part of defense attorney which do not affect trial's validity and which do not constitute basic erosion of due process do not justify reversal of sentence. Puerto Rico v. Edwin F. Morales Suarez, 117 D.P.R. 497, 1986 PR Sup. LEXIS 142 (P.R. 1986).

Incompetence which affects legal assistance to which the defendant has a right, as grounds for reversal of conviction, must be so extreme that it can be shown that it probably affected outcome of trial. Burden of proof to show inadequate assistance of counsel rests upon appellant. Puerto Rico v. Edwin F. Morales Suarez, 117 D.P.R. 497, 1986 PR Sup. LEXIS 142 (P.R. 1986).

Mistakes or errors of defense attorney cannot be raised on appeal as grounds for obtaining reversal of judgment or sentence barring malfeasance, fraud, physical or mental incapacity or clear, inexcusable and serious professional incompetence on part of said attorney. Puerto Rico v. Edwin F. Morales Suarez, 117 D.P.R. 497, 1986 PR Sup. LEXIS 142 (P.R. 1986).

In cases in which inadequate defense is alleged as grounds for reversing conviction, court of appeals must operate on presumption that defense attorney' s conduct lies within wide reach of the term 'reasonable legal assistance'. It rests with appellant to defeat presumption that attorney's contested action s be considered proper strategy given circumstances confronting attorney during trial. Puerto Rico v. Edwin F. Morales Suarez, 117 D.P.R. 497, 1986 PR Sup. LEXIS 142 (P.R. 1986).

Final criterion for adjudicating claim of inadequate representation should be whether attorney's performance so damaged adequate functioning of adversar ial system that it could not be said that trial had a just outcome. Puerto Rico v. Edwin F. Morales Suarez, 117 D.P.R. 497, 1986 PR Sup. LEXIS 142 (P.R. 1986).

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

Right to adequate legal assistance in criminal cases is part of due process of law. El Pueblo de Puerto Rico v. Basil Gordon, Fitzroy Curate y Renford Crossman., 113 D.P.R. 106, 1982 PR Sup. LEXIS 183 (P.R. 1982).

Where only one attorney represents two or more defendants with conflicting defenses, constitutional guarantee of adequate legal assistance is violated. El Pueblo de Puerto Rico v. Basil Gordon, Fitzroy Curate y Renford Crossman., 113 D.P.R. 106, 1982 PR Sup. LEXIS 183 (P.R. 1982).

Where right to adequate legal assistance was not validly waived, violation thereof should result in revocation of sentence. El Pueblo de Puerto Rico v. Basil Gordon, Fitzroy Curate y Renford Crossman., 113 D.P.R. 106, 1982 PR Sup. LEXIS 183 (P.R. 1982).

Wherever two or more defendants are tried together or joinder of cases has been ordered and they are under one and same counsel, trial court should promptly investigate regarding joint representation, and inform defendants of their right to adequate individual representation, unless there are sufficient grounds to believe that there should be no conflict of interest among them. El Pueblo de Puerto Rico v. Basil Gordon, Fitzroy Curate y Renford Crossman., 113 D.P.R. 106, 1982 PR Sup. LEXIS 183 (P.R. 1982).

In case at bar where three persons were jointly charged with felony, o ne and only counselor represented all, one defendant testified on his own behalf and pleaded not guilty for reasons of entrapment thus involving codefendants in admission of performance of criminal activities, and jury did not give any credit to said defense adequate legal representation right of defendants who did not testify was violated; therefore, sentences should be reversed. El Pueblo de Puerto Rico v. Basil Gordon, Fitzroy Curate y Renford Crossman., 113 D.P.R. 106, 1982 PR Sup. LEXIS 183 (P.R. 1982).

The Escobedo Rule is not retroactive. Pagan Cancel v. Delgado, 408 F.2d 1018, 1969 U.S. App. LEXIS 13163 (1st Cir. 1969).

Where petitioner surrendered to the police and subsequently confessed to the commission of the crime of murder to a justice of the peace, said appearance before the magistrate was not a 'critical stage' and he did not necessitate appointment of counsel. Pagan Cancel v. Delgado, 408 F.2d 1018, 1969 U.S. App. LEXIS 13163 (1st Cir. 1969).

The constitutional guaranty of the due representation by counsel during a criminal proceeding is extensive to the pronouncement of sentence. El Pueblo de Puerto Rico v. Benito Delgado Martinez., 96 P.R.R. 703, 1968 PR Sup. LEXIS 201 (P.R. 1968).

In this jurisdiction it is not necessary for the defendant to show that lack of legal assistance at the pronouncement of sentence prejudiced him. El Pueblo de Puerto Rico v. Benito Delgado Martinez., 96 P.R.R. 703, 1968 PR Sup. LEXIS 201 (P.R. 1968).

The court's action in pronouncing sentence against defendant, without th e latter being duly assisted by counsel, violates defendant's constitutional r rights to a due process of law and therefore said sentence is null. El Pueblo de Puerto Rico v. Benito Delgado Martinez., 96 P.R.R. 703, 1968 PR Sup. LEXIS 201 (P.R. 1968).

The pronouncement of a sentence being void because defendant was not duly assisted by counsel, it is proper to remand the case for the pronouncement of new sentence with the constitutional guaranty of legal assistance which protects the defendant. El Pueblo de Puerto Rico v. Benito Delgado Martinez., 96 P.R.R. 703, 1968 PR Sup. LEXIS 201 (P.R. 1968).

When the preliminary investigation of a crime shifts to accusatory and is focused on a particular suspect for the purpose of eliciting a confession, the adversary process of our system of criminal procedure begins to operate, there arising the obligation of the police or other competent authority to warn the suspect of his constitutional right to remain silent and not to incriminate himself, and of his constitutional right to have then and there assistance of counsel and to be permitted to have it. Fernando Rivera Escute v. Gerardo Delgado., 92 P.R.R. 746, 1965 PR Sup. LEXIS 260 (P.R. 1965).

Where, as in this jurisdiction, to furnish counsel to a suspect of having committed a crime is a constitutional requisite, the right to be furnished counsel does not depend on a request from said defendant. Fernando Rivera Escute v. Gerardo Delgado., 92 P.R.R. 746, 1965 PR Sup. LEXIS 260 (P.R. 1965).

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

In determining whether or not a defendant had adequate legal aid at the trial, the courts should not apply instrumental rules on the minimum prejudice or service to defendant, but they should analyze the circumstances of each particular case to reach a final conclusion on said point. Bernardino Negron Villavicencio v. Victor M. Garcia., 92 P.R.R. 173, 1965 PR Sup. LEXIS 147 (P.R. 1965).

A defendant is deprived of his right to the assistance of counsel and consequently no confession or statement presented by him can be used against him by the State in a criminal trial where the police investigation is no longe r a general inquiry into an unsolved crime but has begun to focus on the defendant in particular and that defendant has been taken into police custody, and he is examined to elicit from him incriminating statements, and said defendant has requested and has been denied the opportunity to consult a lawyer, and the State did not effectively warned him of his absolute constitutional right to remain silent. El Pueblo de Puerto Rico v. Raul Figueroa Garcia., 91 P.R.R. 707, 1965 PR Sup. LEXIS 154 (P.R. 1965).

A defendant is not deprived of his right to assistance of counsel when an extrajudicial verbal confession is produced and, therefore, the same, as in this case, is admissible in evidence when: (a) the said confession is volunt arily made at police headquarters while the detective was making a general investigation to determine whether the death of a man was accidental or whether it was a murder said investigation not being directed against the defendant or ag ainst any other person as suspect of the commission of a crime; (b) said defendant later repeats his oral confession the same day in another town before a witness; (c) on the night of that same day he makes his written confession before the prosecuting attorney; (d) the state did not refuse defendant's request to eng age counsel; and (e) the absence of assistance of counsel in the examination in private prior to the trial, did not prejudice him in such a manner that such absence of assistance of counsel would infect his subsequent trial with 'an absen ce of that fundamental fairness essential to the very concept of justice'. El Pueblo de Puerto Rico v. Raul Figueroa Garcia., 91 P.R.R. 707, 1965 PR Sup. LEXIS 154 (P.R. 1965).

A defendant cannot appear for trial three and one-half months after the day of the occurrence and 31 days after the arraignment, without engaging an attorney, and obtain for that reason a free attorney designated by the court who makes a diligent and adequate defense and then move for a new trial alleging that he did not have assistance of counsel. El Pueblo de Puerto Rico v. Jose Ernesto Pardo Toro., 90 P.R.R. 618, 1964 PR Sup. LEXIS 298 (P.R. 1964).

The constitutional guarantee of legal assistance does not extend to a motion to set aside a judgment when, to support the allegations contained in said motion, no evidence is necessary and the grounds to support said petition are clearly and precisely set forth therein. El Pueblo de Puerto Rico v. Carlos Huertas Soto., 90 P.R.R. 165, 1964 PR Sup. LEXIS 210 (P.R. 1964).

To sentence a defendant without the latter having legal assistance at the time he is sentenced constitutes a violation of due process of law. Manuel Reyes Oyola v. Gerardo Delgado., 81 P.R.R. 906, 1960 PR Sup. LEXIS 70 (P.R. 1960).

### 6. Adverse publicity.

Burden falls on accused to show that newspaper publicity was of such a type that it violated his right to fair trial. Puerto Rico v. Rafael Moreno Morales., 132 D.P.R. 261, 1992 PR Sup. LEXIS 329 (P.R. 1992).

The appropriate inquiry in a trial subjected to a lot of publicity is to determine the mental state of the jury; what is truly important is not whether the jury knew or remembered the case from the news stories, but whether they can adjudicate impartially. Puerto Rico v. Rafael Moreno Morales., 132 D.P.R. 261, 1992 PR Sup. LEXIS 329 (P.R. 1992).

Mere publication of newspaper articles referring to criminal trial does not in itself violate constitutional guarantee to due process even though articles may contain inaccuracies. Pueblo v. Echevarria, II, 128 D.P.R. 752 (1991).

A potential juror should not be disqualified by the simple fact of having read, seen or been exposed to any news; the person should be examined on how they were influenced by the news. Pueblo v. Echevarria Rodriguez, II, 128 D.P.R. 752 (1991).

Mere publication of news about trial does not violate per se constitutional right of defendants to fair and impartial trial. El Pueblo de Puerto Rico v. Jose Luis Lebron Gonzalez., 113 D.P.R. 81, 1982 PR Sup. LEXIS 182 (P.R. 1982).

Defendant has burden of affirmative and satisfactory proof that published news regarding case was of such nature that

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

deprived him of a fair and impartial trial. El Pueblo de Puerto Rico v. Jose Luis Lebron Gonzalez., 113 D.P.R. 81, 1982 PR Sup. LEXIS 182 (P.R. 1982).

In case at bar where essential witness was murdered during trial publication of news thereof was neither biased, inflammatory, derogative nor intense to a degree that could have been construed as creating an atmosphere of passion against the defendant. El Pueblo de Puerto Rico v. Jose Luis Lebron Gonzalez., 113 D.P.R. 81, 1982 PR Sup. LEXIS 182 (P.R. 1982).

Fact that criminal case received much publicity did not establish by itself error committed in trial or prejudice automatically created against defendant. El Pueblo de Puerto Rico v. Jorge L. Chaar Cacho, 109 D.P.R. 316, 1980 PR Sup. LEXIS 67 (P.R. 1980).

Publicity adverse to defendant displayed by press regarding other crimes allegedly committed by him, totally unrelated to violations of tax laws under which he was indicted, did not deprive such defendant of fair and impartial trial, when he had ample opportunity during the voir dire to examine the candidates and those finally accepted showed no prejudice against him. El Pueblo de Puerto Rico v. Anthony J. Tursi., 105 D.P.R. 717, 1977 PR Sup. LEXIS 2114 (P.R. 1977).

In this jurisdiction where territory is reduced and population is comp act, served by communication media of maximum effectiveness a court has no a bsolute possibility of impaneling a jury totally ignorant of any detail about the life of a defendant when he, as it happens in this case, has reached a high connotation as a public figure. El Pueblo de Puerto Rico v. Anthony J. Tursi., 105 D.P.R. 717, 1977 PR Sup. LEXIS 2114 (P.R. 1977).

When defense attorney read journalistic report to jury during second day of trial with intention of setting grounds to ask jury on voir dire if, based on such report, they considered defendant 'immoral' question that sentencin g judge never allowed in such form if none of the jurors expresses that info rmation revealed by attorney would affect in any way his determination to resolve with objectivity, such action of sentencing judge not allowing such question does not violate rights of defendant to fair and impartial trial, nor did judge err when qualifying question of defense attorney, addressing it to what effect, if any, would the news have on equanimity and impartiality of jury to judge free of prejudice. El Pueblo de Puerto Rico v. Anthony J. Tursi., 105 D.P.R. 717, 1977 PR Sup. LEXIS 2114 (P.R. 1977).

Information published by newspapers regarding evidence presented in court and summarizing it faithfully without any other information that jury had not heard or seen before did not violate constitutional rights of defendant to fair and impartial trial when jury found him guilty as charged. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

Publicity concerning a trial is useful and desirable for it offers the general public opportunity of finding out what goes on in courts and to build responsible opinions essential in the correction of any abuse, corruption or deficiency in investigative procedures used by police or district attorneys, or in the imposition of sanctions by courts. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

Journalistic summaries containing trivial comments, which faithfully abstract what the jury saw and heard in the courtroom, could not constitute grounds for the defendant to request presiding judge through new trial motion to conduct investigation on jury to determine the effect of such journalistic information upon it. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

Mere publication of information about court procedure accused was subjected to did not constitute violation of his rights to a just and impartial trial. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

In order to establish in court that publicity about case prejudiced right of accused to fair and impartial trial, he must prove the possibility of such prejudice, which depends fundamentally on the nature of the journalistic information and degree of exposure of jury to it. Possibility of prejudice arises when press reveals facts that have not been sifted in trial and, therefore, accused has not had opportunity to confront those facts in adversative process. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

Massive newspaper information about case on trial, which is biased, inflammatory or so intense as to reasonably suggest an

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

atmosphere of passion against accused, violates his rights to a fair and impartial trial. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

The opinion relates cases in which published journalistic information about criminal trial constituted or not prejudice to the defendant, violating his constitutional rights to a fair and impartial one. El Pueblo de Puerto Rico v. Rafael Perez Santaliz., 105 D.P.R. 10, 1976 D.P.R. 2533, 1976 PR Sup. LEXIS 2533 (P.R. 1976).

**6a. Pro se representation.**

The court of instance erred in disallowing the accused to represent himself pro se because the decision to defend oneself was informed and intelligent, and that was communicated in an express and unequivocal manner, the accused had not requested an hybrid representation or an attorney of his choosing, the accused had shown his capacity to represent himself in previous proceedings, and the accused was neither illiterate nor uneducated. Puerto Rico v. Juan Manuel Cruzado Laureano., 161 D.P.R. 840, 2004 PR Sup. LEXIS 77 (P.R. 2004).

**7. Cross-examination.**

Constitutional right of confrontation is met where witness is not available at trial if, at pre-trial declaration, accused had opportunity to cross-examine said witness. Puerto Rico v. Eduardo De Jesus Ayuso., 119 D.P.R. 21, 1987 PR Sup. LEXIS 133 (P.R. 1987).

**8. Double jeopardy.**

Where respondents pled guilty to federal gun trafficking violations, dismissal of pending Commonwealth of Puerto Rico charges was proper under the dual-sovereignty carved-out from the Double Jeopardy Clause because the Double Jeopardy Clause bars both Puerto Rico and the United States from prosecuting a single person for the same conduct under equivalent criminal laws; the Commonwealth and the United States are not separate sovereigns, because the ultimate source of Puerto Rico's prosecutorial power is the Federal Government. Puerto Rico v. Sanc hez Valle, 136 S. Ct. 1863, 195 L. Ed. 2d 179, 2016 U.S. LEXIS 3773 (U.S. 2016).SUPREME COURT OF THE UNITED STATES

The concept of res judicata in its modality of collateral estoppel by sentence applies to an impugnation of a confiscation to the extent that there was a dismissal of the accusations against a property owner for failure to fulfill the right to a speedy trial, and the Prosecutor did not present new charges. Suarez v. E.L.A., 162 D.P.R. 43 (2004).

Constitutional guarantee against double jeopardy is not an absolute prohibition of multiple trials; consent of accused to a void trial in the first proceeding acts as a waiver of said right. United States v. Aguilar-Aranceta, 957 F.2d 18, 1992 U.S. App. LEXIS 2207 (1st Cir. P.R.), cert. denied, 506 U.S. 834, 113 S. Ct. 105, 121 L. Ed. 2d 64, 1992 U.S. LEXIS 5815 (U.S. 1992), abrogated in part, Yeager v. United States, 557 U.S. 110, 129 S. Ct. 2360, 174 L. Ed. 2d 78, 2009 U.S. LEXIS 4538 (U.S. 2009).

Fact that defendants were accused of same offense in federal court does not give rise to double jeopardy. Puerto Rico v. Ramon Castro Garcia, 120 D.P.R. 740, 1988 PR Sup. LEXIS 138 (P.R. 1988), overruled, Pueblo v. Sanchez Valle et al., 192 D.P.R. 594, 2015 PR Sup. LEXIS 23 (P.R. 2015).

An appeal by the government does not place defendant twice in jeopardy if, upon remand, the same case is continued against him, especially if no additional evidence for the prosecution is brought. El Pueblo de Puerto Rico v. Tribunal Superior., 104 D.P.R. 626, 1976 PR Sup. LEXIS 2036 (P.R. 1976).

Upon reversal and remand of a judgment reviewed through certiorari because it was not grounded on the merits, defendant is not subject to a second trial if the error can be corrected without resorting to further proceedings. Hence, the constitutional guarantee against the risk of being placed twice in jeopardy is not violated. El Pueblo de Puerto Rico v. Tribunal Superior., 104 D.P.R. 626, 1976 PR Sup. LEXIS 2036 (P.R. 1976).

The double jeopardy clause of the Fifth Amendment of the Constitution of the United States is designed to equalize the

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

position of the government and of the individual, and to discourage the excessive and abusive use of the awesome powers of society. El Pueblo de Puerto Rico v. Tribunal Superior., 104 D.P.R. 626, 1976 PR Sup. LEXIS 2036 (P.R. 1976).

The fundamental constitutional guarantee of the Constitution of the United States which prohibits that a defendant be twice put in jeopardy of punishment for the same offense applies to the States through the Fourteenth Amendment of the said Constitution. Carlos Lugo Figueroa v. Tribunal Superior de Puerto Rico, Sala de Humacao., 99 P.R.R. 239, 1970 PR Sup. LEXIS 163 (P.R. 1970).

The action of a judge in discharging the jury because inadvertently information in which subsequent offenses committed by said defendant were included had been passed to the jury which action in the exercise of his sound discretio n, he believed was injurious to appellant is not a capricious, unjustified o r unnecessary action as to constitute a violation of this section which forbids that a person be put twice in jeopardy for the same offense. El Pueblo de Puerto Rico v. Manuel Arteaga Torres., 93 P.R.R. 146, 1966 PR Sup. LEXIS 91 (P.R. 1966).

A trial may be discontinued and the jury discharged without the consent of defendant or even over his objection, in which case a second prosecution for the same offense would not for that fact alone violate the constitutional guarantee contained in this section, when there are circumstances in which the ends of substantial justice cannot be attained and there is a manifest necessity for so doing, or the ends of justice would otherwise be defeated. El Pueblo de Puerto Rico v. Manuel Arteaga Torres., 93 P.R.R. 146, 1966 PR Sup. LEXIS 91 (P.R. 1966).

The fact that the State files two informations for involuntary manslaughter against a defendant who has caused the death of two persons as a result of a single automobile accident, while operating the car with negligence, carelessness, unskillfulness or wanton recklessness, lack of circumspection, or for any other act or conduct which is not intentional, malicious or deceitful, does not violate the constitutional prohibition of double jeopardy for the same offense. El Pueblo de Puerto Rico v. Luis Manuel Matos Pretto., 93 P.R.R. 111, 1966 PR Sup. LEXIS 87 (P.R. 1966).

The plea of former jeopardy for the same offense is only available to defendant in the district court in which the former trial was held. Jose Oscar Baez Montalvo v. Gerardo Delgado., 90 P.R.R. 594, 1964 PR Sup. LEXIS 294 (P.R. 1964).

In Puerto Rico no person shall be twice put in jeopardy of punishment for the same offense. Ramon Otilio Soto v. Tribunal Superior de San Juan., 90 P.R.R. 505, 1964 PR Sup. LEXIS 282 (P.R. 1964); El Pueblo de Puerto Rico v. Hipolito Rivera Ramos., 88 P.R.R. 593, 1963 PR Sup. LEXIS 383 (P.R. 1963).

Where a defendant has been accused of an offense, if at the trial before a jury the judge orders the latter to render a verdict of acquittal because there was a variance between the information and the evidence, and after that a new information is filed against said person for the same offense, defendant's acqu ittal in the first case does not bar the second trial if such variance was of such nature as to make a conviction in the first information legally impossible, that is, said defendant was never jeopardized in the first proceeding but, if said variance was immaterial and insubstantial that is, defendant could hav e been convicted in the first proceeding on the evidence introduced the firs t acquittal was a bar to the second trial against said defendant. Ramon Otilio Soto v. Tribunal Superior de San Juan., 90 P.R.R. 505, 1964 PR Sup. LEXIS 282 (P.R. 1964).

Under the circumstances of this case, the appeal or any other remedy, if authorized by law, taken by The People to review in the Superior Court judgments of acquittal entered by the District Court does not encroach the constitutional rights of the defendant and particularly his privilege of not being put twice in jeopardy. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de San Juan., 81 P.R.R. 740, 1960 PR Sup. LEXIS 63 (P.R. 1960).

### 9. Imprisonment prior to trial.

Defendant who is incarcerated, in default of bail, while awaiting trial has right to be released at end of six months after his imprisonment without having been tried. Bonifacio Sanchez Alvarez v. Balbino Gonzalez., 78 P.R.R. 808, 1955 PR Sup. LEXIS 268 (P.R. 1955).

The fact that incarceration of a person prior to trial for more than six months is illegal in itself does not mean that the prosecution cannot be carried through after said period expires or that defendant is exonerated from the crime. El Pueblo de Puerto Rico v. Eladio Ortiz Bonilla., 76 P.R.R. 231, 1954 PR Sup. LEXIS 202 (P.R. 1954).

### 9a. Psychiatric hospital.

The protection regarding the maximum term of 6 months of preventative detention is not applicable to an accused declared unfit to stand trial and is in a psychiatric hospital. Ramon Ruiz Ramos v. Alcaide Penitenciaria Estatal de Rio Piedras, 155 D.P.R. 492, 2001 PR Sup. LEXIS 147 (P.R. 2001).

### 10. Defendant's silence.

Cross examination by prosecution regarding silence of defendant during police investigation about facts testified thereby during trial, where no decisive effect in verdict was exerted, did not constitute error requiring reversal. El Pueblo de Puerto Rico v. Orlando Rios Alvarez, 112 D.P.R. 92, 1982 PR Sup. LEXIS 122 (P.R. 1982).

Right not to testify and not to have silence held against oneself applies to defendants who refuse to take the witness stand as well as to defendants who agree to take it, and also applies to the police investigation phase and to the preliminary hearing. El Pueblo de Puerto Rico v. Javier Gonzalez Colon., 110 D.P.R. 812, 1981 PR Sup. LEXIS 107 (P.R. 1981).

Right of defendant to remain silent during trial and investigation cannot be held against him neither as admission of guilt nor as grounds to challenge credibility. El Pueblo de Puerto Rico v. Javier Gonzalez Colon., 110 D.P.R. 812, 1981 PR Sup. LEXIS 107 (P.R. 1981).

Prosecution comments regarding silence of defendant during investigative phase, when such defendant was not even considered suspect of crime committed, did not violate constitutional right to remain silent. El Pueblo de Puerto Rico v. Javier Gonzalez Colon., 110 D.P.R. 812, 1981 PR Sup. LEXIS 107 (P.R. 1981).

A prosecuting attorney was not commenting on defendant's silence when sa id officer was merely making reference to facts which were part of the crime, a legal function of said officer. El Pueblo de Puerto Rico v. William Ortiz Rodriguez, 103 D.P.R. 368, 1975 PR Sup. LEXIS 1595 (P.R. 1975).

A prosecuting attorney does not comment on defendant's silence during th e trial because of the fact that in his closing argument to the jury he stated that: 'The defense has not presented a bit of evidence,' when he referred, no t to the fact that defendant had not taken the witness stand, but to the evidence to impeach a witness for the People, who was charged with being a drug addict. El Pueblo de Puerto Rico v. Felipe Lopez Camacho, 98 P.R.R. 687, 1970 PR Sup. LEXIS 63 (P.R. 1970).

A prosecuting attorney is not justified, while a criminal prosecution is being held, to refer to defendant's silence during the preliminary hearing beca use of the fact that he chose to testify in his own defense on the day of the trial. El Pueblo de Puerto Rico v. Mario Esquilin Paris, 98 P.R.R. 494, 1970 PR Sup. LEXIS 94 (P.R. 1970).

While a criminal prosecution is being held, the prosecuting attorney is not justified in stressing in his cross-examination the fact that defendant did not raise the defense of alibi during the investigation nor during the preliminary hearing. El Pueblo de Puerto Rico v. Mario Esquilin Paris, 98 P.R.R. 494, 1970 PR Sup. LEXIS 94 (P.R. 1970).

The fact that the prosecuting attorney interrogates defendant during the course of his testimony in the corresponding criminal prosecution in which th e latter had alleged the defense of alibi as to the reason why he had not in formed the police nor later the judge who held the preliminary hearing as to the place where he was on the day when the criminal acts for which he was accused occurred, said officer having also commented on his argument to the jury about the attitude of said defendant in failing to present any theory for defense whatsoever when he was under arrest and during the preliminary hearing, constitutes a violation prejudicial to the constitutional right of a defendant to remain silent which justifies the reversal of the judgment rendered particularly when the trial judge refused to transmit certain special instructions to the jury requested by the defense, which possibly could have cured the error. El Pueblo de Puerto Rico v. Mario Esquilin Paris., 96 P.R.R. 404, 1968 PR Sup. LEXIS 164 (P.R. 1968).

The fact that the prosecuting attorney, in addressing the jury in his rebuttal, suggests or insinuates motivations for defendant's silence, or produces explanations regarding it on the basis of a hypothetical certainty of the evidence of The People,

susceptible of being ultimately construed as a demonstration of guilt, or capable of disturbing the serenity or equanimity of the jury constitutes a violation prejudicial to defendant's right to remain silent which justifies the reversal of the judgment and the granting of a new trial. El Pueblo de Puerto Rico v. Eli Perales Figueroa., 92 P.R.R. 704, 1965 PR Sup. LEXIS 254 (P.R. 1965).

Where in the course of the investigation of the commission of an offense an imputation connected with the commission thereof is made to defendant, and the latter does not remain silent but categorically denies the commission of the offense and explains his relations with the victim which denial was brought th rough the testimony of a prosecution witness defendant may not allege that h is constitutional right that his silence shall not be commented on was violated. El Pueblo de Puerto Rico v. Raul Couret Martinez., 89 P.R.R. 56, 1963 PR Sup. LEXIS 411 (P.R. 1963).

From an examination of the evidence in this case we conclude that no comment was made therein on the accused's silence, particularly since the judge cha rged the jury properly on defendant's right not to testify at the trial as wel l as on the district attorney's duty to prove beyond reasonable doubt defendan t's guilt with his evidence, without defendant's need to present any evidence. El Pueblo de Puerto Rico v. Armando Delgado Vega., 88 P.R.R. 585, 1963 PR Sup. LEXIS 381 (P.R. 1963).

When a court is of the opinion that the prosecuting attorney has erred in commenting indirectly the silence of the defendant said official remarking t hat: 'Let the defendant answer, if he can, what reasons had Puro Perez for be ing his enemy' this is cured if the judge proceeds immediately to order th e statements of the prosecuting attorney to be stricken from the record and to instruct the jury specifically not to take into account said statements, and informs the jury that the defendant is not obliged to take the stand and testify, and that if he does not take the stand, his silence must not be taken into consideration, indicating to the jury that the prosecuting attorney has the obligation to prove his case beyond a reasonable doubt, without the defendant having to testify, especially when, in view of the circumstances in the case, the comment impeached by the defense does not actually constitute a comment on the silence of the defendant. El Pueblo de Puerto Rico v. Trinidad Verdejo Melendez., 88 P.R.R. 202, 1963 PR Sup. LEXIS 329 (P.R. 1963); El Pueblo de Puerto Rico v. Bonifacio Diaz Rios., 69 P.R.R. 577, 1949 PR Sup. LEXIS 222 (P.R. 1949).

Had this Court and the parties understood that the prosecuting attorney erred upon commenting indirectly on the silence of the defendant when said off icial remarked that '.. the defendant is here to say it, if he wants to say it-' this is cured if immediately after the defense moved for a 'mistr ial' on that ground, the judge immediately proceeds to instruct the jury speci fically on the right of the defendant to abstain from testifying, and that by no means should they consider in their deliberations the fact that the defendant would not have testified or offered to in his defense, and vigorously reproaches the prosecuting attorney for the remark he made, the judge repeating said concepts in his general instructions, especially since the remark of the prosecuting attorney does not actually refer directly, nor may it be inferred therefrom, that any insinuation was made as to the silence of the defendant. El Pueblo de Puerto Rico v. Modesto Cotto Torres., 88 P.R.R. 22, 1963 PR Sup. LEXIS 306 (P.R. 1963).

In this jurisdiction, any comment on the defendant's silence is proscrib ed. Nicolas Reyes v. Tribunal Superior de Puerto Rico, Sala de San Juan., 84 P.R.R. 27, 1961 PR Sup. LEXIS 488 (P.R. 1961).

See also annotations under § 1171 of Title 34, note 8a and Rule 137, Ti tle 34, App. II, notes 2 and 78.

**11. Presumption of innocence.**

This section makes mandatory the presumption of innocence of every accused. El Pueblo de Puerto Rico v. Juan Alberto Rodriguez., 91 P.R.R. 150, 1964 PR Sup. LEXIS 357 (P.R. 1964).

Where in a criminal case the record is silent on whether or not defendant entered a plea of not guilty, but he was present during the trial and was represented by his attorney, announced that he was ready to enter and did enter trial, cross-examined the prosecution witness and presented defense evidence, this Court will conclude that the error of having failed to enter any plea, if it be so, did not prejudice defendant in his rights. El Pueblo de Puerto Rico v. Juan Alberto Rodriguez., 91 P.R.R. 150, 1964 PR Sup. LEXIS 357 (P.R. 1964).

In every criminal prosecution the defendant must enjoy the presumption of innocence which is a right arising under constitutional authority. El Pueblo de Puerto Rico v. Carlos Noel Ortiz Morales, 86 P.R.R. 431, 1962 PR Sup. LEXIS 365

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

(P.R. 1962).

This section sanctioned as a constitutional provision the statutory presumption of innocence contained in § 715 of Title 34, therefore, § 726 of said title should not be construed to the effect that once it is proven that a defendant has committed illegal death, there exists a presumption of law that he acted with malice aforethought and committed a murder. El Pueblo de Puerto Rico v. Arcadio Tua Cintron., 84 P.R.R. 37, 1961 PR Sup. LEXIS 489 (P.R. 1961).

**12. Speedy trial.**

The right to a speedy trial does not extend to the period that occurs between the first rejection and the new charges under Rule 67, App. II of Title 34. El Pueblo de Puerto Rico v. Carrion Rivera, 159 D.P.R. 633, 2003 PR Sup. LEXIS 104 (P.R. 2003).

Dismissal of a contempt charge is sustained against the plaintiff by the Court of First Instance because the plaintiff had the right to trial during the 60-day term but with respect to other crimes the state had a 120-day term. 157 D.P.R. 136.

Right to speedy trial does not apply until the accused is detained or held to answer; that is, when he is obligated to respond to an indictment or exposed to possible conviction. Puerto Rico v. Carlos Miro Gonzalez, 133 D.P.R. 813, 1993 PR Sup. LEXIS 258 (P.R. 1993).

Failure of attorney to claim speedy trial right for client while knowing that schedule set by court fell beyond term required by law constitutes waiver of right to speedy trial. Puerto Rico en interes de R.G.G., 123 D.P.R. 443, 1989 PR Sup. LEXIS 90 (P.R. 1989).

In order that the continuance of a proceeding for lack of a witness is not understood as violative of the right to a speedy trial, the State is obligated to demonstrate that the witness is material and that the prosecutor was diligent in obtaining the appearance of the witness. Puerto Rico en interes de R.G.G., 123 D.P.R. 443, 1989 PR Sup. LEXIS 90 (P.R. 1989).

The constitutional guarantee of a speedy trial is extended and applies to all proceedings of the preliminary hearing under Rule 23 or Rule 24 of the Rules of Criminal Procedure, App. II of Title 34. People v. Rivera Colon, 119 D.P.R. 315 (1987).

Question of whether right to speedy trial has been infringed is by nature of question of fact. Puerto Rico v. Francisco Rivera Tirado, 117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

To evaluate claims of violation of right to speedy trial, four criteria should be examined in conjunction with other pertinent circumstances. These criteria are: (1) duration of delay; (2) reasons for delay; (3) whether defendant opportunely invoked right to speedy trial, and (4) damage resulting from delay. None of these factors is alone determinant and all must be weighed in the balance. Puerto Rico v. Francisco Rivera Tirado, 117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

Although no period is prescribed in penal procedures for deciding a criminal case on its merits, as a general rule trial should progress without interruptions. This rule, known as the principle of unity and concentration of trial, exists to ensure that trial be, whenever possible, one and continuous throughout the consecutive sessions necessary to conclude it. Puerto Rico v. Francisco Rivera Tirado, 117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

Neither a fixed nor uniform term may be established a priori for a full trial. Puerto Rico v. Francisco Rivera Tirado, 117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

Any continuance or postponement of trial must be justified, and of the shortest possible duration. Puerto Rico v. Francisco Rivera Tirado, 117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

Congestion of cases before the courts, in and of itself, does not constitute just cause for infractions of right to speedy trial. Said right cannot be undermined by reasons such as insufficient human and budgetary resources. Puerto Rico v. Francisco Rivera Tirado, 117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

Absence of a timely objection to unjustified continuances can constitute, along with other factors to be considered, an impediment to successful invocation on appeal of violation of right to speedy trial.

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

117 D.P.R. 419, 1986 PR Sup. LEXIS 137 (P.R. 1986).

Defendant's right to speedy trial becomes effective only upon arrest or being charged with offense. El Pueblo de Puerto Rico en interes del meno L.V.C., 110 D.P.R. 114, 1980 PR Sup. LEXIS 135 (P.R. 1980).

Even constitutional right to speedy trial should adapt to work program and practical realities of system for administration of justice functioning at times. Tim Manufacturing Co v. Shelley Enterprises, Inc., 107 D.P.R. 530, 1978 PR Sup. LEXIS 566 (P.R. 1978).

Notwithstanding fundamental nature of right to speedy trial, 'speedy tri al' concept is flexible and depends upon circumstances of each case where righ t is claimed. El Pueblo de Puerto Rico v. Americo Reyes Herrans., 105 D.P.R. 658, 1977 PR Sup. LEXIS 1836 (P.R. 1977).

Speedy trial guarantees rights of defendant, but should not exclude rights of public justice. El Pueblo de Puerto Rico v. Americo Reyes Herrans., 105 D.P.R. 658, 1977 PR Sup. LEXIS 1836 (P.R. 1977).

Regarding speedy trial, U.S. Supreme Court has refused to establish procedures for the states of the union, leaving them free to determine their own standards and definition of speedy trial within the framework of certain minimal federal norms. El Pueblo de Puerto Rico v. Americo Reyes Herrans., 105 D.P.R. 658, 1977 PR Sup. LEXIS 1836 (P.R. 1977).

Right to speedy trial, guaranteed by this section, is fulfilled by means of rules of procedure, vital realities and day-by-day practical functioning of criminal justice system. Pablo Hernandez v. Flores Rodriguez., 105 D.P.R. 173, 1976 PR Sup. LEXIS 2619 (P.R. 1976).

The constitutional right to a speedy trial, as well as the due process of law, cannot be lessened because no law has been approved to implement them. The Constitution being self-executing, it transcends the lack of enabling legislation. El Pueblo de Puerto Rico v. Victor Opio Opio., 104 D.P.R. 165, 1975 PR Sup. LEXIS 2246 (P.R. 1975).

The right to a speedy trial which is not circumscribed to the trial it self embraces all the stages in the gradual process beginning with the compl aint. El Pueblo de Puerto Rico v. Victor Opio Opio., 104 D.P.R. 165, 1975 PR Sup. LEXIS 2246 (P.R. 1975).

Repeated delays of more than 120 days between the dates set for trial when the defendant does not consent to such delays and there is no explanation or justification for them in record violate the constitutional right of a def endant to a speedy trial. Lydia E. Garcia y Otros v. Tribunal Superior de Puerto Rico, Sala de San Juan., 104 D.P.R. 27, 1975 PR Sup. LEXIS 2222 (P.R. 1975).

Though it is true that defendants have the right constitutionally guar anteed to a trial without delay, it is also true that society demands that t hose who are accused of violating its laws be tried promptly. Thus, the speedy trial is a right of the defendant as well as of the People. Lydia E. Garcia y Otros v. Tribunal Superior de Puerto Rico, Sala de San Juan., 104 D.P.R. 27, 1975 PR Sup. LEXIS 2222 (P.R. 1975).

The waiver to a speedy trial need not necessarily have the safeguards required for other constitutional guarantees. El Pueblo de Puerto Rico v. Tribunal Superior, Sala de San Juan, 103 D.P.R. 732, 1975 PR Sup. LEXIS 1838 (P.R. 1975).

The construction of the constitutional concept 'speedy trial' is not l inked to federal sources, each jurisdiction is free to fix its definition of said concept in a manner consistent with certain minimal federal standards. El Pueblo de Puerto Rico v. Moises Arcelay Galan., 102 D.P.R. 409, 1974 PR Sup. LEXIS 281 (P.R. 1974).

The proceedings for the prosecution of criminal matters in the appellate stage should be sped up in order to avoid delays which affect the rights of a defendant and prejudice the administration of justice and its good name. El Pueblo de Puerto Rico v. Colon Obregon, 102 D.P.R. 369, 1974 PR Sup. LEXIS 259 (P.R. 1974).

A defendant waives his right to a speedy trial when his case is set for a date which falls beyond the 120 days from the last continuance of the case for just cause setting made on September 12, 1967 (when defendant objected to the continuance of the case), date which fell within the 120 days from the last continuance for just cause when said defendant does not object to

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 112 of 272

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

the new setti ng nor requests that the same be moved to an earlier date. El Pueblo de Puerto Rico v. Amersito Martinez Vega, 98 P.R.R. 924, 1970 PR Sup. LEXIS 133 (P.R. 1970).

The right to a speedy trial is of fundamental importance for a defendant. Rafael Jimenez Roman v. Tribunal Superior de Puerto Rico, Sala de Bayamon, 98 P.R.R. 855, 1970 PR Sup. LEXIS 85 (P.R. 1970).

The right to a speedy trial being of a personal character may be waived. Rafael Jimenez Roman v. Tribunal Superior de Puerto Rico, Sala de Bayamon, 98 P.R.R. 855, 1970 PR Sup. LEXIS 85 (P.R. 1970).

The starting point to determine whether defendant's right to a speedy tr ial was violated if he was not prosecuted within a specified period of time is not the date on which an undercover agent was aware of the commission of the offense by defendant, except in such extraordinary situations which are set forth in the cases of: People v. Seda, 82 P.R.R. 695 (1961); People v. Superior Court, 81 P.R.R. 445 (1959), and Martinez v. Superior Court, 81 P.R.R. 913 (1960), none of which is present in this case. Gladys Marrero de Villafane v. Alcaide de la Carcel de Distrito de San Juan., 92 P.R.R. 732, 1965 PR Sup. LEXIS 257 (P.R. 1965).

See also annotations under Rule 64, Title 34, App. II, notes 2 and 101.

### 13. Discovery of evidence.

Right to discovery of evidence is part of right of every accused to defend himself in a criminal proceeding, but Rule 95 of App. II of Title 34 establishes limits to this right to discourage fishing expeditions. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 299, 1991 PR Sup. LEXIS 188 (P.R.), superseded, 128 D.P.R. 752 (P.R. 1991).

Duty of prosecution of making any and all exonerating evidence available to defendant at any stage of proceedings does not extend to handing records over to presiding magistrate for a fishing expedition. El Pueblo de Puerto Rico v. Orlando Rios Alvarez, 112 D.P.R. 92, 1982 PR Sup. LEXIS 122 (P.R. 1982).

Pursuant to clause of due process of law establishing obligation to provide fair trial, State has responsibility of revealing exonerating evidence in its possession or any defect of falsehood existing in its evidence which may have been hidden from or unknown by defense and which might stifle truth in court of justice if so remaining, even without any motion for discovery from defense. El Pueblo de Puerto Rico v. Antonio Rodriguez Sanchez, 109 D.P.R. 243, 1979 PR Sup. LEXIS 144 (P.R. 1979).

The fact that a judge proceeds to condemn a defendant on the basis of an investigation carried out at his back by the court's Probation Officer, without said defendant having the opportunity of cross-examining the persons whom the said officer interviewed, constitutes a flagrant violation of the due process of law. El Pueblo de Puerto Rico v. Horacio Rodriguez Gonzalez., 102 D.P.R. 571, 1974 PR Sup. LEXIS 308 (P.R. 1974).

### 14. Warnings.

Narration of facts voluntarily told to district attorney regarding criminal transaction, where deponent was not suspect of such crime at time statements were made, is admissible in evidence without any warnings to deponent. El Pueblo de Puerto Rico v. Jorge L. Chaar Cacho, 109 D.P.R. 316, 1980 PR Sup. LEXIS 67 (P.R. 1980).

Where arrested police officer convicted of several crimes who presumab ly knew his rights upon arrest was not given the warnings regarding his righ ts not to make any statements by the arresting detective, and said police officer did not make any confession or admission of any kind, revocation of sentence was not justified. Under those circumstances, whether or not there was any warning, or whether it was sufficient, was not a determining fact. El Pueblo de Puerto Rico v. Cecilio Rosso Vazquez., 105 D.P.R. 905, 1977 PR Sup. LEXIS 2351 (P.R. 1977).

It is necessary to make the pertinent warnings to a suspect to guarantee his rights against self-incrimination and legal assistance, once he is placed under arrest, even if he is not in the police station, provided he is effectively deprived of his

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

freedom. El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de Ponce., 97 P.R.R. 195, 1969 PR Sup. LEXIS 130 (P.R. 1969).

The statements made by a suspect when he is initially interrogated during the routine investigations for traffic violations carried out by the police at the scene of the crime when the police officer is only orienting himself to discover the identity of the suspect are admissible in evidence without the polic e having previously warned him of his right against self-incrimination and to have assistance of counsel. (Escobedo v. Illinois, 378 U.S. 478 (1963), Miranda v. Arizona, 384 U.S. 436 (1965), and Rivera Escute v. Delgado, Warden, 1965, 92 P.R.R. 746, distinguished.) El Pueblo de Puerto Rico v. Tribunal Superior de Puerto Rico, Sala de Ponce., 97 P.R.R. 195, 1969 PR Sup. LEXIS 130 (P.R. 1969).

To fully comply with the rule of warning a defendant of his right not to incriminate himself in a written extrajudicial statement, said warning should precede said sworn statement, and it must specifically so appear from the text thereof. El Pueblo de Puerto Rico v. Ramon Alvarez Solares, 95 P.R.R. 770, 1968 PR Sup. LEXIS 101 (P.R. 1968).

To comply strictly with the constitutional provision of warning a defendant against self-incrimination in an extrajudicial statement, such warning should precede said statement, and it should thus specifically appear from the text thereof, if it were written. El Pueblo de Puerto Rico v. Israel Figueroa Gonzalez, 95 P.R.R. 96, 1967 PR Sup. LEXIS 280 (P.R. 1967).

Under the state of law in force on October 21, 1962 date on which the extrajudicial statement was offered in this case and June 27, 1963 date on which the corresponding trial was held a defendant was protected at all t imes by the constitutional guarantee of not incriminating himself, and as a sequel thereof, of being warned of said guarantee before making an extrajudicial statement. El Pueblo de Puerto Rico v. Israel Figueroa Gonzalez, 95 P.R.R. 96, 1967 PR Sup. LEXIS 280 (P.R. 1967).

The fact that in an official printed form entitled 'Witness' Sworn Sta tement' there appears the phrase 'subsequent to the legal warnings' does n ot constitute compliance with the constitutional provision of warning defendant against self-incrimination. El Pueblo de Puerto Rico v. Israel Figueroa Gonzalez, 95 P.R.R. 96, 1967 PR Sup. LEXIS 280 (P.R. 1967).

According to the ruling established in Rivera Escute v. Delgado, Warden, 1965, 92 P.R.R. 746, the confession of an accused or suspect, of the admissions which substantially prejudice him, obtained while in custody of the police or other competent authority during interrogation for the purpose of obtaining incriminating statements, are not admissible in evidence in the absence of warnings of his constitutional right to remain silent and not incriminate himself, and to obtain assistance of counsel. El Pueblo de Puerto Rico v. Providencio Laguna Rodriguez., 92 P.R.R. 811, 1965 PR Sup. LEXIS 268 (P.R. 1965).

### 15. Witnesses.

Due process of law clause demands, for confrontation of witnesses pursuant to this section, that evidence to challenge witnesses and to attack their credibility is made accessible to defendant in order to eradicate any falsehood from trial and avoid miscarriage of justice. El Pueblo de Puerto Rico v. Antonio Rodriguez Sanchez, 109 D.P.R. 243, 1979 PR Sup. LEXIS 144 (P.R. 1979).

In those cases in which the defense is entitled to know the name of an informer, a court should not accept that in order to protect the informer's ident ity resort be had to the stereotyped excuse of saying that he is only known by a nickname. El Pueblo de Puerto Rico v. Confesor Falu Fuentes., 102 D.P.R. 809, 1974 PR Sup. LEXIS 352 (P.R. 1974).

The fact that a court refuses to compel the State in view of a request of the defense timely made to reveal to the defendant the identity and addr ess of the informer-participant who took part in the delinquent acts for which she is accused is an error which justifies the reversal of the judgment rendered in a case. El Pueblo de Puerto Rico v. Iris Beltran Faria., 102 D.P.R. 783, 1974 PR Sup. LEXIS 348 (P.R. 1974).

A court is bound at the request of the defense under the particular ci rcumstances of the case at bar to order the prosecuting attorney to give to a defendant accused of violating the Controlled Substances Act §§ 2101 e t seq. of Title 24 the name and address of 'A' a fellow who took the undercover agent who worked in the case and his informer-participant to defendant's home, place where the alleged sale transaction of marihuana cigarettes be tween the undercover agent and defendant was consummated but, the court is n ot bound to order the prosecuting attorney to furnish to defendant the name and address of

the informer-participant who participated in the case, particularly when defendant has announced the defense of alibi for which he will be the only witness. Daniel Benitez v. Tribunal Superior de Puerto Rico, Sala de San Juan., 102 D.P.R. 601, 1974 PR Sup. LEXIS 319 (P.R. 1974).

The right of every defendant to obtain a compulsory process of witnesses in his own defense guaranteed by the Bill of Rights of the Constitution of the Commonwealth of Puerto Rico art. II, § 11 has been recognized under the Federal Constitution in its Sixth Amendment, as a fundamental and compulsory right for the states. El Pueblo de Puerto Rico v. Angel M. Acosta Escobar., 101 D.P.R. 886, 1974 PR Sup. LEXIS 192 (P.R. 1974).

The reasons justifying the privilege of the government not to reveal the identity of an informer lose efficacy since the very moment when said identity is disclosed by the candid testimony given by the state witnesses, not objected to by the prosecuting attorney. El Pueblo de Puerto Rico v. Angel M. Acosta Escobar., 101 D.P.R. 886, 1974 PR Sup. LEXIS 192 (P.R. 1974).

The identity of the informer having been unveiled, his duty having been fulfilled, it constitutes an abuse of discretion on the part of the judge who presides the hearing which justifies the reversal of the judgment rendered again st the defendant since it constitutes a violation of the due process of law not to grant a timely petition made by the defendant to summon said informer, unless there are reasons justifying such refusal. El Pueblo de Puerto Rico v. Angel M. Acosta Escobar., 101 D.P.R. 886, 1974 PR Sup. LEXIS 192 (P.R. 1974).

### 16. Presumption of regularity of sentences.

Determinations of trier of fact carry a presumption of regularity and correctness and that the verdict is based on the evidence presented, and the burden falls upon the party claiming the contrary to prove irregularity and that it affected the result of the proceeding. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 299, 1991 PR Sup. LEXIS 188 (P.R.), superseded, 128 D.P.R. 752 (P.R. 1991).

Presumption of regularity will attend all the decisions of the courts of the Commonwealth of Puerto Rico when subject to collateral attack through a petition of habeas corpus, and the burden will rest on the convicted petitioner to show that the state court acted in an arbitrary fashion in denying his petition for bail in violation of the guidelines established by the Supreme Court of the Commonwealth of Puerto Rico. Natal v. Puerto Rico, 424 F. Supp. 1082, 1975 U.S. Dist. LEXIS 12826 (D.P.R. 1975).

### 17. Referendum on absolute right to bail.

Purpose of rules in force in the United States regarding minimum term between voter registration closing and date of election, plebiscite or referendum, is to guarantee potential voters due time to become informed about issue in controversy and cast an educated vote. David Ortiz Anglero v. Gerineldo Barreto Perez y otros., 110 D.P.R. 84, 1980 PR Sup. LEXIS 134 (P.R. 1980).

Constitution of the Commonwealth of Puerto Rico and its United States counterpart require reasonable period between registration period closing and date of referendum to insure adequate exercise of right to vote. David Ortiz Anglero v. Gerineldo Barreto Perez y otros., 110 D.P.R. 84, 1980 PR Sup. LEXIS 134 (P.R. 1980).

Pursuant to the United States Constitution, 153-day term between voter registration closing and date of referendum is unconstitutional. David Ortiz Anglero v. Gerineldo Barreto Perez y otros., 110 D.P.R. 84, 1980 PR Sup. LEXIS 134 (P.R. 1980).

Pursuant to Constitution of Commonwealth of Puerto Rico, 153-day term between voters registration closing and referendum date is unpermissibly long. David Ortiz Anglero v. Gerineldo Barreto Perez y otros., 110 D.P.R. 84, 1980 PR Sup. LEXIS 134 (P.R. 1980).

### 18. Smaller number of jurors.

§ 11 Criminal prosecutions; jury trial; self-incrimination;..., Puerto Rico Const. Art....

See annotations under Rule 112, Title 34, App. II, No. 2.

**19. Imprisonment for debts.**

See annotations under § 5171 of Title 31.

Puerto Rico Const. Art. II, § 11, PR CONST Art. II, § 11

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 12 Slavery; involuntary servitude; cruel and unusual..., Puerto Rico Const. Art....

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

Puerto Rico Const. Art. II, § 12

§ 12 Slavery; involuntary servitude; cruel and unusual punishments; civil rights; ex post facto law; bill of attainder

Neither slavery nor involuntary servitude shall exist except in the latter case as a punishment for crime after the accused has been duly convicted. Cruel and unusual punishments shall not be inflicted. Suspension of civil rights including the right to vote shall cease upon service of the term of imprisonment imposed.

No ex post facto law or bill of attainder shall be passed.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Powers of government of Puerto Rico to punish for crime and to imprison or confine for protection of public peace or health, or of individual life or safety, see § 1 of Title 1.

Powers of Parole Board to grant civil rights to parolees, see § 1503(e) of Title 4.

**ANNOTATIONS**

**1. Ex post facto.**

Penal laws which prejudice the accused cannot be applied retroactively, but the situation is different with more favorable laws; notwithstanding, with respect to the 2004 Penal Code, the provisions of the 1974 Penal Code have remained in effect for those crimes committed under it. 165 D.P.R. 675, 2005 PR Sup. LEXIS 129.

Constitutional prohibition of ex post facto laws applies only where new statute demands less evidence to consider defendant guilty that prior one in force at time of felonious action, or where situation of defendant is unfavorably altered in any way. El Pueblo de Puerto Rico v. Jose Luis Lebron Gonzalez., 113 D.P.R. 81, 1982 PR Sup. LEXIS 182 (P.R. 1982).

The contention of a defendant-appellant stating that Act No. 11 of August 8, 1974 4 L.P.R.A. § 61 constitutes an ex post facto law in the light of Duncan v. Missouri, 152 U.S. 377 (1894), and subsequent cases, does not lie. El Pueblo de Puerto Rico v. Carmelo Morcelo Martinez., 104 D.P.R. 20, 1975 PR Sup. LEXIS 2220 (P.R. 1975).

§ 12 Slavery; involuntary servitude; cruel and unusual..., Puerto Rico Const. Art....

Whether an act or its application is ex post facto is not question which is raised in case when law said to be ex post facto was in force at time offense was committed and at time judgment in the case was rendered. El Pueblo de Puerto Rico v. Leandro Miranda, 79 P.R.R. 667, 1956 PR Sup. LEXIS 215 (P.R. 1956).

**2. Civil rights Pardon.**

The Constitution restores the civil rights of a convict once his term has been served, making unnecessary an executive intervention; but only a pardon, a power reserved to the Governor (Const., art. IV, § 4 and 3 L.P.R.A. § 1), restores these rights before the end of the term. 1958 Op. Sec. Jus. No. 26.

**3. Commutations of punishment.**

The restoration of civil rights contemplated by this section does not change the situation of a convict whose term has been commuted or who is under parole, nor does it eliminate the effects of art. 20 of the Penal Code, § 41 of Title 33; the term is not regarded as having been served and therefore the convict's civil rights are not restored. 1958 Op. Sec. Jus. No. 26.

**4. Collateral impediments.**

Starting from the effectiveness of the Commonwealth Constitution, political and civil rights are automatically reestablished to a convict who has served his sentence, without any intervention on the part of the Governor being necessary; the latter's executive clemency remains limited to eliminating the collater al consequence obtainment of license for practicing certain professions, dri ver's license, carrying of weapons, etc. that exist independently of the convict's civil and political rights. 1960 Op. Sec. Jus. No. 33.

**5. Cruel and unusual punishment.**

Clause against cruel and unusual punishment requires a reasonable proportion between the punishment imposed and the criminal conduct and the following factors should be considered: (1) damage caused to victim and society, and (2) culpability of defendant, and this latter refers to mental state of accused when crime occurred, that is, to mens rea. Whether the accused is eligible for parole should also be considered. Puerto Rico v. Lydia Echevarria Rodriguez. Puerto Rico v.David Lopez Watts, 128 D.P.R. 299, 1991 PR Sup. LEXIS 188 (P.R.), superseded, 128 D.P.R. 752 (P.R. 1991).

Constitution as well as laws of Puerto Rico establish very strict rules for treatment of inmates in regard to crowding of criminal population. Morales Feliciano v. Romero Barcelo, 672 F. Supp. 591, 1986 U.S. Dist. LEXIS 27925, 1986 U.S. Dist. LEXIS 27927 (D.P.R. 1986).

Suspension of jockey license just for using his right not to incriminate himself during a state Racing Commission investigation may constitute cruel or unusual punishment. Jose Amy Angulo v. Administracion del Deporte Hipico., 116 D.P.R. 414, 1985 PR Sup. LEXIS 97 (P.R. 1985).

A sentence imposed on a convict does not constitute a cruel and unusual punishment when it falls within the limits fixed by the law which penalizes the offense charged. El Pueblo de Puerto Rico v. Carmelo Pedroza Muriel, 98 P.R.R. 34, 1969 PR Sup. LEXIS 199 (P.R. 1969).

Infliction of a prison punishment by virtue of a judgment in a criminal case on an addict to the use of narcotic drugs merely because he is such an addict constitutes a cruel and unusual punishment. Ruben Martinez Rodriguez v. Gerardo Delgado., 92 P.R.R. 613, 1965 PR Sup. LEXIS 239 (P.R. 1965).

It does not constitute a cruel and unusual punishment for a court to impose a jail sentence on an addict for the possession of a narcotic drug. Ruben Martinez Rodriguez v. Gerardo Delgado., 92 P.R.R. 613, 1965 PR Sup. LEXIS 239 (P.R. 1965).

The purpose of the constitutional provision which prohibits barbarous and inhuman punishments is to proscribe barbarous and inhuman punishments such as burning at the stake, decapitation, dissection of the human body, and other forms of torture

which were more or less common in ancient times. El Pueblo de Puerto Rico v. Modesto Jaiman Torres, 86 P.R.R. 663, 1962 PR Sup. LEXIS 402 (P.R. 1962).

### 6. Retroactive doctrine.

The doctrine established in the decision of the Supreme Court of the United States in the case of Escobedo v. Illinois, 378 U.S. 478 (1964), is available only to persons whose trials commenced after June 22, 1964 date of that decision and the rulings established in the case of Miranda v. Arizona, 384 U.S. 436 (1966), which had been previously established by this Court in Rivera Escute v. Delgado, Warden, 1965, 92 P.R.R. 746, are available only to persons whose trials had not commenced on October 26, 1965, date on which this Court decided the aforecited Rivera Escute case. El Pueblo de Puerto Rico v. Honorio Adorno Lorenzana., 93 P.R.R. 768, 1966 PR Sup. LEXIS 158 (P.R. 1966).

There is no constitutional impediment for a court of last instance, when it announces a new constitutional interpretation, to determine whether the same shall have retroactive or only prospective effect, such determination depending on the merits and demerits in each case, by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation would further or retard its operation. Fernando Rivera Escute v. Gerardo Delgado., 92 P.R.R. 746, 1965 PR Sup. LEXIS 260 (P.R. 1965).

A new constitutional interpretation should be retroactively applied only in those situations in which the new rule protects the innocent defendant against the possibility of being convicted for a crime which he did not commit such as the case of a conviction based on an involuntary or coerced confession. Fernando Rivera Escute v. Gerardo Delgado., 92 P.R.R. 746, 1965 PR Sup. LEXIS 260 (P.R. 1965).

In this jurisdiction no person would be served by the retroactive application of the new constitutional doctrine established in the case of Escobedo v. Illinois, 378 U.S. 478 (1964), the prospective purpose of which is to benefit the overall system of justice administration by drying up the source of coercion of the suspect. Fernando Rivera Escute v. Gerardo Delgado., 92 P.R.R. 746, 1965 PR Sup. LEXIS 260 (P.R. 1965).

Puerto Rico Const. Art. II, § 12, PR CONST Art. II, § 12

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 119 of 272

§ 13 Habeas corpus; military authority subordinate, Puerto Rico Const. Art. II, § 13

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

Puerto Rico Const. Art. II, § 13

§ 13 Habeas corpus; military authority subordinate

The writ of habeas corpus shall be granted without delay and free of costs. The privilege of the writ of habeas corpus shall not be suspended, unless the public safety requires it in case of rebellion, insurrection or invasion. Only the Legislative Assembly shall have the power to suspend the privilege of the writ of habeas corpus and the laws regulating its issuance.

The military authority shall always be subordinate to civil authority.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Habeas corpus, see also §§ 1741 et seq. of Title 34.

Power of Supreme Court to hear petitions for habeas corpus, see Const., art. V, § 5.

Powers of government of Puerto Rico to punish for crime and to imprison or confine for protection of public peace or health, or of individual life or safety, see § 1 of Title 1.

**ANNOTATIONS**

**1. Discretion of court.**

Denial of petition for habeas corpus filed by prisoner in the courts of Puerto Rico, without a hearing and a statement of reasons for the denial, does not violate due process where the denial is on merits of a frivolous question of law and the exercise of discretion was not involved. Vera v. Concepcion, 372 F. Supp. 84, 1973 U.S. Dist. LEXIS 13183 (D.P.R. 1973).

The court has power to refuse to exercise its original jurisdiction in habeas corpus proceedings, and that power has not been altered in any way by this section. Consuelo Burgos v. Nieves Tarrido., 76 P.R.R. 240, 1954 PR Sup. LEXIS 204 (P.R. 1954).

**2. Inadequate procedure.**

§ 13 Habeas corpus; military authority subordinate, Puerto Rico Const. Art. II, § 13

A writ of habeas corpus cannot prosper if it is meant to free a convict for having served in full the sentences imposed upon him, at the time of granting his deduction for good behavior assuming he is entitled to it when, according to his own allegations, the convict has not served the minimum term of his sentence once the deduction for good conduct is made when the writ is filed. Miguel Oliveras Sepulveda v. Gerardo Delgado., 91 P.R.R. 586, 1964 PR Sup. LEXIS 397 (P.R. 1964).

### 3. Nature.

Habeas corpus will not be granted on appeal except in exceptional circumstances, in determining which courts should taken into consideration the availability of effective remedy to review alleged error and avoid continuation of illegal detention as well as: (1) whether there has been a clear violation of a fundamental constitutional right; (2) whether said right has been waived, and (3) the need for an evidentiary hearing. Jose O. Ortiz Serrano v. Carmelo Gonzalez Rivera., 131 D.P.R. 849, 1992 PR Sup. LEXIS 297 (P.R. 1992).

The writ of habeas corpus is one of right but not of course and the issuance thereof is not a ministerial act. It does not lie where nothing is accomplished, nor where its issuance does not serve a practical purpose. German Gonzalez de Jesus v. Gerardo Delgado., 90 P.R.R. 30, 1964 PR Sup. LEXIS 224 (P.R. 1964).

### 4. Review.

Where a judgment rendered against a defendant is null and void, the review of said nullity is available in a habeas corpus proceeding. Jose Oscar Baez Montalvo v. Gerardo Delgado., 90 P.R.R. 594, 1964 PR Sup. LEXIS 294 (P.R. 1964).

Puerto Rico Const. Art. II, § 13, PR CONST Art. II, § 13

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                         © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 14 Titles of nobility; gifts from foreign countries, Puerto Rico Const. Art. II, § 14

---

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

Puerto Rico Const. Art. II, § 14

§ 14 Titles of nobility; gifts from foreign countries

No titles of nobility or other hereditary honors shall be granted. No officer or employee of the Commonwealth shall accept gifts, donations, decorations or offices from any foreign country or officer without prior authorization by the Legislative Assembly.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**ANNOTATIONS**

**1. Decorations.**

Ex-mayor of San Juan did not need authorization from Legislative Assembly to receive decoration from Spanish Government because, being no longer incumbent, constitutional prohibition is not applicable. 1969 Op. Sec. Jus. No. 3.

Puerto Rico Const. Art. II, § 14, PR CONST Art. II, § 14

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 15 Employment and imprisonment of children, Puerto Rico Const. Art. II, § 15

---

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

Puerto Rico Const. Art. II, § 15

§ 15 Employment and imprisonment of children

The employment of children less than fourteen years of age in any occupation which is prejudicial to their health or morals or which places them in jeopardy of life or limb is prohibited.

No child less than sixteen years of age shall be kept in custody in jail or penitentiary.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Powers of government of Puerto Rico to establish custody and restraint of minors, see § 1 of Title 1.

**ANNOTATIONS**

**1. Generally.**

According to this section of the Constitution a minor of 14 years of age or less can be tried and sentenced as an adult as long as he is not imprisoned in an adult institution before he reaches the age of 16. 130 D.P.R. 562.

It is concluded from the analysis of applicable constitutional and legal provisions that persons under fourteen cannot be considered for public service. 1985 Op. Sec. Jus. No. 20.

Puerto Rico Const. Art. II, § 15, PR CONST Art. II, § 15

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**§ 15 Employment and imprisonment of children, Puerto Rico Const. Art. II, § 15**

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 16 Rights of employees, Puerto Rico Const. Art. II, § 16

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Puerto Rico Const. Art. II, § 16

§ 16 Rights of employees

The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary workday which shall not exceed eight hours. An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**ANNOTATIONS**

**1. Traveling salesmen.**

This section does not include traveling salesmen with respect to the limitation of an eight-hour working day. Americo D. Miranda, Inc. v. Onofre Falcon., 83 P.R.R. 708, 1961 PR Sup. LEXIS 472 (P.R. 1961).

**2. Public corporations and instrumentalities.**

As to whether Constitution will apply in regulation of relations of Medical Center Service Corporation and its employees, see 1963 Op. Sec. Jus. No. 17.

**3. Additional compensation.**

As the Puerto Rico Constitution establishes the autonomy of the House of Representatives with respect to its internal operation and the regulations of the House prohibit the transfer of compensatory leave, this court is not obligated to petition the Office of Legislative Services to transfer the accumulated balance of compensatory leave to an ex-employee of the Office. 2002 Op. Sec. Jus. No. 15.

Generally, and subject to the provisions of federal law, state as well as municipal employees do not enjoy the right to receive compensation for overtime, but do have a right to compensatory leave. 2002 Op. Sec. Jus. No. 15.

Art. II, § 16 of the Puerto Rico Constitution provides that overtime is p aid at time and a half. 2002 Op. Sec. Jus. No. 15.

The right of a public employee to receive additional compensation for extra work is fully recognized. Autoridad de Comunicaciones de Puerto Rico v. Tribunal Superior de Puerto Rico., 87 P.R.R. 1, 1962 PR Sup. LEXIS 423 (P.R. 1962).

Government employees in the Competitive Service are not included in the provisions of this section. Autoridad de Comunicaciones de Puerto Rico v. Tribunal Superior de Puerto Rico., 87 P.R.R. 1, 1962 PR Sup. LEXIS 423 (P.R. 1962).

Payment to Department of Agriculture employees for inspection services to vessels and airplanes outside of regular hours, see 1956 Op. Sec. Jus. No. 68.

### 4. Construction.

Employer has the responsibility to reserve the job of an employee after an accident; the employer has the duty to compensate the employee for all harm suffered, including mental anguish when the employer illegally fired the employee. Benjamin Diaz Hernandez v. Pneumatics & Hydraulics, Inc., 169 D.P.R. 273, 2006 PR Sup. LEXIS 147 (P.R. 2006).

Having cut his hand the employee was dismissed and did not have to request reinstatement during the term specified by §§ 7 et seq. of Title 11 because there was no employer-employee relationship. Victor Rivera Rivera v. Insular Wire Prods., Corp., 158 D.P.R. 110, 2002 PR Sup. LEXIS 116 (P.R. 2002).

Given the authority of an employer to classify and reclassify employment positions according to his own standards, mere deviation or noncompliance with the same does not result in constitutional violation. Magdalena Mercado Vega v. Universidad de P.R., 128 D.P.R. 273, 1991 PR Sup. LEXIS 186 (P.R. 1991).

Restrictive construction of §§ 757-1a to 757-1g of Title 3, to exclude teachers who work at institutions of Department of Social Services and other Commonwealth departments would be equivalent to excluding certain employees who are protected by these sections from the benefits they provide. 1983 Op. Sec. Jus. No. 9.

The fact that violation of constitutional rights, such as the right to privacy and to personal integrity at work, occurs in the context of an employer-employee relationship based on an employment contract without a fixed term (employment at will), does not mean that employee has waived constitutional rights or that he has no real and effective remedy to vindicate said rights. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

The acquired right to work that is actually the right to continue its enjoyment often of great value for the possessor, cannot be taken away from citizen, any more than his real or personal property can be thus taken. Epifanio Ortiz Cruz v. Junta Hipica de Puerto Rico., 101 D.P.R. 791, 1973 PR Sup. LEXIS 254 (P.R. 1973).

The provision of the Constitution of the Commonwealth of Puerto Rico which recognizes the right of every worker to freely choose his occupation and to resign therefrom must be construed in a manner consistent with the high social aim which inspired it. American Eutectic Weld. Al. Alloys Sales Co. v. Garcia-Rogriguez, 353 F. Supp. 850 (1973).

The constitutional right of a worker to freely choose his occupation also implies his right to fulfill the duties of his new employment. Alloys Sales Co. v. Garcia-Rogriguez, 353 F. Supp. 850 (1973).

The fundamental purpose of this section is to protect the health, safety, and life of the great laboring mass of Puerto Rico. Municipio de Guaynabo v. Tribunal Superior de Puerto Rico, Sala de Bayamon., 97 P.R.R. 532, 1969 PR Sup. LEXIS 177 (P.R. 1969).

The government employees of Puerto Rico enjoy full protection provided by the Personnel System of the Commonwealth, which gathers and broadens the basic guarantees included in the Bill of Rights, with the exception that the additional compensation for overtime work is paid by granting compensatory time. Municipio de Guaynabo v. Tribunal Superior de Puerto Rico, Sala de Bayamon., 97 P.R.R. 532, 1969 PR Sup. LEXIS 177 (P.R. 1969).

### 5. Restrictive covenants.

A no competition agreement between a company and an employee is completely void due to the lack of requirements

§ 16 Rights of employees, Puerto Rico Const. Art. II, § 16

established by law. PACIV, Inc. v. Perez Rivera, 159 D.P.R. 523, 2003 PR Sup. LEXIS 86 (P.R. 2003).

Requirements for determining validity of a no competition contract are: (1) the employer's legitimate interest; (2) correlation between the employer's interest and the scope of the prohibition, and (3) whether the contract was written. PACIV, Inc. v. Perez Rivera, 159 D.P.R. 523, 2003 PR Sup. LEXIS 86 (P.R. 2003).

Where the clauses in an employment contract, to be performed almost in its entirety within the Commonwealth of Puerto Rico, defeat the public policy of the said Commonwealth, the federal district court for the district of Puerto Rico must refrain from enforcing them. American Eutectic Weld. Al. Alloys Sales Co. v. Garcia-Rodriguez, 353 F. Supp. 850 (1973).

Provision of the Constitution of the Commonwealth of Puerto Rico recognizing the right of every employee to freely choose his occupation and to resign therefrom does not prevent the enforcement of a reasonable restrictive covenant against competition entered with former employer, which simply protected the legitimate rights of the employer and did not impose undue hardship on the employee. Alloys Sales Co. v. Garcia-Rodriguez, 353 F. Supp. 850 (1973).

Provision of employment contract in which an employee had agreed to abstain, during two years after termination of the agreement, from working for any competitor in the same territory he covered for his former employee during the last two years of his employment and within a 50-mile radius thereof, and that he would maintain the customer lists, identifications and other business secrets confidential, is reasonable and could be enforced by an injunction. Alloys Sales Co. v. Garcia-Rodriguez, 353 F. Supp. 850 (1973).

The enforcement of a restrictive covenant in an employment contract in which the former employee, a salesman, had agreed, among other things, to abstain from working for any competitor the same territory he had covered for his former employer during a period of two years following termination of the contract, is not permitted by the Constitution of the Commonwealth of Puerto Rico which recognizes the right of every employee to freely choose his occupation and to resign therefrom, in the absence of evidence that former employee was using his privileged position in detriment to his former employer, in the absence of evidence of piracy or that the former employee was revealing confidential information, and notwithstanding the former employer's fear of competition and his contention th at enforcement of the covenant was necessary to protect his good will. Alloys Sales Co. v. Garcia-Rodriguez, 353 F. Supp. 850 (1973).

### 6. Foreign policies.

Puerto Rico is not bound by the policies of other jurisdictions. American Eutectic Weld. Alloys Sales Co., Inc. v. Rodriguez, 480 F.2d 223 (1973).

### 7. Exclusion from protection.

A worker may be excluded from the protection accorded him as an employee only by means of express statutory exception. Marcial Castro Sosa v. Autoridad de las Fuentes Fluviales de Puerto Rico., 107 D.P.R. 711, 1978 PR Sup. LEXIS 581 (P.R. 1978).

Flight attendants serving in turn around flights between Puerto Rico-New York-Puerto Rico are excluded from protection provided by this section and labor laws of Puerto Rico, because more than 50% of their work is executed outside the territory of Puerto Rico. 1977 Op. Sec. Jus. No. 22.

Provisions of this section, about rights of employees, are not applicable to services as flight attendant or stewardess outside territorial boundaries of Puerto Rico. 1977 Op. Sec. Jus. No. 22.

### 8. Boards of Examiners.

As a manifestation of its police power, the state has broad discretion to control and regulate the practice of professions in order to protect public health and welfare. In the exercise of said power, it can prohibit the practice of a profession until prior license from an institution or examining officer is obtained. Puerto Rico v. Luis R. Villafane Fabian., 139 D.P.R. 134, 1995 PR Sup. LEXIS 326 (P.R. 1995).

The power of the State to regulate a profession cannot deprive a citizen of his profession to earn a living, as it would violate the fundamental right to life, liberty and pursuit of property, protected by the US and Puerto Rico Constitutions. 1986 Op. Sec. Jus. No. 41.

Government possesses inherent police power to regulate professions and trades, based on eminent public interest thereof. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Courts should not require routine disclosure of questions and answers of licensing examinations at the request of failing candidate, particularly in the case of multiple choice items admitting only one answer, which might be used in the future again. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Disclosure of multiple choice questions and answers in a licensing examination used in prior examination may constitute advantage for repeaters over new candidates and violate equal protection clause. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Where guarantees in preparation, administration and grading of licensing examinations were reasonably present, failing candidate has no absolute right to obtain correct answers to multiple choice questions. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Essay questions and answers in licensing examinations may be examined by failing candidate. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Where candidate failed to show minimum level of competence in licensing examination, the State should grant him a review of such examination, as well as a verification of errors in grading by examining panel. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Candidate has no absolute right to review licensing examination for profession or trade. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

In action to challenge regulations regarding admission to profession or trade under light of due process, the following factors should be considered: (a) private interest affected by official action; (b) risk of wrongful deprivation of rights due to procedure utilized; and (c) State interest, including function and administrative burdens which will result from additional or substituting guarantees. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Limits of judicial review normally, regarding challenge of state regulations of licensing procedures are: (1) to explore possible violation of proprietary rights of candidate; (2) to evaluate procedure; and (3) to preserve fundamental rights to notice and hearing. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

Challenge to regulations on admission to practice of profession or trade, in order to prevail, requires that norms applied by State arbitrarily deny admission to candidates for reasons unrelated to purposes of regulation. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

The degree of public interest in regulations regarding admission to practice of professions and trades bestows upon decisions of Boards of Examiners the same prima facie consideration of correction bestowed upon tax determinations. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

States and Boards of Examiners have ample discretion in determination of rules and procedures for admission to or licensing applicants for professions and trades. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

In regulation of admission to practice of professions and trades, State is bound by rationality of objectives. Roman v. Board of Medical Examiners, 116 D.P.R. 71 (1985).

### 9. Special compensation.

A restrictive construction of §§ 757-1a to 757-1g of Title 3, contrary to spirit and purpose of their enactment to remedy financial situation of public employees by offering them special financial relief as soon as possible, is unreasonable, unjust

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 128 of 272

§ 16 Rights of employees, Puerto Rico Const. Art. II, § 16

and discriminatory, as well as being contrary to constitutional guarantees of equal protection of law and equal pay for equal work. 1983 Op. Sec. Jus. No. 9.

In relation to contracts without a fixed term, labor legislation has been adopted to prevent the situation in which a dismissed employee is left in total economic destitution while seeking new employment. This legislation cannot deprive the worker of appropriate remedies for effective vindication of his constitutional rights. In a case in which employer has violated fundamental constitutional rights of an employee, we are confronted with an unjustified dismissal which subverts a public policy of constitutional dimension. In such circumstances, employee has the right to commence an action of injunction and for damages. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

### 10. Polygraph.

Polygraph, or lie-detector, is an instrument which measures, under controlled conditions, reactions of person's autonomic nervous system. Said instrumen t registers changes in blood pressure, respiration, pulse and cutaneous galvanic response. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

In an employer-employee relationship polygraph is used for different purposes: (1) to determine veracity when a particular incident or matter is under investigation (specific test); (2) to detect any incident of which employer is unaware or as means to avoid or discourage theft or misuse of employer's property (periodic test), or (3) to attempt to predict future conduct of worker or applicant. Employers use results of these tests, among other things, to dismiss employee, deny raises or benefits, or deny employment to job applicants. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

During a lie detector test, worker can be asked questions unrelated to matter under investigation or of no legitimate interest to employer, including improper, privacy-invading questions which employee would not normally be obliged to answer, dealing with matters such as political or trade union activity, sexual preference, religious beliefs, previous criminal record or other past conduct which person might not wish to divulge. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

Distinct from situation presented by questionnaire or verbal interrogation in which person may object to or not answer questions which, in content, are either not pertinent or invade protected areas, lie-detector test intervenes directly with thoughts and ideas of person who has no control over what is divulged even though he or she remains silent. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

Worker in search of employment should not have to waive the right to privacy by permitting employer to invade his mind and extract thoughts. Both right to work and right to privacy are consubstantial with human dignity. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

When person seeking employment consents to submit to polygraph examination required by employer, it should not be inferred that the job-seeker has voluntarily waived his right to privacy when said consent is required to retain or obtain job. Risk of losing or not obtaining a job and the disadvantageous position which the worker occupies in relation to employer are impediments to truly free and voluntary waiver. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

Employer's rule which calls for suspension or dismissal of employee who refuses to take polygraph test is an unconstitutional violation of the right to privacy. It is equally unconstitutional to require employee to take such test as condition of employment. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

The right to privacy operates and can be invoked even among private parties. The same is true of the inviolability of human dignity and the right of every worker to protection against risk to personal integrity at work. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

Worker has right to injunctive relief to avoid being required to submit to polygraph as condition of retaining employment. Worker also has right to recover damages which may have occurred as consequence of measures taken against him for not submitting to test in violation of right to privacy. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup.

Case:17-03283-LTS  Doc#:4759-41  Filed:01/12/19  Entered:01/12/19 17:45:34  Desc:
Exhibit DX-UUU  Page 129 of 272

§ 16 Rights of employees, Puerto Rico Const. Art. II, § 16

LEXIS 88 (P.R. 1986).

In relation to contracts without fixed term, labor legislation has been adopted to prevent situation in which a dismissed employee is left in total economic destitution while seeking new employment. This legislation cannot deprive the worker of appropriate remedies for effective vindication of his constitutional rights. In case in which employer has violated fundamental constitutional rights of employee, we are confronted with an unjustified dismissal which subverts public policy of constitutional dimension. In such circumstances, employee has the right to commence an action of injunction and for damages. Ariel Arroyo v. Rattan Specialities Inc., 117 D.P.R. 35, 1986 PR Sup. LEXIS 88 (P.R. 1986).

**11. Liberty interest to pursue occupation.**

Although plaintiff attorney, whose resignation was not accepted due to an investigation by his employer agency, could not appear for clients before the agency, he still practiced law and was not denied a due process liberty interest under this section to pursue an occupation. Ramirez-De Leon v. Mujica-Cotto, 345 F. Supp. 2d 174, 2004 U.S. Dist. LEXIS 23462 (D.P.R. 2004).

**12. Freedom of speech.**

Plaintiff employee's discrimination claims based on political affiliation under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Constitution , and §§ 5141, 5142 of Title 31, against defendant officials of state agency e mployer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Alejandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Plaintiff employee's discrimination claims based on political affiliatio n under § 146 of Title 29, art. II, §§ 1, 4, 6, 7, 8, 16 of the PR Consti tution, and §§ 5141, 5142 of Title 31, against defendant officials of state agency employer, failed because the same claims went to the jury under federal law, and the jury rejected the employee's claim of retaliation. Figueroa v. Ale jandro, 597 F.3d 423, 2010 U.S. App. LEXIS 4633 (1st Cir. P.R. 2010).

Puerto Rico Const. Art. II, § 16, PR CONST Art. II, § 16

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 17 Right to organize and bargain collectively, Puerto Rico Const. Art. II, § 17

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

Puerto Rico Const. Art. II, § 17

§ 17 Right to organize and bargain collectively

Persons employed by private businesses, enterprises and individual employers and by agencies or instrumentalities of the government operating as private businesses or enterprises, shall have the right to organize and to bargain collectively with their employers through representatives of their own free choosing in order to promote their welfare.

**History**

**Special provisions.**

Seizure of port facilities in emergency, see Act July 25, 1954, No. 1, p. 2, cited in note under § 41 of Title 29.

**ANNOTATIONS**

**1. Generally.**

Regulation of working conditions of a public employee is an important factor in deciding whether the employee has a constitutional right to collective bargaining. If he is not protected by the Personnel Act or by another analogous civil service system his character as a worker becomes similar to that of a private enterprise and, as such, there would exist a significant foundation in favor of his right to collective bargaining. Centro de Recaudacion de Ingresos Municipales v. Federacion Central de Trabajadores, 142 D.P.R. 968, 1997 PR Sup. LEXIS 377 (P.R. 1997).

In labor law the sole employer doctrine, like that of piercing corporate veil (alter ego) and that of successorship, was developed to protect right of workers to organize and engage in collective bargaining when economic conditions, hostility toward unions or combination of these lead employer to structure or restructure his firm in such a way that this right is adversely affected. Junta de Relaciones del Trabajo de P.R. v. Associacion Condominos Playa Azul I, 117 D.P.R. 20, 1986 PR Sup. LEXIS 87 (P.R. 1986).

Doctrine of piercing the corporate veil (alter ego) in the area of labor law and as general rule is used when corporation takes control of another entity which then usually disappears and when it is shown that the change in management was for unlawful purposes, or would constitute violation of public policy, or injustice or fraud would be perpetrated thereby, or obligation (in most cases a collective bargaining agreement) would not be fulfilled. The analysis under this doctrine requires a demonstration of the purposes or intentions to commit unlawful acts. Junta de Relaciones del Trabajo de P.R. v. Associacion Condominos Playa Azul I, 117 D.P.R. 20, 1986 PR Sup. LEXIS 87 (P.R. 1986).

Right of employees to organize and to bargain collectively in Puerto Rico has constitutional roots and status; hence rules concerning application, including exemptions, of labor relations laws must be liberally construed in favor of protecting and promoting said rights, and one must always have in mind that these laws are part of broad and far-reaching scheme intent on

§ 17 Right to organize and bargain collectively, Puerto Rico Const. Art. II, § 17

implanting the constitutional guideline. Junta de Relaciones del Trabajo de P.R. v. Associacion Condominos Playa Azul I, 117 D.P.R. 20, 1986 PR Sup. LEXIS 87 (P.R. 1986).

Right to bargain collectively, to picket or take other concerted action does not extend to municipal workers and employees, and mayors do not have authority to negotiate working conditions of municipal employees with labor unions. (Reiterating Op. Sec. Just. February 15, 1977; August 2, 1973; February 8, 1973, all unpublished; Nos. 1967-17, 1965-31 and 1961-27.) 1983 Op. Sec. Jus. No. 13.

Municipal employee who participates in illegal strike has no right to be compensated for days he does not perform his duties. (Reiterating Op. Sec. Jus. July 6, 1971, unpublished.) 1983 Op. Sec. Jus. No. 13.

There is nothing in law to prevent municipal employees or certified bona fide units as such from affiliating with labor union, but this does not extend privilege to said employees that other labor union members enjoy with regard to collective bargaining, strikes or pickets to obtain better working conditions. 1983 Op. Sec. Jus. No. 13.

There is no express provision that irregular municipal employees are excluded from this section; they also have the constitutional right to organize and associate freely; and the term 'employee' as used in this section includes the regular as well as irregular employees. 1963 Op. Sec. Jus. No. 57.

Collective agreement between a labor union composed of municipal workers who render services in regular governmental functions and a municipal corporation cannot be authorized. 1961 Op. Sec. Jus. No. 27.

### 2. Workers.

There is nothing in law to prevent municipal employees or certified bona fide units as such from affiliating with labor union, but this does not extend privilege to said employees that other labor union members enjoy with regard to collective bargaining, strikes or pickets to obtain better working conditions. 1983 Op. Sec. Jus. No. 13.

Government employees, with exception of workers of certain public agencies or instrumentalities which operate as private enterprises or businesses, are not guaranteed right to bargain collectively or to strike or picket to obtain better working conditions. ( Reiterating Op. Sec. Just. No. 1967-17.) 1983 Op. Sec. Jus. No. 13.

Constitutional rights consecrated by this section right of workers to organize and negotiate collectively with employers through representatives of their own free choice, among others are not absolute. Legislature may establis h conditions necessary for reasonable exercise of such rights. S. I. U. de Puerto Rico v. Otis Elevator Company., 105 D.P.R. 832, 1977 PR Sup. LEXIS 1946 (P.R. 1977).

In this jurisdiction the workers' right to associate and bargain collect ively is guaranteed constitutionally. Junta de Relaciones del Trabajo de Puerto Rico v. Club Deportivo de Ponce, Inc., 84 P.R.R. 495, 1962 PR Sup. LEXIS 195 (P.R. 1962).

### 3. Public employees.

Members of the Puerto Rico Police do not have a statutory nor constitutional right to collective bargaining, to strike and picket. 1986 Op. Sec. Jus. No. 50.

The Puerto Rico Constitution limits the guarantee to organize and collectively bargain to those employees in government agencies who operate as private businesses. 1986 Op. Sec. Jus. No. 22.

Government employees, with exception of workers of certain public agencies or instrumentalities which operate as private enterprises or businesses, are not guaranteed right to bargain collectively or to strike or picket to obtain better working conditions. ( Reiterating Op. Sec. Just. No. 1967-17.) 1983 Op. Sec. Jus. No. 13.

The right of public employees to organize themselves into bona fide groups, and to have the contributions to those groups withheld from their salaries, cannot be construed to imply the right to bargain collectively through those groups for working conditions and salaries, which are statutorily and not contractually determined. ( Reaffirming the criterion stated in the

§ 17 Right to organize and bargain collectively, Puerto Rico Const. Art. II, § 17

Opinions of the Secretary of Justice, Nos. 1960-13, 1965-31, 1974-2 and 1974-7.) 1974 Op. Sec. Jus. No. 38.

In the absence of statutory authorization, an organization created to promote the unionization of all public employees without any exception whatsoever, in order to bargain collectively with the public employer for better salaries and working conditions, cannot be incorporated because its purposes and objectives are not legal. 1974 Op. Sec. Jus. No. 2.

The governmental employees of the Commonwealth of Puerto Rico, certain agencies and public instrumentalities excepted, do not have the right to bargain collectively guaranteed either by law or by the Constitution. 1974 Op. Sec. Jus. No. 2.

### 4. Employer.

The definition of 'employer' in the Puerto Rico Labor Relations Act § 63 of Title 29 does not include the Government of the Commonwealth of Puerto Rico or any political subdivision thereof, the corporative instrumentalities of the Government dedicated or that may be dedicated to lucrative operations or to money-making activities excepted. 1974 Op. Sec. Jus. No. 2.

Puerto Rico Const. Art. II, § 17, PR CONST Art. II, § 17

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 18 Right to strike, picket, etc., Puerto Rico Const. Art. II, § 18

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article II. Bill of Rights

### Puerto Rico Const. Art. II, § 18

### § 18 Right to strike, picket, etc.

In order to assure their right to organize and to bargain collectively, persons employed by private businesses, enterprises and individual employers and by agencies or instrumentalities of the government operating as private businesses or enterprises, in their direct relations with their own employers shall have the right to strike, to picket and to engage in other legal concerted activities.

Nothing herein contained shall impair the authority of the Legislative Assembly to enact laws to deal with grave emergencies that clearly imperil the public health or safety or essential public services.

### History

### Special provisions.

Seizure of port facilities in emergency, see Act July 25, 1954, No. 1, p. 2, cited in note under § 41 of Title 29.

### ANNOTATIONS

### 1. Public employees.

Members of the Puerto Rico Police do not have a statutory nor constitutional right to collective bargaining, to strike and picket. 1986 Op. Sec. Jus. No. 50.

The right to strike and picket is limited, in the public sector, to those employees in government agencies who operate as private businesses. 1986 Op. Sec. Jus. No. 50.

Government employees, with exception of workers of certain public agencies or instrumentalities which operate as private enterprises or businesses, are not guaranteed right to bargain collectively or to strike or picket to obtain better working conditions. ( Reiterating Op. Sec. Just. No. 1967-17.) 1983 Op. Sec. Jus. No. 13.

A municipal employee who participates in an illegal strike has no right to be compensated for the days he does not perform his duties. ( Reiterating Op. Sec. Jus. July 6, 1971, unpublished.) 1983 Op. Sec. Jus. No. 13.

From a constitutional and statutory point of view, employees of the Government of Puerto Rico, except for workers in certain public agencies or instrumentalities which function as private enterprises or businesses, are not guaranteed the right to bargain collectively or to use the instruments of striking, picketing, etc., to better their working conditions. 1960 Op. Sec. Jus. No. 13.

## 2. Strike.

Right to strike of workers of private business of government agencies operating as private businesses is not subject to any previous or unconditional prohibition under constitutional provisions; nevertheless, it is subject to most ample regulation as public interest demands in cases of 'grave emergencie s that clearly imperil the public health or safety or essential public services Autoridad de Acueductos v. Union de Empleados de la Autoridad de Acueductos. , 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

Right to strike in Puerto Rico is a constitutional one. Union de Trabajadores de la Industria Electrica v. Junta de Relaciones del Trabajo de Puerto Rico., 99 P.R.R. 498, 1970 PR Sup. LEXIS 203 (P.R. 1970).

Constitutional right to strike does not protect those in violation of collective negotiations. Union de Trabajadores de la Industria Electrica v. Junta de Relaciones del Trabajo de Puerto Rico., 99 P.R.R. 498, 1970 PR Sup. LEXIS 203 (P.R. 1970).

## 3. Construction.

Purpose of this section right to strike and picket was not merely to consecrate rights of workers at the time Constitution was enacted. Autoridad de Acueductos v. Union de Empleados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

Legislative intent of last paragraph of this section was to provide community with necessary protection for health, public safety and essential services in cases of grave emergencies, and not to be a criterion for determination whether certain public employees enjoy right to strike or not. Autoridad de Acueductos v. Union de Empleados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

## 4. Government agencies.

Act May 8, 1945, No. 130, as amended, does not provide true criterion to determine what is 'a government instrumentality operating as a private business or enterprise' within framework of this section. Autoridad de Acueductos v. U nion de Empleados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

Workers of Aqueduct and Sewer Authority are covered by this section providing right to strike and picket. Autoridad de Acueductos v. Union de Empleados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

Notwithstanding fact that no criterion is by itself determinant in deciding when government agency or instrumentality operates as private business or enterprise, and its employees enjoy consequently right to strike and picket, courts shall examine in each case presence of following criteria or factors existing altogether in order to decide in light of such findings whether or not concerned agency does function as private business within framework of constitutional provision: (a) whether employees of agency in question are covered by Commonwealth of Puerto Rico Personnel Act; (b) whether services rendered by agency, due to their intrinsic nature, have never been provided before by private enterprises; (c) whether agency is capable of operating as private business or enterprise; (d) whether agency in fact operates as private business or enterprise; (e) degree of fiscal autonomy enjoyed by agency; (f) degree of administrative autonomy enjoyed by agency; (g) whether it charges fee or tariff for services rendered (basic price to be approximately equivalent to value of service); (h) whether powers and functions endowed by organic act on agency are basically similar to those of private enterprise; (i) whether agency is capable of lucrative business or profit-making activities in the future; (j) structure of agency by itself; (k) unlimited powers of agency to sue and be sued; (l) ability and power to obtain funding for its own purposes in the money market based on its own economic record without pledging credit of Commonwealth of Puerto Rico; (m) powers to acquire and administer property without intervention of State; and (n) up to what point recognition of rights of workers of agency mentioned in paragraph one of this section agrees with constitutional general pattern. Autoridad de Acueductos v. Union de Empleados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

Essential nature of service rendered by agency is not determinant in deciding if workers' group has right to strike in

§ 18 Right to strike, picket, etc., Puerto Rico Const. Art. II, § 18

determination of meaning of phras e 'government agencies and instrumentalities operating as private businesses o r enterprises' used in this section. Autoridad de Acueductos v. Union de Emple ados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

## 5. Violence or sabotage.

Issue or writ of injunction under provisions of §§ 101 109 of Title 29 is in order when violence or sabotage is used as weapon of direct or indirect coercion by any parties involved in labor-management dispute disturbing basic principle of peaceful social coexistence that exercise of any constitutional right presupposes. Autoridad de Acueductos v. Union de Empleados de la Autoridad de Acueductos., 105 D.P.R. 437, 1976 PR Sup. LEXIS 3141 (P.R. 1976).

Puerto Rico Const. Art. II, § 18, PR CONST Art. II, § 18

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    135

§ 19 Liberal construction of rights of people and powers..., Puerto Rico Const. Art....

---

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Puerto Rico Const. Art. II, § 19

§ 19 Liberal construction of rights of people and powers of legislative assembly

The foregoing enumeration of rights shall not be construed restrictively nor does it contemplate the exclusion of other rights not specifically mentioned which belong to the people in a democracy. The power of the Legislative Assembly to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively.

## ANNOTATIONS

### 1. Powers of the Legislative Assembly Generally.

Allocation of funds for unauthorized purposes violates § 9 of art. VI o f the Constitution as well as this section regarding rights of the people. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

The Legislative Assembly has ample powers to regulate practices which it considers prejudicial to the marketing system, except when in so doing it violates a specific provision of the Constitution of Puerto Rico. Warner Lambert Company v. Tribunal Superior de Puerto Rico, Sala de San Juan., 101 D.P.R. 378, 101 PR Sup. LEXIS 378 (P.R. 1973).

It rests with the Legislative Assembly if it deems it of public interest rather than with the courts, to warrant the right of a property owner to receive by way of subsidy the rent included in the reasonable rent of th e value of structures which are not used by the tenant. Edelmiro Martinez Rivera v. Juan T. Penagaricano., 90 P.R.R. 529, 1964 PR Sup. LEXIS 285 (P.R. 1964).

The Legislative Assembly is without constitutional power to enact a confiscatory statute, as well as to delegate to an administrative agency the power to determine rights in such a way as to be confiscatory. Felix c. Hernandez Montero v. Antonio Cuevas Viret, Director, y Asociacion de Empleados del Gobierno de Puerto Rico., 88 P.R.R. 767, 1963 PR Sup. LEXIS 391 (P.R. 1963).

A statute which does not respond or conform to constitutional standards is of no avail and does not bind anyone. Felix c. Hernandez Montero v. Antonio Cuevas Viret, Director, y Asociacion de Empleados del Gobierno de Puerto Rico., 88 P.R.R. 767, 1963 PR Sup. LEXIS 391 (P.R. 1963).

The determination of what type of organization is best suited for the discharge of a public function is of the exclusive power of the legislature, and the preference for either type of organization is conclusive on the courts unless it is expressly prohibited by constitutional provisions. Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

### 2. Commercial activity.

§ 19 Liberal construction of rights of people and powers..., Puerto Rico Const. Art....

A state may, in the public interest, constitutionally engage in a business commonly carried on by private enterprise, levy a tax to support said business and compete with private interests engaged in a like activity.Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

### 3. Public corporations, creation of.

The Communications Authority is a public corporation or agency of the People of Puerto Rico through which the Government of Puerto Rico discharges public functions. Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

### 4. Professional practice.

The right to practice medicine and surgery is not one of the fundamental rights with which any person is endowed by the law. 1973 Op. Sec. Jus. No. 13.

### 5. Role of courts.

In Puerto Rico the Legislative Assembly is not the sole agent of necessary social change, and the Judiciary has the principal duty, when constitutional frame has to be kept alive and in tune with the realities of the nation, of collaborating with the Legislature towards that purpose; however, it should be done with moderation and circumspection required by its role in our republican government system and without exceeding its scope. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

Court's role is to construe constitutional provisions involved in case a t bar regarding divorce by mutual consent where irreparable breach of marital bond is alleged, but regulation of this matter would belong exclusively to Legislature if Supreme Court would resolve that it is impotent, under our Constitution, to protect rights to intimacy of citizens of this nation. Sonia Figueroa Ferrer v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 250, 1978 PR Sup. LEXIS 546 (P.R. 1978).

### 6. Freedom of movement.

The freedom of movement in public places does not impede the State in reasonably regulating its enjoyment, but such regulation should favor the general welfare, avoiding unduly infringing upon protected rights, and should effectively regulate the harm being combated. 1987 Op. Sec. Jus. No. 3.

Puerto Rico Const. Art. II, § 19, PR CONST Art. II, § 19

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 20 Human rights recognized; duty of people and government, Puerto Rico Const. Art....

---

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article II. Bill of Rights |

Puerto Rico Const. Art. II, § 20

§ 20 Human rights recognized; duty of people and government

The Commonwealth also recognizes the existence of the following human rights:

The right of every person to receive free elementary and secondary education.

The right of every person to obtain work.

The right of every person to a standard of living adequate for the health and well-being of himself and of his family, and especially to food, clothing, housing and medical care and necessary social services.

The right of every person to social protection in the event of unemployment, sickness, old age or disability.

The right of motherhood and childhood to special care and assistance.

The rights set forth in this section are closely connected with the progressive development of the economy of the Commonwealth and require, for their full effectiveness, sufficient resources and an agricultural and industrial development not yet attained by the Puerto Rican community.

In the light of their duty to achieve the full liberty of the citizen, the people and the government of Puerto Rico shall do everything in their power to promote the greatest possible expansion of the system of production, to assure the fairest distribution of economic output, and to obtain the maximum understanding between individual initiative and collective cooperation. The executive and judicial branches shall bear in mind this duty and shall construe the laws that tend to fulfill it in the most favorable manner possible.

**History**

**Special provisions.**

This section was excepted from the approval of the Constitution by Joint Resolution of Congress of July 3, 1952, c. 567, 66 Stat. 327.

**ANNOTATIONS**

§ 20 Human rights recognized; duty of people and government, Puerto Rico Const. Art....

## 1. Generally.

The court refused to recognize a private cause of action for sex discrimination under the Puerto Rico Constitution as such issue should be determined by the Supreme Court of Puerto Rico, rather than a federal district court. Mejias Miranda v. BBII Acquisition Corp., 120 F. Supp. 2d 157, 2000 U.S. Dist. LEXIS 16266 (D.P.R. 2000).

The unborn infant is not a person and therefore not entitled to constitutional rights. Ruiz Romero v. Gonzalez Caraballo, 681 F. Supp. 123, 1988 U.S. Dist. LEXIS 2158 (D.P.R. 1988).

The Speaker of the House of the Commonwealth enjoys legislative immunity against claims from journalist alleging violation of his civil rights because he was not allowed to work as press legislative official. Agromayor v. Colberg, 738 F.2d 55, 1984 U.S. App. LEXIS 20783 (1st Cir. P.R.), cert. denied, 469 U.S. 1037, 105 S. Ct. 515, 83 L. Ed. 2d 405, 1984 U.S. LEXIS 4515 (U.S. 1984).

Puerto Rico Const. Art. II, § 20, PR CONST Art. II, § 20

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 1 Legislative assembly, Puerto Rico Const. Art. III, § 1

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article III. The Legislature

Puerto Rico Const. Art. III, § 1

§ 1 Legislative assembly

The legislative power shall be vested in a Legislative Assembly, which shall consist of two houses, the Senate and the House of Representatives whose members shall be elected by direct vote at each general election.

**History**

**Prior law.**

Organic Acts, 1900, § 27; 1917, § 25.

**ANNOTATIONS**

**1. Police power of the state.**

The term 'police power of the state' is defined as that power inherent in the state which is utilized by legislature to prohibit or regulate certain activities for the purpose of protecting public order and securing the morals, health and general welfare of community, and this power may be delegated to municipalities. ( Reiterating Op. Sec. Just. No. 1966-40.) 1984 Op. Sec. Jus. No. 33.

Puerto Rico Const. Art. III, § 1, PR CONST Art. III, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article III. The Legislature

### Puerto Rico Const. Art. III, § 2

### § 2 Number of members

The Senate shall be composed of twenty-seven Senators and the House of Representatives of fifty-one Representatives, except as these numbers may be increased in accordance with the provisions of § 7 of this Article.

**History**

**Prior law.**

Organic Acts, 1900, § 27; 1917, §§ 26, 27.

Puerto Rico Const. Art. III, § 2, PR CONST Art. III, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 3 Senatorial and representative districts; senators and..., Puerto Rico Const. Art....

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 3

§ 3 Senatorial and representative districts; senators and representatives at large

For the purpose of election of members of the Legislative Assembly, Puerto Rico shall be divided into eight senatorial districts and forty representative districts. Each senatorial district shall elect two Senators and each representative district one Representative.

There shall also be eleven Senators and eleven Representatives elected at large. No elector may vote for more than one candidate for Senator at Large or for more than one candidate for Representative at Large.

**History**

**Prior law.**

Organic Acts, 1900, § 28; 1917, §§ 26, 27, 28.

**Cross references.**

Boundaries of districts, see art. VIII of this Constitution.

Electoral precincts, see § 3208 of Title 16.

Puerto Rico Const. Art. III, § 3, PR CONST Art. III, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 4 Board to revise senatorial and representative districts, Puerto Rico Const. Art. III, § 4

---

Laws of Puerto Rico Annotated Currentness
  The Constitution of the Commonwealth of Puerto Rico
    Article III. The Legislature

Puerto Rico Const. Art. III, § 4

§ 4 Board to revise senatorial and representative districts

In the first and subsequent elections under this Constitution the division of senatorial and representative districts as provided in Article VIII shall be in effect. After each decennial census beginning with the year 1960, said division shall be revised by a Board composed of the Chief Justice of the Supreme Court as Chairman and of two additional members appointed by the Governor with the advice and consent of the Senate. The two additional members shall not belong to the same political party. Any revision shall maintain the number of senatorial and representative districts here created, which shall be composed of contiguous and compact territory and shall be organized, insofar as practicable, upon the basis of population and means of communication. Each senatorial district shall always include five representative districts.

The decisions of the Board shall be made by majority vote and shall take effect in the general elections next following each revision. The Board shall cease to exist after the completion of each revision.

**History**

**Prior law.**

Organic Act, 1917, § 29.

**Special provisions.**

Section 1 of J.R. No. 64, app. June 5, 1963, provided that the Board created by this section shall be known as the Constitutional Board for the Revision of Senatorial and Representative Electoral Districts.

**Cross references.**

Senatorial and representative electoral districts, see Const., art. VIII, § 1.

Electoral precincts, see § 3208 of Title 16.

**ANNOTATIONS**

**1. Generally.**

The function of the Constitutional Board created by this section to re vise, after each decennial census beginning with 1960, the electoral division of the Commonwealth is a legislative function. Partido Estadista Republicano d e Puerto Rico v. Junta

§ 4 Board to revise senatorial and representative districts, Puerto Rico Const. Art. III, § 4

Constitucional de Revision de Distritos Electorales Senatoriales., 90 P.R.R. 224, 1964 PR Sup. LEXIS 218 (P.R. 1964).

Supreme Court will not interfere with the Constitutional Board until it has completed its legislative function. Partido Estadista Republicano de Puerto Rico v. Junta Constitucional de Revision de Distritos Electorales Senatoriales., 90 P.R.R. 224, 1964 PR Sup. LEXIS 218 (P.R. 1964).

Puerto Rico Const. Art. III, § 4, PR CONST Art. III, § 4

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 5 Qualifications of members of legislative assembly, Puerto Rico Const. Art. III, § 5

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article III. The Legislature |

Puerto Rico Const. Art. III, § 5

§ 5 Qualifications of members of legislative assembly

No person shall be a member of the Legislative Assembly unless he is able to read and write the Spanish or English language and unless he is a citizen of the United States and of Puerto Rico and has resided in Puerto Rico at least two years immediately prior to the date of his election or appointment. No person shall be a member of the Senate who is not over thirty years of age, and no person shall be a member of the House of Representatives who is not over twenty-five years of age.

**History**

**Prior law.**

Organic Acts, 1900, § 30; 1917, §§ 26, 27.

**ANNOTATIONS**

**1. Age.**

Required minimum age for legislators cannot be determined arbitrarily by candidate, political party or even by Legislature. Fernando J. Tonos Florenzan v. Cristino Bernazard, 111 D.P.R. 546, 1981 PR Sup. LEXIS 155 (P.R. 1981).

Constitutional prohibition against persons under 25 years of age becoming members of the House of Representatives operates ex proprio vigore, and automatically disqualifies anyone under such age by January 2 of the year immediately following general elections, when the Constitution states that candidates elected should take the oath of office and be installed. Fernando J. Tonos Florenzan v. Cristino Bernazard, 111 D.P.R. 546, 1981 PR Sup. LEXIS 155 (P.R. 1981).

Puerto Rico Const. Art. III, § 5, PR CONST Art. III, § 5

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 6

§ 6 Residence in district

No person shall be eligible to election or appointment as Senator or Representative for a district unless he has resided therein at least one year immediately prior to his election or appointment. When there is more than one representative district in a municipality, residence in the municipality shall satisfy this requirement.

**History**

**Prior law.**

Organic Act, 1917, §§ 26, 27.

Puerto Rico Const. Art. III, § 6, PR CONST Art. III, § 6

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 7 Representation of minority parties; additional members, Puerto Rico Const. Art. III, § 7

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>
  The Constitution of the Commonwealth of Puerto Rico
    Article III. The Legislature

Puerto Rico Const. Art. III, § 7

§ 7 Representation of minority parties; additional members

If in a general election more than two-thirds of the members of either house are elected from one political party or from a single ticket, as both are defined by law, the number of members shall be increased in the following cases:

(a) If the party or ticket which elected more than two-thirds of the members of either or both houses shall have obtained less than two-thirds of the total number of votes cast for the office of Governor, the number of members of the Senate or of the House of Representatives or of both bodies, whichever may be the case, shall be increased by declaring elected a sufficient number of candidates of the minority party or parties to bring the total number of members of the minority party or parties to nine in the Senate and to seventeen in the House of Representatives. When there is more than one minority party, said additional members shall be declared elected from among the candidates of each minority party in the proportion that the number of votes cast for the candidate of each of said parties for the office of Governor bears to the total number of votes cast for the candidates of all the minority parties for the office of Governor.

When one or more minority parties shall have obtained representation in a proportion equal to or greater than the proportion of votes received by their respective candidates for Governor, such party or parties shall not be entitled to additional members until the representation established for each of the other minority parties under these provisions shall have been completed.

(b) If the party or ticket which elected more than two-thirds of the members of either or both houses shall have obtained more than two-thirds of the total number of votes cast for the office of Governor, and one or more minority parties shall not have elected the number of members in the Senate or in the House of Representatives or in both houses, whichever may be the case, which corresponds to the proportion of votes cast by each of them for the office of Governor, such additional number of their candidates shall be declared elected as is necessary in order to complete said proportion as nearly as possible, but the number of Senators of all the minority parties shall never, under this provision, be more than nine or that of Representatives more than seventeen.

In order to select additional members of the Legislative Assembly from a minority party in accordance with these provisions, its candidates at large who have not been elected shall be the first to be declared elected in the order of the votes that they have obtained, and thereafter its district candidates who, not having been elected, have obtained in their respective districts the highest proportion of the total number of votes cast as compared to the proportion of votes cast in favor of other candidates of the same party not elected to an equal office in the other districts.

The additional Senators and Representatives whose election is declared under this section shall be considered for all purposes as Senators at Large or Representatives at Large.

---

The measures necessary to implement these guarantees, the method of adjudicating fractions that may result from the application of the rules contained in this section, and the minimum number of votes that a minority party must cast in favor of its candidate for Governor in order to have the right to the representation provided herein shall be determined by the Legislative Assembly.

**History**

**Cross references.**

Determination of senators or representatives corresponding to each of the minority parties, see § 3272 of Title 16.

**ANNOTATIONS**

**1. Proportion method.**

In selecting additional candidates of a minority party, once candidates by accumulation are included, the selection among the nonelected candidates, nominated by the same party for the different districts, is adjusted to an order of eligibility that is determined, not by plurality of votes obtained, but by application of the method called 'proportion'. 1960 Op. Sec. Jus. No. 82.

The persons eligible to occupy, in the House of Representatives, the 11 additional seats which correspond as determined by the Commonwealth Board of Elections to the Partido Estadista Republicano pursuant to the general elections of Nov. 8, 1960, are the 11 nonelected candidates for representatives who have obtained in their respective districts the highest proportion of votes cast in favor of other nonelected candidates of the same party for similar offices in the House of Representatives by other districts, provided, of course, that the 'proportion' corresponding to each of said candidates has been computed in strict compliance with requirements of law; this opinion is equally applicable to candidates for seats in the Senate. 1960 Op. Sec. Jus. No. 82.

What this section of the Constitution contemplates is that all the votes cast for Governor be taken into consideration irrespective of the fact that they were cast by virtue of a straight ticket or by virtue of a split ticket; and this is so because when a voter casts a vote for Governor in favor of the candidate of certain party by means of a split ticket, he is in fact casting a vote in favor of the candidate for Governor of said party. 1956 Op. Sec. Jus. No. 77.

Inasmuch as in this section mention is several times made to the 'votes cast for the office of Governor', it is convenient that said sentence be uniformly construed throughout the section. 1956 Op. Sec. Jus. No. 77.

**2. Construction.**

There is no incompatibility whatsoever between the provisions of §§ 2 and 7 of art. II of the Constitution of Puerto Rico, on the one hand, and § 7 of art. III of the said Constitution, on the other hand. Said provisions complement each other. Jaime B. Fuster v. Walter Buso y otros., 102 D.P.R. 327, 1974 PR Sup. LEXIS 255 (P.R. 1974).

There is no conflict whatsoever between the provisions of § 7 of art. III of the Constitution of Puerto Rico and § 7 of art. VI of the said Constitution. Jaime B. Fuster v. Walter Buso y otros., 102 D.P.R. 327, 1974 PR Sup. LEXIS 255 (P.R. 1974).

**3. Senators.**

The rule established by § 276 of Title 16 to the effect that if in applying the antepenultimate paragraph of this section two equal fractions result a drawing must be held, is not of strict application in a case where all the stated circumstances are not

present, as would be the case of cumulative candidates who are elected by a plurality vote or the case of candidates of the same party for the same district. 1956 Op. Sec. Jus. No. 83.

In the situation contemplated in the fourth paragraph of § 276 of Title 16, in relation to the antepenultimate paragraph of this section, wherein one of the candidates obtained 30,970 votes and another from the same party obtained 30,969 votes, the system of creating an artificial tie shall not be applied since the difference is not less than one-half, and therefore the will of the voters must be respected and the candidate who received one vote over the other must be declared elected for the additional seat in the Senate. 1956 Op. Sec. Jus. No. 81.

### 4. Representatives.

Where two candidates from the same party for the House of Representatives received the proportions of 30.8814 and 30.7754 percent, inasmuch as the two fractions are not less than one-half and cannot be considered equal parts, there are no grounds to apply the rule for the case of a tie; and therefore the Commonwealth Board of Elections shall certify the candidate receiving the larger proportion for the additional seat in the House of Representatives. 1956 Op. Sec. Jus. No. 82.

Puerto Rico Const. Art. III, § 7, PR CONST Art. III, § 7

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

     © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 8 Terms of office; vacancies, Puerto Rico Const. Art. III, § 8

Laws of Puerto Rico Annotated Currentness

The Constitution of the Commonwealth of Puerto Rico

Article III. The Legislature

Puerto Rico Const. Art. III, § 8

§ 8 Terms of office; vacancies

The term of office of Senators and Representatives shall begin on the second day of January immediately following the date of the general election on which they shall have been elected. If a vacancy occurs in the office of Senator or Representative for a district, such vacancy shall be filled as provided by law. When the vacancy occurs in the office of a Senator at Large or a Representative at Large, the presiding officer of the appropriate house shall fill it, upon recommendation of the political party to which belonged the Senator or Representative causing the vacancy, with a candidate selected in the same manner as that in which his predecessor was selected. A vacancy in the office of a Senator or Representative at Large elected as an independent candidate, shall be filled by an election in all districts. As amended by the voters at a referendum held Nov. 3, 1964.

**History**

**Prior law.**

Organic Act, 1917, § 30.

**Special provisions.**

Provision for holding a referendum in the general election of Nov. 3, 1964, on amendment of this section, as proposed by House Concurrent Resolution No. 12, approved in the Fourth Regular Session of the Fourth Legislature, was contained in Act June 26, 1964, No. 88, p. 284.

The Legislative Commission report refers to the preceding and purpose of the June 26, 1964, Act No. 88, see Servicio Legislativo de Puerto Rico 1964 No. 4, p. 634.

**Cross references.**

By-elections to fill vacancies in office, see §§ 3206 and 3207 of Titl e 16.

**ANNOTATIONS**

**1. Generally.**

Where public impact of unconstitutional appointment of member of the House of Representatives is of lesser magnitude than judiciary intervention in legislature in progress, and where political party requesting injunction against said appointment made to fill vacancy pursuant to this section failed to prove possibility of success of constitutional challenge against said

procedure, and where possible harm arising from erroneously upheld injunction against one party would be set off by harm arising to the other party from erroneously issued enjoinment, order of trial court is vacated, and case remanded with directions. Cintron-Garcia v. Romero-Barcelo, 671 F.2d 1, 1982 U.S. App. LEXIS 22274 (1st Cir. P.R. 1982).

Puerto Rico Const. Art. III, § 8, PR CONST Art. III, § 8

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 9 Powers of each house, Puerto Rico Const. Art. III, § 9

---

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article III. The Legislature |

Puerto Rico Const. Art. III, § 9

§ 9 Powers of each house

Each house shall be the sole judge of the election, returns and qualifications of its members; shall choose its own officers; shall adopt rules for its own proceedings appropriate to legislative bodies; and, with the concurrence of three-fourths of the total number of members of which it is composed, may expel any member for the causes established in § 21 of this Article, authorizing impeachments. The Senate shall elect a President and the House of Representatives a Speaker from among their respective members.

**History**

**Prior law.**

Organic Acts, 1900, §§ 29, 30; 1917, § 32.

Political Code, 1902, § 210, provided that if a member of the House of Delegates should absent himself from his duties for more than five consecutive days without consent his office should be deemed vacant.

**Cross references.**

Election of officers, see §§ 2, 3, 7, and 8 of Title 2.

Proceedings under this section to be published in Daily Record or Legislative Journal, see § 376 of Title 2.

**ANNOTATIONS**

**1. Officials and employees.**

Services as Executive Secretary of the Senate rendered to Legislative Assembly by former member of Senate who has reached the age of seventy are creditable to Retirement System according to exception provided in Federal Age Discriminations in Employment Act. 1985 Op. Sec. Jus. No. 33.

The 1952 Constitution did not alter the situation that prevailed under the Organic Act with respect to power of Legislature to fix salaries of officials and employees of each House, since this was and is a matter subject to legislation. 1963 Op. Sec. Jus. No. 14.

**2. Condition of member.**

---

Constitutional power of the House as a body to exclude or expel any of its members cannot be delegated upon its President. Juan Corujo Collazo v. Angel Viera Martinez, 111 D.P.R. 552, 1981 PR Sup. LEXIS 156 (P.R. 1981).

There are no constitutional provisions empowering the House President to exclude any of its members. Juan Corujo Collazo v. Angel Viera Martinez, 111 D.P.R. 552, 1981 PR Sup. LEXIS 156 (P.R. 1981).

Elected House member has the right to occupy his position until investigation of all facts related to his oath and installation is completed. Juan Corujo Collazo v. Angel Viera Martinez, 111 D.P.R. 552, 1981 PR Sup. LEXIS 156 (P.R. 1981).

Certificate of election issued by General Administrator of Elections established presumption of having been duly elected or appointed to public office, pursuant to Rule 16(14) of Evidence, App. IV of Title 32. Juan Corujo Collazo v. Angel Viera Martinez, 111 D.P.R. 552, 1981 PR Sup. LEXIS 156 (P.R. 1981).

Rule of Santa Aponte v. Srio. del Senado, 1977, 105 D.P.R. 670, does not apply to case where no action was taken on certification of election of member of House, and where challenge before Electoral Review Board had not been adjudicated. Buenaventura Esteves Lopez v. Cristino Bernazard., 110 D.P.R. 585, 1981 PR Sup. LEXIS 68 (P.R. 1981).

Courts are empowered to examine allegedly unconstitutional actions of Legislature when the latter makes determinations on qualifications of its members, and to determine whether due process has been fulfilled, insofar as all of these are justifiable controversies. Buenaventura Esteves Lopez v. Cristino Bernazard., 110 D.P.R. 585, 1981 PR Sup. LEXIS 68 (P.R. 1981).

This jurisdiction is governed by rule that post-electoral contest is weighed against possibilities of its outcome; therefore, party which questioned election of candidate to public office had burden of showing prima facie reasonable probability of changing election results. Buenaventura Esteves Lopez v. Cristino Bernazard., 110 D.P.R. 585, 1981 PR Sup. LEXIS 68 (P.R. 1981).

Challenge to election cannot be grounded on mere conjectures, generalities, speculations or remote possibilities of its eventual success. Buenaventura Esteves Lopez v. Cristino Bernazard., 110 D.P.R. 585, 1981 PR Sup. LEXIS 68 (P.R. 1981).

Provisions of this section operate only when House is constituted pursuant to law and other transactions required by our statutory system. Buenaventura Esteves Lopez v. Cristino Bernazard., 110 D.P.R. 585, 1981 PR Sup. LEXIS 68 (P.R. 1981).

Supreme Court has jurisdiction, pursuant to the Constitution, to adjudicate contest to election of House member pending before electoral agencies, even after the House has been legally constituted. Buenaventura Esteves Lopez v. Cristino Bernazard., 110 D.P.R. 585, 1981 PR Sup. LEXIS 68 (P.R. 1981).

Parliamentary power to pass judgment on qualification of members and validity of their elections is neither inherent, universal, indispensable for integrity and efficacy of legislative process, nor does it constitute a postulate of natural law, an irrefutable dictate imposed by reason. Jesus Santa Aponte v. Hector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

Provisions of this section do not make provisions of § 1 of art. V null and void. Jesus Santa Aponte v. Hector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

Swearing in of legislator does not deprive legislative body of right and obligation to judge his qualifications and, if justified, to decree his expulsion. Jesus Santa Aponte v. Hector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

Constitutional provision empowering houses of legislature to cast judgment on election of members is restricted by other legal provisions, among them the right to due process of law enjoyed by every citizen under the Constitution of Puerto Rico. Jesus Santa Aponte v. Hector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

Elected Senator has right to occupy senate seat temporarily while challenge of his election is being decided and recount of votes cast in his district is in progress, if in reality he was elected by the voters of the district he represents, when there are no other charges of felony or immortality against him or of any irregularity in his election otherwise favored by regularity presumpti on like election of any legislator thus protecting right of voters of his di strict to be represented in Senate of Puerto Rico. Senador Jesus Santa Aponte v. Senador Luis A. Ferre Aguayo., 105 D.P.R. 670, 1977 PR Sup. LEXIS 1837 (P.R.

§ 9 Powers of each house, Puerto Rico Const. Art. III, § 9

1977).

### 3. Recount.

When election of Legislature member was timely challenged, legislative body enjoyed exclusive constitutional powers to decide whether or not to order recount of votes cast in questioned legislator's election. Jesus Santa Aponte v. H ector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

### 4. Right to occupy seat.

Neither the Governor nor the Secretary has standing to question the decision of the House of Representatives in denying to confirm the nomination of the Secretary of State. Acevedo Vila v. Melendez Ortiz, 164 D.P.R. 875, 2005 PR Sup. LEXIS 74 (P.R. 2005).

Right of citizen to occupy seat in one of the Houses of Legislative Assembly of Puerto Rico is a controversy for courts to decide. Jesus Santa Aponte v. Hector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

Elected Senator duly certified by Electoral Tribunal, sworn in and occupying his senate seat, has the right when his election and certification are challenged as in the present case to remain in his senate seat until it is proved that he did not obtain necessary number of votes to justify his condition as Senator. Jesus Santa Aponte v. Hector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

### 5. House of Representatives.

Constitutional provisions relative to power of House of Representatives as only legislative body with power to originate bill of law destined to obtain revenues should be construed restrictively. 1985 Op. Sec. Jus. No. 17.

Puerto Rico Const. Art. III, § 9, PR CONST Art. III, § 9

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                             © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 10 Regular and special sessions, Puerto Rico Const. Art. III, § 10

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 10

§ 10 Regular and special sessions

The Legislative Assembly shall be deemed a continuous body during the term for which its members are elected and shall meet in regular session each year commencing on the second Monday in January. The duration of regular sessions and the periods of time for introduction and consideration of bills shall be prescribed by law. When the Governor calls the Legislative Assembly into special session it may consider only those matters specified in the call or in any special message sent to it by him during the session. No special session shall continue longer than twenty calendar days.

**History**

**Prior law.**

Organic Acts, 1900, § 29; 1917, § 33.

**Cross references.**

Convening and duration of regular session of legislature, see § 1a of Title 2.

Meetings of Legislative Assembly, see § 1 of Title 2.

Special sessions of Legislative Assembly, see art. IV, § 4, and § 4 of Title 3.

**ANNOTATIONS**

**1. Generally.**

Construction of essence and meaning of this section where it declares that Legislative Assembly shall be a continuing body for the length of its tenure is the exclusive province of Supreme Court of Puerto Rico. Hon. Jose J. Dapena Thompson v. Hon. Severo Colberg Ramirez., 115 D.P.R. 650, 1984 PR Sup. LEXIS 149 (P.R. 1984).

Given continuing nature of Legislative Assembly, Legislative Commissions may continue exercising their functions after date when the regular session ends. Hon. Jose J. Dapena Thompson v. Hon. Severo Colberg Ramirez., 115 D.P.R. 650, 1984 PR Sup. LEXIS 149 (P.R. 1984).

**2. Committees.**

Legislative committees may continue to function after regular session has ended.

§ 10 Regular and special sessions, Puerto Rico Const. Art. III, § 10

Montes., 115 D.P.R. 564, 1984 PR Sup. LEXIS 140 (P.R. 1984).

Purpose of bestowing continuity upon functions of Legislative Assembly was that, at the end of regular session April 30, Legislative Committees could continue carrying out functions concomitant with the constitutional responsibility of Legislative Assembly. Miguel Hernandez Agosto v. Carmelo Ortiz Montes., 115 D.P.R. 564, 1984 PR Sup. LEXIS 140 (P.R. 1984).

Legislative bodies have authority to order respective committees to continue working until last day of legislature, that is, until members of the new Legislative Assembly take their seats in January following general election. Miguel Hernandez Agosto v. Carmelo Ortiz Montes., 115 D.P.R. 564, 1984 PR Sup. LEXIS 140 (P.R. 1984).

Puerto Rico Const. Art. III, § 10, PR CONST Art. III, § 10

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 11 Open sessions, Puerto Rico Const. Art. III, § 11

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 11

§ 11 Open sessions

The sessions of each house shall be open.

**History**

**Prior law.**

Organic Act, 1917, § 34.

Puerto Rico Const. Art. III, § 11, PR CONST Art. III, § 11

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article III. The Legislature |

### Puerto Rico Const. Art. III, § 12

### § 12 Quorum

A majority of the total number of members of which each house is composed shall constitute a quorum, but a smaller number may adjourn from day to day and shall have authority to compel the attendance of absent members.

**History**

**Cross references.**

Compelling attendance of members, see § 11 of Title 2.

Puerto Rico Const. Art. III, § 12, PR CONST Art. III, § 12

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>
  The Constitution of the Commonwealth of Puerto Rico
    Article III. The Legislature

Puerto Rico Const. Art. III, § 13

§ 13 Place of meeting; adjournment

The two houses shall meet in the Capitol of Puerto Rico and neither of them may adjourn for more than three consecutive days without the consent of the other.

**History**

**Prior law.**

Organic Act, 1917, § 34.

**Cross references.**

Meeting in another place in emergency, see Const., art. VI, § 17.

Puerto Rico Const. Art. III, § 13, PR CONST Art. III, § 13

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 14 Privileges and immunities of members, Puerto Rico Const. Art. III, § 14

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
|---|

Laws of Puerto Rico Annotated Currentness

The Constitution of the Commonwealth of Puerto Rico

Article III. The Legislature

Puerto Rico Const. Art. III, § 14

§ 14 Privileges and immunities of members

No member of the Legislative Assembly shall be arrested while the house of which he is a member is in session, or during the fifteen days before or after such session, except for treason, felony or breach of the peace. The members of the Legislative Assembly shall not be questioned in any other place for any speech, debate or vote in either house or in any committee.

**History**

**Cross references.**

Privileges and immunities of members, see §§ 12 19 of Title 2.

**ANNOTATIONS**

**1. Lawmaker's statements.**

It is a generally accepted rule that the statements of a lawmaker, on the floor of the legislative body to which he belongs, do not represent the collective intent of the body enacting the statute. Francisco Vazquez, Inc. v. Secretario de Hacienda, 103 D.P.R. 388, 1975 PR Sup. LEXIS 1599 (P.R. 1975).

**2. Legislative immunity.**

The Legislative Immunity Clause of the Puerto Rico Constitution is broad and responds to the necessity of guaranteeing the independence of the Legislative Branch against other government powers, strengthening the system of separation of powers. In re Figueroa Vivas, 149 D.P.R. 557, 1999 PR Sup. LEXIS 169 (P.R. 1999).

The Legislative Immunity Clause offers protection in the form of an evidentiary privilege, against all mandatory requirement before any forum not legislative. In re Figueroa Vivas, 149 D.P.R. 557, 1999 PR Sup. LEXIS 169 (P.R. 1999).

The Legislative Immunity Clause extends to all legitimate legislative activities, independent of whether the person who holds the privilege is a member of the Puerto Rico Legislature; the determining factor is if the conduct was carried out while the person belonged to the Legislature and was carrying out his/her functions. In re Figueroa Vivas, 149 D.P.R. 557, 1999 PR Sup. LEXIS 169 (P.R. 1999).

When faced with civil rights actions under § 1983, state legislators ar e entitled to the same immunity enjoyed by members of Congress under constitutional immunity. Romero Barcelo v. Hernandez Agosto, 876 F. Supp. 1332 (1995), confirmed by Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 1996 U.S. App. LEXIS 1470 (1st Cir. P.R. 1996).

§ 14 Privileges and immunities of members, Puerto Rico Const. Art. III, § 14

The Speech and Debate Clause is not applicable to state legislators in Puerto Rico; however, both federal common law immunity and the Puerto Rico constitutional immunity apply and afford state legislators protection at the level equivalent to that which is provided by the Speech and Debate Clause. Romero Barcelo v. Hernandez Agosto, 876 F. Supp. 1332 (1995), confirmed by Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 1996 U.S. App. LEXIS 1470 (1st Cir. P.R. 1996).

Because legislative investigations involve core legislative functions, all actions of individual legislators in conjunction with such investigations are immune from prosecution. Romero Barcelo v. Hernandez Agosto, 876 F. Supp. 1332 (1995), confirmed by Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 1996 U.S. App. LEXIS 1470 (1st Cir. P.R. 1996).

Defendants' alleged dissemination of false, defamatory, and slanderous i nformation about the plaintiff through press releases, interviews, and speeches occurring outside the strict scope of their legislative duties, is not protected by the immunity. Romero Barcelo v. Hernandez Agosto, 876 F. Supp. 1332 (1995), confirmed by Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 1996 U.S. App. LEXIS 1470 (1st Cir. P.R. 1996).

Our parliamentary immunity clause was adopted based on North American experience and similar disposition contained in U.S. Constitution. Rolando A. Silva v. Miguel Hernandez Agosto., 118 D.P.R. 45, 1986 PR Sup. LEXIS 179 (P.R. 1986).

Authorization by Legislative Assembly of unconstitutional order does not confer immunity upon those who enforce it. Rolando A. Silva v. Miguel Hernandez Agosto., 118 D.P.R. 45, 1986 PR Sup. LEXIS 179 (P.R. 1986).

From its beginnings, the purpose of parliamentary immunity has not been to impede judicial review of legislative actions, but to protect Legislative Branch from improper interventions by Executive or Judicial Branches and to allow legislators to work freely on the floor without fear of being sued for their official actions. Rolando A. Silva v. Miguel Hernandez Agosto., 118 D.P.R. 45, 1986 PR Sup. LEXIS 179 (P.R. 1986).

Our parliamentary immunity clause is broad in scope; it covers all legislative activity both on the floor or in committee, including at a minimum that which occurs in processes of deliberation, communication, investigation and information as well as in acts necessary for the development of legislative process. Manuel E. Velez Ramirez v. Severo A. Colberg Ramirez, 117 D.P.R. 873, 1986 PR Sup. LEXIS 173 (P.R. 1986).

Parliamentary immunity is not absolute and definition of its limits rests with judiciary, not legislature. Manuel E. Velez Ramirez v. Severo A. Colberg Ramirez, 117 D.P.R. 873, 1986 PR Sup. LEXIS 173 (P.R. 1986).

There is no doubt that the Legislative Library provides essential services to the Legislative Assembly and forms an integral part of the Office of Legislative Services and that director of Legislative Library carries out functions which can reasonably be described as work which significantly informs or influences the legislative process, and, moreover, that the functions of Legislative Library and those of its director are essential to work realized by legislators. Actions of presidents of House of Representatives and Senate in dismissing the director of the Legislative Library are covered by parliamentary immunity afforded by § 14 of this article and thus these actions are exempt from judicial scrutiny. Manuel E. Velez Ramirez v. Severo A. Colberg Ramirez, 117 D.P.R. 873, 1986 PR Sup. LEXIS 173 (P.R. 1986).

In order for a decision to dismiss person from position in the Legislative Assembly to be protected by parliamentary immunity, one of the following criteria must be satisfied: (1) functions carried out by employee may reasonably be described as work by which legislative process is significantly performed or influenced, that is, that employee has 'significant input' into legislative process; or (2) alternatively, that functions of employee are essential to legislative work. Manuel E. Velez Ramirez v. Severo A. Colberg Ramirez, 117 D.P.R. 873, 1986 PR Sup. LEXIS 173 (P.R. 1986).

Protection bestowed by the Constitution of the United States grants immunity to both federal and state legislators. Acosta v. Agosto, 590 F. Supp. 144, 1984 U.S. Dist. LEXIS 15692 (D.P.R. 1984).

Investigation by the Nominations Committee of the Senate concerning Secretary of Justice constitutes part of its functions as a State Branch of a republican representative government; therefore, Puerto Rican legislators were immune against claim filed by said Secretary based upon subpoena issued against him pursuant to the law. Acosta v. Agosto, 590 F. Supp. 144, 1984 U.S. Dist. LEXIS 15692 (D.P.R. 1984).

Investigating and controlling Government, debating topics of public interest and keeping the people informed of progress on

§ 14 Privileges and immunities of members, Puerto Rico Const. Art. III, § 14

public issues in addition to making the law are all legitimate legislative activities. These functions, by definition, are protected under parliamentary immunity. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

Scope of legitimate legislative activity includes processes of deliberation, communication and investigation, and other events that take place inside committee chambers. Parliamentary immunity extends over all that activity. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

Parliamentary immunity is broad in scope. It covers all legitimate legislative activity which includes, at least, those unfolding in the full congressional or committee chambers. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

When this section was established, the investigative power of the Legislature was understood as follows: (1) such power was extraordinarily ample, particularly when investigation was aimed not at a private citizen, but rather at an agency or public official; (2) the power to investigate was a sequel and consequence and an indispensable part of the legislating power; (3) albeit broad power to investigate was not absolute; (4) limitations upon said power were not to be defined by the Executive Branch, and 'Executive Power' was a totally unknown t erm; (5) restrictions applicable to said power had to be determined by Judiciary as supreme interpreter of the Constitution; (6) restrictions consisted in determining that such power should not be arbitrarily exercised, but rather ordain to a legislative purpose, and its exercise should never result in deprivation of prerogatives guaranteed by the Bill of Rights; (7) when the investigation concerned an agency or public official, the courts should exercise extreme discretion before intervening against the investigative power; and (8) the courts generally did not constitute adequate forum to debate challenges to the motives for the investigation, and determination of excessive investigative power of the Legislature should require the existence of an obvious usurpation of functions pertaining to other governmental branches. Sergio Pena Clos v. Desiderio Cartagena Ortiz., 114 D.P.R. 576, 1983 PR Sup. LEXIS 138 (P.R. 1983).

### 3. Judicial scrutiny.

Motivation behind legitimate legislative activity is not appropriate target for judicial scrutiny. Parliamentary immunity is worthless if legislator or legislative body must submit to rigors of judicial procedure to respond for mere vigorous exercise of its prerogatives. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

As highest interpreter of Commonwealth Constitution, Supreme Court must determine boundaries for its clauses. This does not prejudice on limits of any legislative or executive power, or degree of judicial scrutiny to which it is to be subject. It is important to bear in mind historical and social motives behind doctrine of separation of powers and role this doctrine assigns to courts. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

### 4. Legislative aides.

In order for legislative aide to invoke parliamentary immunity, it is necessary that act of said aide would have qualified as immune had it been carried out by legislator proper. What is important is the act, not the person who undertakes it. Rolando A. Silva v. Miguel Hernandez Agosto., 118 D.P.R. 45, 1986 PR Sup. LEXIS 179 (P.R. 1986).

Judicial action against Secretary and Sergeant at Arms of legislative body to estop them from executing unconstitutional legislative order does lie, and said functionaries may not invoke parliamentary immunity. Rolando A. Silva v. Miguel Hernandez Agosto., 118 D.P.R. 45, 1986 PR Sup. LEXIS 179 (P.R. 1986).

### 5. Committees.

Constitution of Commonwealth of Puerto Rico raised existence of legislative committees to constitutional rank. Article III, § 17 requires that all proposed laws be submitted to a committee. This section expressly extends the protection of

parliamentary immunity to the work done in committees. Rolando A. Silva v. Miguel Hernandez Agosto., 118 D.P.R. 45, 1986 PR Sup. LEXIS 179 (P.R. 1986).

The Constitution does not define what constitutes a legislative committee. It falls to the legislative power to create the committees for each body and to define their jurisdiction and powers. Rolando A. Silva v. Miguel Hernandez Agosto., 118 D.P.R. 45, 1986 PR Sup. LEXIS 179 (P.R. 1986).

Puerto Rico Const. Art. III, § 14, PR CONST Art. III, § 14

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article III. The Legislature |

### Puerto Rico Const. Art. III, § 15

### § 15 Membership incompatible with other offices

No Senator or Representative may, during the term for which he was elected or chosen, be appointed to any civil office in the Government of Puerto Rico, its municipalities or instrumentalities, which shall have been created or the salary of which shall have been increased during said term. No person may hold office in the Government of Puerto Rico, its municipalities or instrumentalities and be a Senator or Representative at the same time. These provisions shall not prevent a member of the Legislative Assembly from being designated to perform functions ad honorem.

**History**

**Prior law.**

Organic Act, 1917, § 30.

**Cross references.**

Drawing of salary for more than one office or position prohibited, see Const., art. VI, § 10.

Membership in Legislative Assembly incompatible with other offices, see § 20 of Title 2.

**ANNOTATIONS**

**1. Generally.**

This prohibition does not apply when the benefit was legislated before the assembly member took office or by an assembly of which the member did not take part, eventhough it took effect during the time when the member was elected. Municipio de Morovis v. Adorno Marrero, 169 D.P.R. 392, 2006 PR Sup. LEXIS 154 (P.R. 2006).

An ex-assembly member that holds a municipal position after the member's resignation from the political arena cannot enjoy a benefit legislated after the member's resignation, and should return the money received. Municipio de Mor ovis v. Adorno Marrero, 169 D.P.R. 392, 2006 PR Sup. LEXIS 154 (P.R. 2006).

The proscription in Article III of Puerto Rico's Constitution applies to any legislator in a position that is created or increased in salary during the term for which he was elected. 2000 Op. Sec. Jus. No. 5.

Infringement of this constitutional provision may be excused if the legislator appointed to an already existing position but enhanced by law relinquishes the raise or other enhancement during the term for which he was elected. 2000 Op. Sec. Jus. No. 5.

### 2. Service contract.

Under the Constitution and laws of Puerto Rico there is no impediment to legislator rendering professional services as a lawyer to a municipality by means of a contract, provided the contractual relation is an independent one and does not involve the fulfillment of any office or job, and provided that the compensation is not on a salary basis and provided further that no incompatibility exists between the legislative function and the service contract. 1961 Op. Sec. Jus. No. 40; 1961 Op. Sec. Jus. No. 14.

Puerto Rico Const. Art. III, § 15, PR CONST Art. III, § 15

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 16 Power to change executive departments, Puerto Rico Const. Art. III, § 16

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 16

§ 16 Power to change executive departments

The Legislative Assembly shall have the power to create, consolidate or reorganize executive departments and to define their functions.

**History**

**Prior law.**

Organic Act, 1917, § 37 provided that the Legislature should not create executive departments but that it might consolidate or abolish departments with the consent of the President. See also Organic Act, 1917, § 53, which author ized the transfer of any bureau of office between departments by the Governor with the approval of the Senate.

Puerto Rico Const. Art. III, § 16, PR CONST Art. III, § 16

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article III. The Legislature |

Puerto Rico Const. Art. III, § 17

§ 17 Legislative proceedings

No bill shall become a law unless it has been printed, read, referred to a committee and returned therefrom with a written report, but either house may discharge a committee from the study and report of any bill and proceed to the consideration thereof. Each house shall keep a journal of its proceedings and of the votes cast for and against bills. The legislative proceedings shall be published in a daily record in the form determined by law. Every bill, except general appropriation bills, shall be confined to one subject, which shall be clearly expressed in its title, and any part of an act whose subject has not been expressed in the title shall be void. The general appropriation act shall contain only appropriations and rules for their disbursement. No bill shall be amended in a manner that changes its original purpose or incorporates matters extraneous to it. In amending any article or section of a law, said article or section shall be promulgated in its entirety as amended. All bills for raising revenue shall originate in the House of Representatives, but the Senate may propose or concur with amendments as on other bills.

**History**

**Prior law.**

Organic Acts, 1900, § 31; 1917, § 34.

**Cross references.**

Daily Record or Legislative Journal; journal of each house, see §§ 371 384 of Title 2.

Joint Committee of Budgetary Study of the Legislature, see §§ 601 60 9 of Title 2.

Judicial Branch Reorganization Act of 1993, see the note under § 1 of T itle 4.

**ANNOTATIONS**

**1. Approval of bills.**

Legislative Assembly fulfilled all legal requirements when Municipal Borrowing Law was approved. 1955 Op. Sec. Jus. No. 36.

**2. Title of the law.**

The legal doctrine and the repeated jurisprudence assert that the title of an act is an extrinsic aid in determining the intention

of the legislator. 1973 Op. Sec. Jus. No. 17.

The title of an amendatory act that only makes reference to the section or the article of the basic law which it seeks to amend is valid, as long as the basic act reasonably comprises the subject covered by the proposed amendment. Cerveceria Corona, Inc. v. Junta de Salario Minimo de Puerto Rico, 98 P.R.R. 784, 1970 PR Sup. LEXIS 210 (P.R. 1970).

The title of a law does not have to be a detailed index of its content, but it suffices that it be a guidepost of the matter covered by the act. El Pueblo de Puerto Rico v. Rafael Velez Velez., 97 P.R.R. 119, 1969 PR Sup. LEXIS 94 (P.R. 1969); El Pueblo de Puerto Rico v. Edgardo Vazquez Bruno., 93 P.R.R. 526, 1966 PR Sup. LEXIS 124 (P.R. 1966); Puerto Rico v. Perez Mendez., 83 P.R.R. 221, 1961 PR Sup. LEXIS 405 (P.R. 1961).

The Constitution of Puerto Rico does not require that the details or the procedures established in the laws appear related in their titles, it sufficing that the matter the topic or subject with which the act deals be clearly expressed in its title. El Pueblo de Puerto Rico v. Edgardo Vazquez Bruno., 93 P.R.R. 526, 1966 PR Sup. LEXIS 124 (P.R. 1966); People v. Diaz Torres, 89 P.R.R. 704 (1963).

The Constitution of Puerto Rico does not require that the details or procedures prescribed in the laws be expressed in their titles, it being sufficient that the subject the theme or the matter of the law be clearly expressed in its title. People v. Diaz Torres, 89 P.R.R. 704 (1963).

### 3. Amendments.

As a rule, the Legislature's inaction regarding a proposed amendment of a basic statute of an administrative agency directed to vest upon it some specific power without ceasing to be pertinent to the construction of the law, and occasionally a controlling factor does not deny per se the fact that said a gency has the specific power requested in the proposed amendment. Partido Nuevo Progresista v. Tribunal Electoral de Puerto Rico., 104 D.P.R. 741, 1976 PR Sup. LEXIS 1946 (P.R. 1976).

The mere fact that an agency in an intent to avoid controversies and l itigations resorts to the Legislature seeking an amendment to its basic stat ute in order to clarify the existing doubts with regard to its functions and prerogatives as to a prevailing administrative practice, does not render such practice illegal. Partido Nuevo Progresista v. Tribunal Electoral de Puerto Rico., 104 D.P.R. 741, 1976 PR Sup. LEXIS 1946 (P.R. 1976).

### 4. Investigative power.

When a legislature seeks to inform itself, through hearings, investigations, or otherwise, about the acts and dispositions of the administrative agents of the government, it is undoubtedly engaging in a core legislative function. Romero Barcelo v. Hernandez Agosto, 876 F. Supp. 1332 (1995), confirmed by Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 1996 U.S. App. LEXIS 1470 (1st Cir. P.R. 1996).

Because legislative investigations involve core legislative functions, all actions of individual legislators in conjunction with such investigations are immune from prosecution. Romero Barcelo v. Hernandez Agosto, 876 F. Supp. 1332 (1995), confirmed by Romero-Barcelo v. Hernandez-Agosto, 75 F.3d 23, 1996 U.S. App. LEXIS 1470 (1st Cir. P.R. 1996).

Parliamentary powers of investigation are an essentail part of the Legislature. Sergio Pena Clos v. Desiderio Cartagena Ortiz., 114 D.P.R. 576, 1983 PR Sup. LEXIS 138 (P.R. 1983).

The Legislature is empowered to supervise implementation of public policy and actions of departmental heads by means of its broad investigative authority. Sergio Pena Clos v. Desiderio Cartagena Ortiz., 114 D.P.R. 576, 1983 PR Sup. LEXIS 138 (P.R. 1983).

Inasmuch as the power to investigate derives from the authority to legislate, the obligation of confidentiality as to certain information obtained thereby falls under the obligation of implementing the laws. Sergio Pena Clos v. Desiderio Cartagena Ortiz., 114 D.P.R. 576, 1983 PR Sup. LEXIS 138 (P.R. 1983).

Determination of boundaries for investigative power of Legislature depends on the following criteria: (1) is the power used

arbitrarily in the case in question; (2) is there a legislative purpose behind it; and (3) does the use of such power entail the invasion of any prerogative consecrated by the Bill of Rights. Sergio Pena Clos v. Desiderio Cartagena Ortiz., 114 D.P.R. 576, 1983 PR Sup. LEXIS 138 (P.R. 1983).

### 5. Publicity.

The purpose of the constitutional requirement to print every bill introduced to the Legislative Assembly is to publicize them; the method chosen is secondary. 1985 Op. Sec. Jus. No. 32.

There is no constitutional requirement for the Legislative Assembly to use the most advanced printing techniques to satisfy constitutional mandate to print all bills introduced, as long as exactness, clarity and legibility of reproduced documents are guaranteed, documents are furnished in the shortest time possible after their presentation and assurance against possibility of fraud or deceit is provided. 1985 Op. Sec. Jus. No. 32.

Constitutional clause on publicity of legislative proceedings does not exclude divulgation thereof through other means of communications aside from th e congressional journals including television. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

Mention of congressional journal in the constitutions of the United States and Puerto Rico does not mean that this is the only way for Congress and Legislative Assembly to meet obligation to inform. They may opt to use television. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

Well known, accepted practice in many jurisdictions of televising proceedings of Congressional Houses and their committees is part of traditional informative function of parliamentary bodies. As such, it is protected under parliamentary immunity clause. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

In case where the Executive Branch questions legitimacy of telecasting certain legislative proceedings, duty of courts is only inquiring as to whether or not it is a case of a legitimate legislative practice, duly linked to function of congress or of any of its parts, within framework of separation of powers. Hon. Carlos Romero Barcelo v. Miguel Hernandez Agosto., 115 D.P.R. 368, 1984 PR Sup. LEXIS 116 (P.R. 1984).

### 6. House of Representatives.

There is no constitutional requirement for the Legislative Assembly to use the most advanced printing techniques to satisfy constitutional mandate to print all bills introduced, as long as exactness, clarity and legibility of reproduced documents are guaranteed, documents are furnished in the shortest time possible after their presentation and assurance against possibility of fraud or deceit is provided. 1985 Op. Sec. Jus. No. 32.

Constitutional provisions relative to power of House of Representatives as only legislative body with power to originate a bill of law destined to obtain revenues should be construed restrictively. 1985 Op. Sec. Jus. No. 17.

A bill proposing tax relief is not for obtaining revenues; thus, it can be originated in the Senate or in the House of Representatives. 1985 Op. Sec. Jus. No. 17.

Puerto Rico Const. Art. III, § 17, PR CONST Art. III, § 17

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

§ 17 Legislative proceedings, Puerto Rico Const. Art. III, § 17

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 18

§ 18 Joint resolutions

The subjects which may be dealt with by means of joint resolution shall be determined by law, but every joint resolution shall follow the same legislative process as that of a bill.

**History**

**Prior law.**

Organic Act, 1917, § 34.

**Cross references.**

Subjects to be dealt with by joint resolutions, see §§ 200 and 201 of Title 2.

Puerto Rico Const. Art. III, § 18, PR CONST Art. III, § 18

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   171

§ 19 Passage of bills; approval by Governor, Puerto Rico Const. Art. III, § 19

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article III. The Legislature

Puerto Rico Const. Art. III, § 19

§ 19 Passage of bills; approval by Governor

Every bill which is approved by a majority of the total number of members of which each house is composed shall be submitted to the Governor and shall become law if he signs it or if he does not return it, with his objections, to the house in which it originated within ten days (Sundays excepted) counting from the date on which he shall have received it.

When the Governor returns a bill, the house that receives it shall enter his objections on its journal and both houses may reconsider it. If approved by two-thirds of the total number of members of which each house is composed, said bill shall become law.

If the Legislative Assembly adjourns sine die before the Governor has acted on a bill that has been presented to him less than ten days before, he is relieved of the obligation of returning it with his objections and the bill shall become law only if the Governor signs it within thirty days after receiving it.

Every final passage or reconsideration of a bill shall be by a roll-call vote.

**History**

**Prior law.**

Organic Acts, 1900, § 31; 1917, § 34.

**ANNOTATIONS**

**1. Term.**

The exclusion of Saturdays and Sundays in computing the term does not apply where the legislature expressly provides a term and specific mechanism for a particular situation, as in former Act 34 of the Organic Act of 1917 and § 19 of art. III of the Constitution of the Commonwealth, preceding Title 1, in reference to the ten-day period (excluding Sundays) provided to the First Executive to approve or disapprove the legislative measures submitted for his consideration. ( Reiterating Op. Sec. Just. No. 1968-22.) 1983 Op. Sec. Jus. No. 5.

The ten days provided in Rule 232 of App. II of Title 34 for execution and return of search warrant are extended when the last day is a holiday or a weekend. 1983 Op. Sec. Jus. No. 5.

§ 19 Passage of bills; approval by Governor, Puerto Rico Const. Art. III, § 19

No power may be considered absolute under our system of laws. Jesus Santa Aponte v. Hector M. Hernandez., 105 D.P.R. 750, 1977 PR Sup. LEXIS 1940 (P.R. 1977).

The opinion of September 7, 1968, is ratified, in which it was said that the term of 10 days that the Governor has in which to approve or veto a bill is counted from the exact moment when the bill is presented to him. 1969 Op. Sec. Jus. No. 22.

The term of ten days which the Governor has to sign bills or return them to the house in which they originated begins to run and is figured on 24-hour days counting from the exact moment that the bill was presented to him, up to the maximum of 10 days (or 240 hours), Sundays excepted. 1968 Op. Sec. Jus. No. 22.

A constitutional provision has an authority superior to any other precept of a statutory nature; and, in addition, where the members of the Constitutional Convention provided for a term and specific mechanics for a particular situation, such as the term that the Chief Executive has to approve or veto a legislative measure submitted to him, it made it clear that this would be the mechanics and the interpretation that must prevail over any other. 1968 Op. Sec. Jus. No. 22.

**2. Legislative purpose.**

If a statute is in any way objectionable, the motive for its enactment is irrelevant. Torres v. Delgado, 510 F.2d 1182, 1975 U.S. App. LEXIS 16164 (1st Cir. P.R. 1975).

Puerto Rico Const. Art. III, § 19, PR CONST Art. III, § 19

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 20

§ 20 Item veto

In approving any appropriation bill that contains more than one item, the Governor may eliminate one or more of such items or reduce their amounts, at the same time reducing the total amounts involved.

**History**

**Prior law.**

Organic Act, 1917, § 34.

Puerto Rico Const. Art. III, § 20, PR CONST Art. III, § 20

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

§ 21 Impeachment proceedings, Puerto Rico Const. Art. III, § 21

---

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 21

§ 21 Impeachment proceedings

The House of Representatives shall have exclusive power to initiate impeachment proceedings and, with the concurrence of two-thirds of the total number of members of which it is composed, to bring an indictment. The Senate shall have exclusive power to try and to decide impeachment cases, and in meeting for such purposes the Senators shall act in the name of the people and under oath or affirmation. No judgment of conviction in an impeachment trial shall be pronounced without the concurrence of three-fourths of the total number of members of which the Senate is composed, and the judgment shall be limited to removal from office. The person impeached, however, may be liable and subject to indictment, trial, judgment and punishment according to law. The causes of impeachment shall be treason, bribery, other felonies, and misdemeanors involving moral turpitude. The Chief Justice of the Supreme Court shall preside at the impeachment trial of the Governor.

The two houses may conduct impeachment proceedings in their regular or special sessions. The presiding officers of the two houses, upon written request of two-thirds of the total number of members of which the House of Representatives is composed, must convene them to deal with such proceedings.

**History**

**Prior law.**

Organic Act, 1917, § 12a.

**Cross references.**

Proceedings under this section to be published in Daily Record or Legislative Journal, see § 376 of Title 2.

**ANNOTATIONS**

**1. Mayors.**

The power to remove mayors does not reside exclusively in the Legislative Assembly, since said power may be validly delegated to any other body of its own making, such as the Committee for the Settlement of Municipal Complaints. Edelmiro Rodriguez Rivera v. Comision Para Ventilar Querellas Municipales., 84 P.R.R. 66, 1961 PR Sup. LEXIS 490 (P.R. 1961).

Puerto Rico Const. Art. III, § 21, PR CONST Art. III, § 21

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative

**§ 21 Impeachment proceedings, Puerto Rico Const. Art. III, § 21**

Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 22 Controller, Puerto Rico Const. Art. III, § 22

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article III. The Legislature

Puerto Rico Const. Art. III, § 22

§ 22 Controller

The Governor shall appoint a Controller with the advice and consent of a majority of the total number of members of which each house is composed. The Controller shall meet the requirements prescribed by law and shall hold office for a term of ten years and until his successor has been appointed and qualifies. The Controller shall audit all the revenues, accounts and expenditures of the Commonwealth, of its agencies and instrumentalities and of its municipalities, in order to determine whether they have been made in accordance with law. He shall render annual reports and any special reports that may be required of him by the Legislative Assembly or by the Governor.

In the performance of his duties the Controller shall be authorized to administer oaths, take evidence and compel, under pain of contempt, the attendance of witnesses and the production of books, letters, documents, papers, records and all other articles deemed essential to a full understanding of the matter under investigation.

The Controller may be removed for the causes and pursuant to the procedure established in the preceding section.

**History**

**Prior law.**

Organic Act, 1917, § 20.

**Cross references.**

Controller, see §§ 71 73 and 76 87 of Title 2.

Removal of General Administrator of Elections, see § 3006 of Title 16.

Salary of Controller, see § 577 of Title 3.

Puerto Rico Const. Art. III, § 22, PR CONST Art. III, § 22

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and

§ 22 Controller, Puerto Rico Const. Art. III, § 22

promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 1 Governor, Puerto Rico Const. Art. IV, § 1

Laws of Puerto Rico Annotated <sup>Currentness</sup>

  The Constitution of the Commonwealth of Puerto Rico

    Article IV. The Executive

Puerto Rico Const. Art. IV, § 1

§ 1 Governor

The executive power shall be vested in a Governor, who shall be elected by direct vote in each general election.

**History**

**Prior law.**

Organic Acts, 1900, § 17; 1917, § 12.

**Cross references.**

Protection of candidates for Governor, see § 3179 of Title 16.

Puerto Rico Const. Art. IV, § 1, PR CONST Art. IV, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   179

§ 2 Term of office; residence and office, Puerto Rico Const. Art. IV, § 2

---

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article IV. The Executive |

Puerto Rico Const. Art. IV, § 2

§ 2 Term of office; residence and office

The Governor shall hold office for the term of four years from the second day of January of the year following his election and until his successor has been elected and qualifies. He shall reside in Puerto Rico and maintain his office in its capital city.

**History**

**Prior law.**

Organic Acts, 1900, § 17; 1917, § 12.

Puerto Rico Const. Art. IV, § 2, PR CONST Art. IV, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 3 Qualifications of Governor, Puerto Rico Const. Art. IV, § 3

---

Laws of Puerto Rico Annotated **Currentness**

The Constitution of the Commonwealth of Puerto Rico

Article IV. The Executive

Puerto Rico Const. Art. IV, § 3

§ 3 Qualifications of Governor

No person shall be Governor unless, on the date of the election, he is at least thirty-five years of age, and is and has been during the preceding five years a citizen of the United States and a citizen and bona fide resident of Puerto Rico.

**History**

**Prior law.**

Organic Act, 1917, § 12.

Puerto Rico Const. Art. IV, § 3, PR CONST Art. IV, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article IV. The Executive

## Puerto Rico Const. Art. IV, § 4

### § 4 Powers and duties of Governor

The Governor shall execute the laws and cause them to be executed.

He shall call the Legislative Assembly of the Senate into special session when in his judgment the public interest so requires.

He shall appoint, in the manner prescribed by this Constitution or by law, all officers whose appointment he is authorized to make. He shall have the power to make appointments while the Legislative Assembly is not in session. Any such appointments that require the advice and consent of the Senate or of both houses shall expire at the end of the next regular session.

He shall be the commander-in-chief of the militia.

He shall have the power to call out the militia and summon the posse comitatus in order to prevent or suppress rebellion, invasion or any serious disturbance of the public peace.

He shall have the power to proclaim martial law when the public safety requires it in case of rebellion or invasion or imminent danger thereof. The Legislative Assembly shall meet forthwith on their own initiative to ratify or revoke the proclamation.

He shall have the power to suspend the execution of sentences in criminal cases and to grant pardons, commutations of punishment, and total or partial remissions of fines and forfeitures for crimes committed in violation of the laws of Puerto Rico. This power shall not extend to cases of impeachment.

He shall approve or disapprove in accordance with this Constitution the joint resolutions and bills passed by the Legislative Assembly.

He shall present to the Legislative Assembly, at the beginning of each regular session, a message concerning the affairs of the Commonwealth and a report concerning the state of the Treasury of Puerto Rico and the proposed expenditures for the ensuing fiscal year. Said report shall contain the information necessary for the formulation of a program of legislation.

He shall exercise the other powers and functions and discharge the other duties assigned to him by this Constitution or by law.

## History

### Prior law.

Organic Acts, 1900, § 17; 1917, §§ 12, 26, 34.

### Cross references.

Annual message and report to Legislative Assembly, see § 3 of Title 3.

Appointment of officers, see §§ 5 and 541 of Title 3.

Powers and duties of the Governor, see § 1 of Title 3.

Special sessions of Legislative Assembly, see art. III, § 10, of this C onstitution and § 4 of Title 3.

## ANNOTATIONS

### 1. Pardon Federal acts.

The Governor cannot grant a total pardon to a convict for violation of the laws of the United States, since such power is of the exclusive competence of the President of the United States. 1960 Op. Sec. Jus. No. 33.

### 2. Effects.

The right to pardon granted to the Governor by this section is to be exercised by the Governor in criminal cases and after a sentence. 1986 Op. Sec. Jus. No. 2.

The Governor lacks the power to exercise the executive pardon in the case of dismissal of a mayor by the Committee for the Settlement of Municipal Complaints, after the administrative hearing. 1986 Op. Sec. Jus. No. 2.

There is no bar to contract services of pardoned convict provided pardon is fully effective and all other necessary steps have been fulfilled. 1968 Op. Sec. Jus. No. 25.

No opinion can be held regarding contract of services of any convict; specific cases and concrete facts with particular grounds thereof must be submitted into consideration. 1968 Op. Sec. Jus. No. 25.

The pardon erases forever the conviction for the crime committed leaving, henceforth, the one who received the pardon as clean of the conviction as though he had never been convicted; the parole does not erase the conviction and it is something more than a mercy act, is primarily a penological medicine for developing the discipline and reform of the convicts. 1960 Op. Sec. Jus. No. 33.

A pardon only restores to a convict ordinary civil rights lost upon conviction such as the right to vote, to serve on a jury, to hold public office; it does not restore nor does it automatically reinstate him to an office forfeited by reason of his conviction; therefore the Superintendent of Police need not reinstate to his former position an ex-policeman pardoned by the Governor. 1958 Op. Sec. Jus. No. 52.

The Constitution, art. II, § 12, restores the civil rights of a convict once his term has been served, making unnecessary an executive intervention; but only a pardon, a power reserved to the Governor, restores these rights before the end of the term. 1958 Op. Sec. Jus. No. 26.

### 3. Conditional.

The revocation of a conditional pardon by the Governor of Puerto Rico is valid when the person under conditional pardon, in violation of the conditions of said pardon, committed a felony for which he was prosecuted and convicted. Said revocation is not subject to the conditions and procedure established by §§ 641 651 of Title 4. Benjamin Ortiz Castro v. Gerardo Delgado., 97 P.R.R. 200, 1969 PR Sup. LEXIS 131 (P.R. 1969).

Having examined the conditions contained in the pardon document, the Court concludes that in this case the question of lack of due process of law cannot arise here because, apart from the reservation of summary revocation contained in the pardon itself, provision was expressly made in the case for a judicial review in the event the pardon was summarily revoked. Reynolds v. Jefe Penitenciaria, 91 D.P.R. 303 (1964); Domingo Emanuelli Fontanez v. Tribunal de Distrito de Puerto Rico, Seccion de Ponce, 74 P.R.R. 506, 1953 PR Sup. LEXIS 186 (P.R. 1953).

A pardon is an act of executive clemency which does not form part in itself of the criminal process which culminates in the accused's conviction. Ruth R eynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964); El Pueblo de Puerto Rico v. Pedro Albizu Campos, 77 P.R.R. 843, 1955 PR Sup. LEXIS 149 (P.R. 1955).

The power to grant a pardon may be exercised by granting a total and absolute pardon, or a pardon with a condition annexed thereto. El Pueblo de Puerto Rico v. Pedro Albizu Campos, 77 P.R.R. 843, 1955 PR Sup. LEXIS 149 (P.R. 1955).

In a conditional pardon the only limitation to which the executive is subject is that the conditions imposed must not be illegal, immoral, or impossible of performance. El Pueblo de Puerto Rico v. Pedro Albizu Campos, 77 P.R.R. 843, 1955 PR Sup. LEXIS 149 (P.R. 1955).

The acceptance of a conditional pardon carries with it the acceptance of the conditions on which it is granted. When a condition precedent is attached to the pardon such condition must be performed for the pardon to become operative. When a condition subsequent is annexed thereto, the pardon becomes operative when accepted. If the condition in the latter instance is not performed, the pardon may be revoked. El Pueblo de Puerto Rico v. Pedro Albizu Campos, 77 P.R.R. 843, 1955 PR Sup. LEXIS 149 (P.R. 1955).

A conditional pardon in which the executive expressly reserved the right of summary revocation is subject to such revocation without the need of previous judicial determination as to the breach of the condition annexed. El Pueblo de Puerto Rico v. Pedro Albizu Campos, 77 P.R.R. 843, 1955 PR Sup. LEXIS 149 (P.R. 1955).

A pardon subject to summary revocation in the event the prisoner attempts or plots against the public order, intending to subvert by violence or terror the existing constitutional order, etc., is a conditional rather than a total and absolute pardon. El Pueblo de Puerto Rico v. Pedro Albizu Campos, 77 P.R.R. 843, 1955 PR Sup. LEXIS 149 (P.R. 1955).

The fact that in this jurisdiction the power of pardon flows from our Constitution does not deprive the Governor of authority, in granting pardons, to impose such conditions as in his judgment the public interest so requires, provided such conditions are not illegal, immoral, or impossible of performance. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964); Domingo Emanuelli Fontanez v. Tribunal de Distrito de Puerto Rico, Seccion de Ponce, 74 P.R.R. 506, 1953 PR Sup. LEXIS 186 (P.R. 1953).

### 4. Return of property.

The absolute, full and unconditional pardon granted to a defendant implies the obligation to return to him any property forfeited, unless by virtue of the forfeiture proceedings it has legally passed to third persons, or if sold by virtue of such proceeding and reduced to money, the money is turned into the Treasury of the State. Roberts H. Downs v. Santiago Porrata Doria., 76 P.R.R. 572, 1954 PR Sup. LEXIS 295 (P.R. 1954).

### 5. Jurisdiction.

There is no obstacle for the First Executive to pardon collateral punishment of driving license suspension for 5-year period of

convict for involuntary manslaughter who received 2-year imprisonment sentence reduced to 1 year, which was fully served, and only license suspension remained. 1969 Op. Sec. Jus. No. 25.

First Executive may exercise constitutional power to pardon regarding direct sentence and additional or collateral punishments of sentence for violation of legal provision. 1969 Op. Sec. Jus. No. 25.

A convict enjoys a pardon not as a part of any right recognized to him by the existing juridical order, but by the grant of a grace by the executive power. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964); El Pueblo de Puerto Rico v. Pedro Albizu Campos, 77 P.R.R. 843, 1955 PR Sup. LEXIS 149 (P.R. 1955).

The supreme executive authority of a state cannot exercise the pardon power in relation to the execution of judgments pronounced by other jurisdictions. 1960 Op. Sec. Jus. No. 33.

The action for exoneration of legal impediment resulting from a conviction can only be exercised by the executive authority of the jurisdiction where such impediment was established. 1960 Op. Sec. Jus. No. 33.

The Governor can only exonerate a convict from legal impediment of a local character arising as a consequence of a conviction pronounced by a federal court. 1960 Op. Sec. Jus. No. 33.

### 6. Revocation.

There is no constitutional provision limiting the exercise of power of the Executive to grant conditional pardons, or requiring, as a matter of due process of law, either a previous hearing for their revocation under the circumstances of this case, nor the determination of the judicial authority for recommitment incidental to the revocation. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964).

The juridical test to determine the justification of the revocation of a pardon by the Executive should be based on whether or not said action is arbitrary, that is, on the reasonability of his action. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964).

The evidence, as related in the opinion, together with the judicial notice taken by this Court, are sufficient to conclude that the Executive was justified in validly revoking the conditional pardon granted in this case, under the juridical test that his action in revoking said pardon was not arbitrary, as well as under the more stringent juridical test that appellant could be charged as part of a conspiracy with acts attempted against the public safety, by mean s of violence or terror, with the intention to subvert the existing constitutional order. Ruth Reynolds v. Gerardo Delgado., 91 P.R.R. 294, 1964 PR Sup. LEXIS 366 (P.R. 1964).

### 7. Appointments.

The phrase 'holding over' refers to the concept of job continuity wher e employment agreement contains clause stating that incumbent official shall hold office until his successor has been appointed and takes over. (Reiterating Op. Sec. Just. No. 1967-25.) 1985 Op. Sec. Jus. No. 22.

Incumbent who was appointed to office for fixed term and continues to perform duties of the office after term has expired is a de jure officer with legal title to position and can be replaced only by a person appointed the same way. 1985 Op. Sec. Jus. No. 22.

According to our jurisprudence, constitutional scheme and doctrine in force in federal jurisdiction, an incumbent official holding over in office with fixed term can be replaced by interim appointment once term has expired in accordance with continuity clause. 1985 Op. Sec. Jus. No. 22.

According to our Constitution, Governor's authority to make appointments is analogous to that of the President of the United States. 1985 Op. Sec. Jus. No. 3.

The basic criterion to determine whether limitation on First Executive's exclusive and absolute power to discharge officials

§ 4 Powers and duties of Governor, Puerto Rico Const. Art. IV, § 4

appointed by him is applicable is not whether official is appointed for fixed term but rather is based upon nature of his duties. (Reiterating Op. Sec. Jus. January 12, 1973, unpublished.) 1985 Op. Sec. Jus. No. 3.

An appointment by the Governor during recess enjoys the presumption of validity. If such validity is questioned, appointee may obtain provisional remedy so that the appointment is given full effect while decision on the merits of its validity is resolved. Roberto Schmidt Monge v. Eulalio A. Torres., 115 D.P.R. 414, 1984 PR Sup. LEXIS 118 (P.R. 1984).

The Executive Branch cannot deprive the Legislature of its constitutional powers of advice and consent, neither can the Senate abrogate the nominating power from the Governor. Miguel A. Hernandez Agosto v. Carlos J. Lopez Nieves., 114 D.P.R. 601, 1983 PR Sup. LEXIS 139 (P.R. 1983).

The principle of separation of powers does not admit situations of indefinite interim substitutions for positions requiring advice and consent of the Senate. Miguel A. Hernandez Agosto v. Carlos J. Lopez Nieves., 114 D.P.R. 601, 1983 PR Sup. LEXIS 139 (P.R. 1983).

Until a shorter term is mandated by law, any interim substitution in public positions requiring advice and consent of the Senate for appointments will be void pursuant to the Constitution at the closing of the current regular legislative session, or the one immediately following the interim appointment, unless definite appointment is made beforehand. Miguel A. Hernandez Agosto v. Carlos J. Lopez Nieves., 114 D.P.R. 601, 1983 PR Sup. LEXIS 139 (P.R. 1983).

Any group of senators can request an injunction or declaratory judgment questioning the tenure in a position of anyone in conflict or detriment with the confirmation power of the Senate. Miguel A. Hernandez Agosto v. Carlos J. Lopez Nieves., 114 D.P.R. 601, 1983 PR Sup. LEXIS 139 (P.R. 1983).

The Constitution has no provision against the approval of an act authorizing the Governor to appoint the members of the Commonwealth Board of Elections with the advice and consent of both Houses of the Legislature. 1973 Op. Sec. Jus. No. 35.

Pursuant to constitutional and statutory provisions in force, Governor merely submits to Senate, to House, or both, nomination of candidate who best meets necessary requirements according to his judgment to fulfill the position and said nomination is in no way an appointment, because Governor lacks constitutional powers to produce it by himself in all cases requiring advice and consent, when the Assembly houses are in session, and in case said houses would take no action on nomination or reject same expressly, it would turn unoperative and ineffective for an ulterior purpose. 1967 Op. Sec. Jus. No. 25.

From the construction one tends to conclude that the procedural matter applicable to the exercise of the executive power of appointing officers was incorporated into our Constitution by general reference to the applicable doctrines, statutory as well as juridical, of the sphere of the federal jurisdiction, and this explains why this provision has no strict relation to the drafting and content of the correlative art. II, § 2 of the United States Constitution. 1967 Op. Sec. Jus. No. 25.

### 8. Executive privilege.

This section, together with § 1 of this Article and § 1 of Article I , inasmuch as it adopts the separation of powers theory, provides sufficient grounds for the adoption of the executive privilege doctrine in Puerto Rico. Sergio Pena Clos v. Desiderio Cartagena Ortiz., 114 D.P.R. 576, 1983 PR Sup. LEXIS 138 (P.R. 1983).

Investigative power of Legislature is no more absolute than faculty of Executive Branch to withhold information based on alleged confidentiality thereof. Sergio Pena Clos v. Desiderio Cartagena Ortiz., 114 D.P.R. 576, 1983 PR Sup. LEXIS 138 (P.R. 1983).

### 9. Executive orders.

Authority of Governor to issue executive orders derives from statute and nature of office. ( Reiterating Op. Sec. Just. No. 1968-2.) 1984 Op. Sec. Jus. No. 31.

Executive orders issued upon constitutional or statutory powers have statutory nature and effect. ( Reiterating Op. Sec. Jus.

§ 4 Powers and duties of Governor, Puerto Rico Const. Art. IV, § 4

No. 1981-22.) 1984 Op. Sec. Jus. No. 31; 1986 Op. Sec. Jus. No. 24.

Executive order finds legal support in general powers of First Executive to execute laws and enforce compliance with them, to supervise official conduct of all officials of the Executive Branch and make sure they comply with the duties of their offices, and consequently an order cannot conflict with the law. ( Reiterating Op. Sec. Just. July 14, 1978, unpublished.) 1985 Op. Sec. Jus. No. 5.

Every executive order constitutes a mandate and the government bodies to which they are directed belong to Executive Branch. 1985 Op. Sec. Jus. No. 5.

### 10. Dismissial of a public officer.

The requirement of just cause to dismiss a public officer, who carried out quasi-legislative and independent functions, does not infringe upon the constitutional power of the Governor. Guzman Vargas v. Calderon, 164 D.P.R. 220, 2005 PR Sup. LEXIS 29 (P.R. 2005).

Puerto Rico Const. Art. IV, § 4, PR CONST Art. IV, § 4

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 5 Appointment of Secretaries; Council of Secretaries, Puerto Rico Const. Art. IV, § 5

Laws of Puerto Rico Annotated Currentness

The Constitution of the Commonwealth of Puerto Rico

Article IV. The Executive

Puerto Rico Const. Art. IV, § 5

§ 5 Appointment of Secretaries; Council of Secretaries

For the purpose of exercising executive power, the Governor shall be assisted by Secretaries whom he shall appoint with the advice and consent of the Senate. The appointment of the Secretary of State shall in addition require the advice and consent of the House of Representatives, and the person appointed shall fulfill the requirements established in § 3 of this Article. The Secretaries shall collectively constitute the Governor's advisory council, which shall be d esignated as the Council of Secretaries.

**History**

**Prior law.**

Organic Acts, 1900, § 18; 1917, § 13.

**ANNOTATIONS**

**1. Generally.**

Neither doctrine of separation of powers nor any other doctrine may support reversal of Constitutional Convention refusal to establish term of incumbence for Secretaries. Miguel A. Hernandez Agosto v. Carlos Romero Barcelo, 112 D.P.R. 407, 1982 PR Sup. LEXIS 110 (P.R. 1982).

There are no Constitutional or statutory provisions in the Commonwealth of Puerto Rico mandating that the Governor should require advice and consent of the Senate for nomination of Secretaries of his Cabinet whom he wished to retain in office and who were appointed during a previous term. Miguel A. Hernandez Agosto v. Carlos Romero Barcelo, 112 D.P.R. 407, 1982 PR Sup. LEXIS 110 (P.R. 1982).

Puerto Rico Const. Art. IV, § 5, PR CONST Art. IV, § 5

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

§ 5 Appointment of Secretaries; Council of Secretaries, Puerto Rico Const. Art. IV, § 5

§ 6 Executive departments, Puerto Rico Const. Art. IV, § 6

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article IV. The Executive |

Puerto Rico Const. Art. IV, § 6

§ 6 Executive departments

Without prejudice to the power of the Legislative Assembly to create, reorganize and consolidate executive departments and to define their functions, the following departments are hereby established: State, Justice, Education, Health, Treasury, Labor, Agriculture and Commerce, and Public Works. Each of these executive departments shall be headed by a Secretary.

**History**

**Codification.**

'Public instruction' was substituted with 'Education' pursuant to Act Aug. 28, 1990, No. 68.

'Agriculture and Commerce' was substituted with 'Agriculture' purs uant to Art. IX, Sec. 8 of the Constitution and Act July 19, 1960, No. 132.

**Prior law.**

Organic Acts, 1900, §§ 18, 19, 21-25; 1917, §§ 13-20, 22, 37.

**Cross references.**

Addiction Services, see § 401a of Title 3.

Agriculture, renaming of Department of Agriculture and Commerce pursuant to art. IX, § 8, of the Constitution.

Consumer Affairs, see § 341a of Title 3.

Housing, see § 441a of Title 3.

Labor and Human Resources, renaming of Department of Labor, see note under § 301 of Title 3.

Natural and Environmental Resources, see § 152 of Title 3.

Salaries of Secretaries, see § 34 of Title 3.

Department of the Family, see § 211a of Title 3.

Transportation and Public Works, renaming of Department of Public Works, see Reorganization Plan No. 6 of 1971 under § 414 of Title 3.

## ANNOTATIONS

### 1. Delegation of functions.

It is settled that the chief of a department can delegate to his subordinates functions of internal department administration; in fact it could not be expected that an agency chief could carry out his executive functions in any other way. 1959 Op. Sec. Jus. No. 22.

### 2. Powers.

Administrative organisms depend completely on the statutes that authorize them and which regulate their operation and establish and limit their powers; thus, they can only exercise those powers which have been expressly vested in them by their organic act and any implicit powers reasonably necessary for carrying out those expressly vested. (Reiterating Op. Sec. Just. No. 1982-2; June 21, 1977, unpublished, and No. 1973-31.) 1983 Op. Sec. Jus. No. 7.

Puerto Rico Const. Art. IV, § 6, PR CONST Art. IV, § 6

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 7 Succession to office of Governor Permanent vacancy, Puerto Rico Const. Art. IV, § 7

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article IV. The Executive

Puerto Rico Const. Art. IV, § 7

§ 7 Succession to office of Governor Permanent vacancy

When a vacancy occurs in the office of Governor, caused by death, resignation, removal, total and permanent incapacity, or any other absolute disability, said office shall devolve upon the Secretary of State, who shall hold it for the rest of the term and until a new Governor has been elected and qualifies. In the event that vacancies exist at the same time in both the office of Governor and that of Secretary of State, the law shall provide which of the Secretaries shall serve as Governor.

**History**

**Prior law.**

Organic Acts, 1900, § 20; 1917, § 24.

**Cross references.**

Order of succession to office of Governor, see § 8 of Title 3.

Puerto Rico Const. Art. IV, § 7, PR CONST Art. IV, § 7

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** <span style="float:right">© 2019 Thomson Reuters. No claim to original U.S. Government Works.</span>

Laws of Puerto Rico Annotated Currentness
  The Constitution of the Commonwealth of Puerto Rico
    Article IV. The Executive

Puerto Rico Const. Art. IV, § 8

§ 8 Temporary vacancy

When for any reason the Governor is temporarily unable to perform his functions, the Secretary of State shall substitute for him during the period he is unable to serve. If for any reason the Secretary of State is not available, the Secretary determined by law shall temporarily hold the office of Governor.

**History**

**Prior law.**

Organic Acts, 1900, § 20; 1917, § 24.

**Cross references.**

Temporary absence or disability of Governor, see § 9 of Title 3.

Puerto Rico Const. Art. IV, § 8, PR CONST Art. IV, § 8

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 9 Election by legislative assembly in absence of..., Puerto Rico Const. Art....

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article IV. The Executive

Puerto Rico Const. Art. IV, § 9

§ 9 Election by legislative assembly in absence of qualified successor

If the Governor-elect shall not have qualified, or if he has qualified and a permanent vacancy occurs in the office of Governor before he shall have appointed a Secretary of State, or before said Secretary, having been appointed, shall have qualified, the Legislative Assembly just elected, upon convening for its first regular session, shall elect, by a majority of the total number of members of which each house is composed, a Governor who shall hold office until his successor is elected in the next general election and qualifies.

**History**

**Prior law.**

Organic Act, 1917, § 24.

Puerto Rico Const. Art. IV, § 9, PR CONST Art. IV, § 9

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article IV. The Executive

Puerto Rico Const. Art. IV, § 10

§ 10 Removal of Governor

The Governor may be removed for the causes and pursuant to the procedure established in § 21 of Article III of this Constitution.

**History**

**Prior law.**

Organic Act, 1917, § 12a.

Puerto Rico Const. Art. IV, § 10, PR CONST Art. IV, § 10

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 1 Judicial power; Supreme Court; other courts, Puerto Rico Const. Art. V, § 1

---

Laws of Puerto Rico Annotated [Currentness]
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

Puerto Rico Const. Art. V, § 1

§ 1 Judicial power; Supreme Court; other courts

The judicial power of Puerto Rico shall be vested in a Supreme Court, and in such other courts as may be established by law.

**History**

**Prior law.**

Organic Acts, 1900, § 33; 1917, § 40.

**Cross references.**

Judicial power of the Commonwealth, see § 246 of Title 4.

**ANNOTATIONS**

**1. Generally.**

The Commonwealth of Puerto Rico, along with the 50 states of the Union, was shielded by the Eleventh Amendment, and it was settled law that the protection afforded by the Amendment extended not only to the states themselves, but also to their instrumentalities and government officials acting in that capacity. Figueroa-Flores v. Acevedo-Vila, 491 F. Supp. 2d 214, 2007 U.S. Dist. LEXIS 40662 (D.P.R. 2007).

The General Court of Justice is the entity through which the Commonwealth exercises its judicial authority, and is 'an arm' of the Commonwealth; thus, the Chief justice and the judges, in their capacities as officers of the General Court of Justice, were entitled to Eleventh Amendment immunity. Figueroa-Flores v. Acevedo-Vila, 491 F. Supp. 2d 214, 2007 U.S. Dist. LEXIS 40662 (D.P.R. 2007).

Except for certain limited cases subject to review by the Supreme Court of the United States with respect to federal legislative and constitutional provisions, decisions of the Supreme Court of Puerto Rico become the final, supreme and mandatory expression of statutory construction. 1983 Op. Sec. Jus. No. 11.

Puerto Rico Const. Art. V, § 1, PR CONST Art. V, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of

§ 1 Judicial power; Supreme Court; other courts, Puerto Rico Const. Art. V, § 1

the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 2 Unified judicial system; creation, venue, and..., Puerto Rico Const. Art....

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

Puerto Rico Const. Art. V, § 2

§ 2 Unified judicial system; creation, venue, and organization of courts

The courts of Puerto Rico shall constitute a unified judicial system for purposes of jurisdiction, operation and administration. The Legislative Assembly may create and abolish courts, except for the Supreme Court, in a manner not inconsistent with this Constitution, and shall determine the venue and organization of the courts.

**History**

**Prior law.**

Organic Acts, 1900, § 33; 1917, § 40.

**Cross references.**

Judicial power of the Commonwealth, see § 246 of Title 4.

Puerto Rico Const. Art. V, § 2, PR CONST Art. V, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

Puerto Rico Const. Art. V, § 3

§ 3 Supreme Court as court of last resort; composition

The Supreme Court shall be the court of last resort in Puerto Rico and shall be composed of a Chief Justice and four associate justices. The number of justices may be changed only by law upon request of the Supreme Court.

**History**

**Cross references.**

Number of associate justices, see § 24r of Title 4.

**ANNOTATIONS**

**1. Generally.**

The need for uniformity of law makes it paramount for the decisions of the Supreme Court to be binding upon courts of first instance; it is for this same reason that administrative agencies, including municipalities, are obligated to comply with the decisions of the Supreme Court-which according to the Commonwealth Constitution is the court of last resort in Puerto Rico. 1983 Op. Sec. Jus. No. 11.

Puerto Rico Const. Art. V, § 3, PR CONST Art. V, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 4 Sessions and decisions of Supreme Court, Puerto Rico Const. Art. V, § 4

---

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

Puerto Rico Const. Art. V, § 4

§ 4 Sessions and decisions of Supreme Court

The Supreme Court shall sit, in accordance with rules adopted by it, as a full court or in divisions composed of not less than three justices. No law shall be held unconstitutional except by a majority of the total number of justices of which the Court is composed in accordance with this Constitution or with law.

As amended by referendum held at the time of the General Election of Nov. 8, 1960.

**History**

**Special provisions.**

The amendment to this section was adopted by the voters at the General Election of Nov. 8, 1960, pursuant to Act July 13, 1960, No. 121, p. 329, eff. July 13, 1960, which provided for the referendum, as proposed by House Concurrent Res. No. 24, 4th Regular Sess., 3d Legislature (1960).

**ANNOTATIONS**

**1. Statutes.**

Upon deciding if a statute with constitutional defects is totally or partially null, it is necessary to determine if the law can remain effective once the unconstitutional provisions are eliminated. Ruben Berrios Martinez v. Pedro Rossello Gonzalez., 137 D.P.R. 195, 1994 PR Sup. LEXIS 310 (P.R. 1994).

A Puerto Rican statute is, and is presumed to be, constitutional until the Supreme Court decides otherwise. Maximo J. Cerame-Vivas v. Manuel Torres Aguiar., 99 P.R.R. 44, 1970 PR Sup. LEXIS 139 (P.R. 1970); Esso Standard Oil S.A. Ltd. v. Autoridad de los Puertos De P.R., 95 P.R.R. 754, 1968 PR Sup. LEXIS 100 (P.R. 1968); Puerto Rico v. Perez Mendez., 83 P.R.R. 518, 1961 PR Sup. LEXIS 434 (P.R. 1961).

A court, in reviewing the validity of statutes, should respect the discretion of the Legislature without passing because it is not its function on the wisdom or expediency of the statute. Cerveceria Corona, Inc. v. Francisco Lizardi., 97 P.R.R. 43, 1969 PR Sup. LEXIS 107 (P.R. 1969).

A Division of the Supreme Court has power to uphold the constitutionality of a law by virtue of this section. Puerto Rico v. Perez Mendez., 83 P.R.R. 518, 1961 PR Sup. LEXIS 434 (P.R. 1961).

**2. Unconstitutionality.**

---

§ 4 Sessions and decisions of Supreme Court, Puerto Rico Const. Art. V, § 4

Any delegation of legislative power granting absolute discretion to the judiciary is unconstitutional. El Pueblo de Puerto Rico v. Raul Sanchez Gonzalez., 90 P.R.R. 192, 1964 PR Sup. LEXIS 216 (P.R. 1964).

Any interested party may seek relief from the courts if the plan finally adopted by the Constitutional Board is contrary to the constitutional provisions prevailing in this jurisdiction. Statehood Rep. Partido Estadista Republicano de Puerto Rico v. Junta Constitucional de Revision de Distritos Electorales Senatoriales., 90 P.R.R. 224, 1964 PR Sup. LEXIS 218 (P.R. 1964).

### 3. Adjudication of cases.

A minimum of five Justices, including the presiding judge, is not a constitutional condition either for valid adjudication of cases or to exercise jurisdiction by Supreme Court. Carmen Sanchez Rodriguez v. Antonio Lopez Jimenez., 116 D.P.R. 392, 1985 PR Sup. LEXIS 94 (P.R. 1985).

Declaration of unconstitutionality of an act requires concurrence of an absolute majority of Supreme Court justices, regardless existence of vacancies which should be counted into the total number. However, that is not the case of other decisions, which require sample majority of justices participating in the case. Carmen Sanchez Rodriguez v. Antonio Lopez Jimenez., 116 D.P.R. 392, 1985 PR Sup. LEXIS 94 (P.R. 1985).

Puerto Rico Const. Art. V, § 4, PR CONST Art. V, § 4

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                                      © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 5 Original jurisdiction of Supreme Court, Puerto Rico Const. Art. V, § 5

---

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

Puerto Rico Const. Art. V, § 5

§ 5 Original jurisdiction of Supreme Court

The Supreme Court, any of its divisions, or any of its justices may hear in the first instance petitions for habeas corpus and any other causes and proceedings as determined by law.

**History**

**Prior law.**

Organic Acts, 1900, § 35; 1917, § 48.

**Cross references.**

Habeas corpus, see also art. II, § 13, of this Constitution, Federal Re lations Act, § 48, and §§ 1741 et seq. of Title 34.

Scope of power of Supreme Court, see § 24s of Title 4.

Puerto Rico Const. Art. V, § 5, PR CONST Art. V, § 5

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

§ 6 Rules of evidence and of civil and criminal procedure, Puerto Rico Const. Art. V, § 6

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article V. The Judiciary

Puerto Rico Const. Art. V, § 6

§ 6 Rules of evidence and of civil and criminal procedure

The Supreme Court shall adopt for the courts rules of evidence and of civil and criminal procedure which shall not abridge, enlarge or modify the substantive rights of the parties. The rules thus adopted shall be submitted to the Legislative Assembly at the beginning of its next regular session and shall not go into effect until sixty days after the close of said session, unless disapproved by the Legislative Assembly, which shall have the power both at said session and subsequently to amend, repeal or supplement any of said rules by a specific law to that effect.

**History**

**Codification.**

Pursuant to this section, the Supreme Court adopted a body of Rules of Civil Procedure and another of Rules of Evidence, and submitted them to the Second Regular Session of the Third Legislative Assembly (1958). The Legislative Assembly did not disapprove the Rules of Civil Procedure. Accordingly, they became effective July 31, 1958, under this section providing for effectiveness 60 days after the close of the session to which the rules are submitted.

These Rules of Civil Procedure, 1958, which were set out in App. II of Title 32, were repealed by Rule 72 of Civil Procedure, 1979.

On Feb. 9, 1979, the Supreme Court adopted a new body of Rules of Civil Procedure which were submitted to the Legislative Assembly on Jan. 8, 1979, amended by Act Aug. 4, 1979, No. 197, and became effective Aug. 20, 1979. These new Rules of Civil Procedure, 1979, are set out in App. III of Title 32.

The Rules of Evidence adopted by the Supreme Court Jan. 13, 1958, and submitted to the Legislative Assembly Feb. 5, 1958, were disapproved by Act June 23, 1958, No. 83, p. 186, eff. June 23, 1958. Rules of Evidence adopted by the Supreme Court Jan. 9, 1959, and submitted to the Legislative Assembly Jan. 16, 1959, were disapproved by Act June 19, 1959, No. 65, p. 179, eff. June 19, 1959.

Rules of Evidence adopted by the Supreme Court Nov. 20, 1959, and submitted to the Legislative Assembly Nov. 23, 1959, were disapproved by Act June 24, 1960, No. 100, eff. June 24, 1960. This 1960 Act created an Advisory Committee on Rules of Evidence to give legal advice to the Legislative Assembly and make recommendations on or before Jan. 10, 1961, on any rules of evidence which may be submitted to it. Act No. 100, of June 24, 1960, was repealed by Act May 25, 1964, No. 38, § 1.

Rules of Evidence readopted by the Supreme Court on Dec. 27, 1960, and transmitted to the Legislative Assembly Jan. 9, 1961, were disapproved by Act June 27, 1961, No. 126, eff. June 27, 1961. The 1961 Act also provided that the Advisory Committee on Rules of Evidence shall submit its recommendations to the Legislative Assembly not later than the first day of the second regular session of the Fourth Legislature. Supreme Court, by its Res. Nov. 26, 1963, created a Committee on Rules of Evidence of the Judiciary Conference of Puerto Rico, charged on June 30, 1964, with the task of preparing and

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 204 of 272

§ 6 Rules of evidence and of civil and criminal procedure, Puerto Rico Const. Art. V, § 6

submitting to the Supreme Court a project of Rules of Evidence for the Courts of Puerto Rico.

On Feb. 9, 1979, the Supreme Court adopted the new Rules of Evidence for the General Court of Justice, which were submitted to the Legislative Assembly on Feb. 15, 1979, amended by Act July 20, 1979, No. 180 and became effective Oct. 1, 1979. These new Rules of Evidence, 1979, are set out in App. IV of Title 32.

Pursuant to this section, the Supreme Court adopted a body of Rules of Criminal Procedure for the General Court of Justice and transmitted them to the Legislative Assembly on Jan. 21, 1960. These Rules were disapproved by the Legislative Assembly by Act June 13, 1960, No. 76, eff. June 13, 1960.

Rules adopted Dec. 27, 1960, and transmitted to the Legislative Assembly Jan. 9, 1961, were disapproved by Act June 27, 1961, No. 127, eff. June 27, 1961.

Rules adopted Feb. 7, 1962, and transmitted to the Legislative Assembly on the same date, were disapproved by Act June 21, 1962, No. 86.

Such rules were readopted on Feb. 5, 1963, and submitted to the Legislature at the beginning of the Third Regular Session (1963), as amended by Act No. 87, approved June 26, 1963. They became effective 60 days after the close of said session (July 30, 1963), pursuant to this section. The Regular Session was extended until May 30, 1963, pursuant to J.R. No. 23, approved April 25, 1963.

**Cross references.**

Rules of evidence and procedure, see § 2 of Title 4.

Rules of procedure in cases concerning children, see § 2006 of Title 34 and App. I of Title 34.

**ANNOTATIONS**

**1. Historical.**

Under the Organic Act, the power to regulate the procedure of our courts was specifically vested in our Legislature as a matter of constitutional law. The latter delegated to the Supreme and District Courts the power to make rules for their own government and to the Attorney General as regards rules governing the procedure for jury trials. Though the rules so adopted have been applied for many years, they have never been challenged as an invalid delegation of legislative power. Juan Celso Gonzalez Velez v. Tribunal Superior de Puerto Rico, Sala de Ponce, 75 P.R.R. 550, 1953 PR Sup. LEXIS 281 (P.R. 1953).

Despite the complete control over procedure vested in our Legislature by the Organic Act Congress intended thereby merely to provide a basic procedure which, within statutory and constitutional limits, insular courts could develop our courts were not only given a somewhat limited form of rule-making power by statute, but they were also authorized by the Civil Code and Code of Civil Procedure to fill in gaps in such rules and procedural statutes by judicial decisions. Juan Celso Gonzalez Velez v. Tribunal Superior de Puerto Rico, Sala de Ponce, 75 P.R.R. 550, 1953 PR Sup. LEXIS 281 (P.R. 1953).

**2. Power of courts.**

A court is tacitly empowered to give content and potentiality to certain rules of evidence and procedure. Roberto Melendez v. Levitt & Sons of Puerto Rico Inc., 104 D.P.R. 797, 1976 PR Sup. LEXIS 2343 (P.R. 1976).

The drafting of rules of evidence is not a task for the Legislature but one essentially judicial which has had a modest case law development in Puerto Rico. (El Pueblo de Puerto Rico v. Rafael Dones., 102 D.P.R. 118, 1974 PR Sup. LEXIS 204 (P.R. 1974).

A court has the inherent power of providing procedures and supplementing the ones already established, and of filling in

procedural gaps, provided they do not violate the provisions of statutes. El Pueblo de Puerto Rico v. Gergorio Sanchez Torres., 102 D.P.R. 499, 1974 PR Sup. LEXIS 297 (P.R. 1974).

The courts do not have inherent power to adopt rules of procedure to the exclusion of the legislative branch. However, where the legislature provides no procedure or an inadequate procedure, courts have the inherent power and duty to establish or supplement it by rules not inconsistent with the statute. Also, in Puerto Rico they have an analogous power to fill procedural gaps by judicial decisions under § 7 of the Civil Code, § 7 of Title 31, and former § 36 of the Code of Civil Procedure, § 196 of Title 32. Juan Celso Gonzalez Velez v. Tribunal Superior de Puerto Rico, Sala de Ponce, 75 P.R.R. 550, 1953 PR Sup. LEXIS 281 (P.R. 1953).

The rule-making power granted to this Court by § 6 of art. V of our Con stitution was established as primarily a judicial rather than a legislative power. This is demonstrated by the terms of § 6 of the Judiciary Article as recommended by the Judiciary Committee to the Constitutional Convention, by the description of its modus operandi and by the characterization of such rule-making power as basically inherent in the courts. This does not mean that this power was inherent to the extent that the legislature was completely excluded from the field of procedure, as the legislature may by special law amend, repeal, or supplement the rules once this Court has taken the initiative and submitted rules to the legislature. The provision in § 6 for legislative action is a potential brake on the courts; but the initiative must come from this Court and the primary duty and responsibility rests upon us. For this reason, if some label must be affixed to the rule-making power, it is judicial rather than legislative. Juan Celso Gonzalez Velez v. Tribunal Superior de Puerto Rico, Sala de Ponce, 75 P.R.R. 550, 1953 PR Sup. LEXIS 281 (P.R. 1953).

### 3. Claims for wages.

The Legislative Assembly may amend, repeal, or supplement any rule of procedure adopted by this Court for the special regulation of claims for wages. Dorado Beach Corporation v. Tribunal Superior de Puerto Rico, Sala de Bayamon., 92 P.R.R. 594, 1965 PR Sup. LEXIS 238 (P.R. 1965).

Puerto Rico Const. Art. V, § 6, PR CONST Art. V, § 6

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc: Exhibit DX-UUU   Page 206 of 272

§ 7 Rules of administration; Chief Justice to direct..., Puerto Rico Const. Art....

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| :--- |
| The Constitution of the Commonwealth of Puerto Rico |
| Article V. The Judiciary |

Puerto Rico Const. Art. V, § 7

§ 7 Rules of administration; Chief Justice to direct administration and appoint administrative director

The Supreme Court shall adopt rules for the administration of the courts. These rules shall be subject to the laws concerning procurement, personnel, audit and appropriation of funds, and other laws which apply generally to all branches of the government. The Chief Justice shall direct the administration of the courts and shall appoint an administrative director who shall hold office at the will of the Chief Justice.

**History**

**Prior law.**

Organic Act, 1917, § 14.

**Cross references.**

Administration of General Court of Justice, see § 24j of Title 4.

System of administration for autonomous personnel, see §§ 521 et seq. of Title 4.

Puerto Rico Const. Art. V, § 7, PR CONST Art. V, § 7

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 8 Appointment of judges, officers, and employees, Puerto Rico Const. Art. V, § 8

Laws of Puerto Rico Annotated <sup>Currentness</sup>
 The Constitution of the Commonwealth of Puerto Rico
  Article V. The Judiciary

Puerto Rico Const. Art. V, § 8

§ 8 Appointment of judges, officers, and employees

Judges shall be appointed by the Governor with the advice and consent of the Senate. Justices of the Supreme Court shall not assume office until after confirmation by the Senate and shall hold their offices during good behavior. The terms of office of the other judges shall be fixed by law and shall not be less than that fixed for the term of office of a judge of the same or equivalent category existing when this Constitution takes effect. The other officials and employees of the courts shall be appointed in the manner provided by law.

**History**

**Prior law.**

Organic Acts, 1900, § 33; 1917, §§ 40, 49.

**ANNOTATIONS**

**1. Judges.**

The power of the Governor to appoint judges is of constitutional dimension and is continuing in nature; hence the election period prohibition provided for in the Public Service Personnel law is not applicable to judicial appointments. 1984 Op. Sec. Jus. No. 12.

In the absence of constitutional or statutory limitations the First Executive may, in an election year, appoint judges after the month of May. 1984 Op. Sec. Jus. No. 12.

Puerto Rico Const. Art. V, § 8, PR CONST Art. V, § 8

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 9 Qualifications of justices of Supreme Court, Puerto Rico Const. Art. V, § 9

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

Puerto Rico Const. Art. V, § 9

§ 9 Qualifications of justices of Supreme Court

No person shall be appointed a justice of the Supreme Court unless he is a citizen of the United States and of Puerto Rico, shall have been admitted to the practice of law in Puerto Rico at least ten years prior to his appointment, and shall have resided in Puerto Rico at least five years immediately prior thereto.

Puerto Rico Const. Art. V, § 9, PR CONST Art. V, § 9

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 10 Retirement of judges, Puerto Rico Const. Art. V, § 10

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article V. The Judiciary |

Puerto Rico Const. Art. V, § 10

§ 10 Retirement of judges

The Legislative Assembly shall establish a retirement system for judges. Retirement shall be compulsory at the age of seventy years.

**History**

**Cross references.**

Compulsory retirement age not applicable to judges in office on effective date of this Constitution, see art. IX, § 3, hereof.

**ANNOTATIONS**

**1. Generally.**

In a case where a judge acted as Special Judge after being 70 years old, and after issuing a verdict in a case presided by him, the Supreme Court understands that such verdict is valid, applying the doctrine of 'de facto' official. 138 D.P.R. 810.

The doctrine of 'de facto' official is based on the following necessit ies: to avoid uncertainty and confusion in the public decision-making procedures; to give stability and certainty to such procedures, to the government, and to organized society; to avoid litigation, duplicity of efforts, and unnecessary costs; to fulfill a continuous and efficient administration and adjudication that allows taking final actions; and to avoid the obstruction of public officials' actions by collateral attacks, impeding the best discharge of his powers and duties and in final instance having the effect of eroding the institutions of the official itself. 138 D.P.R. 810.

Puerto Rico Const. Art. V, § 10, PR CONST Art. V, § 10

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

**Puerto Rico Const. Art. V, § 11**

**§ 11 Removal of judges**

Justices of the Supreme Court may be removed for the causes and pursuant to the procedure established in § 21 of Article III of this Constitution. Judg es of the other courts may be removed by the Supreme Court for the causes and pursuant to the procedure provided by law.

**History**

**Cross references.**

Removal of judges, see §§ 25i 25*o* of Title 4.

Puerto Rico Const. Art. V, § 11, PR CONST Art. V, § 11

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 12 Political activity by judges, Puerto Rico Const. Art. V, § 12

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article V. The Judiciary

Puerto Rico Const. Art. V, § 12

§ 12 Political activity by judges

No judge shall make a direct or indirect financial contribution to any political organization or party, or hold any executive office therein, or participate in a political campaign of any kind, or be a candidate for an elective public office unless he has resigned his judicial office at least six months prior to his nomination.

ANNOTATIONS

1. Generally.

The statements by a judge, in passing judgment regarding legislative productivity, constitutes criticism of policies followed by the Legislative Branch, and are contrary to the Canons of Judicial Ethics. In re Zaida Hernandez Torres., 167 D.P.R. 824, 2006 PR Sup. LEXIS 77 (P.R. 2006)

Judges should abstain from making judgments of a political nature in situations which have nothing to do with defending judicial independence. In re Zaida Hernandez Torres., 167 D.P.R. 824, 2006 PR Sup. LEXIS 77 (P.R. 2006).

Puerto Rico Const. Art. V, § 12, PR CONST Art. V, § 12

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                                  © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 13 Tenure of judge of changed or abolished court, Puerto Rico Const. Art. V, § 13

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article V. The Judiciary

## Puerto Rico Const. Art. V, § 13

### § 13 Tenure of judge of changed or abolished court

In the event that a court or any of its divisions or sections is changed or abolished by law, the person holding a post of judge therein shall continue to hold it during the rest of the term for which he was appointed and shall perform the judicial functions assigned to him by the Chief Justice of the Supreme Court.

Puerto Rico Const. Art. V, § 13, PR CONST Art. V, § 13

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 1 Municipalities, Puerto Rico Const. Art. VI, § 1

---

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

### Puerto Rico Const. Art. VI, § 1

### § 1 Municipalities

The Legislative Assembly shall have the power to create, abolish, consolidate and reorganize municipalities; to change their teritorial limits; to determine their organization and functions; and to authorize them to develop programs for the general welfare and to create any agencies necessary for that purpose.

No law abolishing or consolidating municipalities shall take effect until ratified in a referendum by a majority of the qualified electors voting in said referendum in each of the municipalities to be abolished or consolidated. The referendum shall be conducted in the manner determined by law, which shall include the applicable procedures of the election laws in effect when the referendum law is approved.

### History

### Prior law.

Organic Acts, 1900, § 32; 1917, §§ 29, 37.

### Cross references.

Legislative power as to municipalities, see Puerto Rican Federal Relations Act, § 37.

### ANNOTATIONS

### 1. Referendum.

The requirement of a referendum in the Constitution is only applicable in cases in which the result of the legislative action carries the disappearance of a municipality as a legal, social and economic body. 1986 Op. Sec. Jus. No. 51.

If the intention of the constituents would have been to hold a referendum in the cases of modification of the territorial limits of a municipality it would have been so expressed. 1986 Op. Sec. Jus. No. 51.

The only references to a referendum in the Constitution deal with the abolishment and consolidation of municipalities (this section) and with amendments to the Constitution (art. VII); unless an act provides for it expressly, there is no need to submit to referendum the repeal of an act. 1958 Op. Sec. Jus. No. 21.

### 2. Committee of municipal complaints.

---

The Act creating the Committee for the Settlement of Municipal Complaints constitutes an exercise by the Legislative Assembly of the power vested in it by virtue of this section. Edelmiro Rodriguez Rivera v. Comision Para Ventilar Querellas Municipales., 84 P.R.R. 66, 1961 PR Sup. LEXIS 490 (P.R. 1961).

<h3 align="center">3. Delegation of power.</h3>

The term 'police power of the state' is defined as that power inherent in the State and utilized by the legislature to prohibit or regulate certain activities for the purpose of protecting public order and securing the morals, health and general welfare of the community, and this power may be delegated to municipalities. ( Reiterating Op. Sec. Just. No. 1966-40.) 1984 Op. Sec. Jus. No. 33.

Puerto Rico Const. Art. VI, § 1, PR CONST Art. VI, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 2 Power of taxation; power to contract debts, Puerto Rico Const. Art. VI, § 2

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

Puerto Rico Const. Art. VI, § 2

§ 2 Power of taxation; power to contract debts

The power of the Commonwealth of Puerto Rico to impose and collect taxes and to authorize their imposition and collection by municipalities shall be exercised as determined by the Legislative Assembly and shall never be surrendered or suspended. The power of the Commonwealth of Puerto Rico to contract and to authorize the contracting of debts shall be exercised as determined by the Legislative Assembly, but no direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith, credit and taxing power of the Commonwealth shall be pledged shall be issued by the Commonwealth if the total of (i) the amount of principal of and interest on such bonds and notes, together with the amount of principal of and interest on all such bonds and notes theretofore issued by the Commonwealth and then outstanding, payable in any fiscal year and (ii) any amounts paid by the Commonwealth in the fiscal year next preceding the then current fiscal year for principal or interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth, shall exceed 15 percent of the average of the total amount of the annual revenues raised under the provisions of Commonwealth legislation and covered into the Treasury of Puerto Rico in the two fiscal years next preceding the then current fiscal year; and no such bonds or notes issued by the Commonwealth for any purpose other than housing facilities shall mature later than 30 years from their date and no bonds or notes issued for housing facilities shall mature later than 40 years from their date; and the Commonwealth shall not guarantee any obligations evidenced by bonds or notes if the total of the amount payable in any fiscal year on account of principal of and interest on all the direct obligations referred to above theretofore issued by the Commonwealth and then outstanding and the amounts referred to in item (ii) above shall exceed 15 percent of the average of the total amount of such annual revenues.

The Legislative Assembly shall fix limitations for the issuance of direct obligations by any of the municipalities of Puerto Rico for money borrowed directly by such municipality evidenced by bonds or notes for the payment of which the full faith, credit and taxing power of such municipality shall be pledged; Provided, however, That no such bonds or notes shall be issued by any municipality in an amount which, together with the amount of all such bonds and notes theretofore issued by such municipality and then outstanding, shall exceed the percentage determined by the Legislative Assembly, which shall be not less than five per centum (5% ) nor more than ten per centum (10% ) of the aggregate tax valuation of the property within such municipality.

The Secretary of the Treasury may be required to apply the available revenues including surplus to the payment of interest on the public debt and the amortization thereof in any case provided for by § 8 of this Article VI at the suit of any holder of bonds or notes issued in evidence thereof.

As amended by the voters at a referendum held Dec. 10, 1961.

**History**

### Effectiveness.

The referendum of Dec. 10, 1961, was held pursuant to Act Sept. 29, 1961, No. 1, p. 401, eff. Sept. 29, 1961; and Proposal No. 1 contained the amendment to this section. Proposal No. 2 in the referendum provided that the amendment should take effect 'upon the ratification thereof by a majority of the electors v oting thereon at a referendum held for that purpose'. The amendment was so rat ified at said referendum.

### Cross references.

Power to impose taxes and to contract debts, see Federal Relations Act, § 3.

See § 3 of Puerto Rican Federal Relations Act, set out herein, for 1961 amendment striking out limitations on debt-incurring liability of Puerto Rico and its municipalities.

### ANNOTATIONS

### 1. Generally.

The municipality has a right to impose excise taxes on two construction projects carried out on a military base, as said right was granted to the municipalities by the Legislature of Puerto Rico; also, the excise taxes were income taxes. HBA Contractors v. Mun. de Ceiba, 166 D.P.R. 443, 2005 PR Sup. LEXIS 181 (P.R. 2005).

Pursuant to this section, Legislative Assembly has ample discretion to exercise powers to levy and collect taxes. United States Brewers Association v. Julio Cesar Perez, 109 D.P.R. 456, 1980 PR Sup. LEXIS 78 (P.R. 1980).

Where tax statute has been challenged as unconstitutional, allegation that its purpose is to raise funds is no valid defense, and its examination is required in order to see if it violates constitutional or statutory provisions of any kind. United States Brewers Association v. Julio Cesar Perez, 109 D.P.R. 456, 1980 PR Sup. LEXIS 78 (P.R. 1980).

Levy of taxes without jurisdiction thereof constitutes confiscatory action by State contrary to due process of law. Sucn. Ronald K. Evans v. Secretario de Hacienda, 108 D.P.R. 713, 1979 PR Sup. LEXIS 108 (P.R. 1979).

Pursuant to constitutional limitations applicable to case, validity of any taxing measure depends on any rational bond existing between State levying tax and taxpayer. ( Carlos F. Maristany v. Secretario de Hacienda de Puerto Rico., 94 P.R.R. 277, 1967 PR Sup. LEXIS 221 (P.R. 1967).

The characterization of an impost as a fee made by the Legislature, to distinguish it from the tax it suspended, deserves great weight by this Court. Esso Standard Oil S.A. Ltd. v. Autoridad de los Puertos De P.R., 95 P.R.R. 754, 1968 PR Sup. LEXIS 100 (P.R. 1968).

A taxpayer's Puerto Rican citizenship and his permanent domicile and res idence in Puerto Rico is the rational relation which binds juridically the Commonwealth with said taxpayer in the exercise of all its sovereign powers, among them, the fundamental power of levying taxes, and binds the taxpayer to said sovereign powers. Carlos F. Maristany v. Secretario de Hacienda de Puerto Rico., 94 P.R.R. 277, 1967 PR Sup. LEXIS 221 (P.R. 1967).

The fact alone that the Communications Act of 1934 by federal authority regulates the activities and services of a taxpayer carried on in Puerto Rico does not make him immune to the taxing power of the Commonwealth of Puerto Rico, nor to any other governmental power of said political institution, the exercise of which is not clearly and irreconcilably in conflict with the federal authority at the time the latter becomes operative. R.C.A. Communications, Inc. v. Gobierno de la Capital., 91 P.R.R. 404, 1964 PR Sup. LEXIS 374 (P.R. 1964), overruled, Puerto Rico v. Northwestern Selecta, Inc., 185 D.P.R. 40, 2012 PR Sup. LEXIS 42 (P.R. 2012).

The controversies appertaining to the State's taxing power cannot be dec ided theoretically on the basis of doctrinal niceties,

but they must be examined and decided on the basis of fundamentally practical considerations. R.C.A. Communications, Inc. v. Gobierno de la Capital., 91 P.R.R. 404, 1964 PR Sup. LEXIS 374 (P.R. 1964), overruled, Puerto Rico v. Northwestern Selecta, Inc., 185 D.P.R. 40, 2012 PR Sup. LEXIS 42 (P.R. 2012).

A public service enterprise cannot adduce as a ground of unconstitutionality of Act No. 301 of 1945, p. 1146 (§§ 341 et seq. of Title 27), the fact that it prohibits charging the tax provided by § 2 of said act § 342 of Title 27 to the persons using the services rendered by it, where having had the opportunity to raise in a petition for rate increase which it made to the Public Service Commission for reasons which it deemed good at that time, decided that the expense caused by said tax was not sufficient reason to apply for the increase in question. P.R. Telephone Co. v. Tax. Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

## 2. Public purpose in taxation.

The levying of a fee by the Legislature to be collected by a public in strumentality for the purpose, not of producing revenue, but of producing in come to said public instrumentality for the necessary and adequate financing of its aims and purposes, is constitutional and legal. Esso Standard Oil S.A. Ltd. v. Autoridad de los Puertos De P.R., 95 P.R.R. 754, 1968 PR Sup. LEXIS 100 (P.R. 1968).

The general advantages and benefits of living within its jurisdiction under an organized government which protects his person and his interest, and the enjoyment of the property he receives related to the tax, is what the Commonwealth offers to a taxpayer in Puerto Rico in exchange for the tax it collects from him for the privilege of receiving a gift from a foreign source. Carlos F. Maristany v. Secretario de Hacienda de Puerto Rico., 94 P.R.R. 277, 1967 PR Sup. LEXIS 221 (P.R. 1967).

The concept of a public purpose is not static; it is one bound to the general welfare and must conform to the ever-changing social conditions of a specific community and to the peculiar problems created by them, and to the new obligations imposed by the citizen on its government in a highly complex society. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

A tax assessment cannot be set aside merely because its purpose is new, but said tax whose objectives have been long continued by the government and the public is additionally evidenced. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

The development of telecommunications and the support of a telephone and telegraph system did constitute in the economic and social circumstances of 1945 47, and constitutes nowadays an appropriation of funds for a public purpose. P .R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

Only a case of manifest diversion of public funds for a completely private use justifies the setting aside judicially of a governmental activity which for more than half a century has received the approval of the government and the people. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

In view of the fact that varied elements of the policy which serves as a basis for the determinations of the Legislature as to what constitutes 'a publi c purpose' in tax assessment and the wide legislative discretion in determinin g what expenditures would serve the public interest, the judicial functions to review such determinations is extremely limited. To warrant intervention of a court it is necessary to have a plain case of departure from every public purpose which could reasonably be conceived or a display of arbitrary power, not an exercise of judgment. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

An act does not pursue a private purpose upon directing payments to individuals or enterprises in order to enforce a public program, particularly if the enterprise is public. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

The fact that a group of citizens is more benefited than others by an improvement or public service is not in of itself a sign that the tax expended in such improvement or service is not for a 'public purpose'. P.R. Telephone Co. v. Tax Ct.; Porto Rico

Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

### 3. Taxation.

In Puerto Rico, no constitutional prohibition of double taxation exists, but the legislative intent should be clear and expressed. Asociacion de Hoteles y de Turismo de P.R. v. Puerto Rico., 131 D.P.R. 814, 1992 PR Sup. LEXIS 294 (P.R. 1992).

The power of the municipal corporations to impose taxes should be exercised in the form provided by the Legislature of Puerto Rico. 1986 Op. Sec. Jus. No. 21.

An act which levies a tax and at the same time diverts it to a specific purpose, instead of ordering its payment into governmental funds, merely grants to whoever pays the tax the special standing, which otherwise he would not have, to challenge the constitutionality of the expenditure and, consequently, of the tax. If the tax, qua tax, be valid and the purpose specified be one which would sustain a subsequent and separate appropriation made out of the general funds of the Treasury, neither is made invalid by being bound to the other in the same act of legislation. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

### 4. Delegation of powers.

The standards established by Act No. 301 of 1 1945, p. 1146, for the Communications Authority to invest the proceeds of the tax imposed by § 2 of that act pass the constitutional test, and, therefore, it does not constitute an undue delegation of legislative powers to the mentioned Authority. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

### 5. Source of income.

The power of the state to levy taxes on transactions which take place within the state is not affected by the fact that the exaction is contingent upon events brought to pass without the state since the fundamental factor is the origin or source of the taxable income and not the place where the income is received. Libby, McNeill & Libby West Indies Co. v. Secretario de Hacienda de Puerto Rico., 82 P.R.R. 377, 1961 PR Sup. LEXIS 344 (P.R. 1961), aff'd, Libby, McNeill & Libby, West Indies Co. v. Secretary of Treasury, 299 F.2d 572, 1962 U.S. App. LEXIS 5853 (1st Cir. P.R. 1962).

### 6. Voiding of powers.

This Court shall render void the power of the Commonwealth to impose and collect taxes and to authorize their imposition and collection by municipalities, only when exercised in violation of the applicable provisions of the Constitution of the Commonwealth, or of the personal rights secured by said Constitution, or if exercised in violation of the lawful and moral obligations which the people accepted in their Federal Relations. R.C.A. Communications, Inc. v. Gobierno de la Capital., 91 P.R.R. 404, 1964 PR Sup. LEXIS 374 (P.R. 1964), overruled, Puerto Rico v. Northwestern Selecta, Inc., 185 D.P.R. 40, 2012 PR Sup. LEXIS 42 (P.R. 2012).

### 7. Construction.

Supreme Court is fully empowered to construe provisions of this section constitutional provisions of native origin with broader authority than the one derived from our system of separation of powers. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

Puerto Rico Const. Art. VI, § 2, PR CONST Art. VI, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of

**§ 2 Power of taxation; power to contract debts, Puerto Rico Const. Art. VI, § 2**

Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 3 Rule of taxation to be uniform, Puerto Rico Const. Art. VI, § 3

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>
  The Constitution of the Commonwealth of Puerto Rico
    Article VI. General Provisions

Puerto Rico Const. Art. VI, § 3

§ 3 Rule of taxation to be uniform

The rule of taxation in Puerto Rico shall be uniform.

**History**

**Prior law.**

Organic Act, 1917, § 2.

**Cross references.**

Discrimination in internal revenue taxes between imported and domestic articles prohibited, see Federal Relations Act, § 3.

**ANNOTATIONS**

**1. Uniformity.**

Foreign corporation statutorily authorized to do business in Puerto Rico is entitled as much as any individual person to equal protection of laws pursuant to this section; therefore, constitutional provisions establishing that taxes would be levied uniformly in Puerto Rico is also applicable to it. International General Electric Puerto Rico, Inc. v. Secretario de Hacienda., 107 D.P.R. 467, 1978 PR Sup. LEXIS 561 (P.R. 1978).

The legislative prohibition of passing a tax to the consumer is not in itself and in all circumstances ground for unconstitutionality. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

A tax is not unconstitutional merely because the expenditure of its product does not benefit those who pay it. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

A state may, in the public interest, constitutionally engage in a business commonly carried on by private enterprise, levy a tax to support said business and compete with private interests engaged in a like activity. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

Since the tax established by § 2 of Act No. 301 of 1945, p. 1146 (27 L. P.R.A. § 342), is for a public purpose and the taxing classification provided therein is valid and complies with the rule of geographical uniformity, the same is constitutional even

where the expenditure of its product benefits some citizens more than others and not at all the taxpayer who pays it. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960).

The rule of uniformity of taxation incorporated into the Organic Act requires geographical and not intrinsic uniformity and the same bears no relation to how the product of the tax is spent. P.R. Telephone Co. v. Tax Ct.; Porto Rico Telephone Company v. Tribunal de Contribuciones de Puerto Rico., 81 P.R.R. 948, 1960 PR Sup. LEXIS 72 (P.R. 1960); Miranda v. Secretario de Hacienda, 77 P.R.R. 159 (1954).

## 2. Classifications.

Use of classifications by Legislative Assembly constitutes a valid method to adjust contributory programs to local needs and uses in order to achieve equitable distribution of tax loads. United States Brewers Association v. Julio Cesar Perez, 109 D.P.R. 456, 1980 PR Sup. LEXIS 78 (P.R. 1980).

Puerto Rico Const. Art. VI, § 3, PR CONST Art. VI, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                             © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 222 of 272

§ 4 Elections, Puerto Rico Const. Art. VI, § 4

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

Puerto Rico Const. Art. VI, § 4

§ 4 Elections

General elections shall be held every four years on the day of November determined by the Legislative Assembly. In said elections there shall be elected a Governor, the members of the Legislative Assembly, and the other officials whose election on that date is provided for by law.

Every person over eighteen years of age shall be entitled to vote if he fulfills the other conditions determined by law. No person shall be deprived of the right to vote because he does not know how to read or write or does not own property.

All matters concerning the electoral process, registration of voters, political parties and candidates shall be determined by law.

Every popularly elected official shall be elected by direct vote and any candidate who receives more votes than any other candidate for the same office shall be declared elected. As amended by the voters at a referendum held Nov. 1, 1970.

**History Amendments**

1970. The 1970 amendment lowered voting age from 21 to 18 years.

**Effectiveness.**

The referendum of Nov. 1, 1970, was held pursuant to Concurrent Resolution No. 1 of 1969; the Proposal in § 1 contained the amendment to this section. Section 3 of such Concurrent Resolution provided that the amendment proposed in § 1 of such resolution would take effect as soon as the Governor of the Commo nwealth of Puerto Rico proclaimed it, once the General Supervisor of Elections certified to him that the same had been ratified by a majority of the voters who had voted on such amendment and, to such effect, it was provided that the General Supervisor of Elections would send such certification to the Governor not later than forty-eight (48) hours after the general canvass of such amendment was finished. Such proclamation of the Governor would be issued not later than thirty (30) days after receiving such certification. The amendment was so ratified in such referendum, as shown in Administrative Bulletin No. 1621 where there appears the Proclamation of the Governor on the approval of the electorate of the Commonwealth.

**Prior law.**

Organic Acts, 1900, § 29; 1917, §§ 12, 29, 35.

**Cross references.**

Electoral Law of 1977, see §§ 3001 et seq. of Title 16.

Suffrage; electoral franchise, see Const. art. II, § 2.

### ANNOTATIONS

#### 1. Generally.

As part of its authority, and considering that in the northamerican constitutional system the authority over the electoral process corresponds to the states, it is the competency of the Commonwealth to regulate the right to vote within its jurisdiction. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

Pursuant to this section, Legislative Assembly has ample power to determine and regulate anything relating to electoral process, including political parties and candidacies. However, said power is not carte blanche or absolute, since regulation is governed by axiom of equality underlying Constitution. Partido de Renovacion Puertorriquena v. Estado Libre Asociado de Puerto Rico., 115 D.P.R. 631, 1984 PR Sup. LEXIS 146 (P.R. 1984).

#### 2. Construction.

The power to determine the requirements to exercise the right to vote in this jursidiction corresponds essentially to the Commonwealth, power limited only by the Constitution. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

Not including in the Constitution the requirement of american citizenship as a condition precedent to voting, does not mean that such requirement is null per se; it is not an essential condition to the right to vote. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

The Legislature has the constitutional power to set the limitations relative to the capacity to vote in this jurisdiction so long as the limitations constitute a necessary measure to carry out a compelling state interest. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

In light of the formal and express consent of the People to accept US citizenship, the Legislature is justified in requiring such citizenship as a condition to the right to vote. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

As a compelling state interest exists to justify the regulation of voting, the requirement of being a US citizen serves to precisely delimit who will constitute the electoral body with the right to vote. Miriam J. Ramirez de Ferrer v. Juan Mari Bras., 144 D.P.R. 141, 1997 PR Sup. LEXIS 455 (P.R. 1997).

There is no conflict whatsoever between the provisions of § 7 of art. I II of the Constitution of Puerto Rico and § 4 of art. VI of said Constitution . Jaime B. Fuster v. Walter Buso y otros., 102 D.P.R. 327, 1974 PR Sup. LEXIS 255 (P.R. 1974).

Puerto Rico Const. Art. VI, § 4, PR CONST Art. VI, § 4

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 4 Elections, Puerto Rico Const. Art. VI, § 4

§ 5 Promulgation of laws; effective date, Puerto Rico Const. Art. VI, § 5

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

Puerto Rico Const. Art. VI, § 5

§ 5 Promulgation of laws; effective date

The laws shall be promulgated in accordance with the procedure prescribed by law and shall specify the terms under which they shall take effect.

**History**

**Prior law.**

Organic Acts, 1900, § 19; 1917, §§ 22, 34.

Puerto Rico Const. Art. VI, § 5, PR CONST Art. VI, § 5

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 6 Failure to make appropriations, Puerto Rico Const. Art. VI, § 6

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

Puerto Rico Const. Art. VI, § 6

§ 6 Failure to make appropriations

If at the end of any fiscal year the appropriations necessary for the ordinary operating expenses of the government and for the payment of interest on and amortization of the public debt for the ensuing fiscal year shall not have been made, the several sums appropriated in the last appropriation acts for the objects and purposes therein specified, so far as the same may be applicable, shall continue in effect item by item, and the Governor shall authorize the payments necessary for such purposes until corresponding appropriations are made.

**History**

**Prior law.**

Organic Acts, 1900, § 31; 1917, § 34.

**ANNOTATIONS**

**1. Generally.**

In the absence of new act authorizing distribution of resources of Municipal Subsidy Fund for current fiscal year, disbursements from said special fund that are carried out according to distribution authorized by law for previous fiscal year are valid disbursements for which there is no need to consult Legislative Assembly. 1985 Op. Sec. Jus. No. 12.

Executive order authorizing expenditures has similar nature to joint resolution. 1984 Op. Sec. Jus. No. 31.

Executive order authorizing expenditures when legislature did not approve Budget Bill shall continue in effect with statutory nature for the remainder of fiscal year, unless new Budget Bill is introduced and approved. 1984 Op. Sec. Jus. No. 31.

The grounds and conclusions expressed in Opinions of the Secretary of Justice of April 23 and October 2, 1984, are valid and correct, in reference to Governor's power to authorize disbursement of public funds according to appropriations contained in Joint Resolution of General Budget special appropriations, self-renewing appropriations and those originating from legislation of previous years, when the Legislative Assembly has not approved a new budget. ( Reiterating Op. Sec. Just. No. 1984-31 and No. 1984-23.) 1985 Op. Sec. Jus. No. 12.

Constitutional provision referring to disbursement of public funds by Governor when Legislative Assembly has not approved budget for current year does not distinguish between acts approved for previous year and acts approved for unapproved budget of current year; hence it applies to acts approved in relation to fiscal year 1984-85, even though said budget has not been approved. ( Reiterating Op. Sec. Jus. No. 1984-85, No 1982-21, No. 1979-29, No. 1979-21 and No. 1971-21.) 1985 Op. Sec. Jus. No. 12.

§ 6 Failure to make appropriations, Puerto Rico Const. Art. VI, § 6

The term 'budget' is a broad one comprising all acts of appropriation including those which are not required to be enacted by bill of law or during the course of a single legislative session. 1984 Op. Sec. Jus. No. 13.

The term 'operation of the Government' implies that certain necessary works and capital improvements be carried out so that public services can be adequately provided to the people. 1984 Op. Sec. Jus. No. 13.

The phrase 'appropriations necessary for the ordinary operating expenses of the Government' refers to the broad concept of a budget, and includes the sum total of all the approved appropriations which form part of the government program pursuant to the mission the government is expected to fulfill, and which are necessary for its support and operation and payment of public debt, and the special appropriation for capital improvement in ongoing or regular programs and projects. 1984 Op. Sec. Jus. No. 13.

Puerto Rico Const. Art. VI, § 6, PR CONST Art. VI, § 6

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   227

§ 7 Appropriations not to exceed revenues, Puerto Rico Const. Art. VI, § 7

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

Puerto Rico Const. Art. VI, § 7

§ 7 Appropriations not to exceed revenues

The appropriations made for any fiscal year shall not exceed the total revenues, including available surplus, estimated for said fiscal year unless the imposition of taxes sufficient to cover said appropriations is provided by law.

**History**

**Prior law.**

Organic Act, 1917, § 34.

**ANNOTATIONS**

**1. Revenue.**

Uncollected taxes constitute a State revenue that may be included in the preparation of a balanced budget for the following fiscal year, pursuant to the provisions of the Constitution and the broad interpretation of the word 'revenu e' recurso accepted at its enactment; and they are an asset of easier determ ination than others explicitly included in that word. 1974 Op. Sec. Jus. No. 15.

The Constitutional Assembly substituted the words 'rentas totales' to tal revenues with 'recursos totales' and used the word 'recursos' in it s widest accepted sense, which means assets, property, wealth, fortune or patrimony. 1974 Op. Sec. Jus. No. 15.

Puerto Rico Const. Art. VI, § 7, PR CONST Art. VI, § 7

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 8 Priority of disbursements if revenues insufficient, Puerto Rico Const. Art. VI, § 8

---

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

Puerto Rico Const. Art. VI, § 8

§ 8 Priority of disbursements if revenues insufficient

In case the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

**History**

**Prior law.**

Organic Act, 1917, § 34.

Puerto Rico Const. Art. VI, § 8, PR CONST Art. VI, § 8

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

 © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 9 Use of public property and funds, Puerto Rico Const. Art. VI, § 9

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

Puerto Rico Const. Art. VI, § 9

§ 9 Use of public property and funds

Public property and funds shall only be disposed of for public purposes, for the support and operation of state institutions, and pursuant to law.

**ANNOTATIONS**

**1. Lease.**

Contract between a developer and a Puerto Rico court administrative office was against public order and, therefore, null and void because the lease-though ostensibly for a ten-year renewable term-was, in fact, a long term contract, and no public bidding took place as required by regulation. Cecort Realty Dev., Inc. v. Llompart-Zeno, 100 F. Supp. 3d 145, 2015 U.S. Dist. LEXIS 54229 (D.P.R. 2015).UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO

The constitutional provision on public property includes a lease, but it does not prevent a contract of that type between the Recreation and Parks Administration and the Professional Baseball League for a public purpose and under authority of law. 1958 Op. Sec. Jus. No. 22.

**2. Cession of land to a religious body.**

See annotations under § 9 of Title 1.

**3. Public funds.**

The case of the use of public funds by the Governor for reelection was not moot because it is an issue likely to be repeated. Partido Nuevo Progresista v. Sila M. Calderon, 162 D.P.R. 239, 2004 PR Sup. LEXIS 91 (P.R. 2004).

An attorney, in her capacity as President of the Public Service Commission, incurs in improper conduct upon soliciting payments to businesses regulated by the C.S.P., without there being any evidence that it was carried out for the benefit of a company of private marketing. Oficina de etica Gubernamental v. Rodriguez Martinez, 159 D.P.R. 98, 2003 PR Sup. LEXIS 46 (P.R. 2003).

In light of analyzing the legislation, the contract agreed to earlier is contrary to public order for compromising the agency's public funds to pay priv ate debts and violates the corporation's enabling act; therefore, said violati ons make the contract in question nonexistent. 2001 Op. Sec. Jus. No. 16.

The signed contract violates Art. VI, Sec. 9 of the Constitution, thereby resulting contrary to the principle of public order and, for that reason, nulo ab initio, pursuant to § 1207 of the Civil Code, which provides that 't]he contracting parties may make the agreement.. which they may deem advis able, provided that they are not in contravention of law.. and publi c order.' 2001

§ 9 Use of public property and funds, Puerto Rico Const. Art. VI, § 9

Op. Sec. Jus. No. 16.

Act Mar. 26, 1965, No. 2, established the Former Governors' Services Off ice intending that the public might continue benefiting from the experience and talents of its former governors, and with that in mind, the law provides each of those governors an annual appropriation to cover operational costs, and it is therefore evident that said appropriation fulfills a public end. 2000 Op. Sec. Jus. No. 8.

The new computer technology by which the public may directly access its former governors through an Internet website complies with the intent and public end of Act Mar. 26, 1965, No. 2, in that the maintenance of said website may be defrayed as part of the general operating costs of running the former governors ' offices. 2000 Op. Sec. Jus. No. 8.

The grounds and conclusions expressed in Opinions of the Secretary of Justice of April 23 and October 2, 1984, are valid and correct, in reference to Governor's power to authorize disbursement of public funds according to appropriat ions contained in Joint Resolution of General Budget special appropriations, self-renewing appropriations and those originating from legislation of previous years, when the Legislative Assembly has not approved a new budget. ( Reiterating Op. Sec. Just. No. 1984-31 and No. 1984-23.) 1985 Op. Sec. Jus. No. 12.

Constitutional provision referring to disbursement of public funds by Governor when Legislative Assembly has not approved budget for current year does not distinguish between acts approved for previous year and acts approved for unapproved budget of current year; hence it applies to acts approved in relation to fiscal year 1984-85, even though said budget has not been approved. ( Reiterating Op. Sec. Jus. No. 1984-85, No 1982-21, No. 1979-29, No. 1979-21 and No. 1971-21.) 1985 Op. Sec. Jus. No. 12.

Appropriations granted by law to an agency have the character of public funds and any disbursement of said funds not expressly or implicitly authorized by law constitutes a violation of the norm established in the Constitution. ( Reiterating Op. Sec. Just. No. 1973-37 and No. 1968-30.) 1985 Op. Sec. Jus. No. 11.

Statutes authorizing disbursement of public funds should be restrictively construed so that funds are used exclusively for the purposes the legislators had in mind when the statutes were enacted. ( Reiterating Op. Sec. Just. February 1, 1982 and January 22, 1982, unpublished.) 1983 Op. Sec. Jus. No. 7.

Pursuant to provisions of Puerto Rico Constitution, Legislature is authorized to allocate public funds for semipublic entities or even private ones with recognized public function, provided purpose thereof be collaborating in fulfilling governmental tasks, and allocation does not violate other provisions of constitutional rank, such as using public property or funds for sectarian purposes, or supporting non-State educational institutions, equal protection of laws and invasion of rights belonging to people in a democracy. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

The Constitution does not authorize a donation of public funds by the Municipality of Mayaguez to the Seventh Day Adventists Corporation for the expansion of their Bellavista Hospital. ( Reaffirming the criterion stated in the Opinions of the Secretary of Justice, Nos. 1958-8, 1959-17 and 1973-39.) 1973 Op. Sec. Jus. No. 40.

Appropriations established by law for an agency are public funds and their disbursement in any form not expressly authorized by the statute violates the constitutional provisions on the subject. 1973 Op. Sec. Jus. No. 37.

Any alteration of conditions stated in contract made by a governmental entity, the only purpose of which would be to benefit the other contracting party by not having a reasonable basis nor resulting in benefit of public interest, constitutes an undue expenditure of public funds in violation of this section. 1962 Op. Sec. Jus. No. 44.

There is no constitutional provision that prohibits a Government employee, outside of regular working hours, from rendering another type of service to the Government or government organization, for which he receives a per diem besides his salary, but § 551 of Title 3 establishes a legal barrier that prohibits it. 1962 Op. Sec. Jus. No. 30.

If a private nonsectarian institution has a public purpose, the Constitution does not impede the granting of public funds, therefore there is no obstacle to granting the application for educational help of the Instituto Psicopedagogico. 1959 Op. Sec. Jus. No. 27.

§ 9 Use of public property and funds, Puerto Rico Const. Art. VI, § 9

Since funds obtained from the lease of space on government property are public funds, the only way to permit their distribution among the National Guard units would be by legislative authorization. 1959 Op. Sec. Jus. No. 15.

### 4. Public purpose.

The use of public funds by the Governor for the design, production, and publication of a pamphlet for her reelection candidacy, had a public purpose given that it promoted the interest of the Government to disseminate public information. Partido Nuevo Progresista v. Sila M. Calderon, 162 D.P.R. 239, 2004 PR Sup. LEXIS 91 (P.R. 2004).

Public funds should be used in the public interest so long as there is legal authorization for such use, but these funds must never be used for the furtherance of private enterprises or to the benefit of private individuals or entities as such. ( Reiterating Op. Sec. Just. February 1, 1982, unpublished, and No. 1960-30.) 1983 Op. Sec. Jus. No. 7.

Just as administrative organisms do not have right to pay for their employees' transportation costs from their homes to their workplaces, by analogy, ne ither do these administrative organisms have right to provide parking facilities for their for their employees' vehicles and those belonging to individuals wh o visit their offices. 1983 Op. Sec. Jus. No. 7.

Even if Supreme Court has not formulated general rules in relation to what constitutes a public purpose, it has expressed an opinion that this determination is primarily a discretionary function of the legislature, although said function is subject to review by the courts when abuse of discretion occurs. McCormick v. Marrero, Juez, 1944, 64 D.P.R. 260. ( Reiterating Op. Sec. Jus. June 12, 1979 and November 25, 1977, unpublished.) 1983 Op. Sec. Jus. No. 7.

When defining public purpose, courts should zealously keep parameters of constitutional provisions established by separation of powers doctrine, taking into consideration history of constitutional clause to be construed and conditions of Puerto Rican economy. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

Legislature is authorized to establish non-discriminatory referenda regarding approval of measures radically affecting relations with United States or on any other matter pertaining to general status of Puerto Rico. Sums of money allocated thereto constitute allocation for public purposes. Partido Socialista Puertorriqueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

Private educational sectarian institutions were excluded by constitutional provisions from concept of public purposes utilized in this section. 1978 Op. Sec. Jus. No. 30.

Where the 'Salvation Army' is essentially a religious and sectarian in stitution, an appropriation of public funds in order to carry out its activities as has been requested would violate the constitutional principles of separation between Church and State and the provisions that public funds may be appropriated only for public purposes. 1973 Op. Sec. Jus. No. 39.

The constitutional provisions on use of public properties and funds exclude sectarian institutions from their concept of 'public purposes'. 1973 Op. Sec. Jus. No. 39.

A program of construction of low-cost multiple dwellings and of renewal of an area that a municipality intends to carry out, that obviously redounds in benefit to the people, constitutes a public purpose under this section. 1967 Op. Sec. Jus. No. 28; 1963 Op. Sec. Jus. No. 37.

Courts have not tried to formulate a uniform definition of 'public purpo se' that applies for all cases but rather have limited themselves to determini ng if a 'public purpose' exists in the light of the facts and circumstances of each case, and, at the same time, they have shown themselves hesitant to intervene in the determination of local legislative bodies unless there is a clear abuse of discretion; and although formerly the courts interpreted the term somewhat restrictively, the modern tendency has been to liberalize its scope. 1962 Op. Sec. Jus. No. 75; 1959 Op. Sec. Jus. No. 11.

The Asociacion Pro Museo Historico being a private enterprise founded by its incorporators and not by virtue of a legal proviso it is indubitable that such entity does not belong to the Department of Education and therefore cannot live as such entity inside of that Department; as to the use of an office in the Central High School, the Secretary of Education should

§ 9 Use of public property and funds, Puerto Rico Const. Art. VI, § 9

decide whether said Association deserves the privilege of using those facilities. 1960 Op. Sec. Jus. No. 52.

Public funds may be spent for purposes which are of a public interest and shall never be used for the furtherance of private enterprises or to the benefit of private individuals or entities as such. 1960 Op. Sec. Jus. No. 30.

In connection with the use of public funds for a public purpose permitted by law, the determination of what constitutes a public purpose is primarily a legislative function, subject to review by the courts when abused, and the finding of the Legislature that there is a public purpose involved in a particular instance should not be reversed except where such determination is palpably and manifestly arbitrary and incorrect. 1960 Op. Sec. Jus. No. 30.

A gratuitous assignment of offices by a municipality to legislators can only be made by virtue of an ordinance adopted to such effect in which there should be set out the facts demonstrating the 'public purpose' involved; the ordinance should also provide specifically that the offices shall be used exclusively in connection with the discharge of the official duties of the respective legislators to whom they are assigned. 1959 Op. Sec. Jus. No. 11.

The courts have not ruled generally on what constitutes a public purpose in all cases, but rather they have been limited to deciding whether a public purpose exists, based on facts and circumstances of each particular case, but latest judicial decisions tend to liberalize the scope of this concept. 1957 Op. Sec. Jus. No. 52.

Promoting the publication of studies and monographs about Puerto Rico in a magazine such as Asomante would constitute a public purpose, and the Institute of Puerto Rican Culture would be acting, in principle, within the faculties granted by Act June 21, 1955, No. 89, p. 374, to make arrangements with said publication to promote and diffuse through it the cultural values of the people of Puerto Rico. 1956 Op. Sec. Jus. No. 67.

### 5. Loans.

A loan would create so close a relation with respect to the use of public funds for a religious entity that it could be considered by a court to transgress the constitutional principle of complete separation of church and state; at least we should place this relation in a kind of penumbra between what is and what is not prohibited by the Constitution. 1961 Op. Sec. Jus. No. 45; 1959 Op. Sec. Jus. No. 17.

### 6. Municipal property.

Permitting the use of the assembly room of a town hall sporadically and incidentally does not constitute the 'disposition of property' the way this te rm is used in the Municipal Law and in the Constitution as well and, therefore, the limitations established therein are not applicable. 1966 Op. Sec. Jus. No. 37; 1956 Op. Sec. Jus. No. 53.

In view of this section and municipal statute in force, it is concluded that different provisions authorizing municipalities to dispose of their property establish requirements as to manner and conditions and, therefore, that disposition of municipal goods is not an inherent or incidental power. 1961 Op. Sec. Jus. No. 52.

### 7. Public property.

When dealing with an isolated and temporary case of granting a public building, this section does not apply. 1962 Op. Sec. Jus. No. 8.

### 8. Gifts.

An unconditional and absolute gift of funds by the Institute of Puerto Rican Culture to a magazine or private publication would raise a controversial issue in the light of the provisions governing public funds; therefore it is advisable that some sort of agreement be entered into with the magazine in order that the funds be invested under the supervision of the Institute and pursuant to specific conditions. 1956 Op. Sec. Jus. No. 67.

§ 9 Use of public property and funds, Puerto Rico Const. Art. VI, § 9

It has been repeatedly decided by the Secretary of Justice that a transaction where the nominal price is $ 1 is a gift, irrespective of the manner the transaction is called. 1956 Op. Sec. Jus. No. 16.

## 9. Unauthorized payments.

Grounds and conclusions expressed in Opinions of the Secretary of Justice of April 23 and October 2, 1984, are valid and correct, in reference to Governor's power to authorize the disbursement of public funds according to appropriat ions contained in Joint Resolution of General Budget special appropriations, self-renewing appropriations and those originating from legislation of previous years, when Legislative Assembly has not approved a new budget. ( Reiterating Op. Sec. Just. No. 1984-31 and No. 1984-23.) 1985 Op. Sec. Jus. No. 12.

Allocation of funds for purposes not authorized violated this section as well as § 19 of art. II on rights of the people. Partido Socialista Puertorriq ueno v. Estado Libre Asociado de Puerto Rico., 107 D.P.R. 590, 1978 PR Sup. LEXIS 573 (P.R. 1978).

Act 1963, No. 95, as amended, §§ 729a et seq. of Title 3, does not aut horize payment of the Government's share in cases where public employees recei ve benefits from the Medical and Hospitalization Plan of the Teachers Association of Puerto Rico, as relatives of teachers, through a contract executed between the teacher and the Association. Such action would require an explicit legislative authorization. 1974 Op. Sec. Jus. No. 37.

## 10. Guarantees.

Guarantee by municipality of loan to private company participating in an economic development program of municipality does not contravene this section. Federal Deposit Ins. Corp. v. Ponce, 708 F. Supp. 464, 1989 U.S. Dist. LEXIS 2616 (D.P.R. 1989), aff'd, 904 F.2d 740, 1990 U.S. App. LEXIS 7799 (1st Cir. P.R. 1990).

Puerto Rico Const. Art. VI, § 9, PR CONST Art. VI, § 9

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   234

§ 10 Extra compensation for services; extension of term..., Puerto Rico Const. Art....

---

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

Puerto Rico Const. Art. VI, § 10

§ 10 Extra compensation for services; extension of term or decrease of salary of public officer; salary for more than one office

No law shall give extra compensation to any public officer, employee, agent or contractor after services shall have been rendered or contract made. No law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment. No person shall draw a salary for more than one office or position in the government of Puerto Rico.

**History**

**Prior law.**

Organic Acts, 1900, § 36; 1917, § 34.

**Cross references.**

Holding of other offices by members of Legislative Assembly, see art. III, § 15, of this Constitution and § 20 of Title 2.

**ANNOTATIONS**

**1. Generally.**

A public official may occupy two posts simultaneously when there is no incompatibility either in fact or in law between the two positions. 2000 Op. Sec. Jus. No. 10.

Even though a public official may occupy two non-incompatible posts, he may not be remunerated for both, therefore he would have to relinquish one of the salaries. 2000 Op. Sec. Jus. No. 10.

There is no incompatibility that impede occupying simultaneously the positions of Executive Director of the Cardiovascular Center Corporation and Executive Director of the Health Services Facilities Administration. 1989 Op. Sec. Jus. No. 22.

When a statute authorizes payment of a certain amount for each day of a session, this constitutes compensation. ( Reiterating Op. Sec. Jus. No. 1971-21; November 23, 1971, unpublished; No. 1958-60, and No. 1958-11.) 1983 Op. Sec. Jus. No. 19.

Creating public offices and establishing compensation are essentially legislative functions, and the authorization of an administrative organism to pay compensation should appear clearly in the authorizing statute of the organism. ( Reiterating Op. Sec. Jus. April 5, 1974, unpublished, and No. 1958-11.) 1983 Op. Sec. Jus. No. 19.

In execution of judgments for unlawfully discharged public employee, salaries and wages earned during dismissal from

§ 10 Extra compensation for services; extension of term..., Puerto Rico Const. Art....

government agencies, municipalities or instrumentalities should be deducted from award. Jose Estrella v. Municipio de Luquillo., 113 D.P.R. 617, 1982 PR Sup. LEXIS 247 (P.R. 1982).

No department, division or agency of the Commonwealth of Puerto Rico may grant additional compensation to an officer, employee, agent or contractor for services to the government after such services have been rendered, or after the contract has been formalized. Therefore, if the contract securing the services of an engineer had no provisions about vacation time, the accreditation of such leave to the said engineer when he received a regular appointment as an employee after the expiration of his contract violates such prohibitions. 1974 Op. Sec. Jus. No. 32.

The Legislature of Puerto Rico is barred from passing legislation granting additional compensation to public officers and employees after services have been rendered or contract made. 1972 Op. Sec. Jus. No. 29.

The purpose of this section is to prevent the same person from discharging two offices or positions in the government at the same time, and drawing two salaries by virtue of said offices or positions, but the purpose of said constitutional provision is not to prohibit every type of additional compensation to the salary of the officers or employees of the Government. 99 P.R.R. 905.

Although in the light of the Constitution no impediment exists for receiving a salary and, also, additional pay for services rendered to the Government, § 177 of the Political Code § 551 of Title 3 would be a statutory impediment if some of the exceptions established by such statute are not given. 1960 Op. Sec. Jus. No. 27.

### 2. Regular positions.

In this case it is obvious that services rendered to Planning Board by concerned party cannot be construed as regular office or employment of the Government of Puerto Rico, because they were rendered under independent contract where no position or office was involved as these words are used in the Constitution; therefore, constitutional prohibition for double compensation did not apply. 1966 Op. Sec. Jus. No. 19.

Constitutional proviso stating that no person shall draw a salary for more than one office or position in the Government of Puerto Rico should be construed in the sense that such prohibition is directed to prevent salary being received for two positions. 1960 Op. Sec. Jus. No. 18.

There is no doubt that the office of Associate Editor of the University Press is an office or position in the Government of Puerto Rico within the meaning of such terms in this section. 1956 Op. Sec. Jus. No. 64.

The office of Executive Secretary of the Institute of Puerto Rican Literature does not seem to constitute a regular office or position which falls within the meaning of office or position contemplated in the Constitution. 1956 Op. Sec. Jus. No. 64.

### 3. Temporary positions.

The Municipal Law of 1928 not only prohibited a person from having two or more positions with separated salaries in the budget so that no one could receive two salaries, but also the legislative purpose went further by prohibiting the occupying of two positions even if salary from only one was received; in this case and as an exception the law authorized the performing of two positions with a temporary character. 1960 Op. Sec. Jus. No. 9.

### 4. Per diem.

Since there is no legal proviso that expressly authorizes the municipal assemblymen, who are also employees of the Commonwealth Government, to receive compensation for reimbursement of the expenses incurred in attending the assembly meetings, those assemblymen are included in the restrictions of the Political Code. 1960 Op. Sec. Jus. No. 27.

At present since July 25, 1952, when the Constitution came into effect there is no constitutional impediment preventing a person holding an office or position at the University of Puerto Rico, for a salary, from receiving a per diem of $ 20 for every day of meeting as Associate Member of the Puerto Rico Labor Relations Board. 1956 Op. Sec. Jus. No. 58.

### 5. Legislative power.

Constitutional prohibition of granting additional pay to an official, employee, agent or contractor for services to the government after services shall have been rendered or contract made applies only to the Legislative branch and not in any way to Land Authority. 1962 Op. Sec. Jus. No. 55.

### 6. Federal government.

It is evident that the purpose of the limitation established by the Constitution was to prohibit the double compensation derived from offices or positions held in the Government of Puerto Rico but it should not be inferred that it was intended to include compensation from the Federal Government. 1965 Op. Sec. Jus. No. 41.

### 7. Collective bargaining contracts.

As to the legality of an agreement to the effect that the wages agreed upon be made retroactive to the date the collective bargaining between the Port Authority and the Office Employees Brotherhood began, it is deemed that since it does not constitute an extra compensation within the constitutional prohibition and assuming it would be applicable the provision in the agreement making the salaries retroactive to the date the negotiations began does not conflict with the provisions of the Constitution to that effect. 1956 Op. Sec. Jus. No. 45.

Puerto Rico Const. Art. VI, § 10, PR CONST Art. VI, § 10

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

**Puerto Rico Const. Art. VI, § 11**

§ 11 Salaries of officials; increase or decrease

The salaries of the Governor, the Secretaries, the members of the Legislative Assembly, the Controller and Judges shall be fixed by a special law and, except for the salaries of the members of the Legislative Assembly, shall not be decreased during the terms for which they are elected or appointed. The salaries of the Governor and the Controller shall not be increased during said terms. No increase in the salaries of the members of the Legislative Assembly shall take effect until after the expiration of the term of the Legislative Assembly during which it is enacted. Any reduction of the salaries of the members of the Legislative Assembly shall be effective only during the term of the Legislative Assembly which approves it.

**History**

**Prior law.**

Organic Acts, 1900, §§ 29, 36; 1917, §§ 31, 34, 50.

**Cross references.**

Controller, salary, see § 577 of Title 3.

Governor, remuneration, see § 2 of Title 3.

Legislative Assembly, compensation of members, see § 28 of Title 2.

Secretaries of Government, salary, see § 34 of Title 3.

Puerto Rico Const. Art. VI, § 11, PR CONST Art. VI, § 11

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                        © 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

**Puerto Rico Const. Art. VI, § 12**

**§ 12 Residence of Governor**

The Governor shall occupy and use, free of rent, the buildings and properties belonging to the Commonwealth which have been or shall hereafter be used and occupied by him as chief executive.

**History**

**Prior law.**

Organic Acts, 1900, § 36; 1917, § 50.

Puerto Rico Const. Art. VI, § 12, PR CONST Art. VI, § 12

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 13 Franchises, rights, privileges, and concessions, Puerto Rico Const. Art. VI, § 13

---

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

Puerto Rico Const. Art. VI, § 13

§ 13 Franchises, rights, privileges, and concessions

The procedure for granting franchises, rights, privileges and concessions of a public or quasi-public nature shall be determined by law, but every concession of this kind to a person or private entity must be approved by the Governor or by the executive official whom he designates. Every franchise, right, privilege or concession of a public or quasi-public nature shall be subject to amendment, alteration or repeal as determined by law.

**History**

**Prior law.**

Organic Acts, 1900, § 32; 1917, §§ 38, 39.

See also May 1, 1900, Joint Resolution No. 23, §§ 2, 3, 31 Stat. 716.

**ANNOTATIONS**

**1. Definitions.**

'Franchise' and 'license' are side-by-side terms in rhetoric and s emantics, used often as synonyms. WAPA T.V. Broadcasting Corporation v. Secretario de Hacienda., 105 D.P.R. 816, 1977 PR Sup. LEXIS 1944 (P.R. 1977).

Puerto Rico Const. Art. VI, § 13, PR CONST Art. VI, § 13

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                              © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

§ 14 Land holding by corporations, Puerto Rico Const. Art. VI, § 14

---

| Laws of Puerto Rico Annotated Currentness |
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

Puerto Rico Const. Art. VI, § 14

§ 14 Land holding by corporations

No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created, and every corporation authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture.

Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five years after receiving the title.

Corporations not organized in Puerto Rico, but doing business in Puerto Rico, shall be bound by the provisions of this section so far as they are applicable.

These provisions shall not prevent the ownership, possession or management of lands in excess of five hundred acres by the Commonwealth, its agencies or instrumentalities.

**History**

**Prior law.**

Organic Act, 1917, § 39; May 1, 1900, Joint Resolution No. 23, § 3, 31 Stat. 716.

**Cross references.**

Illegal land holding by corporations (500 acre law), see §§ 401 et seq . of Title 28.

Penalties, see §§ 431 435 of Title 28.

Quo warranto proceedings, see § 421 of Title 28 and §§ 3391 3397 of Title 32.

**ANNOTATIONS**

**1. Generally.**

---

Property owned and managed by a corporation authorized for agriculture in Puerto Rico is limited to an amount not exceeding 500 acres; non-agricultural corporations are limited only by Section 14 Article VI of the Constitution, which prohibits all corporations from dealing in or holding real estate, with the exception of those necessary for carrying out the provisions which led to its creation. 1999 Op. Sec. Jus. No. 3.

Neither the Constitution nor the 500 Acres Act prohibits the developer of a tourist project from acquiring part of a field, approximately 291.37 acres, from the Land Authority which is to be used for the project in question, nor is there any impediment to the developer's acquiring the balance of the land, appro ximately 200 acres, for agricultural use. 1999 Op. Sec. Jus. No. 3.

No corporation regardless of nature or character may engage in purchase and sale of real estate in Puerto Rico. 1968 Op. Sec. Jus. No. 6.

Corporations cannot engage in real estate business or in any way hoard land or speculate in real estate market. 1966 Op. Sec. Jus. No. 15.

Corporate powers of 'Oil Lease Venture, Inc.' are so broad that per se they allow interpretation that they infringe upon constitutional proviso prohibiting real estate business under corporate name; therefore, denial of registration application did lie. 1966 Op. Sec. Jus. No. 15.

## 2. Non-agricultural corporations.

Non-agricultural corporations are limited only by the first part of this section which provides that no corporation shall be authorized to conduct the business of buying and selling real estate or to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created. 1956 Op. Sec. Jus. No. 70.

Non-agricultural corporations are not limited, to the extent of their need to acquire real estate as may be reasonably necessary to enable them to carry out the purposes for which they were created, by the constitutional provision that limits the holding of real estate to 500 acres, nor by § 58 of the Land Law (§ 402 of Title 28) which contains a similar provision applicable to any art ificial person as such term is defined in said act to include corporations, societies or any other similar organization. 1956 Op. Sec. Jus. No. 70.

Puerto Rico Const. Art. VI, § 14, PR CONST Art. VI, § 14

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   242

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

Puerto Rico Const. Art. VI, § 15

§ 15 Flag, seal, and anthem

The Legislative Assembly shall determine all matters concerning the flag, the seal and the anthem of the Commonwealth. Once determined, no law changing them shall take effect until one year after the general election next following the date of enactment of said law.

**History**

**Cross references.**

Flag, seal and anthem, see §§ 31 39 of Title 1.

**ANNOTATIONS**

**1. Improper use.**

There are reasonable grounds in the legislation to recommend that the proposed incorporation of 'Coat of Arms of Puerto Rico, Inc.', a nonprofit makin g organization, be denied. 1973 Op. Sec. Jus. No. 21.

Puerto Rico Const. Art. VI, § 15, PR CONST Art. VI, § 15

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.   243

§ 16 Oath of public officials and employees, Puerto Rico Const. Art. VI, § 16

---

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

### Puerto Rico Const. Art. VI, § 16

### § 16 Oath of public officials and employees

All public officials and employees of the Commonwealth, its agencies, instrumentalities and political subdivisions, before entering upon their respective duties, shall take an oath to support the Constitution of the United States and the Constitution and laws of the Commonwealth of Puerto Rico.

**History**

**Prior law.**

Organic Acts, 1900, § 16; 1917, § 10.

**Cross references.**

Oath of office, see Puerto Rican Federal Relations Act, § 10, and § 601 of Title 3.

**ANNOTATIONS**

**1. Oath of office State officers and employees.**

Absence of oath of office required from Commonwealth officers and employees within 15 days after appointment does not create vacant position ipso facto unless it is established that oath was not taken due to refusal or negligence. 1969 Op. Sec. Jus. No. 12.

The constitutional provision, § 10 of the Federal Relations Act, and § § 186 and 208 of the Political Code (§§ 601 and 556 of Title 3), on the o ath of office do not prevent an employee from being de jure or from receiving compensation for services rendered before taking his oath unless the delay is more than 15 days because of refusal or neglect; therefore a doctor who took his oath 5 days after he started to work may be paid for services rendered since he started to work. 1958 Op. Sec. Jus. No. 68.

**Alien physicians.**

Alien physicians who receive a permanent license to practice medicine must comply with all legal requirements to work in government jobs including the oath of office and the citizenship requirement of the Constitution, of the Federal Relations Act, § 10, and of the Political Code, § 186 (§ 601 of Title 3 ), because Act June 23, 1958, No. 75 (§ 271 note of Title 24), exempting them from such requirements, has expired. 1958 Op. Sec. Jus. No. 32.

---

§ 16 Oath of public officials and employees, Puerto Rico Const. Art. VI, § 16

Alien physicians with new permanent licenses could still serve the government under independent contract, although not as employees, because the oath and citizenship are only required of public officers and employees and not of independent contractors. 1958 Op. Sec. Jus. No. 32.

Puerto Rico Const. Art. VI, § 16, PR CONST Art. VI, § 16

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 17 Removal of seat of government in emergency, Puerto Rico Const. Art. VI, § 17

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article VI. General Provisions

Puerto Rico Const. Art. VI, § 17

§ 17 Removal of seat of government in emergency

In case of invasion, rebellion, epidemic or any other event giving rise to a state of emergency, the Governor may call the Legislative Assembly to meet in a place other than the Capitol of Puerto Rico, subject to the approval or disapproval of the Legislative Assembly. Under the same conditions, the Governor may, during the period of emergency, order the government, its agencies and instrumentalities to be moved temporarily to a place other than the seat of the government.

Puerto Rico Const. Art. VI, § 17, PR CONST Art. VI, § 17

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**
© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 18 Criminal actions conducted in name of the people of..., Puerto Rico Const. Art....

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

Puerto Rico Const. Art. VI, § 18

§ 18 Criminal actions conducted in name of the people of Puerto Rico

All criminal actions in the courts of the Commonwealth shall be conducted in the name and by the authority of 'The People of Puerto Rico' until otherw ise provided by law.

**History**

**Prior law.**

Organic Acts, 1900, § 16; 1917, § 10.

**Cross references.**

Commonwealth of Puerto Rico as successor of The People of Puerto Rico, see art. IX, § 4, of this Constitution.

Criminal actions prosecuted in name of 'The People of Puerto Rico,' se e Puerto Rican Federal Relations Act, § 10.

Puerto Rico Const. Art. VI, § 18, PR CONST Art. VI, § 18

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 19 Natural resources; historic or artistic sites; penal..., Puerto Rico Const. Art....

---

| Laws of Puerto Rico Annotated <sup>Currentness</sup> |
| The Constitution of the Commonwealth of Puerto Rico |
| Article VI. General Provisions |

**Puerto Rico Const. Art. VI, § 19**

**§ 19 Natural resources; historic or artistic sites; penal institutions; delinquents**

It shall be the public policy of the Commonwealth to conserve, develop and use its natural resources in the most effective manner possible for the general welfare of the community; to conserve and maintain buildings and places declared by the Legislative Assembly to be of historic or artistic value; to regulate its penal institutions in a manner that effectively achieves their purposes and to provide, within the limits of available resources, for adequate treatment of delinquents in order to make possible their moral and social rehabilitation.

**ANNOTATIONS**

**1. Generally.**

Where Commonwealth Constitution and statutes do not guarantee right of drug addict to be transferred from prison situation to residential addiction treatment facility nor any expectation thereof, denial of such transfer request did not constitute denial of due process. Fiallo v. De Batista, 666 F.2d 739 (1981).

**2. Justiciable controversy.**

This section does not authorize private action to recover symbolic or abstract awardable damages in process of substitution of criterion of plaintiffs established by court decision for that of State agencies in charge of implementing public policy regarding determination of which buildings have historic or artistic value. Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

In this jurisdiction citizens are not legitimated to indiscriminately litigate in court alleged protection of State's public policy. Archeological Found ation v. Department of Housing, 109 D.P.R. 387 (1980).

In the absence of justiciable controversy courts cannot intervene in case, moreover, they would be unduly assuming position of authority over governmental actions of a branch of equal hierarchy if such essential element would be absent. Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

Plaintiff's allegations or demands for protection of State policy by jur isdictional powers requires essentially that they constitute justiciable controversy. Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

**3. Qualifications for action.**

Plaintiff is not legitimized to sue and private action is not justiciable in the absence of legal provision expressly authorizing it to recover al leged aesthetic damages consisting in deprivation of plaintiff from contemplation and conservation of centuries-old building located in historic zone of Old San Juan which was demolished; however, whether public action from same plaintiff was justiciable before determination of Government agencies was implemented in order to avoid such

demolition, see Archeological Foundation v. Department of Housing Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

In private action to recover abstract damages different from public ac tion for execution of ministerial duty by Government agency plaintiff is not legitimized to sue and action does not present justiciable controversy. Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

Legitimation of plaintiff necessarily depends on justiciable nature of each claim, that is, plaintiff presenting real controversy against defendant, and plaintiff should allege, even in cases where right derives from constitutional or statutory provision, that real and tangible damages existed regardless of damage being shared by a large class of other possible plaintiffs. Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

Legitimation of plaintiff does not depend on common interest of all integrating general public as consequence of injury necessarily abstract in nature shared by all citizens, but rather depends on allegation by plaintiff of concrete damage, real or imminent to make controversy a justiciable one. Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

### 3a. Procedure.

Constitutional supremacy does not imply that the People cannot review its lex superior, but this power should be exercised in a way that the constitutional order is maintained, free from the arbitrary and capricious whims of the majority, in a specific procedure. Ruben Berrios Martinez v. Pedro Rossello Gonzalez., 137 D.P.R. 195, 1994 PR Sup. LEXIS 310 (P.R. 1994).

The limits necessary of the revision process of a constitution can be express or implicit; the first is expressly mentioned in the Constitution; the second are those whose existence can only be deduced indirectly. Ruben Berrios Martinez v. Pedro Rossello Gonzalez., 137 D.P.R. 195, 1994 PR Sup. LEXIS 310 (P.R. 1994).

The fathers of the Constitution designed an amendment process that: (1) requires the approval of at least 2/3 of the members of each legislative body; (2) demands that the amendment be submitted to the electorate in a special referendum, or in a general election if approved by at least 3/4 of the total number of the legislative members; (3) orders that each proposed amendment be voted on separately; (4) limits the number of proposed amendments to 3 in the same referendum; (5) establishes that all amendments contain an effective date; (6) requires the affirmative vote of the majority of the electorate; (7) demands that the proposed amendment be published no less than 90 days prior to the referendum. Ruben Berrios Martinez v. Pedro Rossello Gonzalez., 137 D.P.R. 195, 1994 PR Sup. LEXIS 310 (P.R. 1994).

### 4. Court intervention.

Judge should not allow plaintiff not alleging explicit damage to appear before him to solve important constitutional question, thus creating potential abuse of court procedures and distorting role of Judiciary in its relations with Legislature and Executive branches of Government, and exposing courts to propitiate 'Government by injunction'. Archeological Foundation v. Department of Housing, 109 D.P.R. 387 (1980).

Puerto Rico Const. Art. VI, § 19, PR CONST Art. VI, § 19

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.    249

§ 19 Natural resources; historic or artistic sites; penal..., Puerto Rico Const. Art....

Case:17-03283-LTS Doc#:4759-41 Filed:01/12/19 Entered:01/12/19 17:45:34 Desc:
Exhibit DX-UUU Page 251 of 272

§ 1 Proposal of amendments, Puerto Rico Const. Art. VII, § 1

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article VII. Amendments to the Constitution

**Puerto Rico Const. Art. VII, § 1**

**§ 1 Proposal of amendments**

The Legislative Assembly may propose amendments to this Constitution by a concurrent resolution approved by not less than two-thirds of the total number of members of which each house is composed. All proposed amendments shall be submitted to the qualified electors in a special referendum, but if the concurrent resolution is approved by not less than three-fourths of the total number of members of which each house is composed, the Legislative Assembly may provide that the referendum shall be held at the same time as the next general election. Each proposed amendment shall be voted on separately and not more than three proposed amendments may be submitted at the same referendum. Every proposed amendment shall specify the terms under which it shall take effect, and it shall become a part of this Constitution if it is ratified by a majority of the electors voting thereon. Once approved, a proposed amendment must be published at least three months prior to the date of the referendum.

**ANNOTATIONS**

**1. Referendum.**

The only references to a referendum in the Constitution deal with the abolishment and consolidation of municipalities (art. VI, § 1) and with amendments to the Constitution (art. VII); unless an act provides for it expressly, there is no need to submit to referendum the repeal of an act. 1958 Op. Sec. Jus. No. 21.

Puerto Rico Const. Art. VII, § 1, PR CONST Art. VII, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW © 2019 Thomson Reuters. No claim to original U.S. Government Works. 251

§ 2 Revision of Constitution by Constitutional Convention, Puerto Rico Const. Art. VII, § 2

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article VII. Amendments to the Constitution

Puerto Rico Const. Art. VII, § 2

§ 2 Revision of Constitution by Constitutional Convention

The Legislative Assembly, by a concurrent resolution approved by two-thirds of the total number of members of which each house is composed, may submit to the qualified electors at a referendum, held at the same time as a general election, the question of whether a constitutional convention shall be called to revise this Constitution. If a majority of the electors voting on this question vote in favor of the revision, it shall be made by a Constitutional Convention elected in the manner provided by law. Every revision of this Constitution shall be submitted to the qualified electors at a special referendum for ratification or rejection by a majority of the votes cast at the referendum.

**ANNOTATIONS**

**1. Referendum.**

See annotations under art. VII, § 1, of the Constitution.

Puerto Rico Const. Art. VII, § 2, PR CONST Art. VII, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 3 Limitation of amendments, Puerto Rico Const. Art. VII, § 3

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article VII. Amendments to the Constitution

Puerto Rico Const. Art. VII, § 3

§ 3 Limitation of amendments

No amendment to this Constitution shall alter the republican form of government established by it or abolish its Bill of Rights. Any amendment or revision of this Constitution shall be consistent with the resolution enacted by the Congress of the United States approving this Constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public Law 600, of the Eighty-first Congress, adopted in the nature of a compact. As amended at General Election of Nov. 4, 1952, effective Jan. 29, 1953.

**History Amendments**

1952. The amendment of this section added the second sentence thereof. This was one of the conditions of the approval of the Constitution in Joint Resolution of Congress of July 3, 1952, c. 567, 66 Stat. 327, which provided that this section should have no force and effect until so amended. This condition was accepted in the name of the people of Puerto Rico by the Constitutional Convention in Resolution No. 34, July 10, 1952. The amendment was proposed to the voters in the general election of November 4, 1952, by Senate Concurrent Resolution No. 2 of the Legislative Assembly, approved July 28, 1952. By Administrative Bulletin No. 30, Jan. 29, 1953, the Governor proclaimed that the amendment had been approved by an overwhelming majority of the voters and that it should take effect from January 29, 1953.

Puerto Rico Const. Art. VII, § 3, PR CONST Art. VII, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

---

**End of Document** <span style="float:right;">© 2019 Thomson Reuters. No claim to original U.S. Government Works.</span>

§ 1 Boundaries of senatorial and representative districts, Puerto Rico Const. Art. VIII, § 1

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article VIII. Senatorial and Representative Districts

Puerto Rico Const. Art. VIII, § 1

§ 1 Boundaries of senatorial and representative districts

The senatorial and representative districts shall be the following:

I. SENATORIAL DISTRICT OF SAN JUAN, which shall be composed of the following Representative Districts:

Representative District 1. Old San Juan, and the following census tracts of barrio Santurce: 9-15, 16.01, 16.02, 17.01, 17.02, 18, 19, 20.01, 20.02, 22, 23, 25-31, 41, 42.01, 42.02 and 40.

Representative District 2. Census tracts 24 and 32-39, of barrio Santurc e; census tracts 43, 65 and 68 of barrio Hato Rey Norte; from census tract 43, blocks 101-107, 201-206, 218 and 221-223 are included; from census tract 68, blocks 101-118, 201-218, 301-319, 401-406, 410-414, 418 and 420-422 are included; census tracts 44, 45, 62 and 63 of barrio Hato Rey Central, and blocks 101 and 103-106 of census tract 61.01; census tracts 46-48 and 60 of barrio Oriente, and blocks 101-107 of census tract 59.

Representative District 3. Barrio Sabana Llana Norte; census tract 50 of barrios, Oriente and Sabana Llana Norte (population corresponding to each, barrio was included therewithin); census tract 56 of barrios, Oriente and Sabana Llana Sur (population of barrio Oriente included only); census tract 49 of barrio Oriente; from census tract 59 of barrio Oriente, blocks 108, 109 and 201-208 are included; census tract 58 of barrios Oriente and Universidad; census tract 90 of barrio Oriente; census tract 61.02 of barrios, Universidad and Hato Rey Central; census tract 64 of barrio Hato Rey Central; blocks 107-110, 112, 201 and 202 of census tract 61.01 of barrio Hato Rey Central; census tracts 66 and 87 of barrio Hato Rey Sur; from census tract 67 of barrios Hato Rey Norte and Hato Rey Sur, blocks 101-107, 201-203, 205, 207-210, 401-409 and 415 are included; and barrio Pueblo.

Representative District 4. Barrio Gobernador Pinero; census tract 70 of barrios Hato Rey Norte and Gobernador Pinero (the portion belonging to barrio Hato Rey Norte has no population); from census tract 43 of barrio Hato Rey Norte, blocks 221, 220, 225, 226 and 224 are included); census tract 68 of barrio Hato Rey Norte (block 419 without population, included); from census tract 67 of barrio Hato Rey Sur blocks 301-310 are included; census tract 86.01 of barrios Hato Rey Sur and El Cinco; census tract 86.02 of barrios Hato Rey Sur, El Cinco and Monacillo Urbano; census tract 86.03 of barrio El Cinco; census tract 97 of barrios Monacillo Urbano, El Cinco and Gobernador Pinero (population corresponding to barrio Monacillo Urbano was included, the portion of barrio El Cinco included has no population and population of barrio Gobernador Pinero was included therein); from census tract 81 of barrio Monacillo Urbano, blocks 102-106, 108-111, 201-205 and 303-311 are included; from census tract 80 of barrios Monacillo Urbano and Gobernador Pinero, blocks 101, 104-108, 201-205, 301-304, 306 and 505-507 are included; and census tract 79 of barrios Monacillo Urbano and Gobernador Pinero (population corresponding to barrio Monacillo Urbano was included, population of barrio Gobernador Pinero was included therein).

---

§ 1 Boundaries of senatorial and representative districts, Puerto Rico Const. Art. VIII, § 1

Representative District 5. Barrios Quebrada Arenas, Tortugo, Caimito, Cu pey and Monacillo; blocks 301, 302, 401-404 of census tract 81 of barrio Monacillo Urbano; blocks 307, 401, 403-406, 408-410 and 501-504 of census tract 80 of barrio Monacillo Urbano; census tract 98 of barrio Monacillo Urbano; census tracts 96.01, 96.02 and 96.03 of barrios El cinco and Monacillo Urbano; census tract 95 of barrios El Cinco, Pueblas and Sabana Llana Sur (population of barrio, El Cinco included only); and census tract 96.04 of barrios Monacillo Urbano and Monacillo.

II. SENATORIAL DISTRICT OF BAYAMON, which shall be composed of the following Representative Districts:

Representative District 6. Municipality of Guaynabo.

Representative District 7. Municipality of Toa alta, and barrios Nuevo, Guaraguao Arriba, Guaraguao Abajo, Dajaos, Santa Olaya, Buena Vista and part of census tract 311.03 of barrio Pajaros; section of census tract 313 of barrio Cerro Gordo and census tracts 317.02, 317.03 and 317.04 corresponding to barrio Minillas of Bayamon.

Representative District 8. Census tract 317.01, which is part of barrios Minillas and Juan Sanchez; census tracts 316.12, 316.32, 316.11, 316.21, 316.31, 316.22, 316.41, which is part of barrio Minillas; census tract 304, which is part of barrio Bayamon Pueblo (block 103 of this tract belongs to barrio Juan Sanchez); census tracts 314.03, 314.01, 314.02, 315.01 which are part of barrio Cerro Gordo; census tracts 315.02 and 315.03, which are part of barrios Cerro Gordo and Bayamon Pueblo; census tract 307, part of barrios Bayamon Pueblo and Pajaros; census tract 308, part of barrios Bayamon Pueblo and Pajaros; census tract 309.03, part of barrio Pajaros; census tracts 312.03, 312.02, 311.01, 309.04, which are part of barrio Pajaros of; Bayamon census tract 312.01, part of barrios Pajaros and Bayamon Pueblo; census tract 311.02, part of barrios Pajaros and Hato Tejas (population of barrio Pajaros included); census tract 310.03, population included in barrio Pajaros.

Representative District 9. Municipality of Catano and barrio Juan Sanc hez (not including block 103 of census tract 304); census tracts 302, 303 and 305 of barrio Bayamon Pueblo, portion of census tract 306 belonging to barrio Bayamon Pueblo; barrio Hato Tejas (not including census tract 310.02).

Representative District 10. Municipality of Toa Baja and census tract 31 0.02 of barrio Hato Tejas of Bayamon.

III. SENATORIAL DISTRICT OF ARECIBO, which shall be composed of the following Representative Districts:

Representative District 11. Municipalities of Dorado and Vega Alta, and barrios Puerto Nuevo, Cabo Caribe, Cibuco, Ceiba, Almirante Norte, Almirante Sur, Rio Arriba, Vega Baja Pueblo and Rio Abajo of Vega Baja.

Representative District 12. Municipalities of Manati and Morovis, and b arrios Yeguada, Algarrobo, Pugnado Afuera, Pugnado Adentro and Quebrada Arenas of Vega Baja.

Representative District 13. Municipalities of Ciales, Florida and Barcel oneta and barrios Cambalache, Islote, Factor, Garrochales, Santana, Domingo Ruiz, Arenalejos, Miraflores, Sabana Hoyos, Arrozal, Carreras, Rio Arriba and Hato Viejo of Arecibo.

§ 1 Boundaries of senatorial and representative districts, Puerto Rico Const. Art. VIII, § 1

Representative District 14. Municipality of Hatillo and barrios Hato Aba jo, Hato Arriba, Dominguito, Esperanza, Tanama and Arecibo Pueblo.

Representative District 15. Municipalities of Isabela, Quebradillas and Camuy.

IV. SENATORIAL DISTRICT OF MAYAG'EZ, which shall be composed of the following Representative Districts:

Representative District 16. Municipality of Aguadilla, and barrios Moca, Aceitunas, Centro, Rocha, Cuchilla, Pueblo, Capa, Voladoras, Cruz, Naranjo, Marias and Moca Pueblo.

Representative District 17. Municipalities of Aguada, Rincon and Anasco , and barrios Cerro Gordo and Plata of Moca, and barrios Sabanetas, Rio Canas Abajo, Quemado and Leguisamo of the municipality of Mayaguez.

Representative District 18. Urban barrios Candelaria, Carcel, Marina Mer idional, Marina Septentrional, Rio and Salud; barrios Miradero, Mayaguez, Arriba, Quebrada Grande, Sabalos, Juan Alonso, Algarrobo, Guanajibo and Rio Hondo of the municipality of Mayaguez.

Representative District 19. Municipalities of San Sebastian, Las Maria s, Hormigueros and Maricao; and barrios Rio Canas Arriba, Bateyes, Naranjales, Montoso, Limon, Rosario and Malezas of Mayaguez; and barrios Rosario Bajo, Duey Bajo, Duey Alto, Hoconuco Bajo, Hoconuco Alto, Rosario Alto and Rosario Penon of the municipality of San German.

Representative District 20. Municipalities of Cabo Rojo and Lajas; barri os San German Pueblo, Cain Alto, Cain Bajo, Guama, Minillas, Retiro, Ancones, Maresua, Sabana Grande Abajo, Sabana Eneas, Cutui and Tuna of San German; Mona Island and Monito Islet.

V. SENATORIAL DISTRICT OF PONCE, which shall be composed of the following Representative Districts:

Representative District 21. Municipalities of Sabana Grande, Guanica an d Yauco; barrios Consejo, Llano, Sierra Baja, Pasto and Jagua Pasto of Guayanilla.

Representative District 22. Municipalities of Lares, Utuado and Adjuntas .

Representative District 23. Municipality of Penuelas; barrios Guayanilla , Quebrada Honda, Barrero, Macana, Quebradas, Jaguas, Magas, Cedro, Boca, Indios, Rufina, Playa and Guayanilla Pueblo; and barrios Canas, Magueyes Urbano, Quebrada Limon, Portugues, Magueyes, Marueno, Tibes, Monte Llano, Guaraguao and San Patricio of Ponce.

Representative District 24. Barrios Playa, Canas Urbano and Portugues U rbano; barrios First through Sixth of Ponce.

Representative District 25. Municipality of Jayuya; and barrios Anon, Ma raguez, Real, Machuelo Arriba, Machuelo

Abajo, San Anton, Cerrillos, Coto Laurel, Sabanetas, Capitanejo, Vayas and Bucana of the municipality of Ponce.

VI. SENATORIAL DISTRICT OF GUAYAMA, which shall be composed of the following Representative Districts:

Representative District 26. Municipalities of Villalba and Juana Diaz, and barrios Santa Isabel Pueblo, Playa, Boca Velazquez and Descalabrado of Santa Isabel.

Representative District 27. Municipalities of Orocovis and Coamo, and ba rrios Algarrobo, Pasto, Asomante, Llanos and Caonillas of Aibonito, and barrios Honduras, Helechal, Palo Hincado, Barrancas, Canabon and Pueblo of Barranquitas.

Representative District 28. Municipalities of Corozal, Naranjito, Comeri o, and barrios Quebradilla and Quebrada Grande of the municipality of Barranquitas.

Representative District 29. Municipality of Cidra, and barrios Aibonito Pueblo, Plata, Robles and Cuyon of the municipality of Aibonito; and barrios Cayey Pueblo, Beatriz, Vegas, Rincon Monte Llano, Toita, Quebrada Arriba, Sumido, Lapa, Pedro Avila, Pasto Viejo, Piedras, Maton Abajo and Maton Arriba of the municipality of Cayey.

Representative District 30. Municipalities of Guayama and Salinas; and b arrios Guavate, Farallon, Cedro, Culebras Bajo, Culebras Alto, Jajome Alto, Jajome Bajo and Cercadillo of the municipality of Cayey; and barrios Felicia 1, Felicia 2, Jauca 1 and Jauca 2 of the municipality of Santa Isabel.

VII. SENATORIAL DISTRICT OF HUMACAO, which shall be composed of the following Representative Districts:

Representative District 31. Municipality of Aguas Buenas; barrios San An tonio, Rio Canas, Bairoa, Canabon, Canaboncito and Beatriz of Caguas and census tracts 2011, 2029 and portion of census tracts 2004, 2005, 2013 and 2015 of barrio Pueblo of Caguas.

Representative District 32. Municipality of Gurabo; and the barrios of C astro, Turabo, Borinquen, San Salvador and census sectors 2006, 2008, 2009, 2017, 2018 and 2015; census sectors 2010, 2010 and 2016 of barrio Pueblo Caguas.

Representative District 33. Municipalities of Juncos, San Lorenzo and La s Piedras.

Representative District 34. Municipalities of Yabucoa, Maunabo Patillas and Arroyo.

Representative District 35. Municipalities of Humacao, Naguabo and Ceiba .

VIII. SENATORIAL DISTRICT OF CAROLINA, which shall be composed of the following Representative Districts:

Representative District 36. Municipalities of Fajardo, Luquillo, Culebra and Vieques; barrios Rio Grande Pueblo, Herrera, Guzman, Abajo, Guzman Arriba, Cienaga Alta, Zarzal, Jimenez and Mameyes Segundo of Rio Grande.

Representative District 37. Municipalities of Loiza and Canovanas; and barrios Canovanillas, Santa Cruz, Barrazas, Carruzos and Cedros of Carolina; and barrio Cienaga Baja of Rio Grande.

Representative District 38. Barrios Carolina Pueblo, Hoyo Mulas, San Ant on, Martin Gonzalez, Trujillo Bajo and Cacao of the municipality of Carolina; and barrios Dos Bocas, La Gloria, Quebrada Negrito and Quebrada Grande of the municipality of Trujillo Alto.

Representative District 39. Barrios Cangrejo Arriba and Sabana Abajo of Carolina.

Representative District 40. Barrio Sabana Llana Sur of the municipality of San Juan; and barrios Trujillo Alto Pueblo, Cuevas and Carraizo of Trujillo Alto.

## History

### Text references.

Reference to 'barrio Pueblo' in the third paragraph, Representive Dist rict 3, normally means the urban center of municipality in question.

### Amendments   1983.

The Constitutional Board for the Revision of Electorate Districts amended this section generally.   **1964.**

The Constitutional Board for the Revision of Electorate Districts amended this section generally.

### Prior law.

Organic Acts, 1900, § 28; 1917, § 28.

### Cross references.

The Constitutional Board for Revision of Senatorial and Representative Electoral Districts Servicio Legislativo De Puerto Rico, No. 8.

Electoral precincts, see § 3208 of Title 16.

Number of districts and Board to revise districts, see art. III, §§ 3 and 4, of this Constitution.

Puerto Rico Const. Art. VIII, § 1, PR CONST Art. VIII, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of

§ 1 Boundaries of senatorial and representative districts, Puerto Rico Const. Art. VIII, § 1

the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** <span style="float:right">© 2019 Thomson Reuters. No claim to original U.S. Government Works.</span>

§ 2 Electoral Zones in San Juan, Puerto Rico Const. Art. VIII, § 2

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>
  The Constitution of the Commonwealth of Puerto Rico
    Article VIII. Senatorial and Representative Districts

**Puerto Rico Const. Art. VIII, § 2**

**§ 2 Electoral Zones in San Juan**

Electoral zones numbers 1, 2, 3 and 4 included in three representative districts within the senatorial district of San Juan are those presently existing for purposes of electoral organization in the second precinct of San Juan.

**History**

**Editor's notes.**

This section, which was derived from § 2, Art. VIII of the Constitution of the Commonwealth of Puerto Rico, is obsolete due to successive revisions of Electoral Districts. See § 1 under this same Art. VIII.

Puerto Rico Const. Art. VIII, § 2, PR CONST Art. VIII, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 1 Laws, rights, liabilities, etc., continued, Puerto Rico Const. Art. IX, § 1

Laws of Puerto Rico Annotated Currentness

The Constitution of the Commonwealth of Puerto Rico

Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 1

§ 1 Laws, rights, liabilities, etc., continued

When this Constitution goes into effect all laws not inconsistent therewith shall continue in full force until amended or repealed, or until they expire by their own terms.

Unless otherwise provided by this Constitution, civil and criminal liabilities, rights, franchises, concessions, privileges, claims, actions, causes of action, contracts, and civil, criminal and administrative proceedings shall continue unaffected, notwithstanding the taking effect of this Constitution.

**History**

**Prior law.**

Organic Acts, 1900, § 8; 1917, § 57.

**ANNOTATIONS**

**1. Effectiveness of law of waters.**

Arts. 43, 53, 55, 57, 58, and 248 of the Law of Waters, about public waters and their courses (§§ 501 note, 634, 652, 654, 656, 657, and 1061 of Title 12), must be considered in effect because they do not conflict with the Constitution; therefore a special permission for works in the Rio Piedras should be granted under such provisions. 1958 Op. Sec. Jus. No. 25.

**2. Eminent domain.**

The Puerto Rican eminent domain law, even if originally void for lack of legislative authority, was in force pursuant to federal act which continued in 'force and effect' all laws not expressly modified. Cortes v. Puerto Rico, 422 F.2d 1308, 1970 U.S. App. LEXIS 10403 (1st Cir. P.R.), cert. denied, 400 U.S. 837, 91 S. Ct. 76, 27 L. Ed. 2d 71, 1970 U.S. LEXIS 1056 (U.S. 1970).

Puerto Rico Const. Art. IX, § 1, PR CONST Art. IX, § 1

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of

§ 1 Laws, rights, liabilities, etc., continued, Puerto Rico Const. Art. IX, § 1

Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                                   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 2 Existing officers continued in office, Puerto Rico Const. Art. IX, § 2

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>
   The Constitution of the Commonwealth of Puerto Rico
      Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 2

§ 2 Existing officers continued in office

All officers who are in office by election or appointment on the date this Constitution takes effect shall continue to hold their offices and to perform the functions thereof in a manner not inconsistent with this Constitution, unless the functions of their offices are abolished or until their successors are selected and qualify in accordance with this Constitution and laws enacted pursuant thereto.

**History**

**Prior law.**

Organic Act, 1917, §§ 52, 56; May 1, 1900, Joint Resolution No. 23, § 1, 31 Stat. 716.

Puerto Rico Const. Art. IX, § 2, PR CONST Art. IX, § 2

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 3 Existing judges continued in office, Puerto Rico Const. Art. IX, § 3

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 3

§ 3 Existing judges continued in office

Notwithstanding the age limit fixed by this Constitution for compulsory retirement, all the judges of the courts of Puerto Rico who are holding office on the date this Constitution takes effect shall continue to hold their judicial offices until the expiration of the terms for which they were appointed, and in the case of justices of the Supreme Court during good behavior.

**History**

**Cross references.**

Compulsory retirement of judges at age of 70, see art. V, § 10, of this Constitution.

Puerto Rico Const. Art. IX, § 3, PR CONST Art. IX, § 3

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document** © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 4 Commonwealth of Puerto Rico as successor of the..., Puerto Rico Const. Art....

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 4

§ 4 Commonwealth of Puerto Rico as successor of the people of Puerto Rico

The Commonwealth of Puerto Rico shall be the successor of The People of Puerto Rico for all purposes, including without limitation the collection and payment of debts and liabilities in accordance with their terms.

**History**

**Cross references.**

Criminal actions to be prosecuted in name of The People of Puerto Rico, see art. VI, § 18, of this Constitution.

Puerto Rico Const. Art. IX, § 4, PR CONST Art. IX, § 4

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document                                          © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 5 Citizen of the Commonwealth of Puerto Rico to..., Puerto Rico Const. Art....

---

Laws of Puerto Rico Annotated <sup>Currentness</sup>

The Constitution of the Commonwealth of Puerto Rico

Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 5

§ 5 Citizen of the Commonwealth of Puerto Rico to replace term citizen of Puerto Rico

When this Constitution goes into effect, the term 'citizen of the Common wealth of Puerto Rico' shall replace the term 'citizen of Puerto Rico' as previously used.

**History**

**Prior law.**

Organic Acts, 1900, § 7; 1917, §§ 5, 5a.

**Cross references.**

Citizenship, see Puerto Rican Federal Relations Act, §§ 5, 5a, and 1 L .P.R.A. § 7.

Puerto Rico Const. Art. IX, § 5, PR CONST Art. IX, § 5

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Case:17-03283-LTS   Doc#:4759-41   Filed:01/12/19   Entered:01/12/19 17:45:34   Desc:
Exhibit DX-UUU   Page 267 of 272

§ 6 Political parties, Puerto Rico Const. Art. IX, § 6

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 6

§ 6 Political parties

Political parties shall continue to enjoy all rights recognized by the election law, provided that on the effective date of this Constitution they fulfill the minimum requirements for the registration of new parties contained in said law. Five years after this Constitution shall have taken effect the Legislative Assembly may change these requirements, but any law increasing them shall not go into effect until after the general election next following its enactment.

**ANNOTATIONS**

**1. Generally.**

Principle of electoral equality which has its source in this section is continuous. Under said principle, all voters and political parties enjoy equal rights. Partido de Renovacion Puertorriquena v. Estado Libre Asociado de Puerto Rico., 115 D.P.R. 631, 1984 PR Sup. LEXIS 146 (P.R. 1984).

This section is concerned with the protection and guarantee of the subsistence of the political parties, but it does not deal with the registration of new parties. Partido Accion Cristiana de Puerto Rico v. roberto Veray Torregrosa., 90 P.R.R. 66, 1964 PR Sup. LEXIS 230 (P.R. 1964).

**2. Minimum requirements.**

The minimum requirement to acquire the condition of principal party and to retain the category of party by petition pursuant to this section and assum ing that the law which establishes the minimum requirements for the registration of new parties was Act No. 6 of September 27, 1951, p. 106, former § 20 of T itle 16, and assuming, further, that a political group went to the 1960 elections as a party by petition is to obtain in the general elections a total numbe r of votes equivalent to 5 percent or more of the total votes cast for the office of Governor of Puerto Rico. Partido Accion Cristiana v. Gobernador de Puerto Rico., 87 P.R.R. 166, 1963 PR Sup. LEXIS 187 (P.R. 1963).

**3. Parties by petition.**

Upon examining the evidence and the legal provisions applicable in this case of declaratory judgment this section and § 20 of Title 16 it is co ncluded that the political organization called Christian Action Party could only acquire the category of party by petition if it registered in the Office of the Executive Secretary of Puerto Rico, for the general elections of 1964, candidates by petition, in and for three-fourths or more of the electoral precincts throughout the Island, and filed in said office for such elections petitions for nomination of candidates signed by a number of petitioners equivalent to 10 percent or more of the total votes cast for all candidates for the office of Governor of Puerto Rico in the elections held in 1960. Partido Accion Cristiana de Puerto Rico v. roberto Veray Torregrosa., 90 P.R.R. 66, 1964 PR Sup. LEXIS 230 (P.R. 1964).

**§ 6 Political parties, Puerto Rico Const. Art. IX, § 6**

Puerto Rico Const. Art. IX, § 6, PR CONST Art. IX, § 6

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article IX. Transitory Provisions

**Puerto Rico Const. Art. IX, § 7**

**§ 7 Laws supplementing transitory provisions**

The Legislative Assembly may enact the laws necessary to supplement and make effective these transitory provisions in order to assure the functioning of the government until the officers provided for by this Constitution are elected or appointed and qualify, and until this Constitution takes effect in all respects.

Puerto Rico Const. Art. IX, § 7, PR CONST Art. IX, § 7

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 8 Division of Department of Agriculture and Commerce, Puerto Rico Const. Art. IX, § 8

---

| Laws of Puerto Rico Annotated Currentness |
|---|
| The Constitution of the Commonwealth of Puerto Rico |
| Article IX. Transitory Provisions |

### Puerto Rico Const. Art. IX, § 8

### § 8 Division of Department of Agriculture and Commerce

If the Legislative Assembly creates a Department of Commerce, the Department of Agriculture and Commerce shall thereafter be called the Department of Agriculture.

Puerto Rico Const. Art. IX, § 8, PR CONST Art. IX, § 8

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**                    © 2019 Thomson Reuters. No claim to original U.S. Government Works.

---

   © 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 9 First and second general elections, Puerto Rico Const. Art. IX, § 9

Laws of Puerto Rico Annotated <sup>Currentness</sup>
The Constitution of the Commonwealth of Puerto Rico
Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 9

§ 9 First and second general elections

The first election under the provisions of this Constitution shall be held on the date provided by law, but not later than six months after the effective date of this Constitution. The second general election under this Constitution shall be held in the month of November 1956 on a day provided by law.

Puerto Rico Const. Art. IX, § 9, PR CONST Art. IX, § 9

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

**End of Document**

© 2019 Thomson Reuters. No claim to original U.S. Government Works.

§ 10 Effective date of Constitution, Puerto Rico Const. Art. IX, § 10

Laws of Puerto Rico Annotated Currentness
The Constitution of the Commonwealth of Puerto Rico
Article IX. Transitory Provisions

Puerto Rico Const. Art. IX, § 10

§ 10 Effective date of Constitution

This Constitution shall take effect when the Governor so proclaims, but not later than sixty days after its ratification by the Congress of the United States.

ANNOTATIONS

1. Generally.

Once Commonwealth of Puerto Rico Constitution was approved, Legislature does not need to approve any implementing statute in order to determine its sovereignty as fundamental law of the nation. Lopez v. Santos, 109 D.P.R. 563, 1980 PR Sup. LEXIS 97 (P.R. 1980).

Signatarios de la Constitucion

Puerto Rico Const. Art. IX, § 10, PR CONST Art. IX, § 10

Current through all acts translated by the Translation Office of the Puerto Rico Government through the 2010 Legislative Session and various acts from 2011 to the present. Appendices III (Rules of Civil Procedure) and IV (Rules of Evidence) of Title 32 have been replaced by Appendices V (Rules of Civil Procedure) and VI (Rules of Evidence) of Title 32 by Order of the Supreme Court dated Sept. 4, 2009, but the official translations are not yet available. Also, the official translations of Appendices XII through XXII of Title 3, which encompass various reorganization plans of the Puerto Rico Government and promulgated in 2010 through 2012, have not yet been received. For all missing translations, please consult the Spanish version

End of Document          © 2019 Thomson Reuters. No claim to original U.S. Government Works.