136 D.P.R. 497

CERTIFIED TRANSLATION

1994 JTS 96, 136 D.P.R. 497, 1994 WL 909617 (P.R.)

HONORABLE DAVID NORIEGA RODRÍGUEZ,
ETC., plaintiffs and appellants,
v.
HONORABLE JOSÉ RONALDO JARABO, ETC.,
defendants y appellees.

In the Puerto Rico Supreme Court.
*Number:* AC-92-97

**Synopsis**
JUDGMENT by J. *Carmen Celinda Ríos* (San Juan), which dismisses certain declaratory judgment and injunction complaint. *Confirmed.*

*Juan Santiago Nieves, José Juan Nazario de la Rosa*, de *Nazario & Santiago*, attorneys for plaintiffs and appellants; *Roberto Ariel Fernández, Marcos A. Ramírez Lavandero*, de *Ramírez & Ramírez, and Richard W. Markus*, attorneys for defendants and appellees.

ASSOCIATE JUDGE MRS. NAVEIRA DE RODÓN issued the opinion of the Court.

In this case we must decide if Rule XXXIII of the Regulation of the House of Representatives, 1982, pg. 71, violates the legislative prerogatives of the members of such Body, as outlined by the Constitution of the Commonwealth of Puerto Rico. The rule in question stipulates the parliamentary procedure for the abstention in the voting in the House of Representatives.

**I**

Plaintiffs are Counsels David Noriega-Rodríguez and Hiram Meléndez-Rivera, Representatives at large of the Puerto Rican Independent Party (hereinafter P.I.P. for its Spanish acronym) in the House of Representatives during the four year period of 1988-1992.[1] **\*502**

Original defendants were Mr. José Ronaldo-Jarabo, as President of the House of Representatives, and Counsel

Ferdinand Mercado, as Secretary of such legislative body. In accordance to Rule 22.4 of Civil Procedure, 32 L.P.R.A. Ap. III, defendants have been substituted by Counsel Zaida Hernández-Torres and Mrs. Ángeles Mendoza, the current President and Secretary of the House of Representatives.

On March 5, 1990, the House of Representatives took to vote various Joint Resolutions of the House and Senate of Puerto Rico.[2] Through such resolutions amounts of money were assigned charged to the so called "barril de tocino" and to other public funds. Pursuant to Rule XXXIII, item 56, of the Regulation of the House of Representatives, *supra*, which stipulates the procedure for abstention during a cameral voting,[3] Representatives Noriega-Rodríguez and Meléndez-Rivera requested authorization to abstain from that vote.

They explained that they did not want to vote because the approval of unspecific joint resolutions charged to the "barril de tocino" and other public funds was unconstitutional, pursuant to the judgment of the Superior Court, San Juan Part, in the case **\*503** *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994).[4] They stated that such judgment had been appealed before this Forum and it still had not been decided. Lastly, they stated that the vagueness of the text of the resolutions did not allow them to form an intelligent opinion to vote.

In the first vote, the House of Representatives verbally authorized the abstention of coplaintiffs.[5] However, after the division of the legislative body, such authorization was denied.[6] Upon passing the list, in final voting, co-plaintiffs tried to issue and explain their abstention votes.[7] The accidental President **\*504** of the House, Hon. Samuel Ramírez, instructed the Secretary of the Body to not count the votes of the Representatives Noriega-Rodríguez and Meléndez-Rivera.

Therefore, co-plaintiffs appellants filed a declaratory judgment and injunction complaint to declare Rule XXXIII of the Regulation of the House of Representatives unconstitutional, *supra*, and order the Secretary of the House to record in his books the abstention of Representatives Noriega-Rodríguez and Meléndez-Rivera, regarding the vote of the Joint Resolutions of the House and Senate.

The court of first instance gave plaintiffs a term of thirty (30) days to use the mechanism provided by the Regulation

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

of the House of Representatives to request amendments to it.[8] Also, the court of first instance reserved the jurisdiction to decide the case in its merits if the House of Representatives refused to address the request to amend this regulation.

On October 24, 1990 plaintiffs appellants informed the court that on May 29, 1990 they had filed a motion before the House of Representatives to amend item 5 of Rule XXXIII of the Regulation of the legislative body, *supra*, so the consent of the majority of the members of the House would not be required to abstain from voting and that it had been referred to the Commission of Internal Affairs of the House. They alleged that such commission did not provide any report about the proposed amendment. They requested the proceedings in the case be resumed and the evaluation of the Motion for Summary Judgment.

The court of instance entered judgment on January 9, 1992, dismissing the complaint. It decided that the House of Representatives has to decide if there are valid reasons to allow the abstention of plaintiffs. In sum, the court concluded: (1) that Rule XXXIII of the Regulation of the House of Representatives, *supra*, establishes an obligation of voting and a discretion in the abstention; (2) that Art. 23 of the Political Code, 2 L.P.R.A. sec. 23, imposes upon the officials and employees of each House to comply with the obligations that are demanded by the regulations or orders of the respective Bodies; (3) that Art. III, Sec. 17, Const. E.L.A., L.P.R.A., Tome 1, establishes the obligation of the members of the House to issue a vote in favor or against and does not provide for abstention; (4) that the Regulation of the House of Representatives grants broader rights than the Constitution by allowing the abstentions of the legislators, but that they are conditioned; (5) that it is the duty of the House to determine and review the legislative rules, as the legislative bodies have to adopt its rules of internal government to control their procedures, and (6) that because of the political question doctrine it is the Legislative Branch and not the courts that must intervene in its internal affairs.

Representatives Noriega-Rodríguez and Meléndez-Rivera appealed the judgment and presented two (2) proposed errors. The first, alleged that the court of instance erred by abstaining in this case because of the political question doctrine. Secondly, that the court of first instance erred by not acknowledging the constitutional guarantees *506 about the right of the legislator to vote freely.[9]

In sum, the case before us questions the constitutional validity of a specific rule of the Regulation of the House of Representatives. Therefore, we have to analyze if based on the facts of this case, this is a justiciable controversy; if, as the court of instance decided, this is a political question, or if the referenced rule of the Regulation of the House of Representatives violates the constitutional rights of plaintiffs. Let's see.

## II

[1] After the historical decision of the United States Supreme Court in *Marbury v. Madison*, 5 U.S. 135 (1803),[10] it is an axiom of constitutional litigation that the Judicial Power has the faculty to review and determine the constitutionality of the actions of the other branches *507 of government. However the judicial review has limits. They were outlined by the Court when interpreting Art. III, Sec. 2 of the federal Constitution, L.P.R.A., Tome 1, that limits the judicial power of the federal courts to cases and controversies.[11]

[2–4] Recently in *Noriega v. Hernández Colón*, supra, we reiterated the concept of "justiciability" that we adopted in *E.L.A. v. Aguayo*, 80 D.P.R. 552, 595 (1958), in which we determined that the judicial review is the "distinctive characteristic of our political order'D'.[12] we stated that the authority of the courts to determine if the cases before them are justiciable or not stems from the fundamental principle that if the courts only exist to decide "genuine controversies that have arisen between opposing parties that have a real interest in obtaining a remedy that can affect their legal relationships 'D'. *E.L.A. v. Aguayo*, supra, pages 558559.[13] The judicial auto limitation is necessary because it constitutes "the minimum conditions for the discreet and tolerable exercise of a power that would otherwise would be a clear threat for the democratic quality of the system and would turn the judges into guardians of the community". Id., page 597. The Constitution of the Commonwealth, in its Art. V, Sec. 4, L.P.R.A., Tome 1, ed. 1982, page 356, provides that "[n]o law shall be declared unconstitutional if not for a majority of the total number of the judges that *508 compose the court", which demonstrates that the members of the Constituent Convention had "full awareness of the 'gravity and delicateness' of the judicial duty and [the convention] acted to limit it even more than the federal courts have voluntarily done". *E.L.A. v. Aguayo*, supra, page 599. The doctrines of auto limitation known as "consultative opinion",[14] "judicial capacity'D',[15] "ripeness",[16] "mootness"[17] and "political question'D'[18] form the frame of the concept of "justiciability". Now, those doctrines are self-imposed. The courts are the ones that analyze and

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)
136 D.P.R. 497

CERTIFIED TRANSLATION

decide if they must decide a certain case without surpassing the limit of their constitutional power. *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715, 720 721 (1980).[19] **\*509**

[5] Specifically, the doctrine of political question prevents the judicial review of matters which other political branches of the government have to decide.[20] A court faces a political question, not susceptible of judicial adjudication, when there exists one of the following elements: (1) an express delegation of the matter in controversy to another branch of government; (2) absence of criteria or appropriate judicial norms to decide the controversy; (3) impossibility of deciding without making an initial decision of the public policy that does not correspond to the courts; (4) an impossibility of making a decision without disrespecting another branch of government; (5) an unusual need of adhering without questioning a political decision made previously, and (6) potential of confusion because of multiple decisions of various government departments of a matter.[21]

If the Constitution confers an express faculty to a branch of government and it is of political nature, it shall not be subject to judicial review unless performed incorrectly, affecting constitutional rights of the same hierarchy. See: *Powell v. McCormack*, 395 U.S. 486 (1969); *United States v. Nixon*, 418 U.S. 683 (1974); *Silva v. Hernández Agosto*, 118 D.P.R. 45 (1986); R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, pages 697 698.

Professor Tribe suggests that in the cases that involve the political question doctrine the important thing is the analysis **\*510** of whether a constitutional clause provides rights that can be compelled through judicial action. L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, pages 98 y 106.

On the other hand, Professor Scharpf considers that the political question doctrine must be explained in functional terms, tied to the specific facts of the cases. The doctrine is not applicable when important individual rights exist that could be affected if the Judicial Power does not act. F.W. Scharpf, *Judicial Review and the Political Question: A Functional Analysis*, 75 Yale L.J. 517, 566 597 (1966).[22]

According to Professor Serrano Geyls there are three (3) aspects of the political question doctrine: (1) there exists a matter textually assigned by the Constitution to another branch of Government; (2) there are no decision criterions susceptible of discovering and being administered by the courts, and (3) prudence demands judicial abstention. Serrano Geyls, *op. cit.*, pages 679 680.

### III

In cases regarding the challenge of rules of the North American Congress, the federal Supreme Court has not shown to be particularly willing to decide disputes of justice, their interpretation or application.[23] Within this context, the federal Supreme Court examined for the first time the scope of judicial review in *United States v. Ballin*, 144 U.S. 1 (1891). The rule in controversy was Rule XV of the Regulation of the **\*511** House of Representatives, *supra*, page 34, that established that members present in a session although not voting would count for purposes of the quorum required.[24] Before adopting such rule, the quorum requirement could only be satisfied if the majority of the members voted for the proposed measure. Importers Ballin, Joseph & Co. alleged that a tax law was not valid because it had been approved by less than the voting majority and the constitutional quorum was not met.

The Court refused to reverse the congressional rule stating that "[n]either do the advantages or disadvantages, the wisdom or folly, of such a rule present any matters of judicial consideration. With the courts the question is only one of power. The Constitution empowers each house to determine its rules of proceedings". *United States v. Ballin*, supra, page 5. Despite this conclusive statement, the Supreme Court reserved the final authority to determine if a congressional rule violated any fundamental right guaranteed by the Constitution. In sum, it acknowledged the power of the Congress to create its own rules, reserving the faculty of reviewing them if they violated any constitutional right.[25] This is the criterion provided by the Court to determine if the legislative rules would be reviewed or not. M.B. Miller, *The Justiciability of Legislative Rules and the "Political" Political Question Doctrine*, 78 Cal. L. Rev. 1341, 1349 (1990).

In the middle of the century, the federal Supreme Court examined **\*512** a rule of the Senate regarding a vote of a nomination of the Executive Branch. In *United States v. Smith*, 286 U.S. 6 (1932), the Executive Branch questioned the validity of Rule XXXVIII of the Regulation of the House of Representatives[26] after the Senate requested that President Hoover return an order that confirmed an appointment to the Body to reconsider it. The President refused to do as requested and the Senate reconsidered and rejected the appointment.

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    3



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)
136 D.P.R. 497

## CERTIFIED TRANSLATION

In this case, the Court reviewed the rule and clarified that the controversy was about the interpretation of its applicability and not its constitutionality. *United States v. Smith*, supra, page 33. Despite acknowledging that when exercising is review power, the Court must allow the interpretation made by the Senate of its own rules, it held that the background and precedents of the Body did not show that the Senate had the faculty to reconsider a confirmation vote after a nominee had taken possession of the position and had begun carrying out his duties. Id., pages 33 and 3748. The Court stated that when the interpretation of a rule affected persons that were not members of the Senate, the matter was necessarily justiciable. Id., page 33.

In *Christoffel v. United States*, 338 U.S. 84 (1949), the *513 Supreme Court passed judgment again upon the rule of a committee of the House of Representatives. In this case, the petitioner was convicted of perjury for his testimony before the Education and Labor Committee. The evidence presented showed that at the time in which petitioner committed the alleged perjury there was no quorum constituted. The Court decided that under the rules and practices of the House of Representatives a committee of the Body could only request testimony when the quorum was duly constituted not only at the beginning of the session, but during the time in which the witness was interrogated. In absence of the quorum required, the committee was not a "competent court" as the statute that penalized perjury in the District of Columbia required. Id., page 90. The Court interpreted a rule of the Congress because a fundamental right of an accused was at stake.[27] Id.

In *Yellin v. United States*, 374 U.S. 109 (1963), the Supreme Court addressed other controversy regarding the application of a rule of congressional committee.[28] The *514 petitioner Yellin refused to answer questions before a subcommittee of the House of Representatives, reason for which he was convicted for contempt. In *Yellin v. United States*, supra, the Supreme Court determined that the rules of Congress and its committees are indictable, but that considerable weight should be given to the practice and interpretation that Congress makes about such rules. For this reason, the Court decided that the subcommittee did not obey its own rule about the interrogatory of a witness in executive session, violating the witness' right to be privately interrogated.[29] Id. page 123.

On their part, the federal courts of lower hierarchy have also had the opportunity to decide about the justiciability of the legislative rules.[30] For example, the Circuit Court for the District of Columbia has acknowledged that the Judicial Branch cannot review the procedural rules of the Legislative Branch without facing problems of separation of powers. Like the Supreme Court, the Circuit has rejected the idea that it does not have the faculty for such review, but it has auto-imposed discretional limitations to proceed with it.[31] *515 Circuit Court for the District of Columbia many times has focused its decisions in the status of plaintiff, assuming jurisdiction depending if plaintiff is a legislator or not,[32] as it deems that a legislator can obtain a remedy from his/her colleagues through the approval, reversal or amendment of a law or a regulation.[33]

### IV

[6] Even though in our jurisdiction the doctrine of political question does not have the same influence as in the United States, *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750 (1977); *Silva v. Hernández Agosto*, supra, it still is one of the auto-limitation rules in the local field.[34] Upon examining past confrontations between the branches of *516 our Government,[35] we have stated that if the Constitution confers an express faculty to a government branch and it is of political nature, it shall not be subject to the judicial review unless such faculty is performed incorrectly, affecting constitutional rights of the same hierarchy. When that occurs, our judicial system cannot evade the constitutional responsibility of interpreting the law in cases of conflict between the governmental branches as they cannot become arbitrators of their own actions. *P.S.P. v. E.L.A.*, 107 D.P.R. 590, 596 (1978); *Silva v. Hernández Agosto*, supra, page 55; *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576, 591 (1983).

[7] Now, when we exercise the inevitable and non-transferable duty of interpreting the Law in cases of conflicts of political rights, as the constitutionality of the sources of those rights, we must act carefully, respecting the criteria of other governmental bodies about the extent of their own powers. *P.S.P. v. E.L.A.*, supra, pág. 599; *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250, 277278 (1978). When examining the constitutional validity of a legislative action challenged by a legislator we have stated that the courts are in charge of "defining [the] outline of the faculties of the Legislative and Executive Power and the decision of the validity of their exercises are matters carefully reserved for the courts". *Santa Aponte v. Srio. del Senado*, supra, page 759. On that occasion we stated that the Judicial Power is the final interpreter of the Constitution. Echoing the words of Alexander Hamilton in *El Federalista*, we stated that the legislative bodies cannot



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

be the constitutional judges of their own powers. **\*517**

A few years later, in *Corujo Collazo v. Viera Martínez*, 111 D.P.R. 552 (1981), we reaffirmed the principles established in *Santa Aponte v. Srio. del Senado*, supra, in the sense that despite that the Constitution of the Commonwealth of Puerto Rico acknowledges that the House of Representatives is the only judge in the election of its members, a representative has the right to occupy a seat until everything regarding his/her swearing in and taking into office is investigated.

In *Silva v. Hernández Agosto*, supra, we reviewed the constitutional validity of Rule 7.1 of the Regulation to Regulate the Investigation of the Events of Cerro Maravilla of October 24, 1985, upon petition of the Senators Rolando A. Silva, Calixto Calero Juarbe y Mercedes Torres Widow of Pérez, as members of the Legal Commission of the Senate and in representation of the minority for the New Progressive Party. Again we stated that the initial interpretation of the Constitution made by another branch of the government deserves deference, however, the norm that the final decision belongs to the courts must prevail.

**[8]** We acknowledged that the practice that the legislative bodies adopt their rules of internal government as corolary of the inherent power to control their proceedings is of historical popularity in our jurisdiction. Acta Foraker, 31 Stat. 77, Documentos Históricos, Sec. 3, L.P.R.A., Tome 1; Acta Jones, 39 Stat. 960, Documentos Históricos, Art. 32, L.P.R.A., Tomo 1; Art. III, Sec. 9, Const. E.L.A., L.P.R.A., Tome 1. However, we clarified, that upon carrying out its duty to regulate, the Legislative Assembly and its commissions cannot ignore the constitutional limitations. Again, we emphasized the need for the courts to act prudently and with deference to clarify the outlines of the Constitution and facilitate and to facilitate the resolution of the differences that arose upon questions of the scope of the constitutional powers of any **\*518** of the branches of the Government. *Silva v. Hernández Agosto*, supra, page 57.

In summary, regarding the political question doctrine, and to answer the questions that we previously presented about if Art. III of the Constitution of the Commonwealth of Puerto Rico, L.P.R.A., Tome 1, prohibits the review of Rule XXXIII of the Regulation of the House of Representatives, we conclude herein that: (1) although the political question doctrine, in the federal jurisdiction and in ours, has generated certain confusion and polemic,[36] that has not been ruled out by neither the federal Supreme Court or in this Forum; (2) when there is an express delegation of

the matter in controversy to another branch of government, this shall be subject to judicial review only if individual constitutional rights are affected; (3) in consonance with the prudence and care that must exist when reviewing matter assigned by the Constitution to another branch of government, the judicial review shall be admissible only if there are appropriate judicial criterions to solve the controversy; (4) when adopting its rules of government and internal procedure, the Legislative Assembly cannot ignore the limitations and constitutional provisions, and (5) in case that the constitutional rights affected are those of the legislators, as a general rule, the Legislative Rules shall only be reviewable if they cannot obtain a remedy from their legislator colleagues through the approval, reversal or amendment of a law or regulation.

## V

**[9]** It is known that our Constitution, it its Art. III, *supra*, has the objective of the formation of a democratic and representative Government **\*519**, delegates the Legislative Power in a bicameral Assembly. Both Bodies, the Senate and House of Representatives, as parliamentary forums, have the objective of formulating laws, investigating and supervising the Government, debating matters of interest and keeping the People informed about the status of the public matters. *Romero Barceló v. Hernández Agosto*, 115 D.P.R. 368, 379 (1984).

**[10]** To facilitate the legislative duty and pursuant to a practice that has been done for centuries,[37] the members of the Constituent Assembly expressly incorporated the faculty of the Legislative Houses of Puerto Rico to adopt rules of the legislative bodies for their proceedings and internal government. Art. III, Sec. 9, Const. E.L.A., *supra; Silva v. Hernández Agosto*, supra, pages 5556.

Our Constitution does not have detailed provisions about the legislative procedure. Art. III, Sec. 17, *supra*, only offers some general guidelines. It is in the House regulations that the legislative **\*520** process is detailed;[38] being these their instruments and fundamental tools of work. In fact, it is necessary that every deliberative body is governed by rules of procedure so the will of the majority is determined in an orderly fashion.[39]

**[11–12]** Now, the regulations of the Legislative Houses are of limited validity. They are law for the Legislative Assembly that approves them. When an assembly begins a new regulation is approved or the one that was previously in effect is ratified.[40] The sources of the legislative process are the constitutional or statutory provisions, the rules


 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)
136 D.P.R. 497

CERTIFIED TRANSLATION

adopted by the Legislative Assembly, the judicial decisions, the sources of parliamentary law, the customs, the use, the orders or the resolutions of the Assembly. Each legislative body is in optimum position to adopt the rules of procedure, as to apply or interpret them.[41] Such rules cannot be unaware of the constitutional provisions. The Legislature has absolute discretion to decide in which way it carries out its procedures and complies with the constitutional requirements.[42]

[13] As a general rule, the Courts shall not pass judgment about the interpretations or the application of the parliamentary practices of a legislative body with the necessary authority to create its rule of internal government, as long as such rules are within the scope of its *521 powers. If the rule adopted by the Legislature is not contrary to the constitutional provisions or does not violate fundamental individual rights or there exists reasonable relationship between the method and the result it seeks, a court should not decide if other rule is more appropriate or just. The interpretation that a body makes of its rules of procedure must be accepted by a court unless that it is clearly erroneous. P. Mason, *Manual of Legislative Procedures for Legislative and other Governmental Bodies*, California, California Legislature, 1962, page. 72. It should be noted that, because of their very nature, the Legislative Rules, upon establishing the action system to make public policy decisions, are a source of possible conflicts between the members of the Assembly.

[14] As to the interpretation of the Regulation of the House of Representatives, Rule XLII(2), *supra*, establishes that when matters arise that *were unforeseen* by such regulations, the provisions of the Manual of Parliamentary Practice of Jefferson shall be applied,[43] with the interpretation of the appropriate rule that has been given to it by the House of Representatives of the United States.

[15] At the same time, Jefferson's Manual, *op. cit.*, and the Regulations of the legislative bodies of Puerto Rico and the United States Congress are inspired in the rules of parliamentary law.[44] The fundamental principles *522 of the parliamentary practice are: (1) facilitate the work of the assemblies and promote the cooperation and the harmony between those that participate in them; (2) procure the equality of rights, privileges and obligations of the members; (3) determine with clarity the will of the majority; (4) protect the rights of the minority; (5) promote the free and complete discussion of every proposition presented to the assembly; (6) explain the meaning and effect of the matters presented for voting, and (7) preserve the justice and good faith in the assemblies. A.F. Sturgis,

*Standard Code of Parliamentary Procedure*, 2da ed., Nueva York, McGraw-Hill, 1966, pages 711. Many of the rules of parliamentary procedures not only protect the minorities from unfair practices of the majority but they want to avoid, also, the actions or tactics of obstruction from the minorities. Also they are necessary to avoid confusions, choosing a course of action when several can be followed. Mason, *op. cit.*, page 30. On the other hand, the application of parliamentary law varies in the different legislative bodies, as it takes into consideration the specific needs of those organisms. Id., pages 5960.

[16] Regarding Rule XXXIII of the House of Representatives, *supra*, as to votes, it like other procedures of the Body has its origin in the rules of parliamentary procedure. In those procedures the voting is not mandatory, unless a special rule to the contrary exists. R.B. Bothwell, *Manual de Procedimientos Parlamentarios*, 2nd ed. rev., Río Piedras, Ed. U.P.R., 1962, page 62. Also, abstention is recommended "when the matter before the assembly is referred or affects [the member of the assembly] exclusively". Id., page 66. The parliamentary law forbids the voting when it is regarding authorizing *523 a financial transaction with a member of the Body or when charges are formulated or announced against him/her. Íd., page 66.

[17] The commentators of parliamentary law have stated that even though a member of a governmental body can abstain from voting, they have a strong obligation to do it in all motions because the process of making decisions is one of the [primary] duties of the position for which they were elected or appointed. A public officer must abstain from voting only if there is a conflict of interest and he/she cannot vote if there exists a direct personal or economic interest. Sturgis, *op. cit.*, page 241. According to H.M. Robert, *Reglas de Orden (Revisadas) de Robert*, 1st ed. Spanish, México, Ed. UTEHA, 1964, page 140, "no one can vote on a question in which he/she has direct, personal or monetary interest"; "it is the duty of every member, that gives his/her opinion about a matter, to state it through his/her vote", but he/she cannot be forced to do it. Id., page 141.[45]

[18] In sum, as a general rule, the legislative bodies make mandatory the attendance of their members and require them to vote about matters in discussion. Under their power to create rules of government and internal procedures, such bodies have the faculty to excuse their members from voting. The practice of the state legislatures is to excuse their members from voting when they have a personal interest in the matter taken to vote or for other valid reasons. As a general rule, it is *524 not questioned if a member of the body does not vote, but when a certain



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)
136 D.P.R. 497

CERTIFIED TRANSLATION

number of votes or the vote of certain proportion of the number of members elect is required, a member of the body can insist that the other vote or to explain his/her reasons to abstain and let it be the body the one that decides if he/she is excused or not. Mason, *op. cit.*, pages 367368. About this rule and its application it is said that "it provides no means, any more than the common parliamentary law, of enforcing its own execution, and, notwithstanding the rule, members may vote or not, as they please". L.S. Cushing, *Elements of the Law and Practice of Legislative Assemblies in the United States of America*, Boston, Ed. Little, Brown and Co., 1856, pág. 693.

[19] Even so, because it is considered that voting is a duty and responsibility of every member of a deliberative body, when one of them insists that the abstention is reflected in the official record this request shall only be accepted if there are no objections to it.[46]

In that regard, Jefferson's Manual states that "every member must give his vote the one way or the other ... as it is not permitted to anyone to withdraw who is in the house when the question is put".[47] The Regulation of the Senate of the United States establishes in its Rule XII[48] that each Senator "shall, without debate, declare his assent or dissent to the question, unless excused by the Senate". When one **\*525** Senator decides to abstain he/she must explain his/her reasons and the Body decides if he/she is excused or not from voting. A Senator can abstain from voting when he/she thinks there is a conflict of interest.[49]

The Regulation of the House of Representatives of the Congress of the United States in Rule VIII provides that all the members "shall vote on each question put, unless he has a direct personal or pecuniary interest in the event of such question".[50] **\*526**

In Rule XXXVIII of the Regulation of the Senate of Puerto Rico, *supra*, it is also specified that the senators present at the time of carrying out a vote shall be obligated to participate issuing their vote, unless they have a direct personal interest in the matter submitted. They may abstain from voting with the consent of the majority when: (1) they have reasons of high moral importance; (2) they are not prepared to issue their vote for lack of knowledge of the matter which is being voted one, or (3) for any reason that the Senator deems appropriate and the Body so requests and he/she authorizes it. If the Body decides no, the Senator shall be in the obligation to issue his/her vote.

The rules about abstention of Representatives and Senators are not of recent adoption in the legislative bodies of the Commonwealth. For example, Rule XIII(5) of the Regulation of the House of Representatives of 1924, about votes provided: "No Representative may vote if he/she was not present in the Room when the President submitted the

matter for voting. The Representative that is present when the matter is submitted for voting is obligated to vote, unless he/she had the duty or right to abstain, or the House excused him/her for reasons of high moral importance. This request shall be decided by the House without debate." The same rule is in the Regulations of 1947 and 1951. In 1955 the rule of abstention in the votes of the proposed laws was similar to the current one.[51] **\*527**

Also, the Regulation of the Constituent Convention included a similar rule.[52] In its report the Commission of Rules and Regulations of the Constituent recommended that its Rule XIII state:

"Every delegate is obligated to issue his/her vote in the matters submitted for voting and when called to vote announces his/her right to abstain from doing so, he/she will be required by the Presidency to briefly state his/her reasons for not voting, and once he/she has done so the President shall submit the question to the Convention in the following way: 'After hearing the reasons stated by Mr./s Delegate, is he/she excused from voting?' The question shall be decided without debate after the list is passed for voting and before announcing its result." 1 Diary of Sessions of the Constituent Convention 236 (1951).

The Commission stated that every delegate had the obligation to vote and that it was the Constituent Convention that had to decide if the delegate could abstain or not. The Constituent Convention upon approving the rule limiting the right to abstain ruled out the arguments of those that argued for the right of the legislator to abstain without need for the consent of the majority.[53] **\*528**

The question regarding what is the effect, if any, of the abstention of a representative in the voting on a matter of public interest was expressly brought by the delegate Negrón-López and discussed during the debate that preceded the approval of the Rule about the abstention of the delegates in the Constituent Convention.[54] Let's examine what effect, if any, the abstentions in the approval of measures in the House of Representatives of Puerto Rico can have.

[20] Per constitutional mandate, the quorum of the House of Representatives is constituted with a majority of the total number of the members that compose it. Art. IV, Sec. 12, Const. E.L.A., L.P.R.A., Tome 1; Rule VII(13) of the Regulation of the House of Representatives, *supra*. Also, per constitutional mandate, a majority of the total number of the members that compose the body is required **\*529** to approve a proposed law. Art. III, Sec. 19, Const. E.L.A., L.P.R.A., Tome 1; Rule XV(14) of the Regulation of the



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)
136 D.P.R. 497

CERTIFIED TRANSLATION

House of Representatives, *supra*. That is, that if the total number of members of the House is fifty-one (51) representatives, except when such composition is increased because of the provisions of the representation of the minority parties, the quorum of the Body is constituted with twenty-six representatives. Also, the votes of twenty-six (26) representatives are required to achieve an absolute majority for the approval of a proposed law, joint or concurrent order. If the practice to abstain in the votes is generalized, the legislative process could be affected, thus obstructing the fluidity in the process of the work of our Government and the progress of public matters. In our system "the parliamentary majority has the inevitable duty to comply with the mandate expressed by the people" and the minorities have the special obligation to carry out their supervising responsibility without obstructing the legislative operation". *Silva v. Hernández Agosto*, supra, page 70. So, if the Constitution of the Commonwealth of Puerto Rico requires that the quorum of the House is constituted with a majority of the total number of the members that compose it and orders an absolute majority for the approval of the laws, the participation of the representatives in every legislative debate has more relevance.[55]

## VI

The members of the Legislative Assembly, elected by the direct vote of the citizens, are the ones responsible for exercising the Legislative Power created by our Constitution. **530** Art. III, Sec. 1, Const. E.L.A., L.P.R.A., Tome 1. Through the representation the citizen is given participation and control about public matters, pursuant with the democratic system that is fundamental for the life of the Puerto Rican community. The system of representation for the protection of the democratic rights of our People is so important that the Constitution of the Commonwealth of Puerto Rico establishes a procedure to guarantee the additional representation to the parties in minority in the Legislative Assembly. Art. III, Sec. 7, Const. E.L.A., L.P.R.A., Tome 1.

About the rights and faculties of the legislators, the Constitution is limited to establishing certain requirements about education, citizenship, residence and age, Art. III, Secs. 56, Const. E.L.A., L.P.R.A., Tome 1; the terms of the positions of Senator y Representative, Art. III, Sec. 8, Const. E.L.A., L.P.R.A., Tome 1; grants parliamentary immunity to the members of the Legislative Assembly, Art. III, Sec. 14, Const. E.L.A., L.P.R.A., Tome 1, and states

the incompatibility of the position of legislator with any other public position, Art. III, Sec. 15, Const. E.L.A., L.P.R.A., Tome 1. The legislators have the responsibility of putting in effect the duties of the legislative process such as formulation of the laws, debate, the investigation of matters of public interest and keeping the people informed about the status of the public thing. *Romero Barceló v. Hernández Agosto*, supra, page 379.

**[21]** Regarding the legislator's vote, the Constitution states that "[t]he Houses shall have books of deed where they will state what regards the process of the proposals and the votes issued in favor and against them". Art. III, Sec. 17, Const. E.L.A., *supra*, ed. 1982, page 344. Also, it states that the proposed laws must be approved by a total majority of the members of each house and that "[e]very final approval or reconsideration of **531** a proposal shall be voted by list". Art. III, Sec. 19, Const. E.L.A., *supra*, ed. 1982, page 346.[56]

**[22]** In summary, the legislators are who give life to the mechanism of democratic representation created by the Constitution so the will of our People is the source of public power.[57] They have the burden of the duties of the Legislative Assembly, branch that shapes the laws that regulate the destiny of the People. A constitutional requirement is that the laws are approved by the majority of the members of the total number that compose **532** the Legislative Assembly, the duty of the representatives and senators to participate in the legislative process is of vital importance. The Constitution of the Commonwealth does not create rights of constitutional rank in favor of the abstention in the votes of the proposed laws. The abstention in the legislative votes is a matter regulated by the parliamentary law and the internal rules of every assembly.

## VII

Let us then, analyze if the facts before us reflect whether upon exercising its faculty to regulate the internal procedures of the House of Representatives, such body violated any constitutional right of the plaintiff representatives, or if the representatives can obtain remedies in the Legislative Branch for this situation.

After the doctrinal and historical background provided, we must conclude that Rule XXXIII of the Regulation of the House of Representatives, *supra*, is within the constitutional parameters of the legislative duties to create norms of procedure and internal government of the Body. Although our House of Representatives, contrary to how in

WESTLAW    © 2019 Thomson Reuters. No claim to original U.S. Government Works.    8



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

occasions the House of Representatives of the American Congress has done, has decided to put such rule in effect, by doing so, the legislative prerogatives of the plaintiffs or their right to free speech were not affected.[58] They participated in the debate prior to the vote about the resolutions in question. Despite that they were not given authorization to abstain and that their abstention was not registered in the Deed Book, their **533** arguments and statements are reflected in the Diary of Sessions. They were also not obligated to vote, but the abstention was not included in the deed book, where according to the constitutional mandate the votes in favor or against are included.

[23] Therefore, we do not have to decide if the rule in question is or not wise or archaic; if it must be put in effect or not by the legislative body; or if pursuant to the democratic spirit of our system of government it must be amended or not.[59] The wisdom, efficiency or justice of the parliamentary rules of our Houses are not a matter to be judged by the Court if there is not a constitutional infraction. For a legislative body to efficiently function, the rules of the Body must be obeyed. The mandate established by the Regulation must prevail so that confusions and multiple disagreements are avoided.

The previous analysis corresponds to the legislators. The legislative regulations are of dynamic nature. The content of the rules may be adjusted to the realities of the legislative body. Through legislative debate, as the delegates of the

Constituent Convention did, the plaintiffs appellants can direct their efforts and arguments to change a rule that they consider foreign to the Puerto Rican reality. Even if we take into consideration the facts after the complaint, the arguments of the appellant representatives have already marked the spirit of some of their legislator colleagues.

On the other hand, we cannot become arbitrators of all the internal disputes that the legislators have about **534** the interpretation and application of the legislative rules regarding the purely parliamentary procedures. However, we are not abdicating our faculty of being the maximum interpreters of the legislative actions. We exercise that faculty when the actions of other branches of government present clear constitutionality problems and not mere procedural or interpretative disputes. We cannot transfer to the judicial forum the internal controversies of the legislative branches that are the product of discrepancies between legislators that arose through the normal and usual process of the legislative debate.[60]

For all the foregoing, *judgement shall be entered confirming the judgment issued by the court of first instance.*

Associate Judge Mr. Fuster Berlingeri did not intervene.

Footnotes

[1]   At the time that the complaint was filed in this case, the plaintiffs appellants, Counsels David Noriega-Rodríguez and Hiram Meléndez-Rivera, were the speakers, in property and alternate respectively, of the Puerto Rican Independent Party (hereinafter P.I.P. for its Spanish acronym) in the House of Representatives. Currently, the Hon. David Noriega-Rodríguez continues occupying the position in the House of Representatives and is the Speaker of the P.I.P. in that legislative body. Not so Counsel Hiram Meléndez-Rivera.

[2]   Joint Resolutions of the House Nos. 1538, 1546, 1547, 1549, 1552, 1556, 1560, 1565, 1572, 1578, 1589, 1590, 1592, 1625 of March 5,1990. Joint Resolutions of the Senate Nos. 803, 994, 1019, 1023, 1024, 1025, 1029, 1030, 1040, 1050, 1052 of March 5, 1990.

[3]   Rule XXXIII, items 5 and 6 of the Regulation of the house of Representatives, 1982, pages. 7273, provide:
"5. Every representative shall be obligated to issue his/her vote in the matters submitted to vote and if he/she has direct personal interest in them he/she must abstain from voting. He /she may abstain with the majority consent of the House, for reasons of high moral importance or when he/she is not prepared, for lack of knowledge of the matter in discussion to issue his/her vote.
"6. The House upon request of any Representative, shall decide without debate when a matter must be considered of high moral importance, once it is explained by the Representative."

[4]   The Superior Court, San Juan Part, entered judgment declaring Joint Resolutions No. 94 of the House of Representatives and No. 111 of the Senate of August 17, 1989 (known as the "barril de tocino") to be unconstitutional, as those similar approved in years before. The court of instance understood that the scheme for distribution of funds of those resolutions: (1) violates the principle of separation of powers, as it constitutes and undue interference of the legislative in the attributes and duties of the executive and



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodríguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

a tentative to usurp them, and (2) complicates the supervision of the use of public funds, promoting their misuse. The court issued a writ of permanent injunction against the Administrator of Municipal Services (A.S.M.) and ordered him to comply with the norms established in their decision about how they would draft future resolutions that public funds assigned. Recently, *Noriega v. Hernández Colón*, 135 D.P.R. 406 (1994), we confirmed such judgment.

[5]     In the verbal voting [the ones that are not by list] the Representatives that want to abstain do not need to request and obtain the authorization of the House. Rule XXXIII(6) of the Regulation of the House of Representatives, *supra.*

[6]     The division of the Body is used to verify the open voting when any member of the Assembly requests it or when the president has doubts about the result of a vote. R.B. Bothwell, *Manual de Procedimiento Parlamentario*, 2nd ed. rev., Río Piedras, Ed. U.P.R., 1962, pages 6364.
See Rule III(5) of the Regulation of the House of Representatives, 1982, page 4, about the division of the House:
"5. The President shall submit to the House the matters that do not require voting by list, that way: 'Those who want to vote yes shall say "yes" and those that want to vote no shall say "no". If the result of the vote is not certain or any Representative asked for the division of the House, it will provide to stand up, first, those that want to vote yes and then those that want to vote no."

[7]     In the Motion to Dismiss filed by defendants appellees it is stated that, after the first vote on the matter, the Representative Cepeda-García asked that the House of Representatives be divided regarding the motion requesting permission to abstain presented by plaintiff Noriega-Rodríguez. The latter expressed that the Presidency had already decided to approve his request. The Representative Santiago-García clarified that it was after the result of a verbal vote that it was requested that the House be divided; that the doubt as to how it was voted arose from the legislator that asked for the division of the Body, and therefore, such request was in order.

[8]     Rule XLII of the referenced regulation, page 79, provides that:
"1. This Regulation may not be suspended, modified or amended, but by motion to that effect presented in writing.
"Every motion to suspend, modify or amend this Regulation shall be referred to the Commission of Internal Affairs of the House, which shall render its report within the seventy-two (72) following hours, unless its President requests or obtains from the House a greater term to study and inform the proposed amendments. When the amendment is proposed by said Commission, it shall not be necessary to refer it to it again."

[9]     After the filing of the appellate petition before us, other events related to the case have. On one hand, on January 25, 1994 the plaintiffs-appellants filed a Motion in Aid of Jurisdiction. They alleged that Representative Noriega-Rodríguez, and other legislators requested authorization from the legislative body to abstain during the final voting process of the Concurrent Resolution No. 14 (substitute). Such petition was denied. Upon being called for voting by list the appearing party Representative Noriega-Rodríguez, he stated his abstention. The Current President of the House of Representatives, Hon. Zaida Hernández-Torres, ordered that the abstention be written as a vote against the legislative measure and filed a complaint against the here plaintiff appellant legislator. In the Complaint of January 12, 1994 various representatives "that despite being refused the permission to abstain [the defendants] upon being called to vote they verbalized for the record their abstention 'D' in violation of Rule XXXIII of the Regulation of the House of Representatives, *supra*. Representative Noriega-Rodríguez requested the stay of the proceedings before the Ethics Commission of the House of Representatives while the appeal was decided in this case and that we decree the obligation of the President of the House of Representatives and of the Secretary of the Body to acknowledge, count and register his abstention vote.
On the other hand, on January 26, 1994, another of those representatives, Hon. Alfonso López-Chaar, filed with this Court a Motion and Intervention Complaint in this case. We denied both motions.

[10]    2 L. Ed. 135 (1803).

[11]    Regarding the concept of "justiciability" in the federal jurisdiction, see: J.E. Nowak, R.D. Rotunda y J.N. Young, *Constitutional Law*, 3ra ed., Minneapolis, Ed. West Pub. Co., 1986, pages 55110; L.H. Tribe, *American Constitutional Law*, 2da ed., Nueva York, Ed. Foundation Press, 1988, pages 67155.

[12]    The general concepts of justiciability in the Puerto Rican Law are discussed in R. Serrano Geyls, *Derecho Constitucional de Estados Unidos y Puerto Rico*, San Juan, Ed. C. Abo. P.R., 1986, Vol. I, págs. 97205. Also, see, H.N. Padilla, *El poder judicial en Puerto Rico:*

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

*su estructura, funciones y limitaciones*, 50 Rev. Jur. U.P.R. 357, 401451 (1981).

[13] See: *El Vocero v. Junta de Planificación*, 121 D.P.R. 115 (1988); *Silva v. Hernández Agosto*, 118 D.P.R. 45 (1986); *Pan Ame. Comp. Corp. v. Data Gen. Corp.*, 112 D.P.R. 780 (1982); *Com. de la Mujer v. Srio. de Justicia*, 109 D.P.R. 715 (1980); *Santa Aponte v. Srio. del Senado*, 105 D.P.R. 750 (1977).

[14] *Noriega v. Hernández Colón*, supra; *Schmidt Monge v. Torres*, 115 D.P.R. 414 (1984); *Com. de la Mujer v. Srio. de Justicia*, supra; *Pérez v. Autoridad Fuentes Fluviales*, 87 D.P.R. 118 (1963); *E.L.A. v. Aguayo*, 80 D.P.R. 552 (1958).

[15] *Noriega v. Hernández Colón*, supra; *Hernández Torres v. Gobernador*, 129 D.P.R. 824 (1992); *Col. Ópticos de P.R. v. Vani Visual Center*, 124 D.P.R. 559 (1989); *Silva v. Hernández Agosto*, supra; *Hernández Agosto v. Romero Barceló*, 112 D.P.R. 407 (1982); *Fund. Arqueológica v. Depto. de la Vivienda*, 109 D.P.R. 387 (1980); *Com. de la Mujer v. Srio. de Justicia*, supra; *Salas Soler v. Srio. de Agricultura*, 102 D.P.R. 716 (1974).

[16] *Noriega v. Hernández Colón*, supra; *El Vocero v. Junta de Planificación*, supra; *Com. de la Mujer v. Srio. de Justicia*, supra; *Suárez Sánchez v. Tribunal Superior*, 92 D.P.R. 507 (1965); *Asoc. Guardias Penales v. Srio. de Justicia*, 87 D.P.R. 711 (1963).

[17] *Noriega v. Hernández Colón*, supra; *C.E.E. v. Depto. de Estado*, 134 D.P.R. 927 (1993); *Berberena v. Echegoyen*, 128 D.P.R. 864 (1991); *Asoc. de Periodistas v. González*, 127 D.P.R. 704 (1991); *Nogueras v. Hernández Colón*, 127 D.P.R. 638 (1991); *Noriega v. Gobernador*, 122 D.P.R. 650 (1988); *El Vocero v. Junta de Planificación*, supra; *Com. de la Mujer v. Srio. de Justicia*, supra; *Fund. Arqueológica v. Depto. de la Vivienda*, supra; *E.L.A. v. Aguayo*, supra.

[18] *Noriega v. Hernández Colón*, supra; *Silva v. Hernández Agosto, supra*; *Santa Aponte v. Srio. del Senado*, supra; *Estevez v. Srio. Cám. de Representantes*, 110 D.P.R. 585 (1981); *P.S.P. v. E.L.A.*, 107 D.P.R. 590 (1978); *P.P.D. v. Ferré, Gobernador*, 98 D.P.R. 338 (1970).

[19] The facts in this case, there is no doubt, present a real and concrete case controversy, not hypothetical or abstract. On the other hand, despite the elections of 1992, the petition is not moot because: (1) plaintiff-appellant Noriega-Rodríguez was reelected and continues being the speaker of the P.I.P. in the House of Representatives; (2) the defendants have been substituted pursuant to what is provided in Rule 22.4 of the Rules of Civil Procedure, 32 L.P.R.A. Ap. III; (3) Rule XXXIII of the Regulation of the House of Representatives, *supra*, continues in effect, and (4) the situation is capable of being repeated (and has been repeated) with the plaintiff-appellant and with other legislators.

[20] The first case about the doctrine of political question in the federal jurisdiction was *Luther v. Borden et al.*, 48 U.S. 1 (1849). In that case, the Supreme Court determined that if actions of Congress or the President were within their constitutional authority and they did not violate the limits of such authority, they could not be questioned in a court. See: *Baker v. Carr*, 369 U.S. 186 (1962); *Powell v. McCormack*, 395 U.S. 486 (1969); Serrano Geyls, *op. cit.*, pages 679707 esc. 12.

[21] *Baker v. Carr*, supra, as cited in *Silva v. Hernández Agosto*, supra.

[22] For a discussion of possible analysis methods for the application of the political question doctrine, see: 1 *Treatise on Constitutional Law: Substance and Procedure* Sec. 2.16, pages. 275297 (2da ed. 1992); D.O. Bernstine, *The Political Question Doctrine: A Perspective on its Procedural Ramifications*, 31 U. Kan. L. Rev. 115 (1982); L. Henkin, *Is there a "Political Question" Doctrine?*, 85 Yale L.J. 597 (1976).

[23] S. Bach, *The Nature of Congressional Rules*, 5 J.L. & Pol. 725, 730731 (1989).

[24] The rule in question provided:
" '3. On the demand of any member, or at the suggestion of the Speaker, the names of members sufficient to make a quorum in the hall of the House who do not vote shall be noted by the clerk and recorded in the Journal and reported to the Speaker with the names of the members voting, and be counted and announced in determining the presence of a quorum to do business.' (Ho.Journal, 230, Feb. 14, 1890.)" cited in *United States v. Ballin*, 144 U.S. 1, 5 (1891).

[25] "It may not by its rules ignore constitutional restraints or violate fundamental rights, and there should be a reasonable relation

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.



Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

between the mode or method of proceeding established by the rule and the result which is sought to be attained." *United States v. Ballin*, supra, pág. 5.

[26]   Rule XXXVIII, in its items 3 and 4, provided:

" '3. When a nomination is confirmed or rejected, any Senator voting in the majority may move for a reconsideration on the same day on which the vote was taken, or on either of the next two days of actual executive session of the Senate; but if a notification of the confirmation or rejection of a nomination shall have been sent to the President before the expiration of the time within which a motion to reconsider may be made, the motion to reconsider shall be accompanied by a motion to request the President to return such notification to the Senate. Any motion to reconsider the vote on a nomination may be laid on the table without prejudice to the nomination, and shall be a final disposition of such motion.

"4. Nominations confirmed or rejected by the Senate shall not be returned by the Secretary to the President until the expiration of the time limited for making a motion to reconsider the same, or while a motion to reconsider is pending, unless otherwise ordered by the Senate.' " Cited in *United States v. Smith*, supra, pages 3031 (1932).

[27]   The Court explained:

"Congressional practice in the transaction of ordinary legislative business is of course none of our concern, ... The question is neither what rules Congress may establish for its own governance nor whether presumptions of continuity may protect the validity of its legislative conduct. ... The heart of this case is that by the charge that was given it the jury was allowed to assume that the conditions of competency were satisfied even though the basis in fact was not established ...

"...This not only seems to us contrary to the rules and practice of the Congress, but denies petitioner a fundamental right." *Christoffel v. United States*, 338 U.S. 84, 8890 (1949).

[28]   The rule provided:

" 'IV—Executive and Public Hearings:

"A—Executive:

" '(1) If a majority of the Committee or Subcommittee, duly appointed as provided by the rules of the House of Representatives, believes that the interrogation of a witness in a public hearing might endanger national security or unjustly injure his reputation, or the reputation of other individuals, the Committee shall interrogate such witness in an Executive Session for the purpose of determining the necessity or advisability of conducting such interrogation thereafter in a public hearing.

"B—Public Hearings:

(1) All other hearings shall be public.' " (Emphasis omitted) Cited en *Yellin v. United States*, 374 U.S. 109, 114-115 (1963).

[29]   Recently, in *Nixon v. United States*, 506 U.S. 224 (1993), the federal Supreme Court reaffirmed the political question doctrine as one of the auto-limitation principles. The Supreme Court, citing *Baker v.. Carr*, supra, remembered that a controversy is not justiciable for involving a political question when "there is a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it". In that case, the Court stated, the constitutional text in controversy must be interpreted to determine, if in effect, and in what measure, the Constitution has textually delegated the controverted duty. *Nixon v. United States*, supra, page 8. The Court reasoned, also, that the lack of a definitive action and the difficulty of creating an adequate remedy advised the auto-limitation.´Id., page 13. Lastly, it stated that the courts possess the power to review actions, both of the Legislative and Executive Branch, when they violate the limits of the clauses of the Constitution.´Id., page 14.

[30]   See: G. Van Tatenhove, *A Question of Power: Judicial Review of Congressional Rules of Procedure*, 76 Ky. L.J. 597, 614615 (19871982); M.B. Miller, *The Justiciability of Legislative Rules and the "Political" Question Doctrine*, 78 Calif. L. Rev. 1341 (1990).

[31]   For example: *Vander Jagt v. O'Neill*, 699 F.2d 1166 (Cir. D.C.1983), *cert.* denied, 464 U.S. 823 (1983) ("This circuit has previously expressed its reluctance to review congressional operating rules, though it has never denied its power to do so"); *Nixon v. United States*, 938 F.2d 239 (Cir. D.C. 1991), *conf.*, 506 U.S. 224 (1993); *Gregg v. Barrett*, 771 F.2d 539 (Cir. D.C. 1985). *Metzenbaum v. Federal Energy Regulatory Com'n*, 675 F.2d 1282, 1287 (Cir. D.C. 1982) ("To decide [in favor of intervention] would subject congressional enactments to the threat of judicial invalidation on each occasion of dispute over the content or effect or a House or Senate rule."); *United States ex rel. Joseph v. Cannon*, 642 F.2d 1373, 1379 (Cir. D.C. 1981) ("[S]o-called political questions are denied judicial scrutiny, not only because they invite courts to intrude the province of coordinate branches of government, but also because courts are fundamentally under-equipped to formulate national policies or develop standards of conduct for matters



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

not legal in nature."), *cert.* denied, 455 U.S. 999 (1982); *Exxon Corp. v. F.T.C.*, 589 F.2d 582, 590 (Cir. D.C. 1978) ("Although the courts will intervene to protect constitutional rights from infringement by Congress, including its committees and members... where constitutional rights are not violated, there is no warrant for the judiciary to interfere with the internal procedures of Congress." (citations omitted), *cert.* denied, 441 U.S. 943 (1979); *Harrington v. Bush*, 553 F.2d 190, 214 (Cir. D.C. 1977) ("In deference to the fundamental constitutional principle of separation of powers, the judiciary must take special care to avoid intruding into a constitutionally delineated prerogative of the Legislative Branch."); *Consumers U. v. Periodical Corr. Ass'n*, 515 F.2d 1341, 1351 (Cir. D.C. 1975) ("[This case is] not justiciable by reason of the textually demonstrable commitment of such rules to the legislative branch of government."), *cert.* denied, 423 U.S. 1051 (1976).

[32]   See Van Tantenhove, *supra*, esc. 29, pages 597 and 619622.

[33]   For example, *Vander Jagt v. O'Neill*, supra; *Gregg v. Barrett*, supra; *Consumers Union of U.S., Inc. v. Periodical Corresp. Ass.'n*, 365 F. Supp. 18 (D.C. 1973).

[34]   The United States Supreme Court has declined to throw out the political question doctrine. *Nixon v. United States*, supra. See: *Gilligan v. Morgan*, 413 U.S. 1 (1973); *Roudebush v. Hartke*, 405 U.S. 15, 19 (1972); *Powell v. McCormack*, supra.

[35]   See, for example: *Nogueras v. Hernández Colón*, supra; *Silva v. Hernández Agosto*, supra; *Hernández Agosto v. Romero Barceló*, supra; *Peña Clos v. Cartagena Ortiz*, 114 D.P.R. 576 (1983); *Santa Aponte v. Srio. del Senado*, supra.

[36]   As to this, see: Tribe, *op. cit.*, pages 96107 esc. 11; Henkin, *supra*, esc. 22. Also see the majority and dissenting opinions in *Rexach Benítez v. Gobernador*, 119 D.P.R. 521 (1987); *Silva v. Hernández Agosto*, supra; *Santa Aponte v. Srio. del Senado*, supra; *P.P.D. v. Ferré, Gobernador*, supra.

[37]   Locally, the Acta Foraker, 31 Stat. 77, Documentos Históricos, Sec. 3, L.P.R.A., Tome 1, y el Acta Jones, 39 Stat. 960, Documentos Históricos, Sec. 32, L.P.R.A., Tome 1, invested the legislative institutions created by them with the authority to regulate their internal procedures. *Silva v. Hernández Agosto*, supra; *De Diego et al. v. La Cámara, etc.*, 5 D.P.R. 114 (1904).
Federally, The United States Constitution in its Art. I, Sec. 5, cl. 2, L.P.R.A., Tome 1, provides for each House of Congress to determine the rules of their procedures. According to James Madison the Constituent Convention adopted that clause without discussion. J.E. Castello, *The Limits of Popular Sovereignty*, 74 Cal. L.R. 491, 530 (1986). Also, in all the constitutions of the states of the nation, except in the ones of North Carolina and Georgia, it is established that the Legislature shall create the rules of its procedures.
Regarding the British parliamentary tradition, W. Balckstone and other historians suggest that the procedural autonomy of the House of Commons dates before the 18th Century. Castello, *supra*.
Also, in twenty-four (24) countries (including Austria, Japan, Senegal the Old Soviet Union) the basic rules of the Parliament are established in the Constitution and other laws, while the rules of procedures are adopted by their own parliaments. In the other countries the legislatures establish their own rules of procedure. *Parliaments of the World*, 2da ed., Gran Bretaña, Ed. InterParliamentary Union, 1986, Vol. 1, págs. 34.

[38]   As to this, see C. Ramos de Santiago, *El Gobierno de Puerto Rico*, 2da ed., Río Piedras, Ed. Universitaria, 1970, pág. 591.

[39]   N. Rigual, *El poder legislativo de Puerto Rico*, Río Piedras, Ed. U.P.R., 1961, page 72; P. Mason, *Manual of Legislative Procedures for Legislative and other Governmental Bodies*, California, California Legislature, 1962, pg. 29.

[40]   See: Rule XLII of the Regulation of the House of Representatives of Puerto Rico, *supra*; Rules 5.4 y 48.1 of the Regulation of the Senate of Puerto Rico, 1977. Also, see, Mason, *op. cit.*, page 42 esc. 38.

[41]   Van Tantenhove, *supra*, pages 628629 esc. 29.

[42]   About the nature of the legislative rules, specifically those of the American Congress, see: Bach, *supra*, esc. 23; Mason, *op. cit.*, pages 3142 esc. 38.

[43]   The Manual of Parliamentary Practice by Jefferson in *Instrumentos Parlamentarios*, Puerto Rico, House of Representatives, 1976,


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

CERTIFIED TRANSLATION

was written by Thomas Jefferson when he occupied the Presidency of the Senate as Vice-president of the Nation between 1797and 1801, using as a source the English parliamentary law. The Regulation of the House of Representatives of the Congress of the United States also provides that the principles of the manual shall govern the House in all the cases that are applicable and that are compatible with the rules and permanent orders of the House of Representatives.

[44] The first system ordered of the rules of procedure can be credited to King Edgardo of England that in 959 instituted a system to resolve the differences and make decisions in an orderly and democratic way. The American colonists took the parliamentary procedure to the colonies' legislatures. H.E. Hellman, *Parliamentary Procedure*, Nueva York, Ed. MacMillan, 1966, page 57. After seven (7) centuries of continued development, the parliamentary procedure has been diffused up to the point of reaching universal acceptance. Bothwell, *op. cit.*, page 1 esc. 6.

[45] H.M. Robert, *Reglas de Orden (Revisadas) de Robert*, translation to Spanish by Carlos Palomar, 1st ed. in Spanish, México, Ed. UTEHA, 1964. Also, see: G. Demeter, *Demeter's Manual of Parliamentary Law and Procedure*, Boston, Ed. Bostonia Press, 1961, page 41 ("It is the duty of every member to vote on every question before the house, on the theory that he should be willing to participate in the responsibility of the decision. But no one can be compelled to vote, although in rare instances a fine is assessed."), y L.S. Cushing, *Manual for Deliberative Assemblies*, Philadelphia, Ed. McKay Co., 1925, page 198 ("It is a general rule that every member who is in the assembly room at the time when the question is stated has not only the right but it is bound to vote").

[46] "Sometimes a member will insist that his abstention be officially recorded. He wants the record to show that he did not vote on the motion under consideration. While some people think this is making too much of the privilege of not voting, organizations usually oblige such requests, 'if there are no objections' by asking the secretary to record the names who abstain from voting. If this practice becomes a problem by delaying unnecessarily the taking of votes, the organization should formulate a policy on recording abstentions and incorporate it into the bylaws." R.E. Keesey, *Modern Parliamentary Procedure*, Boston, Ed. Houghton Mifflin Co., 1974, page 132.

[47] *Constitution, Jefferson's Manual and Rules of the House of Representatives of the United States*, H.R. Doc. No. 101256, 101st Cong., 2da Sess., Sec. 505 (1991).

[48] In Canada there is a similar rule. See J.G. Bourinet, *Parliamentary Procedure and Practice in the Dominion of Canada*, New Jersey, Ed. Ruthan Reprints, 1971.

[49] Rule XII of the Senate of the United States about voting procedures states:
"1. When the yeas and nays are ordered, the names of Senators shall be called alphabetically; and each Senator shall, without debate, declare his assent or dissent to the question, unless excused by the Senate; and no Senator shall be permitted to vote after the decision shall have been announced by the Presiding Officer, but may for sufficient reasons, with unanimous consent, change or withdraw his vote. No motion to suspend this rule shall be in order, nor shall the Presiding Officer entertain any request to suspend it by unanimous consent.
"2. When a Senator declines to vote on call of his name, he shall be required to assign his reasons therefor, and having assigned them, the Presiding Officer shall submit the question to the Senate: 'Shall the Senator for the reasons assigned by him, be excused from voting?' which shall be decided without debate; and these proceedings shall be had after the rollcall and before the result is announced; and any further proceedings in reference thereto shall be after such announcement.
"3. A Member, notwithstanding any other provisions of this rule, may decline to vote, in committee or on the floor, on any matter when he believes that his voting on such a matter would be a conflict of interest." L.R. Slack, *Senate Manual*, Washington, U.S. Government Printing Of., 1988, page 10.

[50] *House Rules and Manual*, supra.
About the interpretations of this law it has been said:
"It has been found impracticable to enforce the provision requiring every Member to vote ... and such question even if entertained, may not interrupt a pending roll call vote ... and the weight of authority also favors the idea that there is no authority in the House to deprive a Member of the right to vote. ... In one or two early instances the Speaker has decided that because of personal interest, a Member should not vote. ... but on all other occasions and in the later practice the Speaker has held that the Member himself and not the Chair should determine this question ... and the Speaker has denied his own power to deprive a Member of the constitutional right to vote. ... Members may not vote in the House by proxy. ... Instance where a Member submitted his

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

# CERTIFIED TRANSLATION

resignation from a committee on grounds of disqualifying personal interest....

"The House has frequently excused Members from voting in cases of personal interest....

"It is a principle of 'immemorial observance' that a Member should withdraw when a question concerning himself arises ... but it has been held that the disqualifying interest must be such as affects the Member directly ... and not as one of a class. ... In a case where question affected the titles of several Members to their seats, each refrained from voting in his own case, but did vote on the identical cases of his associates. ... And while a Member should not vote on the direct questions affecting himself, he has sometimes voted on incidental questions...." *House Rules and Manual*, supra, page 343.

[51] Rule XXXIII of the Regulation of the House of Representatives, 1955, page 53 provided:

nd  "5. Every Representative shall be obligated to issue their vote in the matters submitted for voting, and if he/she has direct personal interest he/she must abstain from voting; and may abstain with the consent of the House for reasons of high moral importance or when he/she is not prepared, for lack of knowledge of the matter in discussion to issue his/her vote.

"6. The House upon request of any representative shall decide without debate when a matter must be considered of high moral importance."

This rule is included in the Regulations of the House of Representatives of 1961, 1962, 1967, 1969, 1970, 1973, 1975 and 1982, and in the Regulations of the Senate of 1955, 1959, 1962, 1966, 1968, 1969, 1970, 1974, 1977, 1981, 1984, 1985 and 1986. These were the only regulations that we found available to examine.

[52] Rule XIII of the Regulation of the Consituent Convention provided:

"1. Every delegate shall be obligated to issue their vote in the matters submitted for voting and if he/she has direct personal interest in them he/she must abstain from voting; and may abstain with the consent of the Convention, in matters of high moral importance or when he/she is not prepared, for lack of knowledge of the matter in discussion, to issue his/her vote.

"2. The Convention, upon request of any delegate shall decide without debate when a matter must be considered of high moral importance." 1 Diary of Sessions of the Constituent Convention 102103 (1951).

[53] The delegate Rivera Colón argued against that each delegate was obligated to vote; in case that he wanted to abstain from doing so that he had to explain his reasons, and that the Convention had the faculty to make the final decision about whether or not it allowed the abstention. A debate ensued and the constituents considered the points in favor and against the rule. Diary of Sessions, supra, pages 237251. The rule was finally amended to add that "[i]n case that the delegate does not state his/her reasons to abstain from voting, or in case that he/she refuses to vote despite the agreement of the Convention, the vote of such delegate shall be counted as issued affirmatively". Id., pages 250251.

[54] "Mr. NEGRÓN LÓPEZ: The question that I want to ask the Delegate...what would happen if the situation that the delegate Mr. Brunet refers to regarding a delegate that cannot form an opinion because he does not have enough information...what would happen if that includes all the delegates of the Constituent Convention? What would happen to the Constituent convention? What would be the effect and up until what point would we be complying with our duty?

"Mr. ORTIZ STELLA: Agreements could not be made. I stated the situation, that is repeated various times in the regulation, in which an absolute majority is needed, therefore 47 ...

"Mr. ORTIZ STELLA: ... There is a quorum of 50 persons that are present in the Convention. An absolute majority is needed to make certain agreements, pursuant to the regulation. Absolute majority is 47. If four abstain, agreements cannot be made. If that happens, then the Assembly could not make agreements, and I think it would not be complying with its duty. We come here to make agreements, to vote, to make decisions. We have a grave and serious responsibility. *It is very dangerous leaving the abstention of the vote to the criteria and whim of the delegate. I think that two elements must intervene: the delegate and the Convention, but not leave it to the sovereign and free will of the delegate.* He/she cannot abstain. That is very dangerous, colleagues.

"Mr. BRUNET: Doesn't our colleague think that if what delegate Negrón happened, regarding that a majority of the Convention abstains because they do not have the elements to vote, doesn't our colleague think that what would be adequate, in that situation, is to open the question to debate to dissipate doubts so that the delegates have the opportunity to clearly understand the question, and then decide to vote.

"Mr. ORTIZ STELLA: No, colleague, don't think like that, because when a voting comes is because the matter has been in discussion. (Emphasis provided.) Diary of Sessions, *supra*, pages 241242.

[55] See Mason, *op. cit.*, page 350 esc. 39.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Noriega Rodriguez v. Jarabo, 1994 JTS 96 (1994)

136 D.P.R. 497

# CERTIFIED TRANSLATION

56    In the report of the Commission of the Legislative Branch to the Constituent Convention it is explained:

"The demand that the proposed laws are approved by a 'majority of the members that compose each one of the houses' is indispensable in a political system of representative character. The voting by list is a means to fix individual responsibility for the approval or rejection of a measure.

"Book of Deeds: The book of deeds of the houses has double importance. It serves to perpetuate the procedures and thus take them to general knowledge and at the same time constitute the evidence of greater weight before the courts to determine if the Legislative Assembly has complied with the constitutional requirements about procedure. The provision that we recommend demands that what regards the process of proposals and voting be written in the book. Afterwards article 15 demands that the reasons the Governor has to veto a proposal be written in the deed.

"It is also recommended, to constitutionally fix the legislative obligation of giving publicity to its procedures, although the way is left to ordinary legislation. An adequate publicity of the legislative procedures, especially of the debates, would notably increase the number of persons interested in the problems of government and would contribute to a better public supervision of the actions of legislators. The Legislative Assembly, also, would not have to exclusively depend in the newspapers to give adequate publicity to its activities." 4 Diary of Sessions, *supra*, page 2585.

57    The legislators have to respond to those they represent for the work done in the legislative activity. However, that responsibility is not a passport to file judicial actions as a means to defend the interests of those they represent. The members of the Legislative Assembly have standing to file a judicial action when their prerogatives, duties and constitutional rights are violated, but they cannot sue in representation of their voters or public interest. *Nogueras v. Hernández Colón*, supra; *Hernández Agosto v. Romero Barceló*, supra, page 416; *Santa Aponte v. Srio. del Senado*, supra. They have to show that they possess rights of constitutional or statutory origin that have been violated and that have suffered a clear and palpable damage as a result of the action of defendant. *Hernández et al. v. Hernández Colón et al.*, supra. In the case of *Noriega v. Gobernador*, supra, we decided that there are times that a legislator has standing to question an action or omission of the Executive Branch, which he/she deems unconstitutional. For example, when the prerogatives of a legislator are affected because the Governor does not put a law into effect. Being prevented from adjudicating the funds that by law he/she had to distribute, he/she would have standing to challenge such action.

58    Each legislative body can create, interpret its rules of procedure and Rule XIII of the Regulation of the House of Representatives, *supra*, establishes that when matters *unforeseen* by that regulation arise is when the provisions of the Manual of Parliamentary Practice and the interpretation of the United States House of Representatives will be applied.

59    The Regulations of the Senate and the Congress of Representatives of Spain have specific provisions that allow the members of such bodies to declare that they abstain in a voting. See, Art. 96(2) of the Regulation of the Senate of May 26, 1982 and Art. 86 of the Regulation of Congress of the Representatives of February 10, 1982.

60    In view of what is previously discussed and decided we do not consider it necessary to discuss the arguments of legislative immunity and separation of powers presented by the parties in this case.

---

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.