IN THE UNITES STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

In Re Commonwealth of P.R.          17-01578

---

### MOTION TO INTERVENE AND REQUESTING DECLARATORY JUDGMENT

TO THE HONORABLE BANKRUPTCY COURT (HBC):

Comes now the putative Intervenor, appearing here Pro Se (PS) and in Forma
Pauperis (IFP) and respectfully States, Alleges and Prays.

1. That this same putative intervenor back on October 14, 2015, timely filed at
   the Tribunal of First Instance (TFI), Superior Court of San Juan (SCSJ), a
   Complaint and Declaratory Judgment Petition (CDJP), naming as
   Defendants all the ex-governors of Puerto Rico (P.R.) from 1985-2012, its
   Senators, Representatives, Secretaries of Justice and Treasury; all the
   Directors and Officers (D's and O's) of the Board of Directors (BD's) of the
   Government Development Bank (GDB), and all the public corporations and
   entities that issued debt guaranteed by the full faith and credit of the
   Government of P.R. during same period; the insurance companies that
   covered the public liability exposure of all the D's and O's of all these BD's;
   all the D's and O's of all the BD's of all the brokerage firms, banking and/or
   financial firms, insurance firms, law firms and all the D's and O's of all the
   insurance companies that covered the public liability exposure of the D's
   and O's of all the BD's of all of the above for their wrongful and negligent
   conduct in having been derelict in their ethical, fiduciary, ministerial and
   legal duties when accepting, acquiescing, approving, buying, condoning,

1

Case:17-03283-LTS   Doc#:4776-1   Filed:01/14/19   Entered:01/14/19 16:16:44   Desc:
Exhibit Docket Exhibits - 17-bk-3283   Page 2 of 92

Case:17-03283-LTS   Doc#:321   Filed:06/13/17   Entered:06/13/17 17:33:01   Desc: Main
Document     Page 2 of 7

contracting, granting, guaranteeing, issuing, selling, and/or in any other way or manner having been involved in the issuance of debt by the Government of P.R, contrary to and in excess of the limits prescribed in Section 2 of the Article VI of the Constitution of P.R.; that expressly, explicitly and specifically prohibited the issuance of debt in excess of fifteen (15%) percent of the average of the collections of taxes for the previous two years of any issuance. See Exhibit 1.

2. That same CDJP was dismissed without prejudice because I could not come up with legal representation in the time-span the Honorable Judge of the HTPI-SCSJ had ordered. I timely appealed that ruling and it is presently still sub judice at the Honorable Appellate Tribunal of P.R.(HATPR) and a second Mandamus Petition has been filed before the Honorable Supreme Tribunal of P.R. (HSTPR) urging that forum to order the HTAPR to decide the motion for reconsideration pending.

3. That additionally, I timely filed before the HSTPR a Motion for that higher forum to assume jurisdiction on first instance over the legal recourse due to its extreme importance and relevance for the People of P.R., but it was nonetheless denied without reasons.

4. That soon after, I timely filed a Motion To Intervene And Requesting Declaratory Judgment (MIRDJ) before the Honorable U.S. District Court for the District of P.R. (HUSDCDPR), in the Assured Guaranty Corp. Et Al. v. Garcia Padilla, Et Al, 16-01073(FAB) civil action, incorporating as an integral part of same MIRDJ the Complaint I had filed before the HTPI-SCSJ.

2

5. The HUSDCDPR promptly denied same and I timely appealed to the Honorable U.S. Court of Appeals for the First Circuit (HUSCA1C), where it was docketed as 16-2208, and is presently sub judice after that forum ordered and received the appellate briefs of all the parties.

6. That later I filed an amended MIRDJ in the Lex Claims LLC. Et Al. v. Garcia Padilla, Et Al. then, now Financial Oversight and Supervisory Board, Et Al, Et Al, 16-02374 (FAB) civil action, also incorporating as an integral part of same MIRDJ the Complaint I had filed before the HTPI-SCSJ. It was also denied by the Honorable Judge Besosa and timely appealed to the HUSCA1C which docketed it as 17-1337 and which is also sub judice. Actually, on May 17, 2017 the HUSCA1C issued a briefing schedule Order in said appeal only to recant on March 19, 2017 without any reason(s).

7. That as this Honorable Judge Laura Taylor Swine must by now have learned, the residents of P.R. have been all negatively affected by the illegally, recklessly and wantonly issuance of debt of billions of dollars without a source of repayment by officers of the Government of P.R. and from public and private entities whose D's and O's were all derelict in their ethical, fiduciary, ministerial and legal duties after having confederated and aided and abetted the first ones with the second ones in a conspiracy to violate the civil rights of the residents of P.R. See 42 U.S.C. 1985 and 42 U.S.C.1986.

8. These government and non-government officials, all named Defendants in my Complaint incorporated as an integral part of my timely filed MTIRDJ in the civil actions mentioned above, most of them lawyers, knew or should

3

Case:17-03283-LTS   Doc#:321   Filed:06/13/17   Entered:06/13/17 17:35:01   Desc: Main
Document   Page 4 of 7

had known that the recklessly and wantonly issuance of the debt we the residents of this otherwise archipelago have been paying and are unjustly supposed to continue paying for the next scores and scores of years, was issued in violation of section 2 of Article VI of the Constitution of P.R..

9. Same section should not be legally underestimated and undervalued since it came about as a result of an amendment to the Constitution of P.R. which after having been most appropriately and consciously drafted and proposed to the U.S. Congress by the People of P.R. through its Legislature, was pre-approved and pre-authorized by the U.S. Congress by way of Public Law 87-121 of August 3, 1961, where the U.S. Congress explicitly, expressly and specifically consented that same amendment in fact amended section 3 of the Federal Relations Act or Public Law 600 of 1950 once and if a majority of the Puerto Rican People voted in favor of same in a referendum that was approved by the Puerto Rican Legislature on September 29, 1961 and held on December 10, 1961 where it was approved by a humongous eighty two (82.8%) percent.

10. On its pertinent and relevant text to the legal issues at stake here, Public Law 87-121 of August 3, 1961 mandated and ordered ad verbatim:

Public Law 87-121

JOINT RESOLUTION

To provide for amending section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458).

August 3, 1961
[H. J. Res. 124]

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458), is amended by deleting therefrom the following language: "*Provided, however,* That no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Rio Piedras and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," and "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted."

Puerto Rican Federal Relations Act, amendment.
30 Stat. 543.
48 USC 745.

Sec. 2. Section 1 of this Act shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth).

Effective date.
Public referendum.
48 USC 731d note.

Approved August 3, 1961.

11. As thou may be able to corroborate, Section 1 of this Public Act 87-121 explicitly, expressly and specifically provided for the amending of section 3 of the Puerto Rican Federal Relations Act. After so providing, in Section 2 of this Public Act 87-121 of the U.S. Congress, mandated and ordered that if and when in a referendum for these effects convened by the Government of P.R., the majority of the People of P.R were to "as proposed in the concurrent resolution of the legislative assembly of the Commonwealth voted in favor of this constitutional amendment, approve its text "limiting the debt-incurring capacity of the Commonwealth and its municipalities," same

Case:17-03283-LTS   Doc#:321   Filed:06/13/17   Entered:06/13/17 17:33:01   Desc: Main
Document   Page 6 of 7

would become the law of the land, in P.R. as a result of the amendment to the Constitution of P.R. and in the U.S. of A., as a result of the its preapproval and preauthorization by the U.S. Congress by way of this Public Law 87-121.

12. If thy Honor may have some of your precious time to see my Complementary Motion To Motion To Intervene And Requesting Declaratory Judgment in the Lex Claims civil action, 16-02374(FAB) of March 15, 2017 (Exhibit 2),where the historical and legal track record of all the U.S. Congress legislation on this theme are illustrated, thou will be able to find and corroborate, that as logic and reason dictate, the members of the U.S. Congress since the beginning of their first experience with one of their first colonies such as P.R. was, were careful enough and acted with due diligence and administrative and managerial fiducia when dealing with the resources of their new colony. See Foraker Act of 1900, the Jones-Shaffroth Act of 1917 and the Federal Relations act of 1950 provisions in this vein.

13. It is only logical and reasonable to infer that the members of the U.S Congress and of all the branches of the then emerging and incipient Empire if you prefer, were not going to acquiesce and condone, much less legally issue a blank check or authorize a carte blanche to the administrators and managers of their most precious colony or new jewel of the Crown as it used to be said, to maladminister and mismanage same colony, irresponsibly and recklessly not only because it did not make any sense, but balso ecause the new empire could run the risk of ending having to pay the tab, as it may happen now depending upon the final fate of this litigation.

6

14. It would be another matter for thyself to rule afterwards, who is going to respond for what percentage of the tab for their wrongful and negligent conduct in the issuance of the debt in excess of the Constitutional limits among all the Defendants in my Complaint hereby made and integral part of this Motion. See Proposed Appeal Brief in 17-1337 at the HUSCA1C. Exhibit 3.

15. For all the above reasons, I respectfully pray to thy Honor, that you take and admit this MIRDJ filed in good faith, that you consider and evaluate same thoroughly and thoughtfully, and after having done so, that you grant same and accord the facts, the evidence, the controlling jurisprudence, your judicial discretion and the sense of Justice that precedes thou; accordingly thou proceed to issue the declaratory judgment requested, ruling that all the debt that was issued against and contrary to the letter and the spirit of the Public Law 87-121 of the U.S. Congress and as its concomitant, of the section 2 of Article VI of the Constitution of P.R. is unconstitutional, and ergo, illegal and null ab initio. In addition all the debt that was issued with a repayment schedule of over thirty (30) years should also be declared null and/or void ab initio since it was also prohibited by same Section 2 of Article VI of the Constitution of P.R.

So I State, Allege and Pray Respectfully submitted, June 5, 2017.

Angel Ruiz Rivera
Putative Intervenor/Interested Party Pro Se and IFP
Ext. Villa Rica
AA-27 Calle Santa Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.

EXHIBITS

1. Complaint and Request For Declaratory Judgment of October 14, 2015 filed at the HTFI-SCSJ.

2. Complementary Motion To Motion To Intervene And Requesting Declaratory Judgment in the Lex Claims civil action, 16-02374(FAB) of March 15, 2017.

8

2. This HUSDCDPR's Order of June 16, 2017.

Case:17-03283-LTS   Doc#:4776-1   Filed:01/14/19   Entered:01/14/19 16:16:44   Desc:
Exhibit Docket Exhibits   17   bk   3283   Page 10 of 92

Case:17-03283-LTS   Doc#:354   Filed:06/16/17   Entered:06/16/17 09:04:05   Desc: Main
Document     Page 1 of 2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------x

In re:                                                    PROMESA
                                                          Title III
THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of                          No. 17 BK 3283-LTS

THE COMMONWEALTH OF PUERTO RICO,                          (Jointly Administered)
et al.,

             Debtors.[1]

-------------------------------------------------------x

ORDER DENYING (I) MOTION TO PROCEED IN FORMA PAUPERIS; (II) MOTION TO INTERVENE AND
REQUESTING DECLARATORY JUDGMENT; AND (III) MOTION FOR DISQUALIFICATION OF VARIOUS
MEMBERS OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD

      On June 13, 2017, Angel Ruiz Rivera (the "Movant"), filed a (i) *Motion to Proceed in
Forma Pauperis* (the "IFP Motion"), (ii) *Motion to Intervene and Requesting Declaratory
Judgment* (the "Motion to Intervene"), and (iii) *Motion for Disqualification of Various Members
of the Financial Oversight and Management Board* (the "Disqualification Motion"). (Docket
Entry Nos. 320, 321 and 322.)

      The Financial Oversight and Management Board for Puerto Rico (the "Board") was
established pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act
("PROMESA"). On May 3, 2017, the Board, as representative of the Commonwealth,
commenced the above-captioned Title III proceeding (the "Title III Proceeding"). Case No. 17-
BK-3283-LTS, Docket Entry No. 1 (D.P.R. May 3, 2017).

      Title I of PROMESA provides that only the President of the United States may remove a
member of the Board for cause. *See* 48 U.S.C. § 101(e)(5)(B). As such, the Court does not have
the statutory authority to remove any members of the Board. The Disqualification Motion is
denied for failure to state a claim for which relief can be granted.

      With respect to the Motion to Intervene, Movant has not identified a pending Title III

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case
number listed as a bankruptcy case number due to software limitations and the last four (4) digits
of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of
Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481);
and (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK
3284) (Last Four Digits of Federal Tax ID: 8474).

Proceeding in which he seeks to intervene.  Therefore, the Motion to Intervene is denied for failure to state a claim upon which relief can be granted.

28 U.S.C. § 1915(e)(2)(B)(ii) provides that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that — the action . . . fails to state a claim for which relief may be granted . . . ."  As explained above, the Disqualification Motion and the Motion to Intervene each fail to state a claim for which relief can be granted.  As such, the IFP Motion is denied as moot.

This Order resolves docket entry nos. 320, 321 and 322.

SO ORDERED.

Dated: June 16, 2017

 /s/ Laura Taylor Swain   
LAURA TAYLOR SWAIN
United States District Judge

3.  Notice of Appeal in 17-1743 and dismissal.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In Re:                                                PROMESA

The Financial Oversight And                           TITLE III
Management Board For Puerto Rico


as representative of                                  No. 17-BK-3283-LTS


The Commonwealth of Puerto Rico,                      (jointly administered)
Et al..

Debtors
_____

### NOTICE OF APPEAL

To the Honorable U.S. District Court for the District of P.R. (HDCDPR):

       Comes now the putative intervenor, Angel Ruiz Rivera, appearing here Pro

Se and In Forma Pauperis (IFP) and respectfully States, Alleges and Prays:

       This is my Notice of Appeal of this HUSDCDPR's June 16, 2017 Order

Denying (1) Motion to proceed In Forma Pauperis; (ii)  Motion To intervene and

Requesting Declaratory Judgment; and (iii) Motion For Disqualification Of Various

Members Of The Financial Oversight And Management Board.

       So I State, Allege and Pray. Respectfully submitted, today June 22, 2017.


Angel Ruiz Rivera
Ext. Villa Rica
AA-27 Calle Santa Rita
Bayamon, P.R. 00959.
787-799-9222
angelruizrivera@gmail.com

# United States Court of Appeals
## For the First Circuit

_____

No. 17-1743

IN RE: COMMONWEALTH OF PUERTO RICO; PUERTO RICO SALES TAX FINANCING
CORPORATION, a/k/a Cofina,

Debtors.

_____

COMMONWEALTH OF PUERTO RICO; PUERTO RICO SALES TAX FINANCING
CORPORATION, a/k/a Cofina,

Debtors, Appellees,

MONSITA LECAROZ-ARRIBAS,

Trustee, Appellee,

v.

ANGEL RUIZ-RIVERA,

Movant, Appellant.

_____

Before

Howard, _Chief Judge,_
Torruella and Kayatta, _Circuit Judges._

_____

**JUDGMENT**

Entered: September 7, 2017

    For lack of a substantial question or jurisdictional basis, the appeal is summarily _dismissed_
under 1st Cir. R. 27.0(c).  The motion to proceed _in forma pauperis_ on appeal is _denied_ as moot.

By the Court:

_/s/ Margaret Carter, Clerk_

cc:
Angel Ruiz-Rivera
Wandymar Burgos-Vargas
Hermann D. Bauer-Alvarez
Timothy William Mungovan
Ubaldo M. Fernandez
Stephen L. Ratner
Martin J. Bienenstock
Ehud Barak
Daniel J. Perez Refojos
Michael Luskin
Stephan E. Hornung
Julia D. Alonzo
Bradley R. Bobroff
Lucia Chapman
Michael A. Firestein
Paul V. Possinger
Lary Alan Rappaport
Scott Rutsky
Steven O. Weise
Maja Zerjal
Kurt F. Gwynne
Ralph C. Ferrara
Chantel L. Febus
Eric A. Schaffer
Luke A. Sizemore
Ann M. Ashton
Jonathan E. Richman
Monsita Lecaroz-Arribas
Financial Oversight and Management Board
US Trustee
Monsita Lecaroz-Arribas
Diana M. Batlle-Barasorda
Juan J. Casillas-Ayala
James R. Bliss
Luc A. Despins
Alberto Juan Enrique Aneses-Negron
G. Alexander Bongartz
Andrew V. Tenzer
Leslie A. Plaskon
James B. Worthington
Michael E. Comerford
Ericka C. Montull-Novoa
Antonio Juan Bennazar-Zequeira

4.   MTIARDJ in Assured Guaranty; 16-01037(FAB).

UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP.,
and AMBAC ASSURANCE CORPORATION

PLAINTIFFS

V.                                                No. 16-cv-1037-FAB

ALEJANDRO GARCÍA PADILLA,
JUAN C. ZARAGOZA GÓMEZ,
INGRID RIVERA ROCAFORT,
MELBA ACOSTA FEBO,
LUIS F. CRUZ BATISTA,
VÍCTOR A. SUÁREZ MELÉNDEZ,
CÉSAR A. MIRANDA RODRÍGUEZ,
JUAN FLORES GALARZA, and
JOHN DOES 1-40,

DEFENDANTS

## MOTION TO INTERVENE AND REQUESTING A DECLARATORY JUDGMENT

### TO THE HONORABLE U.S. DISTRICT COURT FOR THE DISTRICT OF P.R. (HUSDCDPR):

Comes now, the Intervenor, Angel Ruiz Rivera, appearing here Pro Se (PS) and In Forma Pauperis (IFP) and respectfully States, Alleges and Prays as follows:

1. This Motion is respectfully filed pursuant to the authority conferred by Federal Rule of Civil Procedure (FRCP) 24.[1] See in particular 24 (b)(1)(B).

---

[1] Rule 24. Intervention

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
   (1) is given an unconditional right to intervene by a federal statute; or
   (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.
(b) PERMISSIVE INTERVENTION.
   (1) In General. On timely motion, the court may permit anyone to intervene who:
   (A) is given a conditional right to intervene by a federal statute; or
   (B) has a claim or defense that shares with the main action a common question of law or fact.

1

2. The main reason why this Intervenor respectfully alleges, avers, and claims that he should legally be admitted, approved or legally recognized as such in the instant Complaint And Declaratory And Injunctive Relief Petition is because he filed a civil suit at the Honorable Tribunal de Primera Instancia (HTPI), Sala Superior de San Juan (SSSJ) intricately related to the facts, legal claims and issues in the instant one, on October 14, 2015, before the instant one was filed, ergo, legally protected by the first in time, first in right legal principle, where Intervenor, timely raised, that at least a portion of the bonds that were insured by the Plaintiffs in the instant action were first to start with issued in violation of the Constitution of Puerto Rico, ergo, making those bonds in particular legally null ab initio. [2]

3. That that Complaint was dismissed without prejudice reason why there is no legal impediment for same to be re-filed here as a matter of law since the complete diversity between the Plaintiffs and the Defendants is maintained even with this Intervenor becoming a appropriate party to the civil action, (28 U.S.C. (1332) and the Constitutional and other federal questions involved in same remain intact (28 U.S.C. 1331).

4. That together with this Motion To Intervene, the Intervenor is including the Complaint he timely filed before the HTPI-SSJ as an integral part of the instant motion and respectfully states, alleges and prays that this HUSDCDPR considers same as part of the instant Motion.

5. That in support of their allegations in the instant Complaint and Declaratory Judgment and Injunctive Relief Petition, the Plaintiffs make reference and rely upon same P.R. Constitution is support of their claims. See Complaint at p. 13 et seq. "II. Commonwealth Debt Priority Provisions A. The Commonwealth Constitution".

6. That while using, not to say abusing, of the P.R. Constitution in support of their allegations, the Plaintiffs very accommodatingly and conveniently omit the clause of same Constitution upon which the Intervenor relies in support of his claims that serves to prove without a shred of a doubt that at least part of the bonds issued and that the Plaintiffs insured, were issued in violation of the P.R. Constitution, reason why the People of P.R. should not be legally liable for at least that portion of the debt that was unconstitutionally issued, insured and sold in the corresponding financial markets. [3]

---

[2] The recent decisions by the Honorable U.S. Supreme Court (HUSSC) interpreting the Constitution of P.R. have affected the breadth, nature and scope of the political relations between the U.S. Of A, and P.R. but in no way or manner, those legal decisions by the highest court of the U.S. Of A. have annulled, revoked or voided the legal effects of same Constitution as to all its other legal aspects.

[3] Articulo VI. Disposiciones Generales
**Sección 2. Poder para imponer contribuciones; para contraer deudas.**

*Article VI. General Dispositions*
*Section 2. Power to impose contributions (taxes); to contract debts.*

2

El poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido. El poder del Estado Libre Asociado de Puerto Rico para contraer y autorizar deudas se ejercerá según se disponga por la Asamblea Legislativa, **pero ninguna obligación directa del Estado Libre Asociado de Puerto Rico por dinero tomado a préstamo directamente por el Estado Libre Asociado de Puerto Rico evidenciada mediante bonos o pagarés para el pago de la cual la buena fe, el crédito y el poder de imponer contribuciones del Estado Libre Asociado de Puerto Rico fueren empeñados será emitida por el Estado Libre Asociado de Puerto Rico si el total de** (i) el monto del principal de e intereses sobre dichos bonos y pagarés, junto con el monto del principal de e intereses sobre la totalidad de tales bonos y pagarés hasta entonces emitidos por el Estado Libre Asociado y en circulación, pagaderos en cualquier año económico y (ii) cualesquiera cantidades pagadas por el Estado Libre Asociado en el año económico inmediatamente anterior al año económico corriente en concepto de principal e intereses correspondientes a cualesquiera obligaciones evidenciadas mediante bonos o pagarés garantizadas por el Estado Libre Asociado, **excediere el 15% del promedio del monto total de las rentas anuales obtenidas de acuerdo con las disposiciones de las leyes del Estado Libre Asociado e ingresadas en el Tesoro de Puerto Rico en los dos años económicos inmediatamente anteriores al año económico corriente;** y ninguno de dichos bonos o pagarés emitidos por el Estado Libre Asociado para cualquier fin que no fuere facilidades de vivienda vencerá con posterioridad a un término de 30 años desde la fecha de su emisión y ningún bono o pagaré emitido para fines de vivienda vencerá con posterioridad a un término de 40 años desde la fecha de su emisión; y el Estado Libre Asociado no garantizará obligación alguna evidenciada mediante bonos o pagarés si el total de la cantidad pagadera en cualquier año económico en concepto de principal e intereses sobre la totalidad de las antes referidas obligaciones directas hasta entonces emitidas por el Estado Libre Asociado y en circulación y las cantidades a que se hace referencia en la cláusula (ii) excediere el 15 por ciento del promedio del monto total de dichas rentas anuales.

*The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debts will be exerted as the Legislative Assembly disposes, but it will not be surrendered or suspended. The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debt will be exerted as the Legislative Assembly disposes, but no direct obligation of the Free Associated State of Puerto Rico for money borrowed directly by the Free Associated State of Puerto Rico evidenced through bonds or promissory notes for which obligations the good faith and credit and the power to impose contributions of the Free Associated State were committed shall be issued by the Free Associated State of Puerto Rico if the total of (i) the amount for the concept of the principal and interests over those bonds and promissory notes over the totality of those bonds and promissory notes, until then issued by the Free Associated State and in circulation, payable in any fiscal year immediately preceding the current fiscal year and (ii) whatever amounts paid by the Free Associated State for the fiscal year immediately preceding the current for the concept of principal and interests corresponding to whatever obligations evidenced by bonds and promissory notes guaranteed by the Free Associated State, exceed 15% of the average of the total amount of the annual collections ("rentas") obtained in accordance to the dispositions of the laws of the Free Associated Sate as income in the Treasure of Puerto Rico during the two years immediately preceding the current fiscal year; and none of said bonds and promissory notes issued by the Free Associated State for any purpose rather than housing facilities shall be due after a 30*

3

7. That for all the above stated reasons and those included in the October 14, 2015 Complaint that is included here as Exhibit 1 and made part of this Motion to Intervene, Intervenor is hereby respectfully praying that the instant Motion is granted and that this HUSDCDPR issues a Declaratory Judgment with regards to the clear application of Article IV, Clause 2 of the P.R. Constitution to the bonds issued that constitute part of the claims in the instant Complaint.

8. That since the Intervenor is a Pro Se IFP non-lawyer litigant and due to the complexities of the instant litigation, I am respectfully requesting that this HUSDCDPR assigns or appoints me legal counsel and consequentially I am hereby filing the corresponding application together with this Mocion..

So I State, Allege and Pray. Respectfully submitted today August 31, 2016.

## CERTIFICATE OF SERVICE

I, Angel Ruiz Rivera, Intervenor, appearing here Pro Se and In Forma Pauperis (IFP) hereby certify that I have sent a copy of this Motion To Intervene to all the appearing attorneys of record for all the parties according to the docket record. For the specifics, see Exhibit 2.

Angel Ruiz Rivera
Intervenor
Pro Se and IFP
Ext. Villa Rica AA-27
CalleSanta Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.

EXHIBITS

1. October 14, 2015 Complaint and its corresponding English translation.
2. To whom the Motion was notified or served.

---

*year term from the date of its issuance; and no bond or promissory note issued for housing purposes shall be due after a 40 year term from the date of its issuance; and the Free Associated State shall not guarantee any obligation evidenced through bonds or promissory notes if the total of the amount payable in any fiscal year for the concept of principal and interests over the totality of the previously referred direct obligations until then issued by the Free Associated State and in circulation and the amounts made reference to in clause (ii) exceeded 15 per cent of the average of the total amount of these annual collections.*

4

| | | MOTION to Intervene, MOTION for Declaratory Judgment filed by Angel Ruiz-Rivera, pro se. (Attachments: # 1 Exhibit)(ab) (Entered: 09/02/2016) |
|---|---|---|
| 09/01/2016 | 50 | ***SELECTED PARTIES***FINANCIAL AFFIDAVIT by Angel Ruiz-Rivera. (Attachments: # 1 Exhibit, # 2 Exhibit) (ab) (Entered: 09/02/2016) |
| 09/01/2016 | 49 | MOTION to Appoint Counsel filed by Angel Ruiz-Rivera, pro se. (ab) (Entered: 09/02/2016) |
| 09/01/2016 | 48 | MOTION for Leave to Proceed in forma pauperis filed by Angel Ruiz-Rivera, pro se. (Attachments: # 1 *Restricted* Affidavit)(ab) (Entered: 09/02/2016) |

| | | |
|---|---|---|
| | | ORDER re 62 Motion for Joinder. Joinder is GRANTED. Signed by Judge Francisco A. Besosa on 10/17/2016. (brc) (Entered: 10/17/2016) |
| 10/17/2016 | 62 | MOTION for Joinder *"Notice of Automatic Stay"* filed by Ivonne Cruz-Serrano on behalf of Ingrid Rivera-Rocafort Suggestions in opposition/response due by 11/3/2016 (Cruz-Serrano, Ivonne) (Entered: 10/17/2016) |
| 10/17/2016 | 61 | ORDER re 60 Motion for Joinder. Joinder is GRANTED. Signed by Judge Francisco A. Besosa on 10/17/2016. (brc) (Entered: 10/17/2016) |
| 10/17/2016 | 60 | MOTION for Joinder Re: 59 Notice (Other) filed by Alejandro Garcia-Padilla, Juan C. Zaragoza-Gomez, Victor A. Suarez-Melendez, Luis F. Cruz-Batista filed by Giselle Lopez-Soler on behalf of Alberto Baco-Bague Suggestions in opposition/response due by 11/3/2016 (Related document(s) 59 ) (Lopez-Soler, Giselle) Modified on 10/18/2016 to correct filer(ab). (Entered: 10/17/2016) |
| 10/14/2016 | 59 | NOTICE *of Automatic Stay* by Luis F. Cruz-Batista, Alejandro Garcia-Padilla, Victor A. Suarez-Melendez, Juan C. Zaragoza-Gomez, Cesar A. Miranda-Rodriguez (Ramirez-Coll, Jose) Modified on 10/17/2016 to add filer (ab). (Entered: 10/14/2016) |
| 10/04/2016 | 58 | OPINION AND ORDER re 25 Motion to Dismiss for Lack of Jurisdiction; and re 30 Motion to Dismiss for Lack of Jurisdiction: DENIED. Signed by Judge Francisco A. Besosa on 10/04/2016. (brc) (Entered: 10/04/2016) |
| 09/26/2016 | | USCA Case Number 16-2208 for 55 Notice of Interlocutory Appeal filed by Angel Ruiz-Rivera. (xi) (Entered: 09/26/2016) |
| 09/26/2016 | 57 | Certified and Transmitted Record on Appeal to US Court of Appeals re 55 Notice of Interlocutory Appeal [Docket Entries 53 & 55] (xi) (Entered: 09/26/2016) |
| 09/13/2016 | 56 | ORDER re 55 Motion to Clarify. Clarification DENIED. The order is crystal clear. Signed by Judge Francisco A. Besosa on 09/13/2016. (brc) (Entered: 09/13/2016) |
| 09/12/2016 | | ***SEE IMAGE ON D.E. 55 *** NOTICE OF INTERLOCUTORY APPEAL re: 53 Order, by Angel Ruiz-Rivera, pro se. (Filing fee $ Pending.) (ab) (Entered: 09/14/2016) |
| 09/12/2016 | 55 | MOTION to Clarify Order or in the Alternative Notice of Appeal filed by Angel Ruiz-Rivera, pro se. (ab) (Entered: 09/13/2016) |
| 09/06/2016 | 54 | ORDER re 49 Motion to Appoint Counsel : MOOT. The motion to intervene has been denied. Signed by Judge Francisco A. Besosa on 9/6/2016. (grf) (Entered: 09/06/2016) |
| 09/06/2016 | 53 | ORDER re 31 Motion to Intervene: DENIED. Signed by Judge Francisco A. Besosa on 9/6/2016. (grf) (Entered: 09/06/2016) |
| 09/06/2016 | 52 | ORDER re 48 Motion for Leave to Proceed in forma pauperis: MOOT. The motion to intervene has been denied. Signed by Judge Francisco A. Besosa on 9/6/2016. (grf) (Entered: 09/06/2016) |
| 09/01/2016 | 51 | |

| Date Filed | # | Docket Text |
|---|---|---|
| 12/21/2016 | 72 | ORDER re 70 Informative Motion: NOTED. Counsel is reminded that she can access CM/ECF at any time from any where. Signed by Judge Francisco A. Besosa on 12/21/2016. (brc) (Entered: 12/21/2016) |
| 12/21/2016 | 71 | ORDER re 69 Motion to Clarify. The request for clarification or reconsideration is DENIED. The Notice of Appeal is NOTED. The Clerk will docket this motion as a Notice of Appeal. Signed by Judge Francisco A. Besosa on 12/21/2016. (brc) (Entered: 12/21/2016) |
| 12/21/2016 | 70 | INFORMATIVE Motion regarding Out of Jurisdiction filed by Ivonne Cruz-Serrano on behalf of Ingrid Rivera-Rocafort Responses due by 1/4/2017. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Cruz-Serrano, Ivonne) (Entered: 12/21/2016) |
| 12/16/2016 | | ***SEE IMAGE ON DOCKET. 69 ***NOTICE OF INTERLOCUTORY APPEAL by Angel Ruiz-Rivera, pro se. (Filing fee $ 505./Pending) (ab) (Entered: 12/22/2016) |
| 12/16/2016 | 69 | MOTION to Clarify/Reconsideration or in the Alternative Notice of Appeal filed by Angel Ruiz-Rivera, pro se. Responses due by 12/30/2016. NOTE: Pursuant to FRCP 6(a) an additional three days does not apply to service done electronically. (Attachments: # 1 Exhibit)(ab) (Entered: 12/19/2016) |
| 12/05/2016 | 68 | Supplemental Record on Appeal transmitted to US Court of Appeals Re 55 Notice of Interlocutory Appeal filed by Angel Ruiz-Rivera [Docket Entry 67] (xi) (Entered: 12/05/2016) |
| 12/02/2016 | 67 | ORDER re 66 Motion for Leave to Appeal in forma pauperis: DENIED. Mr. Ruiz-Rivera's motion to intervene is completely frivolous and he failed to comply with Fed.R.Civ.P. 24(c). Signed by Judge Francisco A. Besosa on 12/02/2016. (brc) (Entered: 12/02/2016) |
| 12/02/2016 | 66 | MOTION for Leave to Appeal in Forma Pauperis w/Affidavit in support filed by Angel Ruiz-Rivera, pro se. (Attachments: **Restricted** # 1 Affidavit w/envelope) (xi) Modified on 12/2/2016 to add restriction (xi). (Entered: 12/02/2016) |
| 12/02/2016 | 65 | Certified Copy of Order from USCCA as to Angel Ruiz-Rivera re: 55 Notice of Interlocutory Appeal; Appellant's motion for leave to proceed in forma pauperis and supporting financial affidavit are transmitted to the district court for action in the first instance. Copies of the district court's ruling shall be forwarded to this court. The district court, if it denies the motion, is requested to state its reasons in writing. (xi) (Entered: 12/02/2016) |
| 10/28/2016 | 64 | OBJECTION filed by All Plaintiffs Re: 59 Notice (Other) filed by Cesar A. Miranda-Rodriguez, Alejandro Garcia-Padilla, Juan C. Zaragoza-Gomez, Victor A. Suarez-Melendez, Luis F. Cruz-Batista filed by All Plaintiffs. (Burgos-Perez, Heriberto) (Entered: 10/28/2016) |
| 10/17/2016 | 63 | |

5.   MTIARDJ in Lex Claims; 16-02374(FAB).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

LEX CLAIMS, LLC,
JACANA HOLDINGS I, LLC,
JACANA HOLDINGS II LLC,
JACANA HOLDINGS III LLC,
JACANA HOLDINGS IV LLC,
JACANA HOLDINGS V LLC,
MPR INVESTORS LLC,
ROLSG, LLC, AND
SL PUERTO RICO FUND II L.P.

16-02374 (FAB)

COMPLAINT AND
DECLARATORY AND
INJUNCTIVE RELIEF

PLAINTIFFS

V.

ALEJANDRO GARCIA PADILLA
RICARDO ROSELLO NEVAREZ*
in his official capacity as Governor of the
Commonwealth of Puerto Rico.

JUAN ZARAGOZA GOMEZ
RAUL MALDONADO GAUTIER*
in his official capacity as Secretary of the
Treasury of the Commonwealth of Puerto Rico.

LUIS CRUZ BATISTA
JOSE I. MARRERO ROSADO*
In his official capacity as Director of the
Office of Management and Budget of the
Commonwealth of Puerto Rico.

* presently holding these positions

THE PUERTO RICO SALES TAX
FINANCING CORPORATION (COFINA)

JUAN VAQUER
In his Official capacity as Executive Director
Of the Puerto Rico Sales Tax Corporation and

BANK OF NEW YORK MELLON CORP.

DEFENDANTS

**MOTION TO INTERVENE AND REQUESTING A DECLARATORY
JUDGMENT**

1

TO THE HONORABLE U.S. DISTRICT COURT FOR THE DISTRICT OF P.R.
(HUSDCDPR):

Comes now, the Intervenor, Angel Ruiz Rivera, appearing here Pro Se

(PS) and *In Forma Pauperis* (IFP) *de facto* and respectfully States, Alleges and

Prays as follows:

1. This Motion To Intervene and Requesting A Declaratory Judgment

(MTIARDJ) is respectfully filed pursuant to the authority conferred in 28 U.S.C.

§ 2201, Federal Rule of Civil Procedure (FRCP) 24 (a) 2, [in the alternative 24

(b) 2] and FRCP 57.[1] It is also based in the *ratio decidendi* by the Honorable

U.S. Court of Appeals for the First Circuit (HUSCA1C) in Peaje Investments

LLC v. Garcia-Padilla, 16-2377 (1st Cir. 01/11/2017) which is controlling here.

---

[1] 28 U.S. Code § 2201 - Creation of remedy

(a) In a case of actual controversy within its jurisdiction, except with respect to ...any
court of the United States, upon the filing of an appropriate pleading, **may declare the
rights and other legal relations of any interested party seeking such declaration,
whether or not further relief is or could be sought.** Any such declaration shall have
the force and effect of a final judgment or decree and shall be reviewable as such.

Rule 24. Intervention
(a) Intervention of Right. On timely motion, the court must permit anyone to intervene
who:
   (1) is given an unconditional right to intervene by a federal statute; or
   (2) claims **an interest relating to the property or transaction that is the subject
of the action, and is so situated that disposing of the action may as a practical
matter impair or impede the movant's ability to protect its interest, unless
existing parties adequately represent that interest.**
   (b) Permissive Intervention.
   (1) In General. On timely motion, the court may permit anyone to intervene who:
   (A) is given a conditional right to intervene by a federal statute; or
   (B) **has a claim or defense that shares with the main action a common
question of law or fact.**

Rule 57. Declaratory Judgment

These rules govern the procedure for obtaining a declaratory judgment under 28
U.S.C. §2201. Rules 38 and 39 **govern a demand for a jury trial. The existence of
another adequate remedy does not preclude a declaratory judgment that is
otherwise appropriate. The court may order a speedy hearing of a declaratory-
judgment action.**

2

2. The main reason why this Intervenor respectfully avers that I should be legally admitted, or legally recognized as such in the instant Complaint is because I timely filed a civil suit at the Honorable Tribunal de Primera Instancia (HTPI), Sala Superior de San Juan (SSSJ), intricately intertwined to the facts and applicable laws in the instant one, on October 14, 2015, before this one was filed, ergo, legally protected by the first in time, first in right legal maxim or principle, where Intervenor, timely raised, that at least a portion of the bonds that were bought by the Plaintiffs object of the instant action were first to start with; brokered. Issued, sold and bought in excess of the limits prescribed, in the Constitution of Puerto Rico, ergo legally proscribed, making the brokerage, issuance, selling and purchase of those bonds in particular legally null *ab initio*.

3. That my earlier in time, consequentially in right Complaint filed at the P.R. Courts was dismissed without prejudice reason why there is no legal impediment for same to be re-filed here as a matter of law; amalgamated, fused, incorporated or merged with the instant MTIARDJ, since the complete diversity between the Plaintiffs and the Defendants is maintained and preserved, even with this Intervenor becoming an appropriate party to the civil action, (28 U.S.C. (1332) and the Constitutional and other federal questions involved in same remain intact (28 U.S.C. 1331).

4. That together with this MTIARDJ, this Intervenor is incorporating and including the Complaint I timely filed before the HTPI-SSJ as an integral part of the instant motion and respectfully states, alleges and prays that this HUSDCDPR considers same as part of the instant MTIAFDJ.

5. That in their Second Amended Complaint the Plaintiffs in their allegations and claims made reference and rely upon the same P.R.

3

Constitution that I relied upon or used as reference in support of my allegations

and claims in my Complaint which I am integrating to this MTIARDJ to the point

where they cite same Constitution all throughout their Complaint "like a rampant

case of impetigo"[2] and even label the legal nature or source of their claims with

the expressions "Constitutional Debt", "Constitutional Debt Priority Guarantee"

and "Commonwealth's Constitutional Debt."[3]

---

[2] Quoting the Honorable Judge Selya in his opinion in Instituto de Educacion Universal v. U.S. Department of Education, 99-1628, (4/12/2000), one of the first appeals where I appeared Pro Se.

[3] See Complaint at p.3, starting with the continuation of ¶2, where the Plaintiffs aver: "in flagrant violation of the Puerto Rican Constitution (P.R. Constitution); p.3,¶3; where they aver: "especially those that are protected by the P.R. Constitution"; p.4,¶5, where they aver: "Plaintiffs are beneficial owners of substantial amounts of bonds that are explicitly protected by the P.R. Constitution"; at the end of same paragraph they aver: "Together, these bonds are known as "Constitutional Debt", because they are- alone among Puerto Rico's obligations expressly protected under Article VI of the P.R. Constitution""; p.4,¶6, they aver" "The P.R. Constitution" is explicit in this regard. Article VI, Section 8 of the P.R. Constitution" provides that, if Puerto Rico's "available resources" are insufficient to meet all its desired spending, "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order established by law." P.R. Cont. Art. VI §8 (emphasis added). This promise of first priority (the "Constitutional Debt Priority Guarantee (CDPG)") unambiguously requires Puerto Rico to pay Constitutional Debt (CD) ahead of any other expenditure". P.5¶7,"...Governor Garcia Padilla acknowledged that "our Constitution gives first priority over all revenues to payments on our general obligation debt." During the rest of the Complaint they repeat these terms all throughout same, sometimes even three and four times in a paragraph. See p.5,¶8, "Despite the crystal-clear CDPG...CDPG; p.5,¶9, CD...CD; p.6¶10, CD...CD; p.6¶11, CD; p.7¶13, CD; p.7¶15. "Commonwealth's Constitutional Debt (CCD)". P.R. Constitution...P.R. Constitution. P.R. Constitution, CD; p.8¶17, CD...CDPG...CD...CD; p.8¶18, CDPG...CCD; p.8¶19, P.R. Constitution and its protections for CD"; P.9cont.¶19, CD...CDPG... CDPG...CDPG...CCD; p.9¶20, CCD...CCD...CDPG; p.12¶36, CD; p.16¶48, CD; p.16¶49, CD; p.17cont.¶50, CD...P.R. Constitution, p.17¶53, CD; p.17 ¶54, CCD; p.17¶55, CCD; p.19¶57, CD...CD; p.19¶58, CD; p.20¶59, CD...CD; p.21¶62, p.21¶62, CD...CDPG...CD...CD; p.21¶63, "The Commonwealth's Constitutional Debt is "public debt" within the meaning of the P.R. Constitution: p.22¶64, P.R. Constitution...CDPG...CDPG; p.22¶65, P.R. Constitution ... CD...CCD...CDPG ... P.R. Constitution...CD...P.R. Constitution; p.23¶66, CD...P.R. Constitution...CD; p.23 ¶67, P.R. Constitution;...CD...P.R. Constitution...CD; p.24¶68, CD; p.24¶69, P.R. Constitution ...CD; p.25¶"Article VI, Section 2 of the P.R. Constitution". 25¶70, CD; p.25¶71, P.R. Constitution..."Puerto Rico's Constitutional Debt"...CDPG; p.25¶72,P.R. Constitution; p.25¶73, P.R. Constitution...CD... P.R. Constitution...CD...; p.25¶74, CD; p.26¶75, P.R. Constitution...CD; p.26¶76, CD ... CD ... CD; p.26¶77, Constitution; p.27cont. ¶77, CD...CD; p.27¶78, CD; p.27¶79, CD; p.28cont.¶79, CD...CD...P.R. Constitution; p.28¶80, CD...CD; p.28¶81, CD... P.R. Constitution...CD; p.29¶82,Constitution...CD...CD...CD; P.29¶83, CD...CD...CD...CD; P.30cont.¶84, CD; p.30¶85, "Commonwealth Constitution"; p.30¶86, P.R. Constitution; p.31¶87, P.R. Constitution...CD; p.31¶88, P.R. Constitution...CD; p.32¶90, P.R. Constitution ... CD ...

4

6. That while using, not to say abusing, of the P.R. Constitution in support of their allegations and claims, the Plaintiffs very accommodatingly, conveniently and deliberately omit certain pertinent, relevant and significant exerpts of a section of same Constitution upon which the Intervenor relies upon in support by way of reference of his allegations and claims, that serve to prove without a shred of a doubt that at least part of the bonds issued and which the Plaintiffs bought; were issued and sold in violation of the P.R. Constitution, reason why the Plaintiff and the People of Puerto Rico similarly situated should not had been taxed and continue to be paying taxes to pay at least that portion of the debt that was unconstitutionally brokered, issued, insured, sold and bought in the different financial markets. [4]

---

CD...P.R. Constitution; p.32¶92, CD; p.34¶95, P.R. Constitution...P.R. Constitution; p.35cont.¶95, P.R. Constitution; p.35¶96, P.R. Constitution; p. 35¶98, P.R. Constitution; p. 36cont.¶98, P.R. Constitution; p.36¶99, P.R. Constitution; p.38¶102; p.39 ¶103, CD; p.40¶104, CDPG...CD...CD; p.40¶105, P.R. Constitution...P.R. Constitution; p.41¶107, P.R. Constitution...P.R. Constitution...CD; p.42¶108, P.R. Constitution; p.42¶109, P.R. Constitution, ...CD...CD; P.42¶110, CDPG...CCD; P.43cont.¶112, "Constitution and laws of the Commonwealth"; p.43¶113, CDPG; p.45¶118, CLC; p.45¶120, "Constitution of P.R."; p.46cont.¶120, CD; p.46¶121, CDPG...CD...CDPG; p.46¶122, CD; p.46¶123, CD; p.47¶125, CD...CD...CDPG...CCD; p.48¶130, CD...P.R. Constitution; p.49¶132, P.R. Constitution; p.49 ¶133a, CD; p.50¶134,CD; p.51¶138, CD; p.51¶139, P.R. Constitution; p.51¶140, CD; p.52¶144, CD...CD; p.52¶146, CD...CD...CD; p.52¶147, CD; p.52¶149, CD...CD; p.53¶150, CDPG; p.53¶152, P.R. Constitution...CD; p.53 ¶153, CDPG...CD...CD; p.53¶154, CD; p.54cont.¶154, CDPG; p.54¶155, CD...CDPG; p.54¶156, CD; P.54¶157, P.R. Constitution ...CD...P.R. Constitution...P.R. Constitution...CD; p.55¶159, "Article VI, Section 2 of the P.R. Constitution"; p.55¶162, Article VI, Section 2 of the P.R. Constitution"...CD; p.56¶164, P.R. Constitution...CD...CD; p.56¶165, CD...CD...P.R. Constitution...CD...CD; p.57¶166, CD...CD; p.57¶167, CD...CD...CD; p. 58¶168, CDPG...CD...CD; p.59¶169, CDPG; p.59¶170, CD...CD; p.59¶171, CD...CD; p.60cont. ¶171, CD; p.60¶172, CCD; p.60¶174, P.R. Constitution; p.61¶177, CD...CDPG; p.61¶178, CD...CDPG...CD; p.61¶179, CD...CDPG...CD; p.62cont.¶179, CD...CD; p.62¶182, P.R. Constitution...P.R. Constitution; p.63¶184, CD; p.65cont.¶193, P.R. Constitution; p.66¶198, CD...P.R. Constitution; p.67¶IA, P.R. Constitution, CD; p.67¶ID, P.R. Constitution; p.67¶IE, CD; p.68¶IF4, CD; p. 68¶IG1, CD; p.69¶IH, CD; p.69¶IIA, CD...P.R. Constitution; p.70¶IIF...P.R. Constitution; p.70¶IIG, CD.

[4] Articulo VI. Disposiciones Generales
Sección 2. Poder para imponer contribuciones; para contraer deudas.

*Article VI. General Dispositions*
*Section 2. Power to impose contributions (taxes); to contract debts.*

5

El poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido. El poder del Estado Libre Asociado de Puerto Rico para contraer y autorizar deudas se ejercerá según se disponga por la Asamblea Legislativa, **pero ninguna obligación directa del Estado Libre Asociado de Puerto Rico por dinero tomado a préstamo directamente por el Estado Libre Asociado de Puerto Rico evidenciada mediante bonos o pagarés para el pago de la cual la buena fe, el crédito y el poder de imponer contribuciones del Estado Libre Asociado de Puerto Rico fueren empeñados será emitida por el Estado Libre Asociado de Puerto Rico si el total de (i) el monto del principal de e intereses sobre dichos bonos** y pagarés, **junto con el monto del principal de e intereses sobre la totalidad de tales bonos y pagarés hasta entonces emitidos** por el Estado Libre Asociado y en circulación, pagaderos **en cualquier año económico y (ii) cualesquiera cantidades pagadas por el Estado Libre Asociado en el año económico inmediatamente anterior al año económico corriente en concepto de principal e intereses correspondientes a cualesquiera obligaciones evidenciadas mediante bonos** o pagarés garantizadas por el Estado Libre Asociado, **excediere el 15% del promedio del monto total de las rentas anuales obtenidas de acuerdo con las disposiciones de las leyes del Estado Libre Asociado e ingresadas en el Tesoro de Puerto Rico en los dos años económicos inmediatamente anteriores al año económico corriente; y ninguno de dichos bonos** o pagarés emitidos por el Estado Libre Asociado para cualquier fin que no fuere facilidades de vivienda **vencerá con posterioridad a un término de 30 años desde la fecha de su emisión** y ningún bono o pagaré emitido para fines de vivienda vencerá con posterioridad a un término de 40 años desde la fecha de su emisión; y el Estado Libre Asociado no garantizará obligación alguna evidenciada mediante bonos o pagarés si el total de la cantidad pagadera en cualquier año económico en concepto de principal e intereses sobre la totalidad de las antes referidas obligaciones directas hasta entonces emitidas por el Estado Libre Asociado y en circulación y las cantidades a que se hace referencia en la cláusula (ii) excediere el 15 por ciento del promedio del monto total de dichas rentas anuales.

The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debts will be exerted as the Legislative Assembly disposes, but it will not be surrendered or suspended. The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debt will be exerted as the Legislative Assembly disposes, but no direct obligation of the Free Associated State of Puerto Rico for money borrowed directly by the Free Associated State of Puerto Rico evidenced through bonds or promissory notes for which obligations the good faith and credit and the power to impose contributions of the Free Associated State were committed shall be issued by the Free Associated State of Puerto Rico if the total of (i) the amount for the concept of the principal and interests over those bonds and promissory notes over the totality of those bonds and promissory notes, until then issued by the Free Associated State and in circulation, payable in any fiscal year immediately preceding the current fiscal year and (ii) whatever amounts paid by the Free Associated State for the fiscal year immediately preceding the current for the concept of principal and interests corresponding to whatever obligations evidenced by bonds and promissory notes guaranteed by the Free Associated State, exceed 15% of the average of the total amount of the annual collections ("rentas") obtained in accordance to the dispositions of the laws of the Free Associated Sate as income in the Treasure of Puerto Rico during the two years immediately preceding the current fiscal year; and none of said bonds and promissory notes issued by the Free Associated State for any purpose rather than housing facilities shall be due after a 30

6

7. That even when they go as far as citing the section 2 of Article VI of the P.R. Constitution in their Complaint on various occasions, (e.g. pp.24, 55), they cite only the excerpts that serve them best and their interests and wantonly omit the portion of same clause that explicitly, expressly and specifically proscribed the issuance of debt above the fifteen 15% percent of the average of the collections for the previous two (2) years.

8. That for all the above reasons and those included in the October 14, 2015 Complaint that is included here as Exhibit 1 and made part of this MTIARDJ, Intervenor is praying that the instant Motion is granted and that this HUSDCDPR once having acquired judicial knowledge of the above, issues a Declaratory Judgment with regards to the clear application of the pertinent excerpts of Article VI, section 2 of the P.R. Constitution to the bonds brokered, issued, sold and bought that constitute part of the allegations and claims in the instant Complaint and that was very accommodatingly, conveniently, deliberately and maliciously omitted by the Plaintiffs, that clearly proscribed, the issuance of debt through bonds or any other financial instrument in excess of fifteen percent (15%) of the average of the total collections during the previous two (2) years, legally making all that debt; brokered, issued, sold and bought: unconstitutional, ergo illegal and null *ab initio*.

9. That the most probably anticipated immunity defenses that some of the Defendants in my Complaint incorporated as pleading in the instant

---

year term from the date of its issuance; and no bond or promissory note issued for housing purposes shall be due after a 40 year term from the date of its issuance; and the Free Associated State shall not guarantee any obligation evidenced through bonds or promissory notes if the total of the amount payable in any fiscal year for the concept of principal and interests over the totality of the previously referred direct obligations until then issued by the Free Associated State and in circulation and the amounts made reference to in clause (ii) exceeded 15 per cent of the average of the total amount of these annual collections.

7

Complaint in compliance with Federal Rule of Civil Procedure (FRCP) 24 may rise, same would be subject to and object of legal consideration and evaluation by this HUSDCDPR, or eventually by the Honorable U.S. Court of Appeals for the First Circuit (HUSCA1C) or even the Honorable U.S. Supreme Court (HUSSC), but in any case, the legal precedent which is controlling regarding this issue in this HUSDCDPR and the HUSCA1C is the *ratio decidendi* in El Dia, Inc. v. Rossello, 20 F. Supp. 2d 296 (D.P.R. 1998), where the Governor of P.R. and other governmental officers were **denied qualified immunity**[5], since their actions as in here were administrative in nature and the rights in this Article VI section 2 of the P.R. Constitution were more than clearly established when the Defendants chose to violate them by being derelict in their ethical, fiduciary and ministerial duties.

10. That since the Intervenor is a Pro Se IFP non-lawyer litigant, I am respectfully requesting that this HUSDCDPR appoints me legal counsel and consequentially I am hereby filing the corresponding application with its Affidavit in support together with this Motion.

11. **That I respectfully demand a jury trial and request a speedy hearing as authorized by FRCP 57.**[6]

---

[5] "Therefore, according to the functional analysis required by *Clinton v. Jones*, none of Defendants' actions, as alleged by Plaintiffs, were legislative, prosecutorial or judicial in nature, and no Defendant is entitled to absolute immunity from Plaintiffs."

Defendants argue the First Amendment right claimed by El Día is not clearly established and that they are immune from suit for monetary damages in relation to Count I. However, as we have discussed above, the **"305** right claimed by El Día was clearly established in case law before the plaintiffs filed suit. Not only have other circuits facing the identical factual situations recognized the right claimed by Plaintiffs, but also the Supreme Court and the First Circuit have decided cases which recognize this right. In light of the foregoing analysis, **we deny Defendants' motion to dismiss Count I on the basis of qualified immunity."**

[6] Rule 57. Declaratory Judgment

8

12. That I am asking this Honorable Judge to put in abeyance the consideration and evaluation of the instant Motion until the HUSCA1C decides appeal 16-2208 due to the overlapping of the facts, (the Government of P.R. issuance or guaranteeing of debt) and the applicable laws (the different sections of the Constitution of P.R.) and the controlling jurisprudence between my MTIARDJ under that appeal and the instant Complaint as a matter of deference to that forum.

So I State, Allege and Pray. Respectfully submitted today, March 2, 2017.

### CERTIFICATE OF SERVICE

I, Angel Ruiz Rivera, Intervenor, appearing here *Pro Se* and In Forma Pauperis (IFP) de facto hereby certify that I have sent a copy of this Motion To Intervene by e-mail to all the appearing attorneys of record for all the parties according to the docket record. For the specifics, see Exhibit 2.

Angel Ruiz Rivera
Intervenor
Pro Se and IFP de facto
Ext. Villa Rica AA-27
Calle Santa Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.

EXHIBITS

1. October 14, 2015 Complaint furnished with its corresponding English translation accord the Local Rule 30 of the Honorable U.S. Court of Appeals for the First Circuit (HUSCA1C).

2. List of attorneys in the record to whom the Motion will be notified by e-mail.

---

These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. §2201. Rules 38 and 39 govern a **demand for a jury trial**. The existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate. The court may order a speedy hearing of a declaratory-judgment action.

9

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

LEX CLAIMS, LLC,
JACANA HOLDINGS I, LLC,
JACANA HOLDINGS II LLC,
JACANA HOLDINGS III LLC,
JACANA HOLDINGS IV LLC,
JACANA HOLDINGS V LLC,
MPR INVESTORS LLC,
ROLSG, LLC, AND
SL PUERTO RICO FUND II L.P.

16-02374 (FAB)

COMPLAINT AND
DECLARATORY AND
INJUNCTIVE RELIEF

PLAINTIFFS

V.

RICARDO ROSELLO NEVAREZ*
in his official capacity as Governor of the
Commonwealth of Puerto Rico.

RAUL MALDONADO GAUTIER*
in his official capacity as Secretary of the
Treasury of the Commonwealth of Puerto Rico.

JOSE I. MARRERO ROSADO*
In his official capacity as Director of the
Office of Management and Budget of the
Commonwealth of Puerto Rico.

* presently holding these positions

THE PUERTO RICO SALES TAX
FINANCING CORPORATION (COFINA)

JUAN VAQUER
In his Official capacity as Executive Director
Of the Puerto Rico Sales Tax Corporation and

BANK OF NEW YORK MELLON CORP.

DEFENDANTS

**COMPLEMENTARY MOTION TO MOTION TO INTERVENE AND
REQUESTING DECLARATORY JUDGMENT**

**TO THE HONORABLE U.S. DISTRICT COURT FOR THE DISTRICT OF P.R.
(HUSDCDPR):**

Comes now, the Intervenor, Angel Ruiz Rivera, appearing here Pro Se (PS) and *In Forma Pauperis* (IFP) and respectfully States, Alleges and Prays as follows:

I.    Introduction

In order for this HUSDCDPR or any court that may end deciding upon the claims and counterclaims by the scores and scores of parties in this and related civil actions (regardless of whether they may end being consolidated or not), same must be in an informed position so that it can rule with judicial knowledge of the historical background, the facts, the applicable laws, the controlling jurisprudence, the evidence and all the factors that are needed to make an intelligent, equitable and just decision.

In order to aid this HUSDCDPR reach such an informed position by acquiring the judicial knowledge it needs in order to become able to make that intelligent, equitable and just decision, I am sharing the historical background of section 2 of Article VI of the Constitution of P.R., (P.R. Constitution) which I invoked as the basis of my Motion To Intervene And Requesting Declaratory Judgment (MTIARDJ) so that it may rule with the correct and proper perspective.

We all know there is a complex classification, or taxonomy among the P.R. Government debt creditors ranging from the so-called government obligations (go's) creditors; the financial guaranty ("Ambac" and others) insurance companies creditors; the COFINA creditors, which are sub-classified in "Major" and "Senior" and  "Subordinate", the Puerto Rico Funds creditors, the banks creditors, public corporations creditors, the municipalities creditors,  the cooperatives creditors and independent individual creditors.

2

II.     Historical Background of Article VI section 2 of the Puerto Rican

Constitution (P.R. Constitution) constitutional amendment

The first law that provided for the main issue of all the ones here, which

undoubtedly is the hierarchical order of prelation or rank among creditors of the

P.R. Government debt when it comes to decide who legally is above or before

the other creditors at the juncture of legally deciding at the time to be paid,

who's who among the creditors of the P.R. Government, was the **Foraker Act

of 1900**. This federal law provided for this issue as follows:

> Sec. 38. That no export duties shall be levied or collected on exports
> from Porto Rico; but taxes and assessments on property, and license
> fees for franchises, privileges, and concessions may be imposed for the
> purposes of the insular and municipal governments, respectively, as may
> be provided and defined by act of the legislative assembly; and where
> necessary to anticipate taxes and revenues, bonds and other obligations
> may be issued by Porto Rico or any municipal government therein as
> may be provided by law to provide for expenditures authorized by law,
> and to protect the public credit, and to reimburse the United States for
> any moneys which have been or may be expended out of the emergency
> fund of the War Department for the relief of the industrial conditions of
> Porto Rico caused by the hurricane of August eighth, eighteen hundred
> and ninety-nine: Provided, however, **That no public indebtedness of
> Porto Rico or of any municipality thereof shall be authorized or
> allowed in excess of seven per centum of the aggregate tax
> valuation of its property**. See Exhibit 1 here.

The next expression from the U.S. Congress regarding this issue was found in

the Jones-Shafroth Act of 1917. This is what this federal law provided with

regards to this issue. See Exhibit 2 here.

3

SIXTY-FOURTH CONGRESS. Sess. II. Ch. 145. 1917.     953

Sec. 3. That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico or any municipal government therein as may be provided by law, and to protect the public credit: *Provided, however,* That no public indebtedness of Porto Rico or of any subdivision or municipality thereof shall be authorized or allowed in excess of seven per centum of the aggregate tax valuation of its property, and all bonds issued by the government of Porto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the government of Porto Rico or of any political or municipal subdivision thereof, or by any State, or by any county, municipality, or other municipal subdivision of any State or Territory of the United States, or by the District of Columbia. In computing the indebtedness of the people of Porto Rico, bonds issued by the people of Porto Rico secured by an equivalent amount of bonds of municipal corporations or school boards of Porto Rico shall not be counted.

Special attention should be given to the last sentence of this section which

mandated or ordered: "In computing the indebtedness of the people of

Porto Rico, bonds issued by the people of Porto Rico secured by an

equivalent amount of bonds of municipal corporations or school boards

of Porto Rico shall not be counted."

The other section of this Jones-Shafroth federal law that is clearly

applicable and pertinent to the key legal issue of the prelation among the

creditors that this HUSDCDPR faces is section 34, last paragraph of page 962

and first paragraphs of page 963, included here as Exhibit 3 and cited below.

In case the available revenues of Porto Rico for any fiscal
year including available surplus in the insular treasury,
are insufficient to meet all the appropriations made by the
legislature for such year, such appropriations shall be
paid in the following order, unless otherwise directed by
the governor:

4

SIXTY-FOURTH CONGRESS. Sess. II. Ch. 145. 1917.      963

First class. The ordinary expenses of the legislative, executive, and judicial departments of the State government, and interest on any public debt, shall first be paid in full.

Second class. Appropriations for all institutions, such as the penitentiary, insane asylum, industrial school, and the like, where the inmates are confined involuntarily, shall next be paid in full.

Third class. Appropriations for education and educational and charitable institutions shall next be paid in full.

Fourth class. Appropriations for any other officer or officers, bureaus or boards, shall next be paid in full.

Fifth class. Appropriations for all other purposes shall next be paid.

That in case there are not sufficient revenues for any fiscal year, including available surplus in the insular treasury, to meet in full the appropriations of said year for all of the said classes of appropriations, then said revenues shall be applied to the classes in the order above named, and if, after the payment of the prior classes in full, there are not sufficient revenues for any fiscal year to pay in full the appropriations for that year for the next class, then, in that event, whatever there may be to apply on account of appropriations for said class shall be distributed among said appropriations pro rata according as the amount of each appropriation of that class shall bear to the total amount of all of said appropriations for that class for such fiscal year.

No appropriation shall be made, nor any expenditure authorized by the legislature, whereby the expenditure of the Government of Porto Rico during any fiscal year shall exceed the total revenue then provided for by law and applicable for such appropriation or expenditure, including any available surplus in the treasury, unless the legislature making such appropriation shall provide for levying a sufficient tax to pay such appropriation or expenditure within such fiscal year.

As anyone can see, this federal law expressly provided for a specific order of prelation when it came to deciding what or who was to be paid first once and if the "Government of Porto Rico" fell into a deficitarial scenario.

The Jones-Shafroth Act suffered several amendments until the enactment of the next applicable federal law, the Public Law 81-600 in 1950. Below I include the significant and pertinent ones for this discussion.

SIXTY-SIXTH CONGRESS. Suss. III.. Cns. "34, 35. 1921.
CHAP. 34 .–An Act To amend an Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes," approved March 2, 1917 .
Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That paragraph 19 of section 2 of the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes," approved March 2, 1917, is hereby amended to read as follows :
"That no public money or property shall ever be appropriated, applied, donated, used, directly or

5

indirectly, for the use, benefit, or support of any sect, church, denomination sectarian institution, or association, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary as such. Contracting of polygamous or plural marriages hereafter is prohibited." SEC.2. That section 3 of said Act to provide a civil government for Porto Rico is hereby amended to read as follows:

"SEC.3. <u>That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico;</u> and, <u>when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico or any municipal government therein as may be provided by law, and to protect the public credit: Provided however, That no public indebtedness of Porto Rico or of any subdivision or municipality thereof shall be authorized or allowed in excess of 10 per centum of the aggregate tax valuation of its property,</u> and all bonds issued by the government of Porto Rico, or by its authority, shall be exempt from taxation by the Government of the United States or by the government of Porto Rico or of any political or municipal subdivision thereof, or by any State, or by any county, municipality, or other municipal subdivision of any State or Territory of the United States, or by the District of Columbia. <u>In computing the indebtedness of the people of Porto Rico, bonds issued by the people of Porto Rico secured by an equivalent amount of bonds of municipal corporations or school boards of Porto Rico shall not be counted.</u>" Approved, February 3, 1921. See Exhibit 4 here.

The Jones-Shafroth Act of 1917 was also amended in 1921 according to the

Office of the Law Revision Counsel of the U.S. House of Representatives with

regards to the key issue here. See Exhibits 5 and 6 here.

48 USC 741: Export duties, taxes, etc.; bonds to anticipate revenues Text contains those laws in effect on March 12, 2017
**From Title 48-TERRITORIES AND INSULAR POSSESSIONS**CHAPTER 4-PUERTO RICOSUBCHAPTER I-GENERAL PROVISIONS

### §741. Export duties, taxes, etc.; bonds to anticipate revenues

No export duties shall be levied or collected on exports from Puerto Rico, <u>but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be</u>

6

**provided and defined by the Legislature of Puerto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Puerto Rico or any municipal government therein as may be provided by law, and to protect the public credit.**

(Mar. 2, 1917, ch. 145, §3, 39 Stat. 953 ; Feb. 3, 1921, ch. 34, §2, 41 Stat. 1096 ; Mar. 4, 1927, ch. 503, §1, 44 Stat. 1418 ; Aug. 26, 1937, ch. 831, 50 Stat. 843 .)

48 USC 745: Tax exempt bonds Text contains those laws in effect on March 12, 2017 From Title 48-TERRITORIES AND INSULAR POSSESSIONSCHAPTER 4-PUERTO RICOSUBCHAPTER I-GENERAL PROVISIONS

## §745. Tax exempt bonds

**All bonds issued by the Government of Puerto Rico, or by its authority, shall be exempt from taxation** by the Government of the United States, or by the Government of Puerto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other municipal subdivision of any State, Territory, or possession of the United States, or by the District of Columbia.

(Mar. 2, 1917, ch. 145, §3, 39 Stat. 953 ; Feb. 3, 1921, ch. 34, §2, 41 Stat. 1096 ; Mar. 4, 1927, ch. 503, §1, 44 Stat. 1418 ; Aug. 26, 1937, ch. 831, 50 Stat. 844 ; Aug. 17, 1950, ch. 731, 64 Stat. 458 ; Pub. L. 87–121, §1, Aug. 3, 1961, 75 Stat. 245 .)

The Jones-Shafroth Act of 1917 was also amended in 1927 according to the

Office of the Law Revision Counsel of the U.S. House of Representatives, see

Public Law No.797, of March 4, 1927, Sixty-ninth Congress, Session II, Chapter

503, page 1418, et seq. For the entire amendment see Exhibit 7 here.  With

regards to the key legal issue under discussion here see the following.

SEC.3. That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico or any municipal government therein as may be provided by law, and to protect the public credit: Provided, however, That no public indebtedness of Porto Rico, and the municipalities of San Juan and Ponce shall be allowed, in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Porto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any subdivision or municipality, and all bonds issued by the government of Porto Rico, or by its

7

authority, shall be exempt from taxation by the Government of the United States, or by the government of Porto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other municipal subdivision of any State, Territory, or Existing secured bonds not computed possession of the United States, or by the District of Columbia. **In computing the indebtedness of the people of Porto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Porto Rico has heretofore been pledged and bonds issued by the people of Porto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Porto Rico shall not be counted, but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Porto Rico is pledged shall be counted.**

"And it is further provided, That the internal-revenue taxes levied Collection, by the Legislature of Porto Rico in pursuance of the authority granted by this Act on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island : Provided, That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Porto Rico. The officials of the Customs and Postal Services of the United States are hereby directed to assist the appropriate officials of the Porto Rican government in the collection of these taxes."

On May 17, 1932, the Jones-Shafroth Act of 1917 was amended again but

those amendments are not pertinent to the key legal issue in discussion here. [1]

---

[1] **§731. Territory included under name Puerto Rico**
   The provisions of this chapter shall apply to the island of Puerto Rico and to the adjacent islands belonging to the United States and waters of those islands; and the name Puerto Rico, as used in this chapter, shall be held to include not only the island of that name, but all the adjacent islands as aforesaid.

(Mar. 2, 1917, ch. 145, §1, 39 Stat. 951; May 17, 1932, ch. 190, 47 Stat. 158.)

**§731a. Change of name; Puerto Rico**
   From and after May 17, 1932, the island designated "Porto Rico" in the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes," approved March 2, 1917, as amended, shall be known and designated as "Puerto Rico." All laws, regulations, and public documents and records of the United States in which such island is designated or referred to under the name of "Porto Rico" shall be held to refer to such island under and by the name of "Puerto Rico."

On August 3, 1935, and August 13, 1935 the Jones-Shafroth Act of 1917 was amended again. The following amendments are pertinent to the key legal issue under discussion here.

### §745a. Public improvement bonds sold to United States or agency thereof excluded from public indebtedness

Bonds or other obligations of Puerto Rico or any municipal government therein, payable solely from revenues derived from any public improvement or undertaking (which revenues may include transfers by agreement or otherwise from the regular funds of the issuer in respect of the use by it of the facilities afforded by such improvement or undertaking), **and issued and sold to the United States of America or any agency or instrumentality thereof, shall not be considered public indebtedness of the issuer within the meaning of section 745 of this title.**

(Aug. 13, 1935, ch. 516, 49 Stat. 611.) See Exhibit 8 here.

### §745b. Refunding bonds excluded temporarily in computing indebtedness

Any bonds or other obligations of Puerto Rico issued after August 3, 1935, for the purpose of retiring previously outstanding bonds or obligations shall not be included in computing the public indebtedness of Puerto Rico under section 745 of this title, **until six months after their issue.** (Aug. 3, 1935, ch. 435, 49 Stat. 516.) See Exhibit 9 here.

---

(May 17, 1932, ch. 190, 47 Stat. 158.)

### §733. Citizens; former Spanish subjects and children; body politic; name

All inhabitants continuing to reside in Puerto Rico who were Spanish subjects on the 11th day of April 1899, and then resided in Puerto Rico, and their children born subsequent thereto, shall be deemed and held to be citizens of Puerto Rico, and as such entitled to the protection of the United States, except such as shall have elected to preserve their allegiance to the Crown of Spain on or before the 11th day of April 1900, in accordance with the provisions of the treaty of peace between the United States and Spain entered into on the 11th day of April 1899; and they, together with such citizens of the United States as may reside in Puerto Rico, shall constitute a body politic under the name of the People of Puerto Rico, with governmental powers as hereinafter conferred, and with power to sue and be sued as such.

(Apr. 12, 1900, ch. 191, §7, 31 Stat. 79; May 17, 1932, ch. 190, 47 Stat. 158.)

### §733a. Citizens; residence in island of citizens of United States

All citizens of the United States who have resided or who shall after March 4, 1927, reside in the island for one year shall be citizens of Puerto Rico.

(Mar. 2, 1917, ch. 145, §5a, as added Mar. 4, 1927, ch. 503, §2, 44 Stat. 1418; amended May 17, 1932, ch. 190, 47 Stat. 158.)

9

On August 26, 1937, the Jones-Shafroth Act of 1917 was amended again.[2] The following amendment is pertinent to the key legal issue under discussion here.

### §741a. Internal-revenue taxes; levy and collection; discrimination

The internal-revenue taxes levied by the Legislature of Puerto Rico in pursuance of the authority granted by this chapter on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: *Provided*, That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico. The officials of the Customs and Postal Services of the United States are directed to assist the appropriate officials of the Puerto Rican government in the collection of these taxes. (Mar. 2, 1917, ch. 145, §3, 39 Stat. 953; Mar. 4, 1927, ch. 503, §1, 44 Stat. 1418; Aug. 26, 1937, ch. 831, 50 Stat. 844.) Exhibit 10 here.

The next applicable federal law was Public Law 81-600 of July 3, 1950 which authorized the people of P.R. to adopt their own Constitution. It also served to amend all the sections in the Jones-Shafroth Act of 1917, hereinafter called the Federal Relations Act, that were considered to become duplicative, superfluous or unnecessary, once the new Constitution of P.R. became effective. See Exhibit 11 here.

SEC. 4. Except as provided in section 5 of this Act, the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes", approved March 2, 1917, as amended, **is hereby continued in force and effect** and may **hereafter be cited as the "Puerto Rican Federal Relations Act"** .

---

[2] On August 17, 1950, [Public Law 708] was enacted to amend the Jones-Shafroth Act of 1917.
To amend section 3 of the Organic Act of Puerto Rico.
Be it enacted by the Senate and House o f Representatives of the United States of America in Congress assembled, That section 3 of the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes", approved March 2, 1917, as amended, is hereby amended by inserting in the first proviso after the word "Ponce" a comma and the words "Arecibo, Rio Piedras". Approved August 17, 1950.

PUBLIC LAWS—CHS. 446, 449, 452—JULY 3, 6, 7, 1950    [64 STAT.

SEC. 5. At such time as the constitution of Puerto Rico becomes effective, the following provisions of such Act of March 2, 1917, as amended, shall be deemed repealed:

(1) Section 2, except the paragraph added thereto by Public Law 362, Eightieth Congress, first session, approved August 5, 1947.

(2) Sections 4, 12, 12a, 13, 14, 15, 16, 17, 18, 18a, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 39, 40, 49, 49b, 50, 51, 52, 53, 56, and 57.

(3) The last paragraph in section 37.

(4) Section 38, except the second paragraph thereof which begins with the words "The Interstate Commerce Act" and ends with the words "shall not apply in Puerto Rico".

SEC. 6. All laws or parts of laws inconsistent with this Act are hereby repealed.

Approved July 3, 1950.

The most significant aspect of this federal law (Public Law 81-600) for what is pertinent to the gist of our discussion here is that **section 3 of the Jones Shafroth Act of 1917 was not repealed.** **"In computing the indebtedness of the people of Porto Rico, bonds issued by the people of Porto Rico secured by an equivalent amount of bonds of municipal corporations or school boards of Porto Rico shall not be counted."**

On August 17, 1950 the Jones-Shafroth Act of 1917 suffered another amendment but a very minor one not relevant to this discussion.[3] The next applicable law that came into being was the Constitution of P.R. which as already seen had been authorized by a federal law (Public Law 81-600),[4] which

---

[3] 64 STAT. 1 81ST CONG., 2D SESS.-CHS. 731-734.-AUG. 17, 1950
To amend section 3 of the Organic Act of Puerto Rico.
*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled: That section 3 of the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes", approved March 2, 1917, as amended, is hereby amended by inserting in the first proviso after the word "Ponce" a comma and the words "Arecibo, Rio Piedras". Approved August 17, 1950. Exhibit 16.*

[4] [CHAPTER 446]
AN ACT July 3, 1950
To provide for the organization of a constitutional government by the people of Puerto Rico.
Whereas the Congress of the United States by a series of enactments has progressively recognized the right of self-government of the people of Puerto Rico ; and

11

was approved by the People of P.R. in a referendum on June 4, 1951, drafted

by members of a Constitutional Convention, submitted to the U.S. Congress for

approval [that amended two (2) clauses–see underlined, clauses in footnote 3],

ratified by another federal law, Public Law 447 (July 3, 1952–Exhibit 12 here)[5]

---

Whereas under the terms of these congressional enactments an
increasingly large measure of self-government has been achieved:
Therefore Be it enacted by the Senate and House of
Representatives of the United States of America in Congress
assembled, **That, fully recognizing the principle of government
by consent, this Act is now adopted in the nature of a compact
so that the people of Puerto Rico may organize a government
pursuant to a constitution of their own adoption.**
SEC. 2 . **This Act shall be submitted to the qualified voters of
Puerto Rico for acceptance or rejection through an island-wide
referendum** to be held in accordance with the laws of Puerto
Rico. Upon the approval of this Act, by a majority of the voters
participating in such referendum, **the Legislature of Puerto Rico
is authorized to call a constitutional convention to draft a
constitution for the said island of Puerto Rico.** The said
constitution shall provide a republican form of government and
shall include a bill of rights.
SEC. 3. **Upon adoption of the constitution by the people of
Puerto Rico, the President of the United States is authorized to
transmit such constitution to the Congress of the United States**
if he finds that such constitution conforms with the applicable
provisions of this Act and of the Constitution of the United
States. **Upon approval by the Congress the constitution shall
become effective in accordance with its terms.**

[5] 66 S T A T .] PUBLIC LAW 447–JULY 3, 1952
Public Law 447 CHAPTER 567 JOINT RESOLUTION Approving the constitution of the
Commonwealth of Puerto Rico which was [H.J.Res. 430] adopted by the people of Puerto Rico
on March 3, 1952.
Whereas the Act entitled "**An Act to provide for the organization of a constitutional
government by the people of Puerto Rico", approved July 3, 1950, was adopted by the
Congress as a compact with the people of Puerto Rico,** to become operative upon its
approval by the people of Puerto Rico: and Whereas **the people of Puerto Rico
overwhelmingly approved such Act in a referendum held on June 4, 1951,** and a
constitution for the Commonwealth of Puerto Rico was drafted by a constitutional convention
held as provided by such Act from September 17, 1951, to February 6, 1952; and
Whereas **such constitution was adopted by the people of Puerto Rico, by a vote of three
hundred seventy-four thousand six hundred and forty-nine to eighty-two thousand nine
hundred and twenty-three, in a referendum held on March 3, 1952;** and
Whereas the President of the United States has declared that the constitution of the
Commonwealth of Puerto Rico conforms fully with the applicable provisions of such Act of
July 3, 1950, and of the Constitution of the United States, that it contains a bill of rights,
and provides for a republican form of government. and has transmitted the constitution of the
Commonwealth of Puerto Rico to the Congress for its approval; and

and adopted by the Constitutional Convention members as amended by the U.S. Congress, finally approved by the People of P.R. in another referendum on March 3, 1952, (with 374,649 or 81.9%; yes: to 82,923 or 18.1%; no with a total vote of 457,572) and proclaimed by the Government of P.R. on July 25, 1952. The pertinent part of the P.R. Constitution for this discussion is section 2 of Article VI which stated:

Section 2. The power of the Commonwealth of Puerto Rico to impose and collect taxes and to authorize their imposition and collection by municipalities shall be exercised as determined by the Legislative Assembly and shall never be surrendered or suspended. **The power of the Commonwealth of Puerto Rico to contract and to authorize the contracting of debts shall be exercised as determined by the Legislative Assembly, but no direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith credit and taxing power of the Commonwealth shall be pledged shall be issued by the Commonwealth if the total of (i) the amount**

---

Whereas the Congress has considered the constitution of the Commonwealth of Puerto Rico and has found it duly to conform to the above requirements:

Therefore be it *Resolved by the Senate and House of Representatives of the United States of America in Congress assembled^*

That the constitution of the Commonwealth of Puerto Rico which was drafted by the selected delegates to the Constitutional Convention of Puerto Rico and adopted by the people of Puerto Rico in a referendum of March 3, 1952, in accordance with the Act entitled "An Act to provide for the organization of a constitutional government by the people of Puerto Rico", approved July 3, 1950 (64 Stat. 319; 48 U. S. C, sees. 731b^73 l e ) , is hereby approved by the Congress of the United States, except section 20 of article II of said constitution: *Provided^* That section 5 of article II thereof shall have no force and effect until amended by the people of Puerto Rico under the procedure prescribed by article VII of the constitution of the Commonwealth of Puerto Rico by adding to such section 5 the following declaration: "Compulsory attendance at elementary public schools to the extent permitted by the facilities of the state as herein provided shall not be construed as applicable to those who receive elementary education in schools established under nongovernmental auspices"; *Provided further^* That except for the purpose of adopting the amendments to section 5 of article II and to section 3 of article VII as herein provided, article VII of said constitution likewise shall have no force and effect until amended by the people of Puerto Rico under the terms of said article by adding to section 3 of article VII the following new sentence: "Any amendment or revision of this constitution shall be consistent with the resolution enacted by the Congress of the United States approving this constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public 39 stat. 951. Law 600, Eighty-first Congress, adopted in the nature of a compact": 48use731 note, *And provided further^* That the constitution of the Commonwealth 73ib.73ie. of Puerto Rico hereby approved shall become effective when the Constitutional Convention of Puerto Rico shall have declared in a formal resolution its acceptance in the name of the people of Puerto Rico of the conditions of approval herein contained, and when the Governor of Puerto Rico, being duly notified by the proper officials of the Constitutional Convention of Puerto Rico that such resolution of acceptance has been formally adopted, shall issue a proclamation to that effect. Approved July 3, 1952. - **Puerto Rico.** 328 PUBLIC LAW 448-JULY 3, 1952 [66 STAT.]

of principal of and interest on such bonds and notes, together with the amount of principal of and interest on all such bonds and notes theretofore issued by the Commonwealth and then outstanding, payable in any fiscal year and (ii) any amounts paid by the Commonwealth in the fiscal year next preceding the then current fiscal year for principal or interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth, **shall exceed 15% of the average of the total amount of the annual revenues raised under the provisions of Commonwealth legislation and covered into the Treasury of Puerto Rico in the two fiscal years next preceding the then current fiscal year; and no such bonds or notes issued by the Commonwealth for any purpose other than housing facilities shall mature later than 30 years from their date and no bonds or notes issued for housing facilities shall mature later than 40 years from their date; and the Commonwealth shall not guarantee any obligations evidenced by bonds or notes if the total of the amount** payable in any fiscal year on account of principal of and interest **on all the direct obligations referred to above theretofore issued by the Commonwealth and then outstanding and the amounts referred to in item (ii) above shall exceed 15 percent of the average of the total amount of such annual revenues.**

The Legislative Assembly shall fix limitations for the issuance of direct obligations by any of the municipalities of Puerto Rico for money borrowed directly by such municipality evidenced by bonds or notes for the payment of which the full faith, credit and taxing power of such municipality shall be pledged; **provided, however, that no such bonds or notes shall be issued by any municipality in an amount which, together with the amount of all such bonds and notes theretofore issued by such municipality and then outstanding, shall exceed the percentage determined by the Legislative Assembly, which shall be not less than five per centum (5%) nor more than ten per centum (10%) of the aggregate tax valuation of the property within such municipality.**

The Secretary of the Treasury may be required to apply the available revenues including surplus to the payment of interest on the public debt and the amortization thereof in any case provided for by Section 8 of this Article VI at the suit of any holder of bonds or notes issued in evidence thereof. See Exhibit 13 here.

This section 2 of Article VI of the P.R. Constitution is the one upon which I base

my main allegations in my timely filed MTIARDJ, claiming that this HUSDCDPR

should declare that all of the debt issued and sold above the limits prescribed

here was unconstitutional, and consequentially illegal and null ab initio as its

most proximate legal concomitant.  This section was amended as a result of a

referendum held on December 10, 1961[9] which was ordered by Law Num. 1 of

---

[9] The referendum results were 385,369 "Yes's" for 82.8% to 80,224 "No's" for 17.2% representing a total of 465,593 voters. These results reveal 8,021 more voters than in

14

September 29, 1961(Exhibit 14) and which had been previously authorized by

the U.S. Congress in Public Law 87-121 of August 3, 1961 (Exhibit 15), through

House Joint Resolution 124.

"To provide for amending section 3 of the Puerto Rico Federal Relations Act
(64 Stat. 319) as amended (64 Stat. 458)."

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458), is amended by deleting therefrom the following language: "*Provided, however,* That no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Rio Piedras and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," and "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted."

SEC. 2.  Section 1 of this Act shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth).

Approved August 3, 1961.

*Puerto Rican Federal Relations Act, amendment. 70 Stat. 345. 48 USC 745.*

*Effective date. Public referendum. 48 USC 731d note.*

In summary, section 2 of Article VI of the P.R. Constitution, establishing the

debt limit that could be incurred by the Commonwealth, was approved in the

referendum held on December 10, 1961, authorized my Law Num 1 of

September 29, 1961 that had been explicitly, expressly, specifically and

approved by Congress of August 3, 1961 in Public Law 87-121.

the 1952 referendum approving the Constitution with 10,720 more yes's and 2,699 less No's. Source: DISPOSICIONES SOBRE LA DEUDA PUBLICA EN LA CONSTITUCION DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO: BREVE REFLEXION HISTORICA-CONSTITUCIONAL PONENCIA Lcdo. CARLOS E. RAMOS GONZALEZ* Catedrático de la Facultad de Derecho de la Universidad Interamericana de Puerto Rico. 85 Rev. Jur. U.P.R. 705 2016.

This unique history gives this section 2 of article VI more relevance and significance since it was and has remained, as the only amendment to the P.R. Constitution pre-approved by Congress. Not only that, but Congress pre-approved that same amendment to the P.R. Constitution was to amend section 3 of the Jones-Shafroth Act which had not been repealed by the subsequent amendments of that law nor my the Public Law 600 of July 3, 1950 which amended same Jones-Shafroth Act and changed its name to Puerto Rican Federal Relations Act. In anticipation of the probable approval of the section 2 Article VI amendment to the P.R. Constitution in the December 10, 1961 referendum to those effects, Congress went as far as on August 3, 1961, ordering, as we have seen, that it became part of the Puerto Rican Federal Relations Act "in lieu of the provisions of section 3 specified herein, limiting the debt-incurring capacity of the Commonwealth and all of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth)".

As anyone can see, it is difficult to even fathom a clause of the P.R. Constitution with more force and effect than section 2 Article VI given the fait accompli that it was specifically pre-approved by Congress as proposed by the P.R. legislature subject to an anticipated approval by the People of P.R. in a referendum for those specific effects. Congress went even further, Congress eliminated clauses in the Puerto Rican Federal Relations Act that had been in effect since the Jones Act of 1917, (although with certain amendments through time) in deference and respect to the amendment proposed by the Government of P.R. to establish constitutional limits to the amount of debt level that could be issued.

16

Now if you look into the clause itself you must agree that it made perfect sense. First it restricted the debt limit subject to the revenues collected which constitute the source of repayment. Since there could be one good year and another bad year it did not restrict the debt limit to the previous fiscal year revenues but allowed and provided for the previous two fiscal years and the average of the revenues collected in both of them years. Not only that, but in order to provide some flexibility and leeway in order not to straitjacket the investment needed for the development and economic growth the Archipelago of P.R. was then undergoing, it provided for a generous fifteen (15%) percent margin of overdraft over the average of the revenues collected in the previous two years.

III. Summary Of Argument

For all the above reasons, this HUSDCDPR does not have any reason in law not to issue a declaratory judgment ruling that this section 2 of Article VI of the P.R. Constitution, approved by the December 10, 1961 referendum, and explicitly, expressly, and specifically approved by Congress of August 3, 1961 in Public Law 87-121, is applicable and controlling here. Once this HUSDCDPR issues the granting of this declaratory judgment petitioned in my timely filed MTIARDJ and reiterated here, all the debt that was issued in excess of the limits in same section 2 Article VI should be declared and ruled null ab initio as requested.

Obviously, which bonds and other obligations, for what amounts, and when were issued in excess of the limits prescribed by this section 2 of Article VI of the P.R. Constitution, will be subject to and object of subsequent allegations, arguments, discovery, evidence, expert witnesses, and testimonies.

17

by the Plaintiffs, Defendants and all intervenors. This HUSDCDPR will have the historical position and responsibility of considering, determining and ruling accord all of the above, depending upon the evaluation of all of the above and thy judicial discretion, which criteria or standard is going to be utilized in order to determine which portion of the debt was incurred into unconstitutionally and which consequentially must be legally voided and who or which parties are going to pay for this wrongful and negligent conduct.

One criteria or standard could be merely quantitative in nature using the old first come –first served basis as the rule, which would accordingly approve of all the debt issued each year until the cap or top was reached and rule all the one in excess as void, regardless of its category, class or type.

Other criteria or standard could be establishing a qualitative rule and considering the general obligations (go's) first; the municipalities obligations, second; the public corporations obligations, third; and the COFINA obligations, fourth, or whichever prelation order this HUSDCDPR may elect based upon its judicial discretion. Of course, there is no limit to the legal authority and judicial discretion of this HUSDCDPR in terms of deciding what order of prelation it will decide in order to resolve this controversy among so many classes of creditors.

The same principle applies to what percentage of the civil legal public liability this HUSDCDPR is going to impose upon all the parties that; consciously or unconsciously, intentionally or non-intentionally, violated Section 2 of Article VI of the P.R. Constitution, making millions of dollars in profit and expecting to continue to bilk billions of dollars from the residents of P.R., like myself and all those similarly situated that have been pre-paying and are expected to continue pre-paying for the next forty (40) years, the scores and

scores of taxes that have been unjustly imposed over us during the past years and that are planned to be imposed for the future years, to pay for unconstitutional and illegal debt incurred into by government officers, bankers, brokers, and directors and officers of the Government Development Bank, public corporations, insurance companies, banks and financial firms, law firms, and others who I timely named in the Complaint I integrated as part of my timely MTIARDJ in the Assured Guaranty Corp. Et Al. action [16-01037(FAB)] and the instant one, who were derelict in their ethical, fiduciary and ministerial duties.

III.    Final Note

I have done my best to try to persuade thy Honor, that by granting my timely file MTIARDJ in related civil action 16-01037 (FAB) and the instant one, consequentially thou benefit from them because they place thou in an advantageous, unique and almost utopian position to provide for Justice to all the parties involved, which will allow you to make each responsible party pay the proportional corresponding price for its errors and administer and manage Justice in such a way that the disadvantaged, poor and vulnerable People of Puerto Rico, including our grand children and our great grandchildren do not have to pay for the errors of their parents and grandparents who were unconstitutionally negligent.

IV.    Conclusion

For all the above stated reasons, I pray that this HUSDCDPR grants my timely filed MTIARDJ and issues the declaratory judgment petitioned therewith and reiterated here, that the evidence produced here more than justifies. In the alternative, I pray that this Motion is considered and taken as a Notice of Appeal if this HUSDCDPR decides to the contrary and denies same.

19

So I State, Allege and Pray. Respectfully submitted, today, March 15,
2017.

### CERTIFICATE OF SERVICE

I, Angel Ruiz Rivera, putative Intervenor, appearing here *Pro Se* and *In Forma
Pauperis* (IFP) hereby certify that I have sent a copy of this Motion To Intervene
by e-mail to all the appearing attorneys of record for all the parties according to
the docket record.

Angel Ruiz Rivera
Intervenor
Pro Se and IFP
Ext. Villa Rica AA-27
Calle Santa Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.

20

Case:17-03283-LTS   Doc#:4776-1   Filed:01/14/19   Entered:01/14/19 16:16:44   Desc:
Exhibit Docket Exhibits - 17-bk-3283   Page 54 of 92

No export duties.

Legislature may tax, etc.

Bond issues, etc.

Sec. 38. That no export duties shall be levied or collected on exports from Porto Rico; but taxes and assessments on property, and license fees for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by act of the legislative assembly; and where necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico or any municipal government therein as may be provided by law to provide for expenditures authorized by law, and to protect the public credit, and to reimburse the United States for any moneys which have been or may be expended out of the emergency fund of the War Department for the relief of the industrial conditions of Porto Rico caused by the hurricane of August eighth, eighteen hundred and ninety-nine: *Provided, however,* That no public indebtedness of Porto Rico or of any municipality thereof shall be authorized or allowed in excess of seven per centum of the aggregate tax valuation of its property.

Proviso.
—limit.

Resident commissioner to United States.

Sec. 39. That the qualified voters of Porto Rico shall, on the first Tuesday after the first Monday of November, anno Domini nineteen hundred, and every two years thereafter, choose a resident commissioner to the United States, who shall be entitled to official recognition as such by all Departments, upon presentation to the Department of State of a certificate of election of the governor of Porto Rico, and who shall be entitled to a salary, payable monthly by the United States, at the rate of five thousand dollars per annum: *Provided,* That no person shall be eligible to such election who is not a bona fide citizen of Porto Rico, who is not thirty years of age, and who does not read and write the English language.

Proviso.
—qualifications.

Commission to report on permanent system of government, etc.

Sec. 40. That a commission, to consist of three members, at least one of whom shall be a native citizen of Porto Rico, shall be appointed by the President, by and with the advice and consent of the Senate, to compile and revise the laws of Porto Rico; also the various codes of procedure and systems of municipal government now in force, and to frame and report such legislation as may be necessary to make a simple, harmonious, and economical government, establish justice and secure its prompt and efficient administration, inaugurate a general system of education and public instruction, provide buildings and funds therefor, equalize and simplify taxation and all the methods of raising revenue, and make all other provisions that may be necessary to secure and extend the benefits of a republican form of government to all the inhabitants of Porto Rico; and all the expenses of such commissioners, including all necessary clerks and other assistants that they may employ, and a salary to each member of the commission at the rate of five thousand dollars per annum, shall be allowed and paid out of the treasury of Porto Rico as a part of the expenses of the government of Porto Rico.   And said commission shall make full and final report, in both the English and Spanish languages, of all its revisions, compilations, and recommendations, with explanatory notes as to the changes and the reasons therefor, to the Congress on or before one year after the passage of this Act.

—expenses.

—to report within a year.

Effect.

Sec. 41. That this Act shall take effect and be in force from and after the first day of May, nineteen hundred.

Approved, April 12, 1900.

April 17, 1900.

**CHAP. 192.**—An Act Making appropriations for the legislative, executive, and judicial expenses of the Government for the fiscal year ending June thirtieth, nineteen hundred and one, and for other purposes.

Legislative, executive, and judicial expenses appropriations.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the following sums be, and the same are hereby, appropriated, out of any money in the Treasury not otherwise appropriated, in full compensation for the service

SIXTY-FOURTH CONGRESS. Sess. II. Ch. 145. 1917.          953

Sec. 3. That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico or any municipal government therein as may be provided by law, and to protect the public credit: *Provided, however,* That no public indebtedness of Porto Rico or of any subdivision or municipality thereof shall be authorized or allowed in excess of seven per centum of the aggregate tax valuation of its property, and all bonds issued by the government of Porto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the government of Porto Rico or of any political or municipal subdivision thereof, or by any State, or by any county, municipality, or other municipal subdivision of any State or Territory of the United States, or by the District of Columbia. In computing the indebtedness of the people of Porto Rico, bonds issued by the people of Porto Rico secured by an equivalent amount of bonds of municipal corporations or school boards of Porto Rico shall not be counted.

Sec. 4. That the capital of Porto Rico shall be at the city of San Juan, and the seat of government shall be maintained there.

Sec. 5. That all citizens of Porto Rico, as defined by section seven of the Act of April twelfth, nineteen hundred, "temporarily to provide revenues and a civil government for Porto Rico, and for other purposes," and all natives of Porto Rico who were temporarily absent from that island on April eleventh, eighteen hundred and ninety-nine, and have since returned and are permanently residing in that island, and are not citizens of any foreign country, are hereby declared, and shall be deemed and held to be, citizens of the United States: *Provided,* That any person hereinbefore described may retain his present political status by making a declaration, under oath, of his decision to do so within six months of the taking effect of this Act before the district court in the district in which he resides, the declaration to be in form as follows:

"I,            , being duly sworn, hereby declare my intention not to become a citizen of the United States as provided in the Act of Congress conferring United States citizenship upon citizens of Porto Rico and certain natives permanently residing in said island."

In the case of any such person who may be absent from the island during said six months the term of this proviso may be availed of by transmitting a declaration, under oath, in the form herein provided within six months of the taking effect of this Act to the executive secretary of Porto Rico: *And provided further,* That any person who is born in Porto Rico of an alien parent and is permanently residing in that island may, if of full age, within six months of the taking effect of this Act, or if a minor, upon reaching his majority or within one year thereafter, make a sworn declaration of allegiance to the United States before the United States District Court for Porto Rico, setting forth therein all the facts connected with his or her birth and residence in Porto Rico and accompanying due proof thereof, and from and after the making of such declaration shall be considered to be a citizen of the United States.

Sec. 6. That all expenses that may be incurred on account of the government of Porto Rico for salaries of officials and the conduct of their offices and departments, and all expenses and obligations contracted for the internal improvement or development of the island, not, however, including defenses, barracks, harbors, lighthouses, buoys, and other works undertaken by the United States,

**[Marginal notes]**
Revenues.
Export duties forbidden.
General taxes.

Bonds.

*Proviso.*
Indebtedness limited.

Exemption from tax.

Secured bonds.

Capital at San Juan.

United States citizenship.
Persons entitled to.
Vol. 31, p. 79.

*Proviso.*
Retention of foreign status.

Declaration.

By absentees.

*Proviso.*
Persons of alien parentage.

All expenses from island revenues.

United States works excepted.

Case:17-03283-LTS Doc#:4776-1 Filed:01/14/19 Entered:01/14/19 16:16:44 Desc:
Exhibit Docket Exhibits - 17-bk-3283 Page 56 of 92

962          SIXTY-FOURTH CONGRESS. Sess. II. Ch. 145. 1917.

*Proviso.*
*Discharge of committees.* bers: *Provided,* That either house may by a majority vote discharge a committee from the consideration of a measure and bring it before the body for consideration.

*Subject of bills restricted.* No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed.

*Amendments, etc.* No law shall be revived, or amended, or the provisions thereof extended or conferred by reference to its title only, but so much thereof as is revived, amended, extended, or conferred shall be reenacted and published at length.

*Signing during session.* The presiding officer of each house shall, in the presence of the house over which he presides, sign all bills and joint resolutions passed by the legislature, after their titles shall have been publicly read, immediately before signing; and the fact of signing shall be entered on the journal.

*Officers and employees.* The legislature shall prescribe by law the number, duties, and compensation of the officers and employees of each house; and no payment shall be made for services to the legislature from the treasury, or be in any way authorized to any person, except to an acting officer or employee elected or appointed in pursuance of law.

*No extra pay for services, etc.* No bill shall be passed giving any extra compensation to any public officer, servant or employee, agent or contractor, after services shall have been rendered or contract made.

*Restriction on terms, pay, etc., of officers.* Except as otherwise provided in this Act, no law shall extend the term of any public officer, or increase or diminish his salary or emoluments after his election or appointment, nor permit any officer or employee to draw compensation for more than one office or position.

*Revenue bills.* All bills for raising revenue shall originate in the house of representatives, but the senate may propose or concur with amendments, as in case of other bills.

*Appropriation bills.* The general appropriation bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments, interest on the public debt, and for public schools. All other appropriations shall be made by separate bills, each embracing but one subject.

*Approval of governor to orders, etc.* Every order, resolution, or vote to which the concurrence of both houses may be necessary, except on the question of adjournment, or relating solely to the transaction of business of the two houses, shall be presented to the governor, and before it shall take effect be approved by him, or, being disapproved, shall be repassed by two-thirds of both houses, according to the rules and limitations prescribed in case of a bill.

*Punishment for bribery of officials.* Any person who shall, directly or indirectly, offer, give, or promise any money or thing of value, testimonial, privilege, or personal advantage to any executive or judicial officer or member of the legislature to influence him in the performance of any of his public or official duties, shall be deemed guilty of bribery, and be punished by a fine not exceeding $5,000, or imprisonment not exceeding five years, or both.

*Corrupt legislative practice to be defined, etc., by legislature.* The offense of corrupt solicitation of members of the legislature, or of public officers of Porto Rico, or of any municipal division thereof, and any occupation or practice of solicitation of such members or officers to influence their official action, shall be defined by law, and shall be punished by fine and imprisonment.

*Apportionment of appropriations if expenses not met by revenues.* In case the available revenues of Porto Rico for any fiscal year, including available surplus in the insular treasury, are insufficient to meet all the appropriations made by the legislature for such year, such appropriations shall be paid in the following order, unless otherwise directed by the governor:

SIXTY-FOURTH CONGRESS. Sess. II. Ch. 145. 1917.　　　963

First class. The ordinary expenses of the legislative, executive, and judicial departments of the State government, and interest on any public debt, shall first be paid in full.

Second class. Appropriations for all institutions, such as the penitentiary, insane asylum, industrial school, and the like, where the inmates are confined involuntarily, shall next be paid in full.

Third class. Appropriations for education and educational and charitable institutions shall next be paid in full.

Fourth class. Appropriations for any other officer or officers, bureaus or boards, shall next be paid in full.

Fifth class. Appropriations for all other purposes shall next be paid.

That in case there are not sufficient revenues for any fiscal year, including available surplus in the insular treasury, to meet in full the appropriations of said year for all of the said classes of appropriations, then said revenues shall be applied to the classes in the order above named, and if, after the payment of the prior classes in full, there are not sufficient revenues for any fiscal year to pay in full the appropriations for that year for the next class, then, in that event, whatever there may be to apply on account of appropriations for said class shall be distributed among said appropriations pro rata according as the amount of each appropriation of that class shall bear to the total amount of all of said appropriations for that class for such fiscal year.

No appropriation shall be made, nor any expenditure authorized by the legislature, whereby the expenditure of the Government of Porto Rico during any fiscal year shall exceed the total revenue then provided for by law and applicable for such appropriation or expenditure, including any available surplus in the treasury, unless the legislature making such appropriation shall provide for levying a sufficient tax to pay such appropriation or expenditure within such fiscal year.

Sec. 35. That at the first election held pursuant to this Act the qualified electors shall be those having the qualifications of voters under the present law. Thereafter voters shall be citizens of the United States twenty-one years of age or over and have such additional qualifications as may be prescribed by the legislature of Porto Rico: *Provided*, That no property qualification shall ever be imposed upon or required of any voter.

Sec. 36. That the qualified electors of Porto Rico shall at the next general election choose a Resident Commissioner to the United States, whose term of office shall begin on the date of the issuance of his certificate of election and shall continue until the fourth of March, nineteen hundred and twenty-one. At each subsequent election, beginning with the year nineteen hundred and twenty, the qualified electors of Porto Rico shall choose a Resident Commissioner to the United States, whose term of office shall be four years from the fourth of March following such general election, and who shall be entitled to receive official recognition as such Commissioner by all of the departments of the Government of the United States, upon presentation, through the Department of State, of a certificate of election of the Governor of Porto Rico. The Resident Commissioner shall receive a salary, payable monthly by the United States, of $7,500 per annum. Such Commissioner shall be allowed the same sum for stationery and for the pay of necessary clerk hire as is now allowed to Members of the House of Representatives of the United States; and he shall be allowed the sum of $500 as mileage for each session of the House of Representatives and the franking privilege granted Members of Congress. No person shall be eligible to election as Resident Commissioner who is not a bona fide citizen of the United States and who is not more than twenty-five years of age, and who

*Marginal notes:*
Classification.
Application to classes.
Expenditures not to exceed revenue provided for.
Levy of tax authorized.
Qualifications of voters.
*Proviso.* Property qualification forbidden.
Resident Commissioner to the United States.
Election for term of four years.
Salary and allowances.
Eligibility, etc.

1096        SIXTY-SIXTH CONGRESS. Sess. III. Chs. 34, 35. 1921.

February 3, 1921.
[H. R. 11760.]
[Public, No. 301.]

CHAP. 34.—An Act To amend an Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes," approved March 2, 1917.

Porto Rico civil government.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That paragraph 19 of section 2 of the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes," approved March 2, 1917, is hereby amended to read as follows:

Bill of rights.

Use of public funds for religious sects, etc., forbidden.

Vol. 39, p.952, amended.

"That no public money or property shall ever be appropriated, applied, donated, used, directly or indirectly, for the use, benefit, or support of any sect, church, denomination sectarian institution, or association, or system of religion, or for the use, benefit, or support of any priest, preacher, minister, or other religious teacher or dignitary as such. Contracting of polygamous or plural marriages hereafter is prohibited."

Education, etc., omitted.

Polygamy prohibited.

Revenues.
Vol. 39, p.953, amended.

Sec. 2. That section 3 of said Act to provide a civil government for Porto Rico is hereby amended to read as follows:

Export duties forbidden.

General taxes.

"Sec. 3. That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico; and, when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico or any municipal government therein as may be provided by law, and to protect the public credit: *Provided, however,* That no public indebtedness of Porto Rico or of any subdivision or municipality thereof shall be authorized or allowed in excess of 10 per centum of the aggregate tax valuation of its property, and all bonds issued by the government of Porto Rico, or by its authority, shall be exempt from taxation by the Government of the United States or by the government of Porto Rico or of any political or municipal subdivision thereof, or by any State, or by any county, municipality, or other municipal subdivision of any State or Territory of the United States, or by the District of Columbia. In computing the indebtedness of the people of Porto Rico, bonds issued by the people of Porto Rico secured by an equivalent amount of bonds of municipal corporations or school boards of Porto Rico shall not be counted."

Bonds.

*Proviso.*
Indebtedness limitation extended.

Exemption from tax.

Secured bonds.

Approved, February 3, 1921.

February 5, 1921.
[H. R. 14122.]
[Public, No. 302.]

CHAP. 35.—An Act To authorize the sale of a portion of the Copper Harbor Range Lighthouse Reservation, Michigan, to Houghton and Keweenaw Counties, Michigan.

Copper Harbor Range Lighthouse Reservation, Mich.
Sale of portion to Houghton and Keweenaw Counties.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Secretary of Commerce for and on behalf of the United States is hereby authorized and directed, in his discretion, to sell and convey to Houghton and Keweenaw Counties, in the State of Michigan, for the sum of $2,000, that certain piece or parcel of the Copper Harbor Range Lighthouse Reservation, Michigan, with the improvements thereon, which is that portion of lot two, section thirty-three, township fifty-nine north, range twenty-eight west, Michigan, lying east of the creek that drains Lake Fanny Hooe, and on which portion is located Fort Wilkins (abandoned), no longer required for lighthouse purposes: *Provided,* That said counties shall forever maintain the site and structures thereon as an historic landmark or as a public park; that said counties shall construct and forever maintain a bridge suitable to the Lighthouse Service across the creek from Lake Fanny Hooe in the rear of the rear range light and station buildings; that the road which now

*Provisos.*
Conditions.

Case:17-03283-LTS Doc#:4776-1 Filed:01/14/19 Entered:01/14/19 16:16:44 Desc:
Exhibit Docket Exhibits - 17-bk-3283 Page 59 of 92

Page 1 of 1

<div style="border:1px solid #000; padding:8px;">

**48 USC 741: Export duties, taxes, etc.; bonds to anticipate revenues**
Text contains those laws in effect on March 12, 2017

From Title 48-TERRITORIES AND INSULAR POSSESSIONS
    CHAPTER 4-PUERTO RICO
      SUBCHAPTER I-GENERAL PROVISIONS
Jump To:
    **Source Credit**
    **Codification**
    **Prior Provisions**
    **Amendments**

</div>

## §741. Export duties, taxes, etc.; bonds to anticipate revenues

No export duties shall be levied or collected on exports from Puerto Rico, but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Puerto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Puerto Rico or any municipal government therein as may be provided by law, and to protect the public credit.

(Mar. 2, 1917, ch. 145, §3, 39 Stat. 953; Feb. 3, 1921, ch. 34, §2, 41 Stat. 1096; Mar. 4, 1927, ch. 503, §1, 44 Stat. 1418; Aug. 26, 1937, ch. 831, 50 Stat. 843.)

### CODIFICATION

Section is comprised of first part of section 3 of act Mar. 2, 1917, down to the proviso clause. The remainder of section 3 is classified to sections 741a and 745 of this title.

### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, §38, 31 Stat. 86.

### AMENDMENTS

1937-Act Aug. 26, 1937, reenacted section without substantive change.
1927-Act Mar. 4, 1927, inserted imposition of income taxes.
1921-Act Feb. 3, 1921, reenacted section without change.

# 48 U.S. Code § 741 - Export duties, taxes, etc.; bonds to anticipate revenues

Current through Pub. L. 114-38 (http://www.gpo.gov/fdsys/pkg/PLAW-114publ38/html/PLAW-114publ38.htm). (See Public Laws for the current Congress (http://thomas.loc.gov/home/LegislativeData.php?n=PublicLaws).)

**US Code (/uscode/text/48/741?qt-us_code_temp_noupdates=0#qt-us_code_temp_noupdates)**

**Notes (/uscode/text/48/741?qt-us_code_temp_noupdates=1#qt-us_code_temp_noupdates)**

prev (/uscode/text/48/740) | next (/uscode/text/48/741a)

No export duties shall be levied or collected on exports from Puerto Rico, but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Puerto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Puerto Rico or any municipal government therein as may be provided by law, and to protect the public credit.

(Mar. 2, 1917, ch. 145, § 3, 39 Stat. 953 (http://uscode.house.gov/statviewer.htm?volume=39&page=953); Feb. 3, 1921, ch. 34, § 2, 41 Stat. 1096 (http://uscode.house.gov/statviewer.htm?volume=41&page=1096); Mar. 4, 1927, ch. 503, § 1, 44 Stat. 1418 (http://uscode.house.gov/statviewer.htm?volume=44&page=1418); Aug. 26, 1937, ch. 831, 50 Stat. 843 (http://uscode.house.gov/statviewer.htm?volume=50&page=843).)

# 48 U.S. Code § 741 - Export duties, taxes, etc.; bonds to anticipate revenues

Current through Pub. L. 114-38 (http://www.gpo.gov/fdsys/pkg/PLAW-114publ38/html/PLAW-114publ38.htm). (See Public Laws for the current Congress (http://thomas.loc.gov/home/LegislativeData.php?n=PublicLaws).)

**US Code** (/uscode/text/48/741?qt-us_code_temp_noupdates=0#qt-us_code_temp_noupdates)

**Notes** (/uscode/text/48/741?qt-us_code_temp_noupdates=1#qt-us_code_temp_noupdates)

### CODIFICATION

Section is comprised of first part of section 3 of act Mar. 2, 1917, down to the proviso clause. The remainder of section 3 is classified to sections 741a (/uscode/text/48/741a) and 745 (/uscode/text/48/745) of this title.

### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, § 38, 31 Stat. 86 (http://uscode.house.gov/statviewer.htm?volume=31&page=86).

### AMENDMENTS

1937—Act Aug. 26, 1937, reenacted section without substantive change.

1927—Act Mar. 4, 1927, inserted imposition of income taxes.

1921—Act Feb. 3, 1921, reenacted section without change.

the United States upon articles of merchandise coming from Puerto Rico, shall be paid into the treasury of Puerto Rico to be expended as required by law for the government and benefit thereof, and the Secretary of the Treasury shall designate the several ports and subports of entry in Puerto Rico and shall make such rules and regulations and appoint such agents as may be necessary to collect the duties and taxes authorized to be levied, collected, and paid in Puerto Rico by the provisions of this Act, and he shall fix the compensation and provide for the payment thereof of all such officers, agents, and assistants as he may find it necessary to employ to carry out the provisions of law.

(Apr. 12, 1900, ch. 191, § 4, 31 Stat. 78; May 17, 1932, ch. 190, 47 Stat. 158.)

### REFERENCES IN TEXT

This Act, referred to in text, means act Apr. 12, 1900, ch. 191, 31 Stat. 77, as amended, popularly known as the Foraker Act, which, insofar as is classified to the Code, enacted sections 733, 736, 738 to 740, 745, 744, 725, 864, and 866 of this title and amended sections 1 and 11 of former Title 11, Bankruptcy. For complete classification of this Act to the Code, see Tables.

Additional provisions of act Apr. 12, 1900, § 4, directing the payment of duties and taxes into a separate fund in the Treasury of the United States until the organization of a local civil government, have been omitted.

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

### CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico" pursuant to act May 17, 1932, which is classified to section 731a of this title.

### TRANSFER OF FUNCTIONS

All offices of collector of customs, comptroller of customs, surveyor of customs, and appraiser of merchandise of Bureau of Customs of Department of the Treasury to which appointments were required to be made by President with advice and consent of Senate ordered abolished, with such offices to be terminated not later than December 31, 1966, by Reorg. Plan No. 1 of 1965, eff. May 25, 1965, 30 F.R. 7035, 79 Stat. 1317, set out in the Appendix to Title 5, Government Organization and Employees. All functions of offices eliminated were already vested in Secretary of the Treasury by Reorg. Plan No. 26 of 1950, eff. July 31, 1950, 15 F.R. 4935, 64 Stat. 1280, set out in the Appendix to Title 5.

### EXPENDITURES FOR GOVERNMENTAL AND PUBLIC PURPOSES

The amount of customs revenue received by the United States on importations from Puerto Rico since its evacuation by the Spanish forces together with all that should thereafter be collected under the existing law were placed at the disposal of the President to be used for governmental and public purposes in Puerto Rico, by act Mar. 24, 1900, ch. 91, 31 Stat. 51.

### § 741. Export duties, taxes, etc.; bonds to anticipate revenues

No export duties shall be levied or collected on exports from Puerto Rico, but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and munici-

pal governments, respectively, as may be provided and defined by the Legislature of Puerto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Puerto Rico or any municipal government therein as may be provided by law, and to protect the public credit.

(Mar. 2, 1917, ch. 145, § 3, 39 Stat. 953; Feb. 3, 1921, ch. 34, § 2, 41 Stat. 1096; Mar. 4, 1927, ch. 503, § 1, 44 Stat. 1418; Aug. 26, 1937, ch. 831, 50 Stat. 843.)

### CODIFICATION

Section is comprised of first part of section 3 of act Mar. 2, 1917, down to the proviso clause. The remainder of section 3 is classified to sections 741a and 745 of this title.

### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, § 38, 31 Stat. 86.

### AMENDMENTS

1937—Act Aug. 26, 1937, reenacted section without substantive change.
1927—Act Mar. 4, 1927, inserted imposition of income taxes.
1921—Act Feb. 3, 1921, reenacted section without change.

### § 741a. Internal-revenue taxes; levy and collection; discrimination

The internal-revenue taxes levied by the Legislature of Puerto Rico in pursuance of the authority granted by this chapter on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: Provided, That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico. The officials of the Customs and Postal Services of the United States are directed to assist the appropriate officials of the Puerto Rican government in the collection of these taxes.

(Mar. 2, 1917, ch. 145, § 3, 39 Stat. 953; Mar. 4, 1927, ch. 503, § 1, 44 Stat. 1418; Aug. 26, 1937, ch. 831, 50 Stat. 844.)

### REFERENCES IN TEXT

This chapter, referred to in text, was in the original "this Act", meaning act Mar. 2, 1917, ch. 145, 39 Stat. 951, as amended, known as the Puerto Rican Federal Relations Act and also popularly known as the Jones Act, which is classified principally to the chapter. For complete classification of this Act to the Code, see Short Title note set out under section 731 of this title and Tables.

### CODIFICATION

Section is comprised of last part of section 3 of act Mar. 2, 1917, as added by act Mar. 4, 1927. The first two parts are classified to sections 741 and 745 of this title.

### AMENDMENTS

1937—Act Aug. 26, 1937, reenacted section without substantive change.

### § 742. Acknowledgment of deeds

Deeds and other instruments affecting land situate in the District of Columbia, or any other

§ 743                TITLE 48—TERRITORIES AND INSULAR POSSESSIONS                Page 60

territory or possession of the United States,
may be acknowledged in Puerto Rico before any
notary public appointed therein by proper authority, or an officer therein who has ex officio
the powers of a notary public. The certificate of
such notary shall be accompanied by the certificate of the executive secretary of Puerto Rico to
the effect that the notary taking such acknowledgment is in fact such notarial officer.

(Mar. 2, 1917, ch. 145, §54, 39 Stat. 966; May 17,
1932, ch. 190, 47 Stat. 158.)

#### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Mar. 22, 1902, ch. 273, 32 Stat. 88, except
that that act required the certificate of the attorney
general of Puerto Rico, rather than of the executive
secretary of Puerto Rico as required by this section.

#### CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico"
pursuant to act May 17, 1932, which is classified to section 731a of this title.

#### § 743. Repealed. July 1, 1944, ch. 373, title XI, § 1113, 58 Stat. 714

Section, acts Apr. 12, 1900, ch. 191, § 10, 31 Stat. 80;
Aug. 14, 1912, ch. 288, 37 Stat. 309; May 17, 1932, ch. 190,
47 Stat. 158, provided for quarantine stations in Puerto
Rico. See section 267 of Title 42, The Public Health and
Welfare.

#### RENUMBERING OF REPEALING ACT

Section 611 of act July 1, 1944, which repealed this
section, was renumbered §711 by act Aug. 13, 1946, ch.
958, §5, 60 Stat. 1049, §713 by act Feb. 28, 1948, ch. 83,
§9(b), 62 Stat. 47, §813 by act July 30, 1956, ch. 779, §3(b),
70 Stat. 720, §913 by Pub. L. 86-581, §4(b), Sept. 4, 1964,
76 Stat. 919, §1013 by Pub. L. 89-239, §3(b), Oct. 6, 1965,
79 Stat. 931, and §1113 by Pub. L. 91-572, §6(b), Dec. 24,
1970, 84 Stat. 1506.

#### § 744. Coasting trade laws

The coasting trade between Puerto Rico and
the United States shall be regulated in accordance with the provisions of law applicable to
such trade between any two great coasting districts of the United States.

(Apr. 12, 1900, ch. 191, §9, 31 Stat. 79; May 17, 1932,
ch. 190, 47 Stat. 158.)

#### CODIFICATION

Additional provisions of section 9 of act Apr. 12, 1900,
authorizing the making of regulations for the nationalization of all vessels owned by inhabitants of Puerto
Rico on April 11, 1899, and which continued to be so
owned up to the date of that nationalization and for the
admission of the same to all the benefits of the coasting trade of the United States, have been omitted.

Section was not enacted as part of the Puerto Rican
Federal Relations Act which comprises this chapter.

#### CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico"
pursuant to act May 17, 1932, which is classified to section 731a of this title.

#### § 745. Tax exempt bonds

All bonds issued by the Government of Puerto
Rico, or by its authority, shall be exempt from
taxation by the Government of the United
States, or by the Government of Puerto Rico or
of any political or municipal subdivision there-

of, or by any State, Territory, or possession, or
by any county, municipality, or other municipal
subdivision of any State, Territory, or possession of the United States, or by the District of
Columbia.

(Mar. 2, 1917, ch. 145, §3, 39 Stat. 953; Feb. 3, 1921,
ch. 34, §2, 41 Stat. 1096; Mar. 4, 1927, ch. 503, §1,
44 Stat. 1418; Aug. 26, 1937, ch. 831, 50 Stat. 844;
Aug. 17, 1950, ch. 731, 64 Stat. 458; Pub. L. 87-121,
§1, Aug. 3, 1961, 75 Stat. 245.)

#### CODIFICATION

Section is comprised of second part of section 3 of act
Mar. 2, 1917, commencing with proviso clause. The first
and last parts of section 3 are classified to sections 741
and 741a, respectively, of this title.

#### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, §38, 31 Stat. 85.

#### AMENDMENTS

1961—Pub. L. 87-121 struck out "no public indebtedness of Puerto Rico and the municipalities of San Juan,
Ponce, Arecibo, Río Piedras, and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax
valuation of its property, and no public indebtedness of
any other subdivision or municipality of Puerto Rico
shall hereafter be allowed in excess of 5 per centum of
the aggregate tax valuation of the property in any such
subdivision or municipality" before "All bonds issued"
and also struck out "In computing the indebtedness of
the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith
of the people of Puerto Rico has heretofore been
pledged and bonds issued by the people of Puerto Rico
secured by bonds to an equivalent amount of bonds of
municipal corporations or school boards of Puerto Rico
shall not be counted but all bonds hereafter issued by
any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the
people of Puerto Rico is pledged shall be counted" after
"District of Columbia".

1950—Act Aug. 17, 1950, made section applicable to
municipalities of Arecibo and Río Piedras.

1937—Act Aug. 26, 1937, made section applicable to
municipality of Mayaguez and substituted "August 26,
1937" for "March 4, 1927" wherever appearing.

1927—Act Mar. 4, 1927, made section applicable to municipalities of San Juan and Ponce, limited public indebtedness of other subdivisions or municipalities of
Puerto Rico to 5 per centum, and inserted in last sentence two clauses, the first relating to the non-inclusion of municipal bonds for the payment of interest and
principal, and the second reading "but all bonds after
August 26, 1937, issued by any municipality or subdivision within the 5 per centum authorized for which the
good faith of the people of Puerto Rico is pledged shall
be counted."

1921—Act Feb. 3, 1921, increased allowable public indebtedness from 7 to 10 per centum of aggregate tax
valuation of property.

#### EFFECTIVE DATE OF 1961 AMENDMENT

Section 2 of Pub. L. 87-121 provided that: "Section 1
of this Act [amending this section] shall take effect
upon a majority of the qualified electors of Puerto Rico
having voted in a referendum pursuant to section 1 of
article VII of the constitution of the Commonwealth of
Puerto Rico, to include provision in the Commonwealth constitution, in lieu of the provisions of section
3 of the Puerto Rican Federal Relations Act [this section] specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities
[as proposed in the concurrent resolution of the legislative assembly of the Commonwealth]."

[Referendum held Dec. 10, 1961, and debt limitation
amendment to Article VI, §2, of Constitution of Com-

Case:17-03283-LTS   Doc#:4776-1   Filed:01/14/19   Entered:01/14/19 16:16:44   Desc:
Exhibit Docket Exhibits - 17-bk-3283   Page 64 of 92

Page 1 of 2

---

**48 USC 745: Tax exempt bonds**
Text contains those laws in effect on March 12, 2017

From Title 48-TERRITORIES AND INSULAR POSSESSIONS
    CHAPTER 4-PUERTO RICO
    SUBCHAPTER I-GENERAL PROVISIONS
Jump To:
    <u>Source Credit</u>
    <u>Codification</u>
    <u>Prior Provisions</u>
    <u>Amendments</u>
    <u>Effective Date</u>

---

## §745. Tax exempt bonds

All bonds issued by the Government of Puerto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the Government of Puerto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other municipal subdivision of any State, Territory, or possession of the United States, or by the District of Columbia.

(Mar. 2, 1917, ch. 145, §3, 39 Stat. 953 ; Feb. 3, 1921, ch. 34, §2, 41 Stat. 1096 ; Mar. 4, 1927, ch. 503, §1, 44 Stat. 1418 ; Aug. 26, 1937, ch. 831, 50 Stat. 844 ; Aug. 17, 1950, ch. 731, 64 Stat. 458 ; Pub. L. 87–121, §1, Aug. 3, 1961, 75 Stat. 245 .)

### CODIFICATION

Section is comprised of second part of section 3 of act Mar. 2, 1917, commencing with proviso clause. The first and last parts of section 3 are classified to sections 741 and 741a, respectively, of this title.

### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, §38, 31 Stat. 86 .

### AMENDMENTS

1961–Pub. L. 87–121 struck out "no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Rio Piedras, and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," before "All bonds issued" and also struck out "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted" after "District of Columbia".

1950–Act Aug. 17, 1950, made section applicable to municipalities of Arecibo and Rio Piedras.

1937–Act Aug. 26, 1937, made section applicable to municipality of Mayaguez and substituted "August 26, 1937" for "March 4, 1927" wherever appearing.

1927–Act Mar. 4, 1927, made section applicable to municipalities of San Juan and Ponce, limited public indebtedness of other subdivisions or municipalities of Puerto Rico to 5 per centum, and inserted in last sentence two clauses, the first relating to the non-inclusion of municipal bonds for the payment of interest and principal, and the second reading "but all bonds after August 26, 1937, issued by any municipality or subdivision within the 5 per centum

Case:17-03283-LTS   Doc#:4776-1   Filed:01/14/19   Entered:01/14/19 16:16:44   Desc:
Exhibit Docket Exhibits - 17-bk-3283   Page 65 of 92

Page 2 of 2

authorized for which the good faith of the people of Porto Rico is pledged shall be counted."
1921-Act Feb. 3, 1921, increased allowable public indebtedness from 7 to 10 per centum of
aggregate tax valuation of property.

### EFFECTIVE DATE OF 1961 AMENDMENT

Pub. L. 87–121, §2, Aug. 3, 1961, 75 Stat. 245 , provided that: "Section 1 of this Act
[amending this section] shall take effect upon a majority of the qualified electors of Puerto Rico
having voted in a referendum pursuant to section 1 of article VII of the constitution of the
Commonwealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu
of the provisions of section 3 of the Puerto Rican Federal Relations Act [this section] specified
herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as
proposed in the concurrent resolution of the legislative assembly of the Commonwealth)."

[Referendum held Dec. 10, 1961, and debt limitation amendment to Article VI, §2, of
Constitution of Commonwealth of Puerto Rico ratified by a majority of voters.]

48 USC 745

NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).

## TITLE 48 - TERRITORIES AND INSULAR POSSESSIONS
### CHAPTER 4 - PUERTO RICO
#### SUBCHAPTER I - GENERAL PROVISIONS

### §745. Tax exempt bonds

All bonds issued by the Government of Puerto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the Government of Puerto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other municipal subdivision of any State, Territory, or possession of the United States, or by the District of Columbia.

(Mar. 2, 1917, ch. 145, §3, 39 Stat. 953; Feb. 3, 1921, ch. 34, §2, 41 Stat. 1096; Mar. 4, 1927, ch. 503, §1, 44 Stat. 1418; Aug. 26, 1937, ch. 831, 50 Stat. 844; Aug. 17, 1950, ch. 731, 64 Stat. 458; Pub. L. 87–121, §1, Aug. 3, 1961, 75 Stat. 245.)

**Codification**

Section is comprised of second part of section 3 of act Mar. 2, 1917, commencing with proviso clause. The first and last parts of section 3 are classified to sections 741 and 741a, respectively, of this title.

**Prior Provisions**

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, §38, 31 Stat. 86.

**Amendments**

1961—Pub. L. 87–121 struck out "no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Rio Piedras, and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," before "All bonds issued" and also struck out "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted" after "District of Columbia".

1950—Act Aug. 17, 1950, made section applicable to municipalities of Arecibo and Rio Piedras.

1937—Act Aug. 26, 1937, made section applicable to municipality of Mayaguez and substituted "August 26, 1937" for "March 4, 1927" wherever appearing.

1927—Act Mar. 4, 1927, made section applicable to municipalities of San Juan and Ponce, limited public indebtedness of other subdivisions or municipalities of Puerto Rico to 5 per centum, and inserted in last sentence two clauses, the first relating to the non-inclusion of municipal bonds for the payment of interest and principal, and the second reading "but all bonds after August 26, 1937, issued by any municipality or subdivision within the 5 per centum authorized for which the good faith of the people of Porto Rico is pledged shall be counted."

1921—Act Feb. 3, 1921, increased allowable public indebtedness from 7 to 10 per centum of aggregate tax valuation of property.

**Effective Date of 1961 Amendment**

Section 2 of Pub. L. 87–121 provided that: "Section 1 of this Act [amending this section] shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act [this section] specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth)."

[Referendum held Dec. 10, 1961, and debt limitation amendment to Article VI, §2, of Constitution of Commonwealth of Puerto Rico ratified by a majority of voters.]

- 1 -

# 48 U.S. Code § 745 - Tax exempt bonds

Current through Pub. L. 114-38 (http://www.gpo.gov/fdsys/pkg/PLAW-114publ38/html/PLAW-114publ38.htm). (See Public Laws for the current Congress (http://thomas.loc.gov/home/LegislativeData.php?n=PublicLaws).)

**US Code** (/uscode/text/48/745?qt-us_code_temp_noupdates=0#qt-us_code_temp_noupdates)

**Notes** (/uscode/text/48/745?qt-us_code_temp_noupdates=1#qt-us_code_temp_noupdates)

### Codification

Section is comprised of second part of section 3 of act Mar. 2, 1917, commencing with proviso clause. The first and last parts of section 3 are classified to sections 741 and 741a, respectively, of this title.

### Prior Provisions

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, § 38, 31 Stat. 86 (http://uscode.house.gov/statviewer.htm?volume=31&page=86).

### Amendments

1961—Pub. L. 87–121 (http://www.gpo.gov/fdsys/browse/collection.action?collectionCode=PLAW) struck out "no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Río Piedras, and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," before "All bonds issued" and also struck out "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted" after "District of Columbia".

1950—Act Aug. 17, 1950, made section applicable to municipalities of Arecibo and Río Piedras.

1937—Act Aug. 26, 1937, made section applicable to municipality of Mayaguez and substituted "August 26, 1937" for "March 4, 1927" wherever appearing.

1927—Act Mar. 4, 1927, made section applicable to municipalities of San Juan and Ponce, limited public indebtedness of other subdivisions or municipalities of Puerto Rico to 5 per centum, and inserted in last sentence two clauses, the first relating to the non-inclusion of municipal bonds for the payment of interest and principal, and the second reading "but all bonds after August 26, 1937, issued by any municipality or subdivision within the 5 per centum authorized for which the good faith of the people of Porto Rico is pledged shall be counted."

1921—Act Feb. 3, 1921, increased allowable public indebtedness from 7 to 10 per centum of aggregate tax valuation of property.

### Effective Date of 1961 Amendment

Pub. L. 87–121 (http://www.gpo.gov/fdsys/browse/collection.action?collectionCode=PLAW), § 2, Aug. 3, 1961, 75 Stat. 245 (http://uscode.house.gov/statviewer.htm?volume=75&page=245), provided that:

"Section 1 of this Act [amending this section] shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act [this section] specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth)."

[Referendum held Dec. 10, 1961, and debt limitation amendment to Article VI, § 2, of Constitution of Commonwealth of Puerto Rico ratified by a majority of voters.]

Case:17-03283-LTS Doc#:4776-1 Filed:01/14/19 Entered:01/14/19 16:16:44 Desc:
Exhibit Docket Exhibits - 17-bk-3283 Page 68 of 92

Page 1 of 1

48 U.S. Code § 745 - Tax exempt bonds | US Law | LII / Legal Information Institute

U.S. Code (/uscode/text) › Title 48 (/uscode/text/48) › Chapter 4 (/uscode/text/48/chapter-4) › Subchapter I (/uscode/text/48/chapter-4/subchapter-I) › § 745

# 48 U.S. Code § 745 - Tax exempt bonds

Current through Pub. L. 114-38 (http://www.gpo.gov/fdsys/pkg/PLAW-114publ38/html/PLAW-114publ38.htm). (See Public Laws for the current Congress (http://thomas.loc.gov/home/LegislativeData.php?n=PublicLaws).)

**US Code** (/uscode/text/48/745?qt-us_code_temp_noupdates=0#qt-us_code_temp_noupdates)

**Notes** (/uscode/text/48/745?qt-us_code_temp_noupdates=1#qt-us_code_temp_noupdates)

prev (/uscode/text/48/744) | next (/uscode/text/48/745a)

All bonds issued by the Government of Puerto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the Government of Puerto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other municipal subdivision of any State, Territory, or possession of the United States, or by the District of Columbia.

(Mar. 2, 1917, ch. 145, § 3, 39 Stat. 953 (http://uscode.house.gov/statviewer.htm?volume=39&page=953); Feb. 3, 1921, ch. 34, § 2, 41 Stat. 1096 (http://uscode.house.gov/statviewer.htm?volume=41&page=1096); Mar. 4, 1927, ch. 503, § 1, 44 Stat. 1418 (http://uscode.house.gov/statviewer.htm?volume=44&page=1418); Aug. 26, 1937, ch. 831, 50 Stat. 844 (http://uscode.house.gov/statviewer.htm?volume=50&page=844); Aug. 17, 1950, ch. 731, 64 Stat. 458 (http://uscode.house.gov/statviewer.htm?volume=64&page=458); Pub. L. 87–121 (http://www.gpo.gov/fdsys/browse/collection.action?collectionCode=PLAW), § 1, Aug. 3, 1961, 75 Stat. 245 (http://uscode.house.gov/statviewer.htm?volume=75&page=245).)

Relations Act and also popularly known as the Jones Act, which is classified principally to this chapter. For complete classification of this Act to the Code, see Short Title note set out under section 731 of this title and Tables.

### CODIFICATION

Section is comprised of last part of section 3 of act Mar. 2, 1917, as added by act Mar. 4, 1927. The first two parts are classified to sections 741 and 745 of this title.

### AMENDMENTS

1937—Act Aug. 26, 1937, reenacted section without substantive change.

## § 742. Acknowledgment of deeds

Deeds and other instruments affecting land situate in the District of Columbia, or any other territory or possession of the United States, may be acknowledged in Puerto Rico before any notary public appointed therein by proper authority, or any officer therein who has ex officio the powers of a notary public. The certificate by such notary shall be accompanied by the certificate of the executive secretary of Puerto Rico to the effect that the notary taking such acknowledgment is in fact such notarial officer.

(Mar. 2, 1917, ch. 145, § 54, 39 Stat. 968; May 17, 1932, ch. 190, 47 Stat. 158.)

### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Mar. 22, 1902, ch. 273, 32 Stat. 88, except that that act required the certificate of the attorney general of Puerto Rico, rather than of the executive secretary of Puerto Rico as required by this section.

### CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico" pursuant to act May 17, 1932, which is classified to section 731a of this title.

## § 743. Repealed. July 1, 1944, ch. 373, title XI, § 1113, 58 Stat. 714

Section, acts Apr. 12, 1900, ch. 191, § 10, 31 Stat. 80; Aug. 14, 1912, ch. 288, 37 Stat. 309; May 17, 1932, ch. 190, 47 Stat. 158, provided for quarantine stations in Puerto Rico. See section 267 of Title 42, The Public Health and Welfare.

### RENUMBERING OF REPEALING ACT

Section 611 of act July 1, 1944, which repealed this section, was renumbered § 711 by act Aug. 13, 1946, ch. 958, § 5, 60 Stat. 1049, § 713 by act Feb. 28, 1948, ch. 83, § 9(b), 62 Stat. 47, § 813 by act July 30, 1956, ch. 779, § 3(b), 70 Stat. 720; § 913 by Pub. L. 88–581, § 4(b), Sept. 4, 1964, 78 Stat. 919, § 1013 by Pub. L. 89–239, § 3(b), Oct. 6, 1965, 79 Stat. 931, and § 1113 by Pub. L. 91–572, § 6(b), Dec. 24, 1970, 84 Stat. 1506.

## § 744. Coasting trade laws

The coasting trade between Puerto Rico and the United States shall be regulated in accordance with the provisions of law applicable to such trade between any two great coasting districts of the United States.

(Apr. 12, 1900, ch. 191, § 9, 31 Stat. 79; May 17, 1932, ch. 190, 47 Stat. 158.)

### CODIFICATION

Additional provisions of section 9 of act Apr. 12, 1900, authorizing the making of regulations for the nationalization of all vessels owned by inhabitants of Puerto Rico on April 11, 1899, and which continued to be so owned up to the date of that nationalization and for the admission of the same to all the benefits of the coasting trade of the United States, have been omitted.

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

### CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico" pursuant to act May 17, 1932, which is classified to section 731a of this title.

## § 745. Tax exempt bonds

All bonds issued by the Government of Puerto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the Government of Puerto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other subdivision of any State, Territory, or possession of the United States, or by the District of Columbia.

(Mar. 2, 1917, ch. 145, § 3, 39 Stat. 953; Feb. 3, 1921, ch. 34, § 2, 41 Stat. 1096; Mar. 4, 1927, ch. 503, § 1, 44 Stat. 1418; Aug. 26, 1937, ch. 831, 50 Stat. 844; Aug. 17, 1950, ch. 731, 64 Stat. 458; Pub. L. 87–121, § 1, Aug. 3, 1961, 75 Stat. 245.)

### CODIFICATION

Section is comprised of second part of section 3 of act Mar. 2, 1917, commencing with proviso clause. The first and last parts of section 3 are classified to sections 742 and 741a, respectively, of this title.

### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, § 38, 31 Stat. 86.

### AMENDMENTS

1961—Pub. L. 87–121 struck out "no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Río Piedras, and Mayagüez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," before "All bonds issued" and also struck out "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted" after "District of Columbia".

1950—Act Aug. 17, 1950, made section applicable to municipalities of Arecibo and Río Piedras.

1937—Act Aug. 26, 1937, made section applicable to municipality of Mayagüez and substituted "August 26, 1927" for "March 4, 1927" wherever appearing.

1927—Act Mar. 4, 1927, made section applicable to municipalities of San Juan and Ponce, limited public indebtedness of other subdivisions or municipalities of Puerto Rico to 5 per centum, and inserted in last sentence two clauses, the first relating to the non-inclusion of municipal bonds for the payment of interest and principal, and the second reading "but all bonds after August 26, 1937, issued by any municipality or subdivision within the 5 per centum authorized for which the good faith of the people of Porto Rico is pledged shall be counted."

1418      SIXTY-NINTH CONGRESS. Sess. II. Ch. 503. 1927.

March 4, 1927.
[S. 5231.]
[Public, No. 787.]

**CHAP. 503.**—An Act To amend and reenact sections 3, 20, 31, 33, 35, and 48 of the Act of March 2, 1917, entitled "An Act to provide a civil government for Porto Rico, and for other purposes," as amended by an Act approved June 7, 1924, and for the insertion of a new section in said Act between sections 5 and 6 of said Act, to be designated as "5a" of said Act.

*Porto Rico Civil Government. Revenues. Vol. 39, p. 952. Vol. 41, p. 1096, amended.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 3 of an Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes," approved March 2, 1917, as amended by an Act approved February 3, 1921, be, and the same is hereby, amended to read as follows:

*Export taxes forbidden.*

*General taxes, as provided by legislature, income added.*

"SEC. 3. That no export duties shall be levied or collected on exports from Porto Rico, but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Porto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Porto Rico or any municipal government therein as may be provided by law, and to protect the public credit: *Provided, however,* That no public indebtedness of Porto Rico and the municipalities of San Juan and Ponce shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Porto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality, and all bonds issued by the government of Porto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the government of Porto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession, or by any county, municipality, or other municipal subdivision of any State, Territory, or possession of the United States, or by the District of Columbia. In computing the indebtedness of the people of Porto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Porto Rico has heretofore been pledged and bonds issued by the people of Porto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Porto Rico shall not be counted, but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Porto Rico is pledged shall be counted.

*Provisos. Indebtedness limited of Porto Rico, and San Juan and Ponce.*

*Other municipalities.*

*Bonds exempt from Federal, etc., taxes.*

*Existing secured bonds not computed in limitation.*

*Internal revenue taxes. Collection.*

"*And it is further provided,* That the internal-revenue taxes levied by the Legislature of Porto Rico in pursuance of the authority granted by this Act on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: *Provided,* That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Porto Rico. The officials of the Customs and Postal Services of the United States are hereby directed to assist the appropriate officials of the Porto Rican government in the collection of these taxes."

*Proviso. No discrimination against imports.*

*Federal officials to assist in collection.*

SEC. 2. That a new section is hereby inserted between sections 5 and 6 of the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes," approved March 2, 1917, as amended, as follows:

*Citizenship. Vol. 39, p. 953, amended.*

"SEC. 5a. That all citizens of the United States who have resided or who shall hereafter reside in the island for one year shall be citizens of Porto Rico: *Provided,* That persons born in Porto Rico

*One year's residence of American citizens.*

*Proviso.*

74TH CONGRESS.  SESS. I.  CHS. 511, 516.  AUGUST 12, 13, 1935.　　611

SEC. 2. To accomplish the purposes of this Act, the Secretary of War is authorized to accept, on behalf of the United States, free of encumbrances and without cost to the United States, the title in fee simple to such lands as he may deem necessary or desirable for new permanent Air Corps stations and depots and/or the extension of or addition to existing Air Corps stations or depots; or, with the written approval of the President, to exchange for such lands existing military reservations or portions thereof; or, if it be found impracticable to secure the necessary lands by either of these methods, to purchase the same by agreement or through condemnation proceedings. *Acquisition of sites.*

SEC. 3. The Secretary of War is further authorized and directed to construct, install, and equip, or complete the construction, installation, and equipment, inclusive of bomb-proof protection as required, at each of said stations and depots, such buildings and utilities, technical buildings and utilities, landing fields and mats, and all utilities and appurtenances thereto, ammunition storage, fuel and oil storage and distribution systems therefor, roads, walks, aprons, docks, runways, sewer, water, power, station and aerodrome lighting, telephone and signal communications, and other essentials, including the necessary grading and removal or remodeling of existing structures and installations. He is authorized, also, to direct the necessary transportation of personnel, and purchase, renovation, and transportation of materials, as in his judgment may be required to carry out the purposes of this Act. The Secretary of War is further authorized to acquire by gift, purchase, lease, or otherwise, at such locations as may be desirable, such bombing and machine-gun ranges as may be required for the proper practice and training of tactical units. *Construction of buildings and utilities.* *Transportation of personnel and materials.* *Acquisition of bombing and machine-gun ranges.*

SEC. 4. There is hereby authorized to be appropriated, out of any money in the Treasury of the United States not otherwise appropriated, such sums of money as may be necessary, to be expended under the direction of the Secretary of War for the purposes of this Act, including the expenses incident to the necessary surveys, which appropriation shall continue available until expended: *Provided,* That the provisions of section 1136, Revised Statutes (U. S. C., title 10, par. 1339), shall not apply to the construction of the aforesaid stations and depots. *Appropriation authorized.* *Post, pp. 1640, 1641.* *Proviso.* *R. S., sec. 1136, p. 205; U. S. C., p. 253.*

Approved, August 12, 1935.

[CHAPTER 516.]

AN ACT

To authorize the issuance and sale to the United States of certain bonds of municipal governments in Puerto Rico, and for other purposes. *August 13, 1935.* *[S. 1227.]* *[Public, No. 264.]*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That bonds or other obligations of Puerto Rico or any municipal government therein, payable solely from revenues derived from any public improvement or undertaking (which revenues may include transfers by agreement or otherwise from the regular funds of the issuer in respect of the use by it of the facilities afforded by such improvement or undertaking), and issued and sold to the United States of America or any agency or instrumentality thereof, shall not be considered public indebtedness of the issuer within the meaning of section 3 of an Act approved March 2, 1917, entitled "An Act to provide a civil government for Porto Rico, and for other purposes", as amended. *Puerto Rico. Sale of bonds of municipal governments.* *Vol. 39, p. 953; U. S. C., p. 2163.*

Approved, August 13, 1935.

Case:17-03283-LTS   U.S. Code Title 48 - TERRITORIES AND INSULAR POSSESSIONS   Doc#:4775   Filed:01/14/19   Entered:01/14/19 16:16:44   Desc:
Exhibit Docket Exhibits - 17-bk-3283   Page 72 of 92

Page 1 of 1

### §745a. Public improvement bonds sold to United States or agency thereof excluded from public indebtedness

Bonds or other obligations of Puerto Rico or any municipal government therein, payable solely from revenues derived from any public improvement or undertaking (which revenues may include transfers by agreement or otherwise from the regular funds of the issuer in respect of the use by it of the facilities afforded by such improvement or undertaking), and issued and sold to the United States of America or any agency or instrumentality thereof, shall not be considered public indebtedness of the issuer within the meaning of section 745 of this title.

(Aug. 13, 1935, ch. 516, 49 Stat. 611.)

#### CODIFICATION

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

48 USC 745a

*NB: This unofficial compilation of the U.S. Code is current as of Jan. 4, 2012 (see http://www.law.cornell.edu/uscode/uscprint.html).*

**TITLE 48 - TERRITORIES AND INSULAR POSSESSIONS**
**CHAPTER 4 - PUERTO RICO**
**SUBCHAPTER I - GENERAL PROVISIONS**

**§ 745a. Public Improvement bonds sold to United States or agency thereof excluded from public indebtedness**

Bonds or other obligations of Puerto Rico or any municipal government therein, payable solely from revenues derived from any public improvement or undertaking (which revenues may include transfers by agreement or otherwise from the regular funds of the issuer in respect of the use by it of the facilities afforded by such improvement or undertaking), and issued and sold to the United States of America or any agency or instrumentality thereof, shall not be considered public indebtedness of the issuer within the meaning of section 745 of this title.

(Aug. 13, 1935, ch. 516, 49 Stat. 611.)

**Codification**

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

**516**                    74TH CONGRESS.  SESS. I.  CHS. 434–436.  AUGUST 3, 1935.

Contracts for sale of bonds.

SEC. 6. The city of Anchorage is hereby authorized to enter into contracts with the United States of America or any agency or instrumentality thereof under the provisions of the National Industrial Recovery Act and Acts amendatory thereof and Acts supplemental thereto, and revisions thereof, and the regulations made in pursuance thereof, and under any further Acts of the Congress of the United States to encourage public works, for the relief of unemployment, or for any other public purpose, including the Emergency Relief Appropriation Act of 1935, for the sale of bonds issued in accordance with the provisions of this Act, or for the acceptance of a grant of money to aid said municipality in financing any public works; or to enter into contracts with any persons or corporations, public or private, for the sale of such bonds; and such contracts may contain such terms and conditions as may be agreed upon by and between the common council of said city of Anchorage and the United States of America or any agency or instrumentality thereof, or any such purchaser.

Terms and conditions.

SEC. 7. This Act shall take effect immediately.

Approved, August 3, 1935.

---

[CHAPTER 435.]

**AN ACT**

Temporarily to exempt refunding bonds of the Government of Puerto Rico from the limitation of public indebtedness under the Organic Act.

August 3, 1935.
[H. R. 8209.]
[Public, No. 236.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any bonds or other obligations of Puerto Rico hereafter issued for the purpose of retiring previously outstanding bonds or obligations shall not be included in computing the public indebtedness of Puerto Rico under section 3 of the Organic Act approved March 2, 1917, as amended, until six months after their issue.

Puerto Rico; bonds. Exemption from inclusion in computing public indebtedness.
Vol. 39, p. 953.
U. S. C., p. 2163.

Approved, August 3, 1935.

---

[CHAPTER 436.]

**AN ACT**

To enable the Legislature of the Territory of Hawaii to authorize the issuance of certain bonds, and for other purposes.

August 3, 1935.
[H. R. 8270.]
[Public, No. 237.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Legislature of the Territory of Hawaii may cause to be issued on behalf of the Territory and may authorize any political or municipal corporation or subdivision of the Territory (including the board of water supply of the city and county of Honolulu, and the board of harbor commissioners) to issue of its own behalf bonds and other obligations payable solely from the revenues derived from a public improvement or public undertaking (which revenues may include transfers by agreement or otherwise from the regular funds of the issuer in respect of the use by it of the facilities afforded by such improvement or undertaking).  The issuance of such revenue bonds shall not constitute the incurrence of an indebtedness within the meaning of the Hawaiian Organic Act, and shall not require the approval of the President of the United States.

Hawaii. Authority of Legislature to permit bond issues.

All Acts of the Legislature of Hawaii heretofore authorizing the issuance of revenue bonds on behalf of the Territory or by any political or municipal corporation or subdivision thereof are hereby confirmed and ratified.

Confirmation of prior acts authorizing issues.

CODIFICATION

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

### §745b. Refunding bonds excluded temporarily in computing indebtedness

Any bonds or other obligations of Puerto Rico issued after August 3, 1935, for the purpose of retiring previously outstanding bonds or obligations shall not be included in computing the public indebtedness of Puerto Rico under section 745 of this title, until six months after their issue.

(Aug. 3, 1935, ch. 435, 49 Stat. 516.)

CODIFICATION

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

### §746. Public lands and buildings; reservations; rights prior to July 1, 1902

All public lands and buildings, not including harbor areas and navigable streams and bodies of water and the submerged lands underlying the same, owned by the United States in the island of Puerto Rico and not reserved by the President of the United States prior to July 1, 1903, pursuant to authority vested in him by law, are granted to the government of Puerto Rico, to be held or disposed of for the use and benefit of the people of said island. Said grant is upon the express condition that the government of Puerto Rico, by proper authority, release to the United States any interest or claim it may have in or upon the lands or buildings reserved by the President as mentioned herein. Nothing herein contained shall be so construed as to affect any legal or equitable rights acquired by the government of Puerto Rico or by any other party, under any contract, lease, or license made by the United States authorities prior to the 1st day of May 1900.

(July 1, 1902, ch. 1383, §1, 32 Stat. 731; May 17, 1932, ch. 190, 47 Stat. 158.)

CODIFICATION

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico" pursuant to act May 17, 1932, which is classified to section 731a of this title.

LAW LIBRARY

Section 2 of act July 1, 1902, made an appropriation for the purchase of a law library for the use of the United States District Court for Puerto Rico.

EXPENSES AND TERM OF RESIDENT COMMISSIONER

Section 3 of act July 1, 1902, related to allowance of traveling expenses in addition to salary to the resident commissioner from Puerto Rico, and to the commencement of his term.

### §747. Public property transferred; "control" defined

All property which may have been acquired in Puerto Rico by the United States under the cession of Spain in the treaty of peace entered into on the 10th day of December 1898, in any public

bridges, road houses, water powers, highways, unnavigable streams and the beds thereof, subterranean waters, mines or minerals under the surface of private lands, all property which at the time of the cession belonged, under the laws of Spain then in force, to the various harbor works boards of Puerto Rico, all the harbor shores, docks, slips, reclaimed lands, and all public lands and buildings not reserved by the United States for public purposes prior to March 2, 1917, is placed under the control of the government of Puerto Rico, to be administered for the benefit of the people of Puerto Rico; and the Legislature of Puerto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all matters, as it may deem advisable. Notwithstanding any other provision of law, as used in this section "control" includes all right, title, and interest in and to and jurisdiction and authority over the aforesaid property and includes proprietary rights of ownership, and the rights of management, administration, leasing, use, and development of such property.

(Mar. 2, 1917, ch. 145, §7, 39 Stat. 954; May 17, 1932, ch. 190, 47 Stat. 158; Pub. L. 96–205, title VI, §606(b), Mar. 12, 1980, 94 Stat. 91.)

CODIFICATION

Section is comprised of that part of section 7 of act Mar. 2, 1917, preceding the proviso clause. The remainder of section 7 is classified to section 748 of this title.

PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, §13, 31 Stat. 80.

AMENDMENTS

1980—Pub. L. 96–205 inserted provisions defining "control".

CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico" pursuant to act Mar. 17, 1932, which is classified to section 731a of this title.

SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in section 749 of this title.

### §748. Conveyance by President to people of lands, buildings, etc.

The President may, from time to time, in his discretion, convey to the people of Puerto Rico, such lands, buildings, or interests in lands, or other property now owned by the United States, and within the territorial limits of Puerto Rico as in his opinion are no longer needed for purposes of the United States. And he may from time to time accept by legislative grant from Puerto Rico any lands, buildings, or other interests or property which may be needed for public purposes by the United States.

(Mar. 2, 1917, ch. 145, §7, 39 Stat. 954; May 17, 1932, ch. 190, 47 Stat. 158.)

CODIFICATION

Section is comprised of proviso clause of section 7 of act Mar. 2, 1917. The text preceding the proviso clause of section 7 is classified to section 747 of this title.

CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico" pursuant to act May 17, 1932, which is classified to section 731a of this title.

1921—Act Feb. 3, 1921, increased allowable public indebtedness from 7 to 10 per centum of aggregate tax valuation of property.

### EFFECTIVE DATE OF 1961 AMENDMENT

Section 2 of Pub. L. 87-121 provided that: "Section 1 of this Act [amending this section] shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act [this section] specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth)."

[Referendum held Dec. 10, 1961, and debt limitation amendment to Article VI, § 2, of Constitution of Commonwealth of Puerto Rico ratified by a majority of voters.]

### § 745a. Public improvement bonds sold to United States or agency thereof excluded from public indebtedness

Bonds or other obligations of Puerto Rico or any municipal government therein, payable solely from revenues derived from any public improvement or undertaking (which revenues may include transfers by agreement or otherwise from the regular funds of the issuer in respect of the use by it of the facilities afforded by such improvement or undertaking), and issued and sold to the United States of America or any agency or instrumentality thereof, shall not be considered public indebtedness of the issuer within the meaning of section 745 of this title.

(Aug. 13, 1935, ch. 516, 49 Stat. 611.)

### CODIFICATION

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

### § 745b. Refunding bonds excluded temporarily in computing indebtedness

Any bonds or other obligations of Puerto Rico issued after August 3, 1935, for the purpose of retiring previously outstanding bonds or obligations shall not be included in computing the public indebtedness of Puerto Rico under section 745 of this title, until six months after their issue.

(Aug. 3, 1935, ch. 435, 49 Stat. 516.)

### CODIFICATION

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

### § 746. Public lands and buildings; reservations; rights prior to July 1, 1902

All public lands and buildings, not including harbor areas and navigable streams and bodies of water and the submerged lands underlying the same, owned by the United States in the island of Puerto Rico and not reserved by the President of the United States prior to July 1, 1903, pursuant to authority vested in him by law, are granted to the government of Puerto Rico, to be held or disposed of for the use and benefit of the people of said island. Said grant is upon the express condition that the government of Puerto Rico, by proper authority, release to

the United States any interest or claim it may have in or upon the lands or buildings reserved by the President as mentioned herein. Nothing herein contained shall be so construed as to affect any legal or equitable rights acquired by the government of Puerto Rico or by any other party, under any contract, lease, or license made by the United States authorities prior to the 1st day of May 1900.

(July 1, 1902, ch. 1383, § 1, 32 Stat. 731; May 17, 1932, ch. 190, 47 Stat. 158.)

### CODIFICATION

Section was not enacted as part of the Puerto Rican Federal Relations Act which comprises this chapter.

### CHANGE OF NAME

"Puerto Rico" substituted in text for "Porto Rico" pursuant to act May 17, 1932, which is classified to section 731a of this title.

### LAW LIBRARY

Section 2 of act July 1, 1902, made an appropriation for the purchase of a law library for the use of the United States District Court for Puerto Rico.

### EXPENSES AND TERM OF RESIDENT COMMISSIONER

Section 3 of act July 1, 1902, related to allowance of traveling expenses in addition to salary to the resident commissioner from Puerto Rico, and to the commencement of his term.

### § 747. Public property transferred; "control" defined

All property which may have been acquired in Puerto Rico by the United States under the cession of Spain in the treaty of peace entered into on the 10th day of December 1898, in any public bridges, road houses, water powers, highways, unnavigable streams and the beds thereof, subterranean waters, mines or minerals under the surface of private lands, all property which at the time of the cession belonged, under the laws of Spain then in force, to the various harbor works boards of Puerto Rico, all the harbor shores, docks, slips, reclaimed lands, and all public lands and buildings not reserved by the United States for public purposes prior to March 2, 1917, is placed under the control of the government of Puerto Rico, to be administered for the benefit of the people of Puerto Rico; and the Legislature of Puerto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all matters, as it may deem advisable. Notwithstanding any other provision of law, as used in this section "control" includes all right, title, and interest in and to and jurisdiction and authority over the aforesaid property and includes proprietary rights of ownership, and the rights of management, administration, leasing, use, and development of such property.

(Mar. 2, 1917, ch. 145, § 7, 39 Stat. 954; May 17, 1932, ch. 190, 47 Stat. 158; Pub. L. 96-205, title VI, § 606(b), Mar. 12, 1980, 94 Stat. 91.)

### CODIFICATION

Section is comprised of that part of section 7 of act Mar. 2, 1917, preceding the proviso clause. The remainder of section 7 is classified to section 748 of this title.

### PRIOR PROVISIONS

Provisions similar to those in this section were contained in act Apr. 12, 1900, ch. 191, § 13, 31 Stat. 80.

Case:17-03283-LTS Doc#:4726-1 Filed:01/14/19 Entered:01/14/19 16:16:44 Desc:
Exhibit Docket Exhibits - 17-bk-3283 Page 77 of 92

Page 1 of 1

◀ | Current ▼ | ▶

<< Previous   TITLE 48 / CHAPTER 4 / SUBCHAPTER I / § 741a   Next
>>

[Print]   [Print selection]

[OLRC Home]  Help

**48 USC 741a: Internal-revenue taxes; levy and collection; discrimination**
Text contains those laws in effect on March 13, 2017

From Title 48-TERRITORIES AND INSULAR POSSESSIONS
    CHAPTER 4-PUERTO RICO
    SUBCHAPTER I-GENERAL PROVISIONS
Jump To:
    Source Credit
    References In Text
    Codification
    Amendments

## §741a. Internal-revenue taxes; levy and collection; discrimination

The internal-revenue taxes levied by the Legislature of Puerto Rico in pursuance of the authority granted by this chapter on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the island: *Provided,* That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico. The officials of the Customs and Postal Services of the United States are directed to assist the appropriate officials of the Puerto Rican government in the collection of these taxes.

(Mar. 2, 1917, ch. 145, §3, 39 Stat. 953 ; Mar. 4, 1927, ch. 503, §1, 44 Stat. 1418 ; Aug. 26, 1937, ch. 831, 50 Stat. 844 .)

Case:17-03283-LTS   Doc#:4776-1   Filed:01/14/19   Entered:01/14/19 16:16:44   Desc:
Exhibit Docket Exhibits - 17-bk-3283   Page 78 of 92

"AUTHORITY TO ORDER RESERVE COMPONENTS TO ACTIVE FEDERAL SERVICE

"SEC. 21. Until July 9, 1951, and subject to the limitations imposed by section 2 of the Selective Service Act of 1948, as amended, the President shall be authorized to order into the active military or naval service of the United States for a period of not to exceed twenty-one consecutive months, with or without their consent, any or all members and units of any or all Reserve components of the Armed Forces of the United States and retired personnel of the Regular Armed Forces."

*62 Stat. 605.
50 U. S. C., Sup. III, app. § 452.*

SEC. 3. So much of section 10 (b) (4) of the Selective Service Act of 1948 (62 Stat. 604) as precedes the second proviso is hereby amended to read as follows: "(4) to appoint, and to fix, in accordance with the Classification Act of 1949, the compensation of such officers, agents, and employees as he may deem necessary to carry out the provisions of this title: *Provided,* That the compensation of employees of local boards and appeal boards may be fixed without regard to the Classification Act of 1949;".

*62 Stat. 620.
50 U. S. C., Sup. III, app. § 460 (b) (4).
Post, p. 1074.
63 Stat. 954.
5 U. S. C., Sup. III, §§ 1071–1153.
Ante, pp. 292, 302;
post, p. 1160.*

SEC. 4. This Act may be cited as the "Selective Service Extension Act of 1950".

Approved June 30, 1950.

[CHAPTER 446]

AN ACT

To provide for the organization of a constitutional government by the people of Puerto Rico.

*July 3, 1950
[S. 3336]
[Public Law 600]*

Whereas the Congress of the United States by a series of enactments has progressively recognized the right of self-government of the people of Puerto Rico; and

Whereas under the terms of these congressional enactments an increasingly large measure of self-government has been achieved: Therefore

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That, fully recognizing the principle of government by consent, this Act is now adopted in the nature of a compact so that the people of Puerto Rico may organize a government pursuant to a constitution of their own adoption.

*Puerto Rico.
Organization of constitutional government.*

SEC. 2. This Act shall be submitted to the qualified voters of Puerto Rico for acceptance or rejection through an island-wide referendum to be held in accordance with the laws of Puerto Rico. Upon the approval of this Act, by a majority of the voters participating in such referendum, the Legislature of Puerto Rico is authorized to call a constitutional convention to draft a constitution for the said island of Puerto Rico. The said constitution shall provide a republican form of government and shall include a bill of rights.

*Referendum.*

*Constitutional convention.*

SEC. 3. Upon adoption of the constitution by the people of Puerto Rico, the President of the United States is authorized to transmit such constitution to the Congress of the United States if he finds that such constitution conforms with the applicable provisions of this Act and of the Constitution of the United States.

Upon approval by the Congress the constitution shall become effective in accordance with its terms.

*Transmittal of constitution to Congress.*

SEC. 4. Except as provided in section 5 of this Act, the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes", approved March 2, 1917, as amended, is hereby continued in force and effect and may hereafter be cited as the "Puerto Rican Federal Relations Act".

*Puerto Rican Federal Relations Act.
39 Stat. 951.
48 U. S. C. § 731 note.
Post, p. 220.*

320         PUBLIC LAWS—CHS. 448, 449, 452—JULY 3, 6, 7, 1950     [64 STAT.

Repeals.

39 Stat. 951.
48 U. S. C. §§ 732,
739, 738, 751–753, 772,
774, 775, 790–785, 787–
789, 795, 799, 811–819,
821–837, 839–844, 861,
872; Sup. III, §§ 759,
771, 771a, 773, 776, 779,
785, 787, 788, 820, 838.

SEC. 5. At such time as the constitution of Puerto Rico becomes effective, the following provisions of such Act of March 2, 1917, as amended, shall be deemed repealed:

(1) Section 2, except the paragraph added thereto by Public Law 362, Eightieth Congress, first session, approved August 5, 1947.

(2) Sections 4, 12, 12a, 13, 14, 15, 16, 17, 18, 18a, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 39, 40, 49, 49b, 50, 51, 52, 53, 56, and 57.

(3) The last paragraph in section 37.

(4) Section 38, except the second paragraph thereof which begins with the words "The Interstate Commerce Act" and ends with the words "shall not apply in Puerto Rico".

SEC. 6. All laws or parts of laws inconsistent with this Act are hereby repealed.

Approved July 3, 1950.

---

[CHAPTER 449]

July 6, 1950
[H. R. 4295]
[Public Law 601]

AN ACT

To provide certain benefits for annuitants who retired under the Civil Service Retirement Act of May 29, 1930, prior to April 1, 1948.

Civil Service Retire-
ment Act, 1930, amend-
ment.
46 Stat. 476.
5 U. S. C. § 736c;
Sup. III, § 736c.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 8 of the Civil Service Retirement Act of May 29, 1930, as amended, is amended by inserting "(a)" after the section number, by striking out the word "paragraph" and inserting in lieu thereof the word "section", and by adding at the end thereof a new subsection as follows:

"(b) (1) In the case of any retired officer or employee mentioned in the first paragraph of subsection (a) who did not elect a survivor's annuity in accordance with the proviso in such subsection, there shall be payable upon his or her death, to his or her wife or husband to whom the annuitant was married before April 1, 1948, an annuity equal to one-half of his or her present annuity (excluding the increase therein under subsection (a)), but not to exceed $600 per annum, during the remainder of the life of such survivor. The provisions of this paragraph shall apply in the case of any such annuitant who died subsequent to April 30, 1948.

"(2) Any such retired officer or employee who elected a survivor's annuity in accordance with the proviso in subsection (a) shall be paid an increase in his annuity of 25 per centum or $300 whichever is the lesser."

Effective date.

SEC. 2. Subsection (b) of section 8 of the Civil Service Retirement Act of May 29, 1930, as added by this Act, shall become effective on the first day of the second month following the date of enactment of this Act, and no survivor's annuity or increase in annuity under such subsection shall accrue for any period prior to the effective date of such subsection.

Approved July 6, 1950.

---

[CHAPTER 452]

July 7, 1950
[S. 2348]
[Public Law 602]

AN ACT

To increase the annual authorization for the appropriation of funds for collecting, editing, and publishing of official papers relating to the Territories of the United States.

Papers relating to
Territories of United
States.

Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That the Act of July 31, 1945 (59 Stat. 510; 5 U. S. C. 166d), is hereby amended by

66 Stat.]       PUBLIC LAW 447—JULY 3, 1952                    327

Public Law 447                              CHAPTER 567

JOINT RESOLUTION

Approving the constitution of the Commonwealth of Puerto Rico which was
adopted by the people of Puerto Rico on March 3, 1952.

July 3, 1952
[H. J. Res. 430]

Whereas the Act entitled "An Act to provide for the organization of
a constitutional government by the people of Puerto Rico", approved
July 3, 1950, was adopted by the Congress as a compact with the
people of Puerto Rico, to become operative upon its approval by
the people of Puerto Rico; and

Whereas the people of Puerto Rico overwhelmingly approved such
Act in a referendum held on June 4, 1951, and a constitution for the
Commonwealth of Puerto Rico was drafted by a constitutional con-
vention held as provided by such Act from September 17, 1951, to
February 6, 1952; and

Whereas such constitution was adopted by the people of Puerto Rico,
by a vote of three hundred seventy-four thousand six hundred and
forty-nine to eighty-two thousand nine hundred and twenty-three,
in a referendum held on March 3, 1952; and

*[handwritten: 374,649 yes / 82,923 No]*

Whereas the President of the United States has declared that the con-
stitution of the Commonwealth of Puerto Rico conforms fully with
the applicable provisions of such Act of July 3, 1950, and of the
Constitution of the United States, that it contains a bill of rights,
and provides for a republican form of government, and has trans-
mitted the constitution of the Commonwealth of Puerto Rico to the
Congress for its approval; and

Whereas the Congress has considered the constitution of the Common-
wealth of Puerto Rico and has found it duly to conform to the above
requirements: Therefore be it

*Resolved by the Senate and House of Representatives of the United
States of America in Congress assembled,* That the constitution of
the Commonwealth of Puerto Rico which was drafted by the selected
delegates to the Constitutional Convention of Puerto Rico and
adopted by the people of Puerto Rico in a referendum of March
3, 1952, in accordance with the Act entitled "An Act to provide for the
organization of a constitutional government by the people of Puerto
Rico", approved July 3, 1950 (64 Stat. 319; 48 U. S. C., secs. 731b-
731e), is hereby approved by the Congress of the United States,
except section 20 of article II of said constitution: *Provided,* That sec-
tion 5 of article II thereof shall have no force and effect until amended
by the people of Puerto Rico under the procedure prescribed by article
VII of the constitution of the Commonwealth of Puerto Rico by add-
ing to such section 5 the following declaration: "Compulsory attend-
ance at elementary public schools to the extent permitted by the facili-
ties of the state as herein provided shall not be construed as applicable
to those who receive elementary education in schools established under
nongovernmental auspices": *Provided further,* That except for the
purpose of adopting the amendments to section 5 of article II and to
section 3 of article VII as herein provided, article VII of said con-
stitution likewise shall have no force and effect until amended by the
people of Puerto Rico under the terms of said article by adding to
section 3 of article VII the following new sentence: "Any amendment
or revision of this constitution shall be consistent with the resolution
enacted by the Congress of the United States approving this constitu-
tion, with the applicable provisions of the Constitution of the United
States, with the Puerto Rican Federal Relations Act, and with Public
Law 600, Eighty-first Congress, adopted in the nature of a compact":
*And provided further,* That the constitution of the Commonwealth
of Puerto Rico hereby approved shall become effective when the Con-

Puerto Rico.

39 Stat. 951.
64 Stat. 319.
48 USC 731 note,
731b-731e.

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

Case:17-03283-LTS   Doc#:4776-1   Filed:01/14/19   Entered:01/14/19 16:16:44    Desc:
Exhibit Docket Exhibits - 17-bk-3283   Page 81 of 92

stitutional Convention of Puerto Rico shall have declared in a formal
resolution its acceptance in the name of the people of Puerto Rico of
the conditions of approval herein contained, and when the Governor
of Puerto Rico, being duly notified by the proper officials of the Con-
stitutional Convention of Puerto Rico that such resolution of accept-
ance has been formally adopted, shall issue a proclamation to that
effect.

Approved July 3, 1952.

---

Public Law 448

July 3, 1952
[H. R. 6578]

AN ACT                     CHAPTER 568

To provide for research into and development of practical means for the econom-
ical production, from sea or other saline waters, of water suitable for agri-
cultural, industrial, municipal, and other beneficial consumptive uses, and
for other purposes.

*Be it enacted by the Senate and House of Representatives of the
United States of America in Congress assembled,* That, in view of
the acute shortage of water in the arid areas of the Nation and
elsewhere and the excessive use of underground waters throughout
the Nation, it is the policy of the Congress to provide for the develop-
ment of practicable low-cost means of producing from sea water, or
from other saline waters, water of a quality suitable for agriculture,
industrial, municipal, and other beneficial consumptive uses on a
scale sufficient to determine the feasibility of the development of such
production and distribution on a large-scale basis, for the purpose of
conserving and increasing the water resources of the Nation.

SEC. 2. In order to carry out the purposes of this Act, the Secre-
tary of the Interior, acting through such agencies of the Department
of the Interior as he may deem appropriate, is authorized—

(a) by means of research grants and contracts as set forth in
subsection (d) of this section to conduct research and technical
development work, to make careful engineering studies to ascer-
tain the lowest investment and operating costs, and to determine
the best plant designs and conditions of operation;

(b) to study methods for the recovery and marketing of byprod-
ucts resulting from and incident to the production of water as
herein provided for the purpose of ascertaining the possibilities
of offsetting the costs of water production in any area by the
commercial utilization of such products;

(c) to acquire, by purchase, license, lease, or donation, secret
processes, technical data, inventions, patent applications, patents,
licenses, land and any interest in land (including water rights,
easements, and leasehold interests), plants and facilities, and other
property or rights: *Provided,* That the land or other property
acquired hereunder shall not exceed that necessary to carry on
the experiments and demonstrations for the purposes herein
provided;

(d) to engage, by noncompetitive contract or otherwise, chem-
ists, physicists, engineers, and such other personnel as may be
deemed necessary. And any educational institution, scientific
organization, or industrial or engineering firm deemed suitable to
do any part of the research or other work, and to the extent appro-
priate to correlate and coordinate the research and development
work of such educational institutions, scientific organizations and
industrial and engineering firms; and

Water research
and development.

Authority of Sec-
retary of Interior.

Art. VI § 2      CONSTITUTION

1. **Referendum.** The requirement of a referendum in the Constitution is only applicable in cases in which the result of the legislative action carries the disappearance of a municipality as a legal, social and economic body. 1958 Op. Sec. Jus. No. 51.

If the intention of the constituents would have been to hold a referendum in the cases of modification of the territorial limits of a municipality it would have been so expressed. 1958 Op. Sec. Jus. No. 51.

The only references to a referendum in the Constitution deal with the abolishment and consolidation of municipalities (this section) and with amendments to the Constitution (art. VIII, unless as set provided for by expressly; there is no need to submit to referendum the repeal of an act. 1958 Op. Sec. Jus. No. 21.

2. **Committee of municipal complaints.** The Act creating the Committee for the Settlement of Municipal Complaints constitutes an exercise by the Legislative Assembly of the power vested in it by virtue of this section. Rodriguez v. Committee, etc., 84 P.R.R. 66 (1961).

3. **Delegation of power.** The term "police power of the states" is defined as that power inherent in the State and utilized by the legislature to prohibit or regulate certain activities for the purpose of protecting public order and securing the morals, health and general welfare of the community, and that power may be delegated to municipalities. (Referring Op. Sec. Just. No. 1958-40.) 1984 Op. Sec. Jus. No. 33.

## § 2. [Power of taxation; power to contract debts]

The power of the Commonwealth of Puerto Rico to impose and collect taxes and to authorize their imposition and collection by municipalities shall be exercised as determined by the Legislative Assembly and shall never be surrendered or suspended. The power of the Commonwealth of Puerto Rico to contract and to authorize the contracting of debts shall be exercised as determined by the Legislative Assembly, but no direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith, credit and taxing power of the Commonwealth shall be pledged shall be issued by the Commonwealth, if the total of (i) the amount of principal of and interest on such bonds and notes, together with the amount of principal of and interest on all such bonds and notes theretofore issued by the Commonwealth and then outstanding, payable in any fiscal year and (ii) any amounts paid by the Commonwealth in the fiscal year next preceding the then current fiscal year for principal or interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth, shall exceed 15 percent of the average of the total amount of the annual revenues raised under the provisions of Commonwealth legislation and covered into the Treasury of Puerto Rico in the two fiscal years next preceding the then current fiscal year; and no such bonds or notes issued by the Commonwealth for any purpose other than housing facilities shall mature later than 30 years from their date and no bonds or notes issued for housing facilities shall mature later than 40 years

Art. VI § 2      GENERAL PROVISIONS

from their date; and the Commonwealth shall not guarantee any obligations evidenced by bonds or notes if the total of the amount payable in any fiscal year on account of principal of and interest on all the direct obligations referred to above theretofore issued by the Commonwealth and then outstanding and the amounts referred to in item (ii) above shall exceed 15 percent of the average of the total amount of such annual revenues.

The Legislative Assembly shall fix limitations for the issuance of direct obligations by any of the municipalities of Puerto Rico for money borrowed directly by such municipality evidenced by bonds or notes for the payment of which the full faith, credit and taxing power of such municipality shall be pledged; Provided, however, That no such bonds or notes shall be issued by any municipality in an amount which, together with the amount of all such bonds and notes theretofore issued by such municipality and then outstanding, shall exceed the percentage determined by the Legislative Assembly, which shall be not less than five per centum (5%) nor more than ten per centum (10%) of the aggregate tax valuation of the property within such municipality.

The Secretary of the Treasury may be required to apply the available revenues including surplus to the payment of interest on the public debt and the amortization thereof in any case provided for by § 8 of this Article VI at the suit of any holder of bonds or notes issued in evidence thereof.

[As amended by the voters at a referendum held Dec. 10, 1961.]

### History

**Effectiveness.**
The referendum of Dec. 10, 1961, was held pursuant to Act Sept. 29, 1961, No. 1, p. 401, eff. Sept. 29, 1961; and Proposal No. 1 contained the amendment to this section. Proposal No. 2 in the referendum provided that the amendment should take effect "upon the ratification thereof by a majority of the electors voting thereon at a referendum held for that purpose." The amendment was so ratified at said referendum.

**Cross references.**
Power to impose taxes and to contract debts, see Federal Relations Act, § 3.
See § 3 of Puerto Rican Federal Relations Act, set out herein, for 1961 amendment striking out limitations on debt-incurring liability of Puerto Rico and its municipalities.

### Annotations

1. Generally.
2. Public purpose in taxation.
3. Taxation.
4. Delegation of powers.
5. Source of income.
6. Voiding of power.
7. Construction.

EXHIBIT 14

# L E Y E S

DE LA

## QUINTA SESION EXTRAORDINARIA

DE LA

## TERCERA ASAMBLEA LEGISLATIVA

Y DE LA

## PRIMERA SESION ORDINARIA

Y DE LA

## PRIMERA, SEGUNDA Y TERCERA

## SESIONES EXTRAORDINARIAS

DE LA

## CUARTA ASAMBLEA LEGISLATIVA

DEL

### ESTADO LIBRE ASOCIADO DE PUERTO RICO

VOLUMEN DE COPIAS CERTIFICADAS DE LOS ORIGINALES
DE DICHAS LEYES

DEPARTAMENTO DE HACIENDA
Servicio de Compra y Suministro—División de Imprenta
SAN JUAN, P. R.
1 9 6 1

(Sust. al P. del S. 259)
(Conferencia)

[NÚM. 1]

*[Aprobada en 29 de septiembre de 1961]*

## LEY

Para disponer la celebración de un referéndum en el cual se someterá al pueblo de Puerto Rico la proposición de enmienda a la Constitución del Estado Libre Asociado de Puerto Rico determinada y acordada por la Asamblea Legislativa de Puerto Rico mediante la Resolución Concurrente núm. 3 del Senado, aprobada en la Segunda Legislatura Extraordinaria de la Cuarta Asamblea Legislativa del Estado Libre Asociado de Puerto Rico; para disponer todo lo relativo a dicho referéndum; para disponer que el mismo se celebrará en 10 de diciembre de 1961; para disponer la forma en que se han de contar los votos emitidos en dicho referéndum y la forma de proclamar el resultado del mismo; para asignar la suma de seiscientos setenta mil (670,000) dólares a la Junta Estatal de Elecciones y a los partidos políticos para llevar a cabo dicho referéndum y para ciertos otros fines; para definir ciertos delitos en relación con el referéndum dispuesto en esta ley y señalar las penas correspondientes a tales delitos; para disponer que en dicho referéndum puedan votar aquellas personas que no habían cumplido 21 años en noviembre 8 de 1960 pero que cumplan o hayan cumplido dicha edad el 10 de diciembre de 1961, y fijar las condiciones y el procedimiento al efecto.

*Decrétase por la Asamblea Legislativa de Puerto Rico:*

...

...

...

Sección 28.—Antes del 1 de noviembre de 1961 el Superintendente General de Elecciones ordenará la impresión de las papeletas que se usarán en el referéndum. Dichas papeletas serán de tamaño uniforme e impresas con tinta negra en papel

11

blanco grueso de manera que lo impreso en ellas no se trasluzca al dorso. En cada una de dichas papeletas, a todo lo ancho de la misma y en su parte superior, aparecerá la siguiente expresión: REFERENDUM PARA LA RATIFICACION (ACEPTACION) O RECHAZO (NO ACEPTACION) DE LA ENMIENDA PROPUESTA POR LA ASAMBLEA LEGISLATIVA A LA SECCION 2 DEL ARTICULO VI DE LA CONSTITUCION DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO. Debajo de dicha expresión aparecerán dos columnas. En la parte superior de la primera de dichas dos columnas aparecerá la siguiente oración: "Voto a favor de que se enmiende la Sección 2 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico para que se lea según la misma aparece transcrita en la parte inferior de esta columna, en sustitución de las disposiciones para establecer el límite de la capacidad prestataria del Estado Libre Asociado de Puerto Rico y de sus municipios que aparecen en la Sección 3 de la Ley de Relaciones Federales con Puerto Rico". Debajo de esta oración aparecerá, como insignia, un cuadrado, todo en color negro, cada una de cuyas cuatro líneas tenga una pulgada y cuarto de largo, con la palabra "SI" en su centro, en letras blancas, y debajo de la insignia un espacio adecuado para la marca del elector y debajo de dicho espacio el texto en español de la enmienda a la Constitución del Estado Libre Asociado de Puerto Rico que se somete a votación mediante dicho referendum. En la parte superior de la otra columna, aparecerá la siguiente oración: "Voto en contra de que se enmiende la Sección 2 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico para que se lea según la misma aparece transcrita en la parte inferior de esta columna, en sustitución de las disposiciones para establecer el límite de la capacidad prestataria del Estado Libre Asociado de Puerto Rico y de sus municipios que aparecen en la Sección 3 de la Ley de Relaciones Federales con Puerto Rico". Debajo de esta oración aparecerá, como insignia, un círculo, de un diámetro de una pulgada y cuarto, con la circunferencia en color negro y de un espesor de un dieciséisavo de pulgada, con la palabra "NO" en su centro, en letras negras, y debajo de la insignia un espacio adecuado para la marca del elector y debajo de dicho espacio el texto en español de la enmienda a la Constitución del Estado Libre Asociado de Puerto Rico que se somete a votación mediante dicho referéndum. Dichas dos columnas estarán separadas por una raya vertical

12

LEYES DE PUERTO RICO

435

gruesa.  En la parte inferior y al dorso de dicha papeleta aparecerá impresa a todo lo ancho de la misma, en inglés, la enmienda a la Constitución del Estado Libre Asociado de Puerto Rico que se somete a votación mediante dicho referéndum.

13

75 STAT.]        PUBLIC LAW 87-121—AUG. 3, 1961                    245

Mount Diablo base and meridian ; a 1-inch iron pipe set in the ground bears south 41 degrees 40 minutes west 146.13 feet ; running thence, first north 41 degrees 40 minutes east 32.41 feet ; second from a tangent that bears south 49 degrees 51 minutes 05 seconds east, on a curve to the right with a radius of 1,800 feet, through a central angle of 3 degrees 08 minutes 50 seconds, a distance of 98.72 feet to a point on the southeast boundary of lot 2 in block numbered 13 of the townsite of Weaverville, Trinity County, California, which point bears south 31 degrees 43 minutes west 50.47 feet from the centerline of State high-way at engineers' station 806+89.71 P.O.C. ; third south 31 degrees 43 minutes west 130.63 feet on the boundary of said block numbered 13 to the southeast corner of said lot numbered 1 in block numbered 13 ; fourth south 89 degrees 39 minutes west 164.00 feet on the boundary of said lot 1 ; fifth north 41 degrees 40 minutes east 191.71 feet to the point of beginning.  Containing 0.462 acre, more or less.

Approved August 3, 1961.

Public Law 87-121

JOINT RESOLUTION

To provide for amending section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458).

<div style="text-align:right">August 3, 1961.<br>[H. J. Res. 124]</div>

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458), is amended by deleting therefrom the following language : "*Provided, however,* That no public indebtedness of Puerto Rico and the munic-ipalities of San Juan, Ponce, Arecibo, Rio Piedras and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," and "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted."

*Puerto Rican Federal Relations Act, amendment. 50 Stat. 845. 48 USC 745.*

SEC. 2. Section 1 of this Act shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pur-suant to section 1 of article VII of the constitution of the Common-wealth of Puerto Rico, to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Com-monwealth).

*Effective date; Public referen-dum. 48 USC 731d note.*

Approved August 3, 1961.

http://uscode.house.gov/images/stat/75/245.png

3/11/2017

EXHIBIT 16

458                    PUBLIC LAWS—CHS. 729–731—AUG. 17, 1950            [64 STAT.

### EFFECT OF TERMINATION OF INSURANCE OF MEMBER BANKS

49 Stat. 891.
*Ante, p. 457.*

SEC. 7. The last sentence of section 12B (i) (2) of the Federal Reserve Act (12 U. S. C., sec. 264 (i) (2)), is amended to read as follows: "Except as provided in paragraph (2) of subsection (e) of this section, whenever a member bank shall cease to be a member of the Federal Reserve System, its status as an insured bank shall, without notice or other action by the board of directors, terminate on the date the bank shall cease to be a member of the Federal Reserve System, with like effect as if its insured status had been terminated on said date by the board of directors after proceedings under paragraph (1) of this subsection."

### CONTINUED MEMBERSHIP IN THE FEDERAL RESERVE SYSTEM

38 Stat. 259.

SEC. 8. Section 9 of the Federal Reserve Act (title 12, U. S. C., sec. 321), as amended, is amended by inserting after the first paragraph thereof the following new paragraph:

"Upon the conversion of a national bank into a State bank, or the merger or consolidation of a national bank with a State bank which is not a member of the Federal Reserve System, the resulting or continuing State bank may be admitted to membership in the Federal Reserve System by the Board of Governors of the Federal Reserve System in accordance with the provisions of this section, but, otherwise, the Federal Reserve bank stock owned by the national bank shall be canceled and paid for as provided in section 5 of this Act. Upon the merger or consolidation of a national bank with a State member bank under a State charter, the membership of the State bank in the Federal Reserve System shall continue."

### SEPARABILITY CLAUSE

SEC. 9. If any provision of this Act, or the application thereof to any person or circumstance, is held invalid, the remainder of the Act and the application of such provision to other persons or circumstances shall not be affected thereby.

Approved August 17, 1950.

———

[CHAPTER 730]

August 17, 1950
[H. R. 4117]
[Public Law 707]

### AN ACT

To remove the present restriction relating to the granting of privileges within Kings Canyon National Park in order that privileges hereafter granted may be consistent with those granted in other areas of the National Park System, and for other purposes.

Kings Canyon National Park, Calif.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That, in order to permit the granting of privileges within Kings Canyon National Park, California, upon terms that are consistent with those granted in other national parks pursuant to the Act of August 25, 1916 (39 Stat. 535), the last sentence in section 4 of the Act of March 4, 1940 (54 Stat. 41, 44; 16 U. S. C., 1946 edition, sec. 80c), which limits the duration of such privileges to five years, is hereby repealed.

16 U. S. C. §§ 1–4, 22, 43.

Approved August 17, 1950.

———

[CHAPTER 731]

August 17, 1950
[H. R. 5362]
[Public Law 708]

### AN ACT

To amend section 3 of the Organic Act of Puerto Rico.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 3 of

64 STAT.]   81ST CONG., 2D SESS.—CHS. 731-734—AUG. 17, 1950   459

the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes", approved March 2, 1917, as amended, is hereby amended by inserting in the first proviso after the word "Ponce" a comma and the words "Arecibo, Rio Piedras".

39 Stat. 965.
48 U. S. C. § 745.

Approved August 17, 1950.

[CHAPTER 732]

AN ACT

For expenditure of funds for cooperating with the public school board at Walker, Minnesota, for the extension of public-school facilities to be available to all Indian children in the district, and for other purposes.

August 17, 1950
[H. R. 7431]
[Public Law 709]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That there is hereby authorized to be appropriated, out of any funds in the Treasury not otherwise appropriated, an additional sum of $80,000 to be available to the Secretary of the Interior for the purpose of cooperating with Independent School District Numbered 5, Cass County, Minnesota, at Walker, Minnesota, for the construction, extension, equipment, and improvement of public school facilities at Walker, Minnesota, as authorized by the Act of July 1, 1940 (54 Stat. 707, 708), and the Act of July 24, 1947 (61 Stat. 414): *Provided,* That in consideration of the amount heretofore appropriated and the amount which may be appropriated to carry out the provisions of this section, all Indian children residing in such district shall be admitted to the schools of the district without further cost to the United States for instructional, operation, and maintenance purposes.

Walker, Minn.
Appropriation authorized for school facilities.

Approved August 17, 1950.

[CHAPTER 733]

AN ACT

To amend the statute relating to certificates of trade-mark registrations.

August 17, 1950
[H. R. 7105]
[Public Law 710]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the second sentence of subsection (a) of section 7 of the Act of Congress approved July 5, 1946 (ch. 540, 60 Stat. 427; U. S. C., title 15, sec. 1057a), is amended by striking out "contain the statement of the applicant", so that said second sentence reads as follows: "The certificate shall reproduce the drawing of the mark, and state that the mark is registered on the principal register under this Act, the date of the first use of the mark, the date of the first use of the mark in commerce, the particular goods or services for which it is registered, the number and date of the registration, the term thereof, the date on which the application for registration was received in the Patent Office, and any conditions and limitations that may be imposed in the grant of the registration."

60 Stat. 430.
15 U. S. C. § 1057 (a).

Approved August 17, 1950.

[CHAPTER 734]

AN ACT

To provide for the conveyance of a tract of land in Kennebec County, Maine, to the town of Chelsea.

August 17, 1950
[H. R. 8849]
[Public Law 711]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Administrator of Veterans' Affairs is hereby authorized and directed to donate and convey to the inhabitants of the town of Chelsea, Maine,

Chelsea, Maine.
Conveyance.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

2017 MAR 10  PM 5: 25

CLERK'S OFFICE

16-02875 (FAB)
SAN JUAN

LEX CLAIMS, LLC,
JACANA HOLDINGS I, LLC,
JACANA HOLDINGS II LLC,
JACANA HOLDINGS III LLC,
JACANA HOLDINGS IV LLC,
JACANA HOLDINGS V LLC,
MPR INVESTORS LLC,
ROLSG, LLC, AND
SL PUERTO RICO FUND II L.P.

COMPLAINT AND
DECLARATORY AND
INJUNCTIVE RELIEF

PLAINTIFFS

V.

RICARDO ROSELLO NEVAREZ*
in his official capacity as Governor of the
Commonwealth of Puerto Rico.

RAUL MALDONADO GAUTIER*
in his official capacity as Secretary of the
Treasury of the Commonwealth of Puerto Rico.

JOSE I. MARRERO ROSADO*
In his official capacity as Director of the
Office of Management and Budget of the
Commonwealth of Puerto Rico.

* presently holding these positions

THE PUERTO RICO SALES TAX
FINANCING CORPORATION (COFINA)

JUAN VAQUER
In his Official capacity as Executive Director
Of the Puerto Rico Sales Tax Corporation and

BANK OF NEW YORK MELLON CORP.

DEFENDANTS

## SUPPLEMENTARY MOTION TO MOTION TO INTERVENE AND
## REQUESTING DECLARATORY JUDGMENT

**TO THE HONORABLE U.S. DISTRICT COURT FOR THE DISTRICT OF P.R.
(HUSDCDPR):**

1

Comes now, the Intervenor, Angel Ruiz Rivera, appearing here Pro Se (PS) and *In Forma Pauperis* (IFP) and respectfully States, Alleges and Prays as follows:

Enclosed please find copy of a Table With A Detail Of Revenues Vis A Vis The Debt of the P.R. Government from 2000 to 2012 which should serve to give a graphic idea to the HDCDPR and the parties of what we are dealing with.

So I State, Allege and Pray. Respectfully submitted, today, March 15, 2017.

### CERTIFICATE OF SERVICE

I, Angel Ruiz Rivera, putative Intervenor, appearing here *Pro Se* and *In Forma Pauperis* (IFP) hereby certify that I have sent a copy of this Motion To Intervene by e-mail to all the appearing attorneys of record for all the parties according to the docket record.

Angel Ruiz Rivera
Intervenor
Pro Se and IFP
Ext. Villa Rica AA-27
Calle Santa Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.

EXHIBIT

TABLE

2

| | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 2006 | 2007 | 2008 | 2009 | 2010 | 2011 | 2012 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Revenues or Collections | | 6,992,134 | 7,454,399 | 7,841,742 | 7,985,388 | 8,305,869 | 8,341,239 | 8,862,451 | 8,369,031 | 7,710,187 | 7,716,140 | 8,168,316 | 8,667,885 |
| Present and previous year revenues | | | 14,446,533 | 15,296,141 | 15,827,130 | 16,291,057 | 16,846,907 | 17,403,689 | 17,221,482 | 16,099,218 | 15,426,327 | 15,884,456 | 16,828,201 |
| Average 2 years revenues | | | 7,208,267 | 7,648,071 | 7,913,565 | 8,145,529 | 8,423,454 | 8,701,845 | 8,610,741 | 8,034,609 | 7,713,164 | 7,937,228 | 8,413,101 |
| | | | | | | | | | | | | | |
| 15% margen Constitution allowed | | | 1,081,240 | 1,147,211 | 1,187,035 | 1,221,829 | 1,263,518 | 1,305,277 | 1,291,611 | 1,205,191 | 1,156,975 | 1,190,584 | 1,261,995 |
| Two year average + 15% margin | | | 8,289,508 | 8,795,281 | 9,100,600 | 9,387,358 | 9,686,972 | 10,007,121 | 9,902,352 | 9,239,800 | 8,870,139 | 9,127,312 | 9,675,066 |
| | | | | | | | | | | | | | |
| Constitutional Debt 1/ | 5,573,000 | | | 5,584,000 | 6,022,000 | 6,879,000 | 7,307,000 | 7,276,000 | 3,167,000 | 3,759,000 | 9,005,000 | 9,611,000 | 9,982,000 / 10,946,000 |
| Debt over 15% Constitutional margin | | | | 11,000 | 438,000 | 857,000 | 428,000 | -31,000 | 891,000 | 592,000 | -17,000 | 505,000 | -171,000 / -1,268,934 |
| Absolute Difference vs previous year | | | | | | | | | | | | -640,682 | -654,681 |
| Percentual difference | | | 10.06% | 6.30% | 6.20% | 6.50% | 6.20% | -0.40% | 12.20% | 7.20% | -1.80% | 5.60% | 1.8% / 13.07% |
| Municipal Debt 2/ | 1,632,000 | 1,945,000 | 1,798,000 | 1,855,000 | 2,046,000 | 2,181,000 | 2,320,000 | 2,463,000 | 2,819,000 | 2,997,000 | 3,231,000 | 3,537,000 | 3,872,000 |
| Percentual change | 5.00% | 10.90% | 10.06% | 4.70% | 6.60% | 6.80% | 5.70% | 14.60% | 6.30% | 7.80% | 9.50% | 9.50% | 9.50% |
| Public Corporations | 13,699,000 | | 15,124,000 | 15,890,000 | 18,041,000 | 19,234,000 | 20,450,000 | 24,159,000 | 26,342,000 | 26,641,000 | 28,118,000 | 30,801,000 | 30,801,000 |
| Absolute Difference | | | 1,425,000 | 766,000 | 2,151,000 | 1,193,000 | 1,216,000 | 3,709,000 | 2,183,000 | 299,000 | 847,000 | 830,000 | 2,683,000 |
| Percentual Change | 8.20% | | 10.40% | 5.10% | 13.50% | 6.60% | 6.30% | 18.10% | 9.00% | 1.10% | 2.40% | 3.00% | 9.50% |
| Constitutional + Public Corps. Debt | 19,272,000 | | 20,708,000 | 21,912,000 | 24,920,000 | 26,541,000 | 27,726,000 | 32,326,000 | 35,101,000 | 35,647,000 | 36,799,000 | 37,800,000 | 41,746,000 |
| Legislative assignments 3/ | 4,310,000 | | 5,193,000 | 5,640,000 | 6,977,000 | 7,981,000 | 9,558,000 | 5,204,000 | 2,883,000 | 2,760,000 | 2,575,000 | 3,070,000 | 3,160,000 |
| Absolute Difference | | | 883,000 | 447,000 | 1,337,000 | 1,004,000 | 1,577,000 | -4,354,000 | -2,521,000 | -123,000 | -185,000 | 495,000 | 90,000 |
| Percentual change | | | 20.50% | 8.60% | 23.70% | 14.40% | 19.80% | -45.60% | -48.40% | -4.20% | -6.70% | 19.20% | 2.90% |
| COFINA 4/ | | | | | | | | | 2,826 | 11,576 | 14,218 | 14,615 | 15,982 |
| Absolute Difference | | | | | | | | | 3,604 | 5,247 | 2,642 | 517 | 1,447 |
| Percentual Change | | | | | | | | | | 62.90% | 22.90% | 2.90% | 10.00% |
| Subtotal | 25,214,000 | | 27,987,000 | 29,707,000 | 33,944,000 | 38,703,000 | 39,814,000 | 42,818,000 | 45,832,000 | 52,880,000 | 56,823,000 | 58,942,000 | 64,760,000 |
| Absolute Difference | | | 2,753,000 | 1,740,000 | 4,237,000 | 2,759,000 | 2,911,000 | 3,204,000 | 4,114,000 | 5,048,000 | 5,043,000 | 2,119,000 | 5,818,000 |
| Percentual Change | | | 10.90% | 6.20% | 14.30% | 8.10% | 7.30% | 8.10% | 9.60% | 12.90% | 7.30% | 3.70% | 9.90% |
| Nonfunding debt | 1,945,000 | | 2,046,000 | 2,818,000 | 3,491,000 | 3,565,000 | 3,523,000 | 3,385,000 | 6,461,000 | 5,439,000 | 5,383,000 | 5,337,000 | 5,188,000 |
| Absolute Difference | | | 101,000 | 772,000 | 673,000 | 74,000 | -42,000 | -159,000 | 3,096,000 | -1,028,000 | -52,000 | -48,000 | -149,000 |
| Percentual Change | | | 10.90% | 10.90% | 10.90% | 10.90% | 10.90% | 10.90% | 10.90% | 10.90% | 10.90% | 10.90% | 10.90% |
| Total | 27,159,000 | | 30,033,000 | 32,525,000 | 37,434,000 | 40,286,000 | 43,138,000 | 46,183,000 | 53,393,000 | 58,415,000 | 62,205,000 | 64,279,000 | 69,948,000 |

Fuente: Oficina de Gerencia y Presupuesto

1/ Se incluye deuda omitida según la Constitución del Estado Libre Asociado de Puerto Rico. No incluye deuda garantizada por el Gobierno Central emitida por Corporaciones Públicas.

2/ Deuda de las subdivisiones políticas de Puerto Rico, limitada por ley por márgenes prestatarios y capacidad de repago.

3/ Deuda extraconstitucional incurrida por el gobierno cuya pago no compromete el poder de imponer impuestos del estado, pagadera de asignaciones específicas de la Legislatura.

4/ Se refiere a la Corporación del Fondo de Interés Apremiante cuya deuda es pagadera del impuesto sobre las Ventas y Uso (IVU).

Copied from: Informe presentado ante la Comisión Interamericana de Derechos Humanos. "Deuda Pública, Política Fiscal Y Pobreza en P.R.", p.15.

La Clínica Internacional de Derechos Humanos de la Facultad de Derecho de la Universidad Interamericana de P.R. y El Instituto Caribeño De Derechos Humanos (ICADH)

This report was written by various authors who are identified in each part and are the editors of its final form. Annette M. Martínez Orabona, Kelia Toledo Nieves, Jessica Pérez Salazar

Absolute difference figures not in original version added by Ángel Ruiz Rivera

*[handwritten annotation, partially legible:]* the present and previous years revenues and average 2 years figures ... and 15% the Constitution allowed. Two year average + 15% margin