6. Appeal Brief in 16-2208.

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT**

**16-2208**

ASSURED GUARANTY CORP.,
ASSURED GUARANTY MUNICIPAL CORP.,
and AMBAC ASSURANCE CORPORATION

PLAINTIFFS-APPELLEES

V.

ALEJANDRO GARCÍA PADILLA,
JUAN C. ZARAGOZA GÓMEZ,
INGRID RIVERA ROCAFORT,
MELBA ACOSTA FEBO,
LUIS F. CRUZ BATISTA,
VÍCTOR A. SUÁREZ MELÉNDEZ,
CÉSAR A. MIRANDA RODRÍGUEZ,
JUAN FLORES GALARZA, and
JOHN DOES 1-40,

DEFENDANTS-APPELLEES

---

ANGEL RUIZ RIVERA

INTERESTED PARTY-APPELLANT

---

**MOTION FOR PERMISSION TO APPEAL IN FORMA PAUPERIS
AS AN INTERESTED PARTY WHO TIMELY FILED A MOTION TO
INTERVENE AND REQUESTING A DECLARATORY JUDGMENT**

**TO THE HONORABLE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT:**

Comes now, the proposed Intervenor/Appellant, Angel Ruiz Rivera, appearing here Pro Se (PS) and In Forma Pauperis (IFP) de facto and respectfully States, Alleges and Prays as follows:

1

Appellant should be allowed to intervene in the instant Complaint below because three (3) months before it was filed, Appellant had timely filed before the Puerto Rican Tribunal of First Instance, Superior Court of San Juan (TFISCSJ), a Complaint against the Plaintiffs here, among others, for their co-responsibility, ergo, co-liability for having insured unconstitutional wrongful and/or negligent issuance of debt by Puerto Rican authorities.

The Puerto Rican Constitution, expressly and specifically proscribes the issuance of debt in excess of fifteen (15%) percent of the level of the average of the tax collections made during the previous two (2) tax years. At least some of the debt insured by the Plaintiffs in the instant Complaint was issued unconstitutionally, ergo, those portions in excess are null ab initio.

The managers, the Directors and Officers of the Board of Directors of the Plaintiffs; the public liability insurance company of their Directors and Officers; the managers and the Directors and Officers of the Board of Directors of the public liability insurance company of their Directors and Officers; the lawyers of all of the above, the public liability insurance company of all the lawyers; the managers and the Directors and Officers of the Board of Directors of the public liability insurance company of all the lawyers; knew or should had known that at least that portion in excess of the limits specified in the Constitution were obviously unconstitutional, ergo, null ab initio. For this reason, the Plaintiffs in the instant Complaint are co-responsible and co-liable for at least that part of the debt that they themselves insured that was issued unconstitutionally. [1]

---

[1] See Motion To Intervene  at p.3. footnote 3.
*Article VI. General Dispositions*
**Section 2. Power to impose contributions (taxes); to contract debts.**
*"... but no direct obligation of the Free Associated State of Puerto Rico for money borrowed directly by the Free Associated State of Puerto Rico evidenced through bonds or promissory notes for which obligations the good faith and credit and the power to impose contributions of the Free Associated State were committed shall be issued by the Free Associated State of Puerto Rico if the total of (i) the amount for the concept of the principal and interests over those bonds and promissory notes over the totality of those bonds and promissory notes, until then issued by the Free Associated State and in circulation, payable in any fiscal year immediately preceding the current fiscal year and (ii) whatever amounts paid by the Free Associated State for the fiscal year immediately preceding the current for the concept of principal and interests corresponding to whatever obligations evidenced by bonds and promissory notes guaranteed by the Free Associated State, exceed 15% of the average of the total amount of the annual collections ("rentas") obtained in accordance to*

2

The Complaint I filed at the TFISCSJ was dismissed without prejudice for not having been able to retain legal representation in the time ordered by the Honorable Judge in charge, (imposition which I am legally challenging). I have timely appealed that decision before the Tribunal de Apelaciones (TA) and it is sub judice. In the meantime, I continue trying to persuade a lawyer or law firm to assume legal representation of the Plaintiffs in my Complaint,[2] in addition to having had requested both the TFISCSJ and the HUSDCDPR to appoint me a Pro Bono lawyer or law firm but both forums did not rule upon same petition. [3] In any event, upon the eventual granting of my Motion To Intervene, I anticipate that this will cease to be an issue since upon that scenario, it is highly probable that various lawyers may become interested in assuming representation, that is, if I have failed to find one by then.

Because the Complaint I filed at the TFISCSJ it is still sub judice; _and_ because it was filed before the instant one (consequentially legally protected by the first in time- first in right maxim); _and_ because it **has a claim or defense that shares with the main action a common question of law or fact,** there are more than sufficiently enough legal reasons to grant my timely Motion To Intervene. See Federal Rules of Civil Procedure (FRCP). See in particular 24 (b)(1)(B). See my Motion To Intervene al p.1, ¶1, footnote1.

Ironically enough, the Plaintiffs in the instant cause of action below use various clauses of the Puerto Rican Constitution as its main basis in support of their allegations. But at the same time, very accommodatingly and conveniently omit on purpose, the clause which appear before the ones they cite in support in same Constitution, that prohibited the issuance of at least some of the debt unconstitutionally issued and as such wrongly insured by them.

---

_the dispositions of the laws of the Free Associated Sate as income in the Treasure of Puerto Rico during the two years immediately preceding the current fiscal year;..."_

[2] Although as you know, under federal law, no one can be imposed legal representation not of his/her choice or consent. See Faretta v. California, 422 U.S. 806 (1975), and its progeny.

[3] See Motion To Intervene...at p.4, ¶8.

3

Although the exact amount of the amount of debt issued in excess of the constitutional limits will be a matter of discovery eventually, there are estimates by some sources as high as $30 billion dollars.[4] But even assuming that it eventually results into being only ten (10%) percent of that estimate, even then, it makes this effort definitively worthwhile.

For all the above reasons I pray that this HUSCA1C grants this Motion. Enclosed please find the Original of the Affidavit Accompanying Motion For Permission To Appeal In Forma Pauperis.

So I State, Allege and Pray. Respectfully submitted, today, October 9, 2016.

## CERTIFICATE OF SERVICE

I, Angel Ruiz Rivera, Interested Party, Proposed Intervenor/Appellant, appearing here Pro Se and In Forma Pauperis (IFP) de facto, hereby certify that I have sent a copy of this MOTION FOR PERMISSION TO APPEAL IN FORMA PAUPERIS AS AN INTERESTED PARTY WHO TIMELY FILED A MOTION TO INTERVENE AND REQUESTING A DECLARATORY JUDGMENT to all the appearing attorneys of record for all the parties according to the docket record. For the specifics, see Exhibit 2.

Angel Ruiz Rivera
Interested Party/ Intervenor/Appellant
Pro Se and IFP
Ext. Villa Rica AA-27
Calle Santa Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.

Exhibits

---

[4] A commission created by Puerto Rican Law 97 of 2015, named Commission for the Integral Audit of the Public Credit of P.R., (Comisión para la Auditoría Integral del Crédito Público de Puerto Rico), estimated the amount of illegal debt incurred in $30 billion dollars. See related article in El Vocero de P.R., June 3, 2016, included here as Exhibit 1.

4

7. Proposed Appeal Brief in 17-1337.

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

17-1337

LEX CLAIMS LLC, ET AL, Et AL.

PLAINTIFFS-APPELLEES

V.

ANGEL RUIZ RIVERA

MOVANT-APPELLANT

FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
ET AL, ET AL, ET AL, ET AL.

DEFENDANTS

APPELLANT'S PROPOSED APPEAL BRIEF FOR
MOVANT-APPELLANT
PUTATIVE INTERVENOR/INTERESTED PARTY

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Angel Ruiz Rivera
Ext. Villa Rica
AA-27 Calle Santa Rita
Bayamon, P.R. 00959.
787-799-9222
angelruizrivera@gmail.com

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26 of the Federal Rules of Appellate Procedure, appellant, Angel Ruiz Rivera, states that (i) he is not a publicly held corporation; (ii) he has no parent corporation; and (iii) he has no publicly held corporate parents, subsidiaries or affiliates.

ii

## Table of Contents

Cover Page....................................................................................i

Corporate Disclosure Statement................................................ii

Table of Contents............................................................................iii

Table of Authorities.......................................................................v

Statement of Subject Matter and Appellate Jurisdiction.......................1

Statement of Issues Presented On Appeal........................................1

Statement of the Case....................................................................3

Statement of Facts Relevant To This Appeal..................................11

Summary of Argument....................................................................23

Argument.........................................................................................24

Conclusion.......................................................................................25

Certificate of Compliance.............................................................26

Certificate of Service.....................................................................26

# TABLE OF AUTHORITIES

## Federal Jurisprudence

COMMONWEALTH OF PUERTO RICO, ET AL., PETITIONERS 15–233 v. FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL. MELBA ACOSTA-FEBO, ET AL., PETITIONERS 15–255 v. FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL. [June 13, 2016]..............22

COMMONWEALTH OF PUERTO RICO v. SANCHEZ VALLE ET AL. CERTIORARI TO THE SUPREME COURT OF PUERTO RICO, No. 15–108. Argued January 13, 2016—Decided June 9, 2016......................22

Instituto De Educacion Universal v. U.S. Department Education, 99-1628, 209 F.3d 18 (April 12, 2000)...................................................2, 9

## Federal Statutes

28 U.S.C. §1331...................................................................1

28 U.S.C. §1291 ...............................................................1

28 U.S. Code § 1446 ............................................................2

48 U.S.C. § 864.................................................................2

Public Law 81-600 of July 3, 1950 .........................................16, 20

Public Law 447 of July 3, 1952.............................................17, 20

Public Law 87-121 of August 3, 1961.................................18, 19, 22

## Federal Rules

Rule 26 of the Federal Rules of Appellate Procedure...........................1

Federal Rule of Civil Procedure (FRCP) 3......................................1

Rule 81. Applicability of the Rules in General; Removed Actions.........2

## Constitution of P.R

Article VI. General Dispositions, Section 2. Power to impose contributions (taxes); to contract debts........................................................11

v

## Statement of Subject Matter and Appellate Jurisdiction

The Honorable U.S. District Court for the District of P.R. (HUSDCDPR) had subject matter jurisdiction pursuant to title 28 U.S.C. §1331 and Federal Rule of Civil Procedure (FRCP) 3.

This Honorable U.S. Court of Appeals for the First Circuit (HUSCA1C) has appellate jurisdiction over the instant appeal pursuant to 28 U.S.C. §1291 and Federal Rule of Appellate Procedure (FRAP) 3.

## Statement of Issues Presented On Appeal

1. The HUSDCDPR committed plain error when it first denied [although **without prejudice**, see Docket Entry, (D.E.) 191],[1] the Appellant's Motion To Intervene And Requesting Declaratory Judgment (MIRDJ) ruling that the Complaint filed at the Puerto Rico's Honorable Tribunal of First Instance (PRHTFI) Superior Court of San Juan (SCSJ) and which was incorporated as an integral part of the MTIRDJ was included only in Spanish, not complying with 48 U.S.C. § 864, when the record shows that it was included also in English, since it was included in a bilingual format.

---

[1]

| 03/03/2017 | 191 | ORDER re 188 Motion to Intervene and Motion for Declaratory Judgment: DENIED without prejudice for failure to comply with Federal Rule of Civil Procedure 24(c). Even if the complaint filed in the Court of First Instance would be considered as compliance with Local Rule 24(c), the motion would be denied without prejudice for failure to comply with 48 U.S.C. § 864, which requires that all pleadings filed in this Court be in English. Signed by Judge Francisco A. Besosa on 03/03/2017. (brc) (Entered: 03/03/2017) |

1

2. The HUSDCDPR incurred into clear error when it denied this Appellant's MIRDJ ruling that the Complaint filed at the PRTFI which was incorporated as an integral part of same, could not legally be incorporated as such since: "He cannot incorporate a pleading filed in a court of a different jurisdiction",[2] when that is the case in most if not all controversies that are removed from state to federal courts by way of 28 U.S. Code § 1446 - Procedure for removal of civil actions. [3] See also Rule 81. Applicability of the Rules in General; Removed Actions.[4] See also this **HUSCAIC's** own Opinion regarding this strictly legal procedural issue in Instituto De Educacion Universal v. U.S. Department Education, 99-1628, 209 F.3d 18 (April 12, 2000).

---

[2]

| 03/07/2017 | 196 | ORDER re 195 Motion to clarify and Motion for Reconsideration. Clarification and reconsideration DENIED. Putative intervenor must file a pleading in this case. He cannot incorporate a pleading filed in a court of a different jurisdiction. Mr. Ruiz-Rivera may petition the Court to appoint an attorney for him to assist him with this claim. Signed by Judge Francisco A. Besosa on 03/07/2017. (brc) (Entered: 03/07/2017) |

[3] (a)Generally.----

A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

[4] (c) REMOVED ACTIONS.
    (1) *Applicability.* These rules apply to a civil action after it is removed from a state court.
    *(2) Further Pleading.* After removal, repleading is unnecessary unless the court orders it.

2

3. The HUSDCDPR erred by not having issued the declaratory judgment order timely requested, judicially recognizing the incontrovertible, indisputable and irrefutable fact that the Plaintiffs in the instant and related actions all violated the P.R. Constitution and consequentially did not come to this federal *fora* with clean hands and as such they should be held judicially, ergo, financially liable for their fair and proportional share of the damages caused by their wrongful and negligent conduct in the issuance and contracting of the unconstitutional debt, since their entities and their agents all were derelict in their ethical, fiduciary, ministerial and legal duties.

### Statement of the Case

On October 2015 I filed; Angel Ruiz Rivera, Et Al, v. Rafael Hernandez Colon, Et Al, KDP-2015-1158(808) at the PRHTFI-SCSJ, a civil suit against public officials of the Government of P.R. from 1985 until 2012, including the Governors, the legislators, the Secretaries of Justice and Treasury and the Directors and Officers (D's and O's) of all the Boards of Directors of the Government Development Bank (GDB) and all the public corporations and quasi-public entities created by the Government of P.R., and the insurance companies that covered the public liability exposure of same D's and O's which issued and contracted debt in excess of the limits prescribed in the Puerto Rican Constitution for having been derelict in their ethical, fiduciary, ministerial and legal duties by having incurred

3

into deliberately, knowingly, recklessly and wantonly wrongful and negligent conduct in their handling of the funds of the People of P.R..

Besides the government Defendants, I included the D's and O's, who acted as members of the Board of Directors and the insurance companies that covered the public liability exposure of same D's and O's of all the private entities that were involved in the debt issued and contracted in violation of the P.R. Constitution. Among these non-governmental Defendants' entities I included: the brokerage firms, the financial firms and/or banking firms, the insurance firms and the law firms who participated in any way or manner in the issuance and contracting of the evidently obvious unconstitutional debt.

I filed the initial Complaint, Pro Se and IFP, but with the expectation that some law firms or lawyers would become interested in assuming legal representation of what was designed and intended to become a class action suit. Nevertheless after a first denial, upon a timely filed motion for reconsideration, I was granted my IFP application as a result of which I requested and was granted, an Order to the PRHTPI marshal's service to serve summons upon all the Defendants. The PRHTFI went as far as ordering the local marshals to serve summons upon the ex-governors. However, after this Order, the evolution of the process started to become awry.

4

Initially I notified the governmental Defendants of the lawsuit together with a waiver of summons, under the admittedly naïve hypothesis that they were going to cooperate, since after all, if my Complaint's claims come to fruition, as they should in all Justice; the People of P.R. should end saving billions of dollars that should be paid by those who deliberately, knowingly, recklessly and wantonly violated the P.R. Constitution together with the insurance companies that were paid millions of dollars in fees to cover the public liability resulting from the wrongful and negligent acts of all the D's and O's of all the Board of Directors of all the aforementioned public and private entities, who were derelict in their ethical, fiduciary, ministerial and legal duties.

When I realized this was overly naïve on my part not to say absurd, I started preparing the summons forms to be signed, sealed and delivered by the PRHTFI Clerk's office. I submitted the summons forms in batches once I found the identities and the addresses of the many Defendants. To my surprise, when I was making progress, the Honorable Judge suddenly ordered me to retain legal counsel. I immediately started making some contacts but after the thirty (30) days I was given, proved to be not enough, I timely moved for an extension of time and requested to be appointed legal counsel instead of dismissal. The Honorable Judge balked at my petition and proceeded to deny the motion and to dismiss the Complaint without prejudice.

5

I appealed to the P.R. Honorable Tribunal Of Appeals (PRHTA), KLAN201600523, where a panel composed of three Honorable Judges, denied for lack of jurisdiction determining that the appeal was late since I supposedly had 30 days by rule to appeal. It just happens that same determination is clearly and plainly erroneous because when the Government of P.R., its agencies or officers are a party in a civil action such as this, the statute of limitations period is 60 days. (Just as in the federal rules of engagement). I timely moved for reconsideration and the panel has simply not ruled anything over same. As a Pro Se litigant with more than twenty (20) years of experience, as this own HUSCA1C knows very well, more often than not, I have had to endure obtuse injustices like the above, simply because I am litigating Pro Se and the effects of the prose phobia by many judges.

Due to the PRHTA inaction upon my timely filed motion for reconsideration, I timely filed a Mandamus Petition to the Honorable Supreme Tribunal of P.R. (HSTPR), MD-16-002, requesting that they ordered the PRHTA to rule upon the reconsideration mentioned above but to no avail. I also timely filed a motion inviting that upper forum to consider and evaluate the Complaint in first instance, due to the importance

6

and relevance it has for the future of P.R. and all its present and future residents, but also to no avail. [5]

Naturally desperate because of the way our financial crisis has worsened, due to many factors such as the exclusion of P.R. from the protection of the federal bankruptcy laws; the Honorable U.S. Supreme Court's (HUSSC) decision ruling that the version of a local bankruptcy option due to the sui generis scenario provoked by the lack of preemption (whether accidental or intentional)[6] by the federal bankruptcy law was somehow repugnant to the U.S. constitution; the default in the payment of the debt; the geometrical progression in the debt as a result of the default; the lack of an adequate response by all sectors in P.R. to the degree of seriousness and graveness that the repercussions of all of the above is having and will have over our children and grandchildren, I timely moved with a MIRDJ in the Assured Guaranty Corp. Et Al. v. Alejandro Garcia Padilla, Et Al, 16-01073(FAB) civil action at the HUSDCDPR. Same

---

[5] Recently on March 28, 2017, I filed a motion at the HSTPR asking the clarification that its denial of my mandamus petition, was not a decision on the merits, and that the reconsideration of the denial of my appeal by the HTA has to be decided.

[6] From a perfunctory reading of the Congressional Record of the reenactment of the Federal Bankruptcy Act of 1984 no one can determine if the exclusion of Puerto Rico was accidental or intentional. All we know is that at the time, P.R.'s Resident Commissioner Baltasar Corrada Del Rio, Esq., our only delegate before the U.S. House of Representatives was focused in running for Governor. Apparently, not to say evidently, the omission of P.R. in the reenactment of 1984, when we had been included in all its previous enactments, seems to have been caused by an omission on his part and that of his staff who were derelict in their duties and no one in that epoch in the Puerto Rican government administration took the care to timely amend that omission.

MIRDJ was promptly denied and I timely appealed same and it is presently *sub judice* before this HUSCA1C as appeal 16-2208.

In the meantime, as soon as I learned about the instant action below, Lex Claims, LLC., Et Al, Et Al v. Alejandro Garcia Padilla, Et Al, 16-02374(FAB), I prepared and filed on March 3, 2017, a timely MIRDJ similar to the previous one except for certain amendments. This time, the Honorable Judge Besosa promptly granted my IFP application and did not rule that same MTIRDJ was frivolous as he had done with the previous one in the Assured Guaranty Corp. legal suit. Nevertheless, he proceeded to deny same MIRDJ first because the Complaint I had previously filed at the PRHTFI and which I again had incorporated as part of my MIRDJ was supposedly in Spanish only when the record shows this was a clear and plain error on his part since it was included in a bilingual both Spanish and English format. Actually, it was translated paragraph by paragraph in order to facilitate any cross-reference the reader may need to contrast the English translated version with the Spanish original version.

I then filed a Motion To Clarify Order Or In The Alternative Motion For Reconsideration on March 6, 2017, D.E. 195. This time it was denied the next day, March 7, 2017, D.E. 196, with an Order where the Honorable Judge ruled that I could not "legally incorporate a pleading filed in a court of a different jurisdiction". With all due respect, this Order serves to confirm the pre-textual character of the Honorable Judge Besosa's orders in

8

an undisguised attempt to delay if not derail my genuine and legitimate attempts to have the HUSDCDPR grant my timely filed motions for intervention and requesting declaratory judgments in the civil actions involving the Puerto Rican government debt.

That the above cited order was purely pre-textual, again this expressed with all due respect, can be logically inferred from a reading of this HUSCA1C Opinion in one of my many previous appeals I have litigated before you Pro Se. From the first appeal I filed before this HUSCA1C; Instituto De Educacion Universal V. U.S. Department Education, 99-1628, where I got a favorable decision, regardless of the fact that it later became merely a pyrrhic victory, a fact which is besides the point now, I cite the following pertinent excerpt as an authority in support of the instant legal argument in the instant appeal.

> The rule that every civil action is initiated by the filing of a complaint **historically has been relaxed in actions that originate elsewhere and are then transferred to a federal district court (e.g., by removal from a state court).** We are troubled by this rigid approach to the construction of pleadings. **Its failure to do so constituted an abuse of discretion.** We believe that, given the peculiar circumstances of this case, the district court should have charted such a course before terminating the entire action (say, by issuing a show-cause order or otherwise advising the Institute that its case was at risk). In such a situation, the district court need not try to fashion a silk purse from a sow's ear by treating a paper that obviously was intended to serve a different purpose as a complaint, **but instead may direct the filing of a complaint.** See Fed.R.Civ.P. 81(c) (**eliminating the need for repleading unless the transferee court so orders**).

9

In the instant case, the record shows that the lower court did not order the filing of a different complaint, ergo, its second pretext to deny my justly and timely filed intervention should be judicially ruled to be clearly and plainly erroneous, that is without even getting into whether it was issued as a result of the pervasive bias and prejudice against this Pro Se and IFP litigant, the record shows that the Honorable Judge Besosa exhibited in my previous intervention in closely related civil case and which is object of appeal 16-2208, also *sub judice* before this own HUSCA1C and which I am respectfully requesting hereby that is consolidated with the instant one.

Worse than denying my timely filed motions for intervention, is the sad reality that the Honorable Judge Besosa did not issue a declaratory judgment order, which constitute a dereliction in his ministerial duties by balking and shying away reticently from his historical and unique responsibility of judicially declaring that the section 2 of Article VI of the P.R. Constitution was indeed violated by all the Defendants in my Complaint and by both all the Plaintiffs' and Defendants' in the civil actions before his consideration and evaluation as a preamble to the subsequent eventual determination of each one's fair and proportional share of civil and criminal responsibility in all this multibillionaire imbroglio.

Although I am not a lawyer and consequentially a functional illiterate in these endeavors, as far as I understand, my motion to intervene and requesting declaratory judgment are nor mutually exclusive legally

10

speaking. In other words, if for whatever reasons, the Honorable Judge Besosa did not want to have me at all involved in this fracas crossfire, (and all the others who may eventually end following me in what is probable that should become class action legal suit), the least he could and should have done, given the facts, the evidence and the Congressional letter, intent, and spirit in the Public Laws I cited in support of my motions and that I was able to discover (without the benefit of even a modicum of procedural discovery) and timely raised before him, was to issue the declaratory judgment order timely requested. This would have not only placed the Government of P.R. in a just and fair position before its scores and scores of creditors but it would have saved precious time since such a declaratory judgment order would have forced the most needed and wanted audit of this humongous debt of the P.R. Government as a prerequisite for the determination of the order of prelation or who's who among Puerto Rico's creditors and who is going to get paid how much, when and by whom, which in any event, should and will follow *a fortiori* under the *sui generis* and extraordinary circumstances of the instant and related controversies before this federal *fora*.

### **Statement of Facts Relevant To This Appeal**

The Constitution of Puerto Rico (P.R.), clearly establishes:
*Article VI. General Dispositions*

11

**Section 2. Power to impose taxes; to contract debts.**[7]

*The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debts will be exerted as the Legislative Assembly disposes, but it will not be surrendered or suspended. The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debt will be exerted as the Legislative Assembly disposes, **but no direct obligation** of the Free Associated State of Puerto Rico **for money borrowed directly** by the Free Associated State of Puerto **Rico evidenced through bonds or promissory notes for which obligations the good faith and credit and the power to impose contributions** of the Free Associated State **were committed shall be issued** by the Free Associated State of Puerto Rico **if the total of (i) the amount for the concept of the principal and interests over those bonds and promissory notes over the totality of those bonds and promissory notes, until then issued***

---

[7] El poder del Estado Libre Asociado para imponer y cobrar contribuciones y autorizar su imposición y cobro por los municipios se ejercerá según se disponga por la Asamblea Legislativa, y nunca será rendido o suspendido. El poder del Estado Libre Asociado de Puerto Rico para contraer y autorizar deudas se ejercerá según se disponga por la Asamblea Legislativa, **pero ninguna obligación directa del Estado Libre Asociado de Puerto Rico por dinero tomado a préstamo directamente por el Estado Libre Asociado de Puerto Rico evidenciada mediante bonos o pagarés para el pago de la cual la buena fe, el crédito y el poder de imponer contribuciones del Estado Libre Asociado de Puerto Rico fueren empeñados será emitida por el Estado Libre Asociado de Puerto Rico si el total de** (i) el monto del principal de e intereses sobre dichos bonos y pagarés, junto con el monto del principal de e intereses sobre la totalidad de tales bonos y pagarés hasta entonces emitidos por el Estado Libre Asociado y en circulación, pagaderos en cualquier año económico y (ii) cualesquiera cantidades pagadas por el Estado Libre Asociado en el año económico inmediatamente anterior al año económico corriente en concepto de principal e intereses correspondientes a cualesquiera obligaciones evidenciadas mediante bonos o pagarés garantizadas por el Estado Libre Asociado, **excediere el 15% del promedio del monto total de las rentas anuales obtenidas de acuerdo con las disposiciones de las leyes del Estado Libre Asociado e ingresadas en el Tesoro de Puerto Rico en los dos años económicos inmediatamente anteriores al año económico corriente; y ninguno de dichos bonos o pagarés emitidos por el Estado Libre Asociado para cualquier fin que no fuere facilidades de vivienda vencerá con posterioridad a un término de 30 años desde la fecha de su emisión** y ningún bono o pagaré emitido para fines de vivienda vencerá con posterioridad a un término de 40 años desde la fecha de su emisión; y el Estado Libre Asociado no garantizará obligación alguna evidenciada mediante bonos o pagarés si el total de la cantidad pagadera en cualquier año económico en concepto de principal e intereses sobre la totalidad de las antes referidas obligaciones directas hasta entonces emitidas por el Estado Libre Asociado y en circulación y las cantidades a que se hace referencia en la cláusula (ii) excediere el 15 por ciento del promedio del monto total de dichas rentas anuales.

12

*by the Free Associated State **and in circulation, payable in any
fiscal year immediately preceding the current fiscal year** and (ii)
**whatever amounts paid** by the Free Associated State **for the fiscal
year immediately preceding the current for the concept of principal
and interests corresponding to whatever obligations evidenced by
bonds and promissory notes guaranteed** by the Free Associated
State, **exceed 15% of the average of the total amount of the annual
collections ("rentas") obtained in accordance to the dispositions of
the laws of the Free Associated State as income in the Treasure of
Puerto Rico during the two years immediately preceding the
current fiscal year; and none of said bonds and promissory notes
issued by the Free Associated State for any purpose rather than
housing facilities shall be due after a 30 year term from the date of
its issuance;** and no bond or promissory note issued for housing
purposes shall be due after a 40 year term from the date of its
issuance; and the Free Associated State shall not guarantee any
obligation evidenced through bonds or promissory notes if the total
of the amount payable in any fiscal year for the concept of principal
and interests over the totality of the previously referred direct
obligations until then issued by the Free Associated State and in
circulation and the amounts made reference to in clause (ii)
exceeded 15 per cent of the average of the total amount of these
annual collections.*

For unknown reasons, heretofore this important, relevant and significant
clause of same Constitution have been violated since at least 1985 by all
Governors and the members of the executive and legislative branches of the
Government of P.R. and the D's and O's and all the members of the Board
of Directors of all its so-called public corporations and quasi-public entities
that the legislature and the Governors have approved from time to time to
issue and contract debt on their own, or in common words to make or take
loans. Incomprehensibly, this debt has been denominated euphemistically
as "extra-constitutional" since ex-Governor Hernandez Colon's tenure from
1985-1989.

13

As we all know, it is hornbook law besides so overly logical as to withstand even argumentation, that conduct is either constitutional or unconstitutional. Only in Puerto Rico where the legal and political fiction of a Free Associated State was created, believed and trusted, for decades by most Puerto Ricans and even many U.S. of A. people, can you find such admittedly creative but nonetheless demagogical term such as "extra-constitutional". It is more than ripe time for this federal system of Justice to tell it like it is and call this as what it is: unconstitutional; ergo, null and void *ab initio.*

For unknown reasons also, (although it is evidently obvious under the circumstances that it has been for very accommodating and convenient reasons) all the D's and O's of all the Boards of Directors of all the brokerage firms, the financial firms and banks, the insurance firms, and the law firms that have promoted, advertised, offered, sold, approved, granted, insured, contracted and subscribed billions of dollars in debt contrary to this clause in unashamed and unconcealed   violation of the P.R. Constitution, with reckless disregard of the Law of this Land, have heretofore gotten away with wrongful and illegal misconduct with full criminal impunity and without any or monetary civil liability whatsoever.

As a result of the above unconstitutional practices by the persons in charge of making the decisions, ergo, the persons responsible for the same decisions, both from the public sector and the private sector, they all have

14

been deliberately, egregiously, knowingly, recklessly and wantonly derelict in their ethical, fiduciary, ministerial and legal duties. Axiomatically then, they must be found legally responsible for their wrongful and negligent acts and illegal irresponsibilities. Each one should be jointly or severally found legally and financially responsible for an amount equivalent to the degree and extent of his/her and/or the entities they represented for their fair and proportional share of their entire civil responsibility as a whole *de minimis*.

The Constitution of P.R., regardless of how depreciated, eviscerated, truncated, underestimated and undervalued it has been in the past months, is still and remains the Law of this Land (whether a full fledged non-incorporated territory or an incorporated colony). No federal court has at least heretofore dared to rule that the P.R. Constitution is illegal, non-applicable, or totally repugnant to the U.S. Constitution as a whole or in its entirety. Consequentially, absent any legal determination contrary to the P.R. Constitution, which could be used as precedent, as long as it remains the authoritative, controlling and heretofore precedentially accepted legal status quo, in due consideration to same Constitution, the U.S. Courts Honorable Judges within the realm of this federal court system, should give the P.R. Constitution the deference, dignity and respect it is legally owed. Actually, the Honorable Judges of this federal system of Justice are in a better position to rule over these issues since you have more judicial independence since you were not appointed by the P.R. Governors

15

involved in the multi decade financial disaster described above named as

Defendants in my Complaint incorporated as an integral part of my

MIRDJ.

After all, the P.R. Constitution came about as a result of a federal law

approved by the U.S. Congress; which expressly, explicitly and specifically

"recognizing the principle of government by consent" and "in the nature of

a compact", [Public Law 81-600 of July 3, 1950 also known as the Federal

Relations Act (FRA)],[8] was signed by then President of this otherwise

Great Nation, the Honorable Harry S. Truman; accepted by the immense

majority of the "**Puerto Rican populace" (sic),**[9] by way of a by same law

mandated referendum, held on June 4, 1951, [387,016 (76.5%) Yeas and

119,169 (23.5%) Nays for a total of 506,185 votes]; was drafted by a cadre

---

[8] **Whereas under the terms of these congressional enactments an increasingly large
measure of self-government has been achieved**: **Therefore Be it enacted by the
Senate and House of Representatives of the United States of America in Congress
assembled, That, fully recognizing the principle of government by consent, this Act
is now adopted in the nature of a compact so that the people of Puerto Rico may
organize a government pursuant to a constitution of their own adoption.**
SEC. 2 . **This Act shall be submitted to the qualified voters of Puerto Rico for
acceptance or rejection through an island-wide referendum** to be held in accordance
with the laws of Puerto Rico. Upon the approval of this Act, by a majority of the voters
participating in such referendum, **the Legislature of Puerto Rico is authorized to call
a constitutional convention to draft a constitution for the said island of Puerto
Rico**. The said constitution shall provide a republican form of government and shall
include a bill of rights.
SEC. 3. **Upon adoption of the constitution by the people of Puerto Rico, the
President of the United States is authorized to transmit such constitution to the
Congress of the United States** if he finds that such constitution conforms with the
applicable provisions of this Act and of the Constitution of the United States. **Upon
approval by the Congress the constitution shall become effective in accordance
with its terms**.

[9] This was the term chosen by the majority of the Justices of the HUSSC to refer to the
Puerto Rican people in Commonwealth of P.R. v. Sanchez Valle, Et Al.; 15-108 (216).

16

of honorable and morally solvent U.S. Citizens residents in P.R. from all political, economic and religious ideologies who were by this same Public Law, delegated to conform a constitutional convention (which took place from September 17, 1951 until February 6, 1952); and who upon due diligence in drafting same Constitution submitted it to the **Puerto Rican populace" (sic)** which voted for it as mandated by same Public Law 600 in another referendum held on March 3, 1952, [with 374,649; Yeas (81.18%): to 82,923; Nays (18.12%) for a total of 457,572 votes] same drafted Constitution was re-submitted to the President of the U.S. of A. who transmitted it to the U.S. Congress, that amended two of its clauses[10] and with these two amendments proceeded to approve it by way of Public Law 447 on July 3, 1952, signed by the President of the U.S. of A. who resubmitted same amended version to the P.R. Constitutional Convention for its acceptance by way of a resolution for its ratification after it was

---

[10] The two amendments were: *Provided^* That section 5 of article II thereof shall have no force and effect until amended by the people of Puerto Rico under the procedure prescribed by article VII of the constitution of the Commonwealth of Puerto Rico by adding to such section 5 the following declaration: "Compulsory attendance at elementary public schools to the extent permitted by the facilities of the state as herein provided shall not be construed as applicable to those who receive elementary education in schools established under nongovernmental auspices"; *Provided further^* That except for the purpose of adopting the amendments to section 5 of article II and to section 3 of article VII as herein provided, article VII of said constitution likewise shall have no force and effect until amended by the people of Puerto Rico under the terms of said article by adding to section 3 of article VII the following new sentence: "Any amendment or revision of this constitution shall be consistent with the resolution enacted by the Congress of the United States approving this constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public 39 stat. 951, Law 600, Eighty-first Congress, **adopted in the nature of a compact**"

notified to the Governor of P.R for its proclamation which finally took place on July 25, 1952. See Public Law 448.[11]

Said Constitution clauses should be considered as if they were by-laws of the U.S. Congress since they were pre-authorized, pre-approved, pre-amended, pre-ratified and pre-proclaimed according to the mandates and rules of engagement of two (2) different U.S. Congresses having voted for the same Constitution in two (2) different Public Laws and then presented by the U.S. Government to the United Nations as evidence to prove that Puerto Rico was allegedly no longer a colony and to persuade that forum to exclude Puerto Rico from the list of colonies for whom their masters or imperial powers were obliged to submit yearly reports on their administration.

Notwithstanding the above, what makes section 2 of Article VI of the P.R. Constitution authoritative and controlling in terms of the main legal issue analyzed here is that it came about as a result of still another statute by the U.S. Congress, Public Law 87-121 of August 3, 1961, which expressly, explicitly and specifically pre-authorized said_amendment once

---

[11] That the constitution of the Commonwealth 73ib.73ie.of Puerto Rico hereby approved shall become effective when the Constitutional Convention of Puerto Rico shall have declared in a formal resolution its acceptance in the name of the people of Puerto Rico of the conditions of approval herein contained, and when the Governor of Puerto Rico, being duly notified by the proper officials of the Constitutional Convention of Puerto Rico that such resolution of acceptance has been formally adopted, shall issue a proclamation to that effect. Approved July 3, 1952. - Puerto Rico. 328 PUBLIC LAW 448-JULY 3, 1952 [66 STAT.]

18

and if the "**Puerto Rican populace" (sic)** approved it in the referendum.[12]

See the entire text of same federal statute below. Said referendum was approved by local law Num. 1 of September 29, 1961, and held on December 10, 1961.

Public Law 87-121 JOINT RESOLUTION August 3, 1961

**To provide for amending section 3 of the Puerto Rican Federal Relations Act**11, J, Res. 1241 (64 Stat . 319), as amended (64 Stat . 458). Resolved by the Senate and House of Representatives of the United States of America in Congress assembled: **That section 3 of the Puerto Rican Federal Relations Act (64 Stat. 319), as amended (64 Stat. 458), Act, is amended by** deleting **therefore** the following language: "Provided, however, That no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Arecibo, Rio Piedras and Mayaguez shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property, and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality," and "In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted ."

SEC. 2. Section 1 of this Act shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, **to include provisions in the Commonwealth constitution, in lieu**

---

[12] The referendum results were 385,369 "Yeas" for 82.8% to 80,224 "Nays" for 17.2% representing a total of 465,593 voters. These results reveal 8,021 more voters than in the 1952 referendum approving the Constitution with 10,720 more yes's and 2,699 less No's. Source: "DISPOSICIONES SOBRE LA DEUDA PUBLICA EN LA CONSTITUCION DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO: BREVE REFLEXION HISTORICA-CONSTITUCIONAL PONENCIA" written by CARLOS E. RAMOS GONZALEZ, Esq; Law Professor at the Faculty of Law of Universidad Interamericana de Puerto Rico, cite from 85 Rev. Jur. U.P.R. 705 (2016).

of the provisions of section 3 of the Puerto Rican Federal Relations Act specified herein, **limiting the debt-incurring capacity of the Commonwealth** and of its municipalities (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth), Approved August 3, 1961.

Hence, what we have here is an amendment to the P.R. Constitution that was first genuinely and legitimately proposed by the Puerto Rican legislature to the U.S. Congress,[13] who preapproved or preauthorized the same through an express, explicit and specific law in the U.S. Congress, (consequentially complying with the precondition required for a constitutional amendment to be valid and binding imposed by the U.S. Congress in Pubic Law 82-448 when it mandated that section 3 of Article VII was amended[14]) signed by the then President of the U.S. of A. the Honorable John F. Kennedy, subject to a ratification of the same amendment by way of a referendum in a way and manner similar to the one used for the approval-adoption-amendment-ratification-proclamation and

---

[13] See "LEYES DE LA QUINTA SESION EXTRAORDINARIA DE LA TERCERA ASAMBLEA LEGISLATIVA Y DE LA PRIMERA SESION ORDINARIA Y DELA PRIMERA, SEGUNDA Y TERCERA SESIONES ESTRAORDINRIAS DELA CUARTA ASAMBLEA LEGISLATIVA DEL ESTADO LIBRE ASOCIADO DE PURTO RICO; VOLUMEN DE COPIA CERTIFICADAS DE DICHAS LEYES, DEPARTAMENTO DE HACIENDA; Servicio de Compras y Suministros- División de Imprenta, San Juan, P.R. 1961." Included as Exhibit 14 of my COMPLEMENTARY MOTION TO MOTION TO INTERVENE AND REQUESTING DECLARATORY JUDGMENT in 16-02374(FAB) dated March 15, 2017. (Please excuse me for not having translated same due to my well known limitations. Since I am appearing here IFP, I am respectfully praying that this HUSCA1C provides for the translation of same).

[14] **"Any amendment or revision of this constitution shall be consistent with the resolution enacted by the Congress of the United States approving this constitution, with the applicable provisions of the Constitution of the United States, with the Puerto Rican Federal Relations Act, and with Public 39 stat. 951. Law 600, Eighty-first Congress, adopted in the nature of a compact"**: 48use'731 note

20

evolutionary process of the P.R. Constitution in 1952 described above,
except that in the case of section 2 of Article VI, the U.S. Congress went
even further. First it pre-consented to the language of the amendment *per
se*. Second it pre-admitted that it was going to accept same amendment to
substitute section 3 of the FRA, when as we have seen above it stated *ad
verbatim*; "**in lieu of the provisions of section 3 of the Federal Relations
Act as specified herein**". Third and more importantly for this analysis is
that it pre-recognized that its legal objective or purpose was to provide for
"**limiting the debt-incurring capacity of the Commonwealth.**"

For the above reasons, even if a majority of the members of this
panel, or of the entire HUSCA1C judges' ensemble sitting en banc or even
of the six (6) Justice of the Honorable U.S. Supreme Court (HUSSC) who
voted against the letter, intent and spirit of Public Laws; 81-600 of July 3,
1950 and 82-447 of July 3, 1952;[15] approved "in the nature of a compact"

---

[15] "And contrary to petitioner's claim, Puerto Rico's trans-formative constitutional
moment does not lead to a different conclusion. True enough, that the Commonwealth's
power to enact and enforce criminal law now proceeds, just as petitioner says, from the
Puerto Rico Constitution as "ordain[ed] and establish[ed]" by "the people." P. R.
Const., Preamble; see Brief for Petitioner 28–30. But that makes the **Puerto Rican
populace** only the most immediate source of such authority—and that is not what our
dual-sovereignty decisions make relevant. Back of the Puerto Rican people and their
Constitution, the "ultimate" source of prosecutorial power remains the U. S. Congress,
just as back of a city's charter lies a state government. *Wheeler*, 435 U. S., at 320.
Congress, in Public Law 600, authorized Puerto Rico's constitution-making process in
the first instance; the people of a territory could not legally have initiated that process
on their own. See, *e.g.*, *Simms* v. *Simms*, 175 U. S. 162, 168 (1899). And Congress, in
later legislation, both amended the draft charter and gave it the indispensable stamp of
approval; popular ratification, however meaningful, could not have turned the
convention's handiwork into law.[6] Put simply, Congress' Petitioner's own statements
are telling as to the role Congress necessarily played in this constitutional process. See,

21

and recognizing our right to "government by consent" were again to

underestimate and undervalue the P.R. Constitution and its pre and post

U.S. Congress Public Laws approving the same, signed by the President,

and as a result determine that this section 2 of Article VI of the P.R.

---

*e.g.*, Reply Brief 1–2 ("Pursuant to Congress' invitation, and **with Congress' consent**, the people of Puerto Rico engaged in an exercise of popular sovereignty"); *id.*, at 7 ("The Commonwealth's legal cornerstone is Public Law 600"); Tr. of Oral Arg. 19 (describing the adoption of the Puerto Rico Constitution as "pursuant to the invitation of Congress and with the blessing offered the authority to create the Puerto Rico Constitution, which in turn confers the authority to bring criminal charges. That makes Congress the original source of power for Puerto Rico's prosecutors—as it is for the Federal Government's. The island's Constitution, significant though it is, does not break the chain." COMMONWEALTH OF PUERTO RICO *v*. SANCHEZ VALLE ET AL. CERTIORARI TO THE SUPREME COURT OF PUERTO RICO, No. 15–108. Argued January 13, 2016—Decided June 9, 2016.

"The Federal Bankruptcy Code pre-empts state bankruptcy laws that enable insolvent municipalities to restructure their debts over the objections of creditors and instead requires municipalities to restructure such debt sunder Chapter 9 of the Code. 11 U. S. C. §903(1). We must decide whether Puerto Rico is a "State" for purposes of this pre-emption provision. We hold that it is." SUPREME COURT OF THE UNITED STATES Nos. 15–233 and 15–255 COMMONWEALTH OF PUERTO RICO, ET AL., PETITIONERS 15–233 *v*. FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL. MELBA ACOSTA-FEBO, ET AL., PETITIONERS 15–255 *v*. FRANKLIN CALIFORNIA TAX-FREE TRUST, ET AL. ON WRITS OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT [June 13, 2016].

In other words, in a civil controversy where the federal bankruptcy law did not apply to P.R. because it was excluded from same, reason why there was no-preemption and consequentially there was no federal question, ergo, subject matter jurisdiction, the HUSSC ruled by judicial fiat that the local bankruptcy law was repugnant to the U.S. Constitution, since for bankruptcy purposes P.R. is a State and axiomatically then, according to this counterintuitive rationalization there was pre-emption. Four (4) days before, the HUSSC decided in a criminal case, that for the double jeopardy clause purposes, P.R. is not only not a State but not even a different jurisdiction. In so deciding, the HUSSC caused a double jeopardy to P.R.. Instead of having been able to timely protect its assets through the local bankruptcy law, now more than two (2) years after, it is forced to do it anyhow (what are left of them) but under the PROMESA Act, with the conflict that the latter gave jurisdiction to P.R. and the bonds contracts that preceded it to N.Y., ergo, another unnecessary legal duplicity. In the realm of the criminal spectrum, the least P.R. needed at this historical juncture was for the HUSSC to protect convicted criminals from some modicum of just punishment as in the States, which is the net effect of Sanchez Valle.

22

Constitution is not legally worth an iota, they will still encounter a more complicated and formidable task here since they will have to nullify or void, not only the P.R. Constitution of their improved colony, but Public Law 87-121 **retroactively**, to 1961, in order to deny the declaratory judgment order I have respectfully and timely requested. This is an inconceivable and improbable feat I do not think any conscious, responsible and unbiased federal judge is capable of. For the above reasons the declaratory judgment order should issue.

### Summary of Argument

At least in theory we all are taught to believe that no one is above the law. All the Defendants in my Complaint incorporated as an integral part of my timely filed MIRDJ knew or should had known that at least a portion of the debt they had a participation in, was issued and contracted against the limits proscribed in the Constitution. This is reason enough for any court of law to declare null or void at least the portion of the debt in excess of the fifteen (15%) percent **and** the 30 years limits.[16]

---

[16] Under the aegis of ex-Governor Luis Fortuño Burset, he and his government executive, legislative and judicial officers, acquiesced, condoned, endorsed, issued and contracted obligations with a foreign entity (Metropistas, S.A. from Mexico) for forty (40) years when they had a mandate as a result of the electoral suffrage for only four (4) years. Is it legal for administrators of the money of the Puerto Rican people to hypothecate liquid assets that are paid by our People for forty (years) when their mandate is for only four (4)? If the laws establish that the government cannot lease anything for more than five (5) years, except with a special exemption approved by way of exception which has to be legally pre-justified for reasons of necessity and lack of alternative, how can this violation of the P.R. Constitution be validated? Why do our children and grandchildren be legally obliged to pay for debts unconstitutionally contracted and issued by public officers who were voted into office by their parents and

My timely filed MIRDJ proposes that my Complaint filed initially before the PRHTFI-SCSJ is incorporated and taken as a third party complaint of this putative intervenor and all the ones that should follow, within this the Lex Claims LLC, Et Al, Et Al. Complaint and any other(s) that have and may be consolidated with same. My position is that in the eventuality that this federal court system of Justice may accept my proposal, several law firms will come upfront interested in assuming my legal representation and those of the others that will most probably want to join as Plaintiffs in what should become in all probability a class action.

### Argument

The best argument I have in favor of my proposal that I should be granted my timely filed MIRDJ in this civil action has paradoxically

---

grandparents at least two scores of years before, paraphrasing President Lincoln in his all-too-famous and ergo known Gettysburg Address? What extremely sophisticated technology may a Mexican private corporation have to count the dollars in the P.R. expressways toll booths, that we Puerto Ricans may not have readily available? Why contracts like this are not given to Puerto Rican banks, corporations or entities? Why does our legislature confer the right to this foreign corporation to charge 1,500 % ($15.00 in penalty of each $1.00 of unpaid toll fee) and 4,000% of penalty ($40.00 in penalty for each $1.00 on each $1.00 dollar of unpaid toll fee) that is not paid in a toll booth? Why does a Puerto Rican Governor like the above mentioned and subsequent Governors and their respective legislatures that all are supposed to represent the People of P.R. approve of laws where their constituents end paying these usurious rates? Why no court of law judge, local, or federal has ruled that this practice violate usury laws not to mention human decency and dignity principles? Is it legal for Ex-Governor Fortuno to sit on the Board of Directors and personally profit from it, of the same foreign entity that he contracted with in violation of our Constitution? Is it legal for the Fiscal Board created by the "Puerto Rico Oversight, Management, and Economic Stability Act" or the so-called "PROMESA" federal law imposed by the present U.S. of A. government to have as its members two (2) of the GDB Presidents (Defendants in my Complaint) that issued and contracted billions of dollars against our Constitution? Is it legal for same "Junta Fiscal" be presided by the President of the insurance company that insured many of the entities whose Board's Directors and Officers issued and contracted billions of dollars in violation of our Constitution and which would be a Defendant in my Complaint? A penny for your thoughts.

24

nothing to do with the Constitution, the law, the jurisprudence, the rules or what have you. My best argument is that there is no other known option available where the interests of the Puerto Rican people may be protected, taken due care of, and made Justice to, and to make it more judicially justifiable, through incorporating my Complaint into the present one and all the others that may be joined, you will also have the ways and means to pay all the bondholders as they should (as innocent third party in good faith buyers) and all the ones responsible for the unconstitutionally issued and contracted debt will end up paying their own fair and proportional share of their responsibility. In any event, the gist of my argument here and now is that it is evidently obvious that the HUSDCDPR did not take into consideration and evaluated my MIRDJ on its merits and for that sole reason, without more, this HUSCAIC should grant this appeal.

## Conclusion

For all the above stated reasons, this HUSCA1C, have more than enough legal reasons to vacate and remand the HUSDCDPR order denying my timely filed MTIRDJ, or in the alternative, order the HUSDCDPR to issue the declaratory judgment order judicially determining that the Plaintiffs in the instant civil action below and related ones, violated the Constitution of P.R., when issuing and contracting debt in excess of the limits prescribed in same, and that for that reason, same debt is illegal and null *ab initio*.

25

So I State, Allege and Pray. Respectfully submitted, today May 5, 2017.

### Certificate of Compliance

I, Angel Ruiz Rivera, Appellant, appearing Pro Se and IFP hereby certify that this Appeal Brief complies with the Rules of this HUSCA1C.

### Certificate Of Service

I, Angel Ruiz Rivera, Movant/Appellant, Putative Intervenor/Interested Party, appearing here Pro Se and In Forma Pauperis (IFP), hereby certify that I have sent a copy of this Appeal Brief to all the appearing attorneys of record for all the parties according to the docket record.


Angel Ruiz Rivera
Movant/ Appellant
Putative Intervenor/Interested Party
Pro Se and IFP
Ext. Villa Rica
AA-27 Calle Santa Rita
Bayamon, P.R. 00959.
angelruizrivera@gmail.com
787-779-9222.

26

8. Petitions for Certiorari before the HUSSC.

| | Search documents in this case: | Search |
|---|---|---|

## No. 17-8486

| Title: | **Angel Ruiz-Rivera, Petitioner**<br>**v.**<br>**Assured Guarantee Corporation, et al.** |
|---|---|
| Docketed: | April 16, 2018 |
| Lower Ct: | United States Court of Appeals for the First Circuit |
| Case Numbers: | (16-2208) |

| DATE | PROCEEDINGS AND ORDERS |
|---|---|
| Nov 06 2017 | Petition for a writ of certiorari before judgment and motion for leave to proceed in forma pauperis filed. (Response due May 16, 2018)<br><br>**Motion for Leave to Proceed in Forma Pauperis    Petition    Appendix    Proof of Service    Other** |
| May 08 2018 | Waiver of right of respondents Alejandro Garcia-Padilla, Juan C. Zaragoza-Gomez, Melba Acosta-Febo, Luis Cruz-Bautista, Victor Suarez-Melendez, Cesar Miranda-Rodriguez and Juan Flores-Galarza to respond filed.<br><br>**Main Document** |
| May 15 2018 | Brief of respondents Assured Guaranty Corp. and Assured Guaranty Municipal Corp. in opposition filed.<br><br>**Main Document    Other    Certificate of Word Count    Proof of Service** |
| May 30 2018 | DISTRIBUTED for Conference of 6/14/2018. |
| Jun 18 2018 | Petition DENIED. |

| NAME | ADDRESS | PHONE |
|---|---|---|

| | | |
|---|---|---|
| Attorneys for Petitioner | | |
| Angel Ruiz Rivera | Ext. Villa Rica<br>AA-27 Calle Santa Rita<br>Bayamon, PR 00959 | (787) 779-9222 |
| Party name: Angel Ruiz-Rivera | | |
| Attorneys for Respondent | | |
| Heriberto Burgos-Perez<br>    Counsel of Record | Casellas Alcover & Burgos PSC<br>Popular Center Suite 1133<br>208 Muñoz Rivera Avenue<br>San Juan, PR 00918<br><br>hburgos@cabprlaw.com | 787-617-2729 |
| Party name: Assured Guaranty Corp. and Assured Guaranty Municipal Corp. | | |
| Carlos Lugo-Fiol<br>    Counsel of Record | P.O. Box 260150<br>San Juan, PR 00926<br><br>clugofiol@gmail.com | (787) 645-4211 |
| Party name: Commonwealth of Puerto Rico | | |

Search documents in this case: [        ]  Search

## No. 17-8487

| Title: | **Angel Ruiz-Rivera, Petitioner** |
| | **v.** |
| | **Lex Claims, LLC, et al.** |
| Docketed: | April 16, 2018 |
| Lower Ct: | United States Court of Appeals for the First Circuit |
| Case Numbers: | (17-1337) |

| DATE | PROCEEDINGS AND ORDERS |
|---|---|
| Nov 06 2017 | Petition for a writ of certiorari before judgment and motion for leave to proceed in forma pauperis filed. (Response due May 16, 2018)<br><br>**Motion for Leave to Proceed in Forma Pauperis    Petition    Appendix    Proof of Service** |
| May 30 2018 | DISTRIBUTED for Conference of 6/14/2018. |
| Jun 18 2018 | Petition DENIED. |

| NAME | ADDRESS | PHONE |
|---|---|---|
| Attorneys for Petitioner | | |
| Angel Ruiz Rivera | Ext. Villa Rica<br>AA-27 Calle Santa Rita<br>Bayamon, PR 00959 | (787) 779-9222 |
| Party name: Angel Ruiz-Rivera | | |

| NAME | ADDRESS | PHONE |
|---|---|---|
| **Attorneys for Petitioner** | | |
| Angel Ruiz Rivera | Ext. Villa Rica<br>AA-27 Calle Santa Rita<br>Bayamon, PR 00959 | (787) 779-9222 |
| Party name: Angel Ruiz-Rivera | | |
| **Attorneys for Respondent** | | |
| Heriberto Burgos-Perez<br>   Counsel of Record | Casellas Alcover & Burgos PSC<br>Popular Center Suite 1133<br>208 Muñoz Rivera Avenue<br>San Juan, PR 00918<br><br>hburgos@cabprlaw.com | 787-617-2729 |
| Party name: Assured Guaranty Corp. and Assured Guaranty Municipal Corp. | | |
| Carlos Lugo-Fiol<br>   Counsel of Record | P.O. Box 260150<br>San Juan, PR 00926<br><br>clugofiol@gmail.com | (787) 645-4211 |
| Party name: Commonwealth of Puerto Rico | | |

Search documents in this case: [                    ] [ Search ]

## No. 17-8440

| | |
|---|---|
| Title: | **Angel Ruiz-Rivera, Petitioner**<br>**v.**<br>**Commonwealth of Puerto Rico, et al.** |
| Docketed: | April 13, 2018 |
| Lower Ct: | United States Court of Appeals for the First Circuit |
| Case Numbers: | (17-1743) |
| Decision Date: | September 7, 2017 |
| Rehearing Denied: | January 31, 2018 |

| DATE | PROCEEDINGS AND ORDERS |
|---|---|
| Apr 02 2018 | Petition for a writ of certiorari and motion for leave to proceed in forma pauperis filed. (Response due May 14, 2018)<br><br>**Motion for Leave to Proceed in Forma Pauperis    Petition    Appendix    Proof of Service** |
| May 14 2018 | Waiver of right of respondent Commonwealth of Puerto Rico, et al. to respond filed.<br><br>**Main Document** |
| May 14 2018 | Waiver of right of respondents Commonwealth of Puerto Rico, et al. to respond filed.<br><br>**Main Document** |
| May 23 2018 | DISTRIBUTED for Conference of 6/7/2018. |
| Jun 11 2018 | Petition DENIED. |

| NAME | ADDRESS | PHONE |
|---|---|---|
| **Attorneys for Petitioner** | | |
| Angel Ruiz Rivera | Ext. Villa Rica<br>AA-27 Calle Santa Rita<br>Bayamon, PR 00959 | (787) 779-9222 |
| Party name: Angel Ruiz-Rivera | | |
| **Attorneys for Respondents** | | |
| Noel J. Francisco<br>   Counsel of Record | Solicitor General<br>United States Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001<br><br>SupremeCtBriefs@USDOJ.gov | 202-514-2217 |
| Party name: Puerto Rico | | |
| Mark David Harris<br>   Counsel of Record | Proskauer Rose LLP<br>Eleven Times Square<br>New York, NY 10036<br><br>mharris@proskauer.com | 212-969-3530 |
| Party name: Commonwealth of Puerto Rico, et al. | | |

9. Petition for Certiorari in 17-1743 docketed as 17-8440 by the HUSSC and denial.

# IN THE SUPREME COURT OF THE UNITED STATES

---

### ANGEL RUIZ RIVERA

### PETITIONER/APPELLANT

### V.

### IN RE: COMMONWEALTH OF PUERTO RICO; PUERTO RICO SALES TAX FINANCING CORPORATION

### RESPONDENTS/APPELLEES

### ON PETITION FOR A WRIT OF CERTIORARI TO THE
### U.S. COURT OF APPEALS FOR THE FIRST CIRCUIT

OF APPEAL
17-1743

FILED BY

ANGEL RUIZ RIVERA
PRO SE
IN FORMA PAUPERIS
EXT. VILLA RICA
AA-27 CALLE SANTA RITA
BAYAMON, P.R. 00959.
787-779-9222
ANGELRUIZRIVERA@GMAIL.COM

A. QUESTIONS PRESENTED FOR REVIEW

1. Did the Honorable Judges of the U.S. District Court for the District of P.R., the U.S. Bankruptcy Court for the District of P.R. and the U.S. Court of Appeals for the First Circuit usurped their authority and did not comply with their ethical and ministerial duties when they balked at and neglected to issue a declaratory judgment ruling that the section 2, Article VI of the Constitution of P.R. is applicable *nunc pro tunc* to P.R.'s contracting of its debt and that Joint Resolution 87-121 of August 3, 1961 by the U.S. Congress is controlling over this issue of law?

## B. CORPORATE DISCLOSURE STATEMENT

Since Petitioner is a person and not a corporation, there are no parent corporations nor

publicly held company that owns 10% or more of the inexistent corporation stock.

## C. TABLE OF CONTENTS AND TABLE OF CITED AUTHORITIES

COVER PAGE...............................................................................1

QUESTIONS PRESENTED FOR REVIEW.........................................2

CORPORATE DISCLOSURE STATEMENT.................................3

TABLE OF CONTENTS...............................................................4

TABLE OF CITED AUTHORITIES.................................................4

CITATIONS OF THE OFFICIAL REPORTS OF THE OPINIONS AND ORDERS ENTERED IN THE CASE BY THE COURTS.................................5

A CONCISE STATEMENT OF THE BASIS FOR JURISDICTION IN THIS COURT, SHOWING: (i) THE DATE THE JUDGMENT OR ORDER SOUGHT TO BE REVIEWED WAS ENTERED and if applicable, a statement that the petition is filed under this Court's Rule 11.....................................................5

THE CONSTITUTIONAL PROVISIONS AND STATUTES, INVOLVED IN THE CASE, SET OUT VERBATIM WITH APPROPRIATE CITATION. .....................5

A CONCISE STATEMENT OF THE CASE....................................5

A DIRECT AND CONCISE ARGUMENT AMPLIFYING THE REASONS RELIED ON FOR ALLOWANCE OF THE WRIT.......................................8

CONCLUSION.........................................................................9

APPENDIX..............................................................................9

## TABLE OF CITED AUTHORITIES

Article VI, section 2 Constitution of Puerto Rico................................6

Public Law 87-121 August 3, 1961...................................................6

4

D. CITATIONS OF THE OFFICIAL REPORTS OF THE OPINIONS AND ORDERS ENTERED IN THE CASE BY THE COURTS

In Re Commonwealth of P.R.; Puerto Rico Sales Tax Financing Corporation 17-1743, U.S. Court of Appeals for the First Circuit (USCA1C).

Lex Claims LLC v. Financial Oversight Management Board, 17-1337, USCA1C.

Assured Guaranty v. Garcia Padilla, 16-2208, USCA1C.

E. A CONCISE STATEMENT OF THE BASIS FOR JURISDICTION IN THIS COURT, SHOWING: (i) THE DATE THE JUDGMENT OR ORDER SOUGHT TO BE REVIEWED WAS ENTERED.

This petition is filed under Rule 11, because an imperative public important issue is

pending in various appeals before the USCA1C, (17-1743; 17-1337; 16-2208) and

under Rule 12.4, ("When two or more judgments are sought to be reviewed on a writ of

certiorari to the same court and involve identical or closely related questions, a single

petition for a writ of certiorari covering all the judgments suffices").

F. THE CONSTITUTIONAL PROVISIONS AND STATUTES, INVOLVED IN THE CASE, SET OUT VERBATIM WITH APPROPRIATE CITATION.

Article VI, section 2 Constitution of Puerto Rico.

Public Law 87-121 August 3, 1961.

G. A CONCISE STATEMENT OF THE CASE.

The Constitution of the Commonwealth of Puerto Rico (P.R.) on its Article VI, section

2, states as follows:

> **Section 2. Power to impose taxes; to contract debts.**
>
> *The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debts will be exerted as the Legislative Assembly disposes, but it will not be surrendered or suspended. The power of the Free Associated State of Puerto Rico (Commonwealth) to contract and authorize debt will be exerted as the Legislative Assembly disposes, but no direct obligation of the Free Associated State of Puerto Rico for money borrowed directly by the Free Associated State of Puerto Rico evidenced through bonds or promissory notes for which obligations the good faith and credit and the power to impose contributions of the Free Associated State were committed shall be issued by the Free Associated State of Puerto Rico if the total of (i) the amount for the concept of the principal and interests over those bonds and promissory notes*

5

*over the totality of those bonds and promissory notes, until then issued by the Free Associated State and in circulation, payable in any fiscal year immediately preceding the current fiscal year and (ii) whatever amounts paid by the Free Associated State for the fiscal year immediately preceding the current for the concept of principal and interests corresponding to whatever obligations evidenced by bonds and promissory notes guaranteed by the Free Associated State, exceed 15% of the average of the total amount of the annual collections ("rentas") obtained in accordance to the dispositions of the laws of the Free Associated State as income in the Treasure of Puerto Rico during the two years immediately preceding the current fiscal year; and none of said bonds and promissory notes issued by the Free Associated State for any purpose rather than housing facilities shall be due after a 30 year term from the date of its issuance; and no bond or promissory note issued for housing purposes shall be due after a 40 year term from the date of its issuance; and the Free Associated State shall not guarantee any obligation evidenced through bonds or promissory notes if the total of the amount payable in any fiscal year for the concept of principal and interests over the totality of the previously referred direct obligations until then issued by the Free Associated State and in circulation and the amounts made reference to in clause (ii) exceeded 15 per cent of the average of the total amount of these annual collections.*

In simpler words, the amount of debt that could be contracted and issued in any given fiscal year could not exceed 15% of the average of the collections during the preceding two years, after having taken into account and consideration the amount of the principal **and** interests to be paid for all the bonds and promissory notes until then issued including those pertaining to the fiscal year immediately preceding the given fiscal year for which additional debt was to be contracted or issued plus the amount of principal **and** interests of the bonds and promissory notes for the given fiscal year.

In still more simpler words, no additional debt could be contracted or issued over the 15% of the average of the collections of the previous 2 years, after having taken care of the payment of both principal **and** interests of all previously issued debt owed, up to and including the one for the previous year and for the given fiscal year for which additional debt was been considered.

This section of the Constitution of P.R. also clearly, expressly and specifically prohibits contracts for more than 30 years, except for housing facilities.

6

This section of the Constitution of P.R. was blatantly and overtly violated since at least the 1970's by all the administrators of the territory of P.R., with regards to its no-debt-over- the-15%-of-the-average of the collections for the previous 2 years clause.

This section of the Constitution of P.R., as to its clause limiting contracts to no more than 30 years has also been more recently violated. (See lease of the airport to Aerostar and of the tollbooths to Metropistas, both to Mexican entities, the last one where the same Governor (Fortuño-Burset) that violated the Constitution he swore to defend when he contracted for 40 years, is personally profiting on its Board of Directors).

The no-debt-over-15%-of-the-average of the collections of the previous two years clause in this section of the Constitution of P.R. **came about as a result of a Constitutional amendment that was pre-authorized by the U.S. Congress on August 3, 1961, Public Law 87-121, by way of a Joint Resolution.** (Emphasis added).

Section 2 of Pub. L. 87–121 provided that: "Section 1 of this Act [amending this section] shall take effect upon a majority of the qualified electors of Puerto Rico having voted in a referendum pursuant to section 1 of article VII of the constitution of the Commonwealth of Puerto Rico, **to include provisions in the Commonwealth constitution, in lieu of the provisions of section 3 of the Puerto Rican Federal Relations Act [this section] specified herein, limiting the debt-incurring capacity of the Commonwealth and of its municipalities** (as proposed in the concurrent resolution of the legislative assembly of the Commonwealth)."{Emphasis added}.

A referendum was approved in P.R. on September 29, 1961, which was held on December 10, 1961, with over 82% of the voters approving same. For all legal purposes this federal law 87-121, allowed and provided for the amendment of section 3 of the Federal Relations Act, **limiting the debt-incurring capacity of Puerto Rico by way of this amendment to the Constitution,** inserted as section 2, Article VI and which all the administrators of P.R., the Puerto Rican and federal courts' judges have heretofore ignored, adding insult to the $73 billion dollars plus injury suffered by the People of P.R. and its residents.

7

A fortiori then, this clause is not only an amendment to the Constitution of P.R. but what is more pertinent, relevant and significant for your analysis, consideration and evaluation it was first a federal law, which has not been derogated, nor declared null or void by any competent court of law with jurisdiction over this matter, ergo, valid.

This both federal law, first, and Constitutional amendment, second; in strict chronological order, was timely invoked by the Appellant in support of a Complaint (intended as a qui tam action) and a petition for declaratory judgment in the following civil actions:

1. Complaint and Request For Declaratory Judgment Petition (CRDJ) filed at the Tribunal of First Instance (TFI), Superior Court of San Juan (SCSJ) in Angel Ruiz Rivera v. Rafael Hernandez Colon, Et Al., KDP-2015-1158 (808), where it was dismissed without prejudice.
2. Timely appealed to the Tribunal of Appeals (TA), San Juan Judicial Region, in Angel Ruiz Rivera v. Rafael Hernandez Colon, Et Al., KLAN2016-00523.
3. Related Mandamus Petition at the Supreme Tribunal of P.R., (STPR) in MD-2016-002; MD-2017-003
4. Mandamus Petition at the STPR in Angel Ruiz Rivera v. Ricardo Rosello Nevarez, Gob. De P.R. ELA, MD-2017-005 object of the instant Petition For Certiorari.

Eventually, the original CDJP was incorporated and made part of a Motion To Intervene and Requesting Declaratory Judgment (MIRDJ) at the U.S. District Court for the District of P.R. (USDCDPR) in the following civil actions, where same was denied in all of them and timely appealed to the U.S. Court of Appeals for the First Circuit (USCA1C) where they are awaiting final judgment:

1. Assured Guaranty v. Garcia Padilla, 16-1037(FAB) at the USDCDPR; appeal 16-2208 at the USCA1C.

2. Lex Claims LLC v. Financial Oversight Management Board, 16-02374(FAB) at the USDCDPR; appeal 17-1337, at the USCA1C.

3. In Re Commonwealth of P.R.; 17-01578(LTS) initially at the USDCDPR, later transferred to the U.S. Bankruptcy Court for the District of P.R. (USBCDPR) as 17-BK-03283 (LTS); appeal 17-1743 at the USCA1C.

A DIRECT AND CONCISE ARGUMENT AMPLIFYING THE REASONS RELIED
ON FOR ALLOWANCE OF THE WRIT.

Heretofore, all of the judges in the above *fora*, as in the STPR, (see related

Certiorari of this same date, <u>Angel Ruiz Rivera v. Ricardo Rosello Nevarez, Gob. De</u>

<u>P.R. ELA</u>); have callously, egregiously and wantonly failed to recognize the full force

and effect of this federal law- Constitutional amendment, by neglecting to issue a

declaratory judgment that was timely requested in all of the above legal recourses.

There are no justifications in law, reason or logic for this unfathomable dereliction.

It is at least incomprehensible, shameful and unconscionable that both Puerto

Rican and federal judges balk at issuing a mere declaratory judgment order, in view of

the fait accompli that there is undisputable, unquestionable and irrefutable evidence

proving that this section of the Constitution of P.R. which was explicitly, expressly and

specifically pre-approved, pre-authorized and pre-legislated by Congress by way of a

federal law, ergo, controlling here, was blatantly and consistently violated by all the

administrators of the Puerto Rican fisc who contracted debt in excess of its limits since

at least the 1970's. This was the reason why the insurmountably onerous and ergo,

unpayable debt of the government of P.R., lost all sense of proportion with respect to

P.R.'s capital, capacity of repayment, collateral, conditions of loans, character and

credit (full faith and credit). [What I denominate as the 6 c's of Credit Indebtedness].

CONCLUSION. PRAYER. For the above reasons, I respectfully pray that this Petition

is granted. Respectfully submitted, today November 6, 2017.

Angel Ruiz Rivera
Pro-Se and IFP
Ext. Villa Rica
AA-27 Calle Santa Rita
Bayamon, P.R. 00959.
787-779-9222
angelruizrivera@gmail.com

9

APPENDIX

A. USCA1C SEPTEMBER 7, 2017 JUDGMENT ON IN RE COMMONWEALTH OF PUERTO RICO, 17-1743.

B. PETITION FOR PANEL REHEARING IN 17-1743 MAILED ON OCTOBER 13, 2017, RECEIVED ON NOVEMBER 1, 2017 AND DOCKETED ON NOVEMBER 2, 2017.

C. USCA1C MAY 17 AND MAY 19, 2017 ORDERS IN APPEAL 17-1337

D. USCA1C JUNE 21, 2017 ORDER IN APPEAL 16-2208.

# Supreme Court of the United States
## Office of the Clerk
## Washington, DC  20543-0001

Scott S. Harris
Clerk of the Court
(202) 479-3011

June 11, 2018

Clerk
United States Court of Appeals for the First Circuit
United States Courthouse
1 Courthouse Way
Boston, MA  02210

      Re:  Angel Ruiz-Rivera
          v. Commonwealth of Puerto Rico, et al.
          No. 17-8440
          (Your No. 17-1743)

Dear Clerk:

      The Court today entered the following order in the above-entitled case:

      The petition for a writ of certiorari is denied.

                      Sincerely,

                      **Scott S. Harris**, Clerk