**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

------------------------------------------------------------ x

*In re*                                              :
                                                     :
THE FINANCIAL OVERSIGHT AND                          :
MANAGEMENT BOARD FOR PUERTO RICO,                    : PROMESA
                                                     : Title III
     as representative of             : Case No. 17-BK-3283 (LTS)
                                                     : (Jointly Administered)
THE COMMONWEALTH OF PUERTO RICO *et al.,*             :
     Debtors.[1]                      :
                                                     :
------------------------------------------------------------ x

THE OFFICIAL COMMITTEE OF UNSECURED                  :
CREDITORS OF THE COMMONWEALTH OF                      :
PUERTO RICO,                                          :
                                                     :
     as agent of                      :
                                                     :
THE COMMONWEALTH OF PUERTO RICO,                      : Adv. Proc. No. 17-00257-LTS
                                                     :
     Plaintiff,                       :
                                                     :
v.                                                   : **ANSWER, DEFENSES, AND**
                                                     : **COUNTERCLAIMS OF THE**
                                                     : **APPOINTED AGENT OF THE**
BETTINA WHYTE,                                        : **PUERTO RICO SALES TAX**
                                                     : **FINANCING CORPORATION**
     as agent of                      : **(COFINA)**
                                                     :
THE PUERTO RICO SALES TAX FINANCING                  :
CORPORATION ("COFINA"),                              :
                                                     :
     Defendant.                       :
------------------------------------------------------------ x

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686).

Defendant/Counterclaim Plaintiff Bettina M. Whyte (the "**COFINA Agent**"), in her capacity as the appointed agent of the Puerto Rico Sales Tax Financing Corporation ("**COFINA**") pursuant to the Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute (the "**Commonwealth-COFINA Dispute Stipulation**"), hereby responds to the allegations in the Complaint filed by the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "**Commonwealth Agent**"), as agent for the Commonwealth of Puerto Rico (the "**Commonwealth**"), and asserts counterclaims.

## COUNTERCLAIMS

### PRELIMINARY STATEMENT

1.      By renouncing constitutional actions taken by the Legislative Assembly of Puerto Rico, and mischaracterizing the legal effect of those actions, the Commonwealth is trying to misappropriate billions of dollars of investor money. This money belongs to COFINA and is needed to repay the COFINA bondholders, who collectively purchased $16 billion of bonds, of which approximately $2.8 billion are held locally on-island, many by individuals who invested their personal savings. Ironically, ten years after coming to Puerto Rico's rescue during the 2006 financial crisis, the COFINA bondholders now find themselves in the Commonwealth's crosshairs and faced with a narrative that cannot possibly be true—that the Commonwealth deceived each and every COFINA bondholder and can now benefit handsomely from its deception.

2.      In 2006, the Commonwealth faced a severe financial crisis that led to a complete shutdown of its government. To pull itself out of the crisis, the Commonwealth implemented a tax-backed securitization plan. Like similar tax-backed securitizations employed by states and municipalities around the country, the plan involved creating an independent entity (here, COFINA) to issue bonds that would be repaid through a predictable stream of tax revenue

dedicated to that entity.  Because the bonds are supported by segregated tax revenue dedicated to servicing the independent entity's debt, the bonds are insulated from the underlying credit risk of the municipality or state (here, the Commonwealth) and often carry an interest rate that is significantly lower than the unsecured debt issued by the municipality or state.  This is a common and attractive structure because it is a less expensive mechanism for raising capital than issuing general obligation debt.  By way of example, general obligation bonds the Commonwealth issued in 2014 carried an effective interest rate of approximately 9.1%, significantly higher than COFINA-issued debt, which has a weighted average cost (*i.e.*, it is a blended interest rate) of 5.7%.

3.      To implement its plan, the Commonwealth created COFINA in 2007 and authorized it to issue bonds to investors in order to raise capital (the "**COFINA Bonds**").  The Commonwealth also imposed a new sales and use tax (the "**SUT**"), and by statute transferred the first proceeds from the SUT (the "**Pledged Sales Tax**"[2]) to a separate account (the "**Dedicated Sales Tax Fund**").  Pursuant to legislation passed by the vote of nearly every representative of both major political parties, the Commonwealth "*hereby transferred to*" COFINA the Dedicated Sales Tax Fund "and all the funds deposited therein on the effective date of this act *and all the future funds that must be deposited in the [Dedicated Sales Tax Fund] pursuant to the provisions of*" the statute—namely, the Pledged Sales Tax, including all Pledged Sales Tax revenues collected in the future—and unequivocally provided that the Pledged Sales Tax and Dedicated Sales Tax Fund "*shall be the property of COFINA*" and "*shall not constitute available resources of the Commonwealth of Puerto Rico for any purpose*."  Act of July 5, 2007, No. 56-2007 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16) (emphasis added).

---

[2]      The definition of "Pledged Sales Tax" shall include any and all rights that COFINA has with respect to the SUT.

The legislation directed that COFINA would use proceeds from the COFINA Bonds to pay the Commonwealth's extraconstitutional debt and for other legitimate public purposes.

4.      At the time COFINA was created and in the years that followed, the Commonwealth consistently and repeatedly affirmed that the COFINA structure was valid under Puerto Rico law and that the Dedicated Sales Tax Fund and the Pledged Sales Tax *belonged to COFINA*.  These admissions and representations by the Commonwealth, for example, appear in legislation passed by the Legislative Assembly, press releases and bond offering documents, and opinions by Secretaries of Justice of Puerto Rico spanning three different administrations. COFINA also obtained legal opinions from law firms in both Puerto Rico and the mainland United States that unanimously concluded that a court would likely find that COFINA's structure is valid under the Constitution of Puerto Rico and other governing local and federal law.  Based on all of these assurances, COFINA issued the COFINA Bonds to investors, and ratings agencies issued high, investment-grade ratings to the COFINA Bonds.

5.      The Commonwealth's tax-backed securitization plan was a resounding success. In the last decade, investors have purchased over $16 billion of COFINA Bonds, with individuals and other investors residing in Puerto Rico alone owning approximately $2.8 billion worth of COFINA Bonds.  COFINA Bonds became the investment of choice for retirees in Puerto Rico, who accepted the relatively low interest rate on the bonds because of the Commonwealth's repeated assurances, enshrined in Puerto Rico law, that their investment was secure because COFINA owns the Pledged Sales Tax and Dedicated Sales Tax Fund.  In addition, COFINA Bonds have been the most cost-effective source of financing for the Commonwealth since the 2006 financial crisis.  These bonds have provided the Commonwealth with an estimated savings of between $66 million and $132 million for every $1 billion of COFINA Bonds issued.  Press

Release, Puerto Rico Department of the Treasury, GDB (Sept. 25, 2013). In short, the COFINA structure was a vital aspect of Puerto Rico's emergence from the 2006 financial crisis.

6.      Now, the Commonwealth is facing another financial crisis and will need to raise capital to promote growth and restructure its debts. COFINA (or a similar securitization structure) will be critical to that effort, as investors are unlikely to invest in new Puerto Rican debt on terms the Commonwealth can afford unless the debt is secured by property beyond the reach of general creditors. But rather than demonstrate to investors that they can have confidence in COFINA, the Commonwealth Agent is attempting to invade the COFINA structure, undermining investor confidence, and jeopardizing the Commonwealth's chance of successfully raising capital in the future.

7.      In this litigation, the Commonwealth, through the Commonwealth Agent's Complaint, takes several positions that are all aimed at taking the stream of Pledged Sales Tax that the Commonwealth transferred to COFINA over a decade ago. Most fundamentally, the Commonwealth Agent seeks to mischaracterize the legislative enactments transferring the right to receive the Pledged Sales Tax to COFINA as a commercial transaction subject to Article 9 of the Uniform Commercial Code. But these are not commercial contracts creating a security interest in "future funds" that are governed by Article 9 and that can be avoided in bankruptcy. It is codified Puerto Rico law that immediately transferred "all the future funds that must be deposited" in the Dedicated Sales Tax Fund to COFINA and stated expressly that those future funds "shall be the property of COFINA." The Commonwealth Agent cannot usurp the role of the Legislative Assembly and change the law so as to prefer its own creditor constituency to COFINA's. Nor does the Commonwealth have free rein to violate its own laws with impunity. But that is exactly what the Commonwealth is now trying to do.

8. The Commonwealth further claims it is legally impossible to transfer—as the Commonwealth did to COFINA—a stream of future revenues. The Commonwealth is wrong. Such transfers are commonplace in municipal finance and the private debt markets, and have been endorsed by courts across the country. They also are the backbone of a $4 trillion market for securitized transactions, covering everything from streams of music royalties to mortgage payments. If the Commonwealth were correct that it is **legally impossible** for a legislature to transfer the proceeds of taxes collected in the future, that would call into question the integrity of the entire tax-backed securitization model on which states and municipalities around the country have relied to raise capital, and on which the Commonwealth likely will have to rely to emerge from its current financial crisis. It also would mean that the Commonwealth's repeated representations over the years that the Pledged Sales Tax belongs solely to COFINA were false, constituting a massive fraud intended to induce COFINA to issue bonds, investors to buy the bonds, and COFINA to deliver the proceeds from the bonds to the Commonwealth or use them to pay down the Commonwealth's debt.

9. Put simply, the Commonwealth is attacking the COFINA structure in a short-sighted attempt to misappropriate COFINA's property—which by law was used (and was required to be used) to secure the COFINA Bonds—in order to pay off the Commonwealth's current unsecured creditors. To protect COFINA's right to the Pledged Sales Tax and the Dedicated Sales Tax Fund, and to ensure that investors can put faith in any future tax-backed securitization plan implemented by the Commonwealth or its instrumentalities, Counterclaim Plaintiff asserts the counterclaims set forth below.

**PARTIES**

10. Bettina M. Whyte is the appointed representative of COFINA.

11.     The Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico is the appointed representative of the Commonwealth of Puerto Rico, a territory of the United States.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over all claims and causes of action in these Counterclaims pursuant to section 306(a) of PROMESA because they are at least "related to" the above-captioned title III proceeding.   PROMESA § 306(a) (codified at 48 U.S.C. § 2166(a)).  The parties (through the Oversight Board) have also jointly agreed to the jurisdiction of this Court.  *See* Commonwealth-COFINA Dispute Stipulation at ¶ 1.

13.     Venue in this district is proper pursuant to PROMESA § 307(a) (codified at 48 U.S.C. § 2167(a)) and 28 U.S.C. § 1391(b).  The parties have also jointly agreed to venue in this district.  *See* Commonwealth-COFINA Dispute Stipulation at ¶ 1.

## FACTUAL ALLEGATIONS

**A.     In Response to a Serious Financial Crisis, the Commonwealth Establishes COFINA and Authorizes It to Issue Secured Bonds in Order to Raise Capital.**

14.     In 2006, the Commonwealth faced a serious financial crisis that resulted in a full shutdown of the government for two weeks.  Nearly 100,000 public employees were left without pay and 500,000 children were left without school.  The government shutdown affected Puerto Rico's entire economy, with restaurants, shops, and other industries reporting significant drops in business as government employees struggled to get by without their salaries.

15.     In response to the financial crisis, the Commonwealth enacted several new measures, including passing legislation implementing a tax-backed securitization plan designed to raise capital in a cost-effective manner.  As part of the plan, the Legislative Assembly of the Commonwealth passed Act No. 91 of May 13, 2006 (codified as amended at P.R. Laws Ann. tit.

13, § 12) ("**Act 91**"), originally titled the "Urgent Interest Fund Act," which imposed a new sales and use tax and mandated that a portion of proceeds of the tax—the Pledged Sales Tax—be deposited in the Dedicated Sales Tax Fund.  Pursuant to Act 91, the Dedicated Sales Tax Fund was only to be used for the purposes expressly provided in the statute, including the payment or refinancing of the Commonwealth's outstanding extraconstitutional debt.  *See* Act of May 13, 2006, No. 91-2006.

16.     The Legislative Assembly also passed legislation creating COFINA—originally called the Puerto Rico Urgent Interest Fund Corporation—as a subsidiary of the Development Bank of Puerto Rico (the "**GDB**") on December 26, 2006.  *See* Act of Dec. 26, 2006, No. 291-2006 (codified as amended at P.R. Laws Ann. tit. 13 §§ 11a-16) ("**Act 291**").  On July 5, 2007, the Legislative Assembly amended the law so that COFINA was not a subsidiary of the GDB, but rather "a corporate and political entity independent and separate from the Commonwealth." *See* Act 56, § 3; P.R. Laws Ann. tit. 13, §§ 11a-16 ("**Act 56**").  The Legislative Assembly also gave COFINA the power to issue bonds secured by the Pledged Sales Tax and the funds in the Dedicated Sales Tax Fund.  *Id.*

17.     By mandate of the Legislative Assembly in Act 56, which amended Act 91, the Commonwealth transferred to COFINA ownership of the Dedicated Sales Tax Fund and the right to receive the Pledged Sales Tax.  Specifically, Act 56 provides that:

> The [Dedicated Sales Tax Fund] and all the funds deposited therein on the effective date of this act ***and all the future funds that must be deposited in the [Dedicated Sales Tax Fund] pursuant to the provisions of this law <u>are hereby transferred to</u>, and shall be the property of</u> COFINA***.

*See* Act 56, § 3; P.R. Laws Ann. tit. 13, § 12 (emphasis added).  Accordingly, upon the enactment of Act 56 in 2007, COFINA owned the entire stream of Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future.

18.     Consistent with the transfer of this stream of revenue to COFINA, Act 56 mandates that the Pledged Sales Tax must be deposited in the Dedicated Sales Tax Fund, and shall not be deposited in the Treasury of Puerto Rico nor be available to the Commonwealth:

> The [Dedicated Sales Tax Fund] shall be funded each fiscal year from the [designated] sources, the proceeds of which shall be directly deposited in the [the Dedicated Sales Tax Fund] at the time of receipt and shall not be deposited in the Treasury of Puerto Rico, ***nor shall these constitute resources available to the Commonwealth of Puerto Rico***, nor shall these be available for use by the Secretary of the Treasury of the Commonwealth of Puerto Rico.

*Id*. § 3; P.R. Laws Ann. tit. 13, § 12 (emphasis added).

19.     The Legislative Assembly further made clear in the Statement of Motives accompanying Act 56 that it was its intention that the funds in the Dedicated Sales Tax Fund, and all funds required to be deposited in the Dedicated Sales Tax Fund by law, belonged to and were the property of COFINA and would not constitute available resources of the Commonwealth.  It provided that it was the intention of the Legislative Assembly in passing Act 56 to:

> increase the amount of funds that are deposited in the Dedicated Sales Tax Fund pursuant to the provisions of Act 91 so that they be used to pay the extraconstitutional debt, that they be ***owned by COFINA*** . . . and that ***such funds shall not constitute available resources of the Commonwealth of Puerto Rico for any purpose*** . . . .

*Id*., Statement of Motives; P.R. Laws Ann. tit. 13, §§ 11a-16 (emphasis added).

20.     Act 56 also contains a commitment by the Commonwealth not to interfere with COFINA's right to satisfy its obligations to COFINA bondholders:

> ***The Commonwealth of Puerto Rico hereby agrees and promises*** any person, firm or corporation or any agency of the United States of America or of any state or the Commonwealth of Puerto Rico that subscribe or acquire bonds issued by COFINA, ***to not limit nor restrain the rights or powers hereby conferred by this Act or***

> *the rights of COFINA to meet its agreements with bondholders*, until such time as such bonds, regardless of their date, together with the interest accrued, shall be completely paid and redeemed. *No amendment to Act No. 91 of May 13, 2006, as amended, shall undermine any obligation or commitment of COFINA*.

Act 56, § 3; P.R. Laws Ann. tit. 13, §§ 11a-16; *see also* Act 291; P.R. Laws Ann. tit. 13 §§ 11a-16 (same); Act of Jan. 14, 2009, No. 1-2009 (codified as amended at P.R. Laws Ann. tit. 13, §§ 11a-16) ("**Act 1**") (same).

21.    The Legislative Assembly plainly recognized that transferring the Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA—and prohibiting the Commonwealth from using those tax proceeds for any other purpose—was integral to raising capital cost-effectively. By insulating the COFINA Bonds from the Commonwealth's known and palpable credit risk, the COFINA Bonds could carry a lower interest rate than general obligation debt.  Indeed, the House of Representatives' Treasury and Financial Affairs Commission stated that COFINA would have "the power to issue debt which will be able to procure a higher credit classification than the debt of the Government of Puerto Rico, and therefore have access to the capital markets at more reasonable interest rates."   Positive Report on H.B. 3163, Remarks of the House of Representatives' Treasury and Financial Affairs Commission.

22.    The legislation creating the COFINA structure passed by the vote of nearly every representative of both the Popular Democrat Party and the New Progressive Party—a rare showing of bipartisan support among the members of the Legislative Assembly.   *See* Eva Llorens Velez, *Puerto Rico Legislative Leaders Back Local Bondholders*, Caribbean Business (Mar. 9, 2017) (House Speaker Carlos Méndez explained, "[COFINA] was created in a legal fashion with the support of all political parties in a unanimous way.").  The COFINA plan was overwhelmingly perceived to be an important and effective approach to the financial crisis.

**B.    COFINA Issues Four Types of Bonds and Raises Over $16 Billion for the
Commonwealth Based on the Commonwealth's Representations that COFINA
Owns the Pledged Sales Tax and the Dedicated Sales Tax Fund.**

23.    On July 13, 2007, COFINA adopted the Amended and Restated Sales Tax
Revenue Bond Resolution (as amended and supplemented, the "**Resolution**") and, pursuant to
that Resolution, issued four types of COFINA Bonds:  (a) senior "current interest" bonds;
(b) senior "capital appreciation" bonds; (c) subordinate "current interest" bonds;  and
(d) subordinate "capital appreciation" bonds.  The COFINA Bonds are obligations of COFINA
payable from the Pledged Sales Tax without recourse to any assets of the Commonwealth.
Resolution § 201.  The COFINA Bonds do not constitute a debt of the Commonwealth and are
not backed by a pledge of the full faith credit of the Commonwealth.  *Id*.

24.    The Resolution is a contract among COFINA, Bank of New York Mellon
("**BNYM**"), the COFINA bondholders, and certain other beneficiaries.  Resolution § 103.
BNYM is the trustee under the Resolution for all series of COFINA Bonds.

25.    Through the transfer of the Pledged Sales Tax and related issuances of the
COFINA Bonds, the Commonwealth raised more than $16 billion by monetizing future tax
revenues.  Puerto Rican and mainland investors purchased approximately $4.5 billion in
COFINA Bonds in 2007, and another $740 million in 2008.  Between 2009 and 2011, COFINA
sold additional bonds to investors, both in Puerto Rico and off the island.  According to one
estimate by the GDB, financing using the COFINA Bonds saved the Commonwealth between
$1.1 and $2.2 billion in borrowing costs.  *See Treasury Secretary and Interim GDB President
Announce Amendments to COFINA Act that Will Facilitate More Cost-effective Financing for
the Commonwealth*, PRNewswire, Sept. 25, 2013.

26.    The Resolution reflects a commitment by the Commonwealth to respect and not
interfere with COFINA's rights to the Pledged Sales Tax and the Dedicated Sales Tax Fund, and

to not interfere with COFINA's obligations to pay the COFINA bondholders using those funds. Specifically, the Resolution states that the Commonwealth committed that it would not "limit or restrict the rights or powers of the appropriate officers of the Commonwealth to impose, maintain, charge or collect the taxes and other receipts constituting amounts to be deposited in the Dedicated Sales Tax Fund" until payment in full of the COFINA Bonds. Resolution § 706. The Resolution further states that the Commonwealth committed not to "limit or restrict the rights" granted to COFINA under its enabling legislation or the rights of COFINA to "meet its obligations" to its bondholders until the COFINA Bonds and interest thereon are paid in full. *Id.*

27. In connection with the issuance of COFINA Bonds, the Commonwealth acknowledged that COFINA securing the COFINA Bonds with the Pledged Sales Tax and the Dedicated Sales Tax Fund, and the prohibition on the Commonwealth from accessing those funds, were essential features of its capital-raising plan. With the first offering, the GDB stated that COFINA had placed more than $2.6 billion in bonds in the U.S. tax-exempt market, and that the placement was possible because "the protection that the Dedicated Sales Tax Fund provides these bonds allowed 'investors to react with great enthusiasm to the bond issue, which translated into a two-fold oversubscription.'" Press Release, GDB, *Historic Puerto Rico $2.6 Billion Bond Issue Placed Successfully by COFINA* (July 11, 2007); *see also* Act No. 116, Statement of Motives ("Bonds issued by [COFINA] have been the most cost-effective source of financing for the Commonwealth of Puerto, since the creation of [COFINA]. Given that such bonds are backed by the revenues of the sales and use tax, which is an ongoing and reliable source of income tied to ordinary economic activity of Puerto Rico's citizens, their credit rating is higher than that of general obligation bonds of the Commonwealth of Puerto Rico.").

28. In connection with each issuance of COFINA Bonds, COFINA obtained legal opinions from reputable counsel from both the Commonwealth and the continental United States that confirmed the validity of the COFINA structure. These include, by way of example, the following opinions:

- "[A] court . . . would find that *Act 91 validly transfers the Pledged Sales Tax, including the Commonwealth's right to receive the Pledged Sales Tax, to [COFINA]*, that said asset and right of [COFINA] shall not constitute 'available resources including surplus' of the Commonwealth . . . and that Act 91 validly provides that the Pledged Sales Tax is not available for use by the Secretary of the Treasury of the Commonwealth." Opinion Letter of Hawkins Delafield & Wood LLP at 5 (June 18, 2009) (emphasis added).

- "*Act 91 . . . validly transfers the Pledged Sales Tax, including the Commonwealth's right to receive the Pledged Sales Tax, to [COFINA]*" and "the Pledged Sales Tax does not constitute 'available resources' . . . of the Commonwealth." Opinion Letter of Pietrantoni Mendez & Alvarez LLC at 8 (June 18, 2009) (emphasis added).

- "When Act 91 is reviewed in light of the relevant precedent, we find that the *Act is structured to include virtually all of the elements that courts have relied on in upholding legislation against a claim that the legislature acted unconstitutionally* . . . ." Opinion Letter of Nixon Peabody at 9 (February 9, 2010) (emphasis added).

- "[W]e are of the opinion that a court . . . would find that (1) *Act 91 validly transfers the Pledged Sales Tax, including the Commonwealth's right to receive the Pledged Sales Tax, to [COFINA]*, (2) said asset and right of [COFINA] shall not constitute 'available resources including surplus' of the Commonwealth . . . *and therefore are not subject to a first claim by the owners of public debt of the Commonwealth* . . . and (3) Act 91 validly provides that the Pledged Sales Tax is not available for use by the Secretary of the Treasury of the Commonwealth." Opinion Letter of Nixon Peabody at 11 (December 13, 2011) (emphasis added).

- "*[H]ad the framers of the Puerto Rico Constitution desired to limit the ability of the Legislature to assign future tax revenues they could have done so by including in the Puerto Rico Constitution an explicit anti-dedication clause* . . . It is our opinion, based on our examination of the law and other matters . . . we consider pertinent . . . a court would hold that *[Act 91] validly transfers the Pledged Sales Tax, including the Commonwealth's right to receive the Pledged Sales Tax, to [COFINA]* . . . ." Opinion Letter of Pietrantoni, Mendez & Alvarez LLC at 6-8 (December 13, 2011) (emphasis added).

29.     Rating agencies expressly relied on the Commonwealth's representations concerning the validity of the COFINA structure in assigning the COFINA Bonds strong, investment-grade ratings.  Moody's Investors Service ("**Moody's**") stated that it assigned an A1 rating with a stable outlook to the COFINA Bonds, as compared to a Baa3 rating with a negative outlook for the Commonwealth's general obligation bonds, based primarily on the "strength of the pledged sales tax security, as well as the fact that the sales tax revenues are not subject to the Commonwealth's 'clawback' provisions," and the fact that the Pledged Sales Tax was "insulated from the state's broader budget and financial problems that have caused the downgrading of the" general obligation bonds.  Moody's Investor Service, *New Issue: Moody's Assigns A1 Rating and Stable Outlook to Puerto Rico Sales Tax Financing Corporation Sales Tax Revenue Bonds* at 2 (June 27, 2007).  Subsequent ratings letters by Moody's reiterate that the agency relied on COFINA's sole ownership over the Pledged Sales Tax and the Dedicated Sales Tax Fund to assign high ratings to COFINA Bonds.  *See* Moody's Investor Service, *New Issue: Moody's Assigns A1 to $500M Puerto Rico Sales Tax Revenue Bonds, Series 2007C* at 2 (Dec. 18, 2007); Moody's Investors Service, *New Issue: Moody's Assigns A1 Rating on $1.8 Billion Puerto Rico Sales Tax Revenue Bonds, First Subordinate Series 2010C-E* at 3 (June 16, 2010); Moody's Investor Service, *New Issue: Moody's Assigns Aa2 Rating on $1.1 Billion Puerto Rico Sales Tax Revenue Bonds, Senior Series 2011C and 2011D* at 3-4 (Nov. 23, 2011).

30.     Similarly, Standard & Poor's made clear that its high rating for the COFINA Bonds reflected "a strong legal structure that separates the revenue stream supporting the [COFINA] bonds from the Commonwealth of Puerto Rico," and that COFINA's "assets and liabilities are separate from those of the Commonwealth."  Standard & Poor's, Puerto Rico Sales Tax Fin. Corp.; Sales Tax at 2, 5 (June 28, 2007).  Standard & Poor's issued a rating letter in

connection with each offering of COFINA Bonds, with each letter emphasizing the importance of the separateness of COFINA and the Dedicated Sales Tax Fund from the Commonwealth. *See* Standard & Poor's, *Ratings Direct: Puerto Rico Sales Tax Bonds Rating Raised to 'AA-'* at 1-2 (May 18, 2009); Standard & Poor's, *Ratings Direct: Puerto Rico Sales Tax Financing Corporation; Sales Tax* at 2-3 (Jan. 14, 2010); Standard & Poor's, *Ratings Direct: Puerto Rico Sales Tax Financing Corp.; Sales Tax* at 1-2 (Nov. 15, 2011).

31.     Investors also relied on statements by the Commonwealth, and the resulting strong investment-grade ratings of the COFINA Bonds, in purchasing billions of dollars' worth of COFINA Bonds.  Among other things, investors were told in the COFINA Bond offering documents that the COFINA Bonds "will be payable from and secured by a security interest [in the Pledged Sales Tax] . . . imposed by a newly-enacted statute of the Commonwealth that grants to [COFINA] *ownership* of the Pledged Sales Tax . . . ."  Commonwealth of Puerto Rico, Sales Tax Revenue Bonds Series 2007A, Official Statement (July 13, 2007) (emphasis added).  Investors were also told that "[u]nder the provisions of Act 91, the [Dedicated Sales Tax Fund] and all present *and future collections* of the Pledged Sales Tax are transferred to, and made the property of, [COFINA]" and that the "Commonwealth agrees and commits . . . that it will not limit or restrain the rights and powers conferred by Act 91 or the rights of [COFINA] to comply with its agreements with [COFINA bondholders] until said bonds, together with the interest thereon, are completely retired and that no amendment to Act 91 shall impair any obligation or commitment of [COFINA]."  *Id*. at 17, 22 (emphasis added).

32.     In addition, monoline insurance companies insured COFINA Bonds in reliance on the Commonwealth's representations.  For example, Ambac Assurance Corporation, National

Public Finance Guaranty Corporation, and Assured Guaranty have insured a total of approximately $4.15 billion of COFINA Bonds.

33.    COFINA itself similarly relied on the Commonwealth's representations in issuing COFINA Bonds and committing to repay the Commonwealth's extraconstitutional debt.  Since the creation of COFINA, the Pledged Sales Tax and the Dedicated Sales Tax Fund have belonged only to COFINA and the Commonwealth has never had access to those funds.  In short, when it issued the COFINA Bonds and committed to repay the Commonwealth's extraconstitutional debt, COFINA reasonably believed that the Commonwealth would abide by the laws passed by its Legislative Assembly and stand behind its numerous statements reaffirming the validity of the transfer of the Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, to COFINA.

## C.    The Commonwealth Repeatedly Reaffirms the Property Rights of COFINA in the Decade Following the Creation of COFINA.

34.    In the ten years following the creation of COFINA and the implementation of the Commonwealth's tax-backed securitization plan, the Commonwealth repeatedly reaffirmed COFINA's property rights to the stream of Pledged Sales Tax, COFINA's ownership of the Dedicated Sales Tax Fund, the validity of the COFINA structure as a whole, and the prohibition on the Commonwealth seeking access to the Pledged Sales Tax or the funds in the Dedicated Sales Tax Fund.

35.    In subsequent amendments to the laws governing COFINA, the Legislative Assembly has reaffirmed the transfer and the fundamental segregation of the Pledged Sales Tax and the resources available to the Commonwealth.  For example, in January 2009, the Legislative Assembly passed legislation (Act 1) increasing the percentage of the Pledged Sales Tax deposited in the Dedicated Sales Tax Fund.  *See* Act No. 1; P.R. Laws Ann. tit. 13, §§ 11a-

16. Act 1 reiterated the Legislative Assembly's intention that COFINA be "a corporate and political entity independent and separate from the Commonwealth," and that the Pledged Sales Tax "shall be directly deposited in the Dedicated Sales Tax Fund at the time of receipt and shall not be deposited in the Treasury of Puerto Rico, nor shall it constitute resources available to the Commonwealth . . ., nor shall it be available for use by the Secretary of the Treasury of the Commonwealth . . . ." *Id*. § 3. Even as recently as July 2015, the Legislative Assembly reaffirmed that "the funds covered in the [Dedicated Sales Tax Fund] shall neither be deposited in the Treasury of Puerto Rico, constitute resources available to the Commonwealth, nor be available for use by the Secretary of the Treasury." Act of July 1, 2015, No. 101-2015 (codified as amended at P.R. Laws Ann. Tit. 13, § 11a-1) ("**Act 101**").

36. The Commonwealth's financial reports also make clear that the Pledged Sales Tax revenue collected by the Commonwealth belongs to COFINA and, for that reason, is not included in the Commonwealth's internal revenue. For example, the Commonwealth's 2008 financial report provides that:

> the portion of the sales and use tax allocated to COFINA is not included as internal revenue in consistency with the legislation creating COFINA, ***which legislation transfers ownership of such portion of the sales and use tax to COFINA*** and provides that such portion is not "available resources" under the constitutional provisions relating to the payment of debt service.

Commonwealth of Puerto Rico Comprehensive Annual Financial Report, Year Ended June 30, 2008 at 102 (emphasis added); *see also* Commonwealth of Puerto Rico Comprehensive Annual Financial Report, Year Ended June 30, 2009 at 33 (same); Commonwealth of Puerto Rico Comprehensive Annual Financial Report, Year Ended June 30, 2012 at 32 (same).

37. In addition, Secretaries of Justice serving three different administrations of alternating political parties have issued a total of six opinions confirming that the transfer of the

Pledged Sales Tax to COFINA was valid, and that the Pledged Sales Tax does not constitute available resources of the Commonwealth. Following the establishment of COFINA, Secretary of Justice Roberto J. Sanchez Ramos issued a legal opinion in which he concluded that "Act No. 91 . . . was validly enacted by the Commonwealth" and "the Dedicated Sales Tax Fund, including the **right to receive collections of the [Pledged Sales Tax], is transferred to [COFINA]** and said assets and funds of [COFINA] shall not constitute available resources of the Commonwealth . . . ." Letter of Roberto J. Sanchez Ramos, Consulta Num. 06-63-B, ¶¶ 2-3 (July 13, 2007) (emphasis added).

38.    In June 2009, Secretary of Justice Antonio M. Sagardia de Jesus issued another opinion in connection with an issuance of COFINA Bonds. He similarly concluded that Act 91 is valid, that the "Dedicated Sales Tax Fund, including the **right to receive collections of the [Pledged Sales Tax], is validly transferred to [COFINA]**," and that the "Dedicated Sales Tax Fund, the funds on deposit therein and the [Pledged Sales Tax] do not constitute available resources of the Commonwealth . . . ." Letter of Antonio M. Sagardia, Consulta Num. 09-233-A, ¶¶ 2-3 (June 18, 2009) (emphasis added).

39.    Since 2010, Secretary of Justice Guillermo A. Somoza Colombani has issued four opinions reaching similar conclusions. *See* Letter of Secretary of Justice Guillermo A. Somoza Colombani, Consulta Num. 10-175-A, ¶¶ 2, 5 (Feb. 9, 2010) ("Act No. 91 . . . and each of the statutes amending Act 91 were validly enacted" and the "Dedicated Sales Tax Fund, the funds on deposit therein and the [Pledged Sales Tax] do not constitute available resources of the Commonwealth for Section 2 or Section 8 of Article VI of the Constitution of Puerto Rico, nor shall they be available for use by the Secretary of the Treasury of the Commonwealth."); Letter of Secretary of Justice Guillermo A. Somoza Colombani, Consulta Num. 10-336-A, ¶¶ 2, 5 (June

30, 2010) (same); Letter of Secretary of Justice Guillermo A. Somoza Colombani, Inquiry No.

11-137-B, ¶¶ 2, 5 (Nov. 23, 2011) (same); Letter of Secretary of Justice Guillermo A. Somoza

Colombani, Inquiry No. 11-145-B, ¶¶ 2, 5 (Dec. 13, 2011) (same).

40.    The GDB touted these opinions of the Secretaries of Justice and the

Commonwealth's inability to access the Pledged Sales Tax in reassuring investors.  For example,

during an investor call hosted by the GDB on October 31, 2013, the then Interim President of the

GDB stated that "[i]mportantly, the Secretary of Justice opinions enjoy broad bipartisan support,

a rare thing in Puerto Rico:  four Secretaries of Justice, serving three different administrations (of

alternating political parties), have issued opinions that *the SUT allocated to COFINA is not

subject to 'claw back.'*"  Remarks of Jose Pagan of the Government Development Bank,

Conference Call about COFINA Legal Opinions at 2 (Oct. 31, 2013) (emphasis added).  He

further stated that, because of this, COFINA Bonds were an attractive investment option and a

successful capital-raising tool for the Commonwealth:  "COFINA's credit is bolstered by strong

legal protections for bondholders.  *COFINA is the best-rated credit among Puerto Rico issuers*

and has historically been the most attractive and cost-effective source of financing for the

Commonwealth."  *Id*. (emphasis added).

41.    On the same call, the Executive Vice President and General Counsel of the GDB

announced that new COFINA Bonds would not be issued unless the Commonwealth could

provide the same assurances to investors that the Commonwealth could not access the Pledged

Sales Tax.  "[W]hile no new COFINA transaction has been announced, *no such transaction

would be completed without the delivery of opinions* from the Puerto Rico Secretary of Justice,

and each of the firms acting as bond counsel and underwriters' counsel on such deal, *that reach*

*exactly the same conclusions as the opinions being discussed today*."  *See* Remarks of Jose

Coleman, Conference Call about Legal Opinions at 8 (Oct. 31, 2013).

      42.     Following the call, the GDB issued a press release reiterating some of these "key

points."  The press release contained the following representations:

- "Law 91-2006, which created COFINA, transferred ownership of a portion of the [SUT] to COFINA and provided that any transferred portion are not 'available resources' under the Constitutional provisions relating to full faith and credit [GO Bonds]."

- "The law provides that the Commonwealth agrees not to limit or restrict the rights granted by the COFINA Act or the rights of COFINA to meet its obligations to its bondholders."

- "COFINA's bond documents require written confirmation of all outstanding ratings and opinions confirming that new revenue would not constitute 'available resources' in the event the SUT were to be replaced with another source of revenues."

- "The Puerto Rico Secretary of Justice has provided, for each COFINA transaction (13 in total), a legal opinion that the SUT allocated to COFINA is not subject to 'claw-back' by GO bondholders under the PR Constitution. US-based Bond Counsel and PR-based Underwriters' Counsel have delivered legal opinions reaching the same conclusion."

Press Release, Puerto Rico Dept. of the Treasury, GDB (Oct. 31, 2013).

      43.     These statements are just a representative sample of some of the many admissions

and representations by the Commonwealth over the last decade reaffirming the validity of the

COFINA structure and the law transferring the right to receive the Pledged Sales Tax from the

Commonwealth to COFINA.  Nowhere does the Commonwealth explain how its new-found

demand to seize the Pledged Sales Tax can be squared with these representations it made, over a

decade, to COFINA, its investors, and the market.

**D.**     **The Commonwealth Issues Unsecured General Obligation Bonds at a Higher Interest Rate to Raise Additional Capital.**

      44.     In addition to creating COFINA and authorizing it to issue COFINA Bonds, the

Commonwealth also raised capital through the issuance of general obligation bonds ("**GO**

**Bonds**").  The GO Bonds, unlike the COFINA Bonds, are supported only by an unsecured pledge of the Commonwealth's full faith credit and taxing power.

45.    Article VI, section 8 of the Constitution of Puerto Rico states that if "available resources" are insufficient to fund all of the desired spending in a particular year, "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."

46.    GO Bonds have consistently yielded higher interest rates and been rated lower than COFINA Bonds.  As recently as 2013, the Legislative Assembly acknowledged that GO Bonds were rated lower than COFINA Bonds because while COFINA Bonds are "backed by the revenues of the sales and use tax," the GO Bonds were only supported by a promise to pay when funds are available.  Act of Oct. 10, 2013, No. 116-2013, Statement of Motives (codified at P.R. Laws Ann. Tit. 13, §§ 11a-13) ("**Act 116**").  GO bondholders are paid a higher interest rate to compensate them for taking on the increased risk of lending to the Commonwealth on an unsecured basis.  Indeed, the Commonwealth paid significantly more in interest on GO Bonds issued in 2014 than the weighted average cost COFINA paid on COFINA Bonds.

47.    Since the creation of COFINA, there have been 18 issuances or remarketings of GO Bonds, and with each offering, GO bondholders were informed that the Pledged Sales Tax and the funds in the Dedicated Sales Tax Fund are the property of COFINA and cannot be used to satisfy the Commonwealth's obligations under the GO Bonds.  For example, Official Statements in connection with the issuance of GO Bonds have included the following statements:

- "[The Pledged Sales Tax] is deposited by the Secretary of the Treasury upon receipt into the [Dedicated Sales Tax Fund], which is **held and owned by [COFINA]** separate and apart from the Commonwealth's General Fund. **Amounts on deposit in the [Dedicated Sales Tax Fund] are applied to the payment of debt issued by [COFINA]** to refinance the above extra constitutional debt outstanding."  Commonwealth of Puerto Rico, Tax and Revenue

Anticipation Notes, Series 2008, Official Statement at 3 (Oct. 18, 2007)
(emphasis added).

- "[T]he portion of the Sales Tax . . . allocated to COFINA is also not included as internal revenues consistent with the legislation creating [COFINA], which legislation *transfers ownership of such portion of the sales and use tax to COFINA and provides that such portion is not 'available resources' under the Constitutional provisions relating to the Bonds*." Commonwealth of Puerto Rico, Public Improvement Refunding Bonds, Series 2009A (Nov. 7, 2008).

- "Act 91 provides that *the Dedicated Sales Tax Fund created by such law, the funds on deposit therein and the Commonwealth sales and use tax pledged to COFINA, do not constitute "available resources" of the Commonwealth* for purposes of Section 2 and Section 8 of Article VI of the Commonwealth Constitution and are not available for use by the Secretary of the Treasury. *As a result, the portion of the Commonwealth sales and use tax allocated to COFINA is not available for the payment of principal of and interest on the [GO] Bonds*." Gen. Obligation Bonds of 2014, Series A, Official Statement at 29 (Mar. 11, 2014) (emphasis added).

**E.     Congress Passes Legislation Permitting the Commonwealth to Restructure in the Midst of a New Financial Crisis.**

48.     A decade after the Commonwealth created COFINA in response to the economic crisis that led to a government shutdown in 2006, the Commonwealth is once again facing severe economic troubles.  On June 30, 2016, PROMESA was signed into law in order to allow the Commonwealth to restructure.

49.     PROMESA provides for the establishment of a Financial Oversight and Management Board (the "**Oversight Board**") with broad responsibilities and powers.  Among other things, it allows the Oversight Board to petition under title III of PROMESA for the commencement of a court-supervised restructuring process to allow the Commonwealth to restructure in a proceeding similar to that of a filing under chapter 9 or 11 of title 11 of the United States Bankruptcy Code (the "**Bankruptcy Code**").  PROMESA § 304 (codified at 48 U.S.C. § 2164).   The Oversight Board is intended to operate autonomously from the Commonwealth's government.

50.    In addition to the power to commence a title III proceeding, the Oversight Board also has the authority under PROMESA to monitor and recommend changes in the Commonwealth's laws and to approve a fiscal plan of the Commonwealth. *See* PROMESA §§ 104, 201 (codified at 48 U.S.C. §§ 2124, 2141). Specifically, PROMESA requires that the Commonwealth and its instrumentalities develop and maintain a fiscal plan under the supervision of the Oversight Board which provides "a method to achieve fiscal responsibility and access to capital markets . . . ." PROMESA § 201(b)(1) (codified at 48 U.S.C. § 2141(b)(1)). Among other things, a fiscal plan promulgated pursuant to PROMESA must "respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory . . . ." PROMESA § 201(b)(1)(N) (codified at 48 U.S.C. § 2141(b)(1)(N)). A fiscal plan must be approved by the Oversight Board before it may be implemented. PROMESA § 201(a) (codified at 48 U.S.C. § 2141(a)).

51.    PROMESA preempts inconsistent local law. PROMESA § 4 (codified at 48 U.S.C. § 2103) ("[PROMESA] shall prevail over any general or specific provisions of territory law, State law, or regulation" that is inconsistent.).

## F.    The Legislative Assembly Violated COFINA's Rights Under PROMESA by Reducing the Amount of SUT Proceeds COFINA Receives.

52.    Although Act 56 provides a formula for determining the amount of SUT proceeds that COFINA receives in a given year (the "**Pledged Base Amount**"), the rate at which COFINA receives those proceeds until the Pledged Base Amount is satisfied can fluctuate. Indeed, on January 24, 2014, the Legislative Assembly passed Act No. 18-2014 ("**Act 18**"), which increased the amount of SUT proceeds collected by the Commonwealth that COFINA receives from 5.5% to 6%. Act 18 also provided for a corresponding decrease in the amount of SUT proceeds that Commonwealth municipalities receive from 1.5% to 1%. In other words, while Act 18 did not

change the Pledged Base Amount, it increased the rate at which COFINA received the Pledged

Base Amount in a given year. The Legislative Assembly made clear that this change was

intended to "strengthen the financial capacity of [COFINA]." *See* Act 18.

53.     Act 18 also established a special fund known as the Municipal Administration

Fund ("**MAF**"), funded by 0.5% of the SUT. *See id.* at art. 1, § 2(a). However, Act 18 expressly

provided that MAF's interest in 0.5% of the SUT proceeds collected by the Commonwealth

would be subordinate to COFINA's right to the Pledged Base Amount:

> Except for the transitory period between February 1, 2014, and
> June 30, 2014, the revenues of the [SUT] received every fiscal year
> by the Commonwealth . . . shall be deposited into said special
> fund, *once the Fixed Income is deposited in the Dedicated Sales
> Tax Fund, as required under Act No. 91* . . . .
>
> . . . .
>
> *Deposits to this special fund shall be made: (i) after an amount
> which bears the same ratio to the Required Annual Deposit
> accumulated once the Fixed Income has been deposited in the
> Dedicated Sales Tax Fund, as required under Act No. 91 . . . is
> deposited from the first revenues of the [SUT];* and (ii) after such
> amount is deposited, periodically every month, by the financial
> institution acting as custodian of the revenues of the State IVU
> imposed by the Commonwealth.

*Id.* (emphasis added). Accordingly, as of the date of PROMESA's enactment, MAF received

0.5% of SUT proceeds only after COFINA received the total Pledged Base Amount in a given

year.

54.     Following PROMESA's enactment, the Legislative Assembly was precluded

from altering COFINA's priority to the SUT proceeds, or the rate at which it received the

proceeds. But that is precisely what the Commonwealth did.

55.     On July 22, 2016, after PROMESA was enacted, the Legislative Assembly passed

Act of July 22, 2016, Act No. 84-2016 ("**Act 84**"), which amended Act 18 by providing that

"[d]eposits to [MAF] shall be made on a monthly basis" without providing that those payments are subordinate to COFINA's right to SUT proceeds. *Id.* at § 2(a). As a result of this change, COFINA became entitled to receive only 5.5% of SUT proceeds, rather than 6%, slowing the rate at which the Pledged Base Amount would be satisfied. Commonwealth municipalities, on the other hand, would – as a result of this unlawful amendment – receive 0.5% on a monthly basis, regardless of whether COFINA has received the Pledged Base Amount.

56.     Thus, by passing Act 84, the Commonwealth has adversely altered COFINA's right to receive 6% of SUT proceeds in order to benefit municipalities of the Commonwealth in violation of PROMESA.

**G.     The Commonwealth Reneges on its Decade-Long Affirmation of the COFINA Structure and Attempts to Confiscate COFINA's Property to Satisfy the Commonwealth's Debt Obligations.**

57.     On March 13, 2017, the Commonwealth's Fiscal Agency and Financial Advisory Authority submitted a joint fiscal plan (the "**Fiscal Plan**") to the Oversight Board, which was approved by the Oversight Board that same day. The Fiscal Plan purports to resolve the Commonwealth's deficit with a projected $7.9 billion in cumulative debt service over the next 10 years. Fiscal Plan at 5-6. However, in so doing, the Fiscal Plan takes no position on whether COFINA is the sole owner of the Dedicated Sales Tax Fund and the Pledged Sales Tax, including all Pledged Sales Tax collected in the future, or whether the Commonwealth may access those funds to satisfy its own debts.

58.     On April 29, 2017, the Commonwealth sought to misappropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund from COFINA, despite all of its prior representations that those funds are owned by and belong solely to COFINA and not to the Commonwealth. On that day, Commonwealth Governor Ricardo Rossello Nevares signed into law Act 26, titled the Fiscal Plan Compliance Law (the "**Compliance Law**"). The Compliance

Law includes a variety of measures to implement the approved Fiscal Plan, including both savings and revenue-generating measures, and authorizes the Governor of Puerto Rico, under certain circumstances, to use the Pledged Sales Tax to cover deficiencies in the Commonwealth's cash flow or to comply with the Fiscal Plan. The Compliance Law calls for the Pledged Sales Tax to be transferred from the Dedicated Sales Tax Fund to the Commonwealth's general fund under the custody of the Secretary of Treasury. The Secretary of Treasury is granted the authority to determine the order of priority disbursements from the Commonwealth's general fund.

59. Pursuant to the Compliance Law, the Commonwealth claims to have the right to use the Pledged Sales Tax and the Dedicated Sales Tax Fund for its own purposes. Having repeatedly and consistently represented that COFINA is a separate entity with exclusive ownership of the Pledged Sales Tax and Dedicated Sales Tax Fund, and having induced COFINA to issue bonds to bondholders based on those representations (and investors to buy the bonds), the Commonwealth cannot now be heard to claim that it can take the Pledged Sales Tax and the Dedicated Sales Tax Fund to pay off its own creditors.

60. The Commonwealth's changed position is more than just a legal dispute. If the Commonwealth (through the Commonwealth Agent) succeeds in misappropriating the Pledged Sales Tax and the Dedicated Sales Tax Fund, individual Puerto Ricans will suffer. COFINA Bonds represent the most widely-held investment by Puerto Rican retirees and retail investors, with individuals and other investors in Puerto Rico owning at least $2.8 billion in COFINA Bonds. Fiscal Plan at 71. That figure is staggering for an island with an average median household income in 2015 of $18,626. *See* U.S. Census Bureau, Household Income 2015 at 3. The Commonwealth's attempt to seize COFINA's funds for its own creditors also jeopardizes its

ability to raise capital going forward. If investors cannot trust the Commonwealth's laws providing that bonds issued by COFINA (or a similar structure) are, in fact, secured by COFINA's own property, the Commonwealth will be unable to raise capital efficiently, undermining any plan to emerge from its current financial situation.

## H. The Commonwealth-COFINA Dispute.

61. The Commonwealth-COFINA Dispute Stipulation was entered by the Court on August 10, 2017, to appoint agents for COFINA and the Commonwealth for the purpose of determining "[w]hether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt (the 'Pledged Sales Taxes') are property of the Commonwealth or COFINA under applicable law." Commonwealth-COFINA Dispute Stipulation at ¶ 4.

**FIRST CAUSE OF ACTION**

**Declaratory Judgment**

**The COFINA Statutes Are Constitutional and Made the Stream of the Pledged Sales Tax and the Dedicated Sales Tax Fund the Property of COFINA**

62. Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-61 above as if fully set forth herein.

63. This dispute is immediate and real because the Commonwealth enacted the Compliance Law and has asserted claims against COFINA in order to appropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund.

64. There is an actual controversy between COFINA and the Commonwealth in that this matter is before the Court for the purpose of determining "[w]hether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly pledged by COFINA to secure debt (the 'Pledged Sales Taxes') are

property of the Commonwealth or COFINA under applicable law." Commonwealth-COFINA Dispute Stipulation at ¶ 4.

65.     As described above, the Commonwealth enacted Act 91, which imposed a new sales and use tax and mandated that a portion of the tax—the Pledged Sales Tax—be deposited in the Dedicated Sales Tax Fund.

66.     The Commonwealth also enacted Act 56, which amended Act 91, providing that the "[Dedicated Sales Tax Fund] and all the funds deposited therein on the effective date of this act and all the future funds that must be deposited in the [Dedicated Sales Tax Fund] pursuant to the provisions of this law are hereby transferred to, and shall be the property of COFINA." Act 56, § 3; P.R. Laws Ann. tit. 13, § 12.

67.     Act 56 further provides that the funds deposited in the Dedicated Sales Tax Fund "shall not be deposited in the Treasury of Puerto Rico, nor shall these constitute resources available to the Commonwealth of Puerto Rico, nor shall these be available for use by the Secretary of the Treasury of the Commonwealth of Puerto Rico." *Id.*

68.     In addition, the Commonwealth enacted Act 1, which reiterated that COFINA was "a corporate and political entity independent and separate from the Commonwealth," and that the Pledged Sales Tax "shall be directly deposited in the [Dedicated Sales Tax Fund] at the time of receipt and shall not be deposited in the Treasury of Puerto Rico, nor shall it constitute resources available to the Commonwealth . . ., nor shall it be available for use by the Secretary of the Treasury of the Commonwealth . . . ." Act 1; P.R. Laws Ann. tit. 13, § 11a-16.

69.     The Commonwealth further enacted Act 101, reaffirming that "the funds covered into [the Dedicated Sales Tax Fund] shall neither be deposited in the Treasury of Puerto Rico,

constitute resources available to [the Commonwealth], nor be available for use by the Secretary of the Treasury." Act 101; P.R. Laws Ann. tit. 13, § 11a-13.

70.     Acts 91, 56, 1, and 101 are constitutional under the Constitution of Puerto Rico. Contrary to the Commonwealth's assertions, those statutes do not violate Sections 2 or 7 of Article VI or any other provision of the Puerto Rico Constitution.  Nor do the Pledged Sales Tax or Dedicated Sales Tax Fund constitute available resources for purposes of Article VI, Section 8 of the Puerto Rico Constitution.

71.     Pursuant to the aforementioned statutes, under Puerto Rico law, the Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, and the Dedicated Sales Tax Fund, were transferred to COFINA and are the property of COFINA.  At a minimum, and in the alternative: (i) COFINA has a perfected and unavoidable lien in the stream of Pledged Sales Tax pursuant to applicable bankruptcy and non-bankruptcy law; (ii) there is an enforceable subordination agreement whereby the Commonwealth has agreed to subordinate any interest it may have in the stream of Pledged Sales Tax to the interest of COFINA; and/or (iii) the stream of Pledged Sales Tax is held in constructive trust for the benefit of COFINA, and has been so held since the creation of COFINA.

72.     Accordingly, Counterclaim Plaintiff seeks a declaration that: (i) the statutes creating COFINA and directing transfer of the Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA are constitutional under the Constitution of Puerto Rico; (ii) the Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, and the Dedicated Sales Tax Fund are the property of COFINA; and (iii) the Pledged Sales Tax and the Dedicated Sales Tax Fund are not "available resources" under the Constitution of Puerto Rico.  In the alternative, Counterclaim Plaintiff seeks a declaration that: (i) COFINA has a perfected and unavoidable lien

in the stream of Pledged Sales Tax pursuant to applicable bankruptcy and non-bankruptcy law; (ii) there is an enforceable subordination agreement whereby the Commonwealth agreed to subordinate any interest it may have in the stream of Pledged Sales Tax to COFINA's interest in the stream of Pledged Sales Tax; and/or (iii) the stream of Pledged Sales Tax is held in constructive trust for the benefit of COFINA, and has been so held since the creation of COFINA.

**SECOND CAUSE OF ACTION**

**Declaratory Judgment**

**Commonwealth Misappropriation of the Pledged Sales Tax and Dedicated Sales Tax Fund Would Violate the Constitutions of the United States and Puerto Rico**

73.      Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-72 above as if fully set forth herein.

74.      The Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, and the Dedicated Sales Tax Fund are the property of COFINA under applicable law.

75.      This dispute is immediate and real because the Commonwealth enacted the Compliance Law and has asserted claims against COFINA in order to appropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund belonging to COFINA.

76.      There is an actual controversy between COFINA and the Commonwealth regarding whether appropriation of the Pledged Sales Tax and/or the Dedicated Sales Tax Fund would violate the United States Constitution.

77.      The Takings Clause of the Fifth Amendment to the United States Constitution (the "**Takings Clause**") provides that "private property [shall not] be taken for public use, without just compensation." U.S. CONST. amend. V. The Takings Clause is applicable to the States and the Commonwealth by virtue of section 1 of the Fourteenth Amendment to the U.S. Constitution (the "**Due Process Clause**"). *Id.* at amend. XIV.

78. The Constitution of the Commonwealth of Puerto Rico similarly provides, in Article II, section 9, that "[p]rivate property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law" (the "**Puerto Rico Takings Clause**"). P.R. CONST. art. II, § 9.

79. COFINA has a property right in the Pledged Sales Tax and the Dedicated Sales Tax Fund.

80. COFINA's property right in the Pledged Sales Tax and the Dedicated Sales Tax Fund are property rights protected by the Takings Clause, the Due Process Clause, and the Puerto Rico Takings Clause. The Commonwealth, through the Compliance Law and this litigation, seeks to take those property rights away from COFINA without any compensation.

81. The Commonwealth's taking of this property without just compensation is unlawful and COFINA is therefore entitled to all appropriate remedies for that violation, including, without limitation, declaratory and injunctive relief along with damages.

82. Additionally, Article I, section 10, clause 1 of the United States Constitution (the "**Contracts Clause**") prohibits any State from "pass[ing] any . . . law impairing the obligation of contracts." The Contracts Clause applies to the Commonwealth of Puerto Rico.

83. Article II, section 7 of the Constitution of the Commonwealth of Puerto Rico also provides that "[n]o laws impairing the obligation of contracts shall be enacted" (the "**Puerto Rico Contracts Clause**"). P.R. CONST. art. II, § 7.

84. The Compliance Law and the Commonwealth's averments in this lawsuit seek to impair the contract between COFINA and the COFINA bondholders by interfering with COFINA's ability to make contractually-required payments to COFINA bondholders from the Pledged Sales Tax and the funds in the Dedicated Sales Tax Fund.

85. This substantial impairment of COFINA's and the COFINA Bondholders' contractual rights is unnecessary in light of the availability of more moderate courses of action and unreasonable in light of the surrounding circumstances. It is clear that there are numerous alternative ways in which the Commonwealth can allocate resources sufficient to make timely payment on its public debt.

86. For example, the Commonwealth could generate billions more in "available resources" through structural and budgetary reforms. The Commonwealth's Fiscal Year 2017 budget contemplates an increase of more than $500 million in non-debt service spending. On the other side of the ledger, the Commonwealth has refused to take appropriate measures to ensure that taxes sufficient to fund its spending are collected. For instance, a study performed by international accounting firm KPMG on behalf of the Puerto Rico Treasury Department concluded that Puerto Rico collects only 10.66% of its gross domestic product in income and consumption taxes—a figure that was exceedingly low in comparison to the countries KPMG selected as peer jurisdictions. *See* Commonwealth of P.R. Tax Reform Assessment Project, Unified Tax Code of Puerto Rico: Tax Policy Implementation Options Executive Summary 6–7 (Oct. 31, 2014).

87. Given all of these circumstances, the Compliance Law and the Commonwealth's averments in this lawsuit substantially, unreasonably, and unnecessarily impair the obligation of contracts, and accordingly violate the Contracts Clause and the Puerto Rico Contracts Clause.

88. Counterclaim Plaintiff seeks a declaration that the Commonwealth's misappropriation of the Pledged Sales Tax and/or the Dedicated Sales Tax Fund would constitute violations of the Constitutions of the United States and the Commonwealth of Puerto Rico.

### THIRD CAUSE OF ACTION
### Declaratory Judgment

## The Compliance Law Violates PROMESA

89.     Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-88 above as if fully set forth herein.

90.     The Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, and the Dedicated Sales Tax Fund are the property of COFINA under applicable law.

91.     This dispute is immediate and real because the Commonwealth enacted the Compliance Law in order to appropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund belonging to COFINA.

92.     PROMESA provides that a method of composition of indebtedness may not bind any creditor that does not consent to the composition.  PROMESA § 303(1) (codified at 48 U.S.C. § 2163(1)).

93.     PROMESA also provides that if any property of an instrumentality of the Commonwealth is transferred in violation of applicable law, the Commonwealth shall be liable for the value of such property.  PROMESA § 407(a) (codified at 48 U.S.C. § 2195(a)).

94.     As described above, the Commonwealth has passed the Compliance Law, which authorizes the Governor of Puerto Rico to, under certain circumstances, use the Pledged Sales Tax to cover deficiencies in the Commonwealth's cash flow or to comply with the Fiscal Plan. The Compliance Law calls for the Pledged Sales Tax to be transferred from the Dedicated Sales Tax Fund to the Commonwealth's general fund under the custody of the Secretary of Treasury.

95.     The Compliance Law constitutes a method of composition in violation of PROMESA § 303(1) in that it seeks to consolidate the Pledged Sales Tax and the Dedicated Sales Tax Fund belonging to COFINA with the Commonwealth's general fund, without the consent of COFINA.

96.     The Compliance Law also violates PROMESA § 407(a) in that it seeks to transfer the Pledged Sales Tax and the Dedicated Sales Tax Fund belonging to COFINA to the Commonwealth, without providing COFINA value for its property.

97.     Counterclaim Plaintiff seeks a declaration that the Commonwealth's misappropriation of the Pledged Sales Tax and/or the Dedicated Sales Tax Fund through the Compliance Law violates sections 303(1) and 407(a) of PROMESA.

**FOURTH CAUSE OF ACTION**

**Declaratory Judgment**

**Act 84 Violates PROMESA**

98.     Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-97 above as if fully set forth herein.

99.     When PROMESA was enacted, pursuant to Act 18, COFINA was entitled to receive 6% of SUT proceeds until it received the full Pledged Base Amount in a given year, and its right to receive SUT proceeds was senior to MAF's right to receive SUT proceeds. Under PROMESA, the Commonwealth is prohibited from altering COFINA's right to receive 6% of SUT proceeds or the priority between COFINA and MAF.

100.    This dispute is immediate and real because, after the enactment of PROMESA, the Commonwealth has taken steps, including through its enactment of Act 84, to reduce the amount of SUT proceeds COFINA receives from 6% to 5.5% and the priority between COFINA and MAF.

101.    There is an actual controversy between COFINA and the Commonwealth, because the Commonwealth has averred that, pursuant to Act 84, COFINA is only entitled to receive 5.5% of SUT proceeds until it receives the Pledged Base Amount, and COFINA's right to receive SUT proceeds is no longer senior to MAF's right to receive SUT proceeds.

102.    Plaintiff seeks a declaration that: (i) the reduction of the amount of SUT proceeds COFINA receives from 6% to 5.5%, implemented by Act 84, is void and invalid because it violates PROMESA; and (ii) COFINA is entitled to 6% of the SUT proceeds collected by the Commonwealth until the Pledged Base Amount is reached in a given year.

**FIFTH CAUSE OF ACTION**
**Tortious Interference With Contract**

103.    Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-102 above as if fully set forth herein.

104.    The Resolution constitutes a contract among COFINA, BNYM, the COFINA bondholders, and certain other beneficiaries.

105.    The Commonwealth knew about the existence of the Resolution because, *inter alia*, (i) the Legislative Assembly passed the enabling legislation pursuant to which the Resolution was adopted; (ii) three Secretaries of Justice issued a total of six legal opinions in connection with the issuances of COFINA Bonds, which were all made pursuant to the Resolution; and (iii) the Commonwealth represented that it would not: (a) "limit or restrict the rights or powers of the appropriate officers of the Commonwealth to impose, maintain, charge or collect the taxes and other receipts constituting amounts to be deposited in the Dedicated Sales Tax Fund," or (b) "limit or restrict the rights" granted to COFINA under its enabling legislation or the rights of COFINA to "meet its obligations" to its bondholders until the COFINA Bonds and interest thereon are paid in full.

106.    The Resolution authorized COFINA to issue bonds secured by the Pledged Sales Tax and the Dedicated Sales Tax Fund.

107.    The Commonwealth intentionally interfered with the Resolution, as well as the rights and obligations of COFINA under the Resolution, with fault by, among other things,

enacting the Compliance Law and seeking to appropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund, including in this action.

108.    As a result of the Commonwealth's tortious acts, COFINA has suffered, and will continue to suffer, damages in the form of the lost Pledged Sales Tax and Dedicated Sales Tax Fund with which it must satisfy its obligations to the COFINA bondholders.

109.    Counterclaim Plaintiff seeks this Court to impose a constructive trust in COFINA's favor over the Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, and the Dedicated Sales Tax Fund.

## SIXTH CAUSE OF ACTION
### Fraud

110.    Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-109 above as if fully set forth herein.

111.    COFINA agreed to issue COFINA Bonds in reliance on numerous Commonwealth representations, including those referenced above, that the Commonwealth transferred the right to receive the Pledged Sales Tax and the Dedicated Sales Tax Fund, the Commonwealth would not interfere with COFINA's right to meet its obligations to the COFINA bondholders, and the Pledged Sales Tax and the Dedicated Sales Tax Fund would belong solely to COFINA, not constitute "available resources" under the Constitution of the Commonwealth of Puerto Rico, and not be used by the Commonwealth.

112.    To the extent the Commonwealth intentionally structured COFINA and the transfer of the Pledged Sales Tax to COFINA in order to avoid the limits in the Constitution of the Commonwealth, as the Commonwealth now avers through the Commonwealth Agent in this litigation (Compl. ¶¶ 140-57), then the Commonwealth's representations to COFINA (as well as

to investors and monoline insurers) were knowingly false and were made with the intent to deceive COFINA and the purchasers of COFINA Bonds.

113.    The Commonwealth intended to defraud COFINA, in that it intended to induce, and did induce, COFINA to issue COFINA Bonds and commit to pay the extraconstitutional debt of the Commonwealth based on the foregoing representations.

114.    COFINA's reliance on the Commonwealth's fraudulent misrepresentations was reasonable and foreseeable. There was no reason for COFINA to suspect that the Commonwealth would not seek to uphold its own legislation and subsequent statements affirming the validity of that legislation, or that the Commonwealth intentionally structured COFINA and the enabling legislation to avoid the limits of the Constitution of the Commonwealth.

115.    As a result of the Commonwealth's fraud, COFINA has suffered, and will continue to suffer, damages in the form of the lost Pledged Sales Tax and Dedicated Sales Tax Fund with which it must satisfy its obligations to the COFINA bondholders.

116.    Counterclaim Plaintiff seeks this Court to impose a constructive trust in COFINA's favor over the Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, and the Dedicated Sales Tax Fund.

## SEVENTH CAUSE OF ACTION
### Permanent Injunction

117.    Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-116 above as if fully set forth herein.

118.    As established above, the Commonwealth's confiscation of the Pledged Sales Tax and the funds in the Dedicated Sales Tax Fund would violate the United States Constitution.

119.  COFINA seeks an order permanently enjoining the Commonwealth from:
(i) diverting or transferring the Pledged Sales Tax proceeds or the funds in the Dedicated Sales
Tax Fund away from COFINA; (ii) designating the Pledged Sales Tax or the funds in the
Dedicated Sales Tax Fund as "available resources" under the Constitution of Puerto Rico; (iii)
taking any action to "breach, revoke, and/or reject" the transfer of the Pledged Sales Tax or the
Dedicated Sales Tax Fund to COFINA; (iv) taking any action to interfere with or attempt to
interfere with COFINA's rights to the Pledged Sales Tax or the funds in the Dedicated Sales Tax
Fund; and (v) taking any action to interfere with or attempt to interfere with COFINA's rights
and obligations under the Resolution.

120.  If the Commonwealth succeeds in its effort to confiscate the Pledged Sales Tax
and the funds in the Dedicated Sales Tax Fund to pay its creditors, COFINA will lack an
adequate remedy at law because the Commonwealth is insolvent.

121.  The injunctive relief requested is therefore necessary and appropriate.

### EIGHTH CAUSE OF ACTION

### Declaratory Judgment

### GO Bonds, PBA Bonds and Other Debt Issued in Violation of the Debt Limit Set Forth in the Constitution of Puerto Rico Are Not Entitled to Priority Under the Constitution

122.  Counterclaim Plaintiff re-alleges and incorporates paragraphs 1-121 above as if
fully set forth herein.

123.  Article VI § 2 of the Puerto Rico Constitution provides:

> [N]o direct obligations of the Commonwealth for money borrowed
> directly by the Commonwealth evidenced by bonds or notes for the
> payment of which the ***full faith credit and taxing power of the
> Commonwealth shall be pledged*** shall be issued by the
> Commonwealth if the total of (i) the amount of principal of and
> interest on such bonds and notes, together with the amount of
> principal of and interest on all such bonds and notes theretofore
> issued by the Commonwealth and then outstanding, payable in any

fiscal year and (ii) any amounts paid by the Commonwealth in the
fiscal year next preceding the then current fiscal year for principal
or interest on account of any outstanding obligations evidenced by
bonds or notes guaranteed by the Commonwealth, shall exceed
15% of the average of the total amount of the annual revenues
raised under the provisions of Commonwealth legislation and
covered into the Treasury of Puerto Rico in the two fiscal years
next preceding the then current fiscal year.

P.R. CONST. art. VI § 2 (emphasis added).

124.    Bonds issued by COFINA are not subject to the foregoing Constitutional Debt
Limit because, among other reasons, the Commonwealth did not pledge the full faith credit and
taxing power of the Commonwealth to their repayment.  However, GO Bonds and bonds issued
by the Public Buildings Authority (the "**PBA Bonds**"), which is an instrumentality of the
Commonwealth, are subject to the Constitutional Debt Limit.

125.    The Commonwealth breached the Constitutional Debt Limit not later than
commencing March 2011 by issuing billions of dollars of GO Bonds and PBA Bonds in excess
of the Constitutional Debt Limit.  Those GO Bonds and PBA Bonds, in an amount to be
determined, are subordinated unsecured debt unsupported by the full faith credit and taxing
power of the Commonwealth because they were issued in violation of the Puerto Rico
Constitution.  The COFINA Agent is investigating whether other bonds were issued in excess of
the Constitutional Debt Limit.

126.    Holders of debt issued in violation of the Puerto Rico Constitution do not have
any rightful claim to have interest on those bonds paid as a first priority from the available
resources of the Commonwealth pursuant to Article VI, Section 8 of the Puerto Rico
Constitution.  Those bondholders therefore may not invade the Pledged Sales Tax to satisfy their
interest obligations even if funds pledged to COFINA from the Pledged Sales Tax are considered

available resources, contrary to Commonwealth law, opinions from multiple Puerto Rico Secretaries of Justice, and the Commonwealth's representations to investors.

**PRAYER FOR RELIEF**

WHEREFORE, Counterclaim Plaintiff respectfully requests that the Court enter a judgment in its favor and against the Commonwealth as follows:

(A)     Declaring that:

       (i)       (a) the transfer of the Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA was constitutional under the Constitution of Puerto Rico and (b) the Pledged Sales Tax, including all Pledged Sales Tax revenue collected in the future, and the Dedicated Sales Tax Fund are the property of COFINA under applicable law, and are not "available resources" under the Constitution of Puerto Rico; or, in the alternative,

       (ii)      (a) COFINA has a perfected and unavoidable lien in the stream of Pledged Sales Tax and the Dedicated Sales Tax Fund pursuant to applicable bankruptcy and non-bankruptcy law, (b) there is an enforceable subordination agreement whereby the Commonwealth agreed to subordinate any interest it may have in the stream of Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA's interest in the stream of Pledged Sales Tax and the Dedicated Sales Tax Fund, and/or (c) the stream of Pledged Sales Tax is held in constructive trust for the benefit of COFINA, and has been so held since the creation of COFINA.

(B)     Declaring that:

       (i)       the Commonwealth's appropriation of the Pledged Sales Tax and/or the Dedicated Sales Tax Fund would constitute violations of the Constitutions of the United States and the Commonwealth of Puerto Rico;

       (ii)      the Commonwealth's appropriation of the Pledged Sales Tax and/or the Dedicated Sales Tax Fund through the Compliance Law violates PROMESA;

       (iii)     holders of GO Bonds and PBA Bonds and any other debt issued in violation of the Puerto Rico Constitution may not invade the Pledged Sales Tax or the Dedicated Sales Tax Fund to satisfy their interest obligations;

       (iv)     the reduction of the amount of SUT proceeds COFINA receives from 6% to 5.5%, implemented by Act 84, is void and invalid; and

       (v)      COFINA is entitled to 6% of the SUT proceeds until the Pledged Base

Amount is reached in a given year.

(C)     Granting a constructive trust in COFINA's favor over the Pledged Sales Tax, including all Pledged Sales Tax revenue collected to date and to be collected in the future, and the Dedicated Sales Tax Fund, and ruling that such property has been so held since the creation of COFINA.

(D)     Permanently enjoining the Commonwealth from:

 (i) diverting or transferring the Pledged Sales Tax proceeds, including all Pledged Sales Tax proceeds collected in the future, or the funds in the Dedicated Sales Tax Fund away from COFINA;

 (ii) designating the Pledged Sales Tax proceeds, including all Pledged Sales Tax proceeds collected in the future, or the Dedicated Sales Tax Fund as "available resources" under the Constitution of Puerto Rico;

 (iii) taking any action to "breach, revoke, and/or reject" the transfer of the Pledged Sales Tax, including all Pledged Sales Tax collected in the future, or the Dedicated Sales Tax Fund to COFINA;

 (iv) taking any action to interfere with or attempt to interfere with COFINA's rights to the Pledged Sales Tax, including all Pledged Sales Tax collected in the future, or the Dedicated Sales Tax Fund; and

 (v) taking any action to interfere with or attempt to interfere with COFINA's rights and obligations under the Resolution.

(E)     Dismissing COFINA's Title III case.

(F)     Granting to COFINA such other and further relief as this Court may deem just and proper.

# ANSWER

## NATURE OF PROCEEDING

1.      Answering Paragraph 1 of the Complaint, the COFINA Agent admits that this adversary proceeding is commenced to resolve the Commonwealth-COFINA Dispute.  The COFINA Agent further admits that, as defined in the Commonwealth-COFINA Dispute Stipulation, the issue in dispute is "whether, considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use taxes [the "SUT"] purportedly pledged by COFINA to secure debt… are property of the Commonwealth or COFINA under applicable law."  The allegations of Paragraph 1 are otherwise denied.

2.      Answering Paragraph 2 of the Complaint, the COFINA Agent denies the allegations contained therein.

3.      Answering Paragraph 3 of the Complaint, the COFINA Agent denies the allegations contained therein.

## PARTIES

4.      Answering Paragraph 4 of the Complaint, the COFINA Agent admits the allegations contained therein.

5.      Answering Paragraph 5 of the Complaint, the COFINA Agent admits that COFINA is a Debtor in these Title III cases and that COFINA's Title III case was commenced by the filing of a petition on May 5, 2017.  The allegations of Paragraph 5 are otherwise denied.

6.      Answering Paragraph 6 of the Complaint, the COFINA Agent denies the allegations contained therein.

7.      Answering Paragraph 7 of the Complaint, the COFINA Agent denies the allegations contained therein.

## JURISDICTION AND VENUE

8.      Answering Paragraph 8 of the Complaint, the COFINA Agent admits the allegations contained therein.

9.      Answering Paragraph 9 of the Complaint, the COFINA Agent admits the allegations contained therein.

10.     Answering Paragraph 10 of the Complaint, the COFINA Agent admits the allegations contained therein.

## BACKGROUND

### I.      Overview of COFINA Structure

11.     Answering Paragraph 11 of the Complaint, the COFINA Agent denies the allegations contained therein.

12.     Answering Paragraph 12 of the Complaint, the COFINA Agent admits that COFINA is a public corporation that is independent from the Commonwealth.  The COFINA Agent further admits that the directors of COFINA are all directors of the GDB.  The allegations in Paragraph 12 are otherwise denied.

13.     Answering Paragraph 13 of the Complaint, the COFINA Agent denies the allegations contained therein.

14.     Answering Paragraph 14 of the Complaint, the COFINA Agent admits that the SUT revenue deposited in the Dedicated Sales Tax Fund are never deposited into the Commonwealth treasury.  The allegations in Paragraph 14 are otherwise denied.

15.     Answering Paragraph 15 of the Complaint, the COFINA Agent denies the allegations contained therein.

## II.    Sales and Use Tax

16.    Answering Paragraph 16 of the Complaint, the COFINA Agent admits the allegations contained therein.

17.    Answering Paragraph 17 of the Complaint, the COFINA Agent denies the allegations contained therein.

18.    Answering Paragraph 18 of the Complaint, the COFINA Agent admits that Act No. 1 of January 31, 2011 repealed the Puerto Rico Internal Revenue Code of 1994 (as amended) and replaced it with the Puerto Rico Internal Revenue Code of 2011.   The allegations of Paragraph 18 are otherwise denied.

19.    Answering Paragraph 19 of the Complaint, the COFINA Agent admits the allegations contained therein.

20.    Answering Paragraph 20 of the Complaint, the COFINA Agent denies the allegations contained therein.

21.    Answering Paragraph 21 of the Complaint, the COFINA Agent admits the allegations contained therein.

22.    Answering Paragraph 22 of the Complaint, the COFINA Agent denies the allegations contained therein.

23.    Answering Paragraph 23 of the Complaint, the COFINA Agent denies the allegations contained therein.

## III.   COFINA Enabling Legislation (Act 91 and its Amendments)

24.    Answering Paragraph 24 of the Complaint, the COFINA Agent admits the allegations contained therein.

25.     Answering Paragraph 25 of the Complaint, the COFINA Agent admits the allegations contained therein.

26.     Answering Paragraph 26 of the Complaint, the COFINA Agent denies the allegations contained therein.

27.     Answering Paragraph 27 of the Complaint, the COFINA Agent admits the allegations contained in subsection (i) therein.  The remaining allegations contained in Paragraph 27 are denied.

28.     Answering Paragraph 28 of the Complaint, the COFINA Agent admits the allegations contained therein.

29.     Answering Paragraph 29 of the Complaint, the COFINA Agent admits the allegations contained therein.

30.     Answering Paragraph 30 of the Complaint, the COFINA Agent admits the allegations contained therein.

31.     Answering Paragraph 31 of the Complaint, the COFINA Agent admits the allegations contained therein.

32.     Answering Paragraph 32 of the Complaint, the COFINA Agent admits the allegations contained therein.

33.     Answering Paragraph 33 of the Complaint, the COFINA Agent admits the allegations contained therein.

34.     Answering Paragraph 34 of the Complaint, the COFINA Agent denies the allegations contained therein.

IV.   **Overview of COFINA Bond Offerings**

35.      Answering Paragraph 35 of the Complaint, the COFINA Agent admits the allegations contained therein.

36.      Answering Paragraph 36 of the Complaint, the COFINA Agent denies the allegations contained therein.

37.      Answering Paragraph 37 of the Complaint, the COFINA Agent admits the allegations contained therein.

38.      Answering Paragraph 38 of the Complaint, the COFINA Agent denies the allegations contained therein.

39.      Answering Paragraph 39 of the Complaint, the COFINA Agent admits the allegations contained therein.

V.   **The SUT "Flow of Funds"**

40.      Answering Paragraph 40 of the Complaint, the COFINA Agent admits the allegations contained in subsection (i) therein.  The remaining allegations contained in Paragraph 40 are denied.

**FIRST CAUSE OF ACTION**

**28 U.S.C. § 2201(a)**
**(Declaration that Act 91 Did Not Transfer Present**
**Ownership of Future SUT Revenues to COFINA)**

41.      Answering Paragraph 41 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 40 of the Complaint as fully set forth herein.

42.      Answering Paragraph 42 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 42 of the Complaint are otherwise denied.

43.    Answering Paragraph 43 of the Complaint, the COFINA Agent denies the allegations contained therein.

44.    Answering Paragraph 44 of the Complaint, the COFINA Agent denies the allegations contained therein.

45.    Answering Paragraph 45 of the Complaint, the COFINA Agent denies the allegations contained therein.

46.    Answering Paragraph 46 of the Complaint, the COFINA Agent denies the allegations contained therein.

47.    Answering Paragraph 47 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 47 of the Complaint are otherwise denied.

48.    Answering Paragraph 48 of the Complaint, the COFINA Agent denies the allegations contained therein.

49.    Answering Paragraph 49 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 49 of the Complaint are otherwise denied.

50.    Answering Paragraph 50 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 50 of the Complaint are otherwise denied.

51.    Answering Paragraph 51 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 51 of the Complaint are otherwise denied.

52.     Answering Paragraph 52 of the Complaint, the COFINA Agent denies the allegations contained therein.

53.     Answering Paragraph 53 of the Complaint, the COFINA Agent denies the allegations contained therein.

54.     Answering Paragraph 54 of the Complaint, the COFINA Agent denies the allegations contained therein.

55.     Answering Paragraph 55 of the Complaint, the COFINA Agent denies the allegations contained therein.

56.     Answering Paragraph 56 of the Complaint, the COFINA Agent denies the allegations contained therein.

57.     Answering Paragraph 57 of the Complaint, the COFINA Agent refers to the referenced documents for the complete contents thereof.  The allegations in Paragraph 57 of the Complaint are otherwise denied.

58.     Answering Paragraph 58 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 58 of the Complaint are otherwise denied.

59.     Answering Paragraph 59 of the Complaint, the COFINA Agent denies the allegations contained therein.

60.     The allegations of Paragraph 60 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 60.

## SECOND CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### (Declaration that Act 91 Did Not Assign to COFINA Any
### "Right to Receive" Future SUT Revenues)

61. Answering Paragraph 61 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 60 of the Complaint as fully set forth herein.

62. Answering Paragraph 62 of the Complaint, the COFINA Agent refers to the referenced documents for the complete contents thereof. The allegations in Paragraph 62 of the Complaint are otherwise denied.

63. Answering Paragraph 63 of the Complaint, the COFINA Agent refers to the referenced documents for the complete contents thereof. The allegations in Paragraph 63 of the Complaint are otherwise denied.

64. Answering Paragraph 64 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof. The allegations in Paragraph 64 of the Complaint are otherwise denied.

65. Answering Paragraph 65 of the Complaint, the COFINA Agent denies the allegations contained therein.

66. Answering Paragraph 66 of the Complaint, the COFINA Agent denies the allegations contained therein.

67. Answering Paragraph 67 of the Complaint, the COFINA Agent denies the allegations contained therein.

68. Answering Paragraph 68 of the Complaint, the COFINA Agent denies the allegations contained therein.

69.     Answering Paragraph 69 of the Complaint, the COFINA Agent denies the allegations contained therein.

70.     The allegations of Paragraph 70 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 70.

### THIRD CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### (Declaration that Purported Transfer of "Future Funds" to COFINA Was, at Most, Unsecured Promise that SUT Revenues Would be Transferred to COFINA in the Future)

71.     Answering Paragraph 71 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 70 of the Complaint as fully set forth herein.

72.     Answering Paragraph 72 of the Complaint, the COFINA Agent denies the allegations contained therein.

73.     Answering Paragraph 73 of the Complaint, the COFINA Agent denies the allegations contained therein.

74.     Answering Paragraph 74 of the Complaint, the COFINA Agent denies the allegations contained therein.

75.     The allegations of Paragraph 75 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 75.

## FOURTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### (Declaration that COFINA Has No Enforceable
### Security Interest in Future SUT Revenues)

76.     Answering Paragraph 76 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 75 of the Complaint as fully set forth herein.

77.     Answering Paragraph 77 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 77 of the Complaint are otherwise denied.

78.     Answering Paragraph 78 of the Complaint, the COFINA Agent denies the allegations contained therein.

79.     Answering Paragraph 79 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 79 of the Complaint are otherwise denied.

80.     Answering Paragraph 80 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 80 of the Complaint are otherwise denied.

81.     Answering Paragraph 81 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 81 of the Complaint are otherwise denied.

82.     Answering Paragraph 82 of the Complaint, the COFINA Agent denies the allegations contained therein.

83. Answering Paragraph 83 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof. The allegations in Paragraph 83 of the Complaint are otherwise denied.

84. Answering Paragraph 84 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof. The allegations in Paragraph 84 of the Complaint are otherwise denied.

85. Answering Paragraph 85 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof. The allegations in Paragraph 85 of the Complaint are otherwise denied.

86. Answering Paragraph 86 of the Complaint, the COFINA Agent denies the allegations contained therein.

87. Answering Paragraph 87 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof. The allegations in Paragraph 87 of the Complaint are otherwise denied.

88. The allegations of Paragraph 88 state a legal conclusion to which no answer is required. To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 88.

## FIFTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Sections 544(a)(1) and 547(b)
### (Declaration that Any Unperfected Security Interest of COFINA in SUT Revenues is Avoidable; Avoidance of Any Such Interest)

89. Answering Paragraph 89 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 88 of the Complaint as fully set forth herein.

90.     Answering Paragraph 90 of the Complaint, the COFINA Agent denies the allegations contained therein.

91.     Answering Paragraph 91 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 91 of the Complaint are otherwise denied.

92.     Answering Paragraph 92 of the Complaint, the COFINA Agent denies the allegations contained therein.

93.     Answering Paragraph 93 of the Complaint, the COFINA Agent denies the allegations contained therein.

94.     Answering Paragraph 94 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.

95.     Answering Paragraph 95 of the Complaint, the COFINA Agent admits the allegations contained therein.

96.     Answering Paragraph 96 of the Complaint, the COFINA Agent denies the allegations contained therein.

97.     Answering Paragraph 97 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

98.     Answering Paragraph 98 of the Complaint, the COFINA Agent denies the allegations contained therein.

99.     Answering Paragraph 99 of the Complaint, the COFINA Agent denies the allegations contained therein.

100.    Answering Paragraph 100 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

101.    Answering Paragraph 101 of the Complaint, the COFINA Agent denies the allegations contained therein.

102.    The allegations of Paragraph 102 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 102.

## SIXTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Section 548(a)(1)(B)
### (Declaration that Any Interest of COFINA in SUT Revenues is Avoidable as Fraudulent Transfer; Avoidance of Any Such Interest)

103.    Answering Paragraph 103 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 102 of the Complaint as fully set forth herein.

104.    The allegations of Paragraph 104 state legal conclusions to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 104.

## SEVENTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Section 549
### (Declaration that Any Post-Petition Transfer to COFINA of SUT Revenues is Avoidable Post-Petition Transaction; Avoidance of Such Transactions)

105.    Answering Paragraph 105 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 104 of the Complaint as fully set forth herein.

106.    Answering Paragraph 106 of the Complaint, the COFINA Agent denies the allegations contained therein.

107.    The allegations of Paragraph 107 state legal conclusions to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 107.

## EIGHTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### UCC Section 9-317(a)(2)
### (Declaration that Any Security Interest of COFINA in SUT Revenues is Subordinate to Rights of Oversight Board as Trustee)

108.    Answering Paragraph 108 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 107 of the Complaint as fully set forth herein.

109.    Answering Paragraph 109 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

110.    Answering Paragraph 110 of the Complaint, the COFINA Agent admits the allegations contained therein.

111.    Answering Paragraph 111 of the Complaint, the COFINA Agent denies the allegations contained therein.

112.    Answering Paragraph 112 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

113.    The allegations of Paragraph 113 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 113.

## NINTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Section 552(a)
### (Declaration that Any Security Interest Was Cut Off by Commencement of
### Commonwealth's Title III Case)

114.    Answering Paragraph 114 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 113 of the Complaint as fully set forth herein.

115.    Answering Paragraph 115 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

116.    Answering Paragraph 116 of the Complaint, the COFINA Agent denies the allegations contained therein.

117.    Answering Paragraph 117 of the Complaint, the COFINA Agent denies the allegations contained therein.

118.    The allegations of Paragraph 118 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 118.

## TENTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Sections 544(a)(1) and 547(b)
### (Declaration that Any Non-UCC Transfer of Post-Petition
### SUT Revenues is Avoidance; Avoidance of Any Such Transfer)

119.    Answering Paragraph 119 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 118 of the Complaint as fully set forth herein.

120.    Answering Paragraph 120 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 120 of the Complaint are otherwise denied.

121.     Answering Paragraph 121 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 121 of the Complaint are otherwise denied.

122.     Answering Paragraph 122 of the Complaint, the COFINA Agent denies the allegations contained therein.

123.     Answering Paragraph 123 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

124.     Answering Paragraph 124 of the Complaint, the COFINA Agent admits the allegations contained therein.

125.     Answering Paragraph 125 of the Complaint, the COFINA Agent denies the allegations contained therein.

126.     Answering Paragraph 126 of the Complaint, the COFINA Agent denies the allegations contained therein.

127.     Answering Paragraph 127 of the Complaint, the COFINA Agent denies the allegations contained therein.

128.     Answering Paragraph 128 of the Complaint, the COFINA Agent denies the allegations contained therein.

129.     Answering Paragraph 129 of the Complaint, the COFINA Agent denies the allegations contained therein.

130.     The allegations of Paragraph 130 state legal conclusions to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 130.

## ELEVENTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### Bankruptcy Code Section 362(a)
### (Declaration that Post-Petition Transfer of SUT Revenues
### to Non-Commonwealth Entities Violates Automatic Stay)

131.     Answering Paragraph 131 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 130 of the Complaint as fully set forth herein.

132.     Answering Paragraph 132 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 132 of the Complaint are otherwise denied.

133.     Answering Paragraph 133 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 133 of the Complaint are otherwise denied.

134.     Answering Paragraph 134 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 134 of the Complaint are otherwise denied.

135.     Answering Paragraph 135 of the Complaint, the COFINA Agent denies the allegations contained therein.

136.     Answering Paragraph 136 of the Complaint, the COFINA Agent denies the allegations contained therein.

137.     The allegations of Paragraph 137 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 137.

## TWELFTH CAUSE OF ACTION

### 28 U.S.C. § 2201(a)
### (Declaration that Act 91 is Unconstitutional Because Substantial Result of COFINA Structure was Evasion of Constitutional Debt Limits and Constitutional Debt Priority)

138.   Answering Paragraph 138 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 137 of the Complaint as fully set forth herein.

139.   Answering Paragraph 139 of the Complaint, the COFINA Agent denies the allegations contained therein.

140.   Answering Paragraph 140 of the Complaint, the COFINA Agent denies the allegations contained therein.

### Evasion of Constitutional Debt Limits

141.   Answering Paragraph 141 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 141 of the Complaint are otherwise denied.

142.   Answering Paragraph 142 of the Complaint, the COFINA Agent denies the allegations contained therein.

143.   Answering Paragraph 143 of the Complaint, the COFINA Agent denies the allegations contained therein.

144.   The allegations of Paragraph 144 state legal conclusions to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 144.

145.   Answering Paragraph 145 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 145 of the Complaint are otherwise denied.

**Evasion of Constitutional Debt Priority**

146.    Answering Paragraph 146 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 146 of the Complaint are otherwise denied.

147.    Answering Paragraph 147 of the Complaint, the COFINA Agent denies the allegations contained therein.

148.    Answering Paragraph 148 of the Complaint, the COFINA Agent denies the allegations contained therein.

**Unconstitutionality of COFINA Structure**

149.    The allegations of Paragraph 149 state legal conclusions to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 149.

150.    Answering Paragraph 150 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

151.    Answering Paragraph 151 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

152.    Answering Paragraph 152 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

153.    Answering Paragraph 153 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

154.    Answering Paragraph 154 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

155.     Answering Paragraph 155 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.

156.     Answering Paragraph 156 of the Complaint, the COFINA Agent denies the allegations contained therein.

157.     The allegations of Paragraph 157 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 157.

### THIRTEENTH CAUSE OF ACTION

#### 28 U.S.C. § 2201(a)
#### (Declaration that COFINA Structure is Unconstitutional Because Act 91 was Enacted and/or Amended in Violation of Constitutional Balanced Budget Clause)

158.     Answering Paragraph 158 of the Complaint, the COFINA Agent repeats and realleges its answers to Paragraphs 1 through 157 of the Complaint as fully set forth herein.

159.     Answering Paragraph 159 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 159 of the Complaint are otherwise denied.

160.     Answering Paragraph 160 of the Complaint, the COFINA Agent refers to the referenced document from which the text was quoted for the complete contents thereof.  The allegations in Paragraph 160 of the Complaint are otherwise denied.

161.     Answering Paragraph 161 of the Complaint, the COFINA Agent denies the allegations contained therein.

162.     Answering Paragraph 162 of the Complaint, the COFINA Agent admits the allegations contained therein.

163.    Answering Paragraph 163 of the Complaint, the COFINA Agent admits the allegations contained therein.

164.    Answering Paragraph 164 of the Complaint, the COFINA Agent asserts that it presently has insufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in Paragraph 164 of the Complaint and on that basis denies the allegations contained therein.

165.    Answering Paragraph 165 of the Complaint, the COFINA Agent asserts that it presently has insufficient knowledge or information upon which to form a belief as to the truth of the allegations contained in Paragraph 165 of the Complaint and on that basis denies the allegations contained therein.

166.    Answering Paragraph 166 of the Complaint, the COFINA Agent denies the allegations contained therein.

167.    Answering Paragraph 167 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 167 of the Complaint are otherwise denied.

168.    Answering Paragraph 168 of the Complaint, the COFINA Agent refers to the referenced document for the complete contents thereof.  The allegations in Paragraph 168 of the Complaint are otherwise denied.

169.    The allegations of Paragraph 169 state legal conclusions to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 169.

170.    Answering Paragraph 170 of the Complaint, the COFINA Agent denies the allegations contained therein.

171.    Answering Paragraph 171 of the Complaint, the COFINA Agent denies the allegations contained therein.

172.    Answering Paragraph 172 of the Complaint, the COFINA Agent admits that COFINA was created to finance payment of the Commonwealth's extraconstitutional debt.  The allegations in Paragraph 172 of the Complaint are otherwise denied.

173.    Answering Paragraph 173 of the Complaint, the COFINA Agent admits that Act 91 was amended in 2009.  The allegations in Paragraph 173 of the Complaint are otherwise denied.

174.    The allegations of Paragraph 174 state a legal conclusion to which no answer is required.  To the extent that an answer is required, the COFINA Agent denies the allegations contained in Paragraph 174.

## PRAYER FOR RELIEF

The allegations in Plaintiff's "Prayer for Relief" contain legal conclusions to which no answer is required.  To the extent that a response is required, the COFINA Agent denies all allegations contained in paragraphs A through O of Plaintiff's "Prayer for Relief."

## DEFENSES

The COFINA Agent asserts the following defenses to the Complaint, reserving the right to timely raise such additional defenses as may be appropriate in light of the developments in this action.

## FIRST DEFENSE
### (Estoppel)

The doctrine of estoppel bars claims by the Commonwealth to appropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund or otherwise interfere with COFINA's rights with respect to the Pledged Sales Tax and the Dedicated Sales Tax Fund. The Commonwealth has represented to COFINA and to others on several occasions that the Pledged Sales Tax and the Dedicated Sales Tax Fund were transferred to COFINA, are the exclusive property of COFINA, and are not subject to use by the Commonwealth. COFINA reasonably relied on the Commonwealth's representations in issuing the COFINA Bonds and transferring the proceeds from the Bonds to the Commonwealth, and the Commonwealth had reason to believe that COFINA would rely on its representations. The Commonwealth is estopped from now taking a contrary position.

## SECOND DEFENSE
### (Laches)

The doctrine of laches bars claims by the Commonwealth to appropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund or otherwise interfere with COFINA's rights with respect to the Pledged Sales Tax and the Dedicated Sales Tax Fund. The Commonwealth unreasonably delayed in claiming rights to the Pledged Sales Tax and the Dedicated Sales Tax Fund, making such claims for the first time a decade after transferring the Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA. Allowing the Commonwealth to appropriate the

funds would prejudice COFINA and its bondholders, both of whom issued and purchased, respectively, COFINA Bonds based on the Commonwealth's representations.

### THIRD DEFENSE
### (Actos Propios)

The doctrine of *actos propios* bars claims by the Commonwealth to appropriate the Pledged Sales Tax and the Dedicated Sales Tax Fund or otherwise interfere with COFINA's rights with respect to the Pledged Sales Tax and the Dedicated Sales Tax Fund. The Commonwealth has represented to COFINA and to others on several occasions that the Pledged Sales Tax and the Dedicated Sales Tax Fund were transferred to COFINA, the exclusive property of COFINA, and not subject to use by the Commonwealth. COFINA agreed to issue the COFINA Bonds in reliance on the Commonwealth's representations, which the Commonwealth now contends were false. COFINA's reliance on the statements by the Commonwealth was in good faith and COFINA would be prejudiced if the Commonwealth is permitted to confiscate or otherwise interfere with COFINA's rights in the Pledged Sales Tax and the Dedicated Sales Tax Fund.

### FOURTH DEFENSE
### (Abstention)

Pursuant to the *Pullman* abstention doctrine, this Court may not declare a Puerto Rico law to be unconstitutional absent a determination by the Justices of the Supreme Court of Puerto Rico. To the extent that the Commonwealth Agent seeks a declaration that the laws governing COFINA violate the Constitution of Puerto Rico, the Commonwealth Agent should have asserted such a claim in a Commonwealth of Puerto Rico court. The Commonwealth Agent's claims concerning the constitutionality of the laws governing COFINA should be dismissed. The COFINA Agent hereby reserves its right to move for certification to the Supreme Court of

Puerto Rico with regard to questions of Puerto Rico state law including, among other things, the constitutionality of COFINA.

## FIFTH DEFENSE
### (Failure to State a Claim)

The Commonwealth Agent fails to state a claim upon which relief can be granted.

## SIXTH DEFENSE
### (Ratification)

The Commonwealth has represented to COFINA and to others on several occasions that the Pledged Sales Tax and the Dedicated Sales Tax Fund were transferred to and are the exclusive property of COFINA, and could not be used by the Commonwealth. COFINA issued the COFINA Bonds in reliance on those and other representations, and COFINA made statements to the purchasers of the COFINA Bonds regarding COFINA's rights in the Pledged Sales Tax and the Dedicated Sales Tax Fund. The Commonwealth ratified COFINA's statements and actions for a decade, never challenging COFINA's rights in the Pledged Sales Tax and the Dedicated Sales Tax Fund.

## SEVENTH DEFENSE
### (Contrary to Public Policy)

The Commonwealth seeks to confiscate the Pledged Sales Tax and the funds in the Dedicated Sales Tax Fund from COFINA for its own use. This relief would be contrary to public policy, because it would undermine investor confidence, call into question the integrity of the tax-backed securitization model on which many states and municipalities rely, and seriously jeopardize the ability of the Commonwealth, states, and municipalities to raise capital quickly and inexpensively through a tax-backed securitization plan.

## EIGHTH DEFENSE
### (Unjust Enrichment)

The Commonwealth created COFINA and transferred the Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA in exchange for COFINA's commitment to issue COFINA Bonds and use the proceeds from the bonds to pay the Commonwealth's extraconstitutional debt and for other specified uses. Having reaped billions of dollars from COFINA Bonds, the Commonwealth would be unjustly enriched if it were permitted to confiscate the Pledged Sales Tax and the Dedicated Sales Tax Fund.

## NINTH DEFENSE
### (Unclean Hands)

The Commonwealth is not entitled to the relief it seeks because it has acted in bad faith and has unclean hands.

## TENTH DEFENSE
### (In Pari Delicto)

The doctrine of *in pari delicto* bars claims by the Commonwealth to access the Pledged Sales Tax and the Dedicated Sales Tax Fund or otherwise interfere with COFINA's rights with respect to the Pledged Sales Tax and the Dedicated Sales Tax Fund.

## ELEVENTH DEFENSE
### (Statutory Exception to Preference Liability)

The Commonwealth Agent is not entitled to the relief it seeks because the transfer to COFINA is exempt from preference liability pursuant to 11 U.S.C. § 547(c), 11 U.S.C. § 926(b) and any applicable safe harbors provided for by PROMESA, including, without limitation, 11 U.S.C. § 546(e).

## TWELFTH DEFENSE
### (Statutory Defenses to Avoidance)

The Commonwealth Agent is not entitled to the relief it seeks because the transfer to COFINA may not be avoided pursuant to 11 U.S.C. §§ 544, 547-550.

## THIRTEENTH DEFENSE
### (Sovereign Immunity)

Claims brought by the Commonwealth Agent under 11 U.S.C. §§ 544, 547-550 are barred because COFINA is an independent instrumentality of the Commonwealth of Puerto Rico immune from liability.

## FOURTEENTH DEFENSE
### (Federal Preemption)

The Commonwealth is preempted by federal law, including PROMESA, the Bankruptcy Code and the United States Constitution, from taking any action to appropriate, or otherwise interfere with COFINA's rights in, the Pledged Sales Tax and the Dedicated Sales Tax Fund.

## FIFTEENTH DEFENSE
### (Preemption by PROMESA)

PROMESA preempts the Commonwealth from taking any action that would interfere with COFINA's rights in the Pledged Sales Tax and the Dedicated Sales Tax Fund. Additionally, section 305 of PROMESA preempts a court from taking any action that would interfere with COFINA's rights in the Pledged Sales Tax and the Dedicated Sales Tax Fund or COFINA's use or enjoyment of the Pledged Sales Tax and the Dedicated Sales Tax Fund.

## SIXTEENTH DEFENSE
### (Preemption Pursuant to 28 U.S.C. § 959)

The Commonwealth Agent alleges that it "stands in the shoes of the Oversight Board as 'trustee' with respect to the Commonwealth-COFINA Dispute," and, therefore, the

Commonwealth Agent is bound by 28 U.S.C. § 959, which provides that "a trustee, receiver or manager appointed in any cause pending in any court of the United States . . . shall manage and operate the property in his possession as such trustee, receiver or manager according to the requirements of the valid laws of the State in which such property is situated . . . ." Accordingly, the Commonwealth Agent is bound by the laws of Puerto Rico, including the laws governing COFINA and the legislative mandate transferring the Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA, and it may not take any action that is contrary to those laws.

## SEVENTEENTH DEFENSE
### (Taking)

The Commonwealth transferred the Pledged Sales Tax and the Dedicated Sales Tax Fund to COFINA before PROMESA was enacted. Any retroactive application of PROMESA to take COFINA's property, without just compensation, would constitute a taking in violation of the Constitutions of the United States and Puerto Rico.

## EIGHTEENTH DEFENSE
### (Statute of Limitations)

The Commonwealth Agent's claims are barred, in whole or in part, by the applicable statute of limitations.

## NINETEENTH DEFENSE
### (Authority Pursuant to Commonwealth-COFINA Dispute Stipulation)

To the extent that the Commonwealth Agent's claims exceed its authority pursuant to the Commonwealth-COFINA Dispute Stipulation, such claims are barred.

Dated: September 15, 2017
    San Juan, Puerto Rico

/s/ Matthew A. Feldman

Matthew A. Feldman (*pro hac vice*)
Joseph G. Minias (*pro hac vice*)
Martin L. Seidel (*pro hac vice*)
James C. Dugan (*pro hac vice*)
Jeffrey B. Korn (*pro hac vice*)
Tariq Mundiya (*pro hac vice*)
Paul V. Shalhoub (*pro hac vice*)
Antonio Yanez, Jr. (*pro hac vice*)
**WILLKIE FARR & GALLAGHER LLP**
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
Email: mfeldman@willkie.com
jminias@willkie.com
mseidel@willkie.com
jdugan@willkie.com
jkorn@willkie.com
tmundiya@willkie.com
pshalhoub@willkie.com
ayanez@willkie.com

*Counsel to the COFINA Agent*


Kenneth N. Klee (*pro hac vice*)
Daniel J. Bussel (*pro hac vice*)
Jonathan M. Weiss (*pro hac vice*)
**KLEE, TUCHIN, BOGDANOFF &
STERN LLP**
1999 Avenue of the Stars
39th Floor
Los Angeles, California 90067
Telephone: (310) 407-4000
Facsimile: (310) 407-9090
Email: kklee@ktbslaw.com
dbussel@ktbslaw.com
jweiss@ktbslaw.com

*Special Municipal Bankruptcy Counsel
to the COFINA Agent*

Respectfully submitted,


By: /s/ Nilda M. Navarro-Cabrer

Nilda M. Navarro-Cabrer
USDC – PR No. 201212
**NAVARRO-CABRER LAW OFFICES**
El Centro I, Suite 206
500 Muñoz Rivera Avenue
San Juan, Puerto Rico 00918
Telephone: (787) 764-9595
Facsimile: (787) 765-7575
Email: navarro@navarrolawpr.com

*Local Counsel to the COFINA Agent*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notifications of such filing to all

CM/ECF participants in this adversary proceeding.


Dated:  September 15, 2017
San Juan, Puerto Rico

/s/ Nilda M. Navarro-Cabrer
Nilda M. Navarro-Cabrer