# UNITED STATES DISTRICT COURT

# DISTRICT OF PUERTO RICO

<table>
<tr>
<td>

In re

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,*

    Debtors.

</td>
<td>

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

</td>
</tr>
<tr>
<td>

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE COMMONWEALTH OF
PUERTO RICO,

    as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,

    Plaintiff,

    v.

BETTINA WHYTE,

    as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as agent of

THE PUERTO RICO SALES TAX FINANCING
CORPORATION,

    Defendant.

</td>
<td>

Adv. Proc. No. 17-00257

**MOTION FOR SUMMARY
JUDGMENT OF
INTERVENOR OFFICIAL
COMMITTEE OF RETIREES;**

**JOINDER IN PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT**

</td>
</tr>
</table>

---

* The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

The Official Committee of Retirees of the Commonwealth of Puerto Rico, as permitted intervenor in this adversary proceeding, moves for summary judgment in this adversary proceeding:

1. On the "Second Amended Complaint" filed by Plaintiff The Official Committee Of Unsecured Creditors Of The Commonwealth Of Puerto Rico, As Agent Of The Financial Oversight And Management Board For Puerto Rico, As Representative Of The Commonwealth Of Puerto Rico [ECF 221]:

   a. On Plaintiff's **First Cause of Action**, for judgment declaring that Act 91 did not transfer present ownership of future SUT revenues to COFINA

   b. On Plaintiff's **Second Cause of Action**, for judgment declaring that Act 91 Did Not Assign to COFINA any "Right to Receive" Future SUT Revenues;

   c. On Plaintiff's **Twelfth Cause of Action**, for judgment declaring that SUT revenues purportedly transferred to COFINA (including all SUT revenues currently on deposit at BONY and all future SUT revenues) are property of the Commonwealth because Act 91 and the purported transfer are unconstitutional on their face as an evasion of Puerto Rico Constitutional debt limits and Puerto Rico Constitutional debt priority;

   d. On Plaintiff's **Thirteenth Cause of Action**, for judgment declaring that SUT revenues purportedly transferred to COFINA are Commonwealth property because Act 91 was enacted and amended, and the purported transfer was made, in violation of the Puerto Rico Constitutional Balanced Budget Clause and thus are unconstitutional on their face;

2.  On the "Complaint In Intervention Of The Ad Hoc Group Of General Obligation Bondholders" [ECF 96], for judgment declaration that all revenues derived from the SUT constitute property of the Commonwealth.

3.  On the "Second Amended Answer, Defenses, And Counterclaims Of The Appointed Agent Of The Puerto Rico Sales Tax Financing Corporation (COFINA)" [ECF 269], on Defendant and Counterclaimant's First Cause of Action, that Defendant and Counterclaimant take nothing by its counterclaim.

4.  On the "Amended Answer In Intervention And Counter- And Crossclaims Of The COFINA Senior Bondholders' Coalition" [ECF 272], on the **First Cause of Action**, that Intervenors and Counterclaimants take nothing by its counterclaim.

5.  On the "Answer, Affirmative Defenses, And Counterclaims Of National Public Finance Guarantee Corporation" [ECF 270], **First Cause of Action**, that Intervenor and Counterclaimant take nothing by its counterclaim.

6.  On the "Mutual Fund Group And Puerto Rico Funds' Amended Answer And Counterclaims" [ECF 273], on the **First Counterclaim**, that Intervenors and Counterclaimants take nothing by their counterclaim.

This Motion and Joinder is based on the statement of "Undisputed Facts" contained in the "*Commonwealth Agent's Motion For Summary Judgment And Incorporated Memorandum Of Law*," the Retiree Committee's Memorandum in Support of this Motion (filed concurrently herewith), the record in the case, and such other evidence and arguments as may be adduced at the hearing on this Motion.

The Retiree Committee also joins in the Plaintiff's motion for summary judgment.

Dated: February 21, 2018                          Respectfully submitted,


JENNER & BLOCK LLP                                BENNAZAR, GARCÍA & MILIÁN, C.S.P.


By:                                               By:


/s/ Robert Gordon                                 /s/ A.J. Bennazar-Zequeira


Robert Gordon (admitted *pro hac vice*)           A.J. Bennazar-Zequeira
Richard Levin (admitted *pro hac vice*)           Edificio Union Plaza
919 Third Ave New York, NY 10022-3908             PH-A piso 18
rgordon@jenner.com                                Avenida Ponce de León #416
rlevin@jenner.com                                 Hato Rey, San Juan
212-891-1600 (telephone)                          Puerto Rico 00918
212-891-1699 (facsimile)                          ajb@bennazar.org
                                                  787-754-9191 (telephone)
Catherine Steege (admitted *pro hac vice*)        787-764-3101 (facsimile)
Melissa Root (admitted *pro hac vice*)
353 N. Clark Street Chicago, IL 60654             *Counsel for The Official Committee*
csteege@jenner.com                                *of Retired Employees of Puerto Rico*
mroot@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

121447.1

Case:17-00283-LTS Doc#:300-14 Filed:02/14/18 Entered:02/14/18 16:46:19 Desc:
Exhibit DX-EE Page 5 of 33

Case:17-00257-LTS Doc#:377 Filed:02/14/18 Entered:02/14/18 19:16:20 Desc:
Memorandum of Law in Support of Motion for Summary Judgment of Intervenor Offic Page 1 of 29

## UNITED STATES DISTRICT COURT

### DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,\*<br><br>    Debtors. | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>    v.<br><br>BETTINA WHYTE,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as agent of<br><br>THE PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>    Defendant. | Adv. Proc. No. 17-00257<br><br>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OF INTERVENOR OFFICIAL COMMITTEE OF RETIREES;**<br><br>**JOINDER IN PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

---

\* The Debtors in these jointly-administered PROMESA title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

Case:17-00257-LTS Doc#:300-1 Filed:02/21/18 Entered:02/21/18 16:40:19 Desc:
Exhibit DX-EE Page 6 of 33

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

FACTS ........................................................................................................................... 2

   I.   The SUT Legislation ...................................................................................... 2

   II.  The COFINA Bond Resolution And Flow Of Funds ............................................. 8

ARGUMENT ................................................................................................................... 9

   I.   This Adversary Proceeding Is Limited To Postpetition And Future SUT
       Collections .................................................................................................. 9

   II.  The Commonwealth Could Not Have Validly And Effectively Transferred
       Future SUT. .............................................................................................. 11

       A.  Under The Puerto Rico Civil Code, The Commonwealth Did Not Transfer
           Ownership Of Future SUT To COFINA. ................................................... 12

       B.  Under The Bankruptcy Code, A "Right To Receive" Future SUT Is Not An
           Asset That Can Be Transferred. ............................................................. 16

   III. The Legislative Assembly's Treatment Of Future SUT Shows Future SUT Was
       Not Transferred To COFINA. ...................................................................... 20

CONCLUSION ............................................................................................................. 21

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<small>**CASES**</small>

*Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.)*,
  482 F.3d 15 (1st Cir. 2007) .......................................................................................... 11, 16

*Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*,
  744 F.2d 332 (3rd Cir. 1984) ............................................................................................. 19

*Blum v. Good Humor Corp.*, 57 A.D.2d 911, 394 N.Y.S.2d 894 (N.Y.App.Div.1977)........................ 18

*Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234 (11th Cir. 2006)...................................... 17

*Burgess v. Sikes (In re Burgess)*, 438 F.3d 493 (5th Cir. 2006) ............................................... 17

*Calif. Dept. of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925 (9th Cir. 1993)............................. 20

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..................................................................... 10

*Grady v. A.H. Robbins Co. (In re A.H. Robbins Co.)*, 839 F.2d 198 (4th Cir. 1988)............................. 19

*Grossman's, Inc. v. Van Brunt (In re Grossman's, Inc.)*, 607 F.3d 114 (3d Cir. 2010) .......................... 19

*In re Bronikowski*, 569 B.R. 48 (Bankr. W.D. N. Car. 2017)................................................. 17

*In re Nat'l Gypsum Co.*, 139 B.R. 397 (N.D. Tex. 1992)........................................................ 20

*In re Piper Aircraft Corp.*, 162 B.R. 619 (Bankr. S.D. Fla. 1994), *aff'd as modified sub
  nom. Epstein v. Official Comm. of Unsecured Claimants of Estate of Piper Aircraft
  Corp.*, 58 F.3d 1573 (11th Cir. 1995)............................................................................. 19

*Johnson v. Home State Bank*, 501 U.S. 78, 111 S. Ct. 2150 (1991)............................................. 19

*Ohio v. Kovacs*, 469 U. S. 274 (1985) ............................................................................... 19

*Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U. S. 552 (1990) ................................. 19

*Seaver v. Klein-Swanson (In re Klein-Swanson)*, 488 B.R. 628 (8th Cir. B.A.P. 2013)........................ 17

*Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir. 1997)........................ 10

*Soto-Rios v. Banco Popular de Puerto Rico*, 662 F.3d 112 (1st Cir. 2011) ................................. 11

*Taca International Airlines, S.A. v. Rolls Royce of England, Ltd.*,
  47 Misc.2d 771, 263 N.Y.S.2d 269 (N.Y.Sup.Ct.1965) ...................................................... 18

iv

*U.S. Pipe & Foundry Co. v. Adams (In re U.S. Pipe & Foundry Co.)*,
    577 B.R. 916 (Bankr. M.D. Fla. 2017) .................................................................. 19

*Wornick v. Gaffney*, 544 F.3d 486 (2d Cir. 2008) ........................................................ 17

**STATUTES**

13 L.P.R.A. § 32101 ........................................................................................................ 8

31 L.P.R.A. 5027 ............................................................................................................ 16

11 U.S.C. § 101(5)(A) .................................................................................................... 18

Act 116-2013, Statement of Motives, third unnumbered paragraph ................................ 7

Act 291-2006, Statement of Motives, third unnumbered paragraph ................................ 4

Act 54-2016 ...................................................................................................................... 8

Act 56-2007, Statement of Motives, third unnumbered paragraph .................................. 5

Act 56-2007, Statement of Motives, fourth unnumbered paragraph ............................... 6

Act 7-2009 § 50 ......................................................................................................... 6, 21

Act 72-2014, Statement of Motives, second unnumbered paragraph ......................... 7, 21

Act 84-2016 § 3 ............................................................................................................... 8

Act 91-2006 ............................................................................................................. passim

Bankruptcy Code §§ 362, 549, and 550 ....................................................................... 10

Bankruptcy Code § 362(a)(3) ....................................................................................... 10

Bankruptcy Code § 541 ................................................................................................. 11

Bankruptcy Code § 541(a)(1) .................................................................................. 11, 16

Civil Code § 1768 .......................................................................................................... 16

Compliance Act, Act 26-2017 ................................................................................... 8, 21

PROMESA § 301(c)(5), 48 U.S.C. § 2161(c)(5) .......................................................... 10

Puerto Rico Constitution ...................................................................................... 6, 14, 20

## OTHER AUTHORITIES

2 COLLIER ON BANKRUPTCY ¶ 101.05[1] .................................................................................... 19

5 COLLIER ON BANKRUPTCY ¶ 541.01 ...................................................................................... 16

Fed. R. Bankr. Proc. 7056 ................................................................................................................ 10

Fed. R. Civ. Proc. 56(a) ..................................................................................................................... 10

H.R. Rept. 95-595, 95th Cong., 1st Sess. (1977) ................................................................... 16, 18

http://www.gdb-pur.com/investors_resources/documents/COFINA-
    AMENDEDANDRESTATEDBONDRESOLUTION.PDF (last viewed Feb. 20,
    2018) ............................................................................................................................................. 2, 8

Case:17-00257-LTS  Doc#:300-1  Filed:02/21/18  Entered:02/21/18 16:46:19  Desc:
Exhibit DX-EE  Page 11 of 33

The Official Committee of Retirees of the Commonwealth of Puerto Rico, as permitted intervenor in this adversary proceeding, moves for summary judgment that the "Pledged Sales Taxes," as that term is defined in the "*Stipulation and Agreed Order Approving Procedure to Resolve Commonwealth–COFINA Dispute*,"[2] is property of the Commonwealth of Puerto Rico and joins in the motion for summary judgment to the same effect filed by the Plaintiff. The Committee adopts the arguments that the Plaintiff makes in its memorandum in support of its motion for summary judgment and sets forth in this Memorandum additional reasons why the motions should be granted. The statement of facts in this Memorandum is limited accordingly.

## INTRODUCTION

As characterized by the Defendant, the COFINA financing structure amounts to indentured servitude for the Commonwealth. Neither the Puerto Rico Constitution nor Congress intended to put the Commonwealth or its citizens in such a position. The Puerto Rico Constitution protects against the Commonwealth incurring unaffordable debt and transferring outright ownership and control of its taxes to an agency or its debt holders. The Puerto Rico Constitution and legal system do not recognize the Commonwealth's transfer of assets that do not exist. Through PROMESA, Congress granted the Commonwealth a means to obtain relief from permanent bondage to improvident obligations that are beyond the Commonwealth's ability to pay and that cripple the Puerto Rico economy. And because PROMESA supersedes inconsistent territory law, even if Puerto Rico law could be construed to support the financing structure, PROMESA removes any Puerto Rico law impediment to relief from the permanent deprivation of tax revenues that COFINA attempts to impose.

---

[2] Case No. 17-3283, ECF 868, ¶ 4, approved August 10, 2017, ECF 996.

1

The COFINA Agent and the intervenors argue variously that the structure must be preserved because it is a staple of municipal finance, because it saved the Commonwealth financing costs, because the Commonwealth reiterated its commitment to the structure and its Secretary of Justice opined that it was valid and effective, and because the blot on Puerto Rico's reputation from a ruling against the structure would destroy Puerto Rico's ability to return to the capital markets after the conclusion of this Title III case. None of these policy arguments can overcome the Puerto Rico Constitution or the statutes, including PROMESA, that govern this dispute.

To permit Puerto Rico the relief it desperately needs, and because applicable law so provides, this Court should grant judgment declaring that the Puerto Rico Sales and Use Tax is property of the Commonwealth, not of COFINA.

## FACTS

The question in this adversary proceeding is: are "the sales and use taxes purportedly pledged by COFINA to secure debt (the "Pledged Sales Taxes") property of the Commonwealth or COFINA under applicable law." Stipulation ¶ 4. There is no genuine dispute about the facts that are material to the resolution of this question. For purposes of this Motion, the material facts are contained in the Commonwealth legislation establishing COFINA and the transfer of SUT, the COFINA Bond Resolution,[3] and the record in this Title III case.

### I. The SUT Legislation

In May 2006, facing a "government crisis that … led to layoffs for over 95,000 government employees" and ballooning debt that "substantially affected government credit,"[4] the Puerto Rico

---

[3] Available at http://www.gdb-pur.com/investors_resources/documents/COFINA-AMENDEDANDRESTATEDBONDRESOLUTION.PDF (last viewed Feb. 20, 2018) ("**Bond Resolution**").
[4] Act 91-2006, Statement of Motives, first unnumbered paragraph.

2

Legislative Assembly created the Urgent Interest Fund (**FIA**)[5] to be "replenished" by a portion of the Puerto Rico sales and use tax ("**SUT**")[6] and to "be used exclusively for the following purposes:

> (1) To pay the advances to be made by the Government Development Bank pursuant to the Act to Impose the Supertax of 2006.
> (2) To pay or refinance the extraconstitutional debt in existence as of June 30, 2006."[7]

The original 2006 legislation required deposits into the FIA of 1% of the SUT and of any revenues generated by the SUT in excess of "estimate of annual revenues to be generated by said tax in the Budget Resolution for each fiscal year."[8] It did not, by its terms, purport to transfer ownership of any funds to COFINA.

By amendment to Act 91 later that year, the Legislative Assembly provided:

> In consideration of the commitment to pay all or part of the extraconstitutional debt in existence as of June 30, 2006, the 'FIA' is hereby transferred and shall be the property of the Puerto Rico Urgent Interest Fund Corporation, hereinafter the 'COFINA,' a subsidiary of the Government Development Bank for Puerto Rico created for the purpose of issuing bonds or using other financing mechanisms to pay or refinance the extraconstitutional debt of the Commonwealth of Puerto Rico in existence as of June 30, 2006.[9]

---

[5] For consistency, the quotes from legislation in the Fact section use this Spanish acronym throughout, even though the official English translations confusingly use varying English translations or acronyms. Act 91-2006, as originally enacted in Spanish, created the "Fondo de Interés Apremiante," which was translated in the English version as "Urgent Interest Fund (UIF)." Act 91-2006, § 2. Act 291-2006, amended section 2 of Act 91-2006 to read, in English, "the Urgent Interest Fund, hereinafter the 'UIA'" and created the "Puerto Rico Urgent Interest Fund Corporation, hereinafter the 'UIFC'." Act 291-2006, § 1. Act 56-2007 provided for the creation of the "*Corporación del Fondo de Interés Apremiante de Puerto Rico ('COFINA')*, whose name in English shall be Puerto Sales Tax Financing Corporation ('PRSTFC')," Act 56-2007, § 1, amending Act 91-2006, § 2, and for the creation of a "special fund … to be known as the *Fondo de Interés Apremiante*, hereinafter "FIA" (Spanish acronym), whose name in English shall be Dedicated Sales Tax Fund." Id. § 2, amending Act 91-2006 § 3. The names in the original Spanish legislation remained "*Fondo de Interés Apremiante*" (FIA) and "*Corporación del Fondo de Interés Apremiante de Puerto Rico*" (COFINA).

[6] Act 91-2006 § 2.

[7] *Id*. §§ 3(a)(1), (2).

[8] *Id*. § 2.

[9] Act 291-2006 § 1 (amending § 2 of Act 91-2006).

3

The legislation also directed that the "moneys collected … and deposited in the 'FIA' shall be used by 'COFINA' through financing or refinancing mechanisms, for the exclusive purpose of directly or indirectly paying or refinancing the extraconstitutional debt of the Commonwealth of Puerto Rico in existence as of June 30, 2006."[10]

The 2006 amendment did not change the percentage of the SUT to be deposited into the FIA, but required the deposit of "the first moneys collected on account of" the SUT.[11] It also provided for "strengthen[ing] the FIA by providing the option of replenishing the same by means of fixed revenue or the existing source, whichever is greater."[12] To do so, the legislation established a "Fixed Amount" of $170 million for fiscal year 2008, increasing by 4% per year indefinitely, and required the deposit to the FIA of the greater of the 1% of collections or the Fixed Amount. That is, the deposit amount changed from a strictly variable amount to an annual minimum.

To provide further assurance that the minimum deposit would be made, the legislation gave the Secretary of the Treasury authority, if the SUT collections were less than the Fixed Amount each year, "to cover such deficiency with any available funds and … to take a loan with the 'GDB' to cover such a deficiency," and required the Director of the Office of Management and Budget to "include in the recommended budget for the fiscal year in course or for the following fiscal year, the appropriations needed to cover such deficiencies."[13] The 2006 legislation also committed that the Commonwealth would not "limit nor restrict the rights or powers hereby

---

[10] *Id*. § 2 (adding § 3(c) to Act 91-2006).
[11] *Id*. § 1 (amending § 2 of Act 91-2006); *id*. § 3 (amending § 4(a) of Act 91-2006).
[12] *Id*. Statement of Motives, third unnumbered paragraph.
[13] *Id*. § 3 (amending Act 91-2006 § 4(a), renumbered as § 5(a) by Act 56-2007, § 4).

conferred under this Act until said bonds, of whichever date, together with interest thereon, are totally paid and withdrawn."[14]

The next year, having discovered accounting issues resulting from the creation of COFINA as a Government Development Bank subsidiary,[15] and acknowledging, despite the prior express "transfer" of the FIA to COFINA, that "COFINA was never created by" GDB, the Legislative Assembly actually created COFINA.[16] It also purported to change the scope of the transfer to COFINA of the FIA, which had already been transferred in 2006. Rather than just transfer the FIA, as provided in the 2006 legislation, the 2007 legislation provided:

> The FIA *and all the funds deposited therein* on the effective date of this act *and all the future funds that must be deposited in the FIA* pursuant to the provisions of this law are hereby transferred to, and shall be the property of COFINA.[17]

In addition, the 2007 legislation increased the "Fixed Income" amount to $185 million, also escalated at 4% per year indefinitely.[18] And the 2007 legislation went further than the prior authorization for the Secretary of the Treasury to cover any shortfall, requiring the Secretary to cover the shortfall "from the first amounts received in the next fiscal year or subsequent fiscal years by the Commonwealth of Puerto Rico from any remaining portion of the Tax" after making the deposits required under the other sections of the legislation.[19]

But the 2007 legislation implied a limit on the transfer of future SUT. The Statement of Motives says, "It is the intention of this Legislature to increase the amount of funds that are deposited in the [FIA] … [and] that they be owned by COFINA until such time as the

---

[14] *Id*. § 3 (amending Act 91-2006 § 4(d), renumbered as § 5(d) by Act 56-2007 § 4) (emphasis added).
[15] Act 56-2007, Statement of Motives, third unnumbered paragraph.
[16] *Id*. § 1 (amending Act 91-2006 § 2).
[17] *Id*. (emphasis added).
[18] *Id*.
[19] *Id*. § 4 (amending Act 91-2006 § 4(e) and renumbering it as § 5(e)).

5

extraconstitutional debt outstanding as of June 30, 2006 has been paid."[20] Moreover, the statute's

limitations on the Commonwealth's interference with COFINA's rights and powers also expired

when the COFINA bonds would be paid.[21]

In 2009, the Legislative Assembly again modified the rights granted to COFINA. The 2009

legislation increased the SUT to be deposited into the FIA from 1% of the SUT to 2.75% of the

SUT[22] and added an "Additional" Fixed Amount commencing in fiscal year 2010 of $350.2

million, also escalating at 4% per year.[23]

Still later in 2009, the Legislative Assembly asserted its control over the SUT and the FIA

by amending Act 91 again. The amendment assured anyone who purchased or insured COFINA

bonds that until the bonds are "entirely paid for and withdrawn, the Commonwealth shall not []

limit or restrain the rights or power of the corresponding officials of the Commonwealth of Puerto

Rico to levy, maintain, charge or collect taxes and other income to constitute the amounts to be

deposited into the FIA,"[24] but with an important caveat:

> the foregoing provisions do not limit the power of the Commonwealth of
> Puerto Rico, by means of a law or amendment, to limit or restrain the nature
> or the amount of such [SUT] or other revenues or to substitute similar or
> comparable collateral ....[25]

The Puerto Rico Constitution requires such a caveat. The Constitution provides:

> The power of the Commonwealth of Puerto Rico to impose and collect taxes
> ... shall never be surrendered or suspended.[26]

---

[20] *Id*. Statement of Motives, fourth unnumbered paragraph.

[21] *Id*. § 4 (amending Act 91-2006 § 4(d) and renumbering it as § 5(d)).

[22] Act 7-2009 § 50 (amending Act 91-2006 § 3(a)).

[23] *Id*. (amending Act 91-2006 § 3(b)).

[24] Act 18-2009 § 4 (amending Act 91-2006, § 5(c)).

[25] *Id*.

[26] P.R. Const. Art. VI, § 2.

The Commonwealth had not finished changing the rights that it had purportedly transferred to COFINA. In October 2013, recognizing its budget deficit and its debt overhang, the Legislative Assembly found "it is necessary to refinance such debt through a long-term bond issue in the stock markets in order to pay off all of our private loans."[27] To accomplish this, it turned to COFINA as "the most cost-effective source of financing for the Commonwealth of Puerto Rico."[28] To enable COFINA to issue additional bonds specifically to refinance past budget deficits and current operating expenses,[29] the Legislative Assembly increased the portion of the SUT that "must be deposited in the FIA pursuant to the provisions of this Act are hereby transferred to, and shall be the property of COFINA"[30] to 2.75% of the SUT from 3.50%.[31] However, nine months later, the Legislative Assembly determined it "prudent that the General Fund receives the Sales and Use Tax revenues transferred to COFINA under Act No. 116-2013, until such revenues are needed to repay any bond or note issued by COFINA in the future,"[32] and it retroactively delayed the effective date of the increase, taking away from COFINA the property it had purportedly "transferred to, and [made] the property of COFINA."

The Commonwealth continued to treat the SUT as its own, to dispose of as it chose. In 2014, the Legislative Assembly increased the SUT from 5.5% to 6.0%.[33] But the next year, the Legislative Assembly amended the portion of the SUT, purportedly already "transferred to, and … the property of COFINA," required to be deposited into the FIA.[34] During this same period,

---

[27] Act 116-2013, Statement of Motives, third unnumbered paragraph.
[28] *Id*.
[29] *Id*. § 1 (amending Act 91-2006, § 2).
[30] *Id*. § 2 (amending Act 91-2006, § 3).
[31] *Id*. § 2 (amending Act 91-2006, § 3(a)(i)).
[32] Act 72-2014, Statement of Motives, second unnumbered paragraph.
[33] Act 18-2014 §§ 2, 3 (amending §§ 4020.01, 4020.02 of Act 1-2011).
[34] Act 84-2016 § 3 (amending Act 91-2006, § 3.)

the Legislative Assembly enacted a substantial increase in the SUT from 6.0% to 10.5%[35] and

provided for the repeal of the SUT and the enactment of a value-added tax. Changing direction

again, the next year, the Legislative Assembly repealed the provisions of Act 72-2015 that enacted

the value added tax and reinstated the SUT.[36] The same act also reduced the SUT from 10.5% back

to 6.0% and imposed a separate SUT surtax of 4.5%, which was not subject to the requirement

under Act 91-2006 that first collections of SUT be deposited into the FIA.

      Finally, in 2017, the Commonwealth enacted the Compliance Act,[37] to comply with the

fiscal plan that the Financial Oversight and Management Board had certified on March 17, 2017.[38]

Section 4.03 authorizes the Governor "to use COFINA funds" under certain circumstances,[39] even

though the funds had purportedly been "transferred to, and shall be the property of, COFINA."

## II.    The COFINA Bond Resolution And Flow Of Funds

      Under 13 L.P.R.A. § 32101, the merchant or user liable for SUT must remit the SUT to the

Secretary of the Treasury. Act 91-2006 then requires the SUT that the Secretary receives to "be

deposited the moment they are received in FIA or in any other special fund (including a fund

controlled by a trustee designated in the trust agreement under which bonds were issued or other

obligations were incurred …) designated by COFINA.[40] The COFINA Amended and Restated

Sales Tax Revenue Bond Resolution[41] requires COFINA to deposit, "upon receipt," all SUT it

receives into a "Revenue Account" held by the COFINA bond trustee.[42] The bond trustee uses the

---

[35] Act 72-2015, §§ 20, 21, amending §§ 4020.01, 4020.02 of Act 1-2011.

[36] Act 54-2016.

[37] Act 26-2017.

[38] *Id.*, title ("to take measures as necessary to adjust the existing legal and juridical framework so as to allow the fullest compliance with the Fiscal Plan approved by the Financial Oversight Board").

[39] *Id.* § 4.03.

[40] Act 91-2006, § 5(a) (as amended by Act 56-2007 § 4).

[41] Bond Resolution.

[42] Bond Resolution §§ 101 (definition of "Revenues" and "Revenue Account"), 502.1 (establishment of Revenue Account "held by the Trustee"), 505.1 (deposit of Revenues in the Revenue Account).

funds in the Revenue Account to pay amounts owing on the bonds, among other things.[43] The

flow of funds has continued since the filing of this Title III case.[44]

## ARGUMENT

"The court shall grant summary judgment if … there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a),

made applicable by Fed. R. Bankr. Proc. 7056; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986). Because the material facts are based on legislation, there is no genuine dispute about them.

**I.     This Adversary Proceeding Is Limited To Postpetition And Future SUT Collections**

The COFINA Stipulation asks: "Whether, after considering all procedural and substantive

defenses and counterclaims, including constitutional issues, the sales and use taxes purportedly

pledged by COFINA to secure debt (the "Pledged Sales Taxes") are property of the

Commonwealth or COFINA under applicable law." The Stipulation's question speaks only in

general terms and does not distinguish among the three relevant time periods of SUT collection:

before the Commonwealth's Title III case, during the Title III case, and in the future, that is, after

resolution of this adversary proceeding. However, in a prior order in the COFINA interpleader

action,[45] this Court clarified that "the Commonwealth-COFINA Dispute will address whether the

Disputed Funds are the property of the Commonwealth or COFINA under applicable law,"

where "Disputed Funds" was defined as SUT "currently being held, or that may be deposited

into, accounts at" the COFINA bond trustee.[46] Thus, although the ownership analysis might differ

for SUT collected during each of the three relevant time periods, the Court's prior order makes

---

[43] *Id.* § 501.

[44] *See* "*Order Granting Interpleader, Staying Pending And Future Litigation Against The Bank Of New York Mellon, As Trustee, Pursuant To 28 U.S.C. § 2361, And Granting Related Relief,*" Adv. Proc. 17-00133-LTS [ECF 110].

[45] *The Bank Of New York Mellon v. Puerto Rico Sales Tax Financing Corporation*, Adv. Proc. No. 17-00133-LTS.

[46] *See* "*Opinion And Order Denying Motion Of The Committee Of Unsecured Creditors, As Agent For The Commonwealth, To Intervene,*" Adv. Proc. 17-00133-LTS, at 2, 7 [ECF 416].

clear that this adversary proceeding addresses SUT for both the two post-petition periods, and this Court's holding with respect to future SUT should apply retroactively to all SUT collected post-petition.

If the Court determines SUT is property of the Commonwealth, SUT collections since the Title III petition would not be property of COFINA despite the deposit with COFINA in the FIA and the transfer to the Revenue Account with the bond trustee. The Retiree Committee expects that COFINA and the bond trustee would comply with such a ruling and turn over the postpetition collections without the need for a separate adversary proceeding.

If not, the Commonwealth has a remedy. The automatic stay of section 362(a)(3) of the Bankruptcy Code prohibits "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate," and any act in violation of the automatic stay is void. *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 976 (1st Cir. 1997). Under PROMESA, "The term 'property of the estate', when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), means property of the debtor." PROMESA § 301(c)(5), 48 U.S.C. § 2161(c)(5). Accordingly, any postpetition deposit of SUT into the FIA would be void, postpetition SUT collections would remain property of the Commonwealth, and the transfer to COFINA and the bond trustee would be avoidable and recoverable under sections 362, 549, and 550 of the Bankruptcy Code. This Court dismissed without prejudice any such avoidance or recovery actions in this adversary proceeding,[47] so the right to pursue such actions is preserved. Similarly, the right to pursue any avoidance or recovery

---

[47] *"Order (A) Confirming Scope Of COFINA And Commonwealth Agent's Authority Under Stipulation And Order And (B) Dismissing, Without Prejudice, Certain Claims That Exceed The Scope Of The Commonwealth-COFINA Dispute,"* at 6 [ECF 167].

actions for SUT the Commonwealth has already collected and deposited in the FIA before the

Title III case are beyond the scope of this adversary proceeding and is preserved.

## II.    The Commonwealth Could Not Have Validly And Effectively Transferred Future SUT.

The Stipulation poses the question, "Whether … the sales and use taxes … are property

of the Commonwealth or COFINA." Although section 541 of the Bankruptcy Code does not apply

in a Title III case, the question is in the same form as the issue that arises under section 541(a)(1):

whether an asset is "property of" the estate. So cases construing and applying section 541(a)(1)

help supply the answer to the question the Stipulation poses.

Under those cases, this Court must first determine whether Puerto Rico law recognizes

future (measured as of the date of purported transfer) SUT as property subject to ownership.

Section 541(a)(1) of the Bankruptcy Code includes as property of the estate "all of the debtor's

interests in property as of the commencement of the case." The phrase "is a federal statutory

term," and its meaning "is a matter of federal law." *Soto-Rios v. Banco Popular de Puerto Rico*, 662

F.3d 112, 117 (1st Cir. 2011). Despite the federal overlay, "the existence and extent of the debtor's

*interest* is ordinarily a creature of state law." *Abboud v. The Ground Round, Inc. (In re The Ground

Round, Inc.)*, 482 F.3d 15, 17 (1st Cir. 2007) (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979))

(emphasis in original). But "[t]he label … that state law affixes to a particular interest … is not

always dispositive." *Id.* (internal quotes and citation omitted).

Because Puerto Rico law does not recognize something that does not yet exist as property

or as something that can be transferred, future SUT is property of neither the Commonwealth nor

of COFINA, despite the label that has been affixed. The Commonwealth Agent is entitled to

summary judgment that future SUT is not property of COFINA and that SUT, as it is incurred

and collected, is property of the Commonwealth.

### A. Under The Puerto Rico Civil Code, The Commonwealth Did Not Transfer Ownership Of Future SUT To COFINA.

Under the Puerto Rico Civil Code, the purported transfer of the SUT from the Commonwealth to COFINA does not qualify as a sale (*compraventa*) but rather is more like a pledge (*prenda*) or lien (*gravamen*), in which ownership remains with the transferor. The Puerto Rico Civil Code sets forth the law governing sales.[48]

> **§ 3741 Contract of purchase and sale defined**
> By a contract of purchase and sale one of the contracting parties binds himself to deliver a specified thing and the other to pay a certain price therefor in money or in something representing the same. 31 L.P.R.A. § 3741 (Civil Code, 1930, § 1334).
>
> **§ 3746 When sale perfected and binding**
> The sale shall be perfected between vendor and vendee and shall be binding on both of them, if they have agreed upon the thing which is the object of the contract and upon the price, even when neither has been delivered. 31 L.P.R.A. § 3746 (Civil Code, 1930, § 1339).
>
> **§ 3876 Rescission of sale of personal property for benefit of vendor**
> With regard to personal property, the rescission of the sale shall take place by full right for the benefit of the vendor when the vendee, before the lapse of the period fixed for the delivery of the thing, should not have appeared to receive it, or having appeared, he should not have offered the price at the same time, unless a longer period has been stipulated for the payment thereof. 31 L.P.R.A. § 3876 (Civil Code, 1930, § 1394).

Thus, under the Puerto Rico Civil Code, a sale contract binds the seller to deliver the property and the buyer to pay the purchase price and is perfected and binding on both buyer and seller even before delivery if they have agreed on the property and price. The seller may rescind the sale before delivery if the buyer defaults. By implication, the seller may not rescind the sale after delivery. Once property is sold, the seller has no further right to the property itself or any right

---

[48] Because Puerto Rico is a civil law jurisdiction, there is little reported case law construing Puerto Rico's Codes.

to reacquire it from the buyer. If the buyer sells the property, the buyer need not account to the seller for any profit, and neither the seller nor the buyer is liable to the other for any loss.

The Puerto Rico Civil Code defines and regulates pledges and mortgages differently. The principal Civil Code sections applicable to the COFINA transfer are:

### § 5001 Requisites of contracts of pledge and of mortgage
The following are essential requisites of the contracts of pledge and of mortgage:

(1) That they be constituted to secure the fulfilment of a principal obligation.

(2) That the thing pledged or mortgaged is owned by the person who pledges or mortgages it.

(3) That the persons who constitute the pledge or mortgage have the free disposition of their property, and, should they not have it, that they are legally authorized for the purpose. 31 L.P.R.A. § 5001 (Civil Code, 1930, § 1756).

### § 5003 Creditor cannot appropriate or dispose of things
A creditor cannot appropriate to himself the things given in pledge or mortgage, nor dispose of them. 31 L.P.R.A. § 5003 (Civil Code, 1930, § 1758).

### § 5024 Retention by creditor until payment
A contract of pledge gives a right to the creditor to retain the thing in his possession or in that of the third person to whom it may have been delivered until his credit is paid.

If, while the creditor retains the pledge, the debtor should contract with him another debt demandable before the first one has been paid, the former may extend the retention until both credits are paid him, even should it not have been stipulated that the pledge should be subject to the security for the second debt. 31 L.P.R.A. § 5024 (Civil Code, 1930, § 1765).

### § 5027 Ownership of thing pledged
As long as the thing given in pledge is not taken by eminent domain, the debtor continues to be the owner thereof. 31 L.P.R.A. § 5027 (Civil Code, 1930, § 1768).

### § 5029 Restitution demandable only upon payment
The debtor cannot demand the restitution of the thing pledged, against the will of the creditor, until he has paid the debt and its interest, with the expenses, in a proper case. 31 L.P.R.A. § 5029 (Civil Code, 1930, § 1770).

§ 5030 Alienation of pledge by creditor; auction

A creditor to whom the debt has not been paid at the proper time may proceed, before a notary, to alienate the pledge. This alienation must necessarily take place at public auction, and with the citation of the debtor and the owner of the pledge, in a proper case. If the pledge should not have been alienated at the first auction, a second one, with the same formalities, may be held; and should no result be attained, the creditor may become the owner of the pledge. In such case he shall be obliged to give a discharge for the full amount of his credit. 31 L.P.R.A. § 5030 (Civil Code, 1930, § 1771).

Thus, when a transfer involves a pledge or lien interest in property, the transferor/debtor has the right to pay the obligation to release the asset from the transfer, free and clear of any lien. Once the obligation is paid, the transferee/pledgee may not retain the pledged property. *See Banco Popular v. Registrador*, 181 D.P.R. 663 (2011). As in any secured lending transaction, if the pledgee forecloses on the property via judicial sale and it sells for more than the total balance of the obligation (including interest and costs), the pledgee must account to the debtor for any surplus. Likewise, if the sale is for less than required to discharge the balance of the obligation, the pledgee is entitled to recover the balance from the debtor. In effect, the debtor commits that either the property will realize a minimum value or the debtor will make up the difference, and the debtor is entitled to any excess after payment of the obligation.

The purported transfer of future SUT from the Commonwealth to COFINA is a pledge under the Civil Code, not a sale. As in a sale, the Commonwealth, as transferor, commits under the statute not to rescind the transfer, at least until the COFINA bonds are paid in full.[49] But unlike in a sale, the Commonwealth retained all rights in the property itself and the right to reacquire it from COFINA, the transferee: The Puerto Rico Constitution prohibits the Commonwealth from surrendering or suspending its taxing power,[50] and Act 91-2006 expressly preserves "the power

---

[49] *See* Act 91-2006, § 5(d) (as amended by Act 56-2007 § 4).
[50] P.R. Const. Art. VI, § 2.

of the Commonwealth of Puerto Rico to limit or restrain the nature or the amount of such [SUT] or other revenues or to substitute similar or comparable collateral …."[51] Indeed, even the provision in Act 91 that purports to protect the levy and collection of the SUT, recognizes that the "officials of the Commonwealth of Puerto Rico," not of COFINA,

> "levy, maintain, charge [and] collect taxes and other income to constitute the amounts to be deposited into the FIA; provided, that the foregoing provisions do not limit the power of the Commonwealth … to limit or restrain the nature or the amount of such taxes or other revenues or to substitute similar or comparable collateral."[52]

In addition, unlike in a sale, the Commonwealth guarantees, through the "Fixed Amount," the minimum value of the SUT or that the Commonwealth will make up any difference, and the Commonwealth is entitled to any value in the property in excess of the amount necessary to pay the COFINA bonds.

As in a pledge, at any time, the Commonwealth may pay its obligation, which is the amount necessary to repay the COFINA bonds in full. When the bonds are paid, all restrictions in Act 91 on the reversion of the SUT to the Commonwealth terminate. COFINA may not retain the property. *See Banco Popular v. Registrador*, 181 D.P.R. 663 (2011) (pledgee may not retain pledged property). And as in a pledge, the Commonwealth commits a minimum payment (the Fixed Amount) each year and is entitled, at least after the COFINA bonds are retired, to any excess value over the amount necessary to pay the COFINA bonds.

Under the Puerto Rico Civil Code, "[a]s long as the thing given in pledge is not taken by eminent domain, the debtor continues to be the owner thereof."[53] Therefore, under the Civil Code,

---

[51] Act 91-2006, § 5(c) (as amended by Act 18-2009 § 4).
[52] *Id.*
[53] Civil Code § 1768, 31 L.P.R.A. 5027.

because the transfer of SUT to COFINA was a pledge, the SUT remains the property of the Commonwealth.

**B. Under The Bankruptcy Code, A "Right To Receive" Future SUT Is Not An Asset That Can Be Transferred.**

Responding to the Plaintiff's claim that the Commonwealth could not have transferred SUT that might be collected after the enactment of Act 91-2006, the COFINA Agent argues that even if the Commonwealth could not transfer an asset that did not yet exist, the Commonwealth transferred an existing asset, that is, the "right to receive" future SUT. However, such a "right to receive" is neither an asset nor a claim under the Bankruptcy Code.

The Bankruptcy Code defines "property of the estate" broadly. "Property of the estate" includes "all legal or equitable interests of the debtor in property." 11 U.S.C. § 541(a)(1). "The section is construed broadly." *In re The Ground Round, Inc.*, 482 F.3d at 17 (citing *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204-05 & n. 9 (1983)); H.R. Rept. 95-595, 95th Cong., 1st Sess. 367 (1977) ("The scope of this paragraph [1] is broad."); 5 COLLIER ON BANKRUPTCY ¶ 541.01 (Richard Levin and Henry J. Sommer eds., 16th ed. 2017) (property of the estate is "as inclusive as possible.… It would be hard to imagine language that would be more encompassing."); *id.* ¶ 541.03 ("[T]he scope of section 541(a)(1) is so broad and all encompassing"). Thus, if a purported right or claim becomes property of the estate, it is an interest of the debtor in property; if it does not, the purported right or claim is not an interest in property and cannot be transferred.

To determine whether a debtor has a legal or equitable interest in property, courts distinguish between a contingent interest on the one hand and a mere hope or expectancy on the other. Although an interest that is contingent on a future event is an interest in property that becomes property of the estate, a hope or expectancy does not rise to the level of an interest in property. Where a debtor's right to the property depends on the independent, discretionary

16

decision of a third party or on future events that determine not just whether the debtor has an interest but the nature and scope of that interest, the debtor has only a hope, not a contingent interest. Three fact patterns illustrate the principle.

- Crop insurance proceeds under a program that Congress enacts postpetition are not property of the estate of a farmer who suffered prepetition crop losses, because the farmer had no right, even a contingent right, to the insurance proceeds as of the petition date. The proceeds arose solely from Congress's discretionary postpetition decision to enact the crop insurance program. *Bracewell v. Kelley (In re Bracewell)*, 454 F.3d 1234 (11th Cir. 2006); *Burgess v. Sikes (In re Burgess)*, 438 F.3d 493 (5th Cir. 2006).

- A debtor who files bankruptcy before the debtor's employer awards a bonus under a discretionary bonus plan does not have a property interest as of the petition date, even a contingent one, even if the debtor has completed all work by the petition date, and even if bonus is awarded later. As of the petition date, the debtor has only a hope or expectation that the employer will award the bonus. *Seaver v. Klein-Swanson (In re Klein-Swanson)*, 488 B.R. 628 (8th Cir. B.A.P. 2013); *accord In re Bronikowski*, 569 B.R. 48, 52 (Bankr. W.D. N. Car. 2017).

- A debtor who is a beneficiary of his wife's life insurance policy does not have a property interest as of the petition date in the policy, even a contingent interest, because the wife, who is the policy owner, has the right to designate a different beneficiary at any time. The beneficiary does not have a vested interest, only a "mere expectancy or … an inchoate right [in the policy] depending entirely upon the will of the insured." *Wornick v. Gaffney*, 544 F.3d 486 (2d Cir. 2008) (internal quotes omitted) (alteration in original).

These cases are instructive. When the Commonwealth's Legislative Assembly enacted Act 91-2006, the Commonwealth did not have an interest, even a contingent interest, in future SUT. Just like the case with the insurance proceeds and the employee bonus, the existence of future SUT was entirely dependent on discretionary event—spending in the Commonwealth by purchasers of goods or services. And just as the Commonwealth held no claim in 2007 against the merchants who had not yet incurred any SUT liability but might in the future become liable for future SUT, it had not even a contingent interest in future SUT, only a mere hope or expectancy.

No asset, no transfer. The SUT created after the petition date remains property of the Commonwealth.

The Bankruptcy Code and case law on the definition of "claim" also show that the "right to receive" future SUT did not exist as an asset at the time of the purported transfer. The holder of a claim has an asset. The holder's asset exists only if the claim exists. Until then, there is no right to payment, even a contingent one. Therefore, if the Commonwealth did not have a "claim"—a right to payment—against the merchants who might become liable to the Commonwealth for future SUT, then the Commonwealth did not have an asset that it could transfer to COFINA.

Nonbankruptcy law often does not recognize the existence of a claim until contingencies have been resolved. *See, e.g., Blum v. Good Humor Corp.,* 57 A.D.2d 911, 394 N.Y.S.2d 894, 896 (N.Y.App.Div.1977); *Taca International Airlines, S.A. v. Rolls Royce of England, Ltd.,* 47 Misc.2d 771, 263 N.Y.S.2d 269, 272 (N.Y.Sup.Ct.1965) (claim for contribution or indemnification does not accrue at the time of the commission of the underlying act, but rather at the time of the payment of the judgment flowing from the act).

Bankruptcy law recognizes a claim even if the holder's right to payment is contingent. The Bankruptcy Code uses the broadest possible definition of "claim:"

> "a right to payment, whether or not such right is … liquidated, unliquidated, fixed, contingent, matured, [or] unmatured …." 11 U.S.C. § 101(5)(A).

The legislative history says, "the definition … adopts an even broader definition of claim than is found in the present debtor rehabilitation chapter.… By this broadest possible definition … all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case." H.R. Rept. 95-595, 95th Cong., 1st Sess. 309 (1977). The Supreme Court recognized the definition's breadth:

18

We have previously explained that Congress intended by this language to adopt the broadest available definition of "claim." See *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U. S. 552, 558, 563-564 (1990); see also *Ohio v. Kovacs*, 469 U. S. 274, 279 (1985). In *Davenport*, we concluded that "'right to payment' [means] nothing more nor less than an enforceable obligation ...." 495 U. S., at 559.

*Johnson v. Home State Bank*, 501 U.S. 78, 83, 111 S. Ct. 2150 (1991) (footnote omitted). As the Third Circuit acknowledged, "a 'claim' can exist under the Code before a right to payment exists under state law." *Grossman's, Inc. v. Van Brunt (In re Grossman's, Inc.)*, 607 F.3d 114, 121 (3d Cir. 2010) (internal citations omitted).

"However, the broad definition of claim is not boundless. The fact that an entity may have a claim in the future does not mean that the entity has a claim" today. 2 COLLIER ON BANKRUPTCY ¶ 101.05[1]. If the contingency whose occurrence would give rise to the right to payment is too remote, the claim does not yet exist. Because the Bankruptcy Code's definition of "claim" is "the broadest possible," a potential right that does not become a claim under the Bankruptcy Code's definition does not become a claim under any other definition, measure, or analysis.

Case law governing when a claim exists for purposes of the Bankruptcy Code has developed four principal tests for when a contingent or future claim comes into existence. *U.S. Pipe & Foundry Co. v. Adams (In re U.S. Pipe & Foundry Co.)*, 577 B.R. 916, 920–21 (Bankr. M.D. Fla. 2017).

- The "state law accrual" test determines when a claim arises based on state law. *Avellino & Bienes v. M. Frenville Co., Inc. (In re M. Frenville Co., Inc.)*, 744 F.2d 332 (3rd Cir. 1984), *overruled by In re Grossman's, Inc.*, 607 F.3d 114 (3d Cir. 2010).

- The "conduct" test looks to the debtor's conduct to determine when the claim arises, whether or not the injury resulting from the debtor's conduct has manifested itself as of the petition date. *Grady v. A.H. Robbins Co. (In re A.H. Robbins Co.)*, 839 F.2d 198 (4th Cir. 1988).

- The "prepetition relationship" test requires not only the debtor's conduct but also a relationship between the debtor and the holder of the claim. *In re Piper Aircraft Corp.*, 162 B.R. 619, 624-26 (Bankr. S.D. Fla. 1994), *aff'd as modified sub*

19

*nom. Epstein v. Official Comm. of Unsecured Claimants of Estate of Piper Aircraft Corp.*, 58 F.3d 1573 (11th Cir. 1995).

- The "fair contemplation" test, originally developed to deal with future environmental regulatory claims, finds a claim has arisen only once the claim is in the fair contemplation of the parties. *In re Nat'l Gypsum Co.*, 139 B.R. 397, 405-06 (N.D. Tex. 1992) (finding that future response costs and future natural resource damage costs are "claims" subject to discharge, if the costs from the debtor's prepetition conduct could have been "fairly" contemplated at the time of the debtor's bankruptcy); *Calif. Dept. of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 930–31 (9th Cir. 1993).

Whichever test applies, the "cause of action [need not be] ripe for suit outside of bankruptcy in order for it to [be] a pre-petition claim for purposes of the Code." *In re Nat'l Gypsum Co.*, 139 B.R. at 405.

These decisions arise almost exclusively in the context of determining the allowability or dischargeability of tort or environmental claims against a Bankruptcy Code debtor. But they provide a means for determining, under the "broadest possible" definition, when a claim exists. Whichever test applies, SUT to be incurred and collected in the future does not give rise to a claim for SUT against a merchant, by either the Commonwealth or COFINA, until the merchant makes the sale.

No claim, no asset; no asset, no transfer of the "right to receive" future SUT. The SUT created after the petition date remains property of the Commonwealth.

## III. The Legislative Assembly's Treatment Of Future SUT Shows Future SUT Was Not Transferred To COFINA.

Whether or not the Legislative Assembly could have transferred ownership of future SUT to COFINA, its actions show it did not intend to transfer ownership. The Legislative Assembly retained express and implied control over future SUT, which is inconsistent with a transfer of ownership. Section 5(c) of Act 91-2006 retains in the Legislative Assembly, as the Puerto Rico Constitution requires, "the rights or powers of the corresponding officials of the Commonwealth

of Puerto Rico to levy, maintain, charge or collect taxes and other income" and does not "limit the power of the Commonwealth … to limit or restrain the nature or the amount of such taxes or other revenues."[54] Consistent with the Commonwealth's full reservation of rights, it has increased,[55] decreased,[56] and modified[57] future SUT in a way that is inconsistent with ownership by COFINA. The Commonwealth never intended to and never did transfer ownership of future SUT to COFINA.

## CONCLUSION

For the foregoing reasons, as well as the reasons stated in the Plaintiff's motion for summary judgment, this Court should issue its judgment that future SUT is property of the Commonwealth of Puerto Rico, not of COFINA.

*[Signature page follows.]*

---

[54] Act 91-2006, § 5(c) (as amended by Act 18-2009) § 4).

[55] Act 56-2007 § 4 (amending Act 91-2006 § 4(e) and renumbering it as § 5(e)) (increasing Fixed Amount); Act 7-2009 § 50 (amending Act 91-2006 § 3(a)) (increase from 1% to 2.75%); *id.* (amending Act 91-2006 § 3(b)) (increasing Fixed Amount); *see* Act 116-2013 § 2 (amending Act 91-2006 § 3(a)(i)) (increasing SUT rate); Act 18-2014 §§ 2, 3( amending §§ 4020.01, 4020.02 of Act 1-2011) (increasing SUT rate); Act 72-2015 §§ 20, 21 (amending §§ 4020.01, 4020.02 of Act 1-2011) (increasing SUT rate).

[56] Act 72-2014 § 1; *see id.* Statement of Motives, second unnumbered paragraph (revoking prior increase); Act 54-2016 (repealing prior increase in SUT rate).

[57] Act 56-2007 § 1 (amending Act 91-2006 § 2) (effecting transfer of SUT); Act 84-2016 § 3 (amending Act 91-2006§ 3) (modifying formula for required FIA deposits); Compliance Act, Act 26-2017 § 4.03 (permitting Governor to use COFINA funds).

Dated: February 21, 2018                          Respectfully submitted,


JENNER & BLOCK LLP                                BENNAZAR, GARCÍA & MILIÁN, C.S.P.


By:                                               By:


/s/ *Robert Gordon*                               /s/ *A.J. Bennazar-Zequeira*


Robert Gordon (admitted *pro hac vice*)           A.J. Bennazar-Zequeira
Richard Levin (admitted *pro hac vice*)           Edificio Union Plaza
919 Third Ave New York, NY 10022-3908             PH-A piso 18
rgordon@jenner.com                                Avenida Ponce de León #416
rlevin@jenner.com                                 Hato Rey, San Juan
212-891-1600 (telephone)                          Puerto Rico 00918
212-891-1699 (facsimile)                          ajb@bennazar.org
                                                  787-754-9191 (telephone)
Catherine Steege (admitted *pro hac vice*)        787-764-3101 (facsimile)
Melissa Root (admitted *pro hac vice*)
353 N. Clark Street Chicago, IL 60654             *Counsel for The Official Committee*
csteege@jenner.com                                *of Retired Employees of Puerto Rico*
mroot@jenner.com
312-222-9350 (telephone)
312-239-5199 (facsimile)

120911.10