# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

*Caption Continued on Following Page*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

DX-QQ

| | |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>    v.<br><br>BETTINA WHYTE,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>    Defendant. | PROMESA<br>Title III<br><br>No. 17-00257 (LTS) |

**AMBAC ASSURANCE CORPORATION AND NATIONAL PUBLIC FINANCE CORPORATION'S (I) LIMITED OBJECTION TO MOTION OF THE COFINA AGENT TO CERTIFY QUESTIONS TO THE SUPREME COURT OF PUERTO RICO, AND (II) CROSS-MOTION, IN THE ALTERNATIVE, TO CERTIFY ALTERNATIVE <u>QUESTIONS TO THE SUPREME COURT OF PUERTO RICO</u>**

    Ambac Assurance Corporation and National Public Finance Corporation (together, the "<u>Objectors</u>") hereby submit this Limited Objection to the Motion of the COFINA Agent to Certify Questions Under Puerto Rico Law to the Supreme Court of Puerto Rico (Dkt. 329) (the "<u>Motion</u>").[2] In the alternative, Objectors further submit this Cross-Motion for Certification of Alternative Questions to the Supreme Court of Puerto Rico (the "<u>Cross-Motion</u>"). In support of their Limited Objection and Cross-Motion, Objectors state as follows:

---

[2] Terms used but not defined herein shall have the meaning ascribed to them in the Motion.

- 2 -

**PRELIMINARY STATEMENT**

1. The Court should not certify any questions in this proceeding to the Supreme Court of Puerto Rico because this is a straightforward case. Certification is appropriate only for close, substantial, and novel questions of state law, where it is not reasonably clear how the state court would rule. At issue in this adversary proceeding is whether COFINA's enabling legislation ("Act 91"), immediately granted COFINA ownership of a dedicated stream of sales and use tax (the "Pledged Sales Tax"). This dispute can and should be resolved within the four corners of Act 91 and, as the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") has itself recognized, the plain text of that legislation provides that COFINA, and not the Commonwealth, owns the Pledged Sales Tax. The objections raised by the Commonwealth Agent under the Puerto Rico Constitution are irrelevant because those provisions only concern the Commonwealth's property, and the Pledged Sales Tax does not belong to the Commonwealth. Although constitutional issues raised by the Commonwealth Agent may be novel, they are neither substantial nor close. The Court should therefore deny certification.

2. If the Court *does* determine that the constitutionality of Act 91 is in serious question, however, it should certify the issues to the Supreme Court of Puerto Rico. For a federal court to determine that a territorial statute violates the territorial constitution raises serious federalism and comity concerns. The Court should not strike down Act 91 before giving the Supreme Court of Puerto Rico an opportunity to interpret the relevant statutory and constitutional provisions. In the event the Court determines that certification is necessary, the Objectors move, in the alternative, for an order certifying questions better formulated to resolve the issues in this case.

3. Finally, the Objectors note that the Oversight Board's contention that federal law issues are integral to this proceeding is incorrect. All federal law claims have been dismissed as

Case:17-03283-LTS Doc#:421 Filed:04/03/18 Entered:04/03/18 22:11:33 Desc:Main
Document Page 4 of 18

out-of-scope, and the Oversight Board's preemption theory has not been raised by any party. Furthermore, PROMESA § 303 protects the Commonwealth's power to transfer property to COFINA.

## LIMITED OBJECTION AND CROSS-MOTION

**I.  THE COURT NEED NOT CERTIFY ISSUES OF PUERTO RICO LAW IN THIS DISPUTE BECAUSE THE OUTCOME IS CLEAR: COFINA OWNS THE PLEDGED SALES TAX**

4. The purpose of this adversary proceeding is to determine whether COFINA's enabling legislation, Act 91, transfers ownership of Pledged Sales Tax revenue to COFINA. As the Oversight Board concedes, "[t]he law provides ***the Commonwealth does not own certain taxes*** even though the Commonwealth legislates the taxes, collects the taxes, and can repeal the taxes." OB Opp. ¶ 7 (Dkt. 337) (emphasis added). As explained in the COFINA Agent's summary judgment brief (Dkt. 317), the plain text of Act 91 requires that conclusion, rendering moot the various ancillary issues the Commonwealth-aligned parties seek to inject into this proceeding. Nevertheless, the COFINA Agent now asks for the issue to be certified to the Supreme Court of Puerto Rico. The Court need not accept this invitation, however, because although the questions posed by this case may be novel, the correct result is clear.

5. The First Circuit has explained that "[w]hen state law is sufficiently clear . . . to allow a federal court to predict its course, certification is both inappropriate and an unwarranted burden on the state court." *Hugel v. Milberg, Weiss, Bershad, Hynes & Lerach, LLP*, 175 F.3d 14, 18 (1st Cir. 1999) (internal quotations and citation omitted). Before a federal court considers whether to exercise its discretion to certify, it must "undertake [its] own prediction of state law for [it] may conclude that the course the state court would take is reasonably clear." *Nieves v. Univ. of Puerto Rico*, 7 F.3d 270, 275 (1st Cir. 1993) (internal citations and brackets omitted). The First Circuit has frequently denied as unnecessary requests to certify questions to state supreme courts

where it is "reasonably clear" what conclusion a state court would reach. *See id.* (declining to certify issue arising under Puerto Rico constitution); *Manchester Sch. Dist. v. Crisman*, 306 F.3d 1, 14 (1st Cir. 2002) (rejecting certification where "[t]he state law at issue is not ambiguous"); *In re Citigroup, Inc.*, 535 F.3d 45, 62 (1st Cir. 2008) (same). Certification is not appropriate unless the question of state law is "close, substantial, and unresolved." *Morales v. Vega*, 604 F.2d 730, 732 (1st Cir. 1979).

6. Federal courts are not limited to applying on-point precedent from state courts when they "can predict how the local courts would decide the matter if faced with a similar case." *In re San Juan Dupont Plaza Hotel Fire Litig.*, 687 F. Supp. 716, 735 n.9 (D.P.R. 1988). In determining whether the likely outcome in state court is reasonably clear, federal courts look to "analogous state court decisions, persuasive adjudications by courts of sister states, learned treatises, and public policy considerations identified in state decisional law." *Cintron v. United States*, 991 F. Supp. 41, 43 (D.P.R. 1998) (quoting *Rodriguez-Suris v. Montesinos*, 123 F.3d 10, 13 (1st Cir. 1997)); *see, e.g.*, *Armacost v. Amica Mutual Insurance Co.*, 11 F.3d 267, 269 (1st Cir. 1993) (declining to certify "a question of first impression involving the interpretation of a state statute" because the statutory text, purpose, and background case law were clear enough that "certification would be a waste of judicial resources").

7. This is hardly surprising. Federal courts are frequently asked, and well-equipped, to interpret and apply state law.[3] That is particularly true in Puerto Rico, a civil code jurisdiction where the foundational principle of statutory construction is itself a matter of statute. *See* 31 L.P.R.A. § 14 ("When a law is clear and free from all ambiguity, the letter of the same shall not

---

[3] Indeed, federal diversity jurisdiction *requires* federal courts to decide issues of state law. *See* 28 U.S.C. § 1332; *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79-80 (requiring federal courts to interpret and apply state law).

- 5 -

be disregarded, under the pretext of fulfilling the spirit thereof."). Because of federal district and circuit courts' ability to resolve state law issues, even within the federal court system, the U.S. Supreme Court frequently defers to lower courts' interpretations of the law of the state within which the court resides. *See Chardon v. Fumero Soto*, 462 U.S. 650, 654, n.5 (1983) ("[I]n dealing with issues of state law that enter into judgments of federal courts, we are hesitant to overrule decisions by federal courts skilled in the law of particular states unless their conclusions are shown to be unreasonable") (internal quotations and citations omitted).

8.  This case turns on a straightforward issue of statutory interpretation. Act 91 provides that the Fondo de Interés Apremiante ("FIA"), the funds in the FIA, and "all the future funds that must be deposited in FIA," "are hereby transferred to, and shall be the property of COFINA." 13 L.P.R.A. § 12. Significantly, the Oversight Board, which acts as agent for both the Commonwealth and COFINA, does not dispute that, under Puerto Rico law, COFINA owns the Pledged Sales Tax. OB Opp. ¶ 7 (Dkt. 337). Although the Oversight Board perplexingly claims this dispute turns on federal law (which, as discussed *infra*, is incorrect), its concession, taken together with the plain text of Act 91, makes clear the Commonwealth immediately transferred ownership of the Pledged Sales Tax to COFINA upon the enactment of Act 91. The COFINA Agent's motion for certification should therefore be denied. *See Armacost*, 11 F.3d at 269.

9.  Although the Commonwealth Agent raises objections based on the Puerto Rico Constitution, these arguments are ephemeral. The Commonwealth Agent argues that Act 91 violates the balanced budget, debt maturity, and available resources provisions of the Puerto Rico Constitution. But these provisions do not prohibit the transfer of Pledged Sales Tax to COFINA. Each applies only to the property of the Commonwealth. Because the plain meaning of Act 91 is that the Pledged Sales Tax is COFINA's property, and not the Commonwealth's, these

constitutional provisions are simply inapplicable to the present dispute. Furthermore, the Commonwealth Agent's balanced budget and debt maturity arguments have been rejected by the courts of other states with similar constitutional provisions. *See* COFINA Agent's SJ Br. (Dkt. 317) at 20 (collecting cases); *Cintron*, 991 F. Supp. at 43 (court may consider decisions from other states in determining whether certification is necessary).

10. Because the questions the Commonwealth Agent raises under the Puerto Rico Constitution are neither "close" nor "substantial," certification is not appropriate. *See Morales*, 604 F.2d at 732.

## II. IF THE COURT DETERMINES THAT THE CONSTITUTIONALITY OF ACT 91 IS SERIOUSLY IN QUESTION, THE COURT SHOULD CERTIFY QUESTIONS AS FORMULATED BY THE OBJECTORS

11. For the reasons set forth above, the Court need not certify the statutory or constitutional issues in this case because Puerto Rico law is sufficiently clear to allow this Court to decide them. If, however, the Court should decide that the constitutionality of Act 91 is seriously in question, it should certify the constitutional issues to the Supreme Court of Puerto Rico in the formulation set out below.

12. Striking down a territorial statute under the territorial constitution raises unique federalism and comity concerns not present when a federal court upholds a local statute against challenge. These concerns point towards certification. "Given the sensitivity of such matters and how closely they sound to the heart of a state's self-government, a federal court should not purport to hold that a state statute violates the state constitution, except as an unavoidable matter of last resort. Federalism and comity require at least that much deference to state courts on ultrasensitive state law matters." *Blue Cross & Blue Shield of Ala., Inc. v. Nielsen*, 116 F.3d 1406, 1413 (11th Cir. 1997), *certified question answered*, 714 So. 2d 293 (Ala. 1998). This is especially true with regard to Puerto Rico law, where the Supreme Court has held that the mix of Spanish and British

legal heritage requires particular deference to Puerto Rico courts before determining that a territorial law is unconstitutional. *See Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 43 (1970).

13. If the Court determines that certification is necessary on these grounds, however, it should not adopt the COFINA Agent's proposed questions. The COFINA Agent's questions are vague, and are not directed to the actual theories presented by the parties in this dispute. The use of a state's certification procedure "rests on the sound discretion of the federal court." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974). That discretion includes the authority to certify questions *sua sponte* if necessary, unbound by a party's motion or request. *Maine Drilling & Blasting, Inc. v. Ins. Co. of N. Am.*, 34 F.3d 1, 3 (1st Cir. 1994) ("Although neither party has requested certification in this case, we do certify, on occasion, questions to a state's highest court upon our own motion when we feel it is appropriate.") The Court, therefore, has the discretion to, and should adopt the questions as formulated by the Objectors because they better align the legal issues as pled with the question of "whether the Commonwealth, on the one hand, or COFINA, on the other, owns the [Pledged Sales Tax]." (Scope Order (Dkt. 167) at 5.)[4]

14. The Objectors therefore respectfully request that, if the Court elects to certify this dispute, it enter an order, substantially in the form attached hereto as Exhibit A, certifying the following questions to the Supreme Court of Puerto Rico:

> (1) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA where COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, is alleged to have issued bonds in violation Article VI, Section 2 of the Puerto Rico Constitution because such bonds are neither "direct obligations of the Commonwealth" nor "notes for the payment of which the full faith credit and taxing power of the Commonwealth shall be pledged"?

---

[4] Additionally, in its proposed order Objectors request that the Court inform the Supreme Court of Puerto Rico that the permitted intervenors are deemed "parties" to this proceeding under the operative agent stipulation and should be allowed to intervene in any subsequent state court action in the interest of comity.

- 8 -

(2) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA where COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, is alleged to have issued bonds in violation of Article VI, Section 7 of the Puerto Rico Constitution because such bond proceeds were used for payment of certain Commonwealth obligations?

(3) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA where COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, is alleged to have issued bonds in violation of Article VI, Section 8 of the Puerto Rico Constitution because such bonds are payable by the funds to be deposited in the FIA, which funds shall not be resources available to the Commonwealth of Puerto Rico?

(4) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, where it is alleged that COFINA's enabling legislation was enacted in violation of the Puerto Rico Constitution?

### III. FEDERAL ISSUES DO NOT PREDOMINATE IN THIS DISPUTE

15. In its opposition to the COFINA Agent's motion for expedited briefing, the Oversight Board acknowledges—and Objectors agree—that "[t]he law provides the Commonwealth does not own [the Pledged Sales Taxes]." OB Opp. ¶ 7 (Dkt. 337). As discussed above, the clarity of Puerto Rico law on this point is by itself sufficient ground not to certify. But the Oversight Board opposes certification for a different reason—because the proposed questions purportedly "involve matters of federal law." *Id.* ¶ 2. On this point, the Oversight Board is mistaken.

16. First, there are currently no federal law claims in this adversary proceeding. The Court determined that all federal law claims were out of scope, and dismissed them accordingly. *See* Scope Order (Dkt. 167) at 6. Only claims arising under Puerto Rico law remain. The Oversight Board's argument—that Act 91 is preempted by PROMESA—has not been put forward by any party and is not before the Court.

Case:17-03283-LTS Doc#:4217 Filed:04/03/18 Entered:04/03/18 22:11:55 Desc: Main Document Q Page 10 of 18

17. Second, PROMESA § 306(b) plainly does not preempt Act 91 because nothing in the text of Section 306(b) conflicts with the territorial law. As a general matter, federal law will preempt state law only to the extent the two conflict, absent an expression of Congress's "clear intent" to preempt an entire field of law.[5] Far from preempting preexisting Commonwealth law, numerous key provisions throughout PROMESA make clear that Congress explicitly intended the opposite—Congress intended that Commonwealth law would be incorporated into, and play a central role in, Puerto Rico's restructuring proceedings. For example, section 201 of PROMESA requires the certified Fiscal Plan to preserve the Commonwealth's preexisting statutory and constitutional priorities. *See* 48 U.S.C. § 2141(b)(1)(A), (M), (N). In addition, section 407 of PROMESA prohibits—for the express "[p]rotection of [c]reditors"—the "property of any territorial instrumentality of Puerto Rico [from being] transferred in violation of applicable [Commonwealth] law under which any creditor has a valid pledge of, security interest in, or lien on such property," or "which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors . . . ." 48 U.S.C. § 2195(a).

18. Thus, there is no serious dispute about "whether the COFINA legislation is an idiosyncratic law frustrating PROMESA policy." OB Opp. ¶ 7. Act 91 is covered by PROMESA § 303, which states that Title III does not "limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality[.]" Section 303 includes only three exceptions, none of which apply to Act 91. Accordingly,

---

[5] *See Franklin Cal. Tax-Free Tr. v. Puerto Rico*, 805 F.3d 322, 342 (1st Cir. 2015) ("field preemption is generally disfavored absent clear intent" from Congress), *aff'd*, 136 S. Ct. 1938 (2016).

Case:17-00257-LTS Doc#:421 Filed:04/03/18 Entered:04/03/18 22:11:55 Desc: Main
Document Page 11 of 14

PROMESA does not interfere with the Commonwealth's exercise of legislative power to transfer the Pledged Sales Tax to COFINA.

[*Remainder of page intentionally left blank*]

| | |
|---|---|
| Dated: April 3, 2018<br>San Juan, Puerto Rico | **FERRAIUOLI LLC**<br><br>By: /s/ *Roberto Cámara-Fuertes*<br>Roberto Cámara-Fuertes (USDC-PR No. 219002)<br>Sonia Colón (USDC-PR No. 213809)<br>221 Ponce de León Avenue, 5th Floor<br>San Juan, PR 00917<br>Telephone: (787) 766-7000<br>Facsimile: (787) 766-7001<br>Email: rcamara@ferraiuoli.com<br>      scolon@ferraiuoli.com<br><br>**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**<br><br>By: /s/ *Dennis F. Dunne*<br>Dennis F. Dunne<br>Andrew M. Leblanc<br>Atara Miller<br>Grant R. Mainland<br>(admitted *pro hac vice*)<br>28 Liberty Street<br>New York, NY 10005<br>Telephone: (212) 530-5770<br>Facsimile: (212) 822-5770<br>Email: ddunne@milbank.com<br>      aleblanc@milbank.com<br>      amiller@milbank.com<br>      gmainland@milbank.com<br><br>***Attorneys for Ambac Assurance Corporation*** |

**ADSUAR MUÑOZ GOYCO SEDA & PÉREZ-OCHOA, PSC, P.S.C.**

*/s/ Eric Pérez-Ochoa*
Eric Pérez-Ochoa (USDC-PR 206314)
Alexandra Casellas-Cabrera (USDC-PR 301010)
Lourdes Arroyo Portela (USDC-PR 226501)
208 Ponce de León Avenue, Suite 1600
San Juan, Puerto Rico 00936
(787) 756-9000 (Phone)
(787) 756-9010 (Fax)
epo@amgprlaw.com
acasellas@amgprlaw.com
larroyo@amgprlaw.com


**WEIL, GOTSHAL & MANGES LLP**

*/s/ Marcia Goldstein*
Marcia Goldstein
Jonathan D. Polkes
Gregory Silbert
Kelly DiBlasi
Jared R. Friedmann
Gabriel A. Morgan
767 Fifth Avenue
New York, NY 10153
(212) 310-8000 (Phone)
(212) 310-8007 (Fax)
marcia.goldstein@weil.com
jonathan.polkes@weil.com
gregory.silbert@weil.com
kelly.diblasi@weil.com
jared.friedmann@weil.com
gabriel.morgan@weil.com

***Attorneys for National Public Finance Guarantee Corporation***

# CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com

# Exhibit A

# Proposed Order

DX-QQ

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| *In re* <br><br> THE FINANCIAL OVERSIGHT AND <br> MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, et al. <br><br> Debtors.[1] | PROMESA <br> Title III <br><br> No. 17 BK 3283-LTS <br><br> (Jointly Administered) |

*Caption Continued on Following Page*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

|  |  |
|---|---|
| THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>    Plaintiff,<br><br>    v.<br><br>BETTINA WHYTE,<br><br>    as agent of<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>    Defendant. | PROMESA<br>Title III<br><br>No. 17-00257 (LTS) |

**[PROPOSED] ORDER GRANTING ASSURANCE CORPORATION AND NATIONAL PUBLIC FINANCE CORPORATION'S CROSS-MOTION, IN THE ALTERNATIVE, TO CERTIFY ALTERNATIVE QUESTIONS TO THE SUPREME COURT OF PUERTO RICO**

Upon consideration of Ambac Assurance Corporation and National Public Finance Corporation's Cross-Motion, in the Alternative, for Certification of Alternative Questions to the Supreme Court of Puerto Rico (the "Cross-Motion"), filed April 3, 2018, it is HEREBY ORDERED that:

1. The Cross-Motion is granted.

2. Ambac Assurance Corporation and National Public Finance Corporation are parties to the above-captioned proceeding.

3. The Court hereby certifies the following questions to the Supreme Court of Puerto Rico:

(1) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA where COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, is alleged to have issued bonds in violation Article VI, Section 2 of the Puerto Rico Constitution because such bonds are neither "direct obligations of the Commonwealth" nor "notes for the payment of which the full faith credit and taxing power of the Commonwealth shall be pledged"?

(2) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA where COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, is alleged to have issued bonds in violation of Article VI, Section 7 of the Puerto Rico Constitution because such bond proceeds were used for payment of certain Commonwealth obligations?

(3) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA where COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, is alleged to have issued bonds in violation of Article VI, Section 8 of the Puerto Rico Constitution because such bonds are payable by the funds to be deposited in the FIA, which funds shall not be resources available to the Commonwealth of Puerto Rico?

(4) Did COFINA's enabling legislation effectuate a valid transfer of ownership of the Pledged Sales Tax to COFINA, a corporate and political entity independent and separate from the Commonwealth of Puerto Rico, where it is alleged that COFINA's enabling legislation was enacted in violation of the Puerto Rico Constitution?

4. The Clerk of Court shall transmit this certification to the Clerk of the Supreme Court of Puerto Rico pursuant to P.R. LAWS ANN. tit. 4, app. XXI-A, 25.


Dated: _____, ____, 2018

                                                                _____
                                                                 LAURA TAYLOR SWAIN
                                                                 United States District Judge