# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------- x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.,*

        Debtors.[1]

---------------------------------------------------------------- x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE COMMONWEALTH OF
PUERTO RICO,

        as agent of

THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO,

        Plaintiff,

v.

BETTINA WHYTE,

        as agent of

THE FINANCIAL OVERSIGHT AND MANAGEMENT

|  |
|---|
| PROMESA |
| Title III |
| Case No. 17-BK-03283 (LTS) |
| (Jointly Administered) |
| Adv. Proc. No. 17-00257 (LTS) |

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

BOARD FOR PUERTO RICO,           :

          :

        as representative of          :

          :

THE PUERTO RICO SALES TAX FINANCING     :
CORPORATION,           :

          :

        Defendant.          :

          :

---------------------------------------------------------------------- x

**OMNIBUS OBJECTION OF COMMONWEALTH AGENT TO (A) COFINA AGENT'S
MOTION TO CERTIFY QUESTIONS UNDER PUERTO RICO LAW TO THE
SUPREME COURT OF PUERTO RICO [DOCKET NO. 329]; (B) MUTUAL FUND
GROUP AND PUERTO RICO FUNDS' MOTION TO CERTIFY QUESTIONS OF LAW
TO THE SUPREME COURT OF PUERTO RICO [DOCKET NO. 331]; (C)
STATEMENT OF THE COFINA SENIOR BONDHOLDERS' COALITION IN
SUPPORT OF, AND JOINDER TO, THE MOTION OF THE COFINA AGENT TO
CERTIFY QUESTIONS UNDER PUERTO RICO LAW TO SUPREME COURT OF
PUERTO RICO [DOCKET NO. 332]; AND (D) AMBAC ASSURANCE CORPORATION
AND NATIONAL PUBLIC FINANCE CORPORATION'S (I) LIMITED OBJECTION
TO MOTION OF COFINA AGENT TO CERTIFY QUESTIONS TO THE SUPREME
COURT OF PUERTO RICO AND (II) CROSS-MOTION, IN THE ALTERNATIVE, TO
CERTIFY ALTERNATIVE QUESTIONS TO THE SUPREME COURT OF PUERTO
RICO [DOCKET NO. 421]**

# TABLE OF CONTENTS

Page

I.      This Court Has Previously Held Certification of Local Law Questions Unwarranted on Similar Facts ...........................................................................5

II.     Certification Would Be a Waste of Party and Judicial Resources .....................7

III.    Answers to Questions Posed by Movants Will Not Terminate Entire Dispute and Thus Are Not Appropriate for Certification ......................................................11

        A.      The Question Whether SUT Revenue Stream Forms Part of Commonwealth's Property Requires Considerations of Federal Law .................12

        B.      Supreme Court of Puerto Rico Will Not Accept Certified Questions When Answering Them Will Not Resolve Entire Dispute ...............................................14

IV.     Answers Given by This Court to Questions At Issue Are Unlikely to Recur for Future Litigants .........................................................................................15

V.      Serious Doubt Exists as to Whether Committee Lacks Authority to Litigate on Behalf of Oversight Board Outside This Court .................................................16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*In re 229 Main St. Ltd. P'ship*,
262 F.3d 1 (1st Cir. 2001) .................................................................................. 12

*Board of Trade of City of Chicago v. Johnson*,
264 U.S. 1 (1924) ............................................................................................... 13

*Brown v. Argosy Gaming Co., L.P.*,
384 F.3d 413 (7th Cir. 2004) .............................................................................. 15

*Brown v. Crown Equip. Corp.*,
501 F.3d 75 (1st Cir. 2007)................................................................................. 15

*In re Burgess*,
234 B.R. 793 (D. Nev. 1999) .............................................................................. 13

*Cantwell v. Univ. of Massachusetts*,
551 F.2d 879 (1st Cir. 1977) .............................................................................. 11

*In re Chardon, LLC*,
519 B.R. 211 (Bankr. N.D. Ill. 2014) ................................................................ 13

*Cintron v. United States*,
991 F. Supp. 41 (D.P.R. 1998) ....................................................................... 7, 14

*In re Citigroup, Inc., Capital Accumulation Plan Litig.*,
652 F.3d 88 (1st Cir. 2011)................................................................................... 7

*City of Rome v. Hotels.com, L.P.*,
549 F. App'x 896 (11th Cir. 2013)........................................................................ 7

*Collazo-Santiago v. Toyota Motor Corp.*,
937 F. Supp. 134 (D.P.R. 1996), *aff'd*, 149 F.3d 23 (1st Cir. 1998) .................. 3, 11

*In re Colonial Realty Inv. Co.*,
516 F.2d 154 (1st Cir. 1975)............................................................................... 12

*Colorado River Water Cons. Dist. v. United States*,
424 U.S. 800 (1976) ............................................................................................. 5

*In re Commodore Business Machines, Inc.*,
180 B.R. 72 (Bankr. S.D.N.Y. 1995) ................................................................. 13

*Compass Bank v. King, Griffin & Adamson P.C.*,
388 F.3d 504 (5th Cir. 2004) ............................................................................... 5

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Copier By & Through Lindsey v. Smith & Wesson Corp.*,
138 F.3d 833 (10th Cir. 1998) ................................................................... 5

*Diaz v. Jiten Hotel Mgmt., Inc.*,
671 F.3d 78 (1st Cir. 2012) ....................................................................... 4

*Escareno v. Noltina Crucible & Refractory Corp.*,
139 F.3d 1456 (11th Cir. 1998) ................................................................ 5

*Fischer v. Bar Harbor Banking & Tr. Co.*,
857 F.2d 4 (1st Cir. 1988) ......................................................................... 4

*Matter of Gladstone Glen*,
628 F.2d 1015 (7th Cir. 1980) ................................................................. 13

*Gonzalez-Caban v JR Seafood*,
2017 TSPR 187 (*certified by district court on October 1st 2015,
decided on Dec. 1 2017*) ........................................................................... 9

*Hanlon v. Town of Milton*,
186 F.3d 831 (7th Cir. 1999), *certified question answered*, 2000 WI 61,
235 Wis. 2d 597, 612 N.W.2d 44186 ...................................................... 15

*Hatfield v. Bishop Clarkson Mem'l Hosp.*,
679 F.2d 1258 (8th Cir. 1982), *on reh'g sub nom.*
*Hatfield, by Hatfield v. Bishop Clarkson Mem'l Hosp.*, 701 F.2d 1266
(8th Cir. 1983) ....................................................................................... 7, 8

*Lehman Bros. v. Schein*,
416 U.S. 386 (1974) ................................................................................... 5

*Lex Claims, LLC v. Alejandro Garcia Padilla, et al.*
No. 16-02374 (FAB) (D.P.R. 2016) ........................................................... 6

*Meredith v. City of Winter Haven*,
320 U.S. 228 (1943) ................................................................................... 5

*Nat'l Pharmacies, Inc. v. Feliciano-de-Melecio*,
221 F.3d 235 (1st Cir. 2000) ............................................................... 5, 14

*In re Nejberger*,
934 F.2d 1300 (3d Cir. 1991) ............................................................ 12, 13

*Nieves v. Univ. of Puerto Rico*,
7 F.3d 270 (1st Cir. 1993) ......................................................................... 8

**TABLE OF AUTHORITIES**

*(continued)*

Page(s)

*Quilez Velar v Ox Bodies*,
2017 TSPR 165 (*certified by First Circuit on May 9th, 2016, decided on
August 31, 2017*) ................................................................................................... 9

*Soto-Rios v. Banco Popular de Puerto Rico*,
662 F.3d 112 (1st Cir. 2011) ................................................................................ 12

*State Farm Mutual Automobile Insurance Co. v. Pate*,
275 F.3d 666 (7th Cir.2001) .................................................................................. 4

*In re Terwilliger's Catering Plus, Inc.*,
911 F.2d 1168 (6th Cir. 1990) ............................................................................. 13

*In re The Ground Round, Inc.*,
482 F.3d 15 (1st Cir. 2007).............................................................................. 3, 12

*Tunick v. Safir*,
209 F.3d 67 (2d Cir. 2000) ................................................................................... 15

*Watchtower Bible Tract Soc. of New York, Inc. v. Municipality of Santa Isabel*,
No. CIV. 04-1452 GAG, 2013 WL 2554879 (D.P.R. June 11, 2013) ......................... 3, 11, 15

**Statutes**

11 U.S.C §1109(b)...........................................................................................2, 16

Bankruptcy Code § 1123(a)(5) .............................................................................. 12

PROMESA
§ 1123(a)(5) ............................................................................................... 12
§ 301(c)(5) .................................................................................................. 12

**Other Authorities**

Fed. R. Bankr.
R. 1001 ........................................................................................................ 8
R. 7024 ....................................................................................................2, 16

Puerto Rico Constitution ......................................................................................... 7

Puerto Rico Supreme Court Rule
R. 25 ....................................................................................................*passim*
R. 25(b).......................................................................................................11

Rules of the Supreme Court of Puerto Rico (1996) (available at
http://www.lexjuris.com/LEXJURIS/tribunales/lexreglas%20supremo%20ingl
es6.htm; last visited on March 13, 2018).................................................................2

**TABLE OF AUTHORITIES**

(*continued*)

**Page(s)**

United States Constitution .................................................................................................4

To the Honorable United States District Court Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all title III Debtors (other than COFINA), as the "Commonwealth Agent" with respect to the "Commonwealth-COFINA Dispute," as defined in the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute*, dated August 10, 2017 [Docket No. 996 in Case No. 17-03283 (LTS)] (the "Commonwealth-COFINA Dispute Stipulation"), hereby files this omnibus objection (the "Objection") to (a) the *Motion and Incorporated Memorandum of Law of the COFINA Agent to Certify Questions Under Puerto Rico Law to the Supreme Court of Puerto Rico*, dated February 26, 2018 [Docket No. 329 in Adv. Proc. No. 17-00257 (LTS)], (b) the *Mutual Fund Group and Puerto Rico Funds' Motion to Certify Questions of Law to the Supreme Court of Puerto Rico*, dated February 26, 2018 [Docket No. 331 in Adv. Proc. No. 17-00257 (LTS)]; (c) the *Statement of the COFINA Senior Bondholders' Coalition in Support of, and Joinder to, the Motion of the COFINA Agent to Certify Questions Under Puerto Rico Law to the Supreme Court of Puerto Rico*, dated February 26, 2018 [Docket No. 332 in Adv. Proc. No. 17-00257 (LTS)]; and (d) *AMBAC Assurance Corporation and National Public Finance Corporation's (i) Limited Objection to Motion of COFINA Agent to Certify Questions to the Supreme Court of Puerto Rico and (ii) Cross-Motion, in the Alternative, to Certify Alternative Questions to the Supreme Court of Puerto Rico*, dated April 3, 2018 [Docket No. 421 in Adv. Proc. No. 17-00257 (LTS)] (collectively, the "Certification Motions").  In support of this Objection, the Commonwealth Agent respectfully states as follows:

1

## PRELIMINARY STATEMENT

1.      Just six months ago, the COFINA Agent told this court that the entire COFINA-
Commonwealth dispute "should be—and will be—resolved by th[is] Court."[2]  Acting on that
representation, the COFINA Agent then asked this court for summary judgment on that dispute.

2.      Apparently, the COFINA Agent has had a dramatic, last minute change of heart.
She and the COFINA Senior Bondholders' Coalition, the Mutual Fund Group, the Puerto Rico
Funds and, with a bit more ambivalence, AMBAC Assurance Corporation ("AMBAC") and
National Public Finance Corporation ("NPFC") (collectively, the "Movants") have now asked
this court to duck several questions raised by their dispute with the Commonwealth Agent, and,
by extension, questions that are critical to the COFINA and Commonwealth title III cases.  More
specifically, they have asked this court to subcontract the important work of resolving certain
questions posed in this Adversary Proceeding to the Supreme Court of Puerto Rico.  Those
questions, however, do not meet the standards for certification established by Puerto Rico
Supreme Court Rule 25[3] on certification or by the applicable federal law, and the Certification
Motions should be denied on that basis, among others.  As explained below:

- The court has already expressed its views with regard to the questions posed by
the Certification Motions.  Almost a year ago, other litigants sought to certify
some of the same local law questions at issue here to the Supreme Court of
Puerto Rico, and this court properly rejected that request, concluding, among
other things, that "[t]he interests of judicial economy do not favor piecemeal
litigation of issues that are central to these Title III proceedings in a variety of

---

[2]     *Objection of Bettina M. Whyte, in her Capacity as Agent for the Puerto Rico Sales Tax Financing Corporation
to the Motions of Official Committee of Unsecured Creditors, in its Capacity as Agent for Commonwealth of
Puerto Rico (1) for Leave to Intervene under 11 U.S.C §1109(b) and/or Bankruptcy Rule 7024 and (2) For
Clarification of May 30, 2017 Interpleader Order* at 5 [Docket No. 375 in Adv. Proc. No. 17-00133 (LTS)] (the
"COFINA Agent's Objection to Leave to Intervene").

[3]     Rules of the Supreme Court of Puerto Rico (2011) (available at
http://www.ramajudicial.pr/leyes/supremo/Reglamento-Tribunal-Supremo.pdf; last visited on Apr. 11, 2018).
The Supreme Court's Rules are posted in Spanish; a certified translation of Rule 25 is appended as an exhibit to
the Opposition brief filed today by the Oversight Board.

courts, [and that the court] is fully capable of engaging [issues of Puerto Rico law] in an appropriate manner at an appropriate time . . . ."[4]

- Certification makes even less sense now, almost a year later. The summary judgment motions in this matter have been fully briefed and argued, including the local law issues Movants seek to certify, and those motions are ready for this court to decide whenever this court deems it appropriate. Moreover, as past history with the certification procedure has shown, deferring these questions to the Supreme Court of Puerto Rico (if it accepts them) could take two years or more. While the parties and this court are waiting, a resolution to the balance of the parties' dispute would be impossible, as would important aspects of the title III cases more broadly. This court is aware of the significant judicial and parties resources already expended in this Adversary Proceeding; adding to that expense serves no one's legitimate interests.

- Even if this court were to grant the Certification Motions, the Supreme Court of Puerto Rico is unlikely to accept the case, making this detour a complete waste of time and effort. Supreme Court Rule 25 prohibits that court from accepting a certified case from a federal court where the litigation giving rise to the certification raises both questions of federal law and aspects Puerto Rico's local law if the federal questions "must be resolved by the requesting [federal] court" after the certified questions have been answered. That is precisely the posture of this case.

- Even if the Supreme Court of Puerto Rico were to accept the certification and give definitive answers to the local law questions involved, federal law, not local law, defines what constitutes the property of the debtor, and in applying that federal law, bankruptcy courts are not bound by the "label that state law affixes to a particular interest." *In re The Ground Round, Inc.*, 482 F.3d 15, 17 (1st Cir. 2007) (as modified). Any answers the Supreme Court of Puerto Rico might give would be, at most, advisory; the **federal** questions posed here would be waiting for this court to resolve after any such decision. That makes certification unwarranted, since the procedure is available only where an answer to the certified question will "terminate[] the entire dispute" between the parties. *Collazo-Santiago v. Toyota Motor Corp.*, 937 F. Supp. 134, 138 & n.2 (D.P.R. 1996) (Supreme Court of Puerto Rico "added a finality requirement" to certification analysis; court should certify "only when it lacks confidence in the accuracy of its prediction" about the correct outcome), *aff'd*, 149 F.3d 23 (1st Cir. 1998).

- Certification is warranted when the issues involved are likely to recur, and a definitive answer by the Supreme Court of Puerto Rico will "clarify the [local] law for future litigants."[5] That is not the case here. Indeed, it is difficult if not

---

[4] *See* Transcript from June 28, 2017 Hearing ("June 28, 2017 Hr'g Tr.") at 75–77.
[5] *Watchtower Bible Tract Soc'y of New York, Inc. v. Municipality of Santa Isabel*, No. CIV. 04-1452 GAG, 2013 WL 2554879, at *1 (D.P.R. June 11, 2013)

impossible to imagine the local law questions posed by Movants arising again, since all the parties who likely would have standing to raise these questions are before this court now.

3.     The Certification Motions largely ignore the relevant factors, or mention them only in passing.  There is almost nothing in the Certification Motions to recommend a detour to the Supreme Court of Puerto Rico, and there is a number of reasons to deny certification that go unmentioned altogether by the Certification Motions.

## STANDARD APPLICABLE TO CERTIFICATION MOTIONS

4.     Tellingly, the standard applicable to the Certification Motions is not mentioned by the COFINA Agent or by those joining her motion.  This court is not required to certify a matter to the Supreme Court of Puerto Rico simply because an unresolved question of local law is presented, as the Movants suggest.  Rather, the decision whether to certify a question is committed to this court's sole discretion.[6]  And because certification would result in both an abdication of jurisdiction by this court and an imposition on the Supreme Court of Puerto Rico, the court must exercise its discretion "with circumspection."  *State Farm Mut. Auto. Ins. Co. v. Pate*, 275 F.3d 666, 671-72 (7th Cir. 2001) (denying certification to Indiana Supreme Court, emphasizing "respect for the burdens of our colleagues on the state bench and concern for the litigants before us").

5.     As a general rule, federal courts have an obligation to exercise the jurisdiction they are given by the United States Constitution, even where "the answers to the questions of state law [before them] are difficult or uncertain or have not yet been given by the highest court

---

[6]  "The decision whether to certify a state law issue to the state's high court 'in a given case rests in the sound discretion of the federal court.'"  *Fischer v. Bar Harbor Banking & Tr. Co.*, 857 F.2d 4, 7 (1st Cir. 1988) (district court's denial of certification to Maine Supreme Court was not abuse of discretion; even without definitive guidance from state court of last resort, "a federal court may consider 'analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand" (internal citations omitted)); *see also Diaz v. Jiten Hotel Mgmt., Inc.*, 671 F.3d 78, 84 (1st Cir. 2012) (abuse of discretion review of decision to deny certification to Massachusetts Supreme Judicial Court).

of the state . . . ."  *Meredith v. City of Winter Haven*, 320 U.S. 228, 234–35 (1943) (*Pullman*

abstention case).[7]  As the Fifth Circuit has stated:

> [C]ertification should never be automatic or unthinking.  [Courts
> must] use much judgment, restraint and discretion in certifying.
> [They should] not abdicate [their jurisdiction lightly].  In
> determining whether to exercise [its] discretion in favor of
> certification, [a federal court should] consider many factors.  The
> most important are the closeness of the question and the existence
> of sufficient sources of state law . . . to allow a principled rather
> than [a] conjectural conclusion [by the federal court].  But also to
> be considered is the degree to which considerations of comity are
> relevant . . . .  And [the court] must also take into account practical
> limitations of the certification process.

*Escareno v. Noltina Crucible & Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998) (citing

with approval *State of Florida ex rel. Shevin v. Exxon Corp.*, 526 F.2d 266, 274 (5th Cir. 1976)).

In this instance, as explained below, "certification to the Supreme Court of Puerto Rico would

likely inhibit, rather than further, the efficient administration of justice."  *Nat'l Pharmacies, Inc.*

*v. Feliciano-de-Melecio*, 221 F.3d 235, 241 (1st Cir. 2000).

## ARGUMENT

### I.    This Court Has Previously Stated That Certification of Local Law Questions Unwarranted on Similar Facts

6.    The Certification Motions raise no issues this court has not already addressed.

Last June, two of the Movants here (the Puerto Rico Funds and Mutual Fund Group) asked this

court to lift the automatic stay arising from these title III cases so that they could pursue

---

[7]    *See also Lehman Bros. v. Schein*, 416 U.S. 386, 393 (1974) (Rehnquist J. concurring) (in context of certification
request, "a federal court may not remit a [question] to state courts merely because of the difficulty in
ascertaining local law"); *Compass Bank v. King, Griffin & Adamson P.C.*, 388 F.3d 504, 505 (5th Cir. 2004)
("[w]hile certifying the question would be 'determinative' in the sense that it would resolve the case, 'we do not
use certification as a panacea for resolution of those complex or difficult state law questions which have not
been answered by the highest court of the state'") (quoting *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 487 (5th
Cir. 2003) (also denying certification) (quotations omitted))); *Copier By & Through Lindsey v. Smith & Wesson
Corp.*, 138 F.3d 833, 838 (10th Cir. 1998) (refusing to certify question to state Supreme Court; "the federal
courts have the duty to decide questions of state law even if difficult or uncertain"); *cf Colorado River Water
Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (federal court has a "virtually unflagging
obligation . . . to exercise the jurisdiction given them") (*Pullman* abstention case).

certification of state law questions regarding the COFINA-Commonwealth dispute posed in *Lex
Claims, LLC v. Alejandro Garcia Padilla, et al*. No. 16-02374 (FAB) (D.P.R. 2016). More
specifically, these two groups told the court that they intended to ask the Supreme Court of
Puerto Rico to resolve the very local law questions posed here (*i.e.*, "[w]hether [the SUT tax
revenues] are property of COFINA or available resources of the Commonwealth"). *See Puerto
Rico Funds and Mutual Fund Group's Motion for Relief from Automatic Stay* at 8 [Docket No.
270 in Case No. 17-03283 (LTS)].

7.     Multiple parties objected to the effort. One objector, in particular, offered
compelling grounds for denying the requested relief: "a complete resolution of the
Commonwealth-COFINA Dispute may be achieved in this Court without the need for a decision
by" the Supreme Court of Puerto Rico. "This Court has jurisdiction over all of the Debtors'
property," this party explained, and the "[p]roperty of the debtor includes the Commonwealth's
legal claims against COFINA."

8.     That cogent analysis was offered in *Lex Claims* by the COFINA Senior
Bondholder's Coalition, which **seeks** certification here. *See Objection of the COFINA Senior
Bondholders' Coalition to the Puerto Rico Funds and Mutual Fund Group's Motion for Relief
From the Automatic Stay* at 11 [Docket No. 406 in Case No. 17-03283 (LTS)]. The Senior
Bondholders' Coalition had it right in the *Lex Claims* matter, but has since forgotten the lessons
of that proceeding.

9.     This court properly agreed with the Senior Bondholders' Coalition in *Lex Claims*
and refused to lift the stay to allow for certification of these issues. The reasons it gave in
support of that ruling apply today with equal force. The court explained that "[t]he interests of
judicial economy do not favor piecemeal litigation of issues that are central to these Title III

proceedings in a variety of courts, [the court was] fully capable of engaging [issues of Puerto

Rico law] in an appropriate manner at an appropriate time, [and the issue identified by the parties

was one] that certainly arguably, and possibly likely, involves the interplay of federal law,

namely PROMESA, and provisions of the Puerto Rico Constitution," a mixture of issues that

likely would preclude the Supreme Court of Puerto Rico from accepting any certification even if

the stay were lifted.  *See* June 28, 2017 H'rg Tr. at 75–77.

        10.     Thus, there is nothing new here for the court to decide.  It has already weighed the

factors it must consider in deciding whether certification makes sense, and it did so almost a year

ago, **before** the parties had expended the time and effort necessary to present these very same

issues to the court on summary judgment.  Certification made little sense last June; it makes

much less sense now, as explained below.

## II.    <u>Certification Would Be a Waste of Party and Judicial Resources</u>

        11.     "Certification is meant to save time, energy and resources."  *Cintron v. United

States*, 991 F. Supp. 41, 44 n.3 (D.P.R. 1998) (denying motion to certify despite existence of

conflicting local case law on point); *City of Rome v. Hotels.com, L.P.*, 549 F. App'x 896, 904

(11th Cir. 2013) (court has discretion to deny certification based on "practical limitation[s] of

the certification process.") (quoting *Escareno*, 139 F.3d at 1461).  Although certifying local law

questions can provide helpful guidance for federal courts in some circumstances, the process "is,

by its very nature, a cumbersome and time-consuming [one] that stops a case in its tracks,

multiplies the work of the attorneys, and sharply increases the costs of litigation."  *In re

Citigroup, Inc., Capital Accumulation Plan Litig.*, 652 F.3d 88, 93 (1st Cir. 2011) (internal

quotations omitted) (court "decline[d] to exercise [its] discretion to certify any questions of state

law to the supreme courts of Colorado and Louisiana" even though those courts had "not

addressed the precise questions before" court).  When exercising its discretion, this court is

obliged to keep this fact in mind.

12. *Hatfield v. Bishop Clarkson Mem'l Hosp.*, 679 F.2d 1258, 1261 (8th Cir.

1982), *on reh'g sub nom. Hatfield, by Hatfield v. Bishop Clarkson Mem'l Hosp.*, 701 F.2d 1266

(8th Cir. 1983), is a useful example.  There, the Eighth Circuit refused to certify a novel state-

law question to the Nebraska Supreme Court regarding a state statute of limitations.  It explained

the factors that counseled against "refer[ring] th[e] issue to the state supreme court:"

> First, our court is now ready to decide this case.  The parties have
> fully briefed the issue and orally argued it before the court.  We
> believe we have sufficient resources to make a principled decision.
> Second, our decision in this case does not seriously invade the
> state's sphere of sovereignty.  If the state supreme court ultimately
> faces the issue and resolves it contrary to our decision, our holding
> will only have relevance to the parties to this case.  Third,
> certification would entail significant delay . . . because of the
> crowded docket of the state supreme court.  We do not believe the
> parties to this case should be required to experience such delay
> . . . . If the issue was certified, the parties would then be given
> time to brief the case before the supreme court; they would then
> have to await calendaring for oral argument and decision.  This
> could delay the progress of the case for months and possibly over a
> year.

*Id*. at 1261-62 & n.4.  Every feature of *Hatfield* that counseled against certification is present

here as well.

13. *First*, by the time these Motions to certify can be considered by this court, the

"court [will also be] ready to decide" the pending motions for summary judgment, which address

the very issues Movants ask to certify.  If the court decides those issues, rather than off-loads

them, final decisions on the dispositive motions will come precisely when the court is ready for

them.[8]  If the court certifies the questions, it abdicates control over its docket.

---

[8]  Even "[b]efore [the] discretionary decision [to certify] is even considered, [this court would first be obligated
to] undertake [its] own prediction of state law for [it may conclude that 'the course [the] state court[] would

8

14.     *Second*, neither "the parties to this case [nor the parties interested in the related

title III cases] should be required to experience [the] delay" that will inevitably result from the

certification procedure.  Rather, the parties have a right to expect a "speedy . . . determination [in

this] proceeding."[9]

15.     An extended delay is inevitable "because of the crowded docket of the [Puerto

Rico] supreme court . . . .  If the issue[s] [are] certified [by this court], the parties [would have to

await the Supreme Court's decision whether to accept the certification, then] would then be

given time to brief the case before the supreme court; they would then have to await calendaring

. . . and decision.  This could delay the progress of the case for months and possibly over a year."

*Hatfield*, 679 F.2d at 1261-62 & n.4.

16.     Indeed, the last two cases in which the Supreme Court of Puerto Rico decided

issues on certified questions resulted in delays of fifteen (15)[10] and twenty-six (26)[11] months

respectively.  During the year or two it might take for the Supreme Court to answer the local law

questions posed here—if that court even decides to accept them (*see* Section III below)—a major

aspect of the COFINA and Commonwealth title III cases would effectively be held in abeyance

and the court's other crucial work on these cases would be impeded.

17.     *Third,* as discussed in greater detail below, a ruling by this court on the local law

questions will not materially intrude on the sovereignty of Puerto Rico.  It seems unlikely that

---

take is reasonably clear.'"  *Nieves v. Univ. of Puerto Rico*, 7 F.3d 270, 274–75 (1st Cir. 1993) (quoting *Porter v. Nutter*, 913 F.2d 37, 41 n.4 (1st Cir. 1990)) (refusing to certify question to Puerto Rico Supreme Court).  That is, before it could certify questions to the Supreme Court of Puerto Rico, this court would have to do most of the work involved in answering those questions.

[9]     Fed. R. Bankr. 1001.

[10]    *Quilez-Velar v Ox Bodies*, 2017 TSPR 165 (certified by First Circuit on May 9th, 2016, decided on Aug. 31, 2017).

[11]    *Gonzalez-Caban v JR Seafood*, 2017 TSPR 187 (certified by district court on Sept. 11, 2015, decided on Dec. 1, 2017).

these issues will ever arise again between other litigants, *see* Section IV below, but even if they

do, and the Supreme Court of Puerto Rico "ultimately faces the issue[s] [again] and resolves

[them] contrary to [this court's] decision, [this court's] holding will only have relevance to the

parties to this case." *Hatfield*, 679 F.2d at 1261-62 & n.4.

18.     *Fourth*, this court has "sufficient resources to make a principled decision," as this

court has already decided.  *See* June 28, 2017 H'rg Tr. at 75–77 (court is "fully capable of

engaging [these issues of Puerto Rico law] in an appropriate manner at an appropriate time").

Indeed, no other court is so intimately familiar with the parties, the dispute, the relevant

questions, and the role the presented issues will play in this matter and in the larger title III

context.  The Supreme Court of Puerto Rico does not have, and given the certification process

outlined in Rule 25, would have no occasion to develop, this sort of intimate understanding of

the matter in a limited proceeding on certified questions.

19.     Movants cannot credibly claim otherwise.  They **stipulated** to this proceeding (in

the case of the COFINA Agent, through her principal, the Oversight Board), and they then

moved this court for summary judgment.  Had they believed that this court was incompetent to

make a careful and reasoned decision on these questions, they could have—and should have—

refused to sign the stipulation, and instead asked for certification at the outset, when duplicative

effort and wasted time might have been minimized.[12]  Having stipulated to this proceeding and

waited until the very last minute to move for certification, Movants have ensured that

certification would be as wasteful as possible, and would impose the most significant obstruction

to the court's other urgent business.

---

[12]   It is true, of course, that the Movants reserved the right to seek certification of questions in the Supreme Court of Puerto Rico in the stipulation, but that was long before they effectively waived that right by proceeding to the merits of the matter before **this** court by filing their motions for summary judgment.

20.     Although some litigants undoubtedly seek certification for reasons connected to

federalism and comity, or with a concern for the coherent development of local law, those

altruistic motives are altogether absent here.  Movants' request is nothing but a naked hedge

against a potential poor result on summary judgment.

21.     This observation is not merely the Commonwealth Agent's partisan speculation;

the Senior Bondholders, AMBAC, and NPFC have admitted the fact explicitly.  All have asked

the court to certify the local law questions **only if** their summary judgment motion is at risk of

being denied.  Senior Bondholders' Statement at 3 [Docket No. 332 in Adv. Proc. No. 17-00257

(LTS)] (seeking certification "*only as an alternative* . . . should the Court deny [the

Bondholders'] Motion for Summary Judgment") (emphasis in original); Cross-Motion of

AMBAC and NPFC at 3, 7 [Docket No. 421 in Adv. Proc. No. 17-00257 (LTS)] (seeking

certification only if the court finds its position "seriously in question").  The First Circuit has

expressly, and rightly, condemned precisely this sort of results-driven gamesmanship in the

certification context.  *Cantwell v. Univ. of Massachusetts*, 551 F.2d 879, 880 (1st Cir. 1977)

(declining certification to Massachusetts Supreme Court, and noting that the court does "not look

favorably, either on trying to take two bites at the cherry by applying to the state court after

failing to persuade the federal court, or on duplicating judicial effort").

**III.     Answers to Questions Posed by Movants Will Not Terminate Entire Dispute and
        Thus Are Not Appropriate for Certification**

22.     The certification procedure of the Supreme Court of Puerto Rico is available only

where an answer to the certified question will "terminate[] the entire dispute." *Collazo-Santiago*,

937 F. Supp. at 138 n.2 (D.P.R. 1996) (discussing "finality requirement" for certification under

Puerto Rico Supreme Court standards).  Even where "the question before the Court is [an

unsettled] question of Puerto Rico law, [where] its resolution will not determine the outcome of

the case . . . it [is] doubtful that the Supreme Court would accept certification in [the] case."
*Id.* at 138; *see also Watchtower Bible Tract Soc'y*, 2013 WL 2554879, at *1 (federal court
certification appropriate because "disposition of [the certified] issue will resolve all further
proceedings in front of this court [and result in a] final disposition of this matter").  More
particularly, Puerto Rico Supreme Court Rule 25 **prohibits** that court from accepting certified
local law questions from this court if the answers it provides will merely facilitate the federal
court's eventual resolution of **federal** issues in the case.  *See* Rule 25(b).

23.     This case is thus not eligible for certification because the determinations this court
must ultimately make about the COFINA dispute also concern **federal**, and not only **local**, law,
and, for this reason, the local law answers the parties might have received from the Supreme
Court of Puerto Rico would not terminate the dispute between the parties.

A.     The Question Whether Some Portion of the SUT Revenues Forms Part of
Commonwealth's Property Requires Considerations of Federal Law

24.     Federal law, not only local law, will determine what constitutes the property of
the estate (or property of the debtor),[13] and, in applying that federal law, courts are not bound by
the label that state law affixes to a particular interest.  *In re Nejberger*, 934 F.2d 1300, 1302 (3d
Cir. 1991) (although liquor license was not "property" subject to a security interest filed in
accordance with state law, it was nevertheless "property" under federal bankruptcy law), *cited
with approval in In re The Ground Round, Inc.*, 482 F.3d at 17.  "[T]he ultimate question
whether an interest . . . created and defined [by state law] falls within a category stated by a

---

[13]     Section 301(c)(5) of PROMESA provides that the term "property of the estate," when used in a section of the
Bankruptcy Code made applicable to PROMESA, means property of the debtor.  48 U.S.C. § 2161.  For
example, section 1123(a)(5) of the Bankruptcy Code (which is incorporated into PROMESA) lists the various
ways "property of the estate" can be used in a plan.  11 U.S.C. § 1123(a)(5)  Pursuant to section 301(c)(5) of
PROMESA, the phrase property of the estate in section 1123(a)(5) means property of the debtor—and whether
any particular asset constitutes "property of the debtor" subject to treatment under a plan is interpreted by
federal law.

Federal statute, requires an interpretation of [the bankruptcy] statute which is a Federal
question.'" *Nejberger*, 934 F.2d at 1302 (internal citation omitted).[14]

25.    For example, in *In re Colonial Realty Inv. Co.*, 516 F.2d 154, 158 (1st Cir. 1975),
the First Circuit considered whether the trustee had the right to take possession of the debtor's
property then in possession of a mortgagee.  The court rejected the argument that it lacked
jurisdiction over that property even though state law held that the mortgagee was the legal owner
of the property (and therefore, arguably, the mortgaged property was not "property of the
debtor").  In reaching this conclusion, the First Circuit emphasized that the bankruptcy court's
**federal** jurisdiction could not "be impeded by the idiosyncrasies of local property laws." *Id.*[15]

26.    Thus, while a bankruptcy court can, and often will, take into account the
characteristics of an asset as defined by state law in exercising its bankruptcy powers, the
question whether the property is properly characterized as the property of the estate is ultimately
and exclusively a matter of **federal** law.  *See In re Burgess*, 234 B.R. 793, 797 (D. Nev. 1999)
("while state law creates the right, federal law determines whether it is 'property' for purposes of
the federal bankruptcy laws, tax laws, etc.").  This is true "regardless of how the state
characterizes the actual legal ownership of the property." *In re Chardon, LLC,* 519 B.R. 211,
217 (Bankr. N.D. Ill. 2014) (quoting *Matter of Pentell*, 777 F.2d 1281, 1284 n.2 (7th Cir. 1985),

---

[14]    *See also Soto-Rios v. Banco Popular de Puerto Rico*, 662 F.3d 112, 117 (1st Cir. 2011) (phrase "'interest in
property' under sections 362(b)(3) and 546(b)(1)(A) is a federal statutory term, and the meaning of language
under the Bankruptcy Code is a matter of federal law") (as modified); *In re 229 Main St. Ltd. P'ship*, 262 F.3d
1, 6–7 (1st Cir. 2001) (interpreting section 362(b)(3) and holding that the "fact that 'interest in property' and
'lien' may be synonymous under the law of a particular state or under a particular state statute does not render
the terms coextensive for purposes of the Bankruptcy Code").

[15]    Similarly, the Sixth Circuit Court of Appeals has explained that "[a]lthough it is true that the state has the right
to decide what property interests it wishes to create, it cannot thwart the operation of the Tax Code by
classifying the interests is has created as something other than property rights." *In re Terwilliger's Catering
Plus, Inc.*, 911 F.2d 1168, 1171-72 (6th Cir. 1990) (holding that liquor license was property of bankruptcy
estate and was subject to federal tax lien).

and holding that asset was property of debtor notwithstanding state law where "the key elements

of ownership are clearly placed with" debtor).[16]

27.     Thus, even if the Supreme Court of Puerto Rico were to agree to answer the

questions Movants pose, and even if that court were to determine that SUT revenues that are not

yet in existence (and perhaps may never exist) nonetheless became the sole property of COFINA

a decade ago **as a matter local law**, that determination would be the **beginning** of the court's

work, not the end, and the balance of the work before the court would be questions of **federal**

law, not the law of Puerto Rico.  Under those circumstances, certification is not warranted.  *See*

*Nat'l Pharmacies, Inc.*, 221 F.3d at 241 (declining certification, and noting that "[a]lthough a

statutory interpretation by the highest local court could have facilitated the district court's

analysis, it would not have been dispositive of National's lawsuit, which was premised on federal

constitutional claims").

B.     Supreme Court of Puerto Rico Will Not Accept Certified Questions When
       Answering Them Will Not Resolve Entire Dispute

28.     The preceding section identifies substantive federal questions that would remain

after the disposition of the Supreme Court of Puerto Rico even if Movants prevailed there.  The

existence of those federal questions precludes certification.  As noted above, Supreme Rule 25

---

[16]     *See Board of Trade of City of Chicago v. Johnson*, 264 U.S. 1 (1924) (seat on Chicago Board of Trade was
property of bankrupt's estate even though state law did not recognize holder of seat as having a property
interest); *In re Nejberger*, 934 F.2d at 1302  ("ultimate question whether an interest . . . falls within a category
stated by a Federal statute, requires an interpretation of that statute, which is a Federal question" and "label,
however, that state law affixes to a particular interest in certain contexts is not always dispositive"); *In re
Terwilliger's Catering Plus, Inc.*, 911 F.2d at 1172 ("While the nature and extent of the debtor's interest are
determined by state law 'once that determination is made, federal bankruptcy law dictates to what extent that
interest is property of the estate.'") (quoting *In re N.S. Garrott & Sons*, 772 F.2d 462, 466 (8th Cir. 1985));
*Matter of Gladstone Glen*, 628 F.2d 1015, 1017 (7th Cir. 1980) (answering in the affirmative "whether a person,
who under state law, is considered to have neither legal nor equitable title to real property may, for purposes of
federal law, be regarded as the realty's 'legal or equitable owner'"); *In re Commodore Bus. Machs., Inc.*, 180
B.R. 72, 78 n.8 (Bankr. S.D.N.Y. 1995) ("Once the nature and extent of debtor's interest in the property is
determined, federal bankruptcy law dictates the extent to which the property is property of the estate."); *In re
Burgess*, 234 B.R. at 798 ("regardless of how the issuing state characterizes such licenses, most courts have
held that they are property under the bankruptcy laws").

14

only allows for certification when the questions at issue will "determine the outcome" of the "judicial matter" pending in federal court, and then only if the matter does not also "involve[] aspects of federal law . . . which [would have to] be resolved by the requesting court" after the local law questions have been answered.  Because this court would still be obliged to decide, as a matter of **federal** law, how the COFINA revenue stream should be treated in the title III cases, the Supreme Court of Puerto Rico would be **prohibited** by Rule 25 from answering the local law questions that Movants want to certify.  *See Cintron*, 991 F. Supp. at 44 n.3 (Supreme Court of Puerto Rico "will only answer questions which are determinant to the cause of action;" it would not accept certification of the question because "neither [possible] answer [to the certified question] would be determinant.  Either way the case would have to be reverted to [federal] Court for further proceedings.").

## IV.  Answers Given by This Court to Questions at Issue Are Unlikely to Recur for Future Litigants

29.     The "certification [of a state law question] is not appropriate where . . . the question is not one which arises frequently."  *Brown v. Argosy Gaming Co., L.P.*, 384 F.3d 413, 418 (7th Cir. 2004).  Conversely, certification is more likely to be warranted where "the problem will doubtless recur."  *Brown v. Crown Equip. Corp.*, 501 F.3d 75, 79 (1st Cir. 2007), *certified question answered,* 2008 ME 186, 960 A.2d 1188 (Me. 2011); *Tunick v. Safir*, 209 F.3d 67, 81 (2d Cir. 2000) (certification is appropriate where there is a strong "likelihood that the question will recur"); *Hanlon v. Town of Milton*, 186 F.3d 831, 835 (7th Cir. 1999) (certification proper where "future litigants have a real and substantial interest" in settled law on certified question), *certified question answered*, 2000 WI 61, 235 Wis. 2d 597, 612 N.W.2d 44186 (2000); *Watchtower Bible Tract Soc'y*, 2013 WL 2554879, at *1 (certification appropriate where doing so will "clarify the law for future litigants").

30.     This case is firmly in the former category, not the latter.  It is difficult to imagine a circumstance in which the questions listed by the COFINA side will arise again in any context. This proceeding involves all of the entities that might have standing to raise the questions posed.

31.     In any event, if some currently unimaginable set of circumstances were to arise at some point in the future that might require a court to answer these questions again, the court's holding here would not serve as an impediment to those hypothetical future litigants.  They could take their dispute to the Commonwealth courts and, ultimately, to the Supreme Court of Puerto Rico, which could embrace, reject, or ignore this court's decision altogether.  A decision in this dispute, by this court, would bind only the parties to this Adversary Proceeding.

## V.     It Is Unclear Whether Committee Has Authority to Litigate on Behalf of Oversight Board Outside This Court

32.     It is not clear that the Commonwealth Agent or, for that matter, the COFINA Agent, have been given the authority by their principal, the Oversight Board, to conduct litigation in the Supreme Court of Puerto Rico.  The "Oversight Board has made it clear that the Committee is authorized to serve as [its agent for] purposes of the Commonwealth-COFINA dispute **only** . . . in accordance with the Stipulation and Order . . . ."  *Opinion and Order Denying Motion of the Committee of Unsecured Creditors, as Agent for the Commonwealth, to Intervene* (Dein, Mag. J., Sept. 27, 2017) at 6 [Docket No. 416 in Adv. Proc. No. 17-00133 (LTS)].  And, as the Senior Bondholders have acknowledged, that Stipulation and Order contemplates that the Commonwealth-COFINA dispute will be resolved in this court, not in the Commonwealth courts.[17]

---

[17]     *Objection of the COFINA Senior Bondholders' Coalition and National Public Finance Guarantee Corporation to the Urgent Motion of Official Committee of Unsecured Creditors, in its Capacity as Agent for Commonwealth of Puerto Rico, for Leave to Intervene under 11 U.S.C. §1109(b) and Bankruptcy Rule 7024* at 2 [Docket No. 377 in Adv. Proc. No. 17-00133 (LTS)]; *see also* COFINA Agent's Objection to Leave to Intervene at 5 [Docket No. 375 in Adv. Proc. No. 17-00133 (LTS)] (Commonwealth Agent's authority limited to COFINA-Commonwealth dispute, "an issue that should be—and will be—resolved by the Court").

33. The Stipulation neither gives expressly, nor implies that the Agents have been given, any power to litigate on behalf of the Oversight Board **outside** of this court. In fact, the document suggests the contrary. For example, the Stipulation and Order obligated the parties to submit to the court a schedule "constructed to enable **the Court** [*i.e.*, **this** court] to rule, on a final basis, on the Commonwealth-COFINA Dispute" by a date certain. Commonwealth-COFINA Dispute Stipulation at ¶4(e) (emphasis added). Neither that initial proposed schedule, nor any of the subsequent proposed schedules (submitted to extend the deadline), mentioned a detour to the Supreme Court of Puerto Rico to have local law issues decided, much less allowed sufficient time for that to occur. Because the Committee has authority to litigate on the Oversight Board's behalf "**only** [the extent it does so] in accordance with the Stipulation and Order," and because the Stipulation and Order provides that "**the Court** [will] rule, on a final basis, on the Commonwealth-COFINA Dispute," the Committee may not have authority to litigate the dispute in any court other than this one. And without the two parties most centrally affected by this dispute—the COFINA Agent and the Commonwealth Agent—Commonwealth court proceedings are simply not practically possible.

*[Remainder of page intentionally left blank.]*

WHEREFORE, for all of these reasons, the Commonwealth Agent respectfully requests that the court deny the Certification Motions.

Dated:  April 11, 2018

*Luc A. Despins, Esq.*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors for all title III Debtors (except for COFINA), as Commonwealth Agent*

- and -

*Juan J. Casillas Ayala, Esq.*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all title III Debtors (except for COFINA), as Commonwealth Agent*