# Exhibit 3

| 82d Congress<br>*2d Session* | HOUSE OF REPRESENTATIVES | Report<br>No. 1832 |
| --- | --- | --- |

# APPROVING THE CONSTITUTION OF THE COMMONWEALTH OF PUERTO RICO WHICH WAS ADOPTED BY THE PEOPLE OF PUERTO RICO ON MARCH 3, 1952

April 30, 1952.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. Murdock, from the Committee on Interior and Insular Affairs, submitted the following

## REPORT

[To accompany H. J. Res. 430]

The Committee on Interior and Insular Affairs, to whom was referred the joint resolution (H. J. Res. 430) approving the Constitution of the Commonwealth of Puerto Rico which was adopted by the people of Puerto Rico on March 3, 1952, having considered the same, report favorably thereon without amendment and recommend that the joint resolution do pass.

The enactment into law of House Joint Resolution 430, which approves the Constitution of Puerto Rico adopted by the people of Puerto Rico in a referendum on March 3, 1952, constitutes the latest of a series of enactments through which the Federal Government has provided ever-increasing self-government in Puerto Rico.

### ADVANCEMENT OF SELF-GOVERNMENT IN PUERTO RICO

Puerto Rico was ceded to the United States by Spain under the terms of the Treaty of Paris in 1898, which followed the Spanish-American War. The island continued under military government of the United States until Congress passed the Foraker Act in 1900, which was an act temporarily to provide revenues and civil government for Puerto Rico. Under this first organic act the affairs of Puerto Rico were administered by a Governor appointed by the President of the United States and six department heads and justices of the supreme court, likewise appointed by the President. The original organic act contained no bill of rights and made the people of Puerto Rico citizens of Puerto Rico but not citizens of the United States. Another provision of the first organic act was that all expenses incurred

2   APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

on account of the government of Puerto Rico for the salaries of officials and the conduct of their offices and departments and expenses and obligations for the internal improvement of the island to be paid by the treasurer of Puerto Rico out of revenues in his custody, and that customs duties and internal revenue and other Federal taxes collected in Puerto Rico should be reserved for the support of the insular government.

In 1917 Congress passed the Jones Act, the second and present Organic Act of Puerto Rico. Under it the people of Puerto Rico became citizens of the United States. Although the Governor continued as an appointee of the President of the United States, the people were permitted to select their own legislature. The legislature could transmit to the President of the United States any bill vetoed by the Governor. The act of 1917 also continued in effect the original provisions concerning tariffs, customs, and duties on importations into Puerto Rico. It contained a bill of rights.

In 1947 the Congress determined that the people of Puerto Rico were sufficiently politically mature for a further measure of democratic self-government and the Elective Governor Act was enacted (Public Law 362, 80th Cong.). As the result of that act the people of Puerto Rico, for the first time, elected a native governor of their choosing in 1948.

## COMPACT FOR A CONSTITUTION

Subsequently the people of Puerto Rico through their elected officials sought a form of government based on a constitution of their own adoption within a framework of continued relationships with the Federal Government as provided by law, adopted by the Congress and approved by the people of Puerto Rico before it became effective. After hearings and deliberations, the Congress enacted Public Law 600 (appendix II) of the Eightieth Congress, the terms of which describe it as being "in the nature of a compact" between Congress and the people of Puerto Rico—

so that the people of Puerto Rico may organize a government pursuant to a constitution of their own adoption.

Congress made only two stipulations with respect to the content of the Puerto Rican constitution. It said:

The said constitution shall provide a republican form of government and shall include a bill of rights (Public Law 600, sec. 2).

Because certain minority groups in Puerto Rico have attempted to inject other issues into the proposal for a constitution, the Interior and Insular Affairs Committee of the United States Senate and the then Public Lands Committee (now the Committee on Interior and Insular Affairs) of the United States House of Representatives made emphatic statements in their respective reports on S. 3336, which became Public Law 600, on these issues.

We feel these statements should be repeated in this report in connection with approval of this constitution.

Senate Report No. 1779, Eighty-first Congress, second session, to accompany S. 3336 and dated June 6, 1950, stated:

Because the issues have been raised, it should be stated clearly and unequivocally that S. 3336 is not a statehood bill. Nor is it an independence bill. It does not commit the Congress, either expressly or by implication, to take any action whatever with respect to either.

House of Representatives Report No. 2275, Eighty-first Congress, second session, to accompany S. 3336, and dated June 19, 1950, stated:

This bill does not commit the Congress, either expressly or by implication, to the enactment of statehood legislation for Puerto Rico in the future.

### PERIMETER OF PUBLIC LAW 600

This same House of Representatives report described the perimeter of the legislation under which the people of Puerto Rico might, if they chose, draft an insular constitution. It said:

It is important that the nature and general scope of S. 3336 be made absolutely clear. The bill under consideration would not change Puerto Rico's fundamental political, social, and economic relationship to the United States. Those sections of the Organic Act of Puerto Rico pertaining to the political, social, and economic relationship of the United States and Puerto Rico concerning such matters as the applicability of United States laws, customs, internal revenue, Federal judicial jurisdiction in Puerto Rico, Puerto Rican representation by a Resident Commissioner, etc., would remain in force and effect, and upon enactment of S. 3336 would be referred to as the Puerto Rican Federal Relations Act. The sections of the organic act which section 5 of the bill would repeal are the provisions of the act concerned primarily with the organization of the local executive, legislative, and judicial branches of the government of Puerto Rico and other matters of purely local concern.

### REFERENDUM OF PUBLIC LAW 600

It should be further stated that Public Law 600 did not force the proposal for a constitution upon the people of Puerto Rico. It provided that before any steps should be taken leading to the calling of a constitutional convention, that Public Law 600 itself should be submitted to the qualified voters of Puerto Rico for their acceptance or rejection through an island-wide referendum held in accordance with the laws of Puerto Rico.

Four political parties participated in the campaign leading up to the voting on approval or rejection of Public Law 600. The Popular Democratic Party gave unqualified approval of the act. The Statehood Party, which advocates admission of Puerto Rico to the Union, was split. The Independence Party advocated rejection of Public Law 600 and told its members to either vote against the measure or remain away from the polls. The Socialist Party favored Public Law 600.

June 4, 1951, was set as the day for the referendum. On that day there were 777,675 qualified voters legally registered and of those 506,185 (65.08 percent) participated in the referendum. Public Law 600 was accepted by 76.5 percent of those voting. The tally was 387,016 for Public Law 600 and 119,169 against.

This was the first of three opportunities in which the people of Puerto Rico had a voice in steps leading to the adoption of their constitution.

The Legislature of Puerto Rico, following the approval of Public Law 600, put machinery in operation for the election of delegates for the constitutional convention. The election of delegates took place August 27, 1951, and three of the four existing parties submitted candidates for delegates to the convention. The Puerto Rican Independence Party failed to register any nomination and publicly announced its refusal to participate in the drafting of a constitution.

Ninety-two delegates were elected under provisions set forth in legislation enacted by the Legislature of Puerto Rico. This legislation

4   APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

insured representation of such minority parties as might seek to be represented. The convention was composed of 70 delegates representing the Popular Democratic Party, 15 representing the Statehood Party, and 7 representing the Socialist Party.

That the convention was composed of a cross section of professions and occupations is indicated by the following listing:

| | | | |
|---|---|---|---|
| Lawyer | 32 | Journalist | 3 |
| Farmer | 13 | Judge | 2 |
| Labor leader | 9 | Banker | 1 |
| Teacher | 6 | Dentist | 1 |
| Merchant | 6 | Engineer | 1 |
| Manufacturer | 5 | Pharmacist | 1 |
| Physician | 4 | Accountant | 1 |

## WORK OF THE CONSTITUTIONAL CONVENTION

The first session of the convention was held September 17, 1951, at which time Hon. A. Fernós-Isern, Resident Commissioner in Congress for Puerto Rico, was elected president of the convention. Miss Maria Libertad Gomez, a school teacher and farmer, was elected first vice president, and Victor Gutierrez-Franqui, attorney general of Puerto Rico, was elected second vice president.

The convention was in working session for 62 days and many more days were spent in committee sessions. A total of 330 proposals were filed, printed, and referred to committees during the sessions. During its deliberations the convention had access to the Federal Constitution, its amendments and notes leading up to ratification as well as the constitutions of all of the 48 States of the Union. A large staff of research, technical, and legal experts was available to the delegates.

The convention gave its final approval to the constitution on February 6, 1952, by a vote of 88 in favor, 3 opposed, and 1 delegate was absent. All of the 91 delegates voting signed the enrolled text of the constitution, which was adopted both in English version and Spanish version.

During the deliberations leading up to the final approval of the constitution two subcommittees of this committee visited the constitutional convention while it was in progress in Puerto Rico. Both subcommittee groups interviewed many of the delegates, including minority factions, and without exception statements made to subcommittee members clearly indicated that democratic processes were being diligently adhered to and that delegates representing minorities were being given every possible consideration.

Following its approval and by order of the convention, the constitution was printed in the four daily newspapers of Puerto Rico in both English and Spanish. In addition over a million copies of the Spanish version and 30,000 copies of the English version were printed and distributed throughout the island.

## SUBCOMMITTEE OBSERVES CONDUCT OF REFERENDUM

The referendum for the approval or rejection of the constitution was held on March 3, 1952. On that day there were 783,610 qualified and legally registered voters and 457,562 participated in the referendum. A total of 374,649 voted in favor of the adoption of the constitution and 82,923 voted against its adoption.

A subcommittee consisting of two members of this committee was delegated to be in Puerto Rico on the day of the referendum.

Puerto Rico has a unique system in the conduct of its elections. During the morning hours the electors appear at the voting place and effect their identification. At 1 p. m. the doors of the voting place are closed, qualified electors locked inside, and no other electors may enter. Names of the qualified voters in each precinct are called alphabetically and as the name is called the elector enters a vacant booth and secretly casts his ballot. After depositing the ballot in the ballot box the voter is then permitted to leave the building. Each political party had a judge at each voting place and each party had a separate padlock on the ballot box, the key being in the possession of the judge designated by his particular party.

Members of this subcommittee were given special authority by the Puerto Rican election officials which enabled them to freely enter polling places as observers while electors were qualifying, during the voting, and at the time of the tabulation of the ballots. Voting places were selected at random by the subcommittee members and during the day many such places in Puerto Rico were visited. The two members of this committee delegated to observe the referendum on the constitution have reported that the voting was conducted in orderly fashion and without incident. Furthermore they reported that they interviewed innumerable electors and without exception those persons said they had in no way been subject to undue influence or duress and those interviewed included some who admitted they opposed the constitution, but freely stated they felt the election was a free election.

This account of the conduct of the referendum and the summary of the findings of the subcommittee is included in this report because some Members of Congress have reported receiving material from certain groups in Puerto Rico attempting to claim it was not a free election.

Section 3 of Public Law 600, provides that—

Upon the adoption of the constitution by the People of Puerto Rico, the President of the United States is authorized to transmit such constitution to the Congress of the United States if he finds that such constitution conforms to the applicable provisions of this Act and the Constitution of the United States.

On April 22, 1952, the President advised the Congress that he had found that the constitution meets the requirements quoted above, and he recommended early approval by the Congress.

The President's message is a part of this report.

## SUMMARY OF PROVISIONS OF THE CONSTITUTION

### BILL OF RIGHTS

The bill of rights in this constitution includes guaranties of fundamental rights which are a part of the American tradition. The delegates to the convention saw fit to divide the bill of rights into two parts. One sets forth the guaranties and rights of citizens of any American community and after the fashion as provided in the Federal and State constitutions. Some of these rights are spelled out in greater detail than in the Federal Constitution. The second takes into account the current economic conditions in Puerto Rico and sets forth certain

**6**   APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

social and economic rights not guaranteed but which the Commonwealth recognizes and pledges to work for their realization.

Referring to these rights the constitution says:

> The rights set forth in this section are closely connected with the progressive development of the economy of the Commonwealth and require, for their full effectiveness, sufficient resources and an agricultural and industrial development not yet attained by the Puerto Rican community.
>
> In the light of their duty to achieve the full liberty of the citizen, the people and the government of Puerto Rico shall do everything in their power to promote the greatest possible expansion of the system of production, to assure the fairest distribution of economic output, and to obtain the maximum understanding between individual initiative and collective cooperation.

The views of the convention in connection with this unique section were emphasized before this committee by Dr. Jaime Benitez, chairman of the convention's committee on human rights, who appeared as a witness when we considered House Joint Resolution 430. Dr. Benitez said:

> I would like to say, Mr. Chairman, that concerning this section about social and economic rights, the constitutional convention was very clear that we were not stating rights which could be demanded in court as of today, but rather aspirations which in the very text of our language we tied together with the progress and the economic development of the people of Puerto Rico and we brought them together to stress before the whole Puerto Rican community that we could not have these rights unless the whole island of Puerto Rico and all the Puerto Ricans devotedly work toward their achievement.

### LEGISLATIVE BRANCH

The legislative power is vested in a legislative assembly consisting of a senate of 27 members, and a house of representatives of 51 members. The members of the legislative assembly are to be elected for a term of 4 years by a direct vote at each general election. Requisites for election to the legislative assembly are both United States and Puerto Rican citizenship.

### THE EXECUTIVE BRANCH

The executive power is vested in a Governor to be elected by direct vote for a 4-year term. Qualifications for election as Governor are that he be of at least 35 years of age, and a citizen of the United States and a citizen and bona fide resident of Puerto Rico during the 5 years preceding election. The usual powers of a chief executive under the United States democratic system of government are lodged in the Governor. He has the right to veto bills of the legislative assembly, although the legislative assembly may override the Governor's veto by a vote of two-thirds of the total membership of each house.

### THE JUDICIAL BRANCH

The judicial power is vested in a supreme court and other courts as established by law. The supreme court is the court of last resort in Puerto Rico. It is to be composed of a chief justice and four associate justices to be appointed by the Governor with the advice and consent of the Senate of Puerto Rico and who are to hold office during good behavior. The present justices of the Supreme Court of Puerto Rico are to be maintained in their present positions during

good behavior. The number of justices of the supreme court may be changed by law only upon the request of the supreme court itself.

The constitution provides the same system of checks and balances as our own Constitution, and contains provisions which will insure the complete independence of the legislative, executive, and judiciary, one from the other.

The Constitution of the Commonwealth of Puerto Rico has many features of an unusually democratic nature, such as providing for the suspension of the writ of habeas corpus only by the legislature in the event of riot or rebellion. Another unique feature is one which insures in the legislature a minimum working membership of minority parties in order that an effective opposition may exist at all times.

Amendments to the constitution must be ratified by the people of Puerto Rico at a referendum. Amendments to the constitution may be initiated by the legislature and not more than three specific amendments may be submitted to the people at any one time.

As has been previously stated, the approval of this constitution by the Congress will not change Puerto Rico's fundamental political, social, and economic relationship to the United States. Statutory provisions concerning such matters as the applicability of United States laws, customs, internal revenue, Federal, judicial organization in Puerto Rico, Puerto Rican representation by a Resident Commissioner, etc., would remain in force and effect. Public Law 600 declares that these provisions shall, upon the approval of the constitution by the Congress, be, in the future, cited as the "Puerto Rican Federal Relations Act," which is made a part of this report as appendix III.

Members of the three subcommittees which visited Puerto Rico at separate times during various stages of action leading to the approval of the constitution by the people of Puerto Rico received no substantiated evidence to the effect that the procedure was other than that according to law and under the processes of a republican form of government. The chairman of one subcommittee which witnessed the constitutional convention in operation and conferred with its members, observed at the hearings on House Joint Resolution 430 that the great lengths to which the convention went in protection of freedom of the press and extension of even greater representation to minority parties "gives lie to any statement of so-called dictatorship in Puerto Rico."

Puerto Rico has become the showcase of the Americas. Latin-American countries are watching with keen interest the economic and political progress of Puerto Rico, the only Latin-American area under the American flag. Steps taken in connection with this constitution demonstrate the sincerity of this Nation in subscribing to the United Nation's Charter (ratified by the U. S. Senate on June 26, 1945; 59 Stat. 1031) article 73 of chapter XI of which declares:

Members of the United Nations which have or assume responsibilities for the administration of territories whose people have not yet attained a full measure of self-government recognize the principle that the interests of the inhabitants of the territories are paramount, and accept as a sacred trust the obligation to promote to the utmost * * * the well-being of the inhabitants of these territories, and, to this end:

\* \* \* \* \* \* \*

(b) To develop self-government, to take due account of the political aspirations of the peoples, and to assist them in the progressive development of their free political institutions * * * (59 Stat. at p. 1048).

8   APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

It is the opinion of the committee that the constitution drafted by delegates selected by the people of Puerto Rico and approved by an overwhelming majority of the qualified electors participating in a referendum on March 3, 1952, represents the will of the people of Puerto Rico. Upon its approval the people of Puerto Rico assume full authority and responsibility of local self-government. The committee believes the people of Puerto Rico have demonstrated their readiness for this responsibility.

The President of the United States has found that this constitution provides a republican form of government and includes a bill of rights. He has found that it conforms to the applicable provisions of Public Law 600 of the Eighty-first Congress and of the Constitution of the United States. He recommends its early approval.

The Committee on Interior and Insular Affairs unanimously recommends the passage of House Joint Resolution 430 providing for the approval of the Constitution of the Commonwealth of Puerto Rico.

The message of the President of the United States follows:

*To the Congress of the United States:*

I am transmitting to the Congress for approval the Constitution of the Commonwealth of Puerto Rico, adopted by the people of Puerto Rico on March 3, 1952.

The constitution has been submitted to me pursuant to the act of July 3, 1950 (64 Stat. 319 (48 U. S. C., Supp. IV, 731b–731e)). This act authorizes me, upon adoption of a constitution by the people of Puerto Rico, to transmit the constitution to the Congress if I find that it conforms with the applicable provisions of the act and of the Constitution of the United States. I do find and declare that the Constitution of the Commonwealth of Puerto Rico conforms with the applicable provisions of the act of July 3, 1950, and of our own Constitution.

Fully recognizing the principle of government by consent, the act of July 3, 1950, authorized the people of Puerto Rico to organize a republican form of government pursuant to a constitution of their own choosing. The act was adopted by the Congress of the United States "in the nature of a compact." By its own terms, the act could become effective only when accepted by the people of Puerto Rico in a referendum.

On June 4, 1951, the people of Puerto Rico voted by a large majority to accept the act of July 3, 1950, thereby reaffirming their union with the United States on the terms proposed by the Congress. Following the referendum, the voters of Puerto Rico elected delegates to a constitutional convention. The convention convened in San Juan on September 17, 1951, and concluded its deliberations on February 6, 1952.

The constitution approved by the constitutional convention was submitted to the people of Puerto Rico in a referendum on March 3, 1952. It was adopted by an overwhelming majority.

In the course of its studies and deliberations, the constitutional convention made a careful analysis of the constitutions of each of the States of the Union, as well as that of the Federal Government. As a result, the Constitution of the Commonwealth of Puerto Rico contains many provisions which are common to constitutions which have been adopted by the States, as well as other provisions which are designed primarily to meet local problems.

The constitution establishes the government of the Commonwealth of Puerto Rico with three coordinate branches of government: legislative, executive, and judicial. The city of San Juan is designated as the seat of government.

The legislative power of the Commonwealth of Puerto Rico is vested in the legislative assembly, consisting of a senate composed of 27 members and a house of representatives composed of 51 members. Members of the senate and the house of representatives are to be elected by direct vote at each general election for a term of 4 years. Both United States and Puerto Rican citizenship are requisites for election to legislative office.

Under the constitution the executive power of the Commonwealth of Puerto Rico is vested in a Governor, to be elected by direct vote in each general election for a term of 4 years. To be eligible for election as Governor, a person must be at least 35 years of age and must have been, during the 5 years preceding the date of

election, a citizen of the United States and a citizen and bona fide resident of Puerto Rico. The Governor is vested with the powers usually lodged in a chief executive under our form of government, including the right to veto bills enacted by the legislative assembly. The legislative assembly may override the Governor's veto by a vote of two-thirds of the total number of members of which each house is composed.

The judicial power of Puerto Rico is vested in a supreme court, and in such other courts as may be established by law. The supreme court is designated as the court of last resort in Puerto Rico and is to be composed of a chief justice and four associate justices. The justices of the supreme court are to be appointed by the Governor, with the advice and consent of the senate of Puerto Rico, and are to hold office during good behavior. Justices now serving on the supreme court, who have been appointed by the President of the United States, are to continue to hold office during good behavior.

The constitutional convention gave careful consideration to the objective of ensuring an independent judiciary. It limited the number of justices of the supreme court to five members and expressly provided that the number cannot be increased except by direct request of the supreme court itself. Independence of the judiciary is further advanced by the provision of the constitution placing responsibility for administration of the entire judicial system in the chief justice of the supreme court, who is appointed for life and removable by impeachment only.

The new constitution contains a bill of rights which corresponds with the highest ideals of human dignity, equality, and freedom. The bill of rights includes provisions which are similar to our own basic constitutional guaranties. In addition, it contains express provisions regarding public education, conditions of labor, and the protection of private property. The bill of rights also recognizes the existence of certain human rights, but acknowledges that their full enjoyment depends upon an agricultural and industrial development not yet attained by the Puerto Rican community.

Amendments to the constitution may be proposed by a concurrent resolution approved by not less than two-thirds of the total membership of each house of the legislative assembly. The amendments must be adopted by a majority of the qualified electors either in a general election or in a special referendum.

The act of July 3, 1950, was the last of a series of enactments through which the United States has provided ever-increasing self-government in Puerto Rico.

The Treaty of Paris, which ceded Puerto Rico to the United States, was ratified and proclaimed 53 years ago. After a brief period of military government, the Congress in 1900 adopted the first Organic Act of Puerto Rico, known as the Foraker Act, which established a civil government for the island. By making provision for a popularly elected lower house of the legislative assembly, called the house of delegates, the Foraker Act extended some measure of local self-government to Puerto Rico. Preponderant control of the local government of Puerto Rico was retained by the United States, however, by virtue of the President's authority under the act to appoint the Governor, the heads of the executive departments, the justices of the supreme court, and the 11 members of the executive council of Puerto Rico.

The present Organic Act of Puerto Rico, enacted on March 2, 1917, provided a substantial advance in local self-government for Puerto Rico. By creating the Legislature of Puerto Rico, composed of a popularly elected senate and house of representatives, it gave the people direct control over the legislative branch of the government. Concurrently the executive council created by the Foraker Act was divested of its legislative functions. An opportunity for greater participation in the formulation of executive policies was provided the people of Puerto Rico by authorizing the Governor, with the advice and consent of the insular senate, to appoint the heads of the executive departments, except the attorney general and the commissioner of education. Authority to appoint the Governor, the attorney general, the commissioner of education, the auditor, and the justices of the Supreme Court of Puerto Rico was reserved to the President of the United States. The act granted full United States citizenship to the people of Puerto Rico and gave them a bill of rights. It also authorized them to elect a representative to the Congress, accredited to the House of Representatives.

In 1946 I appointed the first native of Puerto Rico as Governor, Jesús T. Piñero.

By the act of August 5, 1947, the people of Puerto Rico were authorized to elect their own Governor. This act also provided that the heads of all executive departments of Puerto Rico were to be appointed by the elected Governor of Puerto Rico, including the attorney general and the commissioner of education.

**10**  APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

As a result of the act, therefore, the people of Puerto Rico assumed direct responsibility and control over the executive branch of the local government. The President of the United States still retained authority to appoint the auditor and the justices of the Supreme Court of Puerto Rico, but even this authority will be relinquished upon approval of the Constitution of the Commonwealth of Puerto Rico.

Through the act of July 3, 1950, providing for the establishment of a constitutional government in Puerto Rico, the United States gives evidence once more of its adherence to the principle of self-determination and its devotion to the ideals of freedom and democracy. The people of Puerto Rico have accepted the law as enacted by the Congress. They have complied with its requirements and have submitted their constitution for the approval of the Congress. With its approval, full authority and responsibility for local self-government will be vested in the people of Puerto Rico. The Commonwealth of Puerto Rico will be a government which is truly by the consent of the governed. No government can be invested with a higher dignity and greater worth than one based upon the principle of consent.

The people of the United States and the people of Puerto Rico are entering into a new relationship that will serve as an inspiration to all who love freedom and hate tyranny. We are giving new substance to man's hope for a world with liberty and equality under law. Those who truly love freedom know that the right relationship between a government and its people is one based on mutual consent and esteem.

The Constitution of the Commonwealth of Puerto Rico is a proud document that embodies the best of our democratic heritage. I recommend its early approval by the Congress.

HARRY S. TRUMAN.

THE WHITE HOUSE, *April 22, 1952.*

---

## APPENDIXES

### APPENDIX I

### CONSTITUTION OF THE COMMONWEALTH OF PUERTO RICO

We, the people of Puerto Rico, in order to organize ourselves politically on a fully democratic basis, to promote the general welfare, and to secure for ourselves and our posterity the complete enjoyment of human rights, placing our trust in Almighty God, do ordain and establish this Constitution for the commonwealth which, in the exercise of our natural rights, we now create within our union with the United States of America.

In so doing, we declare:

The democratic system is fundamental to the life of the Puerto Rican community;

We understand that the democratic system of government is one in which the will of the people is the source of public power, the political order is subordinate to the rights of man, and the free participation of the citizen in collective decisions is assured;

We consider as determining factors in our life our citizenship of the United States of America and our aspiration continually to enrich our democratic heritage in the individual and collective enjoyment of its rights and privileges; our loyalty to the principles of the Federal Constitution; the coexistence in Puerto Rico of the two great cultures of the American Hemisphere; our fervor for education; our faith in justice; our devotion to the courageous, industrious, and peaceful way of life; our fidelity to individual human values above and beyond social position, racial differences, and economic interests; and our hope for a better world based on these principles.

#### ARTICLE I

##### THE COMMONWEALTH

SECTION 1.—The Commonwealth of Puerto Rico is hereby constituted. Its political power emanates from the people and shall be exercised in accordance with their will, within the terms of the compact agreed upon between the people of Puerto Rico and the United States of America.

SECTION 2.—The government of the Commonwealth of Puerto Rico shall be republican in form and its legislative, judicial and executive branches as established by this Constitution shall be equally subordinate to the sovereignty of the people of Puerto Rico.

SECTION 3.—The political authority of the Commonwealth of Puerto Rico shall extend to the Island of Puerto Rico and to the adjacent islands within its jurisdiction.

SECTION 4.—The seat of the government shall be the city of San Juan.

## ARTICLE II

### BILL OF RIGHTS

SECTION 1.—The dignity of the human being is inviolable. All men are equal before the law. No discrimination shall be made on account of race, color, sex, birth, social origin or condition, or political or religious ideas. Both the laws and the system of public education shall embody these principles of essential human equality.

SECTION 2.—The laws shall guarantee the expression of the will of the people by means of equal, direct and secret universal suffrage and shall protect the citizen against any coercion in the exercise of the electoral franchise.

SECTION 3.—No law shall be made respecting an establishment of religion or prohibiting the free exercise thereof. There shall be complete separation of church and state.

SECTION 4.—No law shall be made abridging the freedom of speech or of the press, or the right of the people peaceably to assemble and to petition the government for a redress of grievances.

SECTION 5.—Every person has the right to an education which shall be directed to the full development of the human personality and to the strengthening of respect for human rights and fundamental freedoms. There shall be a system of free and wholly non-sectarian public education. Instruction in the elementary and secondary schools shall be free and shall be compulsory in the elementary schools to the extent permitted by the facilities of the state. No public property or public funds shall be used for the support of schools, or educational institutions other than those of the state. Nothing contained in this provision shall prevent the state from furnishing to any child non-educational services established by law for the protection or welfare of children.

SECTION 6.—Persons may join with each other and organize freely for any lawful purpose, except in military or quasi-military organizations.

SECTION 7.—The right to life, liberty and the enjoyment of property is recognized as a fundamental right of man. The death penalty shall not exist. No person shall be deprived of his liberty or property without due process of law. No person in Puerto Rico shall be denied the equal protection of the laws. No laws impairing the obligation of contracts shall be enacted. A minimum amount of property and possessions shall be exempt from attachment as provided by law.

SECTION 8.—Every person has the right to the protection of law against abusive attacks on his honor, reputation and private or family life.

SECTION 9.—Private property shall not be taken or damaged for public use except upon payment of just compensation and in the manner provided by law. No law shall be enacted authorizing condemnation of printing presses, machinery or material devoted to publications of any kind. The buildings in which these objects are located may be condemned only after a judicial finding of public convenience and necessity pursuant to procedure that shall be provided by law, and may be taken before such a judicial finding only when there is placed at the disposition of the publication an adequate site in which it can be installed and continue to operate for a reasonable time.

SECTION 10.—The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated. Wire-tapping is prohibited.

No warrant for arrest or search and seizure shall issue except by judicial authority and only upon probable cause supported by oath or affirmation, and particularly describing the place to be searched and the persons to be arrested or the things to be seized.

Evidence obtained in violation of this section shall be inadmissible in the courts.

SECTION 11.—In all criminal prosecutions, the accused shall enjoy the right to have a speedy and public trial, to be informed of the nature and cause of the accusation and to have a copy thereof, to be confronted with the witnesses against him, to have compulsory process for obtaining witnesses in his favor, to have assistance of counsel, and to be presumed innocent.

**12** APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

In all prosecutions for a felony the accused shall have the right of trial by an impartial jury composed of twelve residents of the district, who may render their verdict by a majority vote which in no case may be less than nine.

No person shall be compelled in any criminal case to be a witness against himself and the failure of the accused to testify may be neither taken into consideration nor commented upon against him.

No person shall be twice put in jeopardy of punishment for the same offense. Before conviction every accused shall be entitled to be admitted to bail.

Incarceration prior to trial shall not exceed six months nor shall bail or fines be excessive.   No person shall be imprisoned for debt.

SECTION 12.—Neither slavery nor involuntary servitude shall exist except in the latter case as a punishment for crime after the accused has been duly convicted. Cruel and unusual punishments shall not be inflicted.   Suspension of civil rights including the right to vote shall cease upon service of the term of imprisonment imposed.

No *ex post facto* law or bill of attainder shall be passed.

SECTION 13.—The writ of *habeas corpus* shall be granted without delay and free of costs.   The privilege of the writ of *habeas corpus* shall not be suspended, unless the public safety requires it in case of rebellion, insurrection or invasion.   Only the Legislative Assembly shall have the power to suspend the privilege of the writ of *habeas corpus* and the laws regulating its issuance.

The military authority shall always be subordinate to civil authority.

SECTION 14.—No titles of nobility or other hereditary honors shall be granted. No officer or employee of the Commonwealth shall accept gifts, donations, decorations or offices from any foreign country or officer without prior authorization by the Legislative Assembly.

SECTION 15.—The employment of children less than fourteen years of age in any occupation which is prejudicial to their health or morals or which places them in jeopardy of life or limb is prohibited.

No child less than sixteen years of age shall be kept in custody in a jail or penitentiary.

SECTION 16.—The right of every employee to choose his occupation freely and to resign therefrom is recognized, as is his right to equal pay for equal work, to a reasonable minimum salary, to protection against risks to his health or person in his work or employment, and to an ordinary workday which shall not exceed eight hours.   An employee may work in excess of this daily limit only if he is paid extra compensation as provided by law, at a rate never less than one and one-half times the regular rate at which he is employed.

SECTION 17.—Persons employed by private businesses, enterprises and individual employers and by agencies or instrumentalities of the government operating as private businesses or enterprises, shall have the right to organize and to bargain collectively with their employers through representatives of their own free choosing in order to promote their welfare.

SECTION 18.—In order to assure their right to organize and to bargain collectively, persons employed by private businesses, enterprises and individual employers and by agencies or instrumentalities of the government operating as private businesses or enterprises, in their direct relations with their own employers shall have the right to strike, to picket and to engage in other legal concerted activities.

Nothing herein contained shall impair the authority of the Legislative Assembly to enact laws to deal with grave emergencies that clearly imperil the public health or safety or essential public services.

SECTION 19.—The foregoing enumeration of rights shall not be construed restrictively nor does it contemplate the exclusion of other rights not specifically mentioned which belong to the people in a democracy.   The power of the Legislative Assembly to enact laws for the protection of the life, health and general welfare of the people shall likewise not be construed restrictively.

SECTION 20.—The Commonwealth also recognizes the existence of the following human rights:

The right of every person to receive free elementary and secondary education.

The right of every person to obtain work.

The right of every person to a standard of living adequate for the health and well-being of himself and of his family, and especially to food, clothing, housing and medical care and necessary social services.

The right of every person to social protection in the event of unemployment, sickness, old age or disability.

The right of motherhood and childhood to special care and assistance.

APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO  **13**

The rights set forth in this section are closely connected with the progressive development of the economy of the Commonwealth and require, for their full effectiveness, sufficient resources and an agricultural and industrial development not yet attained by the Puerto Rican community.

In the light of their duty to achieve the full liberty of the citizen, the people and the government of Puerto Rico shall do everything in their power to promote the greatest possible expansion of the system of production, to assure the fairest distribution of economic output, and to obtain the maximum understanding between individual initiative and collective cooperation. The executive and judicial branches shall bear in mind this duty and shall construe the laws that tend to fulfill it in the most favorable manner possible.

## Article III

### THE LEGISLATURE

Section 1.—The legislative power shall be vested in a Legislative Assembly, which shall consist of two houses, the Senate and the House of Representatives, whose members shall be elected by direct vote at each general election.

Section 2.—The Senate shall be composed of twenty-seven Senators and the House of Representatives of fifty-one Representatives, except as these numbers may be increased in accordance with the provisions of Section 7 of this Article.

Section 3.—For the purpose of election of members of the Legislative Assembly, Puerto Rico shall be divided into eight senatorial districts and forty representative districts. Each senatorial district shall elect two Senators and each representative district one Representative.

There shall also be eleven Senators and eleven Representatives elected at large. No elector may vote for more than one candidate for Senator at Large or for more than one candidate for Representative at Large.

Section 4.—In the first and subsequent elections under this Constitution the division of senatorial and representative districts as provided in Article VIII shall be in effect. After each decennial census beginning with the year 1960, said division shall be revised by a Board composed of the Chief Justice of the Supreme Court as Chairman and of two additional members appointed by the Governor with the advice and consent of the Senate. The two additional members shall not belong to the same political party. Any revision shall maintain the number of senatorial and representative districts here created, which shall be composed of contiguous and compact territory and shall be organized, insofar as practicable, upon the basis of population and means of communication. Each senatorial district shall always include five representative districts.

The decisions of the Board shall be made by majority vote and shall take effect in the general elections next following each revision. The Board shall cease to exist after the completion of each revision.

Section 5.—No person shall be a member of the Legislative Assembly unless he is able to read and write the Spanish or English language and unless he is a citizen of the United States and of Puerto Rico and has resided in Puerto Rico at least two years immediately prior to the date of his election or appointment. No person shall be a member of the Senate who is not over thirty years of age, and no person shall be a member of the House of Representatives who is not over twenty-five years of age.

Section 6.—No person shall be eligible to election or appointment as Senator or Representative for a district unless he has resided therein at least one year immediately prior to his election or appointment. When there is more than one representative district in a municipality, residence in the municipality shall satisfy this requirement.

Section 7.—If in a general election more than two-thirds of the members of either house are elected from one political party or from a single ticket, as both are defined by law, the number of members shall be increased in the following cases:

(a) If the party or ticket which elected more than two-thirds of the members of either or both houses shall have obtained less than two-thirds of the total number of votes cast for the office of Governor, the number of members of the Senate or of the House of Representatives or of both bodies, whichever may be the case, shall be increased by declaring elected a sufficient number of candidates of the minority party or parties to bring the total number of members of the minority party or parties to nine in the Senate and to seventeen in the House of Representatives. When there is more than one minority party, said additional members shall be declared elected from among the candidates of each minority

**14**  APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

party in the proportion that the number of votes cast for the candidate of each of said parties for the office of Governor bears to the total number of votes cast for the candidates of all the minority parties for the office of Governor.

When one or more minority parties shall have obtained representation in a proportion equal to or greater than the proportion of votes received by their respective candidates for Governor, such party or parties shall not be entitled to additional members until the representation established for each of the other minority parties under these provisions shall have been completed.

(b) If the party or ticket which elected more than two-thirds of the members of either or both houses shall have obtained more than two-thirds of the total number of votes cast for the office of Governor, and one or more minority parties shall not have elected the number of members in the Senate or in the House of Representatives or in both houses, whichever may be the case, which corresponds to the proportion of votes cast by each of them for the office of Governor, such additional number of their candidates shall be declared elected as is necessary in order to complete said proportion as nearly as possible, but the number of Senators of all the minority parties shall never, under this provision, be more than nine or that of Representatives more than seventeen.

In order to select additional members of the Legislative Assembly from a minority party in accordance with these provisions, its candidates at large who have not been elected shall be the first to be declared elected in the order of the votes that they have obtained, and thereafter its district candidates who, not not having been elected, have obtained in their respective districts the highest proportion of the total number of votes cast as compared to the proportion of votes cast in favor of other candidates of the same party not elected to an equal office in the other districts.

The additional Senators and Representatives whose election is declared under this section shall be considered for all purposes as Senators at Large or Representatives at Large.

The measures necessary to implement these guarantees, the method of adjudicating fractions that may result from the application of the rules contained in this section, and the minimum number of votes that a minority party must cast in favor of its candidate for Governor in order to have the right to the representation provided herein shall be determined by the Legislative Assembly.

SECTION 8.—The term of office of Senators and Representative shall begin on the second day of January immediately following the date of the general election in which they shall have been elected.   If, prior to the fifteen months immediately preceding the date of the next general election, a vacancy occurs in the office of Senator or Representative for a district, the Governor shall call a special election in said district within thirty days following the date on which the vacancy occurs. This election shall be held not later than ninety days after the call, and the person elected shall hold office for the rest of the unexpired term of his predecessor. When said vacancy occurs during a legislative session, or when the Legislative Assembly or the Senate has been called for a date prior to the certification of the results of the special election, the presiding officer of the appropriate house shall fill said vacancy by appointing the person recommended by the central committee of the political party of which his predecessor in office was a member. Such person shall hold the office until certification of the election of the candidate who was elected.   When the vacancy occurs within fifteen months prior to a general election, or when it occurs in the office of a Senator at Large or a Representative at Large, the presiding officer of the appropriate house shall fill it, upon the recommendation of the political party of which the previous holder of the office was a member, by appointing a person selected in the same manner as that in which his predecessor was selected.   A vacancy in the office of a Senator at Large or a Representative at Large elected as an independent candidate shall be filled by an election in all districts.

SECTION 9.—Each house shall be the sole judge of the election, returns and qualifications of its members; shall choose its own officers; shall adopt rules for its own proceedings appropriate to legislative bodies; and, with the concurrence of three-fourths of the total number of members of which it is composed, may expel any member for the causes established in Section 21 of this Article, authorizing impeachments.   The Senate shall elect a President and the House of Representatives a Speaker from among their respective members.

SECTION 10.—The Legislative Assembly shall be deemed a continuous body during the term for which its members are elected and shall meet in regular session each year commencing on the second Monday in January.   The duration of regular sessions and the periods of time for introduction and consideration of bills

APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO  15

shall be prescribed by law.  When the Governor calls the Legislative Assembly into special session it may consider only those matters specified in the call or in any special message sent to it by him during the session.  No special session shall continue longer than twenty calendar days.

SECTION 11.—The sessions of each house shall be open.

SECTION 12.—A majority of the total number of members of which each house is composed shall constitute a quorum, but a smaller number may adjourn from day to day and shall have authority to compel the attendance of absent members.

SECTION 13.—The two houses shall meet in the Capitol of Puerto Rico and neither of them may adjourn for more than three consecutive days without the consent of the other.

SECTION 14.—No member of the Legislative Assembly shall be arrested while the house of which he is a member is in session, or during the fifteen days before or after such session, except for treason, felony or breach of the peace.  The members of the Legislative Assembly shall not be questioned in any other place for any speech, debate or vote in either house or in any committee.

SECTION 15.—No Senator or Representative may, during the term for which he was elected or chosen, be appointed to any civil office in the Government of Puerto Rico, its municipalities or instrumentalities, which shall have been created or the salary of which shall have been increased during said term.  No person may hold office in the Government of Puerto Rico, its municipalities or instrumentalities and be a Senator or Representative at the same time.  These provisions shall not prevent a member of the Legislative Assembly from being designated to perform functions *ad honorem*.

SECTION 16.—The Legislative Assembly shall have the power to create, consolidate or reorganize executive departments and to define their functions.

SECTION 17.—No bill shall become a law unless it has been printed, read, referred to a committee and returned therefrom with a written report, but either house may discharge a committee from the study and report of any bill and proceed to the consideration thereof.  Each house shall keep a journal of its proceedings and of the votes cast for and against bills.  The legislative proceedings shall be published in a daily record in the form determined by law.  Every bill, except general appropriation bills, shall be confined to one subject, which shall be clearly expressed in its title, and any part of an act whose subject has not been expressed in the title shall be void.  The general appropriation act shall contain only appropriations and rules for their disbursement.  No bill shall be amended in a manner that changes its original purpose or incorporates matters extraneous to it.  In amending any article or section of a law, said article or section shall be promulgated in its entirety as amended.  All bills for raising revenue shall originate in the House of Representatives, but the Senate may propose or concur with amendments as on other bills.

SECTION 18.—The subjects which may be dealt with by means of joint resolution shall be determined by law, but every joint resolution shall follow the same legislative process as that of a bill.

SECTION 19.—Every bill which is approved by a majority of the total number of members of which each house is composed shall be submitted to the Governor and shall become law if he signs it or if he does not return it, with his objections, to the house in which it originated within ten days (Sundays excepted) counting from the date on which he shall have received it.

When the Governor returns a bill, the house that receives it shall enter his objections on its journal and both houses may reconsider it.  If approved by two-thirds of the total number of members of which each house is composed, said bill shall become law.

If the Legislative Assembly adjourns *sine die* before the Governor has acted on a bill that has been presented to him less than ten days before, he is relieved of the obligation of returning it with his objections and the bill shall become law only if the Governor signs it within thirty days after receiving it.

Every final passage or reconsideration of a bill shall be by a roll-call vote.

SECTION 20.—In approving any appropriation bill that contains more than one item, the Governor may eliminate one or more of such items or reduce their amounts, at the same time reducing the total amounts involved.

SECTION 21.—The House of Representatives shall have exclusive power to initiate impeachment proceedings and, with the concurrence of two-thirds of the total number of members of which it is composed, to bring an indictment.  The Senate shall have exclusive power to try and to decide impeachment cases, and in meeting for such purposes the Senators shall act in the name of the people and under oath or affirmation.  No judgment of conviction in an impeachment trial

**16** APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

shall be pronounced without the concurrence of three-fourths of the total number of members of which the Senate is composed, and the judgment shall be limited to removal from office. The person impeached, however, may be liable and subject to indictment, trial, judgment and punishment according to law. The causes of impeachment shall be treason, bribery, other felonies, and misdemeanors involving moral turpitude. The Chief Justice of the Supreme Court shall preside at the impeachment trial of the Governor.

The two houses may conduct impeachment proceedings in their regular or special sessions. The presiding officers of the two houses, upon written request of two-thirds of the total number of members of which the House of Representatives is composed, must convene them to deal with such proceedings.

SECTION 22.—The Governor shall appoint a Controller with the advice and consent of a majority of the total number of members of which each house is composed. The Controller shall meet the requirements prescribed by law and shall hold office for a term of ten years and until his successor has been appointed and qualifies. The Controller shall audit all the revenues, accounts and expenditures of the Commonwealth, of its agencies and instrumentalities and of its municipalities, in order to determine whether they have been made in accordance with law. He shall render annual reports and any special reports that may be required of him by the Legislative Assembly or by the Governor.

In the performance of his duties the Controller shall be authorized to administer oaths, take evidence and compel, under pain of contempt, the attendance of witnesses and the production of books, letters, documents, papers, records and all other articles deemed essential to a full understanding of the matter under investigation.

The Controller may be removed for the causes and pursuant to the procedure established in the preceding section.

### ARTICLE IV

#### THE EXECUTIVE

SECTION 1.—The executive power shall be vested in a Governor, who shall be elected by direct vote in each general election.

SECTION 2.—The Governor shall hold office for the term of four years from the second day of January of the year following his election and until his successor has been elected and qualifies. He shall reside in Puerto Rico and maintain his office in its capital city.

SECTION 3.—No person shall be Governor unless, on the date of the election, he is at least thirty-five years of age, and is and has been during the preceding five years a citizen of the United States and a citizen and *bona fide* resident of Puerto Rico.

SECTION 4.—The Governor shall execute the laws and cause them to be executed.

He shall call the Legislative Assembly or the Senate into special session when in his judgment the public interest so requires.

He shall appoint, in the manner prescribed by this Constitution or by law, all officers whose appointment he is authorized to make. He shall have the power to make appointments while the Legislative Assembly is not in session. Any such appointments that require the advice and consent of the Senate or of both houses shall expire at the end of the next regular session.

He shall be the commander-in-chief of the militia.

He shall have the power to call out the militia and summon the *posse comitatus* in order to prevent or suppress rebellion, invasion or any serious disturbance of the public peace.

He shall have the power to proclaim martial law when the public safety requires it in case of rebellion or invasion or imminent danger thereof. The Legislative Assembly shall meet forthwith on their own initiative to ratify or revoke the proclamation.

He shall have the power to suspend the execution of sentences in criminal cases and to grant pardons, commutations of punishment, and total or partial remissions of fines and forfeitures for crimes committed in violation of the laws of Puerto Rico. This power shall not extend to cases of impeachment.

He shall approve or disapprove in accordance with this Constitution the joint resolutions and bills passed by the Legislative Assembly.

He shall present to the Legislative Assembly, at the beginning of each regular session, a message concerning the affairs of the Commonwealth and a report concerning the state of the Treasury of Puerto Rico and the proposed expenditures for

the ensuing fiscal year.   Said report shall contain the information necessary for the formulation of a program of legislation.

He shall exercise the other powers and functions and discharge the other duties assigned to him by this Constitution or by law.

SECTION 5.—For the purpose of exercising executive power, the Governor shall be assisted by Secretaries whom he shall appoint with the advice and consent of the Senate.   The appointment of the Secretary of State shall in addition require the advice and consent of the House of Representatives, and the person appointed shall fulfill the requirements established in Section 3 of this Article.   The Secretaries shall collectively constitute the Governor's advisory council, which shall be designated as the Council of Secretaries.

SECTION 6.—Without prejudice to the power of the Legislative Assembly to create, reorganize and consolidate executive departments and to define their functions, the following departments are hereby established: State, Justice, Education, Health, Treasury, Labor, Agriculture and Commerce, and Public Works.   Each of these executive departments shall be headed by a Secretary.

SECTION 7.—When a vacancy occurs in the office of Governor, caused by death, resignation, removal, total and permanent incapacity, or any other absolute disability, said office shall devolve upon the Secretary of State, who shall hold it for the rest of the term and until a new Governor has been elected and qualifies. In the event that vacancies exist at the same time in both the office of Governor and that of Secretary of State, the law shall provide which of the Secretaries shall serve as Governor.

SECTION 8.—When for any reason the Governor is temporarily unable to perform his functions, the Secretary of State shall substitute for him during the period he is unable to serve.   If for any reason the Secretary of State is not available, the Secretary determined by law shall temporarily hold the office of Governor.

SECTION 9.—If the Governor-elect shall not have qualified, or if he has qualified and a permanent vacancy occurs in the office of Governor before he shall have appointed a Secretary of State, or before said Secretary, having been appointed, shall have qualified, the Legislative Assembly just elected, upon convening for its first regular session, shall elect, by a majority of the total number of members of which each house is composed, a Governor who shall hold office until his successor is elected in the next general election and qualifies.

SECTION 10.—The Governor may be removed for the causes and pursuant to the procedure established in Section 21 of Article III of this Constitution.

## ARTICLE V

### THE JUDICIARY

SECTION 1.—The judicial power of Puerto Rico shall be vested in a Supreme Court, and in such other courts as may be established by law.

SECTION 2.—The courts of Puerto Rico shall constitute a unified judicial system for purposes of jurisdiction, operation and administration.   The Legislative Assembly may create and abolish courts, except for the Supreme Court, in a manner not inconsistent with this Constitution, and shall determine the venue and organization of the courts.

SECTION 3.—The Supreme Court shall be the court of last resort in Puerto Rico and shall be composed of a Chief Justice and four Associate Justices.   The number of Justices may be changed only by law upon request of the Supreme Court.

SECTION 4.—The Supreme Court shall sit, in accordance with rules adopted by it, as a full court or in divisions.   All the decisions of the Supreme Court shall be concurred in by a majority of its members.   No law shall be held unconstitutional except by a majority of the total number of Justices of which the Court is composed in accordance with this Constitution or with law.

SECTION 5.—The Supreme Court, any of its divisions, or any of its Justices may hear in the first instance petitions for *habeas corpus* and any other causes and proceedings as determined by law.

SECTION 6.—The Supreme Court shall adopt for the courts rules of evidence and of civil and criminal procedure which shall not abridge, enlarge or modify the substantive rights of the parties.   The rules thus adopted shall be submitted to the Legislative Assembly at the beginning of its next regular session and shall not go into effect until sixty days after the close of said session, unless disapproved by the Legislative Assembly, which shall have the power both at said session and subsequently to amend, repeal or supplement any of said rules by a specific law to that effect.

18 APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

SECTION 7.—The Supreme Court shall adopt rules for the administration of the courts. These rules shall be subject to the laws concerning procurement, personnel, audit and appropriation of funds, and other laws which apply generally to all branches of the government. The Chief Justice shall direct the administration of the courts and shall appoint an administrative director who shall hold office at the will of the Chief Justice.

SECTION 8.—Judges shall be appointed by the Governor with the advice and consent of the Senate. Justices of the Supreme Court shall not assume office until after confirmation by the Senate and shall hold their offices during good behavior. The terms of office of the other judges shall be fixed by law and shall not be less than that fixed for the term of office of a judge of the same or equivalent category existing when this Constitution takes effect. The other officials and employees of the courts shall be appointed in the manner provided by law.

SECTION 9.—No person shall be appointed a Justice of the Supreme Court unless he is a citizen of the United States and of Puerto Rico, shall have been admitted to the practice of law in Puerto Rico at least ten years prior to his appointment, and shall have resided in Puerto Rico at least five years immediately prior thereto.

SECTION 10.—The Legislative Assembly shall establish a retirement system for judges. Retirement shall be compulsory at the age of seventy years.

SECTION 11.—Justices of the Supreme Court may be removed for the causes and pursuant to the procedure established in Section 21 of Article III of this Constitution. Judges of the other courts may be removed by the Supreme Court for the causes and pursuant to the procedure provided by law.

SECTION 12.—No judge shall make a direct or indirect financial contribution to any political organization or party, or hold any executive office therein, or participate in a political campaign of any kind, or be a candidate for an elective public office unless he has resigned his judicial office at least six months prior to his nomination.

SECTION 13.—In the event that a court or any of its divisions or sections is changed or abolished by law, the person holding a post of judge therein shall continue to hold it during the rest of the term for which he was appointed and shall perform the judicial functions assigned to him by the Chief Justice of the Supreme Court.

## ARTICLE VI

### GENERAL PROVISIONS

SECTION 1.—The Legislative Assembly shall have the power to create, abolish, consolidate and reorganize municipalities; to change their territorial limits; to determine their organization and functions; and to authorize them to develop programs for the general welfare and to create any agencies necessary for that purpose.

No law abolishing or consolidating municipalities shall take effect until ratified in a referendum by a majority of the qualified electors voting in said referendum in each of the municipalities to be abolished or consolidated. The referendum shall be conducted in the manner determined by law, which shall include the applicable procedures of the election laws in effect when the referendum law is approved.

SECTION 2.—The power of the Commonwealth of Puerto Rico to impose and collect taxes and to authorize their imposition and collection by municipalities shall be exercised as determined by the Legislative Assembly and shall never be surrendered or suspended. The power of the Commonwealth of Puerto Rico to contract and to authorize the contracting of debts shall be exercised as determined by the Legislative Assembly.

SECTION 3.—The rule of taxation in Puerto Rico shall be uniform.

SECTION 4.—General elections shall be held every four years on the day of November determined by the Legislative Assembly. In said elections there shall be elected a Governor, the members of the Legislative Assembly, and the other officials whose election on that date is provided for by law.

Every person over twenty-one years of age shall be entitled to vote if he fulfills the other conditions determined by law. No person shall be deprived of the right to vote because he does not know how to read or write or does not own property.

All matters concerning the electoral process, registration of voters, political parties and candidates shall be determined by law.

Every popularly elected official shall be elected by direct vote and any candidate who receives more votes than any other candidate for the same office shall be declared elected.

APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO   19

SECTION 5.—The laws shall be promulgated in accordance with the procedure prescribed by law and shall specify the terms under which they shall take effect.

SECTION 6.—If at the end of any fiscal year the appropriations necessary for the ordinary operating expenses of the government and for the payment of interest on and amortization of the public debt for the ensuing fiscal year shall not have been made, the several sums appropriated in the last appropriation acts for the objects and purposes therein specified, so far as the same may be applicable, shall continue in effect item by item, and the Governor shall authorize the payments necessary for such purposes until corresponding appropriations are made.

SECTION 7.—The appropriations made for any fiscal year shall not exceed the total revenues, including available surplus, estimated for said fiscal year unless the imposition of taxes sufficient to cover said appropriations is provided by law.

SECTION 8.—In case the available revenues including surplus for any fiscal year are insufficient to meet the appropriations made for that year, interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law.

SECTION 9.—Public property and funds shall only be disposed of for public purposes, for the support and operation of state institutions, and pursuant to law.

SECTION 10.—No law shall give extra compensation to any public officer, employee, agent or contractor after services shall have been rendered or contract made.   No law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment.   No person shall draw a salary for more than one office or position in the government of Puerto Rico.

SECTION 11.—The salaries of the Governor, the Secretaries, the members of the Legislative Assembly, the Controller and Judges shall be fixed by a special law and, except for the salaries of the members of the Legislative Assembly, shall not be decreased during the terms for which they are elected or appointed.   The salaries of the Governor and the Controller shall not be increased during said terms.  No increase in the salaries of the members of the Legislative Assembly shall take effect until after the expiration of the term of the Legislative Assembly during which it is enacted.   Any reduction of the salaries of the members of the Legislative Assembly shall be effective only during the term of the Legislative Assembly which approves it.

SECTION 12.—The Governor shall occupy and use, free of rent, the buildings and properties belonging to the Commonwealth which have been or shall hereafter be used and occupied by him as chief executive.

SECTION 13.—The procedure for granting franchises, rights, privileges and concessions of a public or quasi-public nature shall be determined by law, but every concession of this kind to a person or private entity must be approved by the Governor or by the executive official whom he designates.   Every franchise, right, privilege or concession of a public or quasi-public nature shall be subject to amendment, alteration or repeal as determined by law.

SECTION 14.—No corporation shall be authorized to conduct the business of buying and selling real estate or be permitted to hold or own real estate except such as may be reasonably necessary to enable it to carry out the purposes for which it was created, and every corporation authorized to engage in agriculture shall by its charter be restricted to the ownership and control of not to exceed five hundred acres of land; and this provision shall be held to prevent any member of a corporation engaged in agriculture from being in any wise interested in any other corporation engaged in agriculture.

Corporations, however, may loan funds upon real estate security, and purchase real estate when necessary for the collection of loans, but they shall dispose of real estate so obtained within five years after receiving the title.

Corporations not organized in Puerto Rico, but doing business in Puerto Rico, shall be bound by the provisions of this section so far as they are applicable.

These provisions shall not prevent the ownership, possession or management of lands in excess of five hundred acres by the Commonwealth, its agencies or instrumentalities.

SECTION 15.—The Legislative Assembly shall determine all matters concerning the flag, the seal and the anthem of the Commonwealth.   Once determined, no law changing them shall take effect until one year after the general election next following the date of enactment of said law.

SECTION 16.—All public officials and employees of the Commonwealth, its agencies, instrumentalities and political subdivisions before entering upon their respective duties, shall take an oath to support the Constitution of the United States and the Constitution and laws of the Commonwealth of Puerto Rico.

**20** APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

SECTION 17.—In case of invasion, rebellion, epidemic or any other event giving rise to a state of emergency, the Governor may call the Legislative Assembly to meet in a place other than the Capitol of Puerto Rico, subject to the approval or disapproval of the Legislative Assembly. Under the same conditions, the Governor may, during the period of emergency, order the government, its agencies and instrumentalities to be moved temporarily to a place other than the seat of the government.

SECTION 18.—All criminal actions in the courts of the Commonwealth shall be conducted in the name and by the authority of "The People of Puerto Rico" until otherwise provided by law.

SECTION 19.—It shall be the public policy of the Commonwealth to conserve, develop and use its natural resources in the most effective manner possible for the general welfare of the community; to conserve and maintain buildings and places declared by the Legislative Assembly to be of historic or artistic value; to regulate its penal institutions in a manner that effectively achieves their purposes and to provide, within the limits of available resources, for adequate treatment of delinquents in order to make possible their moral and social rehabilitation.

## ARTICLE VII

### AMENDMENTS TO THE CONSTITUTION

SECTION 1.—The Legislative Assembly may propose amendments to this Constitution by a concurrent resolution approved by not less than two-thirds of the total number of members of which each house is composed. All proposed amendments shall be submitted to the qualified electors in a special referendum, but if the concurrent resolution is approved by not less than three-fourths of the total number of members of which each house is composed, the Legislative Assembly may provide that the referendum shall be held at the same time as the next general election. Each proposed amendment shall be voted on separately and not more than three proposed amendments may be submitted at the same referendum. Every proposed amendment shall specify the terms under which it shall take effect, and it shall become a part of this Constitution if it is ratified by a majority of the electors voting thereon. Once approved, a proposed amendment must be published at least three months prior to the date of the referendum.

SECTION 2.—The Legislative Assembly, by a concurrent resolution approved by two-thirds of the total number of members of which each house is composed, may submit to the qualified electors at a referendum, held at the same time as a general election, the question of whether a constitutional convention shall be called to revise this Constitution. If a majority of the electors voting on this question vote in favor of the revision, it shall be made by a Constitutional Convention elected in the manner provided by law. Every revision of this Constitution shall be submitted to the qualified electors at a special referendum for ratification or rejection by a majority of the votes cast at the referendum.

SECTION 3.—No amendment to this Constitution shall alter the republican form of government established by it or abolish its bill of rights.

## ARTICLE VIII

### SENATORIAL AND REPRESENTATIVE DISTRICTS

SECTION 1.—The senatorial and representative districts shall be the following:

I.—SENATORIAL DISTRICT OF SAN JUAN, which shall be composed of the following Representative Districts: 1.—The Capital of Puerto Rico, excluding the present electoral precincts of Santurce and Río Piedras; 2.—Electoral zones numbers 1 and 2 of the present precinct of Santurce; 3.—Electoral zone number 3 of the present precinct of Santurce; 4.—Electoral zone number 4 of the present precinct of Santurce; and 5.—Wards Hato Rey, Puerto Nuevo and Caparra Heights of the Capital of Puerto Rico.

II.—SENATORIAL DISTRICT OF BAYAMÓN, which shall be composed of the following Representative Districts: 6.—The municipality of Bayamón; 7.—The municipalities of Carolina and Trujillo Alto; 8.—The present electoral precinct of Río Piedras, excluding wards Hato Rey, Puerto Nuevo and Caparra Heights of the Capital of Puerto Rico; 9.—The municipalities of Cataño, Guaynabo and Toa Baja; and 10.—The municipalities of Toa Alta, Corozal and Naranjito.

III.—SENATORIAL DISTRICT OF ARECIBO, which shall be composed of the following Representative Districts: 11.—The municipalities of Vega Baja, Vega Alta and Dorado; 12.—The municipalities of Manatí and Barceloneta; 13.—The

municipalities of Ciales and Morovis; 14.—The municipality of Arecibo; and 15.—The municipality of Utuado.

IV.—SENATORIAL DISTRICT OF AGUADILLA, which shall be composed of the following Representative Districts: 16.—The municipalities of Camuy, Hatillo and Quebradillas; 17.—The municipalities of Aguadilla and Isabela; 18.—The municipalities of San Sebastián and Moca; 19.—The municipalities of Lares, Las Marías and Maricao; and 20.—The municipalities of Añasco, Aguada and Rincón.

V.—SENATORIAL DISTRICT OF MAYAGÜEZ, which shall be composed of the following Representative Districts: 21.—The municipality of Mayagüez; 22.—The municipalities of Cabo Rojo, Hormigueros and Lajas; 23.—The municipalities of San Germán and Sábana Grande; 24.—The municipalities of Yauco and Guánica; and 25.—The municipalities of Guayanilla and Peñuelas.

VI.—SENATORIAL DISTRICT OF PONCE, which shall be composed of the following Representative Districts: 26.—The first, second, third, fourth, fifth and sixth wards and the City Beach of the municipality of Ponce; 27.—The municipality of Ponce, except for the first, second, third, fourth, fifth and sixth wards and the City Beach; 28.—The municipalities of Adjuntas and Jayuya; 29.—The municipalities of Juana Díaz, Santa Isabel and Villalba; and 30.—The municipalities of Coamo and Orocovis.

VII.—SENATORIAL DISTRICT OF GUAYAMA, which shall be composed of the following Representative Districts: 31.—The municipalities of Aibonito, Barranquitas and Comerío; 32.—The municipalities of Cayey and Cidra; 33.—The municipalities of Caguas and Aguas Buenas; 34.—The municipalities of Guayama and Salinas; and 35.—The municipalities of Patillas, Maunabo and Arroyo.

VIII.—SENATORIAL DISTRICT OF HUMACAO, which shall be composed of the following Representative Districts: 36.—The municipalities of Humacao and Yabucoa; 37.—The municipalities of Juncos, Gurabo and San Lorenzo; 38.—The municipalities of Naguabo, Ceiba and Las Piedras; 39.—The municipalities of Fajardo and Vieques and the Island of Culebra; and 40.—The municipalities of Río Grande, Loíza and Luquillo.

SECTION 2.—Electoral zones numbers 1, 2, 3 and 4 included in three representative districts within the senatorial district of San Juan are those presently existing for purposes of electoral organization in the second precinct of San Juan.

## ARTICLE IX

### TRANSITORY PROVISIONS

SECTION 1.—When this Constitution goes into effect all laws not inconsistent therewith shall continue in full force until amended or repealed, or until they expire by their own terms.

Unless otherwise provided by this Constitution, civil and criminal liabilities, rights, franchises, concessions, privileges, claims, actions, causes of action, contracts, and civil, criminal and administrative proceedings shall continue unaffected, notwithstanding the taking effect of this Constitution.

SECTION 2.—All officers who are in office by election or appointment on the date this Constitution takes effect shall continue to hold their offices and to perform the functions thereof in a manner not inconsistent with this Constitution, unless the functions of their offices are abolished or until their successors are selected and qualify in accordance with this Constitution and laws enacted pursuant thereto.

SECTION 3.—Notwithstanding the age limit fixed by this Constitution for compulsory retirement, all the judges of the courts of Puerto Rico who are holding office on the date this Constitution takes effect shall continue to hold their judicial offices until the expiration of the terms for which they were appointed, and in the case of Justices of the Supreme Court during good behavior.

SECTION 4.—The Commonwealth of Puerto Rico shall be the successor of the People of Puerto Rico for all purposes, including without limitation the collection and payment of debts and liabilities in accordance with their terms.

SECTION 5.—When this Constitution goes into effect, the term "citizen of the Commonwealth of Puerto Rico" shall replace the term "citizen of Puerto Rico" as previously used.

SECTION 6.—Political parties shall continue to enjoy all rights recognized by the election law, provided that on the effective date of this Constitution they fulfill the minimum requirements for the registration of new parties contained in said law.   Five years after this Constitution shall have taken effect the Legislative

**22** APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

Assembly may change these requirements, but any law increasing them shall not go into effect until after the general election next following its enactment.

SECTION 7.—The Legislative Assembly may enact the laws necessary to supplement and make effective these transitory provisions in order to assure the functioning of the government until the officers provided for by this Constitution are elected or appointed and qualify, and until this Constitution takes effect in all respects.

SECTION 8.—If the Legislative Assembly creates a Department of Commerce, the Department of Agriculture and Commerce shall thereafter be called the Department of Agriculture.

SECTION 9.—The first election under the provisions of this Constitution shall be held on the date provided by law, but not later than six months after the effective date of this Constitution. The second general election under this Constitution shall be held in the month of November 1956 on a day provided by law.

SECTION 10.—This Constitution shall take effect when the Governor so proclaims, but not later than sixty days after its ratification by the Congress of the United States.

Done in Convention, at San Juan, Puerto Rico, on the sixth day of February, in the year of Our Lord one thousand nine hundred and fifty-two.

I, José Berríos Berdecía, Secretary of the Constitutional Convention of Puerto Rico, certify: That this booklet, consisting of twenty-five pages, contains a true and exact copy of the Constitution of The Commonwealth of Puerto Rico, as approved by the Constitutional Convention of Puerto Rico on the fifth day of February of nineteen hundred and fifty-two.

I further certify, that the final vote in approving the said Constitution was eighty-eight votes in favor of approval and three votes against approval.

Issued under my hand and the seal of the Constitutional Convention, for transmittal to the Honorable Governor of Puerto Rico, at San Juan, this sixth of February of the year of Our Lord nineteen hundred and fifty-two.

[SEAL]

JOSÉ BERRÍOS BERDECÍA
*Secretary, Constitutional Convention of Puerto Rico*

---

# APPENDIX II

Statutory provisions which enabled the people of Puerto Rico to decide whether they desired a constitution for local self-government and providing steps leading to approval or rejection of such a constitution are contained in Public Law 600 which follows:

[PUBLIC LAW 600—81ST CONGRESS]

[CHAPTER 446—2D SESSION]

[S. 3336]

AN ACT

To provide for the organization of a constitutional government by the people of Puerto Rico.

Whereas the Congress of the United States by a series of enactments has progressively recognized the right of self-government of the people of Puerto Rico; and

Whereas under the terms of these congressional enactments an increasingly large measure of self-government has been achieved: Therefore

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That, fully recognizing the principle of government by consent, this Act is now adopted in the nature of a compact so that the people of Puerto Rico may organize a government pursuant to a constitution of their own adoption.

SEC. 2. This Act shall be submitted to the qualified voters of Puerto Rico for acceptance or rejection through an island-wide referendum to be held in accordance with the laws of Puerto Rico. Upon the approval of this Act, by a majority of the voters participating in such referendum, the Legislature of Puerto Rico is

APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO   23

authorized to call a constitutional convention to draft a constitution for the said island of Puerto Rico. The said constitution shall provide a republican form of government and shall include a bill of rights.

SEC. 3. Upon adoption of the constitution by the people of Puerto Rico, the President of the United States is authorized to transmit such constitution to the Congress of the United States if he finds that such constitution conforms with the applicable provisions of this Act and of the Constitution of the United States.

Upon approval by the Congress the constitution shall become effective in accordance with its terms.

SEC. 4. Except as provided in section 5 of this Act, the Act entitled "An Act to provide a civil government for Porto Rico, and for other purposes", approved March 2, 1917, as amended, is hereby continued in force and effect and may hereafter be cited as the "Puerto Rican Federal Relations Act".

SEC. 5. At such time as the constitution of Puerto Rico becomes effective, the following provisions of such Act of March 2, 1917, as amended, shall be deemed repealed:

(1) Section 2, except the paragraph added thereto by Public Law 362, Eightieth Congress, first session, approved August 5, 1947.

(2) Sections 4, 12, 12a, 13, 14, 15, 16, 17, 18, 18a, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 39, 40, 49, 49b, 50, 51, 52, 53, 56, and 57.

(3) The last paragraph in section 37.

(4) Section 38, except the second paragraph thereof which begins with the words "The Interstate Commerce Act" and ends with the words "shall not apply in Puerto Rico".

SEC. 6. All laws or parts of laws inconsistent with this Act are hereby repealed.

Approved July 3, 1950.

---

## APPENDIX III

Such sections of the present organic act as are continued in effect after the approval of the constitution shall be known as the Puerto Rican Federal Relations Act, as provided in Public Law 600, as follows:

### THE PUERTO RICAN FEDERAL RELATIONS ACT

#### (As referred to in Public Law 600)

#### Compiled and revised by Hon. A. Fernós-Isern, Resident Commissioner of Puerto Rico

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the provisions of this Act shall apply to the Island of Puerto Rico and to the adjacent islands belonging to the United States, and waters of those islands—and the name Puerto Rico as used in this Act shall be held to include not only the island of that name but all the adjacent islands as aforesaid.

SEC. 2. The rights, privileges, and immunities of citizens of the United States shall be respected in Puerto Rico to the same extent as though Puerto Rico were a State of the Union and subject to the provisions of paragraph 1 of section 2 of article IV of the Constitution of the United States.

SEC. 3 (as amended August 26, 1937, 50 Stat. 843). That no export duties shall be levied or collected on exports from Puerto Rico, but taxes and assessments on property, income taxes, internal revenue, and license fees, and royalties for franchises, privileges, and concessions may be imposed for the purposes of the insular and municipal governments, respectively, as may be provided and defined by the Legislature of Puerto Rico; and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by Puerto Rico or any municipal government therein as may be provided by law, and to protect the public credit: *Provided, however,* That no public indebtedness of Puerto Rico and the municipalities of San Juan, Ponce, Mayaguez, Arecibo and Rio Piedras shall be allowed in excess of 10 per centum of the aggregate tax valuation of its property and no public indebtedness of any other subdivision or municipality of Puerto Rico shall hereafter be allowed in excess of 5 per centum of the aggregate tax valuation of the property in any such subdivision or municipality, and all bonds issued by the government of Puerto Rico, or by its authority, shall be exempt from taxation by the Government of the United States, or by the government of

**24** APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

Puerto Rico or of any political or municipal subdivision thereof, or by any State, Territory, or possession or by any county, municipality, or other municipal subdivision of any State, Territory, or possession of the United States, or by the District of Columbia. In computing the indebtedness of the people of Puerto Rico, municipal bonds for the payment of interest and principal of which the good faith of the people of Puerto Rico has heretofore been pledged and bonds issued by the people of Puerto Rico secured by bonds to an equivalent amount of bonds of municipal corporations or school boards of Puerto Rico shall not be counted, but all bonds hereafter issued by any municipality or subdivision within the 5 per centum hereby authorized for which the good faith of the people of Puerto Rico is pledged shall be counted.

*And it is further provided,* That the internal-revenue taxes levied by the Legislature of Puerto Rico in pursuance of the authority granted by this Act on articles, goods, wares, or merchandise may be levied and collected as such legislature may direct, on the articles subject to said tax, as soon as the same are manufactured, sold, used, or brought into the Island: *Provided,* That no discrimination be made between the articles imported from the United States or foreign countries and similar articles produced or manufactured in Puerto Rico. The officials of the Customs and Postal Services of the United States are hereby directed to assist the appropriate officials of the Puerto Rican government in the collection of these taxes.

SEC. 5. That all citizens of Puerto Rico, as defined by section seven of the Act of April twelfth, nineteen hundred, "temporarily to provide revenues and a civil government for Puerto Rico, and for other purposes", and all natives of Puerto Rico who were temporarily absent from that island on April eleventh, eighteen hundred and ninety-nine, and have since returned and are permanently residing in that island, and are not citizens of any foreign country, are hereby declared and shall be deemed and held to be, citizens of the United States: *Provided,* That any person hereinbefore described may retain his present political status by making a declaration, under oath, of his decision to do so within six months of the taking effect of this Act before the district court in the district in which he resides, the declaration to be in form as follows:

"I, _____ , being duly sworn, hereby declare my intention not to become a citizen of the United States as provided in the Act of Congress conferring United States citizenship upon citizens of Puerto Rico and certain natives permanently residing in said island."

In the case of any such person who may be absent from the island during said six months the term of this proviso may be availed of by transmitting a declaration, under oath, in the form herein provided within six months of the taking effect of this Act to the Executive Secretary of Puerto Rico: *And provided, further,* That any person who is born in Puerto Rico of an alien parent and is permanently residing in that island may, if of full age, within six months of the taking effect of this Act, or if a minor, upon reaching his majority, or within one year thereafter, make a sworn declaration of allegiance to the United States before the United States District Court for Puerto Rico, setting forth therein all the facts connected with his or her birth and residence in Puerto Rico and accompanying due proof thereof, and from and after the making of such declaration shall be considered to be a citizen of the United States.

SEC. 5a. (new section inserted by Act of Congress approved March 4, 1927—44 Stat. 1418). That all citizens of the United States who have resided or who shall hereafter reside in the island for one year shall be citizens of Puerto Rico: *Provided,* That persons born in Puerto Rico of alien parents, referred to in the last paragraph of section 5, who did not avail themselves of the privilege granted to them of becoming citizens of the United States, shall have a period of one year from the approval of this Act to make the declaration provided for in the aforesaid section: *And provided, further,* That persons who elected to retain the political status of citizens of Puerto Rico may within one year after the passage of this Act become citizens of the United States upon the same terms and in the same manner as is provided for the naturalization of native Puerto Ricans born of foreign parents.

SEC. 5b (new section inserted by an Act of Congress approved June 27, 1934). All persons born in Puerto Rico on or after April 11, 1899 (whether before or after the effective date of this Act), and not citizens, subjects, or nationals of any foreign power, are hereby declared to be citizens of the United States: *Provided,* That this Act shall not be construed as depriving any person, native of Puerto Rico, of his or her American citizenship heretofore otherwise lawfully acquired by such persons; or to extend such citizenship to persons who shall have renounced

or lost it under the treaties and/or laws of the United States or who are now re-
siding permanently abroad and are citizens or subjects of a foreign country.

Sec. 5c (new section inserted by an Act of Congress approved May 16, 1938).
That any person of good character, attached to the principles of the Constitution
of the United States, and well disposed to the good order and happiness of the
United States, and born in Puerto Rico on or after April 11, 1899, who has contin-
ued to reside within the jurisdiction of the United States, whose father elected on
or before April 11, 1900, to preserve his allegiance to the Crown of Spain in ac-
cordance with the provisions of the treaty of peace between the United States and
Spain entered into on April 11, 1899, and who, by reason of misinformation re-
garding his or her own citizenship status failed within the time limits prescribed
by section 5 or section 5a hereof to exercise the privilege of establishing United
States citizenship and has heretofore erroneously but in good faith exercised the
rights and privileges and performed the duties of a citizen of the United States,
and has not personally sworn allegiance to any foreign government or ruler upon
or after attainment of majority, may make a sworn declaration of allegiance to
the United States before any United States district court. Such declaration shall
set forth facts concerning his or her birth in Puerto Rico, good character, attach-
ment to the principles of the Constitution of the United States, and being well
disposed to the good order and happiness of the United States, residence within
the jurisdiction of the United States, and misinformation regarding United States
citizenship status, and shall be accompanied by proof thereof satisfactory to the
court. After making such declaration and submitting such proofs, such person
shall be admitted to take the oath of allegiance before the court, and thereupon
shall be considered a citizen of the United States.

Sec. 5b (1948). Section 404 (c) of the Nationality Act of 1940 (U. S. C., title 8,
sec. 804 (c)) shall not be applicable to persons who acquired citizenship under
the provisions of sections 5 and 5a of this Act. This amendment to be retroactive
to October 13, 1945.[1]

Sec. 6. That all expenses that may be incurred on account of the Government
of Puerto Rico for salaries of officials and the conduct of their offices and depart-
ments, and all expenses and obligations contracted for the internal improvement
or development of the island, not however, including defenses, barracks harbors,
lighthouses, buoys, and other works undertaken by the United States, shall,
except as otherwise specifically provided by the Congress, be paid by the Treasurer
of Puerto Rico out of the revenue in his custody.

Sec. 7. That all property which may have been acquired in Puerto Rico by the
United States under the cession of Spain in the treaty of peace entered into on
the tenth day of December, eighteen hundred and ninety-eight, in any public
bridges, road houses, water powers, highways, unnavigable streams and the
beds thereof, subterranean waters, mines or minerals under the surface of private
lands, all property which, at the time of the cession, belonged, under the laws of
Spain then in force, to the various harbor works boards of Puerto Rico, all the
harbor shores, docks, slips, reclaimed lands, and all public lands and buildings
not heretofore reserved by the United States for public purposes, is hereby placed
under the control of the Government of Puerto Rico, to be administered for the
benefit of the people of Puerto Rico; and the Legislature of Puerto Rico shall
have authority, subject to the limitations imposed upon all its acts, to legislate
with respect to all such matters as it may deem advisable: *Provided*, That the
President may from time to time, in his discretion, convey to the people of Puerto
Rico, such lands, buildings, or interests in lands or other property now owned by
the United States and within the territorial limits of Puerto Rico as in his opinion
are no longer needed for purposes of the United States.[2]   And he may from time
to time accept by legislative grant from Puerto Rico any lands, buildings, or
other interests or property which may be needed for public purposes by the
United States.

Sec. 8. That the harbor areas and navigable streams and bodies of water
and submerged land underlying the same in and around the Island of Puerto
Rico and the adjacent islands and waters, now owned by the United States and
not reserved by the United States for public purposes be, and the same are hereby
placed under the control of the Government of Puerto Rico, to be administered

---

[1] The Nationality Act of 1940, Ch. 876, title I, subch. II, provides as follows:
"All persons born in Puerto Rico on or after April 11, 1899, subject to the jurisdiction of the United States,
residing on the effective date of this chapter in Puerto Rico or other territory over which the United States
exercises rights of sovereignty and not citizens of the United States under any other Act, are hereby declared
to be citizens of the United States."
[2] Except Federal property the title of which is vested in the Defense Department (under Camp Taylor
proviso 46 Stat. 1191, approved February 20, 1931).

**26** APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

in the same manner and subject to the same limitations as the property enumerated in the preceding section: *Provided,* That all laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said Island and waters and to its adjacent islands and waters: *Provided further,* That nothing in this Act contained shall be construed so as to affect or impair in any manner the terms or conditions of any authorizations, permits, or other powers heretofore lawfully granted or exercised in or in respect of said waters and submerged land in and surrounding said Island and its adjacent islands by the Secretary of War or other authorized officer or agent of the United States: *And provided further,* That the Act of Congress approved June eleventh, nineteen hundred and six, entitled, "An Act to empower the Secretary of War, under certain restrictions, to authorize the construction, extension, and maintenance of wharves, piers, and other structures on lands underlying harbor areas in navigable streams and bodies of water in or surrounding Puerto Rico and the islands adjacent thereto," and all other laws and parts of laws in conflict with this section be, and the same are hereby, repealed.

SEC. 9. That the statutory laws of the United States not locally inapplicable, except as hereinbefore or hereinafter otherwise provided, shall have the same force and effect in Puerto Rico as in the United States, except the internal-revenue laws: *Provided, however,* That hereafter all taxes collected under the internal-revenue laws of the United States or articles produced in Puerto Rico and transported to the United States or consumed in the Island shall be covered into the Treasury of Puerto Rico.

SEC. 10. That all judicial process shall run in the name of "United States of America, ss, the President of the United States," and all penal or criminal prosecution in the local courts shall be conducted in the name and by the authority of "The People of Puerto Rico"; and all officials shall be citizens of the United States, and before entering upon the duties of their respective offices, shall take an oath to support the Constitution of the United States, and the laws of Puerto Rico.

SEC. 11. That all reports required by law to be made by the Governor or heads of departments to any official of the United States shall hereafter be made to an executive department of the Government of the United States to be designated by the President, and the President is hereby authorized to place all matters pertaining to the Government of Puerto Rico in the jurisdiction of such department.

SEC. 36. (as amended May 17, 1932, 47 Stat. 158; June 5, 1934, 48 Stat. 879, March 4, 1925, 43 Stat. 1301). That the qualified electors of Puerto Rico shall at the next general election choose a Resident Commissioner to the United States, whose term of office shall begin on the date of the issuance of his certificate of election and shall continue until the fourth of March, nineteen hundred and twenty-one. At each subsequent election, beginning with the year nineteen hundred and twenty, the qualified electors of Puerto Rico shall choose a Resident Commissioner to the United States, whose term of office shall be four years from the third day of January following such general election, and who shall be entitled to receive official recognition as such Commissioner by all of the departments of the Government of the United States, upon presentation, through the Department of State, of a certificate of election of the Governor of Puerto Rico. The Resident Commissioner shall receive a salary, payable monthly by the United States, of $7,500 per annum.[3] Such Commissioner shall be allowed the same sum for stationery and for the pay of necessary clerk hire as is now allowed to Members of the House of Representatives of the United States;[3] and he shall be allowed the sum of $500 as mileage for each session of the House of Representatives and the franking privilege granted Members of Congress. No person shall be eligible to election as Resident Commissioner who is not a bona fide citizen of the United States and who is not more than twenty-five years of age, and who does not read and write the English language. In the case of a vacancy in the office of Resident Commissioner by death, resignation, or otherwise, the Governor, by and with the advice and consent of the Senate shall appoint a Resident Commissioner to fill

[3] Amended by Reorganization Act of 1944.

Case:17-03283-LTS   Doc#:4785-3   Filed:01/14/19   Entered:01/14/19 21:42:38   Desc:
Exhibit 3   Page 28 of 32

the vacancy, who shall serve until the next general election and until his successor is elected and qualified.[4][5]

SEC. 37. That the legislative authority herein provided shall extend to all matters of a legislative character not locally inapplicable, including power to create, consolidate, and reorganize the municipalities so far as may be necessary, and to provide and repeal laws and ordinances therefor; also the power to alter, amend, modify, or repeal any or all laws and ordinances of every character now in force in Puerto Rico or municipality or district thereof, insofar as such alteration, amendment, modification, or repeal may be consistent with the provisions of this Act.

SEC. 38. The Interstate Commerce Act and the several amendments made or to be made thereto, the Safety Appliance Acts and the several amendments made or to be made thereto, and the Act of Congress entitled "An Act to amend an Act entitled 'An Act to regulate commerce', approved February 4, 1887, and all Acts amendatory thereof, by providing for a valuation of the several classes of property of carriers subject thereto and securing information concerning their stocks, bonds, and other securities", approved March 1, 1913, shall not apply to Puerto Rico.

SEC. 41 (as amended by the Act of June 25, 1948). The United States District Court for the District of Puerto Rico shall have jurisdiction for the naturalization of aliens and Puerto Ricans, and for this purpose residence in Puerto Rico shall be counted in the same manner as residence elsewhere in the United States. Said district court shall have jurisdiction of all controversies where all of the parties on either side of the controversy are citizens or subjects of a foreign State or States, or citizens of a State, Territory or District of the United States not domiciled in Puerto Rico, wherein the matter in dispute exceeds, exclusive of interest or costs, the sum or value of $3,000 and of all controversies in which there is a separable controversy involving a jurisdictional amount and in which all the parties on either side of such separable controversy are citizens or subjects of the character aforesaid. The salaries of the judge and officials of the United States District Court, the District of Puerto Rico together with the court expenses, shall be paid from the United States revenues in the same manner as in other United States district courts. In case of vacancy or of the death, absence, or other legal disability on the part of the judge of the said United States District Court for the District of Puerto Rico, the President of the United States is authorized to designate one of the judges of the Supreme Court of Puerto Rico to discharge the duties of judge of said court until such absence or disability shall be removed, and thereupon such judge so designated for said service shall be fully authorized and empowered to perform the duties of said office during such absence or disability of such regular judge, and to sign all necessary papers, and records as the acting judge of said court, without extra compensation.

SEC. 42 (as amended by section 21 of the Act of June 25, 1948). That the laws of the United States relating to appeals, writs of error and certiorari, removal of causes, and other matter or proceedings as between the courts of the United

---

[4] In addition to the above provisions of law, the Resident Commissioner has the privileges of the House of Representatives.
House rule XXXIV, renumbered "XXXIII" reads as follows:
"1. The persons hereinafter named, and none other, shall be admitted to the Hall of the House or rooms leading thereto, viz: The President and Vice President of the United States and their private secretaries, judges of the Supreme Court, Members of Congress and Members-elect, contestants in election cases during the pendency of their cases in the House, the Secretary and Sergeant at Arms of the Senate, heads of departments, foreign ministers, governors of States, the Superintendent of the Capitol Building and grounds, the Librarian of Congress and his assistant in charge of the Law Library, the Resident Commissioner to the United States from Puerto Rico, such persons as have by name, received the thanks of Congress, ex-members of the House of Representatives who are not interested in any claim or directly in any bill pending before Congress, and clerks of committees when business from their committee is under consideration; *and it shall not be in order for the Speaker to entertain a request for the suspension of this rule or to present from the Chair the request of any Member for unanimous consent.*"
[5] House rule XII of the House of Representatives, sec. 2, as adopted under H. R. 155, on February 2, 1904, reads:
"The Resident Commissioner to the United States shall possess the same powers and privileges as to committee service and in the House as are possessed by Delegates, and shall be competent to serve on the Committee on Insular Affairs as an additional member."
Rule XII now reads:
"1. The delegates from Hawaii and Alaska, and the Resident Commissioner to the United States from Puerto Rico, shall be elected to serve as additional members on the Committees on Agriculture, Armed Services, and Public Lands (now Interior and Insular Affairs); and they shall possess in such committees the same powers and privileges as in the House, and may make any motion except to reconsider."

**28** APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

States and the courts of the several States shall govern in such matters and proceedings as between the United States District Court for the District of Puerto Rico and the courts of Puerto Rico. All pleadings and proceedings in said court shall be conducted in the English language.

SEC. 44. That the qualifications of jurors as fixed by the local laws of Puerto Rico shall not apply to jurors selected to serve in the United States District Court for the District of Puerto Rico; but the qualifications required of jurors in said court shall be that each shall be of the age of not less than twenty-one years and not over sixty-five years, a resident of Puerto Rico for not less than one year, and have a sufficient knowledge of the English language to enable him to serve as a juror; they shall also be citizens of the United States. Juries for the said court shall be selected, drawn and subject to exemption in accordance with the laws of Congress regulating the same in the United States courts insofar as locally applicable.

SEC. 45. That all such fees, fines, costs, and forfeitures as would be deposited to the credit of the United States if collected and paid into a district court of the United States shall become revenues of the United States when collected and paid into the United States District Court for the District of Puerto Rico: *Provided*, That $500 a year from such fees, fines, costs and forfeitures shall be retained by the clerk and expended for law library purposes under the direction of the judge.

SEC. 48 (as amended March 4, 1927, 44 Stat. 1421; May 17 1932, 47 Stat. 158). That the Supreme and District Courts of Puerto Rico and the respective judges thereof may grant writs of habeas corpus in all cases in which the same are grantable by the judges of the District Courts of the United States and the District Courts may grant writs of mandamus in all proper cases.

That no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Puerto Rico shall be maintained in the United States District Court for the District of Puerto Rico.

SEC. 54. That deeds and other instruments affecting land situated in the District of Columbia, or any other territory or possession of the United States, may be acknowledged in Puerto Rico before any notary public appointed therein by proper authority, or any officer therein who has ex officio the powers of any notary public: *Provided*, That the certificate by such notary shall be accompanied by the certificate of the Executive Secretary of Puerto Rico to the effect that the notary taking such acknowledgment is in fact such notarial officer.

SEC. 55. That nothing in this Act shall be deemed to impair or interrupt the jurisdiction of existing courts over matters pending therein upon the approval of this Act, which jurisdiction is in all respects hereby continued, the purpose of this Act being to preserve the integrity of all of said courts and their jurisdiction until otherwise provided by law, except as in this Act otherwise specifically provided.

SEC. 58. That all laws or parts of laws applicable to Puerto Rico not in conflict with any of the provisions of this Act including the laws relating to tariffs, customs, and duties on importations into Puerto Rico prescribed by the Act of Congress entitled "An Act temporarily to provide revenues and a civil government for Puerto Rico, and for other purposes," approved April twelfth, nineteen hundred, are hereby continued in effect,[6] and all laws and parts of laws inconsistent with the provisions of this Act are hereby repealed.

Approved, March 2, 1917.

────────────

PROVISIONS OF THE FORAKER ACT CONTINUED UNDER SECTION 58 OF THE STATUTE OF RELATIONS AND, CONSEQUENTLY, PARTS THEREOF

Fundamentally, these provisions create an economic union between Puerto Rico and the United States:

(48 U. S. C. 738)

FREE INTERCHANGE OF MERCHANDISE WITH UNITED STATES (FREE TRADE)

All merchandise and articles coming into the United States from Puerto Rico and coming into Puerto Rico from the United States shall be entered at the several ports of entry free of duty and in no event shall any tariff duties be collected on said merchandise or articles (April 12, 1900, ch. 191, 3, 31 Stat. 77; May 17, 1932, ch. 190, 47 Stat. 158).

─────

[6] Provisions of law above referred to are to be found in the following pages, as given by United States Code.

APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO   29

### (48 U. S. C. 739)

#### DUTIES ON FOREIGN IMPORTS INTO PUERTO RICO (CUSTOMS UNION)

The same tariffs, customs, and duties shall be levied, collected, and paid upon all articles imported into Puerto Rico from ports other than those of the United States which are required by law to be collected upon articles imported into the United States from foreign countries (April 12, 1900, ch. 191, 2, 31 Stat. 77; August 5, 1909, ch. 6, 1, 36 Stat. 71, 74; May 17, 1932, ch. 190, 47 Stat. 158).

### (48 U. S. C. 740)

#### DUTIES ON TAXES TO CONSTITUTE FUND FOR BENEFIT OF PUERTO RICO; PORTS OF ENTRY (CUSTOM UNION)

The duties and taxes collected in Puerto Rico in pursuance of the provisions of this chapter, less the cost of collecting the same, and the gross amount of all collections of duties and taxes in the United States upon articles of merchandise coming from Puerto Rico, shall be paid into the treasury of Puerto Rico to be expended as required by law for the government and benefit thereof, and the Secretary of the Treasury shall designate the several ports and subports of entry in Puerto Rico and shall make such rules and regulations and appoint such agents as may be necessary to collect the duties and taxes authorized to be levied, collected, and paid in Puerto Rico by the provisions of this chapter, and he shall fix the compensation and provide for the payment thereof of all such officers, agents, and assistants as he may find it necessary to employ to carry out the provisions of law (April 12, 1900, ch. 191, 4, 31 Stat. 78; May 17, 1932, ch. 190, 47 Stat. 158).

### (48 U. S. C. 744)

#### COASTING-TRADE LAWS

The coasting trade between Puerto Rico and the United States shall be regulated in accordance with the provisions of law applicable to such trade between any two great coasting districts of the United States (April 12, 1900, ch. 191, 9, 31 Stat. 79; May 17, 1932, ch. 190, 47 Stat. 158).

### (48 U. S. C. 755)

#### COINS; REDEMPTION; EXCHANGE; RECOINAGE; LEGAL TENDER (MONETARY UNION)

For the purpose of retiring the Puerto Rican coins in circulation in Puerto Rico on April 12, 1900, and substituting therefor the coins of the United States, the Secretary of the Treasury is authorized to redeem, on presentation in Puerto Rico, all the silver coins of Puerto Rico known as the peso and all other silver and copper Puerto Rican coins in circulation in Puerto Rico on such date, not including any such coins that may be imported into Puerto Rico after the 1st day of February 1900, at the rate of 60 cents in the coins of the United States for 1 peso of Puerto Rican coin, and for all minor or subsidiary coins the same rate of exchange shall be applied.   The expense of the United States, under the direction of the Secretary of the Treasury, into such coins of the United States now authorized by law as he may direct.   No coins shall be a legal tender, in payment of debts contracted for any amount in Puerto Rico, except those of the United States, and except those owing prior to April 12, 1900, which shall be payable in the coins of Puerto Rico in circulation at that date, or in the coins of the United States at the rate of exchange herein mentioned (April 12, 1900, ch. 191, 11, 31 Stat. 80; May 17, 1932, ch. 190, 47 Stat. 158).

30  APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO

## APPENDIX IV

### RESOLUTION No. 22

(APPROVED BY THE CONSTITUTIONAL CONVENTION OF PUERTO RICO IN THE PLENARY
SESSION HELD FEBRUARY 4, 1952)

To determine in Spanish and in English the name of the body politic created by
the Constitution of the people of Puerto Rico

Whereas, this Constitutional Convention, in accordance with the mandate of the
people, is about to adopt the Constitution by virtue of which the Puerto Rican
community will be politically organized;

Whereas, it is necessary to give an appropriate name in both English and Spanish
to the body politic thus created;

Whereas, the word "commonwealth" in contemporary English usage means a
politically organized community, that is to say, a state (using the word in the
generic sense) in which political power resides ultimately in the people, hence
a free state, but one which is at the same time linked to a broader political
system in a federal or other type of association and therefore does not have an
independent and separate existence;

Whereas, the single word "commonwealth", as currently used, clearly defines the
status of the body politic created under the terms of the compact existing
between the people of Puerto Rico and the United States, i. e., that of a state
which is free of superior authority in the management of its own local affairs
but which is linked to the United States of America and hence is a part of its
political system in a manner compatible with its federal structure;

Whereas, there is no single word in the Spanish language exactly equivalent to
the English word "commonwealth" and translation of "commonwealth" into
Spanish requires a combination of words to express the concepts of state and
liberty and association;

Whereas, in the case of Puerto Rico the most appropriate translation of "com-
monwealth" into Spanish is the expression "estado libre asociado", which how-
ever should not be rendered "associated free state" in English inasmuch as the
word "state" in ordinary speech in the United States means one of the States
of the Union;

Therefore,

*Be it resolved by the Constituent Assembly of Puerto Rico:-*

*First:* That in Spanish the name of the body politic created by the Constitution
which this Convention is adopting for submission to the people of Puerto Rico
shall be "Estado Libre Asociado", it being understood that in our case this term
is equivalent to and an appropriate translation of the English word "common-
wealth".

*Second:* That, as a consequence, the body politic created by our Constitution
shall be designated "The Commonwealth of Puerto Rico" in English and "El
Estado Libre Asociado de Puerto Rico" in Spanish.

*Third:* That the Committee on Style of this Convention is instructed to use
these designations in the respective English and Spanish texts of the Constitution
when submitting the documents for third reading.

*Fourth:* That this resolution shall be published in Spanish and in English as an
explanatory and authoritative statement of the meaning of the terms "Common-
wealth" and "Estado Libre Asociado" as used in the Constitution; and that it
shall be widely distributed, together with the Constitution, for the information
of the people of Puerto Rico and the Congress of the United States.

APPROVE CONSTITUTION OF COMMONWEALTH OF PUERTO RICO    31

## APPENDIX V

### RESOLUTION No. 23

(APPROVED BY THE CONSTITUTIONAL CONVENTION OF PUERTO RICO IN THE PLENARY
SESSION HELD FEBRUARY 4, 1952

### Final declarations of the Constitutional Convention of Puerto Rico

Whereas, the Constitutional Convention of Puerto Rico, in fulfilling the important
mission assigned it by the people, has approved a Constitution for the Com-
monwealth of Puerto Rico within the terms of the compact entered into with
the United States of America;

Whereas, in accordance with the terms of the compact, said Constitution is to
be submitted to the people of Puerto Rico for their approval;

Therefore,

*Be it resolved by this Constitutional Convention:*

*First:* That, pursuant to the relevant regulations, a certified copy of the
Constitution as approved be sent to the Governor of Puerto Rico so that he may
submit it to the people of Puerto Rico in a referendum as provided by law.

*Second:* That copies of the Constitution be printed in Spanish and English,
respectively, in numbers sufficient for general distribution to the end that it will
become widely known.

*Third:* That the following final declarations of this Convention be entered on its
journal and also published:

(a) This Convention deems that the Constitution as approved fulfills the
mission assigned it by the people of Puerto Rico.

(b) When this Constitution takes effect, the people of Puerto Rico shall
thereupon be organized in a commonwealth established within the terms of
the compact entered into by mutual consent, which is the basis of our union
with the United States of America.

(c) The political authority of the Commonwealth of Puerto Rico shall be
exercised in accordance with its Constitution and within the terms of said
compact.

(d) Thus we attain the goal of complete self-government, the last vestiges
of colonialism having disappeared in the principle of Compact, and we enter
into an era of new developments in democratic civilization. Nothing can
surpass in political dignity the principle of mutual consent and of compacts
freely agreed upon. The spirit of the people of Puerto Rico is free for great
undertakings now and in the future. Having full political dignity the
commonwealth of Puerto Rico may develop in other ways by modifications
of the Compact through mutual consent.

(e) The people of Puerto Rico reserve the right to propose and to accept
modifications in the terms of its relations with the United States of America,
in order that these relations may at all times be the expression of an agreement
freely entered into between the people of Puerto Rico and the United States
of America.

*Fourth:* That a copy of this resolution be sent to the President of the United
States and to the President of the Senate and the Speaker of the House of Repre-
sentatives of the Congress of the United States.