# Exhibit 14

# Supplement, dated October 16, 2007, to Official Statement, dated October 3, 2007, relating to:

## $926,570,000
## COMMONWEALTH OF PUERTO RICO
## Public Improvement Refunding Bonds, Series 2007A
## (General Obligation Bonds)
## Base CUSIP 74514L

Please note the following changes to the Official Statement, dated October 3, 2007, relating to the above bonds (all terms used below having the same meanings given to them in said Official Statement, dated October 3, 2007):

1. The third and fourth sentences of the first paragraph on **the cover page** of said Official Statement below the **"Dated: Date of Delivery"** line are deleted and in their place the following sentence is added to read as follows: "The Bonds offered hereby will be available to purchasers only under the book-entry system maintained by DTC through brokers and dealers who are, or act through, DTC Participants in denominations of: (1) $5,000 and multiples thereof in respect of the Bonds maturing before July 1, 2023, (2) $100,000 or any multiple of $5,000 in excess thereof in respect of the Variable Rate Demand Obligations and (3) $25,000 and any multiple thereof in respect of the Auction Rate Securities."

2. In both paragraphs on **page 15** under the heading "*The Bonds* – Purchase of the Variable Rate Bonds – During Daily Interest Rate Period", the time for the delivery of an optional tender notice by any Bondholder owning Variable Rate Demand Obligations in the Daily Interest Rate Period is changed from "12 noon, New York City time" to "10:00 a.m., New York City time".

3. Clause (a) on **page 25** under the heading "*The Bonds* – Initial Liquidity Facilities – Events of Termination and Events of Default" is deleted and in its place the following clause is added to read as follows: "(a) (i) Any principal or interest due on the Variable Rate Demand Obligations is not paid when due and such principal or interest is not paid by the applicable Bond Insurer when, as, and in the amounts required to be paid pursuant to the terms of the applicable Insurance Policy or (ii) the Commonwealth provides notice that the applicable Bond Insurer shall be substituted as insurer of the Variable Rate Demand Obligations, or the applicable Insurance Policy is surrendered, cancelled, terminated, or modified in any material respect, without the applicable Liquidity Facility Provider's prior written consent; or"

4. The third sentence on **page 32 and 33** under the heading "*The Bonds* – Book-Entry Only System" is deleted and in its place the following sentence is added to read as follows: "One fully registered bond will be issued for each maturity (and within a maturity of two subseries, each subseries) of the Bonds, in the aggregate principal amount of such maturity or subseries, as the case may be, and will be deposited with DTC."

5. The third sentence on **page 35** under the heading "*The Bonds* – Discontinuance of the Book-Entry Only System" is deleted and in its place the following sentence is added to read as follows: "The Bonds offered by virtue of this Official Statement will be issued only as registered bonds without coupons in denominations of: (1) $5,000 or any multiple thereof in respect of the Bonds maturing before July 1, 2023, (2) $100,000 or any multiple of $5,000 in excess thereof in respect of the Variable Rate Demand Obligations and (3) $25,000 and any multiple thereof in respect of the Auction Rate Securities."

6. In addition to the ratings for the Bonds set forth set forth on **page 59** under the heading *"Ratings"*, the Variable Rate Demand Obligations have been given the ratings of VMIG 1 and A-1+, respectively, from Moody's and S&P on the strength of the issuance concurrently with the delivery of the Bonds of the respective Initial Liquidity Facilities by Dexia and JPMorgan.

This Supplement will be filed with each NRMSIR and with the MSRB.

COMMONWEALTH OF PUERTO RICO

By: /s/ Juan Carlos Mendez Torres
Secretary of the Treasury

Dated: October 16, 2007

"Auction Rate Securities". Banco Popular de Puerto Rico, San Juan, Puerto Rico, will serve as tender agent for the Variable Rate Demand Obligations (the "Tender Agent") and Wells Fargo Bank, National Association will serve as auction agent for the Auction Rate Securities (the "Auction Agent").

In connection with the Variable Rate Demand Obligations maturing July 1, 2029 in the principal amount of $99,450,000 and the Variable Rate Demand Obligations maturing July 1, 2032, the Commonwealth and JPMorgan Chase Bank, National Association ("JPMorgan") will enter into separate standby bond purchase agreements (collectively, the "JPMorgan Liquidity Agreement"), and in connection with the remaining Variable Rate Demand Obligations, the Commonwealth and Dexia Credit Local, acting through its New York Branch ("Dexia" and together with JPMorgan, the "Initial Liquidity Facility Providers" and individually, an "Initial Liquidity Facility Provider"), will enter into separate standby bond purchase agreements (collectively, the "Dexia Liquidity Agreement" and together with the JPMorgan Liquidity Agreement, the "Initial Liquidity Facilities"). Dexia is an affiliate of FSA.

Also in connection with the Variable Rate Demand Obligations, Lehman Brothers Inc. ("Lehman") will serve as remarketing agent for the Variable Rate Demand Obligations maturing July 1, 2029 in the principal amount of $99,450,000 under a remarketing agreement with the Commonwealth (the "Lehman Remarketing Agreement"), UBS Securities LLC "(UBS") will serve as remarketing agent for the Variable Rate Demand Obligations maturing July 1, 2029 in the principal amount of $99,500,000 and July 1, 2031 under a remarketing agreement with the Commonwealth (the "UBS Remarketing Agreement") and Morgan Stanley & Co. Incorporated ("Morgan Stanley") will serve as remarketing agent for the Variable Rate Demand Obligations maturing July 1, 2032 under a remarketing agreement with the Commonwealth (the "Morgan Remarketing Agreement"; and together with the Lehman Remarketing Agreement and the UBS Remarketing Agreement, the "Remarketing Agreements" and Lehman, Morgan Stanley and UBS in such context together, the "Remarketing Agents" and individually, a "Remarketing Agent"), and in order effectively to fix the interest cost to the Commonwealth of said Variable Rate Demand Obligations, the Commonwealth has signed confirmations under master interest rate exchange agreements (collectively the "Master Agreements" and individually, a "Master Agreement") evidencing interest rate swaps with affiliates of each of Lehman, Morgan Stanley and UBS (collectively, the "VRDO Interest Rate Swaps").

The Auction Rate Securities are being issued with interest rates that will be established through the implementation of periodic auction procedures. UBS will serve as broker-dealer for subseries 2007A-6 and 2007A-7 of the Auction Rate Securities, Lehman will serve as broker-dealer for subseries 2007A-8 of the Auction Rate Securities and Morgan Stanley will serve as broker-dealer for subseries 2007A-9 of the Auction Rate Securities (collectively, the "Broker-Dealers"), and each will execute separate broker-dealer agreements (individually a "Broker-Dealer Agreement" and collectively, the "Broker-Dealer Agreements") with the Commonwealth in connection therewith. In order effectively to fix the interest cost to the Commonwealth of said Auction Rate Securities, the Commonwealth has signed confirmations under the Master Agreements evidencing interest rate swaps with affiliates of each of Lehman, Morgan Stanley and UBS (collectively, the "ARS Interest Rate Swaps" and together with the VRDO Interest Rate Swaps, the "Interest Rate Swaps" and in reference to the Interest Rate Swaps, Lehman,

Morgan Stanley and UBS are collectively referred to as the "Swap Providers" and individually, as a "Swap Provider").

Reference is made to the Bond Resolution for the complete terms of the Bonds (including the terms of the Variable Rate Demand Obligations and Auction Rate Securities, each as defined herein), and terms used in this Official Statement and not defined herein have the respective meanings given to them in the Bond Resolution, copies of which may be obtained by contacting Director – New York Office, Government Development Bank for Puerto Rico, 666 Fifth Avenue, 15th Floor, New York, New York 10103-1599, telephone number (212) 422-6420, or to Director – General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

*Security.* Under the Act, the good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and interest on the Bonds. The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a first claim on available Commonwealth resources.

*Additional Documents.* This Official Statement includes the Commonwealth's Financial Information and Operating Data Report, dated July 1, 2007 (the "Commonwealth Report"), attached hereto as *Appendix I,* and incorporates by reference the Comprehensive Annual Financial Report of the Commonwealth for the fiscal year ended June 30, 2006, as amended, prepared by the Department of the Treasury of the Commonwealth (the "Commonwealth's Annual Financial Report"). The Commonwealth Report attached hereto as *Appendix I* includes important operating and financial information about the Commonwealth, including information about its economy, historical revenues and expenditures of its General Fund, the estimated year-end results of fiscal year 2007, the budget for fiscal years 2007 and 2008, and the debt of the Commonwealth's public sector, and should be read in its entirety and in conjunction with the *Recent Developments* herein. The Commonwealth's Annual Financial Report includes the basic financial statements of the Commonwealth as of and for the fiscal year ended June 30, 2006, together with the independent auditor's report thereon, dated August 1, 2007, of KPMG LLP, certified public accountants. KPMG LLP did not audit the financial statements of the Public Buildings Authority capital project fund or the Children's Trust special revenue funds (major funds), and certain activities, funds and component units separately identified in its report. Those financial statements were audited by other auditors whose reports have been furnished to KPMG LLP, and its opinion as to the basic financial statements, insofar as it relates to the amounts included in the basic financial statements pertaining to such activities, funds and component units, is based solely on the reports of the other auditors. The report of KPMG LLP contains an emphasis paragraph for the adoption of Governmental Accounting Standards Board ("GASB") Statement No. 42, *Accounting and Financial Reporting for Impairment of Capital Assets and for Insurance Recoveries,* as of June 30, 2006. The Commonwealth's Annual Financial Report has been filed by the Commonwealth with each nationally recognized municipal securities information repository ("NRMSIR").

Any appendix of an Official Statement of the Commonwealth or of any instrumentality of the Commonwealth containing any revision to the Commonwealth Report or to the Commonwealth's Annual Financial Report that is filed with each NRMSIR and the Municipal Securities Rulemaking Board, or any new or revised Commonwealth Report or Commonwealth

Annual Financial Report or other document containing information that modifies or supersedes the information contained in the Commonwealth Report or in the Commonwealth's Annual Financial Report that is filed with each NRMSIR, in each case after the date hereof and prior to the termination of the offering of the Bonds, shall be deemed to be incorporated by reference into this Official Statement and to be part of this Official Statement from the date of filing of such document. Any statement contained in the Commonwealth's Annual Financial Report shall be deemed to be modified or superseded for purposes of this Official Statement to the extent that a statement contained herein or in any such subsequently filed document modifies or supersedes such statement. Any statement contained in the Commonwealth Report or elsewhere herein shall also be deemed to be modified or superseded to the extent that a statement contained in any such subsequently filed document modifies or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Official Statement.

Under its existing continuing disclosure agreements, the Commonwealth is obligated to file on or before May 1 in each year updates of its financial and demographic information through the end of the prior fiscal year, including the Commonwealth's Annual Financial Report. In the recent past, the Commonwealth has been unable, due to accounting rules changes and other reasons (mostly related to delays in receipt of component units' audited financial statements), to file the Commonwealth's Annual Financial Report by the May 1 continuing disclosure update filing deadline. Due to the fact that the Aqueduct and Sewer Authority did not complete and deliver to the Commonwealth's independent auditors in a timely manner said component unit's audited financial statements for the fiscal year ended June 30, 2006, this year the Commonwealth was unable to meet its May 1 deadline in respect of the Commonwealth's Annual Financial Report. The Commonwealth's Annual Financial Report was filed with each NRMSIR on August 16, 2007, and an amended and restated version thereof was filed with each NRMSIR on September 13, 2007.

The Commonwealth will provide without charge to any person to whom this Official Statement is delivered, on the written or oral request of such person, a copy of the Commonwealth's Annual Financial Report incorporated herein by reference. Requests should be directed to Director – New York Office, Government Development Bank for Puerto Rico, 666 Fifth Avenue, 15th Floor, New York, New York 10103-1599, telephone number (212) 422-6420, or to Director – General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

A copy of the Commonwealth's Annual Financial Report may also be obtained by contacting a NRMSIR. The address of each NRMSIR is set forth in *Continuing Disclosure* below.

## OVERVIEW

Puerto Rico is located approximately 1,600 miles southeast of New York City. According to the United States Census Bureau, its population was 3,808,610 in 2000. Puerto Rico's political status is that of a commonwealth. The United States and the Commonwealth share a common defense, market, currency and citizenship. The Commonwealth government exercises virtually the same control over its internal affairs as is exercised by the state

4

governments of each of the fifty states over their respective internal affairs, with similar separation of powers among the executive, legislative and judicial branches. It differs from the states, however, in its relationship with the federal government. The people of Puerto Rico are citizens of the United States but do not vote in national elections. They are represented in Congress by a Resident Commissioner who has a voice in the House of Representatives but no vote. Most federal taxes, except those such as Social Security taxes, which are imposed by mutual consent, are not levied in Puerto Rico. No federal income tax is collected from Puerto Rico residents on income earned in Puerto Rico, except for certain federal employees who are subject to taxes on their salaries. The official languages of Puerto Rico are Spanish and English.

Puerto Rico has a diversified economy with manufacturing and services comprising its principal sectors. Puerto Rico's economy is closely linked to the United States economy. In fiscal year 2006 (which ended on June 30, 2006), the Commonwealth's gross product (preliminary, in current dollars) was $56.688 billion, and personal income per capita (preliminary, in current dollars) was $12,997.

The Constitution of Puerto Rico limits the amount of general obligation debt that the Commonwealth can issue. The Commonwealth's policy has been and continues to be to maintain the level of such debt within a prudent range below the constitutional limitation.

Fiscal responsibility for the Commonwealth is shared among the Department of the Treasury, the Office of Management and Budget ("OMB") and Government Development Bank for Puerto Rico ("Government Development Bank" or the "Bank"). The Department of the Treasury is responsible for collecting most of the Commonwealth's revenues, overseeing preparation of its financial statements and contributing to the preparation of the budget. OMB prepares the Commonwealth's budget and is responsible for monitoring expenditures. Government Development Bank is the fiscal agent and financial advisor to the Commonwealth and its agencies, public corporations and municipalities and coordinates the management of public finances.

Additional information about the Commonwealth can be found in the Commonwealth Report attached hereto as *Appendix I*, including information about the economy, historical revenues and expenditures of the Commonwealth's General Fund, the year-end results of fiscal year 2006, the estimated year-end results for fiscal year 2007 and the approved budget for fiscal year 2008, and the debt of the Commonwealth's public sector. The Commonwealth Report should be read in its entirety.

## RECENT DEVELOPMENTS

This section supplements the information appearing in the Commonwealth Report and should be read in conjunction therewith.

Under Act No. 117 of the Legislature of Puerto Rico, approved on July 4, 2006, as amended (the "Sales Tax Act"), a general sale and use tax of 5½% is imposed by the central government (the "Central Government Sales Tax") and of 1½% is imposed by each municipality (the "Municipal Sales Tax" and, together with the Central Government Sales Tax, the "Sales Tax"). In general, the Municipal Sales Tax has the same tax base, exemptions (except for

5

unprocessed foods) and limitations as those contained in the Central Government Sales Tax. The Sales Tax Act also provides certain income tax reductions to address the regressive effect of the Sales Tax on taxpayers in lower income brackets.

Pursuant to Act No. 91 of the Legislature of Puerto Rico, approved on May 13, 2006, as amended (the "Sales Tax Financing Corporation Act"), Puerto Rico Sales Tax Financing Corporation (the "Sales Tax Financing Corporation") was created for the purpose of refinancing certain debt obligations of the Commonwealth outstanding as of June 30, 2006, which obligations are payable solely from Commonwealth budgetary appropriations and are generally referred to as "extra constitutional debt". Under the Sales Tax Financing Corporation Act, 1% of the 5 ½% Central Government Sales Tax (subject to an annually inflated minimum amount, if greater) is deposited by the Secretary of the Treasury upon receipt into the dedicated sales tax fund (the "Sales Tax Fund"), which is held and owned by the Sales Tax Financing Corporation separate and apart from the Commonwealth's General Fund. Amounts on deposit in the Sales Tax Fund are applied to the payment of debt issued by the Sales Tax Financing Corporation to refinance the aforementioned extra constitutional debt outstanding. On July 31, 2007, the Sales Tax Financing Corporation issued $2,667,603,572.60 Sales Tax Revenue Bonds, Series 2007A and $1,333,101,779.90 Sales Tax Revenue Bonds, Series 2007B (collectively, the "Sales Tax Bonds"), the proceeds of which were used as the first installment in the refinancing of the Commonwealth's extra constitutional debt.

The Commonwealth expects to issue on or about October 4, 2007, $408,800,000 of its Public Improvement Bonds of 2007, Series A, and $91,200,000 of its Public Improvement Bonds of 2007, Series B. The proceeds of these bonds will be used by the Commonwealth to defray a portion of the cost of various public works throughout the Commonwealth.

## PLAN OF FINANCING

The Bonds, together with the 2007B Bonds, are being issued for the purpose of refunding the following general obligation bonds of the Commonwealth (the "Refunded Bonds"):

| Public Improvement Bonds | Principal Amount to be Refunded | Interest Rate | Maturity Date July 1, | Redemption Date July 1, | Redemption Price (% of Par) |
|---|---|---|---|---|---|
| Series 1993* | $12,070,000 | 9 % | 2008 | NA | NA |
| 1995 | 8,975,000 | 6¼ | 2008 | NA | NA |
| 1995 | 830,000 | 6¼ | 2009 | NA | NA |
| 1996 | 8,815,000 | 6½ | 2008 | NA | NA |
| 1997 | 9,870,000 | 6¼ | 2008 | NA | NA |
| 1997 | 5,450,000 | 5.70 | 2009 | NA | NA |
| 1998 | 11,845,000 | 5¾ | 2008 | NA | NA |
| 1998 | 12,525,000 | 5¾ | 2009 | NA | NA |
| 1998 | 19,775,000 | 5 | 2017 | 2008 | 101 |
| 1998 | 20,765,000 | 5 | 2018 | 2008 | 101 |
| 1998 | 119,175,000 | 4⅞ | 2023 | 2008 | 101 |
| Series 1998B* | 9,710,000 | 5¾ | 2008 | N/A | N/A |
| 1999 | 11,005,000 | 5 | 2008 | NA | NA |
| 1999 | 19,295,000 | 4¾ | 2023 | 2008 | 101 |
| 1999 | 19,485,000 | 5 | 2028 | 2008 | 101 |
| 2000 | 3,855,000 | 5 | 2008 | NA | NA |
| 2000 | 10,760,000 | 5 | 2009 | NA | NA |
| 2001 Series B | 11,700,000 | 4.70 | 2014 | 2011 | 100 |
| 2001 Series B | 6,625,000 | 4.80 | 2015 | 2011 | 100 |
| 2001 Series B | 2,525,000 | 4.90 | 2016 | 2011 | 100 |
| 2001 Series B | 4,245,000 | 4.95 | 2017 | 2011 | 100 |
| 2001 Series B | 9,255,000 | 5 | 2018 | 2011 | 100 |
| 2001 Series B | 2,200,000 | 5.05 | 2019 | 2011 | 100 |
| 2001 Series B | 365,000 | 5.05 | 2020 | 2011 | 100 |
| 2001 Series B | 530,000 | 5.05 | 2021 | 2011 | 100 |
| 2001 Series B | 770,000 | 5 | 2021 | 2011 | 100 |
| Series 2002* | 53,105,000 | 5 | 2008 | N/A | N/A |
| Series 2002 A* | 1,835,000 | 3¾ | 2009 | NA | NA |
| 2003 Series A | 9,255,000 | 5¼ | 2008 | NA | NA |
| 2003 Series A | 9,740,000 | 5¼ | 2009 | NA | NA |
| 2003 Series A | 10,250,000 | 4¾ | 2010 | NA | NA |
| 2003 Series A | 12,550,000 | 5½ | 2014 | NA | NA |
| 2003 Series A | 12,315,000 | 5½ | 2015 | NA | NA |
| 2004 Series A | 4,725,000 | 5 | 2008 | NA | NA |
| 2004 Series A | 6,040,000 | 5 | 2009 | NA | NA |
| 2004 Series A | 12,825,000 | 5¼ | 2017 | 2013 | 100 |
| 2004 Series A | 12,005,000 | 5¼ | 2019 | 2013 | 100 |
| 2004 Series A | 3,000,000 | 2½ | 2008 | NA | NA |
| 2004 Series A | 2,000,000 | 2⅞ | 2009 | NA | NA |
| 2004 Series A | 3,000,000 | 4 | 2014 | 2013 | 100 |
| 2004 Series A | 81,590,000 | 5 | 2033 | 2013 | 100 |
| 2005 Series A | 14,275,000 | 5 | 2017 | 2014 | 100 |
| 2005 Series A | 94,655,000 | 5 | 2034 | 2014 | 100 |
| 2006 Series A | 19,670,000 | 5¼ | 2027 | 2016 | 100 |

7

| Public Improvement Bonds | Principal Amount to be Refunded | Interest Rate | Maturity Date July 1, | Redemption Date July 1, | Redemption Price (% of Par) |
|---|---|---|---|---|---|
| 2006 Series A | 79,410,000 | 5¼ | 2030 | 2016 | 100 |
| Series 2006 B* | 86,075,000 | 5¼ | 2032 | 2016 | 100 |
| Series 2006 B* | 121,340,000 | 5 | 2035 | 2016 | 100 |

\* Public Improvement Refunding Bonds

The Secretary of the Treasury will deposit the net proceeds of the Bonds and the 2007B Bonds and certain other available moneys into two escrow funds (collectively, the "Escrow Fund") with Banco Popular de Puerto Rico (the "Escrow Agent"). Said net proceeds and other available moneys will be invested in noncallable direct obligations of the United States, the principal of and interest on which will be sufficient to pay the principal of and premium, if any, on the Refunded Bonds on the redemption or maturity dates mentioned above, which dates will be irrevocably designated by the Secretary of the Treasury, and to pay the interest thereon to such redemption or maturity dates.

Upon the deposit with the Escrow Agent referred to above, the Refunded Bonds will cease to be outstanding under the terms of their respective authorizing resolutions. Under the Act, once the above deposit of cash and noncallable direct obligations of the United States has been made, all the Refunded Bonds will be deemed not to be outstanding for the purpose of applying the debt limitation under Section 2 of Article VI of the Commonwealth's Constitution.

The sufficiency of the amount so deposited, with investment earnings thereon, to accomplish the refunding of the Refunded Bonds referred to above, will be verified by Causey Demgen & Moore Inc. (the "Verification Agent").

**Sources and Uses of Funds**[†]

**Sources:**

| | |
|---|---|
| Principal amount of the Bonds | $ 926,570,000 |
| Principal amount of the 2007B Bonds | $ 60,545,000 |
| Net original issue premium | 35,711,612 |
| Moneys from Redemption Fund | 49,400,192 |
| Total sources | $1,072,226,804 |

**Uses:**

| | |
|---|---|
| Deposit into the Escrow Fund for Refunded Bonds | $1,043,875,393 |
| Underwriting discount, bond insurance premiums, legal, printing, and other financing expenses | 28,351,411 |
| Total uses | $1,072,226,804 |

[†] Amounts rounded to nearest dollar.

8

**Standby Bond Purchase Agreements**

In connection with the Variable Rate Demand Obligations, the Commonwealth will enter into the Initial Liquidity Facilities, whereby, unless certain events have occurred, each of the Initial Liquidity Facility Providers will be required to purchase the Variable Rate Demand Obligations to which its Initial Liquidity Facility relates which Demand Obligations are optionally or mandatorily tendered by their Owners and are not remarketed. THE INITIAL LIQUIDITY FACILITY PROVIDER'S OBLIGATION TO PURCHASE VARIABLE RATE DEMAND OBLIGATIONS IS TERMINATED OR SUSPENDED AUTOMATICALLY UNDER CERTAIN CIRCUMSTANCES WITH NO OPPORTUNITY FOR THE HOLDERS OF SUCH DEMAND OBLIGATIONS TO TENDER THEM PRIOR TO SUCH TERMINATION OR SUSPENSION. If the obligation of an Initial Liquidity Facility Provider to purchase Variable Rate Demand Obligations under its Initial Liquidity Facility has been terminated or suspended prior to, or the conditions to such obligation are not satisfied as of, the date on which the payment of the purchase price of such Demand Obligations is required, funds to pay such purchase price will not be available under such Initial Liquidity Facility. See "THE BONDS – Purchase of the Variable Rate Demand Obligations". THE COMMONWEALTH IS NOT OBLIGATED TO PURCHASE VARIABLE RATE DEMAND OBLIGATIONS IN THE EVENT THAT PAYMENTS ARE NOT MADE UNDER A LIQUIDITY FACILITY. See "Liquidity Facility" under *The Bonds*.

**Interest Rate Swaps**

The Commonwealth will enter into the Interest Rate Swaps with the Swap Providers in accordance with and meeting the requirements of Act No. 39 of the Legislature of Puerto Rico, approved August 1, 2005 as amended ("Act No. 39 of 2005"), pursuant to each of which (i) the Commonwealth will pay a fixed amount to the applicable Swap Provider at an effective rate that approximates a fixed rate borrowing with respect to the Variable Rate Bonds to which its Interest Rate Swap relates, and (ii) such Swap Provider will pay a variable amount to the Commonwealth based on LIBOR and an aggregate notional amount equal to the corresponding principal amount of the related Variable Rate Bonds. The notional amounts of the Interest Rate Swaps will amortize in accordance with the principal amortization of the Variable Rate Bonds to which such Swaps relate.

Under the terms of the Interest Rate Swaps, which are expected to terminate on the maturity of the applicable Variable Rate Bonds, they may be terminated by the Commonwealth at any time at their then current market value(s). The underlying Master Agreements may also be terminated upon the occurrence of certain credit events. If a termination event occurs due to a credit event, the Commonwealth may be obligated to pay to the applicable Swap Provider an amount based on the terminating Swap's market value that may be substantial.

The Commonwealth's obligations under the Interest Rate Swaps will be insured by FSA in respect of a portion of the Interest Rate Swaps relating to the Variable Rate Bonds of subseries 2007A-2 through 2007A-4, and Assured in respect of a portion of the Interest Rate Swaps relating to the Auction Rate Securities subseries 2007A-8 and 2007A-9, and the obligations of the Commonwealth under the Interest Rate Swaps are also secured, by virtue of the provisions of Act No. 39 of 2005, by the full faith, credit and taxing power of the Commonwealth.

## THE BONDS

**General**

The Bonds will be dated, bear interest at such rates, and mature on the dates and in the principal amounts set forth on the cover and inside cover page of this Official Statement. Interest on the Bonds maturing before July 1, 2023 will be payable semi-annually on January 1 and July 1, beginning on January 1, 2008, and interest on the Variable Rate Bonds will initially be payable monthly as described under "Description of the Variable Rate Bonds." The Bonds are subject to redemption at the times and at the prices set forth below in "Redemption". Banco Popular de Puerto Rico will serve as paying agent and registrar (the "Registrar") for the Bonds.

**Description of the Variable Rate Bonds**

The following is a summary of certain provisions of the Variable Rate Bonds. Reference is made to the Variable Rate Bonds for their complete text and to the Bond Resolution for a more detailed description of the provisions of the Variable Rate Bonds.

*General.* As more fully described below, the Variable Rate Bonds maturing July 1, 2029 (subseries 2007A-3) and 2031 (subseries 2007A-4) will be issued initially to bear interest at the Daily Interest Rate (the "Daily Interest Rate") for a Daily Interest Rate Period (a "Daily Interest Rate Period"), the Variable Rate Bonds maturing July 1, 2029 (subseries 2007A-2) and 2032 (subseries 2007A-5) will be issued initially to bear interest at the Weekly Interest Rate (the "Weekly Interest Rate") for a Weekly Interest Rate Period (a "Weekly Interest Rate Period") and the remaining Variable Rate Bonds (subseries 2007A-6 through 2007A-9) will be issued initially as Auction Rate Securities, all in the respective aggregate principal amounts specified on the inside cover page of this Official Statement. At the direction of the Commonwealth, from time to time, a subseries of the Variable Rate Bonds may be converted in whole, from an Interest Rate Period to another Interest Rate Period, including the Daily Interest Rate Period, the Weekly Interest Rate Period, the Long-Term Interest Rate Period (the "Long-Term Interest Rate Period"), the Short-Term Interest Rate Period (the "Short-Term Interest Rate Period"), the ARS Rate Period (the "ARS Rate Period") and the Indexed Put Interest Rate Period (the "Indexed Put Interest Rate Period"). *This Official Statement provides information concerning the Variable Rate Bonds while bearing interest at a Daily Interest Rate, a Weekly Interest Rate ("Weekly Interest Rate") or an Auction Period Rate ("Auction Period Rate"). There are significant differences in the terms of the Variable Rate Bonds if they are bearing interest at a Long-Term Interest Rate (the "Long-Term Interest Rate"), a Bond Interest Term Rate during each Bond Interest Term in a Short-Term Interest Rate Period (the "Bond Interest Term Rate"), or the Indexed Put Rate (the "Indexed Put Rate"). This Official Statement does not provide information with respect to the Variable Rate Bonds other than Variable Rate Bonds in a Daily Interest Rate Period, a Weekly Interest Rate Period or an ARS Rate Period.*

The Variable Rate Bonds are issuable initially in the form of fully registered bonds without coupons in the denomination of $100,000 or multiples of $5,000 in excess thereof, except that the Auction Rate Securities will be in the denomination of $25,000 or any multiple thereof. As described below under the caption "Book-Entry Only System", when issued, the

Variable Rate Bonds will be registered in the name of Cede & Co., as Bondholder and nominee of The Depository Trust Company ("DTC"), New York, New York, which will act as securities depository for the Variable Rate Bonds.

*Interest Payment.* All Variable Rate Bonds of a subseries shall initially bear interest at the same interest rate. Variable Rate Bonds bearing interest at the Daily Interest Rate, Weekly Interest Rate or Auction Period Rate shall not, at any time, bear interest in excess of 12% per annum (the "Maximum Bond Interest Rate"). Interest on the Variable Rate Bonds shall be paid on each Interest Payment Date, any redemption date and on the Maturity Date. Variable Rate Bonds in the Daily Interest Rate Period and Weekly Interest Rate Period shall accrue interest on the basis of the actual number of days elapsed during the Interest Rate Period and a year of 365 days (366 in a leap year). The initial Interest Payment Date for interest accrued on the Variable Rate Demand Obligations will be November 1, 2007. Thereafter, the Interest Payment Date for Variable Rate Bonds in the Daily Interest Rate Period and the Weekly Interest Rate Period will be the first Business Day of each calendar month. Interest Payment Dates and Auction Dates for the Auction Rate Securities will generally occur on the days as described in and subject to adjustment pursuant to the provisions of the Bond Resolution and as described in *Appendix III*.

*Place of Payment.* The principal and Tender Price of and premium, if any, and interest on the Variable Rate Bonds in the Daily Interest Rate Period, Weekly Interest Rate Period or ARS Rate Period shall be paid by the Registrar by wire transfer of immediately available funds to the respective Holders thereof on the applicable Record Date to an account specified by the Holder thereof in a writing delivered to the Registrar.

*Remarketing Agents; Tender Agent; Auction Agent.* Lehman, Morgan Stanley and UBS have been appointed Remarketing Agents for the Variable Rate Demand Obligations (UBS will serve as Remarketing Agent in respect of subseries 2007A-3 and 2007A-4 of the Variable Rate Bonds, Lehman will serve as Remarketing Agent in respect of subseries 2007A-2 of the Variable Rate Bonds, and Morgan Stanley will serve as Remarketing Agent in respect of subseries 2007A-5 of the Variable Rate Bonds), Banco Popular de Puerto Rico will serve as Tender Agent for such four subseries, and Wells Fargo Bank, National Association will serve as Auction Agent for the Auction Rate Securities (subseries 2007A-6 through 2007A-9 of the Variable Rate Bonds). All determinations for the Variable Rate Bonds of interest rates shall be conclusive and binding upon the Commonwealth, the Registrar, the Tender Agent, the Auction Agent, the Remarketing Agents, the Liquidity Facility Providers and the Variable Rate Bondholders, as applicable. At the direction of the Commonwealth a subseries of Variable Rate Bonds may be converted, in whole, from one Interest Rate Period to another Interest Rate Period.

*Daily Interest Rate and Daily Interest Rate Period.* During each Daily Interest Rate Period, the Variable Rate Bonds or any subseries of Variable Rate Bonds shall bear interest at the Daily Interest Rate, which shall be determined by the applicable Remarketing Agent on each Business Day for such Business Day.

The Daily Interest Rate shall be the rate of interest per annum determined by such Remarketing Agent (based on an examination of tax-exempt obligations comparable, in the judgment of the Remarketing Agent, to the Variable Rate Bonds and known by such Remarketing Agent to have been priced or traded under then-prevailing market conditions) on or

11

before 10:30 a.m., New York City time, on a Business Day to be the minimum interest rate which, if borne by such Bonds, would enable such Remarketing Agent to sell all of such Bonds on such Business Day at a price (without regard to accrued interest) equal to the principal amount thereof. The Daily Interest Rate for any day which is not a Business Day shall be the same as the Daily Interest Rate for the immediately preceding Business Day. If for any reason a Daily Interest Rate for the Variable Rate Bonds or any subseries of the Variable Rate Bonds is not so established for any Business Day by the applicable Remarketing Agent, the Daily Interest Rate for such Business Day shall be equal to the Index.

*Weekly Interest Rate and Weekly Interest Rate Period.* During each Weekly Interest Rate Period, the Variable Rate Bonds or any subseries of the Variable Rate Bonds shall bear interest at the Weekly Interest Rate, which shall be determined by the applicable Remarketing Agents by 5:00 p.m., New York City time, on Wednesday of each week during the Weekly Interest Rate Period, or if such day is not a Business Day, then on the next succeeding Business Day. The first Weekly Interest Rate for each Weekly Interest Rate Period shall be determined on or prior to the first day of such Weekly Interest Rate Period and shall apply to the period commencing on the first day of such Weekly Interest Rate Period and ending on and including the next succeeding Wednesday. Thereafter, each Weekly Interest Rate shall apply to the period commencing on and including Thursday and ending on and including the next succeeding Wednesday, unless such Weekly Interest Rate Period ends on a day other than Wednesday, in which event the last Weekly Interest Rate for such Weekly Interest Rate Period shall apply to the period commencing on and including the Thursday preceding the last day of such Weekly Interest Rate Period and ending on and including the last day of such Weekly Interest Rate Period.

Each Weekly Interest Rate with respect to the Variable Rate Bonds shall be the rate of interest per annum determined by each of such Remarketing Agents (based on an examination of tax-exempt obligations comparable, in the judgment of the Remarketing Agent, to the Variable Rate Bonds and known by them to have been priced or traded under then-prevailing market conditions) to be the minimum interest rate which, if borne by such Variable Rate Bonds, would enable the applicable Remarketing Agents to sell all of such Variable Rate Bonds on the effective date of that rate at a price (without regard to accrued interest) equal to the principal amount thereof.

If a Remarketing Agent fails to establish a Weekly Interest Rate for any week with respect to the applicable Variable Rate Bonds bearing interest at such rate, then the Weekly Interest Rate for such week with respect to such Variable Rate Bonds shall be equal to the Index. The Registrar shall give notice by first-class mail of a Conversion to a Weekly Interest Rate Period to the Holders of the Variable Rate Bonds or any subseries of Variable Rate Bonds not less than 30 days prior to the proposed effective date of such Weekly Interest Rate Period, in accordance with requirements under the Bond Resolution.

*Auction Period Rate and ARS Rate Period.* Auction Rate Securities will bear interest at the Auction Period Rate established from time to time for each applicable subseries of the Variable Rate Bonds, as set forth in the Bond Resolution and summarized in *Appendix III – "Definitions and Auction Procedures."* The Auction Rate Securities shall initially bear interest at the initial rate to be determined immediately prior to the initial delivery of the Auction Rate Securities for the respective initial periods set forth on the inside cover page of this Official

Statement and will then bear interest at an Auction Period Rate for seven-day Auction Periods commencing on October 23, 2007 in respect of the subseries 2007A-6 Auction Rate Securities, on October 26, 2007 in respect of the subseries 2007A-7 Auction Rate Securities, on October 25, 2007 in respect of the subseries 2007A-8 Auction Rate Securities, and on October 24, 2007 in respect of the subseries 2007A-9 Auction Rate Securities.

**Conversion Provisions**

*General.* If the Secretary elects to convert the interest rate of a subseries of Variable Rate Bonds, the written direction furnished by the Secretary to the Registrar, the Tender Agent, the applicable Liquidity Facility Providers and Remarketing Agents, the Auction Agent and the applicable Bond Insurers and Broker-Dealers as required shall be made by registered or certified mail, or by telecopy confirmed by registered or certified mail. In connection with any Conversion of the Interest Rate Period for any subseries of Variable Rate Bonds, the Secretary shall have the right to deliver to the Registrar, the Tender Agent, the Auction Agent and the applicable Bond Insurer, Remarketing Agent, Liquidity Facility Provider and Broker-Dealer on or prior to 11:00 a.m., New York City time, on the second Business Day preceding the effective date of any such Conversion a notice to the effect that the Secretary elects to rescind its election to make such Conversion. If such election to convert is rescinded, then the applicable subseries shall bear interest at a Weekly Interest Rate commencing on the date which would have been the effective date of the Conversion, but if such subseries were in a Daily Interest Rate Period immediately prior to such proposed Conversion, then the Variable Rate Bonds of such subseries shall continue to bear interest at the Daily Interest Rate as in effect immediately prior to such proposed Conversion. In any event, if notice of a Conversion has been mailed to the Holders of such Bonds and the Secretary rescinds its election to make such Conversion, then the Variable Rate Bonds of such subseries shall continue to be subject to mandatory tender for purchase on the date which would have been the effective date of the Conversion.

No Conversion from one Interest Rate Period to another shall take effect unless each of the following conditions, to the extent applicable, shall have first been satisfied:

(1) With respect to the new Interest Rate Period, there shall be in effect a Liquidity Facility if and as required under the Bond Resolution.

(2) The Registrar shall have received a Favorable Opinion of Bond Counsel with respect to such Conversion dated the effective date of such Conversion.

(3) In the case of any Conversion with respect to which there shall be no Liquidity Facility in effect to provide funds for the purchase of Variable Rate Bonds or any subseries of Variable Rate Bonds on the Conversion Date, the remarketing proceeds available on the Conversion Date shall not be less than the amount required to purchase all of the Variable Rate Bonds or any subseries of Variable Rate Bonds at the Tender Price (not including any premium).

(4) In the case of any Conversion of any subseries of Variable Rate Bonds from any ARS Rate Period to any other Interest Rate Period (except a Long-Term Interest Rate Period effective to the maturity date of the applicable Variable Rate Bonds or to an Indexed Put Interest Rate Period), prior to the Conversion Date the Secretary shall have appointed a Tender Agent, a