## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

------------------------------------------------------------x

| | |
|---|---|
| In re: | |
| | PROMESA |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Title III |
| | No. 17 BK 3283-LTS |
| as representative of | |
| | **Re: ECF No. 4398** |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| | (Jointly Administered) |
| Debtors.[1] | |

------------------------------------------------------------x

| | |
|---|---|
| ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC., | PROMESA |
| | Title III |
| Movant, | No. 17 BK 3283-LTS |
| | |
| v. | **This Objection relates only to the Commonwealth and shall only be filed in the lead Case No. 17 BK 3283-LTS.** |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| | |
| as representative of | |
| | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | |
| | |
| Respondent. | |

------------------------------------------------------------x

## OBJECTION OF FOMB, AS REPRESENTATIVE OF THE COMMONWEALTH OF PUERTO RICO, TO MOTION FOR RELIEF FROM STAY FILED BY ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC.

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

SUMMARY OF ARGUMENT ................................................................................................... 1

PROCEDURAL HISTORY..................................................................................................... 5

OBJECTION............................................................................................................................ 7

     I.       MOVANT HAS FAILED TO ALLEGE CAUSE FOR STAY RELIEF............. 7

CONCLUSION....................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atlantic Medical Ctr., Inc. v. Commonwealth of P.R.* (*In re Commonwealth of P.R.*)
Adv. Proc. No. 17-00278, ECF No. 65 (D.P.R. Nov. 27, 2018)............................................12

*Aurelius Capital Master, Ltd., et al. v. Commonwealth of PR,*
Case No. 17-AP-189 (June 29, 2017) .....................................................................................3

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla,*
217 F. Supp. 3d 508 (D.P.R. 2016).................................................................................10, 15

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.),*
28 B.R. 324 (Bankr. S.D.N.Y. 1983) .....................................................................................16

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.),*
2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006) ........................................................16

*In re 234-6 West 22nd St. Corp.,*
214 B.R. 751 (Bankr. S.D.N.Y. 1997). Bankruptcy ................................................................8

*In re BFW Liquidation, LLC,*
No. 09-00634-BGC-11, 2009 WL 8003536 (Bankr. N.D. Ala. Sept. 14, 2009) ....................13

*In re Breitburn Energy Partners LP,*
No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017).....................................10

*In re City of Stockton,*
484 B.R. 372 (Bankr. E.D. Cal. 2012) ...................................................................................14

*In re Cummings,*
221 B.R. 814 (Bankr. N.D. Ala. 1998) ...................................................................................11

*In re Financial Oversight and Management Board for Puerto Rico,*
899 F.3d 13 (1st Cir. 2018)................................................................................................8, 10

*In re Gatke Corp.,*
117 B.R. 406 (Bankr. N.D. Ind. 1989)...................................................................................15

*In re Jefferson Cnty.,*
491 B.R. 277 (Bankr. N.D. Ala. 2013) ....................................................................................8

*In re Motors Liquidation Co.,*
No. 09- 50026, 2010 WL 4630327 (S.D.N.Y. 2010)..............................................................17

## TABLE OF AUTHORITIES

(continued)

Page(s)

*In re Murrin*,
477 B.R. 99 (D. Minn. 2012) ............................................................................................11

*In re Northwest Airlines Corp.*,
No. 05-17930 (ALG), 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 13, 2006) ..........................15

*In re Plumberex Specialty Prod., Inc.*,
311 B.R. 551 (Bankr. C.D. Cal. 2004)....................................................................................17

*In re Residential Capital, LLC*,
2012 Bankr. LEXIS 3641 (Bankr. S.D.N.Y. Aug 8, 2012) ....................................................16

*In re Residential Capital, LLC*,
No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012)................................14, 19

*In re Unanue-Casal*,
159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994)...........................................8, 10

*In re WorldCom, Inc.*,
2006 WL 2255071 (S.D.N.Y. Aug. 4, 2006) ..........................................................................11

*Lex Claims, LLC, et al. v. the Commonwealth of PR*,
Case No. 3:16-cv-02374- FAB ...............................................................................................3

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
362 B.R. 49 (B.A.P. 1st Cir. 2007) ..........................................................................................8

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
537 B.R. 128 (Bankr. D.P.R. 2015) ..........................................................................................7

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) .........................................................10

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
980 F.2d 110 (2d Cir. 1992)....................................................................................................13

*Soares v. Brockton Credit Union (In re Soares)*
107 F. 3d 969 (1st Cir. 1997) ...................................................................................................7

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990)......................................................................................... passim

*Unisys Corp. v. Dataware Prods., Inc.*,
848 F.2d 311 (1st Cir. 1988)....................................................................................................8

iii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*United States v. Bekins*,
  304 U.S. 27 (1938)...................................................................................................2

**STATUTES & CONSTITUTIONAL PROVISIONS**

11 U.S.C. § 362(a) ....................................................................................................7

11 U.S.C. § 362(d)(1) ................................................................................................8

11 U.S.C. § 922 ........................................................................................................14

11 U.S.C. § 1125 ........................................................................................................9

11 U.S.C. § 1128 ........................................................................................................9

PROMESA § 4 ............................................................................................................4

PROMESA § 101(c) ...............................................................................................6, 16

PROMESA § 104(j) ....................................................................................................5

PROMESA § 106(e) ..................................................................................................13

PROMESA § 206 ........................................................................................................5

PROMESA § 301(a) ................................................................................................8, 9

PROMESA § 304(a) ....................................................................................................5

PROMESA § 306(a) ..................................................................................................12

PROMESA § 310 ........................................................................................................9

PROMESA § 314(b)(6) ...............................................................................................2

PROMESA § 314(b)(7) .............................................................................................13

PROMESA § 315(b) ...........................................................................................1, 6, 16

PROMESA § 405(m)(1)-(2) .......................................................................................4

P.R. Const. art. II § 7 .................................................................................................4

P.R. Const. art. VI § 11 ..............................................................................................3

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

OTHER AUTHORITIES

Bankr. R. 2002(b) ...................................................................................................................9

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), respectfully submits this objection (the "Objection") to the *Motion for Relief from Stay* [ECF No. 4398] (the "Motion") filed by Associación Puertorriqueña de la Judicatura, Inc. ("Movant"), a party in the case captioned *Associación Puertorriqueña de la Judicatura, Inc. v. The Financial Oversight and Management Board for Puerto Rico*, Civil No. 17-1580 (the "Lawsuit"), pending before the United States District Court for the District of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.

## SUMMARY OF ARGUMENT

1.     The same day the Commonwealth's Title III case commenced (May 3, 2017), an association of active and retired Commonwealth judges filed its amended complaint against the Oversight Board (the "Complaint") in furtherance of its Lawsuit. The Lawsuit requests a "Declaratory Judgment to the effect that that [sic] in approving and certifying the [Commonwealth fiscal plan certified March 13, 2017], the [Oversight Board] acted *ultra vires* in mandating a retroactive reduction in the pensions of the Judiciary." Complaint at 15. The United States District Court ruled the Lawsuit was automatically stayed,[2] leading to Movant's instant request for stay relief allowing it to prosecute its Lawsuit for a judgment declaring the Oversight Board is unauthorized to certify a fiscal plan providing for reductions of Commonwealth judges' pensions.

---

[2] Order Granting Notice of Filing of Title III Case and Automatic Stay, *Associación Puertorriqueña de la Judicatura, Inc. v. The Financial Oversight and Management Board for Puerto Rico*, Civil No. 17-1580, ECF No. 10.

2.      As the certified fiscal plan (and all subsequent fiscal plans) shows, the fiscal plan is a blueprint for Commonwealth fiscal policy and budgets.  It provides for absolutely no discharges of any claims.  Thus, neither any fiscal plan nor any budgets consistent with the fiscal plans deprive anyone, including Movant's constituency, of their claims for all pension and other obligations.  Even though the certified Commonwealth fiscal plans have provided for pension discounts averaging ten percent and reduction of new pension benefits that can be earned, none of them purport to discharge any creditor's current claims or rights to more.  Discharges can only be requested in a Title III plan of adjustment, which has not even been proposed for the Commonwealth.[3]

3.      When the Oversight Board proposes a plan of adjustment for the Commonwealth, if it includes a reduction in Commonwealth judges' existing pension claims and/or the amounts judges can accrue for future pension claims, Movant can object to confirmation of the plan on any grounds, such as that the plan is illegal under Title III or the United States Constitution, or that it is not in the best interests of creditors.  Indeed, PROMESA § 314(b)(6) requires a determination at the confirmation hearing as to whether a plan of adjustment is in the best interests of creditors after considering whether creditors would recover more under non-bankruptcy law and the constitution of the territory.

4.      Movant, in substance, insists on litigating now against only the Oversight Board, whether there are any circumstances under which the Oversight Board can certify fiscal plans and propose a confirmable plan of adjustment calling for any reduction in Commonwealth

---

[3] When the merits of Movant's central contention is litigated, the Court will consider whether the Commonwealth's constitution is binding in Title III cases, and if so, whether any reduction in judicial pensions stems from the legislature of the Commonwealth government or a Title III discharge ordered by a federal court.  In *United States v. Bekins*, 304 U.S. 27, 52-54 (1938), the U.S. Supreme Court ruled the impairment of contractual obligations in Chapter IX stemmed from the federal bankruptcy court and was not an impairment of contractual obligations by a municipal or state legislature in violation of the U.S. constitution, even though the Chapter IX plan of adjustment could only be proposed by the municipality.

judges' pensions.  As the Court knows and Movant knows, the General Obligation debtholders assert they have a priority claim to all the Commonwealth's "available resources."[4]  How can Movant's constituency be paid in full, if another creditor has a prior right to monies necessary to pay Movant's constituency?  That question and its answer are plan confirmation issues where all interested parties have notice and can be heard, not issues for a private lawsuit between Movant and the Oversight Board.

5.       Moreover, the General Obligation bondholders are not the only creditors having an interest in the Lawsuit.  As shown by the Complaint, Movant's legal theory is that the provisions in the Puerto Rico constitution barring reductions of Commonwealth judges' compensation for the purpose of maintaining their independence and a republican form of government, are enforceable in Title III.  They come to that conclusion largely by arguing the United States Congress approved the Puerto Rico constitution, thereby rendering it federal law.[5] In the appropriate litigation, the Oversight Board will show why that conclusion is wrong.  Here, we mention that issue solely to demonstrate Movant's Litigation raises multiple confirmation issues that will impact virtually all parties in interest, and there is no cause to grant stay relief to allow the Litigation to be resolved outside a confirmation hearing.

6.       Commonwealth judges do not have traditional employment contracts with the Commonwealth.  Rather, pursuant to section 11 of Article VI of the Puerto Rico constitution, their salaries are set by the Commonwealth legislature, and the same section of the Puerto Rico constitution bars the legislature from decreasing the judges' salaries during their terms.  Other public employees, such as teachers and police, have contracts – collective bargaining agreements.  Section 7 of Article II of the Puerto Rico Constitution, in pertinent part, provides:

---

[4] *See, e.g.*, Complaint, *Aurelius Capital Master, Ltd., et al. v. Commonwealth of PR*, Case No. 17-AP-189 (June 29, 2017); *Lex Claims, LLC, et al. v. the Commonwealth of PR*, Case No. 3:16-cv-02374- FAB.
[5] Complaint at 32-33.

"No laws impairing the obligations of contract shall be enacted" (the "<u>Contracts Clause</u>"). Therefore, if Movant is correct that the Puerto Rico constitution bars the Oversight Board from certifying fiscal plans and budgets reducing judicial pensions, then all public employees of the Commonwealth will claim the Puerto Rico constitution's Contracts Clause protects their salaries, including pensions, from any decreases.  If that is correct, then $50 billion of unfunded pension liability cannot be restructured.

7.      That, however, is only the beginning.  Most Commonwealth debt arises out of contracts with the Commonwealth.   For instance, non-General Obligation bonds of the Commonwealth and its instrumentalities (i.e., bond debt of PREPA, PRASA, HTA, etc.) are all contracts.  None of those bonds and no other debt based on contracts would be capable of impairment if the Puerto Rico constitution bars impairment of contractual obligations in Title III cases notwithstanding PROMESA § 4.

8.      Movant is by no means the first creditor constituency to assert that notwithstanding the fiscal emergency declared in Puerto Rico by the United States Congress, and notwithstanding the finding of Congress that the Commonwealth is unable to provide its citizens with effective services, PROMESA § 405(m)(1)-(2), Movant or another creditor constituency must be paid in full and others must somehow absorb all the losses and solve all the problems. This Court has been steadfast in denying such declaratory judgments to each other creditor constituency making such argument.[6]

9.      The bottom line is there is no cause to grant stay relief to allow Movant to litigate privately with the Oversight Board an issue central to confirmation of a plan of adjustment that does not currently exist.  Such litigation would violate all the procedural protections PROMESA

_____

[6] *See, e.g., Memorandum Order Denying Urgent Motion for Relief from Stay (Docket Entry No. 4444)*, 17-BK-3283, ECF 4639 (Jan. 8, 2019).

incorporates from the Bankruptcy Code and Bankruptcy Rules for all interested parties in the context of confirmation of a plan of adjustment.

10.     The Oversight Board emphasizes it is aware of and sensitive to the Commonwealth judges' structural concerns about the need to preserve their independence, and their individual concerns in protecting their pensions.  The pension issues, however, are not unique to the judges, and the Oversight Board desires to treat fairly all public employees.  No final decisions have been reached on how the judicial pensions will be treated in a proposed plan of adjustment.  The Oversight Board submits it is clearly premature to allow Movant to litigate a confirmation issue, and there is no cause to do so.  Moreover, it is not possible to do so absent an actual plan of adjustment.

## PROCEDURAL HISTORY

11.     On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206, and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof.  On the same day, Movant amended its Complaint in the Lawsuit against the Oversight Board seeking a declaratory judgment that the Oversight Board "acted *ultra vires* in mandating a retroactive reduction in the pensions of the Puerto Rico Judiciary."  Motion at 4.  Thus, Movant seeks to undo the Oversight Board's certification of the March 2017 fiscal plan (and, presumably, any subsequently certified fiscal plan that provides for reductions in judicial pensions), and enjoin any impairment of judicial pensions in a Title III plan of adjustment for the Commonwealth.

12.     On May 15, 2017, the Oversight Board filed with the United States District Court presiding over the Lawsuit, the *Financial Oversight and Management Board's Statement*

*Regarding Title III Case and Automatic Stay of Proceedings*, requesting that the District Court take notice of, among other things, the automatic stay applicable to the Lawsuit because, among other things, (a) the Lawsuit asserts prepetition pension claims against the Oversight Board, (b) it seeks an injunction preventing the Oversight Board from implementing the then-certified fiscal plan for the Commonwealth, (c) pursuant to PROMESA section 101(c), the Oversight Board is an entity within the territorial government of Puerto Rico, which is part of the Commonwealth, and (d) the Oversight Board is representative of the Commonwealth in its Title III case pursuant to PROMESA section 315(b). *Asociacion Puertorriquena de la Judicatura v. The Financial Oversight and Management Board*, Case No. 17-1580, ECF No. 9 (the "Stay Notice").  On May 17, 2017, the District Court entered an order staying the Lawsuit.  *Asociacion Puertorriquena de la Judicatura v. The Financial Oversight and Management Board*, Case No. 17-1580, ECF No. 10 (the "Stay Order").  At the time of the Stay Order, no answer or responsive pleading to Movant's amended complaint had been filed.

13.     Following the commencement of the Lawsuit, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority entered negotiations with Movant in an effort to resolve Movant's claims in connection with the Lawsuit.  On June 13, 2017, Movant and the Oversight Board filed a stipulation with the Court that provides Movant will not file a motion to lift the automatic stay during the pendency of negotiations among the parties. *Notice of Presentment of Stipulation and Request for Court Approval* [ECF No. 327], Exhibit A, ¶ 10-11 (the "Stipulation").  The Court approved the Stipulation on July 3, 2017. [ECF 569].

14.     On December 4, 2018, Movant filed the Motion seeking to lift the automatic stay to proceed with the Lawsuit against the Oversight Board.

15. The Oversight Board submits this brief to show the *Sonnax*[7] factors weigh heavily in favor of maintaining the automatic stay and denying the Motion. Therefore, it is respectfully submitted that the Motion be denied.

## OBJECTION

## I. MOVANT HAS FAILED TO ALLEGE CAUSE FOR STAY RELIEF

16. Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543] (the "Title III Stay Order").

17. "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015) (citation omitted). The broad scope of the

---

[7] *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990).

automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'") (citation omitted); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

18.     An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy Code.  *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). Consistent with the First Circuit's ruling in *In re Financial Oversight and Management Board for Puerto Rico*, 899 F.3d 13, 23 (1st Cir. 2018), to determine whether "cause" exists to grant relief from the stay, courts usually examine numerous factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d

8

Cir. 1990).  Here, we submit the Motion should be denied before ever getting to the *Sonnax* factors because Movant is requesting relief to prosecute confirmation issues without following the requirements of Bankruptcy Code sections 1125 and 1128 and Bankruptcy Rule 2002(b), made applicable by PROMESA sections 301(a) and 310.  Movant wants to proceed to procure relief for themselves without a disclosure statement showing the impact of that relief on all other constituencies, without allowing all impacted constituencies to weigh in, without a confirmation hearing, and without notice to all parties in interest.

19.     Consideration of the *Sonnax* factors only makes clearer that Movant has not alleged valid cause for stay relief.  The *Sonnax* factors are:

(1)   whether relief would result in complete or partial resolution of the issues;

(2)   the lack of any connection with or interference with the bankruptcy case;

(3)   whether the foreign proceeding involves the debtor as fiduciary;

(4)   whether a specialized tribunal has been established to hear the cause of action at issue;

(5)   whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)   whether the action essentially involves third parties rather than the debtor;

(7)   whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

20.     Courts in this Circuit have adopted these "*Sonnax* factors."  *See In re Financial Oversight and Management Board for Puerto Rico*, 899 F.3d at 23 ("We agree with the parties that the factors identified by the Second Circuit in *Sonnax* and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum."); *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors.") (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016).

21.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one.  *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Here, the *Sonnax* factors squarely support maintaining the automatic stay and militate against awarding the remedy Movant seeks.

22.     ***Sonnax* Factor 1:**  The first *Sonnax* factor, "whether relief will result in a partial or complete resolution of the issues," weighs against lifting the automatic stay.  The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that

particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case.  *See, e.g., In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012) ("In making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court."); *In re WorldCom, Inc.*, 2006 WL 2255071, at *8-9 (S.D.N.Y. Aug. 4, 2006) (affirming bankruptcy court's application of *Sonnax* Factor 1 in debtor's favor because any funds sought by plaintiff were property of the estate subject to the jurisdiction of the bankruptcy court and disposition under a chapter 11 plan); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

23.     Here, the Movant is seeking to litigate confirmation issues in a separate forum – in essence to challenge the potential treatment of prepetition, unsecured pension claims in a hypothetical plan of adjustment not yet proposed.  Movant argues platitudes that lifting the automatic stay "will allow the District Court to hear the parties on their respective sides of [the Lawsuit] and facilitate judicial interpretation of the relevant facts and case law to come to a final conclusion."  Motion at 12. This argument is simply wrong for many reasons.  First, all the necessary parties will not be parties to the Lawsuit.  Second, there will be no actual plan of adjustment to consider.  Third, if the Lawsuit remains with the District Judge to whom it was assigned, inherently confirmation issues will be split between two judges, on two different time tables, with two different appellate tracks.  Moreover, the outcome of the Lawsuit will superficially look final for appeal purposes, but will actually be interlocutory because it is simply one piece of the confirmation mosaic.  Allowing the Lawsuit to proceed, particularly outside this

Court, would undermine the fundamental purpose of Title III – the restructuring of all claims against the Commonwealth in a single, central proceeding where all parties in interest may be heard.

24.      At bottom, the issues Movant seeks to litigate are not yet ripe for determination as, to date, no plan of adjustment that has been proposed.  *See*, *e.g.*, *Atlantic Medical Ctr., Inc. v. Commonwealth of P.R.* (*In re Commonwealth of P.R.*), Adv. Proc. No. 17-00278, ECF No. 65, at 5 (D.P.R. Nov. 27, 2018) (holding that claim of nondischargeability of prepetition claims against the Commonwealth was not ripe for review because, among other things, "it is uncertain whether a future plan of adjustment will propose to discharge the claims that are at issue.").  Because no plan of adjustment has been proposed for the Commonwealth at this time, lifting the automatic stay to allow Movant to proceed with the Lawsuit will not resolve any issue in the Commonwealth's Title III case.  Furthermore, any challenge to the treatment of Movant's claims pursuant to a plan of adjustment should be addressed within the Commonwealth's Title III case at the appropriate time, and are subject to the jurisdiction of the Title III Court.  PROMESA § 306(a).  Therefore, the first *Sonnax* factor by itself mandates denying the Motion.

25.      ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay and in fact weighs heavily against it.  First, lifting or modifying the stay to allow litigation of Movant's claims against the Oversight Board in a separate proceeding would interfere with the centralized plan confirmation and claims resolution process contemplated under Title III. Movant seeks in the Lawsuit a preemptive determination that the judges' prepetition, unsecured pension claims cannot be impaired in a yet-to-be-proposed plan of adjustment for the Commonwealth, while in the process circumventing the ability of the myriad other parties in interest (many of whom have

already asserted in this Court similar arguments for their own claims) to participate and be heard

on the issues.  Allowing Movant to pursue such a determination before any plan of adjustment

has been proposed would undermine the centralized plan confirmation and upend the "strong

bankruptcy code policy that favors centralized and efficient administration of all claims in the

bankruptcy court . . . ."  *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip.*

*Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation,*

*LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009)

("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in

diverse forums merely to establish what share, if any, the claimants filing those suits will have in

whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the

summary process for adjudicating and liquidating claims.").

26.     Moreover, Movant seeks to challenge the authority of the Oversight Board to

certify fiscal plans for the Commonwealth. The Movant attempts to utilize a separate forum as a

means of litigating the Oversight Board's certification of fiscal plans,[8] which fiscal plan will help

shape any future plan of adjustment pursuant to PROMESA § 314(b)(7).  Movant's requested

relief would thus interfere with the core mission of Title III, the confirmation of a plan of

adjustment.

27.     Second, lifting or modifying the stay to proceed with the Lawsuit will interfere

with the Title III case by diverting the Commonwealth's attention and resources to defending

Movant's challenges to the Commonwealth's certified fiscal plan in another forum and will

encourage other claimants to seek similar relief that do not fall within the purview of that forum

and should all be addressed as part of the confirmation process.  Should every plaintiff with an

---

[8] The District Court would lack subject matter jurisdiction to hear Movant's challenge to the Oversight Board's
certification of any Commonwealth fiscal plan pursuant to PROMESA § 106(e).

asserted prepetition claim or challenge to the hypothetical treatment of such claim in a certified fiscal plan be given carte blanche to seek to obtain preemptive determinations as to the treatment of their claims in a yet-to-be-proposed plan of adjustment, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan and budget.  This would impede the restructuring process, and should be avoided.  *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

28.     In this regard, *In re City of Stockton* is instructive. 484 B.R. 372 (Bankr. E.D. Cal. 2012). There, plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374.  Plaintiff then moved to lift the stay and argued allowing the suit to go forward would not interfere with the chapter 9 case.  *Id.* at 378. The court disagreed, holding plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.*  "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

29.     Here, lifting the automatic stay would require the Commonwealth to expend resources to litigate issues with respect to the treatment of Movant's prepetition, unsecured pension claims that are not yet ripe.  Substantial progress in the Lawsuit must be made before it is ready for trial, including moving to dismiss Movant's complaint, and then, if not totally dismissed, the commencement and completion of discovery, attending the pretrial hearing, and

the preparation and filing of the pretrial report, all of which will require the Commonwealth to expend considerable time and expense. Movant's assertion that "little to no discovery is warranted" is unsupported. Motion at 13. No answer or other response to Movant's complaint has been filed at the time the Lawsuit was stayed. Additionally, for the reasons explained above, it is likely there will be multiple motions to intervene in the lawsuit because it impacts virtually all other constituencies.

30. Thus, *Sonnax* factor 2 weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization.") (citations omitted).

31. ***Sonnax* Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal has been established to hear the Lawsuit, which is pending before the District Court. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion. Furthermore, the Movant is seeking to litigate confirmation issues that are properly heard as part of the Commonwealth's Title III case.

32.     **_Sonnax_ Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion.  No insurer of the Commonwealth has assumed any financial responsibility for defending the Lawsuit, and Movant does not allege any facts to the contrary.  Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

33.     **_Sonnax_ Factor 6**:  The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather whether the Lawsuit primarily involves third parties *rather than* the debtor.  *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties.") (emphasis in original).

34.     Here, the Lawsuit only names the Oversight Board as a defendant, but impacts almost all constituencies.  Pursuant to PROMESA section 101(c), the Oversight Board is an entity within the territorial government of Puerto Rico, which is part of the Commonwealth; and the Oversight Board is representative of the Commonwealth in its Title III case pursuant to PROMESA section 315(b).  *See* Stay Notice; Stay Order.  The Lawsuit is targeted squarely, indeed solely, at the Oversight Board's restructuring authority.  Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was

16

more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

35.    ***Sonnax* Factor 7**:   The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.  If Movant were to succeed in convincing another court, in a private action without participation by any or all impacted constituencies, to declare judicial pensions cannot be restructured in Title III, other creditors would be required to absorb a greater loss to allow payment in full of judicial pension claims.  Additionally, the myriad other claimants that have asserted immunity from impairment under Title III would certainly follow suit and seek stay relief to take their arguments elsewhere. The Oversight Board, on behalf of the Commonwealth, would have to expend considerable time and expense to litigate not only the Lawsuit but countless other actions seeking nondischargeability under a hypothetical plan.  Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation.  *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors").  Here, the depletion of the Commonwealth's resources to defend against the Lawsuit and many others sure to follow, and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the Commonwealth's

other creditors—especially where Movant is seeking a preemptive determination that the subject prepetition pension claims cannot be impaired pursuant to a Title III plan, pursuant to a fiscal plan certified by the Oversight Board under PROMESA, before any plan of adjustment has been proposed. In addition to the depletion of resources, the other parties in interest would be prejudiced because litigating the prepetition claims that should be part of plan confirmation proceedings would be done in a separate forum and private lawsuit. The other parties in interest would consequently be limited in their ability to be heard and participate in litigating related issues. Accordingly, *Sonnax* factor 7 weighs heavily against granting the Motion.

36.     ***Sonnax* Factors 10 and 11:**  The interests of judicial economy and the status of the Lawsuit also weigh against stay relief.  First and foremost, the relief Movant requests would open the floodgates to other claimants who would certainly pursue their own asserted rights and priorities against the Commonwealth in other courts.  The interest of judicial economy, not to mention the fundamental policy of PROMESA and the Bankruptcy Code, mandate that these confirmation issues be litigated in the context of plan confirmation in the Commonwealth's Title III case.

37.     Second, the Lawsuit itself is at a very preliminary stage. The Complaint was filed the same day as the Commonwealth's Title III petition, and no answer or other pleadings have been filed to date.  A myriad of proceedings necessary for the Lawsuit to even be trial ready remain pending, such as moving to dismiss or otherwise responding to the complaint, conducting and finalizing discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Oversight Board, on behalf of the Commonwealth, to expend considerable time and expense.

38.     Movant's argument that lifting the stay would favor the interest of judicial economy and expedient resolution of the litigation "because it would allow the parties to present their case to the District Court and evaluate and make a ruling on Declaratory Judgment versus continuing to employ judicial resources in fruitless meetings and negotiations," Motion at 12-13, is untenable because it presumes allowing litigation to proceed, no matter the stage of such litigation, always promotes judicial economy, and accordingly the tenth *Sonnax* factor would always favor lifting the automatic stay.

39.     As such, the parties are not ready for trial in the Lawsuit and granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

40.     ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth and its restructuring efforts if the Motion were to be granted would greatly outweigh any harm Movant would suffer if the automatic stay remains in place. This issue of whether the Puerto Rico constitution grants a priority enforceable in Title III is an issue that virtually all major creditor groups cannot afford to ignore.  It could totally derail all pending discussions.  The procedural status of the Lawsuit, the large number of pending lawsuits

against the Debtors (including many to date that have challenged the Oversight Board's certification of fiscal plans and asserted the subject claims cannot be impaired in Title III), the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to the interests of other similarly situated creditors, all weigh in favor of continuing the automatic stay at this juncture of the Title III case.

41.     In contrast, Movant will suffer little to no harm if the stay remains in place. Certified fiscal plans and budgets are simply blueprints for fiscal policy and debt restructuring. They do not effectuate the restructuring and they do not impair or discharge claims.  Only a confirmed plan of adjustment can do that, and there has been no proposed plan of adjustment for the Commonwealth that would effectuate a pension reduction for the judiciary.  If or when such a plan is proposed, the appropriate forum to address Movant's claims will be the Title III court, not the Lawsuit.  In the meantime, no pension benefits have been reduced, and Movant's constituents have incurred no harm whatsoever.

42.     Postponing determination of Movant's claims is a hardship shared with other creditors so the Commonwealth can focus on its restructuring and recovery efforts for the benefit of all creditors, and would promote judicial economy.  Any claim Movant may have can and should be dealt with within the Commonwealth's Title III case, the same as any other creditor's claims.  Given the early stage of the Lawsuit, there is no guaranty the resolution of the Lawsuit would come any sooner than the resolution of Movant's purported claims in the Title III case. Thus, *Sonnax* factor 12 weighs in favor of denying the Motion.[9]  Moreover, as a practical matter,

---

[9]     The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

it is at least possible, that no other District Judge will want to weigh in on a confirmation issue divorced from an actual plan of adjustment with all parties in interest being heard.

## **CONCLUSION**

43.     Movant has failed to allege valid cause to justify lifting the automatic stay in the Commonwealth's Title III case to allow the Lawsuit to proceed.   Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: January 15, 2019
          San Juan, Puerto Rico

                              Respectfully submitted,

                              */s/* DRAFT
                              Hermann D. Bauer
                              USDC No. 215205
                              **O'NEILL & BORGES LLC**
                              250 Muñoz Rivera Ave., Suite 800
                              San Juan, PR 00918-1813
                              Tel: (787) 764-8181
                              Fax: (787) 753-8944
                              Email: hermann.bauer@oneillborges.com
                              Email: carla.garcia@oneillborges.com

                              Martin J. Bienenstock (*pro hac vice*)
                              Timothy W. Mungovan (*pro hac vice*)
                              Brian S. Rosen (*pro hac vice*)
                              Paul V. Possinger (*pro hac vice*)
                              **PROSKAUER ROSE LLP**
                              Eleven Times Square
                              New York, NY 10036
                              Tel:  (212) 969-3000
                              Fax:  (212) 969-2900
                              Email: mbienenstock@proskauer.com
                              Email: tmungovan@proskauer.com
                              Email : brosen@proskauer.com
                              Email : ppossinger@proskauer.com

21

*Attorneys for the Financial Oversight and
Management Board for Puerto Rico, as
representative of the Commonwealth of Puerto Rico*