UNITES STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*<br>Debtors[1] | PROMESA Title III<br><br>Case No. 17-BK-03283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of,<br><br>THE PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>    Debtor. | PROMESA Title III<br><br>No. 17 BK 3284-LTS |

**RESPONSE TO THE PUERTO RICO SALES TAX FINANCING CORPORATION'S EVIDENTIARY OBJECTIONS TO DECLARATION OF JOSÉ I. ALAMEDA-LOZADA (DOCKET ENTRY 4761 IN CASE NO. 17-03283)**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

**COMES NOW PROSOL-UTIER**: (1) Capítulo Autoridad de Carreteras ("HTA Chapter"); (2) Capítulo Instituto de Cultura Puertorriqueña ("ICP Chapter"); (3) Capítulo Oficina del Procurador del Veterano ("OPV Chapter"); (4) Capítulo de Oficina Desarrollo Socioeconómico y Comunitario ("ODSEC Chapter") y (5) Capítulo de Jubilados ("Retirees Chapter") (Collectively known as "PROSOL-UTIER"), and submit this *Response to The Puerto Rico Sales Tax Financing Corporation's Evidentiary Objections to Declaration of José I. Alameda-Lozada (Docket Entry 4761 In Case No. 17-03283)*.

1. On November 30, 2018, the Financial Oversight and Management Board ("FOMB") filed a *Second Amended Title III Plan of the Puerto Rico Sales Tax Financing Corporation.* [Docket Entry No. 4392]. Later, on January 9, 2019 the FOMB filed the *Third Amended Title III Plan of Adjustment of [COFINA]* [Docket Entry No. 4658 in Case No. 17-03283] ["COFINA Plan of Adjustment"]. PROSOL-UTIER filed and opposition to the confirmation of the COFINA Plan of Adjustment [Docket Entry No. 4592 in Case No. 17-03283] as a contested matter governed by Federal Rule of Bankruptcy Procedure 9014. With that purpose, PROSOL-UTIER disclosed in a report the expert testimony of Dr. José Israel Alameda-Lozada ("Dr. Alameda"). In addition, submitted with the Motion Dr. Alameda's *curriculum vitae* and a *Declaration of José Israel Alameda-Lozada, Ph.D., in support of Objection to Confirmation of Second Amended Title III Plan of Adjustment of [COFINA].* [Docket Entry No. 4592-3 in Case No. 17-03283] ("Dr. Alameda's Declaration"). Dr. Alameda's Declaration was submitted under penalty of perjury about the circumstances of his expert report and its reliability all in compliance with 28 U.S.C. § 1746.

2. On January 10, 2019, PROSOL-UTIER filed a *Motion to Inform Cross-Examination and Presentation of Expert Testimony in Hearing of January 16, 2019.* [Docket Entry No. 459 in Case No. 17-03284].

2

3. On January 14, 2019 the Puerto Rico Sales Tax Financing Corporation ("COFINA") filed by and through the FOMB the *Puerto Rico Sales Tax Financing Corporation 's Evidentiary Objections to Declarations of José I. Alameda Lozada filed in Support of PROSOL-UTIER's Objections to Second Amended Title III Plan of Adjustment.* [Docket Entry No. 4761 in Case No. 17-03283]. COFINA's objections to Dr. Alameda's Declaration are based on the grounds of relevance, hearsay and lack of foundation under the Federal Rules of Evidence. COFINA also alleges that PROSOL-UTIER lacks prudential standing to object the COFINA Plan of Adjustment because it is not a COFINA creditor.

4. The FOMB has the burden of proof to move this Honorable Court to confirm the COFINA Plan. In the context of Chapter 9 cases, see *In re Mount Carbon Metro. Dist.* (1999, BC DC Colo) 242 BR 18, 17 Colo Bankr Ct Rep 108.[2]

5. The Unión de Trabajadores de la Industria Eléctrica y Riego, ("UTIER" by its Spanish acronym), was founded in the early 1940´s and it is one of four labor unions that represent the Puerto Rico Electric Power Authority ("PREPA") employees. Since its beginnings, UTIER's mission has been to protect and defend PREPA's workers, as well as negotiate collective bargaining agreements on their behalf.

6. PROSOL-UTIER, on the other hand, is UTIER's Solidarity Program with other public service workers. PROSOL-UTIER's purpose is to carry and promote UTIER's values in advocating for worker's rights through collective bargaining for workers the in the Commonwealth of Puerto Rico governmental agencies other than PREPA. It is composed of five (5) Chapters. This accounts for a total of approximately 827 members that are employees of the

---

[2] Metropolitan district failed to meet its burden of satisfying confirmation requirements of 11 U.S.C. § 943(b)(1), (2) and (7) by preponderance of evidence, since plan was not feasible, where it was not suitable vehicle for district to repay its pre-petition debts and provide future public services; in determining that plan was not proposed in good faith, totality of circumstances must be considered, including fact that the role of Bankruptcy Court in Chapter 9 is to supervise reorganization process and is limited in plan confirmation process to disapproving or approving municipality's proposed plan.

Commonwealth of Puerto Rico or its instrumentalities or retirees and will be directly affected by the Commonwealth's determinations in the Title III proceedings, including its settlement with COFINA.

7. PROSOL-UTIER members are also participants of the Employees' Retirement System of the Commonwealth, a covered territorial instrumentality, subject to the pension reform according to the New Fiscal Plan. Thus, the appearing labor unions and retirees are parties in interest and creditors of the Commonwealth that will be severely affected decades to come by the approval of the proposed settlement and plan of adjustment for COFINA. To the extent the COFINA Plan of Adjustment and the Settlement deprive the Commonwealth of enough funds for essential services and pension systems, PROSOL-UTIER's members interests will be adversely affected.

8. The Puerto Rico Sales and Use Tax ("SUT") is a vital revenue for the Commonwealth of Puerto Rico that is crucial to comply with the estimates of revenues and expenditures in conformance with agreed accounting standards and to ensure the funding of essential services.

9. The excessive payments to the new COFINA bondholders with the reduced cash flow caused by the decrease in taxable consumption would divert funds that Puerto Rico urgently needs for reconstructing its economy and satisfying the needs of its people. Moreover, the COFINA Settlement would padlock in these exorbitant payments for decades to come. By giving COFINA a "first dollars" claim on the SUT, it results in a substantial decline in tax revenues of the Commonwealth of Puerto Rico that need to be available to fund pension systems and to provide essential services.

10. The Commonwealth's ability to pay pensions will change dramatically when the debt service to COFINA bondholders begins and will worsen with the required debt services to general obligation bonds ("GO") when the plan of adjustment of the Commonwealth is

confirmed. This will create an enormous burden on the feasibility of this essential payments, surely condemning retirees to permanent misery. Among those affected are PROSOL-UTIER's members. In light of the above stated, COFINA's argument that PROSOL-UTIER does not have standing is meritless.

11. Moreover, COFINA alleges that any statement of Dr. Alameda that is related to the Commonwealth of Puerto Rico or to its Fiscal Plan is not relevant in the confirmation process of the COFINA Plan of Adjustment. Quite the contrary. They are tightly intertwined.

12. Fed. R. Evid. 401 states that the "[e]vidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

13. Dr. Alameda's statements refer particularly to the issue of reliability of the economic growth projections in the Commonwealth's Fiscal Plan that are also identical to the projections for the COFINA Fiscal Plan. The Fiscal Plans are the basis for the COFINA Settlement and Plan of Adjustment.

14. COFINA is an instrumentality of the Commonwealth and the economic growth or misfortunes of the general economy of Puerto Rico, as modeled in the Commonwealth's Fiscal Plan, will directly affect the Fiscal Plan for COFINA as well as its Plan of Adjustment of Debt. In page 61 of his expert report, Dr. Alameda concluded that "**[t]he effects of a waning economy will result in a constant yearly reduction in SUT revenues for the Commonwealth**. By giving COFINA a "first dollars" claim on the SUT, it will increase the risk of a substantial decline in tax revenues of the Commonwealth of Puerto Rico. Over the 40 years term of the COFINA Plan of Adjustment almost 1 billion dollars of the Commonwealth's SUT funds will be lost." [Emphasis added] [See Docket Entry No. 4787-1 in Case No. 17-03283].

15. Therefore, the projections of revenues and expenses for the Commonwealth and its economic growth or misfortunes will directly affect the feasibility of the COFINA Plan of Adjustment. That is why Dr. Alameda concluded in page 61 of his report that "[w]ith Puerto Rico's limited ability to repay at the long run, a generous agreement with one set of bondholders necessarily reduces what the Commonwealth can reasonably offer to other bondholders and claimants and to cover for essential services and retirees. **The sustainability of Puerto Rico's debt restructuring needs to be assessed comprehensively, not by looking narrowly at each piece of a bigger puzzle.**" [Emphasis added] [See Docket Entry No. 4787-1 in Case No. 17-03283].

16. The reliability of the projections of the Fiscal Plan for the Commonwealth that Dr. Alameda rebutted, clearly has an important tendency to make the feasibility of the COFINA Plan of Adjustment more or less probable than it would be without this evidence. That issue is essential for a determination of the confirmation of the COFINA Plan of Adjustment. Thus, such evidence is relevant under Fed. R. Evid. 401.

17. As stated, the confirmation of the COFINA Plan of Adjustment and the Fiscal Plan for the Commonwealth of Puerto Rico are issues that are strictly related. But there are other powerful grounds to sustain the relevance of Dr. Alameda's testimony. The judicial evaluation of the validity of the actions of the FOMB under Title II of PROMESA is finally ripe. At page 21 of the *Opinion and Order* of February 27, 2018, in the case *Ambac Assurance Corporation v. Commonwealth of Puerto Rico*, *Adv. Proc. 17-159*-LTS, this Court stated the following:

> Under PROMESA's statutory framework, it is only at the plan confirmation stage that the Court determines whether a proposed plan of adjustment complies with, among other things, the provisions of Title 11 of the United States Code which have been made applicable to these cases by Section 301 of PROMESA **and the relevant provisions of PROMESA.** See PROMESA § 314. [Emphasis added]

6

18. Dr. Alameda's report concludes that the Commonwealth of Puerto Rico and COFINA Fiscal Plans (collectively "Fiscal Plans") do not comply with PROMESA, among other things, for lack of a definition of the term "essential services", they are not economically feasible and lack scientific reliability to develop dependable revenue and expenditures projections that are indispensable to address the confirmation of the COFINA Plan of Adjustment. Those requisites are basic and mandatory elements to comply with the provisions of Sections 201 and 314 of PROMESA.[3]

19. Dr. Alameda has refuted the reliability of the COFINA Plan of Adjustment and the sustainability of the debt restructuring for Puerto Rico's sales tax-backed bonds. In essence, Dr. Alameda concludes that it can be reliably foreseen that the COFINA Plan of Adjustment will bring many unreasonable and negative economic and social consequences for Puerto Rico, **that this Honorable Court is now in the position to prevent**, such as the impairment of the resources available to pay for essential services and for the pensions of more than 167,000 retirees.

20. The FOMB has repeatedly declined to define the term "essential services", in order to adequately protect them, as it is required by PROMESA. Section 201 of PROMESA[4] mandates specific criteria for the Commonwealth's Fiscal Plan, including that the plan must provide for estimates of revenues and expenditures in conformance with agreed accounting standards and must identify and ensure the funding of essential services.[5] The Commonwealth's Fiscal Plan certified by the FOMB, on its face, does not comply with such requirement. It makes no attempt to identify essential services, such as education, health and public safety. Thus, the confirmation of the plan creates a hazard and an invasion to the legally protected interest of the appearing

---

[3] 48 U.S.C. §§ 2141 and 2161.
[4] 48 U.S.C. § 2141(b)(1)(A),(B),(G),(J).
[5] *Id.*

7

parties. These and other violations of PROMESA within the fiscal plan will necessarily be repeated in the plan of adjustment of debts too, since PROMESA also prescribes that a Title III plan of adjustment cannot be confirmed unless it complies with the fiscal plan.[6] Absent a definition of what services should be protected as essential, there is no way to comply with the settlement without immediately or eventually impairing those services such as health, education and public safety, among others.

21. As already stated, the SUT is a vital revenue for the Commonwealth of Puerto Rico that is crucial to comply with the estimates of revenues and expenditures in conformance with agreed accounting standards and to ensure the funding of essential services and for the pension systems. Therefore, it is impossible to look only at the COFINA Fiscal Plan, which in terms of projections is no different than the one for the Commonwealth, and allege that the issues related to the Commonwealth are not relevant in the proceedings of confirmation of the COFINA Plan of Adjustment.

22. The relevance of Dr. Alameda's testimony is unmistakable when we examine the requirements for confirmation of the plan of adjustment under Section 314 of PROMESA. For instance, according to Section 314(b)(6) of PROMESA the court can confirm a plan if "the plan is feasible and in the best interests of creditors".[7] This requires the court to "consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan".[8] In the context of a Chapter 9 case, which is analogous to the Title III proceedings of the Commonwealth, a plan is feasible if the court finds that the debtor can make payments under the plan and provide **"future public**

---

[6] 48 U.S.C. § 2174.
[7] 48 U.S.C. § 2174(b)(6).
[8] *Id.*

8

**services at the level necessary to its viability as a municipality."**[9] Courts have interpreted the legislative history of Chapter 9 to imply that municipal bankruptcy law was not designed to balance the rights of the municipal debtor and its creditors but rather "to meet the special needs of a municipal debtor."[10] Those special needs include the need to remain in existence rather than liquidate,[11] and the need to continue providing public services.[12] The same interpretation can be applied to these Title III proceedings under PROMESA since Section 201 of PROMESA requires that the fiscal plan shall "provide a method to achieve fiscal responsibility and access to the capital markets"[13] (remain its existence rather than liquidate) and "ensure the funding of essential public services"[14] (continue providing public services).

23. **That is the exact point of Dr. Alameda's expert report.** The COFINA Plan of Adjustment will significantly and hopelessly affect the funding of essential services due to the stakeholders such as the appearing parties.

24. Moreover, COFINA's objection to Dr. Alameda's testimony on the ground of relevancy is totally meritless because Mrs. Natalie A. Jaresko admitted on behalf of the FOMB the following:[15]

> 9. Prior to the commencement of the Commonwealth's Title III Case, the Oversight Board recognized that resolution of the Commonwealth-COFINA Dispute **is a critical component to the Commonwealth's restructuring.** Of the approximately $74 billion in aggregate Puerto Rico debt, the GO Debt and COFINA's Existing Securities together account for approximately 55% of the total funded indebtedness to be restructured. **The determination of which funds are available to service COFINA's debt and the Commonwealth's debt is dependent upon which entity, the Commonwealth or COFINA, owns the**

---

[9] *In re Mount Carbon*, 242 B.R. at 35; *see also In re Connector 2000 Ass'n*, 447 B.R. 752, 766 (Bankr. D.S.C. 2011) (finding the plan to be feasible because the municipal debtor would be able to pay its plan obligations and maintain its operations). [Emphasis added]
[10] *In re Richmond Unified Sch. Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991)
[11] *In re Addison Cmty. Hosp. Auth.*, 175 B.R. 646, 650 (Bankr. E.D. Mich. 1994)
[12] *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 41 (Bankr. D. Colo. 1999)
[13] 48 U.S.C. § 2141(b)(1)
[14] 48 U.S.C. § 2141(b)(1)(B)
[15] Fed. R. Evid. 801.

9

**portion of the Commonwealth's general sales and use tax (the "SUT")**…[16]
[Emphasis added]

25. Likewise, Mrs. Jaresko stated in her declaration in support of the Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 that "[t]he Settlement Agreement **is a necessary component for the Commonwealth to maximize recoveries for its stakeholders.**" [Emphasis added].[17]

26. Furthermore, COFINA objected ¶ 5 of Dr. Alameda's Declaration on the grounds of relevance (Fed. R. Evid. 402) and for lack of foundation (Fed. R. Evid. 602, 703). First, Rule 602 specifically states that this rule does not apply to a witness's expert testimony such as Dr. Alameda's. Second, with regards to Fed. R. Evid. 703, Dr. Alameda's conclusions stated in his Declaration are stated in his expert report as well.[18] Dr. Alameda's expert report is based in facts and data that has been made available to him from different sources including documents prepared by the FOMB and the Commonwealth. All his conclusions are based on the data provided and the studies and analysis that he carried out applying the accepted methodologies in his field of expertise. Rule 703 allows an expert witness to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed. [And], [i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. Therefore, COFINA's objection on the ground of lack of foundation as per Rule 703 is meritless.

---

[16] Declaration of Natalie A. Jaresko in Support of Confirmation of Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, at Pag. 5, ¶ 9. [See Docket Entry No. 4756 in Case No. 17-03283].

[17] Declaration of Natalie A. Jaresko in Support of Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation, at Pag. 5, ¶ 8. [See Docket Entry No. 4758 in Case No. 17-03283].

[18] See Alameda-Lozada, *The Plan of Adjustment of Debt of COFINA: Sustainability and Financial Capacity of Puerto Rico's Economy*, Dated December 31st, 2018, as amended on January 14, 2019, at page 59. (Docket Entry No. 4787-1 in Case No. 17-03283).

27. Finally, COFINA objected every reference in Dr. Alameda's Declaration to his expert report or "study" for it not being sworn. Dr. Alameda's Declaration was submitted under penalty of perjury in compliance with 28 U.S.C. § 1746. However, for abundance of caution, on January 14, 2019 PROSOL-UTIER filed a *Motion Submitting Amended Expert Report from Dr. José I. Alameda-Lozada in Support of PROSOL-UTIER's Objection to Confirmation of Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation.* [See Docket Entry No. 4787 in Case No. 17-03283]. The only amendment to Dr. Alameda's expert report is to the effect of including the sworn statement in compliance with 28 U.S.C. § 1746. Therefore, all the objections to Dr. Alameda's expert report on the ground of hearsay are moot and meritless.

## CONCLUSION

This Honorable Court must deny COFINA's evidentiary objection to Dr. Alameda's Declaration in support of PROSOL-UTIER's objection to the confirmation of the Second Amended Plan of Adjustment of Debt for COFINA.

RESPECTFULLY SUBMITTED,

/s/Rolando Emmanuelli Jiménez
USDC: 214105

/s/Jessica E. Méndez Colberg
USDC: 302108

Bufete Emmanuelli, C.S.P.
P.O. Box 10779
Ponce, Puerto Rico 00732
Tel.: 787-848-0666
Fax: 1-787-841-1435
E-mail: rolando@bufete-emmanuelli.com
jessica@bufete-emmanuelli.com
notificaciones@bufete-emmanuelli.com

**WE HEREBY CERTIFY** that on this same date we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such

filing to all participants and Standard Parties. Paper copies have been mailed pursuant to Section II of the *Seventh Amended Notice, Case Management and Administrative Procedures*:

(i) Chambers of the Honorable Laura Taylor Swain (two copies shall be delivered to the chambers):
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Suite No. 3212
New York, New York 10007-1312;

(ii) Office of the United States Trustee for Region 21
Edificio Ochoa, 500 Tanca Street, Suite 301
San Juan, PR 00901-1922

/s/Rolando Emmanuelli Jiménez
USDC: 214105

/s/Jessica E. Méndez Colberg
USDC: 302108

12