## Exhibit A

**Second Revised Proposed Order**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------------x

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

--------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE COMMONWEALTH OF
PUERTO RICO,

     as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE COMMONWEALTH OF PUERTO RICO,

     Plaintiff,

v.

BETTINA WHYTE

     as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

     as representative of

THE PUERTO RICO SALES TAX FINANCING
CORPORATION,

     Defendant.

--------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

Adv. Proc. No. 17-00257

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

## ORDER APPROVING SETTLEMENT
## BETWEEN COMMONWEALTH OF PUERTO RICO
## AND PUERTO RICO SALES TAX FINANCING CORPORATION

Upon the *Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 2019 For Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (the "Motion");[2] and the Court having entered a scheduling order, dated October 31, 2018 [ECF No. 4128], requiring (i) all objections to the Motion and the relief requested therein to be filed with the Court and served on the Oversight Board no later than November 16, 2018 and (ii) the Debtor to file any reply to such objections by December 7, 2018; and the Court having found it has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA; and it appearing that venue in this district is proper pursuant to section 307(a) of PROMESA; and the Court having held a hearing on January 16, 2019 (the "Hearing"), to consider the Motion and the relief requested therein, any valid objections interposed thereto, public comment and the evidence and arguments submitted at the Hearing; and the Court having found that the relief requested in the Motion is in the best interests of the Commonwealth, its creditors, and other parties in interest; and the Court having found that the Commonwealth provided adequate and appropriate notice of the Motion under the circumstances and that no other or further notice is required; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon the record of the Hearing, after due deliberation thereon, the Court having found that good and sufficient cause exists for the granting of the relief as set forth herein, it is hereby found and determined that:[3]

---

[2] Capitalized terms not otherwise defined herein shall have the meanings given to them in that certain Settlement Agreement, dated October 19, 2018, attached to this Order as Schedule 1.

[3] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusion of law pursuant to Bankruptcy Rule 7052, made applicable to this contested matter pursuant to Bankruptcy Rule 9014.

A.       Objections to the Motion and the relief requested therein having been interposed by (i) Service Employees International Union and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America [ECF No. 4233], and joined by certain plaintiffs in Adversary Proceeding No. 18-0041 [ECF No. 4239], and Federación Central de Trabajadores, U.F.C.W., Local 481 [ECF No. 4248] (collectively, the "UAW Objection"), (ii) Capítulo de Autoridad de Carreteras, Capítulo Instituto de Cultura Puertorriqueña, Capítulo Oficina del Procurador del Veterano, Capítulo de Oficina Desarrollo Socioeconomico y Comunitario, and Capítulo de Jubilados [ECF No. 4251], and joined by Federación de Maestros de Puerto Rico [ECF No 4258] (collectively, the "PROSOL-UTIER Objection"), (iii) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico [ECF No. 4266] (the "Retiree Committee Objection"), and (iv) Lawrence B. Dvores [ECF No. 4244] (the "Dvores Objection" and together with the UAW Objection, the PROSOL-UTIER Objection, and the Retiree Committee Objection, the "Objections").

B.       The Debtor having filed the *Commonwealth of Puerto Rico's Omnibus Reply to Objections to Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 4434].

C.       Despite not filing a formal objection to the relief requested in the Motion, the Court considered public comment and arguments presented by miscellaneous parties.

D.       The Debtor having filed the *Declaration of Natalie A. Jaresko in Support of Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 4758], providing the background and summary regarding the

Commonwealth-COFINA Dispute, steps the Oversight Board took to implement an independent process to resolve the dispute with a court-appointed mediation team, the complex and novel issues attendant to the Commonwealth-COFINA Dispute, and the considerations of the Oversight Board to arrive at the conclusion that the Settlement is fair and reasonable and in the best interest of the Commonwealth and its stakeholders.

E.     The COFINA Agent having filed the *Statement of COFINA Agent in Support of Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 4656] attaching the *Declaration of Matthew A. Feldman* [ECF No. 4656-1] (the "Feldman Declaration"), summarizing the role of the COFINA Agent in negotiations with the Commonwealth Agent to resolve the Commonwealth-COFINA Dispute, the events leading to the Agents' announcement of the Agreement in Principle, negotiations with the Oversight Board following the announcement of the Agreement in Principle and entry into the Agreement, and the considerations of the COFINA Agent at arriving at the conclusion that the Settlement is in the best interest of COFINA.

F.     The Retiree Committee Objection having been withdrawn. [ECF No. 4704].

G.     The COFINA Agent and its agents, attorneys, affiliates, advisors, and consultants, solely in such capacities (the "COFINA Agent Releasees"), have acted in good faith in connection with their evaluation of, and their conduct with respect to, the Adversary Proceeding, the Agreement in Principle, the Agreement, the Motion, and COFINA's Title III Case.

H.     The Commonwealth Agent and the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Committee"), its members, and each of their respective current and former officers, directors, agents, attorneys, employees affiliates, advisors, and consultants, solely in such capacities (collectively, the "Commonwealth Agent Releasees"), have

4

acted in good faith in connection with their evaluation of, and their conduct with respect to, the
Adversary Proceeding, the Agreement in Principle, the Agreement, the Motion, and COFINA's
Title III Case.

I.      The issues raised by the Commonwealth-COFINA Dispute are novel, complex, and
of great importance to the people of Puerto Rico (as well as their fellow stakeholders), and present
a mixed question of federal and Puerto Rico law.

J.      The Commonwealth Agent has asserted a number of challenges to the
constitutionality of the transfer of the Pledged Sales Taxes to COFINA under the Commonwealth
Constitution's debt limit, debt priority, and balanced budget provisions.  Conversely, the COFINA
Agent has asserted its own claims, including that the Legislative Assembly properly exercised its
broad taxing and police powers to enact legislation transferring the SUT revenues to COFINA, the
debt limit provisions of the Commonwealth Constitution do not prohibit the transfer of the Pledged
Sales Tax to COFINA, the balanced budget provision of the Commonwealth Constitution does not
preclude the transfer of SUT revenues to COFINA, nor is it applicable to the COFINA Bonds, and
the plain language of Act 91 transferred ownership of the Pledged Sales Taxes to COFINA.

K.      Given the complexity and novel issues involved, the divergent positions of the
parties, and the protracted history of the dispute, the Commonwealth's likelihood of success in
litigating the Commonwealth-COFINA Dispute is uncertain, and even if initially successful, the
litigation would likely proceed to multiple appeals presenting their own risks and challenges.
Accordingly, issues surrounding the probability of success weigh in favor of approving the
Settlement.

L.      The Commonwealth-COFINA Dispute presents complex issues that are evidenced
also by the myriad of parties involved and the multiple suits already filed.  The briefing in the

5

Adversary Proceeding is extensive alone, with no fewer than six summary judgment motions having been filed by various parties that include, in addition to the Commonwealth Agent and the COFINA Agent, the Official Committee of Retirees of the Commonwealth of Puerto Rico, the COFINA Senior Bondholders' Coalition, the Ad Hoc Group of General Obligation Bondholders, the Mutual Fund Group, and the Puerto Rico Funds.  All parties in interest asserted equally divergent views regarding, among other things, whether (a) Act 91 did or did not transfer to COFINA a present property interest in potential future tax revenues, (b) there was or was no "true sale" of future tax revenues by the Commonwealth to COFINA, (c) Act 91 did or did not transfer to COFINA the Commonwealth's "right to receive" future tax revenues, and (d) the COFINA structure, Act 91 and the purported SUT revenue transfer are or are not constitutional.

M.     Continued litigation of the Commonwealth-COFINA Dispute will invite additional delay for both the Commonwealth and COFINA towards fiscal responsibility and access to the capital markets, significant expense, and further delay and inconvenience to the Commonwealth's and COFINA's stakeholders and ability of their creditors to receive any distribution on their claims.  Accordingly, the complexity of litigation and expense, inconvenience, and delay attending the litigation weigh in favor of approving the Settlement.

N.     The Settlement resolving the Commonwealth-COFINA Dispute provides certainty about the amounts available for the Commonwealth's debt service and other uses, and resolves billions of dollars of claims that have been asserted against the Commonwealth by the COFINA Agent and COFINA creditors.  This certainty will allow the Commonwealth to move forward with its Title III Case towards formulating a plan of adjustment, and thereby providing distributions to its creditors.  The interest of the Commonwealth's creditors are not served by protracted litigation that could delay payments on their claims and the ability of the Commonwealth to move forward

with its revitalization. Moreover, there are significant consequences for the Commonwealth and its stakeholders if the Commonwealth does not prevail in litigating the Commonwealth-COFINA Dispute, as the Commonwealth would be deprived of access to any portion of the approximately $783 million Pledged Sales Tax Base Amount, which annual amount increases over time. Significant Commonwealth creditor groups have also not objected or have since withdrawn their objection to the Settlement. Accordingly, the interests of the Commonwealth's creditors are served by the Settlement.

O. Based upon the applicable factors relating to the Court's consideration and approval of a compromise and settlement, the Settlement falls above the lowest point in the range of reasonableness, and, therefore, is fair and reasonable and its approval is in the best interest of the Commonwealth and its stakeholders.

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. The Motion is GRANTED on the terms set forth in this Order, and the Objections (together with those orally presented) not otherwise withdrawn and all other objections to the Motion are overruled in their entirety.

2. The compromise and settlement embodied in the Agreement attached hereto as Schedule 1 is APPROVED in all respects.

3. The Commonwealth is authorized take any action that is necessary or appropriate to give effect to this Order.

4. The COFINA Agent is authorized to enter into the Agreement on behalf of COFINA and take any action that is necessary or appropriate to give effect to this Order; and such actions taken by the COFINA Agent pursuant to such authority are hereby deemed a good faith exercise of her duties under the Procedures Order.

5.      On the Effective Date, the Agreement fully, finally, and forever resolves and
releases, except to the extent necessary to enforce the Agreement or the COFINA Plan, all claims
against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits
and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and
counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii)
concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as
expanded by the Mediation Scope Order); provided, however, that, except as otherwise provided
in the COFINA Plan, nothing herein or in the Agreement shall affect any rights, claims, or interests
that creditors of the Commonwealth may have with respect to the COFINA Pledged Taxes that are
(x) not allocated to COFINA consistent with the Agreement in Principle and (y) received by the
Commonwealth.  Notwithstanding the foregoing proviso in this decretal paragraph of this Order,
the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the
Commonwealth shall be barred from bringing or pursuing any and all claims against the
Commonwealth Agent Releasees (i) in the case of the creditors of the Commonwealth and the
insurers of debt of the Commonwealth, arising out of their capacities as creditors of the
Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the
COFINA structure, the COFINA Pledged Taxes, or the Pre-FY2019 BNYM Deposits, and (ii) in
the case of the Commonwealth, in any way related to the COFINA structure, the COFINA Pledged
Taxes, or the Pre-FY2019 BNYM Deposits.

6.      Notwithstanding the proviso in Paragraph 5 of this Order, the Commonwealth, all
creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred
from bringing or pursuing any and all claims against the COFINA Agent, COFINA (including its
successor in interest), its current and former officers, directors, agents, attorneys, employees,

affiliates, advisors, consultants, and members, any creditors or insurers of debt of COFINA, and

the Commonwealth Agent Releasees (i) in the case of the creditors of the Commonwealth and the

insurers of debt of the Commonwealth, arising out of their capacities as creditors of the

Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the

COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the

COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii)

in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the

COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the

COFINA Portion, or the Pre-FY2019 BNYM Deposits.

7.      The releases in Paragraphs 5 and 6 of this Order shall not release any claims that a

beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities,

may have against the insurer of such Existing Securities (or any claims that such insurer may have

against the beneficial holder of such Existing Securities) under or relating to the policy of insurance

issued by such insurer except as the COFINA Plan may otherwise provide and there shall be no

release of any claims by any party against the insurers or underwriters of the Existing Securities

or the general obligation bonds issued by the Commonwealth, including their current and former

officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.

8.      Any claims by COFINA, against any underwriter of the COFINA Bonds (such

claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its

instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the

nature of contribution, reimbursement, or indemnification, however denominated or described, in

connection with, arising out of, or in any way related to such claims (the "Covered Claims").  Any

underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted

shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.

9.      On the Effective Date, to the fullest extent permissible under applicable law, (i) the COFINA Releasees and (ii) the Commonwealth Agent Releasees, shall be released from liability for all Claims and Causes of Action (both as defined in the COFINA Plan [Case No. 17-3283, ECF No. 4392]) (as if such Causes of Action were against the COFINA Agent Releasees or the Commonwealth Agent Releasees, as applicable) with respect to the Adversary Proceeding, the COFINA Plan, and the mediation related to the foregoing.

10.     On the Effective Date, to the fullest extent permissible under applicable law, the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor (as defined in the COFINA Plan), solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and pendency thereof, the compromise and settlement of *Bank of New York Mellon v. COFINA, et al.*, Adv. Proc. No. 17-00133, and the allocation of funds in accordance with Section 2.1 of the COFINA Plan.

11.     Except as otherwise provided by the COFINA Plan, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; provided, however, that nothing in this Order or the Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Case No. 17-3283, ECF No. 3269] and other orders of the Court.

12.     To the extent necessary, pursuant to PROMESA section 305, the Oversight Board has granted consent to this Court to exercise jurisdiction over the property and revenues of the Commonwealth that are, pursuant to the Settlement of the Commonwealth-COFINA Dispute, necessary to the entry of this Order.  The transfer of the Commonwealth Portion pursuant to the COFINA Plan is appropriate and, subject to the occurrence of and upon the Effective Date of the COFINA Plan, is binding and specifically enforceable against COFINA and the Commonwealth, their respective creditors and all parties in interest in accordance with the COFINA Plan, including, without limitation, because the transfer of the Commonwealth Portion created in the Commonwealth an ownership interest in such property.

13.     Except as expressly set forth in the A&R Plan Support Agreement, certain parties thereto reserve their right, if any, to contest in the Title III Case the Commonwealth's (a) use, or direction of the use, of monies received by the Commonwealth or to be received by the Commonwealth and (b) deposit or other use, or direction of the use, of such monies.

11

14.     On the Effective Date, the releases provided in Section 5(b) of the Agreement shall be deemed to be granted in favor of the Commonwealth Agent Releasees.

15.     The terms and conditions of this Order will be immediately effective and enforceable upon its entry.

16.     The Court retains exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Order.


Dated:  _____, 2019        _____
                                                    HONORABLE LAURA TAYLOR SWAIN
                                                    UNITED STATES BANKRUPTCY JUDGE

<u>Schedule 1</u>

Settlement Agreement

EXECUTION VERSION

## SETTLEMENT AGREEMENT

SETTLEMENT AGREEMENT (the "<u>Agreement</u>"), dated October as of 19, 2018, between the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), as representative of the Commonwealth of Puerto Rico (the "<u>Commonwealth</u>"), and (ii) Bettina M. Whyte, in her capacity as the court-appointed agent (the "<u>COFINA Agent</u>") of the Oversight Board, as representative of the Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>").  The Oversight Board and the COFINA Agent are sometimes hereinafter referred to individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>".

## RECITALS

A.     On May 3, 2017, the Commonwealth commenced a proceeding in the United States District Court for the District of Puerto Rico (the "<u>Title III Court</u>") under title III of the Puerto Rico Oversight, Management and Financial Stability Act ("<u>PROMESA</u>"), which proceeding was assigned Case No. 17-BK-3283 (the "<u>Commonwealth Title III Case</u>").

B.     On May 5, 2017, COFINA commenced a proceeding in the Title III Court under title III of PROMESA, which proceeding was assigned Case No. 17-BK-3284 (the "<u>COFINA Title III Case</u>" and, collectively with the Commonwealth Title III Case and the other cases filed under title III of PROMESA by other instrumentalities of the Commonwealth as of the date of this Agreement, the "<u>Title III Cases</u>").

C.     Prior to the commencement of the Title III Cases, certain parties asserted various claims relating to COFINA, including that (i) the formation and use of COFINA was unconstitutional under the Puerto Rico Constitution, and (ii) the present and future revenues and collections generated by the five and one-half percent (5.5%) of the sales and use taxes ("<u>SUT</u>") imposed by the Commonwealth (the "<u>COFINA Pledged Taxes</u>"), purportedly pledged by COFINA to secure the various series of bonds issued pursuant to that certain Amended and Restated Sales Tax Revenue Bond Resolution, adopted on July 13, 2007, as amended on June 19, 2009, and pursuant to certain supplemental resolutions (collectively, the "<u>Bond Resolutions</u>"), and set forth on <u>Schedule 1</u> hereto (collectively, the "<u>Existing Securities</u>") and other obligations of COFINA, constituted "available resources" of the Commonwealth pursuant to Article VI, Section 8 of the Puerto Rico Constitution and must be used for the payment of "public debt" as specified therein.  Such claims were stayed pursuant to PROMESA prior to any court issuing a ruling on the merits of such claims.

D.     Subsequent to the filing of the COFINA Title III Case, the Oversight Board sought an orderly process to resolve the disputes relating to COFINA and the ownership of the COFINA Pledged Taxes.  On August 10, 2017, the Title III Court entered that certain *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [Docket No. 996][1] (the "<u>Stipulation</u>"), executed by various stakeholders of the Commonwealth and COFINA, pursuant to which, under certain circumstances, the Oversight Board delegated the authority to litigate to a determination or compromise and settle "whether, after considering all procedural and substantive defenses and counterclaims, including constitutional issues, the sales and use

---

[1]     All docket references are to the Commonwealth Title III Case unless indicated otherwise.

EXECUTION VERSION

taxes purportedly pledged by COFINA to secure debt… are property of the Commonwealth or
COFINA under applicable law" (the "Commonwealth-COFINA Dispute"), Stipulation ¶4, to the
Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the
"Commonwealth Agent," and collectively with the COFINA Agent, the "Agents") and the
COFINA Agent on behalf of the Commonwealth and COFINA, respectively.  The Stipulation
envisioned the resolution of the Commonwealth-COFINA Dispute by December 15, 2017.

E.      On September 8, 2017, the Commonwealth Agent commenced an adversary
proceeding styled The Official Committee of Unsecured Creditors of the Commonwealth of
Puerto Rico as agent of the Financial Oversight and Management Board for Puerto Rico as
representative of The Commonwealth of Puerto Rico v. Bettina Whyte, as agent of The Financial
Oversight and Management Board for Puerto Rico as representative of The Puerto Rico Sales
Tax Financing Corporation, Adv. Proc. No. 17-257-LTS (the "Adversary Proceeding"), by filing
a complaint against COFINA asserting various claims and causes of action, including seeking
declarations that Act 91 did not transfer a present ownership in future SUT revenues to COFINA
and that Act 91 is unconstitutional because the substantial result of the COFINA structure was
evasion of Puerto Rico's Constitutional debt limit, Constitutional balanced budget provision, and
Constitutional debt priority.

F.      On September 15, 2017, the COFINA Agent filed an answer and counterclaims
against the Commonwealth asserting various claims and causes of action, including seeking
declarations that Act 91 is constitutional and that the stream of COFINA Pledged Taxes and the
Dedicated Sales Tax Fund, as defined in the Bond Resolutions, are property of COFINA.
Additionally, various Permitted Intervenors, as defined in the Stipulation, asserted various claims
and causes of action (all claims and causes of action filed in the Adversary Proceeding, the
"Commonwealth-COFINA Claims").

G.      Pursuant to the Stipulation, mediation of the Commonwealth-COFINA Dispute,
led by Mediation Team Leader Hon. Barbara J. Houser, began in September 2017 and included
the participation of the Agents and the Permitted Intervenors.

H.      On September 20, 2017, Hurricane Maria made landfall on Puerto Rico
devastating the island and suspending certain proceedings related to the Commonwealth-
COFINA Dispute.  As a result, the Agents modified their litigation schedule with the consent and
approval of the Title III Court, with dispositive motions due to be filed by January 31, 2018, and
a trial, if necessary, to be held in early March 2018.

I.      On November 3, 2017, the Title III Court entered an order [Docket No. 1612] that
granted the protections of 48 U.S.C. § 2125 (the "Immunity Protections") to the Agents and their
respective professionals and employees with respect to all actions taken in good faith to carry out
their duties under the Stipulation.

J.      On December 21, 2017, the Title III Court entered an order [Adv. Proc. No. 167][2]
(the "Initial Scope Order") clarifying the scope of the Agents' authority and dismissing, without
prejudice, certain of the Commonwealth-COFINA Claims.

---

[2]      All references to "Adv. Proc. No." are docket references to the Adversary Proceeding.

EXECUTION VERSION

K.     On January 24, 2018, the Title III Court entered an order [Adv. Pro. No. 257] (the "Amended Scope Order") granting the Commonwealth Agent's motion to reconsider the Initial Scope Order and allowed the Commonwealth Agent to amend certain claims and causes of action that had been dismissed, without prejudice, pursuant to the Initial Scope Order (all claims and causes of action in the Adversary Proceeding that were dismissed, without prejudice, following the entry of the Amended Scope Order, the "Dismissed Commonwealth-COFINA Claims," and all claims and causes of action in the Adversary Proceeding that were not dismissed, without prejudice, following the entry of the Amended Scope Order, the "Surviving Commonwealth-COFINA Claims").

L.     On February 10, 2018, the Title III Court entered an order [Adv. Pro. No. 284] (the "Mediation Scope Order") (i) authorizing the Agents to mediate and attempt to compromise and settle the Commonwealth-COFINA Claims (except for any claim or cause of action that is owned by a creditor and not owned by the Commonwealth or COFINA, as applicable) pursuant to the terms and conditions of the Stipulation relating to the settlement of the Commonwealth-COFINA Dispute, and (ii) granting the Immunity Protections to the Agents, their professionals and employees with respect to any actions taken in good faith pursuant to the authority granted.

M.     On or around February 21, 2018, the Agents and certain Permitted Intervenors each filed competing motions for summary judgment on the Surviving Commonwealth-COFINA Claims (the "Motions for Summary Judgment").

N.     On February 26, 2018, the COFINA Agent, joined by certain COFINA stakeholders, filed a motion to certify the Surviving Commonwealth-COFINA Claims to the Puerto Rico Supreme Court (collectively, the "Certification Motions"), which were opposed by, among others, the Commonwealth Agent and the Oversight Board citing, among other things, the mixed questions of federal and Puerto Rico law and the need for an expeditious conclusion of the Commonwealth-COFINA Dispute.

O.     On April 10, 2018, the Title III Court heard argument with respect to the Motions for Summary Judgment.

P.     On May 14, 2018, certain of the Permitted Intervenors, consisting of significant holders and insurers of general obligations of the Commonwealth and significant holders and insurers of senior bonds of COFINA announced they had reached a tentative settlement of the Commonwealth-COFINA Dispute (the "GO-COFINA Senior Agreement"), which agreement had been presented to, but was not supported by, the Agents, the Oversight Board, or AAFAF, as defined below.

Q.     On May 14, 2018, the Oversight Board announced that it would not proceed with the GO-COFINA Senior Agreement, but that, consistent with its authority and the terms and provisions of paragraph 4(n) of the Stipulation, the Oversight Board would seek to negotiate with creditors on terms that were affordable, sustainable, and consistent with certified fiscal plans for the island and its instrumentalities.

R.     On May 24, 2018, the Title III Court entered an order [Adv. Pro. No. 483] denying the Certification Motions.

3

EXECUTION VERSION

S.      On June 5, 2018, the Agents filed a joint informative motion with the Title III Court [Adv. Pro. No. 484] (the "Joint Urgent Motion") (i) disclosing that, on June 5, 2018, the Agents had reached an agreement in principle (the "Agreement in Principle") to resolve the Commonwealth-COFINA Dispute and all other claims and causes of action that may be settled by the Agents pursuant to the Stipulation and the Mediation Scope Order, including, without limitation, by allocating one hundred percent (100%) of the cash held in trust by Bank of New York Mellon ("BNYM"), as trustee for the Existing Securities, to COFINA and the COFINA Pledged Taxes to COFINA and the Commonwealth in the amounts of fifty-three and sixty-five one hundredths percent (53.65%) and forty-six and thirty-five one hundredths percent (46.35%), respectively, of the existing pledged sales tax base amount with COFINA retaining its "first dollars" priority rights thereto and (ii) requesting that the Title III Court hold its ruling on the Motions for Summary Judgment in abeyance for sixty (60) days until August 4, 2018 (as such period may be extended or renewed, the "Abeyance Period"), to allow the Agents to document a formal settlement agreement and ensure that certain specified conditions to effectiveness of the Agreement in Principle would be satisfied.  The Agreement in Principle was thereafter filed on the docket on June 7, 2018 [Adv. Pro. No. 486-1].

T.      The Agreement in Principle also provides that, unless otherwise extended in writing by the Agents, the understanding reached therein ("except for the section "Post-July 1, 2018 Collection of SUT") shall terminate automatically unless the Agents are able to agree on the terms of definitive documentation within sixty (60) days of execution of the Agreement in Principle.  In connection with the serial extensions of the Abeyance Period, the Agents informally agreed not to terminate the Agreement in Principle.

U.      On June 12, 2018, the Title III Court entered an order [Adv. Pro No. 492] granting the Joint Urgent Motion and holding a ruling on the Motions for Summary Judgment in abeyance until August 4, 2018.  Pursuant to subsequent consensual motions by the Agents, the Title III Court has entered orders [Adv. Pro. Nos. 539, 543] extending the Abeyance Period up to and including October 3, 2018.

V.      Pursuant to orders of the Title III Court, dated June 9, 2018 [Adv. Pro. No. 525] and July 24, 2018 [Adv. Pro. No. 534], and consistent with the Agreement in Principle, Bank of New York Mellon ("BNYM"), as trustee for the holders of Existing Securities, has placed into escrow funds received on deposit (i) prior to July 1, 2018 in the debt service, reserve and such other accounts and any earnings thereon (the "Pre-FY2019 BNYM Deposits") and (ii) on or after July 1, 2018 to the debt service, reserve and such other accounts (the "FY2019 BNYM Deposits").

W.      On July 25, 2018, the Commonwealth Agent informed the Title III Court and parties in interest that it continued to support the settlement reached with the COFINA Agent, but the Commonwealth Agent had concerns about the feasibility of moving forward to further document the Agreement in Principle in light of the Oversight Board's then most recent fiscal plan, certified on Jun 29, 2018.

X.      On August 8, 2018, and following two weeks of mediation led by the Mediation Team, the Oversight Board announced that it had reached an agreement, predicated upon the allocation of ownership of the Pre-FY2019 BNYM Deposits and COFINA Pledged Taxes developed by the Agents and set forth in the Agreement in Principle, with holders and insurers of

4

EXECUTION VERSION

senior and junior bonds of COFINA, with respect to the terms of new securities to be issued
pursuant to a consensual plan of adjustment for COFINA.

Y.      On August 13, 2018, the Commonwealth Agent filed an Informative Motion with
respect to the Oversight Board's announcement on August 8, 2018 [Adv. Pro. No. 540], wherein
the Commonwealth Agent expressed continuing concerns about the feasibility of the agreement
in Principle in light of the then most recent certified fiscal plan.

Z.      By order, dated September 27, 2018 [Adv. Pro. No. 544], the Title III Court
terminated the Motions for Summary Judgment, without prejudice to restoration of such motions
on or after October 3, 2018, in light of the Agreement in Principle and ongoing discussions
regarding a plan of adjustment for COFINA(the "SJ Termination Order").

AA.      As of September 30, 2018, there is approximately $1,203,272,884.15 and
$366,835,440.45 of COFINA Pledged Taxes in Pre-FY2019 BNYM Deposits and FY2019
BNYM Deposits, respectively.

BB.      Paragraph 4(j) of the Stipulation provides that the Oversight Board may seek
approval of a proposed settlement negotiated by the Agent that allocates the Pledged Sales Taxes
between COFINA and the Commonwealth, but that does not provide for how the
Commonwealth would distribute such assets to creditors, by filing a motion in the
Commonwealth Title III Case provided that such motion would be heard on at least forty-five
(45) days notice and contemporaneously with a Title III plan of adjustment for COFINA.

CC.      Paragraph 4(n) of the Stipulation provides in pertinent part that the Oversight
Board shall remain the only party authorized by PROMESA to propose a title III plan of
adjustment and, to carry out that power and duty, the Oversight Board may, at any time, propose
title III plans of adjustment for the Commonwealth and COFINA that incorporate a settlement of
the Commonwealth-COFINA Dispute, developed by the Agents, or developed by the Oversight
Board, and the Oversight Board may negotiate and mediate with creditors to achieve such
settlement of the Commonwealth-COFINA Dispute.

DD.      On August 29, 2018, the Oversight Board, the Commonwealth, COFINA, the
Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") and various parties to the
Commonwealth-COFINA Dispute executed that certain Plan Support Agreement, which
agreement was amended and restated by that certain Amended and Restated Plan Support
Agreement (the "Amended PSA"), dated as of September 20, 2018.  Attached to the Amended
PSA as Exhibit "C" is a term sheet the "Term Sheet"), and hereto as Exhibit "A", which term
sheet incorporates the allocation of the COFINA Pledged Taxes developed by the Agents in the
Agreement in Principle as a foundation and sets forth, among other things, the terms of the
securities to be issued pursuant to a plan of adjustment for COFINA (the "COFINA Plan").[3]

NOW, THEREFORE, after good faith, arm's-length negotiations between the Parties,
and after consideration by the Parties of, among other things, the GO-COFINA Senior
Agreement and the Agreement in Principle, together with the merits and likelihood of success of

---

[3]      Capitalized terms used but not otherwise defined herein have the meanings given to them in the Amended
PSA and the Term Sheet.

EXECUTION VERSION

the various Commonwealth-COFINA Claims and the risk of further litigation, and in consideration of the foregoing recitals and of the mutual agreements, covenants and releases set forth herein, and after considering what result is best for the Commonwealth and COFINA, as opposed to what result is best for any particular type of creditor of the Commonwealth or COFINA, and after considering the standard for settlement set forth in <u>Protective Committee of Independent Shareholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414 (1968), and for other good and valuable consideration, the sufficiency and adequacy of which is acknowledged by the Parties, and by the authority granted to the Parties pursuant to the Stipulation, and in the exercise of their respective judgment in accordance with the terms of the Stipulation, the Parties hereto agree to settle the Commonwealth-COFINA Dispute and all other claims and causes of action that may be settled by the Parties pursuant to the Stipulation and/or the Mediation Scope Order as follows:

## **AGREEMENT**

1.    **Recitals.**  The Recitals above are an integral part of this Agreement and are incorporated herein by reference.

2.    **Settlement Motion.**  On or prior to October 19, 2018, the Oversight Board on behalf of the Commonwealth, shall file the Settlement Motion in the Commonwealth Title III Case in accordance with Bankruptcy Rule 9019 seeking the approval of the compromise and settlement of the Commonwealth-COFINA Dispute set forth in the Agreement in Principle to the extent incorporated in Section 3 hereof and in the Term Sheet.  The Parties shall use commercially reasonable efforts to promptly take any action, and negotiate in good faith definitive documentation, in each case, that is required to effectuate the compromise and settlement set forth in this Agreement, including to (a) support this Agreement and (as applicable) make the filings with the Title III Court contemplated by this Agreement, including the COFINA Plan and the Settlement Motion, and (b) not take any action that would interfere with, delay, or postpone the Title III Court's consideration or approval of (x) this Agreement or (y) the filings with the Title III Court contemplated by this Agreement, including, without limitation, the COFINA Plan, the Settlement Motion, and the entry of orders of the Title III Court approving this Agreement and confirming the COFINA Plan (collectively, the "<u>Approval Orders</u>")  Consideration and confirmation of the COFINA Plan in the COFINA Title III Case shall be contemporaneous with consideration and approval of the Settlement Motion in the Commonwealth Title III Case; <u>provided</u>, <u>however</u>, that, in all circumstances, the effective date of the order granting the Settlement Motion shall be contemporaneous with, and its contemporaneous occurrence shall be a condition to, the effective date of the COFINA Plan (the "<u>Effective Date</u>").

3.    **Settlement Terms.**

(a)    The Commonwealth-COFINA Dispute shall be compromised and settled pursuant to the Settlement Motion and the COFINA Plan, with (i) COFINA being granted ownership of the COFINA Portion, and (ii) the Commonwealth being granted ownership of the Commonwealth Portion; <u>provided</u>, <u>however</u>, that, except as expressly set forth in the Term Sheet (a) one hundred percent (100%) of the Pre-FY2019 BNYM Deposits are held by BNYM, as the COFINA bond trustee, for the benefit of the bondholders in accordance with the Adversary Proceeding and such other orders entered in connection therewith; <u>provided</u>, <u>however</u>, that, (i) of

6

EXECUTION VERSION

Seventy-Eight Million Three Hundred Fifty-Five Thousand Eight Hundred and Thirty-Seven Dollars and Sixty-Three Cents ($78,355,837.63) of the Pre-FY2019 BNYM Deposits, (x) Thirty-Three Million Three Hundred Fifty-Five Thousand Eight Hundred Thirty-Seven Dollars and Sixty-Three Cents ($33,355,837.63) shall be distributed to the Commonwealth, (y) Five Million Dollars ($5,000,000.00) shall be allocated to fund an operating expense fund for COFINA, and (z) Forty Million Dollars ($40,000,000.00) shall be allocated to the Taxable Election Cash distributable under the COFINA Plan and if the Taxable Election Cash distributable under the COFINA Plan is less than Sixty Million Dollars ($60,000,000.00), the Tax Election Remainder Amount shall be distributed (I) *first*, to further fund the operating expense fund for COFINA up to an additional Ten Million Dollars ($10,000,000.00), and (II) *second*, to the extent of any further remainder, to be distributed evenly to COFINA, on the one hand, to increase the COFINA Cash Available for Distribution and increase recoveries to all COFINA bondholders, and the Commonwealth, on the other hand, (b) one hundred percent (100%) of the FY2019 BNYM Deposits, on a first dollars basis up to the amount of fifty-three and sixty-five one hundredths percent (53.65%) of the PSTBA, plus any earnings thereon (the "COFINA FY2019 BNYM Deposits") held by BNYM in accordance with the Adversary Proceeding and such other orders entered in connection therewith, will, on the Effective Date, be the exclusive property of COFINA and will be distributed to COFINA for purposes of distribution in accordance with the COFINA Plan of Adjustment and (c) any FY2019 BNYM Deposits net of the COFINA FY2019 BNYM Deposits, shall be distributed in its entirety to the Commonwealth.

(b)     Unless (i) approval of the Settlement Motion is denied by the Title III Court or (ii) the Effective Date does not occur, the effective date of the compromise and settlement (the "Compromise Date") shall be retroactive to July 1, 2018 and, in addition to receipt of the Pre-FY2019 BNYM Deposits, net of amounts allocated pursuant to the provisions of the Term Sheet, and the COFINA FY2019 BNYM Deposits on the Effective Date, COFINA will own, and will be entitled to receive, the COFINA Portion commencing as of FY2019.  Until the Effective Date, all revenues attributable to the PSTBA, including, without limitation, the COFINA Portion and the Commonwealth Portion, shall be maintained in accordance with orders of the Title III Court entered in the COFINA Title III Case, the Commonwealth Title III Case, the Adversary Proceeding and the Interpleader Action.

(c)     On the Effective Date, pursuant to the Settlement Order and the Confirmation Order, which orders shall amend and supersede such orders of the Title III Court entered in the COFINA Title III Case, the Commonwealth Title III Case, the Adversary Proceeding and the Interpleader Action to the extent that such orders are inconsistent therewith, (1) BNYM shall make distributions as set forth in the Term Sheet, (2) the Adversary Proceeding shall be dismissed, with prejudice, and all other claims and causes of action asserted therein by the Commonwealth Agent, the COFINA Agent and the Permitted Intervenors, as defined in the Adversary Proceeding, shall be deemed dismissed, with prejudice, and the Commonwealth Agent and the COFINA Agent and their respective professionals shall be deemed to have satisfied any and all of their respective obligations in connection with the Adversary Proceeding and the COFINA Agent shall be deemed to have been released from any and all liabilities associated therewith, (3) the Interpleader Action will be dismissed, with prejudice, and all other claims and causes of action asserted therein shall be dismissed, with prejudice, and the funds deposited in connection therewith shall be distributed in accordance with the terms and provisions of this Term Sheet.

102824080v4

EXECUTION VERSION

    **4.**   **Conditions Precedent.**  This Agreement shall become effective upon the following conditions precedent having been satisfied or waived by the Parties:

    (i)    The Approval Orders have each been entered, are unstayed, and as to which orders (A) the deadline to file a notice of appeal or petition for certiorari has lapsed (including any extension provided by Bankruptcy Rule 8002(b)(1)) and no appeal or petition is pending or, (B) if the subject of a timely appeal or petition, no stay, suspension, or injunction precluding effectiveness has been granted and is continuing;

    (ii)    The Commonwealth will have provided protection of COFINA's property through legislation and covenants to be included for the benefit of COFINA and its creditors in the COFINA Plan and the Definitive Documentation.  Without in any way limiting the foregoing, but subject to the occurrence of the Effective Date, the Commonwealth will own and will be entitled to receive the Commonwealth Portion; and

    (iii)    Entry of the Approval Order approving this Agreement in the Commonwealth Title III Case shall be a condition to confirmation of the COFINA Plan and entry of the Approval Order confirming the COFINA Plan in the COFINA Title III Case shall be a condition to entry of the Approval Order in the Commonwealth Title III Case.

    **5.**   **Releases.**

    (a)    On the Effective Date, this Agreement fully, finally, and forever resolves and releases, except to the extent necessary to enforce this Agreement or the COFINA Plan, all claims against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii) concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as expanded by the Mediation Scope Order); provided, however, that nothing herein shall affect any rights, claims, or interests that creditors of the Commonwealth may have with respect to the COFINA Pledged Taxes that are (x) not allocated to COFINA consistent with the Agreement in Principle and (y) received by the Commonwealth.

    (b)    Notwithstanding the proviso in Section 5(a) hereof, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the COFINA Agent, COFINA, and its current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members, and any creditors or insurers of debt of COFINA, (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits.

102824080v4

EXECUTION VERSION

(c)     For the avoidance of doubt, (a) the foregoing releases shall not release any claims that a beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities, may have against the insurer of such Existing Securities (or any claims that such insurer may have against the beneficial holder of such Existing Securities) under or relating to the policy of insurance issued by such insurer except as the COFINA Plan may otherwise provide and (b) there shall be no release of any claims by any party against the insurers or underwriters of the Existing Securities or the general obligation bonds issued by the Commonwealth, including their current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.

(d)     Any claims by COFINA, against any underwriter of the COFINA Bonds (such claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the nature of contribution, reimbursement, or indemnification, however denominated or described, in connection with, arising out of, or in any way related to such claims (the "Covered Claims"). Any underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.

(e)     The Title III Court's approval of this Agreement, including the order confirming the COFINA Plan, shall specifically grant releases and injunctions consistent with this Section 5.

**6.     COFINA Agent Support.**  The COFINA Agent shall support confirmation of the COFINA Plan properly embodying this Agreement.  In the event that the Title III Court reinstates one or both of the Motions for Summary Judgment as contemplated by the SJ Termination Order, the Parties shall jointly seek to extend the Abeyance Period until the earlier to occur of (a) the Effective Date and (b) the termination of this Agreement pursuant to the terms hereof.

**7.     Fees and Expenses**.  Except as otherwise authorized or permitted by the Term Sheet, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; provided, however, that nothing in this Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3269] and other orders of the Title III Court.

102824080v4

EXECUTION VERSION

     **8.**    **Termination**.

    (a)    This Agreement shall terminate automatically if the effective date of the COFINA Plan incorporating this Agreement does not occur or the Settlement Motion is not approved, in each case, by March 1, 2019; provided, however, that, upon notice provided by the Oversight Board, such date shall be extended up to and including June 1, 2019.

    (b)    The COFINA Agent may terminate this Agreement by providing written notice to the Oversight Board upon the occurrence of any of the following events, with termination being effective immediately upon receipt of such notice:

        (i)    The Title III Court enters an order that no confirmable COFINA Plan can be proposed that is consistent with this Agreement.

        (ii)    The Title III Court enters an order on the merits of the Motions for Summary Judgment (except for an order resolving the Motions for Summary Judgment on the basis that this Agreement has been approved and the Effective Date has occurred).

        (iii)    The COFINA Title III Case is dismissed prior to confirmation of the COFINA Plan.

        (iv)    The COFINA Plan is modified to be materially inconsistent with the Term Sheet in the COFINA Agent's reasonable discretion.

    (c)    In the event that this Agreement is terminated by the COFINA Agent, then (i) except as set forth in the order entered by the Title III Court [Adv. Pro. No. 534] governing the COFINA Pledged Taxes collected as of June 30, 2018 (the "SUT Procedures Order"), which order shall survive any termination of this Agreement, this Agreement shall be null and void *ab initio* and of no force or effect and (ii) each of the Parties shall be returned to the Parties' position *status quo ante* (except as set forth in the SUT Procedures Order), and the Parties reserve all of their respective rights, claims, and defenses with respect to all of the matters set forth herein, and nothing herein shall be deemed an admission of any kind.

    **9.**    **Rules of Construction.**  The headings of the sections of this Agreement are intended only as a guide and are not intended, and should not be construed, as controlling, enlarging, restricting, explaining or modifying, in any manner, the language or meaning of those sections or subsections.  Each of the exhibits, annexes, signature pages, and schedules annexed hereto is expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes, and schedules.  When a reference is made in this Agreement to a Section, Exhibit, or Schedule, such reference shall be to a Section, Exhibit, or Schedule, respectively, of or attached to this Agreement unless otherwise indicated.  Unless the context of this Agreement otherwise requires, (a) words using the singular or plural number also include the plural or singular number, respectively, (b) the terms "hereof," "herein," "hereby," and derivative or similar words refer to this entire Agreement, (c) the words "include,"

EXECUTION VERSION

"includes," and "including" when used herein shall be deemed in each case to be followed by the words "without limitation," and (d) the word "or" shall not be exclusive and shall be read to mean "and/or." The Parties agree that they have been represented by legal counsel during the negotiation and execution of this Agreement and, therefore, waive the application of any law, regulation, holding, or rule of construction providing that ambiguities in an agreement or other document shall be construed against the Party drafting such agreement or document.

10.   **No Admission.**   Each Party expressly recognizes that neither this Agreement, nor any other action taken to comply with this Agreement represents an admission of liability or responsibility on the part of either Party. Neither this Agreement nor any action taken to comply with its provisions shall be construed as, or used as, an admission of any fault, wrongdoing, or liability whatsoever in this or any other matter.

11.   **Entire Agreement.**   The Parties acknowledge that no promise, inducement, or agreement not stated herein has been made to them in connection with this Agreement, and that this Agreement constitutes the entire agreement between them.

12.   **No Oral Modifications.**   This Agreement may be amended, modified or otherwise changed only in a writing signed by both Parties.

13.   **Severability.**   If any provision of this Agreement, or application of such provision to any person or circumstance, shall be held invalid by a court of competent jurisdiction, then such provision shall be automatically reformed to embody the essence of that provision to the maximum extent permitted by law, and this Agreement shall be construed, performed, and enforced as if the reformed provision had been included in this Agreement at inception, and the invalidity of any provision of this Agreement shall not affect the remainder of this Agreement.

14.   **Choice of Law; Jurisdiction.**   This Agreement shall be governed by, and construed under and in accordance with, the laws of the State of New York, determined without reference to principles of conflicts of law (other than Section 5-1401 of the New York General Obligations Law). The Parties agree that the Title III Court shall have exclusive jurisdiction over any disputes relating to this Agreement until both the Commonwealth Title III Case and the COFINA Title III Case have been closed. The Parties irrevocably waive any objection on the grounds of venue, *forum non conveniens* or any similar grounds.

15.   **Counterparts.**   This Agreement may be executed in any number of counterparts by the Parties on different counterpart signature pages, all of which when taken together shall constitute one and the same agreement. Each of the Parties may execute this Agreement by signing any such counterpart, and each such counterpart, including a facsimile or other electronic copy of a signature, shall for all purposes be deemed to be an original. This Agreement shall not be binding until signed by both Parties.

16.   **Inconsistencies.**   To the extent that any of the terms and provisions set forth herein are inconsistent with the terms and provisions of the Term Sheet, the terms and provisions of the Term Sheet shall govern in all respects.

102824080v4

EXECUTION VERSION

      **IN WITNESS WHEREOF**, this Agreement is executed as of the date first written above.

 

**BETTINA M. WHYTE**
**IN HER CAPACITY AS COFINA AGENT**

By: _____

Name: ___Bettina M Whyte___

Title: ___COFINA Agent___

 

**THE FINANCIAL OVERSIGHT**
**AND MANAGEMENT BOARD FOR PUERTO**
**RICO**

By: _____

Name: _____

Title: _____

12

EXECUTION VERSION

**IN WITNESS WHEREOF**, this Agreement is executed as of the date first written above.

**BETTINA M. WHYTE**
**IN HER CAPACITY AS COFINA AGENT**

By: _____
Name: _____
Title: _____

**THE FINANCIAL OVERSIGHT**
**AND MANAGEMENT BOARD FOR PUERTO**
**RICO**

By: _____*Natalie A. Jaresko*_____
Name: _____Natalie A. Jaresko_____
Title: _____October 19, 2018_____

12

EXECUTION VERSION

**Schedule 1**

**COFINA Bond Issuances**

| COFINA Bond Series | Date of Issuance | Principal Amount of Issuance |
|---|---|---|
| Series 2007A | July 13, 2007 | $2,667,603,572.60 |
| Series 2007B | July 17, 2007 | $1,333,101,779.90 |
| Series 2007C | December 18, 2007 | $499,996,627.90 |
| Series 2008A | June 25, 2008 | $737,046,992.35 |
| Series 2009A | June 10, 2009 | $4,118,153,700.00 |
| Senior Series 2009C | June 10, 2009 | $237,875,000.00 |
| First Subordinate Series 2009B | June 19, 2009 | $1,217,915,799.20 |
| First Subordinate Series 2010A | January 28, 2010 | $1,823,757,271.30 |
| First Subordinate Series 2010C | June 24, 2010 | $1,619,404,596.60 |
| First Subordinate Series 2010D | June 24, 2010 | $89,435,000.00 |
| First Subordinate Series 2010E | June 24, 2010 | $92,755,000.00 |
| First Subordinate Series 2011A-1 | November 16, 2011 | $397,758,386.20 |
| First Subordinate Series 2011A-2 | November 16, 2011 | $337,037,187.75 |
| First Subordinate Series 2011B | November 16, 2011 | $45,620,000.00 |
| Senior Series 2011C | December 1, 2011 | $1,006,474,702.00 |
| Senior Series 2011D | December 1, 2011 | $91,155,000.00 |

102824080v4