# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**APPLICABLE HEARING DATE:** January 30th, 2019

| |
|---|

In re:

**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,** as representative of the

**COMMONWEALTH OF PUERTO RICO,**

    Debtor.

_____

**ASOCIACIÓN PUERTORRIQUEÑA DE LA JUDICATURA, INC.,**

    Movant,

v.

**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**

as representative of the

**COMMONWEALTH OF PUERTO RICO,**

    Respondent.

**BANKRUPTCY NO. 17-3283**
(CIVIL NO. 17-1578)

RE:
Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),
Tittle III Petition for Adjustment of Debts

## REPLY TO OPPOSITION OF MOTION FOR RELIEF FROM STAY

**TO THE HONORABLE COURT**:

    **APPEARS NOW** the Asociación Puertorriqueña de la Judicatura, Inc. ("APJ"), through the undersigned counsel, and hereby states, alleges, and requests as follows:

    "Judicial independence" is not a platitude.

    And, yes, judges are "unique." Perhaps more accurately, the burden of judges to maintain their judicial independence is unique to the members of the judiciary.

1

## I.    OVERVIEW

The Oversight Board ("the Board" or the "OB") has filed an opposition to the APJ's motion

to lift the stay that simply fails to recognize the basic premise of APJ's position and the reality of

the third, co-equal and independent branch of government.  The language and the tone of the

Board's opposition invites the reader to view the judiciary, and hence its judges, as just another

run of the mill "creditor" in a process where the Board has seemingly unfettered discretion to

ignore Constitutional (both Federal and Puerto Rico) mandates and the history of Congress' role

in establishing Puerto Rico's limited self-government. The Board sees no problem in flexing its

self-perceived power to impinge directly on the fundamental concept that underlies the

separation of powers with respect to the judiciary: judicial independence.

The APJ is not engaging in "platitudes," as suggested by the OB on page 11 of its

Opposition, when it seeks to have the District Court resolve this issue by way of declaratory

judgment; based purely on the legal issues presented.  When the work of the Board and of this

Honorable Court is finished under the mandates of PROMESA, a fully functioning and truly

independent judiciary will be essential to the success of the economic structure left behind. This

is neither a platitude nor an overstatement of the importance of maintaining a judiciary that is an

effective, independent, co-equal branch of government under no threat from the executive branch

of government.  We are at a time in history in this country when that threat has never been so

real.

The essence of the Oversight Board's erroneous, and even paternalistic, view of this issue is

set forth in their motion on page 5 when it states:

> The Oversight Board emphasizes it is aware of and sensitive to the
> Commonwealth's judges' structural concerns about the need to preserve their
> independence, and their individual concerns in protecting their pensions.  The
> pension issues, however, *are not unique to the judges*, and the Oversight Board

2

desires to treat fairly all public employees.  No final decisions have been reached on how the judicial pensions will be treated in a proposed plan of adjustment. (Emphasis added.)

Here, the Board's conflation of the judges and all other public employees is explicit and this is the Board's theme: nothing special about the judiciary-it is not a "unique" branch of the government. This is the essence of the Board's lack of appreciation of the law and the history of judicial independence.

The Board indicates that the APJ is "premature" because *the Board* has not reached a final decision regarding changes to judicial pensions.  It does not have that power.  That is what this case is about.

It matters little that the Board is "sensitive to the Commonwealth's judges' structural concerns about the need to preserve their independence…."  The judiciary seeks neither the Board's sympathy nor a handout.  Rather, the APJ's battle is to preserve this vital independence in the face of actions by a creation of Congress that pretends to wield power that would attack this independence by manipulating the judiciary's emoluments.

There should be no misunderstanding about the nature and importance of judicial independence. This is not some great benefit bestowed upon members of the judiciary and the judicial branch.  It is a burden judges must bear and that the judiciary must maintain.  The oath of judges to independently and fairly judge those appearing before them comes at a great cost to these public servants. It is an obligation unlike any other branch of government.  It limits judge's interaction on many levels including their interaction with others (right to association), speech and other rights the rest of society takes for granted. Neither the executive nor the legislative branch can be empowered to exert power over the judiciary's emoluments once a judge is sworn-in to uphold her duty.   That is what is at the core of this case.

3

## II.    THE POWERS AT WORK

Perhaps a simplistic way to analyze the powers at work in this case is as follows.  Imagine three circles.  The first circle is the scope of the U.S. Congress under the Territorial Clause to legislate for Puerto Rico.  Those broad powers have often been described as plenary; limited only by other parts of the U.S. Constitution.  PROMESA was passed pursuant to that power but no one seriously argues that Congress intended PROMESA to cover all aspects of governance in Puerto Rico.  That is the second circle; a circle of legal mandates, authorized by Congress, to govern certain specific aspects of Puerto Rico's fiscal house.  This second circle is a discernably smaller circle fitting inside the first circle of Congress' plenary power under the Territorial Clause.

The third circle of power is a yet smaller circle contained within the second circle of power describing the scope of PROMESA.   The limits of the circle, whatever they are, define the scope of the powers of the Oversight Board.

The Title III case before the Court has already tested the limits of this power.  Certainly, those powers have limits and are primarily confined to matters of a fiscal nature.  The Board does not have the power to legislate.  It cannot impose the death penalty in Puerto Rico.  The list is endless.

Nor can the Board upset the fundamental structure of Puerto Rico's three branches of government as established by the U.S. Congress in permitting Puerto Rico to draft its own constitution, subject to Congressional approval and consistent with a republican form of government.  Herein lies the Board's fundamental misunderstanding of the limits of its own powers.  As sympathetic or paternalistic as the Board may be regarding judicial pensions, it has no role in changing them.  That is beyond its circle of power.

4

The Board also argues that the APJ's motion for relief from stay should be denied before getting to the *Sonnax* factors for its failure to follow the requirements of Bankruptcy Code sections 1125 and 1128 and Bankruptcy Rule 2002(b).  These statutory provisions basically require a disclosure statement from anyone soliciting the acceptance or rejection of a plan, along with an appropriate notice and confirmation hearing. This is simply not this case. The APJ has made no solicitation whatsoever to reject the Board's plan at this stage of the litigation. Rather, the APJ is requesting a relief from stay in order to continue its Declaratory Judgment action currently pending in the District Court because any plan that affects judicial pensions is not within the Oversight Board's power to recommend. For this reason, no disclosure statement is required at this stage.

One final point before we address the *Sonnax* factors: the Board fails to mention that it refused to mediate with the APJ after APJ requested that it do so.  There is no justification for the Board having veto power in a mediation process.  While we fully understand that the Court would prefer to have this case resolved by mediation (and the APJ has tried), this cannot be a one-way street where the Board can unilaterally derail the process by refusing to step up.

III.    THE SONNAX FACTORS

The APJ is cognizant of the Court's practice to utilize the *Sonnax* factors in determining whether there is "cause" to lift a stay due to the lack of definition of the term "cause."  While we will proceed to address each and every factor insofar as the Board did in its opposition, we submit that cause already exits for the reasons stated above and those more fully explained in our motion to lift stay.  The Board is powerless to do what it proposes to do: use its own judgment to determine whether it can infringe upon judicial pensions and force the APJ to come in later and

5

do its best to argue this same position in a hearing concerning the eventual plan of adjustment. Without waiving this position, we proceed.

*Sonnax* Factor 1:

(A)     The APJ does not seek "to litigate confirmation issues in a separate forum –in essence to challenge the potential treatment of prepetition, unsecured pension claims in a hypothetical plan of adjustment not yet proposed." (Opposition at page 11.)  This is not a confirmation issue.  Nor are judges' pensions merely unsecured claims.   To put judicial pensions in the category of other pension claims entirely misses the point.  The Board lacks the power to subject these judicial emoluments to "adjustment," thus kicking the can down the road and have the judiciary's members have to argue the Board's powerlessness when this matter should be resolved now.

(B)     There are no other "parties in interest" to the issue of judicial compensation.  That is the essence of judicial independence.  Other parties, regardless of their claim, cannot weigh in against Congress' mandate of a republican form of government for Puerto Rico; with an independent judiciary as one of three co-equal branches of government.

(C)     Since judicial pensions cannot be changed by the Board, there should be nothing to consider at a plan of adjustment hearing.

(D)     There is no hardship for the Board to see a Federal Case in the same building as where this one is filed.   This is a purely legal issue that can be decided by the Federal Court on the briefs.

6

*Sonnax* Factor 2:

(A)     Much of the Board's argument in 25 is a rehashing of that in *Sonnax* Factor 1, to which the APJ would respond in the same way.

(B)     Paragraph 26, however, is simply false in that the APJ does not seek "to challenge the authority of the Oversight Board to certify fiscal plans for the Commonwealth." Opposition at page 13. The APJ challenges the Oversight Board's power to include changes to judicial pensions in that plan.

(C)     There is no legitimate "opening the floodgates" argument to be made. The judiciary is uniquely burdened and protected by judicial independence. There can be no rush to the courthouse of other claimants based on judicial independence.

(D)     The wrongful termination case cited by the Board in paragraph 28 is inapposite to the position of the judiciary. Without going into the sheer number of attorneys working for the Board in this case, suffice it to say that a purely legal issue being litigated will not cause undue burden to the Board's resources; which can hardly be characterized as "limited."

*Sonnax* Factor 4:

(A)     There is no need for a specialized tribunal to hear this federal and state constitutional claim of separation of powers and judicial independence.

*Sonnax* Factor 5:

(A)     This factor is irrelevant.

7

*Sonnax* Factor 6:

(A)     It is true that the Board is the sole defendant.  It is the Board that is trying to force the government to impinge upon judicial emoluments.  In attempting to resolve this matter in mediation, it is the Board with whom the APJ was directed to mediate.  The limits of the power of the Board with respect to judicial emoluments is the issue and, thus, the Board must stand the test of judicial scrutiny.

*Sonnax* Factor 7:

(A)     The judicial pensions at issue here represent a de minimus amount of funds with respect to the governments' budget.  There are fewer than 800 of judges, active or retired (including widows/widowers or dependents), that would be covered by the APJ's case.

(B)     There would be no rush of other claimants to make similar claims because none can assert the concepts of judicial independence fully discussed already.

*Sonnax* Factors 10 and 11:

(A)     As discussed above, no floodgates will open.

(B)     As discussed above, this is a purely legal issue to be determined by the Federal Court on briefing.

*Sonnax* Factor 12:

(A)     The Board's "derailment" argument is both unfounded and over-reactive. There is precious little economic impact on the government and tremendous benefit in preserving an independent judiciary that Puerto

8

Rico must have in order to marshal the respect and confidence of all

citizens in the yet-to-be-created world left after the restructuring is

complete.  This new economy will be stillborn absent an independent, co-

equal judicial branch of government.

## IV. CONCLUSION

We will conclude with the way we started, with Hamilton. As Alexander Hamilton so

aptly put it: the Judiciary is the branch least able to defend itself and advocate for its rights and

proper place in the constitutional structure. Specifically, he wrote about the importance of

preserving judicial independence in Federalist Paper Number 78:

> Whoever attentively considers the different departments of power must
> perceive, that, in a government in which they are separated from each other,
> the judiciary, from the nature of its functions, will always be the least
> dangerous to the political right of the Constitution; because it will be least in
> a capacity to annoy or injure them. [. . .]
> This simple view of the matter suggests several important consequences.
> It proves incontestably, that the judiciary is beyond comparison the weakest
> of the three departments of power; that it can never attack with success either
> of the other two; and that all possible care is requisite to enable it to defend
> itself against their attacks. [. . .] And it proves, in the last place [. . .] that as,
> from the natural feebleness of the judiciary, it is in continual jeopardy of
> being overpowered, awed, or influenced by its co-ordinate branches; and that
> as nothing can contribute so much to its firmness and independence as
> permanency in office, this quality may therefore be justly regarded as an
> indispensable ingredient in its constitution, and, in a great measure, as the
> citadel of the public justice and the public security. *The Federalist Papers*,
> Mentor, 1961, pages 465-466.

Hamilton also wrote in Federalist Paper Number 79 that: "Next to permanency in office,

nothing can contribute more to the independence of the judges than a fixed provision for their

support [. . .] In the general course of human nature, a power over a man's subsistence amounts

to a power over his will." *The Federalist No. 79*, at 400; The Federalist No. 79. The Judiciary

Continued, From MCLEAN'S Edition, New York. Wednesday, May 28, 1788.

The Puerto Rico Judicial Retirement System is in danger of being severely affected by the acts of the Oversight Board. The *Sonnax* factors have been met and there is cause to lift this stay and have this matter decided.

**WHEREFORE**, APJ, on behalf of and for its members, respectfully requests this Honorable Court **GRANT** relief from the automatic stay, allowing APJ to continue its Declaratory Judgment action Civil No. 17-1580 currently pending in the District Court.

**CERTIFICATE OF SERVICE: I HEREBY CERTIFY** that on this day, I electronically filed the foregoing motion with the Clerk of the Court using CM/ECF Filing System which will send notification to the parties and subscribed users.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 21st day of January 2019.

**INDIANO & WILLIAMS, P.S.C.**
207 del Parque Street; 3rd Floor
San Juan, P.R. 00912
Tel: (787) 641-4545; Fax: (787) 641-4544
david.indiano@indianowilliams.com
jeffrey.williams@indianowilliams.com

by:   *s/ David C. Indiano*
        DAVID C. INDIANO
        USDC-PR NO. 200601


by:   *s/ Jeffrey M. Williams*
        JEFFREY M. WILLIAMS
        USDC-PR No. 202414