**<u>Exhibit D</u>**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>                      Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

**ORDER AND JUDGMENT CONFIRMING THE THIRD AMENDED TITLE III
PLAN OF ADJUSTMENT OF PUERTO RICO SALES
TAX FINANCING CORPORATION**

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**TABLE OF CONTENTS**

**Page**

| | | |
|---|---|---|
| 1. | Findings/Conclusions | ~~3~~4 |
| ~~3.~~2. | Objections | ~~6~~7 |
| ~~4.~~3. | Confirmation of the Plan | ~~6~~7 |
| ~~5.~~4. | Compromise of Commonwealth-COFINA Dispute | ~~6~~7 |
| ~~6.~~5. | Settlement Agreement Approved | ~~7~~8 |
| ~~7.~~6. | Plan Settlement Approved | ~~7~~8 |
| ~~8.~~7. | The Adversary Proceeding | ~~7~~8 |
| ~~9.~~8. | The Interpleader Action | 8 |
| ~~10.~~9. | Implementation of the Plan | ~~8~~9 |
| ~~11.~~10. | No Action | ~~9~~10 |
| ~~12.~~11. | Binding Effect | ~~9~~10 |
| ~~13.~~12. | Cancellation of Notes, Instruments, Certificates, and Other Documents | 10 |
| ~~14.~~13. | Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases | 12 |
| ~~15.~~14. | Insurance Policies | ~~12~~13 |
| ~~16.~~15. | Objection to Cure Amounts; Rejection Damages Claims | 13 |
| ~~17.~~16. | Payment of Cure Amounts | ~~13~~14 |
| ~~18.~~17. | Setoff | ~~13~~14 |
| ~~19.~~18. | Delivery of Distributions | 14 |
| ~~20.~~19. | Disbursing Agent | ~~17~~18 |
| 20. | Securities Act Exemption. | 18 |
| 21. | Deemed Acceleration (Ambac Insured Bonds) | ~~17~~18 |
| 22. | Deemed Acceleration (Assured Insured Bonds) | 18 |
| 23. | Disputed Claims Holdback | ~~18~~19 |
| 24. | No Amendments to Proofs of Claim | ~~19~~20 |
| 25. | Conditions to Effective Date | ~~19~~20 |
| 26. | Administrative Claim Bar Date | ~~19~~20 |
| 27. | Professional Compensation and Reimbursement Claims | ~~20~~21 |
| 28. | Consummation Costs | ~~20~~21 |
| 29. | Discharge and Release of Claims and Causes of Action | ~~22~~23 |

| | | |
|---|---|---|
| 30. | Releases by COFINA and Reorganized COFINA | 2526 |
| 31. | Release and Exculpation Provisions | 2627 |
| 32. | Preservation of Certain Claims and Causes of Action 26 | 28 |
| 33. | Injunction on Claims | 2628 |
| 34. | Injunction Related to Releases | 2729 |
| 35. | Exculpation | 2830 |
| 36. | Appointments Related Litigation | 3133 |
| 37. | Bar Order | 3133 |
| 38. | Supplemental Injunction | 3234 |
| 39. | COFINA Agent and Commonwealth Agent Releases and Exculpation | 3335 |
| 40. | Term of Existing Injunctions or Stays | 3435 |
| 41. | Prosecution of Claims | 3436 |
| 42. | Indemnification and Reimbursement Obligations | 3436 |
| 43. | Compliance with Tax Requirements | 3436 |
| 44. | Documents and Instruments | 3537 |
| 45. | Reversal/Stay/Modification/Vacatur of Order | 3537 |
| 46. | Retention of Jurisdiction | 3638 |
| 47. | Conflicts Among Order, Plan, and Settlement Order | 3638 |
| 48. | Collective Action. | 38 |
| 49. | Modifications | 3739 |
| 49.50. | Provisions of Plan and Order Nonseverable and Mutually Dependent | 3739 |
| 50.51. | Governing Law | 3739 |
| 51.52. | Applicable Nonbankruptcy Law | 3740 |
| 52.53. | Non-Effect on Other Actions. | 3840 |
| 53.54. | Use of Commonwealth Funds 38 | 41 |
| 54.55. | Waiver of Filings | 3841 |
| 55.56. | Notice of Order | 3841 |
| 56.57. | Waiver of Stay | 3941 |
| 57.58. | No Waiver | 3942 |
| Exhibit A Plan | | A-1 |
| Exhibit B Form of Notice | | B-1 |

The Puerto Rico Sales Tax Financing Corporation ("COFINA" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the debtor under PROMESA section 315(b), having proposed and filed with the United States District Court for the District of Puerto Rico (the "Court") the *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation*, dated January 9, 2019 [Case No. 18-3284, ECF No. 439] (as modified pursuant to any revisions made at or subsequent to the Confirmation Hearing as set forth in this Order, including the Amended Plan Supplement, and as may be modified pursuant to Section 313 of PROMESA, the "Plan");[2] and the Court having entered, pursuant to, *inter alia*, section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017(b), after due notice and a hearing, an order, dated November 29, 2018 [ECF No. 375] (the "Disclosure Statement Order"), approving the Disclosure Statement, establishing procedures for the solicitation, voting, and tabulation of votes on and elections with respect to the Plan, approving the forms of ballots, master ballots, and election notices used in connection therewith, and approving the form of notice of the Confirmation Hearing; and the Court having entered the *Notice Regarding the Proper Method for Submission of Objections to the Proposed COFINA Plan of Adjustment* [ECF No. 384]; and the following documents having been filed by the Debtor, the COFINA Agent, or PSA Creditors in support of or in connection with confirmation of the Plan, including the Settlement of the Commonwealth-COFINA Dispute incorporated into the Plan:

---

[2]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Plan, the Disclosure Statement Order, the Confirmation Brief (each as defined herein), or the *Findings of Fact and Conclusions of Law Regarding Confirmation of Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (the "Findings of Fact and Conclusions of Law"), as applicable; provided, however, that references herein to "COFINA Revenues" is used to maintain consistent terminology with the New Bond Legislation and shall have the same meaning as the term "COFINA Portion" as defined and used in the Plan, and shall include any collateral that may be substituted for the COFINA Revenues in accordance with the terms and provisions of the Plan and the New Bond Legislation.  A composite copy of the Plan is annexed hereto as Exhibit A.

(a) Amended Plan Supplement [Case No. 17-3283, ECF No. 4813];

(b) *Certificate of Service of Solicitation Materials* [ECF No. 387];

(c) *Certificate of Publication* [Case No. 17-3283, ECF No. 4617] (the "Publication Affidavit");

(d) *Certificate of Service* [ECF No. 429] (the "Radio Affidavit", and together with the Mailing Affidavit and Publication Affidavit, the "Service Affidavits");

(e) Omnibus Reply of Puerto Rico Sales Tax Financing Corporation to Objections to Second Amendment Title III Plan of Adjustment [Case No. 17-3283, ECF No. 4663] (the "Omnibus Reply");

(f) the *Memorandum of Law in Support of Puerto Rico Sales Tax Financing Corporation's Third Amended Title III Plan of Adjustment* [Case No. 17-3283, ECF No. 4644] (the "Confirmation Brief");

(g) *Declaration of Natalie A. Jaresko in Support of Puerto Rico Sales Tax Financing Corporation's Title III Plan of Adjustment* [Case No. 17-3283, ECF No. 4756];

(h) *Declaration of David M. Brownstein in Support of Confirmation of Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, ECF No. 4757];

(i) *Declaration of Christina Pullo  of Prime Clerk LLC Regarding the Solicitation of Votes and Tabulation of Ballots Cost on the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No., 17-3283, ECF No. 4794];

(j) *Statement of COFINA Agent in Support of Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, ECF No. 4656];

(k) *Declaration of Matthew A. Feldman in Support of COFINA Agent's Statement* [Case No. 17-3283, ECF No. 4656-1]; ~~and~~

(l) *Omnibus Reply of COFINA Senior Bondholders' Coalition to Objections to Second Amended Title III Plan of Adjustment* [Case No. 17-3283, ECF No. 4665], and the *Joinder of the Puerto Rico Funds* filed thereto [Case No. 17-3283, ECF No. 4670]; ~~and~~

(m) *Declaration of Matthew Rodrigue in Support of Confirmation of Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, ECF No. 4665-1]; and

(n) *Declaration of Natalie A. Jaresko in Support of Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [Case No. 17-3283, ECF No. 4758];

and objections to confirmation having been interposed by certain parties, as reflected on the docket of the Title III Cases and/or on the record of the Confirmation Hearing; and each of the objections having been resolved, overruled, or withdrawn at, prior to, or subsequent to the Confirmation Hearing; and the Court having held the Confirmation Hearing commencing on January 16, 2019; and the appearances of all interested parties having been noted in the record of the Confirmation Hearing; and after full consideration of the record of the COFINA Title III

Case, including, without limitation, motions, applications and orders in the COFINA Title III

Case, the foregoing documents, and the evidence admitted and arguments of counsel presented at

the Confirmation Hearing; and the Court having entered the *Order Approving Settlement*

*Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation*

[Case No. 17-3283, ECF No. ____] in the Commonwealth Title III Case; and after due

deliberation and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, DECREED, AND DETERMINED THAT**:

1.    <u>Findings/Conclusions</u>.  The Findings of Fact and Conclusions of Law set forth in

the Court's Findings Of Fact And Conclusions Of Law Regarding Confirmation Of The Third

Amended Title III Plan Of Adjustment Of Puerto Rico Sales Tax Financing Corporation are

incorporated herein as though set forth in full.   Notwithstanding such incorporation, the

following summarizes certain of the Court's determinations:

(A)    Pursuant to PROMESA, on May 3, 2017 and May 5, 2017, respectively,
the Commonwealth and COFINA each commenced a federal case before
the Court in accordance with the requirements of Title III of PROMESA.
The commencement of these cases vested the Court with exclusive
jurisdiction over the cases and all respective property of the
Commonwealth of Puerto Rico and COFINA, wherever located.  As a
result of the consensual agreement among the Commonwealth, COFINA,
and their respective creditor representatives, the parties formulated, duly
solicited, and now seek confirmation of a plan of adjustment in
accordance with federal law.  The Plan and this Order quiets title to the
COFINA Pledged Taxes and resolve all disputes of all parties relating
thereto.  Moreover, pursuant to PROMESA, and at the request of the
Commonwealth and COFINA, the Court shall retain jurisdiction until the
COFINA Bonds have been paid in full or otherwise satisfied in
accordance with their terms to ensure compliance with the Plan and to
adjudicate claims arising therefrom, including claims for specific
performance.

(B)    As set forth more fully in the Findings of Fact and Conclusions of Law,
the Court ~~specifically determines~~<u>has made</u> the following <u>determinations
pursuant to applicable law</u>:

4

(ii)     This Order is full, final, complete, conclusive, and binding and shall not be subject to collateral attack or other challenge in any court or other forum.  Confirmation of the Plan constitutes a judicial determination, pursuant to section 4 of PROMESA, that the terms of this Order shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent therewith

(iii)    The Court shall retain jurisdiction to enforce the terms hereof and of the Plan.

(iv)     ~~Pursuant~~Subject to the ~~New Bond Legislation, on~~occurrence of and upon the Effective Date, Reorganized COFINA shall be an independent public corporation and instrumentality of the Commonwealth, separate from the Commonwealth and any other instrumentality of the Commonwealth.

(v)      ~~Pursuant~~Subject to the ~~New Bond Legislation, on~~occurrence of and upon the Effective Date, ownership of the COFINA Revenues shall have been legally and validly transferred to Reorganized COFINA, and such transfer of ownership shall have been an absolute transfer of all legal and equitable right, title, and interest in the COFINA Revenues, free and clear of all liens, claims, encumbrances, and other interests of any party (except for the statutory lien that arises automatically to secure the COFINA Bonds).

(vi)     ~~Pursuant~~Subject to the ~~New Bond Legislation, on~~occurrence of and upon the Effective Date, the COFINA Revenues shall not constitute, and shall not be deemed to be, "available resources" or "available revenues" of the Commonwealth, as that term is used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution).

(vii)    Subject to a "Quarterly Installment" funding construct to the extent certain conditions are satisfied, each fiscal year, until the COFINA Bonds are paid in full or otherwise satisfied in accordance with their terms, the first funds comprising the COFINA Pledged Taxes shall be transferred to and deposited with Reorganized COFINA until such time that Reorganized COFINA has received an amount equal to the COFINA Revenues for such fiscal year.

(viii)   Reorganized COFINA's sole and exclusive ownership of the COFINA Revenues shall not be affected in any way by the manner of or control over collection: any person who collects or holds the COFINA Revenues shall do so on behalf of Reorganized COFINA, and no person or entity that collects or holds the COFINA

5

Revenues shall have any legal or equitable right, title, or interest to the COFINA Revenues other than Reorganized COFINA, for the benefit of holders of the COFINA Bonds.

(ix)    The statutory first lien against the COFINA Pledged Taxes (including any New Collateral substituted for the COFINA Pledged Taxes in accordance with the terms of the Plan and the New Bond Legislation) arising by operation of the New Bond Legislation in favor of holders of COFINA Bonds is legal, valid, binding and enforceable and shall remain in full force and effect and shall be "closed" until, in each case, the COFINA Bonds have been paid or satisfied in full in accordance with their terms.

(x)     At the time of issuance and delivery of the COFINA Bonds, Reorganized COFINA is hereby directed to be stamped or written on each of the COFINA Bonds a legend substantially as follows:

> DETERMINED   TO   BE   VALID   AND
> CONFIRMED   BY   JUDGMENT   AND
> CONFIRMATION ORDER OF THE UNITED
> STATES   DISTRICT   COURT   FOR   THE
> DISTRICT OF PUERTO RICO, ENTERED ON
> THIS ___ DAY OF JANUARY, 2019

(xi)    The Commonwealth's agreement, on behalf of itself and its governmental entities, not to take any action that would, among other things, (a) impair COFINA's right to receive the COFINA Revenues, (b) limit or alter the rights vested in COFINA in accordance with the Plan to fulfill the terms of the COFINA Bonds, (c) materially adversely impair the collection of the COFINA Pledged Taxes in any fiscal year, or (d) impair the rights and remedies of the holders of the COFINA Bonds or the statutory lien established under Article 3.2 of the New Bond Legislation, each as provided in the New Bond Legislation and the New Bond Indenture, serve as adequate protection for the property interests of Reorganized COFINA and the holders of the COFINA Bonds in the COFINA Pledged Taxes under all applicable law, and constitute valid, binding, legal and enforceable obligations of COFINA, Reorganized COFINA, and the Commonwealth, as applicable, and an integral part of the settlements set forth in the Plan.

(xii)   The covenants described in Sections 16.6 and 16.7 of the Plan (including, but not limited to, the rating agency covenant, the tax exemption covenant, the substitution covenant, the non-impairment covenant and the sales tax covenant), to be provided by Reorganized COFINA and the Commonwealth, as the

case may be, to the holders of COFINA Bonds, shall constitute adequate protection for the property interests of Reorganized COFINA and the holders of COFINA Bonds in the COFINA Pledged Taxes under all applicable law.

2.      3. Objections.  All objections, responses to, and statements and comments, if any, in opposition to or inconsistent with the Plan shall be and hereby are, OVERRULED and DENIED in their entirety.  All withdrawn objections are deemed withdrawn with prejudice.

3.      4. Confirmation of the Plan.  The Plan and each of its provisions shall be, and hereby are, CONFIRMED pursuant to section 314(b) of PROMESA.  The documents contained in the Amended Plan Supplement are authorized and approved.  The terms of the Plan, as modified by the revisions made at or subsequent to the Confirmation Hearing, as set forth in this Order as well as in the revised composite copy attached hereto as Exhibit A, including the Amended Plan Supplement, as has and may be amended, are incorporated by reference into and are an integral part of this Order.

4.      5. Compromise of Commonwealth-COFINA Dispute.  For the reasons stated herein, on the record at the Confirmation Hearing, and in the Findings of Fact and Conclusions of Law, the provisions of the Plan and the Settlement Agreement constitute a good faith, reasonable, fair, and equitable compromise and settlement of all Claims and controversies resolved pursuant to the Plan, including, without limitation, the Settlement Agreement and the compromise and settlement of the Commonwealth-COFINA Dispute incorporated into the Plan, and the entry of this Order constitutes approval of all such compromises and settlements pursuant to Bankruptcy Rule 9019 and sections 105(a) and 1123(b)(5) of the Bankruptcy Code. Pursuant to this Order and the Settlement Order, to the extent provided in the Plan and the Settlement Agreement, respectively, on the Effective Date, such compromises and settlements shall be binding upon COFINA, the Commonwealth, all Creditors of COFINA and the

Commonwealth, and all other Entities and, to the fullest extent permitted by applicable law, shall not be subject to collateral attack or such other challenge in any court or other forum.

5.        6.  Settlement Agreement Approved.   The Court (a) approves the Settlement Agreement as a good faith compromise that is fair and reasonable and in COFINA's best interests and integral to the Plan, and (b) upon the Effective Date, authorizes and directs the consummation of the Settlement Agreement by all parties thereto.

6.        7.  Plan Settlement Approved.  The Court hereby approves the compromises and settlements embodied in the Plan as fair and reasonable and, as of the Effective Date of the Plan, authorizes and directs the consummation thereof.

7.        8.  The Adversary Proceeding.  As soon as practicable after entry of this Order, but in no event later than five (5) business days following the Effective Date, each of (a) the Commonwealth Agent, (b) the COFINA Agent, and (c) the Permitted Intervenors, as defined in prior orders of the Court in connection with the Adversary Proceeding, shall take any and all actions necessary to cause the dismissal, with prejudice, of the Adversary Proceeding and all other claims and causes of action asserted therein by the Commonwealth Agent, the COFINA Agent, and the Permitted Intervenors, including, without limitation, causing the entry of an order in the Adversary Proceeding evidencing such dismissal, with prejudice.  Upon the dismissal, with prejudice, of the Adversary Proceeding, the Commonwealth Agent and the COFINA Agent and their respective professionals shall be deemed to have satisfied any and all of their respective obligations in connection with the Adversary Proceeding, and the Commonwealth Agent and the COFINA Agent shall be deemed to have been released from any and all liabilities associated therewith.

8.      9.  The Interpleader Action.  As soon as practicable after entry of this Order, but in no event later than five (5) business days following the Effective Date, hereof and except with respect to (i) any Claims and causes of action asserted or that could have been asserted by BNYM against Ambac and Whitebox in the Interpleader Action and (ii) any non-released and non-dismissed counterclaims that may be asserted by either Ambac or Whitebox against BNYM therein for gross negligence, willful misconduct or intentional fraud, the parties to the Interpleader Action shall take any and all actions necessary to cause the dismissal, with prejudice, effective as of the Effective Date, of all other claims and causes of action asserted or that could have been asserted in the Interpleader Action, including, without limitation, filing a notice and obtaining an order of the Court with respect all such dismissed claims and causes of action.

9.      10.  Implementation of the Plan.  On and after the Effective Date, the Debtor, Reorganized COFINA, and each of their respective authorized agents and representatives are authorized to (i) execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including, without limitation, those contained in the Amended Plan Supplement and the Settlement Agreement, (ii) make any and all distributions and transfers contemplated pursuant to, and as provided for in, the Plan, the Amended Plan Supplement, and the Settlement Agreement, (iii) take such other actions as may be necessary to effectuate, implement, and further evidence the terms and conditions of the Plan and the Settlement Agreement, including, among other things, all such actions delineated in Article XXVIII of the Plan, and (iv) direct or instruct BNYM, Depository Trust Company, or such other person or entity necessary to implement or effectuate the terms of the Trusts.  On the Effective Date, the appropriate officers or representatives of the Debtor and Reorganized COFINA, as the case may

be, and members of the boards of directors of the same, are authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Amended Plan Supplement, contemplated by the Plan and the Settlement Agreement, and make, or cause to be made, any and all distributions and transfers contemplated pursuant to, and as provided for in, the Plan, the Amended Plan Supplement, and the Settlement Agreement, in the name of and on behalf of COFINA and Reorganized COFINA, as applicable.

10. 11. No Action. Pursuant to section 1142(b) of the Bankruptcy Code, no further action of the directors or officers of COFINA shall be required to authorize COFINA to enter into, execute, deliver, file, adopt, amend, restate, consummate, or effectuate, as the case may be, the Plan and the Settlement Agreement, and any contract, instrument, or other document to be executed, delivered, adopted, or amended in connection with the implementation of the Plan and Settlement Agreement, including, without limitation, the Amended Plan Supplement.

11. 12. Binding Effect. This Order is full, final, and complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (i) COFINA, (ii) Reorganized COFINA, (iii) the Commonwealth, (iv) each person or entity asserting claims or other rights against COFINA, the Commonwealth or any of its other instrumentalities, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by COFINA, the Commonwealth, or any of its other instrumentalities or with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are impaired pursuant to the Plan or this Order and, if impaired, whether or not such person or entity accepted

or rejected the Plan, (v) any other person, and (vi) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, officers, directors, agents, representative, attorneys, beneficiaries or guardians.

12.    13. Cancellation of Notes, Instruments, Certificates, and Other Documents. Pursuant to Section 19.6 of the Plan, and except (a) as provided in any contract, instrument or other agreement or document entered into or delivered in connection with the Plan, (b) for purposes of evidencing a right to distribution under the Plan, or (c) as specifically provided otherwise in the Plan (including any rejection of Executory Contracts or Unexpired Leases pursuant to Section 18.1 of the Plan), on the Effective Date (and subject to the distribution of the COFINA Bonds in accordance with the terms and provisions of the Plan), the "Senior" and "First Subordinate" Existing Securities and all instruments and documents related thereto will be deemed automatically cancelled, terminated and of no further force or effect against COFINA without any further act or action under any applicable agreement, law, regulation, order or rule, with COFINA and BNYM having no continuing obligations or duties and responsibilities thereunder and the obligations of the parties to COFINA, as applicable, under the Existing Securities and all instruments and documents related thereto shall be discharged; provided, however, that, notwithstanding anything contained in the Plan to the contrary, the "Senior" and "First Subordinate" Existing Securities and such other instruments and documents shall continue in effect solely (i) to allow the Disbursing Agent to make any distributions as set forth in the Plan and to perform such other necessary administrative or other functions with respect thereto, (ii) to allow holders of Allowed Bond Claims to receive distributions in accordance with the terms and provisions of the Plan, (iii) for any trustee, agent, contract administrator or similar entity under all instruments and documents related thereto, including BNYM, to perform

11

necessary functions, including making distributions, in accordance with the Plan and to have the benefit of all the rights and protections and other provisions of such instruments and documents, as applicable, and all other related agreements, including, without limitation, the right to payment of the Trustee Claims and the Trustee Rights, (iv) to set forth the terms and conditions applicable to parties to such documents and instruments other than COFINA, (v) to allow BNYM to appear in the Title III Case or any other proceeding in which BNYM is or becomes a party with respect to clauses (i) through (iv) above, as applicable or otherwise in connection with BNYM's role as trustee under the Bond Resolution, or (vi) subject to the terms of Sections 17.1, 17.2 and 30.7 of the Plan, as may be necessary to preserve any claims under the respective Insurance Policies by (1) the applicable holders of Allowed Senior COFINA Bond Claims (Ambac) that validly elected to receive Ambac Certificates or (2) the applicable holders of Allowed Senior COFINA Bond Claims (National) that validly elected to receive National Certificates; and, provided, further, that, BNYM shall have no duties or responsibilities with respect to any Existing Securities that may be held by the Trusts from and after the Effective Date.  Notwithstanding the foregoing, and except as otherwise expressly provided in the Plan, such bonds or bond documents as remain outstanding shall not form the basis for the assertion of any Claim against COFINA or Reorganized COFINA, as the case may be.

13.   14. Rejection or Assumption of Remaining Executory Contracts and Unexpired Leases.  Pursuant to Section 18.1 of the Plan, except as otherwise provided herein, or in any contract instrument, release, or other agreement or document entered into in connection with the Plan, as of the Effective Date, COFINA shall be deemed to have rejected each prepetition Executory Contract and Unexpired Lease to which it is a party, pursuant to section 365 of the Bankruptcy Code, unless such Executory Contract and Unexpired Lease (i) was assumed,

assumed and assigned, or rejected pursuant to an order of the Court entered prior to the Effective Date, (ii) previously expired or terminated pursuant to its own terms or by agreement of the parties, (iii) is the subject of a motion to assume or assume and assign filed by the Debtor on or before the Confirmation Date, or (iv) is specifically designated as a contract or lease to be assumed or assumed and assigned on the schedules to the Amended Plan Supplement.  This Order shall constitute an order of the Court pursuant to sections 365 and 1123(b) of the Bankruptcy Code approving the contract and lease assumptions or rejections described above, as of the Effective Date.

14.   ~~15.~~ Insurance Policies.  Subject to the terms and provisions of Section 18.7 of the Plan, each of COFINA's Insurance Policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Except as otherwise provided in the Plan, on the Effective Date, COFINA shall, or shall cause BNYM, as trustee for the Existing Securities to, deposit or cause the deposit of all Insurance Policies and any agreements, documents and instruments relating to coverage of all insured Bond Claims into any applicable Trusts.  To the extent any Insurance Policy is rejected pursuant to the Plan, such rejection shall not, and shall not be construed to, discharge or relieve any of Ambac or National with respect to their respective obligations to holders of Allowed Senior COFINA Bond Claims (Ambac) and Allowed Senior COFINA Bond Claims (National), respectively, that have elected to receive the relevant trust certificates in accordance with the Plan pursuant to the applicable Insurance Policy. For the avoidance of doubt, nothing contained in this Order or the Plan shall prejudice any subrogation, reimbursement, or similar rights of an insured against the applicable Trust or the assets thereof.

13

15.    16. Objection to Cure Amounts; Rejection Damages Claims.  If the rejection of an Executory Contract and Unexpired Lease by COFINA pursuant to the Plan results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against COFINA, or its properties or agents, successors, or assigns, including, without limitation, Reorganized COFINA, unless a proof of Claim is filed with the Title III Court and served upon attorneys for the Oversight Board and Reorganized COFINA, as the case may be, on or before thirty (30) days after the late to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

16.    17. Payment of Cure Amounts.  Any monetary amount required as a cure payment with respect to each prepetition executory contract and unexpired lease to be assumed pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date or upon such other terms and dates as the parties to such executory contracts or unexpired leases and the Debtor, otherwise may agree.

17.    18. Setoff.  Except as otherwise provided in the Plan or in this Order, the Disbursing Agent may, pursuant to applicable bankruptcy or non-bankruptcy law, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account thereof (before any distribution is made on account of such Claim by the Disbursing Agent), the claims, rights, and causes of action of any nature that COFINA or Reorganized COFINA hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by COFINA or Reorganized COFINA of any such claims, rights, and causes of action that COFINA or the Reorganized COFINA may possess against such holder; and, provided, further, that nothing

contained herein is intended to limit the ability of any Creditor to effectuate rights of setoff or recoupment preserved or permitted by the provisions of sections 553, 555, 559, or 560 of the Bankruptcy Code or pursuant to the non-bankruptcy or common law right of recoupment; and, provided, further, that nothing in this paragraph shall affect the releases and injunctions provided in Article XXX of the Plan or herein.

18.   ~~19.~~ Delivery of Distributions.   Subject to the provisions of Rule 9010 of the Bankruptcy Rules, and except as provided in Section 19.5 of the Plan and herein, distributions and deliveries to holders of Allowed Claims shall be made at the address of each such holder as set forth on the Schedules filed with the Court, unless superseded by the address set forth on proofs of Claim filed by such holders, or at the last known address of such holder if no proof of Claim is filed or if COFINA has been notified in writing of a change of address; provided, however, that initial distributions of Cash by the Disbursing Agent for the benefit of holders of Allowed Senior COFINA Bond Claims, Allowed Senior COFINA Bond Claims (Ambac), Allowed Senior COFINA Bond Claims (National), Allowed Bond Claims (Taxable Election), Allowed Junior COFINA Bond Claims, Allowed Junior COFINA Bond Claims (Assured) and Allowed Junior COFINA Bond Claims (Taxable Election), as applicable, shall be made to BNYM, as trustee for the Existing Securities (or BNYM's designee) for such obligations; and, provided, further, that, on the Effective Date, the Disbursing Agent may make distributions of Consummation Costs in Cash to a Consummation Cost Party in a manner mutually agreed upon between the Consummation Cost Party and the Disbursing Agent.   BNYM (or BNYM's designee) shall, in turn, in accordance with the terms and provisions of the Plan, distribute and deliver Cash and COFINA Bonds, as applicable, to Bondowners, as of the Distribution Record Date, in the manner provided for in the applicable governing documents; provided, however,

that, to the extent a holder of a Bond Claim elects to receive the trust certificate pursuant to the Plan, BNYM will deposit such holder's distribution into the applicable Trust; and, provided, further, that, in accordance with Section 10.1 of the Plan, BNYM shall deliver (i) the Section 103 Cash and Rounding Amount Cash, if any, which, in each case, is allocable to Junior COFINA Bond Claims (Assured), and (ii) the Assured New Bonds, to Assured in a manner mutually agreed upon between BNYM and Assured.   On or prior to the Effective Date, BNYM and COFINA shall disclose to Assured the Acceleration Price to be paid with respect to the Assured Insured Bonds in accordance with Section 10.1 of the Plan, and, on the Effective Date, (i) BNYM shall, with respect Assured Insured Bonds insured in the primary market, draw down on the applicable Assured Insurance Policies to pay the applicable Acceleration Price to the holders of Assured Insured Bonds insured in the primary market in accordance with Section 10.1 of the Plan, and (ii) with respect to Assured Insured Bonds insured in the secondary market, Assured shall, or shall cause the applicable custodian (each, a "Custodian") of custody receipts or similar certificates evidencing the beneficial ownership interest of the holders thereof in such Assured Insured Bonds and the related Assured Insurance Policies, to draw on the applicable Assured Insurance Policies in order to pay the applicable Acceleration Price to the holders of Assured Insured Bonds insured in the secondary market in accordance with Section 10.1 of the Plan. BNYM may conclusively rely upon the distribution instructions received from COFINA or its agents with respect to the delivery of distributions in accordance with the terms and provisions of Section 19.5 of the Plan, including the  contra-CUSIP positions and escrow positions set up by COFINA or its agents with the Depository Trust Company, and BNYM shall close and terminate the original CUSIPs after making initial distributions of COFINA Bonds, COFINA Cash Available for Distribution, Section 103 Cash and Rounding Cash Amount and shall have no

further distribution obligations thereafter.  BNYM shall not be required to give any bond or surety or other security for the performance of its duties, unless otherwise ordered by the Court. BNYM shall only be required to make the distributions and deliveries described in this decretal paragraph and Section 19.5 of the Plan and shall only be required to make such distributions and deliveries in accordance with the terms of this Order and the Plan and shall have no liability for actions reasonably taken in accordance with this Order, the Plan or in reasonable reliance upon information provided to BNYM by COFINA or its agents in accordance with this Order, the Plan or in connection with distributions to be made hereunder and thereunder, including to Lehman Brothers Special Financing Inc. under the Debt Service Deposit Agreement, dated as of July 1, 2008, among BNYM, COFINA, and Lehman Brothers Special Financing Inc., except for liabilities resulting from its own gross negligence or willful misconduct.  Neither BNYM nor any Custodian shall have any liability for (i) applying payments under the Assured Insurance Policies to the payment of the applicable Acceleration Price with respect to the Assured Insured Bonds in accordance with Section 10.1 of the Plan, or (ii) transferring Section 103 Cash, Rounding Amount Cash, or Assured New Bonds to Assured in accordance with Section 10.1 of the Plan. Notwithstanding the foregoing, all distributions are subject to the Trustee Rights; provided, however, that, notwithstanding the foregoing or anything contained in the Plan and herein to the contrary, including, without limitation, Sections 19.6(iii) and 19.13 of the Plan, BNYM shall not exercise Trustee Rights on account of Trustee Claims that may arise from and after the Effective Date and no distribution to be made pursuant to the Plan, either through the Disbursing Agent or BNYM as trustee of the Existing Securities, shall be withheld as a result of, or on account of, or arising from or due to, the claims, causes of action and damages being asserted, or which could have been asserted, by or against BNYM in the Ambac Action and the Whitebox Actions;

provided, further, that the foregoing shall be subject in all respects to the Title III Court's determination at the Confirmation Hearing of BNYM's rights pursuant to Section 19.5 of the Plan with regard to the payment of BNYM's fees and expenses and indemnification arising from or relating to the Ambac Action and the Whitebox Actions. COFINA, its agents and servicers, the Disbursing Agent and BNYM shall have no obligation to recognize any transfer of Bond Claims after the Distribution Record Date; provided, however, that COFINA Bonds will be transferable and recognized if made in accordance with the terms and conditions of the New Bond Indenture.

19.   20. Disbursing Agent.  Pursuant to Section 1.84 of the Plan, the Disbursing Agent shall be, as applicable, COFINA or such other Entity designated by the Oversight Board and COFINA on or prior to the Effective Date to make or to facilitate distributions in accordance with the provisions of the Plan and this Order.

20.   21. Securities Act Exemption.  Pursuant to section 1145 of the Bankruptcy Code (other than an underwriter as defined in section 1145(b) of the Bankruptcy Code) and/or Section 3(a)(2) of the Securities Act, the offering, issuance, and distribution of the COFINA Bonds, Ambac Certificates and National Certificates pursuant to the terms hereof shall be exempt from registration under the Securities Act and any state or local law requiring registration for the offer, issuance or distribution of securities, including, but not limited to, the registration requirements of Section 5 of the Securities Act and any other applicable state or federal law requiring registration and/or prospectus delivery or qualification prior to the offering, issuance, distribution, or sale of securities.

21.   22. Deemed Acceleration (Ambac Insured Bonds).  The principal amount (or Compounded Amount in the case of capital appreciation bonds) of the Ambac Insured Bonds

shall be deemed accelerated and immediately due and payable, as of the Effective Date; provided, however, that such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date.

22.   23. Deemed Acceleration (Assured Insured Bonds).   The principal amount (or Compounded Amount in the case of capital appreciation bonds) of the Assured Insured Bonds shall be deemed accelerated and immediately due and payable, as of the Effective Date; provided, however, that such deemed acceleration shall not affect, nor shall it be construed to affect, any issues regarding the existence of a "default" or an "event of default" with respect to the Existing Securities which were pending prior to the Effective Date.

23.   24. Disputed Claims Holdback.   From and after the Effective Date, and until such time as each Disputed Claim has been compromised and settled, estimated by the Court in an amount constituting the allowed amount, or allowed or disallowed by Final Order of the Court, Reorganized COFINA shall retain, for the benefit of each holder of a Disputed Claim, COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds, and, to the extent elected by such holder, the applicable trust certificates, and any dividends, gains or income attributable in respect of any of the foregoing, in an amount equal to the Pro Rata Share of distributions that would have been made to the holder of such Disputed Claim if it were an Allowed Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed proof of Claim relating to such Disputed Claim, (ii) the amount in which the Disputed Claims shall be estimated by the Title III Court pursuant to section 502 of the Bankruptcy Code constitutes and represents the maximum amount in which such Claim may ultimately become an Allowed Claim, and (iii) such other amount as may be agreed upon by the

19

holder of such Disputed Claim and Reorganized COFINA; provided, however, that the recovery by any holder of a Disputed Claim shall not exceed the lesser of (i), (ii) and (iii) above. Any COFINA Cash Available for Distribution, Section 103 Cash, Rounding Amount Cash and COFINA Bonds retained and held for the benefit of a holder of a Disputed Claim shall be treated as payment and reduction on account of such Disputed Claim for purposes of computing any additional amounts to be paid in Cash distributed in COFINA Bonds in the event the Disputed Claim ultimately becomes an Allowed Claim. Such Cash and any dividends, gains or income paid on account of the COFINA Bonds (if any) retained for the benefit of holders of Disputed Claims shall be retained by Reorganized COFINA for the benefit of such holders pending determination of their entitlement thereto under the terms of the Plan. To the extent that Reorganized COFINA retains COFINA Bonds on behalf of Disputed Claims holders, until such time as such COFINA Bonds are distributed, Reorganized COFINA shall exercise voting or consent rights with respect to such bonds.

24.     25. No Amendments to Proofs of Claim. As of the commencement of the Confirmation Hearing, a proof of Claim may not be filed or amended without the authority of the Court.

25.     26. Conditions to Effective Date. The Plan shall not become effective unless and until the conditions set forth in Section 25.1 of the Plan have been satisfied or waived pursuant to Section 25.2 of the Plan.

26.     27. Administrative Claim Bar Date. The last day to file proof of Administrative Expense Claims shall be sixty (60) days after the Effective Date, after which date, any Administrative Expense Claim, proof of which has not been filed, shall be deemed forever barred, and COFINA and Reorganized COFINA shall have no obligation with respect thereto;

provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of COFINA; and, provided, further, that, in accordance with section 503(b)(1)(D) of the Bankruptcy Code, applicable herein pursuant to Section 301 of PROMESA, no governmental unit, including, without limitation, the IRS, shall be required to file a proof of Administrative Expense Claim by such date in order to be considered; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interests of COFINA and Reorganized COFINA, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof.

27.    28. Professional Compensation and Reimbursement Claims.  All Entities awarded compensation or reimbursement of expenses by the Court shall be paid in full, in Cash, in the amounts allowed by the Court (a) as soon as reasonably practicable following the later to occur of (i) the Effective Date and (ii) the date upon which the Court order allowing such Claims is deemed to be a Final Order or (b) upon such other terms no more favorable to the claimant than as may be mutually agreed upon between such claimant and the Government Parties; provided, however, that, except as provided herein, each Professional must file its application for final allowance of compensation for professional services rendered and reimbursement of expenses on or prior to one hundred twenty (120) days following the Effective Date.  Reorganized COFINA is authorized to pay compensation for professional services extended and reimbursement of expenses incurred after the Effective Date in the ordinary course and without the need for Court approval.

28.   29. Consumption Costs.  Notwithstanding anything contained in the Plan or this Order to the contrary, in order to compensate Consummation Cost Parties for the cost of negotiation, confirmation and consummation of the Term Sheet and the Plan, and in consideration of (a) the negotiation, execution and delivery of the Plan Support Agreement by each Consummation Cost Party and (b) the obligations and covenants contained in the Plan Support Agreement, each Consummation Cost Party, on the Effective Date, shall receive, based upon such Entity's respective positions (insured or otherwise) as of 5:00 p.m. (EDT) on August 7, 2018, its pro rata share of Cash in an amount equal to two percent (2.0%), truncated to two decimal points, of (i) the aggregate amount of the Senior COFINA Bond Claims, Senior COFINA Bond Claims (Ambac), Senior COFINA Bond Claims (National), Junior COFINA Bond Claims, Junior COFINA Bond Claims (Assured), Senior COFINA Bond Claims (Taxable Election) and Junior COFINA Bond Claims (Taxable Election) (calculated without duplication), minus (ii) One Billion Dollars ($1,000,000,000.00); provided, however, that, notwithstanding the foregoing provisions of this decretal paragraph and Section 3.3 of the Plan, amounts due to Aurelius Capital Master, Ltd. and Six PRC Investments LLC as a result of being a Consummation Cost Party (i) shall not be taken into account in connection with the above-referenced calculations solely with respect to payments to other Consummation Cost Parties, which payment to the other Consummation Cost Parties shall be made by COFINA or Reorganized COFINA, as the case may be, and (ii) with respect to payments to be made to Aurelius Capital Master, Ltd. and Six PRC Investments LLC shall be taken into account in connection with the above-referenced calculations for all Consummation Cost Parties, which payments to Aurelius Capital Master, Ltd. and Six PRC Investments LLC shall be made by the Commonwealth in accordance with the provisions of Section 15.2 of the Plan; and, provided,

further, that, with respect to any Senior COFINA Bond Claims (Ambac) and Senior COFINA Bond Claims (National), unless otherwise agreed to, in writing, by Ambac and National, and subject to the terms and provisions of Article XVII of the Plan, Ambac or National, as the case may be, and not the beneficial holder of such Senior COFINA Bond Claims (Ambac) and Senior COFINA Bond Claims (National) regardless of whether such beneficial holder is also a Consummation Cost Party, shall receive the amount of Cash that would have otherwise been distributed to such other Consummation Cost Party in accordance with the provisions of Section 3.3 of the Plan; and, provided, further, that, with respect to the Junior COFINA Bond Claims (Assured), Assured, and not the beneficial holders of the Junior COFINA Bond Claims (Assured), shall receive the amount of Cash distributable on account of the Junior COFINA Bond Claims (Assured) in accordance with the provisions of Section 3.3 of the Plan.

29.   30. Discharge and Release of Claims and Causes of Action.

(a)   Except as expressly provided in the Plan or herein, all distributions and rights afforded under the Plan shall be, and shall be deemed to be, in exchange for, and in complete satisfaction, settlement, discharge and release of, all Claims or Causes of Action against COFINA that arose, in whole or in part, prior to the Effective Date, relating to COFINA or Reorganized COFINA or any of its Assets, property, or interests of any nature whatsoever, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or Causes of Action.  Upon the Effective Date, COFINA and Reorganized COFINA shall be deemed discharged and released from any and all Claims, Causes of Action and any other debts that arose, in whole or in part, prior to the Effective Date (including prior to the Petition Date), and all debts of the kind specified in sections 502(g), 502(h) or 502(i) of the

Bankruptcy Code, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim based upon such debt is allowed under section 502 of the Bankruptcy Code (or is otherwise resolved), or (c) the holder of a Claim based upon such debt voted to accept the Plan.

(b)      Except as otherwise provided in ~~Section~~Sections 1.151 and 30.11 of the Plan or herein, all Entities shall be precluded from asserting any and all Claims against COFINA and Reorganized COFINA, and each of their respective Assets, property and rights, remedies, Claims or Causes of Action or liabilities of any nature whatsoever, relating to COFINA or Reorganized COFINA or any of their respective Assets and property, including any interest accrued on such Claims from and after the Petition Date, and regardless of whether any property will have been distributed or retained pursuant to the Plan on account of such Claims or other obligations, suits, judgments, damages, debts, rights, remedies, causes of action or liabilities.  In accordance with the foregoing, except as expressly provided in the Plan or this Order, this Order shall constitute a judicial determination, as of the Effective Date, of the discharge and release of all such Claims, Causes of Action or debt of or against COFINA pursuant to sections 524(a)(1), 524(a)(2), and 944(b) of the Bankruptcy Code, applicable to the Title III Case pursuant to Section 301 of PROMESA, and such discharge shall void and extinguish any judgment obtained against COFINA or Reorganized COFINA and their respective Assets, and property at any time, to the extent such judgment is related to a discharged Claim, debt or liability.  As of the Effective Date, and in consideration for the value provided under the Plan and the Settlement Agreement, each holder of a Claim in any Class under this Plan shall be and hereby is deemed to release and forever waive and discharge as against COFINA and Reorganized COFINA, and their respective Assets and property and all such Claims.

(c)     Notwithstanding any other provisions of this decretal paragraph and Section 30.2 of the Plan, in accordance with the provisions of the Plan Support Agreement, each of the PSA Creditors and their respective Related Persons, solely in their capacity as Creditors of COFINA, shall (i) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or to seek any other type of relief against any of the Government Releases based upon, arising from or relating to the Government Released Claims or any of the claims or causes of action asserted or which could have been asserted in the Actions, (ii) not directly or indirectly aid any person in taking any action with respect to the Government Released Claims that is prohibited by this subparagraph and Section 30.2(c) of the Plan and (iii) be deemed to have released and covenanted not to sue or otherwise pursue or seek to recover damages or seek any other type of relief against BNYM and each of its Related Persons from any and all Claims and causes of action arising from or related to the Existing Securities, the Bond Claims and the Bond Resolution; provided, however, that the release provided pursuant to clause (iii) above shall not extend to any and all claims and causes of action for gross negligence, willful misconduct and intentional fraud asserted or which can be asserted by Ambac or Whitebox in the Ambac Action and Whitebox Actions, respectively.

(d)     On the Effective Date, and in consideration of the Commonwealth-COFINA Dispute Settlement and the compromise and settlement of Bond Claims pursuant to the terms and provisions of the Plan (including, without limitation, the distributions to be made on account of "Senior" and "First Subordinate" Existing Securities), the resolution of the Interpleader Action and the terms and provisions of Section 19.5 of the Plan regarding the Ambac Action and the Whitebox Actions, to the fullest extent permissible under applicable law, BNYM and each holder and beneficial holder of Existing Securities and their transferrees, successors or assigns

shall be released from liability for all Claims and Causes of Action arising from or related to the payment by BNYM to beneficial holders of Existing Securities of regularly scheduled payments of principal and interest in respect thereof; provided, however, that the foregoing release of BNYM shall not extend, nor shall it be construed to extend, to acts of gross negligence, intentional fraud, or willful misconduct of BNYM, including, without limitation, any acts which have been asserted, or which could have been asserted in the Ambac Action and the Whitebox Actions.

(e)     On the Effective Date, (i) the COFINA Agent and its agents, attorneys, affiliates, advisors, consultants and attorneys, solely in such capacities (collectively, the "COFINA Agent Releasees"), and (ii) the Commonwealth Agent and the Creditors' Committee, its members and each of their respective current and former officers, directors, agents, attorneys, employees, affiliates, advisors,  and consultants, solely in such capacities (collectively, the "Commonwealth Agent Releasees"), shall be released from liability for all Claims and Causes of Action (as if such Causes of Action were against the Commonwealth Agent Releasees, or the COFINA Agent Releasees, as applicable) with respect to the Adversary Proceeding, the Agreement in Principle, the Settlement Agreement, the Settlement Motion and the Settlement Order.

(f)     On the Effective Date, and in consideration of the Commonwealth-COFINA Dispute Settlement and the resolution of the Interpleader Action, to the fullest extent permissible under applicable law, the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor, solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and

pendency and the compromise and settlement of the Interpleader Action and the allocation of funds in accordance with Section 2.1 of the Plan.

30.   ~~31.~~ Releases by COFINA and Reorganized COFINA.   Except as otherwise expressly provided in the Plan, this Order, or the Settlement Agreement, on the Effective Date, and for good and valuable consideration, each of COFINA and Reorganized COFINA, the Disbursing Agent and each of COFINA's and Reorganized COFINA's Related Persons (other than any former elected or appointed officials, directors, or officers of any of the Government Parties and the Commonwealth, in each case acting in his or her capacity as such prior to January 1, 2017)[3] shall be deemed to have and hereby does irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge the Released Parties from any and all Claims or Causes of Action that COFINA, Reorganized COFINA, and the Disbursing Agent, or any of them, or anyone claiming through them, on their behalf or for their benefit, have or may have or claim to have, now or in the future, against any Released Party (other than any former elected or appointed officials, directors, or officers of any of the Government Parties and the Commonwealth, in each case acting in his or her capacity as such prior to January 1, 2017) that are Released Claims or otherwise are based upon, relate to, or arise out of or in connection with, in whole or in part, any act, omission, transaction, event or other circumstance relating to COFINA taking place or existing on or prior to the Effective Date, and/or any Claim, act, fact, transaction, occurrence, statement, or omission in connection with or alleged or that could have been alleged in the Actions, the Related Actions, including, without limitation, any such Claim, demand, right, liability, or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees; provided, however, that notwithstanding anything

---

[3]   The date on which the current administration of the Government of Puerto Rico was installed.  Indemnification claims, if any, resulting from non-released Claims shall survive confirmation and effectiveness of the Plan.

contained in the Plan to the contrary, "Related Persons" shall not include any financial advisors, investment bankers, underwriters, attorneys, accountants, agents and professionals of the Commonwealth and COFINA, solely to the extent of services provided in connection with the issuance of the Existing Securities; and, provided, further, that the plaintiffs in that certain adversary proceeding before the Title III Court, captioned *Cooperativa de Ahorro y Credito Abraham Rosa, et al. v. Commonwealth of Puerto Rico, et al.*, Adv. Proc. No. 18-00028, shall be entitled to continue pursuit of such litigation against all parties other than COFINA and Reorganized COFINA, subject to all available rights and defenses with respect to claims and causes of action asserted therein.

31.    32. Release and Exculpation Provisions.  AllExcept as otherwise provided in this Order, all release and exculpation provisions, including, but not limited to, those contained in Article XXX of the Plan, are approved and shall be effective and binding on all Entities, to the extent provided herein.

32.    33. Preservation of Certain Claims and Causes of Action.  Notwithstanding anything contained in this Order or the Plan to the contrary, including, without limitation, the provisions of Article XXX, Ambac and Whitebox shall retain, and shall not be enjoined or otherwise barred from pursuing, any and all claims and causes of action, whether sounding in contract or tort, solely for gross negligence, willful misconduct or intentional fraud that were asserted, or could have been asserted, against BNYM in the Ambac Action, the Whitebox Actions or the Interpleader Action, and BNYM shall retain and shall not be enjoined or otherwise barred from pursuing, any and all claims and causes of action and asserting any rights and defenses against Ambac and Whitebox arising from or related to the Bond Resolution.

33. 34. **Injunction on Claims**. Except as otherwise expressly provided in Section 30.11 of the Plan, this Order or such other Final Order of the Title III Court that may be applicable, all Entities who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 30.2 of the Plan or who have held, hold or may hold Claims or any other debt or liability that is discharged or released pursuant to Section 30.2 of the Plan are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing, directly or indirectly, in any manner, any action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) of any kind on any such Claim or other debt or liability that is discharged pursuant to the Plan against any of the Released Parties or any of their respective assets or property, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, (c) creating, perfecting, or enforcing any encumbrance of any kind against any of the Released Parties or any of their respective assets or property on account of any Claim or other debt or liability that is discharged pursuant to the Plan, and (d) except to the extent provided, permitted or preserved by sections 553, 555, 556, 559, or 560 of the Bankruptcy Code or pursuant to the common law right of recoupment, asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from any of the Released Parties or any of their respective assets or property, with respect to any such Claim or other debt or liability that is discharged pursuant to the Plan. Such injunction shall extend to all successors and assigns of the Released Parties and their respective assets and property.

34. ~~35.~~ **Injunction Related to Releases**.  **As of the Effective Date, all Entities that hold, have held, or may hold a Released Claim that is released pursuant to Section 30.5 of the Plan, are, and shall be, permanently, forever and completely stayed, restrained, prohibited, barred and enjoined from taking any of the following actions, whether directly or indirectly, derivatively or otherwise, on account of or based on the subject matter of such discharged Released Claims:   (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding (including, without limitation, any judicial, arbitral, administrative or other proceeding) in any forum; (ii) enforcing, attaching (including, without limitation any prejudgment attachment), collecting, or in any way seeking to recover any judgment, award, decree, or other order; (iii) creating, perfecting or in any way enforcing in any matter, directly or indirectly, any Lien; (iv) setting off, seeking reimbursement or contributions from, or subrogation against, or otherwise recouping in any manner, directly or indirectly, any amount against any liability or obligation owed to any Entity released under Section 30.5 of the Plan; and (v) commencing or continuing in any manner, in any place of any judicial, arbitration or administrative proceeding in any forum, that does not comply with or its inconsistent with the provisions of the Plan or this Order.**

35. ~~36.~~ Exculpation.

(a) <u>Government Parties</u>:   The Oversight Board, the Commonwealth, AAFAF, COFINA, the Commonwealth Agent Releasees, and each of their respective Related Persons, solely acting in its capacity as such at any time up to and including the Effective Date <u>(or such later date as necessary to implement any post-Effective Date transactions contemplated by the Plan)</u>, shall not have or incur any liability to any Entity for any act taken or omitted to be taken

in connection with the Title III Case, the formulation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transactions set forth in the Plan and the Settlement Agreement; provided, however, that the foregoing provisions of this subparagraph and Section 30.7(a) of the Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.  Nothing in the foregoing provisions of this subparagraph and Section 30.7(a) of the Plan shall prejudice the right of any of the Government Parties, and the Government Parties' officers and directors serving at any time up to and including the Effective Date, and each of their respective professionals to assert reliance upon advice of counsel as a defense with respect to their duties and responsibilities under the Plan. The Commonwealth Agent Releasees shall be deemed to be a "Released Party" pursuant to the Plan and the release and exculpation provisions contained in Section 30.7(a) of the Plan shall be deemed to apply to the Commonwealth Agent Releasees.

(b)     Monoline Insurers:  Each of Ambac, Assured and National and their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken consistent with the Plan in connection with the formulation, preparation, dissemination, implementation, acceptance, confirmation or approval of the Plan, including, without limitation, in connection with the structure of the Trusts, commutation, the treatment of Senior COFINA Bond Claims (Ambac), the treatment of Junior COFINA Bond Claims (Assured), the treatment of Senior COFINA Bond Claims (National Election), the voting procedures, the election

procedures, and any release of obligations under the applicable Insurance Policies; provided, however, that, notwithstanding anything contained herein or the Plan to the contrary, the terms and provisions of the Plan and this Order shall not, and shall not be construed to, release or exculpate: (1) except as otherwise set forth in the Ambac Trust agreement, with respect to any beneficial holder of the Ambac Insured Bonds that receives Ambac Certificates in accordance with the Plan, any claim against Ambac with respect to Ambac's payment obligations under the Ambac Insurance Policy (which claim shall only be asserted by the trustee of the Ambac Trust), as adjusted to account for any distributions from the Ambac Trust (and any subrogation claims that Ambac may have pursuant to the terms of the Ambac Insurance Policy and any other claims or defenses that Ambac may have against a beneficial holder of such Ambac Insured Bonds with respect to Ambac's obligations under the Ambac Insurance Policy); (2) except as otherwise set forth in the National Trust agreement, with respect to any beneficial holder of National Insured Bonds that received National Certificates in accordance with the Plan, any claim against National with respect to National's obligations under the National Insurance Policies (which claim shall be asserted in accordance with the terms of the National Insurance Policies), as adjusted to account for any distributions from the National Trust (and any subrogation claims that National may have pursuant to the terms of the National Insurance Policies or other claims that National may have against a beneficial holder of such National Insured Bonds with respect to National's obligations to such beneficial holder under the National Insurance Policies); or (3) with respect to any beneficial holder of Assured Insured Bonds, any payment obligation under the applicable Assured Insurance Policy in accordance with its terms solely to the extent of any failure by Assured to pay the applicable Acceleration Price in full (or any claims that Assured

may have against a beneficial holder of Assured Insured Bonds with respect to Assured's obligations under the Assured Insurance Policies).

(c)     <u>PSA Creditors and Bonistas</u>:  Each of the PSA Creditors and Bonistas, solely in its capacity as a party to the Plan Support Agreement and a Creditor, as applicable, from the Petition Date up to and including the Effective Date and each of their respective Related Persons shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the formation, preparation, dissemination, implementation, confirmation or approval of the Plan or any compromises or settlements contained therein, the Disclosure Statement, the Settlement Agreement, or any contract, instrument, release or other agreement or document provided for or contemplated in connection with the consummation of the transaction set forth in the Plan and the Settlement Agreement; <u>provided</u>, <u>however</u>, that the foregoing provisions of this subparagraph and Section 30.7(c) of the Plan shall not affect the liability of any Entity that otherwise would result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted intentional fraud or willful misconduct.

(d)     <u>Agents</u>:  Each of the COFINA Agent and the Commonwealth Agent, each solely in its capacity as agent of the Oversight Board to litigate and/or settle the Commonwealth-COFINA Dispute, respectively, shall not have or incur any liability to any Entity for any act taken or omitted to be taken in connection with the Title III Case, the Commonwealth-COFINA Dispute, including, without limitation, the Commonwealth-COFINA Dispute Order, the Adversary Proceeding, the Commonwealth-COFINA Dispute Settlement, the Settlement Agreement, the Settlement Motion and the Settlement Order.

36.   37. Appointments Related Litigation.  Notwithstanding anything contained herein or the Plan to the contrary, in the event that a Final Order is entered in connection with the Appointments Related Litigation subsequent to entry of the Settlement Order and this Order, in consideration of the distributions made, to be made, or deemed to be made in accordance with the terms and provisions of the Plan and documents and instruments related hereto, and all Creditors or such other Entities receiving, or deemed to have received, distributions pursuant to or as a result of the Plan or this Order having consented and agreed, such Final Order shall not in any way or manner reverse, affect or otherwise modify the transactions contemplated in the Plan, the Settlement Agreement, this Order and the Settlement Order, including, without limitation, the compromise and settlement of the Commonwealth-COFINA Dispute and the releases, exculpations and injunctions provided pursuant to Article XXX of the Plan and herein.

**37.   38. Bar Order.  To the limited extent provided in the Plan, each and every Entity is permanently enjoined, barred and restrained from instituting, prosecuting, pursuing or litigating in any manner any and all claims, demands, rights, liabilities, or causes of action of any and every kind, character or nature whatsoever, in law or in equity, known or unknown, direct or derivative, whether asserted or unasserted, against any of the Released Parties, based upon, related to, or arising out of or in connection with any of the Released Claims, confirmation and consummation of the Plan, the negotiation and consummation of the Settlement Agreement, or any claim, act, fact, transaction, occurrence, statement or omission in connection with or alleged or that could have been alleged in the Related Actions, including, without limitation, any such claim, demand, right, liability or cause of action for indemnification, contribution, or any other basis in law or equity for damages, costs or fees incurred arising directly or indirectly from or**

otherwise relating to the Related Actions, either directly or indirectly by any Person for the direct or indirect benefit of any Released Party arising from or related to the claims, acts, facts, transactions, occurrences, statements or omissions that are, could have been or may be alleged in the Related Actions or any other action brought or that might be brought by, through, on behalf of, or for the benefit of any of the Released Parties (whether arising under federal, state or foreign law, and regardless of where asserted).

38.   39. **Supplemental Injunction**.  Notwithstanding anything contained herein or in the Plan to the contrary, except to the limited extent provided in the Plan,[4] all Entities, including Entities acting on their behalf, who currently hold or assert, have held or asserted, or may hold or assert, any Released Claims against any of the Released Parties based upon, attributable to, arising out of or relating to any Claim against COFINA, whenever and wherever arising or asserted, whether in the U.S. or anywhere else in the world, whether sounding in tort, contract, warranty, statute, or any other theory of law, equity or otherwise, shall be, and shall be deemed to be, permanently stayed, restrained and enjoined from taking any action against any of the Released Parties for the purpose of directly or indirectly collecting, recovering or receiving any payment or recovery with respect to any Released Claims arising prior to the Effective Date (including prior to the Petition Date), including, but not limited to:

(a)   Commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Released Claim against any of the Released Parties or the assets or property of any Released Party;

(b)   Enforcing, attaching, collecting or recovering, by any manner or means, any judgment, award, decree or order against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

[4]   For the avoidance of doubt, no Claims or Causes of Action held by the Commonwealth with respect to the issuance of the Existing Securities shall be discharged, released, or enjoined pursuant to this Order or the Plan (except to the limited extent that such Claims or Causes of Action are discharged or released pursuant to Paragraphs 7, 29, 30, 31, 35 of this Order or Sections 2.1, 30.2, 30.5, 30.7 of the Plan).

(c)     Creating, perfecting or enforcing any Lien of any kind against any of the Released Parties or the assets or property of any Released Party with respect to any such Released Claim;

(d)     Except as otherwise expressly provided in the Plan, this Order, or the Settlement Agreement, asserting, implementing or effectuating any setoff, right of subrogation, indemnity, contribution or recoupment of any kind against any obligation due to any of the Released Parties or against the property of any Released Party with respect to any such Released Claim; and

(e)     Taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Plan, this Order, or the Settlement Agreement relating to such Released Claim; provided, however, that the Debtors' compliance with the formal requirements of Bankruptcy Rule 3016 shall not constitute an admission that the Plan provides for any injunction against conduct not otherwise enjoined under the Bankruptcy Code.

39.     40. COFINA Agent and Commonwealth Agent Releases and Exculpation.  On the Effective Date, to the fullest extent permissible under applicable law, the COFINA Agent Releasees and the Commonwealth Agent Releasees shall be released from liability for all Claims and Causes of Action (as if such Causes of Action were against the COFINA Agent Releasees or the Commonwealth Agent Releasees, as applicable) with respect to the Adversary Proceeding and the Plan.

40.     41. Term of Existing Injunctions or Stays.  Unless otherwise provided in the Plan or this Order, all injunctions or stays in effect in the Title III Case (pursuant to sections 105, 362, or 922 of the Bankruptcy Code or any order of the Title III Court) and existing on the Confirmation Date (excluding any injunctions or stays contained in the Plan or this Order) shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

41.     42. Prosecution of Claims.  Except as settled and released herein, from and after the Effective Date, Reorganized COFINA shall have the exclusive right and power to litigate any Claim or Cause of Action that constituted an Asset of COFINA, including, without limitation,

any Avoidance Action, and any other Cause of Action, right to payment, or Claim that may be

pending on the Effective Date or instituted by COFINA or Reorganized COFINA thereafter, to a

Final Order, and may compromise and settle such claims, without approval of the Court.

42.    43. Indemnification and Reimbursement Obligations.  For purposes of the Plan,

(i) to the extent executory in nature, the obligations of COFINA, including, without limitation,

directors and officers insurance policies, to indemnify and reimburse its directors or officers that

were directors or officers, respectively, on or prior to the Petition Date shall be deemed assumed

as of the Effective Date and (ii) indemnification obligations of COFINA arising from conduct of

officers and directors during the period from and after the Petition Date shall be Administrative

Expense Claims.

43.    44. Compliance with Tax Requirements.  Any party issuing any instrument or

making any distribution under the Plan shall comply with all applicable withholding and

reporting requirements imposed by any United States federal, state or local tax law or Tax

Authority, and all distributions under the Plan shall be subject to any such withholding or

reporting requirements.  Notwithstanding the above, each holder of an Allowed Claim that is to

receive a distribution under the Plan shall have the sole and exclusive responsibility for the

satisfaction and payment of any Taxes imposed on such holder by any governmental unit,

including income, withholding and other tax obligations, on account of such distribution.  Any

party issuing any instrument or making any distribution under the Plan has the right, but not the

obligation, to not make a distribution until such holder has made arrangements satisfactory to

such issuing or disbursing party for payment of any such withholding tax obligations and, if any

party issuing any instrument or making any distribution under the Plan fails to withhold with

respect to any such holder's distribution, and is later held liable for the amount of such

withholding, the holder shall reimburse such party.  The Disbursing Agent or the trustee of the

applicable Trust may require, as a condition to the receipt of a distribution (including the

applicable trust certificates), that the holder complete the appropriate Form W-8 or Form W-9, as

applicable to each holder.  If the holder fails to comply with such a request within one year, such

distribution shall be deemed an Unclaimed Distribution.

44.    45.  Documents and Instruments.  Each federal, state, commonwealth, local,

foreign, or other governmental agency is hereby authorized to accept any and all documents and

instruments necessary or appropriate to effectuate, implement or consummate the transactions

contemplated by the Plan, the Settlement Agreement, and this Order.

45.    46.  Reversal/Stay/Modification/Vacatur of Order.  Except as otherwise provided

in this Order, if any or all of the provisions of this Order are hereafter reversed, modified,

vacated, or stayed by subsequent order of this Court, or any other court, such reversal, stay,

modification, or vacatur shall not affect the validity or enforceability of any act, obligation,

indebtedness, liability, priority, or lien incurred or undertaken by COFINA or Reorganized

COFINA, as applicable, prior to the effective date of such reversal, stay, modification, or

vacatur.  Notwithstanding any such reversal, stay, modification, or vacatur of this Order, any

such act or obligation incurred or undertaken pursuant to, or in reliance on, this Order prior to

the effective date of such reversal, stay, modification, or vacatur shall be governed in all respect

by the provisions of this Order, the Settlement Agreement, and the Plan.  To the extent not

specifically reversed, modified, vacated, or stayed by an order of this Court, all existing orders

entered in this Title III Case remain in full force and effect.

46.    47.  Retention of Jurisdiction.  Notwithstanding the entry of this Order or the

occurrence of the Effective Date, subject to the terms and provisions of Article XXIX of the

Plan, and except as otherwise provided in the Plan or herein, pursuant to sections 105, 945(a), and 1142(b) of the Bankruptcy Code, this Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Title III Case to the fullest extent as is legally permissible, including, but not limited to, jurisdiction over the matters set forth in Article XXIX of the Plan.

47.    48. Conflicts Among Order, Plan, and Settlement Order.  The provisions of the Plan, this Order, and the Settlement Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however that, in the event of any inconsistency between the Settlement Order, the Plan or this Order, the documents shall control in the following order of priority: (i) the Settlement Order, (ii) this Order, and (iii) the Plan; and, provided, further, that, in the event of any inconsistency between this Order and any other order in the COFINA Title III Case, and Commonwealth Title III Case, the Adversary Proceeding, or the Interpleader Action, the terms and provisions of this Order shall control; and, provided, further, that nothing contained herein is intended, nor shall be construed, to modify the economic terms of the Plan.

48.    49. Collective Action.  No "Holder" (as defined in the New Bond Indenture) of any of the COFINA Bonds or COFINA Parity Bonds or both (solely in its capacity as a Holder of such bonds) shall have any right to institute any suit, action or proceeding in equity or at law for the execution of any trust under the New Bond Indenture or otherwise, or for any other remedy under the New Bond Indenture or otherwise, in each case unless such Holder shall have complied with Section 11.07 of the New Bond Indenture (as may be amended from time to time in accordance with the terms and provisions thereof); provided, that, notwithstanding the foregoing, such Holder shall have the right which is absolute and unconditional to receive

payment of the principal of (and premium, if any) and interest on such COFINA Bond or

COFINA Parity Bond on the stated maturity expressed in such bond (or, in the case of

redemption, on the redemption date or, in the case of interest, on the interest payment date on

which such interest is due) and to institute suit for the enforcement of any such payment, and

such right shall not be impaired without the consent of such Holder.

49.    50. Modifications.  Without need for further order or authorization of the Court

and subject to any limitations set forth in the Plan (including consent rights) and any stipulation

approved by this Court in connection with the Plan, the Oversight Board is authorized and

empowered to make any and all modifications to the Plan.

50.    51. Provisions of Plan and Order Nonseverable and Mutually Dependent.  The

provisions of the Plan and this Order, including the findings of fact and conclusions of law set

forth in the Findings of Fact and Conclusions of Law, are nonseverable and mutually dependent.

51.    52. Governing Law.  Except to the extent that other federal law is applicable, or to

the extent that an exhibit to the Plan or any document to be entered into in connection with the

Plan provides otherwise, the rights, duties, and obligations arising under the Plan shall be

governed by, and construed and enforced in accordance with, PROMESA (including the

provisions of the Bankruptcy Code made applicable under section 301 of PROMESA) and, to the

extent not inconsistent therewith, the laws of the Commonwealth of Puerto Rico giving effect to

principles of conflicts of laws.

52.    53. Applicable Nonbankruptcy Law.  Pursuant to section 1123(a) of the

Bankruptcy Code, as applicable to the COFINA Title III Case pursuant to PROMESA section

301(a), the provisions of this Order, and the Plan and related documents or any amendments or

modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable

nonbankruptcy law.  The documents contained in the Amended Plan Supplement  (as such documents may be further modified and filed with the Court prior to the Effective Date), including, without limitation, Reorganized COFINA By-Laws, the COFINA Bonds, the New Bond Indenture, the Instructions Agreement, the Ambac Trust Agreement, the National Trust Agreement, the Standard Terms to National Trust Agreement, the Remarketing Agreement, and the Continuing Disclosure Agreement provide adequate means for implementation of the Plan pursuant to Section 1123(a)(5) of the Bankruptcy Code, and, as of the occurrence of the Effective Date, shall constitute valid legal obligations of COFINA and the Commonwealth, as applicable, and valid provisions to pay to secure payment of the COFINA Bonds pursuant to section 944(b)(3) of the Bankruptcy Code, and be enforceable in accordance with their terms.

53.    54. Non-Effect on Other Actions.  For the avoidance of doubt, nothing in the Plan or in this Order shall release, discharge, enjoin, provide exculpation with respect to, or otherwise affect, any claim, cause of action, or litigation not directly related to COFINA, including, without limitation, (i) Adversary Proceeding No. 18-0059-LTS in Case No. 17 BK 3283-LTS (D.P.R.), (ii) Adversary Proceeding No. 17-155-LTS in Case No. 17 BK 3283-LTS (D.P.R.), (iii) Adversary Proceeding No. 17-156-LTS in Case No. 17 BK-3567-LTS (D.P.R.), (iv) Adversary Proceeding No. 18-87 in Case NO. 17 BK 3283-LTS (D.P.R.), (v) Case No. 18-1165 (1st Cir.); (vi) Case No. 18-1166 (1st Cir.); (vii) Case No. 18-1746 (1st Cir) and (viii) except as provided herein, the Appointments Related Litigation.

54.    55. Use of Commonwealth Funds.  Except as expressly set forth in the Plan Support Agreement, certain parties thereto reserve their right, if any, to contest in the Commonwealth Title III Case the Commonwealth's (a) use, or direction of the use, of monies

received by the Commonwealth or to be received by the Commonwealth and (b) deposit or other use, or direction of the use, of such monies.

55. 56. Waiver of Filings.  Any requirement pursuant to Bankruptcy Rule 1007 obligating the Debtor to file any list, schedule, or statement with the Court or the Office of the U.S. Trustee  is hereby waived as to any such list, schedule, or statement not filed as of the Effective Date.

56. 57. Notice of Order.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the Effective Date, the Debtor shall serve notice of the entry of this Order and the occurrence of the Effective Date, substantially in the form attached as Exhibit B hereto, to all parties who hold a Claim in the COFINA Title III Case, as well as the Creditors' Committee, the U.S. Trustee, any party filing a notice pursuant to Bankruptcy Rule 2002, the Securities and Exchange Commission, the Internal Revenue Service, and the United States Attorney for the District of Puerto Rico.  Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Order.

57. 58. Waiver of Stay.  The stay of this Order otherwise imposed by Bankruptcy Rule 3020(e) is hereby waived as of the date hereof.

58. 59. No Waiver.  The failure to specifically include any particular provision of the Plan in this Order will not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

Dated: January ___, 2019
    San Juan, Puerto Rico                    _____
                                            Laura Taylor Swain
                                           United States District Court Judge

**<u>Exhibit A</u>**

**Plan**

**<u>Exhibit B</u>**

**Form of Notice**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                            Debtors.[3][5] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>                            Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

## NOTICE OF (A) ENTRY OF ORDER CONFIRMING
## THE THIRD AMENDED TITLE III PLAN OF ADJUSTMENT OF

[3]  The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[5]   The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**PUERTO RICO SALES TAX FINANCING CORPORATION PURSUANT TO
TITLE III OF PROMESA AND (B) OCCURRENCE OF THE EFFECTIVE DATE**

**TO CREDITORS AND OTHER PARTIES IN INTEREST:**

PLEASE TAKE NOTICE that, pursuant to an order, dated January ___, 2019 (the "Confirmation Order"), the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation Pursuant to Title III of PROMESA (as modified, the "Plan"), of the Puerto Rico Sales Tax Financing Corporation ("COFINA") was confirmed by the United States District Court for the District of Puerto Rico (the "Court"). Unless otherwise defined in this Notice, capitalized terms used herein shall have the meanings ascribed to them in the Plan and the Confirmation Order.

PLEASE TAKE FURTHER NOTICE that the Effective Date of the Plan occurred on [____], 2019 and the Plan was substantially consummated.

PLEASE TAKE FURTHER NOTICE that any party in interest wishing to obtain copies of the Confirmation Order, the Plan, and related documents should contact Prime Clerk LLC, by telephone at (844) 822-9231 (toll free for U.S. and Puerto Rico) or (646) 486-7944 (for international callers), available 10:00 a.m. to 7:00 p.m. (Atlantic Standard Time) (Spanish available), or by email at puertoricoballots@primeclerk.com, or may view such documents by accessing either https://cases.primeclerk.com/puertorico/ or the Court's website, https://www.prd.uscourts.gov/. Please note that a Public Access to Court Electronic Records ("PACER") (http://www.pacer.psc.uscourts.gov) password and login are needed to access documents on the Court's website.

PLEASE TAKE FURTHER NOTICE that, pursuant to Section 1.6 and Article III of the Plan and decretal paragraph ——26 of the Confirmation Order, the deadline for filing proofs of or requests for payment of Administrative Expense Claims ("Administrative Expense Requests") is [____], 2019; provided, however, that no proof of Administrative Expense Claim shall be required to be filed if such Administrative Expense Claim shall have been incurred (i) in accordance with an order of the Court or (ii) with the written consent of COFINA; and, provided, further, that, in accordance with section 503(b)(1)(D) of the Bankruptcy Code, applicable herein pursuant to Section 301 of PROMESA, no governmental unit, including, without limitation, the IRS, shall be required to file a proof of Administrative Expense Claim by such date; and, provided, further, that any such proof of Administrative Expense Claim by a governmental unit shall remain subject to the rights and interest of COFINA and Reorganized COFINA, as the case may be, and any other party in interest to interpose an objection or other defense to the allowance or payment thereof. All Administrative Expense Requests should be sent to the following:

[_____]

Administrative Expense Requests will be deemed timely filed only if **actually received** by Prime Clerk by **5:00 p.m. (prevailing Atlantic Time)** on [____], 2019 (the "Administrative Deadline"). The Administrative Expense Requests may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**PLEASE TAKE FURTHER NOTICE that, if you are required to file an Administrative Expense Request pursuant to Section 1.6 and Article III of the Plan and decretal paragraph ──26 of the Confirmation Order and fail to do so by the Administrative Deadline, you will be forever barred, estopped, and enjoined from asserting such Administrative Expense Claim (and from filing an Administrative Expense Request with respect to such Administrative Expense Claim) against COFINA and its property, and COFINA and Reorganized COFINA will be forever discharged from any and all indebtedness or liability with respect to such Administrative Expense Claim.**

PLEASE TAKE FURTHER NOTICE that, pursuant to Section 18.6 of the Plan and decretal paragraph ──15 of the Confirmation Order, if the rejection of an Executory Contract and Unexpired Lease by the Debtor results in damages to the other party or parties to such contract or lease, any claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against COFINA, or its properties or agents, successors, or assigns, including, without limitation, Reorganized COFINA, unless a proof of Claim is filed with the Court on or before thirty (30) days after the later to occur of (i) the Confirmation Date, and (ii) the date of entry of an order by the Court authorizing rejection of a particular Executory Contract and Unexpired Lease.

PLEASE TAKE FURTHER NOTICE that the Confirmation Order is full, final, and complete, conclusive and binding upon and shall not be subject to collateral attack or other challenge in any court or other forum by (i) COFINA, (ii) Reorganized COFINA, (iii) the Commonwealth, (iv) each person or entity asserting claims or other rights against COFINA, the Commonwealth or any of its other instrumentalities, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of bonds issued by COFINA, the Commonwealth, or any of its other instrumentalities with respect to any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that received or holds funds related to such bonds, whether or not such claim or other rights of such person or entity are impaired pursuant to the Plan or this order and, if impaired, whether or not such person or entity accepted or rejected the Plan, (v) any other person, and (vi) each of the foregoing's respective heirs, successors assigns, trustees, executors, administrators, officers, directors, agents, representative, attorneys, beneficiaries or guardians.

Dated: _____, 2019          /s/ _____ _____
        San Juan, Puerto Rico

                                            Martin J. Bienenstock (*pro hac vice*)
                                            Brian S. Rosen (*pro hac vice*)
                                            Jeffrey W. Levitan (*pro hac vice*)
                                            Chris Theodoridis (*pro hac vice*)
                                            **PROSKAUER ROSE LLP**
                                            Eleven Times Square
                                            New York, NY 10036
                                            Tel:  (212) 969-3000
                                            Fax:  (212) 969-2900

                                            *Attorneys for the Financial Oversight and*

*Management Board as representative for the Debtor*

/s/ _____ _____ _____

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for the Debtor*

4