**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al*.,<br><br>                           Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>                           Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>**This Pleading Relates Only to COFINA and Shall be Filed in Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS** |

**RESPONSE OF FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD TO AMICUS CURIAE BRIEF
OF POPULAR DEMOCRATIC PARTY CAUCUS OF THE PUERTO RICO SENATE**

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the Puerto Rico Sales Tax Financing Corporation ("COFINA") in its Title III Case, pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*,[2] submits this response (the "Response") to the *Tendered Legal Brief as Amicus Curiae Popular Democratic Party Caucus of the Puerto Rico Senate (Against an Order of Plan*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

1

*Confirmation Containing Finds of Fact and Law that Sanction Legislative Entrenchment)* [ECF No. 520-1][3] (the "Amicus Curiae Brief").

## BACKGROUND

1. On January 9, 2019, COFINA filed the *Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 436] (the "Plan").[4]

2. On January 16 and 17, 2019, the Court held a hearing (the "Hearing") to consider, among other things, confirmation of the Plan. In response to the Court's instructions at the Hearing, on January 21, 2019, COFINA filed a second revised form of proposed (i) *Findings of Fact and Conclusions of Law Regarding Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 521-1] (the "Proposed Findings of Fact and Conclusions of Law"), and (ii) *Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 521-2] (the "Proposed Order").

3. On January 22, 2019, the Court entered the *Order Granting Motion for Leave to File Legal Brief as Amicus Curiae Popular Democratic Party Caucus of the Puerto Rico Senate* [ECF No. 528], directing the Oversight Board to file this Response to the Amicus Curiae Brief.

## RESPONSE

4. The Popular Democratic Party ("PDP") Caucus mischaracterizes the New Bond Legislation and Confirmation Order, claiming that such legislation and order seek to "impermissibly restrict the ability of a successor" Puerto Rico Legislative Assembly to exercise taxing, spending, and police powers. *See* Amicus Curiae Brief at 4. More specifically, the PDP Caucus asserts that certain covenants included in the New Bond Legislation to protect the

---

[3] Unless otherwise noted, all ECF entries are to Case Number 17-bk-3284.
[4] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Plan.

bondholders' rights in the COFINA Pledged Taxes impermissibly prohibit future legislatures from amending or repealing the New Bond Legislation. *See id.* at 3–5, 8–9. This is inaccurate. To be clear, nothing being requested of the Court in the Proposed Findings of Fact and Conclusions of Law and Proposed Order is intended to preclude any future legislature from enacting or modifying any statute within its purview, though there could be consequences from such actions, namely, potential claims arising in favor of bondholders.

5. The New Bond Legislation quiets title to the COFINA Pledged Taxes by confirming COFINA's ownership of the COFINA Portion and granting the holders of newly issued bonds a statutory lien "on all of [COFINA's] right, title and interest in and to" the COFINA Pledged Taxes. New Bond Legislation, arts. 2.2, 3.2. The New Bond Legislation also includes covenants that the Commonwealth will refrain from (a) impairing COFINA's or the bondholders' rights in the Pledged Taxes, (b) reducing the Pledged Taxes unless certain agreed upon conditions have been satisfied, and (c) amending the New Bond Legislation to impair or modify "any obligation or commitment of [COFINA] or the [bondholders]." *Id.* art. 3.3. Act 91-2006, as amended, included covenants establishing similar parameters for amending the legislation. *See* 13 L.P.R.A. § 14(c).

6. Rather than prevent future members of the Legislative Assembly from amending the legislation pursuant to a valid exercise of police powers, the New Bond Legislation specifically contemplates the possibility of future alterations consistent with the sovereign's taxing power. The New Bond Legislation expressly reserves the power of future lawmakers to modify their sales and use tax regime, through reduction in the sales tax or a wholesale change in the nature of the tax. For example, the Legislative Assembly is permitted to "reduce the Pledged Taxes to a rate less than five and one-half percent (5.5%)." *Id.* art. 3.3(b). The Legislative

3

Assembly is "not preclude[d]" from "exercising its power, through a change in the law" to "replace the portion of the Sales Tax that corresponds to a tax rate of five and one half (5.5) percent with Substituted Collateral." *Id.* art. 3.3(e).

7. And while the New Bond Legislation sets forth procedures that are to be met prior to any amendments being effective,[5] such procedures are designed to insulate and protect the Commonwealth and COFINA from future litigation. In other words, the Commonwealth is free to exercise its sovereign prerogatives, but if it does so in a manner inconsistent with the adequate protection covenants there may be potential liability for violating the Takings Clause of the U.S. and Puerto Rico Constitutions.[6] Accordingly, the procedures provide clarity as to the means by which the Legislative Assembly may exercise its taxing power without impairing COFINA's (and its bondholders') interests and subjecting the Commonwealth to potential claims.

8. The PDP Caucus's argument that granting a statutory lien is "an impermissible legislative entrenchment" is similarly unavailing. *See* Amicus Curiae Brief at 6–7. The PDP Caucus contends that the statutory lien unlawfully surrenders the Legislative Assembly's taxing and spending power by requiring that the Legislative Assembly "invoke its eminent domain powers . . . in order to amend or repeal the New Bond Legislation." *Id.* A statutory lien is a common tool of municipal finance recognized in basically every jurisdiction and by the Bankruptcy Code. The statutory lien creates a property interest in favor of the bondholders. It does not place any restraint on the Legislative Assembly's power.

---

[5] For instance, in order to reduce the Pledged Taxes to a rate of less than 5.5%, a credit rating requirement must be satisfied. New Bond Legislation art. 3.3(b). Similarly, if the Pledged Tax is reduced below 3% or replaced entirely, the New Bond Legislation's Substitution Requirements must be met. *Id.* art. 3.3(b), (e).

[6] See paragraph 25, footnote 15 of the *Supplemental Brief of Plan Support Parties in Support of Proposed Findings of Fact and Conclusions of Law and Order Confirming Third Amended Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (the "Supplemental Brief"), filed contemporaneously herewith, for specific references to the New Bond Legislation and a discussion of the non-impairment covenant. The terms and provisions of the New Bond Legislation are neither novel nor problematic. *See* Supplemental Brief ¶ 26.

4

9. The PDP Caucus also asserts that the New Bond Legislation surrenders future legislatures' taxing and spending power by designating COFINA Portion for satisfaction of liabilities on the new COFINA bonds. *See* Amicus Curiae Brief at 5. This contention is without merit. In enacting the New Bond Legislation, the Legislative Assembly properly exercised its constitutional power to designate revenues (here, the COFINA Portion) for a legitimate public purpose (to be transferred to COFINA in order for COFINA to fully satisfy and discharge potential judicial liabilities of the Commonwealth and COFINA by issuing new non-recourse bonds). As noted in paragraphs 22 and 23 of the Supplemental Brief, there is ample legal authority for the proposition that issuing bonds backed by tax revenues does not impair a legislature's taxing power.

10. Likewise, the New Bond Legislation's declaration that COFINA Portion "do not constitute 'available resources' or 'available revenues' of the Government of Puerto Rico as used in Section 8 of Article VI of the Puerto Rico Constitution" is lawful. New Bond Legislation, art. 2.2(e). Contrary to the PDP Caucus's argument (*see* Amicus Curiae Brief at 5, n. 6, 8), Article 2.2(e) is a valid exercise of the Legislative Assembly's authority to transfer revenues and designate how such revenues will be classified under Puerto Rico law. Moreover, this provision is critical to the Commonwealth-COFINA Dispute Settlement. The issue of whether sales and use taxes pledged to COFINA constituted available resources of the Commonwealth was a key issue in the Commonwealth-COFINA litigation. Without a provision making clear that the COFINA Portion are not subject to Article VI, Section 8 of the Puerto Rico Constitution, the COFINA parties would have never agreed to the Settlement and the Plan would not exist. Absent Article 2.2(e), the Commonwealth, COFINA, and their stakeholders would be locked in a "loser gets nothing" resolution to the dispute with potentially disastrous outcomes for each constituency.

5

11. Finally, the PDP Caucus argues that the Confirmation Order should not include findings that the New Bond Legislation is valid and constitutional. *See* Amicus Curiae Brief at 7–10. In particular, the PDP Caucus asks that the Court not issue an order finding that the New Bond Legislation is "binding" or "precluding subsequent attacks (including by the Commonwealth itself) regarding [the New Bond Legislation's] constitutionality." *Id.* at 8. These findings are the bedrock of the Plan and Settlement.[7] If granted, the PDP Caucus's request would undermine the finality of the Confirmation Order, leaving all parties under cloud of uncertainty. The Plan and Settlement would be of little value if a future government or creditor were free to lodge collateral attacks against the New Bond Legislation.

12. Contrary to the PDP Caucus's contentions, the Court can making findings as to the New Bond Legislation's validity and constitutionality. Pursuant to section 944(b)(3), the Court can determine that "any security" to be distributed under the plan "will constitute, after distribution, a valid legal obligation of the debtor" and "that any provision made to pay or secure payment of such obligation is valid." The New Bond Legislation authorizes the payment of the COFINA Bonds, designates revenues to be used for that purpose, and protects the bondholders' rights to payment by granting a statutory lien on COFINA's right, title, and interest to the COFINA Pledged Taxes. Thus, the Court has the authority to determine the validity of the New Bond Legislation as a "provision made to pay or secure payment" of the COFINA Bonds.

---

[7] See Jan. 17 H'g Tr. 118:1-17 [Counsel for the COFINA Agent] ("[T]he foundation to the settlement, with certainty—and in fact, Mr. Despins could testify to that because, as he knows, it was originally in the settlement agreement that the settlement would not be approved unless we actually had that level of certainty from this Court that we would not create new debt that would find its way back before the Court to another Title III proceeding. It was a foundation of the settlement. It ultimately migrated to go into the Plan, but obviously the foundation of the Plan is the settlement, and the foundation of the settlement is the need for certainty. If this Court is not persuaded by Mr. Kirpalani, as I think it should be, then frankly, I think we ought to be revisiting all of this, because the economic split was based on an understanding that we would not be back before Your Honor or any other court and have to deal with these issues five, ten, 20 years out. This was a one-and-done situation.").

13. The Court should determine that the New Bond Legislation is valid because under Puerto Rico law legislation is presumed to be valid if enacted by the Legislative Assembly of Puerto Rico and signed into law by the Governor. *See* Proposed Findings of Fact and Conclusions of Law at 119 (citing cases). Here, the New Bond Legislation was enacted by the Legislative Assembly and signed into law by Governor Rosselló, and thus is presumed valid. No objector presented any evidence—either in their written objections or at the Confirmation Hearing—regarding the passage and enactment of the New Bond Legislation, and thus the presumption of validity has not been rebutted as required by Puerto Rico law.

*[Remainder of page intentionally left blank]*


Dated: January 24, 2019        Respectfully submitted,
     San Juan, Puerto Rico

                                                    */s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Chris Theodoridis (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as representative for COFINA*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as representative for COFINA*

8

**CERTIFICATE OF SERVICE**

  I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.

              /s/ *Hermann D. Bauer*
              Hermann D. Bauer