**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| *In re:* <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.*, <br><br> Debtors.[1] | PROMESA <br> Title III <br><br> Case No. 17-03283 (LTS) <br><br> (Jointly Administered) |
| *In re:* <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> PUERTO RICO SALES TAX FINANCING CORPORATIN ("COFINA"), <br><br> Debtor. | PROMESA <br> Title III <br><br> Case No. 17-03284 (LTS) |

**INFORMATIVE MOTION OF NATIONAL PUBLIC FINANCE
GUARANTEE CORPORATION IN SUPPORT OF COFINA PLAN OF ADJUSTMENT**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

National Public Finance Guarantee Corporation ("National") by and through its undersigned counsel, files this statement in support of the *Second Revised Proposed (i) Findings of Fact and Conclusions of Law Regarding Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, and (ii) Order and Judgment Confirming the Third Amended Title III Plan* [Docket No. 4846 in Case No. 17-3283] (the "Proposed Findings of Fact and Confirmation Order")[2] and in response to the Court's *Order Regarding Supplemental Briefing in Support of COFINA Plan of Adjustment* [Docket No. 4860 in Case No. 17-3283] (the "Supplemental Brief Order").[3]

1. National, along with COFINA and its other creditors, gave up extremely valuable rights to reach the settlements embodied in the Settlement Agreement and the Plan. National did not exchange these rights for nothing. The Commonwealth made binding commitments to COFINA and COFINA creditors as part of these settlements. In return, the Commonwealth received, among other things, 46.35% of the disputed sales and use tax revenue and a release of certain claims.

2. According to *amicus curiae* the Popular Democratic Party Caucus,[4] the Commonwealth's commitments—and the settlements that depend on them—are all illusory. The

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Proposed Findings of Fact and Confirmation Order.

[3] National submits this Informative Motion solely to address the question presented in item (c) of the Supplemental Brief Order. This Informative Motion is intended to supplement the briefing submitted by the Oversight Board, AAFAF, the Senior Coalition, and Ambac, and National is supportive of the positions taken by the parties in those supplemental submissions.

[4] *See Tendered Legal Brief of Amicus Curiae Popular Democratic Party Caucus of the Puerto Rico Senate (Against an Order of Plan Confirmation Containing Findings of Fact and Law that Sanction Legislative Entrenchment)* [Docket No. 520 in Case No. 17-3284] (the "**Amicus**").

2

Commonwealth can always change its mind, *amicus* says, by repealing or amending the New Bond Legislation that gives COFINA creditors the benefit of their bargain.

3. But governments can, and regularly do, commit themselves to future conduct in order to settle litigation. Judicial decrees embodying those agreements bind governmental parties, just like they bind private litigants.[5] So do Bankruptcy Rule 9019 settlements and plans of adjustment that embody settlements with governmental debtors. The discretion to act that litigants enjoy *before* settling claims can be limited by the terms of the parties' settlement, and a federal decree adopting those terms can be enforced against governmental or private parties.

4. As a general matter, outside the strictures of a settlement agreement or judicial decree, it is true that legislatures can amend previously enacted legislation. But even that leeway is sometimes constrained. When a state statute assumes contractual obligations and confers property rights, as the New Bond Legislation does, any future modification of the statute must conform to the Contracts Clause and the Takings Clause.[6]

5. When a government commits itself to future conduct to settle litigation, as it has done here, its discretion is restricted even further. The government cannot unilaterally opt out of its settlement obligations or override a federal order merely by enacting new legislation. *See Hook v. State of Ariz.*, 907 F.Supp. 1326, 1342 (D. Ariz. 1995) ("Essentially, the [state] Defendants suggest that the legislature of the State of Arizona be given the power to require a federal court to modify or 'harmonize' its orders to comply with the Arizona state law.... Even the Congress of the

---

[5] *See, e.g.*, *Stone v. City & County of San Francisco,* 968 F.2d 850, 861 n. 20 (9th Cir.1992) ("When the [governmental] defendants chose to consent to a judgment, rather than have the District Court adjudicate the merits of the plaintiffs' claims, the result was a fully enforceable federal judgment that overrides any conflicting state law or state court order.").

[6] *See U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 18 (1977) (invalidating legislative amendment under the Contract Clause).

3

United States lacks the power which the Arizona state legislature would enrobe itself.").[7] If it were otherwise, the government's commitments would be empty and no rational litigant would surrender claims in exchange for them. The government's entry into binding settlement agreements is not "fraught with evil." Amicus, p.13. It is how governments efficiently and practically dispose of an enormous number of lawsuits that are asserted against them.

6. The proposed Plan of Adjustment in this case appropriately binds the parties, whether governmental or private, to the terms of the settlement, and the Proposed Findings of Fact and Confirmation Order are necessary to give the settlements the binding effect intended by the parties. As *amicus* notes, the Proposed Findings prohibit a later Legislative Assembly from unilaterally altering the essential terms of the settlement agreement by legislation. But there is nothing remarkable about this prohibition. PROMESA confers upon this Court original and exclusive jurisdiction over the Title III cases of the Commonwealth and COFINA, with the statutory authority to approve settlements under Rule 9019 of the Federal Rules of Bankruptcy Procedure and confirm a plan of adjustment pursuant to section 314 of PROMESA. To do so, the Court must determine and declare the substantive validity of the New Bond Legislation and bind the settling parties to their respective obligations.

7. There are narrow circumstances in which a federal decree *cannot* restrict future legislative acts; if the restriction is not central to the purposes of an agreement and the state has

---

[7] *See also U.S. ex rel. Anti-Discrimination Ctr. of Metro New York, Inc. v. Westchester Cty.*, N.Y., 712 F.3d 761, 771 (2d Cir. 2013) (holding that county violated judicial decree embodying settlement by failing to promote "source of income legislation," and explaining that the "decree is binding on successor public officials."); *Newman v. Graddick*, 740 F.2d 1513, 1517–18 (11th Cir. 1984) ("The successor state officials, upon taking office, became parties to this suit and to the . . . decree through automatic substitution and stand in the shoes of their predecessors."); *Delaware Valley Citizens' Council for Clean Air v. Com. of Pa.*, 678 F.2d 470, 472 (3d Cir. 1982) ("the Commonwealth itself was and remains bound by the" settlement and the decree giving effect to it); *Carty v. DeJongh*, No. CIV. 94-78, 2007 WL 817607, at *25 (D.V.I. Feb. 27, 2007) ("[F]ederal courts repeatedly have struck down similar efforts by state officials to nullify their responsibilities under" judicial decrees embodying settlements).

4

not clearly indicated its assent to the restriction, then legislative authority is preserved. *See Doe v. Pataki*, 481 F.3d 69, 79 (2007) ("[T]he State cannot be held to have surrendered . . . its authority to amend its statutes *unless the decree clearly indicates that intention*.") (emphasis added). These circumstances are not present here. Notably, the Commonwealth agreed to the settlement terms, assisted in the prosecution of the Settlement Motion and the Plan, and enacted the New Bond Legislation, which provided in its Statement of Motives:

> The Commonwealth's and COFINA's various stakeholders sought an orderly process to resolve the disputes relating to COFINA and the ownership of the SUT (collectively, the "Commonwealth-COFINA Dispute"). To that end, on August 10, 2017, the Title III Court entered a stipulation and order appointing the Commonwealth's Official Committee of Unsecured Creditors to act as agent for the Oversight Board in its capacity as representative of the Commonwealth (the "Commonwealth Agent") and Bettina M. Whyte to act as agent for the Oversight Board in its capacity as representative of COFINA (the "COFINA Agent") in an effort to facilitate a settlement of the Commonwealth-COFINA Dispute.
>
> On June 5, 2018, the Commonwealth Agent and the COFINA Agent announced that they had reached an agreement in principle to resolve the Commonwealth-COFINA Dispute (the "Agreement in Principle"). The Agreement in Principle was premised on splitting the fixed amount of the SUT transferred to COFINA each fiscal year (the "PSTBA") between the Commonwealth and COFINA beginning in fiscal year 2019, with COFINA receiving 53.65% of the yearly scheduled PSTBA and the Commonwealth receiving 46.35% of the yearly scheduled PSTBA plus all other revenues collected on account of the SUT.
>
> Consistent with the public policy implemented by the Governor of Puerto Rico, the Fiscal Agency and Financial Advisory Authority, the Oversight Board, and various creditors and insurers of COFINA bonds executed a plan support agreement (as amended and restated on September 21, 2018, the "Plan Support Agreement"), which incorporates the Agreement in Principle's PSTBA split and provides for the settlement of the Commonwealth-COFINA Dispute pursuant to a plan of adjustment for COFINA under Title III of PROMESA (the "COFINA Plan").
>
> ***The Legislative Assembly is now called upon to implement the agreement by and among the parties of the Commonwealth-COFINA Dispute by amending the provisions of Act No. 91, which created COFINA and authorized it to issue bonds***.

Statement of Motives, Commonwealth of P.R., Cámara de Representantes, Referido a la Comisión de Hacienda, Presupuesto y de la Supervisión, Administración y Estabilidad Económica de Puerto

Rico, "PROMESA", P. de la C. 1837, 4ta. Sesión Ordinaria (2018). The Commonwealth's intent be bound is unmistakable and its commitments are essential to the parties' agreement.

8. These commitments, when embodied in a federal decree, are not conditioned on the whim and caprice of future electoral majorities. If they were, then litigants would not settle claims with governmental parties. More to the point, if Puerto Rico and its instrumentalities cannot make binding commitments to pay creditors in the future in order to settle claims in these Title III cases, then the mediators may as well hang up their hats and go home.

9. Accordingly, National submits that this Court has ample authority to enter the Proposed Findings of Fact and Confirmation Order.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico, this 24th day of January, 2019.

**WE HEREBY CERTIFY** that on this same date a true and exact copy of this motion was filed with the Clerk of Court using the CM/ECF system, which will notify a copy to counsel of record. Also, copy of this document will be notified via electronic mail to all case participants.

| | |
|---|---|
| **ADSUAR MUÑIZ GOYCO<br>SEDA & PÉREZ-OCHOA, PSC**<br>208 Ponce de León Avenue, Suite 1600<br>San Juan, PR 00936<br>Telephone: 787.756.9000<br>Facsimile: 787.756.9010<br>Email:  epo@amgprlaw.com<br>          loliver@amgprlaw.com<br>          acasellas@amgprlaw.com<br>          larroyo@amgprlaw.com<br><br>By:   */s/ Eric Pérez-Ochoa*<br>Eric Pérez-Ochoa<br>USDC-PR No. 206314<br><br>*/s/ Luis Oliver-Fraticelli*<br>Luis Oliver-Fraticelli<br>USDC-PR No. 209204<br><br>*/s/ Alexandra Casellas-Cabrera*<br>Alexandra Casellas-Cabrera<br>USDC-PR No. 301010<br><br>*/s/ Lourdes Arroyo-Portela*<br>Lourdes Arroyo Portela<br>USDC-PR No. 226501 | **WEIL, GOTSHAL & MANGES LLP**<br>Marcia Goldstein (admitted *pro hac vice*)<br>Kelly DiBlasi (admitted *pro hac vice*)<br>Gabriel A. Morgan (admitted *pro hac vice*)<br>Jonathan Polkes (admitted *pro hac vice*)<br>Gregory Silbert (admitted *pro hac vice*)<br>Jared R. Friedmann (admitted *pro hac vice*)<br><br>767 Fifth Avenue<br>New York, New York 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br>Email: marcia.goldstein@weil.com<br>           kelly.diblasi@weil.com<br>           gabriel.morgan@weil.com<br>           jonathan.polkes@weil.com<br>           gregory.silbert@weil.com<br>           jared.friedman@weil.com |