UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                      Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>                      Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

**AMBAC ASSURANCE CORPORATION'S STATEMENT CONCERNING THE COURT'S AUTHORITY TO DETERMINE AND DECLARE THE VALIDITY OF THE NEW BOND LEGISLATION**

Ambac Assurance Corporation ("Ambac") respectfully submits this statement in response to the Court's *Order Regarding Supplemental Briefing in Support of COFINA Plan of Adjustment* (Dkt. No. 4860, the "Supplemental Briefing Order"), which called for supplemental briefing on

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

certain issues from "the proponents of confirmation." Although Ambac is not a plan proponent, it is a PSA Creditor[2] and strongly believes that the plan of adjustment proposed by the Oversight Board presents a critical step forward in furthering PROMESA's aims of restoring fiscal responsibility and access to the capital markets. *See* 48 U.S.C. 2121(a). In that regard, Ambac wishes to address sub-topic (c) of the Supplemental Briefing Order, which concerns the Court's "authority to determine and declare the substantive validity of the New Bond Legislation and to resolve, based on the proposed settlement of the Commonwealth-COFINA dispute, the constitutional and other legal challenges to the COFINA structure raised under the Constitution of the Commonwealth of Puerto Rico in the manner set forth in the proposed findings and conclusions." (Dkt. No. 4860 at 2.) As set forth below, the Court plainly has such authority under Section 314 of PROMESA, and in the exercise of its inherent powers in adjudicating the Commonwealth/COFINA Dispute. Accordingly, there is no impediment to the Court making findings of fact and conclusions of law concerning the validity of the New Bond Legislation— findings and conclusions that are central to Ambac's support for the Plan.[3]

1. PROMESA expressly contemplates that, in deciding whether to confirm a proposed plan of adjustment, the Court will evaluate and determine the validity of Commonwealth law to the extent that law is necessary to effectuate the proposed plan. By design, PROMESA is a mixed legal regime: While the question whether to confirm a plan is ultimately a federal one, the determination cannot be made without drawing legal conclusions on matters of Commonwealth law, including the New Bond Legislation at issue here.

---

[2] All defined terms not otherwise defined herein are as defined in the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation (Dkt. No. 436, 17-bk-3284, the "Plan").

[3] In the interest of avoiding duplicative briefing, Ambac leaves it to the plan proponents to address the substantive merits of the constitutional and other legal challenges to the COFINA structure alluded to in sub-topic (c) of the Supplemental Briefing Order. This statement is limited to the question of the Court's authority to determine and declare the substantive validity of the New Bond Legislation.

2. Section 314 of PROMESA governs the Court's consideration of whether to confirm a plan of adjustment. 48 U.S.C. § 2174. At least two provisions of Section 314 demonstrate that Congress not only authorized the Court to determine the substantive validity of Puerto Rico legislation in confirming a plan, but affirmatively *required* that it do so.

3. First, Section 314(b)(5) provides that "[t]he court shall confirm the plan if . . . any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained . . . ." 48 U.S.C. § 2174(b)(3). The New Bond Legislation is necessary to carry out the Plan and therefore subject to Section 314(b)(5). By way of example, the New Bond Legislation creates a new public corporation ("Reorganized COFINA") (art. 2.1); transfers all ownership interests and rights to 53.65% of the PSTBA to that corporation (art. 2.2); authorizes the corporation to issue plan of adjustment bonds (art. 3.1); funds the corporation to enable repayment of the plan of adjustment bonds (art. 4.1); and much more. Inherent in the determination of whether necessary legislation "has been obtained" is the determination of whether that legislation is valid. If Section 314(b)(5) only required the Court to confirm that the legislation in question had been passed—rather than requiring it to determine whether the legislation was *validly* passed under applicable law, and is not subject to immediate legal attack—Section 314(b)(5) would utterly fail to effectuate its purpose: to ensure that a confirmed plan cannot subsequently be undone for failure to obtain requisite legislative or other legal authorization. That protection would be a dead letter if the Court were powerless to determine and declare the substantive validity of the New Bond Legislation.

4. Notably, Section 314(b)(5) substantively differs from its Chapter 9 cognate, Section 943(b)(6) of the Bankruptcy Code, in only one respect: Section 314(b)(5) includes consideration of "legislative" approvals, not just "regulatory" or "electoral" approvals, as is the case in Section

3

943(b)(6). This distinction makes clear that in passing PROMESA (pursuant to the Territories Clause of the U.S. Constitution), Congress consciously considered that a plan could be predicated on new legislation, and required the Court, as a condition to confirmation, to scrutinize Commonwealth legislative activity. In so doing, Congress recognized Puerto Rico's mixed sovereign status and put squarely in this Court's jurisdiction the ability to review and confirm the validity of Commonwealth law in the context of plan confirmation.

5. Section 314(b)(3) provides an independent basis for the same conclusion. Section 314(b)(3) provides that "[t]he court shall confirm the plan if . . . the debtor is not prohibited by law from taking any action necessary to carry out the plan." *Id.* § 2174(b)(3). The New Bond Legislation is a predicate necessary "to carry out the plan"; as noted above, many of the central features of the Plan could not occur in the absence of the legislation. If the Court cannot determine and declare the substantive validity of the New Bond Legislation, then the Court will be unable to conclude—as PROMESA requires for a plan to be confirmed—that Reorganized COFINA is legally able to take all actions necessary under the Plan, such that the Plan does not require conduct that is prohibited by law. Moreover, the New Bond Legislation itself is required to carry out the Plan; the Plan affirmatively requires that legislation. (*See* Dkt. No. 436, 17-bk-3284, § 1.132 (defining "New Bond Legislation" as "legislation to be enacted on or prior to the Effective Date authorizing the transactions contemplated by, and consistent with, the Plan"); § 25.1(e) (enactment of New Bond Legislation is condition precedent to effective date). For this additional reason, if the Court cannot pass on the New Bond Legislation's validity, then it cannot comport with its obligation under Section 314(b)(3).) Accordingly, Section 314(b)(3) mandates that in evaluating whether the statutory conditions to confirmation have been satisfied, the Court determine and declare the substantive validity of the New Bond Legislation.

6. Finally, the Court has independent authority to pass on the substantive validity of the New Bond Legislation because the Court unquestionably had authority to do so with respect to the prior legislation that was the subject of the Commonwealth/COFINA Dispute. Legal questions implicated by the challenge to the underlying validity of the prior COFINA legislation were extensively briefed and argued by numerous parties in summary judgment proceedings pursuant to a Court-ordered protocol governing the Commonwealth/COFINA Dispute. (Dkt. No. 996, 17-bk-3283.) That protocol provided that any settlement would be filed with the Court and effected through a plan of adjustment. (*Id.* ¶¶ 4(i), 4(l).) The Court subsequently re-confirmed its dominion over the matter by denying certain creditors' requests that the issues of Puerto Rico law be certified to the Puerto Rico Supreme Court. (Dkt. No. 483, 17-bk-3283.)

7. Any legal questions raised by the New Bond Legislation are no different from the same underlying validity questions relating to ownership and alienation of sales-and-use tax revenues that were at issue in the prior legislation and litigated in the Commonwealth/COFINA Dispute. Of course, in settlement, the New Bond Legislation was clarified to avoid prior textual ambiguities that gave rise to that litigation, subject to review and approval by the Oversight Board pursuant to Section 204(a) of PROMESA. *See* 48 U.S.C. § 2144(a). *A fortiori*, the Court clearly has authority to declare the validity of a law that was passed for the very purpose of effectuating a settlement of the same dispute.

8. In sum, the Court's authority to determine and declare the substantive validity of the New Bond Legislation is clear both from the text of Section 314 of PROMESA as well as the Court's inherent powers in overseeing the adversary proceeding in which challenges to the validity of predecessor legislation were fully briefed, argued, and presented to the Court for resolution. The findings of fact and conclusions of law concerning the New Bond Legislation are an essential

centerpiece of the Plan—without them, creditors would effectively be compromising their legal rights without any assurance that the benefits of the compromise will be respected and upheld. Accordingly, Ambac respectfully submits that the Court should confirm the Plan, inclusive of the provisions concerning the New Bond Legislation, and that there is no question of the Court's authority to do so.

Dated: January 24, 2019
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK, TWEED, HADLEY & McCLOY LLP**

By: /s/ *Dennis F. Dunne*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
28 Liberty Street
New York, NY 10005
Telephone: (212) 530-5770
Facsimile: (212) 822-5770
Email: ddunne@milbank.com
aleblanc@milbank.com
amiller@milbank.com
gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*