# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.* | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This Pleading Relates Only to COFINA and Shall be Filed in Case No. 17 BK 3283-LTS and in Case No. 17 BK 3284-LTS |

## SUPPLEMENTAL BRIEF OF PLAN SUPPORT PARTIES IN SUPPORT OF PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND ORDER CONFIRMING THIRD AMENDED PLAN OF ADJUSTMENT OF PUERTO RICO SALES TAX FINANCING CORPORATION

---

\* The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

ARGUMENT ....................................................................................................................... 1

I.  COFINA (INCLUDING REORGANIZED COFINA AS OF THE EFFECTIVE DATE) IS A
VALID, SEPARATE, AND INDEPENDENT CORPORATION AND INSTRUMENTALITY ................. 2

II.  UPON THE EFFECTIVE DATE, THE PLAN SUPPLEMENT DOCUMENTS WILL
CONSTITUTE VALID LEGAL DOCUMENTS THAT WILL BE ENFORCEABLE IN
ACCORDANCE WITH THEIR TERMS ........................................................................................ 5

III.  THE NEW BOND LEGISLATION IS VALID AND CONSTITUTIONAL ......................................... 9

IV.  BASED ON THE PROPOSED SETTLEMENT OF THE COMMONWEALTH-COFINA
DISPUTE, THE COURT HAS THE AUTHORITY TO RESOLVE THE CONSTITUTIONAL
AND OTHER LEGAL CHALLENGES TO THE COFINA STRUCTURE ......................................... 22

## **TABLE OF AUTHORITIES**

### **Cases**

*Asociación De Empleados Gerenciales De La Corporación Del Fondo Del Seguro Del Estado v. Corporacion Del Fondo Del Seguro Del Estato,*
2015 WL 4075649 (P.R. 2015) ...................................................................................15

*Boston Milk Producers Inc. v. Halperin,*
446 A.2d 33 (Me. 1982) ...........................................................................................16

*Caquías v. Asoc. de Residentes de Mansiones de Río Piedras,*
134 D.P.R. 181 (P.R. 1993) ......................................................................................14

*In re City of Detroit,*
524 B.R. 147 (Bankr. E.D. Mich. 2014)......................................................................9

*Commoloco of Caguas, Inc. v. Benítez Díaz,*
126 D.P.R. 478 (P.R. 1990) ........................................................................................3

*Commonwealth of Puerto Rico v. Northwestern Selecta, Inc.,*
185 D.P.R. 40 (P.R. 2012) ........................................................................................14

*Davies v. City of Minneapolis,*
316 N.W.2d 498 (Minn. 1982) ..................................................................................19

*In re Fin. Oversight & Mgmt. Bd. for P.R.,*
590 B.R. 577 (D.P.R. 2018) ..................................................................................7, 14

*Fresenius Med. Care v. P.R. Caribbean Cardiovascular,*
322 F.3d 56, 65 (1st Cir. 2003) ..................................................................................4

*Getty Petroleum Mktg., Inc. v. Capital Terminal Co.,*
391 F.3d 312 (1st Cir. 2004) ......................................................................................7

*Grajales v. P.R. Ports Authority,*
831 F.3d 11, 17 (1st Cir. 2016) ..................................................................................4

*In re Gulfmark Offshore, Inc.,*
2017 Bankr. LEXIS 3999 (Bankr. D. Del. Oct. 4, 2017) ............................................5

*Gutierrez v. A.A.A.,*
167 D.P.R. 130 (P.R. 2006) ........................................................................................4

*Hajoca Corp. v. Clayton,*
178 S.E.2d 481 (N.C. 1971) .....................................................................................16

*Huron-Clinton Metro. Auth. v. Bds. of Supervisors,*
1 N.W.2d 430 (Mich. 1942) ................................................................................16, 17

*Int. Devs. v. Mun. de San Juan,*
177 D.P.R. 693 (2009)...........................................................................................................15

*In re Jetstar Partners, Ltd.,*
2013 WL 365111 (Bankr. N.D. Tex. Jan. 29, 2013) .............................................................5

*Kurrus v. Priest,*
29 S.W.3d 669 (Ark. 2000) ..................................................................................................19

*Lamar v. Micou,*
114 U.S. 218 (1885) ...............................................................................................................7

*Liter v. City of Baton Rouge,*
245 So. 2d 398, 402, 405-06 (La. 1959)...............................................................................16

*Louisiana ex rel. Hubert v. New Orleans,*
215 U.S. 170 (1909) .............................................................................................................18

*Lozada Tirado v. Testigos Jehovás,*
177 D.P.R. 893 (P.R. 2010)..................................................................................................14

*Lyes v. City of Riviera Beach, Fla.,*
166 F.3d 1332 (11th Cir. 1999), *judgment entered,* 169 F.3d 1322 (11th Cir. 1999)...............2

*P.R. Tel. Co. v. Sec. of Treasury,*
81 D.P.R. 982 (1960)....................................................................................................3, 5, 15

*Pierce Cty. v. Washington,*
148 P.3d 1002 (Wash. 2006) ................................................................................................19

*Rodríguez Román v. Banco Gubernamental de Fomento para Puerto Rico,*
151 D.P.R. 383 (P.R. 2000)....................................................................................................3

*Royal Caribbean Corp. v Puerto Rico Ports Authority,*
973 F.2d 8, 11 (1st Cir. 1992) ................................................................................................4

*Saratoga Harness Racing Ass'n v. Agriculture & N.Y. State Horse Breeding Dev. Fund,*
238 N.E.2d 730 (N.Y. 1968) ................................................................................................16

*State v. State Toll Bridge Auth.,*
82 S.E.2d 626 (Ga. 1954) .....................................................................................................19

*Switzer v. City of Phoenix,*
341 P.2d 427 (Ariz. 1959) ....................................................................................................16

*Telefonica Larga Distancia de Puerto Rico, Inc. v. Departamento de Hacienda,*
No. KCO97-0021, 2001 WL 1764054 (P.R. Nov. 26, 2001)................................................15

iii

*U.S. Tr. Co. of New York v. New Jersey*,
   431 U.S. 1 (1977) ...................................................................................................18

*Von Hoffman v. City of Quincy*,
   71 U.S. 535 (1866) .................................................................................................19

*Ziegler v. Witherspoon*,
   49 N.W.2d 318 (Mich. 1951) ................................................................................16

### Statutory Authorities

11 U.S.C. § 944(b)(3) ..................................................................................6, 11, 20

11 U.S.C. § 1123(a)(5) ....................................................................5, 6, 11, 20, 21

48 U.S.C. § 741 ...................................................................................................12

Puerto Rico Oversight, Management and Economic Stability Act (PROMESA), *codified at* 48
   U.S.C. §§ 2101-2241 ......................................................................................*passim*

### Treatises

1 McQuillin Mun. Corp., § 3:2 (3d ed. 2018) .........................................................2, 6

### Constitutional Provisions

P.R. CONST. art. II, § 19 ........................................................................................3, 18

P.R. CONST. art. VI, § 2 .................................................................................12, 15, 17

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of COFINA in its Title III Case, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the COFINA Senior Bondholders' Coalition (the "Senior Coalition," and collectively with the Oversight Board and AAFAF, the "Plan Support Parties"),[1] by and through their respective undersigned counsel, file this supplemental brief (the "Supplemental Brief") in support of the second revised form of proposed (i) *Findings of Fact and Conclusions of Law Regarding Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (ECF No. 521 in Case No. 17-bk-3284) (the "Proposed Findings of Fact and Conclusions of Law"),[2] and (ii) *Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (ECF No. 521-2) (the "Proposed Order")[3]:

## ARGUMENT

1.        This Court's January 22, 2019 *Order Regarding Supplemental Briefing in Support of COFINA Plan of Adjustment* (ECF No. 527) directed supplemental briefing on three issues: (a) the legal basis for the proposed findings and conclusions regarding the valid establishment of Reorganized COFINA and Reorganized COFINA's status as a separate independent public corporation and instrumentality; (b) factual support for the finding and conclusion that the documents contained in the Plan Supplement constitute valid legal documents and contain valid

---

[1]   Although the Oversight Board was the sole plan proponent, AAFAF and the Senior Coalition join the Oversight Board in this supplemental brief.  Other parties, including parties who provided statements at the Confirmation Hearing, support confirmation of the Plan and entry of the Proposed Findings of Fact and Conclusions of Law.

[2]   Unless otherwise noted, all ECF entries are to Case Number 17-bk-3284.

[3]   Capitalized terms not otherwise defined herein shall have the meanings given to them in the *Third Amended Title III Plan of Adjustment of the Debts of COFINA* (ECF No. 436) (the "Plan").

provisions that are enforceable in accordance with their terms; and (c) the legal and factual bases for the assertions that the Court has authority to determine and declare the substantive validity of the New Bond Legislation, and to resolve, based on the proposed settlement of the Commonwealth-COFINA Dispute, the constitutional and other legal challenges to the COFINA structure raised under the Constitution of the Commonwealth of Puerto Rico (the "Commonwealth Constitution") in the manner set forth in the Proposed Findings of Fact and Conclusions of Law and Proposed Order.  This Supplemental Brief addresses each issue in turn.

I. **COFINA (INCLUDING REORGANIZED COFINA AS OF THE EFFECTIVE DATE) IS A VALID, SEPARATE, AND INDEPENDENT CORPORATION AND INSTRUMENTALITY**

2.      Public corporations are creatures of the state.  *See* 1 McQuillin Mun. Corp. § 3:2 (3d ed. 2018) (*citing*, *among others*, *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332 (11th Cir. 1999), *judgment entered*, 169 F.3d 1322 (11th Cir. 1999)).  State legislatures have inherent power to create public corporations, and to determine their form, powers, and method of existence.  *Id.*  This legislative power has been deemed to be plenary, and a state constitution need not grant, but may restrict, such power.  *Id.*

3.      The Commonwealth Constitution does not limit or restrict the Legislative Assembly's power to create public corporations:  the drafters of the Commonwealth Constitution recognized the Legislative Assembly's power to create public agencies and instrumentalities and to determine their degree of autonomy. [4]   Article II, Section 19 of the Commonwealth Constitution expressly recognizes the Legislative Assembly's power to enact laws and provides

---

[4]   *See Diary of Sessions of the Constituent Convention* 2505 (1952) ("Sr. NEGRON LOPEZ: […] [T]he Legislative Assembly may create public agencies and instrumentalities with such level of autonomy as it may desire. This is the criterion that prevails throughout the constitution, at least with respect to the legislative branch and, as far as we know and interpret, that has been the intention with regards to the other branches of government.") (unofficial translation).

that such power shall not be deemed to be restricted.   P.R. CONST. art. II, § 19.   Such power includes the ability to enact laws creating independent government bodies to perform certain governmental functions.   *See* 1 McQuillin Mun. Corp. § 3:6 ("Subject to constitutional restraints, the legislature may create any kind of corporation it deems essential for the more efficient administration of civil government, and it may confer on it such powers and functions as it deems necessary and proper for the administration of the particular powers that the corporation may be authorized to exercise."); *Rodríguez Román v. Banco Gubernamental de Fomento para Puerto Rico*, 151 D.P.R. 383, 402 (P.R. 2000)[5] ("A public corporation is a governmental creature, whose creation is a function of the needs of the state.") (internal citations omitted) (unofficial translation).

4.      The Legislative Assembly has long exercised this power, creating a number of public corporations, instrumentalities, departments, and agencies.   Its power to do so has been repeatedly recognized by the Puerto Rico Supreme Court.   *See, e.g.*, *id*; *Commoloco of Caguas, Inc. v. Benítez Díaz*, 126 D.P.R. 478 (P.R. 1990) (Kirpalani Decl. Ex. 2).   The Puerto Rico Supreme Court has held that "[i]t is the exclusive power of the legislature to determine what type of organization is best suited for the discharge of a public function.   If the legislature prefers a board to a department or a public corporation to a bureau, that preference, except for constitutional provisions expressly forbidding it, is conclusive for the courts." *P.R. Tel. Co. v. Sec. of Treasury* , 81 D.P.R. 982, 996 (1960) (Kirpalani Decl. Ex. 3 at 966).   Government entities created by the Legislative Assembly have such powers and characteristics, including legal form, as are established in their enabling statutes.   Therefore, in determining the legal nature of a

---

[5]    A certified English translation of this case is attached as Exhibit 1 to the declaration of Susheel Kirpalani ("Kirpalani Decl.") filed concurrently herewith.

government entity, courts look to the language of such entity's enabling statute. *See, e.g.*, *Gutierrez v. A.A.A.*, 167 D.P.R. 130, 140 (P.R. 2006) ("[The Puerto Rico Electric Power Authority] and [The Puerto Rico Aqueduct and Sewer Authority] are public corporations whose legal personality is separate from that of the Government of the Commonwealth of Puerto Rico . . . . Both are defined in their respective enabling acts as autonomous government instrumentalities . . . .").

5.      In dealing with corporate entities created by the Legislative Assembly of Puerto Rico the Court of Appeals for the First Circuit has taken the same position. *Royal Caribbean Corp. v Puerto Rico Ports Authority*, 973 F.2d 8, 11 (1st Cir. 1992) (recognizing public corporation as one with "legal existence and personality separate and apart from those of the Government" and saying that it, not the Government "is liable for payment and interests on its bonds" because its debts are those of the Corporation and not of the Commonwealth). It is precisely the way Puerto Rico structures a separate corporate entity that will receive close scrutiny in deciding whether to extend to said entity Puerto Rico's Eleventh Amendment protection. *Grajales v. P.R. Ports Authority*, 831 F.3d 11, 17 (1st Cir. 2016) (*citing Fresenius Med. Care v. P.R. Caribbean Cardiovascular*, 322 F.3d 56, 65 (1st Cir. 2003)).

6.      COFINA was created in 2007 through the enactment of Act No. 56-2007 ("Act 56"), which amended Act 91-2006 (establishing a segregated fund into which sales tax revenues would be deposited). The Legislative Assembly created COFINA as a "public corporation and instrumentality of the Commonwealth of Puerto Rico . . . which constitutes a corporate and political entity independent and separate from the Commonwealth of Puerto Rico." Act 56 § 1. Therefore, since its creation, COFINA has been a public corporation separate from the Commonwealth. The New Bond Legislation, which becomes effective on the Effective Date

4

of the Plan, does not change COFINA's status as a separate public corporation. To the contrary, the New Bond Legislation adds language emphasizing that COFINA "is and shall be recognized for all purposes as an independent and separate legal entity from the Government of Puerto Rico and any other Government Entity." New Bond Legislation, art. 2.1. Therefore, it is clear from the language of Act 56 and the New Bond Legislation that the Legislative Assembly created COFINA as a separate independent public corporation and instrumentality. That decision is "final to the courts." *P.R. Tel. Co.*, 81 D.P.R. 982 (P.R. 1960) (Kirpalani Decl. Ex. 3).

7.    The Legislative Assembly also carefully addressed in the New Bond Legislation all matters related to COFINA's property, governance, powers, operations, purpose, and activities, (*see id.*, arts. 2.2, 2.3, 2.4, 2.5, 2.6, 2.7); authorized COFINA to issue new securities in accordance with the Plan, (*see id.*, art. 3.1); and provided for the statutory lien securing the new securities, (*see id.*, art. 3.2). In enacting the New Bond Legislation, the Legislative Assembly clearly and unequivocally intended to establish the necessary framework for the implementation of the Plan, which required among other things, that COFINA be an independent public corporation, separate and apart from the Commonwealth and any other government entity.

## II.    UPON THE EFFECTIVE DATE, THE PLAN SUPPLEMENT DOCUMENTS WILL CONSTITUTE VALID LEGAL DOCUMENTS THAT WILL BE ENFORCEABLE IN ACCORDANCE WITH THEIR TERMS

8.    Section 1123(a)(5) of the Bankruptcy Code requires that a plan provide adequate means for its implementation. In complex restructuring cases, the transactions described in the plan are typically implemented through corporate and financial documents ancillary to the plan.[6]

---

[6]    Moreover, bankruptcy courts routinely issue confirmation orders that validate the enforceability of documents contained in the plan supplement. *See, e.g., In re Gulfmark Offshore, Inc.*, 2017 Bankr. LEXIS 3999, *96 (Bankr. D. Del. Oct. 4, 2017) ("Pursuant to section 1123(a) and section 1142(a) of the Bankruptcy Code, the provisions of this Order, the Plan, the Plan Documents, and any other related documents or any amendments or modifications thereto shall apply and be enforceable notwithstanding

The Plan here provides for an Amended Plan Supplement (which, along with the Plan Related Documents, was admitted into evidence as Exhibit DX-H (ECF No. 485-8), to the *Declaration of Natalie A. Jaresko in Support of Confirmation of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (ECF No. 483), (the "Jaresko Declaration"), as further supplemented by ECF No. 509)).  The Plan Supplement includes, without limitation, the Reorganized COFINA Bylaws, the Master Trust Indenture, the First and Second Supplemental Trust Indentures, the Instruction Agreement, the Ambac Trust Agreement, the National Trust Agreement, the Standard Terms to National Trust Agreement, the Remarketing Agreement, and the Continuing Disclosure Agreement for purposes of implementing the Plan pursuant to Section 1123(a)(5) of the Bankruptcy Code.[7]  These documents have been heavily negotiated by the

---

any otherwise applicable nonbankruptcy law."); *In re Jetstar Partners, Ltd.*, 2013 WL 365111, at *8 (Bankr. N.D. Tex. Jan. 29, 2013) ("Pursuant to Bankruptcy Code sections 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan, all Plan Documents and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.").

[7]    Each of these documents plays an important role in implementing the Plan.  For instance, the Instructions Agreement details the exact procedure by which the COFINA Revenues will be collected, promptly segregated, and swiftly deposited with the trustee for payment to bondholders.  *See* Proposed Findings of Fact and Conclusions of Law ¶ 189.  Other documents, meanwhile, authorize the issuance of the new COFINA Bonds.  The Reorganized COFINA Bylaws, for example, provide for Reorganized COFINA's operation and function as an entity independent from the government.  *Id.* ¶¶ 75, 119.  The new bylaws lay out Reorganized COFINA's status as a special purpose entity and authority, and provide the methods by which Reorganized COFINA can act through its board.  The Master Bond Indenture and Supplemental Bond Indentures are contracts between Reorganized COFINA and the trustee, which lay out the protections afforded to bondholders regarding the new COFINA Bonds and the remedies available should COFINA breach any of its obligations.  *Id.* ¶¶ 75, 119.  While the Master Bond Indenture covers all COFINA Bonds generally, the Supplemental Bond Indentures are specific to each COFINA issuance.  The remaining documents are necessary to carry out the insurance trusts or to market the new COFINA Bonds.  For example, the Ambac Trust Agreement, the National Trust Agreement, and the Standard Terms to National Trust Agreement are contracts between Reorganized COFINA and the monoline insurers Ambac and National, respectively.  These documents  detail the relationship going forward between each insurer and that insurer's insured bondholders who elected not to commute their bonds under the Plan.  *Id.* ¶¶ 180, 181.  The Agreement to Remarket between COFINA and Assured Guaranty details the obligation of Reorganized COFINA to remarket Assured's allocation of new COFINA Bonds in a public offering as contemplated by the Plan.  *Id.* ¶ 175.  Finally, the Continuing Disclosure Statement details the material information that Reorganized COFINA must disclose and update on a regular basis to comply with federal securities laws.  This is appropriate because the new

Oversight Board, AAFAF, and the PSA Creditors, and are in substantially final form. *See* Jaresko Declaration at ¶ 47. On the Effective Date, the documents contained in the Plan Supplement will be executed by the parties thereto, and upon execution, will constitute valid and enforceable legal obligations of Reorganized COFINA and the Commonwealth, as applicable, including valid provisions to pay or secure payment of the COFINA Bonds within the meaning of section 944(b)(3) of the Bankruptcy Code.

9.     The validity and enforceability of a public corporation's agreements require due authorization under applicable law. Here, applicable law includes Act 56 and the New Bond Legislation. As an evidentiary matter, the Court may take judicial notice of Act 56 and the New Bond Legislation without plea or proof. *See Getty Petroleum Mktg., Inc. v. Capital Terminal Co.*, 391 F.3d 312, 320 (1st Cir. 2004) ("Generally, in the federal system, '[t]he law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are bound to take judicial notice without plea or proof.'") (quoting *Lamar v. Micou*, 114 U.S. 218, 223 (1885)); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 590 B.R. 577, 590 n.12 (D.P.R. 2018) (citing *Getty* and taking judicial notice of the laws of Puerto Rico). A certified copy of the New Bond Legislation is attached to the Jaresko Declaration as Ex. DX-QQQ (ECF No. 486-2).

10.     For the reasons discussed above, COFINA was duly formed pursuant to Act 56, and the New Bond Legislation strengthens that separate and independent corporate identity. *See, e.g.*, New Bond Legislation, art. 2.1 ("The Corporation, which was created pursuant to the provisions of this Act, is and shall be recognized for all purposes as an independent and separate legal entity from the Government of Puerto Rico and any other Government Entity.").

---

COFINA Bonds will not have the typical "Official Statement" that requires continuing disclosure because they are issued under a plan of adjustment whose disclosure statement does not require continual updates.

11.     Further, representatives for the parties to the various documents comprising the Amended Plan Supplement have the legal authority and capacity to execute the documents on behalf of each respective party and to bind such party to its obligations under the applicable documents.  On the Effective Date, the Plan Supplement documents will:  (i) be executed by an authorized individual for each party to the applicable agreement, and (ii) constitute valid, legal and binding agreements enforceable in accordance with their terms.  With respect to COFINA, the enabling act and corporate governance documents for COFINA (and, from and after the Effective Date, Reorganized COFINA) authorize the corporation to enter into the agreements comprising the Amended Plan Supplement.  *See, e.g.*, New Bond Legislation, art. 2.4.  The powers of the corporation are exercised by its board of directors,[8] (*see, e.g.*, *id.* art. 2.7), who, in turn, will adopt resolutions on or before the Effective Date, in accordance with the corporation's existing bylaws,[9] to authorize the issuance of the new COFINA Bonds.  The resolutions adopted on or before the Effective Date will authorize the directors of the corporation and other specified individuals to take appropriate actions on the corporation's behalf, including executing the various Definitive Documents necessary to implement the Plan.  These documents and actions provide all requisite corporate authority for the corporation's directors and authorized individuals to enter into the agreements comprising the Amended Plan Supplement on behalf of COFINA (and, from and after the Effective Date, Reorganized COFINA).  Accordingly, as of the Effective

---

[8]   The Governor of Puerto Rico has selected three independent directors to serve on the initial board of directors for Reorganized COFINA commencing on the Effective Date.  As set forth in Exhibit L of the Amended Plan Supplement, Governor Rosselló selected Alex Zyngier, Daniel Heimowitz and Richard ("Rick") Kolman.  ECF No. 509, Ex. L.

[9]   A substantially final form of the amended bylaws, which will become effective on the Effective Date, was admitted into evidence as Exhibit D of the Amended Plan Supplement.  *See* Jaresko Decl. Ex. DX-H (ECF No. 485-8).

Date, all requisite corporate actions will have been taken to render the Amended Plan Supplement valid legal documents with provisions that are enforceable in accordance with their terms.

12.     Upon the agreements of the parties reflected in the Plan Supplement documents, each Plan Supplement document contains a choice of law provision (generally, either Puerto Rico law or New York law) and a jurisdiction provision whereby the parties agree to submit any disputes arising out of the agreements to the Title III Court, or to a selected fallback venue in the event the Title III Court determines it does not have jurisdiction over such dispute.  Based upon the foregoing, the Plan Support Parties respectfully request that the Court enter and approve the Proposed Findings of Fact and Conclusions of Law with respect to the Plan Supplement documents.

## III.    THE NEW BOND LEGISLATION IS VALID AND CONSTITUTIONAL

13.     Pursuant to PROMESA, including portions of the Bankruptcy Code incorporated therein, the Court is being asked to declare and determine the New Bond Legislation is a valid and constitutional means for implementing the Plan.  In order to confirm a Title III plan, Section 314 of PROMESA requires that the Court find, *inter alia*, that "(3) the debtor is not prohibited by law from taking any action necessary to carry out the plan," and "(5) any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval."  These particular sections of PROMESA are modeled off of the confirmation requirements of Chapter 9, and, in particular, section 943 of the Bankruptcy Code.  *See, e.g., In re City of Detroit*, 524 B.R. 147, 212 (Bankr. E.D. Mich. 2014) (finding "that the implementation of the City's plan is in conformance with all applicable law, as § 943(b)(4) requires"); *see also id.* at 265 (finding that the plan did not violate the Fourteenth Amendment); *id.* at 276 (finding that

City is not prohibited by law from entering into exit financing).  As set forth herein, these requirements (and the other requirements necessary for confirmation of the Plan) have been satisfied.  First, applicable law does not prohibit COFINA from taking the actions necessary to implement the Plan and, second, the New Bond Legislation has been validly approved in accordance with applicable Commonwealth law.  The Statement of Motives for the New Bond Legislation expressly states that the legislation "will allow for the restructuring of the COFINA debt under Title III of PROMESA, act as a catalyst for other restructurings, setting the stage for Puerto Rico's emergence from bankruptcy, reduce costly litigation, and accelerate termination of the Oversight Board in accordance with PROMESA."  New Bond Legislation, Statement of Motives.

14.     As the Court is aware, Puerto Rico faces staggering liabilities relating to prior administrations' decisions to borrow amounts including COFINA's approximately $18 billion as of the COFINA Petition Date, amounts for which Puerto Rico is alleged to have previously and validly transferred a portion of its sales and use taxes.  Litigation was commenced against COFINA by the Oversight Board on behalf of the Commonwealth, through its Court-authorized Agent, to challenge the validity of COFINA and the claims of its bondholders.

15.     In turn, the Court-authorized Agent of the Oversight Board on behalf of COFINA asserted counterclaims, and COFINA's largest bondholders filed billions of dollars of constitutional claims against the Commonwealth itself,[10] the allowance of which would turn on the determination of ownership of the disputed property among other issues.

16.     The Court has exclusive jurisdiction over all property of the Commonwealth and COFINA under section 306(b) of PROMESA, and the Court previously held that the

---

[10]     Such bondholders allege that these constitutional claims against the Commonwealth are non-dischargeable.

determination of the extent or validity of property of COFINA is a mixed question of federal and state law. *See Memorandum Order,* Adv. Proc. No. 17-00257, ECF No. 483, at 5-6 ("Because federal law issues are thus necessarily bound up in the antecedent question of ownership, the Commonwealth-COFINA Dispute presents a mixed question of federal and Puerto Rico law . . . ."). Pursuant to the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute*, approved by this Court on August 10, 2017 (the "Protocol") (Case No. 17-bk-3283, ECF No. 996), rather than roll the dice on which entity owned the disputed property, the duly authorized Agents negotiated the Agreement in Principle and presented the proposed settlement to the Oversight Board and AAFAF in order to design securities to be issued pursuant to a plan of adjustment. Among other things, the Protocol provided that "**any** resolution of the Commonwealth-COFINA Dispute implemented under a title III plan of adjustment shall be a **final** resolution of **all issues** affecting entitlements of each allowed claim against COFINA to its distributions under the plan, including with respect to the nature, validity, extent and priority of the liens pledged to secure the COFINA bonds, and may resolve all potential claims by holders of COFINA bonds against the Commonwealth." Protocol ¶ 4.m (emphasis added). Thus, pursuant to the Court-ordered Protocol, any settlement of the Commonwealth-COFINA Dispute would require finality as to the entitlements of holders of Existing Securities with no second bites at the apple to once again challenge the COFINA structure or the rights of its bondholders—and the Court would have the authority to grant this.

17.    Having settled the issue of ownership of the disputed property (as well as a host of other issues raised by the parties), COFINA and the Commonwealth also sought to settle the potential liabilities arising from such settlement, including from every holder of Existing Securities in accordance with the Protocol. Such an extraordinary mission of achieving a global

11

settlement can only be done through the collective bankruptcy process granted to Puerto Rico by Congress.  The attainment of such global settlement is the purpose of PROMESA and the function of the Title III Court.  The satisfaction of liabilities and fresh start for Puerto Rico premised on the discharge and release of the two Debtors under a plan of adjustment require the Title III Court to validate the New Bond Legislation as a means for implementation under section 1123(a) of the Bankruptcy Code, and, if payments are to be made over time through the issuance of securities, the Court would need to determine the validity of such securities and the means for securing payment thereon under section 944 of the Bankruptcy Code.  In other words, despite any legislative and corporate steps to be undertaken, without the determination of validity from the Court, the issuance of securities and the underlying resolution of billions of dollars in claims against the Commonwealth and COFINA would not become effective.  The Debtors could theoretically attempt alternative means to satisfy these claims (for example, by making a lump sum payment or through the disposition of assets), but even from a practical perspective, no creditor could be expected to fully and finally release claims in exchange for a new promise of future payment that itself remains subject to future attacks concerning its validity and constitutionality.

18.     Puerto Rico chose to amend the pre-existing COFINA enabling act as the means for implementing the integrated settlements embodied in the Plan.  In so doing, Puerto Rico made a legislative choice on how to finance the repayment of liabilities as part of the judicial settlement.  This is clear from the Statement of Motives of the New Bond Legislation, which states that "[t]he Legislative Assembly is now called upon to implement the agreement by and among the parties of the Commonwealth-COFINA Dispute by amending the provisions of Act No. 91."  The Legislative Assembly chose this method pursuant to its authority over the taxing

12

power and to protect the public credit, areas over which the other branches of government must defer. *See* P.R. CONST. art. VI, § 2 ("The power of the Commonwealth of Puerto Rico to impose and collect taxes . . . shall be exercised as determined by the Legislative Assembly and shall never be surrendered or suspended."); *see also* 48 U.S.C. § 741 (authorizing Puerto Rico, as part of the Federal Relations Act, to issue bonds to protect the public credit). And, pursuant to the Plan, it is the only way the Commonwealth can obtain a full and final release of the massive claims filed by bondholders asserting constitutional violations of property and contractual rights and claims in these Title III Cases.

19.     The Settlement and the Plan "quiet title" to the ownership of property as between the two competing Debtors, but COFINA itself has no taxing power and the Commonwealth Constitution requires that the taxing power be reserved to the Legislative Assembly of the Commonwealth. Thus, the covenants provided by the Commonwealth through the Plan and the New Bond Legislation, by their express terms, serve as adequate protection of the property interests of Reorganized COFINA and the statutory lien in favor of the holders of new COFINA Bonds, and ensure that resolution of the issues is final pursuant to the Protocol. The covenants negotiated between COFINA's creditors and the Commonwealth expressly reserve the power of future lawmakers to modify the sales and use tax regime, through a reduction in the sales tax or a wholesale change in the nature of the tax, while ensuring that such flexibility is exercised in a manner that would not give rise to claims against the Commonwealth under the U.S. and Commonwealth Constitutions. Without the covenants, holders of new COFINA Bonds would never agree to surrender 46.35% of their claimed property. Indeed, absent these covenants and

the property rights acknowledged by the covenants, and, critically, the validation of a federal

court order, the Settlement and the Plan itself would be illusory.[11]

20.     With this backdrop, the Plan Support Parties do not overstate the importance of a

determination that the New Bond Legislation is valid and constitutional.  The Court can make

this determination under applicable law.  As stated in the Proposed Findings of Fact and

Conclusions of Law, legislation is presumed to be valid if enacted by the Legislative Assembly

of Puerto Rico and signed into law by the Governor.  *See* Proposed Findings of Fact and

Conclusions of Law at 119 (citing cases).  Here, the New Bond Legislation was enacted by the

Legislative Assembly and signed into law by Governor Rosselló, and thus is presumed valid.[12]

No objector presented any evidence—either in their written objections or at the Confirmation

Hearing—regarding the passage and enactment of the New Bond Legislation, and thus the

presumption of validity has not been rebutted as required by Puerto Rico law.[13]

---

[11]     *See* Jan. 17 Hr'g Tr. at 118:1-17 [Counsel for the COFINA Agent] ("[T]he foundation to the
settlement, with certainty—and in fact, Mr. Despins could testify to that because, as he knows, it was
originally in the settlement agreement that the settlement would not be approved unless we actually had
that level of certainty from this Court that we would not create new debt that would find its way back
before the Court to another Title III proceeding.  It was a foundation of the settlement.  It ultimately
migrated to go into the Plan, but obviously the foundation of the Plan is the settlement, and the foundation
of the settlement is the need for certainty.  If this Court is not persuaded . . . then frankly, I think we ought
to be revisiting all of this, because the economic split was based on an understanding that we would not
be back before Your Honor or any other court and have to deal with these issues five, ten, 20 years out.
This was a one-and-done situation.").

[12]     *Commonwealth of Puerto Rico v. Northwestern Selecta, Inc.*, 185 D.P.R. 40, 71 (P.R. 2012) ("[E]very
statute is, and is presumed to be constitutional," because "deference [is] due to the Legislative Power in
the exercise of its constitutional mandate, in accordance with the roles assigned to each branch of
government under the separation of powers scheme prescribed in the Constitution."); *Lozada Tirado v.
Testigos Jehová,* 177 D.P.R. 893, 926 (P.R. 2010) ("It is well known that legislative acts enjoy a
presumption of constitutionality."); *Caquías v. Asoc. de Residentes de Mansiones de Río Piedras*, 134
D.P.R. 181, 189 (P.R. 1993) ("[W]e reiterate the traditional rule that laws are, and are presumed to be
constitutional until a court with competent jurisdiction rules otherwise.").

[13]     On January 22, 2019, the GMS Group filed an *Objection of the GMS Group, LLC to Revised
Proposed (I) Findings of Fact and Conclusions of Law Regarding Confirmation of the Third Amended*

21.     Subsequent to the Confirmation Hearing, members of the minority political party in Puerto Rico filed an amicus brief asserting that the New Bond Legislation is invalid and unconstitutional because it "surrender[s] or suspend[s]" the Legislative Assembly's taxing power in violation of Article VI, Section 2 of the Commonwealth Constitution.   The legal position espoused is incorrect as a matter of Puerto Rico law.[14]

22.     In enacting the New Bond Legislation, the Legislative Assembly properly exercised its constitutional power to designate revenues (here, the COFINA Portion of the PSTBA) for a legitimate public purpose (to be transferred to COFINA in order for COFINA to fully satisfy and discharge the potential judicial liabilities of the Commonwealth and COFINA by issuing new non-recourse bonds).   *See, e.g.*, *Int. Devs. v. Mun. de San Juan*, 177 D.P.R. 693,

---

*Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, and (II) Order and Judgment Confirming the Third Amended Title III Plan (Dkt. 4846)* (the "Supplemental GMS Brief") (Case No. 17-bk-3283, ECF No. 4853).   At the Confirmation Hearing, the Court directed the Plan Support Parties to provide additional support for certain paragraphs in the Proposed Findings of Fact and Conclusions of Law and Proposed Order.   *See* Jan. 17 Hr'g Tr. (ECF No. 523) at 139:17-140:14, 182:22-183:21.   The Court did not seek supplemental briefing from any plan opponent, and the GMS Group never requested leave to file such a brief.   Putting aside the procedural impropriety of the Supplemental GMS Brief, it is also irrelevant and should not be granted any weight.   The Supplemental GMS Brief fails to address the specific issues the Court raised with respect to the Proposed Findings of Fact and Conclusions of Law and Proposed Order and does nothing to rebut the presumption of constitutionality of the New Bond Legislation.   Rather than provide any legal arguments or case law to support its supposed arguments, the Supplemental GMS Brief merely rehashes the same objections it made to the Settlement and to the Plan.   These objections not only never focused on or directly challenged the legality of the New Bond Legislation (instead, they alleged that the original COFINA Enabling Act *was* constitutional and enforceable), but they were also legally incorrect, as the Plan Support Parties have previously explained through both their written replies and the arguments made at the Confirmation Hearing.   In particular, GMS's argument ignores all of the other claims raised by the Commonwealth Agent and parties aligned with it that will be released through the Commonwealth-COFINA settlement.

[14]   *See Response of Financial Oversight and Management Board to Amicus Curiae Brief of Popular Democratic Party Caucus of The Puerto Rico Senate*, filed contemporaneously herewith.   This issue was among those issues litigated, and settled, with respect to the original COFINA Enabling Act as part of the Commonwealth-COFINA Dispute.   *See Omnibus Opposition of COFINA Senior Bondholders' Coalition to the Motions for Summary Judgment by the Commonwealth Agent, GO Bondholders, and Retirees Committee*, Adv. Proc. No. 17-00257, ECF No. 355, at 23-24; *see also Term Sheet to Amended and Restated Plan Support Agreement* (ECF No. 371-2, Ex. C) at 1-3, 13, 15-16, 20-24.

703 (2009) (Kirpalani Decl. Ex. 4) (holding that the Legislative Assembly's exercise of its taxing power is constitutional so long as it serves a "public purpose"); *P.R. Tel. Co.*, 81 D.P.R. 982 (P.R. 1960) (Kirpalani Decl. Ex. 3 at 949) (upholding appropriation of tax proceeds for "a specific purpose" instead of being "deposited as general government funds" where the funds were used for a "public purpose"); *Telefonica Larga Distancia de Puerto Rico, Inc. v. Departamento de Hacienda*, No. KCO97-0021, 2001 WL 1764054, at *3 (P.R. Nov. 26, 2001) (upholding a tax allocated to a special fund); *Asociación De Empleados Gerenciales De La Corporación Del Fondo Del Seguro Del Estado v. Corporacion Del Fondo Del Seguro Del Estato*, 2015 WL 4075649, at *15 (P.R. 2015) (upholding constitutionality of economic Puerto Rico law that was enacted to address Puerto Rico's fiscal crisis).

23.     Contrary to the views of dissenting lawmakers in the Legislative Assembly, this action is the *exact opposite* of "surrendering" or "suspending" its authority, and numerous state supreme courts have held as much. *See, e.g.*, *Boston Milk Producers Inc. v. Halperin*, 446 A.2d 33, 38-39 (Me. 1982) (taxing power surrendered only if legislature gave up power to determine the "nature," "form," or "amount" of the tax, or the manner in which the tax is imposed); *Hajoca Corp. v. Clayton*, 178 S.E.2d 481, 485 (N.C. 1971) (finding that there was no surrender of the taxing power to the local counties where "the State of North Carolina . . . has set up the taxing scheme [and] [n]othing is left to the discretion of the county but to apportion the tax money received . . . according to the formula fixed in the Act."); *Saratoga Harness Racing Ass'n v. Agriculture & N.Y. State Horse Breeding Dev. Fund*, 238 N.E.2d 730, 733 (N.Y. 1968) (interpreting the absence of a specific constitutional limitation of the taxing power as permitting the legislature to create special tax revenue streams that are never deposited in the general fund); *Liter v. City of Baton Rouge*, 245 So. 2d 398, 402, 403, 405-06 (La. 1959) (holding that

16

municipal bonds backed by sales tax revenues did not violate the state constitutional provision that the "power of taxation shall be vested in the Legislature [and] shall never be surrendered, suspended or contracted away"); *Switzer v. City of Phoenix*, 341 P.2d 427, 431 (Ariz. 1959) (earmarking motor vehicle taxes for the life of certain bonds did not violate the constitutional "prohibition against the surrender or relinquishment of the right to impose a tax" because "the legislature is not contracting away the right to impose a tax" but rather "has imposed a tax and has simply applied the proceeds of the tax to a particular purpose"); *Ziegler v. Witherspoon*, 49 N.W.2d 318, 328 (Mich. 1951) (finding that the issuance of highway bonds backed by three municipalities' shares of state highway taxes did not violate the constitution's "never be surrendered or suspended" clause because the "legislature has retained full power to increase or decrease the taxes earmarked for the fund" even though "existing taxes earmarked for the state highway fund cannot be decreased to such an extent that the bondholders' security is impaired"); *Huron-Clinton Metro. Auth. v. Bds. of Supervisors*, 1 N.W.2d 430, 436 (Mich. 1942) (holding that the legislature did not "surrender[] or suspend[]" the taxing power when it "delegated to [] a governmental agency the power to determine within a fixed limitation the tax that the local tax officers shall levy and collect for its use" but instead "exercised its inherent power to allocate a given portion of tax moneys to governmental units for their uses").

24. Importantly, the language of Article VI, Section 2 of the Commonwealth Constitution as originally proposed, provided as follows: "The power of the Commonwealth of Puerto Rico to impose and collect taxes and to authorize their *imposition* and collection by municipalities shall be exercised as determined by the Legislative Assembly and shall never be surrendered, suspended *or subject to contract*." *See Diary of Sessions of the Constituent Convention* 2574 (1952) (emphasis added) (Kirpalani Decl. Ex. 5). The official records of the

17

Puerto Rico Constitutional Convention reflect that the phrase "or subject to contract" was eliminated because some of the delegates had concerns that this phrase could be interpreted to prohibit the government from granting tax exemptions and contracting debts through the imposition of special taxes. *See id.* at 2575-76.

25.    In any event, any legislative entrenchment argument with respect to the New Bond Legislation is misplaced. Nothing in the New Bond Legislation prevents future members of the Legislative Assembly from amending the law. To the contrary, the New Bond Legislation specifically contemplates the possibility of future alterations consistent with the sovereign's taxing power. For example, the Legislative Assembly is expressly permitted to "reduce the Pledged Taxes to a rate less than five and one-half percent (5.5%)." New Bond Legislation, art. 3.3(b). It is also "not preclude[d]" from "exercising its power, through a change in law, [to] replace the portion of the Sales Tax that corresponds to a tax rate of five and one half (5.5) percent with Substituted Collateral." *Id.* art. 3.3(e). And while the New Bond Legislation also lays out procedures that are to be met before these amendments and alterations can occur without legal consequence, these procedures insulate and protect the Commonwealth from future litigation. If a future Legislative Assembly determines to exercise its police powers and, for example, pass a law that did not meet the agreed-upon procedures, it could do so but would be subject to the consequences of those actions, including potential claims arising in favor of bondholders. In other words, the Commonwealth is free to exercise its sovereign prerogatives consistent with constitutional protections afforded to private persons contracting with governmental entities.[15] Accordingly, the procedures provide clarity as to the means by which

---

[15]   To be clear, contrary to *amici*'s position, no relief being asked of the Court is intended to preclude any future legislature from enacting or modifying any statute within its purview. Article 3.3(d) of the New Bond Legislation provides that "[t]he Government of Puerto Rico, with the intent of being contractually

the Legislative Assembly may exercise its taxing power without impairing COFINA's (and its bondholders') interests and subjecting itself to potential claims.

26.    Nor are the terms and provisions of the New Bond Legislation novel or problematic.  Those limitations are intended to protect the statutory lien granted in favor of holders of new COFINA Bonds in the event of an unlawful taking of property without just compensation—property that is the cornerstone of a bankruptcy plan approved by a federal court. The contention that a state statute designating future revenues to satisfy liabilities allowed by a federal court in a bankruptcy case, and protecting the statutory lien created thereunder, somehow violates a state constitution's "never surrender" clause is nonsensical.  Indeed, this argument has been rejected by every state supreme court to consider it.   Those courts explain that such parameters are appropriate in order to comply with the Contracts Clause and Takings Clause. *See, e.g.*,  *Von Hoffman v. City of Quincy*, 71 U.S. 535, 554-55 (1866) ("Where a state has authorized a municipal corporation to contract and to exercise the power of local taxation to . . . meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied."); *Pierce Cty. v. Washington*, 148 P.3d 1002, 1015 (Wash. 2006) ("Once having granted certain powers to a municipal corporation, which in turn enters into binding contracts with third parties

---

bound, hereby agrees and covenants" with COFINA and the holders of new COFINA Bonds that it will not, until the new COFINA Bonds are paid in cash in full or otherwise discharged in accordance with their terms, "amend this Act to impair, limit, restrict, rescind, delay or modify any obligation or commitment of the Corporation [*i.e.*, COFINA] to the holders of Plan of Adjustment Bonds [*i.e.*, the new COFINA Bonds]." This is a standard non-impairment covenant within the confines of constitutional protections afforded to private persons contracting with governmental entities. *See, e.g.*, *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 30–31 (1977) ("[A] State is not completely free to consider impairing the obligations of its own contracts on a par with other policy alternatives. Similarly, a State is not free to impose a drastic impairment when an evident and more moderate course would serve its purposes equally well."). Further, the covenant contained in Article 3.3(d) simply reinforces the long-held legal standard of review for the impairment by a governmental entity of its own contract. *Louisiana ex rel. Hubert v. New Orleans*, 215 U.S. 170, 176 (1909).  It does not undermine the Legislative Assembly's prerogatives under Article II, Section 19, of the Puerto Rico Constitution, which states that "[t]he power of the Legislative Assembly to enact laws for the protection of life, health and general welfare of the people shall likewise not be construed restrictively."

19

who have relied on the existence of those powers, the legislature (or here, the electorate) is not free to alter the corporation's ability to perform.") (internal quotation marks omitted); *Kurrus v. Priest*, 29 S.W.3d 669, 676 (Ark. 2000) (explaining that the state's ability to reduce tax revenues did not mean "an entire source of the sales and use tax revenues might be abolished and no longer available to secure the bond indebtedness"); *Davies v. City of Minneapolis*, 316 N.W.2d 498, 503 (Minn. 1982) (rejecting the argument that bondholders would not be impaired by the adoption of a charter amendment, explaining that "[i]f that were the case, a municipality would be able to escape its own contractual obligations with impunity merely by later proposing a city charter amendment to supersede the special legislation which enabled it to act in the first place"); *State v. State Toll Bridge Auth.*, 82 S.E.2d 626, 637 (Ga. 1954) ("Any act of the legislature is subject to repeal by a future legislature, so long as the repealing act does not violate the provisions of the State and Federal Constitutions against laws which impair the obligations of contracts. Until the Authority issues bonds, or vested rights of third persons have intervened, the act creating the Authority can be repealed, but after the bonds are issued and bought, the contract between the State and the bondholders comes into existence, and the limitation on future legislatures . . . is by virtue of the bondholders acquired vested contract rights, and not because of any restriction placed by the legislature in enacting the act. If the argument of the plaintiff were carried to its logical conclusion, the General Assembly could never authorize the making of a contract as to the sale or lease of the property of the State.").

27.     It is necessary and appropriate for the Court to validate the New Bond Legislation and find that it is binding on the Commonwealth and COFINA. Sections 944 and 1123 of the Bankruptcy Code, incorporated into PROMESA via section 301(a), respectively empower the Court to determine (i) the validity of obligations imposed under a plan and of "any provisions

made to pay or secure payment of such obligation" and (ii) that the Plan provides adequate means for the plan's implementation, such as (A) retention by the debtor of all or any part of the property of the estate." 11 U.S.C. §§ 944(b)(3), 1123(a)(5).  The New Bond Legislation, along with the documents contained in the Amended Plan Supplement, are the means for implementation of the Plan, and thus §§ 944 and 1123 are applicable.

28.      The New Bond Legislation, for example, is consistent with section 1123(a)(5) of the Bankruptcy Code by providing a legislative mechanism to carry out the terms of the Plan, including, among other things, for COFINA to retain a portion of the property in dispute (§ 1123(a)(5)(A)), to grant a statutory lien in favor of its bondholders (§ 1123(a)(5)(B), use of COFINA Revenues to pay the new COFINA Bonds (§ 1123(a)(5)(D)), and to satisfy and modify the bondholders' asserted lien (§ 1123(a)(5)(E)).  Further, section 314(b)(6) of PROMESA requires the Court to determine that the Plan is feasible.  If the New Bond Legislation was unlawful, which it is not, COFINA, as a public corporation, would not have the corporate authority to perform its obligations under the Plan, thereby precluding a determination that the Plan is feasible.  Accordingly, these provisions—sections 944 and 1123 of the Bankruptcy Code and section 314(b)(6) of PROMESA, among others— confer the Court with jurisdiction to determine the validity and enforceability of the New Bond Legislation. As discussed above, the New Bond Legislation is presumptively constitutional and valid on its face and is consistent with the U.S. and Puerto Rico Constitutions.  The Commonwealth government, acting through the Governor and the Legislative Assembly, recognized that this Court, through the jurisdiction granted to it under PROMESA (enacted pursuant to the Territories Clause of the U.S. Constitution), could validate and confirm the property interests granted to Reorganized COFINA and the statutory lien granted in favor of the bondholders pursuant to the Plan and New Bond

Legislation.  And to the extent PROMESA section 305 needed to be waived in order to obtain

such an order, the Oversight Board has consented to such action and the Plan expressly requested

the exercise of such jurisdiction.

### IV.  BASED ON THE PROPOSED SETTLEMENT OF THE COMMONWEALTH-COFINA DISPUTE, THE COURT HAS THE AUTHORITY TO RESOLVE THE CONSTITUTIONAL AND OTHER LEGAL CHALLENGES TO THE COFINA STRUCTURE

29.    The foundation of the Commonwealth-COFINA Dispute Settlement—from its

inception with the Agreement in Principle to its embodiment in the Plan—is the antecedent

question of which Debtor is the owner of the sales taxes purported to be transferred to COFINA

by Act 91-2006, as amended, for purposes of these Title III Cases.  As the forum with exclusive

jurisdiction over the property of each Debtor, *see* PROMESA § 306(b), this Court has been

asked to approve the Settlement to resolve that issue.[16]  Upon entry of the Settlement Order, the

Court will have determined that COFINA is the sole owner of 53.65% of the PSTBA (among

other assets).  *See Notice of Filing of Revised Proposed Order Approving Settlement between

Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (Case No. 17-

bk-3283, ECF No. 4816-1, Ex. A at ¶ 3); *see also* Plan § 2.1(a).  Indeed, the Settlement Order

itself provides that the compromise and settlement embodied in  the Settlement Agreement is

approved in all respects and all objections not otherwise withdrawn are overruled in their

entirety.  ECF No. 4816, at ¶¶ 1-2.

30.    Upon that determination, COFINA will be authorized to issue bonds with

recourse to its own assets in accordance with the Plan and the New Bond Legislation.  This

antecedent determination has been the gating issue for COFINA's emergence since the beginning

---

[16]   PROMESA section 305 does not impose any impediment to the Court approving the Settlement since
the Oversight Board has consented to such action and the Plan expressly requested the exercise of such
jurisdiction with respect to the use of COFINA's property.

of these Title III Cases and all subsequent determinations of the validity of COFINA's bonds
will be informed by such determination of property rights.  As a separate, independent, legal
entity, COFINA is not affected by the limitations that may apply to full faith and credit debt
issued by the Commonwealth, with recourse to Commonwealth property.  Consistent with such
an antecedent determination, under the proposed Settlement Order, the Commonwealth, all
creditors of the Commonwealth, and all insurers of debt of the Commonwealth are barred from
bringing or pursuing any and all claims against COFINA in any way related to the COFINA
structure and the COFINA Pledged Taxes up to the COFINA Portion.  *Id.* at ¶ 6.  Accordingly,
consistent with Rule 9019 of the Federal Rules of Bankruptcy Procedure and section 1123(b)(3)
of the Bankruptcy Code, the Court has the authority to approve the Commonwealth-COFINA
Dispute Settlement, including barring any future challenges (including challenges under the
Commonwealth Constitution) to the COFINA structure.[17]

*[Remainder of page intentionally left blank]*

---

[17]    As noted above, in the Protocol, the Court had previously provided that "***any*** resolution of the
Commonwealth-COFINA Dispute implemented under a title III plan of adjustment shall be a ***final***
resolution of ***all issues*** affecting entitlements of each allowed claim against COFINA to its distributions
under the plan, including with respect to the nature, validity, extent and priority of the liens pledged to
secure the COFINA bonds, and may resolve all potential claims by holders of COFINA bonds against the
Commonwealth."  Protocol ¶ 4.m (emphasis added).

Dated: January 24, 2019
       San Juan, Puerto Rico

Respectfully submitted,

/s/ Martin J. Bienenstock

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Chris Theodoridis (*pro hac vice*)
PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and
Management Board as representative for
COFINA*

/s/ Hermann D. Bauer

Hermann D. Bauer
USDC No. 215205
O'NEILL & BORGES LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and
Management Board as representative for
COFINA*

Dated: January 24, 2019
     San Juan, Puerto Rico

<table>
<tr>
<td>

Respectfully submitted,

*/s/ John J. Rapisardi*
John J. Rapisardi
Suzzanne Uhland
Peter Friedman
**O'MELVENY & MYERS LLP**
7 Times Square
New York, NY 10036
Tel: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory Authority*

</td>
<td>

Respectfully submitted,

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and
Financial Advisory Authority*

</td>
</tr>
</table>

DATED:  January 24, 2019

Respectfully submitted,

REICHARD & ESCALERA

By :    */s/ Rafael Escalera*    
**Rafael Escalera**
USDC No. 122609
escalera@reichardescalera.com

**Sylvia M. Arizmendi**
USDC-PR 210714
arizmendis@reichardescalera.com

**Fernando Van Derdys**
USDC-PR 201913
fvander@reichardescalera.com

**Carlos R. Rivera-Ortiz**
USDC-PR 303409
riverac@reichardescalera.com

**Gustavo A. Pabón-Rico**
USDC-PR 231207
pabong@reichardescalera.com

255 Ponce de León Avenue
MCS Plaza, 10th Floor
San Juan, Puerto Rico 00917-1913

QUINN    EMANUEL    URQUHART    &
SULLIVAN, LLP

**Susheel Kirpalani** (*pro hac vice*)
susheelkirpalani@quinnemanuel.com

**Daniel Salinas**
USDC-PR 224006
danielsalinas@quinnemanuel.com

**Eric Kay** (*pro hac vice*)
erickay@quinnemanuel.com

**Kate Scherling** (*pro hac vice*)
katescherling@quinnemanuel.com

**Darren M. Goldman** (*pro hac vice*)
darrengoldman@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1603

*Co-Counsel for the COFINA Senior Bondholders' Coalition*

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel for the parties of record.


/s/ *Hermann D. Bauer*
Hermann D. Bauer