UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

   as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

   Debtors.

----------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

[Responding to Docket 4788 and 4789 (FOMB's purported "urgent motion")]

**RESPONSE AND OBJECTION TO DOCKET 4788 AND 4789, FOMB'S PURPORTED URGENT MOTION OF INDIVIDUAL BONDHOLDER RESIDING IN THE 50 STATES WHO PURCHASED IN 2012 AT THE ORIGINAL OFFERING PRICE**

Dated: January 24, 2019

# PRELIMINARY STATEMENT AND BACKGROUND CONCERNING THE SALE OF THE SERIES 2012A BONDS

In March 2012, I purchased, as an individual retail investor in the 50 states, a modest quantity of general obligation bonds issued by the Commonwealth of Puerto Rico, series 2012A, at the original offering price. *See* Claim 10696 at page 9 (3/8/2012 confirm for CUSIP 74514LB63).

The cover of the bonds stated in bold type:

> **The Bonds are general obligations of the Commonwealth. The good faith, credit and taxing power of the Commonwealth are *irrevocably pledged* for the prompt payment of the principal of and interest on the Bonds. The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a *first claim* on available Commonwealth resources. (italics added)**[*]

Essentially this same language appears on page 1 of the Official Statement.

Two pages later officials of the Government of Puerto Rico were listed, including the Governor, Members of the Cabinet, President of the Senate, Speaker of the House of Representatives, Director, Office of Management and Budget and President, Government Development Bank for Puerto Rico.

Under the header "Security," the Official Statement issued by Puerto Rico stated in pertinent part (at pages 12-13):

> *Provision for Payment of Public Debt*
>
> In accordance with the Act, the Commonwealth has pledged the good faith, credit and taxing power of the Commonwealth for the prompt payment of the principal of and interest on the Bonds. Pursuant to the Act, the Bonds constitute general obligations of the Commonwealth, payable with any funds available to the Commonwealth, which funds are appropriated as continuous appropriations, without the need to make specific appropriations for such purposes.
>
> Section 8 of Article VI of the Constitution of Puerto Rico provides that public debt of the Commonwealth will constitute a first claim on available Commonwealth resources. Public debt includes general obligation bonds and notes of the Commonwealth and any payments

---

[*] The 2012A Official Statement is available on the EMMA website. Type in CUSIP 74514LB63, then click on "Disclosure Documents."

required to be made by the Commonwealth under its guarantees of bonds and notes issued by its public instrumentalities.

Under the header "Payment Record," the Official Statement stated on page 14:

The Commonwealth has never defaulted on the payment of principal of or interest on any of its debt.

In the section headed "Debt Limitation," information was provided concerning compliance with the constitutional debt limitation (*e.g.*, pages 14-16). The debt limit is described as a limit on what may "be issued" (page 14). The Official Statement stated on page 16 that the calculated amount for annual debt service equaled 13.2% of the average of the adjusted preliminary internal revenues for the fiscal year ended June 30, 2010 and the preliminary internal revenues for the fiscal year ended June 30, 2011. This was well below the 15% level beyond which direct obligations of the Commonwealth evidenced by good faith and credit bonds or notes "shall not be issued" (page 14). Indeed, it was noted on page 16 that on certain other assumptions the percentage would be even lower, 12.7%. The "Debt Limitation" section evidenced apparent care by Puerto Rico officials and advisers that Puerto Rico not issue debt in excess of the debt limit. Nothing in the Official Statement told potential purchasers that they (the purchasers) were responsible for calculating the limit on what amount of debt Puerto Rico could issue or were at risk of losing their investment if Puerto Rico's calculations were retrospectively claimed or determined to be wrong.

As stated on the cover, Puerto Rico's bond counsel were providing an opinion and, in addition, certain legal matters would be passed upon by underwriter's counsel based in San Juan, Puerto Rico. The proposed form of opinion of bond counsel was annexed as Appendix II. The opinion of bond counsel stated that "The Act and such proceedings and certifications show lawful authority for the issuance and sale of the Bonds, and the Bonds constitute valid and binding general obligations of the Commonwealth for the payment of the principal of and the interest on the Bonds, to which the good faith, credit and taxing power of the Commonwealth are pledged."

The section on "Litigation" (page 21) stated that "there is no litigation of any nature pending or threatened against the Commonwealth to restrain or enjoin the issuance, sale, execution or delivery of the Bonds or the application of the proceeds thereof as described in this Official

Statement, or in any way contesting or affecting the validity of the Bonds or any proceedings of the Commonwealth taken with respect to the issuance or sale of the Bonds."

Back in March 2012, when the 2012A bonds were issued and sold, the bond issue was rated investment grade by all three major rating agencies and was participated in by over 10 recognized municipal bond underwriters.

Yet the FOMB now proceeds by "urgent motion" to seek to establish procedures with respect to omnibus objections to claims filed or asserted by holders of certain Commonwealth general obligation bonds, going back retroactively to the bonds I had purchased over six years ago in the original offering in March 2012. Indeed, the FOMB's "urgent motion" even demanded (Docket 4789), and the court ordered (Docket 4806), that objections or responses be filed and served by 4 PM Atlantic Standard Time on a federal holiday, January 21, 2019. While thereafter that schedule was apparently pushed back a few days, respectfully, there is no legitimate reason to proceed with any compressed and expedited schedule to seek to establish procedures for a challenge to bonds issued lawfully in March 2012.

## **OBJECTIONS TO PROPOSED PROCEDURES**

It is fundamentally wrong, as well as in violation of the due process rights of individual bondholders such as me, to subject us to an asymmetrical litigation process where the FOMB and its counsel can spend all the money in the world — Puerto Rico is on course to run up over $2 billion in expense in its efforts to evade its debt (Docket 4673 at 12-13 of 17) — but individual bondholders who purchased investment grade bonds in the normal course years ago are faced with having to deal with the FOMB's overreaching litigation without the benefit of comparable resources to fight back. For an individual bondholder, such as me, with a modest stake, it is not economically feasible to hire counsel, including Puerto Rico counsel, with access to the Puerto Rico District Court electronic filing system, as such an expense would quickly eat up the amount at issue for an individual with modest holdings. It is also not practical to keep track on a "real time" basis of everything being filed on a docket with almost 5,000 entries to date and to file papers compliant with expedited deadlines

that presume access to the Puerto Rico district court electronic filing system. If the FOMB is going to reach back to challenge bonds that individuals purchased based on the representations and covenants of Puerto Rico over six years ago, at the very least there needs to be a fair process that respects the due process and other rights of individual bondholders.

Perhaps it is the strategy of the FOMB to drive down the price of the affected bonds (as has already occurred; see EMMA trading history for CUSIP 74514LB63), with the expectation that others will purchase the bonds at distressed prices, and that such distress purchasers, with a lower cost basis, can then be persuaded to "vote" for some proposed resolution and outvote those who purchased at the original offering prices. It has become apparent that one cannot assume that the interest of individual bondholders, including those who bought in the original offerings at the original offering prices, are going to be respected in this matter.

Accordingly, it is submitted that it is incumbent upon the Court — if the FOMB and Puerto Rico are going to be permitted to continue to spend hundreds of millions of dollars attempting to evade Puerto Rico's debt — to establish a fair procedure whereby the individual bondholders who bought in the original offerings at the original offering prices are provided comparable resources to respond to the FOMB's attacks upon them, such as through a bondholder committee with counsel compensated the same way that counsel for FOMB and for the official committee of unsecured creditors are being compensated. If this Court is willing to allow an unsecured creditors committee to have its counsel's fees paid in this proceeding — including to pursue claims such as asserted in the "Omnibus Objection" (Docket 4784) — a fortiori those individual bondholders who have an irrevocable pledge of payment and first claim on available Commonwealth resources should have at least the same entitlement to representation with their counsel's fees paid in this proceeding as well.

In addition, individuals have the right to represent themselves and the Court should institute a reasonable, user-friendly process whereby individuals can, for example, email papers to an email address maintained by the Court or by Prime Clerk, whereupon such papers when submitted by email could be lodged in the Court's ECF system and thereby instantaneously be transmitted to all counsel in the case without burdening individuals with air couriering papers to the Puerto Rico

-4-

Clerk's Office and serving dozens of counsel. Individuals should not have to retain counsel in order to respond to the FOMB's retroactive efforts to declare invalid what Puerto Rico represented for years was a lawful "irrevocable pledge" and binding obligation.

Furthermore, it is neither fair nor consistent with Due Process to be proceeding by "urgent motion" and shortening time when there has yet to be actual notice to all but a handful of major bondholders. The Series 2012A bonds were sold in March 2012. For years there has been no legal challenge to their validity. There is no "emergency" that requires rushing to establish a procedure to ride roughshod over the rights of individual bondholders.

Rather, before anything further is done, (i) actual notice must be given to all bondholders who have filed proofs of claims, for whom mailing addresses or email addresses are available, and (ii) the Court should appoint a committee for individual bondholders with the authority to retain counsel to be compensated on the same basis as the FOMB's counsel.

## DO WORDS IN A CONSTITUTION HAVE MEANING?

While I appreciate that the current motion is procedural, in evaluating the Due Process rights of individual bondholders who bought at or about the time of the original offerings, one should reflect on what Puerto Rico represented explicitly back in March 2012 to individuals such as me: "The good faith, credit and taxing power of the Commonwealth are **irrevocably pledged** for the prompt payment of the principal and interest on the Bonds." (emphasis added). And "[t]he Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a **first claim** on available Commonwealth resources." (emphasis added)

So what does "good faith, credit and taxing power of the Commonwealth are irrevocably pledged" and "first claim on available Commonwealth resources" mean? Does it mean that, while Puerto Rico is in default, thousands of contracts for advertising, representation, artistic services and consulting should be entered into and vendors paid? Does it mean that Puerto Rico should pay Christmas bonuses and also actually lower taxes, while leaving its debt unpaid? Does it mean that — while nothing is paid on its bonds — Puerto Rico should be running up costs on track to

-5-

exceed $2 billion in its efforts to attempt to evade its obligations? *See, e.g.*, Objection (Docket 4585) at 33-39 of 43, Supplement (Docket 4595), Second Supplement (Docket 4673) at 12-13 of 17 and Hein Declaration (Docket 4606-3 et seq.), at ¶¶ 38-50 and Exs. P-DD.

The FOMB and Puerto Rico now seem to believe "irrevocably pledged" means nothing at all, and that "first claim" means "last claim," after everyone but bondholders are paid.

As set forth in my above-referenced objections filed to the COFINA plan, and my argument in opposition thereto, Puerto Rico does not meet the standard set by United States Supreme Court precedent for reneging upon its "irrevocable pledge" and its obligations to bondholders. Any attempt to retroactively relieve Puerto Rico of its "irrevocable pledge" and obligations violates multiple provisions in the United States Constitution.

If what is urged here by the FOMB is permitted to occur — abandonment of the rule of law as well as the United States Constitution — it can happen anywhere. Respectfully, the rule of law and the U.S. Constitution must be applied here, and the place to start is by insisting on a fair procedure whereby the individuals who bought Puerto Rico's debt in good faith when it was publicly issued years ago have a fair opportunity to resist this effort by Puerto Rico to walk away from its solemn pledge and obligations.

Respectfully Submitted,

Peter C. Hein, Pro Se
101 Central Park West, Apt. 14E
New York, NY 10023
petercheinsr@gmail.com

-6-

## CERTIFICATE OF SERVICE

I have caused to be mailed a copy of this Response and Objection to Docket 4788 and 4789, FOMB's Purported Urgent Motion, of Individual Bondholder Residing in the 50 States Who Purchased in 2012 at the Original Offering Price by first class mail to each of the parties or their attorneys on the attached service list.

Dated: January 24, 2019

_____
Peter C. Hein

| | |
|---|---|
| Office of the United States Trustee for the District of Puerto Rico<br>Edificio Ochoa<br>500 Tanca Street, Suite 301<br>San Juan, Puerto Rico 00901<br>(re: In re: Commonwealth of Puerto Rico) | Proskauer Rose LLP<br>11 Times Square<br>New York, NY 10036<br>Attn: Martin J. Bienenstock, Esq., Brian Rosen, Esq., Paul V. Possinger, Esq. Ehud Barak, Esq. and Maja Zeral, Esq. |
| O'Neill & Borges LLC<br>250 Mutioz Rivera Ave.<br>Suite 800<br>San Juan, Puerto Rico 00918-1813<br>Attn: Hermann D. Bauer, Esq. | O'Melveny & Myers LLP<br>Times Square Tower<br>7 Times Square<br>New York, NY 10036<br>Attn: John J. Rapisardi, Esq., Suzzanne Uhland, Esq., and Diana M. Perez, Esq. |
| Marini Pietrantoni Muniz, LLC<br>MCS Plaza<br>255 Ponce de Leon Ave., Suite 500<br>San Juan, Puerto Rico 00901<br>Attn: Luis C. Marini-Biaggi, Esq. | Paul Hastings LLP<br>200 Park Ave.<br>New York, NY 10166<br>Attn: Luc A. Despins, Esq., James Bliss, Esq., Andrew V. Tenzer, Esq., Michael E. Comerford, Esq., James Worthington, Esq. and G. Alexander Bongartz, Esq. |
| Casillas, Santiago & Torres LLC<br>El Caribe Office Building<br>53 Palmeras Street, Ste. 1601<br>San Juan, Puerto Rico 00901<br>Attn: Juan J. Casillas Ayala, Esq., and Alberto J.E. Arieses Negron Esq. | Jenner & Block LLP<br>919 Third Ave.<br>New York, NY 10022<br>Attn: Robert Gordon, Esq., and Richard Levin Esq. |
| Jenner & Block LLP<br>353 N. Clark Street<br>Chicago, IL 60654<br>Attn: Catherine Steege, Esq., and Melissa Root, Esq. | Bennazar, Garcia & Milian, C.S.P.<br>Edificio Union Plaza<br>416 Ave. Ponce de Leon, PH-A<br>Hato Rey, Puerto Rico 00918<br>Attn: A.J. Bennazar-Zequeira, Esq. |
| Milbank, Tweed, Hadley & McCloy LLP<br>28 Liberty Street<br>New York, NY 10005<br>Attn: Dennis Dunne, Esq., and Atara Miller, Esq. | Cadwalader, Wickersham & Taft<br>200 Liberty Street<br>New York, NY 10281<br>Attn: Mark Ellenberg Esq., Lary Stromfeld, Esq., Ivan Loncar, Esq., and Casey Servais, Esq. |
| Weil, Gotshal & Manges LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Attn: Marcia L. Goldstein, Esq., and Gabriel Morgan, Esq. | Quinn Emanuel Urquhart & Sullivan LLP<br>51 Madison Avenue<br>New York, NY 10010<br>Attn: Susheel Kirpalani, Esq., and Eric Kay, Esq. |

Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036
Attn: Thomas Moers Mayer, Esq., Amy Caton, Esq., and Douglas Buckley, Esq.

McDermott, Will & Emery LLP
444 West Lake Street
Chicago, IL 60606
Attn: William P. Smith, Esq., David L. Taub, Esq., and Alexandra C. Scheibe, Esq.

White & Case LLP
200 South Biscayne Boulevard
Miami, FL 33131
Attn: John K. Cunningham, Esq., and Fernando de la Hoz, Esq.

Davis, Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
Attn: Donald Bernstein, Esq., and Brian Resnick, Esq.

Norton Rose Fulbright US LLP
1301 Avenue of the Americas
New York, NY 10019
Attn: Lawrence A. Larose, Esq., and Eric Daucher, Esq.

Akin Gump Strauss Hauer & Feld LLP
One Bryant Park
New York, NY 10036
Attn: Ira S. Dizengoff, Esq., and Philip C. Dublin, Esq.

Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
Attn: Sandy Qusba, Esq., and Nicholas Baker, Esq.

Stroock & Stroock & Lavan LLP
180 Maiden Lane
New York, NY 10038
Attn: Daniel A. Fliman, Esq.

Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
Attn: Andrew N. Rosenberg, Esq.