**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>              Debtors.[1] | PROMESA<br><br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>Jointly Administered |

## JOINT OBJECTION TO THE MOTION OF THE SPECIAL CLAIMS COMMITTEE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO ESTABLISH OMNIBUS OBJECTION PROCEDURES REGARDING CERTAIN GO BONDS

---

[1] The debtors in these title III cases, along with the last four digits of each debtor's federal tax identification number, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Case No. 17-BK-3283-LTS) (3481); (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Case No. 17-BK-3566-LTS) (9686); (iii) Puerto Rico Highways and Transportation Authority (Case No. 17-BK-3567-LTS) (3808); (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Case No. 17-BK-3284-LTS) (8474); and (v) Puerto Rico Electric Power Authority (Case No. 17-BK-4780-LTS) (3747).

# TABLE OF CONTENTS

PAGE(S)

PRELIMINARY STATEMENT ............................................................................................... 2

OBJECTION ...................................................................................................................... 6

    I.   The proposed procedures fail to account for the unprecedented nature and complexity of the proposed omnibus claim objection. ................................................................. 6

        A.  Any proposed procedures must afford all challenged claimholders the same due process protections. ........................................................................................ 6

        B.  Any objections to constitutional debt claims must be adjudicated in the same litigation. ......................................................................................................... 8

        C.  Any procedures must acknowledge and address the significant overlap between the go claim objection and the pba adversary proceeding. ........................................ 9

        D.  The procedures would benefit from further dialogue among the affected parties. ..... 11

    II.  The proposed procedures must encourage maximum participation in the litigation. ....... 11

        A.  The constitutional claimants must be recognized as necessary parties in interest. ..... 11

        B.  All holders of constitutional debt must be allowed to participate. ........................... 12

        C.  The notice of participation requirement is unduly prejudicial to holders of challenged go bonds. ......................................................................................................... 12

    III.  The proposed procedures provide inadequate notice to affected bondholders. ............... 15

        A.  The constitutional claimants have jointly developed a counterproposal to the proposed procedures. ................................................................................................... 19

RESERVATION OF RIGHTS ............................................................................................... 21

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

## CASES

PAGE(S)

*In re Drexel Burnham Lambert Grp.*,
    151 B.R. 674 (Bankr. S.D.N.Y. 1993) ........................................................ 18

*Kaufman, et al. v. Am. Exp. Travel Rel. Servs., Inc.*,
    Case No. 07-CV-1707 (N.D. Ill. Jun. 25, 2012) .......................................... 16

*Memphis Light, Gas & Water Div. v. Craft*,
    436 U.S. 1 (1978) ......................................................................................... 18

*Mullane v. Central Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ............................................................................... 16, 18

*Tulsa Prof. Collection Servs., Inc. v. Pope*,
    485 U.S. 478 (1988) ..................................................................................... 16

*In re XO Commc'ns, Inc.*,
    301 B.R. 782 (Bankr. S.D.N.Y. 2003) ........................................................ 18

## STATUTES & RULES

48 U.S.C. § 2121(a) ................................................................................................ 3

11 U.S.C. § 925 ...................................................................................................... 6

Fed. R. Bankr. P. 2019 ......................................................................................... 14

Fed. R. Bankr. P. 3007 ...................................................................................16–20

Fed. R. Bankr. P. 7001 ......................................................................................... 22

Fed. R. Civ. P. 15 ................................................................................................. 21

## OTHER AUTHORITIES

Kobre & Kim LLP, *Final Investigative Report for the Financial Oversight & Management Board*
    *for Puerto Rico* (2018) ............................................................................... 4

The Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debtholder Group"),[2] the Commonwealth Bondholder Group (the "Commonwealth Bondholder Group"),[3] and Assured Guaranty Corp. and Assured Guaranty Municipal Corp. ("Assured" and, together with the Constitutional Debtholder Group and the Commonwealth Bondholder Group, the "Constitutional Claimants") hereby submit this objection (the "Objection") to the *Urgent Motion of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Requesting Related Relief* [Dkt. No. 4788] (the "Procedures Motion" or "Motion") brought by the Financial Oversight and Management Board for Puerto Rico (the "FOMB") and the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "UCC" and, together with the FOMB, the "Movants") in connection with the *Omnibus Objection of (i) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (ii) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* [Dkt. No. 4784] (the "GO Claim Objection").  In support of this Objection, the Constitutional Claimants respectfully state as follows:

---

[2] *Supplemental Verified Statement of the Ad Hoc Group of Constitutional Debtholders Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Dkt. No. 4178]  (the "Constitutional Debtholder Group 2019 Statement").

[3] *Verified Statement of the Commonwealth Bondholder Group Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Dkt. No. 4743]  (the "Commonwealth  Bondholder Group 2019 Statement").

## PRELIMINARY STATEMENT

1.      Invoking a meritless legal theory, the GO Claim Objection seeks unprecedented relief: the complete invalidation of over six billion dollars of duly issued and outstanding general obligation bonds of the Commonwealth of Puerto Rico (the "Challenged GO Bonds"), stripping the holders of any remedy whatsoever.  Concomitantly, the GO Claim Objection seeks to upend as a "sham" the structure of a separate Commonwealth entity, the Puerto Rico Public Buildings Authority ("PBA"), which has existed since 1958, employs approximately 1,000 Puerto Rico residents and leases properties to other Puerto Rico government and private entities under more than 1,900 leases.  And separate litigation recently commenced by the FOMB and the UCC seeks to upend that entity on distinct but related grounds.  This relief is being sought now, with false urgency, on the eve of the commencement of negotiations between the government parties and bondholders on a restructuring of the Commonwealth's debts, including the Challenged GO Bonds.

2.      The GO Claim Objection is an extraordinary attack on the integrity of the Puerto Rico government's operating and financing structure—a structure on which creditors have relied for more than half a century.  It is a transparent strategic maneuver to influence upcoming negotiations and is contrary to the stated objective of PROMESA to secure the Commonwealth a path to access to the capital markets. 48 U.S.C. § 2121(a).  Putting aside, however, the meritless and incendiary nature of the GO Claim Objection, the procedures by which the Movants carry out this baseless attack must, at a minimum, comport with due process by affording proper notice and opportunity to all interested parties to participate, and must be coordinated in consultation with the relevant parties to ensure that the proceedings are fair and promote judicial economy.  In

the collective view of the parties submitting this response, the procedures proposed by the Movants are wholly deficient in this regard.

3.      The GO Claim Objection raises questions of unprecedented scale, not only in terms of the vast sums of money at stake, but also in the complexity of the legal issues presented. Such a significant objection must be adjudicated pursuant to procedures that are rigorous and provide due process, and that reflect input from all affected parties.  Yet, despite their familiarity with the Constitutional Claimants (whose constituent members hold or control more than six billion dollars[4] in bonds issued or guaranteed by the Commonwealth, a substantial portion of which consists of Challenged GO Bonds) and their counsel, the Movants chose not to consult with any of these groups or their constituent members regarding the details of the proposed procedures (the "Proposed Procedures") or to provide drafts of such Proposed Procedures to any of them in advance of filing with the Court.

4.      The Movants' failure to solicit input from affected stakeholders is particularly inexcusable given that the purported urgency behind the Movants' request for Court approval of the Proposed Procedures is nothing more than a manufactured crisis designed to maximize the Movants' negotiating leverage in upcoming mediation sessions and to establish a process—on shortened notice—that allows the Movants to discriminate against targeted holders of challenged claims, disenfranchise large swaths of claimants, seek premature and improper discovery and act as the arbiter of the procedural due process rights of the holders whose claims they seek to invalidate.  Most telling of all: the Movants make no effort to substantiate the purported urgency of the Motion.

---

[4] This figure is calculated based on holdings information provided in the Constitutional Debtholder Group 2019 Statement, the Commonwealth Bondholder Group 2019 Statement, and the proof of claim filed by Assured on May 25, 2018.

5.      The Movants have had ample time and opportunity to formulate objections to the claims of the widely held general obligation bonds issued by the Commonwealth ("GO Bonds") and develop appropriate procedures for their adjudication.  Nearly two years ago, on May 3, 2017, the FOMB filed a petition for relief on behalf of the Commonwealth under Title III of PROMESA.  The FOMB retained Kobre & Kim LLP ("Kobre & Kim"), as Independent Investigator on September 1, 2017.  Kobre & Kim published its final report on August 20, 2018. On November 29, 2018—more than three months after the publication of Kobre & Kim's final report, which found no evidence of a breach of the debt limit[5]—the FOMB announced that it had engaged Brown Rudnick LLP as claims counsel to its Special Claims Committee.  Just a month ago, counsel to the FOMB represented to the Court that the Board "look[ed] forward to resuming mediation on a Commonwealth plan" and it anticipated engaging in negotiations towards a consensual resolution of a Commonwealth plan of adjustment through March or April. *In re Fin. Oversight & Mgmt. Bd.*, Case No. 17-3283-LTS (D.P.R. Dec. 19, 2018), Hr'g. Tr. at 5:19–20.   However, on January 14, 2019—mere weeks before negotiations between the government parties and bondholders were scheduled to *commence*—the FOMB, together with the UCC, filed the GO Claim Objection and, with it, the Procedures Motion, urgently requesting that the Court fast-track the resolution of billions of dollars of GO Bond claims through a wholly deficient process designed entirely by the FOMB and the UCC, without any prior consultation with the affected bondholders and insurers.

6.      The Constitutional Claimants submit that moving forward with the GO Claim Objection at this time will distract the parties from the imminent settlement negotiations and may

---

[5] *See* Kobre & Kim LLP, Final Investigative Report for the Financial Oversight & Management Board for Puerto Rico at 253–54 (Aug. 20, 2018), which emphasized that the Commonwealth's "practice and interpretation concerning guaranteed debt has been disclosed repeatedly, at least as far back as 2007," *id.* at 259, and that there was "no evidence that Puerto Rico officials" believed their practice violated the Constitutional Debt limit.  *See id.* at 261; *see also id.* at 9.

4

jeopardize the prospects of reaching agreement on a consensual plan of adjustment.  It is the sincere hope of the Constitutional Claimants that the upcoming negotiations will yield a consensual plan of adjustment, and obviate the need for the GO Claim Objection entirely.

7.    As described in greater detail in this Objection, the Proposed Procedures are ill-timed and lacking meaningful input from affected stakeholders.  The Movants also seek, without adequate notice to claimants, to exercise undue control over the litigation and frustrate the efforts of creditors to organize and vigorously defend their claims.  It would be unreasonable and counterproductive to impose such procedures on the Constitutional Claimants just as the parties are commencing mediation negotiations.

8.    As an alternative to resolving the Procedures Motion at this time, the Constitutional Claimants respectfully suggest that the Court direct all parties to meet and confer to discuss revisions to the Proposed Procedures, including the initial counterproposal offered by the Constitutional Claimants as set forth below.  The parties should be required to provide a status report to the Court at, or shortly in advance of, the March 13 omnibus hearing.  The Constitutional Claimants further suggest that, if the above-described efforts do not lead to a set of agreed procedures, the parties be directed to proceed to mediation either before Magistrate Judge Dein or the broader mediation team.  A brief pause promotes judicial efficiency, especially if the mediation succeeds in ways that obviate this Motion, and causes no undue prejudice to Movants.[6]

---

[6] As part of the stipulation for briefing the Motion, we were required to advise Movants' counsel of our planned objections.  After reviewing those objections, Movants' counsel offered to meet and confer, which they failed to do before filing the Motion.  In any event, discussions between counsel will begin on January 29, and we intend to update the Court on their progress.  We reserve the right to revise this alternative proposal pending completion of those discussions.

## OBJECTION

I. **THE PROPOSED PROCEDURES FAIL TO ACCOUNT FOR THE UNPRECEDENTED NATURE AND COMPLEXITY OF THE PROPOSED OMNIBUS CLAIM OBJECTION.**

9.     The Movants seek extraordinary and unprecedented relief, without any regard to claimants' procedural and due process rights in the context of the complex legal and factual underpinnings of the GO Claim Objection (and any defenses thereto) and the Movants' decision to pursue these challenges through a mass omnibus claims objection.  The Proposed Procedures allow for multiple, potentially successive, challenges to the Challenged GO Bonds arising from the same basis of facts; arbitrarily discriminate amongst the holders of challenged claims subject to the same litigation; and foreclose the rights of holders to participate in the defense of their claims.  Moreover, the GO Claim Objection seeks findings that would impact the rights of numerous other parties, including holders of bonds issued by the PBA, without any attempt to reconcile the procedures governing the GO Claim Objection with the separately pending litigation related to the PBA.

A. **ANY PROPOSED PROCEDURES MUST AFFORD ALL CHALLENGED CLAIMHOLDERS THE SAME DUE PROCESS PROTECTIONS.**

10.     As an initial matter, any procedures relating to the GO Claim Objection must address all such claims, not just some of them.  The relief requested in the GO Claim Objection attacks all claims in respect of Challenged GO Bonds, requesting "entry of an order . . . disallowing all claims based on [Challenged] GO Bonds."  GO Claim Objection ¶ 59. The Procedures Motion, however, states that it is requesting "an order . . . permitting the [GO Claim] Objection to proceed in an omnibus fashion . . . to resolve the Challenged GO Bond Claims of those holders identified on Appendix I to the [GO Claim] Objection and those holders who elect to participate in the litigation of the [GO Claim] Objection."  Procedures Motion ¶ 1.

It is a mystery how this process of ruling only on the claims of "participating creditors" can leave those who are not participating unaffected.  Holders who have not elected into the litigation risk being prejudiced by the outcome of the GO Claim Objection, as each such holder has identical legal rights against the Commonwealth.  Such an outcome fails to satisfy the minimum requirements of due process.

11.    Since, as a practical matter, the Proposed Procedures will bind all holders of Challenged GO Bonds, the procedures must appropriately protect the procedural due process rights of each and every individual affected creditor.  However, the Proposed Procedures under the Procedures Motion (which itself was only served on certain identified stakeholders) provide startlingly short notice to affected creditors (through a single publication notice and notice through intermediaries DTC and Cede & Co.).  Procedures Motion ¶ 22.  They foreclose the right to participate in litigation upon failure to submit an onerous and prejudicial Notice of Participation after a mere twenty-five day window.  Proposed Procedures ¶ 2.  Apart from the legal deficiencies of such notice (discussed below), it is obvious from the face of such a proposal that the Movants have a very specific agenda in mind: to narrowly tailor their opposition and to avoid litigating against smaller (and more sympathetic) bondholders.  Contrary to the Proposed Procedures, no individual bondholder may be singled out and forced to litigate on behalf of other holders, and all holders, large and small, must be given a fair and equal opportunity to be heard in the defense of their claims.  In that regard, proper notice and adequate time to participate are essential elements of any procedures to adjudicate the GO Claim Objection.

12.    Further, for the same reason that all holders of Challenged GO Bonds must equally be subject to, and have the opportunity to participate in, litigation of the GO Claim Objection, no individual holder of Challenged GO Bonds should be arbitrarily singled out and

required to participate or risk default judgment. But the Proposed Procedures subject the individual holders identified in Appendix I to just this by imposing a risk of default judgment against them if they do not affirmatively respond to the litigation on terms dictated by the Movants. Proposed Procedures ¶ 2. The risk of a default judgment against select claimholders is unjust and prejudicial to the holders identified on Appendix I and would unfairly lead to unequal treatment of identical claims. There is no justification for naming individual holders in the GO Claim Objection at all, which as a practical matter seeks disallowance of each and every claim arising from a Challenged GO Bond, not only the claims of holders listed in Appendix I.

13.    Moreover, in the interest of judicial economy, ad hoc groups representing the interests of individual bondholders should be expressly authorized to participate in the proceedings, including on behalf of members of such groups (or funds managed by such members) that are identified in Appendix I. Assuming authorization from relevant claimants, participation by such groups should be deemed to satisfy any obligations imposed on their members to raise and prosecute defenses in respect of the GO Claim Objection.

### B.    ANY OBJECTIONS TO CONSTITUTIONAL DEBT CLAIMS MUST BE ADJUDICATED IN THE SAME LITIGATION.

14.    The Proposed Procedures provide that neither the Movants nor any other party in interest will be precluded from objecting to the Challenged GO Bonds on any additional basis not set forth in the GO Claim Objection. Proposed Procedures ¶ 8. Due process requires that holders of any bonds or notes issued or guaranteed by the Commonwealth ("Constitutional Debt") be afforded notice of which of their claims are subject to challenge and the full scope of such objections prior to being required to make a decision regarding whether to participate in the litigation or to make substantive responses to any objections. Yet, while the Proposed Procedures impose no limitations or deadlines on the Movants' ability to raise additional

objections, they purport to bar holders from defending their claims against unknown challenges that have not yet been asserted and of which they have no notice.  Accordingly, the procedures should include a deadline by which the Movants and other parties in interest (including AAFAF) must assert or waive any other objections to the Challenged GO Bonds or other issuances of Constitutional Debt and an appropriate process for notifying all affected claimholders of the full scope of objections.  Only after such time should holders of Challenged GO Bonds be required to make a decision whether to participate in the litigation or be required to file any substantive response to the GO Claim Objection.

15.     In addition, allowing the Movants and others to launch multiple successive objections will result in duplication of issues, discovery and costs, and make it impossible to achieve finality or afford due process to holders of Challenged GO Bonds.  Among other things, any objections to the Challenged GO Bonds are likely to be based on common facts or legal issues that should be decided by the Court at the same time.  From the point of view of judicial economy, due process and fundamental fairness, the Objectors cannot have multiple bites at the same apple.

**C.     ANY PROCEDURES MUST ACKNOWLEDGE AND ADDRESS THE SIGNIFICANT OVERLAP BETWEEN THE GO CLAIM OBJECTION AND THE PBA ADVERSARY PROCEEDING.**

16.     The Proposed Procedures further fail to acknowledge that a significant portion of the factual and legal underpinnings of the GO Claim Objection are inescapably intertwined with those at issue in a separate adversary proceeding commenced by the Movants themselves with the PBA Complaint, which alleges that certain leases by PBA of its properties to other Commonwealth government entities are not "true leases" but instead "disguised financings" designed to directly obligate the Commonwealth to pay the bonds issued by PBA.  *See Fin. Oversight & Mgmt. Bd. v. P.R. P.B.A. (In re Fin. Oversight & Mgmt. Bd.)*, Adv. Pro. No. 18-

000149 (D.P.R. Dec. 21, 2018) [Dkt. No. 1] (the "<u>PBA Complaint</u>").  The Movants' allegations in the GO Claim Objection similarly seek to undermine the PBA structure.  Specifically, the Movants allege in the GO Claim Objection that PBA is a "sham" entity which must be collapsed and its bonds recharacterized as direct obligations of the Commonwealth, resulting in the retroactive breach of the debt limit under the Puerto Rico Constitution and invalidation of the Challenged GO Bonds.  Setting aside the lack of merit of this argument and the unprecedented remedy sought by Movants (which will be addressed in the due course of this litigation),  the factual and legal allegations seeking to upend the PBA structure as a "sham" are necessarily directly linked to those asserted by the Movants in the PBA Complaint.

17.     The Proposed Procedures are devoid of any recognition of the common questions of fact and law implicated in each of these proceedings, and appear to contemplate the simultaneous adjudication of overlapping issues, with each proceeding independent of one another.  The Movants' disregard of the potential ramifications of proceeding in this manner is confounding: at best, such a process could result in judicial inefficiencies and chaos among a multitude of uncoordinated parties simultaneously seeking the same discovery and judicial determination of the same facts in separate legal proceedings; at worst, it could result in prejudicial and/or inconsistent judgments without the participation of all affected parties in interest.

18.     Any procedures to adjudicate the GO Claim Objection must be designed to ensure a coordinated, efficient and fair adjudication of all relevant facts between the GO Claim Objection and the PBA Complaint.

### D.     THE PROCEDURES WOULD BENEFIT FROM FURTHER DIALOGUE AMONG THE AFFECTED PARTIES.

19.     In light of these structural infirmities in the Proposed Procedures, the Constitutional Claimants urge the Court to require the Movants to engage in meaningful consultation with the Constitutional Claimants with respect to the formulation of procedures to govern the GO Claim Objection process, including procedures relating to notice to, participation of and coordination among the parties, as well as briefing and discovery schedules.

## II.     THE PROPOSED PROCEDURES MUST ENCOURAGE MAXIMUM PARTICIPATION IN THE LITIGATION.

20.     While the Proposed Procedures purport to facilitate an efficient process for litigation of the GO Claim Objection, they have in effect been designed to place the Movants— the very parties seeking to invalidate bondholders' claims—as the gatekeeper of challenged bondholders' efforts to organize and their submission of substantive responses, allowing the Movants to exercise undue and inappropriate control over the litigation. Such procedures, built by the fox to corral the hens, cannot meet the due process rights of those holders that are the target of the GO Claim Objection and the myriad interested parties that would be affected by litigation of the objection.

### A.     THE CONSTITUTIONAL CLAIMANTS MUST BE RECOGNIZED AS NECESSARY PARTIES IN INTEREST.

21.     Not only did the FOMB and the UCC fail to consult with the Constitutional Claimants, but their Proposed Procedures include no commitment to consult with such stakeholders at any point during the GO Claim Objection adjudication process.

22.     Instead, the Proposed Procedures provide for the Movants to request a Court order directing the regrouping of creditors that are already members of a creditor group and represented by counsel. Proposed Procedures ¶ 6.A(iv). One can only assume the Movants seek

11

to wrench apart existing creditor groups based upon the proprietary holdings information that bondholders must disclose in order to even be eligible to participate in the defense of their own claims. Proposed Procedures ¶ 2. While the Proposed Procedures couch such tactics in terms of judicial efficiency and organization, they are merely one prong in the Movants' effort to sow division and chaos amongst creditor constituencies. The Proposed Procedures' vague provision purporting to require the Movants to consult with the holders of the ten largest Challenged GO Bond claims prior to filing a Preliminary Recommendation with the Court does not remedy these infirmities, as such consultation ignores, among others, the Constitutional Claimants, who are already participating in these proceedings, and creates no affirmative obligations on the part of the Movants to recognize the rights of claimants to organize themselves. Proposed Procedures ¶ 3.

### B. ALL HOLDERS OF CONSTITUTIONAL DEBT MUST BE ALLOWED TO PARTICIPATE.

23.     Any adjudication of the GO Claim Objection must allow for any holder of Constitutional Debt to participate. The allegations made and positions taken by the Movants with respect to the Challenged GO Bonds under the GO Claim Objection implicate all holders of Constitutional Debt. Any such holders or groups thereof should be deemed to be "parties in interest" that may participate in the litigation of such challenges, and the procedures should respect each claimant's right to its choice of representation.

### C. THE NOTICE OF PARTICIPATION REQUIREMENT IS UNDULY PREJUDICIAL TO HOLDERS OF CHALLENGED GO BONDS.

24.     As discussed above, no Constitutional Debt holder should be summarily barred from participation in the litigation of the GO Claim Objection for failing to submit a burdensome Notice of Participation by an arbitrary deadline imposed by Movants. There is no authority of which the Constitutional Claimants are aware—nor do Movants cite any—that allows holders of

claims, not otherwise obligated to submit proofs of claim, to be stripped of their individual procedural and substantive rights to defend their individual claims in a claim objection process. Yet, the Proposed Procedures purport to do just that by limiting participation in the adjudication of the GO Claim Objection to claimants who affirmatively "opt in" to the litigation within an unreasonably short window of time—a mere twenty-five days, even for bondholders who hold their bonds through financial intermediaries—by responding to what amounts to a disguised discovery request.

25.     Under the Court's order establishing a bar date that was proposed and negotiated by the Movants (the "Bar Date Order"), holders of GO Bonds were not, and still are not, required to file proofs of claim.[7]  Movants cannot bind parties in a claim objection procedure with less notice or more onerous procedural requirements than would apply to the Bar Date.   Any requirement to file a Notice of Participation should require greater notice to claimants and should be purely for informational purposes and should not preclude stakeholders from participating in the litigation provided that they otherwise comply with any deadlines for substantive briefing set by the Court.

26.     To the extent that a Notice of Participation requirement is retained, it is critical that any such Notice of Participation be limited to filing a bare-bones notice of intent to participate, without any substantive requirement other than identification of the participating holder.  The Notice of Participation proposed by the Movants, however, requires disclosure of, among other things, (i) whether a holder acquired its Challenged GO Bonds by original issuance

---

[7] The Bar Date Order also provides that holders of claims that are listed in the Creditor List filed by the FOMB and not designated as "disputed," "contingent," or "unliquidated" are exempt from filing proofs of claim. *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [Dkt. No. 2521] ¶ 6(d).  The Creditor List identifies all outstanding GO Bonds as undisputed. *Notice of Filing of Creditor List for the Commonwealth of Puerto Rico* [Dkt. No. 1215], Schedule A.  Section 925 of the Bankruptcy Code, in turn, provides that a proof of claim is deemed filed for such claims.

or on the secondary market, (ii) the dates of acquisition of a holder's Challenged GO Bonds, (iii) the series of a holder's Challenged GO Bonds and (iv) a recitation of a holder's defenses to the GO Claim Objection—which disclosures are entirely premature and inappropriate at this stage.  Proposed Procedures ¶ 2.

27.     First, requiring holders to disclose anything beyond the information required by Bankruptcy Rule 2019 is extraordinarily prejudicial and unprecedented.  The Movants' request for information regarding whether a holder's Challenged GO Bonds were acquired by original issuance or in the secondary market, the date of such acquisition and the series of such bonds is a blatant attempt to short-circuit procedural safeguards related to the discovery of personal or proprietary information; such information should be sought only pursuant to discovery requests, subject to objections and due process protections.  There is no need to require disclosure of this level of information for organizational purposes, as holders will determine how best to organize themselves (as evidenced by the fact that many are already working within creditor groups).  To the extent that this is intended to structure "test cases" or otherwise graft class-action concepts onto the GO Claim Objection, such efforts find no support in the provisions of PROMESA, the Bankruptcy Code or the Bankruptcy Rules.  These attempts should be recognized for what they are—an attempt to divide and conquer bondholders in upcoming mediation and frustrate the defense of their claims.

28.     Similarly, requiring holders to submit individual, short-form statements of defense on a twenty-five day notice period is highly prejudicial to holders and a poorly disguised effort to improperly and prematurely grant the Movants a preview of a bondholder's substantive defenses.  The Movants' stated rationale for requiring this information is to enable them to "consolidate the information contained in such notices and propose briefing and discovery

14

procedures to resolve issues related to the [GO Claim] Objection in an efficient and orderly manner." Procedures Motion ¶ 24. The Proposed Procedures provide that this information will be used by the Movants for the preparation of their Preliminary Recommendation to the Court, which will include, among other things, a summary of bondholder defenses along with a summary of their own objections. Proposed Procedures ¶ 3. In other words, the Movants' intended use of the information collected in the Notice of Participation is to gather information regarding the bondholders' defenses in order to unilaterally truncate briefing and discovery before claimants can organize themselves and fully flesh out and articulate their arguments. Such control over this litigation in the hands of the Movants is entirely inappropriate and in derogation of claimants' most fundamental rights.

29.     Ironically, while the Proposed Procedures are in effect designed to frustrate the efforts of holders to meaningfully organize, they simultaneously seek to impose a premature, vague and overly broad requirement upon bondholders to "cooperate in good faith to file joint papers with respect to the litigation of the GO Claim Objection/Notices of Participation and use reasonable efforts to coordinate discovery" prior to the discussion or submission of any procedures governing the briefing or discovery schedule. Proposed Procedures ¶ 6.B(a). Rather than imposing broad, ambiguous requirements on creditors at this stage, the procedures should acknowledge that the creditors are entitled to organize themselves as they see fit and should expressly recognize their common interest in doing so.

## III.     THE PROPOSED PROCEDURES PROVIDE INADEQUATE NOTICE TO AFFECTED BONDHOLDERS.

30.     Any procedures governing adjudication of the GO Claim Objection must substitute for the dual protections of notice of a bar date and actual notice of a claim objection under Bankruptcy Rule 3007 once a proof of claim has been filed. Specifically, such procedures

15

must provide adequate notice to all potentially-affected parties and allow such parties sufficient time to appear and be heard regarding their respective interests. Otherwise, all parties run an unnecessary and expensive risk that a subsequent attack on the propriety of these procedures could nullify subsequent actions taken under the Proposed Procedures. *See Tulsa Prof. Collection Servs., Inc. v. Pope*, 485 U.S. 478, 491 (1988) ("If appellant's identity was known or 'reasonably ascertainable,' then termination of appellant's claim without actual notice violated due process."); *cf. Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 309, 319 (1950) (reversing state court judgment settling the accounts of a trust with hundreds of beneficiaries where such judgment purported to be "binding and conclusive as to any matter set forth in the account upon everyone having any interest," due to a lack of notice provided to many such beneficiaries); *Kaufman, et al. v. Am. Exp. Travel Rel. Servs., Inc.*, Case No. 07-CV-1707 (Jun. 25, 2012) [Dkt. No. 387] (denying class settlement and directing that parties revise notification procedures, where previously consummated notification campaign resulted in 1% response rate from affected claimants).

31.    The Proposed Procedures do not even purport to comply with Bankruptcy Rule 3007. Bankruptcy Rule 3007 requires that notice of a claim objection be given directly to a creditor through first-class mail at the address identified in its proof of claim. In fact, Bankruptcy Rule 3007 assumes that the objection is being served on a creditor that (a) has already received notice of a deadline for filing a proof of claim and (b) has provided a notice address in a filed proof of claim. Bankruptcy Rule 3007 does not even contemplate an objection filed against a claim for which no proof of claim has been required. Because holders of GO Bonds were not obligated to file a proof of claim under the Bar Date Order (and are in fact still

16

listed as undisputed claims in the Creditor List), it is impossible for the Movants to comply with the terms of Bankruptcy Rule 3007.

32.    To the extent that the Court is inclined to grant an exemption to the notice requirements under Bankruptcy Rule 3007, any replacement procedures must be as robust and protective of creditors' due process rights as the Rule 3007 process would be.   A central "purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.'"   *Memphis Light, Gas & Water Division v. Craft,* 436 U.S. 1, 14 (1978) (footnote omitted); *see also Mullane*, 339 U.S. at 314 ("[N]otice must be of such nature as reasonable to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.") (citations omitted). In the bankruptcy context, all known creditors that may hold claims against a debtor must be afforded *actual* notice.  *In re Drexel Burnham Lambert Group Inc.*, 151 B.R. 674, 681 (Bankr. S.D.N.Y. 1993) ("Bankruptcy law divides creditors into two groups: known and unknown.  According to well established case law, due process requires that a debtor's known creditors be afforded actual notice of the bar date."); *see also In re XO Commct's, Inc.*, 301 B.R. 782, 792 (Bankr. S.D.N.Y. 2003).  At a minimum, notice of the GO Claim Objection must be comparable to that provided under the Bar Date Order in order to adequately apprise holders of Challenged GO Bonds of the GO Claim Objection.  This is particularly salient in light of the fact that the Proposed Procedures seek relief that is substantively as material to a claimant as the relief sought under a Bar Date Order—namely, the setting of deadlines by which the substantive and procedural rights of creditors can be cut off and their claims disallowed.  More to the point, the requirement that holders submit a Notice of Participation under the Proposed Procedures is analogous to the Bar Date Order's requirement that holders subject thereto submit a proof of

claim; beyond normal bar order procedures, it prematurely requires claimants to put forward defenses to an objection to their claims without the procedural protections afforded under Rule 3007.

33.     The Proposed Procedures provide for an Objection Notice to be disseminated through publication notice and sent to holders through DTC and Cede & Co. only twenty-five days prior to the Notice of Participation deadline.  Procedures Motion ¶ 22.  By contrast, the Bar Date Order provided a notice period of approximately three-and-one-half months, during which time thirty-eight radio advertisements, two rounds of publication notices and postings to the Commonwealth's Title III Prime Clerk web page were required.  Bar Date Order ¶¶ 19–22.  The Proposed Procedures' notice is grossly inadequate, particularly in light of the preclusive implications for failure to submit a Notice of Participation.  Even assuming holders actually receive the Objection Notice through their securities intermediaries prior to the expiration of the twenty-five day "opt in" window, it is unlikely there would be sufficient remaining time for a holder to thereafter locate the GO Claim Objection (which is not included in the proposed Objection Notice), assess the GO Claim Objection, retain counsel (if applicable), decide whether to participate in the litigation, organize and coordinate responses with other similarly situated bondholders and prepare a Notice of Participation (which, as proposed by the FOMB and the UCC, would require not only certain detailed information regarding bond ownership, but also a summary of proposed defenses to the GO Claim Objection).

34.     Any procedures established in connection with the GO Claim Objection must only require a response after the affected parties know the full range of objections that are being brought against their claims, provide individualized notice to known affected parties and afford sufficient time to respond.  Due to the diffuse nature of the holders, the Movants should, in

addition to sending affected bondholders individualized notice of the Movants' claim objection(s)
through DTC and Cede & Co., be required to provide notice through publication and radio
advertisements. Only after adequate notice will affected bondholders be equipped to decide
whether to participate in the litigation.

### A.  THE CONSTITUTIONAL CLAIMANTS HAVE JOINTLY DEVELOPED A COUNTERPROPOSAL TO THE PROPOSED PROCEDURES.

35. The Constitutional Claimants maintain that the proper path forward in the
immediate term is to direct the parties to meet and confer and develop a mutually agreeable set
of procedures. Nevertheless, in an effort to demonstrate their willingness to engage in good faith
with the Movants, the Constitutional Claimants have developed an alternative to the Proposed
Procedures, as outlined below (the "Alternative Procedures"). The Constitutional Claimants
believe the Alternative Procedures are a workable, reasonable set of procedures that recognize
the importance of judicial economy but also comport with due process and appreciate the
complexity of the issues involved. By creating opportunities for parties to work together and
providing a more reasonable timeline with adequate notice, the Alternative Procedures would
respect the due process rights of all holders of Challenged GO Bonds, and would allow the
parties to crystallize the issues in an orderly way.

36. The Constitutional Claimants propose the following Alternative Procedures:

(1) No later than the date that is thirty days after the conclusion of mediation
(which shall be measured as of the date on which the mediation team leader
advises the Court that the mediation of the Commonwealth's plan of
adjustment has reached an impasse) (the "Alternative Objection Deadline"),
each of the Movants and AAFAF (collectively, the "Government Parties"),
jointly or individually, shall (a) submit a revised objection setting forth all
objections of general applicability such party has to the Challenged GO Bonds
and (b) submit all objections of general applicability such party has to any
other series of Constitutional Debt (collectively, the "Global Claim
Objections"). Amendments to the Global Claim Objections shall be subject to
Rule 15 of the Federal Rules of Civil Procedure; provided that any such
amendments shall require notice thereof in compliance with the notice

procedures set forth below.  Any further or additional objections to any Constitutional Debt shall be subject to *res judicata*.

(2) No later than the date that is five days after the Alternative Objection Deadline, the Government Parties shall provide notice of the Global Claim Objections ("Alternative Objection Notice") to all affected bondholders in accordance with notice procedures agreed upon by the Government Parties and the Constitutional Claimants that comport with due process and fundamental fairness.

- At a minimum, such notice procedures shall include individualized notice to all affected bondholders through Cede & Co. and DTC with instructions for Nominees to provide such notice to beneficial holders of the Challenged GO Bonds and publication notice through newspaper publications and radio advertisements, with reminder notices through each of the same mediums.

(3) Parties in interest shall undertake good-faith efforts to file with the Court a notice of participation ("Alternative Notice of Participation") within sixty days after the date on which the Alternative Objection Notice is sent (the "Alternative Notice of Participation Deadline").

- As an initial matter, the Constitutional Claimants, other existing ad hoc creditor groups and all holders of Constitutional Debt shall be deemed to be "parties in interest" for the purposes of litigating the Global Claim Objections.

- The Alternative Notice of Participation shall be limited to the following information: (i) party name, (ii) contact information and (iii) intent to participate.  No claim holder shall be required to disclose proprietary bond holdings information or substantive litigation positions.

- The main purpose of the Alternative Notice of Participation will be informative.  It will allow parties to organize themselves and coordinate efforts (which will also conserve judicial resources).  The failure to file an Alternative Notice of Participation shall not bar a party from participating in the litigation, so long as such party submits a timely substantive response to the Global Claim Objections in accordance with any deadlines set by the Court at a later date.

- Parties adverse to Respondents (other than the Government Parties) may participate in the Global Claim Objections litigation by intervention or by filing a separate objection.

(4) Following the Alternative Notice of Participation Deadline, there shall be a twenty-day consultation period, during which time the Government Parties shall be required to meet and confer with significant affected stakeholders

(including the Constitutional Claimants) to develop a set of agreed procedures to govern adjudication of the Global Claim Objections and any other objections to Constitutional Debt that have been made. Those procedures will accord the parties the same discovery and motion rights they would have been accorded under an adversary proceeding governed by Bankruptcy Rule 7001. The holders of Challenged GO Bonds and insurers, whether acting through a creditor group or individually, shall be encouraged and permitted to cooperate and share work product with one another. The Alternative Procedures shall explicitly acknowledge that such cooperation shall be subject to the common interest privilege.

(5) At the end of the twenty-day consultation period, to the extent the parties have reached consensus, the Governmental Parties and the Constitutional Claimants shall file with the Court a joint proposed briefing and discovery schedule to resolve the Global Claim Objections and any related issues. Alternatively, to the extent the parties fail to reach consensus, they shall be directed to each file independent proposed briefing and discovery schedules, with an explanation to the Court identifying those portions of the proposals upon which the parties disagree.

(6) To the extent the parties are unable to come to consensus with respect to a joint proposed briefing and discovery schedule, the parties shall have fourteen days to respond to each other's proposed briefing and discovery schedule.

(7) As soon as practicable thereafter, the Court will schedule a hearing on the briefing and discovery schedules.

37.     The Constitutional Claimants believe the Alternative Procedures strike the right balance and represent an appropriate path forward, but they are not intended to be exhaustive. The Constitutional Claimants stand ready and committed to working with the Movants to develop a more fulsome set of procedures that respect due process and are acceptable to both sets of parties.

## **RESERVATION OF RIGHTS**

38.     The Constitutional Claimants hereby reserve any and all rights with respect to the relief sought by the Motion and the issues raised by this Objection.

## CONCLUSION

39.     For the foregoing reasons, the Constitutional Claimants respectfully request that the Court (a) deny the Motion and (b) direct all parties to (i) meet and confer regarding the Proposed Procedures and the terms of a proposed scheduling order for the litigation of the GO Claim Objection and (ii) provide a status report to the Court in advance of the next omnibus hearing.

*[Signature Page Follows]*

Dated:  January 25, 2019

**DAVIS POLK & WARDWELL LLP**

/s/ Donald S. Bernstein
_____
Donald S. Bernstein (*pro hac vice*)
Brian M. Resnick (*pro hac vice*)
Angela M. Libby (*pro hac vice*)
450 Lexington Avenue
New York, NY 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
Email:  donald.bernstein@davispolk.com
         brian.resnick@davispolk.com
         angela.libby@davispolk.com

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**

/s/ Andrew N. Rosenberg
_____
Andrew N. Rosenberg (*pro hac vice*)
Richard A. Rosen (*pro hac vice*)
Walter Rieman (*pro hac vice*)
Kyle J. Kimpler (*pro hac vice*)
Karen R. Zeituni (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
Email:  arosenberg@paulweiss.com

**ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP**

/s/ Mark T. Stancil
Lawrence S. Robbins (*pro hac vice*)
Mark T. Stancil (*pro hac vice*)
Gary A. Orseck (*pro hac vice*)
Kathryn S. Zecca (*pro hac vice*)
Ariel N. Lavinbuk (*pro hac vice*)
Donald Burke (*pro hac vice*)
1801 K Street, NW
Washington, D.C. 20006
Telephone: (202) 775-4500
Facsimile: (202) 775-4510
Email: mstancil@robbinsrussell.com

**JIMÉNEZ, GRAFFAM & LAUSELL**

/s/ J. Ramón Rivera Morales
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
PO Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

*Counsel to the Commonwealth Bondholder Group*

**G. CARLO-ALTIERI  LAW OFFICES,  LLC**

/s/ Gerardo A. Carlo
Gerardo A. Carlo
USDC PR No. 112009
254 San Jose St., Third  Floor
San Juan, Puerto Rico 00901
Telephone:  (787) 247-6680
Facsimile:  (787) 919-0527
Email:  gacarlo@carlo-altierilaw.com

**MORRISON & FOERSTER LLP**

/s/ Gary S. Lee
Gary S. Lee (*pro hac vice*)
James M. Peck (*pro hac vice*)
Grant J. Esposito (*pro hac vice* admission  pending)
David J. Fioccola (*pro hac vice* admission
pending)
250 West 55th Street
New York, New York 10019
Telephone:  (212) 468-8000
Facsimile:  (212) 468-7900
Email:  JPeck@mofo.com
          GLee@mofo.com

*Counsel to the Ad Hoc Group of Constitutional
Debtholder Group*

**CADWALADER, WICKERSHAM & TAFT LLP**

/s/ Mark C. Ellenberg
Mark C. Ellenberg (*pro hac vice*)
700 Sixth Street, N.W.
Washington, DC 20001
Telephone: (202) 862-2238
Email: mark.ellenberg@cwt.com


**CASELLAS ALCOVER & BURGOS P.S.C.**

/s/ *Heriberto Burgos Pérez*
Heriberto Burgos Pérez
USDC-PR No. 204,809
Ricardo F. Casellas-Sánchez
USDC-PR No. 203,114
Diana Pérez-Seda
USDC–PR No. 232,014
E-mail: hburgos@cabprlaw.com
          rcasellas@cabprlaw.com
          dperez@cabprlaw.com

P.O. Box 364924
San Juan, PR 00936-4924
Tel.: (787) 756-1400
Fax: (787) 756-1401

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*