IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION OF THE OPPENHEIMER FUNDS TO URGENT MOTION OF (I) FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE, AND (II) OFFICIAL COMMITTEE OF UNSECURED CREDITORS, UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 502 AND BANKRUPTCY RULE 3007, ESTABLISHING PROCEDURES WITH RESPECT TO OMNIBUS OBJECTION TO CLAIMS FILED OR ASSERTED BY HOLDERS OF <u>CERTAIN COMMONWEALTH GENERAL OBLIGATION BONDS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## Table of Contents

I. The Objectors Have Not Provided Adequate Notice of the Proposed Procedures ............. 3

II. The Proposed Procedures Improperly Restrain GO Bondholders from Asserting Substantive Rights and Defenses ....................................................................................... 4

    A. Creditors Should Not Be Compelled to Cooperate in Drafting Joint Briefs on the Merits ........................................................................................................4

    B. Objectors Should Be Directed To Consult with All Significant Holders of Challenged GO Bond Claims...................................................................................6

III. The Proposed Procedures Exact an Inappropriate "Entry Fee" on Bondholders by Forcing them to Preview their Legal Arguments with the Objectors............................................... 7

IV. The Objectors Attempt to Seek Discovery from GO Bondholders Regarding Information that is Burdensome and Irrelevant to the Objection............................................................ 8

V. The Proposed Procedures Should Bind the Objectors to the Stated Objections................. 8

Certain funds managed or advised by OppenheimerFunds, Inc. (the "**Oppenheimer Funds**")[2] respectfully submit this objection to the *Urgent Motion Of (I) Financial Oversight And Management Board* ("**FOMB**"), *Acting Through Its Special Claims Committee, And (II) Official Committee Of Unsecured Creditors* (the "**UCC**" and together with FOMB, the "**Objectors**") *Under Bankruptcy Code Sections 105(A) And 502 And Bankruptcy Rule 3007, Establishing Procedures With Respect To Omnibus Objection To Claims Filed Or Asserted By Holders Of Certain Commonwealth General Obligation Bonds* (the "**GO Bonds**") [Dkt. No. 4789] (the "**Procedures Motion**", the procedures attached thereto, the "**Proposed Procedures**") dated January 14, 2019.[3]

## OBJECTION

In the Objection, the Oversight Board, as representative of the Commonwealth in the Title III Case, and the Committee take the extraordinary step of seeking to retroactively annul GO Bonds held by scores of investors throughout Puerto Rico and the United States. The Objection defies any sense of what is legal, fair, or reasonable in seeking to void $6 billion of bonds 5 years after the Commonwealth and its advisors willingly collected money from investors and issued GO Bonds in return. Unsatisfied with a baseless Objection, the Objectors propose a grossly inequitable remedy, asking the Court to let the Commonwealth keep all of the Challenged GO Bond proceeds but escape the corresponding obligations to investors. Just advocating such an outcome creates a perverse incentive for Puerto Rico's future fiscal decisions and will not restore the Commonwealth

---

[2] The Oppenheimer Funds purchase and hold municipal bonds on behalf of hundreds of thousands of ordinary investors across the United States and Puerto Rico who invest to save for important life expenses. For more than 30 years, the Oppenheimer Funds have invested capital into the Commonwealth and its instrumentalities, which has allowed Puerto Rico to finance billions of dollars of infrastructure projects, public facility construction projects, and other capital needs. The Oppenheimer Funds collectively hold more than $500 million of GO Bonds, including more than $75 million of Challenged GO Bonds.

[3] Capitalized terms not defined herein shall have the meanings given to them in the Procedures Motion.

to the capital markets, as is statutory purpose of the Oversight Board. 48 U.S.C. § 2121(a). The Oppenheimer Funds will address these and other reasons why the Objection must be overruled when substantive responses are filed.

As for the Proposed Procedures relating to the Objection, the diversity of the holders, the lack of an indenture trustee, and the fact that holders of GO Bonds need not file a proof of claim create unique circumstances and some procedural intervention is warranted. For example, it is clear that at the outset, this matter must be noticed through DTC or some similar notice procedure. The resulting procedure should be designed to provide adequate notice so that all allegations are properly joined and the court's determinations, subject to any appeal, will be binding on holders of the Challenged GO Bonds and the Objectors or any potential objectors.

The Proposed Procedures, however, go far beyond their stated purpose of assuring adequate notice (and thereby due process) to creditors and potential objectors, and purport to grant the Objectors substantive advantages that are not provided to the holders of Challenged GO Bond Claims. For example, the Proposed Procedures purport to force creditors to (i) file joint responses, potentially compromising their ability to present their arguments fully and appropriately; (ii) prematurely formulate and disclose their intended legal defenses to the Objection during the very early procedurals stages, months before the Objectors must otherwise respond to those legal arguments on the merits; and (iii) respond to prematurely propounded and burdensome discovery requests, seeking proprietary and irrelevant facts relating to the purchase of GO Bonds. All of these requirements are, moreover, one-sided. The Proposed Procedures limit the manner in which holders of GO Bonds may defend against the Objection, but place no similar restrictions on how the Objectors or Joint Objectors may assert legal arguments that are raised, or which could have been raised, in the Objection.

**I.  The Objectors Have Not Provided Adequate Notice of the Proposed Procedures**

In connection with the Objection and the Procedures Motion, the Objectors filed a motion to shorten the time by which parties must respond to the Procedures Motion and the date upon which the Court will hear argument on the Procedures Motion (the "**Motion to Shorten Notice**"). Although the Objectors granted the Oppenheimer Funds and certain other parties an extension to respond, the Court's grant of the Motion to Shorten Notice also limits the time in which the Oppenheimer Funds may prepare for the hearing on January 30, 2019.

In connection with the certification required by Section I.H. of the Case Management Procedures, counsel to the Objectors assert that prior to filing the motion they met and conferred with a subset of holders of GO Bonds. Mot. To Shorten Notice ¶ 8. The undersigned is not aware of the Objectors having made any meaningful effort to meet and confer with any major holder of the Challenged GO bonds. Objectors did not contact Oppenheimer Funds' counsel, whose contact information is listed on the Oppenheimer Funds' proof of claim in the Commonwealth's Title III case asserting claims of over $1.9 billion as of the petition date, which proof of claim attached a list of bonds held including the Challenged GO Bonds. The Objectors therefore failed to meet the requirements of Section I.H. of the Case Management Order.

Paragraph 9 of the Motion to Shorten Notice states "in accordance with Local Bankruptcy Rule 9013-1(a)(2), undersigned counsel certify that counsel have carefully examined the matter and concluded that there is a true need for an urgent hearing, and that the movants have not created the urgency through lack of due diligence on their part." As discussed further below, the Oversight Board, through its special counsel Kobre and Kim, substantially completed its investigation of the Commonwealth's and its instrumentalities' debt at least 6 months ago. The Objectors have not specified any circumstances in the past few weeks that have created the urgent need for the Procedures Motion that differ from circumstances in the past 6 months.

The Oppenheimer Funds respectfully request that the Procedures Motion be adjourned to the next omnibus hearing, and that the Objectors be permitted to provide notice of the Procedures Motion under a normal briefing schedule. This relief is appropriate under the rules and case management procedures, reserves the Court's resources for truly urgent requests for expedited relief, and has the added benefit of giving the Objectors time to meet and confer with holders of Challenged GO Bonds.

## II. The Proposed Procedures Improperly Restrain GO Bondholders from Asserting Substantive Rights and Defenses

### A. Creditors Should Not Be Compelled to Cooperate in Drafting Joint Briefs on the Merits

The Proposed Procedures require Respondents to cooperate in good faith to prepare joint briefs on the issues that may arise in litigating the Objection. Not only is it premature to require these as-yet unidentified litigants to prepare joint briefing in an uncertain litigation schedule, but it is fundamentally unfair to creditors to restrict their ability to defend claims that are *prima facie* valid by imposing an affirmative obligation to share their resources or legal arguments with other creditors from the very outset of the litigation.[4]

The Oppenheimer Funds include funds that have been involved in extensive litigation in the COFINA and PREPA title III cases, and have often filed joint briefs voluntarily with other stakeholders, including several identified on Appendix I to the Objection. *See, e.g.*, *Mutual Fund Grp. & P.R. Funds' Ob. to Motions for Summary Judgment,* No. 17-00257-LTS, (D.P.R. Mar. 14, 2018), ECF No. 318; *Urgent Motion of Nat'l Pub. Fin. Guarantee Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., Syncora Guarantee, Inc., & Identified Members of the Ad Hoc*

---

[4] To the extent a proof of claim has been filed, it is *prima facie* evidence of the validity of the claim, 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). The Oppenheimer Funds have filed a proof of claim for claims for and arising out of the GO Bonds including the Challenged GO Bonds. Claim No. 26695, Case No. 17-BK-03283-LTS (May 25, 2018).

- 4 -

*Grp. of PREPA Bondholders To Intervene Under Fed. Rule of Bankr. Procedure 7024*, No. 18-00021-LTS, (D.P.R. Mar. 13, 2018) Dkt. No. 26; *The Mutual Fund Grp., the P.R. Funds, Assured Guaranty Corp. & Assured Guaranty Municipal Corp.'s (I) Response to Ambac Assurance Corp. & Nat'l Pub. Fin. Guarantee Corp.'s Statement of Material Facts in Support of Motion for Summary Judgment and (II) Counter-Statement of Additional Undisputed Facts*, No. 17-00133-LTS (D.P.R. Dec. 8, 2017), ECF No. 476. There is no reason to believe that the Oppenheimer Funds and other significant holders of GO Bonds would not continue to file joint briefs if doing so promotes efficiency or is otherwise in the Respondents' best interest.

Yet, in other circumstances, it may not be feasible or efficient for the parties to reconcile drafts into an agreed version to be filed with the Court. Creditors with different cross-holdings may have divergent interests that prevent counsel from discussing sensitive issues with other creditors, even in the spirit of good faith cooperation. The Oppenheimer Funds have provided capital to the Commonwealth and its instrumentalities for over 30 years, and therefore own many series of bonds issued by multiple Puerto Rico instrumentalities. The cross-holdings of the Oppenheimer Funds and other holders of Challenged GO Bond Claims may, in certain circumstances, make cooperation difficult or even impossible, rendering enforced cooperation inappropriate. Cooperating on the planning, drafting, and revision of a brief also requires more time and resources than preparing an individual brief, and such additional time and resources may not always be available to Respondents. While cooperation can and should be encouraged to preserve resources, it is inappropriate for the Proposed Procedures to require that the Respondents cooperate in responding to the Objection. *See, e.g.*, *In re Northwest Airlines Corp.*, No. 05-17930 (ALG) (Bankr. S.D.N.Y. Sept. 13, 2006) (establishing procedures that did not require creditor cooperation in responding to mass claim objections).

In other litigation before the Title III Court involving numerous creditors and creditor groups, most notably the interpleader action and the "CW-COFINA Dispute" relating to the COFINA title III case, the Court has addressed case management issues at every stage of the proceeding. As in those litigations, the Court may set schedules and briefing parameters as the Objection litigation moves forward. But the Proposed Procedures should not impose restrictive filing requirements on creditors when the schedule, subject matter, and intercreditor dynamics of the litigation are so unclear.

### B. Objectors Should Be Directed to Consult with All Significant Holders of Challenged GO Bond Claims

The Proposed Procedures include a Preliminary Recommendation that will identify arguments and defenses common among the Participants. To develop this Preliminary Recommendation, the Objectors would be required to consult with only the ten largest holders of Challenged GO Bond Claims. This is far too narrow. The Proposed Procedures should require the Objectors to consult with all Participants that have affirmatively expressed a desire to defend their GO Bond claims concerning the Preliminary Recommendation and all other matters under the Proposed Procedures.

If the number of bondholders filing a Notice of Participation makes such consultation impracticable, then the Objectors may apply to the Court to limit their consultation obligations under those circumstances. The Objectors are not prejudiced by waiting for the scope of Respondents to become clear before seeking to limit the participation of claim holders.

If the Court does seek to set a standard now, the threshold for consultation should be set to include holders or organized groups of holders with a certain threshold of material bond holdings instead of being limited to the ten largest holders. It would be inappropriate, in any event, to exclude from consultation requirements any Participant with a multi-million dollar Challenged

- 6 -

Bond Claim simply because there are ten – or some other arbitrary number – of Participants with greater (or even slightly greater) holdings.

### III. The Proposed Procedures Exact an Inappropriate "Entry Fee" on Bondholders by Forcing them to Preview their Legal Arguments with the Objectors

The Proposed Procedures require Respondents to submit with their Notice of Participation a statement of up to five pages describing the basis of such respondent's defense(s) to the Objection. The Notice of Participation should be a procedural mechanism, identifying potential participants in the litigation. It should not require the holder of a Challenged GO Bond Claim to prematurely formulate or disclose substantive legal arguments. The general basis of the claims asserted by the holders of GO Bonds is set forth in the GO Bonds (and accompanying bond documents), the Puerto Rico Constitution, and the filed proofs of claim. 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3001(f). Having established the base claim and the Objection being interposed, there is no procedural reason for Respondents to provide the Objectors five pages of additional substantive arguments – especially in a document styled as a "notice."[5]

The Objectors or other parties could attempt to limit arguments a Respondent may make at alter stages of litigation based upon the issues its raises in the Notice of Participation. Using a procedural vehicle to limit the substantive rights of creditors at the outset of the litigation would be wildly inappropriate. At a minimum, the Proposed Procedures should clarify that any requirement to present arguments in the Notice of Participation or in a response to the Preliminary Recommendation is not binding or preclusive. Similarly, the omission of an argument in such documents should not constitute a waiver of an argument for purposes of litigating the Objection.

---

[5] The Objectors appear to have drafted the Proposed Procedures with the intent that the Notice of Participation be viewed as substantive briefing: "***Other than the Notices of Participation*** and any response to the Preliminary Recommendation, no substantive response to the Objection need be filed by the Respondents until a date set forth in any scheduling order entered by the District Court." Proposed Procedures at 3.

### IV. The Objectors Attempt to Seek Discovery from GO Bondholders Regarding Information that is Burdensome and Irrelevant to the Objection

The Notice of Participation also purports to require a Respondent to state the date it purchased Challenged GO Bonds and whether the Respondent acquired the Challenged GO Bonds at original issuance or on a secondary market. The Procedures Motion discloses no procedural purpose for this requirement and, in fact, does not even state why the date and manner of acquiring GO Bonds is relevant at all.

The Oppenheimer Funds are mutual fund families whose investors are typically ordinary individuals saving for important life expenses. The Oppenheimer Funds are conservative investors that have invested in Puerto Rico bonds for decades, and their investment mandate is to purchase bonds at or around a par price when the bonds are not in distress. The funds may sell municipal bond investments if required based upon investor's redemptions or based upon the strategy and risk analysis of the portfolios. It would be difficult and burdensome to track the dates of purchase and sales across the funds, as they go back for many years, and completing this task should not be a prerequisite to defending rights. Moreover, the date and manner in which a Respondent acquired a Challenged GO Bond are irrelevant to these proceedings.[6]

### V. The Proposed Procedures Should Bind the Objectors to the Stated Objections

The Oversight Board was constituted on August 31, 2016. It commenced this case on behalf of the Commonwealth over twenty months ago. The Board retained Kobre and Kim, who began its investigation of, among other things, the GO Bond issuances in 2017 and issued its 600-page report five months ago. The Special Claims Committee was appointed shortly after Kobre

---

[6] In addition to the Objector's attempt to obtain premature discovery, it should be noted that Kobre and Kim had full subpoena power when investigating the issuance of the GO Bonds, among other topics. In addition, the UCC has been investigating the Commonwealth's financial condition through its Rule 2004 motions more than a year. The scope of discovery permitted in the merits stage of the Objection should recognize that both Objectors have already had a significant opportunity to gather information related to the issuance of GO Bonds.

- 8 -

and Kim concluded its investigation. The Oversight Board and their investigative counsel have been investigating the GO Bond issuances for well over a year, and the Special Claims Committee, comprised entirely of existing Board members, has been constituted for several months.

After this extensive investigation, the Objectors and Joint Objectors still seek to reserve their rights to object to GO Bond claims in the future on other, apparently yet to be identified, grounds.[7]

The Objectors should not be allowed to stretch Rule 3007's omnibus claim procedures as the Proposed Procedures contemplate and also reserve the ability to object to GO Bond claims on additional legal theories in the future. The Objectors or other would-be objectors will need to ask this Court to establish new omnibus claim objection procedures (or to apply at least some of the Proposed Procedures) in connection with any further GO Bond claim objections. The Court's establishment of specialized procedures here, which involves invoking the case management powers of Section 105 of the Bankruptcy Code to modify Rule 3007, should contemplate the fairness in potential future claim objections that may require similar procedural accommodations. *See In re Nineteen Appeals Arising Out of the San Juan Dupont Plaza Hotel Fire Litigation,* 982 F.2d 603, 611 (1st Cir. 1992) (The court's review of procedural due process guarantees for litigants, should address whether "the affected individual has had a fundamentally fair chance to present his or her side of the story").

The Court can and should use the same Section 105 case management powers that allow the Court to create claim resolution procedures to *defer approving such procedures* until all

---

[7] The Objection states that "[f]or a number of reasons beyond the scope of this Objection, the Objectors and numerous Commonwealth creditors (including retirees and essential services providers) do not agree that the GO bondholders are entitled to such a priority." Obj. ¶ 10. In addition, paragraph 11 of the Objection reserves the Objectors' rights to assess additional objections to the Challenged GO Bonds or other GO Bonds, including on the basis of *the same legal argument* of the constitutional debt limit.

objections that would be asserted against such claims have been interposed. *See Bessette v. Avco Fin. Servs.*, 230 F.3d 439, 445 (1st Cir. 2000) (explaining that "a court may invoke § 105(a) 'if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Code.'"); *In re Vota*, 165 B.R. 92, 93 (Bankr. D.R.I. 1994) ("[W]hen equitable considerations conflict with clearly defined principles of law, this Court may not fashion equitable remedies to circumvent the legal guidelines."). If the Objectors or Joint Objectors need additional time to put together the full contingent of claim objections it intends to make towards all GO Bonds, then the Objectors should seek to add such a deadline to the Proposed Procedures. But after years of analyzing the GO Bond structure and months after Kobre and Kim concluded its investigation of each GO Bond issuance, the Objectors should not be allowed to assert claims objections in a piecemeal fashion and, for example, test certain legal arguments to decision on certain GO Bonds before asserting alternative arguments against other GO Bonds.

## **CONCLUSION**

For the reasons set forth above, the Proposed Order and the Proposed Procedures should be modified as described above.

We hereby certify that, on this same date, we electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will notify the attorneys of record.

**RESPECTFULLY SUBMITTED,**
In San Juan, Puerto Rico, today January 25, 2019.

| TORO COLÓN MULLET P.S.C. | KRAMER LEVIN NAFTALIS & FRANKEL LLP |
|---|---|
| /s/ *Manuel Fernández-Bared* <br> MANUEL FERNÁNDEZ-BARED <br> USDC-PR No. 204,204 <br> Email: mfb@tcm.law <br><br> /s/ *Linette Figueroa-Torres* <br> LINETTE FIGUEROA-TORRES <br> USDC-PR No. 227,104 <br> Email: lft@tcm.law <br><br> /s/ *Jane Patricia Van Kirk* <br> JANE PATRICIA VAN KIRK <br> USDC–PR No. 220,510 <br> Email: jvankirk@tcm.law <br> P.O. Box 195383 <br> San Juan, PR 00919-5383 <br> Tel.: (787) 751-8999 <br> Fax: (787) 763-7760 | s/ *Amy Caton* <br> THOMAS MOERS MAYER* <br> AMY CATON* <br> P. BRADLEY O'NEILL** <br> DOUGLAS BUCKLEY* <br> 1177 Avenue of the Americas <br> New York, New York 10036 <br> Tel.: (212) 715-9100 <br> Fax: (212) 715-8000 <br> Email: tmayer@kramerlevin.com <br>         acaton@kramerlevin.com <br>         boneill@kramerlevin.com <br>         dbuckley@kramerlevin.com <br> * (admitted *pro hac vice*) <br> ** (*pro hac vice* application pending) |

*Counsel to the Oppenheimer Funds*