CERTIFIED TRANSLATION

2001 WL 1764054 (TCA)

TELEFONICA LARGA DISTANCIA DE PUERTO RICO, INC., AT&T DE PUERTO RICO, INC. AND SPRINT COMMUNICATIONS COMPANY, L.P.,
Plaintiffs-Appellants

V.

DEPARTAMENTO DE HACIENDA/TREASURY DEPARTMENT
Defendant-Appellee

IN THE CIRCUIT COURT OF APPEALS
Civil Num, KCO97-0021
KLAN0100568, KLAN0100727, KLAN0100770
In San Juan, Puerto Rico, on November 26, 2001.

Appeal from the Court of First Jurisdiction, Superior Court of San Juan

Panel composed by its president, Judge Fiol Matta, Judge Rodriguez de Oronoz and Judge Gonzalez Rivera.

### *JUDGMENT*

OPINION BY JUDGE RODRIGUEZ DE ORONOZ,

1   We are asked to review the sentence issued by the Court of Initial Jurisdiction, Superior Court of San Juan, on October 29 of 2000. By said sentence, the Court decreed to the constitutionality of the tax imposed by Law Num. 69 of August 9 of 1993 on long distance telecommunication companies.

After examining the court proceedings of this case and applicable law, RESOLVED the Court proceeds to CONFIRM the appealed sentence

I

In 1999 the appellants, Telefónica Larga Distancia de Puerto Rico, Inc. ("TLD"), AT&T de Puerto Rico, Inc. ("AT&T") and Sprint

Communications Company, L. P. ("SPRINT"), separately, filed claims against the Departamento de Hacienda/Treasury Department ("Hacienda") questioning the constitutionality of Law Num. 69 of August 9 of 1993, which imposed a two percent (2%) tax on the gross income of any long distance company operations providing telecommunications service.

TLD filed its claim on March 23 of 1999. It alleged that on June 22 of 1998 it filed with Hacienda a request for a refund of the 2% tax paid as required by Law Num. 69 for the years 1994, 1995 and 1996 (from January 1 to September 11 of 1996), in the amount of $3,576,456.30 plus interests, which claim for refund was denied. It adduced that Law Num. 69 violated the prohibition imposed by the Constitution of the United States against the imposition of taxes on interstate commerce with the purpose of favoring or protecting local commerce.

TLD argued that said law was unconstitutional because it taxed more oppressively a similar activity when it crossed state lines than when the activity occurred entirely within Puerto Rico because it imposed a 2% tax on the gross income of operations in the "providing telecommunication services to any long distance company" and it did not impose a similar tax to the gross income derived from providing intrastate telecommunication services to the companies that provided that kind of service. TLD requested that the court of first jurisdiction declared said tax to be unconstitutional and that it orders Hacienda to refund to TLD the claimed amount of $3,576,456.30 plus interest at a 6% annual rate from the date the tax was paid.

On the other hand, SPRINT filed its claim on March 26 of 1999. It alleged that on December 30 of 1998 it filed with Hacienda a request for a refund of the 2% tax paid as required by Law



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Num. 69 for the years 1994, 1995 and 1996 (from January 1 to September 11 of 1996), which claim for refund was denied. It claimed a refund of the following payments: $288,719.00 in the year 1994; $351,034.00 in 1995; and $288,790.00 in 1996, for a total amount of $928,542.00 plus interest as disposed by law. Just like TLD, it alleged that Law Num. 69 violated the prohibition imposed by the Constitution of the United States against the imposition of taxes on interstate commerce with the purpose of favoring or protecting local commerce. It argued that said law was unconstitutional because it taxed more oppressively a similar activity when it crossed state lines than when the activity occurred entirely within Puerto Rico which constituted unequal and discriminatory treatment under the commerce clause.  It requested that the court of first jurisdiction declared said tax to be unconstitutional and that it order Hacienda to refund to SPRINT the claimed amount of $928,543.00 plus 6%annual interest from the date of payment to Hacienda until its refund to SPRINT.

2 Lastly AT&T filed its claim on March 29 of 1999. It alleged that on December 28 of 1998 it filed with Hacienda a request for a refund of the 2% tax paid as required by Law Num. 69 for the years 1993 to 1997, in which it claimed the refund of the following payments: (1) $1,018,317.30 in year 1993; $1,340,700.50 in 1994; $1,453,228.19 in 1995; $1,678,998.19 in 1996; and $1,533,156 in 1997.  Hacienda denied payment of the refund. AT&T alleged that Law Num. 69 was unconstitutional and discriminated against interstate commerce because it required the payment of the tax on the income of the long-distance telecommunications operation's interstate services, but the companies that offered long distance telecommunication services within the Puerto Rico territorial limits were not required

to pay such tax or any amount for the income derived from such services.

The appellant companies requested the consolidation of the claims and on May 26 of 1999 the court of first jurisdiction consolidated the same under number KCO97-0021, exclusively to review the matter of the constitutionality of the tax. Once the claims were consolidated, Hacienda responded to the claims denying all allegations and setting forth an affirmative defense, which, among other things argued, that the performance of the Secretary of Hacienda were protected by a presumption of correctness, which had not been contravened or negated by the presented cause of action. In addition, Hacienda presented a motion requesting summary judgement or dismissal of the consolidated cases.

The appellant companies opposed such motions and requested that the court dictate summary judgement in their favor. After the parties submitted their respective memorandums of law, on October 19 of 2000 the court of first jurisdiction emitted a judgement declaring the constitutionality of the tax in controversy. Even though the judgement was originally notified on November 2 of 2000, the notification was defective whereby an amended notification was required, which took place on June 6 of 2001. Not satisfied with the judgement, TLD, SPRINT and AT&T presented voluminous writs of appeal on June 14, July 23 and August 6 of 2001. The parties submitted the following designation of error:

TLD

THE HONORABLE COURT OF FIRST JURISDICTION ERRED WHEN DETERMINING THAT LAW NUM. 69 DOES NOT VIOLATE THE INTERSTATE COMMERCE CLAUSE OF THE UNITED STATES CONSTITUTION.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SPRINT

THE HONORABLE COURT OF FIRST JURISDICTION ERRED WHEN DETERMINING THAT LAW 69 OF AUGUST 9 OF 1993 DOES NOT DISCRIMINATE AGAINST INTERSTATE COMMERCE AND, IS THEREFORE, CONSTITUTIONAL.

BECAUSE LAW NUM. 69 IS DISCRIMINATORY, THE HONORABLE COURT OF FIRST JURISDICTION ERRED BY CONSIDERING OTHER FACTORS THAT ALLEGEDLY SUSTAIN ITS CONSTITUTIONALITY.

3 AT&T

THE HONORABLE COURT OF FIRST JURISDICTION ERRED WHEN DETERMINING AS A MATTER OF FACT THAT THE TAX IS APPLICABLE TO ALL THE LONG-DISTANCE TELECOMMUNICATION COMPANIES AND THAT THE SAME IS RELATED WITH THE SERVICES THAT PUERTO RICO PROVIDES SAID COMPANIES AND WHEN IGNORING EVIDENCE ABOUT RELEVANT FACTS TO THE CONTROVERCY WHICH IS NOT IN DISPUTE AND DEMONSTRATES THE DISCRIMINATORY NATURE OF THE TAX.

THE HONORABLE COURT OF FIRST JURISDICTION ERRED WHEN DETERMINING IN COMPLIANCE WITH THE LAW, THAT THE COINTRIBUTION DOES NOT DISCRIMINATE AGAINST INTERSTATE COMMERCE AND THAT THE SAME IS VALID FROM A CONSTITUTIONAL POINT OF VIEW.

In essence, the appellant companies challenge the constitutionality of Law Num. 69 alleging that it violates the prohibition of the commerce clause of the United States Constitution against the imposition of taxes to interstate commerce with the purpose of favoring or protecting intrastate commerce. They sustain that the tax is discriminatory because it is applied to the gross income generated by the interstate communication services and it exempts from the same tax the gross income generated for intrastate communication services.

At the request of the Attorney General, we ordered the consolidation of these cases by resolution of August 6 of 2001. We pass to resolve.

II

The authority to tax of the Commonwealth of Puerto Rico is the most fundamental of its public and governmental powers. *Burlington Air Express v. Mun. de Carolina,* __ D.P.R. ___ (2001), 2001 T.S.P.R.98*; RCA v. Gob. De la Capital,* 91 D.P.R. 416, 428 (1964). It is a power that is "essential for its subsistence and its survival" as a political State. Id. It has a "grave and vital importance*". P.R. Telephone Co. v. Trbl. Contribuciones,* 81 D.P.R. 982 (1960). Because of this, the Supreme Court has resolved that this ample power is exercised by the Commonwealth of Puerto Rico "free of superior authority, subject only to the limitations of its own Constitution… and those obligations that the country imposed upon itself when accepting the federal relations that would exist and exist with the United States within the meaning of Public Law 600". *Burlington Air Express v. Mun. de Carolina, supra*, citando a *RCA v. Gob. De la Capital, supra*.

When states exercise the power to impose taxes, they have ample discretion to select the subjects or objects to be taxed. The right to due process of law or the equal protection of the laws does not impose a rigid rule that requires equality in the imposition of taxes. The Legislature has vast discretion to establish

3

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

classifications and you justify a classification if it is reasonably related with the purpose of the legislation. *Coca Cola Bottling Co. v. Srio De Hacienda,* 112 D.P.R. 702 (1982).

4 Federal jurisprudence has shown deference towards the states when the rule is not discriminatory on its face and its objective is to protect the citizenship of possible deceitful or prejudicial practices by interests not from the locality. *M.& B.S., Inc. v. Depto. de Agricultura*, 118 D.P.R. 319 (1987). "Just because a regulation affects interstate commerce it should not necessarily be invalidated, particularly if the health or public welfare benefits are determinant in approving it, so long as its impact on interstate commerce is secondary or incidental". *M.& B.S., Inc. v. Depto. de Agricultura, supra,* citing *Mintz v. Baldwin*, 289 U.S. 346 (1933). "A state law should not be voided by merely showing that its administration affects interstate commerce in some manner". Id., citing *Head v. New Mexico Board,* 374 U.S. 424, 429 (1963).

In *RCA v. Gob. De la Capital, supra*, the Supreme Court made a recount of the authority of the Commonwealth of Puerto Rico with respect to the imposition of taxes from the Federal Relations Law, known as Law 600. In that case, claims were made against the Municipality of San Juan requesting the return of some amounts paid to the municipality for municipal patents. The plaintiffs alleged that the collection of patents to companies dedicated exclusively to communications between the United States and foreign countries was an improper intervention by the Municipality of San Juan in interstate commerce of the United States.

The Supreme Court started its analysis repeating the historical fact that "the Constitution of the United States, of its face and by its own power, was not extended to the inhabitants of Puerto Rico by the mere fact of the cession in the Treaty of Paris". *RCA v. Gob. De la Capital,* supra, in pags. 430-431. It continued to explain that the United States Congress" from the beginning did not extend and has not extended, directly to Puerto Rico the same dispositions of the constitution as it did in relation to other communities". Id. Also, the Supreme Court repeated that " the constitutional dispositions that reserve to Congress the power to regulate commerce with foreign nations, between the States and with the Indian tribes, has not only not been in force in Puerto Rico or is not now in force in Puerto Rico but on the contrary, Congress expressly disposed that the law on Interstate Commerce and the various amendments made or that would be made to it… nor a Law to regulate commerce of February 4 of 1887 and the laws amending the same… and that still prevails forming part of the Federal Relations Law would not apply to Puerto Rico*". RCA v. Gob. De la Capital, supra*.

Based on all of the above-mentioned historical background, the Supreme Court in*". RCA v. Gob. De la Capital, supra,* found that the relation of interstate commerce that is in force between Puerto Rico and the United States has always had and still has distinct profiles from that which by virtue of the Constitution, is in force between the States of the Union". The Court also expressed that as a result of that difference, the Commonwealth of Puerto Rico can exercise its taxing authority with regard to interstate commerce in a manner that "maybe a State covered by the dispositions of the Federal constitution would not be permissible".

5 *In RCA v. Gob. De la Capital, supra*, the Supreme Court also analyzed jurisprudence of the Supreme Court of the United States. In what is pertinent here and citing extensively from *General Motors Corp. v. State of Washington*, 377 U.S. 436 (1964) it was pointed out that "…. The legality of the tax rests in the fact of



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

whether the State makes a constitutionally reasonable demand with regard to the aspect of interstate commerce with which it has a special relationship… the question is if the State has exercised its authority in adequate proportion to the activities of the appellants within the State and the enjoyment by the appellants within the opportunities and protections that the State has provided". ". *RCA v. Gob. De la Capital, supra*, at page 435. In *General Motors, supra*, citing *Wisconsin v. J.C. Penney Co*. 435 435, 444 (1940), the Supreme Court of the United States reiterated that "the simple but decisive issue is whether the State has conceived something in exchange for which it can solicit a reward".

III

When examining the Law Num. 301 of May 15of 1945, 27 L.P.R.A. Sec.341et seq., the legislation that originally imposed the 2% tax, we find that said Law was enacted to respond to a situation of urgency that was present with regard to the infrastructure development in order to propel the development of telecommunications in Puerto Rico. Said tax would be paid by the companies that provided services of telephone and telegraphic transmission of messages. With this purpose in mind, Section 2 of Law Num. 301, 27 L.P.R.A. Sec 342 established the following:

> Section 2---We hereby authorize and order the Treasurer of Puerto Rico to Impose and collect a contribution or tax of two percent on the operational gross income collected by any public service company or government instrumentality of the People of Puerto Rico, for the transmission of telephonic

or telegraphic messages, including telegraphic money orders. All amounts received by the Puerto Rico Treasurer, by virtue of the provisions of this section shall be deposited by him in a special fund that shall be named Special Fund for the Development of Communications. Said funds shall be placed, from time to time, at the disposition of the Board of Directors of the Communication Authority of Puerto Rico, as a result of the board's request for the investment by said board or under its order, in those improvements, extensions, investigations, experiments or special investigations, that it believes convenient, with the purpose to extend and improve the quality of the system and facilities of telephonic and telegraphic communications in Puerto Rico.. Said tax shall be paid by the public service companies or by the public instrumentalities that provide such service, within sixty (60) days after the closing of the accounting of each economic year; and under no circumstance should the tax be charged to the persons that use their services.

6 The 2% tax became a fountain of constant collections that were directed to the development of the telecommunications. It should be pointed out that the 2% tax, just as it was ordered in Section 2 of Law Num. 301, was declared constitutional by our Supreme Court, as much as under the applicable dispositions of

5

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

the Organic Letter of 1917, as those of the United States Constitution. See *P.R. Telephone Co. v. Trbl. Contribuciones,* 81 D.P.R. 982, 992-994 (1960).

After the creation of the Puerto Rico Regulatory Commission of Telecommunications in 1990, Section 2 of Law Num. 301 was amended by Law Num. 64 of August 23 of 1990. The purpose of the amendment was to "impose and authorize the Secretary of Hacienda to collect the imposed taxes from the telecommunication companies not covered by the Law of the Regulatory Commission of Telecommunications". In addition, in said law it was ordered that the amounts collected therein be deposited in a special fund and that the funds deposited in the Special Fund for the Development of Communications be transferred to the special fund named "Special Fund of the Regulatory Telecommunication Commission".

As a result, Law Num. 69 clearly expressed in its title that it was approved to amend Section 2 of Law Num. 301 of 1945, as amended, "with the objective to maintain the imposition and authorization of the Secretary of Hacienda to collect the imposed taxes to the long distance telecommunication companies; in order that the amounts collected by said concept will be deposited in the General Fund; and to authorize the transfer to the General Fund of the monies deposited in the Special Fund of the Regulatory Telecommunication Commission. Also, in its Exposition of Motives it expressed that:

> "Imperious considerations of public order require that the long-distance telecommunication companies continue paying the tax as required by law. With this in mind it is necessary to channel those funds to areas of necessity in order to achieve the government programs".

As we can see, the tax enacted in Law Num. 69 was imposed with the same purpose for which Law Num. 301 was originally imposed, that is with the purpose of developing telecommunications. By virtue of that 2% tax of the gross income on the companies that offered long distance telecommunication services, a fountain of steady collections was created. It is evident that the funds collected by means of this tax has propelled the technological advances made in the provision of telecommunication services.

In this manner, the Commonwealth of Puerto Rico started getting involved in the field of telecommunications investing in development and infrastructure for more than half a century. From it we have seen the growth of the infrastructure of communications that today allows, not only to be equal to the most commercially developed countries but also propulse the economic development of the Island.

7 The Appellant companies, all participants in the Puerto Rico telecommunication market, clearly benefit from the development propelled with the funds collected since 1945 through the tax in controversy. This causes a situation in which, according to the Federal jurisprudence cited by our Supreme Court in *RCA v. Gob de la Capital, supra* "the State has developed something in exchange of which it can solicit a reward".

There exist varied activities that the appellant companies pursue within the Commonwealth of Puerto Rico, for example, the marketing activities and advertising of its products and the use of the telecommunication infrastructure developed in the Island, which are sufficient local contacts on which to base the tax imposed by Law Num. 301, as amended. It is not a case in which Hacienda intents to impose a tax merely for the privilege of participating in interstate commerce, but it is a tax imposed on

6

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

aspects of the business that are subject to the ample sovereign power of the state.

On first sight, the argument put forth by the appellees that the tax of 2% on the gross income of the long-distance transoceanic telecommunication companies, in exclusion of the long distant intraisland companies, is discriminatory, appears to be viable. The appellants achieve this appearance of validity referring indistinctly to both types of calls, the transoceanic and those that do not go out of the geographic limits of Puerto Rico, as long-distance calls. Classifying all calls out of the metropolitan area as long-distance calls, without distinction of their geographical reach, apparently does not create a reasonable explanation for the State to only impose the 2% tax to the income generated by long distance services outside of Puerto Rico.

Nonetheless, a more thorough analysis of the alleged discrimination reveals the existence of a substantial difference between one type of calls and another of long-distance calls that sustains the distinction with regard to the tax treatment. That difference is established in that the provision of telecommunication services outside the Puerto Rico territorial limits, the provided service by the appellant companies is converted into a transoceanic service. As a result, the utilization of the telecommunication infrastructure made by the appellant companies is different to the utilization of that same infrastructure by the companies that offer telecommunication services limited to the territorial extension of Puerto Rico.

To allege discrimination in the tax statute in controversy, the appellant companies were obliged to establish that there did not exist a technological justification or specific public policy in the telecommunication arena that justified the application of a tax to one type of call (long distance calls outside the territorial limits of Puerto Rico) and not to another (long

distance calls within the territorial limits). The appellee companies were unable to so establish. They merely limited themselves to lumping together all calls outside the metropolitan area under the classification of "long distance calls" and alleged, in generic form, that there existed discrimination in the tax treatment of some companies and others. They ignored that the tax differentiation obeyed technological and infrastructure considerations related to the condition of Puerto Rico as an island. They did not take into account that the infrastructure and the technology utilized for long distance transoceanic calls are different to those utilized on long distance intraisland calls. That is the distinction that justifies the application of a different tax treatment to each activity.

8 The appellant companies have not demonstrated that the tax imposed by Law Num. 69 affects interstate commerce. They have also not demonstrated that as a result of said tax, there is discrimination against the companies that offer long distance transoceanic services, favoring the companies that offer intraisland services.

RESOLVED, that the determination of the Court of First Jurisdiction declaring the constitutionality of the challenged law was Correct.

IV

For the expressed reasons, the appealed judgement is confirmed.

In this manner it was agreed and orders the Court and it is certified by the General Secretary.
Aida Ileana Oquendo Graulau

General Secretary.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.