2015 WL 4075649 (TCA)

ASSOCIATION OF MANAGERIAL EMPLOYEES
OF THE STATE INSURANCE FUND
CORPORATION, Appellant
v.
STATE INSURANCE FUND CORPORATION; Liza
Estrada Figueroa; State Insurance Fund
Corporation Administrator; Commonwealth of
Puerto Rico; Hon. Alejandro García Padilla,
Governor of Puerto Rico, Appellees.

COURT OF APPEALS
Case No.: SJ2014CV00204 (907)
KLAN201500471
In San Juan, Puerto Rico, on May 29, 2015.
May 29, 2015.

*Appeal* from the Court of First Instance, Court of San Juan
Matter: Request for *Mandamus, Injunction* and Declaratory Judgment

Panel composed of Presiding Judge García García, Judge Hernández Sánchez and Judge Soroeta Kodesh

### JUDGMENT

SOROETA KODESH, REPORTING JUDGE

***1** Comes now the Association of Managerial Employees of the State Insurance Fund Corporation (hereinafter, the Association or the appellant), by way of an appeal filed on April 1, 2015. It is requesting that we revoke a *Judgment* issued on January 29, 2015 and notified on February 2, 2015 in which the Court of First Instance (hereinafter, the CFI), Court of San Juan, dismissed the *Complaint* filed by the appellant and declared the constitutionality of Articles 11 and 17 of Law No. 66 of 2014, known as the Special Fiscal and Operational Sustainability Act of the Government of the Commonwealth (hereinafter, Law No. 66). On February 12, 2015, the appellant requested reconsideration, which was *Denied* in a *Decision* issued on March 2, 2015.

Based on the reasons stated below, the appealed *Judgment* is affirmed.

### I.

On October 24, 2014, the appellant filed a *Complaint* for *mandamus, injunction* and declaratory judgment against the State Insurance Fund Corporation (hereinafter, the CFSE, acronym in Spanish). In said *Complaint,* the Association questioned the constitutionality of Articles 11 and 17 of Law No. 66, *supra.* The appellant argued that the introduction of Law No. 66, *supra,* establishes an unreasonable, suspicious and discriminatory classification which puts non-unionized managerial employees and/or career supervisors in an inferior situation in relation to unionized employees. Consequently, it requested issuance of a writ of preliminary *injunction* to stop the unconstitutional application of Articles 11 and 17 of Law No. 66, *supra.*[1]

The Association also requested that the CFI issue a writ of *mandamus* ordering the CFSE to comply with its ministerial duty to deliver to the same the following public documents: savings goal established by the CFSE; report regarding at-will positions and amounts; proposed plan for compliance with Articles 8–11, and 17–18; report regarding occupied and vacant managerial positions, as listed on Article 11, section (i), of Law No. 66; and other related documents that are necessary for compliance with the provisions and savings goals established in Law No. 66, *supra.* Lastly, the appellant requested that the court of first instance issue a declaratory judgment declaring the unconstitutionality of Articles 11 and 17, *supra,* and imposing payment of costs and attorney's fees on the CFSE.

Subsequently, the State requested dismissal of the *Complaint* and declaratory judgment recognizing the constitutionality of Law No. 66, *supra.* It argued that said legislation does not violate the constitutional clauses which prohibit contravening contractual obligations and guarantee equal protection of the laws since it is a reasonable and necessary socioeconomic measure to deal with the fiscal crisis of the Government of Puerto Rico. It also questioned the suitability of the *injunction* since the appellant had other available remedies in law, since the Public Service Appellate Commission (hereinafter, the CASP, acronym in Spanish) is the body with exclusive primary jurisdiction to consider claims under Law No. 66, *supra.*

**\*2** The CFSE joined the request for dismissal of the

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.                    1


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

*Complaint* and adopted the arguments made by the State regarding the constitutionality of Law No. 66, *supra,* and dismissal of the *injunction.* It also requested dismissal of the request for *mandamus,* since there is no ministerial duty to deliver the information requested by the appellant. The appellant opposed the motions to dismiss filed by the State and the CFSE.

Subsequently, on January 29, 2015, the CFI issued the appealed *Judgment* dismissing the above-referenced *Complaint*. The trial court affirmed the constitutionality of Articles 11 and 17 of Law No. 66, *supra,* because they do not establish a suspicious and discriminatory classification against the career managerial employees of the CFSE which violates the equal protection of the laws. It also concluded that they do not violate the constitutional prohibition against the approval of laws which would contravene contractual obligations given the pressing interest sought by Law No. 66, *supra.*

The court of first instance decided that Law No. 66, *supra,* gives equal treatment to career managerial employees and unionized employees of the CFSE, since neither of the two (2) groups is excluded from the application of the savings measures. It decided that the fact that only unionized employees covered by collective bargaining agreements submit to the alternative participatory process does not imply that the measure is arbitrary or capricious. This conclusion is based on the fact that the ultimate end and purpose of the negotiation is precisely to guarantee that collective bargaining agreements comply with the savings contemplated in Law No. 66, *supra.*

Furthermore, the court of first instance concluded that there is a pressing interest of the State which justifies interfering in the contractual relationship between the CFSE and the appellant, as well as substantially affecting its employment conditions. The CFI also stated that the measures of Law No. 66, *supra,* are the least onerous and the State has emphatically rejected other more drastic measures such as the termination and layoff of public career employees.

On the other hand, the court of first instance stated that it did not have jurisdiction over the subject matter to consider the requests for *mandamus* and preliminary *injunction* filed by the appellant. According to the trial court, the one with exclusive primary jurisdiction to consider the controversies regarding the request for information and to stop the application of Articles 11 and 17 of Law No. 66, *supra,* is the CASP.

In accordance with its conclusions of law, the CFI *Granted* the motions to dismiss filed by the CFSE and the State, issued a declaratory judgment recognizing the constitutionality of Articles 11 and 17 of Law No. 66, *supra,* decided that it did not have jurisdiction over the subject matter to consider the request for *mandamus,* and dismissed the above-captioned *Complaint*.

**\*3** On February 12, 2015, the appellant filed a *Motion to Reconsider* including certain facts which it alleged should be reconsidered. On February 27, 2015, the State filed a *Motion in Compliance with Order and in Opposition to Motion to Reconsider.* On that same date, the CFSE also filed a motion titled *Opposition to Motion to Reconsider.* On March 2, 2015, the CFI issued a *Decision* in which it *Denied* the request for reconsideration.

Unsatisfied with the aforementioned result, on April 1, 2015, the appellant filed the above-captioned appeal claiming that the CFI committed the following errors:

> The Honorable Court of First Instance erred when it did not include in its Judgment a finding of essential and relevant facts that were not controverted by the appellees, an omission resulting in errors in the conclusions of law of the Judgment.
>
> The Honorable Court of First Instance erred when it decided that Articles 11 and 17 of Law 66–2014 are constitutional because they do not violate the principles of equal protection of the laws and prohibition to contravene contractual obligations.
>
> The Honorable Court of First Instance erred when it decided that it does not have jurisdiction to consider the request for *Mandamus* requiring that the CFSE Administrator give access to and deliver public documents and order to stop applying Articles 11 and 17 of Law 66–2014 to the appellant.

Subsequently, on May 1, 2015, the CFSE and the State filed separate briefs opposing the appeal.

With the benefit of the appearance of both parties, below is our discussion of the applicable law.

II.

A.

Rule 59.1 of Civil Procedure, 32 L.P.R.A. App. V R 59.1, authorizes the CFI to declare rights, statuses and other


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

legal relations even if another remedy is or can be filed. Said declaration may be affirmative or negative in form and effect, and shall have the force and effect of definitive judgments or decisions. The request for declaratory judgment results in a judicial decision regarding any discrepancy in the interpretation of the law. The purpose of a declaratory judgment is to dissipate the legal uncertainty in cases in which there is a substantial controversy between parties with adverse legal interests. The legal persons who may request a declaratory judgment are those whose rights, status and other legal relations are affected by a statute. *Mun. Fajardo v. Srio. Justicia et al.,* 187 D.P.R. 245, 254 (2012).

### B.

Furthermore, Rule 10.2 of Civil Procedure of 2009, 32 L.P.R.A. App. V R. 10.2, establishes that all factual or legal defenses against a claim must be stated in the responsive pleading. However, this same Rule allows the party against whom the complaint has been filed to file a motion to dismiss, alleging any of the following defenses: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) insufficiency of process; (4) insufficiency of service of process; (5) failure to state a claim that would justify granting a remedy; and (6) failure to join an indispensable party. *Trans–Oceanic Life Ins. v. Oracle Corp.,* 184 D.P.R. 689, 701 (2012).

**\*4** This Rule also provides that, when a motion to dismiss is filed, the court must deem as true all facts well-pleaded in the complaint and interpret all assertions in the light most favorable to the plaintiff and make all of the inferences which may assist the same in its claim. *Ortiz Matías et al. v. Mora Development,* 187 D.P.R. 649, 654 (2013); *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 D.P.R. 920, 935 (2011); *Candal Vicente v. CT Radiology Office, Inc.,* 112 D.P.R. 227, 231 (1981). In these cases, the complaint will only be dismissed if it is shown that the plaintiff does not have the right to any remedy under any facts that may be proven during trial. *Ortiz Matías et al. v. Mora Development,* supra; *Pressure Vessels P.R. v. Empire Gas P.R.,* 137 D.P.R. 497, 505 (1994).

However, this doctrine only applies to facts well-pleaded and stated in a clear and conclusive manner, which on their face do not leave room for doubt. *Pressure Vessels P.R. v. Empire Gas P. R.,* supra.

Only all of the well-pleaded facts will be deemed true without considering the conclusions of law or written allegations, in such a way that their content is hypothetical and they make it impossible for the judge to detect without a margin of error the facts definitively and correctly alleged. *Asoc. Importadores de Cerveza v. E.L.A.,* 171 D.P.R. 140, 149 (2007).

In addition, it is well settled that in general appellate courts should not intervene in the exercise of discretion of trial courts, unless the existence of gross abuse of discretion, prejudice, clear error or partiality is shown. *Trans–Oceanic Life Ins. v. Oracle Corp.,* supra; *Lluch v. España Service Sta.,* 117 D.P.R. 729, 745 (1986). A party affected by a judgment of dismissal under Rules 10.2 and 10.3 of Civil Procedure does not have at its disposal the mechanism of additional findings of fact because the court is not obligated to make findings of fact. It is considered that the judge assumed as true and took into consideration the facts well-pleaded in the complaint. Therefore, the CFI is not obligated to state in the judgment the findings of fact supporting its decision. *Roldán Rosario v. Lutrón S.M.,* 151 D.P.R. 883, 889 (2000). Rule 42.2 of Civil Procedure, 32 L.P.R.A. App. V R. 42.2(a), establishes that it will not be necessary to specify the proven facts and state the conclusions of law separately when deciding motions under Rule 10 of Civil Procedure, *supra.*

### C.

Every statute is, and is assumed to be, constitutional, until proven otherwise. When the Supreme Court of Puerto Rico analyzes the validity of a statute, it does so conscious of the deference that the legislature deserves, and in accordance with the Separation of Powers. Our Supreme Court seeks to impart interpretations that sustain the validity of the law against challenges as to unconstitutionality. *E.L.A. v. Northwestern Selecta,* 185 D.P.R. 40, 71 (2012).

**\*5** A law may be declared unconstitutional both on its face and in its application. When evaluating whether it is unconstitutional on its face, we must consider whether the defect is contained in the very text of the law. However, in order to determine unconstitutionality in its application, the court must analyze the context in which it was applied. *E.L.A. v. Northwestern Selecta,* supra, pp. 71–72. Laws may be discriminatory on their face based on their purpose or their effect and in both cases they are considered facially invalid. The regulating entity is

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

required to defend them and submit evidence that they serve a legitimate purpose that is otherwise impossible to satisfy through other reasonable non-discriminatory measures. Nevertheless, laws are assumed to be valid if they are drafted in neutral terms and there is no bias in their application. *E.L.A. v. Northwestern Selecta,* supra, pp. 73–74.

### D.

Section 7 of Article II of the Constitution of Puerto Rico provides that no person shall be deprived of liberty or property without due process of law, nor shall any person in Puerto Rico be deprived of equal protection under the law. Also, laws shall not be enacted which undermine contractual obligations. Const. of P.R., Art. II, Sec. 7, L.P.R.A., Vol. 1; *López v. E.L.A.,* 165 D.P.R. 280, 296–297 (2005).

Equal Protection is based on the cardinal principle of "equal treatment for similarly situated persons." The Government may make classifications of persons for any legitimate purposes, but in doing so it must follow that basic rule. The State needs to establish classifications in order to be able to govern such a complex and varied society, with different individual and group interests and different social relations. It means that it is impossible to govern any society and especially a modern society without imposing disctinctions among people, without building inequalities that favor some and prejudice others. *López v. E.L.A.,* supra, p. 297.

The State may make classifications of persons without violating equal protection of the law, as long as the classification is reasonable and seeks to achieve or protect a legitimate public interest. Not all discrimination violates the precept of equal protection of the law, although it does prohibit unjustified unequal protection. *López v. E.L.A.,* supra, pp. 297–298.

When analyzing the reasonability of a legislative classification, courts must use one of two (2) standards established by case law. We are referring to the use of: (1) strict scrutiny; or (2) rational basis test. The state has broad latitude to establish classifications related to social or economic issues. The analysis of laws that establish classifications in those areas shall be done through the rational basis test. Under said test, classifications shall not be considered invalid, unless

they are clearly arbitrary and there is no legitimate State interest. Classifications shall also not pass the constitutional test if there is no rational connection between them and the state interest. When the rational basis test is used, the challenged law has a presumption of constitutionality and the person challenging its validity has the burden to rebut said presumption. *López v. E.L.A.,* supra, pp. 298–299.

**\*6** On the other hand, to justify the use of strict scrutiny, the court must identify whether the classification affects a fundamental right of the person or whether it establishes a suspect class that bears no relation to the ability or aptitude of the affected persons. When these classifications are identified, it is presumed that the legislation is unconstitutional and the State has to prove the existence of a compelling interest to justify it. This scrutiny has been applied to certain laws that establish suspicious distinctions such as ones based on race, nationality, citizenship, poverty or birth. *López v. E.L.A.,* supra, p. 299; *Zachry International v. Tribunal Superior,* 104 D.P.R. 267, 278 (1975).

### E.

Article II, Section 7, of the Constitution of Puerto Rico, *supra,* also prohibits enactment of laws that undermine contractual obligations. This constitutional guarantee limits governmental intervention in contractual obligations between private parties and those undertaken by the State. Its purpose is to ensure stability of contractual obligations. However, its protection is not absolute, as it must be in harmony with the State's regulatory power for the benefit of the public interest. The Supreme Court of Puerto Rico has repeatedly held that not all undermining of a contractual obligation is unconstitutional. *AMPR v. Sist. Retiro–Maestros V,* 190 D.P.R. 854, 868 (2014). The analysis of this constitutional clause depends on whether the contract that is being modified is between private entities or whether the state is a party.

Private contracts are analyzed using a reasonability test which takes into account how substantial the public interest that is being promoted is and the extent of contractual harm. The first step is to determine whether there is a contractual relationship and whether its modification entails substantial or severe harm. If it is determined that the harm is severe, then the court must evaluate whether the governmental intervention is due to a legitimate interest and whether it is rationally related to achieving said goal.. *AMPR v.*

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

*Sist. Retiro Maestros V,* supra, p. 869.

A more careful scrutiny is applied when the State is part of the contractual relationship due to the fact that it may act for its own benefit. Contractual harm must be reasonable and necessary to promote an important government purpose. When evaluating the need and reasonability of a law some deference must be given to the judgment of the Legislative Assembly. The greater the severity of the harm, the more rigorous courts must be in analyzing the challenged legislation. Nevertheless, the statute shall be upheld if the harm is a consequence of a reasonable and necessary modification meant to promote public interest. *AMPR v. Sist. Retiro Maestros V,* supra, pp. 869–870; *Trinidad Hernandez et al. v. ELA et al.,* 188 D.P.R. 828, 835 (2013).

**F.**

**\*7** Law No. 66, *supra,* declared a state of fiscal emergency that the Government of Puerto Rico is in. This crisis is described as "the most critical that the nation has undergone in all of its history." Public corporations are not exempt from the fiscal crisis, and therefore they have also been affected by the plan, which includes: (1) measures to reduce expenses of the Executive; (2) rules and restrictions as to granting increases of economic benefits or extraordinary economic compensation; (3) provisions as to collective bargaining agreements; and (4) provisions as to fiscal control of public corporations. Statement of Purposes and Art. 2 of Law No. 66, *supra.* This special legislation of a socio-economic nature was enacted under the state's police power, in order to guarantee sufficient liquidity to be able to pay payroll to public employees and cover the essential services offered to the general population. Statement of Purpose of Law No. 66, *supra.*

Article 2 establishes that adopting a plan to handle the consequences of the fiscal crisis and enable the continuity of essential health, safety, education, social work, and development services, among others. Additionally, it establishes the restoration of the public credit as public policy of the State. These goals shall be achieved by eliminating in the short term the deficit from the General Fund and improving the fiscal condition of public corporations but without terminating public employees or affecting essential services.

Law No. 66, *supra,* has priority over any other legislation, as it was enacted under the state's police power, and the Legislative Assembly's constitutional authority to enact laws that protect life, health, and welfare of the People when essential government services are at grave risk. Art. 3 of Law No. 66, *supra.*

While Law No. 66, *supra,* is in effect, employees of the Executive Branch shall not receive increases in economic benefits or extraordinary monetary compensation, except as established under paragraph (d) of Article 11. Art. 11(a) of Law No. 66, *supra.* The limits established in Article 11 shall apply to all employees of the Executive Branch entity, regardless of whether they are politically appointed, regular or career employees, temporary or irregular employees, and regardless of their specific role in the Executive Branch. Furthermore, they shall apply despite any contrary provision, including laws, norms, regulations, collective bargaining, policies, employment manuals, circulars, contractual letters, certifications, employment conditions, rules and regulations, regulatory documents, classification or compensation plans. Art. 11(f) and (h) of Law No. 66, *supra.*

**\*8** Paragraph (i) of Article 11 expressly provides as follows:

In recognition of the importance of unions for public employees not only to represent the economic welfare of workers, but to elevate public service to its maximum potential and maintain peace at work, a uniform alternate participatory process is established to achieve the objectives of the public policy of this Law, including the necessary savings within the parameters established under paragraphs (j) and (k), as the case may be, with collective bargaining as the guiding principle. The agreements reached with the authorized representatives of unionized employees, and in turn approved in writing by the appropriate union members and the authorized representative of the Executive Branch Entity through and in accordance with the negotiation parameters permitted herein, shall substitute the provisions of paragraphs (a), (b), (c) and (d) of this Article and any other provision that is relevant to this law and which was the subject of negotiation.

Paragraph (j) authorizes entities of the Executive Branch subject to Law No. 45–1998, known as the Puerto Rico Public Service Work Relations Act, 3 L.P.R.A. sec. 1454 et seq., to use the process of negotiation to amend collective bargaining agreements and modify economic



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

employment conditions established under Article 11, *supra*. Nevertheless, said modifications shall guarantee an average savings per union employee comparable to what would have been obtained by applying its referenced sections. Art. 11(j) of Law No. 66, *supra*.

Article 14 establishes the forum to decide controversies related to Law No. 66, *supra*. Its text provides as follows:

> The Public Service Appellate Committee (CASP, acronym in Spanish), or its successor entity, as regards labor matters or matters that would otherwise fall within CASP jurisdiction, shall have exclusive primary jurisdiction to consider appeals arising as a consequence of actions or decisions taken under this Chapter, of employees covered or not covered by the provisions of Law Number 45–1998, as amended, known as Public Service Work Relations Act; as well as of non-union employees of Entities of the Executive Branch excluded from the application of the provisions of Law No. 184–2004, as amended, known as Public Service Human Resources Administration Act of the Commonwealth of Puerto Rico, and non-union employees of such Entities of the Executive Branch covered by the provisions of Law No. 184–2004.
>
> **\*9** The Labor Relations Board, or its successor entity, shall have exclusive primary jurisdiction to hear appeals arising as a consequence of actions or decisions made in accordance with this Chapter, of employees covered by Law No. 130 enacted on May 8, 1945, as amended. It is further provided that, in accordance with the provisions of this Law, no action taken in accordance with its provisions shall be a violation of existing collective bargaining agreements or a refusal to negotiate in good faith or an illegal practice.

Article 17 of Law No. 66, *supra,* in turn, establishes the fiscal control measures that public corporations should take. This Article suspends performance of non-economic clauses negotiated in current agreements, which have direct or indirect economic effects in the operation of public corporations, aggravate their budgetary situation, or which must be suspended to alleviate the budgetary situation. Furthermore it includes a list of some non-economic clauses that may have a direct or indirect economic effect.

### G.

As is well known, the term "jurisdiction" means the power or authority of a court or administrative entity to consider and decide cases or controversies. *CBS Outdoor v. Billboard One, Inc. et al.,* 179 D.P.R. 391, 403 (2010). As a general rule, judicial forums in Puerto Rico have general jurisdiction. That is, they have the authority to hear any cause of action that presents a controversy to be adjudicated. *Clases A, B y C v. PRTC,* 183 D.P.R. 666 (2011), citando a *Mun. Arecibo v. Mun. Quebradillas,* 161 D.P.R. 109, 114 (2004); *Junta Dir. Cond. Montebello v. Fernández,* 136 D.P.R. 223, 230 (1994).

The rule of general jurisdiction prevails, unless the court has no subject matter jurisdiction. *Rodríguez v. De León,* 191 D.P.R. 700 (2014). Subject matter jurisdiction refers to the ability of a court to consider and decide a controversy as to a legal issue. Subject matter jurisdiction may not be granted by the parties. The court may also not assume it since only the State, through its laws, can grant or deprive courts of subject matter jurisdiction. *Rodríguez v. De León,* supra.

On the other hand, administrative agencies only have the powers that are expressly granted by an enabling act and any that are indispensable to carry out its duties and responsibilities. The above means that situations may arise in which courts and agencies may assume jurisdiction over the same matter, in which case, this is where the doctrine of primary jurisdiction plays an important role. *CBS Outdoor v. Billboard One, Inc. et al.,* supra.

**\*10** Exclusive or statutory primary jurisdiction occurs when the legislature legislates to grant exclusive primary jurisdiction to an administrative entity. Exclusive primary jurisdiction does not allow for any other means of resolution, adjustment or prevention and does not involve shared or concurrent jurisdiction. On the contrary, it is subject matter jurisdiction that the legislature exclusively assigned to the jurisdictional sphere of the agency. As a result, courts are prevented from intervening in the first instance in matters or issues as to which agencies have been granted exclusive jurisdiction *Rodríguez v. De León,* supra.

The doctrine of primary jurisdiction was created by

© 2019 Thomson Reuters. No claim to original U.S. Government Works.      6



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

case law. *CBS Outdoor v. Billboard One, Inc. et al.,* supra, pp. 403–404. This doctrine does not deprive courts of jurisdiction, it considers a question of priority of jurisdiction. Its main purpose is to promote harmony between courts and administrative entities. Specifically, the doctrine of primary jurisdiction provides which forum, judicial or administrative, should initially hear a controversy. To that effect, the doctrine has two (2) branches: (1) exclusive; and (2) concurrent. *Id.,* p. 404.

In the first branch, exclusive primary jurisdiction, a law or statute grants jurisdiction to a given administrative entity and indicates that this shall be the only forum with the power to hear, initially, a given controversy. *Id.* "The second branch is manifested when the judicial forum and the administrative forum share the authority to decide a given matter. On these occasions, we are faced with true primary jurisdiction or primary concurrent jurisdiction." *Id.,* p. 405. The grounds for this version arise from the judicial deference that administrative agencies deserve due to their training, specialization, expertise and knowledge to handle specific matters. *Id.*

Applying the doctrine of primary jurisdiction requires that courts examine the scope of the enabling act of an administrative agency and determine whether the matter falls strictly within its purview. It also requires that courts consider and determine whether it is indispensable and necessary to decide that the agency should be the one to initially intervene. *Consejo Titulares v. Gómez Estremera, et al.,* 184 D.P.R. 407, 430–431 (2012).

### H.

The extraordinary writ of injunction seeks to prohibit or order the performance of an act to avoid imminent or irreparable harm to a person, when there is no other legally appropriate remedy. *Next Step Medical v. Bromedicon, et al.,* 190 D.P.R. 474, 485–486 (2014); *Mun. Fajardo v. Srio Justicia et al.,* supra, p. 255. Our law has the following three (3) forms of this type of writ: the temporary restraining order, the preliminary injunction and the permanent injunction. *Next Step Medical v. Bromedicon, et al.,* supra, p. 486.

*11 The preliminary or *pendente lite* injunction is a writ issued by the court before a trial on the merits and, usually, after holding a hearing in which the parties have the opportunity to present evidence in support and opposition to the issuance thereof. The main purpose of this writ is to maintain the current status of affairs until a hearing is held on the merits, so the case does not become moot. Subsequently, substantive law shall be considered in a full trial as with any type of action. The preliminary injunction is intended to require or prohibit carrying out a given action, in order to prevent imminent or irreparable harm from being caused to a person while litigation is pending. The important factor that governs the issuance of this extraordinary remedy that is strictly linked to the doctrine of equity is the existence of a real threat of suffering harm for which there is no legally appropriate remedy. *Next Step Medical v. Bromedicon et al.,* supra.

When pondering the issuance of a preliminary injunction, the court should consider the following criteria: (1) the nature of the harm that may be caused to the parties if the writ is granted or denied; (2) the irreparability of the harm or non-existence of a legally appropriate remedy; (3) the moving party's probability of prevailing in a trial on the merits; (4) the probability that the cause becomes moot if the injunction is not granted*;* and (5) the potential impact on public interest of the remedy requested. In addition to the criteria listed, Rule 57.3 of Civil Procedure adds that the court should consider the criteria of "the diligence and good faith of the moving party." 32 L.P.R.A. Ap. V R. 57.3; *Next Step Medical v. Bromedicon et al.,* supra.

These requirements are not absolute, they are guidelines to direct the court when deciding if the evidence submitted justifies the issuance of the writ. Granting the remedy is in the court's discretion, which shall be exercised upon weighing both the interests and the needs of the parties involved in the case. It must be issued with restraint and only when the violation of a right has been clearly and unequivocally demonstrated. The court's decision shall not be revoked on appeal, unless it is shown that the court of first instance abused its discretion. *Next Step Medical v. Bromedicon et al.,* supra, p. 487.

When deciding whether a permanent injunction is appropriate, the court shall consider the following criteria: (1) whether plaintiff has prevailed in a trial on the merits; (2) whether plaintiff has a legally appropriate remedy; (3) the public interest involved; and (4) the balance of equities. These criteria are not absolute, rather they are guidelines to inform the court's discretion when determining whether the evidence

WESTLAW   © 2019 Thomson Reuters. No claim to original U.S. Government Works.    7

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

justifies the injunction. *Plaza Las Américas v. N & H,* 166 D.P.R. 631, 643–644 (2005).

## I.

**\*12** With regards to a writ of *mandamus,* the Supreme Court of Puerto Rico has decided that, in accordance with the provisions of Article 649 of the Code of Civil Procedure, 32 L.P.R.A. sec. 3421, "the writ of mandamus is a highly exceptional and discretionary writ that is issued to order a natural person, corporation or lower court to comply with or perform an action that is part of its duties and attributions." *AMPR v. Srio. Educación, E.L.A.,* 178 D.P.R. 253, 263 (2010). Said writ is only appropriate when a party requests performance of a legally imposed duty. This refers to a duty that is considered ministerial and which, therefore, does not allow for discretion in its performance, rather, is mandatory and imperative. *Noriega v. Hernández Colón,* 135 D.P.R. 406, 447–448 (1994); *Hernández Agosto v. Romero Barceló,* 112 D.P.R. 407, 418 (1982); *%21Alvarez de Choudens v.. Tribunal Superior,* 103 D.P.R. 235, 242 (1975). That is, it must involve "a specific mandate that the defendant must comply with and that does not allow it to decide whether or not to perform the requested action." *AMPR v. Srio. Educación, E.L.A.,* supra, p. 264.

On the other hand, "when performance of the action described depends on the discretion or judgment of the employee, said duty is considered to be non-ministerial." *Id.* See, also, *Díaz Saldaña v. Acevedo Vilá,* 168 D.P.R. 359, 365 (2006); *%21Alvarez de Choudens v. Tribunal Superior,* supra. Therefore, since they are not ministerial, discretionary duties are outside of the scope of a writ of *mandamus. AMPR v. Srio. Educación, E.L.A.,* supra. Furthermore, it should be pointed out that, since this is a highly exceptional writ, issuance of a writ of *mandamus* is not granted as a matter of law, rather it is in the discretion of the court. *Báez Galib y otros v. C.E.E. II,* 152 D.P.R. 382, 391–392 (2000). Consequently, issuance of a writ of mandamus is not appropriate if there is some other legally appropriate remedy, since the main purpose of the writ is not to replace available legal remedies, but to supplant their absence. *AMPR v. Srio. Educación, E.L.A.,* supra, pp. 266–267; *Hernández Agosto v. Romero Barceló,* supra; *Dávila v. Superintendente de Elecciones,* 82 D.P.R. 264, 274 (1960).

It should be repeated that a mandamus may be considered when the petitioner does not have a legally appropriate and effective remedy available in the ordinary course of law. See, Art. 651 of the Code of Civil Procedure, 32 L.P.R.A. sec. 3423. A mandamus petition must be assessed in light of several requirements. These are: (1) that defendant has a ministerial duty or obligation imposed by law; (2) that petitioner has a special interest in the right that is claimed; (3) that the agency's duty to act and the right of the petitioner are clearly and obviously stated in the law; (4) that the petitioner has no other legal remedy to enforce her or his right; and (5) that, having considered the effect that issuance of the writ shall have, the Court considers that the interests of justice require its issuance. *Dávila v. Superintendente de Elecciones,* supra, pp. 274–275. See, also, Arts. 649 to 651 of the Code of Civil Procedure, 32 L.P.R.A. secs. 3421–3423.

**\*13** In accordance with the framework described above, we proceed to decide the controversies submitted to our review.

## III.

In the petition filed before us, in the first assignment of error, appellant questioned the CFI's refusal to not [sic] include in the appealed *Judgment* the additional factual determinations requested in a motion for reconsideration filed by the appellant. It also argued that the lower court did not comply with the requirements of Rule 42.2 of Civil Procedure, *supra,* because it issued summary judgment without deciding uncontroverted facts. The arguments raised by appellant as to this are meritless. To that effect, it should be noted that the appealed *Judgment* was issued under Rule 10.2, *supra,* therefore, the CFI was not even required to formulate factual determinations. It is assumed that said forum deemed true the *Complaint's* well-pleaded allegations. It should be stated that Rule 42.2, *supra,* establishes that when judgment is issued granting a motion to dismiss, it is not necessary to specify the facts that were proven and indicate conclusions of law separately.

Nevertheless, even taking well-pleaded facts from the *Complaint* as true, the CFI decided that appellant did not have a cause of action that justified granting relief. Therefore, it issued declaratory judgment acknowledging the constitutionality of Articles 11 and 17 of Law No. 66, *supra.* Furthermore, it decided it did not have subject matter jurisdiction to consider the *mandamus* petition and issue the injunction requested since appellant's claim is a controversy as to which CASP has exclusive jurisdiction.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

As a second assignment of error, appellant challenged the constitutionality of Articles 11 and 17 of Law No. 66, *supra*. The Association alleged that applying these Articles violates the right of non-union managerial employees of CFSE to equal protection of the law and violates the prohibition against undermining contractual obligations. Appellant argued that the cited Articles establish an unreasonable distinction between career employees and union employees that have the benefits of collective bargaining agreements. It held that said classification threatens and dramatically reduces economic benefits of its members, compared to that of union employees.

According to appellant, said Articles establish unequal and discriminatory treatment since: (1) they exclude non-union managerial career employees from the alternate participatory process; (2) the average savings fee imposed on managerial employees is two and a half times the fee established for union employees; (3) preferential treatment is given to union employees *vis à vis* non-union managerial career employees affiliated to bonafide labor organizations, the effect of which is to impose a greater burden; (4) they allow agreements with labor organizations that grant work conditions and economic benefits that are greater than those of the Association's employees; and (5) they do not provide the members of the Association the same economic benefits and work conditions agreed upon with labor organizations.

**\*14** On the other hand, the State affirmed that Law No. 66, *supra*, does not establish arbitrary or capricious distinctions and stated that said legislation complies with the State's compelling interest to handle and solve the serious fiscal crisis faced by the Government of Puerto Rico. The State also argued that Law No. 66, *supra*, was enacted to guarantee the continuity of public work in areas such as health, public safety, education and social work. Furthermore it has the purpose of restoring State credit and eliminating the fiscal deficit of the general fund without having to terminate public employees or affect the essential duties of Government agencies. The CFSE adopted the arguments of the State as to the constitutionality of Law No. 66, *supra*.

The determination as to the constitutionality of Articles 11 and 17 of Law No. 66, *supra*, requires an analysis of the text of the law to establish whether it is discriminatory on its face and in the context in which it has been employed to see if its application is discriminatory. See, *E.L.A. v. Northwestern Selecta*, supra. Article 11 of Law No. 66, *supra*, prohibits increasing economic benefits and extraordinary monetary compensation received by employees of the Executive Branch, other than the exceptions decided by the legislature. Said Article contains a list of the economic benefits and extraordinary monetary compensations that shall not be granted while Law No. 66, *supra*, is in effect.

The suspension of economic benefits and extraordinary monetary compensation does not make exclusions, as it extends to all of the employees of the Executive Branch and includes public corporations. The measure affects all employees of the Executive branch regardless of whether they are politically appointed employees, regular or career employees, transitory or irregular employees and of their specific duties. Article 11, *supra*, allows employees that are collectively organized to negotiate economic benefits that are different from those allowed under Law No. 66, *supra*, but subject to achieving savings within the parameters established by said legislation.

Article 17 of Law No. 66, *supra*, establishes the fiscal control measures that public corporations must take. This Article suspends performance of non-economic clauses negotiated in current agreements which have direct or indirect economic effects on the operation of the public corporation, aggravate its budgetary situation, or which must be suspended to alleviate the budgetary situation. Said Article has a list of some non-economic clauses which may have a direct or indirect economic effect.

**\*15** An analysis of the text of Articles 11 and 17, *supra*, makes clear that the State did not violate the constitutional clause which guarantees equal protection before the law. The Articles, the constitutionality of which Appellant challenges, do not establish a suspect class based on race, color, sex, birth, origin, social condition, political or religious creed or nationality, that violates fundamental rights of appellant and justifies use of strict scrutiny and activation of the presumption of unconstitutionality of the law. See, *López v. E.L.A.,* supra. However, even if said presumption were activated, it was proven that Law No. 66, *supra*, responds to the compelling State interest and public policy to fight and solve the serious fiscal crisis of the nation which threatens the health, safety and essential public services of the general population.

Law No. 66, *supra*, clearly is economic legislation, whose main purpose is to remove the nation from its fiscal crisis. Therefore, its


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

constitutionality should be analyzed based on traditional scrutiny. Articles 11 and 17, *supra,* pass the rational basis test. Appellant did not defeat the presumption of constitutionality, since it did not demonstrate the existence of an arbitrary classification. The State, however, did prove the existence of a legitimate purpose. The fiscal crisis is an uncontroverted fact. Reduction of economic benefits of all parts of the Executive Branch, including public corporations, is part of the measures of reduction of expenses necessary to save the nation's credit and guarantee essential services.

The measures of Article 11, *supra,* extend to all public employees of the Executive Branch, regardless of their classification. Nevertheless, appellant alleged that Law No. 66, *supra,* is unconstitutional because it only allows collectively organized employees to negotiate economic benefits that are different from those allowed under Law No. 66, *supra.* However, appellant ignored that the negotiation with the nominating authority has the purpose and is subject to achieving savings within the parameters established under said legislation. Managerial employees represented by appellant are not in a disadvantaged position due to fact that the collectively organized employees' possibility of negotiating with the nominating authority is precisely intended to guarantee the savings projected under Law No. 66, *supra.*

Article 17 of Law No. 66, *supra,* also does not disadvantage appellant relative to employees covered by collective bargaining agreements. On the contrary, said Article only affects the rights of collectively organized employees, since it suspends compliance with non-economic clauses negotiated in its agreements, but which have a direct or indirect economic impact on the operation of the corporation and which aggravate its budgetary situation. Let us remember that appellant does not have a constitutional right to collectively negotiate terms and conditions of employment. Therefore, what Law No. 66, *supra,* seeks, is precisely to adapt that right of organized employees to the need that Law No. 66, *supra*, seeks to alleviate.

**\*16** Law No. 66, *supra,* does not make an arbitrary or suspicious classification between non-union managerial career employees of the CFSE and union employees covered by collective bargaining agreements. On the contrary, we find that the law affords them similar treatment. Both groups have been affected by the cost reduction measures that involve all of the employees of the Executive Branch, including public corporations and without distinction of the position held. The measures of Articles 11 and 17, far from establishing a suspicious class in detriment to appellant, have the intention of avoiding the economic collapse of the Government and guarantee that the collective bargaining agreements comply with the savings established under Law No. 66, *supra.*

As we expressed above, appellant has not defeated the presumption of constitutionality of Articles 11 and 17 of Law No. 66, *supra.* The State, on the other hand, has demonstrated that said legislation has a legitimate and compelling purpose of avoiding the collapse of the finances of the Government of Puerto Rico and guarantee basic and essential needs for the general population. Articles 11 and 17, *supra,* also do not violate the constitutional prohibition against enacting laws that undermine contractual obligations. We cannot ignore that this protection is not absolute, as it must be harmonized with the State's regulatory power for the benefit of the public interest.

The constitutionality of the above Articles is unquestionable. The measures taken by the state in Law No. 66, *supra,* are without a doubt reasonable and necessary to advance the important governmental purpose of saving Puerto Rico's finances. Additionally, they are the least burdensome possible, since the intention of the State is to achieve economic stability of the Government without affecting the provision of essential services and without terminating public employees. *AMPR v.. Sist. Retiro Maestros V,* supra; *Trinidad Hernandez et al. v. ELA et al.,* supra.

Lastly, appellant argued that the CFI erred in not issuing the writ of *mandamus* requested for the CFSE to perform its ministerial duty to deliver some public documents. Appellant referred specifically to the following documents: (1) the savings goal established by CFSE; (2) the report of politically-appointed positions and amounts; (3) the budget plan proposed for complying with Articles 8–11, 17–18; (4) the report of managerial positions that are held and vacant, as listed in Article 11, Section (i) of Law No. 66; and (5) other related documents necessary for complying with the savings goals and provisions provided in Law No. 66, *supra.*

Appellant's argument is erroneous. The CFI acted correctly in deciding it lacked subject matter jurisdiction and not considering the *mandamus* petition. CASP is the entity with exclusive primary jurisdiction to consider controversies related to the implementation of cost

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

reduction measures taken by the Executive Branch under Law No. 66, *supra*. By express provision of the legislator, appellant should have appeared first before CASP to question the cost reduction measures taken by CFSE which it alleges affect its economic benefits. Similarly, we conclude that issuing the extraordinary writ of *injunction*[2] was also not appropriate, as appellant has remedies available provided by CASP. Consequently, the appealed *Judgment* should be affirmed.

### IV.

***17** Based on the grounds indicated above, the appealed *Judgment* is affirmed.

Decided and ordered by the Court and certified by the Clerk of the Court of Appeals.

Dimarie Alicea Lozada

Clerk of the Court of Appeals

---

Footnotes

[1] See, Appendix to the Appeal, pp. 206–229.

[2] It is indispensable to point out that upon deciding the constitutionality of Articles 11 and 17 of Law No. 66, *supra,* it is meritless and inappropriate to discuss whether the CFI erred in not issuing the *injunction* to prevent the alleged unconstitutional application of the law.

---

**End of Document**     © 2019 Thomson Reuters. No claim to original U.S. Government Works.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.