UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ X
                                                                         :
In re:                                                                   :
                                                                         :
THE FINANCIAL OVERSIGHT AND                                              :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                        :   Title III
                                                                         :
      as representative of                                               :   Case No. 17-BK-3283 (LTS)
                                                                         :
THE COMMONWEALTH OF PUERTO RICO et al.,                                  :   (Jointly Administered)
                                                                         :
      Debtors.¹                                                          :
------------------------------------------------------------------------ X
```

**REPLY OF (I) FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ACTING THROUGH ITS SPECIAL CLAIMS COMMITTEE, AND (II) OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO OBJECTIONS FILED TO MOTION UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 502 AND BANKRUPTCY RULE 3007, ESTABLISHING PROCEDURES WITH RESPECT TO OMNIBUS OBJECTION TO CLAIMS**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 4

    A.    Objectors Satisfied Their Meet and Confer Obligations........................................ 5

    B.    Objection Should Proceed Now, Independent of Other Pending Litigation, and Without Waiver of Any Additional Bases for Objections .............................. 6

    C.    Objection Procedures Comply with Federal Rule of Bankruptcy Procedure 3007 and Due Process................................................................................................ 8

    D.    Proposed Procedures Are Fair and Reasonable to Respondents and All Other Parties in Interest ........................................................................................ 11

    E.    GO Group's Proposed Alternative Procedures Are Inadequate .......................... 13

    F.    Hein Response Should Be Overruled .................................................................. 15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Johns–Manville Corp..*,
    68 B.R. 618 (Bankr. S.D.N.Y. 1986)......................................................................................9

*In re Orlando Inv., L.P.*,
    103 B.R. 593 (Bankr. E.D. Pa. 1989) ....................................................................................9

*Warth v. Seldin*,
    422 U.S. 490 (1975)...............................................................................................................8

**Statutes**

Bankruptcy Code ......................................................................................................................7, 14
    § 105(a) ..............................................................................................................................1, 14
    § 502......................................................................................................................................1, 14

Puerto Rico Oversight Management and Economic Stability Act ("PROMESA") .......................14

Uniform Commercial Code § 8-202 .............................................................................................11

**Other Authorities**

Fed. R. Bank. P.
    R. 3007................................................................................................................................ *passim*
    R. 3007(a) ..............................................................................................................................9

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for the Commonwealth of Puerto Rico (the "Commonwealth"), acting through its Special Claims Committee (the "Oversight Board"), and the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee, and together with the Oversight Board, the "Objectors") hereby reply to the (a) joint objection of the Ad Hoc Group of Constitutional Debtholders, the Commonwealth Bondholder Group, Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively, the "GO Group") [Docket No. 4923]; (b) joinder of Autonomy Capital ("Autonomy") to the GO Group's Objection [Docket No. 4925]; (c) objection of the OppenheimerFunds, Inc. ("Oppenheimer," and together with the GO Group and Autonomy, the "Respondents") [Docket No. 4924]; and (d) response and objection of Peter C. Hein[2] (the "Hein Objection") [Docket No. 4913] to the *Urgent Motion of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Objection Procedures With Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Requesting Related Relief* [Docket No. 4788] (the "Procedures Motion").[3]

## PRELIMINARY STATEMENT

1. The Procedures Motion represents the Objectors' best efforts to establish a process for beginning to adjudicate one of the largest and most critical issues in these Title III cases: the validity of more than $6 billion in general obligation bonds issued by the

---

[2] As discussed below, Mr. Hein, an attorney with Wachtell, Lipton, Rosen & Katz, acting *pro se*, filed his objection ***after*** the deadline set by the Court. Mr. Hein did not request an extension of time to respond and is not covered by the extension granted to the other Respondents. *See* Docket No. 4843. As a result, Mr. Hein should not be heard in response to the Procedures Motion.

[3] Capitalized terms not defined herein shall have the meanings ascribed thereto in the Procedures Motion.

Commonwealth. The Objectors have not, contrary to the Respondents' allegations, filed the Objection and Procedures Motion at this time as part of some broader negotiating strategy to exert leverage over the Challenged GO Bondholders. Indeed, although the Committee and its advisors have been looking into the issues set forth in the Objection for some time, the Special Claims Committee of the Oversight Board did not appoint its counsel until the end of November 2018. Since then, the Objectors have worked together diligently to prepare and file the Objection and Procedures Motion as soon as possible.

2. Setting aside the Respondents' baseless attacks on the timing and purpose of the Objectors' filings, the Respondents' various arguments as to the propriety of the procedures proposed in the Procedures Motion (the "Objection Procedures") are without merit. At the outset, the parties should not wait for the completion of an eventual mediation to begin establishing the Objection Procedures, as the Respondents contend. Previously, the Court entered an order making clear that all litigation and mediation processes in these Title III cases shall remain separate and that no party may reference events or actions in the mediation process in filings with the Court.[4] The Objectors have violated this order insofar as they seek to preclude the Objection from moving forward based on the nature and content of eventual mediation sessions. In any event, the parties have the resources and sophistication to participate in mediation while also engaging in related litigation, as they have done throughout these Title III cases, at times producing positive results.[5] Further, the Objection Procedures do not require the

---

[4] *See Standing Order Regarding Separation of Mediation and Litigation Activities* [Docket No. 1841] (no "party in interest shall discuss, in written or oral submissions, and the Court will neither invite nor entertain, information regarding events or actions in the mediation process . . ."). The Objectors will refrain from addressing in greater detail the mediation argument advanced by the Respondents until oral argument on the Procedures Motion, at which time they will seek guidance from the Court on the propriety of arguing mediation issues before the Court.

[5] The Court will recall that the COFINA matter was not settled until after the Court heard summary judgment motions, and that the parties to the COFINA dispute had ongoing negotiations while the motions were being argued before the Court.

Respondents to do anything of substance for several months, thereby debunking their argument that the Objection Procedures should not be implemented until after an eventual mediation is completed.

3. The Respondents also contend that the Objection Procedures are unfair to the Respondents and fail to satisfy Bankruptcy Rule 3007 and the requirements of due process. Permeating these arguments appears to be an unwarranted sense of paranoia regarding the perceived intentions of the Objectors and the goals of the Objection Procedures. To help put the Respondents' minds at ease, nothing in the Objection Procedures is designed to impact the substantive rights of the holders of Challenged GO Bonds or "wrench apart" existing bondholder groups. The sole purpose of the Objection Procedures is to establish an organized and efficient manner for litigating what the Respondents themselves allege is a very complex dispute.

4. The Respondents express particular concern about the information the Objectors have requested in the proposed Notices of Participation. As discussed below, this limited information will be used to help the Objectors identify issues that may require special litigation procedures. For example, if some participants intend to raise an argument that involves a question of law or fact that is a gating item for other arguments, it may make sense to brief or take discovery on that issue first, before proceeding to other issues.[6] Identifying common issues at the outset will also help the parties and the Court determine whether it is worthwhile to ask claimants to try to submit joint briefs on issues on which they are fully aligned. By proposing such collaboration, the Objectors seek to establish an efficient litigation process, not to "sow division" within existing groups or compel such groups to disband.

---

[6] As discussed below, the arguments set forth in Notices of Participation will not have a "preclusive effect" on later arguments, as the Respondents fear, and the Respondents were so advised before they filed their objections.

5. Finally, it is important to reiterate what the Objection Procedures do not do: they do not establish a discovery schedule, briefing schedule or anything else of a permanent nature. Rather, they merely lay out a process for the Court to begin considering these issues, based upon input from all parties. For these reasons and those discussed further below, the Objectors respectfully submit that the Court should overrule the arguments raised by the Respondents and approve the proposed Objection Procedures.

## ARGUMENT

6. No Respondent disputes the need for a special set of procedures to govern the orderly prosecution of the Objection. The Respondents instead complain about certain aspects of the proposed Objection Procedures, including that (i) the Objectors failed to meet and confer with the Respondents before filing the Procedures Motion; (ii) the process contemplated by the Objection Procedures should not commence until after the completion of mediation and should be consolidated with separate litigation involving the PBA; (iii) the procedures fail to provide adequate notice and violate due process; and (iv) the procedures are unfair insofar as they require claimants to provide substantive information in connection with the proposed Notices of Participation and seek to prevent claimants from forming their own creditor groups. The Objectors respectfully submit that these arguments should be overruled as without merit for all the reasons discussed below. Similarly, the Objectors respectfully submit that the Court should reject the alternative objection procedures proposed by the GO Group, as they would only delay and unnecessarily complicate the litigation. Finally, the Hein Objection should be overruled as both untimely and without merit.

### A. OBJECTORS SATISFIED THEIR MEET AND CONFER OBLIGATIONS

7. The Respondents' assertion that the Objectors failed to satisfy their meet and confer obligations prior to filing the Procedures Motion is incorrect. As an initial matter, notwithstanding the Respondents' suggestions to the contrary, the relief sought in the Procedures Motion is not the type of relief for which a pre-filing conference is normally required; the only reason a meet and confer was necessary in this instance is that the Objectors filed the Procedures Motion as an "urgent motion" to ensure it would be heard at the January omnibus hearing, rather than at the March omnibus hearing. Notably, notwithstanding the technically urgent nature of the motion, the Respondents had *more* time to respond to it than they would have had if the motion had been filed on regular notice twenty-two (22) days before the applicable hearing date.[7]

8. The Objectors attempted in good faith to satisfy their meet and confer obligation by conferring with counsel for certain members of the GO Group before filing the Objection.[8] Specifically, during a conference call on January 14, 2019, prior to the filing of the Objection and the Procedures Motion later that day, counsel for the Objectors described the Procedures Motion in detail to counsel for the GO Group members who attended the call and invited their comments. These members of the GO Group were assured during this discussion that the Procedures Motion would not seek substantive relief relating to the Objection but rather only seek to establish a process for developing procedures to facilitate the orderly and efficient litigation of the Objection.[9]

---

[7] In that situation, the Respondents would have received seven (7) days to file a response, as compared to the eleven (11) days they received here, after the Objectors granted them an extension of their response deadline.

[8] In addition, approximately one week earlier, counsel for the Objectors and counsel for certain members of the GO Group had an in-person meeting to discuss the Objection and related issues more generally.

[9] As a practical matter, the Objectors could not meet and confer with every known holder of a Challenged GO Bond and, therefore, chose the most vocal and active group in these Title III cases to date as a proxy for all similarly situated holders. In this regard, the Objectors admittedly did not have a similar conversation with counsel for Oppenheimer, but the Objectors had no reason to believe Oppenheimer held Challenged GO Bonds.

9. Although the Objectors believe they satisfied any and all meet and confer obligations through their pre-filing discussions with counsel to certain members of the GO Group, the Objectors are continuing to engage with all the Respondents to see if the parties' disputes can potentially be resolved or narrowed in advance of the hearing.

### B. OBJECTION SHOULD PROCEED NOW, INDEPENDENT OF OTHER PENDING LITIGATION, AND WITHOUT WAIVER OF ANY ADDITIONAL BASES FOR OBJECTIONS

10. The Respondents make several arguments that seek to both delay and overcomplicate the Objection process. Specifically, they argue that the Objection (i) should not proceed until after completion of an eventual mediation; (ii) should somehow be consolidated with the adversary proceeding that the Committee and the Oversight Board have filed to challenge administrative "rent" claims asserted by the PBA against the Commonwealth (the "PBA Leases Proceeding"); and (iii) must include *every* possible basis that the Objectors may have for objecting to the Challenged GO Bond Claims. The Objectors respectfully submit that these arguments should be rejected.

11. First, no legal or practical basis exists to postpone litigation on the merits of the Objection—let alone the mere consideration of procedures for resolving the Objection, as contemplated by the Procedures Motion—until an eventual mediation is completed. The issue raised by the Objection—the validity of more than $6 billion in Challenged GO Bonds—is a key gating issue in these cases that the Objectors believe needs to be resolved before meaningful progress can be made in developing a plan of adjustment and resolving other issues. There is no

---

Although Oppenheimer asserts in its objection that it holds $75 million of Challenged GO Bonds, Oppenheimer Obj. at 1, n. 2, the CUSIP numbers for the general obligation bonds listed in Oppenheimer's proof of claim do not match the CUSIP numbers for the Challenged GO Bonds. For this reason, it is unclear whether Oppenheimer even has standing to be heard on this matter.

-6-

reason why the parties cannot pursue settlement opportunities while also complying with the minimal steps imposed by the proposed Objection Procedures.

12. Indeed, if the history of these Title III cases is any indication, ongoing litigation is likely to *enhance* settlement negotiations, not detract from them. As the Court knows, in the Commonwealth-COFINA dispute, the parties engaged in mediation while also litigating their dispute vigorously, including through summary judgment briefing and oral argument, and those settlement discussions were ultimately successful in leading to a settlement. Here, the Objectors are not asking to move forward with the merits of the Objection at this time, but rather to simply establish procedures for its resolution. The parties are plainly capable of complying with these procedures while also fulfilling any and all mediation responsibilities.

13. Second, the Objection should not be consolidated or otherwise joined with the PBA Leases Proceeding, as suggested by the Respondents. In the PBA Leases Proceeding, the Committee and the Oversight Board seek a declaratory judgment that the purported leases between the PBA and certain Commonwealth entities (the "PBA Leases") should not be treated as true leases under the Bankruptcy Code, and, therefore, claims arising from those leases are not entitled to be treated as administrative expenses in the Commonwealth's Title III case. The answer to the question of whether the PBA Leases are "true leases" does not depend on this Court finding that the bonds issued by the PBA count toward the Commonwealth's Constitutional Debt Limit, as argued in the Objection. The reverse is not true, either—that is, the Court could find that the PBA bonds count toward the limit even if the leases are true leases. Because the two disputes involve different legal issues, different facts, and are not outcome determinative of one another, there is no reason for them to proceed together.

14. Third, the Objectors should not have to include in the Objection all grounds that may exist to object to the Challenged GO Bond Claims. The Objection challenges the validity of the Challenged GO Bonds; if the Court grants the Objection and finds that the bonds are invalid, then the holders of those bonds have no claims to assert against the Commonwealth, thus obviating the need for the Objectors, or anyone else, to pursue other types of objections. Conversely, if the Challenged GO Bonds are not invalid, any further issues likely can be addressed in the context of confirmation of a plan of adjustment for the Commonwealth. For example, the GO Group has alleged that their bonds are secured and entitled to priority— positions which Objectors obviously disagree with; it would be wasteful, to say the least, to litigate such issues before it is determined whether the holders of the Challenged GO Bonds have any claims at all. It furthers the interests of judicial economy for the Objection to proceed as filed, concerning only the issue of the bonds' validity, without waiver of any other grounds for objections.[10] (*See* Obj. Procedures ¶ 8.)

### C. OBJECTION PROCEDURES COMPLY WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 3007 AND DUE PROCESS

15. The Respondents argue that the Objection Procedures violate both Bankruptcy Rule 3007 and the due process rights of the Challenged GO Bondholders by, among other things, failing to provide adequate notice to presently unknown bondholders. The Objectors respectfully submit that these arguments should be rejected.

16. As an initial matter, the Respondents, all of which are known to the Objectors and have received actual notice of the Objection, do not have standing to assert the rights of Challenged GO Bondholders who have not filed a proof of claim or are otherwise not known at

---

[10] The Objectors and other parties in interest may not be presently aware of all potential grounds for objections to the Challenged GO Bond claims. To the extent additional grounds come to light during or after the litigation of the Objection, the Objectors and other parties have every right to assert such arguments in an amended or supplemental objection.

this time. Such rights must be asserted by the affected bondholders themselves. *See, e.g., Warth v. Seldin*, 422 U.S. 490, 499 (1975) (one "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights of third parties.").[11]

17. In any event, the Objection Procedures comply fully with Bankruptcy Rule 3007 and due process as to all Challenged GO Bondholders. The GO Group takes the remarkable position that, because the Bar Date order did not require Challenged GO Bondholders to file a proof of claim, "it is ***impossible*** for the Movants to comply with" the requirement of Bankruptcy Rule 3007 that a creditor receive notice of a claim objection through first-class mail at the address identified in its proof of claim. (GO Group Obj. ¶ 31 (emphasis added).) This argument is baseless. The Bar Date Order exempts holders of bonds that do not have an indenture trustee from having to file a proof of claim as a matter of courtesy. This provision does not insulate Challenged GO Bond Claims from objection, as the GO Group seems to suggest. Indeed, the Bar Date Order provides just the opposite: "nothing in this Order shall be interpreted as precluding any party in interest from filing objections to the amount, priority, security and/or allowance of any obligations arising with respect to GO Bonds ***regardless of whether proofs of claim are filed for such GO Bonds***." (Bar Date Order ¶ 16 (emphasis added).) The Bar Date Order thus exempts the Objectors from the normal requirement of Bankruptcy Rule 3007 that they serve the Objection on each claimant by mail at the address set forth in its proof of claim form. The Objectors may instead provide notice by other means, such as through DTC and Cede & Co. and by publication, as the proposed Order contemplates, which is the notice that they

---

[11] By analogy, in the plan confirmation context, courts routinely hold that creditors cannot raise the rights of others in objecting to a plan. *See, e.g.*, *In re Orlando Inv'rs, L.P.*, 103 B.R. 593, 596–97 (Bankr. E.D. Pa. 1989) (holding that objectors could not challenge plan releases that only affected other interest holders); *In re Johns–Manville Corp.*, 68 B.R. 618, 623 (Bankr. S.D.N.Y. 1986)("[N]o party may successfully prevent the confirmation of a plan by raising the rights of third parties who do not object to confirmation."), aff'd, 78 B.R. 407 (S.D.N.Y.1987), *aff'd sub nom. Kane v. Johns–Manville Corp. (In re Johns–Manville Corp.)*, 843 F.2d 636, 644 (2d Cir. 1988).

would have received had they had to comply with the Bar Date Order.[12] Finally, the Objectors will serve the Objection Notice and Objection Procedures on the more than 4,000 persons or entities that filed "bond" claims.

18. In terms of timing, the notice that the Objection Procedures contemplate providing to Challenged GO Bondholders is actually far **greater** than what is required under Bankruptcy Rule 3007. Bankruptcy Rule 3007(a) states that a claimant must receive notice of a claim objection "at least 30 days prior to the hearing" on such objection. Any substantive response to the objection is therefore necessarily due **less than 30 days** following service of the objection. Here, all the Challenged GO Bondholders are required to file within 30 days after entry of the order approving the Objection Procedures is the Notice of Participation, which will eventually lead to a hearing on the Objectors' Preliminary Recommendation—a purely procedural issue—roughly 50 days later. The Challenged GO Bondholders will not have to file their **substantive** response to the Objection until some to-be-determined date thereafter, which date will likely be well more than 75 days after the filing of the Objection.[13]

19. The GO Group further asserts that "[h]olders who have not elected into the litigation risk being prejudiced by the outcome of the GO Claim Objection, as each such holder

---

[12] GO Group members Assured Guaranty Corp. and Assured Guaranty Municipal Corp (together, "Assured") contend in their proofs of claim that, under section 303(c)(3)(B) of PROMESA, they are authorized to act on behalf of the Challenged GO Bondholders. *See* Proof of Claim No. 27427, Annex at 2 n. 1 (May 25, 2018) (filed by Assured Guaranty Municipal Corp.); Proof of Claim No. 33081, Annex at 2 n. 1 (May 25, 2018) (filed by Assured Guaranty Corp.); Proof of Claim No. 57622, Annex at 2 n. 1 (May 25, 2018) (filed by Assured Guaranty Corp.). Therefore, by providing notice of the Objection to Assured, the Objectors have provided effective notice to all holders of the GO bonds that Assured insures.

[13] To the extent the Court or the Respondents have concerns regarding the specific notice procedures and periods applicable to unknown bondholders, the Objectors are willing to consider revisions that would enhance such procedures. For example, the Objectors would agree to provide 45 days' notice (as opposed to 30 days, as originally proposed) of the deadline to file Notices of Participation. The Objectors would also be willing to revise the form of notice that will be delivered to unknown Challenged GO Bondholders through DTC to include a provision in Spanish to alert Spanish-only speakers of the upcoming deadline. In addition, all Challenged GO Bondholders may contact counsel for the Committee and the Oversight Board, who are fluent in Spanish, with any questions they may have.

has identical legal rights against the Commonwealth." (GO Group. Obj. at 7.) This, however, is true regardless of whether the Objection is prosecuted only against those bondholders listed on Appendix I to the Objection, or against other bondholders as well. The Objectors could have chosen to proceed with an objection to only the claims of known holders of Challenged GO Bonds. Had they done so, the unknown holders of Challenged GO Bonds would still have been impacted by this Court's order on the Objection to the extent it becomes law of the case. The Objectors are instead giving all holders of the Challenged GO Bonds the right to participate in the litigation, which is decidedly fairer to such holders.

### D. PROPOSED PROCEDURES ARE FAIR AND REASONABLE TO RESPONDENTS AND ALL OTHER PARTIES IN INTEREST

20. The Respondents misinterpret the proposed Objection Procedures in assuming that they are designed to "wrench apart" existing creditor groups and "sow division and chaos amongst creditor constituencies."[14] Such mistrust is entirely unwarranted. Every aspect of the Objection Procedures is designed solely to facilitate the development of an orderly process for litigating the Objection, not to prematurely delve into the substance of the dispute or to break up existing creditor groups. The Objection Procedures are meant to *encourage*, not discourage, creditors who have an identity of interest in the litigation to work together.

21. A few clarifications of the proposed Objection Procedures may help alleviate some of the Respondents' unjustified concerns.

- <u>First</u>, the purpose of the Notices of Participation is to allow the Objectors and the Court to understand the nature and extent of the different legal and factual issues that the Challenged GO Bondholders may raise in response to the Objection. The Objectors will use this information to determine whether certain issues should be prioritized or grouped for briefing or discovery purposes. For example, certain issues may be gating issues that should be litigated before other issues.

---

[14] GO Group Obj. ¶ 22

- Second, the short description in the Notice of Participation describing the bases on which each claimant intends to contest the Objection need not contain a detailed description of every possible argument such claimant may assert. The claimant need only undertake in good faith to identify in summary fashion the issues and arguments it intends to raise. Contrary to the Respondents' fears, the Notices of Participation ***will not be preclusive***. Any claimant will be free to raise later additional arguments that it did not contemplate initially.

- Third, the limited information that the Objectors seek regarding the timing of each claimant's acquisition of its bonds is not meant to be burdensome or invasive or to obtain premature discovery. As discussed in the Objection, the Objectors understand from past discussions with counsel to Challenged GO Bondholders that some bondholders will likely argue that, under section 8-202 of the Uniform Commercial Code, the bonds remain valid even if they were issued in violation of the Constitutional Debt Limit. This defense, however, is only arguably available to those holders who purchased their bonds on the secondary market and without notice of the constitutional defect.[15] The Objectors therefore need information on whether each claimant purchased its bonds on the secondary market and when they did so[16] for the limited purpose of understanding the extent to which claimants may assert a section 8-202 defense in the litigation.[17]

- Fourth, nothing in the Objection Procedures is meant to break apart existing *ad hoc* creditor groups. As noted above, the Objectors will use the information in the Notices of Participation to make recommendations concerning the order in which certain issues should be litigated and/or the extent to which parties should be instructed to endeavor to consolidate briefing on particular issues. The Objectors will not arbitrarily slot claimants into groups for all purposes or force cooperation among parties with diverging interests, and in any event, that issue is not likely to be determined by the Court until after the Preliminary Recommendations and any responses thereto are filed.[18] Thus, the Respondents will have ample opportunity to express any concerns they have on these issues to the Court before the Court enters a substantive procedures order.

---

[15] *See* Obj. at 45-46. To be clear, even if the defense is facially "available" to certain claimants as a factual matter, the Objectors believe the defense fails as a matter of law for other reasons, including that section 8-202 is unconstitutional. *Id.* at 39-48.

[16] As discussed in the Objection, the date on which a claimant acquired its holdings is relevant in evaluating the extent of a claimant's knowledge of the bonds' unconstitutionality, because the possibility of the constitutional violation was made public in March 2017, and possibly at other points in time. *See* Obj. at 47.

[17] To the extent the Respondents have confidentiality concerns regarding the provision of the requested information, the Objectors are willing to enter into an appropriate confidentiality agreement and to permit the filing of such information under seal and/or to allow some information to merely be served on the Objectors rather than filed on the public docket.

[18] Indeed, even as to issues on which joint briefing is appropriate, the Objection Procedures expressly provide that claimants may file separate papers "to the extent necessary to present or discuss issues, positions or arguments upon which they are unable to agree in good faith." (Obj. Procedures ¶ 6.B.(b).)

22. The Respondents further assert that, in developing the Preliminary Recommendation, the Objectors should be required to consult with more than just the holders of the ten largest Challenged GO Bond Claims. The Objectors' purpose in proposing to limit their meet and confer process to the ten largest holders was to ensure that such obligations would not become unwieldy in the event a large number of claimants participate in the litigation. The Objectors are, however, willing to consider expanding the universe of parties that must be included in any meet and confer process beyond the ten largest holders to help alleviate the Respondents' concerns.[19] Moreover, regardless of how many parties are included within the group of claimants that *must* be consulted, nothing prevents any participant from providing input to the Objectors on an unsolicited basis, by email or otherwise.

23. Finally, the Respondents argue that known claimants—*i.e.*, those identified on Appendix I to the Objection—should not have to risk a default judgment by failing to submit a Notice of Participation by the stated deadline. The Respondents have cited no basis for this position, and none exists. As noted above, the Objectors could have chosen to proceed against only those holders identified in Appendix I through separate claim objections. In that case, all such holders would have risked entry of a default judgment against them under Bankruptcy Rule 3007 if they did not respond to the objection in a timely manner. There is no reason for these holders to be treated differently simply because the Objectors have elected to proceed with the Objection in an omnibus fashion.

### E. GO GROUP'S PROPOSED ALTERNATIVE PROCEDURES ARE INADEQUATE

24. The GO Group has proposed its own set of "alternative procedures" to adjudicate the Objection, but these procedures are unworkable for a variety of reasons. As an initial matter,

---

[19] At a minimum, the Objectors are willing to commit to meeting and conferring with all Respondents.

for the reasons discussed above, the parties should not wait until the conclusion of the eventual mediation to move forward with the Objection, as the alternative procedures contemplate. Nor should the Objection be required to include "all objections of general applicability" to not only the Challenged GO Bonds but also all objections to "any other series of Constitutional Debt." (GO Group Obj. ¶ 36.) Proceeding in this manner would be highly inefficient, to say the least. Whether the Challenged GO Bonds are invalid is a gating issue as to those bonds that should be decided first, as it may obviate the need for consideration of additional objections. As noted above, while the Objectors dispute the GO Group's assertions that their bonds are secured and entitled to priority, it would waste all parties' resources to litigate such issues before it is determined whether the holders of the Challenged GO Bonds have any claims at all.

25.     In addition, the proposed alternative procedures provide inadequate structure and guidance for the development of a coordinated litigation schedule that maximizes efficiencies and minimizes burdens on the parties and the Court. For example, the alternative procedures contemplate that no substantive information be provided in Notices of Participation, which would render it virtually impossible for the Objectors to meaningfully assess the extent to which issues and arguments can be prioritized or grouped for briefing and discovery purposes. Moreover, the requirement that the Objectors meet and confer with "significant affected stakeholders" is vague and unlikely to be productive in any event if the Challenged GO Bondholders have no obligation to provide information concerning the positions they intend to take in the litigation. The Objectors submit that a better approach is for claimants to submit the Notices of Participation as contemplated by the proposed Objection Procedures and for the Objectors to then submit their Preliminary Recommendation after conferring with a specified group of participants.

-14-

### F.   HEIN OBJECTION SHOULD BE OVERRULED

26.   The Hein Objection was filed on January 25, 2019, four days after the deadline set by the Court for filing responses to the Procedures Motion.[20] Although the Respondents requested and received an extension to this deadline, Mr. Hein did not request or receive such an extension. Accordingly, his response is time-barred and should not be considered.

27.   Even if the Court were to consider the Hein Objection, the Objectors respectfully submit it should nonetheless be overruled. The Hein Objection primarily addresses the merits of the Objection, not the Objection Procedures. The only arguably procedural issue raised by the Hein Response is a complaint regarding the legal fees that Mr. Hein and other claimants will likely incur in responding to the Objection. Specifically, Hein argues that the Court should appoint counsel to be paid by the Commonwealth to defend individual holders of Challenged GO Bonds. (Hein Obj. at 4.) There is no authority in PROMESA or the Bankruptcy Code for such relief. That claimants such as Mr. Hein must fund their own litigation expenses is part of the bankruptcy process. Ironically, the proposed Objection Procedures actually *help* individuals like Hein by allowing them to benefit from the litigation efforts of larger claimants and their sophisticated, well-funded counsel. In any event, such claimants are always free to file a substantial contribution application under section 503(b)(3)(D) of the Bankruptcy Code to the extent they meet the applicable standard.

28.   The untimely Hein Objection should be overruled if it is considered by the Court.

[*Remainder of page intentionally left blank*]

---

[20]   *See Order Expediting Consideration of Urgent Motion of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors for Expedited Consideration of Urgent Motion, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Objection Procedures with Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* [Docket No. 4806].

WHEREFORE, the Objectors respectfully request that the Court grant the relief requested in the Procedures Motion and any other relief as is just and proper.

Dated: January 28, 2019  /s/ Edward S. Weisfelner ,

BROWN RUDNICK LLP
Edward S. Weisfelner, Esq.
Angela M. Papalaskaris, Esq. (*pro hac vice*)
Justin S. Weddle, Esq. (*pro hac vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com
apapalaskaris@brownrudnick.com
jweddle@brownrudnick.com

Stephen A. Best, Esq. (*pro hac vice*)
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
sbest@brownrudnick.com

Sunni P. Beville, Esq. (*pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting through its Special Claims Committee*

and

/s/ Alberto Estrella ,

ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting through its Special Claims Committee*

and

*/s/ Luc A. Despins*                     ,

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
Nicholas A Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212)318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA)*

- and -

*/s/ Juan J. Casillas Ayala*                    ,

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Aneses Negron, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787)523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA)*