# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    and<br><br>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ALL TITLE III DEBTORS (OTHER THAN COFINA),<br><br>    Plaintiffs,<br><br>v.<br><br>PUERTO RICO PUBLIC BUILDINGS AUTHORITY,<br><br>    Defendant. | Adv. Proc. No. 18-00149-LTS |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

-i-

## **TABLE OF CONTENTS**

**Page**

ARGUMENT ................................................................................................................................5

    I.    ASSURED IS ENTITLED TO INTERVENE AS OF RIGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(1) .................5

    II.    ASSURED IS ENTITLED TO INTERVENE AS OF RIGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2) .................7

    III.    ASSURED SHOULD BE PERMITTED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b) ....................11

    IV.    ASSURED IS A NECESSARY PARTY TO THIS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 19 .........................12

CONCLUSION ............................................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

B. Fernandez & Hnos. Inc. v. Kellogg USA Inc.,
  440 F.3d 541(1st Cir. 2006) ...............................................................................................10

Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,
  386 U.S. 129 (1967) ...........................................................................................................12

Conservation Law Foundation v. Moscbacher,
  966 F.2d 39 (1st Cir. 1992) ..................................................................................................8

Daggett v. Comm'n on Governmental Ethics & Election Practices,
  172 F.3d 104 (1st Cir. 1999) ..............................................................................................11

Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.,
  276 F.3d 1150 (9th Cir. 2002) ...........................................................................................13

Del. Trust Co. v. Wilmington Trust N.A.,
  534 B.R. 500 (S.D.N.Y. 2015) .........................................................................................8, 9

E. Potato Dealers Inc. v. TNC Packing Corp., No. 08-CV-6280 CJS,
  2011 WL 2669632 (W.D.N.Y. July 6 2011) .......................................................................8

Export-Import Bank of Repub. of China v. Grenada, No. 13 Civ. 1450,
  2013 WL 4414875 (S.D.N.Y. Aug. 19 2013) ......................................................................8

Geiger v. Foley Hoag LLP Ret. Plan,
  521 F.3d 60 (1st Cir. 2008) ..................................................................................................6

In re El Comandante Mgmt. Co. LLC,
  359 B.R. 410 (Bankr. D.P.R. 2006) .....................................................................................6

In re Fin. Oversight & Mgmt. Bd. for Puerto Rico,
  872 F.3d 57 (1st Cir. 2017) ..................................................................................................6

In re Rovira Ortiz, No. 03-04534 SEK,
  2006 WL 3898381 (Bankr. D.P.R. June 2 2006) .................................................................6

Lex Claims LLC v. Garcia Padilla,
  236 F. Supp. 3d 504 (D.P.R. 2017) ..............................................................................8, 9, 10

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

P.R. Tel. Co. v. Sistema de Retiro de los Empleados del Gobierno y la Judicatura,
   637 F.3d 10 (1st Cir. 2011) ............................................................................................5, 7, 9

Pub. Serv. Co. of N.H. v. Patch,
   136 F.3d 197 (1st Cir. 1998) ......................................................................................................7

Pujol v. Shearson Am. Exp. Inc.,
   877 F.2d 132 (1st Cir. 1989) ....................................................................................................12

Ticket Ctr. Inc. v. Banco Popular de Puerto Rico, No. CV 04-2062 (GAG/BJM),
   2008 WL 859275 (D.P.R. Mar. 28 2008) ...............................................................................13

Trbovich v. United Mine Workers of Am.,
   404 U.S. 528 (1972) .................................................................................................................10

United States v. Hooker Chems. & Plastics Corp.,
   749 F.2d 968 (2d Cir. 1984) ......................................................................................................7

**STATUTES & OTHER AUTHORITIES:**

PROMESA:

   § 304(a) .......................................................................................................................................4
   § 306(a) .......................................................................................................................................3
   § 307(a) .......................................................................................................................................3
   § 310 ............................................................................................................................................1
   § 314(b)(4) ..................................................................................................................................5

Act No. 56-1958 ................................................................................................................................1

Fed. R. Civ. P. 19(a)(1) ...................................................................................................................12
Fed. R. Civ. P. 24(a) ..................................................................................................................11,12
Fed. R. Civ. P. 24(b) .......................................................................................................................11
Fed. R. Civ. P. 24(a)(1) ................................................................................................................5, 7
Fed. R. Civ. P. 24(a)(2) ....................................................................................................................7

## MOTION OF ASSURED GUARANTY CORP. AND
## ASSURED GUARANTY MUNICIPAL CORP. FOR LEAVE TO INTERVENE

Assured Guaranty Corp. ("AGC") and Assured Guaranty Municipal Corp. ("AGM", and together with AGC, "Assured"), by and through their undersigned counsel, respectfully move to intervene as defendants in this action (the "Adversary Proceeding") pursuant to Federal Rule of Bankruptcy Procedure 7024 ("Bankruptcy Rule 7024"), or, in the alternative, to be joined as necessary parties to the Adversary Proceeding pursuant to Federal Rule of Bankruptcy Procedure 7019 ("Bankruptcy Rule 7019").[2] In accordance with Federal Rule of Civil Procedure 24(c), Assured's proposed answer is attached as "Exhibit A" hereto. A proposed order granting Assured leave to intervene is attached as "Exhibit B" hereto.

## ASSURED'S INTEREST

The Public Buildings Authority (the "PBA") is an instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") created by Act No. 56-1958 (the "PBA Act") for the primary purpose of designing and constructing office buildings, quarters, courts, warehouses, shops, schools, health facilities, social welfare facilities, and related facilities for lease to the Commonwealth and its departments, agencies, instrumentalities, and municipalities. Pursuant to the PBA Act, PBA has issued PBA Bonds under general bond resolutions (the "PBA Resolutions") adopted in 1970 and 1995, respectively. Pursuant to the PBA Act and the PBA Resolutions, PBA Bonds are secured by a pledge of the rentals of government facilities financed or refinanced by PBA Bonds and leased by the PBA to departments, agencies, instrumentalities, and municipalities of the Commonwealth (the "Leases").

---

[2] Bankruptcy Rules 7024 and 7019 are applicable to these Title III cases pursuant to PROMESA § 310 and generally apply Federal Rules of Civil Procedure 24 and 19 to this Adversary Proceeding.

Assured insures approximately $146,485,000 principal amount of the outstanding PBA Bonds. Under applicable insurance agreements and policies, Assured is considered to be the sole holder of the PBA Bonds it insures for purposes of exercising rights and remedies. In addition, Assured has to date paid approximately $49,583,000 in aggregate claims to PBA Bondholders and is now fully subrogated to the rights of these PBA Bondholders for the claims it paid. As a result, Assured's total exposure to the PBA Bonds is approximately $196 million. Moreover, PBA Bondholders, including Assured, are express third party beneficiaries under the Leases.[3] Additionally, PBA Bondholders, including Assured, have a lien on the rental payments pledged to the payment of the PBA Bonds.

The PBA Bonds are guaranteed by the Commonwealth (the "Commonwealth Guarantee"), and the Commonwealth's obligations with respect to the Commonwealth Guarantee constitute "public debt" entitled to first priority of payment pursuant to Article VI, Section 8 of the Constitution of the Commonwealth (the "Commonwealth Constitution").

Beginning in 2016, the Debtors have defaulted on their obligations to make rental payments to PBA under the Leases. As a result of the Debtors' failure to make rental payments, PBA has defaulted on its obligation to make payments on the PBA Bonds. These payment defaults on the PBA Bonds have in turn triggered the Commonwealth Guarantee, meaning that, in addition to its claims against PBA on account of the PBA Bonds, Assured now has first-priority claims against the Commonwealth on account of the Commonwealth Guarantee.

---

[3] Section 6.04 of the Master Sublease Contract provides: "[t]his Lease Contract shall inure to the benefit of and be binding on the parties hereto, their successors and assigns, ***and shall also inure to the benefit of the holders of bonds issued by [PBA] under the Bond Resolution*** [for the financing of Office Building No. 2030 and other public office buildings], as their respective interest may appear." See Master Sublease Contract dated August 24, 2011 (emphasis added).

Assured has asserted these PBA-related claims against the Commonwealth in timely filed proofs of claim.

In addition, Assured insures approximately $1,340,530,000 in outstanding principal amount of general obligation bonds ("GO Bonds") issued by the Commonwealth. Under the applicable insurance agreements and policies, Assured is deemed to be the sole holder of the GO Bonds it insures for purposes of exercising rights and remedies. To date, Assured has also paid approximately $558,884,000 in claims to GO Bondholders as a result of the Commonwealth's defaults with respect to the GO Bonds and is now fully subrogated to the rights of these GO Bondholders for the claims it paid. As such, Assured is one of the Commonwealth's largest single creditors.

Given the potential significant impact this Adversary Proceeding may have on Assured's recovery with respect to the PBA Bonds, Assured's property interest in the pledged rental payments, and Assured's contractual rights under its insurance agreements, the PBA Bonds, and the Leases, Assured respectfully requests to intervene in, and/or be joined as a party to, this Adversary Proceeding.

## JURISDICTION AND VENUE

Section 306(a) of PROMESA grants the United States District Court for the District of Puerto Rico subject matter jurisdiction over this matter, and venue is proper pursuant to PROMESA § 307(a).

## PROCEDURAL BACKGROUND

On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico ("FOMB") commenced a case under Title III of the Puerto Rico Oversight, Management, and Financial Stability Act ("PROMESA") for the Commonwealth by filing a voluntary petition for

-3-

relief pursuant to Section 304(a) of PROMESA. The PBA is an instrumentality of the Commonwealth.

On December 21, 2018, FOMB, as representative of the Commonwealth and its related Title III debtors (the "Debtors"), and the Official Committee of Unsecured Creditors of all Debtors other than COFINA (the "UCC" and, together with FOMB, the "Plaintiffs") filed their Complaint For Declaratory Relief and Disallowance of Administrative Rent Claims [Case No. 18-00149-LTS, ECF No. 1] (the "Complaint") initiating this Adversary Proceeding.

Through this Adversary Proceeding, the Plaintiffs are seeking declaratory relief that the Leases are not "true leases," but rather financing arrangements. Pursuant to the Complaint, the Plaintiffs assert that rent payments under the Leases are "specifically designed to cover debt service on the PBA Bonds" and therefore "the 'rent' payments are not in any way tied to the market rents a tenant might ordinarily pay a landlord for the use of similar properties under a true lease arrangement." See Complaint ¶ 24. Additionally, the Plaintiffs cite various provisions in the Leases to make the argument that the Leases are not arm's length true lease agreements "but rather methods of financing entered into between related parties that are ultimately controlled by the same person." See Complaint ¶¶ 25-32.[4] The obvious purpose of the Complaint and of this Adversary Proceeding is to impair the rights of PBA Bondholders, including Assured, to receive payment from the pledged rental payments on their PBA Bonds.

Pursuant to section 365(d)(3) of the Bankruptcy Code, if the leases are "true leases," then the possession and use of the PBA's property by the Commonwealth and other Debtors would require those Debtors to make current rental payments. Additionally, in the event that current

---

[4] Additionally, the Plaintiffs assert that the lessees under some of the Leases are not Debtors and therefore, the Debtors have no payment obligations under section 365(d)(3), nor is the PBA entitled to an administrative claim, as to those "Non-Debtor Leases." See Complaint ¶¶ 49-53.

-4-

rental payments are not made, such post-petition rental obligations would be entitled to administrative expense priority until the Leases are either assumed or rejected. This would mean that any plan of adjustment for the Commonwealth could not be confirmed unless "the plan provides that on the effective date of the plan each holder of a claim of a kind specified in 507(a)(2) of title 11, United States Code, will receive on account of such claim cash equal to the allowed amount of such claim." See PROMESA § 314(b)(4). Payment of rent by the Debtors, including in the form of administrative expenses, will in turn enable PBA to make payments to Assured and other PBA Bondholders. By contrast, if the Debtors prevail in this Adversary Proceeding, they will succeed in shirking their obligation to make rental payments to PBA, which will in turn cripple PBA's ability to make payments on the PBA Bonds, thereby causing economic injury to Assured and other PBA Bondholders.

Accordingly, Assured faces a risk that, absent intervention in this Adversary Proceeding, it will not be able protect its right to receive payment on the PBA Bonds.

## ARGUMENT

### I. ASSURED IS ENTITLED TO INTERVENE AS OF RIGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(1)

Federal Rule of Civil Procedure 24(a)(1) provides for intervention as of right if the moving party can establish the timeliness of its motion to intervene and it "is given an unconditional right to intervene by a federal statute." Fed. R. Civ. P. 24(a)(1). Given that both requirements under Federal Rule of Civil Procedure 24(a)(1) are established here, Assured is entitled to intervene in this Adversary Proceeding.

#### a. Assured's Motion to Intervene Is Timely

Timeliness of a petition to intervene depends upon an "assessment of prejudice in the context of the particular litigation." P.R. Tel. Co. v. Sistema de Retiro de los Empleados del

Gobierno y la Judicatura, 637 F.3d 10, 15 (1st Cir. 2011); Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008) (motion to intervene brought nine months after suit's filing determined timely as the matter had not "progressed beyond the initial stages," and the "balance of prejudices . . . weigh[ed] heavily in favor of [putative intervenor]").

Given that this Adversary Proceeding was commenced only slightly more than a month ago, no party would be prejudiced by Assured's intervention. This Adversary Proceeding is still in its infancy and initial stages. Therefore, Assured's motion is timely.

### b. **Assured Is Granted an Unconditional Right to Intervene Under Section 1109**

Assured is entitled to an unconditional right to intervene pursuant to Section 1109(b) of the Bankruptcy Code, which provides that "[a] party in interest, including . . . **a creditor**, . . . may raise and may appear and be heard on any issue in a case." See 11 U.S.C. § 1109(b) (emphasis added). PROMESA "expressly incorporates . . . the entirety of the Federal Rules of Bankruptcy Procedure," as well as Section 1109 of the Bankruptcy Code. In re Fin. Oversight & Mgmt. Bd. for Puerto Rico, 872 F.3d 57, 59–60 (1st Cir. 2017). The First Circuit has held that Section 1109(b) grants any "party in interest" – including any "creditor" – an "unconditional right to intervene . . . on any issue" raised in any "adversary proceeding." Id. at 62–64.

Because of Assured's claims under the Commonwealth Guarantee and the GO Bonds, Assured is one of the Commonwealth's largest creditors and as such indisputably a party in interest in the Commonwealth's Title III case.

Moreover, "[a] party in interest is defined as one whose pecuniary interests are directly affected by the bankruptcy proceedings." See In re Rovira Ortiz, No. 03-04534 SEK, 2006 WL 3898381, at *2 (Bankr. D.P.R. June 2, 2006); see also In re El Comandante Mgmt. Co., LLC, 359 B.R. 410, 417 (Bankr. D.P.R. 2006) ("Generally, any person or entity, who holds a financial

-6-

stake in the outcome of the debtor's estate, is a party in interest"). As stated above, Assured insures or owns approximately $196 million of claims relating to outstanding PBA Bonds, and this Adversary Proceeding affects Assured's pecuniary interests as an insurer and holder of PBA Bonds by threatening to impair Assured's ability to recover on the PBA Bonds.

For the reasons stated above, Assured is entitled to intervention under Federal Rule of Civil Procedure 24(a)(1).

### II. ASSURED IS ENTITLED TO INTERVENE AS OF RIGHT UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(a)(2)

Intervention as of right under Federal Rule of Civil Procedure 24(a)(2) is proper if the movant establishes

> (i) the timeliness of its motion to intervene; (ii) the existence of an interest relating to the property or transaction that forms the basis of the pending action; (iii) a realistic threat that the disposition of the action will impede its ability to protect that interest; and (iv) the lack of adequate representation of its position by any existing party.

P.R. Tel. Co., 637 F.3d 10, 14 (1st Cir. 2011) (quotation marks omitted); accord Fed. R. Civ. P. 24(a)(2). These elements must "'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation. Pub. Serv. Co. of N.H. v. Patch, 136 F.3d 197, 204 (1st Cir. 1998) (quoting United States v. Hooker Chems. & Plastics Corp., 749 F.2d 968, 983 (2d Cir. 1984)). Given that all four elements described above are met, Assured is entitled to intervene in this Adversary Proceeding, as of right.

First, Assured's motion is timely for the same reasons discussed above as to Federal Rule of Civil Procedure 24(a)(1).

Second, Assured has a direct interest in this adversary proceeding. As the First Circuit has recognized, a "putative intervenor must show at a bare minimum that it has a significantly protectable interest that is direct, not contingent." Patch, 136 F.3d at 205 (quotation marks

omitted). Economic interests are direct and substantial if they are "protectable" and could be "substantially affected by a decision in the underlying action." Conservation Law Foundation v. Moscbacher, 966 F.2d 39, 43 (1st Cir. 1992).

Courts have found a direct interest in litigation where the outcome of the litigation would constrain future payments to the intervenor. See, e.g., Lex Claims, LLC v. Garcia Padilla, 236 F. Supp. 3d 504, 521-22 (D.P.R. 2017); Del. Trust Co. v. Wilmington Trust, N.A., 534 B.R. 500, 509-10 (S.D.N.Y. 2015) (finding intervenors' economic interests could be impaired by litigation that sought declaratory relief regarding allocation of adequate protection payments among various tranches of creditors); Export-Import Bank of Repub. of China v. Grenada, No. 13 Civ. 1450, 2013 WL 4414875, at *5 (S.D.N.Y. Aug. 19, 2013) (holding that intervenor had substantial interest in a lawsuit where the action would constrain payments made to the proposed intervenors); E. Potato Dealers, Inc. v. TNC Packing Corp., No. 08-CV-6280 CJS, 2011 WL 2669632, at *11 (W.D.N.Y. July 6, 2011) (granting motion to intervene as of right based on intervenors' interests in escrowed funds). Lex Claims is instructive in this regard. In that case, a monoline insurer sought to intervene in PROMESA related litigation that sought declaratory and injunctive relief that would prevent the transfer of funds from the Commonwealth to COFINA. The court held that the monoline insurer had the right to intervene under Federal Rule 24(a)(2) because the outcome of the litigation could constrain payments to COFINA, which would give rise to a default on COFINA's bonds and subsequent claims under the monoline insurer's policies. Lex Claims, 236 F. Supp. 3d at 521-22.

Like the monoline insurer in Lex Claims, Assured has a significant interest in this Adversary Proceeding given its exposure on the PBA Bonds. As stated above, Assured insures or owns approximately $196 million of claims relating to the outstanding PBA Bonds. If the Plaintiffs succeed in re-characterizing the Leases as financing arrangements, post-petition

obligations by the lessees would not be entitled to an administrative expense priority that must be paid in full on the effective date of the Commonwealth's plan of adjustment. The Complaint also seeks a declaration that the Commonwealth and other Title III debtors "have no obligation to make payments to PBA under the Leases." Compl. ¶ 44. A decision disallowing administrative expense priority and/or declaring that the debtors have no obligation to make payments under the PBA leases would severely impact Assured's recovery, given that the PBA Bonds are secured by a perfected lien on the rental payments. Constraint of payment, in turn, would lead to further payment defaults, which would give rise to claims under Assured's insurance policies. See Lex Claims, 236 F. Supp. 3d at 521-22. Therefore, as an insurer and owner of the PBA Bonds, Assured has a direct, clear and substantial interest in the outcome of this Adversary Proceeding.

Third, absent intervention, Assured faces "a realistic threat" to its "ability to protect [its] interest." See P.R. Tel. Co., 637 F.3d at 14; Lex Claims, 236 F. Supp. 3d at 521-22 (finding the "disposition of [litigation] could impair" a monoline insurer's interest where the outcome of the litigation could cause future payment defaults); Del. Trust. Co., 534 B.R. at 509 (noting that this prong is satisfied where "as a practical matter, an adverse decision may compromise the [intervenor's] claims"). This Adversary Proceeding will decide the status of the Leases and the priority of the rental payments thereunder, which determinations will in turn shape the recoveries on the PBA Bonds. In addition, Plaintiffs unambiguously seek a declaration that the debtors have no obligation to make any rental payments under the PBA leases. Compl. ¶ 44; id. Prayer for Relief A. Plaintiffs have also filed a claim objection to other obligations, which is entirely based on the predicate issues raised in their Complaint. See Case No. 17-03283-LTS, ECF No. 4784. If Assured does not intervene now, it will not have another opportunity to weigh in on the status and priority of the Commonwealth's obligations to PBA, because this issue will have been decided in this Adversary Proceeding prior to a hearing on confirmation of a plan of adjustment

for the Commonwealth (which is not expected anytime soon) and prior to adjudication of Plaintiffs' other claims objections.[5]

Finally, Assured's position is not adequately represented by any named party to this adversary proceeding. "Typically, an intervenor need only make a 'minimal' showing that the representation afforded by a named party would prove inadequate." B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc., 440 F.3d 541, 543 (1st Cir. 2006) (quoting Trbovich v. United Mine Workers of Am., 404 U.S. 528, 538 n.10 (1972)). "One way for the intervenor to show inadequate representation is to demonstrate that its interests are sufficiently different in kind or degree from those of the named part[ies]." Id. at 546; ; see also Lex Claims, 236 F. Supp at n. 14 (finding monoline insurer was not adequately represented because unlike other named defendants, the monoline insurer would have to pay insurance claims to COFINA bondholders).

Here, no named party to this Adversary Proceeding adequately represents Assured's interests. FOMB and the UCC are seeking to re-characterize the Leases as financing transactions, which would severely hinder Assured's ability to recover on the outstanding PBA Bonds. Additionally, the PBA is an instrumentality of the Commonwealth and therefore may not have a strong incentive to defend an Adversary Proceeding that could lead to a large reduction in administrative claims that the Commonwealth would otherwise need to pay in full on the effective date. Therefore, Assured must intervene to protect itself from the litigation of named parties who have significantly different interests in the outcome of this Adversary Proceeding. Moreover, Assured's rights with respect to the PBA Bonds are governed by a bespoke set of insurance agreements and policies to which none of the other likely intervenors in the Adversary

---

[5] Assured reserves the right, however, to argue that the issues raised in the Adversary Proceeding will not be ripe prior to a hearing on confirmation of a Commonwealth plan of adjustment.

Proceeding are parties. Assured therefore has a right to participate in the Adversary Proceeding in order to ensure that its unique contractual rights are adequately defended and protected.

Therefore, for the reasons stated above, Assured is entitled to mandatory intervention under Federal Rule of Civil Procedures 24(a)(2).

### III. ASSURED SHOULD BE PERMITTED TO INTERVENE UNDER FEDERAL RULE OF CIVIL PROCEDURE 24(b)

Aside from the mandatory right of intervention under Fed. R. Civ. P 24(a), the Court "enjoys very broad discretion" to permit intervention under Fed. R. Civ. P. 24(b). See Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 113 (1st Cir. 1999). This discretion is broad where the proposed intervenor: (1) files a "timely motion"; (2) "has a claim or defense that shares with the main action a common question of law or fact"; and (3) intervention will not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b).

Even if the Court does not grant Assured's request for mandatory intervention, the Court should grant Assured permissive intervention. As stated above, this motion is timely and no party will be prejudiced if the Court grants Assured's request to intervene, given that this motion is being filed only shortly after the Adversary Proceeding was initiated. Additionally, Assured's ability to recover on the PBA Bonds potentially could hinge on whether the Court determines the Leases to be either "true leases" or financing arrangements. For that reason, Assured's claim that the Leases are "true leases" is a common question of law that will be decided in the context of this Adversary Proceeding.

Notably, this Court has previously liberally permitted creditors to intervene where the creditors' economic interests were affected by a particular inter-debtor dispute. In particular, in its August 10, 2017 Stipulation and Order Approving Procedure to Resolve Commonwealth-

COFINA Dispute [Case No. 17-3283, ECF No. 996] (the "Commonwealth-COFINA Procedures Order"), this Court permitted Assured and other creditors of the Commonwealth and COFINA the right to intervene in a dispute between the Commonwealth and COFINA over ownership of sales and use tax revenues. See Commonwealth-COFINA Procedures Order ¶ 5 (defining "Permitted Intervenors"). Absent granting mandatory intervention under Fed. R. Civ. P. 24(a), the Court should follow this same model in liberally permitting PBA creditors to intervene in the current dispute between the Commonwealth and PBA, as liberally permitting intervention in this manner will allow for the streamlined litigation or settlement of all of the relevant issues in a single action.

Therefore, the Court should exercise its broad discretion and grant Assured permissive intervention.

### IV. ASSURED IS A NECESSARY PARTY TO THIS ACTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 19

In the alternative to intervention, Assured should be joined in this Adversary Proceeding as a necessary party. Under Federal Rule of Civil Procedure 19, a party that "claims an interest relating to the subject of [an] action" "*must* be joined" if the failure to join such party would "impair or impede [that party's] ability to protect [its] interest." Fed. R. Civ. P. 19(a)(1) (emphasis added). In order to determine whether a party is necessary under Federal Rule of Civil Procedure 19, a court should look to the standard for intervention under Federal Rule of Civil Procedure 24(a), which is substantially similar. See, e.g., Cascade Natural Gas Corp. v. El Paso Natural Gas Co., 386 U.S. 129, 134 n. 3 (1967) (noting that Federal Rule of Civil Procedure 19(a) and 24(a) are counterparts); Pujol v. Shearson Am. Exp., Inc., 877 F.2d 132, 135 (1st Cir. 1989) (same). Additionally, "no procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the

-12-

determination of the action are indispensable." See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist., 276 F.3d 1150, 1156 (9th Cir. 2002). Ultimately, Federal Rule of Civil Procedure 19 mandates that an action be dismissed if a necessary party is not joined. See Ticket Ctr., Inc. v. Banco Popular de Puerto Rico, No. CV 04-2062 (GAG/BJM), 2008 WL 859275, at *5 (D.P.R. Mar. 28, 2008) (noting that Federal Rule of Civil Procedure 19 requires an action be dismissed absent a party "whose interest in the dispute is such that to proceed without that party could substantially prejudice either that party or others.").

Here, Assured is a necessary party to this action and must be joined. As stated above, Assured's interest in defending against a re-characterization of the Leases as a financing transaction is critical to Assured's recovery on account of the PBA Bonds. Additionally, pursuant to the Leases, PBA bondholders are express third-party beneficiaries. For that reason, PBA bondholders have independent rights to enforce remedies under the Leases. Therefore, any action to re-characterize the Leases would set aside the PBA Bondholders' rights. Given that Assured, as both insurer and subrogee, may assert the rights of a PBA Bondholder, Assured is an indispensable party to this action. If Assured is not joined, this Adversary Proceeding should be dismissed.

## CONCLUSION

For the foregoing reasons, Assured respectfully requests that the Court (1) grant Assured's request to intervene in this Adversary Proceeding or, in the alternative, join Assured as a necessary party, and (2) permit Assured to file its Proposed Answer in the form annexed hereto as Exhibit A.

Dated: San Juan, Puerto Rico
January 28, 2019

| CASELLAS ALCOVER & BURGOS P.S.C. | CADWALADER, WICKERSHAM & TAFT LLP |
|---|---|
| By: */s/ Heriberto Burgos Pérez* <br> Heriberto Burgos Pérez <br> USDC-PR 204809 <br> Ricardo F. Casellas-Sánchez <br> USDC-PR 203114 <br> Diana Pérez-Seda <br> USDC-PR 232014 <br> P.O. Box 364924 <br> San Juan, PR 00936-4924 <br> Telephone: (787) 756-1400 <br> Facsimile: (787) 756-1401 <br> Email: hburgos@cabprlaw.com <br> rcasellas@cabprlaw.com <br> dperez@cabprlaw.com <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* | By: */s/ Mark C. Ellenberg* <br> Howard R. Hawkins, Jr.* <br> Mark C. Ellenberg* <br> William J. Natbony* <br> Ellen M. Halstead* <br> Thomas J. Curtin* <br> Casey J. Servais* <br> 200 Liberty Street <br> New York, NY 10281 <br> Telephone: (212) 504-6000 <br> Facsimile: (212) 406-6666 <br> Email: howard.hawkins@cwt.com <br> mark.ellenberg@cwt.com <br> bill.natbony@cwt.com <br> ellen.halstead@cwt.com <br> thomas.curtin@cwt.com <br> casey.servais@cwt.com <br><br> * Admitted *pro hac vice* <br><br> *Attorneys for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.* |

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.

At New York, New York, 28th day of January, 2019.

By: /s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
* Admitted pro hac vice