HEARING DATE: MARCH 13, 2019 AT 9:30 A.M. (ATLANTIC STANDARD TIME)
OBJECTION DEADLINE: FEBRUARY 26, 2019 AT 4:00 P.M. (ATLANTIC STANDARD TIME)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re* <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> THE COMMONWEALTH OF PUERTO RICO, *et al.*, <br><br> Debtors.[1] | PROMESA <br> Title III <br><br><br> No. 17 BK 3283-LTS <br><br> (Jointly Administered) |
| *In re* <br><br> THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, <br><br> as representative of <br><br> PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"), <br><br> Debtor. | PROMESA <br> Title III <br><br><br> No. 17 BK 3284-LTS |

*Caption Continued on Following Page*

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are (i) The Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| THE BANK OF NEW YORK MELLON, as Trustee,<br><br>          Plaintiff,<br><br>    v.<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION; WHITEBOX MULTI-STRATEGY PARTNERS, L.P.; WHITEBOX ASYMMETRIC PARTNERS, L.P.; WHITEBOX INSTITUTIONAL PARTNERS, L.P.; PANDORA SELECT PARTNERS, L.P.; AMBAC ASSURANCE CORPORATION; FRANKLIN ADVISERS, INC., and CEDE & CO., as nominee for The Depository Trust Company,<br><br>          Defendants. | Adv. Pro. No. 17-00133-LTS |

**MOTION OF WHITEBOX MULTI-STRATEGY PARTNERS, L.P. AND CERTAIN OF ITS AFFILIATES FOR RECONSIDERATION OF THE COURT'S ORDER <u>PRECLUDING THE CROSS-EXAMINATION OF CERTAIN WITNESSES</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

JURISDICTION AND VENUE ............................................................................................... 3

RELEVANT BACKGROUND ................................................................................................ 3

RELIEF REQUESTED ............................................................................................................ 8

BASIS FOR RELIEF ............................................................................................................... 8

      A.      Legal Standard. ................................................................................................ 8

      B.      Reconsideration Is Warranted. ...................................................................... 10

NOTICE ................................................................................................................................. 16

NO PRIOR REQUEST .......................................................................................................... 16

CONCLUSION ...................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cal. v. Green*,
  399 U.S. 149 (1970)..............................................................................................11

*Daubert v. Merrell Dow Pharms.*,
  509 U.S. 579 (1993)........................................................................................3, 10, 15

*Delta Eng'g Corp. v. Scott*,
  322 F.2d 11 (5th Cir. 1963) ..................................................................................11

*Geffon v. Micrion Corp.*,
  249 F.3d 29 (1st Cir. 2001)....................................................................................9

*Goldberg v. Kelly*,
  397 U.S. 254 (1970).......................................................................................2, 10, 11

*Greene v. Union Mut. Life Ins. Co. of Am.*,
  764 F.2d 19 (1st Cir. 1985)....................................................................................9

*Hussey v. Chase Manhattan Bank*,
  No. CIV. A. 02-7099, 2005 WL 1787571 (E.D. Pa. July 27, 2005)......................................10

*John Simmons Co. v. Grier Bros. Co.*,
  258 U.S. 82 (1922).............................................................................................8

*McNeill v. Butz*,
  480 F.2d 314 (4th Cir. 1973) ................................................................................10

*Meyer v. Lenox (In re Lenox)*,
  902 F.2d 737 (9th Cir. 1990) ..................................................................................9

*Miranda v. Deloitte LLP*,
  962 F. Supp. 2d 379 (D.P.R. 2013)...........................................................................8

*Nieves-Luciano v. Hernández-Torres*,
  397 F.3d 1 (1st Cir. 2005).....................................................................................8

*Patriot Portfolio v. Weinstein (In re Weinstein)*,
  164 F.3d 677 (1st Cir. 1999)...................................................................................9

*Pillsbury Co. v. Conboy*,
  459 U.S. 248 (1983)...........................................................................................10

*Popa v. Roumeliotis (In re Popa)*,
    214 B.R. 416 (B.A.P. 1st Cir. 1997), *aff'd*, 140 F.3d 317 (1st Cir. 1998)...............................8

*Roffman v. Butler (In re ROPT Ltd. P'ship)*,
    209 B.R. 144 (1st Cir. B.A.P. 1997) ......................................................................9

*United States v. Roberts*,
    978 F.2d 17 (1st Cir. 1992) ....................................................................... *passim*

**Statutes**

11 U.S.C. § 105(a) .............................................................................................1, 9

PROMESA § 301 ....................................................................................................1

PROMESA § 306(a) ...............................................................................................3

PROMESA § 307(a) ...............................................................................................3

**Other Authorities**

Fed. R. Evid. 607 ................................................................................................10

Fed. R. Evid. 611 ................................................................................................11

Fed. R. Evid. 611(b) ...........................................................................................14

Fed. R. Evid. 613(b) ...........................................................................................10

Fed. R. Evid. Art. VIII ........................................................................................10

To the Honorable United States District Judge Laura Taylor Swain:

Whitebox Multi-Strategy Partners, L.P. and certain of its affiliates (collectively, "Whitebox"), respectfully submit this motion (the "Motion"), pursuant to 11 U.S.C. § 105(a), made applicable to these cases by PROMESA section 301, and the Court's inherent power to reconsider its interlocutory orders, for (i) reconsideration of the Court's January 17, 2019 order precluding Whitebox from cross-examining the Declarants concerning the statements set forth in their Declarations, which BNYM submitted at the January 17, 2019 hearing (the "Hearing") in support of its arguments in the 19.5 Dispute (capitalized terms defined *infra*); and (ii) entry of an order, substantially in the form attached hereto as Exhibit A ("Proposed Order"):

    (a)    reopening the record in the 19.5 Dispute; and

    (b)    permitting Whitebox to cross-examine the Declarants concerning the statements set forth in their Declarations before adjudicating the 19.5 Dispute.

In support of the Motion, Whitebox respectfully represents as follows:

## PRELIMINARY STATEMENT

In the interests of justice, the Court should reconsider and vacate its interlocutory order precluding Whitebox from cross-examining the Declarants at the Hearing concerning the statements set forth in their Declarations and enter an order granting Whitebox the opportunity to do so before adjudicating the 19.5 Dispute.[2]

---

[2] Capitalized terms used in the Preliminary Statement have the meaning ascribed to them in the body of the Motion.

As shown below, the factors courts must consider for review of interlocutory orders—as articulated in *United States v. Roberts*, 978 F.2d 17 (1st Cir. 1992)—all strongly militate in favor of granting the instant Motion.  Specifically:

- *First*, Whitebox's disclosure of its intent to cross-examine BNYM's witnesses was, in fact, timely because it was filed on the *same day* that BNYM submitted the witnesses' Declarations as evidence in support of its arguments at the Hearing. *See infra* ¶¶ 5, 16-18.

- *Second*, Whitebox reasonably believed that its disclosures were both sufficient and timely based on the fact that they were substantively identical to disclosures filed by the Debtors, the Senior Bondholders' Coalition and other parties; the fact that the Court allotted 30 minutes at the Hearing for Whitebox to cross-examine the Declarants; and the fact that BNYM never stated or in any way suggested that Whitebox's disclosures were in any way deficient or untimely.  *See infra* ¶ 18.

- *Third*, depriving Whitebox of the opportunity to cross-examine the Declarants is a serious and disproportionate penalty for the alleged procedural default at issue, especially considering that where, as here, "important decisions turn on questions of fact, due process requires an opportunity to confront and cross-examine adverse witnesses."  *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).  *See infra* ¶ 15.

- *Fourth*, the degree of Whitebox's supposed tardiness, if any, in disclosing its intent to cross-examine the Declarants at the Hearing concerning the contents of their Declarations was *de minimis*.  *See infra* ¶ 16.

- *Fifth*, any procedural default was in no way willful.  *See infra* ¶ 18.

- *Sixth*, BNYM did not articulate any cognizable prejudice that would arise from permitting Whitebox to cross-examine the Declarants, and none existed. *See infra* ¶ 19.

- *Seventh*, permitting Whitebox to cross-examine the Declarants—who were scheduled to be cross-examined, present at the Hearing, and prepared to be examined—would not have burdened judicial resources or interfered with the Court's administration of its docket at the Hearing and can be accomplished now with only a limited burden on judicial resources, for example, at an omnibus hearing.  *See infra* ¶ 20.

- *Eighth*, Whitebox respectfully submits that the Court would benefit from hearing the Declarants defend their methodology and conclusions when challenged to do so on cross-examination by Whitebox, especially considering that "[v]igorous cross examination" is the "traditional and appropriate means" of challenging expert testimony.  *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 596 (1993). *See infra* ¶ 21.

- *Finally*, while Whitebox incorrectly informed the Court that it had not complied with its order, this was understandable under the circumstances, including BNYM's failure to flag any issues concerning Whitebox's disclosure before the Hearing, and BNYM's incorrect and misleading representation at the Hearing that Whitebox had filed "something that was not in compliance" with the Court's order.  Ambac's last-minute withdrawal from the evidentiary presentation further contributed to Whitebox's misunderstanding.  *See infra* ¶ 22.

Accordingly, Whitebox respectfully requests that the Court grant the Motion and schedule a time for Whitebox to cross-examine the Declarants concerning the statements set forth in their Declarations before the Court adjudicates the 19.5 Dispute.

## JURISDICTION AND VENUE

1.  The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over the Motion pursuant to PROMESA section 306(a).  Venue is proper in this district pursuant to PROMESA section 307(a).

## RELEVANT BACKGROUND

2.  On January 2, 2019, The Bank of New York Mellon, as Trustee ("BNYM"), filed the *Reservation of Rights of The Bank of New York Mellon, as Trustee, Regarding Section 19.5 of the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* ("Reservation of Rights"), the subject matter of which is referred to herein as the "19.5 Dispute."  Glenn Decl. ¶ 3.[3]  The 19.5 Dispute concerns BNYM's claim that it is entitled to withhold certain anticipated legal defense costs from the distributions of Whitebox under the *Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (the "Plan").  In conjunction with its Reservation of Rights, BNYM filed (i) the declaration of Daniel P. Goldberg, dated January 2, 2019, and (ii) the declaration

---

[3] "Glenn Decl. ¶ _" refers to the enumerated paragraph in the accompanying declaration of Andrew K. Glenn, dated January 29, 2019.

of Robert M. Fishman, dated January 2, 2019 (together, the "Declarants," who each

submitted a "Declaration").  *Id.*  In their respective Declarations, Mr. Goldberg estimates

that BNYM's anticipated legal defense costs will be somewhere between $25 million and

$40 million, while Mr. Fishman opines, based on his review of Mr. Goldberg's Declaration,

that Mr. Goldberg's estimate is reasonable.  Both Whitebox and Ambac Assurance

Corporation ("Ambac") filed three briefs in support of their respective positions in the 19.5

Dispute and deposed the Declarants.  *Id.*

      3.      On January 9, 2019, the Court entered the *Order Regarding Procedures for*

*Attendance, Participation and Observation of January 16, 2019 Hearing Regarding (1) The*

*9019 Settlement Approval Motion, (2) COFINA Plan of Adjustment Confirmation Motion,*

*and (3) Dispute Regarding Section 19.5 of the Plan* (the "Procedural Order"), which

provided, among other things, that the Court would review all declarations submitted

"in either support of or opposition to the Hearing Matters in advance of the Hearing" and

that any such declarations would be "deemed submitted as direct testimony."  Glenn Decl.

¶ 4.  The Declarations—which had been filed in conjunction with BNYM's Reservation of

Rights and did not seek any affirmative relief from the Court—were therefore not "in

support of" or "in opposition to" any Hearing Matters.  Because the Declarations were not

deemed submitted as direct testimony at that point pursuant to the Procedural Order, BNYM

subsequently submitted them to the Court as "evidentiary material" (*see* ¶ 5 *infra*).  The

Procedural Order further provided that anyone who "wishes to cross-examine any declarant …

at the Hearing must file an Informative Motion identifying the relevant Hearing Matter, the

witness or witnesses, the factual issue(s) to which the proposed cross-examination or testimony

relates, the subject matter of the testimony and its relevance to the factual issue(s)" by January

10, 2019. *Id.* As the Court later explained, the Procedural Order was "designed to give appropriate notice to any party whose witnesses were to be cross-examined." *Id.*, ¶ 16.

4.        On January 10, 2019, Whitebox timely filed an Informative Motion reserving Whitebox's right to be heard on any matter presented to the Court and to respond to any statements made by any party in connection with the Hearing Matters to the extent it impacted COFINA or Whitebox's interests.  Glenn Decl. ¶ 6.

5.        On January 14, 2019, BNYM submitted the Declarations to the Court as "evidentiary material" in support of its anticipated presentation concerning the 19.5 Dispute at the Hearing.  Glenn Decl. ¶ 7.  Consequently, Whitebox filed on the same day an Amended Informative Motion reserving its right to cross-examine the Declarants regarding the matters set forth in their Declarations (as did Ambac).  *Id.*, ¶ 8.  Whitebox's disclosure in the Amended Informative Motion was consistent with how other parties—including both the Debtors and the Senior Bondholders' Coalition—reserved their right to cross-examine witnesses at the Hearing, some of whom <u>did</u> cross-examine witnesses at the Hearing, in their informative motions (*Id.*):

|  | **Whitebox** | **Debtors** | **Senior Bondholders' Coalition** |
|---|---|---|---|
| **Disclosure:** | "Whitebox reserves its right to . . . cross-examine [the Declarants] regarding the matters set forth in their declarations" | "The Oversight Board also intends to cross-examine Dr. José I. Alameda-Lozada . . . about his opinions relevant to the COFINA Plan of adjustment, including its feasibility" | "[T]he COFINA Senior Bondholders' Coalition . . . reserves the right to cross-examine Mark Elliott in the event he is called as witness in support of any objection filed to the Plan" |

6.        Also on January 14, 2019, the Debtors filed the *Notice of Agenda of Matters Scheduled for the Hearing On January 16-17, 2019 at 9:30 A.M. AST* (the "<u>Agenda</u>"),

which expressly allotted Ambac and Whitebox "30 minutes each" to cross-examine the Declarants.  Glenn Decl. ¶ 9.

7.      As they had done in the two weeks preceding the Hearing, Whitebox and Ambac continued to coordinate and confer concerning their presentations.  Glenn Decl. ¶ 11.  Moreover, Whitebox continued to understand and believe that Ambac would take the lead in cross-examining the Declarants and that Whitebox would follow-up with any further cross-examination only if necessary and appropriate.  *Id*.

8.      On January 17, 2019, in the afternoon of the second day of the Hearing, the Court called the 19.5 Dispute to be heard.  As an initial matter, BNYM informed the Court that it had "reached an agreement with regard to the Section 19.5 issues with Ambac" and that, as a result, Ambac would "not be participating in the legal argument or the evidentiary part of the hearing."  Glenn Decl. ¶ 12.  Upon completion of opening statements concerning the 19.5 Dispute, BNYM offered the Declarations into evidence.  *Id*. ¶ 13.  Based on the understanding that Whitebox would be allowed to cross-examine the Declarants for at least the 30 minutes on the Agenda, Whitebox did not object, and the Court admitted the Declarations into evidence.  *Id*.

9.      At that point, BNYM objected for the first time to any cross-examination of the Declarants.  Glenn Decl. ¶ 14.  BNYM did not disclose to the Court that it had filed its expert witness declarations as "evidentiary material" on January 14, 2019, which was after the January 10, 2019 deadline in the Procedural Order that BNYM sought to enforce.  BNYM did not articulate any purported prejudice that would have resulted from allowing Whitebox to proceed to cross-examine the Declarants.  *Id*.  To the contrary, BNYM affirmatively stated that the Declarants were present and prepared to be examined.  *Id*.  Moreover, BNYM did not claim that it did not <u>know</u> the factual issues to which the proposed cross-examination of the Declarants

related, the subject matter of their testimony or its relevance to the factual issues—because

BNYM plainly did know, given that Ambac and Whitebox had deposed the Declarants the prior

week.  Instead, BNYM asserted that it supposedly was not "told by January 10 at 12 o'clock

whether there was going to be any request for cross-examination, including factual issues to

which the proposed cross-examination or testimony relates."  *Id.* (emphasis added).  BNYM

alleged that Whitebox had filed "something that was not in compliance" with the Procedural

Order, but failed to inform the Court that the Amended Informative Motion was in fact consistent

with what other parties had submitted.  *Id.*  BNYM also asserted that the Amended Informative

Motion was "untimely" notwithstanding the fact that it was filed on January 14, 2019—*i.e.*, the

same day that BNYM submitted the Declarations as evidentiary material in support of its

position in the 19.5 Dispute.  *Id.*

10.     In response to the Court's inquiry as to whether Whitebox had complied with its

disclosure obligations, Whitebox informed the Court that it had not.  Glenn Decl. ¶ 15.  That was

not correct.  In fact, Whitebox timely filed the Informative Motion in accordance with the

Procedural Order and filed its Amended Informative Motion on the same day that BNYM

submitted the Declarations as evidentiary material in support of its anticipated presentation at the

Hearing.  However, because of BNYM's failure to flag any procedural or substantive issues

concerning Whitebox's disclosure before the Hearing, and following BNYM's incorrect and

misleading allegation that Whitebox had filed "something that was not in compliance" with the

Court's order, Whitebox misunderstood that BNYM and, in turn, the Court were referring to

some obligation other than those set forth in the Procedural Order.  *Id.* ¶ 15.  On the premise that

Whitebox had not complied with the Procedural Order, the Court sustained BNYM's objection,

precluded Whitebox from cross-examining the Declarants concerning the statements set forth in their Declarations, and took the 19.5 Dispute under submission.  *Id.* ¶ 16.

## **RELIEF REQUESTED**

11.     By the instant Motion, Whitebox seeks (i) reconsideration of the Court's January 17, 2019 order precluding Whitebox from cross-examining the Declarants at the Hearing concerning the statements set forth in their Declarations, and (ii) entry of an order (a) reopening the record in the 19.5 Dispute, and (b) allowing Whitebox to cross-examine the Declarants before the Court adjudicates the 19.5 Dispute.

## **BASIS FOR RELIEF**

### A.     **Legal Standard.**

12.     Reconsideration of an interlocutory order[4] "may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity." *John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 90-91 (1922).  A court's authority to reconsider interlocutory orders is "not governed by rule or statute and takes root in the court's equitable power to process litigation to a just and equitable conclusion."  *Miranda v. Deloitte LLP*, 962 F. Supp. 2d 379, 382-83 (D.P.R. 2013) (quotations and citation omitted); *see also In re Popa*, 214 B.R. at 420 ("Motions for reconsideration before the entering of a final judgment rely on the inherent power of the rendering district court to afford such relief from interlocutory judgments as justice requires.").  Thus, the proper standard for evaluating a motion for

---

[4] "An order which does not finally determine a cause of action but only decides some intervening matter pertaining to the cause, and which requires further steps to be taken in order to enable the court to adjudicate the cause on the merits is considered interlocutory."  *Popa v. Roumeliotis (In re Popa)*, 214 B.R. 416, 419-20 (B.A.P. 1st Cir. 1997), *aff'd*, 140 F.3d 317 (1st Cir. 1998) (quotations and citation omitted).  Here, the order at issue is interlocutory because the Court must take "further steps" to adjudicate the 19.5 Dispute "on the merits."  *Id.*

reconsideration is not set forth in the Federal Rules of Civil Procedure (each, a "Rule").  *See,
e.g.*, *Nieves-Luciano v. Hernández-Torres*, 397 F.3d 1, 4 (1st Cir. 2005) (Rule 59(e) "does not
apply to motions for reconsideration"); *In re Popa*, 214 B.R. at 419-20 (Rule 60(b) does not
apply to motions for reconsideration).[5]

13.     Rather, as the First Circuit has held and reiterated, a "court faced with a motion to
reconsider must apply an interests-of-justice test." *United States v. Roberts*, 978 F.2d 17, 21
(1st Cir. 1992) (citing *Greene v. Union Mut. Life Ins. Co. of Am.*, 764 F.2d 19, 22 (1st Cir.
1985)).[6] "Justice is an ideal that defies precise definition." *Roberts*, 978 F.2d at 21.
Nevertheless, the First Circuit has established the following list of seven "illustrative" factors
that may be considered, among others as appropriate, in evaluating the interests of justice:

> (1) the nature of the case, (2) the degree of tardiness, (3) the reasons underlying
> the tardiness, (4) the character of the omission, (5) the existence *vel non* of
> cognizable prejudice to the nonmovant in consequence of the omission, (6) the
> effect of granting (or denying) the motion on the administration of justice, and (7)
> whether the belated [relief] would, in any event, be more than an empty exercise.

*Id.,* at 21-22.  "Because an interests-of-justice test covers considerable ground, the trial court
should strive to acquaint itself with the totality of the relevant circumstances." *Id*.  Ultimately,

---

[5] *Cf.*, *In re Popa*, 214 B.R. at 419 (rejecting argument that reconsideration of interlocutory order
may be granted "only when newly discovered evidence is presented or when the Court
committed a manifest error of fact or law"); *Geffon v. Micrion Corp.*, 249 F.3d 29, 38 (1st Cir.
2001) (same).

[6] 11 U.S.C. § 105(a) ("Section 105(a)") effectively codifies a bankruptcy court's inherent power
to reconsider interlocutory orders.  *See Patriot Portfolio v. Weinstein (In re Weinstein)*, 164 F.3d
677, 686 n.7 (1st Cir. 1999) (11 U.S.C. § 105(a) "grants broad authority to the bankruptcy court
to reconsider and reverse its prior decisions"); *Roffman v. Butler (In re ROPT Ltd. P'ship)*, 209
B.R. 144, 149 (1st Cir. B.A.P. 1997) ("Section 105(a) aptly has been described as a
'codification' of the bankruptcy court's inherent power to issue orders in aid of its jurisdiction").
Section 105(a) does not, however, alter the applicable "interests of justice" standard.  *See Meyer
v. Lenox (In re Lenox)*, 902 F.2d 737, 740 (9th Cir. 1990) (Section 105(a) authorizes bankruptcy
court "to reconsider any of its previous orders when equity so requires.").

the "court should place great emphasis upon the 'interests of justice.'" *Id.*, at 21 (quoting

*Greene*, 764 F.2d at 23).

**B.**     **Reconsideration Is Warranted.**

14.     As shown below, each and all of the *Roberts* factors militate in favor of granting

reconsideration.  Accordingly, in the interest of justice, the Court should reconsider its order

denying Whitebox the opportunity to cross-examine the Declarants concerning the statements set

forth in their Declarations and grant Whitebox the opportunity to do so before it adjudicates the

19.5 Dispute.

15.     **Nature of the Case.**  Courts invariably consider the "seriousness of the penalty"

in evaluating the interests of justice.  *Roberts*, 978 F.2d at 22.  Here, as a penalty for its putative

procedural default, Whitebox has been deprived of the opportunity to cross-examine two experts,

whose testimony supposedly supports BNYM's contention that $32.5 million should be withheld

from Whitebox's distribution under the Plan.  The seriousness of that penalty can hardly be

overstated.  "The right of cross-examination . . . [is] a right traditionally relied upon expansively

to test credibility as well as to seek the truth."  *Pillsbury Co. v. Conboy*, 459 U.S. 248, 259

(1983).  Of particular relevance, "[v]igorous cross-examination" is the "traditional and

appropriate means" of challenging expert testimony.  *Daubert*, 509 U.S. at 596.  Indeed, where,

as here, "important decisions turn on questions of fact, *due process requires an opportunity to*

*confront and cross-examine adverse witnesses.*"  *Goldberg*, 397 U.S. at 269 (emphasis added;

citations omitted); *see also McNeill v. Butz*, 480 F.2d 314, 321 (4th Cir. 1973) ("In various civil

settings, the Supreme Court has stressed the critical nature of the right to confront and cross-

examine adverse witnesses.").  The Federal Rules of Evidence "clearly contemplate that a

witness who takes the stand and testifies on direct examination must also be subject to

cross-examination by opposing counsel."  *Hussey v. Chase Manhattan Bank*, No. CIV. A. 02-

7099, 2005 WL 1787571, at *4 (E.D. Pa. July 27, 2005).[7]  And while trial courts may "exercise

reasonable control over the mode and order of interrogating witnesses," the over-riding goal is to

"make the interrogation and presentation effective for the ascertainment of the truth."  Fed. R.

Evid. 611.  Cross-examination, of course, is the "greatest legal engine ever invented for the

discovery of truth."  *Cal. v. Green*, 399 U.S. 149, 158 (1970).  Accordingly, the indisputable

"seriousness" of depriving Whitebox of the opportunity to cross-examine the Declarants,

especially in light of the absence of any cognizable prejudice to BNYM, militates strongly in

favor of granting the Motion.  *Roberts*, 978 F.2d at 22; *see also Delta Eng'g Corp. v. Scott*, 322

F.2d 11, 20 (5th Cir. 1963) (reversing and remanding for "limited new trial" based on trial

court's "undue restriction on cross examination [of expert witness] to test his professional

opinion"); *cf.*, *Goldberg*, 397 U.S. at 269 ("[W]here credibility and veracity are at issue, . . .

written submissions are a wholly unsatisfactory [substitute] basis for decision.").

16.   **Degree of Tardiness.**  "The length of [the movant's] delay is often a key factor in

deciding whether to permit a pleading to be filed out of time."  *Roberts*, 978 F.2d at 22.  Here,

the degree of Whitebox's tardiness, if any, in disclosing its intent to cross-examine the

Declarants at the Hearing concerning the contents of their Declarations was *de minimis*.

Specifically, even assuming for the sake of argument that Whitebox should have disclosed its

intent to cross-examine the Declarants even before BNYM had submitted their Declarations to

the Court in support of its anticipated presentation at the Hearing, Whitebox expressly reserved

---

[7] *See, e.g.*, Fed. R. Evid. 607 ("credibility of a witness may be attacked by any party"); Fed. R.
Evid. 613(b) ("Impeachment of a witness by a prior inconsistent statement is normally allowed
only when the witness is first provided an opportunity to explain or deny the statement"—*i.e.*, on
cross-examination); *see also* Fed. R. Evid. Art. VIII advisory committee's note ("[T]he Anglo-
American tradition has evolved three conditions under which witnesses will ideally be required
to testify:  (1) under oath, (2) in the personal presence of the trier of fact, (3) subject to cross-
examination.").

the right to do so on January 14, 2019—*i.e.*, only four days after the January 10, 2019 deadline

set forth in the Procedural Order.  Glenn Decl. ¶ 7.  Such an immaterial delay under the

circumstances here militates in favor of granting the Motion.  *Cf.*, *Roberts*, 978 F.2d at 22

(reconsideration appropriate where, "on a worst-case scenario, the [movant] was only four days

late in requesting extra time and five days late in filing its opposition to the suppression

motion").

       17.    **Reasons for Tardiness.**  Courts "look next to the reasons underlying the

procedural default."  *Roberts*, 978 F.2d at 22.  Here, the Procedural Order was filed on January 9,

2019 and called for a disclosure the very next day as to whether any party "wish[ed] to cross-

examine any declarant."  Glenn Decl. ¶ 4.  The next day, on January 10, 2019, Whitebox both

deposed the Declarants and filed an Informative Motion (as did Ambac), which reserved the

right to address any matters raised at the Hearing.  If the Informative Motion were insufficient—

and BNYM never stated or suggested that it was—it was an oversight and, in any event, quickly

remedied.  Four days later, on January 14, 2019, BNYM submitted the Declarations to the Court

as evidence in support of its anticipated presentation concerning the 19.5 Dispute at the Hearing,

in response to which Whitebox filed the Amended Informative Motion (as did Ambac) the same

day expressly reserving the right to cross-examine the Declarants.  *Id.*, ¶¶ 7-8.  Accordingly,

because Whitebox has a "plausible reason for the error," this factor militates in favor of granting

the Motion.  *Cf.*, *Roberts*, 978 F.2d at 22 ("excusable neglect" where procedural default was the

"result of a misinterpretation of [a] Local Rule").

       18.    **Character of the Omission.**  "In determining whether to hold a litigant to a non-

jurisdictional procedural default, the presence or absence of willfulness is invariably a salient

consideration."  *Roberts*, 978 F.2d at 22.  Here, any procedural default was in no way willful.

- 12 -

Based on Whitebox's interpretation of the Procedural Order, and the fact that it had reserved the right to cross-examine the Declarants in a manner consistent with the informative motions submitted by other parties, including the Debtors and the Senior Bondholders' Coalition, Whitebox believed that it had complied with the Procedural Order—a belief reinforced by the allotment of 30 minutes on the Agenda for Whitebox to cross-examine the Declarants.  Glenn Decl. ¶ 9.  Moreover, at no time until immediately before Whitebox was set to cross-examine the Declarants on the afternoon of the second day of the Hearing did BNYM ever state or suggest that Whitebox had in any way failed to comply with the Procedural Order, even though it too must have known that the Court had allotted Whitebox 30 minutes to cross-examine the Declarants.  *Id.*, ¶ 10.  Indeed, at the Hearing, BNYM conceded that it had not previously "flagged [Whitebox's disclosures for] untimeliness."  *Id.*, ¶ 14.  Thus, if the conduct of any party to the 19.5 Dispute was "culpable" (*Roberts*, 978 F.2d at 23), it was that of BNYM, which needlessly sand-bagged Whitebox.  Accordingly, this factor militates in favor of granting the Motion or is, at worst, "neutral."  *Cf.*, *id.* (where any "delay was not intentional" but "resulted from a simple mistake" and was "understandable in light of the local rule's ambiguity," this factor "close to neutral").

19.   **Prejudice.**  The "next inquir[y] is whether the interlude caused cognizable prejudice."  *Roberts*, 978 F.2d at 22.  Here, BNYM did not articulate any prejudice that supposedly would have resulted from allowing Whitebox to cross-examine the Declarants on behalf of Whitebox at the Hearing.  Glenn Decl. ¶ 14.  To the contrary, BNYM declared that the Declarants were present at the Hearing and prepared to be cross-examined.  *Id.*  Moreover, BNYM did not claim that it did not know the factual issues to which the proposed cross-examination of the Declarants related, the subject matter of their testimony or its relevance

- 13 -

to the factual issues. *Id*. Nor could BNYM have credibly made any such claim, given that Ambac and Whitebox had deposed the Declarants the prior week. *Id*.[8] Instead, BNYM identified nothing more than a foot fault, asserting only that it had not been expressly "told by January 10 at 12 o'clock whether there was going to be any request for cross-examination, including factual issues to which the proposed cross-examination or testimony relates," even though it undoubtedly in fact knew. *Id*. Accordingly, this factor militates in favor of granting the Motion. *Cf.*, *Roberts*, 978 F.2d at 23 ("There is absolutely no evidence that a four- or five-day delay hampered prosecution of the motion to suppress, threatened to stall the trial, or interfered with appellee's defense. Nor is there any showing that appellee will be unfairly harmed should the motion be argued now.").

20. **Institutional Interests.** "The court, too, has a significant interest in the punctilious observation and strict enforcement of its procedural rules, including temporal requirements." *Roberts*, 978 F.2d at 23. While "this factor deserves great weight," here, as in *Roberts*, "there is no evidence" that any tardiness in disclosing Whitebox's intent to cross-examine the Declarants "would have burdened judicial resources or interfered with the court's administration of its docket." To the contrary, the Court had already scheduled an hour at the Hearing for the cross-examination of the Declarants, who were present and prepared to be examined. Glenn Decl. ¶¶ 9, 14. Accordingly, this factor militates against sustaining such a serious penalty against Whitebox "solely on the ground of a rather minimalistic period of inadvertent delay." *Roberts*, 978 F.2d at 23.

---

[8] Moreover, cross-examination is, of course, generally limited to the scope of the direct examination. Fed. R. Evid. 611(b). Because their Declarations were deemed to be the Declarants' direct examinations, BNYM necessarily was aware of the subject matter of Whitebox's cross-examinations and the relevance of those subjects to the 19.5 Dispute.

21.     **Utility of the Relief.**  Some "weight should be attached to the likelihood of

success if the party moving for reconsideration is allowed to revisit the underlying issue."  *Id.*

(citation omitted).  Here, at the Hearing, Whitebox articulated some of its concerns with respect

to the reliability of the Declarants' testimony as set forth in their Declarations.  Glenn Decl. ¶ 17.

In response, BNYM characterized and attempted to defend the Declarants' methodology and

conclusions.  *Id.*  Given that "[v]igorous cross examination" is the "traditional and appropriate

means" of challenging expert testimony (*Daubert*, 509 U.S. at 596), Whitebox respectfully

submits that the Court would benefit from hearing the Declarants themselves defend their

methodology and conclusions when challenged to do so on cross-examination by Whitebox.

Accordingly, this factor militates in favor of granting the Motion.  *Cf.*, *Roberts*, 978 F.2d at 23.

22.     **Other Factors.**  Finally, courts may, "in a proper case, examine other factors."

*Id.* at 22.  Here, while Whitebox incorrectly informed the Court that it had not complied with the

Procedural Order, Whitebox's misunderstanding was understandable under the circumstances,

including BNYM's failure to flag any issues concerning Whitebox's disclosure before the

Hearing, and BNYM's incorrect and misleading representation at the Hearing that Whitebox had

filed "something that was not in compliance" with the Court's order and that its submission was

"untimely."  Ambac's last-minute withdrawal from the evidentiary presentation further

contributed to Whitebox's misunderstanding.  Glenn Decl. ¶ 12.  Accordingly, this too militates

in favor of granting the Motion.

## NOTICE

23.     Whitebox has provided notice of the Motion to:  (a) counsel for The Bank of New

York Mellon, as Trustee; and (b) all other parties identified as the Standard Parties in the Court's

*Eighth Amended Notice, Case Management and Administrative Procedures* [Dkt. No. 4866-1].

- 15 -

## NO PRIOR REQUEST

24.     No prior request for the relief sought in the Motion has been made to this or any

other court.

## CONCLUSION

Accordingly, for the foregoing reasons and any reason articulated upon oral argument

concerning the Motion, Whitebox respectfully requests that the Court (i) grant reconsideration of

the Court's January 17, 2019 order precluding Whitebox from cross-examining the Declarants at

the Hearing concerning the statements set forth in their Declarations, and (ii) enter an order

(a) reopening the record in the 19.5 Dispute, and (b) allowing Whitebox to cross-examine the

Declarants before the Court adjudicates the 19.5 Dispute.

[*Remainder of page intentionally left blank*]

Dated:    January 29, 2019
          San Juan, Puerto Rico

**KASOWITZ BENSON TORRES LLP**

By: /s/ *Andrew K. Glenn*
    Andrew K. Glenn (admitted *pro hac vice*)
    Trevor J. Welch (admitted *pro hac vice*)
    Shai Schmidt (admitted *pro hac vice*)
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800
    Email:  aglenn@kasowitz.com
           twelch@kasowitz.com
           sschmidt@kasowitz.com

**ARROYO & RIOS LAW OFFICES, P.S.C.**

By: /s/ *Moraima S. Ríos Robles*
    Moraima S. Ríos Robles
    (USDC-PR Bar No. 224912)
    1353 Ave. Luis Vigoreaux
    Guaynabo, P.R. 00966
    Telephone: (787) 522-8080
    Facsimile: (787) 523-5696
    Email:  mrios@arroyorioslaw.com

*Attorneys for Whitebox Multi-Strategy Partners, L.P.*
*and its Above-Captioned Affiliates*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Moraima S. Ríos Robles*
Moraima S. Ríos Robles
(USDC-PR Bar No. 224912)
1353 Ave. Luis Vigoreaux
Guaynabo, P.R. 00966
Telephone: (787) 522-8080
Facsimile: (787) 523-5696
Email:  mrios@arroyorioslaw.com

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re* | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |
| *In re* | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3284-LTS |
| PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"), | |
| Debtor. | |

*Caption Continued on Following Page*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

THE BANK OF NEW YORK MELLON, as Trustee,

                                    Plaintiff,                        Adv. Pro. No. 17-00133-LTS

               v.

PUERTO RICO SALES TAX FINANCING
CORPORATION, WHITEBOX MULTI-STRATEGY
PARTNERS, L.P.; WHITEBOX ASYMMETRIC
PARTNERS, L.P.; WHITEBOX INSTITUTIONAL
PARTNERS, L.P.; PANDORA SELECT PARTNERS, L.P.;
AMBAC ASSURANCE CORPORATION; FRANKLIN
ADVISERS, INC., and CEDE & CO., as nominee for The
Depository Trust Company,

                                    Defendants.

### ORDER (I) GRANTING RECONSIDERATION OF THE COURT'S ORDER PRECLUDING THE CROSS-EXAMINATION OF CERTAIN WITNESSES (II) REOPENING THE RECORD AND (III) PERMITTING THE CROSS-EXAMINATION OF CERTAIN WITNESSES

Upon the *Motion of Whitebox Multi-Strategy Partners, L.P. and Certain of its Affiliates for Reconsideration of the Court's Order Precluding the Cross-Examination of Certain Witnesses* (Dkt. No. ___ in Case No. 17-03283-LTS, the "Motion"),[2] and the Court having found and determined that (i) it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); (ii) venue is proper pursuant to PROMESA section 307(a); and (iii) due and proper notice of the Motion has been provided, and after due deliberation and good and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

      1.      The Motion is GRANTED.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

2.      The record in the 19.5 Dispute is hereby reopened for the limited purpose

of permitting Whitebox to cross-examine Daniel P. Goldberg and Robert M. Fishman.

3.      The Court retains jurisdiction over any disputes relating to the

interpretation, implementation and enforcement of this Order.

4.      This Order resolves Docket Entry No. _____ in Case No. 17-03283.


SO ORDERED.


Dated: _____, 2019                              _____
        San Juan, Puerto Rico                          LAURA TAYLOR SWAIN
                                 United States District Judge