# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>    Debtors.[1] | PROMESA<br>Title III<br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>    as representative of<br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br>    Debtor. | No. 17-BK-3284 (LTS) |

**[PROPOSED] BRIEF OF THE AUTONOMOUS MUNICIPALITY OF SAN JUAN**

    Plaintiff Autonomous Municipality of San Juan ("San Juan" or the "City"), by and through its undersigned attorneys, respectfully submits this *amicus curiae* brief in opposition to the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing

---

[1] The Debtors in these Title III cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

Corporation, dated January 9, 2019 [Case No. 17-3284, ECF No. 439] ("Proposed Plan of Adjustment") to explain how the Proposed Plan of Adjustment would impair the capacity of San Juan and other municipalities to fund essential public services for their residents.

## I. Identity and Interest of the Amicus Curiae

San Juan is the capital and most populous municipality in Puerto Rico. As of July 1, 2016, it had an estimated 347,052 residents, and a number of visitors that brought its population to approximately one million people per day. The City and its metropolitan area are the island's educational, medical, legal, cultural and tourism center, and also the location of most of Puerto Rico's economic activity.

Like other municipalities in Puerto Rico, San Juan provides its residents and visitors with essential public services. For example, the Police and Public Security Department provides security to the 180 communities of San Juan through a network of stations strategically located throughout the City, and the Health Department operates a municipal hospital and health centers. The City administers Casa Cuna de San Juan, which is the first municipal government-administered home in Puerto Rico for children that have been mistreated, abused or turned over voluntarily. San Juan also provides other services that Puerto Rico's courts have found to be essential, such as garbage collection.

As the Court is aware, Puerto Rico is in the midst of a humanitarian crisis. Hurricane Maria alone killed over 4,600 people on the island and caused significant property damage. San Juan has been at the front lines of efforts to respond to the disastrous impact of Hurricanes Irene and Maria, which continues more than a year after their disastrous landfall. All of Puerto Rico remains in desperate need for help.

Against this backdrop, the Commonwealth of Puerto Rico (the "Commonwealth") and the Puerto Rico Sales Tax Financing Corporation ("COFINA") have been locked in a nearly two-year

dispute over the ownership of a portion of the Commonwealth's general sales and use tax proceeds (the "SUT") that was purportedly transferred to COFINA ("Pledged Sales Tax") pursuant to Act of May 13, 2006, No. 91-2006, 2006 P.R. Laws 246 *et seq*. (codified as amended at 13 L.P.R.A. § 12) (as amended, "Act 91") ("Commonwealth-COFINA Dispute"). On August 10, 2017, this Court appointed the Official Committee of Unsecured Creditors of all title III Debtors (other than COFINA) as the "Commonwealth Agent" with respect to the Commonwealth-COFINA Dispute. *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* [Case No. 17-3283, ECF No. 996]. In that capacity, the Commonwealth Agent argued that COFINA did not have a right to the Pledged Sales Tax because, among other things, COFINA had been created to evade the Puerto Rico Constitution's limits on unsustainable borrowing. Although there has been no definitive ruling from any Court on COFINA's constitutionality, the Proposed Plan of Adjustment dedicates most of the Pledged Sales Tax to COFINA's creditors.

San Juan has a direct and substantial interest in opposing the Proposed Plan of Adjustment for two reasons. First, the Proposed Plan of Adjustment will impair San Juan's ability to fund the essential public services it provides its residents. San Juan currently funds its essential public services in part through a portion of the SUT, with the remaining portion allocated between the Commonwealth and COFINA. *See* 21 L.P.R.A. § 6752. Because the Proposed Plan of Adjustment places such a large part of the Pledged Sales Tax in a lockbox to repay COFINA's creditors, San Juan and other municipalities would be unable to seek legislative funding for essential public services by allocating that portion of the SUT proceeds to municipalities. Similarly, designating such a large part of the Pledged Sales Tax to benefit COFINA's creditors also limits the amounts that the Commonwealth can collect from the SUT and allocate through the appropriation process

3

to San Juan and other municipalities that are on the front lines providing essential public services to Puerto Ricans.

Second, the Proposed Plan of Adjustment would harm San Juan by disrupting the statutory and economic relationship between the Commonwealth and its municipalities. Currently, the Puerto Rico Constitution imposes limits on unsustainable debt financing on both the Commonwealth and San Juan and other municipalities. By approving the Proposed Plan of Adjustment, this Court would approve the Commonwealth's attempt to flout these debt limits. Because the Commonwealth cannot repay this debt, it has shifted and will continue to shift its liabilities onto San Juan and other municipalities, including by making the municipalities liable to pay a portion of the Commonwealth's accrued pension obligations, *see* Law 106-2017, 3 L.P.R.A. § 9531, *et seq.*, thereby imperiling San Juan's and other municipalities' autonomy and ability to continue providing essential public services to their residents.

## II. The Proposed Plan of Adjustment Will Impair Municipal Capacity to Fund Essential Public Services

The Commonwealth Agent has explained why Act 91, which created COFINA, is unconstitutional as a matter of Puerto Rican law because it was a flagrant evasion of the Puerto Rican constitution's debt limitations. *See, e.g., Official Committee of Unsecured Creditors v. Whyte,* Adv. Proc. No. 17-00257 (the "COFINA Adversary Proceeding"), ECF No. 322 at 39-41. As a result, the COFINA bondholders "derive[] no rights based on an unconstitutional statute; '[a]n unconstitutional law is void, and is as no law.'" *Geft Outdoor LLC v. Consol. City of Indianapolis & Cty. of Marion, Indiana*, 187 F. Supp. 3d 1002, 1012 (S.D. Ind. 2016); *Towboat One, Inc. v. M/V Waterdog*, No. 08-80162-CIV, 2008 WL 2609505, at *3 (S.D. Fla. June 24,

4

2008). Rather than repeat these arguments, San Juan highlights below the particularly deleterious effect that the Proposed Plan of Adjustment would have on San Juan and other municipalities.[2]

The SUT is an important source of the funding for the essential public services, including health and public safety related services, that Puerto Rico's municipalities provide their residents. *See* 21 L.P.R.A. § 6752. The Proposed Plan of Adjustment that the Court is being asked to approve, however, will seriously limit municipalities' ability to obtain revenue from the SUT.

Most obviously, the Proposed Plan of Adjustment's designation of a portion to the SUT to repay COFINA's creditors would render that portion of the SUT unavailable to either the Commonwealth or municipalities. In the face of incessant demand for essential public services, including addressing the tremendous needs exacerbated by Hurricanes Irene and Maria, San Juan and other municipalities would be unable to seek additional revenue from the legislature by lobbying for an increase in the municipal share of the SUT, no matter how dire the need.

In addition to making it more difficult to obtain funding from the SUT, approval of the Proposed Plan of Adjustment would limit the amounts available for the Commonwealth to allocate to municipal provision of basic services. As it is, funding for Puerto Rico's municipalities from the Commonwealth has been drastically cut in recent years. *See* ECF No. 3435-5, at 113-114 (noting reduction in total municipal appropriations of $150 million USD for FY 2018). The Proposed Plan of Adjustment would further weaken the Commonwealth's ability to allocate

---

[2] This Court previously declined to certify questions related to the Commonwealth-COFINA Dispute to the Supreme Court of Puerto Rico, and San Juan does not seek to relitigate that question here. Memorandum Order [Case No. 17-0257, ECF No. 483]. San Juan notes, however, that it has filed a motion to intervene in a case challenging the constitutionality of COFINA that was removed to this Court. *See Natal-Albelo v. Puerto Rico*, No. SJ2018CV10569. San Juan reserves any rights it might have relating to intervention in that matter and to seek to have that case and its claims adjudicated by Puerto Rican courts, including seeking remand on the grounds that Puerto Rican courts are the appropriate forum to hear challenges to the constitutionality of COFINA.

money to municipalities so that they can provide essential public services. Instead of using the Pledged Sales Tax to provide the services needed to retain business and people in Puerto Rico, the Proposed Plan of Adjustment would siphon a large portion of those funds to satisfy obligations that the Commonwealth incurred in violation of the Constitution.

The unfortunate consequences of these draconian cuts have only begun to be seen. Even before the hurricanes, a number of municipalities were unable to provide basic services to their citizens. *See, e.g.,* Dec. of Esperanza Ruiz ¶ 15, *San Juan v. The Financial Oversight and Management Board for Puerto Rico*, Case No. 3:17-cv-02009-LTS, ECF No. 35-5. The reduction in funding from the central government will only worsen the significant financial challenges being faced by all of Puerto Rico's municipalities. The closure of businesses, the exodus of thousands of Puerto Ricans, and an increase in operational expenses attributable to the hurricanes will continue to severely impact the finances of Puerto Rico's municipalities and, by extension, their ability to provide essential public services.[3]

### III. The Proposed Plan of Adjustment Threatens the Autonomy of Municipalities by Imposing the Commonwealth's Obligations on Them

In addition to depriving municipalities of revenue, the Proposed Plan of Adjustment will harm San Juan and other municipalities by allowing the Commonwealth to incur unsustainable liabilities and then impose them on its municipalities. The Puerto Rico Constitution and various statutes limit the amount that the Commonwealth and its municipalities may borrow. *See, e.g.*, Puerto Rico Constitution, Art. 6, Section 2. By permitting the Commonwealth to use COFINA to

---

[3] *See* Ex. 1., Leys Caro Gonzalez, *Municipalities finances teetering*, EL NUEVO DÍA, https://www.elnuevodia.com/english/english/nota/municipalitiesfinancesteetering-2400072/ (last visited January 29, 2019).

circumvent these limitations on the amounts it may borrow, the Proposed Plan of Adjustment approves the irresponsible accumulation of debt that the Commonwealth cannot repay.

The consequence of such a situation is that the Commonwealth has transferred some of its liabilities to municipalities like San Juan that have played by the rules. A prime example can be seen in the Commonwealth's enactment of Law 106-2017 to address the insolvency of the Employee Retirement System ("ERS") caused by the Commonwealth's failure to adequately fund the system. *See* Law 106-2017, 3 L.P.R.A. § 9531, *et seq*. Law 106 imposed on San Juan and other municipalities the obligation to pay all the accrued pension benefits of its employees, saddling them with hundreds of millions of dollars in liability that previously had been incurred by the Commonwealth. *Id*.

By approving the Proposed Plan of Adjustment and effectively permitting the Commonwealth to evade Puerto Rico's constitutional limitations and pass the cost on to its municipalities, the Court does more than simply impose costs on San Juan and other municipalities. It effectively deprives them of the autonomy to choose how it will provide essential public services. The Court should not countenance this distortion of Puerto Rico's governmental structure.

## IV. Conclusion

For the reasons set forth above, San Juan respectfully requests that the Court deny motion to approve the Proposed Plan of Adjustment.

**RESPECTFULLY SUBMITTED.**

In New York, New York, this 29th day of January, 2019.

| | |
|---|---|
| MARIANI FRANCO LAW, P.S.C.<br>/s/ Raúl S. Mariani Franco<br>Raúl S. Mariani Franco<br>USDC-PR Bar No. 210309<br>P.O. Box 9022864<br>San Juan, PR 00902-2864<br>Tel: 787.620.0038<br>Fax: 787.620.0039<br>marianifrancolaw@gmail.com<br><br>CHARLIE HERNÁNDEZ LAW OFFICES<br>/s/ Charlie M. Hernández<br>Charlie M. Hernández<br>USDC-PR Bar No. 207403<br>206 Tetuán Street, Suite 701<br>Old San Juan, PR 00901-1839<br>Tel: 787.382.8360<br>Fax: 787.382.8360<br>charliehernandezlaw@gmail.com | WINSTON & STRAWN LLP<br>/s/ Julissa Reynoso<br>Julissa Reynoso<br>(*Pro Hac Vice* application pending)<br>Aldo A. Badini<br>(*Pro Hac Vice* application pending)<br>Marcelo M. Blackburn<br>(*Pro Hac Vice* application pending)<br>200 Park Avenue<br>New York, NY 10166-4193<br>Tel: 212.294.6700<br>Fax: 212.294.4700<br>jreynoso@winston.com<br>abadini@winston.com<br>mblackburn@winston.com |

*Attorneys for Proposed Amicus Curiae the Autonomous Municipality of San Juan*

8

# Exhibit 1

1/29/2019 Municipalities finances teetering | El Nuevo Día

Case:17-03283-LTS   Doc#:4985-1   Filed:01/29/19   Entered:01/29/19 23:07:35   Desc:
Exhibit Proposed Amicus Brief   Page 11 of 14

ENGLISH VERSION

# Municipalities finances teetering

Losses in IVU collection, municipal licenses and other income added to the $56 million reduction in remittances

Monday, February 19, 2018 - 9:20 AM

By Leysa Caro González



In the picture economist Martha Quiñones. (GFR Media)

Since the last quarter of 2017, municipalities have seen their revenues consistently undermined, and, according to the most recent estimates, that includes a reduction of $ 56 million that will be reflected this fiscal year regarding the payment of movable and immovable property taxes.

Businesses clousures, mass exodus of Puerto Ricans, decrees approved

and municipal and state exemptions, as well as an increase in operational expenses due to Hurricane Maria that were not contemplated in their budgets, emphasize the economic blow that some municipalities have already been suffering for a long time.

The global decline due to the impact on the collection of movable and immmovable property taxes between September, October, November and December, added to the decrease in lottery sales, reaches $ 55,632,485, confirmed to **El Nuevo Dia**, Javier Carrasquillo, President of the Governing Board of the Municipal Revenue Collection Center (CRIM, Spanish acronym).

"This figure includes the $ 30 million loss from the lottery and about $ 25 million on revenues decrease," said the mayor of Cidra.

CRIM estimated revenues for this fiscal year - which ends on June 30 - was $ 827,148,824 once discounted the municipal Special Additional Contributions (CAE, Spanish acronym) funds for the repayment of municipalities debt and the 5 percent for CRIM operational expenses.

For some municipalities, the cut in their remittances after Hurricane Maria has an impact of up to $ 6 million, as is the case of San Juan. However, in percentage terms, the most affected are Guayanilla and Manatí, with a reduction of 11.7 percent and 11.4 percent, respectively. "That implies that they have to make adjustments at a time when expenses have been increasing", said Carrasquillo.

In January, Carrasquillo had already warned that there would be $ 30 million reduction from lotteries and that they projected that collections between July and December would have been reduced by 15 percent.

But the economic blow of the hurricane over municipalities goes much further. Besides the $ 56 million, municipalities will have to deduct the money they have stopped receiving due to the elimination of the Sales and Use Tax (SUT) on processed foods approved by the government after Hurricane Maria and which was in force until last January 7. In addition, the exemption of the SUT collection for small businesses, with sales volumes for less than a million dollars, which was applied between November 20 and December 31.

Usually, that 1 percent of SUT goes to municipalities is used for essential services, such as garbage collection.

Carrasquillo said that the impact of the SUT exemption will not be measurable until they receive the Municipal Finance Corporation (Cofim, Spanish acronym) report, nor will be the reduction that municipalities will have in their public coffers from the licenses payment.

"Businesses file the license form once the economic activity year passed, so that will not be defined until January 2019. We can only speculate now", said Carrasquillo, who –four months after the hurricane- has seen 123 business closures in his municipality.

In Caguas, Mayor William Miranda Torres has taken measures to ensure the municipal operation this year, despite having projected a $ 16.4 million reduction in income which includes the $ 920,805.74 of the decrease in CRIM remittances.

"Regarding licenses we are considering a 40 percent adjustment ($ 1.2 million) which is particularly the impact of October, when there was almost no economic activity," said the mayor.

On the other hand, he estimated, that Caguas stopped receiving about $ 3.6 million from SUT.

The current budget of Caguas -$ 92 million- will also reflect a reduction of $ 26,000 that the municipality stopped accruing for renting municipal spaces, as well as about $ 8 million that they expected from a municipal initiative imposed to businesses that generated more than $ 3 million, to contribute 0.35 cents per $ 100 earned. The proposal was challenged in Court and could not be implemented.

Among the measures to reduce the impact, Miranda Torres highlighted the approval of an ordinance that grants a 50 percent reduction on construction taxes to any entrepreneur who builds or makes improvements between now and June 30.

"It may be an activity that was not intended, people will be motivated to do it and will generate income or that we will not receive what we have budgeted", said the mayor of the Popular Democratic Party (PPD).

In Caguas, 25 percent of the nearly 5,000 shops of the city remain closed. "All this causes more anxiety and anguish in the population ... I can not guarantee essential services for the population if the funds we need do not come," he said.

He assured that he has made the necessary adjustments - which included a professional services reduction - not to affect working hours. "Smaller municipalities are even more affected because they do not have a

1/29/2019 Municipalities finances teetering | El Nuevo Día

Case:17-03283-LTS Doc#:4985-1 Filed:01/29/19 Entered:01/29/19 23:07:35 Desc: Exhibit Proposed Amicus Brief Page 13 of 14

significant income in licenses, SUT of other sources... They virtually live from CRIM", he noted.

The president of the Mayors Federation, Carlos Molina, estimated the direct impact in his municipality, Arecibo, in $ 5 million, including the 20 percent in CRIM reduction. "It will be a multi-milliondollar real impact, but we will see the exact amount in two or three years", he said.

The PNP mayor said that municipalities have to reduce operational expenses and establish consortiums to provide services to achieve lower costs. "We have to be realistic about how the island lives today, but we have to look for options and not wait for a miracle to happen", he said.

Ramón Hernández Torres, Mayor of Juana Díaz, estimated the income loss, according to the municipal budget amounting to $ 12.8 million, in $ 1.3 million. This figure includes a decrease in licenses of $ 200,000, $ 300,000 from the IVU and business closures, among other items.

Meanwhile, there are over $ 1.1 million in the line of unbudgeted income not received from the State for this fiscal year. These cuts, he said, caused furloughs implemented on July 3, 2017. The municipality has 173 regular employees, 30 contract and 59 temporary employees.

"Things changed after Maria. For this fiscal year, we have been very active in federal funds, "said Hernández Torres.

The blow in Guaynabo Municipality, due to the drop in CRIM remittance until June 30, exceeds $ 2 million, said its mayor, Ángel Pérez.

"I can think that the figure will increase because we are not seeing the effect of the people that are leaving Puerto Rico yet... We are aggressively looking for companies that want to establish here", Pérez said.

"With the renewal of the licenses in April, I'm going to see the effect of the businesses that closed," he added.

### Will there be a way out?

According to Rolando Ortiz, mayor of Cayey, the urgency of the municipalities is no longer limited to furloughs but to shutdowns closing.

"There is no way out because the municipal institution is misunderstood by the governor. They see how effective we were before, during and after the hurricane, but now, when apparently that crisis has already passed and we say 'we want to help', they do not let us", Ortiz said.

In the case of Cayey, the CRIM reduction reaches $ 700,000. The scenario is complicated due to the elimination of $ 175 million in subsidies to the municipalities included in the original fiscal plan.

"When they reduce money for municipalities, they are taking money from the most needy people of the island. Poverty is increasing, "said the president of the Mayors Association, an organization that brings together popular municipal executives.

In addition to claiming to the Executive to postpone the reduction in the so-called subsidies, mayors focus their hopes on the federal Community Disaster Loans (CDL) program. With this initiative, municipalities could obtain up to $ 5 million loans for operational expenses at an approximate interest of 2.25 percent.

Meanwhile the Executive announced they will submit of a new bill after the Fiscal Oversight Board did not certify Senate Bill 774 that would create a $ 100 million Municipal Recovery Fund.

### Searching for other sources

1/29/2019 Municipalities finances teetering | El Nuevo Día

Case:17-03283-LTS Doc#:4985-1 Filed:01/29/19 Entered:01/29/19 23:07:35 Desc: Exhibit Proposed Amicus Brief Page 14 of 14

Economist Martha Quiñones said that the current conditions are favorable for the mayors to evaluate the development of private or quasi-public companies to fill the gap left by the closure of some mega-stores.

However, she acknowledged that it is not done overnight. "It requires an analysis of strengths and weaknesses and the offers they receive in order to be able to get something different", Quiñones said.

"With the loss of large stores, they have the opportunity to stimulate small and medium businesses with the same offer and that can generatemore jobs", noted the professor.

According to studies carried out separately by economists José Caraballo Cueto and José Alameda, she said that each job generated in a small company leaves more to the municipality than those of large companies.

"There is potential, we have to learn to have more confidence in ourselves and stop asuming that the big ones are those who benefit us," Quinones said.

"It is part of this dynamic of how to understand the new municipalities operation, the importance of decentralization, that they receive the funds they need and that they will be the ones to articulate the projects they need for each of their citizens", she concluded.