UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

      Debtors.[1]

-----------------------------------------------------------------x

THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF THE COMMONWEALTH OF
PUERTO RICO,

      as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

      as representative of

THE COMMONWEALTH OF PUERTO RICO,

      Plaintiff,

v.

BETTINA WHYTE

      as agent of

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

      as representative of

THE PUERTO RICO SALES TAX FINANCING
CORPORATION,

      Defendant.

-----------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)


Adv. Proc. No. 17-00257

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

MEMORANDUM OPINION AND ORDER APPROVING SETTLEMENT BETWEEN
COMMONWEALTH OF PUERTO RICO AND PUERTO RICO SALES TAX FINANCING CORPORATION

LAURA TAYLOR SWAIN, United States District Judge

Before the Court is the *Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4067 in Case No. 17-3283, the "Motion")[2] filed by the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor"), by and through the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as representative of the debtor under PROMESA section 315(b).  The Court received evidence and heard argument on the Motion on January 16, 2019 (the "Hearing").

This Court has exclusive jurisdiction of the Commonwealth Title III Case pursuant to PROMESA section 306(a).  Venue is proper before this Court pursuant to PROMESA section 307(a).  Pursuant to section 306(b) of PROMESA, upon commencement of the Commonwealth Title III Case (Case No. 17 BK 3283) and the COFINA Title III Case (Case No. 17 BK 3284), the Title III Court exercised, and continues to exercise, exclusive jurisdiction over all property of the Commonwealth and COFINA, wherever located.

The Court has considered carefully the Motion, as well as the objections filed by various stakeholders, and the witness testimony, briefing, and written evidence submitted by the parties.[3]  The Court has also reviewed and considered carefully hundreds of letters and email messages, including a petition, submitted by the members of the public and listened carefully to

---

[2]    Capitalized terms not otherwise defined herein shall have the meanings given to them in that certain Settlement Agreement, dated October 19, 2018, attached to this Order as Schedule 1.

[3]    The written submissions related to the Motion are enumerated in paragraphs 18-26, infra.

the oral remarks made on the record of the Hearing by members of the public.  For the following

reasons, the Motion is hereby granted, and the objections are overruled.

## I.     INTRODUCTION

The Motion presents the Court with the question of whether to approve an

agreement embodying a settlement (the "Settlement Agreement") that divides rights to a

significant flow of tax revenues between two debtors—the Commonwealth of Puerto Rico and

COFINA—that have been involved in complex litigation concerning claims, on the one hand, that

the Commonwealth previously made a valid transfer of the disputed tax revenue stream to

COFINA to support the repayment of billions of dollars of bonds and, on the other hand, that the

Commonwealth did not have the power to transfer rights to the revenue stream to COFINA or did

not make the transfer in an effective way.  Hundreds of millions of dollars of projected annual

revenues over a period of decades are implicated in this dispute, which is commonly referred to as

the Commonwealth-COFINA Dispute.  The Commonwealth-COFINA Dispute itself arises in the

extraordinary circumstances of a sovereign restructuring under a special statute, PROMESA, that

was enacted in 2016 to enable Puerto Rico and other United States territories to seek bankruptcy-

type relief in federal court.  Thus, unlike in a typical commercial restructuring involving private

commercial entities, here one of the debtor parties is the Commonwealth of Puerto Rico—a public,

government entity upon which millions of people depend for essential services and economic and

physical infrastructure—and the other is a Commonwealth instrumentality that has issued bonds

to finance governmental obligations.

The Motion is brought by the Oversight Board, as representative of the

Commonwealth of Puerto Rico in the Commonwealth's PROMESA Title III case, pursuant to

Rule 9019 of the Federal Rules of Bankruptcy Procedure, which PROMESA makes applicable to these Title III proceedings. The Oversight Board seeks approval of the Settlement Agreement from the perspective of the Commonwealth. The Court reviews the propriety of the Settlement Agreement from COFINA's perspective as part of its consideration of the separate motion to confirm the proposed COFINA Plan of Adjustment, which will be addressed in a separate memorandum and confirmation order. Accordingly, in this Memorandum Opinion and Order, the Court is only addressing whether the Settlement Agreement should be approved in the Commonwealth's Title III case.

Many of the formal and informal objections raised serious and considered concerns about the Commonwealth's future ability to provide properly for the citizens of Puerto Rico who depend upon it. These objections argued that, if the Commonwealth does not have full access to the tax revenues that are the subject of the Commonwealth-COFINA Dispute, it will not be able to provide a sufficiently robust foundation for population retention and economic growth as it works to overcome its current crisis. The concerns are logical, and reflect well-founded anxieties of citizens about issues that the Oversight Board and the elected government will have to address in responsible, meaningful ways in formulating a plan of adjustment for the Commonwealth. They are not, however, concerns upon which the Court can properly act in making its decision on the current motion pursuant to Rule 9019. The question now before the Court is much narrower— whether this particular Settlement Agreement should be approved as a resolution of the dispute between two Title III debtors over the stream of tax revenue. In making this decision, the Court is not free to impose its own view of what the optimal resolution of the dispute could have been. Rather, as the Court explains at length in this Memorandum Opinion and Order, the question for the Court is whether the parties whom the U.S. Congress and the people of Puerto Rico have

empowered to make decisions for the Commonwealth (that is, the Oversight Board and Puerto Rico's governor and legislature) have reached a negotiated result that is within the range of reasonable results.

For the reasons explained below, the Court is satisfied that it should approve the Settlement Agreement because the Settlement Agreement represents a reasonable compromise of the Commonwealth-COFINA Dispute.  The litigation concerning that underlying dispute has been complex and costly, and, absent approval of the Settlement Agreement, threatens to drag on for months or even years.  Continuing that litigation would further deplete the resources available to the Commonwealth and its many stakeholders.  Further litigation would also present a significant gamble for the Commonwealth: if litigated to its conclusion, an adverse judgment in the Commonwealth-COFINA dispute could deprive the Commonwealth of billions of dollars of sales tax revenue over the course of decades.  The Settlement Agreement represents a well-reasoned choice to reject that risky gamble and to accept a compromise that is, admittedly, deeply disappointing to countless citizens of Puerto Rico and investors in Commonwealth bonds.

The Court is hopeful that, by settling the Commonwealth-COFINA dispute and ensuring the Commonwealth's access to a meaningful share of sales tax revenues that were previously pledged to COFINA, the Settlement Agreement can pave the way for the responsible officials to marshal resources, reach future agreements, and design a plan of adjustment for the Commonwealth that meets PROMESA's goals of achieving fiscal responsibility and access to capital markets for the benefit of the Commonwealth, its people, and its many other stakeholders.

II.   FINDINGS OF FACT AND CONCLUSIONS OF LAW[4]

The Court makes the following Findings of Fact and Conclusions of Law:

1.      On July 20, 2016, prior to the commencement of the Commonwealth Title III Case, certain holders of Commonwealth general obligation bonds ("GO Bonds") filed a complaint in the United States District Court for the District of Puerto Rico against the Commonwealth Governor, Secretary of Treasury, and Office of Management and Budget Director seeking (a) declaratory relief that the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Act 21-2016 ("Act 21"), which authorized the Governor to, among other things, declare a temporary moratorium on debt service payments and stay creditor remedies, and an executive order issued pursuant to Act 21 announcing a moratorium on the Commonwealth's general obligation bonds, are preempted by PROMESA section 204(c)(3), and (b) an injunction to prevent certain measures taken by the government permitting transfers outside of the ordinary course.  Lex Claims, LLC v. Garcia-Padilla; United States District Court, District of Puerto Rico, July 20, 2016, Case No. 16-2374-FAB (the "Lex Claims Litigation").  On November 4, 2016, the plaintiffs filed a second amended complaint, as further described below, adding new causes of action, including three causes of action relating to COFINA, and adding COFINA and other parties as defendants.  On December 16, 2016, COFINA filed an answer to the second amended complaint generally denying the allegations and asserting various affirmative defenses.  Certain COFINA bondholders who intervened in the Lex Claims Litigation also filed answers generally denying the allegations and asserting various defenses and counter- and cross-claims.

---

[4]     The findings and conclusions set forth herein constitute the Court's Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052, made applicable to this contested matter pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law or any of the conclusions of law constitute findings of fact, they are adopted as such.

2.      Plaintiffs in the Lex Claims Litigation, in their second amended complaint, argue, among other things, that the Puerto Rico Constitution requires the Commonwealth to pay the GO Debt ahead of any other expenditure.  They claim that, pursuant to Article VI, Section 8 of the Puerto Rico Constitution, if Puerto Rico's "available resources" are insufficient to meet all of its appropriations, "interest on the public debt and amortization thereof shall first be paid, and other disbursements shall thereafter be made in accordance with the order of priorities established by law."  They further allege that the tax revenues that the Commonwealth had committed to COFINA (the "Pledged Sales Taxes") are an "available resource" and that COFINA was created and has issued bonds in an attempt to evade the claim of holders of GO Debt on "available resources" and related constitutional limitations on the amount of public debt the Commonwealth was permitted to issue.  Plaintiffs request two declaratory judgments that challenge the legal validity of COFINA: (1) a declaration that the Pledged Sales Taxes constitute "available resources" and that such funds cannot be deposited with COFINA or its bondholders; and (2) a declaration that the Commonwealth is obligated to afford the GO Debt absolute priority, including priority over required deposits with COFINA and its bondholders.

3.      Certain holders and insurers of COFINA's outstanding bonds (the "Existing Securities"), who were permitted to intervene in the Lex Claims Litigation, asserted that the Pledged Sales Taxes were legislatively rendered property of COFINA from their inception, thereby eliminating any possibility the taxes may be property or "available resources" of the Commonwealth.  Such holders and insurers relied upon the section of Act of May 13, 2006, No. 91-2006, 2006 P.R. Laws 246 et seq. (codified as amended at P.R. Laws Ann. tit. 13, § 12) (as amended, "Act 91") which explicitly provides that Pledged Sales Taxes "shall [not] constitute available resources of the Commonwealth of Puerto Rico nor be available for the use of the

Secretary." Act 91 § 2. They further assert that the question whether COFINA's property constitutes "available resources" should be certified to the Supreme Court of Puerto Rico because, in their view, its resolution would involve a pure and undecided issue of Puerto Rico constitutional law that would have long-lasting consequences for the Commonwealth. They assert that COFINA is essential in permitting Puerto Rico to access the capital markets on favorable terms, and that the plaintiffs in the Lex Claims Litigation had been able to obtain higher interest rates on the Commonwealth's general obligation bonds precisely because COFINA's property was not available to repay them.

4.       Promptly after certification of the Commonwealth's initial Fiscal Plan on March 13, 2017, the Oversight Board and AAFAF undertook a joint effort to formulate restructuring proposals for all major creditors based on the debt sustainability analysis in the Fiscal Plan. The Oversight Board and AAFAF requested that holders of GO Debt and COFINA's Existing Securities participate in mediation with the Oversight Board and AAFAF. The mediation began on April 13, 2017, under the auspices of retired Bankruptcy Judge Allan L. Gropper. Despite several mediation sessions and other private negotiations, no agreement was reached before the expiration of the pre-Title III stay provided in PROMESA section 405 on May 1, 2017.

5.       After competing bondholder groups commenced litigation against the Commonwealth and COFINA, the Oversight Board determined, in consultation with AAFAF and at the request of the Governor, and after consideration of creditor support for a Title III filing, that the best path forward for the Commonwealth and COFINA to resolve the Commonwealth-COFINA Dispute was to file the Commonwealth Title III Case and the COFINA Title III Case to afford the Commonwealth and COFINA additional time and breathing room to seek to resolve the impasse under the supervision of the Title III Court.

6.      Pursuant to PROMESA section 315(b), the Oversight Board is the representative of the Commonwealth and COFINA in their respective Title III cases.  The Oversight Board analyzed various options for resolving the dispute and determined that the best path forward was to institute procedures for an orderly process to resolve the Commonwealth-COFINA Dispute, which process involved the appointment of independent Oversight Board agents to serve separately as the respective representatives of the Commonwealth and COFINA in the Commonwealth-COFINA Dispute.

7.      On June 10, 2017, the Oversight Board filed the *Motion of Debtors for Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (Docket Entry No. 303 in Case No. 17-3284, the "Commonwealth-COFINA Dispute Procedures Motion").

8.      On June 28, 2017, the Court denied the Commonwealth-COFINA Dispute Procedures Motion, without prejudice, but (a) requested that the Oversight Board seek agreement of all interested parties to a procedure for resolving the Commonwealth-COFINA Dispute through confidential mediation with Chief Bankruptcy Judge Barbara J. Houser of the Northern District of Texas, and (b) authorized the Oversight Board to file a revised motion with or without unanimous support of interested parties.

9.      Consistent with the Court's request, the Oversight Board worked with Chief Bankruptcy Judge Houser and any creditor party who sought to participate in the discussions to formulate procedures agreeable to the interested parties.  On July 21, 2017, the Oversight Board filed a revised motion seeking approval of a stipulation establishing a protocol to address the Commonwealth-COFINA Dispute, including the appointment of respective agents with independence from the Oversight Board as debtor representatives for the Commonwealth and COFINA to litigate, mediate, and/or settle the Commonwealth-COFINA Dispute, and providing a

procedure and timeline for the Agents to consult with creditors of their respective debtors in carrying out their charge, but each at all times owing duties only to their respective debtor to act solely in such debtor's best interest.

10.     On August 10, 2017, the Court entered the *Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (Docket Entry No. 996 in Case No. 17-3283, the "Procedures Order"), which provides, among other things, that (a) the Oversight Board, as representative of the Commonwealth in its Title III case, authorized the Committee to serve as the Commonwealth representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of the Commonwealth; and (b) the Oversight Board, as representative of COFINA in its Title III case, authorized Bettina Whyte to serve as the COFINA representative to litigate and/or settle the Commonwealth-COFINA Dispute on behalf of COFINA.

11.     The Procedures Order directed that "[e]ach Agent shall have a duty of good faith, care, and loyalty to the Debtor the Agent represents.  In furtherance of such duties, each Agent shall, with the advice and assistance of counsel, endeavor to the best of the Agent's ability under the circumstances to litigate and negotiate from the perspective of what result is best for the Debtor the Agent represents, as opposed to what result is best for any particular type of creditor of the Debtor the Agent represents.").  See Procedures Order ¶ 4(f).

12.     On September 8, 2017, the Commonwealth Agent commenced an adversary proceeding against the COFINA Agent seeking a resolution of the Commonwealth-COFINA Dispute and related issues (the "Adversary Proceeding").  Concurrently with the litigation of the Adversary Proceeding, the Agents and various parties to the Commonwealth-COFINA Dispute engaged in mediation led by Mediation Team leader Chief Bankruptcy Judge Barbara J. Houser to resolve the dispute.  At the time, such efforts were unsuccessful.

13.     During the intervening months, (a) the COFINA Agent answered the complaint and asserted counterclaims, (b) multiple parties intervened in the Adversary Proceeding, (c) discovery was undertaken and (d) the Agents and certain intervenors filed cross motions for summary judgment. Additionally, during this period, the Court clarified the scope of the Agents' authority to litigate and/or settle the issues raised in the Adversary Proceeding.

14.     Following oral argument regarding the respective motions for summary judgment filed in the Adversary Proceeding, the Mediation Team and the Agents rekindled their efforts to mediate a resolution.  The Oversight Board was not a party to such mediation efforts, other than to be informed of their existence.  Likewise, the Oversight Board was unaware of the parties which may have participated in such mediation.

15.     On June 7, 2018, the Agents announced the terms of an Agreement in Principle to resolve the Commonwealth-COFINA Dispute.  The Agreement in Principle was the product of arm's-length negotiations between the Agents free from any influence or direct participation by the Oversight Board.  At the time the Agreement in Principle was reached, both the COFINA Agent and the Commonwealth Agent agreed that it was the best possible outcome for each of their respective estates given the enormous stakes and uncertainty involved in litigating the Commonwealth-COFINA Dispute to conclusion.

16.     The Oversight Board asserted that certain aspects of the Agreement in Principle concerned matters beyond the scope of the Commonwealth-COFINA Dispute, as framed by the Procedures Order and the Scope Orders, including the design of new securities to be issued under a plan of adjustment for COFINA and a requirement on how the Oversight Board may use funds allocated to the Commonwealth.  Moreover, the Oversight Board asserted that, among other things, the Agreement in Principle exceeded the scope of the Adversary Proceeding and the Procedures

Order by attempting to, among other things, dictate the terms of plans of adjustment in the Title III Cases and limit the availability and use of funds.  However, the Oversight Board determined, after reviewing the extensive litigation history and issues raised in the Adversary Proceeding and assessing the likelihood of success for the Commonwealth in the litigation, that the central component of the Agreement in Principle—the 53.65% / 46.35% allocation of the disputed sales and use tax revenue between COFINA and the Commonwealth, respectively—was a fair and reasonable settlement and compromise of the Commonwealth-COFINA Dispute given the substantial risks of litigation, and determined to build upon the central component of the Agreement in Principle to garner support for a confirmable COFINA plan of adjustment.

17.    Subsequently, due to the changes in the Commonwealth's then-certified fiscal plan, the Commonwealth Agent was unwilling to proceed to finalize any further documentation regarding the Agreement in Principle.  As such, the Oversight Board, as representative of the Commonwealth, began negotiation of the terms of the Settlement Agreement with the COFINA Agent, consistent with the economic terms of the Agreement in Principle.  The Settlement Agreement was the result of a good faith, arm's-length negotiation between the COFINA Agent and the Oversight Board.  The Oversight Board did not exert any influence on the COFINA Agent's decision to enter into the Settlement Agreement, nor did the COFINA Agent permit the Oversight Board to affect her judgment or ability to carry out her duty to act in the best interest of the debtor she was appointed to represent.  The Settlement Agreement is faithful to and consistent with the Agreement in Principle.  On October 19, 2018, after extensive discussion and deliberations, the Oversight Board, as representative of the Commonwealth, approved entry into the Settlement Agreement with the COFINA Agent.

18.     On October 19, 2018, the Oversight Board, acting on behalf of the Commonwealth, filed the Motion.

19.     On November 5, 2018, the Commonwealth Agent entered into a stipulation with the Oversight Board and the COFINA Agent withdrawing any objections to the Settlement Agreement.  Pursuant to that stipulation, the Commonwealth Agent agreed, among other things, not to object to the approval of the Settlement Agreement, approval of the Disclosure Statement, or confirmation of the Plan, except in the circumstances set forth in paragraph 4 therein.  (Docket Entry No. 4202 in Case No. 17-3283.)

20.     Objections to the Motion and the relief requested therein were interposed by (i) Service Employees International Union and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (Docket Entry No. 4233 in Case No. 17-3283), and joined by certain plaintiffs in Adversary Proceeding No. 18-0041 (Docket Entry No. 4239 in Case No. 17-3283), and Federación Central de Trabajadores, U.F.C.W., Local 481 (Docket Entry No. 4248 in Case No. 17-3283) (collectively, the "UAW Objection"), (ii) Capítulo de Autoridad de Carreteras, Capítulo Instituto de Cultura Puertorriqueña, Capítulo Oficina del Procurador del Veterano, Capítulo de Oficina Desarrollo Socioeconomico y Comunitario, and Capítulo de Jubilados (Docket Entry No. 4251 in Case No. 17-3283), and joined by Federación de Maestros de Puerto Rico (Docket Entry No. 4258 in Case No. 17-3283) (collectively, the "PROSOL-UTIER Objection"), (iii) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (Docket Entry No. 4266 in Case No. 17-3283, the "Retiree Committee Objection"), and (iv) Lawrence B. Dvores (Docket Entry No. 4244 in Case No. 17-3283, the "Dvores Objection" and, together with the UAW Objection, the PROSOL-UTIER Objection, and the Retiree Committee Objection, the "Objections").

21.     The Debtor filed the *Commonwealth of Puerto Rico's Omnibus Reply to Objections to Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4434 in Case No. 17-3283).

22.     The Court also considered public comment on the record of the Hearing and reviewed arguments presented in letters and email correspondence by individuals who had not filed formal objections to the relief requested in the Motion.

23.     The Debtor filed the *Declaration of Natalie A. Jaresko in Support of Commonwealth of Puerto Rico's Motion Pursuant to Bankruptcy Rule 9019 for Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4758 in Case No. 17-3283), providing background and a summary regarding the Commonwealth-COFINA Dispute, steps the Oversight Board took to implement an independent process to resolve the dispute with a court-appointed mediation team, the complex and novel issues attendant to the Commonwealth-COFINA Dispute, and the considerations of the Oversight Board to arrive at the conclusion that the Settlement is fair and reasonable and in the best interest of the Commonwealth and its stakeholders.

24.     The COFINA Agent filed the *Statement of COFINA Agent in Support of Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* (Docket Entry No. 4656 in Case No. 17-3283) attaching the *Declaration of Matthew A. Feldman* (Docket Entry No. 4656-1 in Case No. 17-3283, the "Feldman Declaration"), summarizing the role of the COFINA Agent in negotiations with the Commonwealth Agent to resolve the Commonwealth-COFINA Dispute, the events leading to the Agents' announcement of the Agreement in Principle, negotiations with the Oversight Board following the announcement of the Agreement in Principle

and entry into the Agreement, and the considerations of the COFINA Agent in arriving at the conclusion that the Settlement is in the best interest of COFINA.

25.     At the Hearing, the Commonwealth Agent summarized the role of the Commonwealth Agent in litigating and negotiating a resolution of the Commonwealth-COFINA Dispute and the considerations that led to the Commonwealth Agent's conclusion that the Settlement is in the best interests of the Commonwealth.  In performing these duties and reaching this conclusion, the Commonwealth Agent acted as a fiduciary for the Commonwealth and solely considered the best interests of the Commonwealth.  (Jan. 16, 2019 Hr'g Tr. 60:19-62:11, Docket Entry No. 4848 in Case No. 17-3283.)

26.     The Retiree Committee Objection was ultimately withdrawn.  (Docket Entry No. 4704 in Case No. 17-3283).

27.     The COFINA Agent and its agents, attorneys, affiliates, advisors, and consultants, solely in such capacities (the "COFINA Agent Releasees"), have acted in good faith in connection with their evaluation of, and their conduct with respect to, the Adversary Proceeding, the Agreement in Principle, the Agreement, the Motion, and COFINA's Title III Case.

28.     The Commonwealth Agent and the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "Committee"), its members, and each of their respective current and former officers, directors, agents, attorneys, employees affiliates, advisors, and consultants, solely in such capacities (collectively, the "Commonwealth Agent Releasees"), have acted in good faith in connection with their evaluation of, and their conduct with respect to, the Adversary Proceeding, the Agreement in Principle, the Agreement, the Motion, and COFINA's Title III Case.

29.     The issues raised in the Commonwealth-COFINA Dispute are novel, complex, and of great importance to the people of Puerto Rico (as well as their fellow stakeholders) and present a mixed question of federal and Puerto Rico law.

30.     The Commonwealth Agent has asserted a number of challenges to the constitutionality of the transfer of the Pledged Sales Taxes to COFINA under the Commonwealth Constitution's debt limit, debt priority, and balanced budget provisions.  Conversely, the COFINA Agent has asserted its own claims, including that the Legislative Assembly properly exercised its broad taxing and police powers to enact legislation transferring the disputed sales tax revenues to COFINA, that the debt limit provisions of the Commonwealth Constitution do not prohibit the transfer of the Pledged Sales Tax to COFINA, that the balanced budget provision of the Commonwealth Constitution does not preclude the transfer of sales tax revenues to COFINA, nor is it applicable to the COFINA Bonds, and that the plain language of Act 91 transferred ownership of the Pledged Sales Taxes to COFINA.

31.     A motion to approve a compromise or settlement pursuant to Bankruptcy Rule 9019 requires a court to assess "whether the [proposed] settlement falls below the lowest point in the range of reasonableness."  Ars Brook, LLC v. Jalbert (In re Servisense.com, Inc.), 382 F.3d 68, 71–72 (1st Cir. 2004).  In the context of commercial bankruptcies, courts in the First Circuit consider four factors in assessing the reasonableness of a settlement: "(i) the probability of success in the litigation being compromised; (ii) the difficulties, if any, to be encountered in the matter of collection [of the disputed funds]; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay attending it; and, (iv) the paramount interest of the creditors and a proper deference to their reasonable views . . . ."  Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995). In evaluating the Settlement Agreement that is being presented for approval today, the Court is not

required to "decide the numerous questions of law and fact raised by [the objectors]."   In re
Servisense.com, Inc., 382 F.3d at 71.  Instead, the Court's role is more limited: it must "canvass
the issues and [determine] whether the settlement falls below the lowest point in the range of
reasonableness." Id. at 71-72.

32.     Given the complex and novel issues involved, the divergent positions of the parties,
and the protracted history of the dispute, the Commonwealth's likelihood of success in litigating
the Commonwealth-COFINA Dispute is uncertain, and even if the Commonwealth were initially
successful, the litigation would likely proceed to multiple appeals presenting their own risks and
challenges.   Accordingly, issues surrounding the probability of success weigh in favor of
approving the Settlement.

33.     The complexity of the Commonwealth-COFINA Dispute is also evidenced by the
myriad of parties involved and the multiple suits already filed.  The briefing in the Adversary
Proceeding is extensive, with no fewer than six summary judgment motions having been filed by
various parties that include, in addition to the Commonwealth Agent and the COFINA Agent, the
Official Committee of Retirees of the Commonwealth of Puerto Rico, the COFINA Senior
Bondholders' Coalition, the Ad Hoc Group of General Obligation Bondholders, the Mutual Fund
Group, and the Puerto Rico Funds.  All parties in interest asserted equally divergent views
regarding, among other things, whether (a) Act 91 did or did not transfer to COFINA a present
property interest in potential future tax revenues, (b) there was or was no "true sale" of future tax
revenues by the Commonwealth to COFINA, (c) Act 91 did or did not transfer to COFINA the
Commonwealth's "right to receive" future tax revenues, and (d) the COFINA structure, Act 91
and the purported sales tax revenue transfer are or are not constitutional.

34.     Continued litigation of the Commonwealth-COFINA Dispute will invite additional delay for both the Commonwealth and COFINA in progressing towards fiscal responsibility and access to the capital markets, significant expense, and further delay and inconvenience to the Commonwealth's and COFINA's stakeholders and ability of their creditors to receive any distribution on their claims.  Accordingly, the complexity of litigation and expense, inconvenience, and delay attending the litigation weigh in favor of approving the Settlement.

35.     The Settlement resolving the Commonwealth-COFINA Dispute provides certainty about the amounts available for the Commonwealth's debt service and other uses and resolves billions of dollars of claims that have been asserted against the Commonwealth by the COFINA Agent and COFINA creditors.  This certainty will allow the Commonwealth to move forward with its Title III Case towards formulating a plan of adjustment that must make appropriate provisions for the needs of the people of Puerto Rico, revival of its economy, and distributions to its creditors. The interests of the Commonwealth's creditors and citizens are not served by protracted litigation that could delay payments on claims and the ability of the Commonwealth to move forward with its revitalization.   Moreover, there would be significant negative consequences for the Commonwealth and its stakeholders if the Commonwealth did not prevail in litigating the Commonwealth-COFINA Dispute, as the Commonwealth would be deprived of access to any portion of the approximately $783 million Pledged Sales Tax Base Amount, which annual amount increases over time.

36.     The conclusion that the interests of the Commonwealth's creditors are served by the Settlement Agreement is buttressed by the decision of significant Commonwealth creditor groups to not object or to withdraw their objection to the Settlement Agreement.  The interests of the Commonwealth and all of its stakeholders are served by a final resolution of the question of

Commonwealth access to the Pledged Sales Tax Base Amount and elimination of the chance of complete inaccessibility of such funds pending full payment of existing COFINA bonds.

37.     Based upon the applicable factors relating to the Court's consideration and approval of a compromise and settlement, the Settlement falls above the lowest point in the range of reasonableness, and, therefore, is fair and reasonable and its approval is in the best interest of the Commonwealth and its stakeholders.

38.     The Court is satisfied that terms of the Commonwealth-COFINA settlement are reasonable as a legal and factual matter in light of the complex issues and risks presented by the continued litigation of the Commonwealth-COFINA dispute, and that the terms of the Agreement satisfy the requirements for approval under Bankruptcy Rule 9019.  That is not to say that the Settlement Agreement is perfect.  It is a compromise, and the Court has heard the concerns of numerous creditors and other stakeholders who believe that the Settlement Agreement unfairly favors one side or the other of the Commonwealth-COFINA dispute.  The passionate opposition from stakeholders exists because the Settlement Agreement resolves extraordinarily complicated litigation which, regardless of the result, would have had deeply significant consequences for COFINA, its creditors, the Commonwealth government, and the people of Puerto Rico.  Judicial rulings on the issues presented in the Commonwealth-COFINA lawsuit also inevitably would have resulted in many months, if not years, of appeals and further litigation, along with the attendant litigation costs and delays to the restructuring efforts of the Commonwealth and COFINA, delaying still further the opportunities for Puerto Rico to set its economy on a firmer footing going forward and regain access to the capital markets.  The compromise proposed in the Motion, which has been negotiated and proposed by the two entities that assert the claims to ownership of the sales tax revenues that are the subject of the Commonwealth-COFINA Dispute, will avoid those

costs and remove the substantial risk to the Commonwealth's economic prospects that COFINA and the COFINA bondholders ultimately would have prevailed in the Commonwealth-COFINA litigation.

39.    Additionally, the record demonstrates that the proposed resolution of the Commonwealth-COFINA dispute was the product of a genuine adversarial negotiation between agents who were properly authorized by the Oversight Board and the Court to negotiate as fiduciaries for the Commonwealth on one hand and COFINA on the other.  Those negotiations resulted in the initial Agreement in Principle, which contained the basis for the Settlement Agreement that is now before the Court.  Following the Agreement in Principle, negotiations were continued by the COFINA Agent on behalf of COFINA and the Oversight Board on behalf of the Commonwealth, ultimately resulting in the Settlement Agreement.  Accordingly, objections based on an alleged lack of <u>bona fide</u> adversarial negotiations are unfounded and are overruled.  The Court's review of the record shows that the Settlement Agreement is the product of a genuine negotiation process that was overseen by the Court-appointed mediation team of distinguished federal judges.

40.    The Court turns now to a deeper explanation of the factors prescribed by the Court of Appeals for the First Circuit in <u>Jeffrey v. Desmond</u>.  The first factor considers the probability of success for the Commonwealth in the underlying Commonwealth-COFINA litigation.  <u>See</u> <u>Jeffrey</u>, 70 F.3d at 185.  In the absence of a consensual resolution of the Commonwealth-COFINA dispute, a litigated outcome would likely have produced an "all-or-nothing" result.  If the litigation had proceeded, the result for the Commonwealth could have been significantly worse than the compromise presented in the Settlement Agreement that is now before the Court.  Specifically, the worst case outcome for the Commonwealth would have been that none of the Pledged Sales Tax

revenue would be available to the Commonwealth for use toward essential services or debt service until all of the existing COFINA debt was paid off in accordance with the current terms of that debt. Because this was a possibility, the suggestions of some objectors and commenters that the Commonwealth should simply refuse to pay anything to COFINA at all or hold out for a materially more favorable negotiated result for the Commonwealth are not realistic because the Commonwealth would not be guaranteed a win if the litigation were to continue. Both sides presented strong arguments in the litigation, and success was far from certain for the Commonwealth. This factor therefore indicates that it is reasonable for the Commonwealth to seek to settle the litigation and protect itself and its creditors against the worst possible outcome regarding rights to the disputed tax revenue.

41.     The second factor set forth in Jeffrey requires the Court to consider the difficulties, if any, to be encountered in the matter of collection. 70 F.3d at 185. This is not a significant issue here, as the disputed revenue is sales taxes that are expected to continue to be collected on a steady basis. The issue here is whether the settlement provides for a division of those revenues that is within the range of reasonable compromises.

42.     The third Jeffrey factor, which requires consideration of "the complexity of the litigation involved, and the expense, inconvenience[,] and delay attending it," 70 F.3d at 185, is quite significant here and favors a finding that the Settlement Agreement is reasonable. The Interim Fee Applications that have been filed with the Court reflect the expense involved in litigating the Commonwealth-COFINA dispute, and the complexity of the dispute is apparent from the arguments presented in court and in the voluminous submissions that were filed in connection with the multiple cross-motions for summary judgment in the Commonwealth-COFINA lawsuit, Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico v. Whyte, Adv.

Proc. No. 17-257.  Given the all-or-nothing nature of the most likely potential outcomes of the Commonwealth-COFINA dispute and the accompanying risk of an outcome adverse to the Commonwealth and, whatever the outcome, of appeals and petitions for Supreme Court review, it is both rational and reasonable for the Oversight Board to compromise as it has opted to do in the Settlement Agreement before the Court.  The compromise saves litigation expenses, eliminates delay, and, most important, provides the Commonwealth with access to a portion of the pledged sales tax revenues, which have not been available to the Commonwealth at all under the current COFINA structure.  The Court therefore concludes that the proposed Settlement Agreement is well within the range of reasonable alternatives that are beneficial to the Commonwealth.

43.     The Court also considers, as part of its analysis of the reasonableness of the Settlement Agreement, the paramount interest of the creditors and accords proper deference to their reasonable views.  Jeffrey, 70 F.3d at 185.  Here, the Court finds that the Settlement Agreement is in the best interests of the Commonwealth's creditors, including its employees, retirees, and recipients of public benefits and services, as it provides a certainty that the Commonwealth and its creditors will receive a substantial portion of the sales tax revenues that are the subject of the Commonwealth-COFINA Dispute, and wholly negates the risk of a judgment in that litigation that might have left the Commonwealth with none of the Pledged Sales Taxes for decades to come.  Creditors will also benefit from relief from the costly litigation that would otherwise continue and eat away at the financial resources available to service the Commonwealth's obligations.

44.     Although many objectors and commenters are deeply and sincerely concerned that the Commonwealth may not ultimately have enough resources to reorganize its own finances and provide for essential services and economic growth, these concerns are not pertinent to the one

question that is before the Court on this motion practice: the reasonableness of this settlement. The Court must decide whether the compromise with respect to this particular asset is reasonable in the context of the dispute about this asset. Its value and the relative strengths of the Commonwealth's and COFINA's legal claims to it are not measured by reference to the Commonwealth's other needs. The <u>Jeffrey</u> requirement that the Court give proper deference to the reasonable views of creditors does not require the Court to weigh concerns about the Commonwealth's overall financial prospects in the evaluation of the reasonableness of the settlement.

45.     The question of whether the Commonwealth can gather or generate sufficient additional resources to propose a feasible plan of adjustment is one to be addressed in the future and does not weigh in the evaluation of this Settlement. PROMESA and the Bankruptcy Rules do not impose a "feasibility" requirement for the approval of settlement agreements,[5] and section 201 of PROMESA, which has been cited by some objectors, concerns the content and certification of fiscal plans, not the approval of settlements.

### III.     DECRETAL PROVISIONS

NOW, THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

46.     The Motion is GRANTED on the terms set forth in this Order, and the Objections (including those orally presented) not otherwise withdrawn and all other objections to the Motion are overruled in their entirety.

---

[5]     The question of feasibility is before the Court from COFINA's perspective in connection with the proposed COFINA Plan of Adjustment and is not properly raised from the Commonwealth's perspective in the objections to this Motion.

47.     The compromise and settlement embodied in the Agreement attached hereto as Schedule 1 is APPROVED in all respects.

48.     The Commonwealth is authorized take any action that is necessary or appropriate to give effect to this Order.

49.     The COFINA Agent is authorized to enter into the Agreement on behalf of COFINA and take any action that is necessary or appropriate to give effect to this Order; and such actions taken by the COFINA Agent pursuant to such authority are hereby deemed a good faith exercise of her duties under the Procedures Order.

50.     On the Effective Date, the Agreement fully, finally, and forever resolves and releases, except to the extent necessary to enforce the Agreement or the COFINA Plan, all claims against and ownership interests in the COFINA Pledged Taxes, the Pre-FY2019 BNYM Deposits and the FY2019 BNYM Deposits, including, without limitation, all claims, causes of action, and counterclaims (i) that were or could have been asserted consistent with the Stipulation and (ii) concerning or relating to the COFINA Pledged Taxes or the Commonwealth-COFINA Dispute (as expanded by the Mediation Scope Order); provided, however, that, except as otherwise provided in the COFINA Plan, nothing herein or in the Agreement shall affect any rights, claims, or interests that creditors of the Commonwealth may have with respect to the COFINA Pledged Taxes that are (x) not allocated to COFINA consistent with the Agreement in Principle and (y) received by the Commonwealth.  Notwithstanding the foregoing proviso in this decretal paragraph of this Order, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the Commonwealth Agent Releasees (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the

Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure, the COFINA Pledged Taxes, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure, the COFINA Pledged Taxes, or the Pre-FY2019 BNYM Deposits.

51.     Notwithstanding the proviso in Paragraph 50 of this Order, the Commonwealth, all creditors of the Commonwealth, and all insurers of debt of the Commonwealth shall be barred from bringing or pursuing any and all claims against the COFINA Agent, COFINA (including its successor in interest), its current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members, any creditors or insurers of debt of COFINA, and the Commonwealth Agent Releasees (i) in the case of the creditors of the Commonwealth and the insurers of debt of the Commonwealth, arising out of their capacities as creditors of the Commonwealth or insurers of debt of the Commonwealth, as applicable, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits, and (ii) in the case of the Commonwealth, in any way related to the COFINA structure (as it relates to the COFINA Pledged Taxes up to the COFINA Portion), the COFINA Pledged Taxes up to the COFINA Portion, or the Pre-FY2019 BNYM Deposits.

52.     The releases in Paragraphs 50 and 51 of this Order shall not release any claims that a beneficial holder of an insured COFINA Bond or BNYM, as trustee for the Existing Securities, may have against the insurer of such Existing Securities (or any claims that such insurer may have against the beneficial holder of such Existing Securities) under or relating to the policy of insurance issued by such insurer except as the COFINA Plan may otherwise provide and there shall be no release of any claims by any party against the insurers or underwriters of the Existing Securities

or the general obligation bonds issued by the Commonwealth, including their current and former officers, directors, agents, attorneys, employees, affiliates, advisors, consultants, and members.

53.     Any claims by COFINA, against any underwriter of the COFINA Bonds (such claims, the "COFINA Underwriter Claims") shall not cause the Commonwealth or any of its instrumentalities to incur any liability with respect to the COFINA Underwriter Claims in the nature of contribution, reimbursement, or indemnification, however denominated or described, in connection with, arising out of, or in any way related to such claims (the "Covered Claims").  Any underwriter of the COFINA Bonds against which a COFINA Underwriter Claim has been asserted shall be permanently barred, enjoined, and restrained from commencing, prosecuting, or asserting any Covered Claim based upon, related to, or arising out of the COFINA Underwriter Claims against that underwriter, whether such Covered Claim is asserted in a court, an arbitration, an administrative agency or forum, or in any other manner; provided, however, that COFINA, any insurer of Existing Securities, and any holder of Existing Securities, as applicable, shall reduce and credit against any judgment they may obtain against any underwriter of the Existing Securities the amount of any Covered Claim which is determined and awarded by a court of competent jurisdiction in any action involving the prosecution of the COFINA Underwriter Claims against such underwriter.

54.     On the Effective Date, to the fullest extent permissible under applicable law, (i) the COFINA Releasees and (ii) the Commonwealth Agent Releasees, shall be released from liability for all Claims and Causes of Action (both as defined in the COFINA Plan [Case No. 17-3283, ECF No. 4392]) (as if such Causes of Action were against the COFINA Agent Releasees or the Commonwealth Agent Releasees, as applicable) with respect to the Adversary Proceeding, the COFINA Plan, and the mediation related to the foregoing.

55.     On the Effective Date, to the fullest extent permissible under applicable law, the Commonwealth shall be released from all liability from all Claims and Causes of Action held by any Creditor (as defined in the COFINA Plan), solely in such capacity, arising from or relating to the relationship of the Commonwealth and COFINA, including, without limitation, any Claim or Cause of Action arising from or relating to the commencement of the Adversary Proceeding and pendency thereof, the compromise and settlement of <u>Bank of New York Mellon v. COFINA</u>, Adv. Proc. No. 17-00133, and the allocation of funds in accordance with Section 2.1 of the COFINA Plan.

56.     Except as otherwise provided by the COFINA Plan, no costs (including professional fees) incurred by COFINA or its stakeholders (including owners of Existing Securities and insurers of Existing Securities) with respect to COFINA (including the litigation of the Commonwealth-COFINA Dispute, the COFINA Plan, or the structuring of the COFINA Bonds) shall be borne by the Commonwealth and shall not in any way affect the Commonwealth Portion; <u>provided</u>, <u>however</u>, that nothing in this Order or the Agreement shall affect the right of the COFINA Agent and her professionals to be compensated or reimbursed in accordance with the terms and provisions of that certain *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (Docket Entry No. 3269 in Case No. 17-3283) and other orders of the Court.

57.     To the extent necessary, pursuant to PROMESA section 305, the Oversight Board has granted consent to this Court to exercise jurisdiction over the property and revenues of the Commonwealth that are, pursuant to the Settlement of the Commonwealth-COFINA Dispute, necessary to the entry of this Order.  The transfer of the Commonwealth Portion pursuant to the COFINA Plan is appropriate and, subject to the occurrence of and upon the Effective Date of the

COFINA Plan, is binding and specifically enforceable against COFINA and the Commonwealth, their respective creditors and all parties in interest in accordance with the COFINA Plan, including, without limitation, because the transfer of the Commonwealth Portion created in the Commonwealth an ownership interest in such property.

58.     Except as expressly set forth in the A&R Plan Support Agreement, certain parties thereto reserve their right, if any, to contest in the Title III Case the Commonwealth's (a) use, or direction of the use, of monies received by the Commonwealth or to be received by the Commonwealth and (b) deposit or other use, or direction of the use, of such monies.

59.     On the Effective Date, the releases provided in Section 5(b) of the Agreement shall be deemed to be granted in favor of the Commonwealth Agent Releasees.

60.     The terms and conditions of this Order will be immediately effective and enforceable upon its entry.

61.     The Court retains exclusive jurisdiction over all matters pertaining to the implementation, interpretation, and enforcement of this Memorandum Opinion and Order.

SO ORDERED.


Dated:    February 4, 2019             /s/ Laura Taylor Swain
                                       ————————————————————————
                                       HONORABLE LAURA TAYLOR SWAIN
                                       UNITED STATES DISTRICT JUDGE