<u>Exhibit A</u>

New Bond Legislation

**(P. de la C. 1837)**

18<sup>va</sup> ASAMBLEA         1<sup>ra</sup> SESION
LEGISLATIVA         ORDINARIA
Ley Núm._____ 241
(Aprobada en 6 de Nov de 2018 )

# LEY

Para renumerar el Artículo 1 como Artículo 1.1 y enmendar el mismo; añadir un nuevo
Artículo 1.2; renumerar el Artículo 2 como Artículo 2.1 y enmendar el mismo;
añadir nuevos Artículos 2.2, 2.3, 2.4, 2.5, 2.6, 2.7, 2.8 y 2.9; derogar el Artículo 3 y
sustituirlo por un nuevo Artículo 3.1; añadir nuevos Artículos 3.2 y 3.3; derogar el
Artículo 4 y sustituirlo por un nuevo Artículo 4.1, añadir un nuevo Artículo 4.2,
derogar el Artículo 5 y sustituirlo por un nuevo Artículo 5.1, añadir un nuevo
Artículo 5.2, derogar los Artículos 6, 7, 8, 9, 10 y 11 y dividir en capítulos la Ley 91-
2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante",
a los fines de permitir la reestructuración de la deuda de la Corporación del Fondo
del Interés Apremiante (COFINA) bajo el Título III de la "Ley para la Supervisión,
Administración y Estabilidad Económica de Puerto Rico", mejor conocida como
PROMESA; autorizar a COFINA a emitir bonos como parte de dicha
reestructuración y establecer los términos de los mismos; establecer los poderes y
facultades de COFINA y la composición y los poderes de su Junta de Directores;
establecer la titularidad de COFINA sobre una porción de los recaudos sobre el
impuesto sobre ventas y uso y disponer para la transferencia y uso de dichos
recaudos; crear un gravamen estatutario en beneficio de los tenedores de bonos de
COFINA; establecer ciertos acuerdos a nombre del Gobierno de Puerto Rico para
beneficio de los tenedores de bonos de COFINA; disponer que el texto en inglés
prevalecerá sobre el texto en español; derogar los Artículos 2 y 4 de la Ley 116-
2013, según enmendada; enmendar el Artículo 25-A de la Ley 44 de 21 de junio de
1988, según enmendada; a los fines de permitir la venta de ciertos bonos de
COFINA que tiene la Autoridad para el Financiamiento de la Infraestructura con
la aprobación de la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto
Rico; establecer que esta Ley será efectiva en la fecha de la consumación del plan
de ajuste de deuda de COFINA bajo el Título III de PROMESA; y para otros fines
relacionados.

## EXPOSICIÓN DE MOTIVOS

Puerto Rico enfrenta una crisis fiscal y económica sin precedentes. Este proyecto,
al igual que el acuerdo de reestructuración del Banco Gubernamental de Fomento,
encamina a Puerto Rico en la ruta de la credibilidad. Con este acuerdo, hacemos ajustes
significativos en el repago de la deuda gubernamental que otras administraciones
tomaron prestado pero que nos toca a nosotros resolver. De esta forma, aseguramos que
el Gobierno continúe operando y sirviendo a nuestro pueblo.

Las posiciones asumidas y acciones tomadas por la administración pasada causaron que Puerto Rico perdiera acceso a los mercados de capital y precipitaron el colapso de su sistema de financiamiento público. Estas acciones aceleraron la contracción de la economía de Puerto Rico y precipitaron la migración de puertorriqueños a los Estados Unidos continentales.

La administración pasada desarrolló una relación hostil con los participantes de los mercados financieros, incluyendo cientos de miles de puertorriqueños que invirtieron sus ahorros confiando en el buen nombre y crédito del Gobierno de Puerto Rico y sus corporaciones públicas. Este ambiente hostil hacia Puerto Rico también resonó en el Congreso de los Estados Unidos debido a la falta de transparencia y honestidad, generando consistentemente coberturas noticiosas negativas sobre Puerto Rico a nivel local, nacional e internacional.

Las decisiones equivocadas de la pasada administración llevaron al "Estado Libre Asociado de Puerto Rico" a la quiebra, lo que requirió el uso de sus recursos para atender y proveer servicios esenciales al pueblo de Puerto Rico. Esto, a su vez, actuó como catalítico para una controversia en la cual se cuestionó la estructura bajo la cual la Corporación del Fondo del Interés Apremiante (COFINA) emitió sus bonos. En particular, algunos acreedores radicaron reclamaciones argumentando, entre otras cosas, que (i) las emisiones de bonos de COFINA violaron la Constitución de Puerto Rico, y (ii) la porción de la contribución sobre ventas y uso impuesta por el Gobierno de Puerto Rico a la tasa de 5.5% (el IVU) y transferida a COFINA constituye "recursos disponibles" del Gobierno de Puerto Rico bajo el Artículo VI, Sección 8 de la Constitución de Puerto Rico y debe utilizarse para el pago de la "deuda pública". Algunos acreedores también presentaron argumentos sobre el alcance de la Constitución de Puerto Rico que giran en base a si utiliza el término "recursos disponibles", según la versión en español, o *available revenues, including surplus* según la versión en inglés. El 5 de mayo de 2017, la Junta de Supervisión y Administración Financiera (la Junta de Supervisión) creada bajo la "Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico" (PROMESA, por sus siglas en inglés), como representante de COFINA, comenzó un proceso de reestructuración para COFINA bajo el Título III de PROMESA.

Las partes interesadas del Gobierno de Puerto Rico y COFINA comenzaron un proceso ordenado para resolver las disputas relacionadas a COFINA y la titularidad sobre el IVU (colectivamente, la Disputa ELA-COFINA). A esos fines, el 10 de agosto de 2018, el tribunal del Título III aprobó una estipulación y orden designando al Comité Oficial de Acreedores no Asegurados del Gobierno para actuar como agente la de Junta de Supervisión en su capacidad como representante del Gobierno de Puerto Rico (el Agente del Gobierno) y a Bettina M. Whyte para actuar como agente de la Junta de Supervisión en su capacidad como representante de COFINA (el Agente de COFINA) en un esfuerzo para facilitar la transacción de la Disputa ELA-COFINA.

El 5 de junio de 2018, el Agente del Gobierno y el Agente de COFINA anunciaron que habían llegado a un acuerdo en principio para resolver la Disputa ELA-COFINA (el Acuerdo en Principio). El Acuerdo en Principio estaba fundamentado en dividir la cantidad fija del IVU transferida a COFINA cada año fiscal (la Renta Fija) entre el Gobierno y COFINA comenzando en el año fiscal 2019, donde COFINA recibiría el 53.65% de la cantidad anual de la Renta Fija y el Gobierno recibiría el 46.35% de la cantidad anual de la Renta Fija, además de todos los demás ingresos recaudados por concepto del IVU.

Consistente con la política pública implementada por el Gobernador de Puerto Rico, la Autoridad de Asesoría Financiera y Agencia Fiscal, la Junta de Supervisión y ciertos acreedores y aseguradores de los bonos de COFINA, llegaron a un acuerdo en apoyo a un plan de reestructuración para COFINA (según enmendado y reformulado el 21 de septiembre de 2018, el Acuerdo de Reestructuración), el cual incorpora la división de la Renta Fija conforme al Acuerdo en Principio y provee para la transacción de la Disputa ELA-COFINA conforme a un plan de ajuste de deuda para COFINA bajo el Título III de PROMESA (el Plan de COFINA).

Ahora le corresponde a la Asamblea Legislativa implementar el acuerdo entre las partes enmendando las disposiciones de la ley que creó a COFINA y que autorizó la emisión de sus bonos, la Ley 91-2006. Estas enmiendas liberarán el gravamen que tienen actualmente los tenedores de COFINA sobre $17.5 billones de ingresos del IVU. Estos ingresos ahora estarán disponibles para ser utilizados por el Gobierno de Puerto Rico para atender y brindar servicios a los puertorriqueños. Al implementar el Acuerdo de Reestructuración, esta legislación también pone fin al costoso litigio entre los agentes nombrados por la Junta de Supervisión y a las reclamaciones de los acreedores de COFINA mientras que, a la misma vez, clarifica la intención legislativa original de la Ley 91-2006, según enmendada. Además, como resultado de esta legislación, se ahorrará aproximadamente $437.5 millones por año al Gobierno de Puerto Rico para beneficio del pueblo de Puerto Rico.

Igualmente, esta legislación demuestra que la Asamblea Legislativa está comprometida con tomar los pasos necesarios para permitir el regreso de Puerto Rico a los mercados de capital. Como paso necesario para la implantación del Acuerdo de Reestructuración, esta legislación autorizará la restructuración de la deuda de COFINA bajo el Título III de PROMESA, actuará como catalítico para otras restructuraciones, sentará las bases para que Puerto Rico resurja de la bancarrota, reducirá los costos relacionados a los litigios y aligerará la terminación de la Junta de Supervisión bajo PROMESA.

Esta Ley demuestra el compromiso de política pública continuo de la Asamblea Legislativa para corregir la crisis fiscal de Puerto Rico, honrar las obligaciones financieras

de Puerto Rico, recuperar acceso a los mercados de capital, eliminar la incertidumbre económica y alcanzar un nivel de deuda sostenible para Puerto Rico.

*DECRÉTASE POR LA ASAMBLEA LEGISLATIVA DE PUERTO RICO:*

Sección 1.-Se añade un Capítulo I a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

"CAPÍTULO I – TITULO Y DEFINICIONES"

Sección 2.-Se renumera el Artículo 1 de la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", como Artículo 1.1, y se enmienda el mismo para que lea como sigue:

"Artículo 1.1.-Título.

Esta Ley se conocerá como la "Ley de la Corporación del Fondo de Interés Apremiante".

Sección 3.-Se añade un Artículo 1.2 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

"Artículo 1.2.-Definiciones.

Los siguientes términos tendrán los significados que se expresan a continuación:

(a)     "AAFAF"– significa la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico.

(b)     "Ley"– significa la Ley 91-2006, según enmendada, también conocida como "Ley de la Corporación del Fondo del Interés Apremiante".

(c)     "Acuerdos Complementarios"– significa el Plan de Ajuste de la Corporación, el Contrato de Bonos, el Acuerdo de Transacción y cualquier otro acuerdo o instrumento otorgado por la Corporación o el Fiduciario del Contrato de Bonos relacionado a, o en apoyo de, la Transacción de Reestructuración y relacionado a, o en apoyo de, el Plan de Ajuste de la Corporación.

(d)     "Actividades Autorizadas"– significa las actividades que la Corporación está autorizada a llevar a cabo conforme al Artículo 2.4 de esta Ley.

(e)   "Junta de Directores"– significa la Junta de Directores de la Corporación.

(f)   "Contrato de Bonos"– significa uno o más contratos de fideicomiso, contratos de bonos y cualquier suplemento o enmienda a éstos, o cualquier contrato o acuerdo similar otorgado por la Corporación y el Fiduciario del Contrato de Bonos mediante el cual se emitan los Bonos del Plan de Ajuste y que establezca los derechos y responsabilidades de la Corporación y los tenedores de Bonos del Plan de Ajuste emitidos bajo el mismo.

(g)   "Presidente" – significa el presidente de la Junta de Directores.

(h)   "Ingresos de la Corporación" – significa los Primeros Ingresos hasta una cantidad igual al cincuenta y tres punto sesenta y cinco por ciento (53.65%) de la Renta Fija para cada Año Fiscal y todo derecho legal y en equidad, título e interés con respecto a los mismos, incluyendo el derecho a recibir los Primeros Ingresos según se dispone en el Artículo 4.1 de esta Ley.

(i)   "Fondo de Ingresos de la Corporación " – significa el fondo o los fondos segregados propiedad de la Corporación en la(s) cual(es) se depositan los Ingresos de la Corporación, cuya cuenta (1) deberá estar a nombre del Fiduciario del Contrato de Bonos para beneficio de los tenedores de Bonos del Plan de Ajuste, (2) no puede ser propiedad de, ni estar controlada por, el Gobierno de Puerto Rico o una Entidad Gubernamental (excepto la Corporación) de ninguna manera, y (3) se mantendrá en uno o más bancos en los Estados Unidos continentales.

(j)   "Corporación" – significa la Corporación del Fondo del Interés Apremiante creada por esta Ley.

(k)   "Plan de Ajuste de la Corporación"– significa el plan de ajuste consumado con relación al caso de la Corporación bajo el Título III de PROMESA, incluyendo la orden del Tribunal de Distrito confirmando dicho plan de ajuste.

(l)   "Tribunal de Distrito"– significa el Tribunal de Distrito de los Estados Unidos para el Distrito de Puerto Rico.

(m)   "Fecha de Efectividad" – significa la fecha en la cual el Plan de Ajuste de la Corporación advenga efectivo de acuerdo a sus términos.

(n)   "Costos de Financiamiento"– significa todos los costos asociados con la Transacción de Reestructuración, incluyendo los costos, honorarios y gastos de: (1) emitir, dar servicio a, repagar o refinanciar los Bonos del Plan

de Ajuste, independientemente de si dichos costos se incurren en la emisión de dichos Bonos del Plan de Ajuste o a través del término de los mismos, (2) hacer pagos conforme a los Acuerdos Complementarios, (3) pagar cualquier sello, impuesto de emisión, impuesto similar u otros cargos relacionados a la Transacción de Reestructuración; disponiéndose, además, que esta cláusula no limita de manera alguna la exención contributiva provista en el Artículo 2.8 de esta Ley, (4) prepararse para y completar la Transacción de Reestructuración y (5) llevar a cabo todas las actividades relacionadas a la Transacción de Reestructuración.  Es menester señalar, que, los Costos de Financiamiento también incluyen honorarios y gastos administrativos incurridos antes o después del cierre relacionado a los Acuerdos Complementarios, pero no incluyen pagos de principal e intereses bajo los Bonos del Plan de Ajuste.

(o)     "Primeros Ingresos" – significa los primeros ingresos que corresponden a Contribuciones Pignoradas en cualquier Año Fiscal, según se describe en el Artículo 4.1 de esta Ley.

(p)     "Año Fiscal" – significa el año fiscal del Gobierno de Puerto Rico, el cual comienza el 1 de julio y termina el 30 de junio.

(q)     "Renta Fija" – significa, para el Año Fiscal 2018-2019, setecientos ochenta y tres millones ciento noventa y siete mil doscientos cincuenta y un (783,197,251.00) dólares y, para cada Año Fiscal subsiguiente, la Renta Fija del Año Fiscal anterior más cuatro (4)  por ciento de dicha Renta Fija, hasta la Cantidad Máxima. La Renta Fija para cada año fiscal se pagará de los primeros ingresos recaudados de las Contribuciones Pignoradas.

(r)     "Entidad Gubernamental"– significa cualquier agencia, departamento, oficina, corporación pública, fideicomiso, fondo, sistema, instrumentalidad, subdivisión política, autoridad fiscal o municipio del Gobierno de Puerto Rico.

(s)     "Gobierno de Puerto Rico"– significa el Estado Libre Asociado de Puerto Rico y su gobierno.

(t)     "Fiduciario del Contrato de Bonos"– significa la Persona designada como fiduciario o fiduciario del contrato de bonos bajo el Contrato de Bonos, incluyendo cualquier sucesor de éstos bajo el Contrato de Bonos.

(u)     "Cantidad Máxima"– significa mil ochocientos cincuenta millones (1,850,000,000.00) de dólares.

(v)     "Junta de Supervisión"– significa la Junta de Supervisión y Administración Financiera para Puerto Rico establecida conforme a la Sección 101 de PROMESA.

(w)     "Persona"– significa cualquier persona natural o entidad legal, incluyendo, pero sin limitarse a, el Gobierno de Puerto Rico, cualquier Entidad Gubernamental, o cualquier individuo, firma, sociedad, proyecto conjunto, fideicomiso, sucesión, compañía de responsabilidad limitada, corporación de individuos, asociación, corporación pública o privada, organizada o existente bajo las leyes de Puerto Rico, los Estados Unidos de América, o cualquier otra jurisdicción o de cualquier otro estado, municipalidad, subdivisión política, autoridad fiscal, agencia o instrumentalidad de Puerto Rico, de los Estados Unidos de América o cualquier otra jurisdicción, o cualquier combinación de éstas.

(x)     "Bonos del Plan de Ajuste" – significa cualquier Bono de Reestructuración y cualquier Bono de Refinanciamiento.

(y)     "Contribuciones Pignoradas" – significa, sujeto a las disposiciones del Artículo 3.3 de esta Ley, (1) los ingresos y recaudos presentes y futuros generados por la porción del IVU que corresponda a una tasa contributiva de cinco punto cinco (5.5) por ciento y (2) la Colateral Substituta, si alguna.

(z)     "PROMESA"– significa la "Ley para la Supervisión, Administración y Estabilidad Económica de Puerto Rico", *Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C. 2101 et. seq.*

(aa)    "Bonos de Refinanciamiento"– significa los bonos emitidos por la Corporación conforme a la Ley y los Acuerdos Complementarios, con igualdad de prioridad que los Bonos de Reestructuración (pari passu), para retirar o refinanciar cualquier Bono del Plan de Ajuste.

(bb)    "Bonos de Reestructuración"– significa los bonos emitidos por la Corporación conforme a esta Ley, el Plan de Ajuste de la Corporación y los Acuerdos Complementarios, bajo términos consistentes con, y que estén autorizados, validados y distribuidos conforme a, el Plan de Ajuste de la Corporación.

(cc)    "Resolución de Reestructuración"– significa una o más resoluciones de la Junta de Directores autorizando: (1) la emisión de los Bonos del Plan de Ajuste y describiendo sus términos y (2) el pago de los Costos de Financiamiento, en cada caso de acuerdo a los términos del Plan de Ajuste de la Corporación.

(dd) "Transacción de Reestructuración"– significa las transacciones contempladas por, o en apoyo de, el Plan de Ajuste de la Corporación.

(ee) "IVU"– significa el impuesto de ventas y uso impuesto por el Gobierno de Puerto Rico bajo las Secciones 4020.01 y 4020.02 del Súbcapítulo D de la Ley 1-2011, según enmendada, conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico".

(ff) "Acuerdo de Transacción"– significa el Acuerdo de Transacción del 15 de octubre de 2018 entre la Junta de Supervisión, a nombre del Gobierno de Puerto Rico, y el agente de la Corporación designado por la Junta de Supervisión para transar o litigar la disputa entre el Gobierno de Puerto Rico y la Corporación con respecto a la titularidad sobre el IVU.

(gg) "Colateral Sustituta"– significa todo o una porción de una contribución de aplicación general a través de Puerto Rico que se legisle en sustitución total de las Contribuciones Pignoradas o que de otra manera constituya colateral similar o comparable para los Bonos del Plan de Ajuste.

(hh) "Requisitos de Sustitución" – significa (1) la aprobación de legislación disponiendo para Colateral Sustituta, que a su vez disponga (A) que la Colateral Sustituta en una cantidad igual a los Ingresos de la Corporación se ha transferido irrevocablemente y es propiedad única y exclusivamente de la Corporación en la misma medida en que se provee bajo el Artículo 2.2 de esta Ley, (B) que, luego de dicha transferencia, la Colateral Sustituta en una cantidad igual a los Ingresos de la Corporación no es, y no constituirá, "recursos disponibles" o "ingresos disponibles" del Gobierno de Puerto Rico según dicho término se utiliza en la Sección 8 del Artículo VI de la Constitución de Puerto Rico o de cualquier otra manera en la Constitución de Puerto Rico (independientemente de si se interpreta la versión en español o inglés de la Constitución de Puerto Rico), (C) para la creación de un gravamen sobre la Colateral Substituta a favor del Fiduciario del Contrato de Bonos para beneficio de los tenedores de Bonos del Plan de Ajuste en la misma medida que se establece en el Artículo 3.2 de esta Ley y (D) que el Gobierno de Puerto Rico y las Entidades Gubernamentales continuarán proveyendo las garantías establecidas en el Artículo 3.3 de esta Ley con respecto a dicha Colateral Sustituta, y (2) que, previo a la sustitución de la Colateral Sustituta, se hayan satisfecho los requisitos de calificación establecidos en los Acuerdos Complementarios con respecto a la Colateral Sustituta."

Sección 4.-Se añade un Capítulo II a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

"CAPÍTULO II – LA CORPORACION DEL FONDO DE INTERÉS APREMIANTE"

Sección 5.-Se renumera el Artículo 2 de la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", como Artículo 2.1, y se enmienda el mismo para que lea como sigue:

"Artículo 2.1.-Creación y Existencia Legal Separada de la Corporación.

Se crea una corporación pública e instrumentalidad del Gobierno de Puerto Rico que constituye un cuerpo corporativo y político independiente y separado del Gobierno de Puerto Rico que se conocerá como la Corporación del Fondo de Interés Apremiante de Puerto Rico, cuyo nombre en inglés será *Puerto Rico Sales Tax Financing Corporation*. La Corporación que existe por virtud de esta Ley es y se reconocerá para todos los propósitos como una entidad legal independiente y separada del Gobierno de Puerto Rico y cualquier otra Entidad Gubernamental. Será operada independientemente y sus negocios y asuntos serán dirigidos por, o bajo la dirección de su Junta de Directores."

Sección 6.-Se añade un Artículo 2.2 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

"Artículo 2.2.-Titularidad sobre los Ingresos de la Corporación.

(a) Cualquier y toda titularidad y derechos sobre los Ingresos de la Corporación, fueron o han sido transferidos o por la presente se transfieren a la Corporación.

(b) La transferencia descrita en el inciso (a) arriba es una transferencia absoluta de todo derecho legal y en equidad, título e interés, y no una pignoración u otro financiamiento.

(c) La Corporación es y será la única y exclusiva dueña de los Ingresos de la Corporación hasta que los Bonos del Plan de Ajuste, incluyendo los intereses que devenguen éstos, y todas las cantidades y obligaciones bajo los Acuerdos Complementarios se paguen en su totalidad en efectivo o hayan sido de otra manera satisfechas conforme a sus términos.

(d) Las Personas designadas como agentes retenedores para propósitos de la imposición y recaudación del IVU conforme a la Ley 1-2011, según enmendada, también conocida como el "Código de Rentas Internas para un Nuevo Puerto Rico", se entenderá que recaudan a nombre de la Corporación cualquier porción del IVU en la cual la Corporación tiene un

interés propietario. Dichos agentes retenedores continuarán estando sujetos a toda y cualquier obligación y responsabilidad impuesta por el Código de Rentas Internas para un Nuevo Puerto Rico, a agentes retenedores con relación a la imposición y recaudación del IVU.

(e)     Los Ingresos de la Corporación no constituyen "recursos disponibles" o "ingresos disponibles" del Gobierno de Puerto Rico según dicho término se utiliza en la Sección 8 del Artículo VI de la Constitución de Puerto Rico o de cualquier otra manera en la Constitución de Puerto Rico (independientemente de si se interpreta la versión en español o inglés de la Constitución de Puerto Rico)."

Sección 7.-Se añade un Artículo 2.3 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

"Artículo 2.3.-Propósito de la Corporación.

En y después de la Fecha de Efectividad, el propósito de la Corporación será (a) emitir los Bonos del Plan de Ajuste, (b) ser dueña de y administrar los Ingresos de la Corporación, y (c) emitir otros bonos, notas o evidencia de deuda de la Corporación según autorizado por el Plan de Ajuste de la Corporación y los Acuerdos Complementarios, los cuales serán pagaderos de aquellos ingresos que disponga la Asamblea Legislativa."

Sección 8.-Se añade un Artículo 2.4 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

"Artículo 2.4.-Actividades de la Corporación.

Las actividades de la Corporación se limitarán a las siguientes:

(a)     recibir y ser dueña de los Ingresos de la Corporación y aquellos otros ingresos o propiedades que se le provean o transfieran a la Corporación;

(b)     aprobar la Resolución de Reestructuración;

(c)     emitir, de tiempo en tiempo, los Bonos del Plan de Ajuste y cualquier bono, nota o evidencia de deuda cuya emisión esté permitida por el Artículo 2.3 de esta Ley;

(d)     otorgar y cumplir con los Acuerdos Complementarios;

(e)     para garantizar el pago de cualquier bono, nota o evidencia de deuda cuya emisión esté autorizada por el Artículo 2.3 de esta Ley, pignorar, de manera subordinada en todos los aspectos al gravamen establecido en el Artículo 3.2 de esta Ley, (1) cualquier cantidad remanente de los Ingresos de la Corporación después del pago de los Bonos del Plan de Ajuste o (2) cualquier otro fondo o propiedad que se asigne a la Corporación después de la Fecha de Efectividad.

(f)     tomar cualquier y toda otra acción que sea necesaria o apropiada para consumar la Transacción de Reestructuración y el Plan de Ajuste de la Corporación, incluyendo hacer enmiendas a, intercambiar y/o cancelar, los bonos emitidos por la Corporación previo a la Fecha de Efectividad y enmendar y reformular los acuerdos de la Corporación con respecto a los mismos."

Sección 9.-Se añade un Artículo 2.5 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

"Artículo 2.5.-Poderes Adicionales.

Para llevar a cabo las Actividades Autorizadas, la Corporación tendrá, sin limitación de lo anterior, los siguientes poderes:

(a)     demandar y ser demandada en cualquier tribunal de Puerto Rico o en el Tribunal de Distrito Federal;

(b)     adoptar, cambiar y usar un sello;

(c)     formular, adoptar, enmendar y derogar estatutos para la administración de sus asuntos y aquellas normas, reglas y reglamentos que sean necesarios o pertinentes para ejercer y desempeñar las Actividades Autorizadas;

(d)     abrir y mantener cuentas de banco, incluyendo el Fondo de Ingresos de la Corporación;

(e)     adquirir, arrendar, tener dominio sobre y vender propiedad;

(f)     tener completo dominio sobre todas sus propiedades (incluyendo los Ingresos de la Corporación), sujeto al gravamen estatutario establecido bajo el Artículo 3.2 de esta Ley;

(g)     negociar, otorgar y enmendar contratos y cualquier otro instrumento necesario o conveniente para desempeñar las Actividades Autorizadas;

(h)    nombrar o destituir oficiales, agentes y empleados, establecer sus compensaciones, poderes y facultades, en cada caso, de conformidad con los Acuerdos Complementarios;

(i)    pagar sus gastos operacionales y los Costos de Financiamiento;

(j)    procurar seguros contra pérdidas con relación a sus actividades, propiedades o activos, incluyendo seguros que cubran a sus directores y oficiales;

(k)    invertir fondos y establecer y mantener reservas según requerido por, y bajo los estándares establecidos en, los Acuerdos Complementarios;

(l)    indemnizar a los miembros de la Junta de Directores, sus oficiales, agentes, empleados, contratistas y terceros por conducta que no constituya negligencia crasa, dolo o fraude;

(m)    ejercer todos aquellos otros poderes no incompatibles con los aquí expresados que sean necesarios para llevar a cabo las Actividades Autorizadas;

(n)    llevar a cabo todos los actos o medidas necesarias o convenientes para cumplir su propósito y llevar a cabo los poderes que se le confieren expresamente en esta Sección;

(o)    delegar a sus oficiales, agentes, empleados o contratistas autoridad para tomar acciones para cumplir con esta Ley; y

(p)    firmar, radicar y enmendar cualquier planilla, formulario, elecciones o declaraciones con cualquier autoridad gubernamental."

Sección 10.-Se añade un Artículo 2.6 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

"Artículo 2.6.-Actividades Prohibidas.

Mientras los Bonos del Plan de Ajuste estén en circulación, la Corporación no estará autorizada a:

(a)    fusionarse o consolidarse, directa o indirectamente, con ninguna Persona;

(b)    incurrir, garantizar o de alguna otra manera obligarse a pagar deuda alguna u otras obligaciones que no sean los Bonos del Plan de Ajuste, gastos

operacionales, los Costos de Financiamiento y cualquier bono, nota, o evidencia de deuda permitida bajo el Artículo 2.3 de esta Ley;

(c)     gravar, crear o registrar gravámenes sobre cualquier propiedad (incluyendo los Ingresos de la Corporación), excepto (1) por el gravamen para garantizar el pago de los Bonos del Plan de Ajuste creado por el Artículo 3.2 de esta Ley o (2) cualquier pignoración o gravamen para garantizar un bono, nota o evidencia de deuda permitida bajo el Artículo 2.3 de esta Ley, pero sólo en la medida en que dicha prenda o gravamen esté subordinado en todos los aspectos al gravamen establecido en el Artículo 3.2 de esta Ley;

(d)     llevar a cabo actividades de negocio que no sean las autorizadas expresamente en esta Ley;

(e)     disolver, liquidar, vender o, excepto según permitido por el Artículo 2.4(e), de otra manera transferir toda o una parte de su propiedad (incluyendo los Ingresos de la Corporación);

(f)     los directores de la Corporación no votarán para autorizar a la Corporación a comenzar un caso bajo el Título III de PROMESA o procesos judiciales de reestructuración similares bajo las leyes aplicables sujeto a las disposiciones de tales leyes; y

(g)     tomar cualquier otra acción que sea inconsistente con el propósito de la Corporación, según establecido por esta Ley o complementaria a ésta."

Sección 11.-Se añade un Artículo 2.7 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea en su totalidad como sigue:

"Artículo 2.7.-Junta de Directores

Los poderes de la Corporación se ejercerán a través de la Junta de Directores.

(a)     Composición de la Junta de Directores.

        La Junta de Directores estará compuesta por tres (3) miembros, que cumplirán los requisitos establecidos en el Artículo 2.7(b)(iii) de esta Ley y quienes serán nombrados por el Gobernador de Puerto Rico; disponiéndose que, conforme a las disposiciones de los Acuerdos Complementarios, ciertos tenedores de Bonos del Plan de Ajuste podrán someter, para la consideración del Gobernador, hasta tres (3) recomendaciones para el

nombramiento inicial de los directores de la Corporación, pero el Gobernador no estará obligado a seleccionar a dichas personas.

(b)    Disposiciones Generales con respecto a la Junta de Directores.

(i)    Cada director será nombrado por un término de tres (3) años y podrá servir términos consecutivos; disponiéndose, que el Gobernador podrá remover a cualquier director previo a la expiración de su término si dicho director incumple con las responsabilidades establecidas en esta Ley o por negligencia crasa, dolo o fraude;

(ii)    cada miembro de la Junta de Directores tendrá derecho a un (1) voto;

(iii)    cada miembro de la Junta de Directores deberá satisfacer los requisitos de independencia y cualificación esbozados en los Acuerdos Complementarios (incluyendo que ningún miembro de la Junta de Directores puede ser un oficial, empleado o director de cualquier Entidad Gubernamental que no sea la Corporación);

(iv)    todas las decisiones y acciones de la Junta de Directores requerirán el voto afirmativo de una mayoría de los miembros de la Junta de Directores que estén en funciones, disponiéndose que los estatutos corporativos de la Corporación podrán requerir la aprobación de una cantidad mayor de directores para ciertos propósitos; y

(v)    los miembros de la Junta de Directores seleccionarán entre sus miembros un Presidente.

(c)    Vacantes.

En la medida que surja una vacante en el puesto de un miembro de la Junta de Directores por muerte, remoción, renuncia o de cualquier otra manera, el Gobernador nombrará un director sucesor que cumpla con los requisitos establecidos en el Artículo 2.7(b)(iii) de esta Ley conforme al Artículo 2.7(b)(i) de esta Ley.

(d)    Compensación.

Los miembros de la Junta de Directores recibirán compensación conforme a lo permitido por los Acuerdos Complementarios.

(e)    Aprobación y Enmienda de Reglas.

Tan pronto como sea factible luego del nombramiento de todos los directores y el nombramiento del Presidente, la Corporación adoptará reglas y procedimientos para gobernar sus actividades bajo esta Ley. La Junta de Directores podrá enmendar dichas reglas y procedimientos de tiempo en tiempo.

(f)     Quórum.

Una mayoría de los miembros de la Junta de Directores en funciones constituirán el quórum para tomar decisiones o ejercer cualquier poder o función de la Corporación. Uno o más miembros podrán participar de una reunión de la Junta de Directores mediante teleconferencia o equipo de comunicaciones similar. La participación por dichos medios constituirá participación presencial en la reunión. Cualquier acción necesaria o permitida en cualquier reunión de la Junta de Directores será autorizada sin necesidad de una reunión siempre y cuando todos los miembros de la Junta de Directores den su consentimiento por escrito a dicha acción.

(g)     Delegación.

La Junta de Directores podrá delegar a uno o más de los miembros o a los oficiales, agentes y empleados de la Corporación aquellos poderes y responsabilidades que la Junta de Directores determine sean apropiados."

Sección 12.-Se añade un Artículo 2.8 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

"Artículo 2.8.-Exención Contributiva.

(a)     Por la presente se determina y declara que las actividades de la Corporación tienen un propósito público. Por lo tanto, la Corporación estará totalmente exenta de, y no tendrá que pagar contribución, impuesto, licencia, sello, honorario u otro cargo similar alguno impuesto por el Gobierno de Puerto Rico o cualquier Entidad Gubernamental sobre cualquiera de las propiedades de las cuales es dueña, posee, custodia o usa o sobre sus actividades o sobre cualquier ingreso, pago o ganancia derivada de lo antes mencionado.

(b)     Los Bonos del Plan de Ajuste, incluyendo, pero sin limitarse a, cualquier pago o ingreso con relación a los Bonos del Plan de Ajuste y la transferencia de los Bonos del Plan de Ajuste, estará, en todo momento, exento de contribución, impuesto, licencia, sello, honorario u otro cargo impuesto por el Gobierno de Puerto Rico o cualquier Entidad Gubernamental. Los

tenedores y dueños beneficiarios de los Bonos del Plan de Ajuste no estarán sujetos a la obligación de radicar planilla, planilla informativa contributiva o cualquier otro requisito similar del Gobierno de Puerto Rico o cualquier Entidad Gubernamental por razón de tener, ser titular de o transferir los Bonos del Plan de Ajuste."

Sección 13.-Se añade un Artículo 2.9 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

"Artículo 2.9.-Inaplicabilidad de Ciertas Leyes.

Las siguientes leyes o disposiciones no serán aplicables a la Corporación:

(a) Capítulos 4 y 6 de la Ley 26-2017, según enmendada, conocida como "Ley para el Cumplimiento del Plan Fiscal";

(b) Ley 1-2012, según enmendada, conocida como la "Ley de Ética Gubernamental de Puerto Rico de 2011";

(c) Ley 103-2006, según enmendada, conocida como "Ley de Reforma Fiscal del Gobierno del Estado Libre Asociado de Puerto Rico de 2006";

(d) Ley 8-2017, según enmendada, conocida como la "Ley para la Transformación de los Recursos Humanos en el Gobierno de Puerto Rico";

(e) Ley 237-2004, según enmendada, conocida como la "Ley para Establecer Parámetros Uniformes para la Contratación de Servicios Profesionales y Consultivos por las Agencias e Instrumentalidades del Gobierno de Puerto Rico";

(f) Ley 197-2002, según enmendada, conocida como la "Ley para Regular el Proceso de Transición del Gobierno de Puerto Rico";

(g) Ley 78-2011, según enmendada, conocida como el "Código Electoral de Puerto Rico para el Siglo XXI";

(h) Ley 38-2017, según enmendada, conocida como la "Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico";

(i) Plan 3-2011, según enmendado, conocido como el "Plan de Reorganización de Administración de Servicios Generales";

(j)     Ley 230 de 23 de julio de 1974, según enmendada, conocida como la "Ley de Contabilidad del Gobierno";

(k)     Ley 3-2017, conocida como la "Ley para Atender la Crisis Económica, Fiscal y Presupuestaria para Garantizar el Funcionamiento del Gobierno de Puerto Rico"; y

(l)     Ley 14 de 17 de abril de 1972, según enmendada."

Sección 14.-Se añade un Capítulo III a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

"Capítulo III - LA TRANSACCIÓN DE REESTRUCTURACIÓN"

Sección 15.–Se deroga el Artículo 3 de la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante" y se sustituye por un nuevo Artículo 3.1, que leerá como sigue:

"Artículo 3.1-Emisión de los Bonos del Plan de Ajuste

(a)     En y después de la Fecha de Efectividad, la Corporación estará autorizada a emitir los Bonos del Plan de Ajuste, de tiempo en tiempo, bajo los términos del Plan de Ajuste de la Corporación y los términos y condiciones autorizados por la Corporación y establecidos en la Resolución de Reestructuración y los Acuerdos Complementarios.

(b)     Los Bonos del Plan de Ajuste estarán fechados, devengarán interés a las tasas y vencerán en la fecha o fechas, que determine la Corporación y así lo autorice en la Resolución de Reestructuración de acuerdo a, y consistente con, el Plan de Ajuste de la Corporación. La Corporación determinará la forma de los Bonos del Plan de Ajuste y la manera de otorgamiento de los Bonos del Plan de Ajuste, y fijará la denominación o denominaciones de los Bonos del Plan de Ajuste y el lugar o lugares de pago del principal y los intereses de los mismos, los términos para su redención y compra en lugar de redención y los otros términos de los mismos, todo conforme a, y consistente con, el Plan de Ajuste de la Corporación.

(c)     Los Bonos del Plan de Ajuste serán pagaderos únicamente de los Ingresos de la Corporación conforme los términos del Contrato de Bonos y los Acuerdos Complementarios.

(d)     La Corporación podrá adquirir bonos emitidos por la Corporación bajo los términos de, y conforme a, el Plan de Ajuste de la Corporación y los

Acuerdos Complementarios aplicables, a un precio que no exceda el precio de redención de los mismos. Todos los bonos así adquiridos serán cancelados.

(e)     Los Bonos del Plan de Ajuste no constituirán deuda del Gobierno de Puerto Rico ni de ninguna Entidad Gubernamental excepto por la Corporación. Esta aseveración se incluirá en los Bonos del Plan de Ajuste, el Contrato de Bonos y los documentos de divulgación relacionados a dichos bonos."

Sección 16.-Se añade un Artículo 3.2 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

"Artículo 3.2.-Gravamen Estatutario.

Los Bonos del Plan de Ajuste estarán, automáticamente tras ser emitidos, garantizados por un primer gravamen estatutario sobre todos los derechos, título e interés de la Corporación sobre las Contribuciones Pignoradas, incluyendo cualquier dinero, ingreso, renta, cuenta, derecho contractual o intangible derivado de éstas, a favor del Fiduciario del Contrato de Bonos para beneficio de los tenedores de Bonos del Plan de Ajuste. Dicho primer gravamen estatutario será automático y se constituirá, perfeccionará, será válido y exigible automáticamente desde y después de la Fecha de Efectividad, sin necesidad acción por Persona alguna. Ningún instrumento tendrá que ser otorgado, registrado o inscrito en un récord oficial o registro gubernamental u oficina para perfeccionar o continuar el primer gravamen estatutario o para establecer o mantener la prioridad del mismo. Ningún contacto de las Contribuciones Pignoradas con cualquier propiedad del Gobierno de Puerto Rico, de cualquier otra Entidad Gubernamental o de cualquier Persona limitará, frustrará, menoscabará o interferirá con dicho gravamen estatutario. Dicho gravamen estatutario será válido, vinculante, estará perfeccionado y será ejecutable contra cualquier Persona que tenga una reclamación de cualquier tipo, extracontractual, contractual u otra, contra la Corporación y sus activos, independientemente de si dicha Persona fue notificada de dicho gravamen.

Sección 17.-Se añade un Artículo 3.3 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea en su totalidad como sigue:

"Artículo 3.3.-Convenios relacionados a los Bonos del Plan de Ajuste y la Transacción de Reestructuración.

El Gobierno de Puerto Rico, con la intención de estar contractualmente obligado, por la presente acuerda y se compromete con la Corporación y con cualquier tenedor de Bonos del Plan de Ajuste, y autoriza a la Corporación a

incluir dicho compromiso en el Contrato de Bonos para beneficio de los tenedores de Bonos del Plan de Ajuste, a no, y que ninguna Entidad Gubernamental estará autorizada a, hasta que los Bonos del Plan de Ajuste, incluyendo cualquier interés devengado por éstos y cualquier cantidad u obligación bajo los Acuerdos Complementarios, se paguen en su totalidad en efectivo o se satisfagan conforme a sus términos:

(a)     tomar cualquier acción que (A) menoscabe el derecho de la Corporación a recibir los Ingresos de la Corporación, (B) limite o altere los derechos de la Corporación conforme al Plan de Ajuste de la Corporación para cumplir con los términos de cualquier acuerdo con los tenedores de Bonos del Plan de Ajuste, (C) material y adversamente menoscabe el cobro de las Contribuciones Pignoradas en cualquier Año Fiscal, o (D) menoscabe los derechos y remedios de los tenedores de Bonos del Plan de Ajuste o la colateral establecida bajo el Artículo 3.2 de esta Ley;

(b)     reducir las Contribuciones Pignoradas a una tasa menor de cinco punto cinco por ciento (5.5%) a menos que, con relación a dicha reducción, se cumpla con la calificación crediticia y demás requisitos establecidos en los Acuerdos Complementarios; disponiéndose, sin embargo, que, no obstante lo anterior, hasta que todas las obligaciones con respecto a los Bonos del Plan de Ajuste se paguen o satisfagan en su totalidad conforme a sus términos, si la tasa de las Contribuciones Pignoradas se reduce por debajo de tres (3) por ciento, entonces, con relación a dicha reducción, el Gobierno de Puerto Rico deberá cumplir con los Requisitos de Sustitución;

(c)     menoscabar, limitar, restringir, rescindir, atrasar o modificar los derechos o poderes de la Corporación, el Fiduciario del Contrato de Bonos o los tenedores de Bonos del Plan de Ajuste bajo esta Ley o con relación a los Ingresos de la Corporación o la habilidad de la Corporación para cumplir con sus obligaciones a sus bonistas;

(d)     enmendar esta Ley para menoscabar, limitar, restringir, rescindir, atrasar o modificar cualquier obligación o convenio de la Corporación con los tenedores de Bonos del Plan de Ajuste; y

(e)     limitar o restringir los derechos y poderes de los oficiales pertinentes del Gobierno de Puerto Rico para imponer, mantener, cobrar o recaudar las Contribuciones Pignoradas, disponiéndose que lo anterior no impedirá que el Gobierno de Puerto Rico ejerza su poder, a través de un cambio en ley, de reemplazar la porción del IVU que corresponde a una tasa contributiva de cinco punto cinco (5.5) por ciento con la Colateral Substituta de acuerdo a los Requisitos de Sustitución."

Sección 18.-Se añade un Capítulo IV a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

"CAPÍTULO IV - INGRESOS DE LA CORPORACIÓN, DEPÓSITOS Y DESEMBOLSOS."

Sección 19.-Se deroga el Artículo 4 de la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", y se sustituye por un nuevo Artículo 4.1, que leerá como sigue:

"Artículo 4.1.-Satisfacción de los Ingresos de la Corporación con los Primeros Ingresos.

(a)     Cada Año Fiscal, los primeros ingresos correspondientes a las Contribuciones Pignoradas se transferirán a, y se depositarán con, la Corporación o en cualquier cuenta o fondo, incluyendo el Fondo de Ingresos de la Corporación  o una cuenta o fondo controlado por el Fiduciario del Contrato de Bonos designada en el Contrato de Bonos bajo el cual dichas obligaciones fueron incurridas bajo esta Ley y los Acuerdos Complementarios, designada por la Corporación, hasta que la Corporación reciba una cantidad equivalente a los Ingresos de la Corporación para dicho Año Fiscal. El requisito de que los primeros ingresos correspondientes a las Contribuciones Pignoradas, hasta los Ingresos de la Corporación, se depositen con la Corporación o en cualquier cuenta o fondo, incluyendo el Fondo de Ingresos de la Corporación o una cuenta o fondo controlado por el Fiduciario del Contrato de Bonos designada en el Contrato de Bonos bajo el cual dichas obligaciones fueron incurridas bajo esta Ley y los Acuerdos Complementarios designada por la Corporación no podrá ser modificado; disponiéndose, que el Contrato de Bonos podrá contener disposiciones que permitan la distribución trimestral de las Contribuciones Pignoradas entre la Corporación y el Gobierno de Puerto Rico tras la satisfacción de los requisitos establecidos en el Contrato de Bonos y de manera consistente con el Plan de Ajuste de la Corporación. La Corporación tendrá los derechos establecidos en este Artículo 4.1, hasta que los Bonos del Plan de Ajuste, incluyendo cualquier interés devengado por éstos, y todas las obligaciones bajo los Acuerdos Complementarios, hayan sido pagadas en su totalidad en efectivo o de otra manera hayan sido satisfechas de conformidad con sus términos.

(b)     Durante cada Año Fiscal, el Fiduciario del Contrato de Bonos o aquella otra Persona que sea designada en el Contrato de Bonos determinará, mensualmente, si la Corporación ha recibido los Ingresos de la Corporación. Una vez el Fiduciario del Contrato de Bonos o dicha otra

Persona determine que se han depositado los Ingresos de la Corporación con el Fiduciario del Contrato de Bonos, o aquella porción de los Ingresos de la Corporación que la Corporación tenga derecho a recibir si la distribución trimestral a la cual se hace referencia en este Artículo 4.1(a) está en efecto, todos los ingresos de las Contribuciones Pignoradas recibidos después de dicha determinación se transferirán al Gobierno de Puerto Rico.

(c)     Ninguna Persona que recaude o tenga posesión de las Contribuciones Pignoradas tendrá derecho legal o en equidad, título o interés alguno sobre dichas Contribuciones Pignoradas sólo por virtud del hecho que recaude o tenga posesión de las Contribuciones Pignoradas.

Sección 20.-Se añade un Artículo 4.2 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", para que lea como sigue:

"Artículo 4.2.-Exceso de Ingresos.

Las cantidades depositadas con la Corporación en cada Año Fiscal en exceso de las cantidades necesarias para pagar principal e intereses de los Bonos del Plan de Ajuste que venzan y sean pagaderos, incluyendo el principal y los intereses vencidos bajo cualquier Bono del Plan de Ajuste, satisfacer las obligaciones asumidas bajo el Contrato de Bonos u otros Acuerdos Complementarios que venzan o sean pagaderas, pagar los Costos de Financiamiento o gastos operacionales según se dispone en los Acuerdos Complementarios o hacer cualquier otro pago relacionado u otras obligaciones incurridas por la Corporación, se transferirá a la Corporación, libre del gravamen establecido en el Artículo 3.2 de esta Ley y cualquier otro gravamen establecido por el Contrato de Bonos u otro Acuerdo Complementario."

Sección 21.- Se añade un Capítulo V a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", cuyo título leerá como sigue:

"CAPÍTULO V – DISPOSICIONES MISCELANEAS"

Sección 22.-Se deroga el Artículo 5 de la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante", y se sustituye por un nuevo Artículo 5.1, que leerá en su totalidad como sigue:

"Artículo 5.1.-Separabilidad.

Esta Ley se interpretará de acuerdo a la Constitución de Puerto Rico y la Constitución de los Estados Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección,

título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la orden a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha orden quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una Persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas Personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta Ley aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a alguna persona o circunstancia."

Sección 23.-Se añade un Artículo 5.2 a la Ley 91-2006, según enmendada, conocida como "Ley del Fondo de Interés Apremiante" para que lea como sigue:

"Artículo 5.2.-Idioma que Prevalece.

Esta Ley se adoptará en español y en inglés. Si en la interpretación o aplicación de esta Ley surgiere algún conflicto entre el texto en inglés y el texto en español, prevalecerá el texto en inglés."

Sección 24.-Se derogan los Artículos 6 al 11 de la Ley 91-2006, según enmendada.

Sección 25.-Se añade el texto en inglés de la Ley 91-2006, según enmendado en esta Ley, inmediatamente después del final del texto en español, para que lea en su totalidad como sigue:

"**ENGLISH VERSION OF THE PUERTO RICO SALES TAX FINANCING CORPORATION ACT:**

## STATEMENT OF MOTIVES

Puerto Rico faces an unprecedented fiscal and economic crisis. This bill, as well as the restructuring agreement reached with the creditors of Government Development Bank for Puerto Rico, will enhance Puerto Rico's credibility. With this agreement, we will achieve significant adjustments in the repayment of the government's debts incurred by other administrations, but that it is now our responsibility to resolve. This way, we ensure that the Government is able to continue operating and serving the people of Puerto Rico.

The positions assumed and actions taken by the prior administration caused Puerto Rico to lose access to the capital markets and precipitated the collapse of our public finance system.  These actions accelerated the contraction of the Puerto Rico economy and increased the outmigration of residents of Puerto Rico to the United States mainland.

The prior administration developed a hostile relationship with participants of the financial markets, including tens of thousands of residents of Puerto Rico that invested their savings trusting the good name and credit of the Commonwealth and that of its public corporations.  This hostile environment towards Puerto Rico also pervaded the United States Congress due to the lack of transparency and honesty, while generating consistently negative news coverage for Puerto Rico at the local, national and global level.

Misguided decisions of the prior administration led to the bankruptcy of the Commonwealth of Puerto Rico and its need to gather its resources to address and provide essential services to the people of Puerto Rico.  This, in turn, acted as a catalyst for a controversy that challenged the structure pursuant to which the Puerto Rico Sales Tax Financing Corporation (COFINA by its Spanish acronym) issued its bonds.  In particular, certain parties asserted claims arguing, among other things, that (i) COFINA's issuance of its bonds violated the Puerto Rico Constitution and (ii) the portion of the sales and use tax imposed by the Commonwealth at a rate of 5.5% (the SUT) and transferred to COFINA constituted "available resources" of the Commonwealth pursuant to Article VI, Section 8, of the Puerto Rico Constitution and must be used for the payment of the Commonwealth's "public debt."  Certain creditors also challenged the scope of the Puerto Rico Constitution based on the whether the Spanish term "recursos disponibles" or the English term "available revenues, plus surplus" was used.  On May 5, 2017, the Financial Oversight and Management Board (Oversight Board) created pursuant to the provisions of the Puerto Rico Oversight, Management and Economic Stability Act (PROMESA) commenced a proceeding as representative of COFINA under Title III.

The Commonwealth's and COFINA's various stakeholders sought an orderly process to resolve the disputes relating to COFINA and the ownership of the SUT (collectively, the Commonwealth-COFINA Dispute). To that end, on August 10, 2017, the Title III Court entered a stipulation and order appointing the Commonwealth's Official Committee of Unsecured Creditors to act as agent for the Oversight Board in its capacity as representative of the Commonwealth (the Commonwealth Agent) and Bettina M. Whyte to act as agent for the Oversight Board in its capacity as representative of COFINA (the COFINA Agent) in an effort to facilitate a settlement of the Commonwealth-COFINA Dispute.

On June 5, 2018, the Commonwealth Agent and the COFINA Agent announced that they had reached an agreement in principle to resolve the Commonwealth-COFINA Dispute (the Agreement in Principle). The Agreement in Principle was premised on

splitting the fixed amount of the SUT transferred to COFINA each fiscal year (the PSTBA) between the Commonwealth and COFINA beginning in fiscal year 2019, with COFINA receiving 53.65% of the yearly scheduled PSTBA and the Commonwealth receiving 46.35% of the yearly scheduled PSTBA plus all other revenues collected on account of the SUT.

Consistent with the public policy implemented by the Governor of Puerto Rico, the Fiscal Agency and Financial Advisory Authority, the Oversight Board, and various creditors and insurers of COFINA bonds executed a plan support agreement (as amended and restated on September 21, 2018, the Plan Support Agreement), which incorporates the Agreement in Principle's PSTBA split and provides for the settlement of the Commonwealth-COFINA Dispute pursuant to a plan of adjustment for COFINA under Title III of PROMESA (the COFINA Plan).

The Legislative Assembly is now called upon to implement the agreement by and among the parties of the Commonwealth-COFINA Dispute by amending the provisions of Act No. 91, which created COFINA and authorized it to issue bonds.   These amendments will serve to release the lien that holders of COFINA bonds currently have over approximately $17.5 billion of previously pledged SUT revenues.  These revenues will now be available for use by the Government of Puerto Rico to better serve and provide for its citizens.  By implementing the Plan Support Agreement, this legislation also puts an end to the costly litigation between the agents appointed by the Oversight Board and settles the claims of COFINA's bondholders, while also making clear the original legislative intent of Act 91-2006, as amended.  Moreover, as a result of this implementing legislation, we will be saving the Government of Puerto Rico approximately $437.5 million per year, which will now be available to the Government for the benefit of the people of Puerto Rico.

Equally important, this legislation shows that the Legislative Assembly is determined to take the steps necessary to enable Puerto Rico's return to the capital markets.  As one of the steps required to implement the Plan Support Agreement, this legislation will allow for the restructuring of the COFINA debt under Title III of PROMESA, act as a catalyst for other restructurings, setting the stage for Puerto Rico's emergence from bankruptcy, reduce costly litigation, and accelerate termination of the Oversight Board in accordance with PROMESA.

This Act demonstrates the Legislative Assembly's continued public policy commitment to correct Puerto Rico's financial crisis, honor Puerto Rico's financial obligations, regain access to the capital markets, and achieve economic certainty and debt sustainability for Puerto Rico.

CHAPTER 1. – TITLE AND DEFINITIONS

Article 1.1.-Title.

This Act shall be known as the "Puerto Rico Sales Tax Financing Corporation Act."
Article 1.2.-Definitions.

The following terms shall have the meanings stated below:

(a)     "AAFAF"– means the Puerto Rico Fiscal Agency and Financial Advisory
        Authority.

(b)     "Act"– means Act 91-2006, as amended, also known as the "Puerto Rico
        Sales Tax Financing Corporation Act".

(c)     "Ancillary Agreements"– means the Corporation Plan of Adjustment, the
        Bond Indenture, the Settlement Agreement, and any other agreement or
        instrument entered into by the Corporation or the Indenture Trustee in
        connection with, or in furtherance of, the Restructuring Transaction and in
        accordance with, or in furtherance of, the Corporation Plan of Adjustment.

(d)     "Authorized Activities"– means the activities authorized to be carried out
        by the Corporation under Article 2.4 of this Act.

(e)     "Board of Directors"– means the Board of Directors of the Corporation.

(f)     "Bond Indenture"– means one or more trust agreements, bond indentures
        and any supplements or amendments thereto, or similar contracts or
        agreements, entered into by the Corporation and the Indenture Trustee
        pursuant to which Plan of Adjustment Bonds are issued, and establishing
        the rights and responsibilities of the Corporation and of the holders of Plan
        of Adjustment Bonds issued thereunder.

(g)     "Chair" – means the chairperson of the Board of Directors.

(h)     "COFINA Revenues" – means the First Funds up to an amount equal to
        fifty-three and sixty-five one hundredths percent (53.65%) of the Fixed
        Income for each Fiscal Year and all legal and equitable rights, title and
        interest thereto (including the right to receive the First Funds as set forth
        under Article 4.1 of this Act).

(i)     "COFINA Revenues Fund" – means the segregated fund or funds owned by the Corporation into which the COFINA Revenues are deposited (1) which account shall be held in the name of the Indenture Trustee for the benefit of the holders of the Plan of Adjustment Bonds, (2) may not be owned or controlled in any way by the Government of Puerto Rico or any Government Entity other than the Corporation, and (3) is maintained in one or more mainland U.S. banks.

(j)     "Corporation" – means the Puerto Rico Sales Tax Financing Corporation created by this Act.

(k)     "Corporation Plan of Adjustment" – means the plan of adjustment consummated in connection with the Corporation's case under Title III of PROMESA, including the order of the District Court confirming such plan of adjustment.

(l)     "District Court" – means the United States District Court for the District of Puerto Rico.

(m)    "Effective Date" – means the date on which the Corporation Plan of Adjustment becomes effective in accordance with its terms.

(n)     "Financing Costs" – means all costs associated with the Restructuring Transaction, including the costs, fees and expenses to (1) issue, service, repay or refinance the Plan of Adjustment Bonds, whether such costs are incurred upon issuance of such Plan of Adjustment Bonds or over the term of the Plan of Adjustment Bonds, (2) make payments as required by the Ancillary Agreements, (3) pay any stamp, issuance or similar taxes and other charges related to the Restructuring Transaction; provided, however that this provision does not limit in any way the exemption from taxes set forth in Article 2.8 hereof, (4) prepare for and enter into the Restructuring Transaction, and (5) perform all ongoing activities relating to the Restructuring Transaction.  It should be noted that, the Financing Costs also includes pre-closing and post-closing administrative fees and expenses incurred in connection with all Ancillary Agreements, but does not include payments of principal and interest on the Plan of Adjustment Bonds.

(o)     "First Funds" – means the first funds comprising the Pledged Taxes in any Fiscal Year as described in Article 4.1 of this Act.

(p)     "Fiscal Year" – means the fiscal year of the Government of Puerto Rico, which begins on July 1 and ends on June 30.

(q)     "Fixed Income" – means, for Fiscal Year 2018-2019, seven hundred eighty-three million, one hundred ninety-seven thousand, two hundred and fifty-one (783,197,251) dollars and, for each subsequent Fiscal Year, the Fixed Income for the prior Fiscal Year plus four (4) percent of such Fixed Income, up to the Maximum Amount. The Fixed Income for each Fiscal Year shall be funded from the first revenues collected of the Pledged Taxes.

(r)     "Government Entity" – means any agency, department, office, public corporation, trust, fund, system, instrumentality, political subdivision, taxing authority or municipality of the Government of Puerto Rico.

(s)     "Government of Puerto Rico"– means the Commonwealth of Puerto Rico and the government thereof.

(t)     "Indenture Trustee"– means the Person designated as trustee or indenture trustee under the Bond Indenture, including any successor trustee or indenture trustee under the Bond Indenture.

(u)     "Maximum Amount" – means One Billion Eight Hundred and Fifty Million (1,850,000,000.00) dollars.

(v)     "Oversight Board" – means the Financial Oversight and Management Board for Puerto Rico established pursuant to Article 1.1 of PROMESA.

(w)     "Person" – means any natural person or legal entity, including, but not limited to, the Government of Puerto Rico, any Government Entity, or any firm, partnership, joint venture, trust, estate, limited liability company, corporation of individuals, association, or public or private corporation, organized or existing under the laws of Puerto Rico, the United States of America, any state or any other jurisdiction, or any state, municipality, political subdivision, taxing authority, agency or instrumentality of the United States of America, any state or any other jurisdiction, or any combination thereof.

(x)     "Plan of Adjustment Bonds" – means any Restructuring Bonds and any Refunding Bonds.

(y)     "Pledged Taxes" – means, subject to the provisions of Article 3.3 hereof, (1) the present and future revenues and collections generated by the portion of the Sales Tax that corresponds to a tax rate of five and one-half (5.5) percent, and (2) the Substituted Collateral, if any.

(z)     "PROMESA" – means the "Puerto Rico Oversight, Management, and Economic Stability Act", Pub. L. No. 114–187, 130 Stat. 549 (2016), 48 U.S.C. 2101 et. seq.

(aa)    "Refunding Bonds" – means the bonds issued by the Corporation pursuant to the Act and the Ancillary Agreements, on a pari passu basis with the Restructuring Bonds, to retire, refinance or defease any Plan of Adjustment Bonds.

(bb)    "Restructuring Bonds" – means the bonds issued by the Corporation pursuant to this Act, the Corporation Plan of Adjustment, and the Ancillary Agreements, having terms that conform to, and that are authorized, determined to be valid, and distributed in accordance with, the Corporation Plan of Adjustment.

(cc)    "Restructuring Resolution" – means one or more resolutions of the Board of Directors authorizing: (1) the issuance of Plan of Adjustment Bonds and describing the terms thereof; and (2) the payment of the Financing Costs, each in accordance with the terms of the Corporation Plan of Adjustment.

(dd)    "Restructuring Transaction" – means the transactions contemplated by, or in furtherance of, the Corporation Plan of Adjustment.

(ee)    "Sales Tax" – means the sales and use taxes imposed by the Government of Puerto Rico pursuant to Sections 4020.01 and 4020.02 of Subchapter D of Act No. 1-2011, as amended, known as the Internal Revenue Code for a New Puerto Rico.

(ff)    "Settlement Agreement" – means the Settlement Agreement, dated as of October [15], 2018, between the Oversight Board, on behalf of the Government of Puerto Rico, and the agent for the Corporation appointed by the Oversight Board to settle or litigate the dispute between the Government of Puerto Rico and the Corporation regarding the ownership of the Sales Tax.

(gg)    "Substituted Collateral" – means all or a portion of a tax of general applicability throughout Puerto Rico that is enacted in full substitution of the Pledged Taxes or otherwise constitutes like or comparable security for the Plan of Adjustment Bonds.

(hh)    "Substitution Requirements" – means (1) the enactment of legislation providing for Substituted Collateral that also provides (A) that the Substituted Collateral in an amount equal to the COFINA Revenues has

been irrevocably transferred to and is owned solely and exclusively by the Corporation to the full extent provided under Article 2.2 of this Act, (B) that, following such transfer, such Substituted Collateral in an amount equal to the COFINA Revenues is not, and shall not constitute, "available resources" or "available revenues" of the Government of Puerto Rico as that term is used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution), (C) for a lien on such Substituted Collateral in favor of the Indenture Trustee for the benefit of the holders of Plan of Adjustment Bonds to the full extent provided for under Article 3.2 of this Act, and (D) that the Government of Puerto Rico and the Government Entities shall continue to provide the covenants set forth in Article 3.3 of this Act with respect to such Substituted Collateral, and (2) prior to the substitution of the Substituted Collateral, the ratings requirements set forth in the Ancillary Agreements are satisfied with respect to the Substituted Collateral.

CHAPTER 2. - THE PUERTO RICO SALES TAX FINANCING CORPORATION

Article 2.1. - Creation and Separate Legal Existence of the Corporation.

There is created a public corporation and instrumentality of the Government of Puerto Rico, which constitutes a corporate and political entity independent and separate from the Government of Puerto Rico to be known as the Puerto Rico Sales Tax Financing Corporation. The Corporation, which was created pursuant to the provisions of this Act, is and shall be recognized for all purposes as an independent and separate legal entity from the Government of Puerto Rico and any other Government Entity.  It shall be operated independently, and its business and affairs shall be governed by or under the direction of its Board of Directors.

Article 2.2. - Ownership of the COFINA Revenues.

(a)     Any and all ownership interests and rights to the COFINA Revenues were, have been or are hereby transferred to the Corporation.

(b)     The transfer described in (a) above is an absolute transfer of all legal and equitable right, title and interest, and not a pledge or other financing.

(c)     The Corporation is and will be the sole and exclusive owner of the COFINA Revenues until such time as the Plan of Adjustment Bonds, together with any interest thereon, and all amounts and obligations under all Ancillary Agreements, have been completely paid in cash in full or have otherwise been discharged in accordance with their terms.

(d)      Persons designated as withholding agents for purposes of the imposition and collection of the Sales Tax pursuant to the Act 1-2011, as amended, also known as the "Internal Revenue Code for a New Puerto Rico", shall be deemed to collect any portion of the Sales Taxes in which the Corporation has an ownership interest on behalf of the Corporation.   Any such withholding agent will continue to be subject to any and all obligations and responsibilities imposed by the Internal Revenue Code for a New Puerto Rico, on withholding agents in relation to the imposition and collection of the Sales Tax.

(e)      The COFINA Revenues do not constitute "available resources" or "available revenues" of the Government of Puerto Rico as used in Section 8 of Article VI of the Puerto Rico Constitution or as otherwise used in the Puerto Rico Constitution (whether construed pursuant to the Spanish or English version of the Puerto Rico Constitution).

Article 2.3.-Purpose of the Corporation.

On and after the Effective Date, the Corporation's purpose will be to (a) issue the Plan of Adjustment Bonds, (b) own and administer the COFINA Revenues, and (c) issue any other bonds, notes or evidence of indebtedness of the Corporation as may be permitted by the Corporation Plan of Adjustment and the Ancillary Agreements and which will be payable from such sources as may be provided for by the Legislative Assembly.

Article 2.4.-The Corporation's Activities.

The Corporation's activities shall be limited to the following:

(a)      receiving and owning the COFINA Revenues and such other revenues or property as may be provided or transferred to the Corporation;

(b)      adopting the Restructuring Resolution;

(c)      issuing, from time to time, Plan of Adjustment Bonds and any bonds, notes or evidences of indebtedness the issuance of which is authorized by Article 2.3 of this Act;

(d)      entering into and performing the Ancillary Agreements;

(e)      to pay any bonds, notes or evidences of indebtedness the issuance of which is authorized by Article 2.3 of this Act by pledging, on a basis subordinate in all respects to the lien established in Article 3.2 of this Act, (1) any

amounts remaining of the COFINA Revenues after the payment of principal and interest on the Plan of Adjustment Bonds or (2) any other funds or property that may be allocated to the Corporation after the Effective Date; and

(f)     taking any and all other actions as may be necessary or appropriate to effectuate the Restructuring Transaction and the Corporation Plan of Adjustment, including making amendments to, exchanging and/or canceling bonds issued by the Corporation prior to the Effective Date and amending and restating agreements of the Corporation relating thereto.

Article 2.5.-Ancillary Powers.

In order to carry out the Authorized Activities, without limiting the foregoing, the Corporation shall have the power to:

(a)     sue and be sued in any Commonwealth court or the Federal District Court;

(b)     adopt, alter and use a seal;

(c)     formulate, adopt, amend and revoke rules for the administration and management of its affairs, and such standards, rules and regulations that may be necessary or convenient to exercise and perform the Authorized Activities;

(d)     open and maintain bank accounts, including the COFINA Revenues Fund;

(e)     acquire, hold, lease, sell and otherwise transfer property;

(f)     have complete legal and equitable dominion over its properties (including the COFINA Revenues), subject to the statutory lien established under Article 3.2 of this Act;

(g)     make, execute and amend contracts and all other instruments necessary or convenient to perform the Authorized Activities;

(h)     appoint and remove officers, agents, employees and contractors, establish their compensations, powers and duties, in each case, in accordance with the Ancillary Agreements;

(i)     pay its operating expenses and the Financing Costs;

(j)     procure insurance, including insurance covering the Corporation's directors and officers, against loss in connection with its activities, properties or assets;

(k)     invest funds and establish and maintain reserves as required by, and pursuant to standards set forth in, the Ancillary Agreements;

(l)     indemnify the members of the Board of Directors, its officers, agents, employees, contractors and other third parties for conduct that does not constitute gross negligence, willful misconduct or fraud;

(m)     exercise such other powers, not inconsistent herewith, as may be necessary to carry out the Authorized Activities;

(n)     take any action or measure necessary or convenient to carry out its purposes and exercise the powers expressly granted in this Article;

(o)     delegate to its officers, agents, employees or contractors authority to take actions in furtherance of this Act; and

(p)     execute, file and amend any relevant returns, forms, elections or statements with any governmental authority.

Article 2.6.-Prohibited Activities.

While the Plan of Adjustment Bonds are outstanding, the Corporation shall not be authorized to:

(a)     merge or consolidate, directly or indirectly, with any Person;

(b)     incur, guarantee or otherwise become obligated to pay any debt or other obligations other than the Plan of Adjustment Bonds, operating costs, the Financing Costs and any bond, note or evidence of indebtedness permitted under Article 2.3 hereof;

(c)     pledge, create or record liens on any of its properties (including the COFINA Revenues), other than (1) the pledge to secure the payment of Plan of Adjustment Bonds created pursuant to Article 3.2 of this Act or (2) any pledge or lien to secure any bond, note or evidence of indebtedness permitted under Article 2.3 hereof but only to the extent such pledge or lien is subordinate in all respects to the lien established in Article 3.2 of this Act;

(d)   engage in business activities other than as expressly authorized in this Act;

(e)   dissolve, liquidate, sell or, except as permitted by Article 2.4(e), otherwise transfer any or all of its properties (including the COFINA Revenues);

(f)   the directors of the Corporation shall not vote to authorize the Corporation to commence a case under Title III of PROMESA or other similar judicial restructuring process under applicable law subject to the provisions thereof; and

(g)   take any other action that is inconsistent with the Corporation's purpose set forth in this Act or ancillary thereto.

Article 2.7.-Board of Directors.

The powers of the Corporation shall be exercised by the Board of Directors.

(a)   Composition of the Board of Directors.

The Board of Directors shall be composed of three (3) members, who shall meet the requirements set forth in Article 2.7 (b)(iii) of this Act and shall be appointed by the Governor of Puerto Rico; provided, that, pursuant to the provisions of the Ancillary Agreements, certain holders of Plan of Adjustment Bonds may submit up to three (3) recommendations for the Governor's consideration of the initial appointment of the Corporation's directors but the Governor shall be under no obligation to appoint any such recommended persons.

(b)   General Provisions regarding the Board of Directors.

(i)   Each member of the Board of Directors shall be appointed for a term of three (3) years and may serve consecutive terms as an appointed member; provided, that the Governor may remove any member prior to the expiration of their term if such member fails to uphold the responsibilities set forth in this Act or for gross negligence, willful misconduct or fraud;

(ii)   each member of the Board of Directors shall be entitled to one (1) vote;

(iii)   each member of the Board of Directors shall satisfy the independence and qualification standards (including that no member of the Board of Directors may be an officer, employee or director of any

Government Entity other than the Corporation) set forth in the Ancillary Agreements;

(iv) all decisions and actions of the Board of Directors shall require the affirmative vote of the majority of the members of the Board of Directors at the time serving; provided, that, the Corporation's bylaws may require a higher approval threshold for particular matters described therein; and

(v) the members of the Board of Directors shall select a Chair from among themselves.

(c) Vacancies.

In the event of a vacancy in the office of a member of the Board of Directors by death, removal, resignation or otherwise, a successor member who meets the requirements set forth in Article 2.7 (b)(iii) of this Act shall be appointed by the Governor of Puerto Rico subject to Article 2.7(b)(i) hereof.

(d) Compensation.

Members of the Board of Directors shall receive such compensation as is authorized pursuant to the Ancillary Agreements.

(e) Adoption and Amendment of Rules.

As soon as practicable after the appointment of all members and appointment of the Chair, the Corporation shall adopt rules and procedures governing its activities under this Act. The Board of Directors shall be entitled to amend such rules and procedures from time to time.

(f) Quorum.

A majority of the members of the Board of Directors at the time serving shall constitute a quorum to make decisions or exercise any power or function of the Corporation. Any one or more members may participate in a meeting of the Board of Directors by teleconference or similar communications equipment. Participation by such means shall constitute presence in person at the meeting. Any action necessary or allowed in any meeting of the Board of Directors shall be authorized with no need for a meeting, if all the members of the Board of Directors give their written consent concerning such action.

(g)     Delegation.

> The Board of Directors may delegate to one or more of the members, or to the Corporation's officers, agents and employees, such powers and duties as the Board of Directors may deem appropriate.

Article 2.8.-Tax Exemption.

(a)     It is hereby found and declared that the activities of the Corporation are for a public purpose. As a result, the Corporation shall be totally exempt from, and shall not be required to pay any kind of taxes, assessments, licenses, stamps, fees or other similar charges levied by the Government of Puerto Rico or any Government Entity upon any of the property that the Corporation owns, possesses, holds or uses or on its activities, or upon any income, payment or gain derived therefrom.

(b)     The Plan of Adjustment Bonds, including, but not limited to, any payments or income with respect to the Plan of Adjustment Bonds and the transfer of the Plan of Adjustment Bonds, shall, at all times, be totally exempt from all kinds of taxes, assessments, licenses, stamps, fees and other charges levied by the Government of Puerto Rico or any Government Entity. Holders and beneficial owners of the Plan of Adjustment Bonds shall not be subject to any tax return filing or any other tax reporting or similar requirement in respect of the Government of Puerto Rico or any Government Entity by reason of holding, owning or transferring the Plan of Adjustment Bonds.

Article 2.9.-Inapplicability of Certain Laws.

The following laws or provisions shall not apply to the Corporation:

(a)     Chapters 4 and 6 of Act 26-2017, as amended, known as the "Fiscal Plan Compliance Act";

(b)     Act 1-2012, as amended, known as the "Puerto Rico Government Ethics Act of 2011";

(c)     Act 103 of May 25, 2006, as amended, known as the "Act for the Fiscal Reform of the Government of the Commonwealth of Puerto Rico of 2006";

(d)     Act 8-2017, as amended, known as the "Act for the Transformation of the Government's Human Resources";

(e)     Act 237-2004, as amended, known as the "Act to Establish Uniform Parameters for Contracting Professional and Consulting Services by Agencies and Instrumentalities of the Government of Puerto Rico";

(f)     Act 197-2002, as amended, known as the "Act to Regulate the Transition Process of the Government of Puerto Rico";

(g)     Act 78-2011, as amended, known as the "Electoral Code of Puerto Rico for the XXI Century";

(h)     Act 38-2017, known as the "Uniform Administrative Procedures Act of the Government of Puerto Rico";

(i)     Plan 3-2011, as amended, known as "General Services Administration Reorganization Plan";

(j)     Act 230 of July 23, 1974, as amended, known as the "Government Accounting Act";

(k)     Act 3-2017, known as the "Law to Address the Economic, Fiscal and Budgetary Crisis and Ensure the Functioning of the Government of Puerto Rico"; and

(l)     Act 14 of April 17, 1972, as amended.

CHAPTER 3.-THE RESTRUCTURING TRANSACTION

Article 3.1.–Issuance of Plan of Adjustment Bonds.

(a)     From and after the Effective Date, the Corporation shall be authorized to issue Plan of Adjustment Bonds, from time to time, pursuant to the Corporation Plan of Adjustment and the terms and conditions authorized by the Corporation and set forth in the applicable Restructuring Resolution and the Ancillary Agreements.

(b)     Plan of Adjustment Bonds shall be dated, shall bear interest at such rates and shall mature at such time or times as may be determined by the Corporation and authorized in the applicable Restructuring Resolution in accordance and consistent with the Corporation Plan of Adjustment. The Corporation shall determine the form of Plan of Adjustment Bonds and the manner of execution of Plan of Adjustment Bonds, and shall fix the denomination or denominations of Plan of Adjustment Bonds and the place or places of payment of principal thereof and interest thereon, the terms of

redemption and purchase in lieu of redemption and the other terms thereof, all in accordance and consistent with the Corporation Plan of Adjustment. Such Plan of Adjustment Bonds may be sold at public or private sale for such price or prices as the Corporation shall determine, or issued in exchange for existing bonds of the Corporation in accordance with the Plan of Adjustment.

(c)     Plan of Adjustment Bonds shall be payable solely from the COFINA Revenues in accordance with the terms of this Act and the Ancillary Agreements.

(d)     The Corporation may purchase bonds issued by the Corporation on the terms and in accordance with the Corporation Plan of Adjustment and applicable Ancillary Agreements at a price not exceeding the redemption price thereof.  All bonds so purchased shall be cancelled.

(e)     Plan of Adjustment Bonds shall not constitute a debt of the Government of Puerto Rico or of any Government Entity other than the Corporation. This statement shall be included in the Plan of Adjustment Bonds, the Bond Indenture and the disclosure documentation relating to such bonds.

Article 3.2.-Statutory Lien.

Plan of Adjustment Bonds shall automatically, upon the issuance of such Plan of Adjustment Bonds, be secured by a statutory first lien on all of the Corporation's right, title and interest in and to the Pledged Taxes, including any moneys, income, revenues, accounts, contract rights or general intangibles derived therefrom, in favor of the Indenture Trustee for the benefit of the holders of Plan of Adjustment Bonds.  Such statutory first lien shall occur automatically and shall automatically attach and be perfected, valid and binding from and after the Effective Date, without any further act or agreement by any Person. No instrument needs to be executed or delivered or recorded in any official record or in any government registry or office in order to perfect or continue such statutory first lien or to establish or maintain the priority thereof. No commingling of the Pledged Taxes with any property of the Government of Puerto Rico, any other Government Entity or any other Person shall limit, defeat, impair or interfere with such statutory lien. Such lien shall be valid, binding, perfected and enforceable against all Persons having claims of any kind in tort, contract or otherwise against the Corporation or its assets irrespective of whether such Persons have notice of such lien.

Article 3.3.-Covenants Regarding Plan of Adjustment Bonds and the Restructuring Transaction.

The Government of Puerto Rico, with the intent of being contractually bound, hereby agrees and covenants with the Corporation and each Person that holds Plan of Adjustment Bonds, and authorizes the Corporation to include such covenant in the Bond Indenture for the benefit of the holders of Plan of Adjustment Bonds, that it will not, and no Government Entity shall be authorized to, until the Plan of Adjustment Bonds, together with the interest thereon, and all amounts and obligations under all Ancillary Agreements, have been completely paid in cash in full or otherwise discharged in accordance with their terms:

(a)     take any action that would (A) impair the Corporation's right to receive the COFINA Revenues, (B) limit or alter the rights vested in the Corporation in accordance with the Corporation Plan of Adjustment to fulfill the terms of any agreements with the holders of Plan of Adjustment Bonds, (C) materially and adversely impair the collection of the Pledged Taxes in any Fiscal Year, or (D) impair the rights and remedies of the holders of the Plan of Adjustment Bonds or the collateral security established under Article 3.2 of this Act;

(b)     reduce the Pledged Taxes to a rate less than five and one-half percent (5.5%) unless, in connection with such reduction, the credit rating and other requirements set forth in the Ancillary Agreements are satisfied; provided, however, that, notwithstanding the foregoing, until all obligations with respect to the Plan of Adjustment Bonds have been paid or satisfied in full in accordance with their terms, if the rate of the Pledged Taxes is reduced below three (3) percent, then, in connection with such reduction, the Government of Puerto Rico must comply with the Substitution Requirements;

(c)     impair, limit, restrict, rescind, delay or modify the rights or powers of the Corporation, the Indenture Trustee or the holders of Plan of Adjustment Bonds under this Act or relating to the COFINA Revenues, or the Corporation's ability to meet its obligations to its bondholders;

(d)     amend this Act to impair, limit, restrict, rescind, delay or modify any obligation or commitment of the Corporation to the holders of Plan of Adjustment Bonds; and

(e)     limit or restrict the rights or powers of the appropriate officers of the Government of Puerto Rico to impose, maintain, charge or collect the Pledged Taxes, provided that the foregoing shall not preclude the Government of Puerto Rico from exercising its power, through a change in law, replace the portion of the Sales Tax that corresponds to a tax rate of

five and one half (5.5) percent with Substituted Collateral in accordance with the Substitution Requirements.

CHAPTER 4.-FUNDING OF THE CORPORATION; DEPOSITS AND DISBURSEMENTS.

Article 4.1.-First Dollars Funding of COFINA Revenues.

(a)     Each Fiscal Year, the first funds comprising the Pledged Taxes shall be transferred to, and deposited with, the Corporation, or any account or fund, including the COFINA Revenues Fund or an account or fund controlled by the Indenture Trustee designated in the Bond Indenture pursuant to which obligations were incurred in accordance with this Act and the Ancillary Agreements, designated by the Corporation, until such time as the Corporation has received an amount equal to the COFINA Revenues for such Fiscal Year. The requirement that the first funds comprising the Pledged Taxes up to the COFINA Revenues be deposited with the Corporation or in any account or fund, including the COFINA Revenues Fund or an account or fund controlled by the Indenture Trustee designated in the Bond Indenture pursuant to which obligations were incurred in accordance with this Act and the Ancillary Agreements, designated by the Corporation may not be modified; provided, that the Bond Indenture may contain provisions allowing for the quarterly distribution of the Pledged Taxes between the Corporation and the Government of Puerto Rico upon satisfaction of the requirements set forth in the Bond Indenture and consistent with the Corporation Plan of Adjustment. The Corporation shall have the rights set forth in this Article 4.1 until such time as the Plan of Adjustment Bonds, together with any interest thereon, and all obligations under all Ancillary Agreements, have been completely paid in cash in full or have otherwise been discharged in accordance with their terms.

(b)     During each Fiscal Year, the Indenture Trustee or such other Person as may be designated in the Bond Indenture shall determine, on a monthly basis, if the Corporation has received the COFINA Revenues. Once the Indenture Trustee or such other Person determines that the COFINA Revenues have been deposited with the Indenture Trustee, or that portion of the COFINA Revenues as the Corporation may be entitled to the extent the quarterly distribution referenced in Article 4.1(a) above is in effect, all revenues of the Pledged Taxes received after such determination shall be transferred to the Government of Puerto Rico.

(c)     No Person who collects or holds the Pledged Taxes shall have any legal or equitable right, title or interest thereto solely by virtue of the fact that it collects or holds the Pledged Taxes.

Article 4.2.-Excess Funding.

The amounts deposited with the Corporation each Fiscal Year in excess of the amounts required to pay principal and interest on the Plan of Adjustment Bonds then due and payable (including the principal and interest due and payable on any past due Plan of Adjustment Bonds), satisfy obligations assumed pursuant to the Bond Indenture or other Ancillary Agreements then due and payable, pay its Financing Costs or operating expenses as provided in the Ancillary Agreement, or make any other payment related to other obligations incurred by the Corporation, will be transferred to the Corporation, free and clear of the lien established by Article 3.2 of this Act and any other lien established by the Bond Indenture or other Ancillary Agreement.

CHAPTER 5.-MISCELLANEOUS PROVISIONS.

Article 5.1.-Severability.

This Act shall be interpreted in accordance with the Puerto Rico Constitution and the U.S. Constitution. If any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the remainder of this Act. The effect of such an order shall be limited to the clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act so annulled or declared unconstitutional. If the application to a Person or circumstance of any clause, paragraph, subparagraph, sentence, word, letter, article, provision, section, subsection, title, chapter, subchapter, heading, or part of this Act, were to be annulled or declared unconstitutional, the order to such effect will neither affect nor invalidate the application of the remainder of this Act to such Persons or circumstances to which it may be validly applied. It is the express and unequivocal intent of this Legislative Assembly that the courts of law enforce the provisions and application of this Act even if any of its parts is annulled, invalidated, affected or declared unconstitutional, or even if the application thereof to any Person or circumstance is annulled, invalidated or declared unconstitutional.

Article 5.2.-Language Conflict.

This Act shall be adopted both in English and Spanish. If in the interpretation or application of this Act any conflict arises as between the English and Spanish texts, the English text shall govern."

Sección 26.-Se derogan los Artículos 2 y 4 de la Ley 116-2013, según enmendada.

Sección 27.-Se enmienda el Artículo 25-A de la Ley 44 del 21 de junio de 1988, según enmendada, para que lea en su totalidad como sigue:

"(a)    ...

...

(k)    Durante el período comprendido entre la fecha de aprobación de esta Ley y el 31 de diciembre de 2012, la Corporación habrá de disponer de los activos depositados en la Cuenta del Corpus de la siguiente manera:

(i)    ...

(ii)    el remanente, permanecerá en la Cuenta del Corpus y se utilizará para comprar un bono de apreciación de capital emitido por la Corporación para el Fondo de Interés Apremiante de Puerto Rico con un vencimiento no menor de 30 años ni mayor de 40 años y a una tasa de interés de no menos de 7.00%. El Sistema de Retiro de Empleados del Estado Libre Asociado de Puerto Rico y la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico no podrán disponer voluntariamente del bono de la Corporación del Fondo de Interés Apremiante de Puerto Rico, a menos que dicha disposición sea autorizada por la Autoridad de Asesoría Financiera y Agencia Fiscal de Puerto Rico."

Sección 28.-Separabilidad.

Esta Ley se interpretará de acuerdo a la Constitución de Puerto Rico y la Constitución de los Estados Unidos de América. Si cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera anulada o declarada inconstitucional, la orden a tal efecto dictada no afectará, perjudicará, ni invalidará el remanente de esta Ley. El efecto de dicha orden quedará limitado a la cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de la misma que así hubiere sido anulada o declarada inconstitucional. Si la aplicación a una Persona o a una circunstancia de cualquier cláusula, párrafo, subpárrafo, oración, palabra, letra, artículo, disposición, sección, subsección, título, capítulo, subcapítulo, acápite o parte de esta Ley fuera invalidada o declarada inconstitucional, la resolución, dictamen o sentencia a tal efecto dictada no afectará ni invalidará la aplicación del remanente de esta Ley a aquellas Personas o circunstancias en que se pueda aplicar válidamente. Es la voluntad expresa e

inequívoca de esta Asamblea Legislativa que los tribunales hagan cumplir las disposiciones y la aplicación de esta Ley, aunque se deje sin efecto, anule, invalide, perjudique o declare inconstitucional alguna de sus partes, o aunque se deje sin efecto, invalide o declare inconstitucional su aplicación a alguna persona o circunstancia.

Sección 29.-Supremacía.

Las disposiciones de esta Ley prevalecerán sobre cualquier otra disposición general o específica de cualquier otra ley o reglamento del Gobierno de Puerto Rico que sea inconsistente con esta Ley.

Sección 30.-Vigencia.

Esta Ley comenzará a regir en la fecha en que el plan de ajuste con relación al caso de la Corporación al amparo del Título III de PROMESA advenga efectivo de acuerdo a sus términos.

**DEPARTAMENTO DE ESTADO**
**Certificaciones, Reglamentos, Registro**
**de Notarios y Venta de Leyes**
Certifico que es copia fiel y exacta del original
Fecha: 3 de DICIEMBRE de 2018

Firma

**Eduardo Arosemena Muñoz**
**Secretario Auxiliar**
**Departamento de Estado**
**Gobierno de Puerto Rico**