**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |
| IN RE:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS<br><br>This filing relates to COFINA only |

**OBJECTION OF THE BANK OF NEW YORK MELLON, AS TRUSTEE, TO WHITEBOX'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER SUSTAINING AN EVIDENTIARY OBJECTION DURING THE HEARING OF THE SECTION 19.5 DISPUTE**

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ..... ii

PRELIMINARY STATEMENT ..... 1

I. THIS COURT PROPERLY HELD THAT WHITEBOX DID NOT PRESERVE ANY REQUEST TO CROSS-EXAMINE BNYM'S WITNESSES ..... 3

A. Whitebox Failed to Make Any Submission In Response To BNYM'S Expert Declarations On Quantum, And BNYM Promptly Argued That Whitebox Waived Any Right To Challenge BNYM's Quantum Evidence ..... 3

B. Whitebox Failed To Specify Issues For Cross-Examination ..... 6

C. Whitebox Failed To Mark Exhibits For Cross ..... 6

D. Whitebox's Attempt At Self-Help Was Untimely And Inadequate ..... 7

II. THIS COURT'S RULING WAS AN APPROPRIATE RESPONSE TO WHITEBOX'S DISREGARD OF THIS COURT'S ORDERS ..... 9

III. WHITEBOX DID NOT SUFFER ANY DUE PROCESS VIOLATION ..... 10

IV. WHITEBOX DOES NOT AND CANNOT SUPPORT ITS REQUEST TO REOPEN.. 12

V. THE INTERESTS OF JUSTICE WARRANT DENIAL OF RECONSIDERATION .... 14

VI. WHITEBOX IS NOT HARMED BY A HOLDBACK; HENCE THE EVIDENTIARY ORDER, EVEN IF WRONG (IT WAS RIGHT), IS HARMLESS ..... 14

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Anderson v. Brennan,
911 F.3d 1 (1st Cir. 2018) .......... 2, 12

Barreto v. Citibank, N.A.,
907 F.2d 15 (1st Cir. 1990) .......... 9

Delta Eng'g Corp. v. Scott,
322 F.2d 11 (5th Cir. 1963) .......... 11

Estate of Keatinge v. Biddle,
316 F.3d 7 (1st Cir. 2002) .......... 13

N. Heel Corp. v. Compo Indus., Inc.,
851 F.2d 456 (1st Cir. 1988) .......... 9

PIMCO Absolute Return Strategy 3d Offshore Fund Ltd. v. Wells Fargo Bank, Nat'l Ass'n,
No. 654743/2017 (N.Y. Sup. Ct. Nov. 13, 2017) .......... 15

Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co.,
No. 17-cv-5916 (AJN), 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018) .......... 14

Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n,
No. 17-cv-7684 (VEC), Doc. No. 64 (S.D.N.Y. Aug. 2, 2018) .......... 15

Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n,
No. 14-cv-2590 (VM), 2018 WL 6920768 (S.D.N.Y. Nov. 30, 2018) .......... 14

Tower Ventures, Inc. v. City of Westfield,
296 F.3d 43 (1st Cir. 2002) .......... 3, 9, 10

U.S. v. Caribe-Garcia,
125 F. Supp. 2d 19 (D.P.R. 2000),
aff'd in pertinent part sub nom. U.S. v. Nelson-Rodriguez,
319 F.3d 12 (1st Cir. 2003) .......... 10, 11

United States v. Carpenter,
494 F.3d 13 (1st Cir. 2007) .......... 13

United States v. Roberts,
978 F.2d 17 (1st Cir. 1992) .......... 14

**Statutes**

11 U.S.C. § 105(a) ....................................................................................................................9

**Rules**

Fed. R. Civ. P. 16(f)(1)(C)....................................................................................................10

FRE 103(a)(2) .......................................................................................................................13

Local Civ. R. 16(g) ...............................................................................................................10

Local Civ. R. 37(b)(2)(A)(ii) .................................................................................................10

The Bank of New York Mellon ("BNYM"), as trustee, hereby submits its objection to the motion of Whitebox Multi-Strategy Partners, L.P. and certain of its affiliates (collectively "Whitebox") [Doc. Nos. 4964-66] seeking reconsideration of this Court's order at the January 17, 2019 Section 19.5 Hearing, which sustained an evidentiary objection to Whitebox's cross-examination of BNYM's expert witnesses due to Whitebox's failure to comply with this Court's related orders. The motion should be denied in its entirety.

## PRELIMINARY STATEMENT

Whitebox's motion for reconsideration fails at the outset, as there is neither law nor equity in its favor. First, Whitebox's every move bespeaks delay and an attempt to interfere with the larger proceeding of which the 19.5 Dispute is an important part. Having knowingly disregarded this Court's orders, refusing to offer even the semblance of an excuse or apology for its disregard, failing entirely to make an offer of proof or otherwise preserve its claimed entitlement during the Hearing as required by settled First Circuit law (see Point IV), while the witnesses were in court and when the Court might have been able to do something about it – Whitebox waited nearly two weeks to move to reconsider, and then made its motion returnable a month hence, knowing it would continue to interfere with the progress of this case. Whitebox's conduct deserves the fullest condemnation. It has no basis for reconsideration.

Second, this Court acted well within its discretion in enforcing compliance with its orders, particularly because of the complexities of this matter. This Court provided Whitebox with several opportunities to preserve its request to cross-examine BNYM's witnesses. In order after order, this Court made clear that the Section 19.5 Hearing parties, if they wanted to cross-examine, needed to notify the Court and their adversary that they intended to contest their adversary's showing, identify any matters on which they sought to cross-examine, and file any

documents they intended to use in their examination. Whitebox deliberately ignored each and every one of those orders. There is thus no call for this Court to reconsider its evidentiary ruling sustaining the objection to Whitebox's belated and unpreserved request to cross-examine.

Third, Whitebox cannot make any showing of prejudice to itself. Preliminarily, it attempts to blame BNYM and this Court for its own failure to preserve its ability to conduct cross-examination. Particularly because the Court's ruling did not preclude Whitebox from raising its attacks on BNYM's experts during oral argument, and Whitebox made no offer of proof, and never sought to *voir dire* the witnesses, offer their depositions during its own case, or call its own witnesses, its motion is meritless and should be denied.

Fourth, Whitebox does not cite and cannot satisfy the test for reopening the record, including the requirement that "reopening will cause no undue prejudice to the non-moving party." Anderson v. Brennan, 911 F.3d 1, 13 (1st Cir. 2018). Indeed, Whitebox fails utterly to take into account the prejudice to any other party. The prejudice to others that will be caused if its motion is granted is considerable. Through its repeated disregard of this Court's orders, and its lethargic attempt to challenge this Court's ruling, Whitebox is bent on delaying the effective date of COFINA's plan, to the detriment of myriad parties. For this and other reasons, the "interest of justice" factors Whitebox relies on do not weigh in favor of reconsideration.

Finally, this Court only considers BNYM's expert evidence after it determines that BNYM is entitled to have amounts withheld from (or posted by) Whitebox. Once entitlement is determined, Whitebox cannot be harmed by any amount withheld, given both the protections offered by BNYM (reimbursement of unused amounts; challenges for reasonableness; challenges should Whitebox succeed on the merits) and the recent holdings of numerous courts that trustees

can use funds to pay their legal fees and expenses on a current basis unless and until they are found liable for willful misconduct.

# I. THIS COURT PROPERLY HELD THAT WHITEBOX DID NOT PRESERVE ANY REQUEST TO CROSS-EXAMINE BNYM'S WITNESSES

In this extraordinarily complex case, this Court has kept order by issuing clear directives to the parties on when, where, and how to participate in the various moving parts of the confirmation process. It is imperative that the parties comply – otherwise, the proceedings descend into chaos. Even in a standard case, the court has an

> independent interest in administering its docket. That interest is strong, and the court's efforts at stewardship are undermined where, as here, a party cavalierly flouts the court's scheduling orders. Unexcused misconduct of that stripe places the choice of sanction (up to, and including, dismissal) within the sound discretion of the district court.

Tower Ventures, Inc. v. City of Westfield, 296 F.3d 43, 46 (1st Cir. 2002) (affirming dismissal).

With respect to the Section 19.5 Hearing, this Court issued two orders that together provided three different opportunities for Whitebox to preserve any genuine wish to cross-examine BNYM's witnesses. Whitebox disregarded the orders. In particular, Whitebox failed to comply with an order "which was specifically designed to give appropriate notice to any party whose witnesses were to be cross-examined" (Hearing Tr. 166:3-5).[2]

This Court correctly denied Whitebox's belated request to cross-examine.

## A. Whitebox Failed to Make Any Submission In Response To BNYM'S Expert Declarations On Quantum, And BNYM Promptly Argued That Whitebox Waived Any Right To Challenge BNYM's Quantum Evidence

On December 19, 2018, this Court issued its *Order Granting Urgent Consensual Motion For Entry of Order Establishing Procedures Regarding Section 19.5 of the COFINA Plan of*

[2] The transcript of the January 17, 2019, 19.5 hearing is Exhibit C to the *Declaration of Andrew K. Glenn In Support of Whitebox's Motion for Reconsideration* [Doc. No. 4965] ("Glenn Aff.").

*Adjustment* [Doc. No. 4518 ("Scheduling Order")]. The Scheduling Order bifurcated the parties' submissions, with one set addressing "the amounts, if any, to be withheld from distributions . . . or posted by Whitebox" (Scheduling Order ¶ 5), and the other addressing BNYM's "entitlement to withhold amounts or require amounts to be posted in accordance with Section 19.5 of the COFINA Plan" (id. ¶ 4). Whitebox omits all mention of this order in its motion.

In accordance with the Scheduling Order, BNYM filed on January 2, 2019, "declarations supporting the amount BNYM contends" should be withheld (id. ¶ 2). Whitebox had a full week, until January 9, to "file any responsive papers, including opposing declarations, to BNYM's brief/declarations regarding the amounts" to be withheld (id. ¶ 5).

Whitebox filed nothing that responded to BNYM's showing as to amount. The only document Whitebox filed on January 9 was an unauthorized "Response" to BNYM's Reservation of Rights [Doc. No. 4599], which Response was silent with respect to amount [Doc. No. 4653]. Whitebox did not even join in Ambac's brief addressing quantum.

BNYM did not let this lapse pass unnoticed. In accordance with the Court's *Order Scheduling Replies to the January 9, 2019 Submissions Regarding the 19.5 Dispute* [Doc. No. 4672], on January 12, 2019, BNYM filed a reply to Whitebox's January 9 submission [Doc. No. 4751, *Reply Memorandum of Law of the Bank of New York Mellon, As Trustee, Regarding Compliance with Section 19.5 of the Plan*]. On the very first page of its Reply, BNYM made clear its position that Whitebox had waived any right to be heard regarding quantum:

> Whitebox failed to submit any papers, including opposing declarations, in response to BNYM's declarations regarding the amount to be withheld from distributions or posted by the Opposition Parties on January 9, 2019, in accordance with the applicable scheduling order. Having waived its right to proffer arguments or declarations on this issue, Whitebox should not be heard regarding the amount of any reserve.

Whitebox was on notice – and still did nothing.

In its motion, Whitebox falsely suggests that its January 9 Response to BNYM's Reservation of Rights was a response to BNYM's showing of quantum. Whitebox claims that BNYM's expert declarations were filed "in conjunction with BNYM's Reservation of Rights and did not seek any affirmative relief from the Court" as required by the Procedures Order (defined below, Doc. No. 4647). *Motion of Whitebox Multi-Strategy Partners, L.P. and Certain of its Affiliates for Reconsideration of the Court's Order Precluding Cross-Examination of Certain Witnesses* [Doc. No. 4964] ("WB Br.") ¶¶ 2-3; see also Glenn Aff. ¶ 3. Whitebox is deliberately misrepresenting the record.

First, BNYM's Reservation of Rights properly was submitted in connection with the Order Approving Disclosure Statement and related matters [Doc. No. 4382]. That Order, coincidental with and separate from the Scheduling Order, set January 2 and January 9 deadlines for the filing of and responses to Confirmation Objections (Doc. No. 4382 ¶¶ 16, 18). BNYM's Reservation of Rights states that, in not objecting to the Plan, "BNYM hereby reserves its rights under the [Scheduling] Order to submit briefs, declarations and responsive papers in accordance with the [Scheduling] Order . . . in connection with its rights as against Whitebox . . . under section 19.5 of the Plan" (BNYM Reservation of Rights ¶ 29). It is thus clear that the Reservation itself was not submitted pursuant to the Scheduling Order.

Second, the expert declarations, which do not reference and were not filed "in conjunction with" the Reservation of Rights, were filed on January 2, 2019, expressly "pursuant to" the Scheduling Order (see Doc. Nos. 4600 at 2, 4601 at 2). Contrary to Whitebox's assertions, WB Br. ¶ 3, the Scheduling Order expressly dictated that the declarations were "supporting the amount BNYM contends should either be withheld from distributions to Whitebox . . or posted by Whitebox" (Scheduling Order ¶ 2) and that such "declarations and

supporting exhibits filed by BNYM . . . shall be treated as direct testimony" (id. ¶ 8). Whitebox thus cannot attempt to excuse its non-compliance with this Court's orders by arguing that, one week after they were filed, the declarations were "not 'in support of' or 'in opposition to' any Hearing Matters . . . [and] were not deemed submitted as direct testimony" (WB Br. ¶ 3).

**B. Whitebox Failed To Specify Issues For Cross-Examination**

On January 9, 2019, this Court issued its *Order Regarding Procedures for Attendance, Participation and Observation of January 16, 2019 Hearing Regarding (1) the 9019 Settlement Approval Motion, (2) COFINA Plan of Adjustment Confirmation Motion, and (3) Dispute Regarding Section 19.5 of the Plan* [Doc. No. 4647 ("Procedures Order")]. The Procedures Order required parties, among other things, to identify issues on which they intended to conduct cross-examination:

> The Court will review all declarations that have been submitted in either support of or opposition to the Hearing Matters in advance of the Hearing. All such declarations are deemed submitted as direct testimony. Any proponent of or timely objector to any of the Hearing Matters who contends there is a disputed material factual issue and wishes to cross-examine any declarant or to present live rebuttal testimony at the Hearing must file an Informative Motion identifying the relevant Hearing Matter, the witness or witnesses, the factual issue(s) to which the proposed cross-examination or testimony relates, the subject matter of the testimony and its relevance to the factual issue(s), and the time requested for such examination or testimony, **no later than January 10, 2019, at 12:00 p.m. (Atlantic Standard Time)**.

Procedures Order at 2 (underscore added; the "Cross-Examination Notice Order").

The Cross-Examination Notice Order could not be clearer. The declarations had been submitted in support of BNYM's showing of quantum with respect to the 19.5 Dispute and were deemed direct testimony pursuant to both the Scheduling Order and the Cross-Examination Notice Order. Noon on January 10, 2019 came and went. Whitebox filed nothing.

**C. Whitebox Failed To Mark Exhibits For Cross**

The Procedures Order also required that exhibits to be used in cross-examination be filed:

> Any proponent of or timely objector to any Hearing Matter who wishes to proffer additional exhibits relating to cross-examination or rebuttal testimony is hereby directed to mark, designate, and file such evidentiary materials on CM/ECF **no later than January 14, 2019 at 12:00 p.m. (Atlantic Standard Time).**

Procedures Order at 2 (underscore added).

By this time, Whitebox was already on notice that BNYM took the position that Whitebox waived any right to be heard on the amount at issue (see supra p. 4). Also by this time, Whitebox had taken the depositions of BNYM's experts (Glenn Aff. ¶ 5 (depositions taken January 10, 2019)). Once again, Whitebox took no action with respect to the Court's directive.

**D. Whitebox's Attempt At Self-Help Was Untimely And Inadequate**

Whitebox asserted at the 19.5 Hearing that it "didn't realize" the cross-examination directives in the Procedures Order "existed", nor did it read it or "see it" (Hearing Tr. 165:19-166:2). This beggars belief. BNYM's filings [Doc. Nos. 4681, 4767] put it on ample notice.

This is particularly true with respect to the BNYM's filing in accordance with the Cross-Examination Notice Order [Doc. No. 4681]. In its timely filing, BNYM specifically referenced the Procedures Order (id. at 1) and provided a two and one-half page grid containing the detailed information called for in the Procedure Order's Cross-Examination Notice Order. Upon receipt of this filing, Whitebox was on even further notice that it needed to act.

A different part of the Procedures Order required counsel "who intend to speak at the Hearing" to file an informative motion "stating the names of all attending counsel and identifying the party for which they intend to appear, the Hearing Matters in connection with which they intend to speak, and the location (New York or San Juan) at which they intend to appear" (Procedures Order at 2). Such filings were to be made "no later than January 11, 2019, at 5:00 p.m. (Atlantic Standard Time)" (id.). On this separate point, Whitebox responded [Doc. No. 4705].

On January 14, 2019, Whitebox belatedly filed an "Amended Informative Motion" [Doc. No. 4779], that purported to address cross-examination at the Section 19.5 Hearing. Rather than simply identifying its counsel and the hearing at which they sought to speak, as called for in that section of the Procedures Order, Whitebox's amendment [Doc. No. 4779 ¶ 5] sought to reserve:

> its right to (i) present electronic demonstratives in connection with the 19.5 Dispute; (ii) cross-examine Daniel P. Goldberg and Robert P. Fishman regarding the matters set forth in their declarations date[d] January 2, 2019, which The Bank of New York Mellon filed on January 14, 2019 in support of its position in the 19.5 Dispute.

Whitebox cannot credibly explain why it made this amended filing, if it were truly oblivious to the Cross-Examination Notice Order. In its motion, Whitebox completely omits any mention of the portion of the Procedures Order requiring the identification of counsel and then tries to assert that these two filings were in fact made in response to the Cross-Examination Notice Order (Glenn Aff. ¶ 6, WB Br. ¶ 4). The evidence shows otherwise. First, Whitebox's initial filing was made after 9:00 p.m. on January 10, 2019 [see Doc. No. 4705]; the Cross-Examination Notice Order required filings to have been made by noon that day (Procedures Order at 2). Clearly Whitebox was not attempting to comply with the Cross-Examination Notice Order. Second, in Whitebox's untimely January 14 amended filing, Whitebox made no effort to comply with the Court's directive that it identify "the factual issue(s) to which the proposed cross-examination or testimony relates, the subject matter of the testimony and its relevance to the factual issue(s), and the time requested for such examination or testimony" (Procedures Order at 2). In short, Whitebox's statement at the 19.5 Hearing that it did not comply with the Cross-Examination Notice Order was correct. Its attempts to walk back that admission are not credible. Indeed, even in its motion, Whitebox never sets forth the information called for in the Cross-Examination Notice Order. This Court acted well within its discretion in denying Whitebox's belated request to cross-examine BNYM's witnesses.

## II. THIS COURT'S RULING WAS AN APPROPRIATE RESPONSE TO WHITEBOX'S DISREGARD OF THIS COURT'S ORDERS

This Court's authority to issue the challenged ruling is clear and multi-faceted.

Whitebox cannot show that this Court abused its discretion when it denied Whitebox's belated request to cross-examine. The Court's ruling was evidentiary. The First Circuit has "consistently held" that "a trial judge has wide discretion in the admission or exclusion of opinion evidence. This discretion, expansive in all events, is at maximum girth in the context of a bench trial." N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 468 (1st Cir. 1988) (citations omitted). In N. Heel, the Court emphasized that "District judges, of course, have power, in the exercise of sound discretion, to bar or limit testimony when a party fails to comply fully with valid discovery requests." Id. at 468 n.5. Here, Whitebox failed to "comply fully" not simply with another party's discovery requests, but with clear orders of this Court.

To the extent Whitebox is claiming that the ruling was an inappropriate sanction, this Court has full authority to sanction the disregard of its orders. The First Circuit has held that "disobedience of court orders, in and of itself, constitutes extreme misconduct" and underscored that "[t]his principle applies with undiminished force to scheduling orders." Tower Ventures, 296 F.3d at 46. This is a "well established principle":

> [A]ll orders governing the management of a case are enforceable under pain of sanction for unjustifiable violation. Trial judges have considerable discretion in the selection and imposition of sanctions. We review their actions only for abuse of that discretion. What lies behind the sanctioning power is not merely, or perhaps even principally, the desirability of punishing a party or counsel for dilatory actions or inaction, but the necessity of invocation of an extreme sanction, where justified, in order to deter others from similar conduct.

Barreto v. Citibank, N.A., 907 F.2d 15, 16 (1st Cir. 1990) (citation omitted) (affirming dismissal).

The Bankruptcy Code likewise provides for sanctions. Under 11 U.S.C. § 105(a):

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the

> raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Similarly, Fed. R. Civ. P. 16(f)(1)(C) provides that "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney . . . fails to obey a scheduling or other pretrial order." Rule 37(b)(2)(A)(ii) provides that a "just order" includes one "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence."[3] See Local Civ. R. 16(g) ("If a party fails to comply with . . . [Rule] 16 or this rule, the Court may impose such penalties and sanctions as are just, including those set forth in [Rules] 16(f), 37").

Whitebox admitted that it did not comply with the Cross-Examination Notice Order. Whitebox has not and cannot show that this Court's order should be reconsidered.

## III. WHITEBOX DID NOT SUFFER ANY DUE PROCESS VIOLATION

Whitebox's claim that its due process rights were violated when it was not permitted to cross-examine BNYM's expert witnesses (WB Br. ¶ 15) is without merit. Whitebox ignored clear court orders. No right to process sanctions such conduct.

Moreover, even had this Court's ruling been in error – it was not – any error would be harmless. The testimony at issue was expert testimony at a hearing, not factual evidence before a fact-finder. The testimony was provided to assist the Court in making a discretionary decision concerning the amount to be withheld or posted. This is analogous to the situation in U.S. v. Caribe-Garcia, 125 F. Supp. 2d 19 (D.P.R. 2000), aff'd in pertinent part sub nom. U.S. v.

---

[3] Bankruptcy Rule 9014 incorporates Rule 7037 for contested matters. While it does not incorporate Rule 7016, the Court's authority to impose sanctions for non-compliance with its orders is clear, as set forth above. Tower Ventures, 296 F.3d at 47 (sanctions for disregarding scheduling order are appropriate, even if adversary was not prejudiced, due to "judiciary's strong institutional interest in ensuring that litigants honor court orders").

Nelson-Rodriguez, 319 F.3d 12, 62 (1st Cir. 2003). In that case, a defendant argued that he would suffer a due process violation were he not permitted to cross-examine the probation officer who drafted his pre-sentencing report. 125 F. Supp. 2d at 20. The Court held that there was no violation because a "presentence report contains a sentencing *recommendation.* The Court is, of course, not bound to follow what the probation officer advises in his report. The final sentencing determination will be made after the Court hears arguments and objections to the presentence report in open court." Id. at 21 (emphasis in original). Cf. Delta Eng'g Corp. v. Scott, 322 F.2d 11, 20 (5th Cir. 1963) (cited at WB Br. ¶ 5) (faulting limitation on cross-examination of expert in jury trial on central liability issue of defect).

Likewise here, the Court is making its decision regarding the amount of any holdback "after the Court hear[d] arguments and objections to [BNYM's submissions] in open court." Whitebox cannot show any due process violation.

This is particularly true because Whitebox admitted that it did not comply with the Cross-Examination Notice Order and because this Court nevertheless provided ample opportunity for Whitebox to raise its concerns about BNYM's experts. Notably, the Court's ruling did not preclude Whitebox from making its points challenging BNYM's experts' during oral argument, nor did Whitebox make an offer of proof, seek to *voir dire* during BNYM's presentation or offer the BNYM experts' depositions during Whitebox's own case, or call its own witnesses. Even though BNYM referenced the expert declarations during opening argument (Hearing Tr. 142:3-4, 145:6-11), Whitebox said nothing in response during its opening. During its closing argument, Whitebox raised challenges to BNYM's evidence, including characterizing the expert analyses as "theoretical" and "hypothetical" and urging the Court to disregard them (see id. at 176:8-177:13). Whitebox was afforded more than sufficient due process.

## IV. WHITEBOX DOES NOT AND CANNOT SUPPORT ITS REQUEST TO REOPEN

The First Circuit recently reiterated the standard for reopening a record:

> A district court's decision to reopen the record "turns on flexible and case-specific criteria." These criteria include "whether (1) the evidence sought to be introduced is especially important and probative; (2) the moving party's explanation for failing to introduce the evidence earlier is bona fide; and (3) reopening will cause no undue prejudice to the non-moving party."

Anderson v. Brennan, 911 F.3d 1, 13 (1st Cir. 2018) (citations omitted) (affirming decision not to reopen record). Whitebox discusses none of these factors. Each weighs against Whitebox.

First, Whitebox has made no showing whatsoever that the evidence it would elicit from BNYM's experts is "especially important and probative." Whitebox admits that its arguments were made and responded to during oral argument, but weakly posits that "the Court would benefit from hearing the Declarants themselves defend their methodology and conclusions when challenged to do so on cross-examination by Whitebox" (WB Br. ¶ 21). In the absence of specifics, and with the admission that it already made its arguments to the Court, Whitebox cannot make the required showing.

Second, Whitebox cannot show that it has a "bona fide" explanation for failing to introduce the evidence earlier. Whitebox admitted that it failed to read the Cross-Examination Notice Order. In its motion, the explanations Whitebox now proffers are dubious at best. It says it did comply with the order, but disguises the limited extent of its compliance – relating only to the part of the Procedures Order requiring identification of counsel to be heard (see supra pp. 7-8). It claims that BNYM had not filed anything by January 10 that "supported" its position or was considered direct evidence, negating any need to comply with the Cross-Examination Notice Order, while completely omitting any mention of the prior Section 19.5 Scheduling Order that belies all aspects of this argument (see supra pp. 5-6). If Whitebox were serious about challenging this Court's ruling, it would have taken appropriate steps to protect its interests.

At the hearing itself, Whitebox could have sought practical and legal redress (see supra, p. 11). It was required to give this Court a timely opportunity to reconsider or at a minimum preserve its objection to the Court's order while there was an opportunity for the Court to reconsider it. Whitebox's strategic failure to do so, coupled with the failure to make even an offer of proof, waived any right it has to seek reconsideration or review now. United States v. Carpenter, 494 F.3d 13, 21 (1st Cir. 2007) ("'The preservation requirement has two components: alerting a trial judge to a party's objection to a ruling or to the admission of evidence and adequately explaining the basis for that objection. Thus advised, the trial judge can decide what course of action to take to assure, so far as possible, the legal correctness of the trial proceedings.") (citing Estate of Keatinge v. Biddle, 316 F.3d 7, 15 (1st Cir. 2002)); FRE 103(a)(2) (party may claim error "only" where "if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context"). Indeed, Whitebox rested its case without protest (Hearing Tr. 166:13-15), not even mentioning the issue in closing.

Whitebox also could have immediately sought reconsideration, while counsel and witnesses were all in Puerto Rico. Or Whitebox could have moved the next day for reconsideration. Instead, Whitebox didn't file its motion until January 29, 2019, and made no apparent effort to expedite consideration of its motion.

Finally, Whitebox utterly ignores the prejudice to BNYM and other parties that reopening the record will cause. The distribution of all funds held by BNYM is an integral part of the Plan. BNYM's obligations to receive and then disburse funds to bondowners are contained in the very same section that governs the Whitebox dispute: Section 19.5. It is thus imperative that BNYM know how much to hold back before it undertakes the distribution process – and the Plan

provided the mechanism for that determination as part and parcel of the confirmation process. Whitebox is thus deliberately and without basis interfering with that process.

With this motion, Whitebox is trying to wrest control of the Hearing and the distribution process away from the Court and the other parties. Why else would it wait nearly two weeks to move for reconsideration? Whitebox's inexcusable delay, with its consequent prejudice, should not be countenanced. Its motion should be denied.

## V. THE INTERESTS OF JUSTICE WARRANT DENIAL OF RECONSIDERATION

To the extent the factors set forth in United States v. Roberts, 978 F.2d 17, 21-22 (1st Cir. 1992), apply here (see WB Br. ¶ 13), they weigh heavily in favor of denying reconsideration. Indeed, Whitebox has not attempted to show a "likelihood of success." 978 F.2d at 23.

## VI. WHITEBOX IS NOT HARMED BY A HOLDBACK; HENCE THE EVIDENTIARY ORDER, EVEN IF WRONG (IT WAS RIGHT), IS HARMLESS

Let us assume arguendo that Whitebox should have been permitted to flout this Court's orders with impunity and cross-examine BNYM's witnesses. Any such cross-examination would go only to quantum and only after determination of BNYM's entitlement to a holdback (see BNYM's filings (Doc. Nos. 4657, 4751)). Whitebox cannot show any need for reconsideration because it will not be harmed by any reserve.

First, BNYM is good for the money. See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Trust Co., No. 17-cv-5916 (AJN), 2018 WL 3849840, *2 (S.D.N.Y. Aug. 10, 2018) (Nathan, J.) ("even if the Court were to ultimately decide in Royal Park's favor – Royal Park does not allege that Deutsche Bank would be unable to repay the Covered Trusts if the Court ordered such repayment"); Royal Park Invs. SA/NV v. U.S. Bank Nat'l Ass'n, No. 14-cv-2590 (VM), 2018 WL 6920768, *9 (S.D.N.Y. Nov. 30, 2018) (Marrero, J.) (no harm from continuing current payments where trustee "is part of one of the largest banks in the United States, and it

maintains sufficient coffers to reimburse all legal expenses charged to the trusts if necessary"); Royal Park Invs. SA/NV v. HSBC Bank USA, Nat'l Ass'n, No. 17-cv-7684 (VEC), Doc. No. 64 (S.D.N.Y. Aug. 2, 2018) (Caproni, J.) ("Defendant is a sizeable entity with 'deep pockets' from which Plaintiff would undoubtedly be able to recover a judgment should it prevail in this action at some point in the future"); PIMCO Absolute Return Strategy 3d Offshore Fund Ltd. v. Wells Fargo Bank, Nat'l Ass'n, No. 654743/2017 (N.Y. Sup. Ct. Nov. 13, 2017) (transcript 18:18-21: no harm to plaintiffs because the trustee is "going to be around if [plaintiffs] succeed" on the merits of the underlying action); see also *Order Granting Interpleader, Staying Pending and Future Litigation Against The Bank of New York Mellon, as Trustee, Pursuant to 28 U.S.C. § 2361, and Granting Related Relief*, Adv. Pro. No. 17-133-LTS (D.P.R.), Doc. No. 110, at ¶ 9 ("From time to time, BNYM shall be entitled to reserve for, or pay, its reasonable fees and expenses, whether or not due and owing, from the Disputed Funds").

Second, BNYM has offered three protections that ensure that Whitebox will suffer no harm should the reserve ultimately be overfunded, namely: (i) BNYM's undertaking to return any unused funds; (ii) BNYM's agreement that Whitebox may challenge the reasonableness of BNYM's fees and expenses, subject to appropriate procedures; and (iii) Whitebox's ability, if it wins on the merits, to argue that BNYM's conduct was such that BNYM is not entitled to retain its fees and expenses.

Because there is no harm to Whitebox, there is no call to reconsider the Court's order.

## CONCLUSION

For the reasons set forth herein, the Title III Court should deny Whitebox's motion for reconsideration, and grant BNYM such further relief as the Court deems just and proper.

Dated: February 6, 2019
San Juan, Puerto Rico

Respectfully submitted,

SEPULVADO, MALDONADO & COURET

*/s/ Albéniz Couret-Fuentes*
Elaine Maldonado-Matías
USDC-PR Bar No. 217309
Albéniz Couret-Fuentes
USDC-PR Bar No. 222207
José Javier Santos Mimoso
USDC-PR Bar No. 208207
304 Ponce de León Ave. – Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile: (787) 294-0073
Email: emaldonado@smclawpr.com
Email: acouret@smclawpr.com
Email: jsantos@smclawpr.com

REED SMITH LLP

*/s/ Eric A. Schaffer*
Eric A. Schaffer
Luke A. Sizemore
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile : (412) 288-3063
Email : eschaffer@reedsmith.com
Email : lsizemore@reedsmith.com

Louis M. Solomon
C. Neil Gray
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450
Email: lsolomon@reedsmith.com
Email: cgray@reedsmith.com

Kurt F. Gwynne
1201 N. Market Street, Suite 1500
Wilmington, DE 19801
Telephone: (302) 778-7550
Facsimile: (302) 778-7575
Email: kgwynne@reedsmith.com

*Counsel to The Bank of New York Mellon,*
*as indenture trustee*