# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re* | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |
| *In re* | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3284-LTS |
| PUERTO RICO SALES TAX FINANCING CORPORATION ("COFINA"), | |
| Debtor. | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are (i) The Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

**OBJECTION OF WHITEBOX MULTI-STRATEGY PARTNERS, L.P. AND CERTAIN OF ITS AFFILIATES TO URGENT MOTION OF THE BANK OF NEW YORK MELLON, AS TRUSTEE, FOR (I) EXPEDITED CONSIDERATION OF THE MOTION OF WHITEBOX MULTI-STRATEGY PARTNERS, L.P. AND CERTAIN OF ITS AFFILIATES FOR RECONSIDERATION OF THE COURT'S ORDER PRECLUDING THE CROSS-EXAMINATION OF CERTAIN WITNESSES, OR, ALTERNATIVELY (II) CLARIFICATION THAT BNYM IS ENTITLED TO WITHHOLD WHITEBOX'S DISTRIBUTIONS PENDING A DETERMINATION OF THE 19.5 DISPUTE**

To the Honorable United States District Judge Laura Taylor Swain:

Whitebox Multi-Strategy Partners, L.P. and certain of its affiliates (collectively, "Whitebox"), respectfully submit this objection (the "Objection") to the *Urgent Motion of the Bank of New York Mellon, As Trustee, for (I) Expedited Consideration of the Motion of Whitebox Multi-Strategy Partners, L.P. and Certain of its Affiliates for Reconsideration of the Court's Order Precluding the Cross-Examination of Certain Witnesses, or, Alternatively (II) Clarification that BNYM is Entitled to Withhold Whitebox's Distributions Pending a Determination of the 19.5 Dispute* [Dk. No 5061] (the "Urgent Motion").[2]

Whitebox respectfully requests that the Court deny the Urgent Motion in part for the reasons set forth below.

**PRELIMINARY STATEMENT**

On just over 12-hours' notice to Whitebox—and without meaningfully conferring as required by the Case Management Order (defined below)—The Bank of New York Mellon ("BNYM") filed the Urgent Motion requesting that the Court (i) revoke Whitebox's right to file a reply memorandum in connection with the Reconsideration Motion (defined below), (ii) take the Reconsideration Motion under submission without a hearing, and (iii) either (a) enter an order resolving the 19.5 Dispute and Reconsideration Motion before February 8, 2019 or

---

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Urgent Motion.

(b) determine "that the Plan and Confirmation Order authorize BNYM to withhold Whitebox's distributions pending a final determination of the 19.5 Dispute." Urgent Motion at ¶ 9.

The Urgent Motion should be denied. Although Whitebox consents to the Court taking the Reconsideration Motion under submission after it has been fully briefed, the Court should not deprive Whitebox of the opportunity to file a reply memorandum, as the Case Management Order clearly contemplates.

Further, the Court should not read language into section 19.5 of the Plan language that permits BNYM to withhold distributions in advance of an adjudication of the dispute that simply does not exist in the text of that section. BNYM has not met its burden of proof to permit the Court to issue a *de facto* injunction. On the other hand, if the Court deems it appropriate to maintain the status quo pending the Court's determination of the matter, Whitebox, a fund with over $5.8 billion of assets under management, would be willing to reserve $32.5 million in assets subject to further order of the Court.

## RELEVANT BACKGROUND

1. On the afternoon of January 17, 2019, the Court held a hearing on the 19.5 Dispute, which was fully briefed. At the hearing, BNYM objected—based on Whitebox's alleged procedural default—to any cross-examination of Daniel P. Goldberg and Robert M. Fishman (together, the "Declarants"), who each submitted declarations and expert reports in connection with the 19.5 Dispute. Despite the fact that time had been allotted for Whitebox to cross-examine the Declarants, and despite the fact that BNYM neither raised its objection in advance of the hearing nor complained that the alleged procedural deficiency prejudiced BNYM in any way, the Court denied Whitebox the opportunity to cross-examine the Declarants (the "Cross Examination Order").

2. On January 29, 2019, Whitebox filed the *Motion of Whitebox Multi-Strategy Partners, L.P. and Certain of its Affiliates for Reconsideration of the Court's Order Precluding the Cross-Examination of Certain Witnesses* [Dkt. No. 4964] (the "Reconsideration Motion") seeking reconsideration of the Cross Examination Order.

3. In accordance with the Court's case management order [Dkt. No. 4866] (the "Case Management Order"), Whitebox filed a notice of hearing in connection with the Reconsideration Motion [Dkt. No. 4966] (the "Notice of Hearing") setting forth both an objection deadline (February 26, 2019 at 4:00 p.m. [AST]) and a hearing date for the Reconsideration Motion (March 13, 2019 at 9:30 a.m. [AST]) or on any other date and time deeded appropriate by the Court.

4. At 8:30 p.m. on February 5, 2019—the night before BNYM filed the Urgent Motion—BNYM advised Whitebox by e-mail that it intended to file the Urgent Motion on February 6, 2019. BNYM proposed to meet and confer by phone the next morning at 9:00 a.m. Whitebox's lead counsel, Andrew K. Glenn, replied approximately one hour later, advising BNYM that he would be in court on the morning of February 6, 2019 and that he would respond further after he had a chance to confer with Whitebox.

5. At approximately 9:30 a.m. AST on February 6, 2019, BNYM replied that it did "not feel it [could] wait until this afternoon to discuss this matter with [Whitebox]." At approximately 11:30 a.m. AST, BNYM filed the Urgent Motion without having met and conferred with Whitebox in an attempt to resolve or narrow the issues.

## OBJECTION

**A.     Whitebox is Entitled to File a Reply in Connection with the Reconsideration Motion.**

6. The Reconsideration Motion is governed by the Case Management Order, which contemplates that reply memoranda will be filed as a matter of course—*i.e.*, without leave of the

Court. Specifically, Section III(k) expressly provides the following mechanism for calculating reply deadlines:

> The deadline to file Replies, joinders to an Objection, or any Statement shall be (i) for all parties other than the Debtors and any statutory committee, 4:00 p.m. (Atlantic Standard Time) on the date that is eight (8) calendar days before the applicable hearing date, (ii) for the Debtors and any statutory committee, 4:00 p.m. (Atlantic Standard Time) on the date that is seven (7) calendar days before the applicable hearing date, or (iii) any date and time otherwise ordered by the Court.

7. In accordance with the Case Management Order, movants routinely file reply memoranda as a matter of course. *See, e.g.*, *Ambac Assurance Corporation's Reply in Further Support of Its Motion for Entry of Order Authorizing Discovery Under Bankruptcy Rule 2004*, Dkt. No. 1979, Case No. 17-03283-LTS.[3] By contrast, unlike replies, "[s]ur-replies shall not be permitted or considered unless authorized by the Court." Case Management Order at Section III(L).

8. Nevertheless, misleadingly implying that replies are not permitted as a matter of course, BNYM requests that the Court "*confirm* that no replies may be submitted" in connection with the Reconsideration Motion. Urgent Motion at ¶ 18 (emphasis added). BNYM's request should be rejected, and Whitebox should be permitted to submit a reply in further support of its Motion for Reconsideration.

9. First, BNYM contends that Whitebox should not be permitted to submit a reply because the Notice of Hearing "does not provide for filing replies." *Id*. That is irrelevant. The

---

[3] *See also Reply of Puerto Rico Sales Tax Financing Corporation to Response and Reservation of Rights of Lehman Brothers Holdings Inc. With Respect to Rejection of Debt Service Deposit Agreement*, Dkt. No. 4454, Case No. 17-03283-LTS; *Reply to Opposition of Motion for Relief from Stay*, Dkt. No. 4845, Case No. 17-03283-LTS.

Case Management Order does not require that reply deadlines be set forth in a notice of hearing, and BNYM does not point to any such requirement.

10. Second, BNYM asserts that Rule 7(c) of the Local Rules for the United States District Court for the District of Puerto Rico (the "Local District Court Rules") "permits replies only with prior leave of the Court." *Id*. That may be so, but the Local District Court Rules are inapplicable. As an initial matter, the Case Management Order incorporates the Local Bankruptcy Rules, not the Local District Court Rules, and the Local Bankruptcy Rules do not require leave to file replies. In any event, even assuming for the sake of argument that the Local District Court Rules did apply, any purported restriction on the right to file a reply would be deemed "suspen[ded]" by the Case Management Order. Specifically, Local Rule 1(f) states that:

> The Court may suspend or modify the requirements or provisions of any of these Rules in a particular case by written order. When a judge of this Court issues any order in a specific case which is not consistent with these Rules, that order shall constitute a suspension of these Rules for that case and only to the extent that it is inconsistent with these Rules.

11. Third, BNYM claims that "a written reply . . . would not materially advance the Court's understanding of the issues raised by the Reconsideration Motion." That self-serving claim should also be rejected. The gravamen of the Motion for Reconsideration is that, in the interest of justice, Whitebox's should not be deprived of the opportunity to cross-examine BNYM's experts based on a purported and, in any event, harmless procedural default. Depriving Whitebox of the opportunity to reply to BNYM's opposition would further run roughshod over Whitebox's procedural rights and compound the very prejudice that Whitebox seeks to remedy. In any event, whether a reply would "materially advance the Court's understanding" of the issues cannot be determined before BNYM files its opposition.

12. This is especially concerning as BNYM could have asked the court to set an expedited schedule to decide the reconsideration motion as early as last week.[4] The emergency that necessitates the Urgent Motion is entirely of BNYM's own making. Section I(h) of the Case Management order is designed to protect parties from this sort of abusive treatment: "All Urgent Motions must be proceeded by reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court in [an] Urgent Motion request." Although BNYM "certifie[d]" to the court that it engaged in such good-faith communications with Whitebox, it did not in fact do so. Urgent Motion at ¶ 22. Counsel to BNYM notified Whitebox last night that it planned to file the Urgent Motion, offered to speak at 10:00 a.m. AST this morning and, when notified that counsel to Whitebox would be appearing in court for another matter at that time, filed the Urgent Motion a few hours later.

13. If the relief BNYM seeks is forced upon Whitebox without it having had any meaningful notice, it would only compound the prejudice Whitebox has already suffered. This supposed emergency—whether intentionally manufactured to achieve an unfair advantage, or the result of BNYM's failure to exercise reasonable diligence—cannot justify short-circuiting Whitebox's right to fully brief the Reconsideration Motion.

**B.    Whitebox Consents to the Court Taking the Reconsideration
Motion Under Submission Without a Hearing.**

14. After the Reconsideration Motion is fully briefed (including Whitebox's reply), Whitebox consents to the Court taking it under submission without a hearing unless it would assist the Court.

---

[4] This, of course, is true of BNYM's arguments concerning section 19.5 of the Plan, as well: BNYM has known for *weeks* that Section 19.5 does not contemplate a holdback prior to the court's decision regarding the 19.5 Dispute at confirmation.

**C.      There Is No Basis to Withhold Whitebox's Plan Distributions.**

15.     BNYM alternatively asks the Court to allow BNYM to withhold Whitebox's distributions under the Plan or compel Whitebox to post cash collateral with BNYM pending the Court's determination of the 19.5 Dispute. Urgent Motion at ¶¶ 19-20. Nothing in the Plan or Confirmation Order, however, allows BNYM to withhold distributions from Whitebox unless and until the Court has determined that BNYM may do so under Section 19.5 of the Plan. The Court has not made that determination.

16.     BNYM's request presupposes that BNYM will prevail in the 19.5 Dispute and is, therefore, tantamount to a request for a preliminary injunction to preserve the status quo and freeze Whitebox's distributions. *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir. 1995) ("The purpose of a preliminary injunction is to preserve the status quo [and freeze] an existing situation"). BNYM has not even attempted to show—nor can it show—that it is entitled to this "extraordinary and drastic remedy" by establishing that "(1) [it] would suffer irreparable injury if the injunction were not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on a defendant; (3) that [it] has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction." *In re R&G Fin. Corp.*, 441 B.R. 401, 408-410 (Bankr. D.P.R. 2010).

17.     Finally, Whitebox is in no way seeking to "undercut the Plan" and or "take advantage" of any "deliberate delay in moving for reconsideration." First, Whitebox is not seeking to "undercut" the Plan because nothing in the Plan provides for the withholding of Whitebox's distributions before the Court has adjudicated the 19.5 Dispute. Second, there was no delay—let alone any "deliberate delay"—in Whitebox's moving for reconsideration of the Court's interlocutory order. *See John Simmons Co. v. Grier Bros. Co.*, 258 U.S. 82, 90-91

(1922) (reconsideration of an interlocutory order "may be sought at any time before final decree, provided due diligence be employed and a revision be otherwise consonant with equity.") (emphasis added). Third, it is the delay by **BNYM** that created this purported "emergency." BNYM has known since before the confirmation hearing, when the Debtors filed the proposed Plan with the Court, that if the Court confirmed the Plan before deciding the 19.5 Dispute Whitebox would be entitled to distributions like any other bondholder. At the latest, BNYM could have raised this issue with the Court on January 29, 2019, when Whitebox filed its reconsideration motion, which would have obviated the need to file an "urgent" motion seeking to curtail Whitebox's procedural rights on less than a day's notice. The Court should deny BNYM's motion for this additional reason.

18. Nonetheless, if the Court determines that some interim relief is needed, Whitebox, a fund with over $5.8 billion under management, is willing to set aside $32.5 million, the amount that BNYM has requested, pending further order of the Court on the Section 19.5 dispute.

19. BNYM seeks Whitebox's cooperation between now and the end of the week. Such a vague request would invite further disputes about the extent of such cooperation; nor is there any guarantee that DTC and other third parties would cooperate. Rather than risking further litigation and delaying further distributions to any parties, this solution would strike the appropriate temporary balance to maintain the status quo. This proposal is for the Court's convenience and is not a concession that BNYM's request is meritorious.

## CONCLUSION

Accordingly, for the foregoing reasons, Whitebox respectfully requests that the Court deny the Urgent Motion.

Dated: February 6, 2019
San Juan, Puerto Rico

**KASOWITZ BENSON TORRES LLP**

By: /s/ *Andrew K. Glenn*
    Andrew K. Glenn (admitted *pro hac vice*)
    Trevor J. Welch (admitted *pro hac vice*)
    Shai Schmidt (admitted *pro hac vice*)
    1633 Broadway
    New York, New York 10019
    Telephone: (212) 506-1700
    Facsimile: (212) 506-1800
    Email: aglenn@kasowitz.com
           twelch@kasowitz.com
           sschmidt@kasowitz.com

**ARROYO & RIOS LAW OFFICES, P.S.C.**

By: /s/ *Moraima S. Ríos Robles*
    Moraima S. Ríos Robles
    (USDC-PR Bar No. 224912)
    1353 Ave. Luis Vigoreaux
    Guaynabo, P.R. 00966
    Telephone: (787) 522-8080
    Facsimile: (787) 523-5696
    Email: mrios@arroyorioslaw.com

*Attorneys for Whitebox Multi-Strategy Partners, L.P.*
*and its Above-Captioned Affiliates*

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Moraima S. Ríos Robles*
Moraima S. Ríos Robles
(USDC-PR Bar No. 224912)
1353 Ave. Luis Vigoreaux
Guaynabo, P.R. 00966
Telephone: (787) 522-8080
Facsimile: (787) 523-5696
Email: mrios@arroyorioslaw.com