# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>                   Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>                  Debtor. | PROMESA Title III<br><br>Case No. 17 BK 4780-LTS<br><br>(This court filing relates only to Case No. 17 BK 4780-LTS) |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

NATIONAL PUBLIC FINANCE GUARANTEE
CORPORATION, ASSURED GUARANTY
CORP., ASSURED GUARANTY MUNICIPAL
CORP., and SYNCORA GUARANTEE INC.,

      Movants,

          v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al*, and PUERTO RICO ELECTRIC POWER
AUTHORITY,

      Respondents.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al*, and PUERTO RICO ELECTRIC POWER
AUTHORITY,

      Movants on the Motion to Compel,

          v.

NATIONAL PUBLIC FINANCE GUARANTEE
CORPORATION, ASSURED GUARANTY
CORP., ASSURED GUARANTY MUNICIPAL
CORP., and SYNCORA GUARANTEE INC.,

      Respondents.

**URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD, AS REPRESENTATIVE OF DEBTOR, TO COMPEL PRODUCTION
OF DOCUMENTS FROM MOVANTS RELATING TO THEIR MOTION FOR
<u>RELIEF FROM AUTOMATIC STAY</u>**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

JURISDICTION AND VENUE .......................................................................... 3

BACKGROUND .................................................................................................. 3

    Prior Litigation Informs the Relevant Factors Litigants Must Show the Court in This
Contested Matter ................................................................................................ 3

    The Current Discovery Dispute ...................................................................... 4

    Urgency of This Motion ................................................................................... 7

RELIEF REQUESTED ........................................................................................ 8

    Good Cause Supports the Relief Requested ................................................. 8

    The Requested Loss Reserve Information Is Relevant and Not Privileged ........................... 10

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bank of China v. St. Paul Mercury Ins. Co.*,
No. 03 Civ. 9797(RWS), 2004 WL 2624673 (S.D.N.Y. Nov. 18, 2004) ...............................13

*Broadrock Gas Services, LLC v. AIG Specialty Insurance Co.*,
3927(AJN)(MHD), 2015 WL 916464 (S.D.N.Y. Mar. 2, 2015) .............................................12

*Bryan Corp. v. Chemwerth, Inc.*,
296 F.R.D. 31 (D. Mass. 2013) .............................................................................................12

*Cusumano v. Microsoft*,
162 F.3d 708 (1st Cir. 1998) ..................................................................................................15

*Diaz-Garcia v. Surillo-Ruiz*,
45 F. Supp. 3d 163 (D.P.R. 2014) ............................................................................................8

*Fid. & Deposit Co. of Md. v. McCulloch*,
168 F.R.D. 516 (E.D. Pa. 1996) .............................................................................................11

*Fin. Oversight & Mgmt. Bd. For P.R. v. Ad Hoc Grp. of PREPA Bondholders (In
re Fin. Oversight & Mgmt. Bd. For P.R.)*,
899 F.3d 13 (1st Cir. 2018) ..............................................................................................1, 4, 8

*Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*,
623 A.2d 1099 (Del. Super. Ct. 1991) ...................................................................................11

*In re 620 Church St. Bldg. Corp.*,
299 U.S. 24 (1936) ...................................................................................................................9

*In re Bankers Trust Co.*,
61 F.3d 465 (6th Cir. 1995) ..............................................................................................14, 16

*In re Elmira Litho, Inc.*,
174 B.R. 892 (Bankr. S.D.N.Y. 1994) .....................................................................................9

*In Re Grand Jury Subpoena No. 2013r00691-009*,
201 F. Supp. 3d 767 (W.D.N.C. 2016) ..................................................................................12

*In re Raytheon Sec. Litig.*,
218 F.R.D. 354 (D. Mass. 2003) ............................................................................................12

*In re Subpoena Served upon Comptroller of Currency, and Sec'y of Bd. of
Governors of the Fed. Reserve Sys.*,
967 F.2d 630 (D.C. Cir. 1992) ........................................................................14

*Leksi, Inc. v. Fed. Ins. Co.*,
129 F.R.D. 99 (D.N.J. 1989) ..........................................................................11

*Lluberes v. Uncommon Prods., LLC*,
663 F.3d 6 (1st Cir. 2011) ..............................................................................12

*Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P. R.*,
248 F.3d 29 (1st Cir. 2001)............................................................................15

*Saint-Jean v. Emigrant Mortg. Co.*,
11-CV-2122 (SJ), 2016 WL 11430775 (E.D.N.Y. May 24, 2016) .........................13

*Skytec, Inc. v. Logistic Sys.*,
Civ. No. 15-2104-BJM, 2018 WL 4372726 (D.P.R. Sept. 12, 2018)......................8

*Syncora Guarantee Inc. v. EMC Mortg. Corp.*,
No. MC 13–80037, 2013 WL 1208936 (E.D. Cal. Mar. 25, 2013) .........................13

*Union Carbide Corp. v. Travelers Indem. Co.*,
61 F.R.D. 411 (W.D. Pa. 1973) .....................................................................11

*United States v. Textron Inc. & Subsidiaries*,
577 F.3d 21 (1st Cir. 2009).............................................................................12

*Wal-Mart P. R., Inc. v. Zaragoza-Gomez*,
152 F. Supp. 3d 67 (D.P.R. 2016)..................................................... 11, 14, 15-16

## STATUTES/OTHER AUTHORITIES

11 U.S.C. § 362(d)(1) ...................................................................................4

PROMESA § 306(a) ......................................................................................3

PROMESA § 307(a) ......................................................................................3

Maryland Cod Ann., Ins. §2-209(g)..................................................................13

NY Pub Off L § 87(2)(d) ...............................................................................13

Fed. R. Civ. P. 26(b) .....................................................................................8

Fed R. Civ. P. 37(c) .....................................................................................15

Fed. R. Bankr. P. 7026..................................................................................16

Fed. R. Bankr. P. 7034...................................................................................................................16

Fed. R. Bankr. P. 9014...................................................................................................................16

To the Honorable United States Magistrate Judge Judith G. Dein:

The Financial Oversight and Management Board (the "Oversight Board"), as representative for debtor Puerto Rico Electric Power Authority ("PREPA") pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, codified at 48 U.S.C. §§ 2101-2241 ("PROMESA"), respectfully submits this urgent motion (the "Urgent Motion") to compel Assured Guaranty Municipal Corporation and Assured Guaranty Corporation (both together, "Assured"), National Public Finance Guarantee Corporation ("National"), and Syncora Guarantee Incorporated ("Syncora," and together with Assured and National, "Movants"), to produce documents concerning their alleged collateral at various times relevant to Movants' Receiver Motion (defined below).

## INTRODUCTION

1.      This Urgent Motion arises out of Movants' refusal to produce documents directly relevant to the core statutory basis for their Receiver Motion:  the extent, if any, to which the value of Movants' alleged collateral has diminished since the filing of PREPA's Title III case.[2]

2.       In ruling on the appeal from the original receiver motion, the United States Court of Appeals for the First Circuit (the "First Circuit") made it abundantly clear that, on remand, a party moving for relief from the automatic stay on the ground of lack of adequate protection must demonstrate that its collateral is declining in value.  *See Fin. Oversight & Mgmt. Bd. For P.R. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd. For P.R.)*, 899 F.3d 13, 23 (1st Cir. 2018) (the "Remand Decision").  Movants claim in their moving papers on the Receiver Motion that the "value of this collateral is being impaired by PREPA's

---

[2] The Oversight Board issued its request for production of these documents back in October.  Attached hereto as **Exhibit A** is National's formal response, which is substantially the same as the formal responses served by Assured and Syncora.

1

mismanagement" (Receiver Motion at 29), yet they have failed to produce any evidence, either in their moving papers or through subsequent discovery, alleging or showing how they have valued their collateral at any time, whether on July 2, 2017 (the "Petition Date"), now, or any time in between.

3.      The Oversight Board is entitled to discovery on the issue of collateral value the First Circuit rightly found to be essential to the requested relief, and believes the documents at issue in this Urgent Motion will show Movants *cannot* demonstrate diminution in the value of their collateral at any time during the pendency of the PREPA case.[3]  At the very least, the documents will be probative of facts material to Movants' demand for adequate protection. Specifically, Movants' purported collateral security is a pledge of "Revenues" minus "Current Expenses" (terms defined in the underlying Trust Agreement).  That difference was negative for years leading up to the Petition Date and remains negative today.  Accordingly, the Oversight Board and PREPA believe the value of Movants' collateral is zero, remains zero, and cannot, as a matter of law, be diminishing.[4]  The documents subject to this Urgent Motion are directly relevant to this central issue as they relate to Movants' collateral, and PREPA is entitled to see how Movants characterize and assess their alleged secured claims in their own documents not part of their litigation papers.

---

[3] The Oversight Board will raise other independent arguments in its opposition that will show the Court why the Receiver Motion should be denied.

[4] Movants have previously conceded that net revenues, *i.e.*, the difference between "Revenues" and "Current Expenses," are negative.  *See* Brief for Movants-Appellants, Case No. 17-2079 (1st Cir. Feb. 6, 2018), Doc. No. 00117252666, at 11 (noting that "Even before the hurricanes, the Oversight Board and PREPA projected that PREPA's revenues would decrease . . . to the point where current rates would be inadequate to cover its operating costs" and "PREPA does not expect to have any excess revenues after paying the PREPA Current Expenses").

## JURISDICTION AND VENUE

4.     The United States District Court for the District of Puerto Rico (the "Court") has

subject matter jurisdiction over this matter pursuant to PROMESA § 306(a).

5.     Venue is proper pursuant to PROMESA § 307(a).

## BACKGROUND

### *Prior Litigation Informs the Relevant Factors Litigants Must Show the Court in This Contested Matter*

6.     Movants are "monoline" municipal bond insurers who hold bonds, insure bonds,

and have made insurance payments to holders of bonds (and thus assert subrogation rights as to

such bonds) issued by PREPA.  *See* Dkt. 975, Ex. 2 at 2 ¶¶ 4-6.

7.     On October 3, 2018, Movants filed the Motion of National Public Finance

Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and

Syncora Guarantee Inc. for relief from the Automatic Stay to Allow Movants to Enforce Their

Statutory Right to Have a Receive Appointed, Dkt. 975 (the "Receiver Motion").

8.     The Receiver Motion repeatedly asserts Movants are entitled to relief from the

automatic stay to seek a receiver because the value of their collateral is diminishing and/or has

been impaired.  *See* Receiver Motion at 29 ("The value of [Movants'] collateral is being

impaired by PREPA's mismanagement."); *id.* at 31 ("PREPA's pattern of *mismanagement* has

impaired the value of [Movants'] collateral.").

9.     The Receiver Motion was filed following the Remand Decision, which reversed

on one issue, namely whether PROMESA § 305 bars stay relief, an earlier opinion and order of

the Court that denied a prior effort by Movants (and others) to lift the automatic stay to seek

appointment of a receiver for PREPA.  Dkt. 299.

10.     In issuing the Remand Decision, the First Circuit set the framework for the instant Receiver Motion.  The First Circuit held that to justify lifting the stay under Bankruptcy Code section 362(d)(1), Movants have the burden "to make an initial showing of cause."  *In re Oversight Board*, 899 F.3d at 22-23.  The First Circuit made clear that to do this "one of the predicate legal issues was whether and to what extent the bondholders possessed property interests," and that the Court had to decide "the pre-petition value of [Movants]' collateral (if any exists), whether the [Movants] face a threat of uncompensated diminution in such value, whether the [Movants] are seeking the protection of existing collateral or, instead, the creation of new collateral, and what, if any, adequate protection PREPA can offer short of a receiver being appointed to manage it if protection is warranted."  *Id.* at 23.

11.     As demonstrated below, Movants have failed and refused to produce documents requested by PREPA that go to the heart of Movants' burden and PREPA's defenses, as articulated by the First Circuit.

<u>*The Current Discovery Dispute*</u>

12.     The Oversight Board issued discovery requests to Movants on October 18, 2018, seeking disclosure related to the alleged impairment of collateral through production of, among other things, (a) documents reflecting the value of Movants' collateral (Request No.1, Ex. A at 7);[5] (b) documents relating to Movants' allegations that their collateral has been diminishing in Title III and the causes of that alleged diminution (*see* Requests Nos. 2 – 5, 10, Ex. A at 8-10, 14);[6] and (c) requests seeking information related to estimates by Movants of the amounts they

---

[5] Document Request No. 1 seeks "[d]ocuments showing, as of June 30, 2017 and afterwards, the value of Your 'collateral,' as that term is used in the Motion and Draft Complaint."

[6] Document Request No. 2 seeks "[a]ll documents that relate to, or upon which You rely for the assertion that, since the filing of the Title III petition, Your 'collateral' is being impaired by PREPA's mismanagement."

4

expect to pay in relation to claims made on their respective PREPA bond insurance policies (*see* Requests Nos. 19, 21, Ex. A at 22-23).[7]

13.     Despite repeated meet and confers, Movants still have not disclosed documents and information from which Respondents can discern how Movants directly or indirectly quantify the value of their asserted collateral, either before, at the time of, or following the Petition Date.

14.     Instead of producing the requested documents, Movants asserted they would produce documents they decided are sufficient to show the value of the collateral, and documents they intend to rely on to demonstrate the collateral's value is diminishing as a result of alleged mismanagement.[8]  The Oversight Board never agreed to a production of only the documents upon which Movants intend to rely to support their arguments; moreover, review of their productions belies their representations:  there are no documents in the productions that reveal

---

Document Request No. 3 seeks "[a]ll documents that relate to, or upon which You rely for the assertion on page 32 of the Motion that, 'PREPA is – today more than ever – the poster child for malfeasance and mismanagement.'"

Document Request No. 4 seeks "[a]ll documents that relate to, or upon which You rely for the assertion on page 33 of the Motion that, PREPA's alleged misconduct has 'all occurred while PREPA has been sheltered by the automatic stay.'"

Document Request No. 5 seeks "[a]ll documents that relate to, or upon which You rely for the assertion on page 34 of the Motion, and elsewhere therein, that Your 'collateral is diminishing' since the Title III petition was filed on July 2, 2017."

Document Request No. 10 seeks "[a]ll documents that relate to, or upon which You rely for the assertion that Movants' purported interest in PREPA's revenues has suffered harm as the result of the mismanagement and malfeasance alleged in the Motion, both before and since the Title III petition was filed, and/or the extent of any such harm."

[7] Document Request No. 19 seeks "[a]ll documents that relate to any calculations, created or updated since the Title III petition was filed on July 2, 2017, that purport to evaluate Your expected payments on insurance policies issued with respect to PREPA bonds.

Document Request No. 21 seeks "[d]ocuments furnished from January 1, 2017 through today by You and any and all of Your affiliates to any and all of New York State Department of Financial Services and any insurance regulator or commissioner, which documents relate to the amounts You estimated You would have to pay to satisfy Your guaranty of PREPA bonds.

[8] *See*, *e.g.*, Ex. A at 7-8, agreeing in response to Document Request 1 to produce documents "which National believes are sufficient to show the value of the collateral."  *See also id*. at 8-11, agreeing in response to Document Requests 2-5 to produce documents "upon which National intends to rely . . . ."

Movants' position as to the value of their collateral at any time, let alone the extent of its alleged impairment.[9]

15.     Movants have also refused to produce documents reflecting their estimations of what they expect to pay out on claims on their respective PREPA bond insurance policies.  These documents are relevant because Movants' estimates of their exposure on these policies may well reflect their view as to the shortfall between the value of the alleged collateral (*i.e.*, PREPA's net revenues) and principal and interest payments on the insured bonds.  Movants claim the only nonpublic information they maintain is "loss reserve" information, which they argue is not discoverable on the grounds of irrelevance and privilege.  *See* **Exhibit B** (January 9, 2019 letter from Movants) at 6-8.

16.     The Oversight Board disagrees, and has explained that loss reserve information is discoverable because (i) it would reveal Movants' internal valuation of how much Movants may have to pay from their pockets, which is certainly related to how much their collateral will yield, and (ii) it is not privileged, particularly here, where it has been disclosed to third parties (Movants' state regulators).  *See* **Exhibit C** (January 11, 2019 letter from Respondents) at 4-6.

17.     The parties have negotiated over production of these documents for weeks, including through the exchange of written correspondence and four telephonic meet-and-confers.

18.     During the January 15 meet and confer, Movants (i) disputed their obligation to disclose information regarding their quantification of the value of their collateral; (ii) continued to maintain the loss reserve information is privileged; and (iii) represented they would be

---

[9] To the extent Document Requests 2 through 5 also seek documents concerning the mismanagement that Movants have alleged at PREPA, that is not the subject of the present motion.  The parties have met and conferred on that subject and Movants have represented that they have produced the documents on which they materially intend to rely.

contacting the regulators to request they assert the "bank examiner" privilege over responsive valuation-related information Movants had disclosed to the regulators.

19.     On February 1, Movants each produced a privilege log, which assert communications with New York and Maryland State regulators concerning loss reserves are privileged.

20.     During the most recent meet and confer on February 5, 2019, Movants reconfirmed that, although they have requested the regulators assert the bank examiner privilege, no regulator at that time had.

21.     On the evening of February 6, 2019, the day prior to the deadline to file this motion, Assured provided a letter dated February 6, 2019 from the Office of the Attorney General, Maryland Insurance Administration ("MIA"), purporting to assert the bank examination privilege with respect to loss reserve information submitted to it by Assured.  *See* **Exhibit D**.  As of the filing of this motion, the New York State regulators have yet to assert the bank examiner privilege with respect to any documents or information submitted to it by any of the Movants.

### *Urgency of This Motion*

22.     The parties are seeking to have this Urgent Motion heard on an expedited basis to permit resolution of this matter in an effort to avoid duplicative Rule 30(b)(6) depositions of the Movants' representatives, including avoiding unnecessary costs and expenses.  The parties have agreed Movants' opposition to this Urgent Motion will be due on or before February 14, 2019 and the Oversight Board's reply will be due on or before February 22, 2019.  The parties respectfully request the Court to hold a hearing—if deemed appropriate—the week of February 25.

## RELIEF REQUESTED

23.     The Oversight Board requests that the Court compel Movants to produce all documents relating directly or indirectly to Movants' valuation and/or quantification of their security interest, if any, in PREPA's revenues before, on, and after the Petition Date, including but not limited to all documents containing any loss reserve information concerning the PREPA bonds that has been furnished to Movants' insurance regulators.

24.     Discovery under the Federal Rules of Civil Procedure intentionally "casts a wide net" and "alter[s] the adversarial nature of litigation to remove the elements of surprise and gamesmanship to make trial a transparent, fair process." *Skytec, Inc. v. Logistic Sys.*, Civ. No. 15-2104-BJM, 2018 WL 4372726, at *5 (D.P.R. Sept. 12, 2018).  Discovery, therefore, properly extends to "any nonprivileged matter that is relevant to any party's claim or defense [that is] proportional to the needs of the case." Fed. R. Civ. P. 26(b).  A party's failure or refusal to produce such information may be remedied, upon a showing of good cause, by a court order compelling such disclosure. *Diaz-Garcia v. Surillo-Ruiz*, 45 F. Supp. 3d 163, 166 (D.P.R. 2014).

### *Good Cause Supports the Relief Requested*

25.     Good cause exists to compel the disclosure of the information sought here, which is clearly relevant to the claims and defenses at issue in the Receiver Motion.  Indeed, the information sought is well within the "wide net" that cabins discoverable information as it goes directly to the core issue of whether Movants can meet their initial burden that sufficient "cause" exists to lift the automatic stay based on Movants' allegation that there is a "lack of adequate protection of an interest in property . . . ." *See* Receiver Motion at 25-26.

26.     The First Circuit has ruled the pre-petition value of the collateral and any alleged decline in that value post-petition are precisely what the Court must assess in reviewing the Receiver Motion. *In re Oversight Board*, 899 F.3d at 23.  Yet Movants have refused to disclose

8

how Movants value the collateral in which they claim a security interest.  The First Circuit's

opinion leaves no question that the information sought is relevant to the litigation and thus

disclosure is required.

27.     Now, more than three months after the Oversight Board issued its document

requests, after multiple telephonic meet-and-confers and substantial correspondence, and despite

Movants' assurances that whatever non-privileged documents they possess with respect to the

alleged diminution of their collateral as the result of PREPA's mismanagement have been

produced, to date Movants have failed to produce documents probative of the assessment

prescribed by the First Circuit.

28.     Movants cannot simply rely on their *ipse dixit* that their collateral has value and

that value is diminishing.  Not only must Movants establish they have valid and perfected

security interests in PREPA's property, they must also demonstrate the value of such interests

was positive on the Petition Date and is declining.  *See In re 620 Church St. Bldg. Corp.*, 299

U.S. 24, 26-27 (1936) (creditors cannot show lack of adequate protection for collateral that has

no value); *see also In re Elmira Litho, Inc.,* 174 B.R. 892, 902 (Bankr. S.D.N.Y. 1994) (party

seeking stay relief must "prove [a] decline in value—or the threat of a decline—in order to

establish a *prima facie* case" for stay relief).  Movants' contention that such demonstration of the

diminution of collateral value can be made without quantification is beside the point.  If Movants

want to go forward without ever proving the value of their collateral, that is their decision and

risk.  By no means, however, does it eliminate PREPA's right to obtain from Movants all their

documents probative of collateral value at different times.

29.     Movants' recalcitrance could arise because the value of their collateral is zero and

has been zero since before the Petition Date; thus, there is no collateral value to diminish.  Or, it

could arise because Movants have been assuring the regulators they will not have to pay much

out of their pockets on their guaranty liability because the collateral is so valuable.  Notably,

Movants concede any security interest they have in PREPA's revenues is in revenues subject to

the payment of Current Expenses—in other words, in *net* revenues.   *See* Receiver Motion at 26.

But as Movants have already admitted, PREPA's net revenues have at all relevant times been

negative. *See supra* ¶ 3 & n. 4.  Thus, Movants have not disclosed how they can contend their

collateral has value that is diminishing, and PREPA is entitled to discovery of all documents

relating to those facts.

30.     The Oversight Board has an independent right as the principal Respondent to the

Receiver Motion to review such information.  The Oversight Board should not be forced to file

its opposition on March 29, 2019 with incomplete information about the facts, including

information Movants do not want PREPA to see.  Movants are required by law to provide such

information in discovery.

### *The Requested Loss Reserve Information Is Relevant and Not Privileged*

31.     On the narrower issue of whether Movants should be compelled to produce

documents disclosing the amounts they expect to pay out to policyholders as a result of PREPA's

nonpayment of interest and/or principal (*see* Requests Nos. 19, 21, Ex. A at 22-23), Movants'

arguments that such information is irrelevant and privileged are similarly unavailing.

32.     The Oversight Board has persistently sought this information.  Yet Movants have

not produced any information responsive to these requests, insisting instead that there are only

two categories of responsive documents: (1) publicly available payment schedules for PREPA's

bonds; and (2) Movants' loss reserve information, which they maintain is irrelevant, privileged,

and work product protected.

33.     The relevance of these documents is obvious.  The amounts Movants contemplate
paying out on their guarantees plainly is relevant to the value of PREPA's net revenues.[10]
Movants' loss reserve information and the other information they have shared with their
regulators about their positions with respect to PREPA bonds are clearly probative of collateral
value.  It is, therefore, highly relevant and discoverable.

34.     None of the cases Movants have relied on in their written exchanges with the
Oversight Board suggest loss reserve information is irrelevant or not subject to production here.
*See* Ex. B (January 9, 2019 letter from Movants) at 6 n.1.[11]  In each of Movants' cited cases, the
loss reserve information was sought in an effort to establish an insurer's liability in a coverage
dispute.  That is not the case here.  The Oversight Board is not a policyholder and does not seek
loss reserve information to establish Movants' coverage liability, but rather to discover how
Movants truly value the alleged collateral securing the bonds they insure.

35.     Nor can Movants satisfy their burden to establish the existence and applicability
of any of the three privileges they seek to assert with respect to loss reserve documents.  *Wal-
Mart P. R., Inc. v. Zaragoza-Gomez*, 152 F. Supp. 3d 67, 69 (D.P.R. 2016) ("[T]he burden is on
the party asserting a privilege 'to establish the existence and applicability of the privilege . . .
[using] sufficient information to allow the court to rule intelligently on the privilege claim.'")
(quoting *In re Grand Jury Proceedings*, 802 F.3d 57, 65 (1st Cir. 2015)) (alterations in original).

36.     First, Movants cannot withhold loss reserve information on the grounds of the
work product doctrine.  Loss reserve calculations are, by definition, financial calculations

---

[10] This is basic math.  Loss equals payout minus collateral.

[11] Specifically, Movants rely on *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989); *Union Carbide Corp.
v. Travelers Indem. Co.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973); *Fid. & Deposit Co. of Md. v. McCulloch*, 168 F.R.D.
516, 525 (E.D. Pa. 1996); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh Pa.*, 623 A.2d 1099,
1109–10 (Del. Super. Ct. 1991).

prepared in the ordinary course of business and/or pursuant to regulatory requirements, and cannot be shielded from disclosure on the grounds of work product. *See*, *e.g.*, *United States v. Textron Inc. & Subsidiaries*, 577 F.3d 21, 26-27 (1st Cir. 2009) (reasoning that work product could not attach because "[t]he purpose of [tax accrual] work papers ["prepared by lawyers and others in Textron's Tax Department to support Textron's calculation of tax reserves for its audited corporate financial statements"] was to make book entries, prepare financial statements and obtain a clean audit[.]"); *In Re Grand Jury Subpoena No. 2013r00691-009*, 201 F. Supp. 3d 767, 772 (W.D.N.C. 2016) (contrasting documents prepared in anticipation of litigation with documents prepared pursuant to regulatory requirements).

37.   Second, even if the Movants loss reserve information were deemed privileged, Movants have waived the privilege by disclosing the information to a third party—state regulators. *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) ("protection [of attorney client-communication] ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party"); *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 359 (D. Mass. 2003) ("The work product privilege may be waived through disclosure."). Movants argue that not all third party disclosure will waive work-product protection, relying on *Broadrock Gas Services, LLC v. AIG Specialty Insurance Co.* and *Bryan Corp. v. Chemwerth, Inc.*, but in neither case was the disclosure made to a state government agency whose records are subject to public records requests. No. 14 cv. 3927(AJN)(MHD), 2015 WL 916464, at *6 (S.D.N.Y. Mar. 2, 2015) (disclosure to insurance carrier); 296 F.R.D. 31 (D. Mass. 2013) (disclosure to party acting as agent to assist in preparation for litigation was not waiver). Here, however, the statutes Movants relied on in their January 9 letter make plain the records are subject to such requests. Pursuant to 11 NYCRR 241.3(a), only those records that meet the

12

exceptions in Insurance Law, section 87(2) of the Public Officers Law will be protected from

public disclosure.  Movants argue that subpart (d) applies (*see* Ex. B at 7), but they have not

demonstrated that the information rises to the level of "trade secrets" or that disclosure would

substantially harm their competitive position in the market.  *See* NY Pub Off L § 87(2)(d)

(reciting exception for disclosure for records that "are trade secrets or are submitted to an agency

by a commercial enterprise or derived from information obtained from a commercial enterprise

and which if disclosed would cause substantial injury to the competitive position of the subject

enterprise").  Respondents are not competitors of Movants, and the information can be produced

with confidentiality restrictions to the extent Movants are concerned about the effect of such

disclosure among themselves or to the public.[12]

38.     Third, the "bank examiner" privilege does not justify Movants' refusal to produce

key documents that are directly relevant to the issue at the heart of the Receiver Motion.  The

bank examiner privilege is only a qualified privilege, and it belongs to the regulators, not to

Movants.  *See, e.g.*, *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797(RWS), 2004

WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004) (bank examination privilege is a "qualified

privilege [that] belong to the regulatory authority and not to the banks that it regulates"); *Saint-

Jean v. Emigrant Mortg. Co.*, 11-CV-2122 (SJ), 2016 WL 11430775, at *5 (E.D.N.Y. May 24,

2016) (privilege belongs to regulators).  It cannot shield from disclosure relevant factual

information in the possession of litigants merely by submitting it to the regulators.  *Syncora*

*Guarantee Inc. v. EMC Mortg. Corp.*, No. MC 13–80037, 2013 WL 1208936, at *4 (E.D. Cal.

Mar. 25, 2013) (compelling the production of materials prepared by a regulated entity, thereby

---

[12] The Maryland Code citations in the letter from the MIA (Ex. D) do not alter this analysis.  *See* Maryland Cod
Ann., Ins. §2-209(g).  They explicitly pertain only to those documents in the control of the Maryland Insurance
Commissioner and have no bearing on documents and information disclosed to New York regulators.

overriding an assertion of the bank examination privilege) ("The bank examination privilege is

held by the OCC, but it *does not apply to documents that were not created by the OCC*.")

(emphasis added).

39.     In this case, the privilege has been asserted only with respect to communications

and information between Assured and MIA; no privilege has been asserted to date with respect

to any of the Movants' communications with and information provided to the New York

regulators.  Movants delayed until mid-January[13] in requesting that the regulators assert such a

privilege, and, in any event, the assertion of the privilege by a state regulator is not dispositive of

the existence of the privilege.  Instead, the matter is within the sole discretion of the Court, which

"owes no deference to the [examining agency] in ruling on whether the documents are covered

by the bank examination privilege."  *Wal-Mart P. R.*, 152 F. Supp. 3d at 70 (collecting cases).

Such privilege simply does not apply here, particularly considering that the bank examiner

privilege only protects opinions and the "iterative process of comment by the regulators and

response by the bank."  *In re Subpoena Served upon Comptroller of Currency, and Sec'y of Bd.

of Governors of the Fed. Reserve Sys.*, 967 F.2d 630, 633 (D.C. Cir. 1992).  It does not protect

materials pertaining to "purely factual matters," which is, by definition, the case with loss

reserve calculations.  *See In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995).  Moreover,

any confidentiality concerns Movants have are more properly addressed through the Parties'

protective order.  Thus, the assertion of the bank examiner privilege does not stand in the way of

granting this motion.  *See Wal-Mart P. R.*, 152 F. Supp. 3d at 70 (granting plaintiff's motion to

---

[13] Respondents first requested that Movants contact their regulators about this issue during the parties meet-and-confer on December 10, 2018.  Respondents followed up that spoken request with a letter reaffirming the request on December 13, 2018.  The issue has also been raised in each of the subsequent meet-and-confers and in Respondents' subsequent letters.  *See* Exs. B & C.

compel  production of documents submitted to regulator, as "classified information" under the

terms of a protective order despite defendant's assertion of the bank examiner privilege).

40.     Fourth, to the extent Movants do produce any documents bearing on collateral

valuation, other documents probative of valuation—including loss reserve documentation—

cannot be selectively withheld.  Having put the issue of collateral value in issue, Movants are

obligated to produce all responsive documents, or face, *inter alia*, an order of preclusion.  *See*

Fed R. Civ. P. 37(c); *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.

R.*, 248 F.3d 29, 35 (1st Cir. 2001) (district court has "wide latitude" to enter evidentiary

preclusion orders, even those amounting to dismissal, for nondisclosure).

41.     Finally, even if any of these privilege claims had any merit, the Oversight Board

would still be entitled to disclosure based on its compelling need for the information and the

relevance of the information to the Receiver Motion.  *See Cusumano v. Microsoft*, 162 F.3d 708,

716 (1st Cir. 1998) (setting forth shifting burden and balancing test in evaluating the competing

needs for privileged information).  As set forth in detail above, the First Circuit has said the

Court must assess the pre-petition value of collateral and any post-petition decline in deciding

the merits of the Receiver Motion.  After months of meet and confer sessions, Movants have

insisted that the only documents they have that are responsive to Document Requests 19 and 21

are protected by various privilege claims.[14]  Having initiated the Receiver Motion, Movants

should not now be permitted to shield from disclosure the very information that is core to

resolution of the dispute.  Under the circumstances, even if an applicable privilege existed, it

must bend to the compelling needs of the litigation.  *See, e.g. Wal-Mart P. R.*, 152 F. Supp. 3d at

---

[14] *See* Ex. B at 6.  These requests seek post-petition calculations that evaluate Movants expected payments on
insurance policies issued with respect to PREPA bonds and documents furnished to regulators concerning Movants'
estimates to satisfy their guaranty of PREPA bonds.  *See* Ex. A at 22, 23.

70 ("Even when the privilege is found to apply, it 'may be overridden . . . if good cause is shown.'") (quoting *In re Bankers Trust Co.*, 61 F.3d at 471).[15]

42.  Therefore, the Oversight Board hereby requests, pursuant to Federal Rule of Bankruptcy 7026, 7034, and 9014, made applicable to this contested matter through section 310 of PROMESA, and this Court's inherent authority, that this Court compel Movants to produce the information described above and requested by the Oversight Board in, *inter alia*, Document Requests Nos. 1, 2-5, 10, 19, and 21.

43.  The Oversight Board hereby certifies that there is a true need for urgent relief and that such urgency was not created through any lack of due diligence.

44.  No prior request for the relief sought in this Urgent Motion has been made to this or any other court.

WHEREFORE the Oversight Board respectfully requests that this Court (i) enter the Proposed Order attached hereto as **Exhibit 1** granting Respondents the relief requested herein, and (ii) grant the Oversight Board and PREPA such other relief as is just.

*[Remainder of page intentionally left blank]*

---

[15] With respect to the bank examiner privilege in particular, the five factors to be considered—relevance of the information, availability of other evidence, seriousness of the litigation, role of the government in the litigation and possibility that production will have a chilling effect on government employees—weigh in favor of disclosure here. *In re Bankers Trust Co.*, 61 F.3d at 472.

16

**Certification of Compliance with**
**Local Rule 9013-1 and the Seventh Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the Seventh Amended Case Management Order, the Oversight Board, as representative for PREPA, hereby certifies that it has (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through any lack of due diligence; (c) made a bona fide effort to resolve the matter without a hearing; (d) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court; and (e) contacted counsel for Movants, who have rejected the Oversight Board's request that Movants produce the requested documents.

*[Remainder of page intentionally left blank]*

Dated: February 7, 2019

**PROSKAUER ROSE, LLP**

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock *(pro hac vice)*
Ehud Barak *(pro hac vice)*
Margaret A. Dale *(pro hac vice)*
Gregg M. Mashberg *(pro hac vice)*
Eleven Times Square
New York, NY 10036-8299
Tel:  (212) 969-3000
Fax:  (212) 969-2900
Email: mbienenstock@proskauer.com
　　　 ebarak@proskauer.com
　　　 mdale@proskauer.com
　　　 gmashberg@proskauer.com

-and-

Paul V. Possinger *(pro hac vice)*
70 W. Madison St., Suite 3800
Chicago, IL 60602
Tel:  (312) 962-3550
Fax:  (312) 962-3551
Email: possinger@proskauer.com

-and-

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES, LLC**
250 Munoz Rivera Avenue, Suite 800
San Juan, Puerto Rico 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944
Email: hermann.bauer@oneillborges.com

*Attorneys for The Financial Oversight
and Management Board for Puerto Rico,
as representative of The Commonwealth
of Puerto Rico and the Puerto Rico
Electric Power Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Hermann D. Bauer*

Hermann D. Bauer

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO *et al.,* | |
| Debtors.[16] | |
| In re: | PROMESA Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17 BK 4780-LTS |
| as representative of | (This court filing relates only to Case No. 17 BK 4780-LTS) |
| PUERTO RICO ELECTRIC POWER AUTHORITY, | |
| Debtor. | |

---

[16] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

NATIONAL PUBLIC FINANCE GUARANTEE
CORPORATION, ASSURED GUARANTY
CORP., ASSURED GUARANTY MUNICIPAL
CORP., and SYNCORA GUARANTEE INC.,

      Movants,

         v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al*, and PUERTO RICO ELECTRIC POWER
AUTHORITY,

      Respondents.

---

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

      as representative of

THE COMMONWEALTH OF PUERTO RICO,
*et al*, and PUERTO RICO ELECTRIC POWER
AUTHORITY,

      Movants on the Motion to Compel,

         v.

NATIONAL PUBLIC FINANCE GUARANTEE
CORPORATION, ASSURED GUARANTY
CORP., ASSURED GUARANTY MUNICIPAL
CORP., and SYNCORA GUARANTEE INC.,

      Respondents.

**[PROPOSED] ORDER GRANTING URGENT MOTION OF FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD, AS REPRESENTATIVE OF DEBTOR, TO COMPEL
PRODUCTION OF DOCUMENTS FROM MOVANTS RELATING TO THEIR
MOTION FOR RELIEF FROM AUTOMATIC STAY**

Upon consideration of the urgent motion (the "Urgent Motion") of the Puerto Rico Electric Power Authority ("PREPA"),[17] by and through the Financial Oversight and Management Board (the "Oversight Board"), as representative of PREPA pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, codified at 48 U.S.C. §§ 2101-2241 ("PROMESA"), for an order compelling Assured Guaranty Municipal Corporation and Assured Guaranty Corporation (collectively, "Assured"), National Public Finance Guarantee Corporation ("National"), and Syncora Guarantee Incorporated ("Syncora," and together with Assured and National, "Movants"), to produce non-privileged documents responsive to the requests for production served on them by the Oversight Board on October 18, 2018; and it appearing that  (i) the Court has subject matter jurisdiction over this Urgent Motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); (ii) venue of this proceeding and the Urgent Motion is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a); (iii) notice of the Urgent Motion was adequate and proper under the circumstances and no further or other notice need be given; and after due deliberation and sufficient cause appearing therefor, and the Court finding that documents provided to Movants' insurance regulators, commissioners or other third parties are not subject to any privilege, it is hereby **ORDERED** that:

1. The Urgent Motion is **GRANTED** as set forth herein.

2. The Movants shall, no later than _____, 2019, produce all documents concerning Movants' quantification and/or valuation of the collateral in which they allege a security interest in the PREPA bonds before, on, and after the Petition Date, including but not limited to, any and all documents containing loss reserve information concerning the

---

[17] Capitalized terms used but not defined herein have the meaning given them in the Urgent Motion.

PREPA bonds, and/or documents relating to the quantification and/or valuation of the collateral that have been disclosed to Movants' insurance regulators; and

3. For the avoidance of doubt, documents provided to Movants' insurance regulators, commissioners or other third parties shall not be withheld from disclosure absent further order of the Court.

Dated: _____, 2019.

SO ORDERED:

_____
Honorable Judith G. Dein
United States Magistrate Judge