# EXHIBIT B

# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

January 9, 2019

**VIA EMAIL**

Elizabeth L. McKeen
O'MELVENY & MYERS
7 Times Square
New York, New York 10036

Margaret A. Dale
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036

Re:   *PREPA, No. 17-BK-4780-LTS – Motion to Lift Stay – Movants' Objections and Responses to FOMB's and AAFAF's Discovery Requests*

Dear Counsel:

We write in response to your January 2, 2019 letter regarding Movants' Objections and Responses to FOMB's and AAFAF's Requests for Production of Documents and as a further follow-up to our January 4, 2018 meet-and-confer. For convenience, the headings below correspond to the headings listed in your January 2 letter.

**I.A.   Requests Seeking Documents Relating to Contentions in the Motion – FOMB Document Requests Nos. 2-5, 10-11**

During the last meet-and-confer and in our December 27, 2018 letter, we discussed the present scope and limitations of Movants' productions in response to FOMB Requests 2-5 and 10-11. We also explained why any attempt to "close the record" at this juncture would be wholly inappropriate, given the continually expanding public record of PREPA's mismanagement as well as PREPA's inability to complete its own document productions in a timely manner. Respondents' January 8 e-mail (from Madhu Pocha) only heightens our concern: despite previously indicating that PREPA's production of documents would be *complete* by early January, Respondents now suggest they will produce only some "additional documents, including Board materials" by January 11. Respondents' productions remain distinctly incomplete and continue to lack many of the documents and document categories previously agreed to be produced.

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 2

Clearly there is no basis at this time to close the record regarding PREPA's mismanagement or Movants' related assertions in the motion, nor to limit in any way Movants' ability to rely on additional evidence as it becomes available. The evidence that Movants present at the hearing should not be constrained by Respondents' failure to complete their own productions on time. Furthermore, Movants will not allow their corporate witnesses to be subject to multiple depositions merely so that Respondents may inquire about documents that were, for example, previously unavailable due to Respondents' own discovery failures. Accordingly, we reject Respondents' attempt to "reserve all rights" with respect to these Requests. We have already advised that additional documents, equally available to Movants and Respondents, have appeared in the public record since the motion was filed. Movants will continue to identify responsive documents as they become available and will supplement their productions in accordance with their applicable obligations.

**I.B. Requests Seeking Analysis of Potential Rate Increases – FOMB Document Requests Nos. 7-9, Deposition Topics 6(e) & 6(f)**

Respondents have consistently failed to articulate the relevance of documents that analyze the effect of a potential rate increase on debt repayment, in light of the fact that: (i) the pending motion expressly disclaims any intent to seek a rate increase to service debt and asks the Court to restrict any receiver's ability to initiate a rate proceeding with PREB to enforce Section 502(B)(b) of the Trust Agreement; and (ii) even if a receiver *were* authorized to seek such a rate increase, the FOMB itself claims authority under PROMESA to set rates and to *preclude any component for debt service*. *See* New Fiscal Plan for Puerto Rico (Oct. 23, 2018) at 58 (explaining that FOMB retains authority to approve PREPA's revenue requirements, annual budgets, and restructuring of existing debt, and that any "debt service implied by the current rate case will be superseded by the Oversight Board-approved budget and Plan of Adjustment"). Simply put, the present receiver motion has nothing to do with a rate increase to service debt—a matter over which the FOMB claims ultimate authority in any event.

Moreover, despite this failure to show relevance, FOMB belatedly has even attempted to *broaden* the scope of its original requests—demanding in the last meet-and-confer that Movants produce analyses of not only potential rate increases, but also the separate transition charge contemplated under the 2015 Restructuring Support Agreement ("RSA"). *Compare* FOMB Request No. 7 (seeking "Any and all financial models or projections . . . that evaluate the effect of a *rate increase* at PREPA on debt repayment, and all documents upon which such models or projections rely") (emphasis added) *with* Respondents' December 13, 2017 Letter (seeking "*any* analyses that evaluate revenue-increasing initiatives (rate increases, fee increases, etc.)") (emphasis in original). As Movants explained, however, requiring a search for such documents would be especially disproportionate and burdensome given (i) the volume of materials created in the course of negotiating the RSA; and (ii) PREPA's own deep knowledge of the RSA and the financial analyses supporting the transition charge, which was mutually agreed-to by all parties to the RSA. Not only that, but transition charge analyses conducted in connection with the RSA reflect a range of inputs and settlement positions, sometimes developed with input from counsel, thus increasing the burden of privilege review.

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 3

Nonetheless, solely in order to avoid a discovery dispute, Movants would be willing to expand the scope of their document collection to include samples of non-privileged "financial models and projections" created by Movants or their advisors that "evaluate the effect of a rate increase [or transition charge] at PREPA on debt repayment." *See* FOMB Request No. 7. Such samples would allow Respondents to see the type of analysis undertaken, including any calculation components and the resulting calculations. Any such samples, however, would be subject to the following agreed-upon conditions: (1) Movants may redact any numerical information for the factors either constructed or assembled by Movants or their advisors, including numerical ranges not previously disclosed to Respondents, and (2) Movants do not waive objections regarding the admissibility of such documents. Please confirm that this would be acceptable to Respondents.

**I.D.    Requests Concerning Bond Value – FOMB Document Requests Nos. 14-15, 17-18**

As described in Movants' December 27, 2018 letter, Movants have produced numerous documents responsive to these requests, including but not limited to bond purchase agreements, insurance policy documents, assignments of rights, notices of deficiency, and summary spreadsheets showing principal and interest paid and outstanding. Taken together with Movants' proofs of claims, these documents do, as requested in Respondents' January 2 letter, "identify [Movants'] holdings in the PREPA bonds, their insurance obligations, and payments they have made with respect to claims on their insurance obligations (*i.e.*, their subrogation rights)." For example, the insurance policies include the par value for the bonds insured under each policy, and the notices of deficiency detail payments that Movants have made under these policies while PREPA has been in default. Each Movant further addresses its production below:

    1.    **National**

National refers Respondents to the summary spreadsheets produced as NATIONAL_00007838, NATIONAL_00007839, NATIONAL_00007849, and NATIONAL_00008698. If Respondents believe that these spreadsheets (in combination with the underlying insurance agreements, policies, assignments, notices, etc. also produced) are insufficient to show the information requested in FOMB Request Nos. 14-15 and 17-18, please let us know as soon as possible by identifying the specific information that Respondents believe is missing. National reserves the right to supplement its production as necessary.

We note that as a general matter, National tracks claims at the policy level rather than the CUSIP level, because that is where the claims originate: Trustees submit claims to National based on a particular policy, not a particular CUSIP. Nonetheless, at Respondents' request, National was able to provide certain information at the CUSIP level (*see* NATIONAL_00008698), which, in combination with the other documents produced in response to these Requests, should be sufficient to show the requested information at the CUSIP level.

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 4

    2.    **Assured**

Respondents have inquired about documents that Assured produced relating to CUSIP No. 74526QVL3, specifically ASSURED-PREPA_00013040, _00013044, and _00013056. While these documents do not mention CUSIP No. 74526QVL3 on their face, these documents were produced and subsequently pointed to because they are in the credit file for policy SM-2008-384. CUSIP No. 74526QVL3 was created for this policy.

Respondents further inquired about ASSURED-PREPA_00013053 and _00013068, which refer to CUSIP No. 74526QVD1. As stated on ASSURED-PREPA_00013052, CUSIP No. 74526QVD1 was the "Original CUSIP Number" for the bonds that were insured under Policy Number SM-2008-384, with a newly-issued "Insured CUSIP Number 74526QVL3." The proofs of claim describe Assured's holdings of PREPA bonds in full.

In addition to its proofs of claim (*see* ASSURED-PREPA_00002948-3003 and ASSURED-PREPA_00003044-76), Assured routinely discloses its total holdings of PREPA bonds to the SEC and Assured's shareholders. Although these are public documents, they were produced on November 16, 2018. For example, ASSURED-PREPA-00001708-59, includes a table with Assured's Net Par Outstanding Exposure to PREPA Bonds at ASSURED-PREPA_00001733.

Assured has also produced the relevant insurance policies for its PREPA holdings, which include the par value for the bonds insured under each policy. Additionally, Assured produced dozens of notices of claim and notices of deficiency that detail payments Assured has made under these policies while PREPA has been in default. These productions were among the first documents provided in response to the Respondents' requests in November 2018.

Specifically, produced policies and related endorsements include ASSURED-PREPA_00001321-22, ASSURED-PREPA_00001323-30, ASSURED-PREPA_00001331-37, ASSURED-PREPA_00001338-44, ASSURED-PREPA_00001345-51, ASSURED-PREPA_00001352-58, ASSURED-PREPA_00001359-60, ASSURED-PREPA_00001361, ASSURED-PREPA_00001362, ASSURED-PREPA_00001363, ASSURED-PREPA_00001364-71, ASSURED-PREPA_00001372-78, ASSURED-PREPA_00001379-85, ASSURED-PREPA_00001386-87, ASSURED-PREPA_00001388-94, ASSURED-PREPA_00001395, ASSURED-PREPA_00001396, ASSURED-PREPA_00001397-98, ASSURED-PREPA_00001399, ASSURED-PREPA_00004318 and ASSURED-PREPA_00004308-17. Produced secondary market policies include ASSURED-PREPA_00001302-03, ASSURED-PREPA_00001304-07, ASSURED-PREPA_00001308-11, ASSURED-PREPA_00001312-14, ASSURED-PREPA_00001315-16, ASSURED-PREPA_00001317-18 and ASSURED-PREPA_00001319-20.

Notices of claim and notices of deficiency produced so far include ASSURED-PREPA_00004093-95, ASSURED-PREPA_00004096-97, ASSURED-PREPA_00004098-99, ASSURED-PREPA_00004100-

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 5

03, ASSURED-PREPA_00004104-07, ASSURED-PREPA_00004108-10, ASSURED-PREPA_00004111-14, ASSURED-PREPA_00004115-17, ASSURED-PREPA_00004118-20, ASSURED-PREPA_00004121-23, ASSURED-PREPA_00004124-27, ASSURED-PREPA_00004128-30, ASSURED-PREPA_00004131-33, ASSURED-PREPA_00004134-37, ASSURED-PREPA_00004138-41, ASSURED-PREPA_00004142-45, ASSURED-PREPA_00004146-48, ASSURED-PREPA_00004149-51, ASSURED-PREPA_00004152-54, ASSURED-PREPA_00004155-57, ASSURED-PREPA_00004158-61, ASSURED-PREPA_00004162-65, ASSURED-PREPA_00004172-75, ASSURED-PREPA_00004179-82, ASSURED-PREPA_00004189-92, ASSURED-PREPA_00004199-202, ASSURED-PREPA_00004328-32, ASSURED-PREPA_00004333-37, ASSURED-PREPA_00004338-40, ASSURED-PREPA_00004341-48, ASSURED-PREPA_00004349-51, ASSURED-PREPA_00004352-54, ASSURED-PREPA_00004355-58, ASSURED-PREPA_00004359-62, ASSURED-PREPA_00004363-66, ASSURED-PREPA_00004367-70, ASSURED-PREPA_00004371-73, ASSURED-PREPA_00004374-77, ASSURED-PREPA_00004385-87, ASSURED-PREPA_00004388-91, ASSURED-PREPA_00004392-94, ASSURED-PREPA_00004395-97, ASSURED-PREPA_00004398-400, ASSURED-PREPA_00004401-05, ASSURED-PREPA_00004406-08, ASSURED-PREPA_00004409-11, ASSURED-PREPA_00004414-16, ASSURED-PREPA_00004417-18 and ASSURED-PREPA_00004419-20.  Assured advises that there are additional notices of deficiency reflecting policy payments from early January 2019.  Those are being compiled and will be produced promptly.

Respondents claim there are gaps in Movants' production but have not identified those gaps in any specific manner.  To address any possible gaps (though Assured is not aware of any), Assured will compile from various of its electronic records a chart of all PREPA bond exposure and provide that chart to Respondents.  Assured will also use that chart as a double-check with respect to the production of policies and other documents and supplement its production promptly if necessary.  Assured will provide the chart with the understanding that Assured makes no commitment to "create" any further documents or to produce the various electronic data systems employed to create the chart, and Respondents shall make no such requests.  Please confirm that Respondents will agree to such conditions in exchange for Assured compiling and producing such a chart.

   3.  **Syncora**

Syncora refers Respondents to the spreadsheets produced as SYN-PR-00005980, SYN-PR-00005993 and SYN-PR-00006722.  In addition, Syncora's proof of claim likewise describes Syncora's holdings of PREPA bonds (both insured and owned).  *See* SYN-PR-00000409 and SYN-PR-00000533.  Syncora has also produced the relevant insurance policies for its PREPA holdings, which include the par value for the bonds insured under each policy.   Additionally, Syncora produced numerous notices of claim and notices of non-payments that detail payments Syncora has made under these policies while PREPA has been in default and Syncora will be producing additional notices of claims and non-payment related to PREPA's non-payment of its January 1, 2019 debt service. If Respondents believe that these documents (in combination with the underlying insurance agreements, policies, assignments, notices, etc. also

WEIL:\96862561\9\64984.0005

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 6

produced) are insufficient to show the information requested in FOMB Request Nos. 14-15 and 17-18, please let us know as soon as possible by identifying the specific information that Respondents believe is missing.

**I.E.     Requests Concerning Anticipated Insurance Payments – FOMB Document Requests Nos. 19, 21**

As discussed during the January 4 meet-and-confer, each Movant has conducted a diligent inquiry and determined that it has *only two categories* of documents that reflect "what Movants anticipate paying in relation to claims on their PREPA bond related insurance policies." Jan. 2 Letter at 3. The first category consists of documents that reflect PREPA's publicly available payment schedule for its insured bonds; these are amounts for which Movants will be responsible in full, for as long as the Title III proceeding is ongoing and PREPA's default continues. Movants have already produced documents sufficient to show these amounts. The second category consists of documents concerning Movants' loss reserves for the PREPA bonds.

Until the January 4 meet-and-confer, Movants' understanding was that Respondents were *not* seeking documents concerning loss reserves under any circumstances. *See* Respondents' Dec. 21, 2018 Letter at 4 (stating that it was "acceptable to us" for Movants to "exclude documents concerning loss reserves and privileged assessments of likely litigation outcomes" from their production in response to these Requests); Respondents' Nov. 30, 2018 Letter at 3 ("Movants interpret these requests as seeking 'information regarding the Movants' loss reserves.' Again, as we previously explained, that is not the case."). Instead, Respondents advised they were seeking actuarial or internal accounting analyses (not including loss reserve calculations) prepared internally and also those provided to regulatory authorities. Now, following our recent advice that Movants had no such analyses other than loss reserve calculations, Respondents have walked back their position and appear to be seeking loss reserve information relating to PREPA that was provided to regulatory authorities. We reiterate our assertion that loss reserve information is not discoverable.

First, loss reserves are irrelevant to the issues in the receiver motion. As we have detailed in our letters and written discovery responses, Movants' loss reserve calculations are *not* based upon any valuation of PREPA, its revenues, or any other collateral. Rather, they are based upon irrelevant factors that include assessments of probable litigation outcomes—including the pending Title III proceeding and related disputes—and ongoing settlement and mediation discussions, as well as business factors unrelated to PREPA insured bonds. Courts evaluate the relevance of loss reserves on a case-by-case basis and routinely deny discovery of loss reserves where, as here, the information is irrelevant to the issues at hand.[1]

---

[1] See, e.g., *Leksi, Inc. v. Fed. Ins. Co.*, 129 F.R.D. 99, 106 (D.N.J. 1989) ("The purpose of discovery—expedition of the litigation by narrowing the area of controversy or by avoiding unnecessary testimony or by providing a lead to evidence—will not be served by allowing discovery of reserves."); *Union Carbide Corp. v. Travelers Indem.*

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 7

Second, because Movants' reserves are calculated based on legal advice about the pending Title III and its likely outcomes, they *reveal information about Movants' bottom-line settlement positions in this very proceeding*. Thus they are protected by attorney-client privilege and the work-product doctrine; indeed, it is difficult to conceive of any information that would be *more* inappropriate to produce to Respondents—and more disruptive to a fair legal and settlement process—than Movants' own settlement values for this litigation based on the advice of counsel. Yet that is what Movants' loss reserves would ultimately reveal.

Respondents make much of the fact that Movants, as regulated entities, are required to disclose (and have disclosed) their loss reserves to the New York Department of Financial Services ("DFS"). But as we have explained, such disclosures were made in the ordinary course (as opposed to an investigation or other adversarial proceeding) and with the request and understanding that the information would be afforded confidential treatment and exempted from disclosure pursuant to Section 87.2(d) of the Public Officers Law and New York Insurance Department Regulation No. 71 (11 NYCRR Part 241). Thus, in this context, Movants do not waive work-product protection by disclosing the information to DFS. *See, e.g., Broadrock Gas Servs., LLC v. AIG Specialty Ins. Co.*, No. 14-CV-3927 (AJN) (MHD), 2015 WL 916464, at *6 (S.D.N.Y. Mar. 2, 2015) (explaining that "disclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver" of work product) (citation omitted). Put differently, because Movants' confidential disclosures to DFS did not "make it probable that the otherwise protected material will be transmitted to an adversary," *id.*, work product protection has not been waived here.[2]

---

*Co.*, 61 F.R.D. 411, 413 (W.D. Pa. 1973) ("Travelers has not cited and we have not discovered any authority for compelling the discovery of an insurance carrier's reserve against the liability asserted either in the principal case or in collateral claims. More importantly, we do not believe that the proper end of discovery . . . will be served by allowing discovery of the reserves in question."); *Fid. & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996) ("Our Court has been in general agreement that requests for production of reserve information are not 'reasonably calculated to lead to the discovery of admissible evidence' concerning insurance policy interpretation."); *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 623 A.2d 1099, 1109–10 (Del. Super. Ct. 1991) ("Reserves do not represent an admission or evaluation of liability and are irrelevant to the issues between insurer and insured.").

[2] Similarly, as Judge Dein has recognized, work product protection "does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent." *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 38 (D. Mass. 2013) (quoting *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 359-60 (D. Mass. 2003)). And "[a]s long as the parties exchanging information do not act in a manner that is inconsistent with the doctrine's purpose, the work product privilege will be preserved." *Id.* at 40. Here, consistent with the purpose of work product protection, Movants' limited disclosure under a confidentiality arrangement with DFS in the ordinary course did not reveal any loss reserve information to Movants' litigation adversaries. *See id.* (explaining that even the

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 8

Third, as Respondents have recognized, DFS may choose to invoke the bank examiner privilege to protect Movants' confidential disclosure of loss reserves.

During the January 4 meet-and-confer, Respondents indicated they would take Movants' concerns under advisement. Please let us know as soon as possible how Respondents intend to proceed.

**I.F.    Requests Concerning "Politicization" at PREPA – AAFAF Document Requests Nos. 2-7**

Movants confirm that they have completed their respective productions under the agreed scope of these requests. That is, we have already produced "Movants' or their respective lobbyists' presentations, written reports, or other similar documents prepared by or for any Movant and provided to members of the United States Congress since the Title III commenced concerning PREPA, PREPA's management, or PREPA bonds." *See* Movants' December 27, 2018 Letter.

In order to avoid a discovery dispute, Movants would be willing to conduct an additional search and supplement their productions to include similar types of post-petition documents provided to officials of the Puerto Rico government or the federal government (as opposed to just "members of the United States Congress"), to the extent any non-duplicative documents exist. Please let us know if this is acceptable to Respondents.

Each Movant further responds below:

   1.    **National**

As a courtesy, National identifies the following documents that have been produced in response to these Requests:

>   NATIONAL_00007850
>   NATIONAL_00008283
>   NATIONAL_00008286
>   NATIONAL_00008294
>   NATIONAL_00008306
>   NATIONAL_00008308
>   NATIONAL_00008310
>   NATIONAL_00008313
>   NATIONAL_00008696

---

absence of a formal confidentiality agreement does not necessarily result in waiver, while a "guarantee of confidentiality" would make the "case against waiver even stronger") (citation omitted).

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 9

### 2. Assured

To the extent any documents were located by Assured within the agreed-upon scope of the request, they have been produced. Indeed, Assured's production was broader than initially requested and included letters sent to or from the FOMB or PREPA. *See* ASSURED-PREPA_00003930-31, ASSURED-PREPA_00003932-34, ASSURED-PREPA_00003935-43, ASSURED-PREPA_00003944-47, ASSURED-PREPA_00003948-55, ASSURED-PREPA_00003956, ASSURED-PREPA_00003957-58, ASSURED-PREPA_00004083-87, ASSURED-PREPA_00004088-89, ASSURED-PREPA_00004090-91, ASSURED-PREPA_00004092, and ASSURED-PREPA_00004568-73.

### 3. Syncora

To the extent any documents were located by Syncora within the agreed-upon scope of the request, they have been produced. As a courtesy, Syncora identifies the following sample documents that have been produced in response to these Requests: SYN-PR-00000207, SYN-PR-00005906, SYN-PR-00005911 SYN-PR-00005920 and SYN-PR-00005936.

### II.A.   Movants' Failure To Provide Privilege Logs

As expressed in the parties' correspondence and during the January 4, 2018 meet-and-confer, Movants agree with Respondents that it would be appropriate to reach a reciprocal arrangement to provide privilege logs for certain limited categories of documents as necessary, including documents withheld on the grounds of deliberative process privilege. Movants are available to meet and confer further regarding privilege logs.

### II.B.   Unsubstantiated Privilege Assertions in Ennis Deposition

Please refer to Movants' separate January 4, 2018 letter addressing this issue.

### III.A.   Syncora's Refusal to Produce a Witness

This issue was resolved during the January 8, 2019, meet and confer with Syncora.

### III.B.   Deposition Scheduling

Movants had proposed deposition dates for next week under the assumption that PREPA's and AAFAF's document productions would have already been completed. Discovery is a two-way street, and therefore Movants expect PREPA and AAFAF to complete their productions prior to confirming Movants' witness depositions.

WEIL:\96862561\9\64984.0005

**Weil, Gotshal & Manges LLP**

January 9, 2019
Page 10

Sincerely,

/s/ *Robert S. Berezin*
Robert S. Berezin
Weil, Gotshal & Manges LLP
Attorney for National Public Finance Guarantee Corp

/s/ *William J. Natbony*
William J. Natbony
Cadwalader, Wickersham & Taft LLP
Attorney for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.

/s/ *Elie J. Worenklein*
Elie J. Worenklein
Debevoise & Plimpton LLP
Attorney for Syncora Guarantee Inc.

Cc:
Marcia Goldstein
Jonathan Polkes
Gregory Silbert
Eric Pérez-Ochoa
My Chi To
Wendy B. Reilly
Craig A. Bruens
Howard R. Hawkins, Jr.
Mark C. Ellenberg
Ellen M. Halstead
Thomas J. Curtin
Casey J. Servais

WEIL:\96862561\9\64984.0005