# EXHIBIT C

January 11, 2019

**VIA EMAIL**

| | |
|---|---|
| Robert S. Berezin, Esq. | William J. Natbony, Esq. |
| Weil, Gotshal & Manges LLP | Cadwalader, Wickersham & Taft LLP |
| 767 Fifth Avenue | 200 Liberty Street |
| New York, NY 10153-0119 | New York, NY 10281 |

Elie J. Worenklein, Esq.
Debevoise & Plimpton LLP
919 Third Avenue
New York, NY 10022

**Re:  PREPA, No. 17-BK-4780-LTS, Motion to Lift Stay
Follow-up to January 4, 2019 Meet-and-Confer Regarding AAFAF's and the FOMB's Requests for Production**

Dear Counsel:

We write in response to your letter, dated January 9, 2019, which we received late in the evening.

The parties have been discussing the upcoming Rule 30(b)(6) depositions of Movants' corporate representatives for many weeks. On Friday, January 4, Movants provided us with dates for those depositions – dates that we confirmed in an email on January 9. In your subsequent letter, Movants purport to walk back from those dates with no justification. Currently, we are scheduled to commence those depositions on January 17 and our opposition to the Motion is due January 29.[1] Under the circumstances, we are prepared to proceed with those depositions on the dates offered and reserve our rights to leave open the depositions pending resolution (either consensually or with Court assistance) of our disputes concerning Movants' deficient productions. Alternatively, we are prepared to discuss a stipulated continuance of the schedule to permit the parties' (and potentially the Court) time to resolve these issues and to try to avoid Movants' representatives from appearing for deposition more than once.

As described in more detail below, the dispute concerns Movants' failure to produce documents relating to valuation of their claimed collateral. As you know, we sought

---

[1]   As you know, Movants offered their 30(b)(6) representatives for deposition on back-to-back business days commencing with National on January 17, the Assured entities on January 18 and 22, and Syncora on January 23, which is less than a week before Respondents' opposition is due. Thus, there is no additional time in the current schedule to delay these depositions.

1

documents showing the value of Movants' collateral before and after the Title III petition date. (*See* First Request of the FOMB For Production of Documents, Request No. 1.) In response, Movants agreed to produce documents sufficient to show their valuation of their collateral. However, we have not identified documents in Movants' production demonstrating how Movants value their collateral at any time. The FOMB has also persistently sought documents responsive to, among others, Requests Nos. 19 and 21 in the belief that information concerning the value that Movants have placed on their claimed collateral at PREPA would necessarily have been a part of any internal analyses of anticipated payments on insurance policies and of any analyses or reports shared with your regulators.

We are willing to continue to meet and confer with respect these issues, but we intend to move to compel this information on Monday if we cannot reach agreement by then. We suggest that we speak before close of business today or over the weekend.

We address additional issues below.

**I.     Requests for Production**

**A.     Requests Seeking Documents Relating to Contentions in the Motion—FOMB Document Requests Nos. 2-5, 10-11**

We were surprised by your response to this category of Requests, as we understood the issues raised by these Requests to have been resolved by our meet-and-confer on January 4, 2019. As communicated at that time, our concern has been that Movants' resistance to producing certain types of documents otherwise available to AAFAF and the FOMB was an attempt to obfuscate the documents on which Movants intend to rely with respect to the alleged mismanagement of PREPA. Movants assured us that was not the case, and we took you at your word and considered the issue closed.

However, your latest letter seems to walk back the parties' progress on this issue and now provides little assurance that Movants will make the disclosures requested. Therefore, we demand that Movants represent, in writing, whether they currently intend to materially rely on any documents that have not yet been produced to support their contention that PREPA is and/or has been mismanaged. If Movants represent that they have no such current intention and will acknowledge their ongoing obligation to supplement their production with any documents identified in the future upon which they intend to rely for this issue, then we will consider this dispute resolved.

However, your correspondence on this subject has led to a separate area of urgent concern. In it, you state that "Movants will not allow their corporate witnesses to be subject to multiple depositions merely so that Respondents may inquire about documents that were, for example, previously unavailable due to Respondents' own discovery failures." (Movants' Letter of January 9, 2019 at 2.) Your position lacks merit, because it is the lack of production by Movants, not Respondents, that puts Movants' corporate representatives

2

in jeopardy of having to sit for multiple depositions. We consider resolution of this issue to be of the highest priority, and it is further addressed at III.B., below.

### B. Requests Seeking Analysis of Potential Rate Increases—FOMB Document Requests Nos. 7-9, Deposition Topics 6(e) & 6(f)

As Respondents have articulated previously, whether or not the pending motion "disclaims" an intention to seek a rate increase, documents concerning analysis of a potential rate increase are highly relevant to the Motion. Respondents cannot be prohibited from probing information that Movants may have relating the effect of a rate increase on the basis that Movants have self-servingly – and carefully – stated that they do not "seek a rate increase *to service debt*." (Movants' Letter of January 9, 2019 at 2; *see also* Motion at 34 ("This Motion does not seek to appoint a receiver to petition for an increase in rates *to enforce Section 502(B)(b) of the Trust Agreement*.") (emphasis added).) These limitations on Movants' purported disclaimer make clear that Movants in fact have not fully disclaimed the possibility of the receiver triggering a rate increase. And it is not clear that, even if Movants' were to issue a full disclaimer, that a receiver would be so constrained.

Furthermore, as Movants are undoubtedly aware, in ruling on their previous attempt to have the automatic stay lifted, the First Circuit ruled that one of the aspects of Movants' rights that must be assessed in relation to any attempt to have the stay lifted is whether Movants "are seeking the protection of existing collateral or, instead, the creation of new collateral." *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 899 F.3d 13, 23 (1st Cir. 2018). Any analyses that Movants have conducted of contemplated rate increases or other revenue-increasing efforts are squarely relevant to whether Movants are seeking to protect existing collateral or create new collateral, and therefore, are essential to these proceedings.

As such, we welcome Movants' offer to produce "samples of non-privileged 'financial models and projections' created by Movants or their advisors that 'evaluate the effect of a rate increase [or transition charge] at PREPA on debt repayment.'" (Movants' Letter of January 9, 2019 at 3.) However, pending review of the documents produced, the FOMB continues to reserve all its rights with respect to these Requests.

### D. Requests Concerning Bond Value—FOMB Document Requests Nos. 14-15, 17-18

We thank Movants for identifying documents within their productions that they believe are sufficient to provide the information sought by these Requests. We will review the documents identified and will follow-up with further correspondence should any concerns remain thereafter. In the meantime, the FOMB continues to reserve all its rights with respect to these Requests.

3

### E. Requests Concerning Anticipated Insurance Payments—FOMB Document Requests Nos. 19, 21

As an initial matter, we are obliged to address Movants' assertion that "[u]ntil the January 4 meet-and-confer, Movants' understanding was that Respondents were *not* seeking documents concerning loss reserves under any circumstances." (Movants' Letter of January 9, 2019 at 6 (emphasis in original).) Throughout the protracted negotiations regarding Movants' document productions, Respondents have at all times reserved their rights pending the final resolution of these discovery disputes. Therefore, it is flatly incorrect to state that Respondents would not "under any circumstances" seek loss reserve information.

More to the point, our agreement not to seek the production of loss reserve information (subject to a reservation of rights) with respect to Request No. 19 was done because Movants' represented that their loss reserve analyses are, among other things, privileged and "are based *not* upon any valuation of PREPA, its revenues or any other collateral, but rather upon irrelevant factors that include privileged assessments of probable litigation outcomes (including the pending Title III proceeding and related disputes) and ongoing settlement and mediation discussions." (Movants' Letter of December 7, 2018 at 4; *see also* Respondents' Letter of December 13, 2018 at 3 ("Regarding request for production 19, the position of the FOMB and AAFAF is that at this time they do not dispute Movants' assertion of privilege over the advice of counsel regarding the likely outcomes of any particularized litigation or settlement discussion.").) In our December 13th letter, we also reiterated our position that "actuarial, accounting or other aggregate estimates of likely payouts are not privileged" and requested that Movants produce "analyses of their overall anticipated liabilities in relation to PREPA bonds." (*Id.*) We also requested a privilege log, which to date we have not been provided. Subsequently, Movants told us – to our surprise – that there in fact are no non-privileged "actuarial, accounting, or other aggregate estimates of likely payouts" on the PREPA bonds. (Movants' Letter of December 27, 2018 at 4.) And yet still we have received no privilege log reflecting the documents that are being withheld.

It was not until your letter of December 27 that we finally understood that Movants' position is that the loss reserve material that Movants claim is responsive to Request No. 19 is the same material that Movants provided to their regulators, which was the subject of Request No. 21. We confirmed that understanding with you on our meet and confer telephone conference that took place on Friday, January 4.

As you are aware, from the outset of our discussions, we have taken the position that Movants have no claim of privilege over material provided to the regulators. And while we are hard-pressed to accept that the only information that Movants have provided to the regulators is the same as the loss reserve information created for litigation and/or settlement purposes, we disagree that the privilege remains intact once the material has been shared. Moreover, contrary to Movants' position taken during the meet-and-confer, it

4

is not a truism that all loss reserve information is by definition, prepared in anticipation of litigation. The First Circuit has squarely held otherwise in *United States v. Textron Inc. & Subsidiaries*, finding that the work product protection did not shield from disclosure work papers prepared to assess liabilities that might be determined in litigation. 577 F.3d 21, 26-27 (1st Cir. 2009) (work papers concerning reserves that are prepared to make book entries, prepare financial statements and obtain an audit not protected by work product privilege). Movants cannot mask discoverable information of a purely quantitative nature utilized in a routine regulatory disclosure by claiming it also relates to litigation, even though the information would have been generated irrespective of litigation. *See*, *e.g.*, *In re Grand Jury Subpoena No. 2013r00691-009*, 201 F. Supp. 3d 767, 772 (W.D.N.C. 2016) ("Documents prepared in anticipation of litigation contrast with 'materials prepared in the ordinary course of business or pursuant to regulatory requirements[.]").[2]

Likewise, Movants' insistence, most recently in your letter of January 9, 2019, that loss reserve information is not subject to discovery, is not supported in the law. Movants rely on a number of decisions in which loss reserves were found to be irrelevant, but each of these is clearly distinguishable from the circumstances of the present litigation. For example, in *Fidelity & Deposit Co. of Maryland v. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996), the court held that "loss reserve information [was] not 'reasonably calculated to lead to the discovery of admissible evidence' *concerning insurance policy interpretation*." (Emphasis added.) Likewise, in *Hoechst Celanese Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 623 A. 2d 1099, 1109 (Del. Super. Ct. 1991), the court found that reserve information would not "evidence[] an acknowledgement by the insurers *of their liability* for [certain] claims." (Emphasis added.) The other cases cited by Movants suffer from similar deficiencies. At bottom, we find ourselves in agreement with Movants' assertion that "Courts evaluate the relevance of loss reserves on a case-by-case basis." In this case, we are confident a Court would conclude that Movants' loss reserve information is highly relevant to the issue of how Movants' value the collateral, and none of the authority cited suggests otherwise.

Movants' invocation of Section 87.2 of the Public Officers Law of New York and to New

---

[2] Movants' reliance on *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31 (D. Mass. 2013), is unavailing. Unlike in *Bryan*, Movants' have not "shown that all of the documents set forth in the[ir] privilege logs were prepared . . . in anticipation of litigation." *Id*. at 37. Most obviously, Movants have not even produced a privilege log from which it might be determined whether the supposedly protected documents were prepared in anticipation of litigation. Furthermore, Movants' selective quoting from the opinion omits the operative fact that the protection remains in place following disclosure if the "disclosure [was] made in pursuit of [] trial preparation, and [was] not inconsistent with maintaining secrecy against opponents." *Id*. at 38 (quoting *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 359-60 (D. Mass. 2003)). Unless Movants are claiming that their regulators are assisting them in preparing for the same litigation in which the supposed work product was created, then *Bryan Corp.* does not support Movants' position.

5

York Insurance Department Regulation No. 71 are similarly off-point. Both relate to the protection of trade secrets and to whether or not such information should be available to the general public – on their face, neither addresses the availability of such information through party discovery.

Moreover, absent production of information that demonstrates Movants' collateral has value and is diminishing post-petition, we are at a loss as to how Movants intend to prosecute their motion. As the First Circuit squarely held, any determination of whether to lift the automatic stay must be guided, in part, by an:

> assessment of the pre-petition value of the bondholders' collateral (if any exists), whether the bondholders face a threat of uncompensated diminution in such value, whether the bondholders are seeking the protection of existing collateral or, instead, the creation of new collateral, and what, if any, adequate protection PREPA can offer short of a receiver being appointed to manage it if protection is warranted.

*In re Oversight Board*, 899 F. 3d at 23. Given this directive, and in light of the discovery requests served and lack of privilege protecting disclosure of this information, Movants are obligated to produce documents identifying their valuation of their collateral.[3]

### F. Requests Concerning "Politicization" at PREPA—AAFAF Document Requests Nos. 2-7

Movants have offered to produce materials provided to officials of the Federal or Puerto Rico Government post-petition concerning PREPA's management. This offer comes as a surprise. During our January 4, 2019 meet and confer Assured and Syncora represented that no such documents exist, and National agreed to provide these documents by Friday, January 11, 2019 so that National's 30(b)(6) deposition could proceed on January 17, 2019. As we stated weeks ago in our December 21, 2018 letter, these materials are responsive to AAFAF Requests 2-7. It is unclear to us what the purpose of Movant's request for confirmation that these materials should be produced could be, other than to further delay Movants' document production. Please produce these materials by close of business today.

Movants have not offered to produce any internal documents that would evidence lobbying or other efforts to influence the Federal or Puerto Rico Government that would not be reflected in written materials provided to those entities. To the extent such internal documents exist, they need to be produced immediately. If they do not exist, please confirm that.

---

[3] For the avoidance of doubt, we do not consider references to public documents regarding market value of securities to be responsive to this request.

6

As we have previously raised in our meet and confer calls, we strongly suspect that Movants have been taking an overly narrow view of AAFAF's requests and injecting unwarranted delay into the meet-and-confer process in order to avoid producing responsive documents. AAFAF reserves all rights with respect to these requests.

## II. Privilege Issues

### A. Movants' Failure to Provide Privilege Logs

We disagree with your contention that a reciprocal agreement to produce privilege logs was discussed in the January 4, 2019 meet and confer. We understand from your January 9, 2019 letter that Movants have now changed their position that no party should be required to produce privilege logs, but have also offered no details regarding the "limited" exchange of logs Movants are contemplating. We are available to meet and confer further regarding this issue and reserve all rights with respect to Movants' privilege claims.

## III. Depositions of Movants

### A. Syncora's Refusal to Produce a Witness

We agree with the position expressed in your letter of January 9, 2019 that this issue was resolved by a telephonic meet-and-confer on January 8, 2019 at which time Syncora agreed to produce a Rule 30(b)(6) witness for deposition on January 23, 2019. We intend to proceed with the deposition at that time if a stipulation with respect to the schedule cannot be reached.

### B. Deposition Scheduling

Movants' sudden refusal to produce their clients for deposition is entirely unacceptable. Movants have already delayed offering dates so that the depositions are currently scheduled to conclude a mere six days before the opposition to the Motion is due. The suggestion that they will now refuse to appear for the dates that Movants themselves have offered is unacceptable.

That PREPA and AAFAF's document productions are not yet complete is immaterial. Movants' obligation to produce witnesses for deposition is in no way contingent upon the opposing party's document production. Moreover, that PREPA and AAFAF's document production is underway is consistent with the litigation schedule (pursuant to which Movants' reply brief is not due until February 25, 2019), and the volume of the production relative to the Movants.

As you are well aware, Movants cannot unilaterally refuse to provide a witness for deposition. *New England Carpenters Health Benefits Fund v. First DataBank, Inc.*, 242 F.R.D. 164, 165 (D. Mass. 2007) ("If the party receiving the [30(b)(6)] notice believes that the notice is improper for some reason, that party does not have the right to refuse to obey

7

the deposition notice on any ground."). If Movants believe they are entitled to refuse to produce a Rule 30(b)(6) witness in response to depositions that have been properly noticed for over 12 weeks and have been scheduled on dates that Movants themselves previously confirmed were workable, they can seek a protective order, which we will oppose. *See id.* at 166 ("What is not proper practice is to refuse to comply with the notice, put the burden on the party noticing the deposition to file a motion to compel, and then seek to justify noncompliance in opposition to the motion to compel. Put simply and clearly, absent agreement, a party who for one reason or another does not wish to comply with a notice of deposition must seek a protective order.").

However, as noted above, Respondents are amenable to discussing a stipulation concerning the schedule in an effort to resolve their disputes with respect to Movants' document production. Please notify us by close of business today if you are amenable to a modification of the schedule for this limited purpose. Absent agreement on that, we will be serving amended deposition notices for the dates that you represented you were holding with your clients during our January 4, 2019 meet and confer.

## IV.  Conclusion

We continue to reserve our client's rights with respect to the discovery requests propounded to Movants.

Sincerely,

*/s/ Margaret A. Dale*                               */s/ Elizabeth L. McKeen*

Margaret A. Dale                                    Elizabeth L. McKeen


cc:  Peter Friedman, Esq.
    Madhu Pocha, Esq.
    Ashley Pavel, Esq.
    Gregg M. Mashberg, Esq.
    Jennifer L. Jones, Esq.
    Laura Stafford, Esq.
    Brandon C. Clark, Esq.