# EXHIBIT D

**BRIAN E. FROSH**
ATTORNEY GENERAL

**ELIZABETH F. HARRIS**
CHIEF DEPUTY ATTORNEY GENERAL

**CAROLYN QUATTROCKI**
DEPUTY ATTORNEY GENERAL

Writer's Direct Dial:  410-468-2023
Facsimile Number:  410-468-2086
e-mail :
Van.Dorsey@maryland.gov



STATE OF MARYLAND
**OFFICE OF THE ATTORNEY GENERAL**
**MARYLAND INSURANCE ADMINISTRATION**
200 St. Paul Place, Suite 2700
Baltimore, Maryland  21202
Toll Free:  1-800-492-6116
TTY:  1-800-735-2258

**J. VAN LEAR DORSEY**
PRINCIPAL COUNSEL

**LISA B. HALL**
DEPUTY COUNSEL

**MARY C. NEVIUS**
**PHOEBE M.  PAPPAS**
**EMILY A. SHRIFT**
**GINA C.R. FISS**
**BARRETT W. FREEDLANDER**
**IOANNIS A. LASKARIS**
**BRANDY J. GRAY**
**PHILIP M. PIERSON**
ASSISTANT ATTORNEYS GENERAL

February 6, 2019

William Duffy, Deputy General Counsel, Regulatory
Assured Guaranty Corp.
1633 Broadway
New York, New York 10019

Re:     In re: The Financial Oversight Management Board for Puerto Rico, No. 17-3283
        (D.P.R.)

Dear Mr. Duffy:

        This letter responds to the request by Assured Guaranty Corp., a Maryland-domiciled
financial guaranty insurer, ("Assured") that the Maryland Insurance Administration (the
"Administration") assert its privilege as to certain documents that Assured has been asked to
produce in the above-referenced private civil litigation in the United States District Court for the
District of Puerto Rico (the "Court").

        You have informed us that the Financial Oversight and Management Board for Puerto
Rico ("FOMB") and the Puerto Rico Fiscal Agency and Financial Advisory Authority
("AAFAF" and, together with the FOMB, the "Respondents") seek production of certain
documents containing loss reserve information relating to Puerto Rico Electric Power Authority
("PREPA") bond exposure that were generated for, or submitted to, the Administration as part of
the Administration's oversight of Assured.  We understand that Assured has resisted disclosure
of the requested loss reserve-related documents on the grounds, among others, that the
documents are (i) irrelevant to the issues at stake in the above-referenced litigation, (ii)
proprietary business information, (iii) protected by the attorney work product doctrine and
attorney-client privilege because Assured's reserves reflect, among other factors, judgments
about potential litigation risks and outcomes based on consultation with both its internal and
external counsel; and (iv) protected from disclosure under certain regulatory examination
privileges, including the "bank examination" privilege. We also understand that FOMB and
AAFAF are suggesting that Assured has waived the protections described in (iii) by providing
the loss reserve-related documents and information to the Administration.

Maryland Code Ann., Ins. §2-209(g) protects, *inter alia*, documents in the possession of the Administration that were obtained from, and/or generated and submitted by, a licensee in connection with the regulatory oversight activities identified in §2-209(g)(1)(ii). Such documents are deemed to be confidential and privileged, are not subject to subpoena and may not be produced or admitted in private civil litigation. Section 2-209(g) is in the nature of a "bank examination" privilege statute. Federal common law recognizes that bank examination reports and communications are protected by a qualified privilege against disclosure. *See In re Citigroup Bond Litig.*, No. 08 CIV. 9522 SHS, 2011 WL 8210671, at *1 (S.D.N.Y. Dec. 5, 2011); *In re Subpoena Served Upon Comptroller of Currency, & Sec'y of Bd. of Governors of Fed. Reserve Sys.*, 967 F.2d 630, 633 (D.C. Cir. 1992). The privilege protects a critical "flow of communication between the bank and the regulatory agency." *In re Subpoena*, 967 F.2d at 634. That necessary flow of information would not be possible "if communications between the bank and its regulators were not privileged." *Id.*[1]

Section 2-209(g) reflects the State's adoption of the important public policy of assuring the flow of sensitive, confidential and proprietary information between insurers and the Administration by protecting regulatory submissions from access by third-parties via judicial process, whether that process is directed at the Administration or a licensee such as Assured. The public policy goals inherent in the statute cannot be met if communications and documentation that are generated at the behest of, and submitted to, the Administration and, thus, cannot be obtained from the Administration itself, could be obtained directly from the regulated entity that is required to generate and submit them. Likewise, and for the same reason, the production to the Administration of otherwise privileged materials (e.g., pursuant to the attorney-work product doctrine and/or attorney-client privilege) cannot waive those privileges in the circumstance where § 2-209(g) statutorily provides for the privileged and confidential nature of such materials. Just as common law doctrines such as the common interest doctrine preclude the waiver of certain privileges when materials are shared among cooperating litigants, so, too, the sharing of otherwise privileged materials with one's regulator in compliance with the requirements of the regulatory oversight provisions identified in §2-209(g)(1)(ii) does not destroy the privileged nature of the submission. To conclude otherwise would undermine and defeat the purpose of § 2-209(g).

---

[1] Despite the title of a "bank" examination privilege, federal common law does not limit the privilege to banking institutions. Courts have found that the privilege applies to correspondence and reports from other regulatory institutions concerning entities under their regulatory purview. *See, e.g., Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 978 F. Supp. 2d 267, 272 (S.D.N.Y. 2013) (applying the bank examination privilege's policy interests to protect communications between the Federal Housing Finance Agency as regulator and Fannie Mae/Freddie Mac as regulated entities); *cf.* 77 Fed. Reg. 15286-01 (Mar. 15, 2012), n.16 (discussing the bank examination privilege's importance to the free flow of information between the Consumer Financial Protection Bureau and its regulated entities, a position later codified by 12 C.F.R. 1070.47-48); David H. Herrington & Kathleya Choriros, *The Developing Privilege for Regulatory Communications with the SEC*, 124 Banking L.J. 704 (Sept. 2007) (chronicling the privilege's application to SEC administrative proceedings). Likewise, the privilege extends to state regulatory agencies when state regulatory submissions and communications are at issue in federal question disputes in federal court. *See* Fed. R. Evid. 501; *Rouson v. Eicoff*, No. 04-CV-2734, 2006 WL 2927161, at *4 (E.D.N.Y. Oct. 11, 2006).

Assured has provided sensitive financial information and analysis, including loss reserves, to the Administration either (i) as part of specific, statutorily-required examinations, (ii) in response to Administration requests in connection with its ongoing regulatory oversight over Assured, and/or (iii) when such information was relevant and necessary to the Administration's consideration of an Assured request or transaction that requires the Administration's approval or non-objection under Title 7 of the Insurance Article of the Maryland Code (addressing transactions within an insurance holding company system), Chapter 10 of Subtitle 5 of Title 31 of the Code of Maryland Regulations (specifically regulating financial guaranty insurers) or other Maryland statutory or regulatory provisions governing insurers. As such, these materials fall within the scope of §2-205 and §2-209(g) of the Insurance Article, pursuant to which they are expressly deemed to be "confidential and privileged", "not subject to subpoena", "not subject to discovery or admissible in evidence in any private civil action", and "not subject to Title 4 of [Maryland's] General Provisions Article", i.e., the state's freedom of information law. *See Insurance Article, §§ 2-205, 2-209.*

I am authorized to advise you on behalf of the Commissioner that the Administration opposes the disclosure of, and invokes all applicable rights and privileges with respect to, documents and information provided by Assured to the Administration in the course of its regulatory oversight of Assured that are protected under § 2-209(g). You are authorized to release this letter to the Respondents and, if necessary, the Court. Please keep us apprised of the status of Respondents' request for these documents, and please inform the Administration of any judicial proceedings relating thereto.

Sincerely,

J. Van Lear Dorsey
Assistant Attorney General

JVLD:lmn