# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>Debtors. | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>PUERTO RICO SALES TAX FINANCING CORPORATION,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3284-LTS |

**RESPONSE OF THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS' URGENT RESPONSE TO INFORMATIVE MOTION [DOCKET NO. 584]**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Pursuant to this Court's order dated February 12, 2019 [Dkt. 586], the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), by and through its undersigned counsel, files this Response to the Official Committee of Unsecured Creditors' ("Committee") Urgent Response to AAFAF's Informative Motion Disclosing Proposed Payment of $7 Million to Bonistas Del Patio, Inc. [Dkt. 584] ("Response") and respectfully states as follows:

1. AAFAF is the fiscal agent and financial advisor for the Government of Puerto Rico, and assists Governmental entities in navigating Puerto Rico's unprecedented fiscal crisis. Act 2-2017, § 5(a). AAFAF oversees "all matters related to the restructuring, renegotiation or adjustment of any existing or future obligation, and the liability management transactions for any existing or future obligation of the Government of Puerto Rico." *Id.* § 5(c). AAFAF also has broad discretion under Puerto Rico law to "take any action or measure necessary or convenient to exercise the powers conferred by this Act or by any other law of the Legislative Assembly of Puerto Rico or of the United States Congress." *Id.* § 5(d)(xiv).

2. On February 5, 2019, this Court confirmed the Third Amended Plan of Adjustment for COFINA. *See Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [Dkt. 561] (the "Plan")

3. Section 15.2 of the Plan provides that "[n]otwithstanding anything contained in the Plan to the contrary all expenses, including Allowed Administrative Expense Claims and Allowed Professional Claims, incurred by the Commonwealth or COFINA, as the case may be, in connection with the development, negotiation, confirmation and consummation of the plan and the compromise and settlement of the Commonwealth-COFINA Dispute shall be paid to the extent available from the funds distributable to the Commonwealth in accordance with the provisions of 2.1 and 15.1 hereof and otherwise by the Commonwealth." Third Amended Plan of Adjustment,

§ 15.2 [Dkt. 436]. The Commonwealth has made multiple payments in connection with Section 15.2 of the Plan.

4. AAFAF, on behalf of the Commonwealth, stipulated on February 11, 2019 to the payment of $7,000,000.00 in fees and expenses incurred by Bonistas del Patio, Inc., ("Bonistas"), a not-for-profit corporation representing the interests of local bondholders, in connection with the development, negotiation, confirmation, and consummation of the COFINA Plan and the compromise and settlement of the Commonwealth-COFINA Dispute (the "Bonistas Expenses"). [Dkt 582-1 (the "Stipulation").] Because of the complexity and importance of the COFINA negotiations, a need existed for the interests of local bondholders to be adequately represented in the negotiations. This subset of bondholders live in Puerto Rico, participate daily in its economy, and are uniquely invested in Puerto Rico's economic recovery.

5. Bonistas retained legal counsel and a financial advisor for the express purpose of contributing to these consensual negotiations by representing the interests of resident bondholders. Given the many benefits the settlement of the Commonwealth-COFINA Dispute provided to the Commonwealth, and the critical role Bonistas played in the "development, negotiation, confirmation and consummation of the plan and the compromise and settlement of" that dispute, AAFAF was warranted in incurring this obligation on behalf of the Commonwealth. *See id.* at 2.

6. As explained in the attached Declaration of Brian M. Resnick Regarding Payment of Bonistas Expenses (the "Resnick Declaration"), Bonistas played a critical role in advancing a consensual restructuring of COFINA's debt, which had critical and manifestly obvious benefits to the Commonwealth. The Resnick Declaration provides detailed information on Bonistas, the immense work Bonistas' professionals undertook in connection with the resolution of the Commonwealth-COFINA Dispute and the formulation, negotiation, and consummation of the

3

Plan, including as extremely active participants in the Court-ordered mediation, and the specific and concrete benefits that such work provided to Puerto Rico.

7. AAFAF and Bonistas have had extensive discussions regarding payments of Bonistas' professional fees, both generally and specifically in connection with the Commonwealth-COFINA dispute. In or around August 2018, AAFAF agreed in concept to incur an obligation on behalf of the Commonwealth (conditioned on the consummation of a COFINA Title III plan) and AAFAF communicated this to the Financial Oversight and Management Board. In order to memorialize the agreement in principle, AAFAF, Bonistas, and Bonistas' professionals commenced negotiations in respect of the Stipulation on February 7, 2019, and agreed to the final terms thereof on February 11, 2019, the date on which the Stipulation was field with the Court. *See* Informative Motion Regarding Stipulation Section 15.2 Expenses [Dkt. 582] ("Informative Motion"). As the Resnick Declaration makes clear, the payments to Bonistas are being used to pay Bonistas' legal and financial professionals. As to the timing of the disclosure of this agreement, AAFAF did not believe a disclosure was warranted until the structure of the agreement was formulated. For the reasons explained below, disclosure was not obligated, but made in the public interest.

8. On February 12, 2019, the Committee filed its Response, arguing that AAFAF's voluntary disclosure was inadequate and requesting an order directing that the Bonistas Expenses not be paid until AAFAF answers eight enumerated questions. [Dkt. 584 at ¶ 6.] This Court subsequently directed AAFAF to withhold payment of the Bonistas Expenses pending resolution of the Committee's Response. [Dkt. 586.]

9. AAFAF is providing responses herein and as set forth in the Resnick Declaration to all of the questions posed in the Committee's Response as ordered by the Court. Generally,

4

however, AAFAF believes the Committee's arguments are misplaced. AAFAF's disclosure of the Bonistas Expenses is not "inadequate" because disclosure was not legally required — such disclosure was done to let the public know the payment was being made. Nothing in the COFINA Plan or in PROMESA requires Court approval to authorize payment of specific expenses under Section 15.2 of the Plan.

10. As the Committee observed in its Response, PROMESA does not incorporate Section 363(b) of the Bankruptcy Code. Therefore, Court approval of the stipulation or payment of the Bonistas Expenses is not required.[2]

11. Recognizing the absence of Bankruptcy Code Section 363(b) from PROMESA, the Committee contends that some form of disclosure or approval of fees is nonetheless required because the stipulation and undertaking to pay Bonistas arose in the context of a plan of adjustment. *See* Response at fn.5. AAFAF disagrees. PROMESA differs substantially and meaningfully from Chapters 9 and 11 of the Bankruptcy Code with respect to payments and disclosures of fees and expenses in connection with plans of adjustment or reorganization. While Chapters 9 and 11 have express statutory mandates which speak directly to, and require disclosure and approval of, such payments, PROMESA does not incorporate those provisions.

12. Under Chapter 11, section 1129(a)(4) prohibits the payment of expenses in connection with a plan without court approval. *See* 11 U.S.C. § 1129(a)(4) (requiring that any payment under a plan "has been approved by, or is subject to the approval of, the court as reasonable."). Under Chapter 9, section 943(b)(3) requires disclosure of fees paid by a debtor and

---

[2] AAFAF does not believe inclusion of Section 15.2 in the Plan required the Commonwealth to obtain Court approval of all fees paid thereunder or constituted consent to Court determinations therewith per Section 305 of PROMESA. *See In re City of Stockton*, 486 B.R. 194, 198 (Bankr. E.D. Cal. 2012) (construing Bankruptcy Code Section 904) ("[T]he bankruptcy court cannot prevent a chapter 9 debtor from spending its money for any reason, even foolishly or in a manner that disadvantages other creditors, unless the municipality consents to such judicial oversight." ).

5

any other person and a court determination that expenses paid through a plan are "reasonable."  11 U.S.C. § 943(b)(3) (requiring, as a condition of plan confirmation, that "all amounts to be paid by the debtor or by any person for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable").  PROMESA, however, does not incorporate either of these provisions into Title III, nor does it impose any analogous confirmation standard.  48 U.S.C. § 2161(a) (provisions incorporated into Title III of PROMESA expressly do not include § 1129(a)(4) or § 943) § 2174 (plan confirmation standards do not include an analog to either section).  Given that Congress expressly excluded from PROMESA these very specific provisions that might otherwise be applicable to payments made in connection with the Plan, AAFAF did not have a legal obligation to disclose payment to Bonistas or to seek Court approval thereof.  Notwithstanding that, AAFAF believed disclosure was prudent under the circumstances.[3]

13.     Accordingly, for the reasons stated above, AAFAF respectfully requests that this Court vacate its February 12, 2019 Order [Dkt. 586], so that the Commonwealth may proceed to pay the Bonistas Expenses.

---

[3] To the extent Court approval of payments is necessary in any form, AAFAF believes that the services undertaken by Bonistas' professionals were extremely beneficial to the Commonwealth and their payment is fully justified.

6

Dated: February 13, 2019
New York, New York

By: */s/ Suzzanne Uhland*

John J. Rapisardi (*pro hac vice*)
Suzzanne Uhland (*pro hac vice*)
Peter Friedman (*pro hac vice*)
**O'MELVENY & MYERS LLP**
Times Square Tower
Seven Times Square
New York, NY 10036
Tel.: (212) 326-2000
Fax: (212) 326-2061

*Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisor Authority*

Dated: February 13, 2019
San Juan, Puerto Rico

By: */s/ Luis C. Marini-Biaggi*

Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel.: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisor Authority*