**PUBLIC VERSION**

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>Case No. 17 BK 4780-LTS<br><br>**This court filing relates only to Case No. 17 BK 4780-LTS** |

## DECLARATION OF BENJAMIN ROSENBLUM IN OPPOSITION TO THE URGENT MOTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, AS REPRESENTATIVE OF DEBTOR, TO COMPEL PRODUCTION OF DOCUMENTS FROM MOVANTS RELATING TO THEIR MOTION FOR RELIEF FROM AUTOMATIC STAY

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

USActive 53407905

PUBLIC VERSION

I, Benjamin Rosenblum, pursuant to 28 U.S.C. § 1746, declare and state as follows:

1. I am the Chief Actuary of Assured Guaranty Municipal Corp. ("AGM") and Assured Guaranty Corp. ("AGC" and, together with AGM, "Assured"), a position I have held since 2009. In that role, I oversee Assured's calculation and establishment of loss reserves.

2. I submit this declaration in opposition to the *Urgent Motion Of Financial Oversight And Management Board, As Representative Of Debtor, To Compel Production Of Documents From Movants Relating To Their Motion For Relief From Automatic Stay* (ECF No. 1065)[2] (the "Motion to Compel") filed by the Financial Oversight and Management Board ("FOMB"), as representative of the Puerto Rico Electric Power Authority ("PREPA") in these Title III proceedings. The purpose of my declaration is to describe certain documents that Assured has withheld from its production on the grounds that they are not responsive to the requests made and, in any event, are protected from disclosure by the work product doctrine, attorney-client privilege, bank examiner privilege and other protections.

3. As financial guaranty insurers, AGM and AGC issue insurance policies that guaranty the scheduled payment of principal and interest on bonds, notes and similar securities in the event the issuer of the particular insured security fails to make all or a portion of any principal and/or interest payment when such payment is due. The holders of the insured security (often through a representative, such as a bond trustee or paying agent) are the beneficiaries of the Assured policy since the policy protects the holders against the issuer's failure to pay. Payment by AGM and AGC neither satisfies nor discharges an issuer's obligation to pay and, to the extent AGM or AGC make payments to bondholders, AGM and AGC step into the shoes of such bondholders, become the owners of their bonds, and are entitled to seek reimbursement for their payments from the issuer.

---

[2] "ECF No." refers to documents filed in Case No. 17-BK-4780-LTS, unless otherwise noted.

PUBLIC VERSION

4. Bonds issued by PREPA are among the bonds insured by AGM and AGC. PREPA has not made any payments on the PREPA bonds during its Title III case.

5. AGM and AGC, joined by National Public Finance Guarantee Corporation and Syncora Guarantee Inc. (together, with AGM and AGC, the "Insurers"), have filed a motion seeking an order lifting the Title III automatic stay in order to allow them to exercise their statutory right to seek the appointment of a receiver for PREPA (the "Lift Stay Motion"). In connection with discovery for that motion, I understand that FOMB has asked the Court to compel the production of:

> all documents relating directly or indirectly to [the Insurers'] valuation and/or quantification of their security interest, if any, in PREPA's revenues before, on and after the Petition date, including loss reserve information concerning the PREPA bonds that have been furnished to regulators.

Mot. to Compel ¶ 23.

6. As described more fully in the pending Lift Stay Motion, Assured's security for the PREPA bonds it insures includes a lien on PREPA's revenues, in combination with various covenants intended to ensure that PREPA produces sufficient revenues to repay the bonds over time.

7. I have reviewed the documents that Assured has identified and is currently withholding in response to the discovery requests that are the subject of FOMB's Motion to Compel. None of these documents are valuations of Assured's security for the PREPA bonds, nor do they reflect any quantitative analysis of PREPA's actual or expected future revenues, such as an attempt to quantify the present value of a future PREPA revenue stream. Rather, all of the documents being withheld pertain to the loss reserves that Assured has set aside to satisfy its insurance obligations with respect to the PREPA bonds (as well as other bonds in Puerto Rico) and as part of Assured's evaluation and assessment of the existing Puerto Rico litigations.

A. **Assured's Calculation of Loss Reserves**

8. Loss reserves are funds created for the purpose of paying anticipated claims under insurance policies. AGM and AGC are both required by law to report their aggregate loss reserves in financial statements that are filed with U.S. State insurance regulators on a quarterly basis and are available publicly on the website of Assured's parent, Assured Guaranty Ltd., and through State insurance department websites. AGM and AGC are not required to publicly disclose (nor do they disclose) their individual, per insured credit loss reserves that comprise their aggregate reserves.

9. 

10.

11. Assured's loss reserves, however, are not responsive to FOMB's discovery requests. Loss reserves are not themselves a valuation and/or quantification at any time of Assured's security interest in or the total value of PREPA's revenues. Moreover, given that loss reserves are determined based upon, and incorporate, advice and analysis provided by Assured's

-3-

internal and external counsel regarding litigation risk assessments and various settlement scenarios, disclosure to FOMB, as a representative of PREPA, would be extremely detrimental to Assured by revealing proprietary information that FOMB and PREPA could use to unfairly influence any settlement, compromise or restructuring support agreement ("RSA") discussions.

12. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

13. ███████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████

USActive 53407905

**PUBLIC VERSION**

14. ████████

15. ████████

- ████████
- ████████
- ████████

---

3 ████████

16. █████████████████████████████████████

17. █████████████████████████████████████

**B. Assured's Confidential Reporting of Reserves To Its Regulator**

18. AGC is domiciled in Maryland, where its domiciliary regulator is the Maryland Insurance Administration (the "MIA"), and AGM in New York, where its domiciliary regulator is the New York State Department of Financial Services (the "NYDFS"). Both companies are authorized to do business in all fifty U.S. states (including each other's state of domicile), the District of Columbia and Puerto Rico. AGM is also authorized to do business in Guam and the U.S. Virgin Islands.

19. During the period from and after January 1, 2017, which is the time frame of FOMB's discovery requests, AGC and AGM have reported PREPA loss reserves to the MIA and NYDFS as part of a statutorily-required examination of both companies (and a third company jointly owned by AGM and AGC) in which the MIA and the NYDFS served as joint examiners. They have also during such period reported PREPA loss reserves in response to specific MIA and

NYDFS requests that typically applied to both companies, regardless of the regulator making the request, as the MIA's and NYDFS's regulatory authority extends to cover insurers licensed to transact business in their states, not only ones domiciled there. Lastly, AGC and AGM, since January 1, 2017, have also reported PREPA loss reserves to their domiciliary regulator (MIA or NYDFS) in connection with specific transactions requiring the regulator's pre-approval or non-objection.

20. AGC and AGM have made all such reports on a strictly confidential basis, pursuant to a fact- and law-based understanding that their specific, per insured credit loss reserves constitute proprietary, privileged, and highly sensitive information that would be protected from disclosure to third parties. Both the MIA and the NYDFS are bound by specific confidentiality provisions under law that would keep Assured's reserve information confidential. *See, e.g.,* Maryland Code Ann., Ins. §2-209(g) (providing that documents in the possession of the MIA obtained from an insurer licensed in Maryland during an examination or analysis of such insurer, including under Title 7, are confidential and privileged, not subject to Maryland's Public Information Act, not subject to subpoena, and not subject to discovery or admissible in evidence in any private civil action"); N.Y. Pub. Off. Law § 87(2)(d) (exempting from New York's Freedom of Information Law ("FOIL") any "trade secrets" submitted by regulated entities to NYDFS "which if disclosed would cause substantial injury to the competitive position of the subject enterprise"); N.Y. Ins. Law § 1504(c) ("The superintendent shall keep the contents of each report made pursuant to this article and any information obtained in connection therewith confidential and shall not make the same public without the prior written consent of the controlled insurer to which it pertains . . . .").

21. AGC and AGM from time to time have reinforced their expectation of confidentiality established by these statutes by including an express request for confidential treatment in their respective submissions containing loss reserves and other sensitive information

to MIA and NYDFS personnel. Submissions on their face generally request confidential treatment and cite to the State provisions establishing the confidentiality expectations.

22. The MIA and NYDFS also have affirmatively acknowledged AGC's and AGM's expectation of confidentiality, whether or not AGC and AGM explicitly requested it. For example, the NYDFS regulator in connection with a request that Assured update its gross and net outstanding insured principal and related reserves relating to Puerto Rico (including any adjustments to such reserves for Hurricane Maria), has confirmed that NYDFS would only be sharing with fellow regulator members of the Financial Analysis Working Group of the National Association of Insurance Commissioners Assured's net outstanding insured principal amounts, which Assured publicly discloses, and not its loss reserve information, which Assured does not publicly disclose. In addition, a recent letter, attached as Exhibit A, to Assured from the representative of the Maryland Attorney General Office who serves as Principal Counsel to the MIA, confirms that the MIA "opposes the disclosure of, and invokes all applicable rights and privileges" with respect to the documents that Assured has provided to the MIA that are at issue here. *See* Ex. A at 3. The MIA provided this letter in response to being advised of FOMB's attempt to obtain loss reserve and related information from Assured as part of the discovery at issue here and noted that the Maryland statutory protection provisions are "in the nature of a bank examination privilege." *Id.* at 2.

23. I have reviewed the documents that Assured has identified and is currently withholding in response to the discovery requests that are the subject of FOMB's Motion to Compel. All of these documents are being withheld because the only information they contain that is responsive to FOMB's request are or are related to AGM's and AGC's PREPA loss reserves, as reported confidentially to the MIA and NYDFS pursuant to the understandings described above.

24. To the best of my knowledge, as a matter of practice, both the NYDFS and MIA have always honored and preserved Assured's expectation of confidentiality of loss reserves

and other trade secrets shared in the ordinary course of regulation. Both regulators' consistent, reliable protection of Assured's most sensitive commercial and litigation related information has helped to preserve an open dialogue between Assured and these regulators on matters requiring regulatory oversight, including the setting of loss reserves.

25.  If Assured's confidential, highly sensitive reserve information were to be disclosed to other parties—especially the other parties to this proceeding—the resulting harms would be serious. Construing Assured's reporting to the MIA and NYDFS as a waiver of privilege would destroy Assured's expectation of confidentiality over the information provided to its regulators, thereby undermining the free and candid exchange of information that is essential between a regulator and its regulated entities. Even more damaging for purposes of this proceeding, the disclosure of Assured's reserves to FOMB, as PREPA's representative, would reveal to FOMB and PREPA the product of privileged legal advice from Assured's attorneys, reflecting those attorneys' mental impressions and opinions regarding the strength of Assured's legal positions and the likely litigation and/or settlement outcomes of this very proceeding. Ultimately, Assured's reserves would almost certainly be misused by FOMB to infer internal settlement ranges considered or recommended by counsel, thus undermining settlement discussions and thwarting the efforts of all involved to ensure a fair legal process in the Title III cases.

USActive 53407905

I declare under penalty of perjury that the foregoing facts are true and correct to the best of my knowledge.

Dated: February 14, 2019
New York, New York

_____
Benjamin Rosenblum