PUBLIC VERSION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA<br>Title III<br><br><br><br>Case No. 17 BK 4780-LTS |

**PUBLIC VERSION:**

**DECLARATION OF DREW HOFFMAN IN OPPOSITION TO**
**MOTION TO COMPEL**

Drew Hoffman, pursuant to 28 U.S.C. § 1746, hereby declares as follows:

1. I am a Senior Vice-President at Syncora Guarantee Inc. ("Syncora").

2. I submit this declaration in opposition to the Motion to Compel filed on February 7, 2019 by the Financial Oversight and Management Board (the "Oversight Board").

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1004982804v5

PUBLIC VERSION

3. Except as otherwise indicated, I submit this affidavit based on my personal knowledge and the records of Syncora.

## Background

4. I have been employed at Syncora since 2002. Among other things, I lead Syncora's Surveillance and Research group where I oversee a team of credit professionals who monitor the performance of Syncora's portfolio of insured credits and work to implement remediation procedures to mitigate risk. In addition, I am also a member of Syncora's executive management committee.

5. Syncora is an insurance company that guaranteed payment of principal and interest when due on certain of the revenue bonds (the "PREPA Bonds") issued by Puerto Rico Electric Power Authority ("PREPA") under a trust agreement between PREPA and U.S. Bank National Association, as successor trustee, dated January 1, 1974, as amended and supplemented.

6. As a financial guaranty insurer, Syncora issues insurance policies that guaranty the scheduled payment of principal and interest on bonds, notes and similar securities in the event the issuer of the particular insured security fails to make all or a portion of any principal and/or interest payment when such payment is due. The holders of the insured security (often through a representative, such as a bond trustee or paying agent) are the beneficiaries of Syncora's policies since the policy protects the holders against the issuer's failure to pay. Payment by Syncora neither satisfies nor discharges an issuer's obligation to pay and, to the extent Syncora makes payments to bondholders, Syncora steps into the shoes of such bondholders and becomes the owner of their bonds. Certain bonds issued by PREPA are among the bonds insured by Syncora.

PUBLIC VERSION

7. As set forth in Syncora's proof of claim, Syncora insures three series of PREPA Bonds. See Claim No. 49143. Starting in July 2017, PREPA failed to pay debt service on the PREPA Bonds and has not made any payments during its Title III case. As a result of PREPA's failure to pay debt service on the PREPA Bonds, Syncora has paid $91,651,869.32 on account of the PREPA Bonds that it insured, and is therefore subrogated to the rights of PREPA bondholders. Syncora also insures PREPA's obligations to satisfy its debt service obligations under certain PREPA Bonds through 2027.

**Loss Reserve Documents Withheld**

8. The purpose of this declaration is to describe certain documents withheld by Syncora from production on the grounds that they are not relevant to the pending lift stay motion, and, in any event, are protected from disclosure by attorney-client privilege, the work product doctrine, the bank examiner privilege, and other protections.

9. I understand that the Oversight Board has asked the Court to compel the production of:

> all documents relating directly or indirectly to the Movants' valuation and/or quantification of their security interest, if any, in PREPA's revenues before, on and after the Petition date, including loss reserve information concerning the PREPA bonds that have been furnished to regulators.

Mot. to Compel at 8.

10. Specifically, the Oversight Board is seeking documents containing Syncora's privileged and proprietary loss reserve calculations that were submitted to the New York Department of Financial Services ("NYDFS"), based on the mistaken belief that these loss reserves reflect Syncora's valuation of the collateral securing the PREPA Bonds.

11. As described more fully in the pending lift-stay motion and the related expert declarations, Syncora's collateral for the PREPA Bonds consists of a lien on PREPA's

PUBLIC VERSION

current and future revenues, as well as certain covenants intended to ensure that PREPA produces sufficient revenues to repay the PREPA Bonds over time.

12. As described below, I have reviewed the documents that Syncora has identified and is currently withholding in response to the discovery requests that are the subject to the motion to compel. None of these documents are valuations of Syncora's security for the PREPA Bonds, nor do they reflect any quantitative analysis of PREPA's actual or expected future revenues, such as an attempt to quantify the present value of a future PREPA revenue stream. Rather, all of the documents being withheld pertain to the loss reserves that Syncora has set aside to satisfy its insurance obligations with respect to the PREPA Bonds (as well as other bonds in Puerto Rico) and as part of Syncora's evaluation and assessment of the existing Puerto Rico litigations.

13. Loss reserves are funds created for the purpose of setting capital aside in anticipation of having to pay future claims under insurance policies in the event of a default. Syncora's loss reserve information is a statutorily-prescribed, discounted[2], weighted-average, probabilistic assessment of several potential outcomes for this Title III proceeding, which include litigation, mediation and settlement scenarios, as well as a variety of other factors. Syncora's loss reserves are not pure factual reporting of business operations. As explained in more detail below, Syncora has undertaken these assessments during and in anticipation of litigation, based on advice from counsel regarding the strength of Syncora's legal positions, the prospects of achieving certain potential settlements with PREPA, and the status of ongoing litigation and settlement discussions.

---

[2] [redacted]

1004982804v5

14. PREPA-related loss reserves are dependent on various PREPA and non-PREPA factors, none of which relate to valuing the collateral securing the PREPA Bonds. Therefore, such loss reserve information cannot be determinative of the value of the collateral securing the PREPA Bonds.

15. In addition, due to the complex nature of these loss reserve calculations, no single one of these factors is currently likely to have an immediate or outsized impact on Syncora's decision to maintain a certain level of reserves. For similar reasons, such reserve calculations are not typically updated in response to any specific ordinary developments, including developments involving PREPA or Puerto Rico in general, unless it is an unforeseen event. Therefore, Syncora's loss reserve calculations do not provide a "valuation" of the collateral securing the PREPA Bonds, which is what the Oversight Board claims is the information it wants. Rather, for regulatory, surplus and liquidity purposes, such information represents Syncora's statutorily-based calculations designed to ensure that Syncora has the necessary funds to address negative scenarios involving bond issuers, including PREPA.



1004982804v5

PUBLIC VERSION



1004982804v5

[redacted]

21. This loss reserving process is done in close consultation with Syncora's in-house and outside counsel, and incorporates counsel's legal advice regarding identifying and analyzing potential scenarios and the estimated probabilities for these scenarios which reflect (a) legal advice regarding the strength of Syncora's litigation positions and the status of ongoing litigation and/or settlement discussions and (b) Syncora's prospects for achieving certain potential settlements with PREPA based on such legal positions, prior efforts to reach settlement, and the status of any current and ongoing settlement discussions.

22. Importantly, at no point in this process does Syncora attempt to estimate, value, or otherwise quantify PREPA's revenues or the collateral that PREPA pledged as security for the bonds—i.e., PREPA's present and future revenues. Nor is any such valuation used as an input for calculating Syncora's loss reserves. Nor has PREPA provided Syncora with a valuation of its present or future revenues. Therefore, collateral valuations cannot be extracted from the loss reserve information.

23. As a result of this methodology, the recommended reserve amount for the PREPA Bonds reflects a variety of factors, including a weighted average of potential losses as predicted based on legal advice from counsel regarding projected litigation or settlement outcomes of the Title III proceeding. For this reason, the disclosure of Syncora's loss reserves would unfairly prejudice and harm ongoing settlement discussions in this proceeding by revealing information that could be used to infer Syncora's assessment of potential litigation and settlement outcomes of this Title III case.

1004982804v5

### Syncora's Confidential Reporting of Reserves To Its Regulator

24. During the time frame of the Oversight Board's discovery requests, Syncora has reported PREPA loss reserve presentations to NYDFS in its role as insurance regulator pursuant to statutory and regulatory requirements. These are not disclosures to an adversary in litigation, and are made to Syncora's governmental regulator as part of the statutory oversight process. For example, N.Y. Ins. Law § 1504(a)(1) provides: "Every controlled insurer shall file with the superintendent such reports and material as the superintendent may direct for the purpose of disclosing information . . . that may materially affect the operations, management or financial condition of the insurer."

25. NYDFS is bound by specific confidentiality provisions under law that would keep Syncora's reserve information confidential. *See, e.g.*, N.Y. Ins. Law § 1504(c) ("The superintendent shall keep the contents of each report made pursuant to this article and any information obtained in connection therewith confidential and shall not make the same public without the prior written consent of the controlled insurer to which it pertains . . ."); N.Y. Pub. Off. Law § 87(2)(d) (exempting from New York's Freedom of Information Law ("FOIL") any "trade secrets" submitted by regulated entities to NYDFS "which if disclosed would cause substantial injury to the competitive position of the subject enterprise").

26. Consistent with these laws, communications and disclosures with NYDFS were all done on a strictly confidential basis. In fact, each presentation provided by Syncora to NYDFS contains the following express request for confidential treatment in their respective submissions containing loss reserves and other sensitive information:

> This entire submission, including any accompanying email, contains confidential information including business plans and strategies that are not otherwise available to the public and that, if disclosed, could cause substantial injury to the competitive position of Syncora Guarantee Inc. Accordingly, pursuant to N.Y.

-8-

> Pub. Off. L. § 89(5) and N.Y. Comp. Codes R & Regs. Tit. 11, pt. 241, Syncora Guarantee Inc. respectfully request that this submission, including any accompanying email, be afforded confidential treatment and be excepted from disclosure pursuant to N.Y. Pub. Off. L. § 87(2)(d) and N.Y. Comp. Codes R & Regs. Tit. 11, § 241.6(a).

Syncora, therefore, had a reasonable expectation that such information disclosed to NYDFS would remain confidential in accordance with applicable law. Such an expectation of confidentiality is critical to the operational relationship between regulators and regulated entities. Syncora does not disclose its loss reserve information to the public or to any parties for which there exists any adverse relationship given the highly sensitive and proprietary nature of such information.

27. To the best of my knowledge, as a matter of practice, NYDFS honors and preserves Syncora's expectation of confidentiality of loss reserves and other trade secrets shared in the ordinary course of regulation. The NYDFS' consistent, reliable protection of Syncora's most sensitive information has helped to preserve an open dialogue between Syncora and NYDFS on matters requiring regulatory oversight, including the setting of loss reserves.

28. In addition to complying with its regulatory obligations, loss reserves for PREPA, which has defaulted on its obligations and filed for bankruptcy protection, are heavily dependent on the status of ongoing litigation, mediation, and settlement scenarios and discussions. As a result, and as discussed above, Syncora's in-house and outside counsel incorporate expected litigation outcomes and scenarios in calculating the appropriate loss reserve ratios. Thus, Syncora considers its calculation of loss reserves to be proprietary, privileged, confidential, and extremely sensitive.

29. If Syncora's confidential, proprietary, privileged, and highly sensitive reserve information were to be disclosed to other parties—especially the other parties to this

PUBLIC VERSION

proceeding—the resulting harms would be serious. Construing Syncora's reporting to NYDFS as a waiver of privilege would destroy Syncora's expectation of confidentiality over the information provided to its regulators, thereby undermining the free and candid exchange of information that is essential between a regulator and its regulated entities. Constraining regulated insurers' ability to provide sensitive business information and litigation scenarios to NYDFS would undermine the objective of the regulations.

30. Even more alarmingly for purposes of this proceeding, the disclosure of Syncora's reserves to the Oversight Board, as PREPA's representative, would reveal to the Oversight Board and PREPA the product of privileged legal advice from Syncora's attorneys, reflecting those attorneys' mental impressions and opinions regarding the strength of Syncora's positions and the likely litigation and/or settlement outcomes of this very proceeding. Syncora's reserves could then be misused by the Oversight Board to improperly infer internal settlement ranges considered or recommended by counsel, thus undermining any RSA or settlement discussions and thwarting efforts to ensure a fair legal process in the Title III cases.

31. In sum, the documents withheld by Syncora were all loss reserve related presentations that were provided to NYDFS and I believe were all appropriately withheld on the grounds of the bank examiner privilege, attorney-client privilege, and attorney work product. Disclosing such information would be extremely prejudicial to Syncora, NYDFS's regulatory oversight and this Title III proceeding.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge and belief.

Executed on February 14, 2019 in New York, New York

/s/ *Drew R. Hoffman*
Drew Hoffman
Senior Vice President
Syncora Guarantee Inc.