# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | PROMESA |
| | ) | Title III |
| THE FINANCIAL OVERSIGHT AND | ) | |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | Case No. 3:17-bk-03283 (LTS) |
| as representative of | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| Debtors. | ) | |
| | X | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| as representative of | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| Debtor. | ) | |
| | X | |

## MOTION OF CERTAIN SECURED CREDITORS
## OF THE EMPLOYEES RETIREMENT SYSTEM OF THE
## GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO
## FOR APPOINTMENT AS TRUSTEES UNDER 11 U.S.C. § 926

## **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ......................................................................... iii

PRELIMINARY STATEMENT ..................................................................... 1

JURISDICTION AND VENUE ....................................................................... 3

FACTUAL BACKGROUND ........................................................................... 4

    A.    From Its Creation, ERS Was Intended To Be A Trust Independent From
         The Commonwealth.......................................................................... 4

    B.    Congress Enacts PROMESA And The Oversight Board Begins
         Representing Both The Commonwealth And ERS.............................. 6

    C.    The Commonwealth And The Oversight Board Pass Legislation
         Dismantling ERS And Seizing Its Assets While ERS Is A Title III Debtor
         Protected By The Automatic Stay....................................................... 7

ARGUMENT ................................................................................................. 8

THE COURT SHOULD APPOINT THE BONDHOLDERS TRUSTEES UNDER
§ 926 OF THE BANKRUPTCY CODE............................................................ 8

    A.    Section 926 Permits A Title III Court To Appoint A Trustee To Pursue
         Avoidance Actions On Behalf Of The Debtor....................................... 9

    B.    ERS Has Claims Against The Commonwealth Under § 549 And § 544
         That The Oversight Board Has Unjustifiably Failed To Pursue.......................... 10

         1.    A Trustee Could Avoid The Transfers Effected By The Post-
               Petition Legislation Under § 549 ........................................... 10

         2.    A Trustee Could Also Avoid The Transfers Effected By The
               Post-Petition Legislation Under § 544................................... 12

    C.    The Oversight Board Is Laboring Under A Deeply Problematic And
         Unresolvable Conflict Of Interest Because It Is Representing Parties With
         Opposing Interests In The Same Case And Disregarding The Best Interest
         Of One Of Those Parties.................................................................... 14

         1.    The Oversight Board Has Ignored ERS's Independent Status
               Under PROMESA And Puerto Rico Law, As Well As ERS's
               Fiduciary Duties To Its Creditors ........................................... 14

         2.    The Conflict Is Actual, Not Theoretical ................................. 16

         3.    Elsewhere The Oversight Board Has Acknowledged That It
               Cannot Represent Both Sides To A Controversy ................... 17

         4.    This Court Too Has Recognized The Danger Of Conflicts Of
               Interest............................................................................... 18

## <u>TABLE OF CONTENTS</u>
(continued)

**Page**

D.    Timely Appointment Of A Trustee Is Crucial Because The Statute Of Limitations Expires Two Years From The Commencement Of The Case Or The Date Of The Transfer.................................................................. 19

E.    The Court Should Appoint The ERS Bondholders Trustees; In The Alternative, The Court Should Appoint A Trustee Approved By The Bondholders To Pursue ERS's Claims ............................................................... 20

CONCLUSION........................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Acands, Inc.* v. *Travelers Cas. & Sur. Co.*,
435 F.3d 252 (3d Cir. 2006)........................................................................................17

*Aurelius Inv., LLC* v. *Puerto Rico*,
No. 18-1671, 2019 WL 642328 (1st Cir. Feb. 15, 2019).................................19, 20

*Commodity Futures Trading Comm'n* v. *Weintraub*,
471 U.S. 343 (1985).....................................................................................................15

*De Jesus Diaz* v. *Carrero*,
12 P.R. Offic. Trans. 786 (P.R. 1982).......................................................................13

*In re Bankvest Capital Corp.*,
375 F.3d 51 (1st Cir. 2004)........................................................................................10

*In re Delco Oil, Inc.*,
599 F.3d 1255 (11th Cir. 2010) .................................................................................11

*In re Gibson Grp., Inc.*,
66 F.3d 1436 (6th Cir. 1995) .....................................................................................10

*In re Lopez-Soto*,
764 F.2d 23 (1st Cir. 1985).........................................................................................17

*In re Marrero*,
382 B.R. 861 (B.A.P. 1st Cir. 2008).....................................................................10, 11

*In re Merry-Go-Round Enters., Inc.*,
400 F.3d 219 (4th Cir. 2005) .....................................................................................12

*In re N.Y. City Off-Track Betting Corp.*,
No. 09-17121, 2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) ......................10

*In re Owens Corning*,
419 F.3d 195 (3d Cir. 2005)..................................................................................15, 16

*In re Sepulveda Figueras*,
193 B.R. 118 (Bankr. D.P.R. 1996) ..........................................................................13

*In re Tougas*,
338 B.R. 164 (Bankr. D. Mass. 2006) ......................................................................10

*In re WHET, Inc.*,
750 F.2d 149 (1st Cir. 1984).......................................................................................15

*In re WM Distribution, Inc.*,
571 B.R. 866 (Bankr. D.N.M. 2017) .........................................................................16

*U.S. Fid. & Guar. Co.* v. *Guzman*,
Nos. 10-1078 & 11-1415, 2012 WL 4790314 (D.P.R. 2016).................................13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Woods* v. *City Nat'l Bank & Tr. Co. of Chi.*,
312 U.S. 262 (1941)...........................................................................15

**STATUTES AND RULES**

3 L.P.R.A. § 761.................................................................................4

3 L.P.R.A. § 763.................................................................................4

3 L.P.R.A. § 775.................................................................................4

3 L.P.R.A. § 781.................................................................................8

3 L.P.R.A. § 787f...............................................................................4

3 L.P.R.A. § 787q...............................................................................4

31 L.P.R.A. § 3028............................................................................12

31 L.P.R.A. § 3492............................................................................12

11 U.S.C. § 301.................................................................................19

11 U.S.C. § 362.........................................................................3, 7, 12

11 U.S.C. § 544..........................................................................*passim*

11 U.S.C. § 545.................................................................................9

11 U.S.C. § 546................................................................................19

11 U.S.C. § 547.................................................................................9

11 U.S.C. § 548.................................................................................9

11 U.S.C. § 549..........................................................................*passim*

11 U.S.C. § 550.............................................................................3, 9

11 U.S.C. § 926..........................................................................*passim*

28 U.S.C. § 1331...............................................................................3

28 U.S.C. § 1391...............................................................................3

48 U.S.C. § 301................................................................................17

48 U.S.C. § 2141..............................................................................15

48 U.S.C. § 2161........................................................................*passim*

48 U.S.C. § 2162...............................................................................6

48 U.S.C. § 2164...........................................................................7, 15

48 U.S.C. § 2166...............................................................................3

48 U.S.C. § 2167...............................................................................3

**TABLE OF AUTHORITIES**
(continued)

Page(s)

48 U.S.C. § 2175 ............................................................................................6

48 U.S.C. § 2195 .......................................................................................3, 15

Joint Resolution for Other Allocations for Fiscal Year 2017–2018 ("Joint
   Resolution 188" or "J.R. 188") ......................................................... *passim*

Law to Guarantee Payment to Our Pensioners and Establish a New Plan for
   Defined Contributions for Public Servants ("Act 106") ................................ *passim*

Puerto Rico Oversight, Management, and Economic Stability Act,
   Pub. L. No. 114-187, 130 Stat. 549 (2016),
   *codified at* 48 U.S.C. §§ 2101–2241 ............................................. *passim*

Fed. R. Bankr. P. 6001 ..................................................................................10

OTHER AUTHORITIES

Collier on Bankruptcy (16th ed. rev. 2018) ...........................................9, 10

Commonwealth of Puerto Rico, Financial Information and Operating Data Report
   (Oct. 30, 2014) ......................................................................................4, 5

Commonwealth of Puerto Rico, Financial Information and Operating Data Report
   (Dec. 18, 2016) .........................................................................................5

Emps. Ret. Sys. of the Gov't of the Commw. of P.R., Annual Financial
   Information: Fiscal Year 2016 ................................................................5

Movants (hereinafter the "Bondholders" or "ERS Bondholders"),[1] all of whom are secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), respectfully move the Court for entry of an order appointing them as trustees, pursuant to § 926 of title 11 of the United States Code (the "Bankruptcy Code"), to pursue the claims in the attached proposed Complaint (Exhibit A) on behalf of ERS against the Commonwealth of Puerto Rico (the "Commonwealth") or, in the alternative, appointing, with the Bondholders' approval, an independent third-party fiduciary as trustee to pursue those claims in consultation with the Bondholders. In support of the motion, the ERS Bondholders state as follows:

## PRELIMINARY STATEMENT

The ERS Bondholders respectfully ask this Court to appoint them trustees under 11 U.S.C. § 926 to pursue avoidance claims against the Commonwealth under 11 U.S.C. §§ 549 and 544. Such relief is necessary because the Financial Oversight and Management Board ("Oversight Board" or "Board") has refused to litigate those claims. That is unsurprising, because the claims arise from Commonwealth legislation, enacted *after* the commencement of ERS's Title III case

---

[1] Movants include Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

and *at the Oversight Board's behest*, purporting to dismantle ERS and transfer all of ERS's assets, including its revenues and its right to receive revenues, to the Commonwealth. And despite the fact that ERS was a debtor in its own Title III case and was an independent entity to which the Commonwealth owed statutory financial obligations, neither the Board's fiduciary duty to ERS nor ERS's fiduciary duty to its creditors appears to have been recognized or to have played any role in the Board's decisionmaking. Section 926 was designed for just such circumstances, in which a conflict of interest has disabled a debtor or its representatives from pursuing claims in the debtor's own best interest or that of its creditors.

Elsewhere the Oversight Board has recognized the impossibility of simultaneously representing the Commonwealth and other entities with interests adverse to those of the Commonwealth. For instance, in a dispute between the Puerto Rico Sales Tax Financing Corporation ("COFINA") and the Commonwealth—both of which the Board represents—the Board sought appointment of independent representation for COFINA (selected by COFINA creditors) and the Commonwealth (in the case of the Commonwealth, an official committee that did not have a disabling conflict) so that both COFINA and the Commonwealth would have loyal representatives and advisors. But here the Board has steadfastly refused to chart a similar course, even though the conflict in COFINA's case was in many respects less severe than the Board's total plundering and destruction of ERS at the hands of the Commonwealth.[2]

Congress provided tools for remedying such unusual and problematic situations in the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), Pub. L. No.

---

[2] Neither the Official Committee of Unsecured Creditors nor the Official Committee of Retired Employees of the Commonwealth of Puerto Rico would be a suitable representative of ERS, because both committees represent both creditors of the Commonwealth and creditors of ERS, and therefore have the same conflicts as the Board and the Puerto Rico Fiscal Agency and Financial Advisory Authority.

114-187, 130 Stat. 549 (2016), *codified at* 48 U.S.C. §§ 2101–2241. *First*, PROMESA's automatic-stay provision prohibits any attempt to gain possession of or control over a debtor's property. 11 U.S.C. § 362(a)(3). The automatic stay forbids the Board and the Commonwealth's actions destroying ERS and seizing its property. *Second*, PROMESA allows a debtor to avoid and recover the value of an unauthorized or fraudulent transfer of property. *See id.* §§ 544(b), 549(a), 550. The relevant provisions allow ERS to invalidate the Commonwealth's legislation and recover ERS's transferred property. *And third*, as noted, PROMESA allows a Title III court, on request of a creditor, to appoint a trustee to pursue avoidance claims where the debtor has refused to do so itself. *Id.* § 926(a). That appointment power was designed for just such cases as this one, where a debtor is unwilling or unable to sue a transferee, notwithstanding the debtor's own best interest or that of its creditors.[3]

The Bondholders have attached a proposed Complaint setting forth ERS's claims against the Commonwealth. The Bondholders have asked the Board to pursue these claims, as set forth in the attached letter, but the Board has failed to respond. Absent relief under § 926, neither interested parties nor the Court can be assured of a fair outcome, because they will not have benefited from the zealous advocacy on which our adversarial system relies. And time is of the essence, because the periods prescribed by the applicable statutes of limitations under PROMESA on these two claims expire in several months.

## JURISDICTION AND VENUE

This Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a). Venue is proper pursuant to 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a).

---

[3] This list is not exhaustive. For example, PROMESA also provides a protection against inter-debtor transfers that is enforceable if the automatic stay is lifted. 48 U.S.C. § 2195.

## FACTUAL BACKGROUND

### A.    From Its Creation, ERS Was Intended To Be A Trust Independent From The Commonwealth

In 1951, ERS was created by legislation as an independent, self-governing trust to provide pension and other benefits to officers and employees of the Commonwealth government, members and employees of the Legislative Assembly, and officers and employees of Commonwealth public corporations and municipalities. *See* 3 L.P.R.A. §§ 761, 775. ERS's Enabling Act established a Board of Trustees responsible for setting policy for ERS and overseeing the operations of ERS consistent with the Act. *Id.*

Until legislation that took effect on July 1, 2017, *see infra* pp. 7–8, ERS was funded by employer contributions, employee contributions, and its investment earnings. *See, e.g.*, 3 L.P.R.A. §§ 763(42), 787f, 787q. Employers were required to pay monthly contributions to ERS. ERS's "statutory right to receive [e]mployer[] [c]ontributions [was] an obligation of the [e]mployers and a legal asset of [ERS]." Bond Resolution VI-1, Adversary Compl., Ex. A, *Altair Glob. Credit Opportunities Fund (A), LLC* v. *Puerto Rico*, Adv. Proc. Nos. 3:17-ap-219 & 3:17-ap-220 (D.P.R. July 27, 2017), ECF No. 1-1 ("Bond Resolution").

The Commonwealth was ERS's largest participating employer. Historically, the Commonwealth was responsible for approximately 59 percent of employer contributions, while Puerto Rico municipalities and public corporations were responsible for the remainder. *See, e.g.*, Commonwealth of Puerto Rico, Financial Information and Operating Data Report 88 n.6, 130 (Oct.

4

30, 2014); Commonwealth of Puerto Rico, Financial Information and Operating Data Report 228 (Dec. 18, 2016).[4]

ERS had the statutory authority to compel the payment of unpaid employer contributions, and any contributions in arrears for more than 30 days had priority over any other outstanding debt of a public employer. Puerto Rico law also provided for criminal penalties for the failure to remit employer contributions to ERS in a timely manner.

Despite the importance of employer contributions to ERS, the Commonwealth has never paid ERS enough to satisfy its statutory contribution requirements. By the date of ERS's Title III petition, the Commonwealth owed ERS more than $411 million. ERS, Annual Financial Information: Fiscal Year 2016, at 13 n.1.[5] ERS never used its statutory ability to enforce those obligations.

Consequently, ERS was forced to seek outside funding to continue paying pension benefits. In 2008, ERS issued bonds pursuant to and governed by a Pension Funding Bond Resolution. *See* Bond Resolution. The majority of ERS bonds were sold to individual Puerto Rico residents and local businesses, and many are still held by those persons and entities.

An integral part of ERS's bond issuance was an extensive security package designed to protect the bondholders' investment. ERS granted bondholders, through a Fiscal Agent, a security interest in and lien on certain ERS property, including, *inter alia*, all employer contributions received by ERS, all "right, title, and interest of [ERS] in and to" those contributions, and "all rights to receive [those contributions]." Bond Resolution § 501, at VI-8 & Ex. B, VI-36. That

---

[4] Online at http://www.gdb.pr.gov/documents/CommonwealthReport-October302014.pdf and http://www.gdb.pr.gov/documents/CommonwealthofPuertoRicoFinancialInfoFY201612-18-16.pdf.

[5] Online at https://emma.msrb.org/ER1050099-ER822796-ER1223828.pdf.

property was to remain "free and clear of any other pledge, lien, charge, or encumbrance," *id.* § 705, at VI-15, and was to be used to make timely principal and interest payments on ERS Bonds, *id.* § 501, at VI-8. Notably, ERS pledged its statutory right to collect employer contributions to secure the bonds, and that right was exercisable upon default. *Id.* § 501, at VI-8; *id.* § 1102, at VI-22. ERS further promised bondholders that it would "oppose any attempt by the Legislature of the Commonwealth to reduce the Employers' Contribution Rate or to make any other change in … relevant legislation that would have a material adverse effect on Bondholders." *Id.* § 709(2), at VI-16.

### B.   Congress Enacts PROMESA And The Oversight Board Begins Representing Both The Commonwealth And ERS

On June 30, 2016, Congress enacted PROMESA. Under the financial restructuring authority provided by Title III of PROMESA, the Oversight Board filed petitions on behalf of both the Commonwealth and ERS on May 3 and 21, 2017, respectively, *see In re Fin. Oversight & Mgmt. Bd. ex rel. Puerto Rico* (*Puerto Rico*), No. 17-bk-3283 (D.P.R.), ECF No. 1; *In re Fin. Oversight & Mgmt. Bd. ex rel. Emps. Ret. Sys.* (*ERS*), No. 17-bk-3566 (D.P.R.), ECF No. 1; 48 U.S.C. §§ 2162, 2175, purporting to serve as each debtor's representative despite ERS's and the Commonwealth's directly conflicting interests—as noted, the Commonwealth owes ERS vast sums of money. The Oversight Board continues to represent both debtors simultaneously—in some cases, even by the very same lawyers.

Notwithstanding the Oversight Board's simultaneous representation of ERS and the Commonwealth, PROMESA treats each debtor as a separate entity. Territories and covered territorial instrumentalities are considered separate entities, 48 U.S.C. § 2162(1), and each entity gets to decide for itself whether it "desires to effect a plan to adjust its debts," *id.* § 2162(3). And although the Oversight Board is the representative of each debtor, *id.* § 2175(b), PROMESA states

that "nothing in [Title III] shall be construed as authorizing substantive consolidation of the cases

of affiliated debtors," *id.* § 2164(f), even if the cases are administered jointly, *id.* § 2164(g).

### C.   The Commonwealth And The Oversight Board Pass Legislation Dismantling ERS And Seizing Its Assets While ERS Is A Title III Debtor Protected By The Automatic Stay

The filing of ERS's Title III petition on May 21, 2017, triggered the operation of the

automatic stay to protect ERS's property. 11 U.S.C. § 362; 48 U.S.C. § 2161(a) (incorporating

§ 362 into PROMESA). On June 25, 2017, in total disregard of the ERS automatic stay, however,

the Puerto Rico Legislative Assembly passed Joint Resolution for Other Allocations for Fiscal

Year 2017–2018 ("Joint Resolution 188" or "J.R. 188") pursuant to the Fiscal Plan the Oversight

Board had approved and certified for the Commonwealth. On June 30, 2017, the Oversight Board

adopted the resolution on behalf of the Governor, who subsequently signed it. Joint Resolution

188 required ERS to sell its assets and transfer the net proceeds, plus any available funds, into the

Commonwealth's General Fund. J.R. 188, §§ 1–3.[6] The resolution also required employers to

make contributions directly to the Commonwealth's General Fund rather than to ERS. *Id.* §§ 1–4.

On August 23, 2017, with the automatic stay still in effect, the Governor signed a Law to

Guarantee Payment to Our Pensioners and Establish a New Plan for Defined Contributions for

Public Servants ("Act 106"). Act 106 further implemented Joint Resolution 188. The law stated

that Joint Resolution 188 "eliminated" "the employer contributions being made until now," and

purported to set up a new "'Pay-Go' Fee" that employers must pay directly into the

Commonwealth's General Fund. Act 106, § 1.4, pp. 13–14. As suggested by the title of the

legislation, the "'Pay-Go' Fee" is nothing new, however, because the employers required to pay it

---

[6] In its most recent fiscal plan, the Commonwealth admits that "[s]ince FY2018 … the majority of the liquid assets in the retirement system have been depleted." New Fiscal Plan for Puerto Rico 29 (Oct. 23, 2018).

are the same government entities (including the Commonwealth, public corporations, and municipalities) that were previously obligated to make contributions to ERS; indeed, even the "contributions" are the same obligations. *See id.* § 1.6(g), p. 15 (requiring payments from "entities considered employers under the [ERS]"); *compare id.* § 2.1(b), p. 17, *with* 3 L.P.R.A. § 781(a) (2008). Finally, Act 106 required ERS's Board of Trustees to dissolve by December 31, 2017, so a new board could be formed to dispose of ERS's property. Act 106, §§ 4.2, 5.1–5.3.

Act 106 and Joint Resolution 188 (together, the "Post-Petition Legislation") were in the best interest of no one except the Commonwealth, which wanted ERS's assets and property for other politically expedient purposes. The legislation, which dismantled ERS and seized its assets, was certainly not in ERS's best interest. Nor was the Post-Petition Legislation in the best interest of ERS's creditors. Instead, the Post-Petition Legislation purported to change the Commonwealth's financial relationship with ERS by transferring all of ERS's assets to the Commonwealth for its own purposes.

On January 28, 2019, the ERS Bondholders asked the Oversight Board to pursue on behalf of ERS the claims identified in this motion and the attached proposed Complaint. *See* Letter from Bruce S. Bennett and John K. Cunningham to Martin J. Bienenstock (Exhibit B). The Board acknowledged receipt of the letter on the same day, but has not responded.

## ARGUMENT

### THE COURT SHOULD APPOINT THE BONDHOLDERS TRUSTEES UNDER § 926 OF THE BANKRUPTCY CODE

The Oversight Board has declined to pursue ERS's claims against the Commonwealth because it is suffering from an incurable conflict of interest given its simultaneous representation of both the Commonwealth and ERS and its role in mandating the Post-Petition Legislation. The Board's inaction is deeply inequitable to both ERS and its creditors, to whom ERS owes a fiduciary

duty. But this Court can remedy the situation. By incorporating § 926 of the Bankruptcy Code, PROMESA authorizes a Title III court to appoint a trustee to prosecute certain types of avoidance actions the debtor has refused to pursue. The ERS Bondholders' proposed complaint identifies two such causes of action, one each under § 549 and § 544 of the Bankruptcy Code, that the Oversight Board should have asserted against the Commonwealth based on the Post-Petition Legislation's transfer of ERS's assets to the Commonwealth. A trustee appointed by this Court under § 926 would be able to avoid those transfers and recover their value for ERS and its creditors. The Oversight Board's conflict of interest in representing both the Commonwealth and ERS is the only possible explanation for its refusal to bring those valuable claims. Accordingly, the Court should appoint the Bondholders trustees under § 926. Alternatively, the Court should appoint an independent third-party fiduciary approved by the Bondholders as trustee to pursue those claims in consultation with the Bondholders.

### A. Section 926 Permits A Title III Court To Appoint A Trustee To Pursue Avoidance Actions On Behalf Of The Debtor

Section 926 provides that "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of [the Bankruptcy Code], then on request of a creditor, the court may appoint a trustee to pursue such cause of action." 11 U.S.C. § 926(a); *see* 48 U.S.C. § 2161(a) (incorporating § 926(a) into PROMESA). As relevant here, §§ 549 and 544 allow the debtor to avoid unlawful postpetition transfers, and § 550(a) allows the debtor to recover the transfers or their value from the transferee.

A conflict of interest is ample reason to appoint a trustee. *See generally* 6 Collier on Bankruptcy ¶ 926.02 (16th ed. rev. 2018) ("The reason for section 926(a) derives from the possible reluctance of a debtor to bring an action against one of its creditors during the course of a chapter 9 case," whether because "the debtor actually favors the transfer rather than opposes it" or because

the debtor is unwilling, "while it is attempting to negotiate a plan, to antagonize its creditors."). "Section 926 explicitly anticipates and is intended to address those scenarios in which the debtor does not consent to the pursuit of a cause of action." *In re N.Y. City Off-Track Betting Corp.*, No. 09-17121, 2011 WL 309594, at *6 (Bankr. S.D.N.Y. Jan. 25, 2011). As courts have recognized in the analogous context of derivative standing, a debtor abuses its discretion and acts unjustifiably where it "acts under the influence of conflicts of interest" and "favor[s] certain creditors over others." *In re Gibson Grp., Inc.*, 66 F.3d 1436, 1441 (6th Cir. 1995). And where appointment of a trustee is warranted, "the court is given unfettered discretion in determining whom to appoint as a trustee." 6 Collier, *supra*, ¶ 926.02[3].

**B.      ERS Has Claims Against The Commonwealth Under § 549 And § 544 That The Oversight Board Has Unjustifiably Failed To Pursue**

      **1.      A Trustee Could Avoid The Transfers Effected By The Post-Petition Legislation Under § 549**

**a.** "[S]ection 549 of the Bankruptcy Code … provides that a trustee may avoid certain post-petition transfers of property." *In re Bankvest Capital Corp.*, 375 F.3d 51, 62 (1st Cir. 2004). The statute provides, in relevant part, that a "trustee may avoid a transfer of property … that occurs after the commencement of the case; and … that is not authorized under [the Bankruptcy Code] or by the court." 11 U.S.C. § 549(a)(1), (2)(B). PROMESA expressly makes that power available to a trustee appointed under Bankruptcy Code § 926. *See id.* § 926(a) (trustee may pursue action under § 549(a)); 48 U.S.C. § 2161(a) (incorporating §§ 549(a) and 926 into PROMESA).

To establish a § 549(a) claim, the trustee must allege that (1) property of the debtor (2) was transferred (3) after commencement of the case, and that (4) the transfer was not authorized by either the Bankruptcy Code or the court. *See In re Tougas*, 338 B.R. 164, 177–78 (Bankr. D. Mass. 2006); *accord In re Marrero*, 382 B.R. 861, 865–66 (B.A.P. 1st Cir. 2008). The burden of proof then shifts to the "entity asserting the validity of [the] transfer." Fed. R. Bankr. P. 6001; *see, e.g.*,

*Marrero*, 382 B.R. at 865 ("no error of law in the bankruptcy court's conclusion that [creditor] failed to meet its burden of showing that the delivery of the new mortgage was not a transfer of estate property subject to avoidance under § 549(a)"); *In re Delco Oil, Inc.*, 599 F.3d 1255, 1259 (11th Cir. 2010).

**b.** Those requirements are easily met here. *First*, by way of the Post-Petition Legislation, the Commonwealth seized and transferred ERS's property to itself, as the Oversight Board has recently admitted. *See* Board's Mot. Dismiss Pls.' Compl. 6, *Am. Fed'n of Teachers* v. *Commonwealth of Puerto Rico*, Adv. Proc. No. 3:18-ap-134 (D.P.R. Jan. 8, 2019), ECF No. 11 ("Mot. Dismiss Am. Fed'n Teachers' Compl.") ("Pursuant to Law 106, participants no longer make contributions to (or accumulate benefits in) the retirement systems established in 1951 [*i.e.*, ERS], and their employers have ceased to make contributions to those systems … . Instead, participants now contribute to the Defined Contribution Plan."); *supra* pp. 7–8. The Post-Petition Legislation dismantled ERS, seized its assets, and redirected its contribution streams into the Commonwealth's General Fund. *See supra* pp. 7–8. *Second*, that legislation and the resulting transfers of ERS's property occurred well after the filing of ERS's Title III petition on May 21, 2017. Joint Resolution 188 was passed by the Puerto Rico Legislative Assembly on June 25, 2017, and adopted on June 30, 2017, by the Oversight Board on behalf of the Governor, who subsequently signed it. Act 106 was signed by the Governor on August 23, 2017. *See supra* p. 7. *Finally*, the transfers of ERS's property were unauthorized by either the Bankruptcy Code or the Court. Nothing in PROMESA or the Bankruptcy Code allows the seizure of a Title III debtor's property without authorization.

In fact, the automatic stay triggered by the filing of ERS's Title III petition on May 21, 2017, *prohibits* such post-petition transfers by enjoining "any act to obtain possession of [ERS's]

11

property … or to exercise control over [ERS's] property." 11 U.S.C. § 362(a)(3). It is difficult to imagine a more egregious stay violation than the Commonwealth and Oversight Board's working together to dismantle ERS and take all of its assets by enacting the Post-Petition Legislation.

The Oversight Board cannot defend the validity of the transfers effected by the Post-Petition Legislation. The Board has never disputed that the transfers occurred or that they occurred *after* the filing of ERS's Title III petition. And because the transfers were seizures of ERS's property that violated the automatic stay, the Oversight Board cannot carry its "burden of proving that the transfers were 'authorized.'" *In re Merry-Go-Round Enters., Inc.*, 400 F.3d 219, 225 (4th Cir. 2005).

### 2. A Trustee Could Also Avoid The Transfers Effected By The Post-Petition Legislation Under § 544

Section 544(b)(1) of the Bankruptcy Code provides that a "trustee may avoid any transfer of an interest of the debtor in property … that is voidable under applicable law by a creditor holding an [allowable] unsecured claim." PROMESA expressly gives that authority to a trustee appointed under § 926. *See* 11 U.S.C. § 926(a) (trustee may pursue action under § 544(b)); 48 U.S.C. § 2161(a) (incorporating §§ 544(b) and 926 into PROMESA).

In this case, the "applicable law" is Puerto Rico fraudulent transfer law, including Articles 1064 and 1243 of the Civil Code of Puerto Rico, 31 L.P.R.A. §§ 3028, 3492. Article 1064 of the Civil Code of Puerto Rico allows creditors to "impugn the acts which the debtor may have performed in fraud of [a creditor's] right." 31 L.P.R.A. § 3028. Article 1243 of the Civil Code of Puerto Rico allows transfers executed in fraud of creditors to be rescinded when creditors "cannot recover, in any other manner, what is due them." 31 L.P.R.A. § 3492(3). "Actions to rescind a fraudulent conveyance … are evaluated with reference to the principles of contract law derived

from the Puerto Rico Civil Code." *U.S. Fid. & Guar. Co.* v. *Guzman*, Nos. 10-1078 & 11-1415, 2012 WL 4790314, at *6 (D.P.R. 2016).

Courts consider various factors to determine whether a transfer is fraudulent under Puerto Rico law. The debtor need not have "intended to harm his creditors"; it is enough "that he knew of the results of his action." *In re Sepulveda Figueras*, 193 B.R. 118, 120–21 (Bankr. D.P.R. 1996). Courts also consider whether the transfer was for inadequate consideration, whether the transfer was made in haste, and the debtor's insolvency; courts additionally assess the relationship between the debtor and the transferor as well as the state of the business of the debtor and of the judicial claims against him. *See De Jesus Diaz* v. *Carrero*, 12 P.R. Offic. Trans. 786, 789, 795 (P.R. 1982); *Guzman*, 2012 WL 4790314, at *6 (citing *In re El Mundo Corp.*, 208 B.R. 781, 783 & n. 1 (D.P.R. 1997)).

Under that rubric, the Post-Petition Legislation effected fraudulent transfers of ERS's property. *First*, ERS received no or inadequate consideration, because the Commonwealth transferred all or substantially all of ERS's property without assuming all of ERS's obligations, including its obligations to the Bondholders. *Second*, the transfers were executed by the Commonwealth, an insider of ERS and one that owed substantial funds to ERS. *Third*, at the time the transfers were made, ERS was experiencing severe underfunding caused, in large part, by the Commonwealth's own failure to make hundreds of millions of dollars in statutorily required contributions. *See supra* pp. 4–5. The transfers effectuated by the Post-Petition Legislation left ERS insolvent. *Finally*, at the time of the transfers, the Commonwealth was aware of ERS's obligations to its bondholders and enacted the Post-Petition Legislation as a means to avoid those obligations and instead use those assets for other purposes.

13

C.   **The Oversight Board Is Laboring Under A Deeply Problematic And Unresolvable Conflict Of Interest Because It Is Representing Parties With Opposing Interests In The Same Case And Disregarding The Best Interest Of One Of Those Parties**

Even though ERS, as an independent, self-governing trust separate from the Commonwealth, has claims against the Commonwealth, the Oversight Board has refused to pursue those claims. *See supra* pp. 4, 8; Part B. That refusal is inexcusable given the Oversight Board's responsibility for representing ERS in its Title III case. But it is also unsurprising given the Oversight Board's simultaneous representation of the Commonwealth. The Board's representation of both sides means that it cannot possibly be acting with undivided loyalty in the best interest of ERS, and the circumstances make clear that the Board has chosen ERS and its creditors for unfavorable treatment. And although that structural conflict alone should be disqualifying, the Oversight Board's role in promulgating and defending the Post-Petition Legislation—which, if not invalidated, will destroy ERS entirely—provides still further reason to appoint the ERS Bondholders as trustees to prosecute these claims on ERS's behalf. The Oversight Board cannot be both pillager (for the Commonwealth) and fiduciary to the victim (for ERS).

1.   **The Oversight Board Has Ignored ERS's Independent Status Under PROMESA And Puerto Rico Law, As Well As ERS's Fiduciary Duties To Its Creditors**

The Oversight Board's role in prompting the Post-Petition Legislation demonstrates its refusal to treat ERS as the independent entity that both Puerto Rico law and PROMESA recognize it to be. *See e.g.*, Mot. Dismiss Am. Fed'n Teachers' Compl. 6 ("The first Commonwealth fiscal plan the Governor proposed in March 2017 included reforms of retirement benefits. … The Oversight Board modified the plan and called for prompt legislation to effectuate, among other things, a transition to defined-contribution accounts."). Puerto Rico law established ERS as an independent trust, with a statutory right to collect employer contributions from the Commonwealth

14

and other government employers. *See supra* pp. 4–5. And PROMESA recognizes the independence of each debtor. For example, fiscal plans under PROMESA are expressly required to ensure that "assets, funds, or resources" of ERS are not to be "transferred to, or otherwise used for the benefit of" the Commonwealth. 48 U.S.C. § 2141(b)(1)(M). Similarly, PROMESA provides a cause of action to protect creditors from inter-debtor transfers. *See id.* § 2195. Indeed, PROMESA goes so far as to state that "nothing in [Title III] shall be construed as authorizing substantive consolidation of the cases of affiliated debtors." *Id.* § 2164(f); *see supra* p. 6. Even under background principles, "substantive consolidation is extreme (it may affect profoundly creditors' rights and recoveries) and imprecise," and so "this 'rough justice' remedy should be rare." *In re Owens Corning*, 419 F.3d 195, 199, 211 (3d Cir. 2005), *as amended* (Nov. 1, 2007). The Post-Petition Legislation, however, disregards that independence and, when combined with the Oversight Board's irreconcilable conflict and position, operates to substantively consolidate ERS's case into the Commonwealth's.

That course of action is improper. In addition to having its own interests, ERS owes its own fiduciary duty to its creditors, including the Bondholders. The Board, as ERS's representative, has those same obligations. *See, e.g.*, *Commodity Futures Trading Comm'n* v. *Weintraub*, 471 U.S. 343, 355 (1985) ("[I]f a debtor remains in possession—that is, if a trustee is not appointed—the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor out of possession."); *In re WHET, Inc.*, 750 F.2d 149, 149 (1st Cir. 1984) (per curiam) (trustee "owes a fiduciary duty to debtor and creditors alike to act fairly and protect their interests"). But ERS and its representative cannot fulfill those duties if they are simultaneously beholden to the Commonwealth's conflicting interests. *See, e.g.*, *Woods* v. *City Nat'l Bank & Tr. Co. of Chi.*, 312 U.S. 262, 269 (1941) ("A fiduciary who represents security

holders in a reorganization may not perfect his claim to compensation by insisting that although
he had conflicting interests, he served his several masters equally well or that his primary loyalty
was not weakened by the pull of his secondary one. Only strict adherence to these equitable
principles can keep the standard of conduct for fiduciaries 'at a level higher than that trodden by
the crowd.'"); *In re WM Distribution, Inc.*, 571 B.R. 866, 872 (Bankr. D.N.M. 2017)
("Simultaneous representation of two related debtors presents a potential for an actual conflict of
interest. Often inter-company transfers will exist, resulting in each debtor holding a claim against
the other. Courts often find such dual representation a disqualifying actual conflict."). And
PROMESA's disapproval of substantive consolidation is especially relevant here, where creditors
like the ERS Bondholders "relied on the separateness of" ERS and the Commonwealth, *Owens
Corning*, 419 F.3d at 210, in lending money to ERS.

### 2.    The Conflict Is Actual, Not Theoretical

The Oversight Board's conflict of interest is not only structural. It has also clearly affected
the Board's decisions not to bring the claims identified in the Bondholders' proposed Complaint.
As noted, both those claims are against the Commonwealth and also concern the Oversight Board
itself, whose Post-Petition Legislation purports to do nothing less than destroy ERS by seizing all
its assets and ordering the dissolution of its Board of Trustees. But the conflict is still worse than
that. It infects not just the Oversight Board's decisions to enact and defend the Post-Petition
Legislation, but also the Board's arguments in support of that legislation.

For instance, the Oversight Board has contended that there can be no automatic stay
violation because ERS could seek to nullify the automatic stay retroactively. Board Mot. Dismiss
Pls.' Amended & Supplemented Compl. 15–16, *Altair*, Adv. Proc. Nos. 3:17-ap-219 & 3:17-ap-
220 (Nov. 17, 2017), ECF No. 41. *But see* ERS Bondholders' Opposition 28–30, *Altair*, Adv. Proc.
Nos. 3:17-ap-219 & 3:17-ap-220 (Dec. 20, 2017), ECF No. 50. Not only is that meritless

contention indicative of the Board's serious conflict, but it also deprives the Court of the benefit

of zealous advocacy on ERS's behalf. In any event, the automatic stay protects *creditors* as well

as debtors, *In re Lopez-Soto*, 764 F.2d 23, 27 (1st Cir. 1985) (Breyer, J.); consequently, it "may

not be waived and its scope may not be limited by a debtor," *Acands, Inc.* v. *Travelers Cas. & Sur.

Co.*, 435 F.3d 252, 259 (3d Cir. 2006) (Alito, J.). And if not for the Oversight Board's effort to

defend its own conduct and that of the Commonwealth in enacting the Post-Petition Legislation,

there is no conceivable reason why the Board would *want* ERS to waive the automatic stay. Indeed,

the Oversight Board cannot explain how, consistent with ERS's duties the Bondholders and its

prior representations regarding the Bondholders' liens and bonds, ERS could consent to legislation

that dismantles it, requires it to transfer its property to the Commonwealth, and eliminates the

ability of the ERS Bondholders to recover the amounts ERS owes to them.

### 3.   Elsewhere The Oversight Board Has Acknowledged That It Cannot Represent Both Sides To A Controversy

The Oversight Board cannot seriously dispute that a serious conflict inheres in its

simultaneous representation of ERS and the Commonwealth. Indeed, elsewhere the Board

*requested* and *consented to* the appointment of independent representatives for COFINA (selected

by COFINA creditors) and the Commonwealth to resolve a dispute between COFINA and the

Commonwealth. Stipulation & Order Approving Procedure Resolve Commonwealth-COFINA

Dispute 4, ¶ 4(b), *Puerto Rico*, No. 17-bk-3283, ECF No. 996. The controversy concerned whether

sales and use taxes, which were pledged to secure COFINA bonds, were property of the

Commonwealth or COFINA. Mot. of Debtors for Order Approving Procedure to Resolve

Commonwealth-COFINA Dispute 8, ¶ 17, *Puerto Rico*, No. 17-bk-3283, ECF No. 303. In its

motion for approval of procedures to resolve the Commonwealth–COFINA dispute, the Oversight

Board requested appointment of independent Commonwealth and COFINA representatives on the

ground that it was "prudent to establish an independent debtor representative for the Commonwealth and COFINA to fully advocate, at arm's length, on behalf of each Debtor to reach a fair resolution." *Id.* at 13, ¶ 34. The Board clearly recognized that there was no legitimate alternative to affording each debtor independent representation to pursue its individual interests. There is no principled reason for the Board's willingness to appoint an independent fiduciary in the COFINA dispute but not for ERS.

### 4.    This Court Too Has Recognized The Danger Of Conflicts Of Interest

COFINA is not alone in experiencing the distorting effects of the Board's conflicts of interest. Earlier in these Title III proceedings, this Court rejected the Board's initial proposal, on behalf of the Puerto Rico Electric Power Authority ("PREPA"), to obtain $1 billion in debtor-in-possession financing from the Commonwealth. Feb. 15, 2018, Hr'g Tr. 232:10–12, *Puerto Rico*, No. 17-bk-3283, ECF No. 2579. The Court held the motion in abeyance pending an amended proposal. *Id.* at 232:10–12.

The Court found that although the cooperative approach between the Commonwealth and PREPA, both represented by the Oversight Board, "might be [admirable] under other circumstances in aid of other aspects of Puerto Rico's renewal and debt adjustment process, it [did] not meet the threshold requirements of [Bankruptcy Code] Section 364 and [did] not provide the required predicate for Court approval of the proposed credit facility." *Id.* at 232:4–12. Recognizing the inherent conflict of interest, the Court concluded "that a business judgment standard focused solely on rationality from a PREPA business point of view is inappropriate and that fairness to the body of PREPA stakeholders and, in particular, the bondholders, must be considered in light of the fact that this is a transaction in which the parties to the proposed credit are closely related and in which the decision-making is intertwined." *Id.* at 232:25–233:7. The circumstances here are far

18

worse—the decisionmaking is completely one-sided and in disregard of ERS's bondholders, and yet is purportedly being conducted on behalf of both the Commonwealth and ERS.

> ### D. Timely Appointment Of A Trustee Is Crucial Because The Statute Of Limitations Expires Two Years From The Commencement Of The Case Or The Date Of The Transfer

The applicable statutes of limitations permit avoidance actions under §§ 549 and 544 within limited periods only. With each passing day, the Oversight Board's failure to pursue those actions prejudices ERS and its creditors and threatens to shut the door permanently. And there certainly can be no assurance that the Oversight Board will take any action prior to the statutes of limitations' expiring given its conflicting representation of the ERS and the Commonwealth.

The statute of limitations for an action or proceeding under § 549 is "two years after the date of the transfer sought to be avoided." 11 U.S.C. § 549(d). The Post-Petition Legislation went into effect between July 1, 2017, and August 23, 2017. As a result, any § 549(a) claims will be barred no later than August 23, 2019, and perhaps earlier. Yet the Oversight Board, despite having more than a year to analyze and bring a § 549 claim, has done nothing. As a result, only a matter of months remain for an appointed trustee to bring such avoidance actions.

The limitations period under § 544 is even stricter—*i.e.*, two years after the commencement of the case. *See id.* § 546(a) ("2 years after the entry of the order for relief"); *id.* § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief … ."). Because the Oversight Board filed ERS's Title III Petition on May 21, 2017, only three months remain for an appointed trustee to bring a § 544(b) avoidance action. The appointment of a trustee is crucial in order to ensure that such an action is brought by May 21, 2019.

The First Circuit's recent ruling that the Board's members were appointed in violation of the Constitution's Appointments Clause, *Aurelius Inv., LLC* v. *Puerto Rico*, No. 18-1671, 2019 WL 642328, at *17 (1st Cir. Feb. 15, 2019), makes appointment of an independent trustee all the

more urgent. Although the First Circuit stayed its mandate for 90 days, *id.*, it is not at all certain whether the Board will be in a position to "continue to operate," *id.*, to timely file and prosecute ERS's claims. An independent trustee appointed under § 926 would present no such difficulties.

### E.    The Court Should Appoint The ERS Bondholders Trustees; In The Alternative, The Court Should Appoint A Trustee Approved By The Bondholders To Pursue ERS's Claims

The foregoing circumstances amply warrant appointment under § 926 of a trustee to pursue ERS's claims against the Commonwealth. And the Bondholders are the most appropriate entities to serve as trustees. They are the primary remaining stakeholders who still seek payment from ERS, and the Bondholders' motivation to zealously pursue this litigation will ensure that this Court benefits from proper adversarial testing of ERS's claims.

In the alternative, as was done in the COFINA Title III case, the Court should appoint an independent third-party fiduciary approved by the Bondholders as trustee. As the primary remaining stakeholders, and as parties with deep experience in this litigation and the underlying issues, the Bondholders should be permitted to weigh in on the selection of a trustee as well to consult with the trustee during the prosecution of ERS's claims.

### CONCLUSION

For the foregoing reasons, the Bondholders respectfully request that the Court enter an order appointing them trustees to pursue the claims set forth in the proposed Complaint (Exhibit A) on behalf of ERS and against the Commonwealth, and any further relief as the Court may deem proper. In the alternative, the Bondholders respectfully seek appointment of an independent third-party trustee for ERS to pursue ERS's claims set forth in the proposed Complaint (Exhibit A) in consultation with the Bondholders. A proposed order is attached as Exhibit C.

In San Juan, Puerto Rico, today February 19, 2019.

By:

/s/ Alfredo Fernández-Martínez_____
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
P.O. Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

/s/ Bruce Bennett_____
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, NY 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
Parker A. Rider-Longmaid (*pro hac vice* pending)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com  bheifetz@jonesday.com
ssooknanan@jonesday.com
priderlongmaid@jonesday.com

Isel M. Perez (*pro hac vice* pending)
JONES DAY
600 Brickell Avenue, Suite 300
Miami, FL 33131
Tel. (305) 714-9700
Fax: (305) 714-9799
iperez@jonesday.com

*Counsel for Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd. and SV Credit, L.P.*

21

/s/ *Alicia I. Lavergne-Ramírez*

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@lsplawpr.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@lsplawpr.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@lsplawpr.com

LÓPEZ SÁNCHEZ & PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110  San
Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ *John C. Cunningham*

Glenn M. Kurtz (*pro hac vice*)
John K. Cunningham (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
gkurtz@whitecase.com
jcunningham@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (pro hac vice)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond
Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc.,  Puerto Rico Fixed
Income Fund, Inc.,  Puerto Rico Fixed Income Fund II, Inc.,  Puerto Rico Fixed Income Fund
III, Inc.,  Puerto Rico Fixed Income Fund IV, Inc.,  Puerto Rico Fixed Income Fund V, Inc.,
Puerto Rico GNMA & U.S. Government  Target Maturity Fund, Inc., Puerto Rico Investors
Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto  Rico Investors Tax-Free
Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III,  Inc., Puerto Rico Investors Tax-Free
Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free
Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-
Free Puerto  Rico Fund, Inc., Tax-Free Puerto Rico  Fund II, Inc., and Tax-Free Puerto Rico
Target Maturity Fund, Inc.*