# **EXHIBIT A**

190 D.P.R. 448, 2014 WL 997549 (P.R.), 2014 TSPR 32

RAMIRO RODRIGUEZ RAMOS ET ALS, appellees

ELA DE PR ET ALS, petitioners

In the Puerto Rico Supreme Court

Number: CC-2013-234

Decided: March 6, 2014

March 6, 2014

1. OBLIGATIONS-CREATION, EXISTENCE AND EFFECT-ORIGIN AND SOURCES OF CONTRACTS

Article 1044 of the Civil Code, 31 LPRA sec. 2994, provides that obligations that originated from contracts are binding in law between the contracting parties and must be accordingly complied with. Therefore, a contract exists from the moment one or several persons give their consent to commit to give something or provide a service and shall be valid if three elements concur: consent, object and cause.

2. CONTRACTS-IN GENERAL-REQUIREMENTS AND VALIDITY-PARTIES, PROPOSALS OR OFFERS AND ACCEPTANCE-OFFER AND ACCEPTANCE-FREEDOM OF CONTRACTING.

In our system, the principle of contractual autonomy allows the contracting parties to establish the agreements, clauses and conditions they deem convenient. Now, the contract shall be null and inexistent if it is contrary to the laws, moral or public order. In such cases, any of the contracting parties can challenge the contract, even if they benefited from it.

3. PUERTO RICO-COMMONWEALTH-PROPERTIES, CONTRACTS AND RESPONSIBILITIES-AUTHORITY OR POWER OF THE COMMONWEALTH TO CONTRACT.

Sec. 9 of Art. VI of our Constitution, LPRA Tome 1, states that the properties and public funds shall only be used for public purposes and for the support and operation of the institutions of the State, and all cases authorized by law. To obey this constitutional mandate, the Legislature has approved laws that impose fiscal and governmental contracting controls. That being so, a contract between a private party and the State that does not obey these laws shall be null and inexistent.

4. ID.-ID.-ID-IN GENERAL.

The Accounting Law of the Government of Puerto Rico establishes that all the assignments and funds authorized for the matters of a fiscal year shall be exclusively applied to the payment of the expenses which were legitimately incurred during the respective year *449 or to the payment of legally contracted obligations and that were duly recorded in the books.

5. ID.-ID.-ID.-ID.

Article 9 (a) of the Accounting Law of the Government of Puerto Rico, 3 LPRA sec. 283h(A), demands that the agencies shall order the



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

obligations and the disbursements of their public funds only to compel or pay services, supply of materials and equipment, claims or other concepts authorized by law. The Secretary shall calculate the obligations and perform and calculate the disbursements through the documents submitted by the agencies. The chief of the appropriate agency, or the officer or employee that is appointed by him/her as authorized representative shall previously approve these documents for obligation or payment.

6. ID.-ID.-ID. AUTHORITY OR POWER OF THE COMMONWEALTH TO CONTRACT-REQUIREMENTS OF CONTRACTS.

   The Accounting Law of the Government of Puerto Rico, clearly establishes that, for a contract between the State and a private party to be valid and enforceable, it must be in writing prior to the appropriate subject matters of the obligation.

7. ID.-ID.-ID.-ID.-ID.

   A governmental contract for the rendering of professional or consulting services has to meet the requirements of Law 237-2004 for it to be valid. The legal services are included in the definition that this law provides of the concept "professional or consulting services", to wit, those which principal subject matter is the product of intellectual, creative or artistic work or in the management or highly technical or specialized skills.

8. ID.-ID.-ID.-ID.-ID.

   Art. 2 of Law No. 237-2004 (3 LPRA sec. 8612) establishes that governmental contracting of professional services must be the exception and shall only be used when the governmental entity does not have or cannot use the internal resources, or when the expertise, the skill or the experience of the contractor is necessary to accomplish the purposes for which he/she is contracted. This article also requires that, at the time of contracting the services of a contractor, the State takes into account the real need of the services to be contracted, the economic situation and the budget of the contracting governmental entity.

9. ID.-ID.-ID.-ID.-ID.

   Art. 3 of Law No. 237-2004 (3 LPRA sec. 8613) numbers a series of requirements, both of form and substantive, that must be met by every contract between the State and a contractor. Specifically, this article requires: (1) the execution of the contract of professional or consulting services between a contractor and the Government shall be prospective, and (2) the formalization in writing and *450 a legal provision that allows the governmental entity to execute contracts must be included in the text.

10. ID.-ID.-ID.-ID.-ID.

    Law No. 237-2004 establishes that every governmental contract of professional or consulting services, category which includes the providing of legal services,


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Rodriguez Ramos v. ELA, 190 DPR 448 (2014)　　　　　　　　　CERTIFIED TRANSLATION
2014 TSPR 32

shall only be valid if it is done in writing and is effective prospectively. Without a doubt, Law No. 237-2004 prohibits verbal and retroactive contracting of professional and consulting services.

11. ID.-ID.-ID.-ID.-ID.

For a contract between a private entity and the State to have binding effect between the parties it must be in writing. This requirement must be met without any exception.

12. ID.-ID.-ID.-ID.-ID.

Performing work before having a written contract violates the norms of governmental contracting. Retroactively validating a contract would promote corruption, because a contractor could perform the work before executing the written contract to pressure its execution in the future, be it by the current administration or the next.

13. ID.-ID.-ID.-ID.-ID.

Retroactive governmental contracting makes every previous control to the formation of a Government obligation ineffective. This practice also prevents third parties such as the Comptroller's Office from complying with the public policy of the Accounting Law of the Government of Puerto Rico and that the citizens can obtain the written contract to pass judgment upon the contracting because the contract is drafted and published after the execution and performance of the obligations provided therein.

14. ID.-ID.-ID.-ID.-ID.

The parties that contract with any governmental entity without complying with the requirements of governmental contracting risk assuming the responsibility for their losses. This is because the courts have consequently rejected the application of any remedy in equity such as unjust enrichment, to ratify the public obligation without written contract and thus compensate the damages suffered by a private party for not complying with these requirements.

15. ID.-ID.-ID.-ID.-ID.

Aside from the clear requirement that the governmental contract be in writing and prospective, Art. 1 of Law No. 18-1975 (2 LPRA sec. 97(a)) provides that the governmental and municipal entities of the Commonwealth of Puerto Rico, without any exception, keep a registry of all the contracts executed, including their amendments, and shall send copy *451 of them to the Comptroller's Office within 15 days following the date of the execution of the contract or the amendment.

16. ID.-ID.-ID.-ID.-ID.

The good public administration requires that the contracts with the Government meet the following requirements: (1) are in writing; (2) an accurate registry is kept to establish their existence *prima facie*; (3) a copy is sent to the Comptroller's Office as double evidence of its execution, terms and existence, and (4) the certainty of time is certified, namely, having been drafted and executed fifteen days prior.

17. ID.-ID.-ID.-ID.-ID.

Law No. 127-2004 amended Art. 1 of Law No. 18 of October 30, 1975 (2 LPRA sec. 97(a)) to clarify that the


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

failure to comply with the requirement to register and send a contract to the Comptroller's Office of Puerto Rico can be corrected and does not entail its nullity. Whereas, it was provided that not complying with this requirement has the effect of prohibiting the disbursement of public funds or the requirement of services until they are registered pursuant to the applicable law and regulations. However, these radical changes in the case law about governmental contracting do not have the effect of altering the public policy established in our judicial system to the effect that the good administration of a government entails carrying out its duties as purchaser with the most efficiency to protect the interests and the money of the people.

18. STATUTES, CUSTOMS AND EQUITY-INTERPRETATION AND APPLICATION OF THE LAW-STATUTES IN PARTICULAR-EXECUTIVE ORDERS.

The executive orders issued by the Governor cannot contradict the applicable laws.

### Synopsis

CERTIORARI PETITION of a JUDGMENT of Carlos Lopez Feliciano, Sixto Hernandez Serrano, Olga Birriel Cardona and Roberto Rodriguez Casellas, Judges of the Court of Appeals, which affirmed the one issued by the Court of First Instance and ordered defendant to execute a retroactive contract with the plaintiff to cover the legal services that the attorney provided during the fiscal year 2006-2007. The judgment issued by the Court of Appeals is reversed.

Margarita Mercado Echegaray, attorney general, Amir Cristina Nieves Villegas, assistant attorney general; Miguel A. Rangel Rosas, of the firm Maymi Rivera & Rotger, PSC, Grace Santana Balado, attorney for the Department of Transportation and Public works, Ivette M. Berrios Hernandez of the firm Vazquez Graziani & Rodriguez, Legal Office, PSC, Ineabelle Santiago Camacho and Beatriz Annexy *452 Guevara, attorneys of the firm Reichard & Escalera, petitioner's attorneys; Hilda M. Arriaga Correa, Ramiro Rodriguez Pena and Reynaldo Rodriguez Pena, of the firm Ramiro Rodriguez Ramos Law Offices, attorneys for appellee.

THE CHIEF JUSTICE MR. HERNANDEZ DENTON issued the opinion of the Court.

On this occasion we must decide if a verbal contract between a legal services provider and the Government can be validated through the execution of a retroactive contract. We decide it cannot. As we believe the contract is null, that it cannot be retroactively validated and that the provider cannot claim to the government for the services rendered, we reverse the judgment entered by the Court of Appeals.

I.

Counsel Ramiro Rodriguez Ramos provided his professional services as an attorney to the Department of Transportation and Public Works (DTOP) and the Highway and Transportation Authority (ACT) from 1990 until July 2, 2007. The ACT is a public corporation within the DTOP.

On February 18, 2006, Counsel Rodriguez Ramos gave the Director of Legal Matters of



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Rodriguez Ramos v. ELA, 190 DPR 448 (2014)  CERTIFIED TRANSLATION
2014 TSPR 32

DTOP and the ATC, Counsel Manuel Camara Montull, the documents necessary for the renewal of their contracts for the fiscal year 2006-2007. On May 16, 2006, the Special Aide of DTOP's Secretary, Counsel Alberto Castro, informed the attorney that the ACT would renew his contract, submitted the draft of the contract and asked him to provide for a second time the documents necessary for the corresponding renewal. Counsel Rodriguez Ramos did so.

The ACT prepared the professional services contract for the fiscal year 2006 and 2007 and the certification to register it *453 in the Comptroller's Office. Counsel Rodriguez Ramos executed both documents and gave them to counsel Camara Montull for their execution by the agency and to be registered in the Comptroller's Office. However, counsel Camara Montull, just registered the draft of the contract in the Finance Area and did not process it.

On December 22, 2006, Counsel Rodriguez Ramos again submitted the documents necessary to renew the contracts in writing. After, he informed counsel Camara Montull and the Legal Counsel of the Executive Director of the ACT, counsel Ivette Cancel that they had to pay for the services rendered through an order of acknowledgment of debt because the ACT and DTOP had authorized him to continue providing his services.

On June 2007, Counsel Grace Santana Balado assumed the management of the Office of Legal Matters and asked Counsel Rodriguez Ramos for a report about the matters that had been referred to him. The attorney provided the requested report and the documents necessary to execute the contracts for the next fiscal year 2007-2008. Afterwards he informed counsel Santana that the contracts for that year had not been renewed so he requested to be informed in writing if they authorized him to continue legally representing the agency in the courts. On July 2, 2007, counsel Santana told him that the contract for the referenced fiscal year would not be executed and that they would not pay for the services rendered that were not covered by a written contract. Consequently, she asked him to withdraw from the legal representation of the ACT and DTOP in the courts and to hand in the files of the assigned cases.

Therefore, the attorney filed the captioned complaint on September 4, 2007. He alleged that the ACT owed $106,910.16 for services rendered during the fiscal years 2004-2005 and 2005-2006 and $264,786.70 for *454 the fiscal year 2006-2007. On the other hand, he claimed from DTOP $11,521.61 for legal services rendered during the fiscal year 2004-2005, $2,343.75 for the fiscal year 2005-2006 and $46,323.76 for the fiscal year 2006-2007. In 2010, the ACT and DTOP paid the sums of money corresponding to the first two periods, but not the ones corresponding to the fiscal year 2006-2007.

Counsel Rodriguez Ramos filed a motion for summary judgment. He alleged that the ACT and DTOP had to pay the remaining services because they were the ones who prevented the execution in writing of the contract. On their part, the ACT and the DTOP alleged that it is an indispensable requirement for the origination of the obligation between the services provider and the State that the contracts be in writing.

The Court of First Instance decided by partial summary judgment that once counsel Rodriguez Ramos signed the contracts with



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

the ACT and DTOP for the fiscal year 2006-2007, the corresponding officers had the obligation to sign them and register them in the Comptroller's Office. Therefore, it ordered defendant to execute with plaintiff a contract with retroactive effective date to cover the professional services provided during the fiscal year 2006-2007, register it in the Comptroller's Office and pay the attorney for the services provided during that period. In sum, it based its decision on the general doctrine of contracts, in Law No. 18 of October 30, 1975 known as the Law of Registering Contracts in the Comptroller's Office of Puerto Rico, as amended (Law No. 18-1975), 2 LPRA sec. 97(a), and in the Executive Order OE-2006-23, *infra.* The lower court held its decision after a motion for reconsideration.

Not satisfied, the Commonwealth of Puerto Rico (ELA) appealed to the Court of Appeals. That court affirmed the Court of First Instance. Still not satisfied *455 ELA appealed to us. It argues that the intermediate appellate court erred when ordering the defendant to execute a retroactive contract to cover the legal services that the attorney provided during the fiscal year 2006-2007. It holds that "[t]his mandate contravenes the provisions of Law No. 237 of August 31, 2004, the case law […] in matters of governmental contracts and public policy of constitutional rank that orders the most adequate and responsible distribution of public funds". Certiorari petition, page 8. We ordered plaintiff to show cause why we should not reverse the appealed decision. He did so. With the benefit of the appearance of both parties, we issue the writ and decide.

## II.

### A. General norm of contracts

[1] Art. 1044 of the Civil Code, 31 LPRA sec. 2994, provides "that obligations that originated from contracts are binding in law between the contracting parties and they must be complied with." See, also: *VDE Corporation v. F&R Contractors*, 180 DPR 21, 34 (2010); *Lopez v. Gonzalez,* 163 DPR 275, 281 (2004). Consequently, a contract exists from the moment one or various persons give their consent to commit to give something or provide some service. Art. 1206 of the Civil Code, 31 LPRA sec. 3371. *Unisys v. Ramallo Brothers*, 128 DPR 842, 852 (1991). It will be valid if three elements concur: consent, object and cause. Art. 1213 of the Civil Code, 31 LPRA sec. 3391. Moreover, Art. 1230 of the same Code, 31 LPRA sec. 3451 clearly establishes that "[c]ontracts shall be binding, in any way they are executed, as long as the conditions that are essential for its validity concur."

[2] In our system, the principle of contractual autonomy *456 allows the contracting parties to establish the agreements, clauses and conditions they deem convenient. Art. 1207 of the Civil Code 31 LPRA sec. 3372. See: *Torres Torres v. Torres et al*, 179 DPR 481, 493 (2010); *Oriental Financial v. Nieves*, 172 DPR 462, 470-471 (2007). Now, the contract shall be null and inexistent if it is contrary to the laws, moral or public order. *Pepsi Cola v. Mun Cidra et al*, 186 DPR 713, 752 (2012); *Oriental Financial v. Nieves, supra, Morales v. Municipio de Toa Baja*, 119 DPR 682, 692 693 (1987) This regardless of the type of contract in question and the importance it has for the contracting parties. *De Jesus Gonzalez v. AC*, 148 DPR 255, 263 264 (1999). Also see, *Morales v. Municipio de Toa Baja supra*. In such cases,

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

any of the contracting parties can challenge the contract, even if they benefitted from it. *De Jesus Gonzalez v. AC*, supra page 264; *Rasa Eng. Corp v. Daubon*, 86 DPR 193, 198 (1962).

B. *Governmental Contracting*

[3] Regarding governmental contracting, the State is obligated by constitutional mandate to manage public funds with the highest fiduciary and ethical principles. *Jaap Corp. v. Depto. Estado et al*, 187 DPR 730, 739 (2013); *CFSE v. Union de Medicos*, 170 DPR 443, 452 (2007). Particularly, Sec. 9 of Art. VI of our Sec. 9 of Art. VI of our Constitution establishes that "public properties and funds will only be disposed of for public purposes and for the support and operation of the institutions of the State and in all cases authorized by law". Art. VI Sec. 9 Const. ELA, LPRA Tome I, Ed. 2008, page 429.

To obey this constitutional mandate, the Legislature has approved laws that impose fiscal and governmental contracting controls. *Jaap Corp. v. Depto Estado et al, supra.* That being so, pursuant to the aforementioned provisions of the Civil Code, a contract between a private party *457 and the State that does not obey these laws shall be null and inexistent. Art, 1207 of the Civil Code, supra. With that in mind, let's see the legal provisions that apply to the contract before us.

C. *The Accounting Law of the Government of Puerto Rico*

[4] Law No. 230 of July 23, 1974, as amended, known as the Accounting Law of the Government of Puerto Rico, 3 LPRA sec. 283 et seq (Law No. 230-1974) was approved with the purpose of achieving the "*prior* control of all the operations of the government" so it is possible to plan the budget and appropriate government programs (Emphasis provided). Art. 2(e) of Law No. 230-1974 (3 LPRA sec. 283a(c) To that effect, the law states that "[a]ll the assignments and funds authorized for the matters of an economic year shall be *exclusively* applied to the payment of the expenses *legitimately incurred* during the respective year or to the payment of obligations *legally contracted and duly recorded in the books*. (Emphasis provided) Art. 8(a) of Law No. 230-1974 (3 LPRA sec. 283g(a)). It should be noted that Art. 3(k) of this law, 3 LPRA sec. 283b(k) defines "obligation" as "[a] compromise undertaken that is represented by purchase order, *contract or similar document*, pending payment, *signed* by *competent authority* to encumber the assignments *and that in the future can be a payable debt"*. (Emphasis provided).

[5-6] In the same way, Art. 9(a) of the same law, 3 LPRA sec. 283h(a), demands that

> [t]he offices shall order the obligations and the disbursements of their public funds *only* to compel or pay services, supply of materials and equipment, claims or other concepts *that are authorized by law*. The Secretary will calculate the obligations and perform and calculate the disbursements through the *documents* submitted by the agencies. The head of the corresponding agency *458 or the officer or employee that is appointed by him/her



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Rodriguez Ramos v. ELA, 190 DPR 448 (2014)        CERTIFIED TRANSLATION
2014 TSPR 32

> as authorized representative will *previously approve these documents for obligation or payment.* (Emphasis provided).

Therefore, Law No. 230-1974, clearly establishes that for a contract between the State and a private party to be valid and enforceable it must be in writing prior to the corresponding subject matters of the obligation.

D. *Law to Establish Uniform Parameters in the Contracting of Professional or Consulting Services for the Agencies and Governmental Entities*

[7] In what is relevant to the case under evaluation, the Legislative Assembly approved Law 237 of August 31, 2004, known as the Law to Establish Uniform Parameters in the Contracting of Professional or Consulting Services for the Agencies and Governmental Entities, as amended, 3 LPRA secs. 8611-8615 (Law No. 237-2004). A government contract for the rendering of professional or consulting services has to meet the requirements of this law for it to be valid. Id. The legal services are included by the definition that this law gives to the concept "professional or consulting services" to wit, those which principal subject matter consists of the product of intellectual, creative or artistic work or in the management of highly technical or specialized skills. Art. 1 of Law 237-2004 (3 LPRA sec. 8611).

[8] First, Art. 2 of Law No. 237-2004 (3 LPRA sec. 8612) clearly establishes that governmental contracting of professional services must be the exception and shall only be used "when the governmental entity does not have or cannot use internal resources, or when the expertise, the skill or the experience of the contractor is needed to carry out the purposes for which he/she is contracted." This article also demands that at the time of contracting the services of a contractor, the State takes into account "the real need *459 of the services to be contracted, the economic situation and the budget of the contracting governmental entity." Id.

[9] Aside from establishing that governmental contracting of professional services must be exceptional, Law No. 237-2004 numbers in its Art. 3 a series of requirements, of form and substantive, which every contract between the State and a contractor must have. 3 LPRA sec. 8613. Specifically, this article requires:

(a) the execution of a contract of professional or consulting services between a contractor and the Government must be *prospective.* Every governmental entity shall only pay for services rendered.

(b) It must be formalized *in writing* and the legal provision that enables the governmental entity to execute contracts must be included in the text. (Emphasis provided) Id.

The rest of the items of this legal provision detail the information that the contract must have about the contractor, the services to be rendered, the term of the contract, the maximum amount to be paid and form of payment. Id Later, Art. 5 of the same law, 3 LPRA sec. 8615 requires that an extensive list of mandatory clauses be included in the contract.

[10] Therefore, we see that Law No. 237-2004 establishes that every governmental contract of professional or consulting

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

services, category that includes legal services, will only be valid if it is in writing and is effective prospectively. Without a doubt, Law No. 237-2004 prohibits verbal and retroactive contracting of professional and consulting services.

*E. Case law about governmental contracting*

[11] On our part we have reiterated that for a contract between a private entity and the State to have binding effect between the parties it must be in writing. *Cordero Velez v. Mun. de Guanica*, 170 DPR 237, 248 (2007); *Municipio Mayaguez v. Lebron*, 167 DPR 713, 719-720 (2006). This requirement must be met *without any exceptions*. (Emphasis in original) *Fernandez & Gutierrez v. Mun. San Juan*, 147 DPR 824, 833 (1999), citing *Hatton v. Mun. de Ponce*, 134 DPR 1001 (1994).

[12] In fact, in *ALCO Corp. v. Mun. de Toa Alta*, 183 DPR 530 (2011), we faced a controversy where a contractor began to provide his services without yet having a written contract, he finished his work and afterwards the parties executed the written contract. Id. Once the contractor tried to collect his credit with the municipality, he filed with the court without success. Id. The case reached this court and we vehemently rejected the validation of municipal verbal contract through the written execution of formal retroactive contracts. Id, page 540. We concluded that performing work before having a written contract violates the governmental contracting norms. Id. Also, we reasoned that retroactively validating a contract would promote corruption, because a contractor could perform the work prior to executing the work to pressure its future execution be it by the current administration or the next. Id. Page 543

[13] Also, we recently decided that retroactive contracting on the lease of a property violates the governmental contracting norms. *Jaap Corp. v. Depto. Estado et al.* supra. In this case we stated that:

> [...] retroactive governmental contracting makes every *previous control* to the creation of a Government obligation ineffective, which is contrary to the public policy established in Art. 2(e) of Law No. 230, supra. This practice also prevents third parties such as the Comptroller's Office to comply with the public policy of Law No. 230 and citizens*461 from obtaining the written contract to pass judgment upon the contracting because the contract is written and published after the execution and consummation of the obligations provided therein. (Emphasis in original) Id. Page 748.

[14] Therefore, we have reiterated that the parties that contract with any governmental entity without meeting the requirements of governmental contracting, risk assuming the responsibility for their losses. *Quest Diagnostics v. Mun San Juan*, 175 DPR 994, 1002 (2009); *Colon Colon v Mun. De Arecibo*, 170 DPR 718, 728-729 (2007). This because we have consequently rejected the application of any remedy in equity, such as unjust enrichment, to ratify the public obligation without written contract and thus compensate the damages suffered by a private party when these requirements

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

are not met. *Las Marias v. Municipio de San Juan*, 159 DPR 868, 875 (2003).

Registry in the Comptroller's Office

[15] Aside from the clear demand that the governmental contract is in writing and prospective, Art. 1 of Law No. 18-1975 (2 LPRA sec. 97(a)) provides, in pertinent part, the following:

> Governmental and municipal entities of the Commonwealth of Puerto Rico, without any exception, shall keep a registry of all contracts they execute, including the amendments to these and must remit copy of them to the Comptroller's Office within the 15 days following the date of the execution of the contract or the amendment.

[16] When interpreting this provision, we summarized that good public administration requires that contracts with the Government meet the following requirements: (1) they are in writing; (2) there is an accurate registry to establish their existence *prima facie*; (3) a copy is sent to the Comptroller's Office as double *462 evidence of their execution, terms and existence, and (4) the time certainty is certified, that is, having been drafted and executed 15 days prior. *CMI Hospital v. Depto Salud*, 171 DPR 313, 320 (2007); *Ocasio v. Alcalde Mun. De Maunabo,* 121 DPR 37, 54 (1988).

Also, we have stated that the intention of the legislator is evidently to create a mechanism of check and publicity of governmental contracts through this legislation. *CMI Hospital v. Depto. Salud, supra; Fernandez & Gutierrez v. Mun San Juan, supra*, page 830. These rigorous provisions respond to the interest of the State to prevent the squandering, corruption and favoritism in governmental contracting and thus promote a good and upright administration Id.

[17] Afterwards, Law No. 127-2004 amended Art. 1 of Law No. 18-1975 to clarify that the breach of the requirement to register and remit a contract to the Comptroller's Office of Puerto Rico can be corrected and does not entail its nullity. *Colon Colon v. Mun de Arecibo*, supra, pages 727-729; *Lugo v. Municipio de Guayama*, 163 DPR 208, 219 (2004). On the contrary, it was provided that failing to comply with this requirement has the effect of prohibiting the disbursement of public funds or that services be requested until they are registered in accordance with the applicable laws and regulations. Id.

However, we have reiterated that these radical changes in the case law norms about governmental contracting "*do not have the effect of altering the public policy established in our judicial system to the effect that the good administration of a government entails carrying out duties as purchaser with the most efficiency to protect the interest and money of the people.*"(Emphasis in original). *Lugo v. Municipio Guayama, supra*, page 219. Also, see *Colon Colon v. Mun. De Arecibo*, supra. In particular we clarified that *463

[…] Law No. 127 amended Law No. 18 to establish that the failure to send a copy of a municipal contract to the Comptroller's Office of Puerto Rico or the lack of registration of it in the books of the municipality did not make the contract executed null. *That does not mean*, as the intermediate appellate forum concludes, *that*

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

*the same principle applies when it is an agreement that was never in writing. We are of the belief that Law No. 127 did not contemplate this scenario.*

There is a marked difference between some requirements and others. The requirement that a contract executed is recorded in the municipal log and its copy be sent to the Comptroller's Office of Puerto Rico is geared to making municipal contracting public in the face of third parties. This way, the third parties can supervise it. However, *demanding that the contracts executed be in writing has an unavoidable dimension of good public administration*, because it allows to safeguard the interest of the contracting parties in the face of a breach, allows the organized use of municipal funds, avoids the uncertainty in the preparation of the municipal budget and allows the adequate identification of the amount that the public disbursements will be, in compliance with the law. That is, the first are more than anything of a procedural and organized processing character and the latter is substantive for its direct relationship with the good public administration. Therefore, we must conclude that the *failure to comply with the requirement of the municipal contract being written, inevitably, has an adverse effect on the validity of the obligations contracted.* (Emphasis provided) *Colon Colon v. Mun de Arecibo*, supra, pages 729-730.

G. *Executive Order*

The lower courts also based their decision on the Executive Order OE-2006-23, infra, to order the State to execute with plaintiff a retroactive contract to cover the professional services offered during the fiscal year 2006-2007, register it in the Comptroller's Office and pay the attorney for the services provided. Let us examine the applicable norm about executive orders.

[18] First of all, it should be noted that the Governor's faculty to issue executive orders is not *464 regulated, justified or explained by any statutory or constitutional provision. *Los poderes del gobernador de Puerto Rico y el uso de órdenes ejecutivas*, 76 Rev. Jur UPR 951, 1020 (2007). On our part, we have been clear when reiterating that the executive orders issued by the Governor cannot contravene the applicable laws. See *Otero de Ramos v. Srio de Hacienda*, 156 DPR 876, 892 (2002), quoting *Soto v. Adm. Inst. Juveniles*, 148 DPR 810 (1999).

In that regard, Prof. William Vazquez Irizarry states that the classic case in which the use of this mechanism lessens the legislative duty is when "the executive order expects to achieve objectives that have been manifestly rejected by the legislative power, for which the only legal grounds that could support the aspiration of the Governor are his constitutional powers or a claim of inherent powers." Vazquez Irizarry, supra, page 1047. It should be noted that Sec. 4 of Art. IV of our Constitution does not confer upon the Governor the power to regulate the governmental contracting with private entities. See Art. IV, Sec. 4, Const. ELA, LPRA, Tome I.

An executive order could also lessen the process of administrative regulation. Vazquez Irizarry, supra, page 1051. This type of regulation is a classic duty that the administrative forums have when the Legislature has delegated authority to them to regulate in which case the procedural terms provided in the Law of Uniform Administrative Procedure apply (LPAU)

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Law No. 170 of August 12, 1988 (3 LPRA secs. 2101-2201). Id. In this context, the use of executive orders could pose problems to the extent that it attempts to establish rules that affect third parties' rights without having the legitimacy that the requirements of citizen participation provided by LPAU provide. LPAU Id. Page 1053. In pertinent part, Professor Vazquez Irizarry indicates the following: *465

> It can be stated that this problem should not exist because one of the principles that defines the use of the executive orders is that they are mandates to apply "within the executive branch" therefore there are no third parties that can be affected. However, the fact is that some orders seek to establish programs or public policies with a degree of detail that places its effects close to the citizens. *This is the case of the orders that even though they are addressed to public entities they affect the relationships they have with third parties, particularly in the scope of purchasing goods or services.* (Emphasis provided) Id. Page 1054.

In the captioned case, the lower courts based their respective decisions on the "Executive Order of the Governor of the Commonwealth to regulate the payment for services provided to the agencies and offices of the Executive Branch without there being a formal contract duly registered in the Comptroller's Office," Executive Order OE-2006-23 (Executive Order) signed by the then governor Anibal Acevedo Vila on June 22, 2006. Specifically, they were based on the statement of motives of the Executive Order, which establishes that "[t]he mere fact that a service was provided pursuant to a verbal understanding between the ELA and the contractor does not prevent the ELA from putting that agreement in writing afterwards and honor the just payment for the services rendered. Executive Order, page 3.

As we have seen, even though the Governor has the authority to issue executive orders as part of the powers granted by laws or the inherent powers in his charge, he cannot issue executive orders contrary to what is provided by law. *Otero de Ramos v. Srio. de Hacienda*, supra. Law No. 237-2004 demands that every governmental contract of legal services be done in writing and prospectively. That is, this law prohibits verbal contracting of these services as well as written retroactive contracting. Also, Law No. 230-1974 requires that the governmental contracts be previously in writing *466 to be valid. Moreover, the requirement that the contract is registered in the Comptroller's Office established by Law No. 18-1975 supposes that it is in writing and prospective.

On the other hand, the Legislative Assembly has not delegated to any agency the power of regulating new norms of governmental contracting that are contrary to the legal provisions discussed in the preceding paragraphs. Consequently, the Executive Order is invalid inasmuch as it allows the validation of verbal contracts with the State via formal retroactive contracts, contrary to what is provided by law.

### III.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Rodriguez Ramos v. ELA, 190 DPR 448 (2014)　　　　　　　　　　　CERTIFIED TRANSLATION
2014 TSPR 32

In the captioned case it is not in controversy that the parties never executed a written contract for the fiscal year 2006-2007. As we stated, the cited laws, as their interpretative case law, forbid the disbursement of public funds for services rendered without a previous valid governmental contract that complies with all the strict requirements of governmental contracting. Also, they provide that every contract that is not formalized pursuant to these norms is null. Also, we saw that the Executive Order that would allow the retroactive validation of the contract in question is invalid because it is contrary to the laws of governmental contracting.

Lastly, we have been consistent in firmly rejecting the application of any remedy in equity to ratify the verbal public obligation and compensate the private party for the damages suffered for providing the services without complying with the governmental contracting norms. See: *ALCO Corp v. Mun. de Toa Baja, supra, Las Marias v. Municipio San Juan, supra.*

When applying this normative outline to the case before us, it is forceful to conclude that the claim of *467 counsel Rodriguez Ramos is not payable. He provided his legal services knowing there was no written contract to bind the State. That being so, the verbal contract on which he expects to base his claim is null. Given this reality, it is not appropriate to apply any remedy in equity. Counsel Rodriguez Ramos risked assuming the responsibility for his losses, just like we have warned everyone who contracts with any governmental entity without meeting the governmental contracting requirements. See *Quest Diagnostics v. Mun. San Juan, supra; Colon Colon v. Mun de Arecibo, supra.*

Therefore, the lower courts erred when ordering DTOP and ACT to execute a retroactive contract to cover the professional services provided during the fiscal year 2006-2007, register it in the Comptroller's Office and pay the attorney for the services provide in said period.

IV.

For the foregoing grounds, *the judgment entered by the Court of Appeals is reversed.*

*Judgment will be entered accordingly.*

Associate Judge Mrs. Pabon Charneco issued a particular vote in conformity, to which Associate Judge Mr. Rivera Rivera joined. Associate Judge Mrs. Rodriguez Rodriguez did not intervene.

-O-

Particular vote in conformity issued by Associate Judge Mrs. Pabon Charneco to which Associate Judge Mr. Rivera Rivera joins.

I am in conformity with the preceding Opinion. The controversy that we face today, specifically if a private *468 party and the State can execute a retroactive contract to validate the previous rendering of professional services without having met the formalities regarding governmental contracting has been analyzed by this Court within analogous contexts to the ones in this case.

As the Opinion states, as recently as in *Jaap Corp. v. Depto Estado et al*, 187 DPR 730, 748-749 (2013) we decided that executing a contract retroactively to ratify a lease that was being carried out between a private entity and a municipality without there being a written agreement among the parties is contrary to the norms of governmental

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

contracting. See also, *ALCO Corp. v. Mun de Toa Alta,* 183 DPR 530 (2011). I take this occasion to reiterate that the norm that prohibits retroactive governmental contracting is in agreement with the most basic principles of good public administration and an adequate control in the disbursement of public funds. *Jaap Corp v. Depto Estado et al, supra* page 744. The foregoing applies to the municipalities and to the central government and its offices.

Lastly, it is pertinent to express myself as to the use of Executive Orders as a mechanism of usurpation of the duties of the Legislative Branch as it occurred with Executive Order No. OE-2006-23, of June 22, 2006 passed by the then Governor of Puerto Rico, Anibal Acevedo Vila, which purpose was to authorize retroactive governmental contracting. Without passing judgment on the validity of the referenced Executive Order, in *Jaap Corp v. Depto Estado et al, supra* page 749 esc. 11, we highlighted the inconveniences that the retroactive governmental contracting had caused in the Comptroller's Office and in the Justice Department. Lacking a constitutional o legislative delegation to the Executive Branch of the power to regulate the governmental contracting, the action of the once Governor violated basic constitutional principles of separation of *469 powers[1] Art. I, Sec. 2 Const. ELA, LPRA, Tome 1. Deciding the contrary would result in validating a clear interference of the Executive Power with the powers delegated by our Constitution to the Legislative Power. Therefore, this Court acted correctly by invalidating Executive Order No. OE-2006-23, supra.

In view of the foregoing, I am in conformity with the Opinion issued today.

---

Footnotes

[1] This is even more worrisome given the results of the General Elections held on November 2, 2004 that gave rise to a shared government between the two principal political parties of Puerto Rico.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.