**<u>EXHIBIT B</u>**

CERTIFIED TRANSLATION

KeyCite Yellow Flag - Negative Treatment
Distinguished by Industrial Chemicals Corporation v. Autoridad De Energia Electrica [Electric Power Authority], TCA, June 30, 2016

183 D.P.R. 530, 2011 WL
6310212 (P.R.), 2011 TSPR 180

ALCO CORPORATION, petitioner,

v.

MUNICIPALITY OF TOA ALTA,
defendant.

In the Supreme Court of Puerto Rico.
*Number:* CC-2010-11

**Synopsis**
*CERTIORARI* to request review of a *JUDGMENT* by *Emmalind García García, Aleida Varona Méndez* and *Gretchen I. Coll Martí*, Justices of the Court of Appeals, which affirmed the Court of First Instance and concluded that ALCO Corporation cannot collect for the work completed, because the claim for payment filed against the Municipality of Toa Alta is for certain services rendered before the period of validity of the contract submitted as evidence. The judgment issued by the Court of Appeals is affirmed.

*José A. Sánchez Álvarez* and *Christian O. Cintrón Pérez*, of *Nevares & Sánchez-Álvarez*, legal counsel for petitioner; *Ricardo Robles Caraballo*, legal counsel for defendant.

ASSOCIATE JUSTICE MARTINEZ TORRES issued the Court's opinion.

This appeal allows us to analyze if, in light of the Autonomous Municipalities Act of the Commonwealth of Puerto Rico of 1991 (Autonomous Municipalities Act), Act No. 81-1991 (21 L.P.R.A. sec. 4001 *et seq.*), it is feasible for a contractor to perform work prior to the execution of the written contract and even so, to collect for its services if the contract is executed afterwards.

In light of the compelling interest that we have afforded the protection of public funds, the **533** execution of the written contract needs to occur before the contractor begins to perform the work. In this way, we reaffirm the "rigor of the legal precepts governing commercial

relationships between private entities and municipalities, which aspire to promote sound and upright public administration, a matter that is in the highest public interest." *Fernández & Gutiérrez v. Mun. San Juan*, 147 D.P.R. 824, 829 (1999). See also *Cordero Vélez v. Mun. de Guánica*, 170 D.P.R. 237, 248 (2007).

**I**

Petitioner ALCO Corporation (ALCO) engages in the supply, sale, placement and delivery of asphalt concrete. In 2002, ALCO appeared at a public tender for the completion of a repaving project in Lajas neighborhood, Los Rivera Marrero sector of the Municipality of Toa Alta. On June 4 of that same year, the Municipality's tenders board notified Mr. Alfonso Rodriguez Garcia, ALCO president, by letter, that tender ##02 – 030 had been awarded in his favor. *Certiorari* Appendix, page 45. This being the case, ALCO began to repave the corresponding area between June 25 and 28 of 2002, without the contract having been executed. The contract was not executed until July 16, 2002. On that same date it was recorded in the municipal books and a copy was sent to the Comptroller's Office. The contract provided in the eighteenth clause that the period of time for completion of the project was an essential element of the contract and that ALCO was supposed to begin the project on or before five days after execution. *Certiorari* Appendix, page 49. In the eighteenth clause it was further specified that the contract's period of validity would be 30 days, from July 16, 2002 until August 14 of the same year. *Certiorari* Appendix, page 48. In other words, the contract had a period of thirty days in which to complete the project. It should be noted that this was not the **534** first time ALCO had contracted with the Municipality of Toa Alta. The file shows that in 2000 it was also awarded the contract for another repaving project.

After completion of the project, ALCO proceeded to request payment for $29,500. To do so it presented vouchers showing that the work was completed from June 25 to 28, 2002. After several unsuccessful attempts with the municipality, ALCO proceeded to file a lawsuit to collect the money. Subsequently, it filed a motion for summary judgment and various reconsiderations that were dismissed.

Later, the municipality filed a motion for summary judgment. ALCO opposed it. In its motion, the municipality alleged that "[ALCO's] claim was meritless


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.          1

CERTIFIED TRANSLATION

because it was grounded on a supposed contractual obligation that has nothing to do with the claim for the work completed." *Certiorari* Appendix, page 28. On its part, ALCO indicated that "the fact that the work was done ahead of time is in no way due to fraudulent schemes, or misappropriation of funds, nor favoritism, nor any other issue among those faced by the Supreme Court." *Certiorari* Appendix, page 38. It added that, as opposed to wanting to collect for work that bore no relationship whatsoever to the claim for the work performed, "the information from the contract, as well as that of the tender, are wholly related to the invoices presented by ALCO for the work performed in Barrio Lajas." *Certiorari* Appendix, page 39.

The Court of First Instance summarily dismissed the lawsuit in the municipality's favor. It believed that the work completed and the work dates were unrelated to the claims filed. It reasoned that, given the rigorousness of requirements for contracting with municipalities,

> … no contract issued by a Municipality may have a term of validity that is later than the date of completion of the work.*535 In other words, ALCO cannot attempt to charge the Municipality for work performed prior to the execution date of the contract under dispute. The evidence submitted by the Plaintiff itself show that the work for ALCO is attempting to collect from the Municipality was completed on dates prior to the date on which the contract was executed. Said action has no place in our legal system. *Certiorari* Appendix, page 84.

It in turn reasoned that given the formal requirements the law specifies for contracting with municipalities, contracts may not be executed to cover events that have occurred beforehand. *Certiorari* Appendix, page 85.

Dissatisfied, ALCO went to the Court of Appeals. That Court affirmed the Court of First Instance. It concluded that ALCO cannot charge for the work performed, because the claim for payment that was presented against the municipality is based on services rendered before the period of validity of the contract submitted into evidence. *Certiorari* appendix, page 169. It concluded that

> [r]esolving otherwise would upend the established system of control of disbursement of public funds, because this would lend itself to the validation of agreements reached between contractors and municipalities without complying with the process established by our legal system.…

> … [I]n light of the interest of public funds, we are unwilling to impose upon the Municipality the responsibility to comply with payment of a debt allegedly contracted for services received on a date on which there was no contract whatsoever in effect. Id., page 170.

Again dissatisfied, ALCO came before us. It indicated that the intermediate appellate court erred by concluding that in this case the doctrine of unjust enrichment does not apply. It explained that several courts in other jurisdictions of the United States have imposed liability on municipalities that unjustly benefit from their own *ultra vires* acts. It also indicated that concluding that the payment should not be made because the work was done prior to the execution of the contract discourages contracting *536 with the Government, because that undermines its credibility as a contracting party. It added that the amendments to Art. 8.016 of the Autonomous Municipalities Act, 21 L.P.R.A. sec. 4366, and to Art. 1 of Act No. 18 of October 30, 1975, through Act No. 127-2004 (2 L.P.R.A. sec. 97) introduced some flexibility into the requirements for contracting with municipalities and "they seek to establish just and valid rules which avoid having the government, including its municipalities, lose credibility when contracting." *Certiorari*, page 6.

Likewise, ALCO argues that in *Cordero Velez v. Mun. de Guanica*, supra, we sustained that if a public tender is formally awarded and notified, and the contractor commences work without signing a contract, the collection of payment for the work is contingent upon the execution of the contract, even though it may be on a subsequent occasion. In short, ALCO believes that since the contract was executed after the work was completed, it was recorded in the books of the municipality and it was sent to the Comptroller's Office, the situation is different from the caselaw we have decided in relation to government contracting.

In its opposition, the municipality repeated that it should not have to pay for work performed prior to the execution of the contract. It added that the decision by the Court of First Instance when it dismissed the complaint was due to the evidence that ALCO submitted, with which it was demonstrated that the work was performed prior to the execution of the contract. We



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.     2

CERTIFIED TRANSLATION

decided to issue the writ of *Certiorari*. On November 12, 2010 the case was formally submitted.

II

[1] Since our first rulings with respect to contracting with municipalities, we have made it clear that as opposed to contracting between private parties, **\*537** "the legal precepts governing economic relations between private entities and municipalities, are of great public interest and aspire [to] promote sound and upright public administration." *Hatton v. Mun. de Ponce*, 134 D.P.R. 1001, 1005 (1994). For this reason, in *Quest Diagnostics v. Mun. San Juan*, 175 D.P.R. 994, 1000 (2009), we indicated that "through special statutes, the legislature has imposed requirements and conditions upon contracting with municipalities. The validity of contracts with government entities is examined in accordance with the special statutes, instead of recurring to general contract theories. See also: *Johnson & Johnson v. Mun. de San Juan*, 172 D.P.R. 840, 854–855 (2007); *Cordero Vélez v. Mun. de Guánica*, supra, P. 252. To do that, it is crucial for municipalities to have acted "in accordance with the procedures established by law and our interpretive case law" at the time of disbursement of public funds for the payment of obligations contracted. *Colón Colón v. Mun. de Arecibo*, 170 D.P.R. 718, 725 (2007).

[2] In *Ocasio v. Alcalde Mun. de Maunabo*, 121 D.P.R. 37, 54 (1988), we for the first time listed the formal requirements that must be followed when entering into agreements with municipalities. These are: (1) the agreement must be written; (2) an accurate registry must be maintained with a view to establishing the existence of the contract; (3) a copy of this must be sent to the Comptroller's Office, and (4) the certainty of time must be demonstrated, that is, that the contract was executed 15 days prior. See also: *Mun. Quebradillas v. Corp. Salud Lares*, 180 D.P.R. 1003 (2011); *Colón Colón v. Mun. de Arecibo*, supra, pp. 726–727; *Cordero Vélez v. Mun. de Guánica*, supra, pp. 248–249. We emphasize that it is necessary for each of these requirements to be rigorously fulfilled, as "they reflect the legislative interest of avoiding fraudulent or illegal payments and claims, by creating a monitoring mechanism **\*538** to circumstantially and chronologically perpetuate said contracts". *Ocasio v. Alcalde Mun. de Maunabo*, supra, pp. 53–54.

[3] The need for municipal contracts to be in writing is grounded on a formal or substantive requirement. The written contract is

> 1… The best evidence of reciprocal obligations contracted by the parties. It frees the parties from future spurious controversies over the originally agreed terms, since they are set forth objectively in the written agreement. Therefore, this requirement protects the rights of both municipality and contractor, in case of breach. *Colón Colón v. Mun. de Arecibo*, supra, P. 726.

[4] Consequently, "we the courts must cautiously look at founded claims in accordance with contracts, in which the executing authorities have failed to comply with this mandate. Only thus may it be fully satisfied in the legislative sense and the adjudicative judicial awareness over disbursement of public funds." *Ocasio v. Alcalde de Maunabo*, supra, P. 54. Therefore, "[once] the requirements set forth are fulfilled, contracts are valid, enforceable and published as required by our legal system for the sound administration of public policy, with respect to municipal contracting." *Johnson & Johnson v. Mun. de San Juan*, supra, P. 853. Thus, "*municipalities must not demand the performance of services without having certified to the private party that the agreement was reduced to a written contract*, that was recorded and a copy of which was sent to the Comptroller's Office pursuant to law." (Our emphasis.) *Lugo v. Municipio Guayama*, 163 D.P.R. 208, 217 (2004), citing *Las Marías v. Municipio San Juan*, 159 D.P.R. 868, 879–880 (2003). Of course,

> … with the passage of Act No. 127 of May 31, 2004 (2 L.P.R.A. sec. 97), failure to meet the requirement that **\*539** all contracts must be recorded and sent to the Comptroller's Office just as required by Art. 1 of Act No. 18, *supra* and Art. 8.016 of the Autonomous Municipalities Act of 1991, *supra*, does not have the effect of voiding the contract under dispute, although it does impede requiring services to be rendered until the agreement is recorded and sent to the Comptroller's Office. *Mun. Quebradillas v. Corp. Salud Lares*, supra, P. 1013.

[5–6] Art. 1.003 (v) of the Autonomous Municipalities Act, 21 L.P.R.A. sec. 4001(v), defines *obligation* as



CERTIFIED TRANSLATION

"any legally valid contracted agreement which is represented by a purchase order, contract or similar document, pending payment, duly signed and authorized by officials with jurisdiction to encumber the assignments and that is or may become a due and enforceable debt." Art. 8.004 of the same act, 21 L.P.R.A. sec. 4354, orders that obligations and disbursements of funds be made only to undertake or to pay services authorized by a law, ordinance or resolution passed to that effect, and by the regulations adopted by virtue thereof. 21 L.P.R.A. sec. 4354. Likewise, Art. 8.004, Id., dictates that when credits are authorized in order to address issues for a specific fiscal year, *these must be exclusively applied to the payment of legally contracted obligations that are properly recorded in the books of the municipality during said year*. Id. This means that funds designated for a fiscal year may only be used for obligations legally contracted during that year, not for obligations contracted in previous or subsequent years. That is to say, "a municipality generally may not agree to the future payment of amounts in excess of the budgeted allocation for a particular contract". *Johnson & Johnson v. Mun. de San Juan*, supra, P. 854.

As we see, there will be an obligation by the municipality *solely when there exists a contract by virtue of a legally valid agreement*. This is why all municipalities are required to maintain "a register of all contracts, deeds and related documents that they execute,**540** as well as any amendments to the same, determinations, records or actions that resolve it or void it." See: Art. 8.016 of the Autonomous Municipalities Act, *supra*; Art. 1 of Act No. 18 of October 30, 1975, as amended, *supra*. See also, Art. 4 of Regulation No. 33 regarding Registry of Contracts, Deeds and Related Documents and Sending of Copies to the Comptroller's Office, Regulation No. 5743, Department of State, January 28, 1998, P. 3.

The contents of this registry must include the following information:

> (1) Government entity. (2) Number of contract, deed or related document.... (3) Date of execution. (4) Contractor. (5) Social security number or employer ID number. (6) Value or amount involved, in total or monthly. May be estimated. (7)

Registry volume and page. (8) Purpose of contract, deed or related document. (9) *Validity. It Start and termination dates must be indicated dates.* (10) Exempt. It must be indicated whether or not the contract is exempt from filing [sic], as provided under Article 9–a of this Regulation. If exempt, the reason for not filing must be identified, using the exception number, as indicated under Article 9–a. (11) Approval or waiver. It must be indicated whether or not it is a contract requiring previous approval or waiver for from any organism for its execution. (Our emphasis.) Art. 5 of Regulation No. 5743, pp. 3 – 4.

The obligation to record the contract in the municipal books and the requirement that the contract must be in writing are for different purposes. We explained this in *Colón Colón v. Mun. de Arecibo*, supra, P. 730:

> There is a marked difference between some requirements and others. The requirement that an executed contract must be entered into a municipal log and its copy must be sent to the office of the Comptroller of Puerto Rico is aimed at publishing municipal contracting, vis-à-vis third parties. In this way third parties may inspect it. Nonetheless, requiring executed contracts to be put into writing has the inescapable dimension of sound public administration, to the extent that it allows for **541** the safeguarding of the interests of the contracting parties in the face of a breach, it allows the orderly utilization of municipal funds, avoids uncertainty in the preparation of the municipal budget and makes it possible to

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.     4

adequately identify the item against which the public outlays will be made in compliance with law. That is to say, the first are more than anything procedural in nature and for orderly processing, and the latter [that the contract must be in writing] is substantive due to its direct relationship with sound public administration. In light of which, we must conclude that the failure to meet the requirement to put the municipal contract in writing therefore adversely affects the effectiveness of the obligations contracted.

[7] In short, "the purpose of the statutes regulating the completion of works and the acquisition of goods and services for the State, its agencies and departments, and the municipalities, is the protection of the public's interests and fiscal resources. This avoids favoritism, expenditure, prevarication and the risks of breach." *Johnson & Johnson v. Mun. de San Juan*, supra, P. 852. See also: *Mun. Quebradillas v. Corp. Salud Lares*, supra; *Colón Cólon v. Mun de Arecibo*, supra, P. 725; *Lugo v. Municipio Guayama*, supra, P. 214; *Hatton v. Mun. de Ponce*, supra, P. 1005. "For that purpose, we have indicated that [the rules outlined by law and jurisprudence] must be *rigorously* observed even under emergency circumstances." (Emphasis in the original.) *Ríos v. Municipio Isabela*, 159 D.P.R. 839, 846 (2003). See also: *Fernández & Gutiérrez v. Mun. de San Juan*, supra, P. 833; *Hatton v. Mun. de Ponce*, supra, pp. 1005–1009.

[8] Lastly, we reiterate that it is impermissible for "private persons to invoke equitable relief from the municipalities with which they contract, because 'it is reiterated doctrine that said relief shall not be applied when it is contrary to a clear public policy set forth in a statute or in the Constitution'". *Mun. Quebradillas v.* **\*542** *Corp. Salud Lares*, supra, P. 1020, citing *Las Marías v. Municipio San Juan*, supra, pp. 875–876.

## III

[9] As is apparent from the preceding facts, the work was finished two weeks before execution of the written

contract. ALCO asserts that the municipality asked it to start the work before the date of execution of the written contract. However, this could not be proved by ALCO. Moreover, even if we were to start from the premise that this is what occurred, that does not validate the legal transaction completed. Let's remember what we must once again repeat: " 'private parties must exercise a more active role when contracting with municipalities.'" *Lugo v. Municipio Guayama*, supra, P. 217. It would be wise for contractors to require municipalities to put the agreement into writing, and that it be certified that it was recorded and sent to the Comptroller's Office. Id.

Therefore, ALCO performed the work at the end of 2002 without having a written contract which would authorize it to perform that work. The only thing it had on hand was the letter which awarded it the bid from the public tender to complete the project. That was insufficient, because

> … we established more than three decades ago that in our legal system "an agency is entitled to revoke the awarding of the tender before execution of the corresponding contract"… The social goal of the power to reject bids or to cancel the public tender after it has been awarded is to grant a certain degree of discretion and flexibility which allows the administrative entity to adequately protect its interests. (Cites omitted.) *Cordero Vélez v. Mun. de Guánica*, supra, P. 248.

In accordance with the above, in spite of the fact that ALCO won the bid in the public tender held, that did not ensure that the government would eventually grant it the contract. In that sense, endorsing ALCO's completion of the word without having **\*543** a written contract would annul the authority of the municipalities to revoke the awarding of a tender before executing the contract.

Moreover, we must keep in mind that "the municipality's authority to commit public funds for the payment of an obligation, is contingent upon the adherence to the procedures established by law." *Cordero Vélez v. Mun. de Guánica*, supra, P. 248. For that, we are inclined toward a restrictive rule on municipal contracting. Id. In this case the work was performed in fiscal year 2001 – 2002, but the execution



CERTIFIED TRANSLATION

of the contract occurred in the following fiscal year. This action committed the funds from one fiscal year for the payment of an obligation illegally contracted in a previous fiscal year. All of that was done in clear violation of Art. 8.004 of the Municipalities Act, *supra*. That said, the above does not mean that there are no legally contracted obligations that may be paid in a subsequent year. Provided that an obligation has been legally contracted during a fiscal year, its payment is justified even if it is made during a different fiscal year. The justification is that those funds were separated for this item. By the same token, the action taken was not validated either because both events were processed in the same fiscal year. Prior execution of the written contract is needed.

Although reality is richer than the imagination, if we validate the contract effected in this case, in the future the situation could arise in which a contractor deliberately completes work previously, as a way to apply pressure in order to guarantee the future execution of the contract. Likewise, it could occur that a contractor that performed the work before execution of the contract might wait for the municipal administration to change in order to try to validate its act, executing the agreement. As a consequence, a contractor would be allowed to assume governmental powers by building in critical times without a formal contract, for example, at the end of a fiscal year or **\*544** in the transitional phase of a new municipal administration. That is to say, to validate the theory proposed by ALCO, would reward whoever colludes with a corrupt municipal official in order to violate the rules of sound public administration, aware that as soon as the work ends it shall be entitled to claim compensation regardless of the fact that the law was not followed when contracting. In short, there are multiple possibilities for corruption that could arise if we were to allow for an outlay of public funds for work performed before the execution of a written contract.

Moreover, endorsement of the parties' actions would result, in this particular case, in giving retroactive life to an act that did not occur as was really set forth in the contract. Keep in mind that the eighteenth clause of the contract in question provides that "the period of time for completion of the work is an essential element of the contract and that [ALCO] was supposed to begin the project on or before five days after execution of the contract." That is to say, ALCO could begin to complete the project five days after execution of the contract or earlier, *but always after it was executed*. Furthermore,

the same contract indicates in its fourteenth clause that its *validity* is 30 days after July 16, 2002 until August 14 of the same year. ALCO claims payment for a project constructed before the validity of the formal contract.

In its pleading, ALCO mentions Art. 1 (D) of Act No. 18, supra and Art 8.016 of the Autonomous Municipalities Act, supra, to state that with the amendments made to these laws the requirements for sending contracts to the Comptroller were made more flexible and it was established that failure to meet these requirements is not cause for a competent court to void any contract or legally valid legal transaction. For that reason ALCO believes that in this case the transaction effected by the parties should not be voided, though the contract may have been executed after the work was completed. **\*545**

ALCO argues that these amendments were made in order to promote the government's credibility as a contracting entity, by establishing just and valid rules which prevent municipalities from losing their credibility when contracting. Nonetheless, from a reading of the transcribed sections we see that what Art. 1(d) of Act No. 18, *supra*, refers to is to the register that the municipalities must maintain of all contracts they execute – including their amendments – and of the sending of a copy of these to the Comptroller's Office. The law establishes that a court shall not declare void a contract or its amendments because they are not found in the municipal registries or because they are not sent to the Comptroller's Office. From these sections it cannot be interpreted that the legislative intent was to retroactively authorize a contract executed after completion of the work.

A study of the Positive Report on the measure (House Bill 4243) produced by the Government Commission of the House of Representatives confirms this conclusion for us. There it was explained that the amendment arose from the need to revoke the case *Las Marías v. Municipio San Juan*, supra. In that case, this Court ruled that the contracts not recorded in the Contracts Registry of the Comptroller's Office were void and unenforceable. The Government Commission explained:

> Among the unjust consequences of the rule established in the *Las Marias* case, it stands out that it is the agency or municipality who has control of the process in the



CERTIFIED TRANSLATION

Comptroller's Registry and that, if the agency fails to meet this requirement, whether from carelessness, negligence or intentionally, the contract is void and the private entity may not collect for the services or merchandise. Positive Report of House Bill 4243, November 11, 2003, 6th Ordinary Session, 14th Legislative Assembly, P. 2.

Finally, the Government Commission of the House Of Representatives indicated that the amendment, *"without infringing the rigorous requirements of government contracting*, protects the contracting party that rests on legal and adequate processing by **\*546** government agencies and entities of the requirements specified by law." (Our emphasis.) Id., P. 3.

As is apparent, the primary reason that motivated the Legislative Assembly to amend Art. 1 (d) of the Act was that contractors are not the ones in charge of sending the contracts to the Comptroller's Office. This is an act that does not depend on the contractor's diligence, but rather on the contracting municipality or agency. Therefore, the legislature considered it unfair to penalize the contractor for something that was not within their purview. Nonetheless, the Government Commission emphasized that the amendment was meritorious because it did not infringe the strict requirements in place for government contracting. One of those requirements is, precisely, the existence of a written contract.

To require contractors to ensure that there is a written contract before performing the work does not depend on another party. Nor does it place them at a disadvantage as contracting parties. To the contrary, it guarantees them that they will be paid for the work, because they have the most secure guarantee possible of the existence and scope of the contract obligation: the written contract. Keep in mind that in the past we have already stated that "the private party that stands by and renders services without demanding bona fide proof that the Government fulfilled its duty, runs the risk of assuming liability for its losses." *Lugo v. Municipio Guayama*, supra, P. 218. See also, *Colón Colón v. Mun. de Arecibo*, supra, P. 729.

Moreover, ALCO assures that in *Cordero Vélez v. Mun. de Guánica*, supra, we held that if a public tender is formally awarded and notified, and the contractor begins

work without having executed a contract, payment for the work is subject to the execution of a contract even though it may be afterwards. *Certiorari*, page 7. It is wrong.

The controversy we had was whether the action for breach of contract and damages against **\*547** the municipality had merit, by virtue of a public tender that was not formally awarded nor did it result in the execution of a written contract. We ruled that it did not.

In *Cordero Velez,* the Municipality of Guánica held a first *tender* in April 2001 for the purchase of fuel until June 30 of the same year. Mr. Cordero Velez attended that public tender, and was subsequently notified by letter that he had obtained the award to supply the fuel. Nonetheless, the contract was never executed. Notwithstanding the above, the municipality was acquiring the fuel from Mr. Cordero Velez's garage. Subsequently, there was another public tender held for the period of July 2001 until June 30, 2002. Mr. Cordero Velez was the only one who attended the public tender. As he alleged, the Municipal Secretary told him that they were going to award him the bid since he had been the sole bidder. Nonetheless, he never received written notice informing him of the awarding of the tender. After several formalities, Mr. Cordero Velez discovered that the municipality was also buying fuel from another retailer. Thus, he checked with the municipality as to the reason for the non-exclusivity in the purchasing of fuel. The municipality informed him that he did not have a bid awarded, for which reason it proceeded to discontinue the payment and purchasing of fuel at his station.

Dissatisfied, Mr. Cordero Velez filed an action for collection of monies and breach of contract. He alleged that with the second tender there was a contractual relationship established between him and the municipality of Guánica. The Court of First Instance concluded that the Municipality of Guánica awarded Mr. Cordero Velez the second tender (2001 – 2002). It believed that the municipality, through its Municipal Secretary, told Mr. Cordero Velez that he had been awarded the tender. Therefore, it concluded that from the tender a contractual relationship arose between both parties.

The Court of Appeals partially affirmed the lower court. The intermediate court concluded **\*548** that it lacked elements of judgment to intervene in the decision of the



CERTIFIED TRANSLATION

Court of First Instance. Nonetheless, it acknowledged that the payment of a municipal obligation with public funds is contingent on adherence to the procedures established by law. Thus, it ordered the execution of a written contract, that is recorded into the municipal contract registry and notification to the Comptroller's Office along with a copy of the judgment.

Following an analysis of the controversy before us, we indicated regarding the first tender that

> … [a]lthough it was necessary to execute a written contract and comply with the legal formalities so that the municipality could disburse public funds under applicable law, there exists no controversy with respect to compliance with the terms of this tender.

> The controversy in the case at bar surrounds another tender, held in May 2001 for fiscal year 2001 - 2002. Upon applying the aforementioned precepts regarding the procedure for holding and awarding municipal tenders, it is indisputable that - contrary to the above - the tender in question was not awarded. *Cordero Vélez v. Mun. de Guánica*, supra, P. 250.

From the transcript it is apparent that in *Cordero Vélez v. Mun. de Guánica*, supra, we did not say that the completion of a project prior to the execution of a contract validates it. We did not attempt to elucidate the merits of the first tender. We only noted that, in effect, the tender was awarded to Mr. Cordero Velez, since the Tenders Board sent him a letter informing him that he had won the bid and that the parties should have executed a written contract. Accordingly, we cannot conclude that this Court validated in *Cordero Vélez* that construction projects can be completed prior to executing the contracts, because we did not even analyze that aspect. We ruled only that the second bid was not awarded to Mr. Cordero Velez, because the fact that the Municipal Secretary commented verbally that the auction was going to be awarded to him was insufficient to require the municipality to **\*549** formally award that tender and execute a written contract.

Contrary to ALCO's interpretation, in *Cordero Vélez v. Mun. de Guánica*, supra, we indicated that there was no ratification of the awarding of the tender due to the fact that the municipality was purchasing from Mr. Cordero Velez's station. We emphasized that

[i]n this case a written contract was never executed. Nor were *any* of the formalities applicable to municipal contracts satisfied, which are rigorously enforced with a view to protecting the public interest. The exception established by the aforementioned Act. No. 127 to the effect that a valid contract that has not been recorded or sent to the Comptroller's Office shall not be void, does not have the effect of altering the public policy permeating the regulations involving municipal contracting nor does it exempt from compliance with the aforementioned requirements which make enforceable agreements that are not legally valid. Furthermore, the provision in question starts from the premise that a contract was executed and that it is valid. Since, in the case at bar, the relationship between Mr. Cordero Velez and the municipality never reached the enforceability of a bilateral pact, we ruled that since there was no contract, it was inadmissible to order compliance with any formalities, contrary to what was resolved by the Court of Appeals. (Emphasis in the original.) Id., P. 252.

In short, we indicated that "considering the interest represented by public funds, we are unwilling to impose upon the municipality the responsibility of complying with a contract that was never executed." Id., P. 253.

ALCO asserts that it can be indirectly concluded from our language that if the contract had been executed for the second tender, the payment would have been admissible. That analysis overextends what was said in *Cordero Vélez v. Mun. de Guánica*, supra, which is a case about the validity of the awarding of a tender and not about whether a project can be completed before the execution of a written contract. Contrary to what ALCO alleges, in the same case we rejected the solution suggested by the intermediate appellate court, which ordered the execution of a written contract, **\*550** that it be recorded in the municipal contract registry and

CERTIFIED TRANSLATION

notification of the Comptroller's Office along with a copy of the judgment to then validate the legal transaction. If we had understood that what was done could be validated, we would have upheld the remedy that the contract was to be retroactively executed, but we did not do so.

We are not endorsing a municipality's benefiting from an unpaid project or service. Nor is this a legal claim against the municipal official that encouraged ALCO to complete the work without a written contract in place. Accordingly, with respect to the municipality, we defer to applicable law and reiterate that the contractor should have demanded a written contract before committing its resources and performing the work. Like any commercial enterprise, ALCO should have known the legal requirements for contracting with a municipality and should have actively demanded its compliance. See *Lugo v. Municipio Guayama*, supra, P. 217. Ignorance of those legal requirements does not excuse their failure to follow them. To conclude otherwise would unintentionally foster "favoritism, corruption, expense, prevarication, extravagance, carelessness and the risks of breach in public administration." *Lugo v. Municipio Guayama*, supra, P. 220.

> "Corruption and improper or illegal disbursement of public funds - in their multiple forms, sometimes crass and others sophisticated - are acts incompatible with the democratic government consecrated in our Constitution and underpinned by respect for human dignity and public funds as sole sovereign.." *E.L.A. v. Soto Santiago*, 131 D.P.R. 304, 322 (1992), citing *A.E.E. y A.A.A. v. P.N.P.*, 128 D.P.R. 294, 294–295 (1991), concurring opinion by Associate Justice Negrón García, joined by Associate Justices Rebello Lopez and Andreu Garcia.

At present, Sec. 6 of Chapter IX of Regulations of the Municipal Administration of the Office of the Commissioner of Municipal Affairs (OCAM for its Spanish initials), applicable to all municipal governments, establishes: **551**

Section 6: *Construction, Public Works and Improvements Contracts*

A contract for construction projects and improvements, must be prepared after holding a public tender, when the total cost of the work exceeds one hundred thousand ($100,000) dollars. If that amount is not exceeded, procurement of the work may be conducted by requesting at least three (3) quotes.

The *contract* must stipulate the maximum amount of the cost of the work and the form of payment and identify the manner in which the monitoring or inspection of the work will be carried out. It must further provide for the retention of ten percent (10%) of each partial payment, until termination or substantial termination of the work, pursuant to legal requirements, and must be duly inspected and accepted by the municipality.

Municipalities must include in their contracts termination clauses in cases of breach and penalty clauses or liquidated damage clauses for late performance. They must also stipulate clauses regulating subcontracting of work for the project and a liability release, among others. They must comply with the permits process required by the appropriate agencies and with the requirements established under this Regulation.

Construction contracts for projects and improvements paid for with "Community Development Block Grant" (CDBG) federal funds must meet the requirements of the applicable federal regulations and with the directives of the Office (Emphasis added.) Regulations of the Municipal Administration of the Office of the Commissioner of Municipal Affairs, Regulation No. 7539, State Department, July 18, 2008, P. 159.

From a reading of this section, it is inevitable to conclude that the written contract must be executed prior to performing the work. *Otherwise, we would be ignoring the public interest of regulating inspections of the project and restricting parameters for subcontracting, among other cautionary measures contemplated in the cited section.*

That rule is not new. Going to the previous Regulation on Basic Rules of OCAM we find ourselves with an express prohibition on retroactivity of contracts. Section 5(17) of Chapter I specified that

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.       9

CERTIFIED TRANSLATION

an obligation is "a commitment that is represented by purchase order, *contract*, or similar document pending **\*552** payment, that must be signed by the authorized official in order to encumber appropriations in the municipality *and that may in the future become enforceable debt.*" (Our emphasis.) Revised Regulation on Basic Rules for the Municipalities of Puerto Rico, Regulation No. 3052 of the Office of the Commissioner of Municipal Affairs, June 30, 1995, P. 4. The outcome we reach today is consistent with that regulation.

Faced with this backdrop, it is inevitable that, in any municipal public improvement or construction project, there must be a written contract prior to its execution. We must not excuse a municipal government from compliance with the rules and regulations that impose upon it the establishment of contractual guarantees and protections of the public interest. Completing a project before signing those clauses would deprive the municipal government and the constituents of being protected from illegal subcontracting or the performance of work without inspections or supervision, among other deficiencies.

In this case the doctrine of unjust enrichment does not apply either. Here the exception that allows a government organism to invoke equitable relief in order to avoid an outcome contrary to public policy specified under a law or in the Constitution does not apply. See *Mun. Quebradillas v. Corp. Salud Lares*, supra. On the contrary "allowing an equitable action against a municipality in order to demand something that is the product of a void contract would violate the public policy established under the Municipal Act." Id., P. 1018.

For this reason we reject the possibility of importing the focus of other jurisdictions, under which public obligations are validated without a written contract, through the application of equitable concepts, including the doctrine of unjust enrichment. For a proposal in that regard, See L. Muñiz Argüelles and J. Alvarado Vázquez, *Obligaciones y Contratos*, 77 (No. 2) Rev. Jur. U.P.R. 645 (2008). **\*553**

 In spite of the above, we understand that perhaps in this case it seems fair to compensate the contractor. In that respect, a recognized author and professor distinguished in the subject matter has presented an alternative: "Shouldn't the official be liable for the property damage

suffered for by the contractor who in good faith provides a service because of his deceitful representations that the contract has been adjudicated to him? These obligations of officials would be more effective tools to tackle government corruption, but they must certainly arise from action by the legislature." Muñiz Argüelles, Id., pp. 650–651.

## IV

For all of the above, we affirm the judgment issued by the Court of Appeals. That court acted in accordance with law by validating the summary judgment issued in favor of the municipality of Toa Alta. The intermediate appellate court correctly identified the danger of validating acts such as the one that took place here, regardless of the good intentions of whoever proposes it. "[r]esolving otherwise would upend the established system of control of disbursement of public funds, because this would lend itself to the validation of agreements reached between contractors and municipalities without complying with the process established by our legal system. *Certiorari*, P. 170. Our non-delegable task of safeguarding legality in the disbursement of the monies of the People, compels us to not admit this type of retroactive contracting. To rule otherwise would undermine the rigorous rules and regulations that the Legislative Assembly has imposed upon municipal contracting.

Judgment will be issued accordingly.

Associate Justice Rodriguez Rodriguez concurred with the outcome with no written opinion. Associate Justice **\*554** Fiol Matta dissented with a written opinion, which Chief Justice Hernandez Denton joined.

## -- O --

The Opinion of the Court in this case starts from the mistaken premise that all of the services by petitioner were completed before execution of the written contract. By doing so, it does not discuss nor does it specify the characteristics and elements constituting the type of contract agreed to in this case. This being a contract for the execution of a construction project, in which the primary service takes place upon *delivery* of the agreed project, it fell to us to determine whether before that delivery the requirements had been met for the execution of the obligation established under the regulations regarding municipal contracts. The majority Opinion adds, unnecessarily, a formal constitutive requirement to



CERTIFIED TRANSLATION

municipal contracts that is not contemplated under the Autonomous Municipalities Act of the Commonwealth of Puerto Rico of 1991 (Autonomous Municipalities Act), Act No. 81 – 1991 (21 L.P.R.A. sec. 4001 *et seq.*), namely, having in place the written contract before the requested work is completed. Not concurring with the majority analysis, I am forced to dissent.

## I

On June 4, 2002, the municipality of Toa Alta notified petitioner ALCO Corporation (ALCO) that it received the award for tender 02 – 0304 for a repaving project in the Lajas neighborhood of that municipality. The contract for performance of the work was executed on July 16, **\*555** 2002, the date on which *it was put into writing, it was recorded in the municipal books and a copy was sent to the Comptroller's Office.* The cost of the project was $29,500. The contract would have a duration of approximately one month.[1]. There is no controversy with respect to that contract's compliance with the four formal requirements specified under the Autonomous Municipalities Act for municipal contracts.

According to petitioner, the municipality of Toa Alta asked it to initiate the re-pavement work before the date on which the contract was formally executed. [2] What is not disputed is that at the end of June 2002, ALCO performed the repavement work as described in tender 02 – 030 and, eventually, in the contract for the performance of works on July 16.[3] That is to say, it performed its work before the contract was executed.[4] However, the final certification of the project, with a view to its acceptance and receipt by the municipality of Toa Alta, was made on July 31, 2002, that is, during the term of validity of the contract.[5] Nonetheless, the municipality refused to certify the work and made no payments whatsoever in ALCO's favor.

After unsuccessful collection attempts, ALCO filed a complaint for collection of monies against the municipality of toe Alta, claiming $29,500 for the work performed as a due, liquid and payable debt. Both parties requested summary judgment. The municipality alleged **\*556** that "the claim filed against it was inadmissible because it was supported by a supposed contractual obligation that bore no relationship whatsoever to the claim for the work performed."[6] Specifically, it asserted that since the repaving work was performed before the contract was put into writing as per the regulations over municipal contracts, it was not required to comply with it.[7]

The Court of First Instance granted the motion for summary judgment filed by the municipality and dismissed the complaint. In short, it determined that ALCO could not collect for work performed before the contract for the performance of works had been executed. Dissatisfied, ALCO went before the Court of Appeals. The intermediate court, in pertinent part, affirmed the ruling by the lower court. The Court of Appeals determined that, since the contract executed on July 16 did not mention that the work had begun before the effective date of the contract and that it specified that any changes to the same must be made in writing, ALCO could not claim to any payment whatsoever for the work performed before execution of the contract.

Dissatisfied, ALCO went before this Court. In relevant part, it alleged that the Court of Appeals erred upon concluding that ALCO could not claim payment for the work performed, because the work on the project was done before the contract had been executed. Specifically, ALCO questions if it is possible to "dismiss a complaint for collection of monies for certain work duly tendered, budgeted, performed under a written **\*557** and executed contract, filed in the books of the Municipality and sent to the Comptroller's Office, [due to the fact that] the contractor responded to the Municipality's petition to do the work a few days in advance."[8] Petitioner alleges that that would undermine the government's credibility as a contracting entity. On its part, the municipality focuses on the fact that "the work in question was performed prior to the provision [sic] of the [contract]."[9] Additionally, it alleged that it was not demonstrated that the municipality had requested that the work be done earlier. Finally, it argues that contracts "cannot be executed to cover events occurring after execution [of the same]." [10]

## II

A municipality's authority to contract, and the consequent right of contractors to demand that they comply with them, is conditioned on the contract's meeting formal requirements. [11] These are: (1) the agreement must be written; (2) an accurate registry must be maintained with a view to establishing the existence of the contract; (3) a copy of this must be sent to the Comptroller's Office, and (4) the certainty of time must be demonstrated, that is, that the contract was executed fifteen days prior.[12] These requirements must be rigorously observed "since their absence deprives the agreement with the municipality of effectiveness and



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.          11

CERTIFIED TRANSLATION

validity." (Emphasis **558** supplied.) [13] That is to say, "no municipality may satisfy any debt not arising from a written contract which has in turn been registered and remitted to the Comptroller's Office." (Emphasis suppressed.) [14] For contracts executed by the municipality to be valid and for them to therefore bind the parties, they must meet these formal requirements. [15] An agreement in contravention of these rules is void. [16]

As the majority Opinion well states, these requirements, and rigorous adherence to them, have the objective of sound and upright public administration.[17] We have affirmed that this objective is "of the highest public interest." [18] The purpose of this policy is not to favor the municipality, but rather to protect public funds. We have constantly expressed that good administration of the government is a virtue of democracy, and part of good administration entails carrying out its functions as a purchaser efficiently, honestly and properly in order to protect the interests and the money of the People represented by that government. [20] In this way "we avoid favoritism, corruption, expense, prevarication, extravagance and carelessness when executing contracts, and we minimize the risks of breach." [21] Therefore, it is the courts' duty to avoid flouting these legal provisions that protect public funds and integrity in government administration. [22]

Compliance with the aforementioned formal requirements has a "*constitutive* nature with respect to the *effectiveness* of contracted obligations." (Emphasis supplied.) [23] A contractor entering into an agreement with the municipality without meeting these requirements assumes the risk of not being able to demand that the municipality fulfill the obligation. As long as there is noncompliance, the contractor will have no cause of action.[24] In particular, we have insisted on the need for municipal contracts to be put *into writing*, an element we have described as "indispensable… in order for what has been agreed to be binding." (Emphasis suppressed.) [25]

That said, once the formal requirements for contracting are fulfilled, contracts between the municipal entity and the contractor are valid and enforceable.[26] In these cases, what remains is to analyze the legal transaction agreed upon and the obligations assumed, as occurs in any other contractual relationship. [27] In *De Jesús González v. A.C.*, we stated **560** that "when the State enters into contracts, the interpretation of the contract must be completed as if it were a contract between two particular people… That

means that after the State executes a contract with a private person, both are bound by the general rules regarding contracts and their corresponding interpretations in light of our applicable rulings." (Cites omitted.)[28] Of course, it is after compliance with the formal requirements that the municipality will be bound vis-à-vis the contractor and this may require payment of the agreed price.

The Opinion of the Court accepts that in this case the four requirements of Act No. 81 were met [29] but it adds a fifth formal requirement not established in the Autonomous Municipalities Act: that the contract must be put into writing before the contractor's work begins. This is for purposes of avoiding, according to the majority, having a contractor perform work with no contract and later demanding payment from the municipality. However, the majority forgets that, since execution of the contract is a *sine qua non* requirement, if the contractor performs the work and no contract is executed, *it may not demand anything from the municipality*. Furthermore, in a performance of works situation, such as this one, nothing requires the municipality to execute the contract and pay for the work. That said, if the municipality itself *voluntarily decides* to enter into the obligation after the work is performed, observing the requirements of the Autonomous Municipalities Act, there is nothing that prohibits it from doing so. [30] **561**

### III

Even if we were to agree with the majority that the contract must be executed in writing before the requested work is performed, that does not resolve the controversy before us. We cannot lose sight of the fact that we are faced with a *works contract*. Therefore, in order to determine when the contract in this case should have been executed, it is necessary to examine this contractual concept before setting the time at which the formal requirements of the Autonomous Municipalities Act should have been met to, including the new requirement of non-retroactivity established by the Court. I do not propose that we ignore the special statutes and recur exclusively to the general theory of contracts. Rather, I will reiterate that, as a court, it falls to us to examine the interaction between the special law and the various concepts of our contractual law, since not all contracts are equal.

Through a lease of works contract, also known as *works contract, business contract, or contract for execution of*



CERTIFIED TRANSLATION

*works*, [31] one party undertakes to execute a project in exchange for a previously established price [32] In particular, as Puig Brutau explains to us, this "is the contract through which one of the parties… Is bound vis-à-vis the other… to the production of a determined outcome with its independent activity, in exchange for **\*562** a certain price." (Emphasis supplied.)[33] The correlation between the works contract and the production of an outcome is a characteristic universally accepted by the doctrine. [34] The Supreme Court of Spain has consistently reached the same conclusion. [35] As the term itself implies, the emphasis on the outcome necessarily points to a temporal element: this is the culmination of a productive process. [36]

A. In the works contract, the contractor's principal obligations are: (1) to complete the work and (2) *deliver it*. [37]. On its part, the owner of the works has two essential obligations: (1) to *receive* the project and (2) to pay the **\*563** price in the form, the amount and at the time agreed. [39] It is up to us now to analyze separately these considerations and then discuss how they interact.

While the fundamental characteristic of a works contract is the production of an outcome, the process that that product entails is in turn comprised of initial work and a final delivery. That said, given the importance of the outcome, the initial work is only a first step in the performance of what was undertaken by the contractor. That is to say, this is not a matter of two independent considerations – initial work and final delivery – but rather a single obligation to produce a result that, although it begins with the work, culminates in its delivery. [40] Moreover, *delivery constitutes the definitive moment in which the contractor fulfills its obligation*. If a contractor executes the work but fails to deliver it, it will not have provided its service. Therefore, solely completing the work is insufficient. [41] The *delivery of the completed work constitutes definitive performance of the consideration by the contractor*. For that reason, the doctrine has considerably emphasized the element of delivery when discussing the concept of the works contract as a central element of the contractor's **\*564** obligation. [42] The same thing occurs in the case law of the Supreme Court of Spain. [43]

As a consequence of the importance of the result in this contract, some treatise writers have emphasized that, more than performing the work, the *primary* consideration of the contractor is, precisely, to *deliver* the work performed. Castán Tobeñas explains that the

provision of the thing (duly prepared) that is, its *alienation*, appears as the *primary consideration*, with the *completion* of the thing being only the *means* to make that possible." (Emphasis supplied.) [44] That is to say, the work on the project is the means, but its delivery is the end. For Martinez Mas, the delivery of the project is an inherent part of its termination, and therefore, of the contractor's fulfillment of the obligation. [45] A treatise writer tells us that "*the last obligation of the builder in the final phase of fulfillment of the contract, is the delivery of project to the developer.*" (Emphasis supplied.) [46] It should be noted that the owner's obligation to pay *does not arise when the contractor finishes the work, but rather, effectively, when he delivers it* and the owner receives it.**\*565**

The works contract is "a bilateral contract. That is to say, that the persons entering into it impose reciprocal obligations upon each other." [47] By their nature, the considerations in the works contract have a temporal order. First, it is necessary for the contractor to execute and deliver the work. Only then does the owner have the obligation to receive it and to pay. As Lete del Río and Lete Achirica explain, receiving the work is "another obligation of the principal, *correlated* to that of the contractor to deliver the work." (Emphasis supplied.) [48] The Supreme Court of Spain reached the same conclusion.

> The works contract… Is a bilateral contract originating reciprocal obligations, in which the credit of the contractor is not directed only toward the payment of the price by the principal, but rather to a consideration, that is, to the consideration of the collection of the price *in exchange for its consideration of delivery of the completed work*. (Emphasis supplied.) [49]

B. As we have stated, the contractor's primary consideration in the works contract is the production and delivery of a determined *result*. [50] That is, precisely, what distinguishes it from the contract for services. In that regard, Velez Torres illustrates that in the contract for services "what is promised by the contractor is the energy of the work, while in [the works contract] what is promised is the work or final result of the work." (Emphasis supplied.) [51] Puig Peña accepts the same criteria [T]he contractor promises not only its work, but the result of the **\*566** same." [52] This corresponds to the consideration that the owner of the work must perform, since it must, in addition to paying the agreed price,

CERTIFIED TRANSLATION

*receive* the work. In other words, more than the payment of a certain price in exchange for an effort made, in a works contract the owner makes a payment to the contractor for a result that is delivered and received. The scientific doctrine unanimously distinguishes the works contract from the contract for rental of service, clearly establishing the difference between the result to be delivered and the effort made. [53] The same thing occurs with Spanish case law. [54]

As Puig Brutau explains, the above is the product of the fact that in the works contract the contractor completes its work "independently." [55] Therefore, what the contractor owes to the owner is not an effort made but rather a final result. This is compatible with what **\*557** Castán Tobeñas indicates, that the performance of the work is merely the means to the end - its delivery. [56]

Congruently, Puig Brutau explains to us that the works contract and the contract for purchase and sale are distinct because in the first the delivered result is a "new thing" or "*recently made*." (Emphasis supplied.) [57] In other words, in the works contract the delivered result may not be a generically prefabricated work, but rather it must be the product of a particular commission. [58] *But did does not necessarily have to be performed after execution of the contract either,* it is sufficient for it to be a recently made work. What is fundamental is that the primary consideration of the delivery of the result is done after the contract is executed. It will be with the delivery of the commissioned result, the receiving of the work and the payment of the agreed price that the respective obligations will be extinguished, provided that what has been delivered is in accordance with what was commissioned in the contract. [59]

The above is consistent with the independent nature of work done by the contractor. This is why Civil Code establishes that, if the work is destroyed before its delivery, the loss shall be at the contractor's expense and not that of the owner, unless the owner has defaulted in the receiving / acceptance **\*568** of the work or the owner has supplied defective materials. [60] Before delivery and receipt, the work performed by the contractor is his and only in very specific cases may he claim payment from the owner of the project. [61] As Gonzalez Poveda explains: "It is understood that, *until the delivery occurs, the thing is the property of the contractor*, therefore he must run the risks of the same according to the general legal principle that things perish for their *owner*." (Emphasis supplied.) [62] According to Martinez Más, the

discussion of the risk is tied to the very nature of the works contract, as we have seen, it is more based on the delivered result than on the work employed. The treatise writer tells us:

> The reason that the builder assumes the risks for [the] work's perishing before its delivery, is rooted in the fact that, in the work contract, the builder's remuneration is not for the work employed and for the materials incorporated into the work, but for the conclusion of the same, therefore it seems logical that the builder bears the risk of its failure or loss of the work is almost finished or *even finished*, but not yet *delivered*. (Emphasis supplied.) [63]

If any of the parties breaches their respective considerations, they may exercise the powers granted them under contractual law, such as asking for resolution or the **\*569** specific performance of the obligation, among others. [64] As we stated in *Master Concrete Corp. v. Fraya, S.E.*, "after execution of the works contract– as in any type of contract – the parties are bound by what is expressly agreed." [65] If, for example, the work does not match what is specified in the contract, it is up to the court of instance it to determine the adequate remedy, depending on the gravity of the breach. [66] The same thing occurs if a determined condition of the contract, such as the period for carrying out the work, is essential in nature.

## IV

In the case at bar, the works contract was executed, according to the rules applicable to municipal contracts, on July 16, 2002. There is no doubt that it fulfilled all formal requirements provided under the Autonomous Municipalities Acts and case law. The contractor had from July 16 until August 18, 2002 to fill its contractual obligations. That is to say, the contractor had to perform the consideration of delivering the work in that period of time. In effect, on July 31, the contractor attempted to deliver its work. **\*570**

The independent work performed by the contractor before delivering the work to the Municipality was carried out between June 25 and 28 2002, approximately two weeks before the contract was executed. As alleged in the complaint, the work performed on those days corresponds to the work indicated in tender 02 – 30, whose awarding was notified on June 4 and in the contract executed on July 16. [67] It was also alleged that the work corresponds to what the doctrine classifies as

CERTIFIED TRANSLATION

"recently done" work, given the temporal proximity between the work performed and to the execution of the contract, as well as the fact that the work performed was specifically commissioned in the project and not a generic work as occurs in purchase and sale.

The consideration which the contractor undertook on July 16, as part of a works contract, was the *delivery of the already finished project.* It was unnecessary, as a cost development of the cause of action, for the work that produced that project to be performed before the contract was executed. It was sufficient for the work to be "recently done." [68] In this case, the work was done shortly before the contract was executed. On July 31, during the duration of the contract, the contractor fulfilled its obligation: it delivered the work commissioned. It was up to the **\*571** owner of the project to fulfill its [obligations]: to receive the work and to pay the agreed price.

The complaint in the case at bar was summarily dismissed, having alleged that it did not justify the granting of relief. The Court of First Instance did not see evidence regarding the parties' intention or regarding the essential nature of the period of time established in the contract. The majority errs by delving into the merits of the controversy and ruling that, as a question of fact, the contractor breached an essential element of the contract, when no evidence to that effect was presented.

Faced with the facts that the requirement of non-retroactivity is not established under the Autonomous Municipality Act, that the fulfillment of the obligation took place after execution of the written contract and there is no evidence regarding the intention of the parties that would allow for the conclusion that an essential condition of the contract was breached, I would revoke the summary judgment and I would remand the case to the Court of First Instance, for a trial on the merits.

Footnotes

1 The contract provides that it would be in effect from July 16, 2002 through August 14, 2002.

2 The lower courts did not make a fact-finding regarding this allegation, as the Court of First Instance dismissed the complaint via summary judgment.

3 The works were performed on the 25, 26, 27 and 28 days of June 2002.

4. The contract signed on July 16, provided for the delivery of partial certifications that had to be approved by a representative of the Municipality. However, as in this case there was no presentation of evidence or trial on the merits, it is unknown if that contractual obligation was essential in nature.

5 Also it presented an additional certification claiming the 10% of the agreed price reserved by the municipality to cover possible imperfections and defects of the work.

6 Judgment of the Court of Appeals, page 2; Appendix of *Certiorari*, page 160.

7 Also not controverted was the fact that the work performed two weeks in advance was the same that was agreed in the contract of July 16. Also, ALCO acknowledges that if the contract had not been perfected on July 16, meeting the formal requirements of the legal system regarding municipal contracts, it could not demand the payment for the performed work. Its argument is based in that once the written contract was perfected and the other requirements of form were met, it could demand the subject matter of the obligation from the municipality, of paying it for the work performed in advance.

8 *Certiorari*, page 5.

9 Opposition to Certiorari, page 4.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.          15

CERTIFIED TRANSLATION

10 Id, page 5.

11 21 LPRA sec. 4051; *Johnson & Johnson v. Mun de San Juan*, 172 DPR 840, 852 (2007); *Cordero Vélez v. Mun de Guanica*, 170 DPR 237, 248 (2007); *Colon Colon v. Mun. De Arecibo*, 170 DPR 718, 725 (2007)

12 *Mun Quebradillas v. Corp. Salud Lares*, 180 DPR 1003 (2011); *Fernández & Gutiérrez v. Mun San Juan*, 147 DPR 824, 830 (1999); *Hatton v. Mun de Ponce*, 134 DPR 1001, 1006 (1994).

13 *Mun de Quebradillas v. Corp. Salud Lares, supra*, page 1013. The requirement of sending a copy of the contract to the Comptroller does not nullify the legal transaction, but prevents the demand of the subject matters of the obligations until met. Id. See, also, *Lugo v. Municipio Guayama*, 163 D.P.R. 208, 215 (2004).

14 *Mun de Quebradillas v. Corp. Salud Lares, supra* page 1014

15 *Colon Colon v. Mun de Arecibo*, *supra* pages 725-726.

16 *Fernández & Gutiérrez v. Mun San Juan, supra* page 833.

17 Majority Opinion page 538; *Colon Colon v. Mun de Arecibo, supra* page 724.

18 *Mun de Quebradillas v. Corp. Salud Lares, supra* page. 1015; *Johnson & Johnson v. Mun de San Juan, supra* page 852. See also, *Hatton v. Mun. de Ponce, supra* page 1005. "[T]he legal precepts that regulate the economic relationships between private entities and the municipalities have a great public interest and aspire to promote a moral and honest public administration".

19 *Mun de Quebradillas v. Corp. Salud Lares, supra*, page 1017.

20 *Cordero Vélez v. Mun de Guanica, supra*, page 245; *Mar-Mol Co., Inc. v. Adm. Servicios Gens,* 126 DPR 864, 871 (1990).

21 *Mar-Mol Co., Inc. v. Adm Servicios Gens, supra*, page 871.

22 *Mun. De Quebradillas v. Corp. Salud Lares, supra* page 10; *Hatton v. Mun de Ponce, supra*, page 1006.

23 *Colon Colon v. Mun de Arecibo, supra*, page 727.

24 See Id, page 731.

25 Id. Page 726, citing *Cordero Velez v Mun. Guanica, supra*, page 248; *Quest Diagnostics v. Mun San Juan*, 175 DPR 994 (2009). Controversies related to verbal contracts with municipal entities have been the main producers of our case law in this area and we have consistently rejected validating those agreements. See, for example, *Mun de Quebradillas v. Corp. Salud Lares, supra*; *Colon Colon v. Mun de Arecibo, supra*; *Fernández & Gutiérrez v. Mun. San Juan, supra*; *Morales v. Municipio de Toa Baja, supra*. On the other hand, in those cases where the contract is in writing and the other formal requirements have been met, we have upheld the agreed obligations See, for example, *Johnson & Johnson v. Mun de San Juan, supra*.

26 *Johnson & Johnson v. Mun de San Juan, supra*, page 853. See also, *Fernández & Gutiérrez v. Mun San Juan, supra*, page 833.

27 *Johnson & Johnson v. Mun de San Juan, supra*, page 855.



CERTIFIED TRANSLATION

28 *De Jesús González v. A.C.,* 148 D.P.R. 255, 267 (1999)

29 Majority Opinion, page 533.

30 Nothing prevents that elements of form are added via regulation, to municipal contracting. However, this is not the case before us. The controversy here is limited to the interpretation of Law No. 81 and the constitutive requirements established in this law. The majority opinion proposes that the non-retroactive principle can be inferred from Section 6 of Chapter IX of the Regulation of the Municipal Administration of the Office of the Commissioner of Municipal Matters (OCAM). Majority Opinion, pages 550 -551. However, the majority itself acknowledges that it was the previous Regulation, Regulation about Basic Norms of OCAM that had that express prohibition. That is, that the current regulation eliminated the absolute prohibition to retroactive contractive that established the repealed regulation. I do not think this history allows us to affirm that the current regulation has a similar prohibition.

31 J.M. Lete del Rio and J. Lete Achirica, *Derecho de Obligaciones: Contratos*, Navarra, Ed. Thomson/Aranzadi, 2006 Vol. II page 515; F. Martínez Mas, *El contrato de obra analizado para constructores y promotores*, Valencia, Ed. Cisspraxis, 2000, page 15.

32 *Master Concrete Corp. v. Fraya, S.E.* 152 D.P.R. 616, 623 (2000). The construction contract is regulated in Articles 1480 through 1492 of the Civil Code, 31 LPRA secs. 4121-4133.

33 J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Ed. Bosch, 1982, T. II, Vol 2, page 438. See also, J.R. Vélez Torres, *Curso de Derecho Civil: derecho de contratos*, San Juan, Ed. Rev. Jur. U.I.P.R., 1990, T. IV, Vol 2, page 236.

34 See: M. Albadalejo, Derecho Civil, 8th ed,, Barcelona, T. II, Vol. 2, page 309 ("In the [work contract] a result is promised"(emphasis in original)); J.M. Manresa Navarro, *Comentario al Codigo Civil espanol*, 5th ed., Madrid, Ed. Reus, 1950 T.X. page 894; J. Santamaría Ansa, *Comentario al Código Civil*, Madrid, Ed. Rev. Der. Privado, 1958, T. II Vol. 2, page 637, P. Gonzalez Poveda en I. Sierra Gil de la Cuesta, *Comentario del Codigo Civil*, Barcelona, Ed. Bosch 2000, T. IV page 620; M. Medina De Lemus, *Derecho Civil, obligaciones y contratos*, Madrid, Ed. Dilex, 2005, T. II, Vol. 2, page 145 (who emphasizes that this result entails something "complete and finished" regardless of the work or time it took to obtain it") Lete del Rio and Lete Achirica, op cit page 515, R. Hernandez Bobadilla, *El contrato de obra y su regulacion en la legislacion guatemalteca*, Guatemala, Ed U. San Carlos, 1966, page 17; Martinez Mas, op cit, page 18 (who emphasizes that it is a "determined result").

35 See: Judgment of May 10, 1997; Judgment of January 30, 1997, No. 845/1997 Repertorio de Jurisprudencia Aranzadi 1320; Judgment of November 4, 1989; Judgment of May 30, 19987; Judgment of November 6, 1982; Judgment of December 19, 1964, No. 5900/1964 Repertorio de Jurisprudencia Aranzadi 3600; Judgment of November 23, 1964, No. 5453/1964 Repertorio de Jurisprudencia Aranzadi 3294, where the concept of the result is connected to the end.

36 According to the Real Academia Española, the word result means "effect and consequence of a fact, operation or deliberation". Real Academia Española, *Diccionario de la Lengua Española*, 22nd ed. Madrid, Ed. Espasa Calpe, 2001, T. II page 1962.

37 *Master Concrete Corp. v. Fraya, SE*, supra, page 624, See also, Albaladejo, op cit. page 317.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.          17

CERTIFIED TRANSLATION

38 Puig Brutau, op cit., page 468 F Puig Pena, *Tratado de Derecho Civil Español*, Madrid, Ed. Rev. Der. Privado, 1951, T IV Vol. 2, page 302.

39 *Master Concrete Corp. v. Fraya, SE,* supra page 624, citing Albaladejo, Derecho Civil, op cit, page 49. Article 1491 of the Civil Code provides: "If there was no pact or custom to the contrary, the price of the work shall be paid upon delivery". (Emphasis provided). 31 LPRA sec 4132. As you can see, in the work contract the crucial moment of the subject matters of the obligation is the delivery and receiving of the work, not the moment when the work was performed.

40 Martinez Mas, op. cit., page 45: "The two fundamental obligations of the constructor are: the making of the work as agreed and its delivery". See also, Hernandez Bobadillo, op cit, page 17.

41 As Medina de Lemus explains: "The *first* obligation of the contractor is to make the work in the conditions that were agreed". (Emphasis provided) Medina de Lemus, op cit, page 146. See also: Albaladejo, op cit, page 317; Hernandez Bobadillo, op cit, page 17 ("The promise of the result consists *firstly* in an act of production or creation in the proper sense, namely,…in making a work". (Emphasis provided).

42 Gonzalez Poveda, op cit, page 666: "When the work is finished, the contractor is obligated to deliver it in the agreed way and within the term agreed". Medina de Lemus, op cit, page 149: "Evidently the work has to be delivered once it is done: Albaladejo, op cit, page 317; Manresa and Navarro, op cit, page 918, emphasizing the importance of the delivery; Santamaria, op cit, pages 636-637.

43 Judgment of April 18, 1979, No. 1406/1979 Repertorio de Jurisprudencia Aranzadi 1156, explaining that the obligation of the owner of paying the work is "in exchange of the subject matter of the obligation of the contractor to deliver the performed work". (Emphasis provided) Judgment of October 26, 1978, No. 3286/1978 Repertorio de Jurisprudencia Aranzadi, where the Spanish Supreme Court decided there is no duty to receive if the contractor did not meet "the obligation to deliver the work in the time and way agreed." Judgment of February 5, 1975, No. 330/1975 Repertorio de Jurisprudencia Aranzadi 252: "[The contractor] did not meet his obligation to deliver the work in the agreed term" (Emphasis provided.). See also, Judgment of January 30, 1997, No. 845/1997 Repertorio de Jurisprudencia Aranzadi; Judgment of June 1, 1982, No. 3401/1982 Repertorio de Jurisprudencia Aranzadi.

44 J. Castan Tobeñas, *Derecho Civil Español*, común y foral 9th ed., Madrid, Ed. Reus, 1961, T. IV, page 455.

45 Martínez Mas, op cit, page 50.

46 Id.

47 Id.

48 Lete del Rio and Lete Achirica, op cit, page 521.

49 Judgment of April 18, 1979, No. 1406/1979 Repertorio de Jurisprudencia Aranzadi 1156.

50 Puig Peña, op cit, page 299.

51 See Vélez Torres, op cit, page 325.

52 Puig Pena, op cit, page 299.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.        18

CERTIFIED TRANSLATION

53 Santamaria, op cit, page 637: "The greatest difference between the work (*locatio operis*) and the services (*locatio operarum*) is in its economic aspect, because the work contract the *time* is compensated and in the work it is the *result*."(Emphasis provided). Lete del Rio and Lete Achirica, op cit, page 515: "What characterizes this contract is that the *entrepreneur or contractor is obligated to provide not the work as such, but the result of it (the work),* without importance of the effort necessary to obtain it" (Emphasis provided). Moreover, the author states that, except particular cases where the personal characteristics of the contractor were the main factor in its selection, it is not necessary that the case has been performed by it, Castan Tobenas, op cit, page 454 "The true distinctive note of the enterprise contract, as we saw, is that what is promised and is its object is not the energy of work or the work as such (like it is with the services contract) but the work or the *result* of the work"(Emphasis in original) See, also, Albaladejo , op cit, page 309; Manresa and Navarro, op cit, page 923.

54 Judgment of the Spanish Supreme Court of June 10, 1975, No, 3265/1975 Repertorio de Jurisprudencia Aranzadi 2407. According to the Spanish Supreme Court, the difference between the services contract and the work contract:

"…is the immediate object of the obligation of the person, if he/she commits to the providing of services or work or of an activity in itself, not of the result, that such subject matter of the obligation produces, the contract is of services, if, on the other hand, he/she commits to providing a result, without importance to the work that creates it, it is a work contract. See also, Judgment of February 10, 1987, Repertorio de Jurisprudencia Aranzadi 703.

55 Puig Brutau, op cit, page 439.

56 Castan Tobeñas, op cit, page 455.

57 Puig Brutau, op cit, page 439 The doctrine has deepened in the differences but above all the similarities between the purchase and sale contract and the work contract. Many treatise writers emphasize the fact that the more importance is given to the materials used in the work and less importance to the work performed the rules of the purchase and sale contract shall apply, particularly when the material used belongs to the contractor himself. See M. Medina de Lemus, op cit, page 145. In these cases, many speak of a mixed contract of work and purchase and sale. See: Manresa and Navarro, op cit, page 914; Castan Tobeñas, op cit, pages 454-455; J. Santamaria, op cit, page 637. In particular, Castan Tobeñas, explains that certain sector of the doctrine is of the opinion "that the contract for which the worker provides the materials is, generally, a sale of a future thing, but shall be lease of industry if the materials are only accessory."(Emphasis provided) Castan Tobeñas, op cit, page 455. Velez Torres states that the differentiating line between the work contract and the purchase and sale contract is "very blurry". Vélez Torres, op cit, page 326.

58 Vélez Torres, op cit, page 327.

59 Id., page 332.

60 Arts. 1481-1482 of the Civil Code, 31 LPRA secs. 4122-4123.

61 One of these scenarios is when the owner desists from the work while it is being performed. In these cases, the owner must provide all its expenses, works and utility that it may obtain from the work. Art. 1486 of the Civil Code, 31 LPRA sec. 4127.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.          19

CERTIFIED TRANSLATION

62 Gonzalez Poveda, op cit, page 625. This idea arises from the maxim *res perit domino.* C. Gomez Estrada, *De los Principales Contratos Civiles*, 3rd ed, Bogota, Ed. Temis, 1999, page 322. It should be clarified, that in cases of works on real estate property of the principal party, the ownership of the contractor is limited to the work itself and not to the property over which it is done. On the other hand, if it is of movable properties created in their totality by the contractor, regardless of the ownership of the materials used, the ownership of the complete work shall be his/hers.

63 Martínez Mas, op cit, page 27. See also, Santamaria, op cit, pages 636-637, Castan Tobeñas, op cit, page 459, Hernandez Bobadilla, op cit, page 20.

64 Id. Also the defenses of *exceptio non adimpleti contractus* and *exceptio non rite adimpleti contractus* shall be available. See Puig Peña, op cit, page 308. The receipt of the work on the part of the owner requires that it is "well completed' Id. Page 303. See, also, Gonzalez Poveda, op cit, page 687. Judgment of the Spanish Supreme Court of April 18, 1979, Repertorio de Jurisprudencia Aranzadi 1406.

65 *Master Concrete Corp. v. Fraya, SE*, supra, pages 624-625.

66 In this case, the Court of First Instance would have to, after interpreting the contract and evaluating the intention of the parties, determine if the breach with the delivery of partial certifications constitutes a substantial breach of the contract and if, in effect, the work is was is specified in the contract. To that effect, see Martinez Mas, op cit, page 63, and his discussion on partial certifications. See also the judgment of the Spanish Supreme Court of July 22, 1997, No. 5806/1997 Repertorio de Jurisprudencia Aranzadi. Also it will have to determine if, effectively, the work is what is stated in the contract.

67 This does not remove any claim that the municipality may have as to if the compliance by the contractor is defective, incomplete or if deviated from what was agreed.  In this moment, we are limiting ourselves to analyze if there is a cause of action. The lower court must evaluate the merits in this case in particular.

68 We know the problems that can be generated in cases in which a contractor performs its work prior to its contract being put in writing. Without a doubt, the municipalities have an important interest to be able to regularly inspect the work while it is being performed, supervising that it is meeting the specifications of the contract and avoiding the illegal subcontracting of work among other matters. However, the protection of this interest does not require concluding, from the get-go and absolutely, that *there is no cause of action in favor of the contractor.* What is appropriate is to examine the case in its merits in a trial and determine how and when the work was carried out what were the intentions of the parties and what relationship is there between what was contracted and what was performed. Nothing above is to say that the contactor must prevails in the merits but merely that he has a right to a day in court to show that he delivered what was asked.