# Exhibit A

1      THE COURT: I thought you had a problem. Okay.
2 Fine.
3      So the representative of the cooperativas objectors.
4 Good morning, sir.
5      MR. LUGO MENDER: Good morning, Your Honor, court
6 staff and all people present. My name is Wigberto Lugo
7 Mender.
8      I appear here today before this Honorable Court in
9 the name of Cooperativa de Ahorro y Credito de Rincoln,
10 Cooperativa de Ahorro y Credito Zeno Gandia, Cooperativa de
11 Ahorro y Credito del Valenciano, and Cooperativa de Ahorro y
12 Credito de Juana Diaz.
13      These four entities are part of 115 community-based
14 nonprofit credit unions which serve over a million members and
15 depositories island wide.
16      As a result of an improper misuse of the government's
17 regulatory powers, resources of these credit unions were taken
18 by the Commonwealth and its instrumentalities, including
19 COFINA. In order to protect the interests of their members
20 and depositors, various credit unions filed an adversary
21 proceeding.
22      The record of this Honorable Court will show that on
23 May 22, the year 2018, several credit unions, including the
24 four appearing herein today, filed an adversary Complaint
25 which was docketed as Case Number 18-28. The parties named in

1  this Complaint are the Commonwealth of Puerto Rico,
2  Cooperativa Publica Para la Seguridad y Seguro de Cooperativas
3  de Puerto Rico, COSSEC, which is the regulatory branch within
4  the system, the Government Development Bank, and other
5  parties.
6  　　　　　Among others, and within the causes of actions,
7  claimants in this Complaint are, first, an exception to
8  discharge pursuant to the provisions of Section 11 U.S.C. 105,
9  declaratory judgment, and exception to discharge pursuant to
10 PROMESA provisions, provision of contract and warranties,
11 promissories to uphold, violations of security statutes,
12 violations of fault, negligence, violations of officious
13 manager statutes, fraud, misrepresentation and omission
14 statutes.
15 　　　　　Our objection in this case, Your Honor, seeks to
16 preserve our right to the judicial adjudication of the state
17 case, meaning the adversary proceeding --
18 　　　　　THE COURT:  Yes.
19 　　　　　MR. LUGO MENDER:  Furthermore, the protection of the
20 credit unions and of their members and depositories is aligned
21 with the policy of a Plan of Adjustment of a municipality,
22 which is the higher aim of ensuring the governmental function
23 of protecting and serving the municipality's citizens.
24 Failure to protect the credit unions and their members and
25 depositories, including those claims asserted under adversary

1 proceeding 18-28, defeats that purpose by affecting that same
2 constituency.
3 Based on that published by COSSEC, as of September
4 18, plaintiff of adversary 18-28 had 152,000 members and
5 approximately 25,000 nonmember depositors. The parties whom I
6 represent deem necessary that the Court limits those
7 provisions contained in the Plan of Adjustment, which appear
8 to release and discharge not only the claims, but also the
9 parties -- but also other parties which are under the
10 jurisdiction of this Honorable Court in active and still
11 pending litigation docketed under adversary 18-28.
12 This is detailed in the Motion for Objection, which
13 was filed under dockets 415 and 476. Absent a limitation on
14 the releases, exculpations, and discharge provisions, the
15 right to the judicial adjudication of unrenounced and
16 nonreleased claims and rights asserted in the adversary
17 proceeding may be severely effected unknowingly, in foundation
18 and in violation of the credit unions' principal rights.
19 As was done in Section 30-12 of the Plan, which
20 incorporated language preserving the rights of plaintiffs and
21 defendants under adversary proceeding number 18 -- under other
22 adversary -- inserting that type of language will avoid the
23 failure of injustice at probably no significant cost to
24 COFINA's organization process.
25 On the contrary, confirming the Plan of Adjustment

1 | with an intended release of the Commonwealth of Puerto Rico,
2 | the validity of which is dubious, will cause the most
3 | unwarranted set of circumstances that will result in a
4 | significant financial and economic harm to the Commonwealth of
5 | Puerto Rico -- to the public of Puerto Rico.
6 | We have suggested a language, Your Honor, which we
7 | believe may be inserted either in the Plan or in the Order of
8 | Confirmation, which simply reads as follows: Not withstanding
9 | anything contained in the Plan to the contrary, the rights,
10 | claims and defenses of all parties to adversary proceeding
11 | number 18-28 shall be unaffected until duly adjudicated by the
12 | Court.
13 | This language provides clarity as to the preservation
14 | of the rights to all parties to be active in pending
15 | litigation.
16 | That would be our proffer, Your Honor.
17 | THE COURT: Thank you.
18 | Now, Mr. Eisenberg, are you the first speaker?
19 | MR. EISENBERG: I am, Your Honor.
20 | THE COURT: Please come to the podium. So I'm
21 | allocating you 20 minutes.
22 | MR. EISENBERG: Thank you, Your Honor.
23 | Good morning, Your Honor. Gary Eisenberg, Perkins
24 | Coie on behalf of the GMS Group. And I want to start out by
25 | saying that I will do my best to heed the Court's admonition

1 submitted and the compliance with PROMESA and the provisions

2 of the Bankruptcy Code. And I will try to address some of the

3 individual points also at the end, if I have a few more

4 moments.

5 THE COURT: And I'll tell you now, I will be asking

6 you before you sit down to provide some further clarity as to

7 the scope of the releases and injunctions.

8 MR. ROSEN: Yes, Your Honor.

9 THE COURT: Particularly, their effect with respect

10 to potential actions against former government officials in

11 their private capacity, and others who were involved in the

12 marketing of the securities, transfers of assets.

13 MR. ROSEN: Absolutely, Your Honor.

14 THE COURT: Thank you.

15 MR. ROSEN: Your Honor, not to steal the Schoolhouse

16 Rock reference, but my theory is, what do we know. What do we

17 know so far? Your Honor, we have five declarations that were

18 provided in support of the approval of the compromise and

19 settlement and the confirmation of the Plan.

20 We've incorporated by reference the first, the

21 Jaresko 2019 Declaration. We have the Matt Feldman

22 Declaration as well, Your Honor, in support of the 9019 and

23 the compromise and settlement in the COFINA case. And then,

24 Your Honor, again, we have the Jaresko Declaration, the

25 Brownstein Declaration and the Pullo Declaration.

1 the findings of fact, a reference to compliance with 3019,
2 Bankruptcy Rule 3019, and that was because, Your Honor, there
3 was a slight modification to the Plan subsequent to the
4 conclusion of solicitation.
5 It provided no modification to any of the treatment
6 of creditors, other than a reference in Article 10, I believe
7 Section 10.1 of the Plan, but that provided no different
8 distribution, Your Honor, to creditors, because already
9 provided pursuant to the Plan was that creditors were
10 receiving in the Assured junior and Assured -- excuse me, the
11 COFINA junior Assured bonds, Assured class, 100 cents on the
12 dollar.
13 All it provided for, Your Honor, was a mechanism, and
14 then Assured to receive the bonds, and then the marketing of
15 the bonds that Assured received pursuant to an agreement
16 between the government and Assured.
17 Your Honor, you also asked with respect to the Plan
18 provisions regarding the release's exculpation and injunction
19 language. I would first like to go back to a comment that was
20 made earlier by counsel representing the Cooperativas who had
21 a concern about his litigation that's outstanding and the
22 releases that might otherwise be given.
23 We have discussed the issue between us, Your Honor,
24 and I pointed out that one of the defendants there is COFINA.
25 And, of course, COFINA, that claim would be treated as a

1 | Section 510(b) subordinated claim, and class ten, and receive
2 | no distribution pursuant to the Plan. And counsel agreed.
3 | And so it's not an issue with respect to COFINA being released
4 | from that litigation.
5 | We also discussed that the Commonwealth is a named
6 | defendant in that case. And we are not here, Your Honor, to
7 | provide a release for the Commonwealth, but I did note that
8 | it's the same claims and causes of action against the
9 | Commonwealth.
10 | And pursuant to that Plan of Adjustment, there was no
11 | doubt there would be a Section 510(b) subordinated claim.
12 | Similarly, we will probably receive no distribution pursuant
13 | to that Plan of Adjustment.
14 | So that left several parties who were named
15 | defendants. And I think this goes to the crux of the question
16 | that you were asking. Your Honor, we're not here to try to
17 | stop ongoing litigation by the cooperativas against any of
18 | those parties. And if you recall, Your Honor, at the
19 | disclosure statement hearing, you asked me to make sure that
20 | there was no coverage within those releases of underwriters,
21 | investment bankers, et cetera.
22 | I went back and I looked at the releasees, Your
23 | Honor. There were no underwriters listed, but there were
24 | investment bankers listed. So when we filed a Modified Plan,
25 | Your Honor, prior to the solicitation, I believe it was, or

1 | even the third amended one that got filed just before, Your
2 | Honor, we made sure that we deleted the reference to the
3 | investment bankers.
4 | THE COURT: But there is, I think, and I don't have
5 | it right in the front of me, a general reference to related
6 | parties of the Commonwealth and COFINA and employees, agents,
7 | so on and so forth.
8 | And I didn't remember seeing a definition that
9 | specifically cabined that reference, so as to make it
10 | absolutely clear that you didn't intend to reach others in the
11 | categories that I've just mentioned.
12 | MR. ROSEN: Your Honor, I do have that definition in
13 | front of me. It is 1.150 of the Third Amended Plan, entitled,
14 | Related Persons. There is a reference in there to
15 | professionals. But we'd be happy, Your Honor, to make sure we
16 | carve that other out, because it is not our intention to
17 | provide that at this time.
18 | And we can do that either of two ways, Your Honor.
19 | We can include it in the Proposed Confirmation Order, saying
20 | not withstanding the definition, these expressly are not to be
21 | included, rather than filing another Plan --
22 | THE COURT: That would be helpful. And what about
23 | the former official issue?
24 | MR. ROSEN: There are references in there, Your
25 | Honor, to former employees or managers. And is it the Court's

1 | request that we also exclude those as well?
2 | THE COURT: Well, my first question was whether you
3 | intended that to mean former government decision makers who
4 | were involved with these and --
5 | MR. ROSEN: Based upon the terms of the definition,
6 | Your Honor, it would be included. It was a request of the
7 | governmental parties in the context of the negotiation of the
8 | Plan. I obviously could address that issue with them.
9 | THE COURT: If there's some consideration being put
10 | into all of this by some of those people, perhaps I might be
11 | able to be persuaded that that's appropriate --
12 | MR. ROSEN: Absolutely, Your Honor.
13 | THE COURT: -- but I don't see that right now.
14 | MR. ROSEN: I understand, Your Honor.
15 | Mr. Friedman is concerned that there -- to the extent
16 | that they are carved out, which we would understand the
17 | Court's position, there would be resulting claims back against
18 | the Commonwealth, probably indemnification claims of some
19 | sort.
20 | I don't know where they would fall in the spectrum of
21 | claims against the Commonwealth estate at this time. Probably
22 | general unsecured claims, Your Honor. I don't know if they
23 | would be Section 510(b) subordinated claims, because I don't
24 | know what the claims would be against them, and then the
25 | parallel back again against the Commonwealth. But --

| | |
|---|---|
| 1 | THE COURT: So -- |
| 2 | MR. DESPINS: May I confer with Mr. Rosen one second? |
| 3 | THE COURT: Yes. |
| 4 | MR. ROSEN: Mr. Friedman is concerned about people |
| 5 | who were working during the Title III process, Your Honor. |
| 6 | And we believe that to the extent they were providing services |
| 7 | during the Title III, they would be covered by the exculpation |
| 8 | provisions of the Plan in providing services to COFINA, or to |
| 9 | the Commonwealth in connection with respect to COFINA, Your |
| 10 | Honor, because everything is linked solely to the actions with |
| 11 | respect to COFINA. |
| 12 | Mr. Despins is concerned about some claims that might |
| 13 | be lodged, and to the extent that they are lodged, he's |
| 14 | essentially asking for the judgment reduction provisions. So |
| 15 | that is a claim, there couldn't be more of a recovery, or an |
| 16 | assessment against one than recovery -- |
| 17 | THE COURT: Well, rather than doing this on the |
| 18 | fly -- |
| 19 | MR. ROSEN: Yes. |
| 20 | THE COURT: -- may I request a supplemental |
| 21 | submission and proposal on the issue, and just add into this |
| 22 | mix as to indemnification. I don't know whether there are |
| 23 | individual employment contracts or whatever, but in the flood |
| 24 | of the lift stay litigation that I've seen involving Section |
| 25 | 1983 claims, I understand that there is a statute that lets -- |

1  that gives the Commonwealth discretion as to whether to
2  indemnify voluntarily, but doesn't mandate it or make it
3  automatic.
4              MR. ROSEN:  Right, Your Honor.  Your Honor, I see
5  that I'm well past my time.
6              THE COURT:  Keep going.
7              MR. ROSEN:  Okay.  Thank you, Your Honor.  I
8  appreciate that very much.
9              Your Honor, one of the comments that was made, and I
10 know Mr. Friedman said it, but -- or responded to it, the
11 statement by Mr. Hein I think is just a misapplication of
12 PROMESA and what it says.  The best interest test is not with
13 respect to a single class.
14             And we have reserved that right or that argument in
15 connection with the brief that we filed.  We noted it, Your
16 Honor.  And that it's the best interest of creditors taken as
17 a whole.
18             And we looked at what would happen here on the COFINA
19 side if, in fact, that litigation -- what would the recovery
20 be.  And we believe the compromise and settlement, Your Honor,
21 sufficiently establishes that the best interest test for all
22 the creditors of COFINA has been satisfied.
23             There were some comments made by Mr. Eisenberg, and
24 specifically his argument that if the bondholders' lien is
25 defective, then the seniors and juniors would be equal.  But