# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 5160**

(Jointly Administered)

-----------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO

     Debtor.

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

-----------------------------------------------------------x

# OBJECTION OF THE COMMONWEALTH TO URGENT MOTION
## FOR RELIEF FROM STAY TO CONTINUE EMPLOYMENT
### <u>DISCRIMINATION CASE FILED BY ANTONIO COSME CALDERÓN</u>

---

[1]  The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................... 1

OBJECTION ............................................................................................................... 3

    I.    MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO
          LIFT THE STAY ............................................................................................. 3

    II.   THE MERITS OF MOVANT'S PREPETITION ACTION IS
          IRRELEVANT TO THE STAY RELIEF ANALYSIS .................................... 15

CONCLUSION ......................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Besosa-Noceda, et al v. Capo-Rivera, et al.*,
Case No. 16-2117 (1st Cir. Jan. 23, 2018) (Doc. No. 117246419) ...................................12

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
217 F. Supp. 3d 508, 518 (D.P.R. 2016) ........................................................................6,10

*C &A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
369 B.R. 87, 94-95 (D.P.R. 2007) ...........................................................................................6

*Cano-Rodriguez v. De Jesus-Cardona, et al.*,
Case No. 16-1532 (1st Cir. Nov. 27, 2017) (Doc. No. 117225999) ...................................1

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ........................................................................12

*FCC v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293, 302 (2003) ............................................................................................................8

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. Of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) .................................................................6

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006 ......................................11

*Hafer v. Melo*,
502 U.S. 21, 25 (1991) ...........................................................................................................11

*In re 234-6 West 22nd St. Corp.*,
214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997) ........................................................................5

*In re Aquarious Disk Servs. Inc.*,
254 B.R. 253, 260 (Bankr. N.D. Cal. 2000) ......................................................................14

*In re Breitburn Energy Partners LP*,
No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017) ......................6

*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11,
2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ............................................8

*In re City of Stockton*,
484 B.R. 372, 375 (Bankr. E.D. Cal. 2012) ........................................................................9

*In re Cummings*,
221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ........................................................................7

*In re Gatke Corp.*,
117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) ......................................................................10

## TABLE OF AUTHORITIES

(continued)

**Page(s)**

*In re Jefferson Cnty.*,
  491 B.R. 277, 285 (Bankr. N.D. Ala. 2013)) ........................................................4

*In re Motors Liquidation Co.*,
  No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) ..............................13

*In re Murrin*,
  477 B.R. 99, 109 (D. Minn. 2012) .........................................................................7

*In re Northwest Airlines Corp.*, No. 05-17930 (ALG),
  2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ..............................10

*In re Plumberex Specialty Prod., Inc.*,
  311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) ................................................13

*In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586,
  at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ....................................................9,11,14

*In re Taub*,
  413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) ............................................................7

*In re Unanue-Casal*,
  159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).......................5,6,15

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
  362 B.R. 49, 56 (B.A.P. 1st Cir. 2007 ................................................................4

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
  474 U.S. 494, 503 (1986) ......................................................................................4

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
  537 B.R. 128, 140 (Bankr. D.P.R. 2015 ..............................................................4

*Peaje Invs. LLC v. Garcia-Padilla*,
  2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ..........................6

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
  980 F.2d 110, 117 (2d Cir. 1992) ..........................................................................8

*Soares v. Brockton Credit Union (In re Soares)*
  107 F. 3d 969, 975 (1st Cir, 1997) .......................................................................4

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
  907 F.2d 1280, 1286 (2d Cir. 1990).....................................................3, 5-7, 10-16

*Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 4
  18 B.R. 116 (Bankr. D. Del. 2009) ....................................................................15

*Unisys Corp. v. Dataware Prods., Inc.*,
  848 F.2d 311, 313 (1st Cir. 1988) ........................................................................4

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

11 USC § 362(a) ...........................................................................................................3

11 U.S.C. § 362 (d)(1) ..................................................................................................5

11 U.S.C. § 922 ...........................................................................................................9

PROMESA § 301(a) ...........................................................................................1,3-5,12

PROMESA § 315(b) .......................................................................................................1

42 U.S.C. §12101 .........................................................................................................1

48 U.S.C. § 2101 ...........................................................................................................8

Law No. 104 of June 29, 1955, as amended,
   P.R. Laws Ann. tit. 32, § 30851, et seq ..................................................................12

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595 (1977)......................................................................................4,8

*Regulation Regarding Legal Representation and Payment of Judgment*,
Regulation No. 8405 of 2013 ......................................................................................12

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Urgent Motion for Relief From Stay to Continue Employment Discrimination Case* [ECF No. 5160] (the "Motion") filed by Antonio Cosme-Calderón ("Movant"), plaintiff in the case captioned *Cosme-Calderon v. Cuerpo de Emergencias Medicas del E.L.A. de Puerto Rico et al.,* Case No. 3:16-cv-02516-GAG (the "Prepetition Action"), pending before the United States District Court for the District of Puerto Rico (the "District Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1.    On August 22, 2016, Movant commenced the Prepetition Action against the Commonwealth, Cuerpo de Emergencias Médicas ("CEM"),[3] the Puerto Rico Health Department ("PRHD"),[4] and Martha D'Plana Collazo, in her official capacity as Regional Supervisor for CEM ("Ms. D'Plana" and together with the Commonwealth and PRHD, the "Defendants" ), for events that allegedly occurred before the commencement of the Commonwealth's Title III case on May 3, 2017. Movant seeks, among other things, damages pursuant to the *American with Disabilities Act* ("ADA")[5] for alleged employment discrimination and retaliation. Specifically, Movant seeks "back pay, all loss benefits, front pay and other equitable relief," "compensatory

---

[2]   The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3]   CEM is an entity within the Puerto Rico Health Department.

[4]   The PRHD is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

[5]   42 U.S.C. §12101 *et. seq.*

and general damages in the amount of $1,000,000.00," and costs, expenses, attorney's fees, and prejudgment interest.[6]

2.      On February 16, 2017, the Commonwealth filed in the Prepetition Action a *Motion to Dismiss Pursuant to Federal Civil Procedure 12(b)(6)* (the "Motion to Dismiss").  On June 28, 2017, the District Court denied the Motion to Dismiss in part because the Commonwealth's arguments were not appropriate at such early stage.   Order,  *Cosme-Calderon v. Cuerpo de Emergencias Medicas del E.L.A. de Puerto Rico et al.,* Case No. 3:16-cv-02516-GAG (D.P.R. Aug. 22, 2016) [ECF No. 12] ("Defendants remedies argument is inappropriate at this early stage. . . . Once the facts are gathered, the strength of Plaintiff's case may be tested at summary judgment.").

3.      On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") issued a restructuring certification pursuant to PROMESA sections 104(j) and 206, and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof.

4.      On June 29, 2017, the Commonwealth filed in the Prepetition Action a *Notice of Automatic Stay of Proceedings Pursuant to Commencement of Case Under Title III of PROMESA* requesting the District Court to take notice of the automatic stay under the Commonwealth's Title III Case applicable to the Prepetition Action.[7]   On July 6, 2017, the District Court entered an order staying the Prepetition Action [ECF No. 15 in the Prepetition Action].   At that time, discovery had not commenced in the Prepetition Action.

---

[6]   Motion, Exhibit at 2; Complaint, *Cosme-Calderon v. Cuerpo de Emergencias Medicas del E.L.A. de Puerto Rico et al.,* Case No. 3:16-cv-02516-GAG, at 11 (D.P.R. Aug. 22, 2016) [ECF No. 1].

[7]   The Commonwealth subsequently filed an *Informative Motion Regarding Notice, Case Management and Administrative Procedures* [ECF No. 17 of the Lawsuit].

2

5.     On February 19, 2019, Movant filed the Motion seeking to lift the automatic stay to proceed with the Prepetition Action.

6.     As further explained below, the Motion should be denied as Movant has failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code").   As a potential, prepetition, unsecured litigation claimant, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his claims should not be resolved through the claims resolution process to be undertaken in the Commonwealth's Title III Case.   The Prepetition Action is not ready for trial as discovery has not commenced when the Prepetition Action was stayed pursuant to the automatic stay.   Accordingly, the evidentiary process, pretrial hearing, the preparation and filing of the pretrial report, and all other ensuing hearings and filings remain to be completed before the Prepetition Action is ready for trial.   Considering the procedural stage of the Prepetition Action, the majority of the *Sonnax* factors weigh in favor of maintaining the automatic stay and denying the Motion.

## OBJECTION

## I.     MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO LIFT THE STAY

7.     Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this

Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543].

8.      "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the

4

automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

9.      An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 USC § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1)    whether relief would result in complete or partial resolution of the issues;

(2)    the lack of any connection with or interference with the bankruptcy case;

(3)    whether the foreign proceeding involves the debtor as fiduciary;

(4)    whether a specialized tribunal has been established to hear the cause of action at issue;

(5)    whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)    whether the action essentially involves third parties rather than the debtor;

(7)    whether the litigation could prejudice the interest of other creditors;

(8)    whether a judgment in the foreign action is subject to equitable subordination;

(9)    whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)   the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)   whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

10.     Courts in the First Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. Of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in <u>Sonnax</u> and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

11.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).  Here, the *Sonnax* factors point squarely toward maintaining the automatic stay and against granting the relief requested in the Motion.

12.     **<u>Sonnax</u> Factor 1:** The first *Sonnax* factor, "whether relief will result in a partial or complete resolution of the issues," weighs against lifting the automatic stay. The first *Sonnax*

factor does not focus on the issues in the stayed litigation. If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding. Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

13.    Here, Movant has not attempted to show whether the first *Sonnax* factor weighs in favor of granting the Motion.  Indeed, as Movant concedes,[8] that is because lifting the automatic stay would not resolve any issues relevant to the Commonwealth's Title III case.[9] Movant's claims, if any, can be resolved through the claims resolution process to be undertaken in the Title III cases. Therefore, the first *Sonnax* factor supports denying the Motion.

14.    ***Sonnax* Factor 2**: The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support lifting or modifying the stay. First, lifting or modifying the stay to allow the resolution of Movant's claim in a separate proceeding and forum would interfere with the centralized claims resolution process contemplated under Title III. Contrary to Movant's assertions, the claims adjustment process under Title III applies

---

[8]    Motion ¶¶ 3, 8 ("[Movant's] civil action will have very little or no effect on this bankruptcy. . . . [T]he adjudication of Movant's Discrimination claim in *this case* is NOT necessary in the bankruptcy process for effective reorganization of the Commonwealth . . . ." (emphasis in original)).

[9]    For the avoidance of doubt, the Commonwealth and the Oversight Board reserve all rights and defenses relating to Movant's claims, including, without limitation, any rights to challenge any set-offs or to assert any set-offs and to impair and discharge Movant's claims.

with respect to all debts, claims, and liens asserted against the Commonwealth (as such terms are defined in Bankruptcy Code section 101). *See* 48 USC § 2101. The definition of "claim" in the Bankruptcy Code "contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy case … [and] permits the broadest possible relief in the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave Pers. Commc'ns Inc.*, 537 US 293, 302 (2003) .

15.     As a potential, prepetition, unsecured creditor of the Commonwealth, Movant's claims are subject to the claim resolution process that will be undertaken in the Title III Case. Indeed, Movant seeks in his complaint "compensatory and general damages in the amount of $1,000,000.00."[10]     Thus, requiring the Commonwealth to defend Movant's claims separately would undermine that process and upend the "strong bankruptcy code policy that favors centralized and efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.),* 980 F.2d 110, 117 (2d Cir. 1992) (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009)  ("[T]he effect of lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

16.     Second, lifting or modifying the stay to proceed with the Prepetition Action will interfere with the Title III case by diverting the Commonwealth's attention and resources to

---

[10]  Complaint, *Cosme-Calderon v. Cuerpo de Emergencias Medicas del E.L.A. de Puerto Rico et al.,* Case No. 3:16-cv-02516-GAG,  at 11 (D.P.R.  Aug. 22, 2016).

defending Movant's claims in another forum and will encourage other creditors to seek similar relief. Should every plaintiff with an asserted prepetition claim be given *carte blanche* to litigate their claims, the combined result would have a substantial and negative impact on the Commonwealth's fiscal plan and budget. This would impede the restructuring process, and should be avoided. *See, e.g., In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases.").

17.    In this regard, *In re City of Stockton* is instructive. There, the plaintiff brought a wrongful termination suit against the City Manager and Deputy City Manager of the City of Stockton, which was then in bankruptcy. *Id.* at 374. The case was stayed under 11 U.S.C. § 922. 484 B.R. at 374. The plaintiff then moved to lift the stay and argued that allowing the suit to go forward would not interfere with the Chapter 9 case. *Id.* at 378. The court disagreed, holding that the plaintiff's suit "necessarily would consume the time and attention of those two officers during the period in which there is intense focus on the basic substantive issues in this chapter 9 case." *Id.* "It is apparent to the court that their undivided time and attention will continue to be required at least for a number of months." *Id.*

18.    Here, there are processes pending that are necessary for the Prepetition Action to move forward, such as responding to the complaint, conducting discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.

19.     Thus, *Sonnax* factor 2 weighs in favor of denying the Motion, and Movant's conclusory statement that "[l]itigation of Movant's employment discrimination claim in the district court will not tie up significant estate assets that may be used to satisfy creditors' claims, nor interfere with distribution of assets," Motion ¶ 6, fails to satisfy Movant's heavy burden to establish cause. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that movant bears the burden of establishing cause); *see also In re Gatke Corp.,* 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow state court suit to proceed against debtor, even though stay of litigation would cause hardship to defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930 (ALG), 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006)  ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure … interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

20.     ***Sonnax* Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. No specialized tribunal has been established to hear the Prepetition Action, which is pending before the District Court. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

21.     ***Sonnax* Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Commonwealth has assumed full financial responsibility for

10

defending the Prepetition Action, and Movant does not allege any facts to the contrary. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

22.    **_Sonnax Factor 6_**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the Prepetition Action primarily involves third parties *rather than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006)   ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

23.    Here, the Prepetition Action does not involve third parties at all: the Commonwealth, CEM, PRHD, and Ms. D'Plana are the only defendants in the Prepetition Action.   Ms. D'Plana is sued only in her official capacity as Regional Supervisor for CEM.   This Court has expressly confirmed that the automatic stay under Bankruptcy Code sections 362(a) and 922(a) applies to suits against the Commonwealth's officials in their official capacities:

> An official-capacity suit against a Commonwealth official is functionally a suit against the Commonwealth. *See Hafer v. Melo*, 502 U.S. 21, 25 (1991). Moreover, as this Court has previously explained, the Commonwealth has assumed the legal defense and the responsibility for any monetary judgments against the Defendants in the Lawsuit. As a result, the Lawsuit is subject to the automatic stay pursuant to Section 362(a)(1) and (a)(3) of the Bankruptcy Code, as the Movants seek the continuation of a judicial action against the Debtor that was commenced pre-petition and are attempting to obtain or control property of the Debtor through a judgment against the defendants providing equitable relief and damages, responsibility for payment of which lies with the Commonwealth.

*See Order on Motion for Reconsideration Filed by Beatriz Nieves-López, et al.*, at 3 [ECF No. 2723]; *cf. Memorandum Order Denying Alvin Marrero-Méndez's Motion for Relief from Stay* [ECF No. 952], at 2–3 [ECF No. 1234] (noting that the court in the prepetition action had determined that the Title III Stay applies to the prepetition action against three police officers); *see also Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365, and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543 ¶¶ 2-6].[11]   Pursuant to Act No. 104 of June 29, 1955, as amended, P.R. Laws Ann. tit. 32, § 30851 et seq. and the *Regulation Regarding Legal Representation and Payment of Judgment*, Regulation No. 8405 of 2013, Movant will litigate against Commonwealth lawyers, negotiate settlements with Commonwealth lawyers, and if he prevails, secure payment from the Commonwealth of any judgment against the officer in any capacity.

24.   Accordingly, the Prepetition Action cannot be characterized as primarily involving third parties and *Sonnax* factor 6 weighs in favor of denying the Motion. *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

25.   **_Sonnax Factor 7_**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion. The Commonwealth would have to expend considerable time and expense to litigate the Prepetition

---

[11]   The U.S. Court of Appeals for the First Circuit has also stayed pending appeals in connection with official-capacity suits, suggesting the First Circuit's stance that the Title III Stay applies to cases where Commonwealth officials are sued in both their official and personal capacities. *See Order of Court*, *Cano-Rodriguez v. De Jesus-Cardona, et al.*, Case No. 16-1532 (1st Cir. Nov. 27, 2017) (Doc. No. 117225999) (staying appeal in case against the Commonwealth and a Commonwealth official); *Order of Court, Besosa-Noceda, et al v. Capo-Rivera, et al.*, Case No. 16-2117 (1st Cir. Jan. 23, 2018) (Doc. No. 117246419) (staying appeal of case against a Commonwealth official).

Action by responding to the complaint, conducting and finalizing discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004)   (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010)   (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"). Here, the depletion of the Commonwealth's resources to defend against the Prepetition Action and the diversion of the Commonwealth's attention to proceed expeditiously through its Title III case would inure to the detriment of the Commonwealth's other creditors. Accordingly, *Sonnax* factor 7 does not support granting the Motion.

26.     **_Sonnax_ Factors 10 and 11:** The interests of judicial economy and the status of the Prepetition Action also weigh against stay relief.  As discussed above, the Prepetition Action is still at a preliminary stage. There are processes pending that are necessary for the Prepetition Action to move forward, such as responding to the complaint, conducting and finalizing discovery, attending the pretrial hearing, the preparation and filing of the pretrial report, and the ensuing trial, all of which will require the Commonwealth to expend considerable time and expense.

27.     As such, the parties are not ready for trial in the Prepetition Action and granting the Motion will neither promote judicial economy nor result in the timely resolution of the

13

issues.[12] Thus, *Sonnax* factors 10 and 11 weigh in favor of denying the Motion. *See In re Sonnax Indus., Inc.,* 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); *In re Residential Capital, LLC*, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

28.   ***Sonnax* Factor 12:** Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place. The procedural status of the Prepetition Action, the large number of pending lawsuits against the Debtors, the diversion of the Commonwealth's resources to defend Movant's claims, and the prejudice to the interests of other similarly situated creditors all weigh in favor of continuing the automatic stay at this early juncture of the Title III case. Expedition of the claims will not save the Commonwealth any time or money. Rather, it will force the Commonwealth to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

29.   On the other hand, postponing liquidation of Movant's claims is a hardship that is shared with other creditors in order for the Commonwealth to focus on its restructuring and recovery efforts for the benefit of all creditors and would promote judicial economy. Any claim

---

[12]   Movant's reliance on *In re Aquarious Disk Servs. Inc.*, 254 B.R. 253, 260 (Bankr. N.D. Cal. 2000), is misplaced. The prepetition action in *Aquarious* involved state law causes of action where movant had already obtained an ex parte prejudgment writ of attachment on the debtor's assets prior to the commencement of the debtor's chapter 7 case. Furthermore, the bankruptcy court only granted limited stay relief to allow movants to liquidate, but not enforce, their claim in the pending state court action. *Id.* at 261.

Movant may have will be dealt with during the plan of adjustment process, as with any other creditor's claims.  Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[13]

## II.     THE MERITS OF MOVANT'S PREPETITION ACTION IS IRRELEVANT TO THE STAY RELIEF ANALYSIS

30.     Movant argues that the automatic stay should be lifted because his claim survived a dispositive motion.  Motion ¶¶ 7-8.  The merits of a claim, however, are irrelevant to the question of stay relief.  The two decisions Movant cites in support of his argument are distinguishable.  Movant cites *In re Unanue-Casal*, 159 B.R. 90, 95-96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994), noting that the court "relied on two additional factors; namely, the misconduct of the debtor and whether the creditor has a probability of prevailing on the merits." Motion ¶ 5. However, a careful reading of the decision in *Unanue-Casal* reveals that the court only referenced the probability of prevailing on the merits as it surveyed the various factors courts have considered in determining cause to lift the automatic stay. *Unanue-Casal*, 159 B.R. at 95-96. The court, however, did not rely on the merits of the underlying claim in determining whether to lift the automatic stay. *Id.* at 95-102.

31.     Movant also cites *Tribune Media Servs. v. Beatty (In re Tribune Co.)*, 418 B.R. 116 (Bankr. D. Del. 2009), for the proposition, "Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case." *Id.* at 129 (citation omitted). However, *Tribune* indicates a likelihood of success can be found where the movant had previously *offered into evidence* documentation supporting its claim. *Id.* ("[Movant] introduced into evidence a Declaration detailing specific dates, potential witnesses, and other facts to support his position . . . and a copy of an agreement . . . . This is sufficient, under the

---

[13]  The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

circumstances, to support a slight showing of the probability of success on the merits."). Here, however, the Prepetition Action is in the preliminary stages—the Defendants have not yet answered Movant's complaint.

32.     Furthermore, the decision in *Tribune* is limited to the specific circumstances of the case, as it notes in various instances. *Id.* ("Even a slight probability of success on the merits may be sufficient to support lifting an automatic stay in an appropriate case. . . . . This is sufficient, under the circumstances, to support a slight showing of the probability of success on the merits." (emphasis added)). In *Tribune*, the debtors filed an adversary proceeding to obtain determinations on the same issues raised in the litigation movant sought to lift the stay to pursue. *Id.* at 127. The court found that movant would suffer hardship if the stay were not lifted and the issues litigated in an adversary proceeding, including prejudice to movant's ability to call non-party witnesses at trial. *Id.* at 128. The debtors, on the other hand, would not suffer hardship if the stay were lifted and issues litigated in a separate forum. *Id.* at 129. Thus, the *Tribune* analysis focused on the balance of the harms, which is a *Sonnax* factor, rather than the underlying merits, which is not. Here, as shown above under the *Sonnax* analysis, the Commonwealth would suffer substantial hardship if the automatic stay were lifted.

## CONCLUSION

33.     Movant has failed to establish cause to justify lifting the automatic stay in the Commonwealth's Title III case to allow the Prepetition Action to proceed. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: March 5, 2019.
       San Juan, Puerto Rico

                                        Respectfully submitted,

                                        **WANDA VÁZQUEZ GARCED**
                                        Secretary of Justice

16

**WANDYMAR BURGOS VARGAS**
Deputy Secretary in Charge of
Litigation
Department of Justice

**SUSANA PEÑAGARÍCANO BROWN**
Director of Federal Litigation
and Bankruptcy Division

**S/VALERIE CONCEPCIÓN CINTRÓN**
**Valerie Concepción Cintrón**
USDC NO. 303002
Puerto Rico Department of Justice
Federal Litigation Division
PO Box 9020192
San Juan, PR, 00902-0192
Tel. (787) 459-2799
vconcepcion@justicia.pr.gov
*Counsel for Defendants*