# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re | ) PROMESA<br>) Title III<br>) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | ) No. 17 BK 3283-LTS<br>)<br>) (Jointly Administered)<br>) |
| As a representative of | ) Re: ECF Nos. 2868, 2870, 2872, 2876,<br>) 2874, 3568, 3575, 3578, 3579, 3581,<br>4336, 4324, 4393, 4262, 4306, 4309,<br>4311, 4317, 4333, [Dkt. No. 17-04780,<br>1032], [Dkt. No. 17-03567, 533], 4497,<br>4260, 4326, 4325, 4329, 4323, 4321,<br>4267, 4271, 4320, 4269, 4272, 4274,<br>4261, 4268, 4300, 4368 |
| THE COMMONWEALTH OF PUERTO RICO<br>*et al.*,<br><br>Debtors.[1] | ) Hearing date: March 13, 2019 at 9:30 a.m.<br>) (Atlantic Standard Time)<br>) Objections filed: none<br>)<br>) |

## FEE EXAMINER'S FOURTH INTERIM REPORT ON PRESUMPTIVE STANDARDS MOTION AND ON PROFESSIONAL FEES AND EXPENSES (JUNE 1, 2018-SEPTEMBER 30, 2018)

**I.  RE-SUBMISSION OF PROPOSED ORDER IMPOSING ADDITIONAL PRESUMPTIVE STANDARDS: RATE INCREASES AND THE RETENTION OF EXPERT WITNESSES OR OTHER SUB-RETAINED PROFESSIONALS**

**II.  SUMMARY OF UNCONTESTED FEE APPLICATIONS FOR THE FOURTH INTERIM AND PRIOR COMPENSATION PERIODS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

III.    **NOTICE OF DEFERRAL OF SPECIFIC THIRD AND FOURTH
APPLICATIONS FOR CONSIDERATION AT THE APRIL 24, 2019
OMNIBUS HEARING OR AT A LATER DATE**

TO:    HON. LAURA TAYLOR SWAIN,
UNITED STATES DISTRICT JUDGE

## INTRODUCTION

In the last 30 days, these proceedings have seen the COFINA plan's confirmation

restructuring $17 billion in obligations, a comprehensive report on consulting firm disclosures,

and several decisions from the U.S. Court of Appeals.  This fee review report (the "**Report**")

does not fully reflect those signal developments, but it does reflect—for four months of last

year—a decrease in professional fees and a proposed resolution, through negotiation, of the

trailing applications of several principal professionals. Compared with the third interim period,

fees and expenses subject to review have decreased from approximately $83 million in that third

period to about $71 million in the fourth through September 30, 2018.

## SUMMARY OF RECOMMENDATIONS

With this report, the Fee Examiner:

>   --Re-submits the proposed *Order Imposing Additional Presumptive
>   Standards: Rate Increases and the Retention of Expert Witnesses
>   or Other Sub-Retained Professionals* in the revised form attached
>   as **Exhibit C**;[2]
>
>   --Recommends Court approval of the interim fee applications
>   detailed on **Exhibit A**; and
>
>   --Notifies the Court, consistent with paragraphs 2.h and 2.k of the
>   *Second Amended Order Setting Procedures for Interim
>   Compensation and Reimbursement of Expenses of Professionals*
>   [Dkt. No. 3269] (the "Interim Compensation Order"), that the Fee
>   Examiner and the applicants listed on **Exhibit B** are in productive

---

[2] A redline of the order, comparing the proposed order submitted on December 12, 2018 [Dkt. No. 4453] and considered by the Court at the December 19, 2018 omnibus hearing [Dkt. No. 4516] with the proposed order submitted with this Report, is attached as **Exhibit D.**

discussions and—to continue their dialogue—have agreed to adjourn their consideration to the April 24, 2019 omnibus hearing or another date convenient for the Court.

**PRESUMPTIVE STANDARDS MOTION: RATE INCREASES**

At the December 19, 2018 hearing, the Court denied without prejudice the *Fee Examiner's Motion to Impose Additional Presumptive Standards:  Rate Increases and the Retention of Expert Witnesses or Other Sub-Retained Professionals* (the "**Motion**") [Dkt. 4370], explicitly inviting the resubmission of a proposed order after additional analysis and discussion with the professionals.[3]  The Fee Examiner and counsel have done that over the last several months, conferring extensively with professionals and expanding the universe of available economic data underlying the Motion's recommendations.  The new proposed Order, attached to this Report as **Exhibit C** (the "Revised Proposed Order"), reflects that process and incorporates additional professional comments on a revised proposed draft circulated widely within the last few weeks.

While the Revised Proposed Order contains significant changes from that considered by the Court at the end of last year, it does not change the Motion's core quantitative standards:  a five-percent-a-year presumptive limit on rate increases for partners/shareholders and a seven-percent-a-year presumptive limit on "step" or seniority increases for associates.  Those quantitative standards, as these proceedings continue to lengthen and grow even more complex, remain necessary and, on additional reflection, they remain reasonable as presumptive standards—subject, as always, to the Fee Examiner's discretion in applying them and the Court's discretion in approving compensation.

---

[3] "[I]t is my intention to impose on you, and impose on everyone, to have another round of discussions…." December 19, 2018 Tr. at 11.

3

Through the fourth interim period, the professional firms subject to PROMESA's fee review process have requested more than $306 million in interim compensation, at least $5.9 million of the total attributable solely to rate increases.[4]  That is the amount requested to date that, with or without specific client and Court approval, is the direct result of increases in the hourly rates charged (discounted or not) at the outset of each professional's engagement.  The fees themselves and the rate adjustments embedded within them are subject to the "reasonable and necessary" standard mandated by PROMESA and, as such, they require Court approval.

The Court has scheduled omnibus hearings through June 2020.  The longer these proceedings, the greater the impact of rate increases on the total cost to the Commonwealth.  The Motion's goal—as filed on November 27, 2018 and, now, as renewed—is to provide professionals with a presumptive standard against which to gauge and temper proposed increases for 2019 and beyond.  This standard will advance the cause of transparency mandated by PROMESA in general and by this Court in particular.  The mandate for transparency applies equally to the proposed retention by professionals of other professional firms, whether consultants or experts, which the Motion also addresses.  That subject remains before the Court in the Revised Proposed Order along with a reminder of the important role of Puerto Rico-based professionals here, noted by the Court on December 19, 2018.  Tr. at pp. 25-26.

The diversity of size, structure, and expertise of the professionals engaged makes it difficult to develop a rate increase standard of universal applicability.  The internal decisions that law, financial, and consulting firms reach on their rates—usually once a year but, at times, even more often—are inherently subjective, though informed by profession-wide and publicly

---

[4] Through the third interim period (February through May 2018), the collective and cumulative rate increases totaled almost $4 million.

available data and by competitive factors, both internal and external.  Yet the difficulty of

establishing an appropriate standard is outweighed by the necessity of managing the exponential

impact of uncontrolled rate increases on the cost of these proceedings.

The Motion presented to the Court late last year relied in part on the latest publicly

available economic data.  Lexis-Nexis, for example, had estimated the 2017 year-over-year

growth in hourly rates for partners at New York law firms at 5.7 percent.  Motion ¶ 18.  Since

then, 2018 data have become available, and several of the professionals here have shared

proprietary data that also inform the analysis.

Late last year, Citi Private Bank's Law Firm Group published an economic report based

on a survey of 190 law firms, including 75 of the biggest 100 firms and groups of mid-size and

boutique firms.  Greta Rusanow et al., Citi Private Bank & Hildebrandt Consulting, *2019 Client

Advisory*.[5]  While emphasizing that the legal profession overall saw its "strongest results" in

more than a decade, the report also summarized the corollary yet disproportionate 2018 growth

in expenses:  "[T]he pace of growth [in 2018 expenses] increased for the second consecutive

year, up 6.1 percent, compared to 4.5 percent in 2017 and 3.4 percent in 2016."  John Wilmouth

& Greta Rusanow, *Inside Law Firms' Best Results in a Decade*, Am. Law., Feb. 10, 2019.[6]  The

2018 expense increase was "the highest in at least 10 years," *id*., driven by an increase in the

number and compensation of salaried professionals as well as increased technology and other

---

[5]*See* https://www.privatebank.citibank.com/ivc/docs/2019Citi HildebrandtClientAdvisory.pdf.  Citigroup Global
Markets itself is a retained professional in these proceedings, serving as investment banker to the Oversight Board.
It charges fixed monthly fees and transaction fees, subject to the fee review process.

[6]*See* https://www.law.com/americanlawyer/2019/02/10/inside-law-firms-best-results-in-a-decade/ (summarizing
*2019 Client Advisory*).

infrastructure costs.[7]  The 2018 cost increases for the 50 largest firms exceeded seven percent, Citi reported.

The goal here, of course, is not to try to regulate professional revenue or profit, but to suggest presumptive boundaries for prospective hourly rate increases that comply with PROMESA's reasonableness standards and seek to manage both the immediate and long-term impact on the cost of these proceedings.  Both the industry data and the robust discussions with professionals have reinforced the Fee Examiner's initial—and, now, restated—quantitative recommendations.

To provide another example of relevant data not available late last year, the Fee Examiner and counsel reviewed survey data that measured gross revenue and net operating income reported by the 200 largest firms in the country.  American Lawyer, *2018 Am Law 200* (2018).  That analysis, based on newly-available data for 2017, suggested an increase in costs of just over four percent a year.  Citing both the Citi survey data and a similar survey by Wells Fargo, the New York Law Journal reported a 6.1 percent increase in large firm expenses through the first three quarters of 2018.  Christine Simmons, *New York Firms are Flush, But Expenses Temper Profit Growth*, N.Y.L.J. (Dec. 19, 2018).[8]

---

[7] Not all of the financial pressures have been upward.  Rent in New York, for example, was stable or slightly declined in 2017 and beyond—though larger firms generally benefit from long-term leases.  *See* Rich Brockman, *Manhattan Office Rents Saw First Annual Decline Since Great Recession*, The Real Deal (Jan. 8, 2018 7:00 a.m.); https://therealdeal.com/2018/01/08/manhattan-office-rents-saw-first-annual-decline-since-great-recession/.

[8] *See* https://www.law.com/newyorklawjournal/2018/12/19/big-new-york-firms-are-flush-but-expenses-temper-profit-growth/.

A recent academic study reported similar data based on a broader survey of some 160 law firms, only a third of them in the Am Law 100.  "[D]irect expenses in 2018 grew by 3.4 per cent...."  Georgetown Law Ctr. on Ethics and the Legal Profession, Thomson Reuters Legal Exec. Inst. & Peer Monitor, *2019 Report on the State of the Legal Market* 10 (2019), http://www.legalexecutiveinstitute.com/2019-legal-market-report/.  While the average increase varied by firm size, the 50 largest firms saw 2018 expense increases of more than six percent.  *Id.*

At the December 19, 2018 hearing, the Court noted the "unique situation" presented to professionals by these proceedings, asking the Fee Examiner to reconsider the initial rate increase recommendations.  Tr. at 23.  While not asking "that a[ny] firm limit all of its [annual] billing increases to two percent," *id*., the Court particularly noted the two percent annual rate of inflation in New York.  For several reasons, the Fee Examiner remains persuaded that a rate increase formulation based only on the Consumer Price Index understates the documented, higher expense increases facing professional firms—reinforced by the extended discussions with professionals and the new year-end data the Court anticipated in requesting a second look.

First, like all guidelines, any rate increase standard is presumptive, not mandatory.  Each professional's application subject to Title III fee review is evaluated separately and in the context of its prior applications and those of other professionals.  For some, the application of a seven percent presumptive annual limit on associate "step increases" may be reasonable while, for others (particularly those based in the Commonwealth with much lower starting hourly rates), the standard may be too restrictive.  The Fee Examiner's ultimate recommendations likely will, more than occasionally, depart from the rote application of the presumptive standards in light of individual considerations unique to each professional.

Second, the fee review process analyzes rate increases timekeeper-by-timekeeper, comparing the data internally, with other firms in these cases, and even with rates in other major cases.  The starting rate for first year associates working on these Title III cases ranged from $75 per hour at a Puerto Rico firm to more than $500 per hour at a New York firm.  The rate increase standard cannot apply to both of them uniformly.

Third, the presumptive standard is prospective, attempting to anticipate increasing costs for 2019 and beyond for a broad range of professionals across a broad range of categories.

Finally, the Fee Examiner will continue to report periodically to the Court on the effects of rate increases, and any presumptive standard is, by definition, a starting point—neither a floor nor a ceiling.  The standard may adapt and evolve just as each Debtor's path through Title III faces twists and turns not capable of anticipation.

The Revised Proposed Order acknowledges the negotiated and discounted rates and rate increases explicitly pre-authorized in some engagement agreements.  The principal firm for the Oversight Board, for example, is bound by an agreement that caps annual increases at four percent.  *See* November 25, 2016 Engagement Letter to Oversight Board from Proskauer Rose LLP.[9]  That, too, is a factor in the recommendations presented here.  By contrast, other professional services agreements, to which the presumptive rate increase standard is particularly responsive, vaguely allow "periodic" or "regular" increases at the professional's sole discretion both as to amount and timing.

With respect to associate seniority increases, however labeled, the presumptive standards reflect both the Court's expressed concern, Tr. at 24-25, and the legitimate recognition that associates working on these proceedings bring additional value as they gain experience.  The Revised Proposed Order still presumptively caps rate increases imposed as a result of a professional's increased experience and, as the Court requested, requires professionals to certify that the rate adjustments imposed for timekeepers working on these Title III cases are consistent firmwide, both in amount and timing.  *See* Revised Proposed Order ¶ 2(b)(6)(iii).

---

[9] As the Court requested, the Revised Proposed Order requires Debtors (including the Oversight Board) with explicit rate increase provisions in a professional services contract to append such contracts, with rate increase provisions identified, to their publicly-filed fee applications.  *See* Revised Proposed Order at ¶ 2(b)(1).

## FOURTH INTERIM FEE PERIOD OBSERVATIONS

This Court-ordered Report addresses some of the professional fees and expenses timely submitted for approval and subject to review and recommendation for the Fourth Interim Fee Period (June 1, 2018 – September 30, 2018), along with held over applications from prior interim periods.  For many professionals, the Fee Examiner's recommended adjustments are smaller than in prior fee periods, with a number of applications recommended for approval without adjustment.  This reflects—at least in part—the professionals' voluntary and pre-emptive application of some of the guidelines and standards discussed in earlier reports.  Many professionals, for example, have significantly reduced the number of timekeepers billing to attend hearings and mediation sessions.  The number of professionals billing for daily docket checks and media review also has decreased markedly and, in many instances, the quality of timekeeping—both in task descriptions and numerical accuracy—has notably improved.

The February 15, 2019 decision by the U.S. Court of Appeals involving the Oversight Board's composition does not conclude that constitutional litigation, nor have all of its consequences yet been felt or appreciated.  However, the Fee Examiner already has engaged professionals on the continuing need to avoid duplicative efforts with further appeals or related activity involving the legislative and executive branches of the federal or Commonwealth governments.

### *Flat Fee Financial Professionals*

The Fee Examiner has noted particularly in this review cycle the growing number and cost of financial professionals—both flat fee and hourly.  McKinsey & Company, Inc.[10] requests

---

[10] The Fee Examiner has reviewed the investigative summary filed by Luskin, Stern & Eisler earlier this month [Dkt. No. 5154] and followed the continuing litigation in several Chapter 11 cases involving McKinsey.  Neither the

*footnote continued on next page…*

a total of $9,870,000 in flat fees [Dkt. Nos. 4333 (Commonwealth Docket), 533 (HTA Docket),

1032 (PREPA Docket)], all recommended for the Court's approval without adjustment based on

the continuing review methodology used previously.  *See Fee Examiner's Third Interim Report*

*on Professional Fees and Expenses* [Dkt. No. 4126] at pp. 10-14.  The Fee Examiner has

estimated an hourly blended rate of $514.06 per hour across all three McKinsey working groups

for the fourth fee period.[11]

This reporting cycle also includes the first application of Conway MacKenzie, Inc. as

Financial Advisor to the Commonwealth [Dkt. No. 4497], reporting an hourly blended rate of

$490.10 per hour, and the second application of Rothschild & Co. US Inc. as Financial Advisor

and Investment Banker to AAFAF [Dkt. No. 4260] at a reported blended hourly rate of $572.71

per hour.[12]

A particular difficulty inherent in PROMESA's Title III structure, given the Oversight

Board's role as Debtor representative, has been identifying the "client" of each financial advisor.

For example, Deloitte Financial Advisory Services and Ernst & Young LLP are both financial

advisors to the Commonwealth, with Ernst & Young LLP reporting to the Oversight Board and

Deloitte FAS reporting to AAFAF.  Many financial professionals, flat fee and hourly alike,

provide advice on one or more discrete aspects of a Debtor's finances (for example, Ankura

Consulting Group is the financial advisor to PREPA and no other debtor).

---

Luskin Stern report nor any related analysis leads the Fee Examiner to change the "reasonable and necessary" conclusions of prior reports.

[11] A table illustrating the McKinsey blended hourly rate estimate is attached to this Report as **Exhibit E**.

[12] The interim applications of Citigroup Global Markets, Inc., the Oversight Board's investment banker, is recommended for deferral to the April 24, 2019 or a later omnibus hearing in part because the Fee Examiner has not received explanation of a proposed $24 million success fee (not yet requested) and details about the method of allocating Citigroup's monthly flat fees to Title III and non-Title III matters.  [Dkt. No. 4020].  Citigroup's reported blended rate for the third interim fee period is $671.49 per hour.

In part because retention applications are not required under PROMESA, the individual financial advisors' roles is not always well-defined, making the identification and quantification of potential duplication or overlap of roles more difficult. Even without significant monthly flat fees, the need for multiple financial advisors to "the Commonwealth" remains an open question, with the costs increasing.

Each financial professional has been asked to supplement its time records with additional background on the context of its retention. Where the Fee Examiner has concerns about similar or duplicate roles—and those concerns are frequent—he has asked professionals to articulate the measures employed to minimize duplication of tasks. Through the fourth interim fee period, law firms have billed 58.79 percent of the total fees requested through the Title III fee process, with that "share" declining. The proportion of financial professional fees will likely grow as new financial professionals are engaged and existing financial professionals expand their engagements.

### *Remaining Professionals*

With respect to the other interim applications recommended for approval, no objections have been filed to any of them. **Exhibit A** attached here lists all of the Fourth (and prior deferred) Interim Fee Period applications now recommended for approval and the recommended adjustments to each of them. Some of those adjustments involve limited rate increases.

Where deviation from the guidelines and presumptions occurs, the professional has made a showing sufficient to answer initial questions and challenges. **Exhibit B** lists applications that have been consensually deferred, as discussed above, as well as applications filed after the Fee Examiner's deadline or applications initially supported by insufficient data and documentation. Like every fee and expense application, whenever submitted, they all remain subject to Court approval of final applications at the conclusion of these proceedings. As negotiations continue,

11

this Report and **Exhibit A** may be supplemented and proposed orders submitted through

March 12, 2019.

**RELIEF REQUESTED**

For the reasons stated in this report, and in the absence of any objection, the Fee

Examiner recommends that the Court approve under PROMESA sections 316 and 317 the

Applications listed on **Exhibit A** and permit the deferral of the other applications listed on

**Exhibit B** to the omnibus hearing scheduled for April 24, 2019 or a later date.  Further, the Fee

Examiner requests entry of the revised presumptive standards order attached to this Report as

**Exhibit C**.

Dated:  March 6, 2019.

**WE HEREBY CERTIFY** that on this date, we electronically filed the foregoing report

with the Clerk of the Court using the CM/ECF system that will send notification of such filing to

all attorneys of record registered in the use of the CM/ECF system.

EDGE LEGAL STRATEGIES, PSC

_s/Eyck O. Lugo_
Eyck O. Lugo
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone:  (787) 522-2000
Facsimile:  (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone:  (608) 257-3911
Facsimile:  (608) 257-0609

Brady C. Williamson (*Pro Hac Vice*)
*Fee Examiner*

Katherine Stadler (*Pro Hac Vice*)
*Counsel for the Fee Examiner*

20267608.2

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

**EXHIBIT A**

Second - Fourth Interim Fee Period Applications Recommended for Approval:

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| | *Bankruptcy Counsel to Debtors - Commonwealth* | | | | | | | |
| 1-a | **Proskauer Rose LLP [Dkt. No. 2868]** | 10/01 - 01/31/2018 | $ 5,453,686.60 | $ 204,966.28 | $ 294,582.75 | $ 45,405.33 | $ 5,248,720.32 | $ 249,177.42 |
| | *Bankruptcy Counsel to Debtors COFINA* | | | | | | | |
| 1-b | **Proskauer Rose LLP [Dkt. No.2870]** | 10/01 - 01/31/2018 | $ 562,239.80 | $ 21,130.70 | $ 5,584.22 | $ 860.72 | $ 541,109.10 | $ 4,723.50 |
| | *Bankruptcy Counsel to Debtors ERS* | | | | | | | |
| 1-c | **Proskauer Rose LLP [Dkt. No. 2872]** | 10/01 - 01/31/2018 | $ 2,121,996.20 | $ 79,751.13 | $ 52,896.53 | $ 8,153.17 | $ 2,042,245.07 | $ 44,743.36 |
| | *Bankruptcy Counsel to Debtors PREPA* | | | | | | | |
| 1-d | **Proskauer Rose LLP [Dkt. No. 2876]** | 10/01 - 01/31/2018 | $ 2,062,304.20 | $ 77,507.72 | $ 37,003.99 | $ 5,703.59 | $ 1,984,796.48 | $ 31,300.40 |
| | *Bankruptcy Counsel to Debtors HTA* | | | | | | | |
| 1-e | **Proskauer Rose LLP [Dkt. No. 2874]** | 10/01 - 01/31/2018 | $ 1,256,420.60 | $ 47,220.14 | $ 39,216.07 | $ 6,044.55 | $ 1,209,200.46 | $ 33,171.52 |
| | *Counsel to Official Committee of Unsecured Creditors* | | | | | | | |
| 2 | **Paul Hastings LLP [Dkt. No. 3568]** | 2/01 - 5/31/2018 | $ 8,676,112.75 | $ 224,927.88 | $ 586,993.66 | $ 3,737.20 | $ 8,451,184.87 | $ 583,256.46 |
| | *Counsel to AAFAF - COFINA* | | | | | | | |
| 3-a | **O'Melveny & Myers [Dkt. No. 3575]** | 2/01 - 5/31/2018 | $ 837,368.29 | $ 30,039.28 | $ 3,688.16 | $ 1,337.13 | $ 807,329.01 | $ 2,351.03 |
| | *Counsel to AAFAF - ERS* | | | | | | | |
| 3-b | **O'Melveny & Myers [Dkt. No. 3578]** | 2/01 - 5/31/2018 | $ 194,579.33 | $ 30,039.28 | $ 13,657.88 | $ 1,337.13 | $ 164,540.05 | $ 12,320.75 |
| | *Counsel to AAFAF - HTA* | | | | | | | |
| 3-c | **O'Melveny & Myers [Dkt. No. 3579]** | 2/01 - 5/31/2018 | $ 155,651.42 | $ 30,039.28 | $ 451.10 | $ 225.55 | $ 125,612.14 | $ 225.55 |
| | *Counsel to AAFAF - Commonwealth* | | | | | | | |
| 3-d | **O'Melveny & Myers [Dkt. No. 3581]** | 2/01 - 5/31/2018 | $ 6,871,237.76 | $ 30,039.27 | $ 101,437.64 | $ 2,448.71 | $ 6,841,198.49 | $ 98,988.93 |
| | *Special Counsel to the FOMB* | | | | | | | |
| 4 | **Luskin Stern & Eisler LLP [Dkt. No. 4336]** | 6/01 - 9/30/2018 | $ 74,708.00 | $ 3,000.00 | $ 313.63 | $ - | $ 71,708.00 | $ 313.63 |
| | *Financial Advisor to the FOMB* | | | | | | | |
| 5 | **Ernst & Young LLP [Dkt. No. 4324]** | 5/01 - 09/30/2018 | $ 2,810,623.75 | $ 39,451.86 | $ 101,015.45 | $ 4,589.64 | $ 2,771,171.89 | $ 96,425.81 |
| | *Macroeconomic Consultant to FOMB* | | | | | | | |
| 6 | **Andrew Wolfe [Dkt. No. 4393]** | 6/01 - 9/30/2018 | $ 100,000.00 | $ - | $ 3,136.00 | $ 10.00 | $ 100,000.00 | $ 3,126.00 |
| | *Attorneys for FOMB* | | | | | | | |
| 7 | **Munger Tolles & Olson LLP [Dkt. No. 4262]** | 6/01 - 9/30/2018 | $ 344,778.70 | $ 14,853.53 | $ 462.00 | $ - | $ 329,925.17 | $ 462.00 |
| | *Consulting Services to FOMB - COFINA* | | | | | | | |
| 8-a | **Alvarez & Marsal [Dkt. No. 4306 -- 17-03284 Dkt. No. 355]** | 8/09 - 9/30/2018 | $ 250,780.50 | $ - | $ - | $ - | $ 250,780.50 | $ - |
| | *Consulting Services to FOMB - Commonwealth* | | | | | | | |
| 8-b | **Alvarez & Marsal [Dkt. No. 4309]** | 8/09 - 9/30/2018 | $ 831,602.25 | $ - | $ 8,220.02 | $ - | $ 831,602.25 | $ 8,220.02 |
| | *Consulting Services to FOMB - ERS* | | | | | | | |
| 8-c | **Alvarez & Marsal [Dkt. No. 4311 -- 17-03566 Dkt. No. 348]** | 8/09 - 9/30/2018 | $ 140,952.60 | $ - | $ - | $ - | $ 140,952.60 | $ - |
| | *Consulting Services to FOMB - HTA* | | | | | | | |
| 8-d | **Alvarez & Marsal [Dkt. No. 4317 -- 17-03567 Dkt. No. 530]** | 8/09 - 9/30/2018 | $ 87,894.00 | $ - | $ - | $ - | $ 87,894.00 | $ - |
| | *Consulting Services to FOMB* | | | | | | | |
| 9-a | **McKinsey & Company, Inc. [Dkt. No. 4333]** | 6/01 - 9/30/2018 | $ 5,670,000.00 | $ - | $ - | $ - | $ 5,670,000.00 | $ - |
| | *Consulting Services to FOMB -PREPA* | | | | | | | |
| 9-b | **McKinsey & Company, Inc. [17-04780 Dkt. No. 1032]** | 6/01 - 9/30/2018 | $ 2,960,000.00 | $ - | $ - | $ - | $ 2,960,000.00 | $ - |
| | *Consulting Services to FOMB - HTA* | | | | | | | |
| 9-c | **McKinsey & Company, Inc. [17-03567 Dkt. No. 533]** | 6/01 - 9/30/2018 | $ 1,240,000.00 | $ - | $ - | $ - | $ 1,240,000.00 | $ - |
| | *Financial Advisors to the Commonwealth* | | | | | | | |
| 10 | **Conway MacKenzie, Inc. [Dkt. No. 4497]** | 7/16 - 10/31/2018 | $ 3,500,000.00 | $ - | $ - | $ - | $ 3,500,000.00 | $ - |

19791241.1

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

**EXHIBIT A**

**Second - Fourth Interim Fee Period Applications Recommended for Approval:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| | *Financial Advisor and Investment Banker to AAFAF* | | | | | | | |
| 11 | **Rothschild & Co US Inc. [Dkt. No. 4260]** | 6/01 - 9/30/2018 | $ 3,057,096.77 | $ - | $ 63,468.70 | **DEFERRED** | $ 3,057,096.77 | **FN1** |
| | *Special Debt Financing Counsel to PREPA* | | | | | | | |
| 12 | **Norton Rose Fulbright US LLP [Dkt. No. 4326 - 17-04780 Dkt. No. 1029]** | 9/14 - 9/30/2018 | $ 79,605.00 | $ - | $ - | $ - | $ 79,605.00 | $ - |
| | *Counsel to the Official Committee of Unsecured Creditors* | | | | | | | |
| 13 | **Paul Hastings LLP [Dkt. No. 4325]** | 6/01 - 09/30/2018 | $ 5,795,270.25 | $ 127,676.53 | $ 201,725.65 | $ 2,296.62 | $ 5,667,593.72 | $ 199,429.03 |
| | *Puerto Rico Counsel to the Official Committee of Unsecured Creditors* | | | | | | | |
| 14 | **Casillas Santiago & Torres LLC [Dkt. No. 4329]** | 6/01 - 9/30/2018 | $ 250,762.00 | $ 115.00 | $ 12,468.62 | $ - | $ 250,647.00 | $ 12,468.62 |
| | *Financial Advisors to Official Committee of Unsecured Creditors* | | | | | | | |
| 15 | **Zolfo Cooper, LLC [Dkt. No. 4323]** | 6/01 - 09/30/2018 | $ 2,178,107.50 | $ 74,350.90 | $ 3,392.68 | $ - | $ 2,103,756.60 | $ 3,392.68 |
| | *Communications Advisore to Official Committee of Unsecured Creditors* | | | | | | | |
| 16 | **Kroma Advertising, Inc. [Dkt. No. 4321]** | 4/16 - 9/15/2018 | $ 150,000.00 | $ - | $ 4,210.16 | $ - | $ 150,000.00 | $ 4,210.16 |
| | *Attorneys to Retired Employees Official Committee* | | | | | | | |
| 17 | **Jenner & Block LLP [Dkt. No. 4267]** | 6/01 - 9/30/2018 | $ 1,817,932.76 | $ 30,297.55 | $ 108,986.92 | $ 4,979.39 | $ 1,787,635.21 | $ 104,007.53 |
| | *Puerto Rico Counsel to Retired Employees Official Committee* | | | | | | | |
| 18 | **Bennazar, Garcia & Milian, C.S.P.  [Dkt. No. 4271]** | 6/01 - 9/30/2018 | $ 292,497.50 | $ 3,343.00 | $ 1,060.40 | $ - | $ 289,154.50 | $ 1,060.40 |
| | *Actuaries and Consultants to Retired Employees Official Committee* | | | | | | | |
| 19 | **Segal Consulting [Dkt. No. 4320]** | 6/01 - 9/30/2018 | $ 384,373.00 | $ 5,410.00 | $ 6,295.56 | $ 1,130.66 | $ 378,963.00 | $ 5,164.90 |
| | *Financial Advisor to Retired Employees Official Committee* | | | | | | | |
| 20 | **FTI Consulting, Inc. [Dkt. No. 4269]** | 6/01 - 9/30/2018 | $ 1,235,884.50 | $ 37,500.00 | $ 18,551.08 | $ - | $ 1,198,384.50 | $ 18,551.08 |
| | *Information Agent to Retired Employees Official Committee* | | | | | | | |
| 21 | **Marchand ICS Group [Dkt. No. 4272]** | 6/01 - 9/30/2018 | $ 68,067.25 | $ - | $ 1,496.72 | $ - | $ 68,067.25 | $ 1,496.72 |
| | *Members of Retired Employees Official Committee* | | | | | | | |
| 22 | **Retired Employees Official Committee [Dkt. No. 4274]** | 6/01 - 9/30/2018 | $ - | | $ 308.38 | | $ - | $ 308.38 |
| | *COFINA Agent* | | | | | | | |
| 23 | **Bettina M. Whyte [Dkt. No. 4261]** | 6/01 - 9/30/2018 | $ 115,170.00 | $ - | $ 2,830.51 | $ 751.38 | $ 115,170.00 | $ 2,079.13 |
| | *Puerto Rico Counsel for COFINA Agent* | | | | | | | |
| 24 | **Nilda Navarro-Cabrer [Dkt. No. 4268]** | 6/01 - 9/30/2018 | $ 47,962.50 | $ - | $ 140.23 | $ - | $ 47,962.50 | $ 140.23 |
| | *Financial Advisor to the Mediation Team* | | | | | | | |
| 25 | **Phoenix Management Services, LLC [Dkt. No. 4300 AND  4368]** | 6/04 - 9/30/2018 | $ 241,810.50 | $ 1,235.00 | $ 5,249.27 | $ - | $ 240,575.50 | $ 5,249.27 |

**FN1** - Consideration of Rothschild's expense request will be deferred to the April 24, 2019 omnibus hearing.

19791241.1

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

Second - Fourth Interim Fee Period Applications Recommended for Deferral:

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| | *Financial Advisors to the Puerto Rico Fiscal Agency and Financial Advisory Authority* | | | | | | | |
| 1-a | **Ankura Consulting Group, LLC [Dkt. No. 2751]** | 10/01 - 1/31/2018 | $ 3,937,979.00 | | $ 175,457.10 | | | |
| | *Financial Advisors to PREPA* | | | | | | | |
| 1-b | **Ankura Consulting Group, LLC [Dkt. No. 2755]** | 10/01 - 1/31/2018 | $ 3,475,283.50 | | $ 153,684.90 | | | |
| | *Financial Advisors to Commonwealth* | | | | | | | |
| 2-a | **Ankura Consulting Group LLC [Dkt. No. 3564]** | 2/01 - 5/31/2018 | $ 2,002,323.50 | | $ 128,217.60 | | | |
| | *Financial Advisors to PREPA* | | | | | | | |
| 2-b | **Ankura Consulting Group LLC [17-04780 Dkt. No. 918; First Amended Dkt. No. 3658]** | 2/01 - 5/31/2018 | $ 3,325,832.00 | | $ 261,639.11 | | | |
| | *Counsel for Debtors - COFINA* | | | | | | | |
| 3-a | **Proskauer Rose [Dkt. No. 3571]** | 2/01 - 5/31/2018 | $ 94,488.00 | | $ 4,277.94 | | | |
| | *Counsel for Debtors - ERS* | | | | | | | |
| 3-b | **Proskauer Rose [Dkt. No. 3590]** | 2/01 - 5/31/2018 | $ 445,503.70 | | $ 16,638.88 | | | |
| | *Counsel for Debtors - HTA* | | | | | | | |
| 3-c | **Proskauer Rose [Dkt. No. 3576]** | 2/01 - 5/31/2018 | $ 1,219,419.80 | | $ 40,404.55 | | | |
| | *Counsel for Debtors - PREPA* | | | | | | | |
| 3-d | **Proskauer Rose [Dkt. No. 3582]** | 2/01 - 5/31/2018 | $ 3,246,887.10 | | $ 169,316.96 | | | |
| | *Counsel for Debtors - Commonwealth* | | | | | | | |
| 3-e | **Proskauer Rose [Dkt. No. 3588]** | 2/01 - 5/31/2018 | $ 5,434,013.80 | | $ 286,122.56 | | | |
| | *Investment Banker and Financial Advisor to FOMB* | | | | | | | |
| 4 | **Citigroup Global Markets Inc. [Dkt. No. 4020]** | 2/01 - 5/31/2018 | $ 1,803,571.43 | | $ 40,912.98 | | | |
| | *Bankruptcy Counsel to Debtors - Commonwealth* | | | | | | | |
| 5-a | **Proskauer Rose LLP [Dkt. No. 4280]** | 6/01 - 9/30/2018 | $ 8,001,864.20 | | $ 228,540.36 | | | |
| | *Bankruptcy Counsel to Debtors - COFINA* | | | | | | | |
| 5-b | **Proskauer Rose LLP [Dkt. No. 4279 -- 17-03284 Dkt. No. 348]** | 6/01 - 9/30/2018 | $ 1,177,407.10 | | $ 59,541.78 | | | |
| | *Counsel for Debtors - HTA* | | | | | | | |
| 5-c | **Proskauer Rose [Dkt. No. 4284 -- 17-03567 Dkt. No. 528]** | 6/01 - 9/01/2018 | $ 1,349,179.70 | | $ 40,907.03 | | | |
| | *Counsel for Debtors - ERS* | | | | | | | |
| 5-d | **Proskauer Rose [Dkt. No. 4292 -- 17-03566 Dkt. No. 345]** | 6/01 - 9/30/2018 | $ 624,262.00 | | $ 10,753.07 | | | |
| | *Counsel for Debtors - PREPA* | | | | | | | |
| 5-e | **Proskauer Rose [Dkt. No. 4287 -- 17-04780 Dkt. No. 1026]** | 6/01 - 9/30/2018 | $ 1,081,438.70 | | $ 28,931.16 | | | |
| | *Puerto Rico Counsel to FOMB* | | | | | | | |
| 6 | **O'Neill & Borges LLC [Dkt. No. 4313]** | 6/01 - 9/30/2018 | $ 442,234.80 | | $ 6,001.18 | | | |
| | *Advisors to FOMB - FOURTH AND FINAL* | | | | | | | |
| 7 | **Pension Trustee Advisors, Inc. [Dkt. No. 4823]** | 6/01 - 10/31/2018 | $ 152,620.00 | | $ 4,403.93 | | | |
| | *Counsel for PREPA and AAFAF - PREPA* | | | | | | | |
| 8 | **Greenberg Traurig [Dkt. No. 4297 -- 17-04780 Dkt. No. 1028]** | 6/01 - 9/30/2018 | $ 1,426,499.46 | | $ 27,433.16 | | | |
| | *Puerto Rico Counsel to PREPA* | | | | | | | |
| 9 | **Cancio, Nadal, Rivera & Díaz, PSC [Dkt. No. 4232 -- 17-04780 Dkt. No. 1021]** | 6/01 - 9/30/2018 | $ 378,910.00 | | $ 133.13 | | | |
| | *Chief Financial Advisor to PREPA* | | | | | | | |
| 10 | **Filsinger Energy Partners [Dkt. No. 4240 -- 17-04780 Dkt. No. 1022]** | 6/01 - 9/30/2018 | $ 4,658,183.60 | | $ 343,922.99 | | | |
| | *Counsel to AAFAF - Commonwealth* | | | | | | | |
| 11-a | **O'Melveny & Myers [Dkt. No. 4298]** | 6/01 - 9/30/2018 | $ 4,967,118.86 | | $ 125,613.01 | | | |

19791241.1

In re: The Financial Oversight and Management Board for Puerto Rico, as a representative of
The Commonwealth of Puerto Rico, et al.
PROMESA Title III No. 17 BK 3283-LTS

**EXHIBIT B**

**Second - Fourth Interim Fee Period Applications Recommended for Deferral:**

| | Applicant | Compensation Period | Interim Fees Requested | Fee Examiner's Recommended Fee Adjustments | Interim Expenses Requested | Fee Examiner's Recommended Expense Adjustments | Interim Fees Recommended for Approval | Interim Expenses Recommended for Approval |
|---|---|---|---|---|---|---|---|---|
| | *Counsel to AAFAF - COFINA* | | | | | | | |
| 11-b | **O'Melveny & Myers [Dkt. No. 4283 -- 17-03284 Dkt. No. 350]** | 6/01 - 9/30/2018 | $  1,339,632.66 | | $   4,436.91 | | | |
| | *Counsel to AAFAF - HTA* | | | | | | | |
| 11-c | **O'Melveny & Myers [Dkt. No. 4286 -- 17-3567 Dkt. No. 527]** | 6/01 - 9/30/2018 | $      54,282.40 | | $   1,225.20 | | | |
| | *Counsel for AAFAF - ERS* | | | | | | | |
| 11-d | **O'Melveny & Myers [Dkt. No. 4288 -- 17-03566 Dkt. No. 346]** | 6/01 - 9/30/2018 | $    184,302.74 | | $   5,587.39 | | | |
| | *Counsel to AAFAF - PREPA* | | | | | | | |
| 11-e | **O'Melveny & Myers [Dkt. No. 4327 -- 17-04780 Dkt. No. 1030]** | 8/10 - 9/30/2018 | $    407,832.68 | | $   4,650.14 | | | |
| | *Puerto Rico Counsel to AAFAF - Commonwealth* | | | | | | | |
| 12 | **Marini Pietrantoni Muniz LLC [Dkt. No. 4316 -- 17-03284 Dkt. No. 358 -- 17-03567 Dkt. No. 532 -- 17-03566 Dkt. No. 350]** | 6/01 - 9/30/2018 | $    410,887.45 | | $   8,725.44 | | | |
| | *Counsel to AAFAF and Puerto Rico Treasury Department* | | | | | | | |
| 13 | **DLA Piper [Dkt. No. 4277]** | 6/01 - 9/30/2018 | $    389,904.00 | | $  11,379.97 | | | |
| | *Financial Advisors to Commonwealth* | | | | | | | |
| 14-a | **Ankura Consulting Group, LLC [Dkt. No. 4358]** | 6/01 - 9/30/2018 | $  2,373,633.63 | | $ 199,003.27 | | | |
| | *Financial Advisors to PREPA* | | | | | | | |
| 14-b | **Ankura Consulting Group, LLC [Dkt. No. 1048 (17-04780)]** | 6/01 - 9/30/2018 | $  2,779,593.00 | | $ 216,596.27 | | | |
| | *Counsel for COFINA Agent* | | | | | | | |
| 15 | **Willkie Farr & Gallagher LLP [Dkt. No. 4263]** | 6/01 - 9/30/2018 | $    430,672.54 | | $  42,302.71 | | | |
| | *Special Municipal Bankruptcy Counsel for COFINA Agent* | | | | | | | |
| 16 | **Klee, Tuchin, Bogdanoff & Stern (Dkt. No. 4265]** | 6/01 - 9/30/2018 | $    343,458.50 | | $   4,535.89 | | | |
| | *Investment Banker and Financial Advisor to FOMB* | | | | | | | |
| 17 | **Citigroup Global Markets Inc. [Dkt. No. 4897]** | 6/01 - 9/30/2018 | $  1,975,000.00 | | $  20,450.63 | | | |

# EXHIBIT C

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | **PROMESA**<br>**Title III** |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | **No. 17 BK 3283-LTS** |
| as a representative of | **(Jointly Administered)** |
| THE COMMONWEALTH OF PUERTO RICO<br>*et al.*, | |
| Debtors.[1] | |

ORDER IMPOSING ADDITIONAL PRESUMPTIVE STANDARDS: RATE
INCREASES AND THE RETENTION OF EXPERT WITNESSES OR OTHER
SUB-RETAINED PROFESSIONALS

Upon the *Fee Examiner's Motion to Impose Additional Presumptive Standards: Rate

Increases and the Retention of Expert Witnesses or other Sub-Retained Professionals* (the

"**Motion**"); and the Court having found it has subject matter jurisdiction over this matter

pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to

PROMESA section 307(a); and the Court having conducted a hearing on December 19, 2018

denying the motion without prejudice and inviting its resubmission as in the best interests of the

Debtors, their creditors, and other parties in interest; and the Court having found that the Fee

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Examiner provided adequate and appropriate notice of the Motion under the circumstances,
including that the relief sought in the Motion is supported by good cause as contemplated by
Bankruptcy Rule 9006, and that no other or further notice is required; and the Court having
reviewed the Motion and supplemental explanatory information and the Court having determined
that the legal and factual bases set forth in the Motion establish just cause for the relief granted
herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY**

**ORDERED THAT**:

1.      The Motion is **GRANTED**;

2.      The following additional presumptive standards, which the Fee Examiner has
represented embody standards generally and consistently applied since the outset of the review
process, shall continue to be applied in the review of fee applications filed in these Title III cases
after the entry of this Order:

   a) Professionals seeking fees or expenses through the Title III fee process shall not
      submit reimbursement requests for any other firm's professional (legal, financial
      advisory, investment banking, or accounting) services, whether or not those sub-
      retained services are characterized as expert witness or consultant fees.

      1. If a professional's retention order or agreement allows for the sub-retention of
         other professionals, including expert witnesses, any such sub-retention shall
         be the subject of a notice certifying that the professional received the prior
         consent of its client to retain the expert or consultant and disclosing the terms
         of the expert's or consultant's engagement.  Prospectively, the Fee Examiner,
         the U.S. Trustee, the Debtors, the Financial Oversight and Management
         Board, or an official committee may object to the retention of a sub-retained
         professional for any reason, including that the services to be provided are
         unnecessarily duplicative of another professional's services; and

      2. Any sub-retained consultant or expert witness fees charged as expenses in
         another professional's fee application should be accompanied by all of the
         supporting information and data required of retained professionals; and

      3. This presumption shall not apply to sub-retained professionals billing less than
         $50,000 in any four-month interim compensation period or $250,000 in the
         aggregate.

b)  Hourly billing rate increases imposed by professionals submitting fees for Court approval shall be presumptively unreasonable unless:

1.  The professional firm certifies that it has obtained the express written permission of its client for the rate increases on a timekeeper-by-timekeeper basis; provided that no such certification is required if the rate increases are authorized, both with respect to effective date and specific amount, in a written contract with a Debtor or Commonwealth entity, including the Financial Oversight and Management Board; provided further that the pertinent contract(s), with rate increase provisions identified, are appended to any fee application reflecting rate increases; and

2.  The professional has filed a notice, at least 21-days prior to the proposed implementation of such rate increases, informing the Court and public of the proposed rate adjustment on a timekeeper-by-timekeeper basis;[2] provided that no such notice is required if the rate increases are authorized, both with respect to effective date and specific amount, in a written contract with a Debtor or Commonwealth entity; provided further that the pertinent contract(s), with rate increase provisions identified, are appended to any fee application reflecting rate increases; and

3.   The aggregate rate increases do not exceed, for any individual timekeeper during any single calendar year:

   i.  For any individual owner, director, partner, shareholder, special counsel, of counsel, or senior counsel, five percent of the initial rate charged in the most recent interim fee application approved by the Court; or

   ii.  For any paraprofessional, five percent of the initial rate charged in the most recent interim fee application approved by the Court; or

   iii.  For associates or non-owner professionals engaged in their field of practice for a period of 10 or fewer years:

      1.  As a result of the timekeeper's advancing seniority, seven percent of the initial rate charged in the most recent interim fee application approved by the Court; and

      2.  For any reason other than a timekeeper's advancing seniority, five percent of the initial rate charged in the most recent interim fee application approved by the Court.

---

[2] Notwithstanding this provision, for rate increases occurring before entry of this Order, constructive notice shall be sufficient.

4. These standards shall not apply to associates or other non-owner timekeepers who are promoted to a position of owner, director, partner, shareholder, special counsel, or senior counsel provided that the rate increases are otherwise consistent with the rates charged by peers of similar skill and seniority within the timekeeper's organization working on these cases.

5. The term "rate increases" includes any increase in rates above those charged in the most recent interim fee period, whether denominated "step increases" or otherwise, but does not include fee adjustments made to "gross up" fees to offset the effect of any Commonwealth tax on professional fees not in existence at the commencement of a professional's engagement.[3]

6. To the extent that a rate adjustment in any amount results from a timekeeper's developing skill, experience, or professional advancement, the fee applicant must:[4]

   i. Disclose the firm's complete hourly rate schedule, by year of bar admission, both before and after implementation of the rate adjustment or, in the case of financial advisors, by title; and

   ii. Describe the mechanism or methodology used to adjust rates based on a timekeeper's developing skill, experience, or professional advancement; and

   iii. Certify that the rate adjustments imposed for timekeepers working on these Title III cases are consistent, both in amount and timing, with those imposed for timekeepers in the same professional services organization not working on these Title III cases.

c) Whenever possible, the following tasks should be performed by Puerto Rico counsel or co-counsel, and the failure delegate such matters to Puerto Rico counsel may be a factor in the reasonableness analysis:

   1. Routine claims objections and responses;

   2. Motions to assume or reject executory contracts or leases and motions to fix cure amounts related thereto;

   3. Routine avoidance actions;

---

[3] To the extent such a fee adjustment is warranted, professionals should calculate the adjustments as a single line item addition to total fees requested. No adjustments to timekeeper hourly billing rates (other than those embodied in the single line item adjustment), beyond those authorized in this Order, shall be imposed to offset any tax withholding or liability.

[4] This subparagraph 2(b)(6) shall not apply to flat fee professionals or those with a single contractually-capped blended rate.

> 4.   Routine motions to lift the automatic stay or for declaratory ruling on the applicability of the automatic stay.

d)   The Fee Examiner, Debtors, Federal Oversight and Management Board or official committee may object to rate increases for any reason, including, but not limited to, their failure to comply with these presumptions.

e)   Other than agreement terms expressly addressing rate increases, the failure of a professional fee agreement to comply with these presumptive standards shall not be a basis for invalidating any other provision of the fee agreement, provided that the fee agreement is otherwise valid and enforceable.

3.      The burden remains on each professional to demonstrate the reasonableness and necessity of fees and expenses exceeding these standards in light of the facts and circumstances presented.

4.      Nothing in this Order shall restrict the U.S. Trustee or the Fee Examiner from objecting to a professional's fees and expenses even within the parameters of these presumptions.

5.      Nothing in this Order shall restrict the Fee Examiner from, in his discretion, electing *not* to apply a presumption to a professional application if, in his judgment, application of the presumption would be unreasonable under the circumstances.

6.      Nothing in this Order shall prevent any party from challenging or rebutting any of the presumptions set forth herein, which are general guidelines only.

7.      Nothing in this Order shall alter the terms of the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932], which remains in full force and effect.

8.      Fees incurred by applicants to provide the basis for rebutting a presumption in an initially filed fee application are compensable if they are otherwise reasonable, taking into account the good faith basis for the applicant's position.

5

9.      The Fee Examiner may, upon notice and a hearing, request additional

presumptions based on issues that emerge in the review of subsequent or pending but unresolved

interim fee applications.

10.      This Court retains exclusive jurisdiction with respect to all matters arising from or

related to the implementation, interpretation, and enforcement of this Order.

11.      This Order resolves docket entry no. 4371.

SO ORDERED.

Dated: _____, 2019

_____

LAURA TAYLOR SWAIN
United States District Judge

20278669.1

6

# EXHIBIT D

~~12/12/2018~~03/06/2019 Fee Examiner Revised Proposed Order

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re | ) **PROMESA**<br>) **Title III** |
| | ) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | ) **No. 17 BK 3283-LTS**<br>) |
| as a representative of | ) **(Jointly Administered)**<br>) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO<br>*et al.*, | ) |
| | ) |
| | ) |
| Debtors.[1] | ) |

### ORDER IMPOSING ADDITIONAL PRESUMPTIVE STANDARDS: RATE INCREASES AND THE RETENTION OF EXPERT WITNESSES OR OTHER SUB-RETAINED PROFESSIONALS

Upon the *Fee Examiner's Motion to Impose Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or other Sub-Retained Professionals* (the "**Motion**"); and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having ~~found that the relief requested in the Motion is~~conducted a hearing on December 19, 2018 denying the motion without prejudice and inviting its resubmission as in the best interests of the Debtors, their creditors, and other parties in

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

interest; and the Court having found that the Fee Examiner provided adequate and appropriate

notice of the Motion under the circumstances, including that the relief sought in the Motion is

supported by good cause as contemplated by Bankruptcy Rule 9006, and that no other or further

notice is required; and the Court having reviewed the Motion and supplemental explanatory

information and the Court having determined that the legal and factual bases set forth in the

Motion establish just cause for the relief granted herein; and after due deliberation and sufficient

cause appearing therefor, it is **HEREBY ORDERED THAT**:

1.      The Motion is **GRANTED**;

2.      The following additional presumptive standards, which the Fee Examiner has

represented embody standards generally and consistently applied since the outset of the review

process, shall continue to be applied in the review of fee applications filed in these Title III cases

after the entry of this Order:

   a)   Professionals seeking fees or expenses through the Title III fee process shall not
        submit reimbursement requests for any other firm's professional (legal, financial
        advisory, investment banking, or accounting) services, whether or not those sub-
        retained services are characterized as expert witness or consultant fees.

      1.   If a professional's retention order or agreement allows for the sub-retention of
           other professionals, including expert witnesses, any such sub-retention
           occurring on or after the date of this Order shall be the subject of a notice
           certifying that the professional has received the prior written consent of its
           client to retain the expert or consultant and disclosing the terms of the expert's
           or consultant's engagement. The Prospectively, the Fee Examiner, the U.S.
           Trustee, the Debtor Debtors, the Financial Oversight and Management Board,
           or an official committee may object to the retention of a sub-retained
           professional for any reason, including that the services to be provided are
           unnecessarily duplicative of another professional's services; and

      2.   Any sub-retained consultant or expert witness fees charged as expenses in
           another professional's fee application should be accompanied by all of the
           supporting information and data required of retained professionals; and

      3.   This presumption shall not apply to sub-retained professionals billing less than
           $50,000 in any four-month interim compensation period or $250,000 in the
           aggregate.

2

b) Hourly billing rate increases imposed by professionals submitting fees for Court approval shall be presumptively unreasonable unless:

1. The professional firm certifies that it has obtained the express written permission of its client for the rate increases on a timekeeper-by-timekeeper basis; ~~and~~provided that no such certification is required if the rate increases are authorized, both with respect to effective date and specific amount, in a written contract with a Debtor or Commonwealth entity, including the Financial Oversight and Management Board; provided further that the pertinent contract(s), with rate increase provisions identified, are appended to any fee application reflecting rate increases; and

2. The professional has filed a notice, at least 21-days prior to the proposed implementation of such rate increases, informing the Court and public of the proposed rate adjustment on a timekeeper-by-timekeeper basis;[2] provided ~~however, that professionals whose engagement contracts are with the Financial Oversight and Management Board or AAFAF, are a matter of public record, and contain an explicit mechanism (including timing and quantified limitations substantially consistent with the standards outlined in this Order) for the imposition of rate increases shall not be required to file such notice;[3]~~that no such notice is required if the rate increases are authorized, both with respect to effective date and specific amount, in a written contract with a Debtor or Commonwealth entity; provided further that the pertinent contract(s), with rate increase provisions identified, are appended to any fee application reflecting rate increases; and

3. The aggregate rate increases do not exceed, for any individual timekeeper during any single calendar year:

   i. For any individual owner, director, partner, shareholder, special counsel, of counsel, or senior counsel, five percent of the ~~rates previously~~initial rate charged in the most recent interim fee application approved by the Court; or

   ii. For any paraprofessional, five percent of the initial rate charged in the most recent interim fee application approved by the Court; or

   ~~ii.~~iii. For associates or non-owner professionals engaged in their field of practice for a period of 10 or fewer years:

      1. ~~Seven percent of the rates previously charged as~~As a result of the timekeeper's advancing seniority, seven percent of the

---

[2] Notwithstanding this provision, for rate increases ~~scheduled to take effect in January 2019, the required~~occurring before entry of this Order, constructive notice ~~period~~ shall be ~~reduced to seven calendar days~~sufficient.
[3] ~~If strict compliance with the notice requirements in this Order is not possible, professionals should disclose rate increases as soon is is practicable but *no later than* seven days after the increase is proposed.~~

3

initial rate charged in the most recent interim fee application approved by the Court; and

2. ~~Five percent of the rates previously charged for~~For any reason other than a timekeeper's advancing seniority, five percent of the initial rate charged in the most recent interim fee application approved by the Court.

4. These ~~caps~~standards shall not apply to associates or other non-owner timekeepers who are promoted to a position of owner, director, partner, shareholder, special counsel, or senior counsel provided that the rate increases are otherwise consistent with the rates charged by peers of similar skill and seniority within the timekeeper's organization working on these cases.

5. The term "rate increases" includes any increase in rates above those ~~initially~~ charged in the most recent interim fee period, whether denominated "step increases" or otherwise, but does not include fee adjustments made to "gross up" fees to offset the effect of any Commonwealth tax on professional fees not in existence at the commencement of a professional's engagement.[4]

6. To the extent that a rate adjustment in any amount results from a timekeeper's developing skill, experience, or professional advancement, the fee applicant must:[5]

   i. Disclose the firm's complete hourly rate schedule, by year of bar admission, both before and after implementation of the rate adjustment or, in the case of financial advisors, by title; and

   ii. Describe the mechanism or methodology used to adjust rates based on a timekeeper's developing skill, experience, or professional advancement; and

   iii. Certify that the rate adjustments imposed for timekeepers working on these Title III cases are consistent, both in amount and timing, with those imposed for timekeepers in the same professional services organization not working on these Title III cases.

c) Whenever possible, the following tasks should be performed by Puerto Rico counsel or co-counsel, and the failure delegate such matters to Puerto Rico counsel may be a factor in the reasonableness analysis:

---

[4] To the extent such a fee adjustment is ~~necessary~~warranted, professionals should calculate the adjustments as a single line item addition to total fees requested.  No adjustments to timekeeper hourly billing rates~~, rates~~ (other than those embodied in the single line item adjustment), beyond those authorized in this Order, shall be imposed to offset any tax withholding or liability.

[5] This subparagraph 2(b)(6) shall not apply to flat fee professionals or those with a single contractually-capped blended rate.

4

1.   Routine claims objections and responses;

2.   Motions to assume or reject executory contracts or leases and motions to fix
cure amounts related thereto;

3.   Routine avoidance actions;

4.   Routine motions to lift the automatic stay or for declaratory ruling on the
applicability of the automatic stay.

c)d)    The Fee Examiner, DebtorDebtors, Federal Oversight and Management Board or
official committee may object to rate increases for any reason, including, but not
limited to, their failure to comply with these presumptions.

d)e)    Other than agreement terms expressly addressing rate increases, the failure of a
professional fee agreement to comply with these presumptive standards shall not be a
basis for invalidating any other provision of the fee agreement, provided that the fee
agreement is otherwise valid and enforceable.

3.      The burden remains on each professional to demonstrate the reasonableness and
necessity of fees and expenses exceeding these standards in light of the facts and circumstances
presented.

4.      Nothing in this Order shall restrict the U.S. Trustee andor the Fee Examiner from
objecting to a professional's fees and expenses even within the parameters of these
presumptions.

5.      Nothing in this Order shall restrict the Fee Examiner from, in his discretion,
electing *not* to apply a presumption to a professional application if, in his judgment, application
of the presumption would be unreasonable under the circumstances.

6.      Nothing in this Order shall prevent any party from challenging or rebutting any of
the presumptions set forth herein, which are general guidelines only.

5

7.      Nothing in this Order shall alter the terms of the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932], which remains in full force and effect.

8.      Fees incurred by applicants to provide the basis for rebutting a presumption in an initially filed fee application are compensable if they are otherwise reasonable, taking into account the good faith basis for the applicant's position.

9.      The Fee Examiner may, upon notice and a hearing, request additional presumptions based on issues that emerge in the review of subsequent or pending but unresolved interim fee applications.

10.     This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

11.     This Order resolves docket entry no. 4371.

SO ORDERED.

Dated: _____, ~~2018~~2019

_____
LAURA TAYLOR SWAIN
United States District Judge

20278734.1

6

**McKinsey & Company, Inc.**                                        **EXHIBIT E**

**Title III Fee Summary**

**Fourth Interim Fee Period:**

| | Commonwealth Working Group Team Participation by Month[1] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates[2] | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
| June 2018 | 3 | 3 | 1 | 1 | 3 | 3 | $1,417,500.00 | 2,380 | $595.59 |
| July 2018 | 3 | 3 | 1 | 2 | 2 | 3 | $1,417,500.00 | 2,380 | $595.59 |
| August 2018 | 3 | 3 | 2 | 2 | 1 | 3 | $1,417,500.00 | 2,380 | $595.59 |
| September 2018[3] | 3 | 3 | 2 | 1 | 1 | 5 | $1,417,500.00 | 2,620 | $541.03 |
| | | | | | | | **$5,670,000.00** | **9,760** | **$580.94** |

| | PREPA Working Group Team Participation by Month[4] | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
| June 2018 | 2 | 1 | 2 | 1 | 1 | 2 | $740,000.00 | 1,460 | $506.85 |
| July 2018 | 2 | 1 | 2 | 1 | 1 | 2 | $740,000.00 | 1,460 | $506.85 |
| August 2018[5] | 2 | 1 | 2 | 2 | 2 | 1 | $740,000.00 | 1,700 | $435.29 |

---

[1] Unless otherwise noted, seven Commonwealth team members per month are designated as full time at an estimated 60 hours per week. All remaining team members are estimated at 25 hours per week.

[2] Includes senior associates.

[3] Includes eight full time team members.

[4] Unless otherwise noted, three PREPA team members per month are designated as full time.

[5] Includes five designated full time team members.

| | | PREPA Working Group Team Participation by Month[4] | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
| September 2018[6] | 2 | 1 | 2 | 1 | 3 | 1 | $740,000.00 | 1,700 | $435.29 |
| | | | | | | | **$2,960,000.00** | **6,320** | **$468.35** |

| | | HTA Working Group Team Participation by Month | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |
| June 2018[7] | | 1 | 2 | 1 | | 2 | $310,000.00 | 1020 | $303.92 |
| July 2018[8] | | 1 | 2 | 1 | | 1 | $310,000.00 | 780 | $397.44 |
| August 2018[9] | | 1 | 2 | 1 | | | $310,000.00 | 540 | $574.07 |
| September 2018[10] | | 1 | 2 | 1 | 1 | | $310,000.00 | 780 | $397.44 |
| | | | | | | | **$1,240,000.00** | **3,120** | **$397.43** |

---

[6] Includes five designated full time team members.

[7] Includes three designated full time team members.

[8] Includes two designated full time team members.

[9] Includes one designated full time team member.

[10] Includes two designated full time team members.

2

| | | HTA Working Group Team Participation by Month | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | Senior Partners | Partners | Associate Partners | Engagement Managers | Associates | Business Analysts | Monthly Fee | Estimated Total Hours Reported | Estimated Blended Rate |

| | Overall Totals for All 3 Working Groups | $9,870,000.00 | 19,200 | $514.06 |
|---|---|---|---|---|

20247516.1

3