# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF No. 1074**<br><br>**This Objection relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

[*Caption Continued On Following Page*]

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

ANNE CATESBY JONES AND JORGE VALDES
LLAUGER, *et al.*

               Movants,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

            as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

               Respondent.

**OBJECTION OF THE PUERTO RICO ELECTRIC POWER AUTHORITY TO**
***MARRERO* PLAINTIFFS' MOTION FOR RELIEF FROM AUTOMATIC STAY**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

OBJECTION............................................................................................................................ 3

    I.      THE MOTION SHOULD BE DENIED AS MOVANTS HAVE FAILED
            TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY ................................... 3

    II.     IN THE ALTERNATIVE, THE COURT SHOULD DENY THE
            MOTION WITHOUT PREJUDICE UNTIL THE FIRST CIRCUIT HAS
            RULED ON THE RULE 23(f) PETITION ........................................................ 19

    III.    IN THE EVENT THE COURT GRANTS THE MOTION, THE COURT
            SHOULD LIMIT MOVANTS' RIGHTS TO SEEK DISCOVERY FROM
            PREPA ........................................................................................................ 20

CONCLUSION....................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Autoridad de Energia Electrica, et al. v. Jones, et al.*,
No. 18-8020 (1st Cir. Oct. 15, 2018) .................................................................................... 1

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
217 F. Supp. 3d 508 (D.P.R. 2016)................................................................................... 7, 8

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
369 B.R. 87 (D.P.R. 2007)................................................................................................... 7

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
28 B.R. 324 (Bankr. S.D.N.Y. 1983) ................................................................................. 19

*Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer)*,
202 B.R. 341 (E.D.N.Y. 1996) .......................................................................................... 11

*FCC v. NextWave Pers. Commc'ns Inc.*,
537 U.S. 293 (2003)........................................................................................................... 11

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. Of PREPA Bondholders (In re Fin.
Oversight & Mgmt. Bd.)*,
899 F.3d 13 (1st Cir. 2018)................................................................................................... 8

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284 (S.D.N.Y. Aug 4, 2006) ....................... 17

*Ill. Brick Co. v. Illinois*,
431 U.S. 720 (1977)....................................................................................................... 2, 18

*In re 234-6 West 22nd St. Corp.*,
214 B.R. 751 (Bankr. S.D.N.Y. 1997) ................................................................................. 6

*In re Arnott*,
512 B.R. 744 (Bankr. S.D.N.Y. 2014) ............................................................................... 20

*In re Breitburn Energy Partners LP*,
No. 16-10992, 2017 WL 1379363 (Bankr. S.D.N.Y. Apr. 14, 2017)................................... 8

*In re Cummings*,
221 B.R. 814 (Bankr. N.D. Ala. 1998) ................................................................................ 9

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
No. 17-BK-3283, 2017 WL 7160704 (D.P.R. Aug. 18, 2017)........................................... 22

*In re Fin. Oversight & Mgmt. Bd. For Puerto Rico*,
No. 17-BK-3283, 2017 WL 7161034 (D.P.R. July 7, 2017) .............................................. 11

ii

**TABLE OF AUTHORITIES**

(continued)

**Page(s)**

*In re Gatke Corp.*,
  117 B.R. 406 (Bankr. N.D. Ind. 1989) ................................................................... 13

*In re Harris*,
  85 B.R. 858 (Bankr. D. Colo. 1988) ...................................................................... 21

*In re Jefferson Cnty.*,
  491 B.R. 277 (Bankr. N.D. Ala. 2013) .................................................................... 5

*In re Mildred Deli Grocery, Inc.*,
  No. 18-10077, 2018 WL 1136017 (Bankr. S.D.N.Y. Feb. 28, 2018)........................ 10, 14, 15

*In re Motors Liquidation Co.*,
  No. 09- 50026, 2010 WL 4630327 (S.D.N.Y. Nov. 8, 2010)................................. 16

*In re Murrin*,
  477 B.R. 99 (D. Minn. 2012) ................................................................................ 9

*In re Northwest Airlines Corp.*,
  No. 05-17930, 2006 WL 694727 (Bankr. S.D.N.Y. Mar. 13, 2006) ..................... 13

*In re Plumberex Specialty Prod., Inc.*,
  311 B.R. 551 (Bankr. C.D. Cal. 2004)................................................................. 15

*In re R.J. Groover Construction, L.L.C.*,
  411 B.R. 460 (Bankr. S.D. Ga. 2008) ................................................................ 10, 20, 21

*In re Residential Capital, LLC*,
  No. 12-12020, 2012 WL 3860586 (Bankr. S.D.N.Y. Aug. 8, 2012)........................ 12, 17, 21

In re Robertson,
  244 B.R. 880 (Bankr. N.D. Ga. 2000) ................................................................ 15

*In re Taub*,
  413 B.R. 55 (Bankr. E.D.N.Y. 2009)................................................................... 9

*In re Unanue-Casal*,
  159 B.R. 90 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ...................... 6, 7, 15

*Marrero Rolón, et al. v. Shell Trading (US) Co.*,
  No. 16-8049 (1st Cir. Nov. 14, 2016) .................................................................. 18

*Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.*,
  No. 15-01167 (D.P.R. Aug. 05, 2016) ................................................................ 17

## TABLE OF AUTHORITIES

(continued)

Page(s)

*Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.*,
No. 15-01167 (D.P.R. Oct. 19, 2018) ......................................................... 14

*Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.*,
No. 15-01167 (D.P.R. Oct. 20, 2016) ......................................................... 19

*Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.*,
No. 15-01167 (D.P.R. Sept. 30, 2018) .............................................. 1, 3, 13

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
362 B.R. 49 (B.A.P. 1st Cir. 2007) ............................................................. 5

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
474 U.S. 494 (1986) .................................................................................... 4

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
537 B.R. 128 (Bankr. D.P.R. 2015) ........................................................... 5

*Peaje Invs. LLC v. Garcia-Padilla*, Nos. 16-2365, 16-2384, 16-2696,
2016 U.S. Dist. LEXIS 153711 (D.P.R. Nov. 2, 2016) ............................. 7

*Peerless Ins. Co. v. Rivera*,
208 B.R. 313 (D.R.I. 1997) ....................................................................... 21

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
980 F.2d 110 (2d Cir. 1992) ..................................................................... 12

*Soares v. Brockton Credit Union (In re Soares)*,
107 F. 3d 969 (1st Cir. 1997) ..................................................................... 4

*Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*,
907 F.2d 1280 (2d Cir. 1990) ........................................................ 6, 7, 20

*Unisys Corp. v. Dataware Prods., Inc.*,
848 F.2d 311(1st Cir. 1988) ....................................................................... 5

**STATUTES**

11 U.S.C. § 362(a) ......................................................................................... 4

11 U.S.C. § 362(d)(1) .................................................................................... 6

28 U.S.C. § 157(b)(5) .................................................................................. 20

48 U.S.C. § 2101 ......................................................................................... 11

To the Honorable United States District Court Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), on behalf of the Puerto Rico Electric Power Authority (the "Debtor" or "PREPA"), pursuant to the authority granted to it under the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017, respectfully submits this objection (the "Objection") to the Marrero *Plaintiffs' Motion for Relief from Automatic Stay* [No. 17 BK 4780; ECF No. 1074] (the "Motion") filed by Anne Catesby Jones and Jorge Valdes Llauger, and the class they represent (collectively, "Movants").[2] The Debtor respectfully requests that the Court deny the Motion for the reasons set forth below.[3]

## PRELIMINARY STATEMENT

1. Movants are seeking to lift the automatic stay to proceed with prepetition general unsecured claims against PREPA and certain non-debtor defendants[4] in the prepetition action captioned *Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.*, No. 15-01167 (the "Marrero Action") pending in the District Court.[5] As further explained below, the Motion

---

[2]   On September 30, 2018, the United States District Court for the District of Puerto Rico (the "District Court") certified Movants' class. *See Opinion and Order, Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.*, No. 15-01167 (D.P.R. Sept. 30, 2018) [ECF No. 623]. On October 15, 2018, PREPA and the Non-Debtor Defendants (as defined below) filed a petition with the United States Court of Appeals for the First Circuit seeking an interlocutory appeal of the District Court's order granting class certification under Federal Rule of Civil Procedure 23(f). *See Autoridad de Energia Electrica, et al. v. Jones, et al.*, No. 18-8020 (1st Cir. Oct. 15, 2018) [ECF No. 00117352964] (the "Rule 23(f) Petition"). The Rule 23(f) Petition was fully briefed last year and is pending decision by the First Circuit.

[3]   The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the Debtors' representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized AAFAF to file this Objection on behalf of the Debtor.

[4]   The "Non-Debtor Defendants" include Petrobras America Inc., Petroleo Brasileiro S.A., Shell Trading (US) Company, Carlos R. Mendez & Associates, Trafigura A.G., Trafigura Beheer B.V., Trafigura Limited, Trafigura Argentina S.A., PetroWest, Inc., Vitol, S.A., Inc., Vitol, Inc., Inspectorate American Corporation, Core Laboratories N.V. d/b/a Saybolt Laboratory, Altol Environmental Services, Inc. d/b/a Altol Enterprises, and Altol Chemical Environmental Laboratory Inc. d/b/a Alchem Laboratory.

[5]   In a footnote to the Motion, Movants improperly request that the Court confirm that the Class Certification Order and Order Extending Modified Stay (each as defined below) do not violate the automatic stay. *See* Motion at 10, n.33. Burying this request in a footnote does not eliminate the need for Movants to properly seek such declaratory relief under Federal Rules of Bankruptcy Procedure 7001 and 7003 and Rule 4001-1 of the Local

should be denied as Movants have failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code"). Contrary to Movants' claims, the Marrero Action is still in the preliminary stages of litigation: merits discovery has not even commenced and trial has not even been scheduled. Allowing Movants to proceed with the Marrero Action would require PREPA to spend a significant amount of time and money engaging in discovery and litigating the action while prejudicing other similarly situated creditors of PREPA, who must wait for their claims to be addressed in the Title III claims resolution process. Movants' claim that PREPA will only suffer minimal harm because Movants will focus their discovery efforts on the Non-Debtor Defendants is illusory. As Movants themselves have acknowledged, PREPA is a critical party to the Marrero Action and controls a substantial portion of evidence related to Movants' claims. Moreover, to recover against any defendant—including the Non-Debtor Defendants—Movants must prove their claims against PREPA. That is because Movants are indirect purchasers from the Non-Debtor Defendants, and thus, Movants cannot recover from the Non-Debtor Defendants under *Ill. Brick Co. v. Illinois*, 431 U.S. 720 (1977), unless they prove PREPA is liable as a co-conspirator. PREPA is thus, by legal necessity, a central defendant in Movants' case. Considering the foregoing, all of the *Sonnax* factors weigh in favor of maintaining the automatic stay and denying the Motion.

       2.     Movants' motion is also procedurally improper insofar as it requests relief from

---

Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico. Moreover, the *Stipulation, Agreement and Order Granting Limited Relief from the Automatic Stay* [No. 17-BK-04780; ECF No. 326] (the "Stipulation") is crystal clear on this point. In the Stipulation, the parties agreed "that the stay [shall] only be lifted for class certification discovery and briefing and the Marrero Court's ruling on Plaintiff's Motion for Class Certification." Stipulation at G. The parties further agreed this relief would not require "PREPA to expend time and resources beyond those required to participate in and complete class certification discovery and briefing, which would divert PREPA's attention away from its restructuring efforts." *Id*. Accordingly, the Court should dismiss Movants' request for declaratory relief as unnecessary and procedurally improper.

the automatic stay as to the Non-Debtor Defendants. Movants' claims against the Non-Debtor

Defendants are stayed by order of the District Court, not the automatic stay. *See Order* at 1,

*Marrero-Rolon, et al. v. Puerto Rico Electric Power Authority, et al.,* No. 15-01167 (D.P.R.

Sept. 30, 2018) [ECF No. 624] (the "Order Extending Modified Stay").[6] Whether and to what

extent the Order Extending Modified Stay should be modified to allow Movants to lift the stay

against the Non-Debtor Defendants should be raised with the District Court in the first instance.

3.      At a minimum, the Court should deny the Motion without prejudice to re-filing

once the First Circuit has ruled on PREPA's and the other Non-Debtor Defendants' fully-briefed

Rule 23(f) Petition appealing the District Court's decision certifying the class in the Marrero

Action. If the First Circuit reverses the District Court's class certification ruling, PREPA would

not have to incur significant, otherwise unrecoverable expense to conduct discovery on the class

members and to issue notice to such members. As discussed below, and as Movants concede, the

information necessary to identify potential class members and complete the noticing process is

contained in PREPA's business records. In the event that the First Circuit grants the Rule 23(f)

Petition and reverses the District Court, class notice and any scheduling of discovery would

become moot, or at the very least, substantially reduced. While PREPA believes the Marrero

Action is without merit and is prepared to defend itself if necessary, lifting the automatic stay

now, particularly given the early stages of the ligation, would cause unnecessary expense if the

Rule 23(f) Petition is granted.

### OBJECTION

## I.      THE MOTION SHOULD BE DENIED AS MOVANTS HAVE FAILED TO ESTABLISH CAUSE EXISTS TO LIFT THE STAY

4.      Upon commencement of a Title III case, Bankruptcy Code section 362(a), made

---

[6]   The Order Extending Modified Stay is attached as Exhibit 11 to the *Declaration of Howard S. Steel in Support of Motion for Relief from Automatic Stay* [No. 17 BK 4780; ECF No. 1074-1] (the "Steel Declaration").

3

applicable by PROMESA section 301(a), provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title." 11 U.S.C. § 362(a). The application of Bankruptcy Code section 362(a) to the Debtor's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [No. 17-BK-3283; ECF No. 543].

5.      "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)*, 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986). The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection' (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015). The broad scope of the automatic stay serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing spell" essential to (a) the preservation of the debtor's property for the collective benefit of the creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts without undue distraction or interference. *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d 311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'" (citation

4

omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in state court, a municipality will not have the time, opportunity or ability to confirm a plan"); *Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007) (quoting H.R. Rep. No. 95-595 at 340 (1977) ("[O]ne of the fundamental purposes of the automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of the financial pressures that drove him into bankruptcy.'").

6.      An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West 22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997). Bankruptcy Code section 362(d)(1), made applicable by PROMESA section 301(a), provides that a court may grant relief from the automatic stay "for cause." *See* 11 U.S.C. § 362(d)(1). "Cause" is not defined in the Bankruptcy Code. *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994). To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1)    whether relief would result in complete or partial resolution of the issues;

(2)    the lack of any connection with or interference with the bankruptcy case;

(3)    whether the foreign proceeding involves the debtor as fiduciary;

(4)    whether a specialized tribunal has been established to hear the cause of action at issue;

(5)    whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)    whether the action essentially involves third parties rather than the debtor;

(7)    whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)   the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)   whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)   the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

7.      Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007)); *In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, Nos. 16-2365, 16-2384, 16-2696, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. Of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in Sonnax and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

8.      No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it. *Brigade*, 217 F. Supp. 3d at 529 n.12. The movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See*

6

*In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017). Here, the *Sonnax* factors squarely support maintaining the automatic stay and merit against awarding the remedy Movants seek.

9.    **_Sonnax_ Factor 1:** The first *Sonnax* factor—whether relief will result in a partial or complete resolution of the issues—weighs against lifting the automatic stay. The first *Sonnax* factor does not turn on whether the issues in the underlying litigation would be resolved if the stay were lifted. If it did, the first *Sonnax* factor would always favor lifting the stay because allowing litigation to proceed always brings it closer to resolution. Rather, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case. *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan"); *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) (characterizing this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues").

10.    Here, Movants do not identify any issue related to the Title III cases that would be resolved by allowing Movants to proceed with the Marrero Action. Rather, Movants argue that "[g]iven the motion practice that has occurred and the completion of the first phase of discovery, the *Marrero* Action is at a state where lifting the automatic stay is warranted." Motion at 18. This conclusory argument assumes its own answer and ignores the substantial amount of work that still has to be done in that case:

- *The class was just certified and an appeal of that decision is pending*: As noted above, the District Court certified the class on September 30, 2018, and PREPA and the other Non-Debtor Defendants promptly filed an appeal of the decision under Rule 23(f). That appeal is fully briefed and waiting decision by the First

Circuit. If the appeal is successful and the class is decertified, then much of Movants' desired discovery into class members will be moot.

- *Merits discovery has not commenced*: As the Movants note, the District Court bifurcated discovery into two phases: class discovery and merits discovery. While class discovery was completed, merits discovery has not even commenced. *See* Motion at 6. The District Court noted the burden merits discovery will pose, observing that "[t]his case involves over a million class members, more than ten Defendants, and covers thousands of fuel oil shipments over a fourteen-year period, meaning that full discovery and the adjudication of the merits will be a complex and time-consuming process for the parties and the Court." Order Extending Modified Stay at 1. Nor has expert discovery or summary judgment briefing commenced.

- *Trial is not imminent*: A trial date has not even been set yet. As Movants acknowledge, "the parties still must complete merits discovery with 19 Defendants spanning a 14-year conspiracy. A trial is not imminent. It's not even remotely close." *Plaintiffs-Respondents' Answer to Defendants-Petitioners' Petition for Permission to Appeal Pursuant to Fed. R. Civ. P. 23(f)* at 16 (emphasis added), *Jones, et al. v. Autoridad de Energia Electrica,* No. 18-8020 (1st Cir. Oct. 25, 2018) [ECF No. 00117357407] (the "Answer to the Rule 23(f) Petition").[7]

- At best, Movants merely hold a prepetition unsecured claim against PREPA that may or may not have merit, and, in any case, will be addressed as part of PREPA's Title III claims process. Nothing in this litigation will advance PREPA's restructuring. To the contrary, it may, as shown below, interfere with the claims process and result in the material dilution of recoveries to similarly situated claimants. *See Memorandum Order Denying Michael Melendez's Urgent Motion Requesting the Lift of Stay* at 5, [No. 17-BK-3283; ECF No. 3749] ("Modification of the automatic stay would also interfere with the claims resolution process established by the Bankruptcy Code and incorporated into PROMESA, and would require Respondents to dedicate limited resources, including time, effort, and attention, to defending against Movant's claims. Movant's unsecured claims for monetary relief can instead be liquidated and addressed through the claims process, including proceedings in this Court if necessary.").

---

[7]   The Answer to the Rule 23(f) Petition is attached as Exhibit 15 to the Steel Declaration.

11.     The Marrero Action's relative infancy is in stark contrast to the cases cited by
Movants, where fact discovery was either completed or nearing completion and a trial date was
set.[8] Therefore, the first *Sonnax* factor supports denying the Motion.

12.     ***Sonnax* Factors 2 and 7**: The second *Sonnax* factor—the lack of any connection
with or interference with the bankruptcy case—and the seventh *Sonnax* factor—whether the
litigation could prejudice the interest of other creditors—also do not support lifting or modifying
the stay.

13.     First, lifting or modifying the stay to allow the resolution of Movants' claims in a
separate proceeding and forum would interfere with the centralized claims resolution process
contemplated under Title III. The claims adjustment process under Title III applies with respect
to all debts, claims, and liens asserted against PREPA (as such terms are defined in Bankruptcy
Code section 101). *See* 48 U.S.C. § 2101. The definition of "claim" in the Bankruptcy Code
"contemplates that all legal obligations of the debtor, no matter how remote or contingent, will
be able to be dealt with in the bankruptcy case . . . [and] permits the broadest possible relief in
the bankruptcy court." H.R. Rep. No. 95–595, at 309 (1977). Recognizing this principle, the
Supreme Court has held that a "claim" has "the broadest available definition." *FCC v. NextWave
Pers. Commc'ns Inc.*, 537 U.S. 293, 302 (2003).

14.     As disputed general unsecured creditors, Movants' claims are subject to the claim
resolution process that will be undertaken in the Title III cases. In fact, Movants have already

---

[8]     *See In re Mildred Deli Grocery, Inc.,* No. 18-10077, 2018 WL 1136017, at *4 (Bankr. S.D.N.Y. Feb. 28, 2018)
("All discovery and the majority of pre-trial motions have been completed and the matter is ready for trial."); *In
re R.J. Groover Construction, L.L.C.*, 411 B.R. 460, 464 (Bankr. S.D. Ga. 2008) ("[M]uch of the discovery has
been completed."); *Crown Heights Jewish Community Council, Inc. v. Fischer (In re Fischer)*, 202 B.R. 341,
355 (E.D.N.Y. 1996) ("[D]iscovery is nearing its completion."); *In re Fin. Oversight & Mgmt. Bd. For Puerto
Rico*, No. 17-BK-3283, 2017 WL 7161034, at *1 (D.P.R. July 7, 2017) (liability on takings claim had already
been determined, discovery was completed, and a trial on damages had been scheduled for three weeks after the
commencement date of the debtor's Title III case).

filed two proofs of claim against PREPA: proofs of claim numbered 48925 and 48936.[9] Lifting

the stay to require the Debtor to defend Movants' claims separately in a different forum would

undermine that process and upend the "strong bankruptcy code policy that favors centralized and

efficient administration of all claims in the bankruptcy court . . . ." *See Publicker Indus. Inc. v.*

*United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d 110, 117 (2d Cir. 1992) (citations

omitted); *see also In re BFW Liquidation, LLC*, No. 09-00634-BGC-11, 2009 WL 8003536, at

*3 (Bankr. N.D. Ala. Sept. 14, 2009) ("[T]he effect of lifting the stay for all such claimants and

requiring debtors to defend lawsuits in diverse forums merely to establish what share, if any, the

claimants filing those suits will have in whatever is left of bankruptcy estates would hinder the

goals of the automatic stay and the summary process for adjudicating and liquidating claims.").

15.     Second, lifting or modifying the stay to allow the Marrero Action to continue will

interfere with the Title III case by diverting the Debtor's attention and resources to defending

Movants' claims in another forum and will encourage other claimants to seek similar relief.

Should every plaintiff with an asserted claim be given carte blanche to litigate their claims, the

combined result would have a substantial and negative impact on the Debtor's fiscal plan and

budget. This would impede the restructuring process, and should be avoided. *See, e.g.*, *In re*

*Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8,

2012) (denying lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts

would hinder the Debtors' attempts to reorganize by forcing the Debtors to utilize time and

resources that would otherwise be spent in resolution of the Debtors' chapter 11 cases."); *In re*

*Gatke Corp.*, 117 B.R. 406, 410 (Bankr. N.D. Ind. 1989) (denying motion to lift stay to allow

state court suit to proceed against debtor, even though stay of litigation would cause hardship to

---

[9]   PREPA reserves all rights, arguments, objections, and defenses to object to any proofs of claim filed by
Movants.

defendant, because granting relief from stay would, among other things, encourage the filing of "similar requests for relief by plaintiffs of pending lawsuits"); *In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 694727, at *2 (Bankr. S.D.N.Y. Mar. 13, 2006) ("To allow the automatic stay to be lifted with respect to this action at this time would prompt similar motions and require the Debtors to spend an inordinate amount of time and money on litigation and detract from the Debtors' attempts to restructure . . . interfere[ing] with judicial economy and the Debtors' process of reorganization." (citations omitted)).

16.     Movants' attempt to disguise the burden of proceeding with the Marrero Action on PREPA by asserting that their discovery requests will focus on the Non-Debtor Defendants rings hollow. *See* Motion at 17. Before merits discovery even commences, if PREPA's appeal of class certification is not successful, merely complying with Movants' proposed notice protocol would require PREPA—and PREPA alone—to expend significant resources. The certified class covers a *15-year period* and includes "all persons or entities that paid a fuel oil surcharge on their electricity bill to PREPA during the period starting on January 1, 2002 and ending on April 30, 2016." *Opinion and Order* at 22, *Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.,* No. 15-01167 (D.P.R. Sept. 30, 2018) [ECF No. 623] (the "Class Certification Order").[10] The Class Certification Order requires the parties to schedule discovery needed to identify all class members and undertake steps to prepare and serve notice upon the class. *Id.* at 23. As a practical matter, PREPA will likely be the sole repository of the vast majority of this discoverable evidence. As acknowledged by the District Court in the Class Certification Order, "PREPA's electronic business records—which will serve to readily identify all the members of the class—reflect more than a million customers." *Id.* at 4. The Non-Debtor Defendants have

---

[10]   The Class Certification Order is attached as Exhibit 10 to the Steel Declaration.

similarly asserted that PREPA "has the custody and control of most, if not all, of the information regarding the putative class members." *Motion to Modify Partial Stay Order and Judgment Staying Case, or in the Alternative, for Stay of Proceedings Pending Petition for Leave to Appeal* at 9, *Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.,* No. 15-01167 (D.P.R. Oct. 19, 2018)  [ECF No. 627] (the "Motion to Modify Partial Stay").[11] None of this information is in anyone's custody other than PREPA's. And PREPA would be required to disburse significant funds to fulfill its obligations under the Class Certification Order, interfering with PREPA's Title III case and overall restructuring by diverting critical funds from its recovery efforts.[12]

17.     After expending significant resources to identify the class members and serve notice of the certification on such members, PREPA would still need to spend considerable time and expense conducting and finalizing merits and expert discovery, attending pretrial hearings, preparing and filing the pretrial report, and litigating the ensuing trial. As the District Court observed, "because PREPA allegedly had a central role in this conspiracy, it will possess a substantial portion of the relevant evidence." Order Extending Modified Stay at 1. Movants also

---

[11]   The Motion to Modify Partial Stay is attached as Exhibit 16 to the Steel Declaration.

[12]   Movants' reliance on *Mildred Deli Grocery* and *In re Robertson* to support the argument that lifting the stay will not harm PREPA's estate or prejudice the interests of PREPA's other creditors is misplaced. As mentioned above, in *Mildred Deli Grocery*, all discovery had been completed and the case was ready for trial. 2018 WL 1136017, at *4. Moreover, the primary reason for the debtor's bankruptcy in *Mildred* was the litigation that was the subject of the lift stay motion. *Id.* On the other hand, *In re Robertson* was "a no asset Chapter 7 proceeding which ha[d] basically run its course." 244 B.R. 880, 882 (Bankr. N.D. Ga. 2000). Most importantly, in *Robertson*, the insurer agreed to bear all litigation costs in the underlying lawsuit, thus neither the bankruptcy estate nor the debtor would suffer any pecuniary harm by lifting the stay. *Id.* The only inconvenience to the debtor that the court identified was that the debtor would have to appear at trial or a deposition. *Id.* at 883. Similarly, the facts of *C & A, S.E. v. Puerto Rico Solid Waste Mgmt. Auth.*, 369 B.R. 87 (D.P.R. 2007) and *In re Unanue-Casal*, 159 B.R. 90 (D.P.R. 1993), *aff'd*, 23 F.3d 395 (1st Cir. 1994), which movants cite in support of the argument that the Marrero Action will not interfere with the Title III case, are distinguishable. In *C & A*, the court found that in conjunction with the finding that mandatory abstention of a prepetition action to vacate an arbitration award was warranted, the stay should be lifted as the issue "is a non-core matter that cannot be finally adjudicated by the Bankruptcy Court." 369 B.R. at 94-95. And in *Unanue-Casal*, the court lifted the stay so the state court that "has more expertise and is more familiar with its own probate and contract laws than a Federal bankruptcy court" could continue to resolve the probate action that had been pending before it for three years. 159 B.R. at 97-99. Moreover, in *Unanue-Casal*, the court noted that due to the timing of the debtor's petition in relation to the closeness of the end of the state court trial, the court was "convinced the Debtor acted in bad faith when he filed for bankruptcy." *Id.* at 101-02.

seek to continue the litigation against all defendants, including PREPA. Although the proposed order attached to the Motion as Exhibit A (the "Proposed Order") indicates the Movants would be stayed from collecting any judgment against PREPA, any such judgment would still be a prepetition unsecured claim, potentially a large one if not vigorously defended, which would prejudice the interests of other claimants. Courts have denied requests to lift the automatic stay where the debtor would be required to expend its limited resources to defend against litigation. *See, e.g., In re Plumberex Specialty Prod., Inc.*, 311 B.R. 551, 563-64 (Bankr. C.D. Cal. 2004) (rejecting effort to lift stay in part because "the cost of protracted litigation of a separate proceeding in a non-bankruptcy forum would prejudice the interests of other creditors of the estate"); *In re Motors Liquidation Co.*, No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. Nov. 8, 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that action" and thus "would prejudice the interests of other creditors"). PREPA will not be the discovery target of last resort: in most instances, it will be the only resort in town. Thus, *Sonnax* factors 2 and 7 weigh in favor of denying the Motion.

18.     Moreover, regardless of any amorphous and self-serving discovery constraints Movants represent they will place on themselves, the Non-Debtor Defendants have represented to PREPA that they have no intention of handcuffing their own defense by in any way limiting discovery against PREPA. Instead, the Non-Debtor Defendants have represented that they intend to seek full and complete discovery from PREPA to fully and fairly defend themselves against Movants' meritless claims. Thus, Movants' representations before this Court of minimizing PREPA's burden would do little to actually alleviate the cost and expense of merits discovery on PREPA.

13

19.     ***Sonnax* Factor 4**: The fourth *Sonnax* factor—whether a specialized tribunal has been established to hear the cause of action at issue—does not support granting the Motion. The Motion seeks to enforce Movants' purported claims against PREPA in the District Court. *See* Motion at 1. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

20.     ***Sonnax* Factor 5**: The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion. No insurer of the Debtor has assumed any financial responsibility for the claims at issue in the Marrero Action and Movants do not allege any facts to the contrary. Thus, *Sonnax* factor 5 weighs in favor of denying the Motion.

21.     ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion. This factor is not based on whether third parties are involved, but rather whether the action primarily involves third parties *other than* the debtor. *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, No. 05 Civ. 5704, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006) ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis omitted)).

22.     Here, Movants have expressly conceded that PREPA is the primary defendant in the litigation. Movants allege throughout the Third Amended Class Action Complaint that PREPA is a key party to the alleged conspiracy: contracting with the fuel suppliers, hiring the laboratories, accepting the non-compliant fuel oil, and passing the cost of the fuel oil directly on

14

to its customers. *See Third Amended Class Action Complaint* at 23-24, *Marrero Rolon, et al. v. Autoridad de Energia Electrica, et al.*, No. 15-01167 (D.P.R. Aug. 05, 2016)  [ECF No. 367] (the "Third Amended Complaint").[13] Movants' opportunistic attempt to re-cast PREPA as a "nominal" defendant is impeached by their arguments against characterizing PREPA as a victim of the alleged conspiracy: "Given the countless allegations against PREPA and its central role in the scheme, this characterization borders the farcical." *Plaintiffs' Answer to STUSCO's Petition for Permission to File Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)* at 15, *Marrero Rolón, et al. v. Shell Trading (US) Co.*, No. 16-8049 (1st Cir. Nov. 14, 2016) [ECF No. 00117079832] (the "Answer to the STUSCO Petition").[14]

23.    In fact, Movants are legally required to prove PREPA is liable as a member of the alleged conspiracy—even to recover against the Non-Debtor Defendants. That is because none of the class plaintiffs purchased anything from the Non-Debtor Defendants. Rather, the class plaintiffs allege fraud in the sale of fuel oil to PREPA that was burned to generate electricity, and then claim they were overcharged on their purchases of electricity from PREPA when the alleged fraudulent overcharges were passed through to plaintiffs on their electricity bills. However, *Ill. Brick Co. v. Illinois*, generally bars suits by indirect purchasers like the class plaintiffs. 431 U.S. at 729-736. In arguing against the application of *Ill. Brick*, Movants previously stated that they are not indirect purchasers because they purchase directly from PREPA who "contrived the scheme." Answer to the STUSCO Petition at 2.

24.    Thus, PREPA is not—and cannot be—a "nominal" defendant. The District Court has ruled that PREPA's membership in the alleged conspiracy is "a controlling question of law"

---

[13]  The Third Amended Complaint is attached as Exhibit 2 to the Steel Declaration.

[14]  The Answer to the STUSCO Petition is attached as Exhibit 1 to the *Declaration of Daniel S. Shamah in Support of the Objection of the Puerto Rico Electric Power Authority to* Marrero *Plaintiffs' Motion for Relief From Automatic Stay* (the "Shamah Declaration"), filed contemporaneously herewith.

15

because a determination that PREPA is not a co-conspirator would "require[] dismissal of Plaintiffs' suit, as Plaintiffs would lack standing" under *Ill. Brick*. *Memorandum & Order* at 2, *Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.,* No. 15-01167 (D.P.R. Oct. 20, 2016)  [ECF No. 418] (the "<u>STUSCO Order Certifying Appeal</u>").[15] To recover on their claims, even against the Non-Debtor Defendants, Movants must prove the allegations that allow them to avoid *Ill. Brick's* indirect purchaser bar: in Movants' own words that "PREPA lies at the center of the conspiracy. It does not 'pass on' or 'pass through' any overcharges; it *creates* them." Answer to the STUSCO Petition at 17 (emphasis in original).

25.     There does not seem to be any dispute that, according to Movants, PREPA "had a central role" in the alleged conspiracy and thus, "will possess a substantial portion of the relevant evidence." Order Extending Modified Stay at 1. As a primary party to the Marrero Action, PREPA will be required to expend its own funds to comply with the Class Certification Order and to defend itself in the underlying action. Accordingly, PREPA would be significantly impacted by the lifting of the automatic stay.[16] *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate]"). Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.

26.     Movants' assertion that the harm to PREPA will be minimal because PREPA will only remain a "nominal" defendant does not absolve PREPA of responsibility to defend itself.

---

[15]   The STUSCO Order Certifying Appeal is attached as Exhibit 2 to the Shamah Declaration.

[16]   Again, Movants' reliance on *Mildred Deli Grocery* in support of its argument that because Movants assert claims against third parties the stay should be lifted is misplaced. In *Mildred,* the court found that *Sonnax* factors 2, 4, and 10 "tip[ped] the scale in favor" of lifting the automatic stay. 2018 WL 1136017, at *4. This reliance was based on the fact that all discovery had been completed, the case was ready for trial, and the primary reason for the debtor's bankruptcy was the litigation that was the subject of the lift stay motion. *Id.*

16

Even assuming PREPA is not a primary party to the Marrero Action, PREPA still has to defend itself against allegations that it spent 15 years masterminding a conspiracy. At a minimum, PREPA would need to defend itself so that it can preserve any claims it may have against other parties in the unlikely event Movants' claims succeed.

27.    _**Sonnax** Factors 10 and 11_: The interests of judicial economy also weigh against stay relief. As discussed above, the Marrero Action is still at a preliminary stage before merits discovery has even commenced or a trial date set. Movants have filed two proofs of claim against PREPA, which should be addressed in the Title III claims resolution process along with all similar claims of other creditors of PREPA. Granting the Motion will neither promote judicial economy nor result in the timely resolution of the issues. Thus, _Sonnax_ factors 10 and 11 weigh in favor of denying the Motion.[17] _See In re Sonnax Indus., Inc.,_ 907 F.2d at 1287 (denying motion to lift the stay where, among other things, "the litigation in state court has not progressed even to the discovery stage [and] the bankruptcy proceeding provides a single, expeditious forum for resolution of the disputed issues."); _In re Residential Capital, LLC_, 2012 WL 3860586 at *6 (denying motion to lift the stay where, among other things, "there has been no motion practice addressing the sufficiency of the pleadings or of the evidence supporting the claims or defenses [and] [d]iscovery, trial preparation and, absent a settlement, trial all remain to be done").

28.    _**Sonnax** Factor 12_: The balance of the harms clearly favors denial of the Motion. The impact on PREPA if the Motion were to be granted would outweigh any harm that Movants

---

[17] Movants erroneously rely on _In re Arnott_, 512 B.R. 744 (Bankr. S.D.N.Y. 2014) as support for the argument that the interests of judicial economy are advanced by lifting the automatic stay. The underlying claims at issue in _Arnott_ were personal injury claims, of which the bankruptcy court could not adjudicate the merits under 28 U.S.C. § 157(b)(5). _Id._ at 754-55. In _Arnott_, the bankruptcy court had no other option but to lift the automatic stay because "a complete resolution [could not] be achieved in [the bankruptcy court]." _Id._ at 755. Here, even if this litigation involved a personal injury claim (which it does not), the Title III Court could still adjudicate it because it is an Article III court. Similarly, Movants' citation to _Groover_ as a "similarly advanced" case is misleading because, in contrast to that status of the Marrero Action, the underlying litigation in _Groover_ had advanced to the point that "much of the discovery ha[d] been completed." 411 B.R. at 464.

would suffer if the automatic stay remains in place. As previously noted, PREPA would likely be required to disburse a substantial amount of funds (and management/employee time) to comply with the Class Certification Order even though an appeal of that order is fully briefed and pending. The fact that the Marrero Action is not "even remotely close" to being trial ready, the diversion of PREPA's resources to defend Movants' claims in a non-Title III forum, the likelihood of similar creditors racing to the courthouse if the litigation gates are lifted, and the prejudice to the interests of other similarly situated creditors all indicate that PREPA will suffer significant harm if the stay is lifted.[18] Litigation of Movants' claims will not save PREPA any time or money. Rather, it will force PREPA to spend time and money now to liquidate claims that may only be paid, if at all, under a confirmed plan of adjustment.

29. On the other hand, dealing with Movants' claims as part of the Title III claims reconciliation process is the required hardship that is shared with other creditors so the Debtor can focus on its restructuring and recovery efforts for the benefit of all creditors, and would promote judicial economy. Any claims Movants may have can and should be dealt with during the Title III claims process, as any other creditor's claims. And, given the procedural stage of the Marrero Action in the District Court (no merits discovery haven been conducted), it is highly

---

[18] The harms that PREPA would suffer if the automatic stay is lifted are in stark contrast to the facts of the cases cited by Movants in support of their argument that the balance of the harms favors granting the Motion. *See, e.g., Groover*, 411 B.R. at 466 (finding that the only inconvenience the debtor would suffer was cooperating with the insurer on the defense of the case because the case was being defended by the insurer and the relief sought was limited to the proceeds of any applicable coverage); *Robertson*, 244 B.R. at 882-83 (finding that the only inconvenience the debtor would suffer was that the debtor would have to appear at trial or a deposition because the insurer had agreed to bear all litigation costs in the underlying lawsuit); *Peerless Ins. Co. v. Rivera*, 208 B.R. 313, 316-17 (D.R.I. 1997) (finding that debtor would suffer little harm from allowing the action to proceed because the bankruptcy case was filed on the eve of trial, which counsel indicated would be relatively simple and brief); *In re Harris*, 85 B.R. 858, 860-61 (Bankr. D. Colo. 1988) (finding that any hardship to debtor by lifting the stay to allow a determination of debtor's liability was outweighed by the movants' hardship because debtor's chapter 13 petition was filed a month before trial, movants were only seeking a recovery from solvent third-party (and not the debtor), and the debtor could reduce its hardship by stipulating to matters or by not defending the case to allow a default judgment to be entered); *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, No. 17-BK-3283, 2017 WL 7160704, at *1 (D.P.R. Aug. 18, 2017) (finding that because the litigation seeks only the production of documents by the Oversight Board (and not one of the Title III debtors), the litigation lacks a connection to, and would not interfere with, the Title III cases).

18

unlikely the resolution of the action would come any sooner than the resolution of Movants'

purported claims in the Title III case. Thus, on balance, *Sonnax* factor 12 weighs in favor of

denying the Motion.[19]

## II.    IN THE ALTERNATIVE, THE COURT SHOULD DENY THE MOTION WITHOUT PREJUDICE UNTIL THE FIRST CIRCUIT HAS RULED ON THE RULE 23(f) PETITION

30.    At a minimum, the Court should deny the Motion without prejudice to re-filing

once the First Circuit has ruled on the Rule 23(f) Petition. The Rule 23(f) Petition has been fully

briefed since November 2018 and is awaiting a decision by the First Circuit. Due to the advanced

stage of the Rule 23(f) Petition, any harm suffered by Movants would be minimal and would be

outweighed by the harm caused to PREPA if PREPA were forced to comply with the Class

Certification Order while the petition is pending. If the stay remains in place, if and when the

First Circuit grants the Rule 23(f) Petition and decertifies the class, class notice and any

scheduling of discovery would become moot, or at the very least, subject to substantial

modification or retraction. In contrast, if the automatic stay is lifted prior to the ruling on the

Rule 23(f) Petition, PREPA would incur significant, unrecoverable costs to conduct discovery on

the class members and issue notice to such members in accordance with the Class Certification

Order. As discussed above, the information necessary to identify potential class members and

complete the noticing process is contained in PREPA's business records, which is not disputed

by Movants. *See* Answer to the Rule 23(f) Petition at 23 ("PREPA's monthly customer

transactional data includes all the information needed to separate the injured from the

uninjured."). Given Movants' status as prepetition general unsecured creditors (among thousands

---

[19]    The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; and (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor) are not addressed as they are inapplicable here.

of other similarly situated creditors), there is no urgency justifying potentially requiring the Debtor to expend such significant resources to comply with an order that may very well become moot in the near term.

### III. IN THE EVENT THE COURT GRANTS THE MOTION, THE COURT SHOULD LIMIT MOVANTS' RIGHTS TO SEEK DISCOVERY FROM PREPA

31. In the event the Court finds that the balance of the *Sonnax* factors support granting the Motion, the Court should modify the Proposed Order to provide that Movants may only seek discovery against PREPA as a last resort after seeking judicial determination. Currently, the Proposed Order provides that Movants may "seek discovery from PREPA only for information exclusively in its possession." Proposed Order ¶ 2.c. As discussed above, PREPA is in custody and control of most, if not all, of the information related to class members and a substantial portion of all other evidence related to the alleged claims. To protect PREPA's limited resources and pending the First Circuit's decision on the Rule 23(f) Petition, Movants should first exhaust all other resources before returning to this Court to seek modification of the automatic stay to seek discovery from PREPA. At that time, the scope of Movants' discovery from PREPA will be better developed. Without such protections, Movants will have a license to serve discovery requests on PREPA at the first sign of any resistance to such discovery from other parties.

<u>**CONCLUSION**</u>

32. Movants have failed to establish extraordinary circumstances that justify lifting the automatic stay in the Debtor's Title III case to allow the Marrero Action to proceed. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: March 8, 2019
San Juan, Puerto Rico

Respectfully submitted,

**THE PUERTO RICO FISCAL AGENCY AND ADVISORY AUTHORITY, as Fiscal Agent for PREPA**

By: */s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Phone: (787) 705-2171
Fax: (787) 936-7494
Email: lmarini@mpmlawpr.com
cvelaz@mpmlawpr.com


By: */s/ Daniel S. Shamah*
Nancy N. Mitchell (*admitted pro hac vice*)
Daniel S. Shamah (*admitted pro hac vice*)
Diana M. Perez (*admitted pro hac vice*)
**O'MELVENY & MYERS LLP**
7 Times Square
New York, New York 10036
Phone: (212) 326-2000
Fax: (212) 326-2061
Email: nmitchell@omm.com
dshamah@omm.com
dperez@omm.com

**THE PUERTO RICO ELECTRIC POWER AUTHORITY**

By: */s/ Arturo Díaz Angueria*
Arturo Díaz Angueria
USDC No. 117907
Katiuska Bolaños Lugo
USDC No. 231812
**CANCIO, NADAL, RIVERA & DÍAZ, P.S.C.**
PO Box 364966
San Juan, Puerto Rico 00936-4966
Phone: (787) 767-9625
Fax: (787) 764-4430
Email: adiaz@cnrd.com
kbolanos@cnrd.com