# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>     Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br> (Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY ("PREPA"),<br><br>     Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 4780-LTS<br><br>**Re: ECF No. 1074**<br><br>**This Objection relates to PREPA and shall be filed in Lead Case No. 17 BK 3283-LTS and Case No. 17 BK 4780-LTS.** |

[*Caption Continued On Following Page*]

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

ANNE CATESBY JONES AND JORGE VALDES
LLAUGER, *et al.*

                  Movants,

v.

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

           as representative of

PUERTO RICO ELECTRIC POWER AUTHORITY
("PREPA"),

                Respondent.

**DECLARATION OF DANIEL S. SHAMAH IN SUPPORT OF
THE OBJECTION OF THE PUERTO RICO ELECTRIC POWER AUTHORITY
TO *MARRERO* PLAINTIFFS' MOTION FOR RELIEF FROM AUTOMATIC STAY**

To the Honorable United States District Court Judge Laura Taylor Swain:

I, Daniel S. Shamah, under penalty of perjury, declare as follows:

1.      I am an attorney admitted *pro hac vice* to practice in Puerto Rico and before this Court, and a partner of the law firm of O'Melveny & Myers LLP ("OMM"), counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority. OMM is a California limited liability partnership with an office at 7 Times Square, New York, NY 10036.

2.      I submit this declaration (the "Declaration") in support of the *Objection of the Puerto Rico Electric Power Authority to* Marrero *Plaintiffs' Motion for Relief from Automatic Stay*. This Declaration is based on my review of the true and accurate, publicly filed copies of the documents attached hereto.

3.      Attached as Exhibit 1 is a true and correct copy of the *Plaintiffs' Answer to STUSCO's Petition for Permission to File Interlocutory Appeal Pursuant to 28 U.S.C. § 1292(b)*, *Marrero Rolón, et al. v. Shell Trading (US) Co.,* No. 16-8049 (1st Cir. Nov. 14, 2016) [ECF No. 00117079832].

Attached as Exhibit 2 is a true and correct copy of the *Memorandum & Order*, *Marrero-Rolon, et al. v. Autoridad de Energia Electrica, et al.,* No. 15-01167 (D.P.R. Oct. 20, 2016) [ECF No. 418].

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on March 8, 2019

_/s/ Daniel S. Shamah_ _____
Daniel S. Shamah

## **Exhibit 1**

**Answer to the STUSCO Petition**

No. 16-8049

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

_____

ISMAEL MARRERO ROLÓN, ANNE CATESBY JONES, JORGE VALDES
LLAUGER, PUERTO RICO BATHROOM REMODELING, INC.,
PERFORMANCE CHEMICALS COMPANY, INC.,

Plaintiffs - Respondents

v.

SHELL TRADING (US) COMPANY

Defendant - Petitioner

AUTORIDAD DE ENERGÍA ELÉCTRICA A/K/A PUERTO RICO ELECTRIC
POWER AUTHORITY; WILLIAM RODNEY CLARK; EDWIN RODRIGUEZ;
CÉSAR TORRES MARRERO; INSPECTORATE AMERICA CORPORATION;
CORE LABORATORIES N.V. D/B/A SAYBOLT; ALTOL CHEMICAL
ENVIRONMENTAL LABORATORY INC. D/B/A ALCHEM LABORATORY;
ALTOL ENVIRONMENTAL SERVICES, INC. D/B/A ALTOL ENTERPRISES;
PETROBRAS AMERICA INC.; PETROLEO BRASILEIRO S.A; CARLOS R.
MÉNDEZ & ASSOCIATES; TRAFIGURA A.G.; TRAFIGURA BEHEER B.V.;
TRAFIGURA LIMITED; TRAFIGURA ARGENTINA S.A.; PETROWEST,
INC.; VITOL S.A., INC.; VITOL, INC.; JOHN DOES 1-100,

Defendants

_____

On Appeal from the United States District Court
for the District of Puerto Rico
The Honorable Jay A. Garcia-Gregory
No. 3:15-cv-01167-JAG

_____

## PLAINTIFFS' ANSWER TO STUSCO'S PETITION FOR
## PERMISSION TO FILE INTERLOCUTORY APPEAL
## PURSUANT TO 28 U.S.C. § 1292(b)

_____

Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1918 Eighth Ave.
Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
steve@hbsslaw.com

Jane A. Becker Whitaker
USDC NUMBER 205110
P.O. Box 9023914
San Juan, Puerto Rico 00902
Telephone: (787) 754-9191
Facsimile: (787) 764-3101
janebeckerwhitaker.com

Elizabeth A. Fegan
Daniel J. Kurowski
Mark T. Vazquez
Andrew Gordon
HAGENS BERMAN SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Drive
Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
beth@hbsslaw.com
dank@hbsslaw.com
markv@hbsslaw.com
andrewg@hbsslaw.com

J. Barton Goplerud
Andrew Howie
SHINDLER, ANDERSON,
GOPLERUD, & WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
goplerud@sagwlaw.com

*Attorneys for Plaintiffs-Respondents*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiffs hereby state as follows:

Performance Chemicals Company, Inc. is a Puerto Rico Corporation, and no parent corporation or publicly held corporation holds more than 10% of its stock.

Puerto Rico Bathroom Remodeling, Inc. is a dissolved Puerto Rico Corporation, and no parent corporation or publicly held corporation holds more than 10% of its stock.

010476-11  914349 V1

# TABLE OF CONTENTS

$\underline{\textbf{Page}}$

I.    INTRODUCTION ...................................................................................1

II.    BACKGROUND ...................................................................................2

    A.    The Allegations of Plaintiffs' Third Amended Complaint ..................2

        1.    PREPA purchases fuel oil for the combustion of
            electricity. ...................................................................................2

        2.    PREPA uses the Fuel Oil Procurement Process to
            defraud Plaintiffs into paying more for Compliant
            Fuel Oil despite PREPA actually using less-expensive
            Non-Compliant Fuel Oil. ............................................................4

        3.    Defendants frustrate audits and cover-up the scheme
            for years in the face of internal, criminal, legislative,
            and media investigations. ............................................................6

    B.    The Magistrate and District Court Repeatedly Deny Defendants'
        Motions to Dismiss ...............................................................................8

III.    LEGAL STANDARD ...........................................................................10

IV.    ARGUMENT .........................................................................................11

    A.    The First Circuit Has Adopted a Policy Against Granting
        Interlocutory Appeals of Motions to Dismiss Regardless
        of Whether the Appeal Might Materially Advance the Ultimate
        Termination of the Litigation ................................................................11

    B.    There is No Substantial Ground for Difference of Opinion
        Where *Illinois Brick*'s Policies Are Not Implicated Here Because
        Plaintiffs Are the First, Intended, and Only Payers of the Illegal
        Overcharge ...........................................................................................14

V.    CONCLUSION ......................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re ATM Fee Antitrust Litig.*,
  686 F.3d 741 (9th Cir. 2012) ...................................................................16

*In re Beef Indus. Antitrust Litig.*,
  600 F.2d 1148 (5th Cir. 1979) ................................................................16

*Caraballo-Seda v. Municipality of Hormigueros*,
  395 F.3d 7 (1st Cir. 2005)...................................................................11, 12, 14

*Dickson v. Microsoft Corp.*,
  309 F.3d 193 (4th Cir. 2002) ................................................................16

*Fontana Aviation, Inc. v. Cessna Aircraft Co.*,
  617 F.2d 478 (7th Cir. 1980) ................................................................15

*Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*,
  424 F.3d 363 (3d Cir. 2005) ................................................................16

*Hudson v. Hudson*,
  475 F.3d 741 (6th Cir. 2007) ................................................................12

*Illinois Brick Co. v. Illinois*,
  431 U.S. 720 (1977)...................................................................*passim*

*Intel Corp. v. Commonwealth Sci. & Indus. Research Org.*,
  455 F.3d 1364 (Fed. Cir. 2006) ................................................................12

*Lane v. First Nat'l Bank*,
  871 F.2d 166 (1st Cir. 1989).................................................................11

*Lowell v. Am. Cyanamid Co.*,
  177 F.3d 1228 (11st Cir. 1999)................................................................16, 17

*McGillicuddy v. Clements*,
  746 F.2d 76 (1st Cir. 1984)................................................................11, 12

*Milbert v. Bison Labs., Inc.*,
  260 F.2d 431 (3d Cir. 1958) ................................................................10

*Oscarson v. Office of Senate Sergeant at Arms,*
    550 F.3d 1 (D.C. Cir. 2008) ................................................................12

*Palandjian v. Pahlavi,*
    782 F.2d 313 (1st Cir. 1986) ..............................................................13

*S. Orange Chiropractic Ctr., LLC v. Cayan LLC,*
    2016 WL 3064054 (D. Mass. May 31, 2016) ....................................13

*State of Ariz. v. Shamrock Foods Co.,*
    729 F.2d 1208 (9th Cir. 1984) ...........................................................17

*Waste Mgmt. Holdings, Inc. v. Mowbray,*
    208 F.3d 288 (1st Cir. 2000) ..............................................................11

## STATUTES

28 U.S.C. § 1292 .........................................................................*passim*

## I.   INTRODUCTION

Plaintiffs' complaint alleges a decades-long RICO scheme, whereby the residents of Puerto Rico have overpaid—potentially by the billions—for electricity via fuel oil surcharges on their monthly bills.  The scheme works as follows:  (1) Defendant Puerto Rico Electric Power Authority ("PREPA") buys more-expensive Compliant Fuel Oil from oil companies (the "Fuel Oil Suppliers"); (2) the Fuel Oil Suppliers actually deliver less-expensive Non-Compliant Fuel Oil, which PREPA willingly accepts; (3) PREPA hires third-party labs (the "Laboratory Participants") to test the Non-Compliant Fuel Oil, but also to falsify lab reports so as to pass off as Compliant Fuel Oil; (4) PREPA undisputedly charges 100% of the costs for the more-expensive Compliant Fuel Oil to its customers via a surcharge on electricity bills, despite knowingly receiving only Non-Compliant Fuel Oil; and (5) Defendants retain Plaintiffs' funds.  As both the Magistrate and district court noted, Plaintiffs and the citizens of Puerto Rico are the first, intended, and *only* victims of this scheme.  Plaintiffs have standing to sue, and the district court correctly denied the motions to dismiss and multiple motions for reconsideration.

Defendant Shell Trading (US) Company ("STUSCO") nonetheless petitions this Court for interlocutory review of an order denying those motions to dismiss, arguing the indirect purchaser rule of *Illinois Brick Co. v. Illinois*[1] should bar

---

[1] 431 U.S. 720 (1977).

Plaintiffs' claims.  Merits aside, STUSCO's petition ignores that this Circuit

"disfavor[s]" and generally does not permit interlocutory appeals of 12(b)(6)

motions.

Further, STUSCO's contention that there is substantial ground for

disagreement fails because the facts of this case do not align with the facts and

purpose of *Illinois Brick*.  In *Illinois Brick*, several layers of a distribution chain

separated the plaintiffs from the conspiracy, rendering their injury remote and

practically incalculable.  Here, Plaintiffs purchase directly from PREPA, who not

only contrived the scheme, but also admits to charging Plaintiffs the entirety of the

inflated fuel oil costs in question.  Such a situation does not even implicate *Illinois

Brick*.  An interlocutory appeal here would serve no purpose; one need not find an

exception to a rule where that rule has no application in the first place.  STUSCO's

appeal is premature and should be dismissed.

## II.     BACKGROUND

### A.     The Allegations of Plaintiffs' Third Amended Complaint

#### 1.     PREPA purchases fuel oil for the combustion of electricity.

Defendant PREPA supplies electricity to millions of residents in Puerto

Rico.[2]  PREPA produces that power for the most part by burning fuel oil, which

---

[2] ¶¶ 12-13.  All references to "¶ _" cited herein are to Plaintiffs' Third Amended
Complaint (Dkt. No. 367) unless otherwise indicated.

does not come cheap.[3]  PREPA pays billions of dollars every year for fuel oil, and

consequently Puerto Ricans pay electricity prices several times that of the average

United States resident.[4]  Naturally, some varieties of fuel oil cost more than

others.[5]  For instance, No. 2 fuel oil—a light, volatile fraction produced by

distilling crude oil—pollutes less and costs more.[6]  By contrast, No. 6 fuel oil—a

thick, sludge-like residual oil produced from the residue remaining after the lighter

fractions (such as No. 2 fuel oil) have been removed—contains significant

quantities of pollutants and costs less.[7]

PREPA has come under fire in the past for burning cheaper, dirtier fuel oil.

In 1999, PREPA entered into a consent decree with the EPA whereby it agreed not

to burn fuel oil with a sulfuric content greater than 0.50%.[8]  Consequently, PREPA

would have to purchase more expensive distillate oils to blend with No. 6 residual

oil to remain compliant.[9]

PREPA's Fuel Oil Office facilitates these purchases.  The Office negotiates

with the Fuel Oil Suppliers to supply PREPA with fuel oil that meets certain

---

[3] *Id.* ¶¶ 44-46.

[4] *Id.* ¶ 45.

[5] *Id.* ¶¶ 3, 51-56, 59, 75, 315.

[6] *Id.* ¶¶ 3, 51-52, 54-56, 59.

[7] *Id.* ¶¶ 3, 53-56, 59.

[8] *Id.* ¶¶ 1, 3, 127.

[9] *Id.* ¶ 3.

contractual specifications.[10] For example, a contract may indicate a maximum

sulfuric content or a minimum heating value (BTU/gal).[11] As one would expect,

these specifications impact the cost of the fuel oil; the better the quality of fuel oil,

the more PREPA must pay to procure it.[12] Yet, while PREPA may formally

contract for and indeed pay for fuel oil that meets contractual specifications and

complies with the consent decree ("Compliant Fuel Oil"),[13] in practice, PREPA

and the Fuel Oil Suppliers have conspired to something far more sinister.

### 2. PREPA uses the Fuel Oil Procurement Process to defraud Plaintiffs into paying more for Compliant Fuel Oil despite PREPA actually using less-expensive Non-Compliant Fuel Oil.

For nearly two decades, PREPA has been charging Puerto Rican citizens for

more-expensive, cleaner fuel oil that PREPA never actually receives or uses.[14] It

---

[10] *Id.* ¶ 58.

[11] *Id.* ¶¶ 59, 96.

[12] *Id.* ¶ 59.

[13] STUSCO incorrectly defines "Compliant Fuel Oil" and "Non-Compliant Fuel Oil" in its brief. *See* STUSCO Petition at 3-4. The dividing line between "Compliant" and "Non-Compliant Fuel Oil" is not drawn by sulfuric content alone. *See* ¶ 1. While sulfuric content determines whether PREPA complied with the EPA Consent Decree, Plaintiffs do not seek enforcement of the Consent Decree. Rather, *Plaintiffs* seek recovery of the *costs* being imposed on them. Given that many factors other than sulfur can impact the cost of fuel oil, STUSCO's suggestion that this case revolves solely around sulfur misrepresents Plaintiffs' allegations. *See*, *e.g.*, ¶¶ 53, 70, 96, 305.

[14] ¶¶ 103-04.

- 4 -

accomplishes this through a scheme that, although involving many individuals and moving parts, is rather simple in design.  That scheme works in the following way.

PREPA orders Compliant Fuel Oil from the Fuel Oil Suppliers.[15]  The Fuel Oil Suppliers, despite being paid for the more-expensive Compliant Fuel Oil, deliver less-expensive fuel oil (with PREPA's knowledge and consent) that does not meet contractual specifications ("Non-Compliant Fuel Oil").[16]  PREPA then hires third-party Laboratory Participants to test the Non-Compliant Fuel Oil and falsify laboratory reports to indicate the delivery of Compliant Fuel Oil.[17]  PREPA accepts the Non-Compliant Fuel Oil, but still charges the consumer the full cost of the more-expensive Compliant Fuel Oil.[18]  Residents pay a surcharge on their bills called the "compra de combustible [fuel oil purchase]," a rate that fluctuates monthly to permit 100% recovery of fuel oil costs.[19]  The Defendants finally exchange these ill-gotten funds amongst themselves in the form of monetary payments, gifts, favors, parties, and the like.[20]

---

[15] *Id.* ¶¶ 58-59.

[16] *Id.* ¶¶ 1-3, 57-63, 100.

[17] *Id.* ¶¶ 60-63, 69-72.

[18] *Id.* ¶¶ 63-67.

[19] *Id.* ¶¶ 64-67.

[20] *Id.* ¶¶ 73-78.

**3.**     **Defendants frustrate audits and cover-up the scheme for years in the face of internal, criminal, legislative, and media investigations.**

While certain internal investigations have attempted to blow the whistle on PREPA's fraud, the scheme was able to survive as long as it did due to significant efforts to conceal. Indeed, in as early as 2000, Puerto Rico's Office of the Comptroller began investigating PREPA's fuel oil procurement procedures.[21] The Comptroller's investigation revealed that a third-party laboratory required its employees to alter the results of 500 to 600 tests regarding the quality of fuel oil sold to PREPA.[22] After an employee attempted to expose the fraud, the laboratory terminated the employee.[23] Despite "learning" that the Fuel Oil Suppliers were delivering dirty fuel oil, PREPA took no action because internal employees were complicit in the fraud.[24] Ultimately, the comptroller's investigation uncovered the potential for serious fraud in the way PREPA procured its fuel oil, while ultimately concluding that PREPA had been overpaying for Non-Compliant Fuel Oil.[25]

Subsequent internal audits revealed similarly damning results, but PREPA ensured those results were never made public because the participants in the scheme were following its directives. For example, one lab, Defendant Alchem,

---

[21] *Id.* ¶ 81.

[22] *Id.* ¶ 83.

[23] *Id.* ¶¶ 83-85.

[24] *Id.*

[25] *Id.* ¶¶ 89, 93.

- 6 -

hired technical consultants to recalibrate its equipment to ensure that its test results
reflected the delivery of Compliant Fuel Oil despite actually testing Non-
Compliant Fuel Oil because, if it had not done so, PREPA was going to stop giving
it work.[26]  Another lab company implemented a set of policies, by agreement with
PREPA, never to communicate in writing any test results that showed the fuel oil
was non-compliant.[27]  A third lab company reported compliant test results to
PREPA before the fuel oil was even tested—because PREPA did not want the
actual results, just the paper trail to allow it to continue to accept dirty fuel.[28]

     In spite of Defendants' efforts to conceal their scheme, the matter slowly
became public knowledge in 2014, when media outlets began reporting on a lavish
retirement party attended by the world's major Fuel Oil Suppliers for an employee
who handled fuel oil contracts at PREPA.[29]  Plaintiffs thereafter filed this lawsuit
seeking recovery of the potentially billions in surcharges fraudulently imposed
upon them.

---

[26] *Id.* ¶¶ 259-74.

[27] *Id.* ¶¶ 172-86.

[28] *Id.* ¶ 130.

[29] *Id.* ¶¶ 75-76.  The Puerto Rico Comptroller faulted PREPA for allowing this
employee to enter into contracts with the Laboratory Participants to test millions of
barrels of fuel with no written agreement, in violation of Commonwealth law.
PREPA never even reprimanded the employee, and the co-defendants rewarded
him with, among other things, a retirement party estimated to have cost $150,000.
*Id.* ¶ 70.

- 7 -

**B.    The Magistrate and District Court Repeatedly Deny Defendants'
Motions to Dismiss**

Following the filing of Plaintiffs' complaint, the various Defendants filed

motions to dismiss Plaintiffs' complaint, which the district court referred to

Magistrate Carreño-Coll for a Report and Recommendation.  Some of those

motions, including STUSCO's, argued that Plaintiffs were "indirect purchasers" of

fuel oil and thus could not recover under *Illinois Brick* and its progeny.[30]

In *Illinois Brick*, the plaintiffs filed an antitrust action against certain

manufacturers of concrete block.[31]  Plaintiffs alleged those manufacturers engaged

in a horizontal price-fixing conspiracy and sold concrete block at inflated prices to

masonry contractors.[32]  The masonry contractors, who unwittingly overpaid for the

concrete block, then "used [the concrete blocks] to build masonry structures."[33]

"[T]hose structures [were thereafter] incorporated into entire buildings by general

contractors."[34]  And finally, those buildings were eventually sold to the plaintiffs.[35]

The Supreme Court denied the building owners standing as "indirect purchasers"

---

[30] STUSCO Mot. to Dismiss (Dkt. No.110), at 6-9.

[31] *Illinois Brick*, 431 U.S. at 737.

[32] *Id.*

[33] *Id.* at 726.

[34] *Id.*

[35] *Id.*

- 8 -

of the concrete blocks that were the actual subject to the price-fixing scheme.[36]

The Court reasoned that giving standing to parties with such "remote" proximity to the price-fixing scheme created risks of duplicative recovery and difficulties in apportioning damages.[37]

Here, relying on *Illinois Brick*, Magistrate Carreño-Coll recommended the district court deny any motion to dismiss based on characterizations of the Plaintiffs as "indirect purchasers."[38] Magistrate Carreño-Coll noted the "obvious difference" between the cases on which STUSCO relied and this case: PREPA, as a conspirator, bears "responsibility for inflating the fuel's price" and makes Plaintiffs "the first payers of inflated fuel prices outside the conspiracy, [and] the scheme's most direct victims."[39] Thus, "[t]he defendants . . . conveniently ignore the fact that their interpretation . . . would leave to the conspirators 'the fruits of their illegality.'"[40] This, she noted, "makes no sense," "is contrary to *Illinois*

---

[36] *Id.* at 747-48.

[37] *Id.* at 745 ("The apportionment of the recovery *throughout the distribution chain* would increase the overall costs of recovery by injecting extremely complex issues into the case; at the same time such an apportionment would reduce the benefits to each plaintiff by dividing the potential recovery among a much larger group.") (emphasis added).

[38] 9/29/15 Rep. & Recommendation (Dkt. No. 214), at 29.

[39] *Id.* at 28-29.

[40] *Id.* at 29 (quoting *Hanover Shoe, Inc. v. United Shoe Mach. Corp.*, 392 U.S. 481, 494 (1968)).

- 9 -

*Brick*'s purpose, and . . . cannot be permitted."[41]  Following objections from

Defendants and another round of briefing, the district court accepted the

magistrate's recommendation and denied the motions to dismiss in this respect.[42]

STUSCO subsequently filed a motion for reconsideration on the issue, and

the parties again briefed their arguments related to the indirect purchaser doctrine.

For the third time, the Court denied STUSCO's motion, noting that, "[a]s Plaintiffs

correctly point out, rather than creating an exception to the indirect purchaser

doctrine developed in [*Illinois Brick*], . . . the doctrine simply does not apply."[43]

Thus, the "case provides a 'fundamentally different factual scenario.'"[44]

While the district court certified the issue for interlocutory appeal, it noted

that it "stands by its holding concerning Plaintiffs' standing to sue in this case."[45]

### III.   LEGAL STANDARD

STUSCO petitions this Court pursuant to 29 U.S.C. § 1292(b)—a section

Congress intended to be "sparingly applied."[46]  "By their nature, interlocutory

---

[41] *Id.* at 29.

[42] 3/31/16 Mem. Op. & Order (Dkt. No. 254), at 12.

[43] 5/23/16 Order (Dkt. No. 305), at 1.

[44] *Id.* at 2.

[45] 10/20/16 Mem. & Order (Dkt. No. 418), at 3.

[46] *Milbert v. Bison Labs., Inc.*, 260 F.2d 431, 433 (3d Cir. 1958).

- 10 -

appeals are disruptive, time-consuming, and expensive."[47]  So while the Court of

Appeals retains discretion to permit them, "[i]nterlocutory appeals under 28 U.S.C.

§ 1292(b) are disfavored."[48]

## IV.   ARGUMENT

### A.   The First Circuit Has Adopted a Policy Against Granting Interlocutory Appeals of Motions to Dismiss Regardless of Whether the Appeal Might Materially Advance the Ultimate Termination of the Litigation

STUSCO petitions this Court for an interlocutory review of its motion to

dismiss.  Even putting aside the requirements of § 1292(b), such an appeal would

be premature.  The First Circuit, "[a]s a general rule, do[es] not grant interlocutory

appeals from a denial of a motion to dismiss."[49]  This rule "reflects [a] policy

preference against piecemeal litigation, as well as prudential concerns about

mootness, ripeness, and lengthy appellate proceedings."[50]  Indeed, even when this

Circuit has entertained such appeals, this Court has described it in hindsight as an

"error."[51]  Nor is the First Circuit alone in this opinion.[52]

---

[47] *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 294 (1st Cir. 2000).

[48] *Lane v. First Nat'l Bank*, 871 F.2d 166, 175 (1st Cir. 1989).

[49] *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005); *see also McGillicuddy v. Clements*, 746 F.2d 76, 77 n.1 (1st Cir. 1984).

[50] *Caraballo-Seda*, 395 F.3d at 9 (internal citations and quotation marks omitted).

[51] *McGillicuddy*, 746 F.2d at 77 n.1 ("[W]e would not normally allow an appeal from a denial of a motion to dismiss, and, with the benefit of hindsight, we admit our error in doing so in this case.").

In any event, STUSCO believes that because an appeal would have the potential to dispose of the case, it would save time and expense on behalf of the Court and parties by proceeding with one now.  But many interlocutory appeals of motions to dismiss have the potential to be dispositive, and that does not necessarily make them appropriate.  According to the First Circuit, in deciding whether it should hear an interlocutory appeal from the denial of a motion to dismiss, the fact that "appreciable trial time may be saved is *not* determinative."[53] Nor does it matter if that case has "tremendous implications," or if the appeal "might materially advance the ultimate termination of the litigation."[54]  STUSCO's arguments concerning the potentially dispositive nature of the appeal and the possibility of avoiding "expensive litigation" are therefore irrelevant.  An appeal of

---

[52] *See, e.g., Oscarson v. Office of Senate Sergeant at Arms*, 550 F.3d 1, 2 (D.C. Cir. 2008) ("denials of motions to dismiss are generally not reviewable"); *Hudson v. Hudson*, 475 F.3d 741, 743 (6th Cir. 2007) ("the denial of a motion to dismiss is an interlocutory order generally not appealable"); *Intel Corp. v. Commonwealth Sci. & Indus. Research Org.*, 455 F.3d 1364, 1369 (Fed. Cir. 2006) ("the denial of a motion to dismiss for lack of subject-matter jurisdiction on other grounds is generally not subject to interlocutory review").

[53] *Caraballo-Seda*, 395 F.3d at 9 (internal citations and quotation marks omitted) (emphasis added).

[54] *Id.* (internal citations and quotation marks omitted).

- 12 -

its motion to dismiss is premature at this point, and on this basis alone, the Court should deny STUSCO's petition.[55]

Moreover, STUSCO's insistence that the Court erroneously carved out "an exception" to the indirect purchaser rule—as opposed to finding that it simply has no application to this case—illustrates the ill-timed nature of an appeal at this point.  While the applicability of any co-conspirator exception to the indirect purchaser rule would be a controlling question of law, any question as to the "*extent* of such an exception is a classic example of what is not to be raised by intermediate appeals."[56]  That is because it is precisely "the kind of claim which an appellate court can better decide after the facts are fully developed."[57]  Put differently, any question involving the creation, scope, or applicability of an exception is one best answered after a chance for discovery, not before it.  And thus, this Court should deny STUSCO's petition.

---

[55] *See*, *e.g.*, *S. Orange Chiropractic Ctr., LLC v. Cayan LLC*, 2016 WL 3064054, at *2 (D. Mass. May 31, 2016) (denying motion to certify order denying motion to dismiss for interlocutory appeal despite the fact that "the caselaw [regarding the issue] is still evolving, and the Supreme Court tea leaves are hard to read").

[56] *Palandjian v. Pahlavi*, 782 F.2d 313, 314 (1st Cir. 1986) (emphasis in original).

[57] *Id.*

**B.      There is No Substantial Ground for Difference of Opinion Where
*Illinois Brick*'s Policies Are Not Implicated Here Because Plaintiffs Are
the First, Intended, and Only Payers of the Illegal Overcharge**

In addition to the fact that STUSCO inappropriately seeks interlocutory

appellate review of a motion to dismiss, STUSCO fails to demonstrate how there is

"substantial ground" for difference of opinion as to the Court's ruling.[58]  As

support for this point, both STUSCO and the district court note the different

approaches taken by the various Circuit Courts in adopting co-conspirator

exceptions to *Illinois Brick*.  But Plaintiffs do not dispute that some Circuits treat

the co-conspirator exception differently.  Rather, those differences simply do not

matter because this case presents a "fundamentally different factual scenario" to

the one presented in *Illinois Brick*.[59]   In attempting to overcome this deficiency,

STUSCO puts forth a strained analogy to that case.

As noted above, *Illinois Brick* involved a price-fixing scheme with an

extended distribution chain:  manufacturer defendants sold concrete bricks to

masonry contractors; masonry contractors built structures from concrete bricks and

sold them to contractors; contractors used the structures to construct buildings;

and, lastly, plaintiffs purchased the buildings.  Aside from the obvious fact that this

case does not involve an extensive distribution chain that would place Plaintiffs so

---

[58] *Caraballo-Seda*, 395 F.3d at 9.

[59] 9/29/15 Rep. & Recommendation (Dkt. No. 214), at 31 n.23.

- 14 -

far from the conspiracy, STUSCO's analogy fails for another simple reason. STUSCO asks the Court to compare PREPA to the *innocent* masonry contractors, labeling PREPA as the "direct purchaser."[60]  Defendants have even gone so far in the past as to call PREPA the "victim."[61]  Given the countless allegations against PREPA and its central role in the scheme, this characterization borders the farcical. If the Court accepted Defendants' position, the entire cartel would remain insulated from civil liability because only PREPA could have standing to sue the very cartel it engineered.  *Illinois Brick* does not require such illogical results.[62]

Indeed, the alleged conspiracy here does not even present the type of "pass-on" situation presented in *Illinois Brick*.  That is to say, there does not exist a horizontal conspiracy whose illegalities are then passed on vertically to Plaintiffs via innocent intermediaries.  Instead, this case presents a vertical conspiracy whose illegalities are *first* suffered by the Plaintiffs themselves.  Given PREPA's role in the scheme, it does not, as STUSCO claims, "overpa[y]" for fuel oil and then innocently pass a portion of those overcharges onto the consumer.  To the contrary,

---

[60] STUSCO Petition at 16.

[61] STUSCO Mot. for Reconsideration (Dkt. No. 292), at 3 n.2.

[62] *Fontana Aviation, Inc. v. Cessna Aircraft Co.*, 617 F.2d 478, 481 (7th Cir. 1980) ("We are not satisfied that the *Illinois Brick* rule directly applies in circumstances where the manufacturer and the intermediary are both alleged to be co-conspirators in a common illegal enterprise resulting in intended injury to the buyer.").

- 15 -

PREPA overcharges the consumers itself; in essence, PREPA advances Plaintiffs'

funds to the Fuel Oil Suppliers as part of the scheme, knowing they will be

recovered monthly.  In this sense, not even the cases from other Circuits that the

district court and Defendants believe illustrate substantial ground for disagreement

would bar the claims here, because those cases involved—innocent or not—at least

*some* intermediary between the plaintiffs and the overcharge they alleged to have

suffered from.[63]

If anything, this case factually resembles *Lowell v. Am. Cyanamid Co.*,

where the manufacturer and dealers set inflated retail prices paid by consumers,

exchanging compensation via rebates.[64]  The Eleventh Circuit held *Illinois Brick*

did not apply because the middlemen did not "pass on" an overcharge to plaintiffs,

they conspired to set it.[65]  In the same vein, the Plaintiffs here "are not indirect

purchasers at all under *Illinois Brick*, but are direct purchasers from a conspiring

---

[63] *See Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 367 (3d Cir. 2005) (dealer intermediaries between dental lab plaintiffs and artificial teeth manufacturers); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 215 (4th Cir. 2002) (OEM intermediaries between PC consumer plaintiffs and Microsoft's overcharge); *In re Beef Indus. Antitrust Litig.*, 600 F.2d 1148, 1154 (5th Cir. 1979) (slaughterhouse and packer intermediaries in between cattle rancher and feeder plaintiffs and retail store monopsonists); *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 746 (9th Cir. 2012) (bank intermediaries between ATM user plaintiffs and ATM network members' fee increases).

[64] 177 F.3d 1228 (11th Cir. 1999).

[65] *Id.* at 1230 (citing 2 Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law 264 (rev. ed. 1995)).

- 16 -

party"[66] who set the overcharge.  They are the target of the scheme, and as even

Defendants acknowledge, "the directly injured party is the appropriate party to

seek redress."[67]   Plaintiffs' "theory of recovery does not depend on pass-on of

damages; thus *Illinois Brick* does not apply."[68]

Unsurprisingly, not one of the three policy reasons supporting *Illinois*

*Brick*'s "indirect purchaser rule" is implicated here.  First, allowing Plaintiffs to

recover would not result in multiple liabilities for Defendants because Plaintiffs are

the first and only payers of the overcharge and the only aggrieved parties that

could potentially recover.  Second, determining Plaintiffs' damages will not pose a

problem since PREPA has admitted that it obtains "full recovery through customer

billings of fuel costs and purchased power."[69]  Third, the Court may "concentrat[e]

the full recovery for the overcharge in the direct purchasers," because Plaintiffs are

the direct purchasers.[70]

In short, PREPA lies at the center of the conspiracy.  It does not "pass on" or

"pass through" any overcharges; it *creates* them.  PREPA "is a co-conspirator with

---

[66] *Id.* at 1229.

[67] STUSCO Mot. for Reconsideration (Dkt. No. 292), at 5.

[68] *State of Ariz. v. Shamrock Foods Co.*, 729 F.2d 1208, 1211 (9th Cir. 1984).

[69] ¶ 66.

[70] *Illinois Brick*, 431 U.S at 735.

responsibility for inflating the fuel's price,"[71] which makes Plaintiffs "the scheme's most direct victims."[72]  As such, STUSCO's petition should be denied and its appeal dismissed.

## V.    CONCLUSION

For these reasons, the Court should deny STUSCO's Petition for Permission to File Interlocutory Appeal Pursuant to 1292(b) and dismiss the appeal.


DATED: November 14, 2016                   ISMAEL MARRERO ROLÓN, ANNE
                                           CATESBY JONES, JORGE VALDES
                                           LLAUGER, PUERTO RICO
                                           BATHROOM REMODELING, INC.,

                                           By:  _____*/s/ Steve W. Berman*_____
                                           Steve W. Berman
                                           HAGENS BERMAN SOBOL SHAPIRO
                                           LLP
                                           1918 Eighth Avenue, Suite 3300
                                           Seattle, WA  98101
                                           Telephone:  (206) 623-7292
                                           Facsimile:  (206) 623-0594
                                           E-mail:  steve@hbsslaw.com

---

[71] 9/29/15 Rep. & Recommendation (Dkt. No. 214), at 29.

[72] 3/31/16 Mem. Op. & Order (Dkt. No. 254), at 12.

Elizabeth A. Fegan
Daniel J. Kurowski
Mark T. Vazquez
Andrew Gordon
HAGENS BERMAN SOBOL SHAPIRO
LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL  60611
Telephone:  (708) 628-4949
Facsimile:  (708) 628-4950
E-mail:  beth@hbsslaw.com

Jane A. Becker Whitaker
P.O. Box 9023914
San Juan, Puerto Rico 00902
Telephone: (787) 754-9191
Facsimile: (787) 764-3101
E-Mail: janebeckerwhitaker.com

J. Barton Goplerud
Andrew Howie
SHINDLER, ANDERSON,
GOPLERUD, & WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA  50265
Telephone:  (515) 223-4567
E-mail:  goplerud@sagwlaw.com

- 19 -

## CERTIFICATE OF SERVICE

I hereby certify that on November 14, 2016 a copy of the foregoing was filed

electronically. Notice of this filing will be sent to the attorneys of record by

operation of the Court's electronic filing system. Parties may access this filing

through the Court's system. The following parties were served by electronic mail

and U.S. Mail at the addresses listed below:

| | |
|---|---|
| Jose A. Andreu Garcia<br>Andreu & Sagardia<br>261 Domenech Ave., Ste. 303<br>San Juan, PR 00918-0000<br>Email: jag@andreu-sagardia.com | Rafael Barreto-Sola<br>Cancio Nadal Rivera & Diaz PSC<br>P.O. Box 364966<br>San Juan, PR 00936-4966<br>Email: rbarreto@cnrd.com |
| William A. Burck<br>Daniel A. Salinas-Serrano<br>Eric C. Lyttle<br>Stephen M. Hauss<br>Quinn Emanuel Urquhart & Sullivan LLP<br>777 6th St,. 11th Floor<br>Washington, DC 20001<br>Email: williamburck@quinnemanuel.com<br>Email: danielsalinas@quinnemanuel.com<br>Email: ericlyttle@quinnemanuel.com<br>Email: stephenhauss@quinnemanuel.com | Daniel R. Koffmann<br>Quinn Emanuel Urquhart & Sullivan LLP<br>51 Madison Ave., 22nd Floor<br>New York, NY 10010-0000<br>Email:<br>danielkoffmann@quinnemanuel.com |

- 20 -

| | |
|---|---|
| Seth M. Cohen<br>David Kolker<br>Michael C. Hefter<br>Bracewell LLP<br>1251 Ave of the Americas, 49th Floor<br>New York, NY 10020<br>Email: seth.cohen@bracewelllaw.com<br>Email:  david.kolker@bracewelllaw.com<br>Email:<br>Michael.hefter@bracewelllaw.com | Howard Crawford-Vick Jr.<br>Brian D. Schmalzbach<br>McGuire Woods LLP<br>901 E Cary St<br>One James Center<br>Richmond, VA 23219-0000<br>Email: TVick@mcguirewoods.com<br>Email:<br>bschmalzbach@mcguirewoods.com |
| Ivan Llado-Rodriguez<br>Morell Bauza Cartagena & Dapena<br>273 Ponce de Leon Ave., Ste. 700<br>San Juan, PR 00917<br>Email: ivan.llado@mbcdlaw.com | Rolando Emmanuelli-Jimenez<br>Emmanuelli Law Offices CSP<br>Calle San Francisco 2803<br>Ponce, PR 00717<br>Email: rolando@bufete-emmanuelli.com |
| Kevin Ewing<br>Bracewell LLP<br>2001 M St. NW, Ste. 900<br>Washington, DC 20036<br>Email: kevin.ewing@bgllp.com | Doris M. Gongon-Colon<br>Cancio Nadal Rivera & Diaz PSC<br>P.O. Box 364966<br>San Juan, PR 00936-4966<br>Email: dgongon@cnrd.com |
| J. Barton Goplerud<br>Hudson Mallaney Shindler & Anderson PC<br>5015 Grand Ridge Dr., Ste. 100<br>West Des Moines, IA 50265<br>Email: goplerud@sagwlaw.com | Charles M. Rosson<br>James A. Reeder, Jr.<br>Stephanie L. Miller<br>Vinson & Elkins LLP<br>1001 Fannin St., Ste. 2500<br>Houston, TX 77002-6760<br>Email: crosson@velaw.com<br>Email: jreeder@velaw.com<br>Email: smiller@velaw.com |

| Camelia Montilla-Alvarado<br>McConnell Valdes LLC<br>270 Munoz Rivera Ave<br>P.O. Box 364225<br>San Juan, PR 00936-4225<br>Email: cmav@mcvpr.com | Casey Erin Lucier<br>McGuire Woods LLP<br>901 E Cary St.<br>One James Center<br>Richmond, VA 23219-0000<br>Email: CLucier@mcguirewoods.com |
| --- | --- |

/s/ Steve W. Berman
Steve W. Berman

## **Exhibit 2**

**STUSCO Order Certifying Appeal**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ISMAEL MARRERO-ROLON, *et al.*, | |
| **Plaintiffs,** | |
| v. | CIVIL NO. 15-1167 (JAG) |
| AUTORIDAD DE ENERGIA ELECTRICA DE P.R., *et al.*, | |
| **Defendants** | |

## MEMORANDUM & ORDER

GARCIA-GREGORY, D.J.

Before the Court is co-Defendant Shell Trading Company's ("Shell Trading") Motion Requesting Certification for Interlocutory Appeal. Docket No. 348. Plaintiffs filed a timely Response. Docket No. 370. Shell Trading filed a timely Reply. Docket No. 406-1. In its motion, Shell Trading requests the Court to certify for interlocutory appeal the Court's holding that the *indirect purchaser* doctrine does not bar Plaintiffs from having standing to sue in this case because Plaintiffs "are the scheme's most direct victims." Docket No. 214 at 29. For the reasons set forth below, the Court hereby GRANTS Shell Trading's motion.

A district court may certify an otherwise non-final order for interlocutory appeal if the order "[1] involves a controlling question of law [2] as to which there is substantial ground for difference of opinion [3] and that an immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The Court shall evaluate each of these requirements in turn.

First, the Court's Order involves a controlling question of law. The Court's legal
determination, that the *indirect purchaser* doctrine pursuant to *Illinois Brick Co. v. Illinois*, 431 U.S.
720 (1977) and *Kansas v. Utilicorp United, Inc.*, 497 U.S. 199 (1990) does not bar Plaintiffs' suit if
PREPA was a co-conspirator, allows Plaintiffs' suit to go forward. Docket No. 254 at 12. A
contrary determination would have required dismissal of Plaintiffs' suit, as Plaintiffs would lack
standing. Therefore, the Court's Order involves a controlling question of law.

In addition, there are substantial grounds for difference of opinion as to the Court's
holding. This Court held, in its March 31, 2016 Memorandum and Order, Docket No. 254, by
adopting the Magistrate's analysis in her September 29, 2015 Report and Recommendation,
Docket No. 214, that the *indirect purchaser* doctrine did not apply to bar Plaintiffs' suit because
Plaintiffs "are the scheme's most direct victims." Docket Nos. 214 at 29; 254 at 12. Accordingly,
the Court held that "this case provides a 'fundamentally different factual scenario' than *Illinois
Brick*." Docket No. 305 (quoting Docket No. 214 at 30-31 n. 23).[1]

The Court's holding as to this issue is consistent with the approach used by the Seventh
Circuit, as well as other lower courts and treatises. *See Paper Sys. Inc. v. Nippon Paper Indus. Co.*, 281
F.3d 629, 631–32 (7th Cir. 2002) (recognizing that rather than referring to this situation as a "co-
conspirator 'exception' to *Illinois Brick*," it is more appropriate to recognize that the first non-
conspirator has the right to collect all the damages); *see, e.g., Laumann v. Nat'l Hockey League*, 907 F.
Supp. 2d 465, 483 (S.D.N.Y. 2012) (holding that where "all middlemen are alleged to be co-
conspirators," the first purchasers outside the conspiracy have standing to sue, and rejecting the
characterization of this situation as an "exception" to *Illinois Brick*); Philip E. Areeda &
Hovenkamp, *Antitrust Law*, 173 ¶ 346 (2005 supp.).

---

[1] The Court's holding is explained in greater detail in Docket Nos. 254 at 12; 214 at 27-33.

However, other courts have treated this issue differently. The First Circuit has yet to address it. Some courts refer to this issue as a "co-conspirator exception" to *Illinois Brick*. *See, e.g.*, *In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 750 (9th Cir. 2012); *Howard Hess Dental Labs. Inc. v. Dentsply Int'l, Inc.*, 424 F.3d 363, 370 (3d Cir. 2005); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 214–15 (4th Cir. 2002); *In re Beef Indus. Antitrust Litig., MDL Docket No. 248*, 600 F.2d 1148, 1160 (5th Cir. 1979).

No Circuit Court has held that there is no co-conspirator exception at all to the *indirect purchaser* rule. However, the Fourth and Ninth Circuits have specifically held that this "co-conspirator exception" is only applicable to price-fixing conspiracies.[2] *See In re ATM Fee Antitrust Litig.*, 686 F.3d at 750; *Dickson*, 309 F.3d at 214–15. Of the remaining Circuits that have explored the issue, the Third, Fifth, and Eleventh Circuits, although they have not expressly required the alleged conspiracy to be one for price fixing, have applied the "co-conspirator exception" in cases concerning price-fixing conspiracies. *See Howard Hess Dental Labs. Inc.*, 424 F.3d at 370; *Lowell v. Am. Cyanamid Co.*, 177 F.3d 1228 (11th Cir. 1999); *In re Beef Indus. Antitrust Litig.*, 600 F.2d at 1160. In turn, the Eighth Circuit held that indirect purchasers may bring a claim by alleging direct purchasers were co-conspirators in a case that did not involve a price fixing conspiracy. *See Insulate SB, Inc. v. Advanced Finishing Sys., Inc.*, 797 F.3d 538, 542 (8th Cir. 2015).

The Court stands by its holding concerning Plaintiffs' standing to sue in this case. However, given the diverse approaches other Circuits have taken on this issue, and the First Circuit's lack of precedent, the Court finds that there are substantial grounds for difference of opinion concerning whether Plaintiffs have standing to sue despite being indirect purchasers of non-compliant fuel, where they have sufficiently alleged that the direct purchaser, PREPA, was a

---

[2] Plaintiffs do not contend that the alleged conspiracy in this case is a price fixing conspiracy.

co-conspirator in the conspiracy to pass off non-compliant fuel as compliant fuel. Thus, an interlocutory appeal is appropriate to provide clarity as to this issue.

Lastly, an immediate appeal may materially advance the ultimate termination of the litigation. Plaintiffs have alleged a far-reaching class action RICO conspiracy where the alleged victims consist of all consumers of electricity in Puerto Rico. The discovery in this case figures to be extensive, costly, and burdensome. Given the sheer number of parties, documents, and issues in this case, litigation could ensue for years. Therefore, it makes sense to settle the threshold question of whether Plaintiffs have standing to sue at the outset of this case. Should the First Circuit hold that Plaintiffs' suit is barred by the *indirect purchaser* doctrine, this suit would be dismissed in its entirety, and the parties and the Court would avoid years of needless litigation and expenses. Even if the First Circuit affirms this Court's holding, the Court and the parties would benefit from having the First Circuit shed light on exactly what Plaintiffs must establish to get around the *indirect purchaser* doctrine. This would allow the Court and the parties to better focus discovery, and the parties to better focus their arguments for summary judgment.

## Conclusion

For the reasons set forth above, the Court hereby GRANTS Shell Trading's Motion Requesting Certification for Interlocutory Appeal. Therefore, the Court hereby certifies the following question for interlocutory appeal: whether Plaintiffs have standing to sue despite being indirect purchasers of non-compliant fuel, where they have sufficiently alleged that the direct purchaser, PREPA, was a co-conspirator in the conspiracy to pass off non-compliant fuel as compliant. The Court hereby amends *nunc pro tunc* its March 31, 2016 Memorandum and Order, Docket No. 254, to include the Court's certification.

Civil No. 15-1167 (JAG)                                                                 5

      IT IS SO ORDERED.

In San Juan, Puerto Rico, this 20th day of October, 2016.

S/ Jay A. Garcia-Gregory
JAY A. GARCIA-GREGORY
United States District Judge
