UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br><br>**Re: ECF No. 5409** |

**LIMITED RESPONSE AND RESERVATION OF RIGHTS REGARDING
FEE EXAMINER'S FOURTH INTERIM REPORT ON PRESUMPTIVE STANDARDS
MOTION AND ON PROFESSIONAL FEES AND EXPENSES**

To the Honorable United States District Judge Laura Taylor Swain:

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), through its undersigned counsel, hereby respectfully submits this limited response and reservation of rights[2] in connection with the *Fee Examiner's Fourth Interim Report on Presumptive Standards*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] As detailed in footnote 4 of the agenda for the March 13-14, 2019 omnibus hearing [ECF No. 5481], AAFAF is requesting that the consideration of the Second Presumptive Standards Motion be deferred to the next omnibus hearing scheduled for April 24, 2019. The Fee Examiner does not object to the adjournment request  Out of an abundance of caution, AAFAF submits this response to alert the Court of the concerns AAFAF has with the Second Presumptive Standards Motion, and to note that, if the deferral is granted, it expects to continue discussing the matter with the Fee Examiner in an attempt to reach a consensual resolution prior to the April 24, 2019 omnibus hearing.

*Motion and on Professional Fees and Expenses* dated March 6, 2019 (the "Second Presumptive Standards Motion") [ECF No. 5409].

1. On November 27, 2018, the Fee Examiner submitted a *Motion to Impose Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses* (the "First Presumptive Standards Motion") [ECF No. 4370].

2. The First Presumptive Standards Motion proposed, among other things, that "rate increases imposed by professionals submitting fees for Court approval shall be presumptively unreasonable unless … the rate increases do not exceed … five percent of the rates previously charged by any owner, director, partner, shareholder, special counsel, or senior counsel; or ten percent of the rates previously charged for any associate or non-owner professional engaged in his or her field of practice for a period of 10 or fewer years" (the "Rate Increases") [ECF No. 4370, Proposed Order, pgs. 2-3].

3. During the hearing held on December 19, 2018 (the "Hearing"), the Court denied without prejudice the First Presumptive Standards Motion*,* inviting the resubmission of a proposed order after additional analysis and discussion with the professionals [ECF No. 5409, p. 3].

4. At the Hearing, and among other comments, the Court focused on the presumptive standards proposed for the Rate Increases stating:

> …I particularly want to focus on the inflationary component, because it seems to me that given the unprecedented unusual nature of these cases, their breadth and the breadth of demands on the resources of the Commonwealth on the one hand, on the other hand, the unique professional experience and, frankly, prestige that is associated with working on these issues in this distinguished company of professionals is something that is of value in the mix for professionals working here.
>
> And so I would like to see, I'll just put it that way, I'll be flat out with you, a presumptive ceiling of the -- equal to the annual rate of inflation in the New York

2

> metropolitan area, which is two percent according to the charts that were cited in the Fee Examiner's report, rather than five percent.
>
> And I recognize -- I'm not asking that a firm limit all of its billing increases to two percent. But I think this is a unique situation, and there are, as you know, concerns within, concerns without, and a -- and this island is a living organism that has to go on and live afterwards, that has to be able to allocate and distribute resources that are not going to be increased, absent some miracle that I don't foresee at this point, and that the projections don't identify for us.

Transcript of Hearing at 23-24.

5. In response to the Court's comments and instructions during the Hearing, the Fee Examiner filed the Second Presumptive Standards Motion, "incorporating additional professional comments on a revised proposed draft circulated widely within the last few weeks" [ECF No. 5409, p. 3].

6. As detailed in the Second Presumptive Standards Motion, while the revised proposed order submitted therein "contains significant changes from that considered by the Court at the end of last year [during the Hearing], it does not change the [First Presumptive Standards] Motion's core quantitative standards", namely, "(i) a five-percent-a-year presumptive limit on rate increases for partners/shareholders and (ii) a seven-percent-a-year presumptive limit on 'step' or seniority increases for associates". [ECF No. 5409, p. 3].

7. AAFAF respectfully submits that the Court should not accept the presumptive standard for the Rate Increases included in the Second Presumptive Standard Motion, and that, instead, it should follow its own recommendation as expressed at the Hearing of allowing a two-percent-a-year presumptive limit on rate increases for professionals in these Title III cases.

8. AAFAF shares and adopts the Court's concerns as expressed during the Hearing and detailed above. These concerns alone merit the denial of the Rate Increases and the adoption of the two-percent-a-year presumptive limit initially articulated by the Court. Nonetheless,

3

AAFAF submits that in addition to the particular circumstances of these Title III cases detailed by the Court at the Hearing, there is also additional empirical support for rejecting the Rate Increases proposed in the Second Presumptive Standards Motion.

9. In support of the Rate Increases, the Fee Examiner cites to, among others, the 2019 Client Advisory report from Citi Private Bank & Hildebrandt Consulting (the "Citi Report"). However, the Citi Report shows that rate increases during 2018 were lower than those proposed in the Second Presumptive Standards Motion – and even so, rate increases for 2018 were at a historical high and one year alone should not serve as a basis for the Rate Increases that should apply in these cases during 2019. For example, the Citi Report notes that during 2018 "billing rates grew by 4.3 percent—the highest result we have published at the nine-month point since 2014, and above the 2010-17 average compound annual growth rate (CAGR) of 3.9 percent." Greta Rusanow et al., Citi Private Bank & Hildebrandt Consulting, 2019 Client Advisory, pg. 3[3].

10. Other reports show more modest growth in rates than those described by the Fee Examiner. For example, the Center on Ethics and the Legal Profession at the Georgetown University Law Center and Thomson Reuters Legal Executive Institute and Peer Monitor recently issued their 2019 Report on the State of the Legal Market. Their report notes that "firms continued to raise their rates in 2018 in all categories, with some firms pursuing more aggressive rate increases than in prior recent years. … During 2018, standard rates increased by 3.1 percent, worked rates by 3.2 percent, billed rates by 3.3 percent, and collected rates by 3.4 percent.". 2019 Report on the State of the Legal Market, pg. 9.[4]

---

[3] See https://www.privatebank.citibank.com/ivc/docs/2019CitiHildebrandtClientAdvisory.pdf

[4] See http://ask.legalsolutions.thomsonreuters.info/LEI_2019-State_of_Legal_Mkt

11. The 2019 Report on the State of the Legal Market shows that average rate increases during 2018, which was a historically high year, were lower, in the three percent range, than the Rate Increases proposed by the Fee Examiner.

12. Further, the proposed Rate Increases included in the Second Presumptive Standards Motion and the reports cited therein do not include a complete picture of the analysis of rate increases versus rate realization. The 2019 Report on the State of the Legal Market, when analyzing rate increases during 2018, noted as follows:

> Not surprisingly, as firms continued to increase their rates, many clients continued to push back, as reflected in stagnant to declining realization rates. This was especially true among Am Law 100 firms. … As has been the pattern over the past several years, Am Law 100 firms recorded the lowest realization rates (against standard) during 2018 at 81.1 percent, as compared to 83.5 percent for Am Law Second 100 firms and 83.9 percent for Midsize firms. Not surprisingly, if measured against worked rates, overall realization performance was much better, as shown in Figure 13. Indeed, the realization rate of 89.3 percent for 2018 was on a par with similar rates since 2013.

2019 Report on the State of the Legal Market, pg. 9[5].

13. The various reports submitted by the Fee Examiner on interim fee applications show that realization rates to date, as part of the interim compensation process for professionals in these Title III cases, have far exceeded those detailed above. The Fee Examiner's proposed presumption on Rate Increases would appear to include a higher percentage Rate Increases than those reflected in the legal market during 2018, a historically high year for rate increases, and to Title III cases where professionals have a higher realization rate than the market average during 2018.

14. In any event, while there is statistical data to support an average rate increase lower than the Rate Increases proposed by the Fee Examiner, no analysis of average increases

---

[5] See http://ask.legalsolutions.thomsonreuters.info/LEI_2019-State_of_Legal_Mkt

can take into account all of the particularities of these Title III cases and Puerto Rico, as described by the Court during the Hearing. As of September 30, 2018, professionals have requested more than $306 million in interim compensation [ECF 5409, pg. 4]. These payments are made by each of the Debtors, which have strict budgetary limitations on their ability to make payments or to increase their respective legal budgets to account for additional payments without decreasing payments on other essential services for Puerto Rico. See 3 LPRA Sec. 283g (a)) and Title II of PROMESA. The Debtors do not have infinite resources; each dollar spent on professional fees is one dollar less that is available for essential services or other expenses of each Debtor. AAFAF requests that the Court reject the Rate Increases proposed in the Second Presumptive Standards Motion, and that such presumptive rate increase should not exceed two-percent-a-year.

15. While AAFAF advances herein its concerns with the Second Presumptive Standards Motion, AAFAF expects to continue discussions on the Rate Increases with the Fee Examiner, in an attempt to reach a consensus prior to the April 24, 2019 omnibus hearing.

16. AAFAF reserves all rights to supplement its position regarding the Second Presumptive Standards Motion in the event that the matter is not consensually resolved prior to the April 24, 2019 omnibus hearing. AAFAF also reserves all rights to object to interim or final fee applications of professionals, regardless of whether such application complies with the presumptive standards adopted by the Fee Examiner.

Dated: March 12, 2019
      San Juan, Puerto Rico

      <u>*/s/ Luis C. Marini-Biaggi*</u>
Luis C. Marini-Biaggi
USDC No. 222301
Carolina Velaz-Rivero
USDC No. 300913
**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

7