# Exhibit 5

| | | |
|---|---|---|
| NEW ISSUE – BOOK-ENTRY ONLY | **RATINGS:** | **MOODY'S:** Baa1 |
| See "Book-Entry Only System and Global Clearance Procedures" | See *Ratings* | **S&P:** BBB |
| under *The 2012 Series A Notes* | | |

*INTEREST ON THE 2012 SERIES A NOTES IS <u>NOT</u> EXCLUDED FROM GROSS INCOME FOR FEDERAL INCOME TAX PURPOSES. For a more complete discussion of the tax aspects, including the treatment of Puerto Rico individuals, Puerto Rico corporations and non-U.S. owners, see Tax Matters herein.*

**$1,000,000,000**
# GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO
### Senior Notes, 2012 Series A (Taxable)

Government Development Bank for Puerto Rico ("Government Development Bank") is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth") created by law in 1948. Government Development Bank acts as financial advisor to and fiscal agent for the Commonwealth and its instrumentalities, public corporations and municipalities, and provides interim and long-term financing to the Commonwealth and its instrumentalities, public corporations and municipalities, and to private parties for economic development. Government Development Bank's existence is perpetual, and pursuant to its enabling law, no amendment to such law or to any other law of the Commonwealth may impair any of its outstanding obligations or commitments.

The Senior Notes, 2012 Series A (Taxable) (the "2012 Series A Notes") are being issued by Government Development Bank pursuant to the provisions of the trust indenture, dated February 17, 2006, as amended or supplemented (the "Indenture"), between Government Development Bank and Banco Popular de Puerto Rico, as trustee (the "Trustee"). Government Development Bank will use the proceeds from the sale of the 2012 Series A Notes for general corporate purposes, including, but not limited to, increasing its investment portfolio, making loans to, and purchasing obligations of, the Commonwealth and its public corporations, instrumentalities and municipalities, redeeming all or a portion of certain notes previously issued under the Indenture, and to pay the costs of issuance of the 2012 Series A Notes.

The 2012 Series A Notes have the following characteristics:

- The 2012 Series A Notes will bear interest from their date of issuance at fixed rates as set forth on the inside cover page of this Official Statement.

- Interest on the 2012 Series A Notes will accrue from their date of issuance and will be payable semiannually in arrears on the first day of each February and August, commencing on August 1, 2012.

- The 2012 Series A Notes are subject to make-whole redemption at any time prior to maturity at the option of Government Development Bank. See "Optional Redemption" under *The 2012 Series A Notes*.

- The 2012 Series A Notes will be issued as fully registered notes without coupons in denominations of $5,000 principal amount and integral multiples of $5,000 in excess thereof and will initially be registered in the name of Cede & Co., as nominee of The Depository Trust Company, New York, New York, which will act as securities depository for the 2012 Series A Notes. Purchasers of the 2012 Series A Notes will not receive physical delivery of the 2012 Series A Notes.

*The inside cover page contains information on the maturities, interest rates, and prices of the 2012 Series A Notes.*

The 2012 Series A Notes, the outstanding notes previously issued under the Indenture, and any additional notes that Government Development Bank may from time to time issue under the Indenture (collectively, the "Notes") are general, unsecured, senior obligations of Government Development Bank, ranking on a parity with all other general, unsecured and unsubordinated obligations of Government Development Bank.

**The 2012 Series A Notes do not constitute an obligation of the Commonwealth or any of its political subdivisions or public instrumentalities, other than Government Development Bank, and neither the Commonwealth nor any of its political subdivisions or public instrumentalities is liable thereon. Neither the good faith, credit and taxing power of the Commonwealth nor that of any of its political subdivisions or instrumentalities is pledged for the payment of the 2012 Series A Notes.**

*The 2012 Series A Notes are offered for delivery when, as and if issued and accepted by the underwriters, subject to the approval of legality by Squire Sanders (US) LLP, Bond Counsel, the opinion of McConnell Valdés LLC, Special Puerto Rico Tax Counsel, and certain other conditions. Certain legal matters will be passed upon for the underwriters by McConnell Valdés LLC, San Juan, Puerto Rico.*

The 2012 Series A Notes will be dated their date of delivery and are expected to be available for delivery through the facilities of The Depository Trust Company on or about February 7, 2012.

**J.P. Morgan**

| | | |
|---|---|---|
| **BofA Merrill Lynch** | **Citigroup** | **Ramirez & Co., Inc.** |
| **Barclays Capital** | **Goldman, Sachs & Co.** | **Jefferies** |
| **Morgan Stanley** | **RBC Capital Markets** | **Wells Fargo Securities** |
| **BBVAPR MSD** **FirstBank Securities** | **Popular Securities** **Santander Securities** | **Scotia MSD** **UBS FS Puerto Rico** |

February 1, 2012

**$1,000,000,000**
**Government Development Bank for Puerto Rico**
**Senior Notes, 2012 Series A (Taxable)**

| Maturity Date February 1, | Amount | Interest Rate | Price | CUSIP[*] |
|---|---|---|---|---|
| 2015 | $ 250,000,000 | 3.448% | 100.000% | 745177FL4 |
| 2017 | 250,000,000 | 3.875 | 99.403 | 745177FM2 |
| 2019 | 500,000,000 | 4.375 | 99.310 | 745177FN0 |

[*] Neither Government Development Bank nor the underwriters are responsible for the use of CUSIP numbers, nor is any representation made as to their correctness.  They are included solely for the convenience of the readers of this Official Statement.

## INFORMATION CONCERNING OFFERING RESTRICTIONS IN
## CERTAIN JURISDICTIONS OUTSIDE THE UNITED STATES

**United Kingdom**

Each underwriter has represented and agreed that:

(a) in relation to any 2012 Series A Notes having a maturity of less than one year, (i) it is a person whose ordinary activities involve it in acquiring, holding, managing or disposing of investments (as principal or agent) for the purposes of its business and (ii) it has not offered or sold and will not offer or sell any 2012 Series A Notes other than to persons whose ordinary activities involve them in acquiring, holding, managing or disposing of investments (as principal or agent) for the purposes of their businesses or who it is reasonable to expect will acquire, hold, manage or dispose of investments (as principal or agent) for the purposes of their businesses where the issue of the 2012 Series A Notes would otherwise constitute a contravention of section 19 of the Financial Services and Markets Act 2000 ("FSMA") by Government Development Bank;

(b) it has only communicated or caused to be communicated and will only communicate or cause to be communicated an invitation or inducement to engage in investment activity (within the meaning of section 21 of the FSMA) received by it in connection with the issue or sale of any 2012 Series A Notes in circumstances in which section 21(1) of the FSMA does not apply to Government Development Bank; and

(c) it has complied and will comply with all applicable provisions of the FSMA with respect to anything done by it in relation to such 2012 Series A Notes in, from or otherwise involving the United Kingdom.

**Chile**

Neither Government Development Bank nor the 2012 Series A Notes offered herein are registered in the Securities Registry maintained by the Chilean Superintendency of Securities and Insurance (*Superintendencia de Valores y Seguros de Chile*) pursuant to the Chilean Securities Market Law 18,045, as amended and restated, and supplemental rules enacted thereunder ("Law 18,045"). Accordingly, the 2012 Series A Notes may not be offered in Chile except in circumstances which do not constitute a public offer of securities in Chile within the meaning of Article 4 of Law 18,045.

This Official Statement is confidential and personal to each offeree and does not constitute an offer to any other person or to the general public in Chile to acquire the 2012 Series A Notes. Distribution of this Official Statement in Chile to any person other than the offeree is unauthorized, and any disclosure of any of the contents of this Official Statement within Chile without the prior written consent of Government Development Bank is prohibited.

Each prospective investor in Chile, by accepting the delivery of this Official Statement, agrees to the foregoing and will not make photocopies or any other reproduction, either physical or electronic, of this Official Statement or any other documents referred to herein.

**Colombia**

The 2012 Series A Notes offered hereby are not and will not be registered at the Colombian Issuers and Securities National Registry (*Registro Nacional de Valores y Emisores*) and may not be publicly offered or sold in Colombia. Such securities may be offered privately pursuant to applicable Colombian securities laws in such events where Colombian law is in fact applicable, as stated herein below.

The 2012 Series A Notes are not being offered publicly and may not be offered nor acquired within Colombia, when the laws of Colombia are applicable, except by certain institutional investors pursuant to an exemption for the private placement of securities pursuant to applicable Colombian securities laws.

**France**

Each of the underwriters and Government Development Bank has represented and agreed that it has not offered or sold and will not offer or sell, directly or indirectly, 2012 Series A Notes to the public in France, and has not distributed or caused to be distributed and will not distribute or cause to be distributed to the public in France, this Official Statement or any other offering material relating to the 2012 Series A Notes, and that such offers, sales and distributions have been and will be made in France only to (a) providers of investment services relating to portfolio management for the account of third parties, and/or (b) qualified investors (*investisseurs qualifiés*), all as defined in, and in accordance with, Articles L.411-1, L.411-2, and D.411-1 to D.411-3 of the French *Code monétaire et financier*.

This Official Statement, prepared in connection with the 2012 Series A Notes, has not been submitted to the clearance procedures of the *Autorité des marchés financiers*.

**Germany**

Each of the underwriters has represented and agreed that, in Germany, the 2012 Series A Notes will be offered only to qualified investors within the meaning of § 2 No. 6 of the German Securities Prospectus Act (*Wertpapierprospektgesetz*) or to investors who acquire the 2012 Series A Notes for a total consideration of at least $100,000 (U.S. dollars) per investor for each separate offer, or otherwise in compliance with German law and that in making any such offers any applicable German laws or regulations will be complied with.

**Hong Kong**

Each underwriter has represented and agreed that:

(a) it has not offered or sold and will not offer or sell in Hong Kong, by means of any document, any of the 2012 Series A Notes other than (i) to persons whose ordinary business is to buy or sell shares or debentures (whether as principal or agent); or (ii) to "professional investors" as defined in the Securities and Futures Ordinance (Cap. 571) of Hong Kong and any rules made under that Ordinance; or (iii) in other circumstances which do not result in this Official Statement being a "prospectus" as defined in the Companies Ordinance (Cap. 32) of Hong Kong or which do not constitute an offer to the public within the meaning of that Ordinance; and

(b) it has not issued or had in its possession for the purposes of issue, and will not issue or have in its possession for the purposes of issue, whether in Hong Kong or elsewhere, any advertisement, invitation or document relating to the 2012 Series A Notes, which is directed at, or the contents of which are likely to be accessed or read by, the public of Hong Kong (except if permitted to do so under the securities laws of Hong Kong) other than with respect to the 2012 Series A Notes which are or are intended to be disposed of only to persons outside Hong Kong or only to "professional investors" as defined in the Securities and Futures Ordinance and any rules made under that Ordinance.

**Norway**

This Official Statement has not been approved by, or registered with, any Norwegian securities regulators pursuant to the Norwegian Securities Trading Act of June 29, 2007. Accordingly, neither this Official Statement nor any other offering material relating to the offering of the 2012 Series A Notes constitutes, or shall be deemed to constitute, an offer to the public in Norway within the meaning of the Norwegian Securities Trading Act of 2007. The 2012 Series A Notes may not be offered or sold, directly or indirectly, in Norway except:

(a) in respect of an offer of the 2012 Series A Notes addressed to investors subject to a minimum purchase of the 2012 Series A Notes for a total consideration of not less than €50,000 per investor;

(b) to "professional investors" as defined in the Norwegian Securities Regulation of June 29, 2007 no. 876, being:

(i) legal entities which are authorized or regulated to operate in the financial markets or, if not so authorized or regulated, whose corporate purpose is solely to invest in the 2012 Series A Notes;

(ii) any legal entity which is registered as a professional investor with the Norwegian Financial Supervisory Authority (Nw. Finanstilsynet) and which has two or more of: (1) an average of at least 250 employees during the last financial year; (2) a total balance sheet of more than €43,000,000; and (3) an annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts; or

(iii) any natural person which is registered as a professional investor with the Oslo Stock Exchange (No. Oslo Børs) and which has two or more of: (1) an average execution of at least 10 transactions in securities of significant volume per quarter for the last four quarters; (2) a portfolio of securities with a market value of at least €500,000; (3) worked or works, for at least one year, within the financial markets in a position which presupposes knowledge of investing in securities;

(c) to fewer than 100 natural or legal persons (other than "professional investors" as defined in the Norwegian Securities Regulation of June 29, 2007 no. 876), subject to obtaining the prior consent of the underwriters for any such offer; or

(d) in any other circumstances provided that no such offer of the 2012 Series A Notes shall result in a requirement for the registration, or the publication by Government Development Bank or any underwriter, of a prospectus pursuant to the Norwegian Securities Trading Act of June 29, 2007.

From the time of implementation in Norway of Directive 2010/73/EU of the European Parliament and of the Council of November 24, 2010, amending the Prospectus Directive (the "2010 PD Amending Directive"), the criteria set forth in item (a) through (d) above shall be deemed to have been amended to correspond to such criteria as set forth in any amending measures implementing the 2010 PD Amending Directive in Norway.

**Peru**

The 2012 Series A Notes and the information contained in this Official Statement have not been and will not be registered with or approved by the Peruvian Capital Markets Superintendency (*Superintendencia del Mercado de Valores*) or the Lima Securities Exchange (*Bolsa de Valores de Lima*). Accordingly, the 2012 Series A Notes cannot be offered or sold in Peru, except if such offer qualifies as a private offering under the securities laws and regulations of Peru. The Peruvian securities market law establishes that any particular offer may qualify as private if it is directed exclusively to institutional investors.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

[THIS PAGE INTENTIONALLY LEFT BLANK]

## TABLE OF CONTENTS

Page No.

Summary .................................................................................................................................. 1
Introductory Statement ............................................................................................................. 6
Recent Developments Relating to the Commonwealth ............................................................ 9
Investment Considerations ........................................................................................................ 9
Use of Proceeds ...................................................................................................................... 14
The 2012 Series A Notes ........................................................................................................ 14
Government Development Bank ............................................................................................. 23
Summary of the Indenture ...................................................................................................... 48
Tax Matters ............................................................................................................................. 55
ERISA Considerations ............................................................................................................ 59
Ratings .................................................................................................................................... 60
Underwriting ........................................................................................................................... 61
Legal Matters .......................................................................................................................... 62
Legal Investment .................................................................................................................... 63
Continuing Disclosure ............................................................................................................ 63
Litigation ................................................................................................................................ 65
Miscellaneous ......................................................................................................................... 65

*APPENDIX I*      Basic Financial Statements and Required Supplementary Information of Government
                  Development Bank for Puerto Rico as of and for the Year Ended June 30, 2011 ................... I-1
*APPENDIX II*     Commonwealth of Puerto Rico Financial Information and Operating Data Report, dated
                  December 6, 2011 ...................................................................................................... II-1
*APPENDIX III*    Form of Opinion of Bond Counsel ............................................................................. III-1
*APPENDIX IV*     Form of Opinion of Special Puerto Rico Tax Counsel ............................................... IV-1

In connection with this offering, the underwriters may effect transactions which stabilize or maintain the market prices of the 2012 Series A Notes and Government Development Bank's other outstanding Notes at levels above those which might otherwise prevail in the open market. Such stabilizing, if commenced, may be discontinued at any time.

Certain statements contained in this Official Statement do not reflect historical facts, but instead reflect forecasts and "forward-looking statements." These statements are based upon a number of assumptions and estimates that are subject to significant uncertainties, many of which are beyond the control of Government Development Bank. In this respect, the words "estimates," "projects," "anticipates," "expects," "intends," "believes" and similar expressions are intended to identify forward-looking statements. All projections, forecasts, assumptions, expressions of opinions, estimates and other forward-looking statements are expressly qualified in their entirety by this cautionary statement: actual results may differ materially from those expressed or implied by forward-looking statements.

The projections set forth in this Official Statement were not prepared with a view toward complying with the guidelines established by the American Institute of Certified Public Accountants with respect to prospective financial information, but in the view of Government Development Bank's management, were prepared on a reasonable basis, reflect the best currently available estimates and judgments, and present, to the best of management's knowledge and belief, the expected course of action and the expected future financial performance of Government Development Bank. However, this information is not fact and should not be relied upon as being necessarily indicative of future results, and readers of this Official Statement are cautioned not to place undue reliance on the prospective financial information. Neither Government Development Bank's independent auditors nor any other independent auditors have compiled, examined, or performed any procedures with respect to the prospective financial information contained herein, nor have they expressed any opinion or any other form of assurance on such information or its achievability and disclaim any association with, the prospective financial information. Neither Government Development Bank's independent auditors nor any other independent auditors have been consulted in connection with the preparation of the prospective financial information set forth in this Official Statement, which is solely the

**product of Government Development Bank and its affiliates and subsidiaries, and the independent auditors assume no responsibility for its content.**

No dealer, broker, sales representative or other person has been authorized by Government Development Bank to give any information or to make any representations other than those contained herein, and if given or made, such other information or representations must not be relied upon as having been authorized by Government Development Bank. This Official Statement does not constitute an offer to sell or the solicitation of an offer to buy, nor shall there be any sale of the 2012 Series A Notes, by any person in any jurisdiction in which it is unlawful for such person to make such an offer, solicitation or sale. The information set forth herein and incorporated herein by reference, except for information appearing in *Information Concerning Offering Restrictions in Certain Jurisdictions Outside the United States*, in "Book-Entry Only System and Global Clearance Procedures" under *The 2012 Series A Notes* and in *Underwriting* herein, has been obtained from Government Development Bank and other official sources that are believed to be reliable. The information set forth herein regarding DTC, Euroclear Bank, and Clearstream, Luxembourg was supplied by DTC, Euroclear Bank, and Clearstream, Luxembourg, respectively. The information set forth herein regarding the underwriters and in *Information Concerning Offering Restrictions in Certain Jurisdictions Outside the United States* has been obtained from the underwriters. The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Official Statement nor any sale made hereunder shall, under any circumstances, create any implication that there has not been any change in the affairs of Government Development Bank since the date hereof. The underwriters have reviewed the information in this Official Statement in accordance with, and as part of, their responsibilities to investors under the federal securities laws as applied to the facts and circumstances of this transaction, but the underwriters do not guarantee the accuracy or completeness of such information.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

## SUMMARY

This summary highlights selected information contained elsewhere in this Official Statement. Because it is a summary, it does not contain all the information that a purchaser should consider before purchasing the 2012 Series A Notes. A purchaser should read the entire Official Statement, including the documents incorporated herein by reference.

**Government Development Bank**

Government Development Bank for Puerto Rico ("Government Development Bank") is a public corporation and governmental instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"). Government Development Bank was created by law in 1948 to aid the Commonwealth in the performance of its fiscal duties and more effectively carry out its governmental responsibility to develop the economy of Puerto Rico, particularly with respect to its industrialization. Government Development Bank's existence is perpetual, and pursuant to its enabling law, no amendment to such law or any other law of the Commonwealth may impair any of its outstanding obligations or commitments.

The principal functions of Government Development Bank are:

- to act as fiscal agent, paying agent and financial advisor to the Commonwealth and its instrumentalities, public corporations and municipalities, and to the governor of Puerto Rico (the "Governor"), the Council of Secretaries, and the Secretary of Treasury of Puerto Rico (the "Secretary of Treasury");

- to provide interim and long-term financing to the Commonwealth and its instrumentalities, public corporations and municipalities, and to private parties for economic development; and

- to act as depositary or trustee of funds for the Commonwealth and its instrumentalities, public corporations and municipalities.

In its role as fiscal agent and financial advisor, Government Development Bank acts as advisor to the Commonwealth and its instrumentalities, public corporations and municipalities in connection with all their borrowings, and all such borrowings are subject to its prior approval. It also has the power, among other things, to acquire property for its corporate purposes; to acquire any property in the settlement or reduction of debts previously contracted, where such acquisition is necessary to minimize or avoid loss in connection therewith; to invest in obligations of the United States, the Commonwealth, and their instrumentalities, public corporations and municipalities, or obligations of any domestic or foreign, public or private, corporate entity classified in one of the three highest rating categories by a nationally recognized rating agency; to borrow money and contract debts for its corporate purposes; to establish branches, offices or agencies for the transaction of its business; to purchase, hold, lease, mortgage and convey real property; to sue and be sued; and to create subsidiary or affiliate corporations.

Since loans to the Commonwealth and its instrumentalities, public corporations and municipalities represent a significant portion of Government Development Bank's assets, this Official Statement includes or incorporates by reference operating and financial information about the Commonwealth and its instrumentalities, public corporations and municipalities, and includes a discussion of recent developments relating to the Commonwealth. The Commonwealth's fiscal situation may have an adverse impact on Government Development Bank's financial condition, possibly limiting its access to the capital markets and other funding sources. See "Fiscal situation and condition of the Commonwealth, its public

1

corporations and municipalities may negatively affect the financial condition and liquidity of Government Development Bank" under *Investment Considerations* herein.

As of June 30, 2011, Government Development Bank had consolidated total assets of $15.5 billion, including $8.4 billion of loans receivable, principally from the Commonwealth and its instrumentalities, and consolidated net assets of $2.6 billion. For the year ended June 30, 2011, Government Development Bank's consolidated operating revenues were $642.5 million and the change in net assets was $40.2 million.

As of June 30, 2011, approximately $1.7 billion of Government Development Bank's consolidated total assets of $15.5 billion were held by Government Development Bank's subsidiaries and, therefore, are unavailable for payment of debt service on the 2012 Series A Notes.

### Details of the 2012 Series A Notes

Offering.....................................Government Development Bank for Puerto Rico Senior Notes, 2012 Series A (Taxable) (the "2012 Series A Notes").

Issuer..........................................Government Development Bank for Puerto Rico.

Principal Amount.....................$1,000,000,000

Interest......................................The 2012 Series A Notes will bear interest from their date of issuance at per annum fixed rates as set forth on the inside cover page of this Official Statement. Interest on the 2012 Series A Notes will accrue from their date of issuance and will be payable semiannually in arrears on the first day of each February and August, commencing on August 1, 2012.

Use of Proceeds.........................Government Development Bank will use the proceeds from the sale of the 2012 Series A Notes for general corporate purposes, including, but not limited to, increasing its investment portfolio, making loans to, and purchasing obligations of, the Commonwealth and its public corporations, instrumentalities and municipalities, redeeming all or a portion of certain outstanding Notes (as defined below), and to pay the costs of issuance of the 2012 Series A Notes. See *Use of Proceeds* for a description of the Notes to be redeemed by Government Development Bank with the proceeds of the 2012 Series A Notes.

Optional Redemption.................The 2012 Series A Notes are subject to redemption at any time prior to maturity at the option of Government Development Bank, either in whole or in part (and if in part, in such order of maturity as Government Development Bank shall direct), subject to at least 20 days' prior notice, at a price equal to the greater of: (a) the principal amount of the 2012 Series A Notes to be redeemed, or (b) the sum of the present value of the remaining scheduled payments of principal and interest to the maturity date of the 2012 Series A Notes to be redeemed, not including any portion of those payments of interest accrued and unpaid as of the date on which such 2012 Series A Notes are to be redeemed, discounted to the date on which such 2012 Series A Notes are to be redeemed on a semiannual basis, assuming a 360-day year consisting of twelve 30-day months, at the Treasury Rate (as defined hereinafter) plus 50 basis

points; plus, in each case, accrued interest on the 2012 Series A Notes to be redeemed to the redemption date.

Note Program ............................ The 2012 Series A Notes are being issued pursuant to the provisions of the trust indenture, dated February 17, 2006, as amended or supplemented (the "Indenture"), between Government Development Bank and Banco Popular de Puerto Rico, as trustee (the "Trustee"), and a resolution adopted by the Executive Committee of the Board of Directors of Government Development Bank on February 1, 2012 (the "Resolution"). Under the Indenture, Government Development Bank may issue additional Notes on parity with any Notes issued under the Indenture. See *Introductory Statement* herein for additional information on the other series of Notes that have been previously issued by Government Development Bank under the Indenture.

Unsecured Notes ......................... The 2012 Series A Notes, the outstanding notes previously issued under the Indenture, and any additional notes that Government Development Bank may from time to time issue under the Indenture (collectively, the "Notes") are general, unsecured, senior obligations of Government Development Bank, ranking on a parity with all other general, unsecured and unsubordinated obligations of Government Development Bank for borrowed money and with unsecured and unsubordinated Government Development Bank guarantees of obligations of others for borrowed money now or hereafter outstanding. Neither the good faith, credit and taxing power of the Commonwealth nor that of any of its political subdivisions or instrumentalities is pledged for the payment of the Notes.

Additional Debt Securities ......... Under the Indenture, Government Development Bank may issue additional debt securities and may otherwise incur additional indebtedness without restriction.

Availability of Assets of
Government Development
Bank's Subsidiaries ................... Because the 2012 Series A Notes are issued by Government Development Bank and are not guaranteed by Government Development Bank's subsidiaries, holders of the 2012 Series A Notes will not have recourse against Government Development Bank's subsidiaries.

Absence of Public Market .......... The 2012 Series A Notes are a new issue of securities. There is no assurance that a secondary market for the 2012 Series A Notes will develop or, if it does develop, that it will provide the holders of the 2012 Series A Notes with liquidity for their investment or that it will continue for the life of the 2012 Series A Notes.

Governing Law .......................... All rights and obligations under the 2012 Series A Notes will be governed by and construed in accordance with the laws of the Commonwealth.

Ratings ...................................... The 2012 Series A Notes have received a rating of "BBB" by Standard & Poor's Ratings Services ("S&P") and of "Baa1" with a negative outlook

by Moody's Investor Services ("Moody's").  For a description of the ratings on the 2012 Series A Notes, see *Ratings* herein.

Book-Entry Form ........................The 2012 Series A Notes will be issued in book-entry form through the book-entry only system of The Depository Trust Company.  Purchasers of the 2012 Series A Notes will not receive definitive notes.

Tax Matters ...............................INTEREST ON THE 2012 SERIES A NOTES IS <u>NOT</u> EXCLUDED FROM GROSS INCOME FOR FEDERAL INCOME TAX PURPOSES.  For a more complete discussion of the tax aspects, including the treatment of Puerto Rico individuals, Puerto Rico corporations and non-U.S. owners, see *Tax Matters* herein.

[REST OF PAGE INTENTIONALLY LEFT BLANK]

Set forth below are financial highlights of Government Development Bank and its subsidiaries as of and for the years ended June 30, 2011, 2010 and 2009, which have been derived from Government Development Bank's audited financial statements.

## FINANCIAL HIGHLIGHTS OF
## GOVERNMENT DEVELOPMENT BANK AND ITS SUBSIDIARIES

| | As of and for the year ended June 30, | | |
|---|---|---|---|
| | 2011 | 2010 | 2009 |
| | | (in thousands) | |
| **Financial Condition Trends Government Wide[1]** | | | |
| **Assets** | | | |
| Total invested assets | $ 6,177,907 | $ 6,594,502 | $ 6,850,319 |
| Loans receivable, net | 8,395,959 | 6,966,384 | 6,685,404 |
| Total assets | 15,509,809 | 14,048,567 | 14,039,155 |
| **Liabilities** | | | |
| Deposits and commercial paper | 5,553,687 | 6,149,198 | 7,554,807 |
| Other borrowed funds | 7,164,955 | 5,181,652 | 3,933,523 |
| Total liabilities | 12,925,667 | 11,504,606 | 11,588,473 |
| Net assets | 2,584,142 | 2,543,961 | 2,450,682 |
| **Income and Expense Trends Government Wide[1]** | | | |
| Total investment income and interest income on loans | 607,491 | 512,721 | 439,193 |
| Total interest expense | 438,559 | 367,096 | 364,145 |
| Net investment income and interest income on loans | 168,932 | 145,625 | 75,048 |
| Provision for loan losses | 42,368 | 13,340 | 46,374 |
| Non-interest income and other items | 314,622 | 261,872 | 157,161 |
| Non-interest expense and other items | 385,305 | 346,644 | 244,640 |
| Contribution from other | 555 | 50,110 | 154,222 |
| Contributions to others | 16,255 | 4,344 | 3,458 |
| Change in net assets | 40,181 | 93,279 | 91,959 |
| **Profitability and Capitalization Ratios** | | | |
| **Enterprise Funds[2]** | | | |
| Return on total average assets | 0.50% | 0.88% | 1.11% |
| Change in net assets to average net assets | 2.87% | 4.98% | 6.22% |
| Average net assets to average total assets | 17.50% | 17.71% | 17.89% |
| Net assets to total assets | 16.91% | 18.16% | 17.26% |
| Interest rate spread | 0.40% | 0.35% | 0.19% |
| Net interest margin | 0.90% | 0.83% | 0.69% |

---

(1)   Government wide total amounts combine the results of Government Development Bank's governmental activities and business-type activities. Governmental activities are generally financed through taxes, intergovernmental revenues, and other government appropriations. The Puerto Rico Housing Finance Authority, a subsidiary of Government Development Bank, accounts for all of Government Development Bank's governmental activities. Business-type activities are financed in whole or in part by fees charged to third parties for goods or services.

(2)   The financial statements for the enterprise funds provide additional detail about the same type of information as the business-type activities in the government-wide financial statements.

**$1,000,000,000**
**Government Development Bank for Puerto Rico**
**Senior Notes, 2012 Series A (Taxable)**

### INTRODUCTORY STATEMENT

This Official Statement of Government Development Bank for Puerto Rico ("Government Development Bank"), which includes the cover page, the inside cover page, the Table of Contents, the Summary, the Financial Highlights of Government Development Bank and its Subsidiaries and the Appendices, and the information incorporated by reference as set forth below, is provided to furnish information with respect to its Senior Notes, 2012 Series A (Taxable) (the "2012 Series A Notes"). Government Development Bank is a public corporation and an instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico").

The 2012 Series A Notes are being issued pursuant to the provisions of the trust indenture, dated February 17, 2006, as amended or supplemented (the "Indenture"), between Government Development Bank and Banco Popular de Puerto Rico, as trustee (the "Trustee"), and a resolution adopted by the Executive Committee of the Board of Directors of Government Development Bank on February 1, 2012 (the "Resolution"). Under the provisions of the Indenture, Government Development Bank may issue additional notes on a parity with any notes issued under the Indenture. The 2012 Series A Notes, the outstanding notes previously issued under the Indenture, and any additional notes that Government Development Bank may from time to time issue under the Indenture (collectively, the "Notes") are general, unsecured, senior obligations of Government Development Bank, ranking on a parity with all other general, unsecured and unsubordinated obligations of Government Development Bank for borrowed money and with unsecured and unsubordinated Government Development Bank guarantees of obligations of others for borrowed money now or hereafter outstanding.

The 2012 Series A Notes are not an obligation of the Commonwealth or any of its political subdivisions or instrumentalities, other than Government Development Bank, and neither the Commonwealth nor any of its political subdivisions or instrumentalities, other than Government Development Bank, is required to pay the 2012 Series A Notes.

Purchases of the 2012 Series A Notes under the DTC system must be made by or through Direct DTC Participants, which will receive a credit for the 2012 Series A Notes on DTC's records. The ownership interest of each actual purchaser of each 2012 Series A Note ("Beneficial Owner") is in turn to be recorded on the Direct and Indirect DTC Participants' records. Beneficial Owners will not receive written confirmation from DTC of their purchase. Beneficial Owners are, however, expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect DTC Participant through which the Beneficial Owner entered into the transaction. Transfers of ownership interests in the 2012 Series A Notes are to be accomplished by entries made on the books of Direct and Indirect DTC Participants acting on behalf of Beneficial Owners. Beneficial Owners will not receive certificates representing their ownership interests in 2012 Series A Notes, except in the event that use of the book-entry system for the 2012 Series A Notes is discontinued.

To facilitate subsequent transfers, all 2012 Series A Notes deposited by Direct DTC Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co., or such other name as may be requested by an authorized representative of DTC. The deposit of 2012 Series A Notes with DTC and their registration in the name of Cede & Co. or such other DTC nominee do not effect any change in beneficial ownership. DTC has no knowledge of the actual Beneficial Owners of the 2012 Series A Notes; DTC's records reflect only the identity of the Direct DTC Participants to whose accounts such 2012 Series A Notes are credited, which may or may not be the Beneficial Owners. The Direct and Indirect DTC Participants will remain responsible for keeping account of their holdings on behalf of their customers.

Conveyance of notices and other communications by DTC to Direct DTC Participants, by Direct DTC Participants to Indirect DTC Participants, and by Direct DTC Participants and Indirect DTC Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time. Beneficial Owners of the 2012 Series A Notes may wish to take certain steps to augment the transmission to them of notices of significant events with respect to the 2012 Series A Notes, such as redemptions, defaults, and proposed amendments to the 2012 Series A Note documents. For example, Beneficial Owners may wish to ascertain that the nominee holding the 2012 Series A Notes for their benefit has agreed to obtain and transmit notices to Beneficial Owners. In the alternative, Beneficial Owners may wish to provide their names and addresses to the Trustee and request that copies of notices be provided directly to them.

Redemption notices shall be sent to DTC. If less than all of the 2012 Series A Notes within a maturity are being redeemed, DTC's practice is to determine by lot the amount of the interest of each Direct DTC Participant in such maturity to be redeemed.

Neither DTC nor Cede & Co. (nor any other DTC nominee) will consent or vote with respect to the 2012 Series A Notes unless authorized by a Direct DTC Participant in accordance with DTC's MMI procedures. Under its usual procedures, DTC mails an Omnibus Proxy to Government Development Bank as soon as possible after the record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct DTC Participants to whose accounts the 2012 Series A Notes are credited on the record date (identified in a listing attached to the Omnibus Proxy).

Redemption proceeds, and premium, if any, principal payments, and interest payments on the 2012 Series A Notes will be made to Cede & Co., or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit Direct DTC Participants' accounts upon DTC's receipt of funds and corresponding detail information from Government Development Bank, on payable date in accordance with their respective holdings shown on DTC's records. Payments by DTC Participants to Beneficial Owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the

18

responsibility of such DTC Participant and not of DTC, the Trustee or Government Development Bank, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of redemption proceeds, premium, if any, principal and interest to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) is the responsibility of Government Development Bank, disbursement of such payments to Direct DTC Participants will be the responsibility of DTC, and disbursement of such payments to the Beneficial Owners will be the responsibility of Direct and Indirect DTC Participants.

DTC may discontinue providing its services as securities depository with respect to the 2012 Series A Notes at any time by giving reasonable notice to Government Development Bank or the Trustee. Under such circumstances, in the event that a successor depository is not obtained, 2012 Series A Note certificates will be printed and delivered.

Government Development Bank may decide to discontinue use of the system of book-entry-only transfers through DTC (or a successor securities depository). In that event, 2012 Series A Note certificates will be printed and delivered to DTC.

*Clearstream, Luxembourg.* Clearstream, Luxembourg is successor in name to Cedel Bank, S.A. Clearstream, Luxembourg is a wholly-owned subsidiary of Clearstream International S.A. On January 1, 1995, Clearstream, Luxembourg was granted a banking license in Luxembourg.

As of December 20, 2010, Clearstream International S.A., which is domiciled in Luxembourg, is wholly owned by Clearstream Holding AG. Clearstream Holding AG is domiciled in Germany and wholly owned by Deutsche Börse AG ("DBAG"). DBAG is a publicly held company organized under German law and traded on the Frankfurt Stock Exchange.

Clearstream Banking AG, which is domiciled in Germany, is a fully owned subsidiary of Clearstream International S.A. Clearstream Banking AG provides clearing and settlement services for the German domestic and international market.

Clearstream, Luxembourg holds securities for its customers and facilitates the clearance and settlement of securities transactions between Clearstream, Luxembourg customers through electronic book-entry changes in accounts of Clearstream, Luxembourg customers, thereby eliminating the need for physical movement of certificates. Clearstream, Luxembourg provides to its customers, among other things, services for safekeeping, administration, clearance and settlement of internationally traded securities and securities lending and borrowing. Clearstream, Luxembourg also deals with domestic securities markets in many countries through established depository and custodial relationships.

Clearstream, Luxembourg is registered as a bank in Luxembourg and, as such, is subject to regulation by the Commission de Surveillance du Secteur Financier, which supervises Luxembourg banks. Clearstream, Luxembourg, as operator of a securities settlement system under Luxembourg law, is also supervised by the Central Bank of Luxembourg according to the law of November 10, 2009 on payment services.

Clearstream, Luxembourg's customers are world-wide financial institutions including underwriters, securities brokers and dealers, banks, trust companies and clearing corporations. Indirect access to Clearstream, Luxembourg is available to other institutions that clear through or maintain a custodial relationship with an account holder of Clearstream, Luxembourg. Clearstream, Luxembourg has established an electronic bridge with Euroclear Bank as the operator of the Euroclear System (the "Euroclear Operator") in Brussels to facilitate settlement of trades between Clearstream, Luxembourg and the Euroclear Operator.

*Euroclear Bank.*  Euroclear Bank holds securities and book-entry interests in securities for participating organizations and facilitates the clearance and settlement of securities transactions between Euroclear Bank participants ("Euroclear Participants"), and between Euroclear Participants and participants of certain other securities intermediaries through electronic book-entry changes in accounts of such participants or other securities intermediaries.

Euroclear Bank provides Euroclear Participants, among other things, with safekeeping, administration, clearance and settlement, securities lending and borrowing, and related services. Euroclear Participants are investment banks, securities brokers and dealers, banks, central banks, supranationals, custodians, investment managers, corporations, trust companies and certain other organizations.  Certain of the managers or underwriters for this offering, or other financial entities involved in this offering, may be Euroclear Participants.

Non-participants in the Euroclear System may hold and transfer book-entry interests in the 2012 Series A Notes through accounts with a participant in the Euroclear System or any other securities intermediary that holds a book-entry interest in the 2012 Series A Notes through one or more securities intermediaries standing between such other securities intermediary and Euroclear Bank.

Clearance and Settlement.  Although Euroclear Bank has agreed to the procedures provided below in order to facilitate transfers of securities among participants in the Euroclear System, and between Euroclear Participants and participants of other intermediaries, it is under no obligation to perform or continue to perform such procedures, and such procedures may be modified or discontinued at any time.

Initial Distribution.  Investors electing to acquire 2012 Series A Notes through an account with Euroclear Bank or some other securities intermediary must follow the settlement procedures of such an intermediary with respect to the settlement of new issues of securities.  The 2012 Series A Notes to be acquired against payment through an account with Euroclear Bank will be credited to the securities clearance accounts of the respective Euroclear Participants in the securities processing cycle for the business day following the settlement date for value as of the settlement date, if against payment.

Secondary Market.  Investors electing to acquire, hold or transfer 2012 Series A Notes through an account with Euroclear Bank or some other securities intermediary must follow the settlement procedures of such an intermediary with respect to the settlement of secondary market transactions in securities. Please be aware that Euroclear Bank will not monitor or enforce any transfer restrictions with respect to the 2012 Series A Notes.

Custody.  Investors who are participants in the Euroclear System may acquire, hold or transfer interests in the 2012 Series A Notes by book-entry to accounts with Euroclear Bank.  Investors who are not participants in the Euroclear System may acquire, hold or transfer interests in the 2012 Series A Notes by book-entry to accounts with a securities intermediary who holds a book-entry interest in the 2012 Series A Notes through accounts with Euroclear Bank.

Custody Risk.  Investors that acquire, hold and transfer interests in the 2012 Series A Notes by book-entry through accounts with Euroclear Bank or any other securities intermediary are subject to the laws and contractual provisions governing their relationship with their intermediary, as well as the laws and contractual provisions governing the relationship between such an intermediary and each other intermediary, if any, standing between themselves and the individual 2012 Series A Notes.

Euroclear Bank has advised as follows:

Under Belgian law, investors that are credited with securities on the records of Euroclear Bank have a co-property right in the fungible pool of interests in securities on deposit with Euroclear Bank in an amount equal to the amount of interests in securities credited to their accounts. In the event of the insolvency of Euroclear Bank, Euroclear Participants would have a right under Belgian law to the return of the amount and type of interests in securities credited to their accounts with Euroclear Bank. If Euroclear Bank did not have a sufficient amount of interests in securities on deposit of a particular type to cover the claims of all participants credited with such interests in securities on Euroclear Bank's records, all participants having an amount of interests in securities of such type credited to their accounts with Euroclear Bank would have the right under Belgian law to the return of their pro-rata share of the amount of interests in securities actually on deposit.

Under Belgian law, Euroclear Bank is required to pass on the benefits of ownership in any interests in securities on deposit with it (such as dividends, voting rights and other entitlements) to any person credited with such interests in securities on its records.

*Initial Settlement; Distributions; Actions on Behalf of Owners.* All of the 2012 Series A Notes will initially be registered in the name of Cede & Co., the nominee of DTC. Clearstream, Luxembourg and Euroclear Bank may hold omnibus positions on behalf of their participants through customers securities accounts in Clearstream, Luxembourg's and/or Euroclear Bank's names on the books of their respective depository, which, in turn, holds such positions in its customers' securities accounts in its name on the books of DTC. Citibank, N.A. acts as depository for Clearstream, Luxembourg and JPMorgan Chase Bank acts as depository for Euroclear Bank (the "U.S. Depositories"). Holders of the 2012 Series A Notes may hold their 2012 Series A Notes through DTC (in the United States) or Clearstream, Luxembourg or Euroclear Bank (in Europe) if they are participants of such systems, or directly through organizations that are participants in such systems. Investors electing to hold their 2012 Series A Notes through Euroclear Bank or Clearstream, Luxembourg accounts will follow the settlement procedures applicable to conventional Euro bonds in registered form. 2012 Series A Notes will be credited to the securities custody accounts of Euroclear Bank and Clearstream, Luxembourg holders on the business day following the settlement date against payment for value on the settlement date.

Distributions with respect to the 2012 Series A Notes held beneficially through Clearstream, Luxembourg will be credited to the cash accounts of Clearstream, Luxembourg customers in accordance with its rules and procedures, to the extent received by its U.S. Depository. Distributions with respect to the 2012 Series A Notes held beneficially through Euroclear Bank will be credited to the cash accounts of Euroclear Participants in accordance with the terms and conditions governing the relationship between Euroclear Bank and Euroclear Participants, to the extent received by its U.S. Depository. Such distributions will be subject to tax reporting in accordance with relevant United States tax laws and regulations. Clearstream, Luxembourg or the Euroclear Operator, as the case may be, will take any other action permitted to be taken by an owner of the 2012 Series A Notes on behalf of a Clearstream, Luxembourg customer or Euroclear Participant only in accordance with the relevant rules and procedures and subject to the ability of the U.S. Depositories to effect such actions on its behalf through DTC.

*Secondary Market Trading.* Secondary market trading between DTC Participants (other than the U.S. Depositories) will be settled using the procedures applicable to U.S. corporate debt obligations in same-day funds. Secondary market trading between Euroclear Participants and/or Clearstream, Luxembourg customers will be settled using the procedures applicable to conventional Euro bonds in same-day funds. When 2012 Series A Notes are to be transferred from the account of a DTC Participant (other than the U.S. Depositories) to the account of a Euroclear Participant or a Clearstream, Luxembourg customer, the purchaser must send instructions to the applicable U.S. Depository one business day before the settlement

date. Euroclear Bank or Clearstream, Luxembourg, as the case may be, will instruct its U.S. Depository to receive the 2012 Series A Notes against payment. Its U.S. Depository will then make payment to the DTC Participants account against delivery of the 2012 Series A Notes. After settlement has been completed, the 2012 Series A Notes will be credited to the respective clearing system and by the clearing system, in accordance with its usual procedures, to the Euroclear Participant's or Clearstream, Luxembourg customer's accounts. Credit for the 2012 Series A Notes will appear on the next day (European time) and cash debit will be backvalued to, and the interest on the 2012 Series A Notes will accrue from, the value date (which would be the preceding day when settlement occurs in New York). If settlement is not completed on the intended value date (*i.e.*, the trade fails), the Euroclear Bank or Clearstream, Luxembourg cash debit will be valued instead as of the actual settlement date.

Euroclear Participants and Clearstream, Luxembourg customers will need to make available to the respective clearing systems the funds necessary to process same-day funds settlement. The most direct means of doing so is to pre-position funds for settlement, either from cash on hand or existing lines of credit, as they would for any settlement occurring within Euroclear Bank or Clearstream, Luxembourg. Under this approach, they may take on credit exposure to Euroclear Bank or Clearstream, Luxembourg until the 2012 Series A Notes are credited to their accounts one day later. As an alternative, if Euroclear Bank or Clearstream, Luxembourg has extended a line of credit to them, Euroclear Participants and Clearstream, Luxembourg customers can elect not to pre-position funds and allow that credit line to be drawn upon to finance settlement. Under this procedure, Euroclear Participants or Clearstream, Luxembourg customers purchasing 2012 Series A Notes would incur overdraft charges for one day, assuming they cleared the overdraft when the 2012 Series A Notes were credited to their accounts. However, interest on the 2012 Series A Notes would accrue from the value date. Therefore, in many cases, the investment income on 2012 Series A Notes earned during that one-day period may substantially reduce or offset the amount of such overdraft charges, although this result will depend on each Euroclear Participant's and Clearstream, Luxembourg customer's particular cost of funds. Because the settlement is taking place during New York business hours, DTC Participants can employ their usual procedures for sending securities to the applicable U.S. Depository for the benefit of Euroclear Participants or Clearstream, Luxembourg customers. The sale proceeds will be available to the selling DTC Participant on the settlement date. Thus, to the DTC Participant, a cross-market transaction will settle no differently from a trade between two DTC Participants.

Due to time zone differences in their favor, Euroclear Participants and Clearstream, Luxembourg customers may employ their customary procedure for transactions in which securities are to be transferred by the respective clearing system, through the applicable U.S. Depository to another DTC Participant's account. In these cases, Euroclear Bank will instruct its U.S. Depository to credit the 2012 Series A Notes to the DTC Participant's account against payment. The payment will then be reflected in the account of the Euroclear Participant or Clearstream, Luxembourg customer the following business day, and receipt of the cash proceeds in the Euroclear Participant's or Clearstream, Luxembourg customer's accounts will be backvalued to the value date (which would be the preceding day, when settlement occurs in New York). If the Euroclear Participant or Clearstream, Luxembourg customer has a line of credit with its respective clearing system and elects to draw on such line of credit in anticipation of receipt of the sale proceeds in its account, the back-valuation may substantially reduce or offset any overdraft charges incurred over that one-day period. If settlement is not completed on the intended value date (*i.e.*, the trade fails), receipt of the cash proceeds in the Euroclear Participant's or Clearstream, Luxembourg customer's accounts would instead be valued as of the actual settlement date.

*Procedures May Change.* Although DTC, Clearstream, Luxembourg and Euroclear Bank have agreed to these procedures in order to facilitate transfers of securities among DTC, DTC Participants, Clearstream, Luxembourg, customers of Clearstream, Luxembourg, Euroclear Bank and Euroclear

Participants, they are under no obligation to perform or continue to perform these procedures and these procedures may be discontinued and may be changed at any time by any of them.

**Payments and Transfers**

No assurance can be given by Government Development Bank that DTC, Euroclear Bank and Clearstream, Luxembourg will make prompt transfer of payments to the DTC Participants, the Euroclear Participants or the Clearstream, Luxembourg customers, respectively, or that DTC Participants, Euroclear Participants or Clearstream, Luxembourg customers will make prompt transfer of payments to Beneficial Owners. Government Development Bank is not responsible or liable for payment by DTC, DTC Participants, Euroclear Bank, Euroclear Participants, Clearstream, Luxembourg or Clearstream, Luxembourg customers or for sending transaction statements or for maintaining, supervising or reviewing records maintained by DTC or Participants.

For every transfer and exchange of the 2012 Series A Notes, the Beneficial Owners may be charged a sum sufficient to cover any tax, fee or other charge that may be imposed in relation thereto.

**Discontinuance of the Book-Entry Only System**

In the event that the book-entry only system is discontinued, the following provisions will apply: principal of the 2012 Series A Notes shall be payable in lawful money of the United States of America at the principal office of the Trustee in San Juan, Puerto Rico. Interest on the 2012 Series A Notes will be payable by check mailed to the respective addresses of the registered owners determined as of the 15th day of the month preceding the interest payment date as shown on the registration books of Government Development Bank maintained by the Trustee. The 2012 Series A Notes will be issued only as registered notes without coupons in denominations of $5,000 and integral multiples of $5,000 in excess thereof. The transfer of the 2012 Series A Notes will be registrable and they may be exchanged at the corporate trust office of the Trustee in San Juan, Puerto Rico, upon the payment of any taxes or other governmental charges required to be paid with respect to such transfer or exchange.

## GOVERNMENT DEVELOPMENT BANK

**Organization and Powers**

Government Development Bank is a public corporation and governmental instrumentality of the Commonwealth created by Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended (the "Enabling Act") to aid the Commonwealth in the performance of its fiscal duties and more effectively carry out its governmental responsibility to develop the economy of Puerto Rico, particularly with respect to its industrialization. The Enabling Act establishes Government Development Bank's charter (the "Charter"), which provides that its existence is perpetual. Pursuant to the Enabling Act, no amendment to the Enabling Act, or to any other law of the Commonwealth, may impair any outstanding obligation or commitment of Government Development Bank.

Under its Charter, Government Development Bank has the power, among other things, to borrow money, to issue bonds, notes, debentures, and other obligations, to lend money to and purchase obligations issued by the Commonwealth, its instrumentalities, public corporations and municipalities, to lend money to any other person when such moneys are to be used to develop the economy of Puerto Rico, and to sue and be sued. It also has the power to acquire property for its corporate purposes; to acquire any property in the settlement or reduction of debts previously contracted, where such acquisition is necessary to minimize or avoid loss in connection therewith; to establish branches, offices or agencies for the

transaction of its business; to purchase, hold, lease, mortgage and convey real property; and to create subsidiary or affiliate corporations.  See "General Financial Information" below.

Government Development Bank is generally exempt from Commonwealth taxation.  It is required to have an annual examination and audit by certified public accountants of national reputation selected by its Board of Directors.  Government Development Bank is subject to examination and supervision by the Commissioner of Financial Institutions of the Commonwealth.  The Comptroller of the Commonwealth, who is responsible to the Legislature of Puerto Rico, also reviews the operations of Government Development Bank every two to three years.

**Principal Functions**

The principal functions of Government Development Bank are to act as fiscal agent, paying agent and financial advisor to the Commonwealth and its instrumentalities, public corporations and municipalities, and to the Governor, the Council of Secretaries, and the Secretary of Treasury of Puerto Rico; to provide interim and long-term financing to the Commonwealth and its instrumentalities, public corporations and municipalities, and to private parties for economic development; and to act as depositary or trustee of funds for the Commonwealth and its instrumentalities, public corporations and municipalities.

In its role as fiscal agent and financial advisor, it acts as advisor to the Commonwealth and its instrumentalities, public corporations and municipalities in connection with all their borrowings, and all such borrowings are subject to prior approval by Government Development Bank.  Government Development Bank receives fees for rendering such services.

Government Development Bank lends to, and purchases and guarantees certain obligations of, the Commonwealth and its instrumentalities, public corporations and municipalities.  It provides interim financing to these entities in anticipation of their refinancing such indebtedness in the bond market and also provides long-term financing to such entities.  In fiscal years 2011, 2010, and 2009, Government Development Bank disbursed individual lines of credit and other financing facilities to the public sector in aggregate amounts of approximately $4.6 billion, $3.3 billion, and $3.8 billion, respectively.  For a breakdown of the outstanding principal amount of certain of Government Development Bank's loans to the public sector, see the table under "Loans to the Commonwealth, its Public Corporations and Municipalities" below.

Government Development Bank also lends and provides guarantees to the private sector, mainly through its subsidiaries, the Tourism Development Fund and the Housing Finance Authority.  For a description of Government Development Bank's loans to the private sector, see "Loans to Private Enterprises" below.  From time to time, Government Development Bank also issues letters of credit to guarantee obligations of private lenders with respect to financing arrangements that promote the development of the Commonwealth's economy.

**Fiscal Oversight Agreements**

As part of its risk management activities and as a condition to provide financing support to certain public corporations and agencies, Government Development Bank has entered into fiscal oversight agreements ("FOAs") with the Highways and Transportation Authority, PRASA, the Puerto Rico Electric Power Authority (the "Electric Power Authority"), the Puerto Rico Ports Authority (the "Ports Authority"), the Puerto Rico Medical Services Administration, the Puerto Rico Health Insurance Administration and the Puerto Rico Maritime Transportation Authority, and may enter into FOAs with other public corporations and agencies.  The FOAs require such public corporations and agencies to implement a comprehensive expense reduction program, including certain fiscal oversight controls

designed to minimize future tariff increases to households and the private sector, and to protect and improve their credit ratings. Such public corporations and agencies are also required to furnish to Government Development Bank monthly reports concerning their financial condition.

Government Development Bank has also entered into Cooperation and Financial Reporting Agreements ("COFRAs") with the University of Puerto Rico and certain municipalities, which provide practically the same mechanism as any of the FOAs.

Government Development Bank's approval of any current and future financing is expressly conditioned upon the compliance by the public corporation, agency or municipality with the covenants established in its FOA or COFRA. Each FOA or COFRA will remain in effect until the parties mutually agree that the public corporation, agency or municipality has regained a level of financial stability and is able to secure long-term financing that will result in the continued stability of its operations and financial condition.

As of January 11, 2012, all public corporations and agencies have complied with the material terms and conditions of their respective FOAs or COFRA.

**Board of Directors and Management**

Government Development Bank is governed by a seven member Board of Directors appointed by the Governor with the approval of the Council of Secretaries. The Board of Directors consists of the following members serving terms as indicated:

| Member | Commencement of Term | Expiration Date |
|---|---|---|
| Marcos Rodríguez-Ema, Chairman | January 15, 2009 | September 23, 2015 |
| Juan Carlos Batlle, Vice Chairman | March 2, 2011 | September 23, 2012 |
| Manuel H. Dubón, Esq. | February 2, 2009 | September 23, 2012 |
| Juan E. Rodríguez Díaz, Esq. | February 20, 2009 | September 23, 2012 |
| Eduardo R. Emanuelli | May 11, 2011 | September 23, 2015 |
| Jesús F. Méndez | May 18, 2011 | September 23, 2014 |
| Eugenio L. Torres | July 5, 2011 | September 23, 2014 |

The Board of Directors appoints a President who is the chief executive officer of Government Development Bank and is responsible for its day-to-day operations. Government Development Bank also has four executive vice presidents who are in charge of its principal operational and business units. The following are Government Development Bank's principal officers:

**Juan Carlos Batlle** was appointed President of Government Development Bank effective as of March 2, 2011. Before entering public service, Mr. Batlle served 14 years with distinction as a top executive for Santander Group in Puerto Rico. He initially joined Santander in 1997 and soon began to move up the corporate ranks. As part of the Investment Banking Group of Santander Securities Corporation, he served consecutively as Assistant Vice President in 1999, Vice President in 2001, and Senior Vice President and Director in 2003. Then, in 2005, Mr. Batlle moved on to serve as First Senior Vice President of Banco Santander Puerto Rico and President and Chief Executive Officer of Santander Asset Management Corporation. Most recently, he went on to serve as Managing Director of Santander Securities Corporation in 2008. Prior to Santander, Mr. Batlle worked for Popular Securities. Mr. Batlle has also been a member of the Board of Directors of Santander Securities Corporation, Santander Asset Management Corporation and the First Puerto Rico Family of Funds. In addition, he has been a member of the Board of Directors of the Puerto Rico Tourism Company, the Convention Center District Authority

and the Hotel Development Corporation.  He holds a degree in Economics from the College of Literature, Science and the Arts of the University of Michigan.

**José R. Otero-Freiría** was appointed Executive Vice President of Government Development Bank and Director of Financing effective as of March 2, 2011.  Throughout his professional career, Mr. Otero-Freiría has held various top positions in the financial field, including Manager of Procter & Gamble's Finance Department in San Juan, Finance Manager for Guidant Corporation (later Boston Scientific) in Santa Clara, California, and Director of Institutional Investment Consulting Services at UBS Financial Services in San Juan, Puerto Rico.  Most recently, he served in the Office of the Governor as Advisor for Economic Development and Finance, and as Deputy Chief of Staff for Public Policy.  Mr. Otero-Freiría earned his bachelor's degree in Economics with a major in Finance and Accounting from the Wharton School of Business at the University of Pennsylvania.  He later earned his Master's in Business Administration from Stanford University.  He is a Certified Public Accountant.

**Rubén Méndez-Benabe**, Executive Vice President, became Chief Operating Officer on July 13, 2011, after serving as General Counsel and Secretary of the Board of Directors of Government Development Bank, and as Advisor to the President of Government Development Bank.  He has also served as Executive Advisor and Legal Counsel to the Commissioner of Financial Institutions.  Mr. Méndez-Benabe has extensive experience in regulation of financial institutions and holds a Juris Doctor degree from the University of Puerto Rico School of Law and a bachelor's degree from the University of Puerto Rico.

**Juan M. Román Rivera** was appointed Executive Vice President and Fiscal Agent of Government Development Bank effective March 2, 2011.  Before being named Executive Vice President of Government Development Bank, he served as Chief Advisor to the Governor on Government Management Performance and Executive Director of the Government's Reorganization Committee of the Executive Branch.  In this role, Mr. Román oversaw the Government's efforts to streamline government's agencies, and internal processes to enhance government services as well as reduce government expenditures.  Before entering public service, Mr. Román was the Commercial Director for ConAgra Foods Puerto Rico where he led several corporate reorganization efforts during his tenure from July 2004 to January 2009.  Prior to ConAgra Foods, Mr. Román held several positions at Procter & Gamble Puerto Rico in sales, marketing, and operations roles.  Mr. Román has a Master's of Science in Information Networking, which is a dual degree program (MBA/MSE) from Carnegie Mellon University, and a Bachelor of Science in Electrical Engineering from the University of Pennsylvania.

**Ignacio Canto** is the Executive Vice President and Treasurer of Government Development Bank, where he commenced working in August 2010.  Prior to his tenure as Executive Vice President and Treasurer, Mr. Canto worked at Santander Asset Management Corporation where he began as a portfolio analyst and later on became portfolio manager.  At Santander Asset Management Corporation, he garnered experience trading interest rate derivatives, agency debentures, structured products, municipal bonds, equities and equity derivatives in the context of a geared portfolio.  Prior to joining Santander Asset Management Corporation, he worked at Santander Securities Corporation as part of the Investment Banking Group, where he participated in financings of the Commonwealth, its agencies, corporations and instrumentalities, including Government Development Bank, Puerto Rico Housing Finance Authority and Puerto Rico Convention Center District Authority.  In addition, Mr. Canto has performed financial analysis and valuations for corporate clients with a particular emphasis on mergers and acquisitions.  Mr. Canto holds a Bachelor of Business Administration in Finance from Boston University's School of Management, as well as the Chartered Financial Analyst designation (CFA) and the Financial Risk Manager designation (FRM).

**Javier Ramos Luiña**, Senior Vice President, has 21 years of experience in the capital markets and banking industry of which the last 15 years have been at Government Development Bank. Throughout his tenure with Government Development Bank, Mr. Ramos has also directed several of its affiliates and subsidiaries. He is the Assistant Executive Director of the Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority, and for 9 years, he was also the Executive Director for the Puerto Rico Tourism Development Fund, two public corporations that assist in financing capital investments that promote economic development in Puerto Rico. Mr. Ramos obtained his Masters in Business Administration degree from Atlanta University in 1990 and Bachelor of Science degree in Business Administration from Bryant College in 1988.

**Zulema Martínez-Álvarez** has been Senior Vice President, General Counsel and Secretary of the Board of Directors since July 13, 2011. Before being named General Counsel, Mrs. Martínez-Álvarez served as Legal Counsel of Government Development Bank, the Energy Affairs Administration and the Solid Waste Management Authority. She also served as an Assistant Solicitor General for the Solicitor General's Office at the Department of Justice and as a Law Clerk for the Puerto Rico Court of Appeals. Mrs. Martínez-Álvarez holds a Juris Doctor from the University of Puerto Rico School of Law, a Master's of Public Health from the University of Puerto Rico Public Health Graduate School and a bachelor's degree from the University of Puerto Rico.

As of June 30, 2011, Government Development Bank and its affiliates and subsidiaries had approximately 406 employees, 137 of which were members of the Union of Employees of Government Development Bank and the Puerto Rico Housing Finance Authority (the "Housing Finance Authority").

The main offices of Government Development Bank are located at Roberto Sánchez Vilella Government Center, De Diego Avenue, P.O. Box 42001, San Juan, Puerto Rico 00940, and its telephone number is (787) 722-2525. Government Development Bank also maintains an office at 135 West 50th Street, 22nd Floor, New York, NY, telephone (212) 422-6420.

**Government Development Bank Subsidiaries**

Government Development Bank has several subsidiaries which perform various functions. The principal subsidiaries and their functions are listed below.

*Housing Finance Authority.* The Housing Finance Authority (formerly known as Puerto Rico Housing Finance Corporation) was created in 1977 to provide needed rental housing units and stimulate the construction industry under federally subsidized programs. Effective February 8, 2002, the Housing Finance Corporation became the Housing Finance Authority, and the Housing Bank and Finance Agency was dissolved, and its powers transferred to the Housing Finance Authority. The Housing Finance Authority provides financing for rental housing units, stimulates the construction industry under federally subsidized programs and provides interim financing for low-income housing projects and single-family homeownership programs. It is also engaged in insuring and servicing mortgages originated by the former Housing Bank and Finance Agency. As of June 30, 2011, the Housing Finance Authority's total outstanding principal balance of loans to the private sector for development of housing projects targeted to low and moderate income families were $154.9 million. The Housing Finance Authority's mortgage loans to low and moderate income homeowners represented an additional outstanding principal balance of $147.5 million as of the same date.

The Housing Finance Authority has outstanding tax-exempt revenue bonds the proceeds of which were loaned to the Puerto Rico Public Housing Administration and to a limited liability company to finance improvements to various housing projects in the Commonwealth. Such bonds are limited obligations of the Housing Finance Authority, payable solely from revenues collected from such housing projects, with certain exceptions. As of June 30, 2011, $623.8 million of these bonds were outstanding.

As of June 30, 2011, the Housing Finance Authority had total notes and bonds outstanding of $952.2 million (including $106.8 million under loan agreements and other financings with Government Development Bank and $823.3 million in bonds issued to fund certain payments under its mortgage subsidy programs for low and moderate income families). As of June 30, 2011, the Housing Finance Authority had total unrestricted net assets of $243.8 million.

*Tourism Development Fund.* The Puerto Rico Tourism Development Fund (the "Tourism Development Fund") was created in September 1993 to facilitate the development of Puerto Rico's hotel and tourism industry. The Tourism Development Fund works with private sector financial institutions to structure financings for new hotel projects. The Tourism Development Fund is also authorized to make capital investments in tourism related projects. As of June 30, 2011, the Tourism Development Fund had outstanding direct loans in an aggregate outstanding amount of $432.3 million, and guarantees and letters of credit issued in the outstanding amount of $328.5 million (with a maximum commitment amount of guarantees and letters of credit of $446.4 million). In addition, the Tourism Development Fund has a $50 million preferred equity investment in a tourism-related project. Total assets as of June 30, 2011 were $611.3 million.

Since 1993, the Tourism Development Fund has made payments under its guarantees and letters of credit in the aggregate amount of approximately $221.3 million with respect to several projects. Of the total amount disbursed, the Tourism Development Fund has been able to recover approximately $172.3 million. For calendar year 2012, the Tourism Development Fund estimates that it will make principal and interest payments of approximately $2.7 million on financial guarantees of loans to two tourism projects with total outstanding balances of approximately $50.6 million. As of June 30, 2011, the net assets of the Tourism Development Fund were approximately $154.1 million, and its allowances for losses on loans and guarantees and letters of credit were approximately $110.5 million.

*Capital Fund.* Government Development Bank for Puerto Rico's Capital Fund (the "Capital Fund") was created in November 1992 for the purpose of investing and trading in debt obligations and publicly traded shares of domestic and foreign corporations separate from Government Development Bank's general investment operations. On June 30, 2010, the Capital Fund transferred to the Tourism Development Fund $72.1 million representing most of its investments at such date. As of June 30, 2011, the Capital Fund had assets of $243,000, consisting principally of money market investments.

*Development Fund.* The Puerto Rico Development Fund (the "Development Fund") was established in April 1977 to provide an alternate source of financing to private enterprises. The Development Fund is also authorized to guarantee obligations of those enterprises and invest in their equity securities. On December 10, 2010, the Development Fund acquired for $8.5 million a commercial loan from a private commercial bank, secured by a first mortgage over a 2.34 acre parcel of land in the Convention Center District. As of June 30, 2011, the Development Fund had assets of $22.9 million, including investments of $8.1 million in loans to private entities, $11.2 million in an interest bearing account, and $3.6 million in preferred shares of various private entities.

*Public Finance Corporation.* The Puerto Rico Public Finance Corporation (the "Public Finance Corporation") was established in November 1984 to provide agencies and instrumentalities of the Commonwealth with alternate means of meeting their financing requirements. The trustees of certain limited obligation bonds issued by the Public Finance Corporation currently hold notes payable by the Commonwealth, the Maritime Shipping Authority, the Office for the Improvement of Public Schools, the Department of Health, and PRASA, among others. All such bonds are limited non-recourse obligations of the Public Finance Corporation payable solely from Commonwealth appropriations made to pay the notes held by the trustees. As of June 30, 2011, the Public Finance Corporation had $1.6 billion aggregate principal amount of limited obligation bonds outstanding.

**Budget for Fiscal Year 2012**

The following table presents a summary of the Commonwealth's central government budget for the fiscal year ending June 30, 2012.

**Commonwealth of Puerto Rico**
**Summary of Central Government Annual Budget**
**Fiscal Year Ending June 30, 2012**
**(in thousands)***

| | General and Stabilization Fund | Bond Fund | Special Funds | Total |
|---|---:|---:|---:|---:|
| Revenues from internal sources: | | | | |
| Property taxes | $  76,000 | - | $ 116,321 | $  192,321 |
| Personal income taxes | 2,109,000 | - | - | 2,109,000 |
| Retained non-resident income tax | 980,000 | - | - | 980,000 |
| Corporate income taxes | 1,515,000 | - | - | 1,515,000 |
| Partnership income taxes | 2,000 | - | - | 2,000 |
| Tollgate taxes | 5,000 | - | - | 5,000 |
| 17% withholding tax on interest | 8,000 | - | - | 8,000 |
| 10% withholding tax on dividends | 28,000 | - | - | 28,000 |
| Inheritance and gift taxes | 5,000 | - | - | 5,000 |
| Sales and use taxes | 680,000 | - | - | 680,000 |
| Excise taxes: | | - | | |
| Alcoholic beverages | 298,000 | - | - | 298,000 |
| Foreign (Act 154) | 1,578,000 | - | - | 1,578,000 |
| Motor vehicles and accessories | 361,000 | - | - | 361,000 |
| Cigarettes | 210,000 | - | - | 210,000 |
| Other (excise taxes) | 78,000 | - | 724,573 | 802,573 |
| Licenses | 79,000 | - | - | 79,000 |
| Miscellaneous non-tax revenues: | | - | | |
| Contributions from lottery fund | 45,000 | - | - | 45,000 |
| Electronic lottery | 83,000 | - | - | 83,000 |
| Registration and document certification fees | 154,000 | - | - | 154,000 |
| Other | 85,000 | - | 423,978 | 508,978 |
| Total revenues from internal sources | 8,379,000 | - | 1,264,872 | 9,643,872 |
| Revenues from non-Commonwealth sources: | | | | |
| Federal excise taxes on off-shore shipments | 271,000 | - | - | 271,000 |
| Federal grants[(1)] | 0 | - | 4,784,271 | 4,784,271 |
| Customs | 0 | - | - | 0 |
| Total revenues from non-Commonwealth sources | 271,000 | - | 4,784,271 | 5,055,271 |
| Total revenues | 8,650,000 | - | 6,049,143 | 14,699,143 |
| Other: | | | | |
| Balance from previous year | 0 | - | 858,678 | 858,678 |
| COFINA Stabilization Fund | 610,000 | - | - | 610,000 |
| Bonds authorized | 0 | - | - | 0 |
| Total other sources | 610,000 | - | 858,678 | 1,468,678 |
| Total resources | 9,260,000 | - | 6,907,821 | 16,167,821 |
| Appropriations: | | | | |
| Current expenses: | | | | |
| General government | 831,984 | - | 61,252 | 893,236 |
| Education | 3,077,281 | - | 1,728,895 | 4,806,176 |
| Health | 1,367,187 | - | 541,763 | 1,908,950 |
| Welfare | 444,645 | - | 2,685,719 | 3,130,364 |
| Economic development | 359,373 | - | 110,088 | 469,461 |
| Public safety and protection | 1,523,677 | - | 104,387 | 1,628,064 |
| Transportation and communication | 150,561 | - | 38,107 | 188,668 |
| Housing | 18,814 | - | 402,647 | 421,461 |
| Contributions to municipalities | 395,644 | - | 5,643 | 401,287 |
| Special pension contributions | 420,312 | - | 0 | 420,312 |
| Debt service | 179,359 | - | 116,321 | 295,680 |
| Other debt service (appropriations) | 491,163 | - | 735,181 | 1,226,344 |
| Total appropriations – current expenses | 9,260,000 | - | 6,530,003 | 15,790,003 |
| Capital improvements | 0 | - | 153,123 | 153,123 |
| Total appropriations | 9,260,000 | - | 6,683,126 | 15,943,126 |
| Year-end balance | 0 | - | 224,695 | 224,695 |
| Total appropriations and year-end balance | $9,260,000 | - | $6,907,821 | $16,167,821 |

*   Totals may not add due to rounding.
(1) Does not include grants received by agencies whose accounting systems are not centralized in the Treasury Department.
*Sources:  Treasury Department and Office of Management and Budget*

The budget provides for total resources of $16.2 billion and General Fund total revenues of $9.260 billion.  The budgeted General Fund total revenue of $9.260 billion includes base revenues of $7.072 billion, $1.578 billion from tax enforcement and compliance measures and $610.0 million in additional revenues from COFINA Stabilization Fund.

The principal changes in budgeted General Fund revenues compared to the fiscal year 2011 budget are accounted mainly by the projected collections from the new temporary excise tax under Act 154 (up $969.0 billion), sales and use taxes (up $125.0 million), withholding taxes on non-residents (up $28.5 million), alcoholic beverage (up $9.0 million), and projected decreases in excise taxes on motor vehicles and accessories (down  $8.0 million), corporate income tax (down $51.0 million), federal excise taxes on offshore shipments (down $66.0 million), property taxes (down $162 million) and personal income taxes (down $239.0 million).

The fiscal year 2012 budget provides for total expenditures of $9.260 billion, consisting of General Fund expenditures of $8.650 billion and additional expenditures of $610 million that are expected to be covered from proceeds of COFINA bonds deposited in the Stabilization Fund. The budgeted total expenditures for fiscal year 2012 are $9.260 billion, or 1.2%, higher than budgeted total expenditures of $9.150 billion for fiscal year 2011, and $910.0 million, or 8.9%, lower than total expenditures of $10.170 billion for fiscal year 2010.

Budgeted expenses and capital improvements for the central government of all budgetary funds total $15.9 billion, a decrease of $142.9 million from fiscal year 2011 budgeted appropriations.  The principal changes in General Fund expenditures by program in fiscal year 2012 compared to the fiscal year 2011 budget are mainly due to increases in education (up $131.4 million), economic development (up $106.4 million), special pension contributions (up $85.8 million), contributions to municipalities (up $28.5 million) public safety and protection (up $80.1 million), and decreases in general obligation bonds debt service (down $21.5 million), welfare (down $22.0 million), other debt service appropriations (down $26.0 million) and health (down $209.2 million).

### Differences between Budget and Basic Financial Statements

Revenues and expenditures, as reported by the Treasury Department in its Basic Financial Statements, may differ substantially from resources and appropriations in the annual budget for a number of reasons, including the following:

(i)      The budgetary accounts are on a cash basis, while financial statements prepared by the Treasury Department include accruals and other adjustments as required by government accounting standards.

(ii)      Expenditures for current purposes in a particular fiscal year may include amounts appropriated for earlier periods but not previously expended or amounts not budgeted for a particular fiscal year, but expended during that year, and, conversely, may exclude amounts appropriated for such fiscal year but not expended until later periods.

(iii)      Bonds are authorized by the Commonwealth in accordance with a four-year capital improvement program.  Since bond sales are determined by bond market conditions and other factors, the amounts of bonds sold for these improvements are financed by advances from

the General Fund to the Capital Projects Fund, which are later reimbursed from proceeds of bond or notes sales.

## LITIGATION

*General*. The Commonwealth is a defendant in numerous legal proceedings pertaining to matters incidental to the performance of routine governmental operations. Under Act No. 104 of June 25, 1955, as amended ("Act 104"), persons are authorized to sue the Commonwealth only for causes of actions specified in said Act. The Commonwealth may be liable under Act 104 for damages up to a maximum amount of $75,000, or $150,000 if the suit involves actions for damages to more than one person or where a single injured party is entitled to several causes of action.

Under certain circumstances, as provided in Act No. 9 of November 26, 1975, as amended, the Commonwealth may provide its officers and employees, including directors of public corporations and government instrumentalities and mayors of the municipalities of the Commonwealth, with legal representation, as well as assume the payment of any judgment that may be entered against them. There is no limitation on the amount of the judgment that may be paid under the Act in cases before federal court, but in all other cases the Puerto Rico Secretary of Justice may determine whether, and to what extent, the Commonwealth will assume payment of such judgment.

With respect to pending and threatened litigation, excluding the litigation mentioned in the following paragraphs, as of June 30, 2010, the Commonwealth has included in its financial statements reported liabilities of approximately $421 million for awarded and anticipated unfavorable judgments. Such amount represents the amount estimated at the time as a probable liability or a liability with a fixed or expected due date, which would require future available financial resources for its payment. The amounts claimed exceed $7 billion; however, the ultimate liability cannot be presently determined. The Commonwealth believes that the claims are excessive and that the ultimate liability in excess of amounts provided in the financial statements, if any, would not be significant.

*Recovery of Medicaid Funds*. The Commonwealth is a defendant in two lawsuits filed, one in Commonwealth court and one in the U.S. District Court for the District of Puerto Rico, by certain Federally Qualified Health Centers ("FQHC") seeking to recover from the Commonwealth approximately $800 million in Medicaid wraparound payments which the Department of Health failed to make since 1997. In June 2004, the Superior Court of the Commonwealth in San Juan determined that the Commonwealth must make Medicaid "wraparound" payments to the health centers to cover the difference between the reimbursement they are owed and what they are paid by managed care organizations. The Court of Appeals of Puerto Rico, however, upheld a partial ruling allowing the Commonwealth to deduct from the payments due to the FQHCs certain grants received by these centers from the federal government. Currently, attorneys in the case filed in Commonwealth court are trying to determine the amounts due to FQHCs thereunder.

With respect to the federal case, in February 2005, the U.S. Court of Appeals (First Circuit) upheld a preliminary injunction issued by the U.S. District Court for the District of

Puerto Rico requiring the Commonwealth to make Medicaid "wraparound" payments to the health centers. In December 2008, the U.S. Court of Appeals determined that the U.S. District Court erred when it vacated the preliminary injunction entered against two of the FQHCs and determined that the Department of Health had met its obligations to establish and implement a payment system for FQHCs in compliance with the federal Medicaid statute. The U.S. Court of Appeals reversed the District Court's order vacating the preliminary injunction and remanded the case for further proceedings.

Recently, the Court entered a preliminary injunction as to the remaining 15 health centers, and granted a request by the Department of Health for Eleventh Amendment sovereign immunity. The plaintiff FQHCs immediately filed an appeal regarding the issue of Eleventh Amendment.

Meanwhile, the Department of Health filed a counter appeal regarding the Court's interpretation of certain components of the wraparound formula that must be used under the preliminary injunction to calculate wraparound payments owed to the plaintiffs. The Department has already made approximately $12 million in uncontested wraparound payments owed under the injunction. However, the Court granted the Department's request for a stay pending appeal regarding payment of an additional $14.5 million that are owed under the Court's wraparound formula. This sum has been consigned with the Court pending appeal, but may have to be increased to reflect the difference between the amounts owed under the Court's formula and the Department's formula since the consignment.

As of June 30, 2010, the Commonwealth accrued $280 million in its financial statements for this legal contingency.

*Special Education Students.* The Commonwealth is also a defendant in a class action presented in 1980 by parents of special-education students before Commonwealth courts alleging that the Puerto Rico Department of Education had failed to provide legally required special education and related services. In February 2002, the court issued a judgment approving the stipulations reached by the parties regarding the manner special education services should be provided. Since December 2002, the Department of Education has paid fines for not complying with the stipulations reached. The fines were originally set in the amount of $1,000 daily, and were raised to $2,000 daily in January 2006. In February 8, 2010, the court issued a resolution advancing its intention to establish a new scheme of fines ranging from $0.25 to $0.75 daily per registered student. As of February 2010, there were 121,339 students registered in the Special Education Program. Said resolution also creates a new scheme of monitoring compliance with the stipulations, including the added participation of 12 experts (each party has the right to designate 2 experts) in 6 areas of expertise. Said monitoring scheme began on July 1, 2010.

The February 2002 judgment only disposed of the injunctive relief sought by plaintiffs. Still pending before the court are the claims for damages regarding the failure to provide adequate services. In 2005, the Court of First Instance denied damages for the class as a whole. The plaintiffs appealed the decision and, in October 2005, the Court of Appeals decided that there could be no general damages award, but that every member of the class must come forward and prove their individual damages within this case. Assuming the Court grants damages to the plaintiffs, the Commonwealth estimates that each plaintiff could receive at least

$5,000. Based on a current enrollment of 120,000 students, the total award could amount to at least $600 million. The Commonwealth plans to defend vigorously each case.

The plaintiffs approached the Commonwealth to inquire about its disposition to reach a settlement agreement regarding the damages phase. At the Commonwealth's request, the plaintiffs submitted a settlement offer. Settlement conversations stopped after the parties reached an impasse during negotiations.

As of June 30, 2010, the Commonwealth had accrued $600 million in its financial statements for this legal contingency.

*Other*. The Commonwealth and various component units are defendants in other lawsuits alleging violations of civil rights, breach of contract, and other damage claims. Preliminary hearings and discovery proceedings are in progress. No provision for any liability that may result upon adjudication of these lawsuits has been recognized by the Commonwealth. The Commonwealth believes that the ultimate liability, if any, would not be significant.

*Appendix III*

**PROPOSED FORM OF OPINION OF BOND COUNSEL**

*Upon delivery of the 2012 Series A Notes, Squire Sanders (US) LLP is prepared to render its final opinion with respect to the 2012 Series A Notes in substantially the following form:*

_____, 2012

Government Development
   Bank for Puerto Rico
San Juan, Puerto Rico

      We have served as bond counsel to our client Government Development Bank for Puerto Rico (the "Government Development Bank") and not as counsel to any other person in connection with the issuance by Government Development Bank of its $1,000,000,000 aggregate principal amount of Senior Notes, 2012 Series A (Taxable) (the "Notes"), dated the date of this letter.

      The Notes are issued pursuant to Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended, reenacted and supplemented (the "Enabling Act") and a resolution adopted by the Executive Committee of the Board of Directors of Government Development Bank on February 1, 2012 (the "Resolution"). The Notes are secured by that certain Indenture dated February 17, 2006, as supplemented (the "Indenture"), between Government Development Bank and Banco Popular de Puerto Rico, as trustee. Capitalized terms not otherwise defined in this letter are used as defined in the Resolution and the Indenture, as applicable.

      In our capacity as bond counsel, we have examined the transcript of proceedings relating to the issuance of the Notes, including the Enabling Act, the Indenture and the Resolution, a copy of the signed and authenticated Note of the first maturity and such other documents, matters and law as we deem necessary to render the opinions set forth in this letter.

      Based on that examination and subject to the limitations stated below, we are of the opinion that under existing law:

1.     The Enabling Act has been validly enacted and is in full force and effect, and Government Development Bank is a duly constituted and existing public corporation and governmental instrumentality of the Commonwealth of Puerto Rico.

2.     The Resolution has been validly and legally adopted.

3.     The Notes and the Indenture are valid and binding obligations of Government Development Bank, enforceable in accordance with their respective terms.

4.     The Notes are general, unsecured, senior obligations of Government Development Bank, and the principal of, redemption premium, if any, and interest (collectively, "debt service") on the Notes, together with debt service on any other obligations issued and outstanding on a parity with the Notes as provided in the Indenture, are payable from any available funds of Government Development Bank. The Notes shall not be deemed to constitute a debt or obligation of the Commonwealth of Puerto Rico or any of its municipalities or other political subdivisions, other than Government Development Bank, and neither the Commonwealth of Puerto Rico nor any

Government Development
   Bank of Puerto Rico
_____, 2012
Page 2

      such municipalities or other political subdivisions, other than Government Development Bank, are liable for the payment of debt service on the Notes.

5.      The information under the caption "TAX MATTERS – United States Federal Tax Considerations" in the Official Statement, dated February 1, 2012, relating to the Notes, is a fair and accurate summary of the information referred to therein.  The reference to said Official Statement is to the document examined by us upon delivery of the Notes, and not to any physical or electronic reproduction other than a true copy.

      We express no other opinion as to any federal, state, Commonwealth of Puerto Rico or local tax consequences regarding the Notes.

      The opinions stated above are based on an analysis of existing laws, regulations, rulings and court decisions and cover certain matters not directly addressed by such authorities.  In rendering all such opinions, we assume, without independent verification, and rely upon (i) the accuracy of the factual matters represented, warranted or certified in the proceedings and documents we have examined and (ii) the due and legal authorization, execution and delivery of those documents by, and the valid, binding and enforceable nature of those documents upon, any parties other than Government Development Bank.

      The rights of the owners of the Notes and the enforceability of the Notes and the Indenture are subject to bankruptcy, insolvency, arrangement, fraudulent conveyance or transfer, reorganization, moratorium and other laws relating to or affecting creditors' rights, to the application of equitable principles, to the exercise of judicial discretion, and to limitations on legal remedies against public entities.

      The opinions rendered in this letter are stated only as of this date, and no other opinion shall be implied or inferred as a result of anything contained in or omitted from this letter.  Our engagement as bond counsel with respect to the Notes has concluded on this date.

                        Respectfully submitted,

III-2

*Appendix IV*

**PROPOSED FORM OF OPINION OF SPECIAL PUERTO RICO TAX COUNSEL**

*Upon delivery of the 2012 Series A Notes, McConnell Valdés LLC is prepared to render its Puerto Rico tax opinion with respect to the 2012 Series A Notes in substantially the following form:*

_____, 2012

Government Development Bank for Puerto Rico
Roberto Sánchez Vilella Government Center
De Diego Avenue, Stop 22
San Juan, Puerto Rico  00940

Ladies and Gentlemen:

In connection with the issuance on the date hereof by Government Development Bank for Puerto Rico of its $1,000,000,000 Senior Notes, 2012 Series A (Taxable) (the "Notes"), you have requested our opinion with respect to the treatment for Puerto Rico tax purposes of the ownership and disposition of the Notes.

We have examined Act No. 17 of the Legislature of Puerto Rico, approved September 23, 1948, as amended (the "Act"), creating Government Development Bank for Puerto Rico (the "Bank") and Resolution No. EC-2012-03 adopted by the Executive Committee of the Board of Directors of the Bank on February 1, 2012 authorizing the issuance and delivery of the Notes.  The Bank is a body corporate and politic constituting a public corporation and governmental instrumentality of Commonwealth of Puerto Rico (the "Commonwealth") exercising public and essential governmental functions.

From such an examination, we are of the opinion that, based on the laws of the Commonwealth now in effect, the information under the caption "TAX MATTERS – Puerto Rico Tax Considerations" in the Official Statement, dated February 1, 2012, relating to the Notes, is a fair and accurate summary of the information referred to therein.  The reference to said Official Statement is to the document examined by us upon delivery of the Notes, and not to any physical or electronic reproduction other than a true copy.

We express no other opinion as to any federal, foreign, state, Commonwealth or local tax consequences regarding the Notes.

This letter is furnished by us solely for the benefit of the Bank and the holders from time to time of the Notes and may not be relied upon by any other person.

The opinions rendered in this letter are stated only as of this date, and no other opinion shall be implied or inferred as a result of anything contained in or omitted from this letter.  Our engagement as special Puerto Rico tax counsel with respect to the Notes has concluded on this date.

Respectfully submitted,

IV-1

[THIS PAGE INTENTIONALLY LEFT BLANK]

Exhibit 8 - Page 36 of 37

GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO • SENIOR NOTES, 2012 SERIES A (TAXABLE)



MIX
From responsible
sources
FSC
www.fsc.org
FSC® C017146

Printed by: ImageMaster
www.ImageMaster.com