# **Exhibit 6**

**NEW ISSUE**
**Book-Entry Only**



$469,770,000
# Puerto Rico Infrastructure Financing Authority
### Special Tax Revenue Bonds, Series 2006

The Special Tax Revenue Bonds, Series 2006, are being issued by Puerto Rico Infrastructure Financing Authority pursuant to a Trust Agreement, dated as of October 1, 1988, as amended, with U.S. Bank Trust National Association, successor trustee.

The Series 2006 Bonds, together with any outstanding bonds that the Authority has issued and may issue from time to time under said Trust Agreement, are payable solely from and secured by a pledge of the revenues of the Authority, consisting of a specified amount of the first proceeds received by the Commonwealth of Puerto Rico of federal excise taxes imposed on rum and other articles produced in Puerto Rico and sold in the United States, which taxes are collected by the United States Treasury and returned to the Commonwealth, and other moneys deposited in the Sinking Fund established under the Trust Agreement. If the federal excise taxes returned to the Commonwealth in any fiscal year fall below such specified amount, the deficiency shall be payable from appropriations which the Legislature of Puerto Rico may, but is not legally required to, make upon request by the Authority. Such federal excise taxes, however, are subject to being applied first to the payment of general obligation debt of and debt guaranteed by the Commonwealth, if other Commonwealth revenues are not sufficient therefor.

The Series 2006 Bonds will have the following characteristics:

- The Series 2006 Bonds will be dated their date of delivery.

- The Series 2006 Bonds will be registered under The Depository Trust Company's book-entry only system. Purchasers of the Series 2006 Bonds will not receive definitive Series 2006 Bonds.

- Interest on the Series 2006 Bonds will be payable on January 1 and July 1 of each year, commencing January 1, 2007.

- The Series 2006 Bonds are subject to redemption as described herein.

- The inside cover page contains information concerning the maturity schedule, interest rates, and yields of the Series 2006 Bonds.

- The issuance of the Series 2006 Bonds and the purchase of the Series 2006 Bonds by the Underwriters are subject to approval and legality by Winston & Strawn LLP, New York, New York, Bond Counsel, and certain conditions.

- In the opinion of Bond Counsel, under existing federal laws and regulations, interest on the Series 2006 Bonds will not be includable in gross income for federal income tax purposes and the Series 2006 Bonds and interest thereon will be exempt from state, Commonwealth and local income taxation. However, see *Tax Matters*, beginning on page 23 of this Official Statement, for alternative minimum tax consequences with respect to interest on the Series 2006 Bonds, a description of certain rules that must be complied with to preserve federal tax exemption of interest, and other tax considerations.

- McConnell Valdés, San Juan, Puerto Rico, will pass upon certain legal matters for the Underwriters.

- It is expected that settlement for the Series 2006 Bonds will occur on or about September 28, 2006.

| | | |
|---|---|---|
| **UBS INVESTMENT BANK** | **MERRILL LYNCH & CO.** | **WACHOVIA BANK, NATIONAL ASSOCIATION** |
| **Banc of America Securities LLC** | **Citigroup** | **Goldman, Sachs & Co.** |
| **JPMorgan** | **Lehman Brothers** | **Morgan Stanley** |
| **Popular Securities** | **Raymond James & Associates, Inc.** | **Samuel A. Ramirez & Co.** |

September 19, 2006

**$469,770,000**
**Special Tax Revenue Bonds, Series 2006**

$101,520,000 Serial Bonds

| Maturity July 1, | Principal Amount | Interest Rate | Yield |
|---|---|---|---|
| 2010 | $4,655,000 | 4.500% | 3.790% |
| 2011 | 3,770,000 | 4.500% | 3.830% |
| 2012 | 3,940,000 | 5.000% | 3.920% |
| 2013 | 4,135,000 | 5.000% | 3.960% |
| 2014 | 4,340,000 | 5.000% | 4.010% |
| 2015 | 4,555,000 | 5.000% | 4.060% |
| 2016 | 4,785,000 | 5.000% | 4.110% |
| 2017 | 5,025,000 | 5.000% | 4.160% |
| 2018 | 5,275,000 | 5.000% | 4.200% |
| 2019 | 4,935,000 | 5.000% | 4.240% |
| 2019 | 605,000 | 4.250% | 4.260% |
| 2020 | 5,810,000 | 5.000% | 4.300% |
| 2021 | 6,105,000 | 5.000% | 4.340% |
| 2022 | 6,410,000 | 5.000% | 4.390% |
| 2023 | 6,730,000 | 5.000% | 4.420% |
| 2024 | 7,065,000 | 5.000% | 4.440% |
| 2025 | 7,415,000 | 5.000% | 4.460% |
| 2026 | 7,790,000 | 5.000% | 4.480% |
| 2027 | 8,175,000 | 5.000% | 4.500% |

$37,015,000 – 5.000% Term Bonds due July 1, 2031 – Yield 4.570% (approx. price to call 103.347)
$71,010,000 – 5.000% Term Bonds due July 1, 2037 – Yield 4.600% (approx. price to call 103.109)
$260,225,000 – 5.000% Term Bonds due July 1, 2046 – Yield 4.700% (approx. price to call 102.319)

No dealer, broker, sales representative or other person has been authorized by the Authority, the Commonwealth or the Underwriters to give any information or to make any representations other than those contained or incorporated by reference herein and, if given or made, such other information or representations must not be relied upon as having been authorized by the Authority, the Commonwealth or the Underwriters. This Official Statement does not constitute an offer to sell or the solicitation of an offer to buy nor shall there be any sale of the Series 2006 Bonds by any person in any jurisdiction in which it is unlawful for such person to make such offer, solicitation or sale. The information set forth or incorporated by reference herein has been obtained from the Authority, the Commonwealth and other official sources that are believed to be reliable, but is not guaranteed as to accuracy or completeness and is not to be construed as a representation by any Underwriter. The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Official Statement nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the Commonwealth since the date hereof. This Official Statement is submitted in connection with the sale of the Series 2006 Bonds and may not be reproduced or used, in whole or in part, for any other purpose. The Underwriters have provided the following sentence and paragraph for inclusion in this Official Statement. The Underwriters have reviewed the information in this Official Statement in accordance with, and as part of, their respective responsibilities to investors under the federal securities laws as applied to the facts and circumstances of this transaction, but the Underwriters do not guarantee the accuracy or completeness of such information.

IN CONNECTION WITH THIS OFFERING, THE UNDERWRITERS MAY EFFECT TRANSACTIONS WHICH STABILIZE OR MAINTAIN THE MARKET PRICES OF THE SERIES 2006 BONDS AND THE OTHER OUTSTANDING SPECIAL TAX REVENUE BONDS OF THE AUTHORITY AT LEVELS ABOVE THOSE WHICH MIGHT OTHERWISE PREVAIL IN THE OPEN MARKET. SUCH STABILIZING, IF COMMENCED, MAY BE DISCONTINUED AT ANY TIME.

## TABLE OF CONTENTS

| | Page |
|---|---|
| SUMMARY STATEMENT | S-1 |
| INTRODUCTORY STATEMENT | 1 |
| THE AUTHORITY | 2 |
| PLAN OF FINANCING | 4 |
| THE SERIES 2006 BONDS | 5 |
| SECURITY FOR THE BONDS | 9 |
| FEDERAL EXCISE TAXES | 13 |
| THE PUERTO RICO RUM INDUSTRY | 17 |
| ADDITIONAL COMMONWEALTH APPROPRIATIONS | 19 |
| AUTHORITY DEBT | 21 |
| FINANCIAL ASSISTANCE TO BENEFITED ENTITIES | 22 |
| TAX MATTERS | 23 |
| ELIGIBILITY OF SERIES 2006 BONDS | 25 |

| | Page |
|---|---|
| UNDERWRITING | 25 |
| COMMONWEALTH COVENANT | 25 |
| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO | 25 |
| LEGAL MATTERS | 25 |
| RATINGS | 26 |
| CONTINUING DISCLOSURE | 26 |
| MISCELLANEOUS | 28 |
| Appendix I  - Summary of the Trust Agreement | I-1 |
| Appendix II - Proposed Form of Opinion of Bond Counsel | II-1 |

[This page intentionally left blank]

## SUMMARY STATEMENT

*The following is subject in all respects to the additional information contained in this Official Statement including the Appendices attached hereto. Certain capitalized terms used in this Summary Statement and elsewhere in this Official Statement are defined in "Definitions of Certain Terms" in the Summary of the Trust Agreement in Appendix I. Certain other capitalized terms are used in this Official Statement as defined in this Summary Statement.*

**The Authority** . . . . . . . . . . . . . . .
Puerto Rico Infrastructure Financing Authority (the "Authority"), a public corporation and instrumentality of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), was created on June 21, 1988, for the purpose of providing financial, administrative and other types of assistance to political subdivisions, public corporations, instrumentalities and municipalities of the Commonwealth that develop and operate infrastructure facilities.

**Plan of Financing** . . . . . . . . . . . .
The bonds offered hereby, when and if issued (collectively, the "Series 2006 Bonds"), will be issued to finance (i) certain capital projects for the XXI Central American and Caribbean Games to be hosted by the municipality of Mayagüez, Puerto Rico in the summer of 2010; (ii) certain capital projects for Commonwealth instrumentalities and municipalities; and (iii) the payment of capitalized interest and costs of issuance of the Series 2006 Bonds. See *Plan of Financing*.

**Security for the Bonds** . . . . . . . .
The Authority's Special Tax Revenue Bonds, Series 1998A, Series 2005A, and Series 2005B, in the aggregate principal amount of $751,182,577.35, and the Authority's Special Tax Revenue Refunding Bonds, Series 2005C, in the aggregate principal amount of $699,235,338.80, which remain outstanding (collectively, the "Remaining Bonds"), the Series 2006 Bonds, and any additional bonds that the Authority may from time to time issue under the Trust Agreement (collectively, the "Bonds") are payable solely from and secured by a pledge of Federal Excise Taxes (as defined below) and other moneys deposited to the credit of the Sinking Fund.

**Federal Excise Taxes** . . . . . . . . .
Act No. 44 of the Legislature of Puerto Rico, approved June 21, 1988, as amended (the "Enabling Act"), requires that in each fiscal year after fiscal 1998, through fiscal 2006, the first $70 million, and in each fiscal year thereafter through fiscal 2009, the first $90 million, and in each fiscal year thereafter through fiscal 2057, the first $117 million, of certain federal excise taxes received by the Commonwealth be deposited in the Authority's Infrastructure Fund. Such taxes consist of the federal excise taxes levied on rum and other articles produced in Puerto Rico and sold in the United States, which taxes are collected by the United States Treasury and returned to the Commonwealth (the "Federal Excise Taxes"). Rum is the only article currently produced in Puerto Rico subject to federal excise taxes, the proceeds of which are required to be returned to the Commonwealth. The Trust Agreement requires the Authority to deposit in the Sinking Fund the Federal Excise Taxes and other moneys deposited in the Infrastructure Fund in such amounts as are required to meet the debt service requirement for all Bonds issued under the Trust Agreement.

Federal Excise Taxes have been transferred to the Commonwealth since 1917 in accordance with certain Acts of Congress. The amount of Federal Excise Taxes transferred to the Commonwealth was $13.25 per proof gallon during the

period after June 30, 1999 through December 31, 2005. As of January 1, 2006, such amount decreased by operation of law to the lesser of $10.50 per proof gallon or the actual excise tax imposed, which is currently $13.50 per proof gallon. See "Pledged Revenues" under *Security for the Bonds* and "Imposition of Tax" under *Federal Excise Taxes*.

The table below shows the Federal Excise Taxes received by the Commonwealth in each of the last six fiscal years, net of the operational expenses incurred by the United States Department of the Treasury, Commonwealth transfers to the Conservation Trust Fund and the Science and Technology Trust Fund, and collections received from rum produced in other countries:

| Fiscal Year | Federal Excise Taxes (in thousands) |
|---|---|
| 2001 | $285,168 |
| 2002 | 307,907 |
| 2003 | 291,973 |
| 2004 | 301,638 |
| 2005 | 335,619 |
| 2006 | 334,154 |

As provided under Puerto Rico law, the required annual Infrastructure Fund deposit of Federal Excise Taxes received by the Commonwealth in each fiscal year has and will continue to be made prior to any transfer to the Conservation Trust Fund and the Science and Technology Trust Fund in the event that the Federal Excise Taxes, net of such transfers, are insufficient to cover such annual deposit.

The maximum Principal and Interest Requirements (net of capitalized interest) on the Series 2006 Bonds and the Remaining Bonds in any fiscal year is $113 million. During each of the last five fiscal years, the Commonwealth has received at least $117 million of Federal Excise Taxes by the end of the sixth month of each fiscal year.

The Federal Excise Taxes securing the Bonds are subject to a number of factors, including the continued imposition and remittance by the United States of such taxes to the Commonwealth and conditions affecting the Puerto Rico rum industry. See *Federal Excise Taxes* and *The Puerto Rico Rum Industry*.

**Additional Commonwealth Appropriations** . . . . . . . . . . . . . .

If the Federal Excise Taxes received by the Commonwealth in any fiscal year are insufficient to deposit $90 million ($117 million after fiscal 2009) in the Infrastructure Fund, the Enabling Act authorizes the Secretary of the Treasury to advance funds to cover such insufficiency from any available funds and requires the Director of the Office of Management and Budget, upon the Authority's request, to include in the recommended budget of the Commonwealth for the corresponding fiscal year the appropriation needed to cover such insufficiency. The Commonwealth Legislature, however, is not

legally obligated to make any appropriation to cover such insufficiency. There has never been any insufficiency in the Infrastructure Fund requiring any action from the Commonwealth Legislature. See *Additional Commonwealth Appropriations*.

**Additional Bonds** . . . . . . . . . . . .   Additional Bonds secured on a parity with the Bonds may be issued for any purpose authorized by the Enabling Act, subject to compliance with certain coverage tests provided in the Trust Agreement. See *Additional and Refunding Bonds.*

**Prior Payment of Full Faith**
**and Credit Obligations**
**of the Commonwealth** . . . . . . . .   The Federal Excise Taxes and other revenues received from the Commonwealth and deposited in the Infrastructure Fund are subject to being applied first to the payment of general obligation debt of and debt guaranteed by the Commonwealth, if other Commonwealth revenues are not sufficient therefor. The Commonwealth has never used Federal Excise Taxes for the payment of its general obligation debt or its guaranteed debt. The incurrence by the Commonwealth of general obligation debt is subject to a constitutional debt limit described herein.

Maximum annual debt service for the Commonwealth's outstanding general obligation debt is $768,843,249.58 in fiscal 2020. This amount is equal to 9.48% of $8,113,386,000, which is the average of the adjusted annual internal revenues of the Commonwealth (which excludes Federal Excise Taxes) for fiscal 2005 and the currently estimated adjusted internal revenues for fiscal 2006. See "Prior Payment of Full Faith and Credit Obligations of the Commonwealth" under *Security for the Bonds.*

**Interest** . . . . . . . . . . . . . . . . . . .   Interest on the Series 2006 Bonds will be payable on January 1 and July 1 of each year, commencing January 1, 2007.

**Optional Redemption** . . . . . . . . .   The Series 2006 Bonds maturing after July 1, 2016 may be redeemed by the Authority prior to maturity, upon not less than 30 days' prior notice, either in whole or in part, as directed by the Authority, on any date not earlier than July 1, 2016. See "Optional Redemption" under *Redemption Provisions.*

**Trustee** . . . . . . . . . . . . . . . . . . . .   U.S. Bank Trust National Association, successor trustee.

**Ratings** . . . . . . . . . . . . . . . . . . . .   Standard & Poor's: "BBB+;" Moody's: "Baa3." See *Ratings.*

**Tax Matters** . . . . . . . . . . . . . . . .   In the opinion of Bond Counsel, under existing federal laws and regulations, interest on the Series 2006 Bonds will not be includable in gross income for federal income tax purposes and the Series 2006 Bonds and interest thereon will be exempt from all state, Commonwealth and local income taxes. However, see *Tax Matters* beginning on page 23 of this Official Statement, for alternative minimum tax consequences with respect to interest on the Series 2006 Bonds, a description of certain rules that must be complied with to preserve federal tax exemption of interest, and other tax considerations.

[This page intentionally left blank]

**$469,770,000**
**Puerto Rico Infrastructure Financing Authority**
**Special Tax Revenue Bonds, Series 2006**

**INTRODUCTORY STATEMENT**

The purpose of this Official Statement is to provide certain information in connection with the issuance and sale by Puerto Rico Infrastructure Financing Authority (the "Authority") of its Special Tax Revenue Bonds, Series 2006, in the aggregate principal amount of $469,770,000 (the "Series 2006 Bonds").

The Series 2006 Bonds are being issued pursuant to Act No. 44 of the Legislature of Puerto Rico, approved June 21, 1988, as amended (the "Enabling Act"), a Trust Agreement, dated as of October 1, 1988, as amended (the "Trust Agreement"), between the Authority and U.S. Bank Trust National Association, successor trustee (the "Trustee"), and a resolution of the Board of Directors of the Authority adopted on September 14, 2006 (the "Bond Resolution"). The Series 2006 Bonds are expected to be delivered on or about September 28, 2006.

This Official Statement includes brief descriptions of the Enabling Act, the Series 2006 Bonds (and the other outstanding Bonds of the Authority secured on a parity with the Series 2006 Bonds), the Bond Resolution and the Trust Agreement. Such descriptions do not purport to be complete and are qualified in their entirety by reference to such documents. All references to the Series 2006 Bonds are qualified in their entirety by reference to the definitive forms thereof contained in the Bond Resolution. Copies of all such documents and agreements are available for inspection during regular business hours at the offices of Government Development Bank for Puerto Rico ("Government Development Bank"), located at 666 Fifth Avenue, 15th Floor, New York, New York 10103 and at the Government Development Bank for Puerto Rico Building, located at the Roberto Sánchez Vilella Government Center, San Juan, Puerto Rico 00940, or at the corporate trust office of the Trustee at 100 Wall Street, Suite 1600, New York, New York 10005.

This Official Statement, which includes the cover page and the Appendices hereto, incorporates by reference the Comprehensive Annual Financial Report of the Commonwealth for the fiscal year ended June 30, 2005, together with the independent auditor's report thereon, dated March 14, 2006, of KPMG LLP ("KPMG"), certified public accountants (collectively, the "CAFR"). The CAFR has been filed by the Commonwealth with each nationally recognized municipal securities information repository ("NRMSIR"). KPMG did not audit the financial statements of the Public Buildings Authority capital project fund (a major fund), and certain activities, funds and component units separately identified in their report. Those financial statements were audited by other auditors whose reports have been furnished to KPMG, and their opinion as to the basic financial statements, insofar as it relates to the amounts included in the basic financial statements pertaining to such activities, funds and component units, is based solely on the reports of the other auditors. The report by KPMG contains an emphasis paragraph for the adoption of Governmental Accounting Standards Board (GASB) Statement No. 40, *Deposits and Investment Risk Disclosures*, as of June 30, 2005. This Official Statement also incorporates by reference the Commonwealth of Puerto Rico Financial Information and Operating Data Report, dated as of July 1, 2006 (the "Commonwealth Report"), which has been filed by the Commonwealth with each NRMSIR and with the Municipal Securities Rulemaking Board ("MSRB"). This Official Statement further incorporates by reference the audited financial statements of the Authority for the fiscal year ended June 30, 2005, together with the independent auditor's report thereon, dated December 30, 2005, of RSM ROC & Company, certified public accountants, which have been filed by the Commonwealth with each NRMSIR.

Any appendix of an Official Statement of the Commonwealth or of any instrumentality of the Commonwealth containing any revision to the Commonwealth Report or to the CAFR that is filed with each NRMSIR and the MSRB, or any new or revised Commonwealth Report or CAFR, or other document containing information that modifies or supersedes the information contained in the Commonwealth Report or in the CAFR that is filed with each NRMSIR, in each case after the date hereof and prior to the termination of the offering of the Series 2006 Bonds, shall be deemed to be incorporated by reference into this Official Statement and to be part of this Official Statement from the date of filing of such document. Any statement contained in the CAFR shall be deemed to be modified or superseded for purposes of this Official Statement to the extent that a statement contained herein or in any such subsequently filed document modifies or supersedes such statement. Any statement contained in the Commonwealth Report or elsewhere herein shall also be deemed to be modified or superseded to the extent that a statement contained in any such subsequently filed

document modifies or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Official Statement.

The Commonwealth will provide without charge to any person to whom this Official Statement is delivered, on the written or oral request of such person, a copy of any or all of the foregoing documents incorporated herein by reference. Requests for such documents should be directed to Director-New York Office, Government Development Bank for Puerto Rico, 666 Fifth Avenue, 15th Floor, New York, New York 10103, telephone number (212) 422-6420, or to Director-General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

A copy of the CAFR may be obtained by contacting a NRMSIR. The address of each NRMSIR is set forth in *Continuing Disclosure* below. The address of the MSRB is 1900 Duke Street, Suite 600, Alexandria, Virginia 22314, telephone number (703) 797-6600.

Certain capitalized terms used in this Official Statement are defined in "Definition of Certain Terms" in *Summary of Trust Agreement* in Appendix I. Certain other capitalized terms are defined in the Summary Statement.

This Official Statement, including information incorporated in this Official Statement by reference, contains certain "forward-looking statements" concerning the Authority's and the Commonwealth's operations and financial condition. These statements are based upon a number of assumptions and estimates which are subject to significant uncertainties, many of which are beyond the control of the Authority and the Commonwealth. The words "may," "would," "could," "will," "expect," "anticipate," "believe," "intend," "plan," "estimate" and similar expressions are meant to identify these forward-looking statements. Actual results may differ materially from those expressed or implied by these forward-looking statements.

# THE AUTHORITY

**General**

The Commonwealth recognizes the importance of developing, maintaining and improving its infrastructure to promote Puerto Rico's economic development. Accordingly, the Commonwealth has established the Authority as a public corporation and instrumentality with two principal functions: (i) providing financial, administrative and other types of assistance to political subdivisions, public corporations, instrumentalities and municipalities of the Commonwealth responsible for developing and operating infrastructure facilities, and (ii) providing an alternative means for directly financing those facilities.

The Enabling Act defines "infrastructure" to include public works and facilities of a substantial public interest, such as aqueduct and sewer systems including water supply systems, waste water treatment and disposal systems, improvements financed under the provisions of the Federal Clean Water Act and the Federal Safe Drinking Water Act, solid and hazardous waste disposal systems, resource recovery systems, electric power systems, highways, roads, pedestrian walkways, parking facilities, airports, convention centers, bridges, maritime ports, tunnels, transportation systems including mass transportation, communication systems including telephones, industrial facilities, land and natural resources, public housing projects, and tourist, medical and agro-industrial infrastructure facilities.

The Authority has all the necessary and convenient powers to accomplish and effectuate the purposes and provisions of the Enabling Act, including the power to negotiate and enter into assistance agreements with political subdivisions, public corporations, instrumentalities and municipalities of the Commonwealth authorized to provide infrastructure for the purpose of carrying out necessary financing programs for the development of infrastructure and providing consulting, technical, administrative, advisory, and other assistance in all matters related to such facilities. Any such entity receiving assistance from the Authority (a "Benefited Entity") may be required to comply with all operational, administrative and budgetary requirements that the Authority considers pertinent to achieve the purposes of said assistance.

2

At its creation in 1988, the Authority's principal undertaking was to provide financial and other assistance to Puerto Rico Aqueduct and Sewer Authority ("PRASA") pursuant to the terms of an assistance agreement, as amended, between PRASA and the Authority. In recent years, however, the Authority has signed assistance agreements with other Commonwealth instrumentalities and municipalities involved in infrastructure projects, including, among others, the Municipality of Carolina, the Department of Health, the Department of Education, the Department of Transportation and Public Works, the Department of Environmental and Natural Resources, the Public Buildings Authority, the Highway and Transportation Authority, the Lands Authority, the Courts Administration Office, the Institute of Puerto Rican Culture, the Department of Sports and Recreation, the Puerto Rico State Historic Preservation Office, the Fine Arts Center Corporation, the Public Schools Improvement Office, the Puerto Rico Science, Research and Technology Trust Fund, the Special Communities Perpetual Trust, and the University of Puerto Rico. See *Plan of Financing* and *Financial Assistance to Benefited Entities.*

The executive offices of the Authority are located at the Capital Center Building II, 235 Arterial Hostos Avenue, Suite 1601, San Juan, Puerto Rico 00918. Its telephone number is (787) 763-5757.

### Powers

The Authority has broad powers under the Enabling Act, including, among others, the power to: sue and be sued; make contracts; acquire properties by eminent domain or otherwise; borrow money and issue bonds for any of its corporate purposes, including the financing of the construction, rehabilitation, acquisition, repair, preservation and replacement of portions of the infrastructure of Puerto Rico; mortgage or pledge any property and pledge all or a portion of the Authority's revenues, including Federal Excise Taxes (see "Pledged Revenues" under *Security for the Bonds*) or other funds transferred by the Commonwealth to the Authority for the payment of the principal of and interest on any bonds issued by the Authority or bonds issued by a Benefited Entity; provide assistance to Benefited Entities as permitted by and consistent with the purposes of the Enabling Act; and fix, impose and collect rents, fees, rates and other charges for the use of any of its properties.

### Management

The Enabling Act provides that the Board of Directors of the Authority (the "Board") shall be composed of the Board of Directors of Government Development Bank and the Secretary of the Treasury of Puerto Rico (in the event the Secretary of the Treasury is not a member of Government Development Bank's Board of Directors). Members of the boards or officers of any Benefited Entity are specifically excluded from serving on the Board. The Secretary of the Treasury is the Chairman of the Board. The Board currently has two vacancies. The members of the Board are:

| Name | Term Ends | Occupation |
|------|-----------|------------|
| Juan C. Méndez | Indefinite | Secretary of the Treasury |
| Alfredo Salazar | September 22, 2008 | Chairman of the Board of Directors of Government Development Bank |
| Jorge P. Silva-Puras | September 22, 2008 | Chief of Staff of the Governor |
| José F. Rodríguez | September 20, 2008 | Businessman |
| Rafael Martínez | September 22, 2008 | Certified Public Accountant |

The Board appoints officers and employs agents and employees who are responsible for the general operation of the Authority. Set forth below is a brief biographical description of the Executive Director and certain officers of the Authority.

Guillermo M. Riera, D. Sc., P.E., was appointed Executive Director effective July 7, 2005. He has a doctoral degree in Electrical Engineering and over twelve years of experience working with federal and state government

institutions, and in universities. Mr. Riera was Executive Director of the Puerto Rico Solid Waste Management Authority from December 2002 until the beginning of July 2005, when he was appointed to head the Authority.

Lisa M. Gautier, Esq., was appointed Deputy Executive Director effective January 3, 2006. She has a Juris Doctor degree and over six years of experience working with state government institutions and in the private sector. Ms. Gautier was Director of the Legislative Division of the Office of Management and Budget and Legal Director of the Puerto Rico Solid Waste Management Authority. She also worked as head of the Examiners' Office of the Puerto Rico Department of Natural and Environmental Resources.

José R. Negrón-Vives was appointed Finance and Administration Director effective August 1, 2005. Since 1980 he has been in charge of private business and public affairs projects, mainly as Bid Board Chairman, for the acquisition of goods and services while occupying high management positions at the University of Puerto Rico and the Puerto Rico Solid Waste Management Authority until 2005.

José A. García-Pérez, P.E., was appointed Engineering Director at the Authority effective August 1, 2005. He has a Master of Science degree in Electrical Engineering with eleven years of experience in academics at several universities in Puerto Rico. Mr. García also has worked with private and public institutions in research and development, and project management. When appointed, Mr. García Pérez was in charge of the Operation and Engineering Division of the Puerto Rico Solid Waste Management Authority.

Brenda L. Huertas, Esq. was appointed Legal Area Director at the Authority effective August 1, 2005. She has a Juris Doctor degree and twelve years of experience in training, supervision, and legal investigation and advice at the Occupational Safety and Health Office and as a law clerk at the Puerto Rico Court of First Instance. Prior to her appointment at the Authority, she was the Director of the Legal Division of the Puerto Rico Solid Waste Management Authority.

## PLAN OF FINANCING

### Series 2006 Bonds

On May 15, 2004, the Central American and Caribbean Sports Organization announced the selection of the municipality of Mayagüez, Puerto Rico to host the XXI Central American and Caribbean Games (the "Games") to be held in the summer of 2010. The Authority has been designated as the entity responsible for developing the infrastructure necessary for the Games, which entails long-term capital investments in the municipalities where the sports venues for the Games will be located. The Authority is issuing the Series 2006 Bonds to provide approximately $470 million for (i) the acquisition, improvement and construction of sports and other facilities necessary for the Games; (ii) the construction of certain capital projects for Commonwealth instrumentalities and municipalities; and (iii) the payment of capitalized interest and costs of issuance of the Series 2006 Bonds. The Series 2006 Bond proceeds will be deposited into a special construction fund administered by the Authority on behalf of the applicable Benefited Entities.

**Use of Proceeds**

Sources:

| | |
|---|---|
| Principal Amount of Series 2006 Bonds . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $469,770,000.00 |
| Net Original Issue Premium . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 14,587,337.00 |
| Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $484,357,337.00 |

Uses:

| | |
|---|---|
| Deposit to Special Construction Fund . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $421,943,538.61 |
| Deposit to Special Construction Fund (capitalized interest) . . . . . . . . . . . . . . . . . | 58,435,537.99 |
| Underwriters' Discount, Legal, Printing and Other Issuance Expenses . . . . . . . . . . | 3,978,260.40 |
| Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | $484,357,337.00 |

A portion ($58,435,537.99) of the proceeds of the Series 2006 Bonds, as set forth in the table above, will be allocated to capitalized interest. This amount of capitalized interest, which will be irrevocably set aside for this purpose, will have the effect, by virtue of the definition of Principal and Interest Requirements (see paragraph (g) of said definition in *Summary of the Trust Agreement* in Appendix I), of reducing debt service requirements in fiscal years 2007, 2008 and 2009 to $86 million per fiscal year, which is lower than the annual amounts of Special Tax Revenues deposited in the Infrastructure Fund, as described in "Pledged Revenues" under *Security for the Bonds*, during the three-year period ending June 30, 2009, thereby enabling the Authority to satisfy the coverage tests for the issuance of additional Bonds. See "Additional and Refunding Bonds" under *Security for the Bonds*.

## THE SERIES 2006 BONDS

**General**

The Series 2006 Bonds will bear interest at the rates, payable on January 1 and July 1 in each year, beginning January 1, 2007. The Series 2006 Bonds mature on the dates and in the principal amounts set forth on the inside cover. The Series 2006 Bonds will be dated the date of their delivery, which is expected to be on or about September 28, 2006. The Series 2006 Bonds will be issued in fully registered form, will be in denominations of $5,000 and any multiple thereof.

**Book-Entry Only System**

The information in this section concerning DTC and DTC's book-entry system has been obtained from sources that the Authority and the Underwriters believe to be reliable, but the Authority and the Underwriters take no responsibility for the accuracy thereof.

DTC will act as securities depository for the Series 2006 Bonds. The Series 2006 Bonds will be issued as fully-registered bonds registered in the name of Cede & Co. (DTC's partnership nominee) or such other nominee as may be requested by an authorized representative of DTC. One fully-registered Series 2006 Bonds will be issued in the aggregate principal amount of each maturity and series, and will be deposited with DTC.

DTC, the world's largest depository, is a limited-purpose trust company organized under the New York Banking Law, a "banking organization" within the meaning of the New York Banking Law, a member of the Federal Reserve System, a "clearing corporation" within the meaning of the New York Uniform Commercial Code, and a "clearing agency" registered pursuant to the provisions of Section 17A of the Securities Exchange Act of 1934. DTC holds and provides asset servicing for over 2.2 million issues of U.S. and non-U.S. equity, corporate and municipal debt issues, and money market instruments from over 100 countries that DTC's participants (the "Direct Participants") deposit with DTC. DTC also facilitates the post-trade settlement among Direct Participants of sales and other securities transactions, in deposited securities through electronic computerized book-entry transfers and pledges between Direct Participants'

5

accounts. This eliminates the need for physical movement of securities certificates. Direct Participants include both U.S. and non-U.S. securities brokers and dealers, banks, trust companies, clearing corporations, and certain other organizations. DTC is a wholly-owned subsidiary of The Depository Trust & Clearing Corporation ("DTCC"). DTCC, in turn, is owned by a number of Direct Participants of DTC and Members of the National Securities Clearing Corporation, Fixed Income Clearing Corporation, and Emerging Markets Clearing Corporation (NSCC, FICC, and EMCC, also subsidiaries of DTCC), as well as by the New York Stock Exchange, Inc., the American Stock Exchange LLC and the National Association of Securities Dealers, Inc. Access to the DTC system is also available to others such as both U.S. and non-U.S. securities brokers and dealers, banks, trust companies and clearing corporations that clear through or maintain a custodial relationship with a Direct Participant, either directly or indirectly (the "Indirect Participants"). DTC has Standard & Poor's highest rating: AAA. The DTC Rules applicable to its Participants are on file with the Securities and Exchange Commission (the "SEC"). More information about DTC can be found at www.dtcc.com and www.dtc.org.

Purchases of the Series 2006 Bonds under the DTC system must be made by or through Direct Participants, which will receive a credit for the Series 2006 Bonds on DTC's records. The ownership interest of each actual purchaser of each Series 2006 Bond (a "Beneficial Owner") is in turn to be recorded on the Direct and Indirect Participants' records. Beneficial Owners will not receive written confirmation from DTC of their purchase. Beneficial Owners are, however, expected to receive written confirmations providing details of the transaction, as well as periodic statements of their holdings, from the Direct or Indirect Participant through which the Beneficial Owner entered into the transaction. Transfers of ownership interests in the Series 2006 Bonds are to be accomplished by entries made on the books of Direct and Indirect Participants acting on behalf of Beneficial Owners. Beneficial Owners will not receive definitive Series 2006 Bonds, except in the event that use of the book-entry system for the Series 2006 Bonds is discontinued.

To facilitate subsequent transfers, all Series 2006 Bonds deposited by Direct Participants with DTC are registered in the name of DTC's partnership nominee, Cede & Co. or such other nominee as may be requested by an authorized representative of DTC. The deposit of Series 2006 Bonds with DTC and their registration in the name of Cede & Co. or such other nominee do not effect any change in beneficial ownership. DTC has no knowledge of the actual Beneficial Owners of the Series 2006 Bonds; DTC's records reflect only the identity of the Direct Participants to whose accounts such Series 2006 Bonds are credited, which may or may not be the Beneficial Owners. The Direct and Indirect Participants will remain responsible for keeping account of their holdings on behalf of their customers.

Conveyance of notices and other communications by DTC to Direct Participants, by Direct Participants to Indirect Participants, and by Direct Participants and Indirect Participants to Beneficial Owners will be governed by arrangements among them, subject to any statutory or regulatory requirements as may be in effect from time to time.

Neither DTC nor Cede & Co. (or such other DTC nominee) will consent or vote with respect to the Series 2006 Bonds unless authorized by a Direct Participant in accordance with DTC's Procedures. Under its usual procedures, DTC mails an Omnibus Proxy to the Authority as soon as possible after the record date. The Omnibus Proxy assigns Cede & Co.'s consenting or voting rights to those Direct Participants to whose accounts the Series 2006 Bonds are credited on the record date (identified in a listing attached to the Omnibus Proxy).

Redemption proceeds, interest and other principal payments on the Series 2006 Bonds will be made to Cede & Co, or such other nominee as may be requested by an authorized representative of DTC. DTC's practice is to credit Direct Participants' accounts, upon DTC's receipt of funds and corresponding detail information from the Authority on the payable date in accordance with their respective holdings shown on DTC's records. Payments by Participants to Beneficial Owners will be governed by standing instructions and customary practices, as is the case with securities held for the accounts of customers in bearer form or registered in "street name," and will be the responsibility of such Participant and not of DTC, the Trustee or the Authority, subject to any statutory or regulatory requirements as may be in effect from time to time. Payment of redemption proceeds, interest and other principal payments to Cede & Co. (or such other nominee as may be requested by an authorized representative of DTC) is the responsibility of the Trustee or the Authority, disbursement of such payments to Direct Participants is the responsibility of DTC, and disbursement of such payments to the Beneficial Owners is the responsibility of Direct and Indirect Participants.

guaranteed debt for which the Commonwealth's guarantee has been exercised); second, the fulfillment of obligations arising out of legally binding contracts, court decisions on eminent domain, and other unavoidable obligations to protect the name, credit and good faith of the Commonwealth; third, current expenditures in the areas of health, protection of persons and property, education, welfare and retirement systems; and fourth, all other purposes.

A Budgetary Fund was created by Act No. 147 of June 18, 1980, as amended, the Budgetary Fund may only be used to cover the appropriations approved in any fiscal year in which the revenues available for such fiscal year are insufficient, and to secure the payment of public debt.  Pursuant to Act No. 103 of May 25, 2006, known as the Commonwealth Fiscal Reform Act of 2006 (the "Fiscal Reform Act"), the Budgetary Fund may not be used to cover expenditures of any Commonwealth agency in excess of appropriations, unless otherwise provided by law or joint resolution of the Commonwealth Legislature and the Governor.  Currently, an amount equal to one percent of the General Fund net revenues of the preceding fiscal year is deposited annually into the Budgetary Fund.  In addition, other income (not classified as revenues) that is not assigned by law to a specific purpose is also required to be deposited in the Budgetary Fund.  The maximum balance of the Budgetary Fund may not exceed six percent of the total appropriations included in the budget for the preceding fiscal year.  As of June 30, 2006, the balance in the Budgetary Fund was less than $10 million.

An Emergency Fund was created by Act No. 91 of June 21, 1966, as amended, to cover unexpected public needs caused by calamities, such as wars, hurricanes, earthquakes, droughts, floods and plagues, and to protect people's lives and property and the public sector credit.  Pursuant to the Fiscal Reform Act, the Emergency Fund may not be used to cover recurring operational expenses, unless authorized by joint resolution of the Commonwealth Legislature and the Governor.  The Emergency Fund is capitalized annually with an amount totaling no less than one percent of the General Fund net revenues of the preceding fiscal year, provided that the balance of the Emergency Fund may not exceed $150 million at the beginning of any fiscal year.  As of June 30, 2006, the balance in the Emergency Fund was less than $1 million.

A Financial Assistance Fund was created by Act No. 91 of May 13, 2006, to cover certain debts and obligations of the Commonwealth.  The Financial Assistance Fund is capitalized by (i) an amount equal to 1% of the monthly 7% sales tax revenues (the "Monthly Assistance Fund Revenues"), and (ii) the excess, if any, of the annual 7% sales tax collections over the estimated amount of such revenues in each fiscal year (the "Excess Assistance Fund Revenues").  The Monthly Assistance Fund Revenues may only be used to pay certain advances by Government Development Bank and the Commonwealth's appropriation debt outstanding as of June 30, 2006.  The Excess Assistance Fund Revenues may only be used to cover the costs associated with the early retirement plans of the Commonwealth's retirement systems for employees, and to amortize the debt of the Teachers Retirement System, the Employees Retirement System, and the Judiciary Retirement System, in this specific order, outstanding as of June 30, 2006.

## AUTHORITY DEBT

The following table sets forth the bond and note obligations of the Authority as of June 30, 2006, and as adjusted for the issuance of the Series 2006 Bonds.

|  | Outstanding as of June 30, 2006[1] | As Adjusted |
|---|---|---|
| Series 1998A Bonds . . . . . . . . . . . . | $ 117,455,000 | $ 117,455,000 |
| Series 2005A, Series 2005B and Series 2005C . . . . . . . . . . . . . . . | 1,332,962,916 | 1,332,962,916 |
| Series 2006 Bonds . . . . . . . . . . . . . | 0 | 469,770,000 |
| Total . . . . . . . . . . . . . . . . | $ 1,450,417,916 | $ 1,920,187,916 |

---

(1)    Excludes $1.049 billion of the Authority's Series 2000A and 2000B Bonds, which are payable solely from the investment income of funds on deposit in the Authority's Infrastructure Development Fund consisting of proceeds from the sale of a controlling interest in Puerto Rico Telephone Company.

### Debt Service Requirements

The following table sets forth the Principal and Interest Requirements on the Bonds for each fiscal year. Principal and Interest Requirements for any fiscal year comprise the sum of principal, including Amortization Requirements, and interest that is payable on January 1 in such fiscal year and on July 1 in the next fiscal year.

| Years Ending June 30, | Remaining Bonds Debt Service Requirements | Series 2006 Bonds | | | Total Debt Service Requirements |
|---|---|---|---|---|---|
| | | Principal | Interest[1] | Total Debt Service | |
| 2007 | $ 85,391,869 | $ — | $ 17,776,727 | $17,776,727 | $ 103,168,596 |
| 2008 | 85,392,019 | — | 23,441,838 | 23,441,838 | 108,833,857 |
| 2009 | 85,389,794 | — | 23,441,838 | 23,441,838 | 108,831,632 |
| 2010 | 84,899,563 | 4,655,000 | 23,441,838 | 28,096,838 | 112,996,401 |
| 2011 | 85,997,400 | 3,770,000 | 23,232,363 | 27,002,363 | 112,999,763 |
| 2012 | 85,993,950 | 3,940,000 | 23,062,713 | 27,002,713 | 112,996,663 |
| 2013 | 85,995,850 | 4,135,000 | 22,865,713 | 27,000,713 | 112,996,563 |
| 2014 | 85,998,575 | 4,340,000 | 22,658,963 | 26,998,963 | 112,997,538 |
| 2015 | 85,998,150 | 4,555,000 | 22,441,963 | 26,996,963 | 112,995,113 |
| 2016 | 85,997,675 | 4,785,000 | 22,214,213 | 26,999,213 | 112,996,888 |
| 2017 | 85,998,200 | 5,025,000 | 21,974,963 | 26,999,963 | 112,998,163 |
| 2018 | 85,999,850 | 5,275,000 | 21,723,713 | 26,998,713 | 112,998,563 |
| 2019 | 85,997,075 | 5,540,000 | 21,459,963 | 26,999,963 | 112,997,038 |
| 2020 | 85,999,025 | 5,810,000 | 21,187,500 | 26,997,500 | 112,996,525 |
| 2021 | 85,994,700 | 6,105,000 | 20,897,000 | 27,002,000 | 112,996,700 |
| 2022 | 85,995,350 | 6,410,000 | 20,591,750 | 27,001,750 | 112,997,100 |
| 2023 | 85,998,275 | 6,730,000 | 20,271,250 | 27,001,250 | 112,999,525 |

| Years Ending June 30, | Remaining Bonds Debt Service Requirements | Series 2006 Bonds | | | Total Debt Service Requirements |
|---|---|---|---|---|---|
| | | Principal | Interest[1] | Total Debt Service | |
| 2024 | 85,995,500 | 7,065,000 | 19,934,750 | 26,999,750 | 112,995,250 |
| 2025 | 85,999,050 | 7,415,000 | 19,581,500 | 26,996,500 | 112,995,550 |
| 2026 | 85,994,850 | 7,790,000 | 19,210,750 | 27,000,750 | 112,995,600 |
| 2027 | 85,999,100 | 8,175,000 | 18,821,250 | 26,996,250 | 112,995,350 |
| 2028 | 85,996,625 | 8,590,000 | 18,412,500 | 27,002,500 | 112,999,125 |
| 2029 | 85,997,250 | 9,015,000 | 17,983,000 | 26,998,000 | 112,995,250 |
| 2030 | 85,997,250 | 9,470,000 | 17,532,250 | 27,002,250 | 112,999,500 |
| 2031 | 85,997,250 | 9,940,000 | 17,058,750 | 26,998,750 | 112,996,000 |
| 2032 | 85,997,250 | 10,440,000 | 16,561,750 | 27,001,750 | 112,999,000 |
| 2033 | 85,997,250 | 10,960,000 | 16,039,750 | 26,999,750 | 112,997,000 |
| 2034 | 85,997,250 | 11,510,000 | 15,491,750 | 27,001,750 | 112,999,000 |
| 2035 | 85,997,250 | 12,085,000 | 14,916,250 | 27,001,250 | 112,998,500 |
| 2036 | 85,997,250 | 12,690,000 | 14,312,000 | 27,002,000 | 112,999,250 |
| 2037 | 85,997,250 | 13,325,000 | 13,677,500 | 27,002,500 | 112,999,750 |
| 2038 | 82,537,250 | 17,450,000 | 13,011,250 | 30,461,250 | 112,998,500 |
| 2039 | 82,800,000 | 18,060,000 | 12,138,750 | 30,198,750 | 112,998,750 |
| 2040 | 83,225,000 | 18,535,000 | 11,235,750 | 29,770,750 | 112,995,750 |
| 2041 | 82,950,000 | 19,740,000 | 10,309,000 | 30,049,000 | 112,999,000 |
| 2042 | 86,000,000 | 17,675,000 | 9,322,000 | 26,997,000 | 112,997,000 |
| 2043 | 86,000,000 | 18,560,000 | 8,438,250 | 26,998,250 | 112,998,250 |
| 2044 | 86,000,000 | 19,485,000 | 7,510,250 | 26,995,250 | 112,995,250 |
| 2045 | 83,355,000 | 23,105,000 | 6,536,000 | 29,641,000 | 112,996,000 |
| 2046 | – | 107,615,000 | 5,380,750 | 112,995,750 | 112,995,750 |
| Total[2] . . . . | $3,335,864,945 | $469,770,000 | $696,100,052 | $1,165,870,052 | $4,501,734,997 |

(1)   $62,834,084 of the interest shown in fiscal years 2007, 2008 and 2009 will be paid from the portion of Series 2006 Bond proceeds deposited to the capitalized interest account, which amount is irrevocably set aside for the payment of interest on the Series 2006 Bonds, plus earnings thereon.  See " Use of Proceeds" under *Plan of Financing*.

(2)   Totals may not add due to rounding.

## FINANCIAL ASSISTANCE TO BENEFITED ENTITIES

The Enabling Act empowers the Authority to provide financial, administrative, consulting, advisory, and other assistance to political subdivisions, public corporations, instrumentalities and municipalities of the Commonwealth.  In connection therewith, the Authority has executed assistance agreements with several Benefited Entities, including the Municipality of Carolina, PRASA, the Department of Health, the Department of Education, the Department of Transportation and Public Works, the Department of Environmental and Natural Resources, the Public Buildings Authority, the Highway and Transportation Authority, the Lands Authority, the Courts Administration Office, the Institute of Puerto Rican Culture, the Department of Sports and Recreation, the Puerto Rico State Historic Preservation

Office, the Fine Arts Center Corporation, the Public Schools Improvement Office, the Science and Technology Trust Fund, the Special Communities Perpetual Trust, and the University of Puerto Rico (collectively, the "Assistance Agreements"). The Authority has agreed to provide additional assistance to some of such Benefited Entities, among others, by issuing the Series 2006 Bonds and utilizing the net proceeds as described under *Plan of Financing*.

The Assistance Agreements provide a contractual framework for the Authority to provide financial and other assistance to the Benefited Entities in connection with their respective capital projects and working capital needs. In general, under the Assistance Agreements with Benefited Entities other than PRASA, the Benefited Entity assumes responsibility for the development of its capital project and agrees to indemnify and hold harmless the Authority in connection with the design, engineering and construction thereof.

## TAX MATTERS

The Internal Revenue Code of 1986, as amended (the "Code"), includes requirements regarding the use, expenditure and investment of bond proceeds and the timely payment of certain investment earnings to the Treasury of the United States, if required, which requirements the Commonwealth, the Authority, and the Benefited Entities receiving proceeds of the Series 2006 Bonds must continue to meet after the issuance of the Series 2006 Bonds in order that interest on the Series 2006 Bonds is not included in gross income for federal income tax purposes. The failure of any of the foregoing entities to meet these requirements may cause interest on the Series 2006 Bonds to be included in gross income for federal income tax purposes, retroactive to their date of issuance. Each of the Authority and the other entities mentioned above has covenanted to comply with the requirements of the Code, to the extent permitted by the Constitution and the laws of the Commonwealth, so that interest on the Series 2006 Bonds will remain excluded from gross income for federal income tax purposes. Bond Counsel is not aware of any provision of the Constitution or laws of the Commonwealth, which would prevent any of the foregoing entities from complying with the requirements of the Code.

In the opinion of Winston & Strawn LLP, Bond Counsel, subject to continuing compliance by the Authority and the other entities mentioned above with the tax covenant referred to above, under the provisions of the Acts of Congress now in force and under existing regulations, rulings and court decisions, interest on the Series 2006 Bonds will not be includable in gross income for federal income tax purposes. Interest on the Series 2006 Bonds is not an item of tax preference for purposes of the federal alternative minimum tax imposed on individuals and corporations; however, interest on the Series 2006 Bonds will be includable in the computation of the alternative minimum tax on corporations imposed by the Code. No opinion is rendered by Winston & Strawn LLP on the effect of any action taken or not taken after the date of its opinion without its approval (except for such action or omission to act as is otherwise provided for in the documents pertaining to the Series 2006 Bonds) or in reliance upon the advice of counsel other than such firm on the exclusion from gross income of the interest on the Series 2006 Bonds for federal income tax purposes. Bond Counsel is further of the opinion that, under the provisions of the Acts of Congress now in force, the Series 2006 Bonds and the interest thereon will be exempt from state, Commonwealth and local income taxation.

Ownership of tax-exempt obligations may result in collateral federal income tax consequences to certain taxpayers, including, without limitation, financial institutions, property and casualty insurance companies, certain foreign corporations, certain S Corporations with excess passive income, individual recipients of Social Security or Railroad Retirement benefits, taxpayers who may be deemed to have incurred or continued indebtedness to purchase or carry tax-exempt obligations and taxpayers who may be eligible for the earned income tax credit.

Ownership of tax-exempt obligations may also result in collateral income tax consequences under Puerto Rico law to financial institutions doing business in the Commonwealth.

Prospective purchasers of the Series 2006 Bonds should consult their tax advisors as to applicability and impact of any collateral consequences.

Legislation affecting municipal securities is constantly being considered by the United States Congress. There can be no assurance that legislation enacted after the date of issuance of the Series 2006 Bonds will not have an adverse effect on the tax-exempt status of the Series 2006 Bonds. Legislative or regulatory actions and proposals may also affect the economic value of tax exemption or the market prices of the Series 2006 Bonds.

**Discount Bonds**

The excess, if any, of the amount payable at maturity of any maturity of the Series 2006 Bonds over the issue price corresponding thereto constitutes original issue discount. The amount of original issue discount that has accrued and is properly allocable to an owner of any maturity of the Series 2006 Bonds with original issue discount (a "Discount Bond") will be excluded from gross income for federal income tax purposes to the same extent as interest on the Series 2006 Bonds. In general, the issue price of a maturity of the Series 2006 Bonds is the first price at which a substantial amount of Series 2006 Bonds of that maturity was sold (excluding sales to bond houses, brokers or similar persons or organizations acting in the capacity of underwriters, placement agents, or wholesalers) and the amount of original issue discount accrues in accordance with a constant yield method based on the compounding of interest. A purchaser's adjusted basis in a Discount Bond is to be increased by the amount of such accruing discount for purposes of determining taxable gain or loss on the sale, redemption or other disposition of such Discount Bond for federal income tax purposes.

A portion of the original issue discount that accrues in each year to an owner of a Discount Bond that is a corporation will be included in the calculation of the corporation's federal alternative minimum tax liability. In addition, original issue discount that accrues in each year to an owner of a Discount Bond is included in the calculation of the distribution requirements of certain regulated investment companies and may result in some of the collateral federal income tax consequences discussed above. Consequently, an owner of a Discount Bond should be aware that the accrual of original issue discount in each year may result in an alternative minimum tax liability, additional distribution requirements or other collateral federal income tax consequences although the owner of such Discount Bond has not received cash attributable to such original issue discount in such year.

The accrual of original issue discount and its effect on the redemption, sale or other disposition of any maturity of a Discount Bond that is not purchased in the initial offering at the first price at which a substantial amount of Discount Bonds of that maturity is sold to the public may be determined according to rules that differ from those described above. An owner of a Discount Bond should consult with his tax advisor with respect to the determination for federal income tax purposes of the amount of original issue discount relating to such Discount Bond and with respect to state, Commonwealth and local tax consequences of owning and disposing of such Discount Bond.

**Premium Bonds**

The excess, if any, of the tax basis of a Series 2006 Bond to a purchaser (other than a purchaser who holds such Bond as inventory, stock in trade or for sale to customers in the ordinary course of business) who purchases such Bond as part of the initial offering and at the applicable initial offering price as set forth on the inside cover page of this Official Statement over the amount payable at maturity of such Bond is "Bond Premium." Bond Premium is amortized over the term of such Bond for federal income tax purposes (or in the case of a Series 2006 Bond with Bond Premium callable prior to its stated maturity, the amortization period and yield may be required to be determined on a basis of a call date that results in the lowest yield on such Bond). No deduction is allowed for such amortization of Bond Premium; however, United States Treasury regulations provide that Bond Premium is treated as an offset to qualified stated interest received on the Series 2006 Bonds. An owner of such Bond is required to decrease his adjusted basis in such Bond by the amount of amortizable Bond Premium attributable to each taxable year such Bond is held. An owner of such Bond should consult with his tax advisor with respect to the precise determination for federal income tax purposes of the treatment of Bond Premium upon sale, redemption or other disposition of such Bond and with respect to the state, Commonwealth and local tax consequences of owning and disposing of such Bond.

## ELIGIBILITY OF SERIES 2006 BONDS

The Series 2006 Bonds will be eligible for deposit by banks in Puerto Rico to secure public funds and will be approved investments for insurance companies to qualify them to do business in Puerto Rico as required by law.

## UNDERWRITING

The Underwriters have jointly and severally agreed, subject to certain conditions, to purchase the Series 2006 Bonds from the Authority at an aggregate discount of $2,986,016.90 from the initial public offering prices for such Bonds, set forth (or derived from information set forth) on the inside cover hereof. The obligations of the Underwriters are subject to certain conditions precedent. The Underwriters will be obligated to purchase all Series 2006 Bonds if any such Bonds are purchased. The Bonds may be offered and sold to certain dealers (including dealers depositing such Bonds into investment trusts) and institutional purchasers at prices lower than the public offering prices which may be changed, from time to time, by the Underwriters.

Morgan Stanley & Co. Incorporated has entered into a joint venture agreement (the "JV Agreement") with Popular Securities, Inc. ("Popular"), under which Popular provides specific professional services related to the structuring and execution of certain municipal finance transactions in the U.S. capital markets with governmental entities located in the Commonwealth. Pursuant to the terms of the JV Agreement and in compliance with applicable rules, Popular will be entitled to receive a portion of Morgan Stanley's net profits from the underwriting of the Series 2006 Bonds as consideration for its professional services.

The Authority has agreed to indemnify the Underwriters against certain liabilities, including liabilities under the federal securities laws.

## COMMONWEALTH COVENANT

Pursuant to the Enabling Act, the Commonwealth has pledged to all holders of the Series 2006 Bonds that it will not limit or alter the rights or powers vested in the Authority by the Enabling Act so as to impair the rights of such holders until the Series 2006 Bonds and the interest thereon are fully met and discharged.

## GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

As required by Act No. 272 of the Legislature of Puerto Rico, approved May 15, 1945, as amended, Government Development Bank has acted as financial advisor to the Authority in connection with the offering of the Series 2006 Bonds. As financial advisor, Government Development Bank participated in the selection of the Underwriters of the Series 2006 Bonds. Certain of the Underwriters have been selected by Government Development Bank to serve from time to time as underwriters of its obligations and the obligations of the Commonwealth, its instrumentalities and public corporations. Certain of the Underwriters or their affiliates also participate in other financial transactions with Government Development Bank.

## LEGAL MATTERS

Legal matters incident to the authorization, issuance, sale and delivery of the Series 2006 Bonds are subject to the unqualified approving legal opinion of Winston & Strawn LLP, New York, New York, Bond Counsel. The form of the proposed opinion of Bond Counsel is set forth in Appendix II. Certain legal matters will be passed upon for the Underwriters by McConnell Valdés, San Juan, Puerto Rico.

## RATINGS

The Series 2006 Bonds have been assigned a rating of "Baa3," with a negative credit outlook, by Moody's Investors Services, Inc., and a rating of "BBB+," with a negative credit outlook, by Standard & Poor's Rating Services, a division of The McGraw-Hill Companies, Inc.

Any explanation regarding the reasons for and the significance of such ratings must be obtained only from the respective rating agency furnishing the same. The ratings reflect only the respective opinions of such rating agencies. There is no assurance that the ratings will continue for any given period of time or will not be revised downward or withdrawn entirely by either or both of such rating agencies. Any such downward revision or withdrawal of the ratings could have an adverse effect on the market prices of the Series 2006 Bonds.

## CONTINUING DISCLOSURE

In accordance with the requirements of Rule 15c2-12, as amended (the "Rule"), promulgated by the SEC under the Securities Exchange Act of 1934, as amended (the "Exchange Act"), the Commonwealth and the Authority, as specifically stated herein below, have agreed to the following for the benefit of the Beneficial Owners (generally the tax owners of the Series 2006 Bonds):

(a) The Commonwealth has agreed to file within 305 days after the end of each fiscal year beginning after its fiscal year 2006, with each NRMSIR and with any Commonwealth state information depository ("SID"), core financial information and operating data for the prior fiscal year, including (i) the Commonwealth's audited financial statements, prepared in accordance with generally accepted accounting principles in effect from time to time, and (ii) material historical quantitative data (including financial information and operating data) on the Commonwealth (including such data concerning the Authority and any other entity to the extent it has a material impact on the Commonwealth) and revenues, expenditures, operations and indebtedness generally found in the Commonwealth Report;

(b) The Authority has agreed to file within 305 days after the end of each fiscal year beginning after its fiscal year 2006, with each NRMSIR and with any Commonwealth SID, the Authority's audited financial statements for the prior fiscal year prepared in accordance with generally accepted accounting principles in effect from time to time together with data of the type presented in this Official Statement under *Federal Excise Taxes*, *The Puerto Rico Rum Industry*, and *Authority Debt* for the preceding fiscal year; and

(c) The Authority has agreed to file in a timely manner, with each NRMSIR or with the MSRB, and with any Commonwealth SID, notice of failure of the Commonwealth to comply with clause (a) above and of the Authority to comply with clause (b) above and notice of any of the following events with respect to the Series 2006 Bonds, if material:

  (i)     principal and interest payment delinquencies;
  (ii)    non-payment related defaults;
  (iii)   unscheduled draws on debt service reserves reflecting financial difficulties;
  (iv)    unscheduled draws on credit enhancements reflecting financial difficulties;
  (v)     substitution of credit or liquidity providers, or their failure to perform;
  (vi)    adverse tax opinions or events affecting the tax-exempt status of Series 2006 Bonds;
  (vii)   modifications to rights of security holders;
  (viii)  Series 2006 Bonds' calls;
  (ix)    defeasances;
  (x)     release, substitution, or sale of property securing repayment of the Series 2006 Bonds; and
  (xi)    rating changes.

Event (iii) may not be applicable, since the terms of the Series 2006 Bonds do not provide for "debt service reserves." For a description of the Series 2006 Bonds, see *The Series 2006 Bonds*.

In addition, with respect to the following events:

Events (iv) and (v). The Authority does not undertake to provide any notice with respect to credit enhancement added after the primary offering of the Series 2006 Bonds, unless the Authority applies for or participates in obtaining the enhancement.

Event (vi). For information on the tax status of the Series 2006 Bonds, see *Tax Matters*.

Event (viii). The Authority does not undertake to provide the above-described event notice of a mandatory scheduled redemption, not otherwise contingent upon the occurrence of an event, if the terms, dates and amounts of redemption are set forth in detail in this Official Statement in "Redemption Provisions" under *The Series 2006 Bonds*, the only open issue is which Series 2006 Bonds will be redeemed in the case of a partial redemption, notice of redemption is given to the Bondholders as required under the terms of the Series 2006 Bonds, and public notice of the redemption is given pursuant to Exchange Act Release No. 34-23856 of the SEC, even if the originally scheduled amounts are reduced by prior optional redemptions or bond purchases.

The Commonwealth expects to provide the information described in clause (a) above by delivering its first bond official statement that includes its financial statements for the preceding fiscal year or, if no such official statement is issued by the 305-day deadline, by delivering its Comprehensive Annual Financial Report by such deadline.

The Authority and the Commonwealth have made similar continuing disclosure covenants in connection with prior bond issuances, and each has complied with all such covenants in the last five years, except as hereinafter noted. The Commonwealth's audited financial statements for the fiscal year ended June 30, 2002, were filed after the filing deadline of May 1, 2003 because of delays in finalizing such financial statements resulting from the implementation of Government Accounting Standards Board Statement No. 34 ("GASB 34"). The Commonwealth's audited financial statements for the fiscal year ended June 30, 2003 were also filed after the Commonwealth's filing deadline of April 30, 2004, because of delays in finalizing the financial statements of certain of the Commonwealth's reporting units due to the implementation of GASB 34. The Commonwealth's audited financial statements for the fiscal year ended June 30, 2004 and the Commonwealth Report for such fiscal year were also filed after the Commonwealth's filing deadline of May 1, 2005, because of delays in the preparation of such documents.

The Authority's continuing disclosure report for the fiscal year ended June 30, 2001, was inadvertently filed two days after the Authority's filing deadline of May 1, 2002.

As of the date of this Official Statement, there is no Commonwealth SID, and the name and address of each NRMSIR is: Bloomberg Municipal Repository, 100 Business Park Drive, Skillman, New Jersey 08558; Standard & Poor's J.J. Kenny Repository, 55 Water Street, 45th Floor, New York, New York 10041; FT Interactive Data, Attn: NRMSIR, 100 William Street, New York, New York 10038; and DPC Data Inc., One Executive Drive, Fort Lee, New Jersey 07024.

The Authority may from time to time choose to provide notice of the occurrence of certain other events in addition to those listed above if, in the judgment of the Authority, such other events are material with respect to the Series 2006 Bonds, but the Authority does not undertake to provide any such notice of the occurrence of any material event except those events listed above.

The Commonwealth and the Authority acknowledge that their respective undertakings pursuant to the Rule described above are intended to be for the benefit of the Beneficial Owners of the Series 2006 Bonds, and shall be enforceable by any such Beneficial Owner, provided that the right to enforce the provisions of its undertaking shall be limited to a right to obtain specific enforcement of the Authority's or the Commonwealth's obligations hereunder.

No Beneficial Owner may institute any suit, action or proceeding at law or in equity ("Proceeding") for the enforcement of the foregoing covenants in paragraphs (a), (b) or (c) above (the "Covenants") or for any remedy for

breach thereof, unless such Beneficial Owner shall have filed with the Authority or the Commonwealth, as applicable, written notice of any request to cure such breach, and the Authority or the Commonwealth, as applicable, shall have refused to comply within a reasonable time. All Proceedings shall be instituted only in a Commonwealth court located in the Municipality of San Juan, for the equal benefit of all Beneficial Owners of the outstanding Series 2006 Bonds benefited by the Covenants, and no remedy shall be sought or granted other than specific performance of the Covenant at issue. Notwithstanding the foregoing, no challenge to the adequacy of the information provided in accordance with the filings mentioned in paragraphs (a), (b) or (c) above may be prosecuted by any Beneficial Owner except in compliance with the remedial and enforcement provisions contained in Article VII of the Trust Agreement. See "Remedies of Bondholders" under *Summary of the Trust Agreement* in Appendix I. Moreover, proceedings filed by Beneficial Owners against the Commonwealth may be subject to the sovereign immunity provisions of Section 2 of Act No. 104, approved June 29, 1955, as amended (32 L.P.R.A. § 3077 and § 3077a), which governs the scope of legal actions against the Commonwealth, substantially limits the amount of monetary damages that may be awarded against the Commonwealth and provides certain notice provisions, the failure to comply with which may further limit any recovery.

The Covenants may only be amended if:

(1) the amendment is made in connection with a change in circumstances that arises from a change in legal requirements, change in law, or change in the identity, nature, or status of the Authority or the Commonwealth, or type of business conducted; the Covenants, as amended, would have complied with the requirements of the Rule at the time of award of the Series 2006 Bonds, after taking into account any amendments or change in circumstances; and the amendment does not materially impair the interests of Beneficial Owners, as determined by parties unaffiliated with the Authority or the Commonwealth; or

(2) all or any part of the Rule, as interpreted by the staff of the SEC at the date of the adoption of such resolution, ceases to be in effect for any reason, and the Authority or the Commonwealth, as applicable, elects that the Covenant shall be deemed amended accordingly.

The Authority and the Commonwealth have further agreed that the annual financial information containing any amended operating data or financial information will explain, in narrative form, the reasons for the amendment and the impact of the change in the type of operating data or financial information being provided.

Any assertion of beneficial ownership must be filed, with full documentary support, as part of the written request described above.

These Covenants have been made in order to assist the Underwriters to comply with the Rule.

## MISCELLANEOUS

The foregoing references to and summaries of certain provisions of the Trust Agreement, the Bond Resolution, the Assistance Agreements, the Enabling Act, the Constitution of Puerto Rico and the Series 2006 Bonds are subject to all the detailed provisions thereof. Such references and summaries do not purport to be complete and are qualified in their entirety by reference to such acts, laws, documents, agreements or decisions. Copies of the Trust Agreement and the Bond Resolution are available for inspection during regular business hours at the offices of Government Development Bank or at the principal corporate trust office of the Trustee.

Any statements in this Official Statement involving matters of opinion, whether or not expressly so stated, are intended as such and not as representations of fact.

There is appended to this Official Statement a summary of the Trust Agreement (Appendix I), the proposed form of opinion of Winston & Strawn LLP, Bond Counsel (Appendix II).

28

The information set forth in this Official Statement, except the information appearing in *Underwriting* and the information pertaining to DTC, was supplied by the Executive Director of the Authority in his official capacity as such and is included in this Official Statement on his authority.  The information pertaining to DTC was supplied by

This Official Statement will be filed with each NRMSIR and with the MSRB.

**PUERTO RICO INFRASTRUCTURE FINANCING AUTHORITY**

By:  /s/ Guillermo M. Riera
    Guillermo M. Riera
    Executive Director

29

[This page intentionally left blank]