**Hearing Date**: June 12, 2019 at 9:30 a.m. AST
**Objection Deadline**: April 3, 2019 at 4:00 p.m. AST

# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>      as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>      Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

## SUMMARY COVER SHEET FOR FIRST INTERIM APPLICATION OF
## BROWN RUDNICK LLP, CLAIMS COUNSEL TO THE
## FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ACTING THROUGH ITS
## SPECIAL CLAIMS COMMITTEE,
## FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
## OF EXPENSES FOR THE FIFTH INTERIM FEE PERIOD
## FROM NOVEMBER 28, 2018 THROUGH JANUARY 31, 2019

## ALL FEES AND SERVICES IN THIS INTERIM APPLICATION
## WERE INCURRED OUTSIDE OF PUERTO RICO

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) Last Four Digits of Federal Tax ID: 3808); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## Summary Sheet

| | |
|---|---|
| Name of Applicant: | Brown Rudnick LLP ("Brown Rudnick") |
| Authorized to Provide Professional Services as: | Claims Counsel for The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Name of Client: | The Financial Oversight and Management Board, acting through its Special Claims Committee |
| Petition Date: | May 3, 2017[2] |
| Retention Date: | November 28, 2018 |
| Compensation Period: | November 28, 2018 to January 31, 2019 (the "Compensation Period") |
| Total Compensation Sought: | $1,567,375.50 |
| Expense Reimbursement Sought: | $64,470.84[3] |
| Total Compensation and Expense Reimbursement Sought: | $1,631,846.34 |
| Prior Applications Filed: | None |

This is an: ___ monthly    _X_ interim    ___ final application

This is Brown Rudnick LLP's first interim application in these cases (this "Application").

---

[2]    The petition date for the Commonwealth under Title III was May 3, 2017. The petition date for COFINA under Title III was May 5, 2017. The petition date for ERS and HTA under Title III was May 21, 2017. The petition date for PREPA under Title III was July 2, 2017.

[3]    The total expense reimbursement sought has been reduced as more fully described herein in order to comply with the Fee Examiner's guidelines.

Additional Information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* effective as of November 1, 2013:

| | |
|---|---|
| Total Compensation Approved by Interim Order to Date: | $0.00 |
| Total Expense Reimbursement Approved by Interim Order to Date: | $0.00 |
| Total Allowed Compensation Paid to Date: | $0.00 |
| Total Allowed Expense Reimbursement Paid to Date: | $0.00 |
| Total Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $1,176,638.49 |
| Total Expense Reimbursement Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but not yet Allowed: | $64,470.84 |
| Blended Hourly Rate in this Application for all Attorneys: | $790.00 |
| Blended Hourly Rate in this Application for all Timekeepers: | $764.35 |
| Number of Professionals in this Application: | 25 |
| Number of Professionals Billing Fewer than 15 hours in this Application: | 8 |
| Difference Between Fees Budgeted and Compensation Requested for this Period: | < 5% under budget[4] |
| Rate Increases Since Date of Retention: | None |
| Disclosure of Compensation Sought in this Application Using Rates Disclosed at Retention: | N/A |

---

[4]   Please note that the Budget for this Compensation Period was not prepared prospectively.

## Summary of Prior Monthly Fee Statements for the Compensation Period
## from November 28, 2018 through January 31, 2019

| Date | Period Covered | Total Fees | Fees Requested (90%) | Holdback (10%) | Expenses Requested[5] | Fees Paid[6] | Expenses Paid (100%) |
|---|---|---|---|---|---|---|---|
| 1/4/2019 | November 28, 2018 through December 31, 2018 | $751,897.00 | $676,707.30 | $75,189.70 | $17,895.54 | $666,556.69 | $17,895.54 |
| 2/7/2019 | January 1, 2019 through January 31, 2019 | $815,478.50 | $733,930.65 | $81,547.85 | $47,940.48 | $510,081.80 | $47,940.48 |
| **TOTAL** | | **$1,567,375.50** | **$1,410,637.95** | **$156,737.55** | **$65,836.02** | **$1,176,638.49** | **$65,836.02** |

### Summary of Amounts Requested to be Paid

Total 10% Holdback on Fees:                                    $156,737.55

Reimbursement for 29% Tax Withholding:                $212,839.89

Reimbursement for 1.5% Government Contribution:     $21,159.57

Less expenses voluntarily reduced herein:                  ($1,365.18)

**Total Amount Requested to be Paid:**                     **$389,371.83**

---

[5]   The expenses requested in Brown Rudnick's First Monthly Fee Statement reflect a voluntary reduction in the aggregate amount of $325.71.  The expenses requested in Brown Rudnick's Second Monthly Fee Statement reflect a voluntary reduction in the aggregate amount of $1,039.47.  The reductions relate to telephone charges, certain after hour meal expenses, certain after hours taxi charges and modifications to certain travel charges in order to comply with the Fee Examiner's guidelines.  Such reductions are reflected in the net amounts sought in this Application.

[6]   On January 31, 2019, in connection with Brown Rudnick's First Monthly Fee Statement, the Debtors paid Brown Rudnick $666,556.69 on account of fees requested and $17,895.54 on account of expense reimbursement requested.  The Debtors withheld: (i) $75,189.70, the amount of the 10% holdback, plus (ii) $10,150.61, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.  On February 28, 2019, in connection with Brown Rudnick's Second Monthly Fee Statement, the Debtors paid $510,081.80 on account of fees requested and $47,940.48 on account of expense reimbursement requested.  The Debtors withheld: (i) $212,839.89, or twenty-nine percent (29%) of the fees requested, on account of purported tax withholding, (ii) $81,547.85, the amount of the 10% holdback, plus (iii) $11,008.96, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.

4

**Hearing Date**: June 12, 2019 at 9:30 a.m. AST
**Objection Deadline**: April 3, 2019 at 4:00 p.m. AST

### UNITED STATES DISTRICT COURT
### DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>TITLE III<br><br>No. 17-BK-03283 (LTS)<br><br>(Jointly Administered) |

### FIRST INTERIM APPLICATION OF
### BROWN RUDNICK LLP, CLAIMS COUNSEL TO THE
### FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ACTING THROUGH ITS
### SPECIAL CLAIMS COMMITTEE,
### FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT
### OF EXPENSES FOR THE FIFTH INTERIM FEE PERIOD
### FROM NOVEMBER 28, 2018 THROUGH JANUARY 31, 2019

TO THE HONORABLE LAURA TAYLOR SWAIN
UNITED STATES DISTRICT COURT JUDGE:

Brown Rudnick LLP ("Brown Rudnick"), special counsel to the Financial Oversight and

Management Board, acting through its Special Claims Committee (the "Oversight Board") as

representative of the Commonwealth of Puerto Rico, the Puerto Rico Sales Tax Financing

Corporation, the Puerto Rico Highways and Transportation Authority, the Employees Retirement

System of the Government of the Commonwealth of Puerto Rico, and the Puerto Rico Electric

Power Authority (collectively, the "Debtors") in the above-captioned title III cases (the "Title III

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) Last Four Digits of Federal Tax ID: 3808; and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Cases") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this first interim fee application (the "First Interim Application" or "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Bankruptcy Rules"), Appendix B of the United States Trustee *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Large Chapter 11 Cases* effective as of November 1, 2013 (the "U.S. Trustee Guidelines," and together with the aforementioned statutes, rules and guidelines, the "Guidelines"), and in accordance with the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* entered by this Court on June 6, 2018 [Docket No. 3269] (the "Interim Compensation Order"), seeking entry of an order granting (a) the allowance of interim compensation in the aggregate amount of $1,567,375.50 in fees for reasonable and necessary professional services rendered and (b) reimbursement of actual and necessary expenses in the aggregate amount of $64,470.84 incurred during the period commencing November 28, 2018 through and including January 31, 2019 (the "Compensation Period"). In support of this Application, Brown Rudnick respectfully states the following:

### Jurisdiction and Venue

1.      The Court has subject matter jurisdiction to consider and determine this Second Interim Application pursuant to PROMESA section 306(a).  Venue is proper before this Court pursuant to PROMESA section 307(a).  The statutory predicates for the relief requested herein are PROMESA sections 316 and 317, Bankruptcy Rule 2016 and Local Rule 2016-1.

---

[2]      PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]      The Application solely pertains to fees and expenses incurred with respect to the Debtors' Title III Cases and does not address fees or expenses incurred with respect to other services performed for the Oversight Board outside the Title III process.

[4]      The Bankruptcy Rules are made applicable to the Debtors' Title III Cases pursuant to PROMESA section 310.

2.      This Application has been prepared in accordance with the Guidelines and the Interim Compensation Order.  Attached hereto as **Exhibit A** is a certification regarding compliance with the Local Guidelines.

## Background and Case Status

### A.      The Debtors' Title III Cases

3.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).

4.      On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this title is the representative of the debtor[s]" and "may take any action necessary on behalf of the debtor[s] to prosecute the case[s] of the debtor[s], including filing a petition under section 304 of [PROMESA] . . . or otherwise generally submitting filings in relation to the case[s] with the court."

6.      On September 30, 2016, the Oversight Board designated the Debtors as "covered entit[ies]" under PROMESA section 101(d).

7.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth of Puerto Rico (the "Commonwealth") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

8.      On May 5, 2017, the Oversight Board filed a voluntary petition for relief for the Puerto Rico Sales Tax Financing Corporation ("COFINA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

9.      On May 21, 2017, the Oversight Board filed a voluntary petition for relief for each of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico

7

("ERS") and the Puerto Rico Highways and Transportation Authority ("HTA") pursuant to section 304(a) of PROMESA, commencing cases under title III thereof.

10.     On July 2, 2017, the Oversight Board filed a voluntary petition for the Puerto Rico Electric Power Authority ("PREPA") pursuant to section 304(a) of PROMESA, commencing a case under title III thereof.

11.     Through orders issued on June 1, June 29 and October 6, 2017, the Court ordered the joint administration of the Title III Cases for the Debtors, for procedural purposes only [Docket Nos. 242, 537 and 1417].

12.     Background information regarding the Commonwealth and its instrumentalities, and the commencement of the instant Title III Cases, is contained in the *Notice of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Docket No. 1] attached to the Commonwealth's Title III petition.

**B.     Retention of Brown Rudnick**

13.     Brown Rudnick is an international law firm with its offices located in New York and Boston, among other locations.  Brown Rudnick has significant experience representing parties in bankruptcy actions and litigations in many large, complex cases.   Brown Rudnick has represented principal parties in interest, including official and *ad hoc* committees and debtors, in both in and out-of-court proceedings in some of the largest and most complex restructurings of all time.

14.     As set forth in the Independent Contract Services Agreement dated November 28, 2018 (the "Services Agreement"),[5] Brown Rudnick was retained by and authorized to represent the Oversight Board, acting through its Special Claims Committee, to assist the Special Claims Committee regarding investigation and pursuit of potential claims.

---

[5]   A copy of the Services Agreement is available on the Oversight Board's website at http://oversightboard.pr.gov/documents/.

**C.     Interim Compensation and Fee Examiner Orders**

15.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 1150].

16.     On October 6, 2017, the Court appointed a Fee Examiner in these Title III Cases (the "Fee Examiner") pursuant to the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and Related Relief* [Docket No. 1416] (the "Fee Examiner Order").

17.     On October 31, 2017, the Fee Examiner filed the Urgent Motion of the Fee Examiner to Amend the Interim Compensation Order, Including the Due Date and Hearing Date for Interim Compensation [Docket No. 1594].

18.     On November 8, 2017, the Court entered the First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 1715].

19.     On November 10, 2017, the Fee Examiner issued a memorandum, and on January 3, 2018, the Fee Examiner issued a supplemental memorandum (together, the "Fee Examiner Guidelines") to all retained professionals in these Title III Cases providing additional guidelines in connection with the Interim Compensation Order.

20.     On May 8, 2018, the Fee Examiner filed the *Motion of the Fee Examiner to Amend the Fee Examiner Order with Respect to the Scope of the Fee Examiner's Authority in the Interest of Administrative Efficiency* [Docket No. 3032] (the "Motion to Amend the Fee Examiner Order").

21.     On May 23, 2018, the Oversight Board and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF") filed a *Joint Motion for Entry of an Order Further Amending the Interim Compensation Order* [Docket No. 3133].

22.     On June 6, 2018, the Court entered the Interim Compensation Order, and in accordance therewith, LS&E and other professionals retained in these Title III Cases were

9

authorized to serve upon the parties identified therein (the "Notice Parties") monthly fee statements (the "Monthly Fee Statements").

23.    Pursuant to the Interim Compensation Order, the Notice Parties have ten days from the date of service of the Monthly Fee Statement to object to the amounts requested. If no objection is filed prior to expiration of the objection period, the Commonwealth is authorized to pay the respective professionals 90% of the fees and 100% of the expenses sought in each Monthly Fee Statement.

24.    On June 20, 2018, the Court entered the *First Amended Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(A) Appointing a Fee Examiner and Related Relief* [Docket No. 3324] (the "Amended Fee Examiner Order").

**D.    Applications for Interim Compensation**

25.    In addition to the Monthly Fee Statements, the Interim Compensation Order directed professionals to seek interim allowance and payment of compensation (including the 10% held back from Monthly Fee Statements) and expense reimbursement at 120-day intervals (each an "Interim Fee Period") by filing with the Court and serving on the Notice Parties an application for approval and allowance of all compensation and reimbursement of expenses relating to services rendered and expenses incurred during the preceding Interim Fee Period (*see* Interim Compensation Order at ¶2(f)).

26.    This is Brown Rudnick's first interim fee application and covers the period from its retention on November 28, 2018 through and including January 31, 2019.

**Relief Requested**

27.    By this Application, Brown Rudnick seeks an order authorizing (a) allowance of interim compensation for the professional services rendered during the Compensation Period in the aggregate amount of $1,567,375.50, (b) allowance of reimbursement of actual and necessary expenses incurred by Brown Rudnick in the aggregate amount of $64,470.84, and (c) payment of

the outstanding fees and expense reimbursement in the aggregate amount of $389,371.83, inclusive of any amounts previously held back, including certain purported tax withholding and government contribution amounts.

28. During the Compensation Period, Brown Rudnick attorneys and paraprofessionals expended a total of 2,050.60 hours for which compensation is requested. All services rendered and expenses incurred for which compensation or reimbursement is requested were performed or incurred for or on behalf of the Oversight Board.

29. During the Compensation Period, Brown Rudnick submitted two Monthly Fee Statements (the first and second such statements submitted by Brown Rudnick).

30. On January 4, 2019, Brown Rudnick served its first monthly fee statement covering the period from November 28, 2018 through December 31, 2018 (the "First Monthly Fee Statement"), a copy of which is attached hereto as **Exhibit G-1**. Exhibit G-1 also includes a redlined version of Brown Rudnick's expense invoice for that period, which details the voluntary reduction that Brown Rudnick has made since the filing of the First Monthly Fee Statement.[6] Brown Rudnick received no objection to the First Monthly Fee Statement. On January 22, 2019, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the First Monthly Fee Statement. On January 31, 2019, the Debtors paid Brown Rudnick $666,556.69 on account of fees requested and $17,895.54 on account of expense reimbursement requested. The Debtors withheld (i) $75,189.70, the amount of the 10% holdback, plus (ii) $10,150.61, representing a 1.5% government contribution that is deducted from all fees that exceed $50,000.[7]

31. On February 7, 2019, Brown Rudnick served its second monthly fee statement covering the period from January 1, 2019 through January 31, 2019 (the "Second Monthly Fee

---

[6] The expenses requested in Brown Rudnick's First Monthly Fee Statement have been voluntarily reduced in the amount of $325.71, as reflected in the net amounts sought in this Application.

[7] Brown Rudnick performed all services outside of Puerto Rico. Nonetheless, Brown Rudnick intends to seek a refund of all amounts withheld on account of amounts withheld.

Statement"), a copy of which is attached hereto as **Exhibit G-2**.  Exhibit G-2 also includes a

redlined version of Brown Rudnick's expense invoice for that period, which details the voluntary

reduction that Brown Rudnick has made since the filing of the Second Monthly Fee Statement.[8]

Brown Rudnick received no objection to the Second Monthly Fee Statement.  On February 19,

2019, Brown Rudnick submitted a statement of no objection to AAFAF with respect to the Second

Monthly Fee Statement.  On February 28, 2019, the Debtors paid Brown Rudnick $510,081.80 on

account of fees requested and $47,940.48 on account of expense reimbursement requested.  The

Debtors withheld (i) $212,839.89, or twenty-nine percent (29%) of the fees requested, on account

of purported tax withholding, (ii) $81,547.85, the amount of the 10% holdback, plus (iii)

$11,008.96, representing a 1.5% government contribution that is deducted from all fees that exceed

$50,000.[9]

32.     Other than with respect to those Monthly Fee Statements, no payments have been

made to Brown Rudnick, and Brown Rudnick has received no promises of payment from any

source for services rendered or to be rendered in any capacity whatsoever in connection with the

matters covered during the Compensation Period and addressed by this First Interim Application.

There is no agreement or understanding between Brown Rudnick and any other person, other than

the members of Brown Rudnick, for the sharing of compensation to be received for services

rendered in these cases.

33.     In accordance with the Services Agreement, Brown Rudnick's hourly rate for all

attorneys is $790, and $270 for all paralegals and other non-lawyer staff.

34.     Brown Rudnick maintains computerized records of all time spent by Brown

Rudnick attorneys and paraprofessionals in connection with its representation of the Oversight

Board.  Brown Rudnick has provided itemized time records for professionals and paraprofessionals

---

8   The expenses requested in Brown Rudnick's Second Monthly Fee Statement have been voluntarily reduced in the
    amount of $1,039.47, as reflected in the net amounts sought in this Application.

9   Brown Rudnick performed all services outside of Puerto Rico.  Nonetheless, Brown Rudnick intends to seek a
    refund of all amounts withheld on account of amounts withheld.

performing services during the Compensation Period to this Court, the Debtors, the Fee Examiner, all notice parties pursuant to the Interim Compensation Order and the U.S. Trustee. All entries itemized in Brown Rudnick's time records comply with the requirements set forth in the Guidelines, including the use of separate matter numbers for different project types, as described in this Application. Brown Rudnick's itemized time records also detail expenses incurred during the Compensation Period. All entries itemized in Brown Rudnick's expense records comply with the requirements set forth in the Guidelines.[10]

35. Pursuant to, and consistent with, the relevant requirements of the Guidelines, as applicable, the following exhibits are attached hereto and incorporated herein by reference:

i. **Exhibit A** contains a certification by Sunni P. Beville regarding Brown Rudnick's compliance with the Local Guidelines.

ii. **Exhibit B** contains a summary of hours and fees billed by each Brown Rudnick attorney and paraprofessional in services rendered to the Oversight Board during the Compensation Period, including respective titles, hourly rates, year of bar admission for attorneys and any applicable rate increases.

iii. **Exhibit C** contains a summary of compensation requested by matter during the Compensation Period.

iv. **Exhibit D** contains a summary and comparison of the aggregate blended hourly rates.

v. **Exhibit E** contains a summary of reimbursable expenses incurred during the Compensation Period.

vi. **Exhibit F** contains a budget plan with a comparative analysis of budgeted and actual fees during the Compensation Period.

vii. **Exhibits G-1 and G-2** contain copies of Brown Rudnick's Monthly Fee Statements during the Compensation Period, which include detailed time records and out-of-pocket expense details.

**Summary of Services Performed by Brown Rudnick During the Compensation Period**

36. Set forth below is a description of significant professional services, broken down by project category, rendered by Brown Rudnick during the Compensation Period. The following

---

[10] As noted herein, certain reductions have been made to the expense amounts for which Brown Rudnick is seeking reimbursement.

services described are not intended to be a comprehensive summary of the work performed by Brown Rudnick.  Detailed descriptions of all services rendered by Brown Rudnick can be found in the detailed time records reflecting the services performed by Brown Rudnick's professionals, the time expended by each professional, and the hourly rate of each professional, annexed to the Monthly Fee Statements attached hereto as **Exhibits G-1** and **G-2**, and such descriptions are incorporated herein by reference.

### A.    Case Administration

### Fees: $23,079.00; Hours: 39.20

37.    During the Compensation Period, Brown Rudnick reviewed the case docket to identify pleadings relevant to its investigation, including as to relevant hearing dates and objection deadlines for pleadings filed in connection with the objection to certain General Obligation bonds. Brown Rudnick also addressed certain issues related to its retention in these cases, including as to the review of a draft press release issued by the Oversight Board describing its retention of Brown Rudnick and the review of applicable rules required in connection with motions for *pro hac vice* admittance to the Court.

38.    At the outset of its retention Brown Rudnick coordinated its investigation and document management efforts in light of the scope of its investigation and need to ensure efficiency and appropriate sharing of information.

39.    In addition, Brown Rudnick drafted a Request for Proposals in connection with retention of local counsel.  Brown Rudnick, together with the Oversight Board, reviewed all responses received to the Request for Proposals and selected Estrella LLC as its local counsel. Brown Rudnick then coordinated with Estrella LLC to prepare and file relevant retention-related documents.

40.    Also during the Compensation Period, Brown Rudnick engaged in discussions with the Oversight Board regarding the need for its own accounting/financial advisory services firm.  At

the direction of the Oversight Board, Brown Rudnick prepared and finalized a Request for Proposals for a financial advisor.  During the Compensation Period, Brown Rudnick reviewed and summarized all responses received to the Request for Proposals.

### B.      Meetings and Communications with Client

### Fees: $39,974.00; Hours: 50.60

41.      At the outset of Brown Rudnick's engagement, Brown Rudnick engaged in numerous discussions with the Oversight Board regarding the posture of the cases, scope of investigation and desired course of action.  During the Compensation Period, Brown Rudnick established agendas for weekly calls with the Oversight Board to provide status reports and recommendations for specific actions, including as to the filing of a joint claim objection to claims relating to certain General Obligation bonds issued by the Commonwealth of Puerto Rico.  In addition, Brown Rudnick engaged in periodic follow-up discussions with various members of the Oversight Board regarding case issues.

### C.      Fee Applications

### Fees: $6,015.00; Hours: 11.30

42.      During the Compensation Period, Brown Rudnick spent time on the following: (a) review of the docket and filings in these Title III Cases in connection with fee and compensation matters, (b) review of the Guidelines and Fee Examiner Guidelines, (c) preparation of its First and Second Monthly Fee Statements, (c) analysis of the proposed professional fee tax, and (d) review and coordination with the Oversight Board's professionals in connection with the foregoing.

### D.      General Investigation

### Fees: $451,668.00; Hours: 582.00

43.      At the outset of Brown Rudnick's engagement, the investigation team analyzed the Kobre & Kim Report, prior pleadings, news reports and other materials providing additional detail and other information regarding the issues relating to the financial crisis and potential topics of

investigation. Brown Rudnick engaged in numerous discussions with participants in the cases to gather additional information regarding particular case issues relevant to the investigation. At the Oversight Board's direction, and for administrative and case efficiency purposes, Brown Rudnick's attorneys met with Proskauer's team to discuss the case status and diligence efforts, including as to coordinating go forward efforts, prior to commencing extensive work on the general investigation.

44.     In furtherance of the general investigation, Brown Rudnick drafted and negotiated non-disclosure agreements with numerous parties. Brown Rudnick then coordinated with Kobre & Kim, AAFAF and others to facilitate access to and production of documents relevant to the investigation of claims identified in the Kobre & Kim Report, which in numerous cases necessitated resolving objections.

45.     During the Compensation Period, Brown Rudnick developed and implemented interim and long-term strategies to preserve and exercise the Oversight Board's rights in furtherance of its goals in the Title III cases, including managing and undertaking various work streams relating to the identification of potential third party claims.

**E.     Hearings**

**Fees: $5,374.00; Hours: 7.00**

46.     During the Compensation Period, Brown Rudnick attorneys prepared for and attended (a) a telephonic hearing on December 19, 2018 regarding standards for fee examination and approval, and (b) an omnibus hearing on January 30, 2019 regarding, among other things, the Oversight Board's motion to establish procedures relating to its objection to claims by purported holders of certain General Obligation bonds.

**F.     Non-Working Travel**

**Fees: $18,841.50; Hours: 47.70**

47.     On December 10, 2018, several Brown Rudnick attorneys traveled to Washington D.C. to participate in an in-person "kick-off" meeting with Proskauer to obtain a general case

16

update, discuss potential investigation issues and coordinate next steps.  On December 13, 2018, certain Brown Rudnick attorneys traveled to the offices of Kobre & Kim in New York for an in-person meeting to discuss the scope of Kobre & Kim's investigation and to discuss access to documents and other information pertinent to the work to be undertaken by Brown Rudnick.  On January 8, 2019, Sunni Beville traveled to New York to participate in in-person meetings with counsel to an ad hoc group of GO bondholders and to meet with general bankruptcy counsel to the Oversight Board and counsel to AAFAF and the Unsecured Creditors' Committee.  Brown Rudnick has discounted by 50% all time attributable to travel during which no work was performed.

### G.   ERS

**Fees: $28,124.00; Hours: 35.60**

48.     During the Compensation Period, Brown Rudnick conducted research regarding the statutory authority of ERS to issue negotiable bonds.  Brown Rudnick drafted a memorandum and recommendation for the Oversight Board regarding whether to initiate or participate in an objection to claims filed in the Title III cases by purported ERS bondholders, and analyzed the First Circuit opinion relating to perfection of the liens asserted by ERS bondholders.

### H.   PREPA

**Fees: $12,008.00; Hours: 15.20**

49.     During the Compensation Period, Brown Rudnick researched and analyzed various claims relating to PREPA arising from the Kobre & Kim Report and coordinated with the Oversight Board's professionals regarding the claims and tasks related to further assess potential claims.

### I.   GO Bonds / Debt Limit

### Fees: $909,691.00; Hours: 1,170.10

50.     During the Compensation Period, Brown Rudnick reviewed and analyzed portions of the Kobre & Kim Report relating to General Obligation bonds and potential claims held by the Oversight Board related thereto.  In particular, Brown Rudnick researched and prepared a comprehensive memorandum regarding potential claims to invalidate up to $7 billion in purported bonds (the "GO Bonds") and disallow all purported bondholder claims related thereto, on the grounds that the GO Bonds had been issued in violation of Puerto Rico's constitution.

51.     Brown Rudnick coordinated with the Official Committee of Unsecured Creditors for the Title III cases (the "UCC"), via its professionals, to collaborate with respect to their research and analysis and regarding proposed litigation.  In that regard, Brown Rudnick negotiated and entered into a Cooperation Agreement with counsel to the UCC.  Brown Rudnick worked with the UCC and local counsel to draft an objection to the GO Bond claims, as well as a related motion to establish procedures for litigation of the objection, and press releases and other documents related to the filing. Brown Rudnick also coordinated with the UCC and the Oversight Board to review PROMESA, related contested matters and adversary proceedings and other concurrent filings to assure appropriate timing and messaging concerning the filing.

52.     In addition, Brown Rudnick conducted an in-person meeting and several conference calls with counsel to certain ad hoc bondholders to discuss the potential filing of the GO Bond claim objection and procedures related thereto.  Brown Rudnick also scheduled and conducted in-person meetings with general bankruptcy counsel to the Oversight Board and with counsel to the UCC and AAFAF to coordinate regarding the impact of the GO Bond objection and other case matters, including as to avoidance actions.

53.     Concurrent with the filing of the objection, Brown Rudnick researched and drafted memoranda regarding claims held by the Oversight Board relating to wrongful acts of third parties

in connection with the challenged GO Bonds. Brown Rudnick additionally researched potential claims related to the Public Building Authority (PBA), and the relationship between claims relating to PBA Bonds and claims relating to the GO Bonds.

54.    After the filing of the objection to GO Bond-related claims, Brown Rudnick prepared for a hearing regarding its procedures motion and reviewed concurrent court opinions potentially impacting the GO bond litigation. Brown Rudnick additionally fielded communications with purported bondholders regarding the litigation.

**J.    Swaps**

**Fees: $5,530.00; Hours: 7.00**

55.    During the Compensation Period, Brown Rudnick analyzed potential claims outlined in the Kobre & Kim Report regarding Puerto Rico's credit default swap transactions and reviewed related documents and legal authorities.

**K.    Credit Rating Agencies**

**Fees: $3,081.00; Hours: 3.90**

56.    During the Compensation Period, Brown Rudnick analyzed potential claims outlined in the Kobre & Kim Report against credit ratings agencies, and reviewed related documents and legal authorities.

**L.    COFINA**

**Fees: $27,097.00; Hours: 34.30**

57.    During the Compensation Period, Brown Rudnick analyzed potential claims outlined in the Kobre & Kim Report relating to COFINA and reviewed recently filed settlement proceedings in the COFINA Title III case. Brown Rudnick identified whether potential claims had survived the COFINA settlement and considered whether to pursue any potential surviving claims.

## M.   Avoidance Actions

### Fees: $36,893.00; Hours: 46.70

58.   During the Compensation Period, Brown Rudnick coordinated with the UCC regarding a motion and order directing third parties to produce materials for investigation under Rule 2004, relating to payments by the Title III debtors during relevant avoidance periods under PROMESA and the Bankruptcy Code.  Brown Rudnick then followed up with the UCC regarding (a) document production status and (b) delegation of document review and analysis tasks pertaining to avoidance actions.   Brown Rudnick then developed a case strategy to identify potential avoidance claims and began compiling a memorandum for the Oversight Board detailing its strategy and recommendations.

### **Presumptive Standards**

59.   In accordance with the presumptions set forth in the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Docket No. 3932]  (the "Presumptive Standards Order"), Brown Rudnick provides the following summary regarding the attendance of Brown Rudnick professionals at   Court hearings and meetings:

- January 30th hearing:  Edward Weisfelner attended the hearing in person to be heard in connection with the motion to establish participation procedures in connection with the objection to the validity of certain General Obligation bonds issued by the Commonwealth of Puerto Rico.  Sunni Beville attended the hearing telephonically to facilitate next steps and to address Court's comments with respect to the proposed procedures.

- December 10th Meeting:  As described above, several Brown Rudnick attorneys attended an in-person meeting at the offices of Proskauer in Washington D.C. to obtain a case 'download' and to most effectively and efficiently educate the entire team before the onset of extensive work activity.

- December 13th Meeting:  Similarly, several Brown Rudnick attorneys attended an in-person meeting at the offices of Kobre & Kim in New York to most effectively and efficiently educate the investigation team regarding the nature and scope of Kobre & Kim's investigation, which identified certain potential causes of action that Brown Rudnick was directed to further investigate and analyze.

- <u>January 8th Meetings</u>:  Edward Weisfelner and Sunni Beville attended various in-person meetings at Brown Rudnick's New York office to meet with various case parties and to coordinate with counsel to the Oversight  Board, the UCC and AAFAF to avoid duplication of effort and to ensure coverage of all pertinent case issues.

- <u>Weekly Client Calls</u>:  Brown Rudnick conducted weekly calls with the Special Claims Committee members to provide periodic status reports and to make recommendations as to certain courses of action.  These calls were primarily conducted by a combination of Edward Weisfelner, Stephen Best, Sunni Beville and Angela Papalaskaris, the primary leaders of the Brown Rudnick team.  Other attorneys attended only the portions of a call that required their input on specific topics.

## Actual and Necessary Disbursements

60.     As set forth in the Summary Cover Sheet filed contemporaneously with this Application, Brown Rudnick disbursed $64,470.84 as expenses incurred in providing professional services during the Compensation Period.   Brown Rudnick passes through all out-of-pocket expenses at actual cost.  Other reimbursable expenses (whether the service is performed by Brown Rudnick in-house or through a third-party vendor) include, but are not limited to, deliveries, court costs, transcript fees, travel, teleconferencing, and clerk fees, and are passed through at cost. Brown Rudnick does not bill for secretarial overtime or other administrative costs.

61.     Brown Rudnick submits that the actual expenses incurred for which reimbursement is sought in this Application were necessary, reasonable, and justified under the circumstances to serve the needs of the Oversight Board at the time such expenses were incurred.

## The Application Should be Granted

62.     Section 317 of PROMESA provides for interim compensation of professionals and incorporates the substantive standards of Section 316 of PROMESA to govern the Court's award of such compensation.  48 U.S.C. § 2177.  Section 316 provides that a court may award a professional employed under section 1103 of title 11 of the United States Code "reasonable compensation for actual, necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id*. §

21

2176(a)(1) and (2). Section 316(c) sets forth criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and
>
> (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

*Id.* § 2176(c).

63.    Brown Rudnick respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this First Interim Application were necessary and beneficial to the Oversight Board. In light of the nature, extent and value of such services, Brown Rudnick submits that the compensation requested herein is reasonable.

64.    The compensation for Brown Rudnick's services as requested is commensurate with the complexity, importance and nature of the problems, issues or tasks involved. The professional services were performed with expedition and in an efficient manner.

65.    In sum, the services rendered by Brown Rudnick were necessary and beneficial to the Oversight Board, were reasonable in light of the value of such services to the Oversight Board

and were performed with skill and expertise. Accordingly, Brown Rudnick submits that approval of the compensation for professional services and reimbursement of expenses requested in this First Interim Fee Application is warranted.

### Location of Services Provided

66.     All fees and services during this Compensation Period were rendered and incurred outside of Puerto Rico.

### Statements Pursuant to Appendix B of the U.S. Trustee Guidelines

67.     The following statements address information pursuant to Section C.5 of the U.S. Trustee Guidelines:

a.      **Question**: Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.

**Answer**:   Yes, in accordance with the Services Agreement, Brown Rudnick's standard hourly rates in these cases have been reduced so that the hourly rate for all attorneys is $790, and $270 for all paralegals and non-lawyer staff.

b.      **Question**: If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

**Answer**: No.

c.      **Question**: Have any of the professionals included in this fee application varied their hourly rate based on geographic location of the bankruptcy case?

**Answer**: No.

d.      **Question**: Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

**Answer**: No.

e.      **Question**: Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

23

**Answer**: No.

f.    **Question**: If the fee application includes any rate increases in retention: (i) did your client review and approve those rate increases in advance?  and (ii) Did your client agree when retaining the law firm to accept all future rate increases?  If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

**Answer**: The Application does not include any additional rate increases.

## Notice

68.    Notice of this Application has been provided to: (a) the United States Trustee for the District of Puerto Rico, (b) the Oversight Board and its counsel, (c) counsel to AAFAF, (d) counsel to the Fee Examiner, (e) counsel to the Official Committee of Unsecured Creditors, (f) counsel to the Official Committee of Retirees, and (g) the Puerto Rico Department of Treasury.  Brown Rudnick respectfully submits that no further notice of this Application should be required.

## No Prior Request

69.    No prior interim fee application for the relief requested herein has been made to this or any other Court.

## Conclusion

WHEREFORE, Brown Rudnick respectfully requests that the Court enter an order; (a) approving the interim allowance of $1,567,375.50 for compensation for professional services rendered during the Compensation Period, (b) approving the reimbursement of Brown Rudnick's out-of- pocket expenses incurred in connection with the rendering of such services during the Compensation Period in the amount of $64,470.84, (c) authorizing payment of the outstanding fees and expense reimbursement in the aggregate amount of $389,371.83, and (d) granting such other and further relief as the Court deems just and proper.

New York, New York
Dated: March 19, 2019

/s/ Sunni P. Beville
BROWN RUDNICK LLP
Edward S. Weisfelner, Esq. (admitted *pro hac vice*)
Angela M. Papalaskaris, Esq. (admitted *pro hac vice*)
Justin S. Weddle, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com
apapalaskaris@brownrudnick.com
jweddle@brownrudnick.com

Stephen A. Best, Esq. (admitted *pro hac vice*)
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
sbest@brownrudnick.com

Sunni P. Beville, Esq. (admitted *pro hac vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board,
acting through the Special Claims Committee*

and

/s/ Alberto Estrella
/s/ Kenneth C. Suria
ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management
Board, acting through the Special Claims Committee*