**Hearing Date**: June 12, 2019 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 8, 2019 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------- x

|  |  |  |
|---|---|---|
| In re: | : | |
| | : | |
| THE FINANCIAL OVERSIGHT AND | : | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : | Title III |
| | : | |
| as representative of | : | Case No. 17-BK-3283 (LTS) |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | : | (Jointly Administered) |
| | : | |
| Debtors.[1] | : | |

------------------------------------------------------------------------- x

## NOTICE OF HEARING ON FIFTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2018 THROUGH JANUARY 31, 2019

**PLEASE TAKE NOTICE** that a hearing on the annexed *Fifth Interim Fee Application of Paul Hastings LLP, as Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for Period from October 1, 2018 through January 31, 2019* (the "Application") filed by the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA), pursuant to section 1103(a)(1) of the Bankruptcy Code, made applicable to these cases by section 301 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 or "PROMESA," will be held before the Honorable Laura

---

[1]  The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

Taylor Swain, United States District Judge, at the United States District Court for the District of Puerto Rico, in Room 3, 150 Carlos Chardón Street, Federal Building, Office 150, San Juan, Puerto Rico 00918-1767 on **June 12, 2019 at 9:30 a.m. (ET) / 9:30 a.m. (AST)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that any responses or objections ("Objections") to the Application by any party other than the Fee Examiner shall be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the District of Puerto Rico, shall be filed with the Court (a) by attorneys practicing in the District Court, including attorneys admitted *pro hac vice*, electronically in accordance with rule 5 of the Local Rules for the District of Puerto Rico, and (b) by all other parties in interest, on a CD-ROM, in text-searchable portable document format (PDF), to the extent applicable, and shall be served in accordance with the *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3269] (the "Interim Compensation Order"), so as to be so filed and received by Paul Hastings LLP and the other Notice Parties (as defined in the Interim Compensation Order) no later than **April 8, 2019 at 4:00 p.m. (ET) / 4:00 p.m. (AST)** (the "Objection Deadline").

[*Remainder of page intentionally left blank.*]

-2-

**PLEASE TAKE FURTHER NOTICE** that, in accordance with the Interim

Compensation Order, if no Objections are timely filed, and if the Fee Examiner issues the Fee

Examiner Report (as defined in the Interim Compensation Order) recommending approval of the

Application in full or in part, the Court may grant the Application without a hearing.

Dated: March 18, 2019                    */s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
Andrew V. Tenzer, Esq. *(Pro Hac Vice)*
Michael E. Comerford, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. (*Pro Hac Vice*)
200 Park Avenue
New York, New York 10166
Telephone:  (212) 318-6000
lucdespins@paulhastings.com
andrewtenzer@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone:  (787)523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to Official Committee of Unsecured Creditors*

**Hearing Date**: June 12, 2019 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 8, 2019 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x
:
In re:                                                                :
                                                                      :
THE FINANCIAL OVERSIGHT AND                                           :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                     :    Title III
                                                                      :
          as representative of                                        :    Case No. 17-BK-3283 (LTS)
                                                                      :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,                            :    (Jointly Administered)
                                                                      :
          Debtors.[1]                                                 :
---------------------------------------------------------------------- x

## FIFTH INTERIM FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2018 THROUGH JANUARY 31, 2019

## SUMMARY COVER SHEET

| | |
|---|---|
| Name of applicant: | Paul Hastings LLP ("Paul Hastings") |
| Authorized to provide professional services to: | Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") |
| Date of retention: | Order entered August 10, 2017, effective as of June 26, 2017 [Docket No. 999] |
| Period for which compensation and reimbursement are sought: | October 1, 2018 through and including January 31, 2019 (the "Application Period") |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

| | |
|---|---|
| Amount of interim compensation sought as actual, reasonable, and necessary: | $4,705,215.50 / $3,637,669.19[2] |
| Amount of interim expense reimbursement sought as actual, reasonable, and necessary: | $95,438.11 / $89,404.29[3] |
| Are your fee or expense totals different from the sum of previously-served monthly statements for the Application Period? | No. |
| Total compensation approved by interim order to date: | $30,538,655.73 |
| Total expenses approved by interim order to date: | $998,705.64 |
| Total allowed compensation paid to date: | $24,705,195.00 |
| Total allowed expenses paid to date: | $1,004,729.43 |
| Blended rate in this Application for all attorneys: | (a) $1,015.04/hour / (b) $812.03/hour[4] |
| Blended rate in this Application for all timekeepers: | (a) $949.03/hour / (b) $759.23/hour[4] |
| Compensation sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $2,596,785.40 |
| Expenses sought in this Application already paid pursuant to a monthly compensation order but not yet allowed: | $50,482.87 |
| The total time expended for fee application preparation during the Application Period: | Approximately 36.7 hours |

---

[2]   While Paul Hastings seeks allowance of all of its fees incurred during the Application Period, the firm only seeks payment, at this time, of fees in the amount of $3,637,669.19 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of $4,547,086.49 (*i.e.*, Paul Hastings' fees after taking into account a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Application).  By the time of the hearing on this Application, this amount should have long been paid by the Debtors pursuant to the Interim Compensation Order (as defined below), and Paul Hastings reserves its rights to seek relief from the Court to the extent any outstanding fees and expenses that are due and payable are not paid on the terms set forth in the Interim Compensation Order.

[3]   While Paul Hastings seeks allowance of all of its expenses incurred during the Application Period, the firm only seeks payment of expenses in the amount of $89,404.29, which amount reflects a credit of $6,033.82 for expense reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Application.

[4]   The calculation of the blended hourly rates reflected in (a) does not take into account Paul Hastings' agreement to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  The impact of the 20% end of the case write-off on the blended hourly rates cannot be calculated at this time.  However, for illustrative purposes only, we have reflected in (b) the blended hourly rate after accounting for the 20% reduction for all attorneys and for all timekeepers.

| | |
|---|---|
| The total compensation requested for fee application preparation during the Application Period: | Approximately $32,692.00 |
| Number of professionals included in this Application: | 30 |
| If applicable, number of professionals in this Application not included in a staffing plan approved by the client: | 1 |
| If applicable, difference between fees budgeted and compensation sought for the Application Period: | Not Applicable |
| Number of professionals billing fewer than 15 hours to the case during the Application Period: | 7 |
| Are any timekeeper's hourly rates higher than those approved or disclosed at retention?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed in the retention application: | Yes.[5]  $4,256,814.75 (compared to $4,705,215.50 under the applicable rates).  The rate adjustments reflect not only Paul Hastings' annual, across-the-board increase in its rate scale, but also step increases due to advancing seniority.[6]  While $448,400.75 of Paul Hastings' fees for the Application Period are attributable to periodic changes in rates, $116,220.25 of this amount is attributable to step increases due to advancing seniority.  Thus, only $332,180.50 of the fees in the Application Period are attributable to changes in the firm's rate scale since the date of retention, which is approximately 7.06% of the fees for the Application Period (if calculated at pre-February 1, 2018 rates). |

---

[5]   As is customary, and as permitted pursuant to paragraph 2 of Paul Hastings' retention order [Docket No. 999], every year Paul Hastings reviews its rate structure and, when appropriate, adjusts its hourly rates based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.  In January 2019, Paul Hastings adjusted its hourly rates, which adjustments apply across-the-board to all Paul Hastings clients.  The Committee approved the rate adjustment on a timekeeper-by-timekeeper basis.  As a courtesy to the Committee, discounted the hourly rate for two attorneys during the Fee Period: for Luc Despins, the firm charged $1,395 per hour (rather than his standard rate of $1,400 per hour) from October through December, 2018, and for Alexander Bongartz, the firm charged $1,125 per hour (rather than his standard rate of $1,200 per hour) from October through December, 2018, and $1,200 per hour (rather than his standard rate of $1,250 per hour) for January 2019.

[6]   Under the U.S. Trustee's Appendix B Guidelines, rate increases "exclude step increases historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion."

## MONTHLY FEE REQUESTS TO DATE

| Date Submitted | Monthly Period Covered | Requested Fees (80%) | Requested Expenses (100%) | Fees Paid | Expenses Paid | 20% Fee Holdback |
|---|---|---|---|---|---|---|
| **First Interim Fee Period (June 26, 2017 through September 30, 2017)** | | | | | | |
| 8/25/17 | 6/26/17 - 7/31/17 | $2,612,026.60 | $128,519.42 | $2,612,026.20 | $128,519.42 | $653,006.65 |
| 10/20/17 | 8/1/17- 8/31/17 | $2,742,786.60 | ($35,965.44) | $2,742,786.60 | ($35,965.44) | $685,696.65 |
| 12/5/17 | 9/1/17 - 9/30/17 | $2,121,569.60 | $40,716.24 | $2,121,569.60 | $40,716.24 | $530,392.40 |
| **Total** | | **$7,476,382.80** | **$133,270.22** | **$7,476,382.40** | **$133,270.22** | **$1,869,095.70** |
| | | | | | | |
| **Second Interim Fee Period (October 1, 2017 through January 31, 2018)** | | | | | | |
| 12/23/17 | 10/1/17 - 10/31/17 | $915,475.60 | $14,567.93 | $915,475.60 | $14,567.90 | $228,868.90 |
| 1/5/18 | 11/1/17 - 11/30/17 | $1,445,414.80 | $27,705.47 | $1,445,414.80 | $27,705.47 | $361,353.70 |
| 1/12/18 | 12/1/17 - 12/31/17 | $1,467,883.60 | $22,557.50 | $1,467,883.60 | $22,557.50 | $366,970.90 |
| 3/16/18 | 1/1/18 - 1/31/18 | $1,824,040.20[7] | $30,631.53[8] | $1,822,932.20 | $17,909.03 | $455,733.05 |
| **Total** | | **$5,652,814.20** | **$95,462.43** | **$5,651,706.20** | **$82,739.90** | **$1,412,926.55** |
| | | | | | | |
| **Third Interim Fee Period (February 1, 2018 through May 31, 2018)** | | | | | | |
| 4/18/18 | 2/1/18 - 2/28/18 | $2,015,455.20 | $87,789.71 | $2,015,455.20 | $87,789.71 | $503,863.80 |
| 5/9/18 | 3/1/18 - 3/31/18 | $2,416,111.40 | $53,500.42 | $2,416,111.40 | $53,500.42 | $604,027.85 |
| 6/15/18 | 4/1/18 - 4/30/18 | $1,357,280.60 | $408,763.80 | $1,357,280.60 | $408,763.80 | $339,320.15 |
| 7/13/18 | 5/1/18 - 5/31/18 | $1,152,043.00 | $36,939.73 | $1,152,043.00 | $36,939.73 | $288,010.75 |
| **Total** | | **$6,940,890.20** | **$586,993.66** | **$6,940,890.20** | **$586,993.66** | **$1,735,222.55** |

---

[7]   This amount reflects a credit of $13,507.00 for fee reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

[8]   This amount reflects a credit of $21,926.16 for expense reductions pursuant to the order approving Paul Hastings' First Interim Fee Application.

| | | | | | | |
|---|---|---|---|---|---|---|
| **Fourth Interim Fee Period (June 1, 2018 through September 30, 2018)** | | | | | | |
| 9/6/18 | 6/1/18 - 6/30/18 | $983,056.20 | $45,319.10 | $983,056.20 | $45,319.10 | $245,764.05 |
| 10/8/18 | 7/1/18 - 7/31/18 | $1,061,831.60 | $77,376.40 | $1,061,831.60 | $77.376.40 | $265,457.90 |
| 11/2/18 | 8/1/18 - 8/31/18 | $1,288,866.00 | $39,833.17 | $1,288,866.00 | $39,833.17 | $322,216.50 |
| 11/15/18 | 9/1/18 - 9/30/18 | $1,302,462.40 | $39,196.98 | $1,302,462.40 | $39,196.98 | $325,615.60 |
| **Total** | | **$4,636,216.20** | **$201,725.65** | **$4,636,216.20** | **$201,725.65** | **$1,159,054.05** |
| | | | | | | |
| **Fifth Interim Fee Period (October 1, 2018 through January 31, 2019)** | | | | | | |
| 12/19/18 | 10/1/18 – 10/31/18 | $968,238.40 | $17,300.41 | $968,238.40 | $17,300.41 | $242,059.60 |
| 01/07/19 | 11/1/18 – 11/30/18 | $695,795.40 | $9,071.96 | $695,795.40 | $9,071.96 | $173,948.85 |
| 02/20/19 | 12/1/18 – 12/31/18 | $932,751.60 | $24,110.50 | $932,751.60 | $24,110.50 | $233,187.90 |
| 03/15/10 | 1/1/19 – 1/31/19 | $1,040,883.79[9] | $38,921.42[10] | $0.00 | $0.00 | $260,220.95 |
| **Total** | | **$3,637,669.19** | **$89,404.29** | **$2,596,785.40** | **$50,482.87** | **$909,417.30** |

---

[9]   This amount reflects a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

[10]   This amount reflects a credit of $6,033.82 for expense reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications.

## PRIOR INTERIM FEE APPLICATIONS

| Date Filed [Docket No.] | Application Period Covered | Requested Fees | Requested Expenses | Order [Docket No.] | Fees Allowed and Paid | Expenses Allowed and Paid |
|---|---|---|---|---|---|---|
| 12/15/17 Docket No. 2040 | 6/26/17 - 9/30/17 | $9,345,478.50 | $133,270.22 | Docket No. 2685 | Allowed: $9,264,712.49 Paid: $7,476,382.40 Authorized to be paid: $7,465,577.20[11] | Allowed: $111,344.06 Paid: $133,270.22 Authorized to be paid: $111,344.06[12] |
| 3/19/18 Docket No. 2735 | 10/1/17 – 1/31/18 | $7,066,017.75 | $95,462.43 | Docket No. 3279 | Allowed: $6,960,689.25 Paid: $5,651,706.20 Authorized to be paid: $5,651,706.20 | Allowed: $104,666.09[13] Paid: $82,739.90 Authorized to be paid: $82,739.93 |
| 7/16/18 Docket No. 3568 | 2/1/18 – 5/31/18 | $8,676,112.75 | $586,993.66 | Docket No. 5654 | Allowed: $8,576,523.01 Paid: $6,940,890.20 Authorized to be paid: $6,861,218.41[14] | Allowed: $583,256.46 Paid: $586,993.66 Authorized to be paid: $583,256.46[15] |
| 11/16/18 Docket No. 4325 | 6/1/18 – 9/30/18 | $5,795,270.25 | $201,725.65 | Docket No. 5654 | Allowed: $5,736,730.98 Paid: $4,636,216.20 Authorized to be paid: $4,589,384.78[16] | Allowed: $199,429.03 Paid: $201,725.65 Authorized to be paid: $199,429.03[17] |

---

[11]   The difference of $13,507.00 was credited against the amounts payable under the January 2018 fee statement.

[12]   The difference of $21,926.16 was credited against the amounts payable under the January 2018 fee statement.

[13]   Prior to application of a $21,926.16 credit for expense reductions pursuant to order approving Paul Hastings' First Interim Fee Application.

[14]   The difference of $99,589.74 was credited against the amounts payable under the January 2019 fee statement.

[15]   The difference of $3,737.20 was credited against the amounts payable under the January 2019 fee statement.

[16]   The difference of $58,539.27 was credited against the amounts payable under the January 2019 fee statement.

[17]   The difference of $2,296.62 was credited against the amounts payable under the January 2019 fee statement.

**Hearing Date**: June 12, 2019 at 9:30 a.m. (ET) / 9:30 a.m. (AST)
**Objection Deadline**: April 8, 2019 at 4:00 p.m. (ET) / 4:00 p.m. (AST)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------- x
                                                      :
In re:                                                :
                                                      :
THE FINANCIAL OVERSIGHT AND                           :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                     :  Title III
                                                      :
        as representative of                          :  Case No. 17-BK-3283 (LTS)
                                                      :
THE COMMONWEALTH OF PUERTO RICO, *et al.*,            :  (Jointly Administered)
                                                      :
        Debtors.[1]                                   :
------------------------------------------------------------------- x

# FIFTH INTERIM APPLICATION OF PAUL HASTINGS LLP, COUNSEL TO OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2018 THROUGH JANUARY 31, 2019

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................................... 1

BACKGROUND ............................................................................................................................. 6

COMPENSATION AND REIMBURSEMENT REQUEST ....................................................... 10

SUMMARY OF SERVICES ........................................................................................................ 15

    I.     Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 00002) ........................................................................................... 16

    II.     COFINA Dispute Analysis (Matter ID 00003)........................................... 20

    III.    Communications with Creditors (other than Committee Members) / Website (Matter ID 00004) ........................................................................................... 22

    IV.    PREPA (Matter ID 00006) ......................................................................... 23

    V.     HTA (Matter ID 00007)............................................................................... 25

    VI.    ERS (Matter ID 00008)................................................................................ 25

    VII.    Other Adversary Proceedings (Matter ID 00009)................................... 26

    VIII.   Mediation (Matter ID 00010)...................................................................... 27

    IX.    GO Bond Debt Issues (Matter ID 00011) ................................................ 32

    X.     Creditors Committee Meetings (Matter ID 00012) ................................. 34

    XI.    Rule 2004 Investigations (Matter ID 00013) ........................................... 35

    XII.    Constitutional Issues (Matter ID 00014)................................................... 37

    XIII.   Bankruptcy Rule 2004 (Whitefish) (Matter ID 00015) ......................... 37

    XIV.   PREPA Privatization (Matter ID 00016) ................................................. 37

    XV.    PBA (Matter ID 00017) ............................................................................... 38

    XVI.   GDB (Matter ID 00018)............................................................................... 39

ATTENDANCE AT HEARINGS ................................................................................................ 42

ACTUAL AND NECESSARY DISBURSEMENTS ................................................................... 44

REQUESTED COMPENSATION SHOULD BE ALLOWED.................................................... 45

CONCLUSION............................................................................................................................. 48

## SUPPORTING DECLARATION, EXHIBITS, AND SCHEDULES

SUPPORTING DECLARATION OF LUC A. DESPINS

EXHIBIT A          CUSTOMARY AND COMPARABLE COMPENSATION
DISCLOSURES

EXHIBIT B          SUMMARY OF TIMEKEEPERS INCLUDED IN THIS APPLICATION

EXHIBIT C          BUDGETS AND STAFFING PLANS FOR APPLICATION PERIOD

   EXHIBIT C-1     BUDGETS

   EXHIBIT C-2     STAFFING PLANS

EXHIBIT D          SUMMARY OF COMPENSATION REQUESTED BY PROJECT
CATEGORY

   EXHIBIT D-1     SUMMARY OF COMPENSATION REQUESTED BY PROJECT
CATEGORY AS COMPARED TO BUDGET

                                 FURTHER BREAKDOWN OF COMPENSATION REQUESTED BY
PROJECT CATEGORY AND BY MATTER

   EXHIBIT D-2     SUMMARY OF EXPENSE REIMBURSEMENT REQUESTED BY
CATEGORY

EXHIBIT E          BREAKDOWN OF COMPENSATION AND EXPENSE
REIMBURSEMENT REQUESTED BY DEBTOR AND BY WHETHER
SERVICES WERE RENDERED IN PUERTO RICO OR OUTSIDE
PUERTO RICO

SCHEDULE 1        LIST OF PROFESSIONALS BY MATTER

SCHEDULE 2        MONTHLY STATEMENTS COVERED IN APPLICATION

SCHEDULE 3        PROPOSED ORDER

To the Honorable United States District Judge Laura Taylor Swain:

Paul Hastings LLP ("Paul Hastings"), counsel to the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee"),[1] for its fifth application (the "Application"), pursuant to sections 316 and 317 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("PROMESA"),[2] section 503(b) of Title 11, United States Code (the "Bankruptcy Code") as made applicable to these cases by section 301(a) of PROMESA, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), for the interim allowance of compensation for professional services performed by Paul Hastings for the period from October 1, 2018 through and including January 31, 2019 (the "Application Period"), and for reimbursement of its actual and necessary expenses incurred during the Application Period, respectfully represents:

## PRELIMINARY STATEMENT

1.      During the Application Period, Paul Hastings was confronted with a wide range of critical and time-sensitive issues, including multi-billion dollar challenges to the validity of certain general obligation ("GO") bond claims and the Commonwealth's "leases" with the Puerto Rico Public Buildings Authority ("PBA").  Indeed, Paul Hastings prepared and initiated one of the most important legal actions in these Title III cases to date: the omnibus objection [Docket No. 4784] (the "GO Objection") of the Committee and the Oversight Board (acting through its Special Claims Committee) seeking to disallow claims based on the Commonwealth's general

---

[1]     Prior to August 25, 2017, the Committee was the official committee of unsecured creditors for the Commonwealth's Title III case only.  On August 25, 2017, the U.S. Trustee expanded the Committee's role to also include the Title III cases of HTA, ERS, and PREPA.

[2]     References to PROMESA are references to 48 U.S.C. §§ 2101 *et. seq.*

obligation bonds issued in or after March 2012 (the "Invalid GO Bonds").  The GO Objection

seeks to disallow **more than $6 billion** in GO bondholder claims out of $13 billion in

outstanding GO bonds, on the basis that, among other things, these bonds were issued in

violation of the limit on debt service contained in the Constitution of the Commonwealth of

Puerto Rico (the "Commonwealth Constitution").  The GO Objection raises critical gating issues

for the Commonwealth's plan of adjustment process, given that holders of GO bonds have

claimed entitlement to a so-called "constitutional priority of payment," while the Committee, the

Oversight Board, and numerous other Commonwealth creditors dispute that the GO bondholders

are entitled to such a priority.  Thus, Paul Hastings' work on the GO Objection is of enormous

significance to the successful resolution of these Title III cases.

2.      In addition, during the Application Period, Paul Hastings performed extensive

work with respect to the Committee's adversary proceeding (filed jointly with the Oversight

Board) challenging PBA "leases" as disguised financing arrangements [Adv. Proc. No. 18-149

(LTS)] (the "PBA Adversary Proceeding").  In the PBA Adversary Proceeding, the Committee

and the Oversight Board seek a declaration that the payments due under the PBA "leases" are not

"rent" payments and, therefore, that more than $600 million in "rent" that has accrued under the

"leases" is not entitled to payment in full under PROMESA and the Bankruptcy Code, but rather

only gives rise to an unsecured claim by the PBA against the Commonwealth.

3.      All the while, Paul Hastings has continued to advise the Committee on all issues

bearing on the rights of unsecured creditors in these Title III cases and taken proactive steps to

protect their rights, including by:

> (i)     resolving the Committee's objections to the GDB restructuring,
> which resolution included GDB agreeing to transfer $20 million
> in cash, plus a potential additional amount of up to $10 million
> in cash, for the benefit of certain Debtors;

-2-

(ii)     pursuing a consensual resolution of the Commonwealth-
COFINA dispute, which efforts culminated in the approval of a
settlement agreement and confirmation of a COFINA plan of
adjustment;

(iii)    seeking discovery from the Debtors (except COFINA) pursuant
to Bankruptcy Rule 2004 as part of the Committee's
investigation into potential avoidance action claims against third
parties;

(iv)     opposing the appeals brought by Assured and Ambac seeking to
reverse the Court's rulings dismissing their respective
"clawback" adversary proceedings, including participating in
oral argument before the First Circuit;

(v)      continuing to develop a framework for an alternative dispute
resolution process for the allowance of claims;

(vi)     analyzing the motion filed by PREPA's bond insurers
requesting relief from the automatic stay to seek appointment of
a receiver at PREPA and participating in discovery related
thereto;

(vii)    researching a variety of issues related to confirmation of a
Commonwealth plan of adjustment in connection with the
mediation process;

(viii)   maintaining the Committee's website as well as distributing
regular informational emails to unsecured creditors; and

(ix)     monitoring pleadings filed and orders entered in the Title III
cases and related adversary proceedings (including, where
appropriate, filing objections).

4.      Paul Hastings has continued to perform these services in an economic, effective,

and efficient manner commensurate with the complexity and importance of the issues involved.

For example, the work performed by Paul Hastings was carefully assigned to appropriate

professionals or paraprofessionals according to the experience and level of expertise required for

each particular task.  Moreover, whenever possible, Paul Hastings sought to minimize the costs

of Paul Hastings' services to the Committee by utilizing talented junior attorneys and

paraprofessionals to handle the more routine aspects of the assignments and by delegating, to the extent practicable, questions of Puerto Rico law to local counsel.  In addition, a small group of the same Paul Hastings attorneys was utilized for the vast majority of the work in these Title III cases to minimize the costs of intra-Paul Hastings communication and education about the cases.  Notably, as a general matter, no more than two Paul Hastings attorneys (and often only one attorney) attended the various hearings held during the Application Period, thereby minimizing not only the time billed on these hearings but also the cost of travel and lodging.  This is to be contrasted with other firms which have several partners attending such hearings.

5.      Furthermore, to the extent appropriate, Paul Hastings sought to work closely with counsel to the Oversight Board, counsel to the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and counsel for the official committee of retirees (the "Retiree Committee") in order to eliminate unnecessary duplication and allocate tasks in an efficient manner.  For example, with very limited exceptions, the Committee did not become involved in addressing stay relief requests and, instead, deferred these matters to AAFAF.  In addition, to the extent appropriate, the Committee joined in the relief sought by other parties (as opposed to incurring the cost of preparing its own standalone motions) or concluded that no pleading was necessary at all.  The Committee has also continued to be very judicious in determining in which adversary proceedings to intervene and, despite the First Circuit's ruling affirming the Committee's unconditional right to intervene in adversary proceedings, is currently an intervenor in only three (3) pending adversary proceedings (out of a total of 19), excluding dismissed adversary proceedings.[3]

---

[3]     Finally, we note that Paul Hastings has agreed to reduce its total fees by an amount equal to 20% of the firm's case fees (with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process).  For the avoidance of doubt, at this time, Paul Hastings seeks allowance of $4,705,215.50 (*i.e.*, 100% of fees for services rendered during the

6.      In sum, Paul Hastings respectfully submits that the services for which it seeks compensation in this Application were necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize the value for unsecured creditors during the pendency of these Title III cases.  The results obtained to date have benefited not only the Committee but also the Debtors and their creditors.  Accordingly, in light of the nature and complexity of these Title III cases, Paul Hastings' charges for professional services performed and expenses incurred are reasonable under applicable standards.  For all these reasons, Paul Hastings respectfully requests that the Court grant the Application and allow interim compensation for professional services performed and reimbursement for expenses as requested.

7.      This Application is consistent with the Interim Compensation Order (as defined below), Local Rule 2016-1, and *Appendix B of the United States Trustee's Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* (the "U.S. Trustee Guidelines").  To the extent necessary, Paul Hastings requests a waiver for cause shown of any requirements not met by this Application.[4]

8.      In accordance with the U.S. Trustee Guidelines, at the end of this Application are the following Exhibits and Schedules:

- Exhibit A contains disclosures regarding "customary and comparable compensation."

---

Application Period), but payment of only $3,637,669.19 (to the extent such amount has not been paid before the hearing scheduled on this Application), which is 80% of $4,547,086.49 (*i.e.*, Paul Hastings' fees after taking into account a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Application).

[4]   The Committee and Paul Hastings reserve all rights as to the relevance and substantive legal effect of the U.S. Trustee Guidelines with respect to any application for compensation in these cases.

- <u>Exhibit B</u> contains a summary of Paul Hastings' timekeepers included in this Application.

- <u>Exhibit C-1</u> contains the budgets for Paul Hastings' services during the Application Period.

- <u>Exhibit C-2</u> contains the staffing plans for Paul Hastings' services during the Application Period.

- <u>Exhibit D-1</u> contains (a) a summary of the compensation requested as compared to the compensation budgeted for the firm's services during the Application Period, and (b) a further breakdown of the compensation requested by project category and matter number.

- <u>Exhibit D-2</u> contains a summary of the expense reimbursements requested by category.  An itemized schedule of all such expenses is included in Paul Hastings' monthly statements.

- <u>Exhibit E</u> contains a breakdown of compensation and expense reimbursement requested by Debtor and by whether the services were rendered in Puerto Rico or outside Puerto Rico.

- <u>Schedule 1</u> contains a list of the professionals providing services during the Application Period by matter.

- <u>Schedule 2</u> includes the monthly fee statements covered in this Application.

- <u>Schedule 3</u> includes the proposed order approving this Application.

## <u>BACKGROUND</u>

9. On May 3, 2017, the Oversight Board commenced a Title III case for the

Commonwealth of Puerto Rico by filing a voluntary petition for relief pursuant to section 304(a)

of PROMESA (the "<u>Commonwealth Title III Case</u>").  Thereafter, the Oversight Board

commenced a Title III case for each of COFINA, the Employees Retirement System of the

Government of the Commonwealth of Puerto Rico (the "<u>ERS Title III Case</u>"), the Puerto Rico

Highways and Transportation Authority (the "<u>HTA Title III Case</u>"), and the Puerto Rico Electric

Power Authority (the "<u>PREPA Title III Case</u>") (and together with the Commonwealth Title III

Case, the "Title III Cases").[5]  By orders dated June 29, 2017 [Docket No. 537] and October 6, 2017 [Docket No. 1417], the Court approved the joint administration of the Title III Cases.

10.     On June 15, 2017, the Office of the United States Trustee for the District of Puerto Rico (the "U.S. Trustee") filed a *Notice Appointing Creditors Committee for Unsecured Creditors* [Docket No. 338].  On June 26, 2017, the Committee selected Paul Hastings as counsel to the Committee.

11.     On July 10, 2017, the Committee filed an application to retain and employ Paul Hastings as counsel, effective June 26, 2017 [Docket No. 610] (the "Retention Application"). By order of this Court entered August 10, 2017 [Docket No. 999] (the "Retention Order"), incorporated herein by this reference, Paul Hastings' retention as counsel to the Committee was approved effective as of June 26, 2017.

12.     On August 23, 2017, the Court entered the *Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* (as amended, the "Interim Compensation Order").[6]

13.     On August 25, 2017, the U.S. Trustee filed an *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [Docket No. 1171], which expanded the role of the Committee to be the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.  Paul Hastings' retention extends to the representation of the Committee as the official committee for the HTA Title III Case, the ERS Title III Case, and the PREPA Title III Case.  In particular, the Retention Order provided that "[t]he retention of Paul Hastings, as counsel to the Committee, shall be deemed to apply to the representation of the

---

[5]     Unless otherwise indicated, references to docket numbers shall be to the docket of the Commonwealth Title III Case.

[6]     The Interim Compensation Order was most recently amended on June 6, 2018.

Committee if ever enlarged to include unsecured creditors of other debtors, without the need to obtain a modification of this Order."

14.     The Retention Order authorized Paul Hastings to be compensated on an hourly basis and reimbursed for actual and necessary out-of-pocket expenses pursuant to sections 316 and 317 of PROMESA, the Bankruptcy Rules, the Local Rules, and such orders as the Court may direct.[7]  The Retention Order further provides that "[p]ursuant to Bankruptcy Code section 503(b)(1), made applicable by PROMESA section 301(a), the fees and expenses of Paul Hastings under this Order shall be an administrative expense."  In addition, as provided in the Retention Order, the Oversight Board has consented to the Debtors' payment of Paul Hastings' allowed fees and expenses.

15.     Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process.  For that reason, at this time Paul Hastings seeks payment of only 80% of its fees incurred during the Application Period, but allowance of 100% of such fees.  Paul Hastings agreed to this reduction in reliance on the fact that the timing of the payment of Paul Hastings' fees and expenses would be governed by Court orders which contained strict procedures and deadlines, and that such order would be complied with.

16.     On October 6, 2017, the Court entered the *Order Pursuant to PROMESA Sections 316 and 317 and Bankruptcy Code Section 105(a) Appointing a Fee Examiner and*

---

[7]   Paragraph 2 of the Retention Order provides, among other things, that "Paul Hastings will charge its regular hourly rates in effected from time to time; as such rates may be increased periodically, annually or otherwise."

*Related Relief* [Docket No. 1416] (the "Fee Examiner Order").  The Court appointed Brady Williamson as the Fee Examiner in the Title III Cases.

17.     On December 15, 2017, Paul Hastings filed its first interim fee application with respect to the period from June 26, 2017 through September 30, 2017 [Docket No. 2040] (the "First Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the First Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[8]  On March 7, 2018, the Court approved the First Interim Fee Application, with the agreed-upon adjustments.

18.     On March 19, 2018, Paul Hastings filed its second interim fee application with respect to the period from October 1, 2017 through January 31, 2018 [Docket No. 2735] (the "Second Interim Fee Application").  In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Second Interim Fee Application.  Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[9]  On June 8, 2018, the Court approved the Second Interim Fee Application, with the agreed-upon adjustments.

19.     On July 16, 2018, Paul Hastings filed its third interim fee application with respect to the period from February 1, 2018 through May 31, 2018 [Docket No. 3568] (the "Third

---

[8]    These agreed-upon adjustments consisted of (a) fee reductions in the amount of  $67,259.01 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $13,507.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $21,926.16 (which amount also was credited against Paul Hastings' January 2018 fee statement).

[9]    These agreed-upon adjustments consisted of (a) fee reductions in the amount of  $103,943.50 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $1,385.00 (which amount was credited against Paul Hastings' January 2018 fee statement), and (c) expense reductions in the amount of $12,722.50 (which amount also was credited against Paul Hastings' January 2018 fee statement).

Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Third Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[10] On March 14, 2019, the Court approved the Third Interim Fee Application, with the agreed-upon adjustments.

20. On November 16, 2018, Paul Hastings filed its fourth interim fee application with respect to the period from June 1, 2018 through September 30, 2018 [Docket No. 4325] (the "Fourth Interim Fee Application"). In accordance with the Interim Compensation Order, Paul Hastings received a preliminary report from the Fee Examiner with respect to the Fourth Interim Fee Application. Per the Fee Examiner's request, Paul Hastings agreed to certain adjustments in its requested fees and expenses.[11] On March 14, 2019, the Court approved the Fourth Interim Fee Application, with the agreed-upon adjustments.

## COMPENSATION AND REIMBURSEMENT REQUEST

21. By this Application, Paul Hastings seeks allowance of compensation for professional services rendered to the Committee during the Application Period in the aggregate amount of $4,705,215.50[12] and expense reimbursements in the aggregate amount of

---

[10]  These agreed-upon adjustments consisted of (a) fee reductions in the amount of $125,338.14 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $99,589.74 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $3,737.20 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[11]  These agreed-upon adjustments consisted of (a) fee reductions in the amount of $69,137.26 to be included within the agreed overall 20% reduction in total fees sought by Paul Hastings LLP as part of its final fee application, (b) additional fee reductions in the amount of $58,539.27 (which amount was credited against Paul Hastings' January 2019 fee statement), and (c) expense reductions in the amount of $2,296.62 (which amount also was credited against Paul Hastings' January 2019 fee statement).

[12]  As noted, Paul Hastings has agreed to reduce its fees by an amount equal to 20% of its total case fees, with the precise fees to be waived to attain the 20% reduction to be designated by Paul Hastings (in its sole discretion) in connection with the final fee application process. Accordingly, the firm only seeks payment, at this time, of fees in the amount of $3,637,669.19, which is 80% of $4,547,086.49 (*i.e.*, Paul Hastings' fees after taking into

$95,438.11.[13]  These amounts are allocated among the Commonwealth Title III Case, the HTA

Title III Case, the ERS Title III Case, and the PREPA Title III Case, as follows:

| Application Period | Fees | Expenses | Total |
|---|---|---|---|
| Commonwealth Title III Case | $4,207,710.00 | $88,655.18 | $4,132,202.35 |
| HTA Title III Case | $106,331.00 | $1,562.39 | $107,893.39 |
| ERS Title III Case | $96,414.00 | $538.45 | $96,952.45 |
| PREPA Title III Case | $294,760.50 | $4,682.09 | $299,442.59 |
| **Total** | **$4,705,215.50** | **$95,438.11** | **$4,800,653.61** |

22.     The Committee has approved the amounts requested by Paul Hastings for services

performed and expenses incurred in each of the monthly statements submitted to, among others,

the Oversight Board, AAFAF, the Fee Examiner, and the U.S. Trustee during the Application

Period.  All services for which compensation is requested herein were performed for or on behalf

of the Committee.  Moreover, as detailed on Exhibit D hereto, fees incurred by Paul Hastings

during the Application Period were well below the monthly budgets.

23.     To date, Paul Hastings has received payments totaling $2,647,268.27 for services

rendered during the Application Period, which amount consists of $2,596,785.40 (representing

80% of the fees for services invoiced during the period from October 1, 2018 through December

31, 2018) and $50,482.87 (representing 100% of expenses invoiced for the same period).  As of

the date of this Application, the amount of **$1,079,805.21** (reflecting 80% of fees and 100% of

expenses for services rendered in January 2019, after taking into account the credits for fee and

---

account a credit of $158,129.01 for fee reductions pursuant to the order approving Paul Hastings' Third and
Fourth Interim Fee Application).

[13]    As noted, Paul Hastings only seeks payment of expenses in the amount of $89,404.29, which amount reflects a
credit of $6,033.82 for expense reductions pursuant to the order approving Paul Hastings' Third and Fourth
Interim Fee Application.

expense reductions pursuant to the order approving Paul Hastings' Third and Fourth Interim Fee Applications) remains unpaid.[14]

24.     Other than payments made in accordance with the Interim Compensation Order, Paul Hastings has received no payment and no promises of payment from any source for services rendered during the Application Period.  By this Application, Paul Hastings requests allowance of all fees and expenses incurred for services rendered during the Application Period.  At this time, however, Paul Hasting seeks payment of only (a) 80% of the fees for services invoiced during the Application Period and (b) 100% of expenses invoiced during the Application Period.

25.     In addition, as a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period Paul Hastings voluntarily waived fees totaling $40,919.75.  The time billed by these timekeepers was reasonable, and Paul Hastings reserves the right to seek allowance and payment of these fees based on the facts and circumstances of these cases, including, without limitation, if objections are interposed to the allowance or payment of Paul Hastings' fees and expenses.  Paul Hastings also voluntarily waived expenses totaling $4,589.99 as a courtesy to the Committee during the Application Period.  For details regarding the waived fees and expenses, please see the Declaration of Luc A. Despins filed concurrently herewith.

26.     There is no agreement or understanding between Paul Hastings and any other person other than the attorneys, employees, and staff of Paul Hastings, for the sharing of compensation to be received for services rendered in these cases.

---

[14]     The deadline to object to Paul Hastings' January 2019 fee statements is March 25, 2019.  No objections have been received as of the filing of this Application.

27.     Paul Hastings maintains computerized records, in the form of monthly statements, of the time spent by all Paul Hastings' attorneys and paraprofessionals in connection with its representation of the Committee.  The monthly statements are in the same form regularly used by Paul Hastings to bill its clients for services rendered and include the date that the services were rendered, a detailed, contemporaneous narrative description of the services provided, the amount of time spent for each service, and the designation of the professional who performed the service.

28.     The fees charged by Paul Hastings in the Title III Cases are billed in accordance with its existing billing rates and procedures in effect during the Application Period with two exceptions.[15]  The rates Paul Hastings charges for the services rendered by its professionals and paraprofessionals in the Title III Cases are comparable to the rates Paul Hastings charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters.  Moreover, when Paul Hastings' restructuring professionals and paraprofessionals work on nonbankruptcy matters, the firm generally charges their standard rate.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.

29.     Paul Hastings' rates are set at a level designed to fairly compensate Paul Hastings for the work of its attorneys and paraprofessionals to cover fixed and routine overhead expenses. Paul Hastings operates in a complicated national marketplace for legal services in which rates are driven by multiple factors relating to the individual lawyer, his or her area of specialization, the firm's expertise, performance and reputation, the nature of the work involved, and other factors.

---

[15]    As a courtesy to the Committee and based on circumstances unique to the Title III Cases, Paul Hastings agreed to charge during the Application Period: (a) for Luc Despins, $1,395 per hour (rather than his standard rate of $1,400 per hour) from October through December, 2018, and (b) for Alexander Bongartz, $1,125 per hour (rather than his standard rate of $1,200 per hour) from October through December, 2018, and $1,200 per hour (rather than his standard rate of $1,250 per hour) for January 2019.

Accordingly, Paul Hastings set its rates for attorneys and paraprofessionals both in the restructuring group and other practice groups within the firm by reference to market information and market adjustments by firms considered to be industry peers.  Based on this and reviews of contemporaneous time records and fee applications filed in other cases, Paul Hastings endeavors to set the hourly rates for its attorneys and paraprofessionals at levels comparable to those of its principal competitor firms.

30.    As is customary, and as permitted pursuant to paragraph 2 of the Retention Order, every year Paul Hastings reviews its rate structure and, when appropriate, adjusts its hourly rates based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.  In January 2019, Paul Hastings adjusted its hourly rates, which adjustments apply across-the-board to all Paul Hastings clients.  The Committee approved the rate adjustments on a timekeeper-by-timekeeper basis.

31.    Paul Hastings' professional services during the Application Period required an aggregate expenditure of 4,957.90 recorded hours by Paul Hastings' attorneys and paraprofessionals, broken down as follows: partners (980.80 hours), counsel (1769.90 hours), associates (1,739.00 hours), and paraprofessionals (468.20 hours).  During the Application Period, Paul Hastings' billing rates for attorneys rendering services in this matter ranged from $570.00 to $1,500.00 per hour.

32.    To the extent that time or disbursement charges for services rendered or disbursements incurred relate to the Application Period, but were not processed before the preparation of this Application, or Paul Hastings has for any other reason not sought

-14-

compensation or reimbursement with respect to such services or expenses, Paul Hastings

reserves the right to request additional compensation for such services, and reimbursement of

such expenses, in a supplemental or future application.

### SUMMARY OF SERVICES

33.     During the Application Period, Paul Hastings assisted and advised the Committee

on a regular basis regarding legal matters relating to the restructuring of the Debtors, including

related adversary proceedings, and all other matters arising in the performance of the

Committee's duties.  In addition, Paul Hastings has prepared various motions, applications,

orders, and other pleadings submitted to the Court for consideration, and has performed the

necessary professional services that are described below and in the monthly statements attached

hereto as Schedule 2.[16]  For ease of reference and transparency purposes, Paul Hastings created

several matter numbers for its representation of the Committee.  The matter numbers are divided

by Debtor and/or large tasks the Committee undertook, as follows:

| Matter ID | Matter Name |
|---|---|
| 00002 | Official Committee of Unsecured Creditors |
| 00003 | COFINA Dispute Analysis |
| 00004 | Communications with Creditors (other than Committee Members) |
| 00005 | Fiscal Plan Analysis |
| 00006 | PREPA |
| 00007 | HTA |
| 00008 | ERS |
| 00009 | Other Adversary Proceedings |
| 00010 | Mediation |
| 00011 | GO Bond Debt Issues |
| 00012 | Creditors' Committee Meetings |

---

[16]   The description of services in this Application is limited to those matters in which Paul Hastings provided
five (5) or more hours of service during the Application Period.

| Matter ID | Matter Name |
|---|---|
| 00013 | Rule 2004 Investigations |
| 00014 | Constitutional Issues |
| 00015 | Rule 2004 (Whitefish) |
| 00016 | PREPA Privatization |
| 00017 | PBA |
| 00018 | GDB |

## I.  Official Committee of Unsecured Creditors of Commonwealth of Puerto Rico (Matter ID 00002)

(a)  <u>Case Administration (Task Code B110)</u>
Fees:   $118,096.50         Total Hours: 162.60

34.     During the Application Period, Paul Hastings continued to advise the Committee on general case administration.  In order to efficiently track deadlines, organize documents, and manage work streams, Paul Hastings maintained a global task list and case calendar, including a tracking chart for all adversary proceedings and non-Title III litigation.  Further, Paul Hastings coordinated with the Committee's financial advisor, Zolfo Cooper LLP ("<u>Zolfo Cooper</u>") regarding Committee communications, case strategy, and work streams.

35.     In addition, during the Application Period, Paul Hastings continued to implement interim and long-term strategies to maximize recoveries for general unsecured creditors and held internal team conference calls and occasional meetings to discuss the status of the Title III Cases and to manage work streams.  Paul Hastings also communicated with certain Committee members, as well as counsel to the Oversight Board, AAFAF, the Retiree Committee, and others in connection with the appropriate administration of the Title III cases.

36.     Furthermore, Paul Hastings worked to execute a variety of other administrative tasks, including preparing the Committee's disclosure statements pursuant to Bankruptcy Rule 2019 and monitoring the Bankruptcy Rule 2019 disclosures of other creditor groups.

(b)   Pleadings Review (Task Code B113)
      Fees:   $34,785.50          Total Hours: 106.50

37.      During the Application Period, Paul Hastings continued to review and prepare

summaries of pleadings filed and orders entered in the Title III Cases for internal review and

review by the Committee.

(c)   Meetings of and Communications with Creditors (Task Code B150)
      Fees:   $201,915.00         Total Hours: 230.50

38.      During the Application Period, Paul Hastings continued to prepare reports and

summaries to keep the Committee apprised of relevant developments in the Title III Cases,

related adversary proceedings, and the mediation process.[17]

(d)   Court Hearings (Task Code B155)
      Fees:   $25,129.00          Total Hours: 26.80

39.      During the Application Period, Paul Hastings attended the November 7, 2018

omnibus hearing in San Juan, Puerto Rico, at which hearing Paul Hastings addressed the

Oversight Board's motion for omnibus claim objection procedures and the motion for relief from

stay filed by a credit union in connection with certain loans made to ERS participants.  Paul

Hastings also attended the December 19, 2018 omnibus hearing, held in San Juan, Puerto Rico.

40.      In preparation for these hearings, Paul Hastings also reviewed relevant issues

raised in the parties' pleadings, prepared materials for the hearings, and filed the requisite

informative motions to be heard.

(e)   Fee/Employment Applications (Paul Hastings) (Task Code B160)
      Fees:   $161,007.50         Total Hours: 176.00

41.      During the Application Period, Paul Hastings prepared, among other things, the

Paul Hastings monthly fee statements for the months of July through December 2018, as well as

---

[17]   Meetings and calls with the Creditors' Committee were recorded separately under Matter ID 00012 (Creditors'
       Committee Meetings).

the Fourth Interim Fee Application for the period from June 1, 2018 through September 30,

2018.  In addition, Paul Hastings continued to identify possible connections between the firm and

parties in interest in the Title III Cases and prepared two supplemental declarations of Luc A.

Despins regarding the firm's retention as Committee counsel.  Paul Hastings also reviewed

reports and correspondence from the Fee Examiner and engaged in discussions with the Fee

Examiner and his counsel to address questions regarding Paul Hastings' interim fee applications.

(f)     Fee/Employment Applications for Other Professionals (Task Code B165)
        Fees: $ 16,054.50          Total Hours: 17.30

42.     During the Application Period, Paul Hastings assisted Kroma in preparing its

interim fee application.  Paul Hastings also reviewed the fee statements of Zolfo Cooper, as well

as the fees of certain professionals retained by the Oversight Board and AAFAF.

(g)     Fee/Employment Objections (Task Code B170)
        Fees: $ 23,206.50          Total Hours: 20.80

43.     During the application period, Paul Hastings analyzed the Fee Examiner's motion

proposing presumptive standards in connection with fee increases, drafted a response thereto,

and engaged in internal and external discussions (including with counsel to the Fee Examiner)

regarding the Fee Examiner's proposed presumptive standards.

(h)     Avoidance Action Analysis (Task Code B180)
        Fees:   $56,379.00          Total Hours: 59.70

44.     During the Application Period, and in view of the Committee's fiduciary

obligation to review the Debtors' prepetition conduct (and the fact that the Oversight Board's

investigator, Kobre & Kim, had not begun an investigation of avoidance actions), Paul Hastings

conducted legal research and analysis with respect to the Debtors' potential avoidance actions

against third parties.  Among other tasks, Paul Hastings analyzed statutes of limitations, case law

in other municipal bankruptcies, and proofs of claim filed against the Debtors.   In an effort to

minimize duplication, Paul Hastings performed this work in cooperation with counsel to the

Oversight Board and counsel to the Special Claims Committee of the Oversight Board.

(i)     Non-Working Travel (Task Code B195) (billed at ½ rate)
        Fees:   $15,917.25          Total Hours: 23.10

45.     During the Application Period, one Paul Hastings professional traveled to and

from San Juan, Puerto Rico, to attend each of the omnibus hearings held on November 7, 2018

and December 19, 2018.  In addition, one Paul Hastings professional traveled to Washington,

D.C. to attend a meeting held on October 31, 2018 between the Committee and members of the

Oversight Board.  Further, one Paul Hastings professional traveled to New York to attend a

meeting held on January 8, 2019 with counsel to the Oversight Board and AAFAF regarding

avoidance actions.  In accordance with Local Rule 2016-2(d)(viii), Paul Hastings billed for one-

half the total time that Paul Hastings professionals spent on non-working travel.

(k)     Meetings of and Communications with Debtors/Oversight Board (Task Code
        B260)
        Fees: $70,569.00          Total Hours: 60.00

49.     During the Application Period, in furtherance of the Committee's goal of working

cooperatively with the Debtors, Paul Hastings communicated with representatives of the

Oversight Board and AAFAF with respect to matters of interest to the Committee, including by

holding an in-person meeting between the Committee and members of the Oversight Board, as

well as holding certain follow-up "working group" telephonic meetings between Committee and

Oversight Board advisors.

(l)     Claims Administration and Objections (Task Code B310)
        Fees:   $290,230.50          Total Hours: 348.10

50.     During the Application Period, Paul Hastings, with the assistance of Zolfo Cooper

and Prime Clerk, continued to analyze filed claims in order to better understand the size and

nature of the claims pool.  In addition, Paul Hastings continued to develop the framework for an

alternative dispute resolution ("ADR") process and to communicate with counsel to the

Oversight Board in an effort to advance the implementation of the ADR process.  Further, Paul

Hastings analyzed a number of complex issues related to the treatment of claims, including,

among others, the application of the U.S. Government's full faith and credit to Puerto Rico debt

as well as the treatment of claims (which have been alleged by various creditor groups) based on

violations of the United States Constitution.  This analysis required extensive research of case

law and review of bond documentation and related materials.  Paul Hastings also reviewed the

omnibus claims objection procedures (with respect to non-substantive claims objections)

proposed by the Oversight Board and the related forms of notice.  As part of this process, Paul

Hastings prepared a draft objection, although, as a result of discussions with counsel to the

Oversight Board, the Committee's concerns were ultimately resolved without the need to file an

objection.

      (m)    <u>Plan and Disclosure Statement (including Business Plan) (Task Code B320)</u>
                Fees: $14,830.50               Total Hours: 15.30

      51.    The Committee researched and analyzed issues relating to the potential

classification and impairment of claims under a plan of adjustment and the requirements for

confirmation in a municipal bankruptcy case.

**II.**    **COFINA Dispute Analysis (Matter ID 00003)**

      52.    As the Court is aware, pursuant to the *Stipulation and Order Approving*

*Procedure to Resolve Commonwealth-COFINA Dispute*, dated August 10, 2017 [Docket No.

996] (the "Commonwealth-COFINA Stipulation"), the Committee was appointed as the

Commonwealth representative to litigate and/or settle the Commonwealth-COFINA Dispute (as

defined in the Commonwealth-COFINA Stipulation) on behalf of the Commonwealth (the

"Commonwealth Agent").[18]

53.     During the Application Period, the Commonwealth Agent's work in regard to the

resolution of the Commonwealth-COFINA Dispute was recorded under Matter ID 00010

(Mediation) (with the exception of attendance at court hearings).  Accordingly, a detailed

discussion of the Commonwealth Agent's work in this regard is provided below in connection

with the description of Matter ID 00010 (Mediation).

> (k)     Court Hearings (Task Code B155)
>         Fees:   $52,966.50            Total Hours: 44.40

54.     During the Application Period, Paul Hastings attended the COFINA disclosure

statement hearing in New York on November 20, 2018 as well as the January 16-17, 2019

hearings, held in San Juan, Puerto Rico, in connection with the approval of the Commonwealth-

COFINA settlement agreement and the confirmation of the COFINA plan of adjustment.  In

preparation for these hearings, Paul Hastings also reviewed relevant issues raised in the parties'

pleadings, prepared materials for the hearings, and filed the requisite informative motions to be

heard.

> (k)     Non-Working Travel (Task Code B195) (billed at ½ rate)
>         Fees:   $4,575.00            Total Hours: 6.10

55.     During the Application Period, one Paul Hastings professional traveled to and

from San Juan, Puerto Rico, to attend the January 16-17, 2019 hearings held in connection with

---

[18]    The Commonwealth-COFINA Dispute concerns the question "[w]hether, after considering all procedural and
substantive defenses and counterclaims, including constitutional issues, the sales and use taxes [the ("SUT")]
purportedly pledged by COFINA to secure debt . . . are property of the Commonwealth or COFINA under
applicable law."

the approval of the Commonwealth-COFINA settlement agreement and the confirmation of the COFINA plan of adjustment.[19]

### III. Communications with Creditors (other than Committee Members) / Website (Matter ID 00004)

(a) General Creditor Inquiries (Task Code B112)
Fees: $5,297.50          Total Hours: 5.90

56.     During the Application Period, Paul Hastings received inquiries from various creditors either telephonically or through email.  Paul Hastings analyzed the inquiries internally and responded in an appropriate manner.

(b) Meetings of and Communications with Creditors (Task Code B150)
Fees: $85,746.50          Total Hours: 99.20

57.     During the Application Period, Paul Hastings prepared and regularly updated, with the assistance of Prime Clerk and Kroma, the Committee's websites regarding the Title III Cases, including updates on hearings, recent Court orders, and other developments in the Title III Cases.  In this regard, Paul Hastings also prepared and regularly updated the Spanish-language sections of the websites.  In addition, Paul Hastings continued to work with Kroma to develop a strategy to communicate directly with unsecured creditors by email, which included using data from proofs of claim to develop an unsecured creditor email list of over 50,000 email addresses.

58.     Beginning in November 2018, Paul Hastings then worked with Kroma to draft and distribute regular informational emails to unsecured creditors.  These emails contained background information about the Committee, case information and updates, and links to the Committee's website.  Paul Hastings drafted these communications to update creditors

---

[19]    Travel to San Juan for this hearing was recorded under Matter ID 00003 (COFINA Dispute Analysis), while the return travel was recorded under Matter ID 00012 (Creditors' Committee Meetings).  This is because the Committee held an in-person meeting in San Juan on January 18, 2019 (the day after the COFINA confirmation hearing ended).

regarding, among other things, the implementation of omnibus claims objection procedures, the

Committee's motion for Bankruptcy Rule 2004 discovery with respect to potential avoidance

actions, the Committee's and Oversight Board's omnibus objection challenging certain GO bond

claims and the adversary proceeding seeking recharacterization of "leases" with the PBA.  This

email communication effort has largely been successful, with open-rates exceeding 30% for each

update email distributed thus far.

### IV.    PREPA (Matter ID 00006)

    (a)    <u>Case Administration (Task Code B110)</u>
        Fees:   $10,521.50        Total Hours: 30.50

59.    During the Application Period, Paul Hastings continued to review and analyze

materials related to the PREPA Title III Case, including document production received from

PREPA.

    (c)    <u>Relief from Stay/Adequate Protection Proceedings (Task Code B140)</u>
        Fees:   $33,767.50        Total Hours: 31.70

60.    During the Application Period, Paul Hastings analyzed the motion filed by

PREPA's bond insurers requesting relief from the automatic stay to seek appointment of a

receiver at PREPA.  Paul Hastings participated in discussions concerning the briefing schedule in

connection with the motion and negotiated a stipulation with the Oversight Board and bond

insurers to allow the Committee to participate in briefing and discovery, subject to certain

limitations.  In addition, Paul Hastings reviewed and analyzed other motions for relief from stay

filed against PREPA in order to gauge their potential effect on the Title III Cases.  Paul Hastings

communicated with counsel to PREPA regarding such motions to ensure the appropriate

response was being taken.

(k)     Meetings of Communications with Creditors (Task Code B150)
         Fees:   $10,530.00          Total Hours: 9.20

61.     During the Application Period, Paul Hastings prepared reports and summaries to

keep the Committee apprised of relevant developments in the PREPA Title III Case.

(k)     Debtors' Financial Information and Operations/Fiscal Plan (Task Code B210)
         Fees:   $9,073.50           Total Hours: 7.80

62.     During the Application period, Paul Hastings analyzed documents related to

PREPA's finances and business and operations and discussed these with Zolfo Cooper, the

Committee's financial advisor.

(e)     Meetings of and Communications with Debtors/Oversight Board  (Task Code
         B260)
         Fees:   $23,764.00          Total Hours: 20.00

63.     During the Application Period, Paul Hastings participated in regular PREPA

update calls and communicated with PREPA and the Oversight Board's professionals to request

documents and other information pertaining to, among other things, PREPA's integrated

resources plan process, insurance policies, contemplated restructuring and related negotiations,

and other financial information pertaining to PREPA, including issues related to PREPA's

proposed restructuring pursuant to its restructuring support agreement with certain creditors.

(f)     Claims Administration and Objections  (Task Code B310)
         Fees:   $24,793.50          Total Hours: 24.50

64.     During the Application Period, Paul Hastings continued to research and analyze

various issues related to the PREPA bond claims, including with respect to the impact of a

potential breach of PREPA's bond covenants on such claims.

(k)     Plan and Disclosure Statement (including Business Plan) (Task Code B320)
         Fees:   $102,308.50         Total Hours: 89.10

65.     During the Application Period, Paul Hastings analyzed PREPA plan and

restructuring issues, including in connection with restructuring negotiations that had previously

been held between the Oversight Board, AAFAF, and certain PREPA bondholders.  Paul

Hastings reviewed extensive documentation from these negotiations in order to understand in

more detail the progress of restructuring discussions (in which the Committee was not included)

and the open deal points.

## V.  HTA (Matter ID 00007)

(k)  <u>Court Hearings (Task Code B155)</u>
Fees:  $63,260.00          Total Hours: 54.20

66.     During the Application Period, Paul Hastings attended and participated in two

hearings with respect to the appeals of this Court's dismissal of the so-called "clawback"

litigation.  Specifically, Paul Hastings attended and participated in (a) the November 5, 2018 oral

argument before the United States Court of Appeals for the First Circuit in the appeal styled

*Assured Guaranty Corp., et al. v. Oversight Board, et al.*, Nos. 18-1165 & 18-1166 (the

"<u>Assured Appeal</u>"), and (b) the January 15, 2019 oral argument before the United States Court of

Appeals for the First Circuit in the appeal styled *Ambac Assurance Corp.., et al. v. Oversight

Board*, et al., No. 18-1214 (the "<u>Ambac Appeal</u>").  Paul Hastings undertook significant

preparation before each oral argument.

(c)  <u>General Litigation (Task Code B191)</u>
Fees:  $38,085.00          Total Hours: 38.90

67.      During the Application Period, Paul Hastings conducted research and analysis in

connection with the Assured Appeal and Ambac Appeal.  This included analysis of proofs of

claim, review of UCC statements, and research regarding statutory liens and clawback issues.

## VI.  ERS (Matter ID 00008)

(k)  <u>General Litigation (Task Code B191)</u>
Fees:  $16,112.00          Total Hours: 12.40

68.     During the Application Period, Paul Hastings monitored the appeal styled *Altair

Global Credit Opportunities Fund.*, *et al. v. Oversight Board, et al.*, No. 18-1836 (the "ERS

Bondholder Appeal"), *i.e.*, the appeal from this Court's dismissal of ERS's adversary proceeding seeking to avoid the security interests of ERS bondholders.  Paul Hastings also analyzed the decision issued by the First Circuit in this regard.

(k)     Employee Benefits/Pensions (Task Code B220)
        Fees:   $50,272.00          Total Hours: 47.90

69.     During the Application Period, Paul Hastings analyzed the magnitude and nature of retiree benefit claims held by active employees of the Commonwealth.  Among other things, Paul Hastings analyzed the key statutes establishing the Puerto Rico public pension systems and met with labor unions representing Commonwealth employees to discuss pension issues.

(k)     Claims Administration and Objections (Task Code B310)
        Fees:   $23,239.50          Total Hours: 20.30

70.     During the Application Period, Paul Hastings analyzed potential challenge to the claims held by ERS bondholders in the aftermath of the First Circuit's decision in the ERS Bondholder Appeal.

## VII.   Other Adversary Proceedings (Matter ID 00009)[20]

(b)     Pleadings Review (Task Code B113)
        Fees:   $13,519.00          Total Hours: 18.20

71.     During the Application Period, Paul Hastings reviewed the pleadings filed and orders entered in various adversary proceedings related to the Title III Cases generally as well as relevant non-Title III litigation and appeals.  In order to track deadlines, organize documents, and notify the Committee of upcoming matters, Paul Hastings reviewed these dockets to maintain its litigation tracking charts.  In addition, Paul Hastings prepared summaries for the Committee of the various key pleadings filed.

---

[20]   To the extent practicable, Paul Hastings tracked work in respect of PREPA-related adversary proceedings under Matter ID 00006, HTA-related adversary proceedings under Matter ID 00007, and ERS-related adversary proceedings under Matter ID 00008.

(c)     General Litigation (Task Code B191)
        Fees:   $17,435.50          Total Hours: 16.30

72.     During the Application Period, Paul Hastings monitored the progress of a number

of adversary proceedings and related matters, advising the Committee as appropriate.  These

proceedings included, among others, *Rosselló Nevares., et al. v. Financial Oversight and

Management Board for Puerto Rico, et al.* [Adv. Proc. No. 18-080 (LTS)] (currently on appeal

before the United States Court of Appeals for the First Circuit), which involves Governor

Rosselló's challenge to the Oversight Board's authority with respect to the Debtors' fiscal plans

and budgets, *Cooperativa de Ahoro y Credito Abraham Rosa, et al., v. The Commonwealth of

Puerto Rico, et al.* [Adv. Proc. No. 18-028 (LTS)], in which certain credit unions alleged that

their claims against the Commonwealth are non-dischargeable, and *American Federation of

Teachers, AFL-CIO and American Federation of State, County & Municipal Employees, AFL-

CIO, v. The Commonwealth of Puerto Rico, et al.* [Adv. Proc. No. 18-134 (LTS)], in which labor

organizations seek to protect the pension rights of represented public employees in connection

with the establishment of individual defined contribution pension accounts.

## VIII.   Mediation (Matter ID 00010)

73.     Pursuant to the Commonwealth-COFINA Stipulation, the Committee was

appointed as the Commonwealth Agent to litigate and/or settle the Commonwealth-COFINA

Dispute on behalf of the Commonwealth.  The Commonwealth-COFINA Dispute concerns the

ownership of billions of dollars in sales and use tax revenues.  On September 8, 2017, the

Commonwealth Agent commenced an adversary proceeding styled as *Official Committee of

Unsecured Creditors v. Whyte*, Adv. Proc. No. 17-257 (the "Commonwealth-COFINA Action").

74.     Concurrently with the prosecution of the Commonwealth-COFINA Dispute, Paul

Hastings also advised the Commonwealth Agent in the mediation related to the Commonwealth-

COFINA Dispute.  As a result of these efforts, on June 5, 2018, the Commonwealth Agent and the COFINA Agent reached an agreement in principle (the "Agreement in Principle") that contemplated a settlement of the Commonwealth-COFINA Dispute.[21]

75.     Following the certification of a revised fiscal plan for the Commonwealth on June 29, 2018, the Commonwealth Agent informed the Court and parties in interest that, while it continued to support the settlement reached with the COFINA Agent, it had concerns that the certification of the June 29 fiscal plan presented a material impediment to the execution or consummation of a settlement because the June 29 fiscal plan materially revised certain of the underlying assumptions that formed the basis of the Commonwealth fiscal plan certified on May 30, 2018 (which was in effect when the Agents entered into the Agreement in Principle on June 5 and on which the Commonwealth Agent relied when entering into the Agreement in Principle).

76.     Thereafter, in August 2018, the Oversight Board, the Commonwealth, COFINA, AAFAF, and certain parties to the Commonwealth-COFINA Dispute (but not the Commonwealth Agent) executed a plan support agreement (as amended, the "COFINA Plan Support Agreement"), which reflected the percentage allocation of certain sales and use taxes as the Agreement in Principle and set forth, among other things, the terms of the securities to be issued pursuant to a plan of adjustment for COFINA (as amended, the "COFINA Plan").

77.     On October 19, 2018, the Oversight Board filed (a) a motion (the "9019 Motion") seeking approval of that certain Settlement Agreement, dated October 19, 2018, between the Oversight Board and the COFINA Agent (the "Settlement Agreement"), compromising and settling the Commonwealth-COFINA Dispute and (b) the COFINA Plan and related proposed disclosure statement (as amended, the "COFINA Disclosure Statement").

---

[21]   The Agreement in Principle was subject to various conditions precedent and subsequent.

78.     The Commonwealth Agent continued to raise concerns regarding the feasibility of the Settlement Agreement as well as the Oversight Board's ability to settle the Commonwealth-COFINA Dispute over the objection of the Commonwealth Agent.  However, after the certification of a further revised Commonwealth fiscal plan on October 23, 2018, which plan reflected a material improvement in the 40-year cash flow projections contained in the June 29 fiscal plan, the Commonwealth Agent and the Oversight Board were able to reach a consensual resolution.  Ultimately, on February 4, 2019, the Court entered orders approving the Settlement Agreement and confirming the COFINA Plan.  The effective date of the COFINA Plan occurred on February 12, 2019.

79.     The Committee's role in the mediation process during the Application Period was primarily focused on the efforts to settle the Commonwealth-COFINA Dispute (as expanded by the Court's December 21, 2017 order setting forth the scope of the Commonwealth-COFINA action), with respect to which the Committee is acting as the Commonwealth Agent.  In addition, the Committee also dealt with issues related to the Commonwealth plan mediation.[22]

(a)     Case Administration (Task Code B110)
        Fees:   $3,291.00              Total Hours: 8.50

80.     During the Application Period, Paul Hastings handled various administrative matters regarding the Committee's involvement in the mediation process related to the Title III Cases.

---

[22]   Due to mediation confidentiality restrictions, Paul Hastings cannot publicly disclose the substance of the issues addressed in mediation.  Moreover, at the request of the mediation team, Paul Hastings has redacted all references to specific mediation issues in its monthly fee statements attached to this Application.  Paul Hastings will submit unredacted versions of such statements for the Court's review, if the Court so requests.  The Fee Examiner and the Notice Parties have all received unredacted versions of such statements.

    (b)    <u>General Litigation (Task Code B191)</u>
          Fees:   $479,220.50       Total Hours: 469.40

81.     During the Application Period, Paul Hastings continued to advise the

Commonwealth Agent on all substantive issues raised in connection with the settlement process

with respect to the Commonwealth-COFINA Dispute.

82.     After the Oversight Board filed its 9019 Motion seeking approval of the

Settlement Agreement, the Commonwealth Agent continued to raise concerns regarding the

feasibility of the Settlement Agreement as well as the Oversight Board's ability to settle the

Commonwealth-COFINA Dispute over the objection of the Commonwealth Agent.

Accordingly, in October 2018, Paul Hastings drafted a motion to enforce the Commonwealth-

COFINA Stipulation (the "<u>Motion to Enforce</u>"), challenging the Oversight Board's authority to

seek approval of the Settlement Agreement under the Commonwealth-COFINA Stipulation.

Concurrently with preparing this motion, Paul Hastings also requested that the Court set a

deadline to file the Motion to Enforce and set the hearing on such motion for November 20,

2018.  The Court granted the scheduling motion on October 18, 2018.

83.     After the Oversight Board certified a further revised Commonwealth fiscal plan

on October 23, 2018, the Commonwealth Agent and the Oversight Board engaged in further

discussions to resolve the Commonwealth Agent's remaining concerns regarding the feasibility

of the Settlement Agreement and the COFINA Plan as well as the Oversight Board's authority to

seek approval of the Settlement Agreement.  As a result of these discussions, the parties entered

into a stipulation on November 5, 2018, which stipulation was so-ordered by the Court on

November 9, 2018 (the "<u>November 9 Stipulation</u>").  Under the November 9 Stipulation, the

Commonwealth Agent agreed, among other things, not to object to the approval of the 9019

Motion, approval of the COFINA Disclosure Statement, or confirmation of the COFINA Plan,

except in the event that, on or prior to December 31, 2018, the Oversight Board either (a)

certifies a further revised fiscal plan for the Commonwealth which provides for a material

reduction of the 40-year cash flow projections from those contained in the October fiscal plan or

(b) amends, modifies or supplements the Settlement Agreement or the COFINA Plan, which

amendment, modification or supplement provides a material negative economic impact to the

rights and interests of the Commonwealth.  In light of the November 9 Stipulation, the

Commonwealth Agent did not file its Motion to Enforce.

84.     Following the November 9 Stipulation, and given the interrelatedness of the

Settlement Agreement with the COFINA Plan, Paul Hastings continued to closely monitor all

proceedings with respect to the COFINA restructuring, including, among other things, revisions

to the COFINA Plan and the COFINA Disclosure Statement, objections and other pleadings filed

in response to the 9019 Motion and the COFINA Plan, the new COFINA bond documentation

(filed as part of the plan supplement), and the new legislation implementing the COFINA

restructuring.  Paul Hastings also communicated with counsel for the Oversight Board and

AAFAF regarding certain comments to the COFINA Plan, the COFINA Disclosure Statement,

and the related transaction documents.

85.     As noted above, on January 16 and 17, 2019, the Court held hearings on the

approval of the Settlement Agreement and confirmation of the COFINA Plan, and, on February

4, 2019, the Court entered orders approving the Settlement Agreement and confirming the

COFINA Plan.  The effective date of the COFINA Plan occurred on February 12, 2019.

(k)     Plan and Disclosure Statement (including Business Plan) (Task Code B320)
        Fees:   $135,311.00        Total Hours: 136.70

86.     During the Application Period, Paul Hastings researched and analyzed a variety of issues related to the confirmation of a Commonwealth plan of adjustment.  Paul Hastings discussed these issues in a mediation statement that was submitted to the mediation team.

## IX.     GO Bond Debt Issues (Matter ID 00011)

87.     During the Application Period, Paul Hastings prepared the GO Objection (which, as noted, seeks the disallowance of the Invalid GO Bonds) and a related procedures motion. Among other things, the GO Objection argues that the Invalid GO Bonds were issued in violation of the limit on debt service contained in the Commonwealth Constitution when properly calculated to include debt service on bonds issued by the PBA,[23] which bonds are just as much direct obligations of the Commonwealth as any GO bond issued by the Commonwealth itself.  In addition, in the Committee's view, the Invalid GO Bonds were issued in violation of the Commonwealth Constitution's balanced budget clause, which prohibits deficit financing. Among other arguments, the GO Objection further asserts that the Invalid GO Bonds should be disallowed in their entirety and cannot be validated under section 8-202 of the Uniform Commercial Code (which provides for the validation of securities under specified conditions as a defense to an issuer's assertion of invalidity).

(a)     Court Hearings  (Task Code B155)
        Fees:   $9,952.50        Total Hours: 8.20

88.     Paul Hastings attended the January 30, 2019 omnibus hearing in New York, at which hearing Paul Hastings handled the Committee's and Oversight Board's motion to establish procedures in connection with the GO Objection.  In preparation for this hearing, Paul Hastings

---

[23]     Services rendered in connection with the PBA generally and the adversary proceeding filed by the Committee and Oversight Board against PBA [Adv. Proc. No. 18-149 (LTS)] were tracked under Matter ID 00017 (PBA), discussed in more detail below.

reviewed relevant issues raised in the parties' pleadings, prepared materials for the hearings, and

filed the requisite informative motions to be heard.

      (b)    <u>Claims Administration and Objections  (Task Code B310)</u>
             Fees:   $1,401,432.00        Total Hours: 1,396.50

      89.      To prepare the GO Objection, Paul Hastings performed extensive work in

multiple and varied work streams.  For one, Paul Hastings drafted the GO Objection (a 50-page

document more akin to the complaint in a complex adversary proceeding than a typical omnibus

claims objection in a bankruptcy case) and conducted extensive research and analysis to develop

the legal theories that form the basis of the GO Objection.  As part of these efforts, Paul Hastings

(a) analyzed issuances of GO bonds in order to determine which bonds should be subject to

objection, (b) reviewed relevant GO and PBA bond documents, PBA "leases," and related

documents, as well as certain of the proofs of claim filed by GO bondholders, (c) analyzed the

history of the Commonwealth Constitution and relevant doctrines of Puerto Rico constitutional

law,  (d) researched the law with respect to public building authority financing structures used to

evade debt service limits, (e) evaluated the potential remedies in connection with the issuance of

illegal bonds (including under the doctrines of *actos propios*, unjust enrichment, and

ratification), and (f) analyzed the applicability of section 8-202 of the Uniform Commercial

Code.

      90.      Paul Hastings also conducted research and analysis to determine the appropriate

procedures to prosecute the GO Objection.  Anticipating concerns that could arise regarding a

claim objection against such a large number of bondholders, Paul Hastings drafted a motion

[Docket No. 4788] proposing procedures for the GO Objection designed to ensure that holders of

Invalid GO Bonds would be given notice and an opportunity to be heard and to participate in the

litigation of the GO Objection.  Subsequently, after filing the procedures motion and reviewing

the objections thereto, Paul Hastings prepared a reply brief [Docket No. 4942] in support of the

procedures motion and worked to modify the proposed procedures to address (as appropriate)

GO bondholders' concerns.  The Court held a hearing on the procedures motion on January 30,

2019, during which it expressed its approval of the procedural framework in general and advised

that the Court would issue a ruling with suggested revisions.  After discussions among the parties

and submission of a revised proposed procedures order (which incorporated the Court's

requested revisions), the Court granted the procedures motion on February 15, 2019.

91.     In addition to preparing the GO Objection and related pleadings, Paul Hastings

also was involved in extensive discussions with Brown Rudnick, counsel to the Special Claims

Committee of the Oversight Board, regarding the joint filing of the GO Objection by both the

Committee and the Oversight Board.  These discussions were important given Brown Rudnick's

relatively recent appointment as counsel to the Special Claims Committee at the end of

November 2018.  In working with Brown Rudnick, Paul Hastings maintained a leading role in

the process, while incorporating Brown Rudnick's comments and edits as appropriate, thereby

avoiding unnecessary duplication of efforts that might have otherwise occurred.

## X.      Creditors Committee Meetings (Matter ID 00012)

(a)     Meetings of and Communications with Creditors (Task Code B150)
        Fees:   $225,733.00          Total Hours: 206.30

92.     During the Application Period, Paul Hastings continued to hold regular telephonic

conferences with the Committee to provide the Committee with updates on the progress of the

Title III Cases and the related mediation process as well as to discuss case strategy and next

steps.  In preparation for these telephonic conferences, Paul Hastings (a) reviewed relevant

pleadings filed in the Title III Cases and related adversary proceeding, (b) prepared presentations

for these meetings, and (c) prepared proposed agenda letters for the Committee's consideration.

93.     Furthermore, and in addition to regular telephonic conferences, the Committee
also held in-person Committee meetings in San Juan, Puerto Rico, on October 15, 2018, and
January 18, 2019, during which meeting Paul Hastings gave comprehensive presentations
regarding a range of legal issues in the Title III Cases.  Only two Paul Hastings attorneys
attended the in-person meetings.  Paul Hastings prepared detailed PowerPoint presentations of
critical and/or strategic issues for the Committee to review in connection with Committee
meetings.  Finally, Paul Hastings also prepared minutes of the Committee meetings.

(b)     Non-Working Travel  (Task Code B195) (billed at ½ rate)
        Fees:   $21,530.25             Total Hours: 40.40

94.     During the Application Period, two Paul Hastings professionals traveled to and
from San Juan, Puerto Rico, for the October 15, 2018 and January 18, 2019 in-person Committee
meetings.[24]  In accordance with Local Rule 2016-2(d)(viii), Paul Hastings billed for one-half the
total time that Paul Hastings professionals spent on non-working travel.

## XI.     Rule 2004 Investigations (Matter ID 00013)

(a)     Case Administration (Task Code B110)
        Fees:   $17,749.50             Total Hours: 45.30

95.     During the Application Period, Paul Hastings processed the discovery received
from GDB, counsel to the Oversight Board, counsel to AAFAF, and other parties.

(b)     Avoidance Action Analysis (Task Code B180)
        Fees:   $72,518.50             Total Hours: 80.80

96.     During the Application Period, and in view of the Committee's fiduciary
obligation to review the Debtors' prepetition conduct (and the fact that the Oversight Board's

---

[24]   One of the Paul Hastings attorneys recorded his departure travel time to Puerto Rico for the January 18, 2019
       meeting under Matter ID 00003 (COFINA Dispute Analysis) and billed his return travel time under Matter ID
       00012 (Creditors' Committee Meetings), given that the COFINA confirmation hearing was held over the two
       days (January 16 and 17) immediately prior to the Committee meeting.  The other Paul Hastings attorney billed
       both his departure and return travel time under Matter ID 00012 (Creditors' Committee Meetings).

investigator, Kobre & Kim, had not begun an investigation of avoidance actions) Paul Hastings prepared the Committee's motion pursuant to Bankruptcy Rule 2004 [Docket No. 4373] seeking to take discovery of the Title III Debtors (except COFINA) to investigate whether they may have viable claims for avoidance actions against third parties.  The Committee believed it was critical to move this investigation forward given the potential expiration of certain claims in May 2019.  Specifically, the Committee sought disclosure with respect to prepetition transfers of property valued at $3 million or more in the two years immediately preceding the dates on which the Debtors commenced the Title III cases.  In addition to drafting the Rule 2004 motion, Paul Hastings negotiated with AAFAF and the Oversight Board to ensure that the Rule 2004 motion could proceed without objection and drafted joint status reports to update the Court with respect to the progress of discovery.  After the entry of the order granting the Rule 2004 motion [Docket No. 4484], Paul Hastings (with the assistance of the Committee's other advisors) proceeded to analyze the documents produced to the Committee by AAFAF.

       (c)     <u>Investigations (Task Code B261)</u>
               Fees:   $83,889.50         Total Hours: 96.50

       97.     During the Application Period, Paul Hastings handled the Committee's efforts to obtain documentation pursuant to the "exit plan" procedures for resolving confidentiality disputes in connection with the Final Report filed by Kobre & Kim.  Paul Hastings engaged in discussions with AAFAF/GDB, the Oversight Board, and other parties regarding privilege and related discovery issues, reviewed documents, and conducted legal research and analysis with respect to discovery issues.  Paul Hastings also drafted a motion to compel production from GDB given certain issues that arose in connection with document production from GDB, although the Committee ultimately determined, after further discussions with GDB, that such a motion was not necessary.

### XII.   Constitutional Issues (Matter ID 00014)

   (a)   General Litigation (Task Code B191)
         Fees:   $18,905.00          Total Hours: 20.30

   98.   During the Application Period, Paul Hastings continued to represent the

Committee in the appeals before the First Circuit related to the Appointments Clause challenges.

As part of its efforts, Paul Hastings prepared a short response to address certain legal points that

were not raised in the Oversight Board's and the Retiree Committees' briefs.  In addition, Paul

Hastings conferred with counsel to the Oversight Board and the Retiree Committee with respect

to oral argument and prepared for and attended a moot court hosted by counsel to the Oversight

Board.  To avoid unnecessary duplication of efforts, Paul Hastings did not participate in oral

argument before the First Circuit, but instead analyzed the audio recording of the oral argument

afterwards.

### XIII.   Bankruptcy Rule 2004 (Whitefish) (Matter ID 00015)

   (a)   General Litigation (Task Code B191)
         Fees:  $57,839.00          Total Hours: 69.60

   88.   During the Application Period, Paul Hastings engaged in continued discovery

concerning PREPA's engagement of Whitefish in the aftermath of Hurricanes Irma and Maria.

In this regard, Paul Hastings, continued its review of documents, prepared for witness interviews,

and discussed discovery issues with counsel for PREPA and Whitefish.  Paul Hastings also

conducted interviews with witnesses regarding the Whitefish engagement.

### XIV.   PREPA Privatization (Matter ID 00016)

   (a)   Asset Disposition  (Task Code B130)
         Fees:  $7,500.00          Total Hours: 6.00

   99.   During the Application Period, Paul Hastings continued to review documents in

connection with PREPA's transformation process and certain related privatization transactions,

as well as communicated with counsel to PREPA and Zolfo Cooper regarding these matters.

### XV.   PBA (Matter ID 00017)

(b)   General Litigation  (Task Code B191)
Fees:   $234,978.50          Total Hours: 221.40

100.     During the Application Period, Paul Hastings performed extensive work with respect to the PBA Adversary Proceeding challenging PBA "leases" as disguised financing arrangements.  In particular, in the PBA Adversary Proceeding, the Committee and the Oversight Board seek a declaration that the payments due under the PBA "leases" are not "rent" payments and, therefore, that more than $600 million in "rent" that has accrued under the "leases" is not entitled to payment in full under PROMESA and the Bankruptcy Code, but rather only gives rise to an unsecured claim by the PBA against the Commonwealth.

101.     As part of its efforts, Paul Hastings made substantial revisions to, and finalized, the complaint and conducted additional research in connection with PBA's "leases" and bond-related documentation.  In addition to these tasks, Paul Hastings engaged in extensive discussions with counsel to the Oversight Board in order to facilitate the participation of the Oversight Board as a co-plaintiff in the adversary proceeding.  After the complaint was filed, Paul Hastings proceeded to engage in discussions with interested parties with respect to intervention issues, as well as to prepare the plaintiffs' limited objection to the motions to intervene filed by certain bondholder groups, which objection was filed on February 11, 2019.[25]

102.     It should be further noted that, while the Committee and Oversight Board are co-plaintiffs in connection with the PBA Adversary Proceeding, Paul Hastings took a leading role in formulating the legal arguments and the drafting of documents, thereby allowing the Committee and Oversight Board to work together without unnecessary duplication of efforts.

---

[25]   *See* Docket No. 43 [Adv. Proc. No. 18-149 (LTS)].

-38-

## XVI.   GDB (Matter ID 00018)

103.   During the Application Period, Paul Hastings continued to perform extensive work with respect to the GDB restructuring which would culminate in the approval of a proposed restructuring (or "Qualifying Modification") of GDB under Title VI of PROMESA.

104.   As discussed in Paul Hasting's prior interim fee application, the Committee had serious concerns with respect to the GDB restructuring.  Among other things, the Government Development Bank of Puerto Rico Debt Restructuring Act (the "GDB Restructuring Act") purported to transfer GDB's valuable assets away from the Title III Debtors to a newly formed entity, *i.e.*, the Public Entity Trust, for the benefit of certain consenting GDB creditors. Moreover, the Committee was concerned that the GDB restructuring would result in the Title III Debtors losing valuable claims they might hold against GDB and current and former officers and directors of GDB before there was an adequate investigation with respect to such claims.  For these (and other) reasons, the Committee filed a notice of its intent to object to GDB's Title VI Qualifying Modification[26] and subsequently filed a number of other pleadings challenging the GDB restructuring in the Title III Cases and in GDB's Title VI case.[27]

105.   On September 17, 2018, GDB and AAFAF informed the Court that, among other things, the releases to be given by the Title III Debtors and any other government entities under the Restructuring Act would **not include former** officers, directors, employees, agents, or representatives.  Furthermore, on October 5, 2018, after additional negotiations between the parties, the Committee, GDB, AAFAF and the Oversight Board filed a stipulation that resolved

---

[26]   *See* Docket No. 59 in Case No. 18-1561 (LTS).

[27]   *See* Docket Nos. 3797, 3869, 3881, and 3992 in Case No. 17-BK-3283 (LTS); Docket Nos. 1 and 15 in Adv. Proc. No. 18-101 (LTS); Docket Nos. 131 and 136 in Case No. 18-1561 (LTS).

the Committee's remaining concerns with the GDB restructuring.[28]  The stipulation (the "GDB

Stipulation"), which was so-ordered by the Court on October 9, 2018, provides a number of new

and substantial benefits for the Title III Debtors (and, through them, their creditors), in exchange

for the Committee withdrawing its objections to the GDB restructuring.  Among other things:

- GDB agreed to transfer $20 million in cash, plus a potential additional amount of up to $10 million in cash, to the Public Entity Trust for distribution, on a first priority basis, to certain Title III Debtors;

- To the extent that GDB has a property interest in legal claims that GDB may assert or be party to in its capacity as fiscal agent or financial advisor, or such other representative capacity to a Title III Debtor or other non-GDB government entity, GDB agreed to transfer such claims to the applicable Title III Debtor or other non-GDB government entity;

- GDB agreed that its net claim against the Commonwealth would be reduced by the amount of federal funds on deposit at GDB (restored by the Commonwealth) of approximately $312 million, with GDB's claim against the Commonwealth capped at $578 million.  The Title III Debtors reserved the right to challenge GDB's claim; and

- GDB agreed to release a claim of over $324 million against PREPA on account of funds PREPA allegedly withdrew from GDB while GDB was insolvent.

On November 7, 2018, the Court approved the Qualifying Modification.

106.    In sum, Paul Hastings' efforts (a) resulted in a GDB restructuring that was much

improved with respect to its treatment of the Title III Debtors and their creditors and (b) helped

preserve the Commonwealth's potential claims against GDB's former officers and directors.

(a)    Case Administration (Task Code B110)
        Fees:   $7,826.00          Total Hours: 11.30

107.    During the Application Period, Paul Hastings continued to handle various case

administrative matters, including filing and serving pleadings to be filed in the Title III cases and

GDB's Title VI case related to the GDB Restructuring.

---

[28]    *See* Docket No. 185 in Case No. 18-1561 (LTS).

    (b)    <u>Relief from Stay/Adequate Protection Proceedings (Task Code B140)</u>
           Fees:   $19,538.00       Total Hours: 20.90

108.    As discussed in Paul Hastings' previous interim fee application, prior to the

Application Period, Paul Hastings prepared the Committee's motion to enforce the automatic

stay with respect to the Title III Debtors against GDB.  This motion was denied by the Court, but

was nevertheless an important part of the Committee's comprehensive challenge of the GDB

restructuring.  During the Application Period, Paul Hastings' prepared a notice of appeal of the

Court's decision and performed other tasks related to such an appeal, although the appeal was in

the end dismissed, in light of the overall resolution of the Committee's concerns through the

GDB Stipulation.

    (d)    <u>Court Hearings (Task Code B155)</u>
           Fees:   $119,051.00     Total Hours: 122.10

109.    During the Application Period, Paul Hastings attended several hearings on GDB

matters.  Specifically, Paul Hastings attended the October 3 and October 5, 2018 hearings in

New York on the Committee's challenge of the GDB restructuring.  While it was originally

contemplated that the October 3 hearing would involve extensive and substantive legal

arguments in connection with the Committee's challenge of the GDB restructuring (including the

Committee's standing to pursue that challenge), the swift progression of settlement discussions

resulted in an adjournment of the hearing to October 5.  Then, on October 5, the parties returned

to Court to announce that they had agreed to the GDB Stipulation.  In addition to the October 3

and October 5 hearings, Paul Hastings also attended the November 6, 2018 hearing in San Juan,

Puerto Rico, on the final approval of the GDB Qualifying Modification.

110.    In preparation for these hearings, Paul Hastings reviewed relevant issues raised in

the parties' pleadings, prepared materials for the hearings, and filed the requisite informative

motions to be heard.

(e)     General Litigation (Task Code B191)
        Fees:   $94,944.00          Total Hours: 85.40

111.    During the Application Period, Paul Hastings performed research and analysis

with respect to the Committee's challenge of the GDB restructuring and, subsequently, in

connection with the resolution of the Committee's challenge through the GDB Stipulation.  As

part of the process of negotiating the GDB Stipulation, Paul Hastings communicated extensively

with counsel to AAFAF and the Oversight Board and devoted significant time to the drafting and

revising the GDB Stipulation and related documents.  In addition, Paul Hastings continued to

analyze issues with respect to the GDB Title VI case during the period of time between the filing

of the GDB Stipulation and the November 6, 2018 final hearing on the Qualifying Modification

(f)     Claims Administration and Objections (Task Code B310)
        Fees:   $14,038.00          Total Hours: 15.40

112.    During the Application Period, Paul Hastings revised its draft objection to the

proof of claim filed by GDB against the Commonwealth and conducted related legal research.

This was done in accordance with the GDB Stipulation, which preserved the Committee's right

to challenge GDB's proof of claim against the Commonwealth.

* * *

113.    The foregoing professional services were necessary and appropriate to the

administration of the Title III Cases and were in the best interests of the Committee, the Debtors,

the creditors, and other parties in interest.

## ATTENDANCE AT HEARINGS

114.    In accordance with the presumptions set forth in the *Order on Fee Examiner's

Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee

Applications* [Docket No. 3932] (the "Presumptive Standards Order"), Paul Hastings provides

the following summary regarding the attendance of Paul Hastings professionals at Court

hearings:[29]

- <u>October 5, 2018</u>: The October 5, 2018 hearing on the Committee's objection to the GDB restructuring was attended only by Mr. Despins (speaking role), with Mr. Bongartz attending by telephone.  Their attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>November 5, 2018</u>: The November 5, 2018 oral argument in the Assured appeal before the United States Court of Appeals for the First Circuit was attended only by Mr. Despins (speaking role).  His attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>November 6, 2018</u>: The November 6, 2018 hearing on approval of the GDB restructuring was attended only by Mr. Despins (speaking role), with Mr. Bongartz (for a portion of the hearing) attending by telephone.  Their attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>November 7, 2018</u>: The November 7, 2018 omnibus hearing was attended only by Mr. Despins (speaking role), with Mr. Bongartz attending the hearing by telephone.  Their attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>November 20, 2018</u>: The November 20, 2018 hearing on the approval of the COFINA disclosure statement was attended only by Mr. Despins (speaking role), with Mr. Bongartz attending the hearing by telephone.  Their attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>December 19, 2018</u>: The December 19, 2018 omnibus hearing was attended only by Mr. Despins (speaking role), with Mr. Bongartz attending the hearing by telephone.  Their attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>January 15, 2019</u>: The January 15, 2019 oral argument in the Ambac appeal before the United States Court of Appeals for the First Circuit was attended only by Mr. Despins (speaking role).  His attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>January 16-17, 2019</u>: The January 16-17, 2019 hearings on approval of the Commonwealth-COFINA settlement and confirmation of the COFINA plan of

---

[29]   Among other things, the Presumptive Standards Order provides that "[f]or attendance at hearings in which a professional anticipates a speaking role, fees and expenses incurred for attendance by timekeepers other than those with meaningful speaking roles (plus one additional timekeeper per speaker) are not compensable."

adjustment were attended only by Mr. Despins (speaking role), with Mr. Bongartz attending the hearings by telephone. Their attendance complies with the presumptive standards set forth in the Presumptive Standards Order.

- <u>January 30, 2019</u>: The January 30, 2018 omnibus hearing was attended by Mr. Despins (speaking role) and Mr. Bassett, with Mr. Comerford, and Ms. Goldstein attending the hearing by telephone. One of the contested motions presented at the January 30 hearing by counsel for the Committee, *i.e.*, Mr. Despins, was the joint motion by the Committee and the Oversight Board seeking approval of procedures governing the objection (also jointly filed by the Committee and the Oversight Board) to the validity of more than $6 billion in GO bond claims. As described above, given the significance of this claims objection, Paul Hastings invested substantial time and resources in preparing the claims objection and the related procedures motion. For that reason, Paul Hastings submits that the attendance of two attorneys at the hearing, with two additional attorneys attending by telephone—one (Ms. Goldstein) who worked extensively on preparing the procedures motion related to the GO claims objection and one (Mr. Comerford) who is extensively involved in the process of claims objections more generally— is reasonable under the circumstances.

## **ACTUAL AND NECESSARY DISBURSEMENTS**

115.    As set forth in <u>Exhibit D-2</u> hereto, Paul Hastings disbursed $95,438.11 as expenses incurred in providing professional services during the Application Period. Because Paul Hastings believes that online legal research (e.g., LEXIS and WESTLAW) is far more cost-efficient than manual research using hard-bound volumes, Paul Hastings encourages computerized legal research even though it is not a profit center for Paul Hastings.

116.    The time constraints imposed by the circumstances of the matters handled by Paul Hastings during the Application Period required its attorneys and other employees, at times, to devote substantial time during the evenings and on weekends to perform legal services on behalf of the Committee. These extraordinary services were essential to meet deadlines, timely respond to inquiries on a daily basis, and satisfy the Committee's needs and demands. Attorneys and other Paul Hastings employees who worked late in the evenings or on weekends were reimbursed for their reasonable meal and transportation costs in accordance with the Local Rules

and firm policy.  Paul Hastings' regular practice is not to include components for those charges

in overhead when establishing billing rates, but rather to charge its clients for these and all other

out-of-pocket disbursements incurred during the regular course of the provision of legal services.

117.     Paul Hastings believes the rates for charges incurred are the market rates that the

majority of law firms charge clients for such services.  In addition, Paul Hastings believes that

such charges are in accordance with the American Bar Association's ("ABA") guidelines, as set

forth in the ABA's Statement of Principles, dated January 12, 1995, regarding billing for

disbursements and other charges.

## REQUESTED COMPENSATION SHOULD BE ALLOWED

118.     Section 316 of PROMESA provides for the compensation of professionals.

Specifically, section 316 provides that a court may award a professional employed by a

committee under section 1103 of the Bankruptcy Code "reasonable compensation for actual,

necessary services rendered . . . and reimbursement for actual, necessary expenses."  PROMESA

§ 316(a).  Section 316 also sets forth the criteria for the award of such compensation and

reimbursement:

> (a)     In determining the amount of reasonable compensation to be awarded
> to a professional person, the court shall consider the nature, the extent,
> and the value of such services, taking into account all relevant factors,
> including:
>
>> (i)      the time spent on such services;
>>
>> (ii)     the rates charged for such services;
>>
>> (iii)    whether the services were necessary to the administration of, or
>> beneficial at the time at which the service was rendered toward
>> the completion of, a case under this chapter;
>>
>> (iv)    whether the services were performed within a reasonable amount of time
>> commensurate with the complexity, importance, and nature of the
>> problem, issue, or task addressed;

(v)      with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(vi)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

PROMESA § 316(c).  Further, section 317 of PROMESA provides that "a committee . . . may apply to the court not more than once every 120 days . . . for such compensation for services rendered . . . ."

119.    In the instant case, Paul Hastings respectfully submits that the services for which it seeks compensation in this Application were, at the time rendered, believed to be necessary for and beneficial to the Committee, the Debtors, and their stakeholders and were rendered to protect, preserve, and maximize value for unsecured creditors during the pendency of the Title III Cases.  The services rendered to the Committee were performed in an economic, effective, and efficient manner commensurate with the complexity and importance of the issues involved.  The results obtained to date have benefited not only the Committee but also the Debtors, their stakeholders, and other interested parties.  Accordingly, the compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee, the Debtors, and all parties in interest.

120.    The work conducted was carefully assigned to appropriate professionals or paraprofessionals according to the experience and level of expertise required for each particular task.  Whenever possible, Paul Hastings sought to minimize the costs of Paul Hastings' services to the Committee by utilizing talented junior attorneys and paraprofessionals to handle the more routine aspects of the assignments.  A small group of the same Paul Hastings attorneys was utilized for the vast majority of the work in order to minimize the costs of intra-Paul Hastings

communication and education about the Title III Cases.  As demonstrated by this Application, Paul Hastings spent its time economically and without unnecessary duplication.  Accordingly, approval of the compensation sought herein is warranted.

## NOTICE

121.    In accordance with the Interim Compensation Order, Paul Hastings will provide notice of this Application to (i) the attorneys for the Oversight Board, Proskauer Rose LLP and O'Neill & Borges LLC; (ii) the attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP and Marini Pietrantoni Muñiz LLC; (iii) the Office of the United States Trustee for the District of Puerto Rico; (iv) the attorneys for the Official Committee of Retired Employees, Jenner & Block LLP and Bennazar, García & Milián, C.S.P.; (v) the Puerto Rico Department of Treasury; (vi) the Fee Examiner, Brady Williamson; and (vii) counsel to the Fee Examiner, Godfrey & Kahn, S.C. and EDGE Legal Strategies, PSC. In addition, the notice of hearing with respect to this Application will be served on all parties that have filed a notice of appearance in the Title III Cases.

*[Remainder of page intentionally left blank.]*

## CONCLUSION

WHEREFORE, Paul Hastings respectfully requests entry of an order, substantially in the form attached hereto as Schedule 3, (i) allowing interim compensation for professional services rendered during the Application Period in the amount of $4,705,215.50, representing 100% of the fees billed during the Application Period (before taking into account the credit or $158,129.01 for fee reductions pursuant to the order approving the Third and Fourth Interim Fee Applications), and reimbursement of $95,438.11, representing 100% of the actual and necessary expenses incurred during the Application Period (before taking into account the credit of $6,033.82 for expense reductions pursuant to the order approving the Third and Fourth Interim Fee Applications), (ii) authorizing and directing the Debtors' payment of the difference between the sum of 80% of the fees allowed (net of credits for fee reductions) plus 100% of the expenses (net of credits for expense reductions) allowed and the amounts previously paid by the Debtors pursuant to the Interim Compensation Order, (iii) allowing such compensation and payment for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to Paul Hastings' right to seek such further compensation and/or payment for the full value of services performed and expenses incurred, and (iv) granting Paul Hastings such other and further relief as is just.

Dated: March 18, 2019

          _/s/ Luc A. Despins_       

          PAUL HASTINGS LLP
          Luc A. Despins, Esq. *(Pro Hac Vice)*
          Andrew V. Tenzer, Esq. *(Pro Hac Vice)*
          Michael E. Comerford, Esq. *(Pro Hac Vice)*
          G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
          200 Park Avenue
          New York, New York 10166

Telephone:  (212) 318-6000
lucdespins@paulhastings.com
andrewtenzer@paulhastings.com
michaelcomerford@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------- x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

        Debtors.[1]

------------------------------------------------------------------------- x

:
:
:
:   PROMESA
:   Title III
:
:   Case No. 17-BK-3283 (LTS)
:
:   (Jointly Administered)
:
:

## DECLARATION OF LUC A. DESPINS IN SUPPORT OF FIFTH INTERIM
## FEE APPLICATION OF PAUL HASTINGS LLP, AS COUNSEL TO OFFICIAL
## COMMITTEE OF UNSECURED CREDITORS, FOR SERVICES RENDERED
## AND REIMBURSEMENT OF EXPENSES FOR PERIOD FROM OCTOBER 1, 2018
## <u>THROUGH JANUARY 31, 2019</u>

Pursuant to Rule 2014(a) of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy</u>

<u>Rules</u>"), I, Luc A. Despins, declare that the following is true to the best of my knowledge,

information, and belief:

1.      I am an attorney admitted and in good standing to practice in the State of New

York.  I am a partner with the law firm of Paul Hastings LLP ("<u>Paul Hastings</u>"), located at,

among other offices worldwide, 200 Park Avenue, New York, New York 10166, and am duly

authorized to make this Declaration on behalf of Paul Hastings.  I make this Declaration in

---

[1]    The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

support of the *Fifth Interim Application of Paul Hastings LLP, Counsel to Official Committee of Unsecured Creditors, for Services Rendered and Reimbursement of Expenses for the Period from October 1, 2018 through January 31, 2019* (the "<u>Application</u>").[2]

2.      The facts set forth in this Declaration are based upon my personal knowledge, discussions with other Paul Hastings attorneys, and the firm's client/matter records that were reviewed by me or other Paul Hastings attorneys acting under my supervision and direction.

3.      I hereby certify that I have read the Application and, to the best of my knowledge, information, and belief, formed after reasonable inquiry, (a) the compensation and reimbursement of expenses sought in the Application conform with the Bankruptcy Code, the Bankruptcy Rules, the U.S. Trustee Guidelines, and the Local Rules, and (b) the compensation and reimbursement of expenses are billed at rates no less favorable to the Debtors than those customarily employed by Paul Hastings generally.

4.      Paul Hastings provides the following response to the request for information set forth in the U.S. Trustee Guidelines:

<u>Question</u>:      Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees, or terms for services pertaining to this engagement that were provided during the Application Period?

<u>Response</u>:      Yes.  As a courtesy to the Committee and based on circumstances unique to the Title III Cases, during the Application Period, Paul Hastings agreed to the following voluntary reductions / write-offs:

Paul Hastings waived fees totaling $40,919.75, as follows:

(i)      For services rendered in October, November, and December, 2018, we reduced the hourly rate of Luc A. Despins from $1,400.00 to $1,395.00, resulting in a reduction of $1,527.25 in fees;

(ii)      For services rendered in October, November, and December, 2018, we reduced the hourly rate of G. Alexander Bongartz from

---

[2]      Capitalized terms used but not defined herein have the meanings set forth in the Application.

$1,200.00 to $1,125.00, resulting in a reduction of $31,297.50 in fees; and

(iii)    For services rendered in January 2019, we reduced the hourly rate of G. Alexander Bongartz from $1,250.00 to $1,200.00, resulting in a reduction of $8,095.00 in fees.

In addition, Paul Hastings waived expenses totaling $4,589.99, as follows:

(i)    We waived all charges with respect to late-work, in-office meals (even though the Fee Examiner guidelines permit in-office meal charges of up to $20.00 per meal). At a $20.00 cap per meal, this translates into a total write-off of $810.70;

(ii)    We capped car service charges at $100.00 resulting in a write-off of $1,096.74;

(iii)    We reduced all lodging charges in San Juan, Puerto Rico to $250 per night (even though the Fee Examiner's guidelines permit lodging charges in Puerto Rico of up to $300 per night), lodging charges in Boston, Massachusetts to $350 per night, and lodging charges in Washington, D.C., to $500 per night, resulting in a write-off of $2,682.55; and

(iv)    To comply with Local Rule 2016-1(b)(1), we reduced color photocopy charges by 50% from 50 cents per page to 25 cents per page (even though the Fee Examiner's guidelines permit color photocopy charges of 50 cents per page), resulting in a write-off of $1,456.75.

The aggregate amount of the foregoing reductions/write-offs is $45,509.74.

Question:    If the fees sought in this application as compared to the fees budgeted for the Application Period are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:    Not applicable.

Question:    Have any of the professionals included in this application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

Question:    Does the application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited

to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.) If so, please quantify by hours and fees.

Response:     The Application includes approximately 43 hours and associated fees of approximately $48,687.00 related to preparing, reviewing, and revising Paul Hastings' fee statements.

Question:     Does this application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:     No.

Question:     If the application includes any rate increases since retention:  (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation consistent with ABA Formal Ethics Opinion 11-458?

Response:     As is customary, Paul Hastings adjusts its hourly rates periodically based upon (i) the advancing seniority of its professionals and paraprofessionals, (ii) the current market for legal services, (iii) the rates charged for comparable non-bankruptcy services, and (iv) the firm's analysis of the hourly rates being charged by professionals in other law firms.  Effective January 1, 2019, with the Committee's approval, Paul Hastings adjusted its hourly rates in accordance with the Retention Order, the Retention Application, and the *Declaration of Mark Richard* in support of the Retention Application.

5.      I declare under penalty of perjury that, to the best of my knowledge and after reasonable inquiry, the foregoing is true and correct.

Executed this 18th day of March, 2019

                                        */s/ Luc A. Despins*_____
                                        Luc A. Despins