PUBLIC VERSION

Reply Date: March 25, 2019 at 3:00 p m. (A.S.T.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | Case No. 17-BK-4780-LTS |

## PUBLIC VERSION:

## OPPOSITION OF ASSURED GUARANTY CORP., ASSURED GUARANTY MUNICIPAL CORP., NATIONAL PUBLIC FINANCE GUARANTEE CORPORATION, AND SYNCORA GUARANTEE INC. TO THE MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR RECONSIDERATION PURSUANT TO FED. R. CIV. P. 59 AND 60

---

[1]    The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID:  3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

PUBLIC VERSION

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT..........................................................................................................................4

I.      FOMB FAILS TO OFFER NEWLY DISCOVERED EVIDENCE IN ITS
        RECONSIDERATION MOTION ......................................................................................5

II.     FOMB'S "NEW EVIDENCE" IS NO EVIDENCE AT ALL...........................................9

III.    THE COURT DID NOT ERR IN DENYING FOMB'S MOTION TO COMPEL ..........13

IV.     NO NEW EVIDENCE OR MISTAKE WARRANT RECONSIDERATION OF
        PRIVILEGE ISSUES......................................................................................................16

CONCLUSION......................................................................................................................17

PUBLIC VERSION

## TABLE OF AUTHORITIES

**Page(s)**

### CASES:

*Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*,
  2009 WL 1069161 (S.D.N.Y. Apr. 17, 2009) ..........................................................5

*Audette v. Carrillo*,
  2017 WL 1025668 (D. Mass. Mar. 16, 2017) ........................................................13

*Aybar v. Crispin-Reyes*,
  118 F.3d 10 (1st Cir. 1997) .....................................................................................5

*De Giovanni v. Jani-King Int'l, Inc.*,
  968 F. Supp. 2d 447 (D. Mass. 2013) ....................................................................13

*Fed. Realty Inv. Trust v. Pac. Ins. Co.*,
  760 F. Supp. 533 (D. Md. 1991) ............................................................................15

*Fisher v. Kadant, Inc.*,
  589 F.3d 505 (1st Cir. 2009)................................................................................5, 9

*In re Genzyme Corp.*,
  2012 WL 6674483 (D. Mass. Dec. 21, 2012) .........................................................5

*In re Neurontin Mktg. & Sales Pracs. Litig.*,
  799 F. Supp. 2d 110 (D. Mass. 2011) .....................................................................6

*In re Pabon Rodriguez*,
  233 B.R. 212 (Bankr. D.P.R. 1999) ........................................................................4

*Karak v. Bursaw Oil Corp.*,
  288 F.3d 15 (1st Cir. 2002) ............................................................................4, 5, 9

*Marie v. Allied Home Mortg. Corp.*,
  402 F.3d 1 (1st Cir. 2005) .....................................................................................16

*Palmer v. Champion Mortg.*,
  465 F.3d 24 (1st Cir. 2006) ..............................................................................4, 13

*Rivera v. M/T Fossarina*,
  840 F.2d 152 (1st Cir. 1988) ..................................................................................6

*Rosado*,
  561 B.R. 598 (B.A.P. 1st Cir. 2017) .....................................................................16

**PUBLIC VERSION**

*Soto-Padro v. Pub. Bldgs. Auth.*,
  675 F.3d 1 (1st Cir. 2012) ........................................................................................................13

*Torres v. Gonzalez*,
  980 F.Supp.2d 143 (D.P.R. 2013) ............................................................................................13

## <u>STATUTES & OTHER AUTHORITIES:</u>

Fed. R. Civ. P. 60(b) ...................................................................................................................4

N.Y. Ins. Law § 6901 ................................................................................................................15

**PUBLIC VERSION**

To the Honorable United States Magistrate Judge Judith G. Dein:

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured"), National Public Finance Guarantee Corporation ("National"), and Syncora Guarantee Inc. ("Syncora" and, collectively with Assured and National, the "Insurers") respectfully submit this opposition (the "Opposition") to the *Motion of The Financial Oversight and Management Board for Reconsideration Pursuant to Fed. R. Civ. P. 59 and 60* (ECF No. 1122)[2] ("Reconsideration Motion") filed by the Financial Oversight and Management Board for Puerto Rico ("FOMB"), as representative of the Puerto Rico Electric Power Authority ("PREPA") in these Title III cases, seeking reconsideration of the *Urgent Motion of Financial Oversight and Management Board, as Representative of Debtor, to Compel Production of Documents from Movants Relating to Their Motion for Relief from Automatic Stay* (ECF No. 1065, corrected at ECF No. 1066) ("Motion to Compel") which sought an order compelling the Insurers to produce the documents sought in the Motion to Compel (collectively, "Loss Reserve Information"). As the Court is aware, case- or transaction-specific loss reserve information (as opposed to aggregate loss reserve amounts) is both highly confidential and sensitive information. The Court correctly recognized that the Loss Reserve Information's risk assessments and settlement/litigation scenario probabilities developed in consultation with counsel are not relevant and denied FOMB's Motion to Compel. The Reconsideration Motion also should be denied.

## PRELIMINARY STATEMENT

1.      FOMB has offered this Court no new evidence or other grounds that could justify granting reconsideration. FOMB identifies one purported source of new evidence: the Insurers' recent SEC public filings—specifically, 10-K filings for 2018 for Assured and MBIA

---

[2]    "ECF No." refers to documents filed in Case No. 17-BK-4780-LTS, unless otherwise noted.

Inc.,[3] and an Annual Statement for 2018 for Syncora (collectively, the "2018 Insurer Filings"). But years of previous filings—some already produced to FOMB in discovery and, in any event, publicly available to FOMB—contained the same loss reserve discussions, often verbatim.  FOMB either failed to look at these prior filings, or recognized that the filings failed to make a compelling argument for loss reserve relevance—at least, until all other arguments failed.  Either way, the filings in no way constitute new evidence, let alone newly discovered evidence supporting a Reconsideration Motion.

2.      Moreover, the 2018 Insurer Filings cited do not support FOMB's arguments.  On the contrary, the 2018 Insurer Filings merely discuss a range of loss reserve considerations in general, without any reference to PREPA, or even Puerto Rico generally.  The Insurers' declarations submitted in opposition to FOMB's Motion to Compel remain the unchallenged and exclusive evidence about the loss reserve issues before this Court (*i.e.*, PREPA-specific loss reserves), and they remain unequivocal: the PREPA loss reserves are not relevant to collateral or collateral value.

3.      Simply put, the Reconsideration Motion is baseless.  A motion for reconsideration is not an appropriate vehicle for FOMB to obtain a second bite at the apple in its quest to obtain irrelevant Loss Reserve Information by offering a second round of arguments either already raised or which could have been raised in support of its failed motion.  This Court should reject FOMB's unfounded attempt to do just that.

## **BACKGROUND**

4.      On October 3, 2018, the Insurers filed the *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp.,*

---

[3]      MBIA Inc. ("MBIA") is National's parent company and filed the 10-K disclosure to represent all MBIA companies███████████  Deposition Transcript of Adam Bergonzi, dated Mar. 11, 2019 ("Bergonzi Dep. Tr."), at 134: 19–21, 133:21–23, excerpts attached at Exhibit 13.

**PUBLIC VERSION**

*and Syncora Guarantee Inc. for Relief from the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* (ECF No. 975) ("Lift Stay Motion").  Following the filing of the Lift Stay Motion, the parties have engaged in extensive related discovery.  In response to substantial document requests issued by FOMB and Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), the Insurers have produced over 88,000 pages of documents.

5.    On February 7, 2019, FOMB filed its Motion to Compel seeking on an expedited basis an order compelling the Insurers to produce the Loss Reserve Information. *See* ECF No. 1066.  On February 14, 2019, the Insurers filed an opposition and other papers opposing the Motion to Compel.  *See* ECF No. 1084.  On February 22, 2019, FOMB filed a reply in further support of the Motion to Compel.  *See* ECF No. 1101.

6.    On February 26, 2019, the Court heard oral argument on the Motion to Compel (the "Hearing").  At the conclusion of the Hearing, the Court stated that it would deny the Motion to Compel and suggested that the parties work out language concerning certain additional directives unrelated to the Loss Reserve Information issue.  Counsel for the FOMB and the Insurers agreed to meet and confer in order to submit a proposed joint order to the Court by March 1, 2019.

7.    The parties met and conferred and agreed to a proposed order, which they jointly submitted with an informative motion filed on March 1, 2019.  *See* ECF No. 1116.  Also on March 1, 2019, FOMB filed a second informative motion stating that it may appeal the Court's ruling.  *See* ECF No. 1117.

8.    On March 2, 2019, FOMB changed course and, instead of seeking to appeal the Court's decision to deny the Motion to Compel, filed yet another informative motion advising the Court of its "likely determination" to seek reconsideration of the Motion to Compel.  *See* ECF No. 1118.

9.    On March 5, 2019, the Court entered the Order that FOMB had approved, denying the Motion to Compel.  *See* ECF No. 1119.  The Order also contained the additional

directives negotiated by the parties and submitted in the joint proposed order, requiring the Insurers to identify to FOMB by March 12, 2019 certain of the Insurers' internal documents produced by the Insurers in connection with the Lift Stay Motion.  *Id.*  On March 8, 2019, the Insurers identified such documents to FOMB.  The directives did not relate to any Loss Reserve Information.

10.     On March 8, 2019, FOMB filed its Reconsideration Motion.  *See* ECF No. 1122.

## <u>ARGUMENT</u>

11.     Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure ("<u>Federal Rules</u>"), made applicable by Rule 9023 of the Federal Rules of Bankruptcy Procedure ("<u>Bankruptcy Rules</u>"),[4] a party moving for reconsideration "must demonstrate either that newly discovered evidence (not previously available) has come to light or that the rendering court committed a manifest error of law."  *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006). Federal Rule 60(b) allows a court to relieve a party from a "final judgment, order, or proceeding" for several reasons, including "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b)."  Fed. R. Civ. P. 60(b). Under either Federal Rule 59(e) or Federal Rule 60(b), FOMB falls well short of meeting its burden to succeed on its Reconsideration Motion.

12.     "The federal courts have consistently stated that a reconsideration motion of a previous order is an extraordinary remedy that must be used sparingly because of interest in finality and conservation of scarce judicial resources."  *In re Pabon Rodriguez*, 233 B.R. 212, 220 (Bankr. D.P.R. 1999), *aff'd*, 2000 WL 35916017 (B.A.P. 1st Cir. 2000), *aff'd*, 17 F. App'x 5 (1st Cir. 2001) (per curiam); *Karak v. Bursaw Oil Corp.*, 288 F.3d 15, 19 (1st Cir. 2002) (relief under Federal Rule 60(b) is "extraordinary in nature" and "should be granted sparingly").  In an adversary

---

[4]    The Bankruptcy Rules are made applicable to these Title III cases by Section 310 of the Puerto Rico Oversight, Management and Economic Stability Act of 2016 ("<u>PROMESA</u>").

PUBLIC VERSION

proceeding in these very Title III cases, Judge Swain previously has held that reconsideration is not appropriate when the movant "has not identified—in its papers or at the [hearing]—any new evidence justifying reconsideration, nor any manifest injustice resulting from the Court's prior orders."  Adv. Proc. No. 17-133-LTS, ECF No. 314 at 2.  The Reconsideration Motion here similarly fails to identify any newly discovered evidence, manifest injustice or other grounds in order to justify such an extraordinary remedy.  For these reasons, this Court should deny the Reconsideration Motion.

## I.     FOMB Fails To Offer Newly Discovered Evidence In Its Reconsideration Motion

13.     In its Reconsideration Motion, FOMB fails to offer any newly discovered evidence, let alone any evidence that undermines the Court's decision.  Pursuant to Federal Rule 59(e), a motion based on newly discovered evidence "must be denied where the 'new evidence' consists of information that, in the exercise of due diligence, could have been presented earlier." *In re Genzyme Corp.*, 2012 WL 6674483, at *2 (D. Mass. Dec. 21, 2012), *aff'd*, 754 F.3d 31 (1st Cir. 2014).  Federal Rule 59(e) "'does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.'"  *Aybar v. Crispin-Reyes*, 118 F.3d 10, 16 (1st Cir. 1997) (citation omitted).  "At the very least the [moving party] must put forth a 'cogent reason' as to why this evidence could not have been offered at an earlier stage of the proceedings."  *Id.*; *see also Antonmarchi v. Consol. Edison Co. of N.Y., Inc.*, 2009 WL 1069161, at *2 (S.D.N.Y. Apr. 17, 2009) (Swain, J.) (denying plaintiff's reconsideration motion for lack of newly discovered evidence).  Likewise, pursuant to Federal Rule 60(b)(2), a motion based upon newly discovered evidence "must, at the very least, offer a convincing explanation as to why [the movant] could not have proffered the crucial evidence at an earlier stage of the proceedings."  *Karak*, 288 F.3d at 19-20; *see also Fisher v. Kadant, Inc.*, 589 F.3d 505 at 513 (1st Cir. 2009).

PUBLIC VERSION

14.     "'[N]ewly discovered evidence' normally refers to 'evidence of facts in existence at the time of [the order] of which the aggrieved party was excusably ignorant.'" *Rivera v. M/T Fossarina*, 840 F.2d 152, 156 (1st Cir. 1988) (citations omitted).  "Examples of 'newly discovered evidence' . . . that have been accepted by courts include: (1) newly located witnesses with personal knowledge germane to the case; (2) evidence belatedly disclosed by opposing party such that the movant did not have time to recognize it as useful evidence; and (3) evidence that a key witness committed perjury."  *In re Neurontin Mktg. & Sales Pracs. Litig.*, 799 F. Supp. 2d 110, 113 (D. Mass. 2011) (internal citations omitted), *aff'd*, 712 F.3d 21 (1st Cir. 2013).

15.     Under both Federal Rule 59(e) and Federal Rule 60(b), the Reconsideration Motion should be denied because the purported "new" evidence is not newly discovered at all.  The Reconsideration Motion is based on MBIA's and Assured's Form 10-Ks and Syncora's Annual Statement for the fiscal year ended December 31, 2018.  FOMB asserts that the information in the 2018 Insurer Filings "could not possibly have been available as evidence" until they were filed on February 28, 2019 in the case of National and Syncora and March 1, 2019 in the case of Assured.  *See* Reconsideration Mot. ¶ 23.  FOMB claims that the 2018 Insurer Filings support FOMB's arguments in the Motion to Compel.  *Id.*

16.     FOMB's claim that it could not rely on the 2018 Insurer Filings in its Motion to Compel is misleading and just plain wrong.  The precise information in the 2018 Insurer Filings relied on by the FOMB was also in the Insurers' respective filings for many previous years, including the Insurers' respective Form 10-Ks or Annual Statements for the fiscal year ended December 31, 2017 (collectively, "2017 Insurer Filings"), for the fiscal year ended December 31, 2016 (collectively, "2016 Insurer Filings"), and for the fiscal year ended December 31, 2015 (collectively, "2015 Insurer Filings").[5]  There can be no question that the 2017 Insurer Filings,

---

[5]     The relevant pages from Assured's 2018 10-K, 2017 10-K, 2016 10-K, and 2015 10-K are attached as Exhibits 1 to 4, respectively.  The relevant pages from MBIA's 2018 10-K, 2017 10-K, 2016 10-K, and

PUBLIC VERSION

2016 Insurer Filings and 2015 Insurer Filings were available to FOMB well before it filed its Motion to Compel; indeed, the 2017 Insurer Filings have been available to FOMB for over a year, the 2016 Insurer Filings for over two years and the 2015 Insurer Filings for over three years.

17.     Moreover, the language cited and quoted by FOMB from MBIA's and Syncora's 2018 Insurer Filings is ***identical*** to language in their 2017 Insurer Filings, 2016 Insurer Filings and 2015 Insurer Filings and for Assured the language is substantially similar with no differences material to FOMB's argument here.  In their responses and objections to FOMB's and AAFAF's document requests, the Insurers specifically referenced their public filings, including their 10-Ks and Annual Statements.[6]  Assured produced its 2017 10-K to the FOMB months ago on November 16, 2018 as part of discovery.  Similarly, Syncora also produced numerous Annual Statements and other financial statements since 2009 to FOMB on November 18, 2018.  Moreover, Assured and MBIA's 10-Ks and Syncora's Annual Statements from previous years are, and have been, publicly available to FOMB.

18.     MBIA's 2017 10-K, 2016 10-K, and 2015 10-K each contain the exact same language as MBIA's 2018 10-K cited in the Motion for Reconsideration:

> We take into account a number of variables in establishing specific case basis reserves for individual policies that depend primarily on the nature of the underlying insured obligation. These variables include the nature and creditworthiness of the issuers of the insured obligations, expected recovery rates on unsecured obligations, the projected cash flow or market value of any assets pledged as collateral on secured obligations, and the expected rates of recovery, cash flow or market values on such obligations or assets.

*See* Ex 5 at 30; *see also* Ex. 6 at 32; Ex. 7 at 38; Ex. 8 at 39.

---

2015 10-K are attached as Exhibits 5 to 8, respectively.  The relevant pages from Syncora's 2018 Annual Statement, 2017 Annual Statement, 2016 Annual Statement, and 2015 Annual Statement are attached as Exhibits 9 to 12, respectively.

[6]   The Insurers' respective responses and objections are attached hereto as Exhibits 16 to 21.

PUBLIC VERSION

19.     Likewise, Syncora's 2017 Annual Statement, 2016 Annual Statement and 2015 Annual Statement, and all Annual Statements dated back to Syncora's founding in 2009, contain the exact same language as Syncora's 2018 Annual Statement cited in the Motion for Reconsideration:

> Case basis reserves are determined using cash flow models to estimate the net present value of the anticipated shortfall between (i) scheduled payments on the insured obligation plus anticipated loss adjustment expenses and (ii) anticipated cash flow from the collateral supporting the obligation and other anticipated recoveries or cash flows.

*See* Ex 10 at SYN-PR-00005687; *see also* Ex. 11 at 14.3; Ex. 12 at 14.2.

20.     Assured's 2017 10-K, 2016 10-K, and 2015 10-K have substantially similar language as Assured's 2018 10-K cited in the Motion for Reconsideration:

> The expected loss to be paid is equal to the present value of expected future cash outflows for claim and LAE payments, net of inflows for expected salvage and subrogation (e.g., excess spread on the underlying collateral, and estimated recoveries, including those for breaches of representations and warranties (R&W)), using current risk-free rates. Expected cash outflows and inflows are probability weighted cash flows that reflect management's assumptions about the likelihood of all possible outcomes based on all information available to it. Those assumptions consider the relevant facts and circumstances and are consistent with the information tracked and monitored through the Company's risk-management activities.

*See* Ex. 2 at ASSURED-PREPA_00000289; *see also* Ex. 3 at 163; Ex. 4 at 162-163.[7]

21.     Thus, the information set forth in the 2018 Insurer Filings clearly was available to FOMB either through discovery or publicly well before it made its Motion to Compel

---

[7]     Assured's 2018 10-K states: "The expected loss to be paid is equal to the present value of expected future cash outflows for claim and LAE payments, net of inflows for expected salvage and subrogation (e.g., future payments by obligors pursuant to restructuring agreements, settlements or litigation judgments, excess spread on underlying collateral, and other estimated recoveries, including those from restructuring bonds and for breaches of representations and warranties (R&W)), using current risk-free rates. Expected cash outflows and inflows are probability weighted cash flows that reflect management's assumptions about the likelihood of all possible outcomes based on all information available to it. Those assumptions consider the relevant facts and circumstances and are consistent with the information tracked and monitored through the Company's risk-management activities." Ex. 1 at 155.

PUBLIC VERSION

on February 7, 2019.  In no circumstance should FOMB be entitled to reconsideration on this basis. FOMB failed to review and rely on the same information to which they already had access or had already received.

22.     The law is clear: if evidence was already available to a movant, then it is not newly discovered evidence.  A motion based upon newly discovered evidence "must, at the very least, offer a convincing explanation as to why [the movant] could not have proffered the crucial evidence at an earlier stage of the proceedings." *Karak*, 288 F.3d at 19-20; *see also Fisher*, 589 F.3d at 513.  FOMB offers no such convincing explanation, nor does a valid explanation exist. Either FOMB chose not to review documents in its possession and chose not to review publicly available documents referenced by the Insurers, or determined that such documents did not support its motion to compel argument.  Either way, FOMB is not entitled to reconsideration on the basis of allegedly newly discovered evidence.

## II.    FOMB's "New Evidence" Is No Evidence At All

23.     Not only is FOMB's "evidence" not "new," the 2018 Insurer Filings do not support FOMB's contentions about their meaning or impact.  For starters, the 2018 10-K and Annual Statement excerpts quoted in the Reconsideration Motion do ***not*** discuss PREPA loss reserves.  The Assured, MBIA and Syncora filings discuss their loss reserve practices only in the most general terms—not specific to municipal bonds with revenue collateral packages, let alone PREPA loss reserves. *See* Ex. 2 at ASSURED-PREPA_00000289-90; Ex. 5 at 30; Ex. 10 at SYN-PR-00005687.  Moreover, the filings clearly emphasize that loss reserves ***vary by insured obligation or security***.

24.     With regard to Assured's 2018 10-K, FOMB attempts to latch onto the list of potential factors that could affect the expected loss calculation, which includes "excess spread on underlying collateral" as merely one ***example*** inside a parenthetical list, following an "*e.g.*," among many potential considerations for loss reserve calculations.  Ex. 1 at 155.  However,

**PUBLIC VERSION**

Assured's 2018 10-K explains that the company applies different loss reserve methodologies for different types of bonds:

> The Company's loss reserve committees estimate expected loss to be paid for all contracts by reviewing analyses that consider various scenarios with corresponding probabilities assigned to them. ***Depending upon the nature of the risk***, the Company's view of the potential size of any loss and the information available to the Company, that analysis may be based upon individually developed cash flow models, internal credit rating assessments, sector-driven loss severity assumptions and/or judgmental assessments. . . .

Ex. 1 at 156 (emphasis added).

25.     FOMB's Motion for Reconsideration fails to acknowledge that the Insurers have continually alleged that a principal part of the PREPA bond collateral is PREPA's revenue stream, otherwise referred to as a "special revenue stream."  Assured's 10-Ks, both 2018 and prior, specifically point out that "loss estimates for municipal obligations supported by specified revenue streams," including those of "municipal utilities," "generally will be influenced by factors impacting their revenue levels, such as . . . developments in restructuring or settlement negotiations. . . ."  Ex. 1 at 156; Ex. 2 at ASSURED-PREPA_00000290; Ex. 3 at 164; Ex. 4 at 163.  Assured's previously submitted and unchallenged declaration confirms that very fact – that settlement scenarios and litigation developments influence loss reserves where—as here with respect to the PREPA bonds—the credit at issue is backed by a specified revenue stream. *See* ECF No. 1084-7 (Rosenblum Decl.) ¶ 11.

26.     Likewise, MBIA's 2018 10-K filing specifically asserts that variables determining loss reserves "depend primarily on the nature of the underlying insured obligation." Ex. 5 at 30. ████████████████████████

████████████████████████████

████████████████████████████

████████████████████████████

PUBLIC VERSION

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████ In

the public finance context, loss reserves are set without considering collateral value. *Id.* at 137:8-22 (explaining that in the public finance context loss reserves are determined consistent with "the process described in my declaration"); ECF No. 1084-9 (Bergonzi Decl.) ¶ 19 ("At no point in the reserving process does National attempt to estimate, value, or otherwise quantify the collateral that PREPA pledged as security for the bonds—*i.e.*, PREPA's present and future revenues. Nor is any such valuation used as an input for calculating the reserves. In short, collateral valuations cannot be extracted from the PREPA reserves."). Because National provides only public finance insurance, the reference to collateral in MBIA's 10-K disclosure applies to other sectors and is not relevant to National. *See* Ex. 13 (Bergonzi Dep. Tr.) at 137:8–22. For these reasons, the collateral language set forth in MBIA's 10-K disclosure does not undermine the Court's decision.

27.     FOMB argues that the MBIA 10-K does not explicitly identify litigation and settlement outcomes as relevant reserve factors. *See* Reconsideration Mot. ¶ 16. Contrary to FOMB's argument, however, the MBIA 10-K disclosure refers to "remediation strategy"—which includes litigation and settlement assessments—as a factor that impacts loss reserves. *See* Ex. 5 at 30 ("Our remediation strategy for an insured obligation that has defaulted or is expected to default may also have an impact on our loss reserves."). Moreover, the disclosure does not purport to provide an exhaustive list of every factor relevant to setting reserves. *Id.* ("These variables include the nature and creditworthiness of the issuers of the insured obligations, expected recovery rates on unsecured obligations, the projected cash flow or market value of any assets pledged as collateral on secured obligations, and the expected rates of recovery, cash flow or market values on such obligations or assets.").

28.     Consequently, regardless of whether the disclosure explicitly identifies litigation and settlement as factors relevant to calculating loss reserves, MBIA's disclosure does not undermine the Court's decision.

29.     Syncora follows in the same vein in its 2018 Annual Statement by describing a number of factors, going far beyond collateral, that "may" (rather than "shall") determine its loss reserves:

> Other factors that **may** affect the actual ultimate loss include the state of the economy, changes in interest rates, foreign currency exchange rates, rates of inflation and salvage values of specific collaterals, as well as the Company's rights, remedies, and defenses. Such factors and management's assessment thereof will be subject to the specific facts and circumstances associated with the specific insured transaction being considered for case reserve establishment.

Ex. 9 at 14.3 (emphasis added).

30.     Significantly, but ignored by FOMB, none of the filings by any of the Insurers cited by FOMB provides that the factors discussed are exclusive in terms of loss reserve calculations; none addresses PREPA loss reserves specifically (the only loss reserve information sought by FOMB); and none requires the use of any collateral valuation.

31.     In short, the Insurers' filings are consistent with the arguments submitted in their initial papers to the Court and explained at oral argument: FOMB seeks PREPA loss reserves, and those loss reserves reflect different probability-weighted scenarios or outcomes based on the relevant information available to the Insurers.  For the Insurers' PREPA exposure, that relevant information largely means litigation and settlement outcomes, developed in consultation with counsel.  Nothing in the filings concerning general loss reserve methodologies contradicts the Insurers' unchallenged declarations setting forth the **PREPA** loss reserve methodology, and there is simply no basis for the Court to reconsider its ruling.

**PUBLIC VERSION**

### III.     The Court Did Not Err In Denying FOMB's Motion To Compel

32.     Reconsideration is not a "vehicle for revisiting a party's case and rearguing theories previously advanced and rejected." *Palmer*, 465 F.3d at 30.  Moreover, a reconsideration motion is not "an opportunity to rework and better articulate previously-failed arguments." *Audette v. Carrillo*, 2017 WL 1025668, at *5 (D. Mass. Mar. 16, 2017); *Torres v. Gonzalez*, 980 F. Supp. 2d 143, 146 (D.P.R. 2013) (denying reconsideration motion because new filing "repeats and tracks" arguments "already raised and rebuffed"); *De Giovanni v. Jani-King Int'l, Inc.*, 968 F. Supp. 2d 447, 450 (D. Mass. 2013); *Soto-Padro v. Pub. Bldgs. Auth.*, 675 F.3d 1, 9 (1st Cir. 2012). What FOMB characterizes as the Court's "mistake" is actually FOMB's impermissible attempt to take a "second bite of the apple [that] shall not be permitted." *Ne. Data Sys. Inc. v. Genesis Computer Corp.*, 1992 WL 58743, at *8 (D. Mass. Mar. 23, 1992).

33.     In its Reconsideration Motion, FOMB relies on a remarkable claim that it is entitled to the Loss Reserve Information, even if it only involves the Insurer's anticipated litigation outcome scenarios, because they are entitled to loss reserves "whether by reference to the price of tea in China or outcomes in other cases" (Reconsideration Mot. ¶ 32) and "even if an Insurer determines its loss reserve by rolling two dice and adding their top face amounts. . . ." *Id.* ¶ 30.  This argument is unhinged from both logic and the law and unsupported by the evidence before the Court.

34.     In support of its all-encompassing claim to any type of loss reserves, FOMB rephrases the same argument made previously—that any loss reserve implies "the difference between its non-bankruptcy claim and the value of its collateral, because that is the ultimate outcome of litigation here." *Id.*  That bald and unsupported claim is incorrect, and flies in the face of the ***unchallenged evidence*** of record.  The ultimate anticipated outcome of the Insurers' Title III litigation is simply not equal to their collateral as described in the Trust Agreement and PREPA's Enabling Act.  The sworn declarations of all three insurers are unequivocal: the value of

- 13 -

PREPA collateral is distinct from anticipated litigation outcomes. *See* ECF No. 1084-7 (Declaration of Benjamin Rosenblum, dated Feb. 14, 2019 ("Rosenblum Decl.")) ¶ 7 ("None of these [withheld loss reserve] documents are valuations of Assured's security for the PREPA bonds, nor do they reflect any quantitative analysis of PREPA's actual or expected future revenues. . . ."); ECF No. 1084-9 (Declaration of Adam Bergonzi, dated Feb. 14, 2019 ("Bergonzi Decl.")) ¶ 6 ("None of the documents being withheld value National's collateral or security for the PREPA bonds, nor do they reflect any quantitative analysis of PREPA's actual or expected revenues."); ECF No. 1084-10 (Declaration of Drew Hoffman, dated Feb. 14, 2019 ("Hoffman Decl.")) ¶ 12 ("None of these [withheld loss reserve] documents are valuations of Syncora's security for the PREPA bonds, nor do they reflect any quantitative analysis of PREPA's actual or expected future revenues, such as an attempt to quantify the present value of a future PREPA revenue stream."). FOMB's re-phrased argument is no different than its prior argument that collateral value must equal the difference between the Insurers' total possible liability and their anticipated payouts. *See* Transcript of Feb. 22, 2019 Hearing on Motion to Compel at 11:19-22, 32:17-33:13, attached at Exhibit 15; ECF No. 1066 (Motion to Compel) ¶ 15. The argument is just not supported by the unchallenged evidence, no matter how FOMB tries to re-phrase it.[8]

35.    FOMB essentially re-asks this Court to adopt a tremendous leap in logic, equating potential litigation outcomes with collateral value. As this Court recognized at the Hearing on the Motion to Compel (Ex. 15 at 12:1-10, 14:20-1511), the Insurers explained in detail

---

[8]    It should be noted that since the Court's consideration of the Motion to Compel, FOMB took the depositions of Assured and National witnesses pursuant to Federal Rule 30(b)(6) as well as 30(b)(1) in connection with discovery for the Lift Stay Motion. Despite this Court already ruling that loss reserve information is not relevant for the Lift Stay Motion, the FOMB continued to press its request. In response to FOMB questioning, National and Assured maintained and confirmed the facts previously established concerning the calculation of PREPA-related loss reserves. *See* Ex. 13 (Bergonzi Dep. Tr.) at 127:7-11 ███████

███████ Deposition Transcript of Jorge Gana, dated Mar. 14, 2019, at 87:1-6 ███████

excerpts attached at Exhibit 14.

their collateral in their Lift Stay Motion and supporting declarations.  *See* ECF Nos. 975, 977.
That collateral package of liens, pledges, and covenants is unrelated to the settlement discussions,
mediations, and Title III litigation.  If counsel for each of the Insurers believes that settlement
negotiations or litigation processes are going well or going poorly, those determinations would
affect litigation outcome scenarios without reflecting in any way the value of the underlying
collateral.  No reasoning in law or evidence supports the *ipse dixit* claim that "specific litigation
outcomes here are all directly tied to the value of the collateral."  Reconsideration Mot. ¶ 30.  On
the contrary, the record shows that the Insurers' PREPA loss reserves are based on analyses of
litigation or settlement outcomes that do not include any valuation of the collateral.  No matter
how many times FOMB repeats its wishful assertion, the Insurer Declarations remain
unchallenged.[9]

36.     Courts have acknowledged that litigation outcomes are speculative and
offer limited probative value.  *See, e.g.*, *Fed. Realty Inv. Tr. v. Pac. Ins. Co.*, 760 F. Supp. 533,
540 (D. Md. 1991) (finding that "reserve decisions are mere guesses at the outcome of litigation
based on conservative accounting principles" so its probative value "if any, is substantially
outweighed by its prejudicial aspects").  Litigation outcome or settlements may be affected by
political, business, and procedural factors that simply do not change the Insurers' underlying
collateral.  FOMB simply cannot dispute the unrebutted evidence of all three Insurer witness
declarations that loss reserves do not reflect collateral or collateral value.

---

[9]   Nor does FOMB's re-assertion of its New York Insurance Law argument (Reconsideration Mot. ¶¶ 15,
17), made in its initial motion and rejected by the Court in denying FOMB's motion to compel provide
basis for reconsideration.  *See* ECF No. 1101 (*Reply in Further Support of Urgent Motion of Financial
Oversight and Management Board, as Representative of Debtor, to Compel Production of Documents from
Movants Relating to Their Motion for Relief from Automatic Stay*) ¶ 17.  As the Insurers noted at oral
argument, nothing in Section 6903(b)(1) of New York's Insurance Law requires insurers to calculate loss
reserves employing a collateral valuation as part of the methodology when the collateral is a special revenue
stream.  Section 6901 makes clear that the "collateral" reference in Section 6903(b)(1) refers to collateral
of a specific kind (cash, redemptions or prepayments, market value of investments, and letters of credit),
and the specified collateral does not include special revenue streams.  *See* Ex. 15 at 28:18-29:5; N.Y. Ins.
Law § 6901.

PUBLIC VERSION

## IV.    No New Evidence Or Mistake Warrant Reconsideration Of Privilege Issues

37.    FOMB devotes a mere two paragraphs of its motion to claim their purported new evidence—the 2018 Insurer Filings—and Reconsideration Motion re-open the privilege dispute over loss reserve documents.[10]  As support for this argument, FOMB offers nothing more than two cases that neither involved privilege disputes nor granted motions for reconsideration. The first case did not even decide a reconsideration motion at all, although the court did caution, "We note that it is very difficult to prevail on a Rule 59(e) motion." *Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 7 (1st Cir. 2005).  The second case cited by FOMB held, as is typical in the First Circuit, that "the Debtors failed to establish a manifest error of law, nor did they present any newly discovered evidence which would warrant the extraordinary relief of reconsideration." *Rosado*, 561 B.R. 598, 608 (B.A.P. 1st Cir. 2017).

38.    FOMB does not explain how the 2018 Insurer Filings reopen the privilege issue.  This is not surprising since the Insurers never claimed privilege on material in such filings as the filings do not (1) discuss PREPA loss reserves, (2) disclose PREPA loss reserve methodology or (3) disclose PREPA-specific (rather than company-aggregate) loss reserves.  In fact, the Insurers publicly filed such documents because they are generic, non-specific descriptions of aggregate reserves.[11]  This Court did not decide any privilege issues concerning the PREPA loss

---

[10]    FOMB feigns a compromise by offering to "waive[] its request for the signed filings the Insurers provided  their regulators" if it were to receive the Insurers' internal documents "showing their loss reserves . . . and papers formulating them, which documents were created for use in their financial statements."  Reconsideration Mot. ¶ 3.  Such is no compromise at all.  FOMB continues its improper request for internal documents on reserves and reserve methodology.  FOMB's purported compromise ignores that (1) such information, irrespective of whether it was disclosed to regulators, has no relevance to collateral value, (2) such internal documents created during litigation and in anticipation of litigation serve dual purposes (ECF No. 1084 (*Opposition of Assured Guaranty Corp., Assured Guaranty Municipal Corp., National Public Finance Guarantee Corporation, and Syncora Guarantee Inc. to The Urgent Motion of Financial Oversight and Management Board, as Representative of Debtor, to Compel Production of Documents From Movants Relating to Their Motion for Relief from Automatic Stay*) ¶ 44), (3) National and Syncora did not provide loss reserve methodology documents to its regulators, and (4) such internal documents are the most clearly privileged of all.

[11]    The vague assertion that the 10-Ks and Annual Statements are "public documents" and thus provide "new evidence rebutting claims of privilege" (Reconsideration Mot. ¶ 39) has no bearing on this Reconsideration Motion.  The Court, having ruled that the Loss Reserve Information was irrelevant as it

PUBLIC VERSION

reserve documents and there is no need to revisit them now.  Because the Reconsideration Motion offered no new evidence, and certainly no evidence of waiver or lack of privilege, FOMB's entire argument is without merit.

## **CONCLUSION**

39.    Three weeks ago, this Court properly ruled that the Loss Reserve Information sought by FOMB does not reflect the Insurers' collateral.  Nothing has changed since then.  FOMB trotted out documents as ostensible "new evidence" when materially identical documents were, in fact, already produced by the Insurers and long available in the public record. Even if those documents could somehow be seen as "new," they are not "evidence" in support of FOMB's position because they neither discuss with any specificity the PREPA loss reserves at issue here nor support FOMB's baseless proposition that PREPA loss reserves are calculated by reference to collateral value.  The previously unchallenged evidence in this dispute remains unchallenged, and this Court made no mistake in accepting it and denying the motion to compel. The Reconsideration Motion should be denied.

---

did not concern collateral value, did not reach, and did not have to reach, the privilege issues.  In any event, any argument that *general* (rather than credit-specific) statements about loss reserve factors in the filings waives privilege is without merit and equally could have been made on the prior motion but was not.

Dated:  March 19, 2019
New York, New York


CASELLAS ALCOVER & BURGOS P.S.C.

By: /s/ *Heriberto Burgos Pérez*
Heriberto Burgos Pérez
USDC-PR 204809
Ricardo F. Casellas-Sánchez
USDC-PR 203114
Diana Pérez-Seda
USDC-PR 232014
P.O. Box 364924
San Juan, PR 00936-4924
Telephone:  (787) 756-1400
Facsimile:  (787) 756-1401
Email:  hburgos@cabprlaw.com
         rcasellas@cabprlaw.com
         dperez@cabprlaw.com

*Counsel for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

CADWALADER, WICKERSHAM & TAFT
LLP

By: /s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William J. Natbony*
Ellen Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, NY 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 406-6666
Email:  howard.hawkins@cwt.com
         mark.ellenberg@cwt.com
         bill.natbony@cwt.com
         ellen.halstead@cwt.com
         thomas.curtin@cwt.com
         casey.servais@cwt.com

*admitted *pro hac vice*

*Counsel for Assured Guaranty Corp. and
Assured Guaranty Municipal Corp.*

ADSUDAR MUÑOZ GOYCO SEDA &
PÉREZ-OCHOA, PSC, P.S.C.

By: /s/ Eric Pérez-Ochoa
    Eric Pérez-Ochoa
    USDC-PR No. 206,314
    Email:    epo@amgprlaw.com

    /s/ Luis A. Oliver-Fraticelli
    Luis A. Oliver-Fraticelli
    USDC-PR NO. 209,204
    Email:    loliver@amgprlaw.com

    208 Ponce de Leon Ave., Suite 1600
    San Juan, PR 00936
    Telephone:  (787) 756-9000
    Facsimile:   (787) 756-9010

*Counsel for National Public Finance
Guarantee Corporation*

WEIL, GOTSHAL & MANGES LLP

By: /s/ Robert Berezin
    Marcia Goldstein*
    Jonathan Polkes*
    Gregory Silbert*
    Robert Berezin*
    767 Fifth Avenue
    New York, New York 10153
    Telephone:  (212) 310-8000
    Facsimile:   (212) 310-8007
    Email:    marcia.goldstein@weil.com
            jonathan.polkes@weil.com
            gregory.silbert@weil.com
            robert.berezin@weil.com

* admitted *pro hac vice*

*Counsel for National Public Finance
Guarantee Corporation*

GOLDMAN ANTONETTI & CORDOVA, LLC

/s/ *Carlos A. Rodríguez-Vidal*
Carlos A. Rodríguez-Vidal
USDC-PR No. 201,213
E-mail: crodriguez-vidal@gaclaw.com

/s/ *Solymar Castillo-Morales*
Solymar Castillo-Morales
USDC-PR NO. 218,310
E-mail: scastillo@gaclaw.com

P.O. Box 70364
San Juan, PR 00936-8364
Tel.: (787) 759-4117
Fax: (787) 767-9177

*Counsel for Syncora Guarantee Inc.*

DEBEVOISE & PLIMPTON LLP

/s/ *My Chi To*
My Chi To*
Craig A. Bruens*
Elie J. Worenklein*
919 Third Avenue
New York, New York 10022
Tel.: (212) 909-6000
Fax: (212) 909-6836
Email: mcto@debevoise.com
cabruens@debevoise.com
eworenklein@debevoise.com

*admitted *pro hac vice*

*Counsel for Syncora Guarantee Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the Clerk of the Court

using the CM/ECF System, which will send notification of such filing to all parties of record in

the captioned case.  Further, I directed that the following counsel of record be served by U.S. Mail:

| | |
|---|---|
| Office of the United States Trustee for Region 21<br>Edificio Ochoa<br>500 Tanca Street, Suite 301<br>San Juan, PR 00901-1922 | Gerardo Portela<br>Mohammad Yassin<br>Puerto Rico Fiscal Agency and Financial Advisory<br>Authority (AAFAF)<br>De Diego Ave. Stop 22<br>San Juan, Puerto Rico 00907 |
| John J. Rapisardi, Esq.<br>Suzzanne Uhland, Esq.<br>Peter Friedman, Esq.<br>Nancy A. Mitchell, Esq.<br>Maria J. DiConza, Esq.<br>O'Melveny & Myers LLP<br>7 Times Square<br>New York, New York 10036 | Luis C. Marini-Biaggi, Esq.<br>Carolina Velaz-Rivero Esq.<br>Maria T. Alvarez-Santos Esq.<br>Marini Pietrantoni Muniz, LLC<br>MCS Plaza, Suite 500<br>255 Ponce de León Ave.<br>San Juan, PR 00917 |
| Martin J. Bienenstock, Esq.<br>Paul V. Possinger, Esq.<br>Ehud Barak, Esq.<br>Maja Zerjal, Esq.<br>Proskauer Rose LLP<br>Eleven Times Square<br>New York, New York 10036-8299 | Hermann D. Bauer, Esq.<br>O'Neill & Borges LLC<br>250 Muñoz Rivera Ave., Suite 800<br>San Juan, PR 00918-1813 |
| Luc A. Despins, Esq.<br>James Bliss, Esq.<br>James Worthington, Esq.<br>Paul Hastings LLP<br>200 Park Avenue<br>New York, New York 10166 | Arturo Diaz-Angueira, Esq.<br>Cancio, Nadal, Rivera & Diaz, P.S.C.<br>403 Muñoz Rivera Ave.<br>San Juan (Hato Rey), PR 00918-3345 |
| Robert Gordon, Esq.<br>Richard Levin, Esq.<br>Catherine Steege, Esq.<br>Jenner & Block LLP<br>919 Third Avenue<br>New York, New York 10022 | Juan. J. Casillas Ayala<br>Diana M. Batlle-Barasorda<br>Alberto J. E. Añeses Negrón<br>Ericka C. Montull-Novoa<br>Casillas, Santiago & Torres LLC<br>El Caribe Office Building<br>53 Palmeras Street, Suite 1601<br>San Juan, PR 00901-2419 |

At New York, New York, this 19th day of March, 2019.

By:  /s/ Howard R. Hawkins, Jr.
Howard R. Hawkins, Jr.*
* Admitted *pro hac vice*