IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

**DECLARATION OF SPARKLE L. SOOKNANAN
IN SUPPORT OF MOTION OF CERTAIN SECURED CREDITORS
OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
<u>OF THE COMMONWEALTH OF PUERTO RICO TO COMPEL DISCOVERY</u>**

I, Sparkle L. Sooknanan, hereby declare under penalty of perjury:

1. I am an associate at the law firm of Jones Day, located at 51 Louisiana Ave., N.W., Washington, D.C. 20001.[1] I am a member in good standing of the Bars of the State of New York and the District of Columbia. There are no disciplinary proceedings pending against me. I submit this declaration in support of the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Discovery* (the "Motion"). I have personal knowledge of the matters stated herein.

2. In the Motion, movants (the "Bondholders") move to compel (i) the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Commonwealth, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") (together, the "Respondents") to produce a privilege log that provides the information necessary for the Bondholders to assess any claim of privilege; (ii) ERS, the Commonwealth, and AAFAF to conduct a competent search of documents with an appropriate range of dates; (iii) the Oversight Board to produce documents responsive to all of the Bondholders' requests; (iv) the Oversight Board to designate a deponent in response to Bondholders' deposition subpoena; and (v) ERS and the Commonwealth to provide full and complete responses to the Bondholders' interrogatories.

3. On February 21, 2019, the Bondholders filed the *Urgent Motion to Expedite Consideration of Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Docket No. 5196 in Case No. 17-bk-03283; Docket No. 367 in Case No. 17-bk-03566] to expedite

---

[1] Capitalized terms used but not otherwise defined herein will have the meaning as set forth in the Motion.

2

consideration of the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Docket No. 3418 in Case No. 17-bk-03283 and Docket No. 289 in Case No. 17-bk-03566] (the "Stay Relief Motion").

4. On February 25, 2019, the Court entered its *Order Granting Urgent Motion to Expedite Consideration of Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* [Docket No. 5210 in Case No. 17-bk-03283 and Docket No. 371 in Case No. 17-bk-03566]. The Court set a schedule for discovery and supplemental briefing, with a final hearing on the Stay Relief Motion scheduled for March 22, 2019.

5. On February 27, 2019, consistent with the Court's February 25 Order, the parties exchanged written discovery. The Bondholders served (i) document requests on ERS and the Commonwealth; (ii) a document subpoena on AAFAF; (iii) interrogatories on ERS and the Commonwealth; and (iv) requests for admission on ERS and the Commonwealth. The Oversight Board, on behalf of ERS, served on the Bondholders (i) document requests, (ii) interrogatories, and (iii) requests for admission. On March 4, 2019, the Bondholders served a document subpoena on the Oversight Board.

6. **Document Requests.** The Bondholders issued seven requests for production to ERS, the Commonwealth and AAFAF, and six requests for production to the Oversight Board. True and correct copies of the requests for production of documents issued by the Bondholders to ERS, the Commonwealth, AAFAF, and the Oversight Board are attached hereto as Exhibit A, Exhibit B, Exhibit C, and Exhibit D, respectively. The Oversight Board, on behalf of ERS,

3

served seven requests for production on the Bondholders. A true and correct copy of the request for production of documents issued by the Oversight Board is attached hereto as <u>Exhibit E</u>.

7.  **Interrogatories and Requests for Admission.** The Bondholders issued two interrogatories and twenty-two requests for admission to ERS and the Commonwealth. The Oversight Board, on behalf of ERS, issued eleven interrogatories and seventeen requests for admission to the Bondholders. True and correct copies of the interrogatories and requests for admission issued by the Bondholders and the Oversight Board are attached hereto as <u>Exhibit F</u>, <u>Exhibit G</u>, <u>Exhibit H</u>, <u>Exhibit I</u>, <u>Exhibit J</u> and <u>Exhibit K</u>, respectively.

8.  On February 28, 2019, counsel for the Bondholders contacted counsel for ERS, the Commonwealth, AAFAF, and the Oversight Board to arrange a meet-and-confer conference call on the subject search terms for the requests for production of documents. Later that day, the parties engaged in a 35-minute telephonic meet-and-confer, during which they discussed the appropriate steps to meet the expedited schedule entered by the Court on February 25, 2019. The parties agreed that each side would propose search terms, with a goal of finalizing those terms by noon the next day so that data collection could begin. That same evening, the Bondholders circulated proposed search terms and other search parameters. *See* Email correspondence from C. Sloane to M. Dale (Feb. 28, 2019), a true and correct copy attached hereto as <u>Exhibit L</u>.

9.  On March 1, 2019, at 12:12 PM, Margaret Dale, counsel for the Oversight Board, sent proposed revisions to the Bondholders' proposed search terms, *see* Email correspondence from M. Dale to C. Sloane (March 1, 2019), a true and correct copy attached hereto as <u>Exhibit M</u>, and twenty minutes later, Cheryl Sloane and I had a call with Ms. Dale, in which both sides made concessions and reached an agreement about search terms, *see* Email correspondence from S. Sooknanan to M. Dale (March 1, 2019), a true and correct copy attached hereto as <u>Exhibit N</u>.

4

At 2:13 PM that same day, William Dalsen, also counsel for the Oversight Board, sent a series of emails that were inconsistent with the agreement the Bondholders had previously reached with the Oversight Board. *See* Email correspondence between S. Sooknanan, C. Sloane, M. Dale, and W. Dalsen (Mar. 1, 2019), a true and correct copy attached hereto as Exhibit O. After further exchanges of emails, the parties scheduled a telephonic meet-and-confer for Sunday, March 3, 2019.

10. On March 3, 2019, the parties engaged in a further telephonic meet-and-confer session to discuss the search parameters for the document productions. In an effort to meet the Court's expedited discovery schedule, the Bondholders made concessions such that parties reached agreement on five of eleven search terms for the Bondholders' data collection. *See* Email correspondence between W. Dalsen and S. Sooknanan (Mar. 4, 2019), a true and correct copy attached hereto as Exhibit P. Counsel for AAFAF agreed to propose search terms that same night for the document requests served on ERS, the Commonwealth, and AAFAF.

11. The Bondholders received the proposed search terms, custodians, and date ranges for ERS, the Commonwealth, and AAFAF the next day. *See* Email correspondence between M. Papez and M. Pocha (Mar. 4, 2019), a true and correct copy attached hereto as Exhibit Q. Among other things, counsel for those entities explained that using a start date of April 1, 2016, would require collecting and reviewing files from individuals in the prior administration. *See* Email correspondence between S. Sooknanan and M. Pocha (Mar. 4, 2019), a true and correct copy attached hereto as Exhibit R. The Bondholders disagreed with the proposals, but nonetheless made a number of concessions in an attempt to obtain production of some subset of responsive documents within a reasonable timeframe. *See* Email correspondence between S. Sooknanan and M. Pocha (Mar. 5, 2019), a true and correct copy attached hereto as Exhibit S.

12. On March 6, 2019, the parties served their responses and objections to each other's document requests. The Bondholders agreed to produce non-privileged documents in response to every one of ERS's document requests. ERS, the Commonwealth and AAFAF, however, agreed to produce documents subject to a number of objections. The Oversight Board objected to producing documents for four of the six requests, instead asserting conclusory objections based on privilege, overbreadth, vagueness and relevance. True and correct copies of the March 6, 2019 responses and objections of the Bondholders and Respondents are attached hereto as Exhibit T, Exhibit U, Exhibit V, Exhibit W, and Exhibit X, respectively.

13. On the same day, the Bondholders produced their first set of documents. Counsel for AAFAF also produced the first set of documents on behalf of ERS and AAFAF, based on paper files and hard copy documents, not electronically stored information.

14. On March 7, 2019, counsel for the Oversight Board sent a letter on behalf of ERS regarding the Bondholders' objections and responses to ERS's document requests. A true and correct copy is attached hereto as Exhibit Y.

15. Also on March 7, 2019, the Bondholders served Rule 30(b)(6) notices of deposition on the Commonwealth and ERS, as well as deposition subpoenas on AAFAF and the Oversight Board. True and correct copies of the notices and subpoenas are attached herein as Exhibit Z, Exhibit AA, Exhibit BB and Exhibit CC. The Bondholders' deposition subpoena on the Oversight Board designated eight narrow topics for questioning. Counsel for the Oversight Board noticed depositions of Andalusian Global Designated Activity Company, Mason Capital Master Fund, LP, and the Puerto Rico Funds pursuant to Federal Rule of Civil Procedure 30(b)(6). Attached to each deposition notice was a list of twenty-three deposition topics. Counsel for the Oversight Board also noticed individual depositions of James Bolin, Richard Engman,

and Leslie Highley, Jr. True and correct copies of the notices are attached herein as <u>Exhibit DD</u>, <u>Exhibit EE</u>, <u>Exhibit FF</u>, <u>Exhibit GG</u>, <u>Exhibit HH</u> and <u>Exhibit II</u>. The depositions were originally noticed for March 11, 12, and 13, 2019, but have now been continued in accordance with the extended deadlines the Court adopted on March 15, 2019.

16. On March 8, 2019, the parties exchanged responses and objections to the requests for admissions and interrogatories. True and correct copies of the responses and objections to the requests for admission are attached hereto as <u>Exhibit JJ</u>, <u>Exhibit KK</u>, and <u>Exhibit LL</u>. True and correct copies of the responses and objections to the interrogatories are attached hereto as <u>Exhibit MM</u>, <u>Exhibit NN</u>, and <u>Exhibit OO</u>.

17. Given the outstanding discovery issues, the parties began discussing a modified discovery and briefing schedule. On March 8, 2019, the parties filed the *Joint Informative Motion Regarding Consensual Extension of Deadlines for Debtor and Movants to Serve Responses and Objections to Requests for Admission and Interrogatories* [Docket No. 5453 in Case No. 17-bk-03283 and Docket No. 380 in Case No. 17-bk-03566], in which the parties informed the Court of their intention to propose a revised discovery and briefing schedule for the Stay Relief Motion. The parties further informed the Court that they would submit a joint proposed schedule if possible, or would otherwise submit alternative proposals, no later than Tuesday, March 12, 2019.

18. On March 9, 2019, and March 10, 2019, the parties exchanged further communications about search parameters. Counsel for AAFAF maintained that ERS, the Commonwealth, and AAFAF would not agree to a date range beginning earlier than January 1, 2017, because of the burden of collecting and reviewing documents from individuals in the prior administration. Counsel again represented that a high proportion of responsive documents would

be privileged. *See* Email correspondence between M. Pocha and S. Sooknanan (Mar. 9, 2019), a true and correct copy attached hereto as Exhibit PP.

19. On March 11, 2019, the Bondholders informed Respondents that they were in the process of reviewing more than 25,000 documents in response to five of the eleven requested search terms. The Bondholders further provided hit counts for the remaining six proposed search terms. The Bondholders explained that none of the six terms were relevant to the current dispute, but nonetheless offered a concession that they would run searches for three of the six search terms. *See* Email correspondence between M. Papez, W. Dalsen, and M. Pocha (Mar. 11, 2019), a true and correct copy attached hereto as Exhibit QQ.

20. Also on March 11, 2019, ERS sent a letter to the Bondholders regarding the Bondholders' responses and objections to ERS's requests for admission and interrogatories. A true and correct copy is attached hereto as Exhibit RR.

21. On March 12, 2019, the parties exchanged further communications regarding search parameters for Respondents' searches. The Bondholders communicated their proposal regarding search terms, custodians, and the date range. *See* Email correspondence between M. Papez, and M. Pocha (Mar. 12, 2019), a true and correct copy attached hereto as Exhibit SS.

22. Also on March 12, the Bondholders objected to the deposition notices served by the Oversight Board as overbroad and burdensome, and requested that the Oversight Board narrow the scope of the requests. *See* Email correspondence between S. Sooknanan and W. Dalsen (Mar. 12, 2019), a true and correct copy attached hereto as Exhibit TT.

23. On the same day, the parties filed a *Joint Informative Motion Regarding the Scheduling of Discovery and Briefing in Connection With the Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of*

*Puerto Rico for Relief from the Automatic Stay* [Docket No. 5599 in Case No. 17-bk-03283 and Docket No. 387 in Case No. 17-bk-03566], in which the parties advised the Court that they needed additional time to confer on a revised proposed schedule. The parties informed the Court that they would submit a joint proposed schedule if possible, or would otherwise submit alternative proposals, no later than Thursday, March 14, 2019.

24. On March 13, 2019, the parties exchanged further communications discussing search parameters. Counsel for AAFAF rejected the search parameters proposed by the Bondholders for ERS, the Commonwealth, and AAFAF. *See* Email correspondence between M. Papez and M. Pocha (Mar. 13, 2019), a true and correct copy attached hereto as Exhibit UU. After further communications, the parties reached agreement on the remaining search terms for the Bondholders. *See* Email correspondence between M. Papez and W. Dalsen (Mar. 13, 2019), a true and correct copy attached hereto as Exhibit VV.

25. On March 14, 2019, the parties exchanged further communications discussing search parameters for ERS, the Commonwealth, and AAFAF. Counsel for AAFAF proposed a compromise with respect to certain search terms, but refused to agree to a beginning date earlier than January 1, 2017. *See* Email correspondence between M. Papez and M. Pocha (Mar. 14, 2019), a true and correct copy attached hereto as Exhibit WW. On March 15, 2019, the Bondholders requested to confer on these issues during an upcoming meet-and-confer, and emphasized that ERS, the Commonwealth, and AAFAF could begin reviewing the documents for the time period not in dispute in an effort to meet the expedited schedule. *See* Email correspondence between M. Papez and M. Pocha (Mar. 15, 2019), a true and correct copy attached hereto as Exhibit XX.

26. On March 14, 2019, unable to reach an agreement on the proposed scheduling for discovery and briefing, the parties filed competing schedules with the Court. On March 15, 2019, the Court entered the *Order Setting Discovery and Briefing Schedule in Connection with Motion of Certain Creditors of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* [Docket No. 5712 in Case No. 17-bk-03283; Docket No. 393 in Case No. 17-bk-03566]. The Court set a schedule for discovery and supplemental briefing, with a final hearing on the Stay Relief Motion on May 21, 2019.

27. On March 15, 2019, the parties exchanged further communications discussing search parameters for ERS, the Commonwealth, and AAFAF. The Bondholders offered a compromise on the search terms, agreed to the proposed list of custodians, and requested a meet-and-confer on the date range. *See* Exhibit XX.

28. On the same day, the Bondholders sent letters to the Respondents (i) addressing the letters sent by ERS and the Commonwealth on March 6, 2019, and March 11, 2019; (ii) addressing the Commonwealth's and ERS's responses and objections to the interrogatories, requests for admission, requests for production, and deposition subpoenas; and (iii) requested Respondents' availability for a meet-and-confer session on March 18, 2019. True and correct copies of the Bondholders' letters are attached as Exhibit YY and Exhibit ZZ hereto.

29. On the same day, AAFAF produced a document-by-document privilege log for non-ESI searches performed by ERS, the Commonwealth and AAFAF.[2] The log claimed privilege over 13 documents generated from May 10, 2017 to January 25, 2018. For 9 of the 13 entries, the description of the document is identical: "Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional,

---

[2] The Bondholders did not designate the privilege log as an exhibit because AAFAF designated the document as "Confidential" subject to an order entered in Adv. Proc. No. 17-213 (Docket No. 60).

deliberative communications on pension reform proposals." For 11 of the 13 entries, the privilege basis is broad and identical: "Attorney Client; Attorney Work Product; Deliberative Process." The Respondents had previously informed the Bondholders that they anticipated a large amount of responsive documents to be privileged and that they "reserve[d] the right to provide a categorical [privilege] log, which is permitted under S.D.N.Y. Local Rule 26.2." *See* Exhibit UU; Exhibit PP.

30. On March 17, 2019, the parties again communicated regarding search parameters for ERS, the Commonwealth, and AAFAF. An agreement was reached on the initial custodians and search terms to be used, leaving the appropriate start date for the searches as the one outstanding issue. *See* Email correspondence between M. Pocha and M. Papez (Mar. 17, 2019), a true and correct copy attached hereto as Exhibit AAA. Also on March 17, the Oversight Board responded to the deposition subpoena with a broad set of objections, in which it refused entirely to designate a deponent to testify as to any of the eight topics listed in the Bondholders' subpoena. A true and correct copy is attached as Exhibit BBB.

31. On March 18, 2019, approximately one hour before a scheduled meet-and-confer conference call, the Bondholders received Respondents' response to one of their March 15 letters. A true and correct copy is attached as Exhibit CCC.

32. On March 18, 2019, the parties engaged in a 90-minute telephonic meet-and-confer session, during which they discussed the following:

    a) The outstanding date range for searches for ERS, the Commonwealth, and AAFAF: The Bondholders explained their good faith basis for requesting a start date for the search of April 1, 2016. They also explained the relevance of discovery relating to Joint Resolution 188 and Act 106.

11

Respondents stated that they would discuss the issue internally and get back to the Bondholders the next day.

b) <u>Respondents' privilege assertions</u>: Respondents continued to reserve their rights to produce categorical privilege logs, and the Bondholders emphasized the need for such logs to contain sufficient information for privilege determinations to be made. The Bondholders provided authority for their position.

c) <u>The Oversight Board's objections to the Bondholders' document subpoena</u>: The Oversight Board agreed to review its objections to the Bondholders' document subpoena, but emphasized that the requests appeared to be designed to seek privileged information. The Board agreed to respond to the Bondholders the next day.

d) <u>The Oversight Board's and AAFAF's objections to the Bondholders' deposition subpoenas</u>: The Oversight Board agreed to reconsider its objections to the Bondholders' deposition subpoenas and advise the Bondholders of its position the next day. The Bondholders and AAFAF discussed a potential agreement with respect to AAFAF's objection. The Bondholders agreed to submit a proposal to AAFAF the next day.

e) <u>ERS's deposition notices to the Bondholders</u>: The Oversight Board indicated that it would respond to the Bondholders the next day regarding their objections.

f) <u>Interrogatories</u>: Both sides agreed to review their objections and advise on their respective positions the next day.

   g) <u>Requests for admission</u>: The Bondholders proposed a compromise for resolving all objections to the requests for admission. Respondents agreed to consider the proposal and get back to the Bondholders the next day.

33. On March 19, 2019, the parties exchanged further communications regarding the topics discussed at the meet-and-confer the previous day. The Bondholders submitted a proposal on the deposition topics for AAFAF, which AAFAF accepted. *See* Email correspondence between M. Pocha and M. Papez (Mar. 20, 2019), a true and correct copy attached hereto as <u>Exhibit DDD</u>. Respondents also agreed to the Bondholders' proposal regarding the requests for admission. However, ERS, the Commonwealth, and AAFAF confirmed that they did not agree to a date range beginning prior to January 1, 2017, and would not begin collection or review of *any* documents until a ruling from the Court. Counsel for the Oversight Board also indicated that (i) the Board would respond separately regarding the Bondholders' objection to the 30(b)(6) notices served on certain Bondholders, (ii) the Board would stand on its objections to the Bondholders' document requests, and (iii) the Commonwealth and ERS would be serving objections and responses to the Bondholders' 30(b)(6) notices. The Bondholders advised that they did not intend to supplement their responses to ERS's interrogatories. *See* Email correspondence between M. Pocha and M. Papez (Mar. 19, 2019), a true and correct copy attached hereto as <u>Exhibit EEE</u>; Email correspondence between W. Dalsen and M. Papez (Mar. 19, 2019), a true and correct copy attached hereto as <u>Exhibit FFF</u>.

34. As of March 20, 2019, the parties have failed to reach an agreement on (i) the production of a privilege log that provides the information necessary for the Bondholders to assess any claim of privilege, (ii) the appropriate start date for a competent search of documents, (iii) production by the Oversight Board of documents responsive to the Bondholders' document

requests, (iv) designation by the Oversight Board of a deponent in response to Bondholders' deposition subpoena, and (v) ERS's and the Commonwealth's responses to the Bondholders' interrogatories.

Dated: March 21, 2019
       Washington, D.C.

*/s/ Sparkle L. Sooknanan*
Sparkle L. Sooknanan