# EXHIBIT UU

| | |
|---|---|
| **From:** | Pocha, Madhu <mpocha@omm.com> |
| **Sent:** | Wednesday, March 13, 2019 1:01 AM |
| **To:** | Papez, Matthew E.; Sooknanan, Sparkle L.; pfriedman@omm.com; suhland@omm.com; McKeen (External), Elizabeth; wdalsen@proskauer.com; Dale, Margaret A.; mbienenstock@proskauer.com; JLevitan@proskauer.com; tmungovan@proskauer.com; sweise@proskauer.com; mhackett@proskauer.com; brosen@proskauer.com; Theodoridis, Chris; ppossinger@proskauer.com; kperra@proskauer.com; Sushon, Bill; Neve, Brett M. |
| **Cc:** | Stewart, Geoffrey S.; Bennett, Bruce S.; Rosenblum, Benjamin; Perez, Isel M.; jzakia@whitecase.com; csloane@whitecase.com |
| **Subject:** | RE: In re Commonwealth of Puerto Rico, et al., Case No. 17-3283 (LTS) // In re Employees Retirement System of Gov't of Commonwealth of Puerto Rico, Case No. 17-3566 |

Matt -

Thank you for your counterproposal. At the outset, we should make clear that none of the discovery related to Act 106 and Joint Resolution 188 is relevant to whether the stay is causing a diminution in collateral. Whatever intent may have motivated the legislation is irrelevant to the consequences of the legislation and the impact of the current stay. We have nevertheless attempted in good faith to negotiate a reasonably limited production to avoid the burden of motion practice. To the extent we cannot reach a reasonable compromise and you decide to seek court relief, we will advise the Court that we do not believe any of this discovery is relevant, necessary, or cost effective for purposes of the stay relief motion.

We will run your proposed search terms to assess the burden and will also confer with ERS, AAFAF and the Commonwealth to determine if additional custodians should be added who are likely to have non-duplicative, responsive documents. We have also been conducting reasonable searches among paper and other files and have already been producing documents from such files.

The record refutes your claim that we rejected most of your concerns out of hand and shows to the contrary that we have made a reasonable, good-faith effort to compromise. When you requested Commonwealth custodians, we provided them. When you requested that we remove our "w/10" limiter, we gave you multiple hit reports with and without limiters. When you requested that we use an October 1, 2017 end date (instead of September 1, 2017 as we had proposed), we used that date in the hit reports. The only demand that we have declined is to extend the date range to April 1, 2016, because you have not justified the relevance and additional burden of searching and reviewing communications from the prior administration. You have not provided any legal authority that shows the opinions of Jim Milstein (assuming your representations are true) or anyone else from the prior administration have any bearing on whether the current stay is causing a diminution in the Bondholders' collateral.

We also reject the false equivalency you continue to draw between the discovery served on the government parties and the discovery served on Movants. The search terms and date ranges vary because of the content of the requests and the facts concerning the parties. Nor must the number of custodians or the number of documents to review be the same. For example, Movants should produce from more custodians because Movants are comprised of more entities. And as we have explained, the Puerto Rico government parties have more limited resources, so the discovery should be narrowly focused to reduce the cost and burden on the public.

1

Finally, regarding privilege logs, we agree that the parties should exchange logs on a reciprocal basis on an agreed-upon date. But we reserve the right to provide a categorical log, which is permitted under S.D.N.Y. Local Rule 26.2 ("[W]hen asserting privilege on the same basis with respect to multiple documents, it is presumptively proper to provide the information required by this rule by group or category"). Moreover, the Court has approved the use of categorical logs in other Title III proceedings. *See, e.g., Bank of New York Mellon v. COFINA*, Case No. 17-00133, Hr. Tr. 37:24-38:2, July 5, 2017.

Best,

Madhu

---

**From:** Papez, Matthew E. <mpapez@jonesday.com>
**Sent:** Tuesday, March 12, 2019 4:28 PM
**To:** Pocha, Madhu <mpocha@omm.com>; Sooknanan, Sparkle L. <ssooknanan@jonesday.com>; Friedman, Peter <pfriedman@omm.com>; Uhland, Suzzanne <suhland@omm.com>; McKeen, Elizabeth L. <emckeen@omm.com>; wdalsen@proskauer.com; Dale, Margaret A. <mdale@proskauer.com>; mbienenstock@proskauer.com; JLevitan@proskauer.com; tmungovan@proskauer.com; sweise@proskauer.com; mhackett@proskauer.com; brosen@proskauer.com; Theodoridis, Chris <ctheodoridis@proskauer.com>; ppossinger@proskauer.com; kperra@proskauer.com; Sushon, Bill <wsushon@omm.com>; Neve, Brett M. <bneve@omm.com>
**Cc:** Stewart, Geoffrey S. <gstewart@JonesDay.com>; Bennett, Bruce S. <bbennett@jonesday.com>; Rosenblum, Benjamin <brosenblum@JonesDay.com>; Perez, Isel M. <iperez@jonesday.com>; jzakia@whitecase.com; csloane@whitecase.com
**Subject:** RE: In re Commonwealth of Puerto Rico, et al., Case No. 17-3283 (LTS) // In re Employees Retirement System of Gov't of Commonwealth of Puerto Rico, Case No. 17-3566

Madhu,
Your email is not at all accurate. We have been trying to work with you on the discovery we served, including with regard to the search terms, date ranges, and other parameters for searching your ESI, but most of our concerns and suggestions have been rejected out-of-hand. It is not, however, productive for either side to engage in an email debate about how we got here. Rather, it is imperative that Debtors start on their review of ESI as quickly as possible.

To that end, and in response to your invitation in your email below, we have set forth below the search parameters to which we would agree. As we explain below, we do not believe any of these parameters is any more burdensome than what Movants have agreed to do (and have been doing) in response to the Debtors' requests. And, in fact, we believe that these search parameters are far more likely to be under-inclusive than overly burdensome. We nevertheless are willing to agree to these parameters in order to move the case forward.

- <u>Search terms.</u>
    - We would agree to the following (in English below, but would also need to include the Spanish equivalent):
        - ("Pay-Go" OR "pay-as-you-go" OR "PayGo" OR (pay w/1 go) OR "Law 106" OR "Act 106" OR "Joint Resolution 188" OR "SB 603" OR ERS or "employees retirement system" OR legislation OR legislature OR statute) AND ((employer* w/2 contribut*) OR bond* OR "security interest" OR pledge* OR collateral)
    - We note that this search term is very similar to Search Term No. 2 in the chart you sent on March 9. The differences are: i) the inclusion of the terms "PayGo" and (pay w/1 go) as additional formulations of "Pay-Go"; and ii) the revision of "(employer* w/2 contribution*)" to "(employer* w/2 contribut*)", which you already agreed to change.
    - Based on your March 9 chart, the earlier formulation of this search yielded 9,258 hits and 36,106 hits-with-family. The slightly revised terms noted above will likely cause that hit count to increase

2

marginally.  We are confident, however, that the final hit-count from this search will come nowhere near the hit-count on the searches we are running in response to the Debtors' request—which, as we told you yesterday, we anticipate will total at least 44,000 direct hits (i.e., not hits-with-family).

- Date Range:
    - We believe that the Debtors should use a date range of April 1, 2016 through October 1, 2017.
    - The October 1, 2017 end-date is what Debtors proposed, and we have no problem with it.
    - We have already explained that the April 1, 2016 beginning date is based on a meeting that occurred on April 28, 2016, in which Puerto Rico's financial adviser (Jim Milstein) threatened to circumvent ERS's obligations by creating a system that is almost the same as PayGo.  It is, accordingly, clear to us that relevant individuals started discussing the system that eventually became PayGo as early as April 2016.
    - In addition, and as a point of comparison, Debtors asked Movants to begin their searches for responsive documents on a date six months before the date of each Movant's initial purchase of ERS Bonds.  We agreed to do that, and as a result, some Movants are producing documents from well before April 2016.  Accordingly, here too, we are not asking you to do anything more than what we already agreed to do.

- Custodians
    - We do not know the names or positions of relevant current or former employees of ERS, the Commonwealth, and AAFAF, and so we cannot provide specific names of custodians.  Generally, the custodians should include relevant officials from ERS, the Commonwealth, and AAFAF who had communications about the system and legislation that eventually became PayGo, Act 106, and JR 188, even if those individuals have since left their jobs.  We are willing to work with you to come up with an acceptable roster of custodians, but we need information from you to do so.
    - We also note that we have searched the files of 32 custodians from our clients.  By comparison, you have proposed searching only 7 custodians from your clients.  Although we are likely to request that you search additional custodians once we have more information, we think it very unlikely that we will be asking you to search an additional 25 custodians.  Accordingly, on this metric too, we are not asking you to do anything more than what we will be doing.

- Hard-Copy and Soft-Copy Files:
    - Our position here is that the Debtors should search for and produce documents from general files (hard-copy or soft-copy) that ERS, the Commonwealth, and AAFAF have about PayGo, Act 106, or JR 188, to the extent those documents are responsive to our RFPs.
    - As a point of comparison, and in response to a request from you, we agreed to search for and produce any general due diligence files (hard-copy or soft-copy) our clients had relating to the issuance of the ERS bonds.  We view our request that Debtors do the same for PayGo, Act 106, or JR 188, as a corresponding request to you.

- Privilege.
    - We do not agree to the sampling method you proposed, as Sparkle explained in her email last night.
    - Our position on privilege is simple:  As required by the Federal Rules, both sides will exchange document-by-document privilege logs that describe each document that is subject to a claim of privilege in a manner that will enable other parties to assess the claim.
    - We propose that both sides exchange their privilege logs on whichever day is ultimately the deadline for completion of document production.

We look forward to hearing from you on this.
Thanks,
Matt

3

Matthew E. Papez (bio)
Partner
**JONES DAY® - One Firm Worldwide℠**
51 Louisiana Ave., N.W.
Washington, D.C. 20001-2113
Office: +1.202.879.3881
Mobile: +1 202.607.3111
mpapez@jonesday.com

4