**Objection Deadline: March 25, 2019, at 3:00 p.m. (AST)**
**Hearing Date and Time: April 1, 2019, at 2:30 p.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ | ) | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | Case No. 3:17-bk-03283 (LTS) |
| as representative of | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾ X | ) | |
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| as representative of | ) | Case No. 3:17-cv-01685 (LTS) |
| | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| -------------------------------------------------------------- x | | |

# MOTION OF CERTAIN SECURED CREDITORS
# OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
# OF THE COMMONWEALTH OF PUERTO RICO
# <u>TO COMPEL DISCOVERY</u>

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................ 2

SUMMARY OF ARGUMENT ........................................................................................ 4

PRIOR FIRST CIRCUIT RULINGS .............................................................................. 5

    A.    Adequate Protection Decision ................................................................... 5

    B.    Perfection Decision ................................................................................... 7

CASE SCHEDULE ......................................................................................................... 8

BACKGROUND .............................................................................................................. 8

    A.    The Bondholders' Security Interests In ERS's Property ........................ 8

    B.    PROMESA Title III Cases ....................................................................... 9

    C.    Changes to ERS and the Pension Mechanisms ...................................... 10

    D.    Joint Resolution 188 and Act 106 .......................................................... 11

    E.    The Bondholders' Stay Relief Motion .................................................... 12

DISCOVERY SERVED ................................................................................................. 13

ARGUMENT .................................................................................................................. 14

I.     The Court Should Compel Respondents To Produce A Privilege Log That
      Provides The Information Necessary For The Bondholders And The Court To
      Assess Their Claims Of Privilege ...................................................................... 14

II.    The Court Should Compel ERS, The Commonwealth, And AAFAF To Conduct
      A Competent Search Of Documents Within An Appropriate Range Of Dates .............. 20

III.   The Court Should Compel The Oversight Board To Produce Documents
      Responsive To The Bondholders' Requests ...................................................... 21

IV.   The Court Should Compel The Oversight Board To Designate A Deponent In
      Response To Bondholders' Deposition Subpoena ............................................. 24

V.    The Court Should Compel ERS And The Commonwealth To Provide Full And
      Complete Responses To The Bondholders' Interrogatories ............................. 30

CONCLUSION ............................................................................................................... 35

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Acinelli v. Blackmon*,
    No. ED CV 13-0381-ABC (PLA), 2014 WL 12700993
    (C.D. Cal. Aug. 6, 2014) ............................................................................................23

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
    No. 08-C-16, 2009 WL 2870622 (E.D. Wis. Sept. 2, 2009) .....................................28

*Asghari-Kamrani v. United Servs. Auto. Ass'n*,
    No. 2:15cv478, 2016 WL 8243171 (E.D. Va. Oct. 21, 2016) ...................................16

*Auto. Club of N. Y., Inc. v. Port Auth. of N. Y. & N. J.*,
    297 F.R.D. 55 (S.D.N.Y. 2013) .........................................................15, 16, 17, 18

*Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*,
    319 F.R.D. 422 (D.P.R. 2016) .................................................................23, 31, 33, 34

*Bhatia-Gautier v. Roselló-Nevares*,
    Civil No. SJ2017CV00271 (P.R. Super. Ct. Mar. 16, 2018) .............................18, 19

*Bourne v. Arruda*,
    No. 10-cv-393-LM, 2012 WL 2159613 (D.N.H. June 12, 2012) .......................33, 34

*Bramante v. McClain*,
    No. SA-06-CA-0010 WWJ, 2007 WL 102314 (W.D. Tex. Jan. 8, 2007) ................33

*Chevron Corp. v. Salazar*,
    No. 11 Civ. 3718(LAK)(JCP), 2011 WL 4388326 (S.D.N.Y. Sept. 20, 2011) ........17

*Coleman v. Schwarzenegger*,
    No. CIV S-90-0520 LKK JFM P, 2008 WL 2732182 (E.D. Cal. Jul. 8, 2008) .........17

*Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*,
    No. 3:15-CV-01300-JMC, 2016 WL 6539344 (D.S.C. Nov. 3, 2016) .....................16

*Dongguk Univ. v. Yale Univ.*,
    270 F.R.D. 70 (D. Conn. 2010) ................................................................................28

*Estate of Manship v. United States*,
    232 F.R.D. 552 (M.D. La. 2005) ..............................................................................17

*First Horizon Nat'l Corp. v. Houston Cas. Co.*,
    No. 2:15-cv-2235-SHL-dkv, 2016 WL 5867268 (W.D. Tenn. Oct. 5, 2016) ................ *passim*

*Fleisher v. Phoneix Life Ins. Co.*,
    2013 WL 42374 (S.D.N.Y. Jan. 3, 2013) .................................................................16

*Franco-Gonzalez v. Holder*,
    No. CV 10-2211-DMG, 2013 WL 8116823 (C.D. Cal. May 3, 2013) .....................17

*Green v. Cosby*,
    160 F. Supp. 3d 431 (D. Mass. 2016) ......................................................................26

## **TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hinkley v. Liberty Power Corp.*,
No. 1:18-mc-00203-JCN, 2018 WL 6184653 (D. Me. Nov. 27, 2018)..................................26

*Hodgson v. Adams Drug Co.*,
No. 4512, 1971 WL 844 (D.R.I. Aug. 16, 1971) ....................................................................32

*In re Adkins Supply, Inc.*,
555 B.R. 579 (Bankr. N.D. Tex. 2016).............................................................................32, 33

*In re Fin. Oversight & Mgmt. Bd. for P. R.*,
295 F. Supp. 3d 66 (D.P.R. 2018)..........................................................................................17

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
914 F.3d 694 (1st Cir. 2019)...........................................................................................8, 9, 27

*In re Hector Rivera Cruz.*,
18 P.R. Offic. Trans. 955 (P.R. 1987)...............................................................................20, 21

*In re Plascencia*,
No. 08-56305-ASW, 2012 WL 2161412 (Bankr. N.D. Cal. June 12, 2012)...........................24

*In re Rivastigmine Patent Litig.*,
237 F.R.D. 69 (S.D.N.Y. 2006) ..............................................................................................16

*In re Textron, Inc. ERISA Litig.*,
No. 09-383ML, 2012 WL 12876091 (D.R.I. Apr. 11, 2012) ..................................................31

*In re TPG Troy, LLC*,
492 B.R. 150 (Bankr. S.D.N.Y. 2013)....................................................................................26

*La. Pac. Corp. v. Money Mkt. 1 Inst'l Inv. Dealer*,
285 F.R.D. 481 (N.D. Cal. 2012)............................................................................................28

*Mancia v. Mayflower Textile Servs. Co.*,
253 F.R.D. 354 (D. Md. 2008)..........................................................................................23, 31

*McMurray v. Comm'r*,
985 F.2d 36 (1st Cir. 1993)....................................................................................................26

*McNamee v. Clemens*,
No. 09 CV 1647 SJ, 2013 WL 6572899 (E.D.N.Y. Sept. 18, 2013) ......................................16

*Mfrs. Collection Co., LLC v. Precision Airmotive, LLC*,
No. 3:12-CV-853-L, 2014 WL 2558888 (N.D. Tex. June 6, 2014) ........................................16

*Miles v. Funk*,
No. 05-CV-56-JM, 2006 U.S. Dist. LEXIS 35717 (D.N.H. May 31, 2006) ..........................34

*Mitchell Eng'g v. City & Cty. of S.F.*,
No. C 08-04022 SI, 2010 WL 455290 (N.D. Cal. Feb. 2, 2010).......................................28, 29

*Moreno Rivera v. DHL Glob. Forwarding*,
272 F.R.D. 50 (D.P.R. 2011) .................................................................................................31

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*,
  No. 6:14-cv-749-Orl-41TBS, 2015 WL 1470971 (M.D. Fla. Mar. 31, 2015)........................16

*Neelon v. Krueger*,
  No. 12–cv–11198–IT, 2015 WL 1037992 (D. Mass. Mar. 10, 2015) ........................15, 16, 18

*Norton v. Town of Islip*,
  CV 04-3079, 2017 WL 943927 (E.D.N.Y. Mar. 9, 2017) .....................................................16

*Orbit One Commc'ns, Inc. v. Numerex Corp.*,
  255 F.R.D. 98 (S.D.N.Y.2008) .............................................................................................17

*Peaje Invs. LLC v. García-Padilla*,
  845 F.3d 505 (1st Cir. 2017).........................................................................................6, 7, 12

*Penn. Ave. Dev. Corp. v. One Parcel of Land in D.C.*,
  670 F.2d 289 (D.C. Cir. 1981) ..............................................................................................26

*Rediker v. Warfield*,
  11 F.R.D. 125 (S.D.N.Y 1951) .............................................................................................34

*Rosen v. Provident Life & Accident Ins. Co.*,
  308 F.R.D. 670 (N.D. Ala. 2015) ..........................................................................................16

*S.E.C. v. Somers*,
  No. 3:11-CV-00165-H, 2013 WL 4045295 (W.D. Ky. Aug. 8, 2013)...................................17

*Scholastic, Inc. v. Harris*,
  259 F.3d 73 (2d Cir. 2001)....................................................................................................26

*SEC v. Collins & Aikman Corp.*,
  256 F.R.D. 403 (S.D.N.Y. 2009) ..........................................................................................17

*SEC v. Yorkville Advisors, LLC*,
  300 F.R.D. 152 (S.D.N.Y. 2014) ..........................................................................................16

*Teledyne Instruments, Inc. v. Cairns*,
  No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274 (M.D. Fla. Oct. 25, 2013)...................16, 17

*Vazquez-Fernandez v. Cambridge College, Inc.*,
  269 F.R.D. 150 (D.P.R. 2010) ..............................................................................................22

*Walker v. Lakewood Condo. Owners Ass'n*,
  186 F.R.D. 584 (C.D. Cal. 1999) ..........................................................................................31

*Wultz v. Bank of China Ltd.*,
  979 F. Supp. 2d 479 (S.D.N.Y. 2013)....................................................................................16

**STATUTES**

11 U.S.C. § 362........................................................................................................... *passim*

11 U.S.C. § 544...........................................................................................................................7

# **TABLE OF AUTHORITIES**
(continued)

**Page(s)**

48 U.S.C. § 2161 ...................................................................................................10

48 U.S.C. § 2170 .....................................................................................................1

48 U.S.C. § 2175 ...................................................................................................28

**OTHER AUTHORITIES**

3 2008 P.R.A. 781 .................................................................................................12

8B Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* (3d ed. 2018) ..............................................23, 26

Fed. R. Civ. P. 26 ......................................................................................1, 16, 22

Fed. R. Civ. P. 30 ...........................................................................13, 14, 28, 29

Fed. R. Civ. P. 33 ............................................................................................30, 31

Fed. R. Civ. P. 37 ..................................................................................................1, 35

Fed. R. Civ. P. 45 .....................................................................................................1

Fed. R. Bankr. P. 7026 ............................................................................................1

Fed. R. Bankr. P. 7037 ............................................................................................1

Fed. R. Bankr. P. 9014 ............................................................................................1

H.R. 5278, 114th Cong. (2016)..............................................................................9

To the Chambers of the Honorable Laura Taylor Swain and the Honorable Judith G. Dein:

Pursuant to Federal Rules of Bankruptcy Procedure 7026, 7037, and 9014, and Federal Rules of Civil Procedure 26, 37, and 45, made applicable to these proceedings by 48 U.S.C. § 2170, movants[1] (the "Bondholders"), all of whom are secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), move to compel (i) ERS, the Commonwealth, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") (together, the "Respondents") to produce a privilege log that provides the information necessary for the Bondholders and the Court to assess their claims of privilege; (ii) ERS, the Commonwealth, and AAFAF to conduct a competent search of documents within an appropriate range of dates; (iii) the Oversight Board to produce documents responsive to the Bondholders' requests; (iv) the Oversight Board to designate a deponent in response to Bondholders' deposition subpoena; and (v) ERS and the Commonwealth to provide full and complete responses to the Bondholders' interrogatories. In support of the Motion, the Bondholders state as follows:

---

[1] Movants include Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

## INTRODUCTION

1.      These discovery disputes arise out of the latest effort by the Commonwealth, ERS, AAFAF, and the Oversight Board to deny the Bondholders the adequate protection they are entitled to under the Bankruptcy Code. The First Circuit has rejected each prior attempt, most recently in its January 30, 2019, decision holding that the Bondholders are perfected secured creditors with liens on ERS's property. Now, on remand from that decision, Respondents have obstructed discovery at every turn, creating unnecessary and costly delays and prompting this Motion.

2.      Missing from the record of this case—and, thus far, from the overall dispute about adequate protection—is competent evidence explaining one of the great mysteries of this bankruptcy, namely, how did billions of dollars of present value and billions more of future payments somehow disappear from ERS in what appears to have been a *leger de main* to deprive ERS's Bondholders of their constitutionally-guaranteed property rights in this very property? And, similarly, how did it happen that, when the dust cleared, a new, nearly identical pension system— called "Pay-Go"— spontaneously appeared and received the same stream of contributions from the same employers as had the old ERS, paid benefits to the same population of public employees as did ERS, seems to have used the same formulas to calculate the amount of employer contributions as ERS did, and used the same actuarial and other methods to determine the benefits due to retirees? How is it that the current owner of ERS's property can escape perfected liens that follow transferred collateral under Puerto Rico law? These are not idle questions: the debtors now claim that there has been no diminution in the value of the Bondholders' collateral because, thanks to the two legislative enactments that created Pay-Go, the Bondholders simply no longer have any collateral at all and, therefore, *a fortiori,* there is nothing of value to be diminished in the first place.

3.      Putting to one side the cynicism of this argument, it raises more questions than it answers. Who, for example, thought up this idea, and when did they do it? What efforts did ERS take to protect its assets from such dissipation? What other alternatives were considered before Pay-Go itself appeared? What consideration was given to the fact that ERS's assets were subject to perfected liens? What is the overlap in staff, physical premises, operations, and management between the old ERS and the new Pay-Go? How exactly was the transfer of assets from ERS to the Commonwealth made? How similar (or different) are the actuarial formulas that ERS used from the formulas Pay-Go uses to calculate benefits? How different are the mechanisms Pay-Go uses to determine the amount of employer contributions from the mechanisms ERS used? And did the employer contributions to pay pension obligations ever decrease, or did they in fact increase, as prepetition contributions to ERS were insufficient to cover then-current obligations of ERS?

4.      For almost two years, the Bondholders have been met with stony silence when they raised these issues. They now, in the context of their motion for relief from the automatic stay, have the right to propound discovery and to take depositions to learn the answers. In response, ERS, the Commonwealth, the Oversight Board, and AAFAF have interposed a wall of objections; they claim that the disclosures the Bondholders seek inquire into matters that are irrelevant, or privileged, or simply too much work to answer. But stonewalling tactics cannot be allowed to prevail. Obviously, the questions surrounding the extinction of ERS and the invention of Pay-Go are too fundamental and too important to be put off by Respondents' attempts to frustrate the search for answers. The Court, as well as the Bondholders, needs this evidence in order to adjudge the Bondholders' underlying motion for relief from the automatic stay and, equally, the First Circuit will demand a competent record when this matter is appealed, as it certainly will be.

## SUMMARY OF ARGUMENT

5.      *First*, the Court should compel Respondents to produce a privilege log that provides the information necessary for the Bondholders and the Court to assess their claims of privilege. Respondents have interposed across-the-board privilege objections to the Bondholders' discovery, and advised the Bondholders that they intend to provide only "categorical" privilege logs at best. But Respondents cannot dispute that even a categorical privilege log must provide sufficient information about the nature of the withheld documents to enable the receiving party and the Court to assess the validity of the privilege asserted. A compliant privilege log is critical in this case, where Respondents have already informed the Bondholders that they intend to withhold a substantial number of documents on the basis of the attorney-client privilege, the work-product doctrine, the deliberative-process privilege, and executive privilege. *See infra* pp. 14-20.

6.      *Second*, the Court should compel ERS, the Commonwealth, and AAFAF to conduct a competent search of documents within an appropriate range of dates. Respondents have refused to search for or produce any responsive documents created before January 1, 2017. But the Bondholders have established a good faith basis for a start date of June 30, 2016, and have themselves conducted searches at Respondents' request as far back as 2008. *See infra* pp. 20-21.

7.      *Third*, the Court should compel the Oversight Board to produce documents responsive to the Bondholders' requests. The Bondholders served the Oversight Board with six targeted document requests, but the Oversight Board refused to produce any documents whatever in response to four of those six requests. Instead, the Oversight Board lodged a series of rote, boilerplate objections. It broadly objected on privilege grounds without providing any information about the claimed privilege. It objected on general grounds of vagueness, overbreadth, and burden, without providing any specificity whatsoever. It even objected to certain terms like "background," "approval," and "implementation" as vague and ambiguous, despite those terms plain, ordinary

meanings. And it lodged relevance objections even though the document requests cover topics the Oversight Board itself put into issue. *See infra* pp. 22-24.

8.      *Fourth*, the Court should compel the Oversight Board to designate a deponent in response to Bondholders' deposition subpoena. The Oversight Board responded to the Bondholders' deposition subpoena with another set of broad, boilerplate objections, and refused to designate a witness to testify on any of the eight topics. The Oversight Board again made categorical privilege objections, which cannot justify a blanket refusal to even designate a witness. It objected to topics claiming they call for legal conclusions, even though they plainly involve factual information. It objected to the subpoena topics as overbroad, ignoring the clear relevance to the motion at issue. It claimed the testimony would be duplicative of testimony provided by *other* entities. And it again challenged the meaning of ordinary terms. *See infra* pp. 25-30.

9.      *Fifth*, the Court should compel ERS and the Commonwealth to provide full and complete responses to the Bondholders' interrogatories. The Bondholders propounded only two interrogatories to ERS and the Commonwealth. Instead of providing good faith responses, both parties served pages of identical boilerplate objections. The Court should overrule the objections and direct ERS and the Commonwealth to provide amended responses. *See infra* pp. 30-35.

## PRIOR FIRST CIRCUIT RULINGS

10.     This matter already has been to the First Circuit twice, and both times, the Bondholders prevailed. The two opinions handed down by the Court of Appeals make it clear that the Bondholders have constitutionally-protected property interests in assets of ERS, framing the issue whether the automatic stay has resulted in a diminution of the value of that property.

### A.      Adequate Protection Decision

11.     In September 2016, shortly after the PROMESA automatic stay went into effect, the Bondholders moved for relief from the stay in the absence of adequate protection. In opposing

that motion, ERS argued, *inter alia*, that the Bondholders were adequately protected because of

their "valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which

[would] continue to grow." Respondent Employees Retirement System of the Government of the

Commonwealth of Puerto Rico's Brief in Opposition to Motion for Relief From the PROMESA

Automatic Stay, No. 16-cv-2696, Docket. 52, at 10 (Oct. 26, 2016). Likewise, the Commonwealth

argued that "[t]he security interest and lien in favor of [the Bondholders] is indefinite, and *ends*

*only upon satisfaction of the ERS's outstanding debt obligations*." Respondents' Brief in

Opposition to Motion for Relief From the PROMESA Automatic Stay, No. 16-cv-2696, Dkt. No.

53, at 5 (Oct. 26, 2016) (emphasis added).[2] Specifically relying upon these assurances from ERS

and the Commonwealth, the District Court denied the Bondholders' motion.

12.    On appeal, the First Circuit vacated the denial and remanded the case for further

proceedings on the question of whether the Bondholders were adequately protected. *Peaje Invs.*

*LLC v. García-Padilla*, 845 F.3d 505, 509, 514 (1st Cir. 2017). The First Circuit recognized that

even "prior to the enactment of the current bankruptcy stay provision, the Supreme Court had

recognized that creditors are constitutionally entitled to protection 'to the extent of the value of

the[ir] property.'" *Id.* at 511–512 (quoting *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 278

(1940)). It held that even a *temporary* diversion of the Bondholders' collateral and the resulting

uncertainty about ERS's ability to repay the ERS Bonds established a legally sufficient claim that

the Bondholders lacked adequate protection. *Id.* at 514 (the Bondholders "included in their district

court filings a 2014 statement by ERS that uncertainty about future employer contributions could

---

[2] The Oversight Board, too, represented in an amicus brief that the "perpetual revenue
streams that secure [the Bondholders'] claims would still be available for future payments under
yet-to-be negotiated fiscal plans or in future proceedings under PROMESA." Brief of Amicus
Curiae Financial Oversight and Management Board for Puerto Rico in Support of Respondents-
Appellees Urging Affirmance of the District Court Order at 7, No. 16-2433 (1st Cir. Dec. 23, 2016).

affect the repayment of the ERS's bond payable"); *see also* Unofficial Tr., *Altair Glob. Credit Opportunities Fun (A), LLC v. Garcia-Padilla*, No. 16-2433, at 36:21-37:1 ("But I'm just having great difficulty with your argument that there's this seven-month window where the government can entirely, entirely destroy the value of collateral a hundred percent and yet that wouldn't in and of itself be good cause."). Indeed, the First Circuit described the Bondholders' request for adequate protection as "quite modest." *Peaje*, 845. F.3d at 514 n.5.

13.     After the First Circuit's decision, the parties entered into a series of stipulations to provide the Bondholders with adequate protection for the interim. Order Approving Stipulation, Setting Aside Hr'g And Dismissing Case, No. 16-cv-2696, Docket No. 83 (Jan. 17, 2017); Joint Stipulation and Order, No. 16-cv-2696, Dkt. No. 86, at 3 (Apr. 11, 2017); Order Approving Stipulation, No. 17-bk-03566, Dkt. No. 171 (July 17, 2017).

### B.     Perfection Decision

14.     In July 2018, Respondents refused to continue the previously ordered protections, which prompted the Bondholders to file another motion to lift the automatic stay in the absence of adequate protection (the "<u>Stay Relief Motion</u>"). This time, ERS recanted its prior judicial admissions—that the Bondholders held valid and enforceable liens that would continue indefinitely—and argued that the Bondholders' liens were unperfected and unenforceable. The District Court agreed, holding that the Bondholders' security interests in ERS's property were unperfected and therefore avoidable pursuant to § 544 of the Bankruptcy Code. *See Opinion and Order Granting and Denying in Part Cross Motions for Summary Judgment*, Adv. Proc. No. 17-00213-LTS, Dkt. No. 215 (Aug. 17, 2018); Order, No. 17-03566, Dkt. No. 318 (Aug. 21, 2018).

15.     The First Circuit again reversed, finding that the Bondholders possess perfected and non-voidable security interests in ERS's property. It held "that the Bondholders satisfied the filing requirements for perfection as of December 17, 2015," and "PROMESA's incorporation of

the Bankruptcy code does not allow for the avoidance of perfected liens." *In re Fin. Oversight &
Mgmt. Bd. for P.R.*, 914 F.3d 694, 703, 721 (1st Cir. 2019). It remanded the matter to the District
Court, leading to the renewal of the Stay Relief Motion and present discovery disputes.

## CASE SCHEDULE

16.    Under Bankruptcy Code § 362(e)(1), motions to lift the automatic stay under
§ 362(d) are entitled to expedited consideration. Accordingly, the District Court has scheduled a
final hearing on the Bondholders' Stay Relief Motion for May 21, 2019. Between now and then,
the schedule calls for discovery requests to be made and responded to, for documents to be
produced, for interrogatories to be answered, and for witnesses to be produced for examination.
Sooknanan Decl. ¶ 26. Because Respondents admitted from the outset that they intend to raise
broad claims of privilege, the pre-hearing schedule calls for two rounds of motions to compel. The
first round—this Motion—is intended to resolve questions about the scope of discovery, the
validity of objections, and the adequacy of privilege logs. *Id*. ("deadline for service of
supplemental privilege logs, if so ordered"). The second round is to adjudicate, *inter alia*, the
claims of privilege themselves. *Id*. Obviously, it will not be possible to meaningfully address
claims of privilege in the second round of motions to compel if Respondents' privilege logs are
insufficient to permit the Bondholders to properly test Respondents' privilege claims.

## BACKGROUND

### A.    The Bondholders' Security Interests In ERS's Property.

17.    As the First Circuit summarized in its most recent decision, ERS "is a trust and
government agency created in 1951 by an Act of the Commonwealth," and it "is structured to
provide pensions and other retirement benefits to employees and officers of the Commonwealth
government, members and employees of the Commonwealth's Legislative Assembly, and officers
and employees of the Commonwealth's municipalities and public corporations." *In re Fin.*

*Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 704. ERS "is designated as 'independent and separate' from other Commonwealth agencies." *Id.*

18.     In 2008, "[s]eeking to decrease an unfunded liability of approximately $9.9 billion," ERS issued approximately $3 billion in bonds. *Id.* An integral part of this transaction was an extensive security package to protect the Bondholders' investment. ERS granted the Bondholders, through a Fiscal Agent, a security interest in and lien on certain property of ERS ("Pledged Property"), as defined in a Bond Resolution dated January 24, 2008. Pledged Property is defined broadly to include, *inter alia*, "all employer contributions received by ERS" and "any assets in lieu thereof or derived thereunder"; all "right, title, and interest of [ERS] in and to" those contributions; "all rights to receive the same"; and "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property," including, "without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property. ERS Bond Resolution § 501 & Exh. B, VI-33, VI-36, VI-37.

19.     The security package was enhanced by a mechanism created by the ERS Bond Resolution. Under this system, ERS was required to transfer all employer contributions it received to the Fiscal Agent at the end of each month, and the Fiscal Agent was required to deposit those funds into specified accounts immediately. ERS Bond Resolution § 504.

### B.     PROMESA Title III Cases

20.     On June 30, 2016, Congress passed PROMESA in response to Puerto Rico's fiscal crisis. PROMESA created a federal Oversight Board "to assist the Government of Puerto Rico, including instrumentalities, in managing its public finances." H.R. 5278, 114th Cong. (2016).

21.     On May 3, 2017, the Oversight Board filed a petition commencing a case under Title III of PROMESA on behalf of the Commonwealth. On May 21, 2017, the Oversight Board

filed a Title III petition on behalf of ERS. ERS's Title III filing triggered the operation of an automatic stay to protect ERS's property. 11 U.S.C. § 362(a); 48 U.S.C. § 2161(a).

### C. Changes to ERS and the Pension Mechanisms

22.     There is evidence that, even before PROMESA was passed, the Commonwealth was threatening to undermine the Bondholders' security interests by altering the manner in which ERS operated and diverting the flow of employer contributions away from the Fiscal Agent. On April 27, 2016, counsel for the Bondholders met with an advisor to the Commonwealth, James Millstein. At that meeting, Mr. Millstein informed counsel that the Commonwealth could begin taking steps to establish a new means of making pension payments in order to circumvent ERS's obligations to the Bondholders. *See* Bennett Dec. ¶ 3; Cunningham Dec. ¶ 3. Mr. Millstein even referred to this new system as a "pay as you go" system. Cunningham Dec. ¶ 3. And this, of course, is precisely what happened in the ensuing months.

23.     On October 14, 2016, the Oversight Board instructed Puerto Rico's Governor to provide a fiscal plan for the Commonwealth. Upon information and belief, the Oversight Board, the Commonwealth, ERS, and AAFAF soon began devising a plan to divert the Bondholders' collateral from ERS to the Commonwealth, and supplant the existing mechanisms for pension payments.[3] In an effort to mask their conduct, however, they gave the pension system a new name. They called it "Pay-Go," short for "pay-as-you-go."

---

[3] Financial Oversight and Management Board for Puerto Rico, Oversight Board Addresses Larger Fiscal Deficit at 2 (Dec. 20, 2016), https://drive.google.com/file/d/1AK2DSmKMHvI6xwpQ45NWkRWpiAMTwHpK/view; Letter from Financial Oversight and Management Board for Puerto Rico to Governor Alejandro García Padilla and Governor-Elect Ricardo Rosselló Nevares at 3 (Dec. 20, 2016), https://drive.google.com/file/d/1avnY3k0QO6VyK_XymgqOmDn57YOQlidi/view; Letter from Financial Oversight and Management Board for Puerto Rico to Governor Ricardo Rosselló Nevares at 2 (Jan. 18, 2017), https://drive.google.com/file/d/1vGhOSgr0qLHQhxQaHFoYxoia3q1qDogk/view.

### D.   Joint Resolution 188 and Act 106

24.     The Puerto Rico Legislative Assembly and the Oversight Board implemented the Pay-Go plan in two enactments during the summer of 2017: Joint Resolution 188 and Act 106. Joint Resolution 188 and Act 106 did not meaningfully change the existing mechanisms for pension payments under the ERS Enabling Act and the ERS Bond Resolution. The money to pay pensions continued to come mostly from employer contributions, and the same people continued to be entitled to pension benefits and in about the same amount. At bottom, the purpose and effect of Pay-Go was to divert the Bondholders' collateral to the Commonwealth and avoid payment on the ERS Bonds.

25.     The particulars of the two enactments are revealing. Joint Resolution 188, passed by the Puerto Rico Legislature on June 25, 2017, and adopted by the Oversight Board on behalf of the Governor as few days later:

    a.   required employers who previously made contributions to ERS to instead make those contributions directly to the Commonwealth General Fund, J.R. 188 § 4;

    b.   ordered ERS to sell its assets and transfer the net cash proceeds, along with any available funds, into the Puerto Rico Treasury Secretary's account, so the Commonwealth could make benefit payments to pensioners instead of ERS, *id.* § 1–3; and

    c.   directed AAFAF to "establish and implement all mechanisms necessary so that the Central Government, the Municipalities, and the Public Corporations may contribute to financing the 'pay-as-you-go' system," *id.* 188 § 5.

26.     On August 18, 2017, the Legislature enacted Act 106, which the Governor signed it into law on August 23. Act 106 carried out the plan mandated in Joint Resolution 188. The law recited that Joint Resolution 188 had "eliminated" "the employer contributions being made until now," and purported to set up a new "'Pay-Go' Fee" to be paid into the Accumulated Pensions Payment Account within the General Fund. Act 106 § 1.4, pp. 13–14. But the "'Pay-Go' Fee" was nothing new. It was simply another name for employer contributions:

- 11 -

    a.   Under Act 106, the entities that must pay the "'Pay-Go' Fee" are the same employers previously obligated to make contributions to ERS: "the Government, the Municipalities, Judicial Branch, Legislative Branch and the Public Corporations, *and other entities considered employers under the Puerto Rican Government Employee Retirement System*. . . ." Act 106 § 1.6(g), p. 15 (emphasis added).

    b.   Under Act 106, the "contributions" are the same: Both systems require employers to contribute enough to cover the cost of paying pensions. *Compare id.* § 2.1(b), p. 17 *with* 3 2008 P.R.A. § 781(a). Further, Act 106 allows employers who have outstanding employer-contribution debts to ERS to satisfy those obligations by paying Pay-Go Fees. *See* Act 106 § 2.5, p. 21; *id.* § 1.6(c), p. 14.

**E.**    **The Bondholders' Stay Relief Motion**

27.    On July 3, 2018, the Bondholders filed their Stay Relief Motion, seeking relief from the Bankruptcy Code's automatic stay or, in the alternative, adequate protection of their liens on property of ERS, in which the Commonwealth now claims an interest. As the First Circuit had previously held in *Peaje Investors*, 845 F.3d at 511, adequate protection is a constitutional imperative. Further, § 362(d)(1) of the Bankruptcy Code, incorporated into PROMESA, states that, a court "shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, *including the lack of adequate protection* of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (emphasis added).

28.    In support of the Stay Relief Motion, the Bondholders argued that, as secured creditors, they were entitled to adequate protection or relief from the automatic stay on account of actions by ERS and the Commonwealth that decreased the value of the Bondholders' collateral. In opposition, the Oversight Board, on behalf of the debtors, argued that the Bondholders were not entitled to relief from the automatic stay because of Joint Resolution 188 and Act 106. In particular, the Oversight Board argued that the Bondholders had no collateral to begin with because the new legislation had irrevocably altered the Bond Resolution's system for the remittance and handling of employer contributions. *See, e.g.*, *Debtor's Opp'n to Mot. of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from*

*Automatic Stay* at 12, Docket No. 3465 in Case No. 17-bk-03283 and Docket No. 292 in Case No. 17-bk-03566 (the automatic stay is "not at issue" because "Movants are complaining about legislation by the Commonwealth creating a new pension system that does not generate Employers' Contributions"). Since there was no collateral, the logic went, there was nothing that could be diminished in value.

## DISCOVERY SERVED

29.     The Bondholders' Stay Relief Motion was temporarily mooted on August 21, 2018, when the District Court determined that the Bondholders did not have perfected security interests. After the First Circuit reversed the District Court (*see* pp. 7-8, *supra*), the Bondholders renewed their motion, which is now set for a final hearing on May 21, 2019.

30.     In connection with their motion, the Bondholders renewed discovery that they previously had served in 2018 and also served new discovery requests upon ERS, the Commonwealth, AAFAF, and the Oversight Board as follows:

> a.   **Document Requests.** The Bondholders served document requests on ERS and the Commonwealth, and document subpoenas on AAFAF and the Oversight Board. Sooknanan Dec., ¶ 6, Ex. A, Ex. B, Ex. C, and Ex. D.
>
> b.   **Rule 30(b)(6) deposition notices.** The Bondholders served Rule 30(b)(6) deposition notices on ERS and the Commonwealth, and deposition subpoenas on AAFAF and the Oversight Board. Sooknanan Dec., ¶ 15, Ex. Z, Ex. AA, Ex. BB, and Ex. CC.
>
> c.   **Requests for Admission and Interrogatories.** The Bondholders served Requests for Admission and Interrogatories on ERS and the Commonwealth. Sooknanan Dec., ¶ 7, Ex. F, Ex. G, Ex. H, and Ex. I.

Among the matters as to which the Bondholders sought discovery were the facts surrounding the conception, drafting, enactment and implementation of Joint Resolution 188 and Act 106, and the creation of the Pay-Go system. Because the diversion of the Bondholders' collateral apparently

had been planned as early as April 2016, the Bondholders' document requests on those subjects asked for production of all responsive documents for the period beginning June 30, 2016.

31.      In response, ERS, the Commonwealth, AAFAF and the Oversight Board interposed broad objections. These included objections that the Bondholders' discovery sought matters that were irrelevant, unreasonably burdensome, or privileged. In particular, Respondents argued that (a) the range of dates specified in the Bondholders' document requests was excessive, (b) most of the materials requested were subject to claims of privilege and Respondents had no obligation to produce anything other than "categorical" privilege logs, (c) the Oversight Board should not have to comply with either the Bondholders' document subpoena or its Rule 30(b)(6) deposition subpoena, and (d) neither ERS nor the Commonwealth was obligated to provide anything other than the most general responses to the interrogatories the Bondholders had served.

32.      The parties held a 90-minute meet-and-confer telephone call on March 18, 2019. During that call, counsel for Respondents agreed to reconsider some of their objections to the Bondholders' discovery and to communicate their position by the close of business the next day. However, Respondents failed to respond to most of the points raised in the meet-and-confer and made few, if any, concessions on those points on which they did respond.  Because the parties were unable to resolve their differences, it became necessary to file this Motion.

## ARGUMENT

**I.      The Court Should Compel Respondents To Produce A Privilege Log That Provides The Information Necessary For The Bondholders And The Court To Assess Their Claims Of Privilege.**

33.      Respondents interposed broad objections to virtually all of the discovery the Bondholders served on the grounds that the materials and information the Bondholders seek are protected from discovery by the attorney-client privilege, the work product doctrine, the deliberative process privilege, and executive privilege. Their counsel further advised that they

object to providing detailed privilege logs and believe instead that they are required to prepare

only "categorical" logs. Sooknanan Decl. ¶¶ 29, 32(b).

34.     To date, the Bondholders have received only a single privilege log covering only a

handful of documents. On its face, the log, served by counsel for AAFAF on March 15, 2019, is

clearly inadequate. The March 15 privilege log:

    a.  Claimed privilege over 13 documents generated from May 10, 2017 to January 25,
        2018. *See* Sooknanan Dec. ¶ 29.

    b.  For 9 of the 13 entries, the description of the document is identical: "Legal analysis
        regarding pension reform for TRS, ERS and JRS reflecting legal advice and
        attorney impressions, including pre-decisional, deliberative communications on
        pension reform proposals." *Id.*

    c.  For 11 of the 13 entries, the privilege basis is broad and identical: "Attorney Client;
        Attorney Work Product; Deliberative Process." *Id.*

AAFAF's log is grossly deficient. There is no description of the nature or type of communication,

no information to permit the Bondholders to determine how the privilege applies to the involved

parties, and no information to permit the Bondholders to evaluate the validity of the privilege. *See*

*Neelon v. Krueger*, No. 12–cv–11198–IT, 2015 WL 1037992, at *3 (D. Mass. Mar. 10, 2015).

35.     Respondents have also informed the Bondholders that they "reserve the right to

provide a categorical [privilege] log, which is permitted under S.D.N.Y. Local Rule 26.2." *See*

Sooknanan Dec. ¶ 29, Ex. UU. Although a categorical log is not *always* appropriate under S.D.N.Y.

Local Rule 26.2, *Auto. Club of N. Y., Inc. v. Port Auth. of N. Y. & N. J.*, 297 F.R.D. 55, 60 (S.D.N.Y.

2013) (rejecting suggestion that Local Rule 26.2 "permits categorical logs in all cases"), the

Bondholders do not object to a categorical privilege log here, provided that it is sufficiently

detailed.

36.     Countless cases make it abundantly clear that even a categorical log must "provide

information about the nature of the withheld documents sufficient to enable the receiving party to

- 15 -

make an intelligent determination about the validity of the assertion of the privilege," as required

by Federal Rule of Civil Procedure 26(b)(5)(A).  *Auto. Club of N. Y.*, 297 F.R.D. at 59; *Neelon*,

2015 WL 1037992, at *3 (rejecting privilege log as inadequate where it, among other deficiencies,

"identifies the categories of withheld documents in broad strokes," "fails to describe the nature or

type of communication with specificity," "fails to explain how the privilege would apply to the

involved parties," and "fails to specify the claimed privilege with particularity or to specifically

identify the communicators involved"); *see also Norton v. Town of Islip*, CV 04-3079 (PKC) (SIL),

2017 WL 943927, at *9 (E.D.N.Y. Mar. 9, 2017) (log deficient where it "fail[ed] to provide enough

information to permit [recipient] to make an intelligent assessment of whether the documents were

created for the purposes of obtaining legal advice, in anticipation of litigation, or, as part of a

protected deliberative process"); *Mfrs. Collection Co., LLC v. Precision Airmotive, LLC*, No. 3:12-

CV-853-L, 2014 WL 2558888, at *5 (N.D. Tex. June 6, 2014) (holding categorical privilege logs

require identifying all individuals, authors, and recipients in documents and categories sufficiently

detailed to describe the nature of the documents or communications being withheld).[4]

---

[4] *See also Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-CV-01300-JMC, 2016 WL 6539344, at *3 (D.S.C. Nov. 3, 2016) (holding plaintiff's categorical privilege log did not allow defendant or the court to test the applicability of privilege protections as to each document sought to be withheld); *Fleisher v. Phoenix Life Ins. Co.*, 2013 WL 42374, at *3 (S.D.N.Y. Jan. 3, 2013) (similar); *In re Rivastigmine Patent Litig.*, 237 F.R.D. 69, 87 (S.D.N.Y. 2006) (similar); *Asghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15cv478, 2016 WL 8243171, at *3 (E.D. Va. Oct. 21, 2016) (similar); *First Horizon Nat'l Corp. v. Houston Cas. Co.*, No. 2:15-cv-2235-SHL-dkv, 2016 WL 5867268, at *7 (W.D. Tenn. Oct. 5, 2016) (similar); *Rosen v. Provident Life & Accident Ins. Co.*, 308 F.R.D. 670, 680 (N.D. Ala. 2015), *as amended* (July 10, 2015) (similar); *Nationwide Mut. Fire Ins. Co. v. Kelt, Inc.*, No. 6:14-cv-749-Orl-41TBS, 2015 WL 1470971, at *8 (M.D. Fla. Mar. 31, 2015) (similar); *SEC v. Yorkville Advisors, LLC*, 300 F.R.D. 152, 162 (S.D.N.Y. 2014) (similar); *McNamee v. Clemens*, No. 09 CV 1647 SJ, 2013 WL 6572899, at *3 (E.D.N.Y. Sept. 18, 2013), *clarified on denial of reconsideration*, No. 09 CV 1647 (SJ), 2014 WL 12775660 (E.D.N.Y. Jan. 30, 2014) (similar); *Wultz v. Bank of China Ltd.*, 979 F. Supp. 2d 479, 496-97 (S.D.N.Y. 2013) (similar); *Teledyne Instruments, Inc. v. Cairns*, No. 6:12-cv-854-Orl-28TBS, 2013 WL 5781274, at *16 (M.D. Fla. Oct. 25, 2013) (similar); *Franco-Gonzalez v. Holder*, No. CV 10-2211-DMG (DTBx), 2013 WL 8116823, at *6 (C.D. Cal. May 3,

37.     Consistent with this overwhelming authority, this Court has previously permitted categorical privilege logs provided they "include the following information: (i) the basis for withholding each category of documents; (ii) a sufficient description of the subject matter of the category of documents to permit [the recipient] to evaluate the claim of privilege; (iii) the date range for the set of documents in each category; and (iv) an aggregate list of all persons sending and receiving documents in each category." *In re Fin. Oversight & Mgmt. Bd. for P. R.*, 295 F. Supp. 3d 66, 71 (D.P.R. 2018) (Dein, M.J.).

38.     Accordingly, the Court should compel Respondents to include on any categorical privilege logs "information about the nature of the withheld documents sufficient to enable the [Bondholders] an intelligent determination about the validity" of any privilege asserted by the Respondents. *Auto. Club of N. Y.*, 297 F.R.D. at 59.

39.     Specifically, for any claim of deliberative process privilege, a categorical log "should [include] various pieces of information, including, but not limited to":

a. "a description of the decision to which the documents relate";
b. "the date of the decision";
c. "the subject-matter of the documents in issue";
d. "the nature of the opinions and analyses offered";
e. "the date that documents were generated";
f. "the roles of the agency employees who authored or received the withheld documents"; and
g. "the number of employees among whom the documents were circulated."

---

2013) (similar); *S.E.C. v. Somers*, No. 3:11-CV-00165-H, 2013 WL 4045295, at *2 (W.D. Ky. Aug. 8, 2013) (similar); *Chevron Corp. v. Salazar*, No. 11 Civ. 3718(LAK)(JCP), 2011 WL 4388326, at *2 (S.D.N.Y. Sept. 20, 2011) (similar); *SEC v. Collins & Aikman Corp.*, 256 F.R.D. 403, 416 (S.D.N.Y. 2009) (similar); *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 109 (S.D.N.Y.2008) (similar); *Coleman v. Schwarzenegger*, No. CIV S-90-0520 LKK JFM P, 2008 WL 2732182, at *3–4 (E.D. Cal. Jul. 8, 2008) (similar); *Estate of Manship v. United States*, 232 F.R.D. 552, 561 (M.D. La. 2005) (similar).

*Id.* at 60; *Bhatia-Gautier v. Roselló-Nevares*, Civil No. SJ2017CV00271, at 14 (P.R. Super. Ct.

Mar. 16, 2018) ("the government may not invoke the privilege in a generalized manner"); *id.* at

15-16 ("To benefit from the privilege over deliberative processes, the government must comply

with the following process: (1) the head of the agency that controls the information must officially

claim the privilege, after weighing it; (2) an agency official must provide the exact reasons why

the confidentiality of the information or documents is claimed, and (3) the government must

identify and describe the information or the documents it intends to protect.").[5]

40.     For any claim of attorney-client privilege, the log must "provide information

sufficient to show, at the least, the existence of each" of the following elements:

    a. whether "legal advice of any kind is sought";
    b. whether that legal advice was sought "from a professional legal adviser in his
       capacity as such";
    c. whether "the communications relat[ed] to that purpose";
    d. whether the communications were "made in confidence";
    e. whether the communications were made "by the client"
    f. whether those communications are, at the client's "instance permanently protected";
    g. whether that permanent protection extends to "disclosure by himself or by the legal
       adviser"; and
    h. whether the protection has been "waived" in any way.

*Neelon*, 2015 WL 1037992, at *3.

41.     The production of sufficient privilege logs is especially important here for three

reasons. *First*, Respondents have informed the Bondholders that they intend to withhold a

substantial number of documents on the basis of deliberative process privilege. *See* Sooknanan

Dec. ¶¶ 18, 29. Although briefing of the substantive privilege issues will occur in the second round

of motions to compel due on April 15, 2019, those papers will be of little use to the Court unless

---

[5] A certified unofficial translation of this case is included in an addendum to this Motion.

the Bondholders are in a position to evaluate Respondents' specific claims of deliberative process privilege in advance of that motion deadline.

42.     *Second*, Puerto Rico law is clear that when "claiming the confidentiality of official information"—as the Bondholders anticipate the Respondents will do—"the government must accurately and unequivocally prove the applicability of the privilege." *Bhatia-Gautier*, No. SJ2017CV00271, at 14. Indeed, under Puerto Rico law, "the scales [are] tipped against the privilege," and "the government shall—eventually—have the obligation to 'provide evidence and prove the existence of compelling interests that are more important than the values protected by this citizens' right to freedom of information.'" *Id.* at 14  (quoting E. L. Chiesa-Aponte, *Tratado de Derecho Probatorio* 308 (1998)). For that reason, "*the government may not invoke the privilege in a generalized manner*," and "the courts must be careful not to lightly grant any request for confidentiality by The State." *Id.* at 14 (emphasis in original). Respondents' categorical log thus must also contain sufficient detail for the Bondholders to evaluate any claim of privilege arising under Puerto Rico law.

43.     *Third*, Respondents have informed the Bondholders that they intend to withhold documents on the basis of the attorney-client privilege. *See* Sooknanan Dec. ¶¶ 12, 18. But there are serious questions whether those documents are the result of "legal advice" sought "from a professional legal adviser in his capacity as such," as they must be to be protected by the attorney-client privilege.  *See supra* ¶ 36 (quoting *Neelon*, 2015 WL 1037992, at *3). That is because it appears that attorneys for AAFAF also represent the Commonwealth and ERS even though those entities often have divergent interests, thereby implicating textbook conflict-of-interest issues. Most glaringly, the legislation at issue transferred ERS's assets to the Commonwealth. Respondents cannot explain how the same attorney can represent both the victim and the pillager.

- 19 -

*See In re Hector Rivera Cruz.*, 18 P.R. Offic. Trans. 955, 981–82 (P.R. 1987) ("Banning simultaneous representation of clients with conflicting interests has been a traditional element of the codes of ethics. This is aimed at preserving an attorney's autonomy and preventing any type of dilution of the loyalty owed to his client."). To make matters worse, the Oversight Board simultaneously represents both ERS and the Commonwealth in these Title III proceedings, and itself played a significant role in the enactment of Joint Resolution 188 and Act 106. Respondents must produce a log that establishes the basis of any attorney-client relationship, and permits the Bondholders to assess the validity of any claim of privilege.

44.     Consequently, the Court should compel AAFAF to produce a revised privilege log that meets the criteria set forth in ¶¶ 37-40, and order Respondents to produce privilege logs (categorical or document-by-document) that conform with the criteria set forth in ¶¶ 37-40.

## II.     The Court Should Compel ERS, The Commonwealth, And AAFAF To Conduct A Competent Search Of Documents Within An Appropriate Range Of Dates.

45.     On February 27, 2019, the Bondholders served document requests on ERS, the Commonwealth, and AAFAF and, in turn, were served with document requests by ERS. Sooknanan Dec. ¶ 6. The parties were able to reach agreement on many of the main issues involving discovery of electronically-stored information, including  search terms, an initial list of custodians, and an end date for the search.[6] But they disagree on an appropriate start date. *Id.* ¶ 30.

46.     Respondents have categorically refused to search for or produce any responsive documents created before January 1, 2017. Their justification for this position is that any such

---

[6] More than three weeks have elapsed and those entities have produced zero documents from electronically stored information. In fact, it appears that they have made no attempts to even begin data collection, despite the fact that the parties have reached agreement on certain search parameters. In contrast, the Bondholders have already reviewed more than 25,000 documents, and are continuing to review additional documents in response to ERS's document requests.

documents were created by individuals in the Commonwealth's prior political administration, and thus cannot be relevant to the current dispute. Sooknanan Dec. ¶ 33. This, of course, is a *non sequitur*. Moreover, as the Bondholders have told Respondents, they have reason to believe that relevant discussions regarding a new pension system to circumvent ERS's obligations to the Bondholders began as early as April 2016, under the prior administration. Sooknanan Dec. ¶ 32(a). Specifically, on April 27, 2016, counsel for the Bondholders met with James Millstein, then-advisor to the Commonwealth. *See* Bennett Dec. ¶ 3; Cunningham Dec. ¶ 3. Mr. Milstein informed counsel for the Bondholders that the Commonwealth could begin taking steps to replace ERS with a new pension system in order to circumvent ERS's obligations to the Bondholders, *see id.*, and even described the new system as a "pay as you go system," Cunningham Dec. ¶ 3.

47.     The public record also supports a start date for the search prior to January 1, 2017. The Oversight Board was appointed in August 2016, and shortly thereafter, it began working with and through the Commonwealth to change the pension system. *See supra* ¶ 23. Those efforts, which began in 2016, culminated in the enactment of Joint Resolution 188 and Act 106. *Id.*

48.     Because the Bondholders have established a good faith basis for a start date of June 30, 2016, the Court should compel ERS, the Commonwealth, and AAFAF to conduct a search using that date and the other agreed-upon search parameters.[7]

## III.    The Court Should Compel The Oversight Board To Produce Documents Responsive To The Bondholders' Requests.

49.     The Bondholders served a narrowly tailored document subpoena on the Oversight Board, with just six targeted requests. Sooknanan Dec. ¶ 6. The Oversight Board responded with

---

[7] The Bondholders note that in response to ERS's document requests, they collected and reviewed documents as far back as 2008 for some custodians.

an exceptionally broad set of objections, in which it refused to produce *any* documents at all in

response to four of the six requests. Sooknanan Dec. ¶ 12.

50.     The relevant document requests are Bondholders' third through sixth requests:

a.  **Request No. 3:** "All Documents Concerning the background, drafting, preparation,
enactment, passage, approval, implementation or effect of Joint Resolution 188,
including any Analysis of Joint Resolution 188's effect upon (a) Contributions,
(b) the Pledged Property, or (c) the ERS Bondholders' Security Interest";

b.  **Request No. 4:** "All Communications between You and anyone Concerning the
background, drafting, preparation, enactment, approval, implementation or effect
of Joint Resolution 188";

c.  **Request No. 5:** "All Documents Concerning the background, drafting, preparation,
enactment, passage, approval, implementation or effect of Act 106-2017, including
any Analysis of Act 106-2017's effect upon (a) Contributions, (b) the Pledged
Property, or (c) the ERS Bondholders' Security Interest"; and

d.  **Request No. 6:** "All Communications between You and anyone Concerning the
background, drafting, preparation, enactment, approval, implementation or effect
of Act 106-2017."

To each of these, the Oversight Board interposed identical, sweeping objections, none of which

justifies the Board's flat refusal to provide discovery.  *See* Sooknanan Dec. ¶ 12 & Ex. X.

51.     *First*, the Oversight Board objected to each request "to the extent that" it sought

privileged documents. But such a blanket privilege objection is improper: Federal Rule of Civil

Procedure 26(b)(5)(A) requires that a party which "withholds information otherwise discoverable

by claiming that the information is privileged . . . must . . . (ii) describe the nature of the documents,

communications, or tangible things not produced or disclosed—and do so in a manner that, without

revealing information itself privileged or protected, will enable other parties to assess the claim."

Fed. R. Civ. P. 26(b)(5)(A). "Under the specificity requirement, 'the objecting party must be

specific enough in its objections to support its privilege . . . ." *Vazquez-Fernandez v. Cambridge

College*, Inc., 269 F.R.D. 150, 160 (D.P.R. 2010) (quoting *Rivera v. Kmart Corp.*, 190 F.R.D. 298,

300 (D.P.R. 2000)). Thus, "the party relying on privilege needs to provide significant backup information." 8B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2213 (3d ed. 2018). The Oversight Board has provided none.

52.    *Second*, the Oversight Board objected to each request "to the extent that it seeks documents that are cumulative or duplicative of other discovery requests," and on the ground that it is "vague, overbroad, unduly burdensome and not proportional to the needs of the pending Motion and timeframe for discovery." But "generalized objections to an opponent's discovery requests are insufficient," including "[b]oilerplate objections that a request for discovery is overbroad and unduly burdensome." *Autoridad de Carreteras y Transportacion v. Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (internal quotation marks omitted) (quoting *Mancia v. Mayflower Textile Servs. Co*., 253 F.R.D. 354, 358 (D. Md. 2008)). Such objections are inadequate and "tantamount to asserting no objection at all." *Mancia*, 253 F.R.D. at 358 (quoting *Johnson v. Kraft Foods N. Am., Inc.*, 236 F.R.D. 535, 538 (D. Kan. 2006)). These general statements therefore do nothing to justify the Oversight Board's refusal to produce any documents responsive to these requests.

53.    *Third*, the Oversight Board objected to each request "on the grounds that the inclusion of the terms 'background,' 'preparation,' 'approval,' and 'implementation' render this Request overly broad, vague, and ambiguous." But the Oversight Board does not explain what it is about those words that somehow renders the request incomprehensible. The Oversight Board elsewhere explains that "in responding to these Requests . . . [it] will construe all words in accordance with their Ordinary English meaning." Sooknanan Dec. Ex. X, at 5, General Objection 6. It does not explain why it cannot do the same with these terms. *See Acinelli v. Blackmon*, No. ED CV 13-0381-ABC (PLA), 2014 WL 12700993, at *2 (C.D. Cal. Aug. 6, 2014) (granting

- 23 -

motion to compel because "the terms used by plaintiff in his discovery requests . . . can readily be responded to using the common and ordinary meanings of those terms, in the overall context of his allegations"); *In re Plascencia*, No. 08-56305-ASW, 2012 WL 2161412, at *10 (Bankr. N.D. Cal. June 12, 2012) (granting motion to compel because "[t]hese terms have plain, ordinary meanings, and if Defendants honestly cannot figure out what the terms mean[,] Defendants and Plaintiffs should meet and confer"). These objections, obviously, are frivolous.

54.     Moreover, even if the challenged terms were "overly broad, vague, [or] ambiguous," that still would leave each request's demand for documents and communications concerning the "drafting, . . . enactment, passage . . . or effect of Joint Resolution 188" and "Act 106-2017," because the Oversight Board does not contend that the words "drafting," "enactment," "passage" and "effect" are "overly broad, vague, [or] ambiguous." This objection therefore cannot possibly justify the Oversight Board's flat refusal to produce any documents at all.

55.     *Fourth*, the Oversight Board objected that the requests "seek information not relevant to any claim or defense concerning the" Stay Relief Motion. This, however, is simply wrong. These requests seek information about Joint Resolution 188 and Act 106, topics the Oversight Board itself put into issue in opposing the Bondholders' request for stay relief or adequate protection. *See supra* ¶ 28. And the Oversight Board was directly involved in creating and enacting Joint Resolution 188 and Act 106.

**IV.     The Court Should Compel The Oversight Board To Designate A Deponent In Response To Bondholders' Deposition Subpoena.**

56.     The Bondholders also served a narrow deposition subpoena on the Oversight Board, designating eight narrow topics for questioning. Sooknanan Dec. ¶ 7.

> (1) "The value of the property subject to the ERS Bondholders' Security Interests at any time, or any Analysis thereof, including without limitation on the following dates:
>      a.  May 21, 2017,

- 24 -

     b.  June 30, 2017,

     c.  August 23, 2017, and

     d.  Today";

(2) "The dissolution of ERS, including the sale, liquidation, transfer, depletion, or dissipation of ERS's assets";

(3) "The background, drafting, preparation, enactment, passage, approval, implementation or effect of Joint Resolution 188, including any Analysis of Joint Resolution 188's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest";

(4) "The background, drafting, preparation, enactment, passage, approval, implementation or effect of Act 106-2017, including any Analysis of Act 106-2017's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest";

(5) "The implementation of the Pay-Go for the Commonwealth's retirement systems, including (a) the amount of Pay-Go fees collected and (b) the source of Pay-Go fees collected";

(6) "Communications from January 1, 2016, to the present concerning the possible increase or decrease of Contributions";

(7) "The Commonwealth's Responses and Objections to Movants' Requests for Production of Documents, dated March 6, 2019"; and

(8) "ERS's Responses and Objections to Movants' Requests for Production of Documents, date March 6, 2019."

57.     The Oversight Board again responded with a broad set of objections, completely refusing to designate a deponent on any of the eight topics. Sooknanan Dec. ¶ 30. The Oversight Board's objections are again unfounded, and the Court should compel it to designate a witness to testify as to all eight topics.

58.     *First*, the Oversight Board objected to each topic "to the extent that" it seeks testimony protected by any applicable privilege. But as explained above, *supra* ¶ 51, such a general privilege objection is improper. And regardless, a privilege objection cannot justify the Oversight Board's blanket refusal to even designate a witness to testify about any of the topics in the deposition subpoena. Rather, "[i]n the deposition context, as at trial, the objection should ordinarily

be asserted when a question seeking privileged material is asked, and the questioner may explore the propriety of the objection with questions going to the availability of the privilege." Wright & Miller, *supra*, § 2016.1. Thus, "[a]s the First Circuit has recognized, in a slightly different context, the right to refuse to answer certain deposition questions does not entitle a deponent to 'refuse to appear for any deposition whatsoever.'" *Green v. Cosby*, 160 F. Supp. 3d 431, 439 (D. Mass. 2016) (quoting *Vazquez-Rijos v. Anhang*, 654 F.3d 122, 129 (1st Cir. 2011)); *see also, e.g.*, *Hinkley v. Liberty Power Corp.*, No. 1:18-mc-00203-JCN, 2018 WL 6184653, at *1 (D. Me. Nov. 27, 2018) ("If Petitioner intends to decline to answer relevant questions based on a privilege, Respondents should have the opportunity to ask the questions, assess the merit of the asserted privilege, and decide whether to challenge the assertion or to explore whether the fact finder could permissibly draw any inferences from the assertion of the privilege.").

59.   *Second*, the Oversight Board objected to each topic "to the extent that it calls for legal conclusions rather than factual testimony." The Bondholders agree that legal conclusions are an improper subject of deposition testimony. But the topics in the Bondholders' subpoena of the Oversight Board involve factual information, not legal conclusions:

   a.   Topic 1 concerns the value of property, which is a question of fact, not law. *See, e.g.*, *McMurray v. Comm'r*, 985 F.2d 36, 40 (1st Cir. 1993) ("The tax court's ruling with respect to fair market value is a factual finding . . . ."); *Penn. Ave. Dev. Corp. v. One Parcel of Land in D.C.*, 670 F.2d 289, 293 (D.C. Cir. 1981) ("Determination of the value of the condemned property is a question of fact for the District Court.").

   b.   Topic 2 concerns "the dissolution of ERS"—a purported factual event that presents numerous factual issues. *See, e.g.*, *Scholastic, Inc. v. Harris*, 259 F.3d 73, 87 (2d Cir. 2001) ("If—and when—the joint venture was dissolved is a prototypical fact question that a jury must determine."); *In re TPG Troy, LLC*, 492 B.R. 150, 158 (Bankr. S.D.N.Y. 2013) ("Alter ego liability is quintessentially a heavily fact driven theory of liability.").

   c.   Topics 3 and 4 concern the "background, drafting, preparation, enactment, passage, approval or implementation of" Joint Resolution 188 and Act 106–2017, respectively, and therefore address the factual, historic events that gave rise to those statutes, rather than legal conclusions about them.

      d.   Topic 5 concerns facts about how "Pay-Go"—the system that has replaced ERS—has been implemented, including "the amount of Pay-Go Fees collected" and "the source of Pay-Go Fees collected," each of which are facts, not legal conclusions.

      e.   Topic 6 concerns "Communications" about "the possible increase or decrease of Contributions"—such communications are factual, historical communications, not legal conclusions.

      f.   Topics 7 and 8 concern the Commonwealth's and ERS's responses to the Bondholders' Requests for Production of Documents. Here, too, the subject will be the factual assertions in those responses, and not any legal conclusions.

Because each topic seeks factual information, not legal conclusions, the Board's blanket objection does not justify its refusal to designate a deponent.

60.   *Third*, the Oversight Board objects to each topic as "overbroad to the extent it seeks testimony on topics that are outside the scope of the Motion." But the Oversight Board does not explain this relevance objection, and each of the eight topics seeks information that is directly relevant to the Stay Relief Motion:

      a.   Topic 1, the "value of the property subject to the ERS Bondholders' Security Interests," is the direct subject of the Stay Relief Motion, which seeks relief from the stay on the ground that the stay has impaired the value of that property.

      b.   Topic 2, the "dissolution of ERS, including the sale, liquidation, transfer, depletion, or dissipation of ERS's assets" is relevant for the same reason: the First Circuit held that the Bondholders have a perfected security interest in ERS's Pledged Property, and thus the dissipation of those assets is relevant to whether the stay has impaired the Bondholders' security interests. *See In re Fin. Oversight & Mgmt. Bd. for P. R.*, 914 F.3d at 704.

      c.   Topics 3 and 4, concerning Joint Resolution 188 and Act 106-2017, are relevant because, as explained above, *supra* ¶ 24–26, those pieces of legislation transferred the employer contributions in which the Bondholders have a security interest from ERS to the Commonwealth.

      d.   Topics 5 and 6, concerning Pay-Go and communications about changes in employer contributions, are relevant because they affect the value of the Bondholders' security interest in the employer contributions, which are now collected by means of Pay-Go Fees.

      e.   Topics 7 and 8, concerning ERS's and the Commonwealth's Responses and Objections to Movant's Requests for Production of Documents, are relevant

because the Oversight Board, by statute, is the representative of both ERS and the Commonwealth in these proceedings. *See* 48 U.S.C. § 2175.

61.     *Fourth*, the Oversight Board objects to each topic as seeking "testimony duplicative of testimony Movants seek from ERS, the Commonwealth, and/or AAFAF." But the deposition subpoena is for the Oversight Board as an entity, as allowed by Federal Rule of Civil Procedure 30(b)(6). And because "[a] 30(b)(6) witness testifies as a representative of the entity, his answers bind the entity and he is responsible for providing all the relevant information known or reasonably available to the entity." *See La. Pac. Corp. v. Money Mkt. 1 Inst'l Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) (quoting *Sabre v. First Dominion Capital, LLC*, No. 01-cv-2145BSJHBP, 2001 WL 1590544, at *1 (S.D.N.Y. Dec. 12, 2001)). "Accordingly, and with good reason, courts have rejected the argument that a Rule 30(b)(6) deposition is unnecessary or cumulative simply because individual deponents . . . have already testified about the topics noticed in the Rule 30(b)(6) deposition notice." *La. Pac. Corp.*, 285 F.R.D. at 487. While "no doubt some of [a designee's] testimony may be a re-hash of what's been covered elsewhere, . . . their testimony is the testimony of the corporation itself, and for that reason alone it may not be duplicative." *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-16, 2009 WL 2870622, at *2 (E.D. Wis. Sept. 2, 2009); *see also, e.g.*, *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("[C]ourts have allowed 30(b)(6) depositions in order to obtain testimony binding on the corporation even though that testimony was likely to essentially duplicate information which had already been stated in an individual deposition."). Moreover, the Bondholders cannot know in advance what questions will be within the knowledge of ERS, the Commonwealth, AAFAF, and the Oversight Board, respectively. That the Bondholders are seeking to ask those entities about similar topics does not mean that the entities' testimony will be duplicative. *See Mitchell Eng'g v. City & Cty. of S.F.*, No. C 08-04022 SI, 2010 WL 455290, at *1 (N.D. Cal. Feb. 2, 2010) ("Even if the general topics to be

- 28 -

addressed at the 30(b)(6) deposition will overlap to some extent, the questions asked and the answers given might not.").

62.     *Fifth*, the Oversight Board objects to each topic on the ground that it "is improperly directed at the Oversight Board." The Oversight Board offers no explanation of what it means by this objection. But, as explained above, *supra* ¶ 23, the Oversight Board was directly involved in the creation and enactment of Joint Resolution 188 and Act 106, which were enacted pursuant to a fiscal plan developed in part, and certified, by the Oversight Board. The Bondholders are entitled to discovery from the Oversight Board on these issues.

63.     *Sixth*, with respect to topics 3 and 4 only, the Oversight Board also objects that the terms "background," "preparation," "approval," and "implementation" are "overly broad, vague, and ambiguous." But as explained above, *supra* ¶ 53, those terms are have a plain, ordinary meaning, and even if they did not, any confusion over those terms cannot justify the Oversight Board's refusal to designate a witness in response to the other terms in this request.

64.     *Seventh*, with respect to topic 6 only, the Oversight Board objects that, by asking for communications beginning in January 2016, "it seeks testimony relating to events that occurred before its members were appointed on August 31, 2016." But that quibble over dates cannot justify the Oversight Board's refusal to designate *any* witness to testify even about communications that occurred after August 31, 2016. And regardless, the Oversight Board's obligation is to designate a witness to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). If the Oversight Board has no knowledge about any responsive pre-August 31, 2016, communications, then its designee need not testify about them. If, instead, the Oversight Board does have knowledge about responsive pre-August 31, 2016, communications, then the

unrelated fact that the Oversight Board was not appointed until August does nothing to excuse the

Board from designating someone to testify about those responsive, relevant communications.

## V.     The Court Should Compel ERS And The Commonwealth To Provide Full And Complete Responses To The Bondholders' Interrogatories.

65.     The Bondholders propounded to ERS and the Commonwealth only two

interrogatories, both of which go to the heart of the Stay Relief Motion:

> a.   **Interrogatory No. 1:** All manners in which You maintain the ERS Bondholders'
> Security Interest has been, is being, or will be protected from a decrease in value
> during the pendency of the stay imposed by § 362 of the Bankruptcy Code.
>
> b.   **Interrogatory No. 2:**  Whether, how and to what extent the ERS Bondholders have
> been, are, or will be able to exercise their remedies against the Pledged Property
> during the pendency of the stay imposed by § 362 of the Bankruptcy Code. .

*See* Sooknanan Dec. ¶ 7, Ex. F, Ex. G.  Rather than providing good faith responses, however, ERS

and the Commonwealth each served pages of identical objections that they later refused to

withdraw. *See* Sooknanan Dec. ¶ 16, 33.

66.     As to Interrogatory No. 1, the Commonwealth flatly refused to respond, interposing

numerous general and specific objections. For its part, ERS lodged the same objections followed

by a response that was, ironically, non-responsive. With respect to Interrogatory No. 2, both parties

objected in full and did not provide any answers whatsoever, again repeating the same objections

they made with respect to Interrogatory No. 1. All objections should be overruled, and the Court

should compel ERS and the Commonwealth to provide amended their answers to the Bondholders'

two interrogatories.

67.     **General Objections.** Both ERS and the Commonwealth assert a series of identical,

across-the-board objections, such as vagueness, overbreadth, and burden. But it is clear that such

generalized objections are insufficient under the Federal Rules, which require that "the grounds

for objecting to an interrogatory . . . be stated *with specificity*." Fed. R. Civ. P. 33(b)(4) (emphasis

added). Conclusory statements that interrogatories are vague, overly broad, or unduly burdensome are inadequate; a party resisting discovery must specifically show *how* each interrogatory is vague, overly broad, or unduly burdensome. *See Transcore Atl., Inc.*, 319 F.R.D at 430–31 (overruling general objections where party "did not provide any additional information to establish a colorable claim of overbreadth"); *Moreno Rivera v. DHL Glob. Forwarding*, 272 F.R.D. 50, 55 (D.P.R. 2011) ("A party may not state bald and generic reasons for its objections; specificity is required."); *Mancia*, 253 F.R.D. at 358 ("[B]oilerplate objections that a request for discovery is overbroad and unduly burdensome . . . are improper unless based on particularized facts.") (internal quotation marks and citations omitted). For this reason, the general, conclusory objections should be overruled because they are tantamount to not making any objections at all. *See Walker v. Lakewood Condo. Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999).

68.  **Legal Conclusions.** ERS and the Commonwealth also object on the ground that the interrogatories call for legal conclusions. But the Federal Rules expressly state that "[a]n interrogatory is *not* objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact." Fed. R. Civ. P. 33(a)(2) (emphasis added). The Bondholders' interrogatories seek precisely that—they request ERS's and the Commonwealth's position on whether, how, and to what extent the Bondholders' interests are protected from a diminution of value during the imposition of the automatic stay (Interrogatory No. 1), and they probe the contention that the Bondholders are able to protect those interests against any such diminution (Interrogatory No. 2). In short, these requests are permissible "contention interrogatories." *See In re Textron, Inc. ERISA Litig.*, No. 09-383ML, 2012 WL 12876091, at *2 (D.R.I. Apr. 11, 2012) (finding that "a reasonable reading" of the interrogatories at issue was that they are permissible contention interrogatories, particularly where the interrogatories used terms

- 31 -

such as "maintain"). Moreover, answers to these interrogatories will aid in limiting the subject of controversy. *See, e.g., Hodgson v. Adams Drug Co.*, No. 4512, 1971 WL 844, at *1–3 (D.R.I. Aug. 16, 1971) (overruling party's "legal conclusion" objections to interrogatories where the interrogatories sought information regarding the parties' legal contention).

69.     **Privilege Objections.** ERS and the Commonwealth next object to the two interrogatories on no less than five different privilege grounds. They object "to the extent [the interrogatories] seek[] information protected by the Attorney-Client Privilege, the Attorney Work-Production Doctrine, the Executive and Deliberative Process Privileges, the Common Interest Privilege, or any other applicable privileges, doctrines, or immunities protecting information from disclosure." No further information is provided. ERS and the Commonwealth do not attempt to demonstrate how or why any of the stated privileges applies to the interrogatories.

70.     Parties cannot avoid their discovery obligations by making blanket assertions of privilege. As pointed out before, such assertions deprive the Bondholders (and this Court) the opportunity to test the merits of the privilege claims and amount to improper objections. A party making such blanket privilege objections "basically shift[s] the burden to the [requesting party] and the Court to determine the applicability of any of their objections." *In re Adkins Supply, Inc.*, 555 B.R. 579, 587 (Bankr. N.D. Tex. 2016). "This sort of obfuscation and gamesmanship frustrates the purposes of discovery, wastes time and resources, and derogates the search for truth." *Id.* (overruling general objections to interrogatories based on privilege).

71.     It is the burden of ERS and the Commonwealth to make their privilege claims with specificity—not the Bondholders' burden to guess why five different ostensible privileges might apply. ERS and the Commonwealth must describe the nature of the documents or communications not disclosed in a manner that—without revealing the privileged information itself—will enable

the Bondholders and the Court to assess the applicability of the stated privileges. *Id*. at 587. *See also Bramante v. McClain,* No. SA-06-CA-0010 WWJ, 2007 WL 102314, at *1 (W.D. Tex. Jan. 8, 2007) (stating that a party asserting privilege in response to an interrogatory must invoke the privilege with specificity and bears the burden of demonstrating that the information sought is privileged); *Transcore Atl., Inc*., 319 F.R.D. at 430 (overruling party's privilege objections to interrogatories where it failed to provide argument in support); *Bourne v. Arruda*, No. 10-cv-393-LM, 2012 WL 2159613, at *1 (D.N.H. June 12, 2012) (finding general privilege objections to interrogatories unsustainable absent specific identification of what privilege applied to the particular discovery sought). They have failed to do this. Instead, they simultaneously assert five different privileges without any explanation of how each—or any—of them relate to the discovery sought.

72.    Not only did ERS and the Commonwealth fail to assert their privilege objections with specificity in the first instance, they then completely ignored the Bondholders' request for this information. Specifically, the Bondholders asked them to clarify whether the privilege objections covered communications with AAFAF, the Oversight Board, the Commonwealth or ERS respectively, or others. The Bondholders further requested explanations regarding:

    a. ERS's and the Commonwealth's basis for applying the privilege objections to communications between or among AAFAF, the Oversight Board, and the Commonwealth or ERS respectively, which often have divergent interests;

    b. whether the privilege objections also extend to communications that include third parties, such as consultants and professionals;

    c. which of the privilege objections (the Attorney-Client Privilege, Attorney Work-Product Doctrine, the Executive and Deliberate Process Privileges, the Common Interest Privilege, or some other undisclosed privilege) actually applies to the communications responsive to these interrogatories and to what category of communications any such privilege applies; and

> d.  the nature of the communications or other information that they are claiming to be privileged, with sufficient detail to enable the Bondholders to assess the privilege claim. Sooknanan Dec. ¶ 28, Ex. ZZ.

Again, ERS and the Commonwealth did not respond.

73.    Because Debtors have failed to provide any specifics regarding their privilege claims or viable arguments in support of their privilege assertions, the Court should overrule their privilege objections. *See Transcore Atl., Inc*., 319 F.R.D. at 430 (overruling privilege objections to interrogatories because privilege was simply asserted without providing argument in support of the objections); *Bourne,* 2012 WL 2159613 at *1, at *2–3 (granting motion to compel where objecting party did not put forth a "valid, verifiable claim of privilege"); *Miles v. Funk*, No. 05-CV-56-JM, 2006 U.S. Dist. LEXIS 35717, at *2 (D.N.H. May 31, 2006) (granting motion to compel discovery in response to an interrogatory where party resisting the discovery did not show how it was protected by attorney-client privilege).

74.    **Duplicative Objection.** The Commonwealth also specifically objects to the interrogatories on the ground that they are duplicative of interrogatories served on ERS. This is not a valid objection. A party cannot evade its discovery obligations by hiding behind another party. *Rediker v. Warfield*, 11 F.R.D. 125, 128 (S.D.N.Y 1951) (holding interrogatories propounded on two defendants were not duplicative because the fact that a party obtained discovery from one defendant does not foreclose discovery with respect to other defendants). Moreover, the Commonwealth and ERS—who occupied directly conflicting positions when Pay-Go was imposed on ERS—will not necessarily have the same responses to the interrogatories, and the Bondholders are entitled to know what each says.

75.    **ERS's Insufficient Response to Interrogatory No. 1.** Finally, after asserting various objections to Interrogatory No. 1, ERS responded that (i) it has maintained or paid the Bondholders amounts from the Prepetition Segregated Account, (ii) it no longer receives employer

contributions under the ERS Bond Resolution, and (iii) the Pay-Go fees are now being remitted to the Commonwealth instead, but that the Bondholders have no right to these fees. Sooknanan Dec. ¶ 16, Ex. F. This answer is incomplete, if not intentionally evasive. It fails to answer whether ERS contends that the Bondholders' security interest *is* being protected or *will be* protected from a decrease in value during the pendency of the automatic stay. An evasive or incomplete answer shall be treated as a failure to answer at all. *See* Fed. R. Civ. P. 37(a)(4). Thus, the Court should compel ERS to amend its response to Interrogatory No. 1 to provide a more complete response.

## **CONCLUSION**

For the reasons set forth above, this Court should compel (i) Respondents to produce a privilege log that provides the information necessary for the Bondholders and the Court to assess their claims of privilege; (ii) ERS, the Commonwealth, and AAFAF to conduct a competent search of documents within an appropriate range of dates; (iii) the Oversight Board to produce documents responsive to the Bondholders' requests; (iv) the Oversight Board to designate a deponent in response to Bondholders' deposition subpoena; and (v) ERS and the Commonwealth to provide full and complete responses to the Bondholders' interrogatories.

In San Juan, Puerto Rico, today March 21, 2019.

By:

/s/ Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

/s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
James M. Gross (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com
jgross@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon
Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree-Forrest Multi-Strategy, LLC
(Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P.,
Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Cheryl T. Sloane

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*

# ADDENDUM

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO**
**COURT OF FIRST INSTANCE**
**SAN JUAN JUDICIAL CENTER**
**SUPERIOR COURT**

| | |
|---|---|
| HON. EDUARDO BHATIA-GAUTIER<br>In his capacity as Minority Leader for the Popular Democratic Party in the Senate of Puerto Rico<br><br>**Plaintiff**<br><br>v.<br><br>HON. RICARDO ROSSELLÓ-NEVARES, in his capacity as Governor of the Commonwealth of Puerto Rico and the COMMONWEALTH OF PUERTO RICO<br><br>**Respondent** | **CIVIL NO.:**<br>SJ2017CV00271<br><br>**SESSION HALL:**<br>907<br><br>**RE:**<br><br>*MANDAMUS* |

> "[E]nabling governmental secrecy invites
> and leads to governmental arbitrariness and
> indifference. Therefore, it is important for citizens
> to be informed in order to promote informed and
> intelligent citizen participation, which is essential
> for democracy."[1]

# JUDGMENT

## I.

An issue of high public interest, as identified by our Supreme Court, has been brought before us on this occasion for the purposes of determining whether the draft Fiscal Plan developed by the Government of Puerto Rico (the Commonwealth) and submitted to the Financial Oversight and Management Board (the Board) for review on April 30, 2017, is a public document.[2] Secondly, it is for us to determine whether the Commonwealth produced sufficient evidence or "specific justifications"[3] to support the privileged and non-public nature of the aforementioned document. Should that be the case, the request of the plaintiff, Honorable Eduardo Bhatia-Gautier, Senator and Minority Leader for the Popular Democratic Party at the Senate of Puerto Rico (the plaintiff) for disclosure of the aforementioned document would be inadmissible.

In short, it is for us to decide whether the Commonwealth met its burden of proof to support the claimed privileges and, consequently, if it placed this Court in a position to determine whether the

---

[1] (Emphasis supplied). Luis F. Estrella-Martínez, *Acceso a la Justicia: Derecho Humano Fundamental,* 1ra Edición, Puerto Rico, Ediciones SITUM, 2017, p. 238.

[2] Note that the plaintiff is only requesting the draft Fiscal Plan submitted to the Board. The plaintiff has never requested any supporting documents, recommendations, decisions, or statements from Government staff members and/or advisors in connection with the deliberative process for the development of the draft Fiscal Plan.

[3] See: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti-Cintrón,* dated September 15, 2017, DPR, 2017 TSPR 173 (2017), p. 41. Court order received on December 13, 2017.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                    2
*Judgment*

disclosure of the proposed Fiscal Plan developed by the Commonwealth and submitted to the

Board for its review is inadmissible.[4]

Upon receiving the memoranda of law filed by the parties, with which the parties placed

the Court in a position to decide whether the document at issue is a public document, and, if so,

to determine whether the invoked privileges are admissible, and given the balance of interests

involved, this Court finds that the draft Fiscal Plan is, first of all, a public document and,

secondly, that the Commonwealth did not describe the document in a detailed and specific

manner. For this reason, this Court concludes that the Commonwealth **did not provide

sufficient evidence or specific justifications** to conclude that the information contained in the

draft Fiscal Plan developed by the Governor and submitted to the Board is privileged

information.   Therefore, due to the lack of valid justifications, as well as the submission of

vague and general allegations to claim the confidentiality of the document, this Court hereby

orders the disclosure of the draft Fiscal Plan submitted to the Board, for the balance has tipped

in favor of the constitutional right of access to information.

## II. PROCEDURAL BACKGROUND

On July 26, 2017, this Court issued a *Decision and Order*, providing that:

> [A]fter the oral arguments, the plaintiff stated for the record that the
> information whose disclosure is requested is <u>only</u> the Draft Budget submitted to
> the Board on April 30, 2017. That is, the amounts, figures, or budget items
> allocated to specific governmental entities or to cover certain expenditures. The
> plaintiff reiterated and clarified for the record that his request **does not include
> the Draft Budget's supporting documentation**. **In other words, the plaintiff <u>is
> not</u> requesting in his *writ of Mandamus* any information that may contain
> recommendations, decisions, or expressions made by personnel and/or
> advisors of the Executive Branch with regard to the amounts and the reasons or
> the deliberative process related to its allocation.**
>
> For his part, the plaintiff held that the information is covered by the
> executive privilege due to it being a working document or draft subject to
> changes that contains information on the deliberative process or information
> regarding the Executive Branch's policymaking.
>
> However, upon questioned by the Court and according to the applicable
> case studies, the respondent provided no details as to why the requested
> information warrants the application of the executive privilege. Accordingly, at
> this time, the respondent failed to establish in detail the reason why the
> disclosure of the Draft Budget submitted to the Board is inadmissible.
> Nevertheless, upon invoking of the executive privilege, the respondent is
> **ORDERED** to file, within 10

---

[4] The Supreme Court delimited the dispute and, to this end, specifically provided that "the real controversy in the
case [is] whether the Commonwealth can meet its burden of proof in order to support the privileges claimed." See:
*Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, p. 39.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          3
*Judgment*

days, the Draft Budget submitted to the Board on April 30, 2017, for its examination in chambers. Said Draft Budget **shall be submitted to the attention of the Court in a sealed envelope identified as "Confidential," and it shall contain the signature of the custodian of the information or the respondent's legal representative, so as to ensure the envelope's seal.** In addition, the respondent shall file a motion **explaining <u>in detail</u> the reasons why the requested information, or part of said information, qualifies for the application of the invoked privileged.** As argued in today"s hearing, the respondent shall further explain why said information is part of a "deliberative" or of a "public policymaking" process. The Draft Budget shall not have to  be filed in the SUMAC system in order for the Court to consider this *Order* as complied with. The respondent is responsible for correctly filing the information in order to preserve its confidentiality. The Clerk of the Court shall take all measures she may deem necessary to guarantee the secrecy of the information submitted in accordance with this **ORDER**.[5]

The respondent appealed the decision before the Court of Appeals by filing an *Urgent Motion for Order in Aid of Jurisdiction* and a *Writ of Certiorari*.[6] The intermediate appellate court denied the issuance of the requested order and Dismissed the motion in aid of jurisdiction.[7] Subsequently, the respondent filed a *Writ of Certiorari* and an *Urgent Motion for Order in Aid of Jurisdiction* before the Supreme Court.[8]

On August 7, 2017, the Supreme Court issued a *Decision* ordering a stay of "the proceedings in the case until this Court provides otherwise. This, to prevent the filed appeal from becoming academic."[9]

On September 15, 2017, the Supreme Court issued its *Opinion* and provided that:

> [W]ithout further proceedings and pursuant to Rule 50 of the Rules of this Court, *supra*, the requested *writ of certiorari* is issued and **the Decision and Order issued by the Court of First Instance on July 26, 2017 <u>with regard to the presentation of the document in dispute for its examination in</u> chambers is partially repealed. <u>Besides that, the Decision and Order is confirmed in all other non-relevant respects.</u>** The ordered stay is annulled and the case is returned to the primary court for the continuation of proceedings as specified in this Opinion.[10]

On December 12, 2017, the Supreme Court"s [11] *Mandate* was issued. In accordance with said Mandate, on December 13, 2017, this Court issued the following *Order*:

---

[5] Emphasis and underlining in the original.
[6] Annotations 33 and 34 of the digital SUMAC file.
[7]  Annotation 35 of the digital SUMAC file.
[8]  Annotation 37 of the digital SUMAC file.
[9] Annotation 39 of the digital SUMAC file.
[10] Italics in the original. Emphasis supplied.
[11] Annotation 48 of the digital SUMAC file.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          4
*Judgment*

Upon receiving the Order, and in accordance with the literal meaning of the Opinion on page[s] 40 and 41, the parties are ordered to submit their respective Memoranda of Law in order to put the Court in a position to determine whether the document is public in nature and, if so, whether the claimed privileges are admissible. "Only then, and considering the balance of interests involved, would the Court be able to determine whether or not the claimed privileges are admissible." The Memoranda of Law shall be filed simultaneously within a 30-day period, which ends on January 16, 2018. A final deadline to reply shall be granted, should the Court consider it necessary.[12]

After a request to this end, the Court granted an extension that expired on January 23, 2018. On that date, the parties submitted their respective *Memoranda of Law* and the issue was considered as filed.

## III. FINDINGS OF FACT

1. The plaintiff is Honorable Eduardo Bhatia-Gautier, Senator and Minority Leader for the Popular Democratic Party in the Senate of Puerto Rico.[13]

2. Honorable Ricardo Rosselló-Nevares is the Governor of Puerto Rico and was exclusively sued in his official capacity.[14]

3. On June 30, 2016, the United States Congress passed Public Law 114-187, known as the PROMESA Act.[15]

4. On June 25, 2017, the Legislative Assembly passed the budget resolutions, Joint House Budget Resolutions 186, 187, 188, and 189.[16]

5. In a letter dated June 30, 2017, the Board notified the Governor, the President of the Senate, and the House Speaker that, in a meeting held on that same date, and pursuant to the provisions of Sections 202(d)(2) and 202€(3) of PROMESA, the Board had unanimously passed a resolution whereby they adopted the General Budget of the Commonwealth of Puerto Rico, which was then submitted to the Governor and the Legislative Assembly.[17]

---

[12] Annotation 19 of the digital SUMAC file.
[13] This fact was stipulated by the parties. See: Annotation 23 of the digital SUMAC file.
[14] Id.
[15] Id.
[16] Id.
[17] Id.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

*Dear Governor Rosselló Nevares, Senator Rivera Shatz, and Representative Méndez*

Núñez:

SJ2017CV00271                                                                                     5
*Judgment*

> *Pursuant to Resolution #3, a copy of which is attached hereto as Exhibit A (the "Resolution"), adopted unanimously at the June 30, 2017 public meeting of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget for the Commonwealth of Puerto Rico, consisting of the documents attached hereto as Exhibits B, C, D, and E (collectively, the "Territory Budget");** and (2) issues to the Governor and the Legislature this certification that the Territory Budget is a compliant budget as set forth in the Resolution. Attached as Exhibits F and G are versions of the Territory Budget indicating the revisions pursuant to section 202(d)(2) of PROMESA.*
>
> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.[18]*

6.  In a letter dated July 13, 2017, the Board notified the Governor and the Legislative Assembly about the adoption of an amended Budget, which was adopted and certified by the Board. The Board provided that, under Sections 202(d)(2) and 202 (e)(3) of the PROMESA Act, the aforementioned Budget was considered as approved by the Governor and the Legislative Assembly, and that it came into force on July 1, 2017.

> *Dear Governor Rosselló Nevares, Senator Rivera Schatz, and Representative Méndez Núñez:*
> *Pursuant to a Unanimous Written Consent, a copy of which is attached hereto as Exhibit A (the "UWC"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget, as corrected, for the Commonwealth of Puerto Rico,** consisting of the documents attached hereto as Exhibits B, C, D and E (collectively, the "Territory Budget"); and (2) issues to the Governor and the Legislature this certification that the Territory Budget, as corrected, is a compliant budget as set forth in the UWC. Attached as Exhibits F and G are redline versions of the Territory Budget indicating the corrections.*
>
> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget, as corrected, shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.*
>
> *This certification supersedes and replaces the Compliance Certification for the Territory Budget issued by the Oversight Board dated June 30, 2017. The Oversight Board looks forward to working with the Governor and the Legislature to accomplish the requirements and goals of PROMESA for the benefit of the people of Puerto Rico and its creditors and other stakeholders.*

7.  The General Budget for Fiscal Year 2017-2018 has been approved and has been in force since July 1, 2017.

---

[18] (Emphasis supplied.) See: https://juntasupervision.pr.gov/index.php/en/documents/ (Last visit: March 16, 2018).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                        6
*Judgment*

8.  On April 30, 2017, Governor Rosselló-Nevares submitted to the Board the Fiscal Plan, developed in accordance with Section 202 of the PROMESA Act.[19]

9.  On May 8, 2017, the Board acknowledged receipt of the fiscal plan and granted the Governor 14 additional days to amend and improve the document prior to approving it or identifying violations. The letter states:

> *By letter dated March 22, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), pursuant to PROMESA § 202(a), established May 8, 2017 as the date to approve the Governor's proposed budget or to notify the Governor of violations and provide descriptions of all necessary corrective actions. We have received a **working draft** of the proposed budget and are reviewing the submission and its completeness. In this light, the Board will provide the Governor an additional 14 days to amend and improve the submission before it approves it or identifies violations.*[20]

10. On June 2, 2017, the Board partially approved the Fiscal Plan developed by the Governor.[21]

11. The respondent failed to provide evidence on the document developed by the Governor. In other words, how many pages does it have, whether it contains memoranda and communications between the Governor and his aides, advisors, etc.

**CONCLUSIONS OF FACT**

**a. PUERTO RICO'S FISCAL POLICY AND PROMESA**

The drafting of the budget constitutionally requires that, at the beginning of each ordinary session, the Executive Branch present a message regarding the status of the public coffers, as well as a report detailing "the conditions of the Treasury of Puerto Rico and the proposed expenditures for the following financial year."[22] The above-referenced report shall detail the proposed fund allocations and shall establish the revenue collection mechanisms to subsidize the estimated expenses.[23]

Once the Legislative Branch has received and examined the Governor's report, said legislative body shall proceed to pass the law or joint budget resolution.[24] Therefore, it is the Legislative Branch's

---

[19] *Supra.* The respondent also acknowledged this fact. See: *Urgent Motion to Reiterate Dismissal,* filed on June 26, 2017.
[20] (Emphasis supplied.) See: https://juntasupervision.pr.gov/index.php/en/documents/ (Last visit: February 12, 2018).
[21] Document stipulated by the parties. See: *Joint Motion in Compliance with Order* filed on June 25, 2017.
[22] Art. IV, Sec. 4, Const. ELA, 1 LPRA.
[23] For illustrative purposes, see *Finca Matilde, Inc. v. Estado Libre Asociado de Puerto Rico,* KLCE201601001, *Judgment* entered by the Court of Appeals on August 31, 2016.
[24] Art. III, Sec. 17, Const. ELA, *supra.*


    I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    7
*Judgment*

duty to determine which of the Governor's recommendations shall be approved, dismissed, or amended.[25] Also, as part of its prerogatives, the Legislative Branch may include new issues not previously considered in the report of Executive Branch.[26]

After the Legislative Branch's participation, the general budget law is considered as submitted to the consideration of the Governor.[27] At that time, the Governor has the power to reduce or remove any budget item.[28] "In approving any appropriation bill that contains more than one item, the Governor may eliminate one or more of such items or reduce their amounts, at the same time reducing the total amounts involved."[29] Likewise, the Governor has the power to approve or disapprove the joint resolutions and bills passed by the Legislative Assembly.[30]

With relevance to the present case, Section 201 of PROMESA **alters** the process described above, by which the governmental budget is traditionally approved.[31] This is the reason for the dispute that has been brought before us, since PROMESA requires that the report that must be prepared pursuant to Art. IV, Sec. 4, Const. ELA, *supra*, be sent to the Board **before it is sent to the Legislative Branch, as required under our constitutional system.[32]**

Based on its constitutional power to lay down and establish all the rules and regulations that may be necessary for the territories of the United States of America, Congress passed the law known as the *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA).[33] The Board was created under this law to establish a method whereby the Commonwealth of Puerto Rico and its instrumentalities achieve fiscal responsibility and access to capital markets.[34]

---

[25] *Finca Matilde, Inc. v. Estado Libre Asociado De Puerto Rico,* supra.
[26] Id.
[27] Id.
[28] Id.
[29] Art. III, Sec. 20, Const. ELA, *supra.*
[30] Art. IV, Sec. 4, Const. ELA, *supra.*
[31] Section 201 PROMESA, 48 USCA sec. 2142
[32] See: *Bhatia Gautier v. Rossello Nevares, Opinion in Agreement issued by Associate Judge Mr. Kolthoff Caraballo* and the *Dissenting Opinion issued by Associate Judge Mr. Estrella-Martínez* on September 15, 2017,___DPR___, 2017 TSPR 173 (2017).
[33] U.S. Const., art. IV, sec. 3; 48 USC sec. 2102 *et seq.*
[34] PROMESA, Section 101 (c), 48 USCA sec. 2121 (c). see, also, the *Statement of Motives* of Law  No. 5-2017, *Puerto Rico Financial Emergency and Fiscal Responsibility Act* (Law No. 5), and *Brigade Leveraged Capital Struturs Fund Ltd. V. García-Padilla,* 201 f. Supp. 3d 223 (1st Cir.2016).

   I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          8
*Judgment*

Regarding the nature of the Board, Section 101 (c) of PROMESA provides that it shall be created "hall be created as an entity within the territorial government for which it is established" and that "it shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government."[35] **Furthermore, it is an autonomous entity upon which neither the Executive Branch nor the Legislative Branch may exercise any control, supervision, oversight, or review over the Oversight Board or its activities.[36]**

As for the governmental budget, Section 201 of PROMESA provides that "the Governor **may not** submit **to the Legislature a Territory Budget under Section 202 this title for a fiscal year unless the Oversight Board has certified the Territory Fiscal Plan for that fiscal year** in accordance with this subsection."[37] The process to certify the fiscal plan developed by the Governor shall entail a **review** by the Board of the document submitted by the Governor.[38] The process is as follows:

> The Oversight Board shall **review** any **proposed** Fiscal Plan **to determine whether it satisfies the requirements set forth in subsection (b)[[39]] and, if the Oversight**

---

[35] PROMESA, Section 101 (c), 48 USCA sec. 2128.
[36] PROMESA, Section 108 (c), 48 USCA sec. 2128.
[37] PROMESA, Section 201 (c), *supra*.
[38] *Supra*.
[39] Section 201 (b) provides:
   (b) REQUIREMENTS. —
   (1) IN GENERAL. — A Fiscal Plan developed under this section shall, with respect to the territorial government or covered territorial instrumentality, provide a method to achieve fiscal responsibility and access to the capital markets, and—
   (A) provide for estimates of revenues and expenditures in conformance with agreed accounting standards and be based on —
   (i) applicable laws; or
   (ii) specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;
   (B) ensure the funding of essential public services;
   (C) provide adequate funding for public pension systems;
   (D) provide for the elimination of structural deficits;
   (E) for fiscal years covered by a Fiscal Plan in which a stay under subchapters III or IV is not effective, provide for a debt burden that is sustainable;
   (F) improve fiscal governance, accountability, and internal controls;
   (G) enable the achievement of fiscal targets;
   (H) create independent forecasts of revenue for the period covered by the Fiscal Plan;
   (I) include a debt sustainability analysis;
   (J) provide for capital expenditures and investments necessary to promote economic growth;
   (K) adopt appropriate recommendations submitted by the Oversight Board under section 2145(a) of this title;
   (L) include such additional information as the Oversight Board deems necessary;
   (M) ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under subchapter III, or a Qualifying Modification approved under subchapter VI; and
   (N) respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to June 30, 2016.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

> **Board determines in its sole discretion that the proposed Fiscal Plan —**
> **(A)  <u>satisfies such requirements</u>, the Oversight Board shall <u>approve</u> the proposed Fiscal Plan; <u>or</u>**
> **(B) <u>does not satisfy such requirements</u>, the Oversight Board shall <u>provide to the Governor—</u>**
> **(i)  a notice of violation that includes recommendations for revisions to the applicable Fiscal Plan; and**
> **(ii)  an opportunity to correct the violation in accordance with subsection (d)(1).**[40]

Note that, according to the language of the above-cite provision, the Board"s  review shall be **limited** to determining whether the fiscal plan proposed by the Governor **meets the requirements established under subsection (b) of Section 201 of the PROMESA Act**. As defined by Section 201 (b) of the PROMESA Act, this means that the Board **shall examine whether the document or Fiscal Plan proposed by the Governor <u>meets</u> the requirement of providing: "estimates** of **revenues** and **expenditures** in conformance with agreed accounting standards and be based on applicable laws; or specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;" "for a **sustainable debt burden,** for fiscal years covered by a Fiscal Plan in which a stay under subchapters III or IV is not effective;" " adequate funding for public pension systems," "for the elimination of structural deficits," and "for capital expenditures and investments necessary to promote economic growth."[41] Furthermore, the Board shall examine whether the document in dispute: includes "a method to achieve fiscal responsibility and access to the capital markets;" "ensure[ ] the funding of essential public services;" "improve[ ] **fiscal governance, accountability, and internal controls;**" "enable[ ] the achievement of **fiscal** targets;" "create[ ] independent **forecasts of revenue** for the period covered by the Fiscal Plan;" "include[ ] a **debt sustainability analysis**;" "ensure that **assets, funds,** or **resources** of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under subchapter III, or a Qualifying Modification approved under subchapter VI;" and "respect[ ] the relative lawful

---

[40] Section 201 (c) 3 of PROMESA, *supra.*
[41] Section 201 of PROMESA, 48 USCA sec. 2142.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                      10
*Judgment*

**priorities** or lawful **liens**, as may be applicable, in the constitution, other laws, or agreements of

a covered territory or covered territorial instrumentality in effect prior to June 30, 2016."[42]

Lastly, the Board shall verify whether the document "adopt[ the]   appropriate

recommendations submitted by the Oversight Board under section 205(a)" and "include such

additional information as the Oversight Board deems necessary."[43] These recommendations are

the ones set forth in Section 205 of the PROMESA Act and refer to the actions that, **according to**

**the Board**, the Government can take to ensure financial stability, administrative responsibility,

and economic growth, among others:

> a) IN GENERAL. — The Oversight Board may, at any time, issue
> recommendations to the Government or to the Legislature regarding the actions
> that the territorial government can take to ensure compliance with the Fiscal
> Plan, or to otherwise promote the financial stability, economic growth,
> administrative responsibility, and efficiency in the way that the territorial
> government renders its services, including recommendations related to —
> (1) the management of the territorial government"s financial affairs, including the
> ability to make multiannual economic and fiscal projections, information
> technology, control staff costs, reduce benefit costs, reform procurement
> practices, and place other controls on expenditures;
> (2) the structural relationship between departments, agencies, and independent
> agencies within the territorial government;
> (3) the modification of the existing revenue structures or the creation of
> additional revenue structures;
> (4) the establishment of alternatives to meet the obligations for the payment of
> territorial government employee pensions;
> (5) modifying or transferring the types of services that are the responsibility of
> and which are provided by the territorial government;
> (6) modifying the types of services that are offered by non-governmental entities
> of the territory under different mechanisms for the provision of services;
> (7) the effects of the territorial laws and the judicial orders regarding the
> operations of the territorial government;
> (8) the establishment of a personnel system for territorial government employees,
> based on employee performance standards;
> (9) improving staff training and competencies, adjusting staffing levels, and
> improving administrative and supervisory staff s training and performance; and
> (10) the privatization and commercialization of entities within the territorial
> government.

> If the document or fiscal plan developed by the Governor **satisfies all the requirements**

**set forth under PROMESA, the Board shall, <u>at its sole discretion,</u>** approve the proposed fiscal

---

[42] Section 201 of PROMESA, 48 USCA sec. 2142.
[43] Section 201 of PROMESA, 48 USCA sec. 2142.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                      11
*Judgment*

plan, send a compliance certification to the Government and the Legislature for the above-referenced fiscal plan, and submit the plan to the Legislature.[44] Now, if the document or fiscal plan developed by the Governor **does not satisfy all the requirements set forth under PROMESA, the Board shall, at its sole discretion,** provide the Governor: a notice of violation with recommendations to revise the Fiscal Plan and an opportunity to correct the identified violations.[45] In this case, the Governor shall have to submit a revised Fiscal Plan proposal that is in compliance with Section 201(b) of the PROMESA Act.

### b. CONSTITUTIONAL RIGHT OF ACCESS TO PUBLIC INFORMATION.[46]

More than three decades ago, in <u>Soto v. Srio. de Justicia</u>, 112 DPR 477 (1982), [our Supreme Court acknowledged] the right of the press and of the citizens in general to have access to public information as a fundamental constitutional right. This right is **closely connected to the exercise of the right to freedom of speech, freedom of the press, and freedom of association** officially enshrined in Art. II, Sec. 4 of the Constitution of Puerto Rico, LPRA, Volume 1 (2016). <u>Trans Ad de P.R. v. Junta de Subastas</u>, 174 DP 56 (2008); <u>Ortiz v. Dir. Adm. de los Tribunales</u>, 152 DPR 161 (2000). One of one.

Access to public information **constitutes a fundamental pillar of every democratic society. This knowledge enables citizens to properly assess and monitor public service, while contributing to an effective citizen engagement in the governmental processes that affect their social environment.** <u>Trans Ad de P.R. v. Junta de Subastas</u>, *supra*; <u>Colón Cabrera v. Caribbean Petroleum</u>, 170 DPR 582 (2007). **This contributes to transparency in government functions and promotes a sound public administration.** C.F. Ramos-Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR No. 4, p. 1015 (2016).

We must not forget that, in our political reality, the government"s existence , as entity, is based on the People it serves.

---

[44] Section 201 (c) (3) and (e) (1), and Section 202 (c) (1).
[45] Section 201 (c) (3) of PROMESA, *supra*.
[46] Given their importance and their relevance to the dispute under our consideration, this Court fully embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 22-26.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                          12
*Judgment*

Regardless of the definition we may give to the concept of "democracy," its cardinal principle is that the political power shall lie in the people and that rulers carry out their functions for the people and under the people"s mandate.  A people could hardly govern themselves if they are unaware of whatever that goes on with the management of their own affairs. E. Rivera-Ramos, *La libertad de información: necesidad de su reglamentación en Puerto Rico*, 44 Rev. Jur. UPR, Nos. 1-2, p. 69 (1975).

Similarly, **it is not possible to effectively exercise the rights under Art. II. Sec. 4 of the Constitution of Puerto Rico**, *supra*, **if there is no evidence of the business of those elected to govern.**

**The premise is straightforward, if the People are not duly informed about the way in which public management is carried out, their freedom to express their satisfaction or dissatisfaction with the people, the rules, or the processes that govern them through voting or any other means, could be curtailed**. Ortiz v. Dir. Adm. de los Tribunales, *supra*, p. 175.

Art. 409 of the Civil Procedure acknowledges the right of all citizens to inspect and copy any public document of Puerto Rico. 32 LPRA sec. 1781 (2004). Now, the right to information does not operate in a vacuum. The document intended to be disclosed must, indeed, have this public status. Ortiz v. Dir. Adm. de los Tribunales, *supra*.

Our legal system defines the term "public document" as follows:

[A] ny document which originates or is kept or received in any dependency of the Commonwealth of Puerto Rico according to the law or in relation to the management of public affairs and that pursuant to the provisions of § 1002 of this title is required to be permanently or temporarily preserved as evidence of transactions or for its legal value. It includes those documents produced electronically which meet the requirements established by law and regulations. Art. 3(b) of Law No. 5 of December 8, 1955, Puerto Rico Public Documents Administration Act, as amended, 3 LPRA sec. 1001 (b) (2011).

Therefore, the right to information is not an absolute right and shall be subject to limitations that may be imposed by the State **as a matter of urgent necessity**. Ortiz v. Dir. Adm. de los Tribunales, *supra.* However, these restrictions must be duly justified, since access to public information cannot be capriciously or arbitrarily denied. Colón Cabrera v. Caribbean Petroleum, *supra.* **For, given its status as a fundamental right, in order for them to prevail, the restrictions imposed by the government must respond to a compelling government interest.** Nieves v. Junta, 160 DPR 97; Noriega v. Gobernador, 130 DPR 919 (1992).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          13
*Judgment*

No legislation has been enacted in our jurisdiction to specifically limit the access of public scrutiny to governmental documents. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. Now, by means of the disputes brought before [the Supreme Court] to address this problem, [we have] been able to outline the following situations where the State is allowed to validly claim the confidentiality of the information they possess. These include, when: (1) it is so stated by law; (2) the communication is protected by any of the evidentiary privileges that may be invoked by citizens; (3) disclosing the information may undermine third parties" rights ; (4) it involves the identity of an informant, and (5) it is "official information" pursuant to Rule 514 of the Rules of Evidence, 2009, 32 LPRA Ap. VI (2010) (previously, Rule 31 of the Rules of Evidence). <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. We must bear in mind that **it is up to the State to prove the application of any of the aforementioned exceptions in order to be able to <u>validate</u> their claim of confidentiality.** <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*.

### c. THE PRIVILEGE OVER OFFICIAL INFORMATION – IN GENERAL[47]

A claim of confidentiality on the part of the government may thrive when it is privileged official information, among others. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra;* <u>Santiago v. Bobb y El Mundo, Inc.</u>, 117 DPR 153 (1986). Thus, Rule 154 of the Rules of Evidence, *supra*, lays down in our legal system the so-called privilege over official information. Said provision defines "official information" as "information acquired in confidence by a public officer or employee in the course of his duty and not open or officially disclosed to the public prior to the time the claim of privilege is made." Rule 514(a) of the Puerto Rico Rules of Evidence, *supra*. This privilege is activated "if the court determines that said matter is official information and disclosure of it is forbidden by law, or that disclosure of such information in the proceeding would be prejudicial to the interest of the government." Rule 514(b) of the Puerto Rico Rules of Evidence, *supra*.

Professor Chiesa-Aponte explains that:

> On the one hand, the privilege is based on the need of the government to keep certain information confidential for the government's good functioning, particularly with regard to the frank discussion of the alternatives or potential

---

[47] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón,* supra, pp. 26-29.

   I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                      14
*Judgment*

courses of action to address the State"s multiple social, economic, and other problems […]." E.L. Chiesa-Aponte, *Tratado de derecho probatorio*, Dominican Republic, Ed. Corripio, [no year], T.I., p. 292.

Now, **this privilege is not absolute, but qualified, and is subject to a balance of interest analysis.** Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 292. Therefore, <u>when assessing this privilege, the need for the government to maintain the confidentiality of certain sensitive information must be weighed against the prejudice that may be invoked by the government and, on the other hand, the need of the requesting party and their right to obtain said information</u>. E.L. Chiesa-Aponte, *Reglas de Evidencia Comentadas,* San Juan, Ed. Situm,  2016, p. 164. Therefore, we can only talk about the privilege when "it is ‚official information' and if the balance of interests tips in favor of confidentiality." Chiesa-Aponte, *Tratado de derecho probatorio*, op.cit., p. 307. <u>In claiming the confidentiality of official information, the government must accurately and unequivocally prove the applicability of the privilege.</u>  <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra.* As previously explained, "[t]he high standing of the constitutional right of access to information hinders the governmental claim of confidentiality, particularly in the absence of a regulatory statute." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 304. See, also, <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra.* In this regard, given the lack of legislation to delimit the scope of the privilege, it "must be particularly warily examined." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 304, citing <u>Peña Clos v. Cartagena Ortiz</u>, 114 DPR 576, 599 (1983). [17] Thus, with the scales tipped against the privilege, the government shall -eventually- have the obligation to "provide evidence and prove the existence of compelling interests that are more important than the values protected by this citizens' right to freedom of information." Chiesa-Aponte, *Tratado de derecho probatorio,* op. cit., p. 308, citing Noriega v. Gobernador, supra, p. 938. In light of the above, **the government may not invoke the privilege in a generalized manner.** <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*; see, also, Chiesa-Aponte, *Tratado de derecho probatorio, op. Cit.,* p. 310. Profesor Chiesa-Aponte also believes that "[t]he citizen's right of access to information regarding government affairs justifies the imposition of a burden of persuasion upon the government when it claims the privilege of official information." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 295. In brief, the courts must be "careful not to lightly grant any request for confidentiality by

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    15
*Judgment*

The State." <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*, p. 159. In assessing whether the privilege

should be granted, "[t]he alternatives of in-chamber inspection or providing limited access to

the confidential file are always available." Chiesa-Aponte, *Tratado de derecho probatorio*, op. cit.,

p. 310. Now, as we will discuss later, the option of in-chamber examination may be limited

based on the circumstances of each case.[48]

### d. THE PRIVILEGE OVER OFFICIAL INFORMATION – DECISION-MAKING INFORMATION IN DELIBERATIVE PROCESSES INVOLVING PUBLIC POLICY[49]

Among the key types of privileged official information is the one used by public officials

during deliberative processes relating to public policymaking. Chiesa-Aponte, *Tratado de derecho*

*probatorio*, op. cit., pp. 292-293. This category of the official information privilege seeks to

"promote the frankest level of communication between governmental government officials in

charge of deciding and enforcing the State"s public policy." Chiesa -Aponte, *Tratado de derecho*

*probatorio*, op. cit., p. 293. Based on the foregoing, we believe that Professor Chiesa refers to the

government"s qualified deliberative process privilege. See 6 *Moore's Federal Practice* Sec. 26.52

(3rd Ed. 2016) and 26A *Wright & Graham, Federal Practice and Procedure: Evidence* Sec. 5680 (1992).

This privilege prevents the quality of governmental decisions and the agencies" advisory

role from being affected. P.F. Rothstein and S.W. Crump., *Federal Testimonial Privileges:*

*Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases*, 2nd Ed., West, 2012,

Sec. 5:3, pp. 431-432. In this regard, it has been acknowledged that "[…] *a substantial public*

*interest exists in maintaining and ensuring full, frank, open exchanges of ideas between members of the*

*agency and other advisors and the decision maker.*" Rothstein and Crump, op. cit., p. 433. Also,

restricting access to this type of communication protects "*against* **premature disclosure** *of*

*proposed policies and decisions before they have been finally formulated or adopted*". [ ] Rothstein and

Crump, op. cit., p. 436. To benefit from the privilege over deliberative processes, the

government must comply with the following process: (1) the head of the agency that controls

the information must officially claim

---

[48] (Underlining, emphasis, italics, and citations in the original). (Scholia omitted.)

[49] Given their importance and their relevance to the dispute under our consideration, this Court fully embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 29-33.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                     16
*Judgment*

the privilege, after weighing it; (2) an agency official must provide the exact reasons why the confidentiality of the information or documents is claimed, and (3) the government must identify and describe the information or the documents it intends to protect. *Moor's Federal Practice,* supra, p. 26-412.10(1). See, also, United States v. Reynolds, 345 US 1 (1953).

**Furthermore, in order to activate the privilege, the government must prove that the document in question is a "deliberative" and "pre-decisional" document.** *Moore's Federal Practice,* supra, p. 26-412.8. A piece of information can be considered as deliberative insofar as it relates to a policymaking process. *Moore's Federal Practice,* supra, p. 26-412.9. a document is "pre-decisional" when it is prepared to assist in the government"s decision -making process, in other words, prior to making said decisions. *Moore's Federal Practice,* supra, pp. 26-412.8 and 26-412.9. Therefore, "any information or documentation following the governmental decision is also not protected […]" Chiesa Aponte, *Tratado de derecho probatorio,* op. cit., p. 293; N.L.R.B. v. Sears, Roebuck & Co., 421 US 132 (1975). Based on the above, this privilege does not cover factual matters. Chiesa Aponte, *Tratado de derecho probatorio,* op. cit., p. 293. Nor does it protect objective material or documents in which the agency adopts its position on an issue or dispute. *Moore's Federal Practice,* supra, págs. 26-412.6 y 26-412.7. For example, this privilege does not include "*advisory opinions, recommendations, and communications relating to policy formulations*". *Moore's Federal Practice,* supra, p. 26-412.8.

**In order to determine whether this privilege prevails, the court must conduct a balance of interest analysis.** Chiesa Aponte, *Tratado de derecho probatorio,* op. cit., p. 293. In weighing the balance of interests, some of the factors that must be considered by the court include: "[…] *the interests of the private litigant, the need for accurate judicial fact finding, the public's interest in learning how effectively the government is operating, the relevance of the evidence sought, the availability of other evidence, the role of the government in the litigation and issues involved, and the impact on the effectiveness of government employees*". *Moore's Federal Practice, supra, 2012, p. 26-412.11.* Also, the potential impact of the disclosure on the process of frankly discussing the policies and decisions in question must also be assessed. F.T.C. v. Warner Commun. Inc., 742 F.2d 1156 (9th Cir. 1984). In brief, this



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    17
*Judgment*

privilege may be weakened if it is fully demonstrated that a particular need to obtain the information exists which outweighs the reasons for its confidentiality. *Moore's Federal Practice*, supra, p. 26-412.11. The courts must have flexibility at the time of assessing this privilege, so as to ensure the protection of the deliberative process. *Moore's Federal Practice*, supra, 2016, p. 26-412.10. However, our evidence code demands a strict interpretation when determining the existence of a privilege. Rule 518 of the Rules of Evidence, 32 LPRA Ap. VI (2010).[50]

### d. THE EXECUTIVE PRIVILEGE[51]

**The executive privilege** was acknowledged in our legal system in <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, resulting from the Constitution of Puerto Rico. Art. I, Sec. 2 and Art. IV, Secs. 1 and 4, Const. PR, LPRA, Volume 1 (2016). This privilege **seeks to protect communications between the Governor and his subordinates, advisors, or assistants.** Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., p. 165; J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. Temis, 2009, p. 363; Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 311. This is a qualified privilege; therefore, it does not grant the Executive Branch the absolute power to "retain information based on its alleged confidentiality." <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, p. 598. See *Wright & Graham*, supra, p. 52. Thus, we must emphasize that "an allegation that lacks public privilege, that is not supported by adequate legislation, must be particularly warily examined." <u>Peña Clos v. Cartagena Ortiz</u>, supra, p. 599.

Consequently, "[i]t is, ultimately, up the Executive Branch to define the boundaries of that [privilege]." Peña Clos v. Cartagena Ortiz, *supra*, p. 598. See, also, <u>United States v. Nixon</u>, 418 US 683 (1974) y Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 312. As we have already stated, "the method of weighing the interests in conflict" has been used for this purpose. <u>Peña Clos v.</u>

---

[50] (Underlining, emphasis, italics, and citations in the original.) (Scholia omitted.)
[51] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                18
*Judgment*

Cartagena Ortiz, *supra*, p. 598. See, also, United States v. Nixon, *supra*.[52]

### e. IN-CHAMBER INSPECTION[53]

Although FOIA, 5 USCA 552(a)(4)(B) (2007) allows the examination of documents in chambers, federal courts have stated on numerous occasions that this alternative is unfavorable in cases where certain governmental privileges are claimed. See, for example, Smith v. U.S. Marshals Serv., 517 Fed. Appx. 542 (9th Cir. 2013); Lion Raisins v. U.S. Dept. of Agriculture, 354 F.3d 1072 (9th Cir. 2004), partly repealed in other aspects by Animal Legal Def. Fund v. U.S. Food & Drug Admin., 836 F.3d 987 (9th Cir. 2016); Turner v. U.S. Dept. of the Treasury, No. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); Truthout v. Dept. of Justice, 20 F. Supp. 3d 760 (E.D. Cal. 2014), aff'd, 667 F. Appx. 637 (9th Cir. 2016). It also should not be the first choice, since the Government should be initially afforded the opportunity to justify and prove its claim of confidentiality. Lion Raisins v. U.S. Dept. of Agriculture, *supra*; Conservation Force v. Jewell, 66 F. Supp. 3d 46 (D.D.C. 2014), aff'd, No. 15-5131, 2015 WL 9309920 (D.C. Cir. 2015); Truthout v. Dept. of Justice, *supra*. This can be achieved by allowing the Government to replace the in-chamber inspection of the document in dispute. Solers, Inc. v. Internal Revenue Serv., 827 F.3d 323 (4th Cir. 2016); Hamdan v. U.S. Dept. of Justice, 797 F.3d 759 (9th Cir. 2015); Ethyl Corp. v. U.S. E.P.A., 25 F.3d 1241 (4th Cir. 1994). In other words, the court may rely on supplemental evidence to determine whether the privilege claimed by the Government is admissible. Lane v. Dept. of Interior, 523 F.3d 1128 (9th Cir. 2008); Lion Raisins v. U.S. Dept. of Agriculture, *supra*. If it is decided, at this stage, that the privilege is admissible, the in-chamber inspection shall not be required. Lewis v. I.R.S., 823 F.2d 375 (9th Cir. 1987).

For the purposes of the present case, we find that what is stated in the legislative record of one of the FOIA amendments with regard to the in-chamber inspection of documents is quite revealing and relevant. As stated:

---

[52] (Underlining, emphasis, italics, and citations in the original.) (Scholia omitted.)

[53] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón, supra.*

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                       19
*Judgment*

> *H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate.* <u>**Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.**</u> *The burden remains on the Government under this law.* [ ] S. Rep. No. 93-1200, p. 9 (1974), <u>reprinted</u> in 1974 USCCAN 6285, 6287-88. See, also, <u>Lewis v. I.R.S.</u>, supra, p. 378 Sch. 4.

Finally, in some particular cases, the in-chamber examination may be unnecessary. See: <u>Hamdan v. U.S. Dept. of Justice</u>, *supra*; <u>Aids Healthcare Foundation v. Leavitt</u>, 256 Fed. Appx. 954 (9th Cir. 2007); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973); <u>Turner v. U.S. Dept. of the Treasury</u>, *supra.* Particularly, in the case of <u>Lion Raisins v. U.S. Dept. of Agriculture,</u> *supra*, it was concluded that, since there was no controversy regarding the type of information contained in the document in dispute, the in-chamber inspection would be an exercise in futility. Now, when the file and the Government's supplementary evidence does not satisfactorily justify the governmental privilege, then the court shall be able to conduct the in-chamber inspection of the disputed documents. <u>Islamic Shura Council of Southern California v. F.B.I.</u>, 635 F.3d 1160 (9th Cir. 2011); <u>Lane v. Dept. of Interior</u>, *supra.* See, also, 33 *Wright & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, p. 524 (2006).

## IV.

Pursuant to the *Mandate* received, this Court is called upon to determine "whether the State can fulfill its burden of proof to support the claimed privileges. Of course, before that, [the Court] must determine **whether the document in question is, indeed, public in nature**. To be able to determine, in balancing interests, whether a privilege exists in this case, the parties must, **first**, put the court in a position to identify which are the interests in conflict."[54]

Having received the memoranda of law filed by the parties, in which they must have placed the Court "in a position to decide whether the document is public in nature and, if so, whether the claimed privileges are admissible,"[55] this Court finds, firstly, **that the document at**

---

[54] (Emphasis supplied). *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, p. 39.
[55] *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, p. 40.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                    20
*Judgment*

**issue is public** under the rule of law of the Promesa Act and, secondly, that the respondent **failed to meet its burden of proof to support the claimed privileges.** Moreover, the Court concludes that by weighing the interests in conflict, the State was not able to establish that a deliberative process existed that must be protected *vis-à-vis* the constitutional right to have access to information as citizens or as legislators to monitor government operations in light of the presence of a new governmental actor, the Board. The State also could not prove that the public interest would be better served by the confidentiality of the document than by its disclosure. This court cannot ignore that "secrecy in public affairs is an exception, not the rule."[56]

There is no dispute between the parties regarding the fact that the information requested herein consists of the document prepared by the Governor pursuant to Section 201 of PROMESA and submitted to the Board for its review.[57] The point at issue is whether the document is a public document. In other words, if the respondent was able to establish, by producing evidence to that end, that the document is pre-decisional because it contains deliberative information.

It is the position of the respondent that the **document** whose disclosure is requested is a pre-decisional document because it contains deliberative information. This, because the document was simply subject to changes, which proves that it was not final and, consequently, was deliberative. The respondent also broadly **mentions**, in a generalized manner and without any details or specificities, that the **document** is protected by the executive privilege. The respondent failed to conduct a detailed exercise to enlighten the Court as to the contents of the document, whether parts of it refer to conversations between the Government and his aides or advisors, recommendations, consultations, determinations of the Governor or of his support staff or advisors with regard to the Executive Branch's deliberative process the for the development of the bill before the Board, or whether it includes internal documents of the agencies. The State does not even mention if the document includes more information than the one requested by Section 201 of PROMESA, pursuant to which the document was prepared.

---

[56] See: *Santiago v. Bobb y el Mundo, Inc.* 117 DPR 153, 159 (1986).
[57] Section 201 of PROMESA, 48 USCA sec. 2142.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

This, when the plaintiff himself specified that he was not interested in the disclosure of any such

information that could

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                              21
*Judgment*

be part of the document. **The plaintiff specified that he only wanted access to the numbers and data, the elements that, given the nature of the document – the fiscal budget – are the ones which are generally included.**[58]

On the other hand, it is well known that certain information contained in a document can be confidential or privileged in nature, but that does not necessarily mean that the entire document is confidential or privileged. This Court was not placed in a position to know what information is contained in the document. Moreover, by reading section 201 of PROMESA, this Court cannot conclude that the mental impressions or public policy decisions between the Governor and his advisors are part of the document. It is not required by section 201 of PROMESA.

Furthermore, this Court cannot conclude that the document is pre-decisional because it was subject to changes and because, according to the State, it shows a process of deliberation between the Board and the Governor. The fact is that the Board"s invo lvement is limited to verifying the compliance of the Fiscal Plan developed by the Governor under PROMESA and to requesting information or issuing recommendations related to the compliance of the Fiscal Plan. The Governor submitted his proposed Fiscal Plan to the Board for them to review and certify the plan's compliance with PROMESA. What the respondent [sic] is interested in knowing is the content of the draft Fiscal Plan– the numbers and data – developed by the Governor and submitted to the Board in accordance with the rule of law arising from section 202 of PROMESA.

The fact is that the respondent had a duty to prove and show that the information contained in the document was official information, that its disclosure would be detrimental to the interests of the Government. **"[T]he government cannot invoke the privilege in a generalized manner."** "[T]he right of citizens to access information regarding government affairs justifies the imposition of a great **burden of persuasion upon the government when it claims the privilege of official information**." "[T]he courts must be "careful not to lightly grant any request for confidentiality by the State." The respondent invoked the privilege over official information in a generalized manner, without proving in any way that the disclosure of the draft Fiscal Plan would be detrimental to the interests of the State.

---

[58] "It is also not necessary to protect a communication that only contains data, not opinions, since it is precisely the integrity of the opinion what we seek to protect." *In Re Sealed Case,* 121 F. 3d 729, 737 (1997).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                 22
*Judgment*

On the other hand, the State also failed to prove that the **document at issue is "deliberative" and "pre-decisional."** It failed to produce specific evidence to show that the information contained in the draft Fiscal Plan developed by the governor is deliberative insofar as it relates to a policymaking process. Nor did they prove that the document was developed to help in the government's decision-making process, that is, **prior** to making said decisions. The Governor already made his decision by submitting the Fiscal Plan to the Board.[59] Note that the Board could only determine whether the Plan was in compliance with PROMESA, certify it and submit it to the Legislative Assembly or point out errors and grant a period of time for the Governor to make the identified corrections. Furthermore, the State failed to prove that the document contained information regarding the **communications between the Governor and his subordinates, advisors, or assistants. On the contrary, one the Governor submitted the draft Fiscal Plan to the Board on April 30, 2017, it becomes an autonomous entity under section 108 of PROMESA.**[60]

In this same respect, based on the facts we have established, Honorable Associate Supreme Court Judge Estrella-Martínez conclusively and categorically stated the following:

> The submittal before the Board is a mandate pursuant to the formal procedure of section 202 of the PROMESA Act, 48 U.S.C. sec. 2142. What happens here is that the Government makes a final budget proposal, which shall be sent to the Board for approval, instead of following the ordinary procedure of sending it directly to the Legislative Assembly. If the Draft Budget meets parameters set by the Board, it will be approved, and the Government will then be able to send it to the Legislative Assembly. This is why it cannot be considered as a draft. According to the statutory process, the document must be final, except only for the amendments recommended by the Board. I do not think that a working document, as the Government alleges, can be approved by the Board as a certified budget. Rather, we are faced with a congressional mandate whereby the Government of Puerto Rico now has a dual responsibility to primarily submit the Draft Budget before the Board, as well as eventually submitting it to the Legislative Assembly. In this sense, this is an official document submitted to the Board under a particular process for approval or amendment that is similar to the eventual legislative approval process.

---

[59] "According to the provisions of the PROMESA Act, the Governor knew that the document filed on April 30 could have been the budget for the Commonwealth of Puerto Rico if it was validated by the Board and subsequently approved by the Legislative Assembly. Therefore, the draft budget sent to the Financial Oversight and Management Board on April 30, 2017 does not constitute a simple deliberative exercise, but it represented a concrete public policy decision about how to distribute the funds available in the State"s treasury for the upcoming fiscal year. Thus, upon examining the process to produce the document at issue, we can conclude that the privilege of deliberative process cannot be applied to the heart of the matter, that is, the details of the expenditure of public funds." See: *Bhatia Gautier v. Rossello Nevares*, *Dissenting Opinion issued by Associate Judge Mrs. Rodríguez-Rodríguez*, supra, pp. 24-25.

[60] Section 108 (c) of PROMESA, 48 USCA sec. 2128


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                        23
*Judgment*

Therefore, at its official submission stage, the Draft Budget cannot be minimized as a document in a deliberative stage or a simple "draft."

Contrary to the arguments of the Government of Puerto Rio, it has been established as a matter of law that, under the provisions of PROMESA, the Board cannot be considered as a subordinate, advisor, or assistant to the Executive Branch. In this sense, Section 108 of PROMESA, which expressly provides the Board"s autonomy, cannot be omitted from this ana lysis. 48 U.S.C. sec. 2128. Albeit outrageous, Puerto Rico"s colonial reality cannot be concealed with the purpose of creating fiction that intends to ignore the imperial role of the Board to reduce it to that of an Executive Branch"s subordinate, adv isor, or assistant. That fiction is not the reality faced by Puerto Rico. Secrecy only strengthens said reality.

Due to this being an issue of high public interest involving the constitutional rights of the Executive Branch and the Legislative Branch, and for it being a legal dispute in which this Court concluded that the aforementioned document is public, as well as after this Court having performed the balance of interests based on the type of documents, the in-chamber inspection is unnecessary. The in-chamber inspection would only have been the vehicle to be used if the State had stated compelling reasons that would have placed this Court in a position to understand that the examination of the document was essential to its analysis. The State did not provide any valid justification to support the confidentiality of the document. In other words, the State failed to prove that the disclosure of the information could affect or could be detrimental to public interest and to government operations.

To summarize, the State should have made a great effort to submit specific evidence proving the existence of interests that are above the values protected by the right to freedom of information.[61] For this reason, upon carefully considering all the allegations made by the parties, this Court rules that disclosing the information requested by the plaintiff is not harmful to any public or governmental interest, on the contrary, the State did not provide any reason to justify the secrecy of the document at issue.[62]

---

[61] See *ELA v. Casta*, 162 DPR 1 (2004).

[62] Access to information constitutes an essential tool to combat corruption, making the principle of transparency in public management a reality, and improving the quality of our democracies, which have been marked by a culture of secrecy and by public agencies whose information management policies are not aimed at facilitating people"s access to said information." See: *Bhatia Gautier v. Rossello Nevares, Dissenting Opinion issued by Associate Judge Mr. Colón-Pérez*, supra, p. 1, citing the Inter-American Commission on Human Rights of the Organization of American States. Special study on the right of access to information, Org. American States, Washington, D.C. 2007, p. 6.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                      24
*Judgment*

## JUDGMENT

For the reasons explained above, with all issues having been submitted to the consideration of the Court in the memoranda of law, and given that the State failed to prove the existence of interests that are above the constitutional right of access to information, the plaintiff's request is hereby **UPHELD**, and the State is **ORDERED** to, within **10 days**, disclose the Draft Fiscal Plan submitted to the Board on April 30, 2017 pursuant to section 202 of PROMESA. This, for it being a public document, as well as due to the State"s  failure to justify and prove the claim of confidentiality of the above-referenced document.

There is no valid justification on the part of the State that would move this Court to maintain the secrecy of the document at issue. Particularly, when our Supreme Court has historically provided that access to public information constitutes a fundamental pillar of every democratic society. The constitutional right of access to public information contributes to transparency in governmental operations and promotes a sound public administration.[63]

**BE IT RECORDED AND NOTICE HEREOF BE DULY GIVEN.**

In San Juan, Puerto Rico, on March 16, 2018.

## F/LAURACELIS ROQUES-ARROYO
## SUPERIOR COURT JUDGE

---

[63] C.F. Ramos Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR No. 4, p. 1015 (2016).


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO**
**TRIBUNAL DE PRIMERA INSTANCIA**
**CENTRO JUDICIAL DE SAN JUAN**
**SALA SUPERIOR**

| | |
|---|---|
| HON. EDUARDO BHATIA GAUTIER, en su capacidad como Portavoz del Partido Popular Democrático en el Senado de Puerto Rico<br>**Parte Demandante**<br><br>v.<br><br>HON. RICARDO ROSSELLÓ NEVARES, en su carácter como Gobernador del Estado Libre Asociado de Puerto Rico y ESTADO LIBRE ASOCIADO DE PUERTO RICO<br>**Parte Demandada** | **CIVIL NÚM.:**<br>SJ2017CV00271<br><br>**SALÓN DE SESIONES:**<br>907<br><br>**SOBRE:**<br><br>*MANDAMUS* |

> "[P]ermitir la secretividad gubernamental invita y propicia a la arbitrariedad y a la indiferencia gubernamental. Por tanto, es importante que haya una ciudadanía informada de modo que se promueva la participación informada e inteligente, lo cual es indispensable en la democracia."[1]

## SENTENCIA

### I.

En esta ocasión tenemos ante nuestra consideración una controversia revestida de alto interés público delimitada por nuestro Tribunal Supremo, a los fines de determinar si el proyecto del Plan Fiscal desarrollado por el Gobierno de Puerto Rico (Estado) entregado a la Junta de Supervisión Fiscal (Junta) para su revisión el 30 de abril de 2017, es un documento de naturaleza pública.[2] En segundo lugar, nos corresponde determinar si el Estado aportó prueba suficiente o "justificaciones específicas"[3] que sustentasen la naturaleza privilegiada y no pública del referido documento. Solamente así, la consecuencia sería la improcedencia de la solicitud de la parte demandante, Honorable Eduardo Bhatia Gautier, Senador y Portavoz del Partido Popular Democrático en el Senado de Puerto Rico (parte demandante), para que se haga público el referido documento.

En síntesis, nos corresponde adjudicar si el Estado cumplió con su carga probatoria para sustentar los privilegios reclamados y, en consecuencia, colocó a este Tribunal en posición de

---

[1] (Énfasis nuestro). Luis F. Estrella Martínez, *Acceso a la Justicia: Derecho Humano Fundamental*, 1ra Edición, Puerto Rico, Ediciones SITUM, 2017, pág. 238.

[2] Nótese que la parte demandante solamente solicita el proyecto de Plan Fiscal sometido a la Junta. La parte demandante nunca ha solicitado documentación de apoyo, recomendaciones, determinaciones o expresiones del personal y/o asesores del Gobierno relacionadas con el proceso deliberativo para la preparación del proyecto de Plan Fiscal.

[3] Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* de 15 de septiembre de 2017,___DPR___, 2017 TSPR 173 (2017), a la pág. 41. Mandato recibido de 13 de diciembre de 2017.

determinar que no procede la divulgación de la propuesta del Plan Fiscal desarrollado por el Estado y entregado a la Junta para su revisión.[4]

Recibidos los memorandos de derechos presentados por las partes, en los cuales éstas debieron colocar al Tribunal en posición de resolver si el documento en cuestión es de naturaleza pública y, de ser así, si proceden los privilegios alegados, y ante el balance de intereses envueltos, este Tribunal determina que, en primer término, el proyecto de Plan Fiscal es un documento público y, en segundo término, el Estado no describió el documento en cuestión de forma detallada y específica. Por ello, este Tribunal concluye que el Estado **no aportó prueba suficiente ni justificaciones específicas** para concluir que la información contenida en el proyecto del Plan Fiscal desarrollado por el Gobernador entregado a la Junta es privilegiada. Por lo tanto, ante la insuficiencia de justificaciones válidas, así como la presentación de alegaciones vagas y generales para reclamar la confidencialidad del documento, este Tribunal ordena la divulgación del proyecto de Plan Fiscal entregado a la Junta por inclinarse la balanza a favor del derecho constitucional de acceso a la información.

## II. TRASFONDO PROCESAL

El 26 de julio de 2017, este Tribunal emitió una *Resolución y Orden* en la cual dispuso que:

> [C]elebrada la vista argumentativa, la parte demandante expresó para récord que la información cuya divulgación solicita es <u>únicamente</u> el Proyecto de Presupuesto presentado el 30 de abril de 2017, a la Junta. Esto es, las cuantías, cifras o partidas de fondos asignadas a determinadas entidades gubernamentales o para cubrir determinados gastos. La parte demandante reiteró y aclaró para récord que como parte de su pedido **no solicita la documentación en apoyo al Proyecto de Presupuesto. Entiéndase, la parte demandante <u>no</u> solicita mediante su petición de** *Mandamus* **información alguna que podría incluir recomendaciones, determinaciones o expresiones de personal y/o asesores del Ejecutivo sobre las cuantías y las razones o el proceso deliberativo relacionado con su asignación.**
>
> Por su parte, la parte demandada sostuvo que la información está cobijada por el privilegio ejecutivo por la misma ser un documento de trabajo o borrador sujeto a cambios que contiene información sobre el proceso deliberativo o de formulación de política pública del Ejecutivo.
>
> No obstante, a preguntas del Tribunal y conforme a la casuística aplicable, la parte demandada no detalló de forma alguna por qué la información solicitada cualifica para la aplicación del privilegio ejecutivo. Conforme a ello, la parte demandada no logró establecer en este momento de forma detallada el porqué no procede la divulgación del Proyecto de Presupuesto presentado a la Junta. No obstante, habiéndose invocado el privilegio ejecutivo, se

---

[4] El Tribunal Supremo delimitó la controversia y a tales fines específicamente dispuso que "la verdadera controversia en el caso [es] si el Estado puede cumplir con su carga probatoria para sustentar los privilegios reclamados". Véase: *Bhatia Gautier v. Rosselló Nevares*, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón, supra, a la pág. 39.

SJ2017CV00271                                                                                    3
*Sentencia*

> **ORDENA** a la parte demandada a, en un término de 10 días, presentar el
> Proyecto de Presupuesto presentado a la Junta el 30 de abril de 2017, para
> inspección en cámara. El mismo, **deberá ser sometido a la atención del
> Tribunal en un sobre sellado, catalogado como "confidencial", así como,
> contener la firma del custodio de la información o de la representación legal
> de la parte demandada de tal manera que garantice el sello del sobre.**
> Además, la parte demandada deberá presentar una moción en la que
> explique <u>en detalle las razones por las cuales la información solicitada, o
> parte de ella, cualifica para la aplicación del privilegio invocado</u>. Según lo
> argumentó en la vista de hoy, porqué la misma es parte de un "proceso
> deliberativo" o "de formulación de política pública". El Proyecto de
> Presupuesto no tendrá que ser presentado en el sistema de SUMAC a los fines
> de que el Tribunal entienda cumplida esta *Orden*. La parte demandada es
> responsable de presentar correctamente la información a los fines de
> preservar su confidencialidad. La Secretaría del Tribunal tomará todas las
> medidas que estime pertinentes para garantizar la secretividad de la
> información presentada conforme a esta **ORDEN**.[5]

La parte demandada recurrió de dicha determinación ante el Tribunal de Apelaciones,

mediante la presentación de una *Moción Urgente en Auxilio de Jurisdicción* y una *Petición de*

*Certiorari*.[6] El foro apelativo intermedio denegó la expedición del auto solicitado y declaró No Ha

Lugar la solicitud en auxilio de jurisdicción.[7] Posteriormente, la parte demandada presentó una

*Petición de Certiorari* y una *Urgente Moción en Auxilio de Jurisdicción* ante el Tribunal Supremo.[8]

El 7 de agosto de 2017, el Tribunal Supremo emitió una *Resolución* y paralizó "los

procedimientos en el caso hasta tanto este Tribunal provea otra cosa. Esto para evitar que el

recurso presentado se torne académico".[9]

El 15 de septiembre de 2017, el Tribunal Supremo emitió su *Opinión* y dispuso que:

> [S]in ulterior procedimiento y al amparo de la Regla 50 del Reglamento de
> este Tribunal, *supra*, se expide el auto de *certiorari* solicitado y **se revoca en
> parte la Resolución y Orden de 26 de julio de 2017 emitida por el Tribunal
> de Primera Instancia <u>respecto a la producción del documento en
> controversia para inspección en cámara</u>. <u>Fuera de esto, se confirma dicha
> Resolución y Orden en los demás extremos no incompatibles con lo aquí
> dispuesto</u>.** Se deja sin efecto la paralización ordenada y se devuelve el caso al
> foro primario para la continuación de los procedimientos de conformidad con
> lo indicado en la presente Opinión.[10]

El 12 de diciembre de 2017, se registró el *Mandato* del Tribunal Supremo.[11] Conforme al

mismo, el 13 de diciembre de 2017, este Tribunal emitió la siguiente *Orden*:

---

[5] Énfasis y subrayado en el original.
[6] Anotaciones 33 y 34 del expediente digital en SUMAC.
[7] Anotación 35 del expediente digital en SUMAC.
[8] Anotación 37 del expediente digital en SUMAC.
[9] Anotación 39 del expediente digital en SUMAC.
[10] Itálicas en el original. Énfasis nuestro.
[11] Anotación 48 del expediente digital en SUMAC.

SJ2017CV00271                                                                                          4
*Sentencia*

Recibido el Mandato y a tenor con el lenguaje literal de la Opinión a las página[s] 40 y 41, se ordena a las partes someter sus respectivos Memorandos de Derecho para que estos coloquen al Tribunal en posición de determinar si el documento es de naturaleza pública y de ser así, si proceden los privilegios alegados. "Sólo así, y en consideración al balance de los intereses implicados, podría entonces el foro primario determinar si proceden o no los privilegios alegados." Los Memorandos de Derecho deberán presentarse de forma simultánea en un término de 30 días, a vencer el 16 de enero de 2018. Del tribunal entenderlo necesario, se concederá un término final para presentar réplicas.[12]

Luego de una solicitud al respecto, el Tribunal concedió una prorroga a vencer el 23 de enero de 2018. En dicha fecha, las partes presentaron sus respectivos *Memorandos de Derecho* y el asunto quedó sometido.

## III. DETERMINACIONES DE HECHOS

1.  La parte demandante es el Honorable Eduardo Bhatia Gautier, Senador y Portavoz del Partido Popular Democrático en el Senado de Puerto Rico.[13]

2.  El Honorable Ricardo Rosselló Nevares es el Gobernador de Puerto Rico y fue demandado exclusivamente en su carácter oficial.[14]

3.  El 30 de junio de 2016, se aprobó por el Congreso de los Estados Unidos de América la Ley Pública 114-187, conocida como la Ley de PROMESA.[15]

4.  El 25 de junio de 2017, la Asamblea Legislativa aprobó las resoluciones de presupuesto, Resoluciones Conjuntas de la Cámara 186, 187, 188 y 189.[16]

5.  Mediante carta de 30 de junio de 2017, la Junta le notificó al Gobernador y a los presidentes del Senado y de la Cámara de Representantes que, mediante reunión, y conforme a lo dispuesto en las Secciones 202(d)(2) y 202(e)(3) de PROMESA, la Junta aprobó unánimemente, en igual fecha, una resolución mediante la cual adoptaron el Presupuesto General del Estado Libre Asociado de Puerto Rico y sometió el mismo al Gobernador y a la Asamblea Legislativa.[17]

*Dear Governor Rosselló Nevares, Senator Rivera Schatz, and Representative Méndez Núñez:*

---

[12] Anotación 49 del expediente digital en SUMAC.
[13] Hecho estipulado por las partes. Véase: Anotación 23 del expediente digital en SUMAC.
[14] Íd.
[15] Íd.
[16] Íd.
[17] Íd.

> *Pursuant to Resolution # 3, a copy of which is attached hereto as Exhibit A (the "Resolution"), adopted unanimously at the June 30, 2017 public meeting of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1)* **submits to the Governor and the Legislature the fiscal year 2018 budget for the Commonwealth of Puerto Rico, consisting of the documents attached hereto as Exhibits B, C, D and E (collectively, the "Territory Budget");** *and (2) issues to the Governor and the Legislature this certification that the Territory Budget is a compliant budget as set forth in the Resolution. Attached as Exhibits F and G are versions of the Territory Budget indicating the revisions pursuant to section 202(d)(2) of PROMESA.*

> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.[18]*

6. Mediante carta de 13 de julio de 2017, la Junta le notificó al Gobernador y a la Asamblea Legislativa, de la adopción de un Presupuesto enmendado, adoptado y certificado por la Junta. La Junta dispuso que, al amparo de las Secciones 202(d)(2) y 202 (e)(3) de la Ley PROMESA, se consideraba como aprobado por el Gobernador y la Asamblea Legislativa de Puerto Rico el referido Presupuesto y que el mismo entró en vigor el 1 de julio de 2017.

> *Dear Governor Rosselló Nevares, Senator Rivera Schatz, and Representative Méndez Núñez:*

> *Pursuant to a Unanimous Written Consent, a copy of which is attached hereto as Exhibit A (the "UWC"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1)* **submits to the Governor and the Legislature the fiscal year 2018 budget, as corrected, for the Commonwealth of Puerto Rico,** *consisting of the documents attached hereto as Exhibits B, C, D and E (collectively, the "Territory Budget"); and (2) issues to the Governor and the Legislature this certification that the Territory Budget, as corrected, is a compliant budget as set forth in the UWC. Attached as Exhibits F and G are redline versions of the Territory Budget indicating the corrections.*

> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget, as corrected, shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.*
> *This certification supersedes and replaces the Compliance Certification for the Territory Budget issued by the Oversight Board dated June 30, 2017. The Oversight Board looks forward to working with the Governor and the Legislature to accomplish the requirements and goals of PROMESA for the benefit of the people of Puerto Rico and its creditors and other stakeholders.*

7. El Presupuesto General del Año Fiscal 2017-2018, ha sido aprobado y está vigente desde el 1 de julio de 2017.

---

[18] (Énfasis nuestro). Véase: https://juntasupervision.pr.gov/index.php/en/documents/ (Última visita: 16 de marzo de 2018).

8.  El 30 de abril de 2017, Rosselló Nevares presentó ante la Junta el Plan Fiscal elaborado de conformidad con la Sección 202 de PROMESA.[19]

9.  El 8 de mayo de 2017, la Junta acusó recibo del plan fiscal y le proveyó a éste 14 días adicionales para enmendar y mejorar el documento sometido antes de que la Junta lo apruebe o identifique violaciones. La misiva reza:

> *By letter dated March 22, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), pursuant to PROMESA § 202(a), established May 8, 2017 as the date to approve the Governor's proposed budget or to notify the Governor of violations and provide descriptions of all necessary corrective actions. We have received a **working draft** of the proposed budget and are reviewing the submission and its completeness. In this light, the Board will provide the Governor an additional 14 days to amend and improve the submission before it approves it or identifies violations.[20]*

10. El 2 de junio de 2017, la Junta aprobó parcialmente el Plan Fiscal desarrollado por el Gobernador.[21]

11. La parte demandada no aportó prueba sobre el documento en cuestión desarrollado por el Gobernador. Esto es, cuantos folios posee, si el mismo contiene memorandos, comunicaciones entre el Gobernador, sus ayudantes, asesores, etc.

## IV. CONCLUSIONES DE DERECHO

### a. LA POLÍTICA FISCAL DE PUERTO RICO Y PROMESA

Por mandato constitucional, la elaboración del presupuesto requiere que, al comienzo de cada sesión ordinaria, el Poder Ejecutivo presente al Poder Legislativo un mensaje sobre la situación del erario público, así como, un informe en el que detalle "las condiciones del Tesoro de Puerto Rico y los desembolsos propuestos para el año económico siguiente".[22] En el referido informe, se detallarán las propuestas de asignaciones de fondo y se establecerán los mecanismos de recaudos para subsidiar los gastos estimados.[23]

Una vez recibido y evaluado el informe del Primer Ejecutivo por el Poder Legislativo, dicho cuerpo procede a aprobar la ley o resolución conjunta sobre el presupuesto. [24] Así,

---

[19] *Supra*. Hecho también admitido por la parte demandada. Véase: *Moción Urgente Reiterando Desestimación* presentada el 26 de junio de 2017.

[20] (Énfasis nuestro). Véase: https://juntasupervision.pr.gov/index.php/en/documents/ (Última visita: 12 de febrero de 2018).

[21] Documento estipulado por las partes. Véase: *Moción Conjunta en Cumplimiento de Orden* presentada el 25 de junio de 2017.

[22] Art. IV, Sec. 4, Const. ELA, 1 LPRA.

[23] Véase por su valor ilustrativo el caso de *Finca Matilde, Inc. v. Estado Libre Asociado De Puerto Rico*, KLCE201601001, *Sentencia* del Tribunal de Apelaciones de 31 de agosto de 2016.

[24] Art. III, Sec.17, Const. ELA, *supra*.

SJ2017CV00271                                                                                        7
*Sentencia*

corresponde al Poder Legislativo determinar cuáles de las recomendaciones del Primer Ejecutivo serán aprobadas, eliminadas o enmendadas.[25] Incluso, como parte de sus prerrogativas, el Poder Legislativo puede incluir nuevos asuntos no contemplados previamente en el informe del Ejecutivo.[26]

Tras la participación del Poder Legislativo, se da por sometida la ley del presupuesto general ante la consideración del Primer Ejecutivo. [27] En dicho momento, este último tiene la facultad de reducir o eliminar cualquier partida de lo presupuestado.[28] "Al aprobar cualquier proyecto de ley que asigne fondos en más de una partida, el Gobernador podría eliminar una o más partidas o disminuir las mismas, reduciendo al mismo tiempo los totales correspondientes".[29] Igualmente, el Primer Ejecutivo tiene la facultad de sancionar o desaprobar, las resoluciones conjuntas y los proyectos de ley aprobados por el Poder Legislativo.[30]

En lo pertinente al caso ante nos, la Sección 201 de PROMESA **altera** el proceso antes reseñado y mediante el cual, tradicionalmente, se aprueba el presupuesto gubernamental.[31] Es a raíz de ello, que surge la controversia ante nuestra consideración. Esto pues, PROMESA requiere que el informe a prepararse en virtud del Art. IV, Sec. 4, Const. ELA, *supra*, sea enviado a la Junta **antes de que el mismo sea enviado al Poder Legislativo como lo requiere nuestro esquema constitucional**.[32]

Conforme a su poder constitucional para disponer y establecer todas las reglas y reglamentos que sean necesarios para los territorios de los Estados Unidos de América, el Congreso aprobó la ley conocida como *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA).[33] En virtud de ésta, se estableció la Junta para disponer un método mediante el cual el ELA y sus instrumentalidades logren la responsabilidad fiscal y el acceso a los mercados

---

[25] *Finca Matilde, Inc. v. Estado Libre Asociado De Puerto Rico*, supra.
[26] Íd.
[27] Íd.
[28] Íd.
[29] Art. III, Sec. 20, Const. ELA, *supra*.
[30] Art. IV, Sec. 4, Const. ELA, *supra*.
[31] Sección 201 de PROMESA, 48 USCA sec. 2142.
[32] Véase: *Bhatia Gautier v. Rossello Nevares*, *Opinión de conformidad emitida por el Juez Asociado señor Kolthoff Caraballo* y la *Opinión disidente emitida por el Juez Asociado señor Estrella Martínez* de 15 de septiembre de 2017,_DPR__, 2017 TSPR 173 (2017).
[33] Const. de los EEUU, art. IV, sec. 3; 48 USC sec. 2101 *et seq.*

de capital.[34] Sobre la naturaleza de la Junta, la Sección 101 (c) de la PROMESA establece que ésta

se creará "como una entidad dentro del gobierno del territorio" y que "no se considerará un

departamento, agencia, establecimiento o instrumentalidad del Gobierno Federal".[35] **Ésta es,**

**además, una entidad autónoma sobre la cual ni el Poder Ejecutivo como el Legislativo podrán**

**ejercer ningún control, como tampoco podrán supervisar, monitorear, o revisar a la Junta o sus**

**actividades.**[36]

En cuanto al presupuesto gubernamental, la Sección 201 de PROMESA dispone que "[e]l

Gobernador **no puede someter un Presupuesto del Territorio para un año fiscal <u>a la Legislatura**

**bajo la Sección 202, a menos que la Junta de Supervisión haya certificado el Plan Fiscal del**

**Territorio para dicho año fiscal</u>, según se establece en este inciso**".[37] El proceso para la

certificación del plan fiscal desarrollado por el Gobernador conllevará una **revisión** por la Junta

del documento que a estos fines presente el Gobernador.[38] Este es:

> La Junta Supervisión **revisará** cualquier Plan Fiscal **propuesto para**
> **determinar si cumple con los requisitos establecidos en el inciso (b)[[39]] y, si**

---

[34] Sección 101 (c) de PROMESA, 48 USCA sec. 2121 (c). Véase además la *Exposición de Motivos* de la Ley Núm. 5-2017, *Ley de Emergencia Financiera y Responsabilidad Fiscal de Puerto Rico* (Ley Núm. 5), y *Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 201 F. Supp. 3d 223 (1st Cir. 2016).

[35] Sección 101 (c) de PROMESA, *supra.*

[36] Sección 108 (c) de PROMESA, 48 USCA sec. 2128.

[37] Sección 201 (c) (1) de PROMESA, *supra.*

[38] *Supra.*

[39] La Sección 201 (b) establece:
  (b) REQUISITOS. —
  (1) EN GENERAL. — Un plan fiscal desarrollado bajo esta Sección proveerá, con respecto al gobierno del territorio o a la instrumentalidad territorial cubierta, un método para lograr la responsabilidad fiscal y el acceso a los mercados de capital, y —
  (A) proveerá estimados de los ingresos y gastos según los estándares de contabilidad acordados y que se basen en —
  (i) el derecho aplicable; o
  (ii) proyectos de ley específicos que requieren ser adoptados para poder alcanzar razonablemente las proyecciones del Plan Fiscal;
  (B) garantizará el financiamiento necesario para los servicios públicos esenciales;
  (C) proveerá fondos adecuados para los sistemas de pensiones públicas;
  (D) proveerá para la eliminación de los déficits estructurales;
  (E) para los años fiscales cubiertos por un Plan Fiscal en el que una suspensión de pago bajo los Títulos III y IV no proceda, proveerá para una deuda sostenible;
  (F) mejorará la administración fiscal, la rendición de cuentas y los controles internos;
  (G) permitirá que el logro de las metas fiscales sea posible;
  (H) creará pronósticos de ingresos independientes para el período cubierto por el Plan Fiscal;
  (I) incluirá un análisis de sostenibilidad de la deuda;
  (J) proveerá para los gastos de capital y las inversiones necesarias para promover el crecimiento económico;
  (K) adoptará recomendaciones adecuadas sugeridas por la Junta de Supervisión bajo la Sección 205(a);
  (L) incluirá aquella información adicional que la Junta de Supervisión considere necesaria;
  (M) asegurará que los bienes, fondos o recursos de una instrumentalidad territorial no sean prestados, transferidos, o de otra forma utilizados para beneficiar a un territorio o a otra instrumentalidad territorial de un territorio cubierto, salvo que esté permitido por la constitución del territorio, por un plan de ajuste aprobado bajo el Título III, o por una Modificación Elegible aprobada bajo el Título VI; y

> la Junta de Supervisión determina, a su entera discreción, que el Plan Fiscal
> propuesto—
> **(A)** <u>cumple con dichos requisitos</u>, la Junta de Supervisión <u>aprobará</u> el Plan
> Fiscal propuesto; **o**
> **(B)** <u>si no cumple con dichos requisitos</u>, la Junta de Supervisión le <u>proveerá</u>
> al Gobernador—
> **(i)**  un aviso de infracción que incluya recomendaciones para revisar del
> Plan Fiscal correspondiente; **y**
> **(ii)**  una oportunidad para corregir la infracción conforme al inciso (d)(1).[40]

Nótese que, conforme al lenguaje de la citada disposición, la revisión por parte de la Junta se **limitará a** determinar si el plan fiscal propuesto por el Primer Ejecutivo **cumple o no con los requisitos establecidos en el inciso (b) de la Sección 201 de PROMESA**. Según la Sección 201(b) de PROMESA, ello significa que la Junta <u>revisará</u> **si el documento o Plan Fiscal propuesto por el Ejecutivo** <u>cumple</u> **con proveer**: "**estimados** de los **ingresos** y **gastos** según los estándares de contabilidad acordados y que se basen en el derecho aplicable o en los proyectos de ley específicos que requieren ser adoptados para poder alcanzar razonablemente las proyecciones del Plan Fiscal"; "para una **deuda sostenible**, para los años fiscales cubiertos por un Plan Fiscal en el que una suspensión de pago bajo los Títulos III y IV no proceda"; "**fondos** adecuados para los sistemas de pensiones públicas", "para la eliminación de los **déficits** estructurales" y "para los **gastos de capital** y las **inversiones** necesarias para promover el crecimiento **económico**".[41] Además, la Junta revisará si el documento en controversia: incluye "un método para lograr la responsabilidad fiscal y el acceso a los mercados de capital"; "garantiza[ ] el **financiamiento** necesario para los servicios públicos esenciales"; "mejora[ ] la **administración fiscal, la rendición de cuentas y los controles internos**"; "permit[e] que el logro de las metas **fiscales** sea posible"; "crea[ ] **pronósticos de ingresos** independientes para el período cubierto por el Plan Fiscal"; "inclu[ye] un **análisis de sostenibilidad** de la deuda", "asegura[ ] que los **bienes**, **fondos** o **recursos** de una instrumentalidad territorial no sean prestados, transferidos, o de otra forma utilizados para beneficiar a un territorio o a otra instrumentalidad territorial de un territorio cubierto, salvo que esté permitido por la constitución del territorio, por un plan de ajuste aprobado bajo el Título III, o por una Modificación Elegible aprobada bajo el Título VI" y

---

(N) respetará las prioridades legítimas relativas o gravámenes legítimos, según apliquen, en la Constitución, en otras leyes o acuerdos de un territorio cubierto o instrumentalidad territorial cubierta y en vigor antes de la fecha de adopción de esta Ley.

[40] Sección 201 (c) 3 de PROMESA, *supra.*

[41] Sección 201 de PROMESA, 48 USCA sec. 2142.

"respeta[ ] las **prioridades** legítimas relativas o **gravámenes** legítimos, según apliquen, en la Constitución, en otras leyes o acuerdos de un territorio cubierto o instrumentalidad territorial cubierta y en vigor antes de la fecha de adopción de esta Ley".[42] Por último, la Junta revisará si el documento "adopta[ las] recomendaciones adecuadas sugeridas por la Junta de Supervisión bajo la Sección 205(a)" e "inclu[ye] aquella información adicional que la Junta de Supervisión considere necesaria". [43] Estas recomendaciones son las establecidas en la Sección 205 de PROMESA, y se refieren a aquellos actos que, **según la Junta**, el Gobierno puede tomar para garantizar la estabilidad financiera, la responsabilidad administrativa, el crecimiento económico, entre otros:

> a) EN GENERAL.—La Junta de Supervisión, en cualquier momento, podrá presentar recomendaciones al Gobernador o la Legislatura sobre las acciones que el gobierno del territorio puede tomar para garantizar el cumplimiento con el Plan Fiscal, o para que de otro modo promueva la estabilidad financiera, el crecimiento económico, la responsabilidad administrativa y la eficiencia en la forma en que el gobierno del territorio presta sus servicios, incluyendo recomendaciones concernientes a—
> (1) el manejo de los asuntos financieros del gobierno del territorio, incluyendo la capacidad para hacer proyecciones económicas y fiscales plurianuales, la tecnología de la información, controlar los gastos del personal, reducir los costos de los beneficios, reformar las prácticas de adquisición y colocar otros controles sobre los gastos;
> (2) la relación estructural de los departamentos, agencias y agencias independientes dentro del gobierno del territorio;
> (3) la modificación de las estructuras de ingresos existentes o la creación de estructuras de ingresos adicionales;
> (4) el establecimiento de alternativas para satisfacer las obligaciones de pago para las pensiones de los empleados del gobierno del territorio;
> (5) modificaciones o transferencias de los tipos de servicios que son responsabilidad de y son provistos por el gobierno del territorio;
> (6) modificaciones de los tipos de servicios que son prestados por entidades que no sean del gobierno del territorio bajo diferentes mecanismos de prestación de servicios;
> (7) los efectos de las leyes territoriales y las órdenes judiciales sobre las operaciones del gobierno del territorio;
> (8) el establecimiento de un sistema de personal para empleados del gobierno del territorio basado en estándares de desempeño del empleado;
> (9) mejoras a los adiestramientos y competencias del personal, ajustes a los niveles de la plantilla laboral y mejoras al adiestramiento y el desempeño del personal administrativo y de supervisión; y
> (10) la privatización y comercialización de entidades dentro del gobierno del territorio.

Si el documento o plan fiscal desarrollado por el Gobernador **cumple con proveer cada uno de los elementos requeridos en virtud de PROMESA, la Junta, a su entera discreción,**

---

[42] Sección 201 de PROMESA, 48 USCA sec. 2142.
[43] Sección 201 de PROMESA, 48 USCA sec. 2142.

SJ2017CV00271                                                                                          11
*Sentencia*

aprobará el plan fiscal propuesto, enviará una certificación de cumplimiento al Gobernador y a la Legislatura para el referido plan fiscal y lo presentará ante la Legislatura. [44] Ahora, si el documento o plan fiscal desarrollado por el Gobernador **no cumple con proveer cada uno de los elementos requeridos en virtud de PROMESA, la Junta, a su entera discreción,** le proveerá al Gobernador: un aviso de infracción con recomendaciones para revisar el Plan Fiscal y una oportunidad para corregir los señalamientos de infracción.[45] En este caso, el Gobernador tendrá que presentar una propuesta revisada del Plan Fiscal que cumpla con la Sección 201(b) de PROMESA.

## b. DERECHO CONSTITUCIONAL DE ACCESO A LA INFORMACIÓN PÚBLICA.[46]

Hace ya más de tres décadas que, en Soto v. Srio. de Justicia, 112 DPR 477 (1982), [nuestro Tribunal Supremo reconoció] el derecho de la prensa y de los ciudadanos en general a tener acceso a la información pública como un derecho fundamental de estirpe constitucional. Este derecho está **firmemente ligado al ejercicio de los derechos de libertad de palabra, prensa y asociación** formalmente consagrados en el Art. II, Sec. 4 de la Constitución de Puerto Rico, LPRA, Tomo 1 (2016). Trans Ad de P.R. v. Junta de Subastas, 174 DPR 56 (2008); Ortiz v. Dir. Adm. de los Tribunales, 152 DPR 161 (2000). Único

El acceso a la información pública **constituye un pilar fundamental en toda sociedad democrática**. **Este conocimiento permite a los ciudadanos evaluar y fiscalizar la función pública adecuadamente a la vez que contribuye a una participación ciudadana efectiva en los procesos gubernamentales que impactan su entorno social**. Trans Ad de P.R. v. Junta de Subastas, *supra*; Colón Cabrera v. Caribbean Petroleum, 170 DPR 582 (2007). **Se abona de este modo a la transparencia en la función gubernamental y se promueve una sana administración pública**. C.F. Ramos Hernández, Acceso a la información, transparencia y participación política, 85 Rev. Jur. UPR Núm. 4, pág. 1015 (2016).

No podemos olvidar que, en nuestra realidad política, el gobierno como entidad, existe en función del Pueblo al que sirve.

---

[44] Sección 201 (c) (3) y (e) (1) y Sección 202 (c) (1).

[45] Sección 201 (c) 3 de PROMESA, *supra*.

[46] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge íntegramente los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra, a las págs. 22-26.

Cualquiera que sea la definición que ascribamos al concepto "democracia", su principio cardinal es que el poder político ha de residir en el pueblo y que los gobernantes ejercen sus funciones para el pueblo y por mandato de éste. Mal podría gobernarse a sí mismo un pueblo que estuviere ajeno a cuanto sucede en la conducción de sus asuntos. E. Rivera Ramos, La libertad de información: necesidad de su reglamentación en Puerto Rico, 44 Rev. Jur. UPR, Núms. 1–2, pág. 69 (1975).

Asimismo, **no es posible ejercer efectivamente los derechos cobijados bajo el Art. II, Sec. 4 de la Constitución de Puerto Rico,** *supra*, <u>si no existe constancia de los quehaceres de aquellos elegidos a gobernar.</u>

<u>**La premisa es sencilla, si el Pueblo no está debidamente informado del modo en que se conduce la gestión pública, se verá coartada su libertad de expresar, por medio del voto o de otra forma, su satisfacción o insatisfacción con las personas, reglas y procesos que le gobiernan**</u>. Ortiz v. Dir. Adm. de los Tribunales, *supra*, pág. 175.

El Art. 409 del Código de Enjuiciamiento Civil reconoce el derecho de todo ciudadano a inspeccionar y copiar cualquier documento público de Puerto Rico. 32 LPRA sec. 1781 (2004). Ahora bien, el derecho a la información no opera en el vacío. Es necesario que el documento que se pretende divulgar goce, en efecto, de esa condición pública. <u>Ortiz v. Dir. Adm. de los Tribunales</u>, *supra*.

Nuestro ordenamiento define el término "documento público" de la siguiente manera:

[T]odo documento que se origine, conserve o reciba en cualquier dependencia del Estado Libre Asociado de Puerto Rico de acuerdo con la ley o en relación con el manejo de los asuntos públicos y que de conformidad con lo dispuesto en la sec. 1002 de este título se haga conservar [ ... ] permanentemente o temporalmente como prueba de las transacciones o por su valor legal. Incluye aquellos producidos de forma electrónica que cumplan con los requisitos establecidos por las leyes y reglamentos. Art. 3(b) de la Ley Núm. 5 de 8 de diciembre de 1955, Ley de Administración de Documentos Públicos de Puerto Rico, según enmendada, 3 LPRA sec. 1001(b) (2011).

Así pues, el derecho a la información no es absoluto y estará sujeto a aquellas limitaciones que, **por necesidad <u>imperiosa</u>**, el Estado imponga. <u>Ortiz v. Dir. Adm. de los Tribunales</u>, *supra*. Sin embargo, estas restricciones deben estar debidamente justificadas puesto que no puede negarse el acceso a información pública de manera caprichosa y arbitraria. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. **Y es que, dada su condición de derecho fundamental, para prevalecer, las restricciones impuestas por el aparato gubernamental deben responder a un interés <u>apremiante</u> del Estado**. <u>Nieves v. Junta</u>, 160 DPR 97 (2003); <u>Noriega v. Gobernador</u>, 130 DPR 919 (1992).

SJ2017CV00271                                                                    13
*Sentencia*

En nuestra jurisdicción no se ha legislado específicamente para delimitar el acceso a documentos gubernamentales del escrutinio público.13 <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. Ahora bien, a través de las controversias traídas ante [la] consideración [del Tribunal Supremo] para atender esta problemática, [se ha] podido delinear los siguientes supuestos en que le está permitido al Estado reclamar válidamente la confidencialidad de información que obra en su poder. Éstos son, cuando: (1) una ley así lo declara; (2) la comunicación está protegida por alguno de los privilegios evidenciarios que pueden invocar los ciudadanos; (3) revelar la información puede lesionar derechos fundamentales de terceros; (4) se trate de la identidad de un confidente, y (5) sea "información oficial" conforme a la Regla 514 de Evidencia, 2009, 32 LPRA Ap. VI (2010) (anteriormente la Regla 31 de Evidencia). <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. Es importante tener presente que **le corresponde al Estado el peso de probar la aplicación de alguna de las excepciones antes enumeradas para poder <u>validar</u> su reclamo de confidencialidad**. <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*.

### c. EL PRIVILEGIO SOBRE LA INFORMACIÓN OFICIAL – EN GENERAL[47]

Un reclamo de confidencialidad por parte del gobierno puede prosperar cuando se trate de información oficial privilegiada, entre otros<u>. Colón Cabrera v. Caribbean Petroleum</u>, *supra*; <u>Santiago  v. Bobb y  El Mundo, Inc.</u>, 117 DPR  153 (1986).  Así  pues,  la Regla 514 de Evidencia, *supra*, establece en nuestro ordenamiento el denominado privilegio sobre información oficial. Dicha disposición define "información oficial" como "aquélla adquirida en confidencia por una persona que es funcionaria o empleada pública en el desempeño de su deber y que no ha sido oficialmente revelada ni está accesible al público hasta el momento en que se invoca el privilegio". Regla 514(a) de Evidencia, *supra*. Este privilegio se activa "si el tribunal concluye que la materia es información oficial y su divulgación está prohibida por ley, o que divulgar la información en la acción sería perjudicial a los intereses del gobierno". Regla 514(b) de Evidencia, *supra*.

El profesor Chiesa Aponte explica que:

> El privilegio se funda, por un lado, en la necesidad que tiene el gobierno de mantener confidencial cierta información para la buena marcha del gobierno, particularmente en relación con la franca discusión de las

---

[47] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra, a las págs. 26-29.

alternativas gubernamentales o posibles cursos de acción para atender los
múltiples problemas sociales, económicos - y de otra índole - del Estado [...]".
E.L. Chiesa Aponte, *Tratado de derecho probatorio*, República Dominicana, Ed.
Corripio, [s. año], T. I, pág. 292.

Ahora bien, **este privilegio no es absoluto, sino cualificado, sujeto a un análisis de balance de intereses**. Chiesa Aponte, *Tratado de derecho probatorio, op. cit.,* pág. 292. Así pues, al evaluarlo, se tiene que sopesar, por un lado, la necesidad de que el gobierno mantenga confidencial cierta información sensitiva y el perjuicio que pueda invocar el gobierno y, por otro lado, la necesidad de la parte que solicita la información y su derecho a obtenerla. E.L. Chiesa Aponte, *Reglas de Evidencia Comentadas*, San Juan, Ed. Situm, 2016, pág. 164. Así pues, sólo cabe hablar del privilegio cuando "se trata de 'información oficial' y si el balance de intereses se inclina a favor de la confidencialidad". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 307. Al reclamar la confidencialidad de información oficial, le corresponde al gobierno probar, de manera precisa e inequívoca, la aplicabilidad del privilegio. Santiago v. Bobb y El Mundo, Inc., *supra*. Como explicamos previamente, "[l]a alta jerarquía del derecho constitucional de acceso a información hace difícil el reclamo gubernamental de confidencialidad, particularmente ante la ausencia de un estatuto regulador". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.,* pág. 304. Véase, además, Colón Cabrera v. Caribbean Pretroleum, *supra*. En esa línea, dada la falta de legislación que delimite el privilegio, éste "debe escudriñarse con particular recelo". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.,* pág. 304, citando a Peña Clos v.Cartagena Ortiz, 114 DPR 576, 599 (1983). [17] Así pues, ante un balance inclinado en contra del privilegio, el gobierno -en su momento- tendrá la obligación de "presentar prueba y demostrar la existencia de intereses apremiantes de mayor jerarquía que los valores protegidos por este derecho de libertad de información de los ciudadanos". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 308, citando a Noriega v. Gobernador, supra, pág. 938. En consideración a ello, **el gobierno no puede invocar el privilegio de manera generalizada**. Santiago v. Bobb y el Mundo, Inc., *supra*; véase, además, Chiesa Aponte, *Tratado de derecho probatorio, op. cit.,* pág. 310. El profesor Chiesa Aponte también opina que "[e]l derecho del ciudadano a acceso a información de los asuntos del gobierno justifica poner una seria carga de persuasión en el gobierno cuando reclama el privilegio de información oficial". Chiesa Aponte, *Tratado de derecho probatorio, op. cit.,* pág. 295. En fin, los tribunales debemos ser "cautelosos en conceder livianamente cualquier pedido de

SJ2017CV00271                                                                                      15
*Sentencia*

confidencialidad del Estado". <u>Santiago v. Bobb y El Mundo, Inc.,</u> *supra*, pág. 159. Al evaluar si

procede reconocer el privilegio, "[l]as alternativas de inspección en cámara o proveer acceso

limitado al expediente confidencial siempre están disponibles". Chiesa Aponte, *Tratado de derecho*

*probatorio*, op. cit., pág. 310. Ahora bien, como discutiremos más adelante, la opción de examen

en cámara puede limitarse en consideración a las circunstancias presentes en cada caso.[48]

### d. EL PRIVILEGIO SOBRE LA INFORMACIÓN OFICIAL – LA INFORMACIÓN DECISIONAL EN LOS PROCESOS DELIBERATIVOS SOBRE POLÍTICA PÚBLICA[49]

Entre las categorías fundamentales de información oficial privilegiada está la utilizada por

funcionarios públicos durante los procesos deliberativos relacionados al desarrollo de política

pública. Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., págs. 292-293. Esta categoría del

privilegio de información oficial busca "promover la más franca comunicación entre los

funcionarios gubernamentales encargados de decidir y hacer valer la política pública del Estado".

Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 293. Conforme a lo anterior, entendemos

que el profesor Chiesa se refiere al privilegio cualificado sobre procesos deliberativos del

gobierno o *deliberative process privilege*. Véase 6 *Moore's Federal Practice* Sec. 26.52 (3ra ed. 2016) y

26A *Wright & Graham, Federal Practice and Procedure: Evidence* Sec. 5680 (1992).

Este privilegio evita que se afecte la calidad de las decisiones gubernamentales y de las

funciones consultivas de las agencias. P.F. Rothstein y S.W. Crump, *Federal Testimonial Privileges:*

*Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases*, 2da ed., West, 2012,

Sec. 5:3, págs. 431-432. En esa línea, se ha reconocido que "[...] *a substantial public interest exists in*

*maintaining and ensuring full, frank, open exchanges of ideas between members of the agency and other*

*advisors and the decision maker*". Rothstein y Crump, op. cit., pág. 433. Además, el restringir el

acceso a este tipo de comunicaciones protege "*against **premature disclosure** of proposed policies and*

*decisions before they have been finally formulated or adopted*". [ ] Rothstein y Crump, op. cit., pág. 436.

Para beneficiarse del privilegio sobre procesos deliberativos, el gobierno debe cumplir con el

siguiente proceso: (1) el jefe de la agencia que controla la información debe reclamarlo

---

[48] (Subrayado, énfasis, itálicas y citas en el original). (Escolios omitidos).

[49] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares*, *Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra, a las págs. 29-33.

SJ2017CV00271                                                                                      16
*Sentencia*

formalmente, esto luego de ponderarlo; (2) un oficial de la agencia debe proveer las razones

precisas por las cuales se reclama la confidencialidad de la información o los documentos, y (3)

el gobierno debe identificar y describir la información o los documentos que interesa proteger.

*Moore's Federal Practice*, supra, pág. 26-412.10(1). Véase, además, <u>United States v. Reynolds</u>, 345

US 1 (1953).

**Además, para que se active el privilegio, el gobierno debe demostrar que el documento**

**en cuestión es "deliberativo" y "pre-decisional"**. *Moore's Federal Practice*, supra, pág. 26-412.8.

Una información es deliberativa en la medida en que se relaciona a un proceso en el que se

desarrolla o formula política pública. *Moore's Federal Practice*, supra, pág. 26-412.9. Un documento

es "pre-decisional" cuando es preparado para asistir en la toma de decisiones del gobierno, es

decir, previo a tomar las mismas. *Moore's Federal Practice*, supra, págs. 26-412.8 y 26-412.9. Por lo

tanto, "tampoco queda protegida la información o documentación posterior a la decisión

gubernamental[...]". Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 293; <u>N.L.R.B. v.</u>

<u>Sears, Roebuck & Co.</u>, 421 US 132 (1975). Conforme a lo anterior, este privilegio no cubre lo

relacionado a hechos (*factual matters*). Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág.

293. Tampoco protege material objetivo ni documentos en los que la agencia adopta su posición

sobre un asunto o controversia. *Moore's Federal Practice*, supra, págs. 26-412.6 y 26-412.7. Por

ejemplo, este privilegio no incluye "*advisory opinions, recommendations, and communications relating*

*to policy formulations*". *Moore's Federal Practice*, supra, pág. 26-412.8.

**Para determinar si prevalece este privilegio, al igual que el privilegio sobre información**

**oficial, el tribunal debe realizar un análisis de balance de intereses.** Chiesa Aponte, *Tratado de*

*derecho probatorio*, op. cit., pág. 293. Entre los factores que el tribunal debe considerar al ponderar

el balance de intereses, se encuentran: "[...] *the interests of the private litigant, the need for accurate*

*judicial fact finding, the public's interest in learning how effectively the government is operating, the*

*relevance of the evidence sought, the availability of other evidence, the role of the government in the*

*litigation and issues involved, and the impact on the effectiveness of government employees*". *Moore's*

*Federal Practice*, supra, 2012, pág. 26-412.11. Además, se debe evaluar el impacto que provocaría

la divulgación en el proceso de discutir francamente las políticas y decisiones en cuestión. <u>F.T.C.</u>

<u>v. Warner Commun. Inc.</u>, 742 F.2d 1156 (9no Cir. 1984). En fin, este privilegio puede ceder cuando

se demuestra cabalmente que existe una necesidad particularizada de obtener la información que es de mayor peso que las razones para la confidencialidad. *Moore's Federal Practice*, supra, pág. 26-412.11. Los tribunales debemos tener flexibilidad al momento de evaluar este privilegio para así poder asegurar la protección del proceso deliberativo. *Moore's Federal Practice*, supra, 2016, pág. 26-412.10. No obstante, nuestro ordenamiento probatorio exige una interpretación restrictiva al determinar la existencia de un privilegio. Regla 518 de Evidencia, 32 LPRA Ap. VI (2010).[50]

### d. EL PRIVILEGIO EJECUTIVO[51]

El **privilegio ejecutivo** fue reconocido en nuestro ordenamiento en <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, derivado de la Constitución de Puerto Rico. Art. I, Sec. 2 y Art. IV, Secs. 1 y 4, Const. PR, LPRA, Tomo 1 (2016). Este privilegio **busca proteger las comunicaciones entre el Primer Ejecutivo y sus respectivos subalternos, asesores o ayudantes**. Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., pág. 165; J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. Temis, 2009, pág. 363; Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 311. En comparación con el privilegio sobre secretos de estado, el privilegio ejecutivo es de menor jerarquía. Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., pág. 165. Este último es cualificado, por lo que no le concede a la Rama Ejecutiva una facultad absoluta "de retener información sobre la base de su alegada confidencialidad". <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, pág. 598. Véase *Wright & Graham*, supra, pág. 52. Así pues, debemos reiterar que "una alegación desnuda de privilegio público, sin apoyo en legislación adecuada, debe escudriñarse con particular recelo". <u>Peña Clos v. Cartagena Ortiz</u>, supra, pág. 599.

Por lo tanto, "[l]e corresponde también a la Rama Judicial en última instancia precisar las fronteras de ese [privilegio]". <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, pág. 598. Véase, además, <u>United States v. Nixon</u>, 418 US 683 (1974) y Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., pág. 312. Para ello, como ya indicamos, generalmente se ha utilizado "el método de sopesar los

---

[50] (Subrayado, énfasis, itálicas y citas en el original). (Escolios omitidos).
[51] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra.

SJ2017CV00271                                                                                                18
*Sentencia*

intereses en conflicto". <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, pág. 598. Véase, además, <u>United States v. Nixon</u>, *supra*.[52]

### e. INSPECCIÓN EN CÁMARA[53]

A pesar de que el FOIA, 5 USCA 552(a)(4)(B) (2007), permite el examen de documentos en cámara, los foros federales han manifestado, en reiteradas ocasiones, que esta alternativa es desfavorable en casos donde se reclaman ciertos privilegios gubernamentales. Véanse, por ejemplo, <u>Smith v. U.S. Marshals Serv</u>., 517 Fed. Appx. 542 (9no Cir. 2013); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, 354 F.3d 1072 (9no Cir. 2004) derogado en parte en otros extremos por <u>Animal Legal Def. Fund v. U.S. Food & Drug Admin.</u>, 836 F.3d 987 (9no Cir. 2016); <u>Turner v. U.S. Dept. of the Treasury</u>, Núm. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); <u>Truthout v. Dept. of Justice</u>, 20 F. Supp. 3d 760 (E.D. Cal. 2014), aff'd, 667 F. Appx. 637 (9no Cir. 2016). Incluso, no debe ser la primera alternativa, ya que se le debe dar, inicialmente, una oportunidad al Estado de justificar y demostrar su reclamo de confidencialidad. <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Conservation Force v. Jewell</u>, 66 F. Supp. 3d 46 (D.D.C. 2014), aff'd, Núm. 15-5131, 2015 WL 9309920 (D.C. Cir. 2015); <u>Truthout v. Dept. of Justice</u>, *supra*. Esto se puede lograr permitiéndole al Estado que presente una explicación detallada del privilegio reclamado, lo cual podría sustituir la inspección en cámara del documento en disputa.  <u>Solers, Inc. v. Internal Revenue Serv</u>., 827 F.3d 323 (4to Cir. 2016); <u>Hamdan v. U.S. Dept. of Justice</u>, 797 F.3d 759 (9no Cir. 2015); <u>Ethyl Corp. v. U.S. E.P.A.</u>, 25 F.3d 1241 (4to Cir. 1994). En otras palabras, el tribunal puede descansar en prueba suplementaria para determinar si procede el privilegio reclamado por el Estado. <u>Lane v. Dept. of Interior</u>, 523 F.3d 1128 (9no Cir. 2008); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*. De determinarse, en esa etapa, que procede el privilegio, la inspección en cámara no será requerida. <u>Lewis v. I.R.S.</u>, 823 F.2d 375 (9no Cir. 1987).

Para propósitos del presente caso, encontramos muy revelador y pertinente lo indicado en el historial legislativo de una de las enmiendas al FOIA en relación a la inspección de documentos en cámara. Según indicado:

---

[52] (Subrayado, énfasis, itálicas y citas en el original). (Escolios omitidos).

[53] Por su importancia y pertinencia a la controversia ante nuestra consideración, este Tribunal acoge **íntegramente** los fundamentos legales expuestos en la *Opinión* emitida por el Tribunal Supremo en revisión de nuestra *Resolución y Orden*. Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón*, supra.

> *H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate. **<u>Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.</u>** The burden remains on the Government under this law. [ ]* S. Rep. Núm. 93-1200, pág. 9 (1974), <u>reimpreso en</u> 1974 USCCAN 6285, 6287-88. Véase, también, <u>Lewis v. I.R.S.</u>, supra, pág. 378 esc. 4.

En fin, en algunos casos particulares, el examen en cámara puede ser innecesario. Véanse: <u>Hamdan v. U.S. Dept. of Justice</u>, *supra*; <u>Aids Healthcare Foundation v. Leavitt</u>, 256 Fed. Appx. 954 (9no Cir. 2007); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973); <u>Turner v. U.S. Dept. of the Treasury</u>, *supra*. En particular, en el caso de <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*, se determinó que, al no haber una controversia en cuanto al tipo de información contenida en el documento en disputa, la inspección en cámara sería un ejercicio fútil. Ahora bien, cuando el expediente y la prueba suplementaria del Estado no justifique satisfactoriamente el privilegio gubernamental, entonces el tribunal podrá inspeccionar en cámara los documentos en disputa. <u>Islamic Shura Council of Southern California v. F.B.I.</u>, 635 F.3d 1160 (9no Cir. 2011); <u>Lane v. Dept. of Interior</u>, *supra*. Véase, además, 33 *Wright & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, pág. 524 (2006).

## IV.

Conforme al *Mandato* recibido, este Tribunal está llamado a determinar "si el Estado puede cumplir con su carga probatoria para sustentar los privilegios reclamados. Claro está, previo a ello, [el Tribunal] debe determinar **si el documento en cuestión es efectivamente de naturaleza pública**. Para poder emitir una determinación, en el balance de intereses, en cuanto a si procede o no privilegio alguno en el presente caso, las partes deben **primero**, poner al tribunal en posición en cuanto a cuáles son los intereses en conflicto".[54]

Recibidos los memorandos de derechos presentados por las partes, en los cuales éstas debieron poner al Tribunal "en posición de resolver si el documento es de naturaleza pública y, de ser así, si proceden los privilegios alegados"[55], este Tribunal determina en primer término que **el documento en cuestión es público** ante el estado de derecho de la Ley Promesa y, en segundo

---

[54] (Énfasis nuestro). *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, a la pág. 39.
[55] *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, a la pág. 40.

término, que la parte demandada **no cumplió con la carga probatoria para sustentar los privilegios alegados**. Más aún, el Tribunal concluye que al sopesar los intereses en conflicto el Estado no fue capaz de establecer que existiese un proceso deliberativo que proteger *vis-a-vis* el derecho constitucional a tener acceso a la información como ciudadano o como legislador para fiscalizar la gestión gubernamental ante la presencia de un nuevo actor gubernamental, la Junta. El Estado tampoco pudo probar que el interés público sería más favorecido con la confidencialidad del documento que con su divulgación. Este tribunal no puede pasar por alto que "la secretividad en los asuntos públicos es excepción y no norma."[56]

No existe controversia entre las partes en cuanto a que la información aquí solicitada consta del documento elaborado por el Gobernador conforme a la Sección 201 de PROMESA y entregado a la Junta para su revisión.[57] La controversia principal estriba en si el documento es público o no. Esto es, si la parte demandada logró establecer mediante prueba a esos efectos, que el documento es pre-decisional por contener información deliberativa.

Es la posición de la parte demandada que el **documento** cuya divulgación se solicita es pre-decisional por contener información deliberativa. Esto, porque sencillamente el documento estaba sujeto a cambios lo que demuestra que no era final y, en consecuencia, era deliberativo. La parte demandada también **menciona** a grandes rasgos, de manera generalizada y sin detalle o especificidad alguna que el **documento** está cobijado por el privilegio ejecutivo. La parte demandada no llevó a cabo un ejercicio detallado mediante el cual ilustrara al Tribunal sobre el contenido del documento, si partes del mismo hacen referencia a conversaciones entre el Gobernador y sus ayudantes o asesores, recomendaciones, consultas, determinaciones del Gobernador, o de su personal de apoyo o asesores relacionadas al proceso deliberativo del Ejecutivo para la preparación del proyecto ante la Junta. O si éste incluye documentos internos de las agencias. El Estado ni siquiera menciona si éste incluye más información que la solicitada por la Sección 201 de PROMESA, en virtud de la cual se elaboró el mismo. Esto, aun cuando la propia parte demandante especificó que no interesaba la divulgación de cualquier información de este tipo que pudiese formar parte del documento. **La parte demandante especificó que sólo**

---

[56] Véase: *Santiago v. Bobb y el Mundo, Inc*. 117 DPR 153, 159 (1986).
[57] Sección 201 de PROMESA, 48 USCA sec. 2142.

**interesaba acceso a las cifras y datos, elementos que por la naturaleza del documento – el**

**presupuesto fiscal – son los que generalmente se incluyen**.[58]

Por otra parte, sabido es, que cierta información contenida en un documento puede ser de carácter confidencial o privilegiada, pero ello no necesariamente conlleva que la totalidad del documento sea confidencial o privilegiado. Este Tribunal no fue colocado en posición de saber qué información forma parte del documento. Por otra parte, de una lectura de la sección 201 de PROMESA, este Tribunal no puede concluir que las impresiones mentales o determinaciones de política pública entre el Gobernador y sus asesores formen parte del documento. Ello no lo exige la sección 201 de PROMESA.

Por otro lado, este Tribunal no puede concluir que el documento es pre decisional porque el mismo estaba sujeto a cambios y porque, según el Estado, demuestra un proceso de deliberación entre la Junta y el Gobernador. Lo cierto es que la participación de la Junta se limita a revisar el cumplimiento del Plan Fiscal desarrollado por el Gobernador con PROMESA y a solicitar información o hacer recomendaciones para el cumplimiento del Plan Fiscal. El Gobernador emitió su propuesta de Plan Fiscal a la Junta para que ésta revisara y certificara el cumplimiento del mismo con PROMESA. Lo que la parte demandada interesa conocer es cuál fue el proyecto de Plan Fiscal – las cifras y datos – desarrollado por el Gobernador y presentado anta la Junta conforme al estado de derecho que surge de la sección 202 de PROMESA.

Lo cierto es que la parte demandada, tenía el deber de probar y demostrar que la información contenida en el documento era información oficial, que su divulgación sería perjudicial a los intereses del Gobierno. "**[E]l gobierno no puede invocar el privilegio de manera generalizada**". "[E]l derecho del ciudadano a acceso a información de los asuntos del gobierno justifica poner una s**eria carga de persuasión en el gobierno cuando reclama el privilegio de información oficial**". "[L]os tribunales debemos ser "cautelosos en conceder livianamente cualquier pedido de confidencialidad del Estado". La parte demandada invocó el privilegio sobre la información oficial de manera generalizada sin demostrar de forma alguna que la divulgación del proyecto del Plan Fiscal sería perjudicial a los intereses del Estado.

---

[58] "Tampoco es necesario proteger una comunicación que solo contenga datos y no opiniones pues es precisamente la integridad de la opinión que se busca proteger". *In Re Sealed Case,* 121 F. 3d 729, 737 (1997).

Por otra parte, el Estado tampoco demostró que el **documento en cuestión es "deliberativo" y "pre-decisional"**. No aportó prueba específica que demostrara que la información contenida en el proyecto de Plan Fiscal desarrollado por el Gobernador es deliberativa en la medida en que se relaciona a un proceso en el que se desarrolla o formula política pública. Tampoco que el documento fue preparado para asistir en la toma de decisiones del gobierno, es decir, **previo** a tomar las mismas. Ya el Gobernador tomó su decisión al presentar el Plan Fiscal a la Junta.[59] Nótese, que la Junta sólo podía determinar que cumplía con PROMESA, certificarlo y presentarlo ante la Asamblea Legislativa o hacer señalamientos y proveer un término para que el Gobernador hiciera las correcciones señaladas. Por otra parte, el Estado no demostró que el documento contuviera información sobre las **comunicaciones entre el Primer Ejecutivo y sus respectivos subalternos, asesores o ayudantes. Al contrario, una vez el Gobernador presenta el proyecto de Plan Fiscal a la Junta el 30 de abril de 2017, lo hace a un ente autónomo según la sección 108 de PROMESA.**[60]

A base de los hechos que hemos determinado, en ese mismo sentido se expresó concluyente y categóricamente el Juez Asociado del Tribunal Supremo, el Honorable Estrella Martínez:

> La presentación ante la Junta es un mandato conforme al proceso formal de la sección 202 de la Ley PROMESA, 48 U.S.C. sec. 2142. Aquí lo que ocurre es que el Gobierno realiza una propuesta final de presupuesto, la cual será enviada a la Junta para aprobación, en lugar de seguir el trámite ordinario de enviarlo directamente a la Asamblea Legislativo. Si el Proyecto de Presupuesto cumple con los parámetros que establezca la Junta, se aprobará y el Gobernador entonces lo podrá remitir a la Asamblea Legislativa. Por ello es que no puede ser considerado un borrador. El documento, según el proceso estatutario, debe ser final, con la única excepción de las enmiendas que recomiende la Junta. No creo que un documento de trabajo, como alega el Gobierno, pueda ser aprobado por la Junta como un presupuesto certificado. Más bien, nos encontramos ante un mandato congresional en el que ahora el Gobierno de Puerto Rico tiene un deber dual de presentar el Proyecto de Presupuesto primariamente ante la Junta como eventualmente a la Asamblea Legislativa. En ese sentido, nos encontramos ante un documento formal presentado ante la Junta con un proceso particular para su aprobación o enmienda el cual es análogo al eventual proceso legislativo de aprobación.

---

[59] "[D]e acuerdo a las disposiciones de la Ley PROMESA, el señor Gobernador sabía que el documento presentado el 30 de abril pudo haber sido el presupuesto del Estado Libre Asociado si la Junta lo validaba y, posteriormente, lo aprobaba la Asamblea Legislativa. Por lo tanto, el proyecto de presupuesto remitido a la Junta de Control y Administración Fiscal el 30 de abril de 2017 no constituye simplemente un ejercicio deliberativo, sino que representó una decisión concreta de política pública en cuanto a cómo distribuir los fondos disponibles de la hacienda del Estado para el año fiscal entrante. Así, al examinar el proceso de elaboración propio del documento en cuestión, podemos concluir que el privilegio de procesos deliberativos no le puede aplicar a la médula del mismo, a saber, los pormenores de la erogación de los fondos públicos". Véase: *Bhatia Gautier v. Rosselló Nevares, Opinión Disidente emitida por el Jueza Asociada señora Rodríguez Rodríguez*, supra, a las págs. 24-25.

[60] Sección 108 (c) de PROMESA, 48 USCA sec. 2128.

Por lo tanto, en la etapa de radicación formal del Proyecto de Presupuesto, éste no puede minimizarse como un documento en etapa deliberativa o un simple "borrador".

Contrario a lo que argumenta el Gobierno de Puerto Rico, queda comprobado como cuestión de derecho, que bajo las disposiciones de PROMESA, la Junta no puede ser considerada un subalterno, asesor o ayudante del Ejecutivo. En ese sentido la Sección 108 de PROMESA que establece expresamente la autonomía de la Junta, no puede ser obviada de este análisis. 48 U.S.C. sec. 2128. Aunque indignante, la realidad colonial de Puerto Rico no puede ocultarse, persiguiendo crear una ficción que pretenda ignorar el rol imperial de la Junta para reducirla a un subalterno, asesor o ayudante del Ejecutivo. Esa ficción no es la realidad que vive Puerto Rico. Con secretividad, sólo se recrudece esa realidad.

Por tratarse de un asunto de alto interés público que envuelve derechos constitucionales de la Rama Ejecutiva y de la Rama Legislativa, y por tratarse de una controversia de derecho en la cual este Tribunal concluyó que el referido documento es público, así como, habiendo este Tribunal realizado el balance de intereses ante el tipo de documento, resulta innecesaria la inspección en cámara. La inspección en cámara solamente hubiese sido el vehículo a utilizarse del Estado haber expuesto razones de peso que colocaran a este Tribunal en la posición de entender que el examen del documento era esencial para su análisis. El Estado no esgrimió justificación valida alguna que sustente la confidencialidad del documento. Es decir, el Estado falló en demostrar que la divulgación de la información podría afectar o ser perjudicial al interés público y al funcionamiento del Estado.

Recapitulando, el Estado tenía que haber realizado un gran esfuerzo por lograr presentar prueba específica que demuestre la existencia de intereses de mayor jerarquía que los valores protegidos por el derecho de libertad de información.[61] Por ello, examinadas con sumo esmero todas las alegaciones de las partes, este Tribunal concluye que revelar la información solicitada por la parte demandante no resulta perjudicial a algún interés público o gubernamental, por el contrario, el Estado no esbozó razón alguna que justifique la secretividad del documento en cuestión.[62]

---

[61] Véase *ELA v. Casta*, 162 DPR 1 (2004).

[62] "El acceso a la información constituye una herramienta esencial para combatir la corrupción, hacer realidad el principio de transparencia en la gestión pública y mejorar la calidad de nuestras democracias, signadas por una cultura de secretismo y por organismos públicos cuyas políticas de manejo físico de la información no están orientadas a facilitar el acceso de las personas a la misma." Véase: *Bhatia Gautier v. Rossello Nevares, Opinión Disidente emitida por el Juez Asociado señor Colón Pérez*, supra, a la pág. 1, citando a la Comisión Interamericana de Derechos Humanos de la Organización de los Estados Americanos, Estudio especial sobre el derecho de acceso a la información, Org. Estados Americanos, Washington, D.C. 2007, pág. 6.

SJ2017CV00271                                                                                              24
*Sentencia*

## SENTENCIA

Por los fundamentos antes expuestos, habiéndose sometido todos los asuntos ante la consideración del Tribunal con los memorandos de derecho, y en vista a que el Estado no demostró la existencia de intereses de mayor jerarquía que el derecho constitucional al acceso a la información, se declara **CON LUGAR** la solicitud de la parte demandante y se **ORDENA** al Estado a, en un término de **10 días**, divulgar el Proyecto de Plan Fiscal sometido ante la Junta el 30 de abril de 2017 a tenor con la sección 202 de PROMESA. Esto, por tratarse de un documento público, así como, por el Estado haber fallado en justificar y demostrar el reclamo de confidencialidad del referido documento.

No existe justificación valida alguna por parte del Estado que mueva a este Tribunal a mantener la secretividad del documento en cuestión. Más aún, cuando históricamente nuestro Tribunal Supremo ha dispuesto que el acceso a la información pública constituye un pilar fundamental en toda sociedad democrática. El derecho constitucional de acceso a la información pública abona a la trasparencia en la función gubernamental y se promueve una sana administración pública.[63]

**REGÍSTRESE Y NOTIFÍQUESE.**

En San Juan, Puerto Rico, 16 de marzo de 2018.

### F/LAURACELIS ROQUES ARROYO
### JUEZA SUPERIOR

---

[63] C.F. Ramos Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR Núm. 4, pág. 1015 (2016).

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | Case No. 3:17-bk-03283 (LTS) |
| as representative of | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| DebtorS. | ) | |
| | ) X | |
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| as representative of | ) | Case No. 3:17-cv-01685 (LTS) |
| | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ---------------------------------------------------------------- | X | |

**[PROPOSED] ORDER GRANTING MOTION TO COMPEL OF CERTAIN SECURED
CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM
OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

Upon consideration of the *Motion to Compel of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* (the "<u>Motion</u>")[1] filed by Movants,[2] the Court having reviewed the Motion and the relief requested; the Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); the Court determining that venue of this proceeding and the Motion in this District is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a); notice of the Motion being adequate and proper under the circumstances; and after due deliberation and sufficient cause appearing; therefore, it is hereby ORDERED that:

1.      The Motion is GRANTED as set forth herein.

2.      The Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>") is ordered to produce a revised privilege log that meets the criteria set forth in the Motion.

3.      The Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>"), the Commonwealth, AAFAF, and the Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>") are ordered to produce privilege logs that provide the

---

[1] Capitalized terms used but not otherwise defined herein will have the meaning as set forth in the Motion.

[2] Movants include Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., Oaktree-Forrest Multi- Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax- Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

2

information necessary for the Bondholders and the Court to assess their claims of privilege as set forth in the Motion.

4.     ERS, the Commonwealth, and AAFAF are ordered to conduct a search of documents with a start date of June 30, 2016, and the other agreed-upon search parameters as set forth in the Motion.

5.     The Oversight Board is ordered to produce documents responsive to all of the Bondholders' requests.

6.      The Oversight Board is ordered to designate a deponent in response to Bondholders' Rule 30(b)(6) deposition subpoena.

7.     ERS and the Commonwealth are ordered to amend their responses to provide full and complete responses to the Bondholders' interrogatories.

8.     The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this order.


Dated: _____
Boston, Massachusetts

_____
UNITED STATES MAGISTRATE JUDGE