UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ x
                                                      :
In re:                                                :
                                                      :
                                                      :
THE FINANCIAL OVERSIGHT AND                           :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                     :   Title III
                                                      :
     as representative of                             :   Case No. 17-BK-3283 (LTS)
                                                      :
THE COMMONWEALTH OF PUERTO RICO et al.,               :   (Jointly Administered)
                                                      :
     Debtors.¹                                        :
------------------------------------------------------------------------ x
```

**URGENT MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER, UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 926(a) AND BANKRUPTCY RULE 9006, ESTABLISHING (I) PROCEDURES WITH RESPECT TO DISCLOSURE OF AVOIDANCE ACTIONS TO BE ASSERTED BY OVERSIGHT BOARD, AND (II) EXPEDITED BRIEFING SCHEDULE FOR POTENTIAL REQUEST TO APPOINT TRUSTEE UNDER BANKRUPTCY CODE SECTION 926(a)**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1
JURISDICTION AND VENUE ................................................................................................. 5
BACKGROUND ......................................................................................................................... 5
    A.    Committee's Focus on Investigation of Avoidance Actions ................................ 5
    B.    Kobre & Kim Report Fails to Address Avoidance Actions .................................. 8
    C.    Oversight Board's Retention of Claims Counsel .................................................. 9
    D.    Committee's Bankruptcy Rule 2004 Investigation Regarding Avoidance
        Actions ................................................................................................................ 10
    E.    Continuing Discussions with Oversight Board .................................................... 11
REQUESTED RELIEF .............................................................................................................. 12
NOTICE ..................................................................................................................................... 15
NO PRIOR REQUEST .............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aurelius Inv., LLC v. Puerto Rico*,
   915 F.3d 838 (1st Cir. 2019)..................................................................................................12

*In re Chinichian*,
   784 F.2d 1440 (9th Cir. 1986) ................................................................................................13

*Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,
   722 F.2d 1063 (2d Cir. 1983)..................................................................................................13

**Statutes**

11 U.S.C.
   § 105(a) ........................................................................................................................1, 5, 12, 13
   § 544..................................................................................................................................1, 3, 8, 14
   § 545.......................................................................................................................................1, 3, 8
   § 546(a) .........................................................................................................................................1
   § 547..........................................................................................................................................1, 3
   § 547(f).......................................................................................................................................1, 8
   § 548.......................................................................................................................................1, 3, 8
   § 549(a) .........................................................................................................................................3
   § 550..............................................................................................................................................3
   § 553..............................................................................................................................................1
   § 926(a) ..................................................................................................................................1, 3, 4

PROMESA
   § 301(a) .........................................................................................................................................1
   § 306(a) .........................................................................................................................................5
   § 307(a) .........................................................................................................................................5
   § 310..............................................................................................................................................1

**Other Authorities**

Fed. R. Bankr. P.
   R. 2004............................................................................................................................... *passim*
   R. 9006.....................................................................................................................................1, 5
   R. 9006(c)(1)..........................................................................................................................13, 14

Local Rule
   R. 9013-1......................................................................................................................................5
   R. 9013-1(a) ...............................................................................................................................13
   R. 9013-1(a)(2) ..........................................................................................................................15

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") hereby submits this urgent motion (the "Motion"), pursuant to sections 105(a) and 926(a) of Title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these Title III cases by section 301(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), and Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these Title III cases by section 310 of PROMESA, requesting entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), establishing procedures for (a) the disclosure to the Committee of causes of action that the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") will assert prior to the expiration of the applicable statute of limitations set forth in section 546(a) of the Bankruptcy Code and (b) expedited briefing and a hearing for a potential motion by the Committee to appoint a trustee under section 926(a) of the Bankruptcy Code. In support of the Motion, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Under section 546(a) of the Bankruptcy Code, the deadline to assert avoidance actions ("Avoidance Actions")[1] is two years from the applicable Debtor's petition date (each, a "Section 546 Deadline").[2] As the Court is well aware, the Debtors' Section 546 Deadlines are

---

[1] An "Avoidance Action" as used herein refers to any action or proceeding under sections 544, 545, 547, 548, or 553 of the Bankruptcy Code.

[2] See 11 U.S.C. 546(a).

    (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

        (1) the later of—

            (A) 2 years after the entry of the order for relief; or

imminent: the Commonwealth's deadline is May 2, 2019, ERS's and HTA's deadline is May 20, 2019, and PREPA's deadline is July 1, 2019.

2. The Oversight Board has had over two and a half years since its appointment in August 2016 to investigate Avoidance Actions, and, for the entire duration of these Title III cases, the Committee has consistently advocated for the expeditious investigation and, where appropriate, prosecution of such causes of action. As discussed more fully below, the Committee emphasized the importance of investigating Avoidance Actions in multiple filings going all the way back to July 2017. In fact, in November 2018, after the Committee was informed that the Oversight Board had still not commenced an investigation of Avoidance Actions despite the Committee's frequently-voiced concerns about the limited time to do so, the Committee accelerated its own investigation, requesting and subsequently obtaining a Court order[3] authorizing it to conduct discovery with respect to certain prepetition transfers. Since then, the Committee also coordinated with the Oversight Board in its investigatory efforts regarding potential Avoidance Actions.

3. Importantly, in the first instance, it is the Oversight Board that is the party authorized under PROMESA to pursue Avoidance Actions. The Committee's only recourse in the event the Oversight Board declines to pursue a meritorious Avoidance Action is to move for the appointment of a trustee under section 926(a) of the Bankruptcy Code.[4] Any motion to

---

      (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

  (2) the time the case is closed or dismissed.

[3] *Order Granting Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery of Title III Debtors, Other than COFINA, Concerning Potential Avoidance Actions* [Docket No. 4484].

[4] 11 U.S.C. § 926(a) ("If the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then on request of a creditor, the court may appoint a trustee to pursue such cause of action."). To avoid wasting time on a hyper-technical argument that the Committee is not a "creditor" and thus

2

appoint a trustee (a "Section 926 Motion") must be filed well in advance of the applicable Section 546 Deadline, not only to facilitate briefing on and resolution of the motion but also because the trustee, if appointed, will need time to prepare and assert the Avoidance Actions in question. Unfortunately, even at this late date, the Oversight Board has declined to confirm which Avoidance Actions it will assert, or, indeed, whether it will assert any at all. To make matters worse, the Oversight Board has even refused to agree to a schedule pursuant to which it would make such a disclosure sufficiently ahead of the Section 546 Deadline to allow the Court to hear a Section 926 Motion on shortened notice.

4. The Oversight Board's silence regarding its intentions in this regard puts the Committee in an impossible position. On the one hand, the Committee could wait and see whether the Oversight Board asserts Avoidance Actions by the Section 546 Deadline. Doing so, however, effectively means that the right to seek appointment of a receiver to pursue Avoidance Actions under section 926(a) of the Bankruptcy Code will be lost. If the Oversight Board reveals, on the eve of the applicable Section 546 Deadline, that it declines to pursue one or more valuable Avoidance Actions, there will simply be no time left for the Committee to file and prosecute a Section 926 Motion, and a trustee appointed under section 926(a) to file Avoidance Actions prior to the Section 546 Deadline.

5. On the other hand, if the Committee were to file a Section 926 Motion now, the Oversight Board would surely respond that such a motion should be denied on the ground that the necessary statutory predicate—*i.e.*, the Oversight Board's refusal to pursue Avoidance Actions—has not been satisfied, because the Oversight Board continues to evaluate whether to assert such actions and has not yet refused to pursue them. In other words, given the imminent

---

not allowed to file a Section 926 Motion, any Section 926 Motion filed by the Committee would be joined by at least one member of the Committee.

3

expiration of the Section 546 Deadline, **the Committee can only effectively seek relief under section 926(a) if it has clarity as to the Oversight Board's intentions regarding its pursuit of Avoidance Actions sufficiently in advance of the applicable Section 546 Deadline**.

6.  To ensure that valuable Avoidance Actions are not forfeited, and to protect the right to file a Section 926 Motion, the Committee requests that the Court (a) require the Oversight Board to provide to the Committee **by April 1, 2019** a list of Avoidance Actions that the Oversight Board will pursue and (b) allow the Committee to submit, on an expedited basis, a Section 926 Motion seeking the appointment of a trustee to assert Avoidance Actions that the Oversight Board refuses to pursue. In particular, the Committee requests that any Section 926 Motion be filed by **Friday, April 5, 2019**, with the Oversight Board's objection due by **Wednesday, April 10, 2019**, and the Committee's reply due by **Friday, April 12, 2019**. The Committee further requests that any such Section 926 Motion be heard as early as the Court can hear the matter during the week of April 15, 2019. Any longer timetable would lead to potential forfeiture of claims through inaction.

7.  To be clear, this Motion is only procedural in nature and does not seek to affect the rights of the Oversight Board to object to an eventual Section 926 Motion on any basis. In fact, the Proposed Order expressly preserves the Oversight Board's rights in this regard. Moreover, the Committee is in no way seeking to usurp the Oversight Board's right to assert Avoidance Actions. In fact, the Committee would be happy for the Oversight Board to assert such actions and hopes to continue to work cooperatively with the Oversight Board, thereby obviating the need to file a Section 926 Motion. However, the Committee must protect the rights of its constituents. The Committee has a fiduciary obligation to ensure that appropriate Avoidance Actions are asserted. Thus, it must be allowed to bring a Section 926 Motion with

enough time for a trustee to assert Avoidance Actions with respect to which the Oversight Board has failed to act. The Committee should not be forced to wait until the eve of the Section 546 Deadline in the hope that the Oversight Board ultimately determines to assert appropriate Avoidance Actions.

8.  For all these reasons, the Committee believes that it is necessary and appropriate to (a) require the Oversight Board to disclose to the Committee by April 1, 2019 the Avoidance Actions that it will pursue and (b) expedite the briefing and hearing schedule on a Section 926 Motion in the event that the Oversight Board improperly refuses to pursue Avoidance Actions.

## JURISDICTION AND VENUE

9.  The Court has subject matter jurisdiction over this matter pursuant to section 306(a) of PROMESA.

10.  Venue is proper pursuant to section 307(a) of PROMESA.

11.  The statutory bases for the relief requested herein are section 105(a) of the Bankruptcy Code and Bankruptcy Rule 9006, Rule 9013-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *Eighth Amended Notice, Case Management and Administrative Procedures* [Docket No. 4866-1] (the "Case Management Procedures").

## BACKGROUND

**A.  Committee's Focus on Investigation of Avoidance Actions**

12.  As the Court is well aware, the Committee has been consistently focused on the issue of Avoidance Actions since its appointment. As early as July 2017, the Committee filed an initial Bankruptcy Rule 2004 motion (the "July 2017 Motion") seeking information relating to, among other things, potential causes of action and "potential improprieties and misconduct

5

relating to the structuring, issuance, underwriting and selling of the Commonwealth's debt which may have impacted the value of the Commonwealth's Estate." [5]

13. Subsequently, based on representations by the Oversight Board that it would retain an investigator, Kobre & Kim LLP (the "Investigator"), the Court ordered the parties to meet and confer as to whether any investigation topics could be "spun off" and handed directly to the Committee.[6] The Oversight Board subsequently retained Kobre & Kim LLP to serve as the Investigator and remained unwilling to cede any matters to the Committee.[7]

14. At the omnibus hearing on November 15, 2017, Magistrate Judge Dein denied the July 2017 Motion without prejudice, indicating that it was "premature" and that "the [Investigator] should be given the opportunity to conduct this investigation . . . ."[8] At that point, based upon representations made by the Investigator and the Oversight Board, the Court and the Committee were under the impression that the investigation would be completed and a report filed by, at the latest, April 2018.[9]

---

[5] *Motion of Official Committee of Unsecured Creditors for Order under Bankruptcy Rule 2004, Authorizing Discovery Program with Respect to Certain Causes of Puerto Rico Financial Crisis* [Docket No. 706] (the "July 2017 Motion") ¶ 33.

[6] Aug. 22, 2017 H'g Tr. at 89:17 - 90:1.

[7] *See Informative Motion of Official Committee of Unsecured Creditors and Status Report Regarding Discovery Discussions, Renewed Request for Authorization of Discovery Under Bankruptcy Rule 2004, and Agreed Notice to Conduct Hearing on Motion at October 4, 2017 Omnibus Hearing* ¶¶ 12, 16 [Docket No. 1284].

[8] Nov. 15, 2017 H'g Tr. at 72:21; 73:1-2. The court indicated that the Committee could renew the motion with a more targeted request. Nov. 15 Transcript, at 82:25-83:1. An order denying the July 2017 Motion without prejudice was entered on November 17, 2017 [Docket No. 1827].

[9] In the October 30, 2017 Interim Report, the Investigator represented that its work had begun immediately after being hired by the Oversight Board on September 1, 2017, and that review could be completed within 200 days of retention, *i.e.* at the latest by March 20, 2018. *Independent Investigator's First Interim Report* (Oct. 30, 2017) ¶ 3, https://drive.google.com/file/d/1l8dlm6776iFN7voR-mIn-RZp1olANauL/view. During the November 15, 2017 hearing, the Oversight Board's counsel stated: "From September 1, 200 days takes us into late March. Let's assume that it goes a little longer than that into April. By April, the investigation, at least based on current projections, will be completed and a report will be produced." Nov. 15, 2017 H'g Tr. at 59:22-60:1.

6

15. On April 5, 2018, after missing its own targeted date for the production of the its final report, the Investigator advised the Court that it would not meet the initial delivery target and that a "realistic time frame for the preparation and delivery of a final investigation report is during the summer of 2018."[10]

16. In view of the Investigator's lack of progress, and given the scale of the potential claims and causes of action the Committee would need to evaluate, on May 15, 2018 the Committee filed a renewed Rule 2004 motion (the "Renewed Motion").[11] In the Renewed Motion, the Committee noted that "a delay of even a few additional months could significantly hinder the Committee's claims identification work—as, for example, certain avoidance actions could expire in May 2019, two years after the commencement of the title III cases."[12] Indeed, during the June 6, 2018 omnibus hearing, the Court stated: "**I accept the concern of the May 2019 date. I think that that's real.**"[13]

17. The Court, by order entered July 25, 2018, denied certain of the Committee's requests but directed that the Renewed Motion remain open "such that requests may be made pursuant to it after the publication of the Independent Investigator's report."[14]

---

[10] *See Independent Investigator's Second Interim Report* (April 5, 2018) ("Second Interim Report") ¶ 6, https://drive.google.com/file/d/1vQwUucUMJ1579DQ3UoSkvIQsXdLo1jqi/view. In the Second Interim Report, the Investigator claimed that "evidence-recovery and review issues that have arisen in the aftermath of Hurricanes Irma and Maria," justified its failure to meet its own target notwithstanding that the initial target was proposed six weeks after the Hurricanes and the bulk of the documents to be reviewed were on the mainland. *Id.* ¶ 6.

[11] *Renewed Motion of Creditors' Committee Seeking Entry of Order, Under Bankruptcy Rule 2004, Authorizing Discovery Program with Respect to Certain Causes of Puerto Rico Financial Crisis Beginning on August 15, 2018* [Docket No. 3066].

[12] Renewed Mot. ¶ 28.

[13] June 6, 2018 H'g Tr. at 109:8-9 (emphasis added).

[14] *See* Order ¶ 3 [Docket No. 3698]; *see also* June 6, 2018 H'g Tr. at 98:22-99:3 ("What I don't want to do, though, is end up in September with a discussion about what has been produced and what has not been produced. . . . But that's really a critical concern to me at the moment, because there seems to be shifting representations as to what's been available and what has not been available.").

7

**B.    Kobre & Kim Report Fails to Address Avoidance Actions**

18.    On August 20, 2018, the Investigator issued its Final Investigative Report (the "Kobre & Kim Report"),[15] which as the Committee anticipated, was inadequate in a number of significant aspects.[16] As the Committee noted in its Informative Motion, the Kobre & Kim Report did not opine on the likelihood of success of any claim,[17] and did not even address the question of whether any Avoidance Actions could be maintained by any of the Debtors. Indeed, these issues were carved out of the investigation, with the Investigator noting that "we were not tasked with identifying or analyzing every payment or transfer made by each of the Debtors before commencement of the Title III Proceedings" and that "we did not have the benefit of a solvency analysis for any of the Debtors or comprehensive discovery pertaining to discrete prepetition transactions between the Debtors and third parties (e.g., lists of payments to creditors, which is typically contained in a chapter 11 debtor's Statement of Financial Affairs)."[18]

19.    Moreover, because the Kobre & Kim Report did not address Avoidance Actions, the documents made available to the Committee pursuant to the Investigator's "Exit Plan

---

[15]  FINANCIAL OVERSIGHT & MANAGEMENT BOARD FOR PUERTO RICO, Independent Investigator, *Final Investigative Report* (Aug. 20, 2018) (*available at* https://drive.google.com/open?id=19-lauVo3w9MPS03xYVe0SWhQin-Q6FEf).

[16]  *See Creditors' Committee's Information Motion Regarding Kobre & Kim Final Report* [Docket No. 3866] (the (the "Informative Motion").

[17]  "The Report also provides a discussion and survey of potential causes of action that the Independent Investigator identified that may arise from the facts learned through the investigation. **That discussion is not intended to provide an exhaustive or definitive list and analysis of causes of action that may be available to investors, creditors, debtors, regulators and other parties. Indeed, we do not opine on the likelihood of success of any cause of action**." Final Rep. at 30 (emphasis added).

[18]  Final Rep. at 535; *see id*. at 502; 504. A solvency analysis is not necessary to analyze the viability of certain Avoidance Actions, e.g., actual fraudulent conveyance claims under Bankruptcy Code sections 544 and 548 and avoidance of certain statutory liens pursuant to Bankruptcy Code section 545. Further, with respect to any challenge to a transfer made within 90 days before the Title III filing on the grounds that such transfer was a preference, insolvency is presumed pursuant to section 547(f) of the Bankruptcy Code.

8

Order"[19] did not provide information necessary to conduct a thorough review of Avoidance Action claims.

C. **Oversight Board's Retention of Claims Counsel**

20. On October 24, 2018, over two months after the Kobre & Kim Report was made public, the Oversight Board's Special Claims Committee (the "Oversight Board Claims Committee") issued a Request for Proposal (the "RFP") for counsel ("Claims Counsel") to assist the Oversight Board Claims Committee in its review of the Kobre & Kim Report.[20] Specifically, the RFP provided that the "scope of the work" to be completed by Claims Counsel was to "further consider potential claims that might arise from the conduct described in the Report," and will include "(i) review and assessment of the Report and the factual materials that form the basis of the Report, (ii) legal research as necessary to advise the [Oversight Board Claims Committee] regarding potential causes of action and (iii) initiation of any litigation arising from the conduct described and/or referrals to prosecutorial or regulatory bodies."[21] On November 29, 2018, the Oversight Board announced that it had selected Brown Rudnick LLP as Claims Counsel. The Committee's professionals have worked extensively with the Oversight Board's Claims Counsel to introduce them to the various potential claims that could be asserted in these Title III cases, including Avoidance Actions.

---

[19] *Order Approving Motion of Independent Investigator for an Order (I) Establishing Procedures for Resolving any Confidentiality Dispute in Connection with Publication of the Independent Investigator's Final Report; (II) Approving the Disposition of Certain Documents and Information; (III) Relieving the Independent Investigator from Certain Discovery Obligations; (IV) Exculpating the Independent Investigator in Connection with the Investigation and Publication of the Final Report; and (V) Granting Related Relief* [Docket No. 3744] (the "Exit Plan Order").

[20] RFP, https://drive.google.com/file/d/1d073bWZXbsDu5YkFplmYVr_mfT0byWh-/view.

[21] RFP at 2. The deadline for submission of proposals was November 12, 2018.

9

**D.    Committee's Bankruptcy Rule 2004 Investigation Regarding Avoidance Actions**

21.    On November 27, 2018, shortly before the Oversight Board's retention of Brown Rudnick as Claims Counsel, the Committee filed a Rule 2004 motion (the "November 2018 Motion") seeking discovery with respect to certain potential Avoidance Actions, specifically transfers of property valued at $3 million or more within two years prior to the Petition Date.[22] The November 2018 Motion discussed, among other things, the Committee's repeated efforts to conduct a diligent investigation into potential Avoidance Actions as well as the lack of action by the Oversight Board in this regard up to that point.  The Committee also stressed again the significance of the impending Section 546 Deadlines, warning that "the deadline for commencing Avoidance Actions on behalf of many of the Debtors is rapidly approaching in May 2019"[23] and that, while "[t]he Committee, at the Court's direction, has already adopted a 'wait-and-see' approach for more than 18 months" the Committee needed to commence an investigation given that "now only five months remain until the statute of limitation expires with respect to most of the Debtors' Avoidance Actions."[24]  No objections were filed to the November 2018 Motion and the Court entered an order granting the motion on December 14, 2018 (the "Rule 2004 Order").[25]

22.    Subsequent to the entry of the Rule 2004 Order, and up until the present, the Committee and the Oversight Board, through its Claims Counsel, have worked together with the Debtors to obtain the production of documents in connection with the Rule 2004 Order, as well

---

[22]  *Motion of Official Committee of Unsecured Creditors for Entry of Order, Under Bankruptcy Rule 2004, Authorizing Discovery With Respect to Potential Avoidance Actions* [Docket No. 4373].

[23]  *Id.* at ¶ 6.

[24]  *Id.* at ¶ 22.

[25]  *Order Granting Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery of Title III Debtors, Other than COFINA, Concerning Potential Avoidance Actions* [Docket No. 4484].

10

as in response to additional related document requests by the Committee.[26] In addition, Committee advisors have worked with advisors to the Oversight Board to coordinate efforts in connection with investigating potential Avoidance Actions.

E. **Continuing Discussions with Oversight Board**

23. In light of the impending Section 546 Deadlines, in January 2019 the Committee's advisors convened a meeting with the various advisors to the Oversight Board and AAFAF to discuss the status of the Oversight Board's preparation for asserting Avoidance Actions. At that meeting, the Committee's advisors highlighted the types of claims that could be brought and left the meeting with the clear understanding that the Oversight Board's advisors would review and pursue meritorious claims. The Committee's understanding, based on ongoing cooperation with the Oversight Board, is that its advisors are continuing to work on this project. Despite the Committee's persistent inquiries, however, the Oversight Board has not yet committed to bring (at least not to the Committee's knowledge) any Avoidance Action.

24. On March 21, 2019, with only six weeks remaining before the first Section 546 Deadline, Committee's counsel sent an email to counsel for the Oversight Board indicating that the Committee could not wait indefinitely to obtain confirmation from the Oversight Board as to which Avoidance Actions it will pursue. Accordingly, Committee's counsel proposed that the Oversight Board enter into a stipulation consistent with the Proposed Order (a) requiring the Oversight Board to identify by April 1, 2019 the Avoidance Actions it will pursue and (b) providing for expedited briefing on a Section 926 Motion in the event the Committee believes that additional meritorious claims should be pursued. The Committee requested a response to

---

[26] *See Status Report Pursuant to Order Granting Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery of Title III Debtors, Other than COFINA, Concerning Potential Avoidance Actions* [Docket No. 4818]; *Further Status Report Concerning Order Granting Motion of Official Committee of Unsecured Creditors for Order, Under Bankruptcy Rule 2004, Authorizing Discovery of Title III Debtors, Other Than COFINA, Concerning Potential Avoidance Actions* [Docket No. 5203].

11

the proposed stipulation by March 25, 2019 so that the Committee would have time to file this Motion and have it heard on an expedited basis in advance of the proposed April 1 deadline for identifying Avoidance Actions.

25. The Oversight Board's counsel responded the next day that the Oversight Board is focused on the issue, will be addressing it shortly, and will attempt to meet the Committee's requested timetable and will provide an update during the week of March 25. In a separate email, Oversight Board's counsel suggested that the parties continue a dialogue and enter into a stipulation over the next two weeks. While the Committee appreciates the Oversight Board's willingness to continue a dialogue, it is completely unworkable for the Committee to wait for two weeks to enter into a stipulation, let alone wait even longer to receive the list of Avoidance Actions the Oversight Board will pursue. Receiving that information in mid-April (or potentially later) will leave effectively no time for the Committee to file a Section 926 Motion and for a trustee to assert Avoidance Actions prior to the Section 546 Deadlines.

26. Because, as of the time of the filing of this Motion, the Oversight Board has not made a commitment to provide to the Committee by April 1, 2019 the list of Avoidance Actions it will pursue, the Committee is left with no choice but to file this Motion to protect the rights of its constituents.[27]

**REQUESTED RELIEF**

27. Section 105(a) of the Bankruptcy Code provides that a bankruptcy court may "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions

---

[27] On March 21, 2019, Aurelius filed an informative motion [Docket No. 5977] advising the Court of its belief that in light of the First Circuit's decision in *Aurelius Inv., LLC v. Puerto Rico*, 915 F.3d 838 (1st Cir. 2019) (the "Appointments Clause Decision") "there is no longer any doubt that all actions undertaken by the invalid Board after February 15, 2019 are at risk of being invalidated." The Committee is considering the impact, if any, that the Appointments Clause Decision and Aurelius' informative motion could have on Avoidance Actions commenced by the Oversight Board after the Appointments Clause Decision.

12

of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Under section 105(a) of the Bankruptcy Code, the court has expansive equitable power to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets. *See, e.g., In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code.") (citations omitted); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1069 (2d Cir. 1983) ("[A] bankruptcy judge must have substantial freedom to tailor his orders to meet differing circumstances."). In addition, Bankruptcy Rule 9006(c)(1) provides that "the court for cause shown may in its discretion with or without motion or notice order the period [for notice] reduced." Further, Local Rule 9013-1(a) allows a party to request "an order on an expedited basis."

28. Approval of the relief requested in the Proposed Order is an appropriate use of the Court's power under section 105(a) of the Bankruptcy Code, and is necessary to preserve the Committee's and its constituents' rights under section 926(a) of the Bankruptcy Code. The Oversight Board, which was appointed in August 2016 and which commenced the Commonwealth's Title III case in May 2017, has had years to investigate potential Avoidance Actions. All the while, the clock has been ticking, and now the Commonwealth's Section 546 Deadline (May 2, 2019) is imminent, with other deadlines to follow shortly thereafter. Despite the looming deadlines, the Oversight Board has refused to confirm which Avoidance Actions it will pursue (or even agree to provide such list by any date certain), and it remains possible that the Oversight Board will not pursue any at all. Thus, the Committee and its constituents face the very real risk that the Oversight Board will not reveal which Avoidance Actions to assert until the eve of the applicable Section 546 Deadline, thereby leaving no time for the Committee to file

13

a Section 926 Motion, to have such motion be heard and granted, and for a trustee to commence Avoidance Actions prior to the applicable deadline.

29. For these reasons, the Committee requests that (a) the Oversight Board be required to provide to the Committee **by April 1, 2019** a list of Avoidance Actions that the Oversight Board will pursue and (b) the Committee be allowed to submit, on an expedited basis, a Section 926 Motion seeking the appointment of a trustee to assert Avoidance Actions that the Oversight Board refuses to pursue.[28] The Committee submits that the relief requested is appropriate and necessary to ensure that no valuable Avoidance Actions are forfeited.

30. Further, the shortening of the notice period in connection with the Section 926 Motion that the Committee may file pursuant to the expedited briefing schedule is proper under Bankruptcy Rule 9006(c)(1), which provides that "the court for cause shown may in its discretion with or without motion or notice order the period [for notice] reduced." Given the urgent need for a ruling on any Section 926 Motion prior to the imminent Section 546 Deadlines, cause exists to schedule the Procedures Motion on an expedited basis.

31. As the historical record in these Title III cases makes clear, the Committee has acted diligently with respect to Avoidance Actions at every step and clearly voiced, on repeated occasions, its concerns regarding the Section 546 Deadlines and the need to investigate and, if necessary, pursue Avoidance Actions in an expeditious manner. The Committee is forced to request expedited procedures now, not as a result of any lack of diligence on its part, but because the Oversight Board has, despite the Committee's urging, failed to identify the Avoidance Actions that it will pursue or even agree to provide such a list by a date certain.

---

[28] In particular, the Committee requests that any Section 926 Motion be filed by **Friday, April 5, 2019**, with the Oversight Board's objection due by **Wednesday, April 10, 2019**, and the Committee's reply due by **Friday, April 12, 2019**. The Committee further requests that any such Section 926 Motion be heard as early as the Court can hear the matter during the week of April 15, 2019.

32. Pursuant to Section I.H. of the Case Management Procedures, undersigned counsel certifies that it has engaged in reasonable, good-faith communications with counsel to the Oversight Board, but has been unable to obtain the Oversight Board's consent to the expedited consideration of this Motion. Moreover, in accordance with Local Rule 9013-1(a)(2), undersigned counsel certifies that counsel has carefully examined the matter and concluded that there is a true need for an urgent hearing, and that the movant has not created the urgency through lack of due diligence on its part. The undersigned further certifies that movant made a bona fide and good faith effort to resolve the matter without a hearing.

## NOTICE

33. Notice of this Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) AAFAF; (v) the official committee of retirees; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; and (viii) all parties that have filed a notice of appearance in the above-captioned Title III cases.

## NO PRIOR REQUEST

34. No previous request for the relief requested herein has been made to this or any other court.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that this Court enter an order substantially in the form attached hereto as Exhibit A granting the relief requested herein, and granting the Committee such other relief as this Court deems just and proper.

Dated: March 25, 2019

*/s/ Luc A. Despins*
PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
Nicholas A. Bassett, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*