**Reply Deadline: March 27, 2019, at 3:00 p.m. (AST)**
**Hearing Date and Time: April 1, 2019, at 2:30 p.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors. | ) ) ) ) ) ) ) ) ) ) ) ) ) | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

**MOVANTS' OPPOSITION TO THE URGENT MOTION OF FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD, AS REPRESENTATIVE OF DEBTOR,
TO COMPEL ANSWERS TO INTERROGATORIES
(AND PRODUCTION OF RELATED DOCUMENTS)**

Case:17-03283-LTS Doc#:5999 Filed:03/25/19 Entered:03/25/19 14:49:15 Desc: Main
Document Page 2 of 20

## **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ...........................................................................................................................1
BACKGROUND .............................................................................................................................4
ARGUMENT ...................................................................................................................................7
I.     The Bondholders' Responses To Interrogatories 5, 6, And 8 Are Complete
And Sufficient ........................................................................................................7
II.    There is No Ripe Dispute Over Request For Production 7 ................................................10
III.   The Bondholders' Response To Interrogatory 9 Is Complete And
Sufficient ..............................................................................................................11
CONCLUSION ..............................................................................................................14


# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Byrne v. Oester Trucking, Inc.*,
386 F. Supp. 2d 386 (S.D.N.Y. 2005) .................................................................................. 9

*Continental W. Ins. Co. v. Opechee Constr. Corp.*,
No. 15-cv-006-JD, 2016 WL 1642626 (D.N.H. Apr. 25, 2016) ......................................... 10

*Edeh v. Equifax Info. Servs., LLC*,
No. 11-2671, 2013 WL 1749912 (D. Minn. Apr. 23, 2013) ............................................... 10

*Flour Mills of Am., Inc. v. Pace*,
75 F.R.D. 676 (E.D. Okla. 1977) ........................................................................................ 9

*Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*,
728 F. Supp. 2d 1170 (D.N.M. 2010) ................................................................................. 9

*In re 364 E 66th St. Realty Corp.*,
177 B.R. 776 (Bkcy. E.D.N.Y. 1995) ................................................................................ 12

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
914 F.3d 694 (1st Cir. 2019) ..................................................................................... 3, 4, 5, 7

*In re Simon*,
50 B.R. 391 (Bkcy. D. Minn. 1985) ................................................................................... 12

*Johnstone v. Fox*,
No. 85 C 3179, 1986 WL 7978 (N.D. Ill. July 11, 1986) .................................................... 3

*Kyriazi v. W. Elec. Co.*,
74 F.R.D. 468 (D.N.J. 1977) .............................................................................................. 14

*Leeper v. A.J. Lines*,
No. 2:15-CV-414-WCL-PRC, 2016 WL 6610833 (N.D. Ind. Nov. 9, 2016) ................... 10

*Oleson v. United States*,
No. 05-C-33-C, 2005 WL 2297136 (W.D. Wisc. Sept. 19, 2005) ..................................... 11

*Pamlab, L.L.C. v. Brookstone Pharms., L.L.C.*,
No. 09-7434, 2010 WL 11541806 (E.D. La. Feb. 19, 2010) .............................................. 3

*Peaje Invs. LLC v. García-Padilla*,
845 F.3d 505 (1st Cir 2017) ............................................................................................ 3, 6

*United States v. Two Bank Accounts*,
No. Civ. 06-4016-KES, 2008 WL 2696927 (D.S.D. July 2, 2008) ..................................... 3

**STATUTES**

11 U.S.C. § 362 ........................................................................................................................... 6

- iii -

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

**OTHER AUTHORITIES**

Black's Law Dictionary (10th ed. 2014) ................................................................................. 11, 12

Fed. R. Civ. P. 26 ................................................................................................................. 10

Fed. R. Civ. P. 37 ................................................................................................................. 10

To the Chambers of the Honorable Judith G. Dein:

The Bondholders[1] respectfully submit this opposition to the *Urgent Motion of Financial Oversight and Management Board, as Representative of Debtor, to Compel Answers to Interrogatories (And Production of Related Documents) from Movants Relating to the Stay Relief Motion*, Docket No. 5974 in Case No. 17-bk-03283 and Docket No. 403 in Case No. 17-bk-03566 (the "Motion to Compel"). The Motion to Compel concerns discovery ordered by Judge Swain in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, Docket No. 3418 in Case No. 17-bk-03283 and Docket No. 289 in Case No. 17-bk-03566 (the "Stay Relief Motion"). The Bondholders are secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), holders of bonds issued by ERS in 2008 (the "ERS Bonds").

**INTRODUCTION**

1. In response to discovery served by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Bondholders have already reviewed over 25,000

---

[1] The Bondholders are Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

documents, answered eleven interrogatories, and responded to seventeen requests for admission. The instant Motion to Compel is confined to three interrogatories that inquire into documents and information exclusively within the Oversight Board's possession (and that the Bondholders have long been attempting to obtain); a single objection the Bondholders interposed to one of the Oversight Board's document requests that the Bondholders already agreed not to use as a basis for withholding documents; and the Oversight Board's challenge to the Bondholders' use of a synonym for "diminution" rather than the word itself in an interrogatory response. These responses fully comply with the rules, and there is no basis for the Court to compel more.

2. The contrast between these contrived complaints and the serious deficiencies that are the subject of the Bondholders' own motion to compel is telling. *See Mot. of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Disc.*, Docket No. 5972 in Case No. 17-bk-03283 and Docket No. 402 in Case No. 17-bk-03566. While the Oversight Board can find little of substance to argue about, the Bondholders' motion concerns (a) Respondents'[2] efforts to withhold documents on privilege grounds without substantiating their privilege claims, *see id.* ¶¶ 33–44; (b) Respondents' refusal to conduct a competent search of documents, *see id.* ¶¶ 45–48; (c) the Oversight Board's blanket refusal to produce *any* documents responsive to four of the Bondholders' six narrow requests, *see id.* ¶¶ 49–55; (d) the Oversight Board's blanket refusal to designate a witness to be deposed about any of the Bondholders' eight tailored topics of questioning, *see id.* ¶¶ 56–64; and (e) ERS's and the Commonwealth's refusal to answer the two interrogatories that the Bondholders propounded, concerning the heart of the Stay Relief Motion, *see id.* ¶¶ 65–75.

---

[2] Respondents are ERS, the Commonwealth of Puerto Rico, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and the Oversight Board.

3. Discovery obligations are supposed to be reciprocal: "despite [Respondents'] protestations to the contrary, discovery is a two-way street, and not only [Respondents are] entitled to it." *Pamlab, L.L.C. v. Brookstone Pharms., L.L.C.*, No. 09-7434, 2010 WL 11541806, at *1 (E.D. La. Feb. 19, 2010); *see also, e.g.*, *United States v. Two Bank Accounts*, No. Civ. 06-4016-KES, 2008 WL 2696927, at *3 (D.S.D. July 2, 2008) ("The process of discovery is a two-way street that is designed to allow each party to the lawsuit to discover the facts and witnesses the other party intends to present at the trial of the case."); *Johnstone v. Fox*, No. 85 C 3179, 1986 WL 7978, at *1 (N.D. Ill. July 11, 1986) ("Discovery, though, is a two way street. McDonald must satisfy the legitimate discovery requests of the other parties."). In this case, the Oversight Board is obstructing the Bondholders' discovery requests at every turn. Its minor objections to the extensive discovery the Bondholders have provided must be seen for what they are: attempted distractions from the Oversight Board's own failure to respond to reasonable discovery no more extensive than the requests to which the Bondholders have already responded.

4. Reciprocity is especially important here, where the scope of discovery is now well defined. The First Circuit has already held that the Bondholders have perfected security interests that "cannot be avoided under" PROMESA. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d 694, 703 (1st Cir. 2019). The First Circuit has also already held that even a temporary diversion of the Bondholders' collateral against the backdrop of a claimed uncertainty about ERS's ability to repay the ERS Bonds established a legally sufficient claim that the Bondholders lacked adequate protection. *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 514 (1st Cir 2017); *see also Unofficial Tr., Altair Glob. Credit Opportunities Fund (A), LLC v. García-Padilla*, No. 16-2433, at 36:21-37:1 ("But I'm just having great difficulty with your argument that there's this seven-

month window where the government can entirely, entirely destroy the value of collateral a hundred percent and yet that wouldn't in and of itself be good cause.").

5. The only question remaining for the Stay Relief Motion is whether the Bondholders' collateral is being diminished. That question concerns two things: (a) where this collateral is now found and (b) whether it is being diminished in value. The answers to both questions lay in the actions the Oversight Board, the Commonwealth, ERS, and AAFAF have taken, and the evidence of this conduct is in their exclusive possession. Yet each of these supposedly independent agencies (that were counter-parties in the transactions at issue) has been exceptionally secretive when it comes to producing this evidence, dragging their feet when asked to produce documents, interposing frivolous objections, and making aggressive claims of privilege.

6. In any event, the issues the Oversight Board raises in its Motion to Compel are unfounded. The Bondholders' responses to Interrogatories 5, 6, and 8 are entirely appropriate; there is no ripe dispute over Request for Production 7; and the Bondholders have fully and properly answered Interrogatory 9. The Court should therefore deny the Oversight Board's Motion to Compel.

**BACKGROUND**

7. ERS "is a trust and government agency created in 1951 by an Act of the Commonwealth," and it "is structured to provide pensions and other retirement benefits to employees and officers of the Commonwealth government, members and employees of the Commonwealth's Legislative Assembly, and officers and employees of the Commonwealth's municipalities and public corporations." *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 704. ERS "is designated as 'independent and separate' from other Commonwealth agencies." *Id.* Until legislation in July 1, 2017 (*see infra* ¶ 10), ERS was funded by employer contributions, employee contributions, and its investment earnings. Employers were required to pay monthly

contributions to ERS. ERS's "statutory right to receive [e]mployer[] [c]ontributions [was] an obligation of the [e]mployers and a legal asset of [ERS]." ERS Bond Resolution V-5.

8. In 2008, "[s]eeking to decrease an unfunded liability of approximately $9.9 billion," ERS issued approximately $3 billion in bonds pursuant to a Pension Funding Bond Resolution (the "ERS Bond Resolution"). *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 704. An integral part of this transaction was an extensive security package to protect the Bondholders' investment. ERS granted the Bondholders, through a Fiscal Agent, a security interest in and lien on certain property of ERS ("Pledged Property"), as defined in the ERS Bond Resolution. Pledged Property includes, *inter alia*, "all employer contributions received by ERS" and "any assets in lieu thereof or derived thereunder"; all "right, title, and interest of [ERS] in and to" those contributions; "all rights to receive the same"; and "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property," including, "without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property. ERS Bond Resolution § 501 & Ex. B, VI-33, VI-36, VI-37.

9. The First Circuit has held that the Bondholders have perfected security interests in the Pledged Property that "cannot be avoided under" PROMESA, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 703. And Respondents had repeatedly conceded that the Bondholders had, *e.g.*, "valid and enforceable liens over hundreds of millions of dollars of ERS revenue, which [would] continue to grow." *Resp't Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Br. in Opp'n to Mot. for Relief From the PROMESA Automatic Stay*, No. 16-cv-2696, Docket 52, at 10 (Oct. 26, 2016).

10. Yet in the summer of 2017, the Puerto Rico Legislative Assembly and the Oversight Board executed a "Pay-Go" name change to transfer the Bondholders' collateral from ERS to the

Commonwealth.[3] They implemented the plan in two enactments in violation of the automatic stay in ERS's Title III case: Joint Resolution 188 and Act 106. Joint Resolution 188 and Act 106 did not meaningfully change the existing mechanisms for pension payments under the ERS Enabling Act and the ERS Bond Resolution. The money to pay pensions continued to come mostly from employer contributions, and the same people continued to be entitled to pension benefits and in about the same amount. The purpose and effect of Joint Resolution 188 and Act 106 was to divert the Bondholders' collateral to the Commonwealth and avoid payment on the ERS Bonds.

11. On July 3, 2018, the Bondholders filed their Stay Relief Motion, seeking relief from the Bankruptcy Code's automatic stay or, in the alternative, adequate protection of their liens on property of ERS, in which the Commonwealth now claims an interest. As the First Circuit had previously held in *Peaje Investments*, 845 F.3d at 511, adequate protection is a constitutional imperative. Further, § 362(d)(1) of the Bankruptcy Code, incorporated into PROMESA, states that, a court "shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay . . . for cause, *including the lack of adequate protection* of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (emphasis added).

12. In support of the Stay Relief Motion, the Bondholders argued that, as secured creditors, they were entitled to adequate protection or relief from the automatic stay on account of actions by ERS and the Commonwealth that decreased the value of the Bondholders' collateral. In opposition, the Oversight Board, on behalf of the debtors, argued that the Bondholders were not

---

[3] As early as April 2016, a Commonwealth advisor threatened to undermine the Bondholders' liens by altering the manner in which ERS operated. *See Mot. of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Discovery*, Docket No. 5972 in Case No. 17-bk-03283 and Docket No. 402 in Case No. 17-bk-03566, at ¶¶ 22, 30, 46.

- 6 -

entitled to relief from the automatic stay because of Joint Resolution 188 and Act 106. In particular, the Oversight Board argued that the Bondholders no longer have collateral because the new legislation had irrevocably altered the Bond Resolution's system for the remittance and handling of employer contributions. *E.g.*, *Debtor's Opp'n to Mot. of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* at 12, Docket No. 3465 in Case No. 17-bk-03283 and Docket No. 292 in Case No. 17-bk-03566 (the automatic stay is "not at issue" because "Movants are complaining about legislation by the Commonwealth creating a new pension system that does not generate Employers' Contributions"). Since there is no longer collateral, the logic went, there was nothing that could be diminished in value.

13. The Bondholders' Stay Relief Motion was temporarily mooted on August 21, 2018, when the District Court determined that the Bondholders did not have perfected security interests. After the First Circuit reversed the District Court, *see In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 702, the Bondholders renewed their motion, which is now set for a final hearing on May 21, 2019. In connection with the Stay Relief Motion, Respondents served on Movants seven document requests, eleven interrogatories, and seventeen requests for admission. Sooknanan Dec., ¶¶ 6–7, Ex. E, J, K.

## ARGUMENT

**I.  The Bondholders' Responses To Interrogatories 5, 6, And 8 Are Complete And Sufficient.**

14. The Oversight Board first asks the Court to compel the Bondholders to provide additional answers to Interrogatories 5, 6, and 8. Each of those interrogatories asks the Bondholders to "State the value of Your collateral of Pledged Property as of" particular dates: "May 21, 2017," Interrogatory 5; "the first day of each month since" May 21, 2017, Interrogatory

- 7 -

6; and "today," Interrogatory 8. But the Bondholders have already answered all three interrogatories to the best of their ability.

15. In response to Interrogatory 5, the Bondholders explained that they are:

"unable to state the value of their collateral or Pledged Property as of the date on which the ERS Title III Case was commenced, May 21, 2017, because the information necessary to make that determination is uniquely in the possession of ERS, the Commonwealth, AAFAF, and/or the Oversight Board. Some of that information is the subject of Movants' outstanding discovery requests to those parties."

16. In response to Interrogatory 8, the Bondholders similarly explained:

"The information necessary to determine the exact value of the Pledged Property, as of a given date, is uniquely in the possession of ERS, the Commonwealth, AAFAF, and/or the Oversight Board. Although Movants' collateral has been impaired by the diversion and dissipation of the Pledged Property, Movants do not have enough information to identify the exact value of the Pledged Property as of March 8, 2019. Some of that information is the subject of Movants' outstanding discovery requests to ERS, the Commonwealth, AAFAF, and the Oversight Board."

17. In response to Interrogatory 6, the Bondholders provided additional information:

"Movants are unable to state the value of their collateral or Pledged Property as of the first day of the month, for each month since the date on which the ERS Title III Case was commenced, May 21, 2017, because the information necessary to make those determinations is uniquely in the possession of ERS, the Commonwealth, AAFAF, and/or the Oversight Board. Some of that information is the subject of Movants' outstanding discovery requests to those parties."

"Subject to and without waiving the foregoing, Movants state that publicly available documents indicate that the value of Movants' collateral or Pledged Property has diminished since implementation of the automatic stay imposed upon commencement of ERS's Title III case. Employer contributions to ERS were purportedly eliminated as of July 1, 2017, employers have instead made more than $1.8 billion in pension system contributions directly to the Commonwealth from July 2017 through November 2018, and the Commonwealth has been dissipating those funds to pay other creditors. In addition, funds in ERS-related accounts decreased from $513 million as of November 30, 2017 to $375.9 million as of December 31, 2018. Further, the majority of ERS's liquid assets were depleted by the start of FY2018."

18. It should be no surprise that the Bondholders could not provide a precise value of their collateral in these responses. As explained above, *supra* ¶ 8, the Bondholders' collateral is the Pledged Property, which includes, among other things, employer contributions, the legal right to receive those contributions, and any proceeds from the substitution or disposition of the collateral. The Bondholders have no basis on which to state "the value" of that collateral as of any particular day, particularly in the wake of the concerted efforts by the Oversight Board and others to diminish and dissipate it, *supra* ¶ 10.

19. The Oversight Board complains that the Bondholders have "take[n] an unjustifiably narrow view of 'value' as a singular and objective measure," and that the Bondholders do not say "whether they have information concerning the value of their collateral." Mot. to Compel ¶ 27. But a "singular, objective measure" is what Interrogatories 5, 6 and 8 demand: they ask for "*the value of*" the Bondholders' collateral on various specific days. The Oversight Board evidently now agrees that these questions—the questions *it* asked—are "impossible to answer." *Id.* The Oversight Board may wish, in hindsight, that it had approached the questions in another way. But it chose its approach, and "[a] cryptic question invites an inscrutable answer." *Flour Mills of Am., Inc. v. Pace*, 75 F.R.D. 676, 681 (E.D. Okla. 1977); *see also, e.g.*, *Byrne v. Oester Trucking, Inc.*, 386 F. Supp. 2d 386, 391–92 (S.D.N.Y. 2005) (explaining that the "interrogatories did not solicit [the] information" that was allegedly omitted from the answer); *Guidance Endodontics, LLC v. Dentsply Int'l, Inc.*, 728 F. Supp. 2d 1170, 1200 (D.N.M. 2010) (similar).

20. In any event, the Bondholders provided a simple, reasonable explanation for why they cannot answer the questions that the Oversight Board asked in Interrogatories 5, 6, and 8—

- 9 -

they request information that the Bondholders have repeatedly asked for, but do not have.[4] Moreover, with respect to Interrogatory 6, the Bondholders went on to provide what information that they did have about the value of their collateral, even though that information is not, strictly speaking, called for. Consistent with their obligations under Federal Rule of Civil Procedure 26(e), the Bondholders will also supplement their answers if and when they receive adequate information from Respondents. There is no basis for the Court to compel more, and regardless, there is nothing more for the Court to compel. *See, e.g.*, *Continental W. Ins. Co. v. Opechee Constr. Corp.*, No. 15-cv-006-JD, 2016 WL 1642626, at *3 (D.N.H. Apr. 25, 2016) ("Linx cannot be compelled to produce what it does not have."); *Leeper v. A.J. Lines*, No. 2:15-CV-414-WCL-PRC, 2016 WL 6610833, at *2 (N.D. Ind. Nov. 9, 2016) ("[T]he Court cannot compel Defendant to provide information that it does not have, and Defendant has indicated that it will supplement its response as soon as it has additional information."); *Edeh v. Equifax Info. Servs., LLC*, No. 11-2671 (SRN/JSM), 2013 WL 1749912, at *9 (D. Minn. Apr. 23, 2013) ("The Court cannot require Equifax to provide information to Edeh that it does not possess.").

**II.     There Is No Ripe Dispute Over Request For Production 7.**

21.     The Oversight Board also asks the Court to "overrule" an objection Bondholders made to Request for Production 7, even though the Oversight Board acknowledges that the Bondholders "agreed not to withhold documents on the basis of that objection." Mot. to Compel ¶ 29. To state the obvious, there is no ripe dispute over this objection. Under Federal Rule of Civil Procedure 37(a)(3)(B), a motion to compel "may be made if . . . (iv) a party fails to produce

---

[4] *E.g.*, Request for Production of Documents No. 1 to the Commonwealth of Puerto Rico, Sooknanan Dec., ¶ 6, Ex. B; Request for Production of Documents No. 1 to the Employees Retirement System of the Government of the Commonwealth of Puerto Rico, Sooknanan Dec., ¶ 6, Ex. A.

documents or fails to respond that inspection will be permitted . . . as requested under Rule 34." Yet as the Oversight Board admits, the Bondholders have agreed they will not withhold responsive documents on this basis. Mot. to Compel ¶ 29. It is difficult to see why the Oversight Board bothered to move to compel on this point, and there is no reason for the Court to address it. *See, e.g.*, *Oleson v. United States*, No. 05-C-33-C, 2005 WL 2297136, at *1 (W.D. Wisc. Sept. 19, 2005) ("[P]laintiff does not say that he served defendant with interrogatories . . . and that defendant has refused to answer those interrogatories. Until plaintiff makes such a showing . . . it is inappropriate to consider a motion to compel disclosure of the information.").

**III.  The Bondholders' Response To Interrogatory 9 Is Complete And Sufficient.**

22. Finally, the Oversight Board argues that the Bondholders "fail to answer" Interrogatory 9, which asks the Bondholders to "State with specificity the cause of any alleged diminution in the value of Your collateral or Pledged Property." Mot. to Compel ¶ 32. But the Bondholders *did* answer Interrogatory 9:

> "The value of the Pledged Property has been impaired by, among other things, the permanent diversion of Movants' collateral from ERS to the Commonwealth, and the Commonwealth's dissipation of Movants' collateral to pay other creditors. ERS and the Commonwealth have also failed to provide Movants with adequate protection and opposed Movants' requests to lift the Title III stays, thus preventing Movants from taking actions to prevent the misappropriation of the Pledged Property and protect their constitutionally protected property interests."

23. *First*, the Oversight Board complains that the Bondholders have "evad[ed] and redefine[d] the question" by "saying how their collateral had been *impaired*—which is a broader concept that is not equivalent to diminution." Mot. to Compel ¶ 32. But the Oversight Board does not explain how "impairment" is different from "diminution." In fact, it is not different at all: "Impairment" and "diminution" are synonyms. *See Impairment*, Black's Law Dictionary (10th ed. 2014) ("The quality, state, or condition of being damaged, weakened, or *diminished*." (emphasis

- 11 -

added)); *see also Diminution*, Black's Law Dictionary (10th ed. 2014) ("The act or process of decreasing, lessening, or taking away."). No doubt for that reason, courts use "impairment" and "diminution" interchangeably in the adequate-protection context. *Compare, e.g.*, *In re Simon*, 50 B.R. 391, 392 (Bkcy. D. Minn. 1985) ("[A]dequate protection shields the creditor in the first instance from impairment in the value of his 'interest in property' . . . .") *with, e.g.*, *In re 364 E 66th St. Realty Corp.*, 177 B.R. 776, 782 (Bkcy. E.D.N.Y. 1995) ("The purpose or intent of granting adequate protection payments are to maintain the status quo for that creditor and to protect the creditor from diminution or loss of the value of its collateral during the ongoing Chapter 11 case."). This hair-splitting creates no legitimate complaint.

24. Moreover, when the parties held their meet-and-confer call on March 18, 2019, counsel for the Oversight Board made no mention of, and raised no concern about, the use of the term "impairment" rather than "diminution" in the Bondholders' response. Second Sooknanan Dec., ¶ 2, Ex. A. Had the Oversight Board's counsel done so, any concern could have been dealt with then and there. This is yet another reason to deny this part of the Board's motion.

25. *Second*, the Oversight Board complains that the Bondholders "provide nothing more than a conclusory statement about what caused this 'impairment.'" Motion to Compel ¶ 32. But that, too, is simply wrong. The Bondholders' answer explains exactly what has happened to their collateral: it has been "permanent[ly] diver[ted] . . . from ERS to the Commonwealth," and the Commonwealth has "dissipate[ed]" it "to pay other creditors." If the Oversight Board needs more information on the mechanisms used to impair the Bondholders' collateral, it should inquire internally, because the Oversight Board was directly involved in this diversion of the Bondholders' constitutionally protected property. *Supra* ¶ 10. Indeed, the Bondholders have asked for documents about these precise "mechanisms" (a term used by the Puerto Rico Legislative Assembly in

- 12 -

implementing its "Pay-Go" system) and have, yet again, been met with a stony wall of silence. *See* Second Sooknanan Dec., ¶¶ 3–5, Ex. B.

26. *Third*, the Oversight Board contends that the Bondholders cannot answer Interrogatory 9 without first identifying precisely the value of their collateral in response to Interrogatories 5, 6, and 8. But that is nonsense. The Bondholders can know that their collateral has diminished in value and why (the subject of Interrogatory 9), without also knowing how many dollars it was worth on the first day of every month from May 21, 2017 to today (the subject of Interrogatories 5, 6, and 8). Indeed, to know that their collateral has diminished in value, the Bondholders need only look at ERS's and the Oversight Board's dramatically shifting statements about the value of their collateral in this very court. On October 26, 2016, ERS reported that the Bondholders' collateral included ""valid and enforceable liens over hundreds of millions of dollars of ERS revenue, *which [would] continue to grow*." *Resp't Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Br. in Opp'n to Mot. for Relief From the PROMESA Automatic Stay*, No. 16-cv-2696, Docket 52, at 10 (Oct. 26, 2016) (emphasis added). Yet less than two years later, the Oversight Board argued on behalf of ERS that the Bondholders no longer had any collateral at all. *Debtor's Opp'n to Mot. of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* at 12, Docket No. 3465 in Case No. 17-bk-03283 and Docket No. 292 in Case No. 17-bk-03566 (contending that the automatic stay is "not at issue" because "Movants are complaining about legislation by the Commonwealth creating a new pension system that does not generate Employers' Contributions").

27. Thus, the Bondholders do not need to know the precise monthly value of their collateral to know that its value has diminished since the automatic stay was imposed. And their

- 13 -

answer to Interrogatory 9 clearly explains how it has diminished: by being diverted to the Commonwealth and dissipated to pay other creditors. There is therefore no reason for the Court to order any further answer to Interrogatory 9. At bottom, the "claim that the answer is not responsive is really only a claim that [Respondents do] not like the answer given." *Kyriazi v. W. Elec. Co.*, 74 F.R.D. 468, 471 (D.N.J. 1977). It provides no basis for a Motion to Compel.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Motion to Compel.

In San Juan, Puerto Rico, today March 25, 2019.

By:

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Bruce Bennett*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice* pending)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

| | |
|---|---|
| /s/ Alicia I. Lavergne-Ramírez | /s/ Cheryl T. Sloane |
| José C. Sánchez-Castro<br>USDC-PR 213312<br>jsanchez@sanpir.com | John K. Cunningham (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>WHITE & CASE LLP<br>1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez<br>USDC-PR 215112<br>alavergne@sanpir.com | New York, NY 10036<br>Tel. (212) 819-8200<br>Fax (212) 354-8113<br>jcunningham@whitecase.com |
| Maraliz Vázquez-Marrero<br>USDC-PR 225504<br>mvazquez@sanpir.com | gkurtz@whitecase.com<br><br>Jason N. Zakia (*pro hac vice*)<br>Cheryl T. Sloane (*pro hac vice*) |
| SÁNCHEZ PIRILLO LLC<br>270 Muñoz Rivera Avenue, Suite 1110<br>San Juan, PR 00918<br>Tel. (787) 522-6776<br>Fax: (787) 522-6777 | WHITE & CASE LLP<br>200 S. Biscayne Blvd., Suite 4900<br>Miami, FL 33131<br>Tel. (305) 371-2700<br>Fax (305) 358-5744<br>jzakia@whitecase.com<br>csloane@whitecase.com |

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*