# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br><br>No. 17 BK 3566-LTS |

## RESPONDENTS' OPPOSITION TO MOTION OF CERTAIN CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO TO COMPEL DISCOVERY

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

BACKGROUND ............................................................................................... 6

    I.     ERS FISCAL CRISIS AND 2017 PENSION REFORMS ................................ 6

    II.    STAY RELIEF MOTION AND DISCOVERY ................................. 8

        A.     Document Discovery ................................................... 8

        B.     Privilege Log ............................................................. 11

        C.     Interrogatories ............................................................ 12

ARGUMENT .................................................................................................... 12

    I.     AAFAF'S PRIVILEGE LOG PROVIDES SUFFICIENT DETAIL. ................. 12

    II.    THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL
        PRE-DECISIONAL DISCOVERY INTO ACT 106 AND JOINT
        RESOLUTION 188. .............................................................. 15

    III.   THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL
        FURTHER INTERROGATORY RESPONSES .................................... 20

    IV.   THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL
        THE OVERSIGHT BOARD TO PRODUCE DOCUMENTS
        REGARDING ACT 106 AND JOINT RESOLUTION 188. .............................. 23

        A.     The Disputed Requests Seek Irrelevant Information. ............................ 24

        B.     The Disputed Requests Are Unreasonably Duplicative and
               Cumulative. .......................................................... 25

        C.     The Disputed Requests Seek Presumptively Privileged
               Information. ............................................................ 26

        D.     The Disputed Requests Impose an Undue Burden. .............................. 27

    V.    THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL
        THE OVERSIGHT BOARD TO PRODUCE A WITNESS IN
        RESPONSE TO MOVANTS' DEPOSITION SUBPOENA. ........................... 29

        A.     Movants' Subpoenaed Deposition Topics Seek Irrelevant
               Information. ............................................................ 29

        B.     Movants' Subpoenaed Deposition Topics Are Unreasonably
               Cumulative and Duplicative. ........................................ 30

        C.     Topics 3-6 Improperly Seek Presumptively Privileged Information. ....... 32

        D.     The Deposition Subpoena Imposes an Undue Burden. ......................... 32

CONCLUSION .................................................................................................. 33

i

# TABLE OF AUTHORITIES

**Page**

## Cases

*Anderson v. Werholtz*,
   2009 WL 392673 (D. Kan. Feb. 17, 2009) .......................................................................23

*Appleton Papers Inc. v. George A. Whiting Paper Co.*,
   No. 08-C-16, 2009 WL 2870622 (E.D. Wis. Sept. 2, 2009).....................................32

*Baybank-Middlesex v. Ralar Distributors, Inc.*,
   69 F.3d 1200 (1st Cir. 1995) ........................................................................................3

*Culebras Enterprises Corp. v. Rivera-Rios*,
   846 F.2d 94 (1st Cir. 1988)........................................................................................18

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
   532 U.S. 1 (2001).................................................................................................16,27

*Dongguk Univ. v. Yale Univ.*,
   270 F.R.D. 70 (D. Conn. 2010).................................................................................32

*Entm't Prods., Inc. v. Shelby Cty., Tenn.*,
   721 F.3d 729 (6th Cir. 2013) ....................................................................................19

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   295 F. Supp. 3d 66 (D.P.R. 2018)...........................................................13,14,15,27

*Grella v. Salem Five Cent Savings Bank*,
   42 F.3d 26 (1st Cir. 1994).............................................................................................3

*In re Hunt's Pier Assocs.*,
   143 B.R. 36 (Bankr. E.D. Pa. 1992) ..........................................................................3

*In re Johnson*,
   756 F.2d 738 (9th Cir. 1985) ......................................................................................3

*La. Pac. Corp. v. Money Mkt. 1 Int'l Inv. Dealer*,
   285 F.R.D. 481 (N.D. Cal. 2012)..............................................................................31

*Laracuente v. Chase Manhattan Bank*,
   891 F.2d 17 (1st Cir. 1989)..........................................................................................4

*In re Ledis*,
   259 B.R. 472 (Bankr. D. Mass. 2001) .......................................................................4

*McCarthy v. Paine Webber Group, Inc.*,
   168 F.R.D. 448 (D. Conn. 1996)...............................................................................21

# TABLE OF AUTHORITIES

**Page**

*Mitchell Eng'g v. City & Cty. of S.F.*,
   No. 08-cv-04022, 2010 WL 455290 (N.D. Cal. Feb. 2, 2010) ................................................32

*O'Brien v. Int'l Bhd. of Elec. Workers*,
   443 F. Supp. 1182 (N.D. Ga. 1977) ........................................................................................23

*In re Rice*,
   82 B.R. 623 (Bankr. S.D. Ga. 1987) ..........................................................................................3

*Rockstar Consortium US LP v. Google Inc.*,
   2015 WL 5972422 (D. Mass. Oct. 14, 2015)................................................................. *passim*

*SmithKline Beechman Corp. v. Apotex Corp.*,
   232 F.R.D. 467 (E.D. Penn. 2005)............................................................................................14

*Texas Health Presbyterian Hosp. of Denton v. D.A.*,
   No. 17-0256, 2018 WL 6713207 (Tex. Dec. 21, 2018).............................................................18

*U.S. ex re. Hunt v. Merck-Medco Managed Care, LLC*,
   2005 WL 1971885 (E.D. Penn. Aug. 15, 2005) .......................................................................21

*U.S. v. Commonwealth Energy System and Subsidiary Companies*,
   235 F.3d 11 (1st Cir. 2000)........................................................................................................18

*United Cos. Fin. Corp. v. Brantley (In re Brantley)*,
   6 B.R. 178 (Bankr.N.D.Fla.1980) ...............................................................................................3

*United Servs. Auto. Ass'n v. Perry*,
   102 F.3d 144 (5th Cir. 1996) .....................................................................................................18

*United States v. Maryland & Virginia Milk Producers Ass'n*,
   22 F.R.D. 300 (D.D.C 1958)......................................................................................................23

*In re Utah Aircraft Alliance*,
   342 B.R. 327 (10th Cir. BAP 2006)............................................................................................3

*Vaughan v. Celanese Americas Corp.*,
   2006 WL 3592538 (W.D.N.C. 2006) ........................................................................................13

*In re 1606 New Hampshire Ave. Assocs.*,
   85 B.R. 298 (Bankr. E.D.Pa.1988) .............................................................................................4

**Statutes**

3 L.P.R.A. § 761 ...............................................................................................................................22

# TABLE OF AUTHORITIES

**Page**

3 L.P.R.A. § 787f ................................................................................................7

Bankruptcy Code § 362 ................................................................................. *passim*

Bankruptcy Code § 362(d) ....................................................................................3

Bankruptcy Code § 364 ......................................................................................24

ERS Enabling Act ................................................................................................1

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................................2

Fed. R. Civ. P. 26(b)(2)(C) ......................................................................25,27,29,33

Fed R. Civ. P. 26(b)(5) ........................................................................................15

Fed. R. Civ. P. 30(b)(6) .................................................................................6,31,32

Fed. R. Civ. P. 45(d)(1) ................................................................................29,32,33

Fed. R. Civ. P. 45(d)(3)(iv) ..............................................................................27,33

Fed. R. Civ. P. 45(d)(3)(A)(iii) .........................................................................27,32

Fed. R. Civ. P. 45(d)(3)(C)(ii) ............................................................................30

Fed. R. Evid. 902(11) ..........................................................................................30

**Other Authorities**

Congressional Task Force on Economic Growth in Puerto Rico, Report to the
House and Senate, 114th Congress (Dec. 20, 2016) ..............................................6

Senate Bill 603 ................................................................................................13

Under Rules 26, 30(b)(6), 34, 37 and 45 of the FRCP and Rules 7026, 7030(b)(6), 7034,

7037 and 9016 of the FRBP, made applicable to this matter under Section 310 of PROMESA, the

Oversight Board, as the Debtors' representative under PROMESA section 315(b), and AAFAF,

under the authority granted to it under the AAFAF Enabling Act, hereby submit this opposition to

Movants' Motion to Compel, on their own behalf and on behalf of the Commonwealth and ERS.[2]

## PRELIMINARY STATEMENT

1.      Movants seek broad-ranging discovery into subjects wholly untethered from the

narrow question at issue in the underlying adequate protection dispute—whether their asserted

collateral is adequately protected.[3]  *See* Case No. 17-03566-LTS, Dkt. No. 313:  Order dated

---

[2] As used in this opposition, (i) "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority;
(ii) "AAFAF Enabling Act" means the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-
2017; (iii) "Act 106" Act No. 106 of August 23, 2017; "Commonwealth" means the Commonwealth of Puerto Rico;
(iv) "Debtors" means ERS and the Commonwealth; (v) "ERS" means the Employees Retirement System for the
Government of the Commonwealth of Puerto Rico; (vi) "ERS Bondholders" mean holders of pension funding bonds
issued by ERS; (vii) "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico;
(viii) "FRBP" means the Federal Rules of Bankruptcy Procedure; (ix) "FRCP" means the Federal Rules of Civil
Procedure; (x) "Joint Resolution 188" or "J.R. 188" mean Joint Resolution for Other Allocations for Fiscal Year 2017-
2018; (xi) "Motion" means Motion of Certain Creditors of the Employees Retirement System of the Government of
Puerto Rico to Compel Discovery, 17-3566-LTS, ECF No. 402 (D.P.R. Mar. 21, 2019); (xii) "Movants" means certain
ERS bondholders, including Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P.,
Mason Capital Master Fund, LP, Oaktree-Forrest Multi- Strategy, LLC (Series B), Oaktree Opportunities Fund IX,
L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C.,
SV Credit, L.P., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto
Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income
Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed
Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors
Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico
Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund
V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities
Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target
Maturity Fund, Inc.; (xiii) "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act;
(xiv) "Respondents" means ERS, the Commonwealth, AAFAF, and the Oversight Board; and (xv) "Stay Motion"
means the Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the
Commonwealth of Puerto Rico for Relief from the Automatic Stay, No. 17-3566-LTS, ECF No. 289 (D.P.R. July 3,
2018).

[3] Respondents reserve all rights regarding challenges to the validity of Movants' asserted security interests.  For
example, AAFAF and the Official Committee of Unsecured Creditors have challenged the validity of the ERS bonds
on the grounds that the ERS Enabling Act did not authorize ERS to issue bonds to the public and therefore the bonds
are *ultra vires* and unenforceable.  *See* Government Defendants' Joinder and Reply to ERS Bondholders' Omnibus
Opposition to Motion to Dismiss Plaintiffs' Amended and Supplemented Complaint Pursuant to Fed. R. Civ. P.
12(b)(6), No. 17-0219-LTS, ECF No. 62, at 4 (D.P.R. Jan. 14, 2018); Omnibus Objection of Official Committee of

1

August 6, 2018 (the parties to identify "material disputed issues of fact regarding the attribution of any diminution of collateral resulting from the automatic stay").  All 35 pages of bluster aside, Movants fail to explain how the discovery they seek is relevant.  Indeed, the Motion stems from a false premise—that e-mails and other communications reflecting the intent, formulation and planning of Puerto Rico's badly needed pension reform legislation (Act 106 and Joint Resolution 188) are somehow relevant to the question of whether the automatic stay harms Movants' interest in any collateral.

2.      The information Movants seek is not relevant because the pension reform laws' effects are evident from their plain language and, to the extent ambiguous, from the Legislature's intent as evidenced by the legislative history.  There is no dispute that Act 106 states that (i) ERS no longer receives Employers' Contributions and (ii) since July 2017, employers must remit Pay-Go fees to the Commonwealth in the manner set forth in the statute.  What non-legislators from the government were thinking as they formulated the statutes is irrelevant to interpreting the legislation, let alone to the sole narrow issue the Motion raises: whether Movants' alleged collateral is adequately protected pending the automatic stay.

3.      Only limited discovery from Respondents is necessary to resolve the current stay proceeding—principally, information regarding the value of Movants' alleged collateral.  Respondents have already produced (on Movants' preferred schedule) the documents relevant to that question—more than 5,000 pages detailing (i) ERS's finances and assets for the last three years, (ii) the Pay-Go fees remitted to the Commonwealth since July 2017, and (iii) future Pay-Go

---

Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico, No. 17-3566-LTS, ECF No. 381, ¶ 3 (D.P.R. Mar. 12, 2019).  Until these issues are decided, Respondents do not concede that Movants have any secured interests.

fee projections.[4]  If Movants need more financial information of this kind, Respondents will provide what Movants can reasonably demonstrate that they need for the stay motion.  Yet Movants omit any mention of these documents from their briefing to try to create the false impression that they have been denied meaningful discovery.  They have not.

4.      But apart from these kinds of documents, nothing else Movants seek is relevant.  A relief from stay motion under Bankruptcy Code section 362(d) "is merely a summary proceeding of limited effect," *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 33 (1st Cir. 1994), that does not delve into all issues related to the validity of a claim.  *See In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985) (explaining that relief from stay hearing is limited to valuation of collateral and adequacy of protection).[5]  Movants, as the creditors requesting adequate protection, must prove the validity and extent of their interests.  *See In re Hunt's Pier Assocs.*, 143 B.R. 36, 50 (Bankr. E.D. Pa. 1992).  Should they fail to do so, they are not entitled to adequate protection.[6]  But Movants' alleged property hinges on the plain language of the controlling documents—the bond resolution, security agreement, financing statements, any control agreements, and the pension

---

[4] These projections show that if Movants have valid, perfected security interests in Pay-Go fees, then Movants' asserted security interests are adequately protected.  This is because the amount of Pay-Go fees exceed the outstanding amount on the ERS Bonds.  *See Baybank-Middlesex v. Ralar Distributors, Inc.*, 69 F.3d 1200, 1203 (1st Cir. 1995) ("A sufficient equity cushion is itself a recognized form of adequate protection, thus collateral valuation is a logical step in making an adequate protection determination.").

[5] *See also In re Utah Aircraft Alliance*, 342 B.R. 327, 332 (10th Cir. BAP 2006) ("Because the statute requires bankruptcy courts to rule quickly on stay motions, a relief from stay proceeding is by its nature a cursory or summary proceeding."); *United Cos. Fin. Corp. v. Brantley (In re Brantley)*, 6 B.R. 178, 187–88 (Bankr.N.D.Fla.1980) ("[A]t all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay.") (citing H.R.Rep. No. 95–595, at 344 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6300–01).

[6] Respondents reserve all arguments challenging the validity or extent of the ERS Bondholders' asserted security interests.  Movants whose liens are subject to significant dispute are not entitled to adequate protection.  *See In re Rice*, 82 B.R. 623, 626 (Bankr. S.D. Ga. 1987) (issues to be litigated under § 362, including adequate protection, should not be addressed where the court is "presented with evidence . . . that strongly supports an inference that the lien might be held in invalid"); *see also In re Hunt's Pier Assocs.*, 143 B.R. at 50 (explaining that if the debtor cannot establish that it has a valid security interest, it is treated as an unsecured creditor for purposes of § 362).

reform legislation, not the intent or understanding of non-legislators from ERS, Commonwealth, AAFAF or the Oversight Board.

5.     Even assuming Movants can meet their burden to establish a valid interest in the Debtors' property, Movants' sole basis for relief is that their security interests are not adequately protected.  Mot. ¶ 27.  The only questions for the Court on that issue are (i) whether Movants' collateral (if any) equals or exceeds the value of the claim it secures, (ii) whether collateral is diminishing in value, and (iii) if so, has ERS otherwise protected Movants' interests.  *See In re Ledis*, 259 B.R. 472, 476–77 (Bankr. D. Mass. 2001) (holding that creditor is entitled to relief to the extent the "claim exceeds the value of the collateral and the Debtor has not offered some other form of adequate protection"); *In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 309 (Bankr. E.D.Pa.1988) (explaining that adequate protection is largely a function of movements in value of collateral).

6.     Act 106 and Joint Resolution 188 are at issue in the Title III cases—but only insofar as there is a disagreement over the legislation's effect on Movants' asserted security interests.  This is a garden-variety statutory interpretation question, and legislative history would be relevant only if the laws were ambiguous.  *See Laracuente v. Chase Manhattan Bank*, 891 F.2d 17, 23 (1st Cir. 1989) ("[A]bsent ambiguity in the statutory language, our inquiry is complete and ends with the plain language of the statute.").  Movants have identified no ambiguity here.  But even if they did, permissible discovery would concern only the Legislature's intent, not that of other Government officials.  To that end, Respondents have produced legislative history concerning Joint Resolution 188 and Act 106.  Movants' muster no authority holding that private communications of government officials, or other materials outside the legislative record, are accepted statutory interpretation tools, even if the language were ambiguous.

4

7.      Nevertheless, Movants ask this Court to compel Respondents to incur the burden of reviewing and producing nearly three-years' worth of emails and other documents to answer irrelevant questions, such as who conceived of the ideas that led to Joint Resolution 188 and Act 106, what alternatives were considered, and in what ways Pay-Go fees might resemble employer contributions under the old system.  Mot. ¶ 3.  ERS and the Commonwealth should not be forced to bear this undue burden.

8.      And that burden is exacerbated by Movants' demand for documents from June 30, 2016 to October 1, 2017—a span that is almost entirely within the deliberative period preceding the passage of Joint Resolution 188 (on June 25, 2017) and Act 106 (on August 23, 2017).  The requests' nature makes it nearly certain that responsive documents will fall under the deliberative process and other privileges, thereby forcing Respondents to incur the expense of reviewing and logging potentially thousands of documents for no relevant purpose.  Movants' demand for additional documents should therefore be denied.

9.      Movants' other demands are equally meritless.  Movants seek to compel AAFAF to produce a privilege log that complies with the Federal Rules.  AAFAF has already done so and has every intention to continue to comply with the rules, including the obligation to serve a privilege log that allows the Court to assess the validity of any privilege assertion.  While the initial privilege log may not provide every piece of information Movants would like, AAFAF has  no obligation to do so.  And Movants offer no reason why the Court should enter a prospective order requiring Respondents to comply with rules they have already agreed to follow.

10.      Likewise, the Court should deny Movants' demand for responses to the two identical interrogatories served on ERS and the Commonwealth.  Although Movants claim these are "contention" interrogatories, the interrogatories, on their face, seek legal conclusions regarding

section 362 of the Bankruptcy Code. ERS made a good-faith effort to provide information in response to Interrogatory No. 1 with sufficient detail for Movants to understand ERS's position that Movants' alleged collateral is not being diminished by the automatic stay. The Commonwealth provided no substantive response because it has no information in its possession, custody or control beyond ERS's response. Neither party should be forced to respond to Interrogatory No. 2, which openly seeks opinions on the remedies available to Movants—a pure legal question that the Court will decide at the lift stay hearing on May 21, 2019.

11. Movants' document and Rule 30(b)(6) subpoenas to the Oversight Board also seek irrelevant information concerning the intent behind Joint Resolution 188 and Act 106. The Oversight Board's understanding and opinions concerning the pension reform legislation is no more probative of whether Movants' interests are adequately protected than those of government officials. Both subpoenas impose an undue burden on the Oversight Board given their sheer lack of relevance and the fact that they seek presumptively privileged information.

## BACKGROUND

## I. ERS FISCAL CRISIS AND 2017 PENSION REFORMS

12. In January 2017, when the Rosselló administration took office, Puerto Rico's retirement systems faced an imminent liquidity crisis that threatened their ability to continue paying retirees' benefits. As Congress found, as of June 30, 2015, ERS was "in a negative funded position" and "at risk of becoming insolvent." *See* Congressional Task Force on Economic Growth in Puerto Rico, Report to the House and Senate, 114th Congress (Dec. 20, 2016), *available at* https://www.finance.senate.gov/imo/media/doc/Bipartisan%20Congressional%20Task%20Force %20on%20Economic%20Growth%20in%20Puerto%20Rico%20Releases%20Final%20Report.p df. The Task Force further reported that as of June 30, 2015, ERS had a "net pension liability of $33.2 billion with a funded ratio of [negative] 1.8 percent." *Id*. at 12.

13.     Responding to the "imminent insolvency" of ERS, on June 24, 2017, the Legislative Assembly passed Joint Resolution 188, which Governor Rosselló signed the next day.  On August 23, 2017, the Legislative Assembly passed Act 106 and Governor Rosselló signed it into law the same day.

14.     Together, Act 106 and Joint Resolution 188 reformed Puerto Rico's retirement systems by having covered employers assume the pension obligations corresponding to their respective pensioners.   Employers must reimburse, through Pay-Go fees, the Commonwealth for the actual amount of the payments the Commonwealth has advanced to the employers' current pensioners.  Because ERS would no longer be responsible for paying benefits, Act 106 eliminated employers' obligations to contribute to ERS.  *See* Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

15.     Act 106 also created a new "Pay-Go Fee," which is a fee payable by "the Government, the Municipalities, the Legislative Branch, Court Administration and Public Corporations and other covered entities" to the Puerto Rico Treasury.  Act 106, § 2.1(b).  Pay-Go fees equal the "amount actually paid to Pensioners and Beneficiaries from each covered entity." *Id.*  By contrast, the old employer contributions were payable directly to the retirement systems and were a percentage of each employer's then-current payroll, as opposed to the actual amounts paid to pensioners and beneficiaries as current benefits.  *Compare id.*, *with* 3 L.P.R.A. § 787f (requiring each employer to make contributions to ERS calculated based on a percentage of current employee payroll).[7]

---

[7] Beginning in 2013, employers had been required to make a supplemental contribution to ERS that was not based on a percentage of payroll. Joint Resolution 188 and Act 106 also eliminated this Additional Uniform Contribution.  *See* Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

7

## II.    STAY RELIEF MOTION AND DISCOVERY

16.    On July 21, 2017, the Oversight Board filed an adversary complaint challenging the validity and extent of the ERS Bondholders' asserted security interests.  Compl., No. 17-0213-LTS, ECF No. 1 (D.P.R. July 21, 2017).  On November 3, 2017, the parties filed motions for summary judgment.  A hearing on the parties' summary judgment motions was held on December 13, 2017.

17.    While the summary judgment motions remained pending, Movants sought relief from the automatic stay on July 3, 2018.  On August 17, 2018, the Court granted the Oversight Board's summary judgment motion and determined that the ERS Bondholders do not hold valid, perfected security interests.  *See* Opinion and Order Granting and Denying in Part Cross Motions for Summary Judgment, No. 17-0213-LTS, ECF No. 215 (D.P.R. Aug. 17, 2018).  As a result, the Court entered a judgment avoiding the ERS Bondholders' security interests and declaring them unenforceable against ERS.  *Id.*  On August 21, 2018, the Court denied the motion for relief from the automatic stay on the ground that the Court's August 17 summary-judgment order resolved the stay motion.  On February 21, 2019, Movants renewed their stay motion following the U.S. Court of Appeals for the First Circuit's January 30, 2019 reversal, in part, of the Court's August 17 order.

### A.    Document Discovery

18.    Movants served discovery requests on Respondents, including (i) identical document requests on ERS and the Commonwealth, (ii) document and deposition subpoenas on AAFAF and the Oversight Board, (iii) identical requests for admission on ERS and the Commonwealth, and (iv) identical interrogatories on ERS and the Commonwealth.  The key document requests are:

> [1] All Documents Concerning the value of the property subject to
> the ERS Bondholders' Security Interest at any time, or any Analysis

thereof, including without limitation on the following dates: May 21, 2017, June 30, 2017, August 23, 2017, and today.

[2] Documents concerning the manner and extent to which the value of the property subject to the ERS Bondholders' Security Interest has been, is being, or will be protected from a decrease in value during the pendency of the stay imposed by § 362 of the Bankruptcy Code.

[3] All Documents Concerning the background, drafting, preparation, enactment, passage, approval, implementation or effect of Joint Resolution 188, including any Analysis of Joint Resolution 188's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest.

[4] All Communications between You and anyone Concerning the background, drafting, preparation, enactment, approval, implementation or effect of Joint Resolution 188.

[5] All Documents Concerning the background, drafting, preparation, enactment, passage, approval or implementation of Act 106-2017, including any Analysis of Act 106-2017's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest.

[6] All Communications between You and anyone Concerning the background, drafting, preparation, enactment, approval, implementation or effect of Act 106-2017.

[7] All Documents upon which You relied or to which You referred in preparing your answer to Movant's Interrogatories in this matter, dated February 27, 2019, and all documents Concerning your answers thereto.[8]

19.     Upon receiving Movants' document requests, Respondents began conferring with Movants to reach an agreement on the scope of discovery.  The parties held telephonic discussions on February 28 and March 2, 2019, in which Respondents offered to produce financial documents sufficient to show the information requested in Movants' first two document requests to ERS and the Commonwealth.  To date, Respondents have produced more than 1,300 documents, including

---

[8] The document requests for ERS and the Commonwealth are identical. The document subpoena for AAFAF covers similar topics with slight distinctions related to the implementation of Joint Resolution 188 and Act 106.

bank and account statements for ERS since 2016, spreadsheets providing detailed financial information for key time periods requested by Movants, detailed information disclosing the amount of Pay-Go fees collected since the system's implementation in July 2017, and current projections for future Pay-Go fees.  In addition, Respondents produced the legislative history and other non-privileged documents related to Act 106 and Joint Resolution 188 that could be located after a reasonable search in hard copy and loose files.  *Id.* ¶¶ 5, 11.

20.     Despite the irrelevance of information into the intent and planning of Joint Resolution 188 and Act 106, Respondents sought to reach a reasonable compromise for the review and production of electronic documents.  To that end, on March 4, 2019, Respondents proposed five custodians and a set of search terms and date ranges appropriate to the narrow issues at hand and the expedited schedule.  *Id.* ¶ 4, Ex. F at 14–15.

21.     Movants rejected this proposal and refused to provide a counterproposal. Respondents continued to seek a reasonable compromise, but Movants kept increasing their demands.  To avoid unnecessary motion practice, Respondents ultimately agreed to every search term requested by Movants and increased the number of custodians to nine.  But to keep the review volume manageable Respondents requested the use of proximity limiters and documented the undue burden unfettered searches would impose with hit reports. After Movants rejected Respondents' first request to use a "w/10" proximity limiter (that still hit roughly 14,000 documents) and Respondents' next offer to use a "w/25" limiter (that hit roughly 20,000 documents), Movants demanded a "w/50" limiter, which hit more than 23,000 documents.  Even though the discovery was completely irrelevant to the stay motion, in the interest of compromise and avoiding wasteful motion practice, Respondents agreed to the broader search string so long as

10

the date range was limited to the period between January 1, 2017, and October 1, 2017. *Id.* ¶¶ 7–8, Exs. F. at 1–13, G, H.

22.     Movants refused.  They insisted on an electronic search dating back to April 1, 2016.  Movants' lone justification was an allegation that in an April 2016 meeting with Movants' outside counsel, an outside advisor to the prior administration in Puerto Rico raised a pay-as-you-go proposal as a way to replace ERS and its obligations to bondholders.  Respondents opposed the expanded date range on relevance and burden grounds.  Based on recent document reviews in Title III proceedings, Respondents estimate that the cost of electronic document and privilege review for this matter will likely exceed $170,000, not including the cost of associate and partner time reviewing documents, preparing the privilege logs, and defending the logs against challenges by Movants, which could total hundreds of thousands of dollars more. *Id.* ¶¶ 9–10, Ex. F. at 5–11.

23.     The parties continued discussions through March 18, 2019, but were unable to reach a reasonable compromise regarding the date range and other discovery issues in this Motion.

### B.     Privilege Log

24.     The parties also had extensive discussions regarding privilege logs.  On March 12, 2019, Movants demanded that the parties exchange "document-by-document" privilege logs "[a]s required by the Federal Rules." *Id.*, Ex. 5 at 6–7.  AAFAF agreed that the parties should exchange logs on a reciprocal basis but reserved its right to provide a categorical privilege log.  On March 15, 2019, AAFAF submitted a document-by-document privilege log for 13 loose, individual documents withheld from the files of two lawyers. *Id.* ¶ 13.

25.     On a March 18, 2019 call, Movants expressed concern over the level of detail in AAFAF's privilege log and continued to oppose the use of categorical privilege logs.  They also objected to any further categorical privilege logs from Respondents.

### C.      Interrogatories

26.      On March 8, 2019, ERS and the Commonwealth served interrogatory responses and objections. A week later, after the close of business on Friday, March 15, 2019, Movants sent a letter detailing alleged deficiencies in the interrogatory responses, as well as other discovery responses. During the parties' March 18 call, Movants demanded that Respondents notify them whether they would provide amended interrogatory responses by the next day. Respondents informed Movants that because their letter arrived on Friday night, they had not had sufficient time to confer with ERS and the Commonwealth but would try to do so before the motion to compel deadline. *Id.* ¶ 15.

## ARGUMENT

## I.      AAFAF'S PRIVILEGE LOG PROVIDES SUFFICIENT DETAIL.

27.      The only privilege issue that is ripe for review is whether AAFAF's privilege log, which has 13 individual entries, is sufficient. Movants devote seven pages to reciting legal authorities about privilege but nowhere provide the log itself. Here is the complete log:

| Doc. No. | Date | Author | Description | Privilege Basis[9] |
|---|---|---|---|---|
| 1. | 5/10/2017 | Carlos M. Yamin Rivera, Esq. | Legal analysis regarding Act 447-1951 and pension reform for TRS, ERS and JRS, reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 2. | 5/14/2017 | Mohammad Yassin Mahmud, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 3. | 5/14/2017 | Mohammad Yassin Mahmud, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 4. | 5/15/2017 | Mohammad Yassin Mahmud, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |

| Doc. No. | Date | Author | Description | Privilege Basis[9] |
|---|---|---|---|---|
| 5. | 5/18/2017 | Mohammad Yassin Mahmud, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 6. | 6/21/2017 | Mohammad Yassin Mahmud, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 7. | 7/20/2017 | Carlos M. Yamin Rivera, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 8. | 7/21/2017 | Mohammad Yassin Mahmud, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 9. | 7/22/2017 | Carlos M. Yamin Rivera, Esq. | Legal analysis regarding pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 10. | 8/9/2017 | Carlos M. Yamin Rivera, Esq. | Legal analysis regarding Senate Bill 603 reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 11. | 8/10/2017 | Carlos M. Yamin Rivera, Esq. | Legal analysis regarding Senate Bill 603 and pension reform for TRS, ERS and JRS reflecting legal advice and attorney impressions, including pre-decisional, deliberative communications on pension reform proposals | Attorney Client; Attorney Work Product; Deliberative Process |
| 12. | 1/24/2018 | Mohammad Yassin Mahmud, Esq. | Draft comments regarding PayGo invoicing reflecting legal advice and attorney impressions | Attorney Client |
| 13. | 1/25/2018 | Mohammad Yassin Mahmud, Esq. | Draft comments regarding PayGo invoicing reflecting legal advice and attorney impressions | Attorney Client |

28.     This privilege log satisfies all four requirements this Court has identified, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d 66, 71 (D.P.R. 2018) (Dein, M.J.) (cited in Motion ¶ 37):

- Each entry identifies and explains the privilege grounds for withholding the documents. *See id.* at 70–71. For example, entries one through eleven indicate that the documents are "pre-decisional, deliberative communications" that reflect the identified AAFAF attorneys' "legal advice and attorney impressions."

- The log describes the subject matter sufficiently to permit Movants to evaluate the claim of privilege. *Id.* at 71. Each entry describes the nature of the relevant attorney's work (*e.g.,* legal analysis, draft comments) and the document's subject matter (*e.g.*, pension reform for specified entities, legislative proposals identified by name, Pay-Go invoices). *See Vaughan v. Celanese Americas Corp.*, 2006 WL

3592538, at *4 (W.D.N.C. 2006) (finding that following description included adequate detail: "Email string containing confidential communications with in-house counsel regarding analysis of pension issues in PBI transaction").

- Each entry is dated. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d at 71.

- The log designates each document's author. *Id.* Both "Authors" listed in the log are AAFAF lawyers who provide legal advice to AAFAF and other government entities in AAFAF's capacity as fiscal agent and financial advisor. *See* Act 2-2017 § 5(a) (AAFAF is the "fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico."). While the recipients are not identified, that is appropriate here because the withheld documents are internal hard copy or loose draft documents from AAFAF attorney files that do not list recipients. Pocha Decl. ¶ 5; *see SmithKline Beechman Corp. v. Apotex Corp.*, 232 F.R.D. 467, 476 (E.D. Penn. 2005) (privilege log descriptions of "undistributed" documents lacking recipient information were not deficient because "[t]here is no bar to extending the privilege to documents that have not been distributed").

29. Movants' nit-picking—that the log contains no description of the communication's nature, information to permit Movants to determine how the privilege applies to the parties involved, or to evaluate the privilege's validity, Mot. ¶ 34—is therefore wrong, as evident from the log's face.

30. It is hardly surprising or meaningful that nine of the log descriptions are similar or that 11 entries assert the same privileges. Mot. ¶ 34. Documents with similar descriptions have similar content and similar privilege grounds—this is a routine occurrence on privilege logs. It is especially unremarkable here, where the documents concern similar, recurring issues (for example, entries one through five span roughly one week) and come from the files of two lawyers who worked together to provide advice regarding reforms to Puerto Rico's retirement systems. No additional detail is necessary. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 295 F. Supp. 3d at 71.

31. Equally meritless is Movants' request that the Court order Respondents to comply with the Federal Rules for any future privilege logs they serve. This is nothing more than a request

14

for an order to cure a speculative, hypothetical dispute that has not occurred.  The short and complete response to Movants' argument is that Respondents are well aware of their obligations and have every intention of complying with them, just as AAFAF has already done.

32.     While Movants have, until filing this motion, steadfastly opposed Respondents' right to provide categorical privilege logs,[10] Movants have finally conceded that such logs are proper:  "Bondholders do not object to a categorical privilege log here, provided that it is sufficiently detailed."  Mot. at ¶ 35.  Respondents also agree with Movants that the log needs to contain only the following:  "(i) the basis for withholding each category of documents; (ii) a sufficient description of the subject matter of the category of documents to permit [the recipient] to evaluate the claim of privilege; (iii) the date range for the set of documents in each category; and (iv) an aggregate list of all persons sending and receiving documents in each category."  *In re Fin. Oversight & Mgmt. Bd.*, 295 F. Supp. 3d at 71.

33.     Any suggestion that more is required is inconsistent with the Rule 26(b)(5) and this Court's rulings.  And in any event, the Court should not order more onerous logging requirements at this early stage before the scope of electronic discovery has been resolved and Respondents have had an opportunity to fully assess burden.

## II.     THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL PRE-DECISIONAL DISCOVERY INTO ACT 106 AND JOINT RESOLUTION 188.

34.     Movants have demanded that Respondents produce electronic documents dating all the way back to June 30, 2016, based solely on their counsels' declarations concerning a discussion they assert they had with an advisor to a prior administration.  Mot. ¶¶ 45–48.  Movants seek

---

[10] During the parties' negotiations, Movants argued that categorical privilege logs were improper:  "Our position on privilege is simple:  As required by the Federal Rules, both sides will exchange document-by-document privilege logs that describe each document that is subject to a claim of privilege in a manner that will enable other parties to assess the claim."  Pocha Decl. Ex. F at 7.

internal emails concerning efforts to replace the prior pension system with the current pay-as-you-go system based on speculation that such documents may reveal an intent to harm the ERS bondholders.  But even if they existed, such documents would be irrelevant to any alleged collateral diminution or the interpretation of Act 106 and Joint Resolution 188.  An advisor's opinion, whether in 2016 or later, has no bearing on the legal effect of the legislation or what the Puerto Rico Legislature intended.

35.     And any such internal documents, if they existed, would be privileged.  An analysis of the legal consequences or effects of reforming the pension system would involve the work of lawyers.  Such work would also fall within the deliberative process privilege, which protects pre-decisional deliberations regarding public policy decisions.  It is hard to imagine a more quintessential public policy decision than creating a new pension system.  Protecting from discovery internal deliberations about such fundamental policy decisions is critical to maintaining open and frank discussions among policy makers.  *See Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8–9 (2001) ("The deliberative process privilege rests on the obvious realization that officials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news, and its object is to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the government.") (internal quotation marks and citation omitted).

36.     Respondents therefore objected to the cost and burden of collecting, reviewing, producing and logging such electronic documents.  Respondents made clear that they had no obligation to produce irrelevant documents and that they would not waste resources on such discovery unless the parties could reach a reasonable compromise:

16

**Subject:** RE: In re Commonwealth of Puerto Rico, et al., Case No. 17-3283 (LTS) // In re Employees Retirement System of Gov't of Commonwealth of Puerto Rico, Case No. 17-3566

Matt -

Thank you for your counterproposal.  At the outset, we should make clear that none of the discovery related to Act 106 and Joint Resolution 188 is relevant to whether the stay is causing a diminution in collateral.  Whatever intent may have motivated the legislation is irrelevant to the consequences of the legislation and the impact of the current stay.  We have nevertheless attempted in good faith to negotiate a reasonably limited production to avoid the burden of motion practice.  To the extent we cannot reach a reasonable compromise and you decide to seek court relief, we will advise the Court that we do not believe any of this discovery is relevant, necessary, or cost effective for purposes of the stay relief motion.

Pocha Decl. Ex. F at 4.  But with the hope of avoiding motion practice, Respondents tried to compromise with Movants in a way that balanced the expense and burden of the discovery against its minuscule potential relevance.

37.     From the outset of discovery discussions, Respondents have made reasonable offers on custodians, search terms, and date ranges for electronic discovery related to Act 106 and Joint Resolution 188, which Movants have categorically rejected.  To try to reach a compromise, Respondents agreed to provide electronic discovery from nine custodians and agreed to run all of Movants' search terms.  But to keep the review manageable, Respondents asked that Movants limit the date range to January 1, 2017 through October 1, 2017.  Rather than compromise, Movants refused, insisted that Respondents start the search on April 1, 2016, and filed this Motion.  Pocha Decl. ¶¶ 8–9, Ex. F at 1–13. None of this discovery is necessary for the stay motion and should be denied.

38.     **First,** the requested discovery is irrelevant.   During discovery negotiations, Respondents asked Movants to explain how discovery into "the background, drafting, preparation, enactment, passage, approval, implementation or effect" of Act 106 and Joint Resolution is relevant to the effect of the automatic stay.  Movants' sole response has been that Respondents have put "at issue" Joint Resolution 188 and Act 106.  Pocha Decl. ¶ 5.

39.     But the only issue concerning these laws is their effect, which requires nothing more than interpreting their text. *See, e.g.*, *Arnold*, 136 F.3d at 857–58 (holding that the "starting

point for interpretation of a statute is the language of the statute itself") (internal quotations and citations omitted). Absent some ambiguity in that text—and Movants have identified none—there is no reason to delve into the statutes' legislative history. *See U.S. v. Commonwealth Energy System and Subsidiary Companies*, 235 F.3d 11, 15 (1st Cir. 2000) ("In the absence of ambiguity, we generally do not look beyond the statutory language. However, when ambiguity exists, we may seek evidence of congressional intent in the legislative history."). And even if there were an ambiguity, pre-decisional communications, opinions, and intent of non-legislators would still be irrelevant. *Cf. United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144, 148 (5th Cir. 1996) (noting that use of non-legislative source materials for interpreting a statute "is an even less reliable basis than legislative history from which to conclude that a statute, ambiguous on its face, is unambiguous in fact"). Discovery into *individual* legislators' intent and motivations would likewise provide no reliable evidence for legislative interpretation. *See Texas Health Presbyterian Hosp. of Denton v. D.A.*, No. 17-0256, 2018 WL 6713207, at *8 (Tex. Dec. 21, 2018) ("[S]tatements explaining an individual legislator's intent cannot reliably describe the legislature's intent.").

40.     Movants cannot contest this. Instead, their sole professed rationale for seeking pre-enactment discovery is an alleged April 2016 meeting in which, Movants contend, a financial advisor to a prior Commonwealth administration allegedly said that ERS, and its obligations, could be replaced with a pay-as-you-go pension system.[11]   Mot. ¶ 46.   Even assuming that this

---

[11] Movants submitted hearsay declarations from outside counsel Bruce Bennett and John Cunningham to support their factual assertions about this meeting. If the Court were to determine that the meeting is somehow relevant to the issues in this proceeding, Respondents will have no choice but to depose the declarants and seek additional discovery into Movants' and their lawyers' communications with prior administrations. Such discovery would likely require an extension of the schedule taking the May 21, 2019 lift stay hearing off calendar. Furthermore, to the extent that Movants put at issue this meeting, the declarants, Messrs. Bennett and Cunningham, are ethically barred from participating as counsel for Movants at the lift stay hearing. *See Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 97 (1st Cir. 1988) (finding that Model Rule of Professional Conduct, Rule 3.7, which has been adopted in the United States District Court for the District of Puerto Rico, "prohibits an attorney-witness from acting as advocate at a trial").

conversation occurred, Movants still cannot show how this discussion or any of the discovery sought is relevant to whether the automatic stay is diminishing any collateral now or the legal effects of laws passed by Puerto Rico's Legislature.  That is because the pension reform legislation's effect is clear.  Joint Resolution 188 and Act 106 did three things: (i) convert the government retirement systems to a pay-as-you-go system by having covered employers assume the pension obligations corresponding to their respective pensioners, (ii) eliminate Employers' Contributions to ERS, and (iii) institute a new Pay-Go fee to reimburse the Commonwealth for the cost of actual pension benefit payments.  *See* Act 106, §§ 2.1(b), 2.4; J.R. 188, § 4.  While the parties disagree on the legislation's effect on bondholder rights, there is no dispute about what the legislation did.  *See* Mot. ¶ 25–26.

41.     Movants also try to justify discovery dating back to 2016 because the Oversight Board was appointed in August 2016.  Mot. ¶ 47.  But that fact does not make internal deliberations regarding proposed legislation relevant to this narrow stay relief proceeding, even assuming such deliberations are not privileged.

42.     **Second,** because the discovery will not resolve the legal interpretation of Joint Resolution 188 or Act 106 and is therefore irrelevant, *any* burden would be undue.  *See Entm't Prods., Inc. v. Shelby Cty., Tenn.*, 721 F.3d 729, 744 (6th Cir. 2013) (affirming denial of motion to compel because discovery sought would not resolve any factual disputes, and was therefore irrelevant and burdensome); *Rockstar Consortium US LP v. Google Inc.*, 2015 WL 5972422, at *7 (D. Mass. Oct. 14, 2015) (finding that third party subpoenas sought largely irrelevant information and therefore imposed an undue burden).

43.     The burden here far greater than that for an ordinary electronic discovery review. This is because nearly the entire date range encompasses the pre-decisional period for Joint

Resolution 188 and Act 106, a period for which Movants' requests will likely capture almost exclusively privileged documents whose logging would impose an even more onerous burden on Respondents.   Respondents estimate that the total cost of this review, including document production and privilege work, will likely exceed $170,000, not including associate and partner time preparing and defending privilege logs.  Pocha Decl. ¶ 10.  Given the discovery's irrelevance, Movants cannot justify this wasteful expenditure of scarce public funds.  The Court should therefore bar the electronic discovery entirely. [12]

44.     The fact that Movants have reviewed documents from 2008 for some custodians, Mot. ¶ 48 n.7, is irrelevant to whether Movants' requested date range is appropriate.  The search terms and date ranges vary for the parties' respective requests because the content of the requests varies.  The Oversight Board's requests seek to understand Movants understanding of their security and rights under the bonds at the time of purchase—information that is relevant to whether Movants have a colorable interest in the Debtors' property. By contrast, Movants seek discovery going back three years to obtain information concerning non-legislator government employees' understandings of the pension reform legislation—information that is irrelevant to statutory interpretation questions at issue.

## III.   THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL FURTHER INTERROGATORY RESPONSES

45.     Movants demand "full and complete responses" to two identical interrogatories they propounded on both ERS and the Commonwealth:

- Interrogatory No. 1: All manners in which You maintain the ERS Bondholders' Security Interest has been, is being, or will be protected from a decrease in value during the pendency of the stay imposed by § 362 of the Bankruptcy Code.

---

[12] If there is to be any electronic discovery, at minimum, to reduce the cost of review and privilege logging, the relevant time period should be limited to the period after the laws were passed, starting on June 25, 2017, when Governor Rosselló signed Joint Resolution 188 (the earlier of the two laws).

- Interrogatory No. 2: Whether, how and to what extent the ERS Bondholders have been, are, or will be able to exercise their remedies against the Pledged Property during the pendency of the stay imposed by § 362 of the Bankruptcy Code.

ERS (the only Respondent that has discoverable information relevant to these interrogatories) has already provided an appropriate response, and Movants' request should therefore be denied.

46.     The interrogatories are facially flawed.  Contrary to Movants' assertion that these are "contention" interrogatories, neither states that it seeks a contention or the basis for a contention.  *See McCarthy v. Paine Webber Group, Inc.*, 168 F.R.D. 448, 450 (D. Conn. 1996) (explaining that contention interrogatories "may ask another party to indicate what it contends, to state all facts on which it bases its contentions, to state all the evidence on which it bases its contentions, or to explain how the law applies to the facts."); *see also U.S. ex re. Hunt v. Merck-Medco Managed Care, LLC*, 2005 WL 1971885, *2 (E.D. Penn. Aug. 15, 2005) (finding that propounded interrogatories "are not, in fact, contention interrogatories" because, "[a]s an initial matter, the words 'contention' or 'contend' do not appear anywhere").  Rather, both interrogatories appear to ask for legal conclusions regarding section 362 of the Bankruptcy Code.

47.     Nevertheless, ERS made a good-faith effort to respond to Interrogatory No. 1 with factual information:

> Debtor has maintained or paid to Movants amounts in the Prepetition Segregated Account. Pursuant to Act 106, Debtor no longer receives Employers' Contributions, as defined under the ERS Bond Resolution. After July 1, 2017, pursuant to Act 106, "the Government, the Municipalities, the Legislative Branch, Court Administration and Public Corporations and other covered entities" must remit fees in an amount that "shall be equal to the amount actually paid to Pensioners and Beneficiaries from each covered entity." Act 106, § 2.1(b). Debtor is producing documents sufficient to show the amount of Pay-Go fees that have been remitted to the Commonwealth from July 1, 2017 to the present and current projections for anticipated Pay-Go fees. Debtor contends that the Movants have no rights to Pay-Go fees, which are not property subject to the ERS Bondholders' Security Interest.

Movants argue that this response "fails to answer whether ERS contends that the Bondholders' security interest is being protected or will be protected from a decrease in value during the

21

pendency of the automatic stay." Mot. ¶ 75.  This is merely a semantic debate.  In stating *why* there is no diminution in collateral caused by the automatic stay (*i.e.*, because (i) ERS remitted funds to the Fiscal Agent from the Prepetition Segregated Account for payment to the ERS Bondholders and (ii) the ERS Bondholders' asserted collateral—Employers' Contributions—were eliminated by law after July 1, 2017), ERS made clear that ERS contends that there has been and will be no diminution.  Thus, ERS's response provides sufficient detail and there is nothing to supplement.

48.     Movants also carp that the Commonwealth has not responded to Interrogatory No. 1. But no such response is required.  The information necessary to respond—treatment of the ERS Bondholders' asserted collateral—is solely within ERS's possession, custody and control.  ERS is an independent trust under Puerto Rico law and an entity separate from the Commonwealth.  *See* 3 L.P.R.A. § 761.  Information regarding security interests asserted by the ERS Bondholders reside with ERS and the ERS Bondholders.  Were the Commonwealth ordered to respond, it could only direct Movants to ERS.  This is also why the Commonwealth objected that the interrogatory is unnecessarily duplicative; it is wasteful and unnecessary for the Commonwealth to answer interrogatories identical to those served on ERS for which the Commonwealth has no independent, unique information.

49.     As for Interrogatory No. 2, neither ERS nor the Commonwealth responded for the simple reason that the interrogatory seeks only legal conclusions.  Contrary to Movants' argument that this interrogatory seeks to "probe the contention" that Movants are able to protect their security interests, Mot. ¶ 68, the interrogatory asks how Movants have been, or are being, permitted to exercise legal remedies and when, if ever, they will be permitted to exercise remedies in the future.  Movants' argument also makes no sense because contention interrogatories aim to explore an

opposing party's contentions, not one's own theories.  The parties do not dispute that (i) to date, Bankruptcy Code section 362 has stayed Movants' exercising whatever remedies they may have and (ii) whether Movants will be permitted to exercise remedies in the future is an issue for the Court to decide.  Such legal questions are for the Court alone and are not the proper subject of interrogatories.  *See Anderson v. Werholtz*, 2009 WL 392673, at \*1 (D. Kan. Feb. 17, 2009) (sustaining objection to interrogatory asking parties understanding of statute's effect because it presented a question of "pure law"); *O'Brien v. Int'l Bhd. of Elec. Workers*, 443 F. Supp. 1182, 1187–88 (N.D. Ga. 1977) (sustaining objection to interrogatory seeking explanation for a statute's impact on constitutional provisions because interrogatory "seeks pure legal conclusions"); *United States v. Maryland & Virginia Milk Producers Ass'n*, 22 F.R.D. 300, 301 (D.D.C 1958) ("[I]t is not appropriate to resort to interrogatories in order to ascertain contentions of the opposing party in respect to matters of law.").[13]

## IV.   THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL THE OVERSIGHT BOARD TO PRODUCE DOCUMENTS REGARDING ACT 106 AND JOINT RESOLUTION 188.

52.   The Oversight Board has agreed to produce non-privileged documents (if any) concerning the value of property subject to Movants' supposed security interests, and documents concerning how any such property has been protected from diminution in value.[14]  *See* ECF No.

---

[13] Although Movants complain at length about ERS and the Commonwealth's privilege objections, Mot. ¶ 69, ERS and the Commonwealth lodged them to preserve their right to exclude privileged information from the responses. This is a typical practice when objecting to interrogatories and Movants themselves lodged similar privilege objections in response to the interrogatories served on them.  *See* Case No. 17-3566-LTS, ECF No. 403-1, Ex. D, ¶ 5 (D.P.R. Mar. 21, 2019) ("Movants object to the Interrogatories to the extent they seek information that is subject to the attorney-client privilege, the attorney-work product doctrine, the joint defense privilege, or any other applicable privilege."). In any event, ERS and the Commonwealth are not withholding information on this basis at this time.

[14] As the Oversight Board noted previously [ECF No. 292 in Case No. 17-bk-03566, at 12], Movants' complaint about the effect of legislation does not provide grounds for stay relief:  Movants do not blame the automatic stay for any diminution in value, even today; Bankruptcy Stay § 363 does not apply in Title III; and granting of liens under Bankruptcy Code § 364 is not at issue.  Under these circumstances, the Oversight Board's agreement to produce documents in response to Subpoena Request Nos. 1 and 2 is generous.

401-54 in Case No. 17-bk-03566 at 8-9. That is the sum total of what might be relevant to the Stay Motion. Thus, the Court should deny Movants' motion to compel as directed against the Oversight Board in full.[15]

### A. The Disputed Requests Seek Irrelevant Information.

53.    The threshold problem with the disputed subpoena requests is that they seek irrelevant information. The requests seek documents and communications concerning the background, drafting, preparation, enactment, passage, approval, and implementation of Joint Resolution 188 and Act 106-2017. ECF No. 401-4 at 4 (Request Nos. 3-6). Movants claim (Motion ¶ 55) that this information is relevant to their request for stay relief because (1) "the Oversight Board itself put [that information] into issue in opposing [Movants] request for stay relief or adequate protection," and (2) "the Oversight Board was directly involved in creating and enacting" that legislation. Neither explanation makes sense.

54.    *First*, the Oversight Board's position that *enacted* legislation created a new pension system that does not generate Employers' Contributions, and therefore made diminution in value impossible as to now non-existent collateral, does not justify inquiry into the background, drafting, preparation, enactment, passage, approval, and implementation of that legislation. The Oversight Board's argument is based on the legal effect of the text of the legislation, not the intent, motives, or minutiae from the deliberative process behind the enacted legislation. No discovery is required—or warranted—into those matters on the basis of a legal argument based on the text of an enacted statute.[16]

---

[15] For the sake of judicial economy, the Oversight Board seeks denial of Movants' motion to compel rather than filing separate motions to quash or for a protective order, but will file such separate motions if the Court so directs. Movants' subpoena was also untimely: their deadline to serve written discovery was February 27, 2019 [ECF No. 371 in Case no. 17-bk-03566], but the subpoena was not served until March 4, 2019 [ECF No. 401 ¶ 5].

[16] Further, neither the Oversight Board nor Movants have claimed Joint Resolution 188 or Act 106-2017 are ambiguous such that inquiry into legislative intent of any kind is required for the Court to construe it as a matter of

55.    *Second*, the Oversight Board's involvement in the formulation of Joint Resolution 188 and Act 106-2017 does not make the background, drafting, preparation, enactment, passage, approval, and implementation of that legislation relevant to stay relief.  Movants must show the automatic stay caused diminution in the value of their collateral to obtain stay relief or adequate protection.  No part of the deliberative processes behind Joint Resolution 188 and Act 106-2017 bears on those issues, and those deliberative processes do not become relevant on the ground the Oversight Board was part of the deliberations.

**B.    The Disputed Requests Are Unreasonably Duplicative and Cumulative.**

56.    Even if the disputed requests were relevant, they are unreasonably duplicative and cumulative of the discovery requests Movants served on the Commonwealth and ERS on notice in this case, and therefore improper.  *See* Fed. R. Civ. P. 26(b)(2)(C).

57.    Movants make the exact same requests upon the Commonwealth, and the exact same requests a second time upon ERS:

| # | Requests to Oversight Board[17] | Requests to CW, ERS, and AAFAF[18] |
|---|---|---|
| 3. | All Documents Concerning the background, drafting, preparation, enactment, passage, approval, implementation or effect of Joint Resolution 188, including any Analysis of Joint Resolution 188's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest. | All Documents Concerning the background, drafting, preparation, enactment, passage, approval, implementation or effect of Joint Resolution 188, including any Analysis of Joint Resolution 188's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest.

**Request No. 3 to Commonwealth; Request No. 3 to ERS.** |
| 4. | All Communications between You and anyone Concerning the background, | All Communications between You and anyone Concerning the background, |

---

law—let alone an inquiry into "all" documents and communications that were part of the deliberative process leading to that legislation.

[17] The requests for which Movants subpoenaed the Oversight Board reflected in the Oversight Board's objections and responses at ECF No. 401-4 in Case No. 17-bk-03566.

[18] The requests Movants noticed to the Commonwealth and ERS are at ECF Nos. 401-1 and 401-2 in Case no. 17-bk-03566.

| # | Requests to Oversight Board[17] | Requests to CW, ERS, and AAFAF[18] |
|---|---|---|
| | drafting, preparation, enactment, approval, implementation or effect of Joint Resolution 188. | drafting, preparation, enactment, approval, implementation or effect of Joint Resolution 188 |
| | | **Request No. 4 to Commonwealth; Request No. 4 to ERS.** |
| 5. | All Documents Concerning the background, drafting, preparation, enactment, passage, approval or implementation of Act 106-2017, including any Analysis of Act 106-2017's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest. | All Documents Concerning the background, drafting, preparation, enactment, passage, approval or implementation of Act 106-2017, including any Analysis of Act 106-2017's effect upon (a) Contributions, (b) the Pledged Property, or (c) the ERS Bondholders' Security Interest. |
| | | **Request No. 5 to Commonwealth; Request No. 5 to ERS.** |
| 6. | All Communications between You and anyone Concerning the background, drafting, preparation, enactment, approval, implementation or effect of Act 106-2017. | All Communications between You and anyone Concerning the background, drafting, preparation, enactment, approval, implementation or effect of Act 106-2017. |
| | | **Request No. 6 to Commonwealth; Request No. 6 to ERS.** |

58.     Movants are already seeking documents responsive to the exact same requests (to the extent the Court decides they are not improper and seek relevant information) from the Commonwealth and ERS as Debtors in the Title III Cases.  *See* Fed. R. Civ. P. 26(b)(2)(C). Movants supply no reason in their Motion to Compel to make the exact same requests a third time, by subpoena, to the Oversight Board.

### C.     The Disputed Requests Seek Presumptively Privileged Information.

59.     Movants' disputed requests are also improper and unenforceable because they are directed entirely to presumptively privileged information.  Fed. R. Civ. P. 45(d)(3)(A)(iii).[19]  The

---

[19] The Oversight Board reserves its right to produce a categorical privilege log as to documents responsive to agreed-upon requests (Request Nos. 1-2) and, should the Court grant Movants' motion to compel, as to documents responsive to the disputed subpoena requests (Request Nos. 3-6), that are withheld on the basis of any privilege, right, interest, immunity, or protection.

requests seek documents and communications concerning the background, drafting, preparation, enactment, passage, approval, and implementation of legislation. The requests target only pre-decisional and deliberative materials from the Oversight Board. As such, the requests are improper, and the Court should deny the motion to compel. *See Klamath Water Users Protective Assoc.*, 532 U.S. at 8–9; *see also In re Financial Oversight and Management Board for Puerto Rico*, 295 F. Supp. 3d 66, 70 (D.P.R. 2018) (The deliberative process privilege "protects the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process.") (quoting *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884-85 (1st Cir. 1995)).

### D. The Disputed Requests Impose an Undue Burden.

60.     In view of the defects described above (individually and collectively), the disputed requests are improper because they seek to impose an undue burden upon the Oversight Board. *See* Fed. R. Civ. P. 45(d)(3)(iv); *Rockstar Consortium US LP*, 2015 WL 5972422, at *4. Six factors weigh heavily in favor of finding an undue burden and denying the motion to compel.

61.     *First*, none of the information Movants seek through these requests is remotely relevant to their motion for stay relief. *See Rockstar Consortium US LP*, 2015 WL 5972422, at *4. The intent, motives, and minutiae behind Joint Resolution 188 and Act 106-2017 are not probative of whether Movants' collateral has suffered diminution in value, and Movants' relevance proffer, Mot. ¶ 55, does not change that fact. As a result, the burden upon the Oversight Board arising from *any* effort or cost incurred to comply with the requests is undue, unjustified, and unreasonable.

62.     *Second*, even if Movants had shown their requests sought minimally relevant information (which they have not done), Movants' need for those documents on a motion for stay relief remains zero. *See id.* No amount of detail about the background and drafting of Joint

27

Resolution 188 and Act 106-2017 will affect whether Movants' collateral has suffered any diminution in value.

63.     *Third*, the breadth of the disputed subpoena requests likewise creates an undue burden.  *See id.*  The requests seek all documents and communications—and seek to impose upon the Oversight Board a detailed privilege review of all such documents and communications— pertaining to the background, drafting, preparation, enactment, passage, approval, and implementation of Joint Resolution 188 and Act 106-2017.  Such broad requests have no place in a stay-relief motion, and are an attempt to convert a stay-relief motion into a broader civil action if not a referendum on the Puerto Rico Legislature' power to legislate concerning its pension system.  The requests' breadth alone, especially in view of the narrow legal issues a stay relief motion presents, shows that any compliance would impose an undue burden.

64.     *Fourth*, the time period of the requests creates an undue burden because those requests are directed in their entirety to pre-decisional and deliberative materials.  *See id.*  That is, Movants seek to impose a detailed and expensive privilege review upon the Oversight Board arising from review of pre-decisional documents that have no probative value on a stay-relief motion.

65.     *Fifth*, for the reasons stated above, it is clear the requests seek unreasonably cumulative and duplicative information that Movants have sought, verbatim, from the Commonwealth and ERS.  The Court would be justified in limiting discovery upon the Oversight Board as to the disputed requests even if it were a party to the litigation and received the disputed requests on notice.  *See* Fed. R. Civ. P. 26(b)(2)(C).

66.     *Sixth*, in any event, it is clear Movants have not complied with their duty to take reasonable steps to avoid imposing an undue burden upon the Oversight Board as a subpoenaed

party. Fed. R. Civ. P. 45(d)(1). Among other things, Movants have made the exact same requests for irrelevant information to the Oversight Board as they have upon the Commonwealth and ERS. Movants crafted the disputed subpoena requests to seek presumptively privileged materials rather than presumptively discoverable materials, ostensibly to harass and annoy the Oversight Board and force it to bear undue expense. The Court should therefore deny the motion to compel. *See* Fed. R. Civ. P. 45(d)(1).

## V. THE COURT SHOULD DENY MOVANTS' MOTION TO COMPEL THE OVERSIGHT BOARD TO PRODUCE A WITNESS IN RESPONSE TO MOVANTS' DEPOSITION SUBPOENA.

### A. Movants' Subpoenaed Deposition Topics Seek Irrelevant Information.

67. Beyond seeking to authenticate whatever non-privileged documents the Oversight Board produces in response to the document subpoena (which would be inefficient),[20] none of Movants' proposed topics seek relevant information.

68. Movants make no attempt to address the relevance of their subpoenaed topics. The closest Movants come is their argument that the topics are not overbroad given the underlying relief they seek, Mot. ¶ 60, but that effort falls flat.

- Movants contend that Topic 1 is not overbroad because "value" is the "direct subject" of the Stay Relief Motion. That is wrong: the Stay Relief Motion concerns *diminution* in value *as a result of* the automatic stay. Further, to the extent Movants seek expert value analysis from the Oversight Board, Movants have not met their burden of showing substantial need for it and that it cannot be otherwise obtained without undue hardship. Fed. R. Civ. P. 45(d)(3)(C)(ii).

- Movants argue that Topic 2 is not overbroad because ERS's alleged "dissolution" affects the dissipation of their collateral, but that is inapposite. Respondents dispute that there was "dissolution" of ERS under the text of Joint Resolution 188 and Act 106, but even if there was, it was not the result of the automatic stay.

---

[20] To the extent Movants seek a deposition to authenticate any non-privileged documents the Oversight Board produces in response to Request Nos. 1-2, the Oversight Board is willing to provide an appropriate declaration pursuant to Fed. R. Evid. 902(11).

- Movants maintain that Topics 3 and 4 are not overbroad because the background, drafting, preparation, enactment, passage, approval, implementation Joint Resolution 188 and Act 106-2017 are relevant in view of what the enacted legislation did.  As explained above, that makes no sense:  the legislation speaks for itself, and no one claims ambiguity in the legislation's plain language.

- Movants contend that Topics 5 and 6 are not overbroad because Pay-Go's implementation and communications about it "affect the value" of their security interest.  That, too, makes no sense, as Movants have not established an interest in Pay-Go fees as collateral and, in any event, the implementation and communications about it would not "affect the value" of that alleged collateral. Pay-Go fees are quantifiable and concrete amounts.

- Movants argue that Topics 8 and 9 concerning the *Commonwealth*'s and *ERS's* responses to document requests are relevant because the Oversight Board is their representative in the Title III Cases.  Movants fail to say why they cannot ask the Commonwealth and ERS about their own responses (assuming these are proper topics at all).

69.     Each of the Oversight Board's arguments in the section above concerning the irrelevance of the disputed subpoena requests for documents applies with equal force here, and the Oversight Board incorporates them here by reference.

**B.      Movants' Subpoenaed Deposition Topics Are Unreasonably Cumulative and Duplicative.**

70.     Movants' deposition subpoena to the Oversight Board[21] is unreasonably cumulative and duplicative because it seeks testimony on the exact same subjects that it has noticed to the Commonwealth and ERS.[22]

71.     Movants supply no reason to seek testimony on the exact same topics by subpoena from the Oversight Board, particularly in view of the total irrelevance of the background, drafting, preparation, enactment, passage, approval, and implementation of Joint Resolution 188 and Act 106-2017.

---

[21] The topics for which Movants subpoenaed the Oversight Board are at ECF No. 401-29 in Case No. 17-bk-03566.

[22] The topics Movants noticed to the Commonwealth and ERS are at ECF Nos. 401-26 and 401-27, and the topics for which Movants subpoenaed AAFAF are at ECF No. 401-28, all in Case No. 17-bk-03566.

72.     Movants attempt to justify their cumulative and duplicative deposition subpoena
to the Oversight Board by citing four inapposite cases (Motion ¶ 61).  In each of those cases, an
*entity* that received a Rule 30(b)(6) notice of deposition refused to supply a designee on the
grounds *individual* witnesses had already testified to the requested information. *See La. Pac.
Corp. v. Money Mkt. 1 Int'l Inv. Dealer*, 285 F.R.D. 481, 487 (N.D. Cal. 2012) (noting "courts
have rejected the argument that a Rule 30(b)(6) deposition is unnecessary or cumulative simply
because individual deponents—usually former or current employees of the entity whose Rule
30(b)(6) deposition is sought—have already testified about the topics noticed in the Rule
30(b)(6) deposition notice"); *Appleton Papers Inc. v. George A. Whiting Paper Co.*, No. 08-C-
16, 2009 WL 2870622, at *2 (E.D. Wis. Sept. 2, 2009) (rejecting argument Rule 30(b)(6) notice
to entity improper because "it has already provided ample information through multiple
depositions and interrogatory answers, and thus any deposition of a corporate designee would be
duplicative and unduly burdensome"); *Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D.
Conn. 2010) (noting "courts have allowed 30(b)(6) depositions in order to obtain testimony
binding on the corporation even though that testimony was likely to essentially duplicate
information which had already been stated in an individual deposition"); *Mitchell Eng'g v. City
& Cty. of S.F.*, No. 08-cv-04022, 2010 WL 455290, at *1 (N.D. Cal. Feb. 2, 2010) (permitting
entity deposition of City where prior state-court depositions of individuals was not binding on
City).  That is simply not the case here.

73.     Movants' citation to *Dongguk University* is especially curious.  There, the Court
denied discovery into four topics (Topics 4, 6, 7, and 19) pending other depositions in the case,
and limited discovery into two others (Topics 3 and 23) on the grounds that the six topics were
duplicative.  270 F.R.D. at 75 (quashing Topic 6), 75-76 (quashing Topic 7), 76 (quashing Topic

31

19), 77-78 (limiting Topics 3 and 23), and 78-49 (quashing Topic 4).  Despite Movants' duty to

avoid imposing an undue burden upon the Oversight Board as a non-party witness, Fed. R. Civ.

P. 45(d)(1), Movants have made no limiting proposal here.

### C.   Topics 3-6 Improperly Seek Presumptively Privileged Information.

74.   In addition, Topics 3-6 are improper and unenforceable because they target

presumptively privileged information.  Fed. R. Civ. P. 45(d)(3)(A)(iii).  As with Movants'

document subpoena, the deposition subpoena seeks testimony about the background, drafting,

preparation, enactment, passage, approval, and implementation of legislation.  All are directed in

their entirety to pre-decisional and deliberative materials from the Oversight Board.  As such, the

topics are improper, and the Court should deny the motion to compel.

### D.   The Deposition Subpoena Imposes an Undue Burden.

75.   As with Movants' document subpoena, the deposition subpoena imposes an

undue burden, and the Court must deny the motion to compel as a result.  Fed. R. Civ. P.

45(d)(3)(iv); *Rockstar Consortium US LP*, 2015 WL 5972422, at *4.  The same six factors

recited above (and incorporated here by reference) weigh heavily in favor of denying the motion

to compel:

- *First*, as stated above, the testimony sought is irrelevant to Movants' motion for stay relief.  In particular, the intent, motives, and minutiae behind Joint Resolution 188 and Act 106 are not probative of whether Movants' collateral has suffered diminution in value.

- *Second*, even assuming relevance, Movants' need for testimony on these subjects— particularly in view of the *three* entities from which Movants have already sought that same testimony—remains zero.  No amount of detail about the background and drafting of Joint Resolution 188 and Act 106 will affect whether Movants' collateral has suffered any diminution in value.

- *Third*, the breadth of the deposition topics likewise create an undue burden.  The subpoena seeks to force the Oversight Board to take the unusual step of preparing a witness to testify concerning presumptively privileged matters pertaining to the background, drafting, preparation, enactment, passage, approval, and

implementation of Joint Resolution 188 and Act 106.  Such broad requests have no place in a stay-relief motion.

- *Fourth*, the time period of the disputed subpoena requests creates an undue burden because, in particular for Topics 3-6, those requests are directed in their entirety to pre-decisional and deliberative materials.

- *Fifth*, for the reasons stated above, it is clear the disputed subpoena requests seek unreasonably cumulative and duplicative information that Movants have sought, verbatim, from the Commonwealth, ERS, and AAFAF.  *See* Fed. R. Civ. P. 26(b)(2)(C).

- *Sixth*, in any event, it is again clear Movants have not complied with their duty to take reasonable steps to avoid imposing an undue burden upon the Oversight Board as a subpoenaed party.  Fed. R. Civ. P. 45(d)(1).

## CONCLUSION

For the foregoing reasons, Movants' Motion to Compel should be denied.

Dated: March 25, 2019
      San Juan, Puerto Rico

Respectfully submitted,

*/s/ Margaret A. Dale*

Martin J. Bienenstock
Brian S. Rosen
Jeffrey W. Levitan
Margaret A. Dale
(Admitted *Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: brosen@proskauer.com
Email: klevitan@proskauer.com
Email: mdale@proskauer.com

Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax. 787.722.1932
dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: (787) 751-6764/ 763-0565
Fax: (787) 763-8260

*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

34

*/s/ William J. Sushon*

John J. Rapisardi
Peter Friedman
William J. Sushon
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, New York 10036
(212) 326-2000
jrapisardi@omm.com
suhland@omm.com
pfriedman@omm.com
wsushon@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (787) 294-9508
Fax: (787) 294-9519
emckeen@omm.com

*Co-Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority*

Luis C. Marini-Biaggi
USDC No. 222301
lmarini@mpmlawpr.com

Carolina Velaz-Rivero
USDC No. 300913
cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal Agency
and Financial Advisory Authority*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 25, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/Luis C. Marini-Biaggi*