**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

**DECLARATION OF MADHU POCHA, ESQ. IN OPPOSITION TO MOTION OF CERTAIN SECURED CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO TO COMPEL DISCOVERY**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

2

I, Madhu Pocha, state and declare as follows:

1. I am an attorney at the law firm of O'Melveny & Myers LLP, located at 1999 Avenue of the Stars, 8th Floor, Los Angeles, CA 90067. I am a member in good standing of the Bar of California and admitted *pro hac vice* in this proceeding. I submit this declaration in support of Respondents' Opposition to Movants' Motion to Compel.[2] Unless otherwise specified, I have personal knowledge of the matters stated herein.

2. On February 27, 2019, Movants served two sets of document requests, requests for admission and interrogatories on ERS and the Commonwealth. Movants also served document and deposition subpoenas on AAFAF. Movants submitted the requests at issue with their Motion. *See* Case No. 17-3283-LTS, ECF No. 5971, Exs. A-C, F, and G.

3. On March 6, 2019, Respondents served responses and objections to the document requests and subpoena. Attached as Exhibits A, B, and C are true and correct copies of the ERS, the Commonwealth, and AAFAF's responses and objections to the document requests, respectively.

4. On March 8, 2019, ERS and the Commonwealth served responses and objections to the requests for admission and the interrogatories. Attached as Exhibits D and E are true and correct copies of the ERS and the Commonwealth's responses and objections to the interrogatories, respectively.

**Document Discovery**

5. Counsel to the parties held telephonic negotiations to resolve their discovery disputes on March 1 and March 3, 2019. During these calls, and as reflected in ERS and the

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Opposition to the Motion to Compel.

2

Commonwealth's Responses and Objections to document request Nos. 1 and 2, Respondents offered to produce documents sufficient to show the financial information requested by Movants. Respondents also stated their position that discovery into the intent and formulation of Joint Resolution 188 and Act 106 was not relevant and would encompass privileged information. Movants contended that the discovery was relevant because Respondents had put the legislation "at issue" in opposing stay relief. To try to reach a compromise, Respondents agreed to perform a reasonable search for hard copy and loose files for non-privileged documents related to Act 106 and Joint Resolution 188 in the files of AAFAF, ERS and the Commonwealth. Respondents also agreed to meet and confer to try to reach a reasonable compromise regarding electronic discovery.

6. To that end, on March 4, 2019, Respondents submitted a proposal to Movants for custodians, search terms, and date ranges. Attached as Exhibit F is a true and correct copy of the meet and confer e-mails with Movants (encompassing communications from March 4, 2019 to March 19, 2019).

7. Movants rejected Respondents' initial proposal without making a counterproposal. Respondents nevertheless continued to confer with Movants over several weeks to try to reach a reasonable compromise. During this period, Respondents began collecting custodian email files from ERS, the Commonwealth and AAFAF. Respondents used these collections to run search terms and provide hit counts to Movants. Attached as Exhibits G-1, G-2, and G-3 are true and correct copies of the hit count reports sent to Movants on March 9, 14, and 17, 2019, respectively. Respondents also provided custodian lists identifying the names, titles and affiliations of proposed custodians. Attached as Exhibits H-1 and H-2 are true and correct copies of the custodian lists sent to Movants on March 9 and 14, 2019, respectively.

8

8. During negotiations concerning electronic discovery, Movants asked for additional custodians, more search terms, and expanded date ranges. To try to avoid motion practice and reach a reasonable compromise, Respondents agreed to accept Movants' demands if the parties could resolve the date range issue. But the parties could not agree over the date range. Movants insisted on a date range that started in April 2016, and Respondents opposed this extension on relevance and burden grounds. *See* Ex. F.

9. On March 18, 2019, the parties had a 90-minute call to discuss the date range and other open discovery issues. Movants continued to insist on a date range beginning on April 1, 2016 and informed Respondents that Movants would move to compel if Respondents did not agree to their date range. Movants pointed to an alleged meeting in April 2016 between a former government advisor and Movants' outside counsel as the basis for the request. Respondents agreed to consider the request one last time and to provide a response the next day. On March 19, 2019, Respondents declined to expand the date range back to 2016 and reiterated their relevance and burden concerns. *See* Ex. F.

10. Based on recent document review projects in Title III proceedings that I am helping to manage and supervise, I estimate that the cost of the electronic document and privilege review for this matter will likely be at least $170,000 based on the assumptions below. This is a conservative estimate because it does not include the cost of O'Melveny associate and partner time spent reviewing documents and preparing privilege logs and defending them if challenged by Movants.

- **First-level review of roughly 23,000 documents.** Movants demanded the use of search terms and a "w/50" limiter that hit roughly 23,000 documents in the files of nine custodians from January 1, 2017 to October 1, 2017. *See* Ex. G-3. Because

8

the files are from Spanish-speaking individuals affiliated with AAFAF, ERS and the Commonwealth, a large proportion of documents will be in Spanish. Based on prior Puerto Rico document reviews of Spanish-language materials, the review rate will likely be approximately 30 documents per hour (though the actual rate may be lower or higher depending on the length and complexity of the documents). Assuming such a review rate, it will take roughly 770 hours to complete the review. The current hourly rate of review for Spanish-language contract attorneys is $70 per hour (a heavily discounted rate and assuming no overtime work, which is billed at $105 per hour). Estimated total for this portion of the review: approximately $54,000.

- **Privilege and secondary responsiveness review.** Based on past Puerto Rico document reviews, a significant amount of time will be necessary for privilege review and secondary review to confirm responsiveness calls. Assuming that 20% of the documents are responsive, roughly 4,600 documents will need second-level review (this number may be higher depending on the number of family members that may need to be reviewed). On average, secondary privilege review of Spanish-language documents has been going at a rate of 20 documents per hour given the sensitivity of the materials and the need to assess the deliberative process privilege (though again, this may vary depending on the length and complexity of the documents). We estimate roughly 230 hours of contract attorney time for an estimated cost of approximately $16,100. Based on prior Puerto Rico reviews of comparable size and sensitivity, we estimate another 166 hours of O'Melveny staff attorney time at a rate of $340 per hour will be necessary to help supervise the

8

- privilege review and evaluate privilege calls for an estimated cost of approximately $56,000. The amount of privilege review and the corresponding cost may be higher for this case because the date range encompasses nearly the entire pre-decisional period for Act 106 and Joint Resolution 188. Estimated total for this portion of the review: approximately $72,000.

- **Supervising document review and finalizing productions**. Based on recent Puerto Rico document reviews of comparable size, we estimate that O'Melveny staff attorneys would spend roughly another 120 hours supervising the document review, doing quality control work, and finalizing productions. A significant amount of time has been necessary for quality control prior to Puerto Rico document productions given the sensitivity of internal, confidential materials from government entities and to avoid the inadvertent production of privileged documents. Estimated total for this portion of the review: approximately $41,000.

- **Total Estimate:** approximately $170,000.

11. Although the parties were not able to reach an agreement on electronic discovery, Respondents have produced more than 1,300 documents, including financial information spanning the last three years. The financial documents include bank and account statements for ERS, spreadsheets providing detailed financial information for ERS for the key time periods requested by Movants, reports on the amount of Pay-Go fees that have been collected since the start of the system in July 2017, and projections for future Pay-Go fees. Respondents also produced legislative history and other non-privileged documents related to Act 106 and Joint Resolution 188 that were located in hard copy and loose files.

8

**Privilege Log**

12. During the parties' discussions, Respondents asserted the right to use a categorical privilege log to manage the burden of logging documents in response to Movants' document requests. Movants opposed the use of a categorical log and demanded that both sides exchange "document-by-document" privilege logs "[a]s required by the Federal Rules." *See* Ex. F.

13. On March 15, 2018, AAFAF served a privilege log on Movants. Because AAFAF withheld only 13 documents on privilege grounds, AAFAF's counsel prepared a document-by-document log. Attached as Exhibit I is a true and correct copy of the privilege log. The log contains individual, internal documents from the hard copy and loose files of two lawyers at AAFAF, Mohammad Mahmud Yassin and Carlos M. Yamin Rivera. On the dates listed in the log, Mr. Yassin was Chief Legal and Regulatory Officer for AAFAF and was working closely with AAFAF's outside counsel, O'Melveny & Myers. Mr. Yamin was Associate Legal Director for Government Affairs for the time period encompassed by his log entries and also working closely with O'Melveny & Myers. After reviewing the documents in the log and conferring with AAFAF, we determined that all 13 documents are privileged on the grounds listed in the log.

14. On the parties' March 18, 2019 call, Movants expressed concern over the level of detail in AAFAF's privilege log and continued to oppose the use of categorical privilege logs.

**Interrogatories**

15. On March 8, 2019, Respondents served responses and objections to two identical interrogatories that Movants served on ERS and the Commonwealth. A week later, on the night of March 15, Movants sent a meet and confer letter regarding the interrogatory responses, among other discovery responses. On March 18, Respondents responded to the March 15 letter. Attached as Exhibits J and K are the March 15 and March 18 letters, respectively. During the parties' March

8

18 call, Movants asked Respondents to provide amended interrogatory responses and provide an answer the next day. Respondents informed Movants that because their letter arrived after close of business on a Friday night, Respondents had not had sufficient time to confer with ERS and the Commonwealth over Movants' positions and were not sure if it would be possible to do so before the motion to compel deadline. Movants proceeded to file their motion to compel on March 21.

    I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on March 25, 2019 in Los Angeles, CA.

                                          */s/ Madhu Pocha*

                                          Madhu Pocha