**EXHIBIT B**

DPR MODIFIED PROMESA B2570 (Form 2570 – Subpoena to Produce Documents in a Bankruptcy Case or Adversary Proceeding) (10/17)

# UNITED STATES DISTRICT COURT
### For the District of Puerto Rico

In re  Puerto Rico Electric Power Authority
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. 17-BK-4780-LTS

PROMESA Title III

_____
Plaintiff
v.

Adv. Proc. No. _____

_____
Defendant

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A PROMESA TITLE III CASE (OR ADVERSARY PROCEEDING)

To:  Citigroup Global Markets Inc.
*(Name of person to whom the subpoena is directed)*

☒ *Production*: YOU ARE COMMANDED to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: set forth in the attached Schedule A.

| PLACE | DATE AND TIME |
|---|---|
| Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 | January 24, 2019 at 5:00 p.m. (E.S.T.) |

☐ *Inspection of Premises*: YOU ARE COMMANDED to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: 1/9/2019

CLERK OF COURT

OR

_____            /s/ Robert Berezin
*Signature of Clerk or Deputy Clerk*            *Attorney's signature*

The name, address, email address, and telephone number of the attorney representing *(name of party)*
National Public Finance Guarantee Corporation , who issues or requests this subpoena, are:
Robert Berezin, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (10/17)   (Page 2)

## PROOF OF SERVICE
(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____
on *(date)*_____.

☐ I served the subpoena by delivering a copy to the named person as follows: _____
_____
_____ on *(date)* _____; or

☐ I returned the subpoena unexecuted because: _____
_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____.

My fees are $_____ for travel and $_____ for services, for a total of $_____.

I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
Server's signature

_____
Printed name and title

_____
Server's address

Additional information concerning attempted service, etc.:

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (10/17)   (Page 3)

## Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
(made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
    (i) is a party or a party's officer; or
    (ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
  (A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  (B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
  (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
  (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    (i) fails to allow a reasonable time to comply;
    (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
    (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    (iv) subjects a person to undue burden.
  (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    (i) disclosing a trade secret or other confidential research, development, or commercial information; or
    (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
  (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    (i) expressly make the claim; and
    (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

...

**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## SCHEDULE A

## DEFINITIONS

The terms used herein shall have the meanings ascribed to them in the definitions set forth below and should be given their most expansive and inclusive interpretation unless otherwise expressly limited. This includes, without limitation, the following:

1. "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates (including the Authority), and any of its employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives.

2. "Authority" means the Puerto Rico Public-Private Partnerships Authority and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives.

3. "Commonwealth" means the Commonwealth of Puerto Rico and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its current and former elected officials, employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives.

4. "Communication" or "Communications" mean the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and, with respect to oral Communications, includes any document evidencing the date, participants, subject matter, and content of any such oral communication, including, but not limited to, mail, e-mail, facsimile, transcripts, minutes, notes, audio, video, electronic recordings, telephone records, and calendar entries.

5. "Document" or "Documents" are intended to have the broadest possible meaning under Federal Rule 34 and mean any and all writings and recorded materials, of any kind, that are or have been in Your possession, custody or control, whether originals or copies. Such writings include, but are not limited to, Communications, electronically stored information in any medium, such as emails, text messages, and instant messages, contracts, notes, drafts, interoffice memoranda, memoranda for files, letters, research materials, correspondence, logs, diaries, forms, bank statements, tax returns, card files, books of accounts, journals, ledgers, invoices, drawings, computer files, records, data, print-outs or tapes, reports, statistical components, studies, graphs, charts, minutes, manuals, pamphlets, or books of all nature and kind whether handwritten, typed, printed, mimeographed, photocopied or otherwise reproduced, and tape recordings (whether for computer, audio or visual display) or other tangible things on which words, phrases, symbols or information are stored.

6. "Fiscal Plan" means PREPA's August 1, 2018 fiscal plan, any amendments thereto and any superseding fiscal plan.

7. "FOMB" means the Financial Oversight and Management Board for Puerto Rico and any of its employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives.

8. "Governor" means Hon. Ricardo Rosselló Nevares, and any former governor of the Commonwealth of Puerto Rico and any of their respective employees, agents, consultants, attorneys and representatives.

9. "Person" means any natural person or any legal entity, including, without limitation, any business or governmental entity or association.

10. "PREC" means the Puerto Rico Energy Bureau, formerly known as the Puerto Rico Energy Commission, and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives.

11. "PREPA" means the Puerto Rico Electric Power Authority and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives.

12. "Privatization or Transformation of PREPA" means any plan to privatize or transform PREPA, including but not limited to (i) plans to sell PREPA assets, including generation assets, to entities other than PREPA, including private parties; (ii) plans to enter into concession agreements with entities other than PREPA, including private parties, and including for the purpose of managing PREPA's transmission and distribution assets; (iii) any other plan to sell or lease assets to or contract with entities other than PREPA, including private parties; (iv) any plans to rebuild, re-design, retrofit, or otherwise re-develop existing assets, or build, design, or otherwise develop new assets; or (v) any other transformation plans contemplated by the Fiscal Plan.

13. The term "regarding" means concerning, relating to, referring to, reflecting, discussing, describing, analyzing, supporting, evidencing, constituting, comprising, containing, setting forth, showing, disclosing, explaining, summarizing, or mentioning.

14. "T&D System" means PREPA's electric power transmission and distribution system.

15. "You" or "Your" means Citigroup Global Markets Inc. and any of its predecessors, divisions, subdivisions, offices, departments, agencies, affiliates, and any of its

current and former elected officials, commissioners, employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives, and any Person or entity acting or purporting to act on its behalf.

### INSTRUCTIONS

1. You are required to answer these Requests drawing upon all materials in Your possession, custody, or control, as well as materials that are not in Your custody but are owned in whole or in part by You and those that You have an understanding, express or implied, that You may use, inspect, examine, or copy. You must provide all information in response to a Request which is known to You, Your employees, executives, directors, officers, partners, agents, members, board members, consultants, attorneys and representatives, or which appears in Your records.

2. If any Request herein cannot be complied with in full, then it shall be complied with to the fullest extent possible with an explanation as to why full compliance is not possible.

3. The following rules of construction shall apply to these Requests;

(a) The terms "all" and "any," whenever used separately, shall be construed as "any and all" to encompass the greatest amount of responsive material;

(b) The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope;

(c) The term "including" shall always be construed to mean "including, but not limited to," or "including, without limitation" to encompass more than the specifically identified materials;

(d) The present tense shall also include the past tense and vice versa;

(e) The use of the singular form of any word includes the plural and vice versa; and

  (f) the use of any capitalized word shall include the same word uncapitalized, and the use of any uncapitalized word shall include the same word capitalized.

  4. Documents shall be produced either as they are kept in the usual course of business or shall be organized and labeled to correspond to the categories in these Requests.

  5. You are required to produce all non-identical copies and drafts of each Document. The originals of all Documents produced in copy form shall be made available for inspection upon request.

  6. Documents attached to each other in their original form should not be separated. Documents shall be provided in their entirety notwithstanding the fact that portions thereof may contain information not requested.

  7. If no information or Documents responsive to a numbered paragraph are in Your possession, You are to indicate this in a written response.

  8. The fact that a Document has or will be produced by another party or third party to this Renewed Lift Stay Motion or to related proceedings does not relieve You of the obligation to produce Your copy of the same Document.

  9. If any Document is withheld in whole or in part under claim of any privilege or work product or other immunity, then consistent with Federal Rule 26(b)(5), as applied to this proceeding by Bankruptcy Rule 7026, You are to provide a list of such Documents identifying each such document for which any such privilege, work product, or other immunity is claimed, together with the following information:

  (a) the nature of the claim of privilege or immunity, including the statute, rule, or decision giving rise to the claim of privilege or immunity;

  (b) all facts relied upon in support of the claim of privilege or immunity;

  (c) all Persons on whose behalf the privilege or immunity is claimed;

5

(d) the type of Document (e.g., letter, memorandum, note, telegram, e-mail, chart, report, recording, etc.);

(e) the subject matter (without revealing the information as to which privilege is claimed);

(f) its date, author(s), sender(s), addressee(s), and recipient(s); and

(g) the paragraph(s) of these Requests to which production of the document is responsive.

10. You are further directed to describe the factual and legal basis for each claim of privilege or immunity in sufficient detail so as to permit the court to adjudicate the validity of the claim of privilege or immunity, and to produce all Documents or portions thereof not subject to Your objection.

11. If any Document requested was, but is no longer, in Your possession, custody, or control, identify the document and state what disposition was made of it and the date or dates upon which such disposition was made, and additionally, produce all Documents relating to the disposition of such Document.

12. If You object to any Request (or portion thereof), state the reason for the objection in detail and respond to that Request as narrowed by Your objection.

13. Electronically Stored Information ("ESI"), as that term is used in Federal Rule 34, should be produced as follows:

(a) TIFFs. Black and white images shall be delivered as single page Group IV TIFF image files. Color images must be produced in .jpeg format. Image file names should not contain spaces or special characters and must have a unique file name, i.e., Beginning Bates Number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

(b) Unique IDs. Each image should have a unique file name and should be named with the Bates number assigned to it.

(c) Text Files. Extracted full text in the format of document level txt files shall be provided in a separate folder, one text file per document. Each text file should match

6

the respective TIFF filename (Beginning Bates Number). Text from redacted pages will be produced in OCR format rather than extracted text.

(d) Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

(e) Database Load Files/Cross-Reference Files. Records should be provided in a format compatible with the following industry standards.

(1) The image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

(2) The data file (.dat) should contain all the fielded information that will be loaded into the database.

(3) The first line of the .dat file must be a header row identifying the field names.

(4) The .dat file must use the following Concordance default delimiters: Comma ¶ ASCII character (020) Quote þ ASCII character (254)

(5) Date Fields should be provided in the format mm/dd/yyyy.

(6) Date and time fields must be two separate fields.

(7) If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

(8) An OCRPATH field must be included to provide the file path name of the extracted text file(s).

(9) Each text file must be named after the Beginning Bates Number.

(10) For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

(11) Beginning Bates Number and Ending Bates Number should be two separate fields.

(12) A complete list of metadata fields is included in paragraph 11(f).

(f) Metadata. For all ESI records, provide all of the following metadata fields: Custodian, Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Record Type, Master Date, SentOn Date and Time, Received Date and Time, Create Date and Time, Last Modified Date and Time, Parent

7

Folder, Author, To, From, CC, BCC, Subject/Title, Original Source, Native Path, File Extension, File Name, File Size, Full Text, and page count.

(g) Spreadsheets. For spreadsheets that were originally created using common, off-the-shelf software (e.g., Microsoft Excel), produce the spreadsheets in native format and, in addition, in TIFF format. Native file Documents must be named per the Beginning Bates Number. The full path of the native file must be provided in the .dat file.

14. Hard-copy Documents shall be produced as follows:

(a) TIFFs. Black and white images shall be delivered as single page Group IV TIFF image files. Color images must be produced in .jpeg format. Image file names should not contain spaces or special characters and must have a unique file name, i.e., Beginning Bates Number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image.

(b) Unique IDs. Each image should have a unique file name and should be named with the Bates number assigned to it.

(c) OCR. High-quality document level OCR text files should be provided in a separate folder, one text file per document. Each text file should match the respective TIFF filename (Beginning Bates Number). For redacted Documents, provide the re-OCR'd version.

(d) Database Load Files/Cross-Reference Files. Records should be provided in a format compatible with the following industry standards:

(1) the image cross-reference file to link the images to the database should be a comma-delimited file with a line in the cross-reference file for every image in the database.

(2) The data file (.dat) should contain all the fielded information that will be loaded into the database.

(3) The first line of the .dat file must be a header row identifying the field names.

(4) The .date file must use the following Concordance default delimiters: Comma ¶ ASCII character (020) Quote þ ASCII character (254)

(e) Date Fields should be provided in the format mm/dd/yyyy.

(f) Date and time fields must be two separate fields.

(g) If the production includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.

8

(h) An OCRPATH field must be included to provide the file path name of the extracted text file(s).

(i) Each text file must be named after the Beginning Bates Number.

(1) For production with native files, a NATIVELINK field must be included in the .dat file to provide the file path and name of the native file being produced.

(2) Beginning Bates Number and Ending Bates Number should be two separate fields.

(j) Unitizing of Records. In scanning hard copy records, distinct records should not be merged into a single record, and single records, should not be split into multiple records (i.e., hard copy records should be logically unitized).

(k) Parent-Child Relationships. Parent-child relationships (the association between an attachment and its parent record) should be preserved.

(l) Objective Coding Fields. The following objective coding fields should be provided: Beginning Bates Number, Ending Bates Number, Beginning Attachment Number, Ending Attachment Number, Source-Custodian, and page count.

15. These Requests are continuing in nature. If any information or Document responsive to a Request herein is not presently in Your possession, custody, or control but subsequently becomes available, is discovered or is created, or comes into Your possession, custody, or control, You have a continuing obligation pursuant to Federal Rule 26(e) and are hereby requested, to supplement Your responses to these Requests within a reasonable period of time after such information or Document comes into Your possession, custody, or control.

16. The manner in which any Definition or Instruction is used for purposes of these Requests shall not be deemed to constitute an agreement or acknowledgement on the part of the Movants that such term or definition is accurate, meaningful or appropriate for any other purpose regarding the Renewed Lift Stay Motion or other proceeding or action.

17. Unless otherwise specified in a particular Request, each Request herein seeks any and all Documents and Communications that were dated, generated, prepared, modified,

9

sent, or received in the period from August 1, 2017 through the present inclusive, and any Documents and Communications related to that period whenever generated.

## DOCUMENT REQUESTS

1. All Documents regarding (i) the terms of Your engagement with the FOMB; (ii) Your roles, responsibilities, and the scope of Your work in connection with PREPA, including the Privatization or Transformation of PREPA; (iii) any changes to the scope of such work; (iv) any recommendations made by You regarding PREPA; (v) whether any such recommendations were considered or implemented; and (vi) the reasons that any such recommendations were or were not considered or implemented.

2. All Communications, from January 1, 2018 to the present, between You and PREPA, AAFAF, PREC, the Authority, the Governor, the FOMB, or any of those organizations' outside advisors regarding the proposed Privatization or Transformation of PREPA.

3. All Communications, from December 11, 2017 to the present, with any member of PREPA's Transformation Advisory Council regarding the Privatization or Transformation of PREPA.

4. All Communications with members of the "Working Group established between Governor, FOMB, and advisory teams to coordinate and lead [PREPA's] transaction process," as described on page 13 of the Fiscal Plan.

5. All Documents regarding (i) the timelines, steps, phases, or milestones contemplated or required in order to effectuate the proposed Privatization or Transformation of PREPA; (ii) actions already undertaken, whether in whole or in part, in furtherance of the proposed Privatization or Transformation of PREPA, or actions identified that need to be taken prior to any Privatization or Transformation of PREPA; (iii) current progress with respect to the Privatization or Transformation of PREPA; and (iv) the reasons why any timelines, steps, phases, or milestones

contemplated or required in order to effectuate the proposed Privatization or Transformation of PREPA have been delayed or have not yet been achieved.

6. All Documents regarding efforts to solicit potential buyers and investors related to any Privatization or Transformation of PREPA, including but not limited to (i) any "roadshow" or similar investor presentations; (ii) any valuation or indicative pricing analysis; or (iii) any strategic plans or financial projections provided to potential buyers and investors.

7. All Documents regarding all private parties who have expressed interest in (i) purchasing or leasing PREPA's assets; (ii) entering into a concession agreement in respect of at least PREPA's T&D System; (iii) entering into a contract to manage any aspects of Puerto Rico's electric system; (iv) rebuilding, redesigning, retrofitting, or otherwise redeveloping existing assets, or building, designing, or otherwise developing new assets in respect of the electric system in Puerto Rico; or (v) otherwise participating in the Privatization or Transformation of PREPA.

8. All Communications with private parties regarding the Privatization or Transformation of PREPA, including but not limited to (i) responses to requests for proposals, market sounding requests, requests for qualifications, or general questions regarding the proposed Privatization or Transformation of PREPA; (ii) any due diligence requests made by potential buyers and investors; (iii) any Communications regarding the timeline and associated milestones of the Privatization or Transformation of PREPA; (iv) any preliminary indications of interest, pricing, valuations, or draft term sheets exchanged with private parties; or (v) specific feedback from private parties.

9. All Documents regarding any analysis, reports, tracking, metrics, or other comparisons of PREPA's performance and progress against its goals and milestones, including but not limited to the goals and milestones set forth in PREPA's Fiscal Plan.

10. All Documents, including Communications, regarding federal funding that is or may be available to redesign, rebuild or construct the electric system in Puerto Rico, including as part of the Privatization or Transformation of PREPA. This includes Documents and Communications regarding the timing, amount, terms, and obstacles associated with obtaining such funds and how such funds would be utilized in connection with the Privatization or Transformation of PREPA. For the avoidance of doubt, this request seeks Documents and Communications regarding efforts to secure federal funds as detailed in the Fiscal Plan, including but not limited to PREPA's efforts to secure (i) a $12 billion capital investment and (ii) a Community Development Block Grant from the U.S. Department of Housing and Urban Development.

11. All Documents, including Communications, regarding any Statements of Qualifications submitted in response to the Authority's October 31, 2018 Request for Qualifications.