# EXHIBIT 2

**REMARKETING CIRCULAR – NOT A**
**NEW ISSUE – BOOK-ENTRY ONLY**
See "Book-Entry Only System" under THE BONDS

# COMMONWEALTH OF PUERTO RICO
## $93,835,000 Public Improvement Refunding Bonds, Series 2007 A-4
## (General Obligation Bonds)

**Original Issue Date: October 16, 2007**
**Conversion Date: As shown on the inside cover**                    **Due:  July 1, as shown on the inside cover**

On October 16, 2007, the Commonwealth of Puerto Rico (the "Commonwealth") issued its Public Improvement Refunding Bonds, Series 2007 A, in the original aggregate principal amount of $926,570,000 (the "Series 2007 A Bonds"), pursuant to the provisions of Act No. 2 of the Legislative Assembly of Puerto Rico, approved October 10, 1985, and Joint Resolution No. 57 of the Legislative Assembly of Puerto Rico, approved July 12, 1993, and pursuant to a resolution adopted by the Secretary of the Treasury of the Commonwealth (the "Secretary") and approved by the Governor of Puerto Rico on October 3, 2007, as amended and supplemented (the "Bond Resolution").  The Series 2007 A Bonds with subseries designation "Series 2007 A-4" in the principal amount of $96,825,000 maturing July 1, 2031, CUSIP No. 74514LNM5 (the "Series 2007 A-4 Bonds"), were originally issued as variable rate demand obligations, the interest on which would be periodically reset by one or more remarketing agents.

Pursuant to the terms of the Bond Resolution, the Secretary has elected to convert and remarket $93,835,000 principal amount of the Series 2007 A-4 Bonds (the "Bonds") at a Long-Term Interest Rate for a Long-Term Interest Rate Period (as defined herein) on the Conversion Date, as described herein. The Bonds will bear interest at the Long-Term Interest Rate set forth in the inside cover of this Remarketing Circular to maturity (or earlier redemption). Interest on the Bonds will be payable semi-annually on each January 1 and July 1, commencing on January 1, 2010.  Morgan Stanley & Co. Incorporated and JP Morgan Chase, Inc. will serve as co-remarketing agents (the "Remarketing Agents") for the Bonds. The Bonds are subject to redemption prior to maturity.  See "Redemption" under THE BONDS.

Concurrently with the issuance of the Bonds, the Commonwealth is issuing $3,425,000 principal amount of its Public Improvement Refunding Bonds, Series 2009 A to refund the remainder of the Series 2007 A-4 Bonds (the "Refunding Bonds").  The Refunding Bonds are being offered pursuant to a separate Official Statement.

**The Bonds are general obligations of the Commonwealth.  The good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and interest on the Bonds.  The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a first claim on available Commonwealth resources.**

The scheduled payment of principal of and interest on the Bonds when due is guaranteed by a municipal bond insurance policy issued by Financial Security Assurance Inc. ("Financial Security") concurrently with the original issuance of the Bonds.  Financial Security is expected to consent to the conversion of the Bonds on the Conversion Date, with the Bonds having the details described in this Remarketing Circular and the Bond Resolution.

The Bonds were originally issued and are being remarketed as registered bonds without coupons, registered only in the name of Cede & Co., as nominee of The Depository Trust Company, New York, New York ("DTC"), which acts as securities depository for the Bonds.  The Bonds are being remarketed in denominations of $5,000 and any multiple thereof. See "Book-Entry Only System" under THE BONDS.

On October 16, 2007 Squire, Sanders & Dempsey L.L.P. delivered its approving opinion which concluded that under existing law (i) assuming continuing compliance with certain covenants and the accuracy of certain representations, interest on the Bonds is excluded from gross income for federal income tax purposes and is not an item of tax preference for purposes of the federal alternative minimum tax imposed on individuals and corporations, and (ii) the Bonds and the interest thereon are exempt from state, Commonwealth of Puerto Rico and local income taxation.  The approving opinion further concluded that interest on the Bonds may be subject to certain federal taxes imposed only on certain corporations, including the corporate alternative minimum tax on a portion of that interest.  See *Appendix II*.  On the Conversion Date of the Bonds, Greenberg Traurig, LLP will deliver an opinion to the effect that such conversion is permitted under the Bond Resolution and will not in and of itself impair or affect the exclusion of interest on said Bonds from gross income for purposes of federal income taxation.  Greenberg Traurig, LLP will not express an opinion regarding the current status of such interest for federal income tax purposes.  For a more complete discussion of the tax aspects of the Bonds, *see* TAX MATTERS herein.

The Bonds are offered for delivery when, as and if remarketed by the Remarketing Agents, subject to the delivery of a Favorable Opinion of Bond Counsel by Greenberg Traurig, LLP, Boston, Massachusetts, Bond Counsel, as required by the Bond Resolution, and certain other conditions.  Certain legal matters will be passed upon for the Remarketing Agents by Pietrantoni Méndez & Alvarez LLP, San Juan, Puerto Rico.  It is expected that the Bonds will be available for delivery through the facilities of DTC upon conversion and remarketing on or about September 17, 2009.

**Morgan Stanley**                                                                      **JP Morgan**

September 11, 2009

### $93,835,000 Public Improvement Refunding Bonds, Series 2007 A-4

| Conversion Date | Maturity July 1 | Amount | Interest Rate | Price | CUSIP[*] |
|---|---|---|---|---|---|
| 09/17/2009 | 2030 | $42,790,000 | 5.25% | 102.737% | 74514LVT1 |
| 09/17/2009 | 2031 | $51,045,000 | 5.00 | 100.00 | 74514LVU8 |

---

[*]    Copyright 2009, American Bankers Association. CUSIP data herein are provided by Standard & Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. The CUSIP number listed above is being provided solely for the convenience of bondholders and the Commonwealth does not make any representation with respect to such number or undertake any responsibility for its accuracy now or at any time in the future. The CUSIP number is subject to being changed after the issuance of the Bonds as a result of various subsequent actions including, but not limited to, a refunding in whole or in part of the Bonds.

# Commonwealth of Puerto Rico

**Governor**

LUIS G. FORTUÑO

**Members of the Cabinet**

JUAN CARLOS BLANCO
*Chief of Staff*

| | | |
|---|---|---|
| KENNETH D. MCCLINTOCK<br>*Secretary of State* | ANTONIO M. SAGARDÍA<br>*Secretary of Justice* | JUAN C. PUIG<br>*Secretary of the Treasury* |
| CARLOS A. CHARDÓN<br>*Secretary of Education* | MIGUEL ROMERO<br>*Secretary of Labor and<br>Human Resources* | DR. LORENZO GONZÁLEZ<br>*Acting Secretary of Health* |
| JAVIER RIVERA AQUINO<br>*Secretary of Agriculture* | RUBÉN A. HERNÁNDEZ<br>*Secretary of Transportation<br>and Public Works* | JOSE R. PÉREZ-RIERA<br>*Secretary of Economic<br>Development and Commerce* |
| YANITSIA IRIZARRY<br>*Secretary of Family Affairs* | YESEF Y. CORDERO<br>*Secretary of Housing* | DANIEL J. GALÁN<br>*Secretary of Natural and<br>Environmental Resources* |
| LUIS G. RIVERA MARÍN<br>*Secretary of<br>Consumer Affairs* | HENRY NEWMANN<br>*Secretary of Sports and Recreation* | CARLOS M. MOLINA<br>*Secretary of Corrections<br>and Rehabilitation* |

---

| | |
|---|---|
| *Legislative Officers* | *Fiscal Officers* |
| THOMÁS RIVERA SCHATZ<br>President, Senate | MARÍA SÁNCHEZ BRAS<br>Director, Office of<br>Management and Budget |
| JENNIFFER GÓNZALEZ<br>Speaker, House of<br>Representatives | CARLOS M. GARCÍA<br>President,<br>Government Development<br>Bank for Puerto Rico |

No dealer, broker, sales representative or other person has been authorized by the Commonwealth or the Remarketing Agents to give any information or to make any representations other than those contained herein and, if given or made, such other information or representations must not be relied upon as having been authorized by the Commonwealth or any Remarketing Agent.  This Remarketing Circular does not constitute an offer to sell or the solicitation of an offer to buy, nor shall there be any sale of the Bonds, by any person in any jurisdiction in which it is unlawful for such person to make such an offer, solicitation or sale.  The information set forth herein has been obtained from the Commonwealth and other official sources that are believed to be reliable.  The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Remarketing Circular nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the Commonwealth since the date hereof.  The Remarketing Agents have provided the following sentence and paragraph for inclusion in this Remarketing Circular.  The Remarketing Agents have reviewed the information in this Remarketing Circular in accordance with, and as part of, their respective responsibilities to investors under the federal securities laws as applied to the facts and circumstances of this transaction, but the Remarketing Agents do not guarantee the accuracy or completeness of such information.

**In connection with remarketing of the Bonds, the Remarketing Agents may effect transactions which stabilize or maintain the market prices of the Bonds and the Commonwealth's outstanding general obligation bonds at levels above those which might otherwise prevail in the open market.  Such stabilizing, if commenced, may be discontinued at any time.**

**Certain statements contained in this Remarketing Circular reflect not historical facts but forecasts and "forward-looking statements." These statements are based upon a number of assumptions and estimates that are subject to significant uncertainties, many of which are beyond the control of the Commonwealth.  In this respect, the words "estimates," "projects," "anticipates," "expects," "intends," "believes" and similar expressions are intended to identify forward-looking statements.  All projections, forecasts, assumptions, expressions of opinions, estimates and other forward-looking statements are expressly qualified in their entirety by this cautionary statement: actual results may differ materially from those expressed or implied by forward-looking statements.**

Other than with respect to information concerning Financial Security Assurance Inc. ("Financial Security") contained under the caption BOND INSURANCE and *Appendix V* – Financial Security Municipal Bond Insurance Policy herein, none of the information in this Remarketing Circular has been supplied or verified by Financial Security and Financial Security makes no representation or warranty, express or implied, as to (i) the accuracy or completeness of such information; (ii) the validity of the Bonds; or (iii) the tax exempt status of the interest on the Bonds.

**COMMONWEALTH OF PUERTO RICO**
**$93,835,000 Public Improvement Refunding Bonds, Series 2007 A-4**
**(General Obligation Bonds)**

## INTRODUCTORY STATEMENT

This Remarketing Circular of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), which includes the cover page, the inside cover page, the table of contents and the appendices, provides certain information in connection with the conversion and remarketing of a portion of a subseries of the $926,570,000 principal amount of Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2007 A (the "Series 2007 A Bonds"), to wit: $93,835,000 aggregate principal amount of the Series 2007 A Bonds with subseries designation "Series 2007 A-4" maturing July 1, 2031, CUSIP No. 74514LNM5 (the "Bonds"), which were originally issued as variable rate demand obligations, the interest on which would be periodically reset by one or more remarketing agents. Concurrently with the issuance of the Bonds, the Commonwealth is issuing $3,425,000 principal amount of its Public Improvement Refunding Bonds, Series 2009 A to refund the remainder of the Series 2007 A Bonds with subseries designation "Series 2007 A-4" (the "Refunding Bonds"). The Refunding Bonds are being reoffered pursuant to a separate Official Statement.

The Bonds were originally issued and are being converted and remarketed pursuant to the provisions of Act No. 2 of the Legislative Assembly of Puerto Rico, approved October 10, 1985, and Joint Resolution No. 57 of the Legislative Assembly of Puerto Rico, approved July 12, 1993 (collectively, the "Act"), and pursuant to a resolution adopted by the Secretary of the Treasury of the Commonwealth (the "Secretary") and approved by the Governor of Puerto Rico on October 3, 2007, as amended and supplemented (the "Bond Resolution").

Reference is made to the Bond Resolution for the complete terms of the Bonds. Terms used in this Remarketing Circular and not defined herein have the respective meanings given to them in the Bond Resolution, copies of which may be obtained by contacting Executive Vice President, Government Development Bank for Puerto Rico, 135 West 50th Street, 22nd Floor, New York, New York 10020, telephone number (212) 333-0364, or to Vice President - General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

*Remarketing; Remarketing Agents*. The Bonds were originally issued in Daily Interest Rate Periods and sold on October 16, 2007. Pursuant to the terms of the Bond Resolution, the Bonds are being remarketed at the Long-Term Interest Rate set forth in the inside cover page. The Bonds will convert to a Long-Term Interest Rate on September 17, 2009 (the "Conversion Date"). The Bonds will bear interest from the Conversion Date at the Long-Term Interest Rate set forth on the inside cover page. Morgan Stanley & Co. Incorporated and JP Morgan Chase, Inc. will serve as co-remarketing agents (the "Remarketing Agents") for the Bonds. Upon the conversion of the Bonds to the Long-Term Interest Rate, the Standby Bond Purchase Agreement (as defined below) will no longer be in effect with respect to the Bonds.

*Bond Insurance*. Upon the original delivery of the Bonds, Financial Security Assurance Inc. ("Financial Security") issued a municipal bond insurance policy (the "Financial Security Policy") guaranteeing the scheduled payment of principal of and interest on the Bonds when due as set forth in the Financial Security Policy. Financial Security has expressed its willingness to consent to the conversion of the Bonds to a Long-Term Interest Rate to maturity, with such converted Bonds having the details described in this Remarketing Circular and the Bond Resolution. Financial Security is expected to provide its written consent to such conversion on the Conversion Date. A copy of the Financial Security Policy is attached hereto as *Appendix V*.

*Security.*   Under the Act, the good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and interest on the Bonds.   The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a first claim on available Commonwealth resources.

*Additional Documents*.   This Remarketing Circular includes the Commonwealth's Financial Information and Operating Data Report, dated May 15, 2009 (the "Commonwealth Report"), attached hereto as *Appendix I*.   The Comprehensive Annual Financial Report of the Commonwealth for the fiscal year ended June 30, 2008, prepared by the Department of the Treasury of the Commonwealth (the "Commonwealth's Annual Financial Report"), includes the basic financial statements of the Commonwealth as of and for the fiscal year ended June 30, 2008, which is incorporated by reference herein.

The Commonwealth Report attached hereto as *Appendix I* includes important operating and financial information about the Commonwealth, including information about its economy, historical revenues and expenditures of its General Fund, the estimated year-end results of fiscal year 2009, the proposed budget for fiscal year 2010, and the debt of the Commonwealth's public sector, and should be read in its entirety and in connection with the information included under RECENT DEVELOPMENTS herein.   The Commonwealth's Annual Financial Report includes the basic financial statements of the Commonwealth as of and for the fiscal year ended June 30, 2008, together with the independent auditor's report thereon, dated August 12, 2009, of KPMG LLP, certified public accountants.   KPMG LLP did not audit the financial statements of the Public Buildings Authority's capital project fund or The Children's Trust special revenue fund (major funds), and certain activities, funds and component units separately identified in its report.   Those financial statements were audited by other auditors whose reports have been furnished to KPMG LLP, and its opinion as to the basic financial statements, insofar as it relates to the amounts included in the basic financial statements pertaining to such activities, funds and component units, is based solely on the reports of the other auditors.   The report by KPMG LLP contains an emphasis paragraph for the adoption of Governmental Accounting Standards Board (GASB) Statement No. 45, *Accounting and Financial Reporting by Employers for Postemployment Benefits other than Pensions*, during the year ended June 30, 2008.   The Commonwealth's Annual Financial Report has been filed by the Commonwealth with the Municipal Securities Rulemaking Board ("MSRB") through the Electronic Municipal Market Access System ("EMMA") (http://emma.msrb.org).

Any appendix of an Official Statement of the Commonwealth or of any instrumentality of the Commonwealth containing any revision to the Commonwealth Report or to the Commonwealth's Annual Financial Report that is filed with the MSRB through EMMA, or any new or revised Commonwealth Report or Commonwealth's Annual Financial Report or other document containing information that modifies or supersedes the information contained in the Commonwealth Report or in the Commonwealth's Annual Financial Report that is filed with the MSRB through EMMA, in each case after the date hereof and prior to the termination of the remarketing of the Bonds, shall be deemed to be incorporated by reference into this Remarketing Circular and to be part of this Remarketing Circular from the date of filing of such document. Any statement contained in the Commonwealth's Annual Financial Report shall be deemed to be modified or superseded for purposes of this Remarketing Circular to the extent that a statement contained herein or in any such subsequently filed document modifies or supersedes such statement. Any statement contained in the Commonwealth Report or elsewhere herein shall also be deemed to be modified or superseded to the extent that a statement contained in any such subsequently filed document modifies or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Remarketing Circular.

Under its existing continuing disclosure agreements, the Commonwealth is obligated to file on or before May 1 in each year updates of its financial and demographic information through the end of the prior fiscal year, including the Commonwealth's Annual Financial Report.   In the recent past, the Commonwealth has been unable, due to accounting rules changes and other reasons (mostly related to

delays in receipt of component units' audited financial statements), to file the Commonwealth's Annual Financial Report by the May 1 continuing disclosure update filing deadline. The Commonwealth's Annual Financial Report for the fiscal year ended June 30, 2008 was not filed prior to the deadline of May 1, 2009 because various component units did not submit their audited financial statements to the central government's external auditors on time. Finally, the Commonwealth Report for the fiscal year ended June 30, was filed after the Commonwealth's filing deadline of May 1, 2009.

The Commonwealth will provide without charge to any person to whom this Remarketing Circular is delivered, on the written or oral request of such person, a copy of the Commonwealth Report or the Commonwealth's Annual Financial Report incorporated herein by reference. Requests should be directed to Executive Vice President, Government Development Bank for Puerto Rico, 135 West 50th Street, 22nd Floor, New York, New York 10020, telephone number (212) 333-0364, or to Vice President - General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

A copy of the Commonwealth's Annual Financial Report and the Commonwealth Report may also be obtained through EMMA at http://emma.msrb.org (but only for filings made after June 30, 2009) or by visiting the Government Development Bank's website at www.gdbpr.com. No additional information on Government Development Bank's website is deemed to be part of or incorporated by reference in this Remarketing Circular.

## OVERVIEW

Puerto Rico is located approximately 1,600 miles southeast of New York City. According to the U.S. Census Bureau, its population was 3,808,610 in 2000 (3,954,037 as of July 1, 2008 according to the most recent U.S. Census Bureau estimate). Puerto Rico's constitutional status is that of a territory of the United States, and, pursuant to the territorial clause of the U.S. Constitution, the ultimate source of power over Puerto Rico is the U.S. Congress. The relationship between the United States and Puerto Rico is referred to as commonwealth status.

The United States and the Commonwealth share a common defense, market, currency and citizenship. The Commonwealth exercises virtually the same control over its internal affairs as do the 50 states. It differs from the states, however, in its relationship with the federal government. The people of Puerto Rico are citizens of the United States but do not vote in national elections. They are represented in Congress by a Resident Commissioner that has a voice in the House of Representatives but no vote (except in House committees and sub-committees to which he belongs). Most federal taxes, except those such as Social Security taxes, are not levied in Puerto Rico. No federal income tax is collected from Puerto Rico residents on income earned in Puerto Rico, except for certain federal employees who are subject to taxes on their salaries. Income earned by Puerto Rico residents from sources outside of Puerto Rico, however, is subject to federal income tax.

The official languages of Puerto Rico are Spanish and English.

Puerto Rico has a diversified economy with manufacturing and services comprising its principal sectors. Puerto Rico's economy is closely linked to the United States economy. In fiscal year 2008 (which ended on June 30, 2008), the Commonwealth's gross national product (preliminary, in current dollars) was $60.8 billion, and personal income per capita (preliminary, in current dollars) was $14,237.

The Constitution of Puerto Rico limits the amount of general obligation debt that the Commonwealth can issue. The Commonwealth's policy has been and continues to be to maintain the level of such debt within a prudent range below the constitutional limitation.

Fiscal responsibility for the Commonwealth is shared among the Department of the Treasury, the Office of Management and Budget ("OMB") and Government Development Bank for Puerto Rico

Economic Stimulus Fund, the Commonwealth Emergency Fund and the Economic Cooperation and Public Employees Alternatives Fund.  Act No. 91 provides that the Dedicated Sales Tax Fund created by Act No. 91, the funds on deposit therein and Commonwealth the sales and use tax pledged to COFINA do not constitute "available resources" of the Commonwealth for purposes of Section 2 and Section 8 of Article VI of the Constitution of Puerto Rico and are not available for use by the Secretary.  As a result, the portion of the Commonwealth sales and use tax allocated to COFINA is not available for the payment of principal of and interest on the Bonds.

The Constitution expressly empowers a holder of bonds and notes evidencing public debt to bring suit against the Secretary to require application of available resources, including surplus, to the payment of principal of and interest on public debt when due.

*Special Fund for the Bonds (General Obligation) Debt Service*

Act No. 83 of the Legislative Assembly of Puerto Rico, approved on August 30, 1991, as amended, provides for the levy of an annual special tax of 1.03% of the assessed value of all real and personal property not exempt from taxation. The proceeds of said tax are credited to the Commonwealth Debt Redemption Fund (the "Redemption Fund"), for application to the payment of general obligation bonds and notes of the Commonwealth.

Act No. 39 of the Legislative Assembly of Puerto Rico, approved on May 13, 1976, as amended ("Act No. 39"), requires the Secretary of the Treasury to transfer each month from available funds of the Commonwealth to the Redemption Fund such amounts which, together with certain other funds deposited therein, will be equal to the sum of one-sixth of the interest to be paid in the next six months and one-twelfth of the principal to be paid or required to be amortized within the next twelve months on all bonds and notes of the Commonwealth for which its full faith and credit are pledged as the same become due and all bonds and notes of the Commonwealth for which the guaranty of the Commonwealth has been exercised. Moneys in the Redemption Fund are held in trust by Government Development Bank. Act No. 39 provides that the obligation of the Secretary of the Treasury to make the above transfers is cumulative, and the amount of any deficiency in any month shall be added to the amount of transfers required in future months until such deficiency has been fully paid.

Act No. 39 expressly relates to direct obligations of the Commonwealth. It does not apply to the payment of bonds and other obligations of public corporations guaranteed by the Commonwealth issued after the date of its adoption.

**Payment Record**

The Commonwealth has never defaulted on the payment of principal of or interest on any of its debt.

**Debt Limitation**

Section 2 of Article VI of the Constitution of the Commonwealth provides that direct obligations of the Commonwealth evidenced by full faith and credit bonds or notes shall not be issued if the amount of the principal of and interest on such bonds and notes and on all such bonds and notes theretofore issued that is payable in any fiscal year, together with any amount paid by the Commonwealth in the fiscal year preceding the fiscal year of such proposed issuance on account of bonds or notes guaranteed by the Commonwealth, exceed 15% of the average annual revenues raised under the provisions of Commonwealth legislation and deposited into the Treasury (hereinafter "internal revenues") in the two fiscal years preceding the fiscal year of such proposed issuance.  Section 2 of Article VI does not limit the amount of debt that the Commonwealth may guarantee so long as the 15% limitation is not exceeded through payments by the Commonwealth on such guaranteed debt.  Internal revenues consist principally of income taxes, property taxes, sales taxes and excise taxes.  Certain revenues, such as federal excise

taxes on offshore shipments of alcoholic beverages and tobacco products and customs duties, which are collected by the United States Government and returned to the Treasury and motor vehicle fuel taxes and license fees, which are allocated to the Highways Authority, are not included as internal revenues for the purpose of calculating the debt limit, although they may be available for the payment of debt service. In addition, the portion of the sales and use tax allocated to COFINA is also not included as internal revenues consistent with the legislation creating COFINA, which legislation transfers ownership of such portion of the sales and use tax to COFINA and provides that such portion is not "available resources" under the Constitutional provisions relating to the Bonds.

All or a portion of the proceeds of certain refunding bonds issued by the Commonwealth were invested in guaranteed investment contracts or federal agency securities (in each case rated in the highest category by Moody's and S&P), none of which is eligible to be used for a legal defeasance under Puerto Rico law ("non-eligible investments"). Since bonds refunded with proceeds of non-eligible investments are not legally defeased, such bonds are treated as outstanding for purposes of the 15% debt limitation.

Joint Resolution No. 2104 of the Legislative Assembly of Puerto Rico, approved on September 30, 2004 ("Joint Resolution No. 2104"), authorized the Commonwealth to enter into interest rate exchange agreements with respect to the Commonwealth's $447,875,000 Public Improvement Refunding Bonds, Series 2004B (the "Series 2004B Bonds"), which were issued as variable rate bonds. Joint Resolution No. 2104 allows the Commonwealth to calculate the constitutional debt limitation using (i) the fixed rate it is required to pay under any interest rate exchange agreement entered into by the Commonwealth in connection with the Series 2004B Bonds, and (ii) the lesser of (A) the maximum interest rate allowed by law, and (B) the maximum interest rate set forth in the resolution approving the bonds, if any, in connection with the Commonwealth's $279,240,000 Public Improvement Refunding Bonds, Series 2004A (the "Series 2004A Bonds") and any Series 2004B Bonds for which no interest rate exchange agreement is executed. In November 2004, the Commonwealth entered into two interest rate exchange agreements with respect to the Series 2004B Bonds.

Act No. 39 of the Legislative Assembly of Puerto Rico, approved on August 1, 2005, as amended ("Act No. 39 of 2005") authorizes the Commonwealth to enter into interest rate exchange agreements with respect to its general obligation bonds, subject to certain conditions, including that the agreements are entered into to reduce certain financial risks associated with issuing variable rate obligations. The Secretary is also authorized to pledge the full faith, credit and taxing power of the Commonwealth for the payment of the obligations incurred under such interest rate exchange agreements. In August 2006, the Commonwealth issued its $500,000,000 Public Improvement Bonds of 2006, Series A, a portion of which bonds bear interest at a rate that will change periodically based on changes in the United States consumer price index, and in connection with such consumer price index floating rate bonds (said portion, the "2006 CPI Bonds") entered into an interest rate exchange agreement, the effect of which will economically enable the Commonwealth to pay a fixed rate of interest in respect thereof. In August and September 2006, the Commonwealth entered into interest rate exchange agreements, the effect of which will economically enable the Commonwealth to pay a fixed rate of interest in respect of a portion of the Commonwealth's outstanding $1,018,245,000 Public Improvement Refunding Bonds, Series 2003C (said portion, the "2003C Swap Bonds") and whose payments commenced on July 1, 2008, the end of an initial fixed rate period on the 2003C Swap Bonds. In October 2007, the Commonwealth issued its $926,570,000 Public Improvement Refunding Bonds, Series 2007 A, a portion of which bonds bear interest at a variable rate and, in connection with said bonds (said portion, the "2007 Swap Bonds") entered into an interest rate exchange agreement, the effect of which will economically enable the Commonwealth to pay a fixed rate of interest in respect thereof. In May 2008, the Commonwealth issued its $173,975,000 Public Improvement Refunding Bonds, Series 2008B (the "2008 Swap Bonds"), which bear interest at a variable rate, for the purpose of refunding a portion of the Series 2004B Bonds, and, in connection therewith, continued the swap related to such refunded Series 2004B Bonds. Act No. 39 of 2005 allows the Commonwealth to calculate the constitutional debt limit in a manner identical to that utilized in Joint Resolution No. 2104. In addition, the Commonwealth has also executed under the authority granted in Act No. 39 of 2005, interest rate exchange agreements in which the Commonwealth

is making payments (1) on $1,698,370,000 notional amount of public improvement bonds based on a short-term interest rate index published by Securities Industry and Financial Markets Association ("SIFMA") and is receiving from its counterparties payments on the same notional amount based on the published three-month London Interbank Offered Rate index (the "basis swap") and (2) on $850,000,000 notional amount of public improvement bonds based on the published short-term SIFMA municipal swap rate and is receiving from its counterparties payments on the same notional amount based on a published index of municipal bonds having a maturity of 10 years (the "constant maturity swap").

After giving effect to the remarketing of the Bonds and the issuance of the Refunding Bonds, future maximum annual debt service for the Commonwealth's outstanding general obligation debt is $949,276,446 in the fiscal year ending June 30, 2016 (based on the assumption that (i) the bonds refunded with non-eligible investments are treated as being outstanding, (ii) the Series 2004A Bonds bear interest at their actual rate per annum through July 1, 2012 and thereafter at 12% per annum, (iii) the outstanding 2003C Swap Bonds, Series 2004B Bonds, 2006 CPI Bonds, 2007 Swap Bonds and the 2008 Swap Bonds, bear interest at 12% per annum and (iv) the public improvement bonds to which the basis swap and the constant maturity swap relate bear interest at their stated interest rates rather than the rates set forth in said swaps). This amount ($949,276,446) is equal to 12.36% of $7,679,421,000, which is the average of the adjusted internal revenues for the fiscal year ended June 30, 2008 and the preliminary adjusted internal revenues for the fiscal year ended June 30, 2009. If the bonds refunded with non-eligible investments were treated as not being outstanding, and the interest on the outstanding bonds described in items (i) through (iv) above is calculated using the fixed rate paid by the Commonwealth under the interest rate exchange agreements executed in connection with such bonds, the percentage referred to in the preceding sentence would be 10.21%.

Debt service for the Puerto Rico Aqueduct and Sewer Authority ("PRASA") guaranteed bonds of approximately $30 million was paid by PRASA during the last two fiscal years and, thus, is not included in the calculation of the 15% debt limitation. See "Other Public Corporations – Aqueduct and Sewer Authority" under *Public Corporations* in *Appendix I*. In the event PRASA is unable to make any portion of the future debt service payments on its guaranteed bonds, the Commonwealth would be required to make such payments under its guarantee from the General Fund and such debt service would, to the extent paid by the Commonwealth, be included in the calculation of the 15% debt limitation.

## Maturity Limitation

The Constitution provides that no bonds or notes of the Commonwealth shall mature later than 30 years from their date of issue, except bonds or notes for housing facilities, which shall mature in no more than 40 years.

## BOND INSURANCE

### The Financial Security Bond Insurance Policy

Concurrently with the issuance of the Series 2007 A Bonds, including the Bonds, Financial Security issued its Municipal Bond Insurance Policy for the Bonds (the "Policy"). The Policy guarantees the scheduled payment of principal of and interest on the Bonds when due as set forth in the form of the Policy included as *Appendix V* to this Remarketing Circular.

The Policy is not covered by any insurance security or guaranty fund established under New York, California, Connecticut or Florida insurance law.

### Financial Security Assurance Inc.

Financial Security is a New York domiciled financial guaranty insurance company and a wholly owned subsidiary of Financial Security Assurance Holdings Ltd. ("Holdings"). Holdings is an indirect

## PUBLIC SECTOR DEBT OF THE COMMONWEALTH

**Public Sector Debt**

The following table presents a summary of the public sector debt of the Commonwealth as of June 30, 2009.  The table also shows the public sector debt as adjusted by the inclusion of the Refunding Bonds, the exclusion of the portion of the Series 2007 A-4 Bonds refunded by the Refunding Bonds, and the Commonwealth's $78 million payment of principal on general obligation bonds on July 1, 2009.  The table should be read in conjunction with the information set forth under DEBT in *Appendix I.*

### Commonwealth of Puerto Rico
### Public Sector Debt*
### (in millions)

|  | June 30, 2009 | As Adjusted |
|---|---|---|
| Direct full faith and credit obligations[1] | $ 9,006 | $ 8,928 |
| Sales Tax debt[2] | 12,015 | 12,015 |
| Municipal debt | 2,997 | 2,997 |
| Puerto Rico guaranteed debt[3] | 4,145 | 4,145 |
| Debt supported by Puerto Rico appropriations or taxes[4] | 1,455 | 1,455 |
| Public corporations and agencies | 22,143 | 22,143 |
| Sub-total | $51,761 | $51,683 |
| Limited obligation/non-recourse debt[5] | 5,435 | 5,435 |
| Total public sector debt | $57,196 | $57,118 |

_____

\*   Totals may not add due to rounding.
(1) Includes general obligation bonds.
(2) Includes Public Finance Corporation and COFINA bonds.
(3) Consists of $594.6 million of bonds issued by Aqueduct and Sewer Authority, $304.9 million of State Revolving Fund Loans incurred under various federal water laws, $181.7 million of bonds issued by Port of the Americas Authority and $3.047 billion of Public Buildings Authority bonds (does not include the issuance in July 2009 of $330,935,000 Government Facilities Revenue Refunding Bonds, Series P). Excludes $267 million of Government Development Bank bonds payable from available moneys of Government Development Bank.
(4) Represents bonds and notes payable from the Commonwealth General Fund and Public Improvement Fund.
(5) Includes the following: $1.4 billion of Children's Trust bonds, which are payable solely from the payments to be received pursuant to the tobacco litigation settlement; $197 million of Housing Finance Authority bonds, which are payable from Puerto Rico Housing Administration's annual allocation of Public Housing Capital Funds from the United States Department of Housing and Urban Development; $152.6 million of Special Facilities Revenue Bonds issued by Highways Authority, which are payable from net toll revenues collected from the Teodoro Moscoso Bridge; $155 million of Special Facilities Bonds issued by Ports Authority, which are solely payable from the pledge of certain payments made by a private corporation under a special facilities agreement; $79.6 million of Educational Facilities Revenue Bonds, 2000 Series A (University Plaza Project) issued by Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"), which are payable from rent payments made by the University of Puerto Rico; approximately $82.4 million of bonds issued by AFICA to finance the construction of various government infrastructure projects, which are payable from rent payments made by various government entities; and $2.948 billion of Employees Retirement System Senior Pension Funding Bonds, Series A, B and C, which are payable solely from employer contributions made to the Employees Retirement System by the Commonwealth and its instrumentalities after the issuance of the bonds.

*Source*:  Government Development Bank for Puerto Rico

**Debt Service Requirements for Commonwealth General Obligation Bonds and Certain Guaranteed Debt**

The following table presents the debt service requirements for (i) Commonwealth general obligation bonds outstanding on June 30, 2009 (excluding the Series 2007 A-4 Bonds); (ii) the Bonds and the Refunding Bonds; and (iii) total Commonwealth general obligation bonds, adjusted for the remarketing of the Bonds and the issuance of the Refunding Bonds. The table excludes debt service on Commonwealth general obligation bonds that have been refunded with the proceeds of refunding bonds invested in non-eligible investments, notwithstanding that such bonds will be considered to be outstanding under their authorizing resolution and for purposes of calculating the Commonwealth's debt limitation. Debt service requirements for each fiscal year, as shown in the following table, include principal and interest due on July 1 immediately following the close of such fiscal year.

**Commonwealth of Puerto Rico**
**Debt Service Requirements***
**(in thousands)**

| Fiscal Year Ending June 30 | Outstanding Bonds Total Debt Service[1] | The Bonds and the Refunding Bonds | | Grand Total |
|---|---|---|---|---|
| | | Principal | Interest | |
| 2010 | $ 759,779 | $ - | $ 3,938 | $ 763,716 |
| 2011 | 757,227 | - | 4,991 | 762,218 |
| 2012 | 763,973 | - | 4,991 | 768,964 |
| 2013 | 767,089 | - | 4,991 | 772,080 |
| 2014 | 754,623 | - | 4,991 | 759,614 |
| 2015 | 768,698 | - | 4,991 | 773,689 |
| 2016 | 768,551 | - | 4,991 | 773,542 |
| 2017 | 694,250 | - | 4,991 | 699,241 |
| 2018 | 678,302 | - | 4,991 | 683,293 |
| 2019 | 746,969 | - | 4,991 | 751,960 |
| 2020 | 781,892 | - | 4,991 | 786,883 |
| 2021 | 629,580 | - | 4,991 | 634,571 |
| 2022 | 540,128 | - | 4,991 | 545,119 |
| 2023 | 494,544 | - | 4,991 | 499,535 |
| 2024 | 472,465 | - | 4,991 | 477,456 |
| 2025 | 474,132 | - | 4,991 | 479,123 |
| 2026 | 464,521 | - | 4,991 | 469,512 |
| 2027 | 462,838 | - | 4,991 | 467,829 |
| 2028 | 463,245 | - | 4,991 | 468,236 |
| 2029 | 419,367 | - | 4,991 | 424,358 |
| 2030 | 371,294 | 44,170 | 4,991 | 420,455 |
| 2031 | 366,996 | 53,090 | 2,667 | 422,754 |
| 2032 | 241,497 | - | - | 241,497 |
| 2033 | 203,539 | - | - | 203,539 |
| 2034 | 149,512 | - | - | 149,512 |
| 2035 | 79,001 | - | - | 79,001 |
| 2036 | 51,178 | - | - | 51,178 |
| 2037 | 51,186 | - | - | 51,186 |
| 2038 | 17,506 | - | - | 17,506 |
| Total | $14,193,876 | $97,260 | $106,433 | $14,397,569 |

---

*    Totals may not add due to rounding.  Includes the effective fixed rate on certain variable rate general obligation bonds as to which the Commonwealth has entered into interest rate exchange agreements.

[1]   In the event PRASA is unable to make any portion of the future debt service payments on its guaranteed bonds, the Commonwealth would be required to make such payments under its guarantees from the General Fund.

Sources:  Government Development Bank and Department of the Treasury

Appended to and constituting a part of this Remarketing Circular are the Commonwealth Report (*Appendix I*), a copy of the original approving opinion of Squire, Sanders & Dempsey L.L.P. (*Appendix II*), the proposed form of Favorable Opinion of Bond Counsel (*Appendix III*), a description of the Book-Entry System (*Appendix IV*) and a copy of the Financial Security Policy (*Appendix V*).

The information set forth in this Remarketing Circular and incorporated herein by reference, except for information pertaining to DTC, and the information appearing in REMARKETING, was supplied by certain officials of the Commonwealth or certain of its agencies or instrumentalities, in their respective official capacities, or was obtained from publications of the Commonwealth or certain of its agencies or instrumentalities, and is included or incorporated by reference in this Remarketing Circular on the authority of such officials or the authority of such publications as public official documents. The information pertaining to DTC was supplied by DTC. The information under BOND INSURANCE was supplied by Financial Security.

This Remarketing Circular will be filed with the MSRB through EMMA.

**COMMONWEALTH OF PUERTO RICO**

By: _____/s/ Juan C. Puig_____
Secretary of the Treasury