# EXHIBIT 5

| | |
|---|---|
| NEW ISSUE - BOOK-ENTRY ONLY | RATINGS: Moody's: A3 |
| See "Book-Entry Only System" under THE BONDS | See RATINGS    Fitch: BBB+ |
| | S&P: BBB- |

*In the opinion of Bond Counsel, subject to compliance with certain tax covenants, interest on the Bonds is not includable in gross income for federal income tax purposes under existing statutes, regulations, rulings and court decisions. Interest on the Bonds will not be an item of tax preference for purposes of the federal alternative minimum tax imposed on individuals and corporations; however, interest on the Bonds will be taken into account in determining adjusted current earnings for purposes of computing the alternative minimum tax imposed on corporations. See TAX MATTERS for a description of certain other federal tax consequences of ownership of the Bonds. Bond Counsel is further of the opinion that the Bonds and the interest thereon are exempt from state, Commonwealth of Puerto Rico and local income taxation.*

$356,520,000
**COMMONWEALTH OF PUERTO RICO**
Public Improvement Refunding Bonds, Series 2011 A
(General Obligation Bonds)

**Dated: Date of Delivery**             **Due: July 1, as shown on the inside cover**

The Bonds are issuable as registered bonds without coupons in denominations of $5,000 and whole multiples thereof and will be initially registered only in the name of Cede & Co., as nominee of The Depository Trust Company, New York, New York ("DTC"), which will act as securities depository for the Bonds. See "Book Entry Only System" under THE BONDS. Interest on the Bonds will accrue from their date of issuance and will be payable semi-annually on each January 1 and July 1, commencing on July 1, 2011. The Bonds are subject to redemption prior to maturity as set forth herein, the earliest possible date of redemption being July 1, 2021 (July 1, 2016 in the case of the Bonds maturing on July 1, 2033).

The scheduled payment of principal of and interest on the Bonds maturing July 1, 2024, July 1, 2025, July 2027, July 1, 2033 bearing interest at a rate of 6% and July 1, 2034 bearing interest at a rate of 6% and in the principal amount of $15,000,000 (the "Insured Bonds"), when due will be guaranteed under an insurance policy to be issued concurrently with the delivery of the Insured Bonds by Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.), as indicated on the inside cover of this Official Statement.

**The Bonds are general obligations of the Commonwealth. The good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and interest on the Bonds. The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a first claim on available Commonwealth resources.**

The Bonds are offered for delivery when, as and if issued and accepted by the Underwriters, subject to the approval of legality of Greenberg Traurig, LLP, Boston, Massachusetts, Bond Counsel, and certain other conditions. Certain legal matters will be passed upon for the Underwriters by Pietrantoni Méndez & Alvarez LLP, San Juan, Puerto Rico. It is expected that the Bonds will be available for delivery through the facilities of DTC on or about February 17, 2011.

| | | | |
|---|---|---|---|
| **Barclays Capital** | | | **Jefferies & Company** |
| **BofA Merrill Lynch** | **Citi** | **Goldman, Sachs & Co.** | **J.P. Morgan** |
| **Morgan Stanley** | **Ramirez & Co. Inc.** | **Raymond James** | **RBC Capital Markets** |
| **UBS Financial Services Incorporated of Puerto Rico** | | | **Wells Fargo Securities** |
| **BBVAPR MSD**   **FirstBank Puerto Rico Securities** | **Oriental Financial Services** | **Popular Securities** | **Santander Securities** |

February 10, 2011

**$356,520,000**
**COMMONWEALTH OF PUERTO RICO**
**Public Improvement Refunding Bonds, Series 2011 A**
**(General Obligation Bonds)**

| Maturity Date July 1 | Principal Amount | Interest Rate | Yield/Price | CUSIP* |
|---|---|---|---|---|
| 2024† | $58,940,000 | 5.250% | 5.50% | 74514LWN3 |
| 2025† | 52,950,000 | 5.375 | 5.60 | 74514LWJ2 |
| 2027† | 35,420,000 | 5.500 | 5.75 | 74514LWP8 |
| 2028 | 30,615,000 | 6.000 | 6.10 | 74514LWK9 |
| 2033† | 42,025,000 | 6.000 | 100.00 | 74514LWL7 |
| 2033 | 17,370,000 | 6.125 | 6.25 | 74514LWM5 |
| 2034 | 23,750,000 | 6.000 | 6.30 | 74514LWQ6 |
| 2034† | 15,000,000 | 6.000 | 6.05 | 74514LWT0 |
| 2040 | 52,950,000 | 6.000 | 6.40 | 74514LWR4 |
| 2040 | 27,500,000 | 6.500 | 6.29‡ | 74514LWS2 |

---

\* Copyright 2010, American Bankers Association. CUSIP data herein is provided by Standard & Poor's, CUSIP Service Bureau, a division of the McGraw-Hill Companies, Inc. This data is not intended to create a database and does not serve in any way as a substitute for the CUSIP Services. CUSIP numbers are provided for convenience of reference only. Neither the Authority nor the Underwriters take any responsibility for the accuracy of such numbers.

† Insured by Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.).

‡ Priced at the stated yield to the July 1, 2021 optional redemption date at a redemption price of 100%. See *Optional Redemption* under DESCRIPTION OF THE BONDS.

# Government of Puerto Rico

**Governor**

LUIS G. FORTUÑO

**Members of the Cabinet**

MARCOS RODRÍGUEZ-EMA
*Chief of Staff*

| | | |
|---|---|---|
| KENNETH D. MCCLINTOCK<br>*Secretary of State* | GUILLERMO SOMOZA COLOMBANI<br>*Secretary of Justice* | JESÚS F. MÉNDEZ<br>*Secretary of the Treasury* |
| JESÚS RIVERA SÁNCHEZ<br>*Secretary of Education* | MIGUEL ROMERO LUGO<br>*Secretary of Labor and Human Resources* | DR. LORENZO GONZÁLEZ<br>*Secretary of Health* |
| JAVIER RIVERA AQUINO<br>*Secretary of Agriculture* | RUBÉN A. HERNÁNDEZ GREGORAT<br>*Secretary of Transportation and Public Works* | JOSÉ R. PÉREZ-RIERA<br>*Secretary of Economic Development and Commerce* |
| YANITSIA IRIZARRY<br>*Secretary of Family Affairs* | MIGUEL HERNÁNDEZ VIVONI<br>*Secretary of Housing* | DANIEL J. GALÁN KERCADÓ<br>*Secretary of Natural and Environmental Resources* |
| LUIS G. RIVERA MARÍN<br>*Secretary of Consumer Affairs* | HENRY NEUMANN ZAYAS<br>*Secretary of Sports and Recreation* | CARLOS M. MOLINA RODRÍGUEZ<br>*Secretary of Corrections and Rehabilitation* |

———————————

*Legislative Officers*

THOMAS RIVERA SCHATZ
President, Senate

JENNIFFER GÓNZALEZ COLÓN
Speaker, House of Representatives

*Fiscal Officers*

MARITZA GARAY
Acting Director, Office of Management and Budget

CARLOS M. GARCÍA
President, Government Development Bank for Puerto Rico

No dealer, broker, sales representative or other person has been authorized by the Commonwealth or the Underwriters to give any information or to make any representations other than those contained herein and, if given or made, such other information or representations must not be relied upon as having been authorized by the Commonwealth or any Underwriter.  This Official Statement does not constitute an offer to sell or the solicitation of an offer to buy, nor shall there be any sale of the Bonds, by any person in any jurisdiction in which it is unlawful for such person to make such an offer, solicitation or sale.  The information set forth herein has been obtained from the Commonwealth and other official sources that are believed to be reliable.  The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Official Statement nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the Commonwealth since the date hereof.  The Underwriters have provided the following sentence and paragraph for inclusion in this Official Statement.  The Underwriters have reviewed the information in this Official Statement in accordance with, and as part of, their respective responsibilities to investors under the federal securities laws as applied to the facts and circumstances of this transaction, but the Underwriters do not guarantee the accuracy or completeness of such information.

**In connection with offering of the Bonds, the Underwriters may effect transactions which stabilize or maintain the market prices of the Bonds and the Commonwealth's outstanding general obligation bonds at levels above those which might otherwise prevail in the open market.  Such stabilizing, if commenced, may be discontinued at any time.**

Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.) ("AGM") makes no representation regarding the Insured Bonds or the advisability of investing in the Insured Bonds.  In addition, AGM has not independently verified, makes no representation regarding, and does not accept any responsibility for the accuracy or completeness of this Official Statement or any information or disclosure contained herein, or omitted herefrom, other than with respect to the accuracy of the information regarding AGM supplied by AGM and presented under the heading BOND INSURANCE and *Appendix III - Specimen Municipal Bond Insurance Policy*.

**Certain statements contained in this Official Statement reflect not historical facts but forecasts and "forward-looking statements." These statements are based upon a number of assumptions and estimates that are subject to significant uncertainties, many of which are beyond the control of the Commonwealth.  In this respect, the words "estimates," "projects," "anticipates," "expects," "intends," "believes" and similar expressions are intended to identify forward-looking statements.  All projections, forecasts, assumptions, expressions of opinions, estimates and other forward-looking statements are expressly qualified in their entirety by this cautionary statement: actual results may differ materially from those expressed or implied by forward-looking statements.**

**The projections set forth in this Official Statement were not prepared with a view toward complying with the guidelines established by the American Institute of Certified Public Accountants with respect to prospective financial information, but, in the view of the Commonwealth's responsible officers, were prepared on a reasonable basis, reflect the best currently available estimates and judgments, and present, to the best of such officers' knowledge and belief, the expected course of action and the expected future financial performance of the Commonwealth.  However, this information is not fact and should not be relied upon as being necessarily indicative of future results, and readers of this Official Statement are cautioned not to place undue reliance on the prospective financial information.  Neither the Commonwealth's independent auditors, nor any other independent auditors, have compiled, examined, or performed any procedures with respect to the prospective financial information contained herein, nor have they expressed any opinion or any other form of assurance on such information or its achievability and disclaim any association with the prospective financial information.  Neither the Commonwealth's independent auditors, nor any other independent auditors, have been consulted in connection with the preparation of the prospective financial information set forth in this Official Statement, which is solely the product of the Commonwealth, and the independent auditors assume no responsibility for its content.**

$356,520,000
COMMONWEALTH OF PUERTO RICO
Public Improvement Refunding Bonds, Series 2011 A
(General Obligation Bonds)

**INTRODUCTORY STATEMENT**

This Official Statement of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"), which includes the cover page, the inside cover page, the table of contents and the appendices, provides certain information in connection with the sale of $356,520,000 Commonwealth of Puerto Rico Public Improvement Refunding Bonds, Series 2011 A (the "Bonds").

The Bonds are being issued under the provisions of Act No. 33 of the Legislative Assembly of Puerto Rico, approved on December 7, 1942, as amended (the "Act"), and pursuant to a resolution authorizing the issuance of the Bonds (the "Bond Resolution") adopted in accordance with the Act by the Secretary of the Treasury of the Commonwealth (the "Secretary") and approved by the Governor of Puerto Rico on February 10, 2011. The Bonds are being issued to provide funds to pay a portion of the principal (but not interest) payable on July 1, 2011 on certain general obligation bonds and notes of the Commonwealth, as discussed under PLAN OF FINANCING.

The scheduled payment of principal of and interest on the Bonds maturing July 1, 2024, July 1, 2025, July 2027, July 1, 2033 bearing interest at a rate of 6% and July 1, 2034 bearing interest at a rate of 6% and in the principal amount of $15,000,000 (the "Insured Bonds"), when due will be guaranteed under an insurance policy to be issued concurrently with the delivery of the Insured Bonds by Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.) ("AGM"), as indicated on the inside cover of this Official Statement.

Under the Act, the good faith, credit and taxing power of the Commonwealth are irrevocably pledged for the prompt payment of the principal of and interest on the Bonds. The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a first claim on available Commonwealth resources.

This Official Statement includes the Commonwealth's Financial Information and Operating Data Report, dated February 1, 2011 (the "Commonwealth Report"), attached hereto as *Appendix I*. The Commonwealth Report includes important operating and financial information about the Commonwealth, including information about its economy, historical revenues and expenditures of its General Fund, preliminary unaudited year-end results of fiscal year 2010, the budget for fiscal year 2011, the debt of the Commonwealth's public sector, the financial situation of the Government's retirement systems, and certain litigation involving the Commonwealth, and should be read in its entirety.

The Comprehensive Annual Financial Report of the Commonwealth for the fiscal year ended June 30, 2009 was prepared by the Department of the Treasury of the Commonwealth (the "Commonwealth's Annual Financial Report") and is incorporated by reference herein. The Commonwealth's Annual Financial Report includes the basic financial statements of the

1

Commonwealth as of and for the fiscal year ended June 30, 2009, together with the independent auditors' report thereon (which report expresses an unqualified opinion and includes emphasis of matter paragraphs regarding investments held by the Retirement Systems whose fair values have been estimated in the absence of readily determinable fair values and the Retirement Systems' unfunded actuarial accrued liabilities and funded ratios as of June 30, 2009), dated October 22, 2010, of Deloitte & Touche LLP, certified public accountants. Deloitte & Touche LLP did not audit the financial statements of the Public Buildings Authority's capital project fund and certain activities, funds and component units separately identified in its report. Those financial statements were audited by other auditors whose reports have been furnished to Deloitte & Touche LLP, and its opinion as to the basic financial statements, insofar as it relates to the amounts included in the basic financial statements pertaining to such activities, funds and component units, is based solely on the reports of the other auditors. The Commonwealth's Annual Financial Report was filed on October 25, 2010 (after the May 1, 2010 requirement discussed below) by the Commonwealth with the Municipal Securities Rulemaking Board ("MSRB") through the Electronic Municipal Market Access System ("EMMA") (http://emma.msrb.org).

Any appendix of an Official Statement of the Commonwealth or of any instrumentality of the Commonwealth containing any revision to the Commonwealth Report or to the Commonwealth's Annual Financial Report that is filed with the MSRB through EMMA, or any new or revised Commonwealth Report or Commonwealth's Annual Financial Report or other document containing information that modifies or supersedes the information contained in the Commonwealth Report or in the Commonwealth's Annual Financial Report that is filed with the MSRB through EMMA, in each case after the date hereof and prior to the termination of the offering of the Bonds, shall be deemed to be incorporated by reference into this Official Statement and to be part of this Official Statement from the date of filing of such document. Any statement contained in the Commonwealth's Annual Financial Report shall be deemed to be modified or superseded for purposes of this Official Statement to the extent that a statement contained herein or in any such subsequently filed document modifies or supersedes such statement. Any statement contained in the Commonwealth Report or elsewhere herein shall also be deemed to be modified or superseded to the extent that a statement contained in any such subsequently filed document modifies or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Official Statement.

The Commonwealth has entered into a number of continuing disclosure undertakings required under Rule 15c2-12, as amended (the "Rule"), promulgated by the Securities and Exchange Commission ("SEC") in connection with previously issued bonds. Under its existing continuing disclosure undertakings, the Commonwealth is obligated to file on or before May 1 in each year updates of its financial, operational and macroeconomic information through the end of the prior fiscal year. The Commonwealth complies with this continuing disclosure undertaking by filing updates of the Commonwealth Report and by filing the Commonwealth's Annual Financial Report for the preceding fiscal year. During the past five years, the Commonwealth has not complied in all material respects with its obligations under such continuing disclosure undertakings, as discussed below.

2

In the case of the Commonwealth's Annual Financial Report for fiscal years 2006, 2007 and 2008, the Commonwealth failed to file such report by the May 1 continuing disclosure update deadline due to accounting rules changes and other reasons (mostly related to delays in receipt of component units' audited financial statements). For each fiscal year in which it did not comply with the filing deadline, the Commonwealth filed the Commonwealth's Annual Financial Report by the end of the first quarter of the following fiscal year. The Commonwealth's Annual Financial Report for the fiscal year ended June 30, 2009 was not filed prior to the continuing disclosure update deadline of May 1, 2010 due to delays in the engagement of and transition to new external auditors, the implementation of new government accounting pronouncements, and the restatement of the financial statements of certain discretely presented component units. Such report was filed on October 25, 2010.

In the case of the Commonwealth Report, except for the Commonwealth Report relating to fiscal year ended June 30, 2008, the Commonwealth has timely filed such reports. The Commonwealth Report for the fiscal year ended June 30, 2008 was filed on June 1, 2009. For more information regarding the Commonwealth's compliance with its continuing disclosure obligation, see "Prior Continuing Disclosure Non-Compliance" under CONTINUING DISCLOSURE.

The Commonwealth will provide without charge to any person to whom this Official Statement is delivered, on the written or oral request of such person, a copy of the Commonwealth Report and the Commonwealth's Annual Financial Report incorporated herein by reference. Requests should be directed to Executive Vice President, Government Development Bank for Puerto Rico, 135 West 50th Street, 22nd Floor, New York, New York 10020, telephone number (212) 333-0364, or to Vice President - General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

A copy of the Commonwealth's Annual Financial Report and the Commonwealth Report may also be obtained through EMMA at http://emma.msrb.org (but only for filings made after June 30, 2009) or by visiting the Government Development Bank's website at www.gdbpr.com. No additional information on the Government Development Bank's website is deemed to be part of or incorporated by reference in this Official Statement.

## OVERVIEW

According to the United States Census Bureau, the population of Puerto Rico was 3,725,789 in 2010, compared to 3,808,610 in 2000. Puerto Rico's constitutional status is that of a territory of the United States, and, pursuant to the territorial clause of the U.S. Constitution, the ultimate source of power over Puerto Rico is the U.S. Congress. The relationship between the United States and Puerto Rico is referred to as commonwealth status.

The United States and the Commonwealth share a common defense, market, currency and citizenship. The Commonwealth exercises virtually the same control over its internal affairs as do the 50 states. It differs from the states, however, in its relationship with the federal government. The people of Puerto Rico are citizens of the United States but do not vote in national elections. They are represented in Congress by a Resident Commissioner that has a

3

Fund are held in trust by Government Development Bank. Act No. 39 provides that the obligation of the Secretary of the Treasury to make the above transfers is cumulative, and the amount of any deficiency in any month shall be added to the amount of transfers required in future months until such deficiency has been fully paid. During fiscal years 2010 and 2011, the Secretary of the Treasury satisfied his obligation to deposit moneys in the Redemption Fund by drawing on a line of credit provided by Government Development Bank. Commencing in fiscal year 2012, the Secretary of the Treasury will not be able to use borrowed funds to satisfy his obligation to make deposits in the Redemption Fund. On December 31, 2010, the amount on deposit in the Redemption Fund was $33.6 million, which was the required amount.

Act No. 39 expressly relates to direct obligations of the Commonwealth. It does not apply to the payment of bonds and other obligations of public corporations guaranteed by the Commonwealth issued after the date of its adoption.

**Payment Record**

The Commonwealth has never defaulted on the payment of principal of or interest on any of its debt.

**Debt Limitation**

*Constitutional Debt Limitation*

Section 2 of Article VI of the Constitution of Puerto Rico provides that direct obligations of the Commonwealth evidenced by full faith and credit bonds or notes shall not be issued if the amount of the principal of and interest on such bonds and notes and on all such bonds and notes theretofore issued that is payable in any fiscal year, together with any amount paid by the Commonwealth in the fiscal year preceding the fiscal year of such proposed issuance on account of bonds or notes guaranteed by the Commonwealth, exceed 15% of the average annual revenues raised under the provisions of Commonwealth legislation and deposited into the Treasury (hereinafter "internal revenues") in the two fiscal years preceding the fiscal year of such proposed issuance. Section 2 of Article VI does not limit the amount of debt that the Commonwealth may guarantee so long as the 15% limitation is not exceeded through payments by the Commonwealth on such guaranteed debt. Internal revenues consist principally of income taxes, property taxes, sales and use taxes and excise taxes. Certain revenues, such as federal excise taxes on offshore shipments of alcoholic beverages and tobacco products and customs duties, which are collected by the United States Government and returned to the Treasury, and motor vehicle fuel taxes, crude oil and derivative products excise taxes and license fees, which are allocated to the Highways Authority, are not included as internal revenues for the purpose of calculating the debt limit, although they may be available for the payment of debt service. In addition, the portion of the sales and use tax allocated to COFINA is also not included as internal revenues consistent with the legislation creating COFINA, which legislation transfers ownership of such portion of the sales and use tax to COFINA and provides that such portion is not "available Commonwealth resources" under the above cited Constitutional provisions relating to public debt.

19

*Variable Rate Bonds and Swap Agreements*

Joint Resolution No. 2104 of the Legislative Assembly of Puerto Rico, approved on September 30, 2004 ("Joint Resolution No. 2104"), authorized the Commonwealth to enter into interest rate exchange agreements with respect to the Commonwealth's $447,875,000 Public Improvement Refunding Bonds, Series 2004B (the "Series 2004B Bonds"), which were issued as variable rate bonds. Joint Resolution No. 2104 allows the Commonwealth to calculate the 15% constitutional debt limitation using (i) the fixed rate it is required to pay under any interest rate exchange agreement entered into by the Commonwealth in connection with the Series 2004B Bonds, and (ii) the lesser of (A) the maximum interest rate allowed by law, and (B) the maximum interest rate set forth in the resolution approving the bonds, if any, in connection with the Commonwealth's $279,240,000 Public Improvement Refunding Bonds, Series 2004A (the "Series 2004A Bonds") and any Series 2004B Bonds for which no interest rate exchange agreement is executed. In November 2004, the Commonwealth entered into two interest rate exchange agreements with respect to the Series 2004B Bonds.

Act No. 39 of the Legislative Assembly of Puerto Rico, approved on August 1, 2005, as amended ("Act No. 39 of 2005") authorizes the Commonwealth to enter into interest rate exchange agreements with respect to its general obligation bonds, subject to certain conditions, including that the agreements are entered into to reduce certain financial risks associated with issuing variable rate obligations. The Secretary is also authorized to pledge the full faith, credit and taxing power of the Commonwealth for the payment of the obligations incurred under such interest rate exchange agreements. Act No. 39 of 2005 allows the Commonwealth to calculate the constitutional debt limit in a manner identical to that utilized in Joint Resolution No. 2104.

In August 2006, the Commonwealth issued its $500,000,000 Public Improvement Bonds of 2006, Series A, a portion of which bonds bear interest at a rate that will change periodically based on changes in the United States consumer price index. In connection with such consumer price index floating rate bonds (the "2006 CPI Bonds"), the Commonwealth entered into an interest rate exchange agreement, the effect of which will economically enable the Commonwealth to pay a fixed rate of interest in respect thereof.

In August and September 2006, the Commonwealth entered into interest rate exchange agreements, the effect of which will economically enable the Commonwealth to pay a fixed rate of interest in respect of a portion of the Commonwealth's outstanding $1,018,245,000 Public Improvement Refunding Bonds, Series 2003C (said portion, the "2003C Swap Bonds") and whose payments commenced on July 1, 2008, the end of the initial fixed rate period on the 2003C Swap Bonds.

In October 2007, the Commonwealth issued its $926,570,000 Public Improvement Refunding Bonds, Series 2007 A, a portion of which bonds bear interest at a variable rate and, in connection with said bonds (said portion, the "2007 Swap Bonds") entered into an interest rate exchange agreement, the effect of which will economically enable the Commonwealth to pay a fixed rate of interest in respect thereof.

In May 2008, the Commonwealth issued its $173,975,000 Public Improvement Refunding Bonds, Series 2008B (the "2008 Swap Bonds"), which bear interest at a variable rate, for the

purpose of refunding a portion of the Series 2004B Bonds, and, in connection therewith, continued the swap related to such refunded Series 2004B Bonds.

In addition, the Commonwealth has also executed under the authority granted in Act No. 39 of 2005, interest rate exchange agreements in which the Commonwealth is making payments on $1,698,370,000 notional amount of public improvement bonds based on a short-term interest rate index published by Securities Industry and Financial Markets Association ("SIFMA") and is receiving from its counterparties payments on the same notional amount based on the published three-month London Interbank Offered Rate index (the "basis swap").

See "Interest Rate Exchange Agreements" under DEBT in *Appendix I* for a list of the Commonwealth's outstanding interest rate exchange agreements and their mark-to-market value.

After giving effect to the issuance of the Bonds, future maximum annual debt service for the Commonwealth's outstanding general obligation debt is $932,146,279.75 in the fiscal year ending June 30, 2015 (based on the assumption that (i) the Series 2004A Bonds bear interest at their actual rate per annum through July 1, 2012 and thereafter at 12% per annum, (ii) the outstanding 2003C Swap Bonds, Series 2004B Bonds, 2006 CPI Bonds, 2007 Swap Bonds and the 2008 Swap Bonds, bear interest at 12% per annum and (iii) the public improvement bonds to which the basis swap relates bear interest at their stated interest rates rather than the rates set forth in the basis swap). This amount ($932,146,279.75) plus the amount paid by the Commonwealth in the preceding fiscal year on account of bonds or notes guaranteed by the Commonwealth ($10,491,303), for a total of $942,637,582.75, is equal to 12.88% of $7,320,525,500, which is the average of the adjusted preliminary internal revenues for the fiscal years ended June 30, 2009 and 2010. If the interest on the outstanding bonds described in clause (ii) above is calculated using the fixed rate paid by the Commonwealth under the interest rate exchange agreements executed in connection with such bonds, the percentage referred to in the preceding sentence would be 11.61%. Any potential termination payment (which is a full faith and credit obligation of the Commonwealth) payable by the Commonwealth (which is based on the then applicable mark-to-market value) upon termination of the above mentioned swap agreements is not included in the calculation of the 15% constitutional debt limitation.

Debt service for the Puerto Rico Aqueduct and Sewer Authority ("PRASA") guaranteed bonds of approximately $30 million was paid by PRASA during the last two fiscal years and, thus, is not included in the calculation of the 15% constitutional debt limitation. See "Other Public Corporations – Aqueduct and Sewer Authority" under *Public Corporations* in *Appendix I*. In the event PRASA is unable to make any portion of the future debt service payments on its guaranteed bonds, the Commonwealth would be required to make such payments under its guarantee from the General Fund and such debt service would, to the extent paid by the Commonwealth, be included in the calculation of the 15% debt limitation.

As of September 30, 2010, Port of the Americas Authority had outstanding bonds guaranteed by the Commonwealth (the "POA Guaranteed Bonds"), representing a $250 million GDB financing with an outstanding principal amount of $198.7 million. The Commonwealth has begun to make payments of debt service on the POA Guaranteed Bonds and expects to make all payment on the POA Guaranteed Bonds under the full faith and credit guarantee of the Commonwealth. During fiscal year 2010, the Commonwealth made payments under its guaranty

of the POA Guaranteed Bonds of $10.5 million. See "Commonwealth Guaranteed Debt" under *Debt* in *Appendix I*.

**Maturity Limitation**

The Constitution provides that no bonds or notes of the Commonwealth shall mature later than 30 years from their date of issue, except bonds or notes for housing facilities, which shall mature in no more than 40 years.

## BOND INSURANCE

**Bond Insurance Policy**

Concurrently with the issuance of the Insured Bonds, AGM will issue its Municipal Bond Insurance Policy (the "Policy") for the Insured Bonds. The Policy guarantees the scheduled payment of principal of and interest on the Insured Bonds when due as set forth in the form of the Policy included as Appendix III to this Official Statement.

The Policy is not covered by any insurance security or guaranty fund established under New York, California, Connecticut or Florida insurance law.

**Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.)**

AGM is a New York domiciled financial guaranty insurance company and a wholly owned subsidiary of Assured Guaranty Municipal Holdings Inc. ("Holdings"). Holdings is an indirect subsidiary of Assured Guaranty Ltd. ("AGL"), a Bermuda-based holding company whose shares are publicly traded and are listed on the New York Stock Exchange under the symbol "AGO". AGL, through its operating subsidiaries, provides credit enhancement products to the U.S. and global public finance, infrastructure and structured finance markets. No shareholder of AGL, Holdings or AGM is liable for the obligations of AGM.

Effective November 9, 2009, Financial Security Assurance Inc. changed its name to Assured Guaranty Municipal Corp.

AGM's financial strength is rated "AA+" (stable outlook) by Standard and Poor's Ratings Services, a Standard & Poor's Financial Services LLC business ("S&P") and "Aa3" (negative outlook) by Moody's Investors Service, Inc. ("Moody's"). On February 24, 2010, Fitch, Inc. ("Fitch"), at the request of AGL, withdrew its "AA" (Negative Outlook) insurer financial strength rating of AGM at the then current rating level. Each rating of AGM should be evaluated independently. An explanation of the significance of the above ratings may be obtained from the applicable rating agency. The above ratings are not recommendations to buy, sell or hold any security, and such ratings are subject to revision or withdrawal at any time by the rating agencies, including withdrawal initiated at the request of AGM in its sole discretion. Any downward revision or withdrawal of any of the above ratings may have an adverse effect on the market price of any security guaranteed by AGM. AGM does not guarantee the market price of the securities it insures, nor does it guarantee that the ratings on such securities will not be revised or withdrawn.

*Current Financial Strength Ratings*

On January 24, 2011, S&P published a Request for Comment: Bond Insurance Criteria (the "Bond Insurance RFC") in which it requested comments on its proposed changes to its bond insurance ratings criteria. In the Bond Insurance RFC, S&P notes that it could lower its financial strength ratings on existing investment-grade bond insurers (including AGM) by one or more rating categories if the proposed bond insurance ratings criteria are adopted, unless those bond insurers (including AGM) raise additional capital or reduce risk. Reference is made to the Bond Insurance RFC, a copy of which is available at www.standardandpoors.com , for the complete text of S&P's comments.

On October 25, 2010, S&P published a Research Update in which it downgraded AGM's counterparty credit and financial strength rating from "AAA" (negative outlook) to "AA+" (stable outlook). Reference is made to the Research Update, a copy of which is available at www.standardandpoors.com, for the complete text of S&P's comments.

In a press release dated February 24, 2010, Fitch announced that, at the request of AGL, it had withdrawn the "AA" (Negative Outlook) insurer financial strength rating of AGM at the then current rating level. Reference is made to the press release, a copy of which is available at www.fitchratings.com, for the complete text of Fitch's comments.

On December 18, 2009, Moody's issued a press release stating that it had affirmed the "Aa3" insurance financial strength rating of AGM, with a negative outlook. Reference is made to the press release, a copy of which is available at www.moodys.com, for the complete text of Moody's comments.

There can be no assurance as to any further ratings action that Moody's or S&P may take with respect to AGM.

For more information regarding AGM's financial strength ratings and the risks relating thereto, see AGL's Annual Report on Form 10-K for the fiscal year ended December 31, 2009, which was filed by AGL with the Securities and Exchange Commission (the "SEC") on March 1, 2010, AGL's Quarterly Report on Form 10-Q for the quarterly period ended March 31, 2010, which was filed by AGL with the SEC on May 10, 2010, AGL's Quarterly Report on Form 10-Q for the quarterly period ended June 30, 2010, which was filed by AGL with the SEC on August 9, 2010, and AGL's Quarterly Report on Form 10-Q for the quarterly period ended September 30, 2010, which was filed by AGL with the SEC on November 9, 2010.

*Capitalization of AGM*

At September 30, 2010, AGM's consolidated policyholders' surplus and contingency reserves were approximately $2,512,828,657 and its total net unearned premium reserve was approximately $2,305,542,616, in each case, in accordance with statutory accounting principles.

*Incorporation of Certain Documents by Reference*

Portions of the following documents filed by AGL with the SEC that relate to AGM are incorporated by reference into this Official Statement and shall be deemed to be a part hereof:

23

(i) The Annual Report on Form 10-K for the fiscal year ended December 31, 2009 (which was filed by AGL with the SEC on March 1, 2010);

(ii) The Quarterly Report on Form 10-Q for the quarterly period ended March 31, 2010 (which was filed by AGL with the SEC on May 10, 2010);

(iii) The Quarterly Report on Form 10-Q for the quarterly period ended June 30, 2010 (which was filed by AGL with the SEC on August 9, 2010); and

(iv) The Quarterly Report on Form 10-Q for the quarterly period ended September 30, 2010 (which was filed by AGL with the SEC on November 9, 2010).

All information relating to AGM included in, or as exhibits to, documents filed by AGL pursuant to Section 13(a) or 15(d) of the Securities Exchange Act of 1934, as amended, after the filing of the last document referred to above and before the termination of the offering of the Bonds shall be deemed incorporated by reference into this Official Statement and to be a part hereof from the respective dates of filing such documents. Copies of materials incorporated by reference are available over the internet at the SEC's website at http://www.sec.gov, at AGL's website at http://www.assuredguaranty.com, or will be provided upon request to Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.): 31 West 52nd Street, New York, New York 10019, Attention: Communications Department (telephone (212) 826-0100).

Any information regarding AGM included herein under the caption "Assured Guaranty Municipal Corp. (formerly known as Financial Security Assurance Inc.)" under BOND INSURANCE or included in a document incorporated by reference herein (collectively, the "AGM Information") shall be modified or superseded to the extent that any subsequently included AGM Information (either directly or through incorporation by reference) modifies or supersedes such previously included AGM Information. Any AGM Information so modified or superseded shall not constitute a part of this Official Statement, except as so modified or superseded.

AGM makes no representation regarding the Bonds or the advisability of investing in the Bonds. In addition, AGM has not independently verified, makes no representation regarding, and does not accept any responsibility for the accuracy or completeness of this Official Statement or any information or disclosure contained herein, or omitted herefrom, other than with respect to the accuracy of the information regarding AGM supplied by AGM and presented under the heading BOND INSURANCE.

**Bond Insurance Provisions under the Bond Resolution**

Under the Bond Resolution, AGM shall be deemed to be the sole holder of the Insured Bonds for the purpose of giving any consent or direction or taking any other action that the holders of the Insured Bonds are entitled to take pursuant to the provisions of the Bond Resolution.

# PUBLIC SECTOR DEBT OF THE COMMONWEALTH

**Public Sector Debt**

The following table presents a summary of the public sector debt of the Commonwealth outstanding as of September 30, 2010. The table also shows the public sector debt as adjusted by the inclusion of the Bonds. The table should be read in conjunction with the information set forth under DEBT in *Appendix I*.

**Commonwealth of Puerto Rico
Public Sector Debt***
**(in millions)**

|  | September 30, 2010 | As Adjusted |
|---|---|---|
| GENERAL FUND RELATED DEBT |  |  |
| Direct full faith and credit obligations | $ 9,193 | $9,231 |
| Puerto Rico guaranteed debt[1] | 4,254 | 4,254 |
| Debt supported by Puerto Rico appropriations or taxes[2] | 3,389 | 3,389 |
| Tax and Revenue Anticipation Notes[3] | 900 | 900 |
| Pension Obligation Bonds[4] | 2,948 | 2,948 |
| TOTAL GENERAL FUND RELATED DEBT | $20,684 | $20,722 |
| Sales and Use Tax (COFINA) debt | $13,437 | $13,437 |
| Public corporations and agencies | 23,216 | 23,574 [5] |
| Municipal Debt | 3,202 | 3,202 |
| Limited Obligations/non-recourse debt [6] | 2,431 | 2,431 |
| TOTAL PUBLIC SECTOR DEBT | $62,970 | $63,366 |

---

\*   Totals may not add due to rounding.
[1]  Consists of $601 million of bonds issued by Aqueduct and Sewer Authority, $384 million of State Revolving Fund Loans incurred under various federal water laws, $198.7 million of bonds issued by Port of the Americas Authority and $3.070 billion of bonds issued by Public Buildings Authority. Excludes $267 million of GDB bonds payable from available moneys of GDB.
[2]  Represents bonds and notes payable from the Commonwealth General Fund and Public Improvement Fund. Includes bonds issued by Public Finance Corporation.
[3]  Includes related short-term financings.
[4]  Represents Senior Pension Funding Bonds, Series A, B, and C issued by the Employees Retirement System, which are payable solely from employer contributions made to the Employees Retirement System by the Commonwealth and its instrumentalities after the issuance of the bonds.
[5]  Includes the Electric Power Authority's $218,225,000 Power Revenue Refunding Bonds issued in October 2010 and $355,730,000 Power Revenue Bonds, Series EEE (Issuer Subsidy Build America Bonds) issued in December 2010.
[6]  Includes the following: $1.3 billion of Children's Trust bonds, which are payable solely from the payments to be received pursuant to the tobacco litigation settlement; $189 million of Housing Finance Authority bonds, which are payable from Puerto Rico Housing Administration's annual allocation of Public Housing Capital Funds from the United States Department of Housing and Urban Development; $151.0 million of Special Facilities Revenue Bonds issued by Highways Authority, which are payable from net toll revenues collected from the Teodoro Moscoso Bridge; $155 million of Special Facilities Bonds issued by Ports Authority, which are payable solely from the pledge of certain payments made by a private corporation under a special facilities agreement; $76.3 million of Educational Facilities Revenue Bonds, 2000 Series A (University Plaza Project) issued by Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"), which are payable from rent payments made by the University of Puerto Rico; and approximately $75.7 million of bonds issued by AFICA to finance the construction of various government infrastructure projects, which are payable from rent payments made by various government entities.

25

**Debt Service Requirements for Commonwealth General Obligation Bonds and Certain Guaranteed Debt**

The following table presents the debt service requirements for (i) Commonwealth general obligation bonds outstanding on September 30, 2010; (ii) the Bonds; and (iii) total debt service on Commonwealth general obligation bonds, adjusted for the issuance of the Bonds. Debt service requirements for each fiscal year, as shown in the following table, include principal and interest due on July 1 immediately following the close of such fiscal year.

**Commonwealth of Puerto Rico**
**Debt Service Requirements***
**(in thousands)**

| Fiscal Year Ending June 30 | Outstanding Bonds Total Debt Service[1] | The Bonds | | Grand Total |
| --- | --- | --- | --- | --- |
| | | Principal | Interest | |
| 2011 | $ 488,447[2] | – | $ 7,668 | $ 496,115 |
| 2012 | 800,231 | – | 20,600 | 820,831 |
| 2013 | 803,423 | – | 20,600 | 824,023 |
| 2014 | 790,924 | – | 20,600 | 811,524 |
| 2015 | 804,995 | – | 20,600 | 825,595 |
| 2016 | 804,864 | – | 20,600 | 825,464 |
| 2017 | 730,437 | – | 20,600 | 751,037 |
| 2018 | 714,651 | – | 20,600 | 735,251 |
| 2019 | 783,510 | – | 20,600 | 804,110 |
| 2020 | 818,610 | – | 20,600 | 839,210 |
| 2021 | 666,521 | – | 20,600 | 687,121 |
| 2022 | 576,452 | – | 20,600 | 597,052 |
| 2023 | 529,579 | – | 20,600 | 550,179 |
| 2024 | 470,912 | $ 58,940 | 20,600 | 550,452 |
| 2025 | 468,546 | 52,950 | 17,506 | 539,002 |
| 2026 | 498,998 | – | 14,660 | 513,658 |
| 2027 | 463,012 | 35,420 | 14,660 | 513,092 |
| 2028 | 478,269 | 30,615 | 12,712 | 521,596 |
| 2029 | 454,847 | – | 10,875 | 465,722 |
| 2030 | 451,938 | – | 10,875 | 462,813 |
| 2031 | 454,237 | – | 10,875 | 465,112 |
| 2032 | 249,456 | – | 10,875 | 260,331 |
| 2033 | 159,375 | 59,395 | 10,875 | 229,645 |
| 2034 | 184,513 | 38,750 | 7,290 | 230,553 |
| 2035 | 180,313 | – | 4,965 | 185,278 |
| 2036 | 180,315 | – | 4,965 | 185,280 |
| 2037 | 180,315 | – | 4,965 | 185,280 |
| 2038 | 180,315 | – | 4,965 | 185,280 |
| 2039 | 180,311 | – | 4,965 | 185,276 |
| 2040 | – | 80,450 | 4,965 | 85,415 |
| Total | $14,548,316 | $356,520 | $426,461 | $15,331,297 |

\* Totals may not add due to rounding. Includes the effective fixed rate on certain variable rate general obligation bonds as to which the Commonwealth has entered into interest rate exchange agreements.
[1] Since fiscal year 1997, the Commonwealth had been paying approximately $30 million annual debt service on PRASA bonds and other obligations guaranteed by the Commonwealth. Beginning with the debt service payment due January 1, 2006, the Commonwealth stopped making such payments and PRASA resumed making all payments due on and after such date from its net revenues. In the event PRASA is unable to make any portion of the future debt service payments on its guaranteed bonds, the Commonwealth would be required to make such payments under its guarantees from the General Fund. The amounts shown in this column do not include payments made by the Commonwealth on the POA Guaranteed Bonds, which are paid from General Fund budgetary appropriations determined in consultation with GDB, as holder of the POA Guaranteed Bonds. The amounts paid by the Commonwealth under the POA Guaranteed Bonds for the prior fiscal year, however, are taken into account in the determination of the constitutional debt limit.
[2] Excludes the payment of interest by the Commonwealth on January 1, 2011 in the amount of $231,893,100.10.
Sources: Government Development Bank and Department of the Treasury

new policies and procedures include: (i) the assignment of additional resources from local and international audit firms to those component units whose financial statements have not been timely provided to the Commonwealth; (ii) the assignment of dedicated external and internal resources to (a) assist the Central Accounting Division at Treasury in the preparation of complex financial information that has historically delayed the audit and (b) provide periodic and consistent follow up on component unit financial statement deliverables and deadlines; (iii) the execution of a memorandum of understanding between Treasury, OMB and Government Development Bank for the coordination of all financial statement related tasks and the designation of Government Development Bank, in its role as fiscal agent, to review and monitor the progress of certain component units; and (iv) the establishment of an Audit Oversight Committee comprised of Treasury and Government Development Bank personnel in order to continuously monitor the status of the audit and the Commonwealth's financial statements. For the fiscal year 2010 audit, Treasury and the auditors have agreed to schedule weekly status meetings regarding the fiscal year 2010 financial statements.

## MISCELLANEOUS

The foregoing summaries of or references to the Act, the Bonds, the Bond Resolution and the summaries of or references to the various acts contained in the Commonwealth Report, are made subject to all the detailed provisions thereof to which reference is hereby made for further information and do not purport to be complete statements of any or all of such provisions.

Appended to and constituting a part of this Official Statement are the Commonwealth Report (*Appendix I*), the proposed form of opinion of Bond Counsel (*Appendix II*), and the specimen of the municipal bond insurance policy to be issued by AGM (*Appendix III*).

The information set forth in this Official Statement and incorporated herein by reference, except for information pertaining to DTC, and the information appearing in BOND INSURANCE and UNDERWRITING, was supplied by certain officials of the Commonwealth or certain of its agencies or instrumentalities, in their respective official capacities, or was obtained from publications of the Commonwealth or certain of its agencies or instrumentalities, and is included or incorporated by reference in this Official Statement on the authority of such officials or the authority of such publications as public official documents. The information pertaining to DTC was supplied by DTC. The information contained under the heading BOND INSURANCE was obtained from materials provided by AGM. The information contained under the heading UNDERWRITING was obtained from the corresponding underwriter.

This Official Statement will be filed with the MSRB through EMMA.

**COMMONWEALTH OF PUERTO RICO**

By: ____/s/ Jesús F. Méndez____
Secretary of the Treasury

36