# EXHIBIT 8

NEW ISSUES-BOOK ENTRY ONLY

**$330,935,000**
**Puerto Rico Public Buildings Authority**
**Government Facilities Revenue Refunding Bonds, Series P**
**Guaranteed by the Commonwealth of Puerto Rico**

The Puerto Rico Public Buildings Authority Government Facilities Revenue Refunding Bonds, Series P (the "Bonds") are being issued by Puerto Rico Public Buildings Authority (the "Authority") pursuant to Act No. 56 of the Legislature of Puerto Rico, approved June 19, 1958, as amended ("Act No. 56"), and under the provisions of Resolution No. 468, adopted by the Authority on June 22, 1995, as amended or supplemented (the "1995 Bond Resolution").

The Bonds, the outstanding bonds of the Authority previously issued under the 1995 Bond Resolution, and any additional bonds that the Authority may from time to time issue under the 1995 Bond Resolution are payable from, and are secured by a pledge of, the rentals of government facilities financed or refinanced by such bonds and leased by the Authority to departments, agencies, instrumentalities and municipalities of the Commonwealth of Puerto Rico (the "Commonwealth").

**The Bonds are further secured by the guaranty of the Commonwealth under which the Commonwealth pledges to draw from any funds available in the Treasury of Puerto Rico such sums as may be necessary to cover any deficiency in the amount required for the payment of principal of and interest on the Bonds. The good faith and credit of the Commonwealth, as in the case of the Commonwealth's general obligation bonds, are pledged for such payments.**

The Bonds will have the following characteristics:

- The Bonds will be dated their date of delivery.

- The Bonds will be registered under The Depository Trust Company's book-entry only system. Purchasers of the Bonds will not receive definitive Bonds.

- Interest on the Bonds will be payable on January 1, 2010 and on each July 1 and January 1 thereafter.

- The Bonds are subject to redemption as described herein.

- The inside cover page contains information concerning the maturity schedule, interest rates, and yields of the Bonds.

- The issuance of the Bonds and the purchase of the Bonds by the Underwriters are subject to the approval of legality by Nixon Peabody LLP, New York, New York, Bond Counsel, and certain other conditions.

- In the opinion of Bond Counsel, under existing law and assuming compliance with the tax covenants described herein, and the accuracy of certain representations and certifications made by the Authority and the Commonwealth, interest on the Bonds is excluded from gross income for Federal income tax purposes under Section 103 of the Internal Revenue Code of 1986, as amended (the "Code"). Bond Counsel is also of the opinion that such interest is not treated as a preference item in calculating the alternative minimum tax imposed under the Code with respect to individuals and corporations. Bond Counsel is further of the opinion that, interest on the Bonds is exempt from state, Commonwealth and local income taxation. See *Tax Matters*, beginning on page 26 of this Official Statement, regarding certain other tax considerations.

- McConnell Valdés LLC, San Juan, Puerto Rico will pass upon certain legal matters for the Underwriters.

- It is expected that settlement for the Bonds will occur on or about July 1, 2009.

| | |
|---|---:|
| **Merrill Lynch & Co.** | **Ramirez & Co., Inc.** |

| | | | |
|---|---|---|---:|
| **Barclays Capital** | **Goldman, Sachs & Co.** | **J.P. Morgan** | **Morgan Stanley** |

| | | |
|---|---|---|
| **Popular Securities** | **Santander Securities** | **UBS Financial Services Incorporated of Puerto Rico** |

June 26, 2009

$330,935,000
## Puerto Rico Public Buildings Authority
**Government Facilities Revenue Refunding Bonds, Series P**
**Guaranteed by the Commonwealth of Puerto Rico**

**$115,775,000 Serial Bonds**

| Maturity July 1, | Principal Amount | Interest Rate | Yield | CUSIP* |
|---|---|---|---|---|
| 2018 | $ 7,690,000 | 5.750% | 5.900% | 745235K75 |
| 2019 | 16,850,000 | 6.000 | 6.000 | 745235K83 |
| 2020 | 21,235,000 | 6.000 | 6.125 | 745235K91 |
| 2021 | 45,000,000 | 7.000 | 6.150† | 745235L25 |
| 2023 | 25,000,000 | 6.125 | 6.360 | 745235L33 |

**$55,000,000 – 7.000% Term Bonds due July 1, 2025; Yield 6.350%‡ (CUSIP No. 745235L41)***
**$29,315,000 – 6.250% Term Bonds due July 1, 2026; Yield 6.400% (CUSIP No. 745235L58)***
**$47,965,000 – 6.500% Term Bonds due July 1, 2030; Yield 6.710% (CUSIP No. 745235L66)***
**$82,880,000 – 6.750% Term Bonds due July 1, 2036; Yield 6.900% (CUSIP No. 745235L74)***

---

* Copyright 2009, American Bankers Association. CUSIP data herein are provided by Standard & Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. The CUSIP number listed above is being provided solely for the convenience of bondholders, and the Authority does not make any representation with respect to such number or undertake any responsibility for its accuracy. The CUSIP number is subject to being changed after the issuance of the Bonds as a result of various subsequent actions including, but not limited to, a refunding in whole or in part of the Bonds.
† Yield to July 1, 2014, optional call date.
‡ Yield to June 1, 2014, optional call date.

The information set forth or incorporated herein by reference has been obtained from the Authority, the Commonwealth, and other official sources that are believed to be reliable, but is not guaranteed as to accuracy or completeness and is not to be construed as a representation by any Underwriter. The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Official Statement nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the Authority or the Commonwealth since the date hereof. This Official Statement is submitted in connection with the sale of the Bonds referred to herein and may not be reproduced or used, in whole or in part, for any other purpose. The Underwriters have provided the following sentence and paragraph for inclusion in this Official Statement. The Underwriters have reviewed the information in this Official Statement in accordance with, and as part of, their respective responsibilities to investors under the federal securities laws as applied to the facts and circumstances of this transaction, but the Underwriters do not guarantee the accuracy or completeness of such information.

IN CONNECTION WITH THIS OFFERING, THE UNDERWRITERS MAY EFFECT TRANSACTIONS WHICH STABILIZE OR MAINTAIN THE MARKET PRICES OF THE BONDS OFFERED HEREBY AND OF OUTSTANDING BONDS OF PUERTO RICO PUBLIC BUILDINGS AUTHORITY AT LEVELS ABOVE THOSE WHICH MIGHT OTHERWISE PREVAIL IN THE OPEN MARKET. SUCH STABILIZING, IF COMMENCED, MAY BE DISCONTINUED AT ANY TIME.

## TABLE OF CONTENTS

| | Page |
|---|---|
| INTRODUCTION | 1 |
| PLAN OF FINANCING | 3 |
| The Bonds | 3 |
| Use of Proceeds | 3 |
| THE BONDS | 3 |
| Description of the Bonds | 3 |
| Redemption Provisions | 4 |
| Book-Entry Only System | 5 |
| Discontinuance of the Book-Entry Only System | 7 |
| SECURITY | 7 |
| Commonwealth Guaranty | 8 |
| Opinion of the Secretary of Justice of the Commonwealth | 8 |
| Lease Agreements | 9 |
| Pledge of the Commonwealth to Pay or Advance Rentals | 11 |
| Additional Bonds | 11 |
| PROVISIONS RELATING TO PUBLIC DEBT OF THE COMMONWEALTH | 11 |
| Payment of Public Debt | 11 |
| Payment Record | 12 |
| Debt Limitation | 12 |
| Commonwealth Guaranteed Debt | 13 |
| THE AUTHORITY | 14 |
| General | 14 |
| Powers | 14 |
| Management | 14 |
| PROGRAMS AND FACILITIES OF THE AUTHORITY | 15 |
| Office Buildings Program | 16 |
| School Buildings Program | 16 |
| Health Facilities Program | 16 |
| Correctional Facilities Program | 17 |

| | Page |
|---|---|
| Other Facilities | 17 |
| DEBT OF THE AUTHORITY AND DEBT SERVICE REQUIREMENTS | 17 |
| Debt | 17 |
| Debt Service Requirements | 18 |
| SUMMARY OF CERTAIN PROVISIONS OF THE 1995 BOND RESOLUTION | 19 |
| Revenues | 19 |
| 1995 Sinking Fund | 19 |
| 1995 Redemption Account | 20 |
| 1995 Construction Fund | 22 |
| Additional Bonds | 22 |
| Investment of Funds | 23 |
| General Covenants | 24 |
| Modifications | 25 |
| Notice of Default | 25 |
| TAX MATTERS | 26 |
| Federal Income Taxes | 26 |
| State Taxes | 26 |
| Original Issue Discount | 26 |
| Original Issue Premium | 27 |
| Ancillary Tax Matters | 27 |
| Change in Law and Post Issuance Events | 27 |
| UNDERWRITING | 28 |
| LEGAL INVESTMENT | 28 |
| LEGAL MATTERS | 28 |
| GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO | 28 |
| RATINGS | 29 |
| CONTINUING DISCLOSURE | 29 |
| MISCELLANEOUS | 31 |
| APPENDIX I - Proposed Form of Opinion of Bond Counsel | I-1 |

$330,935,000
**Puerto Rico Public Buildings Authority**
Government Facilities Revenue Refunding Bonds, Series P
Guaranteed by the Commonwealth of Puerto Rico

**INTRODUCTION**

This Official Statement sets forth information in connection with the sale by Puerto Rico Public Buildings Authority (the "Authority") of $330,935,000 aggregate principal amount of its Puerto Rico Public Buildings Authority Government Facilities Revenue Refunding Bonds, Series P (the "Bonds"). Concurrently with the issuance of the Bonds, the Authority is converting $50,000,000 principal amount of its Government Facilities Revenue Refunding Bonds, Series K, maturing July 1, 2027 and insured by Financial Security Assurance, Inc. (the "FSA Insured Bonds") from a LIBOR-based interest rate to a fixed rate and remarketing the FSA Insured Bonds. The FSA Insured Bonds are being reoffered pursuant to a separate Remarketing Circular.

The Bonds will be issued pursuant to Act No. 56 of the Legislature of Puerto Rico, approved June 19, 1958, as amended (the "Enabling Act"), and under the provisions of Resolution No. 468, adopted by the Authority on June 22, 1995 (the "1995 Bond Resolution"), as supplemented by a resolution adopted by the Authority on June 26, 2009 (the "Bond Resolution"). Following the issuance of the Bonds, the conversion of the FSA Insured Bonds and the payment of principal due July 1, 2009 on all of the Authority's outstanding bonds, the Authority will have outstanding $3,001,849,085 of its Government Facilities Bonds (calculated by excluding all accretion on any existing capital appreciation bonds and convertible capital appreciation bonds) issued under the 1995 Bond Resolution. The fiscal agent under the 1995 Bond Resolution is U.S. Bank National Association (the "1995 Fiscal Agent").

The Bonds, the outstanding bonds of the Authority previously issued under the 1995 Bond Resolution, and any additional bonds that the Authority may from time to time issue under the 1995 Bond Resolution (collectively, the "Government Facilities Bonds") are payable from and are secured by a pledge of the rentals of government facilities financed or refinanced by such bonds and leased by the Authority to departments, agencies, instrumentalities and municipalities of the Commonwealth. The Bonds are further guaranteed by the Commonwealth.

This Official Statement includes the cover page, the inside cover page, the appendices hereto and the following documents, which have been filed by the Commonwealth with each nationally recognized municipal securities information repository ("NRMSIR") and are incorporated herein by reference:

(1) the Comprehensive Annual Financial Report of the Commonwealth for the fiscal year ended June 30, 2007, prepared by the Department of the Treasury of the Commonwealth (the "Commonwealth's Annual Financial Report"). The Commonwealth's Annual Financial Report includes the basic financial statements of the Commonwealth as of and for the fiscal year ended June 30, 2007, which have been audited by KPMG LLP, independent auditors, as stated in their report dated June 15, 2008, accompanying such financial statements. KPMG LLP did not audit the financial statements of the Authority's capital project fund or the Children's Trust special revenue funds (major funds), and certain activities, funds and component units separately identified in its report. Those financial statements were audited by other auditors whose reports have been furnished to KPMG LLP, and its opinions, insofar as they relate to the amounts pertaining to such activities, funds and component units separately identified in its report, are based solely on the reports of the other auditors;

(2) the Commonwealth of Puerto Rico Financial Information and Operating Data Report, dated May 15, 2009 (the "Commonwealth Report"). The Commonwealth Report includes important information about the Commonwealth, including information about the economy, historical revenues and expenditures of the Commonwealth's General Fund, the estimated year-end results of the fiscal 2008

budget, the budgets for fiscal years 2008 and 2009, the proposed budget for fiscal year 2010, and the debt of the Commonwealth's public sector; and

(3) the basic financial statements of the Authority as of and for the fiscal year ended June 30, 2008, which have been audited by Parissi, P.S.C., San Juan, Puerto Rico, certified public accountants, as stated in their report dated September 29, 2008, accompanying such financial statements (the "Authority's 2008 Financial Statements").

Any Official Statement or appendix thereto of the Commonwealth or of any instrumentality of the Commonwealth that is filed with each NRMSIR and the Municipal Securities Rulemaking Board (the "MSRB") containing any revision to the Commonwealth Report or to the Commonwealth's Annual Financial Report, or any new or revised Commonwealth Report or Commonwealth's Annual Financial Report, or other document, that is filed with each NRMSIR (or with the Electronic Municipal Market System (http://emma.msrb.org) ("EMMA") established by the MSRB on or after July 1, 2009) containing information that modifies or supersedes the information contained in the Commonwealth Report or in the Commonwealth's Annual Financial Report, in each case after the date hereof and prior to the termination of the offering of the Bonds, shall be deemed to be incorporated by reference into this Official Statement and to be part of this Official Statement from the date of filing of such document. Any statement contained in any of the above described documents incorporated herein by reference shall be deemed to be modified or superseded for purposes of this Official Statement to the extent that a statement contained herein or in any such subsequently filed document modifies or supersedes such statement. Any statement contained herein shall also be deemed to be modified or superseded to the extent that a statement contained in any such subsequently filed document modifies or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Official Statement.

The Commonwealth will provide without charge to any person to whom this Official Statement is delivered, upon a written or oral request by such person, a copy of any or all of the foregoing documents incorporated herein by reference. Requests for such documents should be directed to Executive Vice President, Government Development Bank for Puerto Rico, 135 West 50th Street, 22d Floor, New York, NY 10020, telephone number (212) 333-0364, or to Vice President – General Obligations Division, Government Development Bank for Puerto Rico, PO Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

A copy of the Commonwealth Report, the Commonwealth's Annual Financial Report and the Authority's 2008 Financial Statements may be obtained by contacting a NRMSIR or by visiting the Government Development Bank's website at www.gdbpr.com. The address of each NRMSIR is set forth in *Continuing Disclosure* below.

This Official Statement, including information incorporated in this Official Statement by reference, contains certain "forward-looking statements" concerning the operations, financial condition, plans and objectives of the Authority and the Commonwealth. These statements are based upon a number of assumptions and estimates which are subject to significant uncertainties, including general economic conditions, many of which are beyond the control of the Authority and the Commonwealth. The words "may," "would," "could," "will," "expect," "anticipate," "believe," "intend," "plan," "estimate" and similar expressions are meant to identify these forward-looking statements. Actual results may differ materially from those expressed or implied by these forward-looking statements.

For further information regarding certain provisions required by the 1995 Bond Resolution to be included in each Lease Agreement in respect of facilities financed or refinanced by the Bonds, see *Summary of Certain Provisions of the 1995 Bond Resolution*.

**Pledge of the Commonwealth to Pay or Advance Rentals**

Under the 1995 Bond Resolution, the Authority has covenanted that if any department, agency, instrumentality or municipality fails to pay any rent when due, the Authority will promptly notify the Secretary of Treasury of the Commonwealth.

As provided in the Enabling Act, the good faith and credit of the Commonwealth are pledged for the payment of the rent payable under any Lease Agreement with the Authority executed by any of the Commonwealth's executive departments (including, among others, the Department of Education, the Department of Health and the Department of Corrections), and any other governmental body created by the Legislature of Puerto Rico and depending mainly on legislative appropriations to meet its operating expenses.

The Enabling Act also provides that if any rent payable to the Authority by any agency or instrumentality (other than a department) under a lease contract is not paid when due, the Commonwealth shall advance the unpaid balance to the Authority. The Commonwealth pledges its good faith and credit to the making of such advances. Any advances so made are required to be reimbursed by the particular agency or instrumentality involved.

Payments or advances of rentals by the Commonwealth, as described above, are subject to annual appropriations by the Legislature, which appropriations are legally required to be made. However, the obligation to make such appropriations is not legally enforceable in view of the sovereign immunity of the Commonwealth and, unlike the obligation to make payments under the guaranty of the Bonds, the obligation to pay or advance rentals does not constitute "public debt" within the meaning of Section 8 of Article VI of the Puerto Rico Constitution.

**Additional Bonds**

Under and in accordance with the provisions and restrictions of the 1995 Bond Resolution, the Authority may issue additional Government Facilities Bonds from time to time to finance additional government facilities or complete the construction of existing government facilities or to refund any bonds issued under the 1995 Bond Resolution, the 1970 Bond Resolution or the 1978 Bond Resolution. Although the Authority reserves the right to issue additional Public Buildings Authority Revenue Bonds under the 1970 Bond Resolution and Public Buildings Authority Public Education and Health Facilities Bonds under the 1978 Bond Resolution, since the adoption of the 1995 Bond Resolution, the Authority has only issued additional bonds under the 1995 Bond Resolution.

### PROVISIONS RELATING TO PUBLIC DEBT OF THE COMMONWEALTH

**Payment of Public Debt**

The Constitution of Puerto Rico provides that public debt of the Commonwealth will constitute a first lien on available Commonwealth taxes and revenues. Public debt includes general obligation bonds and notes of the Commonwealth and, according to opinions rendered by the Secretary of Justice of Puerto Rico, any payments required to be made by the Commonwealth under its guarantees of bonds and notes issued by its public instrumentalities. Any such guaranty payments, including guaranty payments under the Guaranty Act, are equal in their claim on such available Commonwealth revenues to claims for the payment of debt service on general obligation bonds and notes of the Commonwealth.

The Commonwealth has allocated certain motor vehicle fuel taxes, crude oil and derivative products excise taxes and license fees to Puerto Rico Highways and Transportation Authority (the "Highway Authority"). The amounts so allocated, however, are subject to first being applied to payment of the principal of and interest on the Commonwealth public debt, but only if and to the extent that all other available revenues of the Commonwealth are insufficient for that purpose. The Commonwealth has never applied such amounts to payment of its public debt.

11

Since fiscal 1989, the Commonwealth has pledged to Puerto Rico Infrastructure Financing Authority certain federal excise taxes imposed on alcoholic beverages and tobacco products produced in Puerto Rico and sold in the United States, which taxes are returned to the Commonwealth. The amounts so pledged, however, are subject to first being applied to payment of the principal of and interest on the Commonwealth public debt, but only if and to the extent that all other available revenues of the Commonwealth are insufficient for that purpose. The Commonwealth has never applied such amounts to the payment of its public debt.

Since November 2006, the Commonwealth imposes a general sales and use tax of 5.5%. Half of the 5.5% sales and use tax is transferred to a legislatively mandated Dedicated Sales Tax Fund and is not included as Commonwealth internal revenues consistent with the legislation creating the Sales Tax Financing Corporation ("COFINA" for its Spanish acronym), which legislation transfers ownership of such portion of the sales and use tax to COFINA and provides that it is not available revenues pursuant to the aforementioned Constitutional provisions. See "Major Sources of General Fund Revenues—Sales and Use Taxes" under *Puerto Rico Taxes, Other Revenues, and Expenditures* in the Commonwealth Report.

The Constitution of Puerto Rico expressly empowers a holder of bonds and notes evidencing public debt to bring suit against the Secretary of Treasury to require application of available revenues, including surplus, to the payment of principal of and interest on public debt when due.

**Payment Record**

The Commonwealth has never defaulted on the payment of principal of or interest on any of its debt.

**Debt Limitation**

Section 2 of Article VI of the Constitution of the Commonwealth provides that direct obligations of the Commonwealth evidenced by full faith and credit bonds or notes shall not be issued if the amount of the principal of and interest on such bonds and notes and on all such bonds and notes theretofore issued that is payable in any fiscal year, together with any amount paid by the Commonwealth in the fiscal year preceding the fiscal year of such proposed issuance on account of bonds or notes guaranteed by the Commonwealth, exceed 15% of the average annual revenues raised under the provisions of Commonwealth legislation and deposited into the Treasury (hereinafter "internal revenues") in the two fiscal years preceding the fiscal year of such proposed issuance. Section 2 of Article VI does not limit the amount of debt that the Commonwealth may guarantee so long as the 15% limitation is not exceeded through payments by the Commonwealth on such guaranteed debt. Internal revenues consist principally of income taxes, property taxes, sales taxes and excise taxes. Certain revenues, such as federal excise taxes on offshore shipments of alcoholic beverages and tobacco products and customs duties, which are collected by the United States Government and returned to the Treasury and motor vehicle fuel taxes and license fees, which are allocated to the Highway Authority, are not included as internal revenues for the purpose of calculating the debt limit, although they may be available for the payment of debt service. In addition, the portion of the sales and use tax allocated to COFINA is also not included as internal revenues consistent with the legislation creating COFINA, which legislation transfers ownership of such portion of the sales and use tax to COFINA and provides that such portion is not "available resources" under the constitutional provisions relating to the public debt.

All or a portion of the proceeds of certain refunding bonds issued by the Commonwealth were invested in guaranteed investment contracts or federal agency securities (in each case rated in the highest category by Moody's and Standard & Poor's), none of which is eligible to be used for a legal defeasance under Puerto Rico law ("non-eligible investments"). Since bonds refunded with proceeds of non-eligible investments are not legally defeased, such bonds are treated as outstanding for purposes of the 15% debt limitation.

Future maximum annual debt service for the Commonwealth's outstanding general obligation debt is $948,102,368 in the fiscal year ending June 30, 2016 (based on the assumption that the Public Improvement Refunding Bonds, Series 2004 A, which are variable rate bonds, bear interest at their actual rate per annum through July 1, 2012 and thereafter at 12% per annum, and the Public Improvement Refunding Bonds, Series 2004 B, the Public Improvement Refunding Bonds, Series 2008 B, a portion of the Public Improvement Refunding Bonds, Series 2003 C, a portion of the Public Improvement Bonds of 2006, Series A, and a portion of the Public Improvement

Refunding Bonds, Series 2007A, each of which are also variable rate bonds, bear interest at 12% per annum). This amount ($948,102,368) is equal to 11.59% of $8,178,090,500, which is the average of the adjusted internal revenues for the fiscal years ended June 30, 2007 and June 30, 2008. If bonds refunded with non-eligible investments described in the preceding paragraph were treated as not being outstanding, and the interest on the Public Improvement Refunding Bonds, Series 2004 B, the Public Improvement Refunding Bonds, Series 2008 B, the portion of the Public Improvement Refunding Bonds, Series 2003 C, the portion of the Public Improvement Bonds of 2006, Series A, and the portion of the Public Improvement Refunding Bonds, Series 2007A, was calculated using the effective fixed interest rate payable by the Commonwealth under the interest rate exchange agreements entered into in respect thereof, the percentage referred to in the preceding sentence would be 9.60% and future maximum annual debt service for the Commonwealth's outstanding general obligation debt would be $785,297,901 in the fiscal year ending June 30, 2020. Annual debt service payments on bonds guaranteed by the Commonwealth are not included in the calculation of the 15% debt limitation. In the event any of the public corporations issuers of guaranteed bonds are unable to make any portion of the future debt service payments on its guaranteed bonds, the Commonwealth would be required to make such payments under its guarantee from the General Fund, and such debt service would be included in the calculation of the 15% debt limitation.

The Commonwealth's policy has been and continues to be to maintain the amount of such debt prudently below the constitutional limitation. The proposed Commonwealth budget for fiscal year 2010 does not contemplate the issuance of new Commonwealth general obligation debt. The Commonwealth is considering the refunding and restructuring of several outstanding general obligation bond issues.

Debt of municipalities, other than bond anticipation notes, is supported by real and personal property taxes and municipal license taxes. Debt of public corporations, other than bond anticipation notes, is generally supported by the revenues of such corporations from rates charged for services or products. See *Public Corporations* in the Commonwealth Report. However, certain debt of public corporations is supported, in whole or in part, directly or indirectly, by Commonwealth appropriations or taxes.

Direct debt of the Commonwealth is issued pursuant to specific legislation approved in each particular case. Debt of the municipalities is issued pursuant to ordinances adopted by the respective municipal legislatures. Debt of public corporations is issued in accordance with their enabling statutes. Government Development Bank, as fiscal agent of the Commonwealth and its municipalities and public corporations, must approve the specific terms of each issuance.

**Commonwealth Guaranteed Debt**

As of July 1, 2009, $3.00 billion of Commonwealth guaranteed bonds of the Authority (including the Bonds) will be outstanding. Including the refunding of the Refunded Bonds and the conversion of the FSA Insured Bonds, maximum annual debt service on these bonds is $250.3 million in fiscal year 2011, with their final maturity being July 1, 2037. No payments under the Commonwealth guaranty have been required to date for these bonds.

As of June 30, 2009, $267 million of Commonwealth guaranteed bonds of Government Development Bank will be outstanding. No payments under the Commonwealth guaranty have been required for these bonds.

As of June 30, 2009, Government Development Bank will hold approximately $181 million of the Port of the Americas Authority's outstanding bonds, which are guaranteed by the Commonwealth. The Port of the Americas Authority is authorized to issue and Government Development Bank is authorized to purchase its bonds guaranteed by the Commonwealth in a maximum aggregate principal amount of $250 million. The proceeds from these bonds will be used to continue the development of the Port of the Americas. No payments under the Commonwealth guaranty have been required for these bonds. See "Other Public Corporations—Port of the Americas Authority" under *Public Corporations* in the Commonwealth Report.

As of June 30, 2009, the aggregate outstanding principal amount of obligations of the Puerto Rico Aqueduct and Sewer Authority ("PRASA") guaranteed by the Commonwealth will be $912 million. This amount will consist of $284.7 million in revenue bonds sold to the public, $309.8 million in bonds issued to the United States Department of Agriculture, Rural Development, and $317.5 million of loans by the State Revolving (Clean Water

bonds issued by the Authority under the Guaranty Act. The Authority reserves the right to issue additional Public Education and Health Facilities Bonds and Government Facilities Bonds to provide for the payment of any then outstanding notes issued in connection with or the cost of construction of any facilities included in the health facilities program.

**Correctional Facilities Program**

In 1994, the Department of Corrections, in cooperation with the Authority, began a program to provide for the construction, operation and maintenance of new Commonwealth correctional facilities to be leased to the Department of Corrections by the Authority. These facilities were constructed as part of the Commonwealth's effort to alleviate overcrowding in its correctional system and achieve compliance with certain federal court mandated minimum inmate living space requirements. The Authority has completed the construction of 9 correctional facilities at an approximate cost of $287 million, which facilities are operated by the Department of Corrections.

**Other Facilities**

The Authority also constructs office buildings, schools and health facilities that are financed by a combination of federal grants and Commonwealth appropriations. The Authority is also empowered to undertake construction on behalf of and as an agent for other public agencies of the Commonwealth.

Under the Enabling Act, the Authority is also empowered to construct social welfare facilities. Any such facilities that may be constructed can be financed by bonds of the Authority under the 1995 Bond Resolution. The Authority has not issued any bonds or other obligations to finance such facilities.

## DEBT OF THE AUTHORITY AND DEBT SERVICE REQUIREMENTS

**Debt**

The following table sets forth the outstanding debt of the Authority:

|  | As of June 30, 2009[1] | As Adjusted[2] |
|---|---|---|
| Bonds outstanding under the 1970 Bond Resolution | $ 49,115,000 | $ 43,380,000 |
| Bonds outstanding under the 1978 Bond Resolution | 66,015,000 | 32,585,000 |
| Bonds outstanding under the 1995 Bond Resolution | 2,932,259,085 | 2,925,884,085 |
| Total bonded debt[3] | $ 3,047,389,085 | $ 3,001,849,085 |

(1) Calculated by excluding all interest accretion on outstanding capital appreciation bonds and convertible capital appreciation bonds from their respective dates of issuance. These amounts do not reflect Government Development Bank's interim financing of the Authority's CIP.

(2) Reflects the outstanding debt of the Authority after giving effect to the issuance of the Bonds (calculated by excluding all interest accretion on outstanding capital appreciation bonds and convertible capital appreciation bonds from their respective dates of issuance), the refunding of the Refunded Bonds, the conversion of the FSA Insured Bonds and the payment of principal due July 1, 2009 on all of the Authority's outstanding bonds.

(3) Totals may not add due to rounding.

The Authority has caused to be deposited to the credit of the respective reserve accounts under the 1970 Bond Resolution and the 1978 Bond Resolution reserve account letters of credit issued by The Bank of Nova Scotia acting through its San Juan Branch ("BNS") (each, a "BNS Reserve Account Letter of Credit" and, collectively, the "BNS Reserve Account Letters of Credit") in the respective amounts required by said resolutions. The scheduled expiration dates of the BNS Reserve Account Letters of Credit are July 15, 2011 and July 15, 2010, respectively. Among other things, the BNS Reserve Account Letters of Credit authorize drawings thereunder for the payment of any amount required to be paid out of moneys in the reserve account to which such BNS Reserve Account Letter of Credit relates after the withdrawal from the applicable reserve account of all cash and securities therein.

The obligations of the Authority under the reimbursement agreements between BNS and the Authority are not payable from the portion of the rentals received by the Authority in respect of the government facilities financed or refinanced with the proceeds of any Government Facilities Bonds and allocable to such Government Facilities Bonds.

No reserve account is established under the 1995 Bond Resolution.

In the near future, the Authority expects to issue bonds to restructure certain upcoming debt service payments. The Authority is also considering issuing bonds to repay and restructure outstanding debt with Government Development Bank.

**Debt Service Requirements**

Debt service requirements of the Authority for the bonds outstanding under the 1970, 1978 and 1995 Bond Resolutions (after the refunding of the Refunded Bonds and the conversion of the FSA Insured Bonds) and the Bonds as shown in the following table, consist in any fiscal year of the sum of the amounts required to pay (i) the interest that is payable on January 1 in such fiscal year and July 1 in the following fiscal year, (ii) the principal of serial bonds that is payable on July 1 in the following fiscal year, and (iii) the amortization requirements for term bonds that are payable on July 1 in the following fiscal year.

**Puerto Rico Public Buildings Authority**
**Debt Service Requirements**

| Fiscal Year Ending June 30 | Total Debt Service on Bonds Outstanding under 1970, 1978 and 1995 Bond Resolutions[1] | The FSA Insured Bonds | | | The Bonds | | | Total Debt Service |
|---|---|---|---|---|---|---|---|---|
| | | Principal | Interest | Total | Principal | Interest | Total | |
| 2010 | $ 221,642,700 | $ | $ 2,625,000 | $ 2,625,000 | $ | $ 21,802,838 | $ 21,802,838 | $ 246,070,538 |
| 2011 | 225,885,900 | | 2,625,000 | 2,625,000 | | 21,802,838 | 21,802,838 | 250,313,738 |
| 2012 | 218,310,588 | | 2,625,000 | 2,625,000 | | 21,802,838 | 21,802,838 | 242,738,425 |
| 2013 | 198,444,382 | | 2,625,000 | 2,625,000 | | 21,802,838 | 21,802,838 | 222,872,219 |
| 2014 | 198,286,169 | | 2,625,000 | 2,625,000 | | 21,802,838 | 21,802,838 | 222,714,007 |
| 2015 | 198,131,082 | | 2,625,000 | 2,625,000 | | 21,802,838 | 21,802,838 | 222,558,919 |
| 2016 | 197,879,019 | | 2,625,000 | 2,625,000 | | 21,802,838 | 21,802,838 | 222,306,857 |
| 2017 | 197,920,069 | | 2,625,000 | 2,625,000 | | 21,802,838 | 21,802,838 | 222,347,907 |
| 2018 | 158,284,732 | | 2,625,000 | 2,625,000 | 7,690,000 | 21,802,838 | 29,492,838 | 190,402,569 |
| 2019 | 146,756,957 | | 2,625,000 | 2,625,000 | 16,850,000 | 21,360,663 | 38,210,663 | 187,592,619 |
| 2020 | 146,759,769 | | 2,625,000 | 2,625,000 | 21,235,000 | 20,349,663 | 41,584,663 | 190,969,432 |
| 2021 | 146,751,357 | | 2,625,000 | 2,625,000 | 45,000,000 | 19,075,563 | 64,075,563 | 213,451,919 |
| 2022 | 148,226,850 | | 2,625,000 | 2,625,000 | | 15,925,563 | 15,925,563 | 166,777,413 |
| 2023 | 146,740,538 | | 2,625,000 | 2,625,000 | 25,000,000 | 15,925,563 | 40,925,563 | 190,291,100 |
| 2024 | 146,468,232 | | 2,625,000 | 2,625,000 | 11,910,000 | 14,394,313 | 26,304,313 | 175,397,544 |
| 2025 | 144,220,313 | | 2,625,000 | 2,625,000 | 43,090,000 | 13,560,613 | 56,650,613 | 203,495,925 |
| 2026 | 143,530,236 | 11,000,000 | 2,625,000 | 13,625,000 | 29,315,000 | 10,544,313 | 39,859,313 | 197,014,549 |
| 2027 | 143,404,379 | 39,000,000 | 2,047,500 | 41,047,500 | 10,000,000 | 8,712,125 | 18,712,125 | 203,164,004 |
| 2028 | 184,100,207 | | | | 11,330,000 | 8,062,125 | 19,392,125 | 203,492,332 |
| 2029 | 183,263,487 | | | | 12,905,000 | 7,325,675 | 20,230,675 | 203,494,162 |
| 2030 | 183,273,913 | | | | 13,730,000 | 6,486,850 | 20,216,850 | 203,490,763 |
| 2031 | 183,256,088 | | | | 14,640,000 | 5,594,400 | 20,234,400 | 203,490,488 |
| 2032 | 183,252,938 | | | | 15,630,000 | 4,606,200 | 20,236,200 | 203,489,138 |
| 2033 | 183,254,556 | | | | 16,685,000 | 3,551,175 | 20,236,175 | 203,490,731 |
| 2034 | 184,076,686 | | | | 16,990,000 | 2,424,938 | 19,414,938 | 203,491,624 |
| 2035 | 217,868,464 | | | | | 1,278,113 | 1,278,113 | 219,146,576 |
| 2036 | 183,278,020 | | | | 18,935,000 | 1,278,113 | 20,213,113 | 203,491,133 |
| 2037 | 23,919,000 | | | | | | | 23,919,000 |
| Total [2] | $ 4,837,186,627 | $50,000,000 | $ 46,627,500 | $ 96,672,500 | $330,935,000 | $376,681,500 | $707,616,500 | $5,641,475,627 |

_____
(1) Does not include debt service on the Refunded Bonds.
(2) Totals may not add due to rounding.

### SUMMARY OF CERTAIN PROVISIONS OF THE 1995 BOND RESOLUTION

The following statements are brief summaries of certain provisions of the 1995 Bond Resolution. Such statements do not purport to be complete and reference is made to the 1995 Bond Resolution, copies of which are available for examination at the office of the 1995 Fiscal Agent. For the purposes of this summary, the terms "Bond" or "Bonds" shall refer to the Government Facilities Revenue Bond or Bonds.

**Revenues**

The Authority covenants that each Lease Agreement which it enters into for any government facilities financed or refinanced under the 1995 Bond Resolution ("Authority Facilities") will require the Lessee thereunder to pay rentals which in the aggregate will be sufficient to provide the sums needed from time to time to pay the interest on all Bonds issued by the Authority for the financing or refinancing of the Authority Facilities covered by such Lease Agreement, the principal of all such Bonds which are serial Bonds and the amortization requirements and redemption premium for any such Bonds which are term Bonds ("1995 Debt Service Rentals"). (Section 701). All 1995 Debt Service Rentals received from the leasing of Authority Facilities are pledged as hereinafter provided.

**1995 Sinking Fund**

A special fund is created by the 1995 Bond Resolution and designated "Puerto Rico Public Buildings Authority Government Facilities Revenue Bonds Sinking Fund" (the "1995 Sinking Fund"). Two separate accounts

Any statements in this Official Statement involving matters of opinion, whether or not expressly so stated, are intended as such and not as representations of fact.

This Official Statement will be filed with the MSRB.

**PUERTO RICO PUBIC BUILDINGS AUTHORITY**

/s/ Jesús F. Méndez
Executive Director