# EXHIBIT 9

**REMARKETING CIRCULAR - NOT A NEW ISSUE**
**BOOK-ENTRY ONLY**
See "Book-Entry Only System" under The Bonds

# PUERTO RICO PUBLIC BUILDINGS AUTHORITY
**$50,000,000 Government Facilities Revenue Refunding Bonds, Series K Term Bonds due July 1, 2027**
**Guaranteed by the Commonwealth of Puerto Rico**

**Original Issue Date: May 27, 2004**
**Conversion Date: July 1, 2009**                                                **Due: As shown in the inside cover page**

On May 27, 2004, Puerto Rico Public Buildings Authority (the "Authority") issued its Government Facilities Revenue Refunding Bonds, Series K, Guaranteed by the Commonwealth of Puerto Rico, in the original aggregate principal amount of $347,065,000 (the "Series K Bonds"), pursuant to Act No. 56 of the Legislature of Puerto Rico, approved on June 19, 1958, as amended, and under the provisions of Resolution No. 468, adopted by the Authority on June 22, 1995, as amended and supplemented (the "1995 Bond Resolution").

Pursuant to the terms of the Bond Resolution, the Authority has elected to convert the Series K Term Bonds in the principal amount of $50,000,000 maturing July 1, 2027, CUSIP No. 745235XB2 (the "Bonds"), from the current LIBOR-based variable interest rate to the Fixed Rate (as defined herein) on the Conversion Date, as described herein. The Bonds will bear interest at the Fixed Rate to maturity (or earlier redemption). Merrill Lynch & Co. and Ramirez & Co., Inc. will serve as co-remarketing agents (the "Remarketing Agents") for the Bonds. The Bonds are subject to redemption prior to maturity as set forth in the "Redemption Provisions" under *Description of the Bonds* of this Remarketing Circular (as herein defined).

All outstanding Puerto Rico Public Buildings Authority Government Facilities Revenue Bonds and Puerto Rico Public Buildings Authority Government Facilities Revenue Refunding Bonds, including the Bonds, and any additional Puerto Rico Public Buildings Authority Government Facilities Revenue Bonds and Revenue Refunding Bonds hereafter issued under the 1995 Bond Resolution (all of the foregoing, collectively, "Government Facilities Bonds"), will be secured equally and ratably by a pledge of the rentals of government facilities financed or refinanced by those bonds and leased by the Authority to departments, agencies, instrumentalities and municipalities of the Commonwealth of Puerto Rico (the "Leased Facilities"). The Leased Facilities will not be mortgaged or otherwise encumbered to secure any Government Facilities Bonds. The good faith and credit of the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico") are pledged to the payment or advance of such rentals.

**The Bonds are further secured by the guaranty of the Commonwealth, under which the Commonwealth pledges to draw from any funds available in the Treasury of Puerto Rico such sums as may be necessary to cover any deficiency in the amount required for the payment of principal of and interest on the Bonds. The good faith and credit of the Commonwealth, as in the case of the Commonwealth's general obligation bonds, are pledged for such payments.**

The scheduled payment of principal of and interest on the Bonds is guaranteed by a financial guaranty insurance policy issued concurrently with the original issuance of the Series K Bonds by Financial Security Assurance Inc. ("FSA"). FSA is expected to consent to the conversion of the Bonds on the Conversion Date, with the Bonds having the details described in the Conversion Resolution.

The Bonds were originally issued and are being remarketed as registered bonds without coupons, registered only in the name of Cede & Co., as nominee of The Depository Trust Company ("DTC"), New York, New York, which acts as securities depository for the Bonds. See "Book-Entry Only System" under *The Bonds*.

In the opinion of Bond Counsel, as described herein, under existing law and assuming compliance with the tax covenants described herein, and the accuracy of certain representations and certifications made by the Authority and the Commonwealth, interest on the Bonds is excluded from gross income for Federal income tax purposes under Section 103 of the Internal Revenue Code of 1986, as amended (the "Code"). Bond Counsel is also of the opinion that such interest is not treated as a preference item in calculating the alternative minimum tax imposed under the Code with respect to individuals and corporations. Bond Counsel is further of the opinion that, interest on the Bonds is exempt from state, Commonwealth and local income taxations. See *Tax Matters*.

The Bonds are offered for delivery when, as and if remarketed by the Remarketing Agents subject to the delivery of an opinion of bond counsel by Nixon Peabody LLP, New York, New York (the "Bond Counsel"), as required by the Series Resolution, and certain other conditions. Certain legal matters will be passed upon for the Remarketing Agents by McConnell Valdés LLC, San Juan, Puerto Rico. It is expected that the Bonds will be available for delivery through the facilities of DTC upon conversion and remarketing on July 1, 2009.

**Merrill Lynch & Co.**                                                                                                    **Ramirez & Co., Inc.**

June 26, 2009

## MATURITY SCHEDULE

**$50,000,000 Government Facilities Revenue Refunding Bonds, Series K Term Bonds
due July 1, 2027
Guaranteed by the Commonwealth of Puerto Rico**

**$50,000,000 – 5.25% Term Bonds due July 1, 2027; Yield 5.50% CUSIP\* No. 745235L82**

---

\* Copyright 2009, American Bankers Association. CUSIP data herein are provided by Standard & Poor's CUSIP Service Bureau, a division of The McGraw-Hill Companies, Inc. The CUSIP number listed above is being provided solely for the convenience of bondholders and the Authority does not make any representation with respect to such number or undertake any responsibility for its accuracy now or at any time in the future. The CUSIP number is subject to being changed after the issuance of the Bonds as a result of various subsequent actions including, but not limited to, a refunding in whole or in part of the Bonds.

No dealer, broker, sales representative, or other person has been authorized by the Authority or the Remarketing Agents to give any information or to make any representations other than those contained herein and, if given or made, such other information or representations must not be relied upon as having been authorized by the Authority or the Remarketing Agents.  This Remarketing Circular does not constitute an offer to sell or the solicitation of an offer to buy nor shall there be any sale of the Bonds by any person in any jurisdiction in which it is unlawful for such person to make such an offer, solicitation or sale.  The information set forth or incorporated herein by reference has been obtained from the Authority and other official sources that are believed to be reliable.  The information and expressions of opinion herein are subject to change without notice, and neither the delivery of this Remarketing Circular nor any sale made hereunder shall, under any circumstances, create any implication that there has been no change in the affairs of the Authority or the Commonwealth since the date hereof.  The Remarketing Agents have reviewed the information in this Remarketing Circular in accordance with, and as part of, its responsibilities to investors under the federal securities laws as applied to the facts and circumstances of this transaction, but the Remarketing Agents do not guarantee the accuracy or completeness of such information.

IN CONNECTION WITH THE REMARKETING OF THE BONDS, THE REMARKETING AGENTS MAY EFFECT TRANSACTIONS WHICH STABILIZE OR MAINTAIN THE MARKET PRICES OF THE BONDS AND OF OUTSTANDING BONDS OF THE AUTHORITY AT LEVELS ABOVE THOSE WHICH MIGHT OTHERWISE PREVAIL IN THE OPEN MARKET.  SUCH STABILIZING, IF COMMENCED, MAY BE DISCONTINUED AT ANY TIME.

CERTAIN STATEMENTS CONTAINED IN THIS REMARKETING CIRCULAR REFLECT NOT HISTORICAL FACTS BUT FORECASTS AND FORWARD-LOOKING STATEMENTS. THESE STATEMENTS ARE BASED UPON A NUMBER OF ASSUMPTIONS AND ESTIMATES THAT ARE SUBJECT TO SIGNIFICANT UNCERTAINTIES, MANY OF WHICH ARE BEYOND THE CONTROL OF THE AUTHORITY. IN THIS RESPECT, THE WORDS "ESTIMATES", "PROJECTS", "ANTICIPATES", "EXPECTS", "INTENDS", "RELIEVES" AND SIMILAR EXPRESSIONS ARE INTENDED TO IDENTIFY FORWARD-LOOKING STATEMENTS. ALL PROJECTIONS, FORECASTS, ASSUMPTIONS, EXPRESSIONS OF OPINIONS, ESTIMATES, AND OTHER FORWARD-LOOKING STATEMENTS ARE EXPRESSLY QUALIFIED IN THEIR ENTIRETY BY THIS CAUTIONARY STATEMENT: ACTUAL RESULTS MAY DIFFER MATERIALLY FROM THOSE EXPRESSED OR IMPLIED BY FORWARD-LOOKING STATEMENTS.

**TABLE OF CONTENTS**

| | Page | | Page |
|---|---|---|---|
| INTRODUCTION | 1 | TAX MATTERS | 7 |
| PURPOSE OF SERIES K BONDS | 3 | Federal Income Taxes | 7 |
| DESCRIPTION OF THE BONDS | 3 | State Taxes | 8 |
| General | 3 | Original Issue Discount | 8 |
| Book-Entry Only System | 4 | Ancillary Tax Matters | 8 |
| Redemption Provisions | 4 | Changes in Law and Post Issuance Events | 9 |
| SECURITY | 5 | REMARKETING | 9 |
| BOND INSURANCE | 5 | LEGAL INVESTMENT | 9 |
| The FSA Bond Insurance Policy | 5 | GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO | 9 |
| Recent Events Regarding FSA's Ratings | 6 | RATINGS | 9 |
| Concerning the FSA Policy | 6 | CONTINUING DISCLOSURE | 10 |
| PROVISIONS RELATING TO THE PUBLIC DEBT OF THE COMMONWEALTH | 6 | MISCELLANEOUS | 10 |
| THE AUTHORITY, ITS PROGRAMS AND FACILITIES, AND ITS DEBT AND DEBT SERVICE REQUIREMENTS | 7 | APPENDIX I – Copy of Series P Official Statement | I |
| | | APPENDIX II - Copy of Opinion of Bond Counsel Issued by Nixon Peabody LLP | II |
| SUMMARY OF CERTAIN PROVISIONS OF THE 1995 BOND RESOLUTION | 7 | APPENDIX III – FSA Financial Guaranty Insurance Policy | III |

**Puerto Rico Public Buildings Authority**
**$50,000,000 Government Facilities Revenue Refunding Bonds Term Bonds due July 1, 2027**
**Guaranteed by the Commonwealth of Puerto Rico**

## INTRODUCTION

This Remarketing Circular (the "Remarketing Circular") of Puerto Rico Public Buildings Authority (the "Authority"), which includes the cover page, the inside cover page, the table of contents and the appendices, provides certain information in connection with the conversion and remarketing of a portion of the $347,065,000 aggregate principal amount of the Puerto Rico Public Buildings Authority Government Facilities Revenue Refunding Bonds, Series K (the "Series K Bonds"), Guaranteed by the Commonwealth of Puerto Rico (the "Commonwealth" or "Puerto Rico"). The Series K Bonds to be converted and remarketed are Series K Term Bonds in the principal amount of $50,000,000 maturing July 1, 2027. The Series K Bonds were issued by the Authority on May 27, 2004, CUSIP No. 745235XB2 (the "Bonds").

The Bonds were originally issued and are being converted and remarketed pursuant to Act No. 56 of the Legislature of Puerto Rico (the "Legislature"), approved on June 19, 1958, as amended (the "Enabling Act"), and under the provisions of the 1995 Bond Resolution, as supplemented by Bond Resolution No. 1001 adopted by the Authority on May 27, 2004, together with Appendix A thereto, as amended by Resolution No. 1235 adopted by the Authority on June 27, 2007, together with Appendix A thereto (collectively, the "Series Resolution"), as further supplemented by Resolution No. 1388 adopted by the Authority on June 26, 2009 (the "Conversion Resolution" and, together with the Series Resolution and the 1995 Bond Resolution, the "Bond Resolution").

The Bonds are insured by the FSA Policy (as described herein) issued concurrently with the original issuance of the Bonds by FSA, a copy of which is attached hereto as *Appendix III*. FSA has expressed its willingness to consent to the conversion of the Bonds to a Fixed Rate to maturity, with such converted Bonds having the details described in the Conversion Resolution. FSA is expected to provide its written consent to such conversion on the Conversion Date.

The Remarketing Agents will remarket the Bonds at a discount below the principal amount thereof pursuant to a remarketing agreement, dated as of the Conversion Date (the "Remarketing Agreement"), with the Authority.

Concurrently with the conversion and remarketing of the Bonds, the Authority intends to issue its $330,935,000 Government Facilities Revenue Refunding Bonds, Series P, Guaranteed by the Commonwealth (the "Series P Bonds"). The Series P Bonds are being offered pursuant to an Official Statement (the "Series P Official Statement"), a copy of which is attached as *Appendix I*.

Reference is made to the Bond Resolution for the complete terms of the Bonds. Terms used in this Remarketing Circular and not defined herein have the respective meanings given to them in the Bond Resolution, copies of which may be obtained by contacting Executive Vice President, Government Development Bank for Puerto Rico, 135 West 50th Street, 22$^{d}$ Floor, New York, New York 10020, telephone number (212) 333-0364, or to Vice President - General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

This Remarketing Circular incorporates by reference the following documents:

(1) the Comprehensive Annual Financial Report of the Commonwealth for the fiscal year ended June 30, 2007, prepared by the Department of the Treasury of the Commonwealth (the "Commonwealth's Annual Financial Report"), which includes the basic financial statements of the Commonwealth as of and for the fiscal year ended June 30, 2007, together with the independent auditor's report thereon, dated June 15, 2008, of KPMG LLP, certified public accountants. KPMG LLP did not audit the financial statements of the Authority's capital project fund or the Children's Trust special revenue fund (major funds), and certain activities, funds, and component units separately identified in its report. Those financial statements were audited by other auditors whose reports have been furnished to KPMG LLP, and its opinion as to the basic financial statements, insofar as it relates to the amounts included in the basic financial statements pertaining to such activities, funds, and component units, is based solely on the reports of the other auditors. The Commonwealth's Annual Financial Report has also been filed with each nationally recognized municipal securities information repository ("NRMSIR"), and is incorporated herein by reference;

(2) the Commonwealth of Puerto Rico Financial Information and Operating Data Report, dated May 15, 2009 (the "Commonwealth Report"), which includes important operating and financial information about the Commonwealth, including information about its economy, historical revenues and expenditures of its General Fund, the year-end results for fiscal year 2008, the budget for fiscal year 2009 and the projected budget for fiscal year 2010, and the debt of the Commonwealth's public sector. The Commonwealth Report has been filed with each NRMSIR and is incorporated herein by reference and should be read in its entirety; and

(3) the basic financial statements of the Authority as of and for the fiscal year ended June 30, 2008, which have been audited by Parissi, P.S.C., San Juan, Puerto Rico, certified public accountants, as stated in their report dated September 29, 2008, accompanying such financial statements (the "Authority's 2008 Financial Statements").

Any Official Statement or appendix thereto of the Commonwealth or of any instrumentality of the Commonwealth containing any revision to the Commonwealth Report or to the Commonwealth's Annual Financial Report that is filed with each NRMSIR and the Municipal Securities Rulemaking Board (the "MSRB"), or any new or revised Commonwealth Report or Commonwealth's Annual Financial Report or other document containing information that modifies or supersedes the information contained in the Commonwealth Report or in the Commonwealth's Annual Financial Report that is filed with each NRMSIR (or with the Electronic Municipal Market Access System (EMMA) established by the MSRB on or after July 1, 2009), in each case after the date hereof and prior to the termination of the remarketing of the Bonds, shall be deemed to be incorporated by reference into this Remarketing Circular and to be part of this Remarketing Circular from the date of filing of such document. Any statement contained in the Commonwealth's Annual Financial Report shall be deemed to be modified or superseded for purposes of this Remarketing Circular to the extent that a statement contained herein or in any such subsequently filed document modifies or supersedes such statement. Any statement contained in the Commonwealth Report or elsewhere herein shall also be deemed to be modified or superseded to the extent that a statement contained in any such subsequently filed document modifies or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified or superseded, to constitute a part of this Remarketing Circular.

The Commonwealth will provide without charge to any person to whom this Remarketing Circular is delivered, on the written or oral request of such person, a copy of the Commonwealth Report or the Commonwealth's Annual Financial Report incorporated herein by reference. Requests should be directed to Executive Vice President, Government Development Bank for Puerto Rico, 135 West 50th Street, 22d Floor, New York, New York 10020, telephone number (212) 333-0364, or to Vice President - General Obligations Division, Government Development Bank for Puerto Rico, P.O. Box 42001, San Juan, Puerto Rico 00940, telephone number (787) 722-7060.

was approximately $2,603,129,461 and its total net unearned premium reserve was approximately $2,605,459,851 in accordance with accounting principles generally accepted in the United States of America. Portions of the following documents filed by Holdings with the Securities and Exchange Commission ("SEC") that relate to FSA are incorporated by reference into this Remarketing Circular and shall be deemed to be a part hereof:

(i) Annual Report of Holdings on Form 10-K for the year ended December 31, 2008; and
(ii) Quarterly Report of Holdings on Form 10-Q for the quarter ended March 31, 2009.

All information relating to FSA included in, or as exhibits to, documents filed by Holdings pursuant to Section 13(a), 13(c), 14 or 15(d) of the Securities Exchange Act of 1934 after the filing of the last document referred to above and before the termination of the offering of the Bonds shall be deemed incorporated by reference into this Remarketing Circular and to be a part hereof from the respective dates of filing such documents. Copies of materials incorporated by reference are available over the internet at the SEC's website at http://www.sec.gov or at Holding's website at http://www.fsa.com or will be provided upon request to Financial Security Assurance Inc.: 31 West 52nd Street, New York, New York 10019, Attention: Communications Department (telephone (212) 826-0100). Any information regarding FSA included herein under the captions "BOND INSURANCE – Financial Security Assurance Inc." and " – Recent Events Regarding Financial Security's Ratings" or included in a document incorporated by reference herein (collectively, the "Financial Security Information") shall be modified or superseded to the extent that any subsequently included Financial Security Information (either directly or through incorporation by reference) modifies or supersedes such previously included Financial Security Information. Any Financial Security Information so modified or superseded shall not constitute a part of this Remarketing Circular, except as so modified or superseded. The FSA Policy does not protect investors against changes in market value of the Bonds, which market value may be impaired as a result of changes in prevailing interest rates, changes in applicable ratings or other causes. FSA makes no representation regarding the Bonds or the advisability of investing in the Bonds. FSA makes no representation regarding the Remarketing Circular, nor has it participated in the preparation thereof, except that FSA has provided to the Issuer the information presented under this caption for inclusion in the Remarketing Circular.

**Recent Events Regarding FSA's Ratings**

On May 20, 2009, Moody's Investors Service, Inc. placed FSA's "Aa3" insurance financial strength rating on review for possible downgrade. On May 11, 2009, Fitch Ratings downgraded to "AA+" (Ratings Watch Negative) from "AAA" the insurer financial strength rating of FSA. On April 21, 2009, Standard & Poor's Ratings Services ("S&P") affirmed FSA's "AAA" financial strength rating and removed it from Credit Watch with negative implications. In connection with such ratings affirmation, S&P assigned a negative outlook to FSA's "AAA" financial strength rating. These ratings reflect only the views of the respective rating agencies, are not recommendations to buy, sell or hold securities and are subject to revision or withdrawal at any time by those rating agencies.

**Concerning FSA Policy**

As provided in the insurance agreement between the Authority and U.S. Bank Trust National Association (the "Fiscal Agent") relating to the FSA Policy, the consent of FSA shall be required instead of the consent of the owners of the Bonds, when required, to the adoption of any resolution supplemental to the 1995 Bond Resolution, for the removal of the 1995 Fiscal Agent and the appointment of a successor or for approving any other action which requires such consent of the owners of the Bonds. The FSA Policy does not guarantee the payment of the purchase price of the Bonds upon tender or mandatory tender thereof, including, without limitation, the mandatory tender on the applicable mandatory tender date.

## PROVISIONS RELATING TO PUBLIC DEBT OF THE COMMONWEALTH

The section entitled *Provisions Relating to Public Debt of the Commonwealth* in the Series P Official Statement is incorporated herein by this reference. All references to the "Bonds" in such section shall mean the "Bonds" as defined herein; except that (i) the reference to the "Bonds" in the first sentence of subsection "Commonwealth

6

Guaranteed Debt" shall mean the "Series P Bonds" as defined here, and (ii) the reference to the "FSA Insured Bonds" in the second sentence of subsection "Commonwealth Guaranteed Debt" shall mean the "Bonds" as defined herein.

## THE AUTHORITY, ITS PROGRAMS AND FACILITIES, AND ITS DEBT AND DEBT SERVICE REQUIREMENTS

The sections entitled *The Authority, Programs and Facilities of the Authority* and *Debt of the Authority and Debt Service Requirements* in the Series P Official Statement are incorporated herein by this reference. All references to the "Bonds" in such section shall mean the "Bonds" as defined herein; except that (i) the reference to the "Bonds" in footnote (2) of subsection "Debt" under *Debt of the Authority and Debt Service Requirements*" shall mean the "Series P Bonds" as defined herein, (ii) the reference to the "FSA Insured Bonds" in footnote (2) of subsection "Debt" under *Debt of the Authority and Debt Service Requirements*" shall mean the "Bonds" as defined herein, and (iii) the reference to the "FSA Insured Bonds" in subsection "Debt Service Requirements" under *Debt of the Authority and Debt Service Requirements*" shall mean the "Bonds" as defined herein..

## SUMMARY OF CERTAIN PROVISIONS OF THE 1995 BOND RESOLUTION

The *Summary of Certain Provisions of the 1995 Bond Resolution* in the Series P Official Statement is incorporated herein by this reference. All references to the "Bonds" in such section shall mean the "Bonds" as defined herein.

## TAX MATTERS

**Federal Income Taxes**

The conversion and remarketing of the Bonds will result in a "reissuance" of the Bonds for Federal tax purposes, and accordingly, the Conversion Date is treated as the date of issue of the Bonds for such purposes.

The Internal Revenue Code of 1986, as amended (the "Code"), imposes certain requirements that must be met subsequent to the issuance and delivery of the Bonds for interest thereon to be and remain excluded from gross income for Federal income tax purposes. Noncompliance with such requirements could cause the interest on the Bonds to be included in gross income for Federal income tax purposes retroactive to the date of issue of the Bonds. Pursuant to the Bond Resolution and the Tax Certificate as to Arbitrage and the Provisions of Section 103 and 141-150 of the Internal Revenue Code of 1986 (the "Tax Certificate"), the Authority and the Commonwealth have covenanted to comply with the applicable requirements of the Code in order to maintain the exclusion of the interest on the Bonds from gross income for Federal income tax purposes pursuant to Section 103 of the Code. In addition, the Authority and the Commonwealth have made certain representations and certifications in the Bond Resolution and the Tax Certificate. Bond Counsel will not independently verify the accuracy of those representations and certifications.

In the opinion of Nixon Peabody LLP, Bond Counsel, under existing law and assuming compliance with the aforementioned covenant, and the accuracy of certain representations and certifications made by the Authority and the Commonwealth described above, interest on the Bonds is excluded from gross income for Federal income tax purposes under Section 103 of the Code. Interest on the Bonds is, however, included in the adjusted current earnings of certain corporations for purposes of computing the alternative minimum tax imposed on such corporations.

The Authority sold the Bonds at substantially the same time that the Authority sold the Series P Bonds. As a result, the Bonds and the Series P Bonds will be treated as a single issue of bonds for federal income tax purposes. Failure by the Authority or the Commonwealth to comply with the requirements of the Code with respect to the Series P Bonds may cause interest on the Bonds to be included in gross income for federal income tax purposes retroactively to the date of issue of the Bonds. The Authority and the Commonwealth have covenanted to comply with the applicable

7

circumstances so warrant. Any such downward revision or withdrawal of such ratings, or either of them, may have an adverse effect on the market prices of the Bonds.

## CONTINUING DISCLOSURE

The *Continuing Disclosure* in the Series P Official Statement is incorporated herein by this reference. All references to the "Bonds" in such section shall mean the "Bonds" as defined herein.

## MISCELLANEOUS

The foregoing references to and summaries of certain provisions of the Bond Resolution, the Commonwealth Report, the Commonwealth's Annual Financial Report, and various Acts, and the Bonds are made subject to all the detailed provisions thereof, to which reference is hereby made for further information, and do not purport to be complete statements of any or all of such provisions.

Appended to, and constituting a part of, this Remarketing Circular are a copy of the Series P Official Statement (*Appendix I*), a copy of the Opinion of Bond Counsel of Nixon Peabody LLP (*Appendix II*) and a copy of the Specimen Bond Insurance Policy of Financial Security Assurance Inc. (*Appendix III*).

The information set forth in the Commonwealth Report was supplied by certain officials of the Commonwealth or certain of its agencies or instrumentalities, in their respective official capacities, or was obtained from publications of the Commonwealth or certain of its agencies or instrumentalities, and is included or incorporated by reference in this Remarketing Circular on the authority of such officials or the authority of such publications as public official documents, respectively. The remaining information set forth in this Remarketing Circular, except the information appearing in "Book-Entry Only System" under *Description of the Bonds* and *Remarketing* and under *Bond Insurance* was supplied by the Executive Director of the Authority in his official capacity as such Executive Director and is included in this Remarketing Circular on his authority. The information contained in the section entitled "Book-Entry Only System" under *Description of the Bonds* was supplied by DTC. The information under *Bond Insurance* was supplied by FSA.

Any statements in this Remarketing Circular involving matters of opinion, whether or not expressly so stated, are intended as such and not as representations of fact.

This Remarketing Circular will be filed with each NRMSIR.

**PUERTO RICO PUBLIC BUILDINGS AUTHORITY**

By: /s/ Jesús F. Méndez_____
      Executive Director