UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

-----------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
et al.,

    Debtors.

PROMESA
Title III

No. 17 BK 3283-LTS
(Jointly Administered)

-----------------------------------------------------------------x

**MEMORANDUM IN SUPPORT OF MOTION OF INDIVIDUAL GENERAL OBLIGATION BONDHOLDER (1) TO PERMIT ELECTRONIC FILING BY PRO SE PARTIES; (2) (IN THE ALTERNATIVE TO "(1)") TO SET UP A MECHANISM TO PERMIT PRO SE PARTIES TO FILE AND SERVE PAPERS BY SUBMISSION BY EMAIL TO PRIME CLERK; (3) TO PERMIT PRO SE PARTIES TO LISTEN INTO PROCEEDINGS BY TELEPHONE; AND (4) TO ORDER THE APPOINTMENT OF A COMMITTEE FOR INDIVIDUAL AND OTHER MODEST-SIZED BONDHOLDERS**

Dated: April 1, 2019

## TABLE OF CONTENTS

Preliminary Statement..................................................................................................................1

I. PRO SE PARTIES SHOULD BE PERMITTED TO FILE ELECTRONICALLY...................1

II. (IN THE ALTERNATIVE TO "(I)"), A MECHANISM SHOULD BE SET UP TO PERMIT PRO SE PARTIES TO FILE AND SERVE PAPERS BY SUBMISSION BY EMAIL TO PRIME CLERK..................................................................................................2

III. PRO SE PARTIES SHOULD BE PERMITTED TO LISTEN INTO PROCEEDINGS BY TELEPHONE...................................................................................................................3

IV. THE COURT SHOULD ORDER THE APPOINTMENT OF A COMMITTEE FOR INDIVIDUAL AND OTHER MODEST-SIZED BONDHOLDERS..................................3

Conclusion ....................................................................................................................................9

**Preliminary Statement**

In March 2012 I purchased, as an individual retail investor in the 50 states, a modest quantity of bonds issued by the Commonwealth of Puerto Rico, Series 2012A general obligation bonds (*see* Claim No. 10696). These bonds were sold by Puerto Rico based on Puerto Rico's covenants and representations that **"The good faith, credit and taxing power of the Commonwealth are *irrevocably pledged* for the prompt payment of the principal of and interest on the Bonds"** and that **"The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a *first claim* on available Commonwealth resources."** (italics added)

I have filed a notice of participation in this case (Docket 5377), as has my wife (Docket 5378). I have previously submitted two filings in response to the attempts to invalidate general obligation bonds. *See* Docket 4913 and 5103.

By this motion I am seeking the relief set forth below in Sections I, II, III and IV so that pro se parties can effectively participate in these proceedings.

**I.   PRO SE PARTIES SHOULD BE PERMITTED TO FILE ELECTRONICALLY**

I have sought to register for electronic filing on the court's CM/ECF System as a pro se party, but have been advised that only attorneys admitted to practice in the District of Puerto Rico (either generally or pro hac vice) may register to use the CM/ECF system.

Other federal courts – including, for example, the United States Court of Appeals for the First Circuit – allow pro se parties to register for and use their CM/ECF systems. There is no legitimate reason not to permit pro se parties in the PROMESA proceedings to register to use, and use, the court's CM/ECF system, if they desire.

Furthermore, it is unfair not to make this option available to pro se parties in this matter. Many individual bondholders are affected by these proceedings, but most will not have a sufficient stake to make it economically feasible to retain counsel with access to the Puerto Rico District Court efiling system. It is unfair to have two filing and service systems: an easy and inexpensive one for

1

parties with retained counsel registered to file electronically with the Puerto Rico District Court (including the FOMB and UCC), and a far more cumbersome and expensive system for individuals without such counsel. Pro se participants should not be burdened with the expense of sending papers to Puerto Rico by air courier or the burden of serving the many parties in these cases, when all of that could be done easily and inexpensively through the CM/ECF system.

To have a two-tier filing system – easy for the well-funded FOMB and UCC, but burdensome and difficult for individual bondholders – only further compounds the extraordinary unfairness of this proceeding, in which the FOMB and UCC are using the money that bondholders have a constitutional and statutory lien upon, and a Constitutional right of first payment to, yet (on top of the thousands of advertising, publicity and consulting contracts and multitude of other expenditures that go on unrestrained by the FOMB), the FOMB and the UCC are using money that should be paid to the bondholders to fund efforts like this to invalidate the bonds. *See, e.g.*, Docket 4913.

In addition, the litigation time periods typically utilized in this action time are short and are not feasible unless individuals without counsel can file papers electronically. These short time periods are particularly difficult as it is for individuals who (unlike FOMB and UCC) do not have teams of attorneys and paralegals working on the matter and may need to find time to prepare whatever they wish to file at night or on weekends.

## II. (IN THE ALTERNATIVE TO "(I)"), A MECHANISM SHOULD BE SET UP TO PERMIT PRO SE PARTIES TO FILE AND SERVE PAPERS BY SUBMISSION BY EMAIL TO PRIME CLERK

In the alternative, if there really is some unresolvable technical impediment to allowing pro se parties to use the CM/ECF system in the District of Puerto Rico, then pro se parties should be given the ability to file and serve papers by sending papers to a specified email address, with a party maintaining the email address (such as Prime Clerk) having the responsibility of forwarding the items to the Clerk's office to place on the court docket (and effect service, upon such filing, via the CM/ECF system). Pro se parties in these proceedings should not be placed at a disadvantage to the

well-funded FOMB, UCC, and other litigants simply because the District of Puerto Rico system may not yet have been updated to match the capabilities of those of other federal courts, such as the First Circuit.

### III. PRO SE PARTIES SHOULD BE PERMITTED TO LISTEN INTO PROCEEDINGS BY TELEPHONE

This Court permits attorneys who have entered an appearance in the Title III proceedings to register with CourtSolutions to listen-in on hearings by telephone. Pro se parties should also be permitted to do this, so those who cannot personally attend a hearing can at least listen to the proceedings.

### IV. THE COURT SHOULD ORDER THE APPOINTMENT OF A COMMITTEE FOR INDIVIDUAL AND OTHER MODEST-SIZED BONDHOLDERS

11 U.S.C. §1102(a)(1) provides that the United States Trustee may appoint additional committees of creditors or of equity security holders as the United States Trustee deems appropriate. In addition, 11 U.S.C. §1102(a)(2) provides, in pertinent part, that "On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee."

In accordance with the Court's Order at Docket#5023, I wrote to the Office of the United States Trustee for the District of Puerto Rico to request the appointment of a committee to represent individual bondholders and other bondholders related to individuals (*e.g.*, trusts or retirement accounts controlled by an individual) with modest holdings (*e.g.*, par value holdings of $2.5 million par or less) of general obligation bonds issued by Puerto Rico. My letter dated March 1, 2019 to such office is attached as Exhibit A.

On March 6, 2019, Daniel M. McDermott, United States Trustee for Region 21, responded, stating in pertinent part, "Our office does not comment on the appointment or selection process for official committees beyond what appears on the public record. We are not considering taking any action at this time." This response is annexed as Exhibit B. Because the United States Trustee has

-3-

not granted my request, I am proceeding by motion to ask that the court order the appointment of an individual bondholders' committee.

I accordingly request an order directing the appointment of a committee to represent individual bondholders and other bondholders related to individuals (*e.g.*, trusts or retirement accounts controlled by an individual) with modest holdings (*e.g.*, par value holdings of $2.5 million par or less) of general obligation bonds issued by Puerto Rico. I realize that some individual investors may hold Puerto Rico bonds in a retirement account or in a trust. I believe those investors may appropriately be considered within the scope of investors to be represented by the committee. For the purpose of determining whether par value holdings are $2.5 million or less, holdings of related or affiliated persons should be aggregated.

\* \* \*

1. The importance of appointing a committee of individual bondholders is underscored by the unfair asymmetry that currently exists here: the FOMB and UCC appear to have access to effectively unlimited resources and funds to pursue an effort to invalidate individuals' bonds. While general obligation bondholders are secured by a constitutional and statutory lien, and an irrevocable pledge of Puerto Rico's resources to pay the bonds, and under the Puerto Rico Constitution general obligation bondholders have a "first claim on available Commonwealth resources," instead of Commonwealth resources being paid out to bondholders, those Commonwealth resources are being improperly diverted to fund the litigation brought by FOMB and UCC against general obligation bondholders. I object to that, and my position is that no monies should be diverted to fund the FOMB and UCC litigation efforts until Puerto Rico cures its defaults and pays its bonds. But at the very least, individual bondholders should have a committee established to represent their interests to defend against the FOMB's and UCC's proceedings.

If this Court is willing to allow an unsecured creditors committee to have its counsel's fees paid in this proceeding — including to pursue claims such as asserted in the "Omnibus Objection" (Docket# 4784) — *a fortiori* those individual bondholders, to whom there is an irrevocable pledge of payment and who have a first claim on available Commonwealth resources, should have at least the

same entitlement to representation with their counsel's fees and expenses paid in this proceeding as well.

In light of the efforts by the FOMB and UCC to seek to invalidate Puerto Rico general obligation bonds issued as far back as 2012, many individuals — who bought investment grade bonds at or about the original offering prices — now find themselves as respondents in the FOMB and UCC's proceeding. Notably, hundreds of pro se notices of participation have been filed to date. *See, e.g.*, Docket#5214-5219,5231-5233,5235,5253-5257,5262-5263,5272,5275-5288,5293-5310,5313,5316-5327,5329-5333,5335-5346,5348-5375,5377-5379,5381-5383,5388,5390,5399,5401-5402,5404-5407,5410,5412-5413,5415-5424,5428-5429,5431-5432,5442-5443,5447,5459-5480,5483-5561,5563-5571,5573-5576,5579,5583,5602-5603,5605-5626,5631-5640,5642-5652,5657-5686,5688-5698,5708,5718-5742,5744-5774,5826-5875,5877-5890,5892-5905,5906(filed 3/18/19-1st of two 5906 docket entries),5907-5915,5918,5919,5921-5933,5935,5941-5955,5965(5 separate notices),5984(39 separate notices),5992(21 separate notices),5993(32 separate notices),6013(50 separate notices),6025(50 separate notices),6034(50 separate notices),6035(15 separate notices),6049(24 separate notices),6069(13 separate notices),6079(4 separate notices),6083.

2. I believe that a committee of general obligation bondholders comprised of individuals and bondholders related to individuals (*e.g.*, trusts or retirement accounts), with modest holdings ($2.5 million par value or less in holdings), is appropriate to avoid the conflicts that permeated the negotiations of the COFINA Plan wherein, in the course of confidential mediation and settlement proceedings, (i) certain creditors with major holdings sought and received added consideration not enjoyed by all holders, and (ii) Puerto Rico representatives successfully negotiated for added and different consideration for Puerto Rico residents (discriminating against United States citizens in the 50 states). These conflicts were in addition to the conflict between the senior and subordinate COFINA bondholders, which also inappropriately impacted the negotiation process and crafting of the proposed COFINA plan, including because various major senior bondholders purchased

subordinate bonds at distressed prices and thereby impacted the vote in favor of a plan that unfairly benefitted such major senior bondholders.

The COFINA plan documents and disclosure statement were turgid and very difficult for individual COFINA bondholders to understand, and failed to adequately disclose the consequences to modest-sized holders of the proposed plan that was crafted to benefit major holders and Puerto Rico residents to the detriment of modest-sized holders in the 50 states. All of these problems were compounded by the fact that the notice to COFINA bondholders that provided a copy of the disclosure statement and proposed plan (on a flash drive) was mailed so as to be received just prior to the Christmas-New Year's holiday period, with dates for objection and voting of January 2 and 8. Major bondholders who received added consideration not available to all bondholders also impacted the voting to the detriment of individual and other bondholders with modest COFINA subordinate bond holdings.

Major bondholders and Puerto Rico Plan Proponents had their fees and expenses paid through the negotiated COFINA plan, either directly or in the form of so-called "consummation costs" of $332 million (paid from cash that was supposed to be held in trust for all COFINA bondholders, including subordinated holders, but ended up almost entirely distributed to certain favored parties, and not to the modest-sized subordinate bondholders in the 50 states who were among those for whom the cash was held in trust).

By contrast, modest-sized COFINA bondholders did not receive any payment of their costs and expenses, were not represented in the confidential process and were at a marked disadvantage in resisting a proposed COFINA plan that discriminated against them since the plan proponents all had their fees and expenses paid but no provision was made to pay fees or expenses of modest-sized holders.

Moreover, another result of the COFINA plan — skewed to favor some, and to discriminate against modest-sized COFINA subordinated bondholders in the 50 states who were not represented in the confidential mediation and settlement process — has been that individual and other modest-sized holders in the 50 states have been victimized by a chaotic forced exchange of their original

COFINA subordinate bonds. An individual originally holding one bond CUSIP has had that bond involuntarily exchanged into 14 fragments of bonds all with different CUSIPs; new bond allocations have been rounded down in the course of the exchange process (adversely impacting in a material way a modest-sized holder); fractional bonds have been involuntarily liquidated at distressed prices without the consent of bondholders; and taxable bonds have been issued to individuals in the 50 states who originally only purchased tax exempt bonds. Illustrative problems with the COFINA exchange are discussed in Exhibit C and D hereto. As a consequence, some modest-sized holders in the 50 states have received materially less in value than even the unfair amounts the disclosure statement had said would be forthcoming. The extraordinarily unfair (and I believe unlawful) COFINA situation should not be allowed to repeat itself for other bond categories, including the general obligation bonds.

3. There may be a commonality of interests between all general obligation bondholders in vigorously resisting efforts to invalidate their bonds and to vigorously pursue enforcement of the Commonwealth's irrevocable pledge and the Constitutional right of all general obligation bondholders to a first claim against available Commonwealth resources. The proposed committee to represent individual bondholders should coordinate with the efforts of major holders and their ad hoc committees to avoid a duplication of effort in resisting efforts to invalidate their bonds. However, if there is to be any negotiation, as the COFINA situation has shown, the interests of individual and other holders with modest holdings — many of whom bought at or about the original offering prices — may diverge from that of funds who bought large positions in bonds at the distressed prices that have prevailed following the enactment of PROMESA and Puerto Rico's efforts to renege on its obligations to bondholders.

4. If, for any reason, the Court is not prepared to order the appointment of the requested committee of individual and other bondholders related to individuals (*e.g.*, trusts or retirement accounts) with modest ($2.5 million par value or less) holdings of Puerto Rico general obligation bonds, but believes all general obligation bondholders should be included on one committee, then the Court should direct the United States Trustee to at least ensure appropriate representation on the

committee of individual and other bondholders related to individuals with modest holdings, including individuals in the 50 states who were treated unfairly (in my view, in violation of the law and U.S. Constitution) in the COFINA situation.

In addition, to avoid a situation where there is just one committee and representatives of individuals or other modest-sized bondholders are simply outvoted, if the committee were to ever entertain any type of "negotiated" resolution, it should be made clear that no member of the committee (or party with whom such person is associated) may receive any added or different consideration (however characterized or rationalized) as part of any negotiated resolution, to ensure that all bondholders — regardless of the size of their holdings — are treated equally. Also, any negotiation should be conducted from the point of view of a purchaser who paid at or about the original offering price (as distinct from the point of view of post-PROMESA purchasers who bought at deep discounts, who may have an incentive to give up what otherwise would be a successful legal position and to cut a deal that provides them a quick profit).

5. Since individuals are likely to have purchased a variety of different bonds issued by Puerto Rico and its instrumentalities, I believe the key criteria in evaluating potential committee members is whether they purchased the bonds at price levels approximating the original offering prices. Such a bondholder — even if he or she owns other Puerto Rico issues — should share a common interest in requiring Puerto Rico and its instrumentalities to honor the obligations that Puerto Rico assumed when it chose to sell bonds throughout the country to individuals and other investors with relatively modest holdings.

6. Meetings of the proposed individual bondholder committee (or any other bondholder committee that is established) should be conducted by telephone conference call, to minimize expenses and to make it feasible for interested individual holders throughout the United States to participate in the committee's work.

\* \* \*

Finally, without in any way limiting my objections to these proceedings, or my rights to amend or supplement any objections or my Notice of Participation in any respect, as stated in my

Notice of Participation it is my position that the Financial Oversight and Management Board for Puerto Rico ("FOMB") was appointed in violation of the Appointments Clause of the U.S. Constitution, that all of the FOMB's actions (including with respect to the filing of the Title III case and to the certifying of fiscal plans) are void, that the Title III proceeding should be dismissed, and that challenges being brought with respect to certain general obligation bonds by or on behalf of the FOMB or any members thereof or any committee established in connection with these Title III proceedings are void and should be dismissed. *See, inter alia, Lucia* v. *SEC*, ___ U.S. ___ (2018), slip op. at 12-13.

### Conclusion

The relief sought by this motion should be granted.

April 1, 2019

Respectfully Submitted,

Peter C. Hein, Pro Se
101 Central Park West, Apt. 14E
New York, NY 10023
petercheinsr@gmail.com