Peter C. Hein
101 Central Park West, Apt 14E
New York, NY 10023

petercheinsr@gmail.com
(212) 403-1237

March 1, 2019

Office of the United States Trustee
   for the District of Puerto Rico
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, Puerto Rico 00901-1922

**Re: 17BK3283-LTS – Request for Appointment of Committee of Individual Puerto Rico General Obligation Bondholders**

TO WHOM IT MAY CONCERN:

I am an individual holder and purchaser – who purchased pre-enactment of PROMESA, and at or about the original offering price – of the Series 2012A general obligation bonds issued by Puerto Rico. These bonds were sold by Puerto Rico based on Puerto Rico's covenants and representations that **"The good faith, credit and taxing power of the Commonwealth are *irrevocably pledged* for the prompt payment of the principal of and interest on the Bonds" and that "The Constitution of Puerto Rico provides that public debt of the Commonwealth, which includes the Bonds, constitutes a *first claim* on available Commonwealth resources." (italics added)** See Claim No. 10696; Docket#4913.

My overall holdings can be readily identified by searching under my name and my wife's name ("Anne Farley") on the Prime Clerk claims database.

11 U.S.C. §1102(a)(1) provides that the United States Trustee may appoint additional committees of creditors or of equity security holders as the United States Trustee deems appropriate. In addition, 11 U.S.C. §1102(a)(2) provides, in pertinent part, that "On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee."

In accordance with the Court's Order at Docket#5023, I am writing to request the appointment of a committee to represent individual bondholders and other bondholders related to individuals (*e.g.*, trusts or retirement accounts controlled by an individual) with modest holdings (*e.g.*, par value holdings of $2.5 million par or less) of general obligation bonds issued by Puerto Rico. I realize that some individual investors may hold Puerto Rico bonds in a retirement account or in a trust. I believe those investors may appropriately be considered within the scope of investors to

Exhibit A

be represented by the committee. For the purpose of determining whether par value holdings are $2.5 million or less, holdings of related or affiliated persons should be aggregated.

The importance of appointing a committee of individual bondholders is underscored by the unfair asymmetry that currently exists here: the FOMB and UCC appear to have access to effectively unlimited resources and funds to pursue an effort to invalidate individuals' bonds. While GO bondholders are secured by a constitutional and statutory lien, and an irrevocable pledge of Puerto Rico's resources to pay the bonds, and under the Puerto Rico constitution GO bondholders have a "first claim on available Commonwealth resources," instead of Commonwealth resources being paid out to bondholders, those Commonwealth resources are being improperly diverted to fund the litigation brought by FOMB and UCC against general obligation bondholders. I object to that, and my position is that no monies should be diverted to fund the FOMB and UCC litigation efforts until Puerto Rico cures its defaults and pays its bonds. But at the very least, individual bondholders should have a committee established to represent their interests to defend against the FOMB's and UCC's proceedings.

In light of the efforts by the FOMB and UCC to seek to invalidate Puerto Rico general obligation bonds issued as far back as 2012, many individuals – who bought investment grade bonds at or about the original offering prices – now find themselves as respondents in the FOMB and UCC's proceeding.

I believe that a committee of general obligation bondholders comprised of individuals and bondholders related to individuals (*e.g.*, trusts or retirement accounts), with modest holdings ($2.5 million par value or less in holdings), is appropriate to avoid the conflicts that permeated the negotiations of the COFINA Plan wherein, in the course of confidential mediation and settlement proceedings, (i) certain creditors with major holdings sought and received added consideration not enjoyed by all holders, and (ii) Puerto Rico representatives successfully negotiated for added and different consideration for Puerto Rico residents (discriminating against United States citizens in the 50 states). These conflicts were in addition to the conflict between the senior and subordinate COFINA bondholders, which also inappropriately impacted the negotiation process and crafting of the proposed COFINA plan.

The COFINA plan documents and disclosure statement were turgid and very difficult for individual COFINA bondholders to understand, and failed to adequately disclose the consequences to modest-sized holders of the proposed plan that was crafted to benefit major holders and Puerto Rico residents to the detriment of modest-sized holders in the 50 states. All of these problems were compounded by the fact that the only notice to COFINA bondholders was mailed so as to be received just prior to the Christmas-New Year's holiday period, with dates for objection and voting of January 2 and 8. Major bondholders who received added consideration not available to all bondholders also impacted the voting to the detriment of individual and other bondholders with modest COFINA subordinate bond holdings.

Major bondholders had their fees and expenses paid through the negotiated COFINA plan. By contrast, modest-sized COFINA bondholders did not receive any payment of their costs and expenses, were not represented in the confidential process and were at a marked disadvantage in resisting a proposed COFINA plan that discriminated against them since the plan proponents all

had their fees and expenses paid but no provision was made to pay fees or expenses of modest-sized holders.

Moreover, another result of the COFINA plan – skewed to favor some, and to discriminate against modest-sized COFINA subordinated bondholders who were not represented in the confidential mediation and settlement process – has been that individual and other modest-sized holders in the 50 states have been victimized by a chaotic forced exchange of their original COFINA subordinate bonds whereby an individual originally holding one CUSIP bond has had that bond involuntarily exchanged into 14 fragments of bonds all with different CUSIPs, new bond allocations have been rounded down in the course of the exchange process (adversely impacting in a material way a modest-sized holder), fractional bonds have been involuntarily liquidated at distressed prices, and taxable bonds have been issued to individuals in the 50 states who originally only purchased tax exempt bonds. So modest-sized holders in the 50 states have received far less in value than even the Disclosure Statement had indicated would be forthcoming. The extraordinarily unfair (and I believe unlawful) COFINA situation should not be allowed to repeat itself for other bond categories, including the GO bonds.

There may be a commonality of interests between all general obligation bondholders in vigorously resisting efforts to invalidate their bonds and to vigorously pursue enforcement of the Commonwealth's irrevocable pledge and the Constitutional right of all general obligation bondholders to a first claim against available Commonwealth resources. The proposed committee to represent individual bondholders would coordinate with the efforts of major holders and their ad hoc committees to avoid a duplication of effort in resisting efforts to invalidate their bonds. However, if there is to be any negotiation, as the COFINA situation has shown, the interests of individual and other holders with modest holdings – many of whom bought at or about the original offering prices – may diverge from that of funds who bought large positions in bonds at distressed prices following the enactment of PROMESA and Puerto Rico's efforts to renege on its obligations to bondholders.

If, for any reason, the United States Trustee is not prepared to appoint the requested committee of individual and other bondholders related to individuals (*e.g.*, trusts or retirement accounts) with modest ($2.5 million par value or less) holdings of Puerto Rico general obligation bonds, but the United States Trustee believes all general obligation bondholders should be included on one committee, then the United States Trustee should at least ensure appropriate representation on the committee of individual and other bondholders related to individuals with modest holdings, including individuals in the 50 states who were treated unfairly (in my view, in violation of the law and U.S. Constitution) in the COFINA situation.

In addition, to avoid a situation where the individuals are simply repeatedly outvoted, if the committee were to ever entertain any type of "negotiated" resolution, any negotiation should be conducted from the point of view of a purchaser who paid at or about the original offering price (as distinct from post-PROMESA purchasers at deep discounts, who may have a very different incentive to give up what otherwise would be a successful legal position and to cut a deal that still provides them a quick profit). It should also be made clear that no member of the committee (or party with whom such person is associated) may receive any added or different consideration

as part of any negotiated resolution, to ensure that all bondholders – regardless of the size of their holdings – are treated equally.

Since individuals are likely to have purchased a variety of different bonds issued by Puerto Rico and its instrumentalities, I believe the key criteria in evaluating potential committee members is whether they purchased the bonds at price levels approximating the original offering prices. Such a bondholder – even if he or she owns other Puerto Rico issues – should share a common interest in requiring Puerto Rico and its instrumentalities to honor the obligations that Puerto Rico assumed when it chose to sell bonds throughout the country to individuals and other investors with relatively modest holdings.

Meetings of the proposed individual bondholder committee (or any other bondholder committee that is established) should be conducted by telephone conference call, to minimize expenses and to make it feasible for interested individual holders throughout the United States to participate in the committee's work.

More background may be found in Claim No. 10696, Docket#4913 and Docket#5103.

Thank you for your consideration. I can be reached at 212 403 1237 or petercheinsr@gmail.com to discuss this matter.

Sincerely

Peter C. Hein, Pro Se