March 18, 2019

The Honorable Laura Taylor Swain

**Re:** Avoid Future Harm to Retail Holders: Flawed Design & Execution of COFINA Bond Exchange

Your Honor:

I am writing because I am concerned that, at your recent Omnibus hearing, the problems with the COFINA exchange, and the damage to small bondholders, were not adequately nor truthfully discussed.

The design and execution of the exchange caused permanent damage and unfairly impacted thousands small bondholders. On their behalf, and on behalf of my clients, I am asking that you ensure that future exchanges are fair.

Our firm had many accounts with small odd lots of COFINA. On average, these clients received 2-2.5% less recovery on their COFINA exchange bonds than round lot holders, and less than was promised in the Plan of Adjustment. I believe this is typical of thousands of retail accounts in the U.S.

On its face, the plan appears to treat all bondholders equally. However, both in design and execution, it was easy to see in retrospect how it would fail small odd lot holders.

My firm custodies its accounts at Charles R. Schwab, a very large retail brokerage firm. Here are their comments on the exchange:

> "These payments have been a moving target and I wish we (Schwab along with all the other brokerage firms on the street) had the exact details in the beginning, but we didn't. We all were getting the information one piece at a time and as DTCC allocations were made. Additional allocations have been processed into client accounts since [my firm's] letter was sent.

> "Rounding: all bonds were rounded down. In order for Schwab to round up we would need a way to get additional bonds for our clients, but no additional bonds could be requested so we had to round down. It is possible that other firms could have rounded up if they had sufficient inventory. DTCC, our custodian doesn't know if we have one client or 5K clients. Prime Clerk gave flexibility to participants to handle the rounding in house. ..."

Exhibit D

*Flaws in the Design & Execution*

In my opinion, the exchange had the following flaws:

- *Too many tranches*, and several very small tranches – too many tranches/small tranches meant that bonds would be rounded down, and the fractions sold on the open market. Would have been fine, except that the bonds traded down on issue. See below.

- *Taxable Bonds were mispriced due to hurry to get approval* and traded down 15% or more on break. Taxable bonds traded down on issue because they lacked the taxable exemption. The coupon on the bonds was designed for a nontaxable bond. But due to the government shutdown, the IRS had not opined prior to the date of the Confirmation Hearing. Instead of waiting for the IRS to determine whether these tranches were eligible for exemption, the exchange went ahead with a coupon price that would be far too low – below market – for such tranches. This resulted in the bonds trading down 15% after the break.

- *Additional bonds were not made available to custodians.* Custodians such as Schwab were forced to round all bonds down because bonds were not made available, even though supplemental instructions received issued by Prime Clerk to DTCC *a week after the exchange date* said that DTCC could in fact issue more bonds.

- *Rounding cash was inadequate to serve any but the very largest holders.* Most who read the Plan of Adjustment assumed that rounding cash was available to make up shortfalls from rounding. What no one expected is that custodians would round down all odd lots and then sell the fractions on the open market, in a market in which the strip was trading down an average of 7%. To be clear, custodians had authority to do what they did. But they should not have had to make that choice.

*Damage to Small Holders*

Small holders were damaged in the following ways:

- They received less cash for their rounded bonds than they were entitled to because the bonds traded down dramatically on the break.

- They received less cash for their rounded bonds because no additional bonds were made available for bonds that should have been rounded up.

- They were forced to realized a gain/loss on the fractions that were sold. Had they been allowed to hold either fractions or bonds, they could have held the bonds until the IRS determination, until the market stabilized, etc. Instead, they not only received a taxable event but they lost the ability to wait for recovery.

- Large holders undoubtedly knew that this avalanche of fractions would flood the market, and they were in a position to take advantage of this flood. Indeed, now a month after the exchange, the bonds have traded up.

The Oversight Board and large holders designed an exchange that worked for them and didn't really care whether it worked for anyone else. Attorney Brian Rosen referred to retail holders as "unwashed masses" before you in open court (November 20, 2018). This underscores the outright disdain that these attorneys have for all but elite participants. The attorney for the Oversight Board Special Claims Committee recently represented that it is not necessary to include small bondholders in upcoming GO dispute actions (January 29, 2019 hearing).

*All of this could have been avoided by issuing fractional bonds, additional bonds, cash, or both*. Our firm has participated in a number of municipal distressed exchanges. It is typical to receive fractional bonds, or perhaps CABs, plus cash, as a way to make sure all bondholders receive what they are due. We have never seen this happen before, nor has anyone else who I have spoken with, including people with 30 or more years in this business.

Upcoming hearings and eventual Plan of Adjustment will focus upon General Obligations and other bonds. These bonds are also widely held by retail in odd lots. I would like to suggest that you hire your own consultant to review these deals before you approve them, so that small bondholders can be protected from this happening again. It is a black mark on this process and indeed on the entire municipal market.

Thank you for your time and consideration of this matter.

Sincerely,

Robin Deshayes

Managing Member

Robin L. Deshayes

**Miltonian Capital Management, LLC**

707 Anacapa Street

Santa Barbara California 93101

Office (805) 845-4432

Fax (805) 456-2056

www.miltoniancapital.com