Hearing Date and Time: April 24, 2019, at 9:30 a.m. (AST)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

    Debtors.

PROMESA
Title III

Case No. 3:17-bk-03283 (LTS)

**OPPOSITION OF CERTAIN ERS BONDHOLDERS TO THE MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO FOR ENTRY OF AN ORDER EQUITABLY TOLLING THE TIME PRESCRIBED BY <u>11 U.S.C. § 546 TO BRING CERTAIN AVOIDANCE ACTIONS</u>**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii
INTRODUCTION ..................................................................................................................... 2
BACKGROUND ....................................................................................................................... 4
ARGUMENT ............................................................................................................................. 5
    I.    The Oversight Board Has Not Been Diligent With Respect To Avoidance Actions Against ERS Bondholders ............................................................................. 7
    II.    Extraordinary Circumstances Did Not Prevent The Filing Of Timely Avoidance Actions Against ERS Bondholders ................................................................ 11
    III.    The Oversight Board's Efficiency Arguments Cannot Excuse Compliance With The Statutory Deadline ............................................................................... 12
CONCLUSION ........................................................................................................................ 14

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Benitez-Pons v. Puerto Rico*,
  136 F.3d 54 (1st Cir. 1998) .................................................................................................. 9

*Celikoski v. United States*,
  21 F. App'x 19 (1st Cir. 2001) .............................................................................................. 9

*Credit Suisse Secs. (USA) LLC v. Simmonds*,
  566 U.S. 221 (2012) .............................................................................................................. 6

*In re the Colad Grp., Inc.*,
  324 B.R. 208 (Bankr. W.D.N.Y. 2005) ............................................................................... 14

*In re Damach, Inc.*,
  235 B.R. 727 (Bankr. D. Conn. 1999) ................................................................................. 14

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
  914 F.3d 694 (1st Cir. 2019) ................................................................................................. 4

*In re IFS Fin. Corp.*,
  No. 02-39553, 2010 WL 4614293 (Bankr. S.D. Tex. Nov. 2, 2010) ................................... 10

*In re Infinity Bus. Group, Inc.*,
  No. 10-06335, 2011 WL 9375422 (Bankr. D.S.C. June 22, 2011) ..................................... 13

*In re International Administrative Services*,
  408 F.3d 689 (11th Cir. 2005) .................................................................................. 9, 10, 12

*In re McKenzie*,
  737 F.3d 1034 (6th Cir. 2013) ............................................................................................. 13

*In re McKenzie*,
  No. 08-16378, 2011 WL 6140516 (Bankr. E.D. Tenn. Dec. 9, 2011) ................................. 13

*In re Myler*,
  477 B.R. 227 (Bankr. D. Utah 2012) ............................................................................... 9, 10

*In re N.Y. Mortg. Bankers*,
  529 B.R. 12 (Bankr. D.P.R. 2015) ......................................................................................... 6

*In re Soloman Dwek*,
  No. 07-11757 (KCF), (Bankr. D.N.J. Feb. 2, 2009) ...................................................... 10, 12

*In re Walnut Hill, Inc.*,
  No. 16-20960, 2018 WL 2672242 (Bankr. D. Conn. June 1, 2008) ................................... 13

*Jardin de Las Catalinas Ltd. P'ship. v. Joyner*,
  766 F.3d 127 (1st Cir. 2014) ........................................................................................... 4, 11

*Jobe v. INS*,
  238 F.3d 96 (1st Cir. 2001) ................................................................................................... 6

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Menominee Indian Tribe of Wisc. v. United States*,
  136 S. Ct. 750 (2016) ............................................................................................... *passim*

*Neverson v. Farquharson*,
  366 F.3d 32 (1st Cir. 2004) ............................................................................................. 11

*O'Malley v. Town of Egremont*,
  453 F. Supp. 2d 240 (D. Mass. 2006) ............................................................................. 14

*Ortega Candelaria v. Orthobiologics LLC*,
  661 F.3d 675 (1st Cir. 2011) ....................................................................................... 6, 13

*Peaje Invs. LLC v. García-Padilla*,
  845 F.3d 505 (1st Cir. 2017) ............................................................................................. 4

*Sherrod v. Breitbart*,
  720 F.3d 932 (D.C. Cir. 2013) ........................................................................................ 14

*Wiscovitch-Rentas v. Super Roof & Gen. Contractor*,
  405 B.R. 397 (D.P.R. 2009) .............................................................................................. 6

**STATUTES**

11 U.S.C. § 546 ....................................................................................................... *passim*

48 U.S.C. § 2161 ........................................................................................................... 2, 5

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 9006 ................................................................................................ 13, 14

Fed. R. Civ. P. 6 .................................................................................................................. 14

Fed. R. Civ. P. 12 ............................................................................................................. 5, 8

To the Honorable United States District Court Judge Laura Taylor Swain:

Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund L.P., Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P.,[1] Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., PWCM Master Fund Ltd., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc. (the

---

[1] Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., and Oaktree Opportunities Fund IX (Parallel 2), L.P. hold through Opps Culebra Holdings, L.P. Oaktree Huntington Investment Fund II, L.P. holds through Oaktree Opportunities Fund X Holdings (Delaware), L.P. Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., and Oaktree Opportunities Fund X (Parallel 2), L.P. hold through Oaktree Opps X Holdco Ltd.

"Bondholders"), certain secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), respectfully submit this opposition to the *Motion of the Financial Oversight and Management Board of Puerto Rico for Entry of an Order Equitably Tolling the Time Prescribed by 11 U.S.C. § 546 to Bring Certain Avoidance Actions*, Docket No. 6118 in Case No. 17-bk-03283 (the "Motion"). The Motion seeks an order from the Court extending the statutory deadline for the Financial Oversight and Management Board of Puerto Rico (the "Oversight Board") to file avoidance actions against the present and former holders of various bonds issued by the Commonwealth of Puerto Rico (the "Commonwealth"), ERS, and the Puerto Rico Buildings Authority, based on the allegation that the bonds they hold or held were issued *ultra vires* and are therefore void. The Bondholders are owners of bonds issued by ERS (the "ERS Bonds") in 2008.

## INTRODUCTION

1. It has been over twenty-two months since the Board commenced Title III proceedings on behalf of ERS. The Board has therefore nearly exhausted the two-year period that Congress provided for the commencement of avoidance actions under the Bankruptcy Code. *See* 11 U.S.C. § 546(a); *see also* 48 U.S.C. §2161(a) (rendering § 546 applicable to Title III proceedings). In all this time, the Board has done essentially nothing to investigate or pursue possible avoidance actions against holders of ERS Bonds. In fact, the Board admits it has not even determined what information it needs to identify the historic owners of ERS Bonds, much less begun the process of obtaining that information. *See* Motion ¶ 48.

2. The sole avoidance action against ERS Bondholders that the Board addresses in its motion is based on the argument that ERS's issuance of its ERS Bonds was an *ultra vires* act. Yet the Board's extreme delay in raising this claim is not because the Board only just learned of this theory. In fact—while the Board emphasizes that the Unsecured Creditors Committee (the

"Committee") only recently filed a claim objection to the ERS Bonds on this basis[2]—the Board fails to inform the Court that this very *ultra vires* argument was first raised and briefed in November 2017 in two adversary proceedings to which the Board itself is a party. Yet the Board inexplicably did nothing in the intervening seventeen months to investigate this argument or pursue related avoidance actions.

3. Given the Board's significant delay in doing anything to investigate these possible claims, it is no surprise that the Board wants an extension to the statutory deadline. But the Board is not entitled to one. To obtain equitable tolling of a statutory deadline, a party must make two showings, each mandatory: "(1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way and prevented timely filing." *Menominee Indian Tribe of Wisc. v. United States*, 136 S. Ct. 750, 755 (2016) (quoting *Holland v. Florida*, 560 U.S. 631, 649 (2010)). The Board cannot meet either test. It obviously has not been diligent in pursuing avoidance actions against ERS Bondholders. Twenty-two months into the twenty-four month statutory period, the Board concedes that it has "only just begun the process of obtaining . . . payment records with respect to the ERS Bonds." Motion ¶ 48. And the Motion makes clear that the Board has done nothing beyond this small step with respect to such avoidance actions. Nor has the Board identified any "extraordinary circumstances"—or, indeed, any circumstances at all—that prevented timely filing. The *ultra vires* argument has been known to the Board for one and one-half years, yet the Board did nothing. It is now too late. The Board's "delay in bringing suit

---

[2] *See* Omnibus Obj. of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued By Employees Retirement System of Government of Puerto Rico at 8–22, Docket No. 5580 in Case No. 17-bk-03283 and Docket No. 381 in Case No. 17-bk-03566 (the "Objection").

was of [its] own contrivance," so it cannot benefit from equitable tolling. *Jardin de Las Catalinas Ltd. P'ship. v. Joyner*, 766 F.3d 127, 135 (1st Cir. 2014).

## BACKGROUND

4. The Bondholders hold ERS Bonds issued in 2008 and are therefore secured creditors of ERS. Even before these Title III proceedings began, the Bondholders were forced to continuously engage in legal action on multiple fronts to preserve their constitutionally-protected property interests in the collateral for the ERS Bonds. That effort has already resulted in two successful appeals to the First Circuit. *See Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 509, 514 (1st Cir. 2017); *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d 694, 703, 721 (1st Cir. 2019).

5. Meanwhile, the Oversight Board has taken a series of steps to deprive the Bondholders of their bargained for and protected property rights. The Board's efforts have involved a series of shifting rationales. At first, the Oversight Board took the position that there was no threat to the Bondholders' property because the ERS Bonds were oversecured. *See Brief of Amicus Curiae Financial Oversight and Management Board for Puerto Rico in Support of Respondents- Appellees Urging Affirmation of the District Court Order* at 18–21, No. 16-2433 (1st Cir. Dec. 23, 2016) (arguing that the "perpetual revenue streams that secure [the Bondholders'] claims would still be available for future payments under yet-to-be negotiated fiscal plans or in future proceedings under PROMESA"). Then the Board unsuccessfully argued that the Bondholders' security interests were unperfected and avoidable under the Bankruptcy Code. *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 703, 721. More recently, the Oversight Board's position seemed to be that the Bondholders no longer have any property at all, because the employer contributions in which they have a security interest have been eliminated by legislation created by the Board and the Commonwealth during the current Title III proceedings. *See, e.g.*,

*Debtor's Opp'n to Mot. of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* at 12, Docket No. 3465 in Case No. 17-bk-03283 and Docket No. 292 in Case No. 17-bk-03566 (the automatic stay is "not at issue" because "Movants are complaining about legislation by the Commonwealth creating a new pension system that does not generate Employers' Contributions"). What, exactly, has happened to the employer contributions is the subject of ongoing discovery related to the Bondholders' motion to lift the automatic stay in the absence of adequate protection.

6. The Oversight Board's new Motion is yet another twist in the Board's ever-changing legal position regarding the ERS Bonds. Now, the Board evidently intends to argue that the ERS Bonds are—and always have been—void because ERS supposedly lacked authority to issue them in the first place. This argument, of course, is difficult to credit for many reasons. More important for present purposes is the fact that it is hardly a new theory. It was first raised seventeen months ago by the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Commonwealth's Governor and Secretary in adversary proceedings commenced by the Bondholders. *See Government Defts.' Joinder And Suppl. Mem. Of Law In Supp. Of Mot. To Dismiss Pls.' Am. And Supplemented Compl. Pursuant To Fed. R. Civ. P. 12(b)(6)* at 10–18, Docket No. 44 in Case No. 17-ap-00219 and Docket No. 44 in Case No. 17-ap-00220. The Board, which is a defendant in those adversary proceedings, obviously was on notice of these claims, although it did not bother to address the argument in its own briefing. The Motion is the first indication that the Oversight Board now intends to pursue the *ultra vires* argument itself.

## ARGUMENT

7. Congress provided a clear deadline for avoidance actions in bankruptcy proceedings: they "may not be commenced after," as applicable here, "2 years after the entry of the order for relief." 11 U.S.C. § 546(a); *see also* 48 U.S.C. §2161(a) (rendering § 546 applicable

to Title III proceedings). The Oversight Board is bound by that statutory deadline, and the Motion provides no adequate basis for the Court to set it aside.

8. The Oversight Board frames its Motion as a request for "equitable tolling." "The limitations periods in 11 U.S.C. § 546(a) may be equitably tolled when a trustee, despite the exercise of due diligence, fails to timely bring an avoidance action due to fraud, misrepresentation or extraordinary circumstances beyond the trustee's control. However, if the court finds that the trustee has not acted diligently, the limitation period will not be equitably tolled." *In re N.Y. Mortg. Bankers*, 529 B.R. 12, 16 (Bankr. D.P.R. 2015). "[T]he doctrine of equitable tolling is to be used sparingly." *Wiscovitch-Rentas v. Super Roof & Gen. Contractor*, 405 B.R. 397, 401 (D.P.R. 2009); *see also Jobe v. INS*, 238 F.3d 96, 100 (1st Cir. 2001) ("Even when it applies, equitable tolling is a 'sparingly' invoked doctrine.").

9. To be entitled to equitable tolling, a party must show "(1) that [it] has been pursuing [its] rights diligently, and (2) that some extraordinary circumstance stood in [its] way and prevented timely filing." *Menominee Indian Tribe*, 136 S. Ct. at 755 (quoting *Holland*, 560 U.S. at 649); *see also, e.g.*, *Credit Suisse Secs. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012) ("[A] litigant seeking equitable tolling bears the burden of establishing two elements: (1) *that he has been pursuing his rights diligently*, and (2) that some extraordinary circumstances stood in his way." (quoting *Pace v. Diguglielmo*, 544 U.S. 408, 418 (2005))). These two components are "'elements,' not merely factors of indeterminate or commensurable weight," so a party must show *both* factors to be eligible for tolling. *Menominee Indian Tribe*, 136 S. Ct. at 756. And to meet the second element, "the circumstances that caused a litigant's delay [must be] both extraordinary and beyond [the party's] control." *Id.*; *Ortega Candelaria v. Orthobiologics LLC*, 661 F.3d 675, 680 (1st Cir. 2011) (in addition to showing "reasonable diligence," "[t]he tolling proponent must

- 6 -

establish that extraordinary circumstances beyond his control prevented a timely filing or that he was materially misled into missing the deadline").

10. The Oversight Board cannot establish either of the two required elements for equitable tolling, at least as to avoidance actions against the holders of ERS Bonds: It cannot show that it has been "pursuing [its] rights diligently," and it cannot show that any "extraordinary circumstance st[ands] in [its] way and prevent[s] timely filing." *Menominee Indian Tribe*, 136 S. Ct. at 755 (quoting *Holland*, 560 U.S. at 649).

**I.     The Oversight Board Has Not Been Diligent With Respect To Avoidance Actions Against ERS Bondholders.**

11. The Oversight Board's Motion reveals that it did *nothing at all* to investigate and pursue possible avoidance actions against ERS Bondholders until now, with barely two months remaining in the limitations period Congress provided. The Board attempts to disguise this fact by describing various other, unrelated things that it has done: retaining Kobre and Kim to investigate the "complex economic history of the Commonwealth," Motion ¶ 19, retaining counsel to pursue claims described in Kobre and Kim's report, *id.* ¶ 22, challenging certain General Obligation Bonds, *id.* ¶¶ 26, 33–35, and reviewing documents related to Kobre and Kim's report, *id.* ¶ 40. More recently—just one week before filing the Motion seeking equitable tolling—the Board also ordered security ownership records for the General Obligation Bonds from DTC, the custodian for the bonds. *Id.* ¶ 46.

12. Critically, none of those actions has anything to do with the argument that the ERS Bonds are *ultra vires*, which is the sole basis that the Board identifies for pursuing avoidance actions against ERS Bondholders. *See id.* ¶ 32. The Kobre and Kim report, for example, "does not address or take any position with respect to the litigation related to the [validity of the] ERS Bonds," and "express[es] no view on the merits of the dispute regarding ERS's authority" to issue them.

- 7 -

Kobre & Kim LLP, *The Independent Investigator's Final Investigative Report*, at 197, 545 (2018). And the Committee's Objection does not rely on the Kobre & Kim report, or on any information from Kobre & Kim's investigation, in asserting that the ERS Bonds are invalid. The Objection does cite the Kobre and Kim report, but only to disagree with it. *See* Objection ¶ 11 n. 18 ("The Committee recognizes that the Kobre & Kim Final Investigative Report draws different conclusions with respect to the diligence and level of understanding of the ERS decision-makers.").

13. Moreover, although the Motion skates over the fact, it was not in the Committee's March 2019 Objection that the *ultra vires* argument first appeared. Instead, the theory was first raised in detail sixteen months earlier, in a November 2017 motion AAFAF and the Commonwealth's Governor and Secretary brought to dismiss two of the Bondholders' adversary proceedings. *See Government Defs' Joinder And Suppl. Mem. Of Law In Supp. Of Mot. To Dismiss Pls.' Am. And Supplemented Compl. Pursuant To Fed. R. Civ. P. 12(b)(6)* at 10–18, Docket No. 44 in Case No. 17-ap-00219 and Docket No. 44 in Case No. 17-ap-00220. The Oversight Board is a party to those adversary proceedings, so it was certainly aware of the argument.[3] And the ERS Bonds are not some afterthought in ERS's Title III proceedings—they comprise one of ERS's largest categories of liabilities, nearly $3 billion in all. If the Oversight Board had begun trying to identify ERS Bondholders when AAFAF first raised the *ultra vires* argument, in November 2017, it would have had plenty of time to file avoidance actions within the 24-month statutory period. Indeed, it could have assessed the argument while it was waiting for Kobre and Kim to finish its

---

[3] On April 4, 2019, the Bondholders served interrogatories on the Oversight Board to find out when the Board first learned about the *ultra vires* argument and when it first had access to the materials that allegedly support that argument. In light of the objection deadline of April 9, 2019, the Bondholders requested responses by April 8, 2019. Counsel for the Board responded with a letter on April 8, 2019, in which they refused to answer the interrogatories until after the Bondholders object to the Motion.

investigation of other issues. The Motion offers no excuse for the Oversight Board's complete failure to act. Instead, the Motion reveals that in the first twenty-two months of the twenty-four-month statutory period, the Oversight Board has done just one thing related to the argument that the ERS Bonds are *ultra vires*, and it has barely done that: it has "only just begun the process of obtaining . . . payment records with respect to the ERS Bonds." Motion ¶ 48

14. The First Circuit has held that a plaintiff was not sufficiently diligent for equitable tolling where, aside from one "entirely accidental" meeting, "[t]he plaintiff initiated no other contact with the agency to resolve his dispute throughout th[e limitations] period." *Benitez-Pons v. Puerto Rico*, 136 F.3d 54, 62 (1st Cir. 1998); *see also, e.g.*, *Celikoski v. United States*, 21 F. App'x 19, 22 (1st Cir. 2001) (a "1–3 month window of opportunity" in which a plaintiff could have but did not pursue his rights meant that the plaintiff was insufficiently diligent for equitable tolling purposes). Here, the Oversight Board learned of its possible claim in November 2017, yet the Board did nothing for the next sixteen months. The Oversight Board therefore has not "been pursuing [its] rights diligently" with respect to avoidance actions against ERS Bondholders, and for that reason alone its motion for equitable tolling must be denied. *Menominee Indian Tribe*, 136 S. Ct. at 755. As the Oversight Board's own case explains, "[a] creditor who simply does not act quickly enough to learn the facts is not entitled to a belated extension of the deadline, because such an exception would quickly consume the rule." *In re Myler*, 477 B.R. 227, 235 (Bankr. D. Utah 2012) (quoting *In re Martinsen*, 449 B.R. 917, 924 (Bankr. W.D. Wis. 2011)).

15. The cases on which the Board relies are not to the contrary. In *In re International Administrative Services*, 408 F.3d 689 (11th Cir. 2005), the avoidance actions for which the trustee received equitable tolling were based on "transfer documents" that had been "deliberately and intentionally secreted from the trustee." *Id.* at 696 (internal quotation marks omitted). The court

explained that the "Trustee worked long and hard to discover all the intricacies of" the basis for the avoidance actions, including "hir[ing] a forensic accountant to assist in piecing together the jigsaw puzzle of transfers," and that "[a]lthough the Trustee identified some of the initial transfers early in the case, it took months to assemble and ascertain the different mechanisms at work behind the IAS transfers." *Id.* at 702 (internal quotation marks omitted). It also emphasized that "the Debtor and [its officer] went to extreme lengths to hide their activities." *Id.* The Board's other cases are no more helpful to it. *See In re Myler*, 477 B.R. at 235 (denying tolling due to lack of diligence); *In re IFS Fin. Corp.*, No. 02-39553, 2010 WL 4614293, at *3 (Bankr. S.D. Tex. Nov. 2, 2010) (denying summary judgment on equitable tolling because the defendant in the avoidance action "at the very least, . . . may have precipitated the Trustee's delay . . . by operating bank accounts under his sister's name").

16. The Board also relies on an unpublished, unreasoned grant of a trustee's motion for equitable tolling, ECF No. 3790 in *In re Soloman Dwek*, No. 07-11757 (KCF), (Bankr. D.N.J. Feb. 2, 2009). As the trustee's application in that case showed, however, it had actively pursued avoidance actions but been hampered by the fact that "[m]any of the thousands of documents that are known to exist are in the possession of the Federal Bureau of Investigation," and the trustee had not been able to access to them until very recently. *Application in Support of the Chapter 11 Trustee's Motion for Entry of an Order Equitably Tolling the Time Prescribed By 11 U.S.C. § 546*, ECF No. 3699-1, No. 07-11757 (KCF) (Bankr. D.N.J. filed Jan. 7, 2009). There was no similar barrier to the Oversight Board's pursuit of avoidance actions against ERS Bondholders. The Oversight Board's clear lack of diligence, standing alone, requires the Court to deny the Motion.

- 10 -

### II. Extraordinary Circumstances Did Not Prevent The Filing Of Timely Avoidance Actions Against ERS Bondholders.

17. Even aside from the Oversight Board's lack of diligence, the Court should deny the Motion as to ERS Bondholders because no "extraordinary circumstance"—indeed, nothing at all besides the Board's unjustified delay—prevented the Board from filing timely avoidance actions against ERS Bondholders.

18. The sole "extraordinary circumstance" that the Oversight Board identifies is its supposed inability to identify the holders, present and historic, of the bonds it challenges. Motion ¶¶ 79–80. But the Motion concedes that "the Oversight Board has *only recently begun* the significant diligence necessary to identify beneficial holders of" the ERS Bonds, *id.* ¶ 82.x (emphasis added). In fact, the Board says it is "not yet certain whether it will still be required to go through the same exercise as required for the Challenged GO Bonds" to identify historic holders of the ERS Bonds, because unlike the GO Bonds, the ERS Bonds "were administered through fiscal agents." *Id.* ¶ 48.

19. Thus, even though the purported difficulty of identifying bondholders is the sole "extraordinary circumstance" that the Board identifies, the Motion tacitly admits that this may be irrelevant anyway, as to the ERS Bonds. *See id.* At least as to the ERS Bonds, the Board therefore identifies no "extraordinary circumstance" justifying tolling at all. Under controlling First Circuit precedent, the result is clear: the Board's "delay in bringing suit was of [its] own contrivance," so it cannot benefit from equitable tolling. *Jardin de Las Catalinas Ltd. P'ship.*, 766 F.3d at 135; *see also Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004) ("[A]t a minimum, equitable tolling is appropriate only when circumstances beyond the petitioner's control have prevented him from filing on time.")

20. The Board's cases do not contradict this. *International Administrative Services*, as discussed above, involved avoidance actions for defendants who "went to extreme lengths to hide their activities," including "refus[ing] to supply the Trustee with critical and important documentation" and "deliberate and intentional attempts to obscure the true nature of the asset transfers." 408 F.3d at 702. Any actions against ERS Bondholders, in contrast, involve nothing more complicated than interest payments to the lawful owners of publicly traded securities. Similarly, *Dwek* involved the extraordinary circumstance that critical documents were in the FBI's exclusive possession, as explained above, *supra* ¶ 16; there is no similar problem here. There is simply nothing other than the Oversight Board's unjustified delay that prevented it from bringing avoidance actions against ERS Bondholders within the time period established by Congress.

### III. The Oversight Board's Efficiency Arguments Cannot Excuse Compliance With The Statutory Deadline.

21. The Oversight Board closes the Motion with a plea to efficiency, contending that the Court should equitably toll the statutory deadline in § 546(a) because it would be wasteful for the Board to have to file avoidance actions now, before the claim objections to the challenged bonds have been resolved. Motion ¶¶ 84–88. But statutory deadlines may not be disregarded simply because they seem inconvenient. The Supreme Court has expressly "characterized equitable tolling's two components as 'elements,' not merely factors of indeterminate or commensurable weight. And [it has] treated the two requirements as distinct elements in practice, too, rejecting requests for equitable tolling where a litigant failed to satisfy one without addressing whether he satisfied the other." *Menominee Indian Tribe*, 136 S. Ct. at 756. The law in the First Circuit is, of course, the same: "[t]he tolling proponent *must establish* that extraordinary circumstances beyond his control prevented a timely filing or that he was materially misled into

- 12 -

missing the deadline." *Ortega Candelaria*, 661 F.3d at 680 (emphasis added). The Oversight Board cannot escape § 546(a)'s binding force simply because it would be easier to give it more time.

22. As support for its argument for efficiency-based tolling, the Oversight Board cites only the bankruptcy court's order in *In re McKenzie*, No. 08-16378, 2011 WL 6140516, at *30 (Bankr. E.D. Tenn. Dec. 9, 2011); *see* Motion ¶ 84.[4] But this is misleading. The Sixth Circuit did *not* affirm that part of the bankruptcy court's order—it explained that having affirmed on another ground, it "need not decide whether the bankruptcy court's alternative holding" based on equitable tolling "constitutes reversible error." *In re McKenzie*, 737 F.3d 1034, 1042–43 (6th Cir. 2013). In any event, the law in the First Circuit today is clear: "[t]he tolling proponent *must establish* that extraordinary circumstances beyond his control prevented a timely filing or that he was materially misled into missing the deadline." *Ortega Candelaria*, 661 F.3d at 680 (emphasis added). Because the Board showed neither diligence nor extraordinary circumstances with respect to avoidance actions against ERS Bondholders, it cannot invoke equitable tolling.

23. Any doubt on that score is removed by Federal Rule of Bankruptcy Procedure 9006(b). That rule provides the Court with discretionary authority to extend deadlines that are imposed by "[the Bankruptcy] rules or by a notice given thereunder or by order of court." Fed. R. Bkcy. P. 9006(b). It does not, however, authorize the Court to extend statutory deadlines like § 546(b). *See, e.g.*, *In re Walnut Hill, Inc.*, No. 16-20960, 2018 WL 2672242, at *1 (Bankr. D. Conn. June 1, 2008) ("By its plain language, Rule 9006(b) only applies to deadlines set 'by these rules or by a notice given thereunder[] or by order of court.' Nowhere in the Rule does it mention

---

[4] The Board also cites *In re Infinity Bus. Group, Inc.*, No. 10-06335, 2011 WL 9375422, at *4 (Bankr. D.S.C. June 22, 2011), but that case involved a stay of pending litigation, not the extension of a statutory deadline based on equitable tolling.

statutory deadlines."); *In re the Colad Grp., Inc.*, 324 B.R. 208, 225 (Bankr. W.D.N.Y. 2005) ("Bankruptcy Rule 9006 allows an enlargement or reduction of many of the time limits in the Bankruptcy Rules. However, section 546(a) is a statute, not a rule."); *In re Damach, Inc.*, 235 B.R. 727, 731 (Bankr. D. Conn. 1999) (Rule 9006(b) does not "permit[] a court to extend a time limitation set by Congress in a statute; [it] permit[s] modification only of time limitations imposed by other rules or by the court"). These holdings are consistent with courts' repeated rulings that the similarly worded provision in the Federal Rules of Civil Procedure, Fed. R. Civ. P. 6(b), applies only to court-ordered or rule-imposed deadlines, not statutory deadlines. *See Sherrod v. Breitbart*, 720 F.3d 932, 938 (D.C. Cir. 2013) ("Every court to have considered this question has held that Rule 6(b) may be used only to extend time limits imposed by the court itself or by other Federal Rules, but not by statute." (quoting *Argentine Rep. v. Nat'l Grid PLC*, 637 F.3d 365, 368 (D.C. Cir. 2011) (per curiam))); *O'Malley v. Town of Egremont*, 453 F. Supp. 2d 240, 248 (D. Mass. 2006) (["T]he court may not utilize Rule 6(b) to extend the statute of limitations." (quoting *Parker v. Marcotte*, 975 F.Supp. 1266, 1269 (C.D. Cal. 1997))).

24. No doubt for that reason, the Board does not request an extension of time under Rule 9006(b). But the Board may not circumvent the Rule 9006(b)'s limitations on the Court's authority to grant discretionary extensions of time by resort to equitable tolling, where it does not meet either of the mandatory requirements for equitable tolling to apply.

## CONCLUSION

For the foregoing reasons, the Court should deny the Motion as to avoidance actions against ERS Bondholders.

In San Juan, Puerto Rico, today April 9, 2019.

By:

/s/ *Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

/s/ *Bruce Bennett*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Crown Managed Accounts for and on behalf of Crown/PW SP, Glendon Opportunities Fund, L.P., LMA SPC for and on behalf of Map 98 Segregated Portfolio, Mason Capital Master Fund, LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel), L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Huntington Investment Fund II, L.P., Oaktree Opportunities Fund X, L.P., Oaktree Opportunities Fund X (Parallel), L.P., Oaktree Opportunities Fund X (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Oceana Master Fund Ltd., Ocher Rose, L.L.C., Pentwater Merger Arbitrage Master Fund Ltd., PWCM Master Fund Ltd. and SV Credit, L.P.*

| | |
|---|---|
| */s/ Alicia I. Lavergne-Ramírez* | */s/ Jason Zakia* |
| José C. Sánchez-Castro | John K. Cunningham (*pro hac vice*) |
| USDC-PR 213312 | Glenn M. Kurtz (*pro hac vice*) |
| jsanchez@sanpir.com | WHITE & CASE LLP |
| | 1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez | New York, NY 10036 |
| USDC-PR 215112 | Tel. (212) 819-8200 |
| alavergne@sanpir.com | Fax (212) 354-8113 |
| | jcunningham@whitecase.com |
| Maraliz Vázquez-Marrero | gkurtz@whitecase.com |
| USDC-PR 225504 | |
| mvazquez@sanpir.com | Jason N. Zakia (*pro hac vice*) |
| | Cheryl T. Sloane (*pro hac vice*) |
| SÁNCHEZ PIRILLO LLC | WHITE & CASE LLP |
| 270 Muñoz Rivera Avenue, Suite 1110 | 200 S. Biscayne Blvd., Suite 4900 |
| San Juan, PR 00918 | Miami, FL 33131 |
| Tel. (787) 522-6776 | Tel. (305) 371-2700 |
| Fax: (787) 522-6777 | Fax (305) 358-5744 |
| | jzakia@whitecase.com |
| | csloane@whitecase.com |

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*