**Hearing Date:** June 12, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline:** May 28, 2019 at 4:00 p.m. (Atlantic Standard Time)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03566 (LTS) |

## MOTION OF THE PUERTO RICO FUNDS TO VACATE THE APPOINTMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TITLE III CASE

1

# <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF CONTENTS .................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................ ii

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 2

   A.   ERS ................................................................................................................... 2

   B.   The Issuance of ERS Bonds .......................................................................... 3

   C.   The Moratorium Act, the Passage of PROMESA, Commencement of the Title III Cases, and Appointment of the UCC and the Retiree Committee ................................ 4

   D.   The Post-Petition Legislation ......................................................................... 6

   E.   The UCC's Lack of ERS Creditors ............................................................... 6

ARGUMENT .................................................................................................................... 7

I.   THE COURT HAS THE AUTHORITY TO VACATE THE APPOINTMENT OF THE UCC WITH RESPECT TO THE ERS CASE ................................................................... 8

II.   VACATUR OF THE APPOINTMENT OF THE UCC IS APPROPRIATE FOR THE ERS CASE ..................................................................................................................... 9

      a.   The UCC has a Conflict of Interest Which Warrants Vacating its Appointment in the ERS Case ................................................................ 9

      b.   None of the Creditors on the UCC is a Direct Creditor of ERS .......................... 12

      c.   The UCC is Duplicative and Unnecessary Because ERS's Unsecured Creditors are Adequately Represented by the Retiree Committee ...................... 13

AMERICAS 99623571

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Adelphia Bus. Sols., Inc. v. Abnos*,
    482 F.3d 602 (2d Cir. 2007) .................................................................................................8

*In re City of Detroit*,
    519 B.R. 673 (Bankr. E.D. Mich. 2014) ...............................................................................9

*In re Fas Mart Convenience Stores, Inc.*,
    265 B.R. 427 (Bankr. E.D. Va. 2001) ..........................................................................10, 12

*In re Garden Ridge Corp.*,
    No. 04-10324 (DDS), 2005 Bankr. LEXIS 323 (Bankr. D. Del. Mar. 2, 2005) ...............11, 12

*In re Johns-Manville Corp.*,
    26 B.R. 919 (Bankr. S.D.N.Y. 1983) ..................................................................................10

*In re Martin*,
    817 F.2d 175 (1st Cir. 1987) ...............................................................................................11

*In re Microboard Processing, Inc.*,
    95 B.R. 283 (Bankr. D. Conn. 1989) ...................................................................................10

*In re Pac. Ave., LLC*,
    467 B.R. 868 (Bankr. W.D.N.C. 2012) .............................................................................9, 13

*In re Pierce*,
    237 B.R. 748 (Bankr. E.D. Cal. 1999) .................................................................................10

*In re SPM Mfg. Corp.*,
    984 F.2d 1305 (1st Cir. 1993) .............................................................................................10

*In re Venturelink Holdings, Inc.*,
    299 B.R. 420 (Bankr. N.D. Tex. 2003) ..............................................................................9, 11

*Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of
    Enron Corp.*,
    2003 U.S. Dist. LEXIS 18149 (S.D.N.Y. Oct. 9, 2003) .......................................................11

*Monarch Life Ins. Co. v. Ropes & Gray*,
    65 F.3d 973 (1st Cir. 1995) ...................................................................................................8

### STATUTES AND OTHER AUTHORITY

3 L.P.R.A. § 761 ........................................................................................................................2

3 L.P.R.A. § 775 ...................................................................................................................3

11 U.S.C. § 105(a) ...........................................................................................................8, 9

11 U.S.C. § 105(d)(2) ..........................................................................................................9

11 U.S.C. § 1102 .............................................................................................................5, 9

11 U.S.C. § 1102(a)(4)..........................................................................................................9

11 U.S.C. § 1102(b) ...........................................................................................................13

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Act 21-
      2016..............................................................................................................................4

Puerto Rico Oversight, Management, and Economic Stability Act...................................4

## OTHER AUTHORITIES

Federal Rule of Bankruptcy Procedure 7024.....................................................................5

Federal Rule of Bankruptcy Procedure Rule 2020 ...........................................................1

H.R. 5278, 114th.................................................................................................................4

Joint Resolution for Other Allocations for Fiscal Year 2017-201 ....................................6

*Order Granting the Official Committee of Retired Employees Limited
      Intervention*, No. 17-00219-LTS, ECF No. 38 .........................................................5

The Puerto Rico Funds,[1] all of whom are secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), submit this motion (the "Motion"), pursuant to sections 105 and 1102 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 2020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), to vacate the appointment of the Official Committee of Unsecured Creditors (the "UCC") for the ERS Title III case [ECF No. 1171] (Amended Notice of Appointment of Official Committee of Unsecured Creditors).  In support of the relief requested in the Motion, the Puerto Rico Funds respectfully state as follows:

## PRELIMINARY STATEMENT

1.    Before the Title III cases were filed, the Commonwealth provided the majority of employer contributions into ERS to fund its retirement and pension programs for Puerto Rico certain public employees.  Beginning in 2017, the roles were effectively reversed.  The Post-Petition Legislation diverted future income that would otherwise go to ERS to the Commonwealth. The Commonwealth began raiding ERS through its implementation of certain Post-Petition Legislation (defined below), requiring ERS to liquidate its assets and transfer the proceeds to the Commonwealth.

2.    The UCC, which the United States Trustee ("U.S. Trustee") appointed to represent

---

[1]    The Puerto Rico Funds include: Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Inc., Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

1

the interests of all unsecured creditors for each PROMESA Debtor (except COFINA), is hopelessly conflicted with regard to actions it purports to take on behalf of unsecured creditors of ERS.  By design, the Post-Petition Legislation effectively turned the Commonwealth into ERS's creditor.  The UCC's members are almost exclusively composed of unsecured creditors of the Commonwealth, and none are creditors of ERS.  This creates a real and impermissible conflict of interest because the UCC cannot properly represent both ERS creditors and Commonwealth creditors at the same time—as the assets and future income ERS would use to pay its creditors were stripped and sent to the Commonwealth, which will use those same assets to pay its own creditors.  As such, each member of the UCC has a significant conflict of interest with the unsecured creditors of ERS, whose interests the UCC is charged to represent.

3.      To make matters worse, the UCC does not adequately represent ERS unsecured creditors because not a single UCC member filed a claim against ERS. Moreover, the ERS unsecured creditors, consisting of a significant amount of retirees and pensioners, already have adequate representation through the statutory Retiree Committee (defined below), making the UCC duplicative and unnecessary for the ERS case.  For these reasons and as set forth herein, the Court should vacate the appointment of the UCC as the creditors' committee in the ERS case.

### FACTUAL BACKGROUND

**A.      ERS**

4.      ERS is a trust created by Act No. 447 of May 15, 1951 of the Legislature of the Commonwealth (the "ERS Enabling Act") to provide pension and other benefits to officers and employees of the Commonwealth, members and employees of the Legislature, and officers and employees of certain public corporations and municipalities of the Commonwealth. 3 L.P.R.A. § 761.   ERS was established as an independent, self-governing entity separate from the

Commonwealth and from the Commonwealth's agencies and instrumentalities.  3 L.P.R.A. § 775.

5.      Prior to the time that the Title III petition for ERS was filed (as explained below), ERS was funded by employer contributions, employee contributions, and investment earnings on its undistributed funds.  Employer contributions were the largest component of this income stream, and they constitute a legal asset of ERS.  ERS receives employer contributions both from the Commonwealth and from various municipalities within, and public corporations of, the Commonwealth.  The Commonwealth is responsible for the majority (approximately 59 percent) of the employer contributions ERS receives, while municipalities and public corporations account for the rest.  As of the commencement of the ERS Title III case, the Commonwealth did not hold or own any interest in employer contributions owed by municipalities or public corporations to ERS.

6.      ERS was been historically underfunded as a result of the Commonwealth's enactment of politically opportunistic benefit increases and its failure to address growing pension problems.  The Commonwealth's failure to make the payments required by law forced ERS to exhaust its assets in order to make pension payments to retirees.

**B.      The Issuance of ERS Bonds**

7.      In 2008, ERS sought to address its financial problems by issuing pension-funding bonds (the "ERS Bonds").  Most of the ERS Bonds were sold to individual residents of the Commonwealth and to local businesses.  This financing led to an infusion of $3 billion in much-needed cash into ERS.  The Puerto Rico Funds are beneficial holders of ERS Bonds.

8.      The foundation of the ERS bond transaction was an extensive security package necessary to protect the investment made by holders of ERS Bonds.  Without this security package, it would have been impossible for ERS to sell the ERS Bonds in the first place.  The ERS

bondholders were granted collateral that included, among other things, all employer contributions

from Puerto Rico government employers (including municipal employers, public corporations and

the central government of Puerto Rico) and ERS's legal right to receive those contributions.  The

collateral pledged to support the ERS Bonds was sufficient to service the interest for the life of the

bond issue and to repay the principal amount of the ERS Bonds in full at maturity.

### C.   The Moratorium Act, the Passage of PROMESA, Commencement of the Title III Cases, and Appointment of the UCC and the Retiree Committee

9.     On April 6, 2016, Governor García Padilla signed the Puerto Rico Emergency

Moratorium and Financial Rehabilitation Act, Act 21-2016 (the "Moratorium Act").  On June 30,

2016, Governor García Padilla issued EO-2016-31 pursuant to Sections 201 and 203 of the

Moratorium Act. EO-2016-31 declared the ERS "to be in a state of emergency" and announced

the commencement of an emergency period for the ERS as of the date of the order.  EO-2016-31

also suspended the Commonwealth's obligations to make employer contributions to ERS up to the

amount of debt service payable by ERS during fiscal year 2016-2017.

10.     On June 30, 2016, Congress passed the Puerto Rico Oversight, Management, and

Economic Stability Act (commonly referred to as "PROMESA").  The Federal Oversight and

Management Board (the "Oversight Board") was appointed under PROMESA.  The stated purpose

of PROMESA was to "establish an Oversight Board to assist the Government of Puerto Rico,

including instrumentalities, in managing its public finances, and for other purposes."  H.R. 5278,

114th Cong. (2016) (preamble).

11.     Title III of PROMESA authorized the Oversight Board to file a petition to

restructure the debts of a government instrumentality in a court-supervised adjustment process

similar to Chapter 9 of the Bankruptcy Code.

12.     On May 3, 2017, the Oversight Board approved and certified the filing of a Title

III petition for the Commonwealth.

13.     On May 21, 2017, the Oversight Board approved and certified the filing of a separate Title III petition for ERS.

14.     On June 15, 2017, the U.S. Trustee appointed the UCC for the Commonwealth's Title III case pursuant to section 1102 of the Bankruptcy Code.  [ECF No. 338].  On August 25, 2017, the U.S. Trustee amended that appointment to clarify that the UCC would serve as the official unsecured creditor committee for the Commonwealth, HTA, PREPA, and ERS, but not for COFINA. [ECF No. 1171].

15.     On June 15, 2017, the U.S. Trustee appointed certain persons to the Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "Retiree Committee") pursuant to section 1102 of the Bankruptcy Code. [ECF No. 340]. The Retiree Committee has intervened in two adversary proceedings involving the obligations of ERS. *See* Case Nos. 17-00213-LTS, 17-00219-LTS. In the Court's order allowing limited intervention, it stated that the Retiree Committee had a "unique role in protecting the interests of pension holders" in the adversary proceeding. *See Order Granting the Official Committee of Retired Employees Limited Intervention*, No. 17-00219-LTS, ECF No. 38, at 7-8.  In pleadings, the Retiree Committee states that its members "represent[] the interests of approximately 160,000 retired employees of the Commonwealth and various governmental bodies and their surviving beneficiaries." *See Motion of Official Committee of Retired Employees of the Commonwealth of Puerto Rico for Leave to Intervene Under Bankruptcy Rule 7024*, Case No. 17-00219-LTS, ECF. No. 14, ¶10. Moreover, "[a]pproximately 100,000 of those retirees receive their pensions from ERS." *Id.*

### D.    The Post-Petition Legislation

16.    Approximately one month after the Title III petition for ERS was filed, the Puerto Rico legislature passed, and the Oversight Board adopted, the *Joint Resolution for Other Allocations for Fiscal Year 2017-2018* ("Joint Resolution 188").  Joint Resolution 188 requires ERS to liquidate its assets for distribution to the Commonwealth General Fund, and directs participating employers to make future employer pension contributions to the Commonwealth General Fund, rather than ERS.

17.    One month later, Puerto Rico enacted the *Law to Guarantee Payment to Our Pensioners and Establish a New Plan for Defined Contributions for Public Servants* ("Act 106," together with Joint Resolution 188, the "Post-Petition Legislation") to establish procedures for increasing employer contributions to make payments equal to the obligations to employees as mandated by the Fiscal Plan for Puerto Rico and established in Joint Resolution 188.

18.    No consideration was provided to ERS or the holders of ERS bonds in exchange for the collateral diverted away from ERS to the Commonwealth's General Fund.  The purpose and effect of the Post-Petition Legislation was to strip ERS of its assets and to divert ERS's employer contributions away from the reach of ERS creditors and instead to satisfy the debt of the Commonwealth's creditors.

### E.    The UCC's Lack of ERS Creditors

19.    In its most recent Rule 2019 motion, the UCC listed its current membership and described each member's respective claims against the Debtors.  [ECF No. 4028].  None of the seven members of the UCC assert a direct claim against ERS in their descriptions of their claims. *Id.*  Rather, as provided below, each member of the UCC claims to be creditors of a Debtor other than ERS:

| Creditor | Claim |
|---|---|
| American Federation of Teachers | Commonwealth (Claim No. 108230) |
| Baxter Sales and Distribution Puerto Rico Corp. | Commonwealth (Claim No. 11825) |
| Drivetrain, LLC, as the Creditors' Trustee for Doral Financial Corporation | Commonwealth (Claim No. 370, 380) |
| Genesis Security Services, Inc. | Commonwealth (Claim No. 129777); PREPA (Claim No. 149209); HTA (Claim No. 98027) |
| Service Employees International Union | Commonwealth (Claim No. 21351) |
| Tradewinds Energy Barceloneta, LLC | PREPA (Claim No. 8632) |
| The Unitech Engineering Group, S.E. | Commonwealth (Claim No. 39388) |

20.     The Puerto Rico Funds and other ERS secured creditor have communicated with the U.S. Trustee, explaining the conflict the UCC has with regard to ERS.  On September 13, 2017, a group of ERS secured creditors sent a letter to the U.S. Trustee expressing concern that the UCC was irreconcilably conflicted and that the UCC's members had no economic incentive to maximize value for the ERS creditors.  A copy of the letter is attached hereto as Exhibit A.  Representatives of the Puerto Rico Funds also had a call with the U.S. Trustee's office in November 2017 to discuss the same issues.  Nonetheless, the U.S. Trustee has not indicated it would consider disbanding the UCC notwithstanding the conflicts of the members of the UCC in the ERS case.

## ARGUMENT

21.     The Court should exercise its authority to vacate the appointment of the UCC as the creditors' committee in the ERS case for three principal reasons.  First, the UCC (which consists almost entirely of Commonwealth creditors) has a real and impermissible conflict of interest.  It cannot properly represent both the ERS creditors and Commonwealth creditors at the same time because ERS's assets and future income it would use to pay its creditors were stripped

pursuant to the Post-Petition Legislation and sent to the Commonwealth, which will use those assets to pay its own creditors.  Thus, the UCC cannot be reasonably expected to act in the interest of the ERS creditors while also looking out for the interests of the Commonwealth creditors.  Second, none of the creditors on the UCC have claims against ERS.  Third, the UCC is duplicative and unnecessary as the ERS creditors interests are already adequately represented by the Retiree Committee.

## I.      THE COURT HAS THE AUTHORITY TO VACATE THE APPOINTMENT OF THE UCC WITH RESPECT TO THE ERS CASE

22.     This Court has the power to vacate its appointment of the UCC in appropriate circumstances.  Specifically, sections 105 and 1102 of the Bankruptcy Code authorize this Court to vacate the appointment of the UCC in the ERS case due to its conflict of interest and lack of ERS creditor representation.

23.     Section 105(a) of the Bankruptcy Code provides that the "court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Under section 105, bankruptcy courts have broad equitable power to issue orders within the parameters of the Bankruptcy Code.  *Monarch Life Ins. Co. v. Ropes & Gray*, 65 F.3d 973, 984 (1st Cir. 1995); *see also Adelphia Bus. Sols., Inc. v. Abnos*, 482 F.3d 602, 609 (2d Cir. 2007) ("Section 105(a) grants broad equitable power to the bankruptcy courts to carry out the provisions of the Bankruptcy Code so long as that power is exercised within the confines of the Bankruptcy Code."). For example, in the City of Detroit chapter 9 case, the bankruptcy court disbanded the creditors' committee utilizing section 105(a) of the Bankruptcy Code. *In re City of Detroit*, 519 B.R. 673, 679 n.1 (Bankr. E.D. Mich. 2014).

24.     Additionally, section 105(d) of the Bankruptcy Code authorizes the Court to disband or restrict the authority of the UCC with regard to the ERS case. Section 105(d) of the

Bankruptcy Code provides that the bankruptcy court may "issue an order … prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically." 11 U.S.C. § 105(d)(2); *In re Pac. Ave., LLC*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012) (disbanding the creditors' committee pursuant to section 105(d) of the Bankruptcy Code).

25.     In *Pacific Ave.*, the bankruptcy court disbanded the creditors' committee after assessing the following factors: (1) whether the committee is necessary to protect its constituency; (2) whether the administrative expense of the Committee is justified; and (3) if the committee is adding value to the case.  467 B.R. at 870. The court in *City of Detroit* applied a similar standard. 519 B.R. 680-81 (considering the value and cost of the creditors' committee to the case).

26.     Further, section 1102(a)(4) provides that, after notice and hearing, "the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders." 11 U.S.C. § 1102(a)(4).[2]

## II.     VACATUR OF THE APPOINTMENT OF THE UCC IS APPROPRIATE FOR THE ERS CASE

### a.     The UCC has a Conflict of Interest Which Warrants Vacating its Appointment in the ERS Case

27.     The Court should vacate the appointment of the UCC as creditors' committee in the ERS case because the UCC and unsecured creditors of ERS have interests which impermissibly conflict. The UCC and each of its members have a fiduciary duty to all creditors represented by

---

[2]     Prior to 2005, the U.S. Trustee had administrative control in determining whether a committee member should be removed due to conflict of interest. *See In re Venturelink Holdings, Inc.*, 299 B.R. 420, 422 (Bankr. N.D. Tex. 2003) ("Questions concerning committee membership, including removal of a committee member for a conflict of interest, must, in the first instance, be directed to the United States Trustee.").  In 2005, Congress amended section 1102 by adding subsection (a)(4), which allows bankruptcy courts, after notice and hearing, to order the U.S. Trustee to change the membership of the UCC in order to ensure adequate representation.  11 U.S.C. § 1102(a)(4).

the committee. *See In re SPM Mfg. Corp.*, 984 F.2d 1305, 1315 (1st Cir. 1993) ("the committee is a fiduciary for those whom it represents, not for the debtor or the estate generally."); *In re Pierce*, 237 B.R. 748, 758 (Bankr. E.D. Cal. 1999) ("Among the duties assumed by Committee members are 'fiduciary duties of undivided loyalty and impartial service to all creditors.'"). As such, members of the UCC who possess a conflict of interest giving rise to a breach of the fiduciary duty cannot serve on the statutory committee. *See In re Fas Mart Convenience Stores, Inc.*, 265 B.R. 427, 432–33 (Bankr. E.D. Va. 2001) (finding trustee's decision to appoint to the unsecured creditors committee a creditor with a conflict of interest with other unsecured creditors was an abuse of discretion); *In re Johns-Manville Corp.*, 26 B.R. 919, 925 (Bankr. S.D.N.Y. 1983) ("Conflicts of interest on the part of representative persons or committees are [] not [to] be tolerated.").

28.     Courts have found that removal may be warranted where specific evidence is shown "that a committee member has breached or is likely to breach its fiduciary duty to creditors represented by the committee or *the member has an impermissible conflict with the others . . . .*" *In re Fas Mart*, 265 B.R. at 432 (emphasis added); *In re Microboard Processing, Inc.*, 95 B.R. 283, 285 (Bankr. D. Conn. 1989). Moreover, the mere appearance of a breach of fiduciary duty may justify removal of creditors on the UCC. *In re Venturelink Holdings, Inc.*, 299 B.R. 420, 423 (Bankr. N.D. Tex. 2003) ("The court adds that the appearance of a breach of that fiduciary duty should likewise mandate the removal. The bankruptcy process must both be fair and appear fair.").

29.     In assessing conflicts of interest within committees, courts look to analogous conflicts of interest (e.g., conflicted trustees or conflicted professionals) to guide the analysis. *See Mirant Ams. Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.*, 2003 U.S. Dist. LEXIS 18149, at *19 (S.D.N.Y. Oct. 9, 2003) (citing *In re BH&P, Inc.*, 949 F.2d 1300,

1310, 1313 (3rd Cir. 1991) and *In re Martin*, 817 F.2d 175, 181 (1st Cir. 1987)). In *Martin*, the

First Circuit promoted a fact-intensive, case-by-case approach to assessing conflicts of interest,

assessing "the nature and extent of the conflict, along with the likelihood that a potential conflict

would turn into an actual one." 817 F.2d at 182. The Court continued:

> An effort should be made to measure the influence the putative conflict may have
> in subsequent decisionmaking. Perceptions are important; how the matter likely
> appears to creditors and to other parties in legitimate interest should be taken into
> account. There are other salient factors as well: whether the [conflict] threatens to
> hinder or to delay the effectuation of a plan, whether it is (or could be perceived as)
> an impediment to reorganization, and whether the fundamental fairness of the
> proceedings might be unduly jeopardized (either by the actuality of the arrangement
> or by the reasonable public perception of it).

*Id.*

30.     As in *Martin*, this Court should consider the "influence the putative conflict may

have in subsequent decisionmaking" of the UCC in its actions regarding ERS. *Id.* Here, the UCC

has a real and impermissible conflict of interest with the unsecured creditors of ERS because none

of the members of the UCC even hold claims against ERS. As such, the members of the UCC

have no monetary incentive to maximize value for unsecured creditors of ERS.

31.     Moreover, the adoption of the Post-Petition Legislation creates an inherent conflict

of interest between the UCC and creditors of ERS for at least two reasons. <u>First</u>, the legislation

puts ERS creditors at a disadvantage as against Commonwealth creditors because it requires ERS

to liquidate its assets for distribution to the Commonwealth General Fund, and directs participating

employers to make future employer contributions to the Commonwealth General Fund, rather than

ERS. Indeed, the purpose of the Post-Petition Legislation is to strip ERS of its assets and to divert

ERS's employer contributions away from the reach of ERS's creditors. Stated simply, the

legislation diverts ERS's assets to the Commonwealth and therefore puts creditors of ERS at a

disadvantage as against creditors of the Commonwealth. *See In re Garden Ridge Corp.*, No. 04-

10324 (DDS), 2005 Bankr. LEXIS 323, at *12 (Bankr. D. Del. Mar. 2, 2005) ("Adequate representation is lacking . . . when these conflicts prevent an official committee from upholding its fiduciary obligations to all general unsecured creditors.").

32.    <u>Second</u>, the Post-Petition Legislation essentially flips the debtor-creditor relationship between ERS and the Commonwealth on its head; previously, the Commonwealth paid the majority of the employer contributions to ERS, but now ERS is obligated to pay considerable sums to the Commonwealth.  No reasonable person would expect the UCC, whose members are not even creditors of ERS, to act fairly on behalf of ERS' unsecured creditors.  The lack of ERS creditors in the UCC jeopardizes the fundamental fairness of any proceedings instituted by the UCC in the ERS case.  The UCC's actions in the ERS case could—and should— be construed as an attack on the ERS estate for the benefit of the other Debtors' creditors, rather than for the benefit of the creditors of ERS.  As such, the members of the UCC have an "impermissible conflict" with the unsecured creditors of ERS.  *See In re Fas Mart*, 265 B.R. at 432.

### b.    None of the Creditors on the UCC is a Direct Creditor of ERS

33.    No member of the UCC holds claims against ERS.  As such, those members have no monetary incentive to maximize value for unsecured creditors of ERS. Pursuant to 11 U.S.C. § 1102(b), a committee "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee," but here, none of the current members of the UCC is a creditor of ERS.  The UCC represents the unsecured creditors of each of the Debtors, other than COFINA.  Retirees and pensioners are an extremely significant group of creditors in ERS, yet no retiree or pensioner is a member of the UCC.  Thus, as appointed in its current form, the UCC is purportedly representing a massive group of creditors while none

of the members of the UCC share the same financial interests as the retiree creditors that they purport to represent.

### c.   The UCC is Duplicative and Unnecessary Because ERS's Unsecured Creditors are Adequately Represented by the Retiree Committee

34.     The Retiree Committee appointed by the U.S. Trustee adequately represents the ERS's unsecured creditors.  Early in the case, an ad hoc group of retirees requested and obtained the appointment of the Retiree Committee to represent their interests. [ECF Nos. 8, 340]. Indeed, the Retiree Committee represents over 160,000 retirees, of which 100,000 are retirees of ERS. Thus, the interests of ERS's unsecured creditors are already adequately represented in this case by the Retiree Committee, and no other committee is necessary.  *See In re Pac. Ave., LLC*, 467 B.R. at 870 (ordering disbandment of creditors' committee because it was not necessary where chapter 11 trustee was "capable of and required to adequately represent the interests of unsecured creditors.").

35.     Moreover, ERS is currently footing part of the bill for the UCC's activities, which are shared equally among the PROMESA Debtors. *See Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, [ECF No. 1150], *First Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*, [ECF No. 1715], and *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals*.  [ECF No. 3269]. Because ERS is already adequately represented by the Retiree Committee and the UCC is conflicted in its actions relating to ERS creditors, ERS should not be required to pay the professional fees of the UCC.

### CONCLUSION

36.     The Court should vacate the appointment of the UCC in the ERS case. The Commonwealth has led a years-long campaign to raid the assets of ERS to pay its own creditors.

The UCC, tasked with maximizing value for all creditors, cannot properly fulfill its fiduciary role to maximize value for creditors of both the raider and the raided. The fact that the UCC has no ERS creditors in its membership only exacerbates the problem, as there is no financial incentive for the UCC to pursue ERS creditor concerns. Furthermore, the UCC is redundant in the ERS case because ERS creditors consist in significant part of retirees and pensioners who already have adequate representation through the statutory Retiree Committee.

WHEREFORE, the Puerto Rico Funds respectfully request that the Court: (a) enter an order substantially in the form attached hereto as Exhibit B, granting the relief requested herein; and (b) grant such other and further relief as the Court may deem proper.

*[Remainder of Page Intentionally Left Blank]*

In San Juan, Puerto Rico, today April 9, 2019.

By:

| | |
|---|---|
| _/s/ Alicia I. Lavergne-Ramírez___ | /s/ _Jason N. Zakia_____ |
| José C. Sánchez-Castro | Glenn M. Kurtz (_pro hac vice_) |
| USDC-PR 213312 | John K. Cunningham (_pro hac vice_) |
| janchez@sanpir.com | WHITE & CASE LLP |
| | 1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez | New York, NY 10036 |
| USDC-PR 215112 | Tel. (212) 819-8200 |
| alavergne@sanpir.com | Fax (212) 354-8113 |
| | gkurtz@whitecase.com |
| Maraliz Vázquez-Marrero | jcunningham@whitecase.com |
| USDC-PR 225504 | |
| mvazquez@sanpir.com | Jason N. Zakia (_pro hac vice_) |
| | Cheryl T. Sloane (_pro hac vice_) |
| SÁNCHEZ PIRILLO LLC | WHITE & CASE LLP |
| 270 Muñoz Rivera Avenue, Suite 1110 | 200 S. Biscayne Blvd., Suite 4900 |
| San Juan, PR 00918 | Miami, FL 33131 |
| Tel. (787) 522-6776 | Tel. (305) 371-2700 |
| Fax: (787) 522-6777 | Fax (305) 358-5744 |
| | jzakia@whitecase.com |

_Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund
II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund,
Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto
Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA &
U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico
Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico
Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico
Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico
Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc.,
Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc._

# EXHIBIT A

*September 13, 2017 Letter to the U.S. Trustee*

**WHITE & CASE**

White & Case LLP
1221 Avenue of the Americas
New York, New York 10020-1095

**JONES DAY**

250 VESEY STREET • NEW YORK, NY 10281.1047

September 13, 2017

U.S. Department of Justice
Office of the United States Trustee
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, Puerto Rico 00901-1922
Attn: Monsita Lecaroz-Arribas

Re:  *In re: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR
PUERTO RICO, as representative of COMMONWEALTH OF PUERTO RICO,
et al., No. 17 BK 3283-LTS*

Dear Ms. Lecaroz-Arribas:

On behalf of certain secured creditors of the Employees Retirement System of the
Government of the Commonwealth of Puerto Rico (the "ERS"), we write with respect to the
recent *Amended Notice Of Appointment Of Official Committee Of Unsecured Creditors* (the
"Appointment Notice") filed in the above referenced cases.  Specifically, the Appointment
Notice provides that the Official Committee of Unsecured Creditors appointed for the
Commonwealth of Puerto Rico shall now serve as the Committee of Unsecured Creditors' for the
ERS.  We respectfully submit that it is a mistake to appoint the Commonwealth Creditors'
Committee to serve as the ERS Creditors' Committee.  Here is why:

(1)  ***The Commonwealth and ERS are fundamentally adverse to one another.***

While in many cases some level of adversity exists among related debtors, here the
Commonwealth's interests and the ERS's interests are so fundamentally opposed to one another
that a shared committee is inappropriate.  Pursuant to the *Concurrent Resolution 188 of the
House of Representatives of the Government of Puerto Rico*, the Commonwealth and the
Oversight Board have purported to (a) order the sale of the ERS's assets and transfer the
resulting proceeds to the Commonwealth's general fund, (b) eliminate the employer
contributions owing to the ERS (and pledged to the ERS's secured creditors), (c) cause the
central government, public corporation and municipalities to pay employer contributions to
Puerto Rico's general fund rather than the ERS, and (d) have the Commonwealth assume the

September 13, 2017
Page 2

obligations of the ERS to pay pensioners.[1]  Put differently, the Commonwealth and the Oversight Board are seeking to take all of ERS's assets and assume ERS's pension obligations.

In addition to purportedly eliminating all revenue and dissipating all assets of the ERS, recently enacted Act 106-2017 provides that that the Board of Trustees for ERS will be dissolved by year end,  *id.* § 5.1(b), that a new retirement board will be constituted that has the authority to dispose of all of ERS's property and equipment, *id.* , §§ 4.1 and 5.3, and that all of ERS's employees will be terminated and transferred to other posts, *id.* § 5.2.   The Commonwealth and the Oversight Board, in short, have mandated that ERS be stripped of its assets and dismantled. The Commonwealth and the ERS are fundamentally adverse to one another and therefore we submit that a shared committee would be irreconcilably conflicted.

(2)    ***The Make-Up of the Committee Does Not Represent ERS Creditors.***

Much like the ERS secured creditors, unsecured creditors of the ERS (if any exist) should be focused on maximizing value for the ERS.  But the Commonwealth Creditors' Committee is, as its fiduciary duties dictate, focused on maximizing value for its own debtor, the Commonwealth.  In this case, these two duties cannot be reconciled. Members of the Commonwealth Creditors' Committee cannot adequately represent ERS creditors.

By way of illustration, as noted above, the Commonwealth and the Oversight Board have ordered the transfer of all of ERS's assets to the Commonwealth.   The Commonwealth Creditors' Committee obviously will support these efforts, while any unconflicted fiduciary of ERS creditors should oppose such action.  This demonstrates that constituting this new, shared committee will put the members of the committee and their advisors in an untenable position of conflicting duties.  Theoretically, the committee could remain neutral in inter-debtor actions, but that serves neither debtor.

In addition, if the committee were to refrain from involving itself in inter-debtor issues, there would be nothing left for it to do.  By statute, the ERS is now in the process of being completely dismantled by year end.  The Commonwealth and Oversight Board's actions with respect to the ERS are the principal, if not sole, issues in the ERS Title III case.  Any committee appointed in the ERS Title III case will have to take a position on these critical points.  But the conflicting duties arising from this inter-debtor conflict are too profound to be overcome here.

Moreover, pursuant to 11 U.S.C. § 1102(b), a committee "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee," but none of the current members of the Commonwealth

---

[1] An unofficial English translation of Resolution 188 is available at https://juntasupervision.pr.gov/wp-content/uploads/wpfd/50/5983ddf3eed0e.pdf (last visited September 13, 2017).

September 13, 2017
Page 3

Creditors' Committee is a creditor of ERS.   There are two unions on the Commonwealth
Creditors' Committee, only one of which represents pensioners that include pensioners at ERS.
Yet, the Commonwealth has promised to use ERS's plundered assets to pay pensioners 100% of
their benefits.   Therefore, that committee member, too, has no economic incentive to maximize
value for ERS creditors generally.

   (3)     ***Appointment Process***

The United States trustee determined not to appoint a creditors' committee for the
COFINA Title III case.  We can only guess that the United States trustee determined that the
conflict between COFINA and the Commonwealth was too severe for a shared committee or that
COFINA had only *de minimis* unsecured creditors or no unsecured creditors were willing to
serve.  Indeed, the COFINA "top 20" list revealed less than $4 million of unsecured claims.
However, the ERS's "top 20" list reveals less than $500,000 in unsecured creditors.   Further, it
is entirely possible that some or all of the ERS's listed creditors have since been paid or satisfied
in full since the filing.

   (4)     ***Harm to ERS Creditors***

Prior to the Appointment Notice, the United States trustee had appointed a committee of
creditors that he determined adequately represented the Commonwealth's interests.   But when
that committee was appointed to serve ERS creditors' interests as well, no new members were
appointed that held (or even purported to represent) ERS claims.  In light of the Commonwealth
and the ERS's fundamentally opposed positions, we respectfully submit that a committee that
represents the Commonwealth's interests cannot represent the ERS creditors' interests as well.

The appointment of a committee to represent ERS creditors that cannot in fact adequately
represent such creditors is detrimental for obvious reasons.  In addition to implicating issues of
standing and issues of cost, a conflicted committee is not only harmful to the case, but the overall
bankruptcy/Title III process as a whole.  We respectfully request that the United States trustee
correct the Appointment Notice to exclude ERS (as he did with respect to COFINA).  There may
be an appropriate time in the future for an ERS creditors' committee, but in no event is the
appropriate committee the Commonwealth Creditors' Committee.

September 13, 2017
Page 4


We would welcome the opportunity to speak with you further about correcting the Appointment Notice so that the Commonwealth Creditors' Committee is not appointed as the ERS Creditors' Committee.   Thank you for your attention to this matter.

Very truly yours,

*/s/ Bruce Bennett*                    */s/ John K. Cunningham*

Bruce Bennett                    John K. Cunningham

# **EXHIBIT B**

### *Proposed Order*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | ) |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | ) |
| | ) |
| Debtors.[1] | ) |
| | ) |
| | X |
| | ) |
| In re: | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) |
| MANAGEMENT BOARD FOR PUERTO RICO | ) |
| | ) |
| as representative of | ) |
| | ) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) |
| GOVERNMENT OF THE COMMONWEALTH OF | ) |
| PUERTO RICO, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| | x |

PROMESA
Title III

Case No. 3:17-bk-03283 (LTS)

PROMESA
Title III

Case No. 3:17-bk-03566 (LTS)

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (iv) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808).

**ORDER GRANTING THE MOTION OF THE PUERTO RICO FUNDS TO
VACATE THE APPOINTMENT OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS IN THE EMPLOYEES RETIREMENT SYSTEM OF THE
GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TITLE III CASE**

Upon consideration of the *Motion of the Puerto Rico Funds*[2] *to Vacate the Appointment of the Official Committee of Unsecured Creditors in the Employees Retirement System of the Government of the Commonwealth of Puerto Rico Title III Case*, dated April 9, 2019 (the "Motion")[3], and it appearing (i) that the Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); (ii) that venue of this proceeding and the Motion in this District is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a); and (iii) that notice of the Motion was adequate and proper under the circumstances and that no further or other notice need be given; and after due deliberation and sufficient cause appearing therefore, it is hereby ORDERED that:

1. The Motion is GRANTED as set forth herein.

2. The *Amended Notice of Appointment of Official Committee of Unsecured Creditors* [ECF No. 1171] is vacated with respect to ERS.  The UCC will no longer serve as the official committee of unsecured creditors in the ERS Title III case.

3. The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated _____

---

[2] The Puerto Rico Funds include the following: Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund II, Inc., Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

[3] Capitalized terms not otherwise defined herein shall have the means ascribed to them in the Motion.

San Juan, Puerto Rico

_____
UNITED STATES DISTRICT JUDGE