**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

-------------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

Debtors.[1]

-------------------------------------------------------------------x

PROMESA

Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**Re: ECF No. 6128**

---

[1] The debtors in these Title III cases, along with each debtor's respective Title III case number and the last four (4) digits of each debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

107153754v8

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND ................................................................................................................2

OBJECTION.....................................................................................................................5

    I.     The GO Bondholders are Adequately Represented Without a Statutory
Committee..........................................................................................................5

          A.    The GO Bondholders are More than Able to Participate in the
Commonwealth's Title III Case..................................................6

          B.    Granting the Motion will Result in Significant Cost and Delay at a
Critical Point in the Commonwealth's Title III Case .................9

          C.    Appointing GO Bondholders to the Committee Would Disrupt the
UCC's Ability to Function.........................................................11

          D.    The Motion Fails to Identify Any Tasks the Additional Committee
Needs to Perform ......................................................................11

    II.    Even if the Court Determines the GO Bondholders are not Adequately
Represented, the Court Should Deny the Motion in its Discretion......................12

    III.   Hein Lacks Prudential Standing to Argue on Behalf of Non-Attorney, Pro
Se Parties...........................................................................................................14

CERTIFICATE OF SERVICE ...........................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*In re Beker Indus. Corp.*,
  55 B.R. 945 (Bankr. S.D.N.Y. 1985) ..........................................................................5

*In re Dana Corp.*,
  344 B.R. 35 (Bankr. S.D.N.Y. 2006) ......................................................................6, 9

*In re Dewey & LeBoeuf LLP*,
  No. 12-12321 MG, 2012 WL 5985325 (Bankr. S.D.N.Y. Nov. 29, 2012) .............12

*In re Dow Corning*,
  194 B.R. 121 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258
  (E.D. Mich. 1997) ..................................................................................................13

*In re Eastman Kodak Co.*,
  No. 12-10202 (ALG), 2013 WL 4413300 (Bankr. S.D.N.Y. Aug. 15, 2013) ..........6

*In re Enron Corp.*,
  279 B.R. 671 (Bankr. S.D.N.Y. 2002) ...............................................................12, 13

*In re Garden Ridge Corp.*,
  No. 04–10324 (DDS), 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005) ...............14

*In re Grant Broad. of Phila., Inc.*,
  71 B.R. 655 (Bankr. E.D. Pa. 1987) ..................................................................9, 13

*In re Hills Stores*,
  137 B.R. 4 (Bankr. S.D.N.Y. 1992) ..........................................................................5

*In re Pub. Serv. Co. of New Hampshire*,
  89 B.R. 1014 (Bankr. D.N.H. 1988) ........................................................................12

*In re Residential Capital, LLC*,
  480 B.R. 550 (Bankr. S.D.N.Y. 2012) ......................................................................9

*In re Sharon Steel Corp.*,
  100 B.R. 767 (Bankr. W.D. Pa. 1989) ...............................................................12, 14

*In re SunEdison, Inc.*,
  556 B.R. 94 (Bankr. S.D.N.Y. 2016) ........................................................................5

*In re Wang Labs., Inc.*,
  149 B.R. 1 (Bankr. D. Mass. 1992) .............................................................5, 10, 12

ii

*In re Winn-Dixie Stores, Inc.,*
  326 B.R. 853 (Bankr. M.D. Fla. 2005) ..............................................................................9, 13

*Mirant Ams. Energy Mktg., L.P. v. Official Comm. Of Unsecured Creditors of
  Enron Corp.,*
  No. 02 Civ. 6274 (GBD), 2003 U.S. Dist. LEXIS 18149 (S.D.N.Y. Oct. 10,
  2003) ..........................................................................................................................9, 12, 14

**STATUTES**

11 U.S.C. § 1102(a)(2) ...................................................................................................................5

11 U.S.C. § 1102(a)(4) ...................................................................................................................5

**OTHER AUTHORITIES**

7 Collier on Bankruptcy P 1102.07 (16th 2019) ...........................................................................6

iii

**OBJECTION OF FINANCIAL OVERSIGHT
AND MANAGEMENT BOARD FOR PUERTO RICO TO MOTION FOR
AN ORDER APPOINTING A COMMITTEE FOR MODEST-SIZED BONDHOLDERS**

To the Honorable United States District Court Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative of the Commonwealth of Puerto Rico (the "Commonwealth"), pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this objection (the "Objection"), to the *Motion of Individual General Obligation Bondholder (1) to Permit Electronic Filing by Pro Se Parties; (2) (In the Alternative to "(1)") to Set Up a Mechanism to Permit Pro Se Parties to File and Serve Papers by Submission by Email to Prime Clerk; (3) to Permit Pro Se Parties to Listen into Proceedings by Telephone; and (4) to Order the Appointment of a Committee for Individual and Other Modest-Sized Bondholders* (Apr. 4, 2019) [ECF No. 6128] (the "Motion") filed by Peter C. Hein ("Hein"). In support of this Objection, the Commonwealth respectfully represents as follows:

**PRELIMINARY STATEMENT**

1.      For months, Hein, an accomplished New York City litigation attorney, who purchased over a million dollars of Commonwealth and Puerto Rico Sales Tax Financing Corporation ("COFINA") bonds, has attempted to portray himself as a man of modest means and unaware of or unable to undertake the court's processes—unable to electronically file documents and listen to hearings telephonically.  Of course, that is not the case.

2.      Notwithstanding, Hein uses the platform of the Motion to again attack the Court's procedures and, as an aside, request that, in light of his and others' modest means, a committee of

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

"modest" bondholders be appointed or, in the alternative, such "modest" bondholders be appointed to the existing Official Committee of Unsecured Creditors (the "UCC"). However, as set forth below, such relief is unnecessary and inappropriate. First, consistent with the Court's findings attendant to prior requests, adequate representation of the interests of GO Bondholders, as defined below, is provided through the zealous representation of GO Bondholders by ad hoc groups formed over the past two years. Second, appointment to the UCC would disrupt the Title III process and present a direct conflict. Specifically, as the UCC is party to the GO Related Objection, as defined below, having GO Bondholders seated on the UCC would generate internal conflicts and cause paralysis.

3.     For the reasons set forth below, the Motion should be denied in its entirety.

## **BACKGROUND**

4.     On May 3, 2017, the Oversight Board commenced a Title III case for the Commonwealth by filing a voluntary petition for relief pursuant to PROMESA section 304(a) (the "Commonwealth Title III Case"). Thereafter, the Oversight Board commenced Title III cases for each of COFINA, the Employees Retirement System for the Commonwealth of Puerto Rico ("ERS"), the Puerto Rico Highways and Transportation Authority ("HTA"), and the Puerto Rico Electric Power Authority ("PREPA," and together with the Commonwealth, COFINA, ERS, and HTA, the "Debtors").

5.     On June 15, 2017, the Office of the United States Trustee (the "U.S. Trustee") appointed the UCC in the Title III cases of the Debtors (other than COFINA). *See Appointment of Official Committee of Unsecured Creditors in the Commonwealth of Puerto Rico* [ECF No. 338]. On the same day, the U.S. Trustee appointed the Official Committee of Retirees in the Commonwealth's Title III Case. *See Appointment of Official Committee of Retirees in the Commonwealth of Puerto Rico* [ECF No. 340].

2

6.      In July of 2015, certain members of the Ad Hoc Group of General Obligation Bondholders (the "Ad Hoc GO Group") engaged Paul, Weiss, Rifkind, Wharton & Garrison LLP and Robbins, Russel, Englert, Orseck, Untereiner & Sauber LLP to represent their interests as holders of general obligation bonds ("GO Bondholders").  As of March 8, 2019, the Ad Hoc GO Group represents GO Bondholders holding approximately $3 billion of general obligation bonds. *See Fifth Verified Bankruptcy Rule 2019 Statement* (Mar. 8, 2019) [ECF No. 5444].

7.      On July 21, 2017, the Ad Hoc GO Group filed a motion seeking an order (i) directing the U.S. Trustee to change the membership of the UCC to include holders of general obligation bonds  or (ii) in the alternative, appointing an additional committee of GO Bondholders [ECF No. 694] (the "Ad Hoc GO Group Committee Motion").   On August 11, 2017, the court entered a *Memorandum Opinion and Order Denying the Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors* [ECF No. 1010], denying the Ad Hoc GO Group Committee Motion in its entirety.

8.      On July 21, 2017, two additional motions requesting the appointment of official committees were filed by the University of Puerto Rico Retirement System Trust [ECF No. 692] and the Ad Hoc Puerto Rico Municipalities Committee [ECF No. 709].  On August 11, 2017, the Court denied the two motions [ECF Nos. 1013 and 1014].

9.      On May 14, 2018, the Retiree Committee filed a motion requesting the appointment of a committee comprised solely of PREPA retirees [ECF No. 3056].  On June 6, 2018, the Court denied the motion [ECF No. 3270].

10.      In August of 2018, the Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debtholders Group") formed and retained Morrison & Foerster LLP and G. Carlo-Altieri Law Offices LLC to represent their interests as holders of GO Bondholders.  As of March

3

27, 2019, the Constitutional Debtholders Group represents GO Bondholders holding approximately $2.3 billion of general obligation bonds. *See Third Verified Bankruptcy Rule 2019 Statement* (Mar. 27, 2019) [ECF No. 6067]. In October of 2018, another ad hoc group (the "Commonwealth Bondholder Group," and together with the Ad Hoc GO Group and the Constitutional Debtholders Group, the "GO Groups") engaged Davis Polk & Wardwell LLP to represent their interests, in part, as holders of GO Bondholders. As of March 21, 2019, the Commonwealth Bondholder Group represents GO Bondholders holding approximately $185 million of general obligation bonds. *See Second Verified Bankruptcy Rule 2019 Statement* (Mar. 21, 2019) [ECF No. 5979].

11.     By letter, dated March 1, 2019, Hein requested the U.S. Trustee to appoint an official committee comprised solely of GO Bondholders with "modest" holdings. Motion, Ex. A. On March 4, 2019, the U.S. Trustee responded to Hein's letter, stating that, in pertinent part, "[o]ur office does not comment on the appointment or selection process for official committees beyond what appears on the public record. We are not considering taking any action at this time." Motion, Ex. B (the "U.S. Trustee Letter").

12.     On April 4, 2019, Hein filed the Motion seeking an order from the Court appointing an additional statutory committee comprised solely of GO Bondholders with modest holdings, pursuant to section 1102(a)(2) of Title 11 of the United States Code (the "Bankruptcy Code") or, in the alternative, reconstituting the UCC to include GO Bondholders pursuant to Bankruptcy Code section 1102(a)(4). *See* Motion at 4; 7-8. The Motion also seeks favorable treatment for *pro se* litigants with respect to filing pleadings with the Court and service thereof (either by permitting *pro se* parties to register for electronic filing on the Court's CM/ECF System or, alternatively, setting up a mechanism by which *pro se* parties can file and serve pleadings by emailing them to

4

the Debtors' claims agent, Prime Clerk LLC) as well as the ability to listen to hearings remotely. The Motion claims that its purpose is to avoid purported "conflicts that permeated the negotiations of the COFINA Plan."  Motion at 1-2.  Specifically, Hein asserts that certain COFINA creditors received favorable treatment at the expense of others and that the COFINA plan solicitation process was purportedly designed to confuse and hasten the creditor voting process. *See, e.g.,* Motion at 7-8.

## OBJECTION

### I.      The GO Bondholders are Adequately Represented Without a Statutory Committee

13.      Bankruptcy Code section 1102(a)(2) provides that "the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors . . . ."  11 U.S.C. § 1102(a)(2).  Similarly, Bankruptcy Code section 1102(a)(4) provides that "the court may order the United States Trustee to change the membership of a committee . . . if the court determines that the change is necessary to ensure adequate representation of creditors . . . ."  11 U.S.C. § 1102(a)(4).  As such, the standard which must be satisfied is, namely, that GO Bondholders are not adequately represented in the Commonwealth's Title III Case.  The standard imposed by the Bankruptcy Code is a "high standard that is far more onerous than if the statute merely provided that a committee be useful or appropriate."  *In re SunEdison, Inc.*, 556 B.R. 94, 103 (Bankr. S.D.N.Y. 2016) (citation omitted).  As illustrated below, it is patently apparent Hein cannot satisfy the requisite legal standard, and the Motion should be denied as a result.

14.      The Bankruptcy Code does not define "adequate representation."  *See In re Wang Labs., Inc.*, 149 B.R. 1, 2 (Bankr. D. Mass. 1992) ("'adequacy of representation' . . . must be determined by the facts of the case.") (citing *In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985)).  While the statute provides no bright-line test for adequate representation, *see In*

5

*re Hills Stores*, 137 B.R. 4 (Bankr. S.D.N.Y. 1992), courts have considered the following criteria

in determining whether a creditor is adequately represented:

> (1) The ability of the committee to function; (2) The nature of the case; (3)
> The standing and desires of the various constituencies; (4) The ability for
> creditors to participate in the case even without an official committee and
> the potential to recover expenses pursuant to section 503(b); (5) The delay
> and additional cost that would result if the court grants the motion; (6) The
> tasks that a committee or separate committee is  to perform; and (7) Other
> factors relevant to the adequate representation issue.

*In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (citations omitted).  Each such criterion

demands denial of the Motion.[3]

15.     Further, the Court should give deference to the U.S. Trustee's determination not to

appoint an additional committee, as indicated in the U.S. Trustee Letter.  The "U.S. Trustee's

decision is entitled to due consideration." *In re Eastman Kodak Co.*, No. 12-10202 (ALG), 2013

WL 4413300, at *1 (Bankr. S.D.N.Y. Aug. 15, 2013); *see also* 7 Collier on Bankruptcy P 1102.07

(16th 2019) ("While the court is empowered to overrule the decision of the United States trustee

not to appoint an additional committee, the court should afford some deference to that decision.").

**A.     The GO Bondholders are More than Able to Participate in the
Commonwealth's Title III Case**

16.     There is simply no need for a separate official committee comprised only of GO

Bondholders to be appointed in the Commonwealth's Title III Case.  The GO Groups are massively

well-funded groups of investment funds represented by very capable advisors.  The GO Groups

have actively participated in practically every aspect of the Commonwealth's Title III Case and

---

[3] As certain of these factors overlap here, each factor is not addressed separately but all factors are addressed
collectively herein.

6

have vigorously defended the positions of GO Bondholders without the "official" status of a statutory committee. Hein admits as much in the Motion.[4]

17.     The "smaller" GO Bondholders have the same types of claims the GO Groups hold, and are therefore equally benefitted by the GO Groups' vigorous pursuit of their interests. Indeed, the GO Groups and Hein are completely aligned in their opposition to the Oversight Board's and UCC's claim objection filed on January 14, 2019, targeting approximately $6 billion face amount in general obligation bonds [ECF No. 4784] (the "GO Related Objection"). Moreover, it is difficult for Hein to argue that "modest" bondholders are unaware or unwilling to participate in the process as hundreds of *Notices of Participation* have been executed by individual GO Bondholders and filed on the Court's docket, evidencing such holders' intent to participate in the litigation regarding the GO Related Objection. Notably, the Oversight Board is unaware of any GO Bondholder (other than Hein) that believes their interests are not adequately represented, either by themselves or by the GO Groups.

18.     The GO Related Objection appears to be the most critical and timely issue affecting Hein,[5] and the GO Groups have engaged and are prepared to contest the GO Related Objection

---

[4] *See* Motion at 7, ¶ 3 ("There may be a commonality of interests between all general obligation bondholders in vigorously resisting efforts to invalidate their bonds and to vigorously pursue enforcement of the Commonwealth's irrevocable pledge and the Constitutional right of all general obligation bondholders to a first claim against available Commonwealth resources. The proposed committee to represent individual bondholders should coordinate with the efforts of major holders and their ad hoc committees to avoid a duplication of effort in resisting efforts to invalidate their bonds.").

[5] *See* Motion at 4, ¶ 1 ("The importance of appointing a committee of individual bondholders is underscored by the unfair asymmetry that currently exists here: the FOMB and UCC appear to have access to effectively unlimited resources and funds to pursue an effort to invalidate individuals' bonds. While general obligation bondholders are secured by a constitutional and statutory lien, and an irrevocable pledge of Puerto Rico's resources to pay bonds, and under the Puerto Rico Constitution general obligation bondholders have a 'first claim on available Commonwealth resources,' instead of Commonwealth resources being paid out to bondholders, those Commonwealth resources are being improperly diverted to fund the litigation brought by FOMB and UCC against general obligation bondholders. I object to that, and my position is that no monies should be diverted to fund the FOMB and UCC litigation efforts until Puerto Rico cures its defaults and pay its bonds. But at the very least, individual bondholders should have a committee established to represent their interests to defend against the FOMB's and UCC's proceedings.").

and the relief requested therein.  Indeed, the Ad Hoc GO Group filed on April 2, 2019 a conditional objection [ECF No. 6099] (the "Conditional Objection"), seeking in part to disallow all claims asserted against the Commonwealth based on or relating to the Commonwealth's obligations in connection with leases entered into by the Puerto Rico Public Buildings Authority.  The Conditional Objection was filed by the Ad Hoc GO Group as part of its response to the GO Related Objection and that was previewed by the Ad Hoc GO Group at prior hearings.  *See, e.g.,* Omnibus Hr'g Tr. (Mar. 13, 2019), at 10:17-23 ("The Court: So I think I hear you fairly clearly saying you are intending to engage aggressively what you consider selective attacks on certain creditor constituencies or outstanding holdings.  And I think I'm hearing that you anticipate that if the Board proposes a plan that you consider structurally unconfirmable there will be some, I'll say again, aggressive means of engaging that.").  Accordingly, Hein has no basis to contend that GO Bondholders are not adequately represented in the Commonwealth's Title III Case.

19.    Critically, this Court previously denied the Ad Hoc GO Group Committee Motion, which also requested the formation of an additional official committee comprised of GO Bondholders just as Hein requests in the Motion.  There, the Court reasoned:

> the [GO Debtholders] have not established a lack of adequate representation as required by Section 1102 of the Bankruptcy Code.  The [GO Bondholders] have retained sophisticated counsel and have regularly and actively participated on a broad range of issues in these Title III cases. These actions demonstrate that they are already adequately represented and that the appointment of an additional statutory committee is unwarranted.

*Memorandum Opinion* [ECF No. 1010], at 3.  The Court issued its opinion on August 11, 2017 and the reasoning espoused by the Court at that time remains just as true today.  The GO Groups are extremely active participants in the Commonwealth's Title III Case, and they more than adequately represent the interests of all GO Bondholders such that no additional committee is warranted.

8

**B.      Granting the Motion will Result in Significant Cost and Delay at a Critical Point in the Commonwealth's Title III Case**

20.      "[T]he large size of a bankruptcy case is not determinative of whether additional committees should be appointed."  *In re Dana Corp.*, 344 B.R. at 39; *see also Mirant Ams. Energy Mktg., L.P. v. Official Comm. Of Unsecured Creditors of Enron Corp.*, No. 02 Civ. 6274 (GBD), 2003 U.S. Dist. LEXIS 18149, at *3 (S.D.N.Y. Oct. 10, 2003) (affirming bankruptcy court's denial of motion to appoint additional creditors' committee in what was, at the time, the largest bankruptcy matter in history).  Rather, appointment of one official creditors' committee is the norm in large and complex cases.  *See In re Residential Capital, LLC*, 480 B.R. 550, 558 (Bankr. S.D.N.Y. 2012) (single committee deemed sufficient "in the vast majority of . . . cases").

21.      An additional official committee in the Commonwealth's Title III Case will lead to unnecessary increases in professional fees and expenses for all parties, cause further delay and confusion, and could actually impair the prospects of a successful adjustment of Puerto Rico's debts.  *See e.g. In re Grant Broad. of Phila., Inc.*, 71 B.R. 655, 661 (Bankr. E.D. Pa. 1987) (rejecting the appointment of two creditor committees, reasoning "appointment of multiple Creditors' Committees should be the rare exception, because it is not the function of such a committee to provide a Court sanctioned spokesman, at the cost and expense to the estate, to protect and advocate the interests of creditors in asserted rights against third persons. This can be done, if necessary, by individual creditors on their own behalf.") (citation omitted); *see also Mirant Ams. Energy*, 2003 U.S. LEXIS 18149, at *27 (appointing additional committees simply because cases are large and complex with Intercreditor conflicts would lead to the "unnecessary proliferation of committees at an astronomical cost to the bankruptcy estates") (citation omitted); *In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 857-858 (Bankr. M.D. Fla. 2005) ("The Court finds that the additional costs, especially those associated with the retention of experts, militate against

9

the appointment of an additional committee."); *In re Wang Labs., Inc.*, 149 B.R. at 4 (citation omitted) (noting the court's concern that the "appointment of additional committees is closely followed by applications to retain attorneys and accountants").

22.     Indeed, as noted above, the Court has already denied at least four requests for an additional committee in the Commonwealth's Title III Case. *See* [ECF Nos. 868, 1010, 1013, and 1014].  The Court should deny the Motion as well, particularly given the untimely nature of Hein's request.  The Title III cases were filed in May of 2017 and the Commonwealth's financial recovery was sidetracked by the tragic occurrence of Hurricanes Irma and Maria.  But, now, significant progress is being made.  First, the Title VI restructuring of the Government Development Bank was approved and went effective.  Second, COFINA's Title III plan of adjustment was confirmed and the transactions contemplated therein were consummated on February 12, 2019.  Now, there is evidence in the public record that PREPA is approaching a consensual restructuring deal.  The Oversight Board has even publicized its intention to file a plan of adjustment in the Commonwealth's Title III Case in the near future.  The Court should not risk a derailment of the Title III cases by the appointment of an additional, superfluous statutory committee, which would inevitably attempt to assert itself and justify its relevance while also engaging advisors that would need substantial time to learn the necessary background of the Title III cases to be effective.

23.     The brashness of Hein's request inevitably reveals the true motivation for filing the Motion, namely seeking <u>any</u> form of appointment to an official committee so that Hein can be represented by advisors whose fees and expenses are paid by the Commonwealth.  The Court should not countenance the untimely and destabilizing requests of one overzealous advocate who admittedly owns relatively "modest" holdings in the context of the largest municipal bankruptcy in history.

C.     **Appointing GO Bondholders to the Committee Would Disrupt the UCC's Ability to Function**

24.     In the event the Court determines to not appoint an additional committee, the Motion seeks the alternative relief of reconstituting the UCC to include GO Bondholders.[6]   As evidenced by the GO Related Objection, however, the position of the UCC is diametrically opposed to that of the GO Bondholders in the Commonwealth's Title III Case.  If GO Bondholders were appointed to the UCC, the UCC's ability to function would be compromised by conflicts that would make the UCC stagnant and inefficient, rather than facilitating the UCC's ability to reach a consensual resolution and engage on the terms of a plan of adjustment.  Indeed, this Court has already denied such relief with respect to the Ad Hoc GO Group Committee Motion:

> [T]he [Ad Hoc] GO Group itself has never conceded that it is unsecured. To the contrary, it argues that the Constitutional Debt is protected by a statutory lien on 'all available resources' of the Commonwealth.  The [Ad Hoc] GO Group cannot have it both ways.  Its legal stance is fundamentally at odds with that of the general unsecured creditors, rendering it entirely unsuitable as a representative of those creditors' interests.  That the Commonwealth's Fiscal Plan proposes to treat the [Ad Hoc] GO Group's members as unsecured creditors is of no moment in this regard; the job of an unsecured creditors committee is to act from the perspective of those who are unsecured.  The [Ad Hoc] GO Group has never identified itself as a member of that cohort and thus is not qualified to constitute or participate on an Unsecured Creditors' Committee.

*Memorandum Opinion* [ECF No. 1010], at 2-3.

D.     **The Motion Fails to Identify Any Tasks the Additional Committee Needs to Perform**

25.     The Motion fails to identify any tasks that need to be handled by an official committee of "modest" GO Bondholders, other than advocating the same positions taken to date

---

[6] *See* Motion at 7-8, ¶ 4 ("If, for any reason, the court is not prepared to order the appointment of the requested committee . . . , then the Court should direct the United States Trustee to at least ensure appropriate representation on the committee of individual and other bondholders related to individual with modest holdings . . . .").

107153754v8

by the GO Groups. Hein attempts to justify his requested relief by claiming that GO Bondholders with more modest holdings and who purchased their holdings at par should be members of an official committee,[7] but the Oversight Board is not aware of any legal basis for that argument and Hein unsurprisingly fails to cite any legal precedent for his position.

26.     In fact, official committees are not meant to advance the parochial interests of individual creditors, which is precisely what Hein seeks to do in the Motion. *See In re Sharon Steel Corp.*, 100 B.R. 767, 770-71, 778-79 (Bankr. W.D. Pa. 1989) (noting consensus that additional committees are generally disfavored because, among other reasons, each committee focuses on the parochial interests of one specific class of creditors, consequently "weaken[ing] the impetus to compromise" on which a successful reorganization depends); *Mirant Ams. Energy*, 2003 U.S. Dist. LEXIS 18149, at *27-28 ("because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delays").

## II.     Even if the Court Determines the GO Bondholders are not Adequately Represented, the Court Should Deny the Motion in its Discretion

27.     Even if the Court were to find that the above-cited factors pointed to inadequate representation, appointment of additional committees is not mandatory. The Court must still "decide whether it ***should*** exercise its discretion and order such appointment."[8]

---

[7] *See* Motion at 7, ¶ 3.

[8] *In re Dewey & LeBoeuf LLP*, No. 12-12321 MG, 2012 WL 5985325, at *3 (Bankr. S.D.N.Y. Nov. 29, 2012) (emphasis added). *See also In re Wang Labs*, 149 B.R. at 2 (if appointment of additional committee is necessary to assure adequate representation, court must then consider whether it should exercise its discretion and make the appointment); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) (court can deny additional committee "even once inadequate representation is found"); *In re Pub. Serv. Co. of New Hampshire*, 89 B.R. 1014, 1019-20 (Bankr. D.N.H. 1988) (declining to appoint additional committee notwithstanding conclusion that "there is a question of adequate representation" and "[t]here accordingly is no question that [moving creditors] would 'benefit' from the appointment of a separate committee").

107153754v8

In considering whether to exercise its discretion to appoint additional committees even where there are questions of inadequate representation, courts consider (1) the cost associated with the appointment, (2) the time of the application, (3) the potential for added complexity, and (4) the presence of other avenues for creditor participation.[9]

28.     Assuming, for argument's sake, that GO Bondholders are not adequately represented, application of the Court's discretion demonstrates that it should not appoint an additional official committee. The extreme cost associated with an additional official committee is reason alone for the Court to decline to exercise its discretion.  As one court explained in declining to exercise its discretion, appointing an additional committee would "open [the court] to the otherwise justifiable criticism that we allowed two firms to tax the Debtors' estate, at the ultimate cost to the Debtors and the creditors, by appointing two Creditors' Committees, just because they could not resolve a squabble between themselves . . . appointment of multiple Creditors' Committees should be the rare exception."[10]

29.     These concerns are particularly acute in the Title III cases.  An additional official committee would retain its own attorneys, financial advisors, and other experts.[11]  An additional official committee would also lead to an unnecessary duplication of effort, given the plethora of attorneys, advisors, and experts that are already heavily involved in the Title III cases.  Appointing an additional official committee would also make the Title III cases (which are complicated

---

[9] *See In re Enron Corp.*, 279 B.R. at 685. Bankruptcy courts have "generally been reluctant to appoint additional committees and their decisions have placed considerable weight on these discretionary factors." *In re Dow Corning*, 194 B.R. 121, 143 (Bankr. E.D. Mich. 1996), *rev'd on other grounds*, 212 B.R. 258 (E.D. Mich. 1997).

[10] *In re Grant Broad. of Phila., Inc.*, 71 B.R. at 661.

[11] *See In re Winn-Dixie*, 326 B.R. at 858, n.4 ("In light of the numerous experts retained by the Debtors and the Creditors' Committee, the Court has little doubt that an additional committee would seek to retain its own experts.").

107153754v8

enough) even more complex and decrease the likelihood of a timely successful reorganization.[12] Multiple official committees, each focused on the parochial interests of one specific class of creditors, "will only weaken the impetus to compromise" on which a successful reorganization depends.[13]

30.     The GO Groups have been actively participating in the Title III cases and have been aggressively litigating the parochial issues affecting GO Bondholders for years.  Official status is not necessary for the voices of the GO Bondholders to be heard,[14] particularly when Hein could have made the same request for an official committee years ago.  For all of these reasons, no additional official committee should be appointed for the GO Bondholders.

## III.     Hein Lacks Prudential Standing to Argue on Behalf of Non-Attorney, Pro Se Parties

31.     Here, Hein inappropriately attempts to argue on behalf of non-lawyer, *pro se* parties with respect to electronic filing access and listening to hearings remotely.  Specifically, Sections I and II of the Motion (regarding access to electronic filing) are premised on the fact that Hein has "been advised that only attorneys admitted to practice in the District of Puerto Rico (either generally or pro hac vice) may register to use the CM/ECF system."  Motion at 1.  Hein, however, is an attorney and, by his own admission, is capable of registering to use the CM/ECF system if he is admitted to practice in the District of Puerto Rico *pro hac vice*, which countless attorneys in

---

[12] *See In re Sharon Steel Corp.*, 100 B.R. at 770–71 (describing consensus that appointment of additional committee was "met with general disfavor in view of the obvious complexities it would create, complicating negotiations of the [debtor, regulatory agencies, creditors], the union, and current lenders by a geometric progression; [and favoring] the 'one-stop shopping' expression of the preferability of one committee").

[13] *Id.* at 779; *see also Mirant Ams. Energy*, 2003 U.S. Dist. LEXIS 18149 at *27-28 ("because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delays").

[14] *See In re Garden Ridge Corp.*, No. 04–10324 (DDS), 2005 WL 523129, at *4 (Bankr. D. Del. Mar. 2, 2005) (an "Official Committee is simply not intended to represent individual creditor interests").

these Title III cases have already done.  The Oversight Board is genuinely confused as to what injury Hein purportedly has suffered given that Hein, as an attorney, could very easily register to use the CM/ECF system.  The Motion ironically complains about the Debtors' use of money to fund various litigation efforts in these Title III cases, but having to respond to unproductive and unfounded motions such as this Motion is a contributing factor to the amount of time and energy demanded by this restructuring.

32.     Further, Hein also admits in Section III of the Motion (regarding listening telephonically to hearings) that "[t]his Court permits attorneys who have entered an appearance in the Title III proceedings to register with CourtSolutions to listen-in on hearings by telephone." Motion at 3.  Again, Hein is an attorney who has the ability to listen to hearings telephonically. Accordingly, by Hein's own admissions, the Motion seeks relief premised on the legal rights of third parties with respect to Sections I, II, and III, and the Court should deny the applicable relief requested in the Motion as a result.

33.     Critically, hundreds of *Notices of Participation* have been executed by individual GO Bondholders and filed on the Court's docket, evidencing such holders' intent to participate in the litigation regarding the GO Related Objection.  Contrary to Hein's opinion, the Oversight Board perceives the procedural mechanisms that have been established for these Title III cases to be functioning properly and the right to be heard of every party in interest (including GO Bondholders with modest holdings) is being honored.

34.     The Oversight Board does not believe there has been a lack of due process with respect to electronic filing access or the ability to appear at hearings in these Title III cases.  To the extent the Court believes the procedural landscape that has been in place for almost two years

15

in these cases must be revisited, however, the Oversight Board will conduct the appropriate due diligence and present its findings to the Court.

*[Remainder of page intentionally left blank]*

WHEREFORE the Commonwealth respectfully requests that the Court (a) sustain the Objection, (b) deny the Motion, and (c) grant the Commonwealth such other and further relief as is just.

Dated: April 9, 2019
　　　　San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Chris Theodoridis (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management Board as Representative for the Commonwealth*

*/s/ Hermann D. Bauer*

Hermann D. Bauer
USDC No. 215205
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management Board as Representative for the Commonwealth*

107153754v8

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ Hermann D. Bauer
Hermann D. Bauer

18

107153754v8