```
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO
```

---------------------------------------------------------------------------- x
                                                              :
In re:                                                        :
                                                              :
THE FINANCIAL OVERSIGHT AND                                   :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                             :  Title III
                                                              :
          as representative of                                :  Case No. 17-BK-3283 (LTS)
                                                              :
THE COMMONWEALTH OF PUERTO RICO *et al.*,                     :  (Jointly Administered)
                                                              :
          Debtors.[1]                                         :
---------------------------------------------------------------------------- x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF PRO SE INDIVIDUAL GENERAL OBLIGATION BONDHOLDER FOR ORDER APPOINTING COMMITTEE FOR INDIVIDUAL AND OTHER MODEST SIZED HOLDERS OF GENERAL OBLIGATION BONDS**

The Official Committee of Unsecured Creditors of All Title III Debtors (other than COFINA) (the "Committee") hereby submits this objection (the "Objection") to the *Memorandum in Support of Motion of Individual General Obligation Bondholder (1) to Permit Electronic Filing by Pro Se Parties; (2) (In the Alternative to "(1)") to Set Up a Mechanism to Permit Pro Se Parties to File and Serve Papers by Submission by Email to Prime Clerk; (3) to Permit Pro Se Parties to Listen Into Proceedings by Telephone; and (4) to Order the Appointment of a Committee for Individual and Other Modest-Sized Bondholders* [Docket No.

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

6128] (the "Motion").[2] In support of the Objection, the Committee respectfully represents as follows:

## OBJECTION

### I. There Is No Basis to Appoint an Additional Committee Because Interests of All General Obligation Bondholders Are Already Adequately Represented

1. Appointment of additional official committees is governed by section 1102(a)(2) of the Bankruptcy Code, which requires, as a threshold matter, determination of "whether the appointment of a committee is necessary to assure adequate representation." *In re Wang Labs, Inc.*, 149 B.R. 1, 2 (Bankr. D. Mass. 1992); *see also In re Eastern Maine Elec. Co-op, Inc.*, 121 B.R. 917, 927 (Bankr. D. Me. 1990) (bankruptcy court may order appointment of additional committees if necessary to assure adequate representation).

2. The moving party "has the burden of proving that an additional committee is needed for adequate representation." *In re Spansion, Inc.*, 421 B.R. 151, 156 (Bankr. D. Del. 2009). This burden imposes a "high standard that is far more onerous than if the statute merely provided that a committee be useful or appropriate," *In re SunEdison, Inc.*, 556 B.R. 94, 103 (Bankr. S.D.N.Y. 2016), and this requirement "has been described as ranging from a 'high standard' to requiring a showing that an additional committee is 'absolutely required,' 'essential,' or 'indispensable.'" *In re Dewey & Leboeuf LLP*, No. 12-12321 MG, 2012 WL 5985325, *4 (Bankr. S.D.N.Y. Nov. 29, 2012). The Motion fails to satisfy this burden.

3. Critically, this Court has already determined that holders of general obligation bonds are already adequately represented. Early in these cases, a group of holders of general obligation bonds (the "Ad Hoc GO Bondholders") that, like the Movant, argued that the general

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion. The Committee takes no position on the various (and alternative) forms of relief requested in the Motion other than the request for appointment of an additional official committee that is the subject of this Objection.

obligation bonds are secured and that the holders are entitled to a payment priority under Puerto Rico's Constitution,[3] filed a motion requesting appointment of an official committee of holders of general obligation bonds.[4] On August 11, 2017, this Court issued an opinion (the "2017 Opinion") denying this request "in its entirety."[5] The Court explained that, to the extent the general obligation bonds are not, in fact, secured, they are "sufficiently well represented by the robust Unsecured Creditors' Committee" and, "insofar as they claim that they are secured," they are also adequately represented "by their own very active coalition." 2017 Opinion at 3.

4. The Motion, however, makes no showing that there has been any change since the 2017 Opinion,[6] whether in the Title III cases generally or, more specifically, the context of the Omnibus Objection,[7] filed jointly by the Committee and the Oversight Board challenging the validity of approximately $6 billion of general obligation bonds on the grounds that their issuance was in violation of Puerto Rico's constitutional debt limit. Therefore, the Motion falls short of its burden to show that an additional committee is required to adequately represent the interests of individual holders of general obligation bonds.[8]

---

[3] *See* Mot. at 4 (arguing that general obligation bondholders are "secured by a constitutional and statutory lien, and an irrevocable pledge of Puerto Rico's resources to pay the bonds, and under the Puerto Rico Constitution general obligation bondholders have a "first claim on available Commonwealth resources").

[4] *See Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors Pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(4)* [Docket No. 694].That motion, alternatively, requested the Committee be reconstituted to include a holder of general obligation bonds.

[5] *See Memorandum Opinion and Order Denying the Motion of the Ad Hoc Group of General Obligation Bondholders to Reconstitute the Official Committee of Unsecured Creditors* [Docket No. 1010], at 4.

[6] Indeed, the Motion does not refer at all to the 2017 Opinion or the underlying motion.

[7] The "Omnibus Objection" is the *Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Rule 3007, to Claims Filed or Asserted By Holders of Certain Commonwealth General Obligation Bonds* [Docket No. 4784].

[8] To the extent the Motion requests that the Court reconstitute the Committee to include individual or modest-sized holders of general obligation bonds, *see* Mot. at 7-8, such relief is foreclosed by the 2017 Opinion. As explained therein, "a creditor that holds only a secured claim is not entitled to serve on a committee of unsecured creditors" and, therefore, the Movant's claim to secured status "render[s] it entirely unsuitable as a representative" of the unsecured creditors represented by the Committee. 2017 Opinion at 2.

3

5. In addition to the rationale underlying the 2017 Opinion, there are two reasons that support the conclusion that individual holders of general obligation bonds are adequately represented. <u>First</u>, the Court has entered the Initial Procedures Order that calls for the Committee and the Oversight Board (as well as other participants in the Omnibus Objection litigation) to propose a schedule for the litigation of the Omnibus Objection.[9] The Committee will propose a bifurcated litigation schedule pursuant to which the question of whether some portion of general obligation bonds were issued in violation of Puerto Rico's constitutional debt limit will be litigated, and adjudicated, in "Phase I" of the litigation. On this first, threshold, issue all holders of the challenged general obligation bonds, regardless of the size of their holdings, are completely aligned, and it is already obvious that the Ad Hoc GO Bondholders (represented by Paul, Weiss, Rifkind, Wharton & Garrison LLP and by Robbins, Russel, Englert, Orseck, Untereiner & Sauber LLP) will forcefully advocate in support of the argument that the constitutional debt limit was not exceeded. Therefore, the only issue that will arise vis-à-vis the unrepresented bondholders during "Phase I" will be to ensure that such bondholders are aware of the process. In that regard, the Committee is prepared to distribute information regarding the "Phase I" process to such bondholders (of course, only to the extent such information has been approved by the Court for distribution to such bondholders).

6. Moreover, in addition to the Ad Hoc GO Bondholders and their experienced and sophisticated bankruptcy counsel, there are numerous other groups active in these Title III cases that (even though in some instances they may hold different series of bonds than the Ad Hoc GO Bondholders) also hold Commonwealth bonds that could be

---

[9] The "<u>Initial Procedures Order</u>" is the *Order, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, Establishing Initial Procedures with Respect to Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Granting Related Relief* [Docket No. 5143].

4

impacted by the Omnibus Objection; each of these groups has also retained its own bankruptcy and litigation counsel.[10]  Indeed, it is no exaggeration to say that, as a whole, the interests of holders of general obligation bonds are represented by no less than nine experienced bankruptcy and litigation law firms.  At this point, therefore, individual holders of general obligation bonds are adequately represented.  *See generally In re Eastman Kodak Co.*, No. 12–10202 (ALG), 2012 WL 2501071, *3 (Bankr. S.D.N.Y. Jun. 28, 2012) (declining to appoint committee and holding that for "present purposes, creditor and shareholder interests are generally aligned").[11]

7.  Second, the Motion is premised on a theory of misaligned incentives between those holders of general obligation bonds that purchased at par, and those that bought at a discount on the secondary market.  Even if this theory were relevant during the first phase of the Omnibus Objection litigation (as explained above, it is not), it is not sufficient to establish a lack of adequate representation.  This is because, even assuming that par purchasers or original issuance purchasers, on the one hand, and discount purchasers or purchasers on the secondary market, on the other, have conflicting incentives, the theory is reliant on the assumption that the large holders that are actively involved in the Title III cases generally and in the Omnibus Objection litigation specifically uniformly hold one type of bonds (those purchased at a discount)

---

[10] These other groups (or individual entities) include: (i) the Ad Hoc Group of Constitutional Debtholders, represented by Morrison & Foerster LLP [Docket No. 6067]; (ii) the PBA Funds, represented by Morrison & Foerster LLP [Docket No. 5991]; (iii) the Commonwealth Bondholder Group, represented by Davis Polk & Wardell LLP [Docket No. 5979]; (iv) the ERS Secured Creditors, represented by Jones Day [Docket No. 5189]; (v) the QTCB Noteholder Group, represented by Bracewell LLP [Docket No. 4871]; (vi) the Mutual Fund Group, represented by Kramer Levin Naftalis & Frankel, LLP [Docket No. 3776]; (vii) the Ad Hoc Group of PREPA Bondholders, represented by Kramer Levin Naftalis & Frankel, LLP [Docket No. 4384]; (viii) the Puerto Rico Funds, represented by White & Case LLP [Docket No. 3768]; and (ix) Assured Guaranty Municipal Corp., represented by Cadwalader, Wickersham & Taft LLP [Claim No. 33081].

[11] The Court can, of course, revisit the issue of a committee of individual bondholders at "Phase II" of the litigation, when issues and defenses that may be personal to specific bondholders (for example, original purchasers vs. purchasers on the secondary market) may be litigated (if the Court determines that such issues are legally relevant).

5

and the individual and "modest-sized" holders that are the subject of the Motion uniformly hold another type of bonds (those purchased at par). However, this is simply not the case.

8. To the contrary, the large institutional holders and participants in the Omnibus Objection litigation represent multiple types of purchasers, including those who purchased at par. In fact, the monoline insurers, by definition, are aligned with par purchasers in this regard. Moreover, the Committee believes that other large holders of general obligation bonds may also have bought at par (or close to it).

9. As the party seeking appointment of a committee of individual holders, it is the Movant's burden to show a lack of adequate representation; under the theory advanced by the Motion, this required evidence to support its theory that there is a divergence between large and small holders in the type of purchasers they represent. Because the Motion lacks any such evidence—and, indeed, the opposite is true—the Movant has not carried its burden of showing a lack of adequate representation, and the Motion should be denied.

## II. In Any Event, Court Should Decline to Exercise Discretion to Appoint Additional Committee

10. Even if the Movant had carried his burden of showing inadequate representation (he has not), appointment of an additional committee is not mandatory; the Court must still decide "whether it *should* exercise its discretion and order such appointment." *In re Dewey & Leboeuf LLP*, 2012 WL 5985325, at *3 (emphasis added).[12]

---

[12] *See also In re Wang Labs*, 149 B.R. at 2 (if appointment of additional committee is necessary to assure adequate representation, court must then consider whether it should exercise its discretion and make the appointment); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) (court can deny additional committee "even once inadequate representation is found"); *In re Pub. Serv. Co. of New Hampshire*, 89 B.R. 1014, 1019-20 (Bankr. D.N.H. 1988) (declining to appoint additional committee notwithstanding conclusion that "there is a question of adequate representation" and "there accordingly is no question that [moving creditors] would "benefit" from the appointment of a separate committee").

6

11. In considering whether to exercise its discretion to appoint additional committees even where there are questions of inadequate representation, courts consider (1) the cost associated with the appointment, (2) the time of the application, (3) the potential for added complexity, and (4) the presence of other avenues for creditor participation.[13] This second step is no mere formality; bankruptcy courts are "generally been reluctant to appoint additional committees and their decisions have placed [great] weight on these discretionary factors." *In re Dow Corning*, 194 B.R. 121, 143 (Bankr. E.D. Mich. 1996).

12. Application of these factors to the Motion demonstrates that even assuming, for argument's sake, representation of individual general obligation bondholders is, at present, inadequate, the Court should not appoint an additional committee. First and foremost among the factors militating against the appointment of a separate committee is the cost associated with such additional committee. An additional committees would retain its own attorneys, financial advisors, and other experts. *See In re Winn-Dixie Stores, Inc.*, 326 B.R. 853, 858, n.4 (Bankr. M.D. Fla. 2005) ("In light of the numerous experts retained by the Debtors and the Creditors' Committee, the Court has little doubt that an additional committee would seek to retain its own experts."); *In re Wang Labs*, 149 B.R. at 4 ("appointment of additional committees is closely followed by applications to retain attorneys and accountants") (citation omitted).

13. An official individual committee is also likely to lead to an unnecessary duplication of efforts, as the general obligation bondholders' asserted security interest and priority is an all-encompassing issue that would prompt the involvement of the proposed committee across the Title III cases to safeguard the interests of its constituents, who will

---

[13] *In re Enron Corp.*, 279 B.R. at 685. Bankruptcy courts are "generally been reluctant to appoint additional committees, and their decisions have placed great weight on these discretionary factors." *In re Dow Corning*, 194 B.R. at 143.

7

assuredly be impacted by each of the cases. Further, given the numerous different bond issuances and their prominence in these Title III cases, if the Court were to grant the Motion it will assuredly face a flood of requests for similar "individual committees" across the Debtors' capital structure.[14]

14. Moreover, an individual committee of general obligation bondholders would introduce unnecessary complexity and decrease the likelihood of a settlement of the Omnibus Objection and, ultimately, the likelihood of a successful reorganization. Multiple official committees, each focused on the parochial interests of one specific class of creditors, "will only weaken the impetus to compromise" on which a successful reorganization depends. *In re Enron Corp.*, 279 B.R. at 688-89 (quoting *In re Sharon Steel Corp.*, 100 B.R. 767, 779 (Bankr. W.D. Penn. 1989)).[15]

15. In addition to these commonly recited factors, the Court should give deference to United States Trustee's determination not to appoint an additional committee. As stated in the Motion, the United States Trustee has declined to appoint the requested official committee of individual bondholders of general obligation bonds. The "U.S. Trustee's decision is entitled to due consideration." *In re Eastman Kodak Co.*, No. 12-10202 (ALG), 2013 WL 4413300, at *1 (Bankr. S.D.N.Y. Aug. 15, 2013); *see also* 7 Collier on Bankruptcy P 1102.07 (16th 2019) ("While the court is empowered to overrule the decision of the United States trustee not to appoint an additional committee, the court should afford some deference to that decision."); *see generally, In re Enron Corp.*, 279 B.R. at 686 (ordering appointment of additional committee is

---

[14] Indeed, the Motion claims that is, at least in part, premised on avoiding the same negative outcome it identified in the COFINA case.

[15] *See also Mirant Ams. Energy*, 2003 WL 22327118 at *8 ("because creditors would be balkanized into several independent committees, each furthering the interests of only certain groups, the consultation and balancing of interests necessary for a successful negotiation of a reorganization plan would be severely hampered, leading to increased costs and delay").

8

an "extraordinary remedy," "particularly given that the matter is often first reviewed and addressed by the U.S. Trustee"). The Court, therefore, should not exercise its discretion to appoint an additional committee.

### III. Committee of Allegedly Secured General Obligation Bondholders Would Benefit Only Bondholders

16. The Court, in its 2017 Opinion, denied the Ad Hoc GO Bondholders' request for an additional committee largely due to their assertion that their claim was secured. Like the Ad Hoc GO Bondholders before it, the Motion argues that general obligation bonds are secured and entitled to a priority of payment over and above all other creditors. This, in and of itself, is grounds to deny the Motion, as any benefit that can be provided by the proposed committee over and above the benefits provided by either the Committee (to the extent the general obligation bonds are unsecured) or the other, highly active, holders of general obligation bonds (to the extent the general obligation bonds are secured) is a benefit that "flows to the [bondholders] and not to the [Debtors]." *In re Cumberland Farms, Inc.*, 142 B.R. 593, 595 (Bankr. D. Mass. 1992). If the holders of general obligation bonds were able to "develop through their collective wisdom an effective strategy" to support their alleged security interest, "[t]hat strategy would help them but not the [Debtors] whose funds pay" for an additional committee. *Id.*

17. Stated more simply, it makes no sense that the Debtors should pay for the efforts of allegedly secured creditors that are trying to take the Debtors' assets for themselves, with no benefit to the Debtors or to other creditors. Instead, such expenses "are properly added to the debt to the extent permitted by section 506(b)" of the Bankruptcy Code. *Id.* Moreover, even if the general obligation bondholders' assertions of a security interest and a priority could, somehow, be shown to benefit the debtor, the general obligation bondholders can be compensated under a substantial contribution motion. *See generally In re Spansion, Inc.*, 421

9

Case:17-03283-LTS Doc#:6166 Filed:04/09/19 Entered:04/09/19 16:12:06 Desc: Main
Document Page 10 of 11

B.R. at 164 (concluding "that the equity security holders are adequately represented in this case without the need for an "official" committee and, if they make a substantial contribution in this case, there exists a remedy under Bankruptcy Code § 503(b)(3)(D)").

## **CONCLUSION**

18. Courts have held that "appointment of an additional committee is considered extraordinary relief and should be the rare exception." *In re Spansion*, 421 B.R. at 156 (internal citations omitted). For the reasons discussed above, the Motion does not establish that an additional committee is needed to adequately represent the interests of allegedly secured individual or modest-sized holders of general obligation bonds, nor does it provide the compelling justifications courts require before exercising their discretion and appointing additional committees, and incurring the attendant cost and complications. Under these facts, the Court, therefore, should not depart from the general rule that additional committee are disfavored.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that this Court enter an order denying the relief requested in the Motion and granting the Committee such other and further relief as this Court deems appropriate.

Dated: April 9, 2019
      San Juan, Puerto Rico

/s/ Luc A. Despins

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel: (212) 318-6000
lucdespins@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

/s/ Juan J. Casillas Ayala

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*