UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>                    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S STATEMENT OF POSITION IN OMNIBUS OBJECTION TO CLAIMS FILED OR ASSERTED BY HOLDERS OF CERTAIN <u>COMMONWEALTH GENERAL OBLIGATION BONDS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Ambac Assurance Corporation ("Ambac") hereby submits this Statement of Position in connection with its Notice of Participation (Dkt. No. 6169) filed pursuant to the *Initial Procedures for Resolving Omnibus Objection of (i) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (ii) the Official Committee of Unsecured Creditors Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No. 5143-2, the "Initial Procedures").

1. Ambac believes that the leases between the Puerto Rico Public Buildings Authority ("PBA"), on the one hand, and the Commonwealth of Puerto Rico (the "Commonwealth") or certain of its agencies, instrumentalities, or municipalities, on the other, are "true leases," not "disguised financings," and thus should be afforded administrative expense priority under Section 365 of the Bankruptcy Code (as incorporated by Section 301(a) of the Puerto Rico Oversight, Management and Economic Stability Act ("PROMESA")). Ambac has intervened in the adversary proceeding in which that issue is presented to defend its interests as a holder and/or insurer of PBA bonds with an exposure totaling approximately $162 million. *See Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Puerto Rico Pub. Bldgs. Auth.*, No. 18-ap-149-LTS (D.P.R.) (Dkt No. 54).

2. The true lease question, however, is a matter of bankruptcy law that is distinct from the question of Puerto Rico constitutional law presented in this proceeding: whether the PBA bonds are "direct obligations" of the Commonwealth for purposes of calculating the debt limit imposed by Article VI, Section 2 of the Puerto Rico Constitution.[1] Ambac believes that the PBA

---

[1] The Objectors (as defined by the Initial Procedures) agree. (*See* Dkt. No. 4784 at 2.) The "true lease" analysis under Section 365 applies principles of state law. *See, e.g., United Airlines v. HSBC Bank USA, N.A.*, 416 F.3d 609 (7th Cir. 2005). The PBA leases exhibit the indicia of true leases under Puerto Rico law, not disguised financings. Specifically, title to the property remains vested in PBA even after the expiry of the lease, and the useful life of the properties subject to the leases exceeds the duration of the leases.

1

bonds should be included in the calculation of the constitutional debt limit, and that when they are, all issuances of GO bonds in 2012 and 2014 (the "Challenged GO Bonds") violated the constitutional debt limit. Accordingly, the Challenged GO Bonds should be declared null and void, and claims based thereon disallowed.[2]

3. The omnibus objection to claims based on the Challenged GO Bonds (the "GO Claim Objection") will be litigated against a complicated backdrop of debt exposures in which the interests of the Joint Objectors (as defined by the Initial Procedures) are not perfectly aligned. For example, the invalidation of the Challenged GO Bonds would have great significance for Ambac both as a holder and/or insurer of $56 million in GO bonds issued before 2012, as well as a holder and/or insurer of gross accreted bonds totaling $1.08 billion issued by the Puerto Rico Highways and Transportation Authority, Puerto Rico Infrastructure Financing Authority, and Puerto Rico Convention Center District Authority. The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and the Official Committee of Unsecured Creditors (the "Committee"), while broadly sharing the aim of invalidating the Challenged GO Bonds, are motivated by different interests and objectives in the Title III cases. In particular, they may have different views on whether, and on what terms, to compromise or dismiss the GO Claim Objection.

4. While the Initial Procedures facilitate an orderly presentation of the issues by all affected parties, they do not and cannot deprive any Joint Objector (including Ambac) of its substantive rights—including specifically the right to settle or to refuse to settle any claim objection which they have joined. The Initial Procedures approved by the Court are silent as to settlement authority, and Ambac expressly and specifically reserves all of the substantive rights

---

[2] In the alternative, even if the PBA bonds are not included in the calculation of the debt limit, the $3.5 billion in GO bonds issued in 2014 nonetheless violated the debt limit. At a minimum, those bonds should be invalidated.

2

that it would enjoy as a separate objector, and should not be deemed to have waived or limited any such rights by virtue of its participation in the consolidated procedures established for purposes of judicial economy. The Court must at all times consider the distinct rights and interests of each Joint Objector, which may differ materially from those of the Oversight Board or the Committee. Ambac states further as follows:

## I. THE 2012 AND 2014 ISSUANCES OF GO BONDS VIOLATED THE CONSTITUTIONAL DEBT LIMIT.

### A. The PBA Bonds Should Be Included in the Debt Limit.

5. The PBA bonds are "direct obligations of the Commonwealth" for which "the full faith, credit and taxing power of the Commonwealth" is pledged; they accordingly count towards the constitutional debt limit. *See* P.R. Const. art. VI, § 2. This conclusion follows from the combination of two essential features of the PBA structure: *first*, that the rent payments due under the PBA leases (other than leases with municipalities) derive from annual appropriations by the Puerto Rico Legislative Assembly and are backed by the full faith and credit of the Commonwealth[3]; and *second*, if the Commonwealth fails to make payment on the leases, such that PBA is unable to meet its debt service obligations, the Commonwealth is directly obligated to make payment on the PBA bonds by virtue of its guaranty of those bonds—a guaranty backed by the full faith and credit of the Commonwealth. Given the Commonwealth's obligation on the PBA leases, the guaranty of the PBA bonds necessarily renders the obligation on those bonds a direct and legally enforceable obligation of the Commonwealth. The result is that the Commonwealth is on the hook for payment of the PBA bonds one way or the other. Those bonds are therefore "direct

---

[3] Rent payments under leases with municipalities are paid by the Commonwealth from funds collected on behalf of the municipalities and are guaranteed by the full faith and credit of the relevant municipality.

3

obligations of the Commonwealth" within the meaning of Article VI, Section 2 of the Puerto Rico Constitution that are subject to the constitutional debt limit.

6. In accordance with the governing bond resolution, PBA enters into lease agreements with various departments, agencies, instrumentalities, authorities, public corporations, and municipalities of the Commonwealth. The rental amount under the lease agreements must be sufficient to cover all required debt service on the PBA bonds. 22 L.P.R.A. § 916.

7. The "good faith and credit of the Commonwealth" are "pledged for the payment of the rent" due under the lease agreements with the PBA. *Id.* By law, the Commonwealth's own good faith and credit are pledged to any lease agreement involving a department, agency, instrumentality, authority, or public corporation of the Commonwealth. *Id.* In the case of a lease with a municipality, the municipality's good faith and credit are pledged. *Id.* If a non-municipality lease payment is not made when due, the Secretary of the Treasury is required to advance the unpaid rent "from any available unencumbered funds in the Treasury of Puerto Rico, and the good faith and credit of the Commonwealth are hereby pledged to produce the required advances." *Id.*

8. Importantly, however, the Commonwealth did not limit itself to pledging its full faith and credit to the PBA lease payments; it took the additional (and uncommon) step of guaranteeing the PBA bonds themselves, and pledged its full faith and credit to this guaranty to bondholders. 22 L.P.R.A. § 907a. As a result, in the event the Commonwealth fails to transfer the necessary funds for the payment of rent under the PBA leases, such that payments due on the bonds are not made, PBA creditors would have a direct and legally enforceable claim against the Commonwealth over which the Commonwealth has waived sovereign immunity. *See* P.R. Const. art. VI, § 2 ("The Secretary of the Treasury may be required to apply the available revenues including surplus to the payment of interest on the public debt and the amortization thereof in any

4

case provided for by Section 8 of this Article VI at the suit of any holder of bonds or notes issued in evidence thereof."). The effect of this guaranty of the PBA bonds—which are already payable from rent payments appropriated by the Commonwealth and backed by its full faith and credit pledge on the PBA leases—is to transform those bonds into direct obligations of the Commonwealth.

9. The Commonwealth's obligation to make the PBA lease payments used to repay the PBA bonds, combined with its judicially enforceable guaranty of payment on the PBA bonds in the event the requisite transfers are not made, establish that the PBA bonds are "direct obligations of the Commonwealth" subject to the constitutional debt limit. A failure by the Commonwealth to pay the rent amounts calculated to cover debt obligations would starve PBA of the wherewithal to meet its bond obligations, and in turn give rise to a direct claim against the Commonwealth for payment on the bonds under the Commonwealth guaranty.[4]

10. Any suggestion that the Commonwealth is not unconditionally liable for repayment of the PBA bonds is belied by its actions in recent years. Beginning at least in fiscal years 2011, 2012 and 2013, as the Commonwealth's fiscal difficulties worsened, the Commonwealth went to great lengths to enable payments to be made to PBA's bondholders, including by drawing on its own liquidity or securing alternative financing for PBA to ensure that PBA remained current on its bonds. In those years, the Commonwealth temporarily suspended payment of the debt repayment portion of the rents, and PBA was left without sufficient rent payments to cover its

---

[4] In the alternative, rent payments made by the Commonwealth under PBA leases specifically allocated to payment of principal and interest on the PBA bonds guaranteed by the Commonwealth were payments "on account of" the PBA bonds under the Puerto Rico Constitution and should be included in the debt limit calculation. *See* P.R. Const. art. VI, § 2 (including in debt limitation calculation "any amounts paid by the Commonwealth in the fiscal year next preceding the then current fiscal year for principal or interest *on account of* any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth") (emphasis added). The inclusion of such rent payments in the debt calculation makes sense where, as here, bondholders would have a direct claim against the Commonwealth in the event of a non-payment of rents and a principal or interest payment default.

bond obligations. The Commonwealth instead directed the Secretary of the Treasury to make funds available to PBA through a line of credit provided by the Government Development Bank for Puerto Rico ("GDB"), the Commonwealth's then-central bank.

11. While the funds made available to PBA were structured as an extension of credit, they were, in fact, draws on the Commonwealth guaranty. This is so because the PBA bonds are non-recourse to PBA; given that non-recourse nature, PBA would have no reason to take out a loan from GDB to make payments on its bonds. PBA was obligated to make payment on the bonds only to the extent of the rent payments it received. Under the governing bond resolution, payments on the PBA bonds are to be made "solely" from one of two sources: (1) the debt repayment portion of the rents, or (2) the "funds provided by the Commonwealth of Puerto Rico in compliance with its guaranty." The PBA bond payments in 2011 through 2013 were not funded through the debt repayment portion of the rents, which were suspended at the time. Thus, the monies received from the GDB and used by PBA to make payment on the bonds were necessarily on account of the Commonwealth guaranty. The complex structure was used to mask the reality that the Commonwealth was making payment on the bonds. Tellingly, the amounts drawn on the GDB "line of credit" in 2013 were repaid directly by the Commonwealth with proceeds from the March 2014 GO bond issuance, confirming that the Commonwealth considered the line of credit extensions as guaranty draws. The Commonwealth's actions demonstrate that it fully appreciated its legal and binding obligation to make payment on the PBA bonds.

**B.  Even if the PBA Bonds Are Not Included in the Calculation of the Debt Limit, the 2014 Issuance of GO Bonds Violated the Debt Limit.**

12. Even if the principal and interest obligations on the PBA bonds are not included in the calculation of the constitutional debt limit, the Commonwealth's issuance of $3.5 billion in GO bonds in 2014 breached the constitutional debt limit. First, when making debt limit

6

calculations to support the issuance of the 2014 GO bonds, the Commonwealth incorrectly excluded the $175 million payment on the PBA bonds in fiscal year 2013 that was made via the GDB line of credit. Because that payment was a draw on the Commonwealth guaranty of the PBA bonds—as reinforced by the fact that the line of credit was paid down with the subsequent proceeds of a GO issuance—it was required to be included in the debt limit calculation. *See* P.R. Const. art. VI, § 2 (debt limit calculation requires inclusion of "any amounts paid by the Commonwealth in the fiscal year next preceding the then current fiscal year for principal or interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth"). When that guaranty payment is included in the calculation, the threshold for determining debt ceiling compliance set forth in Article VI, Section 2 of the Puerto Rico Constitution is exceeded. *Id.* As a result, the 2014 GO bonds violated the constitutional debt limit.

13. Second, the Commonwealth also did not include a portion of the interest due on the 2014 GO bonds for the first three years after those bonds were issued—purportedly on the theory that because the interest due would be paid directly from the proceeds of the 2014 GO bond issuance it could be excluded from the calculation. The exclusion of these interest amounts finds no support in Article VI, Section 2, which requires that the Commonwealth analyze "the ***total of*** . . . the amount of principal of and interest on such bonds and notes [to be issued], together with the amount of principal of and interest on all such bonds and notes theretofore issued by the Commonwealth and then outstanding." P.R. Const. art. VI, § 2 (emphasis added). In other words, the Puerto Rico Constitution tethers the debt limit calculation to all principal and interest payments, irrespective of the source of funds that will be used to pay such principal and interest. There is no textual or other basis for excluding the interest payments due on the 2014 GO bonds from the debt limit calculation.

7

## II. THE 2012 AND 2014 ISSUANCES OF GO BONDS ARE NULL AND VOID.

14. The consequence of the 2012 and 2014 issuances of GO bonds exceeding Puerto Rico's constitutional debt limit is that those issuances are null and void. Federal and state courts that have considered the issue have almost uniformly held that a debt issuance made in violation of constitutional debt limits is null and void. *See, e.g.*, *City of Litchfield v. Ballou*, 114 U.S. 190, 191, 192 (1885) (rejecting the contention of a bondholder that, even if his bonds were invalid, the City was liable to reimburse the money he paid for the bonds); *Hedges v. Dixon Cty.*, 150 U.S. 182, 184-85, 192 (1893) (holding an entire issuance of bonds invalid and void because the issuance exceeded the state's constitutional debt limit and not allowing the appellant to recover under an equitable theory); *Town of Belleair v. Olds*, 127 F.2d 838, 838-40 (5th Cir. 1942) (holding that a bondholder of invalid bonds could not recover under the equitable theory of moneys had and received); *State v. Spring City*, 123 Utah 471, 479 (Utah 1955) (holding that even though it caused a hardship on holders of invalid bonds, neither reason nor authority allowed the plaintiff-bondholder to recover under the theory of money had and received); *State ex rel. Nuveen v. Greer*, 88 Fla. 249, 260 (Fla. 1924) (holding that a statute under which bonds were issued was deemed invalid and, therefore, bonds issued under the statute were void). The result in Puerto Rico should be no different.

## CONCLUSION

15. As indicated in the Notice of Participation (Dkt. No. 6169), Ambac intends to support the relief requested in the GO Claim Objection. Although the PBA leases are true leases afforded administrative expense priority, the PBA bonds themselves should be included in the calculation of the constitutional debt limit, and all issuances of GO bonds in 2012 and 2014 should be declared null and void. In the alternative, even if the PBA bonds are not included in the

calculation of the debt limit, the GO bonds issued in 2014 violated the debt limit and should therefore be invalidated in any event.

Dated: April 10, 2019
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
           scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Dennis F. Dunne*
    Dennis F. Dunne
    Andrew M. Leblanc
    Atara Miller
    Grant R. Mainland
    (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5000
    Facsimile: (212) 530-5219
    Email: ddunne@milbank.com
          aleblanc@milbank.com
          amiller@milbank.com
          gmainland@milbank.com

*Attorneys for Ambac Assurance Corporation*