# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>The Financial Oversight and Management Board for Puerto Rico,<br><br>    as representative of<br><br>The Commonwealth of Puerto Rico, et al.,<br><br>        Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## OBJECTION OF THE LAWFUL CONSTITUTIONAL DEBT COALITION TO THE MOTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS, UNDER BANKRUPTCY CODE SECTIONS 105(a) AND 502 AND BANKRUPTCY RULE 3007, ESTABLISHING PROCEDURES WITH RESPECT TO OMNIBUS CONDITIONAL OBJECTION TO CLAIMS FILED OR ASSERTED BY THE PUBLIC BUILDINGS AUTHORITY, HOLDERS OF PUBLIC BUILDINGS AUTHORITY BONDS, AND HOLDERS OF CERTAIN <u>COMMONWEALTH GENERAL OBLIGATION BONDS</u>

---

[1]   The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.     PRELIMINARY STATEMENT ..................................................................................1

II.    RELEVANT FACTUAL BACKGROUND.............................................................5

I.     ARGUMENT ...........................................................................................................7

    A.     The Court Should Deny The Conditional Procedures Motion Because The
Court Lacks Subject Matter Jurisdiction Over The Underlying Matter .................7

    B.     The Court Should First Consider and Decide the Proper Reading of the
Puerto Rico Constitution's Debt Limit .................................................................11

CONCLUSION...................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page**

## **Cases**

*Aetna Life Ins. Co. v. Haworth*,
  300 U.S. 227 (1937) .................................................................................. 7, 9

*Aurelius Capital Master, Ltd. v. Commonwealth of Puerto Rico (In re Fin. Oversight and Mgmt.
  Board for Puerto Rico)*,
  2019 WL 1349221 (1st Cir. Mar. 26, 2019) ............................................. 2, 8, 9, 10

*Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico v. Fed. Deposit Ins. Corp.*,
  681 F. Supp. 981 (D.P.R. 1988) ................................................................ 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .................................................................................. 9

*Maryland Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941) ................................... 98, 10

*Monsanto Co. v. Geertson Seed Farms*,
  561 U.S. 149 (2010) .................................................................................. 9

*N.Y. Civil Liberties Union v. Grandeau*,
  528 F.3d 122 (2d Cir. 2008) ..................................................................... 10

*Shell Oil Co. v. Noel*,
  608 F.2d 208 (1st Cir. 1979) .................................................................... 8

*Sony BMG Music Entm't. v. Tenenbaum*,
  660 F.3d 487 (1st Cir. 2011) .................................................................... 7

*Regency Fin. Co. v. Trichilo In re Trichilo*,
  540 B.R. 547 (Bankr. M.D. Pa. 2015) ..................................................... 8

*Whitmore v. Ark.*,
  495 U.S. 149 (1990) .................................................................................. 9

## **Rules and Regulations**

Fed. R. Bankr. P. 3007 .......................................................................................... 1, 5, 6

## **Constitutional Provisions**

P.R. Const. art. VI, § 2 ......................................................................................... 5

U.S. Const. art. III, § 2 ......................................................................................... 2, 7

The Lawful Constitutional Debt Coalition (the "LCDC"),[2] hereby objects to the *Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* (Dkt. 6104) (the "Conditional Procedures Motion")[3] and respectfully states as follows.

## I.    PRELIMINARY STATEMENT

1.     By the Conditional Procedures Motion, the GO Group asks the Court and hundreds of creditors to undertake an unnecessary months-long process for litigating its Conditional PBA Claims Objection, an objection that seems more interested in influencing public opinion than presenting a justiciable case or controversy.[4]  Put simply, the members of the GO Group want an order entered to govern in the hypothetical scenario that the Court (over their objection) sustains the omnibus claims objection to the GO Group's claims[5] filed by the Financial Oversight and

---

[2]   The members of the LCDC and their respective holdings are set forth in the First Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019 (Dkt. 5807).

[3]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Conditional Procedures Motion or in the *Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* (Dkt. 6099) (the "Conditional PBA Claims Objection").

[4]   *See also* the GO Group's other similar posts by way of "informative motions," for example, Dkt. Nos. 6123, 6124, 5977 (the amended threat to seek to undo whatever the Oversight Board has done or plans to do, except for the COFINA Plan and Commonwealth-COFINA Settlement).  While the Court has permitted informative motions for purposes of hearing competing perspectives throughout the Title III cases, the Court has never permitted unripe contested matters to proceed.

[5]   *See Omnibus Objection of (i) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (ii) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* (Dkt. 4784) (the "Unlawful GO Claims Objection").

Management Board ("Oversight Board") and Official Committee of Unsecured Creditors
("UCC")—an objection that the GO Group vigorously opposes and that has yet to be decided.[6]

2.      The GO Group itself acknowledges that the relief sought in its self-styled
***Conditional*** PBA Claims Objection would be relevant only of the Court accepts legal arguments
that the GO Group describes as "unprecedented and wrong, and rel[ying] on factual premises that
are demonstrably false." Conditional PBA Claims Objection at 2. The Court should reject the GO
Group's invitation to wade into hypothetical fact patterns and their potential impact on future
events. The Conditional Procedures Motion as filed does not meet the requirements of Article III
of the Constitution and must be denied for lack of subject matter jurisdiction.

3.      Essential to the exercise of the judicial power of the United States is the existence
of an actual case or controversy. U.S. CONST. art. III, § 2, cl. 1. The First Circuit reaffirmed this
very principle when it affirmed this Court's dismissal of an action brought by members of the GO
Group on the grounds that the claims asserted therein were hypothetical and not ripe. *Aurelius
Capital Master, Ltd. v. Commonwealth of Puerto Rico (In re Fin. Oversight and Mgmt. Board for
Puerto Rico)*, 2019 WL 1349221 (1st Cir. Mar. 26, 2019). Undeterred, the GO Group once again
seeks an advisory opinion from this Court based upon a conditional and hypothetical set of
circumstances. The Conditional Procedures Motion asks the Court to contravene Article III and
issue an order that the Court is not empowered to issue because the Conditional PBA Claims
Objection is, as the GO Group admits, entirely dependent upon various contingencies that have

---

[6]   If in fact the Court sustains the Unlawful GO Claims Objection, it is unclear what standing
holders of disallowed claims would even have to object to other claims.

yet to occur and which may never occur.[7]  As such, the Conditional Procedures Motion is simply not justiciable.[8]

4.      If the Court were limited to the erroneous grounds in the Unlawful GO Claims Objection asserted by the Oversight Board and the UCC, the Court might well deny the objection on those grounds.  However, the LCDC intends to participate in the litigation of the Unlawful GO Claims Objection and put forward a more coherent and plain reading of the Puerto Rico Constitution's debt limit than the one urged by the special claims committee of the Oversight Board and the UCC.  If the Court (or ultimately the Supreme Court of Puerto Rico) were to adopt the LCDC's textual analysis, then the Conditional PBA Claims Objection and the Conditional Procedures Motion will never be relevant to any proceeding.

5.      As to how the Court manages its docket, the Conditional Procedures Motion is entirely premature because the Court has not yet considered how best to adjudicate the Unlawful GO Claims Objection.  In the interest of providing a framework for an efficient resolution of these issues, the LCDC has already initiated discussions with the Oversight Board, the UCC, and other parties in interest regarding the appropriate sequencing of the contested matter already commenced.  Specifically, the Court may first wish to consider the proper interpretation of the Puerto Rico Constitution itself—a pure legal issue that will not be cost prohibitive, or require hundreds of people to respond to discovery requests, or launch examinations into those people's

---

[7]     The "Conditional Objection assumes that certain premises of the [Unlawful GO Claims Objection] are correct, and further assumes that the [Unlawful GO Claims Objection]'s arguments could be applied retroactively against bonds issued several years ago, despite the fact and legal import of the Commonwealth's extensive contrary pronouncements."  Conditional PBA Claims Objection at 2-3.

[8]     At bottom, the GO Group wants the Court to explain how the story will end before the Court has a chance even to decide how it starts, but this is an improper use of the judiciary and a misallocation of resources.

knowledge, good faith, etc.  All parties could put forward their arguments and the Court[9] would answer one or more threshold questions.  Should the Court determine the debt limit was not properly applied, the next step would be to determine, based on relevant financial evidence, which bonds were issued in violation of the debt limit.  Only in the final sequence would the Court address the issue the GO Group inappropriately wants to lead with—namely, the appropriate remedy that holders of such bonds may have.  The GO Group will be afforded ample opportunity to repeat its views on the debt limit, its application, and the remedial consequences of the positions taken by others as part of the procedures already in place.  The LCDC respectfully submits that its proposed framework, requiring that the first phase of this dispute address threshold legal issues, is based upon the protocol that the Court established for resolving the so-called Commonwealth-COFINA Dispute.[10]

6.      The LCDC intends to negotiate the proposed procedures that would govern the Unlawful GO Claims Objection in accordance with the Objection Procedures Order already entered by the Court, and if agreement cannot be reached, the LCDC will flesh out the process previewed herein in due course.  The LCDC previews its proposed phased approach here only to highlight for the Court and parties in interest that there is a path forward for efficiently and expeditiously resolving these important issues that is respectful of both the Court's finite judicial resources and the need to move the Commonwealth Title III case away from vexatious litigation

---

[9]   Alternatively, a party may seek to have the question concerning the interpretation of the Puerto Rico Constitution certified to the Supreme Court of Puerto Rico.

[10]   *See Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (Dkt. 996); *Order (A) Confirming Scope of COFINA and Commonwealth Agent's Authority Under Stipulation and Order and (B) Dismissing, Without Prejudice, Certain Claims that Exceed the Scope of the Commonwealth-COFINA Dispute*, Adv. Proc. No. 17-257-LTS (Dkt 167) (the "Scope Order").

and towards a confirmable plan of adjustment.  For now, the Conditional Procedures Motion must
be denied.

## II.   RELEVANT FACTUAL BACKGROUND

7.      On February 14, 2019, the Oversight Board and UCC filed the Unlawful GO Claims
Objection, which asserts that certain Commonwealth general obligation bonds ("GO Bonds") that
were issued in 2012 and 2014 (the "Late Vintage GO Bonds") are invalid because they were issued
in violation of the debt limit imposed in article VI, section 2 of the Puerto Rico Constitution (the
"Constitutional Debt Limit").[11]  The primary basis for this contention is that the Puerto Rico Public
Buildings Authority (the "PBA") was allegedly a "sham" designed to circumvent the
Constitutional Debt Limit.  Accordingly, the argument goes, bonds issued by the PBA (the "PBA
Bonds") should be considered direct obligations of the Commonwealth and count towards the first
prong of the Constitutional Debt Limit, which references future maximum annual debt service on
direct obligation bonds.  Concurrently therewith, the Oversight Board and UCC also filed the
*Urgent Motion of (i) Financial Oversight and Management Board, Acting Through its Special
Claims Committee, and (ii) Official Committee of Unsecured Creditors, Under Bankruptcy Code
Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to
Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General
Obligation Bonds and Requesting Related Relief* (Dkt. 4788) (the "Objection Procedures Motion"),
which set forth the following proposed procedures for litigating and resolving the Unlawful GO
Claims Objection:

- All parties who wish to participate in the litigation are required to file a
  Notice of Participation within 60 days of the entry of an order approving
  the proposed procedures (the "Participation Deadline");

---

[11]   *See* P.R. CONST. art. VI, § 2.

- Twenty one days after the Participation Deadline, all parties will exchange proposals setting forth the procedures that will govern the litigation (the "Exchange Deadline");

- Twenty one days following the Exchange Deadline, the Objectors will file a recommendation concerning the procedures with the District Court (the "Recommendation Deadline");

- Responses to the recommendation are due seven days after the filing of the recommendation (the "Response Deadline");

- Replies are due three days after the Response Deadline (the "Reply Deadline");

- As soon as practicable after the Reply Deadline, the Court will hold a status conference to discuss and decide the litigation schedule.

8.    On February 15, 2019, the Objection Procedures Motion was approved by the Court.[12]  The Participation Deadline is currently scheduled for April 16, 2019.[13]

9.    On April 2, 2019, the GO Group filed the Conditional PBA Claims Objection, in which it argues that, *if* the Court were to accept the various legal and factual premises underlying the Unlawful GO Claims Objection, then PBA Bonds and GO Bonds issued in and after 2009 should likewise be invalidated as issued in violation of the Constitutional Debt Limit.

---

[12]    *See Order, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, Establishing Initial Procedures with Respect to Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Granting Related Relief* (Dkt. 5143) (the "Objection Procedures Order").

[13]    The LCDC has filed concurrently herewith its Notice of Participation (the "Notice of Participation") as required under the Objection Procedures Order and intends to participate in the Unlawful GO Claims Objection litigation process.  The LCDC did not agree with the choices presented to it in the form notice, and has simultaneously filed the *Statement of Position of the Lawful Constitutional Debt Coalition Regarding Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* ("Position Statement"), which sets forth a coherent description of our position on the Constitutional Debt Limit and an alternative basis upon which to disallow bonds or guaranties purportedly issued with full faith and credit or on and after March 2012, including the Late Vintage GO Bonds and any guaranties issued during that period.

10.     Also on April 2, 2019, the GO Group filed the Conditional Procedures Motion.
Therein, the GO Group sets forth a proposed procedure for adjudicating its contingent objection
that would replicate the process set forth in the Objection Procedures Motion.  Specifically, the
Conditional Procedures Motion envisions (i) a sixty-day period following the entry of an order
approving the Conditional Procedures Motion for the filing of Notices of Participation; (ii) a
twenty-one day period for exchanging litigation procedures proposals; (iii) a twenty-one day
period for the GO Group to file a recommended litigation procedure with the Court; (iv) a seven-
day period to file responses to the recommendation; (v) a three-day period to file replies to the
responses; and (vi) the provision of a status conference "as soon as practicable" after the replies
are filed to discuss and decide the litigation schedule.

11.     The Conditional Procedures Motion is set to be heard at the April 24-25, 2019
omnibus hearing.  If the Court grants the Conditional Procedures Motion at the omnibus hearing,
then the earliest deadline for replies in support of the GO Group's recommended litigation
procedures would fall on August 15, 2019.

## I.     ARGUMENT

### A.     THE COURT SHOULD DENY THE CONDITIONAL PROCEDURES MOTION BECAUSE THE COURT LACKS SUBJECT MATTER JURISDICTION OVER THE UNDERLYING MATTER

12.     As a threshold matter, the Conditional Procedures Motion should be denied because
the Court lacks subject matter jurisdiction over the Conditional PBA Claims Objection.  An
essential element of the exercise of the judicial power of the United States is the existence of an
actual case or controversy.  U.S. CONST. Art. III, § 2, cl. 1; *see, e.g.*, *Sony BMG Music Entm't v.
Tenenbaum*, 660 F.3d 487, 511 (1st Cir. 2011) ("Under Article III, judicial power is constrained
to 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive
character, as distinguished from an opinion advising what the law would be upon a hypothetical

state of facts.'" (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937))); *Banco y Agencia de Financiamiento de la Vivienda de Puerto Rico v. Fed. Deposit Ins. Corp.*, 681 F. Supp. 981, 985-86 (D.P.R. 1988) ("Moreover, '[n]o matter what type of case, federal courts are not empowered to give plaintiff advisory opinions where there is no actual controversy." (quoting *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979))); *Regency Fin. Co. v. Trichilo (In re Trichilo)*, 540 B.R. 547, 551 (Bankr. M.D. Pa. 2015) ("Federal courts, including bankruptcy courts, are limited to deciding only cases or controversies and should not render advisory opinions.").

13.     As the name of the pleading itself confirms, the Conditional PBA Claims Objection is entirely based upon speculation, conjecture, and contingencies.  Rather than presenting the Court with an actual, ripe controversy, the GO Group presents the Court with various hypotheticals, each of which is based upon other, predicate hypotheticals.  The Court need only review the GO Group's Table of Contents in its Conditional PBA Claims Objection (cut and pasted below) to see the recurring series of "if's" and "then's" and "would's":

I.   A. *If* The PBA Is Determined To Be An Unconstitutional Evasion Of The Commonwealth's Debt Limit, *Then* Any Remedy For That Constitutional Violation *Would* Necessarily Fall On The PBA And Holders Of PBA Bonds

B.  *If* The Commonwealth's Guaranty Of The PBA Bonds And The Commonwealth's Obligations Under The PBA Leases *Would* Require That The PBA Bonds Be Recharacterized As Direct Obligations Of The Commonwealth, *Then* Those Obligations Were *Ultra Vires*

C.  *If* The PBA Leases Are Recharacterized As Disguised Financings, *Then* The PBA Leases And The Commonwealth's Guaranty Of The PBA Bonds Were *Ultra Vires*

II.  Consistent Application Of The Selective Claim Objection's Logic *Would* Result In Invalidation Of GO Bond And PBA Bond Issuances Beginning As Early As Fiscal Year 2010

(emphasis added).[14]

14.    The First Circuit recently reminded all parties in these cases of the limits of federal

jurisdiction:

> [D]istrict courts must examine "whether the facts alleged, under all the
> circumstances, show that there is a substantial controversy, between parties having
> adverse legal interests, of sufficient immediacy and reality to warrant the issuance
> of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S.
> 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941) (emphasis added); *see also Aetna*, 300
> U.S. at 241, 57 S.Ct. 461 (describing a justiciable controversy as "a real and
> substantial controversy admitting of specific relief through a decree of a conclusive
> character, as distinguished from an opinion advising what the law would be upon a
> hypothetical state of facts").

*Aurelius Capital Master, Ltd.*, 2019 WL 1349221, at *4 (emphasis in original).

15.    The Conditional PBA Claims Objection blatantly disregards the limited jurisdiction

of federal courts, including another constitutional infirmity; namely, that the plaintiff have

standing to sue.  Article III of the U.S. Constitution does not confer standing upon a party to seek

the entry of an order, even a procedural order, based upon the possibility that the Court will issue

a future ruling adopting various hypothetical legal and factual assumptions that the litigant itself

admits give rise to only possible future injury.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

(2013) ("To establish Article III standing, an injury must be concrete, particularized, and actual or

imminent; fairly traceable to the challenged action; and redressable by a favorable ruling. . . .  Thus,

we have repeatedly reiterated that threatened injury must be *certainly impending* to constitute

injury in fact, and that [a]llegations of *possible* future injury are not sufficient.") (quoting

---

[14]    *See Aurelius Capital Master, Ltd.*, 2019 WL 1349221, at *5 (in affirming this Court's decision
dismissing the GO Group's adversary complaint, the First Circuit noted that this Court found that the very
language employed (*i.e.*, that any diversion of the "Restricted Revenues" "*would* constitute" an unlawful
taking) laid bare the hypothetical nature of their request).

*Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 149 (2010) and *Whitmore v. Ark.*, 495 U.S. 149, 158 (1990)) (emphasis in original; internal quotations and citations omitted).

16.     The relief sought in the Conditional Procedures Motion would also constitute an incredible waste of limited judicial resources.[15]   The Conditional PBA Claims Objection seeks only *conditional* relief.   That is to say, the GO Group filed the Conditional PBA Claims Objection based on the assumption that its claims will either be disallowed or subordinated on a single untested (and incorrect) theory advanced by the Oversight Board and UCC.[16]   This is an improper foundation for a claims objection.   *See Aurelius Capital Master, Ltd.*, 2019 WL 1349221, at *4 (quoting *Maryland Cas. Co. v. Pac. Coal & Oil. Co.*, 312 U.S. 270, 273 (1941)).   Rather than comply with the existing Procedures Order—a matter on which the GO Group has already been heard—the GO Group now jumps the gun in seeking procedures to litigate the impact of a potentially adverse judicial ruling that is at best months away from coming.   In the meantime, the Court and hundreds of creditors would miss the opportunity to address the threshold issues that, if solved, would yield a greater return on investment in time, energy and money for all interested parties.

---

[15]   Even assuming arguendo there were a present case or controversy, the motion should be denied for lack of ripeness on prudential grounds.   *See, e.g.*, *N.Y. Civil Liberties Union v. Grandeau*, 528 F.3d 122, 131 (2d Cir. 2008) (Sotomayor, J.) (explaining that claim can be unripe on prudential grounds, even where it meets the Article III ripeness requirement, if the claim is not "sufficiently definite and clear to permit sound review").

[16]   The GO Group does not even believe the arguments it sets forth in the Conditional PBA Claims Objection.   The GO Group clearly says as much in the Conditional PBA Claims Objection:   "In due course, our forthcoming response to the [Unlawful GO Claims Objection] will show that the [Unlawful GO Claims Objection] advances legal arguments that are unprecedented and wrong, and relies on factual premises that are demonstrably false . . . .   [T]his Conditional Objection assumes that certain premises of the [Unlawful GO Claims Objection] are correct, and further assumes that the [Unlawful GO Claims Objection]'s arguments could be applied retroactively against bonds issued several years ago, despite the fact and legal import of the Commonwealth's extensive contrary pronouncements."   Conditional PBA Claims Objection at 2-3.

17.     Apparently terrified by the potential disallowance or subordination of Late Vintage GO Bonds, the Conditional PBA Claims Objection and the attendant Conditional Procedures Motion are a blatant attempt by the GO Group to retaliate against other creditors whose bonds have lawful priority under the Puerto Rico Constitution.  Indeed, the GO Group acknowledges that their motivation is to ensure everyone hears their threat that "[w]e are all in this misguided exercise together."  *See* Conditional PBA Claims Objection at 6.

18.     Notwithstanding the GO Group's desire for company, the Conditional PBA Claims Objection is not ripe and will become moot if the Court holds, as the LCDC believes it should, that the PBA is not a sham and its bonds do not count as "direct obligations of the Commonwealth for money borrowed directly by the Commonwealth" in the first prong of the Constitutional Debt Limit.  Nonetheless, a proper application of the entire Constitutional Debt Limit provision as written still results in the Late Vintage GO Bonds being disallowed or their supposed constitutional priority being revoked as unlawful.

### B.     THE COURT SHOULD FIRST CONSIDER AND DECIDE THE PROPER READING OF THE PUERTO RICO CONSTITUTION'S DEBT LIMIT

19.     Consistent with how the Court has handled similar complex situations,[17] the LCDC respectfully submits that the Unlawful GO Claims Objection should be litigated in three phases so as to crystalize the first order issues and limit the amount of time and effort spent needlessly on time consuming and costly discovery.

---

[17]   In controlling the rise of the "litigation machine," the Court appropriately deferred its review of the potential consequences of determining the ownership of the Commonwealth's sales and use taxes (*i.e.*, the so-called "Commonwealth-COFINA Dispute") until after it ruled on the threshold constitutional issue. *See Scope Order* at 5-6.

20.     The first phase of the litigation should address the legal question of interpreting the Constitutional Debt Limit and the constitutionality of the PBA.  This can be briefed by the parties and decided by the Court without resort to any discovery about the *bona fides* of individual bondholders who acquired bonds or even the actual levels of revenues deposited into the Puerto Rico Treasury in a given year.[18]

21.     In the LCDC's Position Statement filed contemporaneously herewith, the LCDC sets forth its position on the proper interpretation of the Constitutional Debt Limit.  The LCDC's view is that PBA is not a sham; rather, it is an independent public corporation of the Commonwealth established over 60 years ago by a valid statute with no improper purpose.  Indeed, the PBA was established ***three years*** before the Constitutional Debt Limit was even adopted, and ***ten years*** before the Commonwealth began to guarantee its bonds.  In accordance with its enabling act, the PBA owns, operates, and leases property, including to the Commonwealth and Commonwealth departments, agencies, other public corporations, and municipalities, and it also has over 1,000 employees.  In order to finance the construction and maintenance of essential government buildings and facilities (such as schools, hospitals, police stations, firehouses, administrative buildings, and courthouses), the PBA has issued more than $4 billion of bonds over the course of many years, the payment of which the Commonwealth guaranteed pursuant to another duly-enacted statute of the Commonwealth beginning in 1968.  The LCDC will demonstrate that respect for the separateness of the PBA from the Commonwealth is required under Puerto Rico law, First Circuit law, and PROMESA.  As such, the PBA Bonds are not direct

---

[18]   During this phase, parties may wish to move the Court to certify the issue of the interpretation of the Puerto Rico Constitution to the Supreme Court of Puerto Rico.  If so, the Court may consider whether certification is warranted and appropriate under the circumstances.

obligations of the Commonwealth for money borrowed directly by the Commonwealth for purposes of the first prong of the Constitutional Debt Limit.

22.     The LCDC will also demonstrate, however, that upholding the constitutionality of the PBA will not help the Late Vintage GO Bonds achieve lawful status.  As set forth in the LCDC Position Statement, the plain language of the Constitutional Debt Limit unambiguously includes the portion of PBA debt service payments made by the Commonwealth for purposes of the second prong of the Constitutional Debt Limit—a prong that has been ignored under an apparent misapprehension of what it actually says (in both English and Spanish).  Accordingly, the payments made by the Commonwealth in the fiscal year prior to each issuance of the Unlawful GO Bonds for principal and interest on the PBA Bonds should have been included in the Constitution Debt Limit calculation.[19]  A legal determination by this Court as to whether to honor the literal language employed by the framers of the Puerto Rico Constitution, which also supports the logic of the limitation itself, will clarify the remaining issues by allowing the parties to determine when the Constitutional Debt Limit was breached and thus which bond issuances were issued in violation thereof.  A determination of the remedies, if any, that holders of Late Vintage GO Bonds have against the Commonwealth would come last, as would be appropriate in any analysis of this type.  This three-part phasing would also offer the Oversight Board the option to formulate a plan of adjustment that proposes a fair treatment for holders of indisputably lawful

---

[19]  The Constitutional Debt Limit prohibits the Commonwealth of from issuing bonds or guarantees backed by the Commonwealth's full faith, credit, and taxing power if the sum of (i) the amount of principal and interest due on the bonds proposed to be issued together with all other full faith and credit bonds previously issued by the Commonwealth and still outstanding, payable in any fiscal year, plus (ii) any amounts paid by the Commonwealth in the fiscal year immediately preceding the then current fiscal year "*for principal and interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth*," exceeds 15 percent of the average annual revenues deposited into the Treasury of Puerto Rico over the two previous years.  Additional support for the LCDC's interpretation is set forth in detail in the LCDC's Position Statement filed contemporaneously herewith.

priority bonds, offers compromises for holders of disputed claims who choose to settle, and reserves sufficient currency for holders of disputed claims who may prefer to litigate their rights to final conclusion.

## **CONCLUSION**

23.     The LCDC respectfully requests the Court deny the GO Group's Conditional Procedures Motion for lack of subject matter jurisdiction and encourage the parties to proceed in a manner consistent with the existing Objection Procedures Order.

14

DATED:  April 11, 2019

Respectfully submitted,

REICHARD & ESCALERA

**By :**   */s/ Rafael Escalera*
      **Rafael Escalera**
      USDC No. 122609
      escalera@reichardescalera.com

      **Sylvia M. Arizmendi**
      USDC-PR 210714
      arizmendis@reichardescalera.com

      **Carlos R. Rivera-Ortiz**
      USDC-PR 303409
      riverac@reichardescalera.com

      **Gustavo A. Pabón-Rico**
      USDC-PR 231207
      pabong@reichardescalera.com

      255 Ponce de León Avenue
      MCS Plaza, 10th Floor
      San Juan, Puerto Rico 00917-1913

QUINN   EMANUEL   URQUHART   &
SULLIVAN, LLP

**Susheel Kirpalani** (*pro hac vice*)
susheelkirpalani@quinnemanuel.com

**K. John Shaffer** (*pro hac vice*)
johnshaffer@quinnemanuel.com

**Daniel Salinas**
USDC-PR 224006
danielsalinas@quinnemanuel.com

**Matthew Scheck** (*pro hac vice*)
matthewscheck@quinnemanuel.com

**Eric Kay** (*pro hac vice*)
erickay@quinnemanuel.com

**Darren M. Goldman** (*pro hac vice*)
darrengoldman@quinnemanuel.com

**Zachary Russell** (*pro hac vice*)
zacharyrussell@quinnemanuel.com

51 Madison Avenue, 22nd Floor
New York, New York 10010-1603

*Co-Counsel for the Lawful Constitutional Debt Coalition*

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel for the parties of record.

*/s/Carlos R. Rivera-Ortiz*
USDC-PR 303409