# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>   as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>   Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### OBJECTION OF THE BANK OF NEW YORK MELLON
### TO THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD'S URGENT
### MOTION FOR EXPEDITED DISCOVERY OF CONFIDENTIAL INFORMATION

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ........................................................................................................................... 3

I. THE MOTION SHOULD BE DENIED FOR IMPROPERLY SEEKING CONFIDENTIAL INFORMATION ..................................................................... 3

II. THE SCOPE AND TIMING OF THE REQUESTED DISCOVERY CREATES AN UNREASONABLE BURDEN ON BNYM ............................................................. 6

III. ANY ORDER GRANTING THE OVERSIGHT BOARD'S MOTION SHOULD INCLUDE PROTECTIONS FOR BNYM ................................................................ 8

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Enargy Power (Shenzhen) Co. v. Wang*, No.
   13 Civ. 11348 (DJC),
   2014 WL 2048416 (D. Mass. May 16, 2014) ............................................................................. 5

*Transcor, Inc. v. Furney Charters, Inc.*,
   212 F.R.D. 588 (D. Kan. 2003) ................................................................................................. 5

**Statutes**

12 U.S.C. § 3403(b) ........................................................................................................................ 4

15 U.S.C. § 6801(a) ........................................................................................................................ 4

9-B Me. Rev. Stat. § 162 ................................................................................................................ 4

Cal. Fin. Code § 4052.5 .............................................................................................................. 4, 5

Cal. Fin. Code § 4057 .................................................................................................................... 8

Conn. Gen. L. § 36a-43(a) ............................................................................................................. 9

Conn. Gen. Stat. § 36a-42 .............................................................................................................. 4

Conn. Gen. Stat. § 36a-43(b) ......................................................................................................... 5

The Bank of New York Mellon ("BNYM"), by and through its undersigned counsel, respectfully submits this objection to the *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico for Entry of an Order under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders*, [ECF No. 6143] (the "Motion"). For all of the reasons stated below, the Court should deny the Motion.

## PRELIMINARY STATEMENT

By its Motion, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") seeks to compel the disclosure by BNYM of confidential bank customer information with respect to over 230 individual BNYM Participant Holders[2] and payments associated with more than 170 individual bonds, each with a separate CUSIP number.[3] Were this not already a daunting task, the Oversight Board requests that BNYM produce such information on a highly expedited basis, by April 19, 2019. The Oversight Board's demands are untenable.

The Motion ignores legal requirements that compel BNYM to maintain the confidentiality of the information the Oversight Board seeks by this Motion. Nor does the Oversight Board allow for a necessary process by which BNYM can provide its customers with notice and an opportunity to object to the Oversight Board's request. These failings alone warrant the denial of the motion.

---

[2] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

[3] CUSIP is an acronym for Committee on Uniform Security Identification Procedures. Similar to a serial number, a distinct CUSIP number is assigned to each maturity of a municipal security issue.

Beyond that, the burden imposed on BNYM to produce the substantial amounts of information by April 19, 2019, is unreasonable. The Oversight Board only raised the need for the requested disclosures with BNYM on April 2, 2019, and BNYM only received the actual request for documents set forth in Exhibit B of the Motion on the evening of April 8, 2019. BNYM has no responsibility for any delay in seeking these documents, and the burden resulting from any delay should not be visited on BNYM. Accordingly, should BNYM be ordered to produce responsive documents, the date by which it must comply should be extended to a reasonable date that accounts for the enormity of the task being placed on BNYM.[4]

This Court should deny the motion. Alternatively, and in light of the various legal claims that might be asserted against BNYM for complying with the Oversight Board's request should this Court grant the motion and order BNYM to produce some or all of the requested information, as well as the financial expense BNYM will incur in collecting and producing the information, BNYM needs this Court's protection. The Court should provide in any Order that:

(1) No action taken by BNYM pursuant to or in compliance with such order shall subject BNYM to any liability whatsoever;

(2) BNYM shall, prior to producing documents to the Oversight Board, notify its customers of the request to disclose their information and provide reasonable time for customers to object to the production, <u>or</u>, in the event that the Court does not grant BNYM's request to notify its customers of, and/or to serve its customers with, the Court's Order, then BNYM is relieved from any obligation to so notify and/or serve its customers, for good cause shown;

---

[4] Other parties have raised similar issues. *See, e.g.*, Letter from Jonathan K. Youngwood, counsel for JPMorgan Chase Bank, N.A., to Edward S. Weisfelner, *et al.*, counsel for the Oversight Board, dated April 12, 2019, a copy of which is attached hereto as Exhibit A.

(3) The Oversight Board shall indemnify and hold BNYM harmless against any claims, whether direct or indirect, arising from BNYM's compliance with the Court's Order;

(4) The deadline for BNYM to comply is no earlier than April 30, 2019, which deadline may be extended for reasonable cause, and BNYM shall not be subject to sanctions for any failure to meet such deadline if it is attempting in good faith to comply;

(5) The Oversight Board shall maintain the confidentiality and security of any customer information BNYM produces in response to the discovery request; and

(6) The Oversight Board must bear the fees, costs, and expenses, including, without limitation, the fees and costs of internal and external counsel, research costs, and production costs, for conducting the requested search and production.

## ARGUMENT

### I. THE MOTION SHOULD BE DENIED FOR IMPROPERLY SEEKING CONFIDENTIAL INFORMATION

The Oversight Board requests that this Court order BNYM to produce documents with respect to money payments it received in connection with more than 170 individual CUSIPs for further distribution to more than 230 Participant Holders, some of which may require transfers to dozens or even hundreds of individual recipients. The Oversight Board requests information "sufficient to identify: (i) the Person who received such Transfer and/or the Person on whose behalf the Transfer was made, (ii) the address of any such Person, (iii) the amount of such Transfer, (iv) the date of such Transfer, and (v) the CUSIP applicable to such Transfer." Motion, Ex. B at 2.

The Oversight Board's request seeks core, non-public personal information concerning BNYM's customers. However, that information is legally protected from disclosure. For example, under the Gramm-Leach-Bliley Act, BNYM "has an affirmative and continuing

- 3 -

obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a).  Moreover, to the extent the Oversight Board is a government authority subject to the federal Right to Financial Privacy Act, 12 U.S.C. § 3401 *et seq.*, the Oversight Board may need to demonstrate compliance with the provisions of that Act before BNYM may disclose any of the covered information.  *See, e.g.*, 12 U.S.C. § 3403(b) ("A financial institution shall not release the financial records of a customer until the Government authority seeking such records certifies in writing to the financial institution that it has complied with the applicable provisions of this chapter.").

State laws, too, protect the confidentiality of such bank records.  *See, e.g.*, Cal. Fin. Code § 4052.5; Conn. Gen. Stat. § 36a-42; 9-B Me. Rev. Stat. § 162.  The "persons" whose personal information the Oversight Board seeks may be located throughout the United States, entitled to the protection of the laws of their states; and also may be located abroad, with possible greater protections than are granted under state and federal law.[5]  BNYM should not have to risk violating the law and opening itself up to potential claims by complying with a discovery demand that makes no allowance for the confidential nature of the information it is seeking.

Further, applicable laws provide for notice to the customer whose information is being sought, so that he or she has the opportunity to object to the disclosure.  The Oversight Board's request is, in essence, a non-party subpoena demanding information from BNYM concerning

---

[5] Without undertaking and completing the entire search necessary to provide the information the Oversight Board requests—in order to determine the location of each customer as to whom information is requested—BNYM cannot ascertain the complete scope of domestic and international laws that may apply to the disclosures.  The legal requirements provided in this objection are by way of example only.

BNYM's customers.[6] "A party has standing to quash a subpoena served on a non-party if he or she has a personal right or privilege with respect to the requested information. Bank customers have a personal right with respect to their bank account records." *Enargy Power (Shenzhen) Co. v. Wang*, No. 13 Civ. 11348 (DJC), 2014 WL 2048416, *2 n.4 (D. Mass. May 16, 2014) (citations omitted); *accord Transcor, Inc. v. Furney Charters, Inc.*, 212 F.R.D. 588, 591 (D. Kan. 2003); Conn. Gen. Stat. § 36a-43(b) ("customer of a financial institution shall have standing to challenge a subpoena of the customer's financial records"). California law goes even further and requires the consumer's "explicit prior consent" before the disclosure of nonpublic personal information. Cal. Fin. Code § 4052.5.

The Oversight Board has not provided for any notice or consent mechanism for BNYM's affected customers, nor has the Oversight Board built in any time in advance of the requested production deadline for such a mechanism to have any meaning. Without such a mechanism and the time to implement it, so that its customers may be heard, BNYM must object to the requested discovery.[7]

---

[6] The Oversight Board indicated in the Motion that it has the authority to issue subpoenas, *see* Motion at 10 n.8, but concluded that "it would not be possible to obtain subpoenas in sufficient time to preserve its rights with respect to" asserting avoidance actions. There is no reason that BNYM's customers should be less protected under the alternative the Oversight Board selected than they would be if the Oversight Board issued a subpoena to BNYM.

[7] On April 2, 2019, the Oversight Board filed a motion seeking entry of an order equitably tolling the time prescribed by 11 U.S.C. § 546 to bring certain avoidance actions. [ECF No. 6118.] Briefing on that motion continues. In the event the Court grants the Oversight Board's instant motion, and the Oversight Board files any avoidance actions in reliance upon confidential customer information disclosed by BNYM, the Oversight Board should be required to file and maintain such action(s) under seal, at least until the tolling motion and any other threshold issues are resolved.

## II. THE SCOPE AND TIMING OF THE REQUESTED DISCOVERY CREATES AN UNREASONABLE BURDEN ON BNYM

The Oversight Board seeks a massive amount of information from BNYM, and it seeks to receive that information a mere eleven days subsequent to the date of the Motion (and only four days after the Oversight Board is due to file its reply papers). Because this creates an unreasonable burden on BNYM, the Court should deny the Motion. Alternatively, the Court should set a deadline for BNYM's compliance that provides BNYM with sufficient time to comply.

Counsel for the Oversight Board first reached out to counsel for BNYM with respect to this matter on Tuesday, April 2, 2019. The Oversight Board requested that BNYM provide information concerning certain transferees with respect to a four-year period. BNYM requested additional information so that BNYM might assess the burden imposed by the Oversight Board's request and BNYM's ability to comply. Although BNYM was concerned with the confidentiality and privacy implications of the Oversight Board's informal request—and advised the Oversight Board that, at the least, BNYM could not comply without a subpoena or court order—BNYM nevertheless began the process of identifying the location and scope of responsive information.

Nearly one week later, the Oversight Board filed the Motion, seeking production of the requested information by April 19, 2019. Significantly, the Motion exponentially expanded upon the scope of the information the Oversight Board initially requested. Indeed, the Oversight Board admits that it is seeking "a large volume of information" (Motion ¶ 31), and that it had "only recently" requested that information (Motion ¶ 7), even though it has long known of any deadlines for bringing avoidance actions (*see* Motion ¶ 1). BNYM has no responsibility for any delay.

The volume of information sought in Appendix 3 of Exhibit B to the Motion, coupled with the staggering number of BNYM Participant Holders listed at pages 1-6 of Appendix 2 of Exhibit B, creates an enormous compliance burden for BNYM. Indeed, the number of BNYM Participant Holders is more than three times larger than all of the non-BNYM Participant Holders <u>combined</u>. Although BNYM appointed an internal lead to oversee the collection process immediately following the Oversight Board's April 2, 2019, phone call, the augmented scope of information sought through the Motion has critically complicated that process. BNYM needs to identify the appropriate persons to locate and collect the requested information for the more than 170 CUSIPs and over 230 Participant Holders. Those persons and the responsive information are in disparate locations and on different systems at BNYM. The massive collection of information must then be assembled to be responsive to the Oversight Board's request. So as not to be charged with any delay in the event that its objections are overruled, BNYM is continuing to attempt expeditiously to coordinate with numerous persons to locate and retrieve the voluminous responsive information.

BNYM does not object to the breadth of the requested information, as now augmented. Given that breadth, however, BNYM very likely will be unable to comply by April 19, 2019. Realistically, BNYM requires at least four weeks to comply with the Oversight Board's request for information. However, BNYM understands the time constraints under which the Oversight Board now finds itself, and is using its best efforts in attempting to comply should its objections be overruled. But given that BNYM is not in any way responsible for the urgency created by the Oversight Board here, BNYM should be given sufficient time to respond and protected from contempt in the event it simply cannot timely comply.

### III. ANY ORDER GRANTING THE OVERSIGHT BOARD'S MOTION SHOULD INCLUDE PROTECTIONS FOR BNYM

As discussed herein, BNYM is subject to myriad laws that constrain its ability to comply with requests for its customers' nonpublic personal information. Although many of the applicable laws provide at least some protection to BNYM if it is subject to a court order requiring production, BNYM should not be made to bear any risk whatsoever. Accordingly, in the event BNYM is ordered to produce the requested documents or information, the Court should provide BNYM with protection from liability for complying with such an order.

As but one example, the California Financial Information Privacy Act provides for a penalty of $2,500 for each individual violation of the Act, with no aggregate cap on the penalty. Cal. Fin. Code § 4057 ("An entity that knowingly and willfully obtains, discloses, shares, or uses nonpublic personal information in violation of this division shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) per individual violation, irrespective of the amount of damages suffered by the consumer as a result of that violation."). Where the disclosure results in the theft of the consumer's identity, the amount of the penalty is doubled. Given the scope of the information sought by the Oversight Board, such penalties could easily amount to hundreds of thousands of dollars, if not more, just from that one jurisdiction.

Moreover, given the breadth of the Oversight Board's document request, BNYM should be accorded sufficient time to respond and should be reimbursed for its fees, costs, and expenses. Accordingly, to provide adequate protection to BNYM in the event that it is compelled to disclose the information sought by the Oversight Board, BNYM requests that any such order contain the following provisions:

> (1) A provision releasing and discharging BNYM from any and all claims and liability arising directly or indirectly from any action taken, or not taken, by BNYM

pursuant to or in compliance with such order (other than its obligation to this Court to comply with such order).

(2) A provision specifying that BNYM shall, prior to producing documents to the Oversight Board, notify its affected customers of the request to disclose their information and provide adequate time for such customers to consent or object to the production, <u>or</u> in the event that the Court does not grant BNYM's request to notify its customers of, and/or serve its customers with, the Court's order, then BNYM is relieved from any obligation to so notify and/or serve its customers, for good cause shown.[8]

(3) A provision that the Oversight Board shall indemnify and hold BNYM harmless against any claims, whether direct or indirect, arising from BNYM's compliance with the Court's Order.

(4) A provision extending BNYM's time for compliance to no earlier than April 30, 2019, which deadline may be extended for reasonable cause, and further providing that BNYM shall not be subject to contempt for any failure to meet any such deadline provided that it is attempting in good faith to comply.

(5) A provision requiring the Oversight Board to maintain the confidentiality and security of all nonpublic personal customer information BNYM produces in response to the discovery request.

(6) A provision requiring the Oversight Board to reimburse BNYM for its reasonable fees, costs, and expenses, including, without limitation, fees and costs of

---

[8] *See, e.g.*, Conn. Gen. L. § 36a-43(a), which provides that "a court of competent jurisdiction, for good cause, may waive service of such subpoena, summons, warrant or court order, or certified copy thereof, upon such customer."

internal or external counsel, research costs, and production costs, incurred in conducting the requested search and production.

## CONCLUSION

For the reasons set forth herein, this Court should deny the Oversight Board's discovery motion, and grant BNYM such further relief as the Court deems just and proper.

Dated: April 12, 2019                          Respectfully submitted,
     San Juan, Puerto Rico

SEPULVADO, MALDONADO & COURET      REED SMITH LLP

*/s/ Albéniz Couret-Fuentes*                   */s/ Eric A. Schaffer*
Elaine Maldonado-Matías                          Eric A. Schaffer
USDC-PR Bar No. 217309                          Luke A. Sizemore
Albéniz Couret-Fuentes                              225 Fifth Avenue, Suite 1200
USDC-PR Bar No. 222207                          Pittsburgh, PA 15222
José Javier Santos Mimoso                      Telephone: (412) 288-3131
USDC-PR Bar No. 208207                          Facsimile : (412) 288-3063
304 Ponce de León Ave. – Suite 990           Email : eschaffer@reedsmith.com
San Juan, PR 00918                                    Email : lsizemore@reedsmith.com
Telephone: (787) 765-5656
Facsimile: (787) 294-0073                           C. Neil Gray
Email: emaldonado@smclawpr.com           599 Lexington Avenue
Email: acouret@smclawpr.com                 New York, NY 10022
Email: jsantos@smclawpr.com                  Telephone: (212) 521-5400
                                                     Facsimile: (212) 521-5450
                                                     Email: cgray@reedsmith.com

*Counsel to The Bank of New York Mellon*