# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | ) ) ) ) ) ) ) ) ) ) ) ) ) | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

## URGENT REQUEST FOR
## IMMEDIATE STATUS CONFERENCE

To the Chambers of the Honorable Judith G. Dein:

The Bondholders respectfully submit this urgent request for an immediate status conference, to take place on Friday, April 12, 2019, or on the earliest other date and time that the Court can reasonably accommodate, in connection with ongoing discovery ordered by Judge Swain in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, Docket No. 3418 in Case No. 17-bk-03283 and Docket No. 289 in Case No. 17-bk-03566 (the "Stay Relief Motion"). The Bondholders state as follows:

1.   The Bondholders are requesting this status conference with respect to two urgent matters: (1) ERS's, AAFAF's, and the Commonwealth's service of a plainly deficient privilege log, notwithstanding the Court's rulings at the April 1, 2019 hearing and the Court's April 2, 2019 order on exactly this issue, and (2) the Oversight Board's failure to timely produce documents in response to the Bondholders' subpoena. The Bondholders wish to bring these matters to the Court's attention as quickly as possible because they threaten to delay the discovery schedule and prejudice the Bondholders' rights.

2.   The Court is familiar with these discovery proceedings, ordered by Judge Swain in connection with the Stay Relief Motion. On March 15, 2019, Judge Swain entered a revised discovery and briefing schedule, largely adopting the schedule proposed by the Financial Oversight and Management Board for Puerto Rico ("Oversight Board"). *Compare Order Setting Discovery and Briefing Schedule in Connection with Motion of Certain Creditors of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay*, Docket No. 5712 in Case No. 17-bk-03283 and Docket No. 393 in Case No. 17-bk-03566, *with Urgent Motion of Debtor Regarding the Scheduling of Discovery and Briefing in Connection*

- 1 -

with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, Docket No. 5702 in Case No. 17-bk-03283 and Docket No. 388 in Case No. 17-bk-03566. The schedule was structured to provide the parties with adequate time and opportunity to conduct discovery in preparation for the May 21, 2019 hearing on the Stay Relief Motion. Holding that hearing in a prompt and timely manner, in turn, is required by § 362(e) of the Bankruptcy Code.

**Privilege Logs**

3.     Respondents made no secret from the outset that they intended to broadly invoke privileges, particularly the attorney-client privilege and the deliberative process privilege.[1] It was equally clear that the Bondholders would challenge those privileges. The Bondholders pointed out that the attorney-client privilege could apply only sparingly here because the lawyers involved were, in many cases, purporting to advise agencies that they did not work for in the first instance and, more troubling, purporting to represent parties with directly conflicting interests. The deliberative process privilege, on the other hand, is one that is severely constrained by Puerto Rico law and, in all events, is a qualified privilege that can be overcome upon a showing of need.

4.     In any event, there was no question that deciding claims of privilege would be a central issue in discovery. For that reason, Judge Swain's discovery and briefing schedule explicitly provided for two rounds of motions to compel. The first round provided an opportunity to address the scope and nature of the parties discovery requests, and the second round (with papers due this Monday, April 15) provided an opportunity to adjudicate the aforesaid claims of privilege.

5.     It is obviously difficult to challenge overbroad or inappropriate claims of privilege with respect to certain documents without a sufficiently detailed and complete privilege log.

---

[1] Respondents are ERS, the Commonwealth, AAFAF, and the Oversight Board.

However, it became apparent early on that Respondents had no intention of providing competent privilege logs. On March 15, 2019, for example, AAFAF served a privilege log covering its initial document production. AAFAF's privilege log was a document-by-document one, but said almost nothing of substance about the documents being withheld or the specifics of the privilege claims being made.

6. Accordingly, the Bondholders asked the Court in the first round of motions to compel to set down the standards that should apply to privilege logs, and there was argument on the subject at the April 1, 2019 hearing. The Court made a series of rulings during and after the hearing regarding privilege logs. In particular, the Court entered an order directing, in relevant part, that privilege logs in the case be categorical "when necessary" and "include at least the following information":

> (a) "Information about both the sender and the recipient of documents, where applicable, including the names of individuals, their titles, and the entity or entities they represent," (b) "Date or applicable date range," (c) "The type of document(s) at issue," (d) "Whether the documents have been previously marked as confidential or privileged," (e) "The deliberative act in question for documents over which the deliberative process privilege is asserted," (f) "A description of the document or category of documents which is as detailed as possible without disclosing the potentially privileged information, recognizing that the description should be sufficient to permit the recipient of the log and the Court to evaluate the claim of privilege," (g) "Where the deliberative process is asserted, claimants shall submit with any privilege log an affidavit by the relevant head of agency asserting the privilege," and (h) "Any other information which should be disclosed, in light of the types of documents at issue, to enable the recipient of the log and the Court to evaluate the claim of privilege."

7. Despite the clarity of the Court's directions to the parties, ERS, the Commonwealth, and AAFAF produced a privilege log that is grossly deficient. *See* ERS, the Commonwealth, and AAFAF's Categorical Privilege Log of Materials Withheld in Response to Document Requests Related to *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, attached as

- 3 -

Exhibit A. Moreover, even though the Court determined at the April 1 hearing that the 13-entry privilege log AAFAF had served on March 15 was inadequate, AAFAF still has not served a corrected privilege log. And the privilege log ERS, AAFAF, and the Commonwealth produced on April 11 contains even less information than the prior AAFAF log that the Court found inadequate.

8. The parties held their meet and confer yesterday afternoon and evening from 5:30 p.m. to approximately 6:20 p.m. (EDT). In response to the Bondholders' objections to Respondents' privilege log, counsel for Respondents asked what additional information the Bondholders would like in the privilege log—notwithstanding the Bondholders' prior motion and the Court's prior guidance and Order on that very issue. The Bondholders directed counsel for ERS, AAFAF, and the Commonwealth to the Court's April 2 Order, and walked through how the privilege log was deficient. Counsel for ERS, AAFAF, and the Commonwealth stated that he would consider the Bondholders' position, but would not commit to providing a revised privilege log. Then, at 1:20 am on Friday, April 12, counsel for ERS, AAFAF, and the Commonwealth served an amended privilege log that was no more informative than the original log. *See* ERS, the Commonwealth, and AAFAF's Amended Categorical Privilege Log of Materials Withheld in Response to Document Requests Related to *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, attached as Exhibit B. Counsel for ERS, AAFAF and the Commonwealth also belatedly sent an index showing the title of various individuals on the supplemental log that, although marginally informative, still left many unanswered question. *See* Appendix to ERS, the Commonwealth, and AAFAF's Categorical Privilege Log of Materials Withheld in Response to Document Requests Related to *Motion of Certain Secured Creditors of the Employees Retirement System of the*

- 4 -

*Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, attached as Exhibit C.

9. Even a brief glance at the amended privilege log demonstrates it inadequacy. It groups together 509 documents into seven broad categories, each category encompassing documents spread out over periods as long as seven months. Each category commingles different claims of privilege, dozens of different authors and recipients, and vague blanket assertions of the subjects of each category of documents. It is simply not possible from the face of this privilege log to determine what privilege claim is being made for any particular document (or, for that matter, any details of any particular document) or whether the privilege claim is legitimate or not. As to deliberative process privilege claims, it is not possible to determine which specific decision any one document relates to, much less when the decision was made, or who made it, or how the document relates to the decision. For many reasons, the log should be stricken.

10. At the threshold, the Court ordered the parties to produce a categorical log only "when necessary." Although ERS, the Commonwealth, and AAFAF represented to the Court that electronic document discovery would involve "logging potentially *thousands* of documents," *Respondents' Opposition to Motion of Certain Creditors of the Employees Retirement System of the Government of Puerto Rico to Compel Discovery* ¶8, Docket No. 6001 in Case No. 17-bk-03283 and Docket No. 410 in Case No. 17-bk-03566 (emphasis added), in truth there are only 509 documents where privilege is asserted. Clearly, where only 509 documents are at issue, a categorical privilege log is not necessary. By contrast, the Bondholders provided individual, document-by-document privilege logs for 687 documents.

11. The categorical log also violates the Court's order in the following ways:

    a. The log originally did not indicate the type of document for each category. It stated only that the documents are "communications." The Movants

- 5 -

pointed this out during the April 11 meet and confer, and on April 12, ERS, AAFAF, and the Commonwealth served a supplemental log that included a column purporting to identify the type of document. But rather than providing any actual information to identify the type of document, the supplemental log merely included a new column stating "Email, Excel, PDF, Powerpoint, Word," collectively, for all the dozens of documents that are crammed into each category in the log.

b. The log did not contain a description of the category of documents to permit the Bondholders and the Court to evaluate the claim of privilege. In fact, for several of the entries, it is impossible to even begin evaluating the claim of privilege. For example, the first category grouped 119

> "[c]onfidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with anticipated and ongoing litigation with ERS bondholders."

And beyond this, that entry listed 78 individuals in an aggregate "sender/recipient" list from entities with clearly conflicting interests, including a number of advisors, and claimed attorney-client privilege, attorney work product executive privilege, and common interest privilege for all 119 communications. We do not know, and cannot tell, who wrote or received which document or, for that matter, which documents are the ones where there is a claim of attorney-client privilege and which documents are ones where the claim is pre-decisional privilege.

c. For the categories of documents over which the deliberative process privilege is asserted, the log did not identify the deliberative acts in question.

d. The log did not include an affidavit by the relevant head of agency asserting the deliberative process privilege. The log noted that such affidavits would be provided, but the Bondholders have not received them (or, for that matter, any affidavit to support the prior AAFAF privilege log).

e. The original log did not include information about the individual senders or recipients on the log, such as the individuals' titles. On April 12, following the meet and confer, ERS, AAFAF, and the Commonwealth belatedly served an index showing the titles of the individuals on the log, but that information only highlights the problems with the log. In particular, the index confirms that ERS, AAFAF, and the Commonwealth are attempting to claim privilege over broad swaths of documents that were apparently shared among entities with conflicting interests, and among non-lawyer financial consultants, actuaries, and other third parties who would destroy any claim of privilege absent further explanation and evidence from ERS, AAFAF, and the Commonwealth.

12. The conclusion is inescapable that Respondents intentionally created a privilege log designed to frustrate any attempt to examine and test their blanket claims of privilege. In setting up the two-round structure for motions to compel, Judge Swain clearly intended that the claims of privilege should be tested. Respondents privilege logs should be stricken, and they should be ordered to produce new logs that invoke privilege document-by-document, person-by-person, and privilege-by-privilege.

### The Oversight Board's Failure to Produce Documents or a Privilege Log

13. Judge Swain's schedule set a deadline of April 10, 2019, "for completion for supplemental document productions" and "service of supplemental privilege logs," "if so ordered" at the April 1 hearing. The logic for this deadline was that Judge Swain's order included the second deadline—of Monday, April 15—for the parties to files their second round of motions to compel.

14. On March 4, 2019, Movants served a subpoena on the Financial Oversight and Management Board, asking for the production of documents relevant to the issues in the Stay Relief motion. Counsel for the Oversight Board interposed a series of inappropriate blanket objections to producing documents. The Court overruled these general objections in the course of the April 1 hearing, and instructed the Board to comply with the document subpoena. *See* Transcript 77: 2-6 ("So to the extent that the information that I have is that the Oversight Board was involved in helping to develop pay-go, I believe that the Oversight Board has to respond to this subpoena in some form; okay?").

15. The April 10 deadline came and went without the Oversight Board producing any documents at all, much less a privilege log. Instead, during yesterday's meet and confer call, the Board's counsel stated that the Board was not required to produce documents or a privilege log by Judge Swain's April 10 deadline, because the Court technically did not "so order" the Board to do

so either during the April 1 hearing or in its April 2 Order. Counsel took the position that the Court's direction to him was, in essence, advisory. His obligations, he believed, were no more than to participate in meet-and-confer telephone calls and preparing joint reports to the Court.

16. The Oversight Board's failure to produce documents and a privilege log on April 10—and its position that it does not need to comply with Judge Swain's April 10 deadline because this Court did not "so order" it to do so—is not in good faith, and appears to be designed for one purpose: to defeat Judge Swain's schedule and prejudice the Bondholders. In fact, according to its counsel, the Board does not intend to even begin document productions until April 14, 2019, the day before motions to compel are due. And when asked during the meet and confer, counsel for the Board would not commit to any date on which the Board would provide a privilege log.

## CERTIFICATION

17. Pursuant to Local Rule 9013-1 and ¶ I.H. of the Eighth Amended Case Management Order, Bondholders' counsel certify that they have made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court. The Bondholders have been informed that the Oversight Board will object to this request.

## CONCLUSION

18. It is clear that these discovery proceedings are becoming unmanageable because Respondents have no intention of complying with the Court's orders or Judge Swain's schedule. The Bondholders request an immediate status conference at the Court's convenience to address the shortcomings of Respondents' privilege log, to seek entry of an enforceable discovery order under Federal Rule of Civil Procedure 37(a)(3), and to adjust the discovery briefing schedule as necessary in light of Respondents' failures to comply with the Court's orders and applicable discovery rules.

In San Juan, Puerto Rico, today April 12, 2019.

By:

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Geoffrey S. Stewart*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
James M. Gross (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com
jgross@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

| | |
|---|---|
| /s/ Alicia I. Lavergne-Ramírez | /s/ Cheryl T. Sloane |
| José C. Sánchez-Castro<br>USDC-PR 213312<br>jsanchez@sanpir.com | John K. Cunningham (*pro hac vice*)<br>Glenn M. Kurtz (*pro hac vice*)<br>WHITE & CASE LLP<br>1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez<br>USDC-PR 215112<br>alavergne@sanpir.com | New York, NY 10036<br>Tel. (212) 819-8200<br>Fax (212) 354-8113<br>jcunningham@whitecase.com |
| Maraliz Vázquez-Marrero<br>USDC-PR 225504<br>mvazquez@sanpir.com | gkurtz@whitecase.com<br><br>Jason N. Zakia (*pro hac vice*)<br>Cheryl T. Sloane (*pro hac vice*) |
| SÁNCHEZ PIRILLO LLC<br>270 Muñoz Rivera Avenue, Suite 1110<br>San Juan, PR 00918<br>Tel. (787) 522-6776<br>Fax: (787) 522-6777 | WHITE & CASE LLP<br>200 S. Biscayne Blvd., Suite 4900<br>Miami, FL 33131<br>Tel. (305) 371-2700<br>Fax (305) 358-5744<br>jzakia@whitecase.com<br>csloane@whitecase.com |

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*