**Objection Deadline: April 18, 2019, at 3:00 p.m. (AST)**
**Hearing Date and Time: April 24, 2019, at 2:00 p.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| as representative of | ) | Case No. 3:17-bk-03283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| Debtors. | ) | |
| | X | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| as representative of | ) | Case No. 3:17-cv-01685 (LTS) |
| | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | ) | |
| Debtor. | ) | |
| | X | |

# MOTION OF ANDALUSIAN GLOBAL DESIGNATED ACTIVITY COMPANY, MASON CAPITAL MASTER FUND, LP, AND THE PUERTO RICO FUNDS FOR A PROTECTIVE ORDER

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 4

I.      The Court Should Grant A Protective Order As To Topics 1–9, 11–13, And 14(a),
        Which Are Irrelevant To The Stay Relief Motion And Beyond The Scope Of The
        Court's Discovery Order ........................................................................... 7

        A.      Topics 1–4, 11–13, And 14(a) Are Irrelevant To The Stay Relief Motion .......... 7

        B.      Topics 5–10 Are Irrelevant Because Lay Witnesses Are Not Competent
                To Testify About The Meaning Of Legal Documents ........................................ 9

II.     The Court Should Grant A Protective Order As To Topics 1–2, 10, And 20–21,
        Which Are Impermissibly Vague And Overbroad ............................................ 10

III.    The Court Should Grant A Protective Order As To Topics 5–10, 15–18, And 19–
        21, Because They Improperly Seek Legal Conclusions And Information On
        Movants' Legal Contentions Rather Than Factual Information .................................... 12

IV.     The Court Should Grant A Protective Order As To Topic 23, Because It Is
        Premature Under The Court's February 25 Order .......................................... 14

V.      The Court Should Grant A Corresponding Protective Order As To The Individual
        Depositions Of James Bolin, Richard Engman, And Leslie Highley, Jr ...................... 14

RELIEF REQUESTED ...................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Bowers v. Mortg. Elec. Registration Sys., Inc.*,
    No. 10-4141-JTM, 2011 WL 6013092 (D. Kan. Dec. 2, 2011)..................................................2

*Cabi v. Bos. Children's Hosp.*,
    No. 15-cv-12306, 2017 WL 8232179 (D. Mass. June 21, 2017).............................................5

*Evans v. Allstate Ins. Co.*,
    216 F.R.D. 515 (N.D. Okla. 2003)..........................................................................................5

*Fed. Ins. Co. v. Delta Mech. Contractors, LLC*,
    No. 11-cv-048ML, 2013 WL 1343528 (D.R.I. Apr. 2, 2013) .........................................11, 12

*In re Enron Creditors' Recovery*,
    No. 01-bk-16034 (AJG), 2007 WL 2680427 (Bankr. S.D.N.Y. Sept. 6, 2007) .....................12

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
    914 F.3d 694 (1st Cir. 2019) ................................................................................................3, 8

*In re Indep. Serv. Orgs. Antitrust Litig.*,
    168 F.R.D. 651 (D. Kan. 1996)..................................................................................12, 13, 14

*JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*,
    209 F.R.D. 361 (S.D.N.Y. 2002) ..............................................................................12, 13, 14

*Newman v. Borders, Inc.*,
    257 F.R.D. 1 (D.D.C. 2009).................................................................................................2, 10

*Reed v. Bennett*,
    193 F.R.D. 689 (D. Kan. 2000)............................................................................................10, 11

*SEC v. Present*,
    No. 14-14692-LTS, 2016 WL 10998439 (D. Mass. May 12, 2016) ............................2, 12, 13

*Smith v. Dowson*,
    158 F.R.D. 138 (D. Minn. 1994)............................................................................................15

*Sprint Comm'cns Co. v. Theglobe.com, Inc.*,
    236 F.R.D. 524 (D. Kan. 2006)..............................................................................................10

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
    No. 12-cv-11935, 2014 WL 5786492 (D. Mass. Sept. 24, 2014)...........................................10

**STATUTES**

48 U.S.C. § 2170................................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26..........................................................................................................................1, 14

## <u>TABLE OF AUTHORITIES</u>
(continued)

**Page(s)**

Fed. R. Civ. P. 30...................................................................................................................... *passim*

Fed. R. Bankr. P. 7026.....................................................................................................................1

To the Chambers of the Honorable Judge Judith Dein:

Pursuant to Federal Rule of Bankruptcy Procedure 7026 and Federal Rule of Civil Procedure 26(c), made applicable to these proceedings by 48 U.S.C. § 2170, Andalusian Global Designated Activity Company, Mason Capital Master Fund, LP, and the Puerto Rico Funds[1] (together, "Movants") respectfully move for entry of a protective order restricting the matters on which the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") may take depositions of Movants under Federal Rule of Civil Procedure 30(b)(6), and of James Bolin, Richard Engman, and Leslie Highley Jr. In support of this Motion, Movants state as follows:

## INTRODUCTION

1.      On March 7, 2019, the Oversight Board, on behalf of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), served each of the Movants with a pair of deposition notices. One was notice to produce for examination a named corporate officer. The second was a notice under Federal Rule of Civil Procedure 30(b)(6) calling for each Movant to produce a witness to testify about twenty-three different topics (not including sub-parts). Beyond being obviously duplicative, the Rule 30(b)(6) notices were grossly overbroad and burdensome.

---

[1] The Puerto Rico Funds include the following: Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

2.      Rule 30(b)(6) allows a party to obtain the testimony of an organization through a witness designated by the organization to speak on its behalf. A Rule 30(b)(6) deposition notice "must describe with reasonable particularity the matters for examination." Fed. R. Civ. P. 30(b)(6). In response to such a notice, the noticed "party must produce as its 30(b)(6) designee a person who can speak knowingly as to the topic and, if necessary, educate that designee so that she can do so." *Newman v. Borders, Inc.*, 257 F.R.D. 1, 3 (D.D.C. 2009).

3.      Each of the Rule 30(b)(6) deposition notices served on Movants designated the same twenty-three "deposition topics" for examination. *See* Declaration of Sparkle Sooknanan, filed herewith, Exs. A to C. As described below, many of the topics are irrelevant to the issues before the Court and beyond the scope of the Court's orders. Others are impermissibly vague, such that Movants cannot reliably predict the subject matter of the deposition and thus cannot adequately prepare a designee to address it. And some of the topics improperly seek to use the Rule 30(b)(6) deposition to probe Movants' legal contentions, or improperly seek to accelerate the disclosure of Movants' exhibits in advance of court-ordered deadlines for disclosure.

4.      The almost-unlimited scope of the deposition notices is improper and oppressive. Courts have routinely entered protective orders against abusive or improper Rule 30(b)(6) deposition notices. *See, e.g.*, *SEC v. Present*, No. 14-14692-LTS, 2016 WL 10998439, at *3–4 (D. Mass. May 12, 2016); *Bowers v. Mortg. Elec. Registration Sys., Inc.*, No. 10-4141-JTM, 2011 WL 6013092, at *8 (D. Kan. Dec. 2, 2011). The Court should do the same here.

## **BACKGROUND**

5.      Movants are secured creditors of ERS. They hold bonds issued by ERS in 2008 ("ERS Bonds"). On July 3, 2018, Movants and other holders of ERS Bonds (collectively, the "Secured Creditors") filed a Motion for Relief from the Automatic Stay (the "Stay Relief Motion"), in which they requested relief from the automatic stay imposed pursuant to Title III of PROMESA

or, in the alternative, for adequate protection of their liens on property of ERS, in which the Commonwealth now claims an interest. *See* Docket No. 3418 in Case No. 17-bk-03283 and Docket No. 289 in Case No. 17-bk-03566. On August 6, 2018, in connection with the Stay Relief Motion, the Court ordered "discovery with respect to[]" "the attribution of any diminution in value resulting from the automatic stay." *August 6, 2018, Order*, Docket No. 3747 in Case No. 17-bk-03283 and Docket No. 313 in Case No. 17-bk-03566.

6.    On August 17, 2018, while discovery was ongoing, the Court held that the Secured Creditors' liens were unperfected, *see* Docket. No. 215 in Adv. Proc. No. 17-00213, and four days later denied the Stay Relief Motion on the ground that the August 17, 2018 Order had resolved it, *see* Docket No. 3793 in Case No. 17-bk-03283 and Docket No. 318 in Case No. 17-bk-03566. On January 30, 2019, the United States Court of Appeals for the First Circuit reversed and vacated the August 17 Order in part, holding that the Secured Creditors' liens were properly perfected. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d 694 (1st Cir. 2019). The First Circuit remanded both the adversary proceeding and the Stay Relief Motion for further proceedings consistent with its opinion. *Id.*

7.    On February 25, 2019, the Court granted the Secured Creditors' motion to expedite consideration of the Stay Relief Motion on remand and to set new deadlines for the discovery originally contemplated by the Court's August 6, 2018 Order. *See* Docket No. 5210 in Case No. 17-bk-03283 and Docket No. 371 in Case No. 17-bk-03566. On March 15, 2019, the Court entered a revised schedule for discovery and briefing, under which depositions must be completed by May 7, 2019, and the final hearing is set for May 21, 2019. *Id.*

8.    On March 7, 2019, counsel for the Oversight Board noticed depositions of, among others, Movants Andalusian Global Designated Activity Company, Mason Capital Master Fund,

LP, and the Puerto Rico Funds pursuant to Federal Rule of Civil Procedure 30(b)(6). On March 12, 2019, Movants' counsel objected to the deposition notices as overbroad and burdensome, and requested that the Oversight Board narrow the scope of the requests. Sooknanan Dec. ¶ 3 & Ex. G. Counsel for the Oversight Board did not respond.

9.      On March 18, 2019, Movants' counsel met and conferred with counsel for the Oversight Board in an effort to resolve Movants' objections to the irrelevance, over-breadth, and impropriety of the designated Rule 30(b)(6) deposition topics. *Id.* ¶ 4. Counsel for the Oversight Board said that they would propose narrowing some of the topics by email and the parties agreed to discuss the matter further. *Id.* The Oversight Board never sent such an email. *Id.* ¶¶ 5–6. Instead of proposing narrower topics, on April 10, 2019, the Oversight Board sent a letter to Movants' counsel demanding that Movants withdraw their objections. *Id.* ¶ 10 & Ex. I. The parties again met and conferred about Movants' objections on April 11, 2019, but they were unable to resolve their disagreements. *Id.* ¶ 7.

## ARGUMENT

10.      A secured creditor is entitled to adequate protection when there is a decrease in the value of the secured creditor's interest in property while the automatic stay is in place. *See* Stay Relief Motion at 10–11, Docket No. 3418 in Case No. 17-bk-03283 and Docket No. 289 in Case No. 17-bk-03566; *Reply of Certain Secured Creditors of the Employees Retirement System of the Commonwealth of Puerto Rico in Support of Motion for Relief from the Automatic Stay*, at 8–11, Docket No. 3592 in Case No. 17-bk-03283 and Docket No. 303 in Case No. 17-bk-03566. Because Movants are secured creditors with constitutionally-protected property rights, they are entitled to stay relief if their collateral has lost value since the imposition of the automatic stay. *See* Stay Relief Motion at 10–11. Accordingly, when the Court ordered discovery in connection with the Stay Relief Motion, it limited that discovery to a single issue: "the attribution of any diminution in

value resulting from the automatic stay." *August 6, 2018, Order*, Docket No. 3747 in Case No. 17-bk-03283 and Docket No. 313 in Case No. 17-bk-03566. Like other discovery served in connection with the Stay Relief Motion, a Rule 30(b)(6) deposition notice must confine itself to this issue. *See, e.g.*, *Cabi v. Bos. Children's Hosp.*, No. 15-cv-12306, 2017 WL 8232179, at *6 (D. Mass. June 21, 2017) (granting protective order as to Rule 30(b)(6) topics that "are irrelevant to the underlying claims and are not proper subjects for discovery"); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 519 (N.D. Okla. 2003) (granting protective order as to "areas of inquiry requested in Plaintiffs' Rule 30(b)(6) Notice . . . [that] are irrelevant to the issues of the lawsuit").

11.     The Oversight Board,[2] however, ignored this limitation and served blunderbuss Rule 30(b)(6) notices demanding that each Movant produce witnesses on each of the following topics:

(1)     The issuance of ERS Bonds.

(2)     Your purchase of ERS Bonds.

(3)     Your due diligence performed in connection with the issuance of ERS Bonds.

(4)     Your due diligence performed in connection with Your purchase of ERS Bonds.

(5)     Your understanding of what constitutes assets of ERS.

(6)     Your identification of what You contend constitutes collateral for the ERS Bonds.

(7)     Your identification of which ERS assets You contend constitute collateral for the ERS Bonds, and which ERS assets You contend are not collateral for the ERS Bonds.

(8)     Your identification of which other assets You contend constitute collateral for the ERS Bonds.

---

[2] Though counsel for the Oversight Board served the notices *on behalf of ERS*, the notices state that the Oversight Board *and* AAFAF will take the depositions. But AAFAF is not a party to these proceedings. Since the Oversight Board intends to take the depositions on behalf of ERS, it is unclear what role AAFAF seeks to play at the depositions.

(9)     Your identification of what You contend is Pledged Property.

(10)    Any security interest or lien that You have related to the ERS Bonds.

(11)    The Offering Statements for the ERS Bonds.

(12)    Any communications You had with the Fiscal Agent concerning the ERS Bonds.

(13)    Any documents You received or sent to the Fiscal Agent concerning the ERS Bonds.

(14)    The Value of the Pledged Property or of any collateral You contend secures the ERS Bonds, including, without limitation, the Value as of the following dates:

    a.  The date on which You purchased ERS Bonds;

    b.  May 21, 2017;

    c.  The first day of each month since May 21, 2017; and

    d.  Today.

(15)    The basis for Your contention that there has been diminution of Value of Pledged Property or diminution of any collateral You contend secures the ERS Bonds, and the amount of any such diminution.

(16)    Your contention that the automatic stay has caused diminution of Value of Pledged Property or diminution of Value of any collateral You contend secures the ERS Bonds.

(17)    Your contention that Pledged Property or any collateral You contend secures the ERS Bonds has been diverted and dissipated.

(18)    Your contention that You are entitled to relief from the automatic stay in both the ERS Title III Case and the Commonwealth Title III Case.

(19)    Your understanding of "right to receive revenues" as stated in the Resolution.

(20)    Changes to the Employers' Contribution Rate.

(21)    Changes in law that affect the Employers' Contribution Rate.

(22)    All Documents and Communications You produced related to the Lift Stay Motion.

6

(23)    All exhibits and Documents You intend to present in Your case in chief related to the Lift Stay Motion.

12.    For the reasons set forth below, almost all of these deposition topics stray beyond the boundaries set by the Court's August 6, 2018, Order, and the ones that arguably do fall within the scope of the discovery the Court ordered are overbroad and unreasonably burdensome.

## I.    The Court Should Grant A Protective Order As To Topics 1–9, 11–13, And 14(a), Which Are Irrelevant To The Stay Relief Motion And Beyond The Scope Of The Court's Discovery Order

### A.    Topics 1–4, 11–13, And 14(a) Are Irrelevant To The Stay Relief Motion

13.    At the outset, many of the deposition topics have nothing to do with "the attribution of any diminution in value resulting from the automatic stay." *August 6, 2018, Order*, Docket No. 3747 in Case No. 17-bk-03283 and Docket No. 313 in Case No. 17-bk-03566.

a.    Topic 1 concerns the issuance of ERS Bonds, which happened in 2008, nine years before the automatic stay was imposed in 2017, and many years before Movants Andalusian Global Designated Activity Company and Mason Capital Master Fund, LP, even purchased ERS bonds.

b.    Topic 2 concerns Movants' purchase of ERS bonds, but the time when Movants purchased the bonds and their reasons for doing so has nothing to do with the diminution of value resulting from the imposition of the automatic stay in 2017.

c.    Topic 3 asks about Movants' due diligence "performed in connection with the issuance of ERS Bonds," which is irrelevant because none of the Movants had any involvement in the issuance of the ERS Bonds and what Movants knew or did not know about the issuance of the bonds in 2008 has no bearing on whether the value of their collateral is diminishing during the automatic stay.

d.    Topic 4 directs Movants to produce witnesses to testify about the "due diligence" Movants performed when they purchased the bonds, which is irrelevant for the same reasons Topics 2 and 3, *supra*, are irrelevant.

e.    Topic 11 asks for a witness to be produced to testify about "The Offering Statements for the ERS Bonds." Again, the Offering Statements, which were prepared in 2008 at the time the bonds were issued, are extraneous to the question of the diminution of the value of the collateral for the bonds today because of the automatic stay.

7

    f.   Topics 12 and 13 ask for testimony concerning years of communications and exchanges of documents between Movants and the bank that collected and remitted payments to bondholders. These topics are irrelevant. The events in question happened years before ERS' Title III proceedings and have nothing to do with the "the attribution of any diminution in value resulting from the automatic stay."

    g.   Finally, Topic 14(a) calls for the "Value of the Pledged Property" or ERS Bond "collateral" as of the date on which Movants purchased those bonds. But the sole question in the stay relief motion relates to the decline in collateral value after the imposition of the automatic stay. Thus, the value of the collateral at the time of Movants' purchases of the bonds—or any time before the commencement of the automatic stay—is irrelevant.

In short, because these events happened *before* the automatic stay was imposed, they can shed no light on the "attribution of any diminution in value resulting from the automatic stay." *August 6, 2018, Order*, Docket No. 3747 in Case No. 17-bk-03283 and Docket No. 313 in Case No. 17-bk-03566. Nor can those events affect whether Movants have a colorable security interest in ERS's property, a question that turns on the written agreements and the facts about what has happened to ERS's property, rather than on any facts surrounding the issuance of, and Movants' purchase of, the bonds—and a question the First Circuit decided definitively on January 30, 2019. *See In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d 694 (1st Cir. 2019).

    14.   In its April 10, 2019, letter, counsel for the Oversight Board contended that this relevance objection is inconsistent with the scope of discovery that Movants have sought from the Oversight Board, ERS, the Commonwealth of Puerto Rico ("the Commonwealth"), and AAFAF. But unlike Movants, who merely hold the ERS Bonds, the Board, the Commonwealth, ERS, and AFFAF have been actively involved in bringing about the diminution in value for which Movants seek protection. Movants' need for and entitlement to discovery about the Board's, the Commonwealth's, ERS's, and AAFAF's actions related to that diminution in value does not somehow make Movants' own pre-automatic stay actions relevant to the adequate protection motion.

**B.      Topics 5–10 Are Irrelevant Because Lay Witnesses Are Not Competent To Testify About The Meaning Of Legal Documents**

15.      The Oversight Board's Rule 30(b)(6) deposition notices are directed, as they must be, to lay witnesses. Nevertheless, nearly one-third of the deposition topics would have the witness testify about the meaning of legal documents or about the law itself. Since a lay witness cannot offer legal analysis, none of these topics is relevant to the issues in the instant motion.

a.   Topic 5 asks for the witness to testify about "what constitutes assets of ERS." Although there may once have been a time when this would have been an understandable topic for a lay witness to testify about, it is not so now. In July and August 2017, the Legislative Assembly of Puerto Rico enacted two measures—Joint Resolution 188 and Act 106—that ordered ERS to liquidate its assets and turn them over to the Treasury of the Commonwealth of Puerto Rico. What rights ERS retained in its property after the enactment of Joint Resolution 188 and Act 106 is a legal question; the testimony of a lay witness who has no direct knowledge of the internal operations of ERS or the conception of those laws would add nothing to the issues in the case. Moreover, a 2008 Bond Resolution granted Movants a security interest in "Pledged Property," a specifically defined term, and the phrase "assets of ERS" appears nowhere in the definition of "Pledged Property."

b.   Topics 6, 7, and 8 ask the witness to identify, respectively, "what You contend constitutes collateral for the ERS Bonds," "which ERS assets You contend are not collateral for the ERS Bonds," and "which other assets You contend constitute collateral for the ERS Bonds." The collateral for ERS Bonds turns on the meaning of the defined term "Pledged Property," and a lay witness' speculation about that defined term is irrelevant.

c.   Topic 9 would require Movants to produce witnesses to identify "what You contend is Pledged Property." Again, this topic is an attempt to have a lay witness offer legal analysis. And, in all events, Movants' understanding of that phrase is irrelevant, since it is the domain of the Court to determine the scope and meaning of legal documents such as the bond resolution, based on the facts about what has happened to ERS's property.

d.   Topic 10 would ask the several witnesses to testify about "Any security interest or lien that You have related to the ERS Bonds." But again, the scope of Movants' security interest is a matter set forth in legal documents and that turns on actions by ERS, the Commonwealth, the Oversight Board, and AAFAF, not on anything Movants did or know about. These lay witnesses are not competent to testify about the meaning of legal documents and any testimony they did offer would be irrelevant.

9

16.     The Oversight Board appears to be using these topics to probe the means by which Movants arrived at their contentions about what is and is not collateral or Pledged Property for ERS Bonds. As explained below in Part III, the means by which Movants arrived at those contentions implicate both the attorney-client privilege and work-product protection, making this an inappropriate subject of Rule 30(b)(6) testimony. But regardless, the means by which Movants arrived at their contentions is also entirely irrelevant. What matters for the Stay Relief Motion is whether the value of Movants' Pledged Property has been impaired during the automatic stay; the process by which Movants arrived at their contentions as to what is and is not Pledged Property is beside the point.

## II.     The Court Should Grant A Protective Order As To Topics 1–2, 10, And 20–21, Which Are Impermissibly Vague And Overbroad

17.     Because Rule 30(b)(6) imposes the "onerous" obligation on the deposed party to educate its designee about the topics in the deposition notice, "the requesting party must take care to designate, with painstaking specificity, the particular subject areas that are intended to be questioned, and that are relevant to the issues in dispute." *Sprint Comm'cns Co. v. Theglobe.com, Inc.*, 236 F.R.D. 524, 528 (D. Kan. 2006); *see also Newman*, 257 F.R.D. at 3 (holding that the notice must "define as clearly as possible the topics for the deposition"). "[I]f the noticed party cannot identify the outer limits of the topics noticed, compliant designation is not feasible." *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, No. 12-cv-11935, 2014 WL 5786492, at *3 (D. Mass. Sept. 24, 2014). Thus, "[a]n overbroad Rule 30(b)(6) notice subjects the noticed party to an impossible task." *Reed v. Bennett*, 193 F.R.D. 689, 692 (D. Kan. 2000). Under this demanding standard, Topics 1–2, 10, and 20–21 of the deposition notices are impermissibly vague.

18.     Topic 1 reads, in full, "[t]he issuance of ERS Bonds"; Topic 2 reads, "Your purchase of ERS Bonds." These topics do not specify what about the issuance of ERS Bonds and

Movants' purchase of those bonds the Oversight Board seeks to examine. Even if those topics were relevant (they are not), Movants cannot possibly prepare a designee to testify about such broad topics—they have been "subject[ed] . . . to an impossible task." *Reed*, 193 F.R.D. at 692; *see also Fed. Ins. Co. v. Delta Mech. Contractors, LLC*, No. 11-cv-048ML, 2013 WL 1343528, at *1, 4 (D.R.I. Apr. 2, 2013) (a list of topics including "the 'construction of the tower'" and the noticed parties' "work at the tower" and "water loss" "r[an] afoul of the requirement that Rule 30(b)(6) topics must be described with reasonable particularity," in a case based on water leaks after construction of a condominium tower). Indeed, the Oversight Board seems to recognize this, because it also asks more specifically in Topics 3 and 4 about "due diligence performed in connection with" the issuance and purchase of the ERS Bonds. (Topics 3 and 4 are sufficiently specific, although, as explained above, they are irrelevant.)

19.     Topic 10 is also vague and overbroad. It refers to "[a]ny security interest or lien that [Movants] have related to the ERS Bonds." Movants' security interest related to ERS Bonds— and what has happened to property protected by it—is the *entire subject* of the Stay Relief Motion, so Topic 10 does nothing to narrow the scope of inquiry or allow Movants to prepare a designee. It is therefore improper. *See Fed. Ins. Co.*, 2013 WL 1343528, at *1, 4.

20.     Finally, as for Topics 20 and 21, "[c]hanges to the Employers' Contribution Rate" and "[c]hanges in law that affect the Employers' Contribution Rate," refer to actions taken by the Commonwealth and its advisors, not by Movants. These topics do not specify any "information known or reasonably available to" Movants that the Oversight Board intends to ask about. Fed. R. Civ. P. 30(b)(6). They therefore do not enable Movants to designate and prepare a witness.

### III. The Court Should Grant A Protective Order As To Topics 5–10, 15–18, And 19–21, Because They Improperly Seek Legal Conclusions And Information On Movants' Legal Contentions Rather Than Factual Information

21.   While a Rule 30(b)(6) deposition may properly seek "factual information relating to the claims in the litigation," it may not be used to probe a party's "conclusions, opinions, and legal theor[ies]," which are the domain of contention interrogatories. *In re Enron Creditors' Recovery*, No. 01-bk-16034 (AJG), 2007 WL 2680427, at *3 (Bankr. S.D.N.Y. Sept. 6, 2007). "[A] Rule 30(b)(6) witness may not be expected to testify about the factual basis of legal theories." *SEC v. Present*, No. 14-cv-14692, 2016 WL 10998439, at * 2 (D. Mass. May 12, 2016). Probing legal contentions "through a Rule 30(b)(6) deposition is overbroad, inefficient, and unreasonable. It also implicates serious privilege concerns . . . ." *In re Indep. Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651, 654 (D. Kan. 1996). "In a nutshell, depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." *JPMorgan Chase Bank v. Liberty Mut. Ins. Co.*, 209 F.R.D. 361, 362 (S.D.N.Y. 2002). A party therefore may not, "[u]nder the guise of requesting 'facts' . . . [,] really request [its opponent's] mental impressions, conclusions, opinions, and legal theory. Such classic work product is properly shielded from discovery, absent a much more compelling need than any here shown . . . ." *Id.* at 363 (citation omitted).

22.   Topics 5–10, 15–18, and 19–21 all improperly attempt to use a Rule 30(b)(6) deposition to inquire about legal conclusions, as well as Movants' legal contentions and how they arrived at them. This is inefficient and threatens to reveal protected work product and privileged information. The Court should therefore grant a protective order as to those topics.

23.   Topics 5–10 seek to inquire about "what constitutes assets of ERS," Topic 5, Movants' "identification" of what they "contend" constitutes or does not constitute "collateral for the ERS bonds," Topics 6–8, and "pledged property," Topic 9, and "[a]ny security interest or lien

that [Movants] have related to the ERS Bonds," Topic 10. Topics 19–21 seek to inquire about the "right to receive revenues," Topic 19, and the "Employers' Contribution Rate," Topics 20–21. These topics go to contentions about questions of law, not questions of fact, so they are not proper subjects for a Rule 30(b)(6) deposition. *See JPMorgan Chase Bank*, 209 F.R.D. at 362. Moreover, questioning about Movants' "identification" of what they would "contend" constitutes Pledged Property or collateral, or Movants' "security interest or lien . . . related to the ERS Bonds" "would require questioning into how the [Movants] conducted [their] investigation and why [they] made certain allegations regarding [the ERS Bonds]. Such questioning inappropriately veers into the territory of legal opinion and attorney work product." *Present*, 2016 WL 10998439, at *3. And because the definition of "Pledged Property" is a legal question, Movants' basis for identifying "Pledged Property" and "Collateral" is, ultimately, a legal argument. Requiring Movants to educate a designated fact witness about those legal arguments so that the Oversight Board could depose her would be "highly inefficient and burdensome, rather than the most direct manner of securing relevant information." *Indep. Serv. Orgs.*, 168 F.R.D. at 654 (quoting *United States v. Dist. Council of N.Y.C.*, No. 90 CIV. 5722, 1992 WL 208284, at *15 (S.D.N.Y. Aug. 18, 1992)).

24.     Similarly, Topics 15–18 address Movants' "contention" or "[t]he basis for Movants' contention" about various legal issues in the case:  that there has been a diminution in value of pledged property or collateral, Topics 15–16, that pledged property or collateral "has been diverted or dissipated," Topic 17, and that Movants "are entitled to relief from the automatic stay in" the ERS and Commonwealth cases, Topic 18. Each of these topics, too, asks about Movants' legal contentions, not factual matters, and is inappropriate for a lay witness. Such testimony would be inefficient and irrelevant, and would intrude on privileged information and protected work product. *See JPMorgan Chase Bank*, 209 F.R.D. at 362; *Indep. Serv. Orgs.*, 168 F.R.D. at 654.

**IV.     The Court Should Grant A Protective Order As To Topic 23, Because It Is
         Premature Under The Court's February 25 Order**

25.     Finally, Topic 23 designates "[a]ll exhibits and Documents [Movants] intend to

present in [their] case in chief related to the Lift Stay Motion." This topic is premature. Under the

Court's March 15, 2019 Order, Movants are not required to disclose their exhibit list until May 15,

2019. *See* Docket No. 5712 in Case No. 17-bk-03283 and Docket No. 393 in Case No. 17-bk-

03566. There is no basis for the Oversight Board to circumvent this scheduling order by demanding

to question Movants about their exhibit lists in advance of those deadlines.

**V.     The Court Should Grant A Corresponding Protective Order As To The Individual
        Depositions Of James Bolin, Richard Engman, And Leslie Highley, Jr.**

26.     When the Oversight Board served the Rule 30(b)(6) deposition notices on Movants,

it simultaneously served individual deposition notices of three of Movants' officers:  James Bolin

of Andalusian, Richard Engman of Mason Capital, and Leslie Highley Jr. of the Puerto Rico Funds.

*See* Sooknanan Dec Exs. D to F. Each of the officer's depositions was noticed for the same date,

time, and location as the Rule 30(b)(6) deposition for the officer's employer.

27.     The topics from the Rule 30(b)(6) deposition notices challenged above would be

equally improper subjects for the individual depositions of Movants' officers. *See, e.g.*, Fed. R.

Civ. P. 26(b)(1) (restricting all discovery to "nonprivileged matter that is *relevant* to any party's

claim or defense and proportional to the needs of the case" (emphasis added)); *JP Morgan Chase

Bank*, 209 F.R.D. at 362 ("[D]epositions, including 30(b)(6) depositions, are designed to discover

facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must

be discovered by other means."); *Smith v. Dowson*, 158 F.R.D. 138, 140 (D. Minn. 1994) ("[A]

showing of irrelevancy of proposed discovery can satisfy the 'good cause' requirement" for a

protective order concerning a deposition.). The Court should therefore also prohibit the Oversight

Board from questioning Movants' officers about the topics addressed in this motion.

## **RELIEF REQUESTED**

28.     Movants request that the Court enter a protective order striking Topics 1–13, parts of 14, 15–21, and 23 from the Oversight Board's Notice of Rule 30(b)(6) Depositions, and prohibiting the Oversight Board from inquiring about those topics during the individual depositions of James Bolin, Richard Engman, and Leslie Highley, Jr.

In San Juan, Puerto Rico, today April 14, 2019.

By:

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Bruce Bennett*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for Andalusian Global Designated Activity Company
and Mason Capital Master Fund, LP*

/s/ Alicia I. Lavergne-Ramírez

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Cheryl T. Sloane

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for the Puerto Rico Funds*

17