# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1]<br><br>            Debtors. | PROMESA<br>Title III<br><br><br><br>No. 17 BK 3283-LTS<br>(Jointly Administered) |

## OBJECTION OF THE QTCB NOTEHOLDER GROUP TO THE MOTION ESTABLISHING PROCEDURES WITH RESPECT TO THE OMNIBUS CONDITIONAL OBJECTION OF AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS AND PRELIMINARY RESPONSE TO THE OMNIBUS CONDITIONAL OBJECTION

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III case numbers listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

RESPONSE AND OBJECTION ............................................................................................... 4

I.    The Conditional Objection is Unripe, Seeks an Impermissible Advisory Opinion,
and Should Either be Dismissed or Stayed Pending Resolution of the Oversight
Board Objection and the PBA Adversary Proceeding. ..................................................... 4

II.    The Factual Premise of the Conditional Objection is Meritless and Weighs in
Favor of Dismissal or Stay Pending Resolution of the Oversight Board Objection
and PBA Adversary Proceeding. .................................................................................... 9

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page**

**Cases**

*1108 K Street Assoc. v. Jewett*,
  Nos. 91–1548, 91–1627, 91–1628, 1992 WL 237248 (4th Cir. Sept. 25, 1992)......................9

*Abbott Labs. v. Gardner*,
  387 U.S. 136 (1967)...................................................................................................5

*In re Atlantic Pipe Corp.*,
  304 F.3d 135 (1st Cir. 2002).......................................................................................9

*Franklin Cal. Tax-Free Tr. v. Puerto Rico*,
  85 F. Supp. 3d 577 (D.P.R.).........................................................................................6

*Iravedra v. Pub. Bldg. Auth.*,
  Case No. 01-1581 (DRD) (D.P.R. July 30, 2001) *(The Commonwealth of
  Puerto Rico's Mot. to Dismiss and Br. in Supp. Thereof)* ......................................10

*Kowal v. Malkemus (In re Thompson)*,
  965 F.2d 1136 (1st Cir. 1992).....................................................................................3

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936)....................................................................................................8

*In re Lynn-Weaver*,
  462 B.R. 310 (Bankr. D. Mass. 2011) ........................................................................5

*McInnis-Misenor v. Maine Med. Ctr.*,
  319 F.3d 63 (1st Cir. 2003)..........................................................................................5

*Meridian Sec. Ins. Co. v. Sadowski*,
  441 F.3d 536,538 (7th Cir. 2006) ...........................................................................5, 6

*Reno v. Catholic Social Servs., Inc.*,
  509 U.S. 43 (1993).......................................................................................................5

*Socialist Labor Party v. Gilligan*,
  406 U.S. 583 (1972).....................................................................................................5

*In re Sosa*,
  443 B.R. 263 (Bankr. D.R.I. 2011) .............................................................................9

*Stern v. U.S. Dist. Court for Dist. Of Mass.*,
  214 F.3d 4 (1st Cir. 2000).............................................................................................5

*Total Petroleum P.R. Corp. v. T.C. Oil, Corp.*,
  No. 09-1105, 2010 WL 11545626 (D.P.R. May 7, 2010) ..........................................9

## TABLE OF AUTHORITIES

(continued)

**Page**

*Villafañe-Colon v. B Open Enters., Inc.*,
    932 F. Supp. 2d 274 (D.P.R. 2013)............................................................................9

**Statutes**

11 U.S.C.A. § 105(a) ...............................................................................................9

11 U.S.C.A. § 502 ....................................................................................................1

**Rules**

Bankruptcy Rule 2019 .............................................................................................1

Bankruptcy Rule 3007 .............................................................................................1

**Treatises**

13B Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal
    Practice and Procedure § 3532.1 (3d ed. 2008) ...........................................7

**Constitutional Provisions**

U.S. Constitution Article III...............................................................................3, 5

The QTCB Noteholder Group[2] respectfully submits this objection and preliminary response (the "Objection") to the *Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 6099 (the "Conditional Objection"), and the *Notice of Hearing on Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 6104 (the "Procedures Motion").  In support of this Objection, the QTCB Noteholder Group respectfully states as follows:

## PRELIMINARY STATEMENT

1.      The Conditional Objection—as its name implies—is conditional upon the outcome of several contingent issues in two other Title III proceedings and not yet ripe for the Court to decide.  As a result, the Conditional Objection should be either dismissed or stayed.  In their objection, the Ad Hoc Group of General Obligation Bondholders (the "GO Group") seeks disallowance of certain claims asserted against the Commonwealth—but seeks such disallowance *if, **and only if,*** the Court makes a series of specific findings in connection with (1) the *Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Sections 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by*

---

[2] The QTCB Noteholder Group shall have the same meaning as set forth in *Notice of Appearance and Request for Notice* [Dkt. No. 134] and the *Second Supplemental Verified Statement of the QTCB Noteholder Group Pursuant to Bankruptcy Rule 2019* [Dkt. No. 4871].

*Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 4784 (the "Oversight Board Objection"), and (2) the adversary proceeding seeking recharacterization of Public Buildings Authority (the "PBA") leases (the "PBA Adversary Proceeding," Adv. Proc. No. 18-00149-LTS).

2.      Indeed, the GO Group itself "emphasizes the conditional nature of [its] Conditional Objection," Conditional Objection at 7, explaining that before the relief sought in the Conditional Objection can even be considered, the Court must first accept as true all the premises set forth in the Oversight Board Objection and the Adversary Proceeding, including that:

- The PBA is a "transparent sham designed to circumvent the Commonwealth's constitutional debt limit" (Conditional Objection at 19 (internal quotation marks and citations omitted));

- The PBA Bonds should be recharacterized as direct obligations of the Commonwealth (Conditional Objection at  19, 22);

- The PBA Leases are disguised financing transactions (Conditional Objection at  24);

- The PBA Bonds should be included in the calculation of the Commonwealth's constitutional debt service limit; *and*

- It would be proper to impose a remedy for violations resulting from the above on bondholders retroactively (Conditional Objection at 3, 7, 26-27).

3.      The relief sought in the Conditional Objection is the last step and proposes an alternative remedy *only if* the proponents of the Oversight Board Objection and the plaintiffs in the PBA Adversary Proceeding prevail.

4.      Notably, the GO Group itself asserts that the premises relied upon by the proponents of the Oversight Board Objection and the PBA Adversary Proceeding plaintiffs are false, and that neither the Oversight Board Objection nor the PBA Adversary Proceeding has any merit.  Conditional Objection at 2, 7.  Nevertheless, the GO Group asks the Court to entertain

*now* a claim objection and implement cumbersome and costly notice procedures based on the *possibility* that the proponents of the Oversight Board Objection and PBA Adversary Proceeding may prevail at some point in the future.

5.      Article III of the U.S. Constitution makes clear that federal courts only adjudicate "cases or controversies" and cannot entertain claims or causes of action that have yet to materialize, nor do federal courts render advisory opinions.[3]  Given the highly speculative and contingent nature of the Conditional Objection, the objection and the relief sought therein are not ripe for adjudication and fail to demonstrate a real, present and concrete controversy.[4]  As such, the Court lacks jurisdiction to consider, at this time, the relief sought in the Conditional Objection, and implementing the procedures proposed in the Procedures Motion to resolve the Conditional Objection is premature, inappropriate, and an unnecessary waste of significant estate and judicial resources.

6.      In fact, because the GO Group expressly states that it intends to raise the same arguments and objections in its forthcoming response to the Oversight Board Objection, the Court may review and address those issues in the currently pending matters if, and when, they become relevant or ripe.

7.      Prudential considerations also weigh heavily against proceeding on the Conditional Objection now.  Considering conditional, hypothetical objections, the basis for which may never actually materialize, is a waste of judicial and valuable estate resources.  The implementation of extensive notice procedures for such conditional claim objections is unduly

---

[3] Article III also requires that the GO Group demonstrate its standing to object to claims, *see Kowal v. Malkenus (In re Thompson)*, 965 F.2d 1136, 1147 (1st Cir. 1992), which it has not.  The QTCB Noteholder Group reserves all rights to object to the Conditional Objection on this basis.

[4] The QTCB Noteholder Group rejects and denies the assertions in the Conditional Objection, and reserves all rights to, at the appropriate time – should that time ever come – fully and substantively respond to the Conditional Objection.

burdensome for the Court and the Debtors' estates. Similarly, proceeding with parallel and unnecessary litigation is inefficient, burdensome, and costly. There is simply no indication that the benefit of premature adjudication of the Conditional Objection outweighs the preservation of judicial and estate resources and efficient administration of these cases. Additionally, if the Court permits parties in these Title III Cases to bring conditional claim objections regardless of whether the factual or legal foundation for such an objection has materialized, the proverbial flood gates will open. Every bondholder with a claim against a Debtor whose claim *may be* impacted by the resolution of some other litigation or claim in these Title III cases will be compelled to file their own "conditional objection."

8.      Finally, because the threshold conditions of the Conditional Objection—that the PBA is a "sham" and the Leases are not "true" Leases—are false, it is unlikely that the conditions precedent that trigger consideration of the Conditional Objection will ever be met.

9.      For these reasons, the QTCB Noteholder Group respectfully requests that the Court dismiss the Conditional Objection and deny the Procedures Motion (without prejudice to refiling if the facts giving rise to the Conditional Objection actually materialize), or in the alternative, stay the Conditional Objection and the Procedures Motion unless and until the claims therein become ripe.

## <u>RESPONSE AND OBJECTION</u>

**I.      The Conditional Objection is Unripe, Seeks an Impermissible Advisory Opinion, and Should Either be Dismissed or Stayed Pending Resolution of the Oversight Board Objection and the PBA Adversary Proceeding.**

10.     The Conditional Objection is not ripe for consideration. By its terms, the Conditional Objection raises issues that are relevant only—and need only be considered—if a series of findings are made in two different proceedings in these Title III Cases, and then, and

only then, could the GO Group's stated objection have a conceivable basis.  Ripeness is both a constitutional requirement for subject matter jurisdiction and a prudential consideration; it "asks whether there presently exists an actual controversy of immediate and real consequence or merely circumstances that, on the basis of events yet to occur, may or may not ripen into a real matter in contest." *See In re Lynn-Weaver*, 462 B.R. 310, 314 (Bankr. D. Mass. 2011).

11.     Requiring adjudication of only "ripe" matters prevents courts "from entangling themselves in abstract disagreements." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).  Assessing the ripeness of a dispute involves a dual inquiry: evaluation of "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id.* at 70.

12.     ***First***, with respect to the fitness inquiry, both constitutional and prudential concerns operate and "typically involve subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends on facts that may not yet be sufficiently developed." *Stern v. U.S. Dist. Court for Dist. Of Mass.*, 214 F.3d 4, 10 (1st Cir. 2000).  "The critical question concerning fitness for review is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d at 70 (internal citation omitted).

13.     Where, as here, the claimant's purported injury "depend[s] on ***so many future events*** that a judicial opinion would be advice about remote contingencies," the dispute cannot satisfy the "case-or-controversy requirement" in Article III of the U.S. Constitution. *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) (citing *Reno v. Catholic Social Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993); *Socialist Labor Party v. Gilligan*, 406 U.S. 583 (1972)) (emphasis added).

-5-

14.     Any decision on the Conditional Objection turns on a significant number of "future events" that must occur in two separate legal proceedings still in their nascent stages. Consequently, any decision by the Court on the Conditional Objection would be nothing more than "advice about remote contingencies." *Sadowski*, 441 F.3d at 538.  Such advisory opinions are plainly unconstitutional.  *See Franklin Cal. Tax-Free Tr. v. Puerto Rico*, 85 F. Supp. 3d 577, 593 (D.P.R.), judgment entered, No. 14-1518 FAB, 2015 WL 574008 (D.P.R. Feb. 10, 2015), aff'd, 805 F.3d 322 (1st Cir. 2015), aff'd, 136 S. Ct. 1938 (2016).

15.     Under the circumstances, there remains a substantial universe of contested factual and legal issues that must first be resolved in connection with the Oversight Board Objection and the PBA Adversary Proceeding before the factual conditions of the Conditional Objection even come into fruition—if they ever do.  At most the only relief the Court could grant the GO Group at this point would be an advisory opinion as to the application of hypothetical outcomes of the PBA Adversary Proceeding and Oversight Board Objection to certain claims against the Commonwealth.

16.     ***Second***, declining consideration of the Conditional Objection will impose no hardship on the parties, whereas adjudication of the Conditional Objection and implementation of the extensive procedures sought in the Procedures Motion would waste significant judicial and Debtor resources.   For example, the Procedures Motion proposes the initial "Notice of Participation" procedure akin to that currently underway in connection with the Oversight Board Objection.  To date, there have been nearly 1000 separate Notices of Participation (including the several hundred received by the Court's staff from *pro se* individual filers) filed in response to the Oversight Board Objection.

17.     The Conditional Objection concerns both an overlap and a broader universe of bonds than the Oversight Board Objection and will no doubt result in thousands of Notices of Participation and increased administrative burden on the Debtors and the Court.  The Procedures Motion also requires the expenditure of significant expense and effort to gather bondholder information, inform bondholders, and publish notices.  Implementation of notice procedures and litigation of the Conditional Objection also places an enormous burden on bondholders (particularly individual investors) who will be required to expend their own resources to respond and defend against claims that may never materialize.  With respect to individual investors, many of whom are *pro se*, implementation of the notice procedures for a conditional claim objection is likely to cause confusion and result in added burden on the Court to respond to questions and concerns raised by unrepresented individuals.  There is simply no reason to waste the Debtors' or the Court's resources on costly and cumbersome procedures for a conditional claim objection, at least not at this time.

18.     There is no harm to the GO Group by deferring consideration of the Conditional Objection and postponing implementation of the procedures outlined in the Procedures Motion until or unless the objection becomes ripe.  The circumstances that are required to give rise to the factual basis necessary for the Conditional Objection to ripen are contingent and may never occur; if such circumstances do occur, the issues can be addressed at that time.  Further, many, if not all, of the issues raised in the Conditional Objection may be raised and addressed in the Oversight Board Objection and the PBA Adversary Proceeding already in progress.  Thus, there is no need for the Conditional Objection to be litigated now, if ever, and the benefit to the estate and Court of preserving valuable resources until such time the claim is actually ripe far outweighs any burden of delay on the Conditional Objection claimants.  *See* 13B Charles Alan

Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3532.1 at 372–74 (3d ed. 2008) (noting that ripeness is designed to conserve "judicial energies" and avoid forcing litigants to "bear the burdens" of unnecessary litigation).

19.    It would be a waste of judicial resources for the Court to undertake the adjudication of the Conditional Objection now, and implement the procedures proposed in the Procedures Motion.  Any monies expended by the estate in connection with the Procedures Motion and adjudication of the Conditional Objection would also be an unnecessary and inappropriate expense for the Debtors.

20.    Additionally, if the Court opens the flood gates to *conditional, hypothetical, speculative* claim objections, regardless of whether the factual or legal foundation for such an objection has materialized, the Court (and other interested parties) will be inundated.  Every stakeholder will feel compelled to address every possible state of the universe with a conditional claim objection.  With each new conditional claim objection involving bonds, there will be new notice procedures, discovery and briefing periods to resolve claims that may not have even materialized (and may never).  Such an exercise is a plain waste of the Court's and Debtors' resources.

21.    Accordingly, the QTCB Noteholder Group submits that the Conditional Objection should be dismissed without prejudice subject to re-filing if it is ever ripe for adjudication.

22.    In the alternative, the QTCB Noteholder Group requests that the Court postpone consideration of the Conditional Objection and the Procedures Motion unless and until a more concrete controversy arises.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, counsel, and for litigants." *Landis v. N. Am. Co*., 299 U.S. 248, 254 (1936).  It is

-8-

well within the Court's "discretionary power to stay an action in the interest of justice and efficiency." *Total Petroleum P.R. Corp. v. T.C. Oil, Corp*., No. 09-1105, 2010 WL 11545626, at *1 (D.P.R. May 7, 2010). "A properly granted stay operates as an invaluable tool to conserve party and judicial resources, and to avoid inconsistent procedural and legal rulings." *Villafañe-Colon v. B Open Enters., Inc*., 932 F. Supp. 2d 274, 280 (D.P.R. 2013) (internal citations and quotation omitted). Staying consideration of the Conditional Objection is also an appropriate exercise of the Court's inherent power to manage its docket so as to achieve orderly and expeditious disposition of cases before it. *See* 11 U.S.C.A. § 105(a); *see also In re Sosa*, 443 B.R. 263, 267 (Bankr. D.R.I. 2011) (citing *In re Atlantic Pipe Corp.*, 304 F.3d 135, 143 (1st Cir. 2002)).

## II.     The Factual Premise of the Conditional Objection is Meritless and Weighs in Favor of Dismissal or Stay Pending Resolution of the Oversight Board Objection and PBA Adversary Proceeding.

23.     The Conditional Objection should also be dismissed or stayed because the underlying premise of the conditions that trigger consideration of the objection is false, and thus, it is very unlikely that the objection will ever require adjudication. *See 1108 K Street Assoc. v. Jewett*, Nos. 91–1548, 91–1627, 91–1628, 1992 WL 237248, at *7 (4th Cir. Sept. 25, 1992) ("the circumstance always present where ripeness questions occur, that the issue . . . is one that in the end may never require adjudication.").

24.     The Oversight Board Objection and the PBA Adversary Proceeding rely on the false premise that PBA is not a public corporate entity performing a critical and valuable function. *See PBA Fund's, Assured's and QTCB Noteholder Group's Rule 12(c) Motion for Judgment on the Pleadings*, Adv. Pro. No. 18-00149, Dkt. No. 63, attached hereto as **Exhibit A** (the "Rule 12(c) Motion").

25.     Even the Conditional Objection itself argues the premise underlying the Oversight Board Objection and PBA Adversary Proceeding is false.  *See* Conditional Objection at 2, 19.

26.      There is no support in fact or law for the Oversight Board's claims, which have been expressly rejected no fewer than five times, including by the Puerto Rico Supreme Court and the U.S. Court of Appeals for the First Circuit.  As the Commonwealth has represented in prior litigation to Puerto Rico and federal courts alike, "the fact is that the 'PBA' is a public corporate entity apart from the Commonwealth with its own judicial persona," it is "fiscal[ly] and administrative[ly] indepen[dent],"[5] and "it cannot be seriously [contested] that the 'PBA' is not an 'arm or alter ego' of the Commonwealth . . . ."[6]

27.     Moreover, for more than half a century, PBA has and continues to be recognized as a genuine landlord entering into *bona fide* leases (the "Leases").   Those Leases have led to the construction of buildings, inhabited by tenants, and have provided jobs and public services to countless Puerto Rico residents.  At no point in the last 60 years of the PBA's existence, and even when the Commonwealth endeavored to delay paying the PBA what it was owed, did the Commonwealth once dispute that rent was due or allege that the Leases were invalid (and, as noted in the Rule 12(c) Motion, the Commonwealth continues to pay a portion of the rent due under the Leases).  It was only ***after*** the commencement of the Title III Cases that the Oversight Board and others have concocted a theory suggesting that the Leases were somehow something other than Leases and the PBA is something other than a recognized, independent and legitimate public corporation.

---

[5] *Iravedra v. Pub. Bldg. Auth.*, Case No. 01-1581 (DRD) (D.P.R. July 30, 2001) [Dkt. No. 12 at 4] *(The Commonwealth of Puerto Rico's Mot. to Dismiss and Br. in Supp. Thereof)*, a copy of which is attached to the Rule 12(c) Motion as **Exhibit E**.

[6] *Iravedra v. Pub. Bldg. Auth.*, Case No. 01-1581 (DRD) (D.P.R. Sept. 28, 2001) [Dkt. No. 19 at ¶ 8] *(The Commonwealth of P.R.'s Mot. to Submit Reply)* (the "Iravedra Reply"), a copy of which is attached to the Rule 12(c) Motion as **Exhibit F**.

28.     Given the conditional and hypothetical nature of the claims in the Conditional Objection, and the remote and unlikely success on the merits of the Oversight Board Objection and the PBA Adversary Proceeding—conditions precedent to the Conditional Objection—there exists no valid reason to squander the resources of the Debtors' estates on unnecessary legal fees and the cost of procedures for conditional, hypothetical claims that may never come to fruition.

## **CONCLUSION**

For the reasons set forth herein the QTCB Noteholder Group respectfully requests that the Court deny the Procedures Motion, and dismiss the Conditional Objection, or stay all proceedings with respect to the Conditional Objection unless and until such time the issues raised therein are ripe for consideration, and grant such other relief as the Court deems just and proper.

[*Remainder of page intentionally left blank.*]

Respectfully submitted, in San Juan, Puerto Rico, this 15th day of April, 2019.

*/s/ Kurt A. Mayr*
Kurt A. Mayr (*pro hac vice*)
David L. Lawton (*pro hac vice*)
Shannon B. Wolf (*pro hac vice*)

**BRACEWELL LLP**
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Telephone: (860) 256-8534
Email: kurt.mayr@bracewell.com
Email: david.lawton@bracewell.com
Email: shannon.wolf@bracewell.com

*Counsel for the QTCB Noteholder Group*

-and-

*/s/ Roberto Abesada-Agüet*
Roberto Abesada-Agüet
USDC-PR No. 216706
E-Mail: ra@calopsc.com

*/s/ Sergio E. Criado*
Sergio E. Criado
USDC-PR No. 226307
E-Mail: scriado@calopsc.com

**CORREA ACEVEDO & ABESADA LAW
OFFICES, P.S.C.**
Centro Internacional de Mercadeo, Torre II
# 90 Carr. 165, Suite 407
Guaynabo, P.R.  00968
Tel. (787) 273-8300; Fax (787) 273-8379

*Co-Counsel for the QTCB Noteholder Group*

**I HEREBY CERTIFY** that on April 15, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send automatic notifications of such filing to all attorneys of record.

_/s/ Kurt A. Mayr_____
Kurt A. Mayr
Bracewell LLP
City Place I, 34th Floor
185 Asylum Street
Hartford, CT 06103
Tel: (860) 254-8534
Email: kurt.mayr@bracewell.com

_/s/ Roberto Abesada-Agüet_
Roberto Abesada-Agüet

_/s/ Sergio E. Criado_
Sergio E. Criado

Centro Internacional de Mercadeo II
#90 Carr. 165 Suite 407
Guaynabo, Puerto Rico 00968-8064
ra@calopsc.com
(787) 273- 8300