# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**AMBAC ASSURANCE CORPORATION'S OBJECTION TO THE MOTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS FOR AN ORDER, UNDER BANKRUPTCY CODE SECTIONS 105(A) AND 502 AND BANKRUPTCY RULE 9006, ESTABLISHING PROCEDURES WITH RESPECT TO OMNIBUS CONDITIONAL OBJECTION TO CLAIMS FILED OR ASSERTED BY THE PUBLIC BUILDINGS AUTHORITY, HOLDERS OF PUBLIC BUILDINGS AUTHORITY BONDS, AND HOLDERS OF CERTAIN COMMONWEALTH GENERAL OBLIGATION BONDS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Ambac Assurance Corporation ("Ambac") respectfully submits this objection to the *Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No. 6104, the "Procedures Motion"). Ambac states as follows:

## PRELIMINARY STATEMENT

1. The Ad Hoc Group of General Obligation Bondholders (the "GO Bondholders") admit in their self-styled "conditional objection"[2] to certain creditor claims that they are not seeking any relief from the Court at this time. Their chosen "conditional" titling makes that intent clear—the relief sought will be necessary only if certain events occur. Notwithstanding that backdrop, the GO Bondholders seek to impose on this Court by requesting the establishment of elaborate procedures affecting thousands of creditors to adjudicate claim objections that may, even by the GO Bondholders' admission, never have a basis in law. The relief sought by the Procedures Motion may be called for at some time in the future, depending on intervening developments in ongoing legal proceedings. Until that time, the Procedures Motion is plainly unripe, and should accordingly be denied.

2. Even if the Court is not inclined to dismiss the Conditional Objection, the Court should deny the Procedures Motion and defer any action on the Conditional Objection until after the Court resolves the predicate issues, including those raised in the omnibus claim objection challenging GO bonds issued in 2012 and 2014 (the "Omnibus Claim Objection"). The

---

[2] *See Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, at 7, 34 (Dkt. No. 6099, the "Conditional Objection").

Conditional Objection is premised on this Court finding that (i) the PBA bonds were an unlawful scheme to evade the constitutional debt limit, (ii) the PBA bonds are direct obligations of the Commonwealth that count against the debt limit, and (iii) the PBA leases are in fact disguised financings. (*See* Conditional Objection 7, 24.) Each of these threshold questions has been presented to the Court in the Omnibus Claim Objection and the PBA adversary litigation. If the Court decides any of the above facts in the negative, the condition precedent to the GO objection will not be satisfied and the Conditional Objection will be mooted.

3. As a matter of judicial efficiency, therefore, the Court and the parties should focus first on the threshold issues—and then, in the event that the Court finds that the predicate conditions have been satisfied, address the consequences for specific claimants in a subsequent phase of the proceedings. This will allow for an orderly and efficient presentation of the issues, consistent with the approach the Court took in connection with the Commonwealth-COFINA litigation; and it will avoid significant costs and burdens to both the Commonwealth and PBA bondholders involved in the burdensome notice program that GO Bondholders propose.

## ARGUMENT

**I. THE GO BONDHOLDERS' CONDITIONAL CLAIM OBJECTION IS NOT RIPE AND SHOULD BE DISMISSED.**

4. The Procedures Motion should be denied, and the Conditional Objection dismissed, because it is not ripe and any proceedings on the Conditional Objection would be premature. The GO Bondholders went to great lengths to "emphasize[] the conditional nature of" their objection—explicitly stating that they only "*conditionally* request[] entry of an order" disallowing claims. (Conditional Objection at 7, 34 (emphasis added).) In other words, the GO Bondholders are not seeking any relief from the Court at this time. They are merely describing what they *might* seek, at some unknown future date, *if* the Court accepts certain arguments advanced in the Omnibus

2

Claim Objection and the PBA adversary litigation. This announcement of the GO bondholders' future intentions does not present a currently justiciable case or controversy—and it will not ripen into a live controversy until the Court first decides the threshold issues of whether PBA was an unlawful scheme to evade the debt limit, whether the PBA bonds are subject to the constitutional debt limit, and whether the PBA leases are in fact disguised financings.

5. The ripeness doctrine is "mandated by the constitutional requirement that federal jurisdiction extends only to actual cases or controversies." *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995); *In re Hang*, 589 B.R. 234, 248 (Bankr. D.R.I. 2018). "[T]he Supreme Court has reinforced that the ripeness doctrine seeks to prevent the adjudication of claims relating to 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Reddy v. Foster*, 845 F.3d 493, 500 (1st Cir. 2017) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)); *Hang*, 589 B.R. at 248.

6. "In determining whether an issue is ripe for [judicial] review, we consider '(1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.'" *Algonquin Gas Transmission, LLC v. Weymouth, Massachusetts*, 919 F.3d 54, 62 (1st Cir. 2019) (*Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003)). "The fitness prong of this inquiry . . . require[s] us first to ask 'whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all,' thus rendering any opinion we might offer advisory." *Id.* (quoting *Ernst & Young*, 45 F.3d at 536). "The hardship element requires a court to consider 'whether the challenged action creates a direct and immediate dilemma for the parties.'" *Sindicato Puertorriqueno de Trabajadores v. Fortuno*, 699 F.3d 1, 9 (1st Cir. 2012) (internal quotation marks omitted) (quoting *Verizon New Eng., Inc. v. Int'l Bhd. of Elec. Workers, Local No. 2322*, 651 F.3d 176, 188 (1st Cir.2011)). "The ripeness

3

doctrine seeks 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *McInnis-Misenor v. Maine Med. Ctr.*, 319 F.3d 63, 70 (1st Cir. 2003) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)).

7. The GO Bondholders' Conditional Objection involves exactly the kind of premature, abstract, and advisory litigation that the ripeness doctrine precludes. With respect to the first prong of the ripeness inquiry, the Conditional Objection plainly depends on uncertain and contingent events that may or may not occur. The GO Bondholders have made clear that they are not *currently* asking the Court to exclude claims based on the PBA bonds. The GO Bondholders merely are asserting that, *if* the Court accepts the arguments advanced in the Omnibus Claim Objection and the PBA adversary litigation—arguments the GO Holders vigorously dispute—*then* claims based on PBA bonds should be excluded (while claims based on the GO bonds issued in 2012 and 2014, the "Challenged GO Bonds," should be allowed). Ambac disagrees with the GO Holders' assertions on these points, but regardless of the merits, the Court should not, indeed cannot, issue rulings based on the mere contingent hypotheticals that GO Bondholders have posited—or issue advisory opinions as to how various hypothetical scenarios ultimately may play out.

8. With respect to the second prong, neither the GO Bondholders nor any other party will suffer any "hardship" if the Court dismisses the Conditional Objection as unripe. To the contrary, doing so will facilitate an orderly and logical presentation of the issues.

**II.  AT A MINIMUM, THE CONDITIONAL OBJECTION SHOULD BE STAYED UNTIL THE COURT RESOLVES THE PREDICATE ISSUES.**

9. If the Court is disinclined to dismiss the Conditional Objection, at a minimum, the Court should defer any proceedings on the Conditional Objection until the Court first has an opportunity to resolve the logically antecedent issues raised in the Omnibus Claim Objection and

the PBA adversary litigation regarding (i) whether the PBA bonds were an unlawful scheme to evade the constitutional debt limit, (ii) whether the PBA bonds are direct obligations of the Commonwealth that must be included in the calculation of the constitutional debt limit, and (iii) whether the PBA leases are in fact disguised financings. There are several reasons why this sequencing is appropriate here.

10. *First*, deferring consideration of the issues raised in the Conditional Objection would serve the interests of judicial economy, because depending on how the Court resolves the threshold issues raised in the Omnibus Claim Objection and the PBA adversary litigation, the Court may never need to rule on the Conditional Objection. The logically antecedent questions, about the characterization of the leases, the nature of PBA itself, and the PBA bonds, could moot the Conditional Objection entirely, as the GO Bondholders themselves acknowledge, such that it would be most appropriate to defer the Conditional Objection until consideration of the threshold issues.

11. *Second*, sequencing the Court's consideration of the issues in this way is consistent with the approach the Court has taken on previous matters. For example, in connection with the Bank of New York Mellon's ("BNYM") motion for interpleader with respect to COFINA funds, the Court ordered a three-staged approach, ordering the parties in phase one to address the interpleader motion, then to determine the parties' claims to the disputed funds, and only thereafter to litigate BNYM's requests for declaratory relief and claims asserted against BNYM (including Ambac's claims against BNYM for breach of fiduciary duty).

12. The Court adopted a similar approach in connection with the Commonwealth-COFINA dispute. There, consistent with the negotiated and ordered protocol, the Court dismissed without prejudice numerous causes of actions and counterclaims that fell outside the threshold

5

issue of whether the Commonwealth or COFINA owned the Pledged Sales Taxes.[3] Limiting the initial round of litigation to the key threshold issues ultimately led to a negotiated settlement that benefitted both the Commonwealth and the holders of COFINA debt. (That settlement also obviated the need for the Court or the parties to expend resources litigating the "out of scope" issues in the Commonwealth-COFINA Dispute and certain of the issues reserved for the later phases of the interpleader action.)

13. *Third*, this sequencing would avoid the substantial burdens that the Procedures Motion would impose on the debtor and potentially thousands of PBA bondholders, and likely unnecessary confusion. In connection with the Omnibus Claim Objection, already more than 500 notices of participation have been filed, many of them *pro se*. The GO Bondholders' Procedures Motion would also require a significant number of parties, many likely *pro se*, to file notices. The notice process could be even more burdensome for the PBA bondholders because the "conditional" nature of the GO Holders' Conditional Objection can be expected to cause significant confusion among PBA bondholders about the nature and meaning of the objection, whether or not it will affect their rights, and when they need file notices of participation in response to the "conditional" objection. There is no good reason to impose this burden for a conditional objection that may never ripen. This burden potentially could be avoided (as the GO Bondholders believe it should be) by simply waiting until the Court resolves the various threshold issues.

14. *Finally*, these additional procedures and burdens on PBA bondholders are not necessary to implement to resolve the threshold questions. The Court already has underway two significant proceedings concerning PBA. In the PBA adversary proceeding, the Court will resolve

---

[3] *See Stipulation and Order Approving Procedure to Resolve Commonwealth-COFINA Dispute* (Dkt. 996); *Order (A) Confirming Scope of COFINA and Commonwealth Agent's Authority Under Stipulation and Order and (B) Dismissing, Without Prejudice, Certain Claims that Exceed the Scope of the Commonwealth-COFINA Dispute*, Adv. Proc. No. 17-257-LTS (Dkt 167) (the "Scope Order").

disputes concerning whether the PBA leases are true leases entitled to administrative expense priority under section 365 of the Bankruptcy Code, or disguised financings. In connection with the Omnibus Claim Objection, the Court will determine whether or not the PBA structure was a sham to evade the debt limit, and/or whether the PBA bonds are properly considered direct Commonwealth obligations that should have been included in the Commonwealth's constitutional debt limit because of the particular characteristics of the overall transaction (including, in particular, the GO guarantee that created a direct creditor claim in the event of a failure of the Commonwealth to comply with its full faith and credit pledge on the lease payments) or specific language of the Puerto Rico Constitution.

15. The PBA Adversary proceeding and the Omnibus Claim Objection will allow for a thorough presentation of the foundational legal issues that have been raised concerning the PBA leases and bond obligations. If the Court were to determine, after full consideration of the issues, that (i) the PBA bonds were an unlawful scheme to evade the constitutional debt limit, (ii) the PBA bonds are direct obligations of the Commonwealth that count against the debt limit, and (iii) the PBA leases are in fact disguised financings, then at that time, the GO Holders can renew their procedures motion, and the Court can make a determination in the context of a ripe claim objection.

## CONCLUSION

16. For the reasons set forth above, Ambac respectfully requests that the Court deny the Procedures Motion, and dismiss the Conditional Objection as unripe, or, in the alternative, defer consideration of the Conditional Objection until the Court resolves the PBA adversary proceeding and the Omnibus Claim Objection, and grant such other relief as the Court deems just and proper.

Dated: April 15, 2019
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Dennis F. Dunne*
    Dennis F. Dunne
    Andrew M. Leblanc
    Atara Miller
    Grant R. Mainland
    (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5770
    Facsimile: (212) 822-5770
    Email: ddunne@milbank.com
          aleblanc@milbank.com
          amiller@milbank.com
          gmainland@milbank.com

***Attorneys for Ambac Assurance Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com