

# GOVERNMENT OF PUERTO RICO

Puerto Rico Fiscal Agency and Financial Advisory Authority

## Municipal Secondary Market Disclosure Information Cover Sheet
## Municipal Securities Rulemaking Board (MSRB)
## Electronic Municipal Market Access System (EMMA)

### Additional / Voluntary Event-Based Disclosure

**THIS FILING RELATES TO ALL OR SEVERAL SECURITIES ISSUED BY THE ISSUER, OR ALL OR SEVERAL SECURITIES OF A SPECIFIC CREDITOR:**

Issuer's Name:   **Puerto Rico Sales Tax Financing Corporation (COFINA)**

Other Obligated Person's Name (if any): _____

Six-digit CUSIP number(s):   **74529J** _____

**TYPE OF INFORMATION PROVIDED:**

A.  ☐ **Amendment to Continuing Disclosure Undertaking**

B.  ☐ **Change in Obligated Person**

C.  ☐ **Notice to Investor Pursuant to Bond Documents**

D.  ☐ **Communication from the Internal Revenue Service**

E.  ☐ **Bid for Auction Rate and Other Securities**

F.  ☐ **Capital or Other Financing Plan**

G.  ☐ **Litigation / Enforcement Action**

H.  ☐ **Change of Tender Agent. Remarketing Agent or Other On-going Party**

I.  ☐ **Derivative or Other Similar Transaction**

J.  ☒ **Other Event-Based Disclosures:** **COFINA - Tax Exemption Implementation Agreement.** ____

I represent that I am authorized by the issuer, obligor or its agent to distribute this information publicly.

*/s/ Sebastián M. Torres Rodríguez*
Sebastián M. Torres Rodríguez
Puerto Rico Fiscal Agency and Financial Advisory Authority,
   as Fiscal Agent for the Commonwealth

Dated: February 12, 2019



PO Box 42001 • San Juan, PR 00940-2001 • Telephone (787) 722-2525

## PUERTO RICO SALES TAX FINANCING CORPORATION

### EVENT NOTICE

On February 12, 2019, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") and the Puerto Rico Sales Tax Financing Corporation ("COFINA") announced the occurrence of the "Effective Date" of the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, dated January 9, 2019, approved by the U.S. District Court for the District of Puerto Rico pursuant to Title III of the Puerto Rico Oversight, Management and Economic Stability Act. On the Effective Date, COFINA issued $11,869,739,717.80 Puerto Rico Sales Tax Financing Corporation Restructured Sales Tax Bonds, Series 2019A, consisting of: $8,277,930,717.80 Restructured Sales Tax Bonds, Series 2019A-1 (the "Series 2019A-1 Bonds") and $3,591,809,000.00 Restructured Sales Tax Bonds, Series 2019A-2 (the "Series 2019A-2 Bonds" and, together with the Series 2019A-1 Bonds, the "Series 2019A Bonds"); and $151,582,099.55 Puerto Rico Sales Tax Financing Corporation Restructured Sales Tax Bonds, Series 2019B, consisting of: $106,012,099.55 Restructured Sales Tax Bonds, Series 2019B-1 (the "Series 2019B-1 Bonds") and $45,570,000.00 Restructured Sales Tax Bonds, Series 2019B-2 (the "Series 2019B-2 Bonds," and, together with the Series 2019B-1 Bonds, the "Series 2019B Bonds" and, together with the Series 2019A Bonds, the "New Bonds"). COFINA refers holders of the New Bonds to the notice dated February [12], 2019 posted on EMMA by The Bank of New York Mellon, as the trustee of the New Bonds.

Notice is hereby given that, on the Effective Date, AAFAF, COFINA, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" and, together with AAFAF and COFINA, the "Government Parties"), and certain beneficial holders of New Bonds executed a Tax Exemption Implementation Agreement, attached hereto as Exhibit A (the "Tax Exemption Implementation Agreement"). Pursuant to the Tax Exemption Implementation Agreement, each Government Party shall use its reasonable best efforts to pursue a private letter ruling or other determination from the U.S. Internal Revenue Service to the effect that interest on the Series 2019A-2 Bonds and the Series 2019B-2 Bonds (collectively, the "2019 A-2 B-2 Bonds") is excludable from gross income for federal income tax purposes. Each Government Party also agreed to, upon the issuance of such IRS determination, offer all holders of 2019 A-2 B-2 Bonds the opportunity to exchange (the "Exchange") such 2019 A-2 B-2 Bonds for new COFINA tax exempt bonds (the "Exchange Bonds"), and to effectuate such Exchange. To the extent issued, the yield on the Exchange Bonds shall be twenty-five (25) basis points lower than that of the 2019 A-2 B-2 Bonds for which they were exchanged.

The Tax Exemption Implementation Agreement shall terminate upon the earlier to occur of the following events: (a) January 1, 2020, (b) the IRS notifies COFINA that it is unable to issue a favorable private letter ruling or closing agreement with respect to the matters addressed by the agreement, and (c) the consummation of the Exchange.

PUERTO RICO SALES TAX FINANCING CORPORATION

Dated: February 12, 2019

## TAX EXEMPTION IMPLEMENTATION AGREEMENT

TAX EXEMPTION IMPLEMENTATION AGREEMENT (this "**Agreement**"), dated as of February 12, 2019, by and among (a) Financial Oversight and Management Board for Puerto Rico (the "**Oversight Board**"), (b) Corporación del Fondo de Interés Apremiante de Puerto Rico, whose name in English is the Puerto Rico Sales Tax Financing Corporation ("**COFINA**"), (c) Puerto Rico Fiscal Agency and Financial Advisory Authority ("**AAFAF**"), (d) Ambac Assurance Corporation ("**Ambac**"), and (e) certain beneficial holders of Applicable Bonds, as defined below, which may include the advisors or managers who are advising or managing a beneficial holder of Applicable Bonds on behalf of such beneficial holders (together with Ambac, the "**Supporting Holders**"). The signatories hereto are referred to hereafter collectively as the "**Parties**" or individually as a "**Party**".

## RECITALS

A.      The Oversight Board, COFINA, AAFAF, the Supporting Holders and certain other Entities are party to that certain Amended and Restated Plan Support Agreement, dated as of September 20, 2018 (the "**PSA**" or "**Plan Support Agreement**").

B.      Pursuant to the Plan Support Agreement, each of the Oversight Board, COFINA, and AAFAF has covenanted to use its "reasonable best efforts to cause the new COFINA securities [*i.e.*, the new COFINA Bonds], including, without limitation, in connection with the use of Custodial Trusts [*i.e.*, the "Trusts" under the Plan], to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities." The Government Parties, on the one hand, and the Supporting Holders, on the other, dispute whether such covenants under the Plan Support Agreement survive the occurrence of the Effective Date.

C.      COFINA, by and through the Oversight Board, as representative of COFINA under PROMESA section 315(b) proposed and filed with the United States District Court for the District of Puerto Rico (the "**Title III Court**") (i) the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation, dated January 9, 2019 (Docket Entry No. 439 in Case No. 17-3284) (as amended, restated, supplemented, or otherwise modified in accordance with the terms thereof, the "**Plan**") and (ii) the Second Amended Plan Supplement and Plan Related Documents of Puerto Rico Sales Tax Financing Corporation (Docket Entry No. 4956 in Case No. 17-3283) (as each document contained therein may be amended, restated, supplemented, or otherwise modified in accordance with the terms thereof, the "**Second Amended Plan Supplement**");

D.      On February 5, 2019, the Title III Court entered that certain Amended Order and Judgment Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation (Docket Entry No. 5055 in Case No. 17-03283) (the "**Confirmation Order**") confirming the Plan and authorizing the consummation of the transactions contemplated therein.

E.      On or about December 14, 2018, COFINA filed a request for a private letter ruling or closing agreement with the Internal Revenue Service (the "**IRS**") with respect to the new COFINA Bonds. Severely limited IRS operations during the recent federal government shutdown have hindered the IRS's ability to make important determinations relating to the

potential tax-exempt nature of certain of the Applicable Bonds (as defined below), and such determinations may not be made prior to the Effective Date.

F.        The Effective Date of the Plan occurred on February 12, 2019.

G.        The Oversight Board and AAFAF consent to COFINA's execution and delivery of this Agreement and to COFINA performing and exercising its rights under this Agreement, including, without limitation, COFINA's rights to consent to any waiver or amendment, in each case, in accordance with the terms and conditions set forth herein.

NOW, THEREFORE, the Parties, in consideration of the promises, covenants and agreements herein described and for other good and valuable consideration, acknowledged by each of them to be satisfactory and adequate, and intending to be legally bound, do hereby mutually agree as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1    Recitals. The recitals set forth above are incorporated by reference and are explicitly made a part of this Agreement.

Section 1.2    Definitions. Capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Plan (or if not defined in the Plan, as defined in the PSA). The following definitions shall apply to and constitute part of this Agreement and all schedules, exhibits and annexes hereto:

"*Agreement*" shall mean, collectively, this Tax Exemption Implementation Agreement, and each exhibit annexed hereto or thereto, including Annex I attached hereto, as each may be amended, supplemented or otherwise modified in accordance with the terms hereof or thereof.

"*Applicable Bonds*" means the COFINA Bonds that are not Tax-Exempt Bonds on the Effective Date. The Applicable Bonds consist of the Series 2019A-2 Bonds (as defined in the First Supplemental Trust Indenture) and the Series 2019B-2 Bonds (as defined in the Second Supplemental Trust Indenture).

"*Exchange Offer*" means an offer made to all holders of Applicable Bonds in which Exchange Bonds are offered in exchange for Applicable Bonds; *provided*, *however*, that, subject to Section 2.3 hereof, each holder may elect whether the Applicable Bonds held thereby will participate in such offer; *provided, further*, that (i) Transaction Counsel shall have issued an opinion to COFINA and the trustee under the New Bond Indenture that the consummation of such exchange will not be considered a reissuance (or a refunding) for federal income tax law purposes and (ii) counsel to one or more of the Supporting Holders or the trustee under the New Bond Indenture shall have issued an opinion to such trustee that the consummation of such exchange will not be considered a reissuance (or a refunding) for federal income tax law purposes.

"*Exchange Bond*" means a Tax-Exempt Bond issued by COFINA in exchange for an Applicable Bond. An Exchange Bond shall have identical terms to the Applicable Bond for which it is exchanged; *provided, however*, that, to the extent issued, the yield on such Exchange

Bond shall be twenty-five (25) basis points lower than that of the Applicable Bond for which it is exchanged, with such yield comparison made in the manner specified in Treasury Regulation Section 1.1001-3.

"*First Supplemental Trust Indenture*" shall mean the First Supplemental Trust Indenture by and between COFINA and The Bank of New York Mellon, as Trustee, expected to be entered into on the Effective Date in substantially the form in which it was filed as part of the Second Amended Plan Supplement.

"*Government Parties*" shall mean, collectively, the Oversight Board, AAFAF and COFINA.

"*Second Supplemental Trust Indenture*" shall mean the Second Supplemental Trust Indenture by and between COFINA and The Bank of New York Mellon, as Trustee, expected to be entered into on the Effective Date in substantially the form in which it was filed as part of the Second Amended Plan Supplement.

"*Tax-Exempt Bond*" shall have the meaning given to such term in the New Bond Indenture (*i.e.*, any Bond as to which Transaction Counsel has rendered an opinion to the effect that interest on it is excluded from gross income for purposes of federal income taxation).

"*Transaction Counsel*" shall have the meaning given to such term in the New Bond Indenture (*i.e.*, a nationally recognized bond counsel as may be selected by COFINA for a specific purpose).

Section 1.3    Other Terms.  Other terms may be defined elsewhere in this Agreement and, unless otherwise indicated, shall have such meaning throughout this Agreement.  As used in this Agreement, any reference to any federal, state, local, or foreign law, including any applicable law, will be deemed also to refer to such law as amended and all rules and regulations promulgated thereunder, unless the context requires otherwise.  The words "include", "includes", and "including" will be deemed to be followed by "without limitation." Pronouns in masculine, feminine or neutral genders will be construed to include any other gender, and words in the singular form will be construed to include the plural and vice versa, unless the context otherwise requires.  The words "this Agreement", "herein", "hereof", "hereby", "hereunder", and words of similar impact refer to this Agreement as a whole and not to any particular subdivision unless expressly so limited.

Section 1.4    Interpretations.  The Parties have participated jointly in the negotiation and drafting of this Agreement.  If an ambiguity or question of intent or interpretation arises, this Agreement will be construed as if drafted jointly by the parties hereto and no presumption or burden of proof will arise favoring or disfavoring any party hereto because of the authorship of any provision of this Agreement.

Section 1.5    Exhibits.  Each of the exhibits, annexes, signature pages and schedules annexed hereto, including Annex I attached hereto, are expressly incorporated herein and made a part of this Agreement, and all references to this Agreement shall include such exhibits, annexes and schedules.

Section 1.6    Disclosure. On the Effective Date, (i) the Oversight Board shall file this Agreement (excluding any exhibit annexed hereto) with the Clerk of the Title III Court on the

docket of the Title III Case and (ii) AAFAF or COFINA shall post a copy of this Agreement (excluding any exhibit annexed hereto) on the Electronic Municipal Market Access system operated by the Municipal Securities Rulemaking Board under the CUSIP for each of the Applicable Bonds.

## ARTICLE II
## COVENANTS

Section 2.1     Each Government Party shall: (a) use its reasonable best efforts to take all necessary actions so as to enable Transaction Counsel to deliver its opinion that the interest on the Exchange Bonds is excludable from gross income for federal income tax purposes and exempt from Commonwealth, state and local income taxes promptly following the issuance by the IRS of a private letter ruling, or entering into a closing or other similar agreement, that Transaction Counsel requires in order to deliver such opinions, (b) use its reasonable best efforts to pursue such letter ruling or other agreement with the IRS, and (c) upon the issuance of such IRS determination: (1) effectuate an Exchange Offer with holders of the Applicable Bonds electing to participate in such Exchange Offer, and (2) cause Transaction Counsel to deliver such opinions simultaneously with the consummation of the Exchange Offer.   The obligation on COFINA set forth in subsection (a) above shall include the timely filing of one or more Forms 8038-G and delivery by COFINA of customary tax compliance agreements and certificates. Upon delivery of the opinions referred to in subsection (c)(2) above, COFINA shall amend the First Supplemental Trust Indenture and Second Supplemental Trust Indenture so that the covenants in Section 5.01 of the First Supplemental Trust Indenture or Second Supplemental Trust Indenture apply to the Exchange Bonds *mutatis mutandis* as if they were Series 2019A-1 Bonds or Series 2019B-1 Bonds. To the extent necessary or desirable, AAFAF and the Oversight Board shall cooperate with COFINA to facilitate such amendments.

Section 2.2     Each Supporting Holder acknowledges and agrees that, as of the date hereof, each of the Oversight Board, COFINA and AAFAF has complied with Sections 4.1(a), 4.2(a), and 4.3(a) of the Plan Support Agreement, as applicable, by "using its reasonable best efforts to cause the new COFINA securities, including, without limitation, in connection with the use of Custodial Trusts, to be tax-exempt to the extent permitted by law, including, without limitation, providing, or causing to be provided, any and all information required or requested by federal and applicable local tax laws and federal and applicable local taxing authorities." Each Supporting Holder further acknowledges and agrees that the covenants of the Government Parties under Sections 4.1(a), 4.2(a), and 4.3(a) of the Plan Support Agreement, as applicable, terminate upon the occurrence of the Effective Date.

Section 2.3     Prior to an Exchange Offer, each Supporting Holder may agree in writing with the Government Parties to irrevocably and unconditionally participate in such Exchange Offer and exchange all or a portion of Applicable Bonds held by such Supporting Holder as of the date of such Exchange Offer for Exchange Bonds.

## ARTICLE III
## TERMINATION

Section 3.1     Termination.  Except as otherwise provided in this Agreement (including Annex I attached hereto), this Agreement shall terminate upon the earlier to occur of the following events (each, a "**Termination Event**"): (a) January 1, 2020; (b) the IRS notifies COFINA that it is unable to issue a favorable private letter ruling or closing agreement

4

6

with respect to the matters addressed by this Agreement, and (c) the amendment of the First Supplemental Trust Indenture and Second Supplemental Trust Indenture in accordance with Section 2.1 hereof following receipt of a favorable private letter ruling or entry into a favorable closing agreement with the IRS and consummation of an Exchange Offer.

Section 3.2    Effect of Termination. Upon the occurrence of a Termination Event, each Party's obligations under this Agreement shall be terminated effective immediately, and each Party hereto shall be released from all commitments, undertakings, covenants, agreements and obligations hereunder; *provided*, *however*, that (a) any claim for breach of this Agreement that arises prior to the occurrence of such Termination Event shall survive any such termination, and all rights and remedies with respect to such claims shall not be prejudiced in any way, and (b) Section 2.2 and Articles I, III, and IV shall survive any such termination.

## ARTICLE IV
## MISCELLANEOUS

Section 4.1    Fees and Expenses. Each Party shall pay the fees and expenses of its attorneys, advisors and other professionals, if any, and all other expenses incurred by such Party incident to the negotiation, preparation, execution, delivery and performance of this Agreement, including, without limitation, in connection with the issuance and delivery of the Exchange Bonds.

Section 4.2    Amendments. This Agreement may not be modified, terminated, amended or supplemented except by a written agreement executed by each Party hereto.

Section 4.3    No Admission of Liability. None of this Agreement or any act performed or document executed pursuant to or in furtherance of this Agreement shall be admissible in any proceeding for any purposes, except to enforce the terms of this Agreement or such other documents.

Section 4.4    Good Faith Negotiations. The Parties recognize and acknowledge that each of the Parties hereto is represented by counsel, and such Party received independent legal advice with respect to the advisability of entering into this Agreement; the negotiations related to this Agreement were conducted regularly and at arm's length; this Agreement is made and executed by and of each Party's own free will; each Party knows all of the relevant facts and his, her or its rights in connection therewith, and that he, she or it has not been improperly influenced or induced to enter into this Agreement as a result of any act or action on the part of any party or employee, agent, attorney or representative of any party to this Agreement. The Parties further acknowledge and agree that in connection with the negotiation and consummation of this Agreement the Parties, at all times, acted (a) in good faith and (b) solely for themselves and not on behalf of or in representation of any other creditors, bondholders or other parties in interest.

Section 4.5    Third Party Beneficiary. Other than funds and/or accounts which are or become holders of the Applicable Bonds and whose advisors or managers are Parties hereto, nothing in this Agreement, express or implied, is intended or shall be construed to confer upon, or to give to, any Person other than the Parties hereto, and their respective successors and assigns, any right, remedy or claim under or by reason of this Agreement or any covenant, condition or stipulation thereof; and the covenants, stipulations and agreements contained in

this Agreement are and shall be for the sole and exclusive benefit of the Parties hereto and their respective successors and assigns.

Section 4.6    Governing Law; Retention of Jurisdiction; Service of Process.  This Agreement shall be governed by and construed in accordance with the internal laws of the State of New York and applicable federal law, without giving effect to the principles of conflicts of laws that would require the application of the law of any other jurisdiction.  By its execution and delivery of this Agreement, each of the Parties hereby irrevocably and unconditionally agrees for itself that any legal action, suit or proceeding between any or all of the foregoing with respect to any matter under or arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered in any such action, suit or proceeding, shall be brought in the Title III Court for that purpose (or, if the Title III Court declines jurisdiction, another court of competent jurisdiction) only, and, by execution and delivery of this Agreement, each hereby irrevocably accepts and submits itself to the jurisdiction of such court, generally and unconditionally, with respect to any such action, suit or proceeding, subject to a Party's rights pursuant to applicable law.  In the event any such action, suit or proceeding is commenced, each of the Parties hereby (a) agrees and consents that service of process may be made, and personal jurisdiction over any Party hereto in any such action, suit or proceeding may be obtained, by service of a copy of the summons, complaint and other pleadings required to commence such action, suit or proceeding upon the Party at the address of such Party set forth in Section 4.10 hereof, unless another address has been designated by such Party in a notice given to the other Parties in accordance with Section 4.10 hereof and (b) waives to the fullest extent permitted by applicable law, any right it may have to a trial by jury in any legal proceeding directly or indirectly arising from or relating to this Agreement and the representations, covenants and other obligations set forth herein.

Section 4.7    Headings. The headings of the sections, paragraphs and subsections of this Agreement are inserted for convenience only and are not part of this Agreement and do not in any way modify the terms or provisions of this Agreement and shall not affect the interpretation hereof.

Section 4.8    Binding Agreement; Successors and Assigns.  This Agreement shall be effective and binding only upon the execution and delivery of this Agreement by the Parties listed on the signature pages hereto.  This Agreement is intended to, and shall be deemed to, bind and inure to the benefit of the Parties and their respective successors, assigns, administrators, constituents and representatives.  The agreements, representations, covenants and obligations of the Parties under this Agreement are several only and not joint in any respect and none shall be responsible for the performance or breach of this Agreement by another.  If any provision of this Agreement, or the application of any such provision to any person or entity or circumstance, shall be held invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall attach only to such provision or part thereof and the remaining part of such provision hereof and this Agreement shall continue in full force and effect so long as the economic and legal substance of the transactions contemplated herein are not affected in any manner adverse to any Party.  Upon any such determination of invalidity, the Parties shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties as closely as possible in a reasonably acceptable manner so that the transactions contemplated herein are consummated as originally contemplated to the greatest extent possible.

6

8

Section 4.9    <u>Counterparts</u>.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original copy of this Agreement and all of which, when taken together, shall constitute one and the same Agreement.  Copies of executed counterparts transmitted by telecopy or other electronic transmission service shall be considered original executed counterparts, provided receipt of copies of such counterparts is confirmed.

Section 4.10   <u>Notices</u>.    All demands, notices, requests, consents, and other communications hereunder shall be in writing and shall be deemed to have been duly given (i), when personally delivered by courier service or messenger, (ii) upon actual receipt (as established by confirmation of receipt or otherwise) during normal business hours, otherwise on the first business day thereafter if transmitted by e-mail transmission, or (iii) three (3) Business Days after being duly deposited in the mail, by certified or registered mail, postage prepaid- return receipt requested, to the following addresses, or such other addresses as may be furnished hereafter by notice in writing, to the following Parties:

> (a)    If to the Oversight Board, to:
>
> PROSKAUER ROSE LLP
> Eleven Times Square
> New York, NY 10036
> Attn:   Martin J. Bienenstock, Esq.
> Email: mbienenstock@proskauer.com
>         Brian S. Rosen, Esq.
> Email: brosen@proskauer.com
> Facsimile: 212-969-2900
>
> (b)    If to AAFAF or COFINA, to:
>
> O'MELVENY & MEYERS LLP
> Seven Times Square
> New York, NY 10036
> Attn:   John Rapisardi, Esq.
> Email: jrapisardi@omm.com
>         Suzzanne Uhland, Esq.
> Email: suhland@omm.com
> Facsimile: 212-326-2061
>
> (c)    If to the Senior Ad Hoc Holders, to:
>
> QUINN EMANUEL URQUHART & SULLIVAN, LLP
> 51 Madison Avenue
> New York, NY 10010
> Attn:   Susheel Kirpalani, Esq.
> Email: susheelkirpalani@quinnemanuel.com
>         Eric Kay, Esq.
> Email: erickay@quinnemanuel.com
> Facsimile: 212-849-7100
>
> (d)    If to Ambac Assurance Corporation, to:

Ambac Assurance Corporation
One State Street Plaza
New York, NY 10004
Attention: Chief Risk Officer
Telephone: (212) 658-7470
E-mail: dbarranco@ambac.com
With a copy to General Counsel
Email: sksenak@ambac.com

Section 4.11    Non-Waiver of Remedies.    Except as expressly provided in this Agreement, nothing contained herein is intended, nor shall it be construed in any manner, to waive, limit, impair or restrict any right or ability of the Parties to protect and preserve each of their rights, remedies and interests, contractual or otherwise, under the Plan Support Agreement, Confirmation Order, Plan, Second Amended Plan Supplement, Definitive Documents, Title III or any other provision of PROMESA or any other law or regulation.

Section 4.12    Several, Not, Joint Obligations.    The agreements, representations, covenants and other obligations of the Parties set forth in this Agreement are, in all respects, several and not joint.

Section 4.13    Remedies Cumulative.    All rights, powers and remedies provided in accordance with the terms and provisions of this Agreement or otherwise available in respect hereof of law or in equity shall be cumulative and not alternative, and the exercise of any right, power or remedy thereof by any Party shall not preclude the contemporaneous or later exercise of any other such right, power or remedy by any such Party.

Section 4.14    Specific Performance.    Each of the Parties agrees and understands that money damages are an insufficient remedy for any breach of this Agreement by any Party and each non-breaching Party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy of any such breach of this Agreement, including, without limitation, an order of the Title III Court or such other court of competent jurisdiction requiring any Party to comply promptly with any of its obligation hereunder.  Notwithstanding anything contained in this Agreement to the contrary, specific performance and injunctive or other relief shall be the sole and exclusive remedies for any breach of this Agreement by any Party (or any other person) and no Party (or any other person) shall be entitled to monetary damages for any breach of any provision of this Agreement.

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the date set forth above.

FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO


By: _Natalie A. Jaresko_
     Name:
     Title:


PUERTO RICO SALES TAX
FINANCING CORPORATION


By: _____
     Name:
     Title:


PUERTO RICO FISCAL AGENCY
AND FINANCIAL ADVISORY AUTHORITY


By: _____
     Name:
     Title:


[Signature Page to Tax Exemption Implementation Agreement]

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the date set forth above.

FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO


By: _____
      Name:
      Title:


PUERTO RICO SALES TAX
FINANCING CORPORATION


By: _____
      Name:
      Title:


PUERTO RICO FISCAL AGENCY
AND FINANCIAL ADVISORY AUTHORITY


By: _____
      Name:
      Title:

[Signature Page to Tax Exemption Implementation Agreement]

**IN WITNESS WHEREOF,** the Parties hereto have caused this Agreement to be executed as of the date set forth above.

FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO

By: _____
     Name:
     Title:

PUERTO RICO SALES TAX
FINANCING CORPORATION

By: _____
     Name:
     Title:

PUERTO RICO FISCAL AGENCY
AND FINANCIAL ADVISORY AUTHORITY

By: _____
     Name: G. CAMBA
     Title: Director Administration

[Signature Page to Tax Exemption Implementation Agreement]

13

AMBAC ASSURANCE CORPORATION


By:    /s/ Claude LeBlanc
    Name:  Claude LeBlanc
    Title:  President and
            Chief Executive Officer

ARISTEIA CAPITAL, L.L.C.
as Investment Manager of Fund Beneficial
Owners

By:

Name: William R. Techar
Title: Manager
Aristeia Capital, L.L.C.

By

Name:
Title: Andrew B. David
Chief Operating Officer
Aristeia Capital, L.L.C.

[Signature Page to Tax Exemption Implementation Agreement]

**CANYON CAPITAL ADVISORS LLC**
(on behalf of its participating funds and/or
accounts)

By: _____
Name: Jonathan M. Kaplan
Title: Authorized Signatory

[Signature Page to Tax Exemption Implementation Agreement]

16

**Decagon Holdings 1, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 2, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 3, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 4, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 5, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 6, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 7, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 8, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 9, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

**Decagon Holdings 10, L.L.C.**

By: _____
Name: Jeffrey R. Katz
Title: Authorized Representative

[Signature Page to Tax Exemption Implementation Agreement]

**GoldenTree Asset Management LP**, on behalf of certain funds and accounts for which it serves as investment advisor

By: _____
Name: Sasha Linney
Title: Associate General Counsel

[Signature Page to Tax Exemption Implementation Agreement]

4151-7490-0506.21

**TACONIC MASTER FUND 1.5 L.P.**

By:  **TACONIC CAPITAL ADVISORS L.P., its investment manager**

By: _____

Name: Marc Schwartz
Title:  Principal


Notice Address:

Taconic Capital Advisors L.P.
280 Park Avenue, 5th Floor
New York, New York 10017
Fax:  (212) 209-3185
Attention:  Marc Schwartz
Email:  maschwartz@taconiccap.com

[Signature Page to Tax Exemption Implementation Agreement]

**TACONIC OPPORTUNITY MASTER FUND L.P.**

By: **TACONIC CAPITAL ADVISORS L.P., its investment manager**

By: _____
Name: Marc Schwartz
Title:  Principal

<u>Notice Address:</u>

Taconic Capital Advisors L.P.
280 Park Avenue, 5th Floor
New York, New York 10017
Fax:  (212) 209-3185
Attention:  Marc Schwartz
Email:  maschwartz@taconiccap.com

[Signature Page to Tax Exemption Implementation Agreement]

TILDEN PARK INVESTMENT MASTER
FUND LP

By:     TILDEN PARK ASSOCIATES I LLC,
        *its general partner*

By: _____
    Name:   Samuel Alcoff
    Title:   Managing Member

[Signature Page to Tax Exemption Implementation Agreement]

WHITEBOX ASYMMETRIC PARTNERS, L.P.

By:  Whitebox Advisors, LLC, its
investment manager

By: _____
Name: Mark Strefling
Title: Chief Executive Officer and General
Counsel


WHITEBOX CAJA BLANCA FUND, LP

By:  Whitebox Advisors, LLC, its
investment manager

By: _____
Name: Mark Strefling
Title: Chief Executive Officer and General
Counsel

WHITEBOX GT FUND, LP

By:  Whitebox Advisors, LLC, its
investment manager

By: _____
Name: Mark Strefling
Title: Chief Executive Officer and General
Counsel

WHITEBOX MULTI-STRATEGY
PARTNERS, L.P.

By:  Whitebox Advisors, LLC, its
investment manager

By: _____
Name: Mark Strefling
Title: Chief Executive Officer and General
Counsel


PANDORA SELECT PARTNERS, L.P.

By:  Whitebox Advisors, LLC, its
investment manager

By: _____
Name: Mark Strefling
Title: Chief Executive Officer and General
Counsel


WHITEBOX INSTITUTIONAL
PARTNERS, L.P.

By:  Whitebox Advisors, LLC, its
investment manager

By: _____
Name: Mark Strefling
Title: Chief Executive Officer and General
Counsel


[Signature Page to Tax Exemption Implementation Agreement]

OLD BELLOWS PARTNERS LP


By: */s/ A. Dev Chodry*
       Name: A. Dev Chodry
       Title: Authorized Signatory

[Signature Page to Tax Exemption Implementation Agreement]

SCOGGIN MANAGEMENT LP


By: */s/ A. Dev Chodry*
    Name: A. Dev Chodry
    Title: Authorized Signatory