**The COFINA Bond Exchange – What happened, and what should individual investors do now.**

**Glenn Ryhanych, CFP, CFA, President of BlueList Partners, LLC**

**Marked to Market:** Taken as a whole, NEW COFINA Bonds have declined approximately 7% from the settlement's term sheet. Using Friday's market prices, almost 60% of the decline is attributed to the taxable bonds. Without an IRS ruling as to tax-exempt status, the taxable bonds are down 17%. For example, the *taxable* 4.55% of 7/1/40 (74529JPY5) are trading in the market at 83, while the *tax-exempt* 4.55% 7/1/40 (74529JPV1) are trading at 96.

**The Rounding Problem:** All rounding was *down* and occurred based on *each* OLD COFINA bond owned. No effort was spent aggregating and rounding at the account or beneficial owner level.  For example, if a bond owner initially had four different $10,000 OLD COFINA bonds, they may have received zero. The four bonds may have *each* mapped to an allocation of 0.9 New COFINAs. So instead of aggregating the four bonds, within an account, to 3.6 bonds and then *rounding up* to 4, or $4,000, the small investor may have received zero because *each* 0.9 allocation was rounded down.

**Where is all the Rounding Cash?**  The settlement rounding cash, which was supposed to be used to iron out these shortfalls, was inexplicably distributed on a *pro-rata basis* from Depository Trust Company to each nominee or custodian.  So, if a hedge fund received $1.2 Billion of NEW COFINAs out of the total settlement distribution of $12 Billion, then *they also* received 10% (same ratio as bonds received) of rounding cash. This large cash transfer took place although it only requires $999, at most, to round up or down to a $1,000.  To allocate rounding cash on a pro-rata basis was ridiculous and should be clawed back from large holders, as this cash should have been allocated based on rounding needs, not ownership size.

**Solving the Rounding Problem:**  How are small investors going to be made whole?  Without intervention by regulators I do not see how this happens.  In lieu of undelivered bonds, investors should receive cash. But from where? A back-office professional I am not, but it would seem that brokerage firms and custodians now have a large omnibus account consisting of all the undistributed "round down" bonds. And these bonds now need to be sold to pay investors their cash-in-lieu amounts.  However, the market, as I mentioned, has marked most of these securities down below face value.  How do the total sale proceeds, therefore, approach the amount needed to make small investors whole?  And to add insult to injury the NEW COFINAs were *delivered with interest* calculated from August 1, 2018 through February 12, 2019, the plan effective date.  If, due to rounding down, small investors did not receive the bonds --- and the omnibus account did---then that account, not the small investor, will get paid the accrued interest and any gain from the accreted value due on a zero-coupon bond or capital appreciation bond (CAB).

**Who is Responsible?**  Shame on all of the large-money funds and their advisors for pushing this scheme through. And, the Puerto Rico Control Board, Commonwealth Government and the Title III court are not blameless.

Further noted, with emphasis, is that PROMESA's two main tenets were for Puerto Rico to achieve fiscal responsibility and to gain access to the capital markets.  Individual investors, not hedge funds, are the mainstay of those markets and for decades have been pleased to provide capital to local governments in

need of infrastructure development.  And it is those investors, up to this point, which have been treated so poorly.  In the end though, I am hopeful that stakeholders, with enough expressed outrage, will recognize this and make it right.

**Calculating What Investors are Due:**  In the end each investor should demand and receive approximately **96%\*** of their OLD COFINA par value or, if CABs, the accreted value (Based on Senior Bond Analysis).

\*Par value of NEW COFINAs *priced per the settlement term-sheet* plus COFINA and Rounding cash (this portion of the distribution should have hit accounts on or about February 15 and represents or should have represented by itself, **93%** of the claim).  This is where the big shortfall is due to "round down".

\*COFINA 103 cash should have been distributed on or about February 19.  This amount reflects the interest due and calculated from the last OLD COFINA interest payment on February 1, 2017 to the Title III petition date of May 5, 2017. This should add about **1.25%** to the total distribution.

\*Accrued interest due on the NEW COFINAs, calculated from August 1, 2018 to February 12, 2019 has not yet been credited to accounts but should equal about **2%** of the total distribution.

In the end investors should demand their full recovery, although this will likely take weeks not days.  And again, **I urge you to contact your regulators using the contact information provided**.

***A Call for Action:***  *Individual investors need to contact their brokerage firms and custodians to express their concern.  Based on my experience, Fidelity, which is my firm's sole custodian, has taken our calls and been incredibly responsive when we require an account review or correction.  But most important is that investors need to reach out to our industry regulators* ***This is what the regulators are there for****!*

*Glenn Ryhanych, is President and Founder of BlueList Partners, LLC, a municipal bond management firm in Northern Virginia. The views expressed in this article are his own.*


**Rebecca Olsen – Director of SEC's Office of Municipal Securities.**
**202-551-5680.**
**SEC online complaint form www.sec.gov/complaint**


**Financial Industry Regulatory Authority - FINRA**
**www.finra.org/investors/file-complaint**

**LeeAnn Gaunt, SEC Chief of the Public Finance Abuse Unit**
**100 F Street, NE**
**Washington, DC 20549**


**Municipal Securities Rulemaking Board – MSRB.  File complaints at complaints@msrb.org  or call**
**202-838-1330.**