# DECLARATION OF MARK ELLIOTT

I, MARK ELLIOTT, hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following statements are true and correct to the best of my knowledge and belief:

## Background Information

1. I am the founder of the Registered Investment Advisory Firm Elliott Asset Management, a Boston-based independent investment advisory firm. I have a BS in Molecular Biology, Magna Cum Laude, from the College at Charleston. I attended Medical School at Dartmouth College and completed graduate coursework in Business Harvard University's Executive Education Program. I have passed the following industry exams and obtained the following licenses: Series 63, Series 65, and Series 66. I have been investing professionally for family and friends informally since 1999, and I founded Elliott Asset Management in 2006, which acts in a fiduciary capacity providing hedge fund style investments to individuals at a low cost.

2. I submitted an Objection to the Second Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation (the "Objection") (Docket#4598) and a Declaration in support of my Objection (Docket#4769-1). I also testified at the January 16, 2019 hearing.

Exhibit J

## Cofina Exchange Recovery Calculations

3.    The COFINA mandatory exchange was so chaotic and indecipherable that even custodians could not determine how to handle the distributions. Retail accounts were frozen from trading the bonds for between one week and over one month, as brokerage firms awaited additional information on whether to round up or down and at what fraction percentage (ultimately, in my experience, all fractions were rounded down) and when to sell the fractions and how to go about it (including, but not limited to, how much to charge for the transactions and how long to hold the fractions out for bids before choosing a winner). Therefore recoveries for even identical CUSIPs of the original COFINA bonds were materially different from one brokerage firm to another. The amounts the fractions were sold for, per each CUSIP for three different brokerage firms, are highlighted in Attachment 1.[1] Note that realized prices for identical CUSIPs of newly issued bond fractions varied by as much as more than 3%. None of the aggregate sales provided any of the investors at the different custodians even close to the estimated recovery amounts stated in the disclosure statement of 56.414% for subordinate bondholders in the 50 states.

---

[1] "IB" stands for "Interactive Brokers." All figures, except the Pershing numbers, were attained directly from the custodians by EAM. The Pershing numbers were received from a third party.

2

4. I calculated the approximate actual recoveries for new CABs (essentially the same as "zero coupon" bonds) and for new coupon-bearing bonds mandatorily exchanged under the COFINA Plan for a number of accounts that I manage, and came up with the following illustrative results:

- Approximate recoveries for a $10,000 par zero coupon bond (listed on a redacted account statement, Attachment 2) range from 49.4% (high) to 45.9% (low) (note the high assumes no accretion or accrual of any interest from 5/5/17 through 3/1/19 and therefore, in my view, overstates the recovery). Note that for these $10,000 par in CABs the ultimate recovery was ALL in cash as fourteen fractional bonds were issued and all rounded down.

- Approximate accrual recoveries for a 5.75% coupon bond (also listed on Attachment 2) range from 49.28% (high) to 41.22% (low) based on materially similar assumptions (adjusting for accounting of interest instead of accruals).

5. My methodology is as follows:

   a. For the denominators I used two assumptions: the accreted value as of 5/5/2017 (rounding to the nearest week) and the accreted value at the date of liquidation of fractional shares (in most instances a trade

3

        date of February 25, 2019 with a settlement date of February 27, 2019 and rounded to the nearest week).

b.    For the numerators, I used the low end of the EMMA trade range on the date of the sale for the fractional bonds multiplied by the total whole number of new COFINA bonds issued plus any cash in lieu of fractional bonds sold. The reason for using the date of sale of the fractional bonds is because for the first week or more most investors - even many institutions – were not able to trade the bonds. For the first several days, the trades were almost entirely by large hedge funds trading among themselves, so the prices were not reflective of a fully working market. The Section 103 cash, "rounding cash," and "COFINA cash" was generally disregarded from both the numerator and the denominator for recovery calculations. Section 103 cash was disregarded because such cash was held in trust and payable to bond holders as of the date the Title III proceedings were filed (May 5, 2017). I do not believe the FOMB and settlement parties included Section 103 cash in estimated or projected recovery calculations. The "COFINA cash" referred to interest accrued on new CIBs since the record date for the new bonds of 8/1/18 and was disregarded for

4

the scenario where the value on 5/5/17 was used as the denominator since the period beginning 8/1/18 post-dates 5/5/17. The rounding cash was taken from funds that were accrued *after* the effective date of the Title III proceedings, therefore it is appropriate to not consider (the insignificant amount of) rounding cash when calculating percentage recoveries on claims as of the date of the Title III filings. Including rounding cash would not have materially changed the results.

c. Overall these assumptions generally can reasonably be considered conservative calculations that may overestimate the recovery percent due to the fact that COFINA was solvent during all proceedings and depositing debt service amounts at BONY as trustee. I believe an appropriate financial analysis would further discount total recovery percentages for the original COFINA securities by the loss of liquidity in the new bonds in the quantities received by modest-sided investors, the added tax liabilities now payable (in contrast to what would have been incurred by holding the originally issued bonds) and the changes in the current value of future cash flows as a result of decreased coupon rates of the restructured bonds. Had these calculations been done I estimate the actual recovery for small and modest mainland

5

USA holders of COFINA subordinate bonds would have been decreased *substantially*. The discount could be more than an additional 10%, decreasing the low end of the recovery spectrum to below 30% effective recovery using generally accepted investment accounting principles. Conversely, the increase in call protection (compared to that on certain of the original senior bonds), exchanging taxable interest payments (on original COFINA bonds) for tax-free interest payments (on new COFINA bonds), and increasing the effective interest rate (versus that on certain of the original senior bonds), and the various inexplicable cash bonuses paid to the parties who participated in the confidential mediation, led to a greater than an effective 100% recovery rate for many of the senior bondholders as a result of the exchange.

### Small Lots of Municipal Bonds

6. The municipal bond market is not as efficient or transparent as equity and corporate bond markets. Many trades are manually done using the telephone and a bidding process that is neither transparent nor open to general investors. Therefore trading prices in the same CUSIP can vary wildly from one trade to another, even within minutes of each other. In general the larger

6

trades are done at tighter spreads and higher prices and smaller trades receive much lower prices. For example, 5,000 lot trades (generally the smallest lot size traded in municipal bonds) of the original COFINA bonds were regularly trading for more than a ten percent discount (and in some instances more than a twenty percent discount) to lot sizes of $1 million or more. $1 million is the minimum size generally accepted as a round lot in municipal bond trading and trades of that size are what are used by data providers to determine the price of municipal bonds. It is well known that the smallest lot sizes get generally far inferior pricing. Therefore lot sizes of LESS than $5,000 (below the "minimum size of almost all other municipal bonds that are traded) are likely to get especially disadvantageous pricing (presumably meaningfully less than the already disadvantaged trading for lots as small as 5 bonds – i.e., a lot size of $5,000 par amount). So far this has proven to be the case in trading in the "new" COFINA bonds. The low trades of the day are almost always trades of well under $1 million, and often trades of less than 5 bonds ($5,000 par amount). This discrepancy is generally greater with CABs because the net amount is even less than CIBs (and as a result of rounding many smaller investors received all or mostly CABs). Already, as reflected in the prices reported on the industry website,

7

EMMA, the difference between the high prices (generally larger lots) and low prices (generally smallest lots) regularly exceeds 10%. Further, I expect the relative discounts to *increase* for smaller lots as time progresses and fewer market participants are looking to add many inexpensive smaller sales to repackage into larger lots to sell at a quick profit. As the volume decreases these bond "flippers" will not have enough volume to repackage into larger lots and therefore relative bid prices for the smallest lot sizes will likely fall even to a larger extent than in the initial few months of trading. I expect discounts on the smallest bond lots to at times exceed 20% and at times of market illiquidity or turmoil the amounts on 1 to 2 bond trades (i.e., $1,000 to $2,000 in par amount) could approach or exceed 50% on longer dated CABs. This is particularly important as owners of small amounts of "old" current interest COFINA bonds may now have only one or two bonds ($1,000 or $2,000 in par amount) from the exchange that are long dated CABs. As the investor expected current income from their initial investment they are much more likely to be forced into selling what few remaining bond investments they have remaining – and small investors often sell at times of market distress.

### Senior Versus Subordinate Taxable and Tax-Exempt

7. When COFINA was first created, most of the bonds were issued to refinance or defease pre-existing extraconstitutional debt that was *taxable*. Most of the par outstanding of the senior COFINA bonds were issued in the first several years in which the COFINA structure was used and was predominantly taxable. Later, as COFINA became used to raise funds for purposes eligible for federally tax-exempt financing, the majority of the COFINA subordinate bonds were issued. Therefore the overwhelming majority of subordinate/Jr COFINAs were issued as completely tax exempt for mainland USA investors. It is difficult to come to a precise figure across the multiple issues and coupon and accretion rates, but a reasonable general estimate can be made by reviewing the total par outstanding at issue. By adding all the par outstanding at issue across all the COFINA issue dates and series I determined a reasonable estimate is 40.5% of senior COFINA bonds were taxable and 59.5% tax-exempt, and 9.9% of the subordinate COFINA bonds were taxable and 90.1% tax exempt. Mainland USA investors held very few of the taxable subordinate bonds, with much being held on island, where the "taxable" bonds were tax free for Puerto Rico residents. I believe the proportion of taxable bonds held by mainland USA investors was

9

meaningfully below the 9.9% overall proportion of taxable subordinates that were issued and was likely relatively negligible (*e.g.*, occasional investments through non-taxable retirement accounts). It is reasonable to assume that *almost all* the subordinated/Jr COFINA bonds held by individual investors from the mainland USA were *tax exempt* at the time of the plan of adjustment (and the few owned that were taxable were in tax shielded/IRA accounts). Furthermore a large percentage of the senior tax free bonds and the taxable subordinate bonds were CABs that had accrued only a fraction of par – which suggests that using the actual accrued values would result in an even *higher* proportion of senior bonds being federally taxable and a higher proportion of the subordinate bonds being tax exempt (beyond the already overwhelming 4 times difference between the proportion of seniors that are taxable and subordinates that are taxable based upon par amount at issuance).

April 10, 2019                                                                                          Mark Elliott

10

| | Schwab 2/25 | IB 3/20 | IB 3/21 | Pershing 2/25 |
|---|---|---|---|---|
| 74529JPU3 | 99.29 | 99.68 | | 100.04 |
| 74529JPV1 | 95.88 | 95.40 | | 95.69 |
| 74529JPW9 | 92.82 | 90.88 | | 92.15 |
| 74529JPX7 | 96.78 | 94.30 | | 95.76 |
| 74529JPY5 | 85.45 | 85.90 | | 85.50 |
| 74529JPZ2 | 82.28 | 83.00 | | 82.41 |
| 74529JQA6 | 85.92 | 85.25 | | 85.76 |
| 74529JQB4 | 81.38 | 82.40 | | 82.00 |
| 74529JQC2 | 71.34 | 72.73 | | 72.15 |
| 74529JQD0 | 63.37 | 64.90 | | 64.09 |
| 74529JQE8 | 56.60 | | 57.20 | 56.64 |
| 74529JQF5 | 50.31 | 50.64 | | 50.13 |
| 74529JQG3 | 19.83 | 19.46 | | 19.70 |
| 74529JQH1 | 14.41 | 14.02 | | 14.40 |

Attachment 1



**charles SCHWAB**

Account Number

**Statement Period**
January 1, 2019 to
February 28, 2019

## Transaction Detail - Purchases & Sales

### Fixed Income Activity

| Settle Date | Trade Date | Transaction | Description | Par | Unit Price | Total Amount |
|---|---|---|---|---|---|---|
| 02/15/19 | 02/15/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.55%40 EXCISE TAX DUE 07/01/40: 74529JPV1 | | | 27.34 |
| 02/15/19 | 02/15/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.55%40 EXCISE TAX DUE 07/01/40: 74529JPV1 | | | 68.97 |
| 02/15/19 | 02/15/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.55%40 EXCISE TAX DUE 07/01/40: 74529JPV1 | | | 45.47 |

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.

Page 7 of 11

Attachment 2

1



**Statement Period**
January 1, 2019 to
February 28, 2019

nt Number

## Transaction Detail - Purchases & Sales (continued)

### Fixed Income Activity (continued)

| Settle Date | Trade Date | Transaction | Description | Par | Unit Price | Total Amount |
|---|---|---|---|---|---|---|
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN C 5.25%57<br>EXCISE TAX  DUE 08/01/57: 74529JAR6 | (5,000.0000) | | |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN C 5.25%57<br>EXCISE TAX  DUE 08/01/57: 74529JAR6 | | | 498.21 |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN C 5.75%37<br>EXCISE TAX  DUE 08/01/37: 74529JHL2 | (5,000.0000) | | |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN C 5.75%37<br>EXCISE TAX  DUE 08/01/37: 74529JHL2 | | | 83.21 |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN CORP 0%35<br>EXCISE TAX  DUE 08/01/35: 74529JKS3 | (10,000.0000) | | |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN CORP 0%35<br>EXCISE TAX  DUE 08/01/35: 74529JKS3 | | | 5.33 |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN CORP 0%46<br>EXCISE TAX  DUE 07/01/46: 74529JQG3 | 1,000.0000 | | |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN CORP 0%46<br>EXCISE TAX  DUE 07/01/46: 74529JQG3 | 1,000.0000 | | |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN CORP 0%51<br>EXCISE TAX  DUE 07/01/51: 74529JQH1 | 1,000.0000 | | |
| 02/15/19 | 02/15/19 | Mandatory Exchange | PR SLS TAX FIN CORP 5%58<br>EXCISE TAX  DUE 07/01/58: 74529JPX7 | 1,000.0000 | | |
| 02/15/19 | 02/15/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 5%58<br>EXCISE TAX  DUE 07/01/58: 74529JQA6 | | | 165.95 |
| 02/15/19 | 02/15/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 5%58<br>EXCISE TAX  DUE 07/01/58: 74529JQA6 | | | 251.67 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.55%40<br>EXCISE TAX  DUE 07/01/40: 74529JPY5 | | | 624.30 |

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.



**charles SCHWAB**

int Number

**Statement Period**
January 1, 2019 to
February 28, 2019

## Transaction Detail - Purchases & Sales (continued)

### Fixed Income Activity (continued)

| Settle Date | Trade Date | Transaction | Description | Par | Unit Price | Total Amount |
|---|---|---|---|---|---|---|
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.55%40<br>EXCISE TAX  DUE 07/01/40: 74529JPY5 | | | 247.68 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.55%40<br>EXCISE TAX  DUE 07/01/40: 74529JPY5 | | | 411.68 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.75%53<br>EXCISE TAX  DUE 07/01/53: 74529JPW9 | | | 322.93 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.75%53<br>EXCISE TAX  DUE 07/01/53: 74529JPW9 | | | 489.72 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.75%53<br>EXCISE TAX  DUE 07/01/53: 74529JPW9 | | | 194.27 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.75%53<br>EXCISE TAX  DUE 07/01/53: 74529JPZ2 | | | 18.00 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.75%53<br>EXCISE TAX  DUE 07/01/53: 74529JPZ2 | | | 7.17 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN C 4.75%53<br>EXCISE TAX  DUE 07/01/53: 74529JPZ2 | | | 11.86 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CO 4.5%34<br>EXCISE TAX  DUE 07/01/34: 74529JPU3 | | | 92.99 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CO 4.5%34<br>EXCISE TAX  DUE 07/01/34: 74529JPU3 | | | 55.94 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CO 4.5%34<br>EXCISE TAX  DUE 07/01/34: 74529JPU3 | | | 141.02 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%24<br>EXCISE TAX  DUE 07/01/24: 74529JQB4 | | | 65.93 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%24<br>EXCISE TAX  DUE 07/01/24: 74529JQB4 | | | 43.48 |

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.



**Statement Period**
January 1, 2019 to
February 28, 2019

ınt Number

## Transaction Detail - Purchases & Sales (continued)

### Fixed Income Activity (continued)

| Settle Date | Trade Date | Transaction | Description | Par | Unit Price | Total Amount |
|---|---|---|---|---|---|---|
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%24<br>EXCISE TAX DUE 07/01/24: 74529JQB4 | | | 26.14 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%27<br>EXCISE TAX DUE 07/01/27: 74529JQC2 | | | 64.55 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%27<br>EXCISE TAX DUE 07/01/27: 74529JQC2 | | | 38.83 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%27<br>EXCISE TAX DUE 07/01/27: 74529JQC2 | | | 97.89 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%29<br>EXCISE TAX DUE 07/01/29: 74529JQD0 | | | 55.89 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%29<br>EXCISE TAX DUE 07/01/29: 74529JQD0 | | | 33.63 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%29<br>EXCISE TAX DUE 07/01/29: 74529JQD0 | | | 84.74 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%31<br>EXCISE TAX DUE 07/01/31: 74529JQE8 | | | 64.34 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%31<br>EXCISE TAX DUE 07/01/31: 74529JQE8 | | | 97.56 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%31<br>EXCISE TAX DUE 07/01/31: 74529JQE8 | | | 38.71 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%33<br>EXCISE TAX DUE 07/01/33: 74529JQF5 | | | 97.58 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%33<br>EXCISE TAX DUE 07/01/33: 74529JQF5 | | | 38.71 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%33<br>EXCISE TAX DUE 07/01/33: 74529JQF5 | | | 64.34 |

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.



**charles SCHWAB**

int Number -0735

**Statement Period**
January 1, 2019 to
February 28, 2019

## Transaction Detail - Purchases & Sales (continued)

### Fixed Income Activity (continued)

| Settle Date | Trade Date | Transaction | Description | Par | Unit Price | Total Amount |
|---|---|---|---|---|---|---|
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%46<br>EXCISE TAX DUE 07/01/46: 74529JQG3 | | | 167.81 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%46<br>EXCISE TAX DUE 07/01/46: 74529JQG3 | | | 145.27 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%46<br>EXCISE TAX DUE 07/01/46: 74529JQG3 | | | 43.11 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%51<br>EXCISE TAX DUE 07/01/51: 74529JQH1 | | | 142.87 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%51<br>EXCISE TAX DUE 07/01/51: 74529JQH1 | | | 85.96 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 0%51<br>EXCISE TAX DUE 07/01/51: 74529JQH1 | | | 72.60 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 5%58<br>EXCISE TAX DUE 07/01/58: 74529JPX7 | | | 512.31 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 5%58<br>EXCISE TAX DUE 07/01/58: 74529JPX7 | | | 323.47 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 5%58<br>EXCISE TAX DUE 07/01/58: 74529JPX7 | | | 851.47 |
| 02/25/19 | 02/25/19 | Cash-In-Lieu | PR SLS TAX FIN CORP 5%58<br>EXCISE TAX DUE 07/01/58: 74529JQA6 | | | 99.85 |

**Total Fixed Income Activity** — 7,120.75

**Total Purchases & Sales** — 7,120.75

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.

Page 11 of 14

5

Case:17-03283-LTS    Doc#:6283-11    Filed:04/15/19    Entered:04/16/19 09:05:52    Desc:
Exhibit J    Page 17 of 18



**charles SCHWAB**

Statement Period
January 1, 2019 to
February 28, 2019

t Number
0735

## Transaction Detail - Dividends & Interest (including Money Market Fund dividends reinvested)

| Transaction Date | Process Date | Activity | Description | Credit/(Debit) |
|---|---|---|---|---:|
| 02/15/19 | 02/25/19 | Bond Interest | PR SLS TAX FIN CORP 5%58: 74529JPX7 | 26.53 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.55%40: 74529JPV1 | 1.73 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.55%40: 74529JPV1 | 1.14 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.55%40: 74529JPV1 | 0.69 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.55%40: 74529JPY5 | 17.62 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.55%40: 74529JPY5 | 6.99 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.55%40: 74529JPY5 | 11.62 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.75%53: 74529JPW9 | 8.75 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.75%53: 74529JPW9 | 13.27 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.75%53: 74529JPW9 | 5.26 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.75%53: 74529JPZ2 | 0.36 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.75%53: 74529JPZ2 | 0.55 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN C 4.75%53: 74529JPZ2 | 0.22 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CO 4.5%34: 74529JPU3 | 1.34 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CO 4.5%34: 74529JPU3 | 3.39 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CO 4.5%34: 74529JPU3 | 2.23 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CORP 5%58: 74529JPX7 | 14.03 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CORP 5%58: 74529JPX7 | 8.86 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CORP 5%58: 74529JPX7 | 23.31 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CORP 5%58: 74529JQA6 | 7.76 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CORP 5%58: 74529JQA6 | 5.12 |
| 02/27/19 | 02/27/19 | Bond Interest | PR SLS TAX FIN CORP 5%58: 74529JQA6 | 3.08 |
| **Total Dividends & Interest** | | | | **163.85** |

Total Transaction Detail     7,284.60

Please see "Endnotes for Your Account" section for an explanation of the endnote codes and symbols on this statement.

Page 12 of 14

6

Sheet1

PAR AMOUNT AT ISSUE TAXABLE VS TAX FREE COFINA

| 2007 issue | Par | Taxable? | Jr/Sr? |
|---|---|---|---|
| A | $2,667,800,000.00 | NO | SENIOR |
| B | $1,333,101,779.90 | YES | SENIOR |
| C | $499,996,627.90 | YES | SENIOR |
| 2008 issue | | | |
| A | $737,046,992.35 | YES | SENIOR |
| 2009 Issue | | | |
| A | $4,118,153,700.00 | NO | JR |
| B | $1,217,915,799.20 | NO | JR |
| C | $237,875,000.00 | NO | SENIOR |
| 2010 Issue | | | |
| A | $1,823,757,271.30 | NO | JR |
| C | $1,619,404,596.60 | NO | JR |
| D+E | $182,190,000.00 | YES | JR -BAM |
| | BAM=Build America Bonds | | |
| 2011 Issue | | | |
| A | $734,795,573.95 | YES | JR |
| B | $45,620,000.00 | YES | JR |
| C | $1,006,474,702.00 | NO | SENIOR |
| D | $91,155,000.00 | YES | SENIOR |

| | | Percent of tranche |
|---|---|---|
| **Total Sr taxable at PAR** | $2,661,300,400.15 | 40.5% |
| **Sr Nontaxable at PAR** | $3,912,149,702.00 | 59.5% |
| | | |
| **Junior taxable at PAR** | $962,605,573.95 | 9.9% |
| **JR NONtaxable at Par** | $8,779,231,367.10 | 90.1% |

Attachment 3