**Objection Deadline: April 19, 2019, at 10:00 a.m. (AST)**
**Hearing Date and Time: April 24, 2019, at 2:00 p.m. (AST)**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | ) |
| | ) |
| | ) PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) |
| | ) Case No. 3:17-bk-03283 (LTS) |
| as representative of | ) |
| | ) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) |
| | ) |
| Debtors. | ) |
| | ) |
| ——————————————————— X | |
| In re: | ) |
| | ) |
| | ) |
| THE FINANCIAL OVERSIGHT AND | ) PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) Title III |
| | ) |
| as representative of | ) Case No. 3:17-cv-01685 (LTS) |
| | ) Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) |
| GOVERNMENT OF THE COMMONWEALTH OF | ) |
| PUERTO RICO, | ) |
| | ) |
| Debtor. | ) |
| | ) |
| ---------------------------------------------------------------- x | |

## MOTION OF CERTAIN SECURED CREDITORS
## OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
## OF THE COMMONWEALTH OF PUERTO RICO
## TO COMPEL PRODUCTION OF DOCUMENTS IN PRIVILEGE LOG
## CATEGORIES 1, 5 TO 7 [DELIBERATIVE PROCESS PRIVILEGE
## AND EXECUTIVE PRIVILEGE]

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ...................................................................................................................... 3

I.      Respondents Have Not Proven They Are Entitled To Withhold Deliberative
        Materials Under the Strict Limits Governing the Deliberative Process Privilege ............ 3

        A.      Even When Properly Invoked, The Deliberative Process Privilege Shields
                A Narrow Class Of Materials .......................................................................... 3

        B.      Respondents Have Not Satisfied The Requirements Of The Deliberative
                Process Privilege .............................................................................................. 5

                1.      Respondents improperly withheld postdecisional, non-deliberative
                        materials ............................................................................................. 5

                2.      Respondents improperly withheld non-privileged factual
                        information ......................................................................................... 8

                3.      Respondents have not properly invoked the privilege ....................... 10

II.     The Bondholders' Need for the Materials Overcomes Any Interest in Keeping
        Respondents' Deliberations in the Dark ...................................................................... 11

III.    Respondents Waived Any Applicable Privilege with Respect to Materials
        Disclosed to Each Other, and Particularly So for Documents Disclosed to ERS ............ 15

IV.     Respondents Have Not Proven They Are Entitled To Withhold Documents Under
        The Executive Privilege ................................................................................................ 16

        A.      The Executive Privilege Does Not Extend To Agencies Such As AAFAF ........ 16

        B.      The Executive Privilege Is A Qualified Privilege That Does Not Prevent
                Disclosure Of The Withheld Communications .................................................. 17

V.      Respondents Have Not Substantiated Their New Claims Of Attorney-Client
        Privilege And Attorney Work Product ......................................................................... 18

CONCLUSION ................................................................................................................... 19

## TABLE OF AUTHORITIES

Page

CASES

*Aponte Hernández Fernández, Ex Parte*, 2009 WL 2420362 (P.R. App. June 10,
2009) ....................................................................................................................................4

*Bhatia Gautier v. Gobernador*,
199 D.P.R. 59, 80 (P.R. 2017) ......................................................... *passim*

*Bhatia Gautier v. Gobernador*,
Civil No. SJ2017CV00271 (P.R. Sup. Ct. Mar. 16, 2018) ............................ *passim*

*Corp. Insular de Seguros v. Garcia*,
876 F.2d 254 (1st Cir. 1989) ....................................................................16

*Davis v. City of New York*,
2012 WL 612794 (S.D.N.Y. Feb. 27, 2012) ..............................................13

*Dorf & Stanton Commc'n, Inc. v. Molson Breweries*,
100 F.3d 919 (Fed. Cir. 1996) ...................................................................3

*Fairholme Funds, Inc. v. United States*,
128 Fed. Cl. 410 (2016), *mandamus granted in part and denied in part*, *In re
United States*, 678 F. App'x 981 (Fed. Cir. 2017) .................................13, 14

*Hobley v. Burge*,
445 F. Supp. 2d 998 (N.D. Ill. 2006) ..........................................................16

*In re Keeper of Records*,
348 F.3d 16 (1st Cir. 2003) .........................................................................3

*In re MTBE Prods. Liab. Litig.*,
643 F. Supp. 2d 439 (S.D.N.Y. 2009) .........................................................10

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
254 F.R.D. 35 (D. Mass. 2008) ...................................................................13

*In re Sealed Case*,
121 F.3d 729 (D.C. Cir. 1997) ................................................................4, 17

PRIVILEGED & CONFIDENTIAL
DRAFT - 3.18.19; DUE - 3.21.19

*In re Subpoena Duces Tecum Served on the Office of Comptroller of Currency*,
   145 F.3d 1422 (D.C. Cir. 1998) .......................................................................13, 14

*In re United States*,
   678 F. App'x 981 (Fed. Cir. 2017) ..........................................................................14

*Jordan v. U.S. Dep't of Justice*,
   591 F.2d 753 (D.C. Cir. 1978) ...................................................................................8

*Landry v. FDIC*,
   204 F.3d 1125 (D.C. Cir. 2000) ...............................................................................10

*Noel v. City of New York*,
   No. 15-cv-05236 (LTS) (KHP), 2018 WL 6649969 (S.D.N.Y. Dec. 18, 2018)........8

*People for the Am. Way Found. v. U.S. Dep't of Educ.*,
   516 F. Supp. 2d 28 (D.D.C. 2007) ...........................................................................15

*Schlefer v. United States*,
   702 F.2d 223 (D.C. Cir. 1983) .................................................................................11

*Shell Oil Co. v. IRS*,
   772 F. Supp. 202 (D. Del. 1991) ..............................................................................15

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
   60 F.3d 867 (1st Cir. 1995)..............................................................................4, 5, 8

*Town of Norfolk v. U.S. Army Corps of Eng'rs*,
   968 F.2d 1438 (1st Cir. 1992) ....................................................................................9

**STATUTES**

48 U.S.C. § 2121 .............................................................................................................6

48 U.S.C. § 2141 ......................................................................................................5, 6, 7

48 U.S.C. § 2142 .........................................................................................................6, 7

48 U.S.C. § 2144.........................................................................................................6, 7

To the Chambers of the Honorable Judith G. Dein:

Pursuant to Fed. R. Bankr. P. 7026, 7037, and 9014, and Fed. R. Civ. P. 26, 37, and 45, made applicable by 48 U.S.C. § 2170, the Bondholders move to compel the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Commonwealth, and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") ("Respondents") to produce materials wrongly withheld under the deliberative process and the executive privileges.

## INTRODUCTION

1. Respondents continue to broadly invoke privileges to withhold documents material to a central issue in the Stay Relief Motion. This time, Respondents claim the deliberative process and executive privileges for 123 documents listed in a document-by-document privilege log ordered by the Court. Yet, once again, Respondents have not substantiated their privilege claims.

2. *First*, even when properly invoked, the deliberative process privilege protects only a narrow class of materials, particularly in Puerto Rico, where citizens have a fundamental constitutional right to access public information. *Bhatia Gautier v. Gobernador*, 199 D.P.R. 59, 80 (P.R. 2017) ("*Bhatia Gautier I*"). The privilege does not protect post-decisional or factual materials, which many of Respondents' withheld documents appear to be. And the government must meet strict procedural requirements to invoke the privilege, which Respondents did not do.

3. *Second*, the deliberative process privilege is a qualified privilege. Even materials protected by the privilege must be turned over if the interests of the litigants outweigh any harm resulting from disclosure. *Id.* at 88. The Court already has found these materials relevant (*see infra* ¶¶ 7, 34)*,* and the Bondholders have a critical need for the information, but have no way of obtaining it other than from Respondents and the Oversight Board. Courts in Puerto Rico and elsewhere regularly order the disclosure of privileged materials in remarkably similar circumstances.

- 1 -

4.      *Third*, the deliberative process privilege, like other evidentiary privileges, may be waived by knowing disclosure to other entities, particularly entities with adverse interests. Here, Respondents, distinct entities with adverse interests, shared certain documents with each other.

5.      *Fourth*, the executive privilege, a narrow privilege that extends only to the Governor and his respective subordinates, counselors, or assistants, does not extend to agencies like AAFAF. The executive privilege is also a qualified privilege that can be overcome upon a showing of need, which the Bondholders have satisfied here.

6.      *Fifth*, Respondents' new attorney-client privilege claims are facially defective and suffer from the same defects of waiver and incompleteness discussed in our motion filed yesterday.

## BACKGROUND

7.      This is the second of two motions to compel the production of documents in connection with Joint Resolution 188 and Act 106.[1] On April 1, 2019, the Court overruled Respondents' broad relevance objections and ordered Respondents to produce documents and serve adequate privilege logs. The Court also ordered Respondents to provide an affidavit from the head of the appropriate agency attesting to any assertion of the deliberative process privilege.

8.      On April 11 and 12, Respondents served categorical privilege logs indicating that they had withheld 509 responsive documents, falling into seven broad categories, based on assertions of various privileges. At a telephonic status conference on April 12, the Court ordered Respondents to produce a document-by-document log for documents where Respondents had invoked the deliberative process or executive privileges. On April 14, Respondents produced a log for 123 documents. Ex. A. The new log identified three primary "decisions" to which the

---

[1] The Bondholders incorporate the background in the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Discovery* (Dkt. 402 in Case No. 17-bk-03566) and *Reply in Support of Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Discovery* (Dkt. 422 in Case No. 17-bk-03566).

documents in question contributed: (a) the "Certification of and Revision to Commonwealth Fiscal Plan," (b) the "Enactment of Joint Resolution 188," and (c) the "Enactment of Act 106." Ex. A. Even though these were ostensibly different "decisions," in many cases, descriptions of the withheld documents were nearly the same. And, without explanation, the document-by-document log included individuals as senders or recipients who were not present on either of the two earlier categorical logs and added dozens of instances where Respondents also were claiming the attorney-client privilege for the first time. Despite being ordered to do so, Respondents also did not produce any of the affidavits necessary to invoke the deliberative process privilege.[2]

## ARGUMENT

9.      It is Respondents' burden to establish their claims of privilege. *In re Keeper of Records*, 348 F.3d 16, 22 (1st Cir. 2003). Courts thus reject privilege claims when a party fails to provide a log that contains sufficient information to establish the basis for the privilege. *E.g.*, *Dorf & Stanton Commc'n, Inc. v. Molson Breweries*, 100 F.3d 919, 923 (Fed. Cir. 1996). Respondents come nowhere close to meeting their burden.

**I.      Respondents Have Not Proven They Are Entitled To Withhold Deliberative Materials Under the Strict Limits Governing the Deliberative Process Privilege.**

   **A.      Even When Properly Invoked, The Deliberative Process Privilege Shields A Narrow Class Of Materials.**

10.      Because the point of civil discovery is to uncover the truth, litigants must generally hand over any relevant evidence within their possession. This background principle applies with particular force when it comes to evidence in the hands of Puerto Rico's government. As the Puerto

---

[2] Respondents also have not amended the privilege log produced on March 15, 2019—asserting similar deliberative process privilege claims—which was the subject of the Bondholders' first motion to compel. *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Discovery*, Dkt. 402 in Case No. 17-bk-03566. The instant motion applies with equal force to those documents.

Rico Supreme Court has held, "the right of … citizens" "to have access to public information [is] a fundamental right of constitutional rank." *Bhatia Gautier I*, 199 D.P.R. at 80.[3]

11.     Governmental entities may sometimes "withhold documents and other materials that would reveal advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997); *see Bhatia Gautier I*, 199 D.P.R. at 87–88. Under this deliberative process privilege, the Puerto Rico government can withhold material that meets two conditions: it "must be (1) predecisional, that is, antecedent to the adoption of agency policy, and (2) deliberative, that is, actually related to the process by which policies are formulated." *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995); *see also Bhatia Gautier I*, 199 D.P.R. at 87–88 (same). Because withheld materials must be *pre*decisional, the privilege "does not protect objective material or documents in which the agency adopts its position on a matter or controversy." *Bhatia Gautier I*, 199 D.P.R. at 88. And since withheld materials must be *deliberative*, the privilege does not shield any factual material, including factual material that can be reasonably segregated from deliberative material. *See, e.g.*, *Texaco P.R.*, 60 F.3d at 884.

12.     In evaluating the deliberative process privilege, the Court must bear in mind that Puerto Rico's "evidentiary system demands a restrictive interpretation when determining the existence of a privilege." *Bhatia Gautier I*, 199 D.P.R. at 89. Indeed, Puerto Rico courts routinely use the language of strict scrutiny when describing the showing the government must make. *E.g., id.* at 87–89 (the government must show a "compelling interest"); *Aponte Hernández Fernández, Ex Parte*, 2009 WL 2420362, at *9 (P.R. App. June 10, 2009) (attached as Ex. B) (the government must "precisely and unequivocally show that it is privileged information"). Accordingly, "the

---

[3] For the Court's convenience, certified translations of Puerto Rico cases are attached as Exhibit B.

government cannot invoke the privilege generally." *Bhatia Gautier I*, 199 D.P.R. at 86. Rather, it

"must … present evidence and show the existence of [a] compelling interest of greater hierarchy

than the values protected by [the] right of freedom of information of the citizens." *Id.*

**B.  Respondents Have Not Satisfied The Requirements Of The Deliberative Process Privilege.**

    *1.  Respondents improperly withheld postdecisional, non-deliberative materials.*

13.  The deliberative process privilege is not a broad privilege. It shields only materials

that "actively contribute to the agency's decisionmaking process"; it does not protect "post-

decisional documents explaining or justifying a decision already made." *Texaco P.R.*, 60 F.3d at

885. But this is precisely what many of Respondents' withheld documents do.

14.  Understanding the structure of PROMESA and the role of the Oversight Board is

critical for purposes of analyzing the deliberative process privilege. Contrary to the statements in

Respondents' privilege log, the Oversight Board's certification of the Commonwealth's fiscal plan,

the legislature's passage of Joint Resolution 188, and the legislature's enactment of Act 106 were

not separate and distinct decisions. Instead, the passage of Joint Resolution 188 and the enactment

of Act 106 were simply the implementation of the Oversight Board's earlier decision—made no

later than March 13, 2017—to demand the elimination of the Bondholders' liens through the

liquidation of ERS and the transfer of its assets to the Commonwealth.

15.  Under PROMESA, the Governor cannot submit a budget to the Commonwealth

legislature until the Oversight Board has certified a fiscal plan. 48 U.S.C. § 2141(c). The Oversight

Board, moreover, has the "sole discretion" to determine if the Governor's proposed fiscal plan

meets PROMESA's requirements for purposes of Title III. *Id.* § 2141(c)(3). If the Oversight Board

determines that a fiscal plan is deficient, PROMESA requires it to so inform the Governor and

include specific recommendations for revisions to the fiscal plan to correct the deficiencies. *Id.* If

the Governor fails to submit a fiscal plan that meets PROMESA's requirements, the Oversight Board can step in, develop its own plan, and submit it to the Governor and the legislature. *Id.* § 2141(d)(2). That fiscal plan is "deemed approved by the Governor." *Id.* § 2141(e)(2).

16.     Similarly, the Oversight Board has the sole discretion to determine whether "instrumentalities" of the Commonwealth, like ERS, must submit their own fiscal plans or be included in the Commonwealth's. *Id.* § 2121(d)(1). Whether separate or combined, the budgets of the Commonwealth and its instrumentalities, including ERS, must comply with the certified fiscal plans, *id.* § 2142, as must all Commonwealth legislation, *id.* § 2144.

17.     The public record here is telling, if not damning. The Commonwealth originally submitted fiscal plans to the Oversight Board that would have left ERS intact, or even strengthened it by providing for the funding of retirement benefits through payments of actuarially-determined amounts.[4] But on March 13, 2017, the Oversight Board rejected those proposals. It instead certified a revised fiscal plan submitted by the Commonwealth that now had a mandatory amendment requiring that the Commonwealth's pension systems "[s]witch to pay-as-you-go model."[5] That amendment directed the Commonwealth and the Board to formulate a "system overhaul" on or before June 30, 2017, to compel ERS to "liquidat[e] [its] assets" and transfer all of the proceeds to the Commonwealth.[6] Under this new, mandatory system, the Commonwealth itself would use its "general fund revenues to pay benefits owed to" pension beneficiaries, bypassing the existing ERS

---

[4] *See* Commonwealth of Puerto Rico Fiscal Plan at 11 (Oct. 14, 2016), https://drive.google.com/file/d/1nXSBaus9EJy0RetoDfcN9OkiuSQuLNON/view; Commonwealth of Puerto Rico Fiscal Plan (Feb. 28, 2017), https://drive.google.com/file/d/1_PFyfO2q5Ipg_bBgb7rPGVs2_8D8ZBFR/view.
[5] *See* Commonwealth of Puerto Rico Fiscal Plan (Feb. 28, 2017), https://drive.google.com/file/d/1_PFyfO2q5Ipg_bBgb7rPGVs2_8D8ZBFR/view; Commonwealth of Puerto Rico Fiscal Plan Revised Version (March 13, 2017), https://drive.google.com/file/d/1J9zz8xhOyBOkj8ScZOiC48dV_nCcIomC/view.
[6] *See* Financial Oversight and Management Board for Puerto Rico, Fiscal Plan Certification (Mar. 13, 2017), https://drive.google.com/file/d/1gUz92TUNH37mZIE2Hv4pt-M9JmPeaxAE/view.

- 6 -

structure. In turn, "existing pension obligations [would be funded] on a 'paygo' basis," thus diverting employer contributions from ERS directly to the Commonwealth. *Id.*

18.    Once the Oversight Board certified the new fiscal plan on March 13, 2017, the Commonwealth and ERS were required by PROMESA to comply, *id.* § 2142, and there was nothing left for them to deliberate about. 48 U.S.C. § 2141(e)(2). Accordingly, the legislature passed Joint Resolution 188 on June 25, 2017, and the Board adopted it on the Governor's behalf three days later consistent with its newly certified amended fiscal plan. (The Governor, it seems, at first refused to sign the legislation.) Joint Resolution 188 ordered ERS to liquidate itself and transfer its assets to the Commonwealth, and it relieved the Commonwealth, its public corporations, and its municipalities, from their obligations to make employer contributions to ERS. Joint Resolution 188 §§ 1–4. To further implement the changes already imposed by the March 13, 2017 fiscal plan, the Commonwealth then enacted Act 106, which made the Commonwealth the direct payer of retiree pensions and reiterated the Commonwealth's earlier efforts to eliminate contributions to ERS and force ERS to liquidate its assets. Act 106 §§ 1, 4.2, 5.1–5.3.

19.    Given this history, many of Respondents' withheld documents—and particularly those dated after the Oversight Board's certification decision on March 13, 2017—almost certainly do not reflect the give-and-take of governmental deliberations at all. Instead, they include *post-decisional* materials explaining or carrying out the decisions the Board had already made: to dissolve ERS, take its assets, and establish a "new" pension system to circumvent the Bondholders' liens. By the time these documents were generated, the time for deliberation had passed.[7] These

---

[7] Insofar as the Court concludes that the certification of the fiscal plan, the enactment of Joint Resolution 188, and the passage of Act 106 were all distinct "decisions" to which Respondents contributed, it must then consider whether those "decisions" may be considered at the broad level Respondents suggest. In *Bhatia Gautier II*, the court held that the Governor's final draft could not be predecisional and deliberative to the *Oversight Board*'s acceptance of the plan because the two were different entities with different roles. *Bhatia Gautier v. Gobernador*, Civil No. SJ2017CV00271

- 7 -

post-decisional documents should therefore be produced. *See Jordan v. U.S. Dep't of Justice*, 591
F.2d 753, 774 (D.C. Cir. 1978) ("Communications that occur [a]fter a policy has already been
settled upon for example, a communication promulgating or implementing an established policy
[a]re not privileged."); *Noel v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 WL
6649969, at *4 (S.D.N.Y. Dec. 18, 2018) (finding that withheld documents "do not reflect any pre-
decisional deliberative process and fall into the category of post-decision communications [and]
post-decision strategy for implementation of decided policy. . . .").[8]

2.    *Respondents improperly withheld non-privileged factual information.*

20.    Because pre-decisional materials must be *deliberative*, the privilege also does not
shield purely factual material. *See, e.g.*, *Texaco P.R.*, 60 F.3d at 884–85. This specifically includes
factual material that can be reasonably segregated from deliberative material. *Id.*

21.    Respondents have withheld 123 documents under the deliberative process privilege,
yet many of these contain factual material—and sometimes *only* factual material. For example, it
is not plausible that a "preliminary draft of presentation to employers covered by PayGo system
regarding PayGo implementation, collection of PayGo fees, and enforcement mechanisms and
penalties for nonpayment" does not mainly consist of factual information. Ex. A, Doc. 105; *e.g.*,
Ex. A, Docs. 85, 86, 122 (similar presentations). Nor can it be that a "spreadsheet of pension related
inflows and outflows for FY 2018" is anything other than factual. Ex. A, Doc. 60; *see also, e.g.*,
Ex. A, Docs. 54–59 (similar spreadsheets). Yet another example of factual content are the log's

---

(P.R. Sup. Ct. Mar. 16, 2018) ("*Bhatia Gautier II*") (attached as Ex. B). So too here, where Respondents had many
different roles with respect to the certification of the fiscal plan and the passage of the two laws in question.

[8] It does not appear that Respondents have even produced the final versions of various draft documents included on
their log—including drafts of a letter from the ERS administrator to the Commonwealth (Ex. A, Docs. 18, 19), drafts
of a revised Commonwealth Fiscal Plan (Ex. A, Docs. 20, 22, 24), and a draft Executive Order regarding pension
reform efforts (Ex. A, Doc. 31). Even if the deliberative process privilege can apply to the draft documents (and for
all the reasons discussed, it cannot), the final versions are not deliberative and should have been produced.

entries for "Email correspondence discussing financial analysis of pension reform efforts prepared in anticipation of possible pension reform legislation" (Ex. A, Docs. 35–45 and 47). *See also* Ex. A, Docs. 65–66 (similar). So too are entries for e-mail correspondence "regarding Paygo projections" (Ex. A, Docs. 28, 30) and draft spreadsheets "containing financial analysis of potential PayGo costs and revenues prepared in preparation of impact on potential transition to PayGo system" (Ex. A, Docs. 48, 49). *See also* Ex. A. Docs. 27, 29, 32, 33, 51 (draft spreadsheets containing "project[ion of] general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026"). Respondents cannot withhold this obviously factual material, at least not without some compelling explanation as to why it cannot be segregated from the "deliberations" to which it supposedly contributed.

22.     Moreover, even if a document contains a mix of pre-decisional material and factual information, Respondents are required to produce the reasonably segregable factual information from the purportedly deliberative material. *E.g.*, *Bhatia Gautier I*, 199 D.P.R. at 87–88; *Town of Norfolk v. U.S. Army Corps of Eng'rs*, 968 F.2d 1438, 1458 (1st Cir. 1992). Obviously, Respondents have made no effort to do so.

23.     Respondents have tried to wrap claims of privilege around this non-privileged content by saying that such documents are intended to "identify[] risks" (Ex. A, Docs. 1, 5, 7–9, 10, 12–17, 20, 22, 24) or "guide discussion" (Ex. A, Docs. 54–60, 65–66). But such vague assertions cannot support sweeping claims of privilege, and certainly do not protect documents' factual content. Elsewhere, it seems that the documents in question were not even documents pertaining to the deliberations of the Puerto Rico government at all. For example, certain drafts of a presentation to employers about implementing Act 106 (Ex. A, Docs. 105, 122) concern the employers' decision-making, not the government's.

3.     *Respondents have not properly invoked the privilege.*

24.     Finally, Respondents have failed to justify their privilege claims. To invoke the
deliberative process privilege, "the government must comply with the following process":

> (1) the head of the agency that controls the information must claim it formally, after
> pondering it; (2) an officer from the agency must provide the precise reasons why the
> confidentiality of the documents is claimed[;] and (3) the government must identify and
> describe the information or the documents that it wants to protect.

*Bhatia Gautier I*, 199 D.P.R. at 87.

25.     Respondents have not met these strict procedural requirements. Consistent with
*Bhatia Gautier I*, the Court ordered Respondents to provide "an affidavit by the relevant head of
agency asserting the privilege." Apr. 2, 2019 Order at ¶ 2(g). Without such an affidavit, it is
impossible to know whether the claims of privilege stem from "actual personal consideration" by
a government official of the need to protect deliberations, or rather the government's lawyers'
attempt to block evidence. *Landry v. FDIC*, 204 F.3d 1125, 1135 (D.C. Cir. 2000); *see also, e.g.*,
*Bhatia Gautier I*, 199 D.P.R. at 87 ("[T]he head of the agency that controls the information must
claim [the privilege] formally, after pondering it."). Nor can the Court even begin to evaluate the
"precise reasons why the confidentiality of the documents is claimed." *Bhatia Gautier I*, at 87.

26.     The requirement of a *contemporaneous* affidavit from a high-ranking agency
official is not a formality. Rather, it is an important check against the very type of overreaching
privilege assertions seen in this case. The high-ranking agency official, not a lawyer, is "in the best
position to know what documents were prepared to assist a decision, what documents express
deliberative opinions, and what documents must be protected in order to maintain internal candor,"
because "[a]n attorney is an advocate for the agency and has every incentive to withhold
documents from an adversary." *In re MTBE Prods. Liab. Litig.*, 643 F. Supp. 2d 439, 443 (S.D.N.Y.
2009). The fact that Respondents still have not provided such an affidavit amounts to a failure of

proof on two of the three elements required to establish the privilege. It also confirms that a lawyer, not a high-ranking agency official, made the privilege assertions in the first place.

27.     Respondents have also improperly invoked the privilege in other ways. Despite the clear directions from the Court—and the Bondholders' repeated complaints—Respondents' privilege log remains fatally defective at this late date. For example, 35 of the individuals identified on Respondents' document-by-document log as having sent or received supposedly privileged documents do not appear on Respondents' earlier categorical log or on the index of individuals they served with it. *See, e.g.*, Ex. A, Docs. 3, 4, 10, 13, 14, 16, 17, 20, 22, 29, 32, 34, 48, 59, 65, 66, 77, 79, 81, 83, 87, 88, 105, 110, 116, 117, 120, 121.[9] The log does not comply with this Court's Order about what information must be included in the log, Apr. 2, 2019 Order at ¶ 2(a), and as a result, neither the Bondholders nor the Court can assess whether the material in question is truly deliberative or if any privilege over these documents was waived. *See, e.g.*, *Schlefer v. United States*, 702 F.2d 223, 238 (D.C. Cir. 1983) (documents "from 'subordinate' to 'superior' on an agency ladder are more likely to be 'deliberative' in character than documents emanating from superior to subordinate"). Similarly, one of the entries lists no decision at all, Ex. A, Doc. 46, and some list no sender or recipient, Ex. A, Doc. 72, 107, 108, 112.

## II.     The Bondholders' Need for the Materials Overcomes Any Interest in Keeping Respondents' Deliberations in the Dark.

28.     Even if Respondents' materials do fall within the deliberative process privilege, they must still be disclosed. For the privilege to apply, the court "must make an analysis of balance of interests," weighing the government's interest in confidentiality against the many interests

---

[9] The Bondholders contacted counsel for Respondents to ask for an updated appendix. Respondents identified 18 of the 35 individuals in an updated appendix, but the remaining 17 are still a mystery.

favoring disclosure—such as "the interests of the private litigant," "the need for accurate judicial

fact finding," and "the role of the government in the litigation." *Bhatia Gautier I*, 199 DP.R. at 88.

29.     Applying this balancing test, Puerto Rico courts have ordered disclosure of

materials remarkably similar to those Respondents seek to withhold now. In *Bhatia Gautier II*, the

trial court ordered the Commonwealth to produce the final draft budget submitted by Puerto Rico's

governor to the Oversight Board as part of the PROMESA-dictated budgeting process. *See infra*

¶ 30. The court questioned whether that material was predecisional given the distinct roles played

by the Governor and the Oversight Board, *see supra* ¶¶ 15–18, but also alternatively held that "by

weighing the interests in conflict, the State was not able to establish that a deliberative process

existed that must be protected vis-à-vis the constitutional right to have access to information … to

monitor government operations in light of the presence of a new governmental actor, the Board."

*Bhatia Gautier II*, at 20. The court further added that "[t]he State also could not prove that the

public interest would be better served by the confidentiality of the document than by its disclosure,"

because "secrecy in public affairs is an exception, not the rule." *Id.*

30.     If the balance of interests tilted in favor of disclosure in *Bhatia Gautier*, it certainly

does so here as well. The document in *Bhatia Gautier* was a draft final budget, perhaps one of the

most sensitive and important documents that the Governor sends to the Board pursuant to

PROMESA. The materials in question here concern the enactment of two specific laws, both of

which were preordained by the March 13, 2017, revised fiscal plan and neither of which is so

sensitive in nature or so broad in application as the Governor's draft budget. And as important as

the plaintiffs' interests were in *Bhatia Gautier*, so too is the interest the Bondholders seek to

vindicate here, that is, to protect constitutionally-protected property rights from summary

confiscation by the government. The documents concerning the background, circumstances, and

implementation of the PayGo system go to a central factual issue in the Stay Relief Motion—the similarity between the historic ERS employer contributions and the new PayGo fees—and are critical to the Bondholders' ability to defend themselves against Respondents' argument that Joint Resolution 188 and Act 106 eliminated the Bondholders' collateral.

31.    Federal law, too, requires this balancing. In *In re Subpoena Duces Tecum Served on the Office of Comptroller of Currency*, 145 F.3d 1422 (D.C. Cir. 1998), a bankruptcy trustee brought a fraudulent conveyance claim against the FDIC, alleging that the FDIC knew that a bank holding company and its subsidiary were insolvent, yet pressured the bank to send assets to its subsidiary to minimize the FDIC's losses in an eventual receivership. The court of appeals reversed the district court's holding that the government's deliberations were privileged. Since the trustee's fraudulent conveyance claim depended in part on the parties' intent, the court held that "the deliberative process privilege is not appropriately asserted … when a plaintiff's cause of action turns on the government's intent." *Id.* at 1424; *see also, e.g.*, *Davis v. City of New York*, 2012 WL 612794, at *8 (S.D.N.Y. Feb. 27, 2012) ("The privilege is routinely found to be inapplicable where the agency deliberations are central to the case.").

32.    Other cases have followed suit, even where the government's intent was not itself an element of the claim. In *In re Pharmaceutical Industry Average Wholesale Price Litigation*, a False Claims Act case brought by the United States, the defendant sought discovery of materials showing the government's understanding of key issues in the case. 254 F.R.D. 35, 38–39 (D. Mass. 2008). Because the "[g]overnment knowledge could conceivably be relevant to two elements" of the claim at issue, the court overruled the government's claim of deliberative process. *Id.* The court reasoned that the defendant "ha[d] the right during discovery to see documents reflecting the government's knowledge" so that it could "mount [its] defense." *Id.* at 41–42. So too in *Fairholme*

- 13 -

*Funds, Inc. v. United States*, 128 Fed. Cl. 410 (2016), *mandamus granted in part and denied in part*, *In re United States*, 678 F. App'x 981 (Fed. Cir. 2017), where the district court required the government to disclose privileged material because of its centrality to the litigation and the government's role as a defendant in the case. *See, e.g.*, 128 Fed. Cl. at 442–43, 444–45. The Federal Circuit later upheld all but a few of these ordered disclosures, rejecting only those where the materials were so remote from the merits of the case that they "ha[d] no connection" to the government's actions. 678 F. App'x at 988–91.

33.     This case is of a piece. Respondents maintain that the Bondholders are not entitled to relief from the Bankruptcy Code's automatic stay because Joint Resolution 188 and Act 106 altogether eliminated their collateral by replacing the longstanding employer contributions to ERS with the new PayGo fees. To rebut this, the Bondholders intend to show that the new PayGo fees are simply the old ERS employer contributions in slightly different clothing and that their liens continue to attach to these funds. The documents Respondents are withholding as pre-decisional go straight to these proofs: their privilege log lists 123 documents relating to the plan by which the parties engineered this diversion of the Bondholders' collateral, and like the private parties in *Subpoena Duces Tecum* and *Fairholme Funds,* the Bondholders have no way of obtaining this evidence except from the Puerto Rico government itself.  In fact, the equities on the Bondholders' side are even more compelling, because the Bondholders need this evidence to defend themselves against a legal theory that Respondents themselves have advanced.

34.     Finally, the Court itself has observed that this is relevant and material information. As it stated during the April 1 hearing on the Bondholders' motion to compel, in order to "follow[] the [Bondholders'] security interest"  the Court and the Bondholders "need to understand … whether we're talking about the same funds or not." Tr. 33. It is for that reason that the Court

determined that "[the Bondholders] are entitled to figure out" how the laws in question "c[a]me to be"—"are we talking about the same funds, not the same funds, and where did they end up." *Id.*

### III. Respondents Waived Any Applicable Privilege with Respect to Materials Disclosed to Each Other, and Particularly So for Documents Disclosed to ERS.

35.     Like other evidentiary privileges, the deliberative process privilege may be waived by knowing disclosure to other entities, especially where those entities have interests adverse to one another. *See, e.g.*, *People for Am. Way Found. v. U.S. Dep't of Educ.*, 516 F. Supp. 2d 28 (D.D.C. 2007) (materials shared among the Department of Education, the D.C. Mayor's Office, and private grant recipients had to be disclosed because of that sharing); *Shell Oil Co. v. IRS*, 772 F. Supp. 202, 203 (D. Del. 1991) (no privilege over information that was read aloud at a private "meeting of government and oil industry officials"). Respondents must therefore disclose any materials that passed among them. *See, e.g.*, Ex. A, Docs. 21, 35, 51, 89 (shared between ERS and AAFAF); Docs. 12, 13, 14, 16, 17, 20, 22, 32, 35, 36, 48, 51, 65, 66, 114, 115 (shared between the Oversight Board and AAFAF).

36.     Respondents are distinct legal entities with distinct and adverse interests. Indeed, the Oversight Board sent a letter to Congress on March 12, 2018 (attached as Exhibit C), in which it stated "the Commonwealth and its instrumentalities … have retained their own counsel and other advisors for the Title III proceedings, on the grounds that the Commonwealth and its instrumentalities *often have divergent interests* from those of the [Oversight Board]." *Id.* (emphasis added). *Bhatia Gautier II* recognized as much when it concluded that the Commonwealth and the Board are distinct entities that might (and often did) disagree about an appropriate budget. *Bhatia*

*Gautier II*, at 22 (concluding that the final draft budget was not predecisional and deliberative because "[t]he Governor already made his decision by submitting the Fiscal Plan to the Board").[10]

37.     And communications from or to ERS (Ex. A, Docs. 21, 35, 51, 89) most certainly constituted a waiver of privilege. As the Bondholders explained in their papers challenging Respondents' assertion of the attorney-client privilege, ERS is adverse to the Commonwealth as a matter of law. In fact, § 709 of the Bond Resolution compels ERS to take *the Bondholders*' side in any debate touching on the Bondholders' interests. Dkt. No. 448 in Case No. 17-bk-03283, ¶¶ 21–25. Obviously, there is a waiver whenever ERS—under a clear and detailed obligation to act *against* the Commonwealth and *in favor of* the Bondholders—shared pre-decisional materials about PayGo with AAFAF, a statutory representative of the Commonwealth.

## IV.   Respondents Have Not Proven They Are Entitled To Withhold Documents Under The Executive Privilege.

### A.   The Executive Privilege Does Not Extend To Agencies Such As AAFAF.

38.     In Puerto Rico, the executive privilege "seeks to protect the communications between the [Governor] and his respective subordinates, counselors or assistants." *Bhatia Gautier I*, 199 D.P.R. at 89. Commonwealth courts construe the privilege narrowly and do not extend it to communications involving other agencies. *Bhatia-Gautier II*, at 22 (finding that draft fiscal plans submitted to the Oversight Board were not protected by executive privilege as the Board is "an autonomous entity under section 108 of PROMESA").[11]

---

[10] To be sure, this Court's prior decisions suggest that information shared "among the Commonwealth, AAFAF, the Oversight Board, and their professionals" could be "protected by the deliberative process privilege," notwithstanding the separate nature of those entities. Dkt. 2590, at 4. But as Judge Swain's remand order indicated, that decision was rendered without the benefit of *Bhatia Gautier II* or detailed briefing on the matter. *See* Dkt. 2952, at 6.

[11] The federal executive privilege—which is designed to alleviate federal separation-of-power tensions—does not extend to state governors. *See, e.g., Hobley v. Burge*, 445 F. Supp. 2d 998 (N.D. Ill. 2006); *Corp. Insular de Seguros v. Garcia*, 876 F.2d 254, 257 (1st Cir. 1989).

39.    According to Respondents' privilege log, sixteen of the eighteen documents

withheld on the basis of executive privilege were sent by or to AAFAF officials:

| Sender or Recipient | Position | Docs. |
|---|---|---|
| Fernandez Gonzalez, Blanca | AAFAF Director of Financial Controls, Associate Director of Public Finance | 23, 74, 84, 104, 118, 123 |
| Gonzalez Garay, Maria | AAFAF Assistant Director of Oversight | 12 |
| Hernandez Garcia, Nicole M | AAFAF Chief of Staff | 118 |
| Mattei, Perez, Jesus | AAFAF Director Public Finance | 23 |
| Portela Franco, Gerardo | AAFAF Executive Director and Chairman | 12, 22, 23, 110, 116, 117, 118 |
| Soto Velez, Pedro | AAFAF Chief Financial Officer | 12, 22 |
| Yamin Rivera, Carlos M | AAFAF In-House Legal Counsel | 74, 82, 84, 100, 104, 106, 109, 110, 116, 117, 118, 123 |
| Yassin Mahmud, Mohammad | AAFAF In-House Legal Counsel | 74, 78, 82, 84, 100, 104, 110, 116, 117, 118 |

None of these documents—sent or received by individuals other than the Governor and his

"subordinates, counselors or assistants"—are entitled to protection under the executive privilege.

*Bhatia-Gautier I,* 199 D.P.R. at 89; *see In re Sealed Case*, 121 F.3d at 752. Even if the *Governor's*

communications might be shielded by privilege, there is no reason to extend the privilege to cover

AAFAF, a separate Commonwealth agency, or to find that the privilege broadly protects

communications between AAFAF and the Governor's representatives.[12]

**B.    The Executive Privilege Is A Qualified Privilege That Does Not Prevent Disclosure Of The Withheld Communications.**

40.    Like the deliberative process privilege, the executive privilege is "qualified,

therefore, it does not give the Executive Branch an absolute faculty [to] 'retain[] information [on]

---

[12] The executive privilege likewise does not extend to communications of third parties—for example, Elias Sanchez Sifonte, *see* Ex. A, Docs. 12, 22, 78, 118, an advisor not employed by the Puerto Rico government.

- 17 -

the basis of its alleged confidentiality.'" *Bhatia-Gautier I*, 199 D.P.R. at 89 (explaining that to

determine the "frontiers" of this privilege, courts must "weigh the conflicting interests").

41.     For the same reasons discussed above with respect to the predecisional privilege,

Respondents' claims of executive privilege are outweighed by the Bondholders' need for this

evidence. The documents withheld under executive privilege concern "potential legislative

initiatives to address underfunded pension system including PayGo" (Docs. 12, 22); revisions to

Act 106 (Docs. 74, 77, 100, 104, 106, 109, 110, 116, 117, 118); revisions to Joint Resolution 188

(Docs. 82, 83, 84); the "PayGo system structure [and] new defined contribution plan" (Doc. 78);

and the "calculation of PayGo fees" (Doc. 123). These matters are unquestionably relevant and

important. Especially since Respondents have not met their burden of explaining how disclosure

would reveal the direct decision-making of the Governor, Respondents' claims of executive

privilege should be overruled. *See Bhatia-Gautier II*, at 17, 21 (finding that executive privilege

was inapplicable where, among other things, a party invoked the privilege "without proving in any

way that the disclosure of the draft Fiscal Plan would be detrimental to the interests of the State.").

## V.   Respondents Have Not Substantiated Their New Claims Of Attorney-Client Privilege And Attorney Work Product.

42.     At the eleventh hour, Respondents asserted a new round of privilege claims based

on the attorney-client privilege and work product doctrine. Respondents' original categorical

privilege logs produced on April 11 and 12, invoked the deliberative process privilege or common-

interest doctrine for a total of 121 documents (Categories 5 to 7). Nowhere did Respondents assert

any other privileges for these three Categories. In their April 14 document-by-document log for

these very documents, Respondents now assert that they have a new attorney-client privilege claim

- 18 -

for 81 of these documents and a work product privilege with respect to four more.[13] Respondents

provide no explanation for making new privilege claims at this late date.

43.     Respondents' new claims of attorney-client privilege and work product doctrine are

facially defective.  They invoke attorney-client privilege for at least ten spreadsheets containing

financial analysis of PayGo costs and revenues with no evident legal advice, Ex. A, Docs. 49, 51,

54–60, 87; at least seven "draft fiscal plans" that, aside from having been sent to one in-house

attorney among many non-lawyer recipients, appear to have no connection to legal advice at all,

Ex. A, Docs. 13–17, 22, 24; documents where neither the sender nor the recipient is a lawyer, Ex.

A, Docs. 87, 88); documents where there is neither an author nor recipient, Ex. A, Docs. 72, 107–

108; and instances of individuals noted as lawyers even though they were described on

Respondents' categorical logs as non-lawyers, *see e.g.*, Ex. A, Docs. 12, 22, 78, 118.[14]

44.     More fundamentally, many of the last-minute privilege claims suffer from the same

defects of waiver and incompleteness we pointed out in our papers addressed to Respondents'

attorney-client privilege and work product doctrine claims. *See* Dkt. No. 443 in Case No. 17-bk-

03566. For example, many documents logged as attorney-client privilege were sent to or from non-

lawyer, non-law firm third parties, *see* Ex. A. Docs. 13, 14, 16, 17, 21, 22, 51, precluding the

application of privilege, *see* Dkt. No. 443 in Case No. 17-bk-3566, ¶¶ 11–18. The Court should

reject these newfound privilege claims.

## **CONCLUSION**

For the reasons set forth above, this Court should compel Respondents to disclose materials

inappropriately withheld under the deliberative process privilege and the executive privilege.

---

[13] Respondents' April 14 privilege log has abandoned any claim of a common interest privilege.
[14] Although Respondents claim for the first time in Docs. 12, 22, 78, 118 that this individual is an attorney, there is no indication that he ever rendered legal advice during his limited time as an *ex officio* member of the Board designated by the Governor. And, of course, the attorney-client privilege attaches only when the attorney acts in that capacity.

In San Juan, Puerto Rico, today April 16, 2019.

By:

/s/ Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

/s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
James M. Gross (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com
jgross@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Beth Heifetz (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
bheifetz@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon
Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P.,
Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Cheryl T. Sloane

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*