**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>    Debtors.[1] | PROMESA<br><br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY<br><br>    Debtor. | PROMESA<br><br>Title III<br><br>No. 17 BK 3267-LTS<br><br>(Jointly Administered) |

**BANK OF AMERICA'S SUPPLEMENTAL RESPONSE TO (I) URGENT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO FOR ENTRY OF AN ORDER UNDER BANKRUPTCY RULES 1007(i) AND 2004 AUTHORIZING DISCOVERY AND COMPELLING DISCLOSURE OF LISTS OF SECURITY HOLDERS, AND (II) OMNIBUS REPLY IN SUPPORT OF SAME**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567- LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Case No. 17 BK 4780- LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable Magistrate Judge Judith Gail Dein:

Per the Court's order dated April 16, 2019 [Docket No. 6292] (the "Order"), Bank of America, N.A. ("BANA"), by and through its undersigned counsel, hereby submits this supplemental response (the "Supplemental Response") to (i) the urgent motion [Docket No. 6143] (the "Motion") of the Financial Oversight and Management Board of Puerto Rico (the "Oversight Board"), acting by and through its Special Claims Committee (the "Special Claims Committee"), for entry of an order authorizing discovery and compelling disclosure of lists of security holders, and (ii) the Oversight Board's omnibus reply in support of the Motion [Docket No. 6248] (the "Reply") which contains, among other things a revised proposed order granting the Motion as set forth therein (the "Revised Proposed Order"), hereby incorporates by reference BANA's original response to the Motion, joinder, and reservation of rights [Docket No. 6195] (the "Original Response"),[2] and respectfully states as follows:

## SUPPLEMENTAL RESPONSE

1. BANA appreciates the Court's invitation to submit supplemental briefing regarding the relief sought in the Motion, including as set forth in the Revised Proposed Order. *See* Docket No. 6292. As the Court no doubt deduced, the revisions contained in the Revised Proposed Order failed to address BANA's concerns and, thus, BANA continues to object to the relief sought by the Motion on the grounds set forth in its Original Response and in this Supplemental Response.

2. In its Reply, the Oversight Board acknowledged some of the concerns raised by the Participant Holders in their respective responses and objections, but remained silent on one key issue: the ripeness of the relief sought in the Motion. *See* Original Response ¶ 5 (stating that the Oversight Board's requested relief is premature based on the Oversight Board's previously filed

---

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion, the Original Response, or the Reply.

1

motions). As acknowledged in the Motion, the Oversight Board's requested Rule 2004 discovery may be completely obviated by the adjudication of the Bond Objections and at least obviated in part by the information received from DTC. See Motion ¶¶ 3, 7, 21. Furthermore, should the Court grant the relief sought in the Oversight Board's Equitable Tolling Motion, the Oversight Board's relief requested in the Motion would not be urgent or necessary at this time. For this reason alone, let alone the other reasons previously stated in BANA's Original Response, the Motion should be denied.

3. Should the Court be inclined to authorize discovery sought by the Oversight Board, BANA respectfully submits that such order, in the current form as the Revised Proposed Order, is untenable and fails to address BANA's concerns. Notably:

a. **Timing of Response and Production**: By the Revised Proposed Order, the Oversight Board has moved its proposed first response and production date one business day: from this Friday, April 19, 2019 to the following Monday, April 22, 2019. Moving this initial deadline from a Friday to the following Monday, over a holiday weekend no less, is an immaterial change to the already impossibly onerous deadline for such an immense production. Specifically, the Oversight Board's requests likely require a massive search of multiple BANA entities contained on what could be different platforms and/or systems at BANA and/or another Bank of America entity, and review and production of detailed information concerning an unknown number of payments that may have been made through 4 DTC accounts[3] with respect to 133 CUSIPs on 911 unspecified payment dates over a four-year period. To require response and production in three or four business days is simply untenable. In the event that the Court allows the Oversight Board

---

[3] Notably, in its Reply, the Oversight Board did not address BANA's inquiry regarding what appears to be a misappropriation of a DTC account for "BNY Mellon Capital Markets, LLC" to BANA. See Original Response, at ¶ 1 n.3. Accordingly, it remains outstanding how BNY Mellon Capital Markets, LLC would be considered a BANA entity such that BANA could respond on behalf of such entity with respect to the discovery sought in the Motion.

2

to pursue this discovery at this juncture, BANA requests that the Oversight Board identify specific dates as to when it believes that BANA made payments for each associate bond and CUSIP. As the Oversight Board stated in the Motion, the information that the Oversight Board expects from DTC will show "which financial institutions held the bonds on the Friday preceding and/or following the payments." Motion ¶ 21. BANA further requests that, after BANA receives this information from the Oversight Board, the Court provide BANA and the Oversight Board with the opportunity to meet and confer as to a reasonable deadline. Such specific dates when BANA purportedly held the bonds should assist in reducing the burden of locating, review and production of the information sought by the Oversight Board, a requirement that should, in effect, be of little to no burden on the Oversight Board.

        b. **Confidentiality**: By the Revised Proposed Order, the Oversight Board included limited provisions intended to address confidentiality concerns raised by other Participant Holders. BANA submits that the Revised Proposed Order should additionally contain the following provisions, which is substantially similar to the provisions provided by counsel to JPMorgan Chase Bank, N.A. to counsel to the Oversight Board earlier today:[4]

> To the extent any federal, state or foreign law or other legal authority governing the disclosure or use of Confidential Information, including personal data or non-public personal financial information, permits disclosure of such information pursuant to an order of a court, this Order shall constitute compliance with such requirement.
>
> To the extent any United States federal or state law or other United States legal authority governing the disclosure or use of Confidential Information, including personal data or non-public personal financial information ("Personal Data or Non-Public Personal Financial Information Law") requires a person disclosing such information (a "Disclosing Person" and collectively "Disclosing Persons") and/or Receiving Party to (a) obtain a subpoena or court order and/or (b) notify and/or obtain consent from any

---

[4] Certain modifications were made to the language provided to the Oversight Board earlier today. Counsel to JPMorgan Chase Bank, N.A. has confirmed their agreement with the modifications to this provision regarding confidentiality as set forth in this Supplemental Response.

3

person or entity prior to the disclosure of Personal Data or Non-Public Personal Financial Information before disclosing any Personal Data or Non-Public Personal Financial Information, in light of the protections provided for in this Order, the volume of documents to be produced and the ongoing oversight of the Court, this Order shall constitute an express direction that the Disclosing Person and/or Receiving Party is exempted from obtaining such court-ordered subpoena, having to notify and/or obtain consent from any person or entity prior to the disclosure of Personal Data or Non-Public Personal Financial Information, and/or having to provide a certification that notice has been waived for good cause. Any Disclosing Person or Receiving Party may seek additional orders from the Court that such Party believes may be necessary to comply with any Personal Data or Non-Party Financial Information Law and/or contractual obligation.

c. **Cost-Sharing**: Contrary to the Oversight Board's suggestion in its Reply, it is not the "cost of doing business" to require a financial institution to have to respond and produce what could be thousands of data points on an emergency basis, when such urgent circumstances were purely the creation of the Oversight Board and could have otherwise been avoided long before the expiration of the relevant statute of limitations. For the very reason the Oversight Board suggests in its Reply, BANA is a large institution, and responding to the Oversight Board's requests will require significant time and expense to locate among the many BANA entities, retrieve and review the information sought, let alone on an extremely short timeline and urgent basis. Accordingly, BANA respectfully maintains its request that consideration be given as to whether there should be a shifting or sharing of costs incurred by BANA in attempting to comply with these belated and now emergent requests.

[continued on the next page]

## **CONCLUSION**

4. For the foregoing reasons, BANA respectfully maintains that the Court should (a) deny the Motion and (b) grant such other and further relief as is just and proper. Should the Court permit the Oversight Board to pursue discovery from BANA, BANA respectfully submits that any order account for the issues raised in both the Original Response and this Supplemental Response.

Dated: April 16, 2019

Respectfully submitted,

**BANK OF AMERICA, N.A.**

*/s/ Jennifer L. Malin*
Jennifer L. Malin
Carrie V. Hardman
(*Pro Hac Vice* Admissions Pending)
**WINSTON & STRAWN LLP**
200 Park Avenue
New York, NY 10166
Tel: (212) 294-6700
Fax: (212) 294-4700

*Counsel for Bank of America, N.A.*

*/s/ Enrique G. Figueroa Llinás*
Enrique G. Figueroa-Llinás
USDC No. 201709
**BOBONIS, BOBNIS & RODRIGUEZ POVENTUD**
129 de Diego Ave.
San Juan, Puerto Rico 00911-1927
Tel: (787) 725-7941
Fax: (787) 725-4245

*Co-Counsel for Bank of America, N.A.*