IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | No. 17 BK 3283-LTS |
| as representative of | |
| THE COMMONWEALTH OF PUERTO RICO,<br>ET AL. | |
| Debtor. | |
| Asociación Puertorriqueña de Profesores Universitarios, Ángel Rodríguez Rivera, Javier Córdova Iturregui, Heriberto Marín Centeno, Yohana De Jesús Berríos, Annabell C. Segarra, Nydia E. Chéverez Rodríguez, Frances Bothwell del Toro, Lida Orta Anés, and Ivette Bonet Rivera | ADVERSARY NO. |
| Plaintiffs | |
| v. | |
| University of Puerto Rico, Governing Board of the University of Puerto Rico, Walter Alomar Jiménez, Zoraida Buxó Santiago, Eric Pérez Torres, Alejandro Camporreale Mundo, Antonio Monroig Malatrassi, Neftalí Soto Santiago, Emilio Colón Beltrán, Jorge Haddock Acevedo, and Financial Oversight and Management Board for Puerto Rico | |
| Defendants | |
| Mayra Olavarría Cruz, Alan Rodríguez Pérez, Marysel Pagán Santana, Efraín Rodríguez Ocasio, and University of Puerto Rico Retirement System | |
| Nominal Defendants | |

- 1 -

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

TO THE HONORABLE COURT:

COME NOW the abovenamed Plaintiffs, by and through their undersigned counsel, and respectfully state, allege and pray:

## 1. Nature of the Action, Jurisdiction and Venue

1.1.   This is an action for declaratory and injunctive relief brought pursuant to Section 106 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").

1.2.   This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises out of PROMESA.

1.3.   This Court also has supplemental jurisdiction over the Puerto Rico claims pursuant to 29 U.S.C § 2617 since the federal and the Puerto Rico claims asserted in this Complaint are so interrelated as to form part of the same case and controversy and derive from a common nucleus of operative facts.

1.4.   Venue is proper in this District pursuant to PROMESA § 106(a) because this action arises out of PROMESA. Venue is also proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs' claims arose within the judicial district of Puerto Rico.

1.5.   This is an appropriate action for declaratory relief under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, since there currently exists an actual, justiciable controversy between the Parties regarding the lack of authority of the Financial Oversight and Management Board for Puerto Rico over the University of Puerto Rico Retirement Syste and the dereliction of the fiduciary duties that the Governing Board

of the University of Puerto Rico and its individual members have towards the University of Puerto Rico Retirement System and its retirees, members, participants, contributors and beneficiaries.

**2. The Parties**

2.1.    Plaintiff **Asociación Puertorriqueña de Profesores Universitarios, Inc.** ("APPU") is a not for profit corporation organized and existing since 1961 pursuant to the Laws of the Commonwealth of Puerto Rico, whose members are active or retired university professors. Among other stated goals in the certificate of incorporation, APPU defends the professional, teaching, economic and cultural interests of university professors. According to APPU's By-Laws, the main purpose of APPU is "to protect the rights and promote the professional interests of all its members." The By-Laws list of APPU's specific objectives includes "to procure the improvement of the working and retirement conditions of its members."

2.2.    Plaintiff **Ángel Rodríguez Rivera** is an active member, contributor and beneficiary of the University of Puerto Rico Retirement System, and President and member of APPU.

2.3.    Plaintiff **Javier Córdova Iturregui** is an active member, contributor and beneficiary of the University of Puerto Rico Retirement System, and Vice-President and member of APPU.

2.4.    Plaintiff **Yohana De Jesús Berríos** is a retired member, contributor and beneficiary of the University of Puerto Rico Retirement System, and Organization Coordinator and member of APPU.

2.5.    Plaintiff **Annabell C. Segarra** is an active member, contributor and beneficiary of the University of Puerto Rico Retirement System, and member of APPU.

2.6.    Plaintiff **Nydia E. Chéverez Rodríguez** is a retired member, contributor and beneficiary of the University of Puerto Rico Retirement System, and member of APPU.

2.7.    Plaintiff **Heriberto Marín Centeno** is an active member, contributor and beneficiary of the University of Puerto Rico Retirement System, and member of APPU.

2.8.    Plaintiff **Frances Bothwell del Toro** is a retired member, contributor and beneficiary of the University of Puerto Rico Retirement System, and member of APPU. She presides APPU's chapter of retired university professors.

2.9.    Plaintiff **Lida Orta Anés** is an active member, contributor and beneficiary of the University of Puerto Rico Retirement System, and member of APPU.

2.10.  Plaintiff **Ivette Bonet Rivera** is an active member, contributor and beneficiary of the University of Puerto Rico Retirement System, and Secretary and member of APPU.

2.11.  As it is more particularly alleged in this Complaint, all the Plaintiffs made monthly contributions to the University of Puerto Rico Retirement System. Most of the Plaintiffs also made substantial additional contributions to the University of Puerto Rico Retirement System in order to increase or supplement their pension benefits as allowed, from time to time, by the trust's fiduciary. Those additional contributions ranged from several thousand dollars to over One Hundred Twenty Thousand Dollars ($120,000.00).

2.12.  Defendant **University of Puerto Rico** ("UPR") is a public corporation of the Commonwealth of Puerto Rico that was created pursuant Puerto Rico Law 135-1942 and superseded by Puerto Rico Law 1-1966.

2.13.  Defendant **Governing Board of the University of Puerto Rico** ("Governing Board") is the governing body and representative of the University of Puerto Rico.

2.14.  Defendant **Walter Alomar Jiménez** is the President of the Governing Board of the University of Puerto Rico.

2.15.  Defendant **Zoraida Buxó Santiago** is the Vice-president of the Governing Board of the University of Puerto Rico.

2.16.  Defendant **Alejandro Camporreale Mundo** is a member of the Governing Board of the University of Puerto Rico.

2.17.  Defendant **Antonio Monroig Malatrassi** is a member of the Governing Board of the University of Puerto Rico.

2.18.  Defendant **Neftali Soto Santiago** is the Secretary of the Governing Board of the University of Puerto Rico.

2.19.  Defendant **Emilio Colón Beltrán** is a member of the Governing Board of the University of Puerto Rico.

2.20.  Defendant **Jorge Haddock Acevedo** is the President of the University of Puerto Rico (hereinafter "UPR President").

2.21.  Nominal Defendant **Mayra Olavarría Cruz** is a member of the Governing Board of the University of Puerto Rico that was elected by the University Board and has

consistently defended the rights of the retirees and the participants and beneficiaries of the University of Puerto Rico Retirement System.

2.22. Nominal Defendant **Alan Rodríguez Pérez** is a member of the Governing Board of the University of Puerto Rico that was elected by the University Board and has consistently defended the rights of the retirees and the participants and beneficiaries of the University of Puerto Rico Retirement System.

2.23. Nominal Defendant **Marysel Pagán Santana** is a member of the Governing Board of the University of Puerto Rico that was elected by the Student Body and has consistently defended the rights of the retirees and the participants and beneficiaries of the University of Puerto Rico Retirement System.

2.24. Nominal Defendant **Efraín Rodríguez Ocasio** is a member of the Governing Board of the University of Puerto Rico that was elected by the Student Body and has consistently defended the rights of the retirees and the participants and beneficiaries of the University of Puerto Rico Retirement System.

2.25. Defendant the **Financial Oversight and Management Board for Puerto Rico** ("Oversight Board") was created by Section 101(b)(1) of PROMESA, 48 U.S.C. sec. 2121(c)(1), to provide a method for Puerto Rico to achieve fiscal responsibility and access to the capital markets.

2.26. Nominal Defendant **University of Puerto Rico Retirement System** ("Retirement System") was a *de facto* trust since its creation on January 1, 1945. The trust was reaffirmed by Deed of Confirmation and Acknowledgment of Trust, Deed Number 58, executed on June 29, 2016 before Notary Public Luis Toro Suarez ("Deed of

Trust"). The Deed of Trust was executed pursuant to and in compliance Puerto Rico Law 219-2012, which governs trusts in Puerto Rico. Deed of Trust, Exhibit 1, pages 4-5

**3. Background and overview of relevant facts.**

3.1.   The Retirement System is a defined benefits pension plan for UPR professors and teaching personnel.

3.2.   The Retirement System is a trust, which constitutes an independent legal entity with legal personality and legal capacity. Law 219-2012 Section 2, as amended by Law 9-2017.

3.3.   The University of Puerto Rico is the settlor of the Retirement System and the Governing Board is the Original Trustee of the Retirement System. Deed of Trust, pages 1-2.

3.4.   According to the Deed of Trust, the Governing Board appointed the University of Puerto Rico Retirement System Board to oversee the Retirement System administration. Deed of Trust, page 3.

3.5.    The Retirement System, as a trust, is autonomous, and completely independent and separate from the individual estates of the settlor and the trustee. Law 219-2012, Section 2; Deed of Trust, Section 3.4, page 13.

3.6.   Pursuant to Puerto Rico law, through a trust, the property of its corpus and assets is irrevocably transmitted to the trustee and the beneficiaries. The property right is divided between the trustees and the beneficiaries. The trustees hold the property title as to the right to manage the estate and the beneficiaries hold the property right to obtain the benefits of the estate. *U.S. Fid. & Guar. Co. v. Guzman*, No. CIV. 10-1078 FAB/MEL,

2012 WL 4790314, at *5 (D.P.R. Sept. 20, 2012), report and recommendation adopted sub nom. *United States Fid. & Guar. Co. v. Cobian-Guzman*, No. CV 10-1078 (FAB), 2012 WL 12996294 (D.P.R. Oct. 5, 2012) ("As with Anglo-Saxon trusts, the Puerto Rican trust is 'characterized by an unfolding of the property law,' because '[t]he trustee is the owner of the legal title, whereas the beneficiaries have the equitable ownership.'") (quoting *Dávila v. Agrait*, 116 D.P.R. 549, 16 P.R. Offic. Trans. 674 (1985)). *Accord In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 582 B.R. 579, 597 (D.P.R. 2018) ("[A] trust divides ownership of property, placing legal title with trustee while the beneficiary enjoys an equitable interest.").

3.7.   Given that through the enactment of a trust, the property is irrevocably transmitted to the trust estate, the estate of the Retirement System is not property of the University of Puerto Rico. Law 219-2012 Sections 1 and 2; Deed of Trust, Section 3.4, page 13.

3.8.   Consequently, even though the Oversight Board exercises its oversight power over the University of Puerto Rico, the Retirement System lies outside the scope of its authority.

3.9.   The Oversight Board is precluded from including in the certified New Fiscal Plan for University of Puerto Rico of October 23, 2018 modifications to the Retirement System in detriment of the rights of the retirees, participants and beneficiaries.

3.10.   The Governing Board has neglected its fiduciary obligations by failing to procure the corresponding payments to the trust by the settlor, allowing the detriment of the economic stability of the trust, failing to protect the assets of the Retirement System

- 8 -

and the benefits of its members and allowing the Oversight Board to dictate the fate of the Retirement System without legal faculty to do so.

**4. The Financial Oversight and Management Board for Puerto Rico is precluded from including in the New Fiscal Plan for University of Puerto Rico of October 23, 2018 modifications to the Retirement System of the University of Puerto Rico.**

4.1.    The Puerto Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. §§ 2101-2241 ("PROMESA"), created the Oversight Board with the purpose to provide a method for Puerto Rico to achieve fiscal responsibility and access to the capital markets. PROMESA § 101(a).

4.2.    Regarding the oversight of territorial instrumentalities, "the Oversight Board, in its sole discretion at such time as the Oversight Board determines to be appropriate, may designate any territorial instrumentality as a covered territorial instrumentality that is subject to the requirements of" PROMESA. PROMESA § 101(d)(1)(A).

4.3.    "'[T]erritorial instrumentality' means any political subdivision, public agency, instrumentality—including any instrumentality that is also a bank—or public corporation of a territory". PROMESA § 5(19).

4.4.    At its first meeting on September 30, 2016, the Oversight Board designated the covered entities subject to oversight under the PROMESA.

4.5.    The list designates the University of Puerto Rico as a covered entity, but it does not designate the Retirement System as such. Given the trust nature of the Retirement System and its independency from the estate of the University of Puerto Rico,

it is not a territorial instrumentality, therefore, the Oversight Board cannot exercise its oversight power over it.

4.6.     This is in harmony with the known principle in bankruptcy proceedings, that the estate of a trust of which the debtor is a trustee, is not part of the debtor's bankruptcy estate. 11 U.S.C. § 541; *In re Brown*, 1994, 168 B.R. 331 (Bkrtcy.N.D.Ill.).

4.7.     In contrast, the list of covered entities includes other pension plans such as the Employees' Retirement System, the Judiciary Retirement System and the Teachers' Retirement System, which are pension system of the territorial government that have not operated as trusts. PROMESA Section 211 (a) provides for oversight of these pension plans. PROMESA § 211(a).

4.8.     There is not a statutory provision that confers the Oversight Board with the power to supervise the University of Puerto Rico Retirement System. Therefore, the Oversight Board lacks any power over the Retirement System.

4.9.     In obliviousness of the aforementioned, the Oversight Board has exercised its oversight faculties over the Retirement System.

4.10.   The New University of Puerto Rico Fiscal Plan at page 24, includes the Oversight Board's considerations regarding the Retirement System. The Oversight Board makes a finding that the approved forty (40) year plan of the Governing Board for amortizing the unfunded liability is not appropriate for ongoing plan, but possibly adequate for frozen plan with no future accruals.

4.11.   Furthermore, regarding the Retirement System, the Oversight Board recommends a reduction in benefits, a freeze in the pension, continuation of a Defined

Contribution plan similar to those of other Commonwealth plans and a reduction in accrued benefits.  Certified New Fiscal Plan for University of Puerto Rico of October 23, 2018, at page 24.

4.12.  Those recommendations constitute a manifest detriment to the rights and benefits of the participants of the Retirement System.

4.13.  The damage in this case is substantial and particular because the Retirement System includes several options for participants to pay voluntary sums of money in exchange for better and higher pension benefits as more particularly alleged in section 5, *infra*.

4.14.  In Puerto Rico, the legal rule enacted more than two decades ago regarding the modification to pension plans, states that after the beneficiary is eligible to receive its pension, the benefits cannot be modified. Before that, the pension plan can be modified only by reasonable measures that are necessary to promote the solvency of the system. *Bayrón Toro v. Serra*, 119 DPR 605 (1987). Only in those circumstances a modification to the benefits of a pension plan could survive a constitutional attack under the Contracts Clause. Article 1, Section 10, Const. EE. UU. It is an "eclectic approach" that allows the government to modify the systems in order to secure the solvency of the systems. *Bayrón Toro v. Serra*, 119 DPR 605, 623 (1987).

4.15.  In clear violation of this legal principle, the Oversight Board made a recommendation to reduce the benefits of the Retirement System without any actuarial or financial study to support it.

4.16.   The violation is even more severe when the participant voluntarily paid a significant amount of money in exchange for a better pension payment. In those cases, the participant has a superior property interest over that pension, because it was the object of an independent transaction solely over pension payments, not reliant on the terms of employment.

4.17.   Before *Bayrón*, only voluntary pension payments invested the employee with a right protected by the Contracts Clause. The doctrine was slowly modified until a property right was also recognized to employees and participants of a compulsory retirement plan. *Bayrón Toro v. Serra*, 119 DPR 605, 613-618 (1987).

4.18.   Therefore, the property right of an employee that voluntarily contributes to a pension plan is rooted in the most basic constitutional principles and does not rest on the doctrine regarding pension plans. The eclectic approach established on *Byron* is not entirely applicable in these cases.

4.19.   That is to say, when the employee has absolute power over the disposition of his money and voluntarily enters into a contract with the government by which he pays a certain amount in exchange for a certain pension, he has a property right over those monies.

4.20.   The scenario is even more extreme when, as in this case, the agreement signed by the employee, states that the obligation is irrevocable. University of Puerto Rico Discount Authorization, section 5.

4.21.   And all this in the context of a Deed of Trust, which is a real, legal, written and express contract, leaving out any doubt of the existence of a contract.

- 12 -

4.22.   The general doctrine regarding a violation of the Contracts Clause when the government modifies its own contractual obligations is that "an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. In applying this standard, however, complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake. A governmental entity can always find a use for extra money, especially when taxes do not have to be raised. If a State could reduce its financial obligations whenever it wanted to spend the money for what it regarded as an important public purpose, the Contract Clause would provide no protection at all." *U.S. Tr. Co. of New York v. New Jersey*, 431 U.S. 1, 25–26 (1977); *Trinidad Hernandez v. ELA*, 188 D.P.R. 828, 835 (2013).

4.23.   Hence, to sustain an impairment of the government contractual obligation the Court must evaluate the evidence and make an independent finding of real necessity.

4.24.   As stated before, the Oversight Board pretends to modify the benefits of the Retirement System participants without any actuarial or financial study to support it and notwithstanding the fact that the Financial Statements of the University of Puerto Rico show the capacity to comply with the actual financial obligation to the Retirement System. The modification constitutes a blatant violation of the constitutional rights of the participants of the Retirement System.

4.25.   In sum, the Oversight Board has no legal power to recommend changes or modifications to the Retirement System, in detriment of the benefits of the participants and in violation of their constitutional rights.

- 13 -

4.26.   Declaratory judgement decreeing null and void any involvement of the Oversight Board with the operation and benefits of the Retirement System is necessary. 28 U.S.C.A. § 2201.

4.27.   Also, injunctive relieve must be granted staying further involvement of the Oversight Board with the operation and benefits of the Retirement System. 28 U.S.C.A. § 2202; Fed.Rules Civ.Proc. Rule 65.

## 5. Plaintiffs have made significant mandatory and voluntary contributions to the Retirement System.

5.1.   To participate in the Retirement System, participants are compelled to make mandatory monthly contributions at the fixed percentage rate of their salary that was in place at the time of enrollment. Those compelled contributions are paid through automatic deductions from the participants' paychecks.

5.2.   The Retirement System establishes a maximum pension benefit that has increased over the years and a salary cap used to calculate the maximum monthly contributions that participants must make to the Retirement System and the monthly pension benefit that participants will receive upon retirement. The pension benefit to which participants are entitled is equivalent to 75% of the salary cap. That means that participants that earn salaries substantially higher than the salary cap will end up receiving pension benefits that can be a small fraction of their actual salaries.

5.3.   Every increase in pension benefits has a proportional increase in the salary cap and in the percentage of the salary that must be contributed by participants to the Retirement System. Participants can only receive the maximum benefits that were in

place at the time that they were enrolled and began to make monthly contributions to the Retirement System.

5.4.    Depending on the date of enrollment in the Retirement System, the pension benefits to which the participants will be entitled may have to be coordinated with the Social Security benefits. For those participants that are only entitled to coordinated pension benefits, the Retirement System will decrease or adjust the amount of the monthly pension benefits once they begin to receive Social Security benefits.

5.5.    However, the Retirement System has allowed participants to purchase, on a voluntary basis, higher benefits every time that the maximum benefits increase. The Retirement System also allows participants with coordinated benefits to purchase "supplementary benefits" that would ensure that their pension benefits will not be decreased or adjusted once they begin to receive Social Security benefits.

5.6.    To purchase the increased and/or supplementary benefits, participants, in general, and Plaintiffs, in particular, were required to retroactively pay the difference in the monthly contributions plus interest and certain penalties and to continue making the monthly contributions to the Retirement System at the increased rate. The Retirement System provided the option of financing those additional contributions through a monthly surcharge that is also paid through automatic deductions from the participants' paychecks on top of their regular monthly contributions.

5.7.    The Retirement System guaranteed participants that, if those voluntary additional payments were made, they would receive the increased and/or supplementary pension benefits upon retirement. At the time of purchase of those additional benefits,

participants and the Retirement System executed a series of documents that, among other respects, provided that the changes in salary cap and benefits and the increase in monthly contributions were "irrevocable" and "may not be altered once implemented".

5.8.   Each Plaintiff has paid all the mandatory monthly contributions upon enrollment in the Retirement System.

5.9.   Most of the Plaintiffs to this action, relying on the assurances made by the Retirement System, purchased additional and/or supplementary benefits as allowed by the Retirement System and have made the significant additional contributions that they have been required in order to obtain the guaranteed higher benefits.

5.10.   For example, Plaintiff Javier Córdova Iturregui began to work at the UPR in the year 1986 and became enrolled in the Retirement System that same year. At that time the salary cap for purposes of the Retirement System was $30,000.00 and the maximum monthly pension benefit that could be received at the time of retirement was $1,875.00. In 2002, Plaintiff Córdova Iturregui purchased supplementary and increased maximum pension benefits for a lump sum payment of approximately $12,000.00. Plaintiff Córdova Iturregui obtained the funds necessary to make the lump sum payment by refinancing his home. From the date that the lump payment was made and up to the present, he has made higher monthly contributions to the Retirement System. As a result, he is now entitled to receive, upon his retirement, a maximum pension benefit of $4,347.00 that will not be reduced once she starts to receive his Social Security retirement benefits.

5.11.  Plaintiff Yohana De Jesús Berríos also began to work at the UPR in the year 1986 and became enrolled in the Retirement System that same year. At that time the salary cap for purposes of the Retirement System was $35,000.00 and the maximum monthly pension benefit that could be received at the time of retirement was $2,049.38 if retired before age 65 and $1,639.00 thereafter. On or about May 15, 2009, she purchased, for $37,710.09, a supplementary benefit so that her monthly pension would not be reduced upon reaching her 65th birthday. She paid that amount through an additional surcharge over the increased monthly contributions that she made to the Retirement System, and her salary deduction was also increased from 5% to 7% of the monthly salary cap of $2,916.67. On or about July 10, 2012, Plaintiff Yohana De Jesús Berríos purchased increased pension benefits for the total amount of $66,832.96. She made a down payment of $35,000.00 at that time and financed the balance by paying to the Retirement System a surcharge over her increased monthly contributions; her monthly salary deduction also was increased from 7% to 9% of the new salary cap of $4,166.67. She recently retired from the UPR and is now receiving a monthly pension of $3,125.00, equivalent to 75% of the purchased annual salary cap, that will not be reduced once she starts to receive her Social Security retirement benefits. Her monthly pension benefits represent only 35% of the salary that she earned at the time of retirement.

5.12.  Plaintiff Annabell C. Segarra began to work at the UPR in the year 1978 and became enrolled in the Retirement System in 1980. At that time the salary cap for purposes of the Retirement System was $35,000.00 and the maximum monthly pension benefit that could be received at the time of retirement was $2,187.50 and would have

- 17 -

been reduced upon receipt of Social Security benefits. On or about 2009, Plaintiff Segarra purchased supplementary pension benefits so that they would not be coordinated with Social Security payments. In addition, she increased maximum pension benefits for a sum that exceeded $120,000.00, which included penalties and interest. Plaintiff Segarra obtained the funds necessary to purchase the supplementary and increased pension benefits by using her life-long savings and making a loan to the Retirement System.  From the date and up to the present, she has made higher monthly contributions to the Retirement System. As a result, she is now entitled to receive, upon her retirement, a maximum pension benefit of $4,312.50 that will not be reduced once she starts to receive her Social Security retirement benefits.

5.13.  Plaintiff Nydia E. Chéverez Rodríguez began to work at the UPR in the year 1987 and became enrolled in the Retirement System that same year. At that time, the monthly contributions to the Retirement System were 7% of the salary cap and the maximum monthly pension benefits that could be received at the time of retirement was $2,187.50. In 2001, Plaintiff Chéverez Rodríguez purchased supplementary and increased maximum pension benefits. To do so, she used approximately $10,000.00 of her savings and took a loan from the Retirement System of approximately $18,000.00. She also increased her monthly contributions to the Retirement System from 7% to 9% of her monthly salary up to the new salary cap of $50,000.00. On or about May 5, 2015 Plaintiff Chéverez Rodríguez purchased additional pension benefits for approximately $30,000.00. She financed the full amount with the Retirement System. Hence, since that date, she payed a monthly surcharge of $604.47 in addition to the higher monthly contributions to

the Retirement System, which increased from 9% to 11% of her salary up to the amount of the new salary cap. Plaintiff Chéverez Rodríguez retired from the UPR in February of 2017 and has since been receiving a monthly pension benefit of $4,347.28 that will not be reduced once she starts to receive her Social Security retirement benefits. She continues to pay the loan that she took to purchase the latest increase in benefits

5.14.   Plaintiff Frances M. Bothwell del Toro began to work at the UPR in the year 1974 and became enrolled in the Retirement System the following year, 1975. At that time the salary cap for purposes of the Retirement System was $32,500.00 and the maximum monthly pension benefit that could be received at the time of retirement was $1,902.10. On several occasions, Plaintiff Bothwell del Toro purchased supplementary and increased maximum pension benefits. The most recent purchase occurred in 2002 when she paid $12,000.00. Thereafter, Plaintiff Bothwell del Toro made monthly contributions to the Retirement System at a higher percentage of her salary (11%) until she retired in 2010. Since January 2011, she has been receiving a monthly pension benefit of $4,098.33 that has not and cannot be reduced by her Social Security retirement benefits.

5.15.   Plaintiffs would have never made the substantial voluntary and additional contributions necessary to purchase supplementary and/or increased pension benefits, as previously described, had they known that the Retirement System would not honor the guarantees that were extended to them at the time that they made the purchases, much less had they known that the Retirement System would be converted from a defined benefit pension plan to a defined contribution plan, particularly given the admonishments

made by Retirement System at the time of each purchase to the effect that the purchases of additional or supplementary benefits were irrevocable and could not be altered..

## 6. The Governing Board and the UPR President have not complied with their duties.

6.1.    The Governing Board of the University of Puerto Rico is the Original Trustee of the Retirement System.

6.2.    As the trustee the Governing Board has to comply with all the legal fiduciary obligations and the fiduciary obligations specified in the Deed of Trust.

6.3.    Law 219-2012 requires trustees to diligently administer the trust according to the deed and for the benefit of the beneficiaries. Law 219-2012, Sections 16 and 27.

6.4.    Additionally, Article III of the Deed of Trust obliges the trustee to administer the trust according to the requirements and dispositions stated therein.

6.5.    The University of Puerto Rico has failed to comply with its obligations under the Deed of Trust and Law 219-2012.

6.6.    The Governing Board has neglected its fiduciary obligations, failed to procure the corresponding payments to the trust by the settlor, allowed the detriment of the economic stability of the trust, and failed to protect the assets of the Retirement System and the benefits of its members.

6.7.    Furthermore, the Governing Board has neglected its fiduciary obligations allowing the Oversight Board to dictate the fate of the Retirement System without legal faculty to do so, failing to protect the assets of the Retirement System and the benefits of its members.

6.8.    Since December 2013, the actuary of the Retirement System, the firm
Cavanaugh McDonald, recommended a method of closed amortization of the University
Of Puerto Rico debt to the Retirement System for a period of thirty (30) years.

6.9.    The Governing Board selected a closed amortization of forty (40) years, and
enacted Certification 146 (2014-2015) accordingly.

6.10.   After the enactment of PROMESA, the Governing Board has submitted three
(3) versions of fiscal plans that were all rejected for non-compliance with the Oversight
Board Requirements. Certified New University of Puerto Rico Fiscal Plan of October 28,
2018, at page 5.

6.11.   Therefore, the Oversight Board moved forward to certify its own fiscal plan
for the University of Puerto Rico. Certified New University of Puerto Rico Fiscal Plan of
October 28, 2018, at page 5.

6.12.   In the meantime, on 2017, the audited Financial Statements of the
University of Puerto Rico for fiscal year 2015-2016 showed the capacity of the entity to
pay the current debt to the Retirement System of $6,323,555.00.

6.13.   The Retirement System Board requested the Governing Board of the
University of Puerto Rico to secure the payment of the debt. The Governing Board did
not make any significant effort to secure the payment.

6.14.   Then, on the first draft of the Fiscal Plan to be submitted to the Oversight
Board, the Governing Board of the University of Puerto Rico recommended a plan to
reduce the annual payments to the Retirement System in non-compliance with the closed
amortization plan established by the Governing Board in Certification 146 (2014-2015).

6.15.  Since then, the Governing Board has neglected its own decree included in Certification 146 (2014-2015) and has chosen not to comply with it.

6.16.  The Retirement System Board has actively inquired the Governing Board to comply with the payments through formal resolutions without any success, or even real acknowledgement from the Governing Board.

6.17.  On August 30, 2018 the Governing Board Enacted Certification 10 (2018-2019) creating the Office of Institutional Transformation of the University of Puerto Rico and empowered such office to transform the Retirement System, without the involvement or consent of the Retirement System Board.

6.18.  In the revised Fiscal Plan for the University of Puerto Rico published on September 10, 2018 and submitted to the Oversight Board, the Governing Board recommends the full payment of the employer contribution for years 2018-2023, but not the payment of the actuarial debt amortization plan established in Certification 146 (2014-2015) nor the payment of the amounts owed for years 2015-2017.

6.19.  At the moment, the amount owed to the Retirement System according to the amortization plan established on Certification 146 (2014-2015) is $1,456,091,923.00.

6.20.  The Governing Board has made no effort to secure the payment.

6.21.  Even worse, the Governing Board has not defended the Retirement System form the illegal intrusion of the Oversight Board in its affairs, to the extent of certifying a Fiscal Plan recommending the modification of the pension benefits in detriment of the rights of the members.

6.22.  In compliance with the Oversight Board's recommendation, the Governing Board has neglected its own decree contained in Certification 146 (2014-2015) and has stopped to comply with the forty (40) year amortization plan.

6.23.  Furthermore, the Governing Board secured the services of consultant BDO to make a comprehensive analysis for the Retirement System transformation in order to comply with the FOMB recommendations. The BDO Retirement System Project of December 14, 2018 is based on the UPR Certified Fiscal Plan and the FOMB expectations regarding the system. BDO Retirement System Project of December 14, pages 3, 7, 42-46.

6.24.  The Problem Scope section indicates in the Situation Statement that "[t]he UPR is covered by PROMESA and FOMB has expressed their preference for closing the Defined Benefit plan and moving to a Defined Contribution model [, a] comprehensive analysis is required to safeguard the best interest of all stakeholders to allow for a healthy transformation, balance fiscal health and UPR's competitive proposition to attract talent [and that v]iable alternative options may be developed and presented to the FOMB." BDO Retirement System Project of December 14, page 3.

6.25.  In order to justify the FOMB desired transformation of the Retirement System, the BDO Retirement System Project presents the current situation of the system with a negative cash flow of around six million dollars. BDO Retirement System Project, page 10.

6.26.  But the Retirement System Board has made an analysis of thirteen yearly audited financial statements that demonstrate that the Retirement System has sufficient net assets to comply with the pension payment and cover all the administrative expenses.

6.27.  Also, in the BDO Retirement System Project, the system is compared to the government Employment Retirement System that was less than 1% funded to explain the FOMB policy and the desired reduction in benefits. BDO Retirement System Project of December 14, 2018, page 46. There is no rational comparison.

6.28.  The structure of the Retirement System is solid. Even more, the system has experienced significant capital gains on its investment portfolio in recent periods that exceed the industry averages.

6.29.  The only real problem of the Retirement System's financial stability is the non-compliance of the UPR with the corresponding payments to the system and the failure of the Governing Board and the UPR President to comply with their obligations to secure the funds to which the UPR is entitled pursuant to the laws of the Commonwealth of Puerto Rico.

6.30.  Now, to evade those obligations, the Governing Board, in accordance with the FOMB, is misrepresenting the financial reality of the Retirement System and portraying it as a weak system that must be transformed, all to the detriment of Plaintiffs' rights.

6.31.  Additionally, the Governing Board and the UPR President have neglected to demand from the Commonwealth of Puerto Rico the funding to which the University of Puerto Rico is entitled pursuant to the formula set forth in Law 2-1966, which aggravates

the University's fiscal health and further jeopardizes the University's ability to comply with the payment and amortization plan set forth in Certification 146 (2014-2015)

6.32.   Declaratory judgement decreeing that the Governing Board cannot obey the instructions of the Oversight Board regarding the Retirement System is necessary. 28 U.S.C.A. § 2201.

6.33.   Likewise, injunctive relieve must be granted staying further compliance of the Governing Board with the instructions of the Oversight Board regarding the Retirement System. 28 U.S.C.A. § 2202; Fed.Rules Civ.Proc. Rule 65.

6.34.   Accordingly, payment in compliance with Certification 146 (2014-2015) must be ordered forthwith. 28 U.S.C.A. § 2202.

6.35.   In addition, pursuant to Law 219-2012, Section 45, the University of Puerto Rico must repay any loss or depreciation of trust property and any profit made by trustee resulting from the breach of fiduciary duties of the Governing Board, and any profit that would have accrued to the trust property if there had been no breach of trust.

6.36.   Also, pursuant to Law 2019-2012, Section 55, the University of Puerto Rico must return with interest the amounts transferred to it in breach of trust by the Governing Board when it overlooked a debt to the trust without the consent of the beneficiaries.

6.37.   Furthermore, the actions of the Governing Board are a blatant violation of its duties and responsibilities as the Trustee of the Retirement System because it has not secured the payments due to the Retirement system, has not stopped the actions of the Oversight Board to modify the pension benefits of the Retirement System in detriment of the rights of its members, and has acted consistent with the Oversight Board instructions.

- 25 -

6.38.  The actions of the Governing Board require its removal as trustee of the Retirement System, according to Law 2019-2012, Section 38.

6.39.   As stated by Section 5.1 of the Deed of Trust, and permitted by Law 219-2012, Section 38, the Retirement System Board must be appointed as trustee of the Retirement System.

6.40.  Additionally, the Governing Board and the UPR President must be ordered to secure compliance with Law 2-1966. 28 U.S.C.A. § 2202.

## 7.  Prayer for relief

WHERFORE, Plaintiffs respectfully request the Honorable Court to:

7.1.   enter a Declaratory Judgment decreeing that any oversight act by the Oversight Board in relation to the University of Puerto Rico Retirement System is null and void;

7.2.   grant injunctive relief staying any involvement of the Oversight Board with the operation and benefits of the Retirement System;

7.3.   enter a Declaratory Judgment decreeing that the Governing Board cannot obey the instructions of the Oversight Board regarding the Retirement System;

7.4.   grant injective relieve staying further compliance of the Governing Board with the instructions of the Oversight Board regarding the Retirement System;

7.5.   order the Governing Board to comply with Certification 146 (2014-2015);

7.6.   order the University of Puerto Rico to repay any loss or depreciation of trust property and any profit made by trustee resulting from the breach of fiduciary duties of the Governing Board, and any profit that would have accrued to the trust property if there

had been no breach of trust, and return with interest the amounts transferred to it in breach of trust by the Governing Board;

7.7. remove the Governing Board as trustee of the Retirement System;

7.8. appoint the Retirement System Board as successor trustee of the Retirement System;

7.9. order the Governing Board and the UPR President to secure compliance with Law 2-1966; and

7.10. grant any other and further relief as may be deemed just and proper.

In San Juan, Puerto Rico, this 16th day of April, 2019.

*S/Guillermo Ramos Luiña*
GUILLERMO RAMOS LUIÑA
USDC-PR 204007
gramlui@yahoo.com

P. O. Box 22763, UPR Station
San Juan, PR 00931-2763
Tel. (787) 620-0527
Fax (787) 620-0039

*Attorney for Plaintiffs*