```
 1              IN THE UNITED STATES DISTRICT COURT

 2                FOR THE DISTRICT OF PUERTO RICO

 3


 4       * * * * * * * * * * * *
         In re:                    *
 5                                 *
                                   *
 6       THE FINANCIAL OVERSIGHT  *    PROMESA
         AND MANAGEMENT BOARD      *    Title III
 7       FOR PUERTO RICO           *
                                   *    Case No. 17-bk-03283(LTS)
 8          as representative of   *
                                   *
 9       THE COMMONWEALTH OF       *
         PUERTO RICO, et al.       *
10                                 *
            Debtor.                *
11                                 *
         _____  *
12       In re:                    *
                                   *
13       THE FINANCIAL OVERSIGHT  *    PROMESA
         AND MANAGEMENT BOARD      *    Title III
14       FOR PUERTO RICO           *
                                   *    Case No. 17-bk-03566(LTS)
15          as representative of   *
                                   *
16       THE EMPLOYEES RETIREMENT*    Re:  ECF No. 367
         SYSTEM OF THE             *
17       COMMONWEALTH OF           *
         PUERTO RICO,              *
18                                 *
            Debtor.                *
19       * * * * * * * * * * * *

20

21          BEFORE THE HONORABLE JUDITH G. DEIN

22                    MAGISTRATE JUDGE

23                      (Conference)

24            **TRANSCRIPT FROM AUDIO**

25
```

1      **APPEARANCES**:

2      (by telephone)
       Geoffrey S. Stewart, Esq.,
3      Matthew E. Papez, Esq.,
       Sparkle L. Sooknanan, Esq.,
4      David Fox, Esq.,
       Jones Day,
5      on behalf of the Movants;

6      (by telephone)
       Cheryl Tedeschi Sloane, Esq.,
7      White & Case LLP,
       on behalf of the Bondholders;
8
       (by telephone)
9      William J. Sushon, Esq.,
       Madhu Pocha, Esq.,
10     O'Melveny & Myers LLP,
       on behalf of AAFAF and ERS;
11
       (by telephone)
12     William D. Dalsen, Esq.,
       Proskauer Rose LLC,
13     on behalf of the Respondents;

14     (by telephone)
       Nicholas Bassett, Esq.,
15     Paul Hastings LLP,
       on behalf of the Official Committee of Unsecured
16     Creditors;

17     (by telephone)
       Landon Raiford, Esq.,
18     Jenner & Block LLP,
       on behalf of the Retirement Committee.

19

20

21

22

23

24

25

1    12 APRIL 2019 -- 4:45 P.M.

2              THE CLERK:  Counsel, this is Courtroom 15, the

3    Clerk -- Courtroom Clerk for Judge Dein.

4              Could counsel please identify themselves for the

5    record, please.

6              MR. STEWART:  Sure.  For Movants and Jones Day,

7    it's Geoffrey Stewart, Matt Papez, Sparkle Sooknanan,

8    and David Fox is on in Boston.

9              MR. SUSHON:  And this is Bill Sushon from

10   O'Melveny & Myers.  With me on the line is my

11   colleague, Madhu Pocha, for AAFAF in its own right as

12   well as AAFAF, as representative for the Commonwealth

13   and ERS.

14             MR. DALSEN:  Good afternoon.  This is

15   William Dalsen from Proskauer Rose, here on behalf of

16   the Oversight Board.

17             MR. BASSETT:  And Nicholas Bassett from

18   Paul Hastings on behalf of the Official Committee of

19   Unsecured Creditors on the line as well.

20             MS. SLOANE:  Good afternoon.  Cheryl Sloane from

21   White & Case on behalf of the Bondholders.

22             MR. RAIFORD:  Landon Raiford, Jenner & Block, on

23   behalf of the Retiree Committee.

24             THE COURT:  All right.  I believe that's

25   everyone.  I'm going to ask Stephanie to officially

1    call the case.

2           THE CLERK:  The United States District Court for

3    the District of Massachusetts is now in session, the

4    Honorable Judge Dein presiding.  Today is Friday,

5    April 12th, 2019.  The matter, In Re: The Financial

6    Oversight and Management Board for Puerto Rico, as

7    representative of the Employees' Retirement System of

8    the Government of the Commonwealth of Puerto Rico,

9    Bankruptcy Case No. 17-3566 will now be heard.

10          THE COURT:  Okay.  We'll incorporate the roll

11   call that we just went through.  This is Judge Dein

12   speaking, and thank you all for working late on a

13   Friday.  And we're here on the motion for immediate

14   status conference.

15          Basically, I don't know if we'll deal with it

16   substantively or if it makes the most sense to just set

17   up a schedule from this, but have you guys had a chance

18   to talk since the papers were filed?

19          MR. STEWART:  No, we have not, Your Honor.

20          THE COURT:  Okay.  So let me ask -- I see the

21   objections, and the objections that have been filed

22   obviously very promptly do say, you know, there's room

23   for discussion here.  My sense is that it probably

24   makes some sense to have some conversation about this

25   today but to basically give you a chance to confer over

1   the next few days.

2          My immediate reaction, for what it's worth, and

3   you can make this a subject of conversation, but if

4   there was a fuller understanding of how items got

5   grouped, it would fundamentally answer a lot of the

6   questions because there's clearly an overlap in the

7   dates in the different entries, and it's unclear why

8   the documents were put together the way they were, and

9   I think that may answer a lot of the questions that

10  exist.  Again --

11          MR. STEWART:  Your Honor, I --

12          THE COURT:  Yeah, go ahead.

13          MR. STEWART:  This is Geof Stewart.  And I agree

14  very much with that because I think that there's kind

15  of overgrouping here.  The log I think has -- what? --

16  seven overall groups.  Each one -- I've looked at a

17  few, I don't have them all tabulated.  Most of them,

18  the ones I've looked at, have dozens and dozens of

19  recipients and senders, usually over a hundred

20  documents, three or four areas in descriptions, I mean,

21  and anywhere from two to four different privileges.

22          And what the net result of it is, because so

23  much is grouped together, it's very hard to identify

24  any particular document as to which a claim of

25  privilege would be challenged or tested.  For example,

1    there are no dates given for any document.  The date

2    ranges are about seven months for each of these

3    baskets.  There's no Bates numbers, so there's no way

4    even of identifying particular documents.

5         We don't know if every privilege applies to

6    every document or not.  We don't know, on cases where

7    it's attorney-client privilege, who's copied who may

8    not be an attorney.  Some of the people listed as

9    recipients or senders not only are not lawyers but

10    don't work for a law firm.

11         So if it could somehow be broken down to more

12    categories than seven and there would be some kind of

13    more granular description, I think it would be more

14    helpful.  The difficulty we have now looking at this is

15    there is simply no way, with this log, to make use of

16    it in a motion to compel on privilege.

17         I can't, with what I have, say on Category 1,

18    Here are some documents I'd like to have looked at.  I

19    don't even know how I would describe a document to the

20    Court.  There is simply no way for me even to do that.

21    So it has to be either a thumbs up/thumbs down on a

22    whole category, but that doesn't work because I don't

23    have enough information to even approach it, which is

24    why, given what we have here, which is 509 documents,

25    we thought that we actually, with two caveats, which

1    I'll get into, go to a document-by-document log because

2    I don't think the number is now so great as to make

3    that an unreasonable burden.

4        The two caveats, though, are these:  I think

5    where the train went off the tracks had to do with the

6    definition of "category" in a categorical log.  As I've

7    always understood it, a category would be where you

8    had, say, two people corresponding back and forth with

9    one another for a week or two or a month about a

10   particular topic, and the category would be emails

11   between Alice and Bob between March 1 and April 15 on

12   the subject of whatever it is.  And those need not be

13   broken out because we know exactly who wrote them, we

14   know when it was, we know the subject, so there's no

15   need for additional work to do that.  And I would have

16   certainly no objection to that kind of categorization.

17   I think it makes sense.

18       Similarly, and here's the second caveat, where

19   there's claims of attorney-client privilege, a document

20   written by a lawyer in one of the law firms I will be

21   the first to agree has a presumption of privilege to

22   them.  And maybe there's a way of doing this so those

23   could be done in a categorical way to limit burden.  On

24   the other hand, when you get back to the deliberative

25   privilege and the executive privilege, those are quite

1 different because those also require, for each

2 document, identification of what is the decision in

3 question and who was the decider as well, even more,

4 what the date is because it has to be predecisional and

5 how much before the decision or even after the decision

6 would be relevant.

7   So just -- I'm sorry to be so long-winded, but I

8 think it is the overbreadth of the categories and the

9 lack of specificity within them that is our problem

10 here, and I don't know, other than imposing on the

11 Court for an in-camera review or something like that,

12 how we get through it but the generality of what we're

13 now having to wrestle with.

14   THE COURT:  So let me ask whoever is

15 knowledgeable about how the categories were actually

16 decided to address that.

17   MR. SUSHON:  Your Honor, this is Bill Sushon

18 from O'Melveny & Myers.  Good afternoon.

19   The categories are decided in the way that they

20 are described, so they are broken down into documents

21 that concern ongoing litigation with ERS bondholders,

22 documents -- and that's not a deliberative process

23 group; that's simply an attorney-client privilege and

24 work product group.

25   There's documents that concern pension-reform

1    proposals, including converting to pay-go, the pay-go

2    fee structure, et cetera, that are strictly

3    attorney-client privilege, attorney work product and

4    common-interest documents, that's the second category.

5        Then the third category is where we get into

6    things that are out -- that are concerning the

7    implementation-treatment calculation, invoicing and

8    collection of pay-go fees, which is a different

9    category yet.

10        So if you look at the categories, that's

11    describing how they were grouped.

12        Now, the Movants here I think fundamentally have

13    buyer's remorse, their having agreed to a categorical

14    privilege log.  They, at the outset, wanted us to do a

15    document-by-document log and then, in the course of the

16    motion to compel briefing, agreed that we could do a

17    categorical log.  Now they're not happy with the

18    categorical log, and rather than meeting and conferring

19    with us properly so that we could flesh out some of

20    their concerns, that yesterday they emailed us and

21    demanded a meet-and-confer in a two-hour window late in

22    the afternoon.

23        We asked them -- we agreed to do the

24    meet-and-confer.  They said they wanted to do it about

25    the privilege log, but when they were asked to give

1       some inkling of what the issues were, they wouldn't

2       until we got on the call.  Then, during the course of

3       the call, they identified a few genetic concerns, that

4       we didn't have the document type listed in the

5       privilege log, that things just weren't detailed

6       enough, but they couldn't really give any specifics and

7       then demanded that we turn around a new privilege log

8       within an hour or they would go to Your Honor.

9           So we did our best last night to address the

10      concerns that they expressed that we could address.  We

11      gave them the appendix with the identifying information

12      for the individuals listed on the log; we gave them

13      information concerning the document type; we gave them,

14      you know, information concerning which documents had,

15      prior to the log, been designated as confidential and

16      privileged.  So we did that, and we said, We'll meet

17      and confer with you further.  They didn't take us up on

18      that; they just ran straight to Your Honor.

19          So, you know, this is not yet something that is

20      ripe for consideration.  We can talk about ways that

21      they think it would be useful for us to try to break

22      down these categories further.  We're open to that,

23      Your Honor.  We're happy to have that discussion with

24      them.  They just simply haven't been willing to have it

25      with us as yet.  Instead, they ran into Court before we

1    could even finish our discussion.

2             MR. STEWART:  Well, actually, I don't know,

3    Bill, if you were on that call, but I was.  I don't

4    agree with how you characterize it, and I don't think

5    buyer's remorse is a fair way to put it.  And I'm not

6    interested in pointing fingers or getting personal

7    about any of this.

8             I think, though, the bottom line is a simple

9    one.  This privilege log is useless.  No one on this

10   call can imagine how on earth you would mount a motion

11   to compel based on this log.  And at our last hearing,

12   we raised -- we thought we had great specificity in

13   what was supposed to be in the log.  We understood from

14   counsel that they knew what was supposed to be there,

15   and we would get something that let us go forward.

16            In terms of running into Court, Monday is when

17   this motion is due.  That is when Judge Swain directed

18   the motion to be filed, and we felt it was appropriate

19   to take Judge Dein up on her offer or her suggestion we

20   come to her, which is why we did it, because I don't

21   know what we were supposed to do with a Monday deadline

22   on this motion with a log that cannot be used.

23            THE COURT:  So let me -- I think that's always a

24   problem when we have these shortened deadlines, and it

25   always adds a lot of pressure to everyone, and I do

1    think there's room to meet and confer.

2          But let me ask you this as a practical matter:

3    The attorney-client claims here, it seems to me, if

4    you're going to object to them, we have a description

5    of the documents, your real objection is whether you

6    can actually have a claim of attorney-client with these

7    many different clients; right?  I mean, that's

8    fundamentally your objection to that.  You're not

9    objecting to one document versus another.

10         It seems to me that there are not that many

11   documents for which either the deliberative process or

12   the executive privilege is claimed, and perhaps just to

13   simplify this and not send you out over the weekend to

14   talk in circles, it may be easier if I just say to you,

15   for those claims of privilege, you need to do it

16   document by document, it does not look to me like

17   that's a lot of documents, and that the attorney-client

18   can stay the way it is subject to further discussions

19   if you have it.

20         But I don't know how much more information you

21   get out of a more detailed attorney-client claim here.

22   If you recognize -- if you're not objecting that the

23   subject matter of the claim could be an attorney-client

24   issue, then you are -- they have identified that there

25   are attorneys involved in the communications.  I'm not

1    sure how much more information on those claims of

2    privilege you need to bring your challenge.  I don't

3    want to preclude discussion on that among yourselves if

4    you feel that that makes sense, but to the deliberative

5    process and executive privilege, I believe you really

6    have only a few documents there that have claimed those

7    privileges.

8          So does that make sense, to just itemize those

9    separately?

10          MR. STEWART:  It makes sense to us.  On the

11    attorney-client side, the main issue that we had there

12    is that the -- we've been -- we understand that it's

13    attorneys from one Government agency purporting to

14    serve as attorneys for another Government agency,

15    including sometimes situations where the very two

16    agencies have directly opposing interests and that, in

17    that circumstance, there can't be a privilege for

18    obvious reasons.

19          THE COURT:  All right.  But that's --

20          MR. STEWART:  However --

21          THE COURT:  You have enough information in this

22    log to bring that claim.

23          MR. STEWART:  Okay.  Well, let's -- sure.  I

24    mean, I'd have to dig further, but we can certainly try

25    to do it based on the record in this log.

1        THE COURT:  Well, the record here, as I'm

2    reading it, identifies the categories of clients who

3    are participating in the communications.  So I think

4    you can -- it's fair to say that you're assuming that

5    the documents grouped in these categories went to more

6    than one of the clients that are listed.  And you can

7    raise your claim, and I'm assuming the response will

8    not be, Oh, it didn't go to anybody else, but we think

9    it was a common interest, or whatever the defense will

10   be.  But I think that issue can be teed up with the log

11   as it is now.

12       MR. STEWART:  Okay.

13       THE COURT:  Mr. Sushon?

14       MR. SUSHON:  Your Honor, with respect to

15   document-by-document logging for executive privilege

16   and deliberative process, I believe that that is

17   something that we should be able to do.  As you point

18   out, it is only I think approximately 130 or so

19   documents.  So we'll endeavor to get that done.

20       MR. STEWART:  Okay.

21       THE COURT:  So I think that that covers

22   really -- that enables everybody to bring their claims

23   by Monday.  I would like the bulk of the motions to

24   compel on Monday.  I don't know how long it's going to

25   take you to update your log.  If you need to supplement

1    and file on Tuesday or whatever to deal with an updated

2    privilege log, that's fine.  But I think that those two

3    changes -- I think that one change, actually, the

4    itemization of the documents for which you claimed

5    deliberative process over executive privilege should be

6    sufficient to bring the motions to compel.

7         MR. STEWART:  Okay.  We also, Your Honor, wanted

8    to raise the issue about how we still don't have any

9    documents from the Board, and we're told we're not

10   going to get any until Sunday, and we're told that

11   we're not even sure when that privilege log is coming

12   in.

13        There seems to have been a belief that the

14   directions to the Board were not sufficiently concrete.

15   I'm not interested in revisiting any of that, but I

16   would like an order from the Court directed at the

17   Board, under Rule 37, saying, You must produce your

18   documents, and you must produce your log, and you

19   should start doing the documents now, and you have a

20   deadline to complete this of whatever the date's going

21   to be because, when it comes to the Board, we can't do

22   anything because we literally have not gotten a single

23   sheet of paper, and we don't even have a promised

24   delivery date on a log.

25        MR. DALSEN:  Your Honor, Good afternoon.

1          THE COURT:  Mr. Dalsen, is that -- who's here?

2          MR. DALSEN:  Yes.  Good afternoon, Your Honor.

3     This is William Dalsen from Proskauer on behalf of the

4     Oversight Board.

5          Your Honor, so when it comes to the documents

6     from the Oversight Board, I want to state the

7     conclusion first, but then I want to go in to some of

8     the detail.  So the first is the -- you know, we do not

9     believe, and of course I understand we're speaking to

10    the Court right now, but we did not believe and we do

11    not believe that we were ordered to produce documents

12    by April 10th or to complete a document production by

13    April 10th.  That's the first point.

14         But the second point, which is very important as

15    a practical matter, is that the Oversight Board has

16    been taking its obligation to respond to the subpoena

17    very seriously, and I want to describe the progress

18    that we've made in doing so.

19         As the Court ordered, we met and conferred with

20    the Movants beginning after the hearing.  We reached an

21    agreement as to search parameters last Thursday.  Part

22    of that negotiation involved an increase in the number

23    of custodians from four to eight custodians.  We

24    originally proposed four.  The Movants requested eight.

25    After preparing our searches and looking at the number,

1    which that total number of non-duplicative, direct-hit

2    documents ended up being 7,466 documents, we agreed to

3    those search parameters that would require us to review

4    those direct-hit documents.  At no point during that

5    discussion and at no point during our discussion

6    leading up to the filing of the joint status report on

7    April 5th did the parties discuss a completion date for

8    discovery from the Oversight Board.

9         From that Thursday evening, April 4th, until

10   this past Tuesday, which is -- what was that now? -- I

11   believe the 9th, in that basically four-and-a-half-day

12   period, the Oversight Board completed its first-level

13   review of those 7,466 documents.  We are continuing our

14   review now, which involves quality control, obviously,

15   and also a second-level review, including a substantive

16   evaluation of which privileges may or may not apply and

17   also preparing a log in accordance with the Court's

18   guidance at the hearing and of course on this call.

19        We are moving along.  We are not introducing any

20   delay whatsoever into this process.  The fact that we

21   have -- that we worked over the weekend to review that

22   number of documents at a first-level review very

23   quickly I would submit shows that we are taking this

24   very seriously, and we are moving as expeditiously as

25   possible.  We anticipate, just to give you a "where are

1    we now," we anticipate that we will be at least halfway

2    through our second-level review by this coming Tuesday.

3    We still anticipate making a production on Sunday, the

4    14th.  As we have said, the Movants -- I believe last

5    week we began to say that to them, and we also

6    confirmed that to them on April 8th, this past Monday,

7    so we are still going to be making a first production

8    on the 14th.

9         We are moving along as quickly as we possibly

10   can to evaluate this level of documents on a very

11   expedited time schedule, and I believe that next week,

12   after we are better into our second-level review, we

13   will have a much better idea of when we can commit to a

14   date certain to complete our document production and

15   also to produce a privilege log.

16        MR. STEWART:  Your Honor, I think you can see

17   why we wanted to speak with you.  We were very

18   surprised to learn that the Board did not think it was

19   subject to the April 10 production date and in fact was

20   of the view that somehow the instructions that had been

21   given to the Board were not -- didn't have the binding

22   effect we thought they did.  What we're now hearing,

23   though, is we're not going to get very much of anything

24   any sooner than Tuesday, and that's just a second-level

25   review being done on Tuesday --

1    THE COURT:  Well, no.  I heard that there's

2    going to be a production on Sunday, the 14th.

3    MR. STEWART:  Yeah.  Well, I don't think it's

4    going to be a very big one.  And when do we get the log

5    from the Board?

6    THE COURT:  So my memory, without reviewing the

7    log, was that there was a recognition that the

8    Oversight Board had not yet conducted its -- any

9    search -- well, it had done some search for documents,

10   but it was not formal in response to the requests and

11   that the meet-and-confer was supposed to deal with the

12   number of custodians and the search terms and the like,

13   which is what happened.

14   So I don't recall the April 10th -- I remember

15   April 10th being aspirational.  I'm not sure that it

16   was set in stone for the Oversight Board because the

17   search had not gone on as long as it had with the

18   others.  That's my memory, but I'll be honest with you,

19   I haven't gone back and listened to the transcript, and

20   I would prefer not to.  I hate listening to myself

21   almost as much as I hate reading my transcripts.

22   They're on my least favorite list of things to do.

23   What if we do that the production needs to be a

24   rolling production?  So there'll be a production on the

25   14th, hopefully another one on the 16th.  You know, you

1    need to roll it.  Can you aim for at least a

2    substantive privilege log -- I don't know what holidays

3    people, I don't want to interfere with anybody's

4    holiday -- the 19th?  Is that a problem to give at

5    least the beginnings of a privilege log, recognizing

6    that it may not be complete at that time?

7         MR. DALSEN:  Your Honor, this is William Dalsen

8    again.

9         I believe that is something we can do, at least

10   we can produce.  I can't promise a complete log, but I

11   think we can give something.  I do know that at least

12   some people that are staffed on this matter are

13   observing Passover and also observing -- and others are

14   observing Easter, but I think we can get something to

15   the Movants, and from there at least we'll have

16   something to look at, and hopefully we can address any

17   threshold concerns they have with the log itself once

18   they receive that.

19        MR. STEWART:  Yeah.  And by the way, Judge, on

20   the log from the Board, I assume we'll have the same

21   rule with respect to document by document as to

22   predecisional and executive privilege claims, that that

23   was going to be the rule.

24        THE COURT:  I think that will be the rule,

25   unless you appear that there's thousands that fit into

1     that category so that you want dispensation from it.

2     But, otherwise, that's the assumption --

3            MR. STEWART:  Okay.

4            THE COURT:  -- that for those categories,

5     they'll be item by item.

6            For the attorney-client and attorney work

7     product claims, again, you're going to need the list of

8     characters, their roles.  I mean, all of that makes it

9     easier to read and meaningful.  So I think, to the

10    extent that there's been the meet-and-confer and

11    tweaking of what needs to be included in the log up

12    until now, that the Board will take those directives

13    and apply it to the log that the Board's going to

14    produce; okay?

15           What I see, then, is we'll see where we are at

16    the Omni on the Oversight Board production.  If it's

17    not ripe for review or if we can't really get into the

18    nitty-gritty, we can certainly have hearings in Boston

19    promptly thereafter.

20           MR. STEWART:  Okay.  All right.

21           Your Honor, two other housekeeping matters.  One

22    is, since our motion will be due on Monday, we need to

23    have some certitude coming from the ERS side on when

24    we'll get the log because we have to read it, and of

25    course we have to prepare motion papers with respect to

1    it and the motions to compel due and that being fairly

2    factually driven, is there agreement on when we can

3    expect to see the new revised log?

4            MR. SUSHON:  Your Honor, this is Bill Sushon

5    from O'Melveny.

6            Your Honor had suggested that the Movants could,

7    if necessary, supplement their motion to compel.  It

8    doesn't have to be done Monday.  We don't want to hold

9    up their motion to compel.  I just -- I don't know

10   exactly what's involved in getting those 120 documents

11   or so broken out, so I'm loath to agree to a specific

12   deadline, but you know, we will endeavor to get it to

13   them by Sunday afternoon, and if for some reason that's

14   presenting a problem, we will let them know.

15           MR. STEWART:  Well, you know, this Sunday is

16   also a holiday, Judge, but why don't -- perhaps I would

17   just suggest we be given one more day to file our

18   motion to compel so that we don't end up on the short

19   end of things, you know, given all the circumstances,

20   that we can keep the rest of the dates as they are.

21           THE COURT:  I don't have a problem with that.  I

22   just wonder if it makes sense to divide it into two, if

23   it makes sense to do the attorney-client because you

24   already have that, to do that by the 15th and then to

25   do the other deliberative process one, I'll call it,

1    kick that 24 hours.

2          MR. STEWART:  Okay.  Your Honor, if that's how

3    you want it done, that's what we will do.

4          THE COURT:  You know, if you tell me it's not

5    workable, it's not going to be the end of the world one

6    way or the other; it just may be easier that way --

7          MR. STEWART:  Yeah.

8          THE COURT:  -- so we can get started.

9          MR. STEWART:  I think we could do it either way.

10   Actually, their biggest issue I see is just the

11   confusion of having more than one -- you know, a motion

12   to compel with two different sets of papers, but that's

13   really more of a burden on the Court than anybody else.

14         THE COURT:  I appreciate it, but given the

15   number of filings in this case, it's the least of the

16   issues.

17         MR. STEWART:  But while we're on that subject,

18   we also think that we ought to have the same page

19   limits that the parties had last time, especially now

20   that our brief would be bifurcated.  I think that the

21   basic rule is 15 pages.  Last time I think we had 35,

22   and I think we'll need that much this time too, with

23   the understanding that would be 35 spread over those

24   two sets of motions, the Monday motion and the Tuesday

25   motion, not 35 for each motion.

1          THE COURT:  I don't have a problem with that.

2     Does anybody?

3          MR. SUSHON:  Your Honor, this is Bill Sushon --

4     I'm sorry.  Go ahead, Will.  You go ahead.

5          MR. DALSEN:  Apologies, Bill.

6          So, Your Honor, this is William Dalsen again

7     from Proskauer.

8          I, in principal, don't have an issue with that,

9     although I just want to make sure that I understand the

10    request that's being made as to whether this is --

11    whether Mr. Stewart is seeking an extension -- or

12    excuse me -- an enlargement of the number of pages just

13    as it pertains to privilege motions or if he also

14    intends to file other motions to compel where he's also

15    asking for enlarged pages -- enlargement of page

16    numbers as to them as well.

17         MR. STEWART:  I'm talking about the papers we're

18    filing on Monday and Tuesday, and I -- actually, I

19    don't think we'll be moving to compel against the Board

20    since we will not by then have enough to move at all.

21    So this would really be, I think, the two motions, the

22    Monday motion and the Tuesday motion, directed to the

23    productions by ERS, AAFAF and the Commonwealth.

24         MR. DALSEN:  I see.  In that case -- again, this

25    is William Dalsen for the Oversight Board.

1          In that instance, I don't have an issue with

2     that, Your Honor.

3          THE COURT:  Okay.  So, as I understand it,

4     there's basically going to be two motions to compel,

5     one on the attorney-client-privilege-related issue and

6     attorney work product and the second being on

7     deliberative process and executive privilege.  The

8     total number of pages for the moving parties there

9     would be 35 divided however you want.

10          MR. STEWART:  Okay.

11          MR. SUSHON:  Your Honor.

12          THE COURT:  Yeah.

13          MR. SUSHON:  I'm sorry.  This is Bill Sushon

14     from O'Melveny.

15          I just -- I would like to ask the Court, first,

16     if we could then have until -- since they are going to

17     have until Tuesday for the deliberative process motion,

18     if our opposition to that could be due Friday.  It

19     would otherwise be due Thursday.

20          And then, secondly, I'm not sure if I'll need it

21     or not, but rather than have to burden the Court with

22     another motion, if we could have a like number of pages

23     for our opposition.

24          MR. STEWART:  Certainly no problem with the like

25     number of pages, Your Honor, but I am troubled -- the

1    problem with pushing the opposition response is that it

2    basically gives us from close of business on Good

3    Friday to over the Easter weekend to prepare our reply.

4    I think -- and I'm sorry if I sound self-righteous

5    here, but the reason we were being put to having to do

6    this on Tuesday is that the privilege log we have to

7    deal with, in our view, we should never have been in

8    this state to begin with, so we don't really think it's

9    fair to us that that comes out of our time and our

10   schedules, and we're not the party that produced the

11   log that way.  But if you want to do it --

12           THE COURT:  Okay.  Let's be practical, though.

13   So on Wednesday, there's going to be a response to the

14   Monday filing, so can we do close of business Thursday

15   to the Tuesday filing?  How's that?

16           MR. SUSHON:  Your Honor, we have until Thursday

17   at 3:00 p.m. to oppose the current --

18           THE COURT:  Oh, for both of them?

19           MR. SUSHON:  Right.  That was --

20           THE COURT:  Okay.

21           MR. SUSHON:  Well, there was only going to be

22   one.  You know, now I guess it would be both.  You

23   know, if we could even have until Friday morning, I

24   think it would be helpful for us.  And that would just

25   be for the deliberative-process motion.

1        THE COURT:  So I'm sorry.  So you would still do

2    the attorney-client one on Thursday and the

3    deliberative process one by Friday morning?

4        MR. SUSHON:  That's correct, Your Honor.

5        THE COURT:  Okay, do that.

6        MR. STEWART:  Okay.  And could we have opening

7    of business Friday, since we're going to have our work

8    cut out for us over that weekend?

9        THE COURT:  I'll be very honest with you, I am

10    not going to read it on Passover, so --

11        MR. STEWART:  I was worried more about -- with

12    all due respect, I'm worried more about me than you,

13    Your Honor.

14        THE COURT:  Right.  So it doesn't -- I guess

15    it's my kind way of saying that it doesn't matter to

16    me.  If it doesn't come in by Friday sort of

17    mid-afternoon, it's not going to get looked at till

18    Sunday, so I don't care if you want to file it on

19    Saturday, but that's as between the two of you.  I

20    mean --

21        MR. STEWART:  Well, actually --

22        THE COURT:  Or you want to file it Monday?  Is

23    that what you're saying?

24        MR. STEWART:  Well, I think our reply is due

25    Monday.  I'm worried about not getting the papers we're

1   replying to until too late in the day on Good Friday

2   or --

3          THE COURT:  I think he said Friday morning.

4          MR. STEWART:  Yeah, Friday morning is fine, I

5   said.  My point was I'd like it as early as possible

6   Friday morning because we have to get to work literally

7   the minute the paper comes to us because of our own

8   schedules involving Good Friday and Passover and

9   Easter.

10         MR. SUSHON:  And, Your Honor, this is

11  Bill Sushon from O'Melveny.

12         I had suggested 10:00 a.m. as the time on Friday

13  by which we would serve our opposition on the

14  deliberative-process motion.

15         THE COURT:  That works for me.  You got it.

16         MR. STEWART:  Okay.  And then could we have

17  until the end of the day on the 22nd for our replies?

18  I think, under the existing schedule, they're due at

19  noon.

20         MR. SUSHON:  That's fine with us, Your Honor.

21  Bill Sushon from O'Melveny.

22         MR. STEWART:  Okay.

23         THE COURT:  That's fine.

24         MR. DALSEN:  And for the Oversight Board, I --

25  and for the Oversight Board, William Dalsen, I have no

1    objection to that.

2          THE COURT:  Okay.  So let's do that.  The

3    Oversight Board is still a little bit in limbo here.

4    So it's going to be rolling, it's going to be -- you're

5    going to have as much of a privilege log as possible by

6    the 19th; is that what I said?  Somebody here is taking

7    notes.

8          MR. DALSEN:  Yes, Your Honor.

9          THE COURT:  So what do we need to do?  So I need

10   you to meet and confer and at least provide a status

11   report by the 23rd?

12         MR. SUSHON:  Okay.

13         THE COURT:  Like, so we can talk about it on the

14   24th.  I'm not sure that we'll be able to rule on

15   anything on the 24th, but at least on the 23rd, if you

16   can file a joint status report by midday on the 23rd,

17   by noon --

18         MR. SUSHON:  Okay.

19         THE COURT:  -- then I can see if I need to put

20   it somewhere on the agenda or if we just don't deal

21   with it at all and just address it in Boston after the

22   Omni.  Does that make sense?

23         MR. STEWART:  Yeah, it does, Your Honor.  That's

24   fine.

25         MR. SUSHON:  Yes.

1          MR. STEWART:  I mean, there's the logistical

2    issue that I think it's right now scheduled that we

3    would all go down to San Juan for it, and I'm always

4    welcoming a trip to San Juan, but if it seems more

5    likely that it would slip in a day or two and be in

6    Boston, just in terms of travel and logistics, that's

7    probably something we ought to consider, although maybe

8    it's premature to do it on this call.

9          THE COURT:  All right.  Well, why don't you all

10   talk.  Let me just -- I'll put it on the record that I

11   don't have an objection to not dealing with this at the

12   Omni and that I am prepared to deal with it the

13   following week, especially since my trial just settled

14   that was going on the following week, so now's a good

15   time to get me that week.

16         MR. STEWART:  Okay.

17         THE COURT:  Why don't you let me know what you

18   think makes most sense as fitting in -- I'm going to

19   keep the schedule that I just spit out about when

20   everything is due.  If you guys offline come up with a

21   different schedule because you don't want it heard

22   at -- you don't need it heard at the Omni, that's fine.

23   If it needs to be heard at the Omni, though, we need to

24   stick with the schedule.

25         MR. STEWART:  Okay.

1          THE COURT:  Okay?

2          MR. SUSHON:  Understood, Your Honor.  Thank you.

3          MR. DALSEN:  Thank you, Your Honor.

4          THE COURT:  All right.  Hold on for one minute.

5     Let me just see if there's something else I need to

6     deal with.

7          All right.  The Clerk's Office in Puerto Rico is

8     closed.  Do you need an order from me tonight, or have

9     you all written down what you need to know?

10         MR. STEWART:  I think we're okay, Judge.

11    Probably what we'll do is one side or the other will

12    send a letter memorializing what we believe to be the

13    case, and if there's a disagreement, I'm sure that'll

14    be corrected quickly.

15         THE COURT:  Okay, let's do it that way.

16         And, again, if you agree to a different

17    schedule, I'm okay with that --

18         MR. STEWART:  Okay.

19         THE COURT:  -- all right?  But assume, then, it

20    will be heard the week after -- it will be heard the

21    week of the 29th --

22         MR. STEWART:  Okay.

23         THE COURT:  -- in Boston.

24         MR. STEWART:  All righty.  Thank you,

25    Your Honor.

1          THE COURT:  Okay.  Anything further?

2          MR. STEWART:  I think that's all we had.

3          THE COURT:  All right.  Then I'm not going to

4     ask twice.  Have a good weekend, everyone.

5          MR. STEWART:  Thanks.

6          MR. SUSHON:  Thank you, Your Honor.

7          MR. DALSEN:  Thank you, Your Honor.  You too.

8          (Adjourned 5:26 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2          C E R T I F I C A T I O N

3

4

5

6

7

8

9          I, Debra D. Lajoie, RPR-FCRR-CRI-RMR, do

10   hereby certify that the foregoing pages are a true and

11   accurate transcription of my stenographic notes (from

12   audio) in the above-entitled case.

13

14

15

16

17

18               /s/ Debra D. Lajoie

19

20

21

22

23               4/17/19

24

25