**Hearing Date and Time:** April 18, 2019 at 2:00 p.m. (Atlantic Standard Time)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS TO THE URGENT JOINT MOTION FOR ENTRY OF ORDER APPROVING STIPULATION AND AGREED ORDER BY AND AMONG FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ITS SPECIAL CLAIMS COMMITTEE, AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS RELATED TO JOINT PROSECUTION OF DEBTOR CAUSES OF ACTION**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Ad Hoc Group of General Obligation Bondholders (the "GO Group")[2] hereby submits this Objection to the *Urgent Joint Motion for Entry of Order Approving Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action* (Dkt. No. 6305, the "Urgent Motion"), filed by the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), the Special Claims Committee of the Oversight Board (the "Special Claims Committee"), and the Official Committee of Unsecured Creditors (the "UCC," and together with the Oversight Board and the Special Claims Committee, the "Joint Movants").

**ARGUMENT**

**A. The Urgent Motion Should Be Denied Because It Does Not Articulate Any Valid Ground For Entry Of The Requested Relief**

1. Through their Urgent Motion, the Joint Movants seek approval of a Stipulation and Approved Order (Dkt. No. 6305-1, the "Stipulation") that would grant a dramatic and unprecedented form of relief: An order granting the UCC blanket approval, on a sight-unseen basis, to pursue as-yet unspecified avoidance causes of action in the name of the Commonwealth of Puerto Rico (the "Commonwealth")—either on its own or as co-plaintiff with one of the other Joint Movants. See Urgent Motion ¶ 7; Stipulation ¶ 3.

2. The Joint Movants primarily contend (at Stipulation ¶ 3) that appointment of the UCC as co-trustee and co-plaintiff is warranted under the standard articulated by the Second Circuit in *Commodore International Ltd. v. Gould (In re Commodore International Ltd.)*, 262 F.3d 96 (2001). There, the Second Circuit held that "[a] creditors' committee may acquire standing to

---

[2] Members of the GO Group file this objection exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

pursue the debtor's claims if (1) the committee has the consent of the debtor in possession or trustee, **and** (2) the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *Id.* at 100 (emphasis added) (quoting *In re Spaulding Composites Co.*, 207 B.R. 899, 904 (B.A.P. 9th Cir. 1997)).

3. In partial recognition of the governing standard, the Stipulation calls for a finding by the Court that appointment of the UCC as co-trustee and conferral of co-plaintiff status "is (i) in the best interests of the Debtors and their respective property and (ii) necessary and beneficial to the efficient resolution of these cases." Stipulation ¶ 3.[3] Neither the Urgent Motion nor the Stipulation, however, provides any legal or factual basis for such a conclusion. To the contrary, the Joint Movants appear to assume that their agreement, standing alone, is a sufficient basis for appointment of the UCC as trustee and conferral of plaintiff status. See Urgent Motion ¶ 7 (noting that the "Stipulation establishes an agreed upon framework" for litigating contemplated avoidance actions). But that is precisely the standard that the Second Circuit *rejected* in *Commodore International*, by requiring not only the debtor's consent but also a judicial determination "that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and

---

[3] The Stipulation is facially deficient insofar as it fails to include any similar findings with respect to the appointment of the UCC as sole trustee and conferral of sole plaintiff status. Moreover, even with respect to those proceedings that the UCC would bring on a joint basis, the Stipulation omits the finding required by *Commodore International* that the conferral of standing upon the UCC be necessary and beneficial to the "fair" resolution of these Title III cases. Compare *Commodore Int'l*, 262 F.3d at 100 ("'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings") (quoting *Spaulding Composites*, 207 B.R. at 904), with Stipulation ¶ 3 ("necessary and beneficial to the efficient resolution of these cases"). In any event, for the reasons stated above, the Joint Movants have failed to offer any factual or legal basis for these omitted findings.

2

beneficial' to the fair and efficient resolution of the bankruptcy proceedings." 262 F.3d at 100 (quoting *Spaulding Composites*, 207 B.R. at 904).

4. The Second Circuit emphasized that its standard "provid[es] bankruptcy courts with *significant authority* both to manage the litigation and to check any potential for abuse by the parties." *Commodore Int'l*, 262 F.3d at 100 (emphasis added); see also *id.* at 99-100 ("[A] debtor in possession may stipulate to representation by an unsecured creditors' committee '[s]o long as the bankruptcy court exercises its judicial oversight and verifies that the litigation is indeed necessary and beneficial.'") (quoting *Spaulding Composites*, 207 B.R. at 904) (second alteration in original). But this Court cannot possibly fulfill its oversight responsibility on the basis of the non-existent showing offered by the Joint Movants here. To state the obvious, the Court cannot determine whether litigation would be in the best interests of the Debtors and would promote the fair and efficient resolution of these Title III cases without knowing what litigation is contemplated. But the Joint Motion is entirely silent on that score.

5. Moreover, there is no conceivable basis for appointing the UCC to pursue litigation on behalf of the Commonwealth on a *joint* basis, as co-trustee and co-plaintiff. The Joint Motion cites no precedent to support that novel form of relief. And by definition, such proceedings are ones that would be brought by the Oversight Board or the Special Claim Committee even absent the UCC's participation. In that scenario, the UCC's participation will lead only to unnecessary duplication of efforts and increased expenses that will be paid from the Commonwealth's resources—precisely the sort of waste and duplication that has predominated in these cases as the Oversight Board has ceded to the UCC an ever-increasing share of control over its litigation agenda. That result is not "in the best interest" of the Commonwealth, and it is not "'necessary

3

and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *Commodore Int'l*, 262 F.3d at 100 (quoting *Spaulding Composites*, 207 B.R. at 904).

6. Indeed, these Title III cases have become a litigation frenzy of appalling proportions. Based on the Oversight Board's projections last fall, the people of Puerto Rico were already expected to bear more than $2 billion of restructuring-related professional fees. That number will surely increase by hundreds of millions of dollars as a result of the massive amount of litigation being launched by the Oversight Board and/or the UCC this year. What is more, these staggering amounts do not include the corresponding legal fees that are being forced upon the Commonwealth's bona fide creditors to respond to the Oversight Board's and UCC's litigation campaigns. If ever there were a case for the Court to avoid duplication of effort and unwarranted litigation ventures by estate-paid lawyers run amok, this is it.

7. Finally, the Joint Movants are also incorrect in contending (at Stipulation ¶ 3) that appointment of the UCC is warranted under Section 926 of the Bankruptcy Code. As a textual matter, Section 926 authorizes appointment of a trustee only when "the debtor *refuses* to pursue a cause of action" under the Code's avoidance provisions. 11 U.S.C. § 926(a) (emphasis added). It cannot justify appointment of a "co-trustee" to pursue causes of action that the Oversight Board has *agreed* to pursue. Moreover, as to those causes of action that the UCC would pursue on a sole basis, Section 926 requires "the requesting creditor . . . to present a substantial showing, both factual and legal, of the likelihood of the existence of a voidable transfer." 6 *Collier on Bankruptcy* ¶ 926.02[4] (16th ed. 2019). The Joint Movants have not even identified the causes of action that the UCC intends to pursue, let alone made the substantial showing required by Section 926. There is thus no basis at this time for the Court to appoint the UCC as a trustee under Section 926.

4

\* \* \*

8. To be clear, with respect to the causes of action that the Oversight Board has consented to the UCC bringing as sole plaintiff, the GO Group's objection is procedural. The UCC must make the showing required to justify bringing litigation on behalf of the Commonwealth, and the Oversight Board's consent does not obviate the need for appropriate judicial oversight. The GO Group does not mean to suggest that it would oppose litigation being brought upon a proper showing by the UCC. In fact, it is impossible to know what position the GO Group would take, precisely because the Joint Motion fails to provide the information that would normally be disclosed in support of such a request. The GO Group may well determine to support the initiation of some or all of the contemplated litigation once it has been provided with the requisite information.

### B. If The Court Is Inclined To Grant The Urgent Motion, The Stipulation Should Be Modified To Protect The Rights Of Other Parties In Interest

9. Even if the Court is otherwise inclined to grant the Urgent Motion, the Stipulation should be modified in several important respects in order to protect the rights of other parties in interest, including the GO Group, who are not parties to the Stipulation.

#### 1. The UCC Should Be Required To Justify Its Appointment To Pursue Particular Causes Of Action On Behalf Of The Commonwealth

10. To the extent that any conceivable ground can be discerned for the Joint Movants' decision to seek such unprecedented and consequential relief on a highly compressed timeframe, it necessarily rests on the approaching expiration of the deadline for commencing actions under Section 546(a) of the Bankruptcy Code. See Joint Motion ¶ 2. That claimed exigency—created by the inaction of the Oversight Board and the UCC—is not a valid ground for dispensing with due process and the substantive standards that protect the Commonwealth from unnecessary expenses by governing the conferral of litigation authority on the UCC, as discussed above. But

5

even if the Joint Movants' oblique reference to the hypothetical possibility that causes of action are at risk of being extinguished had some merit, it would justify only an order authorizing the UCC to participate in the *initiation* of litigation on behalf of the Commonwealth. That step would suffice to ensure that such causes of action are preserved for the benefit of the Commonwealth and its creditors.

11. Upon the initiation of any litigation in which the UCC acts on behalf of the Commonwealth—either a co-plaintiff or sole plaintiff—the UCC should be required to file a motion, on ordinary notice to all parties in interest, seeking affirmative authorization to continue its litigation role. The burden should be placed on the UCC to demonstrate that its continued pursuit of a particular cause of action "is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." *Commodore Int'l*, 262 F.3d at 100 (quoting *Spaulding Composites*, 207 B.R. at 904). At that time, when the parties and the Court will know what causes of action are at issue, the Court will be positioned to make the required determination.

12. Because the UCC has failed to make that showing at this time, basic logic dictates that it should be required to do so promptly after it initiates litigation on the Commonwealth's behalf, if not (as would be more appropriate) before. By the same token, all parties in interest should have an opportunity to contest the UCC's showing at that time. The Court should decline the Joint Movants' invitation to curtail the substantive and procedural rights of parties in interest (and basic due process) by treating a determination made on a highly compressed timeframe and

without disclosure of the causes of action at issue as conclusive of the UCC's right to litigate on the Commonwealth's behalf.[4]

### 2. The Oversight Board's Statutory Powers And Rights Should Not Be Transferred To The UCC

13. Paragraph 13 of the Stipulation provides that, in connection with actions that the UCC pursues as sole plaintiff, the UCC "shall have the same statutory rights to access information as the Oversight Board." Stipulation ¶ 13. That reference is unclear, but it appears to refer to the Oversight Board's powers under PROMESA to obtain information from the federal government and the Puerto Rico government, from creditors, and/or by subpoena. See 48 U.S.C. § 2124(c), (d), (f).

14. Paragraph 16 of the Stipulation provides that the protections set forth in Section 105 of PROMESA, 48 U.S.C. § 2125, shall apply to the UCC and its professional advisors with respect to actions taken in good faith pursuant to the Stipulation.

15. These provisions should be struck from the Stipulation because the Joint Motion does not offer any basis for concluding that the Oversight Board's statutory powers and rights may be transferred to the UCC in this manner.

---

[4] The Stipulation contains provisions granting the Oversight Board or Special Claims Committee the right to seek to terminate the UCC's role as co-plaintiff or sole plaintiff, by motion and upon a showing of good cause. See Stipulation ¶¶ 8, 13. Those provisions are insufficient, however, for two reasons. First, they are restricted to the Oversight Board and the Special Claims Committee, and do not extend to all parties in interest. Second, they inappropriately load the dice by treating the UCC's continued prosecution of an action as the presumptive outcome, which may be overcome only by a showing of good cause. As explained above, the burden should be on the UCC to justify its continued prosecution of a cause of action under the standard articulated in *Commodore International, supra*.

### 3. The Settlement Rights Of All Parties In Interest Should Be Preserved

16. Paragraphs 12 and 13 of the Stipulation provide the Oversight Board and Special Claims Committee with overarching settlement authority, but go on to state that the UCC "reserves any and all rights under applicable law to object or otherwise respond to any settlement proposed by the Oversight Board or the Special Claims Committee, which this Court will consider for approval pursuant to Bankruptcy Rule 9019 (whether in connection with a plan of adjustment or otherwise)." Stipulation ¶¶ 12-13.

17. These specific references to the UCC's reservation of its rights to object or respond to any settlement agreed to by the Oversight Board or Special Claims Committee could arguably give rise to a negative implication that the rights of other parties in interest are not so preserved. Such a negative implication would plainly be inappropriate. The GO Group therefore respectfully requests that the Stipulation be modified to make clear that the objection rights of *all* parties in interest are reserved with respect to the settlement or compromise of all causes of action governed by the Stipulation.[5]

### CONCLUSION

The Urgent Motion should be denied. At a minimum, the Stipulation should be approved only with the modifications proposed herein.

---

[5] In making this request for modification of the Stipulation, the GO Group does not concede that the currently proposed language would appropriately be read as affecting the settlement-related rights of other parties in interest. The GO Group respectfully submits, however, that the better course is to clarify the Stipulation's language, simply for the avoidance of any conceivable doubt. The GO Group specifically reserves all rights to object or otherwise respond to a proposed settlement or compromise of any of the causes of actions governed by the Stipulation (whether as part of a plan of adjustment or on a standalone basis).

Dated: April 17, 2019

/s/ Ramón Rivera Morales
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
Andrés F. Picó Ramírez
USDC-PR Bar No. 302114
JIMÉNEZ, GRAFFAM & LAUSELL
P.O. Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

Respectfully submitted,

/s/ Mark T. Stancil
Mark T. Stancil
Gary A. Orseck
Kathryn S. Zecca
Donald Burke
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Email: lrobbins@robbinsrussell.com

/s/ Andrew N. Rosenberg
Andrew N. Rosenberg
Karen R. Zeituni
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
Email: arosenberg@paulweiss.com

*Counsel to the Ad Hoc Group of General Obligation Bondholders*