# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO *et al.*,<br><br>    Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION AND RESERVATION OF RIGHTS OF ASSURED GUARANTY CORP. , ASSURED GUARANTY MUNICIPAL CORP., FINANCIAL GUARANTY INSURANCE COMPANY, AND AMBAC ASSURANCE CORPORATION TO THE URGENT JOINT MOTION FOR ENTRY OF ORDER APPROVING STIPULATION AND AGREED ORDER BY AND AMONG FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ITS SPECIAL CLAIMS COMMITTEE, AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS RELATED TO JOINT PROSECUTION OF DEBTOR CAUSES OF ACTION**

Assured Guaranty Corp., Assured Guaranty Municipal Corp., the Financial Guaranty Insurance Company, and Ambac Assurance Corporation (collectively, the "Objectors") hereby submit this objection and reservation of rights to the *Urgent Joint Motion For Entry Of Order Approving Stipulation And Agreed Order By And Among Financial Oversight And Management Board, Its Special Claims Committee, And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Debtor Causes Of Action* (ECF No. 6305) (the "Motion"). In support hereof, the Objectors respectfully state as follows:

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's Federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico ("Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 04780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **RESPONSE AND RESERVATION OF RIGHTS**

1. The Commonwealth and HTA Title III cases are now nearly two years old. During all that time, FOMB has made absolutely no progress towards the negotiation of a consensual restructuring that would allow the Commonwealth and certain of its instrumentalities to reduce their obligations, while re-accessing the capital markets. This stands in stark contrast to the City of Detroit's chapter 9 case—one of the most complex and litigious municipal restructurings in our nation's history—where, after two years, the City had entered into settlements with most of its major creditors and had proposed a plan of adjustment that had the support of a large swath of creditors.

2. Rather than pursue this sensible goal, FOMB and the UCC have instead chosen to engage in a scorched earth litigation strategy. The Motion and the stipulation attached thereto (the "Stipulation") seek to continue that litigation frenzy. It seeks to appoint the Committee and FOMB as co-trustees to pursue certain unspecified causes of action on behalf of unspecified Title III debtors against unknown defendants. Even though the statutory deadline driving this motion has been known for a full two years, creditors have been given less than 24 hours to review and respond to the Motion and the Stipulation. This is a substantive motion—it is not, for example, merely a motion to extend a deadline.[2] Given the substantive ramifications, creditors should be given more time to review and respond to the Motion.

3. As the First Circuit has recognized, "notice is the cornerstone underpinning Bankruptcy Code procedure." *In re Savage Indus.*, 43 F.3d 714, 720 (1st Cir. 1994). These notice requirements are not in the Bankruptcy Code and Bankruptcy Rules for window dressing—they are "founded in fundamental notions of procedural due process." *Id.* at 721; *cf. In re Muessel*, 292

---

[2] This is not the first time that FOMB has filed an "urgent" substantive motion based on a fictional emergency that it created. *See* Case No. 17-04780-LTS, ECF Nos. 549, 557; Case No. 17-03283-LTS, ECF No. 6143.

-2-

B.R. 712, 717-18 (BAP 1st Cir. 2003). In light of the inadequate notice provided to parties in interest, the Court should deny the Motion. Alternatively, at a minimum, the Court should strike from the Stipulation the language stating that the Stipulation "SHALL BE ORDERED AND BINDING ON ALL PARTIES IN INTEREST," as such parties in interest did not have a meaningful opportunity to analyze and be heard in relation to the Motion.

4. Moreover, the Stipulation and Motion are entirely vague as to what causes of action are subject to the Stipulation. Both papers fail even to attach documents referenced within the Stipulation, including certain schedules. The Stipulation also references "Initial Causes of Action" for other Title III Debtors, even though avoidance actions belonging to such Debtors should not be governed by the Stipulation, for the reasons discussed below. The Stipulation also purports to appoint the Committee as "sole" plaintiff and "sole" trustee over other, unspecified adversary proceedings. *See* Stipulation ¶ 13. And the Stipulation appears to be premised on the unfounded belief that the UCC has standing to move to appoint a trustee under Section 926(a) of the Bankruptcy Code, a provision that only confers standing on *creditors*, not committees and parties-in-interest. 11 U.S.C. § 926(a).[3] By contrast, section 1104 of the Bankruptcy Code permits *parties-in-interest* to seek the appointment of trustees. *Id.* § 1104. In light of these deficiencies, it is impossible to fully assess the merits of the Motion at this juncture. But even so, there is

---

[3] Separate from the UCC not itself constituting a "creditor," 11 U.S.C. 101(10), there is also an open question as to whether the UCC can adequately represent all unsecured creditors as "trustee" in this case, particularly given the general deficiency of the UCC's Rule 2019 statements in this case, which do not adequately summarize the disclosable economic interests of its members. ECF No. 1050-1, 4028. For example, these 2019 statements do not disclose the nature and amount of claims held by SEIU and the American Federation of Teachers, and what debtors those entities hold claims against. This is significant because it appears that the UCC is entirely dominated by those unions, who do not appear to hold any "claims," and who have themselves never filed 2019 statements disclosing who they represent and the nature and extent of their claims. Those unions appear to be acting to advance their national agenda, not to act as a fiduciary to the unsecured creditors in this case. Given the opacity of these 2019 statements, further inquiry into the true nature of the UCC and its purported constituency is required, and expedited consideration of this Stipulation is completely unwarranted.

already reason to doubt that the Committee even has standing to pursue trustee motions and its ability to serve as trustee.

5. Separately, the Stipulation and Motion disclose that the UCC and FOMB intend to enter into similar stipulations granting the UCC the right to serve as trustee for avoidance actions belonging to other Title III Debtors, including specifically HTA and PREPA. Stipulation ¶ 19. The appointment of the UCC as a trustee for HTA and PREPA would be entirely improper.

6. HTA and its creditors hold substantial causes of action against the Commonwealth and certain of its instrumentalities on account of the illegal diversion of excise taxes assigned to HTA and its creditors by Commonwealth law. Because FOMB and the UCC have both actively supported this diversion of revenues, and because FOMB and AAFAF have admitted that this diversion has rendered HTA insolvent and unable to pay its creditors (not merely bond claims), it would be manifestly inappropriate for the UCC, FOMB, or the Special Claims Committee to serve as plaintiffs or co-trustees with respect to such causes of action. These entities indisputably suffer from debilitating conflicts of interest that call into question how they could even pursue claims by HTA against the Commonwealth. As just one of many possible examples, the UCC—which indisputably is dominated by entities with putative claims against the Commonwealth[4]—cannot be expected to take a position on the Commonwealth's diversion of HTA revenues and whether such a diversion is avoidable. The Commonwealth constituents surely support this diversion of revenues—indeed, that is why the UCC has acted as the FOMB's ally on the issue. HTA creditors, by contrast, would prefer that these revenues be returned to HTA for satisfaction of HTA's obligations, including HTA's expenses and the claims of any unsecured

---

[4] *See*, *e.g.*, Verified Statements of Official Committee of Unsecured Creditors, ECF No. 1050-1, 4028. Only one constituent, Genesis Security, purports to hold claims against HTA, and those claims in the aggregate total only $1 million. However, Genesis Security's alleged claims against the Commonwealth are at least double the size of its alleged claims against HTA.

HTA creditors, who may be paid from the recovered revenues after these revenues have flowed through the waterfalls in the applicable bond indentures. Given this clear conflict of interest, the UCC and FOMB cannot properly serve as a trustee with respect to HTA's avoidance claims against the Commonwealth. Rather, the trustee for HTA's avoidance actions must either consist of one or more HTA creditors or of some other third-party entity that is free from the conflicts of interest that cripple FOMB and the UCC in these Title III cases. Pending the appointment of proper trustees for HTA, PREPA, and other Debtors than the Commonwealth, all references to such non-Commonwealth Debtors should, at a minimum, be stricken from the Stipulation, including from paragraphs 5 and 19.

7. In addition to the potential conflict issue, the entire Stipulation is unnecessary. The Special Claims Committee *is* the FOMB, as it is a subset of FOMB that has been delegated authority to prosecute claims. FOMB does not need Court approval to enter into tolling agreements or to commence litigation before statutes of limitations expire. The UCC may be a co-plaintiff either by agreement or by intervention. The UCC does not need to be a trustee to be a co-plaintiff with the Special Claims Committee. The sole purpose of the Stipulation, therefore, appears to be to appoint the UCC trustee with respect to the Subject Claims that the Special Claims Committee declines to bring. However, as detailed earlier, there is no indication in the Motion as to what those claims are, whether cause exists to appoint a trustee to pursue those claims, or whether the UCC is a qualified or appropriate trustee to pursue the subject claims. One might have expected we would have learned those facts if the UCC had actually filed a Section 926 motion on all of these causes of action (rather than those subject to the motion that it filed this morning), but the Stipulation is an attempt to end run Section 926 and its requirements. Because the Motion represents an improper effort to circumvent the requirements of Section 926, it should be denied.

8. The Motion and Stipulation contemplate that FOMB and the Committee will seek court approval for other Title III debtors, including HTA and PREPA, at a later date. We reserve all rights with respect to such future motions. But the inherent conflicts possessed by the FOMB and the Committee infect the relief sought in this Motion, as well. In light of the inadequate notice that FOMB and the UCC provided to all stakeholders regarding the Motion, the Objectors further reserve the right to incorporate or join in any other objections, responses, or reservations of rights concerning the Motion and Stipulation filed by any other creditors, stakeholders, or parties in interest.

Dated: April 17, 2019
New York, New York

CASELLAS ALCOVER & BURGOS P.S.C.

/s/ *Heriberto Burgos Pérez*
Heriberto Burgos Pérez
USDC-PR No. 204,809
Ricardo F. Casellas-Sánchez
USDC-PR No. 203,114
Diana Pérez-Seda
USDC–PR No. 232,014
E-mail: hburgos@cabprlaw.com
rcasellas@cabprlaw.com
dperez@cabprlaw.com

P.O. Box 364924
San Juan, PR 00936-4924
Tel.: (787) 756-1400
Fax: (787) 756-1401

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

CADWALADER, WICKERSHAM & TAFT LLP

/s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William Natbony*
Ellen M. Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, New York 10281
Tel.: (212) 504-6000
Fax: (212) 406-6666
Email: howard.hawkins@cwt.com
mark.ellenberg@cwt.com
bill.natbony @cwt.com
ellen.halstead@cwt.com
thomas.curtin@cwt.com
casey.servais@cwt.com

* admitted pro hac vice
*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

REXACH & PICÓ, CSP

/s/ *María E. Picó*
María E. Picó
USDC-PR 123214
802 Ave. Fernández Juncos
San Juan PR 00907-4315
Telephone: (787) 723-8520
Facsimile: (787) 724-7844
E-mail: mpico@rexachpico.com

*Counsel for Financial Guaranty Insurance Company*

BUTLER SNOW LLP

/s/ *Martin A. Sosland*
Martin A. Sosland (*pro hac vice*)
5430 LBJ Freeway, Suite 1200
Dallas, TX 75240
Telephone: (469) 680-5502
Facsimile: (469) 680-5501
E-mail: martin.sosland@butlersnow.com

Stanford G. Ladner (*pro hac vice*)
1700 Broadway, 41st Floor
New York, NY 10019
Telephone: (646) 606-3996
Facsimile: (646) 606-3995
E-mail: stan.ladner@butlersnow.com

|  |  |
|---|---|
|  | Christopher R. Maddux (*pro hac vice*)<br>J. Mitchell Carrington (*pro hac vice*)<br>1020 Highland Colony Parkway, Suite 1400<br>Ridgeland, MS 39157<br>Telephone: (601) 985-2200<br>Facsimile: (601) 985-4500<br>E-mail: chris.maddux@butlersnow.com<br>mitch.carrington@butlersnow.com |
|  | Jason W. Callen (*pro hac vice*)<br>150 3rd Avenue, South, Suite 1600<br>Nashville, TN 37201<br>Telephone: (615) 651-6774<br>Facsimile: (615) 651-6701<br>E-mail: jason.callen@butlersnow.com |
|  | *Counsel for Financial Guaranty Insurance Company* |
| **FERRAIUOLI LLC** | **MILBANK, TWEED, HADLEY & McCLOY LLP** |
| By: /s/ *Roberto Cámara-Fuertes*<br>Roberto Cámara-Fuertes (USDC-PR No. 219002)<br>Sonia Colón (USDC-PR No. 213809)<br>221 Ponce de León Avenue, 5th Floor<br>San Juan, PR 00917<br>Telephone: (787) 766-7000<br>Facsimile: (787) 766-7001<br>Email: rcamara@ferraiuoli.com<br>        scolon@ferraiuoli.com | By: /s/ *Atara Miller*<br>Dennis F. Dunne<br>Andrew M. Leblanc<br>Atara Miller<br>Grant R. Mainland<br>(admitted *pro hac vice*)<br>55 Hudson Yards<br>New York, NY 10001<br>Telephone: (212) 530-5000<br>Facsimile: (212) 530-5219<br>Email: ddunne@milbank.com<br>        aleblanc@milbank.com<br>        amiller@milbank.com<br>        gmainland@milbank.com |
| *Attorneys for Ambac Assurance Corporation* | *Attorneys for Ambac Assurance Corporation* |

## **CERTIFICATE OF SERVICE**

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case. Further, I directed that the following counsel of record be served by U.S. Mail:

Office of the United States Trustee for Region 21
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, PR 00901-1922

Gerardo Portela
Mohammad Yassin
Puerto Rico Fiscal Agency and Financial Advisory Authority (AAFAF)
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907

John J. Rapisardi, Esq.
Suzzanne Uhland, Esq.
Peter Friedman, Esq.
Nancy A. Mitchell, Esq.
Maria J. DiConza, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036

Luis C. Marini-Biaggi, Esq.
Carolina Velaz-Rivero Esq.
Maria T. Alvarez-Santos Esq.
Marini Pietrantoni Muniz, LLC
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, PR 00917

Martin J. Bienenstock, Esq.
Paul V. Possinger, Esq.
Ehud Barak, Esq.
Maja Zerjal, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299

Hermann D. Bauer, Esq.
O'Neill & Borges LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813

Luc A. Despins, Esq.
James Bliss, Esq.
James Worthington, Esq.
Paul Hastings LLP
200 Park Avenue
New York, New York 10166

Arturo Diaz-Angueira, Esq.
Cancio, Nadal, Rivera & Diaz, P.S.C.
403 Muñoz Rivera Ave.
San Juan (Hato Rey), PR 00918-3345

Robert Gordon, Esq.
Richard Levin, Esq.
Catherine Steege, Esq.
Jenner & Block LLP
919 Third Avenue
New York, New York 10022

Juan. J. Casillas Ayala
Diana M. Batlle-Barasorda
Alberto J. E. Añeses Negrón
Ericka C. Montull-Novoa
Casillas, Santiago & Torres LLC
El Caribe Office Building
53 Palmeras Street, Suite 1601
San Juan, PR 00901-2419

At New York, New York, 17th day of April, 2019.

By: /s/ *Howard R. Hawkins, Jr.*
Howard R. Hawkins, Jr.*
* Admitted pro hac vice