UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------------------ X
                :

In re:                :

              :

THE FINANCIAL OVERSIGHT AND      :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,    :  Title III

              :

    as representative of      :  Case No. 17-BK-3283 (LTS)

              :

THE COMMONWEALTH OF PUERTO RICO *et al.,*  :  (Jointly Administered)

              :

    Debtors.[1]           :

------------------------------------------------------------------------ X  **Re: ECF Nos. 6118, 6151, 6191,
                  6159, and 6182**

**OMNIBUS REPLY IN SUPPORT OF THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD OF PUERTO RICO'S MOTION FOR ENTRY OF AN
ORDER EQUITABLY TOLLING THE TIME PRESCRIBED BY
<u>11 U.S.C. § 546 TO BRING CERTAIN AVOIDANCE ACTIONS</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and  (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................................... 2

REPLY ...................................................................................................................................... 5

    I.    The Oversight Board's Motion does not Request an Impermissible Advisory Opinion ............................................................................................................... 5

    II.    The Oversight Board and the Special Claims Committee Have Conducted Substantial Diligence Under Extraordinary Circumstances .................................. 8

        A.    The Oversight Board and the Special Claims Committee Exercised Maximum Feasible Diligence Under the Circumstances............................ 8

        B.    Extraordinary Circumstances Stand in the Oversight Board's and the Special Claims Committee's Way ......................................................... 10

    III.    Equity Permits Consideration of Cost Savings ..................................................... 12

CONCLUSION ....................................................................................................................... 14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abdallah v. Bain Capital LLC*,
   752 F.3d 114 (1st Cir. 2014)........................................................................................8

*In re Anderson (Slone v. Anderson)*,
   511 B.R. 481 (Bankr. S.D. Ohio 2013)......................................................................10

*In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*,
   914 F.3d 694 (1st Cir. 2019).................................................................................9, 15

*Green v. Doe*,
   260 Fed. Appx. 717 (5th Cir. 2007)....................................................................5, 6, 8

*Holland v. Florida*,
   560 U.S. 631 (2010).....................................................................................................8

*In re Levy (Gennet v. Docktor)*,
   185 B.R. 378 (Bankr. S.D. Fla. 1995)....................................................................8, 10

*In re McKenzie*,
   2011WL 6140516, at *30-31 (Bankr. E.D. Tenn. Dec. 9, 2011)..............................12

*Negron-Santiago v. San Cristobal Hosp.*,
   764 F. Supp. 2d 366 (D.P.R. 2011)............................................................................12

*Neverson v. Farquharson*,
   366 F.3d 32 (1st Cir. 2004)..........................................................................................8

*In re No. 1 Contracting Corp.*,
   2012 WL 4114818 (Bankr. M.D. Pa. Sept. 19, 2012) ................................................6

*In re Pomaville (Moratzka v. Pomaville)*,
   190 B.R. 632 (Bankr. D. Minn. 1995) ........................................................................8

*Sehr v. Val Verde Hosp. Corp.*,
   2019 WL 1395918 (W.D. Tex. Mar. 27, 2019) ..........................................................8

*Solomon Dwek, et al., Case No. 07-11757 (KCF) (Bankr. D.N.J. 2009*......................7, 8

*In re Walnut Hill, Inc.*,
   2018 WL 2672242 (Bankr. D. Conn. June 1, 2018) ..................................................6

**Statutes**

11 U.S.C. § 546............................................................................................................. *passim*

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "<u>Oversight Board</u>"), acting by and through its Special Claims Committee (the "<u>Special Claims Committee</u>"), respectfully submits this reply (the "<u>Reply</u>") in support of its *Motion For Entry Of An Order Equitably Tolling The Time Prescribed By 11 U.S.C. § 546 To Bring Certain Avoidance Actions*, ECF No. 6118, (the "<u>Motion</u>"), and respectfully represents as follows:

### **Introduction**

1.  These Title III Cases present unique facts and circumstances fully warranting the equitable relief sought in the Motion. The Oversight Board wants to preserve potentially viable and very significant claims but is mindful of the fact that pursuing "claw back" of principal and interest payments on Challenged Bonds first requires a determination that the subject bonds are, indeed, invalid. Rather than expend Commonwealth resources to identify potentially thousands of recipients and then pursue claims that may eventually be compromised or defeated, the Oversight Board seeks, instead, to preserve those claims for eventual litigation or consensual resolution following the results of the challenges to the underlying bonds themselves.[2]

2.  Furthermore, the Special Claims Committee's diligence process in connection with the Motion cannot be considered in a vacuum and should, instead, be considered in the context of the actions it has undertaken since its formation. Indeed, in its efforts to prioritize its actions for the benefit of the Commonwealth, the Special Claims Committee's diligence in connection with the Motion has been both extraordinary and proper.

---

[2] Capitalized terms in this Reply shall have the meaning ascribed to them in the Motion unless otherwise noted in this Reply.

2

3. The Special Claims Committee's efforts, intended to preserve potentially valuable claims, were met with significant resistance as will be highlighted below. Putative defendants to potential litigation to recover billions of dollars for the Commonwealth are acting in their own self-interest when they object to efforts to preserve litigation rights and a fair outcome for all interested parties. Respectfully, the Court should consider that the objecting parties appear to be many of the same investment funds that purchased the Challenged Bonds hoping for enormous profits and are now disappointed that the dice may not, in fact, be loaded in their favor.

4. Independent on its work in connection with the Motion, the Oversight Board and the Special Claims Committee has been diligently pursuing numerous claims and avoidance actions, is deep into the process of identifying defendants and preparing pleadings. It has sent over 300 proposed tolling agreements to potential defendants to such proceedings.

5. In the absence of tolling agreements, the Special Claims Committee plans to commence hundreds of lawsuits in the coming weeks against alleged recipients of preferences and fraudulent conveyances as well as third party defendants in connection with certain Challenged Bond offerings. This work is over and above the substantial efforts expended by the Oversight Board in resolving the GDB case and in confirming the COFINA plan.

6. The Special Claims Committee has now invested material resources in an attempt to discover the identity of the Challenged Bond Avoidance Defendants and prepare appropriate pleadings, with only some limited success. Extraordinary circumstances continue to impede collection of all necessary information.

7. Equitable considerations militate toward a finding that the extraordinary circumstances of this case merit equitable tolling. These equitable considerations include the aforementioned diligence barriers as well as a more practical reality. The Commonwealth's

ability to "claw back" principal and interest payments on invalid bonds is dependent on a prior judicial determination that the subject bonds were, indeed, invalid. Forcing the Commonwealth to identify and sue thousands of recipients of potentially improper payments now would severely tax the limited resources of the Commonwealth, potential defendants, and the entire Court system. Instead, the Court should permit the Oversight Board to preserve its claims while finalizing its diligence and, more importantly, pursuing a consensual resolution of the Title III cases.

8. The Oversight Board will not now belabor the record with a further recitation of its efforts and hardships, aside from providing a brief update regarding diligence completed since the filing of the Motion. Rather, with this Reply, the Oversight Board addresses the two primary arguments raised in the Objections to the Motion:[3] (i) that the Court lacks subject matter jurisdiction to grant the Motion, and (ii) that the Oversight Board has not exercised sufficiently prompt diligence in light of the fact that allegations of nullity of some of the Challenged Bonds were first publicly raised many months ago.[4]

9. As explained further below, the Special Claims Committee has acted promptly and prudently under the unique facts and circumstances of these Title III Cases, and the Commonwealth should not be punished for attempting to preserve resources while working to

---

[3] The Objections are: *Objection of Individual General Obligation Bondholder to Motion of Financial Oversight and Management Board for Entry of an Order "Equitably Tolling" the Time to Bring Certain Avoidance Actions,* Case No. 17-3283 (D.P.R. 2017), ECF No. 6151; *Opposition Of Certain ERS Bondholders To The Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Equitably Tolling The Time Prescribed By 11 U.S.C. § 546 To Bring Certain Avoidance Actions*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6159; *Objection Of The Lawful Constitutional Debt Coalition To The Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Equitably Tolling The Time Prescribed By 11 U.S.C. § 546 To Bring Certain Avoidance Actions*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6182.

[4] The *Objection of Individual General Obligation Bondholder to Motion of Financial Oversight and Management Board for Entry of an Order "Equitably Tolling" the Time to Bring Certain Avoidance Actions*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6151, also states that the Motion was not properly noticed. That argument is not addressed in detail herein because the Motion was noticed in accord with the Federal Rules of Bankruptcy Procedure and this Court's Eighth Amended Notice, Case Management and Administrative Procedures, ECF No. 4866-1.

investigate facts and broker consensual resolutions before determining to formally bring actions against thousands of defendants.

## REPLY

### I. The Oversight Board's Motion does not Request an Impermissible Advisory Opinion.

10. This Court clearly has subject matter jurisdiction to grant the Motion because the relief requested falls squarely within the Court's authority to effectuate the restructuring of Puerto Rico's finances contemplated by PROMESA and the Bankruptcy Code. The Oversight Board seeks an adjustment of a statutory deadline as to potentially thousands of parties who are known to exist but whose identity is difficult to ascertain, and does so in a manner necessary and appropriate for the administration of these cases.

11. Although not common (arguably because ascertaining a transferee's identity is not often such a logistical nightmare), courts have applied equitable tolling in situations where the putative defendant is unknown and, accordingly, has not raised the statute of limitations as a defense. In such circumstances, equitable tolling as to unknown defendants presents a real case or controversy.

12. For instance, in *Green v. Doe*, 260 Fed. Appx. 717 (5th Cir. 2007), the Fifth Circuit found entitlement to equitable tolling where the plaintiff had filed suit eleven months before the statute of limitations against a "John Doe" defendant had run, and during that time, the plaintiff was unable to identify the identity of the "John Doe" defendant by repeated denials of his discovery motions. *Id*. at 718.

13. Although the plaintiff in *Green* had filed suit against a "John Doe" defendant, a grant of equitable tolling as to a "John Doe" defendant is no different than a grant of equitable tolling as to yet unidentified purported holders of Challenged Bonds. Furthermore, even though

5

*Green* was decided based on a motion to amend a complaint to identify the "John Doe," the Fifth Circuit remanded the case to the district court because equitable tolling applied. Thus, it permitted the plaintiff to amend his complaint under Federal Rule of Civil Procedure 15(a) *before the actual defendant was named and before that defendant raised the statute of limitations as an affirmative defense. See id.* at 718 .

14. In short, the Fifth Circuit found equitable tolling applied as to an unknown defendant. *Green*, therefore, stands in opposition to the cases cited by the Lawful Constitutional Debt Coalition ("LCDC") Objectors.[5] *Compare id., with In re Walnut Hill, Inc.*, 2018 WL 2672242, at *2 (Bankr. D. Conn. June 1, 2018) (holding that procedurally the doctrine of equitable tolling is recognized as a response to a statute of limitations defense asserted in a pending litigation), *and In re No. 1 Contracting Corp.*, 2012 WL 4114818, at * 1 (Bankr. M.D. Pa. Sept. 19, 2012) (holding that bankruptcy court could not extend the section 546(a) statute of limitations as to unnamed and unidentified defendants).

15. *In re No. 1 Contracting Corp.*, cited by the LCDC Objectors, is also distinguishable from the present case. Although the *Contracting Corp.* court declined to grant equitable tolling because the unknown defendants could not have raised a statute of limitations defense, the trustee in that case sought equitable tolling because he could not "determine whether there [were] avoidance and/or other related actions including preferential and fraudulent transfer actions" within the limitations period. 2012 WL 4114818 at *1.

16. In contrast to *Contracting Corp.*, the Challenged Bonds Avoidance Actions are viable actions; the legal and factual predicates of the litigation are well developed, and the

---

[5] *See Objection Of The Lawful Constitutional Debt Coalition To The Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Equitably Tolling The Time Prescribed By 11 U.S.C. § 546 To Bring Certain Avoidance Actions*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6182 at ¶¶ 4-7.

6

purpose of the requested equitable tolling relief is not to mount a fishing expedition to ferret out more actions to pursue but simply to identify transferees.

17. Furthermore, the LCDC Objectors rely on the faulty contention that *Int'l Admin. Servs.*, 408 F.3d 689 (11th Cir. 2005), is not applicable to this case. In *Int'l Admin Servs.*, the Eleventh Circuit found that "the bankruptcy court's orders did indeed extend the limitation period, albeit not in a seamless fashion. In [the bankruptcy court's] Findings of Fact and Conclusions of Law, the bankruptcy court noted that '[w]ithout question, [it] intended the limitation period of Section 546(a) to extend through February 10, 1999.'" *Id*. at 700. Notably, the bankruptcy court's extension of time allowed the trustee in *Int'l Admin. Servs*. to identify and file complaints by a date that was much later than the section 546(a) deadline. Accordingly, the bankruptcy court allowed for an extension of the statute of limitations *before the unknown defendants raised the defense.*

18. Similarly, although the objecting parties chastise the Oversight Board for citing *Dwek*,[6] the purpose of bringing the Court's attention to that case was not a comment on *Dwek*'s precedential value or the *Dwek* court's reasoning or lack thereof, but it was rather the Oversight Board's attempt to invite this Court's attention to a case under very similar circumstances where a court found the facts warranted the application of equitable tolling as to unknown defendants who stood to improperly retain money because practical difficulties made it difficult to identify them.

---

[6] *In re Solomon Dwek, et al.*, Case No. 07-11757 (KCF) (Bankr. D.N.J. 2009), *Application in Support of the Chapter 11 Trustee's Motion for Entry of an Order Equitably Tolling the Time Prescribed by 11 U.S.C. § 546 for the Trustee to Bring Avoidance Actions and Time Prescribed by 11 U.S.C. § 108 for the Trustee to Bring Any Action Under Applicable Nonbankruptcy Law Which Did Not Expire Prior to the Petition Date*, ECF No. 3699-1 at ¶ 9; *Order Equitably Tolling the Time Prescribed by 11 U.S.C. § 546 for the Chapter 11 Trustee to Bring Avoidance Actions and Time Prescribed by 11 U.S.C. § 108 for the Trustee to Bring Any Action Under Applicable Nonbankruptcy Law Which Did Not Expire Prior to the Petition Date*, at ECF No. 3790.

7

19. Similar to *Dwek* and *Green*, the Oversight Board, this Court, and the objecting parties all *know* that the purported holders exist and that there is a viable controversy between the Debtors and those purported holders. Only a discovery quagmire and the desire to stage litigation in a reasonable fashion stand in the Oversight Board's way of identifying and bringing suit against these purported holders.

### II. The Oversight Board and the Special Claims Committee Have Conducted Substantial Diligence Under Extraordinary Circumstances

#### A. The Oversight Board and the Special Claims Committee Exercised Maximum Feasible Diligence Under the Circumstances

20. "'[T]he diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence.'" *Sehr v. Val Verde Hosp. Corp.*, 2019 WL 1395918, at *1 (W.D. Tex. Mar. 27, 2019) (quoting *Holland v. Florida*, 560 U.S. 631, 653 (2010) and articulating general principles of equitable tolling).[7] In the bankruptcy context, reasonable diligence is an objective standard that "requires a trustee to conduct searches that are realistic in the ordinary course of a trustee's performance of his duties." *In re Pomaville (Moratzka v. Pomaville)*, 190 B.R. 632, 637 (Bankr. D. Minn. 1995); *see In re Levy (Gennet v. Docktor)*, 185 B.R. 378, 386 (Bankr. S.D. Fla. 1995) (noting that a bankruptcy trustee "has a right to rely upon the sworn schedules and statements filed by the debtor . . . and such reliance should not preclude a trustee from seeking recovery of a possible asset, the existence of which is not revealed until the expiration of the two-year limitations under 11 U.S.C. § 546.").

---

[7] *Sehr* and *Holland* examined equitable tolling as applied to other statues of limitations not at issue in the Motion. Because a court's decision to equitable toll a statute of limitations is discretionary, the body of law comprising the entire doctrine of equitable tolling is germane to this Court's analysis. *See Neverson v. Farquharson*, 366 F.3d 32, 42 (1st Cir. 2004) (reviewing district court's decision to invoke equitable tolling under abuse of discretion and noting that split as to these standard applied to equitable tolling in habeas cases); *see also Abdallah v. Bain Capital LLC*, 752 F.3d 114, 119 (1st Cir. 2014) (reviewing decision not to grant equitable tolling as applied to tort and contract action for abuse of discretion).

8

21. The Objectors seem to have lost sight of the unprecedented nature of the PROMESA Title III cases and the magnitude of the Oversight Board's duties, and ask that this Court impose not only a standard of maximum feasible diligence, but a version of such that would be inconsistent with the Oversight Board's statutory mission.

22. For instance, the ERS bondholder objectors[8] argue, in effect, that as soon as certain *ultra vires* arguments were raised in mid-2017 as to the ERS bonds,[9] the Oversight Board should have investigated and brought every single claim potentially flowing from a judicial declaration of nullity. Such activity would not have been rational in 2017: at that time, the Oversight Board was actively litigating a number of threshold matters concerning, among other things, the legitimacy of the PROMESA Title III process and the various competing claims of security interests in debtor property, while remaining optimistic that a collaborative restructuring process would develop.

23. Unfortunately, a collaborative process did not develop. Nevertheless, to blame the Oversight Board for taking months to conduct a proper investigation and fully develop its claims before launching multiple multi-billion dollar litigation actions ignores the Oversight Board's purpose under PROMESA "to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a). This is especially true in the instant matter, where litigation against purported holders of Challenged Bonds who received principal and interest payments must await resolution of the underlying bond challenge.

---

[8] Party that interposed Objection at *Opposition Of Certain ERS Bondholders To The Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Equitably Tolling The Time Prescribed By 11 U.S.C. § 546 To Bring Certain Avoidance Actions*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6159

[9] In July 2017, the Oversight Board on behalf of ERS filed suit in this Court "seeking declaratory judgments on several issues related to the validity, breadth, and perfection" of the ERS bondholders' "asserted security interest," among other issues. *In re Fin. Oversight & Mgmt. Bd. for Puerto Rico*, 914 F.3d 694, 702 (1st Cir. 2019); *accord In re Fin. Oversight & Mgmt. Bd. for Puerto Rico (Financial Oversight and Management Board for Puerto Rico, as representative of Employees Retirement System of the Government of the Commonwealth of Puerto Rico v. Altair Global Credit Opportunities Fund (A), et al.)*, Case No. 17-00213 (D.P.R. 2017), ECF No. 1.

9

24. The Oversight Board's successful implementation of a GDB out-of-court restructuring and COFINA plan of adjustment, the commission of the Investigation, the filing of the Joint Claim Objection impacting over $6 billion of bonds and the impending commencement of several hundred lawsuits and Avoidance Actions, exemplify the efforts undertaken to date. Commensurate with its statutory purpose, the Oversight Board has prioritized consensual, cost-effective resolutions based on established facts, and only resorted to litigation following exacting diligence to justify the exercise.

25. Respectfully, the Oversight Board has exercised "maximum feasible diligence." The results of that diligence point toward the best and fairest outcome the Oversight Board envisions. The objecting parties, in part comprising multi-billion dollar hedge funds that bought Challenged Bonds and stand to make enormous short-term profits, should not be permitted to stop the Commonwealth from preserving potentially viable claims.

### B. Extraordinary Circumstances Stand in the Oversight Board's and the Special Claims Committee's Way

26. Much as a chapter 7 or 11 trustee may rely on a debtor's statements and schedules as a measure of their diligence, the Special Claims Committee had cause to believe that AAFAF as the Commonwealth's fiscal agent would be able to provide access to documents regarding principal and interest payments to purported bondholders. *See Levy*, 185 B.R. at 386; *see also In re Anderson (Slone v. Anderson)*, 511 B.R. 481, 500 (Bankr. S.D. Ohio 2013).

27. Unfortunately, the Special Claims Committee was passed along to various professionals and agencies believed to have the information. When these inquiries proved to be a dead-end, the Special Claims Committee immediately began exploring alternative options and ultimately filed a motion to compel production from the few parties believed to possess the information, who happen to be the world's largest banks, and who appear to have a vested

10

interest in protecting their clients' information.[10] That discovery motion was met with resistance.[11]

28. As several banks attested in their objections to the motion to compel, obtaining proper transferee information is a sizeable task.[12] Even if the Special Claims Committee obtains the requested relief, it is not presently confident that all of the respondents will produce necessary documents in timely compliance with their request and the Court's order.[13]

29. These circumstances do not suggest active concealment of information identifying appropriate defendants to avoidance actions, as seen in some precedential cases. Nevertheless, the situation is extraordinary, as have been the Special Claims Committee's efforts to make the best of a difficult situation.

30. The Oversight Board respectfully suggests that it is within the Court's power to alter a statutory deadline, to a limited extent, in acknowledgement that the Oversight Board has

---

[10] *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico for Entry of an Order under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders*, ECF No. 6143.

[11] *See Objection Of U.S. Bank To Urgent Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Under Bankruptcy Rules 1007(I) And 2004 Authorizing Discovery And Compelling Disclosure Of Lists Of Security Holders*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6193, *Objection Of The Bank Of New York Mellon To The Financial Oversight And Management Board's Urgent Motion For Expedited Discovery Of Confidential Information,* Case No. 17-3283, (D.P.R. 2017), ECF No. 6194; *Bank Of America's Response To Urgent Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Under Bankruptcy Rules 1007(I) And 2004 Authorizing Discovery And Compelling Disclosure Of Lists Of Security Holders, Joinder And Reservation Of Rights*, Case No. 17-3283, (D.P.R. 2017), ECF No. 6195.

[12] *See Objection Of The Bank Of New York Mellon To The Financial Oversight And Management Board's Urgent Motion For Expedited Discovery Of Confidential Information, Case No. 17-3283, (D.P.R. 2017), ECF No. 6194* (arguing that identifying the transferees requires collecting a "massive [amount] of information"); *see also Objection Of U.S. Bank To Urgent Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Under Bankruptcy Rules 1007(I) And 2004 Authorizing Discovery And Compelling Disclosure Of Lists Of Security Holders*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6193 (asserting that "some . . . records between 2013 and 2017 may be archived, the data storage files don't include customer addresses which must be researched manually, and there may be difficulties searching records relating to all of the different CUSIPS, and potentially hundreds of payment transfers.").

[13] Nevertheless, if this Court grants the Motion to Compel, the universe of unknown defendants that would be subject to any relief entered on account of this Motion would decrease significantly, allowing this Court to fashion only the most limited relief under this Motion given the extraordinary circumstances.

been acting consistent with its purpose under PROMESA to ensure that appropriate diligence is performed and opportunities for consensual resolution exhausted before launching multiple adversary proceedings.

### III. Equity Permits Consideration of Cost Savings

31. In the exercise of its equitable powers, this Court can consider the potentially wasteful and premature nature of requiring the Special Claims Committee to bring the Challenged Bonds Avoidance Actions within the time limit prescribed by section 546 of the Bankruptcy Code.

32. Put differently, the Court may and should consider the potential cost savings to the Commonwealth, legitimate creditors and taxpayers of Puerto Rico, potential defendants, and the Court itself should it grant the requested relief. *See Negron-Santiago v. San Cristobal Hosp.*, 764 F. Supp. 2d 366, 371 (D.P.R. 2011) (describing expanded factors for equitable tolling); *see also In re McKenzie*, 2011WL 6140516, at *30-31 (Bankr. E.D. Tenn. Dec. 9, 2011) (espousing flexible approach to equitable tolling).

33. To provide a brief update: since the filing of the Motion, the Special Claims Committee has been able to identify 136 "Participant Holders," i.e., the aforementioned large banks thought to have held Challenged Bonds on behalf of Challenged Bond Avoidance Defendants and to have transferred purported principal and interest payments thereto. The Special Claims Committee expects, but cannot yet confirm, that each of these Participant Holders would have had hundreds or thousands of clients, meaning that the total number of

12

potential Challenged Bond Avoidance Defendants is likely in the tens of thousands, and there may be a commensurately larger number of discrete potentially avoidable transfers.[14]

34. The Special Claims Committee is now attempting to obtain the Challenged Bond Avoidance Defendant identifying information from the Participant Holders. Once it does so, it may be able to select some subset of the payments to avoid based on concerns including efficiency and cost-effectiveness. Nevertheless, the raw numbers of potential defendants and transfers should illuminate for the Court the scale of diligence required and the potential cost savings in permitting the Special Claims Committee to conclude its diligence before filing complaints simply to preserve rights.

35. Moreover, as evidenced by the hundreds of notices of participation filed in response to the Procedures ordered in connection with the Joint Claim Objection, in conjunction with the proposed procedures to adjudicate the Ad Hoc Objection (also referred to as the "Conditional Objection")[15] filed by the Ad Hoc Go Bondholders, the litigation regarding the validity of the Challenged Bonds is exceedingly expansive, and likely to consume the collective resources of the estates, *present* holders of Challenged Bonds, *past* holders of Challenged Bonds who received payments on account of the Challenged Bonds, and notably, the Court.

36. Requiring that the Commonwealth undertake the additional filing of one or more complaints naming hundreds, if not thousands, of defendants before resolution of the Joint Claim Objection, the Conditional Objection, and the ERS Objection may prove unnecessary and will only cause further confusion, cost and administrative difficulties.

---

[14] This is not to suggest that the Oversight Board must, or would, sue every possible Challenged Bond Avoidance Defendant. Rather, the Oversight Board must establish the universe of transferees and avoidable payments and will determine parameters for litigation thereafter.

[15] *See Omnibus Conditional Objection Of The Ad Hoc Group Of General Obligation Bondholders To Claims Filed Or Asserted By The Public Buildings Authority, Holders Of Public Buildings Authority Bonds, And Holders Of Certain Commonwealth General Obligation Bonds*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6099.

13

37. As noted in the Motion, because the premise of the Challenged Bonds Avoidance Actions rests on a legal finding that the Challenged Bonds are invalid, tremendous savings can be achieved and the litigation streamlined simply by tolling the statute of limitations until a final order on the Challenged Bonds can be obtained and delaying the prosecution of any action that is eventually filed once the identity of defendants is obtained.

38. Therefore, the Oversight Board respectfully requests that this Court find that equity compels tolling the statute of limitations for prosecution of the Challenged Bonds Avoidance Actions until such time as both the legal basis and the appropriate defendants for such actions may be more firmly established.

## **CONCLUSION**

39. For the foregoing reasons, the Oversight Board respectfully requests that this Court grant the relief requested in the Oversight Board's Motion by entering an order substantially in the form attached hereto as Exhibit A.[16]

---

[16] The revised proposed order is submitted as described in the *Reservation Of Rights Of The QTCB Noteholder Group In Response To The Motion Of The Financial Oversight And Management Board Of Puerto Rico For Entry Of An Order Equitably Tolling The Time Prescribed By 11 U.S.C. § 546 To Bring Certain Avoidance Actions*, Case No. 17-3283 (D.P.R. 2017), ECF No. 6191. By agreement, the Order will limit tolling to an initial six month period, which may be extended upon request. A blackline of the revised order against the initially filed version is attached as Exhibit B hereto.

14

Dated: April 17, 2019

*/s/ Edward S. Weisfelner*
**BROWN RUDNICK LLP**
Edward S. Weisfelner, Esq. (*Pro Hac Vice*)
Angela M. Papalaskaris, Esq. (*Pro Hac Vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com
apapalaskaris@brownrudnick.com

Stephen A. Best, Esq. (*Pro Hac Vice*)
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
sbest@brownrudnick.com

Sunni P. Beville, Esq. (*Pro Hac Vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Financial Oversight and Management Board, acting through the Special Claims Committee*

and

*/s/ Kenneth C. Suria*
**ESTRELLA, LLC**
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Financial Oversight and Management Board, acting through the Special Claims Committee*

/s/ Jeffrey W. Levitan
**PROSKAUER ROSE LLP**
Martin J. Bienenstock (*Pro Hac Vice*)
Brian S. Rosen (*Pro Hac Vice*)
Jeffrey W. Levitan (*Pro Hac Vice*)
Stephen L. Ratner (*Pro Hac Vice*)
Timothy W. Mungovan (*Pro Hac Vice*)
Eleven Times Square
New York, New York
Tel: (212) 969-3000
Fax: (212) 969-2900
mbienenstock@proskauer.com
brosen@proskauer.com
jlevitan#proskauer.com
sratner@proskauer.com
tmungovan@proskauer.com

*Bankruptcy Counsel to the Financial Oversight and Management Board for Puerto Rico, as representative of the Commonwealth of Puerto Rico*

63352545