IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.[1] | |

---------------------------------------------------------------------x

## ORDER PURSUANT TO BANKRUPTCY RULES 1007(i) AND 2004 AUTHORIZING DISCOVERY AND COMPELLING DISCLOSURE OF LISTS OF SECURITY HOLDERS

### I.  Introduction

This matter is before the Court on the *Urgent Motion of the Financial Oversight and Management Board for Puerto Rico for Entry of an Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* dated April 8, 2019 (Dkt. No. 6143) (the "2004 Motion").[2]  The Court hereby finds and determines that (i) the Court has jurisdiction to consider the 2004 Motion and the relief requested therein; (ii) venue is

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] Capitalized terms not defined herein shall have the meanings ascribed to them in the 2004 Motion.

proper before this Court pursuant to Section 307(a) of PROMESA; and (iii) due and proper notice of this 2004 Motion has been provided under the particular circumstances and no other or further notice need be provided.

The Court has carefully considered the arguments made in opposition to the 2004 Motion by U.S. Bank National Association and U.S. Bank Trust National Association (together, "U.S. Bank") (Dkt. Nos. 6193, 6322), the Bank of New York Mellon (Dkt. Nos. 6194, 6321) and Bank of America N.A. (Dkt. Nos. 6195, 6323) (the "Objectors"). The Court takes seriously the Objectors' concerns regarding burden and confidentiality. Nevertheless, the Court finds that under Rules 2004 and 1007(i) of the Federal Rules of Bankruptcy Procedure, good cause exists for the production of discovery as requested in the 2004 Motion. The Court hereby ALLOWS IN PART and DENIES IN PART the 2004 Motion in accordance with the specific rulings set forth herein.

## II. Rule 2004

"Legitimate goals of Rule 2004 examinations include 'discovering assets, examining transactions, and determining whether wrongdoing has occurred.'" In re Wash. Mut., Inc., 408 B.R. 45, 50 (Bankr. Del. 2009) (citing In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)). "The purpose of a Rule 2004 examination is to discover the nature and extent of the bankruptcy estate in order to distribute the debtor's assets for the benefit of its creditors." In re Bibhu LLC, 2019 WL 171550, at *2 (Bankr. S.D.N.Y. Jan. 10, 2019) (internal citations and quotations omitted). The Financial Oversight and Management Board for Puerto Rico ("Oversight Board"), acting by and through its Special Claims Committee, is seeking customer information in connection with its intent to file avoidance actions in these cases under Title III of the Puerto

Rico Oversight, Management, and Economic Stability Act, 48 U.S.C. 2101, *et seq.* ("PROMESA"). Through those actions, the Oversight Board will seek to claw back assets for the estate. (2004 Motion ¶ 16). The Board seeks the customer information at issue here in order to identify defendants in those cases. (Id. ¶ 18). The Oversight Board's purported use of the sought discovery falls well within the scope of Rule 2004, and thus good cause exists to grant the 2004 Motion.

### III. Specific Objections

The Objectors raise specific concerns with the requested discovery. The Court will address each in turn.

A. Burden

The Court first considers the multiple objections based on the burden of an expedited production. As an initial matter, this Court recognizes that the Oversight Board could have sought this information considerably earlier in these proceedings than it did. Nevertheless, the Oversight Board has shown it has engaged in reasonable efforts to obtain the needed customer information elsewhere and that cause exists for the production of information on an expedited basis given upcoming deadlines in these cases. Further, and as ordered herein, the Oversight Board has provided, and shall continue to provide, the Objectors with as much identifying information as possible in order to lessen the burden of locating the requested discovery. The Court emphasizes that if there is any information in the Oversight Board's control which it can disclose to the Objectors that would aid in the collection of the requested discovery, such information must be shared.

Objectors, as the financial institutions engaging with their customers, are uniquely situated to provide the information needed by the Oversight Board. The Court does not minimize the significant burden this order will place on the producing parties, but does recognize that allowing this 2004 Motion is the least burdensome way, if not the only way, to obtain the needed information. Nevertheless, in order to lessen the burden, as provided below, this Court has allowed for rolling productions to occur, and for the production to go beyond the original deadlines asked for by the Oversight Board.

B. <u>Pending Equitable Tolling Motion</u>

Objectors next ask that this Court not allow the 2004 Motion because the need for expedited production may be obviated by the Court's decision on the Equitable Tolling Motion pending before Judge Swain. (<u>See</u>, Dkt. No. 6193 ¶ 10). That motion has not yet been decided and thus cannot impact the merits of the Court's decision here. Absent a definitive ruling on that motion, the Oversight Board's deadlines for avoidance actions are real and create good cause for expedited discovery. This order is without prejudice to the parties hereto returning to this Court at a later date should the Equitable Tolling Motion be allowed and good cause exist for relaxing the production timeline set forth herein.

C. <u>Need for PBA Bond Information</u>

U.S. Bank specifically objects to the expedited timeline for producing information relevant to the PBA Bonds (<u>See</u> <u>id.</u> ¶ 6 ("U.S. Bank is aware of no statutory deadlines relating to PBA, which is not in a Title III proceeding, or any other proceeding, and so it is unclear why the Oversight Board requires discovery relating to the PBA Bonds on such an unreasonably tight timeframe.")). As the Oversight Board references in the 2004 Motion, the PBA Bonds are

presently being challenged in litigation pending in the Commonwealth Title III case. For example, in the *Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No. 6099), the GO Group, as defined therein, moves, conditionally, to:

> disallow[] claims asserted against the Commonwealth of Puerto Rico [] on account of the Commonwealth's obligations under leases with the [PBA] and the Commonwealth's guaranty of bonds issued by the PBA [], or in the alternative, disallowing claims asserted against the Commonwealth on account of Commonwealth general obligation bonds and PBA Bonds issued beginning fiscal year 2010 insofar as and to the extent that such issuances are determined to have violated the Commonwealth's constitutional debt limit.

(Id. at 1). To the extent that PBA Bonds are challenged in the course of that motion and other litigation in the Commonwealth Title III case such that the Commonwealth could recoup funds by filing avoidance actions against PBA bondholders, good cause exists for the production of the PBA Bond information. It is the Court's understanding that any such avoidance actions must also be filed by May 2, 2019 such that time is of the essence in the production of PBA bondholder information as well as GO bondholder information. If this is not the case, the parties may seek to extend the production date for the PBA information.

D. Confidentiality

The Court next acknowledges that each of the Objectors raise significant confidentiality concerns. The Oversight Board has addressed some of their concerns through proposed confidentiality language as expressed in its revised proposed order. (See Dkt. No. 6248, Ex. A). Objectors do not raise issue with that language but seek further protection from this Court. In their additional requests, Objectors refer broadly to federal, state and foreign confidentiality regulations with which they are obligated to comply. (See e.g., Dkt. No. 6194 at 3-4). Objectors

5

ask this Court to exempt them from obligations under those regulatory frameworks and to protect them from any liability that may result from their production. However, not only have the Objectors failed to identify which specific regulations are at issue, but they have not even attempted to establish that this Court has jurisdiction to relieve them of their compliance obligations. This Court is not prepared to do so *sua sponte*.

The parties are hereby ordered to meet and confer, and to submit a proposed confidentiality agreement, or competing proposals, to the Court on or before **April 23, 2019**. The confidentiality agreement shall be in accordance with the rulings made and guidance given herein.

1. As an initial matter, none of the Objectors have shown that any data privacy regulation, whether, state, local, federal or international, precludes the financial institutions from providing the requested customer information upon court order. The Oversight Board, on the other hand, argues that disclosure of the information of the type requested herein is authorized by regulation. (Dkt. No. 6248 ¶ 11 (citing 12 C.F.R. § 1016.15(a) ("The requirements for initial notice . . . do not apply when you disclose nonpublic personal information . . . [t]o comply with a properly authorized civil, criminal, or regulatory investigation, or subpoena or summons by Federal, state, or local authorities; or [to] respond to judicial process or governmental regulatory authorities having jurisdiction over you for examination . . . ."))). This Court finds that the requested information is relevant under Rule 2004, and must be produced.[3] The Court does adopt in part the Objectors' proposal and expressly confirms as follows:

---

[3] For the avoidance of doubt, and as represented by the Oversight Board in their reply papers, customer social security numbers and account numbers shall not be produced in connection with this order. (See id. ¶ 12).

6

To the extent any federal, state or foreign law or other legal authority governing the disclosure or use of confidential information, including personal data or non-public personal financial information, permits disclosure of such information pursuant to an order of a court, this order shall constitute such a court order.

2. U.S. Bank has further requested that "any pleadings, motions, objections, and oppositions, responses and replies thereto, or any document or paper filed before the Court, containing confidential information shall be filed under seal absent other agreement or order of the Court, after notice to all relevant parties." (Dkt. No. 6322 ¶ 6). While the parties' confidentiality agreement shall address the filing of confidential information with the Court, sealing should be proposed only in very limited circumstances, if at all. Not only does sealing keep information from the public, but it imposes an incredible administrative burden on the Court. The parties shall explore the option of redacting confidential information as provided for by Local Rule 5.2.

3. U.S. Bank and Bank of America, N.A. have also proposed that this Court order that they are relieved of their obligations to obtain a "court-ordered subpoena," from having to "notify and/or obtain consent from any person or entity prior to the disclosure of Personal Data or Non-Public Financial Information, and/or having to provide a certification that notice has been waived for good cause" as may be required by "any United States federal or state law or other United States legal authority governing the disclosure or use of Confidential Information, including personal data or non-public personal financial information[.]" (See Dkt. No. 6323 at 3-4). However, as noted above, the Objectors have not identified the regulations at issue or this Court's jurisdiction to enter such an order. This Court expresses no opinion as to the scope of the Objectors' obligations, if any, under any applicable law or regulation. Nothing herein is intended to alter the Objectors' compliance obligations in any way, except to the extent that

7

relevant laws or regulations contemplate exceptions for compliance with court orders. This Court does order, however, as requested by the Objectors, that "[a]ny Disclosing Person or Receiving Party may seek additional orders from the Court that such Party believes may be necessary to comply with any Personal Data or Non-Party Financial Information Law and/or contractual obligation." (See id. at 4).

4. Finally, Bank of New York Mellon has requested that the Oversight Board be ordered to indemnify it for any claims arising from its compliance with this order. (Dkt. No. 6194 at 3). The Court declines to do so. Not only has Bank of New York Mellon failed to establish that it is prohibited in any way from producing the information, but, as detailed below, the Court has allowed Bank of New York Mellon additional time, as it requested, to produce the information and provide whatever notice to customers it feels is necessary.

E. Cost-Shifting

Finally, the Court overrules the Objectors' requests for cost-shifting. The Participant Holders are uniquely situated to provide the information requested by the Oversight Board, which this Court has ruled is relevant to the disposition of these Title III cases. The Oversight Board has provided the Participant Holders with information helpful in locating and producing the requested information.

"[W]hen discovery is ordered against a non-party, the only question before the Court in considering whether to shift costs is whether the subpoena imposes significant expense on the non-party." Legal Voice v. Stormans, Inc., 738 F.3d 1178, 1184 (9th Cir. 2013). Among the factors considered by courts in determining whether to shift costs from the non-party are "(1) whether the non-party has an interest in the outcome of the litigation; (2) whether the non-

party can more readily bear the costs of production than the requesting party; and (3) whether the litigation is of public importance." High Rock Westminster St., LLC v. Bank of Am., N.A., 2014 WL 12782611, at *1 (D.R.I. June 17, 2014) (internal citation and quotation omitted). "Where the non-party was . . . substantially involved in the underlying transaction, courts have found the non-party to be interested in the outcome of the litigation." Id. at *2 (internal citation and quotation omitted). Here, the Objectors were purportedly involved in the allocation of relevant payments to customers. They are also sophisticated financial institutions capable of paying for discovery efforts where necessary. Finally, these Title III cases are of public importance to, amongst others, the citizens of Puerto Rico. The Participant Holders shall bear the costs of production.

## IV. Specific Rulings

In accordance with the above, it is hereby ORDERED that:

1. The 2004 Motion is allowed in part and denied in part as provided herein.

2. The Oversight Board is authorized to issue the Document Request, attached as Exhibit B to the 2004 Motion (Exhibit B to Dkt. No. 6143) to the Participant Holders identified at Appendix 2 to Exhibit B to the 2004 Motion, as such appendix may be supplemented or amended upon receipt of information sufficient to identify Participant Holders of the Challenged Bond series identified at Appendix 3 to Exhibit B.

3. The Oversight Board shall promptly make available, upon request by any Participant Holder, an electronic document listing the Challenged GO Bonds, the CUSIP of each such Challenged GO Bonds, and the dates upon which payments

9

are thought to have been made by the Commonwealth to purported holders of such Challenged GO Bonds based upon publicly available documents.

4. The Oversight Board shall promptly provide any additional information relating to the GO, ERS, and PBA Bonds it has obtained from any source to help the Objectors locate the requested information.

5. The parties shall meet and confer regarding the creation of an appropriate confidentiality agreement to govern the produced data, taking into account the guidance provided above. The parties shall submit such proposal, or competing proposals to the Court, on or before **April 23, 2019**. The Court will then take the proposals on submission.

6. The Participant Holders shall respond to the Document Request as follows:

    a. As pertaining to the Challenged GO Bonds and PBA Bonds, no later than **April 25, 2019**. For good cause shown, if the Participant Holders are unable to complete their production by April 25, 2019, they may continue to produce documents up to and until **April 30, 2019**. Documents shall be produced on a rolling basis within these periods to the extent possible.

    b. As pertaining to ERS Bonds, not later than **May 8, 2019**. Documents shall be produced on a rolling basis to the extent possible.

7. The terms and conditions of this order shall be immediately effective and enforceable upon its entry.

This order resolves Dkt. No. 6143.

SO ORDERED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

DATED: April 18, 2019