UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

------------------------------------------------------------X

IN RE:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO,
ET AL.

    Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

------------------------------------------------------------X

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

EMPLOYEES RETIREMENT SYSTEM OF
THE GOVERNMENT OF THE
COMMONWEALTH OF PUERTO RICO,

    Debtor.

PROMESA
Title III

No. 17 BK 3566-LTS

------------------------------------------------------------X

**DECLARATION OF LUIS COLLAZO RODRIGUEZ
IN OPPOSITION TO MOTION OF CERTAIN CREDITORS OF THE EMPLOYEES
RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO TO COMPEL
PRODUCTION OF DOCUMENTS IN PRIVILEGE LOG
CATEGORIES 1 TO 4 [ATTORNEY-CLIENT PRIVILEGE,
ATTORNEY WORK PRODUCT, COMMON INTEREST]**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

I, Luis Collazo Rodriguez, declare as follows:

1. I am the Administrator of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") and the Executive Director of the Retirement Board of the Government of Puerto Rico. I have served as Administrator since May 1, 2017, and Executive Director of the Retirement Board since August 16, 2018. Before then, I was a lawyer in the ERS legal division from April 14, 2014 until April 30, 2017. As ERS's Administrator, I am responsible for overseeing ERS's operations and public policy, among other work. Through these experiences, I have become knowledgeable about ERS's work for public employees.

2. I submit this declaration in opposition to Movants' Motion to Compel Production of Documents in Privilege Log Categories 1-4. The information provided herein is based on my experience working at ERS and the materials cited below. Unless otherwise specified, I have personal knowledge of the matters stated herein, and, if called and sworn as a witness, could testify competently thereto.

**Historic Purpose of ERS and Failed Reform Efforts**

3. Under the ERS Enabling Act, ERS is a trust established for the economic well-being of public employees. *See* 3 L.P.R.A § 761. ERS was established to administer the payment of pensions and other benefits to officers and employees of the Commonwealth government, members and employees of Puerto Rico's Legislative Assembly (the "Legislature"), and officers and employees of public corporations and municipalities. *See* 3 L.P.R.A § 761. ERS's purpose has been to make payments to public employee pensioners and beneficiaries. Under Act 447 of May 15, 1951, all government employees whose retirement benefits were administered by ERS were to receive defined benefits based on a statutory formula that considered factors including the employee's salary and years of service. *See* 3 L.P.R.A. § 761, *et*

*seq.* (2016). Until the passage of Joint Resolution 188 and Act 106, ERS discharged those duties by making benefit and pension payments to eligible public employees.

4. Puerto Rico's public pension system has been in a financial crisis for years. By 1999, ERS's defined benefit plan was significantly underfunded. As of June 30, 1998, ERS was in "critical condition with an actuarial deficit that exceed[ed] five point nine billion dollars, according to the projections of [ERS's] actuaries." *See* Act 305 of September 24, 1999, Statement of Legislative Intent ("Act 305-1999"). Act 305-1999 was one of the first attempts to reform the retirement system and sought to address structural underfunding at ERS by establishing a defined contribution model for new employees hired on or after January 1, 2000, and for current employees who elected to transfer from the existing defined benefit plan ("System 2000").

5. Notwithstanding the System 2000 reforms, ERS's financial system and the health of Puerto Rico's public employee retirement and pension system continued to deteriorate. In 2013, additional measures were taken to address ERS's dire financial situation. *See* Act 3 of April 4, 2013 ("Act 3-2013").

6. But again, these efforts failed to arrest ERS's financial decline. As the Congressional Task Force on Economic Growth in Puerto Rico ("Task Force") found in its report to Congress, as of June 30, 2015, ERS was "in a negative funded position" and "at risk of becoming insolvent." *See* Congressional Task Force on Economic Growth in Puerto Rico, Report to the House and Senate (Dec. 20, 2016) (*available at* https://www.finance.senate.gov/imo/media/doc/Bipartisan%20Congressional%20Task%20Force%20on%20Economic%20Growth%20in%20Puerto%20Rico%20Releases%20Final%20Report.p

df). The Task Force further reported that as of June 30, 2015, ERS has a "net pension liability of $33.2 billion with a funded ratio of [negative] 1.8 percent." *Id*.

**Common Interest of AAFAF, the Commonwealth, the Oversight Board and ERS**

7. **Relationship with AAFAF**: When the current Administration came into office in 2017, it moved to address the financial crisis at ERS through the help of AAFAF. AAFAF is the entity designated by law to represent and advise ERS with respect to its financial restructuring. The Legislative Assembly created AAFAF "for the purpose of acting as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing." *See* AAFAF Enabling Act, 5(a). At the time of its creation under the Moratorium Act, AAFAF was also granted the authority to "oversee all matters related to the restructuring or adjustment" of certain covered obligations, as designated by the Governor. *See* Moratorium Act § 602(b). It is my understanding that these powers allow AAFAF and the Commonwealth Government to ensure that there is a unified, consistent approach to the restructuring of Puerto Rico's many debt obligations.

8. Consistent with its statutory mandate, AAFAF has been working closely with ERS to support ERS's Title III restructuring and all related proceedings, including litigation and contested proceedings. As Administrator, I collaborate with AAFAF on a regular basis regarding ERS's debt restructuring and Title III case. As ERS's fiscal agent and an entity that also serves the public, AAFAF's interests are aligned with ERS's as to the pension reforms that led to the passage of Joint Resolution 188 and Act 106.

9. Faced with the dire financial situation at ERS, AAFAF worked with the Commonwealth and ERS in 2017 on pension reforms to ensure the continued payment of benefits to pensioners in Puerto Rico. Those efforts ultimately led to the passage of Joint

3

Resolution 188 and Act 106, which eliminated ERS's obligation to make pension payments to public employees and replaced it with a new pay-as-you-go ("PayGo") system. Under the PayGo system, funds to make pension payments come from the Commonwealth in the first instance, and public employers are then obligated to reimburse the Commonwealth for the funds it pays each month to an employer's current pensioners and beneficiaries.

10. **Relationship with the Commonwealth**: ERS is an instrumentality of the Government of the Commonwealth of Puerto Rico. ERS therefore has a common interest with the Commonwealth in supporting pension reform efforts that affect the overall financial health of the Commonwealth and that benefit the public of Puerto Rico. ERS views the PayGo system as benefiting the public by ensuring pension payments continue to be made to public employees. ERS's interests are completely aligned with those of the Commonwealth and AAFAF in respect of pension reform because, under the ERS Enabling Act, ERS's principal purpose was to pay pension benefits to public employees. Eliminating that financial burden dispensed with the need for additional funding sources for ERS. This is consistent with ERS's role as a trust and a government entity that exists—not for its own benefit—but for the public's benefit.

11. **Common Interest Under PROMESA:** ERS also shares a common interest with the Oversight Board, in addition to AAFAF and the Commonwealth, in working together as part of the fiscal plan process under PROMESA. Once the Oversight Board designated ERS as a covered entity under PROMESA in October 2016, ERS was required to have a five-year fiscal plan certified by the Oversight Board. *See* PROMESA Section 201; Minutes for the September 30, 2016 Meeting of the Financial Oversight and Management Board for Puerto Rico (October 14, 2016) (*available at* https://oversightboard.pr.gov/documents/). PROMESA tasks the Governor and the Commonwealth government with responsibility to participate in the creation of

a fiscal plan and budget. *See* PROMESA §§ 201 and 202. It is my understanding that the Governor has delegated to AAFAF, as fiscal agent, the responsibility of working with the Oversight Board to formulate the ERS fiscal plan. AAFAF also has the authority to compel any governmental entity to take action to comply with the fiscal plan, and to take action on behalf of any government entity to ensure compliance. *See* AAFAF Enabling Act §§ 8(m) and (o).

12. Given ERS's massive unfunded pension liabilities and the need to safeguard retirement benefits, the Commonwealth's first fiscal plan included provisions for pension reform and the possible conversion to a pay-as-you-go system. The fiscal plan noted that, although switching to PayGo model would require a substantial initial expense of approximately $989 million in fiscal year 2018, the long-term effect of the PayGo model and the progressive reduction of retirement benefits over time would protect the Commonwealth's lowest income earners while reducing unsustainable pension costs. *See* March 2017 Fiscal Plan at 10, 13 and 21 (*available at* https://drive.google.com/file/d/10PXYyW7dF7wayWpBvdIvZjKtHOLQU0cp/view). By reducing the costs of the pension system, the Commonwealth could unlock this value to invest in other areas of the economy to promote its overall restructuring. Through the fiscal plan process, ERS, the Commonwealth, AAFAF and the Oversight Board have a shared common interest in working together to address Puerto Rico's debt crisis and serve the public's interest.

13. Given their roles, it was important for ERS, AAFAF, the Commonwealth, and the Oversight Board to share attorney-client privileged and other privileged materials in the course of fiscal planning and pension reform. This allowed them to formulate a pension reform plan that best balances the need to provide pension benefits to retirees with reducing the Commonwealth's debt burden.

**ERS's Confidential Attorney-Client Communications**

14.  It is my understanding that Movants are seeking the disclosure of confidential communications ERS shared with its fiscal agent AAFAF and the Commonwealth regarding litigation with the bondholders, pension reform efforts and PayGo.  ERS fully intended for such communications to be kept confidential and believes there to be a common interest with respect to its communications on these topics.  The communications were intended to further the parties' shared interests and disclosure would be prejudicial to ERS in current and future litigation and its Title III restructuring efforts.  ERS also intended to keep communications with its advisors confidential and believed them to be necessary to the work of counsel in connection with pension reform and debt restructuring.  For example, advisors like Pension Trustee Advisors and Milliman have been necessary for the work of ERS's lawyers to analyze the consequences of pension reform and to assess actuarial liabilities in the debt restructuring for ERS and the Commonwealth.

15.  It is also my understanding that Movants have asserted that a conflict of interest exists because they assert ERS is contractually obligated in the ERS Bond Resolution to oppose legislative changes that would be adverse to bondholders, who represent one group of ERS creditors.  ERS does not agree with Movants' position.  I am not aware of anything in ERS's Enabling Act that would require ERS to prioritize creditor interests over the public's interest or refuse to work with the Commonwealth Government and AAFAF on safeguarding pensions for retirees.  Further, in addition to its duties to the public, ERS has a duty to restructure its debt—a duty that began with the Moratorium Act and that has continued through PROMESA.  The PayGo pension reforms are consistent with ERS's duty to restructure its debt and ERS's larger duties to the public.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in San Juan, Puerto Rico on April 17, 2019.

_____
Luis Collazo Rodríguez

7