# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**THE PUERTO RICO FISCAL AGENCY AND FINANCIAL ADVISORY AUTHORITY'S OBJECTION TO MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER AUTHORIZING COMMITTEE TO PURSUE CERTAIN CAUSES OF ACTION ON BEHALF OF COMMONWEALTH AND <u>GRANTING RELATED RELIEF [ECF 6325]</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the elected Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

 **Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    NON-CONSENSUAL DERIVATIVE STANDING DOES NOT EXIST UNDER TITLE III OF PROMESA OUTSIDE OF THE CONFINES OF BANKRUPTCY CODE SECTION 926. .................................................................. 3

        A.    Chapter 7 and Chapter 11 Principles of Derivative Standing Do Not Apply Under PROMESA. ................................................................. 3

        B.    Section 305 of PROMESA Bars the Court from Entering an Order Allowing the Committee to Interfere with Debtor Property by Pursuing Claims Without Oversight Board Consent. ................................ 4

    II.    SECTION 926 CANNOT BE USED TO AUTHORIZE THE COMMITTEE TO PURSUE CLAIMS OTHER THAN AVOIDANCE ACTIONS. ........................................................................................................... 6

    III.    THE COMMITTEE HAS FAILED TO SHOW IT IS ENTITLED TO STANDING TO PURSUE OTHER CLAIMS EVEN IF DERIVATIVE STANDING COULD BE GRANTED IN TITLE III. .......................................... 7

        A.    The Committee Cannot Be Granted Standing to Pursue Claims Against GDB That Have Been Released. ................................................... 9

        B.    If the Court Grants Standing, AAFAF Should Be Permitted to Reserve All Rights to Seek to Revoke Standing Once Complaints Are Filed. ............................................................................................... 10

    IV.    THE COMMITTEE'S ATTEMPT TO SHOEHORN DISCOVERY REQUESTS INTO THE MOTION IS IMPROPER. ......................................... 10

CONCLUSION ............................................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Aurelius Capital Master, Ltd v. Commonwealth of Puerto Rico*, (*In re Fin. Oversight & Mgmt. Bd. for P.R.*),
2019 WL 1349221, at *6 (1st Cir. March 26, 2019) .................................................................. 5

*Frazier v. Fairhaven Sch. Comm.*,
276 F.3d 52 (1st Cir. 2002) ........................................................................................................ 8

*In re America's Hobby Ctr., Inc.*,
223 B.R. 275 (Bankr. S.D.N.Y. 1998) ....................................................................................... 8

*In re City of Detroit, Mich.*.,
838 F.3d 792, 802 (6th Cir. 2016) ............................................................................................. 4

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
583 B.R. 626 (D.P.R. 2017) ....................................................................................................... 6

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
899 F.3d 13 (1st Cir. 2018) ........................................................................................................ 5

*In re New York City Off-Track Betting Corp.*,
2011 WL 309594 (Bankr. S.D.N.Y. Jan. 25, 2011) ............................................................. 4, 9

*In re Richmond Unified School Dist.*,
133 B.R. 221 (Bankr. N.D. Cal. 1991) .................................................................................. 3, 4

*In re Sabine Oil & Gas Corp.*,
547 B.R. 503 (Bankr. S.D.N.Y. 2016), *aff'd,* 562 B.R. 211 (S.D.N.Y. 2016) ......................... 8

*In re Smart World Techs.*,
423 F.3d 166 (2d Cir. 2005) ..................................................................................................... 10

*Law v. Siegel*,
571 U.S. 415 (2014) ................................................................................................................... 5

*Rosselló v. Fin. Oversight & Mgmt. Bd. for P.R.*,
330 F. Supp. 3d 685 (D.P.R. 2018) ........................................................................................... 6

*Sasen v. Spencer*,
879 F.3d 354 (1st Cir. 2018) ...................................................................................................... 7

*Segarra-Miranda v. Perez-Padro*, 482 BR 59 (D.P.R. 2012). ....................................................... 8

*Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*,
779 F.2d 901 (2nd Cir. 1995) .................................................................................................... 9

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

**STATUTES**

11 U.S.C. § 926(a) ................................................................................................................. 6

48 U.S.C. § 2124(o) ............................................................................................................... 5

48 U.S.C. § 2161(a) ............................................................................................................... 6

48 U.S.C. § 2175 .................................................................................................................... 5

The Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), acting pursuant to the authority granted to it under the *Puerto Rico Fiscal Agency and Financial Advisory Authority Act*, Act 2-2017, respectfully submits this objection to the *Motion of Official Committee of Unsecured Creditors for Order Authorizing Committee to Pursue Certain Causes of Action on Behalf of Commonwealth and Granting Related Relief* [Dkt. No. 6325] (the "Motion"). In support of this objection, AAFAF respectfully states as follows:

### PRELIMINARY STATEMENT

1. Through its Motion, the Official Committee of Unsecured Creditors (the "Committee") seeks non-consensual derivative standing to pursue a host of speculative claims against a wide variety of parties. While the Motion is replete with inflammatory accusations, there is no legal basis to grant the relief the Committee seeks.

2. Even though the Committee has not disclosed its anticipated claims, the Motion makes clear that many of them are not avoidance actions that a trustee may be appointed to pursue under section 926 of the Bankruptcy Code; indeed the Committee relies on other sections of the Bankruptcy Code to justify the relief it seeks to pursue non avoidance action claims. The plain text of section 926 is critical: it is the only statutory provision allowing for appointment of a third party to non-consensually pursue claims belonging to the Commonwealth, and it explicitly limits the causes of action that can be pursued to avoidance actions. Because Congress specifically identified when derivative standing can be obtained and limited standing to pursuing avoidance actions, no other basis for standing exists and no other kinds of claims can be brought derivatively.

3. There is more. Section 305 of PROMESA drives home the conclusion that appointment of a trustee under section 926 of the Bankruptcy Code is the *only* permissible mechanism through which a private party may obtain non-consensual derivative standing to pursue

1

claims belonging to a Title III debtor. The analysis is simple: Section 305 prohibits the Court from interfering with the Commonwealth's use of its property unless the Oversight Board consents. The claims the Committee seeks to pursue are, necessarily, Commonwealth property. The Oversight Board has not consented to the Committee pursuing the claims. Issuing an order allowing the Committee to pursue claims on the Commonwealth's behalf when the Oversight Board and Commonwealth have chosen not to bring those claims would be the paradigmatic example of interference with the Commonwealth's use of its property. Therefore, the Court does not have the power to issue an order permitting such interference under PROMESA.

4.  Even if non-consensual derivative standing were permissible in Title III (and it is not outside of section 926, and even then, only in limited circumstances), the Committee has not demonstrated claims exist worth bringing. At present, it is impossible to assess whether the Committee's contemplated claims suffer from incurable legal defects. As an example, the Motion takes issue with purported transfers of the Commonwealth's property to the Government Development Bank ("GDB"), but in the absence of any draft complaint, it is not clear whether the Committee is seeking to bring claims that are barred by the release the Commonwealth granted in connection with GDB's Title VI restructuring. Similarly, the Committee has provided no details demonstrating that any of the contemplated claims are likely to yield any benefit that would outweigh the cost of litigation. The Committee has not provided any budget or timeline for its proposed litigation, or any assessment of likely or even potential recoveries.

5.  Finally, the Committee improperly attempts to shoehorn a discovery demand into the Motion by requesting an order requiring Kobre & Kim to turn over all documents it reviewed during the course of its investigation and witness interview notes. As described below, the Committee has had access to non-privileged documents in the Kobre & Kim database for months.

2

The Committee's attempt to sneak a request to circumvent a larger dispute over its entitlement to privileged documents into the Motion is wholly inappropriate.

6. For these reasons, the Motion should be denied.

### ARGUMENT

**I. NON-CONSENSUAL DERIVATIVE STANDING DOES NOT EXIST UNDER TITLE III OF PROMESA OUTSIDE OF THE CONFINES OF BANKRUPTCY CODE SECTION 926.**

7. Certain of the Committee's proposed claims fall within sections 544, 545, 547, 548, 549(a), or 550 of the Bankruptcy Code (collectively "Avoidance Actions") while others appear to be based on tort or other theories (collectively "Other Actions"). Put simply PROMESA categorically does not allow the Committee to obtain standing to pursue Other Actions. And even if PROMESA did, the Committee has not made any showing it should be allowed to pursue them.

8. While non-consensual derivative standing to pursue claims like the Other Actions exists in chapter 7 and 11 cases, it has no place in Chapter 9 or PROMESA cases outside of the limited exception in section 926 of the Bankruptcy Code. This is based on the unique nature of municipal debtors as governmental entities, and the fact that they are free to use their property and assets without the strictures that control other debtors.

**A. Chapter 7 and Chapter 11 Principles of Derivative Standing Do Not Apply Under PROMESA.**

9. The Committee relies entirely on decisions under Chapter 7 and Chapter 11 to request non-consensual derivative standing. But those cases are inapplicable here. "Many of the principles that apply in the other chapters of the Bankruptcy Code are of limited assistance in construing of Chapter 9," given the unique considerations of municipal debtors. *See In re Richmond Unified School Dist.*, 133 B.R. 221, 225 (Bankr. N.D. Cal. 1991) (citations omitted). "The bankruptcy of a public entity . . . is very different from that of a private person or concern."

3

*Id.* Traditional concepts applicable in Chapter 7 and Chapter 11—like value maximization for creditors, court control over debtor property, and purported conflicts of interest—do not apply under chapter 9, and give way to the needs of a municipal debtor to serve its essential governmental function. *See, e.g.*, *id.*; *In re New York City Off-Track Betting Corp.*, 2011 WL 309594, at *5 (Bankr. S.D.N.Y. Jan. 25, 2011) ("Unlike the Bankruptcy Code generally, chapter 9 is not concerned with balancing the rights of creditors and debtors. Rather, the principal purpose of chapter 9 is to allow municipal debtors the opportunity to continue operations while adjusting or refinancing their creditor obligations."); *In re City of Detroit, Mich.*, 838 F.3d 792, 802 (6th Cir. 2016) ("Many of the protections afforded to creditors in other bankruptcy chapters are missing in Chapter 9. Chapter 9 provides a municipal debtor with an array of bankruptcy powers to enable it to achieve financial rehabilitation with very few, if any, corresponding limitations and duties of the type to which a Chapter 11 debtor is subject.") (internal citations omitted).

      **B.**    **Section 305 of PROMESA Bars the Court from Entering an Order Allowing the Committee to Interfere with Debtor Property by Pursuing Claims Without Oversight Board Consent.**

      10.    Consistent with that overlay, the Commonwealth is protected by powerful non-interference provisions such as PROMESA sections 303[2] and 305, and the latter specifically prohibits a court from interfering with a debtor's property without the consent of the Oversight Board. As the First Circuit held in March 2019: "[W]e [have] observed that Section 305 is 'respectful and protective of the status of the Commonwealth and its instrumentalities as governments, much like [S]ection 904 of the municipal bankruptcy code.' We accordingly [have] concluded that Section 305 'bar[s] the Title III court itself from directly interfering with the

---

[2] As discussed in footnote 4 below, given the lack of draft complaints, AAFAF cannot determine whether section 303 of PROMESA is implicated by any claims the Committee wants to pursue, and AAFAF therefore should be permitted to reserve all of its rights related to that provision.

debtor's powers or property' because doing so would 'impinge[] on [the Commonwealth's] autonomy.'" *Aurelius Capital Master Fund, Ltd v. Commonwealth of Puerto Rico*, *(In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 2019 WL 1349221 (1st Cir. March 26, 2019) (quoting *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 899 F.3d 13 (1st Cir. 2018)). Of course, the Other Actions are Commonwealth property, and wresting them from the Commonwealth and forcing them to be pursued without the Oversight Board's consent (which the Committee concedes has not been given) would "impinge on the Commonwealth's authority." No section of the Bankruptcy Code cited by the Committee in its request to pursue Other Actions can override section 305's non-interference provision, nor can the Court's equitable powers supplant express statutory provisions like section 305. *Law v. Siegel*, 571 U.S. 415, 421 (2014) ("It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'") (internal citations omitted). As a result, the Committee's claimed authority to pursue the Other Actions has no legal support.

11. Moreover, allowing the Committee to step into the shoes of the Oversight Board would radically rework PROMESA. The Oversight Board has specifically delineated powers under PROMESA, including the power to act as the "representative" of debtors in Title III cases, and to "investigate the disclosure and selling practices in connection with the purchase of bonds issued by a covered territory for or on behalf of any retail investors including any underrepresentation of risk for such investors and any relationships or conflicts of interest maintained by such broker, dealer, or investment . . . ." *See* 48 U.S.C. §§ 2124(o), 2175. PROMESA does not allow a private party to usurp either of those roles. The decision to prosecute (or not) claims pertaining to bond issuances arises directly from the Oversight Board's authority under PROMESA to investigate those very claims and to serve as the debtor's representative in

5

Title III. The Oversight Board has not consented to the Committee bringing the claims it chose not to pursue, and there is no legal basis whatsoever for the Committee's attempt to usurp the Oversight Board's unique role with respect to these claims.

12. The limited powers Congress delegated to the Oversight Board reflects a recognition and confirmation of the elected Government's political power and the right of the Puerto Rican people of self-government. *See, e.g.*, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 583 B.R. 626, 637 (D.P.R. 2017) (recognizing that under PROMESA's power-sharing structure, the Oversight Board had no authority to impose structural changes to PREPA and denying the Oversight Board's Motion to appoint a Chief Transformation Officer); *Rosselló v. Fin. Oversight & Mgmt. Bd. for P.R.*, 330 F. Supp. 3d 685, 701 (D.P.R. 2018) (noting PROMESA is an "awkward power-sharing arrangement" between the Oversight Board and the territorial government).

13. In crafting this power-sharing arrangement between the Oversight Board and the elected Government, Congress made clear that the limited powers taken from the elected Government in PROMESA belong to the Oversight Board. Congress did not include the Committee or any other private party in the mix, except as discussed below with respect to Bankruptcy Code section 926. As a consequence, the Committee cannot obtain derivative standing to pursue claims outside of that section.

**II. SECTION 926 CANNOT BE USED TO AUTHORIZE THE COMMITTEE TO PURSUE CLAIMS OTHER THAN AVOIDANCE ACTIONS.**

14. Section 926 provides that "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a) or 550 of the [Bankruptcy Code], then on the request of a creditor, the court may appoint a trustee to pursue such cause of action." 11 U.S.C. § 926(a) (incorporated into PROMESA at 48 U.S.C. § 2161(a)). Section 926's inclusion in PROMESA has two consequences: *first*, as the only mechanism for specifically appointing a private party to stand

6

in the Oversight Board's shoes, it underscores that no other mechanism to do so exists; *second*, it makes clear that only certain kinds causes of action (namely Avoidance Actions) can be pursued derivatively. Each of these consequences flows ineluctably from the doctrine of *inclusio unius est exclusio alterius*. *See Sasen v. Spencer*, 879 F.3d 354, 362, (1st Cir. 2018) ("[T]he venerable canon of statutory construction *inclusio unius est exclusio alterius . . .* teaches that if one of a category is expressly included within the ambit of a statute, others of that category are implicitly excluded") (citing *Frazier v. Fairhaven Sch. Comm.*, 276 F.3d 52, 68 (1st Cir. 2002)). Under this doctrine, Congress's decision to define when derivative standing exists in a Title III case, and what kinds of causes of action may be pursued derivatively means that no other kind of standing may be granted and no other kinds of causes of action may be pursued. As applied here, that means that the Committee can *only* be granted standing under section 926 (if at all) and it can *only* pursue Avoidance Actions (if it can meet the applicable standard for pursuing them) and not Other Actions.

### III. THE COMMITTEE HAS FAILED TO SHOW IT IS ENTITLED TO STANDING TO PURSUE OTHER CLAIMS EVEN IF DERIVATIVE STANDING COULD BE GRANTED IN TITLE III.

15. Assuming arguendo that derivative standing exists under Title III outside of section 926, to obtain derivative standing the Committee would have to demonstrate (1) it has colorable claims for relief "that on appropriate proof would support a recovery," and (2) the Title III Debtors "unjustifiably refused to bring such claims." *In re Sabine Oil & Gas Corp.*, 547 B.R. 503, 519 (Bankr. S.D.N.Y. 2016), *aff'd,* 562 B.R. 211 (S.D.N.Y. 2016). In addition, the "Court must weigh the probability of success, the potential financial recovery, and the costs to the estates of the proposed litigation in examining whether the proposed litigation is likely to benefit the estates and will not impair the Debtors' reorganization." *Id.* at 519 (citing *In re America's Hobby Ctr., Inc.*, 223 B.R. 275, 282 (Bankr. S.D.N.Y. 1998)); *see also Unsecured Creditors Comm. of Debtor STN*

7

*Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 905–06 (2nd Cir. 1995).[3] The Committee has not satisfied any of these requirements with respect to Avoidance Claims or Other Actions.

16. The Motion does not show that any claims the Committee would bring are colorable. The Motion has sparse details about the Committee's contemplated lawsuits, other than that the Oversight Board (through its Special Claims Committee) has, in its discretion and after spending millions of dollars of public money and having conducted an extensive investigation into potential claims, declined to pursue them — even though it has agreed to pursue other claims. The Committee has not provided the Court with draft complaints or any analysis showing that its claims have any merit or that it should be entitled to second-guess and override the Special Claims Committee's judgment. As a consequence, it is impossible to tell whether the claims the Committee intends to bring on its own face insurmountable legal defenses, such as statutes of limitations or whether the tort of deepening insolvency even exists under Puerto Rico law. On the latter theory, the Committee does not cite a single Puerto Rico or First Circuit case for the proposition that the tort of deepening insolvency exists, and ignores the substantial legal dispute over the validity of that claim generally. In fact, the only reported relevant federal case in Puerto Rico observed that the Puerto Rico Supreme Court had never adopted the theory, but noted that "P.R. Law Ann. tit. 14, § 3786 contains language that might close application of this theory in Puerto Rico." *Segarra-Miranda v. Perez-Padro*, 482 BR 59, 66 n.6 (D.P.R. 2012). Given the

---

[3] The standard for appointing a trustee under section 926 is similar: *see* 6 Collier on Bankr. ¶ 926.02 ("In order for a judge to make the decision required by section 926, the requesting creditor will be required to present a substantial showing, both factual and legal, of the likelihood of the existence of a voidable transfer."). Additionally, courts should be "be loath to appoint a trustee given that the court's limited powers in a [Title III] case are best understood as operating within the context" of a statutory scheme that preserves a debtor's municipal autonomy in exercise of its political and governmental powers, including control over its property. *In re New York City Off-Track Betting Corp.*, 2011 WL 309594, at *4. For the reasons described above, the Committee has failed to meet this standard as well under section 926.

8

Special Claims Committee's decision not to pursue these claims, Puerto Rico should not have to foot the bill for the Committee to pursue such speculative relief.

17. Indeed, the Committee has not shown that pursuing these claims is likely to benefit the Debtors relative to the cost of litigation. The Committee has not provided any litigation budget as to what it might spend (or, more accurately, cause the people of Puerto Rico to spend) or estimates of what it may recover. The combination of the failure to identify specific claims, the strength of potential defenses, the time frame on which such claims may be resolved and the cost to be incurred mean that the Committee has not met is burden of showing "there is a sufficient likelihood of success to justify the anticipated delay and expense to the bankruptcy estate that the initiation and continuation of litigation will likely produce." *In re Smart World Techs.*, 423 F.3d 166, 177–178 (2d Cir. 2005) (quoting *STN Enters.*, 779 F.2d at 906). As such, the Committee should not be granted *carte blanche* to run amok and commence years of expensive litigation which will drain the public fisc.

### A. The Committee Cannot Be Granted Standing to Pursue Claims Against GDB That Have Been Released.

18. Although unclear, the Motion appears to seek standing to assert claims that the Committee has agreed have already been released. Paragraphs 72-76 of the Motion are replete with references to purported actual and fraudulent transfers of the Commonwealth's property to GDB. Without draft complaints attached to the Motion, no one can tell who the Committee wants permission to sue, but one thing should be made clear: it cannot sue GDB. All Puerto Rico governmental entities, including the Commonwealth, have released GDB from any liability. Specifically, all governmental entities were "deemed to forever waive, release and discharge GDB, the Recovery Authority and the Public Entity Trust . . . from any and all such claims. *Informative Motion Regarding Releases Under Article 702 of the GDB Restructuring Act*, No. 18-1561, [Dkt.

9

151, ¶ 3 (D.P.R. Sept. 17, 2018)]. The Committee has acknowledged the validity of these releases. *See Stipulation Resolving the Objection of the Official Committee of Unsecured Creditors of all Title III Debtors (Other Than COFINA) to the Approval Application*, No. 18-1561, [Dkt. 187, ¶ 8 (D.P.R. Oct. 9, 2018)]. Thus, it must be clarified that, to the extent the Committee is granted standing to pursue any claims, it cannot pursue any claim released in connection with GDB's restructuring.

### B. If the Court Grants Standing, AAFAF Should Be Permitted to Reserve All Rights to Seek to Revoke Standing Once Complaints Are Filed.

19. To the extent the Court does grant standing (under any legal theory), AAFAF should be able to retain the right to file a motion to revoke such standing after any complaint is filed on the grounds that such complaint is not justified either under the traditional standards for granting derivative standing or because appointment of the trustee was in violation of section 303 of PROMESA[4] — and the burden to demonstrate that such standard is met should remain with the Committee.

### IV. THE COMMITTEE'S ATTEMPT TO SHOEHORN DISCOVERY REQUESTS INTO THE MOTION IS IMPROPER.

20. The Committee's request for an order requiring Kobre & Kim to turn over all documents and witness interview notes should be denied. *See* Mot. at 37.

21. *First*, the Committee has access to almost all of these materials already. While the Committee does not provide specificity for its request beyond "all documents collected by Kobre

---

[4] Section 303 of PROMESA provides that no provision of Title III limits or impairs the Commonwealth's power to control itself or its instrumentalities through the exercise of political or governmental powers, including through expenditures. Section 926 is part of Title III; therefore it cannot be used to limit or impair governmental powers protected by section 303. The same holds true for any provision of Title III that would be used to justify the grant of derivative standing. Without knowing what causes of action the Committee wishes to pursue, AAFAF cannot determine whether section 303 is implicated — and its ability to protect the statutory protection given the Commonwealth should be preserved.

10

& Kim and all of the firm's interview notes." *Id.* AAFAF reads this as requesting the contents of the Document Depository and Kobre & Kim's interview notes.

22. But the Committee conspicuously omits the fact that it has had access to the GDB documents in the Kobre & Kim Document Depository *for nearly nine months*. AAFAF and GDB, during Kobre & Kim's investigation, made every effort to produce documents simultaneously to Kobre & Kim and the Committee. As AAFAF and GDB represented to the Court, as of July 25, 2018, the Committee had access to the same set of non-privileged documents as Kobre & Kim. *See Objection by AAFAF, Acting as Representative of GDB, to the UCC's Informative Motion Regarding Renewed Rule 2004 Motion and Discovery Items to be Addressed at July 25, 2018 Omnibus Hearing*, Dkt. No. 3466, ¶ 4 ("AAFAF's counsel has made abundantly clear to the Committee that it will receive non-privileged documents produced in response to those requests simultaneously with or shortly after their production to the Investigator. AAFAF and GDB currently expect those productions to be complete before the July 25 Omnibus Hearing.").

23. That was not enough for the Committee. On August 22, 2018—two days after Kobre & Kim published its final report—AAFAF and GDB received notice that the Committee requested full access to the Document Depository under the procedures outlined in this Court's Exit Plan Order. AAFAF and GDB only objected to that request to the extent that the Committee sought privileged material. The parties resolved that objection through months of tedious meet-and-confer efforts, which remain ongoing.

24. In short, the Committee either has the documents in the Document Depository or has agreed to limitations of that request in the meet and confer process. It is not at all apparent what else the Committee seeks, and it makes no effort to clarify the scope of its demands in its Motion.

11

25. *Second*, to the extent that the Committee is requesting materials that Kobre & Kim has not yet provided to it, including Kobre & Kim's "interview notes," and other information AAFAF or GDB provided Kobre & Kim access to (which may contain confidential or privileged information belonging to GDB or AAFAF), trying to jam this request through by giving parties two days to object is inappropriate. The Exit Plan Order was negotiated between Kobre & Kim, interested parties, and Magistrate Judge Dein over the course of months. The meet and confer process AAFAF and GDB entered into in good faith with the Committee just over the small portion of segregated documents in the Document Depository also took months (and is still ongoing). The Committee's Motion was filed on an emergency basis to address standing issues, not discovery matters. *See Urgent Joint Motion for Entry of Order Approving Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action* [Dkt. No. 6306]. That urgent motion said nothing about discovery disputes and limited the relief it sought to filing a motion for the Committee to be appointed as a plaintiff or trustee regarding causes of action for which the statute of limitations might expire imminently. *Id.* at ¶ 9. As a consequence, this Motion is not the proper mechanism for the parties or for the Court to adjudicate what documents the Committee might be entitled to if it is appointed to pursue certain claims. That dispute entails complicated issues of privilege and common interest between AAFAF, GDB and the Oversight Board, and should not be decided on such an expedited schedule in the face of a motion that lacks clarity as to what the Committee is seeking, and when there is no emergency.

## CONCLUSION

Accordingly, for the reasons stated above, AAFAF respectfully requests that this Court deny the Motion.

Dated: April 19, 2019
San Juan, Puerto Rico

Respectfully submitted,

| | |
|---|---|
| /s/ Peter Friedman | /s/ Luis C. Marini-Biaggi |
| John J. Rapisardi<br>Suzzanne Uhland<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>7 Times Square<br>New York, New York 10036<br>Tel: (212) 326-2000<br>Fax: (212) 326-2061<br><br>-and-<br><br>Peter Friedman<br>(Admitted *Pro Hac Vice*)<br>1625 Eye Street, NW<br>Washington, D.C. 20006<br>Tel: (202) 383-5300<br>Fax: (202) 383-5414<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* | Luis C. Marini-Biaggi<br>USDC No. 222301<br>Email: lmarini@mpmlawpr.com<br><br>Carolina Velaz-Rivero<br>USDC No. 300913<br>E:mail: cvelaz@mpmlawpr.com<br><br>**MARINI PIETRANTONI MUÑIZ LLC**<br>MCS Plaza, Suite 500<br>255 Ponce de León Ave.<br>San Juan, Puerto Rico 00917<br>Tel: (787) 705-2171<br>Fax: (787) 936-7494<br><br>*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* |