IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**LIMITED OBJECTION OF THE OFFICIAL
COMMITTEE OF RETIRED EMPLOYEES OF
THE COMMONWEALTH OF PUERTO RICO TO THE
UNSECURED CREDITORS' COMMITTEE'S MOTION FOR ORDER
AUTHORIZING UNSECURED CREDITORS' COMMITTEE TO PURSUE
CERTAIN CAUSES OF ACTION ON BEHALF OF COMMONWEALTH**

---

[1] The Debtors in these jointly-administered PROMESA title III cases (these "**Title III Cases**"), along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric and Power Authority (Bankruptcy Case No. 17 BK 4780) (Last Four Digits of Federal Tax ID: 3747).

The Official Committee of Retired Employees of the Commonwealth of Puerto Rico (the "**Retiree Committee**") hereby files this limited objection to the *Motion for Order Authorizing the Unsecured Creditors Committee to Pursue Certain Causes of Action on Behalf of Commonwealth and Granting Related Relief* (Dkt. 6325) (the "**Trustee Motion**") filed by the Official Committee of Unsecured Creditors of the Commonwealth of Puerto Rico (the "**UCC**"), and states:

## INTRODUCTION

1. Through the Trustee Motion, the UCC seeks permission to bring mostly unidentified Causes of Action[2] against mostly unidentified individuals and entities that the Financial Oversight and Management Board for Puerto Rico (the "**FOMB**") has told the UCC it does not intend to prosecute. As the UCC notes, under the current state of affairs at least some of the Causes of Action (in particular, the Avoidance Actions) must be brought by May 2, 2019 if they are to be brought at all.

2. The Retiree Committee believes that if litigation materially benefiting the Commonwealth can be pursued, it should be pursued. But litigation should not be brought for its own sake, and the Motion seeks to give the UCC broad authority to commence an untold number of adversary proceedings. Such an endeavor will be both time consuming and expensive and may significantly delay the completion of the Title III case and the ability of the Commonwealth to fully put this case behind it and look forward. While the claims subject to the Trustee Motion may ultimately be worth the cost, it is impossible for anyone (even the UCC) to make that determination based on the present record.

3. Consequently, what the Trustee Motion demonstrates most is the need for the Court to grant the *Motion of the Financial Oversight and Management Board of Puerto Rico for Entry*

---

[2] Capitalized terms not herein defined shall have the meaning ascribed to them in the Trustee Motion.

*of an Order Equitably Tolling the Time Prescribed by 11 U.S.C. § 546 to Bring Certain Avoidance Actions* (Dkt. 6118) (the "**Tolling Motion**"). Granting the Tolling Motion will moot the Trustee Motion, and give the FOMB, the UCC, and the Retiree Committee the opportunity to work together to determine what Causes of Action should be brought, thereby minimizing cost and prolongation of this case.

4. In the event the Court denies the Tolling Motion, the Trustee Motion should be granted but only with the addition of certain procedural safeguards. Specifically, the UCC should be allowed to file solely its identified avoidance-action Causes of Action, since only avoidance actions are subject to appointment of a trustee under Bankruptcy Code section 926(a) (and only avoidance actions are subject to the urgency of the statute of limitations under section 546(a)). Further, the filing of such actions should be subject to this Court subsequently making findings through a structured process that the FOMB's refusal to bring the Causes of Action was not motivated by reasonable and appropriate considerations but "by reason of political pressure or desire for future good relations with a particular creditor or class of creditors"—the scenario Congress envisioned requiring the appointment of a trustee when it created section 926(a). S. Rep. No. 95-989, at 111 (1978). In addition, to ensure that only material claims are brought, the Court should require that any Cause of Action brought seek the avoidance of at least $25 million in alleged transfers or at least $25 million in alleged damages for non-avoidance Causes of Action (or some similar materiality threshold as the Court determines appropriate), from a set of defendants that can reasonably be expected to satisfy such a judgment.

## BACKGROUND

5. On April 16, 2019, the Oversight Board, the Special Claims Committee, and the UCC filed a motion [Docket No. 6305] to approve a stipulation (the "**Stipulation**") under which the UCC would be authorized to pursue certain litigation as "co-plaintiff" or "co-trustee" with the

Oversight Board or its Special Claims Committee. The Stipulation does not authorize the UCC to pursue actions on the Commonwealth's behalf unilaterally, but expressly contemplates the UCC's pursuit of bond counsel, disclosure counsel, underwriters, underwriters' counsel, swap counterparties, or auditors (the "**Financial Party Targets**") on fraudulent transfer, fraud, breach of fiduciary duty, and/or deepening insolvency theories in connection with the Debtors' bond offerings. (*See Stipulation* ¶¶13, 18, Dkt. 6381, Ex. A.) In short, the Stipulation contemplates that the UCC would seek approval to bring the Causes of Action that the Commonwealth would not agree to bring.

6. On April 17, 2019, the UCC filed the Trustee Motion, which seeks appointment of the UCC as trustee under section 926(a) and "otherwise granting the Committee derivative standing to continue investigating and, if necessary, prosecute the Causes of Action on the Commonwealth's behalf, free from the Oversight Board's continued obstruction and interference." (Trustee Motion ¶78.)

7. As the UCC acknowledges, it is unable to provide the level of detail and clarity that is typically associated with a party seeking derivate standing and goes into detail about why that is the case. Whatever the reason, the UCC is only "able to describe, preliminarily, the basis for claims against individuals, underwriters, and the debt offering participants." (Trustee Motion ¶64). By way of example, the UCC suggests it can bring "meritorious claims" against parties involved in the Commonwealth's May 2014 issuance of $3.5 billion of general obligation bonds, including claims against "officers and directors of GDB" and Banco Popular, "which advised GDB's officers and directors against the 2014 GO Bond issuance but then participated in underwriting the bonds." (Trustee Motion ¶65.) The Trustee Motion also identifies a number of other entities and individuals—including counsel to the Oversight Board—as being implicated in the 2014 Bond

3

issuance without specifying whether it intends to sue these parties. (*See* Trustee Motion ¶¶66-76.) The Trustee Motion surmises that the 2014 bond issuance "may very well have deepened the Commonwealth's insolvency while cashing out the underwriters and propping up GDB's balance sheet through fraudulent transfers, even as GDB was engaging high-level professionals to deal with the inevitable insolvency of some or all of Puerto Rico." (Trustee Motion ¶76.)

### ARGUMENT

    A.    **The Trustee Motion Shows The Need For The Court To Grant The Tolling Motion.**

8.    If the Trustee Motion does anything, it shows that the current state of play regarding the pursuit of litigation over the Commonwealth's various bond offerings is in chaos. Against that backdrop, the UCC seeks broad authority to bring unknown claims against unknown individuals and entities in the time frame of essentially a week. The UCC states that this is unavoidable because they have been "placed in [an] impossible position." (Trustee Motion ¶63). That may very well be true. But the primary issue now is not "how did we get here" or "who is to blame" for the present state of affairs. Instead, the pressing question is what is the best approach to maintain potentially valid and material causes of action while doing so in the most economical manner possible?

9.    The Retiree Committee believes the answer is for the Court to grant the Tolling Motion. Doing so essentially will moot the Trustee Motion and will provide the breathing space the parties (the Oversight Board, the UCC, and the Retiree Committee) need to fully evaluate what Causes of Action should be brought. Once that is done, if the UCC still wants to seek appointment as trustee under section 926(a), it can do so with the benefit of being able to lay out clearly and specifically the precise claims it seeks authority to pursue. This serves everyone's interests and is

the only way to allow interested parties the chance to meaningfully evaluate the UCC's requested relief.

      **B.    In The Alternative, The Court Should Put In Procedural Safeguards To Govern The UCC's Complaints.**

10. If the Court were to deny the Tolling Motion, the Court should grant the Trustee Motion but provide that (i) the UCC only bring avoidance-action Causes of Action that are subject to Bankruptcy Code sections 926(a) and 546(a), and (ii) the UCC's continuing ability to pursue the filed actions is dependent upon the Court subsequently finding in a structured process to be established by the Court that the FOMB's refusal to bring those claims was "by reason of political pressure or desire for future good relations with a particular creditor or class of creditors." S. Rep. No. 95-989, at 111 (1978). Moreover, the Court should also set a materiality threshold requiring that the UCC may only bring avoidance-action Causes of Action that seek the avoidance of at least $25 million or damages of at least $25 million, or some similar threshold as determined by the Court to be appropriate, from a set of defendants that can reasonably be expected to satisfy such a judgment.

11. If the Trustee Motion is denied, then potentially viable and valuable claims likely will be lost. Such a result clearly would not be in the best interest of the Commonwealth or its creditors. With that said, the Retiree Committee is not comfortable with the *carte blanche* authority the UCC seeks. As noted above, the UCC is simply unable to provide the level of detail regarding the claims it wishes to bring that one normally would expect to see with a request of this nature. While this inability may be, as the UCC argues, wholly outside of its control, the fact remains that because the UCC cannot specify whom it intends to sue and what basis, it is impossible to determine whether these claims are worthwhile.

12. This is a substantial issue given that the appointment of a trustee under section 926(a) is a rare occurrence and appropriate only under limited circumstances. In fact, the Senate Committee Report explained the section was included for circumstances where a municipality refuses to bring an avoidance action "by reason of political pressure or desire for future good relations with a particular creditor or class of creditors." S. Rep. No. 95-989, at 111 (1978). Because "it might be very awkward for those same officials to turn around and demand the return of the payments following the filing of the petition," a trustee would be warranted. *Id.*; *see also In re New York City Off-Track Betting Corporation*, No. 09-17121(MG), 2011 WL 309594, at *5 (Bankr. S.D.N.Y. Jan. 25, 2011) (holding that the core purpose of section 926(a) was to allow a trustee to step in to further the goal of chapter 9—a sustainable municipal entity—"in those circumstances in which a debtor, that, for the sake of its *future interests*, does not wish to compromise or alienate important creditor relationships." (emphasis in original)).

13. Consequently, the best way to ensure that the Causes of Action the UCC will bring are truly in the best interest of the Commonwealth is to give the UCC conditional authority to file the avoidance-action Causes of Action but also ordering that the actions may not proceed until the Court determines whether the FOMB refused to bring the actions for an improper purpose. This approach will allow the Court to honor the purpose of section 926(a) while recognizing the truly unique circumstances these cases present.

14. In addition, recognizing the need of the Commonwealth to eventually bring this Title III case to conclusion and not get mired in immaterial litigation, the Court only should authorize the UCC to bring avoidance-action Causes of Action where the UCC seeks to avoid at least $25 million in transfers or seeks at least $25 million in damages, or some similar materiality threshold as the Court determines to be appropriate, from a set of defendants reasonably believed

to be able to satisfy such a judgment. Such a materiality requirement will ensure that only litigation that will materially benefit the Commonwealth and its creditors is brought.

## **CONCLUSION**

For all of the foregoing reasons the Retiree Committee respectfully requests that the Court grant the Tolling Motion, thereby mooting the Trustee Motion, or, in the alternative, grant the Trustee Motion but do so with the Retiree Committee's requested procedural modifications and granting such other relief as may be just.

| | |
|---|---|
| April 20, 2019 | Respectfully submitted, |
| JENNER & BLOCK LLP | BENNAZAR, GARCÍA & MILIÁN, C.S.P. |
| By:<br>*/s/ Robert Gordon*<br>Robert Gordon (admitted *pro hac vice*)<br>Richard Levin (admitted *pro hac vice*)<br>Carl Wedoff (admitted *pro hac vice*)<br>919 Third Ave<br>New York, NY 10022-3908<br>rgordon@jenner.com<br>rlevin@jenner.com<br>cwedoff@jenner.com<br>212-891-1600 (telephone)<br>212-891-1699 (facsimile) | By:<br>*/s/ A.J. Bennazar-Zequeira*<br>A.J. Bennazar-Zequeira<br>Héctor M. Mayol Kauffmann<br>Edificio Union Plaza<br>1701 Avenida Ponce de León #416<br>Hato Rey, San Juan, PR 00918<br>ajb@bennazar.org<br>hector.mayol@bennazar.org<br>787-754-9191 (telephone)<br>787-764-3101 (facsimile)<br><br>*Counsel for The Official Committee of Retired Employees of Puerto Rico* |
| Catherine Steege (admitted *pro hac vice*)<br>Melissa Root (admitted *pro hac vice*)<br>Landon Raiford (admitted *pro hac vice*)<br>353 N. Clark Street<br>Chicago, IL 60654<br>csteege@jenner.com<br>mroot@jenner.com<br>lraiford@jenner.com<br>312-222-9350 (telephone)<br>312-239-5199 (facsimile) | |