# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| *In re*<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>                  Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

### AMBAC ASSURANCE CORPORATION'S LIMITED OBJECTION TO THE MOTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR ORDER AUTHORIZING COMMITTEE TO PURSUE CERTAIN CAUSES OF ACTION ON BEHALF OF COMMONWEALTH AND GRANTING RELATED RELIEF

Ambac Assurance Corporation ("Ambac") hereby submits this limited objection to the *Motion of Official Committee of Unsecured Creditors for Order Authorizing Committee to Pursue Certain Causes of Action on Behalf of Commonwealth and Granting Related Relief* (Dkt. No. 6325, the "Motion" or "Mot."). In support hereof, Ambac respectfully states as follows:

1. By their Motion, the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") and certain members of the Committee seek to be appointed as trustee under Section 926(a) of the Bankruptcy Code to pursue avoidance claims, and further ask to be granted derivative standing to pursue other claims arising under applicable

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

non-bankruptcy law—all on behalf of the Commonwealth of Puerto Rico (the "Commonwealth"). The targets of these claims are financial institutions, legal advisors, auditors, and other professionals and fiduciaries involved in the issuances of certain Commonwealth general obligation ("GO") bonds, as well as bonds issued by the Puerto Rico Public Buildings Authority ("PBA") and Puerto Rico Employees' Retirement System. The claims themselves, referred to in the Motion as the "Causes of Action" (Mot. ¶ 4), sound in "theories of fraudulent transfer, fraud, breach of fiduciary duty, and/or deepening insolvency" (id. ¶ 10).

2. Ambac agrees with the Committee that the Causes of Action should be brought. The claims are an important means of recovering value for creditors, who have been gravely harmed by the practices that led to the Commonwealth's reckless incurrence of debt in the years leading up to its fiscal crisis. The prosecution of these claims is also essential to the credibility of the PROMESA process—including its core congressional purpose of "achiev[ing] fiscal responsibility"—by ensuring not only that the public understand the practices that led to the crisis, but also that the professionals and Puerto Rico government officials involved in these questionable practices be held accountable for their role.

3. At the same time, however, Ambac objects to the Committee's Motion because the Committee is the wrong entity to prosecute the Causes of Action. The parties most directly impacted by the challenged debt issuances are not the relatively small-dollar creditors that the Committee has added as movants as a means of addressing the fact that the Committee itself is not a "creditor" within the meaning of Section 926(a), and thus likely may not serve as a trustee under that provision.[2] Rather, the parties most directly impacted by the challenged debt issuances are the holders and/or insurers of bonds that were issued in earlier years with proper constitutional

---

[2] Indeed, so far as can be discerned from the Committee's filings, one of those recently added movants—the Service Employees International Union—does not appear to have any financial exposure to the Commonwealth at all.

2

authority. Debt service on those challenged bonds—and monies that were paid to financial and other professionals in connection therewith—are funds that would have been available for other purposes, preventing (or at least mitigating) the catastrophic bond defaults that have occurred since 2016 and caused Ambac alone to pay tens of millions of dollars in claims on its applicable financial guaranty insurance policies (with no end in sight). This is especially so with respect to vintage bonds that Ambac insures and owns, including pre-2012 GO bonds, pre-2009 PBA bonds, and revenue bonds issued by the Puerto Rico Highways and Transportation Authority, Puerto Rico Infrastructure Financing Authority, and Puerto Rico Convention Center District Authority, to which Ambac has a collective exposure exceeding $1 billion. The Committee and its constituent members seeking trustee status and/or derivative standing are not remotely comparable in terms of their motivation to pursue the Causes of Action to their appropriate conclusion.

4. Moreover, there are significant questions surrounding the procedural propriety of the Committee serving as a Section 926 trustee to assert avoidance claims—questions that are not necessarily remedied by the addition of certain Committee members as movants.[3] As for the Committee's desire to serve as a derivative plaintiff to assert non-avoidance claims, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), in its objection to the Motion (Dkt. No. 6418), has taken the position that such standing is barred by Section 305 of PROMESA unless the Oversight Board consents, which it has emphatically declined to do with respect to the Causes of Action.

---

[3] The Committee appeared to concede at the April 18, 2019 hearing before this Court that a statutory committee is not a "creditor" within the meaning of Section 926(a). The Committee characterized the issue as a "technical" one that can simply be fixed by adding individual Committee members as Section 926 movants. It is unclear whether this adjustment in fact remedies the issue, given that the Committee itself still seeks appointment as a trustee, and it is unquestionably the Committee and its counsel who would be prosecuting the claims if trustee status were granted.

3

5. Regardless of whether either of these challenges to the Committee's ability to serve as a Section 926 trustee or derivative plaintiff is correct, neither of them applies to creditors such as Ambac. As a result, the best course would be to deny the Motion and empower creditors to pursue directly the fraud, breach of fiduciary duty, avoidance or other available claims under Commonwealth law. Ambac stands ready to pursue those claims it deems meritorious and valuable after careful consideration, and expects that it would be joined by others with similarly substantial financial exposures to the Commonwealth and instrumentalities.

6. The Committee suggests that such an outcome is impossible on the theory that the Causes of Action will evaporate into thin air upon the expiration of the relevant deadlines under Sections 546(a) and 108(a) of the Bankruptcy Code, arguing that "the Committee is the **only** party realistically capable of prosecuting the Causes of Action." (Mot. ¶ 5.) Not so. Section 108(c) provides that if the Debtor does not pursue claims belonging to it before the expiration of the relevant statutes of limitations, those limitation periods are tolled for 30 days to permit creditors to pursue claims under applicable non-bankruptcy law. *See* 11 U.S.C. § 108(c)(2). Such claims would include the same or substantially similar claims to the Causes of Action—*e.g.*, claims sounding in constructive fraudulent transfer, fraud, and breach of fiduciary duty under Commonwealth law. The Committee makes no mention of this significant creditor protection built into the Bankruptcy Code. Thus, concerns over timing—which the Committee has actively exploited in its quest to exert control over wide swathes of litigation—are misplaced.[4]

7. In sum, given the vigorous challenges to the propriety of appointing the Committee as a Section 926 trustee or derivative plaintiff, combined with the comparatively weak financial

---

[4] The Oversight Board's assertion that Section 305 precludes the Committee from obtaining derivative standing absent the Oversight Board's consent does not apply to claims brought by creditors following expiration of the statutory deadlines under Sections 546(a) and 108(a) of the Bankruptcy Code. Following such expiration, those claims revert to creditors and are no longer property of the debtor.

motivation of the Committee and its members to aggressively prosecute the Causes of Action, the Court should deny the Motion such that creditors can pursue the claims upon the expiration of the deadlines under Sections 546(a) and 108(a) governing claims brought by the Debtor.

8. In the alternative, should the Court conclude that appointment of the Committee as trustee/derivative plaintiff is proper, it should do so without prejudice to creditors' rights to move to intervene as co-plaintiff, seek appointment as co-trustee, or otherwise join in the prosecution of the Causes of Action. Such a structure would have the added benefit of ameliorating "*Aurelius* risk"—*i.e.*, the possibility that the acts of the Oversight Board following the First Circuit's decision in *Aurelius Investment LLC v. Commonwealth of Puerto Rico*, No. 18-1761, including the acts of any statutory committee prosecuting claims on the Debtor's behalf, might be undone, with valuable claims being lost in the process.

## **CONCLUSION**

9. For the reasons set forth above, Ambac respectfully requests that the Court deny the Motion. In the alternative, should the Court grant the Motion in whole or in part, Ambac requests that the Court do so without prejudice to creditors' ability to move to intervene as co-plaintiff, seek appointment as co-trustee, or otherwise join in the prosecution of the Causes of Action.

*(Remainder of Page Left Intentionally Blank)*

5

Dated: April 20, 2019
      San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: /s/ *Roberto Cámara-Fuertes*
    Roberto Cámara-Fuertes (USDC-PR No. 219002)
    Sonia Colón (USDC-PR No. 213809)
    221 Ponce de León Avenue, 5th Floor
    San Juan, PR 00917
    Telephone: (787) 766-7000
    Facsimile: (787) 766-7001
    Email: rcamara@ferraiuoli.com
          scolon@ferraiuoli.com

**MILBANK LLP**

By: /s/ *Dennis F. Dunne*
    Dennis F. Dunne
    Andrew M. Leblanc
    Atara Miller
    Grant R. Mainland
    (admitted *pro hac vice*)
    55 Hudson Yards
    New York, NY 10001
    Telephone: (212) 530-5770
    Facsimile: (212) 822-5770
    Email: ddunne@milbank.com
          aleblanc@milbank.com
          amiller@milbank.com
          gmainland@milbank.com

***Attorneys for Ambac Assurance Corporation***

**CERTIFICATE OF SERVICE**

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile:  (787) 766-7001
Email:  rcamara@ferraiuoli.com