**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>　　as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>　　　　　　　　　　　Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**REPLY IN SUPPORT OF MOTION OF THE AD HOC GROUP OF
GENERAL OBLIGATION BONDHOLDERS, UNDER BANKRUPTCY
CODE SECTIONS 105(a) AND 502 AND BANKRUPTCY RULE 3007,
ESTABLISHING PROCEDURES WITH RESPECT TO OMNIBUS
CONDITIONAL OBJECTION TO CLAIMS FILED OR ASSERTED BY THE
PUBLIC BUILDINGS AUTHORITY, HOLDERS OF PUBLIC BUILDINGS
AUTHORITY BONDS, AND HOLDERS OF CERTAIN
<u>COMMONWEALTH GENERAL OBLIGATION BONDS</u>**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

    Page

Introduction ................................................................................................................................ 2

Argument .................................................................................................................................... 4

    A.    The Conditional Objection Presents A Justiciable Controversy ................................ 4

    B.    The Conditional Objection Is Procedurally Proper ................................................... 11

Conclusion ................................................................................................................................ 13

## TABLE OF AUTHORITIES

**Cases**

*Cincinnati, N.O. & T.P. Ry. Co. v. Kinman*,
    132 S.W.2d 735 (Ky. 1939) ................................................................................................ 9

*Lehman v. Revolution Portfolio L.L.C.*,
    166 F.3d 389 (1st Cir. 1999) ............................................................................................... 7

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998) .............................................................................................................. 6

**Rule**

Fed. R. Civ. P. 14(a) ................................................................................................................. 7

**Other Authority**

15 *McQuillin: The Law of Municipal Corporations* (3d ed. 2018) ............................................. 3

The Ad Hoc Group of General Obligation Bondholders (the "GO Group")[2] hereby replies to (a) the objection of the self-proclaimed "Lawful Constitutional Debt Coalition" (the "SPLCDC"), see Dkt. No. 6181; (b) the objection of the QTCB Noteholder Group (the "QTCB Group"), see Dkt. No. 6254; (c) the joint limited objection and reservation of rights of the Ad Hoc Group of Constitutional Debtholders (the "Constitutional Debtholder Group"), Assured Guaranty Corp., and Assured Guaranty Municipal Corp. (together with Assured Guaranty Corp., "Assured"), see Dkt. No. 6255; (d) the objection of Ambac Assurance Corporation ("Ambac"), see Dkt. No. 6259; (e) the objection of the Official Committee of Unsecured Creditors (the "UCC"), see Dkt. No. 6261; (f) the objection and preliminary response of National Public Finance Guarantee Corporation ("National"); and (g) the joinder in the UCC's objection filed by the Financial Oversight and Management Board for Puerto Rico, acting through its Special Claims Committee (the "Oversight Board"), and together with the SPLCDC, the QTCB Group, the Constitutional Debtholder Group, Assured, Ambac, the UCC, and National, "Respondents"), see Dkt. No. 6263, to the *Motion of the Ad Hoc Group of General Obligation Bondholders, Under Bankruptcy Code Sections 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures With Respect to Omnibus Conditional Objection to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 6104 (the "Procedures Motion").

---

[2] Members of the GO Group file this motion exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

**INTRODUCTION**

The Procedures Motion seeks to establish an orderly set of procedures to provide affected parties notice of, and to govern the initial litigation of, the GO Group's Conditional Objection[3] to claims asserted in connection with PBA Bonds, the PBA Leases, and certain series of GO Bonds issued by the Commonwealth. Respondents do not meaningfully contest the appropriateness of the procedures proposed in the Procedures Motion, which duplicate in material respects those the Court has already approved for the litigation of the Selective Claim Objection[4] filed by the Oversight Board and the UCC. Instead, Respondents contend that the Conditional Objection should not be allowed to proceed because, they argue, it presents a non-justiciable controversy or is otherwise a procedurally improper attempt to gain a litigation advantage for the GO Group.

Respondents' characterizations are wrong, and their objections to the Procedures Motion should accordingly be overruled. The Conditional Objection presents a fully justiciable controversy, no different from other contexts—such as the Selective Claim Objection itself—in which matters routinely involve parties that face exposure only if certain threshold questions are resolved in a particular manner. Moreover, the Conditional Objection represents an appropriate response to the perverse selectivity of the Oversight Board and UCC in their Selective Claim Objection. Indeed, the Conditional Objection is essential to provide full and fair notice to all affected parties that the Selective Claim Objection—and the defenses that will be asserted to it—

---

[3] *Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 6099. Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Procedures Motion or the Conditional Objection.

[4] *Omnibus Objection of (i) Financial Oversight and Management Board, Acting Through its Special Claims Committee, and (ii) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 4784.

directly affect the fate of the additional bonds and other claims addressed in the GO Group's Conditional Objection.

As explained in the Conditional Objection, the fundamental, explicit premise of the Selective Claim Objection is that "the PBA structure is a sham" intended to end-run the Commonwealth's constitutional debt limit. Selective Claim Objection ¶ 65. Rather than seeking to invalidate the PBA Bonds issued pursuant to this supposed decades-long fraud, however, the Selective Claim Objection would treat them as valid direct obligations of the Commonwealth, with the result (according to the Selective Claim Objection) that the Selectively Challenged GO Bonds issued in 2012 and 2014 exceeded the debt limit. While the GO Group vigorously disputes the premises of the Selective Claim Objection (including its constitutional arguments and its proposed remedy of retroactive invalidation), the GO Group also intends to defend against the Selective Claim Objection by demonstrating that, even if those premises were to be established, the correct and only remedy would be to invalidate all claims asserted against the Commonwealth relating to the PBA Bonds and PBA Leases, or, failing that, to require that all PBA Bonds and GO Bonds that fall within the Selective Claim Objection's debt-limit "logic" be evaluated under the Commonwealth's debt limit and share the pain of invalidation as applicable.[5]

---

[5] As explained in the Conditional Objection (at 5-6), the invalidity of prior bond issuances provides a defense to a debt-limit challenge because, when calculating a governmental issuer's debt limit, "invalid and void obligations . . . are not to be included." 15 *McQuillin: The Law of Municipal Corporations* § 41:40 (3d ed. 2018); see also Conditional Objection 5 n.5 (collecting additional authority). Thus, for example, if the PBA Bonds were held to be invalid and unenforceable, that would foreclose the Selective Claim Objection's argument that they must be counted toward the Commonwealth's constitutional debt limit as direct obligations of the Commonwealth. Likewise, a conclusion that GO Bonds and PBA Bonds issued beginning in fiscal year 2009 were invalid and unenforceable at least in part would result in additional capacity under the Commonwealth's constitutional debt limit when subsequent bonds were issued, including the Selectively Challenged GO Bonds in 2012 and 2014.

3

Critically for present purposes, however, those arguments are not merely defenses to the Selective Claim Objection. They would also dictate complete or partial invalidation of claims held by *other* creditors—including a great many creditors that are not explicitly targeted by the Selective Claim Objection and thus have not yet received notice of it. That is why the Conditional Objection is appropriately filed as an objection. Indeed, if rather than filing the Conditional Objection, the GO Group had chosen to wait and argue for invalidation of other claims solely through a future response to the Selective Claim Objection, the GO Group would have faced a substantial risk that parties would then argue that an objection must instead be filed.

Put another way, there are many other creditors with a direct and substantial interest in the questions that will be litigated in the Selective Claim Objection. Under these circumstances, it is appropriate as a matter of basic fairness for the Court to establish procedures that will allow all affected stakeholders to receive notice of and have an opportunity to participate in the litigation of legal and factual questions that may determine the validity of their claims—including *both* the question whether the PBA is a fraudulent artifice to avoid the debt limit, as urged by the Selective Claim Objection, and the issues raised in the GO Group's Conditional Objection.

Because that is precisely what the relief sought here would accomplish, the Procedures Motion should be granted.

## ARGUMENT

### A. The Conditional Objection Presents A Justiciable Controversy

Respondents generally contend that the GO Group's Conditional Objection does not present a justiciable controversy. That contention rests on a misunderstanding of the relief sought in the Conditional Objection and on obfuscation of the critical interplay between the Oversight

4

Board and UCC's Selective Claim Objection and the GO Group's Conditional Objection. It should be rejected.

1. As an initial matter, the relief sought in the Conditional Objection is not somehow "advisory." SPLCDC Obj. ¶ 3; Ambac Obj. ¶ 7; see also UCC Obj. ¶¶ 10-11. That argument is foreclosed by the Proposed Order annexed to the Conditional Objection, which would disallow all claims asserted against the Commonwealth in connection with the PBA Bonds and the PBA Leases. Dkt. No. 6099-1; see also Conditional Objection 18, 34 (setting forth relief sought). That is a concrete and conclusive form of relief, of the sort that is routinely sought in bankruptcy cases. Indeed, disallowance of claims is the same relief that the Oversight Board and UCC have sought with respect to the Selectively Challenged GO Bonds (see Dkt. No. 4784-1), and no one has contended that their Selective Claim Objection seeks an advisory opinion.

Respondents are also incorrect in contending that the Conditional Objection does not present a ripe controversy. See SPLCDC Obj. ¶ 13; QTCB Group Obj. ¶¶ 10-22; Constitutional Debtholders Group/Assured Obj. ¶ 2; Ambac Obj. ¶¶ 4-7; National Obj. 2. They argue that the Conditional Objection rests on hypothetical or remote contingencies because it proceeds from the assumption that the Court will adopt certain of the premises urged by the Oversight Board and the UCC in the Selective Claim Objection—including the proposition that the PBA is a sham to evade the Commonwealth's constitutional debt limit.[6] But there is nothing hypothetical or remote about

---

[6] The SPLCDC misunderstands the GO Group's Conditional Objection as proceeding from the assumption that the Selective Claim Objection is sustained. See SPLCDC Obj. ¶ 1. As the Conditional Objection explains, it is premised on the assumption that the Oversight Board and UCC establish certain premises of their argument—including the proposition that the PBA is a sham to evade the Commonwealth's debt limit. That conclusion would require (on the Oversight Board's and UCC's logic) invalidation of the PBA Bonds, as argued in the Conditional Objection. And that, in turn, would result in rejection of the Selective Claim Objection's attempt to invalidate subsequently issued GO Bonds on the theory that the PBA Bonds should have been included in the calculation of the Commonwealth's debt limit. See note 5, *supra*.

5

those arguments; they are being pressed *now* by the Oversight Board and the UCC, through their Selective Claim Objection. While the GO Group believes that the Selective Claim Objection's arguments are wrong—and will vigorously contest them in the course of responding to the Selective Claim Objection—that does not render the Conditional Objection unripe or premature, any more so than any alternative argument raised in a party's brief that might not be reached.

Once again, a comparison with the Selective Claim Objection proves our point. There, the Oversight Board and UCC contend (1) that the PBA structure is a "sham" to evade the Commonwealth's constitutional debt limit; (2) that, as a result, the PBA Bonds should be retroactively recharacterized as direct obligations of the Commonwealth and counted against the constitutional debt limit; (3) that the Commonwealth was therefore beyond the constitutional debt limit at the time the Selectively Challenged GO Bonds were issued in 2012 and 2014; and (4) that, as a consequence, all claims asserted in connection with the Selectively Challenged GO Bonds are unenforceable and should be disallowed. See Selective Claim Objection ¶¶ 61-86, 99. The Selective Claim Objection's arguments could (and we believe should) be rejected at Step 1, Step 2, or Step 3—with the result that the Court would never need to reach the question of claim disallowance posed at Step 4. But that does not mean that the Selective Claim Objection is premature: The possibility (or likelihood) that a court will reject one or more steps of a party's legal argument does not mean that the party's ultimate claim for relief is unripe. Were it otherwise, litigants would have to demonstrate a valid legal claim before they could establish that the court has jurisdiction to entertain it—precisely the opposite of the proper order of operations. See, *e.g.*, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction . . . .").

6

Respondents' real objection, it seems, is that the Conditional Objection rests on a premise that the GO Group rejects—namely, that the PBA is a sham to evade the constitutional debt limit. But there is nothing unconventional (and it is certainly not "an amazing example of sophistry," UCC Obj. ¶ 8) for a litigant to contend that, if another party establishes one or more disputed elements of its legal theory, that the theory (if accepted) would lead to different consequences than those that party has proposed. Consider, for example, the impleader device, which allows "[a] defending party" to implead "a nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a). The original defendant may take that step even though it continues to defend against liability on the claim asserted against it, and thus argues that the new third-party defendant should not be held liable either. And the fact that the plaintiff may never establish its claim against the original defendant does not make the third-party claim unripe. Indeed, the First Circuit has rejected this same tortured reasoning in a similar context. See *Lehman v. Revolution Portfolio L.L.C.*, 166 F.3d 389, 395 (1999) (the district court need not "determine the merits of all defenses potentially available to the original defendant as a precondition to allowing that defendant to file a third-party complaint").

The same is true here: There is a ripe, justiciable controversy with respect to the validity of the claims implicated by the GO Group's Conditional Objection. The fact that the controversy was initiated by the UCC and the Oversight Board through their filing of the Selective Claim Objection, rather than by the GO Group itself, is of no moment.

The UCC's argument that the Conditional Objection is unripe and the Oversight Board's joinder in that argument are also irreconcilable with those parties' position that they have colorable causes of action to pursue on the Commonwealth's behalf based on the invalidation of the bonds implicated by the Conditional Objection. In connection with the UCC's request to pursue claims

7

derivatively on the Commonwealth's behalf, the Oversight Board has now disclosed that it intends, apparently with the joint participation of the UCC, to pursue "claims against dozens of parties including underwriters, bond counsel, disclosure counsel, tax counsel, swap counterparties, auditors, and remarketing agents for their respective roles in issuing bonds that are the subject to contentions of being null and void" (Dkt. No. 6418, at ¶ 8), including those bonds implicated by the GO Group's Conditional Objection (*id.* ¶ 8 n.11). But the Oversight Board and the UCC cannot have it both ways: They cannot argue that the GO Group's Conditional Objection is unripe because it "seeks a conditional remedy based on . . . assumptions" (UCC Obj. ¶ 11), while also maintaining that they have ripe causes of action predicated on the relief requested in the Conditional Objection being granted. That is a logical impossibility.

2. Respondents also urge that litigation of the issues raised in the GO Group's Conditional Objection should be confined to the proceedings on the Selective Claim Objection, or that litigation of the Conditional Objection deferred until the point in time (if ever) that the Oversight Board and UCC have established the legal premises from which the Conditional Objection proceeds. QTCB Group Obj. ¶¶ 21-22; Constitutional Debtholders Group/Assured Obj. ¶ 4; Ambac Obj. ¶ 9; UCC Obj. ¶ 15. In some cases, they offer proposals for sequencing litigation of the Selective Claim Objection that, in their view, could obviate the need to provide notice to holders of the claims implicated by the Conditional Objection or to rule on the issues raised therein. SPLCDC Obj. ¶¶ 6, 19-22; Ambac Obj. ¶¶ 9-15.

To the extent that Respondents urge that all litigation of these issues should be confined to the existing Selective Claim Objection, they fail to take account of the important stake that holders of PBA Bonds (and the additional GO Bonds implicated by the Conditional Objection) have in litigation that might result in the invalidation of their claims. The holders of those additional bonds

8

have not received notice of the Selective Claim Objection. But when a party seeks to defend the validity of certain bonds by arguing that prior issuances were invalid, the holders of the prior issuances are proper parties—both to ensure that they have an opportunity to be heard in litigation that may effectively determine their rights, and so that other parties do not face the risk of unfairness associated with inconsistent judgments. See *Cincinnati, N.O. & T.P. Ry. Co. v. Kinman*, 132 S.W.2d 735, 736 (Ky. 1939) (reversing and remanding judgment that had validated new bonds on the ground that certain previously incurred debt was in fact void and thus did not count toward the issuer's debt limit, where holders of the prior debt had not been joined in the action). The Procedures Motion should be granted in order to allow these parties to participate in—and be bound by—litigation that implicates the validity of their claims.

The same logic holds, moreover, to the extent that Respondents acknowledge that the GO Group should be permitted to pursue its Conditional Objection if the Oversight Board and UCC have established the legal premises from which the Conditional Objection proceeds. It would be premature at this point to debate the merits of the Respondents' various sequencing proposals, given the detailed timeline this Court has ordered for arriving at procedures to govern litigation of the Selective Claim Objection.[7] For present purposes, it suffices to observe that Respondents' own proposals demonstrate the need to grant the Procedures Motion and to allow litigation of the GO Group's Conditional Objection to proceed.

Ambac, for example, acknowledges that its position would allow the GO Group to proceed with its Conditional Objection only *if* the Court has first concluded (among other things) that "the

---

[7] See Dkt. No. 5143-2, at ¶ 3 (providing for initial exchange of proposed procedures, which "will not be filed with the District Court," to be followed by a 21-day period to meet and confer). The SPLCDC's complaint that the GO Group's Conditional Objection somehow "jumps the gun" and fails to "comply with the existing Procedures Order" (SPLCDC Obj. ¶ 16) cannot be squared with their obvious departure from the procedures established by the Court.

9

PBA bonds were an unlawful scheme to evade the constitutional debt limit." Ambac Obj. ¶ 15. It is unclear whether Ambac envisions that holders of PBA Bonds would be bound by that determination as law of the case despite it having been reached in their absence (thereby creating serious fairness concerns for them) or that they would have an opportunity to contest the conclusion at that point (leading to serious efficiency and fairness concerns associated with the risk of inconsistent determinations). In any case, the far more sensible approach is to provide notice *now*, given that litigation of these issues directly implicates the validity of these bondholders' claims.[8]

The driving force behind these efforts to delay litigation of the GO Group's Conditional Objection is parochial self-interest of certain of the Respondents. The SPLCDC is particularly transparent on this score, arguing that its sequencing proposal would facilitate the formulation of a plan of adjustment that "proposes a fair treatment for holders of indisputably lawful priority bonds." SPLCDC Obj. ¶ 22. The SPLCDC presumably means to include the holdings of its members in that category,[9] but the Conditional Objection demonstrates that many of those holdings *are* disputed. The SPLCDC wishes to prolong the period during which it can continue to pretend otherwise, but a wish does not make it so, and it certainly does not provide a reason to preclude the GO Group from proceeding with its Conditional Objection. The fact of the matter is that the Selective Claim Objection implicates more than $12 billion of bonds. There is no basis in law to

---

[8] The SPLCDC's sequencing proposal suffers from the same infirmity. The SPLCDC contends that the first stage of litigation should include addressing the "constitutionality of the PBA." SPLCDC Obj. ¶ 20. But if the SPLCDC gets its way, that question will be resolved *before* notice of the litigation is provided to the holders of the PBA Bonds that would be invalidated by a ruling that the PBA constitutes an unconstitutional sham.

[9] As of February 26, 2019, the SPLCDC stated that its members held approximately $479 million of PBA Bonds. See Dkt. No. 50 in Adv. Proc. No. 18-149-LTS, at ¶ 1.

conclude that those attacks are justiciable or ripe with respect to only a select few of those bonds that the Oversight Board and the UCC have named as initial targets.

### B. The Conditional Objection Is Procedurally Proper

The Respondents also raise a handful of additional procedural objections to the Procedures Motion and the Conditional Objection. None has merit.

*First*, the UCC contends that the Conditional Objection was filed to force a response from the Oversight Board and UCC regarding the legal arguments that underpin their Selective Claim Objection. UCC Obj. ¶¶ 12-13. That contention is baseless and manifestly incorrect. The Conditional Objection simply summarizes and applies the "logic" that is set forth in the Selective Claim Objection. Neither the GO Group's Conditional Objection nor its Procedures Motion seeks to force any disclosures from the Oversight Board or the UCC.

*Second*, certain Respondents challenge the motives of the GO Group in filing the Conditional Objection. The SPLCDC depicts the Conditional Objection as an effort to "retaliate against other creditors whose bonds have lawful priority" (SPLCDC Obj. ¶ 17), and the UCC decries a "game plan" of introducing "chaos" and "delay[]" (UCC Obj ¶ 3). Both charges are unfounded. As explained above, the Conditional Objection represents an appropriate response to the Oversight Board and UCC's perverse selectivity in pursuing their debt-limit challenge—by providing implicated creditors with notice that their claims are subject to invalidation. There is nothing improper about that. To the contrary, it would be improper to allow procedural manipulation by the Oversight Board and the UCC to drive the path of this case (and any corresponding manipulation of an eventual plan of adjustment).

*Third*, the UCC complains that allowing litigation on the Conditional Objection to proceed would "sow further confusion and complication." UCC Obj. ¶ 14. That is wrong. To the extent

11

that the Conditional Objection may present logistical challenges associated with litigating claims that may involve hundreds or thousands of bondholders, those challenges are solely a product of the Oversight Board's and UCC's decision to launch reckless and unfounded litigation—and then to selectively truncate it in a way that required the GO Group to bring its Conditional Objection. Moreover, as the UCC acknowledges (UCC Obj. ¶ 14), the notice procedures approved for the Selective Claim Objection have already generated some degree of confusion. That result was inevitable when the Court approved those procedures, but the Court nonetheless concluded that it was appropriate to provide broad notice to all implicated bondholders. The same result should hold true here.

*Fourth*, and finally, the UCC insists that the GO Group's Conditional Objection "is really just an opposition to" the Selective Claim Objection. UCC Obj. ¶ 15. Not so. To be sure, as we have explained above, the arguments pressed in the Conditional Objection are related to defenses to the Selective Claim Objection. But these arguments would also dictate the complete or partial invalidation of claims held by creditors that have not yet received notice that their claims are implicated by the Oversight Board and UCC's debt-limit litigation. In other words, the Conditional Objection implicates and challenges the validity of bonds that the Selective Claim Objection does not expressly target. Without an independent litigation vehicle, such as the Conditional Objection, those bondholders would not have notice of the objections to the validity of their bonds. Thus, the GO Group's arguments are properly pursued as part of a claim objection that would provide notice to all implicated creditors.[10]

---

[10] While the UCC does not raise the point as an argument against approval of the Procedures Motion, its objection criticizes the Procedures Motion for failing to request relief that would require coordination between the Selective Claim Objection and the Conditional Objection. UCC Obj. ¶ 9. The Procedure Motion's approach is appropriate, however, because it is consistent with the procedures this Court approved for the Selective Claim Objection. In that context, the Court

12

## CONCLUSION

For the foregoing reasons, and those stated in our opening brief, the Procedures Motion should be granted.

Dated: April 20, 2019

/s/ Ramón Rivera Morales
J. Ramón Rivera Morales
USDC-PR Bar No. 200701
Andrés F. Picó Ramírez
USDC-PR Bar No. 302114
JIMÉNEZ, GRAFFAM & LAUSELL
P.O. Box 366104
San Juan, PR 00936
Telephone: (787) 767-1030
Facsimile: (787) 751-4068
Email: rrivera@jgl.com

Respectfully submitted,

/s/ Mark T. Stancil
Mark T. Stancil
Gary A. Orseck
Kathryn S. Zecca
Donald Burke
ROBBINS, RUSSELL, ENGLERT, ORSECK,
UNTEREINER & SAUBER LLP
2000 K Street, N.W., 4th Floor
Washington, DC 20006
Telephone: (202) 775-4500
Email: mstancil@robbinsrussell.com

*Counsel to the Ad Hoc Group of General Obligation Bondholders*

---

set initial procedures governing the provision of notice to implicated bondholders and establishing a framework for the parties to negotiate (and potentially litigate) proposed procedures for the remainder of the litigation. While the GO Group obviously believes that proceedings on the Selective Claim Objection and the Conditional Objection should be coordinated in as efficient a way was possible (see Conditional Objection 5-6), that topic would appropriately be addressed in the first instance as part of the meet-and-confer process under the existing procedures for the Selective Claim Objection and under the Proposed Order we have asked the Court to approve for the GO Group's Conditional Objection. The GO Group therefore has not asked the Court to order coordination of proceedings at this stage.