# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

**RESPONDENTS' OPPOSITION TO MOTION OF CERTAIN CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO TO COMPEL PRODUCTION OF DOCUMENTS IN PRIVILEGE LOG CATEGORIES 1, 5 TO 7 [DELIBERATIVE PROCESS PRIVILEGE AND EXECUTIVE PRIVILEGE]**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

        **Page**

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT .................................................................................................................................. 3

    I.    THE GOVERNMENT PARTIES HAVE MET THEIR BURDEN TO ASSERT THE DELIBERATIVE PROCESS PRIVILEGE. ................................. 3

        A.    The Documents Are Pre-decisional, Deliberative Materials. .................... 3

        B.    Factual Information in the Deliberative Process Documents Is Inextricably Intertwined with the Deliberative Material. ......................... 7

        C.    The Government Parties Have Met Their Burden to Invoke the Deliberative Process Privilege. ................................................................. 8

        D.    The Interest in Nondisclosure Outweighs Movants' Need. ..................... 10

        E.    The Government Parties Are Free to Disclose Deliberative Materials to Each Other Without Waiving Privilege. ............................... 11

    II.    THE GOVERNMENT PARTIES HAVE PROPERLY ASSERTED EXECUTIVE PRIVILEGE. ............................................................................... 14

CONCLUSION ............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Bhatia Gautier v. Gobernador*,
   199 D.P.R. 59 (2017) .................................................................................................. 11, 14

*Corporación Insular de Seguros v. García*,
   709 F.Supp. 288 (D.P.R. 1989) ................................................................................... 14, 15

*ERS v. Altair, et al.*,
   Adv. Proc. No. 17-00213-LTS, 17-03566-LTS, ECF No. 86 (D.P.R. Nov. 2, 2017) ................ 9

*Fox News Network, LLC v. U.S. Dep't of the Treasury*,
   739 F. Supp. 2d 515 (S.D.N.Y. 2010) ............................................................................... 13

*Hinckley v. U.S.*,
   140 F.3d 277 (D.C. Cir. 1998) ........................................................................................... 11

*Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*,
   248 F. Supp. 3d 220 (D.D.C. 2017) ................................................................................... 12

*In re 1606 New Hampshire Ave. Assocs.*
   85 B.R. 298 (Bankr. E.D.Pa. 1988) ................................................................................... 10

*In re Sealed Case*,
   121 F.3d 729 (D.C. Cir. 1997) ..................................................................................... 11, 14

*In re Veeco Instruments, Inc. Sec. Litig.*,
   No. 05-MD-01695 CM GAY, 2007 WL 724555 (S.D.N.Y. Mar. 9, 2007) .......................... 10

*Jordan v. U.S. Dep't of Justice*,
   591 F.2d 753 (D.C. Cir. 1978) ............................................................................................. 6

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
   861 F.2d 1114 (9th Cir. 1988) ............................................................................................. 4

*New Hampshire Right to Life v. U.S. Dep't of Health and Human Serv.*,
   778 F.3d 43 (1st Cir. 2015) .................................................................................................. 7

*Noble v. City of Fresno*,
   No. 1:16-cv-01690 DAD-BAM, 2018 WL 1381945 (E.D. Cal. Mar. 19, 2018) .................... 9

*Noel v. City of New York*,
   No. 15-cv-05236 (LTS) (KHP), 2018 WL 6649969 (S.D.N.Y. Dec. 18, 2018) ................ 6, 7

Case:17-03283-LTS Doc#:6436 Filed:04/22/19 Entered:04/22/19 12:11:08 Desc: Main
Document Page 4 of 20

**TABLE OF AUTHORITIES**
**(Cont.)**

Page

*FOMB v. PREPA*,
  17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017) .................................................. 2, 4, 5

*Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*,
  421 U.S. 168 (1975) ....................................................................................................... 12

*Rosselló v. FOMB*,
  Adv. Proc. No. 18-080-LTS, 17 BK 3283-LTS, ECF No. 33 (D.P.R. Aug. 7, 2018) ........ 2, 4, 5

*Shea v. Mcgovern*,
  No. 1:08-12148-MLW, 2011 WL 322652 (D. Mass. Jan. 31, 2011) .................................. 9, 10

*Sporck v. Piel*,
  759 F.2d 312 (3d Cir. 1985) ............................................................................................. 8

*Stalcup v. C.I.A.*,
  768 F.3d 65 (1st Cir. 2014)............................................................................................... 8

*Starkey v Birritteri*,
  No. 12-10988-RWZ, 2013 WL 3984599 (D. Mass. Aug. 2, 2013)....................................... 8, 9

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
  60 F.3d 867 (1st Cir. 1995)............................................................................................. 4, 12

*United States v. Estrella*,
  567 F.2d 1151 (1st Cir. 1977)............................................................................................ 10

*United States v. Farley*,
  11 F.3d 1385 (7th Cir. 1993) ........................................................................................... 12

**PRELIMINARY STATEMENT[2]**

1. Movants' contention that the Government Parties are not entitled to any deliberative process or executive privilege protection is meritless. The 123 documents at issue are a narrow slice of the more than 6,000 documents the Government Parties reviewed and fall squarely within the Government processes that warrant protection. Movants therefore (i) try to redefine the decisions at issue to concern solely whether Puerto Rico's fiscal plan included a plan to convert its pension system to PayGo; (ii) speculate that withheld documents "must be" primarily factual in nature; (iii) persist in the fiction that ERS is somehow "conflicted" *vis à vis* the other Government Parties such that they do not share a common interest; and (iv) argue that AAFAF— an agency within Puerto Rico's government responsible for guiding the restructuring of the Commonwealth and its instrumentalities—somehow cannot invoke executive privilege. These arguments are meritless and do not compel disclosure of privileged documents.

2. First, Movants' primary argument is that the March 13, 2017 Commonwealth Fiscal Plan's certification, Joint Resolution 188's passage by Puerto Rico's Legislature three months later in June 2017, and Act 106's enactment in August 2017 are all just one decision that occurred on March 13, 2017. But this squarely contradicts both PROMESA and Judge Swain's decisions in these Title III proceedings. A PROMESA fiscal plan is merely a broad framework that governs the Governor's and Legislature's separate, more detailed budgeting, spending, and legislating decisions. No matter what the Oversight Board certifies in a fiscal plan, the Oversight Board

---

[2] Capitalized terms have the same meanings as in Respondents' Opposition to Motion of Certain Creditors of the Employees Retirement System of the Government of Puerto Rico to Compel Production of Documents in Privilege Log Categories 1-4, 17-3566-LTS, ECF No. 451 (D.P.R. Apr. 18, 2019) (the "Apr. 18 Opp."). In addition, (i) "Collazo Decl." means Declaration of Luis Collazo Rodriguez in Support of ERS's Assertion of Deliberative Process Privilege; (ii) "Mesa Decl." means Declaration of Philippe Mesa Pabón in Support of the Commonwealth's Assertion of Deliberative Process Privilege; (iii) "Yassin Decl." means Declaration of Mohammad Yassin Mahmud in Support of AAFAF's Assertion of Deliberative Process Privilege, filed in support of the Apr. 18 Opp. at 17-3566-LTS, ECF No. 453; and (iv) "Pocha Decl." mean Declaration of Madhu Pocha in Opposition to Motion to Compel Production of Documents in Privilege Log Categories 1, 5 to 7.

cannot legislate.  "PROMESA section 303 reserves the territory's political and governmental powers to the territory or 'any territorial instrumentality thereof,' subject only to Titles I and II" and nothing in Titles I and II strips the Legislature of the right to pass laws or the Government's discretion to deliberate on the content of any legislation to effectuate a fiscal plan.  *FOMB v. PREPA*, 17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017) at 16; *see also Rosselló v. FOMB*, Adv. Proc. No. 18-080-LTS, 17 BK 3283-LTS, ECF No. 33 (D.P.R. Aug. 7, 2018) (recognizing that PROMESA section 303 reserves territory's governance powers).  That is exactly what happened here.

3.  The Oversight Board certified a fiscal plan in March 2017 that called for a pay-as-you-go pension system.  After several months of deliberation and analysis, in June 2017, the Puerto Rico Legislature adopted Joint Resolution 188, which ordered ERS, JRS, and TRS to sell their assets and transfer the net proceeds to the Treasury Secretary, the first step in converting to PayGo. J.R. 188 §§ 1–4.  Then, in August 2017, the Legislature passed Act 106, which created the legal framework for the new pension system, including establishing a new "Pay-Go Fee" in the amount actually paid to beneficiaries that "the Government, the Municipalities, the Legislative Branch, Court Administration and Public Corporations and other covered entities" pay to the Puerto Rico Treasury.  Act 106, § 2.1(b).  Each of these steps was a separate decision with its own underlying deliberative processes.  *See* Yassin Decl. ¶ 4; Collazo Decl. ¶ 4; Mesa Decl. ¶ 4.  Movants' attempt to meld three decisions into a single deliberative process that ended with the certification of the March 2017 fiscal plan therefore fails.  Movants' argument rests on the fallacy that the March 2017 fiscal plan was the finale in making PayGo a legal and factual reality when it was not.

4.  Second, Movants speculate that the withheld documents "must be" primarily factual in nature, based on the document descriptions and types and demand that the Government

2

Parties produce these documents in redacted form so that any alleged factual information is available. But even if Movants had shown that the withheld documents were primarily factual, that is not enough to overcome privilege here because revealing these facts would expose the Government Parties' deliberation.

5. Third, Movants' argument that separate agencies of the same Government cannot share a common interest in deliberative processes is contrary to the law and proper governmental function. Courts recognize that it is necessary and appropriate for different government agencies to engage in joint deliberation, analysis, and decision-making. As the Government Parties explained in their companion opposition to the motion to compel regarding privilege log categories 1-4, joint deliberation is especially important here, where Puerto Rico is undergoing one of the most complex municipal financial restructurings in U.S. history—one that involves virtually every governmental entity in Puerto Rico. *See* Apr. 18 Opp. ¶ 34.

6. Fourth, the claim that AAFAF cannot invoke executive privilege over its communications with Fortaleza fails because AAFAF itself is part of the executive branch. *See* AAFAF Enabling Act § 8(q) ("To be the only entity of the Government of Puerto Rico authorized to, on behalf of the Government of Puerto Rico or any component thereof, negotiate, restructure, and/or enter into Creditors' Agreements….").[3] AAFAF is also the Governor's agent for purposes of discharging his duties and executing his powers under PROMESA. *Id.* § 5(a)-(b).

## ARGUMENT

I. **THE GOVERNMENT PARTIES HAVE MET THEIR BURDEN TO ASSERT THE DELIBERATIVE PROCESS PRIVILEGE.**

   A. **The Documents Are Pre-decisional, Deliberative Materials.**

7. All the deliberative communications on the Government Parties' logs predate one

---

[3] The Governor also appoints the Executive Director of AAFAF. AAFAF Enabling Act §6(a).

3

of three separate decisions—the March 13, 2017 Commonwealth Fiscal Plan's certification, Joint Resolution 188's June 25, 2017 passage, or Act 106's August 23, 2017 enactment. Each is an independent decision, as evidenced by their separate dates, different subject matters, and the different entities making the decisions. The privilege log identifies each decision and its undisputed date, and the Government Parties have provided sworn declarations explaining that the withheld documents relate to deliberations underlying these decisions. Yassin Decl. ¶¶ 9–10; Collazo Decl. ¶ 6; Mesa Decl. ¶ 7. The withheld documents therefore fall within the privilege's heartland. *See Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (quoting *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988)) (privilege protects communications that are "(1) predecisional, that is, 'antecedent to the adoption of agency policy,' and (2) deliberative, that is, actually 'related to the process by which policies are formulated.'").

8. Unable to dispute these facts, Movants instead allege that the separate deliberations and actions of the Government Parties and Puerto Rico's Legislature after March 13, 2017 should all be treated as post-decisional. This is not only factually untrue, but also contrary to Judge Swain's decisions and the law. As Judge Swain has repeatedly held, the Government of Puerto Rico retains sovereign powers under PROMESA, including the power to legislate, which the Oversight Board lacks:

- "[T]he Oversight Board has not been given power to affirmatively legislate." *See Rosselló v. FOMB*, Adv. Proc. No. 18-080-LTS, 17 BK 3283-LTS, ECF No. 33, at 27 (D.P.R. Aug. 7, 2018).

- The Oversight Board's role does not include "detailed operational planning or direct executive authority over the implementation of" fiscal plans and budgets. *FOMB v. PREPA*, 17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017) at 12.

- "PROMESA section 303 reserves the territory's political and governmental powers to the territory or 'any territorial instrumentality thereof.'" *Id.* at 16.

4

- "PROMESA leaves the elected government in place and does not suspend it in favor of direct management by the Oversight Board." *Id.* at 18.

- "[N]othing in [PROMESA] Titles I and II permits the [Oversight Board] to displace local government structures and authority." *Id.* at 16.

9. In an exercise of these powers, the Government engaged in extensive deliberation and decision-making between the March 13, 2017 Fiscal Plan, Joint Resolution 188 (signed into law on June 25, 2017), and Act 106 (enacted on August 23, 2017). *See* Yassin Decl. ¶ 4; Collazo Decl. ¶ 4; Mesa Decl. ¶ 4. The Government's deliberation and decision-making during this period constituted the legislative process under Puerto Rico law. *See FOMB v. PREPA*, 17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017) at 12, 16 (characterizing PROMESA fiscal plans and budgets as "blueprints" for "overall strategy regarding the Commonwealth's revenues, expenses, and general direction for responsible financial management").

10. To characterize the elected Government's process as mere "implementation of the Oversight Board's earlier decision," Mot. ¶ 14, would elevate the Commonwealth Fiscal Plan to a status superior to the acts of the Puerto Rico Legislative Assembly and render the Oversight Board a supra-governmental authority, something courts have repeatedly refused to do. *See generally Rosselló v. FOMB*, Adv. Proc. No. 18-080-LTS, 17 BK 3283-LTS, ECF No. 33 (D.P.R. Aug. 7, 2018); *see also FOMB v. PREPA*, 17 BK 4780-LTS, ECF No. 471 (D.P.R. Nov. 16, 2017).

11. Movants' sole support for their argument is that the March 13, 2017 Commonwealth Fiscal Plan included plans for pension reform. But that document is a high-level 37-page presentation covering nine large government entities, of which ERS is but one. Pension reform is only one of nine different categories of expenditure reductions, accounting for $541 million out of the $40 billion of expected 10-year savings. There is only one slide on pension reform policy, identifying the two initiatives highlighted below. That is it.

5



Fiscal Plan, Slide 21, *available at* http://www.aafaf.pr.gov/assets/planfiscal13demarzo2017.pdf.

12. In contrast, Joint Resolution 188 and Act 106 include nearly 50 pages of detailed legislation that constitute profound legal changes to the pension systems. The details in this legislation are found nowhere in the Fiscal Plan, and they could not have been devised without the Government's separate painstaking deliberations and decision. To take just a few examples, Act 106 created an Accumulated Pensions Payment Account that can receive funds from several different sources, *id.* § 2.1; created a Defined Contribution Program that includes an individual account for each pensioner, *id.* § 3.1; and identified members to serve on the Retirement Board of the Government of Puerto Rico, *id.* § 4.1. It is pure fiction to suggest that creating 50 pages of legislation from two sentences required no governmental discretion or deliberation.

13. Movants' reliance on *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753 (D.C. Cir. 1978) and *Noel v. City of New York*, No. 15-cv-05236 (LTS) (KHP), 2018 WL 6649969 (S.D.N.Y. Dec. 18, 2018) is misplaced. The plaintiff in *Jordan* sought production of "instructions or guidelines issued by the U.S. Attorney and directed at his subordinates," where "[t]he substantive content of these guidelines ha[d] already been determined by the U.S. Attorney." *Jordan*, 591 F.2d at 774. These documents were not deliberative, and therefore not protected, because they were not "related to the process by which policies are formulated," but rather expressed "settled and established policy of the U.S. Attorney's Office," the same government entity. *Id*. And *Noel* stands for the

6

unremarkable proposition that the privilege does not extend to post-decision documents; it says nothing about the privilege's application to multi-decisional reforms such as Puerto Rico's conversion to PayGo. *Noel*, 2018 WL 6649969, at *4. Here, by contrast, the post-fiscal plan documents concern actual decisions made by separate governmental entities that involved important policy determinations the Oversight Board did not and could not make.

14. The deliberative materials at issue are instead analogous to those found privileged in *New Hampshire Right to Life v. U.S. Dep't of Health and Human Serv.*, 778 F.3d 43 (1st Cir. 2015). There, plaintiff argued that documents concerning an award of Title X funding to Planned Parenthood were post-decisional materials concerning the Office of the Assistant Secretary of Health's memorandum requesting approval for the grant. *Id*. at 53. The court disagreed, stating that "there were other relevant decisions made on or after" that request for approval, including "the Department's decision . . . to publicly announce its intent to issue the grant . . . and [] the Department's decision to not provide a separate response to New Hampshire's protest of the direct award." *Id*. at 54.

15. The same is true here. The Oversight Board's March 13, 2017 certification of the Fiscal Plan was not the last relevant decision—the Legislature thereafter decided to pass Joint Resolution 188 and the Commonwealth enacted Act 106. Each of these acts represent a different decision, reflecting separate deliberations and requiring different actions as a result.

**B.    Factual Information in the Deliberative Process Documents Is Inextricably Intertwined with the Deliberative Material.**

16. Although Movants speculate that some of the 123 withheld documents are primarily factual and fault the Government Parties for not providing redacted versions, Mot. ¶¶ 21-22, the log and supporting declarations substantiate the privilege.

7

17. While many of the withheld documents contain facts, those facts were assembled and developed for the sole purpose of facilitating the Government Parties' deliberative process. Yassin Decl. ¶ 4; Collazo Decl. ¶ 4; Mesa Decl. ¶ 4. Disclosing which facts were included in the documents themselves would reveal the substance of the Government Parties' deliberations, such that redactions would not adequately protect the deliberative process from disclosure. *Stalcup v. C.I.A.*, 768 F.3d 65, 70 (1st Cir. 2014) ("The question is not merely whether the documents contain factual information—or even whether the document is predominately comprised of findings of fact—but rather the degree to which the facts are indissolubly linked to the broader analysis."); *see also Sporck v. Piel*, 759 F.2d 312, 316 (3d Cir. 1985) (documents shown to witness in preparation for deposition were protected attorney work product because the "selection and compilation of documents by counsel . . . in preparation for pretrial discovery falls within the highly-protected category of opinion work product" as they "reveal important aspects of [the attorney's] understanding of the case[.]").

18. Here, production of the withheld documents would inappropriately chill Government deliberations and decision-making, causing harm to the Government and its restructuring efforts. Yassin Decl. ¶¶ 9–10; Collazo Decl. ¶ 6; Mesa Decl. ¶ 7.

**C.  The Government Parties Have Met Their Burden to Invoke the Deliberative Process Privilege.**

19. Movants argue that the Government Parties have waived any deliberative process privilege because they did not contemporaneously supply affidavits invoking the privilege and explaining why it applies. Mot. ¶ 26. But there is no requirement under the rules or the Court's orders that affidavits be served simultaneously with a privilege log. In fact, the privilege logs that the Government Parties submitted—both the April 12, 2019 categorical log and the April 14, 2019 individual entry log—suffice on their own. *See Starkey v Birritteri*, No. 12-10988-RWZ, 2013

8

WL 3984599, at *3 (D. Mass. Aug. 2, 2013) (quashing subpoena seeking deliberative process privileged materials even though party asserting privilege provided no affidavit).

20. Moreover, the Government Parties told Movants that the declarations were forthcoming (they have now been provided),[4] and in the context of expedited proceedings such as these, it should come as no surprise that the Government Parties needed additional time to supply them. Courts refuse to find automatic privilege waivers where (as here) a party has openly asserted a privilege. *See Shea v. Mcgovern*, No. 1:08-12148-MLW, 2011 WL 322652, at *4 (D. Mass. Jan. 31, 2011) (no waiver of privilege even where a party "offered only sweeping generalizations of the materials sought to be protected"); *Noble v. City of Fresno*, No. 1:16-cv-01690 DAD-BAM, 2018 WL 1381945, at *6 (E.D. Cal. Mar. 19, 2018) (no waiver of privilege where supporting affidavits were filed with an opposition to a motion to compel); *see also ERS v. Altair, et al.*, Adv. Proc. No. 17-00213-LTS, 17-03566-LTS, ECF No. 86 (D.P.R. Nov. 2, 2017) (ordering affidavit to support deliberative process privilege but finding no waiver).

21. Movants also maintain that the log provides insufficient detail, Mot. ¶ 27, even though it includes nine columns of substantive information and complies with the Court's requests. The only nits Movants have picked are that (i) a handful of individuals on the log are missing from the appendix the Government Parties had prepared (which has since been updated - *see* Exhibit A to Yassin Decl.) (Mot. ¶ 27); (ii) one entry fails to identify a decision (Mot. ¶ 27); and (iii) four entries have no sender or recipient (Mot. ¶ 27).[5] Each of these issues is a natural consequence of producing a document-by-document privilege log in 48 hours. The decision applicable to log entry

---

[4] Note: the Yassin Declaration addresses both the March 14 log and AAFAF's March 15 log. *See* Yassin Decl. ¶ 6.
[5] Movants' own privilege logs suffer from various issues. The logs contain approximately 60 entries that are missing senders or recipients, 75 entries with non-lawyer third parties who are not identified; 45 entries with communications with other bondholders without a claim of common interest, and communications with the following distribution lists for which the recipients are not named: "ERS GLC Advisors Distribution List," "ERS PR Group Distribution List," "ERS Ad Hoc Distribution List," mailalert@ubs.com," and "PR@kingstreet.com." There is also no appendix identifying all individuals in the logs. Pocha Decl. ¶ 3.

9

46 is "Enactment of Joint Resolution 188 and Act 106." Three of the four documents lacking sender- and recipient-information (log entries 72, 107, and 108) are loose documents without senders or recipients, and log entry 112 concerns a document attached to a draft email by Carlos Yamin Rivera that was never sent. None of these quibbles warrant wholesale, mandatory disclosure of privileged materials. *See Shea*, 2011 WL 322652, at *4 (allowing revised privilege log after motion to compel). Although these explanations should suffice, a redlined amended privilege log has been served with this brief. *See* Pocha Decl., Ex. I.

### D. The Interest in Nondisclosure Outweighs Movants' Need.

22. Movants make the conclusory assertion that they need privileged materials to "defend themselves against [an] argument that Joint Resolution 188 and Act 106 eliminated the Bondholders' collateral," Mot. ¶ 30, but fail to explain how any of the deliberative-process documents are evidence that would support lifting the stay—the only issue now before the Court. *See, e.g.*, *United States v. Estrella*, 567 F.2d 1151, 1153 (1st Cir. 1977) (speculation as to information's usefulness insufficient to overcome privilege claim). The only questions for the Court are whether (i) Movants' collateral (if any) equals or exceeds the value of the claim it secures, (ii) the collateral is diminishing in value, and (iii) if so, ERS has otherwise protected Movants' interests. *See In re Ledis*, 259 B.R. 472, 476–77 (Bankr. D. Mass. 2001) (creditor entitled to relief only insofar as "claim exceeds the value of the collateral and the Debtor has not offered some other form of adequate protection"); *In re 1606 New Hampshire Ave. Assocs.*, 85 B.R. 298, 309 (Bankr. E.D.Pa. 1988) (adequate protection largely a function of changes in collateral's value). *See also* Apr. 18 Opp. ¶ 39 n.4 (regarding challenges to validity of the bonds). Thus, the privileged documents do not concern the subject matter for this stay relief litigation.

23. Movants have therefore failed to substantiate their need. *See In re Veeco Instruments, Inc. Sec. Litig.*, No. 05-MD-01695 CM GAY, 2007 WL 724555, at *2, 10 (S.D.N.Y.

10

Mar. 9, 2007) (insufficient need to overcome work product protection where defendants produced documents on same subject matter and in same time frame). In just a few short weeks, the Government Parties produced thousands of pages of financial information and other documents concerning ERS and PayGo that encompass the same general subjects and date range as reflected on the privilege log. For example, the productions include a July 25, 2017 presentation titled "Transformación De Los Sistemas De Retiro" that describes the pension reform and transition to PayGo (ERS_LS0005105) and a June 1, 2017 spreadsheet with information related to employer contributions and pension reform (ERS_LS0006242). Pocha Decl. ¶ 5.

24. Turning every deliberative communication regarding the fiscal plan and legislation into litigation fodder would chill discussions critical to fiscal plan development, the legislative process, and Puerto Rico's restructuring efforts. Yassin Decl. ¶¶ 9–10; Collazo Decl. ¶ 6; Mesa Decl. ¶ 7; *see also Hinckley v. U.S.*, 140 F.3d 277, 286 (D.C. Cir. 1998) (applying privilege in part because "granting Hinckley access to the Review Board's internal deliberations would seriously endanger the future candor of such discussions"). The interest in confidentiality here thus far outweighs the Movants' assertions of need. *See In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) ( "ultimate purpose" of deliberative process privilege "is to prevent injury to the quality of agency decisions by allowing government officials freedom to debate alternative approaches in private"); *Bhatia Gautier v. Gobernador*, 199 D.P.R. 59 (2017) (recognizing government's "need" "to keep[] certain sensitive information confidential" to prevent prejudice).

### E. The Government Parties Are Free to Disclose Deliberative Materials to Each Other Without Waiving Privilege.

25. Movants contend that the Government Parties cannot enjoy a joint deliberative process privilege because they are "distinct legal entities with distinct and adverse interests." Mot. ¶ 36. Not so. Each of the Government Parties, and the Oversight Board, is an entity or

11

instrumentality within Puerto Rico's Government. PROMESA § 101(c)(1), 48 U.S.C. § 2121(c)(1) ("An Oversight Board established under this section (1) shall be created as an entity within the territorial government for which it is established in accordance with this title."). As parts of the same Government, the Government Parties and the Oversight Board can and do share a deliberative process privilege where they are making joint decisions. *See Hunton & Williams LLP v. U.S. Envtl. Prot. Agency*, 248 F. Supp. 3d 220, 247 (D.D.C. 2017) ("The deliberative process can—as it did here—span between two different agencies.") (citing *Renegotiation Bd. v. Grumman Aircraft Eng'g Corp.*, 421 U.S. 168, 187-88 (1975)); *see also Texaco P.R., Inc.*,, 60 F.3d at 884 ("The deliberative process privilege 'shields from public disclosure confidential inter-agency memoranda on matters of law or policy.'") (emphasis added) (citation omitted); *United States v. Farley*, 11 F.3d 1385, 1389 (7th Cir. 1993) ("Since the document was pre-decisional and deliberative, the fact that the document passed from one agency to another does not terminate its privileged status." (citing *Renegotiation Bd.*, 421 U.S. at 188)).

26. The same rules apply with even more force to communications between AAFAF and Fortaleza. By law, AAFAF advises the Government in resolving its financial crisis. *See* AAFAF Enabling Act, section 5(a) ("The Authority is created for the purpose of acting as fiscal agent, financial advisor, and reporting agent of all entities of the Government of Puerto Rico and to assist such entities in facing the serious fiscal and economic crisis that Puerto Rico is currently undergoing."). All the decisions at issue here are joint decisions among AAFAF, Fortaleza, and ERS, as those decisions affect the restructuring of both the Commonwealth and ERS and advance the interests and functions of each of the Government Parties. *See* Apr. 18 Opp. ¶ 2.

27. Movants' assertion that "ERS is adverse to the Commonwealth as a matter of law" is equally meritless. Mot. ¶ 37. If anything, as a matter of law, the Commonwealth and ERS share

a common interest regarding safeguarding pension benefits. As the Government Parties have explained in their companion April 18, 2019 Opposition, Movants' contention rests on a fundamental misunderstanding of ERS's sole purpose, which is to serve the public interest by ensuring that public-employee retirees receive their pensions—not to enrich itself or prioritize creditors. *See* Apr. 18 Opp. ¶ 2. In addition, the Commonwealth's interests are aligned with ERS's because they share the same fiscal plan, which must provide adequate funding for pensions. *See* PROMESA § 201(b)(1)(C) (among other things, fiscal plan must provide for "adequate funding for public pension systems"). Given that the Governor and AAFAF are responsible for submitting fiscal plans, and ERS administers the pension system, both law and common sense dictate that the entities must work together to safeguard pension benefits under PROMESA. Thus, the contention that these governmental entities' interests are so divergent as to waive privilege over their shared policy deliberations is baseless.

28. While ERS, AAFAF, Fortaleza, and the Oversight Board may have differing interests in certain aspects of the fiscal plans, budgets, or other policy matters, those differences do not waive deliberative process privilege over their joint decisions. Such a rule would eviscerate the privilege's very purpose—to protect full and frank deliberations in which governmental agencies and instrumentalities may disagree. *See Fox News Network, LLC v. U.S. Dep't of the Treasury*, 739 F. Supp. 2d 515, 540 n.5 (S.D.N.Y. 2010) (privilege applied between government agencies "even if [one agency's] employees were representing separate interest or taking policy positions different than those of [another agency's] employees" and that "the interest of various agencies often diverge based on their different areas of responsibility and expertise."). The importance of preserving their full and frank deliberations cannot be understated—Puerto Rico's ability to shape and implement policy for its people necessitates a comprehensive approach

13

requiring the involvement of all the Government Parties and the Oversight Board. *See* PROMESA § 405(m)(4) (economic health of Puerto Rico and its ability to serve its people requires "[a] comprehensive approach to fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico" throughout the process).

## II. THE GOVERNMENT PARTIES HAVE PROPERLY ASSERTED EXECUTIVE PRIVILEGE.

29. Contrary to Movants' contention, executive privilege protects communications between the Governor and *any* of his advisors, including AAFAF, that provide him counsel or aid on public policy matters. *See Bhatia Gautier*, 199 D.P.R. at 89–90 (executive privilege protects communications between First Executive and advisors, assistants, or other public employees); *Corporación Insular de Seguros v. García*, 709 F.Supp. 288, 295–96 (D.P.R. 1989) (executive privilege protects communications between Government's chief executive and a wide range of government officials, including government agencies independent of the executive branch"). The executive privilege is even broader than the deliberative process privilege, encompassing even final documents and post-decisional materials. *See In re Sealed Case*, 121 F.3d at 745 ("[U]nlike the deliberative process privilege, the presidential communications privilege applies to documents in their entirety, and covers final and post-decisional materials as well as pre-deliberative ones.").[6]

30. Movants also argue that the Government Parties' claims of executive privilege are outweighed by their "need" for this evidence. Mot. ¶ 41. But their cursory remark that matters such as pension reform legislation "are unquestionably relevant and important," *id.*, does not establish a compelling need for privileged documents. *See* ¶¶ 22-24, *supra*.

---

[6] Movants also argue that "The executive privilege likewise does not extend to communications of third parties—for example, Elias Sanchez Sifonte … an advisor not employed by the Puerto Rico government." Mot. ¶ 37, n.12. During the relevant time period, Elias Sanchez Sifonte was the ex officio member of the Oversight Board and the Governor's representative to the Board; thus, he was an advisor to the Governor.

14

31. Equally deficient is Movants' assertion that the Government Parties must show "how disclosure would reveal the direct decision-making of the Governor." *Id*. That is not the standard. Rather, all the Government Parties must show is that disclosure would hinder policymakers' frank and independent discussions. *Corporación Insular de Seguros*, 709 F.Supp. at 296. They have made this showing through sworn declarations from three Government officials, who explain that the withheld documents capture deliberations of AAFAF and Fortaleza officials, including outside and in-house counsel. *See* Yassin Decl. ¶¶ 9–10; Collazo Decl. ¶ 6; Mesa Decl. ¶ 7. Disclosing such documents would have an impact far beyond this particular dispute, forever chilling the deliberations at Fortaleza, AAFAF, and other governmental entities. This not only would compromise the Commonwealth's financial restructuring, but also hobble the Government's ability to shape and direct public policy for the people of Puerto Rico.

32. Movants also argue that the Government Parties' "new" claims of attorney-client privilege and attorney work product on the April 14, 2019 individual privilege log should be rejected. Mot. ¶¶ 42, 44. The addition of further privilege grounds in re-examining the documents for the individual log should come as no surprise, especially since the Government Parties expressly reserved the right to modify or amend their privilege assertions. *See* the April 11, 12, and 14 privilege logs. The logs were produced in roughly a week, on the abbreviated schedule Movants demanded. Further, certain documents came from Category 1 of the categorical logs—a category over which the Government Parties asserted attorney-client privilege and attorney work product. Movants' nit-picking suggests either gamesmanship or a make-work strategy, rather than a genuine justification for disclosure of a small number of privileged documents.

## CONCLUSION

For the foregoing reasons, Movants' Motion should be denied.

15

Dated: April 22, 2019
       San Juan, Puerto Rico

*/s/ William J. Sushon*

John J. Rapisardi
Peter Friedman
William J. Sushon
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, New York 10036
(212) 326-2000
jrapisardi@omm.com
suhland@omm.com
pfriedman@omm.com
wsushon@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (787) 294-9508
Fax: (787) 294-9519
emckeen@omm.com

*Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*

*/s/ Luis C. Marini-Biaggi*
Luis C. Marini-Biaggi
USDC No. 222301
lmarini@mpmlawpr.com

Carolina Velaz-Rivero
USDC No. 300913
cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority*