# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | ) ) ) | PROMESA Title III |
| | ) | Case No. 17-bk-03283 (LTS) |
| as representative of | ) ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al*. | ) ) | |
| | ) | |
| Debtor. | ) ) X | |
| In re: | ) ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | ) ) ) ) | PROMESA Title III |
| as representative of | ) ) ) | Case No. 17-cv-01685 (LTS) Case No. 17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | ) ) ) ) | |
| Debtor. | ) ) X | |

## **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .............................................................................................................................. 4

ARGUMENT ................................................................................................................................... 6

I.     THE NOTICED DEPOSITION TOPICS ARE APPROPRIATE AND NECESSARY TO EXPLORE THE FACTUAL BASES FOR MOVANTS' LIFT STAY MOTION ............ 6

II.    MOVANTS' OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED .... 9
     A.    Movants' Relevance Objections ................................................................................. 9
     B.    Movants' "Lay Witnesses" Objections .................................................................... 10
     C.    Movants' "Vagueness" and "Overbroad" Objections ........................................... 11
     D.    Movants' "Legal Conclusions" Objections ............................................................ 12

III.   MOVANTS' OBJECTIONS TO THE INDIVIDUAL NOTICES OF DEPOSITION SHOULD BE OVERRULED ................................................................................................ 12

IV.   ANY LIMITATION ON DEPOSITION TESTIMONY MUST BE UNIFORM AND MUTUAL AS TO ALL PARTIES .................................................................................... 12

CONCLUSION .............................................................................................................................. 13

**OBJECTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD,
AS REPRESENTATIVE OF DEBTOR, TO MOTION FOR
A PROTECTIVE ORDER**

To the Honorable United States Magistrate Judge Judith G. Dein:

The Financial Oversight and Management Board (the "Oversight Board"), as representative for debtor Employees' Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS" or "Debtor") pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act*, codified at 48 U.S.C. §§ 2101-2241 ("PROMESA"), respectfully submits this objection to the *Motion for a Protective Order* (the "Motion") [Docket No. 440 in Case No. 17-bk-03566] filed by Andalusian Global Designated Activity Company ("Andalusian"), Mason Capital Master Fund, LP ("Mason Capital"), and the Puerto Rico Funds[1] (collectively with Andalusian and Mason Capital, the "Movants").

**PRELIMINARY STATEMENT**

1.      Movants have sought sweeping discovery in this matter far beyond whether there has been diminution in value of their alleged collateral resulting from the automatic stay, contending that this limited proceeding on stay relief must encompass whether Movants "have collateral or not" and whether Pay-Go fees are their collateral. Now faced with preparing *their* witnesses to testify, Movants have reversed course: only narrow and limited discovery on

---

[1] According to the Motion, the Puerto Rico Funds include: Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

diminution resulting from the automatic stay is appropriate, and inquiry into the factual bases for their broad contentions must be stopped.

2. Movants' latest position is an attempt to have it both ways, imposing burdensome demands upon the respondent parties on an expedited schedule, while shielding their own witnesses from examination on the topics *Movants* said are relevant. It also lays bare Movants' broader attempt to convert this limited proceeding into a full-fledged adversary proceeding seeking discovery into and a declaration on the scope of their alleged collateral, and to seek immediate payments under the pretense *the automatic stay* somehow caused diminution in value of their collateral. This is precisely why the Oversight Board has long contended the scope of discovery in this matter should be limited to diminution in value resulting from the automatic stay, and why the Oversight Board resisted Movants' sweeping discovery demands on relevance grounds. *See, e.g.*, ECF No. 410 ¶ 1.

3. The Oversight Board agrees that the proper scope of discovery is the attribution of diminution in value of collateral resulting from the automatic stay. But, contrary to Movants' suggestion, Motion ¶ 14, the scope of discovery in this matter cannot vary party-by-party. Any limitation the Court imposes on the scope of deposition testimony must be mutual because the Federal Rules demand it. Fed. R. Civ. P. 26; Fed. R. Evid. 401. As such, if the Court determines, as Movants request, that Movants need not testify about anything other than the value of their alleged collateral (Topic 14) and the documents they have produced in this matter (Topic 22) because Movants now believe those are the only Topics relevant to show diminution in value resulting from the automatic stay in this narrow proceeding, that same limitation must apply to the depositions of the Commonwealth, ERS, AAFAF, and the Oversight Board.[2]

---

[2] Among other things, a limitation on the scope of discovery as Movants now request would render all (or nearly all) topics for which the Oversight Board has been subpoenaed irrelevant, and would render any remaining subpoenaed

2

4. Movants' belated agreement with the Oversight Board on the scope of discovery does not warrant issuing a protective order because the Oversight Board's deposition topics are consistent with the proper scope of discovery it has advocated in this limited proceeding.[3] Movants concede Topic 14 concerning the value of their asserted collateral is relevant, but that Topic necessarily requires examination into *what* constitutes the collateral they say has diminished in value as a result of the automatic stay (Topics 5-10, 12-13), the *factual bases* for their contentions that the collateral has suffered diminution in value resulting from the automatic stay (Topics 15-18), and any *factual information* they have concerning their asserted security interest in ERS's right to receive revenues or changes to the Employers' Contribution Rate that affects their asserted collateral (Topics 19-21). Further, Movants agree that the scope of discovery is the *attribution* of diminution in value of collateral resulting from the automatic stay (Motion ¶ 10)—which means the Oversight Board is entitled to show Movants took ERS Bonds subject to causes of diminution or dissipation *other than* the automatic stay, including the Commonwealth's power to legislate concerning the pension system (Topics 1-4, 11).[4]

5. The Court should therefore (a) reiterate its prior holding that the appropriate scope of discovery in this matter, to be applied to all parties, is the attribution of any diminution in value resulting from the automatic stay; and (b) deny the Motion.

---

topics duplicative. If the Court requires the Oversight Board to file a formal motion to request that same limitation, the Oversight Board will do so promptly.

[3] Without waiving (and expressly reserving) all rights to take testimony, to object to any testimony, and to object concerning any document or exhibit to be used in any proceeding (including the hearing scheduled for May 21) relating to the Stay Relief Motion, the Oversight Board withdraws Topic 23 (concerning documents and exhibits Movants intend to use in their case-in-chief) to narrow the disputed issues.

[4] Of course, showing that other events caused any diminution or dissipation does not justify the inquiry Movants seek into the deliberative process behind those events: the fact that the events occurred, and the fact that Movants took ERS Bonds subject to those events, shows any diminution in value cannot be attributed to or the result of the automatic stay. That, alone, is sufficient to deny the Stay Relief Motion.

## BACKGROUND

6. On March 7, 2019, the Oversight Board served Rule 30(b)(6) notices of deposition upon Movants, and notices of deposition upon three individual custodians Movants identified in this case. ECF Nos. 441-1 to 441-6 (collectively, the "Notices"); *see also* ECF No. 429-1 [Movants' Hearing Exhibit A] (identifying Messrs. Bolin, Engman, and Highley, Jr. as custodians).

7. On March 12, 2019, Movants served their "objections" to the Oversight Board's notices of deposition. Those objections consisted of <u>one-paragraph</u> boilerplate objections to the Rule 30(b)(6) notices of deposition. ECF No. 441-7; **Exhibit A**. Movants did not object to the individual notices of deposition. *Id.* Movants have not served any additional written objections to the Notices.

8. On March 21, 2019, Movants filed a motion to compel production of documents and attendance at a deposition relating to the Stay Relief Motion in which they took a sweeping view of the scope of discovery in this matter far beyond diminution in value resulting from the automatic stay. ECF No. 402. Movants contended discovery into "the great mysteries of [the Puerto Rico] bankruptcy" was appropriate, *id.* ¶ 2, and sought discovery into the "extinction of ERS" (¶ 4); the "alternatives" to and the "invention of Pay-Go" (¶ 4); "overlap in staff, physical premises, operations, and management" between ERS and "Pay-Go" (¶ 3); increases or decreases in Employer Contributions (¶ 3); discussions "regarding a new pension system" (¶ 46); and discovery into events occurring prior to January 1, 2017 (i.e., months before the imposition of the automatic stay in the ERS Title III case) (¶ 47).

9. On March 25, 2019, the Oversight Board opposed Movants' motion to compel on the grounds discovery in this matter should be limited to one narrow issue: the attribution of any diminution in value of collateral resulting from the automatic stay. ECF No. 410 ¶ 1.

4

10. On March 27, 2019, Movants, in reply, rejected any limitation of discovery in this matter to diminution in value of collateral resulting from the automatic stay. ECF No. 422. Instead, Movants identified yet more categories of sweeping discovery they contended were relevant, including discovery "to prove [Movants'] point that the so-called Pay-Go fees are actually just another name for their collateral" (*id.* ¶ 2); "the background, circumstances, and implementation of the Pay-Go system" (¶ 11); "whether [the Puerto Rico] legislature has done something unlawful" (¶ 14); "how the Pay-Go system was conceived (¶ 15); "what was considered specifically when it came to employer contributions [in the creation of Pay-Go]" (¶ 15); "how the Pay-Go fees were structured" (¶ 15); and "how the Bondholders' collateral has been handled" (¶ 15). This is a far cry from discovery into diminution in value *resulting from the automatic stay*.

11. On April 10, 2019, counsel to the Oversight Board responded to Movants' one-paragraph "objections" to the Rule 30(b)(b) notices via letter. ECF No. 441-9. Among other things, counsel to the Oversight Board noted that "[a]ll of the noticed Topics seek factual testimony only," not expert testimony or testimony concerning legal conclusions. *Id.* at 2.

12. On April 11, 2019 at 12:14 p.m. Eastern Time, counsel to Movants Andalusian and Mason Capital asked to confer between 4:00 p.m. and 6:00 p.m. that same day about a request for a telephonic hearing with the Court to discuss the Rule 30(b)(6) notices (but not the individual notices), even though the Court had not received briefing or argument on that issue. **Exhibit B**. The parties conferred later that day, during which counsel to Movants, for the first time, listed new objections to the Rule 30(b)(6) notices that had not been included in Movants' emails of March 12. Movants have not subsequently served further written objections to the Notices.

13. On Sunday, April 14, 2019, Movants filed the Motion, ECF No. 440.

5

# ARGUMENT

## I. THE NOTICED DEPOSITION TOPICS ARE APPROPRIATE AND NECESSARY TO EXPLORE THE FACTUAL BASES FOR MOVANTS' LIFT STAY MOTION

14. After initially objecting to Topic 14, which seeks testimony concerning the value of Movants' asserted collateral or Pledged Property, ECF No. 441-7 at 2, Ex. A, Movants now concede testimony concerning the value of their collateral is relevant to their effort to show diminution in value of that collateral resulting from the automatic stay. But, testimony concerning value of collateral necessarily requires inquiry into what that means: what Movants say their collateral is (and what distinguishes it from other assets of ERS), identification of any asserted security interest they have in that collateral, and the factual grounds for their contention that collateral has diminished in value *resulting from the automatic stay*.

15. The purpose of the other Topics at issue is to explore the factual foundation of Movants' claims and whether *the automatic stay*, or something else for which they cannot seek relief by a stay-relief motion, caused any diminution in value. Those other Topics fall into four groups.

16. *First*, Topics 5-10 and 12-13 seek the factual basis for what Movants contend is their alleged collateral. The ERS Bonds are non-recourse bonds that are only payable from ERS assets specified in the ERS Bond Resolution. Factual information Movants have about what they say belongs to them is relevant, as a threshold issue, to determine *what* they say has diminished in value. As such, the Oversight Board seeks testimony from Movants concerning their factual understanding of what constitutes ERS assets (Topic 5); the identification of their alleged collateral, and to distinguish their collateral from non-collateral assets of ERS (Topics 6-7); the identification of *other* assets Movants say constitute their collateral or their Pledged Property (Topics 8-9); and factual information concerning any asserted security interests Movants say they

6

have to back their claims over "collateral" (Topic 10). Further, Movants' communications with the Fiscal Agent—which distributed payments to Movants—are relevant to explore Movants' apparent claim their collateral *today* (i.e., prior to a full-fledged adversary proceeding resulting in a declaration otherwise) includes assets or funds beyond their Pledged Property (Topics 12-13). In short, Topics 5-10 and 12-13 supply the factual predicates for Topic 14 by identifying *what* Movants are talking about when they talk about the value of their collateral.

17. *Second*, Topics 15-18 seek *the factual basis* for Movants' contentions in this matter. Topic 15 asks Movants *why* they contend their alleged collateral has diminished in value and how much it has diminished in value; the Topic is wholly appropriate, even if Movants are worried their testimony will show they have no idea whether and to what extent their collateral has diminished in value. Topic 16 asks Movants why the *automatic stay* itself is responsible for any diminution. This, too, is an appropriate topic on a stay-relief motion that elicits factual testimony: for example, if Movants' collateral consisted of perishable goods and the automatic stay prevented their sale before they spoiled, Movants would attest to those facts. Here, Movants again may be worried they have no factual basis to say the automatic stay caused any diminution in value—but that is a reason to deny the Stay Relief Motion, not a reason to bar discovery that would yield that result. Likewise, Topic 17 seeks the facts behind Movants' claimed "diversion" or "dissipation" of their collateral for which Movants could seek relief (i.e., as a result of the automatic stay). Topic 18 seeks the factual basis for obtaining relief in the Commonwealth Title III Case rather than against ERS, particularly in view of the non-recourse nature of the ERS Bonds; again, Movants' concern that a factual basis for their claim does not exist is not a reason to bar discovery.

18. *Third*, Topics 19-21 seek testimony concerning Movants' asserted security interest in ERS's right to receive Revenues, including Employers' Contributions and "Revenues" under

7

the ERS Bond Resolution. For example, to the extent Movants can identify changes to the Employers' Contribution Rate that would entitle them to relief (i.e., resulting from the automatic stay itself), the Oversight Board should be allowed to elicit that testimony; further, Movants must supply testimony about changes in law (i.e., by identifying them) that affected their asserted collateral, and what they believed they would receive as a result of their "right to receive revenues"—particularly to the extent Movants are permitted to convert this stay-relief motion into a full-fledged declaratory-relief action on the scope of Movants' alleged collateral.[5]

19. *Fourth*, Topics 1-4 and 11 seek testimony on defenses the Oversight Board may assert, including, specifically, the facts showing Movants took the ERS Bonds subject to the Commonwealth's power to legislate concerning its pension system. As such, Topics 1-2 elicit factual testimony concerning when and under what circumstances Movants acquired ERS Bonds, and Topics 3-4 seek testimony concerning any diligence Movants performed concerning the issuance or purchase of ERS Bonds. Topic 11 puts Movants on notice specifically that they will be examined concerning the Offering Statement for the ERS Bonds, including Movants' knowledge of the disclosures in that statement concerning the Commonwealth's power to legislate. Put simply: Movants cannot prevent the Oversight Board from establishing Movants *knew* and *accepted* any diminution in value, dissipation, or diversion of collateral that is the result of *legislation* rather than resulting from the automatic stay, particularly in view of the breadth of Movants' apparent claims in this limited proceeding.

---

[5] These Topics could be narrowed if Movants are prevented from turning this stay-relief motion into a referendum on the Commonwealth's power to legislate pension reform. Given the breadth of Movants' claims and refusal to limit discovery (except as to themselves) to the diminution in value of their alleged collateral *resulting from the automatic stay*, the Oversight Board must be able to examine Movants on these subjects, and to rebut Movants' apparent contention that they have a right to receive additional collateral outside of ERS assets.

8

20. In sum, the disputed Topics all concern the factual predicates for Topic 14—namely, (a) *what* Movants mean when they say their alleged collateral has suffered diminution in value resulting from the automatic stay, (b) the factual basis for Movants' contentions that their alleged collateral has suffered diminution in value and that the automatic stay is the culprit, and (c) facts to establish defenses to the stay-relief motion including Movants' own acceptance of diminution resulting from legislation.

## II. MOVANTS' OBJECTIONS ARE MERITLESS AND SHOULD BE OVERRULED

21. The only "objections" Movants served to the Notices consisted of conclusory one-paragraph emails that complain about the page-length of the topics and otherwise contain boilerplate claims that the topics are "irrelevant," "argumentative," or "improper." ECF No. 441-7 at 2; Ex. A. None of those objections has merit, and the Court should overrule them.

22. Movants' new objections identified for the first time via this Motion are also meritless and should be rejected.

### A. Movants' Relevance Objections

23. The disputed Topics are relevant to the attribution of diminution in value resulting from the automatic stay for the reasons discussed above in Section I. Only two of Movants' additional arguments warrant a response.

24. *First*, Movants contend (Motion ¶ 13) that events that occurred before the automatic stay was imposed cannot shed light on attribution of diminution in value resulting from the automatic stay. Even putting aside Movants' own discovery requests going back to June 2016 (i.e., nearly a year before the automatic stay), Movants are wrong. The value of Movants collateral *before* the automatic stay has obvious bearing on whether the value diminished *after* the automatic stay became effective; as a result, Topic 14(a) is appropriate, and the other disputed Topics are appropriate to provide the factual foundation for Movants' contentions.

9

25. *Second*, Movants contend (Motion ¶ 14) that double standards are acceptable in discovery because the respondent parties were "actively involved" in bringing about diminution in value of their collateral. With that statement, Movants give away the game: they have no factual basis to claim *the automatic stay* (which, as the name suggests, is automatic upon commencement of the Title III Case) resulted in diminution in value, but that *other* events did. Movants cannot simultaneously claim they are entitled to stay relief for reasons *unrelated* to diminution in value resulting from the automatic stay, but then block discovery into those other reasons to introduce surprise facts at the May 21 hearing.

### B. Movants' "Lay Witnesses" Objections[6]

26. In another about-face, Movants now contend (Motion ¶ 15) that there can be no factual discovery concerning Movants' identification of their alleged collateral or Pledged Property from Topics 5-10 because Joint Resolution 188 and Act 2017-106 made the determination of their collateral "a legal question" that is inappropriate for "lay witnesses." That is wrong for the same reasons stated above, *see supra* Section I. Movants' new position yields two potential outcomes.

27. *First*, taking Movants at their word, granting a protective order on the grounds that "the rights ERS retained in its property after the enactment of Joint Resolution 188 and Act 106 is a legal question," Motion ¶ 15(a), means there should be no further document or deposition discovery from the Oversight Board concerning Joint Resolution 188 or Act 2017-106: according to Movants, the only relevant questions concerning the effect of that legislation are questions of law for the Court to determine (which is precisely what the Oversight Board contended in

---

[6] Movants' continued reference to "lay witnesses" suggests Movants intend to rely on expert testimony. While the Oversight Board has now twice asked Movants whether they intend to supply expert testimony, Movants have not said either way what they intend to do. To the extent expert testimony is offered, the Oversight Board reserves the right to request modification of the schedule to accommodate an expert discovery period.

opposition to Movants' prior motion to compel). As such, fact discovery into unambiguous legislation the Court must interpret by its plain meaning is pointless.

28. *Second*, if Movants' argument is a self-serving attempt to block the Oversight Board from examining the factual basis of Movants' contentions, Movants' argument is improper. Movants supply no authority to define the scope of discovery differently for different parties in a contested matter, and Movants' concern that they have no factual basis for relief is not a reason to bar discovery to confirm that. In any event, as described above in Section I, the Oversight Board seeks only the factual basis for what Movants say has diminished in value—and if Movants cannot identify *what* diminished in value, the Stay Relief Motion should be denied.

### C. Movants' "Vagueness" and "Overbroad" Objections

29. In their written boilerplate objections, Movants complain the Rule 30(b)(6) notices are "grossly overbroad and burdensome" without more detail, but do not complain that any request is "vague." *See* ECF No. 441-7 & Ex. A. Further, Movants do not identify how they interpret any "vague" statements or terms.

30. The Court should overrule these boilerplate objections, and ignore Movants' newly minted objections shared with the Oversight Board for the first time in writing via the instant Motion.

31. In any event, Movants' vagueness and overbreadth objections are meritless in view of the explanations provided above in Section I. Further, Movants claim to know nothing about Topic 1 (which will make the examination quite short). ECF No. 441-7 at 2. Additionally, Topics 2, 10, 21, and 22 are sufficiently particularized for the reasons stated in Section I above, even if Movants will testify they have no information responsive to them.

D.     **Movants' "Legal Conclusions" Objections**

32.     As the Oversight Board has repeatedly made clear, *see, e.g.*, ECF No. 441-9, the Notices only seek factual testimony from Movants and the individual witnesses, including as described in Section I above. Of course, Movants are free to object to the form of any question they believe is inappropriate and to object to any testimony they believe is inadmissible, but they are not free to block fact discovery through reading every Topic in a narrow and self-serving way as seeking "legal" testimony.

III.    **MOVANTS' OBJECTIONS TO THE INDIVIDUAL NOTICES OF DEPOSITION SHOULD BE OVERRULED**

33.     For the first time since the Oversight Board served the notices of deposition on March 7, 2019, Movants object to the individual notices of deposition. ECF No. 447-1 & Ex. A (objecting to Rule 30(b)(6) notices, and not mentioning individual notices). Movants' belated objection is improper. Individuals are deposed on their personal knowledge, not on the basis of Topics for which the entities must prepare their witnesses. Movants have not articulated (let alone demonstrated) any undue burden that would arise from deposing the three noticed individuals; instead, Movants entirely rely on relevance objections *to the 30(b)(6) Topics* as grounds to avoid an *individual* deposition on *personal* knowledge. Motion ¶ 27. That makes no sense. Further, the Oversight Board has good reason to believe these individuals have *personal* knowledge relevant to this case because Movants identified them as custodians. ECF No. 429-1 [Apr. 1, 2019 Hearing Ex. A]. Movants' belated and artificial attempt to limit discovery from witnesses they contend have personal knowledge is improper.

IV.    **ANY LIMITATION ON DEPOSITION TESTIMONY MUST BE UNIFORM AND MUTUAL AS TO ALL PARTIES**

34.     To the extent the Court is inclined to limit the scope of deposition testimony in any respect, such limitations must be uniform and mutual across all parties. Relevance does not change

12

on a party-by-party basis. *See* Fed. R. Civ. P. 26; Fed. R. Evid. 401. In particular, now that Movants have adopted the Oversight Board's position concerning the scope of discovery in this matter as it relates to Joint Resolution 188 and Act 2017-106—that is, that the legal effect of that legislation poses only questions of law for the Court to determine—any limitation into the scope of discovery concerning that legislation must apply equally to the Commonwealth, ERS, AAFAF, and the Oversight Board.

## **CONCLUSION**

For the foregoing reasons, the Oversight Board requests that the Court (a) reiterate its prior holding that the appropriate scope of discovery in this matter, to be applied equally and uniformly as to all parties, is the attribution of any diminution in value resulting from the automatic stay; and (b) deny the Motion.

*[Remainder of Page Intentionally Blank]*

| | |
|---|---|
| Dated: April 22, 2019<br>New York, NY | Respectfully submitted,<br><br>/s/ Margaret A. Dale<br>Martin J. Bienenstock (*pro hac vice*)<br>Brian S. Rosen (*pro hac vice*)<br>Jeffrey W. Levitan (*pro hac vice*)<br>Margaret A. Dale (*pro hac vice*)<br>**PROSKAUER ROSE LLP**<br>Eleven Times Square<br>New York, NY 10036<br>Tel: (212) 969-3000<br>Fax: (212) 969-2900<br>Email: mbienenstock@proskauer.com<br>Email: brosen@proskauer.com<br>Email: jlevitan@proskauer.com<br>Email: mdale@proskauer.com<br><br>Luis F. del Valle-Emmanuelli<br>USDC-PR No. 209514<br>P.O. Box 79897<br>Carolina, Puerto Rico 00984-9897<br>Tel. 787.977.1932<br>Fax. 787.722.1932<br>dvelawoffices@gmail.com<br><br>OF COUNSEL FOR<br>A&S LEGAL STUDIO, PSC<br>434 Avenida Hostos<br>San Juan, PR 00918<br>Tel: (787) 751-6764/ 763-0565<br>Fax: (787) 763-8260<br><br>*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* |

**CERTIFICATE OF SERVICE**

I hereby certify that, on April 22, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli