**Hearing Date and Time: May 1, 2019, at 11:00 a.m. (AST)**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| as representative of | ) | Case No. 3:17-bk-03283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| Debtors. | ) | |
| ————————————————————— X | | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | |
| as representative of | ) | Case No. 3:17-cv-01685 (LTS) |
| | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| Debtor. | ) | |
| ------------------------------------------------------------------- x | | |

## REPLY IN SUPPORT OF MOTION OF CERTAIN SECURED CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TO COMPEL PRODUCTION OF DOCUMENTS IN PRIVILEGE LOG CATEGORIES 1 TO 4 [ATTORNEY-CLIENT PRIVILEGE, ATTORNEY WORK PRODUCT, COMMON INTEREST]

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION .............................................................................................. 1

ARGUMENT ..................................................................................................... 2

I.     Respondents Fail To Carry Their Burden As To Attorney Client Privilege And
       The Common Interest Doctrine ................................................................. 2

       A.     The Attorney Client Privilege Does Not Protect Materials Sent To
              Non-Lawyer Third Parties .............................................................. 2

       B.     There Can Be No Common Interest Between ERS And Other
              Respondents .................................................................................. 5

       C.     The Fraud Exception Applies To Some Withheld Documents ............ 8

II.    Respondents Fail To Carry Their Burden As To Work Product Protection ..... 9

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

CASES

*Bank of Am., N.A. v. Terra Nova Ins. Co.*,
    211 F. Supp. 2d 493 (S.D.N.Y. 2002)......................................................................................6

*Cavallaro v. United States*,
    284 F.3d 236 (1st Cir. 2002)...........................................................................................3, 4

*Columbia Data Prods., Inc. v. Autonomy Corp.*,
    2012 WL 6212898 (D. Mass. Dec. 12, 2012).................................................................3, 5

*Dahl v. Bain Capital Partners*,
    714 F. Supp. 2d 225 (D. Mass. 2010)...............................................................................4

*Gross v. Town of Cicero, Ill.*,
    619 F.3d 697 (7th Cir. 2010)............................................................................................7

*Hill v. State St. Corp.*,
    2013 WL 6909524 (D. Mass. Dec. 30, 2013)...................................................................4

*Horwitz-Matthews, Inc. v. City of Chicago*,
    78 F.3d 1248 (7th Cir. 1996)............................................................................................7

*In re Berks Behavioral Health LLC*,
    500 B.R. 711 (Bankr. E.D. Pa. 2013)...............................................................................6

*In re Blier Cedar Co.*,
    10 B.R. 993 (Bankr. D. Me. 1981)...................................................................................9

*In re Campbell*,
    248 B.R. 435 (Bankr. M.D. Fla. 2000) ............................................................................9

*In re Cumberland Inv. Corp.*,
    120 B.R. 627 (Bankr. D.R.I. 1990)..................................................................................9

*In re Fisher Island Invs., Inc.*,
    2015 WL 148449 (S.D. Fla. Jan. 9, 2015).......................................................................8

*In re Grand Jury Proceedings*,
    417 F.3d 18 (1st Cir. 2005)..............................................................................................9

*In re Grand Jury Subpoena (Mr. S.)*,
    662 F.3d 65 (1st Cir. 2011)..............................................................................................1

*In re Imperial Corp. of Am.*,
    179 F.R.D. 286 (S.D. Cal. 1998) .....................................................................................8

*In re Richmond Unified School District*,
    133 B.R. 221 (N.D. Cal. 1991) ........................................................................................7

*In re St. Johnsbury Trucking Co.*,
    184 B.R. 446 (Bankr. D. Vt. 1995)..................................................................................9

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Warner*,
  87 B.R. 199 (Bankr. M.D. Fla. 1988) .................................................................9

*Khoday v. Symantec Corp.*,
  2013 WL 12140484 (D. Minn. Sept. 24, 2013) ...................................................8

*Lluberes v. Uncommon Prods., LLC*,
  663 F.3d 6 (1st Cir. 2011) ...................................................................................3

*Schreibman v. Walter E. Heller & Co. of P.R.*,
  446 F. Supp. 141 (D.P.R. 1978) ..........................................................................6

*SCM Corp. v. Xerox Corp.*,
  70 F.R.D. 508 (D. Conn. 1976) ...........................................................................8

*TM Park Ave. Assoc. v. Pataki*,
  214 F.3d 344 (2d Cir. 2000) ................................................................................7

*United States v. Ackert*,
  169 F.3d 136 (2d Cir. 1999) ................................................................................4

*United States v. Kovel*,
  296 F.2d 918 (2d Cir. 1961) ....................................................................2, 3, 4, 5

*United States v. Nelson*,
  712 F.3d 498 (11th Cir. 2013) .............................................................................7

*United States v. Textron Inc.*,
  577 F.3d 21 (1st Cir. 2009) ...............................................................................10

*Wade v. Touchdown Realty Grp., LLC*,
  2018 WL 575848 (D. Mass. Jan. 26, 2018) ........................................................4

**STATUTES**

3 L.P.R.A. § 775 ........................................................................................................5

3 L.P.R.A. § 776 ........................................................................................................6

3 L.P.R.A. § 781a .......................................................................................................6

3 L.P.R.A. § 786-6 .....................................................................................................6

48 U.S.C. § 2195 ........................................................................................................6

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26 ....................................................................................................10

## INTRODUCTION

1.      The thrust of Respondents' Opposition is that Puerto Rico and its instrumentalities were in dire financial condition in 2017 and, therefore, there was no meaningful distinction among different governmental bodies; the roles of lawyers and third party financial advisers were functionally indistinguishable; constitutional rights, statutory directives, and contractual obligations could be ignored at will; and anything and everything even remotely touched by a lawyer involved a potential lawsuit. This, of course, is nonsense. It is simply another way of saying that Respondents claim for themselves a form of blanket privilege that no court has ever accepted.

2.      It is settled law that a party claiming privilege bears the burden of substantiating its privilege claims. Yet Respondents have not done so, instead defending their broad privilege claims in vastly general terms. Their categorical privilege log lists more than 150 people as preparing or receiving hundreds of withheld documents, making it impossible to know in any one case whether a lawyer authored a document, or simply received it, or was among a dozen non-lawyers on a group distribution list. Neither we nor the Court possibly can know the date, subject, length, purpose, or type of any particular document. It is precisely because Respondents have resorted to such generic privilege claims that they must be strictly held to their burden of proof. Yet Respondents would turn this on its head: they dismiss glaring deficiencies in their privilege log as mere "quibble[s]" (Opp. ¶ 45) that they can pronounce as irrelevant.

3.      The conclusion seems inescapable that Respondents have invoked privilege broadly and haphazardly as a matter of convenience. Especially in a case like this one, where billions of dollars are at stake, this is unacceptable. For the following reasons, the Court should order the production of the documents in Categories 1 to 4 of Respondents' privilege log or, alternatively, review a sample of the documents *in camera* to assess Respondents' broad privilege claims. *See In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 70 (1st Cir. 2011).

4.      *First*, Respondents assert attorney-client privilege over documents sent by or to non-lawyer third parties. But the attorney-client privilege applies only to communications made in confidence between client and lawyer, not to ones shared with third parties. In certain circumstances, there is an exception for communications shared with non-lawyer advisors, but Respondents fail to make the three-part showing the *Kovel* doctrine requires.

5.      *Second*, Respondents improperly invoke the common-interest doctrine to withhold documents sent between ERS and other Respondents. ERS is, as a matter of statute, actual fact, and contract, fundamentally adverse to the other Respondents with respect to those documents. Respondents cannot eliminate that adversity by ignoring critical aspects of their relationship.

6.      *Third*, Respondents confirm that the fraud exception to the attorney-client privilege applies here. They concede that, in their purportedly privileged communications, ERS decided to breach its commitments to the Bondholders and, with its lawyers' help, transfer the Bondholders' collateral to the Commonwealth. Those communications are not protected by any privilege.

7.      *Finally*, Respondents justify their invocation of the work-product doctrine on the basis that there was ongoing and anticipated litigation about the subject matter of the documents. But the law is clear that more is required—the documents must have been prepared *for* that litigation. Respondents' Opposition says that *some* of the documents meet this test, but they offer no evidence, and do not contend (much less show) that *all* of the withheld documents do.

## **ARGUMENT**

### I.      **Respondents Fail To Carry Their Burden As To Attorney Client Privilege And The Common Interest Doctrine.**

#### A.      **The Attorney Client Privilege Does Not Protect Materials Sent To Non-Lawyer Third Parties.**

8.      Respondents assert the attorney-client privilege over hundreds of documents, but their log reveals that they were sent to or from dozens of non-lawyer third parties. Motion ¶ 11.

- 2 -

Absent some exception, "[t]he presence of third parties during an attorney-client communication is often sufficient to undermine the 'made in confidence' requirement, or to waive the privilege." *Cavallaro v. United States*, 284 F.3d 236, 246 (1st Cir. 2002). The privilege's "protection ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party." *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011). Respondents, as "[t]he part[ies] invoking the privilege[,] must show both that it applies" and "has not been waived." *Id.*

9.    Respondents' sole argument is that the relevant documents qualify for the exception known as the "*Kovel* doctrine." Opp. ¶¶ 32–36; *see United States v. Kovel*, 296 F.2d 918 (2d Cir. 1961). But Respondents do not—and cannot—show that the three strict requirements of *Kovel* as applied in the First Circuit are met: that (1) "'the third-party communications [were] necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit"; (2) the third party "play[ed] 'an interpretive role'" by "serv[ing] to translate information between the client and the attorney"; and (3) the third party was involved "for the purpose of rendering legal advice, rather than business advice." *Columbia Data Prods., Inc. v. Autonomy Corp.*, 2012 WL 6212898, at *15 (D. Mass. Dec. 12, 2012).

10.    Respondents make no effort at all to actually satisfy the second and third elements. Instead, they offer conclusory platitudes about the need for "counsel's day-to-day assistance on Puerto Rico's massive restructuring," the importance of being able to "communicate openly and freely," and fears about discouraging "open and frank conversations." Opp. ¶ 35. But this is not enough. Respondents must show that the third parties' roles were "to translate information between the client and the attorney" and that the third parties were included in communications to enable the lawyers to provide legal advice, rather than to enable the third parties to provide non-legal advice. Respondents deny that those elements are required and offer their own one-factor test—

- 3 -

"whether the advisor is 'necessary, or at least highly useful' to the dispensation of legal advice." Opp. ¶ 32. But a long line of precedent holds otherwise, and the three *Kovel* requirements come directly from court of appeals precedent. *See Cavallaro*, 284 F.3d at 247–48.[1]

11.    Respondents are remitted to their one-factor test because even the limited record before the Court demonstrates that the pertinent third parties' roles were to provide financial or other non-legal advice. AAFAF's director explains in his declaration that various third parties' roles were to, *e.g.*, "develop[] the macroeconomic model" for pension reform, "develop[] the baseline projections," "develop[] the Debt Sustainability Analysis," and "serve[] a project management and implementation function . . . [and] participate[] in the preparation of projections and analysis." Mahmud Decl. ¶ 8, Dkt. No. 453 in No. 17-3566. Not one of these tasks has anything to do with "translat[ing] information between the client and the attorney" (*Kovel* requirement 2), and they all involve third parties providing non-legal advice rather than enabling the provision of legal advice (*Kovel* requirement 3). Respondents have not shown that communications with those advisors—much less with other advisors whose roles Respondents entirely fail to address—qualify for the *Kovel* exception. *See, e.g.*, *Ackert*, 169 F.3d at 140 ("Because [the third party's] role was not as a translator or interpreter of client communications, the principle of *Kovel* does not shield his discussions with [the client's attorney].") ; *Cavallaro*, 284 F.3d at 247 ("If what is sought [in a purportedly privileged communication] is not legal advice but only accounting service . . . or if the advice sought is the accountant's rather than the lawyer's, no privilege exists.").

12.    Although this alone dooms Respondents' privilege claims as to these documents, it is equally telling that Respondents cannot meet even the first *Kovel* requirement. They claim that

---

[1] *See also, e.g.*, *United States v. Ackert*, 169 F.3d 136, 139–140 (2d Cir. 1999) (*Kovel* exception inapt since third party was not a "translator or interpreter of client communications"); *Wade v. Touchdown Realty Grp., LLC*, 2018 WL 575848, at *3 (D. Mass. Jan. 26, 2018) (listing three elements)*; Hill v. State St. Corp.*, 2013 WL 6909524, at *3 (D. Mass. Dec. 30, 2013) (same); *Dahl v. Bain Capital Partners*, 714 F. Supp. 2d 225, 227–28 (D. Mass. 2010) (same).

their privilege log and appendix satisfy their burden because they identify *in the aggregate* the lawyers and third parties involved in the communications. Opp. ¶¶ 33–34. Their Opposition argues that the advisors were "'necessary—and certainly 'highly useful'" to the lawyers. *Id.* But they offer no factual basis for this claim, do not explain any specific role that the advisors had in enabling the provision of legal advice, and do not say why the third parties needed to be included in attorney-client communications, rather than providing non-legal advice separately. *See, e.g.*, *Columbia Data Prods.*, 2012 WL 6212898, at *16. Respondents assert that they intended that these communications remain confidential. But that is beside the point. The documents are privileged only if they meet the *Kovel* requirements, and Respondents do not establish that they do.[2]

**B.    There Can Be No Common Interest Between ERS And Other Respondents.**

13.    Respondents' privilege log also reveals that documents in Categories 1 to 3 were shared between ERS and other Respondents. These documents cannot be privileged because ERS and the other Respondents are adverse with respect to the subjects of these communications. *See* Motion ¶¶ 19–26. Respondents have no adequate answer to this fundamental problem.

14.    Contrary to Respondents' contentions, ERS is not an arm of the Commonwealth government with some generalized duty to serve the public interest. Opp. ¶¶ 22–26. Nothing in ERS's Enabling Act charges ERS with any general responsibility for public welfare. Rather, while ERS is "organized as an agency of the Government of Puerto Rico," it was created by statute as "independent and separate from other" agencies. 3 L.P.R.A. § 775. Consistent with this independence, ERS is "a trust," governed by its own, independent Board of Trustees. *Id.* ERS's

---

[2] Any doubt is eliminated by the document-by-document log that Respondents produced on April 14, 2019, which reveals that Respondents are claiming attorney-client privilege over, *e.g.*, a "[d]raft spreadsheet of Commonwealth Fiscal Plan projecting general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026," prepared by McKinsey & Company. *See* Dkt. No. 446-2 in No. 17-3566, Entry No. 51. That document clearly involves financial advice by McKinsey, not legal advice, and it confirms that the third parties were retained and included in communications to provide unprivileged non-legal advice.

Board of Trustees was empowered to, *inter alia*, set policy for ERS, adopt resolutions, approve the investment of ERS's funds, and make contracts and incur debt on behalf of ERS. *Id.* § 776.

15.    Critically, ERS's Title III proceedings are separate from the Commonwealth's—PROMESA even expressly prohibits inter-debtor transfers between them, 48 U.S.C. § 2195. Substantive consolidation is the only conceivable route to merge the interests of two separate PROMESA debtors. And that extreme step was never taken in any PROMESA proceedings.

16.    The reason for ERS's independent status is clear: it was created to be in an inherently adverse, creditor position to the rest of the Commonwealth government. Employers were required by statute to pay substantial contributions to ERS to fund pension benefits, and ERS had the statutory authority to enforce those obligations. 3 L.P.R.A. § 786-6(b); *see also id.* § 781a (penalties). The resulting adversity is not hypothetical. When the Title III proceedings commenced, the Commonwealth and its instrumentalities owed ERS more than $411 million in past-due employer contributions. *See* ERS, *Annual Financial Information, FY 2016*, at 13 n. 1 (Apr. 25, 2017), https://emma.msrb.org/ER1050099-ER822796-ER1223828.pdf. The legal relationship between ERS and the Commonwealth here was and is the fundamentally adverse relationship between a creditor (ERS) and its debtors (the Commonwealth). Courts have repeatedly recognized that such a relationship is inherently adverse. *See Schreibman v. Walter E. Heller & Co. of P.R.*, 446 F. Supp. 141, 143–44 (D.P.R. 1978); *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 211 F. Supp. 2d 493, 496–97 (S.D.N.Y. 2002). The common-interest doctrine cannot apply between adverse parties. *See In re Berks Behavioral Health LLC*, 500 B.R. 711, 721–23 (Bankr. E.D. Pa. 2013).

17.    Respondents largely ignore all of this, again relying on generalized bromides. They contend that as government entities, ERS and the other Respondents owed overriding fiduciary duties to the public in general, and therefore the usual rules do not apply. Opp. at ¶¶ 23, 24. But

there is no evidence to suggest that this is, in fact, true, and there is abundant evidence that it is false. Indeed, this also happens to be one of the matters that is hotly disputed in the Stay Relief Motion itself. In these circumstances, the Court cannot simply take Respondents' word for it, and Respondents' unsupported assertions are no basis to deny discovery.

18.     Respondents' argument fails to address ERS's status as an independent trust, with its own Board and its own statutory duties that were fundamentally adverse to the Commonwealth and other Respondents. This conflict is not simply a theoretical one. At the time these withheld documents were created, the Commonwealth was hundreds of millions of dollars in arrears to ERS and ERS has statutory authority to collect past-due employer contributions and impose penalties. Obviously there was, and is, a material conflict between ERS and the Commonwealth. The cases Respondents offer to support their arguments do not solve the problem; they involve only generic statements about governments in general, and they have nothing to say about the specifically adverse statutory relationship between ERS and the other Respondents. *See United States v. Nelson*, 712 F.3d 498, 509 (11th Cir. 2013) (holding only that public officials have fiduciary duties); *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 709 (7th Cir. 2010) (same); *TM Park Ave. Assoc. v. Pataki*, 214 F.3d 344, 348–49 (2d Cir. 2000) (holding only that governments can breach contracts and pay damages); *Horwitz-Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1250 (7th Cir. 1996) (same).[3]

19.     Read most charitably, Respondents' argument boils down to the proposition that ERS and Respondents shared a common interest because the retirement system was in financial crisis and they decided to collaborate in discussing how to change it. But that does not change the factual and legal reality that they were intractably adverse: the Commonwealth had an enormous

---

[3] *In re Richmond Unified School District*, 133 B.R. 221, 226 (N.D. Cal. 1991), on which Respondents also rely, held that a conflict of interest could not prevent a government debtor from dismissing Chapter 9 proceedings, due to the voluntary nature of those proceedings. It says nothing about whether two government entities statutorily required to be independent with actual adversity and inherent conflicts have a "common interest" for privilege purposes.

and growing debt to ERS (which, as it happened, was erased upon adoption of the PayGo system),

putting ERS and the other Respondents in a position akin to a debtor and creditor negotiating a

business transaction. The common-interest doctrine does not apply to such discussions. *See, e.g.*,

*In re Fisher Island Invs., Inc.*, 2015 WL 148449, at *2 (S.D. Fla. Jan. 9, 2015) ("No common *legal*

interest could have existed between" a debtor and purported creditors because "their legal interests

in those proceedings were adverse, not common."); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508,

513 (D. Conn. 1976) (no common-interest doctrine for parties "negotiating a business proposition

between themselves" instead of "advancing [a] joint interest vis-a-vis the rest of the world");

*Khoday v. Symantec Corp.*, 2013 WL 12140484, at *3 (D. Minn. Sept. 24, 2013) ("[T]he common

interest doctrine preserves the privilege for parties working towards a common purpose who seek

guidance from counsel, rather than for parties negotiating at arms-length who disclose privileged

documents to one another in the course of the negotiations."). Respondents offer no support for

the proposition that government entities can share a common interest in negotiations over whether

one will continue to pay the other billions of dollars, nearly half a billion of which are past due.[4]

### C. The Fraud Exception Applies To Some Withheld Documents.

20.     Remarkably, Respondents' Opposition admits that ERS intentionally breached its

contracts with the Bondholders and conspired with the Commonwealth to divert the Bondholders'

collateral, and that documents withheld as privileged were generated as a part of that scheme. Opp.

¶¶ 25–26, 39. Those admissions alone satisfy the requirements of the fraud exception.

21.     Contrary to Respondents' Opposition, it is not necessary to "assum[e] that a

fraudulent transfer could somehow suffice to invoke the" fraud exception (Opp. ¶ 38) because

---

[4] Courts have held that debtors-in-possession and creditors' committees can share a common interest in challenging claims, because both seek to maximize the debtor's estate. *See, e.g.*, *In re Imperial Corp. of Am.*, 179 F.R.D. 286, 289 (S.D. Cal. 1998). But the discussions at issue here do not involve a joint challenge to a claim, but rather a fundamental change to adverse legal relationship between two entities that are statutorily required to be independent.

courts have repeatedly held just that. *See, e.g.*, *In re Campbell*, 248 B.R. 435, 440 (Bankr. M.D. Fla. 2000); *In re Cumberland Inv. Corp.*, 120 B.R. 627, 630–31 (Bankr. D.R.I. 1990); *In re Warner*, 87 B.R. 199 (Bankr. M.D. Fla. 1988); *In re Blier Cedar Co.*, 10 B.R. 993, 999–1000 & n.14 (Bankr. D. Me. 1981); *see also In re St. Johnsbury Trucking Co.*, 184 B.R. 446, 456 (Bankr. D. Vt. 1995) (courts "look to substance, not form" in applying the exception, so that "not just technical . . . frauds are excluded from the attorney-client privilege" and "many kinds of wrongdoing that do not qualify as civil fraud in the strict sense" are also covered). Respondents' only answer to these cases is to assert that they are irrelevant because there was no fraudulent transfer. Opp. ¶ 38. The problem with this argument, of course, is that it assumes its conclusion. Whether the diversion of the Bondholders' collateral was a fraudulent transfer is a question the Court will ultimately have to resolve, and Respondents' *ipse dixit* is no grounds to deny discovery.

22.     The law recognizes the contradiction of requiring a party to prove fraud in order to obtain the documents that might show that fraud, and the law avoids that problem by providing that the fraud exception requires "something less than a mathematical (more likely than not) probability"; "it is enough . . . that there is a reasonable basis to believe that the lawyer's services were used by the client to foster . . . fraud." *In re Grand Jury Proceedings*, 417 F.3d 18, 23 (1st Cir. 2005). As the Bondholders have explained, there is substantial evidence suggesting that ERS conspired with the Commonwealth to transfer the Bondholders' collateral, and Respondents' Opposition now confirms that ERS did precisely that. *Campbell*, *Warner*, and *Blier Cedar Co.* found that this was sufficient to trigger the fraud exception, and the Court should do the same here.

## II.     Respondents Fail To Carry Their Burden As To Work Product Protection.

23.     Finally, Respondents argue that they have adequately invoked the work product doctrine because litigation was expected and ongoing during the time period covered by the privilege log. Opp. ¶¶ 43–44. But they still fail to show or even claim that any particular document

or category of documents—much less all 344 of the documents in Categories 1 to 3—was in fact prepared for use in litigation, as the law requires. *United States v. Textron Inc.*, 577 F.3d 21, 29 (1st Cir. 2009) (en banc). And while Respondents point out that the documents concern pension reform and "[r]eforms over the pension system were expected to and have in fact led to litigation," Opp. ¶ 44, "[i]t is not enough to trigger work product protection that the *subject matter* of a document relates to a subject that might conceivably be litigated." *Textron*, 577 F.3d at 29.

24.     Respondents also contend that the Bondholders do not make an adequate showing of substantial need. But while the Bondholders have been hampered by Respondents' exceedingly generalized privilege log, which offers no detail about the subject matter of particular documents, they have more than shown why they have a substantial need. *See* Motion ¶ 37, *see also* Docket No. 446 in Case No. 17-3566, ¶¶ 33–34. Respondents' main argument on the merits is that the Bondholders are not entitled to relief from the automatic stay because Joint Resolution 188 and Act 106 eliminated the Bondholders' collateral by replacing employer contributions with PayGo fees. Thus, because ERS no longer receives employer contributions, there is no longer any collateral, and nothing now exists that could be diminished in value. In rebuttal, the Bondholders intend to show that employer contributions and PayGo fees are little different, and that their liens continue to attach to the PayGo fees. To do that, the Bondholders need the withheld documents, which seem to explain how employer contributions were turned into PayGo fees. Because the PayGo system was hatched in secret by AAFAF, the Oversight Board, the Commonwealth, and ERS itself, the Bondholders have no way of obtaining this evidence except from Respondents and the Oversight Board. There can be little question but that Respondents have a "substantial need" for the purportedly protected documents, and no "substantial[ly] equivalent" contemporaneous evidence of Respondents' actions is available. Fed. R. Civ. P. 26(b)(3)(A)(ii).

## **CONCLUSION**

For the reasons above and in the Motion, the Court should compel Respondents to produce all documents in Categories 1 to 4 of their privilege log. In the alternative, and at a minimum, the Court should review a sample of the documents *in camera* to assess the claims of privilege.

In San Juan, Puerto Rico, today April 22, 2019.

/s/ Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

/s/ Bruce Bennett
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez
José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Cheryl T. Sloane
John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*