J4IsPROc

```
1    UNITED STATES DISTRICT COURT
     DISTRICT OF PUERTO RICO
2    ------------------------------x
     IN RE: THE FINANCIAL OVERSIGHT      PROMESA
3    & MANAGEMENT BOARD FOR PUERTO
     RICO,                               TITLE III
4
         as representative of
5                                        17 BK 3283 (LTS)
     THE COMMONWEALTH OF
6    PUERTO RICO, et al.                 (Jointly Administered)
                     Debtors.
7    ------------------------------x

8                                        Motion Hearing
                                         April 18, 2019
9                                        2:00 p.m.

10   Before:

11                   HON. LAURA TAYLOR SWAIN,

12                                        District Judge

13                           APPEARANCES

14   PROSKAUER ROSE LLP
          Attorneys for FOMB Oversight Board
15   BY:  BRIAN C. ROSEN
          JEFFREY LEVITAN
16
     PAUL HASTINGS LLP
17        Attorneys for Official Committee of Unsecured Creditors
                      and its capacity as Commonwealth agent
18   BY:  LUC A. DESPINS
          G. ALEXANDER BONGARTZ
19
     ROBBINS RUSSELL ENGLERT ORSECK UNTEREINER & SAUBER LLP
20        Attorneys for Ad Hoc Group of General Obligation
                      Bondholders
21   BY:  DONALD BURKE
          MARK T. STANCIL
22
     PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
23        Attorneys for GO Group
     BY:  ANDREW ROSENBERG
24

25
```

J4IsPROc

```
 1                          APPEARANCES
                          (Continued)
 2

 3   O'MELVENY & MYERS LLP
          Attorneys for Movant AAFA
 4   BY:  PETER FRIEDMAN

 5   REED SMITH LLP
          Attorneys for The Bank of New York Mellon
 6   BY:  LUKE SIZEMORE

 7   QUINN EMANUEL URQUHART & SULLIVAN, LLP
          Attorneys for COFINA Senior Bondholders
 8   BY:  SUSHEEL KIRPALANI
          DEBORAH NEWMAN

 9   MILBANK LLP
          Attorneys for Ambac Assurance Corp.
10   BY:  GRANT R. MAINLAND

11   CADWALADER, WICKERSHAM & TAFT LLP
          Attorneys for Assured Guaranty Corp. and Assured Municipal
12                     Corp.
     BY:  WILLIAM NATBONY
13        THOMAS J. CURTIN

14   BROWN RUDNICK LLP
          Attorneys for Special Claims Committee
15   BY:  EDWARD WEISFELNER

16   JONES DAY
          Attorneys for Andalusian (the "ERS Bondholders")
17   BY:  BENJAMIN ROSENBLUM

18   WHITE & CASE
          Attorneys for the "Puerto Rico Funds"
19   BY:  JASON N. ZAKIA

20   WEIT, GOTSHAL & MANGES LLP
          Attorneys for National Public Finance Guarantee
21                     Corporation
     BY:  MARCIA GOLDSTEIN
22        GABRIEL MORGAN
          STEPHANIE MORRISON
23

24                          APPEARANCES
                          (Continued)
25
```

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4IsPROc

JENNER & BLOCK LLP
     Attorneys for Official Committee of Retired Employees of
                    the Commonwealth of Puerto Rico
BY:  CARL WEDOFF

KRAMER LEVIN NAFTALIS and FRANKEL LLP
     Attorneys for Ad Hoc Group of PREPA Bondholders
BY:  THOMAS M. MAYER

J4IsPROc

1        (Case called)

2        THE COURT:  Again, good afternoon, and welcome to

3   counsel, parties of interest, members of the public, and

4   members of the press here in New York, and to all of the

5   telephone participants.

6        We are here today for a hearing on the urgent joint

7   motion for entry of an order approving a stipulation and agreed

8   order by and among Financial Oversight and Management Board,

9   its Special Claims Committee, and Official Committee of

10  Unsecured Creditors relating to joint prosecution of debtor

11  causes of action, which is docket entry number 6305.

12       I will thank you all for continuing to remember the

13  rules about electronic devices, and in an effort to avoid sound

14  feedback problems, the only live microphone for counsel remarks

15  is the microphone at the podium.

16       So I have your batting order, if you will, and time

17  allocations before me, and my expectation will be to call on

18  you in that order.  If you feel a need to make remarks at some

19  other time, please raise your hand, and I'll recognize you and

20  call you to the podium at an appropriate time.

21       Thank you for your cooperation with those arrangements

22  as well.

23       The first speaker I have on the list is Mr. Despins

24  for the Committee.

25       Mr. Despins, would you go to the podium, please.

1      Did you wish to reserve?  I have you down for

2  24 minutes in total.  Do you wish to reserve a portion of that

3  for reply?

4      MR. DESPINS:  Yes, your Honor.  Good afternoon, your

5  Honor.  Yes, I would like to reserve five minutes.

6      THE COURT:  All right.  We'll set the mic clock for

7  19 minutes when you begin speaking.

8      MR. DESPINS:  Good afternoon, your Honor.  Luc

9  Despins, Paul Hastings, for the Committee.  The first thing I

10  want to do is thank the court for seeing us on such a short

11  notice, and I want to apologize to the court and to my

12  colleagues for the short expedited process.  I really dislike

13  it when I have to jump through hoops like that, and I know how

14  you collectively feel.  But here, we have to deal with an issue

15  which no one can change, which is the May 2 deadline.  We

16  apologize, but we need to move on an expedited fashion.

17      Your Honor, given the short notice that was given to

18  people and to the court, I think it would make sense for the

19  court and the parties, for us to go through the revised

20  stipulation which was attached to our reply this morning to see

21  the changes that we made.  I would like to talk about the

22  stipulation, what is the structure, why is the structure like

23  that, what does it accomplish, etc.

24      Your Honor knows that this stipulation is the result

25  of the meet-and-confer process that the court imposed after we

J4IsPROc

1    filed our March 25 motion to set a process for an eventual

2    Section 926 motion and that is docket number 5997.  It is

3    essentially a settlement of that motion.  I am not going to go

4    back and describe everything that was alleged in that motion

5    5997, the March 25 motion.  I think everybody knows it by now.

6            Now, turning to the stipulation, I'm going to go

7    through the mark to show change version, your Honor.  That is

8    at 6381-2 filed this morning, again.

9            THE COURT:  You're going to be doing page references

10   to the black line?

11           MR. DESPINS:  Yes, your Honor.

12           THE COURT:  Very well.  Thank you.

13           MR. DESPINS:  So the first change is on page three.

14   It is to clarify --

15           THE COURT:  Page three ECF or page three at the

16   bottom?

17           MR. DESPINS:  I'm sorry.  At the bottom.

18           I can refer to ECF, if that would be preferable.

19           THE COURT:  Just be consistent.  So we're all looking

20   at the bottom now.

21           MR. DESPINS:  Correct.  Page three at the bottom.

22   Basically, we clarify in there was we are only dealing with the

23   Commonwealth today.  In fact, your order that was entered a

24   while ago, after we filed our March 25 motion, provided other

25   timeframes to deal with other debtors.  It is true that there

J4IsPROc

1    was some language in this stipulation that implied that other

2    debtors were covered.  We are clarifying it doesn't.  It only

3    covers the Commonwealth.  And it also clarifies that this does

4    not cover claims of the Commonwealth against other debtors.

5        If it is not clear, I want to clarify here, this does

6    not cover claims of the Commonwealth against either other

7    debtors, such as HTA, PREPA, ERS, or claims of the Commonwealth

8    against other governmental entities that are not debtors.

9    These will be governed by a tolling agreement that has been

10   negotiated and therefore this is not covered by this.

11       The Committee is not a co-plaintiff, at this stage, as

12   to any of these types of claims.

13       THE COURT:  Would it be appropriate to include COFINA?

14       MR. DESPINS:  Sure, your Honor.  I didn't include it.

15   You're absolutely right, yes.

16       Then I move to page four.  At the bottom, again, it is

17   just to make sure we're dealing with the Commonwealth.

18       Page five, also to be precise, we're dealing with the

19   Commonwealth only.

20       Then we added some language at the request of AAFAF.

21   It is a resignation of rights regarding Section 303.  Frankly,

22   it is kind of speculative as to whether this would ever apply,

23   but they wanted to be sure that they could raise these 303

24   issues later, and we have agreed to that.

25       Then we go to page six.  Again, at the bottom, in

J4IsPROc

1    paragraph five, we deleted any reference to statute of

2    limitation expiring on a date other than May 2, that is the

3    Commonwealth date.

4        At the bottom of page six, paragraph seven, we

5    have added some language regarding the obligation of the

6    co-plaintiffs to avoid duplication of efforts and to minimize

7    the incurrence of fees.  And as you know from our reply, your

8    Honor, we have already taken some steps in that direction.  We

9    recommended to the Committee, and the Committee accepted, that

10   with respect to the role of the Committee as co-plaintiff or

11   co-trustee regarding what I will describe later as the garden

12   variety type action, avoidance actions, all these things will

13   have no role in that other than perhaps reviewing a master form

14   complaint.  All of that, the rest should be handled by local

15   counsel for the Committee on the Committee side.

16       That should address a lot of the concerns here,

17   because that is the bulk of the volume I'll describe that later

18   in terms of claims.

19       THE COURT:  Now, I don't see anyone on the speakers

20   list for the fee examiner.  Have you cleared with the fee

21   examiner the fee examiner's reaction to that cost control

22   proposition that is somewhat different from what the fee

23   examiner had proposed?

24       MR. DESPINS:  I sent them an e-mail saying I would

25   recommend this to the Committee, but I have not heard back from

J4IsPROc

1    him.  I am not proposing to somehow bar the fee examiner from

2    implementing whatever he is recommending, or so we're not --

3            THE COURT:  You're not trying to preclude the fee

4    examiner from making that requirement?

5            MR. DESPINS:  Absolutely.

6            THE COURT:  OK.

7            MR. DESPINS:  Then moving on, your Honor, to page

8    nine, at the end of paragraph 12, we have added some language

9    we thought that was clear, but it doesn't hurt to be extra

10   careful, that basically says Chief Justice Houser is going to

11   decide who attends what and what order mediation takes place,

12   and nothing here changes that.  So that should not be

13   controversial, I don't believe.

14           Then on page ten, we have added this provision that

15   AAFAF had a heart attack over, that the Committee shall have

16   the same statutory rights to access information as the

17   Oversight Board.  No need to talk about it.  It is out.  That

18   is on page ten at the bottom, but it is paragraph 13.

19           And then on page 13 at the bottom, we said that the

20   prospective additional stipulations that we are hopeful to

21   enter into with respect to other debtors, nobody is bound by

22   this.  This does not bind everyone.  Everyone's rights are

23   reserved to that, to object to that, and the rights of the

24   Oversight Board on the one hand and the committee on the other

25   hand are preserved as well.

J4IsPROc

 1          Then on paragraph 20, there is some language to deal

 2    with AAFAF.

 3          That is the universe of changes.  I think that, your

 4    Honor, should resolve a lot of the issues that were raised.

 5          I think it is important to now address, OK, what is

 6    the stipulation doing, why is it structured like that.

 7          So the first thing it does is the stipulation

 8    appointments the Committee as co-plaintiff or co-trustee, as

 9    the case may be, which certain members of the Oversight Board,

10    they happen to be the same people that are on the Special

11    Claims Committee of the Oversight Board.

12          THE COURT:  Are there circumstances under which your

13    Committee would not be denominated a trustee in addition to

14    being denominated a plaintiff?  You said co-plaintiff or

15    co-trustee?

16          MR. DESPINS:  The distinction is that they may be

17    claims we're relying on derivative standing being granted and

18    others where we are relying on 926.  That is really just a

19    language issue.  But at the end of the day, we are both

20    essentially, but...

21          THE COURT:  So to the extent there have been

22    objections that are key to the statutory provision to 926 on

23    the one hand or to Commodore in the underlying derivative

24    standing principles, the court will have to engage both of

25    those in order to give you the relief or the status that is

J4IsPROc

1   being sought for the Committee.  That is what I'm trying to

2   clarify here.

3           MR. DESPINS:  Well, not necessarily.  For example,

4   what we call the garden variety complaints, I'll describe in a

5   second, those are purely avoidance actions and those are,

6   therefore, solely under 926.  But there may be other claims

7   that are both 926 and derivative standing.

8           So I hesitate to give you an absolute answer, except

9   to say that there is some claims that are solely 926, other

10  claims will be a mixture of both.

11          THE COURT:  So what I was trying to ask was whether

12  today, if I am going to approve this stipulation, I need to be

13  satisfied both that 926 is appropriate, although not

14  necessarily for every single claim, and that derivative

15  standing is appropriate.

16          MR. DESPINS:  We believe we meet those standards, so

17  we'll address that in a minute.

18          THE COURT:  Yes.

19          MR. DESPINS:  Now, let's talk about what does it do?

20          It appoints us as co-trustee or plaintiff, it does the

21  same for the four members of the board that are on the Special

22  Claims Committee.

23          The first question that was asked is, well, we don't

24  know what claims you're going to bring and I understand that.

25  We have a list.  We collectively have a list, but obviously if

J4IsPROc

1   we're going to ask people to sign tolling agreements, part of

2   the bargain, if you will, is if I'm signing the tolling

3   agreement, my name is not going to be on the front page of the

4   local papers.

5        So it is very hard to give the list to everyone, to

6   make it public, and to tell people, oh, by the way, can you

7   sign the tolling agreement.  That is why they haven't been made

8   public.  There is a list, and I'll describe the categories now

9   as opposed to individuals, but the categories are very easily

10  understood.

11       The first category is what I call garden variety

12  avoidance actions.  There is probably several hundred potential

13  complaints, your Honor.  So that is why practically I don't see

14  how your Honor would be reviewing each complaint and making a

15  finding, but let me describe what they are.

16       They are preferences or constructive fraud claims and

17  they are based on -- you know, as you know, preference

18  statutory liability is fairly well defined.  And so you have

19  people -- by the way, I want to say this at the outset, that

20  the board and the Committee agreed to a threshold, a minimum

21  threshold that no one that received less than $2.5 million

22  during the review period would be looked at at all.

23       So you're home free if you received less than

24  $2.5 million.  So, therefore, the concern about, well, we are

25  going to pursue people for $50,000.  That is not going to

J4IsPROc

1    happen.  It wouldn't happen anyway.  We established the

2    threshold of $2.5 million.  I want to be clear, if you're over

3    $2.5 million, you'll be sued.  You need other factors to be

4    present, such as, well, they look at the payment history.  If

5    you were receiving 2,000 a month for two years and the month

6    before the following year you got 5 million, that's a red flag,

7    and you're going likely to be in the category of people getting

8    sued.

9             There are other red flags.  For example, under Puerto

10   Rico law, if you're doing business with the government, you

11   need a contract with a lot of bells and whistles, not a simple

12   contract.  It needs to be registered with the government.  I

13   don't know all the details.  That is very important.  Those

14   people who don't have that, that would be another red flag

15   where they could get sued.

16            But these are suppliers or services, products, we've

17   excluded all the not-for-profit or charities from that list.

18   So we're trying to whittle it down.  That's not the goal, but

19   the point is that practically it is going to be whittled down

20   because we get more details, more information as time goes by.

21            So that is what we call the garden variety fraudulent

22   transfer and avoidance action category.

23            Brown Rudnick is taking the lead on drafting a form

24   complaint.  They are taking the lead on that in terms of

25   identifying and working with financial advisors to figure out

J4IsPROc

1    which bucket people fit in, etc., etc. But the bottom line is

2    they are, you know, garden variety claims, and these are the

3    claims that the Committee has decided, all these things will

4    not be involved in, except in a really high-level supervisory

5    capacity.

6            The next category of claim, your Honor, are technical

7    lien avoidance claims. What are we talking about, tons of

8    people in this case, is this them sitting in the room here,

9    said in the beginning of the case, I'm a secured creditor.

10   Well, secured by what? Well, full pledge or the full credit of

11   the Commonwealth.

12           Well, the Oversight Board and the Committee obviously

13   doesn't agree that these people are secured, but there is a

14   reason to challenge them as well. Not only the merits, but the

15   fact that there is no filing to support them or that it is a

16   statutory lien that can be avoided. It is technical lien

17   avoidance.

18           There is tons of people, tons, there are many people,

19   many creditors in the case assert that they are secured when

20   they are not. So that part of the work is being handled by

21   Proskauer. They are drafting the complaints themselves, and

22   as you know from the stipulation, we only have a right to see

23   them. We hope to see them earlier. We have a right to see

24   them no less than four business days before they are filed.

25           So these are, again, technical lien avoidance actions.

J4IsPROc

1   You know, it is pretty self-explanatory.

2          Then there are other types what we call third-party

3   causes of action against underwriters and all that.  You know,

4   we don't see eye to eye with the board on that.  That is not

5   for today.  We don't need to deal with that.  Brown Rudnick is

6   taking the lead on those claims.

7          What is important to say about the stipulation is it

8   does not allow the Committee to bring claims on its own except

9   one exception, which is if the board is already suing someone,

10  the Committee can add a count or a claim of its own against

11  that entity.  We call those the subject claims in the

12  stipulation.  Paragraph 13, subject is a safety valve there.

13         The board said, wait a minute, what if you raise some

14  theory that makes no sense.  We want to have the right to take

15  it back from you.  And we agreed to that, and the court will

16  decide.  So there is a safety valve built in.  Otherwise, the

17  Committee -- very clear here -- has no right to bring a claim

18  on its own.  It's only this exception for subject claims.

19         We hope, by the way, that there won't be any subject

20  claims, because we hope we'll be able to convince the board

21  that if they are suing under 544 and 545 or vice versa.

22         I have already said that the stipulation does not deal

23  with claims against by and between affiliates.  What I mean by

24  that is the debtors and the non-debtor entities, they will be a

25  separate filing disagreement for this.  The Committee is not

J4IsPROc

1   being appointed as a co-plaintiff or co-trustee as to those.

2              Now, why this structure?  What does the Committee get

3   out of it?  What does the board get out of it?  The structure

4   is designed to accomplish two goals.  First, from the

5   Committee's point of view, it satisfies a watchdog role.  We

6   get some rights as co-plaintiffs to monitor them, and we have

7   some rights under the stipulation itself, for example,

8   paragraph 8 or paragraph 11, that we can come to your Honor and

9   say, your Honor, they are not really -- they filed this thing a

10  year ago, but they are not doing anything about it.

11             So that is what we're getting, the watchdog role.  The

12  ability to come to court to say, hey, this litigation is not

13  being pursued.  What are they getting?  They are getting an

14  insurance policy that would say -- it is not necessarily a

15  perfect insurance policy, but it is an insurance policy against

16  what we call the Aurelius.  Aurelius said to the board, since

17  the First Circuit decision, you're acting illegally.  Follow

18  that logic.  They might be filing, if they are on their own,

19  they could be filing complaints that don't count because they

20  are acting illegally.  Therefore, they could be time barred.

21             So the board, there is a discussion about how do we

22  address that problem, and one of the ways is to appoint the

23  Committee as co-trustee and as co-plaintiff, so that if the

24  court were to find that the de facto officer theory does not

25  apply, once you've been told that you are no longer a de facto

J4IsPROc

```
 1    officer because you've been told you're acting illegally, then
 2    these claims will be protected.  That is what the board gets
 3    out of that.
 4            I would say other indemnities, you have to spend
 5    quality time with yours truly, which I am sure they will
 6    appreciate.  The point is that both parties are getting
 7    something out of this.
 8            Is this insurance policy fool proof?  We don't know,
 9    but it is the best insurance policy there is.  Do I believe
10    there will be a fire at my house?  Absolutely not, but I have
11    fire insurance.
12            So the next I want to address, your Honor, is the fee
13    issue or that this is going to be very expensive.  I already
14    addressed some of that.  I think there is a false assumption
15    here, which is that if we are not co-plaintiff, there will be
16    zero fees incurred with this process.  Not true.  We would be
17    intervening or monitoring these adversary proceedings anyway.
18    Therefore, there would be cost involved.  We don't believe that
19    the cost here would be material.
20            I just want to give you a sense of how light touched
21    the Committee used in these cases.  If I could use just one
22    minute of my time?
23            THE COURT:  Yes.
24            MR. DESPINS:  We have not asked one question at any
25    deposition.  So the people might say these guys, no, we are
```

J4IsPROc

1    using others to ask the questions.  We have been very, very low

2    key in terms of our involvement.  There is no reason to think

3    it will be different here.

4            Then they say that you can't approve this because you

5    don't know what claims are being approved.  I think I've given

6    you a fairly good description of those claims, and with all the

7    safety valve mechanisms that allow the court to take back

8    whatever we are doing, I think that we are protected.  The

9    debtors are protected.

10           The last point I want to make is that this is a

11   settlement of the issue.  Therefore, you know, this should be,

12   in terms of the findings, if the Oversight Board is not able to

13   file claims because it is acting illegally, that is the theory

14   of Aurelius.  Then it is refusing unintentionally, but refusing

15   to bring claims because it is unable to bring claims.

16           So the 926 is met and you have the same thing on the

17   derivative standing point.  The standard is met because that is

18   the only way to protect these claims that will evaporate anyway

19   to get this insurance policy.  That makes sense.  And as I

20   said, the defendants in these actions will be able to complain,

21   as the defendants in the PBA action complain about the fact

22   that we are co-plaintiff and the board, what incentive does the

23   board have not to complain about us if they think we're

24   bringing a claim that is really without merit?  There is no

25   incentive.

J4IsPROc

```
1        So they will do that.  Your Honor will have a
2   opportunity to say, No, enough.  We're not allowing that and,
3   therefore, we believe that for these reasons, we have met our
4   standard.  Our standard has been met and this should be
5   approved because that's the only way to protect these claims.
6        THE COURT:  Thank you.
7        Please stay there.  I'm stopping your clock running,
8   but I have a few questions that I want to cover with you before
9   I hear from your colleagues and the opponents.
10       As to the common standard, the best interest of the
11  estate and the necessity and benefit, am I correct in
12  understanding that your sort of bottom line argument is that at
13  this point, the debtor, the Commonwealth is facing a binary
14  proposition which is protection of the right to pursue these
15  claims or not given the imminent statute of limitations and the
16  Aurelius problems, so that it should be sufficient for me to
17  find at this juncture that it is in the best interest of the
18  debtors and necessary and beneficial for the insurance policy
19  aspect to be there, and to the extent there has been a
20  settlement and a determination by the board that cooperation
21  and prosecuting these cases is an appropriate use of available
22  resources, that that is necessary and beneficial to the estate?
23       MR. DESPINS:  That is correct.
24       Plus, I would add the safety valve, your Honor.  The
25  ability of the court to take back the consent, the
```

J4IsPROc

1  authorization that you would give today, if you approved it.

2  To me, that is key.

3            THE COURT:  Thank you.

4            Second question:  Does anything in this proposed

5  stipulation limit the ability of creditors to raise their

6  constitutional standing and/or conflicts issues as against the

7  Committee within the context of particular adversary

8  proceedings once brought?

9            MR. DESPINS:  Well, if they are defendants in the

10  proceeding?

11           THE COURT:  Yes, if they are defendants.

12           MR. DESPINS:  Absolutely.  Yes, your Honor.  That is

13  why I gave the PBA example.

14           In PBA, we are co-plaintiff with the board, and some

15  or all of the defendants are moving to have us dismissed from

16  the case on the basis that we have no standing.

17           THE COURT:  So you're not seeking to preclude that

18  with court approval of your appointment as a plaintiff, you

19  recognize that that sort of issue remains open properly in a

20  given adversary proceeding by someone standing in that

21  adversary proceeding?

22           MR. DESPINS:  Yes, your Honor, by a defendant.

23           THE COURT:  All right.  As to the refusal issue with

24  926, you are asking me to deem the potential prospective

25  incapacity of the board as a refusal.

J4IsPROc

1          Are you also asking me to construe this settlement

2    and this structure that's been proposed as the board's

3    determination that it will proceed in this configuration, but

4    not solely on its own or in a different configuration as

5    refusal to perform the functions that are allocated by the

6    stipulation to the UCC?

7          MR. DESPINS:  Yes.  And I would add that because this

8    is a settlement, the way we look at this is we could have

9    filed -- in theory, your Honor, we could have filed a motion

10   seeking complete standing to bring all these claims.

11         The board would have, of course, opposed that.  This

12   is a lesser inclusive remedy and we don't understand how a

13   target of a 926 motion cannot settle it with half a loaf with a

14   party that is moving to get that relief.  Half a loaf being

15   co-plaintiff.

16         THE COURT:  And how do you respond to the argument

17   that the Committee is not a creditor and the statute narrowly

18   and absolutely requires that a single creditor itself make a

19   926 motion?

20         MR. DESPINS:  We have already addressed that.  We said

21   in our March 25 motion that, if need be, we would add members

22   of the Committee and, in fact, you may know that -- is it

23   yesterday?  We filed a motion yesterday.

24         THE COURT:  You did.

25         MR. DESPINS:  And three members of the Committee

J4IsPROc

1    joined into that.  That is a high-protecting argument, because

2    the party that appointed us as a trustee does not need to be a

3    creditor.  The party moving for that relief needs to be the

4    creditor.  We have that because we have three creditors that

5    joined in the other motion, and if need be --

6         THE COURT:  So the earlier motion that was settled in

7    this by way of this stipulation included individual creditors?

8         MR. DESPINS:  It did not.  It said, if need be, we

9    would add these creditors, and we know who they are.  It is

10   Moral Financial Liquidating Trust, Tradewinds, and SCIU.

11        That's a near technicality.  I don't think that should

12   be an issue.  Certainly the trustee does not need to be a

13   Committee -- I'm sorry -- the trustee does not need to be a

14   creditor.

15        THE COURT:  Yes.  The Committee exists to represent

16   the interests of creditors?

17        MR. DESPINS:  Exactly.

18        THE COURT:  All right.  In the proposed 105, PROMESA

19   105 umbrella provision that has been proposed, the language

20   cites generally to the benefit of all indemnities and

21   immunities available to a trustee under the bankruptcy code in

22   PROMESA, but only specifically cites 105.

23        What other sorts of indemnities and immunities?

24        MR. DESPINS:  No.  It is generally a bankruptcy and

25   trustee has de facto immunities in the sense that they are

J4IsPROc

1    protected by -- the case law establishes that, unless they are

2    acting in a capacity where they are violating the duty by

3    getting payments or something like that, they are protected as

4    a standard of protection for a trustee appointed at bankruptcy.

5           They are immune from suit unless you can show some

6    very venal conduct.  Let's put it that way.  That is the same

7    immunity that applies to any trustee.

8           THE COURT:  All right.  Do you intend to modify the

9    operation of Section 1123(b) of the code or otherwise restrict

10   or compromise the ability of creditors to exercise their rights

11   under the code and PROMESA?

12          MR. DESPINS:  I would like to.  I don't think we can.

13          No.  The answer is no, your Honor.  I should have said

14   that whatever happens to those claims under our plan, that's

15   what will happen.  It's not because we are co-plaintiff that we

16   have a veto over a plan or anything like that.

17          THE COURT:  Thank you.

18          Mr. Weisfelner is next up for three minutes.

19          MR. WEISFELNER:  Thank you, Judge.

20          For the record, Ed Weisfelner, Brown Rudnick, on

21   behalf of the Special Claims Committee.

22          Your Honor, I would like an opportunity to comment on

23   your first, second, fourth, and fifth questions to Mr. Despins.

24          You asked, first of all, about the distinction between

25   926, which we all know affords an opportunity under the rights

J4IsPROc

1   and circumstances to pursue avoidance claims and the rights, if

2   any, that are available to pursue non-avoidance claims.

3         Your Honor, we firmly believe that that is an

4   important distinction in the latter situation.  You're talking

5   about rights of a sovereign that we don't think can be

6   displaced absent consent of the sovereign.  That is the point I

7   want to make.  To the extent that the Committee is obtaining

8   co-trustee status for pursuit of non-avoidance claims, its only

9   basis is the consent of the financial advisory board.

10  Otherwise, it would be unavailable.

11        Your Honor, this is a preview of the argument we are

12  likely to have next week in San Juan over the Committee's

13  motion for authority to become trustee, sole trustee with

14  regard to claims that we're not prepared to see prosecuted.  I

15  wanted to make that point clear, and I hope I have.

16        Likewise, you asked about the Committee's standing.

17  Here, again, I want to make sure that we are not prejudicing

18  the arguments that are likely to unfold next week.  We did note

19  that, unlike today's motion, the Committee chose to add three

20  of its members to its moving papers.  We think they did that

21  for a reason, knowing that the Committee itself, absent, again,

22  consensual resolution we have in connection with the joint

23  stipulation, has no ability as a non-creditor to seek relief

24  under 926.

25        The fifth question you asked was as to the scope of

J4IsPROc

1    the indemnity.  Your Honor, without being facetious, we want

2    every single thing we can get by way of indemnities and

3    exculpations.  Toward that end, I would note for the record

4    that the members of the Special Claims Committee serve and have

5    served in the context of this proceeding over many evenings and

6    middle of the night conversations without any compensation.  I

7    think the broadest possible exculpation and indemnity for them

8    to serve in this trustee role, which, again, was spurred on by

9    the Aurelius litigation, is critically important.

10           The last thing I want to say, and it wasn't part of

11   your questions, but I think it is an overhang to a lot of the

12   parties in interest have, and that is having afforded the

13   Committee the rights granted in this joint stipulation.  I

14   think the stipulation is crystal clear, I think it is worth

15   repeating for the record.  The Committee is not being afforded

16   any rights by virtue of that status that they don't otherwise

17   have as a Committee, an official creditor's Committee, to

18   participate in or take a role in plan negotiations, plan

19   deliberations, mediations, unless invited by Judge Houser as

20   the mediator.  And nothing should be interpreted in terms of

21   his grant of authority that elevates the Committee's standard

22   beyond where it was.

23           I noticed that my time is expired.  I had just one

24   more minute, if it is OK with the court?

25           THE COURT:  All right.

J4IsPROc

1           MR. WEISFELNER:  Your Honor, there are a lot of

2      different phrases used by Mr. Despins in terms of the

3      Committee's role with the Special Claims Committee or the

4      Oversight Board.  He talked about supervisory role.  He talked

5      about a monitor role.

6           Your Honor, it is a co-plaintiff role.  He is not

7      going to be supervising us.  It is much more the case that he

8      will be monitoring what goes on.  But I wanted to avoid any

9      notion that we have agreed that any other entity is going to

10     supervise the work of the board or its Special Claims

11     Committee.

12          Unless you had any questions, Judge, that is all I

13     had.

14          THE COURT:  Thank you.

15          Next, Mr. Rosen for three minutes.

16          MR. ROSEN:  Good afternoon, your Honor.  Brian Rosen,

17     Proskauer Rose, on behalf of the Oversight Board.

18          Your Honor, Mr. Weisfelner stole a bit of my thunder.

19     I just want to go over a few points.

20          Mr. Despins mentioned the stipulations that have been

21     worked out among the Title III debtors.  There already is one

22     in place between the Commonwealth and the ERS that was entered

23     by the court.  We were in the process of finalizing one with

24     respect to HTA and the Commonwealth that was objected to by the

25     Creditors Committee and by FGIC.

J4IsPROc

1          The FGIC issue has been resolved, we think we resolved

2     Mr. Despins' issue, and we hope to file that tomorrow so the

3     court has that for entry.

4          Your Honor, as the court is well aware by the fact

5     that Mr. Weisfelner is here on behalf of the Special Claims

6     Committee and I'm here for the Oversight Board as a whole,

7     there has been a bifurcation of roles or responsibilities based

8     upon the Kobre & Kim report that came down, the creation of the

9     Special Claims Committee, and the handing off of the Special

10    Claims Committee of claims and causes of action that the

11    Oversight Board/Title III debtors could bring.

12         The Proskauer role, as Mr. Despins noted, is ongoing

13    with respect to lean avoidance actions and other actions that

14    we believe will be necessary for implementation or at least the

15    negotiation of a plan of adjustment.  It is our goal and our

16    role to continue to do that process, to help us get to what

17    could be a confirmable plan of adjustment.

18         Mr. Weisfelner just brought up the issue about

19    mediation plans of adjustment.  I know that there was an

20    objection interposed by the LCDC, and it was very important to

21    the Oversight Board to make sure that this stipulation was

22    abundantly clear that, notwithstanding the fact that there is

23    co-plaintiff's standing or status for the Committee itself,

24    that the Oversight Board, whether it is through the Special

25    Claims Committee or the Oversight Board as a whole, has the

J4IsPROc

1    ability to go forward with any settlement that it believes is

2    appropriate, and certainly in the context of a plan of

3    adjustment.  There are conditions or limitations with respect

4    to what has to be done or has to be provided to the Committee

5    in the context of those plan of adjustment negotiations.

6          Yes, we will provide them with information associated

7    with those settlements and let them know how it dovetails with

8    a plan of adjustment, but under no circumstances can the

9    Committee stand in the way of what we perceive to be the

10   progress towards a plan of adjustment.

11         As Mr. Weisfelner noted, we felt it was important for

12   the mediation team to be able to have a role, and to the extent

13   that they felt it was appropriate, for the Committee to attend

14   a mediation session of a plan of adjustment that could

15   incorporate some of the issues associated with a claim or cause

16   of action that might be pending.  But likewise, the mediator,

17   wanted the ability to say, I don't really need the Committee

18   right now.  That is why that point was included by the

19   mediation team itself, that sentence at the end of that

20   paragraph.

21         So, your Honor, our point is that this does provide us

22   with a lot of the benefits that we see the boogeyman that might

23   be out there, the concerns that might be there with people

24   claiming that the commencement of actions may be wrongful.  It

25   does give us that insurance policy.  But at the same time, it

J4IsPROc

1    provides the Oversight Board with the ability to do what it

2    thinks is appropriate, which is to move forward with plans of

3    adjustment and to hopefully get those confirmed by the court.

4            Thank you, your Honor.

5            THE COURT:  Thank you, Mr. Rosen.

6            Mr. Stancil.

7            MR. STANCIL:  Good afternoon, your Honor.  Mark

8    Stancil for the Ad Hoc Group of GO bondholders.

9            Several of my colleagues will address some other

10   discrete points, so I don't want anything that I say to be

11   taken as comprehensive.  I would like to focus on sort of a

12   high-level point first, and then to move to some more discrete

13   procedural problems with where we are.

14           I would just like to start, I think, by expressing our

15   concern, which I know is shared by many, if not all of the

16   bondholders in this case, and probably by many, many others,

17   which is we think that this process is launching further fee

18   bonanza that will be destructive to the estate and ensures that

19   we are committed to this path of litigation, I couldn't say at

20   any cost, it is at the most cost possible.

21           Despite Mr. Despins' assurances of limited involvement

22   and a delegate-like approach, I think through January, so

23   roughly 18 months of this case, I believe the Committee's fees

24   are approaching $40 million.  We haven't really gotten started.

25           I hear, I understand there would be efforts made to

J4IsPROc

1    reduce duplication.  I don't simply see how that is possible.

2    We are headed down a rabbit hole and have to pay the Oversight

3    Board and the AAFAF to object to disagreements they may have

4    down the road and, of course, to say nothing of the bondholders

5    who then have to pay their own counsel and their own fees to

6    sort this out.

7         We should not be here simply because they have waited

8    until the end of March, early April, to realize they had a

9    statute of limitations problem that they didn't believe they

10   could solve.  And we are going to try to be as constructive as

11   we can, your Honor, but an emergency of one's own making is not

12   a showing under Section 926.  It is not a showing under

13   Commonwealth International.

14        I should also --

15        THE COURT:  Why is the right remedy to provide

16   insulation to potential defendants?  That can't be enough.

17        MR. STANCIL:  Well, your Honor, it's funny, because

18   actually my clients aren't going to be insulated from anything.

19   The Board and Special Claims Committee sued us on our bonds.  I

20   would surprised if we were allowed to have any additional

21   avoidance claims they may bring against us not brought.

22        But it didn't mean that the law just gets swept under

23   the rug because they don't want to have to make a

24   particularized showing under Section 926.  We all did a lot of

25   litigation in the last four days, three days, to get even to

J4IsPROc

1    here.  We could have seen Mr. Despins' list of the claims that

2    he wants to bring.  Now, he doesn't want to give that list in

3    public.  I honestly can't be believe he said this in court, but

4    he didn't want to show it because he doesn't want to give away

5    negotiating leverage on tolling agreements.

6            That is not a showing of meeting for the need of

7    wanting it to be done.  There are a lot of things I wouldn't

8    want to show if I didn't have to, but it is not a showing under

9    the law.  I think simply they should put them to the standard

10   that the law requires and say which ones will the Board not

11   bring.  OK.  Why did you need to bring them instead.

12           Maybe that is an appropriate time to transition to

13   what I think is a fundamental procedural defect with this

14   co-plaintiff idea.  We can't find any support for it in the

15   law.  Section 926, for example, says, well, if the debtor

16   refuses to bring it, you can't settle your way into a new

17   statutory standard.

18           Mr. Despins is portraying this as a settlement of a

19   dispute about whether they are going to appropriately refuse to

20   bring something.  You are refusing to bring it or you are not.

21   You can't say, Well, let's agree to do it together, and make

22   926 into something that it isn't.

23           Moreover, with respect to derivative standing, there

24   is a well-settled showing that they have to make that has to be

25   in the best interest of the bankruptcy estate.  It has to be

1    beneficial to the fair and effective resolution of the case.

2    We would need a showing as to why the Oversight Board is not

3    bringing these cases, why are they not bringing them.

4        The fact that the UCC wants to bring one is not a

5    showing.  They are asking you to accept carte blanche their

6    representation that they are going to be doing good things with

7    the estate because these are additional causes of action, but

8    that is not the standard.  It is not simply is there a cause of

9    action that could be credibly alleged.  You have to meet the

10   showing.

11       I would like to address this so-called appointment

12   clause problem.  I just want to be crystal clear, you cannot

13   solve a constitutional defect by stipulation.  This is no

14   insurance policy.  This is nothing.  The Board lacks

15   constitutional or it doesn't, but it cannot stipulate away the

16   constitutional defect and say, hey, we put these plaintiffs in

17   our stead before our actions were retroactively undermined.  I

18   don't know even how to express it.  That is a nullity.  There

19   is nothing there.

20       THE COURT:  Well, that would be something potentially

21   to be litigated if the structure were in place, and if the

22   structure were in place for sure, there would be no argument to

23   be made for the legitimacy of the actions, if the Board goes to

24   some or all degree.

25       MR. STANCIL:  I'm not 100% sure that's right, your

J4IsPROc

1    Honor.  I think their view -- I don't want to put words in

2    their mouth, at least not right now.  I think their view is

3    under the de facto officer doctrine, everything they are doing

4    today is valid.  I believe Aurelius has made clear their intent

5    to dispute that.

6         THE COURT:  I think that Mr. Despins acknowledged that

7    and said it is -- I think he characterized it as an imperfect

8    insurance policy, but the best available under the

9    circumstances and better than nothing.

10        I will ask Mr. Despins to nod if that is a decent

11   statement.

12        MR. DESPINS:  Yes.

13        THE COURT:  He agrees that I encapsulated his

14   argument.

15        MR. STANCIL:  Your Honor, we think nothing is still

16   nothing.  But I understand Mr. Despins' position that he would

17   like to have his name on a caption so that he could fight about

18   this.  We think that is completely illegitimate as a basis for

19   overwriting the text of 926 and the other applicable standards.

20        I would like to, also, I promised I would try to be

21   constructive.  Again, I think I'm under no illusions here that

22   this has a lot to do with my client's in the near term.  But if

23   the court were to entertain this process -- and I think we are

24   headed down a road of endless litigation, if so -- but if the

25   court goes down this road, you had asked a question about

J4IsPROc

1   preserving bondholders' rights to object to their standing,

2   etc.

3           In the back half of the GO Group's response, we

4   propose some alternative measures that if you do entertain

5   this, we would strongly urge the court to consider.  In

6   particular, the way the stipulation is drafted, it says, well,

7   people could try or -- I think it is only the Oversight Board,

8   if I remember correctly, could come back and try to oust the

9   Committee on a showing of good cause.  That is actually tilting

10  the scales in favor of the Committee.

11          If we are going to do anything like this, your Honor,

12  we respectfully submit you should require them, when they bring

13  an action as plaintiff, co-plaintiff, whatever, because they

14  are not offering you the ability to make particularized

15  findings as soon as they bring that action, they should have to

16  come in and carry the same burden that they would have to carry

17  if they went through the ordinary course in an ordinary motion.

18  It shouldn't be that they get sort of a blanket approval and

19  then the rest of us are forced to try to displace them with

20  some showing of good cause or something like that.

21          The table, if we go down this road at all, it should

22  be truly level and they shouldn't get the benefit of having

23  waited so long to get to this point.

24          One moment, your Honor, please.

25          So the final point I would like to make, your Honor,

J4IsPROc

1   is we just have to object for the record for the complete lack

2   of description of the causes of action.  The first time we

3   heard about even the general categories was 30 minutes ago when

4   Mr. Despins read summaries of them.  That is not notice and an

5   opportunity be heard.  I think everybody in this courtroom

6   would have been better served to get a list of the causes of

7   action, what are the claims, who are they against.

8           I think, at a bare minimum, that is necessary to

9   evaluate whether this meets the statutory standards.  I'm happy

10  to entertain questions if the court has anything further.

11          THE COURT:  Not at this point.  Thank you.

12          MR. STANCIL:  Thank you.

13          THE COURT:  Mr. Natbony.

14          MR. NATBONY:  Mr. Curtin.

15          THE COURT:  I'm sorry.  Mr. Curtin.

16          MR. NATBONY:  Thank you.

17          MR. CURTIN:  Good afternoon, your Honor.

18          THE COURT:  Good afternoon.  I have you down for five

19  minutes.

20          MR. CURTIN:  That's correct.  Tom Curtin on behalf of

21  the Assured Guaranty Corp. and Assured Guaranty Municipal Corp.

22          Your Honor, I am not going to belabor the points that

23  have made very eloquently before me.

24          THE COURT:  You need to go closer to the microphone

25  and project, please.

J4IsPROc

```
 1           MR. CURTIN:  I'm not going to belabor a lot of the

 2   points made in the objections.  We think they were eloquently

 3   made.

 4           Certainly in the GO Group's objection regarding the

 5   procedure and Commodore, we believe that those standards have

 6   not been satisfied.

 7           Your Honor, this is not an urgent motion.  It is not

 8   an emergency that justifies the urgency here today.  We believe

 9   that certainly this is not something that justified creditors

10   having to come here on 24 hours' notice.  I won't belabor that

11   point, your Honor.

12           Your Honor asked, I think, the correct question --

13           THE COURT:  Ms. Ng is going to try to move the

14   microphone and, again, encourage you to try out your opera

15   singer voice today.  Just belt it out.

16           MR. CURTIN:  Sure.  I apologize, your Honor.

17           Your Honor, you asked the correct questions, which is,

18   is there a record before you regarding Section 926.  Have the

19   standards been satisfied, and do you actually need to make

20   determinations as to that.

21           The answer is yes.  The answer is there is no record

22   before you that the standard has been satisfied.  You asked a

23   lot of the right questions to Mr. Despins.  He did not answer

24   your questions.  I want to walk through all of those here

25   today.
```

J4IsPROc

1          So first, as it relates to the record, Mr. Despins

2     claims he does not need to give you causes of action, but those

3     causes of action are directly probative as to whether or not

4     926 applies, because 926 specifically applies only to avoidance

5     causes of action.  There are specific sections that are

6     cross-referenced within that section, and we have reason to

7     believe that certain of those actions, at least based on the

8     motion -- we don't have a lot of information before us

9     unfortunately, your Honor -- but that certain of those actions

10    are not avoidance causes of action.  Things like breach of

11    fiduciary duty, constructive fraud, those are not avoidance

12    causes of action.

13          Second, your Honor --

14          THE COURT:  Now, I'm going to ask for a nod or one

15    word or not from Mr. Weisfelner here.

16          I think Mr. Weisfelner represented that the use of the

17    term co-trustee in respect of non-avoidance causes of action

18    was an invocation of a notion of conferral by delegation from

19    the Oversight Board rather than a use pursuant to consent and

20    the Commodore principles, as opposed to a use of 926 to confer

21    trustee status for non-avoidance actions.

22          I see a nod yes from the front table by

23    Mr. Weisfelner.

24          MR. CURTIN:  Certainly as it relates to Commodore, we

25    don't believe the standard have been satisfied, certainly for

1    the reasons set for in the GO Group's objection.

2              As it relates to appointment of a trustee, your Honor,

3    as you know from the CTO motion that we heard a long time ago,

4    there needs to be a statutory basis for it.  If there is no

5    statutory basis, then there is no legal basis for any of the

6    relief that they are seeking here.

7              They are asking for the appointment of a trustee.  We

8    have to ask what bankruptcy code is that.  This is Section 926.

9    926 is the specific provision in the municipal bankruptcy

10   provisions that specifically deals with derivative standing for

11   avoidance actions, and it is very clearly true here that there

12   is a consensual delegation of actions, so there has been no

13   refusal to pursue causes of action.

14             They are not a creditor.  The Committee is not a

15   creditor.  They haven't filed proofs of claim.  They don't meet

16   the definition of creditor under Section 10110 of the

17   bankruptcy code.

18             And in addition to that, we have reason to believe we

19   don't have an accurate record here, your Honor, that there are

20   actions that perhaps go beyond avoidance actions, as I

21   mentioned.

22             Certainly we have a lot of concerns here.  We do not

23   think the record is complete on the 926 issue.  We do not

24   believe they have met their burden on that issue.  Therefore,

25   we believe the motion should be denied.

J4IsPROc

1          Certainly, I would also note, your Honor, a lot of

2     these issues with be teed up with the UCC's motion that is

3     currently pending.  That motion, of course, will be briefed and

4     adjudicated at a later point.  We think these issues probably

5     will be fleshed out more then.

6          I have one final point, your Honor, I would like to

7     make.

8          THE COURT:  Yes.

9          MR. CURTIN:  Certainly, we recognize a lot of our

10    concerns, we appreciate that they have agreed that actions that

11    are not belonging to the Commonwealth were actions against

12    other debtors not subject to the stipulation.  We very much

13    appreciate that.

14         But we believe that in this case, paragraph 19 either

15    has to be deleted in the stipulation or it needs to make clear

16    that it is not binding on parties of interest for other Title

17    III debtors.

18         Unless your Honor has any other questions, I am happy

19    to sit down.

20         THE COURT:  I would ask you to just stand there as

21    I turn to paragraph 19.  I didn't have time to memorize the

22    stipulation.

23         MR. CURTIN:  Sure.

24         THE COURT:  You're saying that it should be --

25         MR. CURTIN:  Either it should be deleted because this

J4IsPROc

```
 1    is not a stipulation that covers ERS, HTA, and PREPA.  If they

 2    want to tee those issues up later, they are more than welcome

 3    to.  We certainly reserve our rights to object to that.  I'm

 4    sure other creditors will as well.  But this is a stipulation

 5    dealing with the Commonwealth and the Commonwealth's causes of

 6    action, and so it has no business being here.  We believe it

 7    should be deleted.

 8            To the extent your Honor is not inclined to delete

 9    that, certainly we think the new language that they have added

10    in with the avoidance of doubt should also clarify that it is

11    not binding on parties of interest certainly for those other

12    Title III debtors.

13            THE COURT:  I thought since it uses parties without

14    the capital P, I thought that that was intended to cover all

15    parties in interest?

16            MR. CURTIN:  Certainly debtors on the Committee

17    counsel can confirm that on the record.

18            THE COURT:  I see a nod yes from Mr. Despins, who also

19    will be coming back up for rebuttal.

20            MR. CURTIN:  Thank you, your Honor.

21            THE COURT:  Thank you.

22            You're not Ms. Goldstein.

23            There is Ms. Goldstein, who is next.

24            MS. GOLDSTEIN:  Thank you, your Honor.

25            THE COURT:  I have you down for six minutes.
```

J4IsPROc

```
 1          MS. GOLDSTEIN:  Thank you.

 2          Good afternoon.  Marcia Goldstein, Weil, Gotshal &

 3   Manges, on behalf of the National Public Finance Corporation.

 4          I won't belabor the notice point, but we agree that

 5   none of the parties here were given sufficient notice to

 6   properly and completely respond to the motion, the approval of

 7   the stipulation, and we don't believe that it was urgent as

 8   represented.

 9          That being said, we did enough --

10          THE COURT:  I think we need you to come up on volume a

11   little bit too.

12          MS. GOLDSTEIN:  I think the microphone and my mouth

13   were not synchronized, your Honor.

14          That being said, your Honor, we did have enough time

15   to file an objection, not as complete as we would have liked.

16   We submit that the stipulation is flawed in a number of

17   respects, and I apologize if I repeat -- at least in part, not

18   potentially -- but things that have already been said.

19   Hopefully I'll shorten them.

20          First, we do appreciate that the UCC has stated that

21   the stipulation does not cover claims that could be made on

22   behalf of HTA and PREPA and other debtors that are not

23   Commonwealth.  It is helpful, but the proposed revised

24   stipulation still raises the prospects of future stipulations

25   that will indeed cover these entities and we do have issue with
```

J4IsPROc

```
1    that.
2              THE COURT:  Why can't those issues be addressed at
3    that time, if any?
4              MS. GOLDSTEIN:  We just think it is not necessary to
5    be in this stipulation at all, that they are going to -- and to
6    file future stipulations when, in fact, I thought the
7    understanding was we will not have other Committee proposals to
8    file claims on behalf of HTA.
9              I mean, the conflicts there are clear, and Mr. Despins
10   only said -- confirmed to your Honor -- that defendants can
11   raise those conflicts.  But it is the creditors, for example,
12   of HTA.  I think 90 percent of the creditors are in this room.
13             THE COURT:  I asked him whether defendants can raise
14   those conflicts in the context of a particular adversary
15   commenced pursuant to this stipulation, which as explained by
16   Mr. Despins would not include an adversary that crosses debtor
17   interests.
18             MS. GOLDSTEIN:  Your Honor, perhaps maybe I just need
19   to make clear that we would never support any stipulation with
20   respect to at least HTA and PREPA.
21             I think that any implication that we would, I think I
22   just want to eliminate.  And if your Honor thinks it is OK to
23   have to say that they can seek support of other stipulations,
24   that is one thing.  But it shouldn't be condoned here.  At
25   least I know it is not condoned by the creditors of those
```

J4IsPROc

1   entities.

2          THE COURT:  Just so everybody hears this, I read

3   paragraph 19, the first sentence, as a statement of intent of

4   the parties to enter into further stipulations.  And the first

5   sentence and the new second sentence says no one is restricted

6   from contesting that if it happens.

7          So I'm not approving them doing it.  I am on notice

8   that they may come to me with it, and I am also certainly on

9   notice that there would be a lot of pushback.

10         MS. GOLDSTEIN:  There would be a lot of pushback.

11         Moving on, your Honor, I would like to turn to the

12   avoidance actions covered in the stipulation on behalf of the

13   Commonwealth.

14         I just want to point out that National is not a target

15   of the avoidance actions against certain holders, however, we

16   are an insurer of significant GO debt.  In that context, we do

17   have a vital interest in getting to a consensual plan for the

18   Commonwealth and do not support a process which may foster

19   uncontained litigation.

20         The right to pursue avoidance actions on behalf of the

21   Commonwealth rests with the Oversight Board.  The Special

22   Claims Committee is part of that Oversight Board.  There really

23   is no stipulation necessary at all for them to pursue these

24   actions.

25         Further, there has been no showing that any basis for

J4IsPROc

1    a 926 trustee has been met in the context of this stipulation.

2    There is no statutory authority to name individual members of

3    the Oversight Board or Special Claims Committee as trustees

4    under Section 926.

5            If this is designed, as it has been explained and as I

6    determined on my own, to circumvent or have a court appointment

7    keep the board members in place to conduct litigation,

8    irrespective of whether the current Oversight Board stays in

9    place, it is inappropriate.  It is inappropriate to ask this

10   court to make a ruling which may or may not be valid that, in

11   the context of this stipulation, that covers a much broader

12   problem.

13           If this Oversight Board no longer has authority, we

14   need to reconsider much, much more than these potential

15   adversary proceedings and avoidance actions.  I'm not

16   suggesting that any defendants get off the hook, but what I am

17   suggesting is there are probably better ways to preserve those

18   claims than to start appointing trustees, whether it be the

19   members of the Oversight Board who sit on the Special Claims

20   Committee or the UCC in any capacity.  There is just no

21   statutory authority for it, your Honor.

22           THE COURT:  In terms of better ways -- and we're about

23   to go on my clock and that's fine.  We don't have the Harry

24   Potter time-turner.  The best way would be to stop time and

25   make May 2 not May 2.  I certainly don't have the ability to do

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4IsPROc

```
 1    that.

 2              So what are the better ways in the time that we have?

 3              MS. GOLDSTEIN:  For one, we do not know at this point

 4    in time.  It is premature to speculate that there will be an

 5    issue with the Oversight Board.  They may well get appointed,

 6    extended, there may --

 7              THE COURT:  Well, that is an issue that is a May 16

 8    issue, but the May 2 issue comes before the May 16 issue.

 9              MS. GOLDSTEIN:  But on May 2, the oversight board and

10    the Special Claims Committee can commence whatever avoidance

11    actions they think on or about May 2.  If they need to be put

12    on hold, I mean, your Honor has control of this calendar.  If

13    they need to put on hold while parties come together and

14    consider what is happening, then that should be the case.

15              But to predetermine now that particular individuals

16    and particular members of the Creditors' Committee should be

17    serving in that capacity is certainly premature.

18              My client questions whether the Creditors' Committee

19    and its members are even a proper representative of the

20    Commonwealth.  We have very significant claims against the

21    Commonwealth.  We have reviewed the information on file

22    publicly about the members of the Creditors' Committee, and it

23    does not appear that they hold any or certainly not significant

24    claims against the Commonwealth.

25              So is that a proper representative to protect the
```

J4IsPROc

```
 1    rights of billions of dollars of GO debt?  I'm talking

 2    generically about GO debt.  I know some are defendants.  We are

 3    not.  But we have a common interest in the development of a

 4    consensual GO plan, and we do not think that the Creditors'

 5    Committee can be an adequate representative of the debt

 6    holders.  I think that needs to be explored.

 7              Also, I agree with what has been stated by Mr. Curtin

 8    and I think Mr. Stancil as well.  926 has standards which have

 9    to be met.  Derivative standing has standards which have to be

10    met.  We have had no transparency as to even the types.  I know

11    we know some just based on --

12              THE COURT:  I'm going to ask you to wind up.

13              MS. GOLDSTEIN:  Yes, your Honor.

14              Your Honor, I had a few other points to make, but I

15    think you have the sense of our concern.  There is a reason why

16    it is the debtor who not only is the plan proponent in this

17    case, the Oversight Board, but also should control avoidance

18    actions.

19              The separation, and particularly in the case where the

20    Oversight Board no longer has authority and just to have a

21    litigant and no plan proponent, needs to be addressed in a much

22    broader context.  I think there be would be quite a bit to

23    determine, even whether the Title III cases continue in that

24    context, and I just don't think we can make those decisions on

25    this short notice and without much further discussion of what
```

J4IsPROc

1    those consequences could be.

2           Our bottom line, your Honor, is the stipulation is

3    unnecessary, it is inappropriate, it should be denied.  There

4    is no statutory or legal precedent to support it.  If the court

5    not prepared to deny the stipulation today, then the revised

6    stipulation that has been talked about, which not all of us

7    have even had an opportunity to review, should be reset for

8    hearing with ample time of the parties to make more complete

9    responses.

10          THE COURT:  When would that be in relation to the

11   calendar?

12          MS. GOLDSTEIN:  Well, your Honor, if it has to be

13   April 24, then we should have some immediate discovery of the

14   Committee members as to their holdings, their interests, what

15   is their analysis of why particular actions are -- well, this

16   gets to the second part of my request.

17          This stipulation should be reset for the 24th at a

18   minimum when we have more time to consider it.  With respect to

19   the Committee's motion, we think that we need time beyond

20   tomorrow at six p.m. to make a complete response to that.

21   There are a lot of issues raised there.  They are basically

22   asking for almost a carte blanche on avoidance actions, other

23   claims, some of which claims should be brought by GO holders

24   like my client, not the Committee.

25          We think that we need time to take discovery of the

1  Committee members, to find out who they are, what they hold,

2  what analysis have they done in terms of why any particular

3  action is beneficial to the estate.  If the Oversight Board has

4  determined not to pursue it, they may have had a good reason.

5           So we would like to understand why a particular action

6  is being given up by the Oversight Board and now should be

7  controlled by the Creditors' Committee.

8           THE COURT:  Thank you.

9           Just before Mr. Mayor gets up, I will say in

10  connection with one of the points that Ms. Goldstein made,

11  which is -- and others have made -- litigation frenzy is

12  distinguished from negotiation.  It is my understanding and

13  expectation that, in the first instance, if this is approved,

14  the filing of these various actions will be in the nature more

15  of a place holder measure than a shift to a litigation centric

16  strategy, and that there will be genuine good faith efforts to

17  negotiate with the help of the mediation team portfolio issues

18  on that, ultimately key to the formulation of a plan and

19  plan-related negotiations before we are in the magical Ringling

20  Brothers' cage with 19 million spears of litigation going on at

21  the same time.

22           Judge Dein would go on strike if I told her that was

23  the next step anyway.

24           MS. GOLDSTEIN:  Your Honor, may I have 30 seconds?

25           I think my request were -- I'm not asking you to

J4IsPROc

1    answer now, but I want to clarify my requests on the

2    stipulation that it be deferred at least until April 24.

3           We submit, based upon particularly what you said, that

4    the Oversight Board can commence any of these lawsuits without

5    the Committee being a co-plaintiff, but we also are requesting

6    that the response to -- and I know others here, speaking for

7    other as well -- the response to the Committee's motion under

8    926 not be due tomorrow at six.  Enough emergencies.

9           THE COURT:  When would you propose it be due?

10          MS. GOLDSTEIN:  Well, your Honor, I believe that if

11   the Oversight Board is commencing the actions that they think

12   need to be commenced, do we have to have that heard right away?

13          We think discovery needs to be had with respect to

14   that.  If there is going to be a proper hearing on the

15   standards for 926 or the standards for derivative standing, we

16   need discovery as to what analysis has been done, what actions

17   will be creative to the estate, and what will be just a

18   depletion of assets because of the costs and expenses.  I think

19   that is a factual hearing and we need time.

20          THE COURT:  Tell me a timetable you would want me to

21   be thinking about and that you would want Mr. Despins to speak

22   to in his reply.

23          MS. GOLDSTEIN:  Your Honor, we think that April 24 is

24   too soon.  I don't have a specific date in mind.

25          THE COURT:  April 29 is the following Monday.  May 2,

J4IsPROc

1     I think, is the following Wednesday.

2              What are you talking about?

3              We're all going back and forth to Puerto Rico.

4              MS. GOLDSTEIN:  Your Honor, I think the tolling that

5     you could ask to have this place so that we are not pressed

6     into hearings on very, very substantive matters of concern to

7     all creditors of the Commonwealth.

8              THE COURT:  Tolling that I could ask whom to put in

9     place?

10             MS. GOLDSTEIN:  I think your Honor can give a signal

11    that the parties should agree to a very limited tolling so that

12    we can at least have a real hearing on these issues.  I think

13    it would be --

14             THE COURT:  Assuming that there might be assent to

15    that in this room, there are other potential targets to

16    Mr. Despins' motion that are not in this room and that have not

17    been part of this conversation.

18             MS. GOLDSTEIN:  Let me say something else.  I think

19    the Oversight Board should meet with the parties who have

20    objected to this and explain why they don't want to pursue the

21    actions.  We may very well agree.

22             We need an understanding of what is going on.  We have

23    no transparency into anything here that is going on in the

24    Commonwealth.  No one is talking to any of the creditors of the

25    Commonwealth.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4IsPROc

```
 1          I think that we should be able, if it is going to be

 2    before, let's say, April 30, again, I respect that you have to

 3    make a decision based on your calendar.  We need to have time

 4    to take depositions of each Committee member.  That could

 5    happen next week, and we would file our response three days

 6    before the hearing.

 7          MR. WEISFELNER:  Your Honor, I know you indicated we

 8    could stand.

 9          THE COURT:  You have to stand and you have to go to

10    the microphone.

11          MS. GOLDSTEIN:  I'll get out of your way,

12    Mr. Weisfelner.

13          MR. WEISFELNER:  Thank you.

14          THE COURT:  Thank you, Mr. Weisfelner.

15          MR. WEISFELNER:  Your Honor, I rise out of turn

16    because as I sat and listened to the commentary by Mr. Stancil

17    and Mr. Curtin and Ms. Goldstein, it is clear to me that there

18    is a confusion whether borne out of an inability of these

19    professionals to understand the stipulation or confusion that

20    is being suggested to your Honor from a tactical perspective.

21          Let me try to clarify as best I can.  There are no

22    claims or causes of action that the Oversight Board or the

23    Special Claims Committee has invited the Creditors' Committee

24    to bring on their own that we haven't passed on.  There are

25    none.  There are no such claims that the Creditors' Committee
```

J4IsPROc

 1   is going to bring on its own account.

 2              There is a variety of claims --

 3              THE COURT:  You mean under this stipulation?

 4              MR. WEISFELNER:  Under this stipulation.  Zero.  None.

 5              So the notion that there needs to be a finding under

 6   926 or a finding that would allow for them to get derivative

 7   standing in a context where you don't know what the claim or

 8   cause of action is, is a bit disingenuous.  There is no claim

 9   or cause of action that they are going to be a co-plaintiff or

10   a co-trustee on that is not going to have the Board's signature

11   to it.

12              We will endorse every single claim in our capacity as

13   co-plaintiff or co-trustee.  The debate, and there will be a

14   debate between us and the Committee which is scheduled for the

15   24th, and we're working on getting our objection papers in, and

16   they are going to be strong objection papers by six o'clock

17   tonight, having refused to bring the claim as best as we can

18   understand it that the Committee wants to bring.  We don't

19   think they out to bring it.

20              I'm happy to meet with anybody that wants to meet with

21   me, not including over Passover, over Easter week, and explain

22   the nature of the claims so they can't discern it that the

23   Committee wants to bring and the Board refuses to bring,

24   justifiably refuses to bring.

25              We will oppose their standing.  We will oppose their

J4IsPROc

1    standing under 926.  We will oppose their standing to bring

2    non-avoidance actions, and we will advise the court as to why

3    we think that litigation should not proceed.

4         Talk about a fee bonanza, Ms. Goldstein wants to take

5    all sorts of depositions on an issue that she could otherwise

6    ask for a stipulation on.  Stipulate that the Committee is not

7    in its own right a creditor.  You don't even need that stip.

8    Stipulate as to the amount of debt each Committee member holds.

9    Depositions are unnecessary.

10        Your Honor, my point is this.  In a scenario where

11   there are no claims that this stipulation asks authority to

12   allow the Committee to be a co-trustee or co-plaintiff on that

13   we are not going to endorse.  I suggest to you that the showing

14   necessary to satisfy the statute is, on its surface, satisfied.

15        We will pursue those claims.  We are allowing them to

16   be co-plaintiff, co-trustee for two reasons.

17        One is the guarantee.

18        THE COURT:  Wind up.

19        MR. WEISFELNER:  And the other is, frankly, rather

20   than have a 926 motion filed by the Committee that was beyond

21   the scope that anybody could deal with, right now we have it

22   down to one issue.  They want to sue one group of people.  We

23   would have otherwise had a circus environment.  That is why we

24   resolved it.

25        MS. GOLDSTEIN:  Your Honor, may I have 30 seconds to

J4IsPROc

1    respond?

2              I think Mr. Weisfelner mischaracterized at least --

3              THE COURT:  She will get 30 seconds, and then you'll

4    have to find a way to have offline conversations about this.

5              We are getting on with Mr. Mayer after the 30 seconds.

6              MS. GOLDSTEIN:  Your Honor, I do understand the

7    stipulation.  My point on the stipulation is that there is no

8    legal authority.  I'm not asking for depositions about the

9    stipulation.

10             If Mr. Despins is willing to give me a stipulation as

11   to today's information, we'll send him a list of questions

12   about his Committee members, how much they hold, how much

13   they've been paid on a current basis during the case, because

14   their holdings have gone down, the nature of the holdings.  We

15   probably could live with that.

16             We don't need to take depositions.  My client is not

17   happy to pay fees if we don't have to.  If there had been any

18   level of transparency here, Ed Weisfelner could have answered

19   a lot of our questions.

20             THE COURT:  Thank you.

21             MS. GOLDSTEIN:  I will move on.

22             THE COURT:  Good afternoon, Mr. Mayer.  I have you

23   down for five minutes.

24             MR. MAYER:  Thank you, your Honor.

25             For the record, Tom Mayer, Kramer Levin, appearing

J4IsPROc

1   today solely on behalf of Oppenheimer, which holds $500 million

2   of GO bonds, only 75 million of which have so far been

3   targeted.

4          Right now, I may be a beneficiary of these lawsuits

5   more than any victim of them.  But having said that, I am going

6   to focus on, first, the particulars to the stipulation, second,

7   on a procedures and the areas that people have not dealt with.

8          With respect to Mr. Weisfelner, I realize I am not as

9   smart as he is.  I may very well have misread paragraph 13 of

10  the stipulation.  If you look at paragraph 13, you will see

11  that it says exactly the opposite of what Mr. Weisfelner just

12  represented.

13         What paragraph 13 says is that if Mr. Weisfelner's

14  Special Claims Committee had decided not to bring a lawsuit,

15  then the committee is designated the sole trustee or sole

16  plaintiff, subject only to the right of Mr. Weisfelner's

17  committee, to seek determination of good cause that such

18  lawsuit should be dismissed, which is the reverse of the normal

19  burden of proof.

20         So Mr. Weisfelner's representation that no lawsuit

21  will be brought unless it has been sanctified by the claims

22  committee is simply not borne out by paragraph 13, as I read

23  it.  I may not be as smart as Mr. Weisfelner.  Maybe I misread

24  it.

25         Paragraph six.  Nobody has mentioned paragraph six.

J4IsPROc

1   Mr. Despins, Mr. Weisfelner, nothing going on here.  The

2   Committee is being given no rights it doesn't otherwise have.

3   Take a look at paragraph six.  Paragraph six is actually really

4   bad.  Paragraph six says the Committee shall be a party to any

5   tolling agreement and any extension thereafter entered into by

6   the Oversight Board, etc.

7        So what that means is that if my client or anybody

8   else is negotiating a tolling agreement with the Oversight

9   Board, we have to get the consent of the Committee too.  That

10  is, as I see, not a terminable delegation of consent rights to

11  the Committee.  I don't believe there is anything in PROMESA

12  that allows the Oversight Board to bond its hands in such a

13  fashion.

14       Finally, paragraph 12 says the Committee has the right

15  to participate fully in any settlement discussions.  Now, I'm

16  not sure how that is going to be interpreted, but as I read it,

17  it means that I can't have a conversation about settlement with

18  the Oversight Board unless the Committee is also on the phone

19  line.  We refer to those as KGB provisions.  You can't talk to

20  somebody without a KGB minor.

21       So those are three substantive issues.  Again, I have

22  very little time with the stipulation.  Maybe I'm not smart

23  enough to understand it fully.

24       Now I want to talk about process, because Mr. Despins

25  said in his argument and in his papers that this is merely the

J4IsPROc

1  settlement of a motion for Commodore type standing.  Well, I

2  have gone back and looked at the one motion that was filed for

3  relief prior to this stipulation, and that motion doesn't ask

4  for Commodore standing at all.  It actually doesn't ask for 926

5  appointment either.  It is a scheduling motion.

6         Right now, as a matter of pure process, there is

7  nothing before this court, there is no motion asking you for

8  relief that is being settled by this stipulation.  So as a

9  procedural matter, this is darn strange.  Given the fact that

10  we are going to be arguing next week over 926 appointment, I'm

11  not even sure what a 926 is even being settled right now.

12        Finally, you asked about an insurance policy and could

13  things be better.  Yes, things could be better.  One of the

14  oddities of this process is that the party that is requesting

15  the appointment of the trustee is also asking to be named the

16  trustee.  That, to say the least, is unusual.  I have never

17  seen that happen before.

18        In a chapter 11 case, it couldn't happen.  In a

19  Chapter 11 case, the Committee wouldn't be qualified to serve

20  as a trustee.  So if the question is what kind of insurance

21  policy you could have under 926, the answer is the court could

22  appoint a real trustee, an individual who could serve as a

23  placeholder and who could sign his or her name to a complaint

24  that the Committee has prepared or the Oversight Board has

25  prepared, and that way -- this is where my interest as a

1   potential beneficiary to the lawsuit comes in -- that way, God

2   forbid the appointments clause problem is not remedied and we

3   are dependent on the insurance policy, it won't fail.

4        The problem with the relief that is set forth in the

5   stipulation, it is a recipe for future litigation in any

6   adversary that is brought because any defendant is going to say

7   that this stipulation itself was not justified under process or

8   under substantive law.  It will be another reason to seek

9   dismissal of the complaint.  Who knows, maybe it gets up to the

10  First Circuit and maybe it doesn't.  Someone who might even

11  want to see these litigations succeed because I might benefit

12  from them, I think the stipulation creates more problems than

13  it solves.

14       A 926 trustee, there are a number of smart lawyers way

15  up to speed on Puerto Rico who could be appointed and who could

16  sign their names to a complaint.  That is highly unusual for

17  the person who wants to be a trustee to actually serve as the

18  trustee.

19       If you have further questions, I'm happy to answer

20  them.

21       THE COURT:  Thank you.  Not at this time.

22       I realize I skipped over Ms. Miller.

23       MR. MAINLAND:  If I could have two minutes, your

24  Honor.  That's all I need.

25       THE COURT:  You are supposed to have four.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4IsPROc

```
1              MR. MAINLAND:  OK.

2              THE COURT:  Thank you for reassuring me that I didn't

3    not see Ms. Miller.

4              MR. MAINLAND:  She is not here, but Grant Mainland of

5    Milbank on behalf of the AMBAC Insurance Corporation.

6              That was my understanding as well, that I had four

7    minutes.  I really do think, given everything said, I'll just

8    keep it to two.

9              Really what I wanted to emphasize is to reinforce and

10   echo the point regarding HTA that Ms. Goldstein made that we

11   appreciate -- we were very troubled to see a stipulation that

12   seemed to be applicable to HTA as well as the Commonwealth.  We

13   appreciate that the stipulating parties heard our objection on

14   that and made an effort overnight to take HTA out of it.  But

15   respectfully, we think that is just kicking the can down the

16   road on that issue.

17             I want to say early, and I expect we'll have to say

18   often, that we object strenuously to the notion that the

19   Committee would ever be a trustee pursuing claims on behalf of

20   HTA.  We have a long history of that.  AMBAC does in terms of

21   its adversary proceeding.

22             THE COURT:  The proposal before me today is not one to

23   appoint the Committee to represent HTA.  I hear you loud and

24   clear of the warfare that will ensue if there is such a

25   proposal.
```

J4IsPROc

1          MR. MAINLAND:  Thank you, your Honor.

2          That is a perfect segway to one other point on that

3     issue, which is just the pacing and the emergency nature of

4     this entire process on this particular stipulation.

5          To the extent one accepts the excuse that this was a

6     genuine emergency, that it needed to be done by stipulation and

7     presented to us on 24 hours' notice, that clearly doesn't apply

8     to HTA.

9          HTA statute of limitations is --

10         THE COURT:  But we're not talking about HTA.

11         MR. MAINLAND:  My only concern is that --

12         THE COURT:  I will not expect if the HTA date is like

13    the 21st or something like that -- I can't remember what the

14    HTA date is -- better not come sidling up to me on the 16th or

15    the 17th or the 18th or even the 11th.

16         Mr. Despins, you are put on notice.

17         MR. MAINLAND:  I appreciate that admonition.  That is

18    solely what I was looking for.

19         The final point is Mr. Despins noted in his

20    presentation that this stipulation doesn't apply to claims

21    against other debtor entities.  I think he also added in his

22    presentation that it wouldn't apply to claims against

23    non-debtor governmental entities.  That language isn't in the

24    stipulation.  We think that is an important qualification that

25    should be in there.

J4IsPROc

1    I'm happy to work with them in crafting some language

2    offline.  I just wanted to note that particular issue.

3         THE COURT:  Thank you.

4         MR. MAINLAND:  Thank you, your Honor.

5         THE COURT:  All right.  Yes, Mr. Wedoff has raised his

6    hand.

7         Please go to the podium.  I assume you'll be brief.

8         MR. WEDOFF:  I will be very brief, your Honor.

9         THE COURT:  Thank you.

10        MR. WEDOFF:  For the record, Carl Wedoff, Jenner &

11   Block, on behalf of the Official Committee of Retired Employees

12   of Puerto Rico.

13        Unlike the objecting parties, I think we are in a very

14   different situation.  We are not current defendants, and I do

15   not expect we are potential defendants.

16        The people who just spoke, their ox may be gored

17   depending on the outcome of the potential litigation.  In the

18   grand scheme of things, we are on the same side as the

19   Oversight Board and on the same side as the Unsecured

20   Creditors' Committee.

21        If litigation can be brought that will benefit the

22   debtors, it should be brought.  However, neither the Oversight

23   Board nor the Unsecured Creditors' Committee has included us in

24   any of their conversations about the stipulation.  We have

25   serious concerns about who should be bringing what actions and

J4IsPROc

1   whether they should be brought at all.

2         As representatives of the largest constituency in

3   these Title III cases representing 167,000 people who live on

4   the island who are owed over $58 billion, we have a tremendous

5   interest in making sure litigation is handled in a constructive

6   and efficient way.

7         So all we ask is that, going forward, that we are

8   consulted on conversations about litigation that we may be part

9   of.

10        Thank you, your Honor.

11        THE COURT:   Thank you.

12        I'll call again on Mr. Despins, who can start making

13  his way to the podium.

14        Is there anyone else who wants to be heard?

15        All right.  Mr. Despins, I have you down for five

16  minutes of rebuttal, which will have to be very comprehensive.

17        MR. DESPINS:   Thank you for that, your Honor.

18        OK.  Let me try.  There are a lot of floating

19  arguments, but the first one, Mr. Stancil.  I mean, it is very

20  clear Aurelius wants to tie the Oversight Board in knots.  As I

21  say, we don't need to do this.  He will be fine.  He is not

22  saying I'm waiving the argument.  He will argue that they have

23  no power to do what they're doing now.  So he is not offering

24  any solutions, therefore, the court should really be reluctant

25  to listen to a defendant who is trying to describe how the

J4IsPROc

1    process should unfold.

2         What he is proposing as an attachment to his objection

3    is a recipe for multiplying litigation.  As I said, the rights

4    of the defendants are protected, so they will be able to raise

5    those issues and the rights of the Board also.  As I said,

6    there is no incentive for the Board to let us bring claims that

7    they don't like.  We heard Mr. Weisfelner about that.

8         Now, in terms of Mr. Mayer's point, paragraph 13 says

9    we can bring a claim against the potential defendants.  That is

10   a defined term.  It is a defined term of people who are on

11   these lists.  So, therefore, I cannot bring a claim against

12   someone who is not on that list.

13         THE COURT:  Now, of course, nobody has the lists --

14         MR. DESPINS:  I understand that.

15         THE COURT:  -- as we have discussed.

16         So is it your representation on behalf of yourself and

17   Mr. Weisfelner that anyone who is on the list is a defendant as

18   to whom the Oversight Board has approved litigation, has made

19   an affirmative determination that the litigation you would be

20   bringing is appropriate?

21         MR. DESPINS:  That is what the stipulation says.

22   There is a paragraph that says we have agreed on the people to

23   bring claims over, and these lists reflect that.  They reflect

24   that we are going to sue XYZ on the following theories.  There

25   is an agreement to do that.  It is the Board's agreement to

J4IsPROc

1    prosecute those claims.

2           So the way it works is they are going to show me

3    their complaint and they are suing XYZ, show me the complaint,

4    hopefully, before four business days before the deadline, four

5    business days at least before the deadline, and we'll see what

6    claims they are bringing.

7           Depending on that, we may add claims, but subject

8    always to the safety valve, that the court can remove that and

9    the Board can complain about it.  The defendants can also move

10   to get us out of the litigation.  So that is all preserved.

11          Now, the second point is paragraph six, the tolling

12   agreement.  He said, well, that is crazy because the Creditors'

13   Committee has a veto over that.  The terms of the tolling

14   agreement have been agreed to with Brown Rudnick.  They have

15   already agreed to that.  They are already circulated as to the

16   potential defendants.  We have already agreed to it.  We can't

17   say, oh, we are stepping out of that.  It's been agreed to

18   between the Committee and the Oversight Board, so there is no

19   chance of a holdup here, your Honor.

20          THE COURT:  Well, I think Mr. Mayer just popped up,

21   and I am going to take the risk of asking him a binary

22   question.

23          If I were to invite you to the podium, would you say

24   that this would deprive you and your clients and other

25   potential targets of tolling agreements to bargain for a

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4IsPROc

1    tolling agreement that would not allow the UCC to come after

2    you as a plaintiff?

3         MR. MAYER:  Tolling agreements tend to have

4    termination dates.  Those termination dates would be extended

5    by amendment, and the UCC has a veto according to such

6    amendment, and that is what paragraph six says.

7         THE COURT:  Thank you.

8         MR. DESPINS:  Your Honor, the tolling agreement

9    provision that allows us to terminate the tolling agreement or

10   to seek relief from a tolling period, this is a safety valve we

11   negotiated.  It provides that.  If we think they are sitting on

12   a defendant, they are not doing anything with that defendant.

13   We have to come to your Honor to say, enough of this, it needs

14   to be terminated.  So we don't have a veto over that provision.

15   That is in paragraph --

16        THE COURT:  You're saying you can trigger the question

17   up before the court as a contested matter, but you don't have a

18   solitary veto right?

19        MR. DESPINS:  Correct, under the stipulation.  I

20   forget which paragraph.

21        THE COURT:  Mr. Mayer popped up again.

22        To the podium, please.

23        MR. MAYER:  I'm sorry.

24        If the tolling agreement says that it extends for a

25   year, and I'm still talking with the Oversight Board, the

J4IsPROc

1    Oversight Board cannot say, I'll give you another couple

2    months, because that is an amendment to the tolling agreement.

3          MR. WEISFELNER: That's not what paragraph 11 of the

4    stipulation says.

5          THE COURT: Mr. Weisfelner has just stood up. I

6    think, thankfully, what I am going to be inclined to do, after

7    hearing everybody, given how many ideas and concepts have been

8    floated, is to direct all who are interested to immediately

9    meet and confer over proposed modifications to the stipulation,

10   and Mr. Despins can tell me what he thinks is the outside

11   timetable for a stipulation to be in place or whether we can

12   wait and hear anything more next Wednesday in San Juan.

13         But there is a whole lot of things flying around in

14   the air, some of which I think might fruitfully be processed

15   among the fight.

16         MR. DESPINS: We are happy, your Honor, to meet and

17   confer with people and to address these points, but the timing

18   is problematic, because I'll address that in a minute when I

19   deal with Ms. Goldstein's points.

20         Paragraph 11 addresses that point, which is that if

21   the Committee wants to stop the oversight, wants to terminate

22   the tolling agreement, or wants to preclude the Oversight Board

23   from extending it, I need to come to court and your Honor may

24   say, Sit down, no, or hey, it's been X months. You know, it

25   will be totally to your Honor's discretion. Good cause is the

J4IsPROc

1    standard.

2         The other point that I wanted to mention is paragraph

3    12.  Mr. Rosen negotiated this.  Basically it says that if the

4    discussions involve the terms of a plan, the Oversight Board

5    can exclude us subject to, again, us coming to court to say,

6    Your Honor, we are being excluded.  You should direct them to

7    include us.  So there is no KGB provision is not what Mr. Mayer

8    said it is.

9         Then the next point about it is unusual to have a

10   party moving for a trustee being appointed.  Chapter 11, that's

11   impossible.  You have the trustee would appoint.  Here, there

12   is no such thing.  926 says the court has complete discretion.

13   No one else can step in and be a watchdog, because that is the

14   purpose of this, of the debtor, and get up to speed on all

15   these issues right now.  It is practically impossible.

16        Now, I want to get to Ms. Goldstein's points, this

17   idea that somehow we need to take depositions of the Committee

18   members to see how much they hold.  The Committee is a

19   fiduciary regardless of whether you are owed one dollar, which

20   is not the case, or $10 billion.  On the Committee, there are

21   seven members that are owed millions of dollars, and the two

22   unions who represent members that are active employees of the

23   Commonwealth and other entities that are owed billions of

24   dollars and retiree benefits.

25        So they are retired.  The Committee represents retired

J4IsPROc

1   employees, people that are retired, and the Committee includes

2   unions that represent members that have current retirement

3   benefits that are subject to PROMESA, and those are in the

4   billions of dollars.  So we have to stop this argument that we

5   don't like the committee.  Of course they don't like the

6   Committee, but these people, they are taking the position they

7   are secured.  They can't control what the Unsecured Creditors'

8   Committee does.

9           In terms of this argument that somehow the Committee,

10  that members need to be deposed to see what their views of

11  litigation is.  I mean, really?  Couldn't we depose their

12  client to see what their view of the litigation is?  That is

13  not the standard.  The standard is your Honor will determine

14  whether there are good colorable claims that we are alleging,

15  and you'll make that call.

16          What our Committee members', you know, technical view

17  of deepening and solvency may be, now, really, that is not

18  germane to the issue and, frankly, that is not a good use of

19  the process.

20          The other point I didn't address before, but it is

21  this argument that is floating in -- I think it was an assured

22  that the Committee is controlled by the unions.  Your Honor

23  knows this.  On the Committee, it is one person, one vote.  You

24  can be owed one dollar, you are owed the same way somebody is

25  owed $10 million.  The two unions have two votes out of seven.

J4IsPROc

1   This argument that somehow the unions controlled the Committee

2   is is really what we call fake news these days.

3          The last point I want to address, your Honor, is I

4   want to be careful about this, the stipulation was approved and

5   was reapproved in the modified form by Mr. Rosen and

6   Mr. Weisfelner before this hearing.  The stipulation speaks for

7   itself as to the terms under which we're being given derivative

8   standing and 926 standing.

9          I understand that Mr. Weisfelner would like to pivot

10  from that for the purposes of the motion, but I would urge your

11  Honor to not adopt that.  The stipulation speaks for itself.

12  We believe the standards have been met.  It is not based only

13  on consent of the debtor.  I understand that is why the

14  Oversight Board wants to argue.  I respect that, but that is

15  for Wednesday.

16         Now, the issue whether Wednesday should go forward or

17  not.  Your Honor, the deadline is is May 2.  First of all,

18  Wednesday, even if you gave us standing on Wednesday for us to

19  actually crank up a complaint before May 2 would be a huge

20  challenge.  So to push that deadline to, what, April 30 would

21  be ridiculous.  I mean, it just couldn't happen.  It has to

22  happen on the 24th.  There is no other way around that.

23         We regret where we are in the case, but the

24  Committee's view is that we didn't put the case in the position

25  it is in vis-a-vis the May 2 issue.  That is for Wednesday.

J4IsPROc

1    I'm not going to argue that now.

2           As to the retirees, how shall I say this.  Yes, we

3    tried to include them as much as possible, and we have done

4    a lot of work with them, but it is not -- you know, things are

5    going fast, and it is not always possible.  But I endeavored, I

6    commit to use my best efforts to continue to include them, as

7    we have included them in other matters.  But I understand their

8    frustration about not being included in this process.

9           But the Committee has been for these claims, not the

10   Retiree Committee.  And yes, we want to involve them.  We have

11   no choice but to move as quickly as possible for these claims

12   to be prosecuted.

13          The arguments regarding the Committee not being a

14   creditor, your Honor, they are just technical arguments,

15   because we said in our motion that was filed that we would add

16   Committee members.  We could do that if the court requires

17   that.  That is an easy fix and the court should not be

18   contained by that.

19          Thank you very much, your Honor.

20          THE COURT:  All right.  I am about to give us a

21   five-minute break, but before I do that, I'll say a couple

22   things.

23          One is that as to the motion that is cued up for next

24   Wednesday, given the reality of days on the calendar and the

25   May 2 deadline, that has to be heard, briefed, before next

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4IsPROc

1    Wednesday and heard next Wednesday.

2                To the extent issues can be streamlined for the

3    benefit of all of us through agreement on the particular

4    factual stipulation issues as to the holding or some other more

5    efficient way of streamlining the issues, I'm all in favor of

6    that.

7                To the extent there is willingness to tweak or move

8    somewhat deadlines in a way that will still get me reply papers

9    by -- I think it is Monday night, and as you know, I have a

10   very big menu for Wednesday, I really need those reply papers

11   by Monday night.  I would invite you all to talk about that.

12               As to this stipulation, it does seem to me that there

13   are some issues that can productively take some attention and

14   tweaking in connection with meet and confer.  I am not

15   optimistic enough to think that all of the opposition would go

16   away with the meet and confer, but I think we might be able to

17   avoid some future rounds of litigation arising out of it.  So I

18   am going to require that you all do that.

19               When we come back from the break, I am going to ask

20   the proponents of the stipulation to tell me whether requiring

21   that the next best iteration be filed by, say, close of

22   business Monday, and then argued over, if necessary, on

23   Wednesday is consistent with their anticipated logistics.  If

24   that isn't, you tell me what you propose on that.

25               See you all in five minutes.

J4IsPROc

1          MR. STANCIL:  Your Honor, may I ask a quick scheduling

2     question?

3          THE COURT:  Yes.  Mr. Stancil still has a scheduling

4     question.

5          MR. STANCIL:  We have due tomorrow a reply brief on

6     the conditional claim objection procedures motion.

7          THE COURT:  Yes.

8          MR. STANCIL:  Could we indulge the court to give us

9     until Monday morning on that, given we've lost a couple days on

10    this, sounds like I'm going to lose another day.  I would like

11    to be able to help work out some stuff.  We just can't do two

12    things at once.  Could you live with that?

13         THE COURT:  I lost that time too and I'm, frankly, in

14    the air most of the day Monday, and then Monday night and

15    Tuesday I have to do my catching up.

16         The Easter bunny will not be happy with me, but

17    neither will my law clerks, but hold on.

18         (Pause)

19         Saturday, six o'clock.

20         MR. STANCIL:  Thank you.  I'm sorry.

21         THE COURT:  Thank you.  See you all in five minutes.

22         (Recess)

23         THE COURT:  Mr. Despins, you need to go to the podium.

24         Everybody else, please be seated.

25         MR. DESPINS:  Good afternoon, your Honor.  I think

J4IsPROc

```
 1   we've made some progress.  I don't want to mislead your Honor.
 2   There is still major issues that probably will not be resolved,
 3   but some progress in fixing some of the issues that were
 4   raised.
 5           THE COURT:  Good.
 6           MR. DESPINS:  We're not done.
 7           In terms of the sequencing of whether we can live with
 8   your Honor's proposal, if I understand correctly, of submitting
 9   to your Honor by Monday -- I forgot now whether it is morning.
10           THE COURT:  I think I said close of business.
11           MR. DESPINS:  Close of business, the movants' final
12   proposed order, I think we can live with that.
13           THE COURT:  Good.
14           MR. DESPINS:  We'll have discussions and we'll try to
15   eliminate every issue we can eliminate.  I don't want to
16   mislead you.  There will still be some objections.
17           THE COURT:  I will hear orally any further objections
18   to the final revision at the Omni, and if everything remains as
19   contentious as everything on the Omni schedule remains
20   contentious, as it appears likely to be at this point, nobody
21   plan to be on an 11 o'clock plane Thursday morning.
22           We will need to take at two o'clock whatever issues
23   with Judge Dein are still outstanding to be processed at the
24   Omni, so we may need be break on the Swain Omni matters, take
25   the Dein Omni matters at two, and then pick up with the Swain
```

J4IsPROc

1    matters later in the afternoon and/or Thursday morning, as

2    necessary.

3        I would encourage you all to be as non-contentious as

4    possible.  To the extent you're contentious, we'll have a

5    lovely extended time together.

6        MR. DESPINS:  Now, in terms of the extension of the

7    deadline to respond, right now their objection is due Friday at

8    six.  I don't know if Mr. Weisfelner said you would file your

9    objection tonight or tomorrow night.

10        MR. WEISFELNER:  What I said --

11        THE COURT:  I'll repeat what Mr. Weisfelner said.

12        MR. WEISFELNER:  What I said and what I meant were two

13   different things, unfortunately.

14        THE COURT:  You meant to say you'll file it Friday.

15        MR. WEISFELNER:  We will file it Friday.  I am going

16   to sign off on it tonight because I am leaving on Friday.

17        THE COURT:  Mr. Weisfelner, just for the benefit of

18   everybody else, said that his part of the opposition will be

19   done tonight, but it will actually be filed tomorrow.

20        MR. DESPINS:  We need to have our reply to you by

21   Monday at six p.m.

22        THE COURT:  Yes.

23        MR. DESPINS:  Look, we can give them until Sunday at

24   noon or something like that.  Otherwise, we're going to be

25   completely -- we have to prepare for the hearing as well.  The

J4IsPROc

1    issues are these.  We have described the claims, whether they

2    are colorable or not, in the current context in which they are

3    asserted.  They can talk to Mr. Weisfelner now about why those

4    claims should not be pursued.  That is really the best we can

5    do, your Honor.

6              THE COURT:  Mr. Freidman.

7              MR. FRIEDMAN:  Yes, your Honor.  Peter Freidman from

8    AAFAF.

9              THE COURT:  I am going to have to repeat what you say

10   unless you go to the podium.

11             MR. FRIEDMAN:  Your Honor, Peter Freidman from

12   O'Melveny & Myers on behalf of AAFAF.

13             We are also prepared to file our objection by six

14   o'clock tomorrow night, so that may make it easier for some

15   people to have to join any portions of the arguments we make,

16   because I think there are probably some commonalities on legal

17   issues.  We don't need an extension.  I've been writing it for

18   months.

19             Thank you, your Honor.

20             THE COURT:  Thank you.

21             MR. WEISFELNER:  I was going to make a suggestion that

22   may --

23             THE COURT:  Mr. Weisfelner.

24             MR. WEISFELNER:  I would be disingenuous if I said it

25   was for the benefit of the parties here.  It is really for the

J4IsPROc

1   court's benefit.

2          Attached to our side letter which is referenced in the

3   joint stipulation, as people have all recognized, there are

4   schedules of claims and causes of action that we have advised

5   the Committee we intend to bring and/or seek tolling

6   agreements.

7          I am prepared to release, on a confidential basis and

8   filed with the court for in camera review, the claims and

9   causes of action that the Special Claims Committee is prepared

10  to bring against the same defendants that the committee tells

11  us it wants to bring suit against, so as to better assist your

12  Honor in determining whether or not what the Official

13  Creditors' Committee wants to do goes beyond or appropriately

14  goes beyond what it is that the Board and the Special Claims

15  Committee is prepared to do.

16         Likewise, inform the other parties, we can get that

17  schedule filed under seal tomorrow and for eyes' only to any

18  bond counsel that wants to see it.

19         THE COURT:  This raises an interesting logistical

20  issue from my perspective.  Honestly, the District of Puerto

21  Rico is closed for Holy Thursday, Good Friday, and through the

22  weekend.  So I don't have the normal ability to call on people

23  to do rapid fire complicated things on ECF through the weekend.

24         So if there is willingness to do this and the people

25  who filed notices of appearance or filed papers in connection

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

J4IsPROc

1    with this are a more limited group whose e-mail addresses are

2    on the various filings, I will authorize and invite in advance

3    of Monday e-mail distribution, subject to the requested

4    confidentiality commitment, to counsel who file the informative

5    motions or opposition papers as to this proceeding today, and

6    to the court's e-mail address.  Then on Monday, you can make

7    your sealed filing application and we can go through the ECF

8    logistics on that.

9          So is there anyone here in this room whose e-mail

10   address would be on that list who is not prepared to undertake

11   to keep confidential the content of the schedules that

12   Mr. Weisfelner has offered to distribute?

13         MR. WEISFELNER:  Just so it is clear, it is a

14   schedule.

15         THE COURT:  I'm sorry, schedule.

16         MR. WEISFELNER:  There are three buckets of claims and

17   causes of action, two of which nobody in this room cares about.

18   One is what Mr. Despins has previously referred to as garden

19   variety preferences and fraudulent conveyances against people

20   who got payments within either the 90 day or two-year period

21   before the statute.  They are literally hundreds of names on

22   that schedule.

23         THE COURT:  Those are what people would consider

24   garden variety avoidance actions?

25         MR. WEISFELNER:  Right.

J4IsPROc

1          Category number two is a hornet's nest and subject to

2     our equitable tolling motion.  Those are the beneficiaries of

3     principal and interest payments on every challenged bond, and

4     we're asking for equitable toll because we are having an

5     awfully hard time getting the names of the underlying

6     beneficial holders.  Although we did get an order from Judge

7     Dein that makes life a little bit easier.

8          THE COURT:  That wouldn't be that schedule either.

9          MR. WEISFELNER:  Not that schedule either.

10         The schedule is in connection with the various bond

11    offerings, the GO bonds, the PBA bonds, the ERS bonds.  There

12    is a schedule of underwriters and underwriter professionals and

13    other professionals that were involved in those bond offerings

14    as against whom the Commonwealth, through the Special Claims

15    Committee, is in the process of seeking tolling agreements,

16    failing which, so as to avoid the passage of the statute of

17    limitations, will bring actions.  The schedule is likewise

18    referred to the nature of the cause of action we intend to

19    bring.

20         THE COURT:  So that is the schedule you need.

21         MR. WEISFELNER:  That is the schedule I'm prepared to

22    share with anybody that in court fails to advise you that they

23    won't keep it attorneys' eyes only.

24         THE COURT:  When I asked that question, no hands went

25    up, and so I am interpreting that as being everyone's

J4IsPROc

1    commitment to keeping that confidential.

2              I am seeing affirmative nods here.  You have that

3    commitment.

4              For anyone taking Mr. Despins up on his extension

5    offer, for anyone who needs it, the absolute deadline for

6    filing opposition to the limited motion is Sunday noon.

7              MR. DESPINS:  Saturday noon.

8              THE COURT:  I thought you had said Sunday.  I thought

9    that was awfully generous.  Saturday noon.  Sorry.  Didn't mean

10   to give you a heart attack there.

11             Saturday noon.  Of course, earlier filings I'm sure

12   would be gratefully appreciated, and the reply deadline states

13   close of business Monday.

14             All right.  Thank you, all.

15             Good holidays.  Safe travels.  I will look forward to

16   seeing you on Wednesday in San Juan.

17             Thank you.

18             (Adjourned)

19

20

21

22

23

24

25

J4IsPROc

1  UNITED STATES DISTRICT COURT)
                               ) ss.
2  OF PUERTO RICO              )

3

4                    REPORTER'S CERTIFICATE

5

6          I, Lisa M. Franko, do hereby certify that the above

7  and foregoing pages, consisting of the preceding 80 pages

8  constitutes a true and accurate transcript of our stenographic

9  notes and is a full, true, and complete transcript of the

10 proceedings to the best of our ability.

11         Dated this 18th day of April, 2019.

12         S/Lisa M. Franko _____

13         Lisa M. Franko, RMR, CRR

14         Official Court Reporters
           500 Pearl Street
15         New York, NY 10007
           212-805-0320

16

17

18

19

20

21

22

23

24

25