UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

———————————————————————— X
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
Debtors.[1] :
———————————————————————— X
:
THE SPECIAL CLAIMS COMMITTEE OF THE :
FINANCIAL OVERSIGHT AND MANAGEMENT :
BOARD FOR PUERTO RICO, ACTING BY AND :
THROUGH ITS MEMBERS, : Adv. Proc. No. _____
:
and :
:
THE OFFICIAL COMMITTEE OF UNSECURED :
CREDITORS OF THE COMMONWEALTH OF :
PUERTO RICO, :
:
as co-trustees respectively, of :
:
THE COMMONWEALTH OF PUERTO RICO, :
:
Plaintiffs[2] :
v. :
:
THE BANK OF NEW YORK MELLON, AS :
TRUSTEE, UNDER THE TRUST AGREEMENT :
DATED MARCH 1, 2015 BETWEEN THE PUERTO :
RICO INFRASTRUCTURE AUTHORITY AND THE :

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK- 3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

[2] The members of the Special Claims Committee, on the one hand, and the Official Committee of Unsecured Creditors, on the other hand, serve as co-trustees and co-plaintiffs in the prosecution of this adversary proceeding as described in that certain *Stipulation And Agreed Order By And Among Financial Oversight And Management Board, Its Special Claims Committee, And Official Committee Of Unsecured Creditors Related To Joint Prosecution Of Debtor Causes Of Action*, Case No. 17-BK-3283 (LTS), ECF No. 6505-1, which is referenced herein to the extent necessary and appropriate.

| | |
|---|---|
| BANK OF NEW YORK MELLON, AND FIR TREE INC. AS SUCCESSOR IN INTEREST, TO RBC MUNICIPAL MARKETS, LLC, AS OWNER REPRESENTATIVE UNDER THE NOTEHOLDER AGREEMENT DATED MARCH 1, 2015 RELATING TO PUERTO RICO INFRASTRUCTURE AUTHORITY DEDICATED TAX REVENUE BOND ANTICIPATION NOTES SERIES 2015, | : : : : : : : : : |
| Defendants. _____ | : X |

**ADVERSARY COMPLAINT FOR DECLARATORY RELIEF AND AVOIDANCE OF FRAUDULENT CONVEYANCE**

Pursuant to Federal Rules of Bankruptcy Procedure 7001 and 3007 made applicable to these Title III cases by section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act (48 U.S.C. § 2170) ("PROMESA"), and the *Stipulation and Agreed Order By and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action* [ECF No. 6501-1], (i) the Special Claims Committee (the "SCC") of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), acting by and through its members, as representative of the Commonwealth of Puerto Rico (the "Commonwealth"), and (ii) the Official Committee of Unsecured Creditors of all title III Debtors (except COFINA) (the "Committee"), in each case by and through undersigned counsel, allege on actual knowledge as to its own status and actions and upon information and belief as to all other matters as follows:

**NATURE OF PROCEEDING**

1. Plaintiffs bring this action and similar actions to avoid guaranties provided by the Commonwealth prior to the Petition Date because the guaranties are null and void by virtue of having been issued in violation of the Debt Service Limit and Guarantee Prohibition, and are

2

fraudulent conveyances under 11 U.S.C. § 544 and Puerto Rico and/or New York law.[3] The Plaintiffs seek to disallow all claims filed in respect of such guaranties.

2. The Commonwealth reserves the right to supplement the affirmative relief sought in this Complaint to include other legal and equitable remedies currently being investigated.

## PARTIES

3. Co-Plaintiff the Oversight Board was established by PROMESA to help Puerto Rico "achieve fiscal responsibility and access to the capital markets." PROMESA § 101(a). The Oversight Board "is the representative of the debtor" in any Title III case, and the term "trustee" under title 11 of the United States Code (the "Bankruptcy Code") as incorporated into PROMESA means the Oversight Board. PROMESA §§ 301, 315.

4. Co-Plaintiff the Committee is the Official Committee of Unsecured Creditors of all Title III Debtors other than COFINA. The Committee was appointed by the United States Trustee on June 15, 2017.

5. Defendant The Bank of New York Mellon ("BONY Mellon") is a Delaware corporation with corporate trust offices located at 101 Barclay Street, New York, New York.

6. Defendant BONY Mellon's principal place of business is located in New York, New York.

7. Defendant BONY Mellon is a creditor of the Commonwealth by virtue of Proof of Claim No. 19814 filed in the Commonwealth's Title III case.

8. Defendant Fir Tree Inc. ("Fir Tree") is a New York corporation with its corporate office located at 55 West 46th Street, 29th Floor, New York, New York.

---

[3] Capitalized terms in this section have the meaning ascribed to them below.

3

9. Defendant Fir Tree's principal place of business is located in New York, New York.

## JURISDICTION AND VENUE

10. This is an adversary proceeding and a claim objection brought pursuant to 28 U.S.C. § 2201(a), Federal Rules of Bankruptcy Procedure 7001 and 3007, sections 105(a), 502 and 544 of the Bankruptcy Code and Puerto Rico law and New York law to disallow a claim and avoid an obligation of the Commonwealth.

11. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to section 306(a) of PROMESA. 48 U.S.C. § 2166(a).

12. Venue is proper in this district pursuant to section 307(a) of PROMESA. 48 U.S.C. § 2167(a).

## FACTUAL BACKGROUND

13. On May 3, 2017, (the "Petition Date"), the Oversight Board initiated a Title III case on behalf of the Commonwealth. Shortly thereafter, the Oversight Board filed several other Title III cases on behalf of several Commonwealth instrumentalities.

### I. The Commonwealth Incurs Guaranty Obligation

14. Pursuant to the Guaranty Agreement (as defined below), under Article 34(h) of Act No. 44 of the Legislative Assembly of Puerto Rico enacted on June 21, 1988, as amended, including pursuant to Act 1-2015 of the Legislative Assembly of Puerto Rico (hereinafter "PRIFA Enabling Act"), the Commonwealth is authorized to guarantee the payment of principal and interest on certain obligations in the aggregate amount of $2,950,000,000. Guaranty Agreement, at Recitals.

15. On or about March 1, 2015, the Puerto Rico Infrastructure Financing Authority ("PRIFA") and RBC Municipal Products, LLC ("RBC") entered into the Noteholder Agreement

relating to PRIFA Dedicated Tax Fund Revenue Bond Anticipation Notes Series 2015 for $245,955,000 ("Noteholder Agreement, and the Series 2015 Bond Anticipation Note hereinafter, the "Notes").

16. Under the Noteholder Agreement, PRIFA "unconditionally, irrevocably, and absolutely agree[d]" to make from certain of its revenues payments due under the Notes to the "Owner Representative." Noteholder Agreement, § 2.01.

17. Under the Noteholder Agreement, the "Owner Representative" was RBC. Noteholder Agreement, § 1.01.

18. Concurrent with the Noteholder Agreement, PRIFA and BONY Mellon entered into the Trust Agreement between PRIFA and BONY Mellon, as Trustee, providing for the issuance of the Notes ("Trust Agreement").

19. Under the Trust Agreement, notwithstanding its status as Trustee, BONY Mellon could "in good faith buy, sell, or hold and deal in any of the Notes with like effect as if it were not such Trustee and may commence or join in any action which a Holder is entitled to take with like effect as if the Trustee were not the Trustee." Trust Agreement, § 6.07.

20. Under the Trust Agreement, BONY Mellon also served as paying agent and registrar for the Notes. Trust Agreement, § 6.16.

21. Pursuant to the Trust Agreement, the proceeds of the Notes were used to refinance "that certain bond anticipation note issued by the Puerto Rico Highways and Transportation Authority ("HTA") to refinance a portion of the loans provided by the Government Development Bank for Puerto Rico ("GDB") to HTA." Trust Agreement, §1.01(b).

22. Concurrent with the Noteholder Agreement and the Trust Agreement, the Commonwealth executed a guaranty agreement for the benefit of RBC and BONY Mellon. (the "Guaranty Agreement"). *See* Guaranty Agreement.

23. Pursuant to the Guaranty Agreement, the Commonwealth "irrevocably guarantee[d] the payment of principal and interest on the Notes" (the "Guaranty Obligation"). Guaranty Agreement, § 1.

24. Upon information and belief, the Commonwealth did not receive reasonably equivalent value or fair consideration in return for the Guaranty Obligation because substantially all of the Note proceeds were used to repay HTA debt for which the Commonwealth was not otherwise obligated.

25. HTA, which benefited from the Guaranty Obligation, is an insider of the Commonwealth.

26. At the time the Commonwealth incurred the Guaranty Obligation, the Commonwealth's annual financial statements demonstrate that its liabilities exceeded the value of its assets.

27. Likewise, the Commonwealth's books and records from 2012 to 2017 demonstrate a consistent trend of mounting liabilities and dwindling assets, such that at no time during that period has the value of its assets exceeded its liabilities.

28. Additionally, the Commonwealth was not paying its debts as they came due at the time the Commonwealth incurred the Guaranty Obligation.

29. At times since 2012, the Commonwealth failed to appropriate sufficient funds for the operation of several of its instrumentalities and failed to make required deposits on certain pension obligations and guaranteed debt.

6

30. From and after no later than 2012, the Commonwealth issued general obligation ("GO") debt, thereby incurring obligations that were beyond its ability to repay as they became due.

31. Likewise, at the time the Commonwealth incurred the Guaranty Obligation, the Commonwealth was unable to pay its debts as they came due.

32. Beginning not later than 2012, commentators observed that Puerto Rico's debt service requirements were unsustainable, and not later than June of 2015, the Governor of Puerto Rico admitted this was the case.

33. The Commonwealth defaulted on certain GO debt in 2016 as it was unable to pay its debts while delivering services at the level and quality required for the health, safety, and welfare of the people of Puerto Rico.

34. On May 24, 2018, BONY Mellon filed proof of Claim No. 19814 for $80,563,664 outstanding on the Notes (the "BONY Mellon Claim").

35. According to the BONY Mellon Claim, on or about April 3, 2017, "Fir Tree, Inc." succeeded RBC as Owner Representative under the Noteholder Agreement.

**II.  At the Time of Guaranty Obligation, The Commonwealth was in Violation of the Debt Service Limit**

36. The Plaintiffs incorporate by reference herein all factual statements in the *Omnibus Objection Of (I) Financial Oversight And Management Board, Acting Through Its Special Claims Committee, And (II) Official Committee Of Unsecured Creditors, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of Certain Commonwealth General Obligation Bonds* [ECF No. 4784] (the "Joint Claim Objection"), ¶¶12-132

7

37. The Plaintiffs also incorporate by reference herein all factual statements in the Complaint filed in *The Financial Oversight & Management Board for Puerto Rico, et al. v. Puerto Rico Building Authority* [Adv. Proc. No. 18-00149-LTS, ECF No. 1] (the "PBA Complaint"), ¶¶14-35.

### A. The Commonwealth Constitution Proscribes Borrowing in Excess of Ability to Repay, as Evidenced by Historical Internal Revenues.

38. In 1961, the Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues (the "Debt Service Limit").

39. Specifically, Article VI, Section 2 of the Constitution provides that:

> no direct obligations of the Commonwealth for money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith credit and taxing power of the Commonwealth shall be pledged shall be issued by the Commonwealth if the total of (i) the amount of principal of and interest on such bonds and notes, together with the amount of principal of and interest on all such bonds and notes theretofore issued by the Commonwealth and then outstanding, payable in any fiscal year and (ii) any amounts paid by the Commonwealth in the fiscal year next preceding the then current fiscal year for principal or interest on account of any outstanding obligations evidenced by bonds or notes guaranteed by the Commonwealth, shall exceed 15% of the average of the total amount of the annual revenues raised under the provisions of Commonwealth legislation and covered into the Treasury of Puerto Rico in the two fiscal years next preceding the then current fiscal year.

P.R. LAWS ANN. CONST. art. VI, § 2.

40. The annual revenues "raised under the provisions of Commonwealth legislation and covered into the Treasury of Puerto Rico" are known as the Commonwealth's "internal revenues" and consist primarily of revenues from income taxes, property taxes, sales and use taxes, and excise taxes (subject to certain exceptions).

8

**B. The PBA Bonds and Other Commonwealth Obligations Caused the Commonwealth to Exceed the Debt Service Limit.**

41. The Public Building Authority ("PBA") issued multiple series of bonds in 2011 and 2012 pursuant to certain bond resolutions, including: (i) $756,449,000 in aggregate principal amount Government Facilities Revenue Bonds, Series R; (ii) $303,945,000 in aggregate principal amount Government Facilities Revenue Bonds, Series S; (iii) $121,528,000 in aggregate principal amount Government Facilities Revenue Bonds, Series T; and (iv) $582,345,000 in aggregate principal amount Government Facilities Revenue Bonds, Series U (collectively, the "PBA Bonds"). As of February 2017, approximately $4 billion in aggregate principal amount of PBA Bonds remained outstanding.

42. As set forth in the Joint Claim Objection, although the PBA is the purported issuer of the PBA Bonds, the PBA Bonds are in economic substance general obligations of the Commonwealth backed by the Commonwealth's full faith, credit and taxing power

43. Nevertheless, in calculating the Debt Service Limit, the Commonwealth did not include billions of dollars in PBA Bonds then-outstanding as "money borrowed directly by the Commonwealth evidenced by bonds or notes for the payment of which the full faith credit and taxing power of the Commonwealth shall be pledged."

44. Beginning in 2011, the Commonwealth began issuing several series of GO bonds, including: (i) $442,015,000 in aggregate principal amount of Public Improvement Refunding Bonds, Series 2011 C; (ii) $304,000,000 in aggregate principal amount of Public Improvement Bonds of 2011; (iii) $52,190,000 in aggregate principal amount of Public Improvement Refunding Bonds, Series 2011 D; (iv) $245,915,000 in aggregate principal amount of Public Improvement Refunding Bonds, Series 2011 E; (v) $2,318,190,000 in aggregate principal amount of Public Improvement Refunding Bonds, Series 2012 A: (vi) $415,270,000 in aggregate

9

principal amount of Public Improvement Refunding Bonds, Series 2012 B; and (vii) $3,500,000,000 in aggregate principal amount of GO Bonds of 2014, Series A (collectively, the "Violative GO Bonds")

45. As shown in Appendix 1, had the Commonwealth and its professionals properly accounted for the PBA Bonds prior to issuing several series of the Violative GO Bonds, they would have known that the Violative GO Bonds were issued in violation of the Debt Service Limit as early as 2011.

46. The Violative GO Bonds violated the Debt Service Limit.

47. Moreover, in calculating the Debt Service Limit, the Commonwealth did not include the nearly $425 million of interest to be paid from the proceeds of the Series A 2014 GO Bonds themselves in fiscal years 2014, 2015, and 2016.

48. As shown in Appendix 2, had that interest been included in the calculation, the issuance of the Series A 2014 GO Bonds would have been shown to violate the Debt Service Limit, even without including debt service on the PBA Bonds.

49. In addition to the Debt Service Limit, Section 2, Article VI of the Puerto Rico Constitution also prohibits the Commonwealth from making guarantees where there has been a Debt Service Limit violation (the "Guarantee Prohibition"):

> the Commonwealth *shall not guarantee* any obligations evidenced by bonds or notes if the total of the amount payable in any fiscal year on account of principal of and interest on all the direct obligations referred to above theretofore issued by the Commonwealth and then outstanding and the amounts referred to in item (ii) above shall exceed 15 percent of the average of the total amount of such annual revenues.

P.R. LAWS ANN. CONST. art. VI, § 2 (emphasis added).

50. The Commonwealth incurred the Guaranty Obligation in March 2015 after the issuance of the Violative GO Bonds.

### CLAIMS FOR RELIEF

### COUNT I
### 28 U.S.C. § 2201(a)
### Puerto Rico Constitution, Art. VI, § 2
### (Declaration That Guaranty Obligation Incurred in Violation of Constitutional Debt Limit and Are Null and Void)

51. The Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

52. The Plaintiffs incorporate herein by reference the legal arguments contained in the Joint Claim Objection, ¶¶12-132, and the PBA Complaint, ¶¶36-53.

53. The full faith credit and taxing power of the Commonwealth was pledged for the payment of the PBA Bonds, among other indebtedness.

54. The full faith credit and taxing power of the Commonwealth was pledged for the payment of the Violative GO Bonds.

55. The full faith credit and taxing power of the Commonwealth was pledged for the payment of the Guaranty Obligation.

56. The Commonwealth incurred the Guaranty Obligation in violation of the constitutional Guarantee Prohibition.

57. The Guaranty Obligation is null and void as a result of this constitutional defect.

### COUNT II
### FRAUDULENT TRANSFER
### (31 L.P.R.A. §§ 3491-3500 and 11 § U.S.C. 544(b))

58. The Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

59. The Commonwealth incurred the Guaranty Obligation within four years of the Petition Date.

60. At the time the Commonwealth incurred the Guaranty Obligation, the Commonwealth was in a state of insolvency.

61. BONY Mellon knew or should have known that the Commonwealth was insolvent, in the vicinity of insolvency, or unable to satisfy its obligations as they became due.

62. RBC knew or should have known that the Commonwealth was insolvent, in the vicinity of insolvency, or unable to satisfy its obligations as they became due.

63. Fir Tree, as successor in interest to RBC, knew or should have known that the Commonwealth was insolvent, in the vicinity of insolvency, or unable to satisfy its obligations as they became due.

64. The Commonwealth's insolvency pre-supposes that its patrimony is insufficient to satisfy all the debts weighing upon it.

65. There was insufficient consideration for the Commonwealth's incurrence of the Guaranty Obligation because the Guaranty Obligation is not enforceable against the Commonwealth.

66. The Guaranty Obligation is not enforceable against the Commonwealth because it violates the constitutional Guarantee Prohibition.

67. Likewise, there was insufficient consideration for the Commonwealth's incurrence of the Guaranty Obligation because the proceeds of the Notes were used to repay HTA debt.

68. Therefore, the Plaintiffs request that the Guaranty Obligation be avoided pursuant to pursuant to 31 L.P.R.A. §§ 3491-3500 and 11 U.S.C. §§544.

12

69. Other than such remedy as may be afforded pursuant to other causes of action alleged herein, the Commonwealth has no remedy other than that provided under 31 L.P.R.A. §§ 3491-3500.

### COUNT III
### FRAUDULENT TRANSFER
### (11 U.S.C. § 544(b) and New York Debtor and Creditor Law §273 and §273-a)

70. The Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

71. The Guaranty Obligation constitutes a Conveyance as defined by New York Debtor and Creditor Law §270.

72. The Guaranty Obligation was not made for fair consideration consistent with New York Debtor and Creditor Law §272.

73. The Commonwealth incurred the Guaranty Obligation at a time when it intended or believed it would incur debts beyond its ability to pay as they matured or was already insolvent as defined by New York Debtor and Creditor Law § 271(1).

74. Accordingly, pursuant to New York Debtor and Creditor Law §§ 273 and 278(1)(a)-(b), the Guaranty Obligation constitutes a fraudulent conveyance and should be declared null and void.

### COUNT IV
### FRAUDULENT TRANSFER
### (11 U.S.C. § 544(b) and 26 U.S.C. § 6502(a)(1))

75. The Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

76. As of the Petition Date, the Internal Revenue Service ("IRS") was a creditor of the Commonwealth.

77. The Commonwealth incurred the Guaranty Obligation within ten years of the Petition Date.

78. As of the Petition Date, the Commonwealth had other unsecured creditors.

79. The Commonwealth did not receive reasonably equivalent value for incurring the Guaranty Obligation because the proceeds of the Notes were used to repay HTA debt.

80. Additionally, the Commonwealth did not receive reasonably equivalent value for incurring the Guaranty Obligation because the Guaranty Obligations is unenforceable as violative of the constitutional Guarantee Prohibition.

81. At the time of the Guaranty Obligation, the Commonwealth was insolvent or became insolvent as a result of the Guaranty Obligation.

82. Pursuant to 11 U.S.C. § 544(b), the Oversight Board has standing to avoid any obligation incurred by the Commonwealth that is voidable under applicable law by a creditor holding an unsecured claim.

## COUNT V
## OBJECTION TO CLAIM
## (11 U.S.C. § 502)

83. The Plaintiffs repeat and re-allege each allegation contained in the preceding paragraphs as if fully set forth herein.

84. The Guaranty Obligation is void or voidable as lacking in consideration.

85. The Guaranty Obligation is void or voidable as violative of the constitutional Guarantee Prohibition.

86. The Guaranty Obligation is not an enforceable basis for a claim against the Commonwealth.

87. The BONY Mellon Claim is not enforceable against the Commonwealth.

14

88. The Court should disallow the BONY Mellon Claim.

## **PRAYER FOR RELIEF**

WHEREFORE, by reason of the foregoing, the Plaintiffs respectfully request that the Court grant the following relief to the extent not inconsistent:

(a) On Count I, entering a judgment declaring (i) that the Commonwealth issued the Guaranty Obligation in violation of Article VI, § 2 of its Constitution, and (ii) that as a result the Guaranty Obligation is null and void and the Commonwealth has no legal obligation to make payments in respect thereof;

(b) On Count II, entering a judgment avoiding the Guaranty Obligation;

(c) On Count III, entering a judgment avoiding the Guaranty Obligation;

(d) On Count IV, entering a judgment avoiding the Guaranty Obligation

(e) On Count V, entering a judgment disallowing the BONY Mellon Claim;

(f) For costs of suit incurred herein; and

(g) For such other relief as the Court may deem just and proper.

Date: May 1, 2019

| | |
|---|---|
| */s/* Kenneth C. Suria <br> **ESTRELLA, LLC** <br> Alberto Estrella (USDC-PR 209804) <br> Kenneth C. Suria (USDC-PR 213302) <br> P. O. Box 9023596 <br> San Juan, Puerto Rico 00902–3596 <br> Tel.: (787) 977-5050 <br> Fax: (787) 977-5090 <br><br> *Counsel to the Special Claims Committee of the Financial Oversight and Management Board, acting by and through its members* | */s/* Juan J. Casillas Ayala <br> **CASILLAS, SANTIAGO & TORRES LLC** <br> Juan J. Casillas Ayala, Esq., USDC - PR 218312 <br> Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710 <br> Israel Fernández Rodríguez, Esq., USDC - PR 225004 <br> Juan C. Nieves González, Esq., USDC - PR 231707 <br> Cristina B. Fernández Niggemann, Esq., USDC - PR 306008 <br> PO Box 195075 <br> San Juan, PR 00919-5075 <br> Tel.: (787) 523-3434 <br> Fax: (787) 523-3433 <br> jcasillas@cstlawpr.com <br> aaneses@cstlawpr.com <br> ifernandez@cstlawpr.com <br> jnieves@cstlawpr.com <br> cfernandez@cstlawpr.com <br><br> *Counsel to the Official Committee of Unsecured Creditors* |