# EXHIBIT K

Contract No. _____

# MASTER SUBLEASE CONTRACT

This Master Sublease Contract, made and entered into as of the 22nd day of December, 2011 by and between the Puerto Rico Public Buildings Authority, as Sublessor (hereinafter sometimes called the "Authority"), and the Department of Education of the Commonwealth of Puerto Rico, as Sublessee (the "Sublessee"). Unless otherwise defined in this Master Sublease Contract, or unless the context otherwise requires, the terms used in this Master Sublease Contract shall have the same meanings assigned to them under Resolution No. 468, adopted by the Authority on June 22, 1995 (such Resolution No. 468, as amended and together with all resolutions supplemental thereto duly adopted as permitted therein, particularly as supplemented by Resolution No. 1618 adopted by the Authority on December 19, 2011 (the "Series Resolution", and collectively with such Resolution No. 465 being hereinafter called the "Bond Resolution").

## WITNESSETH:

**WHEREAS,** by Act. No. 56 of the Legislature of Puerto Rico, approved June 19, 1958, as amended (hereinafter sometimes called the "Enabling Act"), the Authority was created as a body corporate and politic constituting an instrumentality of the Commonwealth of Puerto Rico (hereinafter called the "Commonwealth") exercising public and essential government functions, for the purpose, among others, of providing and operating office buildings, headquarters, courts, warehouses, schools, health and social welfare facilities and other related facilities for lease or sublease to any department, agency, instrumentality or municipality of the Commonwealth; and

**WHEREAS,** the Enabling Act authorizes any department, agency, instrumentality or municipality of the Commonwealth to enter into lease and/or sublease contracts with the Authority for all or any part of any building or facilities owned or operated by the Authority, and to perform and execute any and all acts or agreements, stipulations, contracts and transactions that may be necessary, convenient or desirable to perform any lease or sublease contract, and to provide for the payment or settlement of any obligation of said department, agency, instrumentality or municipality; and

**WHEREAS,** the Authority has leased, as lessee, pursuant to a Master Lease Contract, dated as of December 22, 2011 and attached as **Exhibit A** hereto, with the Department of Transportation and Public Works of the Commonwealth (hereinafter called the "Department"), acting as custodian of certain properties belonging to the Commonwealth, as lessor, the facilities described in **Exhibit B** to this Master Sublease Contract (said facilities being hereinafter called the "Sublease Facilities") that are in turn to be subleased by the Authority to the Sublessee; and

**WHEREAS,** pursuant to the Enabling Act the Authority is financing and/or will finance the cost of renovating, remodeling and or improving the Sublease Facilities by the issuance of revenue bonds of the Authority, particularly, but not limited to, those evidenced by its Government Facilities Revenue Bonds, Series T (Qualified Zone Academy Bonds – Issuer Subsidy) (the "Bonds") to be issued from time to time by the Authority under the Bond Resolution to pay for among other things, the cost of certain schools and related facilities, including the Sublease Facilities; and

4848-7904-7182.3

**WHEREAS,** the principal and interest on the Bonds will be paid from rentals received by the Authority from the subleasing of the Sublease Facilities financed by the Authority under the Bond Resolution to be paid by the Sublessee; and

**WHEREAS,** under the Enabling Act the Sublessee is authorized to enter into a Master Sublease Contract or contracts with the Authority for the rental of the Sublease Facilities for terms of not more than 40 years from the date of their effectiveness, and the Bonds are to mature at various dates not more than 40 years from the date of the effectiveness of the Master Sublease Contract, as it may be amended from time to time, for the Sublease Facilities;

**NOW, THEREFORE,** for and in consideration of the mutual promises, covenants and agreements and other good and valuable consideration, the Authority and the Sublessee agree as follows:

## ARTICLE I

## SUBLEASE TO SUBLESSEE; TERM

The Authority hereby demises, leases and rents to the Sublessee, and the Sublessee hereby takes, accepts and rents from the Authority, upon and subject to the terms, covenants and conditions hereinafter stated, the Sublease Facilities for a term beginning on the date first above written and ending on the date when all of the Bonds issued in connection with the Sublease Facilities and all other obligations incurred by the Authority under the Bond Resolution in connection with the Sublease Facilities or such Bonds and all obligations of the Sublessee under this Master Sublease Contract have been paid in full or sufficient funds for such payment are held in trust by the Fiscal Agent under the Bond Resolution.

## ARTICLE II

## RENTALS

Section 2.01. Rentals. The Sublessee shall pay to the Authority as rental (the "rentals") for the Sublease Facilities, contemplated to commence in and continuing until the end of the term of this Master Sublease Contract, the sum of the following:

(a)    commencing with the month immediately following the month in which the first series of Bonds are issued, such annual amount or amounts as shall be determined from time to time by the Authority to be necessary to pay the principal of (including the Amortization Requirements for the term bonds and the premiums, if all, for the redemption of such term bonds) and the interest on all Bonds under the Bond Resolution as the same become due and payable (the "Debt Service Rental");

(b)    such annual amount or amounts as shall be determined from time to time by the Authority to be necessary to pay the general administrative expenses of the Authority in connection with the Sublease Facilities (the "Annual Administrative Rental"); and

(c)    such annual amounts or amount as shall be determined from time to time by the Authority to be necessary to provide and maintain a reserve of major items of equipment described in Exhibit B to this Master Sublease Contract (the "Annual Equipment Replacement Rental").

2

The amount of the rentals determined by the Authority shall be set forth in certificates of the Executive Director of the Authority delivered to the Sublessee:

(i)      as to the Debt Service Rental, promptly after each sale of Bonds and from time to time as determined by the Authority;

(ii)     as to the Annual Administrative Rental and the Annual Equipment Replacement Rental, on the date of the execution of this Master Sublease Contract and on or before each June 15 thereafter.

Section 2.02. Adjustments of Debt Service Rental.

(i)      The Debt Service Rentals shall be adjusted downward, as the Authority determines, to reflect the portion of the interest payment on the Bonds that shall be covered by the Interest Subsidy Payments;

(ii)     The Debt Service Rentals shall be automatically adjusted upward when and to the extent the Authority does not receive, in whole or in part, the Interest Subsidy Payments;

(iii)    The Debt Service Rentals shall be adjusted upwards, as the Authority determines, to include the payment of allocable portions of the Series T Advance Deposit Amounts (as defined in the Series Resolution); and

(iv)     In the event that additional Bonds are issued by the Authority to finance temporarily any additional costs of the Sublease Facilities, the Debt Service Rental shall be increased by such amount as the Authority determines is required to pay the interest thereon and to amortize an amount equal to the principal of such additional Bonds over a period of 30 years. Upon the retirement of any Bonds from the proceeds of bonds or otherwise, the Debt Service Rental shall be reduced by such amount as the Authority determines was included in the computation of such Rental on account of the principal of and interest on that principal amount of Bonds which is so retired.

Section 2.03. Rental Installments. The rentals for each fiscal year shall be paid to the Authority by the Sublessee in equal monthly installments on or before the 10th day of each month; provided, however, that in no event shall any monthly installment of Debt Service Rental be less than the amount which is necessary under the Bond Resolution to provide, without any withdrawal or transfer from the Reserve Account in the Sinking Fund, if any (i) sufficient funds in the Bond Service Account in the Sinking Fund for the timely payment of the interest on all bonds then outstanding and the principal of all serial bonds then outstanding, (ii) sufficient funds in the Redemption Account in the Sinking Fund for the timely payment of the Amortization Requirements for the term bonds then outstanding, and (iii) sufficient funds in the Series T Advance Deposit Account to comply with the requirements contained in the Series Resolution relating to the deposit of Series T Advance Deposit Amounts into Series T Advance Deposit Account.

Section 2.04. Deposit of Debt Service Rental. All amounts received by the Authority as Debt Service Rental shall be immediately deposited with the Fiscal Agent under the Bond Resolution in accordance with the provisions thereof; provided, however, that the Authority at its discretion may return to the Sublessee any portion of Debt Service Rental that the Authority has determined to be in excess of the amount then required to be on deposit in the Bond Service Account, the Redemption Account and the Series T Advance Deposit Account under the Bond Resolution.

3

4848-7904-7182.3

Section 2.05. <u>Deposit of Annual Administrative Rental</u>. All amounts received as Annual Administrative Rental shall be deposited by the Authority in its name in a bank located in Puerto Rico selected by the Authority and shall be used for the purpose of paying the administrative expenses of the Authority incurred in connection with the Sublease Facilities.

Section 2.06. <u>Deposit of Annual Equipment Replacement Rental</u>. All amounts received as Annual Equipment Replacement Rental shall be deposited by the Authority in its name to the credit of the Equipment Replacement Reserve Fund in a Bank located in Puerto Rico selected by the Authority and shall be used for the purpose of paying the cost of replacement of major items of equipment described in **Exhibit C**, if any, to this Master Sublease Contract.

Section 2.07. <u>Priority of Debt Service</u>. Notwithstanding any contrary provision in this Master Sublease Contract or any contrary designation or instruction from the Sublessee, all rentals received by the Authority pursuant to this Master Sublease Contract shall be deemed to be Debt Service Rentals to the extent of the amounts then due and payable as Debt Service Rental hereunder.

## ARTICLE III

## MAINTENANCE AND OPERATION OF SUBLEASE FACILITIES

The Sublessee shall operate or <u>cause to be operated</u> the Sublease Facilities in an efficient manner and shall maintain them or cause them to be maintained in a good state of repair. The Sublessee shall pay or cause to be paid all expenses of operating, maintaining and repairing the Sublease Facilities. All expenses for replacement of major items of equipment described in Exhibits B and C to this Master Sublease Contract shall be paid by the Authority from available moneys in the Equipment Replacement Reserve Fund, and the Sublessee shall pay or cause to be paid any additional moneys required for such purpose.

The Authority shall have the right to inspect the Sublease Facilities at any time to verify that the same are well kept and in a good state of repair after giving prior notice of said inspection to the Sublessee.

Nothing contained in this Master Sublease Contract to the contrary shall require the Sublessee to continue to operate any Sublease Facilities or any part thereof (i) which have been damaged or destroyed and as to which the Authority and the Department have determined it is not desirable to repair, replace or reconstruct, or (ii) which have been sold or otherwise disposed of in the circumstances permitted by the Bond Resolution; provided, however, that the proceeds of any insurance received on account of such damage or destruction and the proceeds received on account of any such sale or other disposition shall be deposited to the credit of the Redemption Account in the Sinking Fund, and provided, further, that notwithstanding any cessation of operation or transfer by the Sublessee of any such Sublease Facilities, the Sublessee shall continue to pay the rentals for the full term of this Master Sublease Contract at the times and in the amounts specified or referred to in this Master Sublease Contract.

## ARTICLE IV

## INSURANCE

Section 4.01. <u>Insurance Against Loss or Damage</u>. The Authority shall keep for the project under this Master Sublease Contract, including all equipment of the Authority therein, insured with a responsible insurance company or companies qualified under the laws of the Commonwealth to assume the risks thereof, against physical loss or damage, howsoever caused, with such exception as are ordinarily required by insurers of buildings of a similar type, to the full insurable value thereof.

Section 4.02. <u>Application of Proceeds</u>. The proceeds of all such insurance shall be applied to the repair, reconstruction or replacement on the same or on a different site of the damage or destroyed property or to the purchase or redemption of bonds, as the Authority shall determine.

Section 4.03. <u>Comprehensive Liability Insurance</u>. The Authority shall also maintain such comprehensive public liability insurance for the project under this Master Sublease Contract with a responsible and qualified insurance company or companies in such amounts as the Authority shall determine is necessary to protect it against loss on account of liability for injury or damage to person or property resulting from its ownership or operation for the project under this Master Sublease Contract.

Section 4.04. <u>Insurance Cost</u>. All costs incurred by the Authority for insurance under this Article shall be deemed to be operating and maintenance expenses.

## ARTICLE V

## UNCONDITIONAL OBLIGATION TO PAY RENTALS

The Sublessee agrees that its obligation to pay rentals for the full term of this Master Sublease Contract at the times and in the amounts specified or referred to in this Master Sublease Contract shall be absolute and unconditional and shall continue whether or not the Sublease Facilities or any part thereof shall be completed or shall be occupied by the Sublessee, or be sold, transferred or otherwise disposed of, or be damaged or destroyed from any cause whatsoever or otherwise become unusable by the Sublessee for any period of time and regardless of any other cause of any nature, but not limited to, any default by the Authority under this Master Sublease Contract.

## ARTICLE VI

## MISCELLANEOUS

Section 6.01. <u>Covenant against Assignment and Restrictions on Subleasing</u>. This Master Sublease Contract may not be assigned or otherwise transferred in whole or in part by the Authority or by the Sublessee. All or any part of the Sublease Facilities may be sub-subleased as a whole or in part by Sublessee if, any only if, the following conditions precedent shall have been met:

(a)    unless otherwise permitted by the Bond Resolution, the sub-sublessee under the sub-sublease shall be a department, agency or instrumentality of the Commonwealth.

(b)    simultaneously with the execution and delivery of the sub-sublease, the Sublessee shall execute and deliver to the Authority an instrument in writing acknowledging, confirming and agreeing that the Sublessee shall continue to remain liable for the payment of all rentals under this Master Sublease Contract and for the performance and observance of all other obligation and agreements on its part herein provided to be performed and observed by it;

5

(c)   the sub-sublease shall deliver to the Authority and the Sublessee the certificates required under Section 710(d) of the Bond Resolution and;

(d)   all authorizations, approvals and consents (governmental or otherwise) required for or in connection with the execution, delivery and performance of the sub-sublease shall have been duly obtained prior to or simultaneously with the execution and delivery of the sub-sublease.

Section 6.02. Settlement of Disputes. In the event of any dispute between the Authority and the Sublessee as to any of the provisions of this Master Sublease Contract, the matter shall be submitted to the Governor of Puerto Rico (the "Governor"), or his duly authorized representative, for his determination. When such dispute shall be decided by the Governor or his duly authorized representative, the Authority and the Sublessee shall be bound by such determination.

Section 6.03. Alterations and Improvements. The Authority will upon the request and at the sole expense of the Sublessee make such alterations, modifications or improvements to the Sublease Facilities as are so requested by the Sublessee and approved by the Authority; it being agreed and understood by the parties hereto that all such alterations, modifications and improvements made by the Authority at the request and expense of the Sublessee shall be and become the property of the Department; it being further agreed and understood that all alterations, modifications and improvements to the Sublease Facilities must be done as aforesaid and with the prior written consent of the Authority.

Section 6.04. Benefits. This Master Sublease Contract shall inure to the benefit of and be binding upon the parties hereto, their successors and assigns, and shall also inure to the benefit of the holders of the bonds issued under the Bond Resolution, as their respective interest may appear.

Section 6.05. Conflict with Bond Resolution. Notwithstanding any other provision of this Master Sublease Contract, it is expressly agreed and understood that in the event of any conflict between the provisions contained in this Master Sublease Contract and in the Bond Resolution, the provisions contained in the Bond Resolution shall be controlling.

Section 6.06. Restrictions on Amendments and Modifications. No amendment or modification of this Master Sublease Contract shall in any respect reduce the amounts of the rental payment provided for herein below the required amounts referred to in the Bond Resolution or postpone the times of making such rental payments or otherwise materially and adversely affect the security or interest of the holders of the bond issued under the Bond Resolution.

Section 6.07. Effective Date. This Master Sublease Contract shall become effective as of December 22, 2011.

**IN WITNESS WHEREOF,** the Puerto Rico Public Buildings Authority has caused this Master Sublease Contract to the executed in its name and behalf by its Executive Director, thereunto duly authorized, and its corporate seal to be hereunto affixed and attested by its Secretary, and the affixed and the Department of Education of the Commonwealth of Puerto Rico has caused this Master Sublease Contract to be executed in its name and behalf by its Secretary, thereunto duly authorized, as of the day and year first above written.

DEPARTMENT OF EDUCATION                    PUBLIC BUILDINGS AUTHORITY

By:_____                By:_____

    Edward Moreno Alonso, Ed. D.                  Eduardo Rivera Cruz
              Secretary                              Executive Director

(SEAL)

Attest:                                    By:_____

                                                 Leonardo J. Torres Berríos
                                                        Secretary
                                                   Board of Directors

7

**IN WITNESS WHEREOF,** the Puerto Rico Public Buildings Authority has caused this Master Sublease Contract to the executed in its name and behalf by its Executive Director, thereunto duly authorized, and its corporate seal to be hereunto affixed and attested by its Secretary, and the affixed and the Department of Education of the Commonwealth of Puerto Rico has caused this Master Sublease Contract to be executed in its name and behalf by its Secretary, thereunto duly authorized, as of the day and year first above written.

DEPARTMENT OF EDUCATION        PUBLIC BUILDINGS AUTHORITY

By:_____        By:_____
   Edward Moreno Alonso, Ed. D.           Eduardo Rivera Cruz
        Secretary                  Executive Director

(SEAL)

Attest

By:_____
   Leonardo J. Torres Berríos
        Secretary
     Board of Directors

7

**IN WITNESS WHEREOF,** the Puerto Rico Public Buildings Authority has caused this Master Sublease Contract to the executed in its name and behalf by its Executive Director, thereunto duly authorized, and its corporate seal to be hereunto affixed and attested by its Secretary, and the affixed and the Department of Education of the Commonwealth of Puerto Rico has caused this Master Sublease Contract to be executed in its name and behalf by its Secretary, thereunto duly authorized, as of the day and year first above written.

DEPARTMENT OF EDUCATION                    PUBLIC BUILDINGS AUTHORITY

By:_____            By:_____
   Edward Moreno Alonso, Ed. D.              Eduardo Rivera Cruz
   Secretary                                 Executive Director

(SEAL)

Attest                                 By:_____
                                              Leonardo J. Torres Berríos
                                              Secretary
                                              Board of Directors

7

[RIDER NO. 1

GENERAL DISPOSITIONS NOT PROVIDED IN STANDARD FORM OF MASTER SUBLEASE CONTRACT OF SCHOOLS FACILITY NO.____ BUT FORMING A PART HERE OF:

1.     The Authority shall provide exterminating service for all public areas of Sublease Facilities. Sublessee shall at Sublessee's expenses provide exterminating service for the demised premises from time to time to the satisfaction of the Authority.

2.     Sublessee shall permit the Authority to erect, use and maintain, pipes and conduits in and through the demised premises. The Authority or the Authority's agents shall have the right to enter the demised premises at all reasonable times to examine the same, and to show them to prospective purchasers or lessees of the Sublease Facilities, and to make such decorations, repairs, alterations, improvements or additions as the Authority may deem necessary or desirable, and the Authority shall be allowed to take all material into and upon said premises that may be required therefore without the same constituting an eviction of Sublessee in whole or in part and rent reserved shall in no wise abate while said decorations, repairs, alterations, improvements, or additions are being made, by reason of loss or interruption of business of Sublessee, or otherwise. During the six months prior to the expiration of term of this sublease, or any renewal term, the Authority may exhibit the premises to prospective tenants or purchasers. If during the last month of the term, Sublessee shall have removed all or substantially all of Sublessee's property there-from, the Authority may immediately enter and alter, renovate and redecorate the demised, without elimination or abatement of rent, or incurring liability to Sublessee for any compensation, and such acts shall have no effect upon this sublease. If Sublessee shall not be personally present to open and permit an entry into said premises, at any, time when for any reason an entry therein shall be necessary or permissible, the Authority or the Authority's agents may enter the same by a master key, or may forcibly enter the same, without rendering the Authority or such agents liable thereof (if during such entry the Authority or the authority's agents shall accord reasonable care to Sublessee's property) and without in any manner effecting the obligations and covenants of this sublease. Nothing herein contained, however, shall be deemed or construed to impose upon the Authority any obligation, responsibility or liability whatsoever, for the care, supervision or repair of the Sublease Facilities or any part thereof, other than as herein provided. The Authority shall also have the right at any time, without the same constituting an actual or constructive eviction and without incurring any liability to Sublessee thereof, to change the arrangement and/or location of entrances or passageways, doors and doorways, and corridors, elevators, stairs, toilets, or other public parts of the Sublease Facilities and to change the name, number or designation by which the Sublease Facilities is commonly known.

3.     The Authority covenants and agrees with Sublessee that upon Sublessee paying the rent and additional rent and observing and performing all the terms, covenants and conditions, on Sublessees part to be observed and performed, Sublessee may

peaceably and quietly enjoy the premises hereby demised, subject nevertheless, to the term and conditions of this sublease and to the around leases, underlying leases and montages hereinbefore mentioned.

4.   If Sublessee requires, uses or consumes water for any purpose in addition to water coolers and ordinary lavatory purposes (of which fact Sublessee constitutes the Authority to be the sole judge) the Authority may install a water meter and thereby measure Sublessee's water consumption for all purposes. Sublessee shall pay the Authority for the cost of the meter and the cost of- the installation thereof and throughout the duration of Sublessee's occupancy Sublessee shall keep said meter and installation equipment in good working order and repair at Sublessee's own cost and expense. Sublessee agrees to pay for water consumed, as shown on said meter as and when bills are rendered, and on default in making such payment the Authority may pay the charges and collect the same from Sublessee.

5.   Sublessee shall not use the electrical system other than for lighting or operation of usual small business machines such as typewriters, adding machines, postage meters, duplicators and the like, without the express written approval of the Authority Sublessee shall pay for any Authority's approved modifications, changes, alterations or additions required to be made to the electrical system so that the same may be used as a source of power.

6.   The Authority reserves the privilege of stopping the service of the air conditioning, elevator, plumbing and electric system at such times as may be necessary by reason of accident, repairs, alterations or improvements to be made, or whenever the Authority, exercising due diligence, is unable to supply such services by order of any civil authority of for any reason beyond the power of the Authority to control, without liability in damages therefore.

7.   The Rules and Regulations in regard to the Sublease Facilities, annexed to this sublease, shall be taken and considered as a part of this instrument, together with such other and further reasonable Rules and Regulations and/or modifications or amplifications of the annexed Rules and Regulations as the Authority in its judgment may make from time to time for the safety, care and cleanliness of the Sublease Facilities and demised premises and the comfort of the Sublessees, and as such shall during the said term, be in all respects observed and performed by Sublessee, and by the officers, employees, agents, servants, licensees and visitors of Sublessee.

8.   The entrances, vestibules, passages, corridors, halls, elevators and stairways shall not be encumbered not obstructed by any Sublessee, Sublessee's agents, servants, employees, licensees or visitors, or be used by them for any purposes other than for ingress arid egress to and from the demised premises. The Authority reserves the right to restrict and regulate the use of aforementioned public areas of the Sublease Facilities by Sublessee, Sublessee's agents, .employees, servants, licensees and visitors and by persons making deliveries to Sublessee, including but not limited to the right to allocate certain elevator or elevators and the hours of use thereof .for delivery service, and the right to designate which Sublease Facilities entrance or entrances shall be used by persons making, deliveries in the Sublease Facilities.

2

9.   No awnings or other projections shall be attached to the outside walls of the Sublease Facilities. No curtains, blinds, shades or screens other than those furnished by the Authority shall be attached to or hung in, or used in connection with, any window or door of the demised premises, without the prior written- consent of the Authority. Such curtains, blinds, shades, screens or other fixtures must be attached in the manner approved by the Authority.

10.  No sign, advertisement, notice or other lettering shall be exhibited, inscribed, painted or affixed by any Sublessee on any widow or part of the outside or inside of the demised premises or building without the prior written consent of the Authority. In the event of the violation of the foregoing by any Sublessee, the Authority may remove same without any liability, and may charge the expenses incurred by such removal to the Sublessee or Sublessees violating this rule, Interior signs on doors can be inscribed, painted or affixed by each Sublessee, at the expense of such Sublessee, and shall be of a size, color and style acceptable t he Authority.

11.  Sublease Facilities directory tablet will be furnished and installed at the expense of the Authority and the number of listings thereon for each Sublessee shall be at the Discretion of the Authority.

12.  The sashes, cash doors, skylights, window, and doors that reflect or admit light and air into the hall, passageways or other public placed in the Sublease Facilities shall not be covered or obstructed by any Sublessee, nor shall any bottles, parcels, or other articles be placed on he windowsills.

13.  No showcases or other articles shall be put in front of or affixed to any part of the exterior of the Sublease Facilities, nor placed, in the halls, corridors or vestibules without the prior written consent of the Authority.

14.  The water and wash closets and other plumbing fixtures shall not be used for any purposes other than those for which hey were constructed, and no sweepings, rubbish, rags, or other substances shall be thrown therein. Al damages resulting from any misuse of the fixtures shall be borne by the Sublessee who, or whose servants, employees, agents, visitors or licensees, shall have caused the same.

15.  No Sublessee shall mark, paint, drill into, or in any way deface any part of the demised premises or the Sublease Facilities of which they form a part. No boring, cutting or stringing of wires shall be permitted except with the prior written consent of the Authority and as the Authority may direct. Only contractors approved in writing by the Authority may be employed by Sublessee for marking repairs, changes or any improvements to demised premises. No Sublessee shall lay floor covering other than rug, so that the same shall come in direct contact with the floor of the demised premises, and if linoleum or other similar floor covering is desired to be used and such use is approved by the Authority, an interlining of builders deadening felt shall be first affixed to the floor, by paste or other material soluble in water, the use of cement or other similar adhesive material being expressly prohibited.

3

4848-7904-7182.3

16.    No bicycles, vehicles or animals of any kind shall be brought into or kept in or about the Sublease Facilities.

17.    No space in the Sublease Facilities shall be used for manufacturing, for the storage of merchandise, for the sale of merchandise, goods or property of any kind at auction, or for lodging, sleeping or any immoral or illegal purposes.

18.    No Sublessee shall make, or permit to be made, any unseemly or disturbing noises or disturb or interfere with, occupants of this or neighboring buildings or premises or those having business with them whether by the use of ,any musical instrument, radio talking machine, unmusical noise, whistling, singing, or in any other way. No Sublessee shall throw anything out of the doors, windows or skylights or down the passageways or elevators shafts nor sweep anything into corridors, hallways or stairs of the Sublease Facilities.

19.    No additional locks or bolts of any kind shall be placed upon any of the doors or windows by any Sublessee, nor shall any changes be made in existing locks or the mechanism thereof without the prior written consent of the Authority. Each Sublessee must, upon the termination of his tenancy, restore to the Authority all keys of stores, shops, booths, stands, offices and toilet rooms, either furnished to, or otherwise procured by, such Sublessee, and in the event of the loss of any keys so furnished, such Sublessee shall pay to the Authority the cost thereof.

20.    All removals, or the carrying in or out of any safes, freight, furniture or bulky matter of any description must take place during the hours which the Authority, or its Agent may determine from time to time.

21.    The Authority shall have the right to prohibit any advertising by any Sublessee which, in the Authority's opinion, tends to impair the reputation of the Sublease Facilities or its desirability as a building for offices, and upon written notice from the Authority's, Sublessee shall refrain from or discontinue such advertising.

22.    No Sublessee shall install or permit the installation or use of any machines dispensing goods for sale, including without limitation foods, beverages, cigarettes or cigars; or permit the delivery of any food or beverages to the demised premises, except by persons approved by the Authority and only under regulations fixed by the Authority. No food or beverages shall be carried in the public halls and elevators of the Sublease Facilities except in closed containers.

23.    Each Sublessee shall, at his expense, provide artificial light for the employees of the Authority while doing janitor service or other cleaning, and in making repairs or alterations in said demised premises.

24.    Canvassing, soliciting and peddling in the Sublease Facilities is prohibited and each Sublessee shall cooperate to prevent the same.

25.    There shall not be used in any space, or in the public halls of the Sublease Facilities, either y any Sublessee or by jobbers or others, in the delivery or receipt of

4

merchandise-, any hand trucks, except those equipped with rubber tires and side guards.

26. Without first obtaining the Authority's written permission, no Sublessee shall install, attach or bring into the demised premises any equipment, other than normal office equipment such as electric typewriters, calculators and the like, or any instrument, dict refrigerator, air conditioner, water cooler or any other appliance requiring the use of gas, electric current or water. Any breach of this covenant will authorize the Authority to enter the demised premises, remove whatever Sublessee may have so installed, attached or brought in, and charge the cost of such removal, and any damage that may be sustained thereby, as additional rent, payable at the option of the Authority, immediately or with the next month's rent accruing under this sublease.

27. The Authority reserves the right to exclude from the Sublease Facilities during non-business, such as before 8:00 AM and after 6:00 PM in weekdays, before 8:00 AM and after 1:00 PM on Saturday and half holidays and during all hours on Sundays and full holidays-all persons not authorized by Sublessee in writing, by pass or otherwise, to have access to the Sublease Facilities and demised. The Authority, from time to time shall provide Sublessees with a schedule of such non-business hours. Each Sublessee shall be responsible for all persons authorized to have access to the Sublease Facilities and shall be liable to the Authority for all of their acts while in the Sublease Facilities. The Authority may require all persons given access to the Sublease Facilities during non-business hours to sign a register on entering and leaving the Sublease Facilities.

28. The Authority shall, through the air conditioning equipment of said Sublease Facilities, furnish to demises premised air conditioning throughout the year from Monday to Friday from 8:00 AM to 5:00 PM.

Sublessee agrees to keep and cause to be kept closed all windows in the demised premises and to lower and close the blinds when necessary because of the suns position, and Sublessee agrees at all times to cooperate fully with he Authority and to abide by all the regulations and requirements which the Authority may prescribe for the proper functioning and protection of said air conditioning system. In Addition to any and ail other rights and remedies which the Authority may invoke for a violation or breach by Sublessee of any of the agreements contained in the preceding paragraph, the Authority may discontinue said , air conditioning service without any diminution or abatement of rent or other compensation to Sublessee whatsoever. The authority, throughout the term of this sublease, shall have free and unrestricted access to any and all air conditioning facilities in the demised premises. The Authority reserves the right to interrupt, curtail, stop or suspend such air conditioning when necessary by reason of accident, or of repairs, alterations or improvements in the judgment of he Authority desirable or necessary to be made, or of difficulty or inability in securing supplies or labor, or of strikes, or of any other cause beyond the reasonable control of the Authority, whether such other cause be similar of dissimilar to those hereinbefore specifically mentioned. No diminution or abatement of rent or other compensation shall or Mil be claimed by Sublessee, nor shall this sublease or any of the obligations of Sublessee be affected or reduced, by

5

reason of interruption or curtailment of such air conditioning, when such interruption or curtailment or stoppage or suspension shall be due to failure of electric power or accident, or to repairs, alterations or improvement in the judgment or the Authority desirable or necessary to be made, or to difficulty or inability in securing supplies or labor, or to strikes, or to any other cause beyond the reasonable control of the Authority, whether such other cause be similar or dissimilar to those hereinbefore specifically mentioned. The authority shall not be required to furnish, and Sublessee shall not be entitled to receive, any air conditioning service during any period wherein Sublessee shall be in default in the payment of rent as specified in this sublease.

Sublessee agrees that in the event its occupancy or electrical load or both of them shall exceed such design capacity, the cost to the Authority of providing the necessary additional, air conditioning capacity, including but not limited lo any necessary equipment, duct work or the like together with the cost of operation thereof, shall be for account of Sublessee and shall be payable by Sublessee to the authority, based upon the capacity of such additional equipment or the cost of otherwise providing such additional capacity. The Authority shall furnish Sublessee in writing with an estimate of the cost of any such additional air conditioning equipment together with the additional monthly amount for operating and additional equipment or providing such additional capacity, and shall receive Sublessee's written approval thereof prior to providing such additional air conditioning capacity.

29.  The Authority shall provide water in the Sublease Facilities of which the demised premises are a part for normal lavatory and toilet purposes and for water coolers.

30.  The Authority shall provide window-cleaning service for all office areas demised hereby. Sublessee will not clean nor require, permit, suffer or allow any window in the demised premises to be cleaned from the outside, except as shall be done by the Authority, and except for such windows as may be cleaned while standing at ground level, which if done by Sublessee shall be at Sublessee's risk.

31.  If the Authority furnishes additional electric current to Sublessee then and in that event Sublessee agrees to compensate the Authority for furnishing such electric current as an additional service as hereinafter provided, and such furnishing or electric current by the Authority to Sublessee shall be through the existing electrical system of the Sublease Facilities for Sublessee's reasonable use of such lighting fixtures and electrical appliances and equipment as the Authority may permit to be installed in the demised premises. Sublessee agrees that an electrical consultant, select by the Authority, may make a survey of the lighting and power load to determine the average monthly consumption- of electric current in the demised premises; and Sublessee further agrees that the findings of the electrical consultants as to the, cost of providing electrical current to be paid by Sublessee to the Authority based upon such average monthly electric current consumption shall be conclusive and binding upon the parties and Sublessee shall pay such amount monthly in advance on the same day of each and every month as the rent reserved herein shall be paid for each month from the commencement of the term of this sublease. If the electric current rates or charges payable by the Authority shall be increased or decreased, then and in

such event the cost of providing electrical current to Sublessee shall be correspondingly increase or decreased.

Sublessee agrees to make no alterations or additions to its lighting fixtures, electrical appliances or equipment without first obtaining the written consent of the Authority in each instance in order to prevent overloading of the Sublease Facilities' electrical system. Sublessee agrees that the Authority, its agent or consultant may make surveys from time to time in the demised premises respecting lighting fixtures, electrical appliances and equipment and use of electrical current. Sublessee covenants and agrees that at all times its use of electrical current shall never exceed the capacity of existing feeders to the Sublease Facilities or of the risers, wiring installation or electrical system of the Sublease Facilities.

32.   The initial painting (consisting of a prime coat and two finish coats) and subsequent repainting (consisting of touch up and one coat) every five (5) years will be provided by the Authority.

A credit of five (5) cents per square foot shall be given by the Authority to Sublessee for substitution of durable wall coverings, such as vinyl, flexwood, grass cloth, or other material similar in quality or cost. Where this credit is granted, the Authority shall not be required to performs any of the repainting specified above on those areas for which a credit is granted.

7

# EXHIBIT A

## MASTER LEASE CONTRACT

*Master Lease Contract, dated as of December 22, 2011, with the Department of Transportation   and Public Works of the Commonwealth, acting as custodian of certain properties belonging to the Commonwealth, as lessor, the facilities described in Exhibit B to this Master Sublease Contract (said facilities being hereinafter called the "Sublease Facilities") that are in turn to be subleased by the Authority   to the Sublessee.*

GOBIERNO DE PUERTO RICO
DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS
SECRETARÍA AUXILIAR DE ADMINISTRACIÓN

## CONTRATO DE ARRENDAMIENTO

----En la ciudad de San Juan, Puerto Rico, hoy ___ de diciembre de dos mil once (2011).

## COMPARECEN

----DE LA PRIMERA PARTE: **EL GOBIERNO DE PUERTO RICO**, representado por el DEPARTAMENTO DE TRANSPORTACIÓN Y OBRAS PÚBLICAS, Seguro Social Número Patronal 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, como custodio de las propiedades del Gobierno de Puerto Rico, a su vez representado en este acto por el **Sr. Amílcar González Ortiz**, Secretario Auxiliar de Administración del Departamento de Transportación y Obras Públicas, mayor de edad, soltero y vecino de Coamo, Puerto Rico, quien comparece de conformidad con la facultad que le fuera delegada mediante la Resolución Núm. 2010-27 de 11 de octubre de 2010, por el Honorable Rubén A. Hernández Gregorat, Secretario de Transportación y Obras Públicas, en su carácter de depositario de los poderes del Estado y actuando de conformidad con las facultades que le confiere el Inciso (b) del Artículo 1 de la Ley 12 del 10 de diciembre de 1975, según enmendada, conocida como "La Ley para Facultar al Secretario del DTOP a Vender, Permutar, Gravar y Arrendar Propiedad del Gobierno de Puerto Rico que No sea de Uso Público", según enmendada, en adelante el "ESTADO". ------------------------



----DE LA SEGUNDA PARTE: **LA AUTORIDAD DE EDIFICIOS PÚBLICOS DE PUERTO RICO** representado por el **Sr. Eduardo Rivera Cruz,** en su capacidad de Director Ejecutivo de la Autoridad de Edificios Públicos de Puerto Rico, con seguro social patronal 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, mayor de edad, casado y vecino de Toa Baja, Puerto Rico, en adelante denominado la "AUTORIDAD". --------

## EXPONEN

-----Que las partes han convenido libre y voluntariamente celebrar este Contrato en donde el **ESTADO** cede a la **AUTORIDAD**, el uso y administración de los inmuebles que se describen en el **Exhibit A** de este Contrato.------------------------------------------------------

-----A tal efecto, firman este Contrato mediante el presente documento, que otorgan bajo las siguientes: -------------------------------------------------------------------------

## CLAUSULAS Y CONDICIONES

SR. EDUARDO RIVERA CRUZ
DIRECTOR EJECUTIVO
AUTORIDAD DE EDIFICIOS PÚBLICOS DE PUERTO RICO
QUALIFIED ZONE ACADEMY BONDS

-----PRIMERA: Las partes hacen constar que su conocimiento sobre la titularidad en derecho de los inmuebles objeto de este Contrato a favor del Gobierno de Puerto Rico y por ende, su custodia por el Secretario de Transportación y Obras Públicas. De surgir un problema con la titularidad del ESTADO, el Departamento se compromete a proteger la posesión y administración de los inmuebles por la AUTORIDAD y sus arrendamientos con terceros. -----------------------------

----SEGUNDA: Este Contrato entrará en vigor desde su otorgamiento y tendrá una vigencia de treinta (30) años; renovable automáticamente por el mismo tiempo y bajo los mismos términos y condiciones, a no ser que medie comunicación escrita adversa, previa y/o se modifiquen los términos del Contrato-------------------------------------------------------------------------

----TERCERA: El canon de arrendamiento será de $10.00 por el término de arrendamiento establecido en la cláusula número SEGUNDA de este Contrato y será pagadero al momento de firmarse este Contrato.-----------------------------------------------------------------------

-----CUARTA: La AUTORIDAD podrá arrendar, subarrendar y/o enajenar la posesión, uso y/o administración del inmueble objeto de este Contrato sin el previo consentimiento o autorización del ESTADO siempre y cuando dicho arrendamiento, subarrendamiento y/o enajenación sea con una instrumentalidad del Gobierno de Puerto Rico. ------------------------------------------

----QUINTA:   Será responsabilidad de la AUTORIDAD, respetar las servidumbres establecidas sobre la propiedad, impedir que se establezcan nuevas servidumbres sin el consentimiento expreso del ESTADO y permitir la entrada cuantas veces sea necesario de empleados del ESTADO, debidamente identificados, a los fines de examinar la propiedad. -------------------------------

-----SEXTA:   Este Contrato es un acto de administración y no de disposición donde el título de la propiedad quedará a favor del GOBIERNO DE PUERTO RICO.---------------------------------

-----SÉPTIMA: La AUTORIDAD, asumirá completa responsabilidad por cualquier daño o perjuicio que ocurra a persona natural o jurídica, propiedad pública o privada, en el predio objeto de este Contrato.----------------------------------------------------------------------------------

-----OCTAVA:   Cualquier edificación o mejora erigida con posterioridad a su vigencia, pasará a ser propiedad del ESTADO en cualquier momento que este Contrato quede sin efecto, sin que venga el ESTADO obligado a pagar la AUTORIDAD o a cualquier ocupante, compensación o indemnización alguna por dichas estructuras, edificaciones o mejoras. ------------------------

2

----NOVENA: Deberá la **AUTORIDAD**, mantener en buen estado los desagües, acequias y canales existentes, si alguna, o que pudiera realizarse en el futuro en la propiedad, reparar y mantener en buen estado las verjas existentes, si alguna, y mantener debidamente cerradas las áreas colindantes con las vías públicas. --------------------------------------------------------------------------

----**DÉCIMA**: La **AUTORIDAD** podrá desarrollar en la propiedad antes descrita proyectos relacionados a las escuelas públicas y el sistema de educación del Gobierno de Puerto Rico y queda autorizada a llevar a cabo todos los actos necesarios para viabilizar mejoras de infraestructura en las escuelas públicas por sí o por terceros según los poderes que le confiere su ley habilitadora - Ley 56 del 19 de junio de 1958, según enmendada – y demás leyes vigentes ------

----**DÉCIMA PRIMERA**: Será responsabilidad de la **AUTORIDAD**, obtener los permisos que requieran las autoridades gubernamentales correspondientes para el desarrollo de la actividad a llevarse a cabo en la propiedad. ----------------------------------------------------------------------------------

----**DÉCIMA SEGUNDA**: La propiedad objeto de este Contrato será mantenida limpia y en buen estado al costo de la **AUTORIDAD**. El costo de las mejoras útiles y necesarias también será de su cuenta, sujeto a lo establecido en la cláusula número OCTAVA, sobre mejoras permanentes. --------

----**DÉCIMA TERCERA**: EL **ESTADO** se reserva el derecho de utilizar aquellos caminos existentes en los predios objeto de este Contrato que sean necesarios o convenientes para proveerle acceso a otros terrenos utilizables por el propio **ESTADO**, sus arrendatarios, usuarios o sucesores.------------------------------------------------------------------------------------------------------

----**DÉCIMA CUARTA**: Este Contrato entrará en vigor tan pronto la **AUTORIDAD**, lo firme y cumpla con las condiciones previas aquí establecidas. Se concede un término de **noventa 90** días a partir de la firma de este Contrato para que la **AUTORIDAD** entregue la documentación relacionada con los seguros que aquí se requieren a favor del **ESTADO**.-------------------------------------

----**DÉCIMA QUINTA**: La **AUTORIDAD**, presentará una póliza expedida por una compañía de seguros autorizada a hacer negocios en Puerto Rico, que sea aceptable al **ESTADO**, para cubrir el riesgo de incendios extensivo a la propiedad y a todo el equipo incluido en la misma, por una suma no menor de **VEINTE MIL DÓLARES ($20,000,000)**. De igual manera, la **AUTORIDAD** obtendrá y mantendrá una póliza de responsabilidad pública expedida por una compañía de seguros autorizada a hacer negocios en Puerto Rico, que sea aceptable al **ESTADO** y que cubra daños personales o muerte por límites no menores de **TRESCIENTOS MIL DÓLARES ($300,000.00)** por

3

SR. EDUARDO RIVERA ORTIZ
DIRECTOR EJECUTIVO
AUTORIDAD DE EDIFICIOS PÚBLICOS DE PUERTO RICO
QUALIFIED ZONE ACADEMY BONDS

persona, **CIEN MIL DÓLARES ($100,000.00)** por accidente y **CIENTO VEINTICINCO MIL DÓLARES ($125,000.00)** por daños a la propiedad. Dicha póliza debe cubrir, además, "Products Liability" hasta un "Lessor Risk" y "Premises Medical Payment". Dicha póliza será extensiva al área utilizada. Contendrá dicha póliza una cláusula de relevo (Save or Hold Harmless Clause) mediante la cual la **AUTORIDAD** releva al **ESTADO** de responsabilidad por cualquier reclamación, acción o demanda que surja directa o indirectamente en relación con este Contrato y/o en relación con el establecimiento y operación de la **AUTORIDAD** e incluirá el que dicha póliza no podrá ser cancelada y estará en vigor durante la vigencia del Contrato. ------------------------------------

Las pólizas requeridas deberán estar endosadas a nombre del **ESTADO** y copia de dichas pólizas y un certificado sobre las mismas, expedido por la compañía aseguradora, deberá ser entregada al **ESTADO** por la **AUTORIDAD**, así como evidencia del pago anual de las primas de las referidas pólizas durante el término del Contrato. La **AUTORIDAD**, será responsable del pago de las primas correspondientes a las pólizas antes requeridas.------------------------------------

-----**DÉCIMA SEXTA:** La **AUTORIDAD** no instalará ni consentirá la instalación de rótulos, pancartas, ni cualquier otra clase de anuncio, excepto cuando se cumpla estrictamente con los requisitos de las leyes y reglamentos que sean aplicables, incluyendo el o los permisos de la Administración de Reglamentos y Permisos (ARPE) y/o de cualquier otro organismo gubernamental pertinente y la autorización por escrito del **ESTADO**. La tramitación de dichos permisos será de la exclusiva responsabilidad de la **AUTORIDAD** y constituye una condición indispensable para la vigencia de este Contrato. ------------------------------------

-----**DÉCIMO SÉPTIMA:** La **AUTORIDAD** vendrá obligado a cumplir con todas las disposiciones de seguridad y saneamiento establecidas por todas las agencias reguladoras gubernamentales.------

-----**DÉCIMO OCTAVA:** El **ESTADO** no será responsable de daños causados por actos de huelgas, manifestaciones públicas o vandalismo. ------------------------------------

-----**DÉCIMO NOVENA:** La **AUTORIDAD** se obliga a proveer y mantener a su propio costo, la limpieza, disposición y recogido de basura y fumigación periódica de la propiedad objeto de este Contrato, así como cualquier otro servicio necesario para la operación del negocio que se vaya a establecer.------------------------------------

SR. EDUARDO RIVERA CRUZ
DIRECTOR EJECUTIVO
AUTORIDAD DE EDIFICIOS PÚBLICOS DE PUERTO RICO
QUALIFIED ZONE ACADEMY BONDS

Leído el presente Contrato por todas las partes contratantes, lo encuentran conforme, ya que tiene la expresión fiel y exacta de lo convenido por ellos, por lo cual se ratifican en todas las cláusulas y condiciones, libremente lo inician en todas las páginas.-----------------------------------------

-----**VIGÉSIMA**: El incumplimiento de cualesquiera de las condiciones aquí estipuladas, dará derecho al **ESTADO** rescindir este Contrato y requerir el desalojo inmediato de la propiedad o el resarcimiento de daños y perjuicios, o ambas, según los méritos del caso, y en la eventualidad de que el **ESTADO** se vea precisado a acudir a los Tribunales de Justicia para dilucidar cualquier controversia originada por tal incumplimiento, las partes acuerdan, convienen y aceptan someterse a la jurisdicción del Tribunal de Primera Instancia, Sala Superior de San Juan, entiéndase que los gastos de honorarios de abogado en que pueda incurrir el Departamento serán pagados por la **AUTORIDAD**.----------------------------------------------------------------------------------------------------------------

_____
AMILCAR GONZALEZ ORTIZ, Ph. D.c
SECRETARIO AUXILIAR DE ADMINISTRACIÓN
DEPARTAMENTO DE TRANSPORTACIÓN
Y OBRAS PÚBLICAS

_____
SR. EDUARDO RIVERA CRUZ
DIRECTOR EJECUTIVO
AUTORIDAD DE EDIFICIOS PÚBLICOS

5

EXHIBIT A

LISTA DE LOS INMUEBLES

| MUNICIPIO | ESCUELA | NIVEL | OMEP | COMPARTIDA OMEP/AEP |
|-----------|---------|-------|------|---------------------|
| VEGA BAJA | BRIGIDA ALVAREZ RODRIGUEZ | SECUNDARIO | SÍ | |
| MOROVIS | ELEMENTAL URBANA | ELEMENTAL | SÍ | |
| ARECIBO | SU FEDERICO DEGETAU | SEGUNDA UNIDAD | SÍ | |
| ARECIBO | FRANCISCO PACHIN MARIN | ELEMENTAL | | SÍ |
| AGUADILLA | SU  ADAMS | SEGUNDA UNIDAD | SÍ | |
| COROZAL | FIDEL LOPEZ COLON | ELEMENTAL | SÍ | |
| GUAYNABO | RAMON MARIN SOLA | ELEMENTAL | SÍ | |
| ARECIBO | SU RAMON E BETANCES | SEGUNDA UNIDAD | | SÍ |
| PONCE | HERMINIA GARCIA | ELEMENTAL | SÍ | |
| TOA ALTA | JOSE M DEL VALLE | ELEMENTAL | SÍ | |
| SAN JUAN | FRAY BARTOLOME DE LAS CASAS | ELEMENTAL | SÍ | |
| BAYAMÓN | CARMEN GOMEZ TEJERA | ELEMENTAL | SÍ | |
| SAN JUAN | SU INES MARIA MENDOZA | TODOS LOS NIVELES | SÍ | |
| SAN JUAN | RAMON VILA MAYO | SUPERIOR | SÍ | |
| BAYAMÓN | JUAN RAMON JIMENEZ | INTERMEDIO | SÍ | |
| SAN JUAN | GABRIELA MISTRAL | SUPERIOR | SÍ | |
| SAN JUAN | ERNESTO RAMOS ANTONINI | INTERMEDIO | SÍ | |
| COROZAL | SU NICOLAS RODRIGUEZ | SEGUNDA UNIDAD | SÍ | |
| CAGUAS | NICOLAS AGUAYO ALDEA | INTERMEDIO | SÍ | |
| SAN JUAN | FELIPE GUTIERREZ | ELEMENTAL | SÍ | |
| VEGA BAJA | MANUEL MARTINEZ DAVILA | SEGUNDA UNIDAD | SÍ | |
| BAYAMÓN | TOMAS C ONGAY | SUPERIOR | SÍ | |
| SAN JUAN | CENTRAL ARTES VISUALES | SECUNDARIO | SÍ | |
| CAGUAS | JOSE GAUTIER BENITEZ | SUPERIOR | SÍ | |
| AGUADILLA | ANTONIO BADILLO HERNANDEZ | INTERMEDIO | SÍ | |
| BAYAMÓN | LUIS PALES MATOS | SECUNDARIO | SÍ | |
| COROZAL | EMILIO R DELGADO | SUPERIOR | SÍ | |
| GUAYNABO | MARGARITA JANER PALACIOS | SUPERIOR | SÍ | |
| YABUCOA | SU MARCOS SANCHEZ | SEGUNDA UNIDAD | | SÍ |
| SANTA ISABEL | ESTHER RIVERA | ELEMENTAL | SÍ | |
| PEÑUELAS | SU JORGE LUCAS VALDIVIESO | SEGUNDA UNIDAD | SÍ | |
| SAN JUAN | DR PEDRO G GOYCO | ELEMENTAL | SÍ | |
| CAROLINA | FACUNDO BUESO | INTERMEDIO | SÍ | |
| SAN JUAN | JOSE JULIAN ACOSTA | SECUNDARIO | SÍ | |
| SAN JUAN | RAMON POWER Y GIRALT | SUPERIOR | SÍ | |

## EXHIBIT B

List of Sublease Facilities

| PUEBLO | | ESCUELA | NIVEL | DTOP | COMPARTIDA |
|--------|--|---------|-------|------|------------|
| VEGA BAJA | | BRIGIDA ALVAREZ RODRIGUEZ | SECUNDARIO | SÍ | |
| MOROVIS | | ELEMENTAL URBANA | ELEMENTAL | SÍ | |
| ARECIBO | | SU FEDERICO DEGETAU | SEGUNDA UNIDAD | SÍ | |
| ARECIBO | | FRANCISCO PACHIN MARIN | ELEMENTAL | | SÍ |
| AGUADILLA | | SU  ADAMS | SEGUNDA UNIDAD | SÍ | |
| COROZAL | | FIDEL LOPEZ COLON | ELEMENTAL | SÍ | |
| GUAYNABO | | RAMON MARIN SOLA | ELEMENTAL | SÍ | |
| ARECIBO | | SU RAMON E BETANCES | SEGUNDA UNIDAD | | SÍ |
| PONCE | | HERMINIA GARCIA | ELEMENTAL | SÍ | |
| SAN JUAN | | SOTERO FIGUEROA | INTERMEDIO | SÍ | |
| TOA ALTA | | JOSE M DEL VALLE | ELEMENTAL | SÍ | |
| SAN JUAN | | FRAY BARTOLOME D/L CASAS | ELEMENTAL | SÍ | |
| BAYAMÓN | | CARMEN GOMEZ TEJERA | ELEMENTAL | SÍ | |
| SAN JUAN | | SU INES MARIA MENDOZA | TODOS LOS NIVELES | SÍ | |
| SAN JUAN | | RAMON VILA MAYO | SUPERIOR | SÍ | |
| BAYAMÓN | | JUAN RAMON JIMENEZ | INTERMEDIO | SÍ | |
| SAN JUAN | | GABRIELA MISTRAL | SUPERIOR | SÍ | |
| SAN JUAN | | ERNESTO RAMOS ANTONINI | INTERMEDIO | SÍ | |
| COROZAL | | SU NICOLAS RODRIGUEZ | SEGUNDA UNIDAD | SÍ | |
| CAGUAS | | NICOLAS AGUAYO ALDEA | INTERMEDIO | SÍ | |
| SAN JUAN | | FELIPE GUTIERREZ | ELEMENTAL | SÍ | |
| VEGA BAJA | | MANUEL MARTINEZ DAVILA | SEGUNDA UNIDAD | SÍ | |
| BAYAMÓN | | TOMAS C ONGAY | SUPERIOR | SÍ | |
| SAN JUAN | | CENTRAL ARTES VISUALES | SECUNDARIO | SÍ | |
| CAGUAS | | JOSE GAUTIER BENITEZ | SUPERIOR | SÍ | |
| AGUADILLA | | ANTONIO BADILLO HERNANDEZ | INTERMEDIO | SÍ | |
| BAYAMÓN | | LUIS PALES MATOS | SECUNDARIO | SÍ | |
| COROZAL | | EMILIO R DELGADO | SUPERIOR | SÍ | |
| GUAYNABO | | MARGARITA JANER PALACIOS | SUPERIOR | SÍ | |
| YABUCOA | | SU MARCOS SANCHEZ | SEGUNDA UNIDAD | | SÍ |
| SANTA ISABEL | | ESTHER RIVERA | ELEMENTAL | SÍ | |
| PEÑUELAS | | SU JORGE LUCAS VALDIVIESO | SEGUNDA UNIDAD | SÍ | |
| SAN JUAN | | DR PEDRO G GOYCO | ELEMENTAL | SÍ | |
| CAROLINA | | FACUNDO BUESO | INTERMEDIO | SÍ | |
| SAN JUAN | | JOSE JULIAN ACOSTA | SECUNDARIO | SÍ | |
| SAN JUAN | | RAMON POWER Y GIRALT | SUPERIOR | SÍ | |