# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors. | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>    as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>    Debtor. | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

**MOTION OF BRUCE BENNETT TO QUASH OR MODIFY THE
SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION**

To the Chambers of the Honorable Judge Judith G. Dein:

Pursuant to Rules 7026, 7034 and 9016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 26, 34 and 45 incorporated therein of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this proceeding by 48 U.S.C. § 2170, Bruce Bennett, counsel for certain secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico[1] (the "Movants"), respectfully moves to quash or modify the Subpoena To Testify At A Deposition In A Civil Action (the "Motion") that the Financial Oversight & Management Board for Puerto Rico (the "Oversight Board") has served. In support of this Motion, Mr. Bennett states as follows:

## INTRODUCTION

1. On April 26, 2019 at 6:35 PM EDT, the Oversight Board served Mr. Bennett, a partner of Jones Day and outside counsel for Movants, with a subpoena under Federal Rule 45, purporting to command his appearance at a deposition in New York on May 7, 2019, and further purporting to command the production of documents at the deposition (the "Subpoena").

2. Federal Rule 45(d)(3) permits the Court to quash or modify a subpoena on timely motion. Here, the Subpoena should be quashed, or at least modified, for several reasons. First, the Subpoena gives Mr. Bennett little more than one week to prepare for and appear at a deposition at which he is also purportedly required to produce documents. The Subpoena therefore does not allow for a reasonable time to comply. Fed. R. Civ. P. 45(d)(3)(A)(i). Second, the Subpoena seeks discovery of documents and information that are subject to the attorney-client privilege, work product protection, common interest doctrine, and other applicable privileges. Fed. R. Civ. P.

---

[1] These secured creditors are Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P..

- 1 -

45(d)(3)(A)(iii). Third, and equally troubling, the Oversight Board is attempting to take the deposition of opposing counsel in a hotly contested case. Because such depositions are strongly disfavored, the Court should impose strict limitations upon the scope and duration of the deposition of Mr. Bennett.

## BACKGROUND

3. On April 26, 2019 at 6:35 PM EDT, the Oversight Board served the Subpoena on Bruce Bennett—a partner in the Los Angeles, California office of Jones Day—under Federal Rule 45, and ordered him to present himself at the New York offices of Proskauer Rose LLP on May 7, 2019, at 9:00 AM. Bennett Decl. ¶ 2; Ex. A. The Oversight Board's justification for the Subpoena was Mr. Bennett's submission of a declaration on March 21, 2019, in which Mr. Bennett discussed a meeting he had on April 27, 2016 with the Commonwealth of Puerto Rico's then-advisor and representative, James Millstein. Bennett Decl. ¶ 7; *see also* Docket 5972-1 in Case No. 17-03283-LTS.

4. The Subpoena also required Mr. Bennett to produce documents when he appeared for the deposition. The document requests included: "(1) All Documents and Communications relating to the April 27, 2016 meeting referenced in the . . . [March 21, 2019] Bennett Declaration"; "(2) All notes, including but not limited to handwritten notes and audio recordings (including dictated notes), concerning the April 27, 2016 meeting referenced in the Bennett Declaration"; and "(4) All Documents used, referenced, or relied on to prepare the Bennett Declaration." Subpoena, Ex. A. Mr. Bennett interposed overbreadth and other objections to the subpoena duces tecum pursuant to Rule 45(d)(2)(B), but Mr. Bennett intends to comply with the

subpoena duces tecum to the extent he has responsive, non-privileged materials, and in accordance with his objections. Bennett Decl. ¶ 8, Ex. D.[2]

## ARGUMENT

### I. The Subpoena Commanding Mr. Bennett's Testimony At A Deposition Is Defective.

5. The Subpoena to Mr. Bennett is defective for several reasons. First, the Subpoena does not provide a reasonable time to comply under Rule 45(d)(3)(A)(i). The Oversight Board served the Subpoena on Friday, April 26, 2019, at 6:35 PM EDT, after the close of business. The Subpoena nevertheless demands compliance, including production of documents and service of a privilege log, at 9:00 AM EDT on Wednesday, May 7, 2019. The Oversight Board further set that time and date without first conferring with Mr. Bennett or other of Movants' counsel from Jones Day about whether Mr. Bennett is even available on May 7. Regardless, that time for compliance—eleven calendar days and less than seven full business days—is unreasonable and unduly burdensome, particularly where Mr. Bennett's preparation for the deposition will require significant time and effort assessing which types of questions are acceptable, and which would improperly invade the attorney-client privilege or work product protection. *See, e.g.*, *In re Rule 45 Subpoena Issued to Cablevision Sys. Corp. Regarding IP Address 69.120.35.31*, No. MISC 08–347(ARR)(MDG), 2010 WL 2219343 at \*6 (E.D.N.Y. Feb. 5, 2010) (collecting cases and finding less than 14 days from date of service to be unreasonable time to comply with subpoena); *Brown v. Hendler*, No. 09 CIV. 4486 RLE, 2011 WL 321139, at \*2 (S.D.N.Y. Jan. 31, 2011) (holding nine days' notice of deposition unreasonable); *Mem'l Hospice, Inc. v. Norris*, No. 2:08–CV–084–B–A, 2008 WL 4844758, at \* 1 (N.D. Miss. Nov. 5, 2008) (holding eight days to comply

---

[2] A similar subpoena duces tecum also was served upon Jones Day, which served a separate objection to that subpoena. Bennett Decl. ¶¶ 2, 9, Ex. E.

unreasonable); *United States v. Woods*, 931 F. Supp. 433, 442, n.3 (E.D. Va. 1996) (seven days unreasonable).

6. The short time between the Oversight Board's service of the Subpoena and the May 7, 2019 date for compliance is a problem of the Oversight Board's own making. The Oversight Board has stated that the reason it served the Subpoena is to obtain discovery related to the March 21, 2019 Declaration of Bruce Bennett, Docket 5972-1 in Case No. 17-03283-LTS. The Oversight Board, however, nevertheless waited more than five weeks to serve the Subpoena, which stands in stark contrast to the 11-calendar-day compliance deadline set forth in the Subpoena. The Oversight Board's lassitude in serving the Subpoena does not justify the unreasonable time constraints it now seeks to impose upon Mr. Bennett.

7. Second, the Subpoena should be quashed or limited under Rule 45(d)(3)(A)(iii) to the extent it seeks testimony or documents that are privileged from disclosure under the work product doctrine. Request 4 of the Subpoena demands production of "(4) All Documents used, referenced, or relied on to prepare the Bennett Declaration." This demand is overbroad. Counsel's decision concerning which documents to use and rely upon in preparing court filings is clearly work product, and opinion work at that. *Sporck v. Peil*, 759 F.2d 312, 316 (3rd Cir. 1985) ("[T]he selection and compilation of documents by counsel in this case in preparation for pretrial discovery falls within the highly-protected category of opinion work product."); *see also Hickman v. Taylor*, 329 U.S. 495 (1947) (preventing disclosure of notes counsel took during interview with possible witness in preparation of possible litigation). The Subpoena should be quashed to the extent that it seeks the production of such materials or testimony about such matters. *See* Fed. R. Civ. P. 26(b)(3)(A)–(B); Fed. R. Civ. P. 45(d)(3)(A)(iii).

8. Third, the Subpoena should be strictly limited in its scope because of the very reason that it seeks to take the deposition of opposing counsel. In the First Circuit, "the procurement of trial testimony from opposing counsel is generally disfavored." *Bogosian v. Woloohojian Realty Corp.*, 323 F.3d 55, 66 (1st Cir. 2003); *Emhart Indus., Inc. v. New England Container Co.*, Nos. 06–218 S, 11–023 S., 2013 WL 6001076, at *2 (D.R.I. Nov. 12, 2013) ("[T]he practice of deposing opposing counsel has been described as a negative development in the area of litigation, and one that should be employed only in limited circumstances."). Courts therefore are required to consider three factors in determining whether to allow the deposition of opposing counsel: "whether (i) the subpoena was issued primarily for purposes of harassment, (ii) there are other viable means to obtain the same evidence, and (iii) to what extent the information sought is relevant, nonprivileged, and crucial to the moving party's case." *Bogosian*, 323 F.3d at 66.

9. Here, the Oversight Board's Subpoena fails on all three fronts. As to the first factor, Mr. Bennett submitted his March 21, 2019 Declaration five weeks ago, but the Oversight Board nevertheless waited until after business hours on a Friday to serve the Subpoena seeking deposition testimony and documents from opposing trial counsel, all on 11 days' notice. Worse, when the Oversight Board finally served the Subpoena, it included a threat to seek Mr. Bennett's disqualification from further representation of the Movants. Bennett Decl., Ex. C. Those facts alone reveal the harassment inherent in—and intended by—the Oversight Board's Subpoena.

10. As to the second factor, the Oversight Board plainly has another viable means to obtain evidence about the April 27, 2016 meeting: James Millstein and his partner Elizabeth Abrams, the Commonwealth's advisors who were both present at the meeting. The Oversight Board, however, has never explained why it cannot learn about the April 2016 meeting from the Commonwealth's own representatives at the meeting. Particularly given that Mr. Millstein and

Ms. Abrams are presumably available to the Oversight Board (as the Commonwealth's former advisors), and that any information they provide about the meeting would avoid the significant privilege issues created by the Subpoena to Mr. Bennett, the Oversight Board should depose Mr. Millstein and Ms. Abrams. It is telling of the Oversight Board's true motive that the Board has not even tried to do so.

11. Finally, as to the third factor, there is no question that the deposition will be fraught with privilege issues. The Subpoena purports to command the Movants' trial counsel to discuss information that is subject to the attorney-client privilege, work product protection and common interest doctrine—particularly if any question strays beyond Mr. Bennett's recollection of what was said at the April 27, 2016 meeting. Nevertheless, there is no indication that the Oversight Board has any intention of avoiding these privilege issues. To the contrary, the document requests included with the Subpoena, which broadly seek "[a]ll Documents and Communications relating to the April 27, 2016 meeting," Subpoena, Ex. A at Req. No. 1, suggest the Oversight Board has the exact opposite intent. The Oversight Board should not be allowed to invade the attorney-client privilege or work product protections so easily.[3]

## II. The Subpoena Should Be Modified To Include Limitations Upon The Length, Scope And Subject Matter.

12. For these reasons, the Court should place strict limits on the deposition. The Oversight Board's ostensible reason for seeking to depose Mr. Bennett is that he submitted a Declaration on March 21, 2019, about the April 27, 2016 meeting he attended with Mr. Millstein and others. Accordingly, if the Court is inclined to allow the deposition to proceed, it should take

---

[3] The Subpoena is defective for two additional reasons as well. First, the Oversight Board failed to tender a witness fee or a reasonable mileage allowance, Bennett Decl. ¶ 6, as required by Federal Rule 45(b)(1). *See, e.g.*, *In re Dennis*, 330 F.3d 696, 704-05 (5th Cir. 2003) (witness fee and reasonable mileage allowance must be tendered with the subpoena); *Productos Mistolin, S.A. v. Mosquera*, 141 F.R.D. 226, 227 (D.P.R. 1992). Second, the Subpoena fails to state the correct civil-action number as required by Federal Rule 45(a)(1)(A)(ii), because it references Civil Action No. 17-bk-3282, which is an unrelated and closed Chapter 7 case.

- 6 -

the Oversight Board at its word and limit the deposition to Mr. Bennett's recollection of the April 27, 2016 meeting and that meeting alone. Counsel for the Board should be prohibited from inquiring into any other matter beyond the statements made and materials exchanged (if any) at that meeting. Given this narrow scope, the deposition could easily be completed within one hour, and the Court should impose such a time limitation. *See* Fed. R. Civ. P. 45(d)(3)(A).

13. Those scope and time limitations on the deposition would, moreover, help alleviate the problems inherent in the Oversight Board's Subpoena. In particular, because the April 27, 2016 meeting itself was not privileged, a deposition that is limited in scope to what was discussed at that April 27, 2016 meeting would avoid the thorny privilege issues that will arise the moment the deposition questioning extends beyond the meeting. At the same time, both the scope and time limitations will substantially reduce the burden on Mr. Bennett and Movants' other counsel, because Mr. Bennett and counsel will know what to expect at the deposition. Finally, those scope and time limitations will also help preempt disputes about which questions the Oversight Board may ask, and which it may not.

## RELIEF REQUESTED

14. For these reasons, Mr. Bennett respectfully submits that the Court should enter an order narrowing the scope of the Oversight Board's Subpoena To Testify At A Deposition In A Civil Action to exclude all documents and testimony that is privileged. Mr. Bennett further respectfully submits the Court should enter an order limiting any deposition that may be allowed under the Subpoena to one hour, limited to the topic of what was discussed at the April 27, 2016 meeting.

In San Juan, Puerto Rico, today May 3, 2019.

By:

| | |
|---|---|
| /s/ *Alfredo Fernández-Martínez* | /s/ *Geoffrey S. Stewart* |
| Alfredo Fernández-Martínez | Geoffrey S. Stewart (*pro hac vice*) |
| DELGADO & FERNÁNDEZ, LLC | Beth Heifetz (*pro hac vice*) |
| PO Box 11750 | Matthew E. Papez (*pro hac vice*) |
| Fernández Juncos Station | Sparkle L. Sooknanan (*pro hac vice*) |
| San Juan, Puerto Rico 00910-1750 | JONES DAY |
| Tel. (787) 274-1414 | 51 Louisiana Ave. N.W. |
| Fax: (787) 764-8241 | Washington, DC 20001 |
| afernandez@delgadofernandez.com | Tel. (202) 879-3939 |
| USDC-PR 210511 | Fax: (202) 626-1700 |
| | gstewart@jonesday.com |
| | bheifetz@jonesday.com |
| | mpapez@jonesday.com |
| | ssooknanan@jonesday.com |
| | |
| | Bruce Bennett (*pro hac vice*) |
| | JONES DAY |
| | 555 South Flower Street |
| | Fiftieth Floor |
| | Los Angeles, California 90071 Tel. (213) 489-3939 |
| | Fax: (213) 243-2539 |
| | bbennett@jonesday.com |
| | |
| | Benjamin Rosenblum (*pro hac vice*) |
| | James M. Gross (*pro hac vice*) |
| | JONES DAY |
| | 250 Vesey Street |
| | New York, New York 10281 Tel. (212) 326-3939 |
| | Fax: (212) 755-7306 |
| | brosenblum@jonesday.com |
| | jgross@jonesday.com |
| | |
| | David R. Fox (*pro hac vice*) |
| | JONES DAY |
| | 100 High Street, Floor 21 |
| | Boston, MA 02110 |
| | Tel. (617) 960-3939 |
| | Fax: (617) 449-6999 |
| | drfox@jonesday.com |

*Counsel for Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund L.P., Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*