**UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

        Debtors.[1]

------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

        as representative of

THE COMMONWEALTH OF PUERTO RICO

        Debtor.

------------------------------------------------------------x

PROMESA
Title III

No. 17 BK 3283-LTS

**Re: ECF No. 6494**

(Jointly Administered)

PROMESA
Title III

No. 17 BK 3283-LTS

**This Objection relates only to
the Commonwealth and shall
only be filed in the lead Case No.
17 BK 3283-LTS.**

**OBJECTION OF THE COMMONWEALTH OF PUERTO RICO TO
MOTION IN REQUEST THAT PARALYZATION BE LIFTED
IN THE CASE DDP2014-0229 FILED BY ELIEZER SANTANA-BÁEZ**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

OBJECTION ............................................................................................................................ 3

    I.    MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO
MODIFY THE AUTOMATIC STAY ................................................................. 3

CONCLUSION ..................................................................................................................... 122

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Begier v. IRS*, 496 U.S. 53, 58 (1990) ...........................................................................10

*Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*,
    217 F. Supp. 3d 508, 518 (D.P.R. 2016)....................................................5, 6, 8

*C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
    369 B.R. 87, 94-95 (D.P.R. 2007) ............................................................5

*City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*,
    28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) ...........................................9

*Delpit v. Commissioner*,
    18 F.3d 768 (9th Cir. 1994) ...................................................................4

*Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. Of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ...............................................5-6

*Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*,
    2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006 ...........................9

*In re 234-6 West 22nd St. Corp.*,
    214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997)...........................................4

*In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977)......................................6

*In re Breitburn Energy Partners LP*,
    No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017)......................6

*In re BFW Liquidation, LLC*, No. 09-00634-BGC-11,
    2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009) ...........................8

*In re City of Stockton*,
    484 B.R. 372, 379 (Bankr. E.D. Cal. 2012)...........................................10

*In re Cummings*,
    221 B.R. 814, 818 (Bankr. N.D. Ala. 1998) ...........................................7

*In re Jefferson Cnty.*,
    491 B.R. 277, 285 (Bankr. N.D. Ala. 2013))...........................................4

*In re Motors Liquidation Co.*,
    No. 09- 50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010)...........................................10

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Mu'min*,
374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) ....................................................... 6

*In re Murrin*,
477 B.R. 99, 109 (D. Minn. 2012) ....................................................................7

*In re Residential Capital, LLC*, No. 12-12020, 2012 WL 3860586,
at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) ....................................................8, 9, 10

*In re Taub*,
413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009)...........................................................7

*In re Unanue-Casal*,
159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994) ...........................4, 5

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*,
362 B.R. 49, 56 (B.A.P. 1st Cir. 2007 ...............................................................4

*Matter of Garofalo's Finer Foods, Inc.*,
186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ..................................................... 10

*Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*,
474 U.S. 494, 503 (1986)..................................................................................3

*Montalvo v. Autoridad de Acueductos y Alcantarillados (In re Montalvo)*,
537 B.R. 128, 140 (Bankr. D.P.R. 2015 ............................................................3

*Peaje Invs. LLC v. Garcia-Padilla*,
2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016) ...........................5

*Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*,
980 F.2d 110, 117 (2d Cir. 1992).......................................................................7

*Soares v. Brockton Credit Union (In re Soares)*
107 F. 3d 969, 975 (1st Cir, 1997)......................................................................3

*Sonnax Indus. v. TriComponent Prods. Corp. (In re Sonnax Indus.)*,
907 F.2d 1280, 1286 (2d Cir. 1990)...................................................3, 5-9, 11-12

*Unisys Corp. v. Dataware Prods., Inc.*,
848 F.2d 311, 313 (1st Cir. 1988).......................................................................4

*Union Bank v. Wolas,* 502 U.S. 151, 161 (1991) .......................................................10

iii

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**STATUTES**

11 U.S.C. § 362(a) ...........................................................................................................1, 3

11 U.S.C. § 362 (d)(1) ..........................................................................................................4

11 U.S.C. § 922 ......................................................................................................................9

PROMESA § 301(a) ......................................................................................................1, 3, 4

PROMESA § 315(b) ..............................................................................................................1

42 U.S.C. § 12101 .................................................................................................................1

48 U.S.C. § 2101 ...................................................................................................................8

Law No. 66 of June 17, 2014
     P.R. Laws Ann. tit. 3 § 9101 et seq .............................................................................12

**OTHER AUTHORITIES**

H.R. Rep. No. 95-595 (1977)................................................................................................4

To the Honorable United States District Court Judge Laura Taylor Swain:

The Commonwealth of Puerto Rico (the "Commonwealth") respectfully submits this objection (the "Objection") to the *Motion in Request that Paralyzation be Lifted in the Case DDP2014-0229* [ECF No. 6494] (the "Motion") filed by Eliezer Santana-Báez ("Movant"), plaintiff in the case captioned *Eliezer Santana Báez and Roberto Quiñones López v. Estado Libre Asociado de Puerto Rico et al,* Case No. D DP2014-0229 (the "Prepetition Action"), pending before the Puerto Rico Court of First Instance of Bayamón (the "Commonwealth Court"). The Commonwealth respectfully requests that the Court deny the Motion for the reasons set forth below.[2]

## PRELIMINARY STATEMENT

1.      On August 26, 2014, Movant and co-plaintiff Roberto Quiñones López ("Co-Plaintiff") commenced the Prepetition Action against the Puerto Rico Department of Correction and Rehabilitation ("DCH"),[3] for events that allegedly occurred before the commencement of the Commonwealth's Title III case on May 3, 2017 (the "Petition Date"). In the Prepetition Action, Movant and Co-Plaintiff sought (a) a determination that the Commonwealth conducted an illegal search, and (b) compensation in the amount of $75,000.

2.      On June 2, 2016, the Department of Justice Transactions Committee approved a settlement of the Prepetition Action providing for the payment of $2,000 (the "Settlement Amount") to Movant and Co-Plaintiff (each), in full satisfaction of all claims arising from the Prepetition Action (the "Settlement Agreement").  Pursuant to the Settlement Agreement, the

---

[2]   The Financial Oversight and Management Board for Puerto Rico, as the Commonwealth's representative pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"), has authorized the Department of Justice to file this Objection on behalf of the Commonwealth.

[3]   The DHC is an agency of the Commonwealth protected under Bankruptcy Code section 362(a), made applicable to this Title III case by PROMESA section 301(a).

payment of the Settlement Amount is conditioned on compliance with the terms of Act 66-2014,[4] which mandates, in relevant part, that the Commonwealth shall not make any payment unless the creditor of the judgment provides an official certification issued by the pertinent agency stating that the creditor has no outstanding debt with the Department of the Treasury, the Municipal Revenues Collection Center, and the Child Support Administration.

3.      On June 10, 2016, the Settlement Agreement was filed in the Commonwealth Court, and a judgment adopting the Settlement Agreement and closing the case was entered on June 13, 2016 (the "Judgment").

4.      Prior to the Petition Date, Movant submitted all the required documents under Act 66-2004, but Co-Plaintiff had not.  As a result, the Settlement Amount was not paid pursuant to the Settlement Agreement.

5.      On May 3, 2017, the Financial Oversight and Management Board for Puerto Rico issued a restructuring certification pursuant to PROMESA sections 104(j) and 206, and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof.

6.      On April 23, 2019, Movant filed the Motion, seeking relief from the automatic stay to enforce the payment of the Settlement Amount.  Motion ¶ 3. Movant therefore seeks payment in full of a prepetition unsecured claim against the Commonwealth in advance of proposal, let alone confirmation, of a plan of adjustment

7.      As further explained below, the Motion should be denied as Movant has failed to show that "cause" exists to lift or modify the automatic stay under section 362(d) of title 11 of the United States Code (the "Bankruptcy Code").  As a prepetition, unsecured litigation claimant, Movant has failed to demonstrate the extraordinary circumstances necessary to show why his

---

[4] Law No. 66 of June 17, 2014. P.R. Laws Ann. tit. 3, § 9101, *et seq.*

claim should not be paid through the claims resolution process to be undertaken in the Commonwealth's Title III case.  Modifying the automatic stay would allow Movant to receive preferential treatment of his prepetition, unsecured claim against the Commonwealth, while the Commonwealth's other prepetition, unsecured creditors must wait to have their claims treated under a plan of adjustment.

## OBJECTION

## I.    MOVANT HAS FAILED TO ESTABLISH THAT CAUSE EXISTS TO MODIFY THE AUTOMATIC STAY

8.    Upon commencement of a Title III case, Bankruptcy Code section 362(a), made applicable by section 301(a) of PROMESA, provides for an automatic stay of certain actions by non-debtor third parties including, among other things, "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title."  11 U.S.C. § 362(a).  The application of Bankruptcy Code section 362(a) to the Commonwealth's Title III case was specifically confirmed by this Court pursuant to the *Order Pursuant to PROMESA Section 301(a) and Bankruptcy Code Sections 105(a), 362(a), 365 and 922 Confirming (I) Application of the Automatic Stay to Government Officers, Agents, and Representatives, (II) Stay of Prepetition Lawsuits, and (III) Application of Contract Protections* [ECF No. 543].

9.    "The automatic stay is among the most basic of debtor protections under bankruptcy law." *Soares v. Brockton Credit Union (In re Soares)* 107 F. 3d 969, 975 (1st Cir. 1997) (citing *Midlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 503 (1986).  The stay "is extremely broad in scope and, 'aside from the limited exceptions of subsection (b), applies to almost any type of formal or informal action taken against the debtor or the property of the estate." *Montalvo v. Autoridad de Acueductos y Alcantarillados (In re*

*Montalvo)*, 537 B.R. 128, 140 (Bankr. D.P.R. 2015).  The broad scope of the automatic stay

serves one of the cardinal purposes of bankruptcy and provides the debtor with a "breathing

spell" essential to (a) the preservation of the debtor's property for the collective benefit of the

creditors and (b) the debtor's ability to administer its case and engage in restructuring efforts

without undue distraction or interference.  *See Unisys Corp. v. Dataware Prods., Inc.*, 848 F.2d

311, 313 (1st Cir. 1988) ("[T]he automatic stay gives the debtor a 'breathing spell from his

creditors' and forestalls a 'race of diligence by creditors for the debtor's assets.'"  (citation

omitted)); *In re Jefferson Cnty.*, 491 B.R. 277, 285 (Bankr. N.D. Ala. 2013) (explaining that a

key purpose of municipal bankruptcy is "the breathing spell provided by the automatic stay" and

stating "[i]f the automatic stay is to be lifted routinely to allow claimants to assert their claims in

state court, a municipality will not have the time, opportunity or ability to confirm a plan");

*Mass. Dep't of Revenue v. Crocker (In re Crocker)*, 362 B.R. 49, 56 (B.A.P. 1st Cir. 2007)

(quoting H.R. Rep. No. 95-595 at 340 (1977)) ("[O]ne of the fundamental purposes of the

automatic stay is to give the debtor 'a breathing spell from his creditors' and 'to be relieved of

the financial pressures that drove him into bankruptcy.'"); *Delpit v. Commissioner*, 18 F.3d 768

(9th Cir. 1994) ("Congress intended to give debtors a breathing spell from their creditors and *to

stop all collection efforts*, all harassment, and all foreclosure actions.") (internal quotes and

citations omitted) (emphasis added).

10.    An order lifting the automatic stay is an "extraordinary remedy." *In re 234-6 West

22nd St. Corp.*, 214 B.R. 751, 757 (Bankr. S.D.N.Y. 1997).  Bankruptcy Code section 362(d)(1),

made applicable by PROMESA section 301(a), provides that a court may grant relief from the

automatic stay "for cause."  *See* 11 U.S.C. § 362(d)(1).  "Cause" is not defined in the Bankruptcy

Code.  *In re Unanue-Casal*, 159 B.R. 90, 95–96 (D.P.R. 1993), *aff'd* 23 F.3d 395 (1st Cir. 1994).

To determine whether "cause" exists to grant relief from the stay, courts examine numerous different factors, including those set forth in *Sonnax Indus., Inc. v. TriComponent Prods. Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):

(1)   whether relief would result in complete or partial resolution of the issues;

(2)   the lack of any connection with or interference with the bankruptcy case;

(3)   whether the foreign proceeding involves the debtor as fiduciary;

(4)   whether a specialized tribunal has been established to hear the cause of action at issue;

(5)   whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation;

(6)   whether the action essentially involves third parties rather than the debtor;

(7)   whether the litigation could prejudice the interest of other creditors;

(8)   whether a judgment in the foreign action is subject to equitable subordination;

(9)   whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor;

(10)  the interest of judicial economy and the expeditious and economical determination of litigation for the parties;

(11)  whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and

(12)  the impact of the stay on the parties and the "balance of hurt."

*In re Sonnax Indus.,* 907 F.2d at 1286.

11.     Courts in this Circuit have adopted these "*Sonnax* factors." *See Brigade Leveraged Capital Structures Fund Ltd. v. Garcia-Padilla*, 217 F. Supp. 3d 508, 518 (D.P.R. 2016) ("To help guide their analysis of whether to enforce or vacate the stay, some courts, including those in this district, have relied upon a laundry list of assorted factors." (citing *Sonnax*, at 1286; *C & A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-5 (D.P.R. 2007));

*In re Unanue-Casal*, 159 B.R. at 95–96; *Peaje Invs. LLC v. Garcia-Padilla*, 2016 U.S. Dist. LEXIS 153711, at *13 (D.P.R. Nov. 2, 2016); *Fin. Oversight & Mgmt. Bd. v. Ad Hoc Grp. of PREPA Bondholders (In re Fin. Oversight & Mgmt. Bd.)*, 899 F.3d 13, 23 (1st Cir. 2018) ("We agree with the parties that the factors identified by the Second Circuit in <u>Sonnax</u> and recited by the Title III court provide a helpful framework for considering whether the Title III court should permit litigation to proceed in a different forum.").

12.     No one factor is dispositive; instead, courts "engage in an equitable, case-by-case balancing of the various harms at stake" and will lift the stay only if the harm engendered by allowing the stay to remain in place outstrips the harm caused by lifting it.  *Brigade*, 217 F. Supp. 3d at 529 n.12.  Movant bears the burden of establishing cause, *id.*, and when the movant is not a secured claimholder asserting a lack of adequate protection, that burden is a high one. *See In re Breitburn Energy Partners LP*, No. 16-10992, 2017 WL 1379363, at *4 (Bankr. S.D.N.Y. Apr. 14, 2017).

13.     Movant has not established that cause exists to modify the Title III stay.  Instead, Movant is merely seeking preferential treatment on his claim by seeking to enforce the Judgment that requires the Commonwealth to pay the Settlement Amount, which would undermine the purpose of the automatic stay "to prevent interference with, or diminution of, the debtor's property."  *In re Cuba Electric & Furniture Corp.*, 430 F. Supp. 689 (D.P.R. 1977); *see also In re Mu'min*, 374 B.R. 149, 162 (Bankr. E.D. Pa. 2007) (allowing creditors to get a "head start on collection [is] precisely what the Bankruptcy Code was designed to prevent so that creditors could share equally in the distribution of available assets.").  The *Sonnax* factors point squarely toward maintaining the automatic stay and against the relief Movant seeks.

14.    ***Sonnax* Factor 1:**   The first *Sonnax* factor—whether relief would result in complete or partial resolution of the issues—weighs against modifying the automatic stay. The first *Sonnax* factor does not focus on the issues in the stayed litigation.  If it did, the first *Sonnax* factor would always favor lifting the stay because every lawsuit eventually resolves the issues in that particular proceeding.  Instead, the first *Sonnax* factor primarily focuses on whether the separate litigation would expeditiously resolve issues relevant to the bankruptcy case.  *See, e.g., In re Taub*, 413 B.R. 55, 62 (Bankr. E.D.N.Y. 2009) (lifting the stay because non-bankruptcy litigation "would resolve significant open issues in the Debtor's bankruptcy case, and would assist the Debtor in pursuing the confirmation of a [] plan").  Accordingly, many courts characterize this factor as whether the non-bankruptcy proceeding would result in "the resolution of preliminary bankruptcy issues."  *See, e.g.*, *In re Murrin*, 477 B.R. 99, 109 (D. Minn. 2012); *In re Cummings*, 221 B.R. 814, 818 (Bankr. N.D. Ala. 1998).

15.    Here, Movant does not identify any bankruptcy issue related to the Title III case that would be resolved by allowing Movant to enforce the Judgment.  Indeed, Movant concedes that the only pending matter in the Prepetition Action is payment of the Settlement Amount. Motion ¶ 3 (". . . in this case the only thing left to conclude is my payment . . . .").  Therefore, the first *Sonnax* factor supports denying the Motion.

16.    ***Sonnax* Factor 2**:  The second *Sonnax* factor—the lack of any connection with or interference with the bankruptcy case—does not support modifying the stay.  The Commonwealth would be required to disburse funds to fulfill its obligations under the Judgment, which would interfere with its Title III case and overall restructuring by diverting critical funds from its recovery efforts and payment of all similarly situated creditors pursuant to a plan of adjustment.  As a prepetition, unsecured creditor of the Commonwealth, Movant's claim is

subject to the claims resolution process that will be undertaken in the Title III case.  Thus,
requiring the Commonwealth to pay Movant's claim separately and outside of a plan of
adjustment would undermine the Title III restructuring process and upend the "strong bankruptcy
code policy that favors centralized and efficient administration of all claims in the bankruptcy
court . . . ."  *See Publicker Indus. Inc. v. United States (In re Cuyahoga Equip. Corp.)*, 980 F.2d
110, 117 (2d Cir. 1992)  (citations omitted); *see also In re BFW Liquidation, LLC*, No. 09-
00634-BGC-11, 2009 WL 8003536, at *3 (Bankr. N.D. Ala. Sept. 14, 2009)  ("[T]he effect of
lifting the stay for all such claimants and requiring debtors to defend lawsuits in diverse forums
merely to establish what share, if any, the claimants filing those suits will have in whatever is left
of bankruptcy estates would hinder the goals of the automatic stay and the summary process for
adjudicating and liquidating claims.").

17.    Additionally, should every plaintiff with an asserted prepetition claim be given
*carte blanche* to litigate and/or execute their claims, the combined result would have a
substantial and negative impact on the Commonwealth's fiscal plan and budget. This would
impede the restructuring process, and thus, should be avoided.  *See, e.g., In re Residential
Capital, LLC*, No. 12-12020, 2012 WL 3860586, at *6 (Bankr. S.D.N.Y. Aug. 8, 2012) (denying
lift-stay motion in part because "[t]he new litigation in non-bankruptcy courts would hinder the
Debtors' attempts to reorganize by forcing the Debtors to utilize time and resources that would
otherwise be spent in resolution of the Debtors' chapter 11 cases.").  Thus, *Sonnax* factor 2
weighs in favor of denying the Motion. *See Brigade*, 217 F. Supp. 3d at 529 n.12 (holding that
movant bears the burden of establishing cause).

18.    **_Sonnax_ Factor 4**:  The fourth *Sonnax* factor—whether a specialized tribunal has
been established to hear the cause of action at issue—does not support granting the Motion.  No

specialized tribunal has been established to hear the Prepetition Action, which was pending before the Commonwealth Court before the case was closed. Thus, *Sonnax* factor 4 weighs in favor of denying the Motion.

19.     ***Sonnax* Factor 5**:  The fifth *Sonnax* factor—whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation—does not support granting the Motion.  No insurer of the Commonwealth has assumed any financial responsibility for payment of the Settlement Amount, and Movant does not allege any facts to the contrary. Thus, *Sonnax* factor 5 does not support granting the Motion.

20.     ***Sonnax* Factor 6**: The sixth *Sonnax* factor—whether the action essentially involves third parties rather than the debtor—does not support granting the Motion.  This factor is not based on whether third parties are involved, but rather whether the prepetition action primarily involves third parties *rather than* the debtor.  *See In re Residential Capital, LLC*, 2012 Bankr. LEXIS 3641, at *20 (Bankr. S.D.N.Y. Aug 8, 2012) ("The court should not grant relief from the stay under the sixth *Sonnax* factor if the debtor is the main party to the litigation."); *Grayson v. WorldCom, Inc. (In re WorldCom, Inc.)*, 2006 U.S. Dist. LEXIS 55284, at *33 (S.D.N.Y. Aug 4, 2006)  ("Grayson offers no argument or claim to show how the Bankruptcy Court abused its discretion in determining that Grayson's claim in this action did not primarily involve third parties." (emphasis in original)).

21.     Here, the Prepetition Action does not involve third parties.  DHC, an agency of the Commonwealth, is the sole defendant in the Prepetition Action.  Therefore, *Sonnax* factor 6 weighs in favor of denying the Motion.  *See City Ins. Co. v. Mego Int'l, Inc. (In re Mego Int'l, Inc.)*, 28 B.R. 324, 326 (Bankr. S.D.N.Y. 1983) (denying motion to lift the stay where debtor was

more than a mere conduit for the flow of proceeds and the action impacted the "property and administration of [the debtor's estate].").

22.     ***Sonnax* Factor 7**: The seventh *Sonnax* factor—whether the litigation could prejudice the interest of other creditors—does not support granting the Motion.  First, modifying the automatic stay would give Movant an unfair and undue advantage over other creditors.  Movant's claim pursuant to the Judgment should be treated under the claims resolution process in the Commonwealth's Title III case and ultimately treated pursuant to a plan of adjustment, as with all other similarly situated claims.  Allowing Movant to proceed now would be in sharp contrast to the most basic public policy underlying the Bankruptcy Code, namely equality of treatment of similar claims.  *See Matter of Garofalo's Finer Foods, Inc.*, 186 B.R. 414, 435 (Bankr. N.D. Ill. 1995) ("[The automatic stay] protects all creditors by ensuring that the estate will be preserved against attempts by other creditors to gain an unfair advantage with respect to the payment of claims."); *Union Bank v. Wolas,* 502 U.S. 151, 161 (1991) ("[T]he preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor."); *Begier v. IRS*, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code.").  Movant proffers no adequate reason that it should be prioritized over other creditors and granted an unfair advantage, nor why the purpose of the automatic stay and the most basic public policy underlying the Bankruptcy Code should be ignored in his case.

23.     Moreover, the funds expended by the Commonwealth to comply with the Judgment would be diverted from the overall recovery and reorganization of the Commonwealth and from the ultimate distribution to other creditors, a factor that numerous courts have recognized counsels against the lifting of the automatic stay.  *See, e.g., In re Residential Capital*,

2012 WL 3860586, at *6 (holding that "[o]ther creditors are further prejudiced by litigation of the California Actions because such litigation will diminish the estate's assets, resulting in a smaller distribution under a chapter 11 plan of reorganization" and denying lift-stay motion); *In re Motors Liquidation Co.*, No. 09-50026, 2010 WL 4630327, at *4 (S.D.N.Y. 2010) (finding no abuse of discretion where bankruptcy court concluded in denying lift-stay motion that "allowing Appellant to proceed with the ERISA suit would force [debtor] to expend estate resources to defend that" and thus "would prejudice the interests of other creditors"); *see also In re City of Stockton*, 484 B.R. 372, 379 (Bankr. E.D. Cal. 2012) (declining to lift stay in part because it "will deplete the coffers of the City treasury"). Accordingly, *Sonnax* factor 7 does not support granting the Motion.

24.    ***Sonnax* Factor 10**:  The tenth *Sonnax* factor—the interest of judicial economy and the expeditious and economical determination of litigation for the parties—weighs against granting the Motion.  Because judgment has already been entered in the Prepetition Action, modifying the stay would only expedite Movant's own recovery.  Movant has not met his burden of showing how modifying the automatic stay would advance the interest of judicial economy. Thus, *Sonnax* factor 10 weighs in favor of denying the Motion.

25.    ***Sonnax* Factor 12:**  Balancing of the harms clearly favors denial of the Motion. The impact on the Commonwealth if the Motion were to be granted would outweigh any harm that Movant would suffer if the automatic stay remains in place.  As previously noted, the Commonwealth would be required to disburse funds to comply with the Judgment.  The diversion of the Commonwealth's resources would in turn prejudice the interests of other similarly situated creditors.  Although the underlying claim here is small, allowing enforcement of the Judgment will create a precedent for hundreds, if not thousands, of similarly-situated

11

creditors to petition this Court for payment in full on prepetition claims.  The cost of defending against these requests, let alone paying such claims, could be enormous to the obvious detriment of the Commonwealth and in complete contravention of the equality of distribution in bankruptcy.  On the other hand, any harm Movant would suffer from delay in collection of his asserted claim is similarly shared with all other creditors of the Commonwealth.  While Movant asserts he "is an inmate, subject to transfers at the local level . . . recovery my owed amount would be in that very difficult possible scenario yet," Motion ¶ 4, maintaining the automatic stay would simply preserve the status quo pending the Commonwealth's restructuring and recovery efforts under Title III.  Movant's claim will be addressed in the claims resolution process and a plan of adjustment in the Commonwealth's Title III Case.  Thus, on balance, *Sonnax* factor 12 weighs in favor of denying the Motion.[5]

## **CONCLUSION**

26.    Movant has failed to establish cause to justify modifying the automatic stay in the Commonwealth's Title III case to allow the enforcement and execution of the Judgment. Accordingly, and for the foregoing reasons, the Court should deny the Motion.

Dated: May 7, 2019.

San Juan, Puerto Rico

Respectfully submitted,

**WANDA VÁZQUEZ GARCED**
Secretary of Justice

**s/*WANDYMAR BURGOS VARGAS***
**WANDYMAR BURGOS VARGAS**
USDC NO. 223502

---

[5]    The remaining *Sonnax* factors ((3) whether the foreign proceeding involves the debtor as fiduciary; (8) whether a judgment in the foreign action is subject to equitable subordination; (9) whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor); and (11) whether the foreign proceedings have progressed to the point where parties are prepared for trial) are not addressed as they are inapplicable here.

Deputy Secretary in Charge of
Litigation
Department of Justice
PO Box 9020192
San Juan, PR, 00902-0192
Tel. (787) 201-8900
wburgos@justicia.pr.gov
*Counsel for Defendants*