## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## JOINT LIMITED OBJECTION OF BANK DEFENDANTS TO URGENT MOTION OF THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD OF PUERTO RICO TO ENFORCE ORDER UNDER BANKRUPTCY RULES 1007(i) AND 2004 AUTHORIZING DISCOVERY AND COMPELLING <u>DISCLOSURE OF LISTS OF SECURITY HOLDERS</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................2

FACTUAL BACKGROUND ..................................................................................................5

LIMITED OBJECTION ..........................................................................................................8

I.      The Proposed Sanction In Section 7 Of The SCC Proposed Order Is Improper ................8

        A.      The SCC's Proposed Sanction Is Extreme.............................................................8

        B.      No Exigent Circumstances Exist To Justify The SCC's Proposed Sanction.........10

        C.      The SCC's Proposed Sanction Violates Due Process............................................11

        D.      The SCC's Proposed Sanction Is Procedurally Improper.....................................15

II.     The SCC Proposed Order Omits A Necessary Remedy For Any Bank Defendant
        That Produces Discovery Establishing That It Was Not A Beneficial Holder .................16

III.    The SCC's Proposed Production Deadlines Are Impractical And Unnecessary.............18

CONCLUSION........................................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1 (1st Cir. 2006) ................................................12, 14

*Charbono v. Sumski (In re Charbono)*, 790 F.3d 80 (1st Cir. 2015) ...............................................9

*Christy v. Alexander & Alexander of New York Inc. (In re Finley, Kumble,
    Wagner, Heini, Underberg, Manley, Myerson & Casey)*, 130 F.3d 52
    (2d Cir. 1997) ..........................................................................................................................17

*Crossman v. Raytheon Long Term Disability Plan*, 316 F.3d 36 (1st Cir. 2002) ............................9

*In re Enron Corp.*, 281 B.R. 836 (Bankr. S.D.N.Y. 2002) .............................................................17

*In re SunEdison, Inc.*, 572 B.R. 482 (Bankr. S.D.N.Y. 2017) .......................................................17

*In re Table Talk, Inc.*, 51 B.R. 143 (Bankr. D. Mass. 1985) .........................................................17

*Lassman v. Cronin*, 518 B.R. 1 (D. Mass. 2014) ...........................................................................17

*Liquidating Agent of Stanwich Financial Services Corp. v. Bear Stearns & Co. (In
    re Stanwich Financial Services Corp.)*, No. 16-cv-01176, 2018 WL
    1219285 (D. Conn. Mar. 8, 2018) ...........................................................................................17

*Mulero-Abreu v. Puerto Rico Police Department*, 675 F.3d 88 (1st Cir. 2012) ...........................12

*Public Service Co. v. Portland Natural Gas*, 218 F.R.D. 361 (D.N.H. 2003) ...............................8

*Rentas v. Mapfre Praico Insurance Co. (In re Luis Diesel Services, Inc.)*,
    No. 17-018, 2018 WL 2102322 (B.A.P. 1st Cir. May 4, 2018) ..............................................16

*Richardson v. United States (In re Anton Noll, Inc.)*, 277 B.R. 875 (B.A.P.
    1st Cir. 2002) ...........................................................................................................................17

*Roadway Express, Inc. v. Piper*, 447 U.S. 752 (1980) ..................................................................12

*Robson v. Hallenbeck*, 81 F.3d 1 (1st Cir. 1996) ..........................................................................12

*Societe Internationale Pour Participations Industrielles et Commerciales, S.A. v.
    Rogers*, 357 U.S. 197 (1958) ..................................................................................................12

iii

# STATUTES, RULES, AND REGULATIONS

*Federal Rules of Civil Procedure*

Rule 12 ..........................................................................................................................14

Rule 26 ..........................................................................................................................16

Rule 34 ..........................................................................................................................16

Rule 56 ..........................................................................................................................14

*Federal Rules of Bankruptcy Procedure*

Bankruptcy Rule 1007 ....................................................................................................5

Bankruptcy Rule 2004 ..................................................................................... 5, 11, 15-16

Bankruptcy Rule 7026 ..................................................................................................16

Bankruptcy Rule 7034 ..................................................................................................16

# OTHER AUTHORITIES

9 COLLIER ON BANKRUPTCY ¶ 2004.01[08] (16th ed. 2019) ......................................15

To the Honorable United States District Court Judge Laura Taylor Swain:

The Bank Defendants,[2] consisting of certain Participant Holders[3] already sued by the Special Claims Committee (the "SCC") in one or more adversary proceedings filed in the above-captioned matter, respectfully submit this joint limited objection (the "Limited Objection") to the SCC's *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico to Enforce Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders*, dated May 7, 2019 [ECF No. 6853] (the "Motion" or "Mot.").[4]   The Bank Defendants respectfully request that the Court deny the Motion in part and enter an order substantially in the form attached to the Declaration of Roberto C. Quiñones-Rivera, filed substantially at the same time as this Limited Objection (the "Quiñones-Rivera Declaration") as **Exhibit A** (the "Bank Defendants' Proposed Order"), instead of the order attached as Exhibit A to the Motion (the "SCC Proposed Order").[5]   In support of this Limited Objection, the Bank Defendants respectfully state as follows:

---

[2]   The Bank Defendants consist of the following entities: Bank of America, N.A.; The Bank of New York Mellon; Barclays Capital Inc.; Merrill Lynch, Pierce, Fenner & Smith Inc.; Pershing LLC; RBC Capital Markets, LLC; RBC Dominion Securities Inc.; UBS Financial Services Inc.; and UBS Securities LLC.  Given the accelerated briefing schedule on the Motion, the following named defendants expect to join this objection when they retain local counsel and therefore are in a position to do so: BMO Harris Bank NA/Trust; Citigroup Inc.; Janney Montgomery Scott LLC; Jefferies Group LLC; Morgan Stanley & Co. LLC; JPMorgan Chase Bank, N.A.; J.P. Morgan Securities LLC.; Morgan Stanley Smith Barney LLC; Piper Jaffrey & Co; PNC Bank, N.A.; and Stifel, Nicolaus & Company, Incorporated.

[3]   Capitalized words not defined herein shall have the meanings ascribed to them in the Motion.

[4]   The Bank Defendants assert the same limited objection to, and seek the same relief regarding, the SCC's substantially identical motion docketed at ECF No. 6854.

[5]   For the Court's convenience, the Bank Defendants attach as **Exhibit B** to the Quiñones-Rivera Declaration a redline showing the proposed changes between the SCC Proposed Order and the Bank Defendants' Proposed Order.

1

## PRELIMINARY STATEMENT

1.      The Bank Defendants are working diligently to produce responsive information to
the SCC subject, of course, to the confidentiality protections set forth in the *Further Order
Pursuant to Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling
Disclosure of Lists of Security Holders* [ECF No. 6493] (the "Protective Order").[6]  The Bank
Defendants have no opposition to most of the Motion, but they have three substantial objections
to the SCC Proposed Order.

2.      First, the SCC Proposed Order (¶ 7) purports to impose a draconian sanction on
the Bank Defendants that would render the Bank Defendants potentially liable for interest and
principal payments for which the Bank Defendants have no liability as a matter of law.  In
particular, the Bank Defendants did not receive most (if any) of the payments at issue for their
own accounts, but instead served as mere conduits through which those payments passed from
The Depository Trust Company ("DTC") to the beneficial holders of the bonds at issue.  Yet, the
SCC Proposed Order provides that if, for any reason (no matter how unavoidable, reasonable or
excusable), a Bank Defendant is unable to certify total completion of its production of customer
information on the SCC's arbitrary and expedited timetable, that Bank Defendant "shall be held,
as a matter of fact, to have been the beneficial holder of all Challenged Bonds for which it serves
as Participant Holder at all relevant times," [SCC Proposed Order ¶ 7] and thus to have received
the payments at issue for its own account.

---

[6] The Bank Defendants have not yet gathered all responsive information and reserve the
right to object to the SCC's document requests to the extent that foreign bank secrecy, privacy,
or other laws prohibit the disclosure of customer information pursuant to a United States court
order.

3.       There is no conceivable basis for this extraordinary provision or the manner in which the SCC surreptitiously seeks its approval.  The SCC did not even mention the SCC Proposed Order's improper sanction in its Motion, let alone provide any justification or authority for such an automatic sanction.  The SCC's failure to address the provision in its Motion is telling, particularly in light of black-letter law providing that the only party potentially liable in an avoidance action is the beneficial holder of the security, and not the financial institution that served as a mere conduit through which the proceeds passed to the beneficial holder.  The proposed sanction asks this Court to ignore this black-letter law and disregard the critical fact that the Bank Defendants are either entirely or in substantial part not beneficial holders of the bonds at issue.  The SCC's proposed sanction has no basis in law and plainly violates due process.  In addition, the SCC's claimed need for expedition, backed by a sanction, is inconsistent with the motion it filed this week seeking to stay the GO Bond and PBA Bond avoidance actions indefinitely.  [ECF No. 6857].

4.       Second, the SCC Proposed Order omits an obvious remedy to which each Bank Defendant is entitled—its prompt dismissal from any applicable adversary proceeding once it has produced discovery showing that it is indeed a mere conduit and not the beneficial holder of the bonds at issue (or, if a Bank Defendant was a beneficial holder, its beneficial ownership was less than one of the "Threshold Amounts" set forth in the Document Request).[7]  As noted above, this remedy is consistent with established law holding that conduits are not proper defendants in

---

[7] The document request attached as Exhibit B to the Motion (the "Document Request") states that the examinees do not need to provide any information relating to Transfers to Persons who either (a) "did not hold more than $2,500,000 in Challenged Bonds in the aggregate at any time during the Lookback Period"; (b) "did not receive more than $250,000 in Transfers in the aggregate during the Lookback Period"; or (c) "did not receive any single Transfer greater than $12,000" (the "Threshold Amounts").

3

avoidance actions such as those the SCC has already initiated with respect to the GO Bonds and

PBA Bonds at issue,[8] and apparently intends to pursue with respect to the ERS Bonds.[9]  The

SCC should have no objection to this remedy, as it has informally agreed to it by email to

counsel for many of the Bank Defendants, and this relief has since become the norm in similar

avoidance action litigation in recent years.  Indeed, the SCC's lead counsel has stipulated to this

relief in virtually identical avoidance actions in the *Lyondell* bankruptcy case.

5.  <u>Third</u>, the SCC Proposed Order would impose an unreasonable and unnecessary

deadline for production of customer information.  The Document Request identifies for the first

time 23 new CUSIPS for ERS Bonds for which the SCC seeks production from the Bank

Defendants.  Prior to the Document Request, the SCC had sought information only with respect

to three ERS Bond CUSIPs, one of which has since been withdrawn from the request.  With

respect to the 23 new CUSIPs, the SCC Proposed Order provides the Bank Defendants only

seven (7) business days from the date of the Document Request—and fewer than four (4)

business days from the earliest date this Court might enter an order granting the Motion—to

search for, collect, review, and produce such electronically-stored information.  It is

unreasonable to expect the Bank Defendants to identify responsive information and then

---

[8] *SCC v. Jefferies LLC*, Adv. Proc. No. 19-00281 (D.P.R.); *SCC v. BNY Mellon/POP Sec*, Adv. Proc. No. 19-00282 (D.P.R.); *SCC v. First Southwest Co.*, Adv. Proc. No. 19-00283 (D.P.R.).  For ease of reference, party names have been abbreviated.  The SCC also commenced five other adversary proceedings against numerous defendants identified only by key (Adv. Proc. Nos. 19-00284 through 19-00288).  For a complete list of the avoidance actions filed by the SCC, see the *Informative Motion of the Financial Oversight and Management Board for Puerto Rico, Acting By and Through Its Special Claims Committee, Disclosing List of Avoidance Actions Filed* [ECF No. 6847].

[9] *See Urgent Motion of the Financial Oversight and Management Board of Puerto Rico For Entry of an Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders*, at 4 [ECF No. 6143] (noting a claimed need to obtain information about "potentially valuable Avoidance Actions" sufficiently prior to the statute of limitations).

complete this process in such an excessively compressed time period.  Nor should the Bank
Defendants be held to impossible timeframes as a result of the SCC's unexplained failure to
include these CUSIPs in its April 8 Motion, instead, to decide to wait to seek this information a
mere thirteen (13) days before the statute of limitations (in the SCC's view) is set to expire.
Similarly, the SCC's proposed June 1, 2019 production deadline for the GO Bonds and PBA
Bonds is too compressed and entirely unnecessary, given that the SCC has both initiated
adversary proceedings with respect to these bonds and filed a motion to stay those proceedings.
The Court should enter an order providing for the Bank Defendants to attempt in good faith to
complete the ERS Bond production by the SCC's requested May 16 deadline or as soon
thereafter as is reasonably practicable, and the GO Bond and PBA Bond production by the
SCC's requested June 1 deadline or as soon thereafter as is reasonably practicable.

6.      For these reasons, the Bank Defendants respectfully submit that the Court should
decline to enter the SCC Proposed Order and instead should enter the Bank Defendants'
Proposed Order, which addresses these three critical issues.

## FACTUAL BACKGROUND

7.      On April 8, 2019, over seven months after they were appointed and just weeks
before the claimed expiration of the relevant statute of limitation, the SCC finally sought Court
approval to serve a discovery request, pursuant to Bankruptcy Rules 2004 and 1007(i), to five
Participant Holders (which included some, but not all, of the Bank Defendants).  The discovery
request would require those Participant Holders to identify the individuals and entities that
received interest and/or principal payments—on account of 133 CUSIPs of GO Bonds, PBA
Bonds, and ERS Bonds—at or through the Participant Holders during a specified time period.
[ECF No. 6143].  After expedited briefing, on April 18, 2019, the Court entered an Order
authorizing the SCC to serve the document request and requiring the Participant Holders to

commence producing such information related to GO Bonds and PBA Bonds on April 25, 2019 and complete the production by April 30, 2019, and to produce such information related to ERS Bonds by May 8, 2019.  [ECF No. 6384].[10]

8.    Following a Court-ordered meet-and-confer process, on April 23, 2019, the SCC filed an Informative Motion with a proposed order addressing confidentiality issues that had been raised by certain of the Bank Defendants.  [ECF No. 6492].  In addition, the SCC attached to the Informative Motion an exhibit that purported to add more than ninety (90) separate Participant Holder institutions (not counting affiliates) as targets of the discovery proceedings. The SCC did not inform the Court of the extent to which it was expanding these proceedings or that it would take the position that these 90+ financial institutions—named for the first time on April 23 in an exhibit to an Informative Motion—would become subject to the same expedited production deadlines set forth in the Court's April 18 Order.  The newly-added Participant Holders were then served with the Informative Motion by mail and only received notice of their purported involvement in these proceedings when they found their names on a 15-page exhibit. Moreover, certain of the Bank Defendants did not receive service of the Informative Motion until April 30, 2019, the very day of the then-applicable production deadline regarding the GO Bonds and PBA Bonds and merely six business days before the then-applicable production deadline regarding the ERS Bonds.  *See, e.g.*, Exs. D-E to the Quiñones-Rivera Declaration.

---

[10]  The Court later entered the Protective Order, applying certain confidentiality protections to information produced by the Bank Defendants.  [ECF No. 6493].  By informative motion, the SCC established certain thresholds from which the Bank Defendants could choose to apply, ECF No. 6540, thereby allowing the Bank Defendants to not produce information regarding customers who received a *de minimis* amount of the interest and principal payments at issue.

9.      On May 2, 2019, the SCC initiated three (3) adversary proceedings against, among others, the Bank Defendants.  [ECF Nos. 6803-6805].  These adversary proceedings seek to avoid as fraudulent transfers the same principal and interest payments for the same GO Bonds and PBA Bonds that are the subject of the Motion.

10.      On May 7, 2019, the SCC filed the instant Motion and SCC Proposed Order. Together, the Motion and SCC Proposed Order purport to seek to enforce the Court's prior Rule 2004 Order (Mot. ¶ 5), but they would effectively impose new discovery obligations, unjustifiably expedited deadlines, and potentially self-effectuating and defense-stripping draconian sanctions upon the Bank Defendants.  Specifically, the Motion and SCC Proposed Order would (a) require the Bank Defendants to respond to a new document request (*see* Mot. Ex. B (adding Document Request No. 2 for the first time)); (b) require them to provide customer information regarding 23 new CUSIPs for ERS Bonds and 5 new CUSIPs for GO Bonds and PBA Bonds not previously requested by the SCC (Mot. Ex. B, Appendix 3); and (c) impose a draconian sanction on the Bank Defendants if the Bank Defendants fail, for any reason (no matter how reasonable), to produce all the requested information and provide a certification by SCC's self-imposed deadline (SCC Proposed Order ¶ 7).  The Motion also includes impractical and unnecessarily expedited deadlines for the Bank Defendants to make their productions:  May 16, 2019 for ERS bondholder information, and June 1, 2019 for GO and PBA bondholder information.  Mot. Ex. A ¶ 6.  And the SCC Proposed Order omits the obvious remedy for a Bank Defendant that responds to the discovery requests and produces information showing that it was not a beneficial holder of any bonds at issue (or held a *de minimis* amount):  namely, the SCC's prompt dismissal of the Bank Defendant from any applicable adversary proceeding.

7

## LIMITED OBJECTION

### I.    The Proposed Sanction In Section 7 Of The SCC Proposed Order Is Improper

11.    Section 7 of the SCC Proposed Order brazenly and improperly attempts to

preordain a sanctions regime.  It provides that:

> unless a Participant Holder certifies to the Oversight Board that its
> response to the Document Request is complete within 30 days of the
> dates provided in paragraph 6 above, <u>such Participant Holder shall
> be held, as a matter of fact, to have been the beneficial holder of all
> Challenged Bonds for which it served as Participant Holder at all
> relevant times, and shall be estopped from making any argument or
> claim to the contrary</u>.

Mot. Ex. A ¶ 7 (emphasis added).

12.    The Motion does not mention this proposed sanction at all, let alone attempt to

explain why it is necessary or even permissible under applicable law, perhaps because the SCC's

own dilatory conduct would be placed directly at issue.  Instead, the SCC appears to have

attempted to sneak a draconian sanction into the SCC Proposed Order, evidently hoping that

neither the Bank Defendants nor this Court would focus on it or on why the SCC finds itself in

this position on the eve of the dates when it asserts the applicable statutes of limitations will

expire.

13.    The SCC's proposed sanction is extreme, unwarranted under the circumstances,

procedurally improper, violative of due process, and inconsistent with this Court's obligation to

exercise its discretion based on facts and circumstances not yet known to the Court before

imposing sanctions.

### A.    The SCC's Proposed Sanction Is Extreme

14.    Establishing disputed facts is considered one of the "[h]arsher sanctions."  *Pub.

Serv. Co. v. Portland Natural Gas*, 218 F.R.D. 361, 363 (D.N.H. 2003).  This is especially true

here, where the SCC's proposed sanction purports to render the Bank Defendants potentially

liable for payments on Challenged Bonds that the Bank Defendants, at least for the most part,[11]

did not beneficially hold for their own accounts, but rather merely held in street name for their

customers (who themselves may have been holding the bonds for their own customers, etc.).

The SCC is surely aware of this fact as it is a central aspect of the DTC holding system—and

given the involvement of counsel to the SCC in similar cases where this has been handled in a

more cooperative and practical manner.  It also knows well that where, as here, a financial

institution did not beneficially own the security and did not receive the proceeds that are the

subject of the avoidance action for its own account, the financial institution is not an appropriate

defendant; rather, only the beneficial holder of the security who received the payments is the

appropriate defendant.[12]  Thus, the SCC's proposed sanction, if adopted, would expose the Bank

Defendants to (in the aggregate) hundreds of millions of dollars of potential liability by ignoring

both the actual facts, well-settled applicable law and now-established practice in similar

situations, a fact that the SCC oddly chose to disregard.  There is no basis for such a sanction.

*See, e.g.*, *Charbono v. Sumski (In re Charbono)*, 790 F.3d 80, 85 (1st Cir. 2015) (reversing

imposition of sanctions when founded on erroneous legal conclusion); *Crossman v. Raytheon

Long Term Disability Plan*, 316 F.3d 36, 38-39 (1st Cir. 2002) (reversing imposition of sanctions

when unsupported by the record).

---

[11]  The Bank Defendants have not yet been able to gather all information regarding whether, and if so to what extent, they beneficially held any of the Challenged Bonds, and thus cannot at this point represent that they did not beneficially hold any.

[12]  *See* May 12, 2011 Hr'g Tr. at 161:17-162:4, *Weisfelner v. A. Holmes & H. Holmes (In re Lyondell Chem. Co.)*, Adv. Proc. No. 10-05525 (REG) (Bankr. S.D.N.Y. May 17, 2011), ECF No. 287 (Brown Rudnick counsel, representing Mr. Weisfelner, stating that his client would be "delighted ... to dismiss anybody that's not properly in the case" after receiving "information as to who the beneficial holders are").

**B.     No Exigent Circumstances Exist To Justify The SCC's Proposed Sanction**

15.      The SCC does not even attempt to explain why its proposed draconian sanction is

necessary.  Nor could it.  The sanction would not cure any statute-of-limitations issues the SCC

may face.  The SCC has already filed adversary proceedings against the Bank Defendants (and

others) regarding the GO Bonds and PBA Bonds.  Either the statute of limitations had run before

the SCC filed those complaints, or it did not.  If the former, then those proceedings will be

dismissed as a matter of law and no production of information will cure the defect.  If the latter,

then if and when the SCC attempts to file Amended Complaints naming the Bank Defendants'

customers, the Court either will rule that the Amended Complaints relate back to the date of the

originally filed Complaints (and therefore are not barred by the statute of limitations) or the

Court will rule that the Amended Complaints do not relate back (and therefore they are barred by

the statute of limitations).  In any event, the actual date on which the Bank Defendants produce

responsive information will not have any impact at all on the Court's rulings regarding potential

statute of limitations issues.  And the SCC's purported need for expedition is inconsistent with

the motion it filed last week seeking to stay these avoidance actions indefinitely, while the

validity of the Challenged Bonds at issue is resolved.

16.      The same is true for the ERS Bonds.  The SCC Proposed Order purports to

impose the sanction 30 days *after* the production deadlines in the SCC Proposed Order—

meaning the sanction would take effect on June 15, 2019 for the ERS Bonds.  This means that

the sanction would only be imposed *after*, in the SCC's own view, the statute of limitations has

run (purportedly May 20, 2019 for the ERS Bonds)—at a point when the precise date of

production would be irrelevant.

17.      In any event, to the extent there are any exigent circumstances present here (and

there are none), they are entirely of the SCC's own making.  The SCC's intimation that the Bank

10

Defendants have been obstinate in their response to or have flouted the First and Second

Discovery Orders by delaying their responses to the SCC's request is entirely baseless.  To the

contrary, the Bank Defendants have been working diligently to meet the SCC's self-imposed,

compressed deadlines.  Since the First Discovery Order, the SCC has made one after another

change in the scope of the information it seeks, including, in particular, significantly expanding

the list of Participant Holders that must run searches—from only 5 listed in connection with the

First Discovery Order to more than 95 named two weeks later in an exhibit to an informative

motion.  The SCC has also expanded and contracted the list of relevant CUSIPs, including in the

Motion, through which it added an additional 28 new CUSIPs and removed 33 CUSIPs included

in the initial request (without specifying those changes in the Motion).

18.     The SCC's oscillations have caused considerable inefficiencies and imposed

substantial—indeed, for many institutions, impossible—burdens on the Bank Defendants in

searching for and producing the information that it requested.  The Motion—which, yet again,

modifies the list of relevant CUSIPs and seeks compliance on a difficult timeline—needlessly

adds more complexity to an already challenging process.

19.     The tools of Bankruptcy Rule 2004 were available to the Oversight Board and the

SCC for many months.  Imposing such a severe sanction on the Bank Defendants threatens to

penalize the wrong parties, for an emergency entirely of the SCC's own.

**C.     The SCC's Proposed Sanction Violates Due Process**

20.     The SCC's proposed sanction would violate the Bank Defendants' due process

rights in at least two ways.

11

21.    <u>First</u>, imposing a flat sanction, regardless of circumstance, plainly violates due process.[13]  As the Supreme Court held almost 40 years ago, sanctions "should not be assessed lightly or without fair notice and an opportunity for a hearing on the record."  *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767 (1980), *superseded on other grounds by statute,* The Antitrust Procedural Improvements Act of 1980, Pub. L. No. 96–349, § 3, 94 Stat. 1154, 1156 (Sept. 12, 1980), *as stated in Morris v. Adams-Millis Corp.,* 758 F.2d 1352, 1356 n.7 (10th Cir. 1985). Consistent with this Supreme Court authority, the First Circuit has held that a trial court must exercise its discretion before ordering sanctions, considering the "totality of the circumstances." *Mulero-Abreu v. P.R. Police Dep't*, 675 F.3d 88, 93 (1st Cir. 2012).  Relevant considerations include the "severity of the violation, the legitimacy of the party's excuse, repetition of violations, the deliberateness *vel non* of the misconduct, mitigating excuses, prejudice to the other side and to the operations of the court, and the adequacy of lesser sanctions." *Robson v. Hallenbeck*, 81 F.3d 1, 2 (1st Cir. 1996).

22.    Contrary to this settled body of law, the SCC's proposed sanction would convert a discovery order into a self-executing sanction order, without notice or an opportunity to be heard. It would convert the Bank Defendants into something they are not as a matter of fact or law— beneficial holders with potentially hundreds of millions of dollars of potential exposure— without considering any of the facts and circumstances as to why any particular Bank Defendant could not meet the SCC's artificial and self-inflicted deadlines.

---

[13] *See Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1, 5 (1st Cir. 2006) (the principle of "notice and an opportunity to be heard" applies to sanctions); *see also Societe Internationale Pour Participations Industrielles Et Commerciales, S.A. v. Rogers*, 357 U.S. 197, 209 (1958) (same).

12

23.     There are several reasons why a Bank Defendant may be unable to complete such a production in the short time frame the SCC has purported to impose.  For example, a Bank Defendant may need to assess whether foreign law applies to one or more customer accounts, and, if so, assess whether that law prohibits or otherwise constrains disclosure of customer information relating to such account in response to the SCC's document request.  In addition, a Bank Defendant may be required (either contractually or otherwise) to communicate with its clients and/or take other steps before disclosing any customer information and may be unable to complete those steps before the SCC's expedited deadlines.  A Bank Defendant may learn that certain data at issue is available only in back-up archives requiring third-party vendor involvement and physical transportation of data tapes in order to restore the data.  A Bank Defendant may uncover in the course of its investigation that principal and interest payments flowed through a multitude of internal accounts—each backed by different data systems and each supported by separate legal, technology and operation teams across the country or, in some cases, the world—before ultimately being distributed to a third-party.  A Bank Defendant may also learn, after searching its records, that certain bonds were the subject of loans, swaps, pre-payments, or other transactions that require deeper analysis before the Bank Defendant is able to inform the SCC (as the SCC has required) whether, and if so to what extent, the Bank Defendant is a beneficial holder.  And a Bank Defendant may simply need more time to fully capture and verify all of the relevant data at issue before it can execute the requested certification.  In short,

there are countless unavoidable and excusable reasons that a Bank Defendant might have in requiring more time to complete its production.[14]

24.     Yet, the SCC's proposed sanction improperly and implicitly ignores and discounts all of them.  That is impermissible.  Indeed, in *Benitez-Garcia v. Gonzalez-Vega*, 468 F.3d 1 (1st Cir. 2006), the First Circuit reversed the imposition of sanctions on plaintiffs that did not meet a purported discovery deadline because the district court "never considered plaintiffs' explanation for their failure to meet the . . . deadlines."  *Id.* at 2.

25.     <u>Second</u>, the SCC's proposed sanction would violate the Bank Defendants' due process right to assert an entirely meritorious defense in an adversary proceeding.  The SCC has filed complaints asserting causes of action to which the Bank Defendants have a well-settled defense as a matter of law:  that they were mere conduits.[15]  The SCC's proposed sanction, as a practical matter, would deprive a Bank Defendant from obtaining discovery, from presenting its defense to a trier of fact (or on a motion pursuant to Rule 12 and/or Rule 56), and from exercising numerous other procedural rights present in the Federal Rules and Bankruptcy Rules. The SCC must afford the Bank Defendants the right to defend themselves on the merits and

---

[14] Starting with the SCC's initial Motion dated April 8 [ECF No. 6143], the SCC has requested information concerning payments that were made by DTC to Participant Holders through the specific DTC accounts identified in Appendix 2 to the motions, and were then transferred by the Participant Holders to the actual beneficial holders.  [ECF No. 6143, at ¶ 20.] The SCC's document request specifically defined the term "You" by reference to Appendix 2, including the DTC account numbers.  In the May 7 Motion, the SCC added a second document request that seeks information concerning transfers to the Participant Holders for their own account.  The Bank Defendants object to this request to the extent it (i) seeks information concerning transfers that are below the defined Threshold Amounts or (ii) seeks information concerning transfers that were not made to the Bank Defendants in their capacities as Participant Holders and through the identified DTC accounts.

[15] *See infra* note 19.

14

cannot be allowed to strip them of their most significant defenses through a paragraph slipped into a proposed order in what purports to be Bankruptcy Rule 2004 discovery.

### D.   The SCC's Proposed Sanction Is Procedurally Improper

26.     Not only would the SCC's proposed sanction impose a draconian result contrary to the facts and the law and the requirements of due process, but it is also procedurally improper. The SCC brings this Motion under Bankruptcy Rule 2004.  But at least with respect to the GO Bonds and PBA Bonds, the SCC has already initiated adversary proceedings against, among others, the Bank Defendants.[16]  It is settled law that, having initiated such adversary proceedings, the SCC can no longer obtain discovery pursuant to Bankruptcy Rule 2004.  9 COLLIER ON BANKRUPTCY ¶ 2004.01[08] (16th ed. 2019) (the "pending proceeding rule" provides that when "an adversary proceeding or a contested matter is pending, then the parties to that proceeding or matter may no longer utilize the liberal provisions of Bankruptcy Rule 2004 and should utilize the discovery devices provided for in Rules 7026 through 7037.").[17]  Thus, the mechanism through which the SCC seeks to impose a draconian sanction is not even permissible in the first place.

27.     Nor could the SCC credibly argue that it seeks to impose sanctions for a failure to comply with Bankruptcy Rule 2004 discovery served prior to its filing of the adversary proceedings.  Notwithstanding its inaccurate Certificate of Service [ECF No. 6544], the SCC

---

[16] *See supra* note 8.

[17] *See also, e.g.*, *In re SunEdison, Inc.*, 572 B.R. 482, 490 (Bankr. S.D.N.Y. 2017); *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (calling this a "well recognized rule"); *In re Table Talk, Inc.*, 51 B.R. 143, 145-146 (Bankr. D. Mass. 1985) (applying Bankruptcy Rule 2004 when no adversary proceeding had been filed and noting that "Bankruptcy Rules 7026 through 7037 apply the Federal Rules of Civil Procedure only in adversary proceedings").

served certain of the Bank Defendants with its original Bankruptcy Rule 2004 document request the day before (or indeed the day of) the stated deadline to produce information regarding GO Bonds and PBA Bonds.  [ECF No. 6384] (setting April 30, 2019 deadline); *see, e.g.*, Exs. D-E to the Quiñones-Rivera Declaration (service on April 29, 2019 and April 30, 2019).  Three days later, the SCC sued the Bank Defendants, having never provided them, as a practical matter, with a reasonable deadline satisfying due process considerations, or a realistic opportunity to comply with Bankruptcy Rule 2004 discovery.

28.     Having initiated adversary proceedings against the Bank Defendants pertaining to the GO Bonds and PBA Bonds, the SCC should be required to comply with Rules 26 and 34 of the Federal Rules of Civil Procedure (the "Rules") (made applicable here by Bankruptcy Rules 7026 and 7034).  Under those Rules, a party may take discovery only after the court holds a scheduling conference that has not yet occurred (*see* Rule 26(d)(1) and (f)).  Moreover, the Rules afford the party receiving the discovery request 30 days to respond (Rule 34(b)(2)(A)), and do not contemplate the imposition of harsh sanctions where the party receiving the request may need more than 30 days to complete its document production.  *See Rentas v. Mapfre Praico Ins. Co. (In re Luis Diesel Servs., Inc.)*, No. 17-018, 2018 WL 2102322, at *10-12 (B.A.P. 1st Cir. May 4, 2018) (reversing imposition of sanctions where the belated discovery production was not willful or part of a pattern and did not disrupt the flow of the case, and where the bankruptcy court did not consider lesser sanctions).[18]

## II.   The SCC Proposed Order Omits A Necessary Remedy For Any Bank Defendant That Produces Discovery Establishing That It Was Not A Beneficial Holder

---

[18] Nevertheless, and to be clear, the Bank Defendants are diligently gathering the requested information and will attempt in good faith to complete the requested productions, to the extent not prohibited by foreign law.

29.     In addition to proposing an impermissible sanction against the Bank Defendants,

the SCC Proposed Order also omits a crucial remedy for the Bank Defendants that is required by

law and that the SCC already has promised informally but fails to raise with the Court.

30.     As noted above at pp. 9, it is settled law that entities that are mere conduits for a

transfer are not the proper defendants to an avoidance action.[19]  For this reason, many

bankruptcy trustees (or successors thereto) in avoidance actions have stipulated to, and courts

have approved and ordered, "conduit protocols," whereby the plaintiff agrees to dismiss a

defendant from such avoidance action once the defendant has provided discovery establishing

that it was not a beneficial holder.  In fact, the SCC's lead counsel was party to such a stipulation

and order in avoidance actions in the *Lyondell Chemical Company* bankruptcy case.[20]  Similar

stipulations and orders have been proposed and entered in avoidance actions in the bankruptcy

cases of, at a minimum, *Tribune Company* and *Orion HealthCorp, Inc.*[21]

---

[19] *See, e.g.*, *Christy v. Alexander & Alexander of N.Y. Inc. (In re Finley, Kumble, Wagner, Heine, Underberg, Manly, Myerson & Casey)*, 130 F.3d 52, 58 (2d Cir. 1997) (citing cases from multiple federal circuit courts of appeal); *Liquidating Agent of Stanwich Fin. Servs. Corp. v. Bear Stearns & Co. (In re Stanwich Fin. Servs. Corp.)*, No. 16-cv-01176, 2018 WL 1219285, at *5-8 (D. Conn. Mar. 8, 2018) (granting defendant's motion for summary judgment on grounds that it was a "mere conduit"); *Lassman v. Cronin*, 518 B.R. 1, 7 (D. Mass. 2014) (approving "mere conduit" rule); *Richardson v. United States (In re Anton Noll, Inc.)*, 277 B.R. 875, 880 (B.A.P. 1st Cir. 2002) (same).

[20] Stipulation and Order Regarding Protocol for Dismissal of Conduits and Non-Transferees, *Weisfelner v. Fund 1 (In re Lyondell Chem. Co.)*, Adv. Proc. No. 10-04609 (Bankr. S.D.N.Y. Dec. 4, 2014), ECF No. 2124.

[21] Conduit Protocol, *In re Tribune Co. Fraudulent Conveyance Litig.*, No. 11-md-02296 (S.D.N.Y. Apr. 24, 2014), ECF No. 5695; Stipulation and Order Regarding Protocol for Initial Discovery and Dismissal of Conduits and Non-Transferees, *Orion HealthCorp, Inc. v. Capita IRG Trustees (Nominees) Limited (In re Orion HealthCorp, Inc.)*, Adv. Proc. No. 18-08048 (Bankr. E.D.N.Y. Aug. 23, 2018), ECF No. 61.  The undersigned possesses copies of these orders and can make them available to the Court or the SCC upon request.

31.     Here, consistent with well-settled law and established practice in similar avoidance actions, the SCC already promised this remedy informally by e-mail to counsel for certain of the Bank Defendants, attached to the Quiñones-Rivera Declaration as **Exhibit C**.  Yet, it inexplicably fails even to raise this solution with the Court.

32.     The Bank Defendants respectfully submit that this concept, as reflected in the Bank Defendants' Proposed Order, is an appropriate Court-ordered remedy for any Bank Defendant that establishes through its production that it was not a beneficial holder (or, at minimum, has a beneficial holding that is less than one of the Threshold Amounts in the document request)—namely, its dismissal from the complaint within 30 days of its production. Having offered this standard remedy to some Bank Defendants already, the SCC can hardly be heard to complain about formalizing such relief in a Court order here.

III.    **The SCC's Proposed Production Deadlines Are Impractical And Unnecessary**

33.     Finally, the Bank Defendants object to the rigid May 16, 2019 production deadline for the ERS Bonds and June 1, 2019 production deadline for the GO Bonds and PBA Bonds in the SCC Proposed Order.  The Motion purports to request discovery of information regarding 23 new CUSIPs relating to ERS Bonds that were not the subject of any discovery request from the SCC before May 7, 2019.  This provides the Bank Defendants only seven (7) business days to search for, collect, review, and produce this information.  Moreover, certain of the Bank Defendants did not receive service of *any* document request until April 29, 2019, or April 30, 2019, leaving them a total of only twelve (12) or thirteen (13) business days to perform

the same tasks regarding the two (2) CUSIPs relating to ERS Bonds that were included in the

SCC's original document request on April 8, 2019.[22]

34.     The SCC does not explain or justify anywhere its delay in identifying these 23

new ERS Bonds (or the 5 additional GO Bonds and PBA Bonds that the SCC also added to its

document request for the first time in the Motion).  The SCC's inexplicable delay should not be

held against the Bank Defendants.  The SCC will not be prejudiced by a later production date for

the ERS Bonds since, as the SCC has proven with respect to the GO Bonds and the PBA Bonds,

the SCC appears ready to sue the Bank Defendants before the limitations period—in its view—is

set to expire, and then to seek to amend its complaint(s) to name the Bank Defendants'

customers after receiving the Bank Defendants' productions.  Indeed, in the SCC Proposed

Order, the Oversight Board anticipates that the Participant Holders' responses may "remain[]

incomplete" as of the proposed deadlines.  (SCC Proposed Order ¶ 7.)

35.     Similarly, the SCC's proposed June 1, 2019 production deadline for the GO

Bonds and PBA Bonds is too compressed and entirely unnecessary.  As noted *infra* (at ¶ 14), the

actual date on which the Bank Defendants produce responsive information will not have any

impact at all on the Court's rulings regarding potential statute of limitations issues.  And the

SCC's purported need for expedition is inconsistent with the motion it filed last week seeking to

stay these avoidance actions indefinitely, while the validity of the Challenged Bonds at issue is

resolved.

36.     For these reasons, the Bank Defendants request a modest modification of the SCC

Proposed Order to provide for the production of the ERS Bond information "on or before May

---

[22] The SCC appears to have removed one (1) of the three (3) original CUSIPs relating to
ERS bonds in Appendix 3 to the Document Request.

16, 2019 or as soon as reasonably practicable thereafter," and production of the GO Bond and

PBA Bond information "on or before June 1, 2019 or as soon as reasonably practicable

thereafter."  Bank Defendants' Proposed Order ¶ 6.[23]

---

[23] The Bank Defendants also request that Paragraph 6 of the Proposed Order be modified to allow for reasonable extensions of the deadlines for good cause shown, as in the Court's April 18 order.

## **CONCLUSION**

37.     WHEREFORE, the Bank Defendants respectfully request that this Court decline

to enter the SCC Proposed Order and instead enter an order substantially in the form attached to

the Quiñones-Rivera Declaration as **Exhibit A** and granting the Bank Defendants such other

relief as this Court deems just and proper.


Dated:  May 10, 2019
          San Juan, Puerto Rico

                                        /s/ *Roberto C. Quiñones-Rivera*
                                        MCCONNELL VALDÉS LLC
                                        Roberto C. Quiñones-Rivera, Esq.
                                        USDC-PR Bar No. 211512
                                        270 Muñoz Rivera Avenue
                                        Hato Rey, Puerto Rico 00918
                                        Telephone: (787) 250-2631
                                        Facsimile:  (787) 759-9225
                                        E-mail:  rcq@mcvpr.com

                                        *Counsel to Barclays Capital Inc., RBC Capital*
                                        *Markets, LLC, RBC Dominion Securities Inc.,*
                                        *UBS Financial Services Inc., and UBS*
                                        *Securities LLC*

                                            – and –

SEPULVADO, MALDONADO & COURET

/s/ *Albéniz Couret-Fuentes*
Elaine Maldonado-Matías
USDC-PR Bar No. 217309
Albéniz Couret-Fuentes
USDC-PR Bar No. 222207
José Javier Santos Mimoso
USDC-PR Bar No. 208207
304 Ponce de León Ave. – Suite 990
San Juan, PR 00918
Telephone: (787) 765-5656
Facsimile:  (787) 294-0073
E-mail:  emaldonado@smclawpr.com
E-mail:  acouret@smclawpr.com
E-mail:  jsantos@smclawpr.com

REED SMITH LLP

/s/ *Eric A. Schaffer*
Eric A. Schaffer
Luke A. Sizemore
225 Fifth Avenue, Suite 1200
Pittsburgh, PA 15222
Telephone: (412) 288-3131
Facsimile:  (412) 288-3063
E-mail:  eschaffer@reedsmith.com
E-mail:  lsizemore@reedsmith.com

/s/ *C. Neil Gray*
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 521-5400
Facsimile:  (212) 521-5450
E-mail:  cgray@reedsmith.com

*Counsel to The Bank of New York Mellon and
Pershing LLC*

– and –

22

BOBONIS, BOBONIS & RODRIGUEZ
POVENTUD
Enrique G. Figueroa-Llinás
USDC No. 201709
129 de Diego Ave.
San Juan, Puerto Rico 00911-1927
Telephone: (787) 725-7941
Facsimile:  (787) 725-4245
E-mail: efl@bobonislaw.com

WINSTON & STRAWN LLP
Jennifer L. Malin (*pro hac vice*)
Carrie V. Hardman (*pro hac vice*)
200 Park Avenue
New York, NY 10166
Telephone: (212) 294-6700
Facsimile:  (212) 294-4700
E-mail: jmalin@winston.com
E-mail: chardman@winston.com

*Co-counsel to Bank of America, N.A. and
Merrill Lynch, Pierce, Fenner & Smith Inc.*

23