**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

---------------------------------------------------------------------X
:
In re:                                                               :
:
THE FINANCIAL OVERSIGHT AND MANAGEMENT        :    PROMESA
BOARD FOR PUERTO RICO,                                    :    Title III
:
           as representative of                                  :    Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*,     :    (Jointly Administered)
:
           Debtors.[1]                                              :
---------------------------------------------------------------------X

**LIMITED OBJECTION AND RESERVATION OF RIGHTS TO THE URGENT MOTION FOR ENTRY OF ORDER APPROVING STIPULATION AND AGREED ORDER BY AND AMONG FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, ITS SPECIAL CLAIMS COMMITTEE, AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS RELATED TO JOINT PROSECUTION OF CERTAIN CAUSES OF ACTION OF PUERTO RICO HIGHWAYS AND TRANSPORTATION AUTHORITY AND EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO**

**COME NOW** AmeriNational Community Services, LLC (hereafter the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds issued by the DRA pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018 (the "GDB Restructuring Act"), and the approved Qualifying Modification (the "Qualifying Modification") for the Government Development Bank for Puerto Rico[2] (the "GDB") under Title VI of the *Puerto Rico*

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

[2] *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS).

1

4147-8346-1916.5

*Oversight, Management and Economic Stability Act* ("PROMESA") (hereafter the "Collateral Monitor" and jointly with the Servicer, the "DRA Parties"), by and through the undersigned legal counsel,[3] and respectfully submit this limited objection and reservation of rights to the *Urgent Motion for Entry of Order Approving Stipulation and Agreed Order By and Among Financial Oversight and Management Board, its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Certain Causes of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth of Puerto Rico* (the "Motion") [Dkt. No. 6867].[4]

## PRELIMINARY STATEMENT

The DRA is likely the largest creditor of HTA. The DRA acquired this position by succeeding the GDB as the lender of more than $1.7 billion in principal loans to HTA, as well as the holder of $200,000,000 in principal of HTA bonds, pursuant to the GDB's Title VI Qualifying Modification.

The DRA Parties object to the Court's approval of the proposed stipulation on several grounds. *First*, the Motion is legally deficient in its request to appoint the Committee as a co-trustee because the requirements of section 926(a) of the Bankruptcy Code have not been satisfied. Section 926(a) permits a creditor to step into the shoes of the debtor if the debtor fails to pursue claims under Chapter 5 of the Bankruptcy Code. Here, the debtor (the Oversight Board) would be a co-plaintiff with the Committee (which is not a creditor by its own admission). Thus, there is no need for the Committee to step into their shoes. *Second*, the stipulation as drafted is vague and does not provide parties with certainty on whether they will be subject to its terms. *Third*, despite having nearly two years to prepare the Motion, the movants provide little notice (just four days) and no fair opportunity for parties-in-interest to consider the Motion and the Stipulation in a meaningful manner (which is why the DRA Parties have filed only a

---

[3] The undersigned hereby appears on behalf of the Collateral Monitor on a limited capacity. *See* Dkt. No. 6297. Douglas S. Mintz of Orrick, Herrington & Sutcliffe intends to request leave to appear *pro hac vice* for the Collateral Monitor. However, given the limited notice of this Motion, the Collateral Monitor will file such request after the deadline for this Objection.

[4] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Motion.

2

4147-8346-1916.5

limited objection at this time).  *Last*, the Committee may suffer from meaningful conflicts in its role as fiduciary to HTA unsecured creditors.  The Motion and the Stipulation's lack of clarity exacerbate the problems posed by the potential conflicts and insufficient notice to parties-in-interest, depriving such parties of a meaningful opportunity to address these deficiencies through discovery or other means.

The DRA Parties offer one additional non-legal note for the Court's attention.  The potential litigation envisioned by the movants could create significant financial harm to the Commonwealth, undermining the very intent of the Oversight Board.  In this regard, the joint litigation stipulation entered in the Commonwealth's Title III proceeding has shown to be a poor model for the HTA and ERS cases, especially when pursued in this hurry-up, ill-considered fashion.  As highlighted by media outlets, the Commonwealth Stipulation has led to the filing of over 200 adversary proceedings against different vendors and suppliers of the government, has created unnecessary uncertainty in the Island, and a "potential adverse impact…on hundreds of local businesses".  *See* Joanisabel Gonzalez, *Seeking a solution for suppliers*, El Nuevo Dia online edition, May 10, 2019.[5]

For these reasons, the Court should deny the Motion and not enter the Stipulation at this time.

## BACKGROUND

I. **The DRA is HTA's Largest Creditor**

A. **Pre-Title VI: GDB Makes Significant Loans to HTA and Becomes the Holder of a Portion of HTA's Bond Portfolio**

1. Before the commencement of GDB's Title VI proceeding, the GDB made 24 loans to the HTA (the "HTA Loans") which, collectively, have an outstanding principal balance in excess of $1.7 billion.  The HTA Loans are payable primarily from, and secured by, a pledge of certain revenues allocated by the Commonwealth to HTA by statute.  *See* Act No. 30-2013 (June 25, 2013); Act No. 31-2013 (June 25, 2013).

---

[5] https://www.elnuevodia.com/english/english/nota/seekingasolutionforsuppliers-2493105/

3

4147-8346-1916.5

2. GDB was also the holder of $200,000,000 in principal of 1998 *Puerto Rico Highway and Transportation Authority, Transportation Revenue Bonds (Series A)* (the "HTA Bonds", and jointly with the HTA Loans, the "HTA Obligations"),

### B. The GDB Restructures its Debt under Title VI of PROMESA and Transfers the HTA Obligations to the DRA

3. On August 10, 2018, the Financial Oversight and Management Board for Puerto Rico initiated a proceeding to restructure GDB's debt obligations pursuant to Title VI of PROMESA. *See* Dkt. No. 1 of Civil Case No. 18- 01561 (LTS). The Oversight Board certified GDB's Qualifying Modification under PROMESA on November 5, 2018, which Qualifying Modification was subsequently approved by order of this Court dated November 7, 2018 (the "Approval Order"). *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS).

4. Under the terms of the Qualifying Modification, existing GDB bondholders received new 7.50% GDB Debt Recovery Authority Bonds (Taxable) due 2040 (the "New Bonds"). To secure the obligations under the New Bonds, the GDB transferred a substantial portion of its assets to the DRA. *Id.* The property transferred to the DRA consists primarily of loans made by the GDB to certain Commonwealth entities and other related instrumentalities, including municipalities. *See* Offering Memorandum for GDB Debt Recovery Authority Bonds (Taxable) ("OM"), dated as of November 7, 2018 at 100-137.

5. The DRA is a statutory public trust and governmental instrumentality of the Commonwealth created by the GDB Restructuring Act to facilitate the restructuring of certain of GDB's indebtedness pursuant to the Qualifying Modification. *See* Act No. 109-2017 at Arts. 201 and 204. The DRA's purpose is to receive the property transferred from the GDB in order to manage and liquidate those assets to pay the obligations under the New Bonds. *Id.* at Arts. 204 and 207.

### C. HTA Owes at Least $1.7 Billion in Principal to the DRA on the HTA Loans and at Least $200 Million in Principal for the HTA Bonds

6. As part of the Qualifying Modification, the GDB transferred the HTA Obligations to the DRA. *Id.* at 129. As a result, HTA owes DRA not less than $1.7 billion in principal for the HTA Loans,

4

not less than $567 million in interest, fees and expenses related to such Loans as of November 7, 2018, and not less than $200,000,000 in principal for the HTA Bonds. *Id.* at 128.

## II. The Motion is Filed

7. On May 8, 2019, the parties filed the Motion, seeking approval of a stipulation and order (the "Stipulation") to, among other things, establish procedures for (i) the appointment of Special Claims Committee members and Committee members as "co-trustees and co-plaintiffs" with respect to certain adversary proceedings, (ii) appointment of the Committee as the sole trustee and plaintiff with respect to certain adversary proceedings, and (iii) the parties' litigation efforts.

8. On May 9, 2019, the Court entered an order setting May 12, 2019 at 6:00 P.M. AST as the objection deadline to the Motion and scheduling a hearing on May 16, 2019 to consider the Motion. *See* Dkt. No. 6880.

## OBJECTION

9. The Court should deny this Motion for at least four reasons:

10. *First, the Movants provide no basis for the appointment of the Committee as a co-trustee.* Section 926(a) of the Bankruptcy Code (as incorporated by section 301(a) of PROMESA) provides that "[i]f the debtor refuses to pursue a cause of action under section 544, 545, 547, 548, 549(a), or 550 of this title, then *on request of a creditor*, the court may appoint a trustee to pursue such cause of action." 11 U.S.C. § 926(a) (emphasis added). As a threshold matter, section 926(a) mandates that a request to be appointed trustee be made by a "creditor." The Committee is not a "creditor" under section 926(a) of the Bankruptcy Code. The Committee admits this at footnote 4 of its *Urgent Motion of Official Committee of Unsecured Creditors for Order, under Bankruptcy Code Sections 105(A) and 926(A) and Bankruptcy Rule 9006, Establishing (i) Procedures with Respect to Disclosure of Avoidance Actions to be Asserted by Oversight Board, and (ii) Expedited Briefing Schedule for Potential Request to Appoint Trustee under Bankruptcy Code Section 926(a)* [Dkt. 5997]. Accordingly, the Committee cannot act as trustee under section 926 of the Bankruptcy Code.

5

11. Further, Congress clearly authorizes the appointment of a trustee only when the debtor *refuses* to prosecute an avoidance action. Here section 926 cannot justify the appointment of the Committee as a "co-trustee" when the debtor, through the Oversight Board, has specifically *agreed* to pursue the causes of action as a co-trustee.

12. Moreover, as to any causes of action that the Committee would pursue on a sole basis, section 926 requires "the requesting creditor . . . to present a substantial showing, both factual and legal, of the likelihood of the existence of a voidable transfer." 6 *Collier on Bankruptcy* ¶ 926.02[4] (16th ed. 2019). The power to appoint such a trustee appears to be much more limited than in chapter 11. *See In re New York City Off-Track Betting Corp.*, 2011 WL 309594, at *4 (Bankr. S.D.N.Y. 2011) ("Courts should be loath to appoint a trustee given that the court's limited powers in a chapter 9 case are best understood as operating within the context of constitutional and federalism concerns"). Here, the movants have not even identified the causes of action that the Committee intends to pursue, let alone made a substantial showing that the Oversight Board has *refused* to pursue these causes of action.

13. There is, thus, no basis at this time for the Court to appoint the Committee as a trustee under Section 926.

14. *Second, the Motion and Stipulation are vague as to what causes of action the Co-Trustees would bring and who this would impact. The movants do not provide potential counterparties with sufficient notice that their rights may be adversely affected.* The Motion and Stipulation provide no clarity as to what causes of action might be subject to this Stipulation. The Motion provides multiple examples of this lack of clarity.

15. For example, the Motion states that the Committee shall be a co-trustee and co-plaintiff to all Initial Adversary Proceedings and all subsequent adversary proceedings or lawsuits commenced by the Oversight Board or the Special Committee against potential defendants. Motion ¶ 7; Stipulation ¶¶ 3, 7. Furthermore, while ¶ 14 of the Stipulation states that Tolling Agreements with Potential Defendants "…shall cover all claims that are subject to section 546(a) or section 108(a) of the Bankruptcy Code", its redaction does not specifically limit the tolling effect to those causes of action only. This can give rise to

situations where Tolling Agreements may be drafted in such a way that the Parties may seek to expand the statute of limitation for other causes of action beyond the scope of sections 108(a) and 546 of the Bankruptcy Code.

16. This lack of clarity precludes parties-in-interest from assessing how their rights may be impacted, and, in turn, compounds the due process problems discussed below.

17. *Third, the Motion undercuts parties' due process rights as it deprives them of sufficient notice to meaningfully respond.* The HTA Title III case is nearly two years old. Even though the statutory deadline necessitating this Motion has been known for the entire two-year period, the movants left parties-in-interest with just four days to review and respond to the Motion and Stipulation, which, if approved, would open the floodgates to significant litigation by the Parties.

18. Under the U.S. Constitution, "[n]o person shall . . . be deprived of . . . property, without due process of law . . . ." U.S. Const. amend. V. The Supreme Court has held that "the bankruptcy power" is "subject to the Fifth Amendment." *See Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 589 (1935).

19. Motions must provide counterparties with sufficient notice, so those parties have an opportunity to respond. *See, e.g.*, *Cousins Int'l Food, Corp. v. Vidal*, 565 B.R. 450, 461 (B.A.P. 1st Cir. 2017) (*quoting Mullane v. Cent. Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950)) ("An elementary and fundamental requirement of due process *in any proceeding* which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.") (emphasis in original).

20. The First Circuit has held that "notice is the cornerstone underpinning Bankruptcy Code procedure." *In re Savage Indus.*, 43 F.3d 714, 720 (1st Cir. 1994). These notice requirements are "founded in fundamental notions of procedural due process." Id. at 721. Therefore, "the debtor in possession or trustee must ensure 'parties in interest' adequate notice and opportunity to be heard *before*

7

their interests may be adversely affected." *Id.* (emphasis in original); *In re Garland Corp.*, 6 B.R. 456, 459 (1st Cir.1980) ("The right to be heard 'has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.'") (quoting *Mullane*, 339 U.S. at 314).  *See also* <u>Cousins</u>, 565 B.R. at 461.

21. If notice is not properly provided to parties, then any resulting order cannot be binding on them.  *See United Student Aids Funds v. Espinosa*, 559 U.S. 260 (2010) (holding that a confirmed plan is binding on creditors provided that parties were given adequate notice as required by the Due Process clause of the Constitution); *In re Johns-Manville Corp.*, 600 F.3d 135, 138 (2d Cir. 2010) (non-settling insurer was denied due process, based on insufficient notice, in connection with orders interpreting orders approving settlement between Chapter 11 debtor and its liability insurer, and therefore was not bound by those orders).

22. Here, the movants have failed to provide any meaningful notice.  Moreover, the Motion lacks any justification as to why the Court should approve the Motion – with its potentially massive impact – on just four days' notice, with little opportunity for objection.  The proposed trustees knew this deadline for nearly two years – yet took no action until the week before the proposed hearing to move this matter forward.  *See* 11 U.S.C. § 108(a) and 546(a).  This lack of notice is procedurally improper and violates the constitutional due process rights of parties-in-interest to have a meaningful opportunity to review the Motion and Stipulation.  The Court simply cannot approve the Motion on the timing demanded by the movants.

23. The fact that the statute of limitations expires imminently is of no matter.  The movants have chosen to ignore this impending deadline for two years and cannot now benefit from their self-created emergency.  *See Figueras v. Municipality of San Juan*, No. 13-1008, 2015 U.S. Dist. LEXIS 103149, at **8-10 (D.P.R. Aug. 4, 2015) (internal quotations and citations omitted) (denying plaintiff's request to join an additional defendant that was made several days before a discovery deadline, because the plaintiff did not make reasonable and timely efforts to identify and serve the putative defendant, and granting the request would subject the defendants to undue prejudice); *In re Blackwell ex rel. Estate of*

*I.G. Services, Ltd.*, 279 B.R. 818, 820 (Bankr. W.D. Tex. 2002) (stating, in the context of a party's failure to move for withdrawal of the reference, that litigants should not be permitted to benefit from their lack of diligence and when they proceed in a manner inconsistent with applicable law).

24.     *Fourth, there may be a sharp conflict of interest that should preclude the Committee from being appointed a trustee to prosecute actions against HTA creditors.*  The Committee serves as a fiduciary for HTA unsecured creditors, which creditors may be the target for avoidance actions. *See In re SPM Mfg. Corp.*, 984 F.2d 1305, 1315 (1st Cir. 1993) (noting that an official committee of unsecured creditors is a fiduciary for whom it represents).  Because a list of potential avoidance actions has not been disclosed, it is impossible for parties-in-interest to assess the extent of the Committee's conflicts of interest, especially when considering the outstanding deficiencies of the Committee's Rule 2019 statements in this case, which do not adequately summarize the disclosable economic interests of its members.

25.     Assured Guaranty Corp., Assured Guaranty Municipal Corp., Ambac Assurance Corp., the Financial Guaranty Insurance Company, and National Public Finance Guarantee Corporation which are insurers of HTA debt, are filing a concurrent objection that addresses these concerns in additional detail.  The DRA Parties join those movants in their objections to the Committee's role as trustee.

26.     Thus, contrary to what is asserted in the Motion, the Commonwealth Stipulation should not be the model to be adopted in the HTA case, and the Court should deny the Motion for the reasons asserted above.

## RESERVATION OF RIGHTS

27.     The DRA Parties reserve all rights and remedies with respect to the Motion and Stipulation, including but not limited to, the right to challenge the standing of any plaintiff who brings a cause of action pursuant to the Stipulation.

9

4147-8346-1916.5

**CONCLUSION**

28.　　Based on the foregoing, the DRA Parties respectfully request that the Court deny the Motion.

In San Juan, Puerto Rico, today May 12, 2019.

**MCCONNELL VALDÉS LLC**

*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority and limited counsel to for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*[6]

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico  00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile:  787-759-9225

By: *s/Arturo J. García-Solá*
Arturo J. García-Solá
USDC No. 201903
Email: ajg@mcvpr.com

By: *s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com

---

[6] The undersigned hereby appears on behalf of the Collateral Monitor on a limited capacity. Douglas S. Mintz of Orrick, Herrington & Sutcliffe intends to request leave to appear *pro hac vice* for the Collateral Monitor.  However, given the limited notice of this Motion, the Collateral Monitor will file such request after the deadline for this Objection.