**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

-------------------------------------------------------------------- x

|  |  |
|---|---|
| In re: | : |
|  | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
|  | : |
|      as representative of | : Case No. 17-BK-3283 (LTS) |
|  | : |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | : (Jointly Administered) |
|  | : |
|      Debtors.[1] | : |

-------------------------------------------------------------------- x

**OMNIBUS REPLY OF FINANCIAL MANAGEMENT BOARD, ITS SPECIAL CLAIMS
COMMITTEE, AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN
SUPPORT OF URGENT JOINT MOTION FOR ENTRY OF ORDER APPROVING
STIPULATION AND AGREED ORDER RELATED TO JOINT PROSECUTION OF
CAUSES OF ACTION OF PUERTO RICO HIGHWAYS AND TRANSPORTATION
AUTHORITY AND EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT
OF THE COMMONWEALTH OF PUERTO RICO [DOCKET NO. 6867]**

---

[1]     The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a
bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax
identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-
3283 (LTS)) (Last Four Digits of Federal Tax ID:  3481), (ii) Employees Retirement System of the Government
of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of
Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case
No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID:  3808), (iv) Puerto Rico Sales Tax Financing
Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID:
8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last
Four Digits of Federal Tax ID:  3747).

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

ARGUMENT ....................................................................................................................... 4

I.      MONOLINES MISCHARACTERIZE *AURELIUS* RISK ................................................ 4

II.     MEMBERS OF SPECIAL CLAIMS COMMITTEE AND COMMITTEE CAN
        PROPERLY SERVE AS CO-TRUSTEE AND CO-PLAINTIFF .................................... 5

        A.      Parties Have Satisfied Requirements of Section 926(a) of Bankruptcy
                Code ............................................................................................................ 5

        B.      Court Has Authority to Grant Derivative Standing on a Consensual Basis .......... 9

        C.      Committee Is Not Conflicted and Is Best Suited to Act as Co-Trustee and
                Co-Plaintiff .................................................................................................. 11

III.    RETIREE COMMITTEE SHOULD NOT BE SUBSTITUTED FOR
        COMMITTEE AS CO-PLAINTIFF/CO-TRUSTEE ...................................................... 13

IV.     COMMITTEE'S RULE 2019 STATEMENT IS NOT DEFECTIVE ............................ 14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Altair Airlines, Inc.*,
  727 F.2d 88 (3d Cir. 1984)..................................................................................7

*Aurelius v. Puerto Rico*,
  915 F. 3d 838 (1st Cir. 2019) ..............................................................................1

*In re BH &P Inc.*,
  103 B.R. 556 (Bankr. D.N.J. 1989) ..................................................................12

*In re BH & P, Inc.*,
  949 F.2d 1300 (3d Cir. 1991)............................................................................12

*In re Continental Airlines Corp.*,
  64 B.R. 874 (Bankr. S.D. Tex. 1986) .................................................................7

*In re Enron Corp.*,
  279 B.R. 671 (Bankr. S.D.N.Y. 2002)..............................................................12

*In re Fin. Oversight & Mgmt. Bd.*,
  583 B.R. 626 (D.P.R. Nov. 16, 2017)..................................................................9

*Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of
  Enron Corp.*,
  No. 02 CIV. 6274 (GBD), 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003) ............................12

*In re Parkway Calabasas Ltd.*,
  89 B.R. 832 (Bankr. C.D. Cal. 1988) ................................................................12

*Wein Air Alaska, Inc.v. Bachner*,
  865 F. 2d 1106 (9th Cir. 1989) ...........................................................................7

*In re White Motor Credit Corp.*,
  18 B.R. 720 (Bankr.N.D.Ohio 1980) ................................................................12

To the Honorable United States District Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (other than

COFINA) (the "Committee"), the Financial Oversight and Management Board for Puerto Rico

(the "Oversight Board"), and the Special Claims Committee of the Oversight Board (the "Special

Claims Committee" and, together with the Oversight Board and the Committee, the "Parties"),

hereby submit this omnibus reply (the "Reply") in response to the objections and reservation of

rights (the "Objections")[1] with respect to the HTA/ERS Stipulation and in support of the motion

to approve the HTA/ERS Stipulation [Docket No. 6867] (the "Approval Motion").[2]  In support

of this Reply, the Parties respectfully state as follows:

## PRELIMINARY STATEMENT

1.      The HTA/ERS Stipulation seeks to ensure that valuable causes of action are

preserved for the benefit of HTA and ERS in light of the upcoming expiration of the statutes of

limitations[3] and the uncertainty created by the First Circuit's decision in *Aurelius v. Puerto Rico*,

915 F. 3d 838 (1st Cir.  2019).  The Objectors essentially ignore this basic fact and, instead,

contend that: (a) the *Aurelius* decision is not of any concern because (i) the First Circuit extended

the stay of its mandate of the *Aurelius* decision to July 15, 2019 and (ii) the President has

announced his "intent" to reappoint the current members of the Oversight Board for the

remainder of their term; and (b) the members of the Special Claims Committee, on the one hand,

and the Committee, on the other hand, cannot be appointed as co-plaintiff or co-trustee because

---

[1]    The Objections were filed by the Fee Examiner [Docket No. 6906]; the Official Committee of Retired
Employees of the Commonwealth of Puerto Rico (the "Retiree Committee") [Docket No. 6908]; certain holders
of ERS bonds (the "Puerto Rico Funds") [Docket No. 6909]; AmeriNational Community Services, LLC, as
servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC (collectively, "DRA")
[Docket No. 6910]; and Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty
Insurance Company, National Public Finance Guarantee Corporation, and Ambac Assurance Corporation
(collectively, the "Monolines") [Docket No. 6913].  The Fee Examiner, the Retiree Committee, the Puerto Rico
Funds, DRA, and the Monolines are collectively referred to as the "Objectors."
[2]    All capitalized terms used but not defined herein have the meanings set forth in the Approval Motion.
[3]    The statutes of limitations under section 108(a) and 546(a) of the Bankruptcy Code expire on May 20, 2019
with respect to HTA and ERS causes of action.

(i) the Parties have not met their burden under section 926(a) of the Bankruptcy Code because no creditor of HTA or ERS has moved for relief, (ii) the Court may not grant derivative standing, even on a consensual basis, in these Title III cases, and (iii) the Committee is conflicted and/or does not represent the interests of HTA and ERS creditors.  As detailed below, each of these arguments is without merit.

2.      As the Parties previously explained, and as the Court recognized at the April 24 hearing when it approved the Commonwealth Stipulation, the *Aurelius* decision (unless overturned by the U.S. Supreme Court) could be used later by certain parties (including defendants in adversary proceedings, which include the Monolines) to attempt to challenge the Oversight Board's authority to commence adversary proceedings on behalf of the Debtors.  This is exactly the type of challenge that Aurelius previewed in its informative motion,[4] a motion that was filed by the same appellate counsel that represents Assured (one of the Monolines) before the First Circuit with regard to Assured's appeal of this Court's Appointment Clause ruling.  Thus, the expiration of the stay of the First Circuit's mandate and the President's announcement that he "intended" to nominate the current Oversight Board members for the remainder of their term are simply irrelevant.[5]  And because HTA and ERS causes of action would be void after May 20, 2019 (unless complaints are filed before then), it is necessary to appoint the members of the Special Claims Committee, on the one hand, and the Committee, on the other hand, as co-plaintiffs/co-trustees and grant them derivative standing to commence the causes of action ***prior to the expiration of the statutes of limitations***.

3.      Moreover, the Court has already ruled, in connection with the approval of the Commonwealth Stipulation, that, in addition to section 926(a) of the Bankruptcy Code, the Court

---

[4]     *See Informative Motion and Reservation of Rights by Aurelius Capital Management, LP, on Behalf of the Funds and Entities It Manages or Advises, and Not in Its Individual Capacity* [Docket No. 5977].

[5]     In any event, no such nomination and confirmation has yet occurred and will not occur before May 20, 2019.

may approve the consensual grant of derivative standing to the members of the Special Claims

Committee and the Committee as co-plaintiffs and co-trustees to pursue Debtor causes of action.

Similarly, the Court previously recognized that the Oversight Board's decision to share its

responsibility to pursue causes of action in light of the *Aurelius* risk constitutes the necessary

"refusal" for purposes of section 926(a) of the Bankruptcy Code.

4.      The Committee is also the proper party to be appointed as co-plaintiff/co-trustee.

It is the only official committee appointed in the HTA and ERS cases, and, as detailed below,

there is also no disabling conflict for the simple reason that the Committee is only seeking to be

appointed along with the Oversight Board or the members of the Special Claims Committee to

pursue claims against third parties, ***not*** inter-Debtor claims (which inter-Debtor claims are

subject to the inter-governmental tolling stipulation, approved by the Court on May 2, 2019

[Docket No. 6812]).  There is simply no basis for the Objectors' assertion that the Committee's

role as official committee in the Commonwealth case, on the one hand, and the HTA and ERS

cases, on the other hand, somehow impedes its ability or willingness to vigorously pursue claims

against non-Debtors on behalf of HTA and ERS.

5.      For all these reasons, and as further detailed below, the Court should overrule the

Objections and enter the HTA/ERS Stipulation.[6]

---

[6]     The Fee Examiner filed a limited response and reservation of rights, primarily out of the concern that six (6) law
firms and twenty (20) attorneys are included on the signature blocks of a joint procedural motion [Docket No.
6857] to extend the time to serve certain summons and to stay certain avoidance actions.  However, the only
reason six firms were included in the signature blocks of that motion was because each of these firms is counsel
in one or more adversary proceedings commenced under the Commonwealth Stipulation.  However, to be clear,
there is no complaint that includes all six counsel.  In light of conflicts, it was not possible for counsel to the
Special Claims Committee and counsel for the Committee to serve as counsel in all adversary proceedings, and,
in those instances, the complaints were signed by conflicts counsel.  Nor does the inclusion of all six counsel on
the stay motion mean that each firm billed time for the review of the motion.  In any event, paragraph 7 of the
HTA/ERS Stipulation makes clear that all attorneys involved must coordinate closely to avoid duplication of
services.  The Fee Examiner's concerns should be assuaged upon its review of future monthly fee statements
relating to the litigation, as the firms involved have taken steps to minimize duplication.

## ARGUMENT

**I.    Monolines Mischaracterize *Aurelius* Risk**

6.    The Monolines contend that while they "appreciate that the Court relied in part"
on the existence of the *Aurelius* risk when approving the Commonwealth Stipulation, the current
situation is different because of "the extension of the stay of the mandate to July 15," after the
expiration of the applicable statute of limitations.[7]  This is simply wrong.  The extension of the
stay of the mandate to July 15 and the President's announcement that he "intended" to nominate
the current Oversight Board members do not mitigate the *Aurelius* risk.

7.    The expiration of the stay of the mandate is not what animates the need to have
the HTA/ERS Stipulation approved—rather, it is the risk that others will later challenge the
Oversight Board's authority to commence adversary proceedings (even when the mandate has
been stayed), absent reversal of the *Aurelius* decision by the Supreme Court.  Indeed, from the
point of view of the *Aurelius* risk, the Parties are in ***exactly*** the same position today with respect
to HTA and ERS causes of action as they were with respect to Commonwealth causes of action
before May 2: the stay of the First Circuit's mandate was not going to expire before expiration of
the applicable statutes of limitation, but the Parties nevertheless believed it was prudent to enter
into the Commonwealth Stipulation and the Court appears to have concurred in that assessment.[8]

8.    Furthermore, the Monolines imply that the Parties are acting improperly by
attempting an "end-run" around the First Circuit's decision.[9]  However, rather than attempting an
"end-run", the Parties are acting in accordance with the First Circuit's decision, which
envisioned that the Oversight Board would continue operating during the stay of the mandate.
The Parties are merely seeking to preserve litigation before the expiration of the applicable

---

[7]    Monolines Obj. ¶ 30.
[8]    In any event, the re-appointment process for the Oversight Board will not be completed by May 20, 2019.
[9]    Monolines Obj. ¶ 31.

statutes of limitations, while ensuring that, in the unlikely event a court later determines that actions taken by the Oversight Board after entry of the *Aurelius* decision are void *ab initio*, there are co-trustees or co-plaintiffs that can proceed with the litigation, regardless of the outcome of the Aurelius litigation.

9.      The Court should also be mindful that the lien avoidance actions recently filed pursuant to the Commonwealth Stipulation targeted, among other parties, the Monolines.  The Monolines are perhaps concerned about becoming subject to similar litigation pursuant to the HTA/ERS Stipulation.  Thus, they may not really be troubled by any "cloud" that the appointment of the Committee as co-plaintiff/co-trustee may cause; rather, they may very well want to **preserve** the "cloud" that the *Aurelius* decision poses to the Oversight Board's authority by seeking to derail the HTA/ERS Stipulation.

10.      Moreover, any concerns that the Monolines or other Objectors may have regarding their ability to defend against any litigation brought by the Committee as co-trustee or co-plaintiff are entirely misplaced.  Paragraph 27 of the HTA/ERS Stipulation explicitly reserves all defendants' rights, including "any defense [to a claim] based on the Committee's lack of standing, derivative or otherwise."

## II.      Members of Special Claims Committee and Committee Can Properly Serve as Co-Trustee and Co-Plaintiff

### A.      Parties Have Satisfied Requirements of Section 926(a) of Bankruptcy Code

11.      The Monolines and DRA, ignoring this Court's April 24, 2019 decision to approve the Commonwealth Stipulation, contend that the Parties have not met their burden because no individual creditor moved for the appointment of the trustee, and ERS and HTA did not unjustifiably refuse to commence the causes of action.[10]  But, as this Court stated on April

---

[10]      *See* Monoline Obj. ¶¶ 3-16; DRA Obj. ¶¶ 10-11.

24, "although the Committee is not itself a creditor, it is composed of creditors and represented

the interests of creditors, and indeed, Commonwealth creditors who are members of the

Committee have proffered through counsel that they would make a formal Section 926 request if

necessary."[11]  Further, the Court stated that the Oversight Board, by deciding to "share its

responsibility to prosecute certain claims, . . . has, therefore, effectively refused to pursue the

causes of action."[12]  Accordingly, the Court found that the Parties met their burden under section

926(a) of the Bankruptcy Code with respect to the Commonwealth Stipulation, and there are no

factual or legal reasons to reach a different result with respect to the HTA/ERS Stipulation—and

the Objectors do not identify any.

12.     Here, several Committee members, including the Service Employees International

Union ("SEIU") and Genesis Security ("Genesis"), filed joinders in the Committee's Section 926

Procedures Motion (as defined below), thus making the requisite request for purposes of section

926.[13]  Nevertheless, the Monolines argue that a formal section 926 motion requesting the

appointment of a trustee must be filed.  This is placing form over substance.  The HTA/ERS

Stipulation represents a compromise and settlement of the Committee's disputes with the

Oversight Board regarding the issues surrounding the commencement of litigation as set forth in

the Section 926 Procedures Motion, which sought to require the Oversight Board to disclose the

list of avoidance actions to be pursued by the Oversight Board on behalf of the Commonwealth,

HTA, ERS, and PREPA.  If the Parties had not agreed to the HTA/ERS Stipulation, the

---

[11]   April 24, 2019 H'g Tr. at 236:15-20.

[12]   *Id.* at 236:22-24.

[13]   *See* Joinders filed by (a) Doral Financial Corporation, Acting Through Doral Financial Creditors' Trust, Service
Employees International Union, and Tradewinds Energy Barceloneta, LLC [Docket No. 6433] and (b) Genesis
Security [Docket No. 6934] in *Urgent Motion of Official Committee of Unsecured Creditors for Order, Under
Bankruptcy Code Sections 105(a) and 926(a) and Bankruptcy Rule 9006, Establishing (I) Procedures with
Respect to Disclosure of Avoidance Actions to be Asserted by Oversight Board, and (II) Expedited Briefing
Schedule for Potential request to Appoint Trustee Under Bankruptcy Code Section 926(a)* [Docket No. 5997]
(the "Section 926 Procedures Motion").

Committee would have filed a motion under section 926(a), which would have been joined and supported by SEIU and Genesis.[14]

13.    The Puerto Rico Funds and the Monolines also attempt to argue that this Court should not be persuaded by SEIU's and Genesis's proffer of a section 926 request. For example, the Puerto Rico Funds contend that SEIU is not a creditor for purposes of section 926(a) of Bankruptcy Code citing, *In re Continental Airlines Corp.*, 64 B.R. 874, 880 (Bankr. S.D. Tex. 1986)—a wholly inapposite case. In that case, the Court held that the union could not file *proofs of claim* on behalf of its members with respect to a prepetition contract; that case does not stand for the proposition that the union cannot assert any claim on behalf of its members or represent the interests of its members in bankruptcy cases.[15] What would be the point of appointing a union to a creditors' committee if it cannot represent the interests of its members? Moreover, as detailed in the Committee's recently updated Rule 2019 statement [Docket No. 6874] (the "Updated Rule 2019 Statement"), SEIU's pension claim (for benefits accrued by SEIU members as a result of their employment with the Commonwealth and/or its instrumentalities and as a result of their participation in ERS) includes the portion of the total actuarial liability of ERS, which total is estimated to be approximately ***$36 billion***.[16]

---

[14]   As a result of the foregoing and this Court's opinion, it is inexplicable why the Monolines spend approximately eight (8) pages of their Objection debating the meanings of "refuse" versus "consent" within the meaning of Bankruptcy Code section 926(a). *See* Monolines Obj. at 7-15. The facts underlying the Parties' entry into the HTA/ERS Stipulation are the same facts underlying the Commonwealth Stipulation. Even if they disagreed with the Court's ruling in regard to the Commonwealth Stipulation, they cannot now collaterally attack this Court's final order. Similarly, DRA's contention that the Committee cannot be appointed as co-trustee/co-plaintiff because the Oversight Board has agreed to pursue the causes of action, again, misses the point that the HTA/ERS Stipulation reflects a settlement of the Committee's prior demand that the Oversight Board commence certain actions before the expiration of the statute of limitations. *See* DRA Obj. ¶ 11.

[15]   *See e.g. Wein Air Alaska, Inc.v. Bachner*, 865 F. 2d 1106, 1109 n.2, (9th Cir. 1989) (Pilots sought to bar union from settling certain claims arguing that it did not have standing under *Continental*. The court disagreed and stated that *Continental* only "involved the interpretation of an existing agreement in regard to conditions that existed prior to the filing of bankruptcy; thus, it is distinguishable from the situation with which we are faced here, where the dispute surrounds an issue not contemplated by the parties in the drafting of the Agreement."). It has also long been established that unions with claims for unpaid wages or benefits are creditors and thus eligible to serve on a creditors committee. *See In re Altair Airlines, Inc.*, 727 F.2d 88 (3d Cir. 1984).

[16]   Updated Rule 2019 Statement, Ex. A (emphasis added).

14.     The Monolines' contentions with respect to Genesis' status are similarly strained. The Monolines focus much on Genesis having received payments on account of its prepetition claims during the pendency of these cases,[17] but ignore the fact that the Commonwealth and the other Title III Debtors are perfectly within their rights to pay prepetition creditors.[18]  The Monolines further argue that "[b]ecause Genesis's claims are almost entirely against the Commonwealth, it is hard to see how that entity could properly act as a fiduciary for HTA when it has a very clear financial interest in seeing its claims against the Commonwealth being paid down."[19]  However, the HTA/ERS Stipulation does not apply to inter-Debtor disputes,[20] and thus, the fact that Genesis is a creditor of both the Commonwealth and HTA is wholly irrelevant. The Monolines also ignore that the Committee and its members owe fiduciary duties to unsecured creditors of each Debtor for which they have been appointed, whether such members are owed billions of dollars, millions of dollars, or nothing at all from a particular Debtor.

15.     In addition, the Monolines mischaracterize the email conversations between Committee counsel and counsel to the Monolines regarding the Schedules of causes of action covered under the HTA/ERS Stipulation.  For example, in their Objection, the Monolines assert that Committee counsel represented the causes of action covered by the HTA/ERS Stipulation would be limited to "garden variety avoidance actions."  Instead, the email made clear that the identification of causes of action were subject to ongoing review and thus could change.[21] Further, in the interest of transparency and cooperation, Committee counsel provided the HTA and ERS objectors with additional information on May 11, 2019 (prior to the deadline to object

---

[17]    Monolines Obj. ¶ 40.
[18]    See PROMESA § 301 (not incorporating section 363 of the Bankruptcy Code into Title III).
[19]    Monolines Obj. ¶ 40.
[20]    See HTA/ERS Stipulation ¶ 2 n.4.
[21]    See Monolines Obj., Ex. B, at 4 (correspondence from counsel to Committee stating that "it appears that the only types of HTA and ERS claims covered by this stipulation would be 'garden-variety' avoidance actions (but our review in this regard is ongoing)") and 3 (correspondence from counsel to Committee noting that "schedules are not ready yet as the analysis of such claims is on-going").

to the Approval Motion) regarding the claims that would be pursued under the HTA/ERS

Stipulation, a fact that is nowhere mentioned in the Objections. That email also explicitly noted

that the Oversight Board and the Committee are "continuing to evaluate potential additional

HTA and ERS causes of action."

16.     In any event, there are no grounds to limit the claims that the members of the

Special Claims Committee and the Committee may bring as co-plaintiffs/co-trustees pursuant to

the HTA/ERS Stipulation to "avoidance actions against 'supplier[s] of goods or services,'" as the

Monolines would prefer.[22]  It is clear that a section 926(a) trustee may be authorized to pursue ***all***

causes of actions under Bankruptcy Code sections 544, 545, 547, 548, 549(a) and 550, which

clearly extends beyond avoidance actions against suppliers of goods and services, and, most

notably, includes strong-arm lien challenges under section 544 of the Bankruptcy Code.

B.     Court Has Authority to Grant Derivative Standing on a Consensual Basis

17.     The Monolines contend that this Court does not have the authority to grant

derivative standing outside the four corners of section 926.[23]  In support of this argument, the

Monolines assert that this Court held at the April 24 hearing that "section 926 is the only

mechanism that allows the Court to grant a third party standing to bring a cause of action on

behalf of a Title III debtor."[24]  However, that is clearly ***not*** what the Court held.  Instead, the

Court "conclude[d] that the Oversight Board can consent to a delegation of the powers it

exercises on behalf of the Commonwealth, thus conferring consensual derivative standing under

principles similar to those contemplated by the *In re STN Enterprises* line of cases."[25]  Despite

---

[22]     Monolines Obj. ¶ 20.
[23]     *Id.* ¶ 3.
[24]     *Id.* ¶ 3 n.5.
[25]     Apr. 24 H'g Tr. at 237:15-19.  The Monolines similarly mischaracterize the import of the Court's decision in *In re Fin. Oversight & Mgmt. Bd.*, 583 B.R. 626 (D.P.R. Nov. 16, 2017), in which case the Court denied the Oversight Board's request for appointment of a chief transformation officer for PREPA.  Monolines Obj. ¶ 1, n. 4.  In that case, the Court held that the Oversight Board did not have the authority to "impose changes in

9

this Court's clear ruling, the Monolines contend that this Court should disregard *STN Enterprises* and, instead, rely upon cases from Florida, the Fourth Circuit and the Tenth Circuit which disagree with the *STN Enterprises* line of cases.[26]  The Parties respectfully submit that the Court has already decided this issue, and should disregard the Monolines' efforts to collaterally attack its prior ruling when approving the Commonwealth Stipulation.

18.     The Monolines contention that the Court does not have the authority to grant derivative standing on a consensual basis is particularly odd in light of the fact that ***all*** of the Monolines (Assured, Ambac, FGIC, and National) are signatories to the Commonwealth-COFINA Stipulation [Docket No. 996], pursuant to which the Court appointed, relying on consensual derivative standing, the Commonwealth Agent and the COFINA Agent to litigate and/or settle the Commonwealth-COFINA dispute over the ownership of certain sales and use taxes.

19.     Further, the Monolines and DRA contend that the Parties have not met the *STN Enterprises* standard because they have not fully disclosed the precise causes of action and list of defendants, and therefore, the Court cannot determine whether the proposed causes of action are "in the best interest of [ERS and HTA and their creditors], and [that such actions are] 'necessary and beneficial' to the fair and efficient resolution" of the ERS and HTA Title III cases.[27]  This argument has no merit.  First, the Oversight Board and the Special Committee are not required to give advance notice to potential defendants that they will be sued and the nature of such lawsuits.  Accordingly, they are also not required to give advance notice of lawsuits in which the Committee would be acting as co-plaintiff or co-trustee.  Second, if the Monolines and DRA are

---

structure or reporting lines within PREPA" and thus, by extension, it could also not delegate such authority to a chief transformation officer.  *In re Fin. Oversight & Mgmt. Bd.*, 583 B.R. at 636.  Contrary to the Monolines' suggestion, the Court did ***not*** rule that the Oversight Board cannot delegate authority to an agent.

[26]     Monolines Obj. ¶¶ 22-26.

[27]     Monolines Obj. ¶ 27 (quoting *In re Commodore Intern. Ltd.*, 22 F.3d 96, 100 (2d Cir. 2001)); DRA Obj. ¶ 14.

subsequently sued, their right to argue that the grant of co-trustee/co-plaintiff status to the

Committee was improvident is expressly preserved under the HTA/ERS Stipulation.[28]  Thus, not

disclosing detailed information about the particular causes of action before granting derivative

standing in this instance does not prejudice any potential defendant.[29]  In any event, the Parties

will continue to update the Objectors with respect to the nature of the claims to be pursued under

the HTA/ERS Stipulation.

C.   <u>Committee Is Not Conflicted and Is Best Suited to Act as Co-Trustee and Co-Plaintiff</u>

20.     The Monolines, DRA, and the Puerto Rico Funds all contend that the Committee

suffers disabling conflicts that prevent it from acting fairly on behalf of ERS and HTA because

the Committee is comprised mostly of Commonwealth creditors.[30]  These Objections are

premised on faulty assumptions and, further, are undermined by certain glaring omissions.

21.     The Monolines assert, relying on cases from the 1980s, that the Committee has

disabling conflicts because its members mostly hold claims against the Commonwealth.[31]  That

is irrelevant.  In many large cases, *e.g.*, Enron, Lehman Brothers, and Adelphia, there was only

one official creditors' committee even though there were dozens and, in some cases, hundreds of

debtors.  In fact, given the number of debtors, it was impossible for the creditors of every debtor

---

[28]   The Court should similarly dismiss DRA's concerns that "Tolling Agreements may be drafted in such a way that the Parties may seek to expand the statute of limitations for other causes of action beyond the scope of section 108(a) and 546 of the Bankruptcy Code." DRA Obj. ¶ 15.  It is not clear what DRA's actual concern is. Sections 108(a) of the Bankruptcy Code incorporate non-bankruptcy law statutes of limitations and impose a two (2) year cutoff on commencing causes of actions for which the non-bankruptcy law statute of limitations has not already lapsed.  In any event, except with respect to this Court equitably tolling a statute of limitations, no tolling agreement can be imposed upon a party without its consent.

[29]   The Monolines also contend that the joint prosecution of adversary proceedings will harm the Debtors because of excessive fees and expenses.  Monolines Obj. ¶ 29.  In this regard, the Monolines contend that the Fee Examiner's Objection stated that the complaints "bear the names of six different law firms and a total of 20 individually named attorneys." *Id.*  The Fee Examiner made no such assertion.  As the Fee Examiner correctly noted, such firms and attorneys were on the signature block of the *motion to stay the litigation*, not on the complaints.  Further, the Parties' efforts to stay the prosecution of the complaints reflects an intention to minimize fees and expenses while determining whether any claims can be consensually resolved.

[30]   *See* Monolines Obj. ¶¶ 33-44; DRA Obj. ¶ 24; Puerto Rico Funds Obj. ¶¶ 2-8.

[31]   *See* Monolines Obj. ¶¶ 34-35.

to be represented by one or more members on the official creditors' committee.  Nevertheless, the U.S. Trustee only appointed one official creditors' committee, relying on the widely-recognized principle that the official committee owes fiduciary duties to unsecured creditors of every debtor for which the committee has been appointed, regardless of the composition of its membership.

22.      Indeed, the cases relied upon by the Monolines for the proposition that the Committee is somehow disabled from fulfilling its fiduciary duties because it was appointed for multiple jointly administered debtors have been explicitly rejected by subsequent judicial decisions.[32]  Further, while the Monolines cite to *In re BH &P Inc*., 103 B.R. 556, 572 (Bankr. D.N.J. 1989) as a case adopting the *Parkway Calabasas* presumption, they neglect to mention that on appeal the Third Circuit rejected this approach as "overbroad."[33]

23.      Moreover, there is no basis for DRA to argue that the "UCC's only incentive is to pursue actions on behalf of ERS is the expectation that they will ultimately inure to the benefit of the Commonwealth's creditors" or that, as the Puerto Rico Funds assert, "ERS should not be forced to relinquish control of *its* claims to the Commonwealth's UCC when the Commonwealth is stealing ERS's assets."[34]  These statements are plainly wrong.  The Committee will be acting on behalf of ERS and HTA, not on behalf of the Commonwealth.  Neither ERS nor HTA are being forced to relinquish anything.

---

[32]   *See Mirant Americas Energy Mktg., L.P. v. Official Comm. of Unsecured Creditors of Enron Corp.,* No. 02 CIV. 6274 (GBD), 2003 WL 22327118, at *5 (S.D.N.Y. Oct. 10, 2003) (rejecting presumption against single Committee as set forth in in *In re Parkway Calabasas Ltd.*, 89 B.R. 832 (Bankr. C.D. Cal. 1988) as well as requirement of multiple committees in *In re White Motor Credit Corp*., 18 B.R. 720, 722 (Bankr.N.D.Ohio 1980)); *In re Enron Corp*., 279 B.R. 671, 691 (Bankr. S.D.N.Y. 2002) (disagreeing with *Parkway Calabasas* presumption).

[33]   *In re BH & P, Inc.*, 949 F.2d 1300, 1310–11 (3d Cir. 1991) ("A standard for removal . . . that automatically disqualifies a trustee from serving in jointly administered cases where there are interdebtor claims, is overbroad.").  Strangely, the Monolines cite to *Mirant*, where the Third Circuit's decision is discussed in some detail, as well as *Mirant's* internal cite to the Third Circuit's opinion, yet did not mention the issue in their pleadings to this Court.  *See Mirant*, 2003 WL 22327118, at *5 ("The Court of Appeals for the Third Circuit saw the bankruptcy court's presumptive rule as 'overbroad.'").

[34]   Puerto Rico Fund Obj. ¶ 10 (emphasis added).

24.     Similarly misplaced is the Monolines' contention that the Committee is conflicted because of positions it took in the context of the HTA clawback litigation.  There is no conflict.  The Committee represents unsecured creditors, not the purportedly secured HTA bondholders or, for that matter, purportedly secured ERS bondholders.  Indeed, it is in the best interest of HTA's and ERS's unsecured creditors to challenge the validity and extent of the liens of such bondholders to the extent there is a valid basis for such challenge and commence actions in order to "enlarge the pie" of assets available to HTA's and ETA's general unsecured creditors.  At bottom, the Monolines, the Puerto Rico Funds, and DRA miss the mark: the Committee will not be taking the side of the Commonwealth at the expense of HTA or ERS, but will pursue HTA and ERS causes of action against non-Debtors for the benefit of HTA and ERS.

## III.   Retiree Committee Should Not Be Substituted for Committee as Co-Plaintiff/Co-Trustee

25.     The Retiree Committee contends that it should be substituted as the co-plaintiff and co-trustee in any action to be commenced by ERS.  However, the Retiree Committee should not be so substituted for the Committee.  For one, unlike the Committee, the Retiree Committee is not an official committee in the ERS case.  Despite the Retiree Committee's displeasure at this state of facts and its numerous attempts to have its limited appointment enlarged, the Retiree Committee remains only an official committee in the Commonwealth case.  Thus, notwithstanding the pending motion to disband the Committee as the official committee in the ERS case (which motion the Committee will vigorously oppose), at this time the Committee is the only official committee in the ERS case.  The Retiree Committee's logic is also flawed.  If, in fact, the Court were to disband the Committee as the official committee in the ERS case, the Committee would be in the identical position as the Retiree Committee is in today vis-à-vis ERS because neither committee would be an official committee in the ERS case.  On what basis then,

13

would the Retiree Committee be better situated than the Committee to be the co-trustee/co-plaintiff in the ERS case?

26.     In any event, from a practical perspective, it is not feasible for the Retiree Committee to be substituted in at this late juncture.  For example, the Committee has been working extensively on a clawback complaint, which must be filed on or before May 20, 2019. There is simply no time to substitute parties in that complaint.

27.     Based upon the foregoing, it is clear that the Committee, and not the Retiree Committee, is the proper party to serve as co-trustee and co-plaintiff with respect to ERS causes of action to be brought under the HTA/ERS Stipulation.

**IV.     Committee's Rule 2019 Statement Is Not Defective**

28.     Finally, the Monolines expend much ink attacking the Committee's Rule 2019 Statement, as supposedly defective.  This is a complete side-show and has nothing to do with the merits of the HTA/ERS Stipulation.  Nevertheless, the Committee feels compelled to respond to some of the allegations made by the Monolines.  First, on May 8, 2019, the Committee updated its Rule 2019 statement to satisfy Assured's recent inquiries concerning the Committee members' disclosable economic interests.  As detailed in that statement, changes to the amounts of such disclosable economic interests since the filing of the Committee's prior Rule 2019 statement were minor and have not materially changed the nature and total amount of claims represented by Committee members.

29.     Second, and contrary to other creditors or groups of creditors, the Committee's fiduciary duties run to unsecured creditors of each Debtor for which the Committee has been

appointed and such duties are not dependent upon the composition of the Committee or the size

or nature of a particular Committee member's claims against any particular Debtor.[35]

30.     Nor is the Updated Rule 2019 Statement defective.  With respect to the five non-

union members of the Committee, the Updated Rule 2019 Statement provides the amount of the

unsecured claim against each of the Debtors.  And with respect to the two union members of the

Committee, the Updated Rule 2019 Statement provides a detailed description of the types of

claims held by such unions.  It is simply not possible to provide a precise dollar amount for such

claims because they are, to a large extent unliquidated.  Nevertheless, as the Updated Rule 2019

Statement and SEIU's own Rule 2019 statement note, SEIU asserts "pension and other post-

employment benefits that SEIU members have accrued as a result of their employment with the

Commonwealth and/or its instrumentalities and as a result of their participation in the Employee

Retirement System" and that "SEIU's pension claim includes the portion of the total actuarial

liability of the Employee Retirement System, which total is estimated to be approximately ***$36***

***billion***, that is attributable to the accrued benefits earned by SEIU members employed by the

Commonwealth and its instrumentalities."[36]

---

[35]   The Committee also notes that, contrary to the Monolines' assertion, Unitech did not see a decrease of 51% in
its claim between June 2018 and May 2019.  Unitech's claim has stayed the same throughout these cases,
namely $11.2 million plus accrued interest.  *See Verified Statement of Official Committee of Unsecured
Creditors Pursuant to Bankruptcy Rule 2019* [Docket No. 1050].  The amount listed in Unitech's proof of claim
[Claim Number 39388] was higher than what was scheduled because it includes accrued interest.  In any event,
the fact that only two Committee members have been paid down a portion of their claims since the
commencement of these Title III cases has no bearing whatsoever on the Committee's fiduciary duty to
represent the unsecured creditors of all Debtors for which it was appointed.

[36]   Updated Rule 2019 Statement, Ex. A (emphasis added).  *See also Verified Statement of the Services Employees
International Union Pursuant to Federal Rule of Bankruptcy Procedures 2019* [Docket No. 6882].

WHEREFORE, the Parties respectfully request the Court to approve and enter the

HTA/ERS Stipulation, attached to the Approval Motion as Exhibit A, and grant the Parties such

other relief as is just and proper.

Dated: May 14, 2019                    By:  _/s/ Luc A. Despins_____

                                       **PAUL HASTINGS LLP**
                                       Luc. A. Despins, Esq. *(Pro Hac Vice)*
                                       James R. Bliss, Esq. *(Pro Hac Vice)*
                                       James B. Worthington, Esq. *(Pro Hac Vice)*
                                       G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
                                       200 Park Avenue
                                       New York, New York 10166
                                       Telephone:  (212) 318-6000
                                       lucdespins@paulhastings.com
                                       jamesbliss@paulhastings.com
                                       nicholasbassett@paulhastings.com
                                       alexbongartz@paulhastings.com

                                       *Counsel to the Official Committee of Unsecured
                                       Creditors*

                                       By:  _/s/ Juan J. Casillas Ayala_____

                                       **CASILLAS, SANTIAGO & TORRES LLC**
                                       Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
                                       Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
                                       Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
                                       Juan C. Nieves González, Esq. (USDC - PR 231707)
                                       Cristina B. Fernández Niggemann, Esq. (USDC - PR
                                       306008)
                                       PO Box 195075
                                       San Juan, PR 00919-5075
                                       Tel.: (787) 523-3434 Fax: (787) 523-3433
                                       jcasillas@cstlawpr.com
                                       aaneses@cstlawpr.com
                                       ifernandez@cstlawpr.com
                                       jnieves@cstlawpr.com
                                       cfernandez@cstlawpr.com

                                       *Local Counsel to the Official Committee of Unsecured
                                       Creditors*

By:    */s/ Brian S. Rosen*

Martin J. Bienenstock
Brian S. Rosen
Jeffrey W. Levitan
(*Pro Hac Vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900

*Attorneys for the Financial Oversight and Management
Board for Puerto Rico as representative for the Debtors*

and

Hermann D. Bauer
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Co-Attorneys for the Financial Oversight and Management
Board for Puerto Rico as representative for the Debtors*

17

By:  _/s/ Sunni P. Beville_____

BROWN RUDNICK LLP
Edward S. Weisfelner, Esq. (*Pro Hac Vice*)
Angela M. Papalaskaris, Esq. (*Pro Hac Vice*)
Seven Times Square
New York, NY 10036
Tel: (212) 209-4800
eweisfelner@brownrudnick.com
apapalaskaris@brownrudnick.com
jweddle@brownrudnick.com

Stephen A. Best, Esq. (*Pro Hac Vice*)
601 Thirteenth Street NW, Suite 600
Washington, D.C. 20005
sbest@brownrudnick.com

Sunni P. Beville, Esq. (*Pro Hac Vice*)
One Financial Center
Boston, MA 02111
Tel: (617) 856-8200
sbeville@brownrudnick.com

*Counsel to the Special Claims Committee*

and

ESTRELLA, LLC
Alberto Estrella (USDC-PR 209804)
Kenneth C. Suria (USDC-PR 213302)
P. O. Box 9023596
San Juan, Puerto Rico 00902–3596
Tel.: (787) 977-5050
Fax: (787) 977-5090

*Local Counsel to the Special Claims Committee*