IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**URGENT MOTION OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. TO COMPEL COMPLIANCE BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019 AND TO AMEND THE EIGHTH AMENDED CASE MANAGEMENT PROCEDURES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................................................1

BACKGROUND ............................................................................................................3

JURISDICTION AND VENUE .......................................................................................9

RELIEF REQUESTED....................................................................................................9

ARGUMENT .................................................................................................................9

    A.    The UCC Has Not Satisfied Its Rule 2019 Obligations To Disclose
The Nature And Amounts Of Its Members' Claims..................................12

    B.    Modifications to the 2019 Order Are Necessary to Clarify the
UCC's Reporting Obligations...................................................................19

PRIOR COMMUNICATIONS.......................................................................................20

CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 9013-1 AND THE CASE
MANAGEMENT PROCEDURES ORDER .........................................................21

CONCLUSION.............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

*Baron & Budd P.C. v. Unsecured Asbestos Claimants Committee*,
   321 B.R. 147 (D.N.J. 2005) ................................................................................11

*In re CF Holding Corp. / Colts's Mfg. Co.*,
   145 B.R. 124 (D. Conn. 1992) ..........................................................................12

*In re Continental Airlines Corp.*,
   64 B.R. 874 (Bankr. S.D. Tex. 1986) ...............................................................14

*In re Garden Ridge Corp.*,
   2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005) ..............................................17

*In re Ionosphere Clubs, Inc.*,
   101 B.R. 844 (Bankr. S.D.N.Y. 1989) .........................................................14, 19

*In re Milacron, Inc.*,
   436 B.R. 515 (Bankr. S.D. Ohio 2010) .......................................................11, 19

*In re MPM Silicones LLC*,
   Case No. 14-22503-rdd (Bankr. S.D.N.Y. June, 13, 2014) ...............................15

*In re North Bay Gen. Hosp.*,
   404 B.R. 443 (Bankr. S.D. Tex. 2009) .............................................10, 11, 12, 19

*In re Northwest Airlines Corp.*,
   363 B.R. 701 (Bankr. S.D.N.Y. 2007) ..............................................................19

*In re Oklahoma PAC First Ltd. P'Ship*,
   122 B.R. 387 (Bankr. D. Ariz. 1990) ................................................................19

*In re Ormet Corp.*,
   Case No. 13-10334-MFW (Bankr. D. Del. Nov. 13, 2013) ...............................15

*In re Overseas Shipholding Group*,
   Case No. 12-20000-PJW, ECF. No. 2473 (Bankr. D. Del. Feb. 14, 2014) ..........15

*In re Residential Capital, LLC*,
   480 B.R. 550 (Bankr. S.D.N.Y. 2012) ..............................................................16

*In re Sanchez*,
   372 BR. 289 (Bankr. S.D. Tex. 2007) ..................................................................2

## TABLE OF AUTHORITIES (cont'd)

**Page(s)**

*In re Sentinel Mgmt. Group, Inc.*,
   404 B.R. 488 (Bankr. N.D. Ill. 2009) ..................................................................11

*In re Source Home*,
   Case No. 14-11553-KG, ECF No. 185 (Bankr. D. Del. July 31, 2014) ................15

*In re Vestra Industries*,
   82 B.R. 21 (Bankr. D.S.C. 1987) ........................................................................14

*In re Washington Mutual Inc.*,
   419 B.R. 271 (Bankr. D. Del. 2009) .............................................................10, 11

*Local 2 v. FDIC*,
   962 F.2d 63 (D.C. Cir. 1992) (Ginsburg, J.) ......................................................14

*Perez Santana v. Holder*,
   731 F.3d 50 (1st Cir. 2013) ................................................................................14

*United States v. Johnson*,
   529 U.S. 53 (2000) .............................................................................................14

## STATUTES:

11 U.S.C. § 1102(a)(1) ...............................................................................................16

Fed. R. Bankr. P.:

   2019(b)(2) ......................................................................................................10, 14
   2019(c) ...................................................................................................................14
   2019(c)(2) ...............................................................................................................10
   2019(c)(2)(B) .................................................................................................4, 9, 12
   2019(c)(4) ................................................................................................................9
   2019(d) ..................................................................................................................11
   2019(e) ....................................................................................................................4
   2019(e)(1) ..............................................................................................................12
   2019(e)(2) ..............................................................................................................12

PROMESA § 306(a) .....................................................................................................9

PROMESA § 307(a) .....................................................................................................9

## <u>TABLE OF AUTHORITIES (cont'd)</u>

<u>Page(s)</u>

### <u>OTHER AUTHORITIES:</u>

9 *Collier on Bankruptcy* ¶ 2019.01 ..............................................................................10

Honorable Laura Taylor Swain, *Report of the Advisory Committee on Bankruptcy Rules,*
    May 24, 2010 ........................................................................................................3

Sparkle Alexander, *The Rule 2019 Battle: When Hedge Funds Collide
with the Bankruptcy Code,*
73 Brook. L. Rev. 1411, 1416-17 (2008) ......................................................................2

Document   Page 6 of 30

Assured Guaranty Corp. and Assured Guaranty Municipal Corp. ("Assured") respectfully move the Court for an order compelling the Official Committee of Unsecured Creditors (the "UCC") and its members to fully comply with Rule 2019 of the Federal Rules of Bankruptcy Procedure ("Rule 2019"), as well as this Court's *Order Regarding the Applicability of F.R.B.P. 2019 to the Title III Cases and a Further Proposed Amendment to the Case Management Order* (Dkt. No. 754, the "2019 Order") and for amendments to the *Eighth Amended Case Management Procedures Order*.[2]  Because this Motion impacts the UCC's ability to take positions before this Court, it is respectfully requested that the Court consider hearing or deciding this motion in connection with the UCC's recent *Urgent Joint Motion for Entry of Order Approving Stipulation and Agreed Order* (Dkt. No. 6867), currently set for hearing on May 16, 2019.  In support thereof, Assured respectfully states as follows:

## PRELIMINARY STATEMENT

"The three most important words in the bankruptcy system are:  disclose, disclose, disclose."  *In re Sanchez*, 372 BR. 289, 305 (Bankr. S.D. Tex. 2007).  Debtors are required to disclose to the court and their creditors financial information to ensure that creditors are fully apprised of whether a plan of reorganization is feasible and in the best interests of creditors. Likewise, disclosure by creditors' committees is important:

> [D]isclosure by creditor committees, like those required under Rule 2019, allows the debtor and other parties to understand with whom they are negotiating and who will be voting on the reorganization plan.  Historically, bankruptcy was meant to be an open arena where all parties could work together and come to a mutually beneficial decision.[3]

---

[2] Unless otherwise specified, "Dkt. No." refers to filings on the docket of the Commonwealth's Title III case, 17 BK 3283-LTS.

[3] Sparkle Alexander, *The Rule 2019 Battle:  When Hedge Funds Collide with the Bankruptcy Code*, 73 Brook. L. Rev. 1411, 1416-17 (2008)

To facilitate this policy of transparency, Bankruptcy Rule 2019 requires that all entities that act on behalf of other creditors file verified statements with the court that disclose, among other things, the "nature and amount" of each economic interest of their members.  As amended in 2011, this Rule was expanded and clarified to cover not only ad hoc groups of creditors, but also official committees appointed pursuant to sections 1102 or 1114 of the Bankruptcy Code.  *See* Memorandum from Honorable Laura Taylor Swain, *Report of the Advisory Committee on Bankruptcy Rules,* May 24, 2010[4] (noting that the disclosure requirements were broadened in chapter 9 cases and that the "***rule no longer excludes official committees***").

The Commonwealth of Puerto Rico (the "Commonwealth") and certain of its instrumentalities filed for Title III relief in May 2017.  Despite the age of this case, it remains unclear who, if anyone, the UCC actually represents.  Employees, pensioners, and trade creditors are being paid in the ordinary course, and each certified fiscal plan has provided for those payments to continue.  Similarly it is unclear whether and to what extent the UCC's members hold any actual, current claims.

Given the sweeping role the UCC has claimed for itself in these Title III proceedings, it is crucial that the Court, other creditors, and the public fully understand the economic interests—and, hence, the motivations—of the UCC's members.  This is especially so given that creditors have raised serious allegations that the UCC is conflicted from serving as a fiduciary to unsecured creditors of Title III Debtors other than the Commonwealth.[5]  The UCC itself has acknowledged that disclosures of this sort are critical "to foster[ing] good faith

---

[4] *Available at* https://www.uscourts.gov/sites/default/files/fr_import/BK05-2010.pdf.

[5] *See, e.g.,* Dkt. No. 6162 at 9-12 (motion of ERS bondholders alleging that UCC is conflicted from representing unsecured creditors of ERS); Dkt No. 6335 (alleging that UCC is conflicted from pursuing causes of action belonging to HTA).

discussions in the context of negotiating, litigating and/or mediating towards resolution of the complex issues in the Title III Cases and, ultimately, a confirmed plan of adjustment." Dkt. 850 at 2 (seeking to require similar disclosures about other creditors' interests in monoline insurers). It has also conceded that the presence of inter-debtor disputes—including specifically the clawback dispute between HTA and Commonwealth creditors—militates "in favor of a simple across-the-board disclosure rule." Dkt No. 3432 ¶ 27.

However, the UCC itself has not fully complied with Rule 2019's basic disclosure requirements and with this Court's 2019 Order. The UCC has thus far filed three supplemental disclosures since filing its initial statement pursuant to Rule 2019, even though the composition of the UCC has changed at least four times during that period. Each of those statements does not list the "nature and amount" for *each* of the UCC's members. Fed. R. Bankr. P. 2019(c)(2)(B). Indeed, the UCC's Rule 2019's statement is so incomplete that it fails to confirm whether the UCC's members are creditors holding prepetition unsecured claims against the Commonwealth and the other Title III Debtors, such as HTA or ERS.

The failure to disclose of the UCC members' current economic interests is inexcusable: it violates Rule 2019 and the 2019 Order, and it undermines the key policy in favor of transparency that Rule 2019 and the 2019 Order were intended to facilitate. The Court should therefore enter an order (i) requiring the UCC, within 5 days, to file a statement that fully complies with Rule 2019 and (ii) prohibiting the UCC from appearing in these Title III cases until its deficient disclosures have been cured. *See* Fed. R. Bankr. P. 2019(e).

## **BACKGROUND**

On May 2, 2017, the Oversight Board filed a petition on behalf of the Commonwealth pursuant to Title III of the Puerto Rico Oversight, Management, and Economic

Stability Act ("PROMESA").  Shortly thereafter, on May 21, 2019, the Oversight Board filed

petitions on behalf of HTA and ERS.  On July 2, 2017, the Oversight Board filed a Title III

petition on behalf of PREPA.

       The UCC was appointed by the United States Trustee on June 15, 2017.  Dkt.

No. 338.  When it was first created, the UCC was appointed to represent the Commonwealth's

unsecured creditors, but not those of other Title III Debtors, such as HTA, ERS, or PREPA.  The

composition of the UCC's membership has changed a number of times during the pendency of

these Title III cases.  Dkt. Nos. 1171, 1218, 3058, 3947.

       On July 26, 2017, this Court entered an order (the "2019 Order") mandating that

"every group, committee and entity that, on or before August 9, 2017, has taken a position before

the Court must file a verified statement that complies with the disclosure requirements

enumerated by Federal Rule of Bankruptcy Procedure 2019."  Dkt. No. 754 ¶ 1.  The 2019 Order

also required that if information in the most recently filed 2019 statement "changes materially,

the Rule 2019(b) Group must file a supplemental verified statement with or within 48 hours of

the next instance in which the Rule 2019(b) Group takes a position before the Court."  *Id.* ¶ 3.

The 2019 Order further provided that "the absence of such a supplemental statement shall be

deemed a representation that no material changes have occurred."  *Id.*  The requirements set forth

in the 2019 Order, in turn, are reflected in the Eighth Amended Case Management Procedures.

       The UCC itself has previously sought clarity regarding Rule 2019, and

complained about certain creditors' alleged failures to comply with the Rule's disclosure

requirements.  On August 2, 2017, the UCC filed an informative motion, requesting certain

amendments to the case management order that would require creditors to disclose whether their

bond claims are insured by any monoline insurers.  *See* Dkt. No. 850 ("In order to understand a

Rule 2019(b) Entity's true position in these Title III cases, the Court, the mediation team, and

other parties in interest need to see the full economic position of each Rule 2019(b) entity,"
including whether such interest "should be qualified by other investments (including investments
in Monoline Insurers, if any) that such party holds.").  In another motion, the UCC stated that it
believed that certain ad hoc groups had not complied with Rule 2019, and requested that this
Court enter an order requiring disclosure of economic interests in all Title III Debtors.  *See*
Dkt. No. 3432 (noting that inter-debtor disputes, including clawback litigation, "militate in favor
of a simple across-the-board disclosure rule").

Despite attempting to champion Rule 2019 compliance, the UCC itself has not
complied with Rule 2019's most basic disclosure requirements.  On August 16, 2017, the UCC
filed an initial statement pursuant to Rule 2019 (the "Initial Statement").  Dkt. No. 1050.  The
Initial Statement listed the American Federation of Teachers ("AFT") and Service Employees
International Union ("SEIU" and together with AFT, the "Unions") as members of the UCC, but
did not even attempt to list the "nature and amount" of the Unions' or their members' disclosable
economic interests, as required under Rule 2019(c).   Indeed, the Initial Statement ***listed no
amounts whatsoever*** for the Unions' alleged claims.  This deficiency remains uncorrected in the
UCC's most recent verified statements.

Moreover, even though the composition of the UCC changed considerably after
the filing of the Initial Statement, the UCC's counsel did not file updated verified statements
until several months after new members had been appointed to the UCC.  This practice occurred
on at least two different occasions.  *See* Dkt. No. 4028 (filed approximately 5 months after new
members had been appointed on May 14, 2018 pursuant to Dkt. No. 3058); Dkt. No. 3036 (filed
approximately eight months after members were appointed to UCC pursuant to Dkt. Nos. 1171
and 1218).

On April 26, 2019, this Court entered an order approving a stipulation between the Oversight Board and the UCC, which purported to appoint the UCC and certain individual members of the Oversight Board as co-plaintiffs and co-trustees in a number of actions, subject to a number of restrictions set forth in that stipulation.  *See* Dkt. No. 6524.  Prior to the entry of this stipulation, Assured had notified the UCC and the Court—both in court filings and at the omnibus hearing—of the deficiencies in the UCC's Rule 2019 Statements.[6]

Since the entry of that stipulation, the UCC has filed hundreds of adversary proceedings.  These adversary complaints seek to recover alleged preferential transfers to vendors and charitable organizations, seek to declare whether GO bondholders have property interests in certain tax streams, and seek to declare that thousands of leases entered into by the Public Buildings Authority are not "true leases."  The concerns expressed by creditors about the litigation frenzy that would be unleashed by that stipulation unfortunately proved justified.  These complaints will undoubtedly cost the estate tens of millions of dollars in additional and potentially unnecessary legal expenses.  The UCC also filed numerous claim objections, which have resulted in hundreds of notices of participation being filed with this Court—many by pro se individual bondholders.

On May 2, 2019, the UCC filed an urgent motion to extend deadlines with respect to omnibus objections to general obligation bonds.  *See* Dkt. No. 6814.  On May 8, 2019, the UCC chose to file an "urgent" motion seeking approval of a stipulation that would permit the UCC to prosecute causes of action belonging to HTA and ERS.  Dkt. No. 6867.  Each of these

---

[6] To be clear, Assured's concerns regarding the UCC's compliance with Rule 2019 extend beyond the UCC's inability to serve as 926 trustee.  Assured's concerns pertain to the need for greater transparency concerning potential conflicts of interest that the UCC and its members may have and whether the UCC actually has any significant HTA creditors as its members.  Entities that fail to fully comply with Rule 2019—which include the UCC—should not be permitted to take positions before the Court unless and until they comply with the basic reporting requirements thereunder.

actions qualifies as taking "a position before the Court" because each motion is a "Pleading by or on behalf of a Rule 2019 Group in any Title III case…including motion practice containing factual or legal representations or arguments." *See* Eighth Amended Case Management Procedures, Dkt. No. 4866-1, n. 4.  That order requires that if there is a material change in the composition of a committee or group (which includes changes in membership and changes in holdings) then the entity is required to submit updated 2019 statements within 48 hours of taking a position before this Court.

Despite taking hundreds of positions before the Court last week (such as filing adversary complaints and filing urgent motions), the UCC waited until 10:15 p.m. on May 8, 2019 to file a third supplemental verified statement pursuant to Rule 2019 (the "Third Supplemental Statement" and together with the Initial Statement and any other supplemental verified statements, the "2019 Statements").  The Third Supplemental Statement represented, incorrectly, that changes "have been minor and have not materially changed the nature and total amount of claims represented by Committee members." *See* Dkt. No. 6874 ¶ 9.

Significantly, the blackline provided by the UCC in its Third Supplemental Statement shows that the Rule 2019 Statements are still defective, and that, despite the UCC's representation to this Court, there were material changes.  *See* Dkt. No. 6874, Exhibit B.  First, the Third Supplemental Statement still fails to list the nature and amount of the disclosable economic interests held by SEIU and AFT.  In fact, no amounts are listed for AFT,[7] and for SEIU, there are no amounts listed for the portion of the unfunded liability that is purportedly attributable to SEIU's members or for the other benefit claims listed in the 2019 Statements.  If

---

[7] The Third Supplemental Statement purports to incorporate by reference AFT's proof of claim, but even that proof of claim does not list the amount of pension claims purportedly held by AFT.  *See* Proof of Claim No. 108230.  As noted herein, those pension claims do not appear to be held against any of the Title III Debtors.

the Unions' Claims are zero, or merely contingent, then that should be disclosed.  Of course, if

members have no actual claims, then they are not creditors and cannot serve on the Committee.

Second, at least two material changes were disclosed in the Third Supplemental

Statement.  The first material change is that certain members' claims decreased by a significant

amount.  Genesis's aggregate claims of $8 million decreased by $300,000.  Given how reduced

that claim already had become (since the Initial Statement, that claim has been paid down by $14

million), $300,000 is actually a quite material change.  An examination of this reduction reveals

that Genesis holds virtually no claims against PREPA anymore, and its Commonwealth claims

were also reduced.  Likewise, Baxter's claims were reduced by another 23% (*i.e.*, $600,000 off a

$2.8 million claim).

The second material change was that, for the first time, SEIU disclosed that it now

purports to assert claims related to an unfunded pension liability at ERS.  This was a fact that

was not disclosed in any of the prior 2019 Statements, and is remarkable given that prior to the

bar date, SEIU only filed a proof of claim against the Commonwealth (and that the purported

pension liability was not even referenced in the proof of claim).[8]

In sum, the UCC's non-compliance with Rule 2019 and the 2019 Order continues.

Rule 2019 compliance is required to give the UCC any authority to take a position before this

Court, and is equally necessary to allow the necessary flow of important information—

information that potential objectors to the just-recently filed Stipulation will need to fully and

fairly evaluate their position on the UCC's motion seeking approval of that Stipulation.

---

[8] On May 9, 2019, SEIU filed its first 2019 statement in this case. Dkt. No. 6882.  That statement failed to
list any amounts of its disclosable economic interests, and it also failed to attach a copy of the instrument
authorizing SEIU to act on behalf of creditors.  SEIU's verified statement is therefore not in compliance
with Rule 2019.  *See* Fed. R. Bankr. P. 2019(c)(2)(B), 2019(c)(4).  AFT's Rule 2019 statement suffers
from the same infirmity.

## JURISDICTION AND VENUE

This Court has jurisdiction pursuant to PROMESA § 306(a).  Venue is proper in this district pursuant to PROMESA § 307(a).

## RELIEF REQUESTED

Assured requests that the Court enter an Order requiring the UCC to file within five days a fully compliant verified statement pursuant to Rule 2019 and the 2019 Order disclosing, at a minimum:  (i) the names of each of the UCC's current members, (ii) their addresses, and (iii) the nature and amounts of their disclosable economic interests in the Title III Debtors.  Assured further requests that the Court prohibit the UCC from being heard on any matter in these Title III proceedings unless and until it has complied with Rule 2019 and the 2019 Order.  Assured requests that this Motion be heard or decided in connection with Docket No. 6867, currently scheduled for hearing on May 16, 2019.

## ARGUMENT

Rule 2019 requires "every entity or committee representing more than one creditor" to file a verified statement disclosing, among other things, the names and addresses of the creditors, and the nature and amounts of their claims.  Fed. R. Bankr. P. 2019(c)(2); *see also*, *e.g.*, *In re North Bay Gen. Hosp.*, 404 B.R. 443, 452-55 (Bankr. S.D. Tex. 2009).  The only entities that are exempt from Rule 2019's disclosure requirements are specified in Rule 2019(b)(2).  Official committees and labor unions are not included on that list of exempted entities.  Fed. R. Bankr. P. 2019(b)(2) (exempting only indenture trustees, administrative agents under credit agreements, class action representatives, and governmental units that are not a person).  In 2011, Rule 2019 was broadened to "require more, rather than less, disclosure."  *In re Washington Mutual*, 419 B.R. 271, 279 (Bankr. D. Del. 2009).

In order to facilitate the Bankruptcy Code's themes of disclosure and transparency, Rule 2019 is "designed to foster the goal of reorganization plans that deal fairly with creditors and are arrived at openly."  9 *Collier on Bankruptcy* ¶ 2019.01.  Indeed, the purpose of Rule 2019 is to "further the Bankruptcy Code's goal of complete disclosure during the business reorganization process."  *Baron & Budd P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 165-66 (D.N.J. 2005); *In re Milacron, Inc.*, 436 B.R. 515, 517 (Bankr. S.D. Ohio 2010); *In re Washington Mutual Inc.*, 419 B.R. 271, 278 (Bankr. D. Del. 2009) (noting that the purpose of Rule 2019 and its predecessor was to "provide a routine method of advising the court and all parties in interest of the actual economic interest of all persons participating in the proceedings").  Consistent with this policy of transparency, Rule 2019 requires any member of a multi-creditor group to disclose all of its financial interests in the debtor, to ensure that conflicts of interest may be identified and addressed as appropriate.  *See In re North Bay Gen. Hosp.*, 404 B.R. at 463 n.15.

In light of the fluid nature of any restructuring proceeding, all creditor groups are under an ongoing duty to update their Rule 2019 disclosures upon any material change to a group's membership or to any of its members' economic interests.  *See* Fed. R. Bankr. P. 2019(d) (requiring supplemental statements to be filed if facts have "changed materially"); *see also In re Sentinel Mgmt. Group, Inc.*, 404 B.R. 488, n. 2 (Bankr. N.D. Ill. 2009) (chastising committee's counsel for failing to update Rule 2019 statements during pendency of the bankruptcy case and expunging request of committee for fees to be entitled to administrative expense priority).  This Court's 2019 Order reiterates the obligation of all entities and committees to file updated Rule 2019 statements to apprise the Court, the Debtors, and all creditors and parties in interest of material changes to the group's holdings or composition.  The

2019 Order requires such compliance "contemporaneously with or within 48 hours after . . . [taking] a position before the Court. . . ."  Specifically, paragraph I.3 of the 2019 Order provides:

> If any fact disclosed in the Rule 2019(b) Group's most recently filed statement (including, but not limited to, information concerning the composition of the Rule 2019(b) Group) changes materially, the Rule 2019(b) Group must file a supplemental verified statement contemporaneously ***with or within 48 hours*** after the next instance in which the Rule 2019(b) Group takes a position before the Court or solicits votes on the confirmation of a plan. . . .  The absence of such a supplemental statement shall be deemed a representation that no material changes have occurred.

Dkt. No. 754 at ¶ I.3 (emphasis added); *see also* Dkt. No. 4866-1 ¶ IV.C.

Rule 2019 separately provides for judicial enforcement of its disclosure obligations.  In particular, Rule 2019(e) provides that, "on motion of any party in interest,"[9] the Court "may determine" that "there has been a failure to comply" with Rule 2019's disclosure requirements.  Fed. R. Bankr. P. 2019(e)(1).  Upon finding such a failure to comply, the Court may remedy the deficiency, including by "refus[ing] to permit that entity [or] committee . . . to be heard further or to intervene in the case," or "grant[ing] other appropriate relief."  Fed. R. Bankr. P. 2019(e)(1),(2); *In re North Bay Gen. Hosp.*, 404 B.R. at 455-56 (disallowing unsecured creditor agent from further participation in case).  The Court may also condition any further participation on the committee's compliance with the requirements of Rule 2019.  *In re CF Holding Corp. / Colts's Mfg. Co.*, 145 B.R. 124, 127 (D. Conn. 1992).

The UCC's Rule 2019 Statements are plainly deficient.  Among other things, they fail to disclose the "nature and amount" of the claims purportedly held by *each of* the UCC's members.

---

[9] As a creditor of the Commonwealth, HTA, and PREPA, Assured is clearly a party in interest with standing to bring this Motion.

**A.      The UCC Has Not Satisfied Its Rule 2019 Obligations To Disclose The Nature And Amounts Of Its Members' Claims**

Among the basic obligations imposed by Rule 2019 is the requirement that each member of a committee disclose the "nature and amount" of its claims against the debtor. Fed. R. Bankr. P. 2019(c)(2)(B). The UCC's Rule 2019 Statement fails to meet that obligation in at least two respects.

*First*, the Rule 2019 Statement's disclosures for two of the UCC's members fail to disclose *any* amount for the claims that these members are asserting against the debtors on behalf of themselves. Rule 2019(c) unambiguously requires disclosures of both the nature *and amount* of *each* member's disclosable economic interests. For example, the Third Supplemental Statement notes that SEIU holds "prepetition unsecured contingent and non-contingent claims" against the "Commonwealth and/or its instrumentalities" on account of certain grievance claims and pension benefits. But the 2019 Statements fail to list any estimated amounts—whether contingent or non-contingent—for any of these claims (including the grievance claims, certain of which may be non-contingent and liquidated). Moreover, the 2019 Statements states that SEIU's claims are against certain "instrumentalities," but does not disclose the identity of those instrumentalities. This is material because certain of those instrumentalities may not even be Title III Debtors. Curiously, and in what appears to be an attempt to satisfy the conditions to section 926(a) in connection with the proposed stipulation concerning HTA and ERS, the 2019 Statements vaguely reference that certain of SEIU's claims arise from its members' participation in ERS. This material fact was never disclosed to the Court or to creditors until the Third Supplemental Statement was filed. As noted, SEIU never filed a proof of claim against ERS.

Similarly, the 2019 Statements fail to disclose any amounts for claims held by AFT. The Third Supplemental Statement attempts to incorporate by reference a proof of claim

that AFT filed earlier in this case.   But that proof of claim does not list any amounts for significant portions of its claims, including primarily its pension claims.   That proof of claim vaguely states that AFT's pension claims are against the Teachers' Retirement System (which is not a Title III Debtor) and that its claims are "***that portion*** of the Eighteen Billion Dollars ($18,000,000,000) in total actuarial liability of the Teachers Retirement System."   Proof of Claim No. 108230, Addendum to Proof of Claim, at 4-5.   But the amount of the portion is specified nowhere in AFT's proof of claim.   Like SEIU, no disclosure of the amount of AFT's pension claims was provided in the 2019 Statement or even its proof of claim.

The UCC appears to be operating under the mistaken belief that the labor unions do not need to comply with Rule 2019's disclosure requirements.   Because the Unions are members of the UCC, the UCC and its members unambiguously have an obligation to disclose the nature and amount of the Unions' alleged disclosable economic interests.   *See* Fed. R. Bank. P. 2019(c) (requiring disclosure of nature and amount of *each* member's interests).   Moreover, labor unions are not exempt from the new Rule, as they are not included in the list of entities that are exempt from Rule 2019's disclosure requirements.   *See* Fed. R. Bankr. P. 2019(b)(2).[10] Where, as here, exceptions are provided for within a statute or rule, "it does not follow that courts have authority to create others."   *United States v. Johnson*, 529 U.S. 53, 58 (2000); *Perez Santana v. Holder*, 731 F.3d 50, 56 (1st Cir. 2013) (refusing to imply additional exception to

---

[10] Even prior to the 2011 amendments, courts observed that Rule 2019 ***does apply*** to labor unions.  *See*, *e.g.*, *Local 2 v. FDIC*, 962 F.2d 63, 68-69 (D.C. Cir. 1992) (Ginsburg, J.) (noting that Rule 2019 is applicable to unions in bankruptcy proceedings, particularly where the union purports to file proofs of claim on behalf of the members it represents); *see also In re Vestra Industries*, 82 B.R. 21, 22 (Bankr. D.S.C. 1987) (holding that labor unions that filed proofs of claim on behalf of their members were required to comply with Rule 2019, and disallowing unions' proofs of claims as a result of the unions' non-compliance with the Rule); *In re Continental Airlines Corp.*, 64 B.R. 874, 877, 880 (Bankr. S.D. Tex. 1986) (finding that Rule 2019 applied to labor unions, that the labor unions failed to comply with Rule 2019, and accordingly dismissing labor unions' claims within the bankruptcy proceeding); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 846-48 (Bankr. S.D.N.Y. 1989) (consumers union that purported to act on behalf of class of airline ticketholders was required to comply with Rule 2019).

statute as "[t]he absence of such a limitation, despite the explicit enumeration of others, serves as a strong indication that Congress imposed the restrictions that it deemed important and declined to impose others").

The UCC asserts that it "is simply not possible to provide a precise dollar amount" of the Unions' claims because those claims are unliquidated. *See* Dkt. No. 6958 ¶ 30. But the UCC did not even provide amounts for SEIU's liquidated claims. Thus, the UCC cannot credibly dispute that the verified statements fail to meet Rule 2019's requirements. Moreover, official committees in other chapter 11 cases have provided estimates of contingent and unliquidated pension and benefit claims.

This is not the first official committee that has been appointed with members that are labor unions or groups representing retirees. Indeed, in chapter 11 cases, labor unions and retiree constituents are often appointed to committees. Since Rule 2019 was amended in 2011, virtually every official committee has filed Rule 2019 statements that provide an actual amount for the labor unions' claims, even though those claims may be entirely contingent and unliquidated. *See In re Sears Holding Corp.*, Case No. 18-23538-rdd, ECF No. 832 (Bankr. S.D.N.Y. Nov. 20, 2018) (listing amount for contingent and unliquidated claims of PBGC); *In re Caesars Entertainment Operating Company Inc.*, Case No. 15-01145, ECF. No. 427 (Bankr. N.D. Ill. Feb. 25, 2015) (listing amounts for pension and retiree disclosable economic interests for Hilton Worldwide Inc. and National Retirement Fund); *In re Source Home*, Case No. 14-11553-KG, ECF No. 185 (Bankr. D. Del. July 31, 2014) (listing amount of claims for Teamsters Health & Welfare & Pension Funds and United Wire, Metal & Machine Pension Fund); *In re MPM Silicones LLC*, Case No. 14-22503-rdd, ECF No. 388 (Bankr. S.D.N.Y. June 13, 2014) (listing amount of unliquidated and contingent pension claims for PBGC and union's unpaid wages and grievances claims); *In re Ormet Corp.*, Case No. 13-10334-MFW,

ECF No. 844 (Bankr. D. Del. Nov. 13, 2013) (listing amount of claims for each of United Steelworkers, PBGC, and a retiree benefit trust); *In re Overseas Shipholding Group*, Case No. 12-20000-PJW, ECF. No. 2473 (Bankr. D. Del. Feb. 14, 2014) (listing amount for contingent pension claims held by PBGC). This is just a sample of other 2019 statements that have been filed by official committees since Rule 2019 was amended.

   *Second*, even those members of the UCC that appeared to once hold claims against the Title III Debtors have failed to adequately disclose the current *nature* of those claims. Given that the UCC's members include "trade creditors and holders of labor claims and tax related claims"—constituencies that the Commonwealth has publicly committed to continue paying in the ordinary course and has reportedly been paying during the pendency of this case— it is likely that these members' claims are simply being paid in the ordinary course, and will continue to be paid until they are paid in full, or arose post-petition and may be entitled to priority under section 503 of the Bankruptcy Code. For example, between the First Supplemental Statement and the Second Supplemental Statement, Genesis's asserted claims against PREPA *increased* from \$284,621.01 to \$331,321.33. *Compare* Dkt No. 3036 *with* Dkt. No. 4028. Notably, Genesis's earlier filed proof of claim asserted claims totaling no more than \$180,813.21. *See* Claim No. 149209.[11] This may indicate that certain members' claims arose post-petition, and are not actual prepetition claims.

   The possibility that members of the UCC may not hold any unsecured prepetition claims at all raises the question whether those members are even eligible to serve on the UCC. Under Section 1102 of the Bankruptcy Code, the United States trustee is directed to "appoint a

---

[11] The UCC never provided any explanation in its Rule 2019 Statements for why Genesis's claims against PREPA increased, or any explanation for the discrepancy between the amounts listed in Genesis's proof of claim and the Rule 2019 Statements.

committee of *creditors* holding unsecured claims."   11 U.S.C. § 1102(a)(1) (emphasis added).
The Bankruptcy Code, with exceptions that are not pertinent here, provides that the term
"creditor" means an "entity that has a claim against the debtor that arose at the time of or before
the order for relief concerning the debtor," 11 U.S.C. § 101(10)(A), which is at the time the
Title III petitions were filed, PROMESA § 304(c).  A holder of exclusively post-petition claims
is by definition not a "creditor," and is therefore not eligible to serve on the UCC.  But the
UCC's Rule 2019 Statements do not even provide sufficient information to determine whether
the UCC has been validly constituted.  The Rule 2019 Statements are therefore plainly deficient
and must be remedied.

There is a need for the UCC to disclose the nature of its members' claims given
the UCC's role as a fiduciary for all unsecured creditors of the Title III Debtors.  *See In re
Residential Capital, LLC*, 480 B.R. 550, 559 (Bankr. S.D.N.Y. 2012) ("[S]tatutory unsecured
creditors committees owe a fiduciary duty to the entire class of creditors represented by such
committee and are required to place the collective interest of the class they represent above their
own personal stake in the bankruptcy case."); *In re Garden Ridge Corp.*, No. 04-10324 (DDS),
2005 WL 523129, at *3 (Bankr. D. Del. Mar. 2, 2005) ("The chief purpose of an official
committee is to maximize distribution to this class.").  Because these Title III cases are not and
cannot be substantively consolidated (*see* PROMESA § 304(f)), the UCC owes fiduciary duties
to unsecured creditors of the Commonwealth *and* all of the other Title III Debtors, which would
be separate classes of creditors.  It is critical that the Court and other parties in interest be able to
evaluate the particular economic interests and incentives of the UCC's members, so that they are
equipped to ensure that the UCC is properly constituted to fulfill its statutory mission.  Such
evaluation is equally necessary in determining how to respond to motions by the UCC seeking
authority to take actions on behalf of certain creditors.

The UCC's non-compliance issues also include its failure to timely update Rule 2019 Statements, as required under Rule 2019(d) and the 2019 Order. *See infra* at p. 5. It is important that creditors and parties in interest are apprised timely and completely of this information, because it is directly relevant to whether or not the UCC and certain of its members can continue acting as fiduciaries for HTA's unsecured creditors (as well as unsecured creditors for other Title III Debtors). Dkt. No. 6913 ¶¶ 33-44. Timely disclosure of information concerning the composition of the UCC and its members' asserted claims is also relevant here given the conflicts that exist between the Commonwealth, HTA, and their respective unsecured creditors. The UCC has acknowledged that such conflicts exist between the HTA and Commonwealth estates, and has also acknowledged that the HTA holds claims against the Commonwealth. *See* Dkt No. 3432 ¶ 27 (acknowledging inter-debtor dispute concerning clawback); Brief of Committee in Support of Affirmance at 12-17, *Ambac Assurance Corp. v. Commonwealth of Puerto Rico* (1st Cir.), Case No. 18-1214, Doc. No. 00117328807 (asserting that HTA holds unsecured claims against the Commonwealth).

Despite this actual conflict, the UCC actively supported the *Commonwealth*'s position on "clawback" of taxes belonging to HTA. *See, e.g.*, Adv. Proc. No. 17-159-LTS, Dkt. No. 102 ¶ 7 (joining arguments of FOMB regarding PROMESA section 303 and 407, and Contracts Clause claims); *id.* n. 13 (asserting that UCC owes no duty to HTA or its creditors on clawback issue). This clawback not only harms HTA's bondholders, it deprives HTA of liquidity needed to fund other creditors' recoveries as well. And because the UCC has openly supported this unlawful action, it has failed to serve as a fiduciary to HTA's unsecured creditors. Indeed, HTA's own audited financial statements admit that the clawback has hindered HTA's

ability to continue as a going concern.[12] Insight into the membership of the UCC and its members' alleged claims would provide Assured and other creditors with better insight as to the motives behind the UCC's stance on the clawback.

Given the nature of the claims purportedly held by the UCC's members, the Commonwealth members of the UCC have received payments during the pendency of the Title III cases.  The payment of such members' claims may have been at the expense of HTA's unsecured creditors.  Because the UCC has typically failed to update its Rule 2019 Statements in a timely manner, counsel to the UCC has left this Court and creditors with the "[mis]representation that no material changes have occurred."  Dkt. No. 754 ¶ I.3.  However, this Court and other creditors have no transparency into whether, and to what extent, any claims of the UCC's members have been satisfied.

In light of these deficiencies, this Court should enter an order pursuant to Rule 2019(e) precluding the UCC from taking any further positions before this Court unless and until the UCC files updated and compliant Rule 2019 Statements.  Assured recognizes that this relief is discretionary, but this Court has granted it before against other creditors.  *See generally* Dkt. No. 3730.  If the Rule is enforceable against bondholders, then surely it is enforceable against the UCC.

In other cases where entities subject to Rule 2019 failed to comply with its disclosure requirements, courts have barred those entities from taking any further actions before the Court until they complied with the Rule.  *See In re Milacron*, *Inc.*, 436 B.R. 515, 517 (Bankr. S.D. Ohio 2010) (prohibiting group of noteholders from being heard in bankruptcy case until they filed compliant Rule 2019 statements); *In re North Bay General Hosp.,* 404 B.R. 443

---

[12]   *See*   Audited   Financial   Statement   for   HTA,   at   33-34,   *available   at* https://emma.msrb.org/ER1354539.pdf.

(Bankr. S.D. Tex. 2009); *In re Oklahoma PAC First Ltd. P'Ship*, 122 B.R. 387, 393 (Bankr. D. Ariz. 1990); *Ionosphere Clubs*, 101 B.R. 844 (Bankr. S.D.N.Y. 1989) (disqualifying consumers union from appearing in bankruptcy case on behalf of other creditors).  Courts have likewise ordered committees to file verified statements on short notice.  *See In re Northwest Airlines Corp.*, 363 B.R. 701, 704 (Bankr. S.D.N.Y. 2007) (ordering committee to comply with Rule 2019 and to file an amended statement "within three business days"); Dkt. No. 3730 ¶ 5 (ordering filing within 14 days of compliant Rule 2019 statements looking back one year by ad hoc group of general obligation bondholders).  Assured respectfully submits that five days would be an appropriate period for the UCC to file compliant Rule 2019 Statements.  The UCC—which is represented by sophisticated counsel—must be ordered to promptly comply with Rule 2019. In the absence of such compliance, the UCC should not be permitted to be heard in these Title III cases, particularly with respect to a motion that would foist additional expenses onto the estate.

**B.     Modifications to the 2019 Order Are Necessary to Clarify the UCC's Reporting Obligations**

In the Third Supplemental Statement, the UCC contends that there are no material changes to the UCC, because it purportedly must always act as a fiduciary.  *See* Dkt. No. 6874 ¶ 9.  That assertion is not grounded in the language of Rule 2019.  Because the UCC claims that there is uncertainty as to whether Rule 2019(d) applies to the Committee, Assured respectfully submits that paragraph IV.C of the Eighth Amended Case Management Procedures should be revised to provide the following clarifications as to what qualifies as a material change (proposed revisions are in bold and underlined):

> C. If any fact disclosed in the Rule 2019(b) Group's most recently filed statement (including, but not limited to, information concerning the composition of the Rule 2019(b) Group) changes materially, the Rule 2019(b) Group must file a supplemental verified statement contemporaneously with or within 48 hours after the next instance in which the Rule 2019(b) Group takes a position

before the Court or solicits votes on the confirmation of a plan. Federal Rule of Bankruptcy Procedure 9011 applies to attorneys filing such supplemental statements.  The absence of such a supplemental statement shall be deemed a representation that no material changes have occurred.  **For the avoidance of doubt, a "material change" as to the composition of the Official Committee of Unsecured Creditors shall include any resignation of an existing member from such committee or the appointment by the U.S. Trustee of a new member to such committee.  In addition, with respect to any (i) trade creditors, vendors, or other entities that provide services to the Commonwealth of Puerto Rico or its agencies or instrumentalities on an ongoing basis (collectively, the "Vendors") that (ii) are members of any Rule 2019(b) Group (including, for the avoidance of doubt, the Official Committee of Unsecured Creditors), a "material change" shall include any increase or reduction of such Vendors' claims in an amount that in the aggregate totals more than $50,000 as compared to such Vendors' claims or disclosable economic interests that were disclosed in the Rule 2019(b) Group's most recently filed statements.**

These changes are intended to ensure that months do not pass following resignation or appointment of new members to the UCC without updated Rule 2019 Statements being filed by the UCC.  The changes will allow this Court and creditors to understand timely who the new members are and what the current composition and claim scope of the Committee is.  Further, the clarifications with respect to Vendors' claims are intended to provide creditors and this Court with proper insight into whether the Vendors' claims are being paid down (and therefore, those members may be conflicted from serving as a fiduciary to other unsecured creditors) and what claims (if any) those Vendors hold against each Title III Debtor.

## PRIOR COMMUNICATIONS

In filings leading up to the April 24 omnibus hearing, Assured highlighted the deficiencies in the UCC's Rule 2019 Statements.  At the April 24 omnibus hearing, counsel to Assured again raised concerns with the Court about certain deficiencies in the Rule 2019 Statements.  *See* Tr. of Hearing, April 24, 2019, at 119:6-18 (noting that the Committee had not

updated its Rule 2019 Statements in over six months and that the statements "do not even attempt to disclose what the nature and amount" of certain members' claims). At the hearing, this Court instructed counsel to Assured that if it is "unable to get traction with Mr. Despins," Assured was entitled to "make some sort of application for an order directing the Committee . . . to report." *Id.* at 121:4-9. Accordingly, Assured now files this Motion.

Assured has previously notified counsel for the UCC in multiple emails of its intention to seek relief from the Court. In accordance with this Court's instructions at the April 24 omnibus hearing, and after giving the UCC further notice of the issues and over a week to update its Rule 2019 Statements, on May 2, 2019, counsel to Assured made a reasonable, good faith request for the UCC to remedy the deficiencies in its Rule 2019 Statements. Assured reiterated that request again on May 3, 2019. That request was rebuffed in separate emails dated May 2, 2019 and May 6, 2019, when the UCC claimed it was "busy" and ultimately filed no supplements at all until May 8, 2019. The UCC's own actions demand an expedited resolution of these issues and firm action to emphasize the importance of the disclosures at issue as well as the timeliness of such disclosures.

## CERTIFICATION OF COMPLIANCE WITH LOCAL RULE 9013-1 AND THE CASE MANAGEMENT PROCEDURES ORDER

Pursuant to Local Rule 9013-1 and ¶ I.H of the Eighth Amended Case Management Procedures Order, Assured certifies that it has (a) carefully examined the mater and concluded that there is a true need for an urgent hearing; (b) has not created the urgency through any lack of due diligence; (c) made a bona fide effort to resolve the matter following the April 24 omnibus hearing; (d) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court; and (e) contacted counsel to the UCC to

express concerns regarding the Rule 2019 Statements, which were not corrected in the Third

Supplemental Statement.

## **CONCLUSION**

The Court should enter an Order, in the form reflected in Exhibit A hereto,

requiring the UCC to file, within five business days a verified statement pursuant to Rule 2019

and the 2019 Order disclosing, at a minimum: (i) the names of each of the UCC's current

members, (ii) their addresses, and (iii) the nature and amounts of their disclosable economic

interests in the Title III Debtors. The Court's Order should further prohibit the UCC from being

heard on any matter in these Title III proceedings unless and until it has complied with

Rule 2019 and the 2019 Order. Finally, the 2019 Order and Eighth Amended Case Management

Procedures should be amended to clarify the UCC's future reporting obligations under Rule 2019

Dated:     New York, New York
           May 14, 2019

                              CASELLAS ALCOVER & BURGOS P.S.C.


                              By: */s/ Heriberto Burgos Pérez*
                              Heriberto Burgos Pérez
                              USDC-PR 204809
                              Ricardo F. Casellas-Sánchez
                              USDC-PR 203114
                              Diana Pérez-Seda
                              USDC-PR 232014
                              P.O. Box 364924
                              San Juan, PR 00936-4924
                              Telephone: (787) 756-1400
                              Facsimile: (787) 756-1401
                              Email: hburgos@cabprlaw.com
                                     rcasellas@cabprlaw.com
                                     dperez@cabprlaw.com

-22-

CADWALADER, WICKERSHAM & TAFT LLP


By: */s/ Howard R. Hawkins, Jr.*

Howard R. Hawkins, Jr.*
Mark C. Ellenberg*
William J. Natbony*
Ellen Halstead*
Thomas J. Curtin*
Casey J. Servais*
200 Liberty Street
New York, NY 10281
Telephone:  (212) 504-6000
Facsimile:  (212) 406-6666
Email:   howard.hawkins@cwt.com
         mark.ellenberg@cwt.com
         bill.natbony@cwt.com
         ellen.halstead@cwt.com
         thomas.curtin@cwt.com
         casey.servais@cwt.com

*Admitted *pro hac vice*

*Counsel for Assured Guaranty Corp. and Assured Guaranty Municipal Corp.*

## CERTIFICATE OF SERVICE

I hereby certify that I filed this document electronically with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all parties of record in the captioned case.  Further, I directed that the following counsel of record be served by U.S. Mail:

Office of the United States Trustee
  for Region 21
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, PR 00901-1922

Gerardo Portela
Mohammad Yassin
Puerto Rico Fiscal Agency and Financial
Advisory Authority (AAFAF)
De Diego Ave. Stop 22
San Juan, Puerto Rico 00907

John J. Rapisardi, Esq.
Suzzanne Uhland, Esq.
Peter Friedman, Esq.
Nancy A. Mitchell, Esq.
Maria J. DiConza, Esq.
O'Melveny & Myers LLP
7 Times Square
New York, New York 10036

Luis C. Marini-Biaggi, Esq.
Carolina Velaz-Rivero Esq.
Maria T. Alvarez-Santos Esq.
Marini Pietrantoni Muniz, LLC
MCS Plaza, Suite 500
255 Ponce de León Ave.
San Juan, PR 00917

Martin J. Bienenstock, Esq.
Paul V. Possinger, Esq.
Ehud Barak, Esq.
Maja Zerjal, Esq.
Proskauer Rose LLP
Eleven Times Square
New York, New York 10036-8299

Hermann D. Bauer, Esq.
O'Neill & Borges LLC
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813

Luc A. Despins, Esq.
James Bliss, Esq.
James Worthington, Esq.
Paul Hastings LLP
200 Park Avenue
New York, New York 10166

Arturo Diaz-Angueira, Esq.
Cancio, Nadal, Rivera & Diaz, P.S.C.
403 Muñoz Rivera Ave.
San Juan (Hato Rey), PR 00918-3345

Robert Gordon, Esq.
Richard Levin, Esq.
Catherine Steege, Esq.
Jenner & Block LLP
919 Third Avenue
New York, New York 10022

Juan. J. Casillas Ayala
Diana M. Batlle-Barasorda
Alberto J. E. Añeses Negrón
Ericka C. Montull-Novoa
Casillas, Santiago & Torres LLC
El Caribe Office Building
53 Palmeras Street, Suite 1601
San Juan, PR 00901-2419

At New York, New York, 14th day of May, 2019.


By: /s/ Howard R. Hawkins, Jr

Howard R. Hawkins, Jr.*

* Admitted pro hac vice