IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | No. 17 BK 3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, et al., | (Jointly Administered) |
| Debtors.[1] | |

-------------------------------------------------------------------x

## ORDER ALLOWING MOTIONS TO ENFORCE

This matter is before the Court on the *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico to Enforce Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* (Dkt. No. 6853) and the *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico to Enforce Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling*

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

1

*Disclosure of Lists of Security Holders* (Dkt. No. 6854) ("Motions to Enforce").[2] For the reasons addressed herein, the Court hereby ALLOWS the Motions to Enforce.

Through the Motions to Enforce, the Financial Oversight and Management Board for Puerto Rico, acting by and through its Special Claims Committee ("Oversight Board"), seeks an order requiring the timely production of discovery by certain financial entities. This is not the first time this discovery issue has been before the Court. This Court previously allowed the Oversight Board to seek discovery from certain financial entities, referred to as Participant Holders[3], for use in pursuing causes of action on behalf of the Commonwealth of Puerto Rico ("Commonwealth") and the Employees Retirement System for the Commonwealth ("ERS"). (*Order Pursuant to Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* (Dkt. No. 6384) ("First Discovery Order")). Through the First Discovery Order, the Court allowed the Oversight Board discovery related to bond issuances from the Commonwealth, ERS and the Puerto Rico Public Buildings Authority ("PBA") but ordered that the parties meet and confer regarding an appropriate confidentiality agreement. (First Discovery Order at 6). On April 24, 2019, this Court entered the *Further Order Pursuant to Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling*

---

[2] The second motion, the *Urgent Motion of the Financial Oversight and Management Board of Puerto Rico to Enforce Order Under Bankruptcy Rules 1007(i) and 2004 Authorizing Discovery and Compelling Disclosure of Lists of Security Holders* (Dkt. No. 6854), was submitted by the Proposed Special Litigation Counsel to the Official Committee of Unsecured Creditors, acting as conflicts counsel ("Conflicts Counsel") and requests similar relief to the first motion. Respondents to the Motions to Enforce responded collectively to both motions and do not object to Conflicts Counsel receiving the requested discovery. (See Limited Objection at 1 n.5 ("The Bank Defendants assert the same limited objection to, and seek the same relief regarding, the [Special Claims Committee's] substantially identical motion docketed at ECF No. 6854")). The Court thus resolves both motions together.

[3] As defined in the Oversight Board's underlying 2004 motion, Dkt. No. 6143.

*Disclosure of Lists of Security Holders* (Dkt. No. 6493) ("Second Discovery Order"). Through the Second Discovery Order, the Court endorsed certain terms agreed upon during the meet and confer and ordered requirements for the production of confidential information. (Id.).

The Oversight Board now files the Motions to Enforce because, it alleges, "many of the Participant Holders were unable, or unwilling, to produce the requested information." (Motions to Enforce ¶ 3; see also id. ¶ 5 ("a further enforcement order of the Court [is necessary] to clarify that production is still required notwithstanding expiration of the deadline and notwithstanding objections expressed by certain of the Participant Holders.")). Several parties filed limited objections to the Motions to Enforce.

On May 10, 2019, the Bank Defendants[4] filed a limited objection to the Motions to Enforce. (Dkt. No. 6900) ("Limited Objection"). Through the Limited Objection, the Bank Defendants represent that they "have no opposition to most of the [Motions to Enforce], but they have three substantial objections to the [Oversight Board's original proposed order ("First Proposed Order[5]")]." (Id. ¶ 1). The Bank Defendants argue <u>first</u> that the Proposed Order imposes an extreme and unlawful sanction on parties that do not complete their productions in a timely manner, <u>second</u> that any order from the Court should include a provision allowing for the dismissal of any producing party from an adversary proceeding filed by the Oversight Board if and when that party has sufficiently produced discovery showing that they were a conduit and not a beneficial holder of the relevant bonds (or showing that any ownership was below certain amounts), and <u>third</u> that the Proposed Order would impose an unreasonable deadline

---

[4] As defined in Dkt. No. 6900.

[5] The First Proposed Order is located at Exhibit A to Dkt. No. 6853.

3

for production. Multiple parties filed joinders to these three objections, including Goldman Sachs & Co. LLC and Goldman Sachs Bank USA (Dkt. No. 6917), Branch Banking and Trust Company, BB&T Securities LLC, Regions Bank and The Huntington National Bank (Dkt. No. 6936), and Wells Fargo Bank, National Association; Wells Fargo Clearing Services LLC AKA or FKA First Clearing LLC and Wells Fargo Securities LLC (collectively "Wells Fargo") (Dkt. No. 6931) ("Wells Fargo Limited Objection")[6].

On May 13, 2019, the Special Claims Committee filed their reply. (Dkt. No. 6924) ("Reply")[7]. Therein, the Oversight Board represented that it had amended the First Proposed Order in response to both the objections filed with the Court and others lodged more informally. (Reply ¶ 1). The Oversight Board's revised proposal resolves the Bank Defendants' first two objections. (Id. ¶ 4 ("in addition to certain ministerial revisions, (i) the Oversight Board has relinquished its request that facts be deemed admitted absent further motion and order, and (ii) the Oversight Board has consented to the requirement of dismissal (with some qualifications, as suggested by the Bank Defendants) of parties that timely comply with the Court's order.")). Thus, the only objection before the Court is the third, whereby the Bank Defendants and joining parties argue that the current language setting deadlines for production is unreasonable.

The Oversight Board's revised proposed order provides:

> The Participant Holders shall respond, and to the extent applicable, provide documents responsive to the Document Request, as follows:

---

[6] On May 13, 2019, Wells Fargo also filed a motion for extension of time to object to the Motions to Enforce. (Dkt. No. 6930). Taking notice of the lack of objection, the Court allows Wells Fargo's motion for an extension and has considered Wells Fargo's joinder and limited objection as filed at Dkt. No. 6931.

[7] Conflicts Counsel filed a joinder thereto. (Dkt. No. 6948).

4

> a. As pertaining to the Challenged GO Bonds and PBA Bonds, not later than June 1, 2019.
>
> b. As pertaining to ERS Bonds, not later than May 16, 2019.
>
> c. The deadlines set forth in Paragraphs 6(a) and 6(b) herein may be extended for good cause shown, including, without limitation, the reasons set forth in the First Discovery Order [ECF No. 6384].

In contrast, the Bank Defendants' proposal, located at Dkt. No. 6901-2, provides:

> The Participant Holders shall respond to the Document Request as follows:
>
> a. As pertaining to the Challenged GO Bonds and PBA Bonds, on or before June 1, 2019, **or as soon as reasonably practicable thereafter**.
>
> b. As pertaining to ERS Bonds, on or before May 16, 2019, **or as soon as reasonably practicable thereafter**.
>
> c. The deadlines set forth in Paragraphs 6(a) and 6(b) herein may be extended for good cause shown including, with limitation, the reasons set forth in the First Discovery Order [ECF No. 6384].

(emphasis added).

Thus, the remaining dispute among the parties concerns the inclusion of the bold language above. The Bank Defendants argue the added language is necessary because the Oversight Board's deadlines are unreasonable and unnecessary. (Limited Objection ¶ 5). The Bank Defendants contend that since the Oversight Board has periodically added to their discovery request, it has been difficult to fully comply by the given deadlines. (Id.). In addition, Wells Fargo represents that it was only recently notified of the request at all, and thus cannot comply in the suggested time frame. (Wells Fargo Limited Objection ¶ 2 ("relevant Wells Fargo personnel were not aware until this past Friday, May 10, that the [Oversight Board] sought urgent discovery from Wells Fargo. The [Oversight Board] now demands that Wells Fargo meet unreasonable and arbitrary production deadlines . . .")).

The Oversight Board argues that "[a]n order on the Motion[s] to Enforce must . . . clearly enforce the Court's prior orders, and state consequences (even, as here, little to no consequences) for non-compliance." (Reply ¶ 6). The Oversight Board also argues that to include the Bank Defendants' proposed language would create a burden on the Board as it would "allow each Participant Holder to comply with the Court's order at a pace it deems reasonable, allocating personnel and costs at levels it deems reasonable, leaving the Oversight Board to interrogate such pace at the Oversight Board's risk and expense." (Reply ¶ 11).

The Oversight Board has established its need for this discovery and for establishing a date certain for production. Doing so is necessary to ensure compliance with this Court's orders. Accordingly, the Court adopts the Oversight Board's proposed language as to both deadlines. However, the Court acknowledges that the Oversight Board has amended its requests over time such that many of the responding parties have not had sufficient time to comply in an already condensed timeframe. (See Motion to Enforce ¶ 6 (informing the Court that productions to date have "enabled the Oversight Board to modify its diligence and add necessary Participant Holders and CUSIPs to [the Motion to Enforce].")) Thus, the Court would be inclined to find good cause for reasonable extensions beyond the dates provided herein for parties who cannot feasibly complete their productions on time. Producing parties shall meet and confer with the Oversight Board to determine if they can agree to an extended date prior to requesting a good cause extension from the Court.

Thus, the Court hereby adopts the parties' proposed language, incorporating the Oversight Board's requested dates. The Court has also modified Section 10 of the proposed orders as necessary for compliance with the Court's filing requirements and local rules.

6

Accordingly, the Court orders as follows:

1. The Urgent Motions to Enforce are granted as and only to the extent provided herein.

2. The Oversight Board is authorized to serve the Document Request, attached as Exhibit B to the Motions to Enforce, on the Participant Holders identified at Appendix 2 to Exhibit B of the Motions to Enforce.

3. To the extent of any conflict between this order and the First Discovery Order or Second Discovery Order, this order shall control, provided that to the extent that any Participant Holder has already produced any information or documents in response to the First Discovery Order and Second Discovery Order, it need not re-produce such information or documents pursuant to this order.

4. The Oversight Board shall promptly make available, upon request by any Participant Holder, an electronic document listing the Challenged Bonds, and the dates upon which payments are thought to have been made by the PBA, Commonwealth and/or ERS, as applicable, to purported holders of such Challenged Bonds based upon publicly available documents.

5. The Oversight Board shall promptly provide any additional information relating to the Challenged Bonds that it has obtained from any source to help the Participant Holders locate the requested information.

6. The Participant Holders shall respond, and to the extent applicable, provide documents responsive to the Document Request, as follows:

    a. As pertaining to the Challenged GO Bonds and PBA Bonds, not later than **June 1, 2019**.

    b. As pertaining to ERS Bonds, not later than **May 16, 2019**.

    c. The deadlines set forth in Paragraphs 6(a) and 6(b) herein may be extended for good cause shown, including, without limitation, the reasons set forth in the First Discovery Order.

7. Participant Holders shall continue to respond to the Document Request to the extent their response remains incomplete as of the dates provided above, and the Oversight Board and any relevant co-plaintiff shall receive such responses and amend litigation pleadings to reflect such responses. Upon receipt of a Participant Holder's written representation to the Oversight Board that its response to the Document Request is complete and its demonstration, through the production of documents or otherwise, that either (a) the Participant Holder did not hold Challenged Bonds or receive Transfers through the respective DTC numbers

7

located on Appendix 2 to Exhibit B of the Urgent Motions to Enforce, on its own behalf, or (b) that such Participant Holder's own Challenged Bonds holdings or receipt of such aforementioned Transfers do not meet or exceed the Threshold Amounts,[8] the Oversight Board and any co-plaintiff to relevant litigation shall dismiss such Participant Holder from the adversary proceeding(s) in which the Participant Holder is named within thirty (30) days of receipt of such representation. Upon receipt of a Participant Holder's written representation to the Oversight Board that its response to the Document Request is complete and its demonstration, through the production of documents or otherwise, that the Participant Holder held some Challenged Bonds or received some Transfers through the respective DTC numbers located on Appendix 2 to Exhibit B of the Urgent Motions to Enforce on its own behalf and also some Challenged Bonds or received some aforementioned Transfers on behalf of others, the Oversight Board and any co-plaintiff shall reduce their claims against such Participant Holder in an amount equal to the Challenged Bonds and/or Transfers that the Participant Holder did not hold or receive on its own behalf; provided, however, that such reduction of claims shall in no way serve as a waiver of or otherwise prejudice the rights of any Participant Holder to assert any available rights, claims or defenses thereto. Such dismissal of a Participant Holder does not and shall not prejudice any claim of the Title III Debtors otherwise asserted, which could be asserted or which is subject to tolling.

8. Notwithstanding the foregoing, no Participant Holder shall be required to respond to the Document Request to the extent such response would be duplicative of any prior production or response to the Oversight Board. For the avoidance of doubt, the CUSIPs highlighted in Appendix 3 to Exhibit B of the Urgent Motions to Enforce were not previously identified and requested, and all Participant Holders must respond to the Document Request as pertaining to such highlighted CUSIPs as set forth in Paragraph 6 above.

9. To the extent any federal, state or foreign law or other legal authority governing the disclosure or use of confidential information, including personal data or non-public personal financial information, permits disclosure of such information pursuant to an order of a court, this order shall constitute such an order.

---

[8] For the avoidance of doubt, the "Threshold Amounts" refer to Transfers to Persons who either (a) did not hold more than $2,500,000 in Challenged Bonds in the aggregate at any time during the Lookback Period, (b) did not receive more than $250,000 in Transfers in the aggregate during the Lookback Period, or (c) did not receive any single Transfer greater than $12,000.

8

10. The Oversight Board shall not disclose any Confidential Information[9] to any person for any purpose, except as provided below:

    a. The Oversight Board may disclose any Confidential Information to (a) the UCC and/or any trustee appointed pursuant to 11 U.S.C. § 926, and (b) each such party's representatives, professionals, and members, provided that the foregoing restrictions shall apply to all such parties and persons (each in such capacity, a "Receiving Party");

    b. The Receiving Party may disclose the identity of any person or entity who is a defendant to a Challenged Bonds Avoidance Action, together with such person's or entity's address, the date of receipt of any transfers alleged to be avoidable, the amounts of any such transfers individually and in the aggregate, and the Challenged Bond CUSIP numbers corresponding to any such transfers, in any document necessary to file, serve, and prosecute the Challenged Bonds Avoidance Actions. Notwithstanding the foregoing, in accordance with Local Rule 5.2 of the District of Puerto Rico, the Receiving Party shall, to the extent it seeks to disclose Confidential Information in any pleading, motion, objection, or other public document pursuant to this paragraph, redact all (1) social security or employer identification numbers of individuals or entities, (2) names of any individuals known by the Receiving Party to be minor children as of the date of disclosure; (3) dates of birth of individuals, (4) financial account numbers, and (5) home or business addresses, other than such individuals' or entities' city and state of residence, provided, however, that in any Challenged Bond Avoidance Action not involving an individual known by the Receiving Party to be a minor child at the time of disclosure, the Receiving Party shall file any initial pleading and case commencement materials using a pseudonym[10] name for the defendant, and file with the Court a "key"[11] list matching

---

[9] "Confidential Information" constitutes or contains nonpublic proprietary or confidential technical, business, financial, personal, or other information of a nature that can be protected under Rule 26(c) of the Federal Rules of Civil Procedure and Rule 7026 or 9018 of the Federal Rules of Bankruptcy Procedure, or is subject by law or by contract to a legally protected right of privacy. For the avoidance of doubt, Confidential Information includes customer/consumer names and addresses, account numbers, and identification of securities held in the accounts. The term "Confidential Information," however, shall not include information within the public domain that is furnished by any provider of information ("Provider") to a third party who is under no obligation to keep the information confidential.

[10] For the avoidance of doubt, no pseudonym name can be used more than once, and must not repeat a pseudonym name used previously in these Title III cases.

[11] The Court takes notice of the fact that the parties wish to file the "Key" under seal. Due to technical requirements on CM/ECF, and in accordance with LBR 9018-1, the parties must file a motion to seal prior to filing the "Key."

pseudonyms to actual names, and provided further that the obligation to utilize a pseudonym as provided herein extends only to the initial pleading and case commencement materials and shall terminate twenty-one (21) days after the Receiving Party provides such defendant, at the time of service, with reasonable notice and an opportunity to object to the use of its Confidential Information. For the avoidance of doubt, (a) the Receiving Party may file a single "key" matching pseudonyms to actual names of all defendants to all Challenged Bond Avoidance Actions commenced by such Receiving Party; and (b) notice and opportunity for such defendants to object to use of Confidential Information may be provided by the Receiving Party in the body of any initial pleading and no further notice shall be required.

c. Upon the latest of (a) the date that a final judgment has been entered and satisfied as to all Challenged Bonds Avoidance Actions and (b) the date that the above-captioned PROMESA Title III cases are closed by the Court, the Receiving Parties shall destroy all Confidential Information. Notwithstanding the foregoing, the Receiving Parties shall be permitted to retain, in accordance with its documented practices, professional obligations, applicable law or automatic electronic backup systems, archival copies of any Confidential Information. For the avoidance of doubt, the Receiving Parties shall not be required to destroy or erase any electronic copy of such materials that is created pursuant to its standard electronic backup and archival procedures, if only personnel whose functions are primarily information technology in nature have access to such retained copies (except to the extent used for any purpose outlined above in this paragraph) and such personnel's access is limited to that reasonably necessary for the performance of their information technology duties. Notwithstanding the destruction of Confidential Information pursuant to this paragraph, the Receiving Parties will continue to be bound by their confidentiality obligations and other obligations under this order in perpetuity; and

d. In the event that a Receiving Party receives a request to disclose all or any part of the Confidential Information under the terms of a subpoena or other order issued by a court of competent jurisdiction or by another governmental agency, relevant regulatory authority or by the mandatory rules or requirements of any recognized investment exchange, the Receiving Party shall to the extent permitted by law or the mandatory rules or requirements of any recognized investment exchange (a) promptly notify the Provider of the existence, terms and circumstances surrounding such a request, (b) consult with the Provider on the advisability of taking steps to resist or narrow such request, (c) if disclosure of such Confidential Information is required, furnish only such portion of the Confidential

10

Information as the Receiving Party reasonably determines is legally required to be disclosed and (d) cooperate, at the Provider's expense, with the Provider in its efforts to obtain a protective order or other relief to prevent the disclosure of the Confidential Information or other reliable assurance that confidential treatment will be accorded to such portion of the Confidential Information that is required to be disclosed.

11. The Receiving Party shall maintain Confidential Information in a secure and safe area and shall exercise a standard of due and proper care with respect to the storage, custody, use, and/or dissemination sufficient to safeguard against unauthorized or inadvertent disclosure of Confidential Information. Confidential Information shall not be copied, reproduced, extracted or abstracted, except to the extent that such copying, reproduction, extraction or abstraction is reasonably necessary for the conduct of the Challenged Bonds Avoidance Actions. All such copies, reproductions, extractions, and abstractions shall be subject to the terms of this order and labeled in the same manner as the designated material on which they are based. If a Receiving Party learns that there has been a material breach of a Provider's Confidential Information due to unauthorized access by a third-party (including unauthorized access by a current or former employee of the Receiving Party) to Confidential Information in the Receiving Party's possession, custody or control, the Receiving Party shall as soon as possible notify the Provider of such breach and shall cooperate, or cause its designated agents to cooperate, with the Provider and the Provider's agents in the investigation and resolution of such breach. Nothing in this provision, however, shall be construed as authorizing or requiring a party to violate any law, court order, or regulatory obligation prohibiting the Receiving Party from notifying the Provider of such breach.

12. Any Provider or Receiving Party may seek additional orders from the Court that such Party believes may be necessary to comply with any law or contractual obligation relating to personal data or non-party financial information.

13. The terms of and conditions of this order shall be immediately effective and enforceable upon its entry.

This order resolves Dkt. Nos. 6853, 6854, 6917, 6930, 6934, 6936, 6948.

SO ORDERED.

/ s / Judith Gail Dein  
Judith Gail Dein  
United States Magistrate Judge

DATED: May 15, 2019