**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

**RESPONDENTS' URGENT MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING AN ALLEGED APRIL 27, 2016 MEETING WITH MOVANTS' REPRESENTATIVES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND .......................................................................................................................... 4
    I.    ERS FISCAL CRISIS AND 2017 PENSION REFORMS .................................... 4
    II.    APRIL 27, 2016 MEETING AND RELATED DISCOVERY ............................. 6
ARGUMENT ................................................................................................................................. 8
    I.    THE COURT SHOULD BAR EVIDENCE AND ARGUMENT REGARDING THE ALLEGED APRIL 27, 2016 MEETING. ........................... 8
    II.    THE COURT SHOULD ALSO BAR EVIDENCE AND ARGUMENT REGARDING THE APRIL 27, 2016 MEETING BECAUSE IT IS MORE PREJUDICIAL THAN PROBATIVE. ............................................................... 13
CONCLUSION ........................................................................................................................... 14

# TABLE OF AUTHORITIES

Page

**Cases**

*Arnold v. United Postal Service*,
 136 F.3d 854 (1st Cir. 1998) .................................................................................................. 11

*Culebras Enterprises Corp. v. Rivera-Rios*,
 846 F.2d 94 (1st Cir. 1988) ..................................................................................................... 14

*Eghnayem v. Boston Scientific Corporation*,
 873 F.3d 1304 (11th Cir. 2017) ............................................................................................... 14

*Faulkner v. Nat'l Geographic Soc.*,
 576 F. Supp. 2d 609 (S.D.N.Y. 2008) ....................................................................................... 8

*Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*,
 240 F.3d 1 (1st Cir. 2001) ........................................................................................................ 13

*Grella v. Salem Five Cent Savings Bank*,
 42 F.3d 26 (1st Cir. 1994) ............................................................................................... 3, 9, 13

*In re Hunt's Pier Assocs.*,
 143 B.R. 36 (Bankr. E.D. Pa. 1992) .......................................................................................... 3

*In re Johnson*,
 756 F.2d 738 (9th Cir. 1985) ............................................................................................... 9, 13

*In re Ledis*,
 259 B.R. 472 (Bankr. D. Mass. 2001) ....................................................................................... 3

*In re Utah Aircraft Alliance*,
 342 B.R. 327 (10th Cir. BAP 2006) .................................................................................... 9, 13

*Kenney v. Head*,
 670 F.3d 354 (1st Cir. 2012) ............................................................................................ 8, 9, 13

*Plaza-Torres v. Rey*,
 No. CIV. 02-1216 SEC, 2006 WL 6884391 (D.P.R. Apr. 21, 2006) ............................... 8, 9, 13

*Texas Health Presbyterian Hosp. of Denton v. D.A.*,
 No. 17-0256, 2018 WL 6713207 (Tex. Dec. 21, 2018) ........................................................... 12

*United Cos. Fin. Corp. v. Brantley (In re Brantley)*,
 6 B.R. 178 (Bankr. N.D. Fla.1980) ..................................................................................... 9, 13

*United Servs. Auto. Ass'n v. Perry*,
 102 F.3d 144 (5th Cir. 1996) ................................................................................................... 11

# TABLE OF AUTHORITIES
## (Cont.)

**Page**

**Statutes**

11 U.S.C. § 362(d)(1) .................................................................................................................. 1

3 L.P.R.A. § 787f .................................................................................................................. 5, 10

Act 106, § 2.1(b) .................................................................................................................. 5, 11

Act 106, § 2.4(e) ......................................................................................................................... 5

J.R. 188, § 4 ................................................................................................................................ 5

**Other Authorities**

Congressional Task Force on Economic Growth in Puerto Rico, Report to the House and Senate, 114th Congress (Dec. 20, 2016), *available at* https://www.finance.senate.gov/imo/media/doc/Bipartisan%20Congressional%20Task %20Force%20on%20Economic%20Growth%20in%20Puerto%20Rico%20Releases% 20Final%20Report.pdf.................................................................................................... 4, 5

H.R. Rep. No. 95–595 (1977), reprinted in 1978 U.S.C.C.A.N. 5787 ......................................... 8

**Rules**

Fed. R. Evid. 401 ....................................................................................................................... 8

Fed. R. Evid. 403 ................................................................................................................ 13, 14

**Constitutional Provisions**

P.R. Const. art. III, § 8 ............................................................................................................. 12

Under Rules 26, 30(b)(6), 34, 37, and 45 of the FRCP and Rules 7026, 7030(b)(6), 7034, 7037, and 9016 of the FRBP, made applicable to this matter under Section 310 of PROMESA, the Oversight Board, as the Debtors' representative under PROMESA section 315(b), and AAFAF, under the authority granted to it under the AAFAF Enabling Act, hereby submit this urgent motion in limine on their own behalf and on behalf of the Commonwealth and ERS.[2]

## PRELIMINARY STATEMENT

1.  The sole issue presented by Movants' limited motion for adequate protection is whether PROMESA's automatic stay is causing a diminution in the value of Movants' alleged collateral.  *See* 11 U.S.C. § 362(d)(1).  The evidence relevant to this narrow issue primarily concerns the value of that alleged collateral, and whether its value is declining at all and, if so, whether such diminution in value is the result of the automatic stay.  *Id.*  What it does not concern

---

[2] As used in this motion in limine, (i) "AAFAF" means the Puerto Rico Fiscal Agency and Financial Advisory Authority; (ii) "AAFAF Enabling Act" means the *Enabling Act of the Fiscal Agency and Financial Advisory Authority*, Act 2-2017; (iii) "Act 106" Act No. 106 of August 23, 2017; (iv) "Commonwealth" means the Commonwealth of Puerto Rico; (v) "Debtors" means ERS and the Commonwealth; (vi) "ERS" means the Employees Retirement System for the Government of the Commonwealth of Puerto Rico; (vi) "ERS Bondholders" mean holders of pension funding bonds issued by ERS; (viii) "Oversight Board" means the Financial Oversight and Management Board for Puerto Rico; (ix) "FRBP" means the Federal Rules of Bankruptcy Procedure; (x) "Joint Resolution 188" or "J.R. 188" mean Joint Resolution for Other Allocations for Fiscal Year 2017-2018; (xi) "Motion" means Motion of Certain Creditors of the Employees Retirement System of the Government of Puerto Rico to Compel Discovery, 17-3566-LTS, ECF No. 402 (D.P.R. Mar. 21, 2019); (xii) "Movants" means certain ERS bondholders, including Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree-Forrest Multi- Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., SV Credit, L.P., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.; (xiii) "PROMESA" means the Puerto Rico Oversight, Management, and Economic Stability Act; (xiv) "Respondents" means ERS, the Commonwealth, AAFAF, and the Oversight Board collectively; and (xv) "Stay Relief Motion" means the Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay, No. 17-3566-LTS, ECF No. 289 (D.P.R. July 3, 2018).

1

are meetings between financial advisors to a prior Puerto Rico gubernatorial administration on the one hand, and Movants' counsel on the other hand, that allegedly occurred more than a year before Puerto Rico's pension reform that Movants contend caused diminution of their alleged collateral's value. Yet in support of their Stay Relief Motion, Movants intend to present evidence of just such a meeting—an April 27, 2016 discussion between Movants' counsel and representatives of Millstein & Co. (advisors to former Governor Alejandro García Padilla) at which the Millstein representatives allegedly suggested that the Commonwealth could adopt pay-as-you-go pension reform. This meeting has no bearing on the value of Movants' alleged collateral at any point in time, much less any relevance to whether PROMESA's automatic stay is somehow causing that alleged collateral's value to diminish. All Movants would accomplish by offering this evidence would be unnecessarily to prolong discovery by requiring testimony and document productions from Movants' counsel and third parties, and to prolong the hearing on their Stay Relief Motion, wasting the Court's and the debtors' scarce resources. The Court should therefore exclude any evidence concerning this April 2016 meeting from the hearing on the motion for adequate protection.

2. Both the alleged meeting and the purpose for which Movants intend to offer evidence concerning it are truly inconsequential to the Stay Relief Motion. Movants contend that on April 27, 2016, their attorneys Bruce Bennett and John Cunningham met with James Millstein and Elizabeth Abrams from Millstein & Co. (*See* Motion to Compel Discovery at 10, Dkt. No. 402 in 17-BK-3566.) Messrs. Bennett and Cunningham have submitted declarations attesting in conclusory fashion that Mr. Millstein, a financial restructuring advisor to the García administration, stated that the Commonwealth could begin taking steps to establish a "pay as you go system" for pension payments as a way to end ERS's obligations to bondholders. *Id.* Movants

2

have argued that Millstein's alleged statements are relevant to show that—more than a year later, after a new administration and Legislature was elected, and after Millstein ceased to advise the Government—Puerto Rico's subsequent Legislature adopted pay-go pension reform under Joint Resolution 188 and Act 106 with the intent of extinguishing ERS's obligations to Movants.

3. Even if Movants were correct in their speculation that Joint Resolution 188 and Act 106 were intended to terminate ERS's bond obligations to Movants (and they are not), evidence concerning this alleged April 27, 2016 meeting should be excluded. The origins and intent behind Puerto Rico's pension reform shed no light on the questions Movants' adequate-protection motion presents, namely whether (1) Movants have a valid security interest in their alleged collateral,[3] and, if so, (2) the collateral's value equals the value of the claim it secures, (3) the collateral is diminishing in value as a result of the automatic stay, and (4) ERS has otherwise protected Bondholders' interest.[4] Evidence concerning the April 27, 2016 meeting cannot help answer any of these questions. The intent behind Joint Resolution 188 and Act 106 does not help to establish the value of Movants' alleged collateral or their claim at *any* time. And even if it did, the best expression of that intent is the unambiguous language of the legislation at issue. Alleged

---

[3] *See In re Hunt's Pier Assocs.*, 143 B.R. 36, 50 (Bankr. E.D. Pa. 1992) (explaining that if the debtor cannot establish that it has a valid security interest, it is treated as an unsecured creditor for purposes of § 362). Respondents reserve all rights regarding challenges to the validity of Movants' asserted security interests. For example, AAFAF and the Official Committee of Unsecured Creditors have challenged the validity of the ERS bonds on the grounds that the ERS Enabling Act did not authorize ERS to issue bonds to the public and therefore the bonds are *ultra vires* and unenforceable. *See* Government Defendants' Joinder and Reply to ERS Bondholders' Omnibus Opposition to Motion to Dismiss Plaintiffs' Amended and Supplemented Complaint Pursuant to Fed. R. Civ. P. 12(b)(6), No. 17-0219-LTS, ECF No. 62, at 4 (D.P.R. Jan. 14, 2018); Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico, No. 17-3566-LTS, ECF No. 381, ¶ 3 (D.P.R. Mar. 12, 2019). Until these issues are decided, Respondents do not concede that Movants have any secured interests.

[4] *See Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 33 (1st Cir. 1994) (explaining that a "hearing on a motion for relief from stay is meant to be a summary proceeding" that is "limited in scope to adequacy of protection, equity, and necessity to an effective reorganization"); *see also In re Ledis*, 259 B.R. 472, 476–77 (Bankr. D. Mass. 2001) (holding that creditor is entitled to relief from an automatic stay if the "claim exceeds the value of the collateral and the Debtor has not offered some other form of adequate protection").

expressions of intent by restructuring advisors to a *prior* gubernatorial administration shed no light on what the relevant decision-maker—Puerto Rico's subsequently elected Legislature—had in mind when it passed two separate pieces of legislation necessary to enact pension reform. In fact, Judge Dein has rebuffed Bondholders' discovery demands for the Government Parties' documents pre-dating the Rosselló administration's January 1, 2017 commencement. *See* Dkt. No. 431 in 17-BK-3566.

4.  The Government Parties bring this motion now, rather than after discovery's close, to help shape the remaining discovery and avoid wasting scarce resources on discovery into issues that should not be aired at the hearing on Movants' Stay Relief Motion. Movants have subpoenaed two former Millstein representatives seeking documents and testimony concerning this meeting, and under the Court's schedule for the Stay Relief Motion, that discovery must be concluded before the May 29, 2019 fact discovery cut-off. Judge Dein understandably declined to foreclose all discovery into the alleged April 2016 meeting because Judge Dein believed this Court should ultimately determine what evidence would be entertained at the lift-stay hearing. Because this Court will hear the Stay Relief Motion and is best positioned to determine whether this evidence should be allowed, the Government Parties respectfully request that the Court decide this issue now. Before the parties squander scarce resources in futile discovery efforts, this Court can ensure that the hearing (and related discovery) proceed as efficiently as possible.

## BACKGROUND

### I.  ERS FISCAL CRISIS AND 2017 PENSION REFORMS

5.  In January 2017, when the Rosselló administration took office, Puerto Rico's retirement systems faced an imminent liquidity crisis that threatened their ability to continue paying retirees' benefits. As Congress found, as of June 30, 2015, ERS was "in a negative funded position" and "at risk of becoming insolvent." *See* Congressional Task Force on Economic Growth

4

in Puerto Rico, Report to the House and Senate, 114th Congress (Dec. 20, 2016), *available at* https://www.finance.senate.gov/imo/media/doc/Bipartisan%20Congressional%20Task%20Force%20on%20Economic%20Growth%20in%20Puerto%20Rico%20Releases%20Final%20Report.pdf. The Task Force further reported that as of June 30, 2015, ERS had a "net pension liability of $33.2 billion with a funded ratio of [negative] 1.8 percent." *Id*. at 12.

6. Responding to the "imminent insolvency" of ERS, on June 24, 2017, the Legislative Assembly passed Joint Resolution 188, which Governor Rosselló signed the next day. On August 23, 2017, the Legislative Assembly passed Act 106 and Governor Rosselló signed it into law the same day.

7. Together, Act 106 and Joint Resolution 188 reformed Puerto Rico's retirement systems by having covered employers assume the pension obligations corresponding to their respective pensioners. Employers now must reimburse *the Commonwealth* for the actual amount of the payments the Commonwealth has advanced to the employers' current pensioners. Because ERS would no longer be responsible for paying benefits, Act 106 eliminated employers' obligations to contribute to ERS. *See* Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

8. Act 106 also created a new "Pay-Go Fee," which is a fee payable by "the Government, the Municipalities, the Legislative Branch, Court Administration and Public Corporations and other covered entities" to the Puerto Rico Treasury. Act 106, § 2.1(b). Pay-Go fees equal the "amount actually paid to Pensioners and Beneficiaries from each covered entity." *Id.* By contrast, employer contributions were previously payable directly to ERS and were a percentage of each employer's then-current payroll, as opposed to the actual amounts paid to pensioners and beneficiaries as current benefits. *Compare id.*, *with* 3 L.P.R.A. § 787f (requiring

5

each employer to make contributions to ERS calculated based on a percentage of current employee payroll).[5]

9. In July 2018, Movants filed their Motion for Relief from the Automatic Stay. Dkt. No. 289 in No. 17-3566. Movants argued that they have protected interests in ERS's property that are not adequately protected. *Id.* The Stay Relief Motion was temporarily mooted after the district court held that Movants' security interests in ERS's property were unperfected. Dkt. No. 318 in No. 17-3566. After the First Circuit reversed that decision and remanded, the parties proceeded with discovery into the Stay Relief Motion. Judge Dein ruled on several related discovery motions. *See, e.g.*, Dkt. Nos. 493 and 509 in No. 17-3566. Most relevant for the purposes of this motion, Judge Dein denied Movants' motion to compel document production going back to mid-2016, instead confining discovery to a period starting on January 1, 2017. *See* Order, Dkt. No. 431 in No. 17-3566.

## II. APRIL 27, 2016 MEETING AND RELATED DISCOVERY

10. In an effort to justify discovery going back to 2016, Movants have alleged that their counsel met on April 27, 2016, with representatives of Millstein & Co., who the Bondholders allege were speaking on behalf of the Commonwealth. Movants filed two declarations from their counsel stating that one Millstein representative (James Millstein) said that the Commonwealth could avoid ERS's payment obligations to its bondholders by establishing a new pension payment system he referred to as a "pay as you go system." (*See* Motion to Compel Discovery at 10, Dkt. No. 402 in 17-BK-3566.)

---

[5] Beginning in 2013, employers had been required to make a supplemental contribution to ERS that was not based on a percentage of payroll. Joint Resolution 188 and Act 106 also eliminated this Additional Uniform Contribution. *See* Act 106, §§ 2.1(b), 2.4(e); J.R. 188, § 4.

6

11. Because the Bondholders apparently intend to rely on evidence regarding the April 2016 meeting at the hearing on the lift stay motion, the Oversight Board, on behalf of ERS and the Commonwealth, served document and deposition subpoenas on Messrs. Bennett and Cunningham and their law firms on April 26, 2019. Pocha Decl. ¶ 2, Exs. A–D. Movants sought a protective order against the subpoenas on the grounds that, among other things, they sought privileged information and were overbroad. Motion to Quash or Modify Subpoena, Dkt. No. 489 in 17-BK-3566. During the hearing on the protective order motion, Movants argued that they believe the "allu[sion]" to PayGo during the April 27, 2016 meeting demonstrates that "the PayGo decision was made at that time." Transcript of May 2, 2019 Motion Hearing, at 11; *id.* at 40 (arguing that plan to turn employer contributions into PayGo Fees "was the exact threat made . . . by Mr. Millstein on April 27, 2016"). While Movants contend that the decision to create a pay-as-you-go pension system was made solely to avoid obligations associated with the bonds, they have never explained why the alleged timing of this supposed decision has any bearing on their lift-stay motion. *Id.* at 40–45. Even though the Court invited them to withdraw their reliance on evidence concerning the April 2016 meeting to avoid a deposition, Movants' counsel steadfastly refused to do so. *Id.* at 7.

12. Instead, Movants doubled down. On May 3, 2019, they served subpoenas on Millstein and Co. and its representatives who allegedly attended the April 2016 meeting—James Millstein and Elizabeth Abrams. The subpoenas seek all documents and communications, calendar invitations, and materials relied upon in connection with the April 2016 meeting, as well as depositions of Mr. Millstein, Ms. Abrams, and Millstein & Co. through a Rule 30(b)(6) designee. Pocha Decl. ¶ 3, Exs. E–I.

13. On May 10, 2019, Respondents and Movants met and conferred regarding the motion in limine. Respondents informed Movants that Respondents intended to file an urgent motion in limine to exclude evidence concerning the April 27, 2016 meeting from the hearing on Respondents' Stay Relief Motion. Movants consented to the filing of the urgent motion provided that it would be filed within a week and Respondents proposed that the parties hold in abeyance any depositions or document discovery pending resolution of that motion. Movants agreed to do so. *See* Pocha Decl. ¶ 4, Ex. I. But Movants continue to insist that they will rely on evidence concerning the April 2016 meeting at the hearing on the motion for adequate protection, *see* Transcript of May 6, 2019 Motion Hearing, 9–10, which in turn will require discovery concerning that meeting on an expedited basis unless the Court intervenes now.[6]

## ARGUMENT

### I. THE COURT SHOULD BAR EVIDENCE AND ARGUMENT REGARDING THE ALLEGED APRIL 27, 2016 MEETING.

14. Irrelevant evidence is inadmissible. *See, e.g.*, *Plaza-Torres v. Rey*, No. CIV. 02-1216 SEC, 2006 WL 6884391, at *2 (D.P.R. Apr. 21, 2006) (granting motion in limine to exclude irrelevant evidence pursuant to Rule 401). Evidence is relevant only if it has "any tendency to make a fact" that is "of consequence in determining the action" "more or less probable than it would be without the evidence." Fed. R. Evid. 401; *see Kenney v. Head*, 670 F.3d 354, 358 (1st Cir. 2012) (affirming exclusion of evidence that did not "go to a fact of consequence"); *Faulkner v. Nat'l Geographic Soc.*, 576 F. Supp. 2d 609, 613 (S.D.N.Y. 2008) (finding evidence at issue not relevant because "it would not make any fact at issue here more or less probable tha[n] it would be in its absence").

---

[6] Subject to the Court's approval, the parties have agreed that Respondents' opposition would be due Friday, May 24, 2019 and Movants' reply would be due Thursday, May 30, 2019. Pocha Decl. ¶ 4.

8

15. Evidence concerning the April 2016 meeting does not pertain to a fact "of consequence in determining the action." Fed. R. Evid. 401. The hearing on Movants' Stay Relief Motion is "meant to be a summary proceeding" that is "limited in scope to adequacy of protection, equity, and necessity to an effective reorganization." *Grella*, 42 F.3d at 33; *see also In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985) (explaining that relief from stay hearing is limited to valuation of collateral and adequacy of protection); *In re Utah Aircraft Alliance*, 342 B.R. 327, 332 (10th Cir. BAP 2006) ("Because the statute requires bankruptcy courts to rule quickly on stay motions, a relief from stay proceeding is by its nature a cursory or summary proceeding."); *United Cos. Fin. Corp. v. Brantley (In re Brantley)*, 6 B.R. 178, 187–88 (Bankr. N.D. Fla.1980) ("[A]t all hearings on relief from the stay, the only issue will be the claim of the creditor and the lack of adequate protection or existence of other cause for relief from the stay.") (citing H.R. Rep. No. 95–595, at 344 (1977), reprinted in 1978 U.S.C.C.A.N. 5787, 6300–01). The facts of consequence in deciding Movants' Stay Relief Motion are facts that bear upon the following legal elements:

- the validity and value of Movants' alleged collateral before the PROMESA automatic stay took effect;
- the current status and value of Movants' alleged collateral; and
- whether the automatic stay is causing a decrease in the collateral's value.

By their own admission, Movants do not intend to offer evidence concerning the April 2016 meeting to establish any of those elements. For this reason alone, the evidence should be excluded. *See Kenney*, 670 F.3d at 358; *Plaza-Torres*, 2006 WL 6884391, at *2.

16. Movants instead intend to offer evidence concerning the April 2016 meeting as part of an effort to show that "the new so-called 'Pay-Go fee' is nothing but the old ERS employer contributions barely disguised in new attire." (*See* Reply in Support of Motion to Compel Discovery at 5, Dkt. No. 422 in 17-BK-3566.) In other words, Movants would like to show that

9

their alleged collateral interest in employer contributions under prior law follows the retirement system's reform and has become a collateral interest in Pay-Go fees. *Id.* at 13. Movants believe that Millstein's alleged remarks at the April 2016 meeting somehow belie an intent to harm Movants by converting employer contributions into Pay-Go fees, thereby stripping Movants of their collateral interest. (*See* Transcript of May 2, 2019 Motion Hearing, at 44–45.) Movants contend that, to right this wrong, their collateral interest should follow the Pay-Go fees. This effort to establish the relevance of the April 2016 meeting fails for several reasons.

17. *First*, the intent behind the pension reform to a Pay-Go system is entirely irrelevant to whether Pay-Go fees are "employer contributions by another name" such that the Movants' alleged collateral or a security interest in that collateral can be grafted onto the Pay-Go fees under applicable law. Movants' alleged security interest is not a guarantee that they receive payment on ERS bonds no matter what. Rather, their alleged collateral is expressly defined in the ERS bond resolution, and their alleged security interest is defined in the security agreement for the ERS bonds. The Bond Resolution identifies Movants' collateral as "Pledged Property," defined to mean "All Revenues," which in turn are defined to mean "All Employers' Contributions received by the System or the Fiscal Agent." (Ex. C to Stay Relief Motion, Dkt. No. 026 in 17-BK-3566.) The Bond Resolution defines "Employers' Contributions," in turn, to mean "contributions paid from and after the date hereof that are made by the Employers and any assets in lieu thereof or derived thereunder which are payable to the System [i.e., ERS] pursuant to Sections 2-116, 3-105 and 4-113 of the Act." *Id.*

18. Pay-Go fees (which are not payable to ERS) either fall within that definition or they do not under applicable law. But either way, the *intent* behind Puerto Rico's legislation converting to the Pay-Go system is not part of that inquiry under any applicable law. The relevant evidence

10

for that purpose is the Pay-Go legislation itself and implementing regulations that define how Pay-Go fees are calculated, who pays them, who receives them, and similar details. Assessing the legal effects of the PayGo legislation is a question of law in the province of the Court that requires nothing more than analyzing the statutory language. *See, e.g.*, *Arnold v. United Postal Service*, 136 F.3d 854, 857–58 (1st Cir. 1998) (holding that the "starting point for interpretation of a statute is the language of the statute itself") (internal quotations and citations omitted). Absent some ambiguity in that text—and the Bondholders have identified none—there is no reason, and no legal basis, to delve into the "intent" behind the statutes. *See United States v. Commonwealth Energy Sys. & Subsidiary Companies*, 235 F.3d at 15 ("In the absence of ambiguity, we generally do not look beyond the statutory language. However, when ambiguity exists, we may seek evidence of congressional intent in the legislative history."). Employer contributions were payable to ERS and constituted a percentage of each employer's payroll. 3 L.P.R.A. § 787f. Pay-Go fees, by contrast, equal the "amount actually paid to Pensioners and Beneficiaries from each covered entity," as their name implies. Act 106, § 2.1(b). Nothing in the definition of "employer contributions" or Pay-Go fees turns on anyone's intent. It is simply irrelevant.

19.  *Second*, to the extent anyone's intent could be relevant to interpret the PayGo legislation (e.g. if it were ambiguous), it is not Millstein's nor even Governor García's. Rather, because the question Movants pose is whether the Pay-Go legislation was somehow intended to harm Movants (*see* Reply in Support of Motion to Compel Discovery at 5–7, Dkt. No. 422 in 17-BK-3566), it is the Puerto Rico Legislature's intent that would be at issue. Pre-decisional communications, opinions, and intent of non-legislators would still be irrelevant. *Cf. United Servs. Auto. Ass'n v. Perry*, 102 F.3d 144 at 148 (5th Cir. 1996) (noting that use of non-legislative source materials for interpreting a statute "is an even less reliable basis than legislative history from which

11

to conclude that a statute, ambiguous on its face, is unambiguous in fact"). Even *individual* legislators' intent and motivations would have no probative value in interpreting Joint Resolution 188 and Act 106. *See Texas Health Presbyterian Hosp. of Denton v. D.A.*, No. 17-0256, 2018 WL 6713207, at *8 (Tex. Dec. 21, 2018) ("[S]tatements explaining an individual legislator's intent cannot reliably describe the legislature's intent."). The only evidence of the Puerto Rico legislature's intent is in the legislative history, not the alleged stray remarks of a restructuring advisor.

20. *Third*, even if a government advisor's comments were somehow probative of the legislature's intent in enacting Pay-Go pension reform, the remarks of an advisor to a prior administration would not be. Millstein ceased working for the Commonwealth government at the start of the new administration in January 2017. https://www.reuters.com/article/us-puertorico-debt-advisers/rothschild-replaces-millstein-as-puerto-rico-financial-adviser-idUSKBN1522J0. In November 2016, the people of Puerto Rico elected Governor Rosselló to replace Governor García, and Governor Rosselló was sworn into office on January 1, 2017. *See* https://www.fortaleza.pr.gov/conoce/gobernador. Likewise, Puerto Rico's people elected a new legislature in 2016 that was sworn in on January 2, 2017. P.R. Const. art. III, § 8 (stating that "[t]he term of office of Senators and Representatives shall begin on the second day of January immediately following the date of the general election in which they shall have been elected," which, in 2017, was January 2). That new legislature enacted Joint Resolution 188 on June 24, 2017 and Act 106 on August 23, 2017. Whatever stray thoughts Millstein representatives purportedly expressed in April 2016 shed no light on the intent of a new administration's and new legislature's actions more than a year later.

12

21. In sum, the remarks Movants' allege were made at the April 2016 meeting, even assuming they were both true and not inadmissible hearsay, would not tend to prove or disprove the legal effect of the PayGo legislation or PROMESA's stay on Movants' alleged collateral. Evidence of Millstein's remarks is therefore irrelevant and inadmissible. *See Kenney*, 670 F.3d at 358; *Plaza-Torres*, 2006 WL 6884391, at *2.

## II. THE COURT SHOULD ALSO BAR EVIDENCE AND ARGUMENT REGARDING THE APRIL 27, 2016 MEETING BECAUSE IT IS MORE PREJUDICIAL THAN PROBATIVE.

22. Even if evidence regarding the April 2016 meeting had some marginal relevance, it should nevertheless be excluded under Federal Rule of Evidence 403 because it will waste the Court's and the parties' scarce resources by unnecessarily complicating and prolonging the lift-stay proceedings. Federal Rule of Evidence 403 permits the Court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, . . . wasting time, or needlessly presenting cumulative evidence." As the First Circuit has made clear, courts enjoy "considerable discretion in calibrating the Rule 403 scales." *Ferrara & DiMercurio v. St. Paul Mercury Ins. Co.*, 240 F.3d 1, 6 (1st Cir. 2001).

23. Here, allowing evidence regarding the April 2016 meeting would unnecessarily prolong and complicate what should be, by its very nature, a limited proceeding. *Grella*, 42 F.3d at 33; *see also In re Johnson*, 756 F.2d at 740; *In re Utah Aircraft Alliance*, 342 B.R. at 332 ; *In re Brantley*, 6 B.R. at 187–88. For example, if evidence concerning the April 2016 meeting were allowed, testimony of four, or perhaps more, witnesses would be injected into the lift-stay proceedings, in addition to testimony of witnesses who have directly relevant evidence concerning the value of Movants' alleged collateral and whether it has been diminished due to the PROMESA stay's operation. The Court, in turn, would have to expend resources on additional evidentiary fights, including over hearsay and other objections, as well as allocate time for assessing the

13

evidence related to April 27, 2016 meeting. The Court would then potentially need to make findings regarding what was said at the meeting, whether what was said at the meeting by the advisors was accurate and authorized by the Commonwealth (particularly if it conflicts with the recollection of Movants' counsel as witnesses to the meeting), whether the statements of advisors to a prior administration should be attributed to the current administration, and whether what was said at the meeting somehow influenced the Puerto Rico Legislature's passage of Joint Resolution 188 and Act 106, among other issues. The Court would also have to determine whether the admission of evidence based on the testimony of Messrs. Bennett and Cunningham ethically bars them from participating as counsel for Movants at the lift stay hearing. *See Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 97 (1st Cir. 1988) (finding that Model Rule of Professional Conduct, Rule 3.7, which has been adopted in the U.S. District Court for the District of Puerto Rico, "prohibits an attorney-witness from acting as advocate at a trial"). All these issues would threaten to turn the narrow lift-stay hearing into a mini-trial on collateral issues that are not necessary for resolving the Stay Relief Motion. Such a mini-trial constitutes "wast[ed] time" and unfair prejudice warranting exclusion of the evidence. Fed. R. Evid. 403; *see also Eghnayem v. Boston Scientific Corporation*, 873 F.3d 1304, 1318 (11th Cir. 2017) (affirming district court's exclusion of evidence under Rule 403 because the evidence "might have provoked the parties to engage in a time-consuming mini-trial"). This entire unnecessary megillah can be avoided now by granting this motion in limine.

## CONCLUSION

The lift-stay proceedings in which the parties are engaged involve narrow, limited questions concerning the value of Movants' alleged collateral and whether that value has been diminished by virtue of PROMESA's automatic stay. Evidence concerning stray remarks by a party powerless to affect Movants' alleged collateral made at a meeting more than a year before

14

the material events at issue on this motion is entirely irrelevant to these questions and should be excluded. And even if there were somehow any probative value to this evidence, the complication and delay it would introduce into these narrow, expedited lift-stay proceedings would cause "unfair prejudice . . . [and] wast[e] time." Fed. R. Evid. 403. This Court should therefore grant this motion in limine and exclude evidence concerning the April 2016 meeting at the lift-stay hearing.

Dated: May 17, 2019
      San Juan, Puerto Rico

| */s/ William J. Sushon* | */s/ Luis C. Marini-Biaggi* |
|---|---|
| John J. Rapisardi | Luis C. Marini-Biaggi |
| Suzzanne Uhland | USDC No. 222301 |
| Peter Friedman | lmarini@mpmlawpr.com |
| William J. Sushon | |
| (Admitted *Pro Hac Vice*) | Carolina Velaz-Rivero |
| **O'MELVENY & MYERS LLP** | USDC No. 300913 |
| Seven Times Square | cvelaz@mpmlawpr.com |
| New York, New York 10036 | |
| (212) 326-2000 | **MARINI PIETRANTONI MUÑIZ LLC** |
| jrapisardi@omm.com | 250 Ponce de León Ave., Suite 900 |
| suhland@omm.com | San Juan, Puerto Rico 00918 |
| pfriedman@omm.com | Tel: (787) 705-2171 |
| wsushon@omm.com | Fax: (787) 936-7494 |
| | |
| Elizabeth L. McKeen | *Co-Attorneys for the Puerto Rico Fiscal Agency* |
| (Admitted *Pro Hac Vice*) | *and Financial Advisory Authority* |
| **O'MELVENY & MYERS LLP** | |
| 610 Newport Center Drive, 17th Floor | |
| Newport Beach, CA 92660 | |
| Tel: (787) 294-9508 | |
| Fax: (787) 294-9519 | |
| emckeen@omm.com | |
| | |
| *Co-Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority* | |

15