# EXHIBIT A

*Bhatia Gautier v. Gobernador*,
199 D.P.R. 59 (P.R. 2017)

**Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)**
**2017 TSPR 173**

199 D.P.R. 59, 2017 WL

4975587 (P.R.), 2017 TSPR 173

HON. EDUARDO BHATIA GAUTIER, as spokesperson of the POPULAR DEMOCRATIC PARTY in the SENATE OF PUERTO RICO, appellee,

vs.

HON. RICARDO A. ROSSELLÓ NEVARES, as GOVERNOR OF THE COMMONWEALTH OF PUERTO RICO, and COMMONWEALTH OF PUERTO RICO, petitioners.

In the Puerto Rico Supreme Court.
Number: CC-2017-668
Decided: September 15, 2017
Sept. 15, 2017

*59 1. COURTS-NATURE, EXTENSION AND EXERCISE OF JURISDICTION-IN GENERAL-JUSTICIABLE CONTROVERSY.

The courts may only evaluate those cases that are justiciable. A controversy is not justiciable when: (1) it seeks to decide a political question; (2) one of the parties does not have standing; (3) facts subsequent to the beginning of the case have made the controversy moot; (4) the parties are trying to obtain a consulting opinion, or (5) the case is not ripe.

2. PARTIES- PLAINTIFFS-PERSONS THAT CAN OR SHOULD FILE SUIT-LEGAL CAPACITY OR PERSONALITY TO FILE SUIT.

"Standing" is defined as the capacity required of a movant of an action to appear as a litigant before the court, to efficiently carry out procedural actions and this way obtain a binding judgment.

3. ID.-ID.-ID.-ID

To show a movant has standing the following must be established: (1) that a movant has suffered a clear and palpable damage; (2) that the referenced damage is real, immediate and precise, not abstract or hypothetical; (3) that there is a connection between the damage suffered and the cause of action in question, and (4) that the cause of action arises from the Constitution or a law.

4. ID.-ID.-ID.-ID. LEGISLATORS' STANDING.

The legislators have standing, among others, to vindicate a personal interest in the full exercise of their legislative duties affected by actions or omissions of the Executive Power. In those scenarios the legislator must show that his/her constitutional or statutory rights have been violated.

5. ID.-ID.-ID.-ID.

For a legislator to show that he/she has standing, the legislator must comply with the requirements mandatory for individual citizens. For this the legislator will have to establish to have suffered a clear and immediate damage to his/her legislative prerogatives, ensuring not to invoke an abstract prerogative unrelated to the exercise of the legislator's legislative duties. Also, the legislator must prove that *60 there is a connection between the damage allegedly suffered and the action exercised.

6. CONSTITUTIONAL LAW-DISTRIBUTION OF GOVERNMENTAL POWERS AND DUTIES-INTERFERENCE IN THE JUDICIAL POWER-LIMITATION TO THE COURTS' JURISDICTION-MOOTNESS

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
Case:17-03283-LTS Doc#:7035-1 Filed:05/20/19 Entered:05/20/19 22:11:39 Desc:
Exhibit A   Page 4 of 98

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

The mootness doctrine requires that there is a real controversy between the parties in every case filed with a court. A case becomes moot when the matter in controversy succumbs to the passing of time because changes in facts or law occurred. This has the consequence that the decision that the court issues will not have a practical effect between the parties.

7. ID.-ID.-ID.-ID.-ID.-ID.-EXCEPTION

There may be cases in which the courts address the case even if it is clearly moot. In accordance with the foregoing, the exceptions to mootness operate when: (1) a recurrent matter or a matter that is susceptible to reoccurring is brought to a court; (2) when the factual situation has been modified by defendant but the change does not appear to be permanent, and (3) when aspects of the controversy become moot but there are still collateral consequences in effect.

8. MANDAMUS-NATURE AND FOUNDATIONS IN GENERA-REMEDY IN GENERAL

The mandamus is a highly privileged, extraordinary writ directed towards an individual person or entity to judicially demand compliance with a governmental duty based on the position occupied. As a general rule, prior to going to court, the interested party must have asked the responsible official to comply with the governmental duty requested. A party is exempt from the requirement to ask the official in cases that doing so would have been useless or when the duty claimed is public. Due to its privileged nature, the mandamus is not appropriate when there are adequate and efficient remedies available for the movant.

9. ID-MATTERS AND PURPOSES OF THE REMEDY-ACTS AND PROCEDURES OF PUBLIC OFFICERS, BOARDS AND MUNICIPALITIES-PUBLIC OR OFFICIAL DOCUMENTS.

Ordinarily, the mandamus is the appropriate mechanism to achieve the inspection and obtain copy of public documents. When addressing a mandamus petition, the courts evaluate the possible impact of their decision in the public interests in question and seek to avoid an undue intromission in the matters of the executive power.

10. CONSTITUTIONAL LAW-PERSONAL, CIVIL AND POLITICAL RIGHTS-RIGHT TO THE INFORMATION ABOUT PUBLIC DUTIES.

In Soto v. Srio de Justicia, 112:477, the Supreme Court acknowledged the right of the press and of the citizens in general to have access to public information as a fundamental right of constitutional rank. This right is firmly connected to the exercise of the rights of freedom of speech, press and association, formally *61 in Art. II, Sec. 4 of the Constitution of the Commonwealth of Puerto Rico, LPRA, Tome 1.

11. ID.-ID.-ID.

The access to public information constitutes a fundamental pillar in every democratic society. This knowledge allows the citizens to evaluate and supervise the public duty adequately, while it contributes an effective citizen participation in the governmental proceedings that impact its social environment.

12. ID.-ID.-ID.-PUBLIC DOCUMENTS.

Art. 409 of the Code of Civil Procedure, 32 LPRA sec. 1781, acknowledges the right of


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

every citizen to inspect and copy any public document of Puerto Rico. Now, the right to information does not operate without restriction. It is necessary that the document that wants to be disclosed is in fact public.

13. ID.-ID.-ID.-ID.

Our system defines "public document" as every document originated, kept or received in any department of the Commonwealth of Puerto Rico in accordance with the law or regarding the management of public matters and that is permanently or temporarily kept as proof of the transactions or for its legal value. Includes the documents electronically produced that meet the requirements established by the laws and regulations.

14. ID.-ID.-ID

The right to information is not absolute and shall be subject to those limitations that the State imposes per urgent need. However, these restrictions must be duly justified because the access to public information cannot be denied capriciously and arbitrarily. And given its fundamental right condition, to prevail, the restrictions imposed by the governmental apparatus must respond to an urgent interest of the State.

15. ID.-ID.-ID.-PUBLIC DOCUMENTS-VALID CLAIMS OF SECRECY ON THE PART OF THE STATE.

The State is allowed to validly claim the confidentiality of the information in its power when: (1) a law so declares it; (2) the communication is protected by some of the evidentiary privileges that the citizens may invoke; (3) revealing the information may affect the fundamental rights of third parties; (4) it is about the identify of a confidante, and

(5) it is "official information" pursuant to Rule 514 of Evidence, 32 LPRA Ap. VI.

16. RULES OF EVIDENCE-PRIVILEGES-OFFICIAL INFORMATION-IN GENERAL.

Rule 514 of Evidence, 32 LPRA Ap. VI, establishes in our system the so called "privilege of official information". Such provision defines "official information: as that acquired in confidence by a person that is a public official or employee in their duty that has not been officially released nor is accessible to the public even when the privilege is invoked. This privilege is activated if the court concludes that the matter is official information and that its disclosure is prohibited by law or that disclosing the information in the action would be prejudicial to the interests of government.

17. ID.-ID.-ID.-ID.

The courts must be careful in lightly granting any request of confidentiality of the State. When evaluating whether to acknowledge the privilege, the alternatives of in camera inspection or providing limited access to the confidential file are always available. However, the option of the in camera examination may be limited in consideration of the circumstances present in each case.

18. ID.-ID.-ID.-ID.

To benefit from the privilege of deliberative procedures, the government must comply with the following process: (1) the chief of the agency that controls the information must formally claim it after considering it; (2) an officer from the agency must provide the precise reasons for which the confidentiality of the information or of the documents is

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION
Case 17-03283 NST Doc#:7035-1 Filed:05/20/19 Entered:05/20/19 22:11:39 Desc:
Exhibit A Page 6 of 98

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

claimed and (3) the government must identify and describe the information or documents it seeks to protect.

19. ID.-ID.-ID.-ID.

To activate the privilege of deliberative procedures, the government must show that the document in question is "deliberative" (that it relates to a procedure in which public policy is developed or formulated) and "pre-decisional" (that it is prepared to assist in the making of decisions of the government.) Therefore the information or documents after the governmental decision, are also not protected. Pursuant to the foregoing, this privilege does not cover what is related to the facts; also it does not protect objective material or documents in which the agency adopts its position regarding a matter or controversy.

20. ID.-ID.-ID.-ID.

To determine if the privilege regarding deliberative procedures prevails, like the official information privilege, the court must perform an analysis of balance of interests. Also, the impact that the disclosure would cause in the process of frankly discussing the policies and decisions in question must be evaluated. In short, this privilege can yield when it its fully demonstrated that there is a particularized need to obtain the information that is of greater importance that the reasons for its confidentiality.

21. CONSTITUTIONAL LAW-DISTRIBUTION OF GOVERNMENTAL EXECUTIVE POWERS AND DUTIES-EXECUTIVE PRIVILEGE.

The executive privilege seeks to protect the communications between the First Executive and its respective subordinates, advisers or *63 assistants. In comparison with the privilege of state secrets, the executive privilege is of lesser hierarchy. The latter is qualified, therefore does not grant the Executive Branch an absolute faculty of retaining information based on its alleged confidentiality.

22. ID. PERSONAL, CIVIL AND POLITICAL RIGHTS-RIGHT TO THE INFORMATION ABOUT PUBLIC DUTY-PUBLIC DOCUMENTS-VALID CLAIMS OF SECRECY ON THE PART OF THE STATE.

Despite that the Freedom of Information Act allows the examination of documents in camera, the federal courts have stated that this alternative is not favorable in cases where certain governmental privileges are claimed. It must not even be the first alternative, as initially the State must be given the opportunity to justify and show its claim of confidentiality. This can be accomplished allowing the State to present a detailed explanation of the privilege claimed, which could substitute the in camera inspection of the document in question. If it is determined in this stage, that the privilege is appropriate, the in camera inspection will not be required.

**Synopsis**

*CERTIORARI PETITION of a DECISION of Erik J. Ramirez-Nazario, Luisa M. Colom-Garcia and Giselle Romero-Garcia, Judges of the Court of Appeals that denied the issuance of the writ of certiorari requested by the Government of Puerto Rico. Without further procedures and pursuant to Rule 50 of the Regulation of the Supreme Court 50 Regulation of the Supreme Court, 4 LPRA Ap. XXI-B the writ of certiorari requested is*

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

*issued and the Decision and Order of July 26, 2017 issued by the Court of First Instance regarding the production of the document in controversy for in camera inspection is reversed, in part. Aside from this, such Decision and Order is confirmed in the other matters compatible to what is provided in the Opinion. The stay ordered is cancelled and the case is returned to the lower court to continue with the proceedings in accordance to what is stated in the Opinion.*

Luis R. Roman-Negron, attorney general and Amir Cristina Nieves-Villegas, assistant attorney general, attorneys for petitioner; Margarita Mercado-Echegaray, attorney for appellee.

ASSOCIATE JUDGE MR. FELIBERTI-CINTRON issued the Opinion of the Court.

**(Rule 50)**

Due to the great public interest that the matters before us have we will proceed to decide if the dismissal of the case *64 as requested by the Government of Puerto Rico, and its Governor, the Hon. Ricardo A. Rossello-Nevares (Government or petitioners)[1] was appropriate. If the answer is no, we must determine if it was appropriate for the lower court to order submitting for an in camera inspection the proposal of the budget given by the Government to the Financial Oversight and Management Board for Puerto Rico (Board) on April 30, 2017. Let us see.

**I**

On May 4, 2017, the Hon. Eduardo Bhatia Gautier (Senator or appellee) as Spokesperson of the Popular Democratic Party in the Senate of Puerto Rico filed a mandamus petition with the Court of First Instance in which he requested to order the Government of Puerto Rico to publish a copy of the Proposed Budget submitted on April 30, 2017 with the Board[2] and to give a copy to him. *65

After various procedural incidents, on June 26, 2017, the Government requested the dismissal [3] of the mandamus petition based on the following reasons: (1) that the Senator lacks standing; (2) that the cause of action became moot, because the final proposed budget was given to the legislative bodies for their consideration and approval; (3) that the Senator did not comply with the statutory requirements for the filing of a *mandamus* petition, particularly with the requirement of exhausting the parliamentary procedures available prior to going to court, and (4) that granting the request would imply intervening with the duties of the First Executive and of the Legislative Assembly, which would violate the separation of powers. It also stated, that the document requested is confidential, as it is a working document prepared during the deliberation stage prior to making the final decisions and is therefore, protected by the executive privilege.

On June 29, 2017, the Senator filed an Opposition to the Motion to Dismiss. He alleged that he has standing as he has been exposed to a clear and palpable violation to his prerogatives as a legislator. He equally invoked his constitutional right to access public information and documents. Also, he stated that his petition is not moot, as the Government did not certify that the document that it submitted to the Board is the same that was submitted to the Legislative Assembly. In the alternative, he stated that it is a claim that can be repeated and thus escape judicial revision. On the other hand, he stated that he satisfied all the requirements for the issuance of his *mandamus* petition. Lastly, he stated that the document requested is not a draft or

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

a pre-decisional document that contains the substance of the deliberative procedures prior to adopting *66 the budget, therefore it is not covered by the executive privilege. Therefore, he concluded that it had to be disclosed pursuant to the constitutional right to access public information.

On July 17, 2017, the Court of First Instance issued an order wherein it scheduled an argumentative hearing for July 26, 2017, and asked the Senator to: (1) place the court in a position to determine if its *mandamus* petition became moot after the approval of the 2017-2018 Budget; (2) convince the lower court that the case was not a "transfer of a legislative debate to the judicial forum but a real injury to his legislative prerogatives" (emphasis omitted) Appendix page 136-and (3) to show that he "exhausted all remedies available to him so that his right to supervise the process of the approval of the 2017-2018 Budget be allowed and acknowledged" (emphasis omitted) i. pages 136-137-. As to the Government, it asked for it to clarify if the information requested by the Senator was made public at any time.[4] Lastly, it required the parties to appear in court prepared to argue their respective positions regarding the nature of the documents requested, that is, if they were public or had any information protected by the executive privilege.

Upon being in possession of the briefs of both parties and the joint motion, in which certain facts and documents were stipulated and the controversies in law were outlined, on July 26, 2017, the argumentative hearing was held. That same afternoon, the lower court entered and notified an Order denying the Government's Motion to dismiss. It concluded that the controversy was justiciable, as the Senator had standing and the cause had not turned moot. Consequently, it gave *67 the Government a term of ten (10)

days to submit the Proposed Budget in controversy in a sealed envelope for an in camera examination to examine if pursuant to the executive privilege, it is not appropriate to disclose it. Also, the petitioners had to file a motion in which they would detail the reasons why they claimed that the information requested was privileged. See Decision and Order of July 26, 2017 issued by the Court of First Instance, page 3.

In disagreement with the decision of the lower court, on August 4, 2017, the Government of Puerto Rico filed a *certiorari* and motion in aid of jurisdiction with the Court of Appeals. That same day, such forum notified an order by which it denied the issuance of the writ of *certiorari* requested.[5] In disagreement with such decision, on August 7, 2017, the Government appeared before us alleging the following errors:

### First Error

The Court of Appeals erred by not issuing the writ of *certiorari* requested and not reversing the decision of the Court of First Instance that denied the *dispositive* motion to dismiss filed, allowing the case to be adjudicate in the merits, despite it being a matter that is not justiciable as the plaintiff Senator lacks standing and his claim turned moot.

### Second Error

The Court of Appeals erred by not issuing the writ of *certiorari* requested and not reversing the decision of the Court of First Instance that denied the *dispositive* motion to dismiss filed, allowing the case to be adjudicated in the merits, despite that the plaintiff Senator did not exhaust the remedies available in the legal system before channeling his claim through the judicial forum.

### Third Error

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

The Court of Appeals erred by not reversing the Order of the Court of First Instance that denied dismissing *68 the captioned complaint of *mandamus*, despite that in this case it is not appropriate to issue such extraordinary and privileged writ. (Emphasis in original) Certiorari petition, page 5.

The petitioners also alleged and discussed in the *Urgent Motion Reiterating Dismissal* filed in the lower court, and in the *Certiorari* Petition filed with the Court of Appeals and in the *Certiorari* Petition filed with us, that the document requested by the Senator is protected by the executive privilege, therefore it is not appropriate to produce it.[6] On August 7, 2017, the Senator also appeared before us through an Urgent Opposition to the Motion in Aid of Jurisdiction and to Issuance of Writ of *Certiorari*.

With the benefit of the appearance of the parties, we issue the writ of certiorari requested and decide the captioned petition without anything further, pursuant to Rule 50 of the Regulation of this Court, 4 LPRA Ap. XXI-B.

II.

A. *Standing*

[1] The courts can only evaluate those cases that are justiciable. Asoc. Fotoperiodistas v. Rivera Schatz, 180 DPR 920 (2011). A controversy is not justiciable when: (1) it seeks to solve a political question; (2) one of the parties lacks standing; (3) facts subsequent to the beginning of the case turned the controversy moot; (4) the parties are trying to obtain a consulting opinion or (5) a case that is not ripe. Id.

[2] Particularly, we have defined standing as the capacity that is required of the movant of

an action to appear as a litigator before the court, efficiently take procedural actions, and this way obtain a binding judgment. R. Hernandez Colon, Practica Juridica de Puerto Rico, Derecho procesal civil, 6th ed. San Juan, LexisNexis de Puerto Rico, Inc., 2017, page 121; J.A. Echevarria Vargas, Procedimiento Civil Puertorriqueño, 1st ed., rev., Colombia, [s. Ed.] 2010-2012, page 132. The standing doctrine has the purpose to show the adjudicating forum that the plaintiff's interest in the case is such that, with all likelihood, they will vigorously prosecute their cause of action. Sánchez et al v. Srio. De Justicia et al, 157 DPR 360 (2002); Hernandez Agosto v. Romero Barceló, 112 DPR 407 (1982).

[3] To demonstrate having standing, the movant has to establish that: "(1) he has suffered a clear and palpable damage; (2) that such damage is real, immediate and precise, not abstract or hypothetical; (3) there is a connection between the damages suffered and the cause of action exercised, and (4) that the cause of action arises from the Constitution or a law". Sánchez et al v. Srio. De Justicia et al., supra, page 371. Also, see, Torres Montalvo v. Gobernador ELA, 194 DPR 760 (2016); Hernandez Torres v. Hernandez Colon et al, 131 DPR 593 (1992). We have stated before that these criteria must be interpreted flexibly and liberally when it is an action against agencies and government officials. Asoc. De Maestros v. Srio. de Educacion, 156 DPR 754 (2002)[7]. Also, an analysis *70 of the allegations must be made in the most favorable and liberal way for the movant of the case. García Oyola v. JCA, 142 DPR 532 (1997); Col. Ópticos de P.R. v. Vani Visual Center, 124 DPR 559 (1989); Salas Soler v. Srio. De Agricultura, 102 DPR 716 (1974). [8]

[4]As to the standing of legislators, we have acknowledged, in various instances, that they

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

have standing to "vindicate a personal interest in the full exercise of their legislative duties affected by actions or omissions of the executive power"[9] Noriega v. Hernandez Colon, 135 DPR 406, 428 (1994). Also, see, Hernandez Torres v. Gobernador, 129 DPR 824 (1992). In those scenarios, he must show that his constitutional or statutory rights have been lacerated. Hernandez v. Gobernador, supra.

[5]Also, for a legislator to show that he has standing he must comply with the requirements demanded to lay persons. Hernandez Torres v. Hernandez Colon et al, supra. For that he will have to establish he has suffered a clear and immediate damage to his legislative prerogatives. Id. When complying with such demand he must ensure that he is not invoking an abstract prerogative unrelated to the exercise of his legislative duties. Id. In particular, when a member of the Legislature alleges that he has been affected because he has not been able to carry out his supervision duty adequately, he must have in mind that this only implies counting with the reasonable and necessary mechanisms that allow full participation in all stages of the legislative *71 process. Id. As to the claim of the right to supervise, the legislator must exhaust all the remedies he has available so that right is allowed and acknowledged. Id. Also, the legislator must prove there is a connection between the damage allegedly suffered and the action exercised. Id.

The Government alleged, among other things, that the appellee lacked standing based on the following premises: (1) that the allegations of the Senator were generic; (2) that the Senator did not show how his legislative prerogatives were affected upon not obtaining the proposed budget requested; (3) that the legislative prerogatives, as to the approval of the budget, are activated when

the Governor submits it to the Legislature; (4) that there is not a governmental duty to divulge the "first draft" of the proposed budget, therefore there was no clear and palpable damage suffered that justified the Senator's claim, and (5) that the appellee did not exhaust the Senate's procedures specifically designed to channel the requests for information of its members.

After an analysis of the applicable law and of the information on the file, we believe that the appellee has standing to make his claim in his capacity as Senator. Let's see.

The appellee stated, among other things, that "[t]he lack of access to the budget document adopted by the Governor and sent to the Board, has limited and injured the faculty of Senator Bhatia to exercise his prerogative and role as legislator and to evaluate and approve the budget *counting with the benefit of a public document that influences the decision regarding the suitability of the budget submitted for the Senate's consideration.* (Emphasis provided). Opposition to Motion to Dismiss, Appendix page 98. Afterwards, he added that "[t]he refusal of the Governor to disclose and provide Senator Bhatia *72 the budget adopted by the Governor and sent to the Board has interfered and keeps interfering with Senator Bhatia's prerogatives to *evaluate the budget with the benefit of scrutinizing all the documents that have served as a base for the presentation of the proposed budget approved by the Board to the Legislature."* (Emphasis provided) Id, page 99. He also stated that his prerogative to ensure the adequacy of the procedures of budget approval and to supervise the transparency between the First Executive and the Board was limited.

To that effect, we believe that the appellee specified his claim regarding how the

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

absence of the document in question affected his analytical procedure, prior to the approval of the budget submitted to the legislative bodies. Also, it should be noted that the claim of the Senator, in his official capacity, was based in the constitutional right to access the public information. [10] We then believe that the appellee, in his role as legislator, validly claimed that he suffered a clear and palpable damage that impacted his legislative prerogatives, which was produced by limiting the access to what he alleges is public information, infringing the aforementioned constitutional right. Also, there is a connection between the damage claimed and the cause of action exercised.

Lastly, and as we will see below, inasmuch as appellee appeared in his capacity as Senator, on the grounds of his constitutional right to access public information and specified how the transgression to that right affected his legislative prerogatives, we understand that it was not necessary for him to exhaust no parliamentary procedure before going to the judicial forum.

### B. Mootness

As mentioned before, mootness is one of the doctrines that narrows the limits of the judicial function. C.E.E. v., Depto. de Estado, 134 DPR 927 (1993). It requires that, in every case filed with a court, there is a real controversy between the parties. Amador Roberts et als v. ELA, 191 DPR 268 (2014). A case becomes moot when the controversy in question succumbs to the passing of time, because changes occurred in the facts or the law. IG Builders et al v. BBVAPR, 185 DPR 307 (2012); UPR v. Laborde Torres y otros, 180 DPR 253 (2010); Emp. Pur. Des., Inc. v. H.I.E.Tel., 150 DPR 924 (2000). That will have as a consequence that the decision that the court makes one day will have no practical effect between the parties. IG Builders et al. v. BBVAPR, supra. That is,

> [t]he courts lose their jurisdiction on a case for mootness when there are changes during the judicial process of a particular controversy that make it not current, so that the remedy that the court may enter may not have any real effect as to that controversy. C.E.E. v. Depto. De Estado, supra, page 935.

[7] Due to constitutional obligation (lack of case or controversy) or for reason of judicial auto limitation, the courts must abstain from considering the merits of a case when we determine that the case has become moot. Presidente de la Cámara v. Gobernador, 167 DPR 149 (2006); Asoc. De Periodistas v. Gonzalez, 127 DPR 704 (1991). However, there can be scenarios in which the courts will see a case, even it is clearly moot. Emp. Pur. Des., Inc. v. H.I.E. Tel., supra; C.E.E. v. Depto de Estado, supra. Pursuant to the foregoing, the exceptions to mootness will operate when: (1) a matter is brought to the judicial forum that is recurrent or susceptible of occurring again and that it tends to avoid judicial review; (2) when the facts have been modified by defendant but the change appears to not be permanent, and (3) when aspects of the controversy become moot, but collateral consequences subsist. Asoc. Fotoperiodistas v. Rivera Schatz, supra; Rullan v. Faz Alzamora, 166 DPR 742 (2006).

In this case, the Government alleged that the controversy turned moot upon concluding the approval process of the Budget for the fiscal year 2017-2018 and in consideration that the Senator had the opportunity to evaluate it when it was submitted to the legislative bodies. However, we coincide with the primary forum that the petitioners never


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

showed that, in effect, the document that was submitted for the consideration and evaluation of the legislative bodies was the same that was submitted to the Board on April 30, 2017. In view of the foregoing, we believe that this litigation could have become moot *if the same document that was requested had been disclosed* but that was not the case.[11]

On the other hand, regardless that the budget was approved, as it regards *another* document that has not been produced, *if it is public,* the Government would have to produce it, *unless some privilege applies which prevents it.*

As a result of the foregoing, we conclude that the matter object of this writ has not turned moot.

### C. Mandamus

[8] The Code of Civil Procedure establishes the mandamus as a "highly privileged" extraordinary writ addressed to a person or entity with the purpose of judicially demanding the compliance of a ministerial duty of the position they occupies. Art. 650 of the Code of Civil Procedure, 32 LPRA sec. 3422 (2004). In other words, there is a certain obligation that does not admit the exercise of discretion in its compliance. AMPR v. Srio. Educacion, E.L.A., 178 DPR 253 (2010); Baez Galib y otros v. C.E.E. II, 152 DPR 382 (2000). Due to its privileged nature, the law itself provides that the *mandamus* is not appropriate when there are adequate and efficient remedies available to the movant. Art. 651 of the Code of Civil Procedure, 32 LPRA sec. 3423. Also, as a general rule, prior to going to court, the interested party must have appealed to the official responsible of complying with the ministerial obligation demanded. AMPR v. Srio. Educacion, ELA, supra. The requirement to appeal is excused

when doing so would have been useless or the duty that is claimed is public. That is, that it affects the general public and not just the movant of the action filed. Id.

[9] On the other hand, we have acknowledged that, ordinarily, the *mandamus* is the right mechanism to accomplish the examination and to obtain copy of public documents. Ortiz v. Panel F.E.I, 155 DPR 219 (2001).

When addressing a *mandamus* petition, the courts evaluate the possible impact of their decision in the implied public interests and try to avoid an inappropriate interference with the *76 matters of the executive power. AMPR v. Srio. Educación, E.L.A., supra; Báez Galib y otros v. C.E.E. II, supra; Noriega v. Hernandez Colon, supra.

The petitioners argue that the *mandamus* petition submitted in this case is defective for two (2) reasons. First, they argue that the Senator, on a personal level, did not send a previous request to the Governor. To that effect, they argue that the letter sent by the appellee requesting copy of the document in question was sent only in his capacity as Senator. Also, they support the dismissal of the *mandamus* petition arguing that the appellee did not exhaust the remedies provided in the Regulation of the Senate of Puerto Rico, adopted through R. of S. 13 of January 9, 2017 18th Legislative Assembly, 1st Ordinary Session (Regulation of the Senate) that establishes a procedure to request documents in the official capacity as Senator through the Senate.

### i. Request

The petitioners argue that the Senator did not send a request for production of the document in his personal capacity. They hold that in the letter[12] sent to the Governor for that purpose, dated May 2, 2017, the appellee appeared


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

exclusively in his capacity as legislator. We coincide with this opinion.

To begin, the document was drafted in official paper of the Senate of Puerto Rico, in which the name of appellee appeared as Spokesperson of the Popular Democratic Party. At no time in the letter did he suggest that his claim to the constitutional right to the access of the information was in another role that was not that of a public official. Also, when examining the *mandamus* petition filed barely two (2) days after having sent that letter, we can corroborate that the arguments of the Senator as stated therein, were strictly geared in his official capacity. It is not until after that the motion to dismiss the case was filed, that the appellee amended its certiorari petition to insert references to his personal character for the first time.

On the other hand, it is not in controversy that the Senator, in his official capacity, sent a previous request to the Governor for the production of the document in question. Now, it is necessary to examine if in that capacity he was also obligated to comply with any further regulatory procedure.

## ii. *Regulation of the Senate*

The petitioners center their argument against the viability of the writ of mandamus filed by the Senator in his capacity as legislator, for allegedly not using the remedies available in law to channel the claim through the Regulation of the Senate.

The investigative power of the Legislative Assembly is an integral component of its legislative duty. On the one part, this power serves as a valuable mechanism to carry out those necessary investigations for future legislation. Pueblo v. Perez Casillas, 117 DPR 380 (1986). Also, aside from promulgating laws, this Body has other duties

that are vital and strengthen our democratic system of government. Among those, the supervision of the government, promoting the debate of matters of general interest and keeping the country informed of the public events, are emphasized. Rullan v. Fas Alzamora, *supra*; Silva v. Hernandez Agosto, 118 DPR 45 (1986); Pueblo v. Perez Casillas, *supra*; statement of motives of the Law No. 100 of June 23, 1955, as amended, 2 LPRA 151 (Law No. 100). This investigative process is commonly made through different commissions or sub commissions of both bodies. Pueblo v. Perez Casillas, *supra*; Silva v. Hernandez Agosto, *supra*.

The faculty of the Legislative Assembly to compel the appearance of witnesses and the production of documents appears in the Political Code. As part of the statutory process, it is required that any summons to that effect be signed, be it by the President of the Senate, of the House of Representatives or of the Commission before which the witness must appear. 32 LPRA sec. 151(a).

In case of breach, the Legislative Assembly has the discretion to use, either the penal way or the civil judicial process to demand compliance with what is provided in the subpoena. Therefore, it is authorized to present the matter to the Secretary of Justice who will "have the duty to form the corresponding accusations before the Court of First Instance". Art. 34 of the Political Code, 2 LPRA sec. 154(l). The filing of charges is not discretional. That is, if the statutory requirements are met, the district attorney has the duty to begin a criminal procedure. Pueblo v. Perez Casillas, supra. Also, it can go to court to demand compliance through a civil contempt procedure. Art. 34-A of the Political Code, 2 LPRA sec. 154a.

In accordance with the foregoing, and with the purpose of making viable these extensive

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

investigative faculties, the Regulation of the Senate was promoted whereby the mechanism applicable for the formal issuance of subpoenas is implanted. Therefore, Rule 13 of the Regulation of the Senate governs what is related to subpoenas that form part of procedures *before legislative commissions*. In these cases, it is required that the subpoena has the signature of the President of the Senate\*79 or the President of the corresponding commission. Rule 13, sec. 13.14 of the Regulation of the Senate, page 42.

On the other hand, Rule 18 of the Regulation of the Senate regulates the procedure regarding the Orders of the Senate. Among others, it defines the term "Order" as that measure used by the Body to form petitions of the Senate, and order studies or investigations. Rule 18, sec. 18.1(a) and sec. 18.1(d) of the Regulation of the Senate. In the event that a senator is interested in requesting information to any of the other Branches of the Government, its officials or employees, "*in the name of the Senate*", must submit a verbal or written petition before the Body to that effect, and if there is an objection, the petition will be taken to a vote. (Emphasis provided). I. Sec. 18.2 page 59. If, after complying with the corresponding procedures, the official or employee concerned does not comply with the aforementioned requirement, the Senate can go to court to demand its compliance. Id., page 60.

As we can tell, the Regulation of the Senate has two alternate methods for the senators to obtain documents through the regulation process. First, pursuant to Rule 13, Sec. 13.1(b) of the Regulation of the Senate, the subpoena is authorized to produce documents as part of the duties to investigate, study or evaluate some legislative measure or matter under the consideration of a Commission of

the Legislative Body, with prior authorization of the President of the Senate or of the senator presiding it. As the request in controversy in this case is not associated to any commission, this provision is not applicable.

Rule 18, sec. 18.2 of the Regulation of the Senate is also not applicable to the controversy before us. This provision provides the process to follow when some legislator wants to obtain information from officials of any of the Branches of Government through an Order \*80 in the name of the Senate. This method is highly effective inasmuch as it establishes a mechanism to compel the disclosure of the information required through the process of judicial contempt.

However, nothing prevents a senator, pursuant to his constitutional right to access to the information, to request public information directly from some official or government entity. However, upon doing so, he cannot count with the benefit of the procedure to compel production of the information requested, as provided in the Regulation of the Senate. The party that wants to enforce its request, must process the corresponding judicial mandate on its own. Therefore, we reject the argument based in the alleged breach of the Senator with the provisions of the Regulation of the Senate.

In conclusion, the Senator could use the writ of mandamus to make his claim.

### D. Constitutional Right to Access Public Information

[10] More than three decades ago already, in <u>Soto v. Srio. De Justicia</u>, 112 DPR 477 (1982) we acknowledged the right to press and of the citizens in general to have access to public information as a fundamental right

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

of constitutional rank. This right is firmly connected to the exercise of the rights of liberty of speech, press, association formally stated in Art. II, sec. 4 of the Constitution of Puerto Rico, LPRA, Tome I. Trans Ad. De P.R. v. Junta de Subastas, 174 DPR 56 (2008); Ortiz v. Dir. Adm. De los Tribunales, 152 DPR 161 (2000).

[11] The access to public information is a fundamental pillar in every democratic society. This knowledge allows the citizens to evaluate and supervise the public duty adequately and contribute to an effective participation of citizens in the governmental procedures *81 that impact its social environment. Trans Ad de P.R. v. Junta de Subastas, supra; Colon Cabrera v. Caribbean Petroleum, 170 DPR 582 (2007). This adds to the transparency in the governmental duty and promotes a healthy public administration. See, C.F. Ramos Hernandez, Acceso a la información, transparencia y participación política, 85 Rev. Jur. UPR No. 4, page 1015 (2016).

We cannot forget that, in our political reality, the government as an entity, exists because of the People it serves.

Whatever is the definition that we assign to the term "democracy" its main principle is that the political power must reside in the people and that the governors exercise their duties for the people and by their mandate. The people governing themselves would be bad if the people were not aware of what happened in the management of their matters. E. Rivera Ramos, La libertad de información: necesidad de su reglamentación en Puerto

Rico, 44 Rev. Jur. UPR, Nos. 1-2, page 69 (1975).

Also, it is not possible to effectively exercise the rights protected under Art. II, Sec. 4 of the Constitution of Puerto Rico, supra, if there is no record of the duties of those elected to govern.

The premise is simple, if the People are not duly informed of the way in which the public duty is performed, their liberty to express, through vote or otherwise their satisfaction or lack of satisfaction with the persons, rules or procedures that govern them, will be impaired. Ortiz v. Dir. Adm. De los Tribunales, supra, page 175.

[12] Art 409 of the Code of Civil Procedure acknowledges the right of every citizen to inspect and copy any public document of Puerto Rico. 32 LPRA sec. 1781. Now, the right to the information does not operate without limitation. It is necessary that the document that wants to be disclosed has in fact that public condition. Ortiz v. Dir. Adm. De los Tribunales, supra.

[13]Our system defines the term "public document" as follows:

[E]very document that is originated, conserved or received in any office of the Commonwealth of Puerto Rico pursuant to the law and related to the management of the public matters and that pursuant to what is provided in sec. 1002 of this title is kept […] permanently or temporarily as proof of the transactions or for its legal value. It includes those produced electronically that meet with the requirements

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7035-1 Filed:05/20/19 Entered:05/20/19 22:11:39 Desc:
CERTIFIED TRANSLATION Exhibit A Page 16 of 98

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

established by laws and regulations. Art. 3(b) of Law No. 5 of December 8, 1955, Law of Administration of Public Documents of Puerto Rico, as amended, 3 LPRA sec. 1001(b).

[14] Therefore, the right to information is not absolute and will be subject to those limitations that by imperious need, the State imposes. Ortiz v. Dir. Adm. De los Tribunales, supra. However, these restrictions must be duly justified because the access to the public information cannot be denied in a capricious and arbitrary way. Colon Cabrera v. Caribbean Petroleum, supra. And it is that due to its condition of fundamental right, to prevail, the restrictions imposed by the governmental apparatus must respond to an urgent interest of the State. Nieves v. Junta, 160 DPR 97 (2003); Noriega v. Gobernador, 130 DPR 919 (1992).

[15] In our jurisdiction, there is no specific legislation to delimit the access of governmental documents to the public scrutiny.[13] Colon Cabrera v. Caribbean Petroleum, supra. Now, through the controversies brought to our consideration to address this problem, we have been able to delineate the following instances in which the State is allowed to validly claim the confidentiality of information in its power. These are, when: (a) a law so declares; (2) the communication is protected by one of the evidentiary privileges that the citizens may invoke; (3) revealing the information may injure the fundamental rights of third parties; (4) it deals with the identity of a confidante and (5) it is 'official information" pursuant to Rule 514 of Evidence, 2009, 32 LPRA Ap. VI (formerly Rule 31 of Evidence 32 LPRA for. Ap. IV). Colon Cabrera v. Caribbean Petroleum, supra. It is important to have in mind that the State has the burden to prove

the application, if any, of the exceptions numbered above to validate its claim to confidentiality. Colon Cabrera v. Caribbean Petroleum, supra.

### E. Privilege of the Official Information- In General

[16] A claim of confidentiality on the part of the government can prosper when it deals with official privileged information, among others. Colon Cabrera v. Caribbean Petroleum, supra; Santiago v. Bobb y El Mundo, Inc., 117 DPR 153 (1986). Therefore, Rule 514 of Evidence, supra, establishes in our system the privilege of official information.[14] Said provision defines "official information" as that acquired in confidence by a person that is an officer or public employee in performing his duty that has not been officially revealed nor is accessible to the public until the moment the privilege is invoked." Rule 514(a) of Evidence, supra. [15]
This privilege is activated "if the court concludes that the matter is official information and disclosing it is forbidden by law, or disclosing the information in the action would be prejudicial to the interests of the government."
'Rule 514(b) of Evidence, supra.[16]

Professor Chiesa Aponte, explains that:

> The privilege is based, on one hand, on the need that the government has to maintain confidentiality of certain information for the good progress of the government, particularly regarding the frank discussion of the governmental alternatives or possible courses of action to handle the multiple social problems, economic and otherwise-of the State […]". E.L. Chiesa Aponte, Tratado de derecho


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

probatorio, Republica Dominicana, Ed. Corripio, [s. year], T.I., page 292.

*Now, this privilege is not absolute, but qualified, subject to an analysis of balance of interests.* Chiesa Aponte, Tratado de derecho probatorio, op. cit, page 292. *Therefore, upon evaluation, one has to weigh on the one hand, the need that the government keeps certain sensitive information confidential and the prejudice that can invoke the government and on the other hand, the need of the party that requests the information and their right to obtain it.* E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, San Juan, Ed. Situm, 2016, page 164. Therefore, one can only speak of the privilege when "it deals with official information" and if the balance of interests is inclined in favor of confidentiality". Chiesa Aponte, Tratado de Derecho Probatorio, op. cit. page 307. *When claiming the confidentiality of official information, it is the government that has to prove in a precise and unequivocal manner the applicability of the privilege. Santiago v. Bobb y El Mundo, Inc.*, supra.

As we previously explained, "[t]he high hierarchy of the constitutional right to access information makes difficult the governmental claim of confidentiality, particularly in the absence of a regulatory statute." Chiesa Aponte, Tratado de Derecho Probatorio, op cit. page 304. See, also, <u>Colon Cabrera v. Caribbean Petroleum</u>, supra. Along these lines, given the lack of legislation that delimits the privilege, it "must be scrutinized with particular zealousness". Chiesa Aponte, Tratado de Derecho Probatorio, op cit. page 304, quoting <u>Pena Clos v. Cartagena Ortiz</u>, 114 DPR 576, 599 (1983). [17]

Therefore, upon a balance inclined against the privilege, the government-in its time-must have the obligation to "present evidence and show the existence *of the compelling*

*interest of greater hierarchy* than the values protected by this right of freedom of information of the citizens." (emphasis in original) Chiesa Aponte, Tratado de Derecho Probatorio, op cit., page 308, quoting <u>Noriega v. Gobernador</u>, supra, page 938. In consideration of that, *the government cannot invoke the privilege generally.* <u>Santiago v. Bobb y el Mundo</u>, Inc. supra, see also, Chiesa Aponte, Tratado de Derecho probatorio, op it. Page 310.Professor Chiesa Aponte is also of the opinion that "the right of the citizen to access information of the matters of government justifies putting a serious burden of persuasion on the government when it claims the official information privilege

[17] In sum, the courts must be careful in lightly granting any request for confidentiality of the State". <u>Santiago v. Bobb y El Mundo, Inc.,</u> supra, page 159. When evaluating if the privilege should be granted, "[t]he alternatives of in camera examination or providing limited access to the confidential file are always available." Chiesa Aponte, Tratado de derecho probatorio, op. cit., page 310[18]. Now, as we will discuss later on, the option of in camera examination can be limited in consideration to the circumstances present in each case.

*F. Privilege of Official Information-The decisional information in the Deliberative Procedures of Public Policy*

Among the fundamental categories of privileged official information is the one used by public officers during the deliberative procedures related to the development of public policy. Chiesa Aponte, Tratado de derecho probatorio, op. cit., pages 292-293. [19] This category of the privilege of official information seeks to "promote the most frank communication between governmental officials in charge of deciding and enforcing

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

the public policy of the State". Id. page 293 [20]. Pursuant to the foregoing, we believe that professor Chiesa refers to the deliberative process privilege. See 6 Moore's Federal Practice Sec. 26.52[5] (3rd ed. 2016) and 26 A Wright & Graham, Federal Practice and Procedure: Evidence Sec. 5680 (1992).

This privilege prevents the quality of the governmental decisions and the consulting duties of the agencies from being affected. P.F. Rothstein and S.W. Crump, Federal Testimonial Privileges: Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases, 2nd ed., West, 2012, Sec. 5:3, pages 431-432. Along these lines, it has been acknowledged that "[…] a substantial public interest exists in maintaining and ensuring full, frank, open exchanges of ideas between members of the agency and other advisors and the decision maker". Rothstein and Crump, op. cit, page 433. Also, upon restricting the access to these types of communications protects "against *premature disclosure* of proposed policies and decisions before they have been finally formulated or adopted." (Emphasis provided). Rothstein and Crump, op. cit., page 436.

[18]To benefit from the deliberative process privilege, the government must comply with the following process: (1) the head of the agency that controls the information must claim it formally, after pondering it; (2) an officer from the agency must provide the precise reasons why the confidentiality of the documents is claimed, and (3) the government must identify and describe the information or the documents that it wants to protect. Moore's Federal Practice, supra, page 26-412.10(1). See also, United States v. Reynolds, 345 US 1 (1953).

[19]*Also, for the privilege to be activated, the government must show that the document in*

*question is "deliberative" and "pre-decisional"*. Moore's Federal Practice, supra, *88 page 26-412.8. An information is deliberative inasmuch as it relates to a process in which the public policy is developed or formulated. Moore's Federal Practice, supra, page 26-412.9. A pre-decisional document is when it is prepared to assist in the taking of decisions of the government, that is, prior to taking them. Moore's Federal Practice, supra, pages 26-412.8 and 26-412.9[21]

Pursuant to the foregoing, this privilege does not cover what is related to factual matters.[22] Chiesa Aponte, Tratado de Derecho Probatorio, op. cit., page 293. Also it does not protect objective material or documents in which the agency adopts its position on a matter or controversy. Moore's Federal Practice, supra, pages 26-412.6 and 26-412.7. For example, this privilege does not include "advisory opinions, recommendations, and communications relating to policy formulations". Moore's Federal Practice, supra, page 26-412.8.

[20] *To determine if this privilege prevails, as the privilege of official information, the court must make an analysis of balance of interests*. Chiesa Aponte, Tratado d Derecho Probatorio, op. cit., page 293. Among the factors that the court must consider when pondering the balance of interests, are: "[…] *the interests of the private litigant, the need for accurate judicial fact finding, the public's interest in learning how effectively the government is operating, the relevance of the evidence sought, the availability of other evidence, the role of the government in the litigation and issues involved, and the impact on the effectiveness *89 of government employees"*. Moore's Federal Practice, supra, 2012, page 26-412.11. Also, the impact that the divulgation in the process of frankly discussing the policies and decisions in

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

question must be evaluated. F.T.C. v. Warner Commun. Inc., 742 F. 2d 1156 (9th Cir. 1984). In sum, this privilege can budge when it is fully demonstrated that there is a particularized need to obtain the information which is of greater weight than the reasons for confidentiality. Moore's Federal Practice, supra, page 26-412.11.

The courts must be flexible at the moment of evaluating this privilege to then ensure the protection of the deliberation process. Moore's Federal Practice, supra, 2016, page 26-412.10. However, our evidentiary system demands a restrictive interpretation when determining the existence of a privilege. Rule 518 of Evidence, 32 LPRA Ap. VI (2010). [23]

### G. Executive Privilege

The executive privilege was acknowledged in our system in Pena Clos v. Cartagena Ortiz, supra, derived from the Constitution of Puerto Rico. Art. I, Sec. 2 and Art. IV, Secs. 1 and 4, Const. PR, LPRA, Tome 1 (2016). [24]

This privilege seeks to protect the communications between the First Executive and his respective subordinates, counselors or assistants. Chiesa Aponte, Reglas de Evidencia Comentadas, op. cit. page 165, J.J. Alvarez Gonzalez, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogota, Ed. Temis, 2009, page 363; Chiesa Aponte, Tratado de derecho probatorio, op. Cit. Page 311.

In comparison with the privilege of state secrets, the executive privilege is of lesser hierarchy. Chiesa Aponte, Reglas de Evidencia Comentadas, op. cit., page 165. This last one is qualified, therefore it does not give the Executive Branch an absolute faculty of "retaining information over the basis of its alleged confidentiality" Pena Clos v. Cartagena Ortiz, supra, page 598. See

Wright & Graham, supra, page 52. Therefore we must reiterate that "a naked allegation of public privilege, without support in adequate legislation must be scrutinized zealously." Pena Clos v. Cartagena Ortiz, supra, page 599.

Therefore, "at the end, the Judicial Branch also has to precise the frontiers of that [privilege]". Peña Clos v. Cartagena Ortiz, supra, page 598. Also, see, US v. Nixon, 418 US 683 (1974); Chiesa Aponte, Tratado de Derecho Probatorio, op. Cit. Page 312. For that, as we stated, the "method to weigh the conflicting interests" has generally been used. Pena Clos v. Cartagena Ortiz, supra, page 598. See, also, United States v. Nixon, supra.

### H. In Camera Examination

For its illustrative value, we must discuss the federal case law based on the Freedom of Information Act (FOIA), 5 USCA sec. 552 (2007) as to the need for an in camera examination. Let's see.

[22] Despite that the FOIA, 5 USCA 552 (a)(4)(B), allows the review of documents in camera, the federal forums have stated in reiterated occasions that this alternative is unfavorable in cases where certain governmental privileges are claimed. See, for example, Smith v. US Marshals Serv., 517 Fed. Appx. 542 (9th Cir. 2013); Lion Raisins v. US Dept. of Agriculture, 354 F. 3d 1072 (9th Cir. 2004) revoked in part in others by Animal Legal Def. Fund v. US Food & Drug Administration, 836 F. 3d 987 (9th Cir. 2016); Turner v. US Dept. of the Treasury No. 15-cv000007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); Truthout v. Dept. of Justice, 20 F. Supp 3d 760 (E.D. Cal. 2014), aff'd, 667 F Appx 637 (9th Cir. 2016).[25] Also, it should not be the first alternative, as the State, initially must be given an opportunity to

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case 17-03283-ESL Doc#:7035-1    Filed:05/20/19    Entered:05/20/19 22:11:39    Desc:
Exhibit A    Page 20 of 98

justify and demonstrate its claim of confidentiality. Lion Raisins v. U.S. Dept. of Agriculture, supra; Conservation Force v. Jewell, 66 F. Supp. 3d 46 (DDC 2014), aff'd, 2015 WL 9309920 (D.C. Cir. 2015); Truthout v. Dept. of Justice, supra. This can be accomplished allowing the State to present a detailed explanation of the privilege claimed, which may substitute the in camera inspection of the document in dispute. Solers, Inc. v. Internal Revenue Serv., 827 F. 3d 323 (4th Cir. 2016); Hamdan v. U.S. Dept. of Justice, 797 F 3d 759 (9th Cir. 2015); Ethyl Corp. v. U.S. E.P.A., 25 F 3d 1241 (4th Cir. 1994). In other words, the court may rest in the supplemental evidence to determine if the privilege claimed by the State is appropriate. Lane v. Dept. of Interior, 523 F. 3d 1128 (9th Cir. 2008); Lion Raisins v. U.S. Dept. of Agriculture, supra. If determining, in this stage, that the privilege is appropriate, the in camera examination will not be required. Lewis v. I.R.S. 823 F. 2d 375 (9th Cir. 1987).

For purposes of this case, we find it very revealing and pertinent what is stated in the legislative history of one of the amendments of the FOIA regarding the examination of documents in camera.

H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate. *Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.* The burden remains on the Government under this law. (Emphasis provided. S. Rep. No. 93-1200 3 U.S. Congressional and Administrative News 6285, 6287-6288 (1974). See also, Lewis v. I.R.S., supra, page 378 sco. 4.

In sum, in some particular cases, the in camera examination can be unnecessary. See: Hamdan v. U.S. Dept. of Justice, supra; Aids Healthcare Foundation v. Leavitt, 256 Fed. Appx. 954 (9th Cir. 2007); Lion Raisins v. U.S. Dept. of Agriculture, supra; Vaughn v. Rosen, 484 F. 2d 820 (D.C. Cir. 1973); Turner v. U.S. Dept. of the Treasury, supra. In particular in the case of Lion Raisins v. U.S. Dept. of Agriculture, supra, it was determined that as there was no controversy as to the type of information in the document in question, the in camera inspection would be a futile exercise. [26]

Now, when the file and the supplemental evidence of the State does not satisfactorily justify the governmental privilege, then the court can examine the documents in dispute in camera. Islamic Shura Council of Southern California v. F.B.I., 635 3rd 1160 (9th Cir. 2011); Lane v. Dept. of Interior, supra. See, also, 33 Wright & Koch, Federal Practice and Procedure: Judicial Review Sec. 8440, page 524 (2006). [27] *93

III.

In this case, the lower court determined that in order to evaluate if the document in dispute is of public nature and if it is protected by a privilege, it should be subjected to an in camera examination.[28] In the writ of certiorari before us, the Government alleged that the in camera examination of a work document constitutes an inappropriate interference with the procedures and duties of the Executive Branch. [29] In particular, it was argued that governmental privileges exist that protect the confidentiality of documents related to the exercise of the prerogatives and duties of the Governor, to wit: *the executive privilege and the deliberative procedures privilege.*

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

**Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)**

**2017 TSPR 173**

Along these lines, the petitioners argued that the proposed budget in dispute "constitutes an interagency communication produced during the course of a deliberative process and of budget public policy formulation of such official."(Referring to the Governor)[30] On the other hand, the Senator claimed that he has the constitutional right to access of public information.

Based on the foregoing, we conclude that, in the present case there is a genuine and justiciable controversy of law between the parties. As it is a matter of great public interest that interposes constitutional rights of members of the other two Branches of Government, it is necessary to intervene in this moment to consider the need to *94 examine the document in question *a priori* in camera, as ordered by the lower court. [31]

The in camera examination could be the vehicle to use in the adequate context. See, Santiago v. Bobb y El Mundo, Inc., supra. Now, as we are dealing with a controversy of law and due to the type of document in question, we believe that, *in the present case*, an in camera examination of it *at this time* would not assist to the analysis of the balance of interests. It is sufficient to examine *final* proposed budget to know what the document in dispute consists of.

Therefore, we ask ourselves, what exactly is it that could be found upon inspecting the document in question with the purpose of making a decision in the case? We cannot think how this can be relevant to *the real controversy in the case, to wit: if the State can*

*meet its evidentiary burden to support the privileges claimed*. Of course, prior to that it should be determined if the document in question is effectively of a public nature.

In order to make a decision, in the balance of interests, as to whether or not there is a privilege in this case, the parties must *first*, put the court in a position as to what the interests in conflict are. Afterwards, if important reasons emerge, and the court understands that the examination of the document in question is *essential* to its analysis, *then* the lower court can request the document for an in camera examination. *Not before.*

We must remember that in this case, the State claimed some governmental privileges based in the alleged confidentiality of the document in dispute. Among these, it alleged the executive privilege, which has a constitutional foundation. Upon a claim of a privilege of this nature, the courts must be very careful in the management of the information *95 in controversy. So much so, that the production of the document for in camera examination must not be ordered unless it is *strictly necessary*.

Consequently, we are of the opinion that, in this case, the lower court correctly denied the motion to dismiss filed by the Government but should have initially ordered the parties to submit their respective memorandums of law so they could put it in a position to determine if the document is of a public nature and if so, if the alleged privileges are appropriate. [32]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Only then, and in consideration of the balance of the interests implied could the lower court determine if the alleged privileges are appropriate.

On the contrary, the lower court ordered the production of the document in question for in camera examination, before determining if it was of a public nature and resolving if the confidentiality of the document itself is protected by any of the alleged privileges. *It abused its discretion in doing so.*

Therefore, *we conclude that the Court of Appeals erred when refusing to issue the writ that was filed, as well as the lower court when ordering the production of the document in question, for in camera examination at the stage it did it, without having the specific justifications of the State to refuse to divulge it.*

### IV.

Pursuant to what was stated above, without further proceedings, and pursuant to Rule 50 of the Regulation of this Court, supra, *the writ of certiorari requested is issued and we partly reverse the Order of July 26, 2017, issued by the Court of First Instance regarding the production of the document in controversy for in camera examination. Aside from this, such Order is confirmed in the other matters that are not incompatible with what is stated herein. The stay ordered is lifted and the case is returned to the lower court so the proceedings can resume pursuant to what is stated in this Opinion.*

*Judgment will be entered accordingly.*

Associate Justice Mr. Kolthoff-Caraballo issued an opinion in conformity. Chief Justice Oronoz-Rodriguez, Associate Justice Mrs. Rodriguez-Rodriguez and Associate Justice Mr. Estrella-Martinez and Associate Justice Mr. Colon-Perez issued their respective dissident opinions.
-------------------------O-------------------------
Opinion in conformity issued by Associate Justice Mr. Kolthoff-Caraballo

I

The case file clearly shows the fact that the document in controversy *is a draft.* That is, a document that is not final, because there is still the possibility for it to be modified *before being notified to its addressee.* Appellee insists in arguing that it is not a draft but a "proposed budget" or a "proposal" addressed to the Financial Oversight and Management Board for Puerto Rico (Financial Oversight Board). Whatever the way the document is called, there is no controversy that it was subject to changes and, therefore, it was not final until sent to its addressee. The *97 truth is that what the Executive prepared, and is object of this controversy, was the proposed budget that, pursuant to constitutional provision it is required to send to the Legislative Assembly every year. [1]

That is the constitutional procedure and it has been the same one that has been correctly followed since the approval of our Supreme Law. The only difference this time is that the Puerto Rico Oversight Management and Economic Stability Act (PROMESA, for its English acronym)[2] provides that such proposed budget be verified by the Financial Oversight Board, created by the referenced federal law. For more than 60 years, the Executive has prepared the proposed budget, having the opportunity, as it is a draft, to make the changes that are necessary before sending it to the Legislative Assembly.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

That being so, what law makes the proposed budget that the Executive Power sent, not to its addressee-the Legislative Assembly-but to the Board created by federal legislation, a public document? Does the known PROMESA law make this document public? If not, does Sec. 1001 of the Administration of Public Documents in Puerto Rico[3] contemplate this particular situation? The answer to these questions is no, and it seems to me there could be no other way. The right of the People to know, which emanates from the First Amendment of the federal Constitution and from our Bill of Rights as a cornerstone of our democracy does not include and cannot include-according to the parameters of common sense and justice-the "draft" of what at some time may become a public document. In other words, the ideas, the feelings and thoughts of the public officials would succumb to the possibility of becoming * 98 hostages (among other evils) of the terrible demagogy (although certainly I could not speculate that this would be the case). We should not ignore that although the terms "democracy" and "demagogy" could have some phonetic similarities, they are certainly very different. The democracy constitutes the root and reason of being of the right of the People to know which is guaranteed by the First Amendment of the federal Constitution and our Bill of Rights. While demagogy, although protected by these constitutional guarantees, constitutes a terrible malign germ of our democracy which is not convenient to feed. '

Establishing, as the appellee expects, that a draft that has not been sent to its addressee constitutes by itself a public document, does not obey the positive law, and worse, it opens the doors to situations which do not help at all the development of the public duty. For that reason I am in conformity with the Opinion issued by the Majority of the Court.

## II.

### A. The right of the citizens to access "public documents"

In a society as ours it is necessary to acknowledge to every citizen "the legal right to examine and investigate how his/her matters are conducted, subject only to those limitations that the most urgent public need imposes"(Emphasis omitted). [4]

We have acknowledged the right to access public information as a necessary corollary to the exercise of the right of freedom of speech, press and association included in Art. II, Sec. 4 of the Constitution of the Commonwealth, LPRA, *99 Tome 1.[5] The main purpose of this section is to guarantee the free discussion of the matters of government.[6] Therefore, it is necessary to facilitate to every citizen of our country the right to examine the content of the files, reports and documents that are gathered in the governmental duty. [7] That, because, "if the People are not duly informed of the way in which the public duties are conducted, their freedom of speech regarding the satisfaction or lack of satisfaction with the persons, rules and procedures that govern them will be restricted, through vote or otherwise.[8] Now then, even though the right to access public information is fundamental, it is not absolute or unlimited due to the close connection there is with the rights of freedom of speech, association, and to seek relief from the Government from grievances.[9] This right may be limited by the State if there is an urgent interest to justify it. [10] For that reason, this Court has established that the right to access certain information in possession of the State depends, in the first place, of whether the requested information is in fact public. [11] To those ends, our legal system has given several definitions to the term "public information". One of them is the one provided in Art. 1(b) of Law No. 5 of

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

December 8, 1955 (Law No. 5) as amended, known as the Law for the Administration of Public Documents of Puerto Rico, 3 LPRA secs. 1001-1013.

Art. 1 of Law No. 5, supra, provides that the purpose of the statute is to "establish a systematic program of *100 conservation of documents, that in consideration of their historic, legal administrative or informative value deserve to be preserved for much more time, and the elimination of those documents that not only lack permanent value, but that also have lost all its administrative use". (Emphasis provided). 1955-1956 Laws of Puerto Rico 79.

In particular, paragraph (b) of Art. 3 of Law No. 5 (3 LPRA sec. 1001(b)) defines "public document" as follows:

It is every document that is originated, conserved or received in any department of the Commonwealth of Puerto Rico in accordance with the law or regarding the management of public matters and that pursuant to what is provided in sec. 1002 of this title is conserved that is required to be permanently or temporarily conserved as proof of the transactions or because of its legal value. Includes those produced electronically that meet the requirements established by laws and regulations.

On its part, Art. 1170 of the Civil Code, 31 LPRA sec. 3271, establishes that "public documents are those authorized by a notary or public employee, with the formalities required by law."

Therefore, when a document complies with what is provided by any of these definitions, the common citizen has the right to request access to the information and the State may only validly deny the access in a determined number of instances.[12] Based on the

foregoing, when evaluating the controversy before us, the first analysis we must make is whether a "draft" prepared by an official in the exercise of his duty, that has not been sent to its addressee, is in itself a public document.

In Pueblo v. Tribunal Superior, 96 DPR 746 (1968), this Court had before it a controversy that, even in a *101 scenario different to the one before us undoubtedly helps us illustrate the special nature of the documents that are prepared and circulated for internal objectives of the governmental entity in the course of the post of an officer. There, the accused asked the Court of First Instance to order the Secretary of the Treasury Department to provide a copy of the reports prepared by the Inspectors of the Income Tax Bureau (Inspectors) as to his case, as the Secretary of the Treasury Department had refused to provide them.[13] The court of instance refused the petition based in that those documents were not under the custody of the District Attorney[14] Not in agreement with this decision, the accused asked for reconsideration through which he alleged that the reports prepared by the Income Tax Bureau, product of the administrative investigation of the case, were not part of the work of the District Attorney, were not sworn statements and did not have the protection of Rule 95 of Criminal Procedure. 34 LPRA Ap. II[15]. After evaluating the arguments of the parties, the court of instance reconsidered its decision and decided that it had to provide the accused a copy of the report presented by the Inspectors to the Secretary of the Treasury Department or allow him to examine or photocopy it[16]. Upon evaluating the nature and purpose of the documents this Court decided that, in view of Art. 1170 of the Civil Code, supra, "a report, memorandum or document pre-prepared by an employee or officer in the exercise of his/her positon or employment for a superior or for internal purposes of the decisions and actions of the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

department are not public *102 documents that, pursuant to Art. 47 of the Law of Evidence, every citizen has the right to inspect."(Emphasis ours). [17]

In that sense, we conclude that despite that the report of the Inspectors, prepared in the course of their posts and presented to their superior (the Secretary of the Treasury Department) for his pronouncements, probably could have matters of evidence appropriate to present in the trial, there was also no doubt that it had other matters that were not; among them: the interpretations of those officers of determined facts, their subjective conclusions of such facts, as well as their conclusions according to the tax law that they administer and in regards to the criminal action, it could also have the work method or focus or strategy of the officials of the State to support the accusation.[18]

Our decision in this case was based in reasons of public order and in the implications that deciding otherwise could have in the effective operation of the Government. Specifically, we stated the following:

For reasons of public order, as *that would affect the effective operation of the government and prevent the officers from acting with complete freedom and truth, without fear or inhibition in the preparation of reports, memorandums or other expressions or communications in the course of their duties* for department purposes, we must conclude that the Report of interest herein, as such, is not subject to inspection under Rule 95 as a "document" or "paper" obtained by the People from another person. (Emphasis in the original omitted and our emphasis provided)[19] *103

The foregoing shows that in a criminal context, in which one of the most important fundamental rights is involved, the right to

the freedom of an individual, this Court did not allow the discovery of those documents prepared by an official during the course of their duty for internal purposes of the agency under Rule 95 of Criminal Procedure as they were not public documents.

On the other hand, in various instances the Secretary of Justice of Puerto Rico has issued his opinion in response to consultations made to his Office regarding the matter of "public documents". Let's see.

In 1957, the then governor of Puerto Rico, Hon. Luis Muñoz Marin, consulte with the then Secretary of Justice, Hon. Juan B. Fernandez Badillo, whether the issuance of a certified copy (on the part of the Police Commission-currently Puerto Rico Police) of certain documents related to an administrative case being held against a Police tenant was appropriate.

Counsel Fernandez-Badillo stated that "a document of a public official made without authorization or statutory requirement is not considered a public document. Also, the notes, memoranda and correspondence of governmental officers that are produced incidentally to the administration of the official matters are not considered public documents. Op. Sec. Just. No. 21 of April 29, 1957.

Also, the then Secretary of Justice stated that "the State is not obligated to provide copy of reports and letters that are produced incidentally to the administration of an office because even though they are related to public matters, they are not properly a public record." Op. Sec. Just. No. 21 of April 29, 1957, page 78.

On its part, in 1964, the then Secretary of Labor Hon. Frank Zorrilla, consulted the Secretary of Justice of that time, Hon. Hiram


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

R. Cancion regarding the *104 the public character of the workers' insurance policies found in possession of the Department of Labor. He mentioned that Art. 407 of the Code of Civil Procedure, 32 LPRA ant. sec. 1762 provided that public documents were those so determined in Art. 1170 of the Civil Code, supra. As a consequence, he made reference to what was stated by the Spanish treatise writer Jose Manresa y Navarro about Art. 1216 of the Spanish Civil Code (similar to our Art. 1170) that the definition of "public document" includes three distinctive aspects: (1) the intervention of a notary or public official that authenticates the document; (2) the competence of that notary or public officer and (3) the concurrence of the formalities required by law in the document. Op. Sec. Just. No. 5 of January 8, 1964.

On another occasion, and in response to a consultation of the ex-superintendent of Police, Hon. Salvador Rodriguez, regarding whether the personal background of those citizens with which the Police had intervened and that were in the Division of Criminal Identification of the Police was a public document. Then then Secretary of Justice, Hon. Rafael Hernandez-Colon, determined that that document was public and was subject to inspection by the citizens. However, he added that "as that right of inspection is not absolute, the norm of allowing the inspection, or the issuance of certified copies of such records, to the persons that have a legitimate interest in the matter is valid." Op. Sec. Just. No. 46 of September 14, 1966, page 226.

Likewise, counsel Hernandez-Colon stated in multiple instances, that the Department of Justice has emphasized that "the right of inspection guaranteed by the Law of Evidence does not extend to the notes, memoranda and correspondence of governmental officers, that are produced

incidentally to the administration of office matters, or to that information that is *105 of confidential nature, disclosure of which could entail the prejudice of the good operation of the agency that possesses it." Op. Sec. Just. No. 46 of September 14, 1966, page 226.

In the federal jurisdiction there have been three main components of the doctrine of executive privilege: (1) state and military secrets;[20] (2) criminal processing[21] and (3) deliberative process[22]. At the same time, as to the deliberative process, the courts have identified three arguments to support the existence of the deliberative process privilege.

First, the privilege protects candid discussions within an agency. […] Second, it prevents public confusion from premature disclosure of agency opinions before the agency establishes final policy. […] Third, it protects the integrity of an agency's decision; the public should not judge officials based on information they considered prior to issuing their final decisions.[23]

Therefore, the privilege focuses in documents that reflect consulting opinions, recommendations and deliberations that comprise part of the process by which the government makes decisions and formulates public policy.[24]

Its purpose is related to the public policy of protecting the confidential exchanges of opinions and counsels in *106 the Executive Branch. That is, the privilege is limited to protecting the exchange of documents that reflect the opinions, recommendations and deliberations that contribute to the decision making process[25]

However, of all the foregoing, the underlying important detail is the logical conclusion that

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

*when speaking of the so called executive privilege in any of its three modalities, we refer to documents that are final.*

That is, a document that has been addressed to its addressee, be it external or internal, without importance of the simplicity, complexity or extension of such document or the result of such endeavor. If that finality condition is not met, it is not appropriate to talk about privilege, because the document would not even reach the condition of public document.

C. PROMESA Law

Essentially, the PROMESA Law, establishes the Financial Oversight Board, which purpose is to provide a method to attain fiscal responsibility and access to the capital markets. 48 USCA sec. 2121. Consequently, the provisions included in the PROMESA Law are directed to the granting of powers and faculties to the Financial Oversight Board to achieve that purpose.

Appellee expects the Executive to hand him a copy of the proposed budget prepared by the Governor and given to the Financial Oversight Board. Again, it is important to note that what the Executive sent to the Financial Oversight Board was nothing more than a *draft*, as required by the PROMESA Law.[26] Note *107 that the provision refers to an imperfect document that is subject to multiple revisions, as they are indicated by the Financial Oversight Board, which causes a dynamic in which the Executive modifies and sends several drafts to the Financial Oversight Board until it is perfected according to the required standards[27]

Also, this provision refers to an obligation of the Executive towards the Financial Oversight Board expressly. Nothing established in the PROMESA law insinuates, instructs or forces the Executive to provide to the citizens, in this case appellee, the draft of the budget in question. That also does not make it a public document.

III

In sum, the controversy in this case is about a *draft* of the budget prepared by the Executive in the exercise of its charge which it sent to the Financial Oversight Board, according to the provision of the PROMESA Law, *108 knowing that the document *was not final*. That is, the document still was a *draft*. In my opinion, it is not until that document is received by the Legislative Assembly, organism for which the document was created, (the addressee) that it stopped being a draft and became a final document. It is in that moment, and not before, that the document becomes public and thus reviewable by every citizen.

For all the foregoing, I am in agreement with the Opinion of the Court.
-------------------------------O-------------------

Dissident opinion issued by Chief Justice Oronoz-Rodriguez.

This is a case of access to public information and the opposition of the State to what was requested. Particularly this Court had to decide whether the dismissal of the mandamus petition filed by the Hon. Eduardo Bhatia-Gautier was appropriate, because of allegedly (1) he lacked standing; (2) the petition became moot; (3) the available remedies were not exhausted prior to filing suit and (4) the inappropriateness of the mandamus as a matter of Law, for among other things, applying the executive privilege. The Majority opinion correctly decides that there are no grounds to dismiss the mandamus petition filed by the Hon. Eduardo Bhatia-Gautier. Its analysis should have finished there.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Unfortunately, the Majority of the Court unnecessary prolongs the in camera review of the budget submitted by the Commonwealth of Puerto Rico (ELA) to the Financial Oversight and Management Board for Puerto Rico (Board). Therefore, it makes an unheard of and improvised leap to another controversy: what if any, are the limitations that the executive privilege imposes on the in camera inspection of a document to which allegedly that *109 constitutional privilege applies to? It then decides that the claim of executive privilege prevents the in camera examination of the document in question prior to the filing of memorandums of law. This way, the Majority distances itself from the case law of this Court and of the federal Supreme Court without properly examining it.

Because the Majority Opinion preliminarily adjudicates the case, it unnecessarily and excessively meddles with the minutia of the judicial case and denies the timely in camera inspection of a document of significant importance, I energetically dissent.

## I

The statements of error of the petitioner only question that the mandamus complaint was not dismissed. However, the Opinion of the Court goes further and tacitly prejudges the controversy on the merits by establishing the scope of the privileges about governmental information. This, even though it is not in a position to apply the criteria it recognizes. [1]

I voted to not issue the writ, because it is evident that the judge of first instance did not commit an error in law or abused her discretion which prevents our intervention at this time. [2] The Majority not only issues the writ without it being timely, but also issues numerous expressions regarding the access to public information and the privileges related to governmental information *110 which in

my opinion, are not accurate. Also, I am worried that the parties were not given the opportunity to state their positions through briefs-normal process when a writ is issued-which prevented the substantive matters involved from being analyzed with the depth and rigor that they warranted. [3]

That said, let's see what the applicable figures are and my concerns with what the Court decided.

### A. Access to public information

The Opinion of the Court acknowledges the centrality of the access to public information in every democratic society. However, the Court reproduces an uncertainty that has persisted since we recognized this constitutional right in Soto v. Srio de Justicia, 112 DPR 477 (1982) that is, under which standard of adjudication will the constitutionality of a law that establishes the confidential character of certain information be analyzed. See J.J. Alvarez-Gonzalez, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2010, page 1179. In Soto v. Srio de Justicia, supra, pages 493-494, we first discuss the standard of balance of interests acknowledged in United States v. O'Brien, 391 US 277 (1968)[4].

However, later we recognized that in these cases a "strict judicial scrutiny" is imposed. Soto v. Srio de Justicia, supra, page 497. Both criteria are different, but the Court *111 does not distinguish in this and in various cases after.[5]

Establishing with clarity the standard of adjudication applicable makes possible the resolution of the case and reduces arbitrariness. See J.J. Alvarez Gonzlez, Derecho Constitucional, 74 Rev. Jur, UPR 597, 628 (2005). Due to the neuralgic nature

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

of the access to public information I consider that the Court should have clarified once and for all, that in these cases a strict judicial scrutiny applies.[6] ("Once Soto decided there is a *constitutional* right to access governmental information, the search for this access becomes an exercise of liberty of speech, therefore any law that tries to prevent it is a law that is against the speech, to which the strict scrutiny must be applied") (Emphasis in original) #Id. According to this standard if a court determines that the document requested is public, the State will have to prove that its interests are urgent and that the confidentiality necessarily promotes such objectives.[7] This norm would apply to any claim of confidentiality by the State, including Rule 514 of Evidence, 32 LPRA Ap. VI, about official information. *112

### B. Privileges of public information

Different situations provoke the citizens to judicially request for information in the hands of the Government. It may be, for example, in cases where the information required is essential for the main controversy. See, for example, Lopez Vives v. Policia de PR, 118 DPR 219 (1987). Other times, the citizen simply files a complaint for access to public information to adequately supervise the governmental work. See, for example, Soto v. Srio de Justicia, supra. However, in both instances, the State can allege it has a genuine interest in keeping the information confidential. To prevent a court from ordering the disclosure of a document, the State can allege the executive privilege of constitutional nature or the particular privileges established by legislation. See Alvarez Gonzalez, op cit, page 363.

The constitutional executive privilege is not expressly acknowledged in the Constitution of the United States or Puerto Rico. The reasoning for its validity is the doctrine of separation of powers because it questions the scope of the power of the Judicial Branch in regards to the Executive Branch. In the seminal case of United States v. Nixon, 418 US 683, 706 (1974) the President of the United States alleged that the independence of the Executive Branch demanded the acknowledgment that no court could order the disclosure of presidential communications. The United States Supreme Court categorically rejected the existence of an absolute executive privilege. Now, it recognized a qualified executive privilege that emanates from the separation of powers. This privilege protects the communications between the President and its advisers, but the Judicial Branch must precise its limitations. The Court did not clarify under which standard of adjudication the privilege would be analyzed but stated, among other things, *113 that "[t]he very integrity of the judicial system and public confidence in the system depend of full disclosure of all the facts, within the framework of the rules of evidence". Id., page 709.

In Puerto Rico we also derive this executive privilege from the separation of powers stated in our Constitution. Peña Clos v. Cartagena Ortiz, 114 DPR 576, 598 (1983). There we clarified that this faculty is also not absolute. #Id. Also, in the context of a case about the investigative power of the Legislative Assembly against the Executive Branch, we stated we would examine the controversy using "the method of weighing the interests in conflict". #Id. Notwithstanding, this standard does not apply to this controversy, because we have a claim of access to public information. See E.L Chiesa, Tratado de derecho probatorio, Dominican Republic, Ed. Corripio 1998 [s. year] T.I. pages 308-309 ("The right of citizens in general to receive information about matters of public interest and to supervise the government is extensive.

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

When the controversy is between two branches of the government as in Peña Clos v. Cartagena Ortiz, it could be said that the intervention of the Judicial Branch must be more modest but the right of the citizens to be well informed about matters of the government is always at stake.

On the other hand, in Peña Clos v. Cartagena Ortiz, supra, page 599, we stated "that a naked allegation of public privilege, without support of adequate legislation must be scrutinized with particular zealousness". This expression was subject to critic because it is contradictory to speak of a constitutional privilege that requires a law to make it viable. Alvarez Gonzalez op cit, page 364. I am in agreement with that statement. If there is no law about the confidentiality of public information, the Court must go in and zealously examine the constitutional aspect of the privilege. However, if there is a law that recognizes the confidentiality of the official information *115 the Court must focus its analysis on that law and avoid turning to the constitutional executive privilege.

Having said the foregoing, it is necessary to examine how this privilege has been recognized statutorily. There is no doubt that the "most effective mean of safekeeping sensitive information gathered by the State in its official capacity, which disclosure could affect public interest, is through special legislation. Santiago v. Bobb v. El Mundo, Inc. 117 DPR 153, 160 (1986) Now, "in its absence it is appropriate to turn to Rule 31 of Evidence as a complement about official information.[8] #Id. This Rule defines "official information" as "that acquired in confidence by a person that is an official or public employee in carrying out his/her duty and that has not been officially revealed or is accessible to the public until the moment the

privilege is invoked. Rule 514 of Evidence, supra. To that effect, that person can request not to disclose the official information. The court shall consider if its disclosure is forbidden by law or if disclosing it would be detrimental to the interests of government.[9]

In consideration of the relationship between the constitutional executive privilege and the referenced rule, it is questionable, not to say inappropriate to discuss both privileges separately as the Opinion of the Court does. By doing so, the Majority appears to give more substantive weight to the executive privilege. However, I consider that Rule 514, supra, as it refers to the executive privilege, only has the effect of statutorily incorporating it. [10]

Therefore *115 I consider that the scope of the constitutional executive privilege does not have to be greater than the privilege of official information. Much less in a controversy where the access of public information is demanded.

On the other hand, in Part II-F the privilege about decisional information in deliberative proceedings about public policy is discussed. The normative merits of this privilege were not questioned. However, it is problematic how the majority Opinion incorporates in our legal system the deliberative-process privilege. First of all, the Majority appears to suggest that this privilege is part of Rule 514 about official information. However, so acting does not acknowledge the particularities of our evidentiary system, among them, that in Puerto Rico-different from the federal jurisdiction-the privileges and their scope are codified by law. Chiesa Aponte op cit. page 189. On the other hand, the deliberative-process privilege, as many other privileges, comes from the common law. M.W. Warnock, Stifling Gubernatorial Secrecy: Application of Executive Privilege

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

to State Executive Officials, 35 Cap. U.L. Rev. 983, 986 (2007). Also, it has no constitutional base at all, different from the presidential communications protected by the constitutional executive privilege. #Id. Page 1012 ("The deliberative-process privilege is a 'common sense-common law privilege' that is 'shorn of any constitutional overtones of separation of powers'"; see Vaughn v. Rosen, 523 F. 2d 1136, 1146 (D.C. Cir. 1975).

Therefore, it is problematic that the Court sneaks the deliberative-process privilege through Rule 514 which does not expressly adopt that privilege or limit its scope. As *116 professor Chiesa acknowledges "the privileges must arise from the law, from the Constitution, the rules of evidence or special laws. They are public policy considerations that require a delicate balance between social interests, zone of responsibility of the Legislative Branch. Chiesa Aponte, op cit, page 188[11]'

On this occasion, this delicate balance of interests required that the Legislative Assembly was the one to precise the boundaries of the deliberative-process privilege. However, the Majority decides to trace the nomenclature of the common law over deliberative processes without even questioning its role or the peculiarities of both legal systems [12]

Each premise, each requirement, each conclusion of the Opinion of the Court is presented as a result of a methodic study of law and the application of the mythical legal reasoning. However, through the apparent neutrality of the "applicable law," controversies of great magnitude for our constitutional and democratic system are substantively resolved. [13] In view of the way that such positions are adopted, I have no

choice but to express my most profound lack of satisfaction with the majority's actions.

Finally, the Majority decides that the executive privilege prevents, at this time, the in camera review of the budget submitted to the Board. It states that upon a claim of executive privilege, the courts must be very careful prior to the in camera review. This, as *117 we will see below, contradicts the reasons for the in camera inspections and the federal and local expressions about the executive privilege. Also, even in the majority logic, it is evident that in this case the ELA had ample opportunity of justifying the application of the privilege prior to the in camera inspection of the document.

The convenience of the in camera review has been recognized by multiple courts as an adequate procedural mechanism to determine the existence of a privilege. This, because as a general rule, the review of the evidence in camera does not affect the privilege in question, but on the contrary, allows to ponder if the privilege and elements that support it really apply to the evidence in controversy.[14] It also allows to distinguish the privileged material from the non-privileged material in those cases in which a party claims a privilege in excess of what is needed. See, for example, Hamilton v. Verdow 414 A. 2d 914, 927 (1980) ("[T]he in camera inspection may be utilized to determine whether the material is privileged [and] to sever privileged from non-privileged material if severability is feasible"). The foregoing is accomplished through a minimum intrusion on the part of the judge in the matter in question to thus balance the interests of the parties. United States v. Zolin 491 US 554, 572 (1989). This is why the use of this mechanism is usually promoted upon claims of different types of privileges.[15]

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

However, in regards to state secrets, namely, military or diplomatic secrets the federal Supreme Court decided that the in camera inspection by the courts *118 of presidential documents affects the prerogatives of the Executive regarding national security. See United States v Reynolds, 345, US 1 (1953) [16]

It is important to note that in United States v. Nixon, supra, the President alleged that the in camera inspection of presidential documents was not appropriate because the norm of United States v. Reynolds, supra extended to the communications between the First Executive and his subordinates. The Supreme Court rejected this statement and decided that:

[…] Absent a claim of need to protect military, diplomatic or sensitive national security secrets, we find it difficult to accept the argument that even the very important interest in confidentiality of the Presidential communications is significantly diminished by production of such material for in camera inspection with all the protection that a district court will be obliged to provide. (Emphasis suppressed). United States v. Nixon, supra page 706.

The in camera review: is always a procedure calling for scrupulous protection against any release or publication of material not found by the court, at that stage probably admissible in evidence and relevant to the issues of the trial for which it is sought. #Id, page 714. It is evident that "the in camera inspection is clearly permissible." Chiesa Aponte, op cit, page 296.

On the other hand, in Puerto Rico, since Soto v. Srio de Justicia, supra, we validated the in camera review in absence of the parties, to adequately determine the confidentiality invoked by the State. In Peña Clos v. Cartagena Ortiz, supra, page 581, as part of the appellate process, we even returned the

case to the court of first instance for considering that our intervention would be premature without the previous examination of the documents. Also, in Santiago v.*119 Bobb y el Mundo, Inc., supra page 162, we stated that to determine the confidentiality of the information, "the court may perform an in camera review of the documents or information that the State alleges are privileged, as a prior condition to the acknowledgement of the privilege." We see then that we have not given a greater extension to the executive privilege. Different from state secrets, where once the application of the privilege is duly argued the in camera inspection is not appropriate, in cases of executive privilege the in camera inspection is not only clearly permissible but desirable.

The Opinion of the Court supports its argument in that the in camera inspection does not support the analysis because the nature of the document is already known. Such statement is curious, because previously the Court acknowledged that the ELA did not prove that the document submitted to the Board was the same that the one that was submitted to the legislative bodies. Although we can speculate about the content of the document, it is necessary to examine it to determine if keeping it confidential is justified; even more if it is argued that it was part of deliberative process. Also it is problematic that this Court ignores that the ELA already had the opportunity to file motions and argue for the application of the privilege in court. [17] In fact, the Court of First Instance, understood that "defendant did not detail in any way why the information requested qualifies for the application of the executive privilege".[18] Notwithstanding the foregoing, in the Decision and Order object of review, the Court of First Instance even granted the ELA a third opportunity to explain in detail why the information must be

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

kept confidential. I have not found any explanation or precedent in our legal *120 system or in any other to justify delaying the in camera inspection and granting the ELA another swing at the bat. I will keep searching.

The Wizard of Oz, hidden behind the curtains, seeks to influence his environment without anyone noticing. Let us not make that mistake. In moments of crisis it is even more important that citizens access public information. This Court should have taken this historic moment, as it bravely did after the Cerro Maravilla events, to extend and not limit such an important constitutional right for this daily experiment called democracy.

------------------O--------------------------------

Dissident opinion issued by Associate Justice Mrs. Rodriguez-Rodriguez

As the majority, I consider that the motion to dismiss filed by the Governor lacks merits. However, I am perplexed that this Court reversed the decision of the lower court to perform an in camera inspection of the proposed budget. In numerous occasions we have endorsed the practice of examining a document in camera when a party holds that the document is covered by certain privilege. The facts in this case should not move us to change this position.

The Court appears to establish a new procedure for circumstances where the need for in camera inspection of official documents is alleged, when the State has invoked a privilege to not hand them to the citizen. Once we scrutinize the procedure we notice it is inconsistent and antagonistic with our previous precedents and lacks objective standards that facilitate and speed the judicial management of these claims. On the contrary, it adds to division and delay. *121.

Also, without reasonable legal explanation, a majority of this Court orders the judge of first instance to accept additional memorandums of law about invoked privileges, when the case file shows that the parties already had the opportunity to argue their positions as to the applicable privileges and submitted their memorandums.

I repeat, the procedure established by a majority has no support in any of our precedents or of other jurisdictions where the right to access public information has constitutional protection. Even worse, it has serious repercussions on our duty as arbitrators of the controversies of the State and its citizens, and adds to the shadiness in the matters of government. Let there be no doubt, today we have gone backwards in our democratic advances.

In order to explain my lack of conformity with the dispositive measure taken today by the majority, it is necessary to detail the background of the case to adequately apply our Law regarding the constitutional right to access to public information.

I

There is a central matter that we must discuss in this case as we consider that the controversy that this Court "decided" was not brought before us by the General Attorney. I explain myself.

In his certiorari petition, the General Attorney brought to our consideration two matters: (1) that the lower court erred by not granting the motion to dismiss that the State filed in the court of first instance and (2) that it erred by addressing the writ of mandamus filed by the here appellee. Because, in his view, the requirements to issue this extraordinary and privileged writ are not met. Nothing more. In other words, *122 the State did not question the decision of the judge

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

where she proposes to carry out an in camera inspection of the document requested. The majority does not explain why it deviates from our previous decisions and goes on to decide something that was never raised.

*That is to say, and I reiterate, that none of the statements of error expresses that it was an error for the lower court to order the in camera inspection of the document.*

As we know, the Regulation of the Supreme Court has a provision in which it is required that every certiorari has a brief and concise statement of the errors attributed to the appealed forum. See Regulation of the Supreme Court, 4 LPRA Ap. XXI-B. "The importance of this requirement is that the appellate court is obligated to consider only the errors that appellant or petitioner has stated specifically". H. Sanchez Martinez, practica Juridica de Puerto Rico, San Juan, Ed. Lexis-Nexis, 2001, sec. 1408, page 294.

Regarding this particular, in Moran v. Marti, 165 DPR 356, 365 (2005) we stated:

[…] Our procedural appellate system requires the appeal filed to have discussion of the errors attributed to the lower court, because no brief or memorandum of authorities shall be admitted after the filing of the appeal. The rule also is clear that the statement of error that is omitted or not discussed shall be deemed as not included therefore shall not be considered by the intermediate appellate forum.

Every attorney has the obligation and duty to fully and rigorously comply with the requirements provided in the laws and regulations regarding the perfection of the appeals filed.

This requirement is not a preciosity, but a requirement of the due process of law and fair

game. If a specific statement of error about some matter in particular is not included in an appeal the opposing party *123 will never address that matter and the Court will not have heard it prior to deciding the case. That, in my view, is patently unfair, at the least.

This principle is not an impassable straightjacket because we have also provided that "in order to serve justice, an appellate court has the inherent faculty of considering and resolving patent errors in an appeal even when they have not been presented by the parties." (Emphasis provided). Hernandez v. Espinosa, 145 DPR 248, 264 (1998). Also, if it does not state it but discusses it, the Court can consider it. Vega v. Yiyi Motors, Inc., 146, DPR 373, 384 sco. 15 (1998).

Neither of these two circumstances is present in this case. At no place in his certiorari petition did the General Attorney question the order to submit the budget document for in camera inspection. The General Attorney referenced the executive privilege when he discussed why the mandamus should not be issued and not to question the decision for in camera review of the proposed budget. In this sense, the important thing is what the Attorney General did NOT say or argued. He did not challenge the order for in camera review of the budget submitted to the Board, precisely because the General Attorney is aware of the frivolity of such argument, because it is not justified in view of the applicable law. However, this "non-stated error" is that this Court "decides".

The absence of legal argument of this Court to "justify" its actions adds to the impression of arbitrariness. This way, it appears that what is important is to advance a result therefore the legal support for the decision issued is unimportant; which is never desirable. *124

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

## II

The access to information secures the democratic systems because it helps the effective attainment of different fundamental rights. The knowledge of the public matters promotes informed opinions that in turn encourages the citizens to participate in debates and make more accurate decisions. And even more importantly, the access to public information is the best antidote against corruption. There is the famous expression of Judge Brandeis: "The sunlight is the best disinfectant".

In consideration of this, the access to information is without a doubt the cornerstone for the governance and governmental supervision. We should not forget that the relationship between State/Citizens is based in a pact by which the citizens in the exercise of their sovereignty or authority-delegate to the State and its governmental agents the faculty of administering the public resources, of designing, administering and implementing solutions to the problems that citizens face, and watch for the compliance of legal order among other matters. This delegation of sovereign authority forces the State to "to give account to [the citizens] of the actions taken in their name". R Vergara, La transparencia como problema, 2008, page 34 in http://187.216.193.232/biblos-imdf/sites/default/files/archivos/00481Cuadernosdetrans-parecncialIFAI05.pdf Otherwise, how can society ensure that the government is behaving in accordance to its needs and social interest and not interests foreign to society itself, breaking the foundations of the pact of governance? Any limitation of such vital access equals to "allowing the government manage the public matters under the cloak of secrecy [which] is to invite *125 arbitrariness, poor administration, governmental indifference, public irresponsibility and corruption".

(Emphasis provided) E. Rivera Ramos, La libertad de información: Necesidad de su reglamentación en Puerto Rico, 44 Rev. Jur. UPR 67, 69 (1975).

Said otherwise, what was mentioned shows a special requirement to disclose public information because it is born from the foundational principle of every government: serving the people that elected it. Therefore, as the political authorities are the representatives of the people-which labor is in favor of citizens in general-all their decisions and actions have a high public interest that warrants transparency. The government is who controls the necessary information to evaluate, precisely, those policies it establishes and executes which creates an asymmetry of information that affects the governability pact itself. In this context, the transparency in the management of the government is necessary to exert an external supervision control on the government itself.

To that effect, the national legal systems and the international society have recognized the right to receive and gather information as an essential and intrinsic element of the exercise of free speech. F. La Rue, Promocion y proteccion del derecho a la libertad de opinion y de expresion, A/68/362 par. 18 (2013). That way, the international understandings on the matter promoted the adoption of the International Pact of Civil and Political Rights in 1966. Art. 19*2) of the Pact specifically provides that "[e]very person has the right to free speech; this right comprises the liberty to seek, receive diffuse information and ideas of every kind, without importance of boundaries, be it orally in writing in print or artistically or by any other procedure of their choice'. International Pact of Civil and Political Rights of 1966, in http:// *126

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

www.ohchr.org/SP/ProfessionalInterest/Pages/CCPR.aspx.[1]

In view of this, more than fifty nations have constitutionally guaranteed the right to access to information and more than ninety countries have adopted national laws to regulate the procedure to request public information. La Rue, supra, par. 70.

In the particular context of Puerto Rico we do not currently have a legislation that regulates the access to public information despite that the first signs of its supremacy have been recognized since the decade of 1960. Davila v. Superintendente de Elecciones, 82 DPR 264 (1960). It was not until 1982 that we gave the right to access the information a constitutional rank as connatural element of the efficient exercise for free speech protected by Sec. 4 of Art. II of the Constitution of Puerto Rico, LPRA Tome 1. Soto v. Srio de Justicia, 112 DPR 477 (1982). The reasoning that informed this decision was the same explicitly stated in the International Pact of Civil and Political Rights: that free access to the information is necessary for full attainment of the right of freedom of speech. See #Id. Page 497.

B.

The right to access the information can be invoked to request a document from the State when it has a public nature. A public document in Puerto Rico, is defined as follows:
[...] every document originated, conserved or received in any office of the Commonwealth of Puerto Rico in accordance to the law or regarding the management of public matters and that pursuant to what is provided in sec., 1002 *127 of this title is conserved that requires permanent or temporary conservation as proof of the transaction or of its legal value. Includes those produced electronically that meet the requirements established by laws and regulations. 3 LPRA sec. 1001

On our part, from the foregoing we have reasoned that a "public document is the one a state organism receives in the course of its proceedings and is obligated to preserve". (Emphasis in original). Trans Ad de P.R. v, Junta de Subastas, 174 DPR 56, 69 (2008) Of course, even when a document is of public nature, it can be protected by some evidentiary privilege which is why special caution is required at the time of considering a request for disclosure.

In those situations, it is appropriate to order an in camera inspection of the document to decide if the alleged privilege applies in part, in whole or simply is not appropriate. This type of decision demands an analysis of specific facts. Therein lies the need for the in camera inspection. In re Grand Jury Subpoena, 662 F. 3d 65, 71 (1st Cir. 2011) ("Determining whether documents are privileged demands a highly fact-specific analysis-one that most often requires the party seeking to validate a claim of privilege to do so document by document") The review serves to remove any doubt of whether the documents are effectively, privileged documents and reject inappropriate and frivolous claims. "Such review offers a check on the accuracy and honesty of governmental privilege assertions". R. Weaver y J. Jones, The Deliberative Process Privilege, 54 Mo. L. Rev 279, 313 (1989).

Those of us who in the past have litigated countless claims of confidentiality as this one, are aware that when the document requested is clearly privileged it is unnecessary its inspection but these instances are the exception and not the rule. The experience shows, on the contrary that in the majority of these instances it is necessary for the judge to see and study *128 the document

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

in camera to evaluate the validity of the privilege claim. A rigid rule cannot be established –as the majority appears to do- first it must be determined whether the privilege applies or not, to then proceed to review it in camera. What is proposed shows a lack of knowledge of how these matters are addressed in the legal practice. The absence of criteria in this opinion is evident in this instance, upon the questions that the decision makes: What criteria is used to determine if the privilege applies or not? Who has the burden of proof, the person that invokes the constitutional right to access public information or the one opposed to that right? What will happen with that or those documents which are in whole or partly privileged and others not privileged or partly not privileged? Or is it thought that the document is all privileged or not privileged. If the judge has doubt about the arguments of the government is he/she prevented form reviewing the document? Frankly it is a contradiction what the majority proposes.

Granting an in camera inspection rests in the discretion of the judge of first instance and must be reviewed applying the criteria of abuse of discretion. See Horowits v. Peace Corps, 428 F. 3d 271, 282 (DC Cir. 2005) certiorari denied in 126 S. Ct. 1627, 164 L. Ed. 2d 335 (in the context of the Freedom of Information Act) ("The decision of whether to conduct an in camera review of a document is within the trial court's 'broad discretion' and is reviewed only for abuse of discretion") But when a legitimate dispute has arisen regarding the document it is advisable to inspect it in camera. "When the assertion of privilege is subject to legitimate dispute, the desirability of in camera review is heightened". In re Grand Jury Subpoena, supra, page 70. As treatise writer Jose Julian Alvarez Gonzalez states, this Court has turned to the interpretative case law of the Freedom of Information Act (FOIA), as "a persuasive source to dictate standards*129 in the solution of disputes under Puerto Rican law". JJ Alvarez Gonzalez, Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogota, Ed. Temis, 2010, page 1176. And, according to the interpretative case law of the FOIA, if the opposition of the agency as to the disclosure of the document does not satisfy the court, it must inspect the documents requested in camera. 33 Wright & Koch Federal Practice & Procedure, Sec. 8440 (2006) ("Should the original record and supporting agency affidavit not satisfy the court, it must inspect the documents itself in camera")

Since Soto, this Court has repeatedly recurred to the mechanism of in camera examination upon the claim of a privilege on the part of the State. Soto v. Srio de Justicia, supra, page 513. There in Santiago v. Bobb y El Mundo, Inc., 117 DPR 153, 162 (1986) we clarified that "we favor the judicial vision that the confidentiality of the information is determined through an analysis of the totality of the circumstances that surround the communication as its own nature. To assist its work the judge "can perform an in camera inspection of the documents or information that the State alleges are privileged as a previous condition to the recognition of the privilege." (Emphasis provided). #Id. Afterwards, in Pres. Del Senado, 148 DPR 737 (196) upon a claim of privilege of legislative immunity of the Legislative Assembly, we discussed the benefits of the in camera inspection:

[…] It allows the court to verify the claim of privilege to exercise in an informed way, its constitutional task of determining which material is privileged or not as final arbitrator of the controversy between the parties. On the other hand, it responds to the need of not allowing the Legislative Assembly itself to

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

be the absolute and final arbitrator of what is privileged material. #Id., page 805.

More recently, in Colon Cabrera v. Caribbean Petroleum, 170 DPR 582 (2007) we concluded that upon a claim to access a file about an investigation *130 that had already concluded in the Office of Antitrust Matters of the Justice Department, an in camera examination was the most appropriate method to protect the information obtained from private persons during the course of an investigation. [2]

In sum, our case law has constantly favored the in camera examination as the procedure to evaluate the appropriateness of a privilege presented by the State. Unfortunately the Court does not explain why these precedents do not apply or why they were dismissed.

Lastly, it is important to note that the tendency of this Court to adopt in its decisions the mechanisms designed for the access of public information of FOIA without stating important aspects of the legal system for which it was approved, is cause for concern. Without a doubt this legislation is an important anchor point in the matter of access to information in hands of the federal government. However, we cannot lose sight that in the United States the access to the information as a right of the citizens was acknowledged by legislation. There, it is manifest that the basis of such recognition is different from ours, because in Puerto Rico – as it was mentioned-the access to public information is of constitutional rank. Remembering in correct adjudicative practice that the limitations of FOIA are legislated limitations and that legislative mandate is the one that the federal courts interpret. In our case we interpret the scope of a constitutional right. To that effect, when one is before a claim of such nature the analysis pursuant to the strict scrutiny is

appropriate. Nieves *131 v. Junta, 160 DPR 97, 108 (2003) (Hernandez Denton, J. op dissident); Angueira v. J.L.B.P., 150 DPR 10 (2000).

Now, we recognize that the absence of legislation to initiate the mechanisms of request and production of information in hands of the State is the main cause for the disparity in the management of these cases. Even though such absence is not an impediment for a Court to comply with its adjudicative duties, it, in its need to do justice- cannot disobey or undermine the constitutional nature of the right to access the information as we have done in the past. That way, the opinion that the majority signs today moves away from our duty as guarantors of the fundamental rights of the Puerto Rican citizens.

C.

In this case the Governor invoked the executive privilege before the courts to maintain the confidentiality of the proposed budget requested by plaintiff. The petitioner argued in his certiorari that this privilege, as acknowledged in the federal and state courts of the United States, has two aspects: the privilege of the governor's communications[3] and the deliberative-process privilege. M.W. Warnock, Stifling Gubernatorial Secrecy: Application of Executive Privilege to State Executive Officials, 35 Cap. U.L. Rev. 983, 985 (2007) the courts of the Commonwealth have also acknowledged the validity of the executive privilege. See Peña Clos v. Cartagena Ortiz, 114 DPR 576 (1983).

One of the objectives of the deliberative-process privilege rests in considerations of practical convenience on the operation of the government. This is so governmental officials can express their *132 opinions about some proposed public policy honestly, without worrying about the public

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

---

repercussions of their opinions in the achievement of a common good. See R. Serrano Geyls, El derecho constitucional de Estados Unidos y Puerto Rico, Vol. U I, pages 652 et als. See also: United States v. Nixon, 418 US 683, 705 (1974); Coastal States Gas Corp. v. Department of Energy, 617 F. 2d 854, 866 (D.C. Cir. 1980).

There are two essential requirements for the application of the privilege: the information must be pre-decisional and must be deliberative. In re Sealed Case, 121 F. 3d 729, 238 (D.C. Cir. 1997) finds its reasoning in the purpose of the privilege, it exists to ensure that the fear of public scrutiny does not affect the quality of a decision of public policy. Therefore, it is not necessary to protect the communications that arise after the decision is taken. N.L.R.B. v. Sears Roebuck & Co., 421 US 132, 151-152 (1975). It is also not necessary to protect a communication that only has data and not opinions because it is precisely the integrity of the opinion that one seeks to protect. In re Sealed Case, supra, page 737.

The privilege of the governor's communications is at the same time broader than the deliberative-process privilege and more limited as to who it applies to. The referenced privilege applies not only to deliberative communications but also to pre-deliberative and post-decisional communications. Warnock, supra, page 990. However, the privilege only applies to the communications that involve counseling to the high executive. In particular, the Court of Appeals of the United States for the Circuit of the District of Columbia has stated that "of course the privilege only applies to the communications that these advisers [of the White House] and its subordinates have or request and receive in the course of complying with their *133 obligation to advise the President in official matters of the government." In re Sealed Case, supra, page 752 [4]

To evaluate if any of the privileges alleged in this case applies, it is necessary to examine the process of drafting the budget for which the claim to access of information arose.

III.

June 30, 2016, marked a setback in the democratic progress of our political community. That day, the President of the United States of America signed the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA, for its English acronym). 48 USC sec. 2101 et seq. In view of the economic and fiscal debacle that we faced and still face, a relief-any relief-was necessary. In view of this crisis the government of the United States bet to sharpen our incapacity of steering the future that lastly, is ours to live. Time will tell the story and adjudicate responsibilities.

The details of the new governmental structure that the Law PROMESA created affect this case. As Judge Flores-Garcia of the Court of Appeals recently described, the Law PROMESA created a *134 new model of political organization and a sui generis legal framework. Palacios Revera v. ELA KLAN 201700183 (July 31, 2017) (Flores Garcia, J. concurrent vote)

Historically, the Constitution of the Commonwealth of Puerto Rico has guaranteed a republican system of government with three powers equally subordinated to the sovereignty of the people of Puerto Rico: the Executive Branch, the Legislative Branch and the Judicial Branch. Art. I Sec. 2 Const. ELA, LPRA, Tome 1. We have repeatedly emphasized that the principle of the separation of powers framed therein-of which we are zealous guardians-seeks to avoid the unmeasured concentration of power

---

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

in only one political organism, therefore protecting the liberty of our citizens upon a tyrannical entity. See: Cordova et als v. Camara de Representantes, 171 DPR 789, 799 (2007); Colon Cortes v. Pesquera, 150 DPR 724, 752 (2000); Pueblo v. Santiago Feliciano, 139 DPR 361, 419-420 (1995).

Currently, the Law PROMESA has placed in question the republican character of the Commonwealth of Puerto Rico [5] To manage the fiscal situation of the government, the law established a Financial Oversight and Management Board for Puerto Rico (Board). The Board per its own originating law, was created as an entity belonging to the Commonwealth. [6]
And not as an organism of the Federal Government. 48 USC sec. 2121(c). However, it is difficult, upon reading the provisions of PROMESA, to consider the Board as an entity of the Commonwealth. *135

Every public entity of the Commonwealth has a place defined in our constitutional scheme; with limited powers and counterbalances; not so for the Board. It is protected against any action of the Governor or of the Legislator that seeks to exert supervision or regulation of its structure and its activities. 48 USC sec. 2128. Also, it is out of the scope of our courts, any action against it must be filed in a federal court. 48 USC sec. 2126. Concretely, PROMESA has instituted a super branch of government that legally belongs to the Commonwealth but without the will of the people [being] the source {of its] public power". Preamble, Const. ELA, LPRA, Tome 1, ed. 2016, page 269. [7]

In pertinent part, Law PROMESA gives a central role to the Board in the process of drafting the budget of the Commonwealth. The law gives "full discretion" to the Board to establish a calendar for the development of the budget of the Commonwealth for the upcoming fiscal year. 48 USC sec. 2142. Pursuant to PROMESA, all the budgets approved in Puerto Rico must substantially comply with the provisions of the Fiscal Plan approved by the Board. Upon the presentation of a proposed budget on the part of the Executive, the Board can accept it and certify that it is in compliance with the Fiscal Plan, after which it would send it to the Legislature, or issue a notice of breach and demand corrective measures. #Id.[8] *136

And that is how it happened. On March 15, 2017, the Board sent a letter to the Governor and the leaders of the Legislative Assembly in which it established April 30, 2017 as the deadline for the presentation of the proposed budget on the part of the Executive. Financial Oversight and Management Board, Letter to Governor Rossello with the Final Certification of the Government of Puerto Rico Fiscal Plan, March 15, 2017. Later on March 22, 2017, the Board imposed a series of dates to regulate the complete process of drafting of the budget. In this letter March 31, was established as the last day for the Governor to implement corrective measures if necessary and hand a proposed budget in compliance with the Fiscal Plan. Financial Oversight and Management Board, Letter to Governor Rossello Regarding the Government of Puerto Rico Budget Timeline, March 22, 2017.

Once the Governor's proposed project was received through a letter dated May 8, 2017, the Board gave the Governor fourteen additional days to amend the budget before making a decision of whether to issue a notice of breach. Financial Oversight and Management Board, Letter to the Governor, Presidents of the Senate and House of Representatives Regarding the Budget, May 8, 2017. Finally on June 2, 2017, after extensive discussions about the proposed budget of the Governor the Board finally

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

presented it to the Legislature. Financial Oversight and Management Board, Letter to Governor Rossello, Presidents of the Senate and House of Representatives Regarding the FY2018 Budget, June 2, 2017.[9] *137

IV

On May 4, 2017, Senator Bhatia Gautier filed a petition with the Court of First Instance for the Commonwealth of Puerto Rico to send him a copy of the proposed project presented to the Board on April 30, 2017. Among the arguments in opposition to the request, the Governor invoked the communications privilege of the governor and the deliberative-process privilege.

Evaluating the process in which the Governor Rossello-Nevares presented its proposed budget to the Board we have a clearer image of the stage in which senator Bhatia Gautier made his request. The Governor presented its proposed project not merely to another agency of the government but to an entity that is totally independent of the authority of the Governor. With difficulty we could then place the proposed budget in the communications that the advisors of the Governor have in the course of complying with their duty to advise him in official matters of government. When the proposed budget left Fortaleza on April 30, 2017 it lost the protection it had pursuant to the governor's communications privilege.

Secondly, once the proposed project was presented to the Board, and after making the corresponding analysis- it could certify that it was in compliance with the Fiscal Plan and send it to the Legislative Assembly for consideration and eventual approval. In other words, according to the provisions of the Law PROMESA, the Governor knew that the document presented on April *138 30, could have been the budget of the Commonwealth if the Board validated it, and afterwards, the

Legislative Assembly approved it. Therefore, the proposed budget sent to the Financial Oversight and Management Board on April 30, 2017 is not merely a deliberative exercise but it represented a concrete decision of public policy as to how to distribute the funds available in the treasury of the State for the upcoming fiscal year. Therefore, upon examining the process of drafting the very document in question, we can conclude that the deliberative-process privilege is not applicable to it, namely, the details of the distribution of public funds.

Even so, the lower court acted according to decades of case law norms as to the right to access public information by ordering the in camera examination of the proposed budget. While we can deduce that the proposed budget is mainly not protected by the alleged privileges we do not have any knowledge about the totality of the content of the document delivered to the Board. It is entirely possible that it has for example, memorandums to which indeed a privilege could apply to. This is the benefit of the in camera review. It allows the trier of facts to exercise its constitutional duty of determining exactly what part of a document is protected by a privilege. Because of this, this was the appropriate course that had to be followed in this case.

However, without much explanation to base its decision a majority of this Court concludes that it was not adequate to order an in camera review because "it is sufficient to examine the proposed final budget to know what the document in dispute consists of." Immediately after, it held that the lower court should have ordered the parties to submit memorandums of law to evaluate if the document was public or not. The course of action taken by the majority is problematic for a number of reasons. *139

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

First, as we related, we do not know what was included in the document of the proposed budget that the Governor submitted to the Board. It is possible that he included other things outside of the itemization of the distribution of public funds for the upcoming fiscal year. We know, however, that it is not the final proposed budget because if it were, the State would not be opposing so vehemently to the disclosure of a document that was already published. Therefore, the review of the final budget is not enough to evaluate the nature of the requested document.

Second, preventing an in camera review of the document is, paraphrasing the Pres. Of the Senate, supra, page 805, allowing the Executive itself to be absolute an final arbitrator of what is privileged matter. If the trier of facts is prevented from examining the document to evaluate its nature, must he then fully trust the representations made by the State about its content? Saying yes, as it appears the majority has said, has the effect of emasculating the Judicial Power and submitting it to the orders of a First Executive. That is contrary to the most basic norms of balance and checks and confers an absolute power to the party that opposes the publication of a document to control the process.

Third, by observing that the judge of the court of first instance should have requested memorandums of law about the nature of the document, the Court is telling the lower court to do something that it already ordered. On July 17, 2017, the court of first instance ordered that prior to the argumentative hearing scheduled for July 26, 2017, the parties supplement their positions as to various matters. Among them both parties were ordered to come prepared to argue about the nature of the information requested and the application of the executive privilege".

Appendix, page 233. On July 21, 2017, the parties filed their briefs in compliance with the order *140 in which they stated their positions. #Id. Having held the argumentative hearing and discussed the alleged privileges and the nature of the document in question, the lower court concluded that "upon questions of the Court and pursuant to the applicable case law, the defendant did not detail in any way why the information requested qualifies for the application of the executive privilege". Appendix page 235. Also, the Executive, "did not establish in this moment in detail why the disclosure of the Proposed Budget presented to the Board is not appropriate". #Id. The judge of first instance so stated in the Decision and Order which the Governor appeals. The breach of the Governor with the corresponding burden of proof was sufficient motive to reject the privilege claimed on its face.

However, the judge of first instance ordered that, along with the presentation of the document for an in camera review, the defendant submitted "a motion explaining in detail the reasons for which the information requested or part of it, qualifies for the application of the privilege claimed". (Emphasis provided) Appendix page 235. In other words, it gave them a second chance.

All the foregoing shows that the lower court clearly allowed the parties to argue about the nature of the document requested and evaluated the arguments in favor and against applying the claimed privilege prior to making its decision. Therefore, there is no reason to continue litigating a matter of law when the parties already had ample opportunity to express themselves in that regard.

Ordering the filing of additional memorandums- a third opportunity-does little to quickly and diligently resolve matters

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

of this nature. And it is revealed, more than anything, as an attempt of micromanaging from our offices the matters of the courts of first instance. In the end, where is the abuse of discretion of the judge of first instance upon ordering: the in-camera inspection along *141 with additional memorandums of law, where the State will have a new opportunity to correct the deficiencies of its original argument.

I don't want to think that the unarticulated position of the majority is that, once a confidentiality claim is made by the State, the Judicial Power is not allowed to see the document to evaluate the veracity or correction of the claim. That supposes a total give away of our power to the feet of the Executive Power. At least, at the feet of this Executive. Will this majority in the future hold the same deference and generosity when the First Executive is not the same? Only time will tell.

In sum, let us remember that the crisis in Puerto Rico is also of credibility. To overcome it, it is necessary to promote a culture in which every public servant sees him/herself as guarantor of the fundamental rights of the citizens. The written law is not worth much if we do not live it day by day. It is worth very little to shout to the sky the transparency to then, at the moment this is demanded from the government move towards lack of transparency invested by the procedural delays. What are they hiding? What do they fear?

-------------------------------O--------------------
Dissident Opinion issued by the Associate Justice Mr. Estrella-Martinez

In times when it is necessary to strengthen the access to the information, that constitutional guaranty is unnecessarily diluted and the tools that the citizens have to access public documents are weakened. Therefore, again I

dissent from the course of action taken by this Court in this controversy. This time, I am not in agreement with the process or the result reached by a majority of this Court. As they are aware that as a matter of law, they cannot grant *142 none of the remedies that the Government of Puerto Rico (Government) asked for, they opt to give another opportunity to the State, despite that the procedural tract reveals the multiple failed opportunities that this party has had.

In this, unfortunately it decides to limit the resources that the Court of First Instance has to decide the case pursuant to the law in a claim of information of high public interest. That is, the judicial role of the primary forum is restricted, preventing it from making an in camera inspection of the document in controversy, as part of the tools that simultaneously could be used to decide if any privilege applies. With that, the concession of the adequate, complete and timely remedies is diminished. As an aggravator, the lower court is directed to act blindly delaying the procedures and establishing pre-directed mechanisms about the course of action that the lower court will follow. Because of this I dissent.

This case originated on May 2, 2017 when the Hon., Eduardo Bhatia-Gautier, (senator Bhatia or appellee) spokesperson of the minority of the Popular Democratic Party in the Senate of Puerto Rico asked the governor of Puerto Rico, Hon. Ricardo Rossello Nevares (Governor) in writing to make public the Proposed Budget of the fiscal year 2017-2017 presented on April 30, 2017 to the Financial Oversight and Management Board for Puerto Rico (Board) *143[1]

Upon not receiving the information requested, on May 4, 2017, Senator Bhatia presented a mandamus petition in the Court of First Instance against the Governor and the



Government (jointly, the petitioners). In it he requested that the publication of the Proposed Budget be published and that it be made available to the public. He based its request in that the information requested is public and of high public interest for the Puerto Rican people. He also argued that the information is necessary to keep the citizens informed about governmental matters and the process of supervision. Also, he stated that it is of great importance for the Legislative Assembly to make the corresponding analysis in the approval process of the Budget. Also he argued that the information is not protected by any privilege and that it is not confidential; that it is also not protected by any exception of the right to access the information. On the contrary, he alleged that the refusal to publish the information lacerates such right of citizens and the right to be informed.

Consequently, on May 4, 2017, the lower court issued an order in which it ordered petitioner to answer in a term of five (5) days. After various procedural actions, [2] the petitioners filed an Urgent Motion Reiterating Dismissal, in which they argued, essentially, that the Proposed Project is a work document, namely, a draft, protected by the executive privilege, that the request should have been made through the mechanisms provided in the Regulation of the Senate; that Senator Bhatia has no standing and that the request is moot. Also, they claimed that the writ presented would make the Judicial Branch intervene inappropriately *144 with the duties of the Executive and Legislative Branches, in violation of the separation of powers. As to the executive privilege, they specifically held that "the draft of the Proposed Project presented to the Board was a work document, namely a draft in deliberative stage which was going through the channels established by PROMESA, being the final document of the executive the one given to the Legislative

Bodies". Certiorari Petition, Attachment VIII, Urgent motion reiterating dismissal, page 68. Also, they stated the following:

This case meets [all] the requirements of [the executive privilege] as it is the Governor who invokes the privilege of what would constitute a draft under his evaluation and in the stage the petition was filed the deliberative process to allow it to be considered as Proposed Budget had not been concluded. However, having that pre-decisional and pre-deliberative process concluded, the Proposed Budget was presented to the Legislative Bodies and was extensively disclosed. #Id. Page 70.

On his part, senator Bhatia filed an opposition to the dismissal. He stated that the Governor has the ministerial duty of disclosing the public documents. In view of this he argued that the Proposed Budget presented to the Board must be published as it is a public document created by the Executive Branch. By not doing so, the Government affects its legislative prerogatives. Also, he affirmed that his constitutional right to access the information was affected in view of the Governor's refusal to provide the Proposed Budget. As to the application of the executive privilege, he said that the petitioners did not comply with the responsibility of establishing that it applies. On the contrary he stated that the document is not internal, preparatory or pre-decisional. As to the standing, the appellee mentioned that he possesses it as legislator and as holder of the right to access the information. He argued that he intends to vindicate his legislative prerogatives and the constitutional *145 right to access public information that he and all citizens have.

On the other hand, he refuted the mootness allegations. He specifically stated, that the State did not credit that the document given

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

to the Board was the same that was presented to the Legislative Assembly. He also stated, that the controversy is susceptible of repeating itself and evading judicial revision. Also, he opposed the allegation that he did not exhaust the regulatory and statutory mechanisms as such procedures are parliamentary and inapplicable when a violation to the constitutional right of access to the information is alleged.

Therefore, the Court of First Instance took notice that the Budget of the fiscal year 2017-2018 was approved, therefore, it ordered the appellee to state why the mandamus had not become moot and if he had standing under the understanding that there was a real injury to his legislative prerogatives. Also, he was required to confirm the exhaustion of all the remedies at his disposal. As to the petitioners, it ordered them to state if the information requested was already disclosed. Also it scheduled an argumentative hearing in which both parties had to discuss whether the information requested is public and if the executive privilege applied. Lastly, it advised the parties that they could request the information required to be inspected in camera to determine if the privilege applied.

As ordered, both parties filed their briefs[3]. On his part senator Bhatia reproduced his arguments regarding mootness and added that the approval of the Budget added to the materialization of the damage suffered by the continuous privation of access to the information. The same way, he affirmed that the refusal of the Government does not allow him to supervise and make an analysis of the *146 fiscal public policy implemented by the Governor. This, as the referenced work is carried out during the whole fiscal year. Also, he stated that the right claimed is only satisfied with the disclosure of the document. Regarding the standing and the requirement of exhausting remedies, he reaffirmed his

arguments and added that he didn't expect to transfer the political debate to the judicial forum. He stated that only the Judicial Power has the faculty to adjudicate the public nature of the document requested and issue a binding decree about the applicability of the executive privilege. Finally, he stated that the Government did not certify that the document presented to the Board is the same presented to the Legislative Assembly and that it has not provided the grounds for the application of the executive privilege.

On the other hand, the petitioners appeared and reiterated their allegations that the appellee did not have standing as he has not suffered a damage to his legislative prerogatives. Also, they argued that the case is moot because the budget was approved. As to the order of lower court, of stating if the information was disclosed, they alleged that the draft had not been made public because it was a work document for the Board to review and return to the Governor, who had to submit it to the Legislative Assembly. On the other hand, they argued that the appellee had to follow the legislative procedures to which he was obligated. By not following them, he did not have standing to appear before the judicial forums.

Regarding the executive privilege, and aside from what is stated in the motion to dismiss, the petitioners stated that "the document requested by plaintiff is not a 'public document. What was requested was the draft or work document prepared by the Executive as part of its deliberation stage. Therefore, its disclosure pursuant to the executive privilege is not appropriate." Certiorari petition, Attachment XIII, Motion in *147 compliance with order, page 156. Also, they based their allegation of what constitutes an executive privilege as follows:

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

The initial draft handed to the Board clearly was a work document subject to changes, that is, a draft in deliberative stage that was going through the channels established by PROMESA and which is protected by the executive privilege. Plaintiff had and has the right to request and examine the final version that the Executive handed to the Legislative Bodies. In use of this right, plaintiff examined and used his legislative prerogative by issuing his vote. #Id.

Not in agreement, they also argued as follows:

The proposed budget requested by plaintiff was presented to the Financial Oversight Board as part of a deliberation or stage of formulation of public policy in that the governmental officers appointed to work the budget and the Board-that pursuant to PROMESA is an entity within the Government-evaluated and modified it in order to obtain the final proposed budget that was submitted to the Legislature. #Id. Page 159.

After their respective positions were presented in writing, on July 26, 2017 an argumentative hearing took place. At the beginning the lower court decided that the appellee had standing and the controversy had not turned moot. Therefore, it stated that at the hearing it would only discuss the nature of the information and if the executive privilege applied. To questions of the Court, the petitioners reaffirmed that the document is not public, as it is a draft or work document prepared by the Executive as part of a deliberative stage for the development of public policy. Also, they notified that the document was protected by the executive, because it has work of the advisers of the Governor. On his part, Senator Bhatia argued that he only requests the Proposed Budget, that is, the numbers, amounts or items of assigned funds. Not the support documentation, recommendations, decisions or expressions of the personnel and the advisers of the Government. See, Certiorari Petition, Attachments XV-Xvi, pages 231-235. Also it reaffirmed that the petitioners did not credit which opinions or analysis the Proposed Project has that make it a deliberative document.

Once the hearing was finalized, the lower forum concluded that the Government did not manage to put the Court in position to determine that the executive privilege applies. Therefore it ordered to present in ten days the Proposed Project in a sealed envelope to be evaluated in camera. Also, it gave it a new opportunity to file another motion explaining in detail the reasons for which the information requested is privileged, as it is a deliberative process or of formulation of public policy. [4]

Not in agreement with such decision, the petitioners appeared before the Court of Appeals via a certiorari petition and a motion in aid of jurisdiction. There they requested that the stay of the proceedings and the suspension of the order of the Court of First Instance. Secondly, they alleged that the issuance of the writ was appropriate and to reverse the lower court by dismissing the action. For this, they argued that such court erred when reasoning that senator Bhatia had standing, the case was not moot and not dismissing the petition, despite that it was not appropriate *149 in law. That same day, the appellate intermediate court issued an order denying the issuance of the writ.

In disagreement, the petitioners appear before us via a certiorari petition and a motion in aid of jurisdiction. In essence they reproduce the same statements of error alleged before the Court of Appeals. In view of this, a majority of this Court ordered the

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

stay of the proceedings until provided otherwise. Consequently, I dissented and anticipated the impossibility of granting the remedies requested by the Government by stating the following:

"Associate Justice Mr. Estrella Martinez dissents from the course of action followed by a majority of this court. In its place, it would deny the Urgent Motion in Aid of Jurisdiction and the Certiorari Petition filed by the Government of Puerto Rico. This because he considers that in this case we are not upon a request for privileged information that includes recommendations, consultations, decisions or statements from the Governor or his support group or advisers related to the deliberative process for the preparation of the Proposed Budget. Rather, it requires that the document itself of the Proposed Budget be disclosed and published as presented to the Financial Oversight and Management Board for Puerto Rico (Board). The Government of Puerto Rico has not shown to have an urgent interest to justify the non-disclosure of this document.

Regarding this particular, it should be noted that the Board has even published in a press release the notification of its analysis as to the Proposed Budget object of this controversy Therefore, I see no reason to prevent giving the same access to the Proposed Budget pursuant to the right to public information. At the end of the day, what good would it do to publish the notification of the Board that informs if the Proposed Project is in compliance or not with the Fiscal Plan, if access to the Proposed Budget will be denied".

In view of this factual and procedural background, I proceed to state the applicable law in which I base my dissent. *150.

II

A. As we know, in Puerto Rico we have recognized in countless occasions the faculty of access to the information as a right and bound to the freedom of speech, press and association, per Article II Section 4 of our Constitution, LPRA Tome 1. See Trans Ad de P.R. v. Junta de Subastas, 174 DPR 56, 67 (2008). Its objective is to ensure and facilitate to all citizens the right to examine the content of the files, reports and documents gathered in the government duties, and that in the agencies of the State. Ortiz v. Dir. Adm. De los Tribunales, 152 DPR 161, 175 (2000). Its foundation is the right that every person has to know, a pillar of a democratic society. E. Rivera Ramos, La libertad de informción: necesidad de su reglamentación en Puerto Rico, 44 (Nos. 1-2) Rev. Jur UPR 67, 68 (1975).

At the same time, it guarantees the right of free discussion of the matters of government. Ortiz v. Dir. Adm. De los Tribunales, supra, page 175. And it is that "in a society that governs itself, it is necessary to recognize to the common citizen 'the legal right of examining and investigating how their matters, are conducted, subject only to those limitations that the most urgent public need imposes. "#Id. Citing Soto v. Srio de Justicia, 112 PR 477, 485 (1982). If it is not known how the public duties are being conducted, it is not possible to have a full freedom of speech of the ideas of the government. #Id. See also, Lopez Vives v. Policia de PR, 118 DPR 219, 227-228 (1987).

Statutorily, in Puerto Rico we have various provisions that are related to the access to information. Article 409 of the Code of Civil Procedure, which establishes the right to inspect and copy public documents, highlights the following, namely: "Every citizen has the right to inspect and photocopy any public document in Puerto Rico, except

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

what is expressly *151 provided to the contrary by law."32 LPRA sec. 1781. On its part, there are other provisions that define what a public document is. Article 1170 of the Puerto Rico Civil Code is limited to recognizing that "public documents are those authorized by a notary or competent public employee, with the formalities required by law."31 LPRA sec. 3271. In pertinent part, the Law for the Administration of Public Documents of Puerto Rico, Law No. 5 of December 8, 1955, as amended, 3 LPRA sec. 1001(b) defines public document as follows:

It is every document originated, kept or received in any department of the Commonwealth of Puerto Rico in accordance with the law or regarding the management of public matters and that in accordance to what is provided in [Article 4 of this law (3 LPRA sec. 1002)] is permanently or temporarily kept as proof of the transactions or for its legal value. Includes the documents electronically produced that meet the requirements established by the laws and regulations.

Jurisprudentially, the development of the right to access the information dates back to the middle of the XX century when we determined that to claim the right to inspect a document it does not have to be expressly in the law; it suffices that the plaintiff has that right. Prensa Insular de P.R. v. Cordero Auditor, 67 DPR 89 (1947). Afterwards, we concluded that the only justification for a citizen not to have access to a public document is that a law expressly provides so. Davila v. Superintendente de Eleccoines, 82 DPR 264 (1960).

Finally, it was in Soto v. Srio de Justicia, 112 DPR 477 (1982) where we acknowledge that the right to access information is of a constitutional nature, placing it as an implicit constitutional right. We emphasized that

there is a close relationship between freedom of speech and the right to information because knowledge is a *152 necessary condition of a democratic system. #Id, page 485. However, we stated that such right is not absolute or unlimited.

In view of this decision, there has been a gradual development on this right. We have established that the first step is to determine if the information is public. Colon Cabrera v. Caribbean Petroleum, 170 DPR 582, 589 (2007). And it is that the access to the information is only circumscribed to what is public. Trans AD. De P.R. v. Junta de Subastas, supra, page 69.

Also, we have stated that any claim of confidentiality must be justified with an urgent interest that is not to put limits on the freedom of speech. Our statements in Colon Cabrera c. Caribbean Petroleum, supra, page 590, where we highlight that "the State cannot capriciously refuse and arbitrarily allow access". This because "every citizen has the right to inspect any public document, the act of refusing access, in itself, causes the requesting party a clear, palpable and real damage". Ortiz v. Dir. Adm. De los Tribunales, supra, page 177. When the Government unjustifiably denies access to the information it injures the fundamental right of being informed, which grants standing to question the validity of that governmental action. #ID.

However, there are exceptional circumstances in which these rights may yield due to public interest and the confidentiality of the information is justified. Trans Ad de P.R. v. Junta de Subastas, supra, page 68. Pursuantto the foregoing, the case law is clear in that such claim for confidentiality of the Government should only prosper as an exception, as follows: (1) when a law so declares; (2) when the

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

communication is protected by some evidentiary privilege that the citizens may invoke, Sierra v. Tribunal Superior, 81 DPR 554 (1959) ; (3) if revealing the information *152 can affect the fundamental rights of third parties, ELA v. PR Tel. CO, 114 DPR 394 (1983); (4) if it is a confidante, according to Rule 515 of Evidence of 2009 and (5) if it is confidential information, according to Rule 514 of Evidence of 2009, See Colon Cabrera v. Caribbean Petroleum, supra, page 591.

Pursuant to these principles, the judicial review to which any claim of confidentiality of public documents and information shall be subject to will depend on the exception invoked by the State vis a vis the request for information. Nieves v. Junta, 160 DPR 97, 104 (2003). See also, Ortiz v. Dir. Adm. De los Tribunales, supra, page 178; Anguera v. JLBP, 150 DPR 10, 24 (2000). Between these two rights we have recognized that hte balance must incline in favor of the claimant of the request and against the privilege. Nieves v. Junta, supra; Lopez Vives v. Policia de PR, supra, page 233. That is "the balance must incline towards a greater recognition of the right to the information" A.M. Lopez Perez, El privilegio ejectuvio frente al derecho a la informacion publica, 34 (Nos. 2-3) Rev. Der. Pur. 345, 359 (1994) Pur. 345, 359 (1994).

Unfortunately, a majority of this Court expects to ignore this ingrained case law line and with that, it does not strengthen the right to the information or sets clear norms so that the power of the State is not disproportionate in the face of claims to access to public documents. On the contrary, what this Court does is to remove tools to the trier, and therefore, to the People to completely address both interests, taking the opportunity to perform an in camera inspection.

B. On the international level, the right to access the information has been acknowledged in different aspects. In the first place, in the International Pact of Civil and Political Rights it is established, in pertinent part, that: *154

Every person has the right to freedom of speech; this right includes the liberty to seek, receive, and diffuse information and ideas of every kind, without consideration of boundaries, orally, in writing or in print, or artistically or by any other procedure of their choice. (Emphasis provided). International Pact of Civil and Political Rights. A.G. Res. 2200 (XXI) N.U. Doc. A/RES/2200 (XXI) (December 16, 1966), http://www.un.org/es/comun/docs/?symbol=A/RES/2200(XXI) & Lang=S&Area=RESOLUTION.

On its part, the General Assembly of the Organization of United Nations (ONU) approved Resolution 59(I) and celebrated the International Conference of Freedom of Infromation, Convocacion de una conferencia internacional de libertad de información, A.G. Res. 59(I), N.U. Doc. A/RES/59 (I) (December 14, 1946), http://www.un.org/es/comun/docs/?symbol=A/RES/59(I). In it, despite not being binding, important criteria were agreed for the acknowledgement of this right. As for example, that the freedom of information is a fundamental human right, which implies to gather, transmit and publish news without restrictions, and that requires control of not abusing the use of the information. With greater relevance, the same recognition was achieved in the right to freedom of opinion, included in Article 19 of the Universal Declaration of Man's Rights, A.G. Res. 217 (III) A, N.U,. Doc. A/RES/217 (III) (December 10, 1948), http://www.un.org/es/comun/docs/?symbol=A/RES/217 (III). Finally in 2003, the General

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

Assembly of the Organization of the American States (OEA for its Spanish Acronym) acknowledged the importance of the access to public information and reaffirmed the declaration of Article 13 of the American Convention, as to that everyone has the liberty to procure, receive and disseminate information. *155

III

The executive privilege, in its specific form, is used in reference to confidential communications of the First Executive to its advisers. E.L. Chiesa Aponte, Tratado de derecho probatorio: Reglas de Evidencia de Puerto Rico y federal, Dominican Republic, Ed. Corripio, [s., year] T.I. page 296. In its most general conception, and the most used in Puerto Rico, it refers to the general privilege of official information. #I. It is because of it that it is defined as "the prerogative of the Executive or its representatives to retain and prevent the disclosure of information that has been formally requested in the course of a legislative investigation, a judicial procedure or a citizen's petition." Lopez Perez, supra, page 347. Its foundation is that an extensive dissemination of the matters of government could affect its operation and put national security at risk. #Id. Page 345.

In the United States, the federal Supreme Court in United States v. Nixon, 418 US 683 (1974) for the first time validated and defined the scope of the executive privilege. Specifically it accepted the privilege within the constitutional context of the doctrine of separation of powers. With it, the First Executive can refuse to disclose information that he determines is confidential. That "guarantees the free flow of ideas in the process of the decision of public policy of the executive branch". R. Emmanuelli Jimnez, Prontuario de Derecho probatorio Puertorriqueno, 3rd ed., San Juan, Eds, Situm,

2010, page 316. However, the privilege is qualified and depends on the interests involved. #ID.

Also, in Puerto Rico this privilege was incorporated as part of the doctrine of separation of powers included in our Constitution. See: Art I, Sec. 2 and Art. IV, Secs. 1 and 4, Const. ELA, LPRA tome 1. In that regard, *156 this Court in Peña Clos v. Cartagena Ortiz, 114 DPR 576 (1983) stated that the executive privilege, pursuant to the federal case law is not absolute. Thus we also reaffirm that the courts must establish through an adequate balance, the limits and boundaries of the privilege with the other interests. #Id. Page 598.

Currently, various instances have been recognized in which the Executive Power can claim the executive privilege. In the case of United States v. Nixon, supra, the federal Supreme Court established the following cases: (1) for the protection of the communications between the First Executive, its advisers, assistants and other officers that advise and assist in the development and formulation of public policy; (2) protect the information that the doctrine of separation of powers justifies that cannot be analyzed by the Judicial Power, and (3) protect the military, diplomatic information or national security secrets. Aside from these instances, the extent of the doctrine is recognized in "information related to individuals who are or have been subject to civil, criminal or administrative investigations of the agents, informants, or officers related to those investigations". Lopez Perez, op cit, pages 353-354.

On the other hand, the treatise writers have affirmed that the executive privilege operates in two aspects. The first is to protect the deliberative process that the Executive Branch does in the making of the decisions.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

With it, the access to the documents or communications that are opinions or recommendations about the process of making public policy decisions is limited. It has the objective that public officers have the liberty to have an extensive and frank discussion during the process of making decisions without the pressure that they will be disclosed. Pursuant to the foregoing, the first characteristic of this aspect is that the information must be from a pre-decisional process. That is based *157 on the fact that the quality of the decisions should not be affected by the disclosure. Also, it has been said that pre-decisional information that already forms part of the final decision can lose its privilege as it does not affect the making of decisions. M.W. Warnock, Stifling Gubernatorial Secrecy: application of Executive Privilege to State Executive Officials, 35 Cap. U.L. Rev. 983, 987 (2007).

The second characteristic of the executive privilege in its deliberative aspect is that, in effect, it is material of deliberative nature. That means that it is a direct part of the deliberative process, as it provides recommendations and opinions about judicial or normative matters. Consequently purely factual matters are not considered privileged information unless it is inextricably bound to the deliberative process. Warnock, supra, page 988.

On the other hand, the second aspect of the executive privilege protects the executive communications. It avoids the publication of documents and communications directly related to the decisions of the First Executive. Its scope is greater as it includes even the final documents and the post-decisional material. Warnock, supra.

Regarding the expectation of confidentiality that the Executive Power has it has even mentioned that it exists in the following

matters: conversations between the Governor and his assistants, internal documents of the agencies, interagency memorandums, the medical files and of the personnel and the files of civil, criminal and administrative investigations, conducted by security agencies. Lopez Perez, supra, page 359.

B. Despite that the executive privilege is not expressly established in the United States Constitution or of Puerto Rico it does have constitutional grounds. Pursuant to this, this Court has provided that, in regards to privileged matters, the *158 privileges established in the Rules of Evidence would have to be examined. ELA v. Casta, 162 DPR 1, 10 (2004). Particularly in regards to the controversy before us, we must refer to the privilege about official information. This because without an integral statute that regulates the request for information we must examine this privilege as a complement. Angueira v. J. L.B. P. supra. Also, it is one of the cases recognized in Colon Cabrera v. Caribbean Petroleum, supra, as an exception to the right to access the information. Rule 514 of Evidence of 2009, provides the following:

(a) As used in this rule "official information" means that which is acquired in confidence by one person that is a public official or employee in the performance of their duty and that has not been officially revealed nor is accessible to the public until the time the privilege is claimed.

(b) A person that is a public official or employee has the privilege of not disclosing a matter because it

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

is official information. No evidence will be admitted of it if the court concludes that the matter is official information and its disclosure is forbidden by law, or divulging the information in the action would be prejudicial to the interests of the government. 32 LPRA Ap. IV 32 LPRA Ap. IV.

This privilege is based in the need of the government to keep certain information confidential that leads to the good performance of its responsibilities and the different problems of the country can be addressed. Chiesa Aponte, Tratado de derecho probatorio, op cit. page 292. As such the privilege is acknowledged in the disclosure of information were prejudicial to the interests of the government and the degree of prejudice is greater compared to the one suffered by the claimant. #Id. Page 308. However, such interest must be balanced with the constitutional access to the information. E.L. Chiesa Aponte, Reglas de Evidencia comentadas, Eds. SITUM, 2016, page 164. The possessor of the privilege is the State. #Id. "Therefore, the privilege just expects to protect documents which disclosure is *159 contrary to the best interests of the government and not the interests of the executive official". E.L. Chiesa Aponte, Practica procesal puertorriqueña, San Juan, Pubs, JTS, 1984, Vol. I, page 140. That is, the privilege is for the benefit of the people and not for the official that claims it. See, for example, Hamilton v. Verdow, 287 Md. 544, 414 A. 2d 914, 10 A.L.R. 4th 333 (1980).

When interpreting Rule 31 of Evidence of 1979 which is essentially identical to the current one, we state that "the courts must be careful in granting any request for confidentiality from the State, which must show precisely and unequivocally the

applicability of the aforementioned exception". (Emphasis in the original) ELA v. Casta, supra, page 11. Also we were emphatic in stating that "today the secrecy in public matters is the exception and not the norm: Santiago v. Bobb y El Mundo Inc., 117 DPR 153, 159 (1986). An allegation of a public privilege and without support in adequate legislation must be examined in detail so that the absence weakens the claim of confidentiality. Pena Clos v. Cartagena Ortiz, supra, page 599. The case law regarding the privilege has been unfavorable to its acknowledgement. This because of the primacy of the constitutional right to access to information. Chiesa Aponte, Reglas de Evidencia comentadas, supra, page 166.

In view of this, we reaffirm that the Government has to make a great effort to try to present evidence that shows the existence of the interests of greater hierarchy than the values protected by the freedom of information of the citizens. ELA v. Casta, supra, page 12. For such exercise, the courts must evaluate if the information or documents required affect the faculties of the Executive Branch. * 160

IV

On the other hand, generally it is not favored for the courts to perform "an in camera review of the documents that the State alleges are privileged before determining if the position of the State refusing to discover the pertinent information shall prevail or not. Chiesa Aponte Practica procesal puertorriqueña, op cit. pages 140-141.

At the federal level, the need for in camera inspection of the documents requested has been recognized when the executive privilege is claimed. See: United States v. Nixon, supra; Black v Sheraton Corp, of America, 564, F. 2d 531 (Cir. DC 1977); Soucie David, 448 . 2d 1067 (Cir. C 1971).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

For this it has been held that the referenced inspection avoids the unnecessary disclosure of the privileged information. In re Sealed Case, 121 F. 3d 729 (Cir. DC 1997). The courts are a filter for the request made by the citizens of the public information and the confidentiality of the information claimed by the State. H.A. Vera Rodriguez y E. Ruiz Santana, El derecho a la informacion de los ciudadanos como un instrumento de transparencia gubernamental en Puerto Rico: una agenda inconclusa, 50 (No. 2) Rev. Der. Pur. 265, 268 (2011) Pur. 265, 269 (2011).

Professor Chiesa, upon examining the federal case law makes an important distinction: when a privilege is claimed it must be examined in camera. Specifically, when analyzing the decision of United States v. Reynolds, 345 US 1, (1953) he stated that when the privilege is so strong, like for national security, the review cannot be performed in camera. Chiesa Aponte, Tratado de derecho probatorio, op cit. page 290. This is not the same when what is requested is official information. Here there is the usual discretion of examining it and even issue protective orders. #Id., page 297. Both resources are recognized as measures to adjudicate controversies. On the contrary, if the inspection is not allowed, it would be sufficient for the *161 Government to claim the need to keep the information secret so the information cannot be disclosed. Chiesa Aponte, Practica procesal puertorriquena, op cit. page 140. Note that the plaintiff is at a disadvantage, as in occasions the plaintiff does not know the nature of the document, therefore does not have the capacity of pleading with adequate legal precision so the information is disclosed. In view of this imbalance is that the in camera inspection is available.

See Islamic Shura Council of Southern Cal v. F.B.I. 635 F. 3d 1160, 1165 (9th Cir. 2011).

Matthew W. Warnock agrees with this by establishing that the complete evaluation of the privilege must include an in camera review. The Court will make that inspection with clear norms to guide it to establish balance between the public interest of the disclosure and the interest of the government of confidentiality. Warnock, supra, page 1016.

In Puerto Rico it has been stated that when there is a claim for executive privilege, the court must examine the document in camera. That is supported by the fact that the courts must have, in turn, rigorous deference for the confidentiality claim. See Lopez Perez, supra, pages 358 and 360. Moreover, this Court favored since more than thirty years, the following:

The judicial vision that the confidentiality of the information is determined by an analysis of the totality of the circumstances that surround the communication, as by its own nature. In this endeavor the court can perform an in camera inspection of the documents or information that the State alleges are privileged as a previous condition to the recognition of the privilege. (Emphasis provided) Santiago v. Bobb y El Mundo INc. supra, page 162.

We had been consistent in holding that the highly favored, appropriate, and useful mechanism to analyze a request for confidentiality is the in camera examination. See: Colon Cabrera v. Caribbean Petroleum, supra, ELA v. Casta, supra, *162 Pres del Senado, 148 DPR 737 (1999) Santiago v. Bobb y El Mundo, Inc., supra, Soto v. Srio de Justicia, supra. See also, Dissident Opinion of the Associate Justice Mr. Estrella Martinez in Diocesis de Arecibo v. Srio de Justicia, 191

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

DPR 380, 401-402 (2014). It cannot be otherwise, as we have previously stated, it is the par excellence mechanism to weigh these interests. See also, V. Neptune Rivera, Derecho probatorio, 84 (No. 3) Rev. Jur. UPR 681, 688-703 (2015).

Having examined the applicable law, I proceed to explain the reasons for my dissent.

## V

For starters, I must reiterate that the State has not shown, neither in the lower court nor before this court, any impediment to refuse the disclosure of the requested public document. Therefore, the logical thing to do was to deny the writ. As that did not happen, I proceed to address the controversy before us in the framework of the reasoning and procedure outlined by this Court.

First of all, I am not in agreement with the procedure followed by a majority in this case. Particularly, a procedure of great public interest was stayed to unnecessarily intervene with an interlocutory order to then crash with the reality that none of the remedies requested by the petitioners can be granted. In view of the reality that this Court did not request the briefs of the parties, a review of the file would have been sufficient to examine the repetitive statements of petitioner and deny the writ. That way, we would not have unnecessarily stayed the request for information and even worse, removed an essential tool as the in camera inspection.

Also inexplicably, and surprisingly, this Court returns the case to the lower court but with *163 less tools than the ones had before. That is, the majority opinion limits the resources of the Court of First Instance in cases like this. Today, instead of giving greater tools to the lower court to be able to

adjudicate pursuant to the law, blind instructions are given to remotely control the judicial work. I cannot ratify these actions.

Certainly, the fact that the Court of First Instance ordered that the Proposed Budget be handed in a sealed envelope for an in camera inspection does not mean that the information was going to be published. Such inspection is a safe mechanism that the lower forum has to determine if the executive privilege applies. Moreover, when the parties filed the motions in that regard, there was an argumentative hearing specifically about this controversy and the State was given another opportunity to put the court in a position to understand its allegation about the privilege. The fact that an in camera inspection is ordered does not mean a poor administration of the information. There is no attempt against the privilege. The fact that a judge examines it does not mean such right is impaired.

On the contrary, through the order issued by the Court of First Instance, that forum would obtain better tools to solve the case as soon as possible and in accordance with the law, in comparison with the procedure outlined by this Court.

In this case, the lower forum has given multiple opportunities to the petitioners to show the applicability of the executive privilege. However they have not done so. Their allegations have been too general. They have not counteracted the constitutional right to access to the information. The Court of First Instance has made that clear. It is because of this that it has requested to inspect in camera the Proposed Budget before definitely concluding that it is a public document that must be disclosed *164 because the privilege is not applicable to it. That it, the lower court, in view of a claim of executive privilege has been more than careful and despite that the Government did

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

not show that the privilege was warranted it has not ordered the disclosure until it can examine the Proposed Project and have a new motion.

Despite the foregoing, per the majority opinion, all the parties are at a disadvantage. This because the lower court is ordered to rest on briefs and based on it, decide the case. Note that the petitioners could have used the same information of the Proposed Budget as evidence that the deliberative facet was limited and they refused to do so, even under the procedure outlined by the majority, the in camera review of the document simultaneously with the new briefs was taken away, therefore we are at the same dead-end street and we cannot advance. Concurrently, the claim of Senator Bhatia is affected, because the Court of First Instance is in a position to grant relief but will have to again turn to the useless process of requiring memorandums of law. Therefore, the adverse effects are numerous.

In view of all this, the question we should ask ourselves is the following: What other allegations could the Government have aside from those already made in the documents filed and those stated in the argumentative hearing? I cannot think how some new memorandums would help without the examination of the document itself, unless it is another forced opportunity, as a consolation prize for the remedies requested by the State.

On the other hand, a majority of this Court asks: What exactly can be found upon inspecting the document in question to make a decision in the case? Majority Opinion, page 94. Also, they base their decision in that "a review of the *165 proposed final budget is enough to know what the document in question consists of". (Emphasis suppressed). #Id.[5]However, the same

Government has clarified that they are different documents. Then, the proper question is: Why delay the decision if it must be disclosed? The Government has not shown to warrant such privilege. This case cannot withstand more delay. However, with today's decision, it is further and further delayed and the constitutional right to access the information continues to be affected.

On the other hand, the tool of the in camera inspection, aside from being supported by the ingrained line of case law discussed, has also been ratified in the numerous federal cases, contrary to what the majority suggests. To that effect, we must examine its treatment in the in camera inspections object of claims under the Freedom of Information Act (FOIA), 5 USC sec. 552 et seq. While it is true that it is not automatic, sometimes it is necessary and appropriate. Specifically, the Congress has stated that in its discretion, the district court must decide the decision for its need. H.R. Rep. No. 1380, 93d Cong., 2d Sess *166 8 (1974). Also see: NLRB v. Robbings Tire & Rubber Co, 437 US 214, 224 (1978); Donovan v. FBI, 806 F. 2d 55, 59 (2d Cir. 1986), reversed in other matters by Department of Justice v. Landano, 508 US 165, 170 (1993). In other words, the courts have analyzed the law, the legislative history and the case law and have concluded that the decision is for the judge of first instance to make. Center of Auto Safety v. EPA, 731 F. 2d 16, 20-21 (Cir. DC 1984). And it is in that discretion that the court, after considering all relevant factors, can decide if the in camera inspection is appropriate. Donovan v. FBI, supra; Church of Scientology of Cal. v. IRS, 792 F. 2d 146, 153 (Cir. DC 1986); Vaugh v. Rosen, 484 F. 2d 820 (Cir. DC 1973).

On the other hand, contrary to what was stated by the majority of this Court, the federal case law has not stated that the in camera inspection is not favorable in claims

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

of governmental privileges. See majority opinion, pages 91-92. It has been stated that it is not favorable when the State, adequately supports and previously proves its allegation that the exception is applicable, which has not occurred in this case before us. See: Smith v. US Marshals Service, 517 Fed. Appx. 542 (9th Cir. 2013); Lion Raisins v. US Department of Agriculture, 354 F. 3d 1072, 1079 (9th Cir. 2004); Lewis v. IRS, 823 F. 2d 375, 378 (9th Cir. 1987). Because of it, it has been recognized that when the Government decides not to disclose the complete document and for that only uses vague and general allegations prior to the in camera examination, it is appropriate to use such tool. Associated Press v. US Dept. of Justice, 549 F. 3d 62, 67 (2d Cir. 2008) Local 3, IBEW, AFL-CIO v. NLRB, 845 F. 2d 1177, 1180 (2d Cir. 1988) That is, for the Government to maintain the confidentiality and an in camera examination is not ordered it must previously give all the relevant information of the document to the court, in a detailed and specific way so it can make a proper evaluation without having to *167 examine the document itself, which also did not occur in this case before us. See: Hamdan v. Dept of Justice, 797 F. 3d 759, 779-780 (2015); Islamic Shura Council of Southern California v. FBI, supra, page 1166; Ethyl Corp. v. US EPA, 25 F. 2d 1241, 1250 (4th Cir. 1994); Lewis v. IRS, supra, page 278. That is, the State, beyond generally alleging, should describe the document in details and allege with sufficient facts that there is the exception alleged. Lewis v. IRS supra. The State cannot make general allegations and conclusively cite an exception to the law. It has to justify in detail and identify the particular reasons for the exception and correlate its allegation with specific parts of the document that it expects not to disclose. Mead Data Cent. Inc. v. US Dept. of Air Force, 566 F. 2d 242, 251 (Cir. DC 1977). And it is that at the federal level, the Government must effectively show the exceptions contemplated in the FOIA. If it does not do so, upon the discretion of the district court, the inspection of the document is appropriate. Associated Press v. US Dept. of Justice, supra. To that effect, the appellate courts must review whether the court of first instance abused its discretion, according to the stated parameters.

In view of this background, the federal case law consistently has respected the discretion of the lower court, in light of the described parameters. Therefore, in regards to the controversy before us, the procedural tract described reveals that the State has had multiple opportunities to "justify and show its confidentiality claim". Majority opinion, page 91. However, pursuant to the current applicable law, it has not done so. Also not under FOIA which the majority of this Court erroneously interprets and expects to incorporate, which has the effect of restricting even more the access to public information in Puerto Rico. *168

Finally, as to the merits, we have to ask ourselves the following: Will revealing the requested information affect any public and governmental interest? If so, would any additional governmental interest be affected? Have the reasons that ordinarily justify keeping the requested information secret disappeared? What interests are alleged in favor of not disclosing this specific information? Have they completely lost their purpose? See Santiago v. Bobb y El Mundo, Inc., supra, pages 165-166.

Having examined all the allegations and arguments of the parties very carefully, I conclude that the document is public. Therefore, the State should have proven that there was some exception to proscribe its disclosure. The petitioners did not show the applicability of any exception to the right to

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

access the information. Moreover, they did not particularize or support their allegations that the public interest benefits from the confidentiality of the Proposed Budget. Therefore they did not show that the disclosure of the information could affect the operation of the government and put national security at risk. Remember that the petitioners had to prove and support the privilege claimed. They had to show precisely and unequivocally the applicability of the exception to the constitutional right to access the information. This because keeping the information related to public matters in secret is the exception and not the norm.

As it is known, the State cannot capriciously refuse and arbitrarily allow the access. The citizens have the right to examine the content of the files, reports and public documents and investigate how its matters are conducted, subject only to those limitation *169 that the most urgent public need imposes. And these exceptions to keeping the information public are only justified when it is determined by public interest.

In this case, the only thing that the petitioners have alleged is that the Proposed Budget is a work document that is a draft in deliberative stage that is going through the channels established by PROMESA, being the final document the one that the Executive gave to the Legislative Assembly. That is not the reality of the process legislated in PROMESA. Consequently, this allegation is insufficient to defeat the fundamental constitutional right of access to the information. Let us see.

The presentation before the Board is a mandate pursuant to the formal process of section 202 of the PROMESA Law, 48 USC sec. 2142. What happens here is that the Government makes a final proposed budget which is sent to the Board for approval

instead of sending it directly to the Legislative Assembly. If the Proposed Budget meets the parameters established by the Board then it is approved and the governor can then send it to the Legislative Assembly. That is why it cannot be considered a draft. The document, according to the statutory process must be final, with the only exception of the amendments that the Board recommends. I do not think that a work document can be approved by the Board as a certified budget. Instead, we have a congressional mandate in which the now Government of Puerto Rico has a dual duty to present the Proposed Budget first to the Board and then to the Legislative Assembly. In that sense, we have a formal document presented to the Board with a particular process for its approval or amendment which is analogous to the eventual legislative process of approval. Therefore, in the stage of formal presentation of the Budget it cannot be minimize as a document in the deliberative stage or a simple "draft". *170

Contrary to what the Government of Puerto Rico argues, it has been proven as a matter of law under the PROMESA provisions that the Board cannot be considered a subordinate or assistant of the Executive. In that sense, Section 108 of PROMESA which expressly establishes the autonomy of the Board cannot be ignored in this analysis. 48 USCA sec. 2128. Although indignant, the colonial relationship of Puerto Rico cannot be hidden trying to create a fiction that expects to ignore the imperial role of the Board to reduce it to a subordinate, adviser or assistant of the Executive. This fiction is not the reality that Puerto Rico lives. Keeping the information secret only worsens that reality.

Also, as it has been stated, the Proposed Budget does not have conversations between the Governor and his assistants, internal agency documents, interagency

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

memorandums, medical and personnel files or files of civil, criminal and administrative investigations led by the security agencies. It is not even an internal or preparatory document. Note that no recommendations, consultations, determinations, opinions, analyses or statements from the governor, his support personnel or advisers is being requested for the preparation of the Proposed Budget. What is required is the delivery and publication of the Proposed Budget as presented to the Board. In other words, the numbers, amounts or items of assigned funds. Consequently, I believe there was no impediment for the Court of First Instance to declare the document public and issue the corresponding disclosure order.

Therefore, as the applicable law states, upon a controversy of access to information, the State needed to show the existence of interests of greater hierarchy than the values protected by the right to freedom of information of citizens. Also, it was its duty to prove that the public interest would be greater benefitted *171 with the confidentiality of the information than with its disclosure. It did not.

## VI

For the preceding grounds, I dissent from the course of action followed by a majority of this Court. The delivery of the public document was long due. With the stay and the opinion entered today this is unnecessarily delayed and an uncertainty state is created which further delays the controversy. Even worse, per the logic of the majority, the tools the judges have to address with procedural promptness the claims of access to the information are unnecessarily limited.

-----------------------------O----------------------
Dissident opinion issued by Associate Justice Mr. Colon-Perez

The access to information constitutes an essential tool to fight corruption, making the principle of transparency in the public duty a reality and improving the quality of our democracies, signed by a culture of secrecy and by public organisms which policies and practices of physical management of the information are not directed to facilitating the people's access to it.[1]

Today a majority of this Court, upon a controversy of the highest public interest, decides to intervene *172 with the discretion of the Court of First Instance to decide the way in which it decides the controversies before it; that, in total absence of any foundation that justifies such action. In that sense, for understanding that this Court should not have lessened the discretion of the lower court to request-prior to deciding if in the case before us the executive privilege invoked by the State could be recognized or not-the in camera inspection of certain public documents in controversy, we dissent of the course of action in this case. Let's see.

I.

The facts in this case are not in controversy. This past May 4, 2017, the Honorable Senator Eduardo Bhatia-Gautier, Spokesperson of the Minority of the Popular Democratic Party in the Senate of Puerto Rico filed with the Court of First Instance a mandamus petition against the Governor of Puerto Rico, the Honorable Ricardo Rossello Nevares, and the Commonwealth of Puerto Rico (the petitioners) In it he requests the Governor of Puerto Rico to make public a copy of the Proposed Budget filed on April 30, 2017, before the Fiscal Oversight Board of Puerto Rico (the Fiscal Oversight Board) created pursuant to the Puerto Rico Oversight, Management and Economic Stability Act (PROMESA, for its English acronym), 48 USCA secs. 2101 et seq.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

Senator Bhatia-Gautier based his request in that the referenced document was public and of high public interest for the citizens. He also alleged that despite having made a previous request, the Governor of Puerto Rico refused to provide the information requested as he believed it was not public. *173.

After various procedural incidents, that do not need to be mentioned here, on June 26, 2017, the petitioners filed a motion to dismiss, alleging this case was not justiciable. In essence, they held that senator Bhatia-Gautier lacked standing to file the extraordinary mandamus writ, had not met the requirements to file this course of action and also that the case with the lower court had turned moot, as the proposed project had been given to the Legislative Assembly for its consideration and eventual approval, which is why senator Bhatia-Gautier should have made his request then. Lastly, the petitioners alleged that the granting of the remedy requested would be an improper intervention of the judicial branch with the powers of the Executive and Legislative, infringing the separation of powers that is characteristic of our democratic system of government.

Having evaluated the arguments of both parties, the Court of First Instance entered an Order by which it scheduled an argumentative hearing for July 26, 2017. Specifically and in pertinent part, the lower court provided that the parties had to attend the hearing prepared to discuss the following matters: (1) if the request for information, filed by senator Bhatia-Gautier had turned moot; (2) what were the damages suffered by the senator and the real damage to "its specific legislative prerogatives of evaluating and supervising the procedures directed to the approval of the budget of the country", by precisely not receiving the information; (3) if the information requested had been made

public or, if on the contrary, that had not happened; (4) if the mandamus filed equaled the transfer of the legislative forum to the judicial forum; (5) if Senator Bhatia-Gautier exhausted all remedies available to him to obtain the requested information, and, finally, (6) if the information requested was public or on the contrary it was information *174 protected by the executive privilege, per the allegations of petitioners. Order of July 17, 2017, Appendix, pages 135-136. Aside from the foregoing, it gave the parties a term to file a joint motion, along with their respective stipulations of facts, documents or pertinent evidence.

As we can appreciate, the Court of First Instance established-in the exercise of the discretion it has to manage the cases before it-the matters to be considered in the argumentative hearing so that court could be in a position to make an informed decision as to the motion to dismiss.

On the scheduled date, the hearing was held. According to the minute that is in the file before us, the petitioner stated that the document requested by Senator Bhatia Gautier could have been requested during the legislative process but that was not done. Also, it stated that such document was not public, because it was a document prepared by the Executive Branch, protected by the executive privilege, being a draft "prepared as part of a deliberation stage for the development of public policy". [1]

On his part, Senator Bhatia Gautier stated that the Governor and the Commonwealth of Puerto Rico tried to keep the document requested as confidential, despite not certifying that such document was protected by the executive privilege. Also, he stated that he did not want to obtain a copy of the documents prepared by the advisers of the Governor of Puerto Rico, or their subjective

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

opinions but wanted to have access to the amounts include in the referenced Proposed Project, as it was given to the Fiscal Oversight Board. *175

Therefore, upon listening to the arguments of the parties, and evaluating the documents and motions in the case file, the Court of First Instance issued the decision and Order object of this case. In it, the Court of First Instance determined that senator Bhatia-Gautier had standing to file the mandamus petition, as his claim was based on his constitutional right to access the information and that the controversy before it was not moot. Now, as to the allegation that the document object of this case was protected by the executive privilege, the Court of First Instance determined-after listening to the parties and examining the documents that are in the file-that the petitioners could not put the court in position to determine if in effect, it could apply the executive privilege. Because of this, in the exercise of its discretion, the lower court provided the following: (1) it granted the Governor of Puerto Rico a term of ten days to submit-in a sealed envelope identified as confidential-the Proposed Budget presented to the Fiscal Oversight Board on April 30, 2017, and (2) ordered to explain in detail the reasons for which the information in controversy was protected under the executive privilege.

Not in agreement with such actions, the petitioners filed a certiorari petition with the Court of Appeals, along with a motion for aid in jurisdiction. Notwithstanding the appellate intermediate court issued an order denying the issuance of such writ. When doing so, it stated that the lower court did not abuse its discretion by deciding to confidentially inspect the information requested by the mandamus and be in a better position to establish if the information in question was

protected by the executive privilege or not. *176

In view of such scenario, still not satisfied the petitioners appear before us, via a certiorari petition and a motion to stay the proceedings. In essence, they state that the case cannot be evaluated on the merits, as it is not a justiciable matter, as senator Bhatia-Gautier lacks standing to file it and because the claim became moot. Also, they hold that the mandamus is not appropriate and that the referenced senator did not exhaust the remedies available before making his request in court.

It is therefore, with this scenario-*where, as it is evident from the factual relation of the majority opinion as the foregoing, the lower court was managing the controversies presented to it actively, correctly and diligently-* that a majority of this court, in an erred and unfortunate action decided to issue the writ filed, directly interfering with the discretion of the lower court and consequently deciding how it must conduct the procedures before it. As I am not in agreement with the course of action followed by a majority of this court namely, having issued this case, as we anticipated, we dissent. It is precisely because of the foregoing, that we will not pass judgment on those aspects related to the justiciability of this matter. However, below we will state the reasons why we believe this case should not have been issued. We explain.

II.

A.  Access to public information is the cornerstone in our democratic system of government. Accessing that information

[…]constitutes an essential tool to fight corruption, making the principle of transparency in the public duty a reality

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

and improving the quality of our democracies, signed by a culture of secrecy and by public organisms which policies and practices of physical management of the information are not directed to facilitating the people's access to it. Interamerican Commission of Human Rights of the Organization of the American States, Estudio especial sobre el derecho de accceso a la informacion, Org. Estados Americanos, Washington D.C., 2007, page 6.

In this sense, and in regards to Puerto Rico, Art. 1(b) of the Law for the Administration of Public Documents of Puerto Rico, 3 LPRA sec. 1001(b) legal provision that governs public information-defines ,"public document" as

[...] every document originated, kept or received in any department of the Commonwealth of Puerto Rico in accordance with the law or regarding the management of public matters and that is permanently or temporarily kept as proof of the transactions or for its legal value.

Pursuant to the foregoing, we have established that the persons that are custodians of public documents in our Country have "the duty to allow the interested persons to inspect and photocopy these documents, even though the pertinent law does not impose that obligation expressly. Davila v. Superintendente e Elecciones, 82 DPR 264, 280 (1960).[2]

On his part, senator Bhatia-Gautier held that the Governor and the Commonwealth of Puerto Rico tried to keep the requested document as confidential, despite that they had not certified that such document was under the executive privilege. Also, he held that he did not want to obtain copy of the documents prepared by the advisers of the

Governor of Puerto Rico or their subjective opinions, but he wanted access to the amounts included in the referenced Proposed Budget as was handed to the Fiscal Oversight Board. *178

It is not enough to merely acknowledge the important political justification of freedom of information. The citizens of a society that governs itself should possess the legal right to examine and investigate how these matters are conducted, subject only to those limitations imposed by the most urgent public need. That right should be elevated to the highest canon if it will constitute a bastion against insensible leadership. (Emphasis suppressed). #Id. Page 281 esc. 9.

Thus because of the foregoing that in our legal system Art. 409 of the Code of Civil Procedure, 32 LPRA sec. 1781, acknowledges a general right to access public information in possession of the State. Such precept establishes that "every citizen has the right to inspect and photocopy any public document in Puerto Rico, except otherwise expressly stated in law", #Id. But such right not only emanates from Art. 409 of the Code of Civil Procedure, supra, but in the past we have acknowledged that such right to access public information also emanates as a corollary of free speech. Colon Cabrera v. Caribbean Petroleum, 170 DPR 582, 590 (2007); Soto v. Srio de Justicia, 112 DPR 477, 485 (1982) (there is a close relationship between the right of free speech and free access to information")

In that direction we have also stated that the rights the citizens of our Country have to access documents and public information, aside of the right of free speech, is also because having place the sovereignty of the people in the State, the latter "cannot capriciously refuse and without apparent

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

justification, the information gathered in its public duty". (Emphasis provided) Soto v. Srio de Justicia, supra, page 489. See also: Colon Cabrera v. Caribbean Petroleum, spra, page 590; Ortiz v. ir. Adm. De los Tribunales, 152 DPR 161 (2000); Silva Iglesia v. F.E.I., 137 DPR 821 (1995); Lopez Vives v., Policia de PR, 118 DPR 219 (1987). *179.

That being so, as a general rule the State does not have any discretion to determine what documents from its public duty are outside the citizen scrutiny because the citizens are precisely the source of the sovereign power,. The only limitation to that effect is the one imposed by the "most urgent public need". Soto v. Srio de Justicia, supra, page 485. See Davila v. Superintendente de Elecciones, supra, page 281. See, also, Colon Cabrera v. Caribbean Petroleum, Supra. It is then pursuant to the foregoing-namely "the most urgent public need" that the Legislative Assembly has the faculty to approve that legislation that has the purpose of "extracting from the public scrutiny certain documents and reports" related to investigative or preventive phases that per their very nature can place the results of an ongoing investigation, the life or safety of the informants, confidantes and witnesses or of the State employees themselves at risk. Soto v. Srio de Justicia, supra, page 495. See, also: Angueira v. JLBP, 150 DPR 10 (2000); Noriega v. Gobernador, 130 DPR 919, 938 (1992).

Now, despite of the foregoing it is known that in Puerto Rico there is no legislation that provides the particular exceptions in which the State can refuse to disclose public information or documents. It is because of it that to fill that void we have established the cases in which the State can validly claim the confidentiality of a public document, to wit:

(1) A law that so declares; (2) the communication is protected by any of the evidentiary privileges that the citizens can invoke; (3) revealing the information could affect fundamental rights of third parties; (4) it is the identity of a confidante and (5) it is official information pursuant to Rule [514 of Evidence, 32 LPRA Ap. VI] Colon Cabrera v. Caribbean Petroleum, supra, page 591 citing Angueira v. JLBP, supra, page 24. *180.

Therefore, in those instances that it is expected to keep the confidentiality of a document or information, "the State shall have the burden to prove it satisfies one of the aforementioned exceptions". Colon Cabrera v. Caribbean Petroleum, supra. With the objective of deciding if keeping such confidentiality is appropriate or not-as a majority of this Court acknowledges today in its opinion-[3] the courts may perform in camera inspections of the documents that are expected to not be disclosed or they can provide for their limited access. See, E. L. Chiesa Aponte, Tratado de derecho probatorio, Republica Dominicana, Ed. Corripio, T.I, [s year] page 310. The foregoing, without a doubt puts the judge in a position of making a more informed decision; essential element of these procedures, even more when the denial to Access the public information or document can cause the requesting party a "clear, palpable and real" damage for being an injury to the fundamental right of being informed. Ortiz v. Dir. Adm. De los Tribunales, supra, page 177.

B. One of these limited instances in which it is not appropriate to access public information is when the State invokes and shows a privilege such as the executive privilege.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

As developed by our doctrine the executive privilege arises pursuant to the separation of powers included in Art. I, sec. 2 of the Constitution of the Commonwealth of Puerto Rico, and in Secs 1 and 3 of Art. V of the Constitution. See: At. 1, Sec. 2, Const. ELA, LPRA, Tome 1, ed. 2016, pages 425 and 417. The creation and adoption of this doctrine responds to a medullar principle in every democratic system of government: while "the power of investigation […] of the Legislative *181 Branch is not absolute neither is the faculty of the Executive Branch to retain information based on an alleged confidentiality." Peña Clos v. Cartagena Ortiz, 114 DPR 576, 598 (1983) citing United States v. Nixon, 418 US 683, 706 (1974).

In this sense, Rule 514 of Evidence 32 LPRA Ap. VI, establishes the privilege of official information in our system. Therefore the precept defines "official information" as the one "acquired in confidence by a person that is an official or public officer in the performance of their duty and has not been officially revealed nor is accessible to the public until the time the privilege is invoked." Rule 514(a) of Evidence, supra. However, such privilege does not operate automatically. On the contrary, as it is a matter of great magnitude, as there is a right to access public information, a balance of interest must be performed between such right and the need of the State to keep the information in question confidential. E.L. Chiesa Aponte, Reglas de evidencia comentadas, San Juan, Ed. Situm, 2016, page 164. A mere allegation on the part of the State will not support a confidentiality claim.

## III

Having established the foregoing, and before timely stating what we believe should have been the correct action of this Court in this case, it is imperative to briefly review, our normative regarding the discretion of the courts in the management of cases. This, as it is of particular importance for the correct disposition of the controversies before us.

In that regard, it is convenient to note that the definition that we have given on more than one occasion to the concept "discretion", namely that "power to choose between one or various courses of action". Ramirez v. Policia de PR, 158 DPR 320, 340 (2002). See Pueblo v. Ortega Santiago, 125 DPR 203, 2011 (1990). Specifically in the judicial field, we have established that this discretion "is a form of reasonability applied to judicial discernment to reach a just conclusion". Ramirez v. Policia de PR, supra. See, Bco. Popular de PR v. Mun de Aguadilla, 144 DPR 651, 657 (1997). Also see, Pueblo v. Davila Delgado, 143 DPR 157, 171 sco 15 (1997); Pueblo v. Ortega Santiago, supra.
In accordance with the foregoing, in our legal system the lower courts have a high degree of discretion in the procedural management of the cases before it. Melendez v. Caribbean Int'l News, 151 DPR 649, 664 (2000). Because of it, on more than one occasion we have been emphatic when instructing that the appellate courts "in regards to discretional procedural interlocutory decisions the appellate courts shall not substitute our opinion with the exercise of the discretion of the court of first instance, unless that court has acted arbitrarily or in gross abuse of discretion." Also, see: Lluch v. Espana Service Sta., 117 DPR 729, 745 (1986); Valencia, Ex parte, 116 DPR 909, 913 (1986); Ortiz Rivera v. Agostini, 92 DPR 187, 193 (1965). On the contrary, when the action of a court is not without reasonable basis nor affects the substantial rights of a party, the criteria of the judge of the court of first instance who is the one in charge of directing the process "[must prevail]" (Emphasis provided). Sierra v. Tribunal Superior, 81 DPR 554, 572 (1959).

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

Regarding this it is important to note that there are few instances in which we have stated that the lower courts have acted arbitrarily or with gross abuse of discretion. None of these instances is present in this case. As an example, we have stated that such conduct is incurred when *183

> […] the judge, in the decision entered, does not take into account and ignores, without any basis for it, an important material fact that could not be ignored; when on the contrary, the judge without any justification or foundation for it, grants great value to an irrelevant and immaterial fact and basis its decision exclusively on it; or when, without considering and taking into account all the material and important facts and is dismissing all the irrelevant facts, the Judge lightly weighs and calibrates them. Ramirez v. Policia de PR, supra, pages 340-341, citing Pueblo v. Ortega Santiago, supra, pages 211-212.

It is precisely within these judicial norms that we believe this Court should have acted.

## IV

In this case-upon a request filed by senator Bhatia-Gautier to obtain access to an information in possession of the Executive Branch, and the opposition of the Governor of Puerto Rico, pursuant to the alleged existence of the executive privilege-the lower court carried out an argumentative hearing. This, in order to discuss a series of controversies regarding the standing of senator Bhatia Gautier, the appropriateness of the mandamus, the public nature of the information requested and the alleged existence of the executive privilege.

In order to prepare for the referenced hearing, both parties stipulated a series of facts and documents that were not in controversy. Afterwards, per the minute in the case file, in the argumentative hearing, both petitioners and appellee had the opportunity to state their positions before the Judge of the lower court. In particular, the parties argued their different position as to the public nature or lack of, regarding the information requested. Clearly, and contrary to what was suggested by the opinion issued today by this Court, both *184 senator Bhatia-Gautier and the State had the opportunity to prove their respective positions.

Once the hearing in question concluded, the Court of First Instance entered a Decision and Order through which it concluded that, from the allegations of the parties in the documents filed, as from their arguments in the hearing, Senator Bhatia-Gautier had standing to file a mandamus petition in his personal capacity and as senator. Also, it provided that the controversy before it had not become moot. Lastly, as to the executive privilege claim on the part of the petitioners, the lower court decided-*upon evaluating the allegations of the parties and the applicable case law*-that at that moment, such party did not establish why it was not appropriate to disclose the requested information.

Once such conclusion was reached, the Court of First Instance in the exercise of its discretion to manage this case, ordered petitioner to present the Proposed Budget that petitioner had sent to the Financial Oversight Board for in camera inspection. Also, it again ordered this party to present in writing the reasons for which the information requested by senator Bhatia-Gautier was protected by the referenced privilege. As we can see, the lower court, acting within its discretion to dispose of the controversies before it, not only provided one, but two opportunities to the parties to state their positions as to the controversy that today a majority of this

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Court decided to "address". Did that not meet what was stated by this Court today?

We do not see in the certiorari filed by the Commonwealth of Puerto Rico and the Governor of Puerto Rico or in the case file any allegation as to bias, prejudice, gross abuse of discretion or error on the part of the lower court in the management of the case that moves us to intervene *185 in this matter. More so when here that in camera inspection was highly necessary to determine the existence or lack thereof of the executive privilege, as claimed by the State. Moreover, as it is a scenario where the document in question was in the hands of the Executive Branch but was given to another different entity, to wit, the Financial Oversight Board, this could constitute a waiver to the executive privilege, if it exists.

Notwithstanding the foregoing, in what is a clear erred action, a majority concludes that while the lower court acted correctly by denying the motion to dismiss filed by petitioners, prior to the in camera inspection of the document in controversy, "the parties must first put the court in a position as to what are the interests in conflict". (Emphasis omitted). See Majority Opinion, page 94. Therefore, in the opinion of the majority the sentencing court should have ordered the parties to submit their memorandums of law regarding whether the information requested was public or not.

This position leads us to the absurdity of having to think that the only way that a party can establish a privilege would be through filing memorandums of law. In other words, the lower courts will not be able to have discretion to manage the cases before it, according to the allegations of the parties, the motions before them, or the facts they are considering, but will always be required to demand the presentation of memorandums of

law; that, despite that in our statutes there is no such demand nor this Court has established such precedent. That contention has no room in our legal system and goes against the principles of our legal system. It only seeks to provide an additional opportunity for the State (in addition to the two already granted by the Court of First Instance) to do what, in due time *186 it had to do, and for reasons unknown, did not do.

In sum, today, with the actions of the majority of this Court, the faculties that are inherent to every judge, that are historically recognized, to manage the procedures before them, have been hindered. The decision that a majority drafts allows that this court of last instance be the one to arbitrarily and capriciously determines how the proceedings shall be carried out before the lower courts, or even worse, that at the end of the day, the Executive or Legislative Powers be the ones to determine.

It is because of the foregoing that we dissent what was erroneously decided today by a majority of this court.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

---

[1] As it is a dispositive motion, its denial was reviewable by the Court of Appeals via a writ of certiorari, pursuant to Rule 52.1 of Civil Procedure of Puerto Rico, 32 LPRA AP. V (Supl. 2015).

[2] Per express provision of the Puerto Rico Oversight Management and Economic Stability Act, (PROMESA Act for its English acronym), 48 USCA sec 2101 et seq, the Governor of Puerto Rico, Hon. Ricardo A. Rossello Nevares was obligated to submit the proposal of the budget before the Financial Oversight Management Board for Puerto Rico (Board), prior to submitting it to the Legislature of Puerto Rico. 48 USCA sec 2142.
It should be noted that Section 101 (c) of the PROMESA Act, 48 USCA sec. 2121(c) states as follows:
"SEC 101 FINANCIAL OVERSIGHT MANAGEMENT BOARD.
(c) TREATMENT- An Oversight Board pursuant to what is established in this Section-
(1) Shall be created as an entity within the government of the territory.
For which it is established pursuant to this title and
(2) Shall not be considered a department, agency, establishment or office of the Federal Government" (our underline).
Puerto Rico Oversight Management and Economic Stability Act, One hundred fourteenth Congress of the United States of America, in the Second Period of Sessions in: https://juntasupervision.pr.gov/wp-content/uploads/2017/02/PROMESA SpanishVersion 02-22-17.pdf (last visit, September 14, 2017).

[3] Pursuant to the provisions of Rule 10.2 of Civil Procedure of Puerto Rico, 32 LPRA Ap. V (2010).

[4] The Court of First Instance gave the parties until July 21, 2017 to file what was requested in writing.

[5] Such Order was signed by the Appellate Judges Ramirez Nazario and Romero Garcia. On the other hand, the Appellate Judge Colom Garcia stated therein that she would have issued the writ.

[6] Jointly with the *Certiorari* Petition, the Attorney General, in representation of the Governor and the Government of Puerto Rico (Government or petitioners), filed an Urgent Motion in Aid of Jurisdiction wherein he requested the stay of the proceedings before the lower court, in particular, the effects of the Order issued by such forum on July 26, 2017. In such decision, the Court of First Instance ordered the Government, among other things, to produce the proposed budget in a sealed envelope.

As the last day to submit the document in question was August 7, 2017, and so the controversy would not turn moot that same day we issued an order granting the motion in aid of jurisdiction and staying the proceedings before the Court of First Instance until this Court otherwise stated.

[7] Also, see J.A. Echevarria Vargas, Procedimiento Civil Puertorriqueño, 1ra ed. Rev. Colombia, [s. Ed.], 2012, page 132.
[8] Id.
[9] It must be noted that we have also acknowledged standing to a legislator, for example to "Defend an individual traditional interest related to the legislative process and invoked in front of officers of such body in his individual capacity as legislator as in representation of a group of such Body: Noriega v. Hernandez Colon, 135 DPR 406, 428 (1994). Also, to "refute an illegal action of the executive" as authorized representative of the Senate or House of Representatives. Id.

[10] It is important to mention, that different to the prior cases regarding the standing of legislators, in this situation the controversy did not originate in the legislative arena, but as an *individual claim of the Senator in his official capacity* to comply with his legislative duties. This way, there is no risk that the decision of this Forum interferes with the separation of powers between the Legislative Branch and Judicial Branch.

[11] On July 17, 2017, the Court of First Instance ordered the Government to clarify if the information requested by the Hon. Eduardo Bhatia Gautier (Senator or appellee) had been made public. That because, as the lower court stated, "from the arguments of Rossello-Nevares it appears that the information requested by Bhatia Gautier-the Proposed Budget submitted by Rossello-Nevares to the Board on April 30, 2017 is not the same information which was made public by defendants" See page 4 of the Order issued by the Court of First Instance on July 17, 2017. In response to

the foregoing, on July 21, 2017, the Government filed a Motion in Compliance with Order in which it held that "the Budget submitted to the Legislative Assembly was the one approved by the Financial Oversight and Management Board *after incorporating* the amendments it requested from the Governor, pursuant to the process provided in PROMESA. The draft of the budget provided to the Board has not been made public, it being a working document that had to be-as it in fact was-reviewed by the Financial Oversight and Management Board and returned to the Governor to then submit the final version to the Legislative Assembly". (Emphasis in original). See page 6 of the *Motion in Compliance with Order* filed by the Government with the lower court on July 21, 2017. Also, in the *Certiorari* Petition filed with us the Government alleged that the appellee did not specify its claim of diminishment of his legislative prerogatives by "not counting with the draft of initial proposal of the budget that the Governor submitted to the Board, *a document that is not the proposed budget that was submitted for the consideration of the legislature, for its discussion, analysis and approval*". (Italics in original; bold and underline provided). See page 15 of *Certiorari* Petition.

[12] Said letter reads as follows, in pertinent part:
"I have learned, that the past Sunday, April 30, 2017, your work team submitted to the Financial Oversight and Management Board a Proposed Budget corresponding to the fiscal year 2017-2018, as required in the Federal Law PROMESA, 48 U.S.C. §2101. Our Supreme Court has discussed extensively the matter of access to information and has established clearly and unequivocally that the information in possession of the State is public and must be made accessible to the citizenship in general. That is why that I request that you make public a copy of the Proposed Budget and share a copy with this officer immediately.

[13] Different from our legal system, in the federal level, this matter has been regulated by statute and the evaluation of the requests of governmental information addressed to the different components of the Executive Branches is regulated by the provisions of the Freedom of Information Act (FOIA), 5 USCA sec. 552 (2007). This statute applies exclusively to the agencies of the Executive Branch of the Federal Government and does not apply to the Government of Puerto Rico. See 5 USCA sec. 551 (1)(C) (2007 y Supl. 2015) and 5 USCA sec. 552 (f)(1) (2007 y Supl 2015).

[14] In the absence of special legislation to regulate the privilege of official information in our jurisdiction, it is appropriate to use, as supplemental law in this matter, Rule 514 of Evidence, 32 LPRA Ap. VI (2010). E.L. Chiesa Aponte, Tratado de Derecho Probatorio, Republica Dominicana, Ed. Corripio (s. Year) T.I. pages 304-305, based in Santiago v. Bobb y El Mundo, Inc. 117 DPR 153 (1986). It should be noted that the mentioned Tratado de Derecho Probatorio of professor Chiesa Aponte analyses the reversed Rule 31 of Evidence of 1979, 32 LPRA Ap. IV, which is equal to and substantively identical to the current Rule 514 of Evidence, supra. See, also, E.L. Chiesa Aponte, Reglas de Evidencia Comentadas, San Juan, Ed. Situm, 2016, page 164.

[15] To determine if some information was acquired in confidence the totality of the circumstances surrounding the communication, as its own nature" must be considered. Chiesa Aponte, Tratado de derecho probatorio, op. cit. page 307, quoting Santiago v. Bobb y El Mundo, Inc., supra, page 162. For example in the context of an administrative entity, in Lopez Vives v. Policia de P.R., 188 DPR 219, 233-234 (1987) we stated that, upon a claim of confidentiality on the part of the government, it must be examined, among other things, "the own nature and content of the document, and the effect of divulging it over interests of the State."

[16] Now, to establish the privilege, it is not enough to demonstrate that divulging it would be prejudicial to the interests of the government we have to "deal with the degree of prejudice in comparison with the prejudice suffered by the person or entity that requests the information if the divulgation is ordered." Chiesa Aponte, Tratado de derecho probatorio, op cit, page 308.

[17] In the same way, "the statutes that restrict the right to access to governmental information are object of the strict judicial scrutiny and are interpreted restrictively". Chiesa Aponte, Tratado de Derecho Probatorio op. cit., page 305. See, also, Soto v. Srio. De Justicia, 112 DPR 477 (1982).

[18] When we are before a claim of privilege regarding official information, "the skepticism regarding the intervention and judicial revision that is advised regarding the (privilege over) the secrets of state {…}" does not apply. Chiesa Aponte, Tratado de derecho probatorio, op. cit., page 295. Note that the secrets of state are a high rank privilege in consideration of the aspects of natural security, which includes military secrets. Chiesa Aponte, Tratado de derecho



Case:17-03283-LTS Doc#:7035-1 Filed:05/20/19 Entered:05/20/19 22:11:39 Desc:
Exhibit A Page 68 of 98
CERTIFIED TRANSLATION

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

probatorio, op. cit., page 288. Therefore, in case of state secrets, the privilege could be acknowledged without need for an in camera examination. Chiesa Aponte, Tratado de Derecho Probatorio, op. cit, pages 289-290, discussing the case of United States v. Reynolds, 345 US 1 (1953).

[19] Note that, prior to this case, we had not had the opportunity to express ourselves in this category, acknowledged in the federal arena. However, we will discuss it inasmuch as it illustrates us regarding its applicability in relation to the privilege of official information discussed before.

[20] In United States, this privilege is regulated by the fifth exception of the FOIA, which expressly protects communications (letters and memorandums) within an agency, as well as between agencies of government. 5 USCA sec. 552(b)(5) (2007). See Chiesa Aponte, Tratado de derecho probatorio, op. cit. Page 293, and 26A Wright and Graham, Federal Practice and Procedure: Evidence Sec. 5680 (1992).

Also, it should be noted that the privilege *has extended through case law to protect budget requests of an agency*. Wright & Graham, supra, page 133.

[21]To determine if a document is pre-decisional, you can take into account the purpose of the consulting and the effect that the divulgation could cause on the discussions and the taking of decisions within or between the concerned agency (ies), that is, "[…] the purpose of the advice and whether disclosure of the communication would be the type that is likely to chill intra-and inter-agency discussion and decision-making". 6 Moore's Federal Practice Sec. 26. 52[5], page 26-412.9 (3rd ed. 2016)

[22] In various federal forums it has been determined that the factual matters may be covered by the referenced privilege inasmuch as they are interwoven with decisional procedures or protected deliberative materials. Moore's Federal Practice, supra page 26-412.7 esc. 24.2.

[23] This restrictive interpretation does not apply to the privileges of constitutional rank established in Rule 501, 502 and 512 of Evidence, 32 LPRA Ap. VI (2010).
[24] Therefore, the privilege was not adopted as corollary of the principle of separation of powers. Chiesa Aponte, Reglas de Evidencia Comentadas, op. cit. page 165, when discussing the case of Pena Clos v. Cartagena Ortiz, 114 DPR 576 (1983) See, also, J.J,. Alvarez Gonzalez, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogota, Ed. Temis, 2009, page 363.

[25] See also, Lane v. Dept. of Interior, 523 F 3d 1128 (9th Cir. 2008); Schell v. US Dept. of Health & Human Services, 843 F 2d 933 (6th Cir. 1988); Mead Data Cent. Inc. v. US Dept. of Air Force, 566 F d 242 (D.C. Cir. 1977) and 33 Wright & Koch, Federal Practice and Procedure; Judicial Review Sec. 8440, page 524

[26] See, Harvey's Wagon Wheel, Inc. v. N.L.R.B., 550 F. 2d 1139 (9th Cir. 1976).
[27] We should not lose sight that even if cautionary measures are taken the in camera examination involves certain risks to the confidentiality of the information. 33 Wright & Kosh, Federal Practice and Procedure: Judicial Review Sec. 8440, page 524 (2006).

[28] See pages 2-3 of the Order of July 26, 2017 issued by the Court of First Instance.
[29] Certiorari Petition, page 23.

[30] Certiorari Petition, page 24. The petitioners objected also to the presentation of the document in controversy before the Court of First Instance for in camera examination. See page 19 of the Certiorari Petition (In this case the lower court clearly abused its discretion when agreeing to resolve Senator Bhatia Gautier's claim on the merits, ordering the First Executive to provide the document in dispute, in a sealed envelope, to inspect it in camera and determine if it is confidential").

[31] As stated above, the usefulness of the inspection in camera has been acknowledged on multiple occasions as a supplemental vehicle to resolve conflicts regarding claims of privilege.


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

---

[32] It should be mentioned, that through its Order of July 26, 2017, the Court of First Instance not only ordered the Government to produce "the Proposed Budget presented to the Board on April 30, 2017 for an in camera examination" but also to "*file a motion explaining in detail the reasons why the information requested, or part of it, qualifies for the application of the privilege invoked*."(Emphasis in the original). See Order of July 26, 2017, page 3.

[1] Art. Iv, Sec. 4, Const. ELA, LPRA, Tome 1

[2] Puerto Rico Oversight, Management and Economic Stability Act of 2016 (48 USCA sec. 2101 et seq.)

[3] 3 LPRA sec. 1001

[4] Soto v. Srio. De Justicia, 112 DPR 477, 485 (1982) quoting Davila v Superintendente de Elecciones, 82 DPR 264, 279 (1960).

[5] Ortiz v Dir. Adm. De Los Tribunales, supra, page. 175 (2000).

[6] #Id.

[7] #Id.

[8] Ortiz v Dir. Adm. De los Tribunales, supra, page 175..

[9] #Id.; Lopez Vives v. Policia de PR, 118 DPR 219, 228 (1987) Soto v. Srio de Justicia, supra, page 493.

[10] Lopez Vives v. Policia de PR, supra, page 229

[11] Ortiz v. Dir. Adm. De los Tribunales, supra page 176; Pueblo v. Tribunal Superior, 96 DPR 746, 755 (1968).

[12] Ortiz v, Dir. Adm. De los Tribunales, supra, page 176;

[13] Pueblo v. Tribunal Superior, supra page 748.

[14] #Id.

[15] #Id., pages 748-749.

[16] #Id. page 749.

[17] Pueblo v. Tribunal Superior, supra pages 755-756 See also for illustrative purposes: Barr v. Matteo, 360 US 564 (1959); Howard v. Lyons, 360 US 593 (1959); Denman v. White, 316 F. 2d 524 (1st Cir. 1963); Pagano v. Martin, 275 F. Supp. 498 (1967(. In these cases it was determined that documents prepared in the course of the performance of the position or employment and channeled through the official channels for official purposes had an absolute privilege with total immunity for its author against claims for libel or defamation, despite the fact that in some of these cases the officer made some disclosure outside the department.

[18] Pueblo v. Tribunal Superior, supra pages 756-757.

[19] #Id., page 757.

[20] See: United States v. Reynolds, 345 US 1, 6-8 (1953); C&S Air Lines v. Waterman Corp, 333 US 103, 111 (1948); Totten, Administrator v. United States, 92 US, 105, 106-107 (1875).

[21] See: Roviaro v. United States, 353 US 53, 59-61 and 77 (1957).

[22] Carl Zeiss Stiftung v. V.E.B. Carl Zeiss, Jena, 40 FDR 318, 324 (DDC 1966) confirmed in 384 F. 2d 979 (DC Cir. 1967); NLRB v. Sears v. Roebuck & Co, 421 US 132, 151-153 (1975); EPA v. MINK, 410 US 73, 86-93 (1973). See also, R. Iraola, Congressional oversight, executive privilege and requests for information relating to federal criminal investigations and prosecutions, 87 Iowa L. Rev. 1559 (2002).

[23] Judicial Watch Inc. v. Clinton, 880 F. Supp. 1, 12 (DDC 1995) confirmed in 76 F. 3d 1232 (DC Cir. 1996).

[24] See N.L.R. B. v. Sears, Roebuck & Co, supra pages 151-153.

[25] See Corporacion Insular de Seguros v. Garcia, 709 F. Dupp. 288, 295-296 (D. PR 1989)

[26] Sec. 2142 Approval of Budgets
(c) Budgets developed by Governors
(1) Governor's proposed budgets
The Governor shall submit to the Oversight Board proposed Budgets by the time specified in the notice delivered under subsection (a). In consultation with the Governor in accordance with the process specified in the notice delivered under subsection (a), the Oversight Board shall determine in its sole discretion whether each proposed Budget is compliant with the applicable Fiscal Plan and-
    (A) If a proposed Budget is a compliant budget the Oversight Board shall-
        (i)      Approve the Budget; and
        (ii)     If the Budget is a Territory Budget, submit the Territory Budget to the Legislature; or
    (B) If the Oversight Board determines that the Budget is not a compliant budget, the Oversight Board shall provide to the Governor-
        (i)      A notice of violation that includes a description of any necessary corrective action; and
        (ii)     An opportunity to correct the violation in accordance with paragraph (2)"48 USCA sec. 2142(c)(1).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)

2017 TSPR 173

---

27 "(2) Governor's revisions

"The Governor may correct any violations identified by the Oversight Board and submit a revised proposed Budget to the Oversight Board in accordance with paragraph (1). The Governor may submit as many revised Budgets to the Oversight Board as the schedule established in the notice delivered under subsection (a) permits. If the Governor fails to develop a Budget that the Oversight Board determines is a compliant budget by the time specified in the notice delivered under subsection (a), the Oversight Board shall develop and submit to the Governor, in the case of an Instrumentality Budget and to the Governor and the Legislature, in the case of a Territory Budget, a revised compliant budget". 48 USCA sec. 2142 (C)(2).

1 For example, the majority Opinion acknowledges, for the first time in our system, the privilege of decisional information in the deliberative procedures, but clearly is not in position to apply the law it states. Even according to the majority reasoning itself, this discussion was unnecessary, because in the end, the case is only returned to the lower court because the document could not be examined in chambers without evaluating additional arguments in writing. This shows that this was not the moment to issue the writ and enter to discuss the scope of the applicable privileges.

2 Precisely for this reason the Court of Appeals denied the writ filed, because the criteria to issue it had not been met.

3 In fact, the Hon. Eduardo Bhatia-Gautier asked that, in case the certiorari was issued, to offer the opportunity to file a brief which did not happen. Request for order, page 2.

4 Soto v. Srio. De Justicia, supra pages 493-494 ("In United States v. O'Brien, 391 US 367, 377 (1968) it held that the governmental regulation would be sufficiently justified if it (1) falls within the constitutional power of the Government (2) promotes an important or substantial governmental interest; (3) the governmental interest is not related to the suppression of free speech, and (4) the concomitant restriction of the alleged rights according to the First Amendment is not greater than the essential of promoting such interest").

5 See, for example, Colon Cabrera v. Caribbean Petroleum, 170 DPR 582 (2007); Angueira v. JLBP, 150 DPR 10 (2000); Lopez Vives v. Policia de PR, 118 DPR 219 (1987); Santiago v. Bobb y El Mundo, Inc., 117 DPR 153, 159 (1986).

6 The majority opinion states that "given its condition of fundamental right, to prevail, the restrictions imposed by the governmental machine must respond to an urgent interest of the State" Majority Opinion page 82. However, afterwards they reference that the lower forum must make a balance of the interests involved to determine if the privileges in question are appropriate. #Id., pages 88-89.

7 See J.J. Alvarez Gonzalez and A.I. Garcia Saul, Constitutional Law, 65 Rev. Jur. UPR 799, 815 (1996) ("It is convenient to remember the different case law focuses in the interpretation of the free speech clause. In general terms to uphold the validity of a law or governmental action that regulates speech for its content, it is necessary that the State satisfies the so called strict scrutiny and shows: (1) that there is an urgent public interest and (2) that the means selected necessarily promotes that interest").

8 Former Rule 31 is currently Rule 514 of Evidence.

9 For a critic of this rule, see E.L. Chiesa-Aponte, Commented Rules of Evidence, San Juan, Ed. Situm, 2016, page 164 ("Under Rule 514(B) the privilege is acknowledged if the court deems that disclosing the information would be prejudicial to the interests of the Government. But this means very little, because the prejudice that the Government could invoke would have to be balanced with the need of the party with whom the information is admitted, and above all, with the constitutional right of the People to access the information of what occurs in the Government.".

10 See Chiesa Aponte, Tratado de Derecho probatorio, op cit, page 303 ("It seems to me that it is preferable to hold that in Puerto Rico, every privilege invoked by the government (governmental information) must be seen under Rule 31 of Evidence [about official information[ except that regarding the privilege of identity of information, that must be examined under Rule 32; see also, Alvarez Gonzalez, op cit, page 363 ("Aside from this executive privilege of constitutional origin, the legislation may acknowledge additional or more specific privileges[….] To capture the relationship between these two types of privileges, ask if the Executive Branch would be left without a remedy if, for example, Rule 31 of Evidence was repealed.")

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

---

[11] In fact, at the federal level, the fifth exception to the Freedom of Information Act was adopted to materialize this privilege of deliberative procedures in the federal government. See NLRB v. Sears, Roebuck & Co., 421 US 132, 150 (1975).

[12] Of course, at the time of evaluating the privilege of official information in a particular case we can examine, along with other elements of analysis, what was decided by the state courts about the privilege of deliberative procedures. The problem is not the study of these secondary sources, but insinuating that in our system there is a privilege that has never been approved by the Legislative Branch.

[13] For example, in a scholium, the Majority casually states that the privilege of deliberative procedures has been extended to budget requirements. Is there any doubt that the Court prejudged the merits of the case?

[14] See, for example, C. Jennings, Attorney-Client Privilege-Crim-Fraud Exception-Use of in camera Review, 82 Tenn. L. Rev. 663, 686 (2015) ("[T]he use of in camera review ensures preservation of the policies behind the privilege"). (Emphasis in original).

[15] See for example: E.J. Imwinkelried, The New Wigmore: A Treatise on Evidence; Evidentiary Privileges, 3rd Ed., Maryland, Ed. Wolters Kluwer, 2016, Vol. 2, Sec. 9.2.2, page 1776 (trade secrets); Berens v. Berens, 785 S.E. 2d 733 (2016) (attorney-client privilege) People v. Superior Court, 80 Cal. App. 4th 1305 (2000) (official information).

[16] The Court reasoned that in a circumstance such as this "the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers". Unite States v. Reynolds, supra, page 10. It should be noted that in Puerto Rico the state secret privilege can hardly be claimed. Chiesa Aponte, Tratado de derecho probatorio, op cit. page 302.

[17] See Urgent Motion reiterating dismissal and Motion in compliance with Order filed by the ELA with the lower court.

[18] Decision and Order of July 26, 2017, page 3

[1] United States signed the Pact on October 5, 1977 and ratified it on June 8, 1992. Available in: http://www.acnur.org/nuevaspaginas/tablas/tabla6.htm.

[2] The Court of Appeals via the now Associate Judge Mr. Martinez-Torres reached the same conclusion when reasoning that the in camera review was necessary as a cautionary measure to protect the privileged information of persons and private companies, even when the official information privilege alleged generally by the State yielded before the right to access public information. Colon Cabrera v. Caribbean Petroleum, KLCE050998 (TAPR) (February 28, 2006).

[3] This privilege is derived from its federal parallel, the privilege of presidential communications.

[4] On the other hand, the analysis that has been used by the north American courts to examine if the privilege applies clashes with our renowned constitutional right to information. In essence once the State claims the privilege the petitioner has to establish a particularized need for the document in question. This has been acknowledged in the federal court and in various states that have recognized the privilege of the governor's communications. Warnock, supra pages, 990-1009. That requirement, however, would be contrary to our liberal recognition of the constitutional right to access the information that allows any citizen to inspect and copy the public documents without having to show any "special interest". Trans Ad. De P.R. v. Junta de Subastas, 174 DPR 56, 70-71 (2007); Ortiz v. Dir. Adm de los Tribunales, 152 DPR 161, 176-177 (2000). See C.F. Ramos Hernandez, Acceso a la información, transparencia y participacion politica, 85 Rev. Jur. UPR 1015, 1038 (2016).

[5] The proof is in the pudding. As we know, the members of the Oversight and Management Economic Supervision Board are named by the President of the United States in whose election the people of Puerto Rico do not participate. These officers so named have the capacity, among other things, to reverse decisions taken by officers elected by the people of Puerto Rico as are, for example, the laws approved by the Legislative assembly and endorsed by the first Executive. 48 USC sec. 2144. With which, a non-elect body and therefore, not representative of the will expressed in the urns, can exercise a veto over approved legislation and can in turn "legislate" to substitute what was "vetoed".

[6] It belongs to the government of the Commonwealth, but it is not part of any of the three branches of government, therefore its sui generis nature. It is like a government within a government.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

Case:17-03283-LTS Doc#:7035-1 Filed:05/20/19 Entered:05/20/19 22:11:39 Desc:
Exhibit A Page 72 of 98
CERTIFIED TRANSLATION

Bhatia Gautier v. Gobernador, 199 D.P.R. 59 (2017)
2017 TSPR 173

---

[7] Regarding the laws of the Commonwealth, the PROMESA law states that its provisions shall prevail over any local law that is incompatible with them. 48 USC sec. 2102. However, that does not answer an important question upon the local character of the Board. Does a local law that is not incompatible with PROMESA apply to the Board? It is a question of great importance for the Puerto Rican people, but as we do not have jurisdiction over claims against the Board, we will not be in charge of answering it.

[8] If the Legislative Assembly finally approves a budget that, in the opinion of the Board is not in agreement with the fiscal Plan, the latter can approve its own. 48 USC sec. 2142.

[9] All the referenced communications are public and are available in https://juntasupervision.pr.gov//index.php/en/documents/ (last visit August 18, 2017)

[1] The presentation of the Budget Project occurred pursuant to Section 202 of the PROMESA law, 48 USC sec. 2142. In accordance to it, the Financial Oversight and Management Board for Puerto Rico (Board) set April 30, 2017 as the day for the Governor of Puerto Rico, Hon. Ricardo Rossello Nevares (Governor) to submit before it a Proposed Budget. In view of this, the Governor did so at the scheduled date. Also, on May 8, 2017, the Board acknowledged receipt of the document presented.

[2] Among the procedural the Government filed a Notice of Removal in the Federal District Court for the District of Puerto Rico. The latter decided to return the case to the state court.

[3] Also, the parties filed a joint motion stipulating facts and documents. Also, the limited the controversies in law.

[4] On July 28, 2017, senator Bhatia filed an amended mandamus in which he clarified that he appeared as senator and personally and individually. In disagreement, the Government opposed and supported its position in sum, in that the proceedings are at an advanced stage and that they had filed a responsive pleading therefore the authorization of the court was necessary. Eventually, the lower court allowed the amendment. In that regard, we stated that the majority gave standing to the appellee as legislator and, surprisingly, omitted the citizen dimension in which that party also based its claim to access of the information requested.

[5] I must highlight that the criterion of the nature of the document is not the only factor used at federal level. Precisely using the reasoning of the majority of this Court, pursuant to the Freedom of Information Act (FOIA) t USC sec. 552, different factors have been acknowledged that support the in camera inspection, namely: judicial economy, conclusive nature of the sworn statement of the agency, bad faith on the part of the agency, controversies regarding the content of the document, that the agency proposes the in camera inspection and the strong public interest in the disclosure. R M. Levin, In Camera Inspections Under the Freedom of Information Act, 41 (No. 3) U. Chi L. Rev. 557 (1974). See for example, Rugiero v. US Dept of Justice, 257 F. 3d 534, 543 (6th Cir. 2001); Jones v. FBI, 41 F. 3d 238, 243 (6th Cir. 1994); Allen v. Central Intelligence Agency, 636, F. 2d 1287 (Cir. DC. 1980), reversed in part in other issues by Founding Church of Scientology, Wash. DC v. Smith, 721 F. 2d 828 (Cir. DC 1983); Donovan v. FBI, 806 F. 2d 55 (2nd Cir. 1986) reversed in part in other issues by Department of Justice v. Landano, 508 US 165, 170 (1993); Ingle v. Department of Justice , 698 F. 2d 259, 267 (6th Cir. 1983, reversed in part and in other issues by Department of Justice v. Landano supra; James v. Drug Enforcement Admin., 657 F. Supp. 2d 202, 209 (DDC 2009) Physicians for Human Rights v. Dept of Defense, 675 F. Supp 2d 149, 167 (DDC 2009); Dean v. FDIC, 389 F. Supp 2d 780, 789 (ED Ky 2005); Ferguson v. FBI, 752 F. Supp. 634, 636 (SD N.Y 1990).

[1] Interamerican Commission of Human Rights of the Organization of the American States, Estudio especial sobre el derecho de accceso a la informacion, Org. Estados Americanos, Washington D.C., 2007, page 6.

[1] See Appendix, page 230.

[2] It is important to note that it has been said that the public information "belongs to the persons. The information is not property of the State and access to it is not because of the grace or favor of the government. It has the information only as representative of the individuals. The State and the public institutions are committed to respecting and guaranteeing the access to the information to all persons. […] The State is in the obligation of promoting a culture of transparency in society and in the public sector, of acting with due diligence in the promotion of the access to the information, of identifying who must provide the information, and of preventing the actions that deny it and sanction its violators. The conduct of officers that deny access to the information or of the existence of legislations contrary to it, infringe that right". Interamerican Commission of Human Rights of the Organization of the American States, Estudio especial sobre el derecho de acceso a la informacion, Org. Estados Americanos, Washington D.C., 2007, pages 34-35.

[3] See majority opinion, page 86.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

*Bhatia Gautier v.  Gobernador*,
Civil No. SJ2017CV00271
(P.R. Sup. Ct. Mar. 16, 2018)

CERTIFIED TRANSLATION

**COMMONWEALTH OF PUERTO RICO
COURT OF FIRST INSTANCE
SAN JUAN JUDICIAL CENTER
SUPERIOR COURT**

| | |
|---|---|
| HON. EDUARDO BHATIA-GAUTIER<br>In his capacity as Minority Leader for the Popular Democratic Party in the Senate of Puerto Rico<br><br>**Plaintiff**<br><br>v.<br><br>HON. RICARDO ROSSELLÓ-NEVARES, in his capacity as Governor of the Commonwealth of Puerto Rico and the COMMONWEALTH OF PUERTO RICO<br><br>**Respondent** | **CIVIL NO.:**<br>SJ2017CV00271<br><br>**SESSION HALL:**<br>907<br><br>**RE:**<br><br>*MANDAMUS* |

> "[E]nabling governmental secrecy invites and leads to governmental arbitrariness and indifference. Therefore, it is important for citizens to be informed in order to promote informed and intelligent citizen participation, which is essential for democracy."[1]

# JUDGMENT

## I.

An issue of high public interest, as identified by our Supreme Court, has been brought before us on this occasion for the purposes of determining whether the draft Fiscal Plan developed by the Government of Puerto Rico (the Commonwealth) and submitted to the Financial Oversight and Management Board (the Board) for review on April 30, 2017, is a public document.[2] Secondly, it is for us to determine whether the Commonwealth produced sufficient evidence or "specific justifications"[3] to support the privileged and non-public nature of the aforementioned document. Should that be the case, the request of the plaintiff, Honorable Eduardo Bhatia-Gautier, Senator and Minority Leader for the Popular Democratic Party at the Senate of Puerto Rico (the plaintiff) for disclosure of the aforementioned document would be inadmissible.

In short, it is for us to decide whether the Commonwealth met its burden of proof to support the claimed privileges and, consequently, if it placed this Court in a position to determine whether the

---

[1] (Emphasis supplied). Luis F. Estrella-Martínez, *Acceso a la Justicia: Derecho Humano Fundamental,* 1ra Edición, Puerto Rico, Ediciones SITUM, 2017, p. 238.

[2] Note that the plaintiff is only requesting the draft Fiscal Plan submitted to the Board. The plaintiff has never requested any supporting documents, recommendations, decisions, or statements from Government staff members and/or advisors in connection with the deliberative process for the development of the draft Fiscal Plan.

[3] See: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti-Cintrón,* dated September 15, 2017, DPR, 2017 TSPR 173 (2017), p. 41. Court order received on December 13, 2017.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                          2
*Judgment*

disclosure of the proposed Fiscal Plan developed by the Commonwealth and submitted to the

Board for its review is inadmissible.[4]

     Upon receiving the memoranda of law filed by the parties, with which the parties placed

the Court in a position to decide whether the document at issue is a public document, and, if so,

to determine whether the invoked privileges are admissible, and given the balance of interests

involved, this Court finds that the draft Fiscal Plan is, first of all, a public document and,

secondly, that the Commonwealth did not describe the document in a detailed and specific

manner. For this reason, this Court concludes that the Commonwealth **did not provide**

**sufficient evidence or specific justifications** to conclude that the information contained in the

draft Fiscal Plan developed by the Governor and submitted to the Board is privileged

information.   Therefore, due to the lack of valid justifications, as well as the submission of

vague and general allegations to claim the confidentiality of the document, this Court hereby

orders the disclosure of the draft Fiscal Plan submitted to the Board, for the balance has tipped

in favor of the constitutional right of access to information.

## II. PROCEDURAL BACKGROUND

On July 26, 2017, this Court issued a *Decision and Order*, providing that:

> [A]fter the oral arguments, the plaintiff stated for the record that the
> information whose disclosure is requested is <u>only</u> the Draft Budget submitted to
> the Board on April 30, 2017. That is, the amounts, figures, or budget items
> allocated to specific governmental entities or to cover certain expenditures. The
> plaintiff reiterated and clarified for the record that his request **does not include**
> **the Draft Budget's supporting documentation**. **In other words, the plaintiff <u>is</u>**
> **<u>not</u> requesting in his *writ of Mandamus* any information that may contain**
> **recommendations, decisions, or expressions made by personnel and/or**
> **advisors of the Executive Branch with regard to the amounts and the reasons or**
> **the deliberative process related to its allocation.**
>
> For his part, the plaintiff held that the information is covered by the
> executive privilege due to it being a working document or draft subject to
> changes that contains information on the deliberative process or information
> regarding the Executive Branch's policymaking.
>
> However, upon questioned by the Court and according to the applicable
> case studies, the respondent provided no details as to why the requested
> information warrants the application of the executive privilege. Accordingly, at
> this time, the respondent failed to establish in detail the reason why the
> disclosure of the Draft Budget submitted to the Board is inadmissible.
> Nevertheless, upon invoking of the executive privilege, the respondent is
> **ORDERED** to file, within 10

---

[4] The Supreme Court delimited the dispute and, to this end, specifically provided that "the real controversy in the case [is] whether the Commonwealth can meet its burden of proof in order to support the privileges claimed." See: *Bhatia Gautier v. Rosselló Nevares, Opinión del Tribunal emitida por el Juez Asociado señor Feliberti Cintrón,* supra, p. 39.

    I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          3
*Judgment*

    days, the Draft Budget submitted to the Board on April 30, 2017, for its examination in chambers. Said Draft Budget **shall be submitted to the attention of the Court in a sealed envelope identified as "Confidential," and it shall contain the signature of the custodian of the information or the respondent's legal representative, so as to ensure the envelope's seal.** In addition, the respondent shall file a motion **explaining <u>in detail</u> the reasons why the requested information, or part of said information, qualifies for the application of the invoked privileged.** As argued in today"s hearing, the respondent shall further explain why said information is part of a "deliberative" or of a "public policymaking" process. The Draft Budget shall not have to  be filed in the SUMAC system in order for the Court to consider this *Order* as complied with. The respondent is responsible for correctly filing the information in order to preserve its confidentiality. The Clerk of the Court shall take all measures she may deem necessary to guarantee the secrecy of the information submitted in accordance with this **ORDER**.[5]

    The respondent appealed the decision before the Court of Appeals by filing an *Urgent Motion for Order in Aid of Jurisdiction* and a *Writ of Certiorari*.[6] The intermediate appellate court denied the issuance of the requested order and Dismissed the motion in aid of jurisdiction.[7] Subsequently, the respondent filed a *Writ of Certiorari* and an *Urgent Motion for Order in Aid of Jurisdiction* before the Supreme Court.[8]

    On August 7, 2017, the Supreme Court issued a *Decision* ordering a stay of "the proceedings in the case until this Court provides otherwise. This, to prevent the filed appeal from becoming academic."[9]

    On September 15, 2017, the Supreme Court issued its *Opinion* and provided that:

> [W]ithout further proceedings and pursuant to Rule 50 of the Rules of this Court, *supra*, the requested *writ of certiorari* is issued and **the Decision and Order issued by the Court of First Instance on July 26, 2017 <u>with regard to the presentation of the document in dispute for its examination in</u> chambers is partially repealed. <u>Besides that, the Decision and Order is confirmed in all other non-relevant respects.</u>** The ordered stay is annulled and the case is returned to the primary court for the continuation of proceedings as specified in this Opinion.[10]

    On December 12, 2017, the Supreme Court"s [11] *Mandate* was issued. In accordance with said Mandate, on December 13, 2017, this Court issued the following *Order*:

---

[5] Emphasis and underlining in the original.
[6] Annotations 33 and 34 of the digital SUMAC file.
[7]  Annotation 35 of the digital SUMAC file.
[8]  Annotation 37 of the digital SUMAC file.
[9] Annotation 39 of the digital SUMAC file.
[10] Italics in the original. Emphasis supplied.
[11] Annotation 48 of the digital SUMAC file.



    I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          4
*Judgment*

Upon receiving the Order, and in accordance with the literal meaning of the Opinion on page[s] 40 and 41, the parties are ordered to submit their respective Memoranda of Law in order to put the Court in a position to determine whether the document is public in nature and, if so, whether the claimed privileges are admissible. "Only then, and considering the balance of interests involved, would the Court be able to determine whether or not the claimed privileges are admissible." The Memoranda of Law shall be filed simultaneously within a 30-day period, which ends on January 16, 2018. A final deadline to reply shall be granted, should the Court consider it necessary.[12]

After a request to this end, the Court granted an extension that expired on January 23, 2018. On that date, the parties submitted their respective *Memoranda of Law* and the issue was considered as filed.

### III. FINDINGS OF FACT

1. The plaintiff is Honorable Eduardo Bhatia-Gautier, Senator and Minority Leader for the Popular Democratic Party in the Senate of Puerto Rico.[13]

2. Honorable Ricardo Rosselló-Nevares is the Governor of Puerto Rico and was exclusively sued in his official capacity.[14]

3. On June 30, 2016, the United States Congress passed Public Law 114-187, known as the PROMESA Act.[15]

4. On June 25, 2017, the Legislative Assembly passed the budget resolutions, Joint House Budget Resolutions 186, 187, 188, and 189.[16]

5. In a letter dated June 30, 2017, the Board notified the Governor, the President of the Senate, and the House Speaker that, in a meeting held on that same date, and pursuant to the provisions of Sections 202(d)(2) and 202€(3) of PROMESA, the Board had unanimously passed a resolution whereby they adopted the General Budget of the Commonwealth of Puerto Rico, which was then submitted to the Governor and the Legislative Assembly.[17]

---

[12] Annotation 19 of the digital SUMAC file.
[13] This fact was stipulated by the parties. See: Annotation 23 of the digital SUMAC file.
[14] Id.
[15] Id.
[16] Id.
[17] Id.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

*Dear Governor Rosselló Nevares, Senator Rivera Shatz, and Representative Méndez*

Núñez:

SJ2017CV00271                                                                                                          5
*Judgment*

> *Pursuant to Resolution #3, a copy of which is attached hereto as Exhibit A (the "Resolution"), adopted unanimously at the June 30, 2017 public meeting of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget for the Commonwealth of Puerto Rico, consisting of the documents attached hereto as Exhibits B, C, D, and E (collectively, the "Territory Budget");** and (2) issues to the Governor and the Legislature this certification that the Territory Budget is a compliant budget as set forth in the Resolution. Attached as Exhibits F and G are versions of the Territory Budget indicating the revisions pursuant to section 202(d)(2) of PROMESA.*

> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.[18]*

6.  In a letter dated July 13, 2017, the Board notified the Governor and the Legislative Assembly about the adoption of an amended Budget, which was adopted and certified by the Board. The Board provided that, under Sections 202(d)(2) and 202 (e)(3) of the PROMESA Act, the aforementioned Budget was considered as approved by the Governor and the Legislative Assembly, and that it came into force on July 1, 2017.

> *Dear Governor Rosselló Nevares, Senator Rivera Schatz, and Representative Méndez Núñez:*
> *Pursuant to a Unanimous Written Consent, a copy of which is attached hereto as Exhibit A (the "UWC"), and sections 202(d)(2) and 202(e)(3) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), the Oversight Board hereby: (1) **submits to the Governor and the Legislature the fiscal year 2018 budget, as corrected, for the Commonwealth of Puerto Rico,** consisting of the documents attached hereto as Exhibits B, C, D and E (collectively, the "Territory Budget"); and (2) issues to the Governor and the Legislature this certification that the Territory Budget, as corrected, is a compliant budget as set forth in the UWC. Attached as Exhibits F and G are redline versions of the Territory Budget indicating the corrections.*

> *Furthermore, pursuant to section 202(e)(3) of PROMESA, the Territory Budget, as corrected, shall be (1) deemed approved by the Governor and the Legislature and (2) in full force and effect beginning on July 1, 2017.*

> *This certification supersedes and replaces the Compliance Certification for the Territory Budget issued by the Oversight Board dated June 30, 2017. The Oversight Board looks forward to working with the Governor and the Legislature to accomplish the requirements and goals of PROMESA for the benefit of the people of Puerto Rico and its creditors and other stakeholders.*

7.  The General Budget for Fiscal Year 2017-2018 has been approved and has been in force since July 1, 2017.

---

[18] (Emphasis supplied.) See: https://juntasupervision.pr.gov/index.php/en/documents/ (Last visit: March 16, 2018).

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

8.  On April 30, 2017, Governor Rosselló-Nevares submitted to the Board the Fiscal Plan, developed in accordance with Section 202 of the PROMESA Act.[19]

9.  On May 8, 2017, the Board acknowledged receipt of the fiscal plan and granted the Governor 14 additional days to amend and improve the document prior to approving it or identifying violations. The letter states:

    > *By letter dated March 22, 2017, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), pursuant to PROMESA § 202(a), established May 8, 2017 as the date to approve the Governor's proposed budget or to notify the Governor of violations and provide descriptions of all necessary corrective actions. We have received a* **working draft** *of the proposed budget and are reviewing the submission and its completeness. In this light, the Board will provide the Governor an additional 14 days to amend and improve the submission before it approves it or identifies violations.[20]*

10. On June 2, 2017, the Board partially approved the Fiscal Plan developed by the Governor.[21]

11. The respondent failed to provide evidence on the document developed by the Governor. In other words, how many pages does it have, whether it contains memoranda and communications between the Governor and his aides, advisors, etc.

## CONCLUSIONS OF FACT

### a. PUERTO RICO'S FISCAL POLICY AND PROMESA

The drafting of the budget constitutionally requires that, at the beginning of each ordinary session, the Executive Branch present a message regarding the status of the public coffers, as well as a report detailing "the conditions of the Treasury of Puerto Rico and the proposed expenditures for the following financial year."[22] The above-referenced report shall detail the proposed fund allocations and shall establish the revenue collection mechanisms to subsidize the estimated expenses.[23]

Once the Legislative Branch has received and examined the Governor's report, said legislative body shall proceed to pass the law or joint budget resolution.[24] Therefore, it is the Legislative Branch's

---

[19] *Supra.* The respondent also acknowledged this fact. See: *Urgent Motion to Reiterate Dismissal*, filed on June 26, 2017.
[20] (Emphasis supplied.) See: https://juntasupervision.pr.gov/index.php/en/documents/ (Last visit: February 12, 2018).
[21] Document stipulated by the parties. See: *Joint Motion in Compliance with Order* filed on June 25, 2017.
[22] Art. IV, Sec. 4, Const. ELA, 1 LPRA.
[23] For illustrative purposes, see *Finca Matilde, Inc. v. Estado Libre Asociado de Puerto Rico*, KLCE201601001, *Judgment* entered by the Court of Appeals on August 31, 2016.
[24] Art. III, Sec. 17, Const. ELA, *supra.*

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                           7
*Judgment*

duty to determine which of the Governor's recommendations shall be approved, dismissed, or amended.[25] Also, as part of its prerogatives, the Legislative Branch may include new issues not previously considered in the report of Executive Branch.[26]

After the Legislative Branch's participation, the general budget law is considered as submitted to the consideration of the Governor.[27] At that time, the Governor has the power to reduce or remove any budget item.[28] "In approving any appropriation bill that contains more than one item, the Governor may eliminate one or more of such items or reduce their amounts, at the same time reducing the total amounts involved."[29] Likewise, the Governor has the power to approve or disapprove the joint resolutions and bills passed by the Legislative Assembly.[30]

With relevance to the present case, Section 201 of PROMESA **alters** the process described above, by which the governmental budget is traditionally approved.[31] This is the reason for the dispute that has been brought before us, since PROMESA requires that the report that must be prepared pursuant to Art. IV, Sec. 4, Const. ELA, *supra*, be sent to the Board **before it is sent to the Legislative Branch, as required under our constitutional system.[32]**

Based on its constitutional power to lay down and establish all the rules and regulations that may be necessary for the territories of the United States of America, Congress passed the law known as the *Puerto Rico Oversight, Management, and Economic Stability Act* (PROMESA).[33] The Board was created under this law to establish a method whereby the Commonwealth of Puerto Rico and its instrumentalities achieve fiscal responsibility and access to capital markets.[34]

---

[25] *Finca Matilde, Inc. v. Estado Libre Asociado De Puerto Rico,* supra.
[26] Id.
[27] Id.
[28] Id.
[29] Art. III, Sec. 20, Const. ELA, *supra*.
[30] Art. IV, Sec. 4, Const. ELA, *supra*.
[31] Section 201 PROMESA, 48 USCA sec. 2142
[32] See: *Bhatia Gautier v. Rossello Nevares, Opinion in Agreement issued by Associate Judge Mr. Kolthoff Caraballo* and the *Dissenting Opinion issued by Associate Judge Mr. Estrella-Martínez* on September 15, 2017,___DPR___, 2017 TSPR 173 (2017).
[33] U.S. Const., art. IV, sec. 3; 48 USC sec. 2102 *et seq.*
[34] PROMESA, Section 101 (c), 48 USCA sec. 2121 (c). see, also, the *Statement of Motives* of Law  No. 5-2017, *Puerto Rico Financial Emergency and Fiscal Responsibility Act* (Law No. 5), and *Brigade Leveraged Capital Struturs Fund Ltd. V. García-Padilla,* 201 f. Supp. 3d 223 (1st Cir.2016).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

Regarding the nature of the Board, Section 101 (c) of PROMESA provides that it shall be created "hall be created as an entity within the territorial government for which it is established" and that "it shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government."[35] **Furthermore, it is an autonomous entity upon which neither the Executive Branch nor the Legislative Branch may exercise any control, supervision, oversight, or review over the Oversight Board or its activities.[36]**

As for the governmental budget, Section 201 of PROMESA provides that "the Governor **may not** submit **to the Legislature a Territory Budget under Section 202 this title for a fiscal year unless the Oversight Board has certified the Territory Fiscal Plan for that fiscal year** in accordance with this subsection."[37] The process to certify the fiscal plan developed by the Governor shall entail a **review** by the Board of the document submitted by the Governor.[38] The process is as follows:

The Oversight Board shall **review** any **proposed** Fiscal Plan **to determine whether it satisfies the requirements set forth in subsection (b)[[39]] and, if the Oversight**

---

[35] PROMESA, Section 101 (c), 48 USCA sec. 2128.
[36] PROMESA, Section 108 (c), 48 USCA sec. 2128.
[37] PROMESA, Section 201 (c), *supra.*
[38] *Supra.*
[39] Section 201 (b) provides:
    (b) REQUIREMENTS. —
    (1) IN GENERAL. — A Fiscal Plan developed under this section shall, with respect to the territorial government or covered territorial instrumentality, provide a method to achieve fiscal responsibility and access to the capital markets, and—
    (A) provide for estimates of revenues and expenditures in conformance with agreed accounting standards and be based on —
    (i) applicable laws; or
    (ii) specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;
    (B) ensure the funding of essential public services;
    (C) provide adequate funding for public pension systems;
    (D) provide for the elimination of structural deficits;
    (E) for fiscal years covered by a Fiscal Plan in which a stay under subchapters III or IV is not effective, provide for a debt burden that is sustainable;
    (F) improve fiscal governance, accountability, and internal controls;
    (G) enable the achievement of fiscal targets;
    (H) create independent forecasts of revenue for the period covered by the Fiscal Plan;
    (I) include a debt sustainability analysis;
    (J) provide for capital expenditures and investments necessary to promote economic growth;
    (K) adopt appropriate recommendations submitted by the Oversight Board under section 2145(a) of this title;
    (L) include such additional information as the Oversight Board deems necessary;
    (M) ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under subchapter III, or a Qualifying Modification approved under subchapter VI; and
    (N) respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to June 30, 2016.


    I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
    translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                    9
*Judgment*

> **Board determines in its sole discretion that the proposed Fiscal Plan —**
> **(A)  <u>satisfies such requirements</u>, the Oversight Board shall <u>approve</u> the proposed Fiscal Plan; <u>or</u>**
> **(B) <u>does not satisfy such requirements</u>, the Oversight Board shall <u>provide to the Governor—</u>**
> **(i)  a notice of violation that includes recommendations for revisions to the applicable Fiscal Plan; and**
> **(ii)  an opportunity to correct the violation in accordance with subsection (d)(1).**[40]

Note that, according to the language of the above-cite provision, the Board"s  review shall be **limited** to determining whether the fiscal plan proposed by the Governor **meets the requirements established under subsection (b) of Section 201 of the PROMESA Act**. As defined by Section 201 (b) of the PROMESA Act, this means that the Board <u>shall examine</u> whether the document or Fiscal Plan proposed by the Governor <u>meets</u> the requirement of providing: "**estimates** of **revenues** and **expenditures** in conformance with agreed accounting standards and be based on applicable laws; or specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;" "for a **sustainable debt burden,** for fiscal years covered by a Fiscal Plan in which a stay under subchapters III or IV is not effective;" " adequate funding for public pension systems," "for the elimination of structural deficits," and "for capital expenditures and investments necessary to promote economic growth."[41] Furthermore, the Board shall examine whether the document in dispute: includes "a method to achieve fiscal responsibility and access to the capital markets;" "ensure[ ] the funding of essential public services;" "improve[ ] **fiscal governance, accountability, and internal controls**;" "enable[ ] the achievement of **fiscal** targets;" "create[ ] independent **forecasts of revenue** for the period covered by the Fiscal Plan;" "include[ ] a **debt sustainability analysis**;" "ensure that **assets, funds,** or **resources** of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under subchapter III, or a Qualifying Modification approved under subchapter VI;" and "respect[ ] the relative lawful

---

[40] Section 201 (c) 3 of PROMESA, *supra.*
[41] Section 201 of PROMESA, 48 USCA sec. 2142.


 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
 translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    10
*Judgment*

**priorities** or lawful **liens**, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to June 30, 2016."[42] Lastly, the Board shall verify whether the document "adopt[ the] appropriate recommendations submitted by the Oversight Board under section 205(a)" and "include such additional information as the Oversight Board deems necessary."[43] These recommendations are the ones set forth in Section 205 of the PROMESA Act and refer to the actions that, **according to the Board**, the Government can take to ensure financial stability, administrative responsibility, and economic growth, among others:

> a) IN GENERAL. — The Oversight Board may, at any time, issue recommendations to the Government or to the Legislature regarding the actions that the territorial government can take to ensure compliance with the Fiscal Plan, or to otherwise promote the financial stability, economic growth, administrative responsibility, and efficiency in the way that the territorial government renders its services, including recommendations related to —
> (1) the management of the territorial government"s financial affairs, including the ability to make multiannual economic and fiscal projections, information technology, control staff costs, reduce benefit costs, reform procurement practices, and place other controls on expenditures;
> (2) the structural relationship between departments, agencies, and independent agencies within the territorial government;
> (3) the modification of the existing revenue structures or the creation of additional revenue structures;
> (4) the establishment of alternatives to meet the obligations for the payment of territorial government employee pensions;
> (5) modifying or transferring the types of services that are the responsibility of and which are provided by the territorial government;
> (6) modifying the types of services that are offered by non-governmental entities of the territory under different mechanisms for the provision of services;
> (7) the effects of the territorial laws and the judicial orders regarding the operations of the territorial government;
> (8) the establishment of a personnel system for territorial government employees, based on employee performance standards;
> (9) improving staff training and competencies, adjusting staffing levels, and improving administrative and supervisory staff s training and performance; and
> (10) the privatization and commercialization of entities within the territorial government.

> If the document or fiscal plan developed by the Governor **satisfies all the requirements set forth under PROMESA, the Board shall, <u>at its sole discretion,</u>** approve the proposed fiscal

---

[42] Section 201 of PROMESA, 48 USCA sec. 2142.
[43] Section 201 of PROMESA, 48 USCA sec. 2142.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    11
*Judgment*

plan, send a compliance certification to the Government and the Legislature for the above-referenced fiscal plan, and submit the plan to the Legislature.[44] Now, if the document or fiscal plan developed by the Governor **does not satisfy all the requirements set forth under PROMESA, the Board shall, at its sole discretion**, provide the Governor: a notice of violation with recommendations to revise the Fiscal Plan and an opportunity to correct the identified violations.[45] In this case, the Governor shall have to submit a revised Fiscal Plan proposal that is in compliance with Section 201(b) of the PROMESA Act.

### b. CONSTITUTIONAL RIGHT OF ACCESS TO PUBLIC INFORMATION.[46]

More than three decades ago, in <u>Soto v. Srio. de Justicia</u>, 112 DPR 477 (1982), [our Supreme Court acknowledged] the right of the press and of the citizens in general to have access to public information as a fundamental constitutional right. This right is **closely connected to the exercise of the right to freedom of speech, freedom of the press, and freedom of association** officially enshrined in Art. II, Sec. 4 of the Constitution of Puerto Rico, LPRA, Volume 1 (2016). <u>Trans Ad de P.R. v. Junta de Subastas</u>, 174 DP 56 (2008); <u>Ortiz v. Dir. Adm. de los Tribunales</u>, 152 DPR 161 (2000). One of one.

Access to public information **constitutes a fundamental pillar of every democratic society. This knowledge enables citizens to properly assess and monitor public service, while contributing to an effective citizen engagement in the governmental processes that affect their social environment.** <u>Trans Ad de P.R. v. Junta de Subastas</u>, *supra*; <u>Colón Cabrera v. Caribbean Petroleum</u>, 170 DPR 582 (2007). **This contributes to transparency in government functions and promotes a sound public administration.** C.F. Ramos-Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR No. 4, p. 1015 (2016).

We must not forget that, in our political reality, the government"s existence , as entity, is based on the People it serves.

---

[44] Section 201 (c) (3) and (e) (1), and Section 202 (c) (1).
[45] Section 201 (c) (3) of PROMESA, *supra*.
[46] Given their importance and their relevance to the dispute under our consideration, this Court fully embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 22-26.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                              12
*Judgment*

Regardless of the definition we may give to the concept of "democracy," its cardinal principle is that the political power shall lie in the people and that rulers carry out their functions for the people and under the people"s mandate. A people could hardly govern themselves if they are unaware of whatever that goes on with the management of their own affairs. E. Rivera-Ramos, *La libertad de información: necesidad de su reglamentación en Puerto Rico*, 44 Rev. Jur. UPR, Nos. 1-2, p. 69 (1975).

Similarly, **it is not possible to effectively exercise the rights under Art. II. Sec. 4 of the Constitution of Puerto Rico,** *supra,* **<u>if there is no evidence of the business of those elected to govern.</u>**

> **<u>The premise is straightforward, if the People are not duly informed about the way in which public management is carried out, their freedom to express their satisfaction or dissatisfaction with the people, the rules, or the processes that govern them through voting or any other means, could be curtailed</u>**. Ortiz v. Dir. Adm. de los Tribunales, *supra*, p. 175.

Art. 409 of the Civil Procedure acknowledges the right of all citizens to inspect and copy any public document of Puerto Rico. 32 LPRA sec. 1781 (2004). Now, the right to information does not operate in a vacuum. The document intended to be disclosed must, indeed, have this public status. Ortiz v. Dir. Adm. de los Tribunales, *supra*.

Our legal system defines the term "public document" as follows:

> [A] ny document which originates or is kept or received in any dependency of the Commonwealth of Puerto Rico according to the law or in relation to the management of public affairs and that pursuant to the provisions of § 1002 of this title is required to be permanently or temporarily preserved as evidence of transactions or for its legal value. It includes those documents produced electronically which meet the requirements established by law and regulations. Art. 3(b) of Law No. 5 of December 8, 1955, Puerto Rico Public Documents Administration Act, as amended, 3 LPRA sec. 1001 (b) (2011).

Therefore, the right to information is not an absolute right and shall be subject to limitations that may be imposed by the State **as a matter of <u>urgent</u> necessity**. Ortiz v. Dir. Adm. de los Tribunales, *supra.* However, these restrictions must be duly justified, since access to public information cannot be capriciously or arbitrarily denied. Colón Cabrera v. Caribbean Petroleum, *supra*. **For, given its status as a fundamental right, in order for them to prevail, the restrictions imposed by the government must respond to a <u>compelling</u> government interest.** Nieves v. Junta, 160 DPR 97; Noriega v. Gobernador, 130 DPR 919 (1992).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    13
*Judgment*

No legislation has been enacted in our jurisdiction to specifically limit the access of
public scrutiny to governmental documents. Colón Cabrera v. Caribbean Petroleum, *supra*.
Now, by means of the disputes brought before [the Supreme Court] to address this problem,
[we have] been able to outline the following situations where the State is allowed to validly
claim the confidentiality of the information they possess. These include, when: (1) it is so stated
by law; (2) the communication is protected by any of the evidentiary privileges that may be
invoked by citizens; (3) disclosing the information may undermine third parties" rights ; (4) it
involves the identity of an informant, and (5) it is "official information" pursuant to Rule 514 of
the Rules of Evidence, 2009, 32 LPRA Ap. VI (2010) (previously, Rule 31 of the Rules of
Evidence). Colón Cabrera v. Caribbean Petroleum, *supra*. We must bear in mind that **it is up to
the State to prove the application of any of the aforementioned exceptions in order to be able
to validate their claim of confidentiality.** Colón Cabrera v. Caribbean Petroleum, *supra*.

### c. THE PRIVILEGE OVER OFFICIAL INFORMATION – IN GENERAL[47]

A claim of confidentiality on the part of the government may thrive when it is privileged
official information, among others. Colón Cabrera v. Caribbean Petroleum, *supra*; Santiago v.
Bobb y El Mundo, Inc., 117 DPR 153 (1986). Thus, Rule 154 of the Rules of Evidence, *supra*, lays
down in our legal system the so-called privilege over official information. Said provision
defines "official information" as "information acquired in confidence by a public officer or
employee in the course of his duty and not open or officially disclosed to the public prior to the
time the claim of privilege is made." Rule 514(a) of the Puerto Rico Rules of Evidence, *supra*.
This privilege is activated "if the court determines that said matter is official information and
disclosure of it is forbidden by law, or that disclosure of such information in the proceeding
would be prejudicial to the interest of the government." Rule 514(b) of the Puerto Rico Rules of
Evidence, *supra*.

Professor Chiesa-Aponte explains that:

> On the one hand, the privilege is based on the need of the government to
> keep certain information confidential for the government's good functioning,
> particularly with regard to the frank discussion of the alternatives or
> potential

---

[47] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the
legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia
Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 26-29.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          14
*Judgment*

courses of action to address the State"s multiple social, economic, and other problems […]." E.L. Chiesa-Aponte, *Tratado de derecho probatorio*, Dominican Republic, Ed. Corripio, [no year], T.I., p. 292.

Now, **this privilege is not absolute, but qualified, and is subject to a balance of interest analysis.** Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 292. Therefore, <u>when assessing this privilege, the need for the government to maintain the confidentiality of certain sensitive information must be weighed against the prejudice that may be invoked by the government and, on the other hand, the need of the requesting party and their right to obtain said information</u>. E.L. Chiesa-Aponte, *Reglas de Evidencia Comentadas,* San Juan, Ed. Situm,  2016, p. 164. Therefore, we can only talk about the privilege when "it is ‚official information' and if the balance of interests tips in favor of confidentiality." Chiesa-Aponte, *Tratado de derecho probatorio*, op.cit., p. 307. <u>In claiming the confidentiality of official information, the government must accurately and unequivocally prove the applicability of the privilege.</u>  <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*. As previously explained, "[t]he high standing of the constitutional right of access to information hinders the governmental claim of confidentiality, particularly in the absence of a regulatory statute." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 304. See, also, <u>Colón Cabrera v. Caribbean Petroleum</u>, *supra*. In this regard, given the lack of legislation to delimit the scope of the privilege, it "must be particularly warily examined." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 304, citing <u>Peña Clos v. Cartagena Ortiz</u>, 114 DPR 576, 599 (1983). [17] Thus, with the scales tipped against the privilege, the government shall -eventually- have the obligation to "provide evidence and prove the existence of compelling interests that are more important than the values protected by this citizens' right to freedom of information." Chiesa-Aponte, *Tratado de derecho probatorio,* op. cit., p. 308, citing Noriega v. Gobernador, supra, p. 938. In light of the above, **the government may not invoke the privilege in a generalized manner.** <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*; see, also, Chiesa-Aponte, *Tratado de derecho probatorio, op. Cit.,* p. 310. Profesor Chiesa-Aponte also believes that "[t]he citizen's right of access to information regarding government affairs justifies the imposition of a burden of persuasion upon the government when it claims the privilege of official information." Chiesa-Aponte, *Tratado de derecho probatorio, op. cit.,* p. 295. In brief, the courts must be "careful not to lightly grant any request for confidentiality by



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                           15
*Judgment*

The State." <u>Santiago v. Bobb y El Mundo, Inc.</u>, *supra*, p. 159. In assessing whether the privilege should be granted, "[t]he alternatives of in-chamber inspection or providing limited access to the confidential file are always available." Chiesa-Aponte, *Tratado de derecho probatorio*, op. cit., p. 310. Now, as we will discuss later, the option of in-chamber examination may be limited based on the circumstances of each case.[48]

### d. THE PRIVILEGE OVER OFFICIAL INFORMATION – DECISION-MAKING INFORMATION IN DELIBERATIVE PROCESSES INVOLVING PUBLIC POLICY[49]

Among the key types of privileged official information is the one used by public officials during deliberative processes relating to public policymaking. Chiesa-Aponte, *Tratado de derecho probatorio*, op. cit., pp. 292-293. This category of the official information privilege seeks to "promote the frankest level of communication between governmental government officials in charge of deciding and enforcing the State"s public policy." Chiesa -Aponte, *Tratado de derecho probatorio*, op. cit., p. 293. Based on the foregoing, we believe that Professor Chiesa refers to the government"s qualified deliberative process privilege. See 6 *Moore's Federal Practice* Sec. 26.52 (3rd Ed. 2016) and 26A *Wright & Graham, Federal Practice and Procedure: Evidence* Sec. 5680 (1992).

This privilege prevents the quality of governmental decisions and the agencies" advisory role from being affected. P.F. Rothstein and S.W. Crump., *Federal Testimonial Privileges: Evidentiary Privileges Relating to Witnesses & Documents in Federal Law Cases*, 2nd Ed., West, 2012, Sec. 5:3, pp. 431-432. In this regard, it has been acknowledged that "[…] *a substantial public interest exists in maintaining and ensuring full, frank, open exchanges of ideas between members of the agency and other advisors and the decision maker.*" Rothstein and Crump, op. cit., p. 433. Also, restricting access to this type of communication protects "*against* **premature disclosure** *of proposed policies and decisions before they have been finally formulated or adopted*". [ ] Rothstein and Crump, op. cit., p. 436. To benefit from the privilege over deliberative processes, the government must comply with the following process: (1) the head of the agency that controls the information must officially claim

---

[48] (Underlining, emphasis, italics, and citations in the original). (Scholia omitted.)

[49] Given their importance and their relevance to the dispute under our consideration, this Court fully embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, pp. 29-33.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                16
*Judgment*

the privilege, after weighing it; (2) an agency official must provide the exact reasons why the confidentiality of the information or documents is claimed, and (3) the government must identify and describe the information or the documents it intends to protect. *Moor's Federal Practice,* supra, p. 26-412.10(1). See, also, United States v. Reynolds, 345 US 1 (1953).

**Furthermore, in order to activate the privilege, the government must prove that the document in question is a "deliberative" and "pre-decisional" document.** *Moore's Federal Practice*, supra, p. 26-412.8. A piece of information can be considered as deliberative insofar as it relates to a policymaking process. *Moore's Federal Practice*, supra, p. 26-412.9. a document is "pre-decisional" when it is prepared to assist in the government"s decision -making process, in other words, prior to making said decisions. *Moore's Federal Practice*, supra, pp. 26-412.8 and 26-412.9. Therefore, "any information or documentation following the governmental decision is also not protected [...]" Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 293; N.L.R.B. v. Sears, Roebuck & Co., 421 US 132 (1975). Based on the above, this privilege does not cover factual matters. Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 293. Nor does it protect objective material or documents in which the agency adopts its position on an issue or dispute. *Moore's Federal Practice*, supra, págs. 26-412.6 y 26-412.7. For example, this privilege does not include "*advisory opinions, recommendations, and communications relating to policy formulations*". *Moore's Federal Practice*, supra, p. 26-412.8.

**In order to determine whether this privilege prevails, the court must conduct a balance of interest analysis.** Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 293. In weighing the balance of interests, some of the factors that must be considered by the court include: "[...] *the interests of the private litigant, the need for accurate judicial fact finding, the public's interest in learning how effectively the government is operating, the relevance of the evidence sought, the availability of other evidence, the role of the government in the litigation and issues involved, and the impact on the effectiveness of government employees*". *Moore's Federal Practice, supra, 2012, p. 26-412.11.* Also, the potential impact of the disclosure on the process of frankly discussing the policies and decisions in question must also be assessed. F.T.C. v. Warner Commun. Inc., 742 F.2d 1156 (9th Cir. 1984). In brief, this

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                    17
*Judgment*

privilege may be weakened if it is fully demonstrated that a particular need to obtain the information exists which outweighs the reasons for its confidentiality. *Moore's Federal Practice*, supra, p. 26-412.11. The courts must have flexibility at the time of assessing this privilege, so as to ensure the protection of the deliberative process. *Moore's Federal Practice*, supra, 2016, p. 26-412.10. However, our evidence code demands a strict interpretation when determining the existence of a privilege. Rule 518 of the Rules of Evidence, 32 LPRA Ap. VI (2010).[50]

### d. THE EXECUTIVE PRIVILEGE[51]

**The executive privilege** was acknowledged in our legal system in <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, resulting from the Constitution of Puerto Rico. Art. I, Sec. 2 and Art. IV, Secs. 1 and 4, Const. PR, LPRA, Volume 1 (2016). This privilege **seeks to protect communications between the Governor and his subordinates, advisors, or assistants.** Chiesa Aponte, *Reglas de Evidencia Comentadas*, op. cit., p. 165; J.J. Álvarez González, *Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos*, Bogotá, Ed. Temis, 2009, p. 363; Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 311. This is a qualified privilege; therefore, it does not grant the Executive Branch the absolute power to "retain information based on its alleged confidentiality." <u>Peña Clos v. Cartagena Ortiz</u>, *supra*, p. 598. See *Wright & Graham*, supra, p. 52. Thus, we must emphasize that "an allegation that lacks public privilege, that is not supported by adequate legislation, must be particularly warily examined." <u>Peña Clos v. Cartagena Ortiz</u>, supra, p. 599.

Consequently, "[i]t is, ultimately, up the Executive Branch to define the boundaries of that [privilege]." Peña Clos v. Cartagena Ortiz, *supra*, p. 598. See, also, <u>United States v. Nixon</u>, 418 US 683 (1974) y Chiesa Aponte, *Tratado de derecho probatorio*, op. cit., p. 312. As we have already stated, "the method of weighing the interests in conflict" has been used for this purpose. <u>Peña Clos v.</u>

---

[50] (Underlining, emphasis, italics, and citations in the original.) (Scholia omitted.)
[51] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra.

 I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          18
*Judgment*

    <u>Cartagena Ortiz</u>, *supra*, p. 598. See, also, <u>United States v. Nixon</u>, *supra*.[52]

### e. IN-CHAMBER INSPECTION[53]

    Although FOIA, 5 USCA 552(a)(4)(B) (2007) allows the examination of documents in chambers, federal courts have stated on numerous occasions that this alternative is unfavorable in cases where certain governmental privileges are claimed. See, for example, <u>Smith v. U.S. Marshals Serv.</u>, 517 Fed. Appx. 542 (9th Cir. 2013); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, 354 F.3d 1072 (9th Cir. 2004), partly repealed in other aspects by <u>Animal Legal Def. Fund v. U.S. Food & Drug Admin.</u>, 836 F.3d 987 (9th Cir. 2016); <u>Turner v. U.S. Dept. of the Treasury</u>, No. 15-CV00007-DAD-SKO, 2017 WL 1106030 (E.D. Cal. 2017); <u>Truthout v. Dept. of Justice</u>, 20 F. Supp. 3d 760 (E.D. Cal. 2014), aff'd, 667 F. Appx. 637 (9th Cir. 2016). It also should not be the first choice, since the Government should be initially afforded the opportunity to justify and prove its claim of confidentiality. <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Conservation Force v. Jewell</u>, 66 F. Supp. 3d 46 (D.D.C. 2014), aff d, No. 15-5131, 2015 WL 9309920 (D.C. Cir. 2015); <u>Truthout v. Dept. of Justice</u>, *supra*. This can be achieved by allowing the Government to replace the in-chamber inspection of the document in dispute. <u>Solers, Inc. v. Internal Revenue Serv.</u>, 827 F.3d 323 (4th Cir. 2016); <u>Hamdan v. U.S. Dept. of Justice</u>, 797 F.3d 759 (9th Cir. 2015); <u>Ethyl Corp. v. U.S. E.P.A.</u>, 25 F.3d 1241 (4th Cir. 1994). In other words, the court may rely on supplemental evidence to determine whether the privilege claimed by the Government is admissible. <u>Lane v. Dept. of Interior</u>, 523 F.3d 1128 (9th Cir. 2008); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*. If it is decided, at this stage, that the privilege is admissible, the in-chamber inspection shall not be required. <u>Lewis v. I.R.S.</u>, 823 F.2d 375 (9th Cir. 1987).

    For the purposes of the present case, we find that what is stated in the legislative record of one of the FOIA amendments with regard to the in-chamber inspection of documents is quite revealing and relevant. As stated:

---

[52] (Underlining, emphasis, italics, and citations in the original.) (Scholia omitted.)

[53] Given their importance and their relevance to the dispute under our consideration, this Court **fully** embraces the legal foundations stated in the *Opinion* issued by the Supreme Court in reviewing our *Resolution and Order*. See: *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra.

     I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                                      19
*Judgment*

> *H.R. 12471 amends the present law to permit such in camera examination at the discretion of the court. While in camera examination need not be automatic, in many situations it will plainly be necessary and appropriate. **<u>Before the court orders in camera inspection, the Government should be given the opportunity to establish by means of testimony or detailed affidavits that the documents are clearly exempt from disclosure.</u>** The burden remains on the Government under this law. [ ]* S. Rep. No. 93-1200, p. 9 (1974), <u>reprinted</u> in 1974 USCCAN 6285, 6287-88. See, also, <u>Lewis v. I.R.S.</u>, supra, p. 378 Sch. 4.

Finally, in some particular cases, the in-chamber examination may be unnecessary. See: <u>Hamdan v. U.S. Dept. of Justice</u>, *supra*; <u>Aids Healthcare Foundation v. Leavitt</u>, 256 Fed. Appx. 954 (9th Cir. 2007); <u>Lion Raisins v. U.S. Dept. of Agriculture</u>, *supra*; <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973); <u>Turner v. U.S. Dept. of the Treasury</u>, *supra*. Particularly, in the case of <u>Lion Raisins v. U.S. Dept. of Agriculture,</u> *supra*, it was concluded that, since there was no controversy regarding the type of information contained in the document in dispute, the in-chamber inspection would be an exercise in futility. Now, when the file and the Government's supplementary evidence does not satisfactorily justify the governmental privilege, then the court shall be able to conduct the in-chamber inspection of the disputed documents. <u>Islamic Shura Council of Southern California v. F.B.I.</u>, 635 F.3d 1160 (9th Cir. 2011); <u>Lane v. Dept. of Interior</u>, *supra*. See, also, 33 *Wright & Koch, Federal Practice and Procedure: Judicial Review* Sec. 8440, p. 524 (2006).

### IV.

Pursuant to the *Mandate* received, this Court is called upon to determine "whether the State can fulfill its burden of proof to support the claimed privileges. Of course, before that, [the Court] must determine **whether the document in question is, indeed, public in nature**. To be able to determine, in balancing interests, whether a privilege exists in this case, the parties must, **first**, put the court in a position to identify which are the interests in conflict."[54]

Having received the memoranda of law filed by the parties, in which they must have placed the Court "in a position to decide whether the document is public in nature and, if so, whether the claimed privileges are admissible,"[55] this Court finds, firstly, **that the document at**

---

[54] (Emphasis supplied). *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, p. 39.
[55] *Bhatia Gautier v. Rosselló Nevares, Court Opinion issued by Associate Judge Mr. Feliberti-Cintrón*, supra, p. 40.

   I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    20
*Judgment*

**issue is public** under the rule of law of the Promesa Act and, secondly, that the respondent **failed to meet its burden of proof to support the claimed privileges.** Moreover, the Court concludes that by weighing the interests in conflict, the State was not able to establish that a deliberative process existed that must be protected *vis-à-vis* the constitutional right to have access to information as citizens or as legislators to monitor government operations in light of the presence of a new governmental actor, the Board. The State also could not prove that the public interest would be better served by the confidentiality of the document than by its disclosure. This court cannot ignore that "secrecy in public affairs is an exception, not the rule."[56]

There is no dispute between the parties regarding the fact that the information requested herein consists of the document prepared by the Governor pursuant to Section 201 of PROMESA and submitted to the Board for its review.[57] The point at issue is whether the document is a public document. In other words, if the respondent was able to establish, by producing evidence to that end, that the document is pre-decisional because it contains deliberative information.

It is the position of the respondent that the **document** whose disclosure is requested is a pre-decisional document because it contains deliberative information. This, because the document was simply subject to changes, which proves that it was not final and, consequently, was deliberative. The respondent also broadly **mentions**, in a generalized manner and without any details or specificities, that the **document** is protected by the executive privilege. The respondent failed to conduct a detailed exercise to enlighten the Court as to the contents of the document, whether parts of it refer to conversations between the Government and his aides or advisors, recommendations, consultations, determinations of the Governor or of his support staff or advisors with regard to the Executive Branch's deliberative process the for the development of the bill before the Board, or whether it includes internal documents of the agencies. The State does not even mention if the document includes more information than the one requested by Section 201 of PROMESA, pursuant to which the document was prepared.

---

[56] See: *Santiago v. Bobb y el Mundo, Inc.* 117 DPR 153, 159 (1986).
[57] Section 201 of PROMESA, 48 USCA sec. 2142.



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

This, when the plaintiff himself specified that he was not interested in the disclosure of any such

information that could

I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate
translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    21
*Judgment*

be part of the document. **The plaintiff specified that he only wanted access to the numbers and data, the elements that, given the nature of the document – the fiscal budget – are the ones which are generally included.**[58]

On the other hand, it is well known that certain information contained in a document can be confidential or privileged in nature, but that does not necessarily mean that the entire document is confidential or privileged. This Court was not placed in a position to know what information is contained in the document. Moreover, by reading section 201 of PROMESA, this Court cannot conclude that the mental impressions or public policy decisions between the Governor and his advisors are part of the document. It is not required by section 201 of PROMESA.

Furthermore, this Court cannot conclude that the document is pre-decisional because it was subject to changes and because, according to the State, it shows a process of deliberation between the Board and the Governor. The fact is that the Board"s invo lvement is limited to verifying the compliance of the Fiscal Plan developed by the Governor under PROMESA and to requesting information or issuing recommendations related to the compliance of the Fiscal Plan. The Governor submitted his proposed Fiscal Plan to the Board for them to review and certify the plan's compliance with PROMESA. What the respondent [sic] is interested in knowing is the content of the draft Fiscal Plan– the numbers and data – developed by the Governor and submitted to the Board in accordance with the rule of law arising from section 202 of PROMESA.

The fact is that the respondent had a duty to prove and show that the information contained in the document was official information, that its disclosure would be detrimental to the interests of the Government. "**[T]he government cannot invoke the privilege in a generalized manner.**" "[T]he right of citizens to access information regarding government affairs justifies the imposition of a great **burden of persuasion upon the government when it claims the privilege of official information**." "[T]he courts must be "careful not to lightly grant any request for confidentiality by the State." The respondent invoked the privilege over official information in a generalized manner, without proving in any way that the disclosure of the draft Fiscal Plan would be detrimental to the interests of the State.

---

[58] "It is also not necessary to protect a communication that only contains data, not opinions, since it is precisely the integrity of the opinion what we seek to protect." *In Re Sealed Case,* 121 F. 3d 729, 737 (1997).



I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                          22
*Judgment*

On the other hand, the State also failed to prove that the **document at issue is "deliberative" and "pre-decisional."** It failed to produce specific evidence to show that the information contained in the draft Fiscal Plan developed by the governor is deliberative insofar as it relates to a policymaking process. Nor did they prove that the document was developed to help in the government's decision-making process, that is, **prior** to making said decisions. The Governor already made his decision by submitting the Fiscal Plan to the Board.[59] Note that the Board could only determine whether the Plan was in compliance with PROMESA, certify it and submit it to the Legislative Assembly or point out errors and grant a period of time for the Governor to make the identified corrections. Furthermore, the State failed to prove that the document contained information regarding the **communications between the Governor and his subordinates, advisors, or assistants. On the contrary, one the Governor submitted the draft Fiscal Plan to the Board on April 30, 2017, it becomes an autonomous entity under section 108 of PROMESA.**[60]

In this same respect, based on the facts we have established, Honorable Associate Supreme Court Judge Estrella-Martínez conclusively and categorically stated the following:

> The submittal before the Board is a mandate pursuant to the formal procedure of section 202 of the PROMESA Act, 48 U.S.C. sec. 2142. What happens here is that the Government makes a final budget proposal, which shall be sent to the Board for approval, instead of following the ordinary procedure of sending it directly to the Legislative Assembly. If the Draft Budget meets parameters set by the Board, it will be approved, and the Government will then be able to send it to the Legislative Assembly. This is why it cannot be considered as a draft. According to the statutory process, the document must be final, except only for the amendments recommended by the Board. I do not think that a working document, as the Government alleges, can be approved by the Board as a certified budget. Rather, we are faced with a congressional mandate whereby the Government of Puerto Rico now has a dual responsibility to primarily submit the Draft Budget before the Board, as well as eventually submitting it to the Legislative Assembly. In this sense, this is an official document submitted to the Board under a particular process for approval or amendment that is similar to the eventual legislative approval process.

---

[59] "According to the provisions of the PROMESA Act, the Governor knew that the document filed on April 30 could have been the budget for the Commonwealth of Puerto Rico if it was validated by the Board and subsequently approved by the Legislative Assembly. Therefore, the draft budget sent to the Financial Oversight and Management Board on April 30, 2017 does not constitute a simple deliberative exercise, but it represented a concrete public policy decision about how to distribute the funds available in the State"s treasury for the upcoming fiscal year. Thus, upon examining the process to produce the document at issue, we can conclude that the privilege of deliberative process cannot be applied to the heart of the matter, that is, the details of the expenditure of public funds." See: *Bhatia Gautier v. Rossello Nevares, Dissenting Opinion issued by Associate Judge Mrs. Rodríguez-Rodríguez,* supra, pp. 24-25.
[60] Section 108 (c) of PROMESA, 48 USCA sec. 2128

   I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    23
*Judgment*

    Therefore, at its official submission stage, the Draft Budget cannot be minimized as a document in a deliberative stage or a simple "draft."

    Contrary to the arguments of the Government of Puerto Rio, it has been established as a matter of law that, under the provisions of PROMESA, the Board cannot be considered as a subordinate, advisor, or assistant to the Executive Branch. In this sense, Section 108 of PROMESA, which expressly provides the Board"s autonomy, cannot be omitted from this ana lysis. 48 U.S.C. sec. 2128. Albeit outrageous, Puerto Rico"s colonial reality cannot be concealed with the purpose of creating fiction that intends to ignore the imperial role of the Board to reduce it to that of an Executive Branch"s subordinate, adv isor, or assistant. That fiction is not the reality faced by Puerto Rico. Secrecy only strengthens said reality.

Due to this being an issue of high public interest involving the constitutional rights of the Executive Branch and the Legislative Branch, and for it being a legal dispute in which this Court concluded that the aforementioned document is public, as well as after this Court having performed the balance of interests based on the type of documents, the in-chamber inspection is unnecessary. The in-chamber inspection would only have been the vehicle to be used if the State had stated compelling reasons that would have placed this Court in a position to understand that the examination of the document was essential to its analysis. The State did not provide any valid justification to support the confidentiality of the document. In other words, the State failed to prove that the disclosure of the information could affect or could be detrimental to public interest and to government operations.

To summarize, the State should have made a great effort to submit specific evidence proving the existence of interests that are above the values protected by the right to freedom of information.[61] For this reason, upon carefully considering all the allegations made by the parties, this Court rules that disclosing the information requested by the plaintiff is not harmful to any public or governmental interest, on the contrary, the State did not provide any reason to justify the secrecy of the document at issue.[62]

---

[61] See *ELA v. Casta*, 162 DPR 1 (2004).

[62] Access to information constitutes an essential tool to combat corruption, making the principle of transparency in public management a reality, and improving the quality of our democracies, which have been marked by a culture of secrecy and by public agencies whose information management policies are not aimed at facilitating people"s access to said information." See: *Bhatia Gautier v. Rossello Nevares, Dissenting Opinion issued by Associate Judge Mr. Colón-Pérez,* supra, p. 1, citing the Inter-American Commission on Human Rights of the Organization of American States. Special study on the right of access to information, Org. American States, Washington, D.C. 2007, p. 6.

     I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.

CERTIFIED TRANSLATION

SJ2017CV00271                                                                                    24
*Judgment*

## JUDGMENT

For the reasons explained above, with all issues having been submitted to the consideration of the Court in the memoranda of law, and given that the State failed to prove the existence of interests that are above the constitutional right of access to information, the plaintiff's request is hereby **UPHELD**, and the State is **ORDERED** to, within **10 days**, disclose the Draft Fiscal Plan submitted to the Board on April 30, 2017 pursuant to section 202 of PROMESA. This, for it being a public document, as well as due to the State"s failure to justify and prove the claim of confidentiality of the above-referenced document.

There is no valid justification on the part of the State that would move this Court to maintain the secrecy of the document at issue. Particularly, when our Supreme Court has historically provided that access to public information constitutes a fundamental pillar of every democratic society. The constitutional right of access to public information contributes to transparency in governmental operations and promotes a sound public administration.[63]

**BE IT RECORDED AND NOTICE HEREOF BE DULY GIVEN.**

In San Juan, Puerto Rico, on March 16, 2018.

## F/LAURACELIS ROQUES-ARROYO
## SUPERIOR COURT JUDGE

---

[63] C.F. Ramos Hernández, *Acceso a la información, transparencia y participación política*, 85 Rev. Jur. UPR No. 4, p. 1015 (2016).


I, Juan E. Segarra, USCCI #06-067/translator, certify that the foregoing is a true and accurate translation, to the best of my abilities, of the document in Spanish which I have seen.