**Estimated Hearing Date**: June 12, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: June 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

Case No. 17-BK-3283-LTS

(Jointly Administered)


# SUMMARY SHEET TO
# FIFTH INTERIM FEE APPLICATION OF PROSKAUER
# ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED
# AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR
# THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
# RICO, AS REPRESENTATIVE OF THE DEBTOR, THE COMMONWEALTH OF
# <u>PUERTO RICO, FOR THE PERIOD OCTOBER 1, 2018 THROUGH JANUARY 31, 2019</u>

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (the "<u>Commonwealth</u>") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

**<u>Schedule 1</u>**

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("<u>Proskauer</u>") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | October 1, 2018 through January 31, 2019 (the "<u>Compensation Period</u>") |
| Amount of Fees Sought <u>excluding Gross-Up Amount</u>: | $6,776,395.60 |
| Gross-Up Amount[2]: | $263,437.62 |
| Amount of Expense Reimbursement Sought: | $286,789.32 |
| Total Fees and Expenses Sought for Compensation Period <u>including</u> Gross-Up Amount: | $7,326,622.54 |

This is a(n)  ____ Monthly __X__ Interim __ Final Fee Application

This is the fifth interim fee application filed by Proskauer in the Debtor's Title III case. The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

[2]  Pursuant to Proskauer's fee arrangement with the Oversight Board, Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "<u>Gross-Up Amount</u>") introduced by the Commonwealth legislation (Act 257-2018) starting December 10, 2019 (the "<u>Withholding</u>"). But, Proskauer will only request from the Debtors payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

## Fifth Interim Compensation Period
## October 1, 2018 – January 31, 2019

| Statement and Date Served | Period Covered | Total Fees Incurred | Total Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Eighteenth** 1/3/2019 | 10/1/18 to 10/31/18 | $1,802,809.30 | $1,622,528.37 | $61,701.44 | $1,622,528.37 | $61,701.44 |
| **Eighteenth (Puerto Rico)** 1/3/2019 | 10/1/18 to 10/31/18 | $35,369.40 | $31,832.46 | $0.00 | $31,832.46 | $0.00 |
| **Nineteenth** 2/21/2019 | 11/1/18 to 11/30/18 | 1,783,742.50 | $1,605,368.25 | $26,372.10 | $1,605,368.25 | $26,372.10 |
| **Nineteenth (Puerto Rico)** 2/21/2019 | 11/1/18 to 11/30/18 | $51,915.60 | $46,724.04 | $0.00 | $46,724.04 | $0.00 |
| **Twentieth** 3/8/2019 | 12/1/18 to 12/9/18 | $544,856.80 | $490,371.12 | $11,181.78 | $490,371.12 | $11,181.78 |
| **Twentieth (Puerto Rico)** 3/8/2019 | 12/1/18 to 12/9/18 | $2,049.30 | $1,844.37 | $0.00 | $1,844.37 | $0.00 |
| **Twenty-First** 4/1/2019 | 12/10/18 to 12/31/18 | $1,203,731.80 | $1,083,358.62 | $30,230.13 | $1,083,358.62 | $30,230.13 |
| **Twenty-Second** 4/19/2019 | 1/1/19 to 1/31/19 | $1,351,920.90 | $1,216,728.81 | $157,303.87 | $1,216,728.81 | $157,303.87 |
| | **Totals:** | **$6,776,395.60** | **$6,098,756.04** | **$286,789.32** | **$6,098,756.04** | **$286,789.32** |

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys | $764.78[3] |
| Blended Rate in This Application for All Timekeepers | $649.19 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $6,098,756.04 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $286,789.32 |
| Number of Professionals Included in this Application[4] | 95 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client[5] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period | 29 |
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No.  Proskauer's engagement letter provided for rate increases.  The amount of compensation attributable to Proskauer's rate increase for the current fiscal year is approximately $51,276.00, representing approximately 0.76% of the requested fees for this Compensation Period. |

---

[3]  This rate excludes non-attorneys (*e.g.*, paralegals).

[4]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[5]  As noted in the budget Staffing Plan, the number of timekeepers expected to work on the matter during the Compensation Period was 98, and thus the actual number of timekeepers was 3 fewer than anticipated.

**Schedule 2**

**Summary of Professional Services Rendered by
Timekeeper for the Period October 1, 2018 through January 31, 2019**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| **PARTNERS** | | | | |
| Ashton, Ann M. | Litigation – 1980 | $759 | 160.90 | $122,123.10 |
| | | $789 | 3.30 | $2,603.70 |
| Barak, Ehud | BSGR&B[7] – 2010 | $759 | 213.00 | $161,667.00 |
| | | $789 | 84.90 | $66,986.10 |
| Batten, Mark W. | Labor & Employment – 1988 | $759 | 2.30 | $1,745.70 |
| | | $789 | 28.60 | $22,565.40 |
| Bienenstock, Martin J. | BSGR&B  – 1978 | $759 | 330.00 | $250,470.00 |
| | | $789 | 74.20 | $58,543.80 |
| Brenner, Guy | Labor & Employment – 2002 | $759 | 72.60 | $55,103.40 |
| | | $789 | 18.90 | $14,912.10 |
| Cantone, Robert A. | Corporate – 1978 | $759 | 0.20 | $151.80 |
| Corn, Richard M. | Tax – 2005 | $759 | 0.80 | $607.20 |
| Dale, Margaret A. | Litigation – 1990 | $759 | 97.50 | $74,002.50 |
| | | $789 | 16.60 | $13,097.40 |

---

[6]  In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases.  Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion."  Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.  Because Proskauer's fees under the Engagement Letter are a blended rate (currently $789 for attorneys, $390 for e-discovery attorneys, and $270 for all other professionals), no annual step increases will be applicable to the rates charged in this matter. Additionally as of January 1, 2019, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour.

[7]   Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Faust, Scott A. | Labor & Employment – 1985 | $789 | 1.10 | $867.90 |
| Febus, Chantel L. | Litigation – 2003 | $759 | 268.10 | $203,487.90 |
| | | $789 | 20.60 | $16,253.40 |
| Ferrara, Ralph C. | Litigation – 1970 | $759 | 271.80 | $206,296.20 |
| | | $789 | 34.20 | $26,983.80 |
| Firestein, Michael A. | Litigation – 1983 | $759 | 159.30 | $120,908.70 |
| | | $789 | 35.20 | $27,772.80 |
| Gerkis, James P. | Corporate – 1984 | $759 | 3.10 | $2,352.90 |
| | | $789 | 1.00 | $789.00 |
| Golub, Ira M. | Labor & Employment – 1980 | $759 | 2.50 | $1,897.50 |
| | | $789 | 1.50 | $1,183.50 |
| Hamburger, Paul M. | Labor & Employment – 1985 | $759 | 20.30 | $15,407.70 |
| | | $789 | 55.20 | $43,552.80 |
| Harris, Mark D. | Litigation – 1992 | $759 | 12.10 | $9,183.90 |
| | | $789 | 0.80 | $631.20 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $759 | 77.20 | $58,594.80 |
| | | $789 | 9.60 | $7,574.40 |
| Martinez, Carlos E. | Corporate – 1988 | $759 | 3.90 | $2,960.10 |
| | | $789 | 2.30 | $1,814.70 |
| Mashberg, Gregg M. | Litigation – 1978 | $759 | 20.10 | $15,255.90 |
| | | $789 | 3.00 | $2,367.00 |
| Mungovan, Timothy W. | Litigation – 1994 | $759 | 284.60 | $216,011.40 |
| | | $789 | 62.90 | $49,628.10 |
| Perra, Kevin J. | Litigation – 1995 | $759 | 91.50 | $69,448.50 |
| | | $789 | 14.90 | $11,756.10 |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Piccirillo, Antonio N. | Corporate – 1996 | $759 | 1.20 | $910.80 |
| | | $789 | 2.50 | $1,972.50 |
| Possinger, Paul V. | BSGR&B – 1993 | $759 | 225.50 | $171,154.50 |
| | | $789 | 85.10 | $67,143.90 |
| Rappaport, Lary Alan | Litigation – 1979 | $759 | 123.50 | $93,736.50 |
| | | $789 | 22.80 | $17,989.20 |
| Ratner, Stephen L. | Litigation – 1975 | $759 | 163.50 | $124,096.50 |
| | | $789 | 37.40 | $29,508.60 |
| Richman, Jonathan E. | Litigation – 1984 | $759 | 296.20 | $224,815.80 |
| | | $789 | 71.30 | $56,255.70 |
| Rosen, Brian S. | BSGR&B – 1983 | $759 | 294.00 | $223,146.00 |
| | | $789 | 69.40 | $54,756.60 |
| Snell, Dietrich L. | Litigation – 1983 | $759 | 147.20 | $111,724.80 |
| Triggs, Matthew H. | Litigation – 1990 | $759 | 52.40 | $39,771.60 |
| | | $789 | 13.50 | $10,651.50 |
| Vermal, Ana | Litigation – 2001 | $759 | 68.60 | $52,067.40 |
| | | $789 | 2.20 | $1,735.80 |
| Weise, Steven O. | Corporate – 1974 | $759 | 0.70 | $531.30 |
| **Total for Partners:** | | | **4,237.60** | **$3,239,528.40** |
| *SENIOR COUNSEL* | | | | |
| Forman, Daniel L. | Corporate – 2009 | $759 | 2.00 | $1,518.00 |
| | | $789 | 1.30 | $1,025.70 |
| Galler, Jonathan A. | Litigation – 2004 | $759 | 24.70 | $18,747.30 |
| Leader, Jordan B. | Litigation – 2000 | $759 | 7.90 | $5,996.10 |
| | | $789 | 0.70 | $552.30 |

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Roberts, John E.[8] | Litigation – 2009 | $759 | 120.70 | $91,611.30 |
| | | $789 | 21.70 | $17,121.30 |
| **Total for Senior Counsel:** | | | **179.00** | **$136,572.00** |
| *ASSOCIATES* | | | | |
| Ardila, Fabio A. | Corporate  – 2011 | $759 | 5.10 | $3,870.90 |
| Bargoot, Alexandra V. | Litigation – 2016 | $759 | 62.30 | $47,285.70 |
| | | $789 | 20.60 | $16,253.40 |
| Blackwell, Brooke H. | Corporate – 2018 | $759 | 96.80 | $73,471.20 |
| | | $789 | 52.40 | $41,343.60 |
| Chalett, Zachary | Litigation  – 2017 | $759 | 330.50 | $250,849.50 |
| | | $789 | 39.40 | $31,086.60 |
| Clark, Brandon C. | Litigation – 2014 | $759 | 22.00 | $16,698.00 |
| Crawley, Jacquelyn N. | Litigation – 2012 | $789 | 3.80 | $2,998.20 |
| Cushing, Blake R.[9] | Litigation  – 2018 | $789 | 45.30 | $35,741.70 |
| Dalsen, William D. | Litigation – 2011 | $759 | 16.90 | $12,827.10 |
| | | $789 | 0.40 | $315.60 |
| Desatnik, Daniel | BSGR&B – 2016 | $759 | 116.10 | $88,119.90 |
| | | $789 | 16.80 | $13,255.20 |
| Esses, Joshua A. | Corporate  – 2017 | $759 | 175.50 | $133,204.50 |
| | | $789 | 31.30 | $24,695.70 |
| Fiur, Seth | Litigation – 2014 | $759 | 0.20 | $151.80 |
| Friedman, Amelia A. | Litigation – 2013 | $759 | 1.50 | $1,138.50 |
| | | $789 | 7.50 | $5,917.50 |
| Huffman, James R. | Tax – 2017 | $789 | 2.30 | $1,814.70 |

---

[8]   Appointed as Senior Counsel effective November 1, 2018

[9]   Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Kim, Mee R. | Litigation – 2016 | $759 | 298.50 | $226,561.50 |
| | | $789 | 45.40 | $35,820.60 |
| Kowalczyk, Lucas | Litigation – 2017 | $759 | 6.20 | $4,705.80 |
| Ma, Steve | BSGR&B – 2014 | $759 | 191.00 | $144,969.00 |
| | | $789 | 27.70 | $21,855.30 |
| Mazurek, Carl A.[10] | Litigation – 2018 | $759 | 44.50 | $33,775.50 |
| | | $789 | 25.80 | $20,356.20 |
| Morris, Matthew J. | Litigation – 2000 | $759 | 213.10 | $161,742.90 |
| | | $789 | 17.30 | $13,649.70 |
| Palmer, Marc C. | Litigation – 2018 | $759 | 28.20 | $21,403.80 |
| | | $789 | 6.60 | $5,207.40 |
| Pellegrino, Nicholas | Corporate – 2017 | $759 | 1.40 | $1,062.60 |
| | | $789 | 0.40 | $315.60 |
| Roberts, John E.[11] | Litigation – 2009 | $759 | 20.00 | $15,180.00 |
| Rochman, Matthew I. | Litigation – 2010 | $789 | 7.90 | $6,233.10 |
| Skellet, Alexandra K. | Litigation – 2003 | $759 | 22.40 | $17,001.60 |
| | | $789 | 5.90 | $4,655.10 |
| Stach, Alyse F. | Litigation – 2011 | $759 | 16.30 | $12,371.70 |
| Stafford, Laura | Litigation – 2012 | $759 | 307.30 | $233,240.70 |
| | | $789 | 69.60 | $54,914.40 |
| Stevens, Elliot R. | BSGR&B – 2018 | $759 | 76.40 | $57,987.60 |
| | | $789 | 66.30 | $52,310.70 |
| Theodoridis, Chris | BSGR&B – 2011 | $759 | 129.90 | $98,594.10 |
| | | $789 | 4.00 | $3,156.00 |

[10] Admitted to the bar during the Compensation Period. Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

[11] Appointed as Senior Counsel effective November 1, 2018

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Vora, Hena M.[12] | Litigation – 2018 | $759 | 17.70 | $13,434.30 |
| | | $789 | 40.40 | $31,875.60 |
| Wolf, Lucy C. | Litigation – 2017 | $759 | 308.20 | $233,923.80 |
| | | $789 | 45.30 | $35,741.70 |
| Wolkinson, Rachel O. | Litigation – 2006 | $759 | 23.30 | $17,684.70 |
| Zerjal, Maja | BSGR&B – 2012 | $759 | 338.10 | $256,617.90 |
| | | $789 | 170.00 | $134,130.00 |
| **Total for Associates:** | | | **3,621.80** | **$2,771,518.20** |
| *LAW CLERKS* | | | | |
| Carino, Elisa M. | Litigation Law Clerk – N/A | $260 | 189.20 | $49,192.00 |
| | | $270 | 32.70 | $8,829.00 |
| Cushing, Blake R.[13] | Litigation Law Clerk – N/A | $260 | 150.00 | $39,000.00 |
| Jones, Erica T. | Litigation Law Clerk – N/A | $260 | 25.60 | $6,656.00 |
| Mazurek, Carl A.[14] | Litigation Law Clerk – N/A | $260 | 70.80 | $18,408.00 |
| Omorogbe, Philip | Corporate Law Clerk – N/A | $260 | 101.20 | $26,312.00 |
| | | $270 | 10.60 | $2,862.00 |
| Rogoff, Corey I. | Litigation Law Clerk – N/A | $260 | 0.90 | $234.00 |
| Sosa, Javier F. | Litigation Law Clerk – N/A | $260 | 118.40 | $30,784.00 |
| | | $270 | 48.50 | $13,095.00 |

[12] Admitted to the bar during the Compensation Period. Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

[13] Admitted to the bar during the Compensation Period. Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

[14] Admitted to the bar during the Compensation Period. Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Vora, Hena M.[15] | Litigation Law Clerk  – N/A | $260 | 9.70 | $2,522.00 |
| Wertheim, Eric R. | Litigation Law Clerk  – N/A | $260 | 24.60 | $6,396.00 |
| **Total for Law Clerks:** | | | **782.20** | **$204,290.00** |
| *PARAPROFESSIONALS* | | | | |
| Chernus, Eric R. | Professional Resources – N/A | $260 | 12.00 | $3,120.00 |
| | | $270 | 9.90 | $2,673.00 |
| Cooper, David C. | Corporate Paralegal – N/A | $260 | 88.70 | $23,062.00 |
| | | $270 | 45.50 | $12,285.00 |
| D'Errico, Megan T. | Library – N/A | $260 | 4.00 | $1,040.00 |
| Dillon, Emma K. | Litigation Paralegal – N/A | $260 | 6.10 | $1,586.00 |
| | | $270 | 3.90 | $1,053.00 |
| Evans, Carla J. | Library – N/A | $260 | 2.00 | $520.00 |
| Geary, Laura M. | Litigation Paralegal – N/A | $260 | 125.10 | $32,526.00 |
| | | $270 | 46.50 | $12,555.00 |
| Giddens, Magali | BSGR&B Paralegal – N/A | $260 | 34.40 | $8,944.00 |
| | | $270 | 0.60 | $162.00 |
| Henderson, Laurie A. | Professional Resources – N/A | $260 | 3.10 | $806.00 |
| | | $270 | 1.10 | $297.00 |
| Ike, Yvonne O. | Professional Resources – N/A | $260 | 42.80 | $11,128.00 |
| Infante, Elle M. | Litigation Paralegal – N/A | $260 | 39.00 | $10,140.00 |
| | | $270 | 4.80 | $1,296.00 |
| Lavine, Judith A. | Library – N/A | $260 | 2.40 | $624.00 |

---

[15] Admitted to the bar during the Compensation Period.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, law clerks are reclassified and billed as associates beginning on the first day of the month following such admission.

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Miller, Tiffany | Labor & Employment Paralegal – N/A | $260 | 52.00 | $13,520.00 |
| | | $270 | 20.60 | $5,562.00 |
| Moller, Rachel H. | Library – N/A | $260 | 13.50 | $3,510.00 |
| Monforte, Angelo | Litigation Paralegal – N/A | $260 | 204.50 | $53,170.00 |
| | | $270 | 64.10 | $17,307.00 |
| Peterson, Cathleen P. | Professional Resources – N/A | $260 | 0.90 | $234.00 |
| Petrov, Natasha B. | BSGR&B Paralegal – N/A | $260 | 60.30 | $15,678.00 |
| | | $270 | 13.40 | $3,618.00 |
| Silvestro, Lawrence T. | Litigation Paralegal – N/A | $260 | 163.20 | $42,432.00 |
| | | $270 | 70.00 | $18,900.00 |
| Sutherland, Julia L. | Litigation Paralegal – N/A | $260 | 52.00 | $13,520.00 |
| | | $270 | 79.10 | $21,357.00 |
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $260 | 220.50 | $57,330.00 |
| | | $270 | 12.60 | $3,402.00 |
| Urias, Gabriela A. | Litigation Paralegal – N/A | $260 | 22.80 | $5,928.00 |
| Volpicello, Alexander J. | Litigation Paralegal – N/A | $260 | 0.50 | $130.00 |
| Wizner, Eamon | Litigation Paralegal – N/A | $260 | 18.40 | $4,784.00 |
| | | $270 | 3.40 | $918.00 |
| Wolf, Joseph P. | Litigation Paralegal – N/A | $260 | 54.40 | $14,144.00 |
| | | $270 | 13.00 | $3,510.00 |
| Yang, Meesun | Professional Resources – N/A | $260 | 6.60 | $1,716.00 |
| **Totals for Paraprofessionals:** | | | **1,617.70** | **$424,487.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys, Law Clerks,  and Paraprofessional Totals:** | **10,438.30** | **$6,776,395.60** |

### Schedule 3

**Summary of Professional Services Rendered by Project
Category for the Period October 1, 2018 through January 31, 2019**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 598.70 | $457,833.50 |
| 202 | Legal Research | 612.60 | $346,662.80 |
| 203 | Hearings and Other Non-Filed Communications with the Court | 124.60 | $95,597.40 |
| 204 | Communications with Claimholders | 229.60 | $166,819.20 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 71.50 | $54,643.50 |
| 206 | Documents Filed on Behalf of the Board | 1,040.30 | $786,278.60 |
| 207 | Non-Board Court Filings | 222.50 | $170,269.50 |
| 208 | Stay Matters | 531.50 | $378,731.90 |
| 209 | Adversary Proceeding | 5.20 | $3,946.80 |
| 210 | Analysis and Strategy | 2,983.70 | $2,183,837.50 |
| 211 | Non-Working Travel Time | 77.10 | $59,172.90 |
| 212 | General Administration | 1,544.80 | $412,361.20 |
| 213 | Labor, Pension Matters | 169.30 | $130,851.60 |
| 214 | Legal/Regulatory Matters | 4.30 | $3,263.70 |
| 215 | Plan of Adjustment and Disclosure Statement | 1,363.60 | $963,214.50 |
| 216 | Confirmation | 1.60 | $1,253.40 |
| 217 | Tax | 0.50 | $379.50 |
| 218 | Employment and Fee Applications | 203.10 | $79,734.70 |
| 219 | Appeal | 630.00 | $471,401.20 |

14

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 220 | Fee Applications for Other Parties | 13.30 | $4,905.10 |
| | **Total for All Project Categories:** | **10,438.30** | **$6,776,395.60** |

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period October 1, 2018 through January 31, 2019**

| EXPENSE CATEGORY | AMOUNTS |
|---|---|
| Airplane | $14,487.52 |
| Data Base Search Services | $130.13 |
| Dinner Voucher/SWEB | $1,222.02 |
| Food Service/Conf. Dining | $6,134.06 |
| Lexis/ Westlaw | $92,617.00 |
| Local Meals | $1,651.05 |
| Lodging | $10,740.00 |
| Messenger/Delivery | $858.83 |
| Other Database Research | $457.50 |
| Out of Town Meals | $705.06 |
| Out of Town Transportation | $2,811.67 |
| Outside Reproduction | $711.75 |
| Practice Support Vendors | $134,262.03 |
| Printing, Binding, etc. | $3,306.47 |
| Reproduction | $10,296.40 |
| Taxi, Carfare, Mileage and Parking | $1,677.19 |
| Taxicab/Car Service | $2,437.74 |
| Telephone | $350.00 |
| Transcripts & Depositions | $1,288.25 |
| Trial Transcriptions | $575.00 |
| Other Disbursements | $69.65 |
| **Total:** | **$286,789.32** |

16

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | **BILLED**<br>**Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, _excluding bankruptcy_** | **BILLED**<br>**In this fee application[16]** |
| Partners | $1,180 | $764.47 |
| Senior Counsel | $976 | $762.97 |
| Associates (7 or more years since first admission) | $885 | $765.23 |
| Associates (4-6 years since first admission) | $829 | $765.23 |
| Associates (1-3 years since first admission) | $672 | $765.23 |
| Law Clerks | $569 | $261.17 |
| Paraprofessionals | $301 | $262.40 |
| Other | $483 | N/A |
| **All Timekeepers Aggregated:** | **$859** | **$649.19** |

---

[16] As explained in more detail herein and in the Engagement Letter, in connection with its representation of the Oversight Board, both inside and outside of Title III, Proskauer agreed to a fee arrangement whereby (a) prior to January 1, 2019, partners, counsel, and associates were billed at $759 per hour, and all other staff were billed at $260 per hour, and (b) as of January 1, 2019, partners, counsel, and associates are billed at $789 per hour, e-discovery attorneys are billed at $390 per hour, and all other staff are billed at $270 per hour.

**Estimated Hearing Date**: June 12, 2019 at 9:30 a.m. (Atlantic Standard Time)
**Objection Deadline**: June 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

---------------------------------------------------------------x

PROMESA
Title III

Case No. 17 BK 3283-LTS

(Jointly Administered)

## FIFTH INTERIM FEE APPLICATION OF PROSKAUER
## ROSE LLP FOR COMPENSATION FOR SERVICES RENDERED
## AND REIMBURSEMENT OF EXPENSES INCURRED AS ATTORNEYS FOR
## THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO
## RICO, AS REPRESENTATIVE OF THE DEBTOR, THE COMMONWEALTH OF
## PUERTO RICO, FOR THE PERIOD OCTOBER 1, 2018 THROUGH JANUARY 31, 2019

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and Management

Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the Commonwealth

of Puerto Rico (the "Debtor" or "Commonwealth") pursuant to section 315(b) of the *Puerto Rico*

*Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] hereby submits this fifth

interim application (the "Application"),[3] pursuant to PROMESA sections 316 and 317, Rule 2016

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

[2] PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3] The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of other Title III debtors, or (b) outside the Title III process.

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4] Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this Court's *Second Amended Order Setting Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [ECF No. 3269] (the "Interim Compensation Order"), for (a) allowance of interim compensation for professional services performed by Proskauer for the period commencing October 1, 2018 through and including January 31, 2019 (the "Compensation Period") in the total amount of **$7,039,833.22**, which is comprised of (i) fees for professional services rendered in the amount of **$6,776,395.60**, $4,131,408.60 of which represents fees earned outside of Puerto Rico on or before December 9, 2018, $89,334.30 of which represents fees earned in Puerto Rico on or before December 9, 2018, and $2,555,652.70 represents fees earned on or after December 10, 2018,[5] and (ii) the Gross-Up Amount in the amount of **$263,437.62**;[6] and (b) reimbursement of its actual and necessary expenses in the amount of **$286,789.32** incurred during the Compensation Period. In support of the Application, Proskauer respectfully avers as follows:

---

[4] The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

[5] Until December 10, 2018, Proskauer prepared separate invoices each month for (*i*) work performed in Puerto Rico and (*ii*) work performed outside of Puerto Rico. This was because Puerto Rico taxed Proskauer differently depending on whether work was performed on-island or off-island. On December 10, 2018, Puerto Rico enacted tax reform (Act 257-2018) that eliminated this difference in tax treatment. As a result, beginning on December 10, 2018, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

[6] Proskauer will only request from the Debtor payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount. As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

## Jurisdiction

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

## Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.      On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

7.      On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

8.      On May 3, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under title III thereof

3

(the "Debtor's Title III Case").  Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

9.      Background information regarding the Debtor and its instrumentalities, and the commencement of the Debtor's Title III Case, is contained in the *Notice of Filing of Statement of Oversight Board in Connection with PROMESA Title III Petition* [ECF No. 1], attached to the Commonwealth's Title III petition.

10.     On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period May 3, 2017 through September 30, 2017* [ECF No. 2068] (the "First Interim Application").

11.     On April 9, 2018, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period October 1, 2017 through January 31, 2018* [ECF No. 2868] (the "Second Interim Application").

12.     On July 16, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period February 1, 2018 through May 31, 2018* [ECF No. 3588] (the "Third Interim Application").

13.     On November 16, 2018, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses*

*Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Commonwealth of Puerto Rico, for the Period June 1, 2018 through September 30, 2018* [ECF No. 4280] (the "Fourth Interim Application").

14.     On January 3, 2019, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its eighteenth monthly fee statement for the period October 1, 2018 through October 31, 2018.  On February 21, 2019, Proskauer served on the Notice Parties its nineteenth monthly fee statement for the period November 1, 2018 through November 30, 2018.  On March 8, 2019, Proskauer served on the Notice Parties its twentieth monthly fee statement for the period December 1, 2018 through December 9, 2018.  On April 1, 2019, Proskauer served on the Notice Parties its twenty-first monthly fee statement for the period December 10, 2018 through December 31, 2018. On April 19, 2019, Proskauer served on the Notice Parties its twenty-second monthly fee statement for the period January 1, 2019 through January 31, 2019.

15.     In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$6,385,545.36** (payment of ninety percent (90%) of the compensation sought and reimbursement of one-hundred percent (100%) of expenses incurred) and has received **$6,385,545.36** with respect to fee statements filed during the Compensation Period.

### Summary of Services Rendered by Proskauer During the Compensation Period

16.     The instant Application is Proskauer's fifth application for interim compensation in the Debtor's Title III Case.  To make more efficient for the Court and other readers the review of Proskauer's fee applications in all the pending Title III cases, paragraphs 16 through 22 of the instant Application, and the corresponding paragraphs in each of Proskauer's fifth interim fee

applications in the other pending Title III cases, are the same and cover the principal activities in all the Title III cases.

17.     In the Compensation Period, Proskauer continued to work on behalf of the Oversight Board to continue the significant progress achieved during the preceding interim periods.  In the first interim period, Proskauer transitioned the Commonwealth and certain of its instrumentalities to Title III, and, among other things, proposed and negotiated a mechanism to resolve the Commonwealth-COFINA dispute over which entity owns billions of dollars of sales and use tax revenues, and successfully defended against attempts by creditors to (a) seize the toll revenues HTA needed to maintain the Commonwealth's transportation system and (b) seize PREPA and its revenues by putting PREPA in the hands of a receiver.  In the second interim period, in the face of the devastation wrought by Hurricanes Irma and Maria, Proskauer worked with the Oversight Board's officers and other professionals to assess the situation, take actions to ensure the provision of basic services, and reformulate restructuring initiatives to reflect the changing economic landscape.  Proskauer also successfully defended against numerous creditor efforts to enjoin the Oversight Board from proceeding toward a plan of adjustment based on the certified fiscal plan and to seize many revenue streams.  In the third interim period, Proskauer secured emergency authorization for the Commonwealth to lend $300 million to PREPA on a superpriority basis, despite significant opposition by creditor groups, and continued its leading role in assisting the Oversight Board with the development, certification, and defense of revised fiscal plans that provide the blueprint for Puerto Rico's future prosperity and fiscal responsibility.  Proskauer also successfully defended against numerous creditor efforts to delay or frustrate the debtors' restructurings during these periods.  In the fourth interim period, Proskauer continued forging paths to restructure Puerto Rico's debt, representing the Oversight Board as the Administrative

Supervisor of the Government Development Bank for Puerto Rico's ("GDB") Title VI qualifying modification, representing the Oversight Board in negotiations seeking to restructure a major portion of PREPA's debt, and continuing to work through negotiations related to (and eventually resolving) the Commonwealth-COFINA dispute.  COFINA and GDB alone account for over $20 billion of Puerto Rico's $74 billion in bond debt, and their successful restructurings are significant building blocks for the Oversight Board to accomplish its overall mandate to achieve fiscal responsibility and access to capital markets for Puerto Rico. Proskauer also vigorously and successfully protected the Oversight Board's fiscal plan and budgetary powers in adversary proceedings commenced by the Governor and Legislature challenging the Oversight Board's authority, among other critical efforts in litigation during the fourth compensation period.

18.     In the instant Compensation Period, Proskauer's representation of the Oversight Board has involved legal representation and advocacy on multiple fronts, including, among other things, (a) defending the Oversight Board (for itself or as representative of a Title III debtor) in a multitude of litigation (identified below) brought mostly by creditors, (b) formulating and, in the case of COFINA, successfully confirming a Title III plan of adjustment, (c) negotiating debt restructurings and other deals, and (d) counselling the Oversight Board on carrying out its duties to restore fiscal responsibility and access to capital markets.

19.     In this Compensation Period, Proskauer built on the foundations laid in prior compensation periods to substantially advance the Title III Debtors' restructurings.  Proskauer played a pivotal role in resolving the Commonwealth-COFINA Dispute and in developing, filing and confirming a plan of adjustment for COFINA ("COFINA Plan of Adjustment") that restructured its $16 billion debt burden.  Specifically, Proskauer vigorously represented the Oversight Board as it led COFINA through its confirmation process, drafted and finalized the

COFINA Plan of Adjustment and related disclosure statement, defended against objections and challenges by various claimholders and other stakeholders (both in and out of court), and negotiated with creditors and other adverse stakeholders to facilitate COFINA's restructuring. COFINA's restructuring will play a key part in the overall revitalization of Puerto Rico and marks a watershed moment in these Title III cases.

20.     Outside COFINA, Proskauer continued its leading role in assisting the Oversight Board with the development and certification of revised fiscal plans. Proskauer also represented the Oversight Board in PREPA's Title III case, leading the defense against a renewed motion seeking to lift the stay to allow for the appointment of a receiver for PREPA, and dedicating significant effort to forward negotiations with a substantial number of PREPA bondholders to draft and finalize a restructuring support agreement (the "Definitive RSA"). Proskauer also drafted appellate briefs and presented oral arguments before the United States Court of Appeal of the First Circuit (the "First Circuit") concerning creditors' appeals seeking to reverse decisions protecting HTA and PREPA from creditor attempts to seize their revenues. Proskauer also worked with several of the Title III Debtors and their related advisors in opposing a multitude of motions seeking to lift the automatic stay and otherwise hamper their restructuring. Lastly, Proskauer has counseled the Oversight Board as it engaged with the Commonwealth's various creditors, stakeholders and professionals in mediations and negotiations related to the Commonwealth's restructuring, and has devoted significant time to research and develop strategies to accomplish the restructurings.

21.     Some of Proskauer's notable undertakings during this Compensation Period in furtherance and defense of the Oversight Board's mandate under PROMESA of returning the Commonwealth to fiscal responsibility and access to capital markets include:

- Certification of New Fiscal Plans and Budgets. Proskauer played an instrumental and extensive role in the development of new and/or amended certified fiscal plans and

budgets for the Commonwealth and its instrumentalities to reflect and account for ongoing developments in Puerto Rico. While the Oversight Board worked closely with the Commonwealth in trying to certify plans and budgets submitted by the Commonwealth and certain of its instrumentalities, these fiscal plans and budgets were ultimately not adopted by the Oversight Board, which developed and certified its own fiscal plans and budgets. Proskauer assisted the Oversight Board in this regard, including working with the Oversight Board's financial advisors to rigorously analyze data, assess the economic and structural impact of proposed fiscal plans, and ultimately assist the Oversight Board in drafting and certifying fiscal plans and budgets that will help achieve PROMESA's purpose of instilling fiscal responsibility and restoring the island's access to capital markets. Of particular note, Proskauer assisted the Oversight Board with its certification of a Commonwealth fiscal plan during the Compensation Period, and researched and briefed issues that arose concerning the certified fiscal plan. Proskauer counseled the Oversight Board through actual and threatened litigation from creditors, the Commonwealth government and legislature, and other stakeholders associated with the certified plan. In addition, Proskauer navigated the Oversight Board through new issues such as the Governor's contention he could unilaterally label fiscal plan provisions as recommendations he was free not to adopt, and represented the Oversight Board in addressing these emergent issues in the fiscal plan certified during the Compensation Period.

- Commonwealth-COFINA Dispute Resolution. During the Compensation Period, Proskauer continued to promote the Oversight Board's critical role in finalizing a resolution to the Commonwealth-COFINA Dispute. Proskauer devoted a substantial and well-measured amount of resources and hours formulating, researching, drafting and filing (*i*) a disclosure statement; (*ii*) a plan of adjustment; (*iii*) motions to approve the disclosure statement and setting related deadlines; and (*iv*) a 9019 settlement motion between the Commonwealth and COFINA (the "Settlement Motion"). The Settlement Motion was the culmination of over a year of negotiations and litigation regarding the Commonwealth-COFINA Dispute. Guided by this Court's appointed mediation team, the settlement established an important cornerstone for the Commonwealth's Title III Case to move towards its conclusion, and towards the Commonwealth's overall economic recovery and access to the capital markets. Since before the commencement of the Title III Cases, the dispute regarding whether the Commonwealth or COFINA owned the pledged sales tax revenue has been an overarching issue, central to Puerto Rico's overall restructuring. Resolution of this dispute ultimately determined the tax revenues available to the Commonwealth to fund its expenses, and to COFINA to service its debt. Proskauer's efforts played a central role in ensuring a mutually beneficial settlement, which was incorporated into COFINA's plan of adjustment.

- COFINA Plan Confirmation. A core team of Proskauer professionals prosecuted confirmation at the two-day hearing on January 16-17, 2019 regarding the COFINA Plan of Adjustment and the Settlement Motion. On February 4, 2019, the Court entered the (*i*) *Order and Judgement Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048] (the "COFINA Confirmation Order") and (*ii*) *Memorandum Opinion and Order Approving Settlement*

*Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "9019 Settlement Order").

The confirmation of the COFINA Plan of Adjustment was an important milestone not only for COFINA, but for Puerto Rico as a whole. The COFINA Plan of Adjustment reduced by thirty-two percent (32%) COFINA's approximately $18 billion of funded indebtedness (which represents more than 20% of Puerto Rico's approximate total of $74 billion in bond debt). In so doing, the COFINA Plan of Adjustment provides average annual savings on COFINA debt service through 2057 of approximately $456 million. Furthermore, the COFINA Plan of Adjustment settled ownership of certain sales and use taxes between COFINA and the Commonwealth. Without such settlement, COFINA's and the Commonwealth's Title III cases would have stood still, impeded by expensive litigation to determine ownership of the sales and use taxes. Accordingly, the confirmation of the COFINA Plan of Adjustment represented a significant accomplishment for COFINA, the Commonwealth, and the people of Puerto Rico to move forward towards economic recovery.

- Claim Objections. Pursuant to the Bar Date Orders [ECF Nos. 2521 and 3160], approximately 165,466 proofs of claim were timely filed against the Debtors and logged by Prime Clerk. Such proofs of claim total approximately $43.5 trillion in asserted claims against the Debtors. Of the proofs of claim filed, approximately 3,500 were timely filed in relation to COFINA. The COFINA-related proofs of claim total approximately $10.1 trillion in asserted claims. COFINA is a special purpose entity with only approximately $17 billion of funded indebtedness. Upon review and further assessment by Proskauer, it became clear that many of these claims need not have been filed at all, or suffered from some other flaw, such as improperly identifying COFINA as the debtor, or being duplicative of other proofs of claim. In connection with these claims, Proskauer, working with other professionals, filed a total of 19 omnibus objections and over 20 individual objections. Proskauer spent a significant amount of time and effort reviewing responses to the various objection to claims, negotiating resolutions to the objections with creditors, preparing and filling replies in support of their objections, and attending several related hearings. As a result, approximately 3,100 claims were disallowed, subordinated or reclassified.

- UCC Rule 2004 Motion. Proskauer continued its defense against the renewed motion by the Official Committee of Unsecured Creditors (the "Unsecured Creditors' Committee" or "UCC") seeking to undertake an expansive discovery program pursuant to Bankruptcy Rule 2004. Following Judge Dein's order affirming the Oversight Board's position that a wholesale production of documents relating to the development of fiscal plans was unwarranted and would be counterproductive, the Oversight Board's independent investigator released its comprehensive report pursuant to PROMESA section 104(o). During the Compensation Period, Proskauer continued to work with the various interested stakeholders in an attempt to resolve the pending issues related to this daunting discovery process.

- First Circuit Appeals. During the Compensation Period, Proskauer also defended and litigated several matters before the First Circuit. The following is a summary of major

appeals in which Proskauer served as lead counsel for the Title III Debtors during the Compensation Period:

(1) Aurelius Capital Master, Ltd. et al. v. Commonwealth of Puerto Rico, et al., Case No. 18-1108: This appeal stems from a notice of appeal of the *Opinion and Order Granting Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P 12(b)(a) and 12(B)(b)*, ECF No. 124 in Adv. Proc. No. 17-00189, dismissing a complaint by certain creditors of the Commonwealth to seize the Commonwealth's resources to pay debt service. Proskauer prepared for oral arguments before the First Circuit, which took place on November 5, 2018. On March 26, 2019 the First Circuit issued an opinion affirming this Court's order dismissing the complaint.

(2) Altair Global Credit Opp., et al v. Employees Retirement System, et al., Case No. 18-1836 [Consolidated with 18-1837, 18-1868, 18-1841, 18-1855, 18-1858]: This appeal stems from a notice of appeal of the *Opinion and Order Granting and Denying in Part Cross Motions for Summary Judgment*, ECF No. 215 in Adv. Proc. No. 17-00213 (the "Summary Judgment Order"), holding that ERS bondholders' security interests were never properly perfected under Puerto Rico law and were therefore avoidable under the Bankruptcy Code's avoidance powers. Proskauer finalized and filed the Appellee's brief on behalf of the FOMB on October 19, 2019. Additionally, Proskauer researched the issues and prepared for oral arguments before the First Circuit, which took place on January 7, 2019. On January 30, 2019, the First Circuit issued an opinion reversing the Title III Court in part and affirming it in part. The FOMB filed a petition for a writ of certiorari on April 30, 2019.

(3) Assured Guaranty Corporation, et al v. Commonwealth of Puerto Rico, et al., Case No. 18-1165: This appeal stems from a notice of appeal of the *Opinion and Order Granting Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and (B)(6)*, ECF No. 125 in Adv. Proc. No. 17-00155, holding that PROMESA Title III's special revenue protections do not require debtors to continue to turnover special revenues postpetition. During the Compensation Period, Proskauer researched the issues on appeal as well as prepared for oral argument, which occurred on November 5, 2018 before the First Circuit. On March 26, 2019, the First Circuit issued an opinion affirming the Court's opinion.

(4) Ambac Assurance Corporation v. Commonwealth of Puerto Rico, et al., Case No. 18-1214: This appeal stems from a notice of appeal of the *Opinion and Order Granting the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and (B)(6)*, ECF No. 156 in Adv. Proc. No. 17-00159, dismissing plaintiffs' claims against the Oversight Board, AAFAF, and HTA alleging defendants illegally diverted HTA's revenues, leading to unnecessary payment defaults. During the Compensation Period, Proskauer researched the issues on appeal as well as prepared for oral argument, which occurred on January 15, 2019 before the First Circuit. The First Circuit has not yet issued its opinion.

(5) Mendez-Nunez v. FOMB, et al., Case No. 18-1773: This appeal stems from a notice of appeal of the *Opinion and Order Granting Defendants' Motion to Dismiss the Plaintiffs' Complaint*, ECF No. 46 in Adv. Proc. No. 18-00081, dismissing plaintiffs' challenges to the Oversight Board's fiscal year 2019 certified budget.

During the Compensation Period, Proskauer researched, drafted, and filed Appellee's brief on behalf of the Oversight Board. Additionally, Proskauer devoted many hours to prepare for the oral arguments and research the issues on appeal. Oral argument took place on February 6, 2019. On February 22, 2019, the First Circuit issued an opinion affirming the Court's order dismissing the adversary proceeding.

- <u>PREPA Renewed Receiver Motion</u>. Following the First Circuit's ruling on the appeal of the initial PREPA receiver motion, on October 3, 2018, National, Assured, and Syncora filed the *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief From the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* [Case No. 17-BK-4780-LTS, ECF No. 982] (the "<u>Renewed Receiver Motion</u>"), seeking to lift the automatic stay to seek the appointment of a receiver. In the Renewed Receiver Motion, National, Assured, and Syncora assert, among other things, that the Bondholders' liens encompass all revenues and that their collateral package includes various contractual covenants contained in the Trust Agreement. Proskauer prepared an opposition and related filings defending against the Renewed Receiver Motion and its potentially devastating consequences to PREPA and Puerto Rico as a whole. Proskauer has also agreed to or successfully obtained numerous extensions of the response deadlines for the Renewed Receiver Motion to facilitate ongoing negotiations with PREPA's bondholders.

- <u>PREPA Definitive RSA</u>. During the Compensation Period, Proskauer worked to advance negotiations with certain PREPA creditors. On May 3, 2019, after over a year of extensive and hard-fought negotiations, the Oversight Board, PREPA, and AAFAF announced the Definitive RSA with Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together, "<u>Assured</u>") and the Ad Hoc Group of PREPA Bondholders. The agreement settles the claims and pledges the holders and/or insurers of approximately forty-eight percent (48%) of PREPA's outstanding bond debt to support a plan of adjustment for PREPA providing them with a certain level of economic recovery. The Definitive RSA benefits PREPA by resolving complicated claims with a large group of its creditors, facilitating the transformation of Puerto Rico's electric sector, and providing a path toward a PREPA Title III plan. The Definitive RSA gives all uninsured PREPA Bondholders the ability to join the Definitive RSA and, if approved, will become a stepping stone facilitating settlements with other creditors.

22.     In addition to the above, one of Proskauer's primary roles has been the defense of the Title III Debtors' interests in numerous, multi-billion-dollar adversary proceedings and contested matters brought by various bondholders, monoline insurers, and unions. Proskauer has also defended the Oversight Board's power and responsibilities as it pertains to certifying fiscal plans and budgets, and issuing restructuring certifications. Such matters seek, among other things, to enjoin the Oversight Board from enforcing fiscal plans and budgets, consummating a Title VI

restructuring, and proposing a plan of adjustment consistent with the Commonwealth's certified fiscal plan. Numerous matters also seek to compel turnovers of billions of dollars of revenues critical to the Commonwealth's viability and the provision of public services on the island in the wake of the hurricanes. Proskauer has defended against these challenges, many of first impression, involving, among other things, the constitutionality of various PROMESA provisions, the correct interpretation of various sections of PROMESA and the Bankruptcy Code, and the validity of certain creditors' asserted liens. The following is a summary of major litigation matters in which Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- <u>Hermandad de Empleados del Fondo del Seguro del Estado, Inc. et al. v. Commonwealth of Puerto Rico et al.</u>, Adv. Proc. No. 18-00091: This action was commenced against the Commonwealth, the FOMB, and the exclusive provider of work-related insurance coverage in Puerto Rico, the State Insurance Fund Corporation ("<u>CFSE</u>") (together the "<u>Hermandad Defendants</u>"), by two unions: (*i*) Hermanadad de Empleados del Fondo del Seguro del Estado, Inc. a/k/a Union de Empleados de la Corporacion del Fondo del Seguro del Estado ("<u>UECFSE</u>"), a union of CFSE employees, and (*ii*) Union de Medicos de la Corporacion del Fondo del Seguro del Estado Corp. ("<u>UMCFSE</u>"), a union of physicians who are responsible for providing medical services to injured workers. The plaintiffs, who participate in the Employee Retirement System and characterize themselves as creditors of the Commonwealth, sought relief to declare the June 29, 2018 Fiscal Plan ("<u>June 2018 Fiscal Plan</u>") unlawful and unable to form the basis of any plan of adjustment. The request was primarily attributed to a $317.5 million cost reduction imposed by the June 2018 Fiscal Plan over a five-year period. The plaintiffs argued the reduction would impair the union members' collective bargaining agreement, which, they argued, was purportedly deemed an "essential service" under PROMESA section 201. The plaintiffs additionally argued that the June 2018 Fiscal Plan, among other things, violates the Contracts Clause of the United States Constitution and Article II, Section 17 of the Constitution of the Commonwealth of Puerto Rico.

  On August 3, 2018, the Court entered an order adjourning the Hermandad Defendants' deadline to answer until after the pending motion to dismiss in *UTIER v. P.R. Elec. Power Auth., et al.*, Adv. Proc. No. 17-0229, is decided. That motion was decided on September 26, 2018. The Hermandad Defendants moved to dismiss the complaint on January 25, 2019. The plaintiffs filed their omnibus opposition on March 7, 2019.

- <u>The Official Committee of Unsecured Creditors of the Debtors (other than COFINA) v. Commonwealth of Puerto Rico, et al.</u>, Adv. Proc. No. 18-00101: This action was commenced by the UCC against the Commonwealth, AAFAF, the GDB, and the FOMB. The UCC sought relief declaring the GDB Restructuring Act invalid, unenforceable, inconsistent with PROMESA, and preempted by PROMESA section 4. According to the

UCC, the GDB Restructuring Act is invalid and unenforceable because (*i*) it is a *de facto* bankruptcy law; (*ii*) it is inconsistent with the third-party release prohibition of PROMESA section 601(m)(2); (*iii*) it is inconsistent with Bankruptcy Code sections 362 and 926; (*iv*) it is inconsistent with PROMESA section 601(n)(2); (*v*) its purpose is to ensure compliance with a fiscal plan that is not compliant with PROMESA; and (*vi*) it violates PROMESA section 305.

On September 21, 2018, the FOMB filed a motion to dismiss the case, arguing, among other things, that the UCC lacked standing to seek the relief demanded in the complaint because it was not authorized to represent creditors of the GDB. The FOMB also argued that the UCC engaged in impermissible claim splitting, because it had also opposed the GDB restructuring in the Title III case for the Commonwealth and the GDB's Title VI case. On the same day, GDB and AAFAF also filed a motion to dismiss the case, contending the UCC lacked standing to assert any of the claims raised in the complaint.

On November 10, 2018, the Court entered an order notifying the parties that, in light of the approval of the GDB's qualifying modification in its Title VI case, it intended to dismiss the UCC's adversary proceeding. On November 30, 2018, the Court entered an order dismissing the case.

- <u>American Federation of Teachers, et al. v. Commonwealth of Puerto Rico, et al</u>., Adv. Proc. No. 18-00134: Plaintiffs are two labor unions representing Puerto Rico government employees, who claim to be aggrieved because the Commonwealth has not implemented the transition to individual defined-contribution retirement accounts within the time frame purportedly contemplated by Puerto Rico Law 106-2017. Plaintiffs alleged the Commonwealth of Puerto Rico, the Retirement Board of the Government of Puerto Rico, AAFAF and their respective officers failed to implement the transition; the Oversight Board failed to compel them to do so; and Banco Popular de Puerto Rico has been enriched because the relevant employee contributions have been kept in a Banco Popular account bearing little or no interest. On the basis of these allegations, Plaintiffs sought declaratory and injunctive relief for violation of Law 106 (against all Defendants except the Oversight Board and Banco Popular); declaratory and injunctive relief for breach of fiduciary duty or aiding and abetting breach of fiduciary duty (against all Defendants); declaratory and injunctive relief for unjust enrichment (against the Commonwealth and Banco Popular); an accounting (against the Commonwealth and Banco Popular). On January 8, 2019, the Oversight Board moved to dismiss the claims against it. The deadline for Plaintiffs to oppose that motion, and for all other Defendants to respond to the complaint, was April 16, 2019.

- <u>Financial Oversight and Management Board of Puerto Rico, et al. v. Puerto Rico Public Buildings Authority</u>, Adv. Proc. No. 18-0149: On December 21, 2018, the Oversight Board filed an adversary complaint for declaratory relief and disallowance of administrative rent claims against the Puerto Rico Public Buildings Authority ("<u>PBA</u>"), an instrumentality of the Commonwealth created to issue bonds to finance the acquisition, construction, and improvement of government facilities. The Complaint seeks a declaratory judgment that the purported leases entered into by the PBA are not arm's length rental transactions, but rather disguised financing transactions, the sole

purpose of which is to provide a vehicle for the Commonwealth to repay more than $4 billion in bonds it issued to finance the acquisition, construction and/or improvement of office space and other facilities used by various departments, agencies, and instrumentalities of the Commonwealth. Plaintiffs contend PBA has no right under PROMESA or the Bankruptcy Code to receive post-petition rent payments from, or assert administrative claims against, the Debtors. The Complaint seeks declarations that: (1) the purported leases are not subject to treatment in accordance with section 365(d)(3) of the Bankruptcy Code and thus the Debtors have no obligation to make payments to PBA under the purported leases; and (2) PBA is not entitled to a priority administrative expense claim pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

23.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

24.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of (a) **$7,039,833.22**, as (i) compensation for professional services rendered, $4,131,408.60 of which represents fees earned outside of Puerto Rico on or before December 9, 2018, $89,334.30 of which represents fees earned in Puerto Rico on or before December 9, 2018, and $2,555,652.70 represents fees earned on or after December 10, 2018,[7] and (ii) the Gross-Up Amount in the amount of $263,437.62;[8] and (b) **$286,789.32** as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services.   Notably, the Application reflects aggregate voluntary reductions made during the

---

[7]   Until December 10, 2018, Proskauer prepared separate invoices each month for (i) work performed in Puerto Rico and (ii) work performed outside of Puerto Rico. This was because Puerto Rico taxed Proskauer differently depending on whether work was performed on-island or off-island. On December 10, 2018, Puerto Rico enacted tax reform (Act 257-2018) that eliminated this difference in tax treatment. As a result, beginning on December 10, 2018, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

[8]   Proskauer will only request from the Debtor payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

Compensation Period to Proskauer's request for compensation and reimbursement of expenses in the amount of $155,998.80 and $91,752.12, respectively, on top of the sizeable discount embedded in its engagement letter with the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the hourly rates of its most senior partners.

25.     Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor.   Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

26.     Proskauer's budget and staffing plan for the Compensation Period is attached hereto as **Exhibit D**.[9]

27.     Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board with respect to the Debtor during the Compensation Period is set forth on **Schedule 2**.   During the Compensation Period, Proskauer billed the Oversight Board for time expended by attorneys based on a set rate of $759 per hour, which increased by four-percent (rounded down to $789) on January 1, 2019.[10]   The professional

---

[9]   Budgets are only provided for matters Proskauer actually billed time to in a given month.  If no time was billed to a given matter during the month, no monthly budget has been provided for that matter.

[10]   In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases. Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion."  Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent.   Because Proskauer's fees under the Engagement Letter are a blended rate (currently $789 for attorneys, $390 for e-discovery attorneys, and $270 for all other professionals), no annual step increases will be applicable to the rates charged in this matter. Additionally as of January 1, 2019, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour.

services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period required an aggregate expenditure of 4,416.60 recorded hours by Proskauer's partners and senior counsel; 3,621.80 recorded hours by associates; 782.20 recorded hours by law clerks,[11] and 1,617.70 recorded hours by paraprofessionals.  As required by the Guidelines, **Exhibit C** to this Application shows, for each Project Category (as defined below), a list of professionals who performed services in each Project Category and the aggregate recorded hours each professional incurred.  In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are disclosed in **Schedules 1** and **5**.  The fees charged by Proskauer, as set forth in **Schedule 2**, are in accordance with the firm's existing billing rates and procedures in effect during the Compensation Period, as revised to reflect Proskauer's arrangement with the Oversight Board.  The standard rates Proskauer charges for the services rendered by its professionals and paraprofessionals in these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedules 2** and **5** show that the rates Proskauer charges on an hourly basis are below the competitive market rates for bankruptcy and non-bankruptcy matters charged by the other professionals representing the Commonwealth and statutory committees.  No Proskauer rates are increased as a result of the geographic location of a bankruptcy case.

28.     All entries itemized in Proskauer's time records comply with the requirements set forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each a "Project Category"), (b) a description of each activity or service that each individual performed, and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual

---

[11] Law clerks are incoming attorneys who have not yet been admitted or sworn into the bar.  Once admitted and sworn into the bar, the timing of which varies on an individual- and jurisdictional-basis, such individuals are reclassified and billed as associates beginning on the first day of the month following such admission.

providing the services. Each Project Category is organized in accordance with Guidelines paragraph C.8.b. If a Project Category does not appear in a particular application, Proskauer did not bill time or expenses for that Project Category during the Compensation Period, but may bill time for that Project Category in the future.

### Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5

29.     The following answers are provided in response to the questions set forth in Guidelines paragraph C.5:

> **Question**:   Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period? If so, please explain.
>
> Response:   Yes. As explained in more detail in the Engagement Letter, in connection with its representation of the Oversight Board, both inside and outside of Title III, Proskauer agreed to a fee arrangement whereby (a) prior to January 1, 2019, partners, counsel, and associates were billed at $759 per hour, and all other staff were billed at $260 per hour, and (b) as of January 1, 2019, partners, counsel, and associates are billed at $789 per hour, e-discovery attorneys are billed at $390 per hour,[12] and all other staff are billed at $270 per hour.
>
> **Question**:   If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?
>
> Response:   The total fees sought in this Application did not exceed total budgeted fees.
>
> **Question**:   Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?
>
> Response:   No.
>
> **Question**:   Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

---

[12] As discussed above, Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent as of January 1, 2019. Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour.

Response:   No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements.

**Question**:   Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information?  If so, please quantify by hours and fees.

Response:   No time was spent redacting time records on account of privilege concerns. However, the Application does include time related to reviewing time records to redact time entries pursuant to Court-ordered mediation confidentiality.

**Question**:   If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:   Yes.  The Engagement Letter provides that Proskauer's rates will be increased on January 1 (rather than on November 1, the beginning of Proskauer's fiscal year) by the lower of the percentage rate increase announced as of November 1 and four percent.  As Proskauer's announced percentage rate increase exceeded four percent as of November 1, 2018, Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent as of January 1, 2019.

### Puerto Rico Tax Law Changes

30.   Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off-island.  Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico, but not on fees derived from work performed outside of Puerto Rico.  As a result, until December 10, 2018, Proskauer prepared separate invoices each month for (i) work performed in Puerto Rico and (ii) work performed outside of Puerto Rico.

31.   On December 10, 2018, Puerto Rico enacted Act 257-2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed. Under Act 257-2018, all Proskauer fees incurred on or after December 10, 2018—regardless of the

timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment. As a result, for all work from December 10, 2018 onwards, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

32.     Pursuant to Proskauer's fee arrangement with the Oversight Board, Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by Act 257-2018 starting December 10, 2019 (the "Withholding"), in the amount of **$263,437.62**.   But, Proskauer will only request from the Debtors payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

### Hearings and Conferences

33.     Proskauer attorneys attended hearings and participated in numerous meetings and teleconferences with the Oversight Board, the Oversight Board's other professional advisors, AAFAF and its professional advisors, the UCC and its professional advisors, the Official Committee of Retired Employees and its professional advisors, and the Debtors' creditors and their professional advisors.  Proskauer attorneys also participated in internal meetings and conferences. The Debtor's Title III Case poses complex, often interrelated issues that frequently require the attendance of more than one professional at hearings and conferences.  This facilitates the sharing of information among professionals handling different but related work streams and possessing different areas of expertise that is brought to bear on a multitude of issues.  Having more than one Proskauer attorney participate in hearings and conferences is often essential when one attorney is not handling every issue, and is beneficial to the Oversight Board when attendance by more than

one attorney (telephonic and/or in-person) reduces the need for internal de-briefing meetings and therefore allows Proskauer to represent the Debtor in a more cost-efficient manner that avoids unnecessary duplication and expense. Proskauer limits multiple participation to the most critical work streams for which attendance by more than one professional is actually necessary to provide efficient and appropriate representation for the Debtor.

34. The Court and the Fee Examiner have identified certain presumptive standards applicable to the Fee Examiner's review of fee applications filed in the Title III cases. Under these standards, fees and expenses incurred by timekeepers for attending hearings in which at least one professional anticipates a speaking role, other than fees and expenses related to (*i*) those with meaningful speaking roles and (*ii*) one additional timekeeper per speaker, are presumed non-compensable. Likewise, for monitoring hearings (whether in person or by telephone) in which the professional has no meaningful speaking role, fees and expenses incurred by any more than one timekeeper per professional are presumed to be non-compensable. During the Compensation Period (October 2018 through January 2019 for the Commonwealth, ERS, HTA, and PREPA; and October 2018 through February 12, 2019 for COFINA), Proskauer continued to strive to staff hearings and events efficiently and leanly, utilizing timekeepers with actual or potential speaking roles, necessary supporting timekeepers, and, in some instances, additional timekeepers for the purposes of monitoring strategic issues. During the relevant time period, Proskauer staffed the following hearings as follows:

- **November 5, 2018 oral argument to First Circuit in *Assured* [Case No. 18-1165] appeal**. Four timekeepers invoiced efforts in connection with attending this event: (1) Mark Harris presented the oral argument; (2) Tim Mungovan attended the oral argument to support Mr. Harris; (3) Martin Bienenstock—who was already present in court in connection with arguing the *Aurelius Capital Master, Ltd. Et al. v. Commonwealth of Puerto Rico, et al.* [Case No. 18-1108] appeal earlier in the day—monitored the event in connection with assessing strategic issues for the upcoming related HTA appellate argument in *Ambac Assurance Corporation v Commonwealth of Puerto Rico, et al.* [Case

No. 18-1214] ("Ambac"); and (4) Mike Firestein billed minimal efforts to telephonically monitor a portion of the hearing (0.40 hours) for purposes of assessing broader strategic and appellate issues. Given the scope of the arguments presented and the significance of the issues, it is Proskauer's position that the variance from the presumptive standard— two additional monitoring timekeepers—is justified. Mr. Bienenstock has overall responsibility for Proskauer's representation of the Oversight Board and is Proskauer's main or sole representative at most Oversight Board calls and meetings. Therefore, he is required to have firsthand knowledge of most major developments. Moreover, he was already present in the courthouse in connection with another oral argument, and monitored the Court's handling of issues overlapping with his role in the *Ambac* matter. Mr. Firestein billed minimal efforts to telephonically monitor a portion of the hearing (0.40 hours) for purposes of assessing broader strategic issues. Had the monitoring timekeepers not attended a portion of the hearing telephonically, each timekeeper would have incurred additional time reviewing the transcript of this proceeding.

- **November 7, 2018 omnibus hearing**. Five timekeepers invoiced efforts in connection with attending or monitoring this event: (1) Martin Bienenstock attended the event to represent the Oversight Board on all relevant matters at the hearing; (2) Brian Rosen presented a portion of the status report from the Oversight Board, and presented the *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [Case No. 17-3283, ECF No. 4052]; (3) Mike Firestein and (4) Maja Zerjal both provided strategic advice and counsel in support of Mr. Bienenstock and Mr. Rosen; and (5) Paul Possinger monitored a portion of the event telephonically. Given the scope and significance of the issues presented, it is Proskauer's position that the variance from the presumptive standard—one additional monitoring timekeeper—is justified. Mr. Possinger billed minimal efforts to telephonically monitor a portion of the hearing (0.80 hours) for purposes of assessing broader strategic issues. Had the monitoring timekeeper not attended a portion of the hearing telephonically, the timekeeper would have incurred additional time reviewing the transcript of this proceeding.

- **November 20, 2018 hearing to determine the adequacy of information in the COFINA disclosure statement**. Six Proskauer timekeepers invoiced reasonable and necessary efforts in connection with attending the COFINA disclosure statement hearing in November 2018: (1) Brian Rosen presented arguments in support of the motion to approve the disclosure statement; (2) Martin Bienenstock attended the hearing to oversee it for the Oversight Board and to participate in discussions with counsel for the various parties and to address and resolve emerging issues; (3) Chris Theodoridis and (4) Steve Ma, who had both assisted in preparing the COFINA disclosure statement and solicitation procedures motion, attended the hearing to advise on emerging issues in connection with same in real time, and to manage, oversee, and organize the hearing materials; (5) Mike Firestein telephonically monitored a portion of the hearing so he could better carry out his responsibilities to support confirmation of the COFINA Plan of Adjustment; and (6) Lary Alan Rappaport also attended telephonically so he could better carry out his responsibilities to support confirmation of the COFINA Plan of Adjustment. Given the scope of the arguments presented and the significance of the issues under discussion in connection with the COFINA disclosure statement motion and ultimately the

22

confirmation of the COFINA Plan of Adjustment in January 2019, it is Proskauer's position that any variance from the presumptive is justified.

- **December 19, 2018 omnibus hearing**.  Six timekeepers invoiced efforts in connection with attending or telephonically monitoring this event: (1) Brian Rosen presented discussion on the pre-trial conference for the COFINA confirmation hearing; (2) Martin Bienenstock presented discussion on numerous motions and related orders; and (3) through (6), Mike Firestein, Chris Theodoridis, Jeff Levitan, and Elliot Stevens monitored events in connection with specific case and strategy issues across multiple matters.  Given the scope and significance of the issues under discussion in connection with the December omnibus hearing, it is Proskauer's position that any variance from the presumptive standard is justified.  Mr. Levitan (0.60 hours) and Mr. Stevens (0.70 hours) billed minimal efforts in connection with monitoring specific issues.  Had the monitoring timekeepers not attended a portion of the hearing telephonically, the timekeeper would have incurred additional time reviewing the transcript of this proceeding.

- **January 7, 2019 oral argument to First Circuit in *Altair* [Case No. 18-1836] consolidated appeals**.  Three timekeepers invoiced efforts in connection with attending this event:  (1) Jeffrey Levitan presented oral argument; (2) Steve Weise provided strategic legal advice and counsel to Mr. Levitan during the hearing; and (3) William Dalsen provided real-time support to Mr. Levitan on factual issues.  Given the scope of the arguments presented and the significance of the issues under discussion, it is Proskauer's position that the variance from the presumptive standard—one additional supporting timekeeper—is justified.   Mr. Dalsen's supporting role was not duplicative of Mr. Weise's strategic advising role, and Mr. Dalsen had played a lead role in preparing the supporting materials relevant to the hearing.

- **January 15, 2019 oral argument to First Circuit in *Ambac* appeal**.  Three timekeepers invoiced efforts in connection with attending this event: (1) Martin Bienenstock presented oral argument; (2) Tim Mungovan attended the oral argument to support Mr. Bienenstock; and (3) John Roberts monitored a portion of the hearing telephonically in connection with his appellate roles across multiple matters.  Mr. Roberts billed minimal time to telephonically monitor a portion of the hearing (1.10 hours) for purposes of assessing broader strategic and appellate issues.  Had the monitoring timekeeper not attended a portion of the hearing telephonically, the timekeeper would have incurred additional time reviewing the transcript of this proceeding.

- **January 16 and January 17, 2019—COFINA Hearings**.  Multiple Proskauer timekeepers invoiced efforts in connection with attending this two-day event, which required the handling of voluminous documents involved in the prosecution of the 9019 settlement motion and the confirmation of the COFINA Plan of Adjustment, as evidenced by the submissions on the Commonwealth's case docket [ECF Nos. 4777, 4781, 4792, 4803, 4756, and 4757].  In addition, numerous objections and responses were filed by various parties. *See Notice of Amended Agenda of Matters Scheduled for the Hearing on January 16-17, 2019* [Case No. 17-3284-LTS, ECF No. 513].  In order to manage the volume of documents and filings, it was necessary to delegate responsibility among various partners and associates, and required the preparation of the various documents by paraprofessionals.  Multiple attendees were necessary in order to advise the speakers—in real time as issues arose—on the various matters in which they were involved.  In addition, the partners and associates were involved in the real-time

negotiations and discussions that occurred during the hearing to resolve outstanding and emerging issues. Specifically:

- o Partner Brian Rosen presented arguments regarding the approval of the 9019 settlement motion and the confirmation of the COFINA Plan of Adjustment. Mr. Rosen also participated in real-time discussions and negotiations with various parties to resolve outstanding issues emerging from the hearings.
- o Partner Martin Bienenstock attended the hearing to oversee it for the Oversight Board and to participate in discussions and negotiations with numerous parties to resolve outstanding issues.
- o Partner Jeffrey Levitan participated in real-time discussions and negotiations with various parties to resolve outstanding issues, and directly supervised the preparation of the evidentiary material and COFINA's responses to various objections.
- o Partner Michael Firestein provided real-time counsel on litigation and evidentiary issues in connection with the 9019 settlement and COFINA plan confirmation, and directly supervised the preparation of the evidentiary material and COFINA's responses to various objection.
- o Partner Lary Alan Rappaport (day one only) provided real-time advice and counsel on litigation and evidentiary issues in connection with the 9019 settlement and COFINA plan confirmation, and directly supervised the preparation of the evidentiary material and COFINA's responses to various objections.
- o Associate Chris Theodoridis provided real-time advice and counsel in connection with emerging bankruptcy issues, drafted notes for the subsequent amendment of the COFINA plan and related orders, and was directly involved in the preparation of the evidentiary and hearing materials. Mr. Theodoridis also participated in real-time discussions with various parties to resolve issues to the COFINA confirmation order.
- o Associate Lucy Wolf provided real-time assistance with litigation and evidentiary issues, oversaw the management and organization of the voluminous evidentiary binders and hearing materials, and was directly involved in the preparation of the evidentiary and hearing materials.
- o Associate Steve Ma provided real-time counsel and assistance in bankruptcy matters, drafted notes for the subsequent amendment of the COFINA plan and related orders, was directly involved in the preparation of evidentiary and hearing material, and participated in discussions with various parties to resolve issues in connection with the COFINA confirmation order.
- o Associate Zachary Chalett assisted with managing litigation and evidentiary issues, oversaw the management and organization of the voluminous evidentiary binders and hearing materials, and was directly involved in the preparation of the evidentiary and hearing material.
- o Associate Joshua A. Esses provided real-time assistance with bankruptcy issues, drafted notes for the subsequent amendment of the COFINA plan and related orders, and was directly involved in the preparation of the evidentiary and hearing material.

- o Legal Assistant Julia Sutherland provided real-time assistance in managing and coordinating the organization, preparation, content, and delivery of voluminous evidence binders and hearing materials.
  - o Legal Assistant Laura Geary provided real-time assistance in managing and coordinating the organization, preparation, content, and delivery of voluminous evidence binders and hearing materials.
- **January 30, 2019 omnibus hearing**.  Seven timekeepers invoiced efforts in connection with attending or telephonically monitoring this event: (1) Maja Zerjal attended to represent the Oversight Board and to respond to any status reports requested by the Court; (2) Laura Stafford attended to represent the Oversight Board on any matters relating to COFINA claims objections; (3) Margaret Dale attended to represent the Oversight Board on any matters related to fee examiner issues and fee applications; and (4) through (7), Jeff Levitan, Mike Firestein, Chris Theodoridis, and Elliot Stevens monitored the event in connection with specific case and strategy issues across multiple matters.  Given the scope and significance of the issues under discussion in connection with the December omnibus hearing, it is Proskauer's position that any variance from the presumptive standard is justified.  Mr. Stevens (0.30 hours) billed minimal efforts in connection with monitoring specific issues.  Had the monitoring timekeepers not attended a portion of the hearing telephonically, the timekeeper would have incurred additional time reviewing the transcript of this proceeding.

35.     In summary, Proskauer remains committed to staffing hearings and events with a minimal number of necessary timekeepers.  In each instance during the Compensation Period where Proskauer's attendance activities exceeded the presumptive standards adopted by the Court, such variances were necessary and justified under the circumstances.

### **Professionals Billing Fewer Than Five Hours per Month**

36.     The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary.  As a general matter, because of the size and complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services.  Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and with

specific adversary proceedings to deal with global strategic issues and ensure that positions taken

by the Oversight Board are consistent across all the Title III cases.  Furthermore, occasionally the

urgency of certain briefing schedules requires pulling in professionals from different work streams

to assist on time-sensitive matters.[13]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Ashton, Ann M. | January | Ms. Ashton is a partner in Proskauer's litigation department who (a) advised (*i*) on the Debtor's litigation strategy and (*ii*) on the constitutional debt limit issue in connection with the GO bonds related dispute, and (b) participated in discussions with the fee examiner regarding Proskauer fee applications. |
| Batten, Mark W. | December | Mr. Batten is a partner in Proskauer's labor & employment department who advised on labor and pension negotiations and on proposed modifications to the Debtor's collective bargaining agreements. |
| Cantone, Robert A. | November | Mr. Cantone is a partner in Proskauer's corporate department who advised on revisions to the Debtor's proposed fiscal plan. |
| Clark, Brandon C. | November | Mr. Clark is an associate in Proskauer's litigation department who assisted with analysis for and drafting the Debtor's omnibus claims objections procedure order. |
| Corn, Richard M. | October | Mr. Corn is a partner in Proskauer's tax department who advised on tax-related issues in connection with court-ordered mediation in the Commonwealth/COFINA dispute. |
| Crawley, Jacquelyn N. | January | Ms. Crawley is an associate in Proskauer's litigation department who assisted with the analysis of non-COFINA claims, the drafting of responses to related objections, and the drafting of the amended omnibus objections procedure motion. |

---

[13] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| D'Errico, Megan T. | November, December | Ms. D'Errico is a research specialist in Proskauer's library department who assisted with legal research on various discovery related issues. |
| Dalsen, William D. | November, January | Mr. Dalsen is an associate in Proskauer's litigation department who assisted with document review and production in response to the statutory committees' discovery requests and with multiple discovery related issues. |
| Dillon, Emma | January | Ms. Dillon is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Evans, Carla J. | November | Ms. Evans is a research specialist in Proskauer's library department who assisted with legal research for the Debtor's proposed plan of adjustment. |
| Faust, Scott A. | January | Mr. Faust is a partner in Proskauer's labor & employment department who advised on labor and pension negotiations and on proposed modifications to the Debtor's collective bargaining agreements. |
| Fiur, Seth | October | Mr. Fiur is an associate in Proskauer's litigation department who assisted with legal research and analysis related to opposition to appeal certification in the *Rosello* adversary proceeding. |
| Forman, Daniel L. | October, November, January | Mr. Forman is a senior counsel in Proskauer's corporate department who advised on the flow of funds analysis and related disclosures in connection with the Debtor's proposed plan of adjustment. |
| Friedman, Amelia | October | Ms. Friedman is an associate in Proskauer's litigation department who assisted with drafting objections to claims excluded from the omnibus objections procedure. |
| Gerkis, James P. | October, November, January | Mr. Gerkis is a partner in Proskauer's corporate department who advised on the flow of funds analysis and related disclosures in connection with the Debtor's proposed plan of adjustment and on drafting the 9019 motion relating to the Commonwealth/COFINA dispute. |
| Giddens, Magali | December, January | Ms. Giddens is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |

27

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Golub, Ira M. | December, January | Mr. Golub is a partner in Proskauer's labor & employment department who advised on labor and pension negotiations and on proposed modifications to the Debtor's collective bargaining agreements. |
| Hamburger, Paul M. | October | Mr. Hamburger is a partner in Proskauer's labor & employment department who advised on social security-related issues in connection with the Debtor's proposed plan of adjustment. |
| Harris, Mark D. | November - January | Mr. Harris is a partner in Proskauer's litigation department who advised on the Debtor's litigation strategy and on drafting the response brief opposing budget challenge in the *Rivera-Schatz* adversary proceeding. |
| Henderson, Laurie A. | October – January | Ms. Henderson is a docketing administrator in Proskauer's litigation department who assisted with docket research and electronic filing. |
| James R. Huffman | January | Mr. Huffman is an associate in Proskauer's tax department who assisted with analyzing social security-related issues in connection with the development of the Debtor's plan of adjustment. |
| Ike, Yvonne O. | December | Ms. Ike is an eDiscovery staff attorney at Proskauer who assisted with various document production issues. |
| Infante, Elle M. | October, January | Ms. Infante is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Jones, Erica T. | December | Ms. Jones is a law clerk in Proskauer's litigation department who assisted with legal research on regulatory issues. |
| Lavine, Judith A. | November | Ms. Lavine is a research specialist in Proskauer's library department who assisted with legal research for the Debtor's proposed plan of adjustment. |
| Leader, Jordan B. | October, December, January | Mr. Leader is a senior counsel in Proskauer's litigation department who advised on the Debtor's discovery strategy and on multiple discovery related issues. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Levitan, Jeffrey W. | November | Mr. Levitan is a partner in the BSGR&B group who advised on the Debtor's proposed plan of adjustment and on litigation strategy in the Commonwealth/COFINA dispute and adversary proceedings. |
| Martinez, Carlos E. | October, November, January | Mr. Martinez is a partner in Proskauer's corporate department who reviewed and analyzed multiple contracts and financing agreements in connection with the Debtor's proposed plan of adjustment and advised on the settlement negotiations in *UCC v. GDB* adversary proceeding. |
| Mashberg, Gregg M. | October, January | Mr. Mashberg is a partner in Proskauer's litigation department who advised on the Debtor's litigation strategy and on discovery issues in connection with the renewed GO bondholders' Rule 2004 motion. |
| Pellegrino, Nicholas | October, January | Mr. Pellegrino is an associate in Proskauer's corporate department who assisted with the flow of funds analysis in connection with the Debtor's proposed plan of adjustment. |
| Peterson, Cathleen P. | October, November | Ms. Peterson is a senior eDiscovery consultant at Proskauer who assisted with various document production related issues. |
| Petrov, Natasha | December | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's interim fee applications. |
| Piccirillo, Antonio N. | October, January | Mr. Piccirillo is a partner in Proskauer's corporate department who reviewed and analyzed proposed agreements between the Debtor and GDB and advised on the settlement negotiations in *UCC v. GDB* adversary proceeding. |
| Rogoff, Corey I. | November | Mr. Rogoff is a law clerk in Proskauer's litigation department who assisted with document review and production related to GDB contract issues. |
| Skellet, Alexandra K. | November, December | Ms. Skellet is an associate in Proskauer's litigation department who assisted with legal research and developing appellate strategy in multiple adversary proceedings. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Snell, Dietrich L. | December | Mr. Snell is a partner in Proskauer's litigation department who advised on the treatment of potential claims identified in the Kobre & Kim report. |
| Theodoridis, Chris | January | Mr. Theodoridis is an associate in the BSGR&B group who assisted with developing litigation strategy in connection with the Debtor's proposed plan of adjustment. and attended the January omnibus hearing. |
| Triggs, Mathew H. | November | Mr. Triggs is a partner in Proskauer's litigation department who advised on litigation strategy in various adversary proceedings involving the Debtor. |
| Volpicello, Alexander J. | December | Mr. Volpicello is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Vermal, Ana | November - January | Ms. Vermal is a partner in Proskauer's litigation department who advised on litigation strategy in connection with the Debtor's proposed plan of adjustment. |
| Weise, Steven O. | December | Mr. Weise is a partner in Proskauer's litigation department who advised on litigation strategy in the *PBA* adversary proceeding. |
| Wizner, Eamon | December, January | Mr. Wizner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |

**Summary Description of Professional Services**

37.    The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period.[14]  Only Project

---

[14] Until December 10, 2018, Proskauer prepared separate invoices each month for (i) work performed in Puerto Rico and (ii) work performed outside of Puerto Rico. This was because Puerto Rico taxed Proskauer differently depending on whether work was performed on-island or off-island. On December 10, 2018, Puerto Rico enacted tax reform (Act 257-2018) that eliminated this difference in tax treatment. As a result, beginning on December 10, 2018, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

I.   **Matter No. 33260/002 (PROMESA Title III: Commonwealth) and No. 33260/024 (PROMESA Title III: Commonwealth Puerto Rico)**

38.   These matter numbers cover time spent relating to the core Commonwealth Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

(a)   Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants (Project Category 201)
(Fees: $396,406.10; Hours: 518.10)
(Fees for work performed in Puerto Rico: $25,198.80; Hours: 33.20)
(Aggregate Fees: $421,604.90; Aggregate Hours: 551.30)

39.   This Project Category includes time spent communicating with the Oversight Board, and its other representatives, agents, and consultants, as well as preparing for and advising on fiscal plans, public meetings, litigation and related issues.   Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the Oversight Board and its other advisors regarding the Debtor's Title III Case status and strategy, the Commonwealth's proposed fiscal plan, financing, and plan of adjustment, and related issues including revisions to proposed plan support agreements, the debt restructuring, PROMESA compliance issues, tax issues, pensions and benefits issues, and related disclosures;

- Advising the Oversight Board on communications with the Commonwealth regarding fiscal plan and budget-related issues, preparing for and participating in the Board's public meetings on fiscal plan certifications;

- Preparing for and participating in weekly calls with the Oversight Board and its advisors regarding the status of the Debtor's Title III case;

- Preparing for and participating in Special Claims Committee meetings, advising the Committee on retention of the Claims counsel, and assisting the Claims counsel in evaluating potential claims identified by the Kobre & Kim report;

- Preparing litigation updates for the Oversight Board, and communicating with the Oversight Board and its other advisors regarding litigation strategy, litigation developments, and related issues in the Debtor's Title III Case; and

- Advising the Oversight Board and its professionals on creditor discussions and negotiations.

(b) <u>Legal Research (Project Category 202)</u>
(Fees: <u>$245,365.90</u>; Hours: <u>464.80</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$245,365.90</u>; Aggregate Hours: <u>464.80</u>)

40.    This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Researching and analyzing a variety of legal issues in connection with the development of the Debtor's fiscal plan and plan of adjustment, including relating to PROMESA, the applicability of certain bankruptcy rules, treatment of bondholder rights, the best interests test and feasibility, issues of privilege, and confirmation related issues;

- Researching and analyzing potential claims identified in the Kobre & Kim report, potential causes of action, classification of disputed claims, and related dischargeability and tax issues; and

- Researching and analyzing a variety of legal issues related to the enforcement of policy decisions by the Oversight Board, and the application of various Bankruptcy Code provisions relevant to the Debtor's Title III Case.

(c) <u>Hearings and Other Non-Filed Communications with the Court (Project Category 203)</u>
(Fees: <u>$59,241.30</u>; Hours: <u>76.70</u>)
(Fees for work performed in Puerto Rico: <u>$4,326.30</u>; Hours: <u>5.70</u>)
(Aggregate Fees: <u>$63,567.60</u>; Aggregate Hours: <u>82.40</u>)

41.    This Project Category includes time spent communicating with the Court and reviewing the Court's communications and procedures.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the Court regarding applicable rules and requirements, scheduling and procedure related matters;

- Communicating with the Court regarding omnibus hearing dates and drafting omnibus hearing agendas and informative motions;

- Preparing for and participating in omnibus hearings; and

- Reviewing and analyzing transcripts of omnibus hearings.

(d) <u>Communications with Claimholders (Project Category 204)</u>
(Fees: <u>$77,722.80</u>; Hours: <u>113.00</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$77,722.80</u>; Aggregate Hours: <u>113.00</u>)

42.   This Project Category includes time spent communicating with the Debtor's various

claimholders.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the statutory committees and other claimholders, as well as their respective advisors, on revisions to the Debtor's proposed fiscal plan, restructuring, and plan of adjustment, and related issues;

- Communicating with Judge Houser, statutory committees, other claimholders, and their respective advisors on various legal issues related to mediation in preparation for court-ordered mediation sessions and court hearings;

- Preparing for and participating in court-ordered mediation sessions, meet-and-confer calls and sessions with the statutory committees and other claimholders, as well as their respective advisors;

- Communicating with claimholders, their respective advisors, and claims consultants on issues related to omnibus claims objections procedure, revisions to omnibus claims procedures order, form of notice issues, and related claims administration matters; and

- Communicating with the statutory committees, other claimholders, and the Independent Investigator regarding parties' document requests, objections, and access to a neutral vendor document depository.

(e) <u>Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities (Project Category 205)</u>
(Fees: <u>$19,104.90</u>; Hours: <u>25.10</u>)
(Fees for work performed in Puerto Rico: <u>$151.80</u>; Hours: <u>0.20</u>)
(Aggregate Fees: <u>$19,256.70</u>; Aggregate Hours: <u>25.30</u>)

43.   This Project Category includes time spent communicating with the Debtor's

representatives in various matters related to the Debtor's Title III Case, to the extent not expressly

covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent

time:

- Communicating with counsel and other advisors to AAFAF and the Governor of Puerto Rico on a variety of issues concerning the Debtor's proposed fiscal plan and plan of adjustment, their development and modifications, including strategy,

financing, confirmation standards, debt holders' rights, and related disclosures by the FOMB;

- Communicating with counsel and other advisors to AAFAF on the Special Claims counsel retention, classification and treatment of claims, and the protocol for omnibus objections; and

- Communicating with counsel and other advisors to AAFAF regarding parties' requests for Kim & Kobre report related documents, objections, privilege issues, and providing access to a neutral vendor document depository.

(f)   Documents Filed on Behalf of the Board (Project Category 206)
      (Fees: $127,021.00; Hours: 165.10)
      (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
      (Aggregate Fees: $127,021.00; Aggregate Hours: 165.10)

44.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting research and drafting objections to requests for the disclosure of documents collected during the independent investigation;

- Conducting research and finalizing a motion regarding procedures for omnibus objections to claims; and

- Conducting research and drafting a proposed order to extend deadlines for rejection or assumption of non-PBA leases for all Title III Debtors.

(g)   Non-Board Court Filings (Project Category 207)
      (Fees: $51,692.70; Hours: 67.30)
      (Fees for work performed in Puerto Rico: $531.30; Hours: 0.70)
      (Aggregate Fees: $52,224.00; Aggregate Hours: 68.00)

45.   This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing various filings and Court orders entered in the Debtor's Title III Case.

(h)  Analysis and Strategy (Project Category 210)
     (Fees: $1,878,730.60; Hours: 2,580.90)
     (Fees for work performed in Puerto Rico: $2,656.50; Hours: 3.50)
     (Aggregate Fees: $1,881,387.10; Aggregate Hours:  2,584.40)

46.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including (a) meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

(i)  Non-Working Travel Time (Project Category 211)
     (Fees: $37,389.60; Hours: 48.40)
     (Fees for work performed in Puerto Rico: $19,506.30; Hours: 25.70)
     (Aggregate Fees: $56,895.90; Aggregate Hours: 74.10)

47.    This Project Category includes time spent traveling on behalf of the Oversight Board and the Debtor, during which no billable work is performed.  Fees in this Project Category are billed at fifty percent (50%).

(j)  General Administration (Project Category 212)
     (Fees: $342,092.00; Hours: 1,280.10)
     (Fees for work performed in Puerto Rico: $303.60; Hours: 0.40)
     (Aggregate Fees: $342,395.60; Aggregate Hours: 1,280.50)

48.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities, including maintaining the case calendar; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(k)  Labor, Pension Matters (Project Category 213)
     (Fees: $128,043.30; Hours: 165.60)
     (Fees for work performed in Puerto Rico: $607.20; Hours: 0.80)
     (Aggregate Fees: $128,650.50; Aggregate Hours: 166.40)

49.    This Project Category includes time spent reviewing employee and retiree benefits

35

issues.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Researching and analyzing pension and other retirement benefits and related issues in connection with the Debtor's proposed fiscal plan and plan of adjustment;

- Reviewing and analyzing the Retiree Committee's and labor unions' proposals, claims, and memoranda related to the Commonwealth's pension and retirement benefits issues; and

- Preparing for and participating in discussions with the Retiree Committee, labor unions, and their advisors on proposed changes to collective bargaining agreements, potential TSP participation, retirement plans options, and other issues related to proposed restructuring of the Commonwealth's pension plans.

(l)  Plan of Adjustment and Disclosure Statement (Project Category 215)
    (Fees: $955,624.50; Hours: 1,353.60)
    (Fees for work performed in Puerto Rico: $7,590.00; Hours: 10.00)
    (Aggregate Fees: $963,214.50; Aggregate Hours: 1,363.60)

50.    This Project Category includes time spent on issues related to the terms of the proposed Title III plan.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the Oversight Board and its other advisors regarding development of Commonwealth's proposed plan of adjustment and related disclosures and privilege issues;

- Researching and analyzing a wide variety of financial and legal issues in connection with the proposed plan of adjustment, including related to confirmation standards, cash management, debt restructuring and funding, bondholders' rights, tax reform, health care, and pension and retirement benefits related issues, among others;

- Reviewing best-interests test related memoranda and conducting further research on best interests and feasibility;

- Preparing for and participating in related discussions with the Debtor's other advisors and the Oversight Board; and

- Drafting proposed plan of adjustment and disclosure statement.

(m)  Employment and Fee Applications (Project Category 218)
    (Fees: $79,734.70; Hours: 203.10)
    (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
    (Aggregate Fees: $79,734.70; Aggregate Hours: 203.10)

51.    This Project Category includes time spent on issues related to the compensation of Proskauer, and the retention and compensation of other Oversight Board professionals, including

36

the preparation of monthly fee applications. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Preparing Proskauer's monthly fee statements and drafting Proskauer's fourth and fifth interim fee applications; and
- Preparing for and participating in conferences with the Fee Examiner on issues relevant to preparation of the Debtor's monthly fee statements and interim fee applications.

(n)  Appeal (Project Category 219)
     (Fees: $8,182.50; Hours: 18.50)
     (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
     (Aggregate Fees: $8,182.50; Aggregate Hours: 18.50)

52.    This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Researching and analyzing procedural matters in the Debtor's Title III appellate cases; and
- Reviewing court dockets for deadlines and maintaining a chart tracking the status of the Debtor's appellate cases.

(o)  Fee Applications for Other Parties (Project Category 220)
     (Fees: $4,905.10; Hours: 13.30)
     (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
     (Aggregate Fees: $4,905.10; Aggregate Hours: 13.30)

53.    This Project Category includes time spent on issues related to the compensation of other Oversight Board professionals, including the preparation of monthly fee applications. Specifically, Proskauer attorneys and paraprofessionals spent time reviewing, discussing, drafting and revising fee applications, fee statements, and dealing with related issues for various professionals.

## II.   Matter No. 33260/033 (Commonwealth Title III – ACP Master) and No. 33260/933 (Commonwealth Title III – ACP Master Puerto Rico)

54.     These matter numbers cover time spent working on the *ACP Master v. Commonwealth* adversary proceeding, Case No. 17-AP-189, and any appeals related thereto.

(a)   Appeal (Project Category 219)
   (Fees: $110,386.70; Hours: 145.70)
   (Fees for work performed in Puerto Rico: $23,604.90; Hours: 31.10)
   (Aggregate Fees: $133,991.60; Aggregate Hours: 176.80)

55.     This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category.   Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing appellate briefs and pleadings on appeal, developing strategy for oral argument, and preparing for oral argument presentation before the First Circuit; and

- Presenting oral argument before the First Circuit and conferring with the Board and its other advisors regarding next steps.

## III.   Matter No. 33260/034 (Commonwealth Title III – Healthcare) and No. 33260/934 (Commonwealth Title III – Healthcare Puerto Rico)

56.     These matter numbers cover time spent working on adversary proceedings involving healthcare and Medicaid claims in the Debtor's Title III Case, including *Asociacion de Salud Primaria v. Commonwealth*, Case No. 17-AP-227, *Atlantic Medical Center v. Commonwealth,* Case No. 17-AP-278, and *CSI v. Commonwealth*, Case Nos 17-AP-292 and 17-AP-298, and on any appeals related thereto.

    (a)   <u>Legal Research (Project Category 202)</u>
           (Fees:  <u>$11,233.20</u>; Hours:  <u>14.80</u>)
           (Fees for work performed in Puerto Rico:  <u>$0.00</u>; Hours:  <u>0.00</u>)
           (Aggregate Fees: <u>$11,233.20</u>; Aggregate Hours:  <u>14.80</u>)

57.     This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category. Specifically, Proskauer attorneys spent time conducting research to respond to Plaintiff's objection to Judge Dein's order staying proceedings and analyzing removal issues in the *CSI* adversary matter.

    (b)   <u>Stay Matters (Project Category 208)</u>
           (Fees:  <u>$114,380.50</u>; Hours:  <u>153.00</u>)
           (Fees for work performed in Puerto Rico:  <u>$0.00</u>; Hours:  <u>0.00</u>)
           (Aggregate Fees: <u>$114,380.50</u>; Aggregate Hours:  <u>153.00</u>)

58.     This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III Case and drafting various pleadings related to stay issues.  Specifically, Proskauer attorneys and paraprofessionals spent time drafting response to Plaintiff's objection to Judge Dein's order staying proceedings in the *CSI* adversary matter.

    (c)   <u>General Administration (Project Category 212)</u>
           (Fees: <u>$3,531.00</u>; Hours: <u>13.40</u>)
           (Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours:  <u>0.00</u>)
           (Aggregate Fees: <u>$3,531.00</u>; Aggregate Hours: <u>13.40</u>)

59.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities, including maintaining the case calendar; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

IV. **Matter No. 33260/035 (Commonwealth Title III – Appointments Clause) and No. 33260/935 (Commonwealth Title III – Appointments Clause Puerto Rico)**

60.     These matter numbers cover time spent working on the Appointments Clause motions and adversary proceedings filed in the Debtor's Title III Case, including *Assured v. FOMB*, Case No. 18-AP-087, and *Hernandez-Montañez v. FOMB,* Case No. 18-AP-090, and on any appeals related thereto.

    (a)   Stay Matters (Project Category 208)
        (Fees: $77,165.30; Hours: 111.20)
        (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
        (Aggregate Fees: $77,165.30; Aggregate Hours: 111.20)

61.     This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III Case and drafting various pleadings related to stay issues.  Specifically, Proskauer attorneys and paraprofessionals spent time drafting the reply in support of the motion to stay adversary proceeding in the *Hernandez-Montañez* adversary matter pending adjudication of the appointments clause appeals in First Circuit Court.

V. **Matter No. 33260/037 (Commonwealth Title III – Commonwealth/COFINA Dispute) and No. 33260/937 (Commonwealth Title III – Commonwealth/COFINA Dispute Puerto Rico)**

62.     These matter numbers cover time spent working on items related to the Commonwealth-COFINA dispute in the Debtor's Title III Case, including *UCC v. Whyte*, Case No. 17-AP-257, and any appeals related thereto.

    (a)   Communications with Claimholders (Project Category 204)
        (Fees: $18,535.80; Hours: 24.20)
        (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
        (Aggregate Fees: $18,535.80; Aggregate Hours: 24.20)

63.     This Project Category includes time spent communicating with the Debtor's various claimholders.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Preparing for and participating in discussions with the Commonwealth's other advisors, creditors' counsel, and Judge Houser regarding proposed steps to implementing the Commonwealth-COFINA settlement; and

- Preparing for and participating in discussions with the COFINA agent's and Retiree Committee's advisors regarding Retiree Committee's discovery requests related to the Debtor's proposed plan of adjustment.

(b) <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
(Fees: <u>$154,532.40</u>; Hours: <u>203.60</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$154,532.40</u>; Aggregate Hours: <u>203.60</u>)

64.     This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time conducting research and analysis connected to the Commonwealth/COFINA settlement motion under Bankruptcy Rule 9019, drafting the motion, and drafting an omnibus reply to multiple objections to the motion.

(c) <u>Non-Board Court Filings (Project Category 207)</u>
(Fees: <u>$24,597.60</u>; Hours: <u>32.40</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$24,597.60</u>; Aggregate Hours: <u>32.40</u>)

65.     This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing multiple objections to the Debtor's motion to approve the settlement of the Commonwealth-COFINA dispute.

(d) <u>Analysis and Strategy (Project Category 210)</u>
(Fees: <u>$54,287.10</u>; Hours: <u>71.20</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
 (Aggregate Fees: <u>$54,287.10</u>; Aggregate Hours: <u>71.20</u>)

66.     This Project Category includes time spent related to (a) legal analysis in, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including (*i*) meetings to discuss strategic case considerations, the status of various work streams,

and next steps, and (*ii*) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

    (e)   General Administration (Project Category 212)
          (Fees: $3,856.00; Hours: 14.80)
          (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
          (Aggregate Fees: $3,856.00; Aggregate Hours: 14.80)

    67.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (b) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

## VI.   Matter No. 33260/039 (Commonwealth Title III – Rule 2004) and No. 33260/939 (Commonwealth Title III – Rule 2004 Puerto Rico)

    68.    These matter numbers cover time spent working on Rule 2004 motions filed in the Debtor's Title III Case and any appeals related thereto.

    (a)   Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants (Project Category 201)
          (Fees:  $18,429.90; Hours:  24.10)
          (Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
          (Aggregate Fees:  $18,429.90; Aggregate Hours:  24.10)

    69.    This Project Category includes time spent communicating with the Oversight Board, and its other representatives, agents, and consultants, as well as preparing for and advising on fiscal plans, public meetings, litigation and related issues.   Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conferring with the Oversight Board and its other advisors in connection with the response to the renewed GO bondholders' Rule 2004 motion and related GO bondholders' discovery requests;
- Conferring with the Oversight Board and its advisors on issues related to the renewed Rule 2004 motion by the Unsecured Creditors' Committee; and
- Conferring with the Oversight Board and its advisors regarding the Retiree Committee's document requests and objections thereto.

    (b)   <u>Communications with Claimholders (Project Category 204)</u>
(Fees:  $11,047.50; Hours:  14.50)
(Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
(Aggregate Fees: $11,047.50; Aggregate Hours:  14.50)

70.    This Project Category includes time spent communicating with the Debtor's various claimholders.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with the GO bondholders' advisors and with counsel for other claimholders in connection with the GO bondholders' discovery requests for the Debtor's financial information and the Debtor's objections thereto; and

- Communicating with the Retiree Committee and its advisors in connection with the Committee's discovery requests and coordinating review and production of the requested documents.

    (c)   <u>Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities (Project Category 205)</u>
(Fees:  $11,926.50; Hours: 15.50)
(Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
(Aggregate Fees: $11,926.50; Aggregate Hours:  15.50)

71.    This Project Category includes time spent communicating with the Debtor's representatives in various matters related to the Debtor's Title III Case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time communicating with counsel and other advisors to AAFAF in connection with the GO bondholders' discovery requests, discussing status of production and related privilege issues.

    (d)   <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
(Fees:  $36,456.00; Hours:  48.00)
(Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
(Aggregate Fees: $36,456.00; Aggregate Hours:  48.00)

72.    This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting research for and drafting opposition to the Rule 2004 motion by the Unsecured Creditors' Committee concerning potential avoidance actions; and

- Reviewing and revising the joint status report.

43

(e)    Non-Board Court Filings (Project Category 207)
       (Fees:  $7,286.40; Hours:  9.60)
       (Fees for work performed in Puerto Rico:  $607.20; Hours:  0.80)
       (Aggregate Fees: $7,893.60; Aggregate Hours:  10.40)

73.    This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category.  Specifically, Proskauer attorneys and paraprofessionals spent time reviewing and analyzing the Rule 2004 motion by the Unsecured Creditors' Committee concerning potential avoidance actions and the related order entered by Judge Dein.

(f)    Analysis and Strategy (Project Category 210)
       (Fees:  $75,662.00; Hours:  102.20)
       (Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
       (Aggregate Fees: $75,662.00; Aggregate Hours:  102.20)

74.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

(g)    General Administration (Project Category 212)
       (Fees:  $15,925.00; Hours:  59.80)
       (Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
        (Aggregate Fees: $15,925.00; Aggregate Hours:  59.80)

75.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

## VII.   Matter No. 33260/041 (Commonwealth Title III – Miscellaneous) and No. 33260/941 (Commonwealth Title III – Miscellaneous Puerto Rico)

76.      These matter numbers cover time spent working on several different, miscellaneous motions and adversary proceedings, and any appeals related thereto.  In this Compensation Period, items billed to this matter included, among other things, work on (*i*) various motions for relief from the Title III stay; (*ii*)  response to the Ponce Real Estate Corporation's Motion Requesting Administrative Rent Payment [ECF No. 3958] (the "Ponce Motion") and the related appeal, Case No. 18-02194; (*iii*) *Official Committee of Unsecured Creditors v. Commonwealth*, Case No. 18-AP-101  (the "GDB Adversary Proceeding"); (*iv*) *American Federation of Teachers v. Commonwealth*, Case No. 18-AP-134 (the "*AFT* Adversary Proceeding"); (*v*) *Pinto Lugo v. United States*, Case No. 18-AP-41 (the "*Pinto Lugo* Adversary Proceeding"); (*vi*) *UECFSE v. United States*, Case No. 18-AP-66 (the "*UECFSE* Adversary Proceeding"); (*vii*) *Financial Oversight & Management Board for Puerto Rico v. Puerto Rico Public Buildings Authority*, Case No. 18-AP-0149 (the "*PBA* Adversary Proceeding"); and (*viii*) *Mandry-Mercado v. Commonwealth,* Case No. 18-02035 (1st Cir.) (the "*Mandry-Mercado* Appeal").

(a)   Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants (Project Category 201)
   (Fees:  $8,602.80; Hours:  11.20)
   (Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
   (Aggregate Fees:  $8,602.80; Aggregate Hours:  11.20)

77.      This Project Category includes time spent communicating with the Oversight Board, and its other representatives, agents, and consultants, as well as preparing for and advising on fiscal plans, public meetings, litigation and related issues.   Specifically, Proskauer attorneys and paraprofessionals spent time conferring with the Oversight Board and its other advisors regarding the status of litigation, pending issues, litigation strategy, and analysis of newly filed complaints and other pleadings.

(b)   Legal Research (Project Category 202)
      (Fees:  $80,675.80; Hours:  110.90)
      (Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
      (Aggregate Fees:  $80,675.80; Aggregate Hours:  110.90)

78.     This Project Category includes time spent researching and analyzing legal issues, as

well as time spent drafting internal memoranda and/or draft briefs related to such research and

analysis, to the extent that such is not expressly covered by another Project Category.  Specifically,

Proskauer attorneys and paraprofessionals spent time researching and analyzing a variety of legal

issues related to the Debtor's Title III adversary cases, including dismissal and stay of actions,

standing, jurisdictional disputes, fiduciary duty standards, and the treatment of leases in bankruptcy.

(c)   Hearings and Other Non-Filed Communications with the Court (Project Category 203)
      (Fees:  $31,878.00; Hours:  42.00)
      (Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
      (Aggregate Fees: $31,878.00; Aggregate Hours:  42.00)

79.     This Project Category includes time spent communicating with the Court and

reviewing the Court's communications and procedures.   Specifically, Proskauer attorneys and

paraprofessionals spent time:

- Communicating with the Court regarding applicable rules and requirements; and

- Preparing for and participating in the hearing on Unsecured Creditors' Committee's standing to commence a proceeding relating to restructuring of GDB and in the related settlement hearing in the *GDB* adversary proceeding.

(d)   Communications with Claimholders (Project Category 204)
      (Fees: $57,081.30; Hours: 74.70)
      (Fees for work performed in Puerto Rico:  $0.00; Hours:  0.00)
      (Aggregate Fees: $57,081.30; Aggregate Hours: 74.70)

80.     This Project Category includes time spent communicating with the Debtor's various

claimholders.  Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with counsel for GDB, AAFAF and UCC in preparation for the hearing on UCC's standing to commence a proceeding relating to the restructuring of GDB and the related settlement hearing in the *GDB* Adversary Proceeding;

- Communicating with opposing counsel, drafting a meet-and-confer letter, and participating in a meet-and confer session in connection with the Debtor's motion to dismiss the *UECSFE* Adversary Proceeding; and

- Communicating with the claimholders and their advisors on scheduling and procedural matters.

(e) <u>Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities (Project Category 205)</u>
(Fees: <u>$16,152.90</u>; Hours: <u>21.10</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$16,152.90</u>; Aggregate Hours: <u>21.10</u>)

81. This Project Category includes time spent communicating with the Debtor's representatives in various matters related to the Debtor's Title III Case, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conferring with other advisors to the FOMB in preparation for the hearing on the UCC's standing to commence a proceeding relating to the restructuring of GDB and to the related settlement hearing in the *GDB* Adversary Proceeding;

- Conferring with other advisors to the FOMB regarding the filing of a complaint in the *PBA* Adversary Proceeding and related issues; and

- Discussing a variety of legal and procedural issues with the FOMB and its other advisors related to meet-and-confer communications and meetings with opposing counsel in multiple adversary proceedings.

(f) <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
(Fees: <u>$448,605.10</u>; Hours: <u>597.70</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$448,605.10</u>; Aggregate Hours: <u>597.70</u>)

82. This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting research and drafting the response to the Ponce Motion requesting administrative rent payment;

- Conducting research and drafting dispositive motions in the *UECFSE* and *AFT* Adversary Proceedings;

47

- Conducting research and drafting replies in support of the Debtor's dispositive motions in the *GDB* and *Pinto Lugo* Adversary Proceedings; and

- Drafting pleadings related to the extension of deadlines and other procedural and scheduling issues.

(g)   Non-Board Court Filings (Project Category 207)
(Fees: $80,915.40; Hours: 105.60)
(Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
(Aggregate Fees: $80,915.40; Aggregate Hours: 105.60)

83.   This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III Case, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing newly filed adversary complaints involving the Debtor and related motions to stay and to intervene by various parties;

- Analyzing opposition filed by claimholders and various parties in interest to Debtor's dispositive motions; and

- Reviewing and analyzing court orders, reports, and recommendations.

(h)   Stay Matters (Project Category 208)
(Fees: $186,275.30; Hours: 269.70)
(Fees for work performed in Puerto Rico: $531.30; Hours: 0.70)
(Aggregate Fees: $186,806.60; Aggregate Hours: 270.40)

84.   This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III Case and drafting various pleadings related to stay issues. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing newly filed lift stay requests involving the Commonwealth;

- Conducting research and analyzing stay and intervention issues in the Debtor's pending adversary proceedings;

- Communicating with AAFAF, claimholders, and their respective counsel regarding a variety of issues related to lift stay requests; and

- Drafting responses to lift stay motions and stipulations permitting modifications of the stay.

48

(i)  <u>Analysis and Strategy (Project Category 210)</u>
(Fees: <u>$141,017.70</u>; Hours: <u>184.30</u>)
(Fees for work performed in Puerto Rico: <u>$2,049.30</u>; Hours: <u>2.70</u>)
(Aggregate Fees: <u>$143,067.00</u>; Aggregate Hours: <u>187.00</u>)

85.    This Project Category includes time spent related to (a) legal analysis in, and

brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto,

including engaging in meetings to discuss strategic case considerations, the status of various work

streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing

with an issue covered by another Project Category.

(j)  <u>General Administration (Project Category 212)</u>
(Fees: <u>$24,998.60</u>; Hours: <u>93.90</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$24,998.60</u>; Aggregate Hours: <u>93.90</u>)

86.    This Project Category includes time spent on general administration of the Debtor's

Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of

documents in court, including affidavits of service and service mailings; and (c) internal filing and

organization of case documents to ensure easy, fast and free accessibility by the Proskauer team,

the Debtor, and other parties in interest.

(k)  <u>Appeal (Project Category 219)</u>
(Fees: <u>$6,278.70</u>; Hours: <u>10.00</u>)
(Fees for work performed in Puerto Rico: <u>$0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: <u>$6,278.70</u>; Aggregate Hours: <u>10.00</u>)

87.    This Project Category includes time spent preparing appeals and participating in

appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent

not expressly covered by another Project Category.   Specifically, Proskauer attorneys and

paraprofessionals spent time:

- Analyzing appellate issues in connection with the *GDB* Adversary Proceeding;

49

- Researching and analyzing procedural matters in the *Mandry-Mercado* Appeal in the First Circuit and the underlying lower court case in connection with the Court's order to show cause related to the appellant's untimely filing;

- Reviewing and analyzing the appeal of the Ponce Motion and underlying pleadings;

- Researching appellate strategies and identifying appellate issues and standards of appellate review.

## VIII.   Matter No. 33260/061 (Commonwealth Title III – Fiscal Plan/ Budget Litigation) and No. 33260/961 (Commonwealth Title III – Fiscal Plan/ Budget Litigation Puerto Rico)

88.     These matter numbers cover time spent related to challenges by the Commonwealth government to fiscal plans and budgets certified by the Oversight Board, including *Rossello v. FOMB*, Case No. 18-AP-080, and *Rivera-Schatz v. FOMB,* Case No. 18-AP-081, and on any appeals related thereto.

(a)   Legal Research (Project Category 202)
       (Fees: $3,085.60; Hours: 11.10)
       (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
       (Aggregate Fees: $3,085.60; Aggregate Hours: 11.10)

89.     This Project Category includes time spent researching and analyzing legal issues, as well as time spent drafting internal memoranda and/or draft briefs related to such research and analysis, to the extent that such is not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time conducting research on a variety of legal issues in connection with the Oversight Board's answer to the complaint in the *Rossello* Adversary Proceeding.

(b)   Documents Filed on Behalf of the Board (Project Category 206)
       (Fees: $17,836.50; Hours: 23.50)
       (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
       (Aggregate Fees: $17,836.50; Aggregate Hours: 23.50)

90.     This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically,

Proskauer attorneys and paraprofessionals spent time conducting research and drafting the Oversight Board's counter-claim and answer to complaint in the *Rossello* Adversary Proceeding.

    (c)   Analysis and Strategy (Project Category 210)
          (Fees: $26,465.20; Hours: 35.00)
          (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
          (Aggregate Fees: $26,465.20; Aggregate Hours: 35.00)

    91.    This Project Category includes time spent related to (a) legal analysis in, and brainstorming strategic approaches to, the Debtor's Title III Case and varied issues relating thereto, including engaging in meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, to the extent not expressly covered by another Project Category.

    (d)   General Administration (Project Category 212)
          (Fees: $17,235.00; Hours: 65.40)
          (Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
          (Aggregate Fees: $17,235.00; Aggregate Hours: 65.40)

    92.    This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

    (e)   Appeal (Project Category 219)
          (Fees: $313,254.20; Hours: 410.20)
          (Fees for work performed in Puerto Rico: $151.80; Hours: 0.20)
          (Aggregate Fees: $313,406.00; Aggregate Hours: 410.40)

    93.    This Project Category includes time spent preparing appeals and participating in appellate proceedings on behalf of the Oversight Board as representative of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

51

- Conferring with the Oversight Board and its other advisors in connection with the Governor's petition for an interlocutory appeal in the *Rosello* Adversary Proceeding, analyzing the relevant issues, developing strategy, and drafting an opposition to the petition;

- Conferring with the Oversight Board and its other advisors and drafting the response brief in the *Rivera* appeal and preparing for oral argument before the First Circuit; and

- Reviewing and analyzing appellate briefs, researching appellate strategies, and identifying appellate issues and standards of appellate review.

*     *     *     *

94.     The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

95.     In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

**Actual and Necessary Expenses of Proskauer**

96.     Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor during the Compensation Period.

97.     In accordance with paragraph C.13 of the Appendix B Guidelines and as more fully itemized in **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable expenses, including: (a) reproduction, (b) online research, (c) delivery services and couriers, (d) local travel to and from airports, (e) out-of-town travel and lodging, (f) out-of-town meals, (g) court fees, (h) transcription services, (i) litigation support, and (j)  professional services.  All expense entries detailed in **Exhibit B** comply with the requirements set forth in the Guidelines, including an itemization of the expenses by category, the date the expense was incurred, and the individual incurring the expense, where available.   The reasons for the expenses are self-explanatory.  In compliance with Appendix B Guidelines paragraph C.13, the requested expenses are of the kind customarily charged to Proskauer's non-bankruptcy clients and by other comparable professionals.

98.     Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per page for photocopying expenses.  The rates charged by the firm for Westlaw and Lexis computerized research vary according to the type of research conducted and the specific files researched, but, in any event, Proskauer does not profit from the use of computer assisted legal research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.   The expenditures Proskauer is seeking reimbursement for and which are reflected on **Schedule 4** are all of the type customarily billed to clients.

99.     During the Compensation Period, Proskauer has disbursed **$286,789.32** as necessary and reasonable expenses.  These charges cover Proskauer's direct operating costs, which costs are not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon clients who do not require extensive photocopying and other facilities and services).  Only clients

who actually benefit from services of the kind set forth in **Exhibit B** are separately charged for such services.  Proskauer has made every effort to minimize its expenses in the Debtor's Title III Case. The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to effectively serve the needs of the Debtor in its Title III case.

### Compensation Paid and Its Source

100.    All services for which Proskauer seeks compensation, and expenses for which it seeks reimbursement, were performed on behalf of the Oversight Board as representative of the Debtor.  In connection with the matters covered by this Application, Proskauer received no payment and no promises of payment for services rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or understanding between Proskauer and any other person, other than members of the firm, for the sharing of compensation received for services rendered in this Title III case.

101.    PROMESA sections 316 and 317 provide for interim compensation of professionals and govern the Court's award of such compensation.  PROMESA section 316 provides that a court may award a professional person employed by the Debtor or the Oversight Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and (2) reimbursement for actual, necessary expenses."  PROMESA § 316(a).  Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded … the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;

(3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

102.    As noted above, the professional services and expenditures for which Proskauer seeks compensation and reimbursement in this Application were necessary and beneficial to the Oversight Board, as representative of the Debtor, and included, among other things, anticipating or responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the Debtor's very complex Title III case.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Oversight Board.  The Oversight Board has reviewed and approved this Application.

**<u>Reservations</u>**

103.    To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement of expenses herein with respect to any services rendered or expenses incurred during the Compensation Period, Proskauer reserves the right to request compensation for such services and reimbursement of such expenses in a future application.

## **Notice**

104.    Pursuant to the Interim Compensation Order, notice of this Application has been

filed in the Debtor's Title III Case and served upon:

(a) the Financial Oversight and Management Board, 40 Washington Square South, Office 314A, New York, NY 10012, Attn: Professor Arthur J. Gonzalez, Oversight Board Member;

(b) attorneys for the Financial Oversight and Management Board as representative of The Commonwealth of Puerto Rico, O'Neill & Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges. com);

(c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times Square, New York, NY 10036, Attn: John J. Rapisardi, Esq. (jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com), and Diana M. Perez, Esq. (dperez@omm.com);

(d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, Marini Pietrantoni Muniz LLC, MCS Plaza, Suite 500, 255 Ponce de León Ave., San Juan P.R. 00917, Attn.: Luis C. Marini-Biaggi, Esq. (lmarini@mpmlawpr.com) and Carolina Velaz-Rivero Esq. (cvelaz@mpmlawpr.com);

(e) the Office of the United States Trustee for the District of Puerto Rico, Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re: *In re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A. Despins, Esq. (lucdespins@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas, Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street, Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq. (jcasillas@cstlawpr.com) and Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin@jenner. com); and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine Steege, Esq. (csteege@jenner.com) and Melissa Root, Esq. (mroot@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce de León, Hato Rey, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares@ hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda.pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the total amount of **$7,039,833.22**, which is comprised of (i) fees for professional services rendered in the amount of **$6,776,395.60**, $4,131,408.60 of which represents fees earned outside of Puerto Rico on or before December 9, 2018, $89,334.30 of which represents fees earned in Puerto Rico on or before December 9, 2018, and $2,555,652.70 represents fees earned on or after December 10, 2018, and (ii) the Gross-Up Amount in the amount of **$263,437.62**,[15] and reimbursement for actual and necessary expenses Proskauer incurred in connection with such services during the Compensation

---

[15] Proskauer will only request from the Debtor payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

Period in the amount of **$286,789.32**; (b) authorizing and directing the Debtor to pay promptly to Proskauer the difference between (*i*) the amount of interim compensation for professional services rendered and reimbursement of expenses incurred during the Compensation Period allowed hereunder, and (*ii*) the amounts for such compensation and expenses previously paid to Proskauer, consistent with the provisions of the Interim Compensation Order; (c) allowing such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred without prejudice to Proskauer's right to seek additional compensation for services performed and expenses incurred during the Compensation Period, which were not processed at the time of this Application; and (d) granting Proskauer such other and further relief as is just and proper.

[*Remainder of Page Intentionally Left Blank*]

Dated: May 21, 2019
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
       ppossinger@proskauer.com
       ebarak@proskauer.com
       mzerjal@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M. Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and
Management Board as Representative of the
Debtor*