Estimated Hearing Date: June 12, 2019 at 9:30 a.m. (Atlantic Standard Time)
Objection Deadline: June 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

     Debtors.[1]

-------------------------------------------------------------x

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

     as representative of

PUERTO RICO HIGHWAYS AND
TRANSPORTATION AUTHORITY,

     Debtor.

-------------------------------------------------------------x

PROMESA
Title III

Case No. 17-BK-3283-LTS

(Jointly Administered)

PROMESA
Title III

Case No. 17-BK-3567-LTS

**This Application relates only to HTA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and HTA's Title III Case (Case No. 17-BK-3567-LTS)**

# SUMMARY SHEET TO
# FIFTH INTERIM FEE APPLICATION OF
# PROSKAUER ROSE LLP FOR COMPENSATION
# FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
# INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND
# MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE
# OF THE DEBTOR, THE PUERTO RICO HIGHWAYS & TRANSPORTATION
# AUTHORITY, FOR THE PERIOD OCTOBER 1, 2018 THROUGH JANUARY 31, 2019

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

## Schedule 1

**Summary of Fees and Expenses Paid to Date and the Balance of Fees and
Expenses for which Allowance and Payment is Requested for the Compensation Period**

| | |
|---|---|
| Name of Applicant: | Proskauer Rose LLP ("Proskauer") |
| Retained to Provide Professional Services to: | The Financial Oversight and Management Board for Puerto Rico as Representative of the Debtor Pursuant to PROMESA section 315(b) |
| Period for Which Compensation is Sought: | October 1, 2018 through January 31, 2019 (the "Compensation Period") |
| Amount of Fees Sought excluding Gross-Up Amount: | $892,478.50 |
| Gross-Up Amount[2]: | $21,006.87 |
| Amount of Expense Reimbursement Sought: | $43,161.01 |
| Total Fees and Expenses Sought for Compensation Period including the Gross-Up Amount: | $956,646.38 |

This is a(n)  ____ Monthly  _X_ Interim  __ Final Fee Application

This is the fifth interim fee application filed by Proskauer in the Debtor's Title III case.  The total time expended in connection with the preparation of this interim application is not included herein, as additional time was expended after the Compensation Period.

---

[2] Pursuant to Proskauer's fee arrangement with the Oversight Board, Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by the Commonwealth legislation (Act 257-2018) starting December 10, 2019 (the "Withholding").  But Proskauer will only request from the Debtors payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

1

**Fifth Interim Compensation Period**
**October 1, 2018 – January 31, 2019**

| Statement and Date Served | Period Covered | Total Fees Incurred | Total Fees Requested (90%) | Expenses Requested | Fees Paid (90%) | Expenses Paid |
|---|---|---|---|---|---|---|
| **Eighteenth** 1/3/2019 | 10/1/18 to 10/31/18 | $319,951.70 | $287,956.53 | $15,178.20 | $287,956.53 | $15,178.20 |
| **Eighteenth (Puerto Rico)** 1/3/2019 | 10/1/18 to 10/31/18 | $15,104.10 | $13,593.69 | $0.00 | $13,593.69 | $0.00 |
| **Nineteenth** 2/21/2019 | 11/1/18 to 11/30/18 | $298,645.10 | $268,780.59 | $24,133.29 | $268,780.59 | $24,133.29 |
| **Nineteenth (Puerto Rico)** 2/21/2019 | 11/1/18 to 11/30/18 | $41,289.60 | $37,160.64 | $0.00 | $37,160.64 | $0.00 |
| **Twentieth** 3/8/2019 | 12/1/18 to 12/09/18 | $59,282.10 | $53,353.89 | $1,646.74 | $53,353.89 | $1,646.74 |
| **Twenty-first** 4/1/2019 | 12/10/18 to 12/31/18 | $96,044.70 | $86,440.23 | $1,060.90 | $86,440.23 | $1,060.90 |
| **Twenty-second** 4/19/2019 | 1/1/19 to 1/31/19 | $62,161.20 | $55,945.08 | $1,141.88 | $55,945.08 | $1,141.88 |
| **Totals:** | | **$892,478.50** | **$803,230.65** | **$43,161.01** | **$803,230.65** | **$43,161.01** |

2

Additional information required pursuant to the *United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United States Trustee:

| | |
|---|---|
| Blended Rate in This Application for All Attorneys | $761.03[3] |
| Blended Rate in This Application for All Timekeepers | $719.51 |
| Compensation Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $803,230.65 |
| Expenses Sought in this Application Already Paid Pursuant to Monthly Compensation Statements but Not Yet Allowed | $43,161.01 |
| Number of Professionals Included in this Application[4] | 47 |
| Number of Professionals in This Application NOT Included in Staffing Plan Approved by Client[5] | N/A |
| If Applicable, the Difference Between Fees Budgeted and Compensation Sought for This Application Period | N/A |
| Number of Professionals Billing Fewer than 15 Hours to the Case During This Application Period | 31 |
| Any Rates Higher than Those Approved or Disclosed when Retained?  If yes, calculate and disclose the total compensation sought in this Application using the rates originally disclosed at retention. | No.  Proskauer's engagement letter provided for rate increases.  The amount of compensation attributable to Proskauer's rate increase for the current fiscal year is approximately $2,362.00, representing approximately 0.26% of the requested fees for this Compensation Period. |

---

[3]  This rate excludes non-attorneys (*e.g.*, paralegals).

[4]  As used herein, the term "professionals" includes all timekeepers.  The term "paraprofessionals," as used in this Application, only includes non-attorneys.

[5]  As noted in the budget Staffing Plan, the number of timekeepers expected to work on the matter during the Compensation Period was 49, and thus the actual number of timekeepers was 2 fewer than anticipated.

**Schedule 2**

**Summary of Professional Services Rendered by**
**Timekeeper for the Period October 1, 2018 through January 31, 2019**

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| *PARTNERS* | | | | |
| Barak, Ehud | BSGR&B[7] – 2010 | $759 | 0.70 | $531.30 |
| Bienenstock, Martin J. | BSGR&B – 1978 | $759 | 88.20 | $66,943.80 |
| | | $789 | 46.70 | $36,846.30 |
| Dale, Margaret A. | Litigation – 1990 | $759 | 58.50 | $44,401.50 |
| Ferrara, Ralph C. | Litigation – 1970 | $759 | 1.20 | $910.80 |
| | | $789 | 1.10 | $867.90 |
| Firestein, Michael A. | Litigation – 1983 | $759 | 131.10 | $99,504.90 |
| | | $789 | 6.50 | $5,128.50 |
| Harris, Mark | Litigation – 1992 | $759 | 82.10 | $62,313.90 |
| Levitan, Jeffrey W. | BSGR&B – 1983 | $759 | 22.30 | $16,925.70 |
| | | $789 | 0.80 | $631.20 |
| Martinez, Carlos E. | Corporate – 1988 | $759 | 0.30 | $227.70 |
| Mungovan, Timothy W. | Litigation – 1994 | $759 | 63.40 | $48,120.60 |
| | | $789 | 8.10 | $6,390.90 |

---

[6] In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other conditions and apply to matters in and out of bankruptcy cases. Pursuant to the Appendix B Guidelines, "rate increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys throughout the firm due to advancing seniority and promotion." Annual step increases are awarded by Proskauer in the ordinary course throughout the firm on May 1. Proskauer's November 25, 2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates are increased on January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and four percent. Because Proskauer's fees under the Engagement Letter are a blended rate (currently $789 for attorneys, $390 for e-discovery attorneys, and $270 for all other professionals), no annual step increases will be applicable to the rates charged in this matter. Additionally as of January 1 2019, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour.

[7] Business Solutions, Governance, Restructuring & Bankruptcy ("BSGR&B").

Case:17-03283-LTS   Doc#:7047   Filed:05/21/19   Entered:05/21/19 18:18:36   Desc: Main
Document   Page 6 of 55

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Possinger, Paul V. | BSGR&B – 1993 | $759 | 5.30 | $4,022.70 |
| Rappaport, Lary Alan | Litigation – 1979 | $759 | 88.80 | $67,399.20 |
| | | $789 | 3.40 | $2,682.60 |
| Ratner, Stephen L. | Litigation – 1975 | $759 | 31.80 | $24,136.20 |
| Rosen, Brian S. | BSGR&B – 1983 | $759 | 1.30 | $986.70 |
| Triggs, Matthew | Litigation – 1990 | $759 | 4.20 | $3,187.80 |
| Weise, Steven O. | Corporate – 1974 | $759 | 103.40 | $78,480.60 |
| **Total for Partners:** | | | **749.20** | **$570,640.80** |
| *SENIOR COUNSEL* | | | | |
| Roberts, John E.[8] | Litigation – 2009 | $759 | 94.60 | $71,801.40 |
| | | $789 | 8.80 | $6,943.20 |
| Roche, Jennifer L.[9] | Litigation – 2007 | $759 | 12.10 | $9,183.90 |
| **Total for Senior Counsel:** | | | **115.50** | **$87,928.50** |
| *ASSOCIATES* | | | | |
| Chalett, Zachary | Litigation  – 2017 | $759 | 16.40 | $12,447.60 |
| Clark, Brandon C. | Litigation – 2014 | $759 | 0.20 | $151.80 |
| Desatnik, Daniel S. | BSGR&B – 2016 | $759 | 2.70 | $2,049.30 |
| Fiur, Seth | Litigation – 2014 | $759 | 24.50 | $18,595.50 |
| Kim, Mee R. | Litigation – 2016 | $759 | 0.80 | $607.20 |
| Kowalczyk, Lucas | Litigation – 2017 | $759 | 52.20 | $39,619.80 |
| Ma, Steve | BSGR&B – 2014 | $759 | 0.30 | $227.70 |
| Morris, Matthew J. | Litigation – 2000 | $759 | 6.40 | $4,857.60 |
| Roberts, John E.[10] | Litigation – 2010 | $759 | 1.60 | $1,214.40 |
| Roche, Jennifer L.[11] | Litigation – 2007 | $759 | 74.90 | $56,849.10 |

[8] Appointed as Senior Counsel effective November 1, 2018

[9] Appointed as Senior Counsel effective November 1, 2018

[10] Appointed as Senior Counsel effective November 1, 2018

[11] Appointed as Senior Counsel effective November 1, 2018

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Skellet, Alexandra K. | Litigation – 2003 | $759 | 54.40 | $41,289.60 |
| Stafford, Laura | Litigation – 2012 | $759 | 0.30 | $227.70 |
| | | $789 | 0.40 | $315.60 |
| Stevens, Elliot R. | BSGR&B – 2018 | $759 | 15.80 | $11,992.20 |
| Theodoridis, Chris | BSGR&B – 2011 | $759 | 4.20 | $3,187.80 |
| Wolf, Lucy | Litigation – 2017 | $759 | 5.00 | $3,795.00 |
| Zerjal, Maja | BSGR&B – 2012 | $759 | 11.70 | $8,880.30 |
| | | $789 | 1.00 | $789.00 |
| **Total for Associates:** | | | **272.80** | **$207,097.20** |
| *PARAPROFESSIONALS* | | | | |
| Bigliani, Kenneth L. | Professional Resources – N/A | $260 | 0.50 | $130.00 |
| Geary, Laura M. | Litigation Paralegal – N/A | $260 | 1.30 | $338.00 |
| Giarrusso, Paul V. | Professional Resources – N/A | $260 | 4.20 | $1,092.00 |
| Giddens, Magali | BSGR&B Paralegal – N/A | $260 | 2.50 | $650.00 |
| Henderson, Laurie A. | Professional Resources – N/A | $260 | 2.60 | $676.00 |
| Hoffman, Joan K. | Litigation Paralegal – N/A | $260 | 1.80 | $468.00 |
| Ike, Yvonne O. | Professional Resources – N/A | $260 | 9.30 | $2,418.00 |
| Infante, Elle M. | Litigation Paralegal – N/A | $260 | 1.70 | $442.00 |
| Miller, Tiffany | Labor & Employment Paralegal – N/A | $260 | 0.20 | $52.00 |
| | | $270 | 0.40 | $108.00 |

6

| NAME OF PROFESSIONAL (in alphabetical order) | DEPARTMENT AND YEAR ADMITTED | HOURLY RATE[6] | HOURS BILLED | FEES BILLED |
|---|---|---|---|---|
| Monforte, Angelo | Litigation Paralegal – N/A | $260 | 9.40 | $2,444.00 |
| Petrov, Natasha | BSGR&B Paralegal – N/A | $260 | 22.30 | $5,798.00 |
| | | $270 | 4.60 | $1,242.00 |
| Silvestro, Lawrence T. | Litigation Paralegal – N/A | $260 | 20.10 | $5,226.00 |
| Tarrant, Christopher M. | BSGR&B Paralegal – N/A | $260 | 3.70 | $962.00 |
| Volpicello, Alexander J. | Litigation Paralegal – N/A | $260 | 0.30 | $78.00 |
| Wizner, Eamon | Litigation Paralegal – N/A | $260 | 9.00 | $2,340.00 |
| | | $270 | 0.40 | $108.00 |
| Wolf, Joseph P. | Litigation Paralegal – N/A | $260 | 8.20 | $2,132.00 |
| | | $270 | 0.40 | $108.00 |
| **Totals for Paraprofessionals:** | | | **102.90** | **$26,812.00** |

| PROFESSIONALS | TOTAL HOURS BILLED | TOTAL COMPENSATION |
|---|---|---|
| **Attorneys, Law Clerks,  and Paraprofessional Totals:** | **1,240.40** | **$892,478.50** |

7

**Schedule 3**

**Summary of Professional Services Rendered by Project
Category for the Period October 1, 2018 through January 31, 2019**

| PROJECT CATEGORY | DESCRIPTION | HOURS | FEES SOUGHT |
|---|---|---|---|
| 201 | Tasks Relating to the Board, its Members, its Staff, its Advisors or its Consultants | 9.10 | $6,906.90 |
| 202 | Legal Research | 4.10 | $3,111.90 |
| 203 | Hearings and Other Non-Filed Communications with the Court | 10.10 | $7,665.90 |
| 204 | Communications with Claimholders | 12.80 | $9,715.20 |
| 205 | Communications with the Commonwealth, its Instrumentalities or Representatives of the Commonwealth or its Instrumentalities | 4.80 | $3,652.20 |
| 206 | Documents Filed on Behalf of the Board | 34.90 | $23,163.80 |
| 207 | Non-Board Court Filings | 17.10 | $12,978.90 |
| 208 | Stay Matters | 13.10 | $9,942.90 |
| 209 | Adversary Proceeding | 0.20 | $151.80 |
| 210 | Analysis and Strategy | 89.10 | $67,638.90 |
| 211 | Non-Working Travel Time | 15.00 | $11,436.00 |
| 212 | General Administration | 49.20 | $12,804.00 |
| 214 | Legal/ Regulatory Matters | 0.30 | $227.70 |
| 218 | Employment and Fee Applications | 38.90 | $14,301.70 |
| 219 | Appeal | 941.70 | $708,780.70 |
| | **Total for All Project Categories:** | **1,240.40** | **$892,478.50** |

8

**Schedule 4**

**Summary of Actual and Necessary Expenses Incurred
for the Period October 1, 2018 through January 31, 2019**

| EXPENSE CATEGORY | AMOUNTS |
|---|---:|
| Airplane | $1,992.32 |
| Data Base Search Services | $75.79 |
| Lexis/Westlaw | $19,603.00 |
| Lodging | $1,549.91 |
| Messenger/Delivery | $382.31 |
| Other Database Research | $49.30 |
| Out-of-Town Meals | $225.68 |
| Out-of-Town Transportation | $284.84 |
| Outside Reproduction | $711.76 |
| Practice Support Vendors | $14,845.00 |
| Printing, Binding, etc. | $1,283.40 |
| Reproduction | $1,731.60 |
| Taxi, Carfare, Mileage And Parking | $81.37 |
| Taxicab/Car Service | $344.73 |
| **Total:** | **$43,161.01** |

9

**Schedule 5**

**Blended Rate Chart**

| CATEGORY OF TIMEKEEPER | BLENDED HOURLY RATE | |
|---|---|---|
| | BILLED<br><br>Domestic offices in which timekeepers collectively billed at least 10% of the hours to the bankruptcy case during the application period, for preceding year, *excluding bankruptcy* | BILLED<br><br>In this fee application[12] |
| Partners | $1,146 | $761.67 |
| Senior Counsel | $975 | $761.29 |
| Associates (7 or more years since first admission) | $874 | $759.15 |
| Associates (4-6 years since first admission) | $820 | $759.15 |
| Associates (1-3 years since first admission) | $691 | $759.15 |
| Law Clerks | $545 | N/A |
| Paraprofessionals | $315 | $260.56 |
| Other | $473 | N/A |
| **All Timekeepers Aggregated:** | **$853** | **$719.51** |

---

[12] As explained in more detail herein and in the Engagement Letter, in connection with its representation of the Oversight Board, both inside and outside of Title III, Proskauer agreed to a fee arrangement whereby (a) prior to January 1, 2019, partners, counsel, and associates were billed at $759 per hour, and all other staff were billed at $260 per hour, and (b) as of January 1, 2019, partners, counsel, and associates are billed at $789 per hour, e-discovery attorneys are billed at $390 per hour,  and all other staff are billed at $270 per hour.

Estimated Hearing Date: June 12, 2019 at 9:30 a.m. (Atlantic Standard Time)
Objection Deadline: June 10, 2019 at 4:00 p.m. (Atlantic Standard Time)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | |
| as representative of | Case No. 17-BK-3283-LTS |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | (Jointly Administered) |
| Debtors.[1] | |

-------------------------------------------------------------x

| | |
|---|---|
| In re: | PROMESA<br>Title III |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | Case No. 17-BK-3567-LTS |
| as representative of | |
| PUERTO RICO HIGHWAYS AND<br>TRANSPORTATION AUTHORITY, | **This Application relates only to HTA, and shall be filed in the lead Case No. 17-BK-3283-LTS, and HTA's Title III Case (Case No. 17-BK-3567-LTS)** |
| Debtor. | |

-------------------------------------------------------------x

## FIFTH INTERIM FEE APPLICATION
## OF PROSKAUER ROSE LLP FOR COMPENSATION
## FOR SERVICES RENDERED AND REIMBURSEMENT OF EXPENSES
## INCURRED AS ATTORNEYS FOR THE FINANCIAL OVERSIGHT AND
## MANAGEMENT BOARD FOR PUERTO RICO, AS REPRESENTATIVE
## OF THE DEBTOR, THE PUERTO RICO HIGHWAYS & TRANSPORTATION
## AUTHORITY, FOR THE PERIOD OCTOBER 1, 2018 THROUGH JANUARY 31, 2019

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747). (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

Proskauer Rose LLP ("Proskauer"), attorneys for the Financial Oversight and
Management Board for Puerto Rico (the "Oversight Board" or "FOMB") as representative of the
Puerto Rico Highways & Transportation Authority (the "Debtor" or "HTA") pursuant to section
315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2]
hereby submits this fifth interim application (the "Application"),[3] pursuant to PROMESA sections
316 and 317, Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),[4]
Rule 2016-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the
District of Puerto Rico (the "Local Rules"), and the *United States Trustee Guidelines for
Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C.
§ 330 by Attorneys in Larger Chapter 11 Cases* issued by the Executive Office for the United
States Trustee, 28 CFR Part 58, Appendix B (the "Guidelines"), and in accordance with this
Court's *Second Amended Order Setting Procedures for Interim Compensation and
Reimbursement of Expenses of Professionals* [Case No. 17 BK 3283-LTS, ECF No. 3269] (the
"Interim Compensation Order"), for (a) allowance of interim compensation for professional
services performed by Proskauer for the period commencing October 1, 2018 through and
including January 31, 2019 (the "Compensation Period") in the total amount of **$956,646.38**,
which is comprised of (i) fees for professional services rendered in the amount of $892,478.50,
$677,878.90 of which represents fees earned outside of Puerto Rico on or before December 9,
2018, $56,393.70 of which represents fees earned in Puerto Rico on or before December 9, 2018,
and $158,205.90 represents fees earned on or after December 10, 2018,[5] and (ii) the Gross-Up

---

[2]   PROMESA has been codified in 48 U.S.C. §§ 2101-2241.

[3]   The Application solely pertains to fees and expenses incurred with respect to the Debtor's Title III Case and does not
address fees or expenses incurred with respect to other services performed for the Oversight Board (a) on behalf of
other Title III debtors, or (b) outside the Title III process.

[4]   The Bankruptcy Rules are made applicable to the Debtor's Title III Case by PROMESA section 310.

[5]   Until December 10, 2018, Proskauer prepared separate invoices each month for (*i*) work performed in Puerto Rico
and (*ii*) work performed outside of Puerto Rico.  This was because Puerto Rico taxed Proskauer differently depending

Amount in the amount of **$21,006.87**;[6] and (b) reimbursement of its actual and necessary expenses in the amount of **$43,161.01** incurred during the Compensation Period.  In support of the Application, Proskauer respectfully avers as follows:

## Jurisdiction

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this Application pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief requested herein are PROMESA sections 316 and 317.

## Background

4.      On June 30, 2016, the Oversight Board was established under PROMESA section 101(b).  On August 31, 2016, President Obama appointed the Oversight Board's seven voting members.

5.      Pursuant to PROMESA section 315, "[t]he Oversight Board in a case under this subchapter is the representative of the debtor" and "may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including filing a petition under section [304] of [PROMESA] . . . or otherwise generally submitting filings in relation to the case with the court." PROMESA § 315(a), (b).

6.      On September 30, 2016, the Oversight Board designated the Debtor as a "covered entity" under PROMESA section 101(d).

---

on whether work was performed on-island or off-island.  On December 10, 2018, Puerto Rico enacted tax reform (Act 257-2018) that eliminated this difference in tax treatment.  As a result, beginning on December 10, 2018, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

[6]  Proskauer will only request from the Debtor payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax

7.      On November 25, 2016, the Oversight Board retained Proskauer at substantial discounts to its normal hourly rates, as shown by the Engagement Letter and by **Schedule 5** above.

8.      On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under title III thereof (the "Debtor's Title III Case").   Pursuant to PROMESA section 315(b), the Oversight Board is the Debtor's representative in the Debtor's Title III Case.

9.      Background information regarding the Debtor and the commencement of the Debtor's Title III Case is contained in the *Notice of Filing of Statement of Oversight Board in Connection with PROMESA Title III Petition* [Case No. 17 BK 3283-LTS, ECF No. 1], attached to the Commonwealth of Puerto Rico's Title III petition.

10.     On December 15, 2017, Proskauer filed the *First Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period May 21, 2017 through September 30, 2017* [Case No. 17 BK 3283-LTS, ECF No. 2066] (the "First Interim Application").

11.     On April 9, 2018, Proskauer filed the *Second Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period October 1,*

---

credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

*2017 through January 31, 2018* [Case No. 17 BK 3283-LTS, ECF No. 2874] (the "Second Interim Application").

12.    On July 16, 2018, Proskauer filed the *Third Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period February 1, 2018 through May 31, 2018* [Case No. 17 BK 3283-LTS, ECF No. 3576] (the "Third Interim Application").

13.    On November 16, 2018, Proskauer filed the *Fourth Interim Fee Application of Proskauer Rose LLP for Compensation for Services Rendered and Reimbursement of Expenses Incurred as Attorneys for the Financial Oversight and Management Board for Puerto Rico, as Representative of the Debtor, the Puerto Rico Highways and Transportation Authority, for the Period June 1, 2018 through September 30, 2018* [Case No. 17 BK 3283-LTS, ECF No. 4284] (the "Fourth Interim Application").

14.    On January 3, 2019, Proskauer served on the Notice Parties (as defined in the Interim Compensation Order) its eighteenth monthly fee statement for the period October 1, 2018 through October 31, 2018.  On February 21, 2019, Proskauer served on the Notice Parties its nineteenth monthly fee statement for the period November 1, 2018 through November 30, 2018. On March 8, 2019, Proskauer served on the Notice Parties its twentieth monthly fee statement for the period December 1, 2018 through December 9, 2018.  On April 1, 2019, Proskauer served on the Notice Parties its twenty-first monthly fee statement for the period December 10, 2018 through December 31, 2018. On April 19, 2019, Proskauer served on the Notice Parties its twenty-second monthly fee statement for the period January 1, 2019 through January 31, 2019.

15.     In accordance with the Interim Compensation Order and as reflected in the foregoing summary, Proskauer has requested an aggregate payment of **$846,391.66** (payment of ninety percent (90%) of the compensation sought and reimbursement of one-hundred percent (100%) of expenses incurred) and has received **$846,391.66** with respect to fee statements filed during the Compensation Period.

### Summary of Services Rendered by Proskauer During the Compensation Period

16.     The instant Application is Proskauer's fifth application for interim compensation in the Debtor's Title III Case.  To make more efficient for the Court and other readers the review of Proskauer's fee applications in all the pending Title III cases, paragraphs 16 through 22 of the instant Application, and the corresponding paragraphs in each of Proskauer's fifth interim fee applications in the other pending Title III cases, are the same and cover the principal activities in all the Title III cases.

17.     In the Compensation Period, Proskauer continued to work on behalf of the Oversight Board to continue the significant progress achieved during the preceding interim periods.  In the first interim period, Proskauer transitioned the Commonwealth and certain of its instrumentalities to Title III, and, among other things, proposed and negotiated a mechanism to resolve the Commonwealth-COFINA dispute over which entity owns billions of dollars of sales and use tax revenues, and successfully defended against attempts by creditors to (a) seize the toll revenues HTA needed to maintain the Commonwealth's transportation system and (b) seize PREPA and its revenues by putting PREPA in the hands of a receiver.  In the second interim period, in the face of the devastation wrought by Hurricanes Irma and Maria, Proskauer worked with the Oversight Board's officers and other professionals to assess the situation, take actions to ensure the provision of basic services, and reformulate restructuring initiatives to reflect the changing economic landscape.  Proskauer also successfully defended against numerous creditor

6

efforts to enjoin the Oversight Board from proceeding toward a plan of adjustment based on the certified fiscal plan and to seize many revenue streams.  In the third interim period, Proskauer secured emergency authorization for the Commonwealth to lend $300 million to PREPA on a superpriority basis, despite significant opposition by creditor groups, and continued its leading role in assisting the Oversight Board with the development, certification, and defense of revised fiscal plans that provide the blueprint for Puerto Rico's future prosperity and fiscal responsibility. Proskauer also successfully defended against numerous creditor efforts to delay or frustrate the debtors' restructurings during these periods.  In the fourth interim period, Proskauer continued forging paths to restructure Puerto Rico's debt, representing the Oversight Board as the Administrative Supervisor of the Government Development Bank for Puerto Rico's ("GDB") Title VI qualifying modification, representing the Oversight Board in negotiations seeking to restructure a major portion of PREPA's debt, and continuing to work through negotiations related to (and eventually resolving) the Commonwealth-COFINA dispute.  COFINA and GDB alone account for over $20 billion of Puerto Rico's $74 billion in bond debt, and their successful restructurings are significant building blocks for the Oversight Board to accomplish its overall mandate to achieve fiscal responsibility and access to capital markets for Puerto Rico. Proskauer also vigorously and successfully protected the Oversight Board's fiscal plan and budgetary powers in adversary proceedings commenced by the Governor and Legislature challenging the Oversight Board's authority, among other critical efforts in litigation during the fourth compensation period.

18.     In the instant Compensation Period, Proskauer's representation of the Oversight Board has involved legal representation and advocacy on multiple fronts, including, among other things, (a) defending the Oversight Board (for itself or as representative of a Title III debtor) in a multitude of litigation (identified below) brought mostly by creditors, (b) formulating and, in the

case of COFINA, successfully confirming a Title III plan of adjustment, (c) negotiating debt restructurings and other deals, and (d) counselling the Oversight Board on carrying out its duties to restore fiscal responsibility and access to capital markets.

19.     In this Compensation Period, Proskauer built on the foundations laid in prior compensation periods to substantially advance the Title III Debtors' restructurings. Proskauer played a pivotal role in resolving the Commonwealth-COFINA Dispute and in developing, filing and confirming a plan of adjustment for COFINA ("COFINA Plan of Adjustment") that restructured its $16 billion debt burden. Specifically, Proskauer vigorously represented the Oversight Board as it led COFINA through its confirmation process, drafted and finalized the COFINA Plan of Adjustment and related disclosure statement, defended against objections and challenges by various claimholders and other stakeholders (both in and out of court), and negotiated with creditors and other adverse stakeholders to facilitate COFINA's restructuring. COFINA's restructuring will play a key part in the overall revitalization of Puerto Rico and marks a watershed moment in these Title III cases.

20.     Outside COFINA, Proskauer continued its leading role in assisting the Oversight Board with the development and certification of revised fiscal plans. Proskauer also represented the Oversight Board in PREPA's Title III case, leading the defense against a renewed motion seeking to lift the stay to allow for the appointment of a receiver for PREPA, and dedicating significant effort to forward negotiations with a substantial number of PREPA bondholders to draft and finalize a restructuring support agreement (the "Definitive RSA"). Proskauer also drafted appellate briefs and presented oral arguments before the United States Court of Appeal of the First Circuit (the "First Circuit") concerning creditors' appeals seeking to reverse decisions protecting HTA and PREPA from creditor attempts to seize their revenues. Proskauer also worked with several of the Title III Debtors and their related advisors in opposing a multitude of

motions seeking to lift the automatic stay and otherwise hamper their restructuring. Lastly, Proskauer has counseled the Oversight Board as it engaged with the Commonwealth's various creditors, stakeholders and professionals in mediations and negotiations related to the Commonwealth's restructuring, and has devoted significant time to research and develop strategies to accomplish the restructurings.

21.    Some of Proskauer's notable undertakings during this Compensation Period in furtherance and defense of the Oversight Board's mandate under PROMESA of returning the Commonwealth to fiscal responsibility and access to capital markets include:

- Certification of New Fiscal Plans and Budgets. Proskauer played an instrumental and extensive role in the development of new and/or amended certified fiscal plans and budgets for the Commonwealth and its instrumentalities to reflect and account for ongoing developments in Puerto Rico. While the Oversight Board worked closely with the Commonwealth in trying to certify plans and budgets submitted by the Commonwealth and certain of its instrumentalities, these fiscal plans and budgets were ultimately not adopted by the Oversight Board, which developed and certified its own fiscal plans and budgets. Proskauer assisted the Oversight Board in this regard, including working with the Oversight Board's financial advisors to rigorously analyze data, assess the economic and structural impact of proposed fiscal plans, and ultimately assist the Oversight Board in drafting and certifying fiscal plans and budgets that will help achieve PROMESA's purpose of instilling fiscal responsibility and restoring the island's access to capital markets. Of particular note, Proskauer assisted the Oversight Board with its certification of a Commonwealth fiscal plan during the Compensation Period, and researched and briefed issues that arose concerning the certified fiscal plan. Proskauer counseled the Oversight Board through actual and threatened litigation from creditors, the Commonwealth government and legislature, and other stakeholders associated with the certified plan. In addition, Proskauer navigated the Oversight Board through new issues such as the Governor's contention he could unilaterally label fiscal plan provisions as recommendations he was free not to adopt, and represented the Oversight Board in addressing these emergent issues in the fiscal plan certified during the Compensation Period.

- Commonwealth-COFINA Dispute Resolution. During the Compensation Period, Proskauer continued to promote the Oversight Board's critical role in finalizing a resolution to the Commonwealth-COFINA Dispute. Proskauer devoted a substantial and well-measured amount of resources and hours formulating, researching, drafting and filing (i) a disclosure statement; (ii) a plan of adjustment; (iii) motions to approve the disclosure statement and setting related deadlines; and (iv) a 9019 settlement motion between the Commonwealth and COFINA (the "Settlement Motion"). The Settlement Motion was the culmination of over a year of negotiations and litigation regarding the

Commonwealth-COFINA Dispute. Guided by this Court's appointed mediation team, the settlement established an important cornerstone for the Commonwealth's Title III Case to move towards its conclusion, and towards the Commonwealth's overall economic recovery and access to the capital markets. Since before the commencement of the Title III Cases, the dispute regarding whether the Commonwealth or COFINA owned the pledged sales tax revenue has been an overarching issue, central to Puerto Rico's overall restructuring. Resolution of this dispute ultimately determined the tax revenues available to the Commonwealth to fund its expenses, and to COFINA to service its debt. Proskauer's efforts played a central role in ensuring a mutually beneficial settlement, which was incorporated into COFINA's plan of adjustment.

- COFINA Plan Confirmation. A core team of Proskauer professionals prosecuted confirmation at the two-day hearing on January 16-17, 2019 regarding the COFINA Plan of Adjustment and the Settlement Motion. On February 4, 2019, the Court entered the (*i*) *Order and Judgement Confirming the Third Amended Title III Plan of Adjustment of Puerto Rico Sales Tax Financing Corporation* [ECF No. 5048] (the "COFINA Confirmation Order") and (*ii*) *Memorandum Opinion and Order Approving Settlement Between Commonwealth of Puerto Rico and Puerto Rico Sales Tax Financing Corporation* [ECF No. 5045] (the "9019 Settlement Order").

  The confirmation of the COFINA Plan of Adjustment was an important milestone not only for COFINA, but for Puerto Rico as a whole. The COFINA Plan of Adjustment reduced by thirty-two percent (32%) COFINA's approximately $18 billion of funded indebtedness (which represents more than 20% of Puerto Rico's approximate total of $74 billion in bond debt). In so doing, the COFINA Plan of Adjustment provides average annual savings on COFINA debt service through 2057 of approximately $456 million. Furthermore, the COFINA Plan of Adjustment settled ownership of certain sales and use taxes between COFINA and the Commonwealth. Without such settlement, COFINA's and the Commonwealth's Title III cases would have stood still, impeded by expensive litigation to determine ownership of the sales and use taxes. Accordingly, the confirmation of the COFINA Plan of Adjustment represented a significant accomplishment for COFINA, the Commonwealth, and the people of Puerto Rico to move forward towards economic recovery.

- Claim Objections. Pursuant to the Bar Date Orders [ECF Nos. 2521 and 3160], approximately 165,466 proofs of claim were timely filed against the Debtors and logged by Prime Clerk. Such proofs of claim total approximately $43.5 trillion in asserted claims against the Debtors. Of the proofs of claim filed, approximately 3,500 were timely filed in relation to COFINA. The COFINA-related proofs of claim total approximately $10.1 trillion in asserted claims. COFINA is a special purpose entity with only approximately $17 billion of funded indebtedness. Upon review and further assessment by Proskauer, it became clear that many of these claims need not have been filed at all, or suffered from some other flaw, such as improperly identifying COFINA as the debtor, or being duplicative of other proofs of claim. In connection with these claims, Proskauer, working with other professionals, filed a total of 19 omnibus objections and over 20 individual objections. Proskauer spent a significant amount of time and effort reviewing responses to the various objection to claims, negotiating resolutions to the objections with creditors, preparing and filling replies in support of

10

their objections, and attending several related hearings. As a result, approximately 3,100 claims were disallowed, subordinated or reclassified.

- <u>UCC Rule 2004 Motion</u>. Proskauer continued its defense against the renewed motion by the Official Committee of Unsecured Creditors (the "<u>Unsecured Creditors' Committee</u>" or "<u>UCC</u>") seeking to undertake an expansive discovery program pursuant to Bankruptcy Rule 2004. Following Judge Dein's order affirming the Oversight Board's position that a wholesale production of documents relating to the development of fiscal plans was unwarranted and would be counterproductive, the Oversight Board's independent investigator released its comprehensive report pursuant to PROMESA section 104(o). During the Compensation Period, Proskauer continued to work with the various interested stakeholders in an attempt to resolve the pending issues related to this daunting discovery process.

- <u>First Circuit Appeals</u>. During the Compensation Period, Proskauer also defended and litigated several matters before the First Circuit. The following is a summary of major appeals in which Proskauer served as lead counsel for the Title III Debtors during the Compensation Period:

  (1) <u>Aurelius Capital Master, Ltd. et al. v. Commonwealth of Puerto Rico, et al.</u>, Case No. 18-1108: This appeal stems from a notice of appeal of the *Opinion and Order Granting Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P 12(b)(a) and 12(B)(b)*, ECF No. 124 in Adv. Proc. No. 17-00189, dismissing a complaint by certain creditors of the Commonwealth to seize the Commonwealth's resources to pay debt service. Proskauer prepared for oral arguments before the First Circuit, which took place on November 5, 2018. On March 26, 2019 the First Circuit issued an opinion affirming this Court's order dismissing the complaint.

  (2) <u>Altair Global Credit Opp., et al v. Employees Retirement System, et al.</u>, Case No. 18-1836 [Consolidated with 18-1837, 18-1868, 18-1841, 18-1855, 18-1858]: This appeal stems from a notice of appeal of the *Opinion and Order Granting and Denying in Part Cross Motions for Summary Judgment*, ECF No. 215 in Adv. Proc. No. 17-00213 (the "<u>Summary Judgment Order</u>"), holding that ERS bondholders' security interests were never properly perfected under Puerto Rico law and were therefore avoidable under the Bankruptcy Code's avoidance powers. Proskauer finalized and filed the Appellee's brief on behalf of the FOMB on October 19, 2019. Additionally, Proskauer researched the issues and prepared for oral arguments before the First Circuit, which took place on January 7, 2019. On January 30, 2019, the First Circuit issued an opinion reversing the Title III Court in part and affirming it in part. The FOMB filed a petition for a writ of certiorari on April 30, 2019.

  (3) <u>Assured Guaranty Corporation, et al v. Commonwealth of Puerto Rico, et al.</u>, Case No. 18-1165: This appeal stems from a notice of appeal of the *Opinion and Order Granting Motion to Dismiss Plaintiffs' Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and (B)(6)*, ECF No. 125 in Adv. Proc. No. 17-00155, holding that PROMESA Title III's special revenue protections do not require debtors to continue to turnover special revenues postpetition. During the Compensation Period, Proskauer researched the issues on appeal as well as prepared for oral

11

argument, which occurred on November 5, 2018 before the First Circuit.  On March 26, 2019, the First Circuit issued an opinion affirming the Court's opinion.

(4) <u>Ambac Assurance Corporation v. Commonwealth of Puerto Rico, et al.</u>, Case No. 18-1214:  This appeal stems from a notice of appeal of the *Opinion and Order Granting the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and (B)(6)*, ECF No. 156 in Adv. Proc. No. 17-00159, dismissing plaintiffs' claims against the Oversight Board, AAFAF, and HTA alleging defendants illegally diverted HTA's revenues, leading to unnecessary payment defaults.  During the Compensation Period, Proskauer researched the issues on appeal as well as prepared for oral argument, which occurred on January 15, 2019 before the First Circuit.  The First Circuit has not yet issued its opinion.

(5) <u>Mendez-Nunez v. FOMB, et al.</u>, Case No. 18-1773:  This appeal stems from a notice of appeal of the *Opinion and Order Granting Defendants' Motion to Dismiss the Plaintiffs' Complaint*, ECF No. 46 in Adv. Proc. No. 18-00081, dismissing plaintiffs' challenges to the Oversight Board's fiscal year 2019 certified budget.  During the Compensation Period, Proskauer researched, drafted, and filed Appellee's brief on behalf of the Oversight Board.  Additionally, Proskauer devoted many hours to prepare for the oral arguments and research the issues on appeal.  Oral argument took place on February 6, 2019.  On February 22, 2019, the First Circuit issued an opinion affirming the Court's order dismissing the adversary proceeding.

- <u>PREPA Renewed Receiver Motion</u>. Following the First Circuit's ruling on the appeal of the initial PREPA receiver motion, on October 3, 2018, National, Assured, and Syncora filed the *Motion of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief From the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* [Case No. 17-BK-4780-LTS, ECF No. 982] (the "<u>Renewed Receiver Motion</u>"), seeking to lift the automatic stay to seek the appointment of a receiver.  In the Renewed Receiver Motion, National, Assured, and Syncora assert, among other things, that the Bondholders' liens encompass all revenues and that their collateral package includes various contractual covenants contained in the Trust Agreement.  Proskauer prepared an opposition and related filings defending against the Renewed Receiver Motion and its potentially devastating consequences to PREPA and Puerto Rico as a whole.  Proskauer has also agreed to or successfully obtained numerous extensions of the response deadlines for the Renewed Receiver Motion to facilitate ongoing negotiations with PREPA's bondholders.

- <u>PREPA Definitive RSA</u>.  During the Compensation Period, Proskauer worked to advance negotiations with certain PREPA creditors.  On May 3, 2019, after over a year of extensive and hard-fought negotiations, the Oversight Board, PREPA, and AAFAF announced the Definitive RSA with Assured Guaranty Corp., Assured Guaranty Municipal Corp. (together, "<u>Assured</u>") and the Ad Hoc Group of PREPA Bondholders.  The agreement settles the claims and pledges the holders and/or insurers of approximately forty-eight percent (48%) of PREPA's outstanding bond debt to support a plan of adjustment for PREPA providing them with a certain level of economic recovery. The Definitive RSA benefits PREPA by resolving complicated claims with a

large group of its creditors, facilitating the transformation of Puerto Rico's electric sector, and providing a path toward a PREPA Title III plan. The Definitive RSA gives all uninsured PREPA Bondholders the ability to join the Definitive RSA and, if approved, will become a stepping stone facilitating settlements with other creditors.

22.     In addition to the above, one of Proskauer's primary roles has been the defense of the Title III Debtors' interests in numerous, multi-billion-dollar adversary proceedings and contested matters brought by various bondholders, monoline insurers, and unions. Proskauer has also defended the Oversight Board's power and responsibilities as it pertains to certifying fiscal plans and budgets, and issuing restructuring certifications.   Such matters seek, among other things, to enjoin the Oversight Board from enforcing fiscal plans and budgets, consummating a Title VI restructuring, and proposing a plan of adjustment consistent with the Commonwealth's certified fiscal plan. Numerous matters also seek to compel turnovers of billions of dollars of revenues critical to the Commonwealth's viability and the provision of public services on the island in the wake of the hurricanes. Proskauer has defended against these challenges, many of first impression, involving, among other things, the constitutionality of various PROMESA provisions, the correct interpretation of various sections of PROMESA and the Bankruptcy Code, and the validity of certain creditors' asserted liens. The following is a summary of major litigation matters in which Proskauer served as lead counsel for the Title III Debtors during this Compensation Period:

- Hermandad de Empleados del Fondo del Seguro del Estado, Inc. et al. v. Commonwealth of Puerto Rico et al., Adv. Proc. No. 18-00091:  This action was commenced against the Commonwealth, the FOMB, and the exclusive provider of work-related insurance coverage in Puerto Rico, the State Insurance Fund Corporation ("CFSE") (together the "Hermandad Defendants"), by two unions: (*i*) Hermanadad de Empleados del Fondo del Seguro del Estado, Inc. a/k/a Union de Empleados de la Corporacion del Fondo del Seguro del Estado ("UECFSE"), a union of CFSE employees, and (*ii*) Union de Medicos de la Corporacion del Fondo del Seguro del Estado Corp. ("UMCFSE"), a union of physicians who are responsible for providing medical services to injured workers. The plaintiffs, who participate in the Employee Retirement System and characterize themselves as creditors of the Commonwealth, sought relief to declare the June 29, 2018 Fiscal Plan ("June 2018 Fiscal Plan") unlawful and unable to form the basis of any plan of adjustment. The request was

13

primarily attributed to a $317.5 million cost reduction imposed by the June 2018 Fiscal Plan over a five-year period. The plaintiffs argued the reduction would impair the union members' collective bargaining agreement, which, they argued, was purportedly deemed an "essential service" under PROMESA section 201. The plaintiffs additionally argued that the June 2018 Fiscal Plan, among other things, violates the Contracts Clause of the United States Constitution and Article II, Section 17 of the Constitution of the Commonwealth of Puerto Rico.

On August 3, 2018, the Court entered an order adjourning the Hermandad Defendants' deadline to answer until after the pending motion to dismiss in *UTIER v. P.R. Elec. Power Auth., et al.*, Adv. Proc. No. 17-0229, is decided. That motion was decided on September 26, 2018. The Hermandad Defendants moved to dismiss the complaint on January 25, 2019. The plaintiffs filed their omnibus opposition on March 7, 2019.

- The Official Committee of Unsecured Creditors of the Debtors (other than COFINA) v. Commonwealth of Puerto Rico, et al., Adv. Proc. No. 18-00101: This action was commenced by the UCC against the Commonwealth, AAFAF, the GDB, and the FOMB. The UCC sought relief declaring the GDB Restructuring Act invalid, unenforceable, inconsistent with PROMESA, and preempted by PROMESA section 4. According to the UCC, the GDB Restructuring Act is invalid and unenforceable because (*i*) it is a *de facto* bankruptcy law; (*ii*) it is inconsistent with the third-party release prohibition of PROMESA section 601(m)(2); (*iii*) it is inconsistent with Bankruptcy Code sections 362 and 926; (*iv*) it is inconsistent with PROMESA section 601(n)(2); (*v*) its purpose is to ensure compliance with a fiscal plan that is not compliant with PROMESA; and (*vi*) it violates PROMESA section 305.

  On September 21, 2018, the FOMB filed a motion to dismiss the case, arguing, among other things, that the UCC lacked standing to seek the relief demanded in the complaint because it was not authorized to represent creditors of the GDB. The FOMB also argued that the UCC engaged in impermissible claim splitting, because it had also opposed the GDB restructuring in the Title III case for the Commonwealth and the GDB's Title VI case. On the same day, GDB and AAFAF also filed a motion to dismiss the case, contending the UCC lacked standing to assert any of the claims raised in the complaint.

  On November 10, 2018, the Court entered an order notifying the parties that, in light of the approval of the GDB's qualifying modification in its Title VI case, it intended to dismiss the UCC's adversary proceeding. On November 30, 2018, the Court entered an order dismissing the case.

- American Federation of Teachers, et al. v. Commonwealth of Puerto Rico, et al., Adv. Proc. No. 18-00134: Plaintiffs are two labor unions representing Puerto Rico government employees, who claim to be aggrieved because the Commonwealth has not implemented the transition to individual defined-contribution retirement accounts within the time frame purportedly contemplated by Puerto Rico Law 106-2017. Plaintiffs alleged the Commonwealth of Puerto Rico, the Retirement Board of the Government of Puerto Rico, AAFAF and their respective officers failed to implement the transition; the Oversight Board failed to compel them to do so; and Banco Popular

14

de Puerto Rico has been enriched because the relevant employee contributions have been kept in a Banco Popular account bearing little or no interest. On the basis of these allegations, Plaintiffs sought declaratory and injunctive relief for violation of Law 106 (against all Defendants except the Oversight Board and Banco Popular); declaratory and injunctive relief for breach of fiduciary duty or aiding and abetting breach of fiduciary duty (against all Defendants); declaratory and injunctive relief for unjust enrichment (against the Commonwealth and Banco Popular); an accounting (against the Commonwealth and Banco Popular). On January 8, 2019, the Oversight Board moved to dismiss the claims against it. The deadline for Plaintiffs to oppose that motion, and for all other Defendants to respond to the complaint, was April 16, 2019.

- <u>Financial Oversight and Management Board of Puerto Rico, et al. v. Puerto Rico Public Buildings Authority</u>, Adv. Proc. No. 18-0149:  On December 21, 2018, the Oversight Board filed an adversary complaint for declaratory relief and disallowance of administrative rent claims against the Puerto Rico Public Buildings Authority ("PBA"), an instrumentality of the Commonwealth created to issue bonds to finance the acquisition, construction, and improvement of government facilities. The Complaint seeks a declaratory judgment that the purported leases entered into by the PBA are not arm's length rental transactions, but rather disguised financing transactions, the sole purpose of which is to provide a vehicle for the Commonwealth to repay more than $4 billion in bonds it issued to finance the acquisition, construction and/or improvement of office space and other facilities used by various departments, agencies, and instrumentalities of the Commonwealth. Plaintiffs contend PBA has no right under PROMESA or the Bankruptcy Code to receive post-petition rent payments from, or assert administrative claims against, the Debtors. The Complaint seeks declarations that: (1) the purported leases are not subject to treatment in accordance with section 365(d)(3) of the Bankruptcy Code and thus the Debtors have no obligation to make payments to PBA under the purported leases; and (2) PBA is not entitled to a priority administrative expense claim pursuant to sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code.

23.     As part of Proskauer's involvement in the above matters, Proskauer (a) prepared and filed numerous pleadings and briefs in litigation matters; (b) participated in and prepared for hearings; (c) researched jurisprudence regarding legal and factual issues, including bankruptcy and U.S. Constitutional issues; and (d) performed a myriad of other professional services as described in this Application and reflected in **Schedule 3** and **Exhibit B**.

24.     By this Application, Proskauer seeks an allowance, pursuant to the Interim Compensation Order, of (a) **$956,646.38**, as (i) compensation for professional services rendered, $677,878.90 of which represents fees earned outside of Puerto Rico on or before December 9,

2018, $56,393.70 of which represents fees earned in Puerto Rico on or before December 9, 2018, and $158,205.90 represents fees earned on or after December 10, 2018,[7] and (ii) the Gross-Up Amount in the amount of **$21,006.87**;[8] and (b) **$43,161.01** as reimbursement for actual and necessary expenses incurred during the Compensation Period in connection with such professional services.  Notably, the Application reflects aggregate voluntary reductions made during the Compensation Period to Proskauer's request for compensation and reimbursement of expenses in the amount of $15,362.00 and $3,084.60, respectively, on top of the sizeable discount embedded in its engagement letter with the Oversight Board, in which it fixed hourly rates at levels providing up to 45% discounts on the hourly rates of its most senior partners.

25.      Proskauer maintains computerized records of the time spent by all Proskauer attorneys and paraprofessionals in connection with the firm's representation of the Oversight Board as representative of the Debtor.   Subject to redaction where necessary to preserve mediation confidentiality, copies of the computerized records for the Compensation Period are attached hereto as **Exhibit B**.

26.      Proskauer's budget and staffing plan for the Compensation Period is attached hereto as **Exhibit D**.[9]

27.      Proskauer's summary of itemized time records for professionals and paraprofessionals performing services for the Oversight Board with respect to the Debtor during

---

[7]   Until December 10, 2018, Proskauer prepared separate invoices each month for (*i*) work performed in Puerto Rico and (*ii*) work performed outside of Puerto Rico.  This was because Puerto Rico taxed Proskauer differently depending on whether work was performed on-island or off-island.  On December 10, 2018, Puerto Rico enacted tax reform (Act 257-2018) that eliminated this difference in tax treatment.  As a result, beginning on December 10, 2018, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

[8]   Proskauer will only request from the Debtor payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

[9]   Budgets are only provided for matters Proskauer actually billed time to in a given month. If no time was billed to a given matter during the month, no monthly budget has been provided for that matter.

the Compensation Period is set forth on **Schedule 2**.  During the Compensation Period, Proskauer

billed the Oversight Board for time expended by attorneys based on a set rate of $759 per hour,

which increased by four-percent (rounded down to $789) on January 1, 2019.[10]   The professional

services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor,

during the Compensation Period required an aggregate expenditure of 864.70 recorded hours by

Proskauer's partners and senior counsel; 272.80 recorded hours by associates; and 102.90

recorded hours by paraprofessionals.   As required by the Guidelines, **Exhibit C** to this

Application shows, for each Project Category (as defined below), a list of professionals who

performed services in each Project Category and the aggregate recorded hours each professional

incurred.   In accordance with Guidelines paragraph C.3, Proskauer's blended hourly rates are

disclosed in **Schedules 1** and **5**.  The fees charged by Proskauer, as set forth in **Schedule 2**, are in

accordance with the firm's existing billing rates and procedures in effect during the Compensation

Period, as revised to reflect Proskauer's arrangement with the Oversight Board.   The standard

rates Proskauer charges for the services rendered by its professionals and paraprofessionals in

these Title III cases have been reduced to reflect the unique circumstances of PROMESA and the

position of the Commonwealth of Puerto Rico, its instrumentalities, and its residents.  **Schedules**

**2** and **5** show the rates Proskauer charges on an hourly basis are below the competitive market

rates for bankruptcy and non-bankruptcy matters, charged by the other professionals representing

---

[10]   In the ordinary course of business, the standard hourly billing rates for Proskauer professionals and paraprofessionals
are adjusted annually as of the commencement of the firm's fiscal year on November 1 to reflect economic and other
conditions and apply to matters in and out of bankruptcy cases.   Pursuant to the Appendix B Guidelines, "rate
increases" "exclude annual 'step increases' historically awarded by the firm in the ordinary course to attorneys
throughout the firm due to advancing seniority and promotion." Appendix B Guidelines ¶ B.2.d, n.2.  Annual step
increases are awarded by Proskauer in the ordinary course throughout the firm on May 1.  Proskauer's November 25,
2016 engagement letter with the Oversight Board (a copy of which is available on the Oversight Board's website at
https://oversightboard.pr.gov/documents/) (the "Engagement Letter") provides that Proskauer's rates are increased on
January 1 (rather than on November 1) by the lower of the percentage rate increase announced as of November 1 and
four percent.  Because Proskauer's fees under the Engagement Letter are a blended rate (currently $789 for attorneys,
$390 for e-discovery attorneys, and $270 for all other professionals), no annual step increases will be applicable to
the rates charged in this matter.

the Commonwealth and statutory committees.  No Proskauer rates are increased as a result of the

geographic location of a bankruptcy case.

28.      All entries itemized in Proskauer's time records comply with the requirements set

forth in the Guidelines, including, without limitation, (a) the utilization of project categories (each

a "Project Category"), (b) a description of each activity or service that each individual performed,

and (c) the number of hours (in increments of one-tenth of an hour) spent by each individual

providing the services.  Each Project Category is organized in accordance with Guidelines

paragraph C.8.b.  If a Project Category does not appear in a particular application, Proskauer did

not bill time or expenses for that Project Category during the Compensation Period, but may bill

time for that Project Category in the future.

### Applicant Statement In Compliance with Appendix B Guidelines Paragraph C.5

29.      The following answers are provided in response to the questions set forth in

Guidelines paragraph C.5:

**Question**:  Did you agree to any variations from, or alternatives to, your standard or customary billing rates, fees or terms for services pertaining to this engagement that were provided during the application period?  If so, please explain.

Response:  Yes.  As explained in more detail in the Engagement Letter, in connection with its representation of the Oversight Board, both inside and outside of Title III, Proskauer agreed to a fee arrangement whereby (a) prior to January 1, 2019, partners, counsel, and associates were billed at $759 per hour, and all other staff were billed at $260 per hour, and (b) as of January 1, 2019, partners, counsel, and associates are billed at $789 per hour, e-discovery attorneys are billed at $390 per hour,[11] and all other staff are billed at $270 per hour.

**Question**:  If the fees sought in this fee application as compared to the fees budgeted for the time period covered by this fee application are higher by 10% or more, did you discuss the reasons for the variation with the client?

Response:  The total fees sought in this Application did not exceed total budgeted

---

[11] As discussed above, Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent as of January 1, 2019.  Additionally at that time, with the client's knowledge and permission, Proskauer created a new rate class, e-Discovery Attorney, with the rate of $390 per hour.

fees.

**Question**:    Have any of the professionals included in this fee application varied their hourly rate based on the geographic location of the bankruptcy case?

Response:    No.

**Question**:    Does the fee application include time or fees related to reviewing or revising time records or preparing, reviewing, or revising invoices? (This is limited to work involved in preparing and editing billing records that would not be compensable outside of bankruptcy and does not include reasonable fees for preparing a fee application.). If so, please quantify by hours and fees.

Response:    No, the Application does not include time or fees related to reviewing time records or preparing, reviewing or revising invoices in connection with the preparation of monthly fee statements.

**Question**:    Does this fee application include time or fees for reviewing time records to redact any privileged or other confidential information? If so, please quantify by hours and fees.

Response:    No time was spent redacting time records on account of privilege concerns. However, the Application does include time related to reviewing time records to redact time entries pursuant to Court-ordered mediation confidentiality.

**Question**:    If the fee application includes any rate increases since retention: (i) Did your client review and approve those rate increases in advance? (ii) Did your client agree when retaining the law firm to accept all future rate increases? If not, did you inform your client that they need not agree to modified rates or terms in order to have you continue the representation, consistent with ABA Formal Ethics Opinion 11-458?

Response:    Yes. The Engagement Letter provides that Proskauer's rates will be increased on January 1 (rather than on November 1, the beginning of Proskauer's fiscal year) by the lower of the percentage rate increase announced as of November 1 and four percent. As Proskauer's announced percentage rate increase exceeded four percent as of November 1, 2018, Proskauer's rates with respect to its representation of the Oversight Board were increased by four percent as of January 1, 2019.

**Puerto Rico Tax Law Changes**

30.    Prior to December 10, 2018, Puerto Rico taxed Proskauer's fees differently depending on whether Proskauer's timekeepers performed work while physically present in Puerto Rico or off-island. Specifically, a 7% withholding tax was assessed (at time of payment) on fees derived from work performed while the timekeeper was physically present in Puerto Rico,

19

but not on fees derived from work performed outside of Puerto Rico.  As a result, until December 10, 2018, Proskauer prepared separate invoices each month for (i) work performed in Puerto Rico and (ii) work performed outside of Puerto Rico.

31.     On December 10, 2018, Puerto Rico enacted Act 257-2018, amending the Puerto Rico tax code and eliminating the differences in tax treatment based on where work was performed.  Under Act 257-2018, all Proskauer fees incurred on or after December 10, 2018—regardless of the timekeepers' physical location—are assessed with a 10% withholding tax at the time of payment.  As a result, for all work from December 10, 2018 onwards, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

32.     Pursuant to Proskauer's fee arrangement with the Oversight Board, Proskauer requests approval now, as part of its fees and expenses, of the amount required to gross up the additional tax withholding (the "Gross-Up Amount") introduced by Act 257-2018 starting December 10, 2019 (the "Withholding"), in the amount of $**21,006.87**.  But, Proskauer will only request from the Debtors payment of the Gross-Up Amount if and when Proskauer partners receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax credits offsetting the Gross-Up Amount.  As of the date of hereof, Proskauer has not yet requested payment of the Gross-Up Amount.

**Hearings and Conferences**

33.     Proskauer attorneys attended hearings and participated in numerous meetings and teleconferences with the Oversight Board, the Oversight Board's other professional advisors, AAFAF and its professional advisors, the UCC and its professional advisors, the Official Committee of Retired Employees and its professional advisors, and the Debtors' creditors and their professional advisors.  Proskauer attorneys also participated in internal meetings and

conferences.  The Debtor's Title III Case poses complex, often interrelated issues that frequently require the attendance of more than one professional at hearings and conferences.  This facilitates the sharing of information among professionals handling different but related work streams and possessing different areas of expertise that is brought to bear on a multitude of issues.  Having more than one Proskauer attorney participate in hearings and conferences is often essential when one attorney is not handling every issue, and is beneficial to the Oversight Board when attendance by more than one attorney (telephonic and/or in-person) reduces the need for internal de-briefing meetings and therefore allows Proskauer to represent the Debtor in a more cost-efficient manner that avoids unnecessary duplication and expense.  Proskauer limits multiple participation to the most critical work streams for which attendance by more than one professional is actually necessary to provide efficient and appropriate representation for the Debtor.

34.     The Court and the Fee Examiner have identified certain presumptive standards applicable to the Fee Examiner's review of fee applications filed in the Title III cases.  Under these standards, fees and expenses incurred by timekeepers for attending hearings in which at least one professional anticipates a speaking role, other than fees and expenses related to (*i*) those with meaningful speaking roles and (*ii*) one additional timekeeper per speaker, are presumed non-compensable.  Likewise, for monitoring hearings (whether in person or by telephone) in which the professional has no meaningful speaking role, fees and expenses incurred by any more than one timekeeper per professional are presumed to be non-compensable.  During the Compensation Period (October 2018 through January 2019 for the Commonwealth, ERS, HTA, and PREPA; and October 2018 through February 12, 2019 for COFINA), Proskauer continued to strive to staff hearings and events efficiently and leanly, utilizing timekeepers with actual or potential speaking roles, necessary supporting timekeepers, and, in some instances, additional timekeepers for the

purposes of monitoring strategic issues.  During the relevant time period, Proskauer staffed the
following hearings as follows:

- **November 5, 2018 oral argument to First Circuit in *Assured* [Case No. 18-1165]
  appeal**.  Four timekeepers invoiced efforts in connection with attending this event: (1)
  Mark Harris presented the oral argument; (2) Tim Mungovan attended the oral
  argument to support Mr. Harris; (3) Martin Bienenstock—who was already present in
  court in connection with arguing the *Aurelius Capital Master, Ltd., et al. v.
  Commonwealth of Puerto Rico, et al.* [Case No. 18-1108] appeal earlier in the day—
  monitored the event in connection with assessing strategic issues for the upcoming
  related HTA appellate argument in *Ambac Assurance Corporation v Commonwealth of
  Puerto Rico, et al.* [Case No. 18-1214] ("Ambac"); and (4) Mike Firestein billed
  minimal efforts to telephonically monitor a portion of the hearing (0.40 hours) for
  purposes of assessing broader strategic and appellate issues.  Given the scope of the
  arguments presented and the significance of the issues, it is Proskauer's position that
  the variance from the presumptive standard—two additional monitoring timekeepers—
  is justified.  Mr. Bienenstock has overall responsibility for Proskauer's representation
  of the Oversight Board and is Proskauer's main or sole representative at most Oversight
  Board calls and meetings.  Therefore, he is required to have firsthand knowledge of
  most major developments.  Moreover, he was already present in the courthouse in
  connection with another oral argument, and monitored the Court's handling of issues
  overlapping with his role in the *Ambac* matter.  Mr. Firestein billed minimal efforts to
  telephonically monitor a portion of the hearing (0.40 hours) for purposes of assessing
  broader strategic issues.  Had the monitoring timekeepers not attended a portion of the
  hearing telephonically, each timekeeper would have incurred additional time reviewing
  the transcript of this proceeding.

- **November 7, 2018 omnibus hearing**.  Five timekeepers invoiced efforts in connection
  with attending or monitoring this event: (1) Martin Bienenstock attended the event to
  represent the Oversight Board on all relevant matters at the hearing; (2) Brian Rosen
  presented a portion of the status report from the Oversight Board, and presented the
  *Motion for Entry of an Order (a) Approving Limited Omnibus Objection Procedures,
  (b) Waiving the Requirement of Bankruptcy Rule 3007(e)(6), and (c) Granting Related
  Relief* [Case No. 17-3283, ECF No. 4052]; (3) Mike Firestein and (4) Maja Zerjal both
  provided strategic advice and counsel in support of Mr. Bienenstock and Mr. Rosen;
  and (5) Paul Possinger monitored a portion of the event telephonically.  Given the
  scope and significance of the issues presented, it is Proskauer's position that the
  variance from the presumptive standard—one additional monitoring timekeeper—is
  justified.  Mr. Possinger billed minimal efforts to telephonically monitor a portion of
  the hearing (0.80 hours) for purposes of assessing broader strategic issues.  Had the
  monitoring timekeeper not attended a portion of the hearing telephonically, the
  timekeeper would have incurred additional time reviewing the transcript of this
  proceeding.

- **November 20, 2018 hearing to determine the adequacy of information in the
  COFINA disclosure statement**.  Six Proskauer timekeepers invoiced reasonable and

necessary efforts in connection with attending the COFINA disclosure statement hearing in November 2018: (1) Brian Rosen presented arguments in support of the motion to approve the disclosure statement; (2) Martin Bienenstock attended the hearing to oversee it for the Oversight Board and to participate in discussions with counsel for the various parties and to address and resolve emerging issues; (3) Chris Theodoridis and (4) Steve Ma, who had both assisted in preparing the COFINA disclosure statement and solicitation procedures motion, attended the hearing to advise on emerging issues in connection with same in real time, and to manage, oversee, and organize the hearing materials; (5) Mike Firestein telephonically monitored a portion of the hearing so he could better carry out his responsibilities to support confirmation of the COFINA Plan of Adjustment; and (6) Lary Alan Rappaport also attended telephonically so he could better carry out his responsibilities to support confirmation of the COFINA Plan of Adjustment. Given the scope of the arguments presented and the significance of the issues under discussion in connection with the COFINA disclosure statement motion and ultimately the confirmation of the COFINA Plan of Adjustment in January 2019, it is Proskauer's position that any variance from the presumptive is justified.

- **December 19, 2018 omnibus hearing**. Six timekeepers invoiced efforts in connection with attending or telephonically monitoring this event: (1) Brian Rosen presented discussion on the pre-trial conference for the COFINA confirmation hearing; (2) Martin Bienenstock presented discussion on numerous motions and related orders; and (3) through (6), Mike Firestein, Chris Theodoridis, Jeff Levitan, and Elliot Stevens monitored events in connection with specific case and strategy issues across multiple matters. Given the scope and significance of the issues under discussion in connection with the December omnibus hearing, it is Proskauer's position that any variance from the presumptive standard is justified. Mr. Levitan (0.60 hours) and Mr. Stevens (0.70 hours) billed minimal efforts in connection with monitoring specific issues. Had the monitoring timekeepers not attended a portion of the hearing telephonically, the timekeeper would have incurred additional time reviewing the transcript of this proceeding.

- **January 7, 2019 oral argument to First Circuit in *Altair* [Case No. 18-1836] consolidated appeals**. Three timekeepers invoiced efforts in connection with attending this event: (1) Jeffrey Levitan presented oral argument; (2) Steve Weise provided strategic legal advice and counsel to Mr. Levitan during the hearing; and (3) William Dalsen provided real-time support to Mr. Levitan on factual issues. Given the scope of the arguments presented and the significance of the issues under discussion, it is Proskauer's position that the variance from the presumptive standard—one additional supporting timekeeper—is justified. Mr. Dalsen's supporting role was not duplicative of Mr. Weise's strategic advising role, and Mr. Dalsen had played a lead role in preparing the supporting materials relevant to the hearing.

- **January 15, 2019 oral argument to First Circuit in *Ambac* appeal**. Three timekeepers invoiced efforts in connection with attending this event: (1) Martin Bienenstock presented oral argument; (2) Tim Mungovan attended the oral argument to support Mr. Bienenstock; and (3) John Roberts monitored a portion of the hearing

telephonically in connection with his appellate roles across multiple matters. Mr. Roberts billed minimal time to telephonically monitor a portion of the hearing (1.10 hours) for purposes of assessing broader strategic and appellate issues. Had the monitoring timekeeper not attended a portion of the hearing telephonically, the timekeeper would have incurred additional time reviewing the transcript of this proceeding.

- **January 16 and January 17, 2019—COFINA Hearings**. Multiple Proskauer timekeepers invoiced efforts in connection with attending this two-day event, which required the handling of voluminous documents involved in the prosecution of the 9019 settlement motion and the confirmation of the COFINA Plan of Adjustment, as evidenced by the submissions on the Commonwealth's case docket [ECF Nos. 4777, 4781, 4792, 4803, 4756, and 4757]. In addition, numerous objections and responses were filed by various parties. *See Notice of Amended Agenda of Matters Scheduled for the Hearing on January 16-17, 2019* [Case No. 17-3284-LTS, ECF No. 513]. In order to manage the volume of documents and filings, it was necessary to delegate responsibility among various partners and associates, and required the preparation of the various documents by paraprofessionals. Multiple attendees were necessary in order to advise the speakers—in real time as issues arose—on the various matters in which they were involved. In addition, the partners and associates were involved in the real-time negotiations and discussions that occurred during the hearing to resolve outstanding and emerging issues. Specifically:
    - o Partner Brian Rosen presented arguments regarding the approval of the 9019 settlement motion and the confirmation of the COFINA Plan of Adjustment. Mr. Rosen also participated in real-time discussions and negotiations with various parties to resolve outstanding issues emerging from the hearings.
    - o Partner Martin Bienenstock attended the hearing to oversee it for the Oversight Board and to participate in discussions and negotiations with numerous parties to resolve outstanding issues.
    - o Partner Jeffrey Levitan participated in real-time discussions and negotiations with various parties to resolve outstanding issues, and directly supervised the preparation of the evidentiary material and COFINA's responses to various objections.
    - o Partner Michael Firestein provided real-time counsel on litigation and evidentiary issues in connection with the 9019 settlement and COFINA plan confirmation, and directly supervised the preparation of the evidentiary material and COFINA's responses to various objection.
    - o Partner Lary Alan Rappaport (day one only) provided real-time advice and counsel on litigation and evidentiary issues in connection with the 9019 settlement and COFINA plan confirmation, and directly supervised the preparation of the evidentiary material and COFINA's responses to various objections.
    - o Associate Chris Theodoridis provided real-time advice and counsel in connection with emerging bankruptcy issues, drafted notes for the subsequent amendment of the COFINA plan and related orders, and was directly involved in the preparation of the evidentiary and hearing materials. Mr. Theodoridis

24

also participated in real-time discussions with various parties to resolve issues
to the COFINA confirmation order.

o Associate Lucy Wolf provided real-time assistance with litigation and
evidentiary issues, oversaw the management and organization of the
voluminous evidentiary binders and hearing materials, and was directly
involved in the preparation of the evidentiary and hearing materials.

o Associate Steve Ma provided real-time counsel and assistance in bankruptcy
matters, drafted notes for the subsequent amendment of the COFINA plan and
related orders, was directly involved in the preparation of evidentiary and
hearing material, and participated in discussions with various parties to resolve
issues in connection with the COFINA confirmation order.

o Associate Zachary Chalett assisted with managing litigation and evidentiary
issues, oversaw the management and organization of the voluminous
evidentiary binders and hearing materials, and was directly involved in the
preparation of the evidentiary and hearing material.

o Associate Joshua A. Esses provided real-time assistance with bankruptcy issues,
drafted notes for the subsequent amendment of the COFINA plan and related
orders, and was directly involved in the preparation of the evidentiary and
hearing material.

o Legal Assistant Julia Sutherland provided real-time assistance in managing and
coordinating the organization, preparation, content, and delivery of voluminous
evidence binders and hearing materials.

o Legal Assistant Laura Geary provided real-time assistance in managing and
coordinating the organization, preparation, content, and delivery of voluminous
evidence binders and hearing materials.

- **January 30, 2019 omnibus hearing**.   Seven timekeepers invoiced efforts in
connection with attending or telephonically monitoring this event: (1) Maja Zerjal
attended to represent the Oversight Board and to respond to any status reports requested
by the Court; (2) Laura Stafford attended to represent the Oversight Board on any
matters relating to COFINA claims objections; (3) Margaret Dale attended to represent
the Oversight Board on any matters related to fee examiner issues and fee applications;
and (4) through (7), Jeff Levitan, Mike Firestein, Chris Theodoridis, and Elliot Stevens
monitored the event in connection with specific case and strategy issues across multiple
matters.  Given the scope and significance of the issues under discussion in connection
with the December omnibus hearing, it is Proskauer's position that any variance from
the presumptive standard is justified.  Mr. Stevens (0.30 hours) billed minimal efforts in
connection with monitoring specific issues.   Had the monitoring timekeepers not
attended a portion of the hearing telephonically, the timekeeper would have incurred
additional time reviewing the transcript of this proceeding.

35.     In summary, Proskauer remains committed to staffing hearings and events with a

minimal number of necessary timekeepers.  In each instance during the Compensation Period

25

where Proskauer's attendance activities exceeded the presumptive standards adopted by the Court, such variances were necessary and justified under the circumstances.

### Professionals Billing Fewer Than Five Hours per Month

36.     The following chart indicates, solely with respect to the Debtor's Title III Case, (a) professionals who billed fewer than five hours per month, (b) the months for which fewer than five hours were billed by the professional, and (c) an explanation of why the use of such professional was reasonable and necessary. As a general matter, because of the size and complexity of the Debtor's Title III Case, it was reasonable and necessary to consult with professionals with specific practice area expertise to assist Proskauer's core restructuring professionals in providing the Debtor with necessary and beneficial professional services. Moreover, it was often necessary to consult with professionals more familiar with other aspects of the restructuring of Puerto Rico and with specific adversary proceedings to deal with global strategic issues and ensure that positions taken by the Oversight Board are consistent across all the Title III cases.  Furthermore, occasionally the urgency of certain briefing schedules requires pulling in professionals from different work streams to assist on time-sensitive matters.[12]

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Barak, Ehud | November | Mr. Barak is a partner in Proskauer's BSGR&B group who advised on drafting a resolution agreement between the parties in the *Siemens* adversary proceeding. |
| Bienenstock, Martin J. | October | Mr. Bienenstock is a partner in Proskauer's BSGR&B group who advised on the appellate strategy in preparation for oral argument in the *Assured* appellate proceeding. |

---

[12] Many of the professionals listed below have billed substantially more time on other matters related to Proskauer's representation of the Oversight Board, including matters within and outside of PROMESA Title III.

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Bigliani, Kenneth | November | Mr. Bigliani is a managing clerk in Proskauer's litigation department who assisted with docket research and filing. |
| Chalett, Zachary | November | Mr. Chalett is an associate in Proskauer's litigation department who assisted with preparation for oral argument in the *Ambac* and *Assured* appellate proceedings. |
| Clark, Brandon C. | October | Mr. Clark is an associate in Proskauer's litigation department who assisted with discovery related issues in the *Siemens* adversary proceeding. |
| Desatnik, Daniel S. | October, November | Mr. Desatnik is an associate in Proskauer's BSGR&B group who assisted with analysis of automatic stay related issues in the *Assured* proceeding and with developing appellate strategy in the *Peaje* proceeding. |
| Ferrara, Ralph C. | October, November, January | Mr. Ferrara is a partner in Proskauer's litigation department who advised on compliance issues related to the Debtor's fiscal plan and on appellate issues in the *Assured* and *Ambac* appellate proceedings. |
| Geary, Laura M. | October, November | Ms. Geary is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Giarrusso, Paul V. | October | Mr. Giarrusso is an eDiscovery project manager at Proskauer who assisted with various document production issues. |
| Giddens, Magali | November | Ms. Giddens is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Harris, Mark D. | December | Mr. Harris is a partner in Proskauer's litigation department who advised on drafting opposition to petition for certiorari to the U.S. Supreme Court in the *Peaje* adversary proceeding. |
| Henderson, Laurie A. | October–December | Ms. Henderson is a docketing administrator in Proskauer's litigation department who assisted with docket research and filing. |
| Hoffman, Joan K. | December | Ms. Hoffman is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Infante, Elle M. | November | Ms. Infante is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Kim, Mee R. | November | Ms. Kim is an associate in Proskauer's litigation department who assisted with drafting Proskauer's interim fee applications. |
| Levitan, Jeffrey W. | November – January | Mr. Levitan is a partner in Proskauer's BSGR&B group who advised on appellate issues in preparation for oral argument in the *Ambac* adversary proceeding and on drafting opposition to petition for certiorari to the U.S. Supreme Court in the *Peaje* adversary proceeding. |
| Ma, Steve | November | Mr. Ma is an associate in Proskauer's BSGR&B group who assisted with reviewing and analyzing stay related pleadings in the Debtor's adversary proceedings. |
| Martinez, Carlos E. | November | Mr. Martinez is a partner in Proskauer's corporate department who advised on drafting a resolution agreement between the parties in the *Siemens* adversary proceeding. |
| Miller, Tiffany | October, January | Ms. Miller is a paralegal in Proskauer's labor & employment department who assisted with various case management related tasks. |
| Monforte, Angelo | October, December | Mr. Monforte is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Petrov, Natasha | December, January | Ms. Petrov is a paralegal in Proskauer's BSGR&B group who assisted with drafting Proskauer's interim fee applications. |
| Possinger, Paul V. | October, November | Mr. Possinger is a partner in Proskauer's BSGR&B group who communicated with the Board on the proposed fiscal plan issues, advised on the appellate strategy in preparation for oral argument in the *Assured* appellate proceeding and on litigation strategy in the *CD Builders* adversary matter. |
| Rappaport, Lary Alan | January | Mr. Rappaport is a partner in Proskauer's litigation department who advised on appellate issues in the *Ambac* adversary proceeding and on litigation strategy in the *Peaje* adversary proceeding. |

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Roberts, John E.[13] | October | Mr. Roberts is a senior counsel in Proskauer's litigation department who assisted with analysis of appellate issues in the *Assured* and *Peaje* appellate proceedings. |
| Roche, Jennifer L.[14] | December | Ms. Roche is a senior counsel in Proskauer's litigation department who assisted with analysis of appellate issues in the *Ambac* appellate proceeding. |
| Rosen, Brian S. | October, November | Mr. Rosen is a partner in Proskauer's BSGR&B group who advised on drafting reply brief and sur-reply in support of motion to dismiss amended complaint in the *Western Surety* adversary proceeding. |
| Silvestro, Lawrence T. | November | Mr. Silvestro is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Skellet, Alexandra K. | November, December | Ms. Skellet is an associate in Proskauer's litigation department who assisted with preparation for and participated in the approval hearing on the qualifying modification in the *Siemens* adversary proceeding and assisted with drafting opposition to petition for certiorari to the U.S. Supreme Court in the *Peaje* appellate proceeding. |
| Stafford, Laura | November, January | Ms. Stafford is an associate in Proskauer's litigation department who assisted with preparation for oral argument in the *Ambac* appellate proceeding. |
| Tarrant, Christopher M. | October | Mr. Tarrant is a paralegal in Proskauer's BSGR&B group who assisted with various case management related tasks. |
| Theodoridis, Chris | October, November | Mr. Theodoridis is an associate in Proskauer's BSGR&B group who assisted with analysis of appellate issues in the *Peaje* appellate proceeding and with research on motion to enforce stay in the *CD Builders* adversary matter. |
| Triggs, Matthew | October | Mr. Triggs is a partner in Proskauer's litigation department who advised on securities related issues in the *Peaje* appellate proceeding. |

---

[13] Appointed as Senior Counsel effective November 1, 2018

[14] Appointed as Senior Counsel effective November 1, 2018

| Professional | Month(s) in which less than 5 hours were billed | Explanation of Why Services Were Reasonable and Necessary |
|---|---|---|
| Volpicello, Alexander J. | November | Mr. Volpicello is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Wizner, Eamon | November, January | Mr. Wizner is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Wolf, Joseph P. | October-January | Mr. Wolf is a paralegal in Proskauer's litigation department who assisted with various case management related tasks. |
| Wolf, Lucy | October | Ms. Wolf is an associate in Proskauer's litigation department who assisted with analysis of pleadings in the *Assured* appellate proceeding. |
| Zerjal, Maja | November, January | Ms. Zerjal is an associate in Proskauer's BSGR&B group who assisted with drafting the reply brief in support of the Debtor's motion to enforce stay in the *CD Builders* adversary matter. |

### Summary Description of Professional Services

37.    The following is a brief narrative summary, listed by Project Category, of the professional services rendered by Proskauer during the Compensation Period.[15]  Only Project Categories for which Proskauer billed more than 10 hours during the Compensation Period are summarized below.

---

[15]  Until December 10, 2018, Proskauer prepared separate invoices each month for (*i*) work performed in Puerto Rico and (*ii*) work performed outside of Puerto Rico.  This was because Puerto Rico taxed Proskauer differently depending on whether work was performed on-island or off-island.  On December 10, 2018, Puerto Rico enacted tax reform (Act 257-2018) that eliminated this difference in tax treatment.  As a result, beginning on December 10, 2018, Proskauer's bills and invoices stopped differentiating between work performed in Puerto Rico and work performed outside of Puerto Rico.

I.   **Matter No. 33260/009 (PROMESA Title III: HTA) and No. 33260/026 (PROMESA Title III: HTA Puerto Rico)**

38.   These matter numbers cover time spent relating to the core HTA Title III case, including, for example, time spent regarding mediation, fiscal plan issues, and working on disclosure statements or plans of adjustment.

(a)   Employment and Fee Applications (Project Category 218)
(Fees: $14,301.70; Hours: 38.90)
(Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
(Aggregate Fees: $14,301.70; Aggregate Hours: 38.90)

39.   This Project Category includes time spent on issues related to the compensation of Proskauer, and the retention and compensation of other Oversight Board professionals, including the preparation of monthly fee statements and interim fee applications.  Specifically, Proskauer attorneys and paraprofessionals spent time communicating with the Fee Examiner on compensation related issues and drafting Proskauer's fourth and fifth interim fee applications.

II.   **Matter No. 33260/049 (HTA Title III – Ambac) and No. 33260/949 (HTA Title III – Ambac Puerto Rico)**

40.   These matter numbers cover time spent working on the *Ambac Assurance v. Commonwealth* adversary proceeding, Case No. 17-AP-159, and any appeals related thereto.

(a)   General Administration (Project Category 212)
(Fees: $2,920.00; Hours: 11.20)
(Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
(Aggregate Fees: $2,920.00; Aggregate Hours: 11.20)

41.   This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

(b)   Appeal (Project Category 219)
(Fees: $247,940.30; Hours: 329.00)
(Fees for work performed in Puerto Rico: $6,375.60; Hours: 8.40)
(Aggregate Fees: $254,315.90; Aggregate Hours: 337.40)

42.     This Project Category includes time spent on preparing appeals and participating in

appellate proceedings, to the extent not expressly covered by another Project Category.

Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting legal research on issues presented by the appeal, analyzing lower court and appellate pleadings, developing oral argument strategy, and preparing for oral argument before the First Circuit Court of Appeals;
- Researching and analyzing procedural matters and drafting motion to adjourn oral argument;
- Presenting oral argument before the First Circuit Court of Appeals;
- Conferring with the Oversight Board and its other advisors on the oral argument and subsequent case strategy; and
- Reviewing orders and notices by the First Circuit Court of Appeals related to the appeal and drafting reports to the Oversight Board.

## III.   Matter No. 33260/050 (HTA Title III – Assured) and No. 33260/950 (HTA Title III – Assured Puerto Rico)

43.     These matter numbers cover time spent working on the *Assured Guaranty v.*
*Commonwealth* adversary proceedings, Case Nos 17-AP-155 and 17-AP-156, and any appeals

related thereto.

(a)   General Administration (Project Category 212)
(Fees: $2,860.00; Hours: 11.00)
(Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
(Aggregate Fees: $2,860.00; Aggregate Hours: 11.00)

38.     This Project Category includes time spent on general administration of the

Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to

the filing of documents in court, including affidavits of service and service mailings; and (c)

internal filing and organization of case documents to ensure easy, fast and free accessibility by the

Proskauer team, the Debtor, and other parties in interest.

32

   (b)  <u>Appeal (Project Category 219)</u>
(Fees: $<u>203,620.00</u>; Hours: <u>268.80</u>)
(Fees for work performed in Puerto Rico: $<u>19,506.30</u>; Hours: <u>25.70</u>)
(Aggregate Fees: $<u>223,126.30</u>; Aggregate Hours: <u>294.50</u>)

39.      This Project Category includes time spent on preparing appeals and participating in appellate proceedings, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conducting legal research on issues presented by the appeal, analyzing lower court and appellate pleadings, developing oral argument strategy, and preparing for oral argument before the First Circuit Court of Appeals;

- Presenting oral argument before the First Circuit Court of Appeals;

- Conferring with the Oversight Board and its other advisors on the oral argument and subsequent case strategy;

- Conducting additional research and drafting Rule 28(j) letter to Court regarding supplemental authorities in support of the Debtor's position and opposition to Assured's Rule 28(j) letter; and

- Reviewing orders and notices by the First Circuit Court related to the appeal and drafting reports to the Oversight Board.

## IV.    <u>Matter No. 33260/051 (HTA Title III – Peaje) and No. 33260/951 (HTA Title III – Peaje Puerto Rico)</u>

40.      These matter numbers cover time spent working on the *Peaje Inv., LLC v. Commonwealth* adversary proceedings, Case Nos. 17-AP-151 and 17-AP-152, and any appeals related thereto.

   (a)  <u>General Administration (Project Category 212)</u>
(Fees: $<u>2,656.00</u>; Hours: <u>10.20</u>)
(Fees for work performed in Puerto Rico: $<u>0.00</u>; Hours: <u>0.00</u>)
(Aggregate Fees: $<u>2,656.00</u>; Aggregate Hours: <u>10.20</u>)

41.      This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c)

internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

    (b)   <u>Appeal (Project Category 219)</u>
          (Fees: $<u>231,186.70</u>; Hours: <u>309.60</u>)
          (Fees for work performed in Puerto Rico: $<u>151.80</u>; Hours: <u>0.20</u>)
          (Aggregate Fees: $<u>231,338.50</u>; Aggregate Hours: <u>309.80</u>)

    42.     This Project Category includes time spent on preparing appeals and participating in appellate proceedings, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing *Peaje* petition for certiorari to the U.S. Supreme Court, conferring with the Board and its other advisers, identifying and analyzing issues, standards of review, analyzing lower courts' pleadings, conducting legal research, and developing strategy for responding to the petition;

- Communicating with opposing counsel on procedural and scheduling matters, researching and analyzing procedural matters, and drafting a motion for extension of deadlines;

- Drafting opposition to certiorari petition; and

- Analyzing petitioners' reply in support of the certiorari petition.

## V.   <u>Matter No. 33260/053 (HTA Title III – Miscellaneous) and No. 33260/953 (HTA Title III – Miscellaneous Puerto Rico)</u>

    43.     These matter numbers cover time spent working on miscellaneous motions and adversary proceedings, including, for example, motions for relief from the Title III stay, and any appeals related thereto.

    (a)   <u>Hearings and Other Non-Filed Communications with the Court (Project Category 203)</u>
          (Fees:  $<u>3,946.80</u>; Hours:  <u>5.20</u>)
          (Fees for work performed in Puerto Rico:  $<u>3,719.10</u>; Hours:  <u>4.90</u>)
          (Aggregate Fees: $<u>7,665.90</u>; Aggregate Hours:  <u>10.10</u>)

    44.     This Project Category includes time spent communicating with the Court and reviewing the Court's communications and procedures.  Specifically, Proskauer attorneys spent time preparing for and participating in the hearing on plaintiff's objection to qualifying

modification in the *Siemens Transportation Partnership Puerto Rico v. HTA* adversary proceeding, Case No. 18-AP-030.

    (b)   <u>Communications with Claimholders (Project Category 204)</u>
        (Fees: $<u>3,339.60</u>; Hours: <u>4.40</u>)
        (Fees for work performed in Puerto Rico: $<u>5,009.40</u>; Hours: <u>6.60</u>)
        (Aggregate Fees: $<u>8,349.00</u>; Aggregate Hours: <u>11.00</u>)

45.   This category includes time spent communicating with the Debtor's various claimholders. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Communicating with counsel for Siemens, GDB, and AAFAF and participating in meet-and confer conferences on a variety of procedural and scheduling matters in the *Siemens* adversary proceeding;

- Preparing for and participating in meet-and-confer conferences regarding the motion to dismiss in the *Western Surety Co. v. HTA* adversary proceeding, Case No. 18-AP-065; and

- Communicating with opposing counsel and participating in meet-and confer conferences regarding discovery issues in the *Siemens* adversary proceeding.

    (c)   <u>Documents Filed on Behalf of the Board (Project Category 206)</u>
        (Fees: $<u>19,217.00</u>; Hours: <u>29.70</u>)
        (Fees for work performed in Puerto Rico: $<u>0.00</u>; Hours: <u>0.00</u>)
        (Aggregate Fees: $<u>19,217.00</u>; Aggregate Hours: <u>29.70</u>)

46.   This Project Category includes time spent drafting various pleadings filed on behalf of the Debtor, to the extent not expressly covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Conferring with opposing counsel and drafting pleadings related to the extension of deadlines and other procedural and scheduling issues; and

- Conducting research and analysis and drafting reply in support of the motion to dismiss the *Western Surety* adversary proceeding.

    (d)   <u>Non-Board Court Filings (Project Category 207)</u>
        (Fees: $<u>12,068.10</u>; Hours: <u>15.90</u>)
        (Fees for work performed in Puerto Rico: $<u>0.00</u>; Hours: <u>0.00</u>)
        (Aggregate Fees: $<u>12,068.10</u>; Aggregate Hours: <u>15.90</u>)

47.   This Project Category includes time spent reviewing and commenting on Court orders and filings made by other parties in the Debtor's Title III case, to the extent not expressly

covered by another Project Category. Specifically, Proskauer attorneys and paraprofessionals spent time:

- Reviewing and analyzing the adversary complaints in the *Western Surety* adversary proceeding;
- Reviewing and analyzing the plaintiff's opposition to the Debtor's motion to dismiss the *Siemens* adversary proceeding;
- Reviewing and analyzing discovery requests and responses in the *Siemens* adversary proceeding; and
- Reviewing and analyzing court orders.

(e) <u>Stay Matters (Project Category 208)</u>
(Fees: $9,942.90; Hours: 13.10)
(Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
(Aggregate Fees: $9,942.90; Aggregate Hours: 13.10)

48.    This Project Category includes time spent analyzing and researching stay issues in the Debtor's Title III case and drafting various pleadings related to stay issues. Specifically, Proskauer attorneys and paraprofessionals spent time conferring with the Board's other advisors, analyzing issues, conducting legal research, and drafting amended motion to enforce automatic stay in the pre-petition action *CD Builders, Inc. v. HTA*, SJ2017CV00340, and related briefing in support.

(f) <u>Analysis and Strategy (Project Category 210)</u>
(Fees: $49,259.10; Hours: 64.90)
(Fees for work performed in Puerto Rico: $11,233.20; Hours: 14.80)
(Aggregate Fees: $60,492.30; Aggregate Hours: 79.70)

49.    This Project Category includes time spent related to (a) legal analysis in, and strategic approach to, the Debtor's Title III Case and varied issues relating thereto, including meetings to discuss strategic case considerations, the status of various work streams, and next steps, and (b) all Proskauer internal meetings, except those specifically dealing with an issue covered by another Project Category.

(g) <u>General Administration (Project Category 212)</u>
(Fees: $4,368.00; Hours: 16.80)

36

(Fees for work performed in Puerto Rico: $0.00; Hours: 0.00)
(Aggregate Fees: $4,368.00; Aggregate Hours: 16.80)

50.     This Project Category includes time spent on general administration of the Debtor's Title III Case, including (a) case status and coordination activities; (b) tasks relating to the filing of documents in court, including affidavits of service and service mailings; and (c) internal filing and organization of case documents to ensure easy, fast and free accessibility by the Proskauer team, the Debtor, and other parties in interest.

* * * *

51.     The foregoing professional services performed by Proskauer on behalf of the Oversight Board as representative of the Debtor during the Compensation Period were reasonable, necessary, appropriate, and beneficial when rendered, facilitated the effective administration of the Debtor's Title III Case, and were in the best interests of the Oversight Board and the Debtor's creditors, residents, and other stakeholders.  Compensation for the foregoing services as requested is commensurate with the complexity, importance, and time-sensitive nature of the problems, issues, and tasks involved.  The professional services were performed with expedition and in an efficient manner.

52.     In accordance with the factors enumerated in the Bankruptcy Code, the amount of fees requested is fair and reasonable given: (a) the complexity of the Debtor's Title III Case; (b) the time expended; (c) the nature and extent of the services rendered; (d) the value of such services; (e) Proskauer's established expertise in the bankruptcy field; and (f) the costs of comparable services other than in a case under the Bankruptcy Code.

37

**Actual and Necessary Expenses of Proskauer**

53.     Pursuant to the Guidelines, **Schedule 4** is Proskauer's summary of actual and necessary expenses incurred on behalf of the Oversight Board as representative of the Debtor during the Compensation Period.

54.     In accordance with paragraph C.13 of the Appendix B Guidelines, and as more fully itemized in **Schedule 4**, Proskauer seeks reimbursement for its necessary and reasonable expenses, including: (a) reproduction, (b) online research, (c) delivery services and couriers, (d) local travel to and from airports, (e) out-of-town travel and lodging, (f) out-of-town meals, (g) court fees, (h) transcription services, (i) litigation support, and (j) professional services.  All expense entries detailed in **Exhibit B** comply with the requirements set forth in the Guidelines, including an itemization of the expenses by category, the date the expense was incurred, and the individual incurring the expense, where available.   The reasons for the expenses are self-explanatory.  In compliance with Appendix B Guidelines paragraph C.13, the requested expenses are of the kind customarily charged to Proskauer's non-bankruptcy clients and by other comparable professionals.

55.     Proskauer generally charges from $0.10 (black and white) to $0.30 (color) per page for photocopying expenses. The rates charged by the firm for Westlaw and Lexis computerized research vary according to the type of research conducted and the specific files researched, but, in any event, Proskauer does not profit from the use of computer assisted legal research, as set forth in **Schedule 4**.  As per the Appendix B Guidelines, Proskauer has not requested reimbursement of expenses related to overhead charges, such as secretarial services and proofreading.  The expenditures Proskauer is seeking reimbursement for and which are detailed on **Schedule 4** are all of the type customarily billed to clients.

56.     During the Compensation Period, Proskauer has disbursed **$43,161.01** as necessary and reasonable expenses.  These charges cover Proskauer's direct operating costs, which costs are not incorporated into the firm's hourly billing rates (because to do so would impose that cost upon clients who do not require extensive photocopying and other facilities and services).  Only clients who actually benefit from services of the kind set forth in **Exhibit B** are separately charged for such services.  Proskauer has made every effort to minimize its expenses in the Debtor's Title III Case.   The actual expenses incurred in providing professional services were necessary, reasonable, and justified under the circumstances to effectively serve the needs of the Debtor in its Title III case.

## **Compensation Paid and Its Source**

57.     All services for which Proskauer seeks compensation, and expenses for which it seeks reimbursement, were performed on behalf of the Oversight Board as representative of the Debtor.  In connection with the matters covered by this Application, Proskauer received no payment and no promises of payment for services rendered, or to be rendered, from any source other than the Debtor.  There is no agreement or understanding between Proskauer and any other person, other than members of the firm, for the sharing of compensation received for services rendered in this Title III case.

58.     PROMESA sections 316 and 317 provide for interim compensation of professionals and govern the Court's award of such compensation.  PROMESA section 316 provides that a court may award a professional person employed by the Debtor or the Oversight Board under PROMESA "(1) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and (2) reimbursement for actual, necessary expenses."  PROMESA § 316(a).  Section 316 also sets forth the criteria for the award of such compensation and reimbursement:

39

> In determining the amount of reasonable compensation to be awarded … the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
>
> (1) the time spent on such services;
>
> (2) the rates charged for such services;
>
> (3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;
>
> (4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this subchapter or title 11.

PROMESA § 316(c).

59.    As noted above, the professional services and expenditures for which Proskauer seeks compensation and reimbursement in this Application were necessary and beneficial to the Oversight Board as representative of the Debtor, and included, among other things, anticipating or responding to the Oversight Board's needs and assisting in the Oversight Board's navigation of the Debtor's very complex Title III case.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Oversight Board.  The Oversight Board has reviewed and approved this Application.

## **Reservations**

60.    To the extent time or disbursement charges for services rendered or expenses incurred relate to the Compensation Period but were not processed prior to the preparation of this Application, or Proskauer has for any other reason not yet sought compensation or reimbursement

of expenses herein with respect to any services rendered or expenses incurred during the
Compensation Period, Proskauer reserves the right to request compensation for such services and
reimbursement of such expenses in a future application.

### Notice

61.     Pursuant to the Interim Compensation Order, notice of this Application has been
filed in the Debtor's Title III Case and the jointly-administered Commonwealth of Puerto Rico's
Title III case and served upon:

(a) the Financial Oversight and Management Board, 40 Washington Square
South, Office 314A, New York, NY 10012, Attn: Professor Arthur J.
Gonzalez, Oversight Board Member;

(b) attorneys for the Financial Oversight and Management Board as
representative of The Commonwealth of Puerto Rico, O'Neill &
Borges LLC, 250 Muñoz Rivera Ave., Suite 800, San Juan, PR 00918-
1813, Attn: Hermann D. Bauer, Esq. (hermann.bauer@oneillborges.
com);

(c) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory
Authority, O'Melveny & Myers LLP, Times Square Tower, 7 Times
Square, New York, NY 10036, Attn: John J. Rapisardi, Esq.
(jrapisardi@omm.com), Suzzanne Uhland, Esq. (suhland@omm.com),
and Diana M. Perez, Esq. (dperez@omm.com);

(d) attorneys for the Puerto Rico Fiscal Agency and Financial Advisory
Authority, Marini Pietrantoni Muniz LLC, MCS Plaza, Suite 500, 255
Ponce de León Ave., San Juan P.R. 00917, Attn.: Luis C. Marini-
Biaggi, Esq. (lmarini@mpmlawpr.com) and Carolina Velaz-Rivero Esq.
(cvelaz@mpmlawpr.com);

(e) the Office of the United States Trustee for the District of Puerto Rico,
Edificio Ochoa, 500 Tanca Street, Suite 301, San Juan, PR 00901 (re:
*In re: Commonwealth of Puerto Rico*);

(f) attorneys for the Official Committee of Unsecured Creditors, Paul
Hastings LLP, 200 Park Ave., New York, NY 10166, Attn: Luc A.
Despins, Esq. (lucdespins@paulhastings.com);

(g) attorneys for the Official Committee of Unsecured Creditors, Casillas,
Santiago & Torres LLC, El Caribe Office Building, 53 Palmeras Street,
Ste. 1601, San Juan, PR 00901, Attn: Juan J. Casillas Ayala, Esq.

(jcasillas@cstlawpr.com) and Alberto J.E. Añeses Negrón, Esq. (aaneses@cstlawpr.com);

(h) attorneys for the Official Committee of Retired Employees, Jenner & Block LLP, 919 Third Ave., New York, NY 10022, Attn: Robert Gordon, Esq. (rgordon@jenner.com) and Richard Levin, Esq. (rlevin@jenner.com); and Jenner & Block LLP, 353 N. Clark Street, Chicago, IL 60654, Attn: Catherine Steege, Esq. (csteege@jenner.com) and Melissa Root, Esq. (mroot@jenner.com);

(i) attorneys for the Official Committee of Retired Employees, Bennazar, García & Milián, C.S.P., Edificio Union Plaza, PH-A, 416 Ave. Ponce de León, Hato Rey, PR 00918, Attn: A.J. Bennazar-Zequeira, Esq. (ajb@bennazar.org);

(j) the Puerto Rico Department of Treasury, PO Box 9024140, San Juan, PR 00902-4140, Attn: Reylam Guerra Goderich, Deputy Assistant of Central Accounting (Reylam.Guerra@hacienda.pr.gov); Omar E. Rodríguez Pérez, CPA, Assistant Secretary of Central Accounting (Rodriguez.Omar@hacienda.pr.gov); Angel L. Pantoja Rodríguez, Deputy Assistant Secretary of Internal Revenue and Tax Policy (angel.pantoja@hacienda.pr.gov); Francisco Parés Alicea, Assistant Secretary of Internal Revenue and Tax Policy (francisco.pares @hacienda.pr.gov); and Francisco Peña Montañez, CPA, Assistant Secretary of the Treasury (Francisco.Pena@hacienda. pr.gov);

(k) attorneys for the Fee Examiner, EDGE Legal Strategies, PSC, 252 Ponce de León Avenue, Citibank Tower, 12th Floor, San Juan, PR 00918, Attn: Eyck O. Lugo (elugo@edgelegalpr.com); and

(l) attorneys for the Fee Examiner, Godfrey & Kahn, S.C., One East Main Street, Suite 500, Madison, WI 53703, Attn: Katherine Stadler (KStadler@gklaw.com).

Proskauer submits that, in light of the foregoing, no other or further notice need be provided.

WHEREFORE Proskauer respectfully requests that the Court issue an order (a) allowing interim compensation for professional services rendered during the Compensation Period in the total amount of **$956,646.38**, which is comprised of (i) fees for professional services rendered in the amount of $892,478.50, $677,878.90 of which represents fees earned outside of Puerto Rico on or before December 9, 2018, $56,393.70 of which represents fees earned in Puerto Rico on or before December 9, 2018, and $158,205.90 represents fees earned on or after December 10, 2018,

and (ii) the Gross-Up Amount in the amount of **$21,006.87**;[16] and reimbursement for actual and
necessary expenses Proskauer incurred in connection with such services during the Compensation
Period in the amount of **$43,161.01**; (b) authorizing and directing the Debtor to pay promptly to
Proskauer the difference between (i) the amount of interim compensation for professional services
rendered and reimbursement of expenses incurred during the Compensation Period allowed
hereunder, and (ii) the amounts for such compensation and expenses previously paid to Proskauer,
consistent with the provisions of the Interim Compensation Order; (c) allowing such
compensation for professional services rendered and reimbursement of actual and necessary
expenses incurred without prejudice to Proskauer's right to seek additional compensation for
services performed and expenses incurred during the Compensation Period, which were not
processed at the time of this Application; and (d) granting Proskauer such other and further relief
as is just and proper.

*[Remainder of Page Intentionally Left Blank]*

---

[16] Proskauer will only request from the Debtor payment of the Gross-Up Amount if and when Proskauer partners
receive a determination or objection from the Internal Revenue Service that the Withholding does not result in tax
credits offsetting the Gross-Up Amount. As of the date of hereof, Proskauer has not yet requested payment of the
Gross-Up Amount.

Dated: May 21, 2019
    San Juan, Puerto Rico

Respectfully submitted,

*/s/ Martin J. Bienenstock*

Martin J. Bienenstock (*pro hac vice*)
Paul V. Possinger (*pro hac vice*)
Ehud Barak (*pro hac vice*)
Maja Zerjal (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
      ppossinger@proskauer.com
      ebarak@proskauer.com
      mzerjal@proskauer.com

-and-

*/s/ Hermann D. Bauer*
Hermann D. Bauer
USDC No. 215205

*/s/ Ubaldo M.  Fernández*
Ubaldo M. Fernández
USDC No. 224807
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel: (787) 764-8181
Fax: (787) 753-8944

*Attorneys for the Financial Oversight and Management Board as Representative of the Debtor*

44