UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------------------------ x
                                                    :
In re:                                              :
                                                    :
THE FINANCIAL OVERSIGHT AND                         :   PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                   :   Title III
                                                    :
        as representative of                        :   Case No. 17-BK-3283 (LTS)
                                                    :
THE COMMONWEALTH OF PUERTO RICO et al.,             :   (Jointly Administered)
                                                    :
        Debtors.¹                                   :
------------------------------------------------------------------------ x
```

**OMNIBUS OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS, PURSUANT TO BANKRUPTCY CODE SECTION 502 AND BANKRUPTCY RULE 3007, TO CLAIMS FILED OR ASSERTED BY HOLDERS OF CERTAIN 2011 <u>COMMONWEALTH GENERAL OBLIGATION BONDS</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

To the Honorable United States District Court Judge Laura Taylor Swain:

The Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee") hereby files this objection (the "2011 GO Claim Objection") pursuant to section 502 of title 11 of the United States Code (the "Bankruptcy Code"), made applicable to these Title III cases by section 301(a) of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"),[2] and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), made applicable to these Title III cases by section 310 of PROMESA, requesting entry of an order, substantially in the form attached hereto as **Exhibit A**, disallowing all claims based on certain Commonwealth of Puerto Rico general obligation ("GO") bonds issued in 2011 (as described more fully below, the "2011 GO Bonds")[3] or, alternatively, disallowing such claims to the extent they include unamortized original issue discount ("OID").[4] In support of this 2011 GO Claim Objection, the Committee respectfully states as follows:

**PRELIMINARY STATEMENT**

1. On January 14, 2019, the Committee and the Financial Oversight and Management Board for Puerto Rico, acting through its Special Claims Committee (the "FOMB," and, together with the Committee, the "Objectors"), filed their *Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain Commonwealth*

---

[2] PROMESA has been codified at 48 U.S.C. §§ 2101-2241.

[3] Through its review of public documents (including the Debtor's claims register), the Committee has identified numerous proofs of claim filed by holders or insurers of 2011 GO Bonds. All such claims exceeding $5 million, which are among the claims to which the Committee hereby objects, are listed on Appendix I hereto.

[4] OID is the discount from par value at the time a bond or other debt instrument is issued. *See* Barron's Dictionary of Finance and Investment Terms (10th Ed. 2018) (defining "original issue discount").

*General Obligation Bonds* [Case No. 17-03283-LTS; Docket No. 4784] (the "Omnibus GO Claim Objection"), **whereby the Objectors sought the disallowance of all claims based on the more than $6 billion of outstanding GO bonds issued by the Commonwealth in 2012 and 2014**. As set forth in the Omnibus GO Claim Objection, these bonds are invalid because they were issued in violation of Puerto Rico's constitutional Debt Service Limit and constitutional Balanced Budget Clause (each as defined in the Omnibus GO Claim Objection).

2. **Since the filing of the Omnibus GO Claim Objection, the relief sought therein has garnered the support of important parties in interest, including Ambac Assurance Corporation, one of the most active monoline insurers in these Title III cases, which holds and/or insures $56 million of pre-2012 Commonwealth GO bonds, as well as bonds issued by Commonwealth instrumentalities totaling $1.08 billion, and an *ad hoc* coalition of institutions holding or managing more than $1 billion of Commonwealth-guaranteed debt and pre-2012 Commonwealth GO bonds**.[5]

3. In the Omnibus GO Claim Objection, the Objectors each reserved the right to challenge other GO bonds of the Commonwealth. *Id*. at ¶ 5. The Committee is filing this 2011 GO Claim Objection because the 2011 GO Bonds, approximately $1 billion of which remain outstanding, were also issued in violation of the constitutional Debt Service Limit and, except for certain of those bonds, the constitutional Balanced Budget Clause.[6] To the extent possible, and

---

[5] *Ambac Assurance Corporation's Statement of Position in Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* [Case No. 17-03282-LTS; Docket No. 6171]. The *ad hoc* coalition of institutional investors, known as the Lawful Constitutional Debt Coalition, supports the disallowance of all claims based on the Commonwealth's 2012 and 2014 GO bonds under an alternative theory regarding the proper calculation of the constitutional Debt Service Limit. *Statement of Position of the Lawful Constitutional Debt Coalition Regarding Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds* [Case No. 17-03282-LTS; Docket No. 6180]; *First Supplemental Verified Statement of the Lawful Constitutional Debt Coalition Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Case No. 17-03282-LTS; Docket No. 5807].

[6] On May 2, 2019, the Committee and the FOMB jointly commenced adversary proceedings to recover payments of interest and principal on all GO bonds issued in or after March 2011 (including the 2011 bonds to which this

2

to avoid repetition, this 2011 GO Claim Objection incorporates by reference paragraphs from the Omnibus GO Claim Objection, which, as incorporated, are hereby amended as necessary to refer to the Committee rather than the Objectors and to include the 2011 GO Bonds among the Invalid GO Bonds (as defined in the Omnibus GO Claim Objection).

4. Contemporaneous with the filing of the Omnibus GO Claim Objection, the Objectors filed an *Urgent Motion of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Under Bankruptcy Code Section 105(a) and 502 and Bankruptcy Rule 3007, Establishing Procedures with Respect to Omnibus Objection to Claims Filed or Asserted by Holders of Certain Commonwealth General Obligation Bonds and Requesting Related Relief* [Case No. 17-03283-LTS; Docket No. 4788] (the "Procedures Motion"). On February 15, 2019, the Court granted the Procedures Motion with certain modifications, establishing procedures for notifying potential holders and insurers of Invalid GO Bonds of the Omnibus GO Claim Objection (the "Notice Procedures") and a process for establishing procedures for the litigation of the Omnibus GO Claim Objection (the "Litigation Procedures") [Case No. 17-03283-LTS; Docket No. 5143]. The Committee respectfully proposes that the deadline to file a substantive response to this 2011 GO Claim Objection be suspended pending the Court's consideration of a forthcoming motion to provide notice of the objection to potential holders and insurers of 2011 GO Bonds in accordance

---

objection is addressed) on the primary grounds that all such bonds were issued in violation of the Debt Service Limit [Case No. 17-03283-LTS; Docket Nos. 6803-6810]. The Committee reserves its right to raise additional objections to the validity of other GO bonds, including on the basis that such bonds were issued in violation of the Debt Service Limit, whether because certain other debt was not properly included in the Debt Service Limit calculation or otherwise. In addition, the Committee reserves its right to object to the 2011 GO Bonds on grounds other than those set forth in this 2011 GO Claim Objection. Finally, the Committee reserves its right to seek disallowance of any claims asserted against the Commonwealth relating to PBA Bonds (as defined in the Omnibus GO Claim Objection), whether arising directly or from the Commonwealth's guaranties, including as to any payments under PBA Lease Agreements (as defined in the Omnibus GO Claim Objection) and/or on account of PBA Bonds.

3

with the Notice Procedures and to integrate the objection into the Litigation Procedures without delaying the Omnibus GO Claim Objection process.

## BACKGROUND

5.  Paragraphs 12-21 and 39-55 of the Omnibus GO Claim Objection are incorporated by reference.

### A. 2011 GO Bond Issuances

6.  The 2011 GO Bonds were issued as follows:

    i. 2011 C GO Bonds

7.  On March 17, 2011, the Commonwealth issued $442,015,000 in aggregate principal amount of Public Improvement Refunding Bonds, Series 2011 C (General Obligation Bonds) (the "2011 C GO Bonds"). Official Statement, dated March 10, 2011, for Series 2011 C GO Bonds (the "2011 C Official Statement"), at cover pages & 1, Exhibit 1.[7]

8.  The stated purposes of the 2011 C GO Bonds were:

    (i) to repay advances made to the Commonwealth under a line of credit from the Government Development Bank for Puerto Rico ("GDB") and used by the Commonwealth to make deposits to the Commonwealth Redemption Fund[8] for the payment of interest due during fiscal year 2011 on certain GO bonds and notes;

    (ii) to pay interest on the 2011 C GO Bonds themselves; and

    (iii) to pay the cost of issuing the 2011 C GO Bonds.

---

[7] All citations to exhibits (Exhibit __) in this 2011 GO Claim Objection are exhibits to the *Declaration of James R. Bliss In Support of Omnibus Objection of Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted by Holders of Certain 2011 Commonwealth General Obligation Bonds.*

[8] Pursuant to Act 39-1976 of the Puerto Rico Legislative Assembly, as amended, and as affected by Act 5-2017, Article 203, prior to fiscal year 2015, the Commonwealth was required to make monthly transfers to a fund, referred to herein as the "Commonwealth Redemption Fund," to provide for the payment of debt service on all of the Commonwealth's GO bonds and notes. Each monthly transfer was required to be in an amount sufficient to cause the moneys in the Commonwealth Redemption Fund to equal the sum of (i) one-sixth of the interest to be paid during the next six months and (ii) one-twelfth of the principal to be paid or required to be amortized during the next twelve months, in each case on all of the Commonwealth's GO bonds and notes.

4

*Id.* at 12.

9. The 2011 C Bonds were issued with a net OID[9] of $12,849,202.45, leaving $429.2 million in net proceeds, $16.7 million of which was used to pay costs of issuance and interest on the 2011 C Bonds themselves. *Id.*

  ii. 2011 Public Improvement GO Bonds

10. On July 12, 2011, the Commonwealth issued $304,000,000 in aggregate principal amount of Public Improvement Bonds of 2011 (General Obligation Bonds) (the "2011 Public Improvement GO Bonds"). Official Statement, dated June 29, 2011, for 2011 Public Improvement GO Bonds, Series 2011 D GO Bonds (as defined below), and Series 2011 E GO Bonds (as defined below) (the "2011, 2011 D, and 2011 E Official Statement"), at cover pages & 1, Exhibit 2.

11. The stated purposes of the 2011 Public Improvement GO Bonds were:

(i) to deposit $267,337,500 of net proceeds in a public improvements fund for use in carrying out certain capital improvement programs of the Commonwealth; and

(ii) to apply $162,971.69 to the refunding of bond anticipation notes issued to finance, on an interim basis, portions of those capital improvements programs.

*Id.* at 13-14.

  iii. 2011 D GO Bonds And 2011 E GO Bonds

12. On July 12, 2011, the Commonwealth issued $52,190,000 in aggregate principal amount of Public Improvement Refunding Bonds, Series 2011 D (General Obligation Bonds) (the "2011 D GO Bonds") and $245,915,000 in aggregate principal amount of Public

---

[9] The sources and uses of bond proceeds reflect "net" OID if some CUSIPs were issued at a discount while other CUSIPs in the series were issued at a premium.

5

Improvement Refunding Bonds, Series 2011 E (General Obligation Bonds) (the "<u>2011 E GO Bonds</u>"). *Id.* at cover pages & 1.

13. The stated purposes of the 2011 D GO Bonds and the 2011 E GO Bonds were:

(i) to refund certain other GO bonds of the Commonwealth (the "<u>2011 D/E Refunded Bonds</u>");

(ii) to fund termination payments under certain interest rate swap agreements and a debt service deposit agreement relating to the 2011 D/E Refunded Bonds (the "<u>Termination Payments</u>");

(iii) to pay interest on the 2011 D GO Bonds and the 2011 E GO Bonds themselves; and

(iv) to pay the cost of issuing the 2011 D GO Bonds and the 2011 E GO Bonds.

*Id*. at 13.

14. The 2011 D GO Bonds and the 2011 E GO Bonds, together with the 2011 Public Improvement GO Bonds, were issued with a net OID of $8,774,359.30, leaving $593.3 million in net proceeds of all three series, $65.9 million of which was used to pay the Termination Payments, as well as costs of issuance of, and interest on, the 2011 D GO Bonds and the 2011 E GO Bonds themselves. *Id.* at 14.

### B. <u>Use Of 2011 GO Bonds To Finance Deficit Spending</u>

15. For many years leading up to the Petition Date, the Commonwealth was running a structural deficit, *i.e.,* recurring revenues were insufficient to cover recurring expenses. *See, e.g.,* 2011, 2011 D, and 2011 E Official Statement, at I-2 & I-3, Exhibit 2.

16. Rather than balance the budget by raising taxes and/or reducing spending, the Commonwealth borrowed money from GDB and bondholders to fund annual operating expenses and debt service.

17. As disclosed by the Commonwealth, "[t]hese [budget] deficits, including the payment of a portion of the Commonwealth's debt service obligations, have been covered

6

principally with the net proceeds of bonds issued by COFINA **and Commonwealth general obligation bonds**, with interim financings provided by GDB . . . ." Official Statement, dated March 11, 2014, for Series 2014 A GO Bonds, at I-8, Exhibit 3 (emphasis added).

18. The 2011 GO Bonds were used to finance deficit spending as follows:

(i) $412.5 million in net proceeds of the 2011 C GO Bonds were used to refinance GDB lines of credit that were used to finance deficit spending by paying interest on Commonwealth GO bonds. *See* 2011 C Official Statement, at 12, Exhibit 1; and

(ii) $260 million in net proceeds of the 2011 D GO Bonds and the 2011 E GO Bonds were used to refund the 2011 D/E Refunded Bonds, including Commonwealth GO bonds that indirectly financed deficit spending by refunding Commonwealth GO bonds the proceeds of which were used to pay debt service on other Commonwealth GO bonds and by paying a portion of $88 million in advances under a GDB line of credit.[10]

C. **2011 GO Bondholder Proofs Of Claim**

19. Numerous holders and insurers of 2011 GO Bonds have filed proofs of claim against the Commonwealth. Upon information and belief, many (if not all) of these proofs of claim include claims for unamortized OID.

20. As of the Petition Date, approximately $20 million of OID on 2011 GO Bonds had not yet been amortized.

---

[10] *See* 2011, 2011 D, and 2011 E Official Statement, at 13 & 14, Exhibit 2. The 2011 D/E Refunded Bonds consisted principally of the Commonwealth Public Improvement Refunding Bonds, Series 2011 B (General Obligation Bonds) (the "2011 B GO Bonds"). *Id.* Proceeds of the 2011 B GO Bonds were used to refund, among others, Commonwealth Public Improvement Refunding Bonds, Series 2007 A (of two subseries) (General Obligation Bonds) (the "2007 A GO Bonds") and Commonwealth Public Improvement Refunding Bonds, Series 2008 B (General Obligation Bonds) (the "2008 B GO Bonds"). 2011 C Official Statement, at 12, Exhibit 1. Proceeds of the 2007 A GO Bonds were used to refund $207.4 million aggregate principal amount of Commonwealth Public Improvement Refunding Bonds, Series 2006 B Bonds (General Obligation Bonds) (the "2006 B GO Bonds"). Official Statement, dated October 3, 2007, for Series 2007 A GO Bonds (the "2007 A Official Statement"), at 7 & 8, Exhibit 4. Proceeds of 2006 B GO Bonds were used to pay a portion of debt service on Commonwealth GO bonds for fiscal year 2006 with borrowed funds. Official Statement, dated August 2, 2006, for Series 2006 B GO Bonds (the "2006 B Official Statement"), at 10, Exhibit 5. Proceeds of the 2008 B GO Bonds were used to pay a portion of $87,697,139.43 in advances under a line of credit from GDB. Official Statement Supplement, dated May 7, 2008, for 2008 B GO Bonds, at 1, Exhibit 6.

7

## JURISDICTION AND STATUTORY PREDICATE

21. The Court has jurisdiction over this 2011 GO Claim Objection pursuant to section 306(a) of PROMESA. Venue is proper in this district pursuant to section 307(a) of PROMESA.

22. The statutory predicate for the relief sought herein is section 502 of the Bankruptcy Code, as incorporated by section 301(a) of PROMESA, and Bankruptcy Rule 3007, as incorporated by section 310 of PROMESA.

23. The Committee is a "party in interest" pursuant to section 1109(b) of the Bankruptcy Code, as incorporated by section 301(a) of PROMESA. *See In re Fin. Oversight & Mgmt. Bd.,* 297 F. Supp. 3d 261, 264 (D.P.R. 2017) ("Pursuant to 11 U.S.C. § 1109(b), a provision of the Bankruptcy Code that was expressly incorporated by PROMESA, '[a] party in interest, including . . . a creditors' committee . . . may raise and may appear and be heard on any issue in a case under this chapter.'").

## RELIEF REQUESTED

24. The Committee respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, disallowing all claims based on 2011 GO Bonds or, alternatively, disallowing such claims to the extent they include unamortized OID.

## BASIS FOR RELIEF

25. All claims based on 2011 GO Bonds should be disallowed because the bonds were issued in violation of the Debt Service Limit and the Balanced Budget Clause and, therefore, the bonds are null and void and the holders of such bonds have no remedy against the Commonwealth.

26. Alternatively, to the extent that OID on 2011 GO Bonds remained unamortized as of the Petition Date, the portion of any claims constituting such OID must be disallowed for the reasons set forth in paragraphs 129-131 of the Omnibus GO Claim Objection, which are

8

incorporated by reference. The Committee will establish at trial that, as of the Petition Date, approximately $20 million of OID on 2011 GO Bonds remained unamortized.

27. For the reasons set forth in paragraphs 61 and 65-86 of the Omnibus GO Claim Objection, which are incorporated by reference, debt service on the PBA Bonds (as defined in the Omnibus GO Claim Objection) should have been included in the calculation of the Debt Service Limit. There can be no dispute that, if debt service on the PBA Bonds is included in the calculation, the Debt Service Limit was exceeded with the issuance of the Series 2011 C GO Bonds on March 17, 2011.

28. The Commonwealth's average internal revenues for the prior two fiscal years (2009 and 2010) was $7.3205 billion. With the issuance of the 2011 C GO Bonds, the maximum debt service in any fiscal year (including PBA Bond debt service) was $1.1092 billion in 2012 (inclusive of $10.5 million of Commonwealth guaranteed debt payments made in fiscal year 2010), which is more than 15% (15.2% to be precise) of the Commonwealth's average internal revenues for the prior two fiscal years. 2011 C Official Statement at 21-22, Exhibit 1; Official Statement, dated October 16, 2009, for Puerto Rico Public Buildings Authority Government Facilities Revenue Refunding Bonds, Series Q, at 25, Exhibit 7. The Commonwealth proceeded to issue another $6.8 billion in GO bonds over the next three years, all of which also violated the Debt Service Limit.

29. Except for the 2011 Public Improvement GO Bonds, the 2011 GO Bonds were also issued in violation of the Balanced Budget Clause for the reasons set forth in paragraphs 91-98 of the Omnibus GO Claim Objection, which are incorporated by reference.

30. Furthermore, for the reasons set forth in paragraphs 99-128 of the Omnibus GO Claim Objection, which are incorporated by reference, holders of 2011 GO Bonds have no

9

equitable remedy against the Commonwealth and no remedy under Article 8 of the Uniform Commercial Code (adopted in Puerto Rico as Article 8 of the Commercial Transactions Act).

## **NOTICE**

31. Notice of this 2011 GO Claim Objection has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United States Attorney for the District of Puerto Rico; (iii) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (iv) the Official Committee of Retirees; (v) the insurers of the bonds issued or guaranteed by the Debtors; (vi) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; (vii) holders of Commonwealth bonds who are parties to any group that has filed a statement under Bankruptcy Rule 2019; (viii) the holders and insurers of Commonwealth bonds identified on Appendix I hereto;[11] (ix) Cede & Co., as depository for Commonwealth bonds; and (x) all parties that have filed a notice of appearance in the above-captioned Title III cases.

[*Remainder of page intentionally left blank.*]

---

[11] According to the claims registry maintained by Prime Clerk, more than 4,000 proofs of claim have been filed asserting bond-based claims against the Commonwealth. Many of these claims are based on bonds other than 2011 GO Bonds. However, given the sheer volume of claims, it would be cost-prohibitive to review and analyze more than 4,000 proofs of claim to determine which ones, in fact, assert claims based on holdings of 2011 GO Bonds. The Committee, therefore, limited its review to proofs of claim alleging more than $5 million of bond debt related to 2011 GO Bonds.

WHEREFORE, the Committee respectfully requests that the Court enter an order, substantially in the form attached hereto as **Exhibit A**, granting the relief requested herein and granting such other and further relief as the Court deems just and proper.

Dated: May 21, 2019

*/s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc A. Despins, Esq. *(Pro Hac Vice)*
James R. Bliss, Esq. *(Pro Hac Vice)*
James B. Worthington, Esq. *(Pro Hac Vice)*
G. Alexander Bongartz, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Telephone: (212)318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
jamesworthington@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA)*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Aneses Negron, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787)523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to Official Committee of Unsecured Creditors for all Title III Debtors (other than COFINA)*

11