# EXHIBIT G

5/21/2019  Asociados De Empleados Gerenciales De La Corporacion Del Fondo Del Seguro Del Estado v. Corporacion Del Fondo del Seguro Del …

Case:17-03283-LTS Doc#:7075-7 Filed:05/22/19 Entered:05/22/19 20:06:40 Desc: Exhibit   Page 2 of 12

# WESTLAW

**SELECTED** TOPICS

Federal Courts

Court of Appeals Reviews De Novo Issue of Sovereign Immunity

**Secondary Sources**

**§ 3914.10. Finality-Orders Prior to Trial-Immunity Appeals**

15A Fed. Prac. & Proc. Juris. § 3914.10 (2d ed.)

... Appeals from pretrial orders refusing to terminate proceedings on the basis of a claimed immunity have generated significant complexities and confusions. These complexities and confusions surround a ...

**APPENDIX III-JUDICIAL OPINIONS**

FDA Enforcement Man. Appendix III

...Do not. 74-215 Supreme Court of the United States 421 US 658; 95 S. Ct. 1903 2d 489 Argued March 18-19, 1975 June 9, 1975 Mr. Chief Justice Burger delivered the opinion of the Court. We granted certiorar ...

**APPENDIX C: COURT DECISIONS**

Domestic Partner Benefits: Employers Guide, 7th Ed. Appendix C

... John Langan and the decedent entered into a civil union in Vermont; Subsequently, Langan's partner died due to Credits in a crash. Langan brought an action for wrongful death under New Y ...

See More Secondary Sources

**Briefs**

**Brief of Appellees and Appellee-Cross Appellants**

1994 WL 16125243
TAMIAMI PARTNERS, LTD. by and through its general partner, Tamiami Development Corporation, Plaintiff / Appellant / Cross Appelee, v. MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Business Council of Miccosukee Tribe of Indians of Florida, Miccosukee Tribal Gaming Agency, and Miccosukee Tribal Court, Defendants / Appellees, Billy Cypress, Jasper Nelson, Jimmie Bert, Max Billie, Henry Bert, Andy Buster, Minnie Bert, Defendants / Appellees / Cross Appellants.
United States Court of Appeals, Eleventh Circuit.
June 13, 1994

... A.District Court Jurisdiction - Subject matter jurisdiction is allegedly based upon 28 USC §1331. The District Court lacks subject matter jurisdiction in this case because of the amended complaint inv ...

**Brief of Appellees and Appellee-Cross Appellants**

1994 WL 16019983
TAMIAMI PARTNERS, LTD. by and through its general partner, Tamiami Development Corporation, Plaintiff / Appellant / Cross Appelee, v. MICCOSUKEE TRIBE OF INDIANS OF FLORIDA, Business Council of Miccosukee Tribe of Indians of Florida, Miccosukee Tribal Gaming Agency, and Miccosukee Tribal Court, Defendants / Appellees, Billy CYPRESS, Jasper Nelson, Jimmie Bert, Max Billie, Henry Bert, Andy Buster, Minnie Bert, Defendants / Appellees / Cross Appellants.
United States Court of Appeals, Eleventh

2015 WL 4075649 (TCA)

ASSOCIATION OF MANAGEMENT EMPLOYEES OF THE

Association of Management Employees of the State Insurance Fund Corporation v. State Insurance Fund Corporation
APPEALS COURT  |  May 29, 2015  |  2015 WL 4075649   (Approx. 11 pages)

CORPORATION OF THE STATE INSURANCE FUND; Liza Estrada Figueroa; Administrator of the State Insurance Fund Corporation; Commonwealth of Puerto Rico; Hon. Alejandro García Padilla, Governor of Puerto Rico, Appellants.

APPEALS COURT
Case No .: SJ2014CV00204 (907)
KLAN201500471
In San Juan, Puerto Rico on May 29, 2015.
May 29, 2015.

*Appeal* from the Court of First Instance, San Juan Chamber
About: Application for *Mandamus, Injunction* and Declaratory Sentence

Panel composed of its president, Judge García García, Judge Hernández Sánchez and Judge Soroeta Kodesh

**JUDGMENT**

SOROETA KODESH, JUDGE PONENTE

*\*1* The Association of Management Employees of the State Insurance Fund Corporation (hereinafter, the Association or the appellant) appears, through an appeal filed on April 1, 2015. It asks us to revoke a *Judgment* issued on April 29 , 2015. of January 2015 and notified on February 2, 2015, in which the Court of First Instance (hereinafter, CFI), San Juan Court, dismissed the *Claim* filed by the appellant and decreed the constitutionality of Articles 11 and 17 of Law No. 66 of 2014, known as the Special Fiscal and Operational Sustainability Law of the Commonwealth Government (hereinafter, Act No. 66). On February 12, 2015, the appellant requested reconsideration, which was declared *No Place* in a *Resolution* issued on March 2, 2015.

For the reasons stated below, the *Judgment* appealed is confirmed .

I.

On October 24, 2014, the appellant filed a *complaint* about *mandamus, injunction* and declaratory judgment against the State Insurance Fund Corporation (hereinafter, the CFSE). In said *Demand,* the Association questioned the constitutionality of Articles 11 and 17 of Act No. 66, *supra.* The appellant argued that the implementation of Act No. 66, *supra,* establishes an unreasonable, suspicious and discriminatory classification that places the unmanaged managerial employee and / or career supervisor in a situation of inferiority vis-à-vis unionized employees. Consequently, he requested the issuance of an *injunction* carpreliminary to cease the unconstitutional application of Articles 11 and 17 of Act No. 66, *supra.* [one]

The Association also asked the ICC to issue a writ of *mandamus* so that the CFSE would comply with the ministerial duty to deliver the following public documents: savings goal established by the CFSE; report of trust places and amounts; proposed plan for compliance with Articles 8-11, and 17-18; report of occupied and vacant management positions, as listed in Article 11, section (i), of Act No. 66; and other documents related and necessary for compliance with the provisions and savings goals set forth in Act No. 66, *supra.* Finally, the appellant petitioned the trial court to issue a declaratory judgment determining the

1

5/21/2019 Asociación De Empleados Gerenciales De La Corporación Del Fondo Del Seguro Del Estado v. Corporación Del Fondo Del Seguro Del …

Case:17-03283-LTS Doc#:7075-7 Filed:05/22/19 Entered:05/22/19 20:06:40 Desc: Exhibit - Page 3 of 12

unconstitutionality of Articles 11 and 17, *supra,* and the imposition of the payment of costs and attorney's fees to the CFSE.

Subsequently, the State requested the dismissal of the *Claim* and declaratory judgment in its favor, recognizing the constitutionality of Act No. 66, *supra.* He argued that such legislation does not violate the constitutional clauses that prohibit the impairment of contractual obligations and guarantee equal protection of the laws because it is a reasonable and necessary socioeconomic measure to address the fiscal crisis of the Government of Puerto Rico. In addition, he questioned the origin of the *injunction* because the appellant had other remedies available in law, since the Public Service Appeals Commission (hereinafter, the CASP) is the body with exclusive primary jurisdiction to deal with claims under Act No. 66, *supra.*

**\*2** The CFSE joined the request for dismissal of the *Claim* and adopted the arguments put forward by the State regarding the constitutionality of Act No. 66, *supra,* and the dismissal of the *injunction.* Likewise, he requested the dismissal of the *mandamus* request , since there is no ministerial duty to deliver the information required by the appellant. For its part, the appellant expressed its opposition to the motions of dismissal filed by the State and the CFSE.

Thus, on January 29, 2015, the CFI issued the appealed *Judgment* in which it dismissed the *lawsuit* . The forum appealed held the constitutionality of Articles 11 and 17 of Act No. 66, *supra,* because they do not establish a suspicious and discriminatory classification against career management employees of the CFSE that violates the equal protection of the laws. Likewise, it concluded that they did not violate the constitutional prohibition against the approval of laws that undermine contractual obligations due to the urgent interest pursued by Act No. 66, *supra.*

The trial court ruled that Act No. 66, *supra,* deals equally with the career management employees and the unionized employees of the CFSE, since neither of the two (2) groups is excluded from the application of the measures of saving. It ruled that the fact that only unionized employees covered by collective agreements submit to the alternative participatory process does not imply that the measure is arbitrary or capricious. This conclusion is based on the fact that the ultimate purpose and purpose of the negotiation is precisely to guarantee that the agreements of the collective agreements comply with the savings contemplated in Act No. 66, *supra.*

Likewise, the forum of instance concluded that there is a pressing interest of the State that justifies its interference in the contractual relationship between the CFSE and the appellant, as well as the substantial impairment in its conditions of employment. The CFI, furthermore, stated that the measures of Act No. 66, *supra,* are the least onerous and the State has categorically rejected other more drastic measures, such as the dismissal and dismissal of public career employees.

On the other hand, the appellate court declared itself without jurisdiction on the matter to deal with the petitions for preliminary *mandamus* and *injunction* filed by the appellant. According to the forum appealed, the exclusive primary jurisdiction to deal with disputes over the request for information and the cessation of the application of Articles 11 and 17 of Act No. 66, *supra,* belong to the CASP.

In accordance with its conclusions of law, the CFI declared *overrule* motions to dismiss filed by the CFSE and the state, issued a declaratory judgment which recognized the constitutionality of Articles 11 and 17 of Act. 66, *supra,* pleaded no subject matter jurisdiction to address the application for *mandamus* and dismissed the *demand* as an epigraph.

**\*3** On February 12, 2015, the appellant filed a *Reconsideration Motion* in which it included facts that it alleged should be reconsidered. On February 27, 2015, the State filed a *Motion in Compliance with Order and in Opposition to Reconsideration Document.* On the other hand, and on that same date, the CFSE also expressed its opposition through a written document entitled *Opposition to a Motion for Reconsideration.* On March 2, 2015, the CFI issued a *Resolution* in which the request for reconsideration was declared " *There Is No Place"* .

In disagreement with the aforementioned result, on April 1, 2015, the appellant filed the appeal of section and argued that the CFI committed the following errors:

> The Honorable Court of First Instance erred by not including in its Judgment a
> determination of the essential and pertinent facts not contested by the party appealed,

Circuit.
June 13, 1994

... Oral argument has been set for the week of July 11, 1994 in Miami, Florida. For the record, the Appellees and Appellees-Cross Appellants respectfully suggest that this scheduled argument would be of va ...

**Brief of Appellee, Seminole Tribe of Florida**

1992 WL 12136312
SEMINOLE TRIBE OF FLORIDA, Plaintiff-Appellee, v. State of Florida, Lawton Chiles, Governor of the State of Florida, Defendants-Appellants. Poarch Creek Indians, Poarch Band of Creek Indians, Plaintiffs-Appellants, v. State of Alabama, Guy Hunt, Governor of the State of Alabama, Defendants-Appellees.
United States Court of Appeals, Eleventh Circuit.
Dec. 14, 1992

... Oral argument has been set in this case for January 7, 1993, consolidated with Case No. 92-6244, Poarch Creek Indians v. State of Alabama. Both cases present important Eleventh Amendment issues and ora ...

See More Briefs

**Trial Court Documents**

**GFI Wisconsin, Inc. v. Reedsburg Utility Com'n**

2010 WL 6972822
GFI WISCONSIN, INC., F / k / a Grede Foundries, Inc., Appellant, v. REEDSBURG UTILITY COMMISSION and Wisconsin Electric Power Company, Appellees.
United States Bankruptcy Court, WD Wisconsin.
Nov. 10, 2010

... Appellant GFI Wisconsin, Inc., formerly known as Grede Foundries, Inc., appeals an order of the bankruptcy court allowing appellees Reedsburg Utility Commission and Wisconsin Electric Power Company to ...

**In re Continental Common, Inc.**

2011 WL 4576707
In Re: CONTINENTAL COMMON, INC., Debtor; Entergy New Orleans, Inc., Appellant, v. Continental Common, Inc., Appellee.
United States Bankruptcy Court, ND Texas.
Feb. 14, 2011

... Chapter 11 Before the Court is an appeal by Entergy New Orleans, Inc. from an Order Providing Adequate Assurance of Payment of Utilities Required Under 11 USC §366, issued November 29, 2010 by the U ...

**In re Urban Brands, Inc.**

2010 WL 6982208
In re: URBAN BRANDS, INC., Et al., Debtors.
United States Bankruptcy Court, D. Delaware.
Sep. 21, 2010

... FN1. The Debtors in these cases, along with the last four digits of the federal tax identification number for each of the Debtors, are Urban Brands, Inc. (3678), 100% Girls Ltd. (4150), 100% Girls of G .. .

See More Trial Court Documents

omission that leads to errors in the conclusions of law of the Judgment.

The Honorable Court of First Instance erred in ruling that Articles 11 and 17 of Law 66-2014 are constitutional because they do not violate the principles of equal protection of the laws and the prohibition to the detriment of contractual obligations.

The Honorable Court of First Instance erred in ruling that it lacks jurisdiction to meet *Mandamus's* request requiring the CFSE Administrator to access and deliver the public documents and the cease and desist order to apply Articles 11 and 17 of the Law 66-2014 to the appellant party.

Subsequently, on May 1, 2015, the CFSE and the State presented their respective arguments separately in opposition to the appeal.

With the benefit of the appearance of the parties, we proceed to explain the applicable law.

## II.

## TO.

Rule 59.1 of Civil Procedure, 32 LPRA Ap. VR 59.1, authorizes the ICC to declare rights, states and other legal relationships even if another remedy is urged or can be urged. The declaration may be in form and effect, affirmative or negative, and it will have the effectiveness and vigor of the final judgments or resolutions. The request for a declaratory judgment results in a judicial decision on any divergence in the interpretation of the law. The declaratory judgment has the purpose of dissipating the legal uncertainty, in those cases in which there is a substantial controversy between parties with adverse legal interests. The legal persons authorized to request a declaratory judgment are those whose rights, status or other legal relationships are affected by a statute.*Mun. Fajardo v. Srio. Justicia et al.,* 187 DPR 245, 254 (2012) .

## B.

On the other hand, Rule 10.2 of Civil Procedure 2009, 32 LPRA Ap. V R. 10.2, establishes that any defense of facts or of rights against a claim will be exposed in the responsive allegation. However, this same Rule allows the party against whom the complaint has been filed to present a motion for dismissal, alleging any of the following defenses: (1) lack of jurisdiction over the matter; (2) lack of jurisdiction over the person; (3) site insufficiency; (4) insufficiency of the completion of the site; (5) stop exposing a claim that justifies the granting of a remedy; and (6) stop accumulating an indispensable part. *Trans-Oceanic Life Ins. v. Oracle Corp.,* 184 DPR 689, 701 (2012) .

*4* This Rule also provides that before a motion for dismissal, the court must take as true all the facts properly alleged in the complaint and interpret the assertions in the most favorable manner for the plaintiff and make all the inferences that may assist him in his claim . *Ortiz Matías et al. v. Mora Development,* 187 DPR 649, 654 (2013) ; *Asoc. Photojournalists v. Rivera Schatz,* 180 DPR 920, 935 (2011) ; *Candal Vicente v. CT Radiology Office, Inc.,* 112 DPR 227, 231 (1981) . In these cases, the claim will only be dismissed if it is shown that the plaintiff has no right to remedy under any facts that may be proved at trial.*Ortiz Matías et al. v. Mora Development,* supra; *Pressure Vessels PR v. Empire Gas PR,* 137 DPR 497, 505 (1994) .

However, this doctrine applies only to facts that are well alleged and expressed in a clear and conclusive manner, which give no room for doubt. *Pressure Vessels PR v. Empire Gas PR,* supra. Only all the facts correctly argued will be given as true without considering the conclusions of law or the written arguments, in such a way that their content is hypothetical and make it impossible for the judge to detect without margin of error the facts definitively and correctly alleged. Assoc. *Beer Importers v. ELA,* 171 DPR 140, 149 (2007) .

On the other hand, it is a firmly established norm that ordinarily appellate courts should not intervene in the exercise of the discretion of the forums of instance, unless it is demonstrated that there was a gross abuse of discretion, prejudice, manifest error or bias. *Trans-Oceanic Life Ins. v. Oracle Corp.,* supra; *Lluch v. Spain Service Sta.,* 117 DPR 729, 745 (1986). The party affected by a judgment of dismissal under Rules 10.2 and 10.3 of Civil Procedure, does not have available the mechanism of additional fact determinations, because the court is not required to make determinations of fact. It is understood that the judge presumed as true and took into consideration the facts well alleged in the lawsuit. Thus, the CFI is not obliged to set forth in the judgment the determinations of fact that support its decision. *Roldán Rosario v. Lutron SM,* 151 DPR 883, 889 (2000) . Rule 42.2 of

1

Civil Procedure, 32 LPRA App. V R. 42.2 (a), establishes that it will not be necessary to specify the proven facts and separately record the conclusions of law when ruling on motions under Rule 10 of Civil Procedure,*supra.*

C.

All statutes are and are presumed constitutional until the contrary is determined. When the Supreme Court of Puerto Rico examines the validity of a statute, it is aware of the deference that the legislative power deserves and according to the separation of powers scheme. Our Supreme Court seeks to achieve those interpretations that support the validity of the law in the face of unconstitutionality attacks. *ELA v. Northwestern Selecta,* 185 DPR 40, 71 (2012) .

**\*5** A law may be declared unconstitutional both in its face and in its application. When evaluating if it is unconstitutional of its face, it is necessary to consider if the vice arises from its own text. However, to determine the unconstitutionality in its application, we must analyze the context in which it has been used. *ELA v. Northwestern Selecta,*above, at pgs. 71-72. The laws may be discriminatory in their face for the purpose they pursue or for their effect and in both cases are considered invalid in and of themselves. The regulator has the obligation to defend them and present evidence that they serve a legitimate purpose that is impossible to meet by other reasonable and non-discriminatory means. However, laws are presumed lawful if they are written in neutral terms and their application is not biased. *ELA v. Northwestern Selecta,* supra, at pgs. 73-74.

D.

Section 7 of Article II of the Constitution of Puerto Rico provides that no person shall be deprived of their liberty or property without due process of law, nor shall any person in Puerto Rico be denied the equal protection of the laws. Neither will laws be adopted that undermine contractual obligations. Const. of PR, Art. II, Sec. 7, LPRA, Volume 1; *López v. ELA,* 165 DPR 280, 296-297 (2005) .

The equal protection of the laws is based on the cardinal principle of "similar treatment for similarly situated persons". The government can make classifications between people for any legitimate purposes, but in carrying them out you have to observe that basic rule. The State needs to establish classifications to be able to govern such a complex and varied society, with different individual and group interests, and diverse social relations. It means that it is impossible to govern any society and especially a modern society without instituting classifications between people, without building inequalities that favor some and harm others. *López v. ELA,* supra, at p. 297.

The State can make classifications between people without infringing the equal protection of the laws, as long as the classification is reasonable and with a view to the achievement or protection of a legitimate public interest. Not every discrimination violates the precept of equal protection before the law, although this prohibits unjustified unequal treatment. *López v. ELA,* supra, at pgs. 297-298.

The courts, when making a constitutional analysis on the reasonableness of a legislative classification, must use one of the two (2) established jurisprudential scrutinies. We refer to the use of: (1) strict scrutiny; or the (2) minimum traditional scrutiny or rational nexus. The State has a broad latitude for the establishment of classifications relating to social and economic issues. The analysis of laws that establish classifications in these fields must be carried out through the scrutiny of the minimum traditional or rational nexus. Under this scrutiny, the classifications will not be considered invalid, unless they are clearly arbitrary and there is no legitimate interest of the State. The classifications will not pass the constitutional siege either, if a rational link between these and the state interest can not be established. When rational scrutiny is used, the contested law enjoys a presumption of constitutionality and the person who challenges its validity has the burden of rebutting the presumption.*López v. ELA,* supra, at pgs. 298-299.

**\*6** On the other hand, in order to justify the use of rigorous or strict scrutiny, the court has to identify whether the classification affects a fundamental right of the citizen or if it establishes a suspicious classification that does not relate to the skill or aptitude of the citizens. affected people. When these classifications are identified, it is presumed that the legislation is unconstitutional and the State must prove the existence of a compelling interest or higher hierarchy that justifies it. This scrutiny has been applied to certain laws that establish suspicious distinctions such as those based on race, nationality, citizenship,

Case:17-03283-LTS Doc#:7075-7 Filed:05/22/19 Entered:05/22/19 20:06:40 Desc Exhibit Page 6 of 12

poverty or birth. *López v. ELA*, supra, at p. 299; *Zachry International v. High Court*, 104 DPR 267, 278 (1975).

**AND.**

Article II, Section 7, of the Constitution of Puerto Rico, *supra*, also prohibits the approval of laws that undermine contractual obligations. This constitutional guarantee limits government intervention with contractual obligations between private parties and those contracted by the State. Its purpose is to ensure the stability of contractual relationships. However, its protection is not absolute, since it must be harmonized with the regulatory power of the State in the public interest. The Supreme Court of Puerto Rico has repeatedly stated that not all impairment of a contractual obligation is unconstitutional. *AMPR v. Sist. Retreat-Teachers V,* 190 DPR 854, 868 (2014). The analysis of this constitutional clause depends on whether the contract that is modified is between private entities or is one in which the State is a party.

Private contracts are analyzed through reasonable scrutiny in which the substantial public interest promoted and the extent of the contractual impairment are taken into account. The first step is to determine if there is a contractual relationship, and if its modification represents a substantial or severe impairment. If it is determined that there is a severe impairment, then it is necessary to evaluate if the government intervention responds to a legitimate interest and if it is rationally related to the achievement of that objective. *AMPR v. Sist. Teacher Retreat V,* supra, on p. 869.

A more careful scrutiny is applied when the State is part of the contractual relationship because it could act for its own benefit. Contractual impairment must be reasonable and necessary to advance an important governmental purpose. When evaluating the necessity and reasonableness of a law, it must confer some deference to the criteria of the Legislative Assembly. The greater the severity of the impairment, the more rigor the judicial forum must have in analyzing the challenged legislation. However, the validity will be sustained, if the impairment arises as a consequence of a reasonable and necessary modification aimed at advancing a public interest. *AMPR v. Sist. Teachers Retreat V,* supra, to p. 869-870; *Trinidad Hernandez et al. v. ELA et al.,* 188 DPR 828, 835 (2013).

**F.**

***7*** Act No. 66, *supra,* declared the state of fiscal emergency in which the Government of Puerto Rico is located. This crisis is described as "the most critical that the country has gone through in its history." Public corporations are not immune to the fiscal crisis, so they have also been impacted by the plan that includes: (1) measures to reduce expenses of the Executive Branch; (2) rules and restrictions on granting increases in economic benefits or extraordinary economic compensations; (3) provisions on collective agreements; and (4) provisions on fiscal control of public corporations. Statement of Motives and Art. 2 of Act No. 66, *supra.*This special legislation of socio-economic nature was approved by virtue of the power of reason of the State, with the objective of guaranteeing sufficient liquidity to pay the payroll of public employees and to cover the essential services offered to the citizens. Statement of Motives of Law No. 66, *supra.*

Article 2 establishes the adoption of a plan to manage the consequences of the fiscal crisis and allow the continuity of the essential services of health, safety, education, social work and development, among others. In addition, it establishes the restoration of public credit as public policy of the State. These objectives will be achieved through the short-term elimination of the General Fund deficit and the improvement of the fiscal condition of public corporations, but without dismissing public employees or affecting essential services.

Act No. 66, *supra,* takes precedence over any other legislation, since it was approved under the power of reason of the State and the constitutional power of the Legislative Assembly to approve laws that protect the life, health and welfare of the People when the essential governmental services are in serious danger. Art. 3 of Act No. 66, *supra.*

During the validity of Act No. 66, *supra,* the employees of the Executive Branch will not receive increases in economic benefits or extraordinary monetary compensation, except as provided in subsection (d) of Article 11. Art. 11 (a) of Law No. 66, *supra.*The limitations established in Article 11 apply to all employees of the Executive Branch regardless of their classification of trust, regular or career, transitory or irregular, and irrespective of their particular function within the entity of the Executive Branch. In addition, they apply without distinction of any contrary provision, whether in a law, regulation, collective agreement, policies, employment manuals, circular letters, contractual letters, certifications, regulations,

rules and conditions of employment, regulatory letters, plans of classification or retribution. Art. 11 (f) and (h) of Act No. 66, *supra*.

>  *\*8* Subparagraph (i) of Article 11 expressly states that:

> In recognition of the importance of organizing public employees not only to represent the economic welfare of workers, but to raise public service to its maximum potential and maintain labor peace, an alternative and uniform participatory process is established to achieve public policy objectives of this Law, including the necessary savings within the parameters established in subsections (j) and (k), as the case may be, following collective bargaining as the guiding principle. The agreements reached with the authorized representatives of the unionized employees, and in turn, ratified in writing by the registration of union members concerned and the authorized representative of the Entity of the Executive Branch through and according to the parameters of the negotiation allowed here,

For its part, subsection (j) authorizes the entities of the Executive Branch subject to Act No. 45-1998, known as the Labor Relations Act for the Public Service of Puerto Rico, 3 LPRA sec. 1454 *et seq.* , use the negotiation process to amend collective agreements and modify the economic conditions of employment and established in Article 11, *above*. However, these modifications must guarantee an average saving per unit employee, comparable to that which would have been obtained through the application of the aforementioned clauses. Art. 11 (j) of Act No. 66, *supra.*

Article 14 establishes the forum for resolving disputes related to Act No. 66, *supra*. Your text has as follows:

> The Public Service Appeals Commission (CASP), or its successor entity, in matters pertaining to labor matters or otherwise ordinarily fall within the jurisdiction of CASP, shall have exclusive primary jurisdiction to hear appeals arising as a consequence. of actions or decisions taken under this Chapter, of those employees covered or not covered by the provisions of Act Number 45-1998, as amended, known as the Labor Relations Act for Public Service; as well as those employees who are not unionized of those Entities of the Executive Branch excluded from the application of the provisions of Act No. 184-2004, as amended,

> *\*9* For its part, the Labor Relations Board, or the successor entity of this, will have exclusive primary jurisdiction to hear appeals arising as a result of actions or decisions taken under this Chapter, of those employees covered by Act No. 130. of May 8, 1945, as amended. Provided, That in accordance with the provisions of this Act, no action taken in accordance with its provisions shall constitute a violation of existing collective agreements, or a refusal to negotiate in good faith or an unlawful practice.

On the other hand, Article 17 of Act No. 66, *supra,* establishes the fiscal control measures that public corporations must take. This Article suspends the fulfillment of the non-economic clauses negotiated in the current agreements, which have direct or indirect economic effects on the operation of public corporations, aggravate their budgetary situation, or that it is necessary to suspend them to alleviate the budgetary situation. In addition, it includes a list of some non-economic clauses that may have a direct or indirect economic effect.

### G.

As is known, the term "jurisdiction" means the power or authority that a court or administrative body has to consider and decide cases or controversies. *CBS Outdoor v. Billboard One, Inc. et al.,* 179 DPR 391, 403 (2010) . As a general rule, the judicial forums of Puerto Rico are of general jurisdiction. That is, they have the authority to understand in any cause of action that they present a controversy for adjudication. *Classes A, B and C v. PRTC,* 183 DPR 666 (2011) , citing *Mun. Arecibo v. Mun. Quebradillas,* 161 DPR 109, 114 (2004) ; *Board Dir. Cond. Montebello v. Fernández,* 136 DPR 223, 230 (1994) .

The rule of general jurisdiction prevails, unless the court has jurisdiction over the matter. *Rodríguez v. De León,* 191 DPR 700 (2014) . Jurisdiction on the matter refers to the ability of the court to hear and resolve a dispute over a legal aspect. Jurisdiction on the matter can not be granted by the parties. The court can not accept it either because only the State, through its laws, can grant or deprive the courts of jurisdiction over the matter. *Rodríguez v. De León,* supra.

On the other hand, the administrative agencies only have the powers granted expressly by an enabling law and those that are indispensable to carry out their duties and

responsibilities. From the above, situations can arise in which courts and agencies can understand in the same matter, in which case, this is where the doctrine of primary jurisdiction plays an important role. *CBS Outdoor v. Billboard One, Inc. et al.,* Supra.

**\* 10** The exclusive or statutory primary jurisdiction, occurs when the legislator legislates to confer exclusive primary jurisdiction to an administrative body. The exclusive primary jurisdiction does not admit any other means of solution, adjustment or prevention and is not shared or concurrent jurisdiction. On the contrary, it is a jurisdiction on the matter that the legislator deposited in the jurisdictional scope of the agency exclusively. As a result, courts are excluded from intervening in the first instance in matters or matters over which agencies have been given exclusive jurisdiction. *Rodríguez v. De León,* supra.

The doctrine of primary jurisdiction is one of jurisprudential creation. *CBS Outdoor v. Billboard One, Inc. et al.,* Supra, at pgs. 403-404. This doctrine does not deprive judicial forums of jurisdiction, but rather addresses a priority issue of jurisdiction. Its main purpose is to promote harmony between courts and administrative bodies. Specifically, the doctrine of primary jurisdiction provides which forum, judicial or administrative, must initially address a controversy. For this, the doctrine has two (2) aspects: (1) the exclusive one; and (2) the concurrent one. *Id.,* P. 404

In the first aspect, the exclusive primary jurisdiction, a law or statute confers jurisdiction to a certain administrative body and indicates that this will be the only forum with the faculty to attend, initially, a certain controversy. *Id.* On the other hand, "the second aspect is manifested when the judicial forum and the administrative forum share the faculty to elucidate the same issue. On these occasions we speak of true primary jurisdiction or concurrent primary jurisdiction. " *Id.,* At p. 405. The basis of this aspect lies in the judicial deference that the administrative agencies deserve in consideration of their preparation, specialization, expertise and knowledge to address certain issues. *Id.*

The application of the doctrine of primary jurisdiction requires courts to examine the scope of the enabling law of an administrative agency and determine whether the matter falls strictly within its scope. In addition, it demands that the courts weigh and determine if it is essential and necessary that it be resolved in favor of the agency intervening initially. *Council Headlines v. Gómez Estremera, et al.,* 184 DPR 407, 430-431 (2012) .

**H.**

The extraordinary *injunction* remedy aims to prohibit or order the execution of an act to prevent imminent damage or irreparable damage to any person, when there is no other remedy appropriate in law. *Next Step Medical v. Bromedicon, et al.,* 190 DPR 474, 485-486 (2014) ; *Mun. Fajardo v. Srio Justicia et al.,* Supra, at p. 255. Our legal system has three (3) modalities of this type of remedy that are: provisional interdict, preliminary *injunction* and permanent *injunction* . *Next Step Medical v. Bromedicon, et al.,* Supra, at p. 486

**\* 11** The preliminary *injunction* or *pendente lite* is a resource issued by the court before the conclusion of the trial in its merits and, usually, after the holding of a hearing in which the parties have the opportunity to present evidence in support and opposition to the issuance of it. The main objective of this resource is to maintain the current state of affairs until the trial is held on its merits, so that the case does not become academic. Subsequently, the substantive law will be aired in a plenary trial as in any type of action. The *injunction*Preliminary is directed to require or prohibit doing certain act, with the objective of preventing imminent damage or irreparable damage to any person during the pendency of the litigation. The cardinal factor that governs the issuance of this extraordinary remedy closely linked to the doctrine of equity is the existence of a real threat of suffering some impairment for which there is no adequate remedy in law. *Next Step Medical v. Bromedicon et al.,* Supra.

However, when considering the issuance of a preliminary *injunction* , the court must consider the following criteria: (1) the nature of the damages that may be caused to the parties if the appeal is granted or denied; (2) the irreparableness of the damage or the inexistence of an adequate remedy in law; (3) the likelihood that the claimant will eventually prevail when the dispute is resolved in its merits; (4) the likelihood that the cause will become academic if the *injunction is* not granted *;* and (5) the possible impact on the public interest of the requested remedy. In addition to the enumerated criteria, Rule 57.3 of Civil Procedure adds that the court must consider the criterion of "the diligence and good faith of the petitioner". 32 LPRA App. V R. 57.3;*Next Step Medical v. Bromedicon et al.,* Supra.

1

5/21/2019 Asociación De Empleados Gerenciales De La Corporación Del Fondo Del Seguro Del Estado v. Corporación Del Fondo Del Seguro Del …

Case:17-03283-LTS Doc#:7075-7 Filed:05/22/19 Entered:05/22/19 20:06:40 Desc: Exhibit    Page 9 of 12

These requirements are not absolute, since they are directives that direct the court when deciding whether the evidence presented justifies the issuance of the appeal. The granting of the remedy will rest on the sound judicial discretion, which will be exercised when considering both the interests and the needs of the parties involved in the case. The same should be issued with moderation and only before a clear and unequivocal demonstration of the violation of a right. The determination of the court will not be revoked on appeal, unless it is proven that the forum of abuse abused his faculty. *Next Step Medical v. Bromedicon et al.,* Supra, at p. 487

In determining whether to grant a permanent injunction, the court must consider the following criteria: (1) if the plaintiff has prevailed in a trial on his merits; (2) if the plaintiff owns some appropriate remedy in law; (3) the public interest involved; and (4) the equity balance. These criteria are not absolute in nature, but are guidelines that direct the discretion of the court in determining whether the evidence justifies the injunction. *Plaza Las Americas v. N & H,* 166 DP .R. 631, 643-644 (2005) .

I.

**\* 12** In relation to a writ of *mandamus,* the Supreme Court of Puerto Rico has ruled that, in accordance with the provisions of Article 649 of the Code of Civil Procedure, 32 LPRA sec. 3421 , "the writ of mandamus is a highly privileged and discretionary resource that is issued to order any natural person, corporation or a lower hierarchical court that performs or executes an act that is part of its duties and powers." *AMPR v. Srio. Education, ELA,* 178 DPR 253, 263 (2010). Said appeal only comes when the fulfillment of a duty imposed by law is required. This refers to a duty qualified as ministerial and, therefore, does not admit discretion in its exercise, but is mandatory and imperative. *Noriega v. Hernández Colón,* 135 DPR 406, 447-448 (1994) ; *Hernandez Agosto v. Romero Barceló,* 112 DPR 407, 418 (1982) ; % 21 *Alvarez de Choudens v. Superior Court,* 103 DPR 235, 242 (1975) . That is, it must be "a specific mandate that the defendant has to comply with and that does not allow him to decide whether or not to comply with the requested act". *AMPR v. Srio. Education, ELA,* supra, on p. 264.

On the contrary, "when the execution of the act or action that is described depends on the discretion or judgment of the official, such duty is considered as non-ministerial". *Id.* See, also, *Díaz Saldaña v. Acevedo Vilá,* 168 DPR 359, 365 (2006) ; % 21*Alvarez de Choudens v. Superior Court,* supra. Therefore, as they are not ministerial, discretionary duties fall outside the scope of the *mandamus* appeal . *AMPR v. Srio. Education, ELA,* supra. In addition, it should be noted that, as a highly privileged resource, the issuance of the *mandamus order* does not proceed as a matter of law, but rests on the court's sound discretion.*Báez Galib and others v. CEE II,* 152 DPR 382, 391-392 (2000) . Consequently, the issuance of the writ of mandamus is inadmissible if there is another adequate remedy in law, since the main purpose of the order is not to replace available legal remedies, but to make up for the lack of them. *AMPR v. Srio. Education, ELA,* supra, at pgs. 266-267; *Hernandez Agosto v. Romero Barceló,* supra; *Dávila v. Superintendent of Elections,* 82 DPR 264, 274 (1960) .

It is necessary to reiterate that a mandamus can be considered when the petitioner does not have an adequate and effective legal remedy available in the ordinary course of the law. See, Art. 651 of the Code of Civil Procedure, 32 LPRA sec. 3423. The mandamus petition has to be evaluated in light of several requirements. These are: (1) that the defendant has a duty or ministerial obligation imposed by law; (2) that the petitioner has a special interest in the right that he claims; (3) that the duty to act of the agency and the right of the petitioner arise from the law in a clear and patent manner; (4) that the petitioner has no other legal remedy to enforce his right; and (5) that, given the effect that the issuance of the order will have, the Tribunal understands that the purposes of justice force its issuance. *Dávila v. Superintendent of Elections,* supra, at pgs. 274-275. See also Arts. 649 to 651 of the Code of Civil Procedure, 32 LPRA secs. 3421 - 3423 .

**\* 13** In accordance with the doctrinal framework outlined above, we proceed to resolve the controversies before our consideration.

III.

In the appeal before us, in its first error statement, the appellant challenged the refusal of the ICC not to make part of the *Judgment* appealed the determinations of additional facts requested in a motion of reconsideration filed by the appellant. In addition, he argued that the primary forum failed to comply with the requirements of Rule 42.2 of Civil Procedure, *supra,* because it issued a summary judgment without determining the uncontroversial

1

facts. The approaches outlined by the appellant in relation to this particular are inmeritorious. For this purpose, it should be noted that the *Judgment* appealed was issued under Rule 10.2, *supra,* therefore, the CFI was not even obliged to make determinations of facts. It is presumed that said forum took as true the facts that were well alleged in the *Complaint.* It is necessary to indicate that Rule 42.2, *supra,* establishes that when a judgment is issued in favor of a motion for dismissal, it is not necessary to specify the proven facts and to record the conclusions of law separately.

However, even taking as true the facts well alleged in the *Complaint,* the ICC ruled that the appellant did not have a cause of action that would justify the granting of a remedy. Consequently, it issued a declaratory judgment recognizing the constitutionality of Articles 11 and 17 of Act No. 66, *supra.* In addition, it was declared without jurisdiction on the matter to address the appeal of *mandamus* and issue the requested *injunction* because the claim of the appellant is a controversy of the exclusive jurisdiction of the CASP.

As a second error, the appellant attacked the constitutionality of Articles 11 and 17 of Act No. 66, *supra.* The Association alleged that the application of these Articles violates the right of non-unionized management employees of the CFSE to the equal protection of the laws and violates the prohibition to the detriment of contractual obligations. The appellant argued that the Articles cited establish an unreasonable classification between career employees and those unionized who enjoy the benefits of collective agreements. He argued that this classification attends and dramatically reduces the economic benefits of those represented, compared to those of unionized employees.

According to the appellant, said Articles establish unequal and discriminatory treatment because: (1) they exclude career management non-union employees from the alternate participatory process; (2) the average savings quota imposed on management employees is two and a half times greater than that established for unionized employees; (3) give preferential treatment to unionized employees *vis à vis* unmanaged career management employees affiliated with bonafide labor organizations, whose effect is the imposition of a greater burden; (4) allow agreements with labor organizations that grant working conditions and economic benefits superior to those of the employees of the Association; and (5) they do not provide the members of the Association with the same economic benefits and working conditions agreed with labor organizations.

**\* 14** For its part, the State asserted that Act No. 66, *supra,* does not establish arbitrary or capricious classifications and said that said legislation complies with the State's urgent interest in addressing and resolving the serious fiscal crisis faced by the Port Government. Rich. Likewise, the State argued that Act No. 66, *supra,* It was enacted to guarantee the continuity of public management in essential areas such as health, public safety, education and social work. In addition, it has the objectives of restoring the State's credit and eliminating the fiscal deficit of the general fund, without resorting to the dismissal of public employees, or affecting the essential functions of government agencies. In turn, the CFSE adopted the arguments of the State in favor of the constitutionality of Act No. 66, *supra.*

The determination on the constitutionality of Articles 11 and 17 of Act No. 66, *supra,* requires an analysis of the text of the law to establish whether they are discriminatory in their face and the context in which they have been used to see if their application is discriminatory See, *ELA v. Northwestern Selecta,* supra. Article 11 of Act No. 66, *supra,* prohibits the increase of economic benefits and extraordinary monetary compensations received by employees of the Executive Branch, except for the exceptions determined by the legislator. Said Article contains a list of the economic benefits and extraordinary monetary compensations that will not be granted during the validity of Act No. 66, *supra.*

The suspension of economic benefits and extraordinary monetary compensations does not make exclusions, since it is extended to all employees of the Executive Branch and includes public corporations. The measure affects all employees of the Executive Branch irrespective of whether their classification is trustworthy, regular career, temporary or irregular and their particular functions. Article 11, *supra,* allows collectively organized employees to negotiate economic benefits other than those permitted by Act No. 66, *supra,* but subject to savings being achieved within the parameters established by that legislation.

For its part, Article 17 of Act No. 66, *supra,* establishes the fiscal control measures that public corporations must take. This Article suspends the fulfillment of the non-economic clauses negotiated in the current agreements that have direct or indirect economic effects on the operation of the public corporation, aggravate its budgetary situation, or that it is necessary to suspend them to alleviate the budgetary situation. The aforementioned Article has a list of some non-economic clauses that may have a direct or indirect economic effect.

1

Case:17-03283-LTS Doc#:7075-7 Filed:05/22/19 Entered:05/22/19 20:06:40 Desc: Exhibit Page 11 of 12

\* **15** The analysis of the text of Articles 11 and 17, *supra,* makes clear that the State did not violate the constitutional clause that guarantees the equal protection of the laws. The Articles, whose constitutionality questions the appellant, do not establish a suspicious classification based on race, color, sex, birth, origin or social condition, political, religious or national ideas, which violate fundamental rights of the appellant and justify the use of a scrutiny strict and the activation of the presumption of unconstitutionality of the law. See, *López v. ELA,* supra. However, even if this presumption were activated, it was proved that Act No. 66, *supra,* It obeys public policy and the State's urgent interest in combating and solving the country's serious fiscal crisis that puts the health, safety and essential public services at risk to the citizenry.

Act No. 66, *supra,* evidently is an economic legislation, whose main objective is to get the country out of the fiscal crisis. Therefore, its constitutionality must be analyzed based on traditional scrutiny. Articles 11 and 17, *supra,* they pass the screening of the scrutiny of the minimum rational or traditional nexus. The appellant did not defeat the presumption of constitutionality, since it did not prove the existence of an arbitrary classification. The State, on the other hand, did manage to prove the existence of a legitimate end. The fiscal crisis is an incontrovertible fact. The reduction of economic benefits to all components of the Executive Branch, including public corporations, is part of the cost reduction measures necessary to save the country's credit and guarantee essential services.

The measures of Article 11, *supra,* are extended to all public employees of the Executive Branch regardless of their classification. However, the appellant argued that Act No. 66, *supra,* is unconstitutional because it only allows employees collectively organized to negotiate economic benefits other than those permitted by Act No. 66, *supra.* However, the appellant obviated that the negotiation with the appointing authority has the purpose and is subject to savings being achieved within the parameters established by that legislation. The management employees represented by the appellant are not in a disadvantaged position because the possibility of negotiating the employees organized collectively with the appointing authority is precisely to ensure that the savings projected in Act No. 66, *supra* , are achieved .

Article 17 of Act No. 66, *supra,* does not disadvantage the appellant against the employees covered by collective bargaining agreements. On the contrary, this Article only affects the rights of employees organized collectively, since it suspends compliance with the non-economic clauses negotiated in their agreements, but that have a direct or indirect economic impact on the operation of the corporation and that aggravate their budget situation. Remember that the appellant does not have a constitutional right to collectively negotiate terms and conditions of employment. Therefore, what is pursued with Act No. 66, *supra,* is precisely to adjust that right of organized employees to the need that alleviates Act No. 66, *supra.*

\* **16** Act No. 66, *supra,* does not make an arbitrary or suspicious classification among the non-unionized managerial employees of the career service of the CFSE and the unionized employees covered by collective bargaining agreements. On the contrary, we maintain that the law gives them a similar treatment. Both groups have been affected by the cost reduction measures that involve all employees of the Executive Branch, including public corporations and without distinction of the position they occupy. The measures of Articles 11 and 17, far from establishing a suspicious classification to the detriment of the appellant, are intended to avoid the economic collapse of the Government and ensure that the agreements of the collective agreements comply with the savings established in Act No. 66. , *supra*.

As previously stated, the appellant has not defeated the presumption of constitutionality of Articles 11 and 17 of Act No. 66, *supra.* The State, on the other hand, has proven that said legislation has the legitimate and urgent purpose of preventing the collapse of the finances of the Government of Puerto Rico and guaranteeing citizens basic and essential services. Articles 11 and 17, *supra,* also do not violate the constitutional prohibition to the approval of laws that undermine contractual obligations. We can not ignore that this protection is not absolute, since it must be harmonized with the regulatory power of the State in the public interest.

The constitutionality of the aforementioned Articles is unquestionable. The measures taken by the State in Act No. 66, *supra,* are undoubtedly reasonable and necessary to advance the important governmental purpose of saving the finances of Puerto Rico. In addition, they turn out to be the least expensive possible, since the intention of the State is to achieve the economic stability of the Government without affecting the provision of essential services

5/21/2019 Asociación De Empleados Gerenciales De La Corporación Del Fondo Del Seguro Del Estado v. Corporación Del Fondo Del Seguro Del ...

Case:17-03283-LTS Doc#:7075-7 Filed:05/22/19 Entered:05/22/19 20:06:40 Desc: Exhibit . Page 12 of 12

and without dismissing public employees. *AMPR v. Sist. Teacher Retreat v, supra; Trinidad Hernandez et al. v. ELA et al.,* Supra.

Finally, the appellant argued that the CFI had an impact by not issuing the requested writ of *mandamus* so that the CFSE would comply with its ministerial duty to deliver public documents. The appellant specifically referred to the following documents: (1) the savings goal established by the CFSE; (2) the report of trust places and amounts; (3) the proposed plan for compliance with Articles 8-11, 17-18; (4) the report of occupied and vacant management positions, as listed in Article 11, section (i) of Act No. 66; and (5) other related documents necessary for compliance with the savings provisions and goals set forth in Act No. 66, *supra.*

The approach of the appellant is wrong. The CFI acted correctly by declaring itself without jurisdiction over the matter and not responding to the petition of *mandamus.* The CASP is the body with exclusive primary jurisdiction to deal with disputes related to the implementation of cost reduction measures taken by the Executive Branch under Act No. 66, *supra.* By express provision of the legislator, the appellant had to go in the first instance to the CASP to question the cost reduction measures taken by the CFSE that allegedly affect its economic benefits. Similarly, we conclude that either came the expedition of extraordinary car *injunction* [2] because the appellant has as remedies available those provided by the CASP. Consequently, it is appropriate to confirm the *Judgment* appealed.

**IV.**

\* **17** In attention to the foundations outlined above, the *Judgment* appealed is confirmed .

It was agreed and ordered by the Court and certified by the Secretary of the Court of Appeals.

Dimarie Alicea Lozada

Secretary of the Court of Appeals

| Footnotes | |
|---|---|
| one | See, Appendix of the appeal, pp. 206-229. |
| two | It is essential to emphasize that once the constitutionality of Articles 11 and 17 of Act No. 66, *supra,* has been decreed , *it* is immaterial and inappropriate to discuss whether the CFI erred by not issuing an *injunction* to avoid the alleged unconstitutional application of the law. |

End of Document     © 2019 Thomson Reuters. No claim to original US Government Works.

Westlaw. © 2019 Thomson Reuters | Privacy Statement | Accessibility | Supplier Terms | Contact Us | 1-800-REF-ATTY (1-800-733-2889) | Improve Westlaw    THOMSON REUTERS