# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

**RESPONDENTS' RESPONSE TO MOTION OF CERTAIN CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF PUERTO RICO TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED BASED ON RESPONDENTS' MAY 9, 2019 SUBMISSIONS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## PRELIMINARY STATEMENT[2]

1. The Court's May 15, 2019 Order was proper, correct as a matter of law and fact, and timely. The parties fully briefed the disputed privilege issues and participated in extensive oral argument on May 2, 2019. As required by the Court's May 6, 2019 Order—and in only three short days—the Government Parties prepared and filed additional, detailed submissions.[3]

---

[2] Capitalized terms have the same meanings as in the April 18 Opp. In addition, (i) "**Amended April 14 Log**" means *ERS, the Commonwealth, and AAFAF's Privilege Log of Materials Withheld in Response to Document Requests Related to Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, 17-03566-LTS, ECF No. 459-2 (D.P.R. April 22, 2019); (ii) "**Appendix**" means *Appendix to ERS, the Commonwealth, and AAFAF's Privilege Logs of Materials Withheld in Response to Document Requests Related to Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, 17-03566-LTS, ECF No. 501-2, (D.P.R. May 9, 2019); (iii) "**April 12 Log**" means *ERS, the Commonwealth, and AAFAF's Amended Categorical Privilege Log of Materials Withheld in Response to Document Requests Related to Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, 17-03566-LTS, ECF No. 443-2 (D.P.R. April 15, 2019); (iv) "**April 18 Opp.**" means *Respondents' Opposition to Motion to Compel Production of Documents In Privilege Log Categories 1-4 [Attorney-Client Privilege, Attorney Work Product, Common Interest]*, 17-03566-LTS, ECF No. 451 (D.P.R. Apr. 18, 2019); (v) "**Briefing Schedule Order**" means *Order Setting Brief Schedule on Motion to Compel*, 17-03566-LTS, ECF No. 511 (D.P.R. May 16, 2019); (vi) "**May 2 Hearing Transcript**" means the transcript of the May 2, 2019 hearing; (vii) "**May 6 Order**" means Order on Motions to Compel, 17-03566-LTS, ECF No. 493 (D.P.R. May 6, 2019); (viii) "**May 9 Log**" means *ERS, the Commonwealth, and AAFAF's Privilege Log of Documents Withheld in Category 3 in Response to Document Requests Related to Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, 17-03566-LTS, ECF No. 501-1 (D.P.R. May 9, 2019); (viii) "**May 9 Submissions**" means *The Government Parties' Informative Motion Regarding the Court's May 6, 2019 Order [ECF No. 493]* and supporting declarations and exhibits, 17-03566-LTS, ECF Nos. 500-503 (D.P.R. May 9, 2019); (ix) "**May 15 Order**" means *Supplemental Order on Motions to Compel*, 17-03566 ECF No. 509 (D.P.R. May 15, 2019); (x) "**May 20 Objection**" means *Objection of Certain ERS Bondholders to the Magistrate Judge's May 6 and May 15, 2019 Orders on Motions to Compel*, 17-03566, ECF No. 518 (D.P.R. May 20, 2019); (xi) "**Pocha Decl.**" means *Declaration of Madhu Pocha, Esq. In Support of the Government Parties Informative Motion Regarding the Courts May 6, 2019 Order In Connection With the Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, 17-03556-LTS, EFC No. 501 (D.P.R. May 9, 2019); (xii) "**Renewed Motion**" means *Motion to Compel Production of Documents Withheld as Privileged Based on Respondents' May 9, 2019, Submissions*, 17-03566-LTS, ECF No. 510 (D.P.R. May 16, 2019); (xiii) "**Status Report**" means *the Joint Informative Motion Regarding Discovery Matters*, 17-03566-LTS, ECF No. 507 (D.P.R. May 13, 2019); (xiv) "**Supp. Mahmud Decl.**" means *Supplemental Declaration of Mohammad Yassin Mahmud in Support of Assertion of Deliberative Process Privilege by AAFAF*, 17-03566-LTS, ECF No. 502 (D.P.R. May 9, 2019); and (xv) "**Urgent Motion**" means *Urgent Joint Motion Regarding the Scheduling of Discovery and Briefing*, 17-03566-LTS, ECF No. 504 (D.P.R. May 10, 2019).

[3] During the six days in which they had to respond to the Government Parties' supplemental submissions, Movants filed two other discovery motions. *See* the Urgent Motion and the Status Report. As the Court noted, "[t]he Bondholders did not indicate in the status report, or elsewhere, that they continued to object to outstanding issues from the May 6, 2019 order after receipt of the Government Parties' supplemental submissions. In reliance thereon, the Court issued an order on May 15, 2019 making further rulings and resolving the outstanding issues from the May 6, 2019 order." Briefing Schedule Order at 2-3.

Although the Court permitted Movants to lodge objections to those submissions, they did not do so until *after* the Court issued its ruling six days later. Given the expedited discovery schedule Movants sought, which provides for a May 29 fact discovery cut-off, the Court's prompt decision was necessary. The Court's decision did not prejudice Movants, as they were afforded more time than the Government Parties to submit papers to the Court. Movants' Renewed Motion should be treated for what it is—a cursory, improper motion for reconsideration.

2. Worse, Movants' Renewed Motion merely recycles their prior flawed arguments and fails on the merits. As the Court has held, the May 9 Submissions meet the requirements for (i) asserting the executive privilege over communications with Mr. Sanchez, (ii) the deliberative process privilege over factual material in the Government Parties' Amended April 14 Log and (iii) the attorney-client privilege over the documents in Category 3 of the Government Parties' April 12 Log. The Court should deny the Renewed Motion in its entirety and affirm its May 15 Order.

## ARGUMENT

**I. APPLICATION OF THE EXECUTIVE PRIVILEGE TO AAFAF WAS NOT AT ISSUE FOR THE MAY 9 SUBMISSIONS.**

3. Although Movants argue that the May 9 Submissions fail to support the Government Parties' assertion of executive privilege,[4] the Court had already decided this issue against the Movants. *See* May 2 Hearing Transcript at 58:17-18 ("And I do find that AAFAF can claim the executive privilege[.]"); May 6 Order at 4 ("In accordance with the rulings made at the Hearing, the Court holds that in connection with the governmental decisions at issue, AAFAF can claim the executive privilege in connection with its role as an advisor to the Governor."). Movants offer no reason to revisit that well-supported ruling.

4. The open issue from the May 2 hearing was whether the Government Parties were

---

[4] Renewed Motion ¶ 6.

2

withholding communications with Mr. Sanchez that were not within the scope of his tenure as an advisor to the Governor.[5] The uncertainty was due to the fact that Mr. Sanchez was listed as a recipient of communications on the categorical April 12 Log, which encompassed documents after Mr. Sanchez left his government role. The Government Parties' May 9 Submissions resolved this issue by disclosing that all privileged communications with Mr. Sanchez on the Government Parties' logs fell within the period in which Mr. Sanchez served as an ex officio member of the Oversight Board.[6] The Renewed Motion does not notify the Court that Movants' objections still stand in regard to Mr. Sanchez; thus, the Court's May 15 Order is also final as regards Mr. Sanchez.

II. **THE MAY 9 SUBMISSIONS ADEQUATELY DEMONSTRATE THAT FACTS IN THE WITHHELD DOCUMENTS ARE INTERTWINED WITH DELIBERATIVE MATERIAL AND PROTECTED BY THE DELIBERATIVE PROCESS PRIVILEGE.**

5. The Movants try to draw a false distinction between (i) "'post-measures' information [that] would reveal the proposals under consideration," and are therefore protected by the deliberative process privilege and (ii) "'pre-measures' information" that "reflects the projections in the absence of any change," which Movants contend would not be protected.[7] This fabricated dichotomy is contrary to law and cannot stand in the face of the Government Parties' May 9 Submissions.

6. First, the law shields facts from disclosure that would reveal the Government's deliberations and draws no distinction between pre- and post-measure information. May 15 Order at 3 (quoting *Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014)) ("While Bondholders are correct that factual information is not protected by the privilege, '[t]he question is not merely whether the

---

[5] *See* May 2 Hearing Transcript at 74:2-76:8; 77:20-78:4; 125:1-5; May 6 Order at 4.
[6] Pocha Decl. ¶ 3.
[7] Renewed Motion ¶ 7.

3

documents contain factual information—or even whether the document is predominantly comprised of findings of fact—but rather the degree to which the facts are indissolubly linked to the broader analysis.'"); *In re U.S.*, 321 F. App'x 953, 960-961 (Fed. Cir. 2009) ("[I]t is well-recognized that factual matter contained in government documents can expose deliberations in certain circumstances, and requiring production of the factual information in or related to draft decisions or letters would reveal the government officials' deliberations concerning what factual matter was or was not appropriate for inclusion in the final agency decision or letter.").

7. Second, the May 9 Submissions (and prior submissions) establish in detail why facts in the withheld documents cannot be segregated and disclosed without revealing deliberative communications. *See* May 15 Order at 4 ("Having reviewed the Mahmud Declaration and the Pabon Declaration, as well as the entries on the Amended April 14 Log and the May 9 Log, the Court finds that the Government Parties have sufficiently demonstrated that any factual information imbedded in the withheld documents is either itself deliberative or is so intertwined with deliberative information that disclosure is not appropriate. Thus, the Bondholders' objection is overruled.").

8. The Movants complain in conclusory fashion that the Government Parties "do not explain how" "disclosing the factual information would . . . reveal pension reform proposals and assumptions that were under consideration."[8] But that is precisely what the original and supplemental submissions do. They explain in general terms (so as not to waive the privilege) what the withheld factual information is and why it cannot be disclosed without revealing deliberations regarding pension reform and other public policy decisions. *See, e.g.*, Supp. Mahmud Decl. ¶¶ 4–5 (explaining that revealing the contents of the steps leading to the Government's

---

[8] Renewed Motion ¶ 7 (internal quotations omitted).

4

reform proposals, such as the facts incorporated into alternative scenarios or projections regarding asset sales, assumptions and limiting conditions, and analyses, would reveal the proposals themselves). The law requires nothing more, and Movants have not cited a single case holding otherwise.

### III. THE MOVANTS PROVIDE NO BASIS TO ORDER THE DISCLOSURE OF ATTORNEY WORK PRODUCT.

9. Movants argue that the Court should reject the Government Parties' work product assertions in case Judge Swain or the First Circuit reverses this Court's other well-founded privilege rulings.[9] This argument is a red herring. Other than pointing to their prior briefs, Movants provide no reason for the Court to reverse its ruling. In an effort to be efficient under the expedited schedule that Movants have demanded for this limited proceeding, the Court ordered the Government Parties to state whether any documents were withheld solely on attorney work product grounds (and if so, to log those documents individually). None were.[10]

10. In light of that fact and because the Court had already determined that the attorney-client privilege applies, there was no need to rule on attorney work product. *See Sprague v. Thorn Americas, Inc.*, 129 F.3d 1355, 1372 (10th Cir. 1997) ("[W]e are convinced that under federal and Kansas law the critical memorandum and information sought by the motion to compel are protected by the attorney-client privilege. Since this privilege applies, it is unnecessary for us to consider the work product privilege."); *Koninklijke Philips N.V. v. Zoll Lifecor Corp.*, No. 2:12-CV-1369, 2014 WL 12601009, at *9 (W.D. Pa. June 18, 2014) ("[H]aving concluded that the 2004 email is properly subject to attorney-client privilege, it is unnecessary to decide whether that email is entitled to further protection as work-product."). If for some reason the Court's well-founded

---

[9] Renewed Motion ¶ 8.
[10] Pocha Decl. ¶ 3.

decisions on other privileges were reversed, the validity of the Government Parties' attorney work product claims could always be taken up then. But a blanket ruling overruling the Government Parties' work product assertions *in toto* is simply unwarranted. *See* April 18 Opp. at p. 18-20 (explaining Government Parties' objections to Movants' demand for work product).

**IV. THE MAY 9 LOG DEMONSTRATES THAT THE ATTORNEY-CLIENT PRIVILEGE EXTENDS TO THE GOVERNMENT PARTIES' ADVISORS.**

11. Movants contend that the Government Parties' attorney-client privilege assertions for the documents on the May 9 Log are somehow deficient because they fail to explain the role various advisors played.[11] But the Court was not concerned with what each advisor's role was; instead, the Court was concerned that the "implementation" of Pay-Go reforms may not present legal issues that could be the subject of an attorney's legal advice. May 6 Order at 9 ("In accordance with the discussion in open court, the description of documents in Category 3 of Respondents' privilege log . . . raises the issue whether the third parties' involvement was for a business or legal purpose."); May 2 Hearing Transcript at 113:10-114:8 ("[T]he key question that came up in my mind in reading this is . . . whether the participation by these third parties was for business advice or legal advice[.]").

12. The Government Parties' May 9 Log sufficiently addresses this issue because each entry involving advisors explains that the purpose of the communication was a legal one related to the pension systems.[12] *See, e.g.*, May 9 Log, entry #13, which includes financial advisors from Rothschild and Bank of America Merrill Lynch, ("Confidential communication reflecting legal advice from outside counsel (Dentons) to in-house counsel to AAFAF and outside counsel (O'Melveny) regarding (i) legal issues associated with Social Security eligibility for ERS and TRS

---

[11] Renewed Motion ¶ 9.

[12] In addition, the May 9 Submissions include an updated and detailed Appendix describing everyone listed on the Government Parties' privilege logs.

6

participants and their coverage requirements; and (ii) legal advice and analysis concerning potential Title III restructuring."), and entry #34, which includes financial and actuarial advisors from McKinsey, Rothschild and Pension Trustee Advisors, ("Confidential communications with in-house counsel to AAFAF and outside counsel (O'Melveny) transmitting draft spreadsheet of Commonwealth Fiscal Plan projecting general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026, for purposes of implementing pension reform. The draft spreadsheet relates to the decision to enact Joint Resolution 188 on June 25, 2017, and Act 106 on August 23, 2017.").

13. The Movants have identified no specific entry they contend was inadequate, nor have they explained in what way the May 9 Log (which the Government Parties had only three days to prepare) was actually deficient. Thus, the Court properly denied their motion to compel. *See* May 15 Order at 7 (holding that "based on the descriptions in the May 9 Log, that the third parties present on the withheld documents served a legal purpose. Their presence did not constitute waiver and the Bondholders' objection on that basis is overruled.").[13]

## CONCLUSION

For the foregoing reasons, the Renewed Motion should be denied.

---

[13] The Movants also try to re-litigate the Government Parties' privilege assertions over the categorical descriptions of Categories 1, 2, and 4 in the April 12 Log. Renewed Motion ¶ 9. The privilege assertions over these categories was not at issue in the May 9 Submissions. *See* May 6 Order at 9, and n. 5 (stating "the description of documents in Category 3 of Respondents' privilege log…raises the issue whether the third parties' involvement was for a business or legal purpose," noting the distinction between business and legal purpose "applies to all of the documents withheld on the basis of the attorney-client privilege" and "[t]he Court expects that the distinction was applied when logging documents in Categories 1, 2, and 4[,]" and finally ordering "[r]espondents shall create a document by document log for all documents in Category 3 of their privilege log.").

Dated: May 22, 2019
San Juan, Puerto Rico

| | |
|---|---|
| */s/ William J. Sushon* | */s/ Luis C. Marini-Biaggi* |

John J. Rapisardi
Suzzanne Uhland
Peter Friedman
William J. Sushon
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, New York 10036
(212) 326-2000
jrapisardi@omm.com
suhland@omm.com
pfriedman@omm.com
wsushon@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (787) 294-9508
Fax: (787) 294-9519
emckeen@omm.com

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, on its own behalf and as representative of the Commonwealth of Puerto Rico and the Employees Retirement System for the Government of the Commonwealth of Puerto Rico*

Luis C. Marini-Biaggi
USDC No. 222301
lmarini@mpmlawpr.com

Carolina Velaz-Rivero
USDC No. 300913
cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal Agency and Financial Advisory Authority, on its own behalf and as representative of the Commonwealth of Puerto Rico and the Employees Retirement System for the Government of the Commonwealth of Puerto Rico*