**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| | ) | Case No. 17-bk-03283 (LTS) |
| | ) | |
| as representative of | ) | |
| | ) | |
| | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.* | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | X | |
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| | ) | |
| | ) | Case No. 17-cv-01685 (LTS) |
| as representative of | ) | Case No. 17-bk-03566 (LTS) |
| | ) | |
| | ) | |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | X | |

## <u>TABLE OF CONTENTS</u>

Page(s)

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

ARGUMENT .......................................................................................................................... 4

I.     MOVANTS' ARGUMENTS ARE ACADEMIC, IMPROPER, AND CONTRARY TO
       THE COURT'S ORDERS ............................................................................................ 4

II.    MOVANTS CANNOT SHOW "SUBSTANTIAL NEED" FOR MATERIALS
       WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE ......................... 6

III.   THE OVERSIGHT BOARD PRODUCED RESPONSIVE AND NON-PRIVILEGED
       FACTUAL INFORMATION IN DELIBERATIVE MATERIALS WHEREVER
       POSSIBLE, IN ACCORDANCE WITH THE COURT'S GUIDANCE ........................... 9

IV.    THE OVERSIGHT BOARD PROPERLY ASSERTED ATTORNEY-CLIENT
       PRIVILEGE ............................................................................................................... 11

V.     THE OVERSIGHT BOARD PROPERLY ASSERTED THE WORK PRODUCT
       DOCTRINE ............................................................................................................... 13

VI.    MOVANTS' "PRESERVATION" ARGUMENTS ARE BASELESS ......................... 16

CONCLUSION ...................................................................................................................... 17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*Altair Global Opportunities Fund (A) LLC v. Garcia-Padilla*,
Case No. 16-cv-02696 (D.P.R. Sept. 21, 2016)......................................................................15

*Bhatia-Gautier v. Gobernador*,
199 D.P.R. 59 (P.R. 2017) ........................................................................................................8

*The Financial Oversight and Management Board for Puerto Rico v. Altair Global
Credit Opportunities Fund (A) LLC et al.*,
Case No. 17-ap-213 (D.P.R. July 21, 2017) .........................................................................15

*U.S. v. Textron, Inc.*,
577 F.3d 21 (1st Cir. 2009)......................................................................................................14

*United States v. Cavallaro*,
284 F.3d 236 (1st Cir. 2002)..............................................................................................12, 13

**STATUTES**

48 U.S.C. §§ 2101-2241 ....................................................................................................................1

PROMESA § 315(b)...........................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(b)(3)(A)(ii) .......................................................................................................16

**OBJECTION OF FINANCIAL OVERSIGHT AND MANAGEMENT BOARD
FOR PUERTO RICO, AS REPRESENTATIVE OF DEBTOR, TO MOTION TO
COMPEL PRODUCTION OF DOCUMENTS**

To the Honorable United States Magistrate Judge Judith G. Dein:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"),

for itself and as representative for debtor Employees' Retirement System of the Government of

the Commonwealth of Puerto Rico ("ERS" or "Debtor"), pursuant to Section 315(b) of the *Puerto*

*Rico Oversight, Management, and Economic Stability Act*, codified at 48 U.S.C. §§ 2101-2241

("PROMESA"), respectfully submits this objection to the *Motion to Compel Production of*

*Documents from Financial Oversight and Management Board* (the "Motion") [Docket No. 512 in

Case No. 17-bk-03566] filed by counsel to Movants.[1]

## PRELIMINARY STATEMENT

1.       Movants seek to compel the Oversight Board to produce privileged documents

because the non-privileged documents it produced—after performing a search using agreed-upon

parameters—did not yield documents that support Movants' case.  To that end, Movants ignore

this Court's prior orders rejecting their arguments, ignore the descriptions provided with the

Oversight Board's privilege logs in favor of improper blanket challenges, and ask the Court to buy

---

[1] Movants are:  Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree-Forrest Multi-Strategy, LLC (Series B), Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Oaktree Value Opportunities Fund, L.P., Ocher Rose, L.L.C., SV Credit, L.P., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

into a conspiracy theory:  the Court should *assume* the redacted or withheld documents contain a "smoking gun," because the *lack* of evidence to support their case is the best evidence it exists.

2.      Movants have now filed two consecutive motions against the Oversight Board that contain meritless arguments.  Movants' arguments are academic:  for nearly half of the specific documents Movants challenge, Movants challenge only *some* of the privileges asserted as to those documents but not *all* of them.  Worse, by not identifying that to the Court—and by otherwise making sweeping arguments about hundreds of documents without specifically addressing any of them—Movants apparently believe the Court should do their work for them, taking it upon itself to develop and rule upon Movants' undisclosed challenges to the document-by-document descriptions the Oversight Board provided in its logs.

3.      On the merits, Movants' arguments fail.  Movants do not address why there can be a "substantial need" to obtain privileged deliberative materials in view of the Court's holding that "[t]he factual information necessary for [Movants] to present their position to the Court on [the Stay Relief Motion] has been produced."  ECF No. 493 in Case No. 17-bk-03566, at 5.  And, Movants reiterate the same stale privilege arguments in sweeping form the Court already has rejected, and supply no reason why the Court should rule differently here.  The Court should deny the Motion in full.

## BACKGROUND

4.      At the start, Judge Swain limited the scope of discovery on Movants' Stay Relief Motion to "the attribution of any diminution in value resulting from the automatic stay."  ECF No. 313 in Case No. 17-bk-03566; *see also* ECF No. 475 at ¶ 5 in Case No. 17-bk-03566 (Movants' concession that is the "sole question on which Judge Swain ordered discovery").  To that end, the Court has only allowed discovery into two narrow issues:  (1) "how the PayGo system worked, and how it compared to how the ERS system worked, and the similarities and differences," to

2

address Movants' apparent contention their alleged security interest in ERS Bonds attached to PayGo fees; and (2) diminution in value resulting from the automatic stay. May 1, 2019 Hearing Tr. 102.

5.     Following earlier motion practice, the Oversight Board and Movants agreed upon search terms, custodians, and the appropriate timeframe for the Oversight Board to search for responsive documents. ECF No. 432 in Case No. 17-bk-03566 ¶ 2.

6.     On April 15-16, 2019, Movants filed motions to compel against ERS, the Commonwealth, and AAFAF that are substantially similar to the Motion at issue here. ECF Nos. 443, 446 in Case No. 17-bk-03566. The Court denied Movants' motions. ECF Nos. 493, 509 in Case No. 17-bk-03566. Among other things, the Court held that "[t]he factual information necessary for [Movants] to present their position to the Court on [the Stay Relief Motion] has been produced." ECF No. 493 in Case No. 17-bk-03566, at 5.

7.     On April 29, 2019, the Oversight Board served its supplemental and amended document-by-document privilege log. As noted in the Oversight Board's informative motion [ECF No. 483 in Case No. 17-bk-03566], the Oversight Board sent unredacted copies of that privilege log to Movants and the Court via email. *See also* Order, ECF No. 486 in Case No. 17-bk-03566 ("The Court acknowledges that the Oversight Board has served its privilege log on relevant parties and the Court" and "need not file the privilege log on the public docket at this time").

8.     On May 1, 2019, the Oversight Board completed its document production and served its final supplemental document-by-document privilege log upon Movants. Following the filing of this Motion, the Oversight Board also sent an unredacted copy of the May 1 privilege log to the Court via email.

9.     On May 13, 2019, the parties filed a joint informative motion in which Movants stated they intended to file a motion to compel production of privileged material against the Oversight Board.  ECF No. 507 in Case No. 17-bk-03566.  Movants stated they "[did] not expect their anticipated motion to compel to raise arguments that are substantially different from those issues raised in the prior motions to compel as to the privilege claims by ERS, AAFAF, and the Commonwealth," but apparently believed motion practice was necessary to "assert and preserve" their rejected arguments.  *Id.* ¶ 4.

10.     On May 15, 2019 at 4:56 p.m. Eastern Time, Movants requested a conference that same evening "to confer about the FOMB's privilege claims[.]"  Exhibit A at 2.

11.     On May 16, 2019, the parties conferred.   During that conference, Movants confirmed they would raise substantially similar arguments to those raised against ERS, the Commonwealth, and AAFAF.  Movants did not state they would challenge the Oversight Board's production as "inadequate," only that Movants' would assert privilege objections.

12.     On May 17, 2019, Movants filed the Motion.

## ARGUMENT

## I.     MOVANTS' ARGUMENTS ARE ACADEMIC, IMPROPER, AND CONTRARY TO THE COURT'S ORDERS

13.     Two threshold issues warrant denying the Motion in full.

14.     *First*, the Motion is largely academic because, for 42 of the 93 withheld or redacted documents Movants specifically reference in the Motion, Movants challenge only *some* of the Oversight Board's privilege assertions as to those documents but not *all* of them.  Exhibit B.  As one example, Movants challenge the Oversight Board's assertion of work-product protection as to Document Number 172 (Motion ¶ 30), but do not challenge the Oversight Board's assertion of the

attorney-client privilege over that document.[2]  As a result, even if Movants' arguments had merit (and they do not), none of those 42 documents would be produced because Movants have not challenged all of the privileges the Oversight Board has asserted as to them.  *See also* May 15, 2019 Order*, ECF No. 509 in Case No. 17-bk-03566, at 6 (holding "the Court need not rule on whether the Government Parties appropriately invoked the work product doctrine" where the Government Parties asserted other applicable privileges to each respective document).

15.    This is the second motion in a row Movants have filed against the Oversight Board that contains *prima facie* meritless arguments.  *See* May 6, 2019 Hearing Tr. at 13:12-13 (Court's remarks denying Movants' and Mr. Bennett's motion to quash); May 6, 2019 Order [ECF No. 495 in Case No. 17-bk-03566].  Movants' choice to seek relief through academic challenges to "preserve" baseless objections shows Movants are more interested in creating work for their opponents at the public's expense than obtaining needed discovery.

16.    *Second*, in any event, the Court has rejected all of Movants' arguments in its orders on Movants' prior motions to compel.  *See* ECF Nos. 493 and 509 in Case No. 17-bk-03566. Movants supply no reason why the Court should find new merit in those rejected arguments.  It is also clear Movants knew their arguments were meritless when they filed the Motion.  The Court rejected Movants' arguments at the May 2, 2019 hearing and in the May 6, 2019 Order [ECF No. 495 in Case No. 17-bk-03566].  Movants nevertheless stated in the joint informative motion that they intended to file a motion to compel on the exact same grounds against the Oversight Board. ECF No. 507 in Case No. 17-bk-03566, at ¶ 4(a) (Movants "[did] not expect their anticipated

---

[2] Nor could Movants do so given the description the Oversight Board provided with that document:  "Emails between the Oversight Board, its counsel, and its consultants containing, reflecting, and seeking legal advice concerning meetings with creditors and recommended next actions."  April 29, 2019 Privilege Log at 50.

motion to compel to raise arguments that are substantially different from those issues raised in the prior motions to compel as to the privilege claims by ERS, AAFAF, and the Commonwealth.").[3] The Court again rejected Movants' arguments in its supplemental order on May 15, 2019 [ECF No. 512 in Case No. 17-bk-03566].  Movants filed the Motion anyway, acknowledging it was based "on similar grounds" as its prior motions but neither acknowledging the Court *denied* those motions nor attempting to distinguish this Motion from the Court's prior rulings.  *See* Motion ¶ 1.

17.   Movants' academic motion to "preserve" arguments on grounds the Court has already rejected is a waste of judicial resources.  The Court should deny the Motion.

## II.   MOVANTS CANNOT SHOW "SUBSTANTIAL NEED" FOR MATERIALS WITHHELD UNDER THE DELIBERATIVE PROCESS PRIVILEGE

18.   Movants apparently concede the Oversight Board properly asserted the deliberative process privilege, but argue they have a "substantial need" for deliberative materials.  Motion ¶ 15.[4]  It appears Movants believe they have a substantial need because (a) it is "undisputed" and "uncontested" the Oversight Board "alone" told the Commonwealth "to replace ERS with the Pay-Go system" and "devised the plan" to "restructure ERS in a way that defeated [Movants'] liens (Motion ¶¶ 17-18); and (b) the Court should just "assume" the Oversight Board's deliberative materials support their case because, according to Movants' lead trial counsel, an advisor to the

---

[3] Despite complaining at length about the Oversight Board's production in the Motion (Motion ¶¶ 11-13), Movants never said they intended to challenge it as "inadequate" beyond objecting to privilege assertions. *See* Joint Informative Motion, ECF No. 507 in Case No. 17-bk-03566; Email from M. Papez to W. Dalsen outlining meet/confer subjects, Exhibit A; *see also* Declaration of G. Stewart, ECF No. 512-1 in Case No. 17-bk-03566 at ¶ 14.  Movants also seek no other relief in the Motion beyond challenging privilege assertions, and the Court should deny the Motion in full.

[4] Movants later make a one-paragraph argument to "preserve" an objection to post-March 13, 2017 materials as post-decisional.  Motion ¶ 33.  As addressed below (*see infra* Section VI), that objection is meritless because the Oversight Board has made more than one decision since inception, and Movants supply no reason why the Oversight Board's specific assertions of the deliberative privilege to post-March 13, 2017 decisions do not concern those later decisions.

prior Commonwealth administration *before* the Oversight Board was formed "threatened" the "destruction" of Movants' alleged liens (Motion ¶ 20).  Movants are wrong.

19.     *First*, Movants cannot show a substantial need because the Court has already held Movants have the factual information they need to present their position to the Court in this limited proceeding.  May 6, 2019 Order, ECF No. 493 in Case No. 17-bk-03566, at 5 (holding "[t]he factual information necessary for [Movants] to present their position to the Court on [the Stay Relief Motion] has been produced.").  Movants do not even attempt to address the Court's holding on that issue.  The inquiry should end there.

20.     *Second*, Movants' substantial-need argument amounts to a conspiracy theory, and the Court should reject it.  Movants complain the documents the Oversight Board produced do not show the Oversight Board "devised the plan" to "destroy" their alleged liens, and then claim it is precisely the *lack* of evidence that shows they must be entitled to relief.  *See* Motion ¶ 20.  Rather than looking to the actual document descriptions the Oversight Board provided with its document-by-document privilege logs, Movants then ask the Court to "*assume*" the privileged materials "would provide cover for destruction of [Movants' alleged] lien."  *Id.* (emphasis added).  And rather than addressing the fact that the Oversight Board produced non-privileged, responsive documents after a search using *agreed-upon* terms, custodians, and time-frame, Movants claim unique omnipotence:  they alone "now know" the Oversight Board has not produced "sufficient evidence" in this limited proceeding, without citing any evidence to support that assertion.  Motion ¶ 21.  None of these speculative arguments is fair or appropriate.

21.     *Third*, Movants' claim it is "undisputed" and "uncontested" the Oversight Board "devised the plan" for the Commonwealth to switch to Pay-Go is belied by the sworn statements of their own lead trial counsel.  Mr. Bennett attests that in 2016—before the Oversight Board was

even formed—an advisor to a former Commonwealth administration told him the Commonwealth "could begin taking steps to establish a new means of making pension payments in order to circumvent ERS's obligations to holders of bonds issued by ERS in 2008."  ECF No. 402-1 ¶ 3. Mr. Cunningham says the same thing, but adds the same advisor referred to the new system as a "pay as you go system."  ECF No. 402-2 ¶ 3.  Movants cannot create substantial need by having its lead lawyers swear to certain facts while its other lawyers (or maybe the same ones) claim it is "uncontested" and "undisputed" those facts did not occur.  Movants apparent willingness to say almost anything to prolong discovery disputes in this limited proceeding does not overcome the deliberative privilege,[5] nor does it not show that the Oversight Board "stands on different footing" (Motion ¶ 22) such that the Court should find new merit in Movants' arguments.

22.      *Fourth*, in any event, Movants misstate and misapply *Bhatia-Gautier*.  Movants list some of the factors that Court identified (Motion ¶ 15), but omit the ones most damaging to them: "the relevance of the evidence sought"; "the availability of other evidence"; and "the role of the government in the litigation and issues involved."  *Bhatia-Gautier v. Gobernador*, 199 D.P.R. 59 (P.R. 2017), at 18 [translation at ECF No. 518-1 in Case No. 17-bk-03566].  Here, the Court has already found Movants have the factual information they need to assert their position.  May 6, 2019 Order, ECF No. 493 in Case No. 17-bk-03566, at 5.  Further, the evidence Movants seek is irrelevant to whether the Court will ultimately find diminution in value of Movants' supposed collateral caused by the automatic stay—particularly given the availability and actual production of other evidence sufficient for Movants to assert their position—and Movants' misstatement of

---

[5] Movants' attempt to gloss over these fundamental inconsistencies by conflating a "pay as you go" *type* of pension system with the *legislation* enacted in Puerto Rico that Movants claim was intended to "destroy" their liens (viz. Joint Resolution 188 and Act 106) is another attempt to expand discovery in this narrow proceeding—beyond how the current pay-as-you-go system works and compares to the ERS pension system, into policy discussions as to the *type* of pension system sustainable in Puerto Rico.

the Oversight Board's role contrary to the sworn statements of their own trial counsel does not

weigh in Movants' favor.

## III.   THE OVERSIGHT BOARD PRODUCED RESPONSIVE AND NON-PRIVILEGED FACTUAL INFORMATION IN DELIBERATIVE MATERIALS WHEREVER POSSIBLE, IN ACCORDANCE WITH THE COURT'S GUIDANCE

23.     Movants assert the Oversight Board failed to produce factual material where

possible in deliberative documents, and then cite a litany of documents from the Oversight Board's

privilege logs with snippets from their descriptions.  Motion ¶ 23.  Movants provide no analysis

for any of these documents.  *Id.*  The Court should reject Movants' arguments for two reasons.

24.     *First*, as noted during the May 2, 2019 hearing, the Oversight Board has already

undertaken to produce factual information it believed could be segregated from deliberative

material.  For example, Movants complain Document Numbers 1-4 might have factual information

in them that could be segregated from deliberative material (Motion ¶ 23), but they omit two

critical facts.

- The Oversight Board did *not* redact factual information about ERS finances in those presentations.   For example, for Document Number 2 at Bates number FOMB_ERS_00000319, the Oversight Board specifically did *not* redact factual information about ERS cash flows for 2017, including contribution amounts and amounts of liquid and illiquid assets.  This is precisely the kind of responsive factual information that was capable of being segregated.

- The Oversight Board already addressed this specific issue—using Movants' own demonstrative—in open court at the May 2, 2019 hearing.  After counsel to Movants complained about the Oversight Board's redactions, counsel to the Oversight Board identified *the specific chart* discussed above to show the Oversight Board produced

9

factual information in deliberative documents where possible, in accordance with the

Court's guidance. May 2, 2019 Hearing Tr. at 126:25-127:14.

25. *Second*, given that the Oversight Board produced and did *not* redact responsive

factual information wherever possible in deliberative materials,[6] Movants supply no reason to

believe there is additional "factual" information that bears upon this proceeding that should be

produced. For example, Movants complain (Motion ¶ 23) there may be factual material in a

withheld document regarding revised projections for the Commonwealth fiscal plan (e.g.,

Document Number 17), without saying why those revised projections sent on March 9, 2017 (i.e.,

before the Oversight Board certified the first Commonwealth Fiscal Plan) would matter at all.

26. Movants' assertion that the Oversight Board supplied "self-evidently filler material

to inflate the size of the Board's document production" (Motion ¶ 11) is insulting and false. The

Oversight Board searched agreed-upon terms for agreed-upon custodians for an agreed-upon date

range, and produced non-privileged documents responsive to Movants' requests. Joint Informative

Motion, ECF No. 432 in Case No. 17-bk-03566 ¶ 2. Movants may be upset that their requests

returned documents that appear identical but are not identical electronic documents, or because the

Oversight Board produced multiple copies of documents because Movants requested multiple

custodians who had the same documents, but the Oversight Board reviewed and produced what it

---

[6] For example, in documents with these following beginning Bates numbers: FOMB_ERS_00000096;
FOMB_ERS_00000286; FOMB_ERS_00000191; FOMB_ERS_00000239; FOMB_ERS_00000647;
FOMB_ERS_00000656; FOMB_ERS_00000715; FOMB_ERS_00001223; FOMB_ERS_00001239;
FOMB_ERS_00001264; FOMB_ERS_00001290; FOMB_ERS_00001329; FOMB_ERS_00001332;
FOMB_ERS_00000763; FOMB_ERS_00000877; FOMB_ERS_00000900; FOMB_ERS_00000933;
FOMB_ERS_00000950; FOMB_ERS_00000954; FOMB_ERS_00001000; FOMB_ERS_00001001;
FOMB_ERS_00001009; FOMB_ERS_00001011; FOMB_ERS_00001016; FOMB_ERS_00001031;
FOMB_ERS_00001337; FOMB_ERS_00001377; FOMB_ERS_00002071; FOMB_ERS_00002510;
FOMB_ERS_00006756; FOMB_ERS_00007146; FOMB_ERS_00007162; FOMB_ERS_00007187;
FOMB_ERS_00007213; FOMB_ERS_00007252; FOMB_ERS_00007255; FOMB_ERS_00008213;
FOMB_ERS_00008385; FOMB_ERS_00008897; FOMB_ERS_00008978; FOMB_ERS_00006757;
FOMB_ERS_00009114.

agreed to review and produce.  Further, as the Oversight Board stated via joint informative motion a month ago, ECF No. 465 in Case No. 17-bk-03566 at ¶ 2, the Oversight Board engaged in extensive manual review at significant expense beyond the 7,466 direct-hit documents to ensure it properly redacted direct-hit and family documents for production in response to Movants' requests.

## IV.   THE OVERSIGHT BOARD PROPERLY ASSERTED ATTORNEY-CLIENT PRIVILEGE

27.     Movants assert two grounds to challenge the Oversight Board's assertion of attorney-client privilege.  First, Movants claim (Motion ¶ 25) some of the withheld documents do not "involve" legal advice apparently because the author of a particular email was either an external advisor to the Oversight Board or a member of the Oversight Board.  Second, Movants claim (Motion ¶ 26) the presence of external advisors more generally waives attorney-client privilege.  Both arguments are wrong.

28.     *First*, Movants' argument that communications cannot "involve" legal advice where an author on an email chain is an external advisor is meritless.  Movants supply no authority for that proposition.  *See* Motion ¶ 25.  Worse, Movants omit key portions of the Oversight Board's descriptions provided with its privilege logs in a misleading attempt to make their argument.  For example, Movants claim Document Number 13 is just an email "between Oversight Board members" (Motion ¶ 25), but omit the part that talks about legal advice:  the full description reads, "Email between Oversight Board members forwarding fiscal plan materials *created at the direction of counsel regarding certification of the Commonwealth Fiscal Plan*, with attachments" (emphasis added).  April 29, 2019 Privilege Log at 4.  Another example is Document Number 94, which Movants say is just an email "between" Oversight Board members (Motion ¶ 25), while omitting the part about soliciting legal advice:  "Email from Oversight Board financial advisors to Oversight Board members, staff, *and legal counsel circulating documents soliciting legal advice*

and to prepare for meeting concerning certification of Commonwealth Fiscal Plan, with attachments" (emphasis added). April 29, 2019 Privilege Log at 29. Yet another example is Document Number 112, which Movants claim is "vague" (Motion ¶ 25) but which isn't vague at all and clearly concerns legal advice: "Email between Oversight Board Executive Director and Oversight Board financial advisors *reflecting legal advice and requests for legal advice to counsel, and discussing topics for pension subcommittee meeting concerning the same*" (emphasis added). April 29, 2019 Privilege Log at 35. The Court should reject Movants' baseless and misleading arguments otherwise.[7]

29.     *Second*, as to Movants' argument that the presence of external advisors eliminates privilege (Motion ¶ 26), the Court already has rejected such a sweeping argument in its prior order. ECF No. 509 in Case No. 17-bk-03566, at 6-7. Movants do not even attempt to address this Court's prior order, and instead reiterate the same arguments here they asserted against ERS, the Commonwealth, and AAFAF. Contrary to Movants' assertion (Motion ¶ 27), the First Circuit applied the *Kovel* doctrine in *United States v. Cavallaro*, 284 F.3d 236, 247 (1st Cir. 2002), as this Court recognized in its supplemental order. ECF No. 509 in Case No. 17-bk-03566, at 5, 6-7. Further, contrary to Movants' apparent assertion (Motion ¶ 27), the three-part test from *Columbia Data Products*—a District of Massachusetts decision—cannot override the First Circuit's application of the *Kovel* doctrine in *Cavallaro*. Movants' contention that *Kovel* "cannot" apply in view of the First Circuit's application of it in *Cavallaro* is a clear misstatement of the law.

_____

[7] Further, Document Numbers 13, 94, and 112 are examples of documents where Movants have specifically challenged the assertion of the attorney-client privilege as to them but do *not* challenge the other privileges the Oversight Board has asserted as to those same documents. Exhibit B. As noted above (*see supra* Section I), Movants' partial challenges to the privileges the Oversight Board has asserted raise academic issues that are a waste of time.

30.     The Court also should reject Movants' arguments because they do not identify specific privilege assertions they believe fail the *Cavallaro* test (or any test, for that matter) and why, instead making a blanket statement that "180 of the 224 documents" withheld on the basis of attorney-client privilege are improper because an external advisor was a recipient (Motion ¶ 26). That blanket assertion does not supply any reason why the Oversight Board's specific, document-by-document privilege assertions are improper, and supplies no basis for the Court to find the Oversight Board's advisors were not "necessary, or at least highly useful" to providing legal advice. *Cavallaro*, 284 F.3d at 247 (internal quotation marks omitted). With no specific grounds to challenge any of the Oversight Board's specific, document-by-document assertions of attorney-client privilege, Movants appear to suggest the Court should do Movants' work for them—first by identifying the 180 documents to which Movants make a blanket reference, then evaluating each description for itself, and then determining whether any other privileges remain that would still bar production. The Court should decline to do so, and deny the Motion.

## V.     THE OVERSIGHT BOARD PROPERLY ASSERTED THE WORK PRODUCT DOCTRINE

31.     Movants next challenge the Oversight Board's assertion of the work-product doctrine by making a blanket claim that all 199 documents to which it has asserted that protection, apparently, would have been created "irrespective" of any litigation, and that Movants have demonstrated "substantial need" in any event. Motion ¶ 29. Movants are wrong.

32.     *First*, as a threshold matter, none of the documents Movants specifically identify in their challenge to work-product protection (Motion ¶ 30) were withheld exclusively on work-product grounds. Just as with Movants' challenge to work-product protections asserted by ERS, the Commonwealth, and AAFAF, Movants' challenge here is academic because it would not yield

a production of documents even if it had merit, and the Court need not reach the issue. *See* May 15, 2019 Order, ECF No. 509 in Case No. 17-bk-03566 at 6.

33.    *Second*, as with Movants' blanket attack on the Oversight Board's assertions of attorney-client privilege, Movants' apparent suggestion (Motion ¶ 30) that the Court should do Movants' work for them—first by identifying the 199 documents to which Movants make a blanket reference, then evaluating each description for itself, and then determining whether any other privileges remain that would still bar production—is improper.

34.    *Third*, in any event, Movants' challenge is meritless. To begin, Movants' reliance on *Textron* is misplaced. There, Textron, a publicly traded company, asserted work-product protection in response to a summons from the Internal Revenue Service over documents Textron's in-house lawyers prepared to calculate tax reserves specifically to support Textron's audited financial statements. *U.S. v. Textron, Inc.*, 577 F.3d 21, 22, 25 (1st Cir. 2009). The IRS challenged all of the privileges asserted as to those documents (unlike Movants here), and Textron argued work-product protection was appropriate because "litigation over specific items was always a possibility" while conceding it "was often unlikely." *Id.* at 25. The District Court found that such reserve calculations anticipated litigation with the IRS, and a divided panel of the First Circuit agreed. *Id.* at 25-26. On rehearing *en banc*, a divided First Circuit reversed, finding that the papers at issue were independently required by statute and audit requirements for publicly traded companies, *id.* at 26, and as such were "tax documents" rather than "case preparation materials" prepared in anticipation of litigation. *Id.* at 28-29. Put another way, whether the subject-matter of the tax documents at issue "might conceivably be litigated" did not trigger work-product protection. *Id.* at 29.

35.    Here, the documents over which the Oversight Board has asserted work-product protection have nothing to do with a *Textron* scenario.  Movants do not identify a single document over which the Oversight Board asserted work-product protection that was independently required to be created by statute.  Likewise, Movants do not attempt to analogize a single document over which the Oversight Board has asserted work-product protection to a tax document that "might conceivably be litigated."  Movants cannot again ignore the specific, document-by-document descriptions the Oversight Board provided to make wholesale challenges to the assertion of privileges and protections.

36.    Further, Movants' suggestion (Motion ¶ 30) there was no litigation to justify the Oversight Board's assertion of work-product protection is baseless.  Movants are among the most litigious parties involved in these Title III cases, first filing cases pertaining to the ERS Bonds in 2016 and litigating against ERS, the Commonwealth, and the Oversight Board ever since.  *See, e.g.*, *Altair Global Opportunities Fund (A) LLC v. Garcia-Padilla*, Case No. 16-cv-02696 (D.P.R. Sept. 21, 2016); *The Financial Oversight and Management Board for Puerto Rico v. Altair Global Credit Opportunities Fund (A) LLC et al.*, Case No. 17-ap-213 (D.P.R. July 21, 2017) (litigation pursuant to joint stipulation following Movants' initial motion for stay relief).  Given the constant litigation concerning the ERS Bonds since the Oversight Board's inception, it should be no surprise that the Oversight Board reasonably anticipated, and continues to anticipate, extensive litigation concerning ERS, the ERS Bonds, and the Commonwealth's Pay-Go system.  Further, the Court can take notice of the extensive litigation involving the Oversight Board since its inception as to the Title III cases themselves and as to every aspect of the Title III cases, including litigation over the Commonwealth Fiscal Plan.

37.     Movants' final argument (Motion ¶ 31) is the boilerplate contention they have "made a showing of need" for work-product protected documents.  Movants are wrong.  The correct standard is not "showing of need" but that a party must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  Fed. R. Civ. P. 26(b)(3)(A)(ii).  Here, Movants have shown no substantial need, articulated no undue hardship, and not explained why they have not already obtained what they need (as the Court found) let alone why substantial equivalents are unavailable by other means.

## VI.     MOVANTS' "PRESERVATION" ARGUMENTS ARE BASELESS

38.     Movants assert three final arguments, which they concede the Court has already rejected, "to preserve them for purposes of appeal."  Motion ¶ 32.  None has merit.

39.     *First*, Movants contend (Motion ¶ 33) every document the Oversight Board created after March 13, 2017 cannot be protected by the deliberative privilege because they "derive" from the first Commonwealth Fiscal Plan.  That is plainly wrong.  As is obvious, the Oversight Board has made more than one decision since its inception, including subsequent corrections to and certifications of fiscal plans.  Further, the Oversight Board has specifically asserted the deliberative privilege on a document-by-document basis, and identified the applicable decisions for each such document in its privilege logs.  The Court rejected Movants' argument previously, ECF No. 493 in Case No. 17-bk-03566 at 2-3, and should do so again.

40.     *Second*, Movants claim (Motion ¶ 34) the Oversight Board "obviously" waived attorney-client privilege when it communicated with the Commonwealth and AAFAF because those parties are adverse to the Oversight Board "as a matter of law."  This, too, is plainly wrong.  As the Court held, entities adverse to each other for certain purposes are not adverse to each other for other purposes.  ECF No. 493 in Case No. 17-bk-03566 at 3-4.  Here, Movants supply no basis

to conclude the Oversight Board, the Commonwealth, and AAFAF were "adverse" to each other as to any of the specific documents for which the Oversight Board has asserted attorney-client privilege and on which those parties appear.

41.     *Third*, Movants claim (Motion ¶ 35) the crime-fraud exception to privilege applies in a blanket sense to the Oversight Board's privilege assertions. Movants have no good-faith basis to make this argument—which the Court has already rejected, ECF No. 493 in Case No. 17-bk-03566 at 8—and supply no reason for the Court to find new merit in this argument.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the Motion.

Dated: May 23, 2019
New York, NY

Respectfully submitted,

*/s/ Margaret A. Dale*

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
Jeffrey W. Levitan (*pro hac vice*)
Margaret A. Dale (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel: (212) 969-3000
Fax: (212) 969-2900
Email: mbienenstock@proskauer.com
Email: brosen@proskauer.com
Email: jlevitan@proskauer.com
Email: mdale@proskauer.com


Luis F. del Valle-Emmanuelli
USDC-PR No. 209514
P.O. Box 79897
Carolina, Puerto Rico 00984-9897
Tel. 787.977.1932
Fax. 787.722.1932
dvelawoffices@gmail.com

OF COUNSEL FOR
A&S LEGAL STUDIO, PSC
434 Avenida Hostos
San Juan, PR 00918
Tel: (787) 751-6764/ 763-0565
Fax: (787) 763-8260


*Attorneys for the Financial Oversight and Management Board for Puerto Rico, as representative of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico*

18

### <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on May 23, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

*/s/ Luis F. del Valle-Emmanuelli*
Luis F. del Valle-Emmanuelli
