# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>    as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>    Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## RESPONSE OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS TO ORDER TO SHOW CAUSE

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

The Ad Hoc Group of General Obligation Bondholders (the "GO Group")[2] respectfully submits this Response to the Court's *Order Concerning Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No. 6935, the "Show Cause Order"). In support of its Response, the GO Group respectfully states as follows:

1. The Show Cause Order directed the GO Group to address whether, in light of the Court's issuance of the *Memorandum Opinion and Order Denying Motion of the Ad Hoc Group of General Obligation Bondholders for Entry of an Order Establishing Conditional Omnibus Claims Objection Procedures* (Dkt. No. 6891, the "Procedures Order"), the Court should terminate without prejudice the *Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligation Bonds* (Dkt. No. 6099, the "Conditional Objection"). As we explain below, the Conditional Objection should not be terminated. In light of recent discussions with counsel for the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") and the Official Committee of Unsecured Creditors (the "UCC"), as well as recent filings by the UCC, it now appears that the Court's Procedures Order rests in part on an apparent misapprehension of those parties' litigation positions. Accordingly, the Conditional Objection should be held in abeyance pending clarification of those positions and a potential motion for reconsideration of the Procedures Order by the GO Group.

---

[2] Members of the GO Group file this response exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

**BACKGROUND**

2.      On January 14, 2019, the Financial Oversight and Management Board for Puerto Rico and the Official Committee of Unsecured Creditors filed the Selective Claim Objection[3] challenging the validity of general obligation bonds ("GO Bonds") issued by the Commonwealth of Puerto Rico in 2012 and 2014 (the "Selectively Challenged GO Bonds").

3.      On April 2, 2019, the GO Group filed the Conditional Objection, in which the GO Group conditionally objected to all claims asserted against the Commonwealth based on or relating to bonds issued by the Puerto Rico Public Buildings Authority (the "PBA," and such bonds, "PBA Bonds") or leases entered into by the PBA (the "PBA Leases"), as well as claims based on or relating to GO Bonds issued beginning in fiscal year 2010. As the Conditional Objection explains, acceptance of the Selective Claim Objection's premise that the PBA is a sham to evade the Commonwealth's constitutional debt limit (as well as its premise that such a conclusion should be applied retroactively to invalidate previously issued bonds) would require invalidation of all claims relating to the PBA Bonds or the PBA Leases, which would in turn eliminate the Selective Claim Objection's primary basis for challenging the validity of the Selectively Challenged GO Bonds. Conditional Objection 3-4, 19-26. In the alternative, accepting the misguided "logic" of the Selective Claim Objection would require that all GO Bonds and PBA Bonds—not just the Selectively Challenged Bonds—be tested against the constitutional debt limit, thus making GO Bonds and PBA Bonds issued beginning in Fiscal Year 2010 subject to potential invalidation. *Id.* at 4-6, 26-34. That consistent application is particularly crucial, the Conditional Objection noted,

---

[3] *Omnibus Objection of (I) Financial Oversight and Management Board, Acting Through Its Special Claims Committee, and (II) Official Committee of Unsecured Creditors, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted By Holders of Certain Commonwealth General Obligation Bonds*, Dkt. No. 4784.

2

because if bonds issued prior to the Selectively Challenged Bonds were invalid, those prior bonds could not then count against the debt limit when calculating whether the Selectively Challenged Bonds were valid. *Id.* at 5-6.

4. Concurrently with the Conditional Objection, the GO Group filed a motion seeking authorization to proceed with the Conditional Objection on an omnibus basis and to establish procedures for litigating the Conditional Objection (Dkt. No. 6104, the "Procedures Motion").

5. On May 10, 2019, the Court issued the Procedures Order, in which it denied the GO Group's Procedures Motion without prejudice. The Court primarily reasoned that, because the GO Group does not espouse the premises of the Selective Claim Objection, the Conditional Objection "appears to present a hypothetical request for relief instead of an actual case or controversy," and "appears to seek an advisory opinion that would not be justiciable in the present posture of the matter." Procedures Order 7. The Court also concluded that, under these circumstances, "it would not be prudent to commence giving notice" to the holders of the GO Bonds and PBA Bonds that are implicated by the Conditional Objection, as the initial litigation procedures proposed by the GO Group had contemplated. *Id.* at 8.

6. In the Procedures Order, the Court expressed the view that "[t]he issues raised in the Conditional . . . Objection may ripen into concrete disputes between adverse parties in the course" of litigation on the Selective Claim Objection and the adversary proceeding captioned *Financial Oversight and Management Board for Puerto Rico et al. v. Puerto Rico Public Buildings Authority*, Adv. Proc. No. 18-149. Procedures Order 8. The Court also stated that "[t]hese issues may also be raised in certain of the adversary proceedings against bondholders commenced by the Oversight Board and the Creditors' Committee subsequent to the Hearing" on the Procedures Motions (*id.* at 8 n.6), a reference to a series of adversary proceedings filed by the Oversight Board

3

and UCC seeking avoidance of certain payments of principal and interest on certain bonds (Adv. Proc. Nos. 19-281 to 19-288, the "Clawback Actions"). The Court characterized these actions as "challeng[ing] the validity of certain general obligation bonds and PBA bonds." Procedures Order 8 n.6.

7. The Court's characterization of the Clawback Actions is consistent with a straightforward reading of the complaints filed in those cases by the Oversight Board and UCC. Those complaints each define the term "Challenged Bonds" to include all GO Bonds and PBA Bonds issued beginning in March 2011 (*e.g.*, Dkt. No. 1 in Adv. Proc. No. 19-281, ¶¶ 16-22, 30) and seek a declaration that the "[t]he Challenged Bonds are null and void" because the Commonwealth had exceeded its constitutional debt limit at the time the Challenged Bonds were issued (*e.g.*, *id.* ¶ 106).

8. Nonetheless, the Court's characterization of the Clawback Actions appears not to correspond to the understanding of the Oversight Board and UCC. As an initial matter, each complaint in the Clawback Actions includes a confusingly worded footnote explaining that:

> The Objectors [*i.e.*, the Oversight Board and the UCC] reserved their rights in the Joint Claim Objection "to raise additional objections to the validity of other issuances of GO bonds, including on the basis that such bonds were issued in violation of the Debt Service Limit, whether because certain other debt was not properly included in the Debt Service Limit calculation or otherwise." Accordingly, the Plaintiffs include herein out of an abundance of caution additional issuances of GO bonds (i.e., the Challenged GO Bonds issued in 2011) in the event that the Plaintiffs may, at a later date, object to the validity of such bonds. In any event, these earlier GO bond issuances are the subject of the pending *Omnibus Conditional Objection of the Ad Hoc Group of General Obligation Bondholders to Claims Filed or Asserted by the Public Buildings Authority, Holders of Public Buildings Authority Bonds, and Holders of Certain Commonwealth General Obligations Bonds*.

*E.g.*, Dkt. No. 1 in Adv. Proc. No. 19-281, ¶ 16 n.5 (citations omitted). Thus, the Clawback Actions could be understood as not "challeng[ing] the validity" of GO Bonds issued beginning in March 2011 (Procedures Order 8 n.6), even though they seek in Count I a declaration that those

4

bonds are "null and void." Rather, the Oversight Board and UCC appear to have viewed their complaints as placeholders for challenges that they might decide to assert in the future.

9. That reading of the Clawback Actions is bolstered, as least as to the UCC, by the UCC's recent filing of an omnibus claim objection targeting GO Bonds issued beginning in March 2011 (Dkt. No. 7057, the "2011 GO Bond Objection"). The UCC's filing of the 2011 GO Bond Objection appears to reflect its understanding that its similar challenge to the same bonds in the Clawback Actions was conditional or provisional.

10. Moreover, although the complaints in the Clawback Actions do not contain any similar caveats with respect to the PBA Bonds that they likewise allege are "null and void" (*e.g.*, Dkt. No. 1 in Adv. Proc. No. 19-281, ¶ 106), the Oversight Board and the UCC may view their challenges to those bonds as conditional as well. In discussions following the filing of the Clawback Actions, counsel for the Oversight Board and UCC have stated that the Oversight Board and UCC have not yet definitively determined whether to challenge the validity of the PBA Bonds that are implicated by the Clawback Actions. Indeed, the UCC's position in the 2011 GO Bond Objection is consistent with that understanding, as the UCC states there that it "reserves its right to seek disallowance of any claims asserted against the Commonwealth relating to PBA Bonds." 2011 GO Bond Objection ¶ 3 n.6). That reservation would presumably be unnecessary if the UCC viewed those bonds as having already been challenged through the filing of the Clawback Actions.

## DISCUSSION

11. The Conditional Objection should not be terminated (even without prejudice) in light of the conclusions set forth in the Procedures Order because those conclusions appear to have been the product, at least in part, of the Court's misapprehension of the litigation positions of the Oversight Board and UCC. As explained above, the Court viewed the complaints filed by

5

Oversight Board and UCC in the Clawback Actions as "challeng[ing] the validity of certain general obligation bonds and PBA bonds" implicated therein. Procedures Order at 8 n.6. In fact, however, the Oversight Board and UCC may well have viewed their challenges—other than their challenges to the Selectively Challenged GO Bonds issued in 2012 and 2014—as conditional in nature. See ¶¶ 8-10, *supra*. Indeed, the complaints filed by the Oversight Board and UCC may be proceeding on the very conditional basis that they argued to this Court rendered the Conditional Objection unripe and premature. See Dkt. No. 6261, ¶¶ 10-11; Dkt. No. 6417, ¶ 4.

12. In light of the risk that the Court's disposition of the Procedures Motion was affected by confusion created by the Oversight Board and the UCC in their filings in the Clawback Actions, it would be appropriate to require the Oversight Board and UCC to clarify their positions with respect to the validity of the bond issuances implicated by the Clawback Actions. In particular, the Oversight Board and the UCC should be directed to state, with respect to each series of GO Bonds and PBA Bonds implicated by the Clawback Actions, whether they are challenging the validity of and objecting to claims asserted in connection with such bonds.

13. That clarification would have substantial independent value for all parties in interest. For starters, it would clarify the stakes of the Selective Claim Objection. Each complaint in the Clawback Actions contains an appendix purporting to show that extending the mathematical assumptions of the Selective Claim Objection to all issuances of GO Bonds and PBA Bonds would result in the invalidation of such bonds beginning with those issued in March 2011. *E.g.*, Dkt. No. 1-14 in Adv. Proc. No. 19-281; see also Dkt. No. 1 in Adv. Proc. No. 19-281, ¶ 73. And while the UCC has now filed a formal objection to claims based on GO Bonds issued beginning in March 2011, the Oversight Board appears to remain on the fence with respect to those issuances. Moreover, neither the UCC nor the Oversight Board has articulated a clear position with respect

6

to the PBA Bonds at issue in the Clawback Actions. We can discern no valid justification for keeping parties in interest in suspense as to whether the Oversight Board and UCC will seek to deploy the legal conclusion they hope to obtain through the Selective Claim Objection against holders of other bond issuances.

14. Clarity on this score would also be beneficial because whether a claim is the subject of a pending objection may have important procedural implications in these Title III cases. For example, a claim as to which an objection is pending may not be deemed an allowed claim, see 11 U.S.C. § 502(a), and only allowed claims may receive distributions in a plan of adjustment, see Fed. R. Bankr. P. 3021; *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987). Holders of disputed claims—*i.e.*, those as to which an objection remains pending—must be reserved for, but they are not entitled to receive distributions until the dispute has been resolved. Basic fairness and procedural regularity therefore make it absolutely critical that the Oversight Board and UCC be clear and transparent as to which series of bonds they are challenging—and that any selective targeting of certain bonds but not other similarly situated ones occur in plain view.

15. More immediately, clarification from the Oversight Board and UCC is essential because it would inform the GO Group's decision whether to pursue reconsideration of the Procedures Motion. It is unlikely that the Court would have accepted the Oversight Board's and UCC's urging (Dkt. No. 6261, ¶¶ 10-11; Dkt. No. 6417, ¶ 4) to find the Conditional Objection impermissibly "hypothetical" (Procedures Order 7) had the Court appreciated that the Oversight Board and UCC were themselves pursuing adversary proceedings that are, if anything, **more** conditional than the GO Group's Conditional Objection. Confirmation from the Oversight Board and UCC regarding their understanding of the challenges pressed in the Clawback Actions

7

therefore has the potential to directly undermine the basis for the Court's ruling in the Procedures Order.

16. Requiring the Oversight Board and UCC to provide such clarification is all the more warranted because the GO Group likely has other persuasive grounds for seeking reconsideration of the Procedures Order, which would be bolstered by the clarification offered by the Oversight Board and UCC. For example, the Court stressed that the GO Group did not "actually even support the relief described in the Conditional . . . Objection"—namely, disallowance of the claims implicated therein—and that this relief "is not currently being pressed by any party in interest." Procedures Order 7. The Court apparently viewed this fact as a dispositive defect in the Conditional Objection. As explained in our reply in support of the Procedures Motion (Dkt. No. 6429, at 7), however, the impleader device demonstrates that a party need not endorse the premises of a claim that has been asserted against it in order to conditionally pursue relief against another party that is predicated on the success of that claim. Under Federal Rule of Civil Procedure 14, "[a] defending party" may implead "a nonparty who is or *may be* liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a) (emphasis added). The original defendant may take that step even though it continues to defend against liability on the claim asserted against it, and thus argues that the third-party defendant should not be held liable either. In that scenario, the claim against the third-party defendant does not become impermissibly hypothetical or advisory because it is predicated on the plaintiff succeeding on its claim.

17. The Procedures Order rejected our analogy to Rule 14 because Rule 14 is not incorporated in a contested matter and because Rule 14 does not expand the scope of the federal courts' jurisdiction under Article III of the Constitution. Procedures Order 8. But we did not invoke Rule 14 because that provision is directly applicable to contested matters (absent an order

8

of the Court making it applicable, see Fed. R. Bankr. P. 9014(c)), and we do not contend that a procedural rule can expand the scope of Article III. Rather, we invoked Rule 14 as an *example* in which it is entirely uncontroversial that a party may assert a conditional claim without endorsing each of the premises on which it is based. If the federal courts' jurisdiction under Article III encompasses conditional claims brought through the impleader device—as is confirmed by longstanding practice under Rule 14—then it follows that Article III's limits do not prevent the GO Group from proceeding with the Conditional Objection.

18. In sum, to the extent the Oversight Board and UCC claim the Clawback Actions seek relief premised on the invalidity of bonds that the Oversight Board and UCC may or may not challenge, those actions are no more concrete or ripe than the Conditional Objection. If the Oversight Board and UCC acknowledge that the bonds identified as challenged in the Clawback Actions are, in fact, disputed claims, then certain legal consequences will flow from that position. It serves no legitimate interest, however, to permit the Oversight Board and UCC to try to have it both ways while simultaneously dismissing the Conditional Objection.

## CONCLUSION

19. For the foregoing reasons, the Oversight Board and the UCC should be directed to address whether they have "challenge[d] the validity" of the GO Bonds and PBA Bonds at issue in the Clawback Adversary Proceedings by stating, with respect to each series of GO Bonds and PBA Bonds implicated therein, whether they are challenging the validity of and objecting to claims asserted in connection with such bonds. The Conditional Objection should be held in abeyance pending clarification of the Oversight Board's and UCC's positions, which we respectfully submit can be accomplished in advance of the Omnibus Hearing scheduled for June 12, 2019. The GO

9

Group should be afforded a reasonable period of time following receipt of that clarification to determine whether a motion seeking reconsideration of the Procedures Order is warranted.

| | |
|---|---|
| Dated: May 23, 2019 | Respectfully submitted, |
| /s/ Ramón Rivera Morales | /s/ Mark T. Stancil |
| J. Ramón Rivera Morales | Mark T. Stancil (admitted *pro hac vice*) |
| USDC-PR Bar No. 200701 | Gary A. Orseck (admitted *pro hac vice*) |
| Andrés F. Picó Ramírez | Kathryn S. Zecca (admitted *pro hac vice*) |
| USDC-PR Bar No. 302114 | Donald Burke (admitted *pro hac vice*) |
| JIMÉNEZ, GRAFFAM & LAUSELL | ROBBINS, RUSSELL, ENGLERT, ORSECK, |
| P.O. Box 366104 | UNTEREINER & SAUBER LLP |
| San Juan, PR 00936 | 2000 K Street, N.W., 4th Floor |
| Telephone: (787) 767-1030 | Washington, DC 20006 |
| Facsimile: (787) 751-4068 | Telephone: (202) 775-4500 |
| Email: rrivera@jgl.com | Email: mstancil@robbinsrussell.com |

*Counsel to the Ad Hoc Group of General Obligation Bondholders*