## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>X | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE<br>GOVERNMENT OF THE COMMONWEALTH OF<br>PUERTO RICO,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>x | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

**OPPOSITION TO RESPONDENTS' URGENT MOTION IN LIMINE
TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING
APRIL 27, 2016 MEETING WITH MOVANTS' REPRESENTATIVES**

## <u>TABLE OF CONTENTS</u>

**PAGE**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................ 2

ARGUMENT ..................................................................................................................... 7

I.  Evidence About The April 27, 2016 Meeting Is Relevant To Whether The
    Bondholders' Collateral Includes PayGo Fees ......................................................... 7

II. Evidence About The April 27, 2016 Meeting Is Not A Waste Of Time ..................... 13

III. Exclusion Would Be Premature .............................................................................. 16

CONCLUSION .................................................................................................................. 16

## TABLE OF AUTHORITIES

PAGE

CASES

*Bielunas v. F/V Misty Dawn, Inc.*,
   621 F.3d 72 (1st Cir. 2010) ......................................................................................7, 8, 13

*Cooper v. Harris*,
   137 S. Ct. 1455 (2017) ..........................................................................................12

*Culebras Enterprises Corp. v. Rivera-Rios*,
   846 F.2d 94 (1st Cir. 1988) ....................................................................................15

*Grella v. Salem Five Cent Sav. Bank*,
   42 F.3d 26 (1st Cir. 1994) ....................................................................................9, 10

*Guzmán v. Calderón*,
   2005 TSPR 33, 164 D.P.R. 220 (2005) ..........................................................................11

*Harris v. Rivera*,
   454 U.S. 339 (1981) (per curiam) ..............................................................................16

*In re Fin. Oversight & Mgmt. Bd. for P.R.*,
   914 F.3d 694 (1st Cir. 2019) ................................................................................6, 10

*Packgen v. Berry Plastics Corp.*,
   847 F.3d 80 (1st Cir. 2017) ....................................................................................9

*Peaje Invs. LLC v. García-Padilla*,
   845 F.3d 505 (1st Cir. 2017) ................................................................................4, 5

*Ritch v. AM Gen. Corp.*,
   No. 93-451-SD, 1997 WL 834214 (D.N.H. Nov. 17, 1997) ....................................................16

*Sec'y of Labor v. DeSisto*,
   929 F.2d 789 (1st Cir. 1991) ..................................................................................14

*Smith & Nephew, Inc. v. Interlace Med., Inc.*,
   No. 10-10951-RWZ, 2012 WL 3560811 (D. Mass. Aug. 17, 2012) ........................................16

*United States v. Guzman-Montanez*,
   756 F.3d 1 (1st Cir. 2014) .....................................................................................7

*United States v. McMahon*,
   938 F.2d 1501 (1st Cir. 1991) ................................................................................13

**STATUTES**

19 L.P.R.A. § 2106(2) (2008) ....................................................................................7

19 L.P.R.A. § 2212(64)(A) to (C) ........................................................................8, 11

19 L.P.R.A. § 2265(a) ................................................................................................7

11 U.S.C. § 362(a) ....................................................................................................5

48 U.S.C. § 2161(a) ..................................................................................................5

48 U.S.C. § 2194 ......................................................................................................3

H.R. 5278, 114th Cong. (2016) ................................................................................3

Act No. 106, 2017 P.R. Laws Act 106 ......................................................................5

P.R. House Joint Resolution 188 of 2017 ................................................................5

**OTHER AUTHORITIES**

Fed. R. Evid. 401 ......................................................................................................7

Fed. R. Evid. 801(d)(2)(A), (C) ................................................................................9

Fed. R. Evid. 803(3) ..................................................................................................9

Model Rules of Prof'l Conduct R. 3.7(a)(1) (Am. Bar. Ass'n 2018) ....................15, 16

2 Weinstein's Federal Evidence § 403.06 ................................................................14

The Bondholders[1] respectfully submit this opposition to *Respondents' Urgent Motion in Limine to Exclude Evidence and Argument Regarding an Alleged April 27, 2017 Meeting With Movants' Representatives*, Docket No. 513 in Case No. 17-bk-03566 (the "<u>Motion in Limine</u>"), which seeks to preclude the Bondholders from offering certain evidence in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay*, Docket No. 289 in Case No. 17-bk-03566 (the "<u>Stay Relief Motion</u>"). The Bondholders are secured creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>"), holders of bonds issued by ERS in 2008 (the "<u>ERS Bonds</u>"). Respondents are ERS, the Commonwealth of Puerto Rico (the "<u>Commonwealth</u>"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("<u>AAFAF</u>").

## **INTRODUCTION**

1.      In their Motion in Limine and elsewhere, Respondents characterize the issues in the Stay Relief Motion as exceedingly narrow. That would indeed be the case if Respondents would stipulate that the Bondholders have a colorable claim to a security interest in the PayGo fees that employers now pay to fund the pension costs of their former employees. But it is not. Respondents

---

[1] The Bondholders are Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., SV Credit, L.P., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.

vastly broadened the scope of issues in the Stay Relief Motion when they raised the defense that changes made in 2017 to the way pensions are funded destroyed altogether the Bondholders' collateral rights by replacing the historic method of funding pensions—employer contributions paid to ERS—with PayGo fees paid to the Commonwealth's Treasury. Yet Respondents now seek to preclude the Bondholders from offering highly relevant, non-privileged evidence showing that the adoption of a PayGo system was nothing more than a scheme intended to circumvent the Bondholders' collateral rights. Indeed, the evidence at issue in the Motion in Limine is virtually the only direct evidence available about this scheme because Respondents interposed broad privilege claims to deny the Bondholders access to the full record. But Respondents cannot have it both ways. By raising the pension system's transition to PayGo as a defense to the Bondholders' Stay Relief Motion, Respondents made the facts surrounding that change—including the April 2016 meeting that is the subject of the Motion in Limine—directly relevant. The Court should deny the Motion.

## BACKGROUND

2.      When ERS issued approximately $3 billion in ERS Bonds in 2008, it gave the holders of those bonds an extensive security package to protect their investment. ERS granted the Bondholders, through a Fiscal Agent, a security interest in and lien on certain property of ERS ("Pledged Property"), as defined in a Bond Resolution dated January 24, 2008. Pledged Property is defined broadly to include, *inter alia*, "all employer contributions received by ERS" and "any assets in lieu thereof or derived thereunder"; all "right, title and interest of [ERS] in and to" those contributions; "all rights to receive the same"; and "any and all cash and non-cash proceeds, products, offspring, rents and profits from any of the Pledged Property," including, "without limitation, those from the sale, exchange, transfer, collection, loss, damage, disposition, substitution or replacement of" such property. ERS Bond Resolution § 501 & Ex. B, VI-33, VI-

36, VI-37. A central component of that collateral package was employer contributions and the
right to receive those contributions—*i.e.*, payments that the Commonwealth, and its municipalities
and public corporations, made to fund pensions for their employees.

3.      By 2015, ERS was at risk of becoming insolvent. *See* Congressional Task Force on
Economic Growth in P.R., Report to the House and Senate at 12–14, 114th Cong. (Dec. 20, 2016).
On April 27, 2016, Bruce Bennett and John Cunningham, counsel to the Bondholders, met with
James Millstein, a prominent restructuring expert and an advisor to the Commonwealth, to discuss
the outstanding ERS Bonds. *See* Decl. of Bruce Bennett ¶ 3, Docket No. 402-1 in Case No. 17-bk-
03566, attached hereto as Ex. A; Decl. of John Cunningham ¶ 3, Docket No. 402-2 in Case No.
17-bk-03566, attached hereto as Ex. B. At that meeting, Millstein informed Bennett and
Cunningham that "the Commonwealth could begin taking steps to establish a new means of
making pension payments in order to circumvent ERS's obligations to holders of bonds issued by
ERS in 2008." Bennett Decl. ¶ 3; Cunningham Decl. ¶ 3. In doing so, Millstein "referred to the
new system as a 'pay as you go' system." Cunningham Decl. ¶ 3.

4.      Congress passed PROMESA several months later, creating a federal Oversight
Board to "to assist the Government of Puerto Rico, including instrumentalities, in managing its
public finances." H.R. 5278, 114th Cong. (2016). The passage of PROMESA triggered an
automatic stay of the Commonwealth's obligations. *See* 48 U.S.C. § 2194. In September 2016,
shortly after the automatic stay went into effect, the Bondholders moved for relief from the stay in
the absence of adequate protection. In opposing that motion, ERS argued, *inter alia*, that the
Bondholders were adequately protected because of their "valid and enforceable liens over
hundreds of millions of dollars of ERS revenue, which [would] continue to grow." *Resp't
Employees Retirement System of the Government of the Commonwealth of Puerto Rico's Br. in*

*Opp'n to Mot. for Relief From the PROMESA Automatic Stay*, No. 16-cv-02696, Docket No. 52, at 10 (Oct. 26, 2016). Likewise, the Commonwealth argued that "[t]he security interest and lien in favor of [the Bondholders] is indefinite, and ends only upon satisfaction of the ERS's outstanding debt obligations." *Resp'ts' Br. in Opp'n to Mot. for Relief From the PROMESA Automatic Stay*, No. 16-cv-2696, Docket No. 53, at 5 (Oct. 26, 2016). Specifically relying upon these assurances from ERS and the Commonwealth, this Court denied the Bondholders' motion.

5.     On appeal, the First Circuit vacated the denial and remanded the case for further proceedings on the question of whether the Bondholders were adequately protected. *Peaje Invs. LLC v. García-Padilla*, 845 F.3d 505, 509, 515–16 (1st Cir. 2017). The First Circuit recognized that even "prior to the enactment of the current bankruptcy stay provision, the Supreme Court had recognized that creditors are constitutionally entitled to protection 'to the extent of the value of the[ir] property.'" *Id.* at 511 (quoting *Wright v. Union Cent. Life Ins. Co.*, 311 U.S. 273, 278 (1940)). It held that even a temporary diversion of the Bondholders' collateral and the resulting uncertainty about ERS's ability to repay the ERS Bonds established a legally sufficient claim that the Bondholders lacked adequate protection. *Id.* at 514 (the Bondholders "included in their district court filings a 2014 statement by ERS that uncertainty about future employer contributions could affect 'the repayment of the [ERS] bond payable'"); *see also* Unofficial Tr. at 36:21–37:1, *Altair Glob. Credit Opportunities Fund (A), LLC v. Garcia-Padilla*, No. 16-2433 (1st Cir. 2016) ("But I'm just having great difficulty with your argument that there's this seven-month window where the government can entirely, entirely destroy the value of collateral a hundred percent and yet that wouldn't in and of itself be good cause.").

6.     Meanwhile, on March 13, 2017, the Oversight Board ordered the Commonwealth to transition its pension system from the ERS system to a "pay-as-you-go" or PayGo system. This,

of course, was precisely what Millstein had said at the April 2016 meeting when he described how the Commonwealth might circumvent the Bondholders' security interests. *See* P.R. Fiscal Agency & Fin. Advisory Auth., *Fiscal Plan for Puerto Rico* 21 (Mar. 13, 2017), http://www.aafaf.pr.gov/assets/planfiscal13demarzo2017.pdf. Consistent with the Board's instructions, the Puerto Rico Legislative Assembly worked with the Board to implement a PayGo system in two enactments during the summer of 2017. *See* P.R. House Joint Resolution 188 of 2017; Act No. 106, 2017 P.R. Laws Act 106.

7.     After the First Circuit's decision in *Peaje*, the parties entered into a series of stipulations to provide the Bondholders with adequate protection for the interim. *Order Approving Stipulation, Setting Aside Hr'g And Dismissing Case*, No. 16-cv-02696, Docket No. 83 (Jan. 17, 2017); *Joint Stipulation and Order*, No. 16-cv-02696, Docket No. 86, at 3 (Apr. 11, 2017); *Order Approving Stipulation*, No. 17-bk-03566, Docket No. 171 (July 17, 2017). On May 21, 2017, the Oversight Board filed a petition commencing a case under Title III of PROMESA on behalf of ERS. ERS's Title III filing triggered the operation of a second automatic stay to protect ERS's property. 11 U.S.C. § 362(a); 48 U.S.C. § 2161(a). In July 2018, Respondents refused to continue the interim protections. The Bondholders then filed another motion to lift the automatic stay in the absence of adequate protection, which is the Stay Relief Motion presently before the Court.

8.     In support of the Stay Relief Motion, the Bondholders argued that, as secured creditors, they were entitled to adequate protection or relief from the automatic stay because the value of the Bondholders' collateral had decreased during the term of the stay. In opposition, the Oversight Board argued that the Bondholders were not entitled to relief from the automatic stay because of Joint Resolution 188 and Act 106. In particular, the Board maintained that the Bondholders had no collateral to begin with because the new legislation had irrevocably altered

- 5 -

the Bond Resolution's system for the remittance and handling of employer contributions. *See, e.g.,
Debtor's Opp'n to Mot. of Certain Secured Claimholders of Employees Retirement System of
Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* at 12, Docket No.
3465 in Case No. 17-bk-03283 and Docket No. 292 in Case No. 17-bk-03566 (the automatic stay
is "not at issue" because "Movants are complaining about legislation by the Commonwealth
creating a new pension system that does not generate Employers' Contributions"). Since there was
no collateral, the logic went, there was nothing that could be diminished in value.

9.     In addition to contending that Act 106 and Joint Resolution 188 had eliminated the
Bondholders' collateral, ERS recanted its prior judicial admissions—that the Bondholders held
valid and enforceable liens that would continue indefinitely—and argued that the Bondholders'
liens were unperfected and unenforceable. The Court agreed, holding that the Bondholders'
security interests in ERS's property were unperfected and therefore avoidable pursuant to § 544 of
the Bankruptcy Code. *See Op. and Order Granting and Den. in Part Cross Mots. for Summ. J.*,
Docket No. 215 in Case No. 17-ap-00213 (Aug. 17, 2018); *Order*, Docket No. 318 in Case No.
17-bk-03566 (Aug. 21, 2018). The First Circuit reversed, finding that the Bondholders possess
perfected and non-voidable security interests in ERS's property. It held "that the Bondholders
satisfied the filing requirements for perfection as of December 17, 2015," and "PROMESA's
incorporation of the Bankruptcy code does not allow for the avoidance of perfected liens." *In re
Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d 694, 703, 721 (1st Cir. 2019). The court of appeals
remanded the matter to this Court, leading to the renewal of the Stay Relief Motion. A final hearing
on that motion is calendared for July 2, 2019. Respondents' Motion in Limine seeks to preclude
the Bondholders from introducing any evidence regarding the April 2016 meeting at that hearing.

## ARGUMENT

I.   **Evidence About The April 27, 2016 Meeting Is Relevant To Whether The
     Bondholders' Collateral Includes PayGo Fees.**

10.     The thrust of Respondents' motion is that evidence about the April 27, 2016

meeting should be excluded as irrelevant. But a "relevancy-based argument is usually a tough sell"

in the First Circuit. *Bielunas v. F/V Misty Dawn, Inc.*, 621 F.3d 72, 76 (1st Cir. 2010). "[R]elevant

evidence is 'evidence having *any* tendency to make the existence of any fact that is of consequence'

more or less probable." *Id.*; *see also* Fed. R. Evid. 401 ("Evidence is relevant if: (a) it has any

tendency to make a fact more or less probable than it would be without the evidence; and (b) the

fact is of consequence in determining the action."). Thus, "evidence need not definitively resolve

a key issue in the case" to be relevant, so long as it "move[s] the inquiry forward to some degree."

*Bielunas*, 621 F.3d at 76. And so "[e]vidence may be 'relevant' under Rule 401's definition, even

if it fails to prove or disprove the fact at issue—whether taken alone or in combination with all

other helpful evidence on that issue." *United States v. Guzman-Montanez*, 756 F.3d 1, 7 (1st Cir.

2014) (quoting *United States v. Candelaria-Silva*, 162 F.3d 698, 704 (1st Cir. 1998)).

11.     Evidence about the April 2016 meeting easily meets this test. In support of the Stay

Relief Motion, the Bondholders intend to show that their perfected liens continue in the PayGo

fees. As the Bondholders have explained, under Uniform Commercial Code § 9-315,

> (1) a security interest or agricultural lien continues in collateral notwithstanding sale, lease,
> license, exchange, or other disposition thereof unless the secured party authorized the
> disposition free of the security interest or agricultural lien; and

> (2) a security interest attaches to any identifiable proceeds of collateral.

19 L.P.R.A. § 2265(a); *see also* 19 L.P.R.A. § 2106(2) (2008). "Proceeds" include, *inter alia*,

"[w]hatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral,"

"whatever is collected on, or distributed on account of, collateral," or "rights arising out of

collateral." 19 L.P.R.A. § 2212(64)(A) to (C).[2] Whether the Bondholders have a lien on PayGo

fees under these provisions will depend, in part, on whether the PayGo fees are, for example,

"rights arising out of" the employer contributions or other Pledged Property described in the Bond

Resolution or "identifiable proceeds" from a "sale, lease, license, exchange, or other disposition"

of Pledged Property under Puerto Rico law. Evidence about the April 2016 meeting, at which an

advisor to the Commonwealth informed the Bondholders' counsel that the Commonwealth might

establish a "pay as you go" system precisely to divert employer contributions away from the

Bondholders, is directly relevant to that question. *Bielunas*, 621 F.3d at 76 ("[R]elevant evidence

is 'evidence having *any* tendency to make the existence of any fact that is of consequence' more

or less probable.").

12.    Respondents mischaracterize the proofs about the April 2016 meeting as being,

somehow, about legislative intent. This is flatly untrue. The admissions made by Millstein at the

meeting are probative of the relationship between the longstanding ERS employer contributions

and the later PayGo fees.  Indeed, Millstein is reported by two witnesses as having said:

> the Commonwealth could begin taking steps to establish a new means of making pension
> payments in order to circumvent ERS's obligations to holders of bonds issued by ERS in
> 2008

(Bennett Decl. ¶ 3; Cunningham Decl. ¶ 3), and Cunningham further attests that Millstein then

characterized the new collateral-destroying technique as a pay-as-you-go system (Cunningham

Decl. ¶ 3).  Contrary to Respondents' suggestions (Motion in Limine ¶ 21), these statements by

Millstein are not hearsay. He was, at the time of the meeting, a representative of a party (the

Commonwealth), and he certainly was authorized to make statements to the Commonwealth's

---

[2] Nothing in PROMESA, Joint Resolution 188, or Act 106 purports to alter, amend, or
preempt these provisions of Puerto Rico law.

creditors in the course of negotiating with them. Fed. R. Evid. 801(d)(2)(A), (C). Similarly, Millstein's threats to circumvent ERS's obligations go directly to his "then existing state of mind (such as motive, intent, or plan)" and thus are "not excluded by the rule against hearsay." Fed. R. Evid. 803(3); *see also Packgen v. Berry Plastics Corp.*, 847 F.3d 80, 90 (1st Cir. 2017) ("Out-of-court statements by a[n] . . . employee may be admissible under Rule 803(3) to show intent or motive."). Nor is this evidence speculative. Shortly after this meeting, both Mr. Bennett and Mr. Cunningham memorialized the discussion in writing, confirming the reliability of their declarations. Respondents have the right to subpoena non-privileged portions of those documents if they wish to test the Bennett or Cunningham declarations.

13.    And this is not, clearly, about legislative intent. It is about factual proofs, as the following example shows: Bob sent an email to a friend stating that he might steal Alice's car. Some time passes and Alice's car is indeed stolen. Around the same time, a car that looks remarkably similar to Alice's shows up in Bob's garage. Does Bob's email stating that he might steal Alice's car make it more probable that the car in his garage belongs to Alice? Obviously, it does. Bob's email is unquestionably relevant, and Millstein's admissions at the April 2016 meeting are little different. The fact that Millstein said that the Commonwealth might recharacterize employer contributions as payments into a pay-as-you-go system makes it more probable that the PayGo fees the Commonwealth now collects are just recharacterized employer contributions. If so, they are part of the Bondholders' collateral package.

14.    In arguing otherwise, Respondents note that a motion for relief from the Bankruptcy Code's automatic stay is "meant to be a summary proceeding" of limited scope. *Grella v. Salem Five Cent Sav. Bank*, 42 F.3d 26, 31 (1st Cir. 1994). This ignores that it was Respondents themselves who introduced this issue into the Stay Relief Motion, causing the very expansion of

which they now complain. Respondents have repeatedly argued that there is no risk that the Bondholders' collateral could diminish in value because the Bondholders now have no collateral at all.  *See, e.g.*, Motion in Limine ¶ 7. This, of course, raises the threshold question "whether a creditor has a colorable claim to property of the estate." *Grella*, 42 F.3d at 32.[3] The First Circuit's ruling that the Bondholders have perfected liens that may not be avoided under PROMESA, *In re Fin. Oversight & Mgmt. Bd. for P.R.*, 914 F.3d at 719–20, makes it indisputable that the Bondholders have a colorable claim on ERS's property. In response, Respondents try to dodge this ruling by arguing that *ERS* no longer has any property because the Commonwealth "creat[ed] a new pension system that does not generate Employers' Contributions." *Debtor's Opp'n to Mot. of Certain Secured Claimholders of Employees Retirement System of Government of Commonwealth of Puerto Rico for Relief from Automatic Stay* at 12, Docket No. 292 in Case No. 17-bk-03566. In staking out this position, Respondents put squarely at issue whether PayGo fees are or are not the Bondholders' collateral. If Respondents truly seek to narrow the issues and limit the Stay Relief Motion to the "adequacy of protection, equity, and necessity to an effective reorganization," Motion in Limine ¶ 15, they can withdraw that position and stipulate that the PayGo fees are, at least "colorabl[y]," collateral for the ERS Bonds. Otherwise, the Bondholders are entitled to offer evidence to establish that their liens continue in the PayGo fees.

15.     In an effort to avoid this inescapable conclusion, Respondents argue that whether the Bondholders have a lien on PayGo fees is a question of statutory construction that turns on the

---

[3] Respondents claim that the only three "facts of consequence" in deciding the Stay Relief Motion are (1) "the validity and value of Movants' alleged collateral before the PROMESA automatic stay took effect"; (2) "the current status and value of Movants' alleged collateral"; and (3) "whether the automatic stay is causing a decrease in the collateral's value." Motion in Limine ¶ 15. Evidence that makes it more probable that the Bondholders' liens extend to the PayGo fees goes directly to the second question—"the current status" of the Bondholders' collateral. Respondents' own argument is that there is no collateral because the PayGo system eliminated it.

text of the statute. They claim that evidence about the April 2016 meeting is nothing more than irrelevant legislative history. Motion in Limine ¶¶ 16–20. They are wrong for three reasons.

16.     *First*, the legal question presented by Respondents' position that Joint Resolution 188 and Act 106 eliminated the Bondholders collateral is far more complicated than a simple comparison between the language of those laws, on the one hand, and the Bond Resolution, on the other. Rather, under Puerto Rico law, the Court must determine whether the PayGo fees were, *e.g.*, "acquired upon the sale, lease, license, exchange, or other disposition of collateral." U.C.C. § 9-315, 19 L.P.R. § 2212(64)(A). That question does not turn solely on the construction of Joint Resolution 188 and Act 106. And evidence that the Commonwealth viewed PayGo as a substitute for employer contributions (albeit one that it hoped would be free of the Bondholders' liens) is directly relevant to that question. Respondents' discussion of statutory construction and legislative history simply fails to engage with this point.

17.     *Second*, Respondents' arguments fail even on their own terms because they find no support in Puerto Rico law, which governs the construction of Puerto Rico statutes. In Puerto Rico, "[t]he spirit of the law plays a fundamental role in the construction of a statute." *Guzmán v. Calderón*, 2005 TSPR 33, 164 D.P.R. 220, 256–58 (2005). When "construing a specific provision of a statute, courts should always bear in mind the true aims of the Legislature in enacting it, so that our interpretation may assure the efficacy of the intent behind it." *Id.* Respondents ignore Puerto Rico law and rely on federal and (oddly) Texas state court statutory interpretation precedent. Motion in Limine ¶¶ 18–19. But whatever may be the rule under federal law and in Texas, the "true aims of the Legislature" are *always* relevant when construing a Puerto Rico statute, even if the statute's words seem clear. *Guzmán*, 2005 TSPR 33, 165 D.P.R. at 258.

18.     Respondents' reliance on non-Puerto Rico law to construe Puerto Rico statutes is clearly wrong. Whether or not Joint Resolution 188 and Act 106 are in some sense clear, the Court must consider their "spirit" in construing them and applying them. And while Respondents complain that the April 2016 meeting involved a consultant to the Commonwealth, rather than the legislature itself, that does not render that meeting irrelevant. In cases where the purpose behind a law is legally relevant—as it is here because of U.C.C. § 9-315—courts regularly consider statements from consultants who were actively involved in setting the policy that the legislature later adopted. *See, e.g.*, *Cooper v. Harris*, 137 S. Ct. 1455, 1466, 1468–69 (2017) (considering testimony from the redistricting consultant hired by the North Carolina legislature in considering whether the redistricting plan subsequently passed by the legislature was racially discriminatory). Outside consultants in Millstein's precise role were heavily involved in the decision to adopt the PayGo system. *See* Docket No. 443-2 in Case No. 17-bk-03566, Category No. 5 (listing Victor D'Agata, Dustin Modell, and John Kang of Rothschild, the successor consultant to Millstein & Co., as involved in predecisional deliberations about PayGo); Motion in Limine ¶ 20 (citing Nick Brown, *Rothschild Replaces Millstein as Puerto Rico Financial Advisor*, Reuters.com (Jan. 18, 2017), https://www.reuters.com/article/us-puertorico-debt-advisers/rothschild-replaces-millstein-as-puerto-rico-financial-advisor-idUSKBN1522J0).   And,   perhaps   most   importantly, Respondents' own privilege log confirms that Millstein & Co.—Millstein's consulting firm—was involved in "[c]onfidential, pre-decisional, deliberative communications regarding pension reform legislation." Resps.' Apr. 10, 2019 Privilege Log, Category No. 5, attached hereto as Ex. C.[4]

---

[4] When Respondents subsequently produced a revised categorical log on April 12, 2019, and a document-by-document log of documents in categories 5 to 7 on April 14, 2019, those logs inexplicably removed any reference to Millstein & Co.  Respondents have offered no explanation as to why Millstein & Co. was initially listed on their logs and later removed.

19.     *Third*, Respondents' contention that the April 2016 meeting is irrelevant because a new governor took office in January 2017 is beside the point. For one thing, there is evidence that the Board began insisting on a shift to PayGo as early as November 23, 2016, months before Millstein was fired by the Rosselló administration. *See* Letter from the Oversight Board to Governor García Padilla (Nov. 23, 2016), attached hereto as Ex. D. Obviously the financial challenges facing ERS, and the available strategies for addressing them, did not change overnight when Governor Rosselló replaced Governor García. Nor is there any reason to think that Rothschild, the Commonwealth's new advisor, threw away Millstein's work on how to address those challenges. Indeed, as mentioned, Respondents' own privilege log suggests that Millstein's consulting firm continued to have some role in the relevant legislation. The fact that the Oversight Board ordered Governor Rosselló's administration to ultimately adopt precisely the same "solution" to the pension crisis as Millstein had threatened to impose, with precisely the same purported effect on the Bondholders' collateral, belies any effort to argue that the Board and Governor Rosselló started with a clean slate. At bottom, Millstein's statement that the Commonwealth might seek to circumvent the Bondholders' rights via a pay-as-you-go system must be at least *relevant* to understanding the nature of the PayGo system adopted the very next year, even if Respondents will argue that it should be discounted due to the change in administrations. *Bielunas*, 621 F.3d at 76 ("[E]vidence need not definitively resolve a key issue in the case" to be relevant, so long as it "move[s] the inquiry forward to some degree.").

## II.   <u>Evidence About The April 27, 2016 Meeting Is Not A Waste Of Time.</u>

20.     As a fallback, Respondents argue that even if evidence about the April 27, 2016 meeting is relevant, hearing such evidence would be a waste of the Court's time. Motion in Limine ¶¶ 22–23. Respondents rely primarily on Federal Rule of Evidence 403, "a liberal rule under which relevant evidence generally is admitted." *United States v. McMahon*, 938 F.2d 1501, 1508 (1st Cir.

- 13 -

1991). Exclusion as a waste of time and resources under Rule 403 may be "appropriate when the evidence merely repeats evidence already admitted." 2 Weinstein's Federal Evidence § 403.06[1]; *see also Sec'y of Labor v. DeSisto*, 929 F.2d 789, 794–95 (1st Cir. 1991) (Rule 403 "enables a trial judge to exclude needlessly cumulative evidence."). But Respondents do not—and cannot—argue that evidence about the April 2016 meeting is cumulative in any way. And where evidence is not cumulative, Rule 403 "requires a balance of probative value against the negative consequences of using a particular piece of evidence." *DeSisto*, 929 F.2d at 795. "If evidence is crucial, . . . its exclusion [under Rule 403] would be an abuse of discretion." 2 Weinstein's Federal Evidence § 403.06[2].

21.     Because Respondents withheld nearly all of their internal documents based on broad privilege claims, the April 2016 meeting is the *only* direct evidence available to the Bondholders about Respondents' purposes in adopting the PayGo system. The evidence is therefore highly probative of whether the PayGo fees are just a new, barely disguised form of ERS employer contributions, gerrymandered in an effort to avoid the Bondholders' lien. That, after all, is precisely what Millstein *said* the PayGo system would be at the April 2016 meeting. *See* Bennett Decl. ¶ 3; Cunningham Decl. ¶ 3. Given that central relevance, exclusion under Rule 403 would be an abuse of discretion. *See DeSisto*, 929 F.2d at 795; 2 Weinstein's Federal Evidence § 403.06[2].

22.     Moreover, the parade of horribles that Respondents fear from the admission of this evidence has no basis in reality. There will be no direct live testimony at the July 2 hearing, so the Bondholders will rely upon short declarations from Bennett and Cunningham. *See* Docket No. 505 in Case No. 17-bk-03566, ¶ 1.viii. And there will be no testimony from Millstein or Abrams: their lawyer has advised us that they have no recollection of the meeting and therefore will not gainsay

the accounts from Bennett and Cunningham. Stewart Decl. ¶ 6. Accordingly, the Bondholders'

counsel have agreed to withdraw the subpoenas for their deposition if Millstein and Abrams will

execute short declarations to this effect, which their counsel agreed to do. *Id*. Nor will cross-

examination of Bennett or Cunningham consume much time. The scope of cross will be confined

to that of their direct testimony, which itself is confined to the statements Millstein made.

23.     While the Court may need to make findings about the significance of evidence

regarding the April 2016 meeting, that is only because that evidence is significant to the central

issue that Respondents themselves have injected into the Stay Relief Motion. Simply put, this is

not a "mini-trial on collateral issues," Motion in Limine ¶ 23, but instead a dispute over core

evidence concerning the nature of the PayGo fees and the Bondholders' interest in them. There is

no reason it should delay the final hearing scheduled for July 2, 2019.

24.     Finally, Respondents' discussion of Model Rule 3.7 is beside the point.

Respondents' citation of *Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 97 (1st Cir.

1988), does nothing to help them, because *Culebras* says only that Rule 3.7 applies in the District

of Puerto Rico. By its own terms, however, Rule 3.7 does not bar testimony by an attorney when

"the testimony relates to an uncontested issue," Model Rules of Prof'l Conduct R. 3.7(a)(1) (Am.

Bar. Ass'n 2018). Respondents have not offered any evidence contesting the Bondholders'

accounts of what happened at the April 2016 meeting, and they probably cannot, since both

Millstein and Abrams say they have no recollection of what they said there. Stewart Decl. ¶ 6. If

there is no dispute about the facts of the April 2016 meeting, then Millstein's admission will relate

only to an uncontested issue. Moreover, Rule 3.7 applies only to a "trial," and there because of

concerns that "the trier of fact may be confused or misled by a lawyer serving as both advocate

and witness"—a concern that seems to have no application to a summary proceeding before the

Court, as opposed to a jury trial. *See* Model Rules of Prof'l Conduct R. 3.7(a)(1), cmt. [2]. Finally, even if the Court must ultimately address Respondents' Rule 3.7 argument, all that will be required will be a ruling from the Court on a relatively simple legal issue.

### III.  Exclusion Would Be Premature.

25.     Finally, it would be premature to exclude this evidence before the Court has had the opportunity to receive the parties' other proofs and determine where, in the pattern of facts and circumstances, the April 2016 meeting fits. *See, e.g.¸ Smith & Nephew, Inc. v. Interlace Med., Inc.*, No. 10-10951-RWZ, 2012 WL 3560811, at *1 (D. Mass. Aug. 17, 2012) ("The relevance of this evidence is unclear and, accordingly, ruling on the motion is deferred to the trial."); *Ritch v. AM Gen. Corp.*, No. 93-451-SD, 1997 WL 834214, at *5 (D.N.H. Nov. 17, 1997) ("[T]he court finds that it cannot at this time rule on the relevance of that evidence and therefore defers such ruling until the issues are better developed at trial."). Indeed, because the Stay Relief Motion will be decided by the Court, not by a jury, the Court is free to receive all proffered evidence and rule on admissibility only if doing so is necessary to decide the Stay Relief Motion. *See Harris v. Rivera*, 454 U.S. 339, 346 (1981) (per curiam) ("In bench trials, judges routinely hear inadmissible evidence that they are presumed to ignore when making decisions."). There is thus no need, or reason, for the Court to address the admissibility of this evidence now.

### CONCLUSION

For the reasons set forth above, this Court should deny Respondents' Motion in Limine.

In San Juan, Puerto Rico, today May 24, 2019.

By:

/s/ Alfredo Fernández-Martínez
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

/s/ Geoffrey S. Stewart
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez
  José C. Sánchez-Castro
  USDC-PR 213312
  jsanchez@sanpir.com

  Alicia I. Lavergne-Ramírez
  USDC-PR 215112
  alavergne@sanpir.com

  Maraliz Vázquez-Marrero
  USDC-PR 225504
  mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Jason Zakia
  John K. Cunningham (*pro hac vice*)
  Glenn M. Kurtz (*pro hac vice*)
  WHITE & CASE LLP
  1221 Avenue of the Americas
  New York, NY 10036
  Tel. (212) 819-8200
  Fax (212) 354-8113
  jcunningham@whitecase.com
  gkurtz@whitecase.com

  Jason N. Zakia (*pro hac vice*)
  Cheryl T. Sloane (*pro hac vice*)
  WHITE & CASE LLP
  200 S. Biscayne Blvd., Suite 4900
  Miami, FL 33131
  Tel. (305) 371-2700
  Fax (305) 358-5744
  jzakia@whitecase.com
  csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*