# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PROMESA<br>Title III<br><br>Case No. 3:17-cv-01685 (LTS)<br>Case No. 3:17-bk-03566 (LTS) |

**REPLY IN SUPPORT OF MOTION TO COMPEL
PRODUCTION OF DOCUMENTS WITHHELD AS PRIVILEGED
<u>BASED ON RESPONDENTS' MAY 9, 2019, SUBMISSIONS</u>**

## INTRODUCTION

1. Respondents' Opposition offers no adequate justification for the privilege claims that the Court left open in the May 6 Order, Docket No. 493 in Case No. 17-bk-03566. To the contrary, the Opposition confirms that Respondents have nothing new to say. The Court should therefore vacate the May 15 Order, Docket No. 509 in Case No. 17-bk-03566, and order Respondents to produce the documents in question.

## ARGUMENT

2. Four categories of privilege claims were left open by the May 6 Order, were addressed by Respondents' May 9 Submissions, Docket Nos. 500 to 503 in Case No. 17-bk-03566, and are the subject of the present Motion to Compel.

3. *First*, Respondents invoke the executive privilege over documents shared with AAFAF. The Court's May 15 Order expressed uncertainty over whether the Bondholders' objection to Respondents' claims of executive privilege "still stands." May 15 Order at 2. It was for that reason that the Bondholders clarified that their objections to the executive privilege claims do still stand, for the reasons given in the Bondholders' Deliberative Process Motion ¶¶ 38–41, Docket No. 446 in Case No. 17-bk-03566, and that the May 9 Submissions did not resolve them.

4. *Second*, Respondents withheld factual information under the deliberative process privilege even though the privilege does not shield factual material that can reasonably be segregated from deliberative material. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884–85 (1st Cir. 1995). As the May 6 Order explains, facts may be withheld only if they are "indissolubly linked to the broader analysis." May 6 Order at 4 (quoting *Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014)). The Court held that the materials Respondents originally submitted did not show this to be the case. *Id.* at 5. The May 9 Submissions did not rectify the problem.

- 1 -

5. In the May 9 Submissions, the Respondents flatly state that disclosing the withheld factual information would reveal protected deliberations. However, they say so in conclusory terms, without explaining why. For example, the first entry in the Declaration of Philippe Mesa Pabón, Docket No. 503 in Case No. 17-bk-03566, declares that the withheld documents include "alternative projections of general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026," explains that they "were used by decision makers to determine appropriate revenue and expenditure levels for government entities under the March 13 Commonwealth Fiscal Plan," and then states that "[d]isclosing these spreadsheets would reveal pension reform proposals and assumptions that were under consideration, thereby revealing the decision-makers' thought process." *Id.* ¶ 3.a. But these are rote statements, devoid of detail, and without factual support; neither Pabón, nor Respondents in their Opposition, explains why any of this is so. Thus, we are left with not much more than Respondents' say-so in weighing whether their claims of privilege are legitimate.

6. At a minimum, surely the "pre-measures" projections that Pabón describes, which reflect the expected outcome in the absence of any changes, would not reveal the nature of the changes being considered. But even beyond that, the post-measures projections would not necessarily reveal information about deliberations—it would depend on how detailed they are and what precise information they contain. All Pabón says on that point is that the projections were "*used* by decision makers to determine appropriate revenue and expenditure levels for government entities under the March 13 Commonwealth Fiscal Plan." *Id.* (emphasis added). But facts do not become privileged merely because they were used in deliberations; they may be withheld only if they would reveal the substance of the deliberations. *Texaco P.R., Inc.*, 60 F.3d at 884–85. Respondents do not show how that is so for this or any other entry, each of which is described in

similar terms in the Pabón Declaration and the Declaration of Mohammad Yassin Mahmud, Docket No. 502 in Case No. 17-bk-03566.

7. *Third*, Respondents rely on the attorney work product doctrine. It appears now to be undisputed that Respondents have failed to meet their burden of justifying their reliance on the attorney-work-product doctrine. *See* Tr. of May 2 Hr'g at 114:2–4, 119:1–2 ("But I think you're using attorney work product way too broadly for this jurisdiction."); Attorney-Client Motion ¶¶ 30–37, Docket No. 443 in Case No. 17-bk-03566. Respondents' Opposition provides no reason to conclude otherwise. The Court should therefore reject their assertion of that doctrine.

8. *Fourth*, Respondents invoke the attorney-client privilege over documents sent by or to third-party, non-lawyer advisors. The Court ordered Respondents to provide a supplemental, document-by-document privilege log of documents in Category 3 of their categorical log, in order to allow the Court to assess whether "the third parties' involvement was for a business or legal purpose." May 6 Order at 9. The purpose, the Court made clear at the May 2 Hearing, was to use Category 3 as an "exemplar to see if there's a difference of opinion as to whether things are business documents or not." Tr. of May 2, 2019 Hr'g at 119:4–7.

9. Despite the Court's clear order that the supplemental log must show whether "the third parties' involvement was for a business or legal purpose," May 6 Order at 9, the log in the May 9 Submissions says *not one word* about why third parties were included in any of the privileged communications. *See* Docket No. 501 in Case No. 17-bk-03566. Entry 13,[1] for example, says that the communication "reflect[s]" legal advice regarding two sets of "legal issues." What it

---

[1] "Confidential communication reflecting legal advice from outside counsel (Dentons) to in-house counsel to AAFAF and outside counsel (O'Melveny) regarding (i) legal issues associated with Social Security eligibility for ERS and TRS participants and their coverage requirements; and (ii) legal advice and analysis concerning potential Title III restructuring."

does not say is anything at all to explain why Rothschild and Bank of America advisors needed to be part of the communication, or what their role was with respect to the communication. Respondents have not shown whether Rothschild and Bank of America's "involvement was for a business or a legal purpose," May 6 Order at 9, nor met each of the other strict requirements of *Kovel*, *see* Attorney-Client Motion ¶¶ 13–18; *Columbia Data Prods., Inc. v. Autonomy Corp.*, No. 11-12077-NMG, 2012 WL 6212898, at *14 (D. Mass. Dec. 12, 2012).

10. Another example is Entry 34,[2] which does not say anything at all about legal advice. Like Entry 13, it says nothing about why McKinsey, Rothschild, and Pension Trustee Advisors were involved in the communication or what their presence had to do with providing legal advice. Indeed, the substance of the communication in Entry 34—"transmitting draft spreadsheet of Commonwealth Fiscal Plan projecting general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026, for purposes of implementing pension reform"—does not indicate that legal advice was part of the communication. These same shortcomings are found throughout the rest of the log in the May 9 Submission. *See* Docket No. 501 in Case No. 17-bk-03566, Nos. 3, 4, 7–14, 23, 34, and 40.[3]

11. Because Respondents have not met their burden under the *Kovel* doctrine, they should be ordered to produce all documents shared with (or sent by) non-lawyer third parties. This includes documents in Categories 1, 2 and 4, as well as those on the May 9 log, because the Court

---

[2] "Confidential communications with in-house counsel to AAFAF and outside counsel (O'Melveny) transmitting draft spreadsheet of Commonwealth Fiscal Plan projecting general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026, for purposes of implementing pension reform. The draft spreadsheet relates to the decision to enact Joint Resolution 188 on June 25, 2017, and Act 106 on August 23, 2017."

[3] Even though Respondents knew that the sole purpose of this supplemental log was to assess claims of privilege in communications involving third parties, they did nothing at all to facilitate the identification of documents sent by or to third parties on their log. A cross-reference of the log and the names on the attached appendix, however, reveals that these are the documents that non-lawyer third parties sent or received.

ordered the production of the log as an "exemplar," Tr. of May 2, 2019 Hr'g at 119:4–7, and it reveals that Respondents are unable or unwilling to meet their burden of showing that documents shared with non-lawyer third parties are privileged. Respondents should also be ordered to produce documents that were withheld on work-product grounds as well as attorney-client privilege, because as explained, *supra* ¶ 7, Respondents' work-product claims are facially insufficient, and documents that were also withheld on deliberative process grounds but that contain factual information which must be segregated and produced, *supra* ¶¶ 4–6.

## CONCLUSION

For the reasons set forth above, this Court should grant the Bondholders' motions to compel as to the issues not addressed by the May 6 Order.

In San Juan, Puerto Rico, today May 24, 2019.

By:

| | |
|---|---|
| */s/ Alfredo Fernández-Martínez* | */s/ Geoffrey S. Stewart* |
| Alfredo Fernández-Martínez | Bruce Bennett (*pro hac vice*) |
| DELGADO & FERNÁNDEZ, LLC | JONES DAY |
| PO Box 11750 | 555 South Flower Street |
| Fernández Juncos Station | Fiftieth Floor |
| San Juan, Puerto Rico 00910-1750 | Los Angeles, California 90071 |
| Tel. (787) 274-1414 | Tel. (213) 489-3939 |
| Fax: (787) 764-8241 | Fax: (213) 243-2539 |
| afernandez@delgadofernandez.com | bbennett@jonesday.com |
| USDC-PR 210511 | |

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company, Glendon Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P., Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

| | |
|---|---|
| /s/ *Alicia I. Lavergne-Ramírez* | /s/ *Cheryl T. Sloane* |

José C. Sánchez-Castro
USDC-PR 213312
jsanchez@sanpir.com

Alicia I. Lavergne-Ramírez
USDC-PR 215112
alavergne@sanpir.com

Maraliz Vázquez-Marrero
USDC-PR 225504
mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

John K. Cunningham (*pro hac vice*)
Glenn M. Kurtz (*pro hac vice*)
WHITE & CASE LLP
1221 Avenue of the Americas
New York, NY 10036
Tel. (212) 819-8200
Fax (212) 354-8113
jcunningham@whitecase.com
gkurtz@whitecase.com

Jason N. Zakia (*pro hac vice*)
Cheryl T. Sloane (*pro hac vice*)
WHITE & CASE LLP
200 S. Biscayne Blvd., Suite 4900
Miami, FL 33131
Tel. (305) 371-2700
Fax (305) 358-5744
jzakia@whitecase.com
csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*