**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

------------------------------------------------------------------------- x
: 
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.,* : (Jointly Administered)
:
Debtors.[1] :
------------------------------------------------------------------------- x

**OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF ASSURED GUARANTY CORP. AND ASSURED GUARANTY MUNICIPAL CORP. TO COMPEL COMPLIANCE BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS WITH FEDERAL RULE OF BANKRUPTCY PROCEDURE 2019 AND TO AMEND EIGHTH AMENDED <u>CASE MANAGEMENT PROCEDURES</u>**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("<u>ERS</u>") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("<u>HTA</u>") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("<u>COFINA</u>") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("<u>PREPA</u>") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

BACKGROUND .......................................................................................................................... 3

OBJECTION .................................................................................................................................. 7

I. Updated Statement Provides More Than Sufficient Disclosure ....................................... 8

    A. Updated Statement Clearly Describes Outstanding Amounts of Prepetition Claims ................................................................................................................... 9

    B. Committee Makes Sufficient Disclosures With Respect to Union Claims .......... 10

II. Assured's Proposed Remedy Is Unnecessary and Unduly Burdensome ......................... 13

CONCLUSION ............................................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Altair Airlines, Inc.*,
   727 F.2d 88 (3d Cir. 1984) ........................................................................................................13

*Aurelius Inv., LLC v. Puerto Rico*,
   915 F. 3d 838 (1st Cir. 2019) .......................................................................................................3

*In re Blue Diamond Coal Co.*,
   147 B.R. 720 (Bankr. E.D.Tenn. 1992), *aff'd*, 160 B.R. 574 (E.D. Tenn. 1992) ....................14

*In re Enduro Stainless, Inc.*,
   59 B.R. 603 (Bankr. N.D. Ohio 1986) .....................................................................................13

*In re Northeast Dairy Co-op. Fed., Inc.*,
   59 B.R. 531 (Bankr. N.D.N.Y. 1986) ......................................................................................13

*In re Residential Capital, LLC*,
   480 B.R. 550 (Bankr. S.D.N.Y. 2012) .......................................................................................8

*In re Schatz Fed. Bearings Co., Inc.*,
   5 B.R. 543 (Bankr. S.D.N.Y. 1980) ........................................................................................13

*In re Sentinel Management Group, Inc.*,
   404 B.R. 488 (Bankr. N.D. Ill. 2009) ........................................................................................9

*U.S. Truck Co. v. Teamsters Nat'l Freight Indus. Negotiating Comm.* (*In re U.S. Truck Co.*),
   89 B.R. 618 (E.D. Mich. 1988) ................................................................................................13

*United Steelworkers of America v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960) .................................................................................................................11

**Statutes**

11 U.S.C.
   § 101(5)(A) ............................................................................................................................4, 10
   § 101(10)(A) ...............................................................................................................................9
   § 363 ............................................................................................................................................9
   § 926 .................................................................................................................................4, 8, 13
   § 1103 .....................................................................................................................................2, 8

ERS Act 70-2010 .............................................................................................................................6, 13

**Other Authorities**

Elkouri & Elkouri, *How Arbitration Works*, Ch. 7 (8th ed. 2016) ...............................................12

Federal Rules of Bankruptcy Procedure R. 2019................................................................... *passim*

Fin. Oversight & Mgmt. Bd. for P.R., 2019 Fiscal Plan for Puerto Rico: Restoring
 Growth and Prosperity 131-32 (May 9, 2019),
 https://drive.google.com/file/d/13wuVn04--JKMEPKu-u-djZJHqTK-
 55aV/view ..............................................................................................................................11

The Official Committee of Unsecured Creditors of all Title III Debtors (the "Committee") hereby submits this objection (the "Objection") to the Motion of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (together, "Assured") seeking to compel the Committee to provide a supplemental verified statement pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure and to amend the case management procedures[1] [Docket No. 6963] (the "Motion").[2] In support of this Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1. Despite Assured's barrage of half-truths and innuendoes,[3] the fact is that the Committee has fulfilled its disclosure obligations pursuant to Rule 2019 ("Rule 2019") of the Federal Rules of Bankruptcy Procedure by filing its Rule 2019 statements, including the *Third Supplemental Verified Statement of Official Committee of Unsecured Creditors Pursuant to Bankruptcy Rule 2019*, dated May 8, 2019 [Docket No. 6874] (the "Updated Statement"), that sets forth the nature and amount (to the extent known) of each Committee member's prepetition claim. Assured's Motion seeks to impose onerous burdens on the Committee members (all of which are unpaid volunteers) that are not required by Rule 2019 and would not provide the Court

---

[1] *See Eighth Amended Notice, Case Management and Administrative Procedures* [Docket No. 4866-1] (the "Case Management Procedures").

[2] On May 24, 2019, AmeriNational Community Services, LLC ("AmeriNational"), as servicer for the GDB Debt Recovery Authority, and Cantor-Katz Collateral Monitor LLC (the "Collateral Monitor" and, together with AmeriNational, the "DRA Parties") filed a joinder [Docket No. 7094] (the "Joinder") in the Motion.

[3] Given the sheer amount of such statements, it is impossible to address them all herein. Suffice it to say that perhaps the most egregious of Assured's many misleading statements is that the Committee supposedly filed hundreds of actions against vendors and ***charitable organizations***. *See* Mot. at 6. In fact, the Committee is merely co-plaintiff (with the Oversight Board) in these actions, and, moreover, both the Committee and the Oversight Board went to great length ***not*** to pursue claims against charitable organizations. To the extent any such organizations were sued (for which Assured provides no evidence), this was accidental and not intended.

1

or creditors with any meaningful additional information regarding the Committee. For that simple reason, the Motion should be denied.

2. In reality, Assured's Motion is not about disclosure but, instead, is a transparent attempt to obstruct the efforts of the Committee and the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board") to avoid unperfected liens and recover avoidable transfers through adversary proceedings commenced in accordance with the Court-approved Commonwealth Stipulation[4] and the ERS/HTA Stipulation[5] as evidenced by the fact that, to the Committee's knowledge, Assured did not raise any issues regarding the Committee's compliance with Rule 2019 until the Committee entered into the Commonwealth Stipulation in mid-April 2019. Further evidence of Assured's improper motivation is that one of the remedies it seeks for the Committee's non-existent Rule 2019 violation is an order denying the Committee the right "to be heard in these Title III cases" in direct contravention of the Committee's powers and duties pursuant to section 1103 of title 11 of the United States Code (the "Bankruptcy Code").[6]

3. Given that Assured is a purported secured creditor and a defendant in adversary proceedings commenced by the Oversight Board and the Committee, Assured's efforts to silence the Committee and prevent it from representing the interests of unsecured creditors in these Title III cases is understandable, but such efforts should not be countenanced. Silencing the Committee (or making reporting obligations for Committee members so burdensome that

---

[4] *See Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action* [Docket No. 6524] (the "Commonwealth Stipulation").

[5] *See Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Causes of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [Docket No. 6990] (the "HTA/ERS Stipulation").

[6] Mot. at 19.

creditors will be incentivized to resign from the Committee) is neither appropriate under the law nor beneficial to the Title III process.[7]

## BACKGROUND

4. The Committee has consistently advocated for greater disclosure in these Title III cases and successfully proposed additional disclosure requirements in August 2017 and July 2018.[8] Further, the Committee filed multiple Rule 2019 statements in which it reported its members' disclosable economic interests.[9] Assured (which has been actively involved in these Title III cases from the very outset) never questioned the Committee's compliance with Rule 2019 until last month when the Committee entered into the Commonwealth Stipulation which raised the specter of litigation against Assured. Suddenly, the Rule 2019 statements were of great importance to Assured.

5. In its April 17, 2019 objection (filed jointly with Ambac) to the Commonwealth Stipulation, Assured argued for the first time that the disclosures concerning Committee members Service Employees International Union ("SEIU") and American Federation of

---

[7] Assured's efforts to exclude the Committee from acting as co-plaintiff with the Oversight Board evidence its intention to take advantage of the "Aurelius problem" (*i.e.*, that the Oversight Board's actions taken after the First Circuit's Appointments Clause decision in *Aurelius Inv., LLC v. Puerto Rico*, 915 F. 3d 838 (1st Cir. 2019) could be held to be null and void). If Assured were able to exclude the Committee from acting as co-plaintiff and a court subsequently determined that the Oversight Board had no authority to commence litigation, surely Assured would contend that no action could be maintained against it given that the statutes of limitations have lapsed. Hence, Assured relentlessly attacks the Committee's ability to act as co-plaintiff, including by raising the Rule 2019 issue. The Court also needs to be cognizant of the fact that the "Aurelius problem" was brought to the fore by an informative motion [Docket No. 5977] filed by the same appellate counsel who represents Assured before the First Circuit with regard to Assured's appeal of this Court's Appointments Clause ruling. In other words, Assured is not a mere bystander when it comes to the "Aurelius problem."

[8] *See Informative Motion of Official Committee of Unsecured Creditors Regarding Applicability of Bankruptcy Rule 2019 to Title III Cases and Further Proposed Amendment to Case Management Order* [Docket No. 850]; *Motion of Official Committee of Unsecured Creditors to Clarify or Amend Fourth Amended Notice, Case Management and Administrative Procedures Regarding Disclosure Requirements Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 3432].

[9] *See* Docket Nos. 1050; Docket No. 3036; Docket No. 4028. Irrespective of Rule 2019, the membership of the Committee is a matter of public record, as any changes in membership are reported by the United States Trustee in notices filed with this Court. *See Appointment of Official Committee of Unsecured Creditors in the Commonwealth of Puerto Rico* [Docket No. 338] and amended notices of appointment filed at Docket Nos. 1171, 1218, and 3058.

Teachers ("AFT," and together with SEIU, the "Unions") left "open" whether the Committee could "adequately represent" unsecured creditors as a trustee under section 926 of the Bankruptcy Code because the Unions (a) "do not appear to hold any 'claims,'" (b) "dominate" the Committee, and (c) were "acting to advance their national agenda, [and] not to act as a fiduciary."[10] As with most of Assured's allegations, Assured proffered no evidence supporting these allegations; nor could it, as they are patently untrue.

6. Assured continued its attacks on the Committee's Rule 2019 statement in its objection to the Committee's motion to pursue certain causes of action[11] and at the April 24, 2019 omnibus hearing,[12] when Assured alleged that the Committee's Rule 2019 statements did not confirm whether certain Committee members were actually creditors for purposes of section 926 of the Bankruptcy Code. The Court approved the Commonwealth Stipulation over Assured's objections, finding that the Committee was "composed of creditors and represents the interests of creditors."[13]

7. Thereafter, Assured's counsel sent a series of self-serving and factually incorrect emails (attached hereto as **Exhibits A** and **B**) attempting to manufacture evidence in support of

---

[10] *See Objection and Reservation of Rights of Assured Guaranty Corp., Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, and Ambac Assurance Corporation to the Urgent Joint Motion for Entry of Order Approving Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Debtor Causes of Action,* at 3 n.3 [Docket No. 6337]. Whatever quibbles Assured may have with respect to the amount and description of the Unions' claims, it is impossible to deny they exist. After all, a claim is simply a "right to payment" and can be unliquidated, contingent, or disputed. 11 U.S.C. § 101(5)(A). Similarly, Assured never explained (because it is impossible to do so) how the two Unions could dominate a seven-member Committee that makes decisions by majority-vote.

[11] *See Objection and Reservation of Rights of Assured Guaranty Corp., Assured Guaranty Municipal Corp., and the* Financial *Guaranty Insurance Company to the Motion of Official Committee of Unsecured Creditors for Order Authorizing Committee to Pursue Certain Causes of Action on Behalf of Commonwealth and Granting Related Relief,* ¶ 11 [Docket No. 6427].

[12] April 24, 2019 Hr'g Tr. at 119:6-10. Relevant excerpts of the April 24, 2019 hearing transcript are attached hereto as **Exhibit C**.

[13] April 24, 2019 Hr'g Tr. at 236:16-17. The Court denied the Committee's motion to pursue causes of action for reasons having nothing to do with the composition of the Committee or its disclosures.

-4-

Assured's arguments set forth in its Motion.[14] Such efforts failed, but nevertheless wasted each email recipient's time and the Debtors' assets because Committee counsel was forced to respond and correct the record.

8. On May 8, 2019, the Committee filed its Updated Statement in which it reported minor and technical changes to its members' liquidated claims. As is readily apparent from the face of the Updated Statement (including the blackline attached thereto), the changes to the amounts of disclosable economic interests since the filing of the prior statement were minor and have not materially changed the nature and total amount of claims represented by Committee members. Assured's argument that a $300,000 decrease of one Committee member's $8 million claim or a $600,000 decrease of another Committee member's $2.8 million claim (without any change in the nature of such member's claim) constitutes a material change is simply ludicrous in the context of cases with claims in the billions of dollars and given that the members of the Committee do not represent their own pecuniary interest but are fiduciaries for ***all unsecured creditors*** of the Debtors in whose cases the Committee has been appointed (*i.e.*, the Commonwealth, HTA, ERS, and PREPA cases). In that context, the precise amount of a Committee member's claim is generally not material. This stands in stark contrast to members of ad hoc committees who represent solely their own pecuniary interest and who owe duties to no one other than themselves. In the case of ad hoc committees, the rules of disclosure are critical because it would be perfectly appropriate for private investors to advance an argument solely for the benefit of their own economic claims positions with respect to a particular debtor,

---

[14] Such emails are replete with mischaracterizations and exaggerations. For example, in the May 2 and May 3 emails, Assured contended that counsel for the Committee had "assured"/"promised" the Court at the April 24 hearing that the Committee would file the Updated Statement in short order. In fact, counsel for the Committee had only stated that "we'll look at the 2019 statements." April 24, 2019 Hr'g Tr. 145:16. And in the May 3 email, Assured further stated that it had requested Rule 2019 statements "all throughout this case." Again, that is, to put it mildly, an exaggeration. Indeed, if it were true, Assured would certainly cite to evidence supporting such statement in the Motion. It does not.

-5-

while members of official committees are actually precluded from doing so when making decisions as committee members.

9. Moreover, the additional disclosures as to SEIU were made to satisfy Assured's request for additional information, and the information added to the Updated Statement in respect of SEIU's claims is no more than a clarification of what is already common knowledge (and acknowledged by the Oversight Board in the list of creditors for the Commonwealth[15] and ERS[16]) given that SEIU members are Commonwealth employees and, as such, were also participants in Employees Retirement System.

10. Nevertheless, Assured attacked the Committee's Updated Statement in its unsuccessful May 12 opposition (filed jointly with other monoline insurers) to the ERS/HTA Stipulation, alleging that the Updated Statement failed "for reasons that are unknown" to list the nature and amount of Committee members' economic interests.[17] The Committee's May 14 reply pointed out, among other things, that (a) with respect to the five non-union members of the Committee, the Updated Statement provided the amount of the unsecured claim against each of the Debtors and (b) with respect to the Unions, the Updated Statement provided a detailed description of the types (and general magnitude) of unliquidated claims held by the Unions.

11. Finally, during the evening of May 14, Assured filed the Motion and requested that it be heard on an expedited basis less than two days later at the May 16 hearing to consider

---

[15] *See Notice of Filing of Creditor List for the Commonwealth of Puerto Rico*, Schedule J (Labor Union Obligations) [Docket No. 1215].

[16] *See Notice of Filing of Creditor List for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico* [Docket No. 1316]. Excerpts of Schedule C (Employee Obligations), Schedule D (ERS Act 70-2010 Obligations), Schedule E (Pension Obligations), and Schedule F (Participant Obligations) of ERS's list of creditors are attached hereto as **Exhibit D**.

[17] *Objection and Reservation of Rights of Assured Guaranty Corp. Assured Guaranty Municipal Corp., Financial Guaranty Insurance Company, National Public Finance Guarantee Corporation, and Ambac Assurance* Corporation *to the Urgent Joint Motion for Entry of Order Approving Stipulation and Agreed Order*, at 11 n.8 [Docket No. 6913].

the approval of the HTA/ERS Stipulation on the ground the Committee should be prohibited from being heard at that hearing.[18] The Committee objected to Assured's request for an expedited hearing, and the Court denied Assured's request. The Court so-ordered the ERS/HTA Stipulation at the conclusion of the May 16 hearing.[19]

## OBJECTION

12. The Updated Statement is sufficient as a legal matter, and Assured's complaints essentially amount to haggling over *de minimis* details with respect to which no reasonable party would ever concern itself. Moreover, the relief requested by Assured is unnecessary and unduly burdensome, designed to punish unsecured creditors for volunteering to serve on the Committee and for fulfilling their fiduciary duties by, among other things, challenging avoidable secured claims.

13. It is important though to begin the review of Assured's arguments with some uncontroverted facts:

- Five of the seven members of the Committee have seen no changes in the nature and amount of their claims throughout these Title III cases;

- The changes to the amount of the claims of the other two Committee members have been fully disclosed and, in any event, are not material given the circumstances of the Committee and these Title III cases;

- Every appointment of a new Committee member has been posted by the U.S. Trustee on the docket in these Title III cases; and

- An official committee of unsecured creditors is statutorily required in every Title III case and each committee member owes fiduciary duties to each debtor for which the committee has been appointed, regardless of

---

[18] Mot. at 1.

[19] The Court rejected Assured's attacks on the Committee at the May 16 hearing, stating, among other things, that there was "no factual basis in the record for the objectors' assertion that the Committee's role and positions taken as official committee in the Commonwealth case on the one hand and the HTA and ERS cases on the other impede the ability or willingness of the Committee to vigorously pursue claims against nondebtors on behalf of HTA and ERS . . . ." May 16, 2019 Tr. at 39: 10-15.

whether a particular committee member holds only small claims (or no claims at all) against a particular debtor.

### I. Updated Statement Provides More Than Sufficient Disclosure

14. Despite the stridency of Assured's language and the extreme nature of the relief it has requested (among other things, depriving the Committee of its rights under section 1103 of the Bankruptcy Code to be heard by the Court), a close examination of the Motion reveals that Assured's complaints about the Updated Statement boil down to basically two minor points: (i) because the Debtors have paid a portion of two (out of seven) Committee members' prepetition claims, these and other Committee members may (already or in the future) no longer be prepetition creditors of the Debtors; and (ii) it is not clear what claims the Unions hold against the Debtors because they did not provide sufficient detail.

15. Assured, however, points to nothing that would preclude a party in interest from being able to "evaluate the particular economic interests and incentives of the [Committee's] members," to the extent they are even relevant.[20] Nor could it, because the identities and

---

[20] Mot. at 16. Assured argues that it needs the information about the Committee members' claims in order to determine whether the Committee is an appropriate party to serve as the co-plaintiff and section 926 trustee under the HTA/ERS Stipulation. But for those purposes, these facts are not relevant to the exercise of Committee members' fiduciary duties, which run to creditors of all the Debtors for which the Committee has been appointed. *In re Residential Capital, LLC*, 480 B.R. 550, 559 (Bankr. S.D.N.Y. 2012) ("It is well settled that statutory unsecured creditors committees owe a fiduciary duty to the entire class of creditors represented by such committee and are required to place the collective interest of the class they represent above their own personal stake in the bankruptcy case."). Further, in making these arguments, Assured makes misleading statements, including that the Committee previously asserted in connection with the so-called clawback dispute that it "owes no duty to HTA or its creditors on [the] clawback issue." Mot. at 17. In fact, in the brief cited by Assured, the Committee stated that "a committee owes no fiduciary duties to its debtor [here, HTA]" and that the Committee is not duty-bound to adopt a position advanced by the *secured* creditors of HTA. *See Supplemental Reply Memorandum of Limited Intervenor the Official Committee of Unsecured Creditors in Support of Motion to Dismiss Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)*, at 10-11, n.13, *Ambac Assurance Corp. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, Adv. Proc. No. 17-159-LTS [Docket No. 102] (emphasis added). **The Committee has never asserted that it owed no duty to HTA's unsecured creditors.** For the same reason, the Court should also reject the contorted argument by the DRA Parties that Committee counsel supposedly stated at the May 16, 2019 hearing that the Committee intends to serve the economic interests of Commonwealth creditors over those of HTA creditors. Joinder ¶ 14. In fact, at that hearing, Committee counsel merely explained the aforementioned position in the clawback litigation, namely that "if the Court rules or is prepared to rule that [the HTA bondholders] are secured, the Committee should be allowed to argue because the [un]secured creditors of HTA would get nothing, that the

disclosable economic interests of the Committee members are clearly set forth in the Updated Statement and the prior Rule 2019 statements.[21] And, of course, if a Committee member's claim were reduced substantially through payments received from the Debtors, that fact would be reflected by the Committee in a revised Rule 2019 statement.

### A. Updated Statement Clearly Describes Outstanding Amounts of Prepetition Claims

16. Assured argues that because only two (out of seven) Committee members have received payments on account of a portion of their prepetition claims, their creditor status (and possibly the creditor status of other Committee members) is somehow in doubt. However, the fact that the Debtors have paid a portion of two members' prepetition claims[22]—a fact that, to be clear, the Committee has disclosed—does not mean that these members lose their creditor status. Each member remains a creditor as long it is "an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."[23]

17. Nevertheless, Assured alleges, based on pure speculation, that there is a "possibility that members of the UCC may not hold any unsecured prepetition claims at all," which "raises the question whether those members are even eligible to serve on the UCC"[24] and that the "UCC's Rule 2019 Statements do not even provide sufficient information to determine

---

Commonwealth defeats their interest because they are not a secured creditor of the Commonwealth." May 16, 2019 Hr'g Tr. at 34:7-14. Relevant excerpts of the May 16, 2019 transcript are attached hereto as **Exhibit E**.

[21] In addition, the Rule 2019 cases cited by Assured are inapplicable, as all involve *ad hoc* committees or other creditor representatives, not official committees, and none deal with the issues at play here, *i.e.*, how to report claims that are being paid during the course of the case and unliquidated union claims. In that regard, it is worth noting though that Assured citation to *In re Sentinel Management Group, Inc*., 404 B.R. 488, 492 n.2 (Bankr. N.D. Ill. 2009) is highly misleading, in that Assured suggests that the *Sentinel* court expunged the ad hoc committee's fee request because of a failure to comply with Rule 2019. *See* Mot. at 10. In fact, the court expunged the ad hoc committee's fee request on the ground that the ad hoc committee had not made a substantial contribution to the case. *See In re Sentinel Mgmt*., 404 B.R. at 498.

[22] There is nothing particularly noteworthy about this, of course, as such payments simply reflect Congress' decision not to incorporate section 363 of the Bankruptcy Code into Title III of PROMESA.

[23] 11 U.S.C. § 101(10)(A).

[24] Mot. at 15.

whether the UCC has been validly constituted."[25]  Assured further complains that "this Court and other creditors have no transparency into whether, and to what extent, any claims of the UCC's members have been satisfied."[26]  But all these statements *are directly contradicted by the Updated Statement, which confirms that all Committee members hold prepetition unsecured claims.*

18. Assured also asserts that "the Commonwealth has publicly committed to continue paying" the Committee's constituents "in the ordinary course" and that "it is likely that these members' claims are simply being paid in the ordinary course, and will continue to be paid until they are paid in full."[27]  However, Assured confuses the Commonwealth's stated intention to make payments to creditors with the reality that such payments have not occurred in a number of instances and certainly not to five out of the seven Committee members.  If, in fact, all unsecured creditors had been paid in full since 2017, there would be no members left on the Committee.  Indeed, a cursory review of the claims registry reveals that there are billions of dollars of unsecured proofs of claims on file.  Without a doubt, not all of these claims will be allowed, but they nevertheless provide a helpful data point in contrast to Assured's empty rhetoric.

**B. Committee Makes Sufficient Disclosures With Respect to Union Claims**

19. Assured's arguments about the alleged lack of sufficient description of the Unions' claims in the Updated Statement are similarly unavailing.  First, the Bankruptcy Code defines a claim, in pertinent part, as a "'right to payment, whether or not such right is reduced to judgment, liquidated, [or] *unliquidated* . . . ."[28]  Thus, it is irrelevant to the Unions' status as creditors (and their entitlement to membership on the Committee) that some or all of their claims

---

[25] *Id.* at 16.

[26] *Id.* at 18.

[27] *Id.* at 15.

[28] 11 U.S.C. 101(5)(A) (emphasis added).

-10-

are unliquidated. In fact, two primary components of the Unions' claims are (i) grievances and arbitrations and (ii) claims relating to pensions. Assured objects to the failure to list amounts for the SEIU's grievance claims[29] and the failure to list pension claim amounts for both SEIU and AFT.[30] However, it should not come as a surprise that these claims are currently unliquidated based on the nature of the claims and the circumstances of these Title III cases.[31]

20. In their proofs of claim, the Unions listed more than 200 resolved, but unpaid grievances. In addition, SEIU, for example, also has approximately 2,000 pending unresolved grievances and arbitrations and only a limited number are being brought to arbitration each month,[32] largely because of the limited number of arbitrators available to hear these cases.[33] Thus, many if not most of the grievances may not be arbitrated for many years. And even when these cases are brought to arbitration, liquidating any financial remedy may not take place until long after the award. In Puerto Rico, labor arbitration awards typically do not delineate the amount of any back pay or damages remedy, leaving the parties to reach agreement on the

---

[29] AFT listed amounts for litigations and grievances in its proof of claim. The AFT POC further provides that, in addition to unliquidated amounts due and owing, "the aggregate amount owed on account of those Prepetition Claims capable of being liquidated is estimated to be not less than Thirty-Two Million, Two-Hundred and Twenty-Three Thousand, and Eight-Hundred and Twenty Dollars ($32,223,820)." Proof of Claim of AFT [Claim No. 108230] (the "AFT POC"), Attach. ¶ 7.

[30] See Mot. at 8, 12-14. Assured also seems to suggest, incorrectly, that "each certified fiscal plan has provided" for payments to employees and pensioners to continue," Mot at 2, ignoring both that prepetition grievances and arbitrations are *not* being paid in the ordinary course, and that each fiscal plan has proposed modifications to retiree benefits. See Fin. Oversight & Mgmt. Bd. for P.R., 2019 Fiscal Plan for Puerto Rico: Restoring Growth and Prosperity 131-32 (May 9, 2019) (the "Fiscal Plan"), https://drive.google.com/file/d/13wuVn04--JKMEPKu-u-djZJHqTK-55aV/view.

[31] Recognizing the difficulty, if not impossibility, of liquidating these claims at this time, the bar date order proposed by the Oversight Board and approved by this Court [Docket No. 2521] (the "Bar Date Order") included a blanket exemption in relation to pension claims and for grievances and arbitrations not already resolved and liquidated. Bar Date Order ¶ 6.f, g, h.

[32] As the Supreme Court has emphasized, the labor grievance and arbitration process is unique, "part and parcel of the collective bargaining process itself," and is not simply the equivalent of a lawsuit on violation of a commercial contract, or even the equivalent of a commercial arbitration. *United Steelworkers of America v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 578, 580-822 (1960).

[33] The awards are in Spanish. See, e.g., Proof of Claim of SEIU [Claim No. 21351] (the "SEIU POC").

relevant amount, a process that can take many months or longer.[34] This time frame does not factor in delays associated with any appeals from awards. Moreover, with respect to retiree benefits, each Union has appropriately asserted claims for a portion of the total actuarial liability of the relevant retirement system.[35]

21. Against this backdrop, it is curious, to say the least, that Assured argues that it is unclear that the Unions have claims against the Debtors because SEIU's disclosure states that it holds claims against the "Commonwealth and/or its instrumentalities" and because AFT's proof of claim refers to pension benefits owed with respect to the Teachers Retirement System ("TRS"). This argument has no merit. First, with respect to the Commonwealth, both SEIU and AFT filed proofs of claim against the Commonwealth,[36] and AFT's proof of claim specifically refers to its pension claims with respect to TRS as among "the Debtor's post-employment benefit obligations."[37] Moreover, SEIU and AFT's local unions are on the list of the Commonwealth's creditors filed in August 2017.[38] In addition, SEIU's members are listed on ERS's list of creditors filed in September 2017, clearly demonstrating SEIU's status as a creditor of ERS[39]— which status was confirmed by the Court at the May 16 hearing.[40]

---

[34] The leading labor arbitration treatise emphasizes that arbitrators may order the parties to calculate actual damages after the award. Elkouri & Elkouri, *How Arbitration Works*, Ch. 7 at 24, 49-54 (8th ed. 2016).

[35] *See* Updated Statement, Ex. A at 1-2; *Verified Statement of the Service Employees International Union Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 6882] ("SEIU Statement") ¶ 4; *Rule 2019 Verified Statement for American Federation of Teachers, AFL-CIO* [Docket No. 3360] ("AFT Statement") (incorporating Proof of Claim of AFT); AFT POC, Attach. ¶7. Moreover, as noted above, it has been the stated position of the Oversight Board that reductions to retiree benefits should be implemented, and every fiscal plan certified by the Oversight Board to date, including the Fiscal Plan, reflects this position.

[36] *See* SEIU POC and AFT POC.

[37] AFT POC, Attach. ¶ 6(c).

[38] See Docket No. 1215, Schedule J (Labor Union Obligations).

[39] *See* Docket No. 1316. SEIU members are included in Schedule C (Employee Obligations), Schedule D (ERS Act 70-2010 Obligations), Schedule E (Pension Obligations), and Schedule F (Participant Obligations) to the ERS creditor list.

[40] *See* May 16, 2019 Hr'g Tr. at 37:25-38:3 (finding that "SEIU has the requisite creditor status under section 926 of the code by virtue of its members' claims against ERS")

22.     Furthermore, some common sense is in order: SEIU and AFT represent thousands of Commonwealth employees and SEIU represents thousands of ERS participants.  The idea that these Unions are somehow not creditors of the Commonwealth (and in the case of SEIU also ERS) is just absurd.  Indeed, the Bar Date Order acknowledges the Unions' creditor status by allowing the Unions to file master proofs of claim on behalf of their constituents on account of all obligations due under their collective bargaining agreements or applicable statutes.[41]  And the only Circuit-level decision (to the Committee's knowledge) that considered the issue of a union's status as creditor held that unions with claims for unpaid wages or benefits are creditors and thus eligible to serve on a creditors committee.[42]  It is also clear that the U.S. Trustee would not have appointed the Unions to the Committee if he had not been convinced of their creditor status.

23.     For all these reasons, the Committee submits that, in light of the attributes and status of the Union claims and these Title III cases at this time, the Updated Statement adequately addresses the Unions' claims.[43]

## II.     Assured's Proposed Remedy Is Unnecessary and Unduly Burdensome

24.     Even if Assured's allegations had any merit to them (which they do not), the Court should decline to grant the relief requested by Assured as unnecessary and unduly

---

[41]  Bar Date Order ¶ 5.b.

[42]  *See In re Altair Airlines, Inc.*, 727 F.2d 88, 90-91 (3d Cir. 1984).  *See also U.S. Truck Co. v. Teamsters Nat'l Freight Indus. Negotiating Comm.* (*In re U.S. Truck Co.*), 89 B.R. 618, 621 (E.D. Mich. 1988) ("As an unincorporated association, a union has the capacity to assert a claim."); *In re Enduro Stainless, Inc.*, 59 B.R. 603, 605 (Bankr. N.D. Ohio 1986) (union representing debtor's workers and filing proof of claim for unpaid life, health, and supplemental unemployment premiums or benefits was creditor eligible to participate on debtor's unsecured creditors' committee); *In re Northeast Dairy Co-op. Fed., Inc.*, 59 B.R. 531, 535 (Bankr. N.D.N.Y. 1986) (ordering appointment of union to official creditors' committee); *In re Schatz Fed. Bearings Co., Inc.*, 5 B.R. 543, 548 (Bankr. S.D.N.Y. 1980) (same).

[43]  In what can only be described as a side-show, Assured also argues that labor unions themselves must file Rule 2019 disclosures.  *See* Mot. at 15 n.11.  However, Assured's Motion does not seek an order requiring SEIU or AFT to file such disclosures, and, in any event, both Unions filed Rule 2019 statements (without conceding that they had an obligation to do so).  *See* AFT Statement and SEIU Statement.  *See also In re Blue Diamond Coal Co.,* 147 B.R. 720, 727 (Bankr. E.D.Tenn. 1992), *aff'd*, 160 B.R. 574 (E.D. Tenn. 1992) (holding that a union is not required to file a Rule 2019 statement).

burdensome. In particular, Assured's proposed changes to the Case Management Procedures would add two requirements, aimed directly at the Committee. The first would require the Committee to report all changes in membership, and the second would require members[44] to update their disclosures based on any change in the amount of their claims of more than $50,000.

25. The first new requirement is simply unnecessary. All changes in Committee membership are publicly disclosed in notices filed by the U.S. Trustee. The Committee is certainly prepared to provide updated Rule 2019 statements as soon as reasonably practicable after a change in its membership and the appointment of a replacement member.

26. The second requirement is unduly burdensome, as it seeks to impose onerous reporting obligations on the modestly-sized local businesses serving on the Committee. More importantly, disclosures of each $50,000 change in claim amount are completely pointless from a disclosure perspective—no party in interest will change its evaluation of the Committee based on such a minor change.

27. Of course, the Committee supports disclosure as a general principle and has nothing to hide. In theory, the Committee would be happy to file a Rule 2019 statement on a weekly basis if the Court so directs. But the administrative burden of this "turbocharged" disclosure would fall on volunteer Committee members who are already busy operating businesses in Puerto Rico and struggling to move Puerto Rico's economy forward, and the legal costs of this disclosure would be borne by the Commonwealth. The Committee does not believe this type of disclosure is necessary or appropriate.

---

[44] In theory, this requirement would apply to "trade creditors, vendors, or other entities that provide services to the Commonwealth of Puerto Rico or its agencies or instrumentalities on an ongoing basis" that "are members of any Rule 2019(b) group (including, for the avoidance of doubt, [the Committee])," but practically speaking the requirement would only apply to the Committee's trade creditor members, as no other active creditor group includes trade creditors. *See* Mot. at 20.

-14-

28. Finally, the Committee should not be singled out for any particular disclosure regime—if the Committee is subject to any heightened disclosure, all other groups subject to Rule 2019 should be as well. This is only fair given the general applicability of Rule 2019 to a variety of entities in addition to official committees.

## **CONCLUSION**

29. For the reasons stated above, the Committee requests that the Motion be denied.

[*Remainder of page intentionally left blank.*]

WHEREFORE, the Committee respectfully requests that this Court deny the Motion.

Dated: May 24, 2019

*/s/ Luc A. Despins*

PAUL HASTINGS LLP
Luc. A. Despins, Esq. (Pro Hac Vice)
James R. Bliss, Esq. (Pro Hac Vice)
Nicholas A. Bassett, Esq. (Pro Hac Vice)
G. Alexander Bongartz, Esq. (Pro Hac Vice)
200 Park Avenue
New York, New York 10166
Telephone: (212) 318-6000
lucdespins@paulhastings.com
jamesbliss@paulhastings.com
nicholasbassett@paulhastings.com
alexbongartz@paulhastings.com

*Counsel to the Official Committee of Unsecured Creditors*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
aaneses@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors*