Hearing Date and Time: June 12, 2019 at 9:30 a.m. (A.S.T.)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

**OBJECTION OF THE AD HOC GROUP OF GENERAL OBLIGATION BONDHOLDERS TO THE OMNIBUS MOTION BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, AND ITS SPECIAL CLAIMS COMMITTEE TO EXTEND TIME FOR SERVICE OF SUMMONSES AND COMPLAINTS AND TO STAY CERTAIN ADVERSARY PROCEEDINGS RELATING TO CERTAIN CHALLENGED GO BONDS**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

# TABLE OF CONTENTS

Page

Introduction ........................................................................................................................ 1

Background ....................................................................................................................... 2

Argument .......................................................................................................................... 4

    A.    The Lien Avoidance Actions Should Proceed ................................................ 4

    B.    The Clawback Actions Should Proceed Insofar As They Seek Declarations As To The Validity Of PBA Bonds ...................................................................... 8

Conclusion ...................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Official Comm. of Equity Sec. Holders v. Mabey,*
    832 F.2d 299 (4th Cir. 1987) ................................................................................. 10

*U.S. Bank National Ass'n v. SMF Energy Corp. (In re Interstate Bakeries Corp.),*
    460 B.R. 222 (2011) ............................................................................................... 6

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.,*
    484 U.S. 365 (1988) ........................................................................................... 4, 5

**Statutes and Rules**

11 U.S.C. § 502(a) .......................................................................................................... 10

11 U.S.C. § 1129(b)(1) ..................................................................................................... 4

11 U.S.C. § 1129(b)(2) ................................................................................................. 4, 5

Fed. R. Bankr. P. 3021 ................................................................................................... 10

Fed. R. Bankr. P. 7004(b) ................................................................................................ 5

The Ad Hoc Group of General Obligation Bondholders (the "GO Group")[2] respectfully submits this Objection to the *Omnibus Motion by Official Committee of Unsecured Creditors, Financial Oversight and Management Board, and its Special Claims Committee to Extend Time for Service of Summonses and Complaints and to Stay Certain Adversary Proceedings Relating to Certain Challenged GO Bonds* (Dkt. No. 6857, the "Stay Motion").

## INTRODUCTION

1. Through their Stay Motion, the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), its Special Claims Committee (the "SCC"), and the Official Committee of Unsecured Creditors (the "UCC," and together with the Oversight Board and the SCC, "Movants") seek an order broadly staying all litigation in fifteen adversary proceedings commenced by Movants on May 2, 2019 (Adv. Proc. Nos. 19-281 to 19-288 and 19-291 to 19-297, the "Adversary Proceedings"). That relief is unwarranted.

2. As we explain below, the Adversary Proceedings pose critical legal questions—including whether some of the largest claims asserted against the Commonwealth of Puerto Rico (the "Commonwealth") are secured by a lien on certain designated revenues and other Commonwealth resources, and whether certain claims against the Commonwealth are valid at all. Those questions should be resolved promptly, according to the schedules provided by ordinary rules of procedure. The Adversary Proceedings should not be put off for some indeterminate period merely because the Oversight Board and UCC would prefer not to prosecute the litigation they have initiated. With limited exceptions noted below, the Stay Motion should accordingly be denied.

---

[2] Members of the GO Group file this objection exclusively on their own behalves and do not assume any fiduciary or other duties to any other creditor or person.

## BACKGROUND

3. The Adversary Proceedings that are the subject of the Stay Motion fall into two categories. See Stay Motion ¶ 1. The first category encompasses seven actions (Adv. Proc. Nos. 19-291 to 19-297, the "Lien Avoidance Actions") filed against bondholders who have filed proofs of claims on account of bonds issued or guaranteed by the Commonwealth of Puerto Rico and backed by a pledge of its full faith, credit, and taxing power ("Public Debt"). In those actions, the Oversight Board and UCC seek declarations that the Public Debt is not secured by liens on all or a subset of the Commonwealth's available resources; in the alternative, they seek to avoid such liens. Although the Stay Motion misleadingly suggests (at ¶ 1) that the Lien Avoidance Actions are limited to certain "Challenged GO Bonds," the complaints in those actions are clear that they extend to *all* Public Debt, including "general obligation . . . bonds issued by the Commonwealth" ("GO Bonds") and bonds "guaranteed by the Commonwealth on a good/full faith and credit basis." *E.g.*, Dkt. No. 1 in Adv. Proc. 19-291, at 1-2; see also *id.* Ex. A (identifying guaranteed bonds implicated by the complaint).

4. The second category of Adversary Proceedings that are the subject of the Stay Motion encompasses eight actions (Adv. Proc. Nos. 19-281 to 19-288, the "Clawback Actions") asserting claims for declaratory relief and to recover certain principal and interest payments made on account of eight series of GO Bonds and four series of bonds issued by the Puerto Rico Public Buildings Authority (the "PBA," and such bonds, "PBA Bonds"). Count I of the complaint in each of the Clawback Actions seeks a declaration that each of these twelve series of bonds implicated by the complaint (the "Challenged Bonds") are "null and void," on the theory that those bonds were issued in violation of the Commonwealth's constitutional debt limit. *E.g.*, Dkt. No. 1 in Adv. Proc. 19-281, ¶ 106. The remaining counts seek to recover payments of principal and

2

interest on account of the Challenged Bonds or seek related declaratory relief premised on the avoidability of such payments as fraudulent transfers. *E.g.*, *id.* ¶¶ 107-47.

5. Although the complaints in the Clawback Actions allege that all of the Challenged Bonds are "null and void," only a subset of the Challenged Bonds are the subject of a pending claim objection filed by the Oversight Board or UCC. At the time the Clawback Actions were commenced, only three series of GO Bonds issued in 2012 and 2014 were the subject of a joint claim objection filed by the Oversight Board and UCC. See Dkt. No. 4784 (the "Selective Claim Objection"). After filing of the Clawback Proceedings, the UCC (but not the Oversight Board) filed a separate claim objection explicitly targeting five series of GO Bonds issued by the Commonwealth in 2011. See Dkt. No. 7057 (the "2011 GO Bond Objection"). Neither the Oversight Board nor the UCC has filed a claim objection with respect to the four series of PBA Bonds encompassed within the Challenged Bonds, notwithstanding their allegations in the Clawback Actions that such bonds are "null and void" and their filing, as an appendix to the Clawback Action complaints, of a chart purporting to show that the mathematical assumptions of the Selective Claim Objection would require invalidation of such PBA Bonds as well. *E.g.*, Dkt. No. 1-14 in Adv. Proc. No. 19-281; see also Dkt. No. 1 in Adv. Proc. No. 19-281, ¶ 73.

6. The Stay Motion requests two closely related forms of relief with respect to each of the Adversary Proceedings. First, the Stay Motion requests an extension of the deadline for completing service of the complaints in the Adversary Proceedings on domestic defendants to November 1, 2019, without prejudice to Movants' ability to seek still further extensions. See Stay Motion ¶ 15. Second, the Stay Motion seeks to stay all litigation in the Adversary Proceedings pending either (a) a request by all plaintiffs in an Adversary Proceeding to resume the Adversary

Proceeding; or (b) further order of the Court, including following a request by any plaintiff or defendant to resume the Adversary Proceeding for good cause shown. *Id.*

## ARGUMENT

### A. The Lien Avoidance Actions Should Proceed

7. The Stay Motion fails to identify any valid ground for delaying litigation of the Lien Avoidance Actions. Accordingly, with one minor exception addressed below, the Stay Motion should be denied as it pertains to the Lien Avoidance Actions.

8. Prompt resolution of the Lien Avoidance Actions is necessary and beneficial because those actions pose legal questions that are of critical importance to any plan of adjustment for the Commonwealth. In broad strokes, the Lien Avoidance Actions ask whether the Public Debt is secured by a valid and enforceable lien on all of the Commonwealth's available resources (or, at a minimum, on a subset of such resources that have been specifically dedicated to payment of Public Debt). Resolving that question would clarify the treatment to which holders of Public Debt are entitled under any plan of adjustment—thereby facilitating the formulation of a plan that complies with the legal requirements for confirmation.

9. Indeed, answering the questions posed by the Lien Avoidance Actions is critical to resolution of this case. Under the Bankruptcy Code, "a secured claimant has a right to receive under a plan [of adjustment] the present value of his collateral." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 377 (1988).[3] A determination that a creditor's claim is secured by a valid and enforceable lien is accordingly highly consequential.

---

[3] Under the Code, a plan that is not accepted by each class of impaired creditors—commonly known as a "cramdown" plan—may be confirmed only if the Court concludes, among other things, that the plan "does not discriminate unfairly," and is "fair and equitable, with respect to each class of claims . . . that is impaired under, and has not accepted, the plan." 11 U.S.C. § 1129(b)(1). Section 1129(b)(2) of the Code establishes illustrative criteria for determining whether a cramdown plan is "fair and equitable with respect to a class." *Id.* § 1129(b)(2). With respect to a

4

10. Given the profound importance of the legal issues posed by the Lien Avoidance Actions, Movants' request for an indefinite period of delay could be justified (if at all) only by extraordinarily weighty reasons. In fact, none of the reasons offered by Movants is remotely persuasive.

11. As an initial matter, completing service on all domestic defendants within the 90-day deadline imposed by Federal Rule of Civil Procedure 4(m) would not prove difficult, let alone potentially "impossible," as Movants suggest. See Stay Motion ¶ 20. Movants assert that they "presently lack address information for many of the defendants and may not be able to obtain such information without a Court order." *Id.* **But the complaints in the Lien Avoidance Actions allege an address for <u>every single</u> named defendant.** See Dkt. No. 1 in Adv. Proc. No. 19-291, ¶¶ 8-77; Dkt. No. 1 in Adv. Proc. No. 19-292, ¶¶ 8-84; Dkt. No. 1 in Adv. Proc. No. 19-293, ¶¶ 8-86; Dkt. No. 1 in Adv. Proc. No. 19-294, ¶¶ 8-96; Dkt. No. 1 in Adv. Proc. No. 19-295, Ex. B; Dkt. No. 1 in Adv. Proc. No. 19-296, Ex. B; Dkt. No. 1 in Adv. Proc. No. 19-297, Ex. B. Under Bankruptcy Rule 7004, moreover, a complaint and summons may be served by first-class mail. See Fed. R. Bankr. P. 7004(b). There is simply no reason that the complaints in the Lien Avoidance Actions cannot be served within the 90-day period provided by Civil Rule 4(m).[4]

---

claim that is secured by a creditor's interest in the debtor's property, Section 1129(b)(2)(A) provides three alternative forms of treatment, each of which, the Supreme Court has explained, is calibrated to ensure that "a secured claimant has a right to receive under a plan [of adjustment] the present value of his collateral." *Timbers of Inwood Forest Assocs.*, 484 U.S. at 377.

[4] Movants thus err in invoking (Stay Motion ¶ 19) the possibility that dismissal of their complaints under Rule 4(m) would effectively be with prejudice due to the expiration of the statute of limitations on some or all of their claims. That consideration would be relevant only if Movants could show that, for some reason, they are unable to complete service within the 90-day period provided by Rule 4(m). As explained in the text, Movants have not (and cannot) make that showing.

5

12. Nor can a delay in completing service be justified by Movants' desire to "use their judgment to decide when moving forward" with the litigation would best serve the Movants' objectives. Stay Motion ¶ 18. That content-less standard would justify an indefinite delay in completing service whenever a plaintiff would prefer one—a result that cannot be squared with Rule 4(m)'s establishment of a deadline for completing service. Movants cite no authority to support their attempt to convert Rule 4(m) from a procedural rule into a mere suggestion.[5]

13. To the extent that Movants rely on the possibility of settlement discussions—mentioned in the Stay Motion's introduction (see ¶¶ 2, 4) but not its argument section—their argument is unpersuasive. Just like the possibility that a plaintiff may prefer to proceed more slowly, the possibility of settlement discussions is inherent in *any* litigation. It is not a case-specific ground justifying a departure from Rule 4(m)'s general rule. In any event, Movants ignore the fact that the Lien Avoidance Actions seek identical declaratory relief with respect to more than *470 defendants*. Unless Movants expect to settle with each of these defendants, the Lien Avoidance Actions will have to proceed at some point. Merely delaying that point in time would offer nothing in the way of efficiency. In any event, as the Court no doubt appreciates, an extended delay in litigation—particularly in this case, which has been marked by delay and false promises of progress—is more likely to inhibit settlement than to facilitate it. Settlements are more likely as

---

[5] Movants principally rely on the decision of the Bankruptcy Appellate Panel of the Eighth Circuit in *U.S. Bank National Ass'n v. SMF Energy Corp. (In re Interstate Bakeries Corp.)*, 460 B.R. 222 (2011). See Stay Motion ¶ 18. Although that decision upheld the bankruptcy court's authorization of a prolonged delay in effecting service of the debtor's preference-avoidance complaint, the Bankruptcy Appellate Panel emphasized that the debtor had used this period of delay to attempt to confirm a "100% reorganization plan" that would have repaid creditors in full and thus could have obviated the need to pursue *any* preference actions. See 460 B.R. at 231. Here, by contrast, Movants do not contend that delaying prosecution of the Lien Avoidance Actions might somehow make it unnecessary for the Court to rule on the issues raised therein. Movants' reliance on *SMF Energy* is therefore misplaced.

6

litigation progresses and both sides face the possibility of unfavorable rulings on the merits. It is no coincidence, we submit, that the Commonwealth-COFINA dispute was settled only after the parties had fully briefed and argued their motions for summary judgment.[6]

14. In any event (and despite vague generalizations offered by the Oversight Board's counsel at numerous recent hearings), the Oversight Board has consistently refused any meaningful engagement with the GO Group or its counsel. While the Oversight Board remains eager to create the appearance of progress toward consensual resolution of these cases, that is pure fantasy. Movants have instead used these past several months to launch litigation against disfavored creditors but not to make any serious effort to reach a global resolution of the Commonwealth's Title III case. Offering them the prospect of an extended and unwarranted adjournment of the Lien Avoidance Actions will only further delay the resolutions of disputes that are crucial to moving these cases forward.

15. Finally, Movants assert that the deadline for completing service should be extended because they have other things to do. There are "numerous other matters," they say, "that will require much of Movants' time and attention during the next few months." Stay Motion ¶ 20. Unsurprisingly, however, Movants cite no authority for the proposition that they should be exempted from ordinary procedural deadlines simply because they cannot be bothered to prosecute the litigation they have initiated. That argument should accordingly be rejected.

16. In addition to their request for an extension of the deadline for completing service, Movants also request a general stay of proceedings in the Lien Avoidance Cases on the ground

---

[6] Movants observe (Stay Motion ¶ 4) that reaching settlements with certain defendants may reduce costs associated with service. Given that the Lien Avoidance Actions can be served by first-class mail, however, any such savings would be trivial—particularly in comparison to the astronomical sums that the professionals representing the Oversight Board and the UCC have billed and continue to bill in these Title III cases.

7

that each defendant might otherwise have a different answer deadline depending on when it is served. Stay Motion ¶ 23. That is a problem of Movants' own making; they are the ones who elected to sue hundreds of parties, apparently without any plan for effecting simultaneous or otherwise prompt service. In any event, that concern would justify only an order suspending defendants' deadline to answer the complaints pending a further order of the Court setting a global deadline applicable to all defendants. It does not justify a complete stay of proceedings, which would presumably preclude defendants from moving to dismiss the complaints in advance of the answer deadline being set (or even prior to service).

17. For all of these reasons, the Stay Motion should be denied as it pertains to the Lien Avoidance Actions, except that the Court should enter an order suspending defendants' obligation to answer the complaints pending further order of the Court setting a global answer deadline.

### B. The Clawback Actions Should Proceed Insofar As They Seek Declarations As To The Validity Of PBA Bonds

18. Movants' request for a blanket delay of proceedings in the Clawback Actions should also be denied. While certain aspects of those actions may appropriately be stayed—and it is conceivable that Movants will ultimately establish a basis for some extension of the deadline for completing service—litigation should proceed on the aspects the Clawback Actions that challenge the validity of PBA Bonds that are not the subject of a pending claim objection filed by the Oversight Board or UCC.

19. As an initial matter, Movants have not demonstrated a basis for extending Rule 4(m)'s deadline for completing service. For the reasons discussed above (see ¶¶ 12, 15, *supra*), the Court should reject Movants' arguments that they may substitute their own "judgment" (Stay Motion ¶ 18) for Rule 4(m)'s deadline and that their competing litigation priorities justify wholesale adjournment of the cases (*id.* ¶ 20). And while it is possible that the absence of reliable

8

address information for the defendants in the Clawback Actions may make it impossible for Movants to complete service within 90 days (see *id.*), that possibility does not justify an extension of the deadline at this time. Rather, the appropriate course would be to require Movants to make good-faith attempts to complete service within the ordinary timeframe, without prejudice to their ability to return to the Court to request an extension based on appropriate documentation that compliance with the 90-day deadline is not feasible. The record currently before the court is mere *ipse dixit* that this task cannot be accomplished in the span of nearly three months (and despite the apparent availability of numerous lawyers across multiple firms to bill time to this case).

20. Movants' request for a complete stay of the Clawback Actions should also be denied. As explained above, the possibility that different service dates for each of the many defendants would lead to a proliferation of answer deadlines could potentially justify an order suspending defendants' deadline to answer pending a further order of the Court setting a global deadline applicable to all defendants, but it does not justify a complete stay of the proceedings. See ¶ 16, *supra*.

21. Movants also contend (Stay Motion ¶ 24) that a stay of the Clawback Actions is warranted because those actions are interrelated with the Selective Claim Objection, and it would be inefficient to litigate them in parallel. Movants are correct, but only in part: The Clawback Actions seek primarily monetary relief—in the form of clawback of principal and interest payments—that is predicated on a conclusion that the Challenged Bonds are null and void. See ¶ 4-5, *supra*. To the extent that the validity of the Challenged Bonds will be litigated in a pending claim objection filed by the Oversight Board or UCC—that is, GO Bonds issued in 2011, 2012,

and 2014—the GO Group has no objection to staying the portions of the Clawback Actions that pertain to such Challenged Bonds.[7]

22. As explained above, however, there is currently no alternative forum for litigating the allegations in the Clawback Action complaints that four series of *PBA Bonds* are null and void. Those bonds are not currently the subject of any claim objection filed by the Oversight Board or UCC. As a consequence, it is does not make sense to stay litigation of the portion of the Clawback Actions that relates to these PBA Bonds in deference to some other proceeding in these Title III cases.

23. We recognize that this situation is rather bizarre, but it is the product of the Oversight Board and UCC's desire to have things both ways: They apparently hope to use their complaints in the Clawback Actions as placeholders for a potential challenge to the PBA Bonds encompassed in the list of Challenged Bonds, but for some reason seek to withhold filing a separate claim objection to such bonds or litigating the count of the Clawback Actions that expressly seeks a declaration that the bonds are "null and void."

24. The Court should not countenance this strategy. Whether a claim is the subject of a pending objection may have important procedural implications in these Title III cases. For example, a claim as to which an objection is pending may not be deemed an allowed claim, see 11 U.S.C. § 502(a), and only allowed claims may receive distributions in a plan of adjustment, see see Fed. R. Bankr. P. 3021; *Official Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 302 (4th Cir. 1987). Holders of disputed claims—*i.e.*, those as to which an objection remains

---

[7] The GO Group's non-opposition to a stay of the portion of Count I of the Clawback Actions that pertain to GO Bonds issued in 2011 is premised on the UCC being permitted to proceed with the 2011 GO Bond Objection on an omnibus basis. If the UCC were to be denied authorization to pursue the 2011 GO Bond Objection, then no stay of proceedings in the Clawback Actions with respect to those GO Bonds would be appropriate.

pending—must be reserved for in a plan, but they are not entitled to receive distributions until the dispute has been resolved. Basic fairness and procedural regularity therefore make it absolutely critical that the Oversight Board and UCC be transparent as to which series of bonds they are challenging. The status quo—in which the relevant bonds appear to be both unchallenged and (perhaps) only "provisionally" challenged at the same time—is untenable.

25. Granting Movants' request for an open-ended stay of the Clawback Actions would prolong the period of uncertainty without any justification. Thus, a stay of the portion of the Clawback Actions pertaining to the challenged PBA Bonds should not be granted unless the Oversight Board and UCC lodge a separate claim objection to such bonds in which their validity would be adjudicated in an orderly fashion.

## CONCLUSION

26. For the foregoing reasons, the Court should enter an order denying the relief requested in the Stay Motion, other than (i) suspending the deadline for defendants to answer or otherwise respond to the complaints in the Adversary Proceedings pending further order of the Court and (ii) staying litigation of the Clawback Actions except for the portion of Count I of the complaints in those proceedings that seeks a declaration regarding the validity of certain PBA Bonds.

| | |
|---|---|
| Dated: May 28, 2019 | Respectfully submitted, |
| /s/ Ramón Rivera Morales | /s/ Mark T. Stancil |
| J. Ramón Rivera Morales | Mark T. Stancil (admitted *pro hac vice*) |
| USDC-PR Bar No. 200701 | Gary A. Orseck (admitted *pro hac vice*) |
| Andrés F. Picó Ramírez | Kathryn S. Zecca (admitted *pro hac vice*) |
| USDC-PR Bar No. 302114 | Donald Burke (admitted *pro hac vice*) |
| JIMÉNEZ, GRAFFAM & LAUSELL | ROBBINS, RUSSELL, ENGLERT, ORSECK, |
| P.O. Box 366104 | UNTEREINER & SAUBER LLP |
| San Juan, PR 00936 | 2000 K Street, N.W., 4th Floor |
| Telephone: (787) 767-1030 | Washington, DC 20006 |
| Facsimile: (787) 751-4068 | Telephone: (202) 775-4500 |
| Email: rrivera@jgl.com | Email: mstancil@robbinsrussell.com |

*Counsel to the Ad Hoc Group of General Obligation Bondholders*