UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------X
:
In re: :
:
THE FINANCIAL OVERSIGHT AND : PROMESA
MANAGEMENT BOARD FOR PUERTO RICO, : Title III
:
as representative of : Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO *et al.*, : (Jointly Administered)
:
Debtors.[1] :
---------------------------------------------------------X

**LIMITED RESPONSE AND RESERVATION OF RIGHTS TO OMNIBUS MOTION BY OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FINANCIAL OVERSIGHT AND MANAGEMENT BOARD, AND ITS SPECIAL CLAIMS COMMITTEE TO EXTEND TIME FOR SERVICE OF SUMMONSES AND COMPLAINTS AND TO STAY CERTAIN ADVERSARY PROCEEDINGS [ADV. NOS. 19-362, 19-363, 19-364, 19-365] RELATING TO CERTAIN HTA BONDS**

**COME NOW** AmeriNational Community Services, LLC (hereafter "AmeriNat" or the "Servicer"), as servicer for the GDB Debt Recovery Authority (the "DRA"), and Cantor-Katz Collateral Monitor LLC, a Delaware limited liability company (the "Collateral Monitor"; together with the Servicer, the "DRA Parties") which serves as the collateral monitor for Wilmington Trust, N.A. in connection with the new bonds issued by the DRA pursuant to the *Government Development Bank for Puerto Rico Debt Restructuring Act*, Act No. 109-2017, as amended by Act No. 147-2018 (the "GDB Restructuring Act"), and the approved Qualifying Modification for the

---

[1] The Debtors in these title III cases, along with each Debtor's respective title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566(LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780) (Last Four Digits of Federal Tax ID: 3747).

1

Government Development Bank for Puerto Rico[2] under Title VI of the *Puerto Rico Oversight, Management and Economic Stability Act*, by and through the undersigned legal counsel, and respectfully submit this limited response and reservation of rights to the *Omnibus Motion by Official Committee of Unsecured Creditors, Financial Oversight and Management Board, and Its Special Claims Committee to Extend Time for Service of Summonses and Complaints and to Stay Certain Adversary Proceedings [Adv. Nos. 19-362, 19-363, 19-364, 19-365] Relating to Certain HTA Bonds* (the "Motion") (Dkt. No. 7060).[3]

## PRELIMINARY STATEMENT

The Court should deny the Motion as it would substantially harm the DRA Parties by depriving them of their right to be heard in a timely fashion merely because Movants[4] lack the "time and attention" to devote to these proceedings. As set forth below, Movants do not satisfy the burden required of them to obtain either form of relief sought in the Motion: extending time for service of the Complaint and indefinitely staying these proceedings, thus extending the entire litigation timeline. The Movants surely could have foreseen the difficulty of serving hundreds of defendants in the midst of a complex Title III case and could have prepared for this eventuality

---

[2] *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS).

[3] Capitalized terms used herein but not defined shall have the meaning ascribed to them in the Motion.

[4] The DRA Parties hereby challenges the Committee's standing in pursuing this Motion, as well as prosecuting the Adversary Complaints, for the reasons set forth in the *Urgent Motion of Assured Guaranty Corp. to Compel Compliance by the Official Committee of Unsecured Creditors with Federal Rule of Bankruptcy Procedure 2019 and to Amend the Eighth Amended Case Management Procedures* (Dkt. 6963) and the *Joinder to Urgent Motion of Assured Guaranty Corp. and Assured Guaranty Municipal Corp. to Compel Compliance with the Official Committee of Unsecured Creditors with Federal Rule of Bankruptcy Procedure 2019 and to Amend the Eighth Amended Case Management Procedures* (Dkt. 7094), which are hereby adopted and incorporated by reference herein.

over the two years since the filing of the HTA Title III. They failed to do so and the Court should not reward them with an extended stay of pending litigation.

To extend the time for service, Movants must demonstrate good cause for the extension, which requires a showing of good faith and a reasonable basis for their non-compliance with default service rules. Moreover, the Court may consider factors including the prejudice to the defendant in exercising its discretion to deny an extension. The Motion fails under these standards.

Movants' argument that service would be difficult and burdensome as to certain defendants does not apply to the DRA Parties, who have been visible in these proceedings for some time and whose contact information for service Plaintiffs either possess or can easily obtain. More critically, the Motion fails because the requested relief would deprive defendants like the DRA Parties of their rights to prompt resolution of disputes, solely in exchange for providing a modicum of convenience to the Movants.

The Court should therefore deny Movants' request for extension of the service period for the Adversary Complaints and/or Movants' petition for a stay of the litigation against the DRA given to the DRA's unique circumstances. In the alternative, the Court should segregate and "bifurcate" the litigation and prosecution of Movants' Adversary Complaint against the DRA from the other defendants in order to allow the DRA Parties to pursue the defense of their rights and interests in respect of the Adversary Complaint.

## BACKGROUND

### I. The DRA Becomes HTA's Largest Creditor

1. The DRA is a statutory public trust and governmental instrumentality of the Commonwealth, created pursuant to the GDB Restructuring Act to facilitate the restructuring of GDB's indebtedness pursuant to the Qualifying Modification. *See* Act No. 109-2017 at Arts. 201

3

and 204. This Court approved the Qualifying Modification on November 7, 2018. *See* Dkt. No. 270 of Civil Case No. 18- 01561 (LTS).

2. Under the Qualifying Modification[5], the DRA received certain property from the GDB, consisting primarily of loans made by the GDB to certain Commonwealth entities. *See* Act No. 109-2017 at Arts. 204 and 207. The Commonwealth charged the DRA with receiving the property transferred from the GDB, administering and managing this property, and then liquidating it to pay obligations under certain new bonds issued by the DRA to former GDB bondholders. *Id.*

3. As part of the Qualifying Modification, the GDB transferred ownership of 24 loans the GDB made to HTA which, collectively, have an outstanding principal balance in excess of $1.7 billion and no less than $567 million in interest, fees and expenses related to such loans as of November 7, 2018. *See* Offering Memorandum for GDB Debt Recovery Authority Bonds (Taxable) ("OM"), dated as of November 7, 2018 at 128. These loans are payable primarily from, and secured by, a pledge of certain revenues allocated by the Commonwealth to HTA by statute. *See* Act No. 30-2013 (June 25, 2013); Act No. 31-2013 (June 25, 2013).

4. As part of the Qualifying Modification, the GDB also transferred to DRA $200,000,000 in principal of 1998 *Puerto Rico Highway and Transportation Authority, Transportation Revenue Bonds (Series A). See* OM at 128.

**II.     The HTA Prosecution Procedures Motion is Approved**

5. On May 8, 2019, the parties filed their *Urgent Motion for Entry of Order Approving Stipulation and Agreed Order By and Among Financial Oversight and Management Board, its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint*

---

[5] The terms of the Qualifying Modification were authorized and sanctioned by the Oversight Board who, in turn, requested and defended its approval in the GDB Title VI proceedings. *See* Dkt. No.1 and 270 of Civil Case No. 18- 01561 (LTS).

4

*Prosecution of Certain Causes of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth of Puerto Rico* (the "Prosecution Procedures Motion") (Dkt. No. 6867), seeking approval of a stipulation and order to, among other things, establish procedures for (i) the appointment of Special Claims Committee members and Committee members as "co-trustees and co-plaintiffs" with respect to certain adversary proceedings, (ii) appointment of the Committee as the sole trustee and plaintiff with respect to certain adversary proceedings, and (iii) the parties' litigation efforts (the "Stipulation").

6. On May 9, 2019, the Court entered an order setting May 12, 2019 at 6:00 P.M. AST as the objection deadline to the Prosecution Procedures Motion and scheduling a hearing on May 16, 2019 to consider the same. *See* Dkt. No. 6880.

7. The DRA Parties filed their *Limited Objection and Reservation of Rights to the Urgent Motion for Entry of Order Approving Stipulation and Agreed Order by and Among Financial Oversight and Management Board, its Special Claims Committee, and Official Committee of Unsecured Creditors Related to Joint Prosecution of Certain Causes of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth of Puerto Rico* (the "Limited Objection") on May 12, 2019. *See* Dkt. No. 6910.

8. The Court approved the Prosecution Procedures Motion and the Stipulation at the May 16, 2019. *See* Dkts. No. 6989 and 6990.

**II.     The Movants File the Adversary Complaints and Move to Request Extension of Service of Summons and to Stay the Litigation**

9. On May 20, 2019, the Movants filed the Adversary Complaints Nos. 19-362, 19-363, 19-364, and 19-365 which, essentially, (a) challenge the validity, priority and extent of certain liens relating to HTA bonds; (b) seek the avoidance and/or preservation of certain funds or assets

5

regarding defendants' security interest overt HTA; and/or (c) requesting the disallowance of certain of defendants' security interests over HTA (the "Adversary Complaints").

10. The DRA, by and through AmeriNat, is named as a defendant in Adversary Complaint No. 19-363. *See* Dkt. No. 1 of Adversary Complaint No. 19-363.

11. On May 21, 2019, Movants filed the Motion requesting: "(i) [extension of] the time for service of the summons and complaint in [the Adversary Complaints] to November 18, 2019, without prejudice to further extensions, and (ii) otherwise staying the [Adversary Complaints]". *See* Dkt. No. 7060 at p. 4.

## DISCUSSION

### I. Extension of Time for Service of the Summons is Inappropriate Against the DRA

#### A) Movants have Failed to Show "Good Cause" to Extend the Term under Rule 4(m)

12. Rule 7004 of the Federal Rules of Bankruptcy Procedure incorporates Rule 4(m) of the Federal Rules of Civil Procedure, which states, at its pertinent part:

> **(m) Time Limit for Service.** If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m).

13. The plaintiff has the burden to show "good cause" to receive an extension of the 90-day service term under Rule 4(m). *See* United States v. Ayer, 857 F.2d 881, 884-85 (1st Cir. 1988); 1 Moore's Federal Practice - Civil § 4.82 (2019). "Good cause" requires a showing of (i) good faith and (ii) a reasonable basis for noncompliance within the time specified. *See* Thrasher v. City of Amarillo, 709 F.3d 509, 511 (5th Cir. 2013) (*citing* Winters v. Teledyne Movible Offshore,

6

Inc., 776 F.2d 1304, 1306 (5th Cir. 1985)). Moreover, "**simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice**." Id. (Emphasis added). See De-La-Cruz-Arroyo v. Comm'r of Soc. Sec., 1998 U.S. App. LEXIS 10558, at *2 (1st Cir. 1998) (attorney inadvertence is not enough to grant extension under Rule 4); Broitman v. Kirkland (In re Kirkland), 86 F.3d 172, 174 (10th Cir. 1996) (interpreting "good cause" narrowly and rejecting inadvertence or neglect as valid basis for extension under Rule 4(m)).

14. Movants argue that they satisfy the "good cause" standards for two reasons: (i) "serving all domestic defendants within 90 days would be difficult [because] Movants presently lack address information for some of the defendants"; and (ii) "there are numerous other matters in these title III cases … that will require much of Movants' time and attention during the next few months." Dkt. No. 7060 at ¶ 18. See also Id. at ¶ 6.

15. These arguments do not constitute "good cause" sufficient to warrant an extension of the 90-day service term against the DRA for the following reasons. *First*, the DRA, as a statutory public trust and governmental instrumentality of the Commonwealth, possesses a unique relationship with the Commonwealth and the HTA which allows Movants to easily identify the DRA Parties' contact information for purposes of servicing the Adversary Complaints. Movants' continued visibility of the DRA Parties due to their active involvement in the Title III cases ensures that Plaintiffs can serve them easily.[6]

16. Thus, contrary to Movants' assertions otherwise, there is no impediment precluding Movants from identifying the DRA Parties' addresses and contact information in order to serve DRA within the prescribed 90-day period under Rule 4(m).

---

[6] *See* Dkts. No. 4970 – 4971, 5628, 6262, 6910, 6955, and 7094. *See also* Dkt. 537 of Case No. 17-3567-LTS.

7

17. *Second*, Movants' allegations that they are involved in "numerous other matters in these title III cases" to be able to timely serve the Adversary Complaints [Dkt. No. 7060 at ¶ 18] do not pass muster as sufficient "good cause" for granting an extension of time under Rule 4(m).

18. The mere fact that Movants are occupied with other Title III matters does not equate to the type of excusable neglect that may suffice for "good cause" to extend the 90-day term under Rule 4(m). *See* Thrasher, 709 F.3d at 511 (proof of good cause requires at least as much as would be required to show excusable neglect). Rather, Movants' current predicament is more the product of inadvertence, mistake, and/or neglect due to the way in which Movants have opted to pursue these Adversary Complaints and the foreseeability of this dispute with the DRA Parties.[7] Their failure to foresee complications regarding service does not constitute excusable neglect or good cause.

19. The Court must therefore deny Movants' request for extension of time to serve the DRA, given that Movants' allegations of "good cause" lack merit with respect to the DRA Parties, which may easily be served by Movants within the time-period prescribed by Rule 4(m) of the Federal Rules of Civil Procedure given their visibility in these proceedings.

### B) Permissive Extension is Inappropriate Against the DRA

20. Perhaps recognizing that they do not meet the "good cause" threshold for mandatory extension under Rule 4(m), Movants appear to alternatively seek extension of the 90-day service term pursuant to the Court's discretionary authority – though they do not make those arguments in an explicit fashion. *See* Dkt. 7060 at 5-6.

21. In doing so, Movants rely on the decisions U.S. Bank N.A. v. SMF Energy Corp. (In re Interstate Bakeries Corp.) 460 B.R. 222 (B.A.P. 8th Cir. 2011), and AIG Managed Mkt.

---

[7] Concerns as to the manner in which Movants intended to pursue these Adversary Complaints were highlighted by the DRA Parties in their Limited Objection. *See* Dkt. No. 6910.

Neutral Fund v. Askin Capital Mgmt., L.P., 197 F.R.D. 104, 109 (S.D.N.Y. 2000), for the proposition that extension of the Rule 4(m) period is appropriate "where, as here, the debtor commenced litigation against a large number of defendants for the purpose of meeting a statute of limitations deadline" [Dkt. No. 7060 at ¶ 16] and "…to prevent a dismissal from effectively becoming with prejudice due to the expiration of a statute of limitations." Id. at ¶ 17.

22. Courts have the discretion to extend the terms for service under Rule 4(m) even in the absence of "good cause" shown. *See* Moore's at § 4.82. However, to grant a permissive extension, the Court must examine "'a number of factors, *including* whether: (a) the party to be served received actual notice of the lawsuit; (b) the defendant would suffer ... prejudice; and (c) plaintiff would be severely prejudiced if his complaint were dismissed.'" Franchini v. Bangor Publ'g Co., 2019 U.S. Dist. LEXIS 53752, at *2 (D. Me. 2019) (*citing* Riverdale Mills Corp. v. U.S. Dep't of Transp., 22 F.R.D. 343, 393, 395 (D. Mass. 2005)) (Emphasis original). *See* Lamoureux v. Ocwen Loan Servicing, 2018 U.S. Dist. LEXIS 115063, at *3 (D.R.I. 2018) ("[A] district court may consider factors like a statute of limitations bar, prejudice to the defendant, actual notice of a lawsuit, and eventual service.")[8]; Taylor v. Milly's Pizzeria Inc., 2016 U.S. Dist. LEXIS 53024, at *2 (E.D.N.Y. 2016) (the court weighs equitable considerations in determining whether an extension of time should be granted in the absence of good cause); Williams v. Kan. Dep't of Soc. & Rehab. Servs., 2011 U.S. Dist. LEXIS 53070, at *3 (D. Kan. 2011) (*referencing* Espinoza v. United States, 52 F.3d 838, 842 (10th Cir. 1995)) ("If a plaintiff fails to make a showing of good cause, the court still may grant a permissive extension after examining a number of factors, including the statute of limitation's role, whether the defendant had notice of the suit, and whether the delayed service prejudiced the defendant.").

---

[8] *Citing* Ruiz v. Rhode Island, 2018 U.S. Dist. LEXIS 9462, 2018 WL 514539, at *2 (D.R.I. 2018).

9

23. Despite the need for the Court to balance the equities prior to granting a permissive extension under Rule 4(m), Movants suggest that the Court should focus on one element only when ruling on their Motion: Plaintiffs' prejudice if the Adversary Complaints were dismissed due to the statute of limitations. *See* Dkt. No. 7060 at ¶¶ 16-17.

24. This Court's analysis, however, does not end with this element only. The United States District Court for the Southern District of New York ruled to the contrary in <u>Labounty v. Coombe</u>, 2004 U.S. Dist. LEXIS 6593 (S.D.N.Y. 2004) (*referencing* <u>Frasca v. United States</u>, 921 F.2d 450, 453 (2d Cir. 1990)), by stating that:

> If a dismissal for failure to serve within the time allowed by Rule 4(m) will prevent the plaintiff from pursuing the action because the statute of limitations has run since the plaintiff filed suit, that factor may counsel against dismissal and support an extension of the time to serve…**Nonetheless, the presence of a statute of limitation bar does not require an extension of the time to serve**.

*Id.* at *10-12 (Emphasis added).

25. The Court is instead required to analyze the remaining elements in determining whether to grant permissive extension of the 90-day term under Rule 4(m), which, as will be discussed below, all weigh in favor of denying Movants' requested relief against the DRA Parties.

### i. Prejudice to DRA

26. Granting the extension will severely prejudice the DRA Parties. According to the Motion, the Movants wish to seek extension of the service of the Adversary Complaints until November 18, 2019 "**without prejudice to further extensions**" [Dkt. No. 7060 at p. 4 (Emphasis added)] while simultaneously staying the Adversary Complaints "until service has been completed on all or a significant number of the defendants." *Id.* at ¶ 21.

27. By filing the Adversary Complaint, Movants have challenged the validity of the secured status of the HTA bonds held by the DRA. The DRA Parties are ready to immediately and

10

vigorously defend their rights, positions, and interests in the Adversary Complaint in order to dispose of the Adversary Complaint as quickly as possible and obtain clarity as to the extent of their secured interests in the HTA bonds. The Due Process Clause of the U.S. Constitution protects against oppressive delay in judicial proceedings even within the statute of limitations period. *See, e.g.*, *United States v. Sabath*, 990 F. Supp. 1007, 1020 (N.D. Ill. 1998) (finding due process violation where government recklessly delayed in pursuing action within statute of limitations period, greatly prejudicing defendant; holding that "[t]he requirement of prompt and fair justice has been part of the common law tradition since the Magna Carta"). These due process rights are more pronounced here where Movants concede that the sole reason they filed their Motion now was to evade an impending statute of limitations bar.

28. The granting of a blanket extension to serve the Adversary Complaint while staying the prosecution of the Adversary Complaint in its entirety will create an untenable situation where the DRA Parties would be precluded – for a substantial period of time – from obtaining the clarity needed as to the extent, validity, and priority of their secured positions which, in turn, adversely affects the DRA from fulfilling its obligations under the Qualifying Modification to liquidate its property and pay the new bonds issued by the DRA to former GDB bondholders.

29. Given the magnitude of the DRA Parties' claims, this is not a matter that should be put off for the ill-defined length of time requested by Movants. Indeed, Movants' open-ended request for relief is an abuse of Rule 4(m), which must be "construed, administered, and employed by the court and the parties to secure the just, *speedy*, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (Emphasis added).

11

### ii. There is No Risk of Prejudice to Plaintiffs in Having to Timely Serve the DRA Parties

30. As previously mentioned, Movants either know or have quick access to the DRA Parties' contact information to proceed with timely service of the Adversary Complaints due to the DRA's unique relationship with the Commonwealth and HTA, as well as the DRA Parties' visibility in the Title III cases.

31. Therefore, nothing precludes Movants from timely serving the DRA Parties in order to allow the DRA Parties to assert their defenses and dispose of the Adversary Complaint as expeditiously as possible.

32. As discussed above, the broad relief sought by Movants is highly prejudicial to the DRA Parties and does not merit the permissive extension of the 90-day term under Rule 4(m).

## II. Movants Have Failed to Meet Their Burden to Stay the Adversary Complaints

33. The Motion's final request is for a stay of the Adversary Complaints against all the defendants "regardless of whether service has been completed on certain defendants" [Dkt. No. 7060 at ¶ 22] and "until service has been completed on all or a significant number of the defendants." *Id.* at ¶ 21.

34. Courts have the discretion to stay an action in the interest of justice and efficiency. Hewlett-Packard Company v. Berg, 61 F.3d 101, 105 (1st Cir. 1995); Taunton Gardens Co. v. Hills, 557 F.2d 877, 879 (1st Cir. 1977). The Supreme Court has indicated that the enforcement of this discretion "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).

35. As such, courts typically look at the interests favoring a stay and the interests prejudiced by the stay. Total Petroleum P.R. Corp. v. T.C. Oil, Corp., 2010 U.S. Dist. LEXIS 153509, at *3 (D.P.R. 2010). This is consistent with the Supreme Court's statement that "the

suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." Landis, 299 U.S. at 255.

36. Movants only proffer in support of their request for a stay is that a stay of the Adversary Complaints will assist in promoting the efficiency of these cases since, "[a]bsent a stay, each defendant could have a different answer deadline depending on when service occurs." Dkt. No. 7060 at ¶ 21.

37. Once again, the Motion is devoid of any consideration of the hardship that such a stay would have on the DRA Parties who can be easily served and are ready to immediately pursue the defense of their rights and interests in the Adversary Complaints.

38. An additional factor that courts look to when considering the issuance of a stay of an action is the duration of the stay requested. For instance, "a stay that can be considered 'immoderate or indefinite' may be considered an abuse of discretion." Total Petroleum, 2010 U.S. Dist. LEXIS 153509, at *3 (*referencing* Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997)).

39. The type of stay envisioned by Movants in their Motion appears to be of an indefinite duration and should not be issued by this Court. This situation further denotes the prejudicial effect that such a stay would have on the DRA Parties, for whom a stay of this nature will only result in an unnecessarily prolonged uncertainty as to the status of its secured status in the HTA bonds without the prospect of a quick resolution of the Adversary Complaint (which the DRA Parties are ready to immediately pursue and litigate).

### III. In the Alternative, the Court Should Bifurcate the Prosecution of DRA Parties' Adversary Complaint from the other Defendants

40. In the alternative, should the Court determine that Movants have shouldered their burden to obtain an extension of the service of summons under Rule 4(m) and/or for the issuance of a stay of the Adversary Complaints, the DRA Parties respectfully submit that the proper resolution of the Motion should be to bifurcate the prosecution of Movants' Adversary Complaint against the DRA from the other defendants.

41. The situation in Interstate Bakeries Corp (a case which Movants heavily rely upon in their Motion) is instructive for these purposes. There, the debtors filed a motion asking the bankruptcy court to allow the debtor to name approximately 400 potential preference defendants in a single complaint, which request was approved by the bankruptcy court. *Id.*, 460 B.R. at 225.[9] The bankruptcy court eventually confirmed debtor's plan of reorganization and approved a settlement between the debtors, the pre-petition lenders and the official committee of unsecured creditors, which, among other things, created a creditors' trust and assigned a number of avoidance claims to said trust. The trustee for the creditors' trust then moved to "bifurcate" the original complaint into actions with fewer defendants, and the bankruptcy court granted said request. *Id.* 460 B.R. at 226.

42. As explained in detail above, the DRA Parties' circumstances differ from other defendants to the Adversary Complaints and, thus, should be treated differently. *First*, the DRA, as a statutory public trust and governmental instrumentality of the Commonwealth, stands in a unique position with respect to the Commonwealth and the HTA. *Second*, this dynamic between the DRA, the Commonwealth and the HTA, coupled with the DRA Parties' active role in the Title III cases, means that Movants possess ease-of-access and visibility as to the DRA Parties' contact

---

[9] *See also* In re Interstate Bakeries Corp., et. al, No. 04-45814-JWV (Bankr. W.D. Mo. Sept. 19, 2006).

14

information and can easily serve them within the time-period prescribed by Rule 4(m) of the Federal Rules of Civil Procedure. *Third*, the DRA Parties possess particular defenses against the Adversary Complaints due to the circumstances surrounding the approval of the Qualifying Modification and the creation of the DRA, which defenses are exclusively available to the DRA Parties. *Fourth*, the DRA Parties are ready, willing and able to immediately defend their rights and interests in the Adversary Complaints and will be severely prejudiced by delaying resolution of these issues.

43. For these reasons, the litigation and prosecution of Movants' Adversary Complaint against the DRA should be segregated and "bifurcated" from the other defendants therein.

## RESERVATION OF RIGHTS

44. The DRA Parties reserve all rights and remedies with respect to the Motion, including but not limited to, the right to raise additional arguments at the hearing on the Motion.

## CONCLUSION

45. Based on the foregoing, the DRA Parties respectfully request that the Court deny the Motion or, in the alternative, that the Court bifurcate the litigation and prosecution of Movants' Adversary Complaint against the DRA from the other defendants therein, and to grant such further relief that is just and proper.

Dated: San Juan, Puerto Rico
May 28, 2019

**C. CONDE & ASSOC. LAW OFFICES**

By: */s/ Carmen D. Conde Torres*

Carmen D. Conde Torres
(USDC No. 207312)
254 San José Street
Suite 5
San Juan, PR 00901-1523
Tel. 787-729-2900
Fax. 787-729-2203
E-Mail: condecarmen@condelaw.com

-and-

**ORRICK, HERRINGTON &
SUTCLIFFE LLP**

By: */s/ Douglas S. Mintz*
Douglas S. Mintz (admitted pro hac vice)
Columbia Center
1152 15th Street, N.W.
Washington, D.C. 20005-1706
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
E-mail: dmintz@orrick.com

By: */s/ Peter Amend*
Peter Amend (admitted pro hac vice)
51 West 52nd Street
New York, N.Y. 10019
Telephone: (212) 506-5000
E-mail: pamend@orrick.com

*Attorneys for Cantor-Katz Collateral Monitor LLC, as Collateral Monitor for GDB Debt Recovery Authority*

-and-

**MCCONNELL VALDÉS LLC**

270 Muñoz Rivera Avenue, Suite 7
Hato Rey, Puerto Rico 00918
PO Box 364225
San Juan, Puerto Rico 00936-4225
Telephone: 787-250-5632
Facsimile: 787-759-9225

By: */s/Arturo J. García-Solá*
Arturo J. García-Solá
USDC No. 201903
Email: ajg@mcvpr.com

By: */s/Nayuan Zouairabani*
Nayuan Zouairabani
USDC No. 226411
Email: nzt@mcvpr.com

*Attorneys for AmeriNational Community Services, LLC as servicer for the GDB Debt Recovery Authority*