# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

---------------------------------------------------------------------- x

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
| | : |
| as representative of | : Case No. 17-BK-3283 (LTS) |
| | : |
| THE COMMONWEALTH OF PUERTO RICO *et al.*, | : (Jointly Administered) |
| | : |
| Debtors.[1] | : |

---------------------------------------------------------------------- x

| | |
|---|---|
| In re: | : |
| | : |
| THE FINANCIAL OVERSIGHT AND | : PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO, | : Title III |
| | : |
| as representative of | : Case No. 17-BK-3566 (LTS) |
| | : |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | : |
| GOVERNMENT OF THE COMMONWEALTH OF | : |
| PUERTO RICO, | : |
| | : |
| Debtor. | : |

---------------------------------------------------------------------- x

## OBJECTION OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF PUERTO RICO FUNDS TO VACATE APPOINTMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN TITLE III CASE OF EMPLOYEES RETIREMENT SYSTEM

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ........................................................................................... 1

OBJECTION ..................................................................................................................... 4

I.    Motion to Vacate Is Nothing More Than Litigation Tactic by Alleged Secured
      Creditors ............................................................................................................... 4

II.   Court Lacks Authority to Vacate Appointment of Statutorily Mandated
      Committee ............................................................................................................. 7

III.  In Any Event, There Are No Grounds to Vacate Appointment of Committee with
      Respect to ERS .................................................................................................... 12

      A.    Committee Has No Conflict Requiring, or Justifying, Vacating Its
            Appointment ............................................................................................... 13

      B.    Committee Membership Includes Creditor of ERS ........................................ 16

      C.    Proposal to "Substitute" Committee with Retiree Committee Is Flawed ............ 18

IV.   Court Should Deny the Motion Under Any Legal Standard ................................... 19

      CONCLUSION ....................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Altair Airlines, Inc.*,
727 F.2d 88 (3d Cir. 1984)..................................................................................14, 17

*In re Barney's, Inc.*,
197 B.R. 431 (Bankr. S.D.N.Y. 1996).........................................................14, 16, 20

*In re Caesars Entm't Operating Co., Inc.*,
526 B.R. 265 (Bankr. N.D. Ill. 2015) ..................................................... *passim*

*In re City of Detroit*,
519 B.R. 673 (Bankr. E.D. Mich. 2014)..................................................... *passim*

*In re Dana Corp.*,
344 B.R. 35 (Bankr. S.D.N.Y. 2006)........................................................14, 17

*In re Dewey & Leboeuf LLP*,
No. 12-12321 MG, 2012 WL 5985325 (Bankr. S.D.N.Y. Nov. 29, 2012) ......................19, 20

*In re Ditech Holding Corp.*,
No. 19-10412-JLG ...........................................................................12, 19

*In re Enduro Stainless, Inc.*,
59 B.R. 603 (Bankr. N.D. Ohio 1986) ..........................................................17

*In re Enron Corp.*,
279 B.R. 671 (Bank. S.D.N.Y. 2002) ...........................................................15

*In re Enron Corp.*,
No. 01-16034(AJG), 2002 WL 32034346 (Bankr. S.D.N.Y. May 23, 2002),
*aff'd*, No. 02 CIV. 5638 (BSJ), 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003) ....................2, 6, 7

*Matter of Fesco Plastics Corp., Inc.*,
996 F.2d 152 (7th Cir. 1993) .................................................................8

*In re Garden Ridge Corp.*,
No. 04-10324 (DDS), 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005)...............................14

*Law v. Siegel*,
571 U.S. 415 (2014)....................................................................1, 10, 11, 12

*In re McLean Industries, Inc.*,
70 B.R. 852 (Bankr. S.D.N.Y. 1987) ...........................................................17

*In re New Life Fellowship, Inc.*,
  202 B.R. 994 (Bankr. W.D. Okla. 1996) ............................................................8

*In re Northeast Dairy Co-op. Fed., Inc.*,
  59 B.R. 531 (Bankr. N.D.N.Y. 1986) ................................................................18

*In re Orfa Corp. of Philadelphia*,
  121 B.R. 294 (Bankr. E.D. Penn. 1990) ..............................................................6

*In re Pacific Avenue, LLC*,
  467 B.R. 868 (Bankr. W.D. N.C. 2012)..........................................................11, 12

*In re Public Service Co. of New Hampshire*,
  89 B.R. 1014 (Bankr. D. N.H. 1988) ...................................................................6

*In re Schatz Fed. Bearings Co., Inc.*,
  5 B.R. 543 (Bankr. S.D.N.Y. 1980)...................................................................18

*In re ShoreBank Corp.*,
  467 B.R. 156 (Bankr. N.D. Ill. 2012) ................................................................14

*In re SPM Mfg. Corp.*,
  984 F.2d 1305 (1st Cir. 1993).............................................................................8

*U.S. Truck Co. v. Teamsters Nat'l Freight Indus. Negotiating Comm. (In re U.S.
  Truck Co.)*,
  89 B.R. 618 (E.D. Mich. 1988)........................................................................17

*In re Windstream Holdings, Inc.*,
  No. 19-23312-RDD (Bankr. S.D.N.Y.) ..............................................................17

## Statutes

11 U.S.C. § 522 ................................................................................................10

Bankruptcy Code
  Chapter 9 ...................................................................................................9, 12
  Chapter 11 .................................................................................................9, 17
  § 105 ..........................................................................................................8, 11
  § 105(a) .................................................................................................8, 10, 11
  § 105(d) .........................................................................................................10
  § 1102(a) .................................................................................................. *passim*
  § 1102(a)(1) ............................................................................................... *passim*

PROMESA
  § 301(d).........................................................................................................9
  § 304(c).........................................................................................................10
  Title III .........................................................................................................10

The Official Committee of Unsecured Creditors of All Title III Debtors (including the

Employees Retirement System ("ERS")) (the "Committee") hereby submits this objection (the

"Objection") to the *Motion of the Puerto Rico Funds to Vacate the Appointment of the Official*

*Committee of Unsecured Creditors in the Employees Retirement System of the Government of the*

*Commonwealth of Puerto Rico Title III Case* [Docket No. 6162] (the "Motion")[2] filed by the

Puerto Rico Funds, as alleged ERS Bondholders of ERS (the "ERS Bondholders").  In support of

the Objection, the Committee respectfully states as follows:

### PRELIMINARY STATEMENT

1.      The Motion requests relief that is without precedent.  The Committee is unaware

of even a single instance (and the Motion cites none) in which a statutorily mandated official

committee was disbanded at the request of a secured creditor, let alone a secured creditor that is a

defendant in ongoing litigation initiated by the committee regarding, among other things, the

validity and extent of its claims and liens.  By definition, secured creditors desire to limit or (as

in this instance) eliminate the role of any official committee representing unsecured creditors.

This alone reveals everything the Court needs to know about the true nature and purpose of the

Motion.

2.      Moreover, even a cursory review of the applicable case law reveals that it is far

from clear that a bankruptcy court even has the authority to disband an official committee in the

first instance.  As discussed below, in the *Caesars* bankruptcy case—the most recent and best

reasoned case to issue a definitive ruling in this area, and the only one with the benefit of the

Supreme Court's ruling in *Law v. Siegel*—the court held that a ***bankruptcy court does not have***

***authority to disband an official committee of creditors***.  The Motion, however, does not contain

---

[2]     Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

even a single reference to *Caesars*, and, instead, relies on case law expressly rejected both by *Caesars* and by a ruling in the Bankruptcy Court for the District of New York issued only weeks ago.

3. Additionally, there is no question that modifying a committee's membership and interfering with the U.S. Trustee's discretion regarding committee membership or (in the case of additional committees) the existence of additional committees is an exceptional and disfavored remedy. Accordingly, even if the Court were to find that it has authority to vacate the appointment of an official committee in ERS's Title III case (which it does not), it should nonetheless hold that there are no grounds for the requested disbandment of the Committee here for four distinct reasons.

4. <u>First</u>, even though the ERS Bondholders were well aware of the Committee's alleged debilitating conflict, after the U.S. Trustee considered and rejected the bondholders' complaints regarding the Committee's appointment as the official committee in ERS's Title III case the ERS Bondholders ***waited almost 18 months to file the Motion***. Courts have explained that promptness is required in a motion to modify a committee's membership. Similarly, in *Enron*, the court held that a delay of 60 days was sufficient grounds to deny a motion to disqualify committee counsel.

5. <u>Second</u>, the ERS Bondholders' unexplained and unjustified delay also exposes their true motivation in filing their Motion: far from any altruistic concern for the interests of unsecured creditors, the Motion is no more than a litigation tactic employed by the ERS Bondholders in an attempt to eliminate one of the loudest voices challenging their billions of dollars of alleged claims. Indeed, the Committee's ongoing challenges to the ERS Bondholders'

asserted liens and claims perfectly illustrates the Committee's fulfillment of its fiduciary obligations to the unsecured creditors of ERS and is precisely why the Motion should be denied.

6.      <u>Third</u>, the ERS Bondholders have not actually identified a conflict as understood by bankruptcy courts examining the constitution, purpose, and function of an official committee of unsecured creditors.  Instead, all they have done is make the observation that, under certain circumstances and in certain conditions, the various members of the Committee may have incentives that do not perfectly align in all respects.  Case law could not be clearer, however, that differences in incentives and strategies is not a "conflict" for the purposes of an official committee of unsecured creditors in a bankruptcy and, indeed, is both inevitable and desirable.

7.      Relatedly, the ERS Bondholders appear to take the position that, in a multi-debtor case, an official committee of unsecured creditors must have as a member at least one creditor of each debtor.  There is no such requirement and, to the contrary, there are any number of large and complex bankruptcies, sometimes with hundreds of individual debtors, that do not include a direct creditor of each debtor on the official committee.

8.      <u>Finally</u>, the ERS Bondholders have not identified any action the Committee took, or failed to take, that was improper or any failure on the part of the Committee to fulfill its fiduciary duties.  Instead, the ERS Bondholders rely entirely on hypotheticals and insinuations—and even those are based entirely on the claim that the Committee's membership does not include a direct creditor of ERS.  Even if that were relevant legally (it is not) it is demonstrably false and directly contrary to this Court's ruling that Committee member SEIU is a creditor of ERS.

9.      In sum, the Motion (i) asks for relief that no court has ever granted on behalf of secured creditors, (ii) ignores case law holding that the requested relief is outside of a bankruptcy

court's authority and relies on rejected and distinguishable case law, (iii) was filed 18 months

after the ERS Bondholders were aware of the alleged conflict, but only shortly after the

Committee commenced litigation challenging the ERS Bondholders' claims, (iv) offers no

evidence in support of its allegations and insinuations, and (v) is based entirely on an assertion

already expressly rejected by this Court.  For these reasons, and as further detailed below, the

Motion should be denied.

<b><u>OBJECTION</u></b>

## I.  <u>Motion to Vacate Is Nothing More Than Litigation Tactic by Alleged Secured Creditors</u>

10.     The Motion is nothing but a transparent litigation tactic in response to the

Committee's recent challenges to the validity of the ERS bonds.[3]  Even a brief look at the

relevant timeline makes clear that the ERS Bondholders' allegation that the Post-Petition

Legislation supposedly creates a debilitating conflict for the Committee and its members is

merely a pretext:

| Date | Event |
|---|---|
| May 21, 2017 | ERS Petition Date |
| August 23, 2017 | Post-Petition "Pay-Go" Legislation enacted |
| August 25, 2017 | Committee appointed as official creditors' committee in ERS's Title III case |
| September 13, 2017 | Letter by ERS Bondholders to U.S. Trustee regarding concerns about Committee |
| November 2017 | ERS Bondholders meet with U.S. Trustee |

---

[3]     It is ironic that the ERS Bondholders purport to be concerned about the incurrence of unnecessary fees, *see* Mot. ¶ 35, yet the fees incurred by this unnecessary and wasteful motion practice are caused solely by the ERS Bondholders.

| **November 2017 to March 2019** | **ERS Bondholders take no action regarding Committee's appointment** |
| --- | --- |
| March 12, 2019 | Committee objects to validity of ERS bonds |
| April 9, 2019 | ERS Bondholders file instant Motion |

The ERS Bondholders were aware of the alleged conflict from the day the Committee was appointed as the official committee in ERS's Title III case on August 25, 2017.  Moreover, the ERS Bondholders would have the Court believe that not only is there an actual and current conflict (there is not), but that the conflict is so debilitating that it meets the very high bar imposed by the case law before granting a motion asking the Court to interfere with the membership of an official mandatory committee and justifies vacating the appointment of the Committee—*the statutorily mandated fiduciary for unsecured creditors appointed in ERS's Title III case and, in fact, the only official committee currently appointed in ERS's Title III case*.

11.     However, notwithstanding the Committee's supposedly debilitating conflict, the ERS Bondholders did absolutely nothing from November 2017 through April 9, 2019—a period of almost 18 months before filing the Motion.  The Motion does not explain why the ERS Bondholders waited so long.  What is clear, however, is that the ERS Bondholders are using the Motion as a sword to eliminate a statutorily mandated fiduciary that—in a proper exercise of its fiduciary obligations—is challenging the ERS Bondholders on numerous fronts, including the validity of the ERS bonds and the scope of the liens purportedly securing these bonds.

12.     Furthermore, and as another bankruptcy court explained, such a lengthy "delay in submission of the request" to vacate the appointment of the Committee and the ERS Bondholders' awareness of the alleged debilitating conflict is "itself a factor to be considered in

any decision."[4]  For this reason, another court denied a party's request for an additional

committee "especially considering that party's uniquely clear awareness" of the alleged conflict

"from the early stages of this case."[5]

13.     The court's ruling in *In re Enron Corp.* is directly relevant.[6]  In that case, a

creditor moved to disqualify counsel to the official committee based on certain alleged conflicts.

The court began its analysis with a discussion of the creditor's 60-day lengthy delay in bringing a

disqualification motion.[7]  Of course, this inexcusable delay is merely a small fraction of the

almost 18 months that the ERS Bondholders waited to bring their Motion.

14.     The *Enron* court further noted that, even once the complaining creditor filed its

motion, it "was in no rush to have a hearing to rid the Committee of its 'unqualified' counsel."[8]

The court made this finding based on the creditor's decision not only to "not seek an expedited

hearing but [also not to] select the next available date under the Amended Case Management

Order."[9]  Like the complaining creditor in *Enron*, the ERS Bondholders have not requested an

expedited hearing.[10]  And as in *Enron*, "[t]here is an inconsistency with the concern raised in [the

Motion] and the lack of urgency with which [the ERS Bondholders] brought and prosecuted this

motion."[11]  This delay "provide[s] a separate ground to deny the relief sought."[12]  If delay of 60

---

[4]     *In re Pub. Serv. Co. of New Hampshire*, 89 B.R. 1014, 1018 (Bankr. D. N.H. 1988).

[5]     *In re Orfa Corp. of Phila.*, 121 B.R. 294, 298-99 (Bankr. E.D. Penn. 1990),

[6]     *In re Enron Corp.*, No. 01-16034(AJG), 2002 WL 32034346 (Bankr. S.D.N.Y. May 23, 2002), *aff'd*, No. 02 CIV. 5638 (BSJ), 2003 WL 223455 (S.D.N.Y. Feb. 3, 2003).

[7]     *Id.* at *3.

[8]     *Id.*

[9]     *Id.* at *4.

[10]    While it is true that when the ERS Bondholders did finally file their Motion on April 9, 2019, they noticed it for the next available omnibus hearing date, had they filed their motion on April 2, 2019, they could have had it heard at the April 24, 2019 omnibus hearing.

[11]    *In re Enron,* 2002 WL 32034346, at *4.

[12]    *Id.*

days in seeking disqualification of counsel to an official committee justifies denying the motion, *a priori* a motion to vacate the very existence of the Committee must be denied for an inexcusable delay of almost 18 months.

15.     In the end, granting the Motion would leave unsecured creditors of ERS with no statutory fiduciary.  While it is obvious why the ERS Bondholders desire this result, it is impossible to see how this would benefit the unsecured creditors of ERS.  Furthermore, because the ERS Bondholders' implicit suggestion that the Retiree Committee be substituted for the Committee is fundamentally flawed, any newly appointed committee would be two years behind in these incredibly complex cases and would lack the deep knowledge of these cases acquired by the Committee over that time.[13]

## II.     Court Lacks Authority to Vacate Appointment of Statutorily Mandated Committee

16.     Contrary to the ERS Bondholders' argument, the Court lacks authority to vacate the statutorily mandated appointment of the Committee.  Section 1102(a) of the Bankruptcy Code governs the formation, appointment, and—in certain circumstances—the modification of official committees.  As recently explained by the bankruptcy court in the *Caesars* chapter 11 case, "[t]hese are the only powers over committees the Code gives the court.  There are no others.  In particular, nothing in section 1102(a) confers on the court the power to disband a committee the U.S. Trustee has appointed under section 1102(a)(1)."[14]  As the same court added,

---

[13]     In *Enron*, the court took notice of the fact that by the time the disqualification motion was filed, there were 2,331 docket entries and that "in addition to being considered the largest bankruptcy case ever filed, Enron is one of the most active and complex." *Id.* at *3.  The court further explained that the number of docket entries did "not tell the whole story," as it does "not address the numerous activities performed by the Committee (and its counsel) that are not brought before the Court; nor does a simple recitation of the number of docket entries "provide detail of the contested nature of many of the proceedings." *Id.*  All of this highlights the "importance of addressing issues of disqualification of counsel in the early stages of any case—especially one that is as active and complex as this one." *Id.*  This analysis is fully applicable to the ERS Bondholders' Motion, which is docket number 6,162 and was filed almost two years after the ERS commenced its Title III case.

[14]     *In re Caesars Entm't Operating Co.*, 526 B.R. 265, 268 (Bankr. N.D. Ill. 2015).

*"[b]ecause section 1102(a) grants specific powers, and because the power to disband a*
*committee is not one of them, the only fair reading of the statute is that there is no such*
*power*."[15]

17.     Nor does section 105 of the Bankruptcy Code allow the Court to vacate the
Committee's appointment.  As stated succinctly by the *Caesars* court, "[s]ection 105(a) confers
no such power."[16]  Section 105 "gives bankruptcy courts the power only to implement existing
Code provisions.  It is neither an independent source of rights nor a source of substantive
authority."[17]  In holding that section 105 of the Bankruptcy Code does not authorize a
bankruptcy court to vacate the appointment of a committee, the *Caesars* court considered, and
rejected, the ruling reached by the court in the unique circumstances in *In re City of Detroit*.[18]  In
*Detroit* (relied on by the ERS Bondholders), the court held that section 105(a) does allow a court
to vacate the appointment of an official committee because the Bankruptcy Code does not
"explicitly prohibit the bankruptcy court from disbanding an unsecured creditors' committee."[19]

18.     The problem with this argument, and the ERS Bondholders' reliance thereon, is
that under section 105(a), "a court may exercise its equitable power only as a means to fulfill
some specific Code provision."[20]  Accordingly, section 105(a)'s authority cannot be invoked
merely because the Bankruptcy Code does not explicitly prohibit a specific action.  Moreover,

---

[15]   *Id.*  (emphasis added).

[16]   *Caesars*, 526 B.R. at 269.

[17]   *Id.*  (internal citations omitted); *see also In re New Life Fellowship, Inc.*, 202 B.R. 994, 997 (Bankr. W.D. Okla.
1996) (denying motion to disband official bondholders committee and explaining that "Section 1102(a)(1) . . . is
absolute in its language and deprives the court of any discretion concerning appointment or abolition of
committees, leaving no room for application of Section 105(a) to override the act of the United States trustee.").

[18]   *In re City of Detroit*, 519 B.R. 673 (Bankr. E.D. Mich. 2014).

[19]   *Detroit*, 519 B.R. at 680.

[20]   *In re Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir. 1993); *see also Official, Unsecured Creditors'
Comm. V. Stern (In re SPM Mfg. Corp.)*, 984 F.2d 1305, 1311 (1st Cir. 1993) ("Nor does section 105(a)
authorize courts to create substantive rights that are otherwise unavailable under the Code . . . .").

had "Congress wanted to give bankruptcy courts the power to abolish committees appointed under section 1102(a)(1), it could have done so.  It chose not to."[21]

19.     In any event, the *Detroit* decision is clearly distinguishable.  In *Detroit*, the court vacated the appointment of the official committee of unsecured creditors because section 1102(a)(1) of the Bankruptcy Code only requires the appointment of an official committee of unsecured creditors "after the order for relief under chapter 11 of this title," and because it is impossible for an order of relief "under chapter 11" to issue in a case under chapter 9. Accordingly, the *Detroit* court held that there was no mandate to appoint any committee in a case under chapter 9 and the appointment of the (vacated) committee was "null and void."[22]  The *Detroit* court further held that all committees appointed in a chapter 9 bankruptcy are appointed as additional committees at the discretion of the U.S. Trustee, and therefore can be disbanded by the bankruptcy court.

20.     Regardless of whether this holding is correct in the context of a case under chapter 9 of the Bankruptcy Code, it is inapplicable to the instant Title III cases.  Indeed, Congress specifically fixed the very issue raised by the cross-reference to chapter 11 in section 1102(a)(1) by expressly providing in section 301(d) of PROMESA that

> Solely for purposes of this title, a reference to "this title", "this chapter", or words of similar import in a section of title 11, United States Code, made applicable in a case under this title by subsection (a) or to "this title", "title 11", "Chapter 9", "Chapter 11", "the Code", or words of similar import in the Federal Rules of Bankruptcy Procedure made applicable in a case under this title shall be deemed to be a reference to this title.

This means that the reference in section 1102(a) to an "order for relief under chapter 11 of this title," pursuant to section 301(d) of PROMESA, "shall be deemed" to be read as requiring the

---

[21]   *Caesars*, 526 B.R. at 269.

[22]   *Detroit*, 519 B.R. at 678.

appointment of an official committee of unsecured creditors "after the order for relief under this title"—*i.e.*, Title III of PROMESA.[23]  Accordingly, and unlike in *Detroit*, there can be no doubt that section 1102(a)'s mandate that the U.S. Trustee appoint an official committee to safeguard the interests of unsecured creditors applies under PROMESA and, therefore, to ERS's Title III case.

21.     The *Detroit* ruling clearly does not apply to the appointment of an official committee ***mandated*** by the Bankruptcy Code.  In this regard, it is noteworthy that the ERS Bondholders assert that the Court has the authority to vacate "***its*** appointment" of the Committee.[24]  This is simply incorrect, as the Committee was not appointed at the discretion of the Court after a motion to the Court, but by the U.S. Trustee—and that appointment was mandated by statute.  Section 1102(a)(1) provides that "the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees" as it "deems appropriate."  It may be one thing to rely on section 105(a) of the Bankruptcy Code to vacate the appointment of an additional committee appointed at the U.S. Trustee's discretion, and whose initial appointment was null and void by a quirk of statutory analysis.  It is beyond reason, however, to extend that argument so as to vacate the appointment of the statutorily mandated Committee, as this would have the inappropriate result of using section 105(a) to undermine a specific requirement of the Bankruptcy Code—namely, that there ***must*** be an official committee of unsecured creditors.[25]

---

[23]   Section 304(c) of PROMESA provides that the "commencement of a case under this title constitutes an order for relief."

[24]   *See* Mot. ¶ 22 (emphasis added).

[25]   The Committee also notes that the *Detroit* ruling was issued prior to, and without the benefit of, the Supreme Court's ruling in *Law v. Siegel*, 571 U.S. 415 (2014).  In that case, the Supreme Court held that the Bankruptcy Code's exemption section, 11 U.S.C. § 522, "does not give courts discretion to grant or withhold exemptions based on whatever considerations they deem appropriate."  *Id.* at 423-24.  In so holding, the Supreme Court explained that the exemption statute contained a "meticulous" and "carefully calibrated" list of exceptions and

22.     The ERS Bondholders' reliance on *In re Pacific Avenue, LLC*[26] is no more compelling.  In that case, the court vacated the appointment of the creditors' committee, despite noting that "neither the court nor the parties found any reported cases where" a creditors' committee was disbanded.[27]  However, it stands to reason that if the *Pacific Avenue* court have had the benefit of the Supreme Court's later decision in *Law v. Siegel*, the court's acknowledgement that there "is no specific statutory provision for disbanding a creditors' committee"[28] would have led the court to a different result.[29]

23.     The precedential value of *Pacific Avenue* is further diminished by the fact that it was decided in North Carolina—which does ***not*** participate in the U.S. Trustee program and in which, therefore, official committees are appointed by the "Bankruptcy Administrator."  Unlike the U.S. Trustee, which is appointed under the auspices of the Department of Justice and therefore part of the executive branch, the Bankruptcy Administrator is appointed by the court (in North Carolina, the Fourth Circuit Court of Appeals) and is part of the judicial branch.[30]

---

limitations, and that this "***enumeration of exemptions and exceptions to those exceptions confirms that courts are not authorized to create additional exceptions***."  *Id.* at 424 (emphasis added).  The Supreme Court's analysis applies equally to the question of a court's authority to disband an official committee, and makes clear that section 105(a) "is not a vehicle for reading into section 1102(a)(1) a power to do away with statutory committees when section 1102(a)(1) itself grants no such power—and ***especially when section 1102(a) grants other powers but not that one***."  *Caesars*, 526 B.R. at 269 (emphasis added).  Furthermore, the Supreme Court noted that "[i]t is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code' . . . Section 105(a) confers authority to 'carry out' the provisions of the Code, but it is quite impossible to do that by taking action that the Code prohibits.").  *Law v. Siegel*, 571 at 421.

[26]   *In re Pacific Ave., LLC*, 467 B.R. 868 (Bankr. W.D.N.C. 2012).

[27]   *Id.* at 870.

[28]   *Id.*

[29]   In *Pacific Avenue*, the court relied on section 105(d) of the Bankruptcy Code, instead of section 105(a).  The ERS Bondholders, therefore, present section 105(d) as an alternative grounds for the relief requested in the Motion.  However, the *Detroit* court noted that analysis of the question of whether the court has authority to vacate the appointment of an official committee "is more appropriate under subsection (a)" of section 105.  *Detroit*, 519 B.R. at 679 n.1.  More fundamentally, all the reasons as to why section 105(a) does not confer the authority to vacate appointment of the Committee apply equally to section 105(d).

[30]   *See* U.S. Bankr. Adm'r, W.D.N.C., Responsibility of Bankruptcy Administrator, https://www.ncwba.uscourts.gov/responsibility-ba-0 (last visited May 28, 2019).

Accordingly, and putting aside that its ruling is ultimately wrong on the merits in any event, the
*Pacific Avenue* court's holding that it could disband a committee appointed by an office of the
court cannot be imported to the instant case, where the Committee was appointed by the U.S.
Trustee, part of a separate branch of the government.

24.     The question of whether a court has the authority to disband an official committee
appointed by the U.S. Trustee was also addressed in a May 17, 2019 bench ruling issued by
Judge Garrity in the Bankruptcy Court for the Southern District of New York in *In re Ditech
Holding Corp.*, No. 19-10412-JLG.  In that case, the debtors moved to disband the official
committee of consumer creditors appointed by the U.S. Trustee.  Explaining, among other things,
that (i) the *Detroit* ruling was based on that court's unique ruling regarding the inapplicability of
section 1102(a) to a chapter 9 bankruptcy (which ruling, as explained above, does not apply to
Title III cases) and (ii) both the *Detroit* and the *Pacific Avenue* rulings predated the Supreme
Court's ruling in *Law v. Siegel*, Judge Garrity concluded that the "Debtors rel[iance] on these
cases is misplaced."[31]

## III.    In Any Event, There Are No Grounds to Vacate Appointment of Committee with Respect to ERS

25.     Even if the Court had the authority to vacate the appointment of an official,
statutorily mandated, creditors' committee (it does not), there is no basis under the facts here to
vacate the Committee's appointment in ERS's Title III case.  The ERS Bondholders identify
three alleged grounds for vacating the Committee's appointment, namely that (i) the Committee
has a disabling conflict of interest, (ii) none of the creditors on the Committee is a direct creditor

---

[31]   *See* Hr'g Tr., at 36:10-11, *In re Ditech Holding Corp.*, No. 19-10412-jlg (Bankr. S.D.N.Y May 17, 2019).  A
copy of the transcript is attached as **Exhibit A** hereto.  Because it ultimately denied the motion on other
grounds, the court declined to rule on the question of authority to disband an official committee.

of ERS, and (iii) the appointment of the Retiree Committee renders the Committee duplicative and unnecessary.  Each of these bases is without merit.

### A. Committee Has No Conflict Requiring, or Justifying, Vacating Its Appointment

26.     The ERS Bondholders allege that the Committee "and the unsecured creditors of ERS have interests that impermissibly conflict."[32]  This is a logical impossibility.  The Committee is an entity that did not exist before the commencement of the Title III cases. Moreover, it is a statutorily created entity, whose interests are no more and no less than the duties it is charged with fulfilling.  Furthermore, those statutory duties include representing all unsecured creditors of the debtors for which it serves as the official committee, including the unsecured creditors of ERS.  As such, the Committee itself, as an entity, cannot have a conflict of interest with those unsecured creditors whose interests are the basis of its existence.

27.     What the ERS Bondholders presumably mean to argue is that the *members* of the Committee have an impermissible conflict with the interests of the unsecured creditors of ERS. This argument, however, is a very run-of-the-mill argument that perhaps could, in egregious circumstances if jurisdiction were found, at most, justify modifying the *membership* of the Committee, but not vacating the appointment of the Committee entirely.  Indeed, the ERS Bondholders know this, which is why the cases they cite in this regard only address issues of committee membership.[33]  Regardless, even if the Court were to apply this body of case law (which it should not), the alleged conflict is no different than the type of issue routinely

---

[32]   Mot. ¶ 27.

[33]   *See Caesars*, 526 B.R. at 270 and n.4 (rejecting application of case law governing reconstitution of a committee to question of disbanding a committee as "reconstituting a committee means adjusting its membership" and not adjusting the membership "right out of existence").

13

encountered, and addressed, in complex multi-debtor bankruptcy cases without removing a committee member or otherwise modifying committee membership.

28.     According to the ERS Bondholders, the Committee cannot be expected to diligently represent the unsecured creditors of ERS because the members of the Committee are incentivized to maximize recoveries at other, non-ERS Debtors.  As any number of cases have explained, however, a "committee of unsecured creditors often consists of creditors with a variety of viewpoints, and thus conflicts are not uncommon."[34]  Accordingly, "[m]ere conflict between members of the Official Committee is no basis to modify committee membership."[35]

29.     Stated otherwise, the "problem with the [ERS Bondholders]' position is that they have discovered a conflict of interest, but that is all they have done, and conflicts of this kind are inevitable."[36]  They "have not done more, producing *specific evidence*" that the members of the Committee "have breached or are likely to breach their fiduciary duties to the creditor body."[37]  In fact, the ERS Bondholders have not actually identified a conflict as understood by bankruptcy courts examining the constitution, purpose, and function of an official committee of unsecured creditors.  Instead, all they have done is make the observation that, under certain circumstances and in certain conditions, the various members of the Committee may have incentives that do not perfectly align in all respects.  Case law could not be clearer, however, that differences in incentives and strategies is not a "conflict" for the purposes of an official committee of unsecured creditors in a bankruptcy and, indeed, is both inevitable and desirable.[38]

---

[34]   *In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 WL 523129, at *4 (Bankr. D. Del. Mar. 2, 2005).

[35]   *Id.*

[36]   *In re ShoreBank Corp.*, 467 B.R. 156, 163 (Bankr. N.D. Ill. 2012).

[37]   *Id.* (emphasis added).

[38]   *See In re Altair Airlines, Inc.*, 727 F.2d 88, 90 (3d Cir. 1984) ("conflicts of interest are not unusual in reorganizations" and did not justify modifying committee membership); *In re Barney's, Inc.*, 197 B.R. 431, 444 (Bankr. S.D.N.Y. 1996) ("Disagreement among creditors over the strategy or objectives of a committee is not a

30.     Because creditor incentives are not perfectly aligned and, therefore, potential conflicts are inevitable, a court should not interfere with committee membership unless the committee has lost "its ability to function," such that it "is hopelessly divided, unable to take a position on important matters and ineffective."[39]  The ERS Bondholders offer no evidence in support of their bald allegations that the Committee cannot properly function—and any such evidence would be proffered by a secured creditor that is a defendant in proceedings commenced by the Committee and should, therefore, be viewed with a healthy dose of skepticism.

31.     To the contrary, the Committee has acted exactly as an official committee of unsecured creditors would be expected to act in fulfillment of its fiduciary obligations to the unsecured creditors of ERS.  For example, the Committee (a) has contested a motion, brought by the ERS Bondholders and other bondholders, for relief from the automatic stay, (b) has (over the objection of, among others, the ERS Bondholders) obtained Court approval of a stipulation that will ensure that certain causes of action on behalf of ERS can be brought, and (c) has objected to the claims of billions of dollars of allegedly secured bondholders (including the ERS Bondholders).

32.     It is impossible to understand how these actions, all of which are designed to maximize the recovery to unsecured creditors of ERS by eliminating or reducing claims that could, if valid and allowed, be paid ahead of unsecured creditors, could rationally be "construed as an attack on the ERS estate for the benefit of the other Debtors' creditors, rather than for the

---

conflict which mandates removal of a creditor from a creditors' committee . . . Members of a committee of unsecured creditors need not have parallel interest in order to qualify for membership on the committee . . . Rather the Code-required adequate representation implicitly recognizes creditors will disagree on strategy and objectives.  Those conflicts must be resolved through the committee's decision-making process.") (as modified) (internal references omitted); *In re Dana Corp.*, 344 B.R. 35, 38–39 (Bankr. S.D.N.Y. 2006) ("Creditor committees often contain creditors having a variety of viewpoints (heterogeneous); however, these differing views do not require a separate homogeneous committee unless they impair the ability to reach a consensus.")

[39]   *In re Enron Corp.*, 279 B.R. 671, 686 (Bank. S.D.N.Y. 2002).

benefit of the creditors of ERS."[40]  In truth, the Committee's actions in the ERS case are entirely

consistent with the interests of the unsecured creditors of ERS, including challenging the validity

of the ERS bonds held by the ERS Bondholders.

### B.    Committee Membership Includes Creditor of ERS

33.    The ERS Bondholders also allege that none of the creditors that serve as members

of the Committee are direct creditors of ERS.  In particular, the ERS Bondholders assert that the

Committee "has a real and impermissible conflict of interest with the unsecured creditors

because none of the members of the [Committee] even hold claims against ERS," and "[n]o

reasonable person would expect the [Committee], whose members are not even creditors of ERS,

to act fairly on behalf of ERS' unsecured creditors."[41]

34.    As an initial matter, the basic premise of this argument is inherently flawed and

inconsistent with applicable case law.  The premise of this argument is that an official committee

must have a member that is a creditor of every debtor in whose case it has been appointed

because if it does not, the members of the committee "have no monetary incentive to maximize

value for unsecured creditors" of that debtor.  The flaw with this premise is that even though the

individual incentives of members of an official committee may differ from the incentives of

other unsecured creditors, they are also expected to look past those incentives.  Committee

members are fiduciaries to all unsecured creditors of the debtors in whose cases the committee

has been appointed, and this duty "must overcome" other interests and loyalties.[42]  The ERS

Bondholders have presented no evidence that those fiduciary duties have been or will be

compromised.  Moreover, requiring an official committee to include as a member a creditor of

---

[40]  Mot. ¶ 32.

[41]  Mot. ¶¶ 30, 32.

[42]  *In re Barney's Inc.*, 197 B.R. at 443.

each individual debtor would be a logistical impossibility in large and complex multi-debtor cases, and would be a radical departure from current practice.[43]

35.     Furthermore, because an official committee of unsecured creditors is a statutory requirement, vacating the Committee would require the appointment of a new committee. Courts, however, have rejected calls to appoint individual committees for each debtor, as the cost (allegedly, a concern of the ERS Bondholders) "would be extreme."[44]

36.     More fundamentally, the ERS Bondholders are simply incorrect in arguing that none of the members of the Committee have a claim against ERS.  In fact, this Court has recently affirmed that Committee member SEIU is a direct creditor of ERS *"by virtue of its members' claims against ERS*."[45]  In so holding, the Court adopted "substantially the reasons set forth in the relevant portions" of the Committee's reply brief in support of its stipulation with the Oversight Board regarding the prosecution of certain causes of action on behalf of ERS and HTA.  Moreover, over *25,000 individuals who are members of local chapters of SEIU* are listed on Schedule C (Employee Obligations), Schedule D (ERS Act 70-2010 Obligations), Schedule E (Pension Obligations), and Schedule F (Participant Obligations) of ERS's list of creditors, clearly demonstrating SEIU's status as a creditor of ERS.[46]  There can also be no serious argument that a union is a not creditor eligible to serve on a creditors committee.[47]

---

[43]     *See generally In re Dana Corp.*, 344 B.R. at 39 (committee need not be "an exact replica of the creditor body").

[44]     For example, the official committees appointed in the chapter 11 cases of Enron and Lehman Brothers did not include creditors of every debtor, nor does the official committee recently appointed in the chapter 11 case of Windstream Holdings include as a member a direct creditor of each of the 205 debtor entities.  *See In re Windstream Holdings, Inc.*, No. 19-23312-RDD (Bankr. S.D.N.Y.); *see generally In re McLean Indus., Inc.*, 70 B.R. 852, 862 (Bankr. S.D.N.Y. 1987) (finding "no indication that Congress gave any thought to jointly administered cases and intended to require a committee for each case").

[45]     *See* May 16, 2019 Hr'g Tr. at 37:25 – 38:3.  A copy of the transcript is attached as **Exhibit B** hereto.

[46]     *See* [Docket No. 1316].

[47]     *See In re Altair Airlines, Inc.*, 727 F.2d 88, 90-91 (3d Cir. 1984).  *See also U.S. Truck Co. v. Teamsters Nat'l Freight Indus. Negotiating Comm.* (*In re U.S. Truck Co.*), 89 B.R. 618, 621 (E.D. Mich. 1988) ("As an unincorporated association, a union has the capacity to assert a claim."); *In re Enduro Stainless, Inc.*, 59 B.R.

37.     Not only does the Committee's membership include a creditor (SEIU) that without a doubt holds claims against ERS, those claims are significant and represent a significant portion of the claims against ERS.  Among their other claims, the retiree benefit claims held by these individuals are for a portion of the total actuarial liability of ERS, which total has recently been estimated at approximately $31 billion.[48]  Finally, active employees represented by SEIU have claims against ERS in connection with mandatory employee contributions to ERS required by System 2000, which required employees hired or rehired on or after January 1, 2000 to contribute to ERS a portion of their salary and for which contributions these employees have a 100% vested right.

## C.     Proposal to "Substitute" Committee with Retiree Committee Is Flawed

38.     Although one can understand the desire of a defendant in litigation to be able to pick and choose "its" plaintiff, the ERS Bondholders' proposal that the Committee should be vacated in ERS's Title III cases because the Retiree Committee already adequately represents ERS creditors is simply illogical.  An official committee of unsecured creditors, such as the Committee, is charged with representing *all* unsecured creditors of ERS, regardless of which specific creditors sit on the committee.  In contrast, *the Retiree Committee is not even appointed as an official committee in ERS's Title III case*.  Moreover, as an additional committee appointed to represent a specific constituency, the Retiree Committee represents only retired employees, not all holders of retiree benefit claims.  Nor does the Retiree Committee represent

---

603, 605 (Bankr. N.D. Ohio 1986) (union representing debtor's workers and filing proof of claim for unpaid life, health, and supplemental unemployment premiums or benefits was creditor eligible to participate on debtor's unsecured creditors' committee); *In re Northeast Dairy Co-op. Fed., Inc.*, 59 B.R. 531, 535 (Bankr. N.D.N.Y. 1986) (ordering appointment of union to official creditors' committee); *In re Schatz Fed. Bearings Co., Inc.*, 5 B.R. 543, 548 (Bankr. S.D.N.Y. 1980) (same).

[48]     *See* Fin. Oversight & Mgmt. Bd. for P.R., 2019 Fiscal Plan for P.R., Restoring Growth & Prosperity (May 9, 2019), at 127, https://drive.google.com/file/d/13wuVn04--JKMEPKu-u-djZJHqTK-55aV/view (last visited May 28, 2019).

the interests of employees of ERS on important issues separate from their retiree benefit claims (such as claims related to workplace safety, compensation, and active benefits).

## IV.    <u>Court Should Deny the Motion Under Any Legal Standard</u>

39.    Courts have identified three legal standards that may apply to a motion to disband an official committee.  In *Ditech*, the court explained that the motion to disband was really a request to have the court review, and undo, the U.S. Trustee's decision to appoint an additional committee; the parties in that case disputed whether the court should review the U.S. Trustee's decision under an arbitrary or capricious standard or under a *de novo* standard.[49]  The court, assuming that such a review was even within its authority, declined to rule on the appropriate legal standard, as the movants "failed to carry their burden under either standard of review."

40.    The court in *In re Dewey & Leboeuf LLP* posited a third possible standard.[50]  The court held that "***if*** the authority exists for the court to order an additional committee disbanded, the burden must rest on the parties moving for relief."[51]  Noting that the standard for ordering appointment of an additional committee "is a high standard, requiring a showing that an additional committee is absolutely required, essential, or indispensable,"[52] the court held that the "burden should be no less rigorous to disband an additional committee appointed by the UST— has the moving party demonstrated that the existing committee is not necessary to ensure adequate representation?"[53]

---

[49]    *See* Hr'g Tr. at 37:21- 38:10, , *In re Ditech Holding Corp.*, No. 19-10412-jlg (Bankr. S.D.N.Y May 17, 2019).

[50]    *In re Dewey & Leboeuf LLP*, No. 12-12321 MG, 2012 WL 5985325, at *5 (Bankr. S.D.N.Y. Nov. 29, 2012)

[51]    *Id.* (emphasis in original).  Like the *Ditech* ruling, the court in *Dewey* declined to "reach the issue" of whether it had the authority, in the first instance, "to order disbanded an official committee appointed by the UST."

[52]    *Id.* (internal citations omitted).

[53]    *Id.*

41.     For the reasons discussed above, the Motion should be denied under each of these three standards.  Beginning with the third one, the continued existence of the Committee is required to assure adequate representation of the thousands of active employees and other unsecured creditors of ERS for the simple reason that there is no other fiduciary that represents ERS' unsecured creditors.[54]  Indeed, because the Committee is the mandatory official committee of unsecured creditors, its continued existence is, by definition, necessary.  As noted, the Committee is already actively litigating several matters to advance those interests.[55]

42.     The Motion also fails under the arbitrary or capricious standard.  "A decision is not 'arbitrary and capricious' unless it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its decision, or is otherwise patently unreasonable, arbitrary or fanciful."[56]  In this case, the U.S. Trustee made its decision to appoint the Committee as the official committee for ERS two months after the petition date, demonstrating that the decision was not made without deliberation.  Moreover, the U.S. Trustee responded to the September 13, 2017 letter from certain bondholders and, as acknowledged by the ERS Bondholders, attended a meeting in November on the same issues. The fact that the ERS Bondholders do not like the U.S. Trustee's decision does not make it arbitrary or capricious.  Finally, the ERS Bondholders "must present substantial evidence that the United States Trustee acted arbitrarily and capriciously in appointing" the Committee.  They have not.

---

[54]   Regardless of how few they number or how small the size of their claims, other unsecured creditors of ERS, such as trade and vendor claims or litigation claims, are entitled to have their interests represented.

[55]   *See Dewey*, 2012 WL 5985325 at *5 (holding that committee was continuing to serve an important purpose because it was appealing denial of examiner motion and approval of settlement, which arguments were not frivolous).

[56]   *In re Barney's, Inc.*, 197 B.R. 431, 439 (Bankr. S.D.N.Y. 1996).

43.     Nor can the Motion succeed under the *de novo* standard.  As discussed above, none of the Secured Creditors' three bases for vacating the Committee's appointment are legitimate.  In fact, the Motion's central factual assertion—the absence of a direct creditor of ERS on the Committee—is demonstrably false.

## **CONCLUSION**

44.     For all the reasons set forth in this Objection, the Court should deny the Motion.

*[Remainder of page intentionally left blank.]*

21

WHEREFORE, the Committee respectfully requests that this Court enter an order

denying the relief requested in the Motion.

Dated:  May 28, 2019                    */s/ Luc. A. Despins*

                                        PAUL HASTINGS LLP
                                        Luc. A. Despins, Esq. (Pro Hac Vice)
                                        James R. Bliss, Esq. (Pro Hac Vice)
                                        Nicholas A. Bassett, Esq. (Pro Hac Vice)
                                        G. Alexander Bongartz, Esq. (Pro Hac Vice)
                                        200 Park Avenue
                                        New York, New York 10166
                                        Telephone:  (212) 318-6000
                                        lucdespins@paulhastings.com
                                        jamesbliss@paulhastings.com
                                        nicholasbassett@paulhastings.com
                                        alexbongartz@paulhastings.com

                                        *Counsel to the Official Committee of Unsecured
                                        Creditors*

                                        - and -

                                        */s/ Juan J. Casillas Ayala*

                                        CASILLAS, SANTIAGO & TORRES LLC
                                        Juan J. Casillas Ayala, Esq. (USDC - PR 218312)
                                        Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
                                        Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
                                        Juan C. Nieves González, Esq. (USDC - PR 231707)
                                        Cristina B. Fernández Niggemann, Esq. (USDC - PR
                                        306008)
                                        PO Box 195075
                                        San Juan, PR 00919-5075
                                        Tel.: (787) 523-3434 Fax.: (787) 523-3433
                                        jcasillas@cstlawpr.com
                                        aaneses@cstlawpr.com
                                        ifernandez@cstlawpr.com
                                        jnieves@cstlawpr.com
                                        cfernandez@cstlawpr.com

                                        *Local Counsel to the Official Committee of Unsecured
                                        Creditors*