**<u>EXHIBIT A</u>**



Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 19-10412-jlg

4   - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

5   In the Matter of:

6

7   DITECH HOLDING CORPORATION,

8

9           Debtor.

10  - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

11

12                  United States Bankruptcy Court

13                  One Bowling Green

14                  New York, NY  10004

15

16                  May 17, 2019

17                  3:37 PM

18

19

20

21  B E F O R E :

22  HON JAMES L. GARRITY

23  U.S. BANKRUPTCY JUDGE

24

25  ECRO: KAREN

Page 2

1    HEARING re 1) Motion to Disband Committee (Doc #522)

2

3    HEARING re Statement of the Motion of Debtors for Entry of

4    an Order (I) Disbanding the Official Committee of Consumer

5    Creditors Appointed by the U.S. Trustee or, Alternatively,

6    (II) Limiting the Scope of Such Committee and Capping the

7    Fees and Expenses Which May be Incurred by Such Committee

8    (Doc #529)

9

10   HEARING re Objection of the Official Committee of Consumer

11   Creditors  (Doc #548)

12

13   HEARING re Declaration of Victor Noskov in Support of the

14   Official Committee of Consumer Creditors' Objection to the

15   Debtors' Motion  (Doc #549)

16

17   HEARING re Objection of the United States Trustee to the

18   Motion of the Debtors for Entry of an Order Disbanding the

19   Official Committee of Consumer Creditors  (Doc #556)

20

21   HEARING re Opposition to Debtors' Motion to Disband the

22   Consumer Creditors' Committee filed by Wayne M. Greenwald on

23   behalf of Monique Scranton & 800 Consumer Creditors

24   (Doc #560)

25

Page 3

1    HEARING re The Diamond Victims' Joinder in Objection to

2    Debtors' Motion to Disband  Consumer Creditors Committee

3    (Doc #561)  continued from 5/14/2019

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sonya Ledanski Hyde

Page 4

1   A P P E A R A N C E S :

2

3   QUINN EMANUEL URQUHART & SULLIVAN LLP

4        Attorneys for the Consumer Creditors Committee

5        51 Madison Avenue, 22nd Floor

6        New York, NY 10010

7

8   BY:   BENJAMIN I. FINESTONE

9        VICTOR NOSKOV

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2         THE COURT:  All right.  I apologize for the delay

3    in our start.  This is the Ditech Holding Corp., Case No.

4    19-10412.  This is the adjourned hearing on the Debtors'

5    motion for an order seeking to disband the Official

6    Committee of Consumer Creditors.  We heard argument and

7    other matters on May 14th and adjourned the matter to today.

8    And I will issue my decision now.

9         The matter before the Court is the Debtors' motion

10   to an order pursuant to Sections 105(a) and 1102(a) of the

11   Bankruptcy Code, one, disbanding the Official Committee of

12   Consumer Creditors, which I'll refer to as the "Consumer

13   Creditors Committee," appointed by the United States Trustee

14   or alternatively, two, if the Court determines not to

15   disband the Consumer Creditors' Committee, limiting such

16   committee's scope solely to the treatment of consumer

17   borrower claims under the plan or a sale transaction and

18   capping the fees and expenses which may be incurred by such

19   committee and its, excuse me, professionals to $250,000 in

20   the aggregate.

21        The motion is supported by the Ad Hoc Term Loan

22   Group which is a term defined below.  See ECF Number 529.

23   The following parties oppose the motion: the U.S. Trustee;

24   the Consumer Creditors Committee; approximately 800 consumer

25   creditors represented by the firm of Wayne Greenwald, P.C.

1    -- I'll refer to them as "the Scranton Consumers;" Milan

2    Harris, individually and not in his capacity as a member of

3    the Consumer Creditors Committee; together with five other

4    consumers who assert that they are victims of a reverse

5    mortgage fraud scheme.  See ECF Numbers 548, 556, 560, and

6    561.

7            The Official Committee of Unsecured Creditors did

8    not file a response to the motion.

9            Just one moment, please.  If you have dialed in,

10   if you'd please mute your phone.  We're hearing some

11   background noise.  Thanks very much.

12           (Pause)

13           THE COURT:  We'll try it one more time.  If you're

14   on the phone, mute it please.  If you have a live line,

15   especially mute it.  Thank you.

16           The Court held a hearing on the motion on May 14,

17   2019.  For the reasons discussed below, the motion is

18   denied.  The Court has jurisdiction of the motion pursuant

19   to 28 U.S.C. Sections 1334(a) and 157(a) and the Amended

20   Standing Order of Referral of Cases of Bankruptcy Judges of

21   the United States District Court For the Southern District

22   of New York dated January 31, 2012, Preska as chief judge.

23   This matter is a core proceeding under 28 U.S.C. Section

24   157(b)(2).

25           The facts are as follows.  On February 11, 2019,

Page 7

1    each of the Debtors filed a voluntary petition for relief

2    under Chapter 11 of the Bankruptcy Code in this court.

3    Since that date, the Debtors have remained in possession and

4    control of their business and assets as Debtors In

5    Possession pursuant to Sections 1107 and 1108 of the

6    Bankruptcy Code.  The Debtors along with their non-debtor

7    subsidiaries, which I'll collectively refer to as "the

8    Company" operate as an independent servicer originator of

9    mortgage loans and servicer of reverse mortgage loans.  See

10   the declaration of Gerald A. Lombardo pursuant to Rule 1007-

11   2 of Local Bankruptcy Rule for the Southern District of New

12   York, ECF Number 2.  That's the Lombardo Rule 1007

13   declaration at Paragraph 6.

14          The company originates and purchases residential

15   loans through consumer correspondent and wholesale lending

16   channels that are predominantly sold to the Federal National

17   Mortgage Association or Fannie Mae and the Federal Home Loan

18   Mortgage Corporation, also known as Freddie Mac, and

19   government entities.  Fannie Mae and Freddie Mac are

20   government-sponsored enterprises, each a GSC and

21   collectively the GSEs.  It's ordered by Congress that by and

22   securitized mortgage loans originated by mortgage lenders.

23   See the Lombardo Rule 1007 declaration at Paragraph 6, 20,

24   and 25, Note 3.

25          The Company's business is comprised of three

1    primary segments, one, forward mortgage originations; two,

2    forward mortgage servicing; and three, reverse mortgage

3    servicing.  That's the declaration at 24, Paragraph 24.

4            The Company's forward mortgage originations are

5    done exclusively through Debtor Ditech Financial, LLC.,

6    which I'll refer to as "Ditech."  Virtually all of the loans

7    that Ditech originates are conventional conforming loans

8    eligible for securitization by GSEs.  In 2018, Ditech

9    originated or purchased over $12.6 billion in mortgage

10   loans.  See the declaration at Paragraphs 25 and 27.

11           Ditech also performs mortgage service -- excuse

12   me, also performs forward mortgage loan servicing for

13   mortgage loans for which Ditech owns the mortgage servicing

14   rights and subservicing for third party owners of mortgage

15   servicing rights.  See the declaration at Paragraph 38.  As

16   of the year-end of 2018, Ditech serviced approximately 1.4

17   million residential loans with an unpaid principal balance

18   of $176.1 billion.  And of those, Ditech was the subservicer

19   for $700,000 accounts with an unpaid principal balance of

20   $104.3 billion.  See the declaration at Paragraph 39.

21           Debtor Reverse Mortgage Solutions, Inc., or RMS,

22   primarily focuses on servicing and subservicing reverse

23   mortgage loans, the majority of which are home equity

24   conversion mortgages or HECMs that are insured by the

25   Federal Housing Administration.  An HECM is a loan that

Page 9

 1    allows home owners to borrow money against the equity value

 2    of their homes.  See the declaration at Paragraph 40.

 3            A reverse mortgage borrower typically is not

 4    required to remit monthly mortgage payments but instead

 5    receives cash in monthly installments, a lump sum, or a line

 6    of credit up to a principal limit, which limit is calculated

 7    on among other things the age of the borrower, the appraised

 8    value of the borrower's home, and the loan interest rate.

 9    See the declaration at Paragraph 41.

10            An HECM borrower must be age 62 or over and

11    typically relies on the proceeds of the loan -- of such loan

12    to fund their living expenses.  The average age of the

13    borrowers under the HECMs in RMS's portfolio was

14    approximately 75 years of age.  See the declaration at

15    Paragraph 41.

16            Reverse mortgage loan servicing accounts for

17    approximately 13 percent of the Debtors' revenue.  See the

18    declaration at 40, Paragraph 42.  RMS performs servicing for

19    mortgage loans that fall into two categories: one, mortgage

20    loans that RMS owns or owns the mortgage servicing rights

21    and, two, mortgage loans for which RMS performs servicing

22    and subservicing for third-party owners of the loans.

23    That's the declaration at 42.  As of December 31, 2018, RMS

24    serviced or subserviced approximately 88,000 loans with an

25    unpaid principal balance of $17.1 billion.  See the

Page 10

1    declaration at Paragraph 44.

2            As of the petition date and without limitation,

3    the Debtors had outstanding debt obligations in the

4    principal amount of approximately $961.4 million relating to

5    certain terms loans.  Those are the 1 L term loans.  And the

6    lenders thereunder are the 1 L term lenders.  The 1 L terms

7    loans are secured by a first lien basis -- on a first-lien

8    basis by substantially all of the Debtors' assets.  Refer to

9    that as the 1 L collateral.

10           The Debtors also have outstanding note obligations

11   in the principal amount of $253.9 million as of the petition

12   date relating to certain notes, refer to those as the 2 L

13   notes, which are secured on a second-lien basis on the 1 L

14   collateral.  See the declaration at Paragraphs 48 to 49.

15           As of the petition date, the Debtors were

16   servicing approximately 1.5 million loans made to

17   individuals -- I'll refer to them as "the Consumer

18   Borrowers" -- and that were secured by forward and reverse

19   mortgages on their residences.  The Debtors acknowledge that

20   at this time RMS is party to approximately 6,000 judicial

21   and non-judicial foreclosure proceedings and more than 600

22   eviction proceedings and that Ditech is party to 16,400

23   judicial and non-judicial foreclosure proceedings and

24   approximately 350 eviction proceedings.  See documents filed

25   at ECF Numbers 9 at Paragraph 75 and Number 10 at Paragraph

1       61.

2               It's undisputed that in many of the judicial and

3       non-judicial foreclosure proceedings, the Consumer Borrowers

4       are asserting claims and defenses to foreclosure including

5       claims against RMS and Ditech.  In addition, apart from the

6       foreclosure-related litigation, Consumer Borrowers have sued

7       RMS and Ditech on account of their alleged illegal and

8       fraudulent loan origination, servicing, and accounting

9       practices.

10              In very general terms, those consumer creditor

11      claims fall into two categories.  One consists of claims,

12      crossclaims, third-party claims, and counterclaims that do

13      not result in any ordered judgment, verdict, decree, or

14      arbitration award of monetary damages including without

15      limitation attorney's fees or costs, penalties, or fines

16      including statutory penalties and fines against the Debtors

17      but that are necessary to resolve, one, a claim or defense

18      involving the amount, validity, priority of liens with

19      respect to the property subject to the mortgages; two, a

20      claim or defense that is subject to Section 363(o) of the

21      Bankruptcy Code; three, alleged servicing errors involving

22      the misapplication or payment or miscalculation of amounts

23      due and owing; or four, a claim or defense brought by a

24      consumer borrower on account of the Debtors' alleged pre-

25      petition failure to, among other things, comply with the

Page 12

1    loan modification obligations and the improper assignment of

2    deeds of trust.

3            I'll refer to those types of claims as non-

4    monetary claims.  The other type of claims asserted by

5    Consumer Borrowers against the Debtors in the foreclosure

6    actions and otherwise consist of claims, crossclaims, third-

7    party claims, and counter claims that result in orders,

8    judgments, verdicts, decrees, or arbitration awards of money

9    damages including attorney's fees, costs, and statutory and

10   non-statutory penalties and fines.  I'll refer to those

11   claims as monetary damage claims.

12           As of the petition date, the Debtors were party to

13   thousands of actions involving Consumer Borrowers, asserting

14   consumer creditor claims which include non-monetary claims

15   and/or money damages claims against the Debtors.  The

16   Debtors explain that in recent years, their business has

17   been impacted by significant operational challenges and

18   industry trends that have severely constrained their

19   liquidity and ability to implement needed operational

20   initiatives.

21           To address the burden of its over-leveraged

22   capital structure, Walter Investment Management Company,

23   which is now known as Ditech Holding Corp. which is the

24   Debtor herein, consummated a fully-consensual pre-packaged

25   Chapter 11 plan on February 8, 2018.  See the Lombardo

1    declaration at Paragraph 7.  However, even as of the

2    effective date of Walter's Chapter 11 plan, the company was

3    facing significant liquidity and operational headwinds, and

4    the company's new senior management team determined that

5    additional relief was needed.

6              In June 2018, the company began a formal review of

7    strategic alternatives including a potential merger or sale

8    of all or substantially all of the assets of the company.

9    I'll refer to that as the pre-petition marketing process.

10   The company, however, has not been able to consummate an

11   out-of-court transaction with a third-party purchaser.  See

12   the Lombardo declaration at Paragraph 69.

13             By May 2019, the company turned its focus toward

14   planning for an in-court recapitalization transaction that

15   would maximize value for its creditors and preserve the

16   enterprise as a going concern.  See the declaration at

17   Paragraph 8.  To that end, in December of 2018, the company

18   began in earnest negotiating with groups of holders of its

19   corporate debt on an acceptable recapitalization structure

20   culminating in a restructuring support agreement with the Ad

21   Hoc Group of Term Lenders, which I'll refer to as "the Ad

22   Hoc Term Loan Group" holding in the aggregate approximately

23   $736.6 million of the 1 L term loans.  I'll refer to that

24   agreement as "the Restructuring Support Agreement" or the

25   RSA.

1          Among other things in the RSA, the Debtors agreed

2     to commence these Chapter 11 cases and to propose a joint

3     reorganization plan that provides for a transaction -- refer

4     to that as "the Reorganization Transaction" -- pursuant to

5     which the Debtors would equitize a portion of the 1 L term

6     loans and extinguish certain other debt.  In pertinent part,

7     the Reorganization Transaction calls for a debt-to-equity

8     swap of 1 L term loans which would lead the 1 L term lenders

9     with 100 percent of the equity of the reorganization company

10    and $400 million of first lien debt; an unspecified

11    distribution in cash to holders of so-called go-forward

12    trade claims, that is trade creditors that the company

13    identified with the consent of 1 L term lenders as being

14    integral to the reorganized company; and the extinguishment

15    of the 2 L notes and all remaining general unsecured claims

16    including all consumer borrower claims for no consideration.

17    See the declaration at Paragraph 9.

18          The RSA also provides that as a toggle to the

19    Reorganization Transaction, the Debtors would continue the

20    pre-petition marketing process to pursue a sale of all or

21    substantially all of their assets with the sale proceeds

22    being distributed to creditors, which we'll refer to as the

23    sale transaction, and alternatively, a smaller asset

24    transaction that could complement a Reorganization

25    Transaction.

Page 15

1           In the event of a sale after payment of

2     administrative claims, priority claims, and satisfaction of

3     certain unimpaired -- excuse me, certain unimpaired secured

4     claims, the proceeds would be distributed pursuant to a

5     waterfall as follows: first to the holders of 1 L term

6     loans, second to the holders of 2 L notes, and third to the

7     holders of general unsecured claims including the claims of

8     the consumer borrowers and go-forward trade claims.

9           The toggle decision of whether to effectuate a

10    Reorganization Transaction or sale transaction would be at

11    the election of a super majority that is 66 and two-third

12    percent of the 1 L term lenders.  On March 5, 2019, the

13    Debtors filed a joint plan of reorganization and a

14    disclosure statement in support of it.  The plan was

15    faithful to the RSA with certain exceptions not relevant

16    here and proposed a toggle Chapter 11 plan.  In the

17    disclosure statement, the Debtors projected that in a sale

18    transaction, unsecured creditors including Consumer

19    Borrowers would receive no distribution on account of their

20    claims and that those claims would be discharged in

21    bankruptcy.

22          On February 27, 2019, the U.S. Trustee appointed

23    the Creditors Committee.  At that time, it consisted of

24    seven members comprised of two trade creditors, two general

25    unsecured creditors, the indentured trustee for the 2 L

Page 16

1    notes and the indenture trustee for certain RMBS trusts, and

2    one Consumer Borrower holding a liquidated litigation claim.

3    Promptly thereafter, the Creditors Committee retained

4    bankruptcy and specialty industry counsel and financial

5    advisors.

6         The Committee's bankruptcy counsel explained that

7    its mandate from the Committee from the outset of its

8    retention has been to work with the Debtors and 1 L lenders

9    towards maximizing the recovery for general unsecured

10   creditors under the plan noting that, as filed, the plan

11   provided for no distribution on account of those claims.

12        In line with that mandate, on April 4, 2019, the

13   Creditors Committee filed an objection to the disclosure

14   statement.  The Committee objected to the adequacy of the

15   information contained in the disclosure statement and the

16   solicitation and voting procedures.  It also contended that

17   the disclosure statement should not be approved because the

18   plan was patently unconfirmable.  Among other things, the

19   Creditors Committee argued that the plan violated the best

20   interest of creditors test, the absolute priority rule, and

21   unfairly discriminated between go-forward trade creditors

22   and general unsecured creditors.

23        The Committee also argued that any sale

24   contemplated by the plan must incorporate Section 363(o) of

25   the Bankruptcy Code.  That section provides that

Page 17

1    notwithstanding (f) if a person purchases any interest in a

2    consumer credit transaction that is subject to the Truth In

3    Lending Act or any interest in a consumer creditor contract

4    as defined in Section 433.1 of Title 16 of the Code of

5    Federal Regulations January 1, 2004 as amended from time to

6    time, and if such interest is purchased through a sale under

7    this section, then such person shall remain subject to all

8    claims and defenses that are related to such consumer

9    creditor transaction or such consumer creditor contract to

10   the same extent as such person would be subject to such

11   claims and defenses of the consumer had such interest been

12   purchased at a sale not under this section.  See 11 U.S.C.

13   Section 363(o).

14           Without limitation, the Debtors contend that any

15   sale that will be effectuated through the plan that the --

16   excuse me.  Without limitation, the Debtors contend that any

17   sale of the assets in this case will be effectuated through

18   a plan and, therefore, will not implicate Section 363(o).

19   The U.S. Trustee objected to the disclosure statement.

20   Without limitation, it asserted that the provisions in

21   Section 363(o) are -- or excuse me, are applicable both in a

22   sale and reorganization transaction.  Various consumer

23   borrowers also objected to the disclosure statement.

24           On or about April 26, 2019, the Debtors filed a

25   revised plan and disclosure statement.  As relevant here,

1    the second amended plan added a creditor class of borrower

2    nondischarged claims.  In essence, that class consists of

3    consumer borrowers holding non-monetary claims.  Under that

4    plan in a reorganization transaction, the holders of

5    borrower non-discharged claims receive no distribution on

6    account of their claims but those claims are accepted from

7    discharge.  Thus, in such a transaction, the borrower non-

8    discharged claims would patch through the plan and be

9    enforceable against the reorganized debtor.

10           The balance of the consumer creditor claims

11   including the money damage claims would be classified with

12   general unsecured claims and be discharged in bankruptcy.

13   In the event of a sale transaction, the plan calls for the

14   borrower nondischarged claims to be treated as general

15   unsecured claims and paid through a claims waterfall and

16   discharged in bankruptcy.  As with the initial plan, the

17   Debtors projected that under a sale transaction, unsecured

18   creditors will receive no distribution on account of their

19   claims.

20           On April 26th, the Debtors filed an application to

21   further extend the bar date solely for consumer creditors.

22   That application was filed partly in response to "numerous

23   inquiries from consumer borrowers unfamiliar with the

24   Chapter 11 process regarding filing proofs of claim."  The

25   Debtors recognize that "such consumer borrowers are

1    typically not sophisticated and are not represented by

2    counsel."  The Court granted the application.

3           After they appointed a Creditors Committee, the

4    U.S. Trustee received several letters from various

5    representatives of Consumer Borrowers requesting the

6    appointment of a Consumer Creditors Committee.  The first

7    such letter is dated April 8, 2019, and was sent by Thad

8    Bartholow on behalf of certain individual Consumer

9    Borrowers.  As the April letter indicates, Mr. Bartholow's

10   request for the appointment of an additional committee was

11   supported by eleven counsel representing a number of

12   Consumer Borrowers.  And a number of those counsel were

13   acting on behalf of various pro bono organizations as, for

14   example, the National Consumer Law Center and the Legal

15   Assistance Foundation.

16          That letter was followed by two letters from the

17   Connecticut Fair Housing Center dated April 12th, 2019.

18   Victor Noskov of the Quinn Emanuel Law Firm which is the

19   proposed counsel to the Consumer Creditors Committee

20   authored one of those letters as pro bono counsel for the

21   Connecticut Fair Housing Center and certain individual

22   reverse mortgage borrowers.

23          Atlanta Legal Aid sent a letter to the U.S.

24   Trustee dated April 5, 2010, and J. Samuel Tenenbaum at the

25   Northwestern University School of Law Investor Protection

Page 20

1    Center sent a letter to the U.S. Trustee dated April 19,

2    2019.  All of those letters requested the appointment of a

3    Consumer Creditors Committee for the benefit of their

4    clients.

5            The issues raised in Mr. Bartholow's letter are

6    representative of those raised by the other creditors in

7    support of their requests for the appointment of a Consumer

8    Creditors Committee.  In part, that letter states as

9    follows:

10            "We are submitting this request to you because our

11            consumer creditor constituents, none of whom chose

12            to do business with the Debtors, are the most

13            vulnerable and have the lease financial liens

14            available to them of all the Debtors' creditors.

15            Moreover, the Debtors' plan provisions threaten

16            substantial harm to our constituents insofar as

17            the Debtors seek to use their plan discharge

18            and/or eliminate consumer creditors' challenges to

19            illegally assessed charges Debtors added to

20            consumer accounts and other improper loan

21            servicing and accounting practices which have

22            caused consumer creditors' accounts to be

23            overstated and inaccurate.

24            "It's our understanding that the Debtors' illegal

25            accounting practices have already caused some

1      consumer creditors to lose their homes.  If Ditech

2      succeeds in confirming a plan that leaves consumer

3      creditors without any meaningful and enforceable

4      remedies, this bankruptcy will cause yet more

5      consumer borrowers to unfairly and unlawfully be

6      deprived of their homes.  Debtors' improper loan

7      servicing and accounting practices also cause

8      significant harm to the consumer borrowers' credit

9      which harm will be all but impossible to prevent

10      if consumers' statutory enforcement rights under

11      the Fair Credit Reporting Act are eliminated by

12      plan confirmation and/or discharge in this case.

13      "Perhaps, most perversely, Debtors' efforts to

14      collect these illegal amounts violates the

15      borrowers' discharge injunctions entered by

16      bankruptcy courts around the nation in borrowers'

17      Chapter 13 cases.  As this Court is well aware,

18      Chapter 13 debtors work hard making bankruptcy

19      payments up to five years before they earn their

20      Chapter 13 discharges.

21      "By contrast, in this Chapter 11 case, Debtors are

22      attempting to obtain a discharge injunction in a

23      matter of months that would immunize them and

24      their successors in interest, pardon me, for past

25      and future violations of their consumer borrowers'

Page 22

1          prior discharge injunctions.

2          "Further, violations of the borrowers' discharge

3          injunctions will inevitably result as a result of

4          the amended plan and its pre-petition disclosure

5          statement are conspicuously devoid of any proposal

6          that would address Debtors' improper pre-petition

7          loan servicing and accounting practices.

8          "Establishing an official Consumer Creditors

9          Committee for this case and/or making substantial

10         changes to the composition of the membership of

11         the Official Unsecured Creditors Committee in this

12         case is, therefore, critical not just to protect

13         the Consumer Creditors' interest but also to

14         educate the Court and all legitimate creditors

15         regarding Debtors' servicing and accounting

16         practices.  In order to properly assess the value

17         of the Debtors' assets, the stakeholders need to

18         determine the effect of the Debtors' improper

19         servicing and accounting practices on the Debtors'

20         financials in the extent that Debtors'/Defendants'

21         servicing portfolios are infested with improper

22         charges and fees that are not factored into the

23         official -- into the financial disclosures by the

24         Debtor in this case."

25         That's the Bartholow letter at Pages 2 to 3.

1        In response to those letters, on April 22nd, 2009,

2    the U.S. Trustee appointed two additional unsecured

3    creditors who are consumer borrowers with liquidated

4    consumer creditor claims against the Debtors to serve as

5    members of the Creditors Committee.  Beginning promptly

6    after the retention, the Committee -- Creditor Committee's

7    professionals engaged the Debtors and the Ad Hoc Term Loan

8    Group in negotiations regarding modifications to the plan

9    that would yield a return for the benefit of unsecured

10    creditors and in doing so, resolve the Creditors'

11    Committee's objections to the Debtors' plan and disclosure

12    statement.

13        Under the careful watch of the members of the

14    Creditors Committee, the professionals reached a settlement

15    which we refer to as the "Committee Settlement" with the

16    Debtors and 1 L term lenders.  In broad strokes, the

17    settlement provides that the Creditors Committee will

18    support a plan incorporating the following terms, one, there

19    would be a de facto substantive consolidation of the

20    Debtors' estate solely for the purposes of creating a

21    creditor trust for the benefit of unsecured creditors --

22    I'll refer to that as the "GUC," G-U-C, "Recovery Trust" --

23    that will make distributions to general unsecured creditors

24    and pursue non-release causes of action contributed to the

25    trust by the Debtors.  The proceeds of such causes of action

1    will be split 50/50 between general unsecured creditors and

2    1 L term lenders.

3            The GUC Recovery Trust assets will be -- will also

4    include $4 million less certain fees to be paid to the

5    Creditors Committee advisors and certain other fees and

6    expenses to be paid to the 2 L notes, the Trustee, and the

7    RMBS Trustee as those terms are defined in the plan.  And

8    1.5 percent of any net cash proceeds, as that term is

9    defined in the plan, distributed to 1 L term lenders after a

10   70 percent recovery for the term lenders in the event of a

11   sale transaction -- we'll refer to that as the "Contributed

12   Sale Proceeds" -- 1.5 million and the pro rata share of the

13   contributed proceeds for the 2 L notes and the elimination

14   of the go-forward trade class from the plan.  This

15   description, of course, is qualified entirely by what is set

16   forth in the agreement and in the amended disclosure

17   statement.

18           Thus, the Creditors Committee succeeded in

19   obtaining the promise of a distribution on account of the

20   claims of general unsecured creditors, including the

21   consumer creditor claims in the face as I noted earlier of a

22   plan that is originally filed provided for no distribution

23   on account of those claims.

24           Under the Committee settlement, the nondischarged

25   borrower claims are unimpaired and not discharged in a

1    reorganization transaction but will be treated as general

2    unsecured claims in a sale transaction.  The Committee

3    settlement does not mandate that the plan include language

4    incorporating the effects of Section 363(o) of the

5    Bankruptcy Code or otherwise provide any additional relief

6    to consumer borrowers.

7         The Committee had vetted the proposed settlement

8    and was scheduled to vote on whether to support it when the

9    U.S. Trustee appointed the two new consumer borrower members

10   to the Creditors Committee.  The Committee delayed the vote

11   on the Committee settlement for approximately one week to

12   accommodate the new borrower members.  During that time, the

13   Committee attempted to renegotiate the settlement to reflect

14   the interests of the Creditors Committee new membership, but

15   those efforts were unsuccessful.

16        In an email letter to the, excuse me, email letter

17   to the United States Trustee dated April 29, 2019, counsel

18   to the Creditors Committee explained that after the

19   appointment of the two consumer members, the Committee added

20   Section 363(o) as a new condition to the near final

21   settlement but that the proposal was rejected by the 1 L --

22   by the first lien lenders and the Debtors despite pushback

23   from the Committee.

24        Counsel further explained that the Creditors

25   Committee ultimately decided to give up on the Section

1   363(o) issue because it was focused on attempting to

2   maximize the cash recovery for all unsecured creditors

3   rather than focusing on one sector of the unsecured creditor

4   body.  It observed that the Section 363(o) issue was murky

5   and that rather than pressing the point with the Debtors and

6   the 1 L term lenders, the Creditor's Committee could leave

7   the issue with counsel to the consumer creditors to take up

8   at confirmation.

9          Counsel noted that although the Creditors

10  Committee ultimately decided to drop the request for relief

11  related to Section 363(o) from the Committee settlement, it

12  agreed at the behest of its two new consumer borrower

13  members to vote on whether to either support, not oppose, or

14  oppose the creation of a separate consumer creditor

15  committee.  Committee counsel reported that the vote was

16  unanimous to not oppose the creation of a consumer creditor

17  committee.

18          After the U.S. Trustee appointed the new members

19  to the Creditors Committee, the Scranton Consumers filed a

20  letter dated April 23, 2019 requesting the formation of a

21  separate committee of consumer creditors.  In their letter,

22  the Scranton Consumers maintain that the existing Official

23  Committee of Unsecured Creditors even with the new

24  additional consumer borrower members could not adequately

25  represent Consumer Borrowers' interests.  Following the

1    second request, the Debtors sent via email a letter date May

2    1, 2019 to the U.S. Trustee arguing that the appointment of

3    a separate committee -- against the appointment of a

4    separate Committee of Unsecured Creditors.

5           The Debtors argued among other things that the

6    Consumer Creditors' interests are already adequately

7    represented by the Creditors Committee, particularly in

8    light of the additional Consumer Creditors added to that

9    Committee.  The Consumer Creditors have been actively

10   participating in the Debtors' Chapter 11 cases since the

11   petition date and in many cases through represented counsel

12   -- have been doing so through represented counsel.

13          They also argued that the factors set forth in

14   this Court's decision in Residential Capital weigh against

15   the formation of a separate consumer creditors committee and

16   that the cost of the Official Consumer Creditors Committee

17   particularly at this late stage in the Chapter 11 cases

18   could not be justified.

19          On May 2nd, 2019, the U.S. Trustee appointed the

20   Official Committee of Consumer Creditors which consists of

21   five individuals holding consumer creditor claims.  The

22   Consumer Creditors -- Consumer Committee's mandate is

23   narrow.  Proposed counsel to the Consumer Creditors

24   Committee explained that the Committee will focus on, A,

25   analyzing the Debtors' sale process to understand what

1    assets are being sold, how consumer mortgages are being

2    packaged as part of the plan, what analysis has been done on

3    account of consumer claims as part of the sale process, and

4    ultimately what the sale will mean for consumer rights; and

5    B, ensuring that the legal rights of consumers are being

6    respected under the plan including the consumers' rights

7    under Section 363(o) and the rights of setoff, recoupment,

8    and defenses.

9          Counsel also advised that the Committee might --

10   will review and may ask the Court to reconsider the order

11   that the Court entered in connection with the ordinary

12   course of business procedures in the case as it relates to

13   the effect on impact of the automatic stay.

14         On May 8, 2019, the Debtors filed a third amended

15   plan which incorporated the Committee settlement and a

16   disclosure statement.  Prior to the hearing on the third

17   amended disclosure statement, proposed counsel to the

18   Consumer Creditors Committee and the Debtors were able to

19   discuss the Consumer Creditors Committee's concerns with the

20   plan and disclosure statement.  Ultimately, the Debtors and

21   Consumer Creditors Committee agreed that the hearing could

22   go forward without objection on the part of the Consumer

23   Creditors Committee because the Debtors agreed to add a new

24   section in the disclosure statement which discusses the

25   Consumer Creditors Committee's position regarding the

1    proposed treatment of consumer claims under the Debtors'

2    plan.

3              The Consumer Creditors Committee has raised

4    various issues with the headline of their position is that

5    the proposed plan cannot be confirmed unless claims held by

6    consumer borrowers in connection with their mortgages both

7    against any of the Debtors and non-debtor third parties are

8    fully preserved that may be brought against any purchaser of

9    the Debtors' assets.  With their comments incorporated, the

10   Consumer Creditors Committee did not object to the approval

11   of the disclosure statement.  And on May 4th after a hearing

12   on that, the Court approved the disclosure statement and the

13   procedures -- the solicitation procedures with regard to the

14   plan.

15             We'll now turn our attention to the discussion of

16   the legal principles applicable to this motion.  Section

17   1102 of the Bankruptcy Code governs the appointment of

18   statutory committees in Chapter 11 cases.  In part, it

19   authorizes the United States Trustee to appoint a committee

20   of creditors holding unsecured claims and additional

21   committees of creditors or of equity security holders as the

22   United States Trustee deems appropriate.  See 11 U.S.C.

23   Section 1102(a)(1).

24             It also provides that on the request of a party in

25   interest, the Court may order the appointment of additional

Page 30

1    committees of creditors or of equity security holders if

2    necessary to assure adequate representation of creditors or

3    of equity security holders.  See 1102(a)(2).

4           However, it does not address whether the Court is

5    empowered to disband a committee appointed by the U.S.

6    Trustee pursuant to Section 1102(a)(1).  The Debtors argue

7    that pursuant to Sections 1102 and 105 of the Bankruptcy

8    Code, a court may disband a committee where, one, the

9    committee is not necessary to protect the interests of its

10   constituency; two, the administrative expense of the

11   committee is not justified; and three, the presence of the

12   committee is counter productive to the process of the case.

13   See the motion in Paragraph 15.

14          The U.S. Trustee and the Consumer Creditors

15   Committee contend that the Court has no authority to

16   dissolve a committee that has been constituted by the U.S.

17   Trustee.  In support, the U.S. Trustee asserts that Section

18   1102 of the Bankruptcy Code delineates specific but

19   different powers for the Court and the U.S. Trustee and

20   Committee members -- in Committee matters and that such

21   language reflects Congress's desire to separate the judicial

22   and administrative functions between the two.  See the

23   Trustee's opposition at Pages 8 to 9.

24          Further, the U.S. Trustee contends that Section

25   105(a) is not a separate source of the Court's authority

1    where Section 1102 provides none.  And in any event, the

2    Debtors' construction of Sections 1102 and 105 runs afoul of

3    the Supreme Court's decision in Law vs. Siegel, 571 U.S. 415

4    (2014).  Courts have considered whether a bankruptcy court

5    is empowered to disband a committee appointed by the U.S.

6    Trustee pursuant to Section 1102(a)(1) of the Bankruptcy

7    Code have reached different conclusions.

8            In In re Caesars Entertaining Operating Corp.,

9    Inc., 526 B.R. 265-268 (Bankr. N.D.Ill. 2015), the

10   bankruptcy court held that under the explicit statutory

11   language, "Nothing in Section 1102(a) confers on the court

12   the power to disband a committee that the U.S. Trustee has

13   appointed under Section 1102(a)(1)."  There, the U.S.

14   Trustee appointed an official committee of second priority

15   noteholders in addition to the official committee of general

16   unsecured creditors.

17           The debtor, Caesars, moved to disband the

18   noteholder's committee arguing that, one, an inter-creditor

19   agreement to which each noteholder committee members is a

20   party prevented the noteholder committees from performing

21   many of the statutory functions; two, the noteholders are

22   sophisticated business entities who do not need a committee

23   to represent their interests; and three, a second committee

24   would increase administrative costs with no corresponding

25   benefit to the estate.  The U.S. Trustee and the noteholders

1   committee and the Official Committee of -- and the creditors

2   committee opposed the motion.  See 526 B.R. at 267 of 268.

3           The court denied the motion finding that it had no

4   authority under Section 1102(a) to disband the noteholders

5   committee.  The court -- in doing so, the court applied the

6   statutory construction rule of "expressio unius est exclusio

7   alterius" or the expression of one thing is the exclusion of

8   another and reasoned that Section 1102 was explicit in

9   enumerating the different powers of the bankruptcy court and

10  the U.S. Trustee as to the constitution of statutory

11  committees and the ability to dissolve a constituted

12  statutory committee was not one of the court's enumerated

13  powers.  See 536 B.R. at 268 to 269.

14          The court also rejected Caesars argument that the

15  authority to disband a statutory committee constituted by

16  the U.S. Trustee lies within Section 105(a).  That section

17  states in part that "the court may issue any order, process,

18  or judgement that is necessary or appropriate to carry out

19  the provisions of this title."  11 U.S.C. Section 105(a).

20          The court -- the bankruptcy court explained that

21  Section 105(a) gives the bankruptcy courts "the power only

22  to implement existing code provisions" and, thus, -- and is,

23  thus, "not a vehicle for reading into Section 1102(a)(1) a

24  power to do away with statutory committees.  And Section

25  1102(a)(1) itself grants no such power and especially when

1     Section 1102(a) grants other powers but not this one."

2     That's 526 B.R. at 269.

3              In doing so, the Caesars court noted the Supreme

4     Court's view of the limits of Section 105 as set forth in

5     Law vs. Siegel.  There, the Supreme Court rejected the

6     contention that by application of Section 105(a), a

7     bankruptcy court can equitably surcharge an individual

8     debtor's assets that are exempt from property of the estate

9     under Section 522 of the Bankruptcy Code for administrative

10    expenses in this case.  In doing so, the Supreme Court noted

11    that "its hornbook law that Section 105 does not allow

12    bankruptcy courts to override explicit mandates of other

13    sections of the Bankruptcy Code."  571 U.S. at 421.

14             The Supreme Court explained that the bankruptcy

15    court's surcharge contravenes Section 522 of the Bankruptcy

16    Code which entitled the Debtor to exempt $75,000 of equity

17    in his home and that exempted amount is not liable for the

18    payment of any administrative expenses of the estate.  The

19    Supreme Court went on to note that Section 522 is explicit

20    in enumerating the criteria and limits for exemptions and

21    "even assuming the bankruptcy court could have revisited the

22    debtor's entitlement to exemptions, Section 522 does not

23    give the court discretion to grant or withhold exemptions

24    based on whatever considerations the deem appropriate."  571

25    U.S. at 424.

1       Other cases have questioned the bankruptcy court's

2   power to disband an official committee appointed by the U.S.

3   Trustee under Section 1102(a). See, for example, In Re New

4   Life Fellowship, 202 B.R. 994 at 995 (Bankr. W.D.Okla.)

5   where the court stated that "both the specific language in

6   the legislative history of Section 1102(a)(1) compel the

7   conclusion that the court is without power to abolish there

8   it was a bondholders committee" and denying the motion

9   because it lacked authority to grant relief. See also In Re

10  Dewey and LeBoeuf, LLP, Number 12-12321, 2012 WL 5985325*3

11  (Bankr. S.D.N.Y. November 29, 2012) where the court noted

12  that Section 1102 is silent whether the court has power to

13  disband an additional committee after that committee has

14  been appointed and noting that the answer as to whether or

15  not it can be done is not so clear.

16      However, in In Re Pacific Avenue, 467 B.R. 868

17  (Bankr. W.D.N.C. 2012), the court reached the opposite

18  conclusion in granting the motion filed by a Chapter 11

19  trustee to abolish the official committee of general

20  unsecured creditors. The court found that although there

21  was no specific provision in Section 1102 for disbanding a

22  creditors committee, Section 105(d) gave it authority to do

23  so in light of the particular facts and circumstances of

24  that case. That's 467 B.R. at 870.

25      Section 105(d) authorizes a bankruptcy court to

1    hold status conferences in bankruptcy cases "to further the

2    expeditious and economic resolution of a case."  And

3    pursuant to Section 105(d)(2), the bankruptcy court "may

4    issue an order at any such conference prescribing such

5    limitations and conditions as the court deems appropriate to

6    ensure that the case is handled expeditiously and

7    economically."  See 11 U.S.C. Sections 105(d).

8            The court found that the following factors

9    supported its determination to disband the creditors

10   committee.  One, the committee itself did not have a stake

11   in the case but only acted as a representative for other

12   stakeholders and, thus, where a Chapter 11 trustee was

13   appointed, he took over the fiduciary duties of representing

14   the unsecured creditors in lieu of a committee; two, the

15   committee's efforts at protecting the creditor's interests

16   are duplicative and necessary; three, while the appointment

17   of a Chapter -- with the appointment of a Chapter 11

18   trustee, the debtor's plan effectively a liquidating plan,

19   the bankruptcy is akin to a Chapter 7 where there are no

20   creditors committee; four, the only economically

21   disinterested party which was a bankruptcy administrator

22   supported disbanding the committee; five, the committee's

23   counsel is an administrative burden at the expense of the

24   cash collateral of the secured creditor and could not be

25   justified; and six, the efforts of the committee had not

Page 36

1    been effective in that the progress of the case had

2    deteriorated in large part due to the actions of the

3    committee including, for example, the committee's redundant

4    discovery requests.

5              The Debtors rely on Pacific Avenue in support of

6    the motion.  The Debtors also cite to In Re City of Detroit,

7    Michigan, 519 B.R. 673 (Bankr. E.D.Mich. 2014) and In Re

8    Delphi Corporation, Case Number 0544481 (Bankr. S.D.N.Y.

9    April 23, 2019) as support for the authority to disband the

10   consumer creditors committee.  The Debtors rely on these

11   cases is misplaced.

12             In In Re City of Detroit, Michigan, as the case

13   commenced under Chapter 9 and, thus, the court's authority

14   concerning the appointment of a statutory committee by the

15   U.S. Trustee in Chapter 11 cases pursuant to Section 1102

16   was not implicated.  See 519 B.R. at 677 where the court

17   concluded that Section 1102(a)(1) was not applicable in the

18   Chapter 9 case.

19             In In Re Delphi Corporation, the equity committee

20   that the debtor sought to dissolve was appointed by the U.S.

21   -- was not appointed by the U.S. Trustee but was appointed

22   by the bankruptcy court under a motion by an equity holder

23   pursuant to Section 1102(a)(2).  Thus, there was never a

24   question concerning the authority of the bankruptcy court to

25   disband the committee formed by the U.S. Trustee.  Moreover,

Page 37

1    the bankruptcy court's order directing the appointment of an

2    equity committee specifically reserved that court's

3    authority to disband the equity committee upon a change of

4    circumstances.

5            The Court also finds that the Debtors' reliance on

6    Pacific Avenue is misplaced as well.  One, the facts in this

7    case and in Pacific Avenue are significantly different as

8    there has not been an appointment of a Chapter 11 Trustee

9    here.  There's no question that the -- and what that case

10   was seeking to do was to disband -- and there was no --

11   excuse me, there was no question that the Committee that

12   they were seeking to disband in that case had been

13   ineffectual and that is not the case.  There's no evidence

14   to that effect here.

15           Moreover, the Pacific Avenue court's reliance on

16   Section 105(d) of the Bankruptcy Code as a statutory

17   authority to disband the committee may be questioned given

18   the recent holding in Law vs. Siegel, 571 U.S. 415.  In any

19   event, the Court finds that that case is distinguishable and

20   is not -- and is certainly of questionable authority.

21           In the end of the day, though, the Court does not

22   have to determine whether it has the authority to direct the

23   disbandment of the consumer creditors committee because even

24   assuming arguendo that it has such authority, the court

25   denies the motion and concludes that the consumer creditors

Page 38

1    committee should not be disbanded for the reasons discussed

2    below.  As an initial matter, the Debtors argue that when

3    considering whether to overturn the U.S. Trustee's decision

4    to appoint the Consumer Creditors Committee and order its

5    disbandment, the Court should apply a de novo standard of

6    review.  The U.S. Trustee and Consumer Creditors Committee

7    disagree.  They contend that if at all, the Court should

8    review the U.S. Trustee's appointment of the Consumer

9    Creditors Committee under the arbitrary and capricious

10   standard.

11          Hereto, the Court need not resolve the parties'

12   different contentions as to the standard of review

13   applicable to the U.S. Trustee's appointment of the Consumer

14   Creditors Committee.  As the movants, the Debtors have the

15   burden of demonstrating grounds for disbanding the Consumer

16   Creditors Committee.  See In Re Dewey and LeBoeuf, LLP, 2002

17   WL 5985325*5 where the court noted that the burden should be

18   no less rigorous to disband an additional committee

19   appointed by the U.S.T. and the moving party -- has the

20   moving party demonstrated that existing committee is not

21   necessary to assure the adequate representation.

22          As explained below, the Debtors have failed to

23   carry their burden under either standard of review.  A

24   decision is arbitrary and capricious if it is "based on an

25   erroneous conclusion of law, a record devoid of evidence on

1    which the decisionmaker could rationally have based its

2    decision or as otherwise patent and unreasonable, arbitrary,

3    or fanciful."  In Re Barneys, 8197 B.R. 431-439 (Bankr.

4    S.D.N.Y. 1996) citing Heat and Controlling vs. Hester

5    Industries, Inc., 785 F.2nd 1017 at 1022 (Fed.Cir. 1986).

6            In meeting this high standard, the Debtors must

7    present substantial evidence that the U.S. Trustee acted

8    arbitrarily and capriciously.  That's Barneys 197 B.R. at

9    439.  The evidence in the record of these cases shows that

10   the U.S. Trustee engaged in a thoughtful and deliberative

11   process in deciding to constitute the Consumer Creditors

12   Committee.  Prior to the appointment of that committee, the

13   U.S. Trustee received and reviewed at least eight letters

14   requesting the appointment of a committee, two of which

15   requests were filed on the electronic docket in this case.

16           Before deciding to form the Consumer Committee,

17   the U.S. Trustee not only considered the views expressed by

18   the Consumer Borrowers in these letters but also considered

19   the Debtors' response letter in opposition to such

20   formation.  Second, the U.S. Trustee did not reflexively

21   appoint the Consumers Committee based solely on his review

22   of the correspondence.  He took other steps to address the

23   Consumer Borrower concerns and issues before appointing a

24   separate committee, namely he requested that the Debtors

25   seek to extend the bar date for Consumer Borrowers to file

1    proofs of claims to address issues of notice and confusion

2    by Consumer Borrowers.

3              Two, he added two more Consumer Borrowers to the

4    Creditors Committee.  And, three, he raised issues as to the

5    application of Section 3630 to the sale -- to the

6    transactions proposed under the plan.  It was also only

7    after further deliberations and input from members of the

8    Creditors Committee and the Creditors Committee counsel as

9    to the formation of a separation committee that he decided

10   to empanel the Consumer Creditors Committee.

11             The Debtors bear the burden of demonstrating that

12   the U.S. Trustee acted arbitrarily and capriciously in

13   appointing the Consumers Committee.  Now, the Debtors have

14   not presented any evidence, let alone substantial evidence

15   to that effect.  At the May 14 hearing on the motion, the

16   Debtors conceded that they're not really contending that the

17   U.S. Trustee had acted inappropriately or was without

18   authority or discretion in appointing the Consumer Creditors

19   Committee.  Rather, they were questioning the timing of the

20   U.S. Trustee's decision given the posture of these cases, to

21   wit, that the debtors, lenders, creditors committee had been

22   on the brink of and in fact did reach the committee

23   settlement that would move the bankruptcy proceedings

24   towards confirmation expeditiously when the Consumer

25   Creditors Committee was appointed.

Page 41

1          Without more, the timing of the appointment of

2     that committee is not grounds to upset the appointment.

3     It's not disputed that at the outset of these cases, the

4     U.S. Trustee had in fact considered the need for the

5     appointment of a consumers committee, but at least initially

6     lacked the information in the possession of the Debtors as

7     to the identities and contacts of the Consumer Borrowers to

8     solicit their interest in participating a statutory

9     committee member.

10          Moreover, the Debtors had been aware of the

11     requests by Consumer Borrowers for committee representation

12     and have always been aware of the possibility of an

13     additional committee.

14          Further, to the extent that the timeline in these

15     cases has been truncated, that's been at the request of the

16     Debtors and their lenders.  All the parties in interest in

17     this case, the creditors committee, the consumer creditors,

18     the consumer borrowers, the U.S. Trustee, and now the

19     Consumer Creditors Committee have acted in good faith in

20     keeping pace with the progress of these Chapter 11 cases.

21          The Court finds that in light of the actions taken

22     by the U.S. Trustee and the deliberative process that he

23     employed in reaching his decision to appoint the Consumers

24     Committee, U.S. Trustee did not act arbitrarily or

25     capriciously in doing so.  See, for example, In Re J&L

Page 42

1    Funding Corp., 438 B.R. 356 at 363 (Bankr. E.D.N.Y. 2010).

2            The Court will now consider the de novo review

3    standard.  Under that standard, no deference is given to the

4    determination by the U.S. Trustee to constitute the Consumer

5    Creditors Committee.  In making an independent determination

6    of whether a separate committee should be constituted, the

7    Court will consider the following factors and circumstances

8    in these cases: one, the nature of the Chapter 11 cases;

9    two, the desires of the various constituencies; three, the

10   ability of the Consumer Borrowers to participate in these

11   cases if a separate committee is not appointed; four, the

12   adequate representation of Consumer Borrowers' interests by

13   the existing creditors committee in the tasks that the

14   Consumer Creditors Committee is being asked to perform.

15           These factors have been considered by courts in

16   other contexts in determining whether a separate committee

17   should be constituted or disbanded.  See, for example, In Re

18   Dana, 344 B.R. 35 at 38 (Bankr. S.D.N.Y.) and In Re Pacific

19   Avenue, LLC, 467 B.R. at 870.  The Court finds these factors

20   to be helpful guidance in its analysis.

21           First, the Consumer Borrowers comprise of the

22   majority in number and in value of the Debtors' unsecured

23   creditors.  Moreover, the Debtors have acknowledged that the

24   record -- acknowledged on the record at various hearings

25   before the Court that the Company in both its forward

1      mortgage business and reverse mortgage business services

2      more than 1.5 million consumer mortgage accounts and that

3      the Consumer Borrowers are the life blood of the Company's

4      business.

5              Second, the formation of the Consumer Creditors

6      Committee is not opposed by the Creditors Committee.  The

7      appointment of the Consumer Creditors Committee as a

8      separate statutory committee is also strongly supported and

9      indeed -- and has been obviously supported by the request of

10     Consumer Borrowers.

11             Third, it's undisputed that as a constituent group

12     the Consumer Borrowers are generally unsophisticated senior

13     citizens from lower socioeconomic communities that have

14     limited access and financial means to obtaining meaningful

15     legal representation.  See, for example, the Debtors'

16     application to extend the bar date for Consumer Borrowers

17     where they stated that Consumers Borrowers may be unfamiliar

18     with the Chapter 11 process and typically are not

19     sophisticated and not represented by counsel.

20             See the Lombardo 1001 declaration at Paragraphs 40

21     to 41 where he's describing the reverse mortgages as --

22     individuals obtaining reverse mortgages as being eligible

23     only to persons of 62 years or older and also noting that

24     the average age of the borrowers here is 75 years old.  See

25     also the Atlanta Legal Aid letter dated April 15 where the

1   stated that Consumers Borrowers are particularly vulnerable

2   and at the risk of harm in these Chapter 11 cases.

3            Many of the Consumer Borrowers who have been

4   arguably active in these cases are represented by non-profit

5   organizations and/or governmental consumer agencies such as

6   state legal aid who may themselves be unfamiliar with

7   federal bankruptcy proceedings and lack the financial

8   expertise and professionals to meaningful review of the

9   economics of the Debtors' plan or I should say the terms of

10  the Debtors' plan.

11           Fourth, the lack of adequate representation of the

12  Consumer Borrowers by the existing committee clearly favors

13  the formation of the Consumer Creditors Committee.

14           Finally, the scope of the mandate of the Consumer

15  Creditors Committee and the scope of its retention -- and

16  the scope of the retention of the proposed professionals are

17  narrowly tailored.  As discussed herein, propose counsel to

18  the Consumer Creditors Committee has repeatedly emphasized

19  that the Committee does not intend to replicate the work

20  being undertaken by the Creditors Committee or to derail the

21  progress of these Chapter 11 cases.

22           He advises that the Committee will focus its

23  attention on the Consumer Borrower issues that have been

24  previously raised in the context of the plan and disclosure

25  statement objections including analyzing the Debtors' sale

Page 45

1    process to understand what assets are being sold, how

2    consumer mortgages are being packaged as part of the sale,

3    assessing the impact of the sale on consumers rights, and

4    ensuring that the legal rights of the consumers are being

5    respected under the plan, including consumer rights under

6    Section 363(o) and the rights of setoff, recoupment, and

7    other defenses.

8           The Debtors argue that these Chapter 11 cases are

9    analogous to the bankruptcy proceedings in Rosecap in which

10   Judge Glenn denied a motion to appoint a consumer borrowers

11   committee in a pre-packaged case of a mortgage servicer.

12   See the motion at Paragraph 29 to 31.  In that regard, the

13   Debtors maintain that the Creditors Committee can pursue the

14   Consumer Borrower issues including issues relating to

15   Section 363(o) in the event of a sale transaction and/or the

16   scope of the borrower non-discharged claims at confirmation.

17          Neither argument is convincing.  First, there are

18   crucial differences between Rosecap and this case.  Here,

19   the U.S. Trustee appointed the Consumer Creditors Committee

20   unlike the court in Rosecap, which was instead considering a

21   motion by certain consumer borrowers to appoint one pursuant

22   to Section 1102(a)(2) and opposition thereto made by key

23   constituencies including the creditors committee.

24          In addition, the consumer borrowers in Rosecap

25   face different issues and concerns than the consumer

1    borrowers in this case.  Among other things, the consumer

2    borrowers in Rosecap had the benefit of a settlement entered

3    into between the debtors and the federal government, 49

4    state attorney generals, and 48 banking departments which

5    obligated the debtors to provide $200 million towards

6    borrower relief for certain loans owned by the debtors and,

7    two, a consent order entered into between among others the

8    debtors and the Federal Reserve Board and the Federal

9    Deposit Insurance Company which required the debtors to make

10   improvements to their servicing business.  See Rosecap 480

11   B.R at 561*2.

12        No such settlements or consent orders exist here

13   for the benefit of the Consumer Borrowers.  Moreover, a

14   review of the docket in the Rosecap case reveals that the

15   sale orders entered in that case incorporated the

16   protections of Section 363(o).  See, for example, Case

17   Number 12-12020, the sale order, ECF Number 2246 at

18   Paragraph 9.

19        Here, by contract, the Debtors' proposed plan does

20   not contemplate that Section 363 -- the protections afforded

21   by Section 363(o) will be available in either a sale

22   transaction or a reorganization transaction.

23        Finally, the Court in Rosecap determined that

24   based on the facts of that case, the creditors committee

25   could adequately represent the consumer borrowers.

Page 47

1          Here, the Court finds that that's not the case and

2     that the Committee cannot effectively pursue the Consumer

3     Borrowers' concerns as to Section 363(o) protections or the

4     scope of the Debtors' discharge and release.  That's because

5     pursuant to the Committee settlement the Creditors Committee

6     has committed to supporting the plan as currently drafted.

7          For all of those reasons discussed above, the

8     Creditors Committee here cannot adequately represent the

9     Consumers Borrowers' interests.  Based upon the Court's de

10    novo review of this matter, the Court finds that the U.S.

11    Trustee did not err in appointing the Consumer Creditors

12    Committee.  Accordingly, the Debtors' request that the Court

13    disband the Consumer Creditors Committee is denied.

14          The Court will now consider the alternative

15    request for relief.  The Debtors -- as we noted, the Debtors

16    also seek in the alternative to limit the scope of the

17    Consumer Creditors Committee's mandate and to cap its fees

18    and expenses to $250,000 in the aggregate.  This aspect of

19    the motion is likewise respectfully denied.  Insofar as the

20    Debtors and the 1 L lenders and other parties have a genuine

21    and legitimate concerns as to the Debtors' accrual of

22    administrative and litigation expenses as a result of the

23    Consumer Creditors Committee, those matters will be resolved

24    through the fee application process.  See, for example, In

25    Re Dewey & LeBoeuf.

Page 48

1          I'm satisfied that the U.S. Trustee and all

2     interested parties will have a meaningful opportunity in the

3     event that they believe that the fees incurred by the

4     professionals retained by the Consumer Creditors Committee

5     are excessive, we will hear from them.  I note that just --

6     that the Committee's financial professionals are seeking to

7     be retained and that the requested retention is at what they

8     represent to be and in my experience, it seems to be a

9     below-market compensation package.

10          Based upon all of the foregoing, I most

11     respectfully deny the Debtors' motion to disband the

12     creditors -- excuse me, the Consumer Creditors Committee and

13     deny their request for alternative relief.  The record is so

14     ordered.  Thank you all very much.

15          (Whereupon these proceedings were concluded at

16     4:46 PM)

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X

 2

 3                        RULINGS

 4                                          Page        Line

 5

 6    Motion to Disband Consumer Creditors    48          11

 7    Committee Denied

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Page 50

1                    C E R T I F I C A T I O N

2

3        I, Sonya Ledanski Hyde, certified that the foregoing

4    transcript is a true and accurate record of the proceedings.

5    Sonya

6    Ledanski Hyde

7

Digitally signed by Sonya Ledanski
Hyde
DN: cn=Sonya Ledanski Hyde, o, ou,
email=digital@veritext.com, c=US
Date: 2019.05.21 16:14:35 -04'00'

8    Sonya Ledanski Hyde

9

10

11

12

13

14

15

16

17

18

19

20    Veritext Legal Solutions

21    330 Old Country Road

22    Suite 300

23    Mineola, NY 11501

24

25    Date:  May 21, 2019

**&**

**&**   2:23 4:3 47:25

**0**

**0544481**   36:8

**1**

**1**   2:1 10:5,6,6,9,13
13:23 14:5,8,8,13
15:5,12 16:8 17:5
23:16 24:2,9
25:21 26:6 27:2
29:23 30:6 31:6
31:13 32:23,25
34:6 36:17 47:20
**1.4**   8:16
**1.5**   10:16 24:8,12
43:2
**10**   10:25
**100**   14:9
**10004**   1:14
**1001**   43:20
**10010**   4:6
**1007**   7:10,12,23
**1017**   39:5
**1022**   39:5
**104.3**   8:20
**105**   5:10 30:7,25
31:2 32:16,19,21
33:4,6,11 34:22
34:25 35:3,7
37:16
**11**   6:25 7:2 12:25
13:2 14:2 15:16
17:12 18:24 21:21
27:10,17 29:18,22
32:19 34:18 35:7
35:12,17 36:15
37:8 41:20 42:8
43:18 44:2,21
45:8 49:6
**1102**   5:10 29:17
29:23 30:3,6,7,18
31:1,2,6,11,13

32:4,8,23,25 33:1
34:3,6,12,21
36:15,17,23 45:22
**1107**   7:5
**1108**   7:5
**11501**   50:23
**12-12020**   46:17
**12-12321**   34:10
**12.6**   8:9
**12th**   19:17
**13**   9:17 21:17,18
21:20
**1334**   6:19
**14**   6:16 40:15
**14th**   5:7
**15**   30:13 43:25
**157**   6:19,24
**16**   17:4
**16,400**   10:22
**17**   1:16
**17.1**   9:25
**176.1**   8:18
**19**   20:1
**19-10412**   1:3 5:4
**197**   39:8
**1986**   39:5
**1996**   39:4

**2**

**2**   6:24 7:11,12
10:12 14:15 15:6
15:25 22:25 24:6
24:13 30:3 35:3
36:23 45:22 46:11
**20**   7:23
**200**   46:5
**2002**   38:16
**2004**   17:5
**2009**   23:1
**2010**   19:24 42:1
**2012**   6:22 34:10
34:11,17
**2014**   31:4 36:7

**2015**   31:9
**2018**   8:8,16 9:23
12:25 13:6,17
**2019**   1:16 6:17,25
13:13 15:12,22
16:12 17:24 19:7
19:17 20:2 25:17
26:20 27:2,19
28:14 36:9 50:25
**202**   34:4
**21**   50:25
**2246**   46:17
**22nd**   4:5 23:1
**23**   26:20 36:9
**24**   8:3,3
**25**   7:24 8:10
**250,000**   5:19
47:18
**253.9**   10:11
**26**   17:24
**265-268**   31:9
**267**   32:2
**268**   32:2,13
**269**   32:13 33:2
**26th**   18:20
**27**   8:10 15:22
**28**   6:19,23
**29**   25:17 34:11
45:12
**2nd**   27:19

**3**

**3**   7:24 22:25 34:10
**300**   50:22
**31**   6:22 9:23 45:12
**330**   50:21
**344**   42:18
**35**   42:18
**350**   10:24
**356**   42:1
**363**   11:20 16:24
17:13,18,21 25:4
25:20 26:1,4,11
28:7 42:1 45:6,15

**46:16,20,21 47:3**
**3630**   40:5
**38**   8:15 42:18
**39**   8:20
**3:37**   1:17

**4**

**4**   16:12 24:4
**40**   9:2,18 43:20
**400**   14:10
**41**   9:9,15 43:21
**415**   31:3 37:18
**42**   9:18,23
**421**   33:13
**424**   33:25
**431-439**   39:3
**433.1**   17:4
**438**   42:1
**439**   39:9
**44**   10:1
**467**   34:16,24
42:19
**48**   10:14 46:4 49:6
**480**   46:10
**49**   10:14 46:3
**4:46**   48:16
**4th**   29:11

**5**

**5**   15:12 19:24
38:17
**5/14/2019**   3:3
**50/50**   24:1
**51**   4:5
**519**   36:7,16
**522**   2:1 33:9,15,19
33:22
**526**   31:9 32:2 33:2
**529**   2:8 5:22
**536**   32:13
**548**   2:11 6:5
**549**   2:15
**556**   2:19 6:5
**560**   2:24 6:5

**561**   3:3 6:6 46:11
**571**   31:3 33:13,24
37:18
**5985325**   34:10
38:17

**6**

**6**   7:13,23
**6,000**   10:20
**600**   10:21
**61**   11:1
**62**   9:10 43:23
**66**   15:11
**673**   36:7
**677**   36:16
**69**   13:12

**7**

**7**   13:1 35:19
**70**   24:10
**700,000**   8:19
**736.6**   13:23
**75**   9:14 10:25
43:24
**75,000**   33:16
**785**   39:5

**8**

**8**   12:25 13:17 19:7
28:14 30:23
**800**   2:23 5:24
**8197**   39:3
**868**   34:16
**870**   34:24 42:19
**88,000**   9:24

**9**

**9**   10:25 14:17
30:23 36:13,18
46:18
**961.4**   10:4
**994**   34:4
**995**   34:4

**a**

**ability**   12:19
32:11 42:10
**able**   13:10 28:18
**abolish**   34:7,19
**absolute**   16:20
**acceptable**   13:19
**accepted**   18:6
**access**   43:14
**accommodate**
25:12
**account**   11:7,24
15:19 16:11 18:6
18:18 24:19,23
28:3
**accounting**   11:8
20:21,25 21:7
22:7,15,19
**accounts**   8:19
9:16 20:20,22
43:2
**accrual**   47:21
**accurate**   50:4
**acknowledge**
10:19
**acknowledged**
42:23,24
**act**   17:3 21:11
41:24
**acted**   35:11 39:7
40:12,17 41:19
**acting**   19:13
**action**   23:24,25
**actions**   12:6,13
36:2 41:21
**active**   44:4
**actively**   27:9
**ad**   5:21 13:20,21
23:7
**add**   28:23
**added**   18:1 20:19
25:19 27:8 40:3

**addition**   11:5
31:15 45:24
**additional**   13:5
19:10 23:2 25:5
26:24 27:8 29:20
29:25 34:13 38:18
41:13
**address**   12:21
22:6 30:4 39:22
40:1
**adequacy**   16:14
**adequate**   30:2
38:21 42:12 44:11
**adequately**   26:24
27:6 46:25 47:8
**adjourned**   5:4,7
**administration**
8:25
**administrative**
15:2 30:10,22
31:24 33:9,18
35:23 47:22
**administrator**
35:21
**advised**   28:9
**advises**   44:22
**advisors**   16:5 24:5
**afforded**   46:20
**afoul**   31:2
**age**   9:7,10,12,14
43:24
**agencies**   44:5
**aggregate**   5:20
13:22 47:18
**agreed**   14:1 26:12
28:21,23
**agreement**   13:20
13:24,24 24:16
31:19
**aid**   19:23 43:25
44:6
**akin**   35:19

**alleged**   11:7,21,24
**allow**   33:11
**allows**   9:1
**alterius**   32:7
**alternative**   47:14
47:16 48:13
**alternatively**   2:5
5:14 14:23
**alternatives**   13:7
**amended**   6:19
17:5 18:1 22:4
24:16 28:14,17
**amount**   10:4,11
11:18 33:17
**amounts**   11:22
21:14
**analogous**   45:9
**analysis**   28:2
42:20
**analyzing**   27:25
44:25
**answer**   34:14
**apart**   11:5
**apologize**   5:2
**applicable**   17:21
29:16 36:17 38:13
**application**   18:20
18:22 19:2 33:6
40:5 43:16 47:24
**applied**   32:5
**apply**   38:5
**appoint**   29:19
38:4 39:21 41:23
45:10,21
**appointed**   2:5
5:13 15:22 19:3
23:2 25:9 26:18
27:19 30:5 31:5
31:13,14 34:2,14
35:13 36:20,21,21
38:19 40:25 42:11
45:19

[appointing - borrowers]                                    Page 3

**appointing** 39:23
40:13,18 47:11
**appointment** 19:6
19:10 20:2,7
25:19 27:2,3
29:17,25 35:16,17
36:14 37:1,8 38:8
38:13 39:12,14
41:1,2,5 43:7
**appraised** 9:7
**appropriate**
29:22 32:18 33:24
35:5
**approval** 29:10
**approved** 16:17
29:12
**approximately**
5:24 8:16 9:14,17
9:24 10:4,16,20
10:24 13:22 25:11
**april** 16:12 17:24
18:20 19:7,9,17
19:24 20:1 23:1
25:17 26:20 36:9
43:25
**arbitrarily** 39:8
40:12 41:24
**arbitrary** 38:9,24
39:2
**arbitration** 11:14
12:8
**arguably** 44:4
**argue** 30:6 38:2
45:8
**argued** 16:19,23
27:5,13
**arguendo** 37:24
**arguing** 27:2
31:18
**argument** 5:6
32:14 45:17
**asked** 42:14

**aspect** 47:18
**assert** 6:4
**asserted** 12:4
17:20
**asserting** 11:4
12:13
**asserts** 30:17
**assess** 22:16
**assessed** 20:19
**assessing** 45:3
**asset** 14:23
**assets** 7:4 10:8
13:8 14:21 17:17
22:17 24:3 28:1
29:9 33:8 45:1
**assignment** 12:1
**assistance** 19:15
**association** 7:17
**assuming** 33:21
37:24
**assure** 30:2 38:21
**atlanta** 19:23
43:25
**attempted** 25:13
**attempting** 21:22
26:1
**attention** 29:15
44:23
**attorney** 46:4
**attorney's** 11:15
12:9
**attorneys** 4:4
**authored** 19:20
**authority** 30:15
30:25 32:4,15
34:9,22 36:9,13
36:24 37:3,17,20
37:22,24 40:18
**authorizes** 29:19
34:25
**automatic** 28:13
**available** 20:14
46:21

**avenue** 4:5 34:16
36:5 37:6,7,15
42:19
**average** 9:12
43:24
**award** 11:14
**awards** 12:8
**aware** 21:17
41:10,12

**b**

**b** 1:21 6:24 28:5
**b.r** 46:11
**b.r.** 31:9 32:2,13
33:2 34:4,16,24
36:7,16 39:3,8
42:1,18,19
**background** 6:11
**balance** 8:17,19
9:25 18:10
**banking** 46:4
**bankr** 31:9 34:4
34:11,17 36:7,8
39:3 42:1,18
**bankruptcy** 1:1
1:12,23 5:11 6:20
7:2,6,11 11:21
15:21 16:4,6,25
18:12,16 21:4,16
21:18 25:5 29:17
30:7,18 31:4,6,10
32:9,20,21 33:7,9
33:12,13,14,15,21
34:1,25 35:1,3,19
35:21 36:22,24
37:1,16 40:23
44:7 45:9
**bar** 18:21 39:25
43:16
**barneys** 39:3,8
**bartholow** 19:8
22:25
**bartholow's** 19:9
20:5

**based** 33:24 38:24
39:1,21 46:24
47:9 48:10
**basis** 10:7,8,13
**bear** 40:11
**began** 13:6,18
**beginning** 23:5
**behalf** 2:23 19:8
19:13
**behest** 26:12
**believe** 48:3
**benefit** 20:3 23:9
23:21 31:25 46:2
46:13
**benjamin** 4:8
**best** 16:19
**billion** 8:9,18,20
9:25
**blood** 43:3
**board** 46:8
**body** 26:4
**bondholders** 34:8
**bono** 19:13,20
**borrow** 9:1
**borrower** 5:17 9:3
9:7,10 11:24
14:16 16:2 18:1,5
18:7,14 24:25
25:9,12 26:12,24
39:23 44:23 45:14
45:16 46:6
**borrower's** 9:8
**borrowers** 9:13
10:18 11:3,6 12:5
12:13 15:8,19
17:23 18:3,23,25
19:5,9,12,22 21:5
21:8,15,16,25
22:2 23:3 25:6
26:25 29:6 39:18
39:25 40:2,3 41:7
41:11,18 42:10,12
42:21 43:3,10,12

43:16,17,24 44:1
44:3,12 45:10,21
45:24 46:1,2,13
46:25 47:3,9
**bowling**  1:13
**brink**  40:22
**broad**  23:16
**brought**  11:23
29:8
**burden**  12:21
35:23 38:15,17,23
40:11
**business**  7:4,25
12:16 20:12 28:12
31:22 43:1,1,4
46:10

**c**

**c**  4:1 5:1 23:22
50:1,1
**caesars**  31:8,17
32:14 33:3
**calculated**  9:6
**called**  14:11
**calls**  14:7 18:13
**cap**  47:17
**capacity**  6:2
**capital**  12:22
27:14
**capping**  2:6 5:18
**capricious**  38:9
38:24
**capriciously**  39:8
40:12 41:25
**careful**  23:13
**carry**  32:18 38:23
**case**  1:3 5:3 17:17
21:12,21 22:9,12
22:24 28:12 30:12
33:10 34:24 35:2
35:6,11 36:1,8,12
36:18 37:7,9,12
37:13,19 39:15
41:17 45:11,18

46:1,14,15,16,24
47:1
**cases**  6:20 14:2
21:17 27:10,11,17
29:18 34:1 35:1
36:11,15 39:9
40:20 41:3,15,20
42:8,8,11 44:2,4
44:21 45:8
**cash**  9:5 14:11
24:8 26:2 35:24
**categories**  9:19
11:11
**cause**  21:4,7
**caused**  20:22,25
**causes**  23:24,25
**center**  19:14,17
19:21 20:1
**certain**  10:5,12
14:6 15:3,3,15
16:1 19:8,21 24:4
24:5 45:21 46:6
**certainly**  37:20
**certified**  50:3
**challenges**  12:17
20:18
**change**  37:3
**changes**  22:10
**channels**  7:16
**chapter**  7:2 12:25
13:2 14:2 15:16
18:24 21:17,18,20
21:21 27:10,17
29:18 34:18 35:12
35:17,17,19 36:13
36:15,18 37:8
41:20 42:8 43:18
44:2,21 45:8
**charges**  20:19
22:22
**chief**  6:22
**chose**  20:11

**circumstances**
34:23 37:4 42:7
**cite**  36:6
**citing**  39:4
**citizens**  43:13
**city**  36:6,12
**claim**  11:17,20,23
16:2 18:24
**claims**  5:17 11:4,5
11:11,11,12 12:3
12:4,4,6,7,7,11,11
12:14,14,15 14:12
14:15,16 15:2,2,4
15:7,7,8,20,20
16:11 17:8,11
18:2,3,5,6,6,8,10
18:11,12,14,15,15
18:19 23:4 24:20
24:21,23,25 25:2
27:21 28:3 29:1,5
29:20 40:1 45:16
**class**  18:1,2 24:14
**classified**  18:11
**clear**  34:15
**clearly**  44:12
**clients**  20:4
**code**  5:11 7:2,6
11:21 16:25 17:4
25:5 29:17 30:8
30:18 31:7 32:22
33:9,13,16 37:16
**collateral**  10:9,14
35:24
**collect**  21:14
**collectively**  7:7,21
**commence**  14:2
**commenced**  36:13
**comments**  29:9
**committed**  47:6
**committee**  2:1,4,6
2:7,10,14,19,22
3:2 4:4 5:6,11,13
5:15,19,24 6:3,7

15:23 16:3,7,13
16:14,19,23 19:3
19:6,10,19 20:3,8
22:9,11 23:5,6,14
23:15,17 24:5,18
24:24 25:2,7,10
25:10,11,13,14,18
25:19,23,25 26:6
26:10,11,15,15,17
26:19,21,23 27:3
27:4,7,9,15,16,20
27:24,24 28:9,15
28:18,21,23 29:3
29:10,19 30:5,8,9
30:11,12,15,16,20
30:20 31:5,12,14
31:15,18,19,22,23
32:1,1,2,5,12,15
34:2,8,13,13,19
34:22 35:10,10,14
35:20,22,25 36:3
36:10,14,19,25
37:2,3,11,17,23
38:1,4,6,9,14,16
38:18,20 39:12,12
39:14,16,21,24
40:4,8,8,9,10,13
40:19,21,22,25
41:2,5,9,11,13,17
41:19,24 42:5,6
42:11,13,14,16
43:6,6,7,8 44:12
44:13,15,18,19,20
44:22 45:11,13,19
45:23 46:24 47:2
47:5,5,8,12,13,23
48:4,12 49:7
**committee's**  5:16
16:6 23:6,11
27:22 28:19,25
35:15,22 36:3
47:17 48:6

**committees**  29:18
29:21 30:1 31:20
32:11,24
**communities**
43:13
**company**  7:8,14
12:22 13:2,6,8,10
13:13,17 14:9,12
14:14 42:25 46:9
**company's**  7:25
8:4 13:4 43:3
**compel**  34:6
**compensation**
48:9
**complement**
14:24
**comply**  11:25
**composition**
22:10
**comprise**  42:21
**comprised**  7:25
15:24
**conceded**  40:16
**concern**  13:16
**concerning**  36:14
36:24
**concerns**  28:19
39:23 45:25 47:3
47:21
**concluded**  36:17
48:15
**concludes**  37:25
**conclusion**  34:7
34:18 38:25
**conclusions**  31:7
**condition**  25:20
**conditions**  35:5
**conference**  35:4
**conferences**  35:1
**confers**  31:11
**confirmation**
21:12 26:8 40:24
45:16

**confirmed**  29:5
**confirming**  21:2
**conforming**  8:7
**confusion**  40:1
**congress**  7:21
**congress's**  30:21
**connecticut**  19:17
19:21
**connection**  28:11
29:6
**consensual**  12:24
**consent**  14:13
46:7,12
**consider**  42:2,7
47:14
**consideration**
14:16
**considerations**
33:24
**considered**  31:4
39:17,18 41:4
42:15
**considering**  38:3
45:20
**consist**  12:6
**consisted**  15:23
**consists**  11:11
18:2 27:20
**consolidation**
23:19
**conspicuously**
22:5
**constituencies**
42:9 45:23
**constituency**
30:10
**constituent**  43:11
**constituents**
20:11,16
**constitute**  39:11
42:4
**constituted**  30:16
32:11,15 42:6,17

**constitution**  32:10
**constrained**  12:18
**construction**  31:2
32:6
**consumer**  2:4,10
2:14,19,22,23 3:2
4:4 5:6,12,12,15
5:16,24,24 6:3
7:15 10:17 11:3,6
11:10,24 12:5,13
12:14 14:16 15:8
15:18 16:2 17:2,3
17:8,9,11,22 18:3
18:10,21,23,25
19:5,6,8,12,14,19
20:3,7,11,18,20
20:22 21:1,2,5,8
21:25 22:8,13
23:3,4 24:21 25:6
25:9,19 26:7,12
26:14,16,21,24,25
27:6,8,9,15,16,20
27:21,22,22,23
28:1,3,4,18,19,21
28:22,25 29:1,3,6
29:10 30:14 36:10
37:23,25 38:4,6,8
38:13,15 39:11,16
39:18,23,25 40:2
40:3,10,18,24
41:7,11,17,18,19
42:4,10,12,14,21
43:2,3,5,7,10,12
43:16 44:3,5,12
44:13,14,18,23
45:2,5,10,14,19
45:21,24,25 46:1
46:13,25 47:2,11
47:13,17,23 48:4
48:12 49:6
**consumers**  6:1,4
21:10 26:19,22
28:5,6 39:21

**40:13 41:5,23**
43:17 44:1 45:3,4
47:9
**consummate**
13:10
**consummated**
12:24
**contacts**  41:7
**contained**  16:15
**contemplate**
46:20
**contemplated**
16:24
**contend**  17:14,16
30:15 38:7
**contended**  16:16
**contending**  40:16
**contends**  30:24
**contention**  33:6
**contentions**  38:12
**context**  44:24
**contexts**  42:16
**continue**  14:19
**continued**  3:3
**contract**  17:3,9
46:19
**contrast**  21:21
**contravenes**
33:15
**contributed**  23:24
24:11,13
**control**  7:4
**controlling**  39:4
**conventional**  8:7
**conversion**  8:24
**convincing**  45:17
**core**  6:23
**corp**  5:3 12:23
31:8 42:1
**corporate**  13:19
**corporation**  1:7
7:18 36:8,19

**correspondence** 39:22

**correspondent** 7:15

**corresponding** 31:24

**cost** 27:16

**costs** 11:15 12:9 31:24

**counsel** 16:4,6 19:2,11,12,19,20 25:17,24 26:7,9 26:15 27:11,12,23 28:9,17 35:23 40:8 43:19 44:17

**counter** 12:7 30:12

**counterclaims** 11:12

**country** 50:21

**course** 24:15 28:12

**court** 1:1,12 5:2,9 5:14 6:13,16,18 6:21 7:2 13:11,14 19:2 21:17 22:14 28:10,11 29:12,25 30:4,8,15,19 31:4 31:10,11 32:3,5,5 32:9,14,17,20,20 33:3,5,7,10,14,19 33:21,23 34:5,7 34:11,12,17,20,25 35:3,5,8 36:16,22 36:24 37:5,19,21 37:24 38:5,7,11 38:17 41:21 42:2 42:7,19,25 45:20 46:23 47:1,10,12 47:14

**court's** 27:14 30:25 31:3 32:12 33:4,15 34:1

**correspondence** 36:13 37:1,2,15 47:9

**courts** 21:16 31:4 32:21 33:12 42:15

**creating** 23:20

**creation** 26:14,16

**credit** 9:6 17:2 21:8,11

**creditor** 11:10 12:14 17:3,9,9 18:1,10 20:11 23:4,6,21 24:21 26:3,14,16 27:21 31:18 35:24

**creditor's** 26:6 35:15

**creditors** 2:5,11 2:14,19,22,23 3:2 4:4 5:6,12,13,15 5:24,25 6:3,7 13:15 14:12,22 15:18,23,24,25 16:3,10,13,19,20 16:21,22 18:18,21 19:3,6,19 20:3,6,8 20:14,18,22 21:1 21:3 22:8,11,13 22:14 23:3,5,10 23:10,14,17,21,23 24:1,5,18,20 25:10,14,18,24 26:2,7,9,19,21,23 27:4,6,7,8,9,15,16 27:20,22,23 28:18 28:19,21,23,25 29:3,10,20,21 30:1,2,14 31:16 32:1 34:20,22 35:9,14,20 36:10 37:23,25 38:4,6,9 38:14,16 39:11 40:4,8,8,10,18,21 40:25 41:17,17,19

42:5,13,14,23 43:5,6,7 44:13,15 44:18,20 45:13,19 45:23 46:24 47:5 47:8,11,13,17,23 48:4,12,12 49:6

**criteria** 33:20

**critical** 22:12

**crossclaims** 11:12 12:6

**crucial** 45:18

**culminating** 13:20

**currently** 47:6

**d**

**d** 5:1 34:22,25 35:3,7 37:16 49:1

**damage** 12:11 18:11

**damages** 11:14 12:9,15

**dana** 42:18

**date** 7:3 10:2,12 10:15 12:12 13:2 18:21 27:1,11 39:25 43:16 50:25

**dated** 6:22 19:7 19:17,24 20:1 25:17 26:20 43:25

**day** 37:21

**de** 23:19 38:5 42:2 47:9

**debt** 10:3 13:19 14:6,7,10

**debtor** 1:9 7:6 8:5 8:21 12:24 18:9 22:24 29:7 31:17 33:16 36:20

**debtor's** 33:8,22 35:18

**debtors** 2:3,15,18 2:21 3:2 5:4,9 7:1 7:3,4,6 9:17 10:3 10:8,10,15,19

11:16,24 12:5,12 12:15,16 14:1,5 14:19 15:13,17 16:8 17:14,16,24 18:17,20,25 20:12 20:14,15,17,19,24 21:6,13,18,21 22:6,15,17,18,19 22:20 23:4,7,11 23:16,20,25 25:22 26:5 27:1,5,10,25 28:14,18,20,23 29:1,7,9 30:6 31:2 36:5,6,10 37:5 38:2,14,22 39:6 39:19,24 40:11,13 40:16,21 41:6,10 41:16 42:22,23 43:15 44:9,10,25 45:8,13 46:3,5,6,8 46:9,19 47:4,12 47:15,15,20,21 48:11

**december** 9:23 13:17

**decided** 25:25 26:10 40:9

**deciding** 39:11,16

**decision** 5:8 15:9 27:14 31:3 38:3 38:24 39:2 40:20 41:23

**decisionmaker** 39:1

**declaration** 2:13 7:10,13,23 8:3,10 8:15,20 9:2,9,14 9:18,23 10:1,14 13:1,12,16 14:17 43:20

**decree** 11:13

**decrees** 12:8

[deeds - email]

Page 7

**deeds** 12:2
**deem** 33:24
**deems** 29:22 35:5
**defendants** 22:20
**defense** 11:17,20
11:23
**defenses** 11:4 17:8
17:11 28:8 45:7
**deference** 42:3
**defined** 5:22 17:4
24:7,9
**delay** 5:2
**delayed** 25:10
**deliberations** 40:7
**deliberative** 39:10
41:22
**delineates** 30:18
**delphi** 36:8,19
**demonstrated**
38:20
**demonstrating**
38:15 40:11
**denied** 6:18 32:3
45:10 47:13,19
49:7
**denies** 37:25
**deny** 48:11,13
**denying** 34:8
**departments** 46:4
**deposit** 46:9
**deprived** 21:6
**derail** 44:20
**describing** 43:21
**description** 24:15
**desire** 30:21
**desires** 42:9
**despite** 25:22
**deteriorated** 36:2
**determination**
35:9 42:4,5
**determine** 22:18
37:22

**determined** 13:4
46:23
**determines** 5:14
**determining**
42:16
**detroit** 36:6,12
**devoid** 22:5 38:25
**dewey** 34:10
38:16 47:25
**dialed** 6:9
**diamond** 3:1
**differences** 45:18
**different** 30:19
31:7 32:9 37:7
38:12 45:25
**direct** 37:22
**directing** 37:1
**disagree** 38:7
**disband** 2:1,21
3:2 5:5,15 30:5,8
31:5,12,17 32:4
32:15 34:2,13
35:9 36:9,25 37:3
37:10,12,17 38:18
47:13 48:11 49:6
**disbanded** 38:1
42:17
**disbanding** 2:4,18
5:11 34:21 35:22
38:15
**disbandment**
37:23 38:5
**discharge** 18:7
20:17 21:12,15,22
22:1,2 47:4
**discharged** 15:20
18:5,8,12,16
24:25 45:16
**discharges** 21:20
**disclosure** 15:14
15:17 16:13,15,17
17:19,23,25 22:4
23:11 24:16 28:16

28:17,20,24 29:11
29:12 44:24
**disclosures** 22:23
**discovery** 36:4
**discretion** 33:23
40:18
**discriminated**
16:21
**discuss** 28:19
**discussed** 6:17
38:1 44:17 47:7
**discusses** 28:24
**discussion** 29:15
**disinterested**
35:21
**disputed** 41:3
**dissolve** 30:16
32:11 36:20
**distinguishable**
37:19
**distributed** 14:22
15:4 24:9
**distribution** 14:11
15:19 16:11 18:5
18:18 24:19,22
**distributions**
23:23
**district** 1:2 6:21
6:21 7:11
**ditech** 1:7 5:3 8:5
8:6,7,8,11,13,16
8:18 10:22 11:5,7
12:23 21:1
**doc** 2:1,8,11,15,19
2:24 3:3
**docket** 39:15
46:14
**documents** 10:24
**doing** 23:10 27:12
32:5 33:3,10
41:25
**drafted** 47:6

**drop** 26:10
**due** 11:23 36:2
**duplicative** 35:16
**duties** 35:13

**e**

**e** 1:21,21 4:1,1 5:1
5:1 49:1 50:1
**e.d.mich.** 36:7
**e.d.n.y.** 42:1
**earlier** 24:21
**earn** 21:19
**earnest** 13:18
**ecf** 5:22 6:5 7:12
10:25 46:17
**economic** 35:2
**economically** 35:7
35:20
**economics** 44:9
**ecro** 1:25
**educate** 22:14
**effect** 22:18 28:13
37:14 40:15
**effective** 13:2 36:1
**effectively** 35:18
47:2
**effects** 25:4
**effectuate** 15:9
**effectuated** 17:15
17:17
**efforts** 21:13
25:15 35:15,25
**eight** 39:13
**either** 26:13 38:23
46:21
**election** 15:11
**electronic** 39:15
**eleven** 19:11
**eligible** 8:8 43:22
**eliminate** 20:18
**eliminated** 21:11
**elimination** 24:13
**email** 25:16,16
27:1

[emanuel - following]                                                     Page 8

emanuel  4:3
    19:18
empanel  40:10
emphasized  44:18
employed  41:23
empowered  30:5
    31:5
enforceable  18:9
    21:3
enforcement
    21:10
engaged  23:7
    39:10
ensure  35:6
ensuring  28:5
    45:4
entered  21:15
    28:11 46:2,7,15
enterprise  13:16
enterprises  7:20
entertaining  31:8
entirely  24:15
entities  7:19 31:22
entitled  33:16
entitlement  33:22
entry  2:3,18
enumerated  32:12
enumerating  32:9
    33:20
equitably  33:7
equitize  14:5
equity  8:23 9:1
    14:7,9 29:21 30:1
    30:3 33:16 36:19
    36:22 37:2,3
err  47:11
erroneous  38:25
errors  11:21
especially  6:15
    32:25
essence  18:2
est  32:6

establishing  22:8
estate  23:20 31:25
    33:8,18
event  15:1 18:13
    24:10 31:1 37:19
    45:15 48:3
eviction  10:22,24
evidence  37:13
    38:25 39:7,9
    40:14,14
example  19:14
    34:3 36:3 41:25
    42:17 43:15 46:16
    47:24
exceptions  15:15
excessive  48:5
exclusio  32:6
exclusion  32:7
exclusively  8:5
excuse  5:19 8:11
    15:3 17:16,21
    25:16 37:11 48:12
exempt  33:8,16
exempted  33:17
exemptions  33:20
    33:22,23
exist  46:12
existing  26:22
    32:22 38:20 42:13
    44:12
expeditious  35:2
expeditiously
    35:6 40:24
expense  30:10
    35:23
expenses  2:7 5:18
    9:12 24:6 33:10
    33:18 47:18,22
experience  48:8
expertise  44:8
explain  12:16
explained  16:6
    25:18,24 27:24

32:20 33:14 38:22
explicit  31:10
    32:8 33:12,19
expressed  39:17
expressio  32:6
expression  32:7
extend  18:21
    39:25 43:16
extent  17:10
    22:20 41:14
extinguish  14:6
extinguishment
    14:14

f

f  1:21 17:1 50:1
f.2nd  39:5
face  24:21 45:25
facing  13:3
fact  40:22 41:4
facto  23:19
factored  22:22
factors  27:13 35:8
    42:7,15,19
facts  6:25 34:23
    37:6 46:24
failed  38:22
failure  11:25
fair  19:17,21
    21:11
faith  41:19
faithful  15:15
fall  9:19 11:11
fanciful  39:3
fannie  7:17,19
favors  44:12
february  6:25
    12:25 15:22
fed.cir.  39:5
federal  7:16,17
    8:25 17:5 44:7
    46:3,8,8
fee  47:24

fees  2:7 5:18
    11:15 12:9 22:22
    24:4,5 47:17 48:3
fellowship  34:4
fiduciary  35:13
file  6:8 39:25
filed  2:22 7:1
    10:24 15:13 16:10
    16:13 17:24 18:20
    18:22 24:22 26:19
    28:14 34:18 39:15
filing  18:24
final  25:20
finally  44:14
    46:23
financial  8:5 16:4
    20:13 22:23 43:14
    44:7 48:6
financials  22:20
finding  32:3
finds  37:5,19
    41:21 42:19 47:1
    47:10
fines  11:15,16
    12:10
finestone  4:8
firm  5:25 19:18
first  10:7,7 14:10
    15:5 19:6 25:22
    42:21 45:17
five  6:3 21:19
    27:21 35:22
floor  4:5
focus  13:13 27:24
    44:22
focused  26:1
focuses  8:22
focusing  26:3
followed  19:16
following  5:23
    23:18 26:25 35:8
    42:7

[follows - individuals]                                                                                      Page 9

**follows**  6:25 15:5
  20:9
**foreclosure**  10:21
  10:23 11:3,4,6
  12:5
**foregoing**  48:10
  50:3
**form**  39:16
**formal**  13:6
**formation**  26:20
  27:15 39:20 40:9
  43:5 44:13
**formed**  36:25
**forth**  24:16 27:13
  33:4
**forward**  8:1,2,4
  8:12 10:18 14:11
  15:8 16:21 24:14
  28:22 42:25
**found**  34:20 35:8
**foundation**  19:15
**four**  11:23 35:20
  42:11
**fourth**  44:11
**fraud**  6:5
**fraudulent**  11:8
**freddie**  7:18,19
**fully**  12:24 29:8
**functions**  30:22
  31:21
**fund**  9:12
**funding**  42:1
**further**  18:21
  22:2 25:24 30:24
  35:1 40:7 41:14
**future**  21:25

**g**

**g**  5:1 23:22
**garrity**  1:22
**general**  11:10
  14:15 15:7,24
  16:9,22 18:12,14
  23:23 24:1,20

25:1 31:15 34:19
**generally**  43:12
**generals**  46:4
**genuine**  47:20
**gerald**  7:10
**give**  25:25 33:23
**given**  37:17 40:20
  42:3
**gives**  32:21
**glenn**  45:10
**go**  14:11 15:8
  16:21 24:14 28:22
**going**  13:16
**good**  41:19
**government**  7:19
  7:20 46:3
**governmental**
  44:5
**governs**  29:17
**grant**  33:23 34:9
**granted**  19:2
**granting**  34:18
**grants**  32:25 33:1
**green**  1:13
**greenwald**  2:22
  5:25
**grounds**  38:15
  41:2
**group**  5:22 13:21
  13:22 23:8 43:11
**groups**  13:18
**gsc**  7:20
**gses**  7:21 8:8
**guc**  23:22 24:3
**guidance**  42:20

**h**

**handled**  35:6
**hard**  21:18
**harm**  20:16 21:8,9
  44:2
**harris**  6:2
**headline**  29:4

**headwinds**  13:3
**hear**  48:5
**heard**  5:6
**hearing**  2:1,3,10
  2:13,17,21 3:1 5:4
  6:10,16 28:16,21
  29:11 40:15
**hearings**  42:24
**heat**  39:4
**hecm**  8:25 9:10
**hecms**  8:24 9:13
**held**  6:16 29:5
  31:10
**helpful**  42:20
**hereto**  38:11
**hester**  39:4
**high**  39:6
**history**  34:6
**hoc**  5:21 13:21,22
  23:7
**hold**  35:1
**holder**  36:22
**holders**  13:18
  14:11 15:5,6,7
  18:4 29:21 30:1,3
**holding**  1:7 5:3
  12:23 13:22 16:2
  18:3 27:21 29:20
  37:18
**home**  7:17 8:23
  9:1,8 33:17
**homes**  9:2 21:1,6
**hon**  1:22
**hornbook**  33:11
**housing**  8:25
  19:17,21
**hyde**  3:25 50:3,8

**i**

**identified**  14:13
**identities**  41:7
**ii**  2:6
**illegal**  11:7 20:24
  21:14

**illegally**  20:19
**immunize**  21:23
**impact**  28:13 45:3
**impacted**  12:17
**implement**  12:19
  32:22
**implicate**  17:18
**implicated**  36:16
**impossible**  21:9
**improper**  12:1
  20:20 21:6 22:6
  22:18,21
**improvements**
  46:10
**inaccurate**  20:23
**inappropriately**
  40:17
**include**  12:14
  24:4 25:3
**including**  11:4,14
  11:16 12:9 13:7
  14:16 15:7,18
  18:11 24:20 28:6
  36:3 44:25 45:5
  45:14,23
**incorporate**  16:24
**incorporated**
  28:15 29:9 46:15
**incorporating**
  23:18 25:4
**increase**  31:24
**incurred**  2:7 5:18
  48:3
**indenture**  16:1
**indentured**  15:25
**independent**  7:8
  42:5
**indicates**  19:9
**individual**  19:8,21
  33:7
**individually**  6:2
**individuals**  10:17
  27:21 43:22

**industries** 39:5
**industry** 12:18
  16:4
**ineffectual** 37:13
**inevitably** 22:3
**infested** 22:21
**information** 16:15
  41:6
**initial** 18:16 38:2
**initially** 41:5
**initiatives** 12:20
**injunction** 21:22
**injunctions** 21:15
  22:1,3
**input** 40:7
**inquiries** 18:23
**insofar** 20:16
  47:19
**installments** 9:5
**insurance** 46:9
**insured** 8:24
**integral** 14:14
**intend** 44:19
**inter** 31:18
**interest** 9:8 16:20
  17:1,3,6,11 21:24
  22:13 29:25 41:8
  41:16
**interested** 48:2
**interests** 25:14
  26:25 27:6 30:9
  31:23 35:15 42:12
  47:9
**investment** 12:22
**investor** 19:25
**involving** 11:18
  11:21 12:13
**issue** 5:8 26:1,4,7
  32:17 35:4
**issues** 20:5 29:4
  39:23 40:1,4
  44:23 45:14,14,25

### j

**j** 19:24
**j&l** 41:25
**james** 1:22
**january** 6:22 17:5
**jlg** 1:3
**joinder** 3:1
**joint** 14:2 15:13
**judge** 1:23 6:22
  45:10
**judgement** 32:18
**judges** 6:20
**judgment** 11:13
**judgments** 12:8
**judicial** 10:20,21
  10:23,23 11:2,3
  30:21
**june** 13:6
**jurisdiction** 6:18
**justified** 27:18
  30:11 35:25

### k

**karen** 1:25
**keeping** 41:20
**key** 45:22
**known** 7:18 12:23

### l

**l** 1:22 10:5,6,6,9
  10:12,13 13:23
  14:5,8,8,13,15
  15:5,6,12,25 16:8
  23:16 24:2,6,9,13
  25:21 26:6 47:20
**lack** 44:7,11
**lacked** 34:9 41:6
**language** 25:3
  30:21 31:11 34:5
**large** 36:2
**late** 27:17
**law** 19:14,18,25
  31:3 33:5,11
  37:18 38:25

**lead** 14:8
**lease** 20:13
**leave** 26:6
**leaves** 21:2
**leboeuf** 34:10
  38:16 47:25
**ledanski** 3:25 50:3
  50:8
**legal** 19:14,23
  28:5 29:16 43:15
  43:25 44:6 45:4
  50:20
**legislative** 34:6
**legitimate** 22:14
  47:21
**lenders** 7:22 10:6
  10:6 13:21 14:8
  14:13 15:12 16:8
  23:16 24:2,9,10
  25:22 26:6 40:21
  41:16 47:20
**lending** 7:15 17:3
**letter** 19:7,9,16,23
  20:1,5,8 22:25
  25:16,16 26:20,21
  27:1 39:19 43:25
**letters** 19:4,16,20
  20:2 23:1 39:13
  39:18
**leveraged** 12:21
**liable** 33:17
**lien** 10:7,7,13
  14:10 25:22
**liens** 11:18 20:13
**lies** 32:16
**lieu** 35:14
**life** 34:4 43:3
**light** 27:8 34:23
  41:21
**likewise** 47:19
**limit** 9:6,6 47:16
**limitation** 10:2
  11:15 17:14,16,20

**limitations** 35:5
**limited** 43:14
**limiting** 2:6 5:15
**limits** 33:4,20
**line** 6:14 9:5
  16:12 49:4
**liquidated** 16:2
  23:3
**liquidating** 35:18
**liquidity** 12:19
  13:3
**litigation** 11:6
  16:2 47:22
**live** 6:14
**living** 9:12
**llc** 8:5 42:19
**llp** 4:3 34:10
  38:16
**loan** 5:21 7:17
  8:12,25 9:8,11,11
  9:16 11:8 12:1
  13:22 20:20 21:6
  22:7 23:7
**loans** 7:9,9,15,22
  8:6,7,10,13,17,23
  9:19,20,21,22,24
  10:5,5,7,16 13:23
  14:6,8 15:6 46:6
**local** 7:11
**lombardo** 7:10,12
  7:23 12:25 13:12
  43:20
**lose** 21:1
**lower** 43:13
**lump** 9:5

### m

**m** 2:22
**mac** 7:18,19
**madison** 4:5
**mae** 7:17,19
**maintain** 26:22
  45:13

| | | **n** | **noteholder** 31:19 |
|---|---|---|---|

**majority** 8:23
15:11 42:22
**making** 21:18
22:9 42:5
**management**
12:22 13:4
**mandate** 16:7,12
25:3 27:22 44:14
47:17
**mandates** 33:12
**march** 15:12
**market** 48:9
**marketing** 13:9
14:20
**matter** 1:5 5:7,9
6:23 21:23 38:2
47:10
**matters** 5:7 30:20
47:23
**maximize** 13:15
26:2
**maximizing** 16:9
**mean** 28:4
**meaningful** 21:3
43:14 44:8 48:2
**means** 43:14
**meeting** 39:6
**member** 6:2 41:9
**members** 15:24
23:5,13 25:9,12
25:19 26:13,18,24
30:20 31:19 40:7
**membership**
22:10 25:14
**merger** 13:7
**michigan** 36:7,12
**milan** 6:1
**million** 8:17 10:4
10:11,16 13:23
14:10 24:4,12
43:2 46:5
**mineola** 50:23

**misapplication**
11:22
**miscalculation**
11:22
**misplaced** 36:11
37:6
**modification** 12:1
**modifications**
23:8
**moment** 6:9
**monetary** 11:14
12:4,11,14 18:3
**money** 9:1 12:8
12:15 18:11
**monique** 2:23
**monthly** 9:4,5
**months** 21:23
**mortgage** 6:5 7:9
7:9,17,18,22,22
8:1,2,2,4,9,11,12
8:13,13,14,21,23
9:3,4,16,19,19,20
9:21 19:22 43:1,1
43:2 45:11
**mortgages** 8:24
10:19 11:19 28:1
29:6 43:21,22
45:2
**motion** 2:1,3,15
2:18,21 3:2 5:5,9
5:21,23 6:8,16,17
6:18 29:16 30:13
32:2,3 34:8,18
36:6,22 37:25
40:15 45:10,12,21
47:19 48:11 49:6
**movants** 38:14
**move** 40:23
**moved** 31:17
**moving** 38:19,20
**murky** 26:4
**mute** 6:10,14,15

**n** 4:1 5:1 49:1
50:1
**n.d.ill.** 31:9
**narrow** 27:23
**narrowly** 44:17
**nation** 21:16
**national** 7:16
19:14
**nature** 42:8
**near** 25:20
**necessary** 11:17
30:2,9 32:18
35:16 38:21
**need** 22:17 31:22
38:11 41:4
**needed** 12:19 13:5
**negotiating** 13:18
**negotiations** 23:8
**neither** 45:17
**net** 24:8
**never** 36:23
**new** 1:2,14 4:6
6:22 7:11 13:4
25:9,12,14,20
26:12,18,23 28:23
34:3
**noise** 6:11
**non** 7:6 10:21,23
11:3 12:3,10,14
18:3,5,7 23:24
29:7 44:4 45:16
**nondischarged**
18:2,14 24:24
**northwestern**
19:25
**noskov** 2:13 4:9
19:18
**note** 7:24 10:10
33:19 48:5
**noted** 24:21 26:9
33:3,10 34:11
38:17 47:15

31:20
**noteholder's**
31:18
**noteholders** 31:15
31:21,25 32:4
**notes** 10:12,13
14:15 15:6 16:1
24:6,13
**notice** 40:1
**noting** 16:10
34:14 43:23
**notwithstanding**
17:1
**november** 34:11
**novo** 38:5 42:2
47:10
**number** 5:22 7:12
10:25 19:11,12
34:10 36:8 42:22
46:17,17
**numbers** 6:5
10:25
**numerous** 18:22
**ny** 1:14 4:6 50:23

| **o** |
|---|

**o** 1:21 5:1 11:20
16:24 17:13,18,21
25:4,20 26:1,4,11
28:7 45:6,15
46:16,21 47:3
50:1
**object** 29:10
**objected** 16:14
17:19,23
**objection** 2:10,14
2:17 3:1 16:13
28:22
**objections** 23:11
44:25
**obligated** 46:5
**obligations** 10:3
10:10 12:1

[observed - previously]                                                                          Page 12

**observed**  26:4
**obtain**  21:22
**obtaining**  24:19
    43:14,22
**obviously**  43:9
**official**  2:4,10,14
    2:19 5:5,11 6:7
    22:8,11,23 26:22
    27:16,20 31:14,15
    32:1 34:2,19
**old**  43:24 50:21
**older**  43:23
**operate**  7:8
**operating**  31:8
**operational**  12:17
    12:19 13:3
**opportunity**  48:2
**oppose**  5:23 26:13
    26:14,16
**opposed**  32:2 43:6
**opposite**  34:17
**opposition**  2:21
    30:23 39:19 45:22
**order**  2:4,18 5:5
    5:10 6:20 22:16
    28:10 29:25 32:17
    35:4 37:1 38:4
    46:7,17
**ordered**  7:21
    11:13 48:14
**orders**  12:7 46:12
    46:15
**ordinary**  28:11
**organizations**
    19:13 44:5
**originally**  24:22
**originated**  7:22
    8:9
**originates**  7:14
    8:7
**origination**  11:8
**originations**  8:1,4

**originator**  7:8
**outset**  16:7 41:3
**outstanding**  10:3
    10:10
**override**  33:12
**overstated**  20:23
**overturn**  38:3
**owing**  11:23
**owned**  46:6
**owners**  8:14 9:1
    9:22
**owns**  8:13 9:20,20

**p**

**p**  4:1,1 5:1
**p.c.**  5:25
**pace**  41:20
**pacific**  34:16 36:5
    37:6,7,15 42:18
**package**  48:9
**packaged**  12:24
    28:2 45:2,11
**page**  49:4
**pages**  22:25 30:23
**paid**  18:15 24:4,6
**paragraph**  7:13
    7:23 8:3,15,20 9:2
    9:9,15,18 10:1,25
    10:25 13:1,12,17
    14:17 30:13 45:12
    46:18
**paragraphs**  8:10
    10:14 43:20
**pardon**  21:24
**part**  14:6 20:8
    28:2,3,22 29:18
    32:17 36:2 45:2
**participate**  42:10
**participating**
    27:1 41:8
**particular**  34:23
**particularly**  27:7
    27:17 44:1

**parties**  5:23 29:7
    38:11 41:16 47:20
    48:2
**partly**  18:22
**party**  8:14 9:22
    10:20,22 11:12
    12:7,12 13:11
    29:24 31:20 35:21
    38:19,20
**patch**  18:8
**patent**  39:2
**patently**  16:18
**pause**  6:12
**payment**  11:22
    15:1 33:18
**payments**  9:4
    21:19
**penalties**  11:15,16
    12:10
**percent**  9:17 14:9
    15:12 24:8,10
**perform**  42:14
**performing**  31:20
**performs**  8:11,12
    9:18,21
**person**  17:1,7,10
**persons**  43:23
**pertinent**  14:6
**perversely**  21:13
**petition**  7:1 10:2
    10:11,15 11:25
    12:12 13:9 14:20
    22:4,6 27:11
**phone**  6:10,14
**plan**  5:17 12:25
    13:2 14:3 15:13
    15:14,16 16:10,10
    16:18,19,24 17:15
    17:18,25 18:1,4,8
    18:13,16 20:15,17
    21:2,12 22:4 23:8
    23:11,18 24:7,9
    24:14,22 25:3

    28:2,6,15,20 29:2
    29:5,14 35:18,18
    40:6 44:9,10,24
    45:5 46:19 47:6
**planning**  13:14
**please**  6:9,10,14
**pm**  1:17 48:16
**point**  26:5
**portfolio**  9:13
**portfolios**  22:21
**portion**  14:5
**position**  28:25
    29:4
**possession**  7:3,5
    41:6
**possibility**  41:12
**possible**  41:2
**posture**  40:20
**potential**  13:7
**power**  31:12
    32:21,24,25 34:2
    34:7,12
**powers**  30:19 32:9
    32:13 33:1
**practices**  11:9
    20:21,25 21:7
    22:7,16,19
**pre**  11:24 12:24
    13:9 14:20 22:4,6
    45:11
**predominantly**
    7:16
**prescribing**  35:4
**presence**  30:11
**present**  39:7
**presented**  40:14
**preserve**  13:15
**preserved**  29:8
**preska**  6:22
**pressing**  26:5
**prevent**  21:9
**prevented**  31:20
**previously**  44:24

**primarily** 8:22
**primary** 8:1
**principal** 8:17,19
  9:6,25 10:4,11
**principles** 29:16
**prior** 22:1 28:16
  39:12
**priority** 11:18
  15:2 16:20 31:14
**pro** 19:13,20
  24:12
**procedures** 16:16
  28:12 29:13,13
**proceeding** 6:23
**proceedings**
  10:21,22,23,24
  11:3 40:23 44:7
  45:9 48:15 50:4
**proceeds** 9:11
  14:21 15:4 23:25
  24:8,12,13
**process** 13:9
  14:20 18:24 27:25
  28:3 30:12 32:17
  39:11 41:22 43:18
  45:1 47:24
**productive** 30:12
**professionals** 5:19
  23:7,14 44:8,16
  48:4,6
**profit** 44:4
**progress** 36:1
  41:20 44:21
**projected** 15:17
  18:17
**promise** 24:19
**promptly** 16:3
  23:5
**proofs** 18:24 40:1
**properly** 22:16
**property** 11:19
  33:8

**proposal** 22:5
  25:21
**propose** 14:2
  44:17
**proposed** 15:16
  19:19 25:7 27:23
  28:17 29:1,5 40:6
  44:16 46:19
**protect** 22:12 30:9
**protecting** 35:15
**protection** 19:25
**protections** 46:16
  46:20 47:3
**provide** 25:5 46:5
**provided** 16:11
  24:22
**provides** 14:3,18
  16:25 23:17 29:24
  31:1
**provision** 34:21
**provisions** 17:20
  20:15 32:19,22
**purchased** 8:9
  17:6,12
**purchaser** 13:11
  29:8
**purchases** 7:14
  17:1
**purposes** 23:20
**pursuant** 5:10
  6:18 7:5,10 14:4
  15:4 30:6,7 31:6
  35:3 36:15,23
  45:21 47:5
**pursue** 14:20
  23:24 45:13 47:2
**pushback** 25:22

**q**

**qualified** 24:15
**question** 36:24
  37:9,11
**questionable**
  37:20

**questioned** 34:1
  37:17
**questioning** 40:19
**quinn** 4:3 19:18

**r**

**r** 1:21 4:1 5:1 50:1
**raised** 20:5,6 29:3
  40:4 44:24
**rata** 24:12
**rate** 9:8
**rationally** 39:1
**reach** 40:22
**reached** 23:14
  31:7 34:17
**reaching** 41:23
**reading** 32:23
**really** 40:16
**reasoned** 32:8
**reasons** 6:17 38:1
  47:7
**recapitalization**
  13:14,19
**receive** 15:19 18:5
  18:18
**received** 19:4
  39:13
**receives** 9:5
**recognize** 18:25
**reconsider** 28:10
**record** 38:25 39:9
  42:24,24 48:13
  50:4
**recoupment** 28:7
  45:6
**recovery** 16:9
  23:22 24:3,10
  26:2
**redundant** 36:3
**refer** 5:12 6:1 7:7
  8:6 10:8,12,17
  12:3,10 13:9,21
  13:23 14:3,22
  23:15,22 24:11

**referral** 6:20
**reflect** 25:13
**reflects** 30:21
**reflexively** 39:20
**regard** 29:13
  45:12
**regarding** 18:24
  22:15 23:8 28:25
**regulations** 17:5
**rejected** 25:21
  32:14 33:5
**related** 11:6 17:8
  26:11
**relates** 28:12
**relating** 10:4,12
  45:14
**release** 23:24 47:4
**relevant** 15:15
  17:25
**reliance** 37:5,15
**relief** 7:1 13:5
  25:5 26:10 34:9
  46:6 47:15 48:13
**relies** 9:11
**rely** 36:5,10
**remain** 17:7
**remained** 7:3
**remaining** 14:15
**remedies** 21:4
**remit** 9:4
**renegotiate** 25:13
**reorganization**
  14:3,4,7,9,19,24
  15:10,13 17:22
  18:4 25:1 46:22
**reorganized**
  14:14 18:9
**repeatedly** 44:18
**replicate** 44:19
**reported** 26:15
**reporting** 21:11
**represent** 26:25
  31:23 46:25 47:8

| | | | |
|---|---|---|---|
| 48:8 | result 11:13 12:7 | **s** | sections 5:10 6:19 |

**representation**
30:2 38:21 41:11
42:12 43:15 44:11

**representative**
20:6 35:11

**representatives**
19:5

**represented** 5:25
19:1 27:7,11,12
43:19 44:4

**representing**
19:11 35:13

**request** 19:10
20:10 26:10 27:1
29:24 41:15 43:9
47:12,15 48:13

**requested** 20:2
39:24 48:7

**requesting** 19:5
26:20 39:14

**requests** 20:7 36:4
39:15 41:11

**required** 9:4 46:9

**reserve** 46:8

**reserved** 37:2

**residences** 10:19

**residential** 7:14
8:17 27:14

**resolution** 35:2

**resolve** 11:17
23:10 38:11

**resolved** 47:23

**respect** 11:19

**respected** 28:6
45:5

**respectfully** 47:19
48:11

**response** 6:8
18:22 23:1 39:19

**restructuring**
13:20,24

**result** 11:13 12:7
22:3,3 47:22

**retained** 16:3 48:4
48:7

**retention** 16:8
23:6 44:15,16
48:7

**return** 23:9

**reveals** 46:14

**revenue** 9:17

**reverse** 6:4 7:9
8:2,21,22 9:3,16
10:18 19:22 43:1
43:21,22

**review** 13:6 28:10
38:6,8,12,23
39:21 42:2 44:8
46:14 47:10

**reviewed** 39:13

**revised** 17:25

**revisited** 33:21

**right** 5:2

**rights** 8:14,15
9:20 21:10 28:4,5
28:6,7 45:3,4,5,6

**rigorous** 38:18

**risk** 44:2

**rmbs** 16:1 24:7

**rms** 8:21 9:18,20
9:21,23 10:20
11:5,7

**rms's** 9:13

**road** 50:21

**rosecap** 45:9,18
45:20,24 46:2,10
46:14,23

**rsa** 13:25 14:1,18
15:15

**rule** 7:10,11,12,23
16:20 32:6

**rulings** 49:3

**runs** 31:2

**s** 4:1 5:1

**s.d.n.y.** 34:11 36:8
39:4 42:18

**sale** 5:17 13:7
14:20,21,23 15:1
15:10,17 16:23
17:6,12,15,17,22
18:13,17 24:11,12
25:2 27:25 28:3,4
40:5 44:25 45:2,3
45:15 46:15,17,21

**samuel** 19:24

**satisfaction** 15:2

**satisfied** 48:1

**scheduled** 25:8

**scheme** 6:5

**school** 19:25

**scope** 2:6 5:16
44:14,15,16 45:16
47:4,16

**scranton** 2:23 6:1
26:19,22

**second** 10:13 15:6
18:1 27:1 31:14
31:23 39:20 43:5

**section** 6:23 11:20
16:24,25 17:4,7
17:12,13,18,21
25:4,20,25 26:4
26:11 28:7,24
29:16,23 30:6,17
30:24 31:1,6,11
31:13 32:4,8,16
32:16,19,21,23,24
33:1,4,6,9,11,15
33:19,22 34:3,6
34:12,21,22,25
35:3 36:15,17,23
37:16 40:5 45:6
45:15,22 46:16,20
46:21 47:3

**sections** 5:10 6:19
7:5 30:7 31:2
33:13 35:7

**sector** 26:3

**secured** 10:7,13
10:18 15:3 35:24

**securitization** 8:8

**securitized** 7:22

**security** 29:21
30:1,3

**see** 5:22 6:5 7:9,23
8:10,15,20 9:2,9
9:14,17,25 10:14
10:24 12:25 13:11
13:16 14:17 17:12
29:22 30:3,13,22
32:2,13 34:3,9
35:7 36:16 38:16
41:25 42:17 43:15
43:20,24 45:12
46:10,16 47:24

**seek** 20:17 39:25
47:16

**seeking** 5:5 37:10
37:12 48:6

**segments** 8:1

**senior** 13:4 43:12

**sent** 19:7,23 20:1
27:1

**separate** 26:14,21
27:3,4,15 30:21
30:25 39:24 42:6
42:11,16 43:8

**separation** 40:9

**serve** 23:4

**service** 8:11

**serviced** 8:16 9:24

**servicer** 7:8,9
45:11

**services** 43:1

**servicing** 8:2,3,12
8:13,15,22 9:16
9:18,20,21 10:16

11:8,21 20:21
21:7 22:7,15,19
22:21 46:10
**set**  24:15 27:13
33:4
**setoff**  28:7 45:6
**settlement**  23:14
23:15,17 24:24
25:3,7,11,13,21
26:11 28:15 40:23
46:2 47:5
**settlements**  46:12
**seven**  15:24
**severely**  12:18
**share**  24:12
**shows**  39:9
**siegel**  31:3 33:5
37:18
**significant**  12:17
13:3 21:8
**significantly**  37:7
**silent**  34:12
**six**  35:25
**smaller**  14:23
**socioeconomic**
43:13
**sold**  7:16 28:1
45:1
**solely**  5:16 18:21
23:20 39:21
**solicit**  41:8
**solicitation**  16:16
29:13
**solutions**  8:21
50:20
**sonya**  3:25 50:3,8
**sophisticated**  19:1
31:22 43:19
**sought**  36:20
**source**  30:25
**southern**  1:2 6:21
7:11

**specialty**  16:4
**specific**  30:18
34:5,21
**specifically**  37:2
**split**  24:1
**sponsored**  7:20
**stage**  27:17
**stake**  35:10
**stakeholders**
22:17 35:12
**standard**  38:5,10
38:12,23 39:6
42:3,3
**standing**  6:20
**start**  5:3
**state**  44:6 46:4
**stated**  34:5 43:17
44:1
**statement**  2:3
15:14,17 16:14,15
16:17 17:19,23,25
22:5 23:12 24:17
28:16,17,20,24
29:11,12 44:25
**states**  1:1,12 2:17
5:13 6:21 20:8
25:17 29:19,22
32:17
**status**  35:1
**statutory**  11:16
12:9,10 21:10
29:18 31:10,21
32:6,10,12,15,24
36:14 37:16 41:8
43:8
**stay**  28:13
**steps**  39:22
**strategic**  13:7
**strokes**  23:16
**strongly**  43:8
**structure**  12:22
13:19

**subject**  11:19,20
17:2,7,10
**submitting**  20:10
**subserviced**  9:24
**subservicer**  8:18
**subservicing**  8:14
8:22 9:22
**subsidiaries**  7:7
**substantial**  20:16
22:9 39:7 40:14
**substantially**  10:8
13:8 14:21
**substantive**  23:19
**succeeded**  24:18
**succeeds**  21:2
**successors**  21:24
**sued**  11:6
**suite**  50:22
**sullivan**  4:3
**sum**  9:5
**super**  15:11
**support**  2:13
13:20,24 15:14
20:7 23:18 25:8
26:13 30:17 36:5
36:9
**supported**  5:21
19:11 35:9,22
43:8,9
**supporting**  47:6
**supreme**  31:3
33:3,5,10,14,19
**surcharge**  33:7,15
**swap**  14:8

**t**

**t**  50:1,1
**tailored**  44:17
**take**  26:7
**taken**  41:21
**tasks**  42:13
**team**  13:4
**tenenbaum**  19:24

**term**  5:21,22 10:5
10:6 13:21,22,23
14:5,8,8,13 15:5
15:12 23:7,16
24:2,8,9,10 26:6
**terms**  10:5,6
11:10 23:18 24:7
44:9
**test**  16:20
**thad**  19:7
**thank**  6:15 48:14
**thanks**  6:11
**thereto**  45:22
**thereunder**  10:6
**thing**  32:7
**things**  9:7 11:25
14:1 16:18 27:5
46:1
**third**  8:14 9:22
11:12 12:6 13:11
15:6,11 28:14,16
29:7 43:11
**thoughtful**  39:10
**thousands**  12:13
**threaten**  20:15
**three**  7:25 8:2
11:21 30:11 31:23
35:16 40:4 42:9
**time**  6:13 10:20
15:23 17:5,6
25:12
**timeline**  41:14
**timing**  40:19 41:1
**title**  17:4 32:19
**today**  5:7
**toggle**  14:18 15:9
15:16
**trade**  14:12,12
15:8,24 16:21
24:14
**transaction**  5:17
13:11,14 14:3,4,7
14:19,23,24,25

15:10,10,18 17:2
17:9,22 18:4,7,13
18:17 24:11 25:1
25:2 45:15 46:22
46:22
**transactions** 40:6
**transcribed** 3:25
**transcript** 50:4
**treated** 18:14 25:1
**treatment** 5:16
29:1
**trends** 12:18
**true** 50:4
**truncated** 41:15
**trust** 12:2 23:21
23:22,25 24:3
**trustee** 2:5,17
5:13,23 15:22,25
16:1 17:19 19:4
19:24 20:1 23:2
24:6,7 25:9,17
26:18 27:2,19
29:19,22 30:6,14
30:17,17,19,24
31:6,12,14,25
32:10,16 34:3,19
35:12,18 36:15,21
36:25 37:8 38:6
39:7,10,13,17,20
40:12,17 41:4,18
41:22,24 42:4
45:19 47:11 48:1
**trustee's** 30:23
38:3,8,13 40:20
**trusts** 16:1
**truth** 17:2
**try** 6:13
**turn** 29:15
**turned** 13:13
**two** 5:14 8:1 9:19
9:21 11:11,19
15:11,24,24 19:16
23:2 25:9,19

26:12 30:10,22
31:21 35:14 39:14
40:3,3 42:9 46:7
**type** 12:4
**types** 12:3
**typically** 9:3,11
19:1 43:18

**u**

**u** 23:22
**u.s.** 1:23 2:5 5:23
15:22 17:19 19:4
19:23 20:1 23:2
25:9 26:18 27:2
27:19 30:5,14,16
30:17,19,24 31:3
31:5,12,13,25
32:10,16 33:13,25
34:2 36:15,20,21
36:25 37:18 38:3
38:6,8,13 39:7,10
39:13,17,20 40:12
40:17,20 41:4,18
41:22,24 42:4
45:19 47:10 48:1
**u.s.c.** 6:19,23
17:12 29:22 32:19
35:7
**u.s.t.** 38:19
**ultimately** 25:25
26:10 28:4,20
**unanimous** 26:16
**unconfirmable**
16:18
**understand** 27:25
45:1
**understanding**
20:24
**undertaken** 44:20
**undisputed** 11:2
43:11
**unfairly** 16:21
21:5

**unfamiliar** 18:23
43:17 44:6
**unimpaired** 15:3
15:3 24:25
**united** 1:1,12 2:17
5:13 6:21 25:17
29:19,22
**unius** 32:6
**university** 19:25
**unlawfully** 21:5
**unpaid** 8:17,19
9:25
**unreasonable**
39:2
**unsecured** 6:7
14:15 15:7,18,25
16:9,22 18:12,15
18:17 22:11 23:2
23:9,21,23 24:1
24:20 25:2 26:2,3
26:23 27:4 29:20
31:16 34:20 35:14
42:22
**unsophisticated**
43:12
**unspecified** 14:10
**unsuccessful**
25:15
**upset** 41:2
**urquhart** 4:3
**use** 20:17

**v**

**validity** 11:18
**value** 9:1,8 13:15
22:16 42:22
**various** 17:22
19:4,13 29:4 42:9
42:24
**vehicle** 32:23
**verdict** 11:13
**verdicts** 12:8
**veritext** 50:20

**vetted** 25:7
**victims** 3:1 6:4
**victor** 2:13 4:9
19:18
**view** 33:4
**views** 39:17
**violated** 16:19
**violates** 21:14
**violations** 21:25
22:2
**virtually** 8:6
**voluntary** 7:1
**vote** 25:8,10 26:13
26:15
**voting** 16:16
**vs** 31:3 33:5 37:18
39:4
**vulnerable** 20:13
44:1

**w**

**w.d.n.c.** 34:17
**w.d.okla.** 34:4
**walter** 12:22
**walter's** 13:2
**watch** 23:13
**waterfall** 15:5
18:15
**wayne** 2:22 5:25
**week** 25:11
**weigh** 27:14
**went** 33:19
**wholesale** 7:15
**wit** 40:21
**withhold** 33:23
**wl** 34:10 38:17
**work** 16:8 21:18
44:19

**x**

**x** 1:4,10 49:1

**y**

**year** 8:16

**[years - york]**

**years**   9:14 12:16
21:19 43:23,24
**yield**   23:9
**york**   1:2,14 4:6
6:22 7:12