*Hearing Date*: **June 12, 2019**

## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| | : | |
| In re: | : | PROMESA |
| | : | Title III |
| THE FINANCIAL OVERSIGHT AND | : | |
| MANAGEMENT BOARD FOR PUERTO RICO | : | Case No. 17-cv-03283 |
| | : | Case No. 17-cv-03566 |
| As representative of | : | (Jointly Administered)[1] |
| | : | |
| THE COMMONWEALTH OF PUERTO RICO, | : | |
| | : | Hon. Laura Taylor Swain |
| | : | |
| Debtor, | : | |
| | : | |

## OBJECTION OF UNITED STATES TRUSTEE TO MOTION OF THE PUERTO RICO FUNDS TO VACATE THE APPOINTMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO TITLE III CASE (ECF NO. 6162)

Nancy J. Gargula, the United States Trustee for Region 21 ("the U.S. Trustee"), objects

to the Motion of the Puerto Rico Funds ("the Funds") to vacate the U.S. Trustee's appointment

of the Official Committee of Unsecured Creditors ("the Committee") to serve in the Title III

Case of The Employees Retirement System of the Government of the Commonwealth of Puerto

---

[1]     The Debtors in these Title III Cases, along with each Debtor's respective bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); and (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686).  Case Nos. 17 BK 3283-LTS and 17 BK 3284-LTS are jointly administered by order of the court.

Rico ("ERS") (ECF No. 6162), filed April 9, 2019 ("the Motion").  Because section 1102 of the United States Bankruptcy Code (the "Code"), which governs the formation, appointment, and modification of official committees in cases under Title III of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"), H.R. 5268 114th Cong. (2016),[2] does not authorize the relief that the Funds seek, the Court should deny the Motion.

### Introduction

The Funds seek an order preventing the Committee from serving in the ERS case—effectively disbanding the Committee for that case—because no Committee member is an ERS creditor.  Although the Court has certain enumerated statutory powers over committees appointed by the U.S. Trustee under section 1102(a)(1), disbanding the committee is not one of them.  And neither section 105(a) nor section 105(d)(2) can authorize inconsistent relief.  The Funds' rationale for their Motion—that a committee in jointly administered cases must have a creditor representative from each debtor—is effectively an argument that jointly administered, large cases can *never* have a single committee.  But that is unsupported by the law and would render committees in large cases unworkable.  Finally, the Funds allege that conflicts exist among the unsecured creditors of ERS and the other debtors.  Even if true, however, conflict among committee members is expected and helpful to consensual reorganizations; rarely does creditor conflict result in a breach of fiduciary duty or a dysfunctional committee such that the committee is not adequately representative and relief required.  The Funds have established neither breach of duty nor committee dysfunction.   The Motion should be denied.

---

[2] Codified at 48 U.S.C. §§ 2101-2241.

**Factual Background**

On May 3, 2017, the Federal Oversight and Management Board (the "Oversight Board") of Puerto Rico filed petitions to restructure the debts of the Commonwealth of Puerto Rico and several of its instrumentalities under Title III of PROMESA. Title III is modeled on chapter 9 of the Code and incorporates many of its provisions. 48 U.S.C. § 2161. ERS filed its petition on May 21, 2017, and other entities filed petitions at or about the same time.

Section 301(a) of PROMESA incorporates section 1102 of the Code governing official committees in chapter 11 cases, *id*., and requires the appointment of an unsecured creditors' committee if creditors are willing to serve. The U.S. Trustee first solicited creditors of the Commonwealth and "COFINA" for interest in committee service. The U.S. Trustee met with creditors on June 9, 2017, and on June 15, 2017, the U.S. Trustee appointed the Committee for the Commonwealth case [ECF No. 338].

Thereafter, the U.S. Trustee solicited the unsecured creditors of the additional Title III debtors—ERS, HTA, and PREPA—for interest in serving on a committee, but interest was quite low.[3] The U.S. Trustee amended the initial Committee appointment on August 25, 2017, to provide that the Committee would serve as the unsecured creditors' committee for the Commonwealth, ERS, HTA, and PREPA cases, but not for COFINA's case [ECF No. 1171].

---

[3] The information developed by the U.S. Trustee before, during, and after the initial committee interviews led the U.S. Trustee to conclude that COFINA's unusual debt structure had no unsecured debt to be represented by a committee and did not appoint a committee in the COFINA case.

**The Statutory Framework:**
**Section 1102 Applies in Title III PROMESA Cases, and Confers Important, but**
**Different, Authority on Courts and U.S. Trustees with Respect to Official Committees.**

Section 1102(a) of the Code governs the formation, appointment, and modification of official committees in Title III PROMESA cases. It provides under what circumstances a court and the U.S. Trustee may act and under what standards. Congress gave the U.S. Trustee and courts important, but divergent, authority with respect to committees in chapter 11, and nothing in PROMESA changes these established roles for Title III cases. The U.S. Trustee appoints all official committees and, as appropriate, monitors membership and occasionally modifies their composition. 11 U.S.C. § 1102(a)(1) and (2).

Section 1102 also confers important, but different, authority on courts with respect to official committees. A court's authority over committee formation and membership is limited, and a court may, if requested, order the following four types of relief:

- order the U.S. Trustee to appoint additional committees if necessary to assure adequate representation;

- order the U.S. Trustee to change committee membership if necessary to ensure adequate representation;

- order that a committee not be appointed in a small business case; or

- order the U.S. Trustee to increase committee membership to include a creditor that is a small business concern.

11 U.S.C. § 1102(a)(1)-(4). "Those are the only powers over committees the Code gives the court. There are no others." *In re Caesars Entertainment Operating Co.,* 526 B.R. 265, 268 (Bankr. N.D. Ill. 2015). Courts are nowhere empowered to disband committees appointed by the U.S. Trustee pursuant to 11 U.S.C. § 1102(a)(1). *Id.* at 268-270.

4

**Argument**

1. **The Court has no authority to disband an official committee appointed by the U.S. Trustee under 11 U.S.C. § 1102(a)(1)**

"Section 1102(a) does not authorize the court to disband [an official committee.]" *Caesars*, 526 B.R. at 269.  Because section 1102(a) grants a court specific powers over committees but not the power to disband, "the only fair reading of the statute is that there is no such power." *Id.* at 268.  *See also In re New Life Fellowship, Inc.*, 202 B.R. 994, 996 (Bankr. W.D. Okla. 1996) (finding "the specific language . . . of section 1102(a)(1) compel[s] the conclusion that the court . . . is without power to abolish the committee"); *In re Dewey & Leboeuf LLP*, No. 12–12321, 2012 WL 5985325, at *3 (Bankr. S.D.N.Y. Nov. 29, 2012) (stating in dictum, "section 1102 is silent whether a court has the power to disband an additional committee after that committee has been appointed."); 7 COLLIER ON BANKRUPTCY   ¶ 1102.07 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019) ("[Section 1102] does not specifically authorize the court to order that any additional committee appointed by the U.S. Trustee be disbanded.").

Nor can the Court grant the Funds the relief they seek under section 105(a) given the clarity and specificity of section 1102(a).[4]  "Section 105(a)  . . . is not a vehicle for reading into section 1102(a)(1) a power to do away with statutory committees when section 1102(a)(1) itself grants no such power—and especially when section 1102(a) grants other powers but not that one." *Caesars*, 526 B.R. at 269 (citing *New Life Fellowship*, 202 B.R. at 997).  The cases cited by the Funds for the proposition that a court may disband an official committee under section 105(a) were all decided before the United States Supreme Court decided *Law v. Siegel*, 571 U.S. 415, 134 S. Ct. 1188, 1194, 188 L.Ed.2d 146 (2014).  In *Law*, the Supreme Court reaffirmed the

---

[4] PROMESA also incorporates section 105 of the Code. 48 U.S.C. § 2161.

limit of section 105(a): "[I]n exercising those statutory and inherent powers, a bankruptcy court

may not contravene specific statutory provisions."  *Id.* at 1194 (reversing trustee's use of section

105 powers to surcharge exempt property when section 522 did not authorize it).

> The *Caesars* decision, which was issued after *Law v. Siegel,* is on point and instructive:
>
> Section 105(a) confers no such power.  That section gives bankruptcy courts the power
> only to implement existing Code provisions.  It is neither an "independent source of
> rights," nor a source of "substantive authority[.]"  Because it is neither, section 105(a)
> does not allow bankruptcy courts to contradict the Code, *Law v. Siegel*, —— U.S. ——,
> 134 S.Ct. 1188, 1194, 188 L.Ed.2d 146 (2014)—such as by exercising powers the Code
> does not confer[.]
>
> . . . The approach suggested in *City of Detroit*— that section 105(a) authorizes the
> exercise of that power because the Code does not "explicitly prohibit" it, is consequently
> incorrect.  Had Congress wanted to give bankruptcy courts the power to abolish
> committees appointed under section 1102(a) (1), it could have done so.  It chose not to.
> That choice must be respected.

*Caesars*, 526 B.R. at 269-70 (internal citations and quotations omitted).[5]

The Funds also assert that section 105(d)(2) of the Code provides a statutory basis for a

court to dissolve a committee appointed under section 1102(a)(1) because that section empowers

the court to "issue an order . . . prescribing such limitations and conditions as the court deems

appropriate to ensure that the case is handled expeditiously and economically."  Motion at

paragraph 24, page 9.  But the Funds fail to mention that section 105(d)(2) also prohibits a court

from entering an order "inconsistent with another provision of [title 11]. . . ."  11 U.S.C.

§ 105(d)(2).  It is difficult to imagine an order more inconsistent with another provision of title

11 than an order disbanding a committee appointed by the U.S. Trustee under section 1102(a)(1).

The Funds also cite *In re Pacific Ave., LLC*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012),

where the court concluded that a mandatory unsecured creditors' committee was no longer

---

[5] The *Caesars* court was referring to *In re City of Detroit*, 519 B.R. 673, 680 (Bankr. E.D. Mich.
2014).

helpful once a chapter 11 trustee was appointed and relied upon section 105(d)(2) to disband it.

Although the court purported to base its decision on section 105(d)(2), it did not address the

statute's requirement that a court's case-management order not conflict with other provisions of

the Code.  Instead, the court decided that because chapter 7 cases have trustees but no

committees, chapter 11 cases for which a trustee is appointed no longer need committees.

This analysis is fatally flawed.  First, the initial premise is wrong because chapter 7 cases

can have creditors' committees.  11 U.S.C. § 705.[6]  Second, reading chapter 11 cases with

trustees out of sections 1102 and 1103 of the Code makes no sense, given the frequent references

to "the trustee" in those sections (*see, e.g.*, section 1103(d), which requires the trustee to meet

with a newly-appointed section 1102 committee to "transact such business as may be necessary

and proper.)  The word "trustee" in chapter 11 generally includes the debtor in possession.  11

U.S.C. § 1107(a).  But if the *Pacific Ave.* court were correct that chapter 11 committees are not

necessary unless the debtor is in possession, the drafters of the Code would not have worded

sections 1102 and 1103 to include both trustees and debtors in possession.  Congress is capable

of expressing itself clearly when it intends to differentiate between trustees and debtors in

possession.  *See* 11 U.S.C. § 1107(a).  The *Pacific Ave.* case was wrongly decided and should not

be followed in any respect.[7]

---

[6] Such committees are rare, presumably because chapter 7 lacks a corollary to section 1103(a)
and thus their professionals are generally not entitled to compensation from the estate.

[7] *Pacific Ave.* was decided in the Western District of North Carolina, which is not a United States
Trustee Program district.  Accordingly, the U.S. Trustee did not and could not supervise the
administration of that case or litigate the committee issue.  Instead, the court, through the
Bankruptcy Administrator, appointed the committee under section 1102(a)(1) as well as the
chapter 11 trustee.  This is an important distinction when interpreting issues of administrative
and adjudicative authority between a U.S. Trustee and a court in the Bankruptcy Administrator
districts (in North Carolina and Alabama).

2.   **The lack of a Committee member holding a discrete unsecured claim against
ERS is not grounds for relief.**

The Funds' Motion—predicated on requiring that any joint committee contain at least
one unsecured creditor of each and every debtor—is unsupported by the law and, in large cases,
would result in completely unworkable committees.  If a committee must have a creditor of
every debtor, then committees in large multi-debtor cases would be inordinately large and
unwieldy—and likely ineffective.  The alternative—a committee for every debtor in jointly
administered cases (assuming creditors willing to serve)—would be similarly unworkable and
inefficient.

The U.S. Trustee, therefore, frequently appoints a single committee (of manageable size)
to represent the unsecured creditors of large families of related debtors whose cases are being
jointly administered, and the courts generally approve.  *See, e.g., In re Enron Corp.*, 279 B.R.
671, 692 (Bankr. S.D.N.Y. 2002) (stating that a mandate "to appoint a separate committee for
each debtor in a jointly administered case . . . would be both counter-productive and costly."),
*aff'd sub nom*, *Mirant Ams. Energy Mktg., L.P. v. The Official Comm. of Unsecured Creditors of
Enron Corp.*, 2003 WL 22327118 (S.D.N.Y. 2003).  "There is no indication that Congress . . .
intended to require a committee for each [jointly administered] case."  *In re McLean Indus., Inc.,*
70 B.R. 852, 862 (Bankr. S.D.N.Y. 1987) (declining to require a separate committee in each
separate but jointly administered case and declining to follow *In re White Motor Credit Corp.*, 18
B.R. 720 (Bankr. N.D. Ohio 1980), which ruled that multi-debtor cases require committees for
each debtor).[8]

---

[8] Although not many cases discuss *White Motor Credit*'s per se rule requiring separate
committees for each debtor, those that do have largely criticized it and refused to follow its
holding.  *E.g., In re Orfa Corp.,* 121 B.R. 294, 297-98 (Bankr. E.D. Pa. 1990); *McLean*, 70 B.R.
at 861-62.

The single committee works because "a committee represents all unsecured creditors whether or not a member of a particular group is included in its membership." *Id.* (citing *Shaw & Levine v. Gulf & Western Industries, Inc.* (*In re Bohack Corp.*), 607 F.2d 258, 262 n.4 (2d Cir. 1979)).  Again, as this Court recognized in the context of other Committee litigation, "[t]he Official Committee of Unsecured Creditors . . . has a vested interest in maximizing value for all unsecured creditors, no matter the particular nature of the unsecured claims to be asserted."  *In re Financial Oversight and Management Board for Puerto Rico*, No.  17-03283, *Mem. Op. and Order*, p. 3. (D.P.R. 08/11/17) [ECF No. 1013].  The U.S. Trustee, therefore, appointed a joint Committee that would fulfill its fiduciary duty to represent the common interests of, and maximize value for, all of the unsecured creditors of the Title III debtors.  And if an unsecured creditor of a particular debtor or constituency believes that the joint Committee does not adequately represent its interest, it may seek relief under section 1102(a)(2) (appointment of additional committee upon order of the court) or section1102(a)(4) (order from court to change committee membership to assure adequate representation).

3.    **The existence of intra-committee conflicts is not automatically sufficient grounds for modification of a committee.**

The Funds argue that the ERS unsecured creditor interests are diametrically contrary to the unsecured creditor interests represented by the Committee, principally the Commonwealth.  But it is not at all unusual for a committee to represent constituencies of varying and sometimes opposing interests.  It is also not unusual for intra-debtor disputes to be resolved through constructive discussions among committee members.  Indeed, a "committee is a catalyst for negotiation and compromise between the parties in the reorganization process."  *Enron*, 279 B.R. at 690.  Conflicts are "inherent in any committee," and "the mere presence of conflicts . . . is insufficient to show a lack of adequate representation."  *In re ShoreBank Corp.*, 467 B.R. 156,

161 (Bankr. N.D. Ill. 2012) (citing *In re Garden Ridge Corp.,* 2005 WL 523129, at *4 (Bankr. D. Del. March 2, 2005)).  Moreover, committee members have fiduciary duties to represent fairly all such interests:  "Courts recognize, as well, that committee members have fiduciary obligations to the other creditors, obligations that constrain what might otherwise be permissible, self-interested behavior."  *Id.* (citing *In re Nation-wide Sports Distribs.,* 227 B.R. 455, 463–64 (Bankr. E.D.Pa. 1998)).  As a result, a conflict among committee members results in a lack of adequate representation only when the member breaches or will imminently breach its fiduciary duty or when extreme conflict prevents the committee from functioning effectively.  *Id. at *4, *8.*

The Committee and the Oversight Board can address the specifics of the Funds' conflict claims.  But even if the current unified Committee is not ideal, the alternative is less so. Although no ERS unsecured creditors have been willing to serve on a committee, it is not clear that the ERS unsecured creditors would be better off with no representation by the Committee. The Funds, as secured creditors, have interests that are adverse to those of the ERS unsecured creditors[9] and, in fact, are defending against adversary proceedings that have been filed by the Committee within the past two weeks.[10]  The Funds are entitled to protect their rights through all

---

[9] The Funds are *secured* creditors that hold secured notes issued by ERS and seek to disband a committee that represents *unsecured* creditors.  As this Court recognized in earlier Committee-related litigation, "secured creditors will be classified separately under any plan of adjustment and will, as a result of plan classification, have interests adverse to those of the unsecured creditors."  *In re Financial Oversight and Management Board for Puerto Rico*, No. 17-03283, *Mem. Op. and Order*, p. 2 (D.P.R. 08/11/17) [ECF No. 1010].  Nevertheless, the Funds seek a remedy that is simply not available under PROMESA or the Code—the disbandment by the Court of the Committee—which renders it unnecessary to address standing.

[10] *See* Stipulation and Agreed Order by and Among Financial Oversight and Management Board, Its Special Claims Committee, and Official Committee of Unsecured Creditors related to Joint Prosecution of Causes of Action of Puerto Rico Highways and Transportation Authority and Employees Retirement System of the Government of the Commonwealth if Puerto Rico, dated May 16, 2019 [ECF No. 6990].

appropriate means.  But removing the sole voice for the ERS unsecured creditors is an

inappropriate means of defending these lawsuits when the law bars such relief.

### Conclusion

Based upon the foregoing, the U.S. Trustee requests that the Court enter its order denying

the Motion in its entirety and granting such further relief as may be just and proper.

**Dated:** San Juan, Puerto Rico
May 28, 2019

Respectfully submitted,

NANCY J. GARGULA
United States Trustee for Region 21

U.S. DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
Edificio Ochoa
500 Tanca Street, Suite 301
San Juan, Puerto Rico 00901-1922
Tel.: (787) 729-7444
Fax: (787) 729-7449

(Electronically Filed)

By:   s/ Monsita Lecaroz-Arribas
Monsita Lecaroz-Arribas
Assistant U.S. Trustee
USDC-PR No. 207707

11