**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | | |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| In re: | ) | |
| | ) | PROMESA |
| THE FINANCIAL OVERSIGHT AND | ) | Title III |
| MANAGEMENT BOARD FOR PUERTO RICO, | ) | |
| | ) | Case No. 3:17-bk-03283 (LTS) |
| as representative of | ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ X | ) | |
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND | ) | PROMESA |
| MANAGEMENT BOARD FOR PUERTO RICO | ) | Title III |
| | ) | |
| as representative of | ) | Case No. 3:17-cv-01685 (LTS) |
| | ) | Case No. 3:17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE | ) | |
| GOVERNMENT OF THE COMMONWEALTH OF | ) | |
| PUERTO RICO, | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| -------------------------------------------------------------------- x | | |

**REPLY IN SUPPORT OF MOTION OF CERTAIN SECURED**
**CREDITORS OF THE EMPLOYEES RETIREMENT SYSTEM OF**
**THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO**
**RICO TO COMPEL PRODUCTION OF DOCUMENTS FROM**
**FINANCIAL OVERSIGHT AND MANAGEMENT BOARD**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................ 1

ARGUMENT .................................................................................................... 1

I.     The Issues Raised In The Motion Are Not Academic ....................................... 1

II.    The Bondholders Have A Substantial Need For Withheld Documents........................... 2

III.   The Bondholders Are Entitled to Segregable Factual Information ................... 5

IV.   The Board's Attorney-Client Privilege Claims Are Largely Unsupported ...................... 7

     A.    Many Of The Withheld Documents Do Not Involve Legal Advice...................... 7

     B.    Documents Sent To Or From Non-Lawyer Third Parties Are Not Privileged ........................................................................................ 7

V.    The Board Has Not Met Its Burden As To Attorney Work Product ................................. 9

VI.   The Bondholders Preserve Their Remaining Arguments ................................. 10

CONCLUSION.................................................................................................. 10

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  306 F.R.D. 234 (N.D. Cal. 2015)..................................................................7

*Bhatia Gautier v. Gobernador*,
  199 D.P.R. 59 (P.R. 2017) ............................................................................2

*Cavallaro v. United States*,
  284 F.3d 236 (1st Cir. 2002) ........................................................................8

*Columbia Data Prods., Inc. v. Autonomy Corp.*,
  No. 11-12077-NMG, 2012 WL 6212898 (D. Mass. Dec. 12, 2012) ..............8, 9, 10

*CSX Transp., Inc. v. ABC&D Recycling, Inc.*,
  No. 11-30268-FDS, 2016 WL 6561551 (D. Mass. Nov. 3, 2016)...........................9

*Dahl v. Bain Capital Partners*,
  714 F. Supp. 2d 225 (D. Mass. 2010) ..........................................................8

*Davis v. City of New York*,
  No. 10 Civ. 699, 2012 WL 612794 (S.D.N.Y. Feb. 27, 2012) ................................3

*Hill v. State St. Corp.*,
  No. 09-12146-GAO, 2013 WL 6909524 (D. Mass. Dec. 30, 2013)........................8

*Lluberes v. Uncommon Prods., LLC*,
  663 F.3d 6 (1st Cir. 2011) ............................................................................8

*Texaco P.R., Inc. v. Dep't of Consumer Affairs*,
  60 F.3d 867 (1st Cir. 1995)...........................................................................5

*United States v. Ackert*,
  169 F.3d 136 (2d Cir. 1999)..........................................................................8

*United States v. Graves*,
  5 F.3d 1546 (5th Cir. 1993) .........................................................................10

*United States v. Textron, Inc.*,
  577 F.3d 21 (1st Cir. 2009) (en banc) ...........................................................9, 10

*W Holding Co. v. Chartis Ins. Co. of P.R.*,
  300 F.R.D. 48 (D.P.R. 2014) .......................................................................9, 10

*Wade v. Touchdown Realty Grp., LLC*,
  No. 17-10400-PBS, 2018 WL 575848 (D. Mass. Jan. 26, 2018) ..........................8

Other Authorities

Fed. R. Civ. P. 26 ..........................................................................................5

## INTRODUCTION

1.       The Oversight Board had a central role in the creation and adoption of the PayGo pension system and the decision to divert the flow of funds away from ERS in the effort to eliminate the Bondholders' collateral. There can be few things more relevant or material to the issues in this case. Yet the Board has resisted discovery at every turn. Besides refusing to compromise on any discovery issue, the Board has interposed overbroad and frivolous objections, defied court orders, and served a document production so woefully deficient as to be indefensible.

2.       The Board produced about 669 documents, of which fewer than 10 are non-repetitive and relevant. The rest of the production consisted largely of the same handful of documents produced again and again, including many copies of Puerto Rico statutes and public fiscal plans. More than one-third of the Board's production—3,937 pages in all—are a single Excel file that appears to be the projected revenues and expenses for the entire Puerto Rico government, nearly all of which has absolutely nothing to do with PayGo or the Bondholders' document requests. Yet the Board produced the entire Excel file as 3,937 separate TIFF images—a format that makes the data impossible to decipher or use, but that inflates the number of pages the Board can claim to have produced. Meanwhile, the Board and the other Respondents have resisted producing other fiscal information that would relate directly to the operations of the PayGo system.

3.       The present Motion addresses the Board's latest obstructive tactic—sweeping claims of privilege over hundreds of documents that shed light on the Board's role in the PayGo system, based on a privilege log that does not substantiate those claims. The Board's privilege claims should be overruled and the documents ordered produced.

## ARGUMENT

### I.       The Issues Raised In The Motion Are Not Academic.

4.       The thrust of the Board's Opposition is that the Bondholders' arguments are

academic and challenge some, but not all, of the Board's privilege claims. This is untrue. Crucially, the Bondholders challenge every invocation of the deliberative process privilege on the grounds of substantial need. Mot. ¶¶ 15–22; *infra* Part II. The Bondholders also challenge every invocation of the attorney-client privilege over documents that were sent by or to non-lawyer third parties, Mot. ¶¶ 26–28; *infra* Part IV.B., and every invocation of the attorney work product doctrine, Mot. ¶¶ 29–31; *infra* Part V. When those categorical objections are accounted for, there are just nine documents on the Board's Exhibit B for which the Bondholders do not challenge all claimed privileges.[1] The nine documents are cited in the Motion's discussion of attorney work-product, as examples of the flaws that infect *all* of the Board's work-product assertions. Mot. ¶ 30.

## II.   The Bondholders Have A Substantial Need For Withheld Documents.

5.     The Puerto Rico Supreme Court has made clear that, in assessing the Board's reliance on the deliberative process privilege, the Court must weigh the government's interest in confidentiality against the stronger interests favoring disclosure, such as "the interests of the private litigant," "the need for accurate judicial fact finding," and "the role of the government in the litigation." *Bhatia Gautier v. Gobernador*, 199 D.P.R. 59, 88 (P.R. 2017) (quoting 6 J. Moore et al., Moore's Federal Practice § 26.52[5], p. 26-412.11 (3d ed. 2016)).

6.     The Bondholders have a substantial need for the withheld documents. Those materials almost certainly will shed light on the analysis behind the Board's decision to adopt a version of PayGo that diverted the Pledged Property away from ERS. That diversion is relevant to the question whether employer contributions and PayGo fees are the same and, thus, whether the Bondholders' liens extend to the PayGo fees. Where, as here, the question is whether one set of assets is derivative of another set of assets, statements and analysis made by the body that ordained

---

[1] Documents 53, 138, 139, 302, 303, 311, 312, 314, and 315.

the transfer of the assets are relevant and material to the issue whether the one set of assets flowed from the other.[2] The Board has blocked inquiry into this crucial fact at every turn.

7.      The Board's inadequate document productions are only the most recent examples of this behavior. Its production consists largely of the same few, mostly blank documents produced repeatedly, or thousands of pages of accounting detail that no one ever asked for, that has nothing to do with ERS or PayGo, and that is in a format that renders it impossible to use. These documents provide no insight into how the PayGo system came to be, an omission all the more egregious because the Board and the other Respondents have themselves put the PayGo system at the center of the Stay Relief Motion. Having asserted its version of PayGo as a defense to the Bondholders' constitutionally protected right to adequate protection, the Board should not be allowed to withhold discovery showing why it adopted that approach. To the contrary, the deliberative process privilege "is routinely found to be inapplicable where the agency deliberations are central to the case." *Davis v. City of New York*, No. 10 Civ. 699, 2012 WL 612794, at *8 (S.D.N.Y. Feb. 27, 2012).

8.      The Board offers four inadequate responses. *First*, the Board relies on the Court's ruling that the Bondholders did not have a substantial need for different documents withheld by different entities. Opp. ¶ 19. But as the Bondholders explained in the Motion, the Board is differently situated with respect to the documents at issue because it is the Board alone that mandated the adoption of PayGo. Mot. ¶ 22.

9.      *Second*, the Board accuses the Bondholders of a "conspiracy theory" because the

---

[2] As the Bondholders have written before, and elsewhere, a simple example demonstrates why the Board's thinking is so relevant and material: Bob sends an e-mail to a friend saying that he intends to steal Alice's car. Some time passes, and Alice's car disappears. Soon, a car that looks very much like Alice's is seen in Bob's garage. Is Bob's e-mail saying that he planned to steal Alice's car probative of whether the car in Bob's garage is Alice's? The answer is an obvious "yes." Bob's e-mail is not simply probative of Bob's criminal intent to steal a car; more fundamentally, it is highly probative of the fact that the car in his garage is likely to be Alice's car. It is for this reason that the Board's repeated claims that this discovery is about "intent" is misleading.

Motion did not describe the contents of specific withheld documents. Opp. ¶ 20. This is puzzling. Obviously the Bondholders cannot know what the withheld documents say; after all, they have been withheld. Moreover, there is little other evidence to go by, since most of the documents the Board produced consist of blank sheets of paper or thousands of pages of irrelevant accounting entries. The Board's conclusory privilege log does not shed much light, either.[3] For the most part, it consists of the same cryptic descriptions repeated over and over. Accordingly, the Bondholders have followed the only course available to a litigant who has been stonewalled—they explained why they have a substantial need for the categories of documents requested and withheld, and asked that the party that obstructed discovery be held accountable for its conduct. Mot. ¶¶ 16–21.

10.      *Third*, the Board claims the Bondholders have made an inconsistent argument when they say it was the Board that required the adoption of PayGo, yet also have said that a Commonwealth advisor threatened to impose a pay-as-you-go system in April 2016. Opp. ¶ 21. There is no inconsistency. The April 2016 meeting shows that the Commonwealth was considering a pay-as-you-go system as a way of evading the Bondholders' liens even before the Oversight Board was created, but that does not change the fact that it was the Oversight Board that ultimately ordered the Commonwealth to adopt such a system. This is no surprise since, under PROMESA, the Board has overall control of the Commonwealth's finances and acts as its representative. In fact, within a few months of the April 2016 meeting, it was the *Board* that sent a letter to Puerto Rico's Governor stating that it had decided to impose a PayGo system. *See* Letter from the Oversight Board to Governor García Padilla (Nov. 23, 2016), attached hereto as Ex. A.

11.      *Fourth*, the Board contends that the evidence sought is not relevant and that other

---

[3] The Bondholders understand that the Oversight Board has provided the Court with a copy of their May 1, 2019 privilege log, which it declined to file publicly because it contains personal email addresses. *See* Docket No. 483 in Case No. 17-bk-03566.

sufficient evidence is available. Opp. ¶ 22. But that is simply not so. The evidence is directly relevant to Respondents' own arguments that the Bondholders lost their liens as a result of the transition to PayGo, and it is essential because the Bondholders have access to no other evidence addressing the reasons why that transition occurred. The Court should therefore order the Oversight Board to produce the documents withheld under the deliberative process privilege because the Bondholders have shown a substantial need for the materials.[4]

### III.   The Bondholders Are Entitled to Segregable Factual Information.

12.     There is no question that the deliberative process privilege does not shield factual material that can be segregated from deliberative material. *Texaco P.R., Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884–85 (1st Cir. 1995). As the Court explained in the May 6 Order, facts may be withheld only if they are "indissolubly linked to the broader analysis." May 6 Order at 4, Docket No. 493 in Case No. 17-bk-03566 (quoting *Stalcup v. CIA*, 768 F.3d 65, 70 (1st Cir. 2014)). Yet the Board withheld numerous documents with descriptions showing that they contain segregable factual information. Mot. ¶ 23. And neither the Board's privilege log nor the affidavit accompanying it explains why that factual information could not be segregated and produced.

13.     The Oversight Board points out that it did redact some documents and produce factual portions of them. Opp. ¶¶ 24–25. If anything, this demonstrates that segregating factual information from privileged information is both feasible and non-burdensome, and the Board's production of some factual information does nothing to show that numerous other withheld documents containing factual information could not likewise have been produced. As the Motion

---

[4] The same conclusion holds for documents withheld on work-product grounds. As explained below, *infra* Part V, the Board has not adequately invoked the work-product doctrine. But even if it had, the Bondholders' substantial need for these documents would overcome the work product doctrine's qualified protections. *See* Fed. R. Civ. P. 26(b)(3)(A) (allowing discovery of otherwise discoverable work product where a "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means").

explained, numerous documents were fully withheld despite descriptions revealing the presence

of substantial factual material. Mot. ¶ 23. Indeed, to accept the Board's position would be to credit

its tacit representation that, among the more than 1,200 completely blank pages the Board

produced, there is not one number, one sentence (or even one word), one statistic, or one graphic

that could not have been revealed without disclosing highly confidential and privileged

information. Obviously, that is not worthy of belief.

14.     With respect to the other Respondents' withholding of factual information under

the deliberative process privilege, the Court concluded that the bare assertion of privilege was

insufficient and ordered the production of "supplemental declarations" to "establish whether the

factual information withheld from the documents should be produced." May 6 Order at 5. The

Court had previewed such a possible ruling at the May 2 Hearing, explaining that it wanted to

"look at the affidavits again and see whether or not we require more detail" about efforts to

segregate factual material. May 2 Hr'g Tr. at 71:21–23. At that hearing, the Court also ordered

counsel for the Oversight Board, "having sat here all day, to take a look at your privilege log and

see if you think it needs any modifications based on the rulings today." *Id.* at 127:15–18.

15.     Yet counsel did not do so. The declaration the Board filed says even less about

efforts to segregate factual information than the other Respondents' declarations did. The

declaration the Board offered in support of its deliberative process privilege claims says nothing

at all about factual material, and it makes no effort to explain why additional factual information

could not have been produced. *See* Decl. of Natalie A. Jaresko (May 1, 2019), attached hereto as

Ex. B. Nor does the Board's privilege log say anything at all about this subject. At this late stage

of discovery, the Board's failure to provide a competent declaration or privilege log to support its

claims of privilege requires that those claims of privilege be overruled.

## IV.    The Board's Attorney-Client Privilege Claims Are Largely Unsupported.

### A.    Many Of The Withheld Documents Do Not Involve Legal Advice.

16.    The Board claimed attorney-client privilege over numerous documents, but its privilege log indicates that no legal advice was involved in many of these documents. Mot. ¶ 35. The problem is not merely, as the Board claims, that the authors of many documents are external non-lawyer advisors—although that is a problem too, *see infra* Part IV.B. Rather, the point is that the descriptions, in some cases together with the authors, show that the communication is not privileged, or at least is not privileged in full. (The Board reveals in the Opposition that these are email chains containing multiple messages, Opp. ¶ 28, something that is not apparent from the log.) The Board suggests that the mere appearance of the words "counsel" somewhere in the document description is sufficient to support a claim of privilege, but that is clearly not the law. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 240 (N.D. Cal. 2015) ("Even as to communications involving individuals who may be lawyers, '[t]he fact that a person is a lawyer does not make all communications with that person privileged.'" (quoting *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002))). Descriptions like "[e]mails between Oversight Board executive director, members, in-house counsel, outside legal counsel, and financial advisors regarding updated forecasts and analyses for Fiscal Year 2018," Doc. 21, do nothing to show that legal advice was involved with the communication. It is equally likely, if not more likely, that counsel were added to routine distribution lists by default. Other descriptions reveal that the documents contain multiple topics, not all of which involve legal advice, and thus do not support withholding in full. *See, e.g.*, Doc. 94 (". . . circulating documents soliciting legal advice *and to prepare for meeting* concerning certification of Commonwealth Fiscal Plan" (emphasis added)).

### B.    Documents Sent To Or From Non-Lawyer Third Parties Are Not Privileged.

17.    Nearly all of the documents the Board withheld under the attorney-client privilege

were sent by or to non-lawyer third parties, yet the Board's privilege log makes no effort to satisfy the strict requirements of the *Kovel* doctrine. Mot. ¶¶ 26–28; *see Cavallaro v. United States*, 284 F.3d 236, 240 (1st Cir. 2002); *Columbia Data Prods., Inc. v. Autonomy Corp.*, No. 11-12077-NMG, 2012 WL 6212898, at *14–15 (D. Mass. Dec. 12, 2012). The Board's response on this point fundamentally misrepresents the Bondholders' argument. Obviously, the point is not that *Columbia Data Products* "override[s]" the First Circuit's decision in *Cavallaro*, Opp. ¶ 29, but that the Board had not made the three-element showing that *Kovel* requires. These are that (1) "'the third-party communications [were] necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit'"; (2) the third party "play[ed] 'an interpretive role'" by "serv[ing] to translate information between the client and the attorney'"; and (3) the third party was involved "for the purpose of rendering legal advice, rather than business advice." *Columbia Data Prods.*, 2012 WL 6212898, at *15.[5] *Columbia Data Products*, decided a decade after *Cavallaro*, simply underscores the law, and there is a long line of precedent that agrees with *Columbia Data Products*' interpretation of *Cavallaro*.[6]

18.     The three-element test from *Columbia Data Products* is unquestionably the legal standard here, and the Board cannot possibly meet the test as to the 180 documents that were sent by or to a non-lawyer, third party advisor but that were withheld as attorney-client privileged. At the threshold, the Board has given no explanation of the non-lawyer third party's role in the

---

[5] Respondents also pointed out, accurately, that the First Circuit has never adopted the *Kovel* doctrine. Mot. ¶ 27. In *Cavallaro*, the First Circuit merely "[a]ssum[ed] arguendo that this circuit would adopt the *Kovel* rule," 284 F.3d at 240, and the court did the same in *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 n. 20 (1st Cir. 2011) ("We have never actually adopted *Kovel* . . . but have assumed for the sake of argument that we would do so in the right case. At the risk of being overly cautious, we follow that approach again today." (citation omitted)).

[6] *See, e.g., United States v. Ackert*, 169 F.3d 136, 139–140 (2d Cir. 1999) (*Kovel* exception inapt since third party was not a "translator or interpreter of client communications"); *Wade v. Touchdown Realty Grp., LLC*, No. 17-10400-PBS, 2018 WL 575848, at *3 (D. Mass. Jan. 26, 2018) (listing three elements); *Hill v. State St. Corp.*, No. 09-12146-GAO, 2013 WL 6909524, at *3 (D. Mass. Dec. 30, 2013) (same); *Dahl v. Bain Capital Partners*, 714 F. Supp. 2d 225, 227–28 (D. Mass. 2010) (same).

communication; it has thus failed to show "whether the third parties' involvement was for a business or legal purpose." *See* May 6 Order at 9. Nor has the Board shown that the other *Kovel* requirements are met: that the third party was "necessary, or at least highly useful," to the provision of legal advice, and that the third party "play[ed] an 'interpretative role.'" *Columbia Data Prods.*, 2012 WL 6212898, at *15. The Board complains that the Bondholders have not identified the specific documents to which this objection applies, Opp. ¶ 30, but the Bondholders did identify them—all 180 documents that the Board withheld on attorney-client grounds but that were sent by or to a non-lawyer third party. The Court should therefore order the Board to turn over all 180 of these documents. There is no need for the Court to "evaluate[] each description for itself," Opp. ¶ 30, since none even attempts to make the showing that the *Kovel* doctrine requires.

## V.    The Board Has Not Met Its Burden As To Attorney Work Product.

19.    The Board has not adequately invoked work-product protection as to the 199 documents withheld on that ground. Mot. ¶¶ 29–31. The Court previously advised the Board that the work-product doctrine "is really narrow in the First Circuit" and that other Respondents had been "using attorney work product way too broadly for this jurisdiction." May 2 Hr'g Tr. at 114:4, 119:1–2. Although the Board identified 199 documents as having been withheld on work-product grounds, it did not make any showing as to any document that the materials were "prepared for *use in* litigation," as First Circuit precedent requires, rather than that the materials concerned a subject that might give rise to litigation. *United States v. Textron, Inc.*, 577 F.3d 21, 29 (1st Cir. 2009) (en banc) (emphasis added). And the Board's effort to limit *Textron* to its facts, Opp'n ¶ 34, is inconsistent with how that decision is applied every day in the First Circuit. *See, e.g.*, *CSX Transp., Inc. v. ABC&D Recycling, Inc.*, No. 11-30268-FDS, 2016 WL 6561551, at *3 (D. Mass. Nov. 3, 2016) ("The [work product] doctrine only protects against disclosure of materials actually prepared for litigation or trial." (citing *Textron*, 577 F.3d at 29)); *W Holding Co. v. Chartis Ins.*

*Co. of P.R.*, 300 F.R.D. 48, 51 (D.P.R. 2014) (rejecting work product assertion because "aside from the fact that the subject matter of the document pertains to then-existing litigation, W Holding has not offered specific facts, evidence, or any other proof to show that the memorandum was prepared because of litigation"); *Columbia Data Prods.*, 2012 WL 6212898, at *12 (explaining that in *Textron*, the First Circuit "adopted a narrower test which asks whether the documents or materials at issue were 'prepared *for use* in possible litigation'" (quoting *Textron*, 577 F.3d at 27)).

20.     The problem with the Board's work-product assertions is not that "there was no litigation to justify the" doctrine, Opp. ¶ 36, but rather that the Board makes no showing that any of the 199 documents were created *for use in* that litigation. The privilege log and the Opposition are therefore addressed to the wrong standard: even if the Board "reasonably anticipated, and continues to anticipate, extensive litigation," Opp. ¶ 36, that is simply not the test under *Textron*.

**VI.     The Bondholders Preserve Their Remaining Arguments.**

21.     Finally, the Bondholders' Motion preserved arguments that the Board's withheld documents were post-decisional, Mot. ¶ 33, that the Board had waived privilege over documents shared with the Commonwealth, its advisors, and AAFAF, Mot. ¶ 34, and that the fraud exception to the attorney client-privilege applies, Mot. ¶ 35. Although the Board retorts that these arguments are foreclosed by this Court's prior rulings, Opp. ¶¶ 39–41, they have been raised to preserve them for appeal, which the Bondholders are entitled to do. Mot. ¶ 32; *cf. United States v. Graves*, 5 F.3d 1546, 1552 n. 7 (5th Cir. 1993) (recognizing that "the flip side" of waiver rules is that "a trial judge should not be surprised, perturbed or annoyed when counsel makes an objection or offer of proof on an issue that the judge believes was disposed of" by a prior ruling, as "counsel is, at the very least, preserving the issue for appeal").

**CONCLUSION**

For the reasons set forth above, this Court should grant the Bondholders' Motion to Compel.

In San Juan, Puerto Rico, today May 29, 2019.

By:

*/s/ Alfredo Fernández-Martínez*
Alfredo Fernández-Martínez
DELGADO & FERNÁNDEZ, LLC
PO Box 11750
Fernández Juncos Station
San Juan, Puerto Rico 00910-1750
Tel. (787) 274-1414
Fax: (787) 764-8241
afernandez@delgadofernandez.com
USDC-PR 210511

*/s/ Geoffrey S. Stewart*
Bruce Bennett (*pro hac vice*)
JONES DAY
555 South Flower Street
Fiftieth Floor
Los Angeles, California 90071
Tel. (213) 489-3939
Fax: (213) 243-2539
bbennett@jonesday.com

Benjamin Rosenblum (*pro hac vice*)
JONES DAY
250 Vesey Street
New York, New York 10281
Tel. (212) 326-3939
Fax: (212) 755-7306
brosenblum@jonesday.com

Geoffrey S. Stewart (*pro hac vice*)
Matthew E. Papez (*pro hac vice*)
Sparkle L. Sooknanan (*pro hac vice*)
JONES DAY
51 Louisiana Ave. N.W.
Washington, DC 20001
Tel. (202) 879-3939
Fax: (202) 626-1700
gstewart@jonesday.com
mpapez@jonesday.com
ssooknanan@jonesday.com

David R. Fox (*pro hac vice*)
JONES DAY
100 High Street, Floor 21
Boston, MA 02110
Tel. (617) 960-3939
Fax: (617) 449-6999
drfox@jonesday.com

*Counsel for ERS Bondholders Andalusian Global Designated Activity Company,  Glendon
Opportunities Fund, L.P., Mason Capital Master Fund, LP, Oaktree Opportunities Fund IX, L.P.,
Oaktree Opportunities Fund IX (Parallel 2), L.P., Ocher Rose, L.L.C., and SV Credit, L.P.*

/s/ Alicia I. Lavergne-Ramírez
  José C. Sánchez-Castro
  USDC-PR 213312
  jsanchez@sanpir.com

  Alicia I. Lavergne-Ramírez
  USDC-PR 215112
  alavergne@sanpir.com

  Maraliz Vázquez-Marrero
  USDC-PR 225504
  mvazquez@sanpir.com

SÁNCHEZ PIRILLO LLC
270 Muñoz Rivera Avenue, Suite 1110
San Juan, PR 00918
Tel. (787) 522-6776
Fax: (787) 522-6777

/s/ Cheryl T. Sloane
  John K. Cunningham (*pro hac vice*)
  Glenn M. Kurtz (*pro hac vice*)
  WHITE & CASE LLP
  1221 Avenue of the Americas
  New York, NY 10036
  Tel. (212) 819-8200
  Fax (212) 354-8113
  jcunningham@whitecase.com
  gkurtz@whitecase.com

  Jason N. Zakia (*pro hac vice*)
  Cheryl T. Sloane (*pro hac vice*)
  WHITE & CASE LLP
  200 S. Biscayne Blvd., Suite 4900
  Miami, FL 33131
  Tel. (305) 371-2700
  Fax (305) 358-5744
  jzakia@whitecase.com
  csloane@whitecase.com

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*