# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | ) ) ) ) | PROMESA<br>Title III |
| | ) | Case No. 17-bk-03283 (LTS) |
| as representative of | ) ) ) | |
| THE COMMONWEALTH OF PUERTO RICO, *et al*. | ) ) ) ) | |
| Debtor. | ) ) ) | |
| | X | |
| In re: | ) ) | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO | ) ) ) ) | PROMESA<br>Title III |
| | ) | Case No. 17-cv-01685 (LTS) |
| as representative of | ) ) | Case No. 17-bk-03566 (LTS) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | ) ) ) ) ) | |
| Debtor. | ) ) ) | |
| | X | |

**DECLARATION OF NATALIE A. JARESKO
IN SUPPORT OF THE FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO'S ASSERTIONS OF PRIVILEGE**

I, Natalie A. Jaresko, hereby declare and state as follows:

1.  I am the Executive Director of the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), a position I have held since March 2017. I submit this declaration in support of the Oversight Board's assertions of the deliberative process privilege with respect to certain documents withheld, in part, on those grounds and identified in the April 19, 2019 and May 1, 2019 privilege logs served in connection with the *Motion of Certain Secured Creditors of ERS for Relief from the Automatic Stay* (ECF No. 289 in Case No. 17-3566). I have reviewed the documents and am personally familiar with the facts set forth herein, based upon my role as Executive Director.

2.  As Executive Director of the Oversight Board, my responsibilities include, among other things, managing and leading the affairs of the Oversight Board (with the exception of the work of the Special Claims Committee) as its highest-level executive, and selecting and managing the Oversight Board's vendors and advisors, including the coordination of work related to the budgets and fiscal plans. I provide recurring progress updates internally to the Oversight Board members and serve as the liaison to external groups, such as the government of the Commonwealth of Puerto Rico and the U.S. government. I have been involved in every significant policy-making decision undertaken by the Oversight Board since my hiring, as well as the deliberations underlying them, with the exception of those of the Special Claims Committee and Special Investigation Committee.

3.  As Executive Director of the Oversight Board, I have communicated directly, personally, and regularly with other parties regarding the Oversight Board's roles and

responsibilities under PROMESA. I have directly and personally interacted with the Oversight Board's advisors and experts. I have been a sender or recipient of correspondence regarding the Oversight Board and its activities and have reviewed documents relevant to the Commonwealth's current and projected financial condition, its fiscal plan and its budget. I regularly attend meetings with, among others, members of the Oversight Board, its advisors, and its legal counsel, as well as members, representatives, and advisors of the Commonwealth, including the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"). In those capacities, I have been involved in coordinating the discussion, negotiation and certification of the Commonwealth's revised fiscal plans, including its iterations from March 2017 and April 2018.[1] I have also overseen the analysis and certification process for the Commonwealth's budget, and have coordinated the review, analysis and monitoring of reporting requirements and made recommendations to the Board of actions to be taken in connection with the Commonwealth's fiscal plans and budgets and those of the covered instrumentalities. Therefore, I am aware that, for each fiscal plan and budget, the Oversight Board deliberated crucial matters of fiscal policy, both internally, with its advisors, and with the Commonwealth government, prior to certification.

4. In establishing the bases for the Oversight Board's withholding of documents, this declaration explains:

    a. The Oversight Board's role in connection with the fiscal plans it has certified for the Commonwealth, including the role played by its members, staff (including me), financial advisors and experts; and

---

[1] Although I was not in office during the development process for the March 17, 2017 Commonwealth fiscal plan, I am generally familiar with the events leading up to its certification. My knowledge is based upon publicly available documents and my role as Executive Director.

2

b.	The Oversight Board's relationship and communications with the Commonwealth and its financial representative, the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and advisors to the Commonwealth and AAFAF, in connection with reviewing, developing, certifying and implementing fiscal plans and budgets.

5.	Congress created the Oversight Board pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") as a territorial entity empowered to oversee the restructuring of Puerto Rico's debt and to restore and revive the Commonwealth's economy and access to capital markets. 48 U.S.C. § 2121(a). The Oversight Board is authorized to oversee fiscal policy for the Commonwealth and its instrumentalities by certifying fiscal plans and budgets.

6.	It is vital to emphasize the importance of the deliberative process privilege to the work of the Oversight Board and its collaboration with the Commonwealth government and its instrumentalities. The fiscal plan and budget development processes involve review, analysis and exercise of judgments in developing the policies that a fiscal plan or a budget represents. In adopting those policies, the Oversight Board analyzed and debated various alternative assumptions, possibilities and judgments. To conduct that analysis and debate, the Oversight Board necessarily relied on its advisors to provide information and analysis regarding the Commonwealth's and its covered territorial instrumentalities' financial positions.

7.	The development and review process for the fiscal plans and budgets included the exchange of ideas, information and proposed reforms not only internally within the Board, but also with the Commonwealth and AAFAF. The Oversight Board (and the Commonwealth government) relied on the applicability of the privilege in conducting these discussions without the chilling effect on open deliberation that would result from subjecting these conversations to

3

public disclosure. In so doing, the Board and the Commonwealth were engaging in the standard governmental decision making processes that the privilege exists to protect. The Oversight Board thus invokes the deliberative process privilege with respect to its internal discussions, its discussions with its advisors, and its discussions with the Commonwealth, AAFAF, and their advisors, in reviewing, certifying, and monitoring the implementation of fiscal plans and budgets.

8. Indeed, in order to satisfy its congressional mandates in PROMESA, the Board must communicate with the Commonwealth government. Although PROMESA grants the Board ultimate authority over fiscal policy and the restructuring of Puerto Rico's debt, it must – and has – engaged in extensive communications, deliberations and exchange of information in developing fiscal policy for the Commonwealth. This does not mean the Board and the Commonwealth have always seen eye-to-eye; they have not. But that does not negate the interactive relationship between the parties, as legally required, leading to the establishment of the Commonwealth's fiscal policy. When the Oversight Board and the Commonwealth government have disagreed on aspects of the Commonwealth's fiscal plans and budgets, the methods for implementing those fiscal plans and budgets, or on other issues relating to the Commonwealth's financial stability, they have worked together to try to resolve those issues.

9. In fact, as determined by Judge Swain, under PROMESA, the Board is only able to certify its own fiscal plans and budgets after it has engaged in substantial discussions with the Commonwealth government and the Board concludes that continued negotiations would not be fruitful in leading to an acceptable fiscal plan or budget. *See Rivera-Schatz v. Financial Oversight and Management Board for Puerto Rico*, Adv. Proc. No. 18-ap-00081-LTS (Aug. 7, 2018) [ECF No. 46], at 14-15 ("[PROMESA] sets collaboration [between the Board and the

4

Commonwealth Government] on fiscal plan and budgetary matters as the norm. . . . Action by consensus is the surest and most efficient way to clarify and forge Puerto Rico's way forward."); *Rosselló Nevares v. Financial Oversight and Management Board for Puerto Rico*, Adv. Proc. No. 18-00080-LTS (Aug. 27, 2018) [ECF No. 40] at 33 (PROMESA requires Board to engage in "interactive process of soliciting proposals and revisions from the [Commonwealth] Government".). The application of the privilege to the fiscal plan and budget development process is particularly apt given that Congress has expressly excluded the certification of fiscal plans and budgets from judicial scrutiny. *See* PROMESA § 106(e). This interactive process underlies the Oversight Board's assertion of the deliberative process privilege with respect to its pre-decisional, deliberative communications with the Commonwealth government, including communications between and among the Board, its advisors, AAFAF and its advisors, and other Commonwealth entities and their advisors.

10. Although the final plans and other policy documents are publicly available, the Board and its advisors have understood that they have been free to explore issues related to their statutory mandate with the Commonwealth government and its advisors without the overhang of future disclosure or other legal proceedings challenging why certain decisions were made and not made. This is the core of the deliberative process privilege; it is designed to prevent the chilling effect of second-guessing the official decision making process. It is essential that this privilege remain in effect going forward.

11. The Oversight Board's oversight duties and authority over the fiscal plans and budgets do not end with certification. Indeed, a fiscal plan is a "living" document that requires ongoing assessment. In order for a certified fiscal plan to be implemented successfully, the Oversight Board continues to review certified plans, in conjunction with its review of proposed

5

Commonwealth budgets for the upcoming fiscal year, as well as on a regular basis to ensure that the measures contained in the plan are being successfully implemented. In so doing, the Oversight Board communicates with the Commonwealth government to identify and address next steps for implementation and assess the need for revisions to the fiscal plan.

    I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 the foregoing statements are true and correct.

May 1, 2019                       _____
                                   Natalie A. Jaresko