# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | PROMESA<br>Title III<br><br>No. 17 BK 3566-LTS |

**REPLY IN FURTHER SUPPORT OF RESPONDENTS' URGENT MOTION IN LIMINE TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING AN ALLEGED APRIL 27, 2016 MEETING WITH MOVANTS' REPRESENTATIVES**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283- LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID:  3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID:  9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID:  3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

    I.    MOVANTS FAIL TO EXPLAIN THE RELEVANCE OF THE APRIL 2016 MEETING. ................................................................................................. 3

    II.    THE COURT SHOULD ALSO BAR EVIDENCE AND ARGUMENT REGARDING THE APRIL 27, 2016 MEETING BECAUSE IT IS MORE PREJUDICIAL THAN PROBATIVE. .................................................................. 8

    III.    THE COURT SHOULD GRANT THIS MOTION NOW TO PRESERVE RESOURCES AND TO PROMOTE JUDICIAL ECONOMY. .......................... 10

CONCLUSION ............................................................................................................................. 11

## TABLE OF AUTHORITIES

                                                                                                                                       **Page**

**Cases**

*Buffalo Teachers Union v. Tobe*,
    464 F.3d 362 (2d Cir. 2006) .................................................................................................. 6

*Coll. of Dental Surgeons of Puerto Rico v. Triple S Mgmt., Inc.*,
    No. CIV. 09-1209 JAF, 2011 WL 414991 (D.P.R. Feb. 8, 2011) ............................................ 5

*Cooper v. Harris*,
    137 S. Ct. 1455 (2017)............................................................................................................ 4

*Culebras Enterprises Corp. v. Rivera-Rios*,
    846 F.2d 94 (1st Cir. 1988)................................................................................................ 9, 10

*Elicier v. Cautiño*, 70 D.P.R. 432 (P.R. July 29, 1949) ............................................................. 1, 5

*Grella v. Salem Five Cent Savings Bank*,
    42 F.3d 26 (1st Cir. 1994)..................................................................................................... 10

*Guzmán v. Calderón*,
    2005 TSPR 33, 164 D.P.R. 220 (2005) .................................................................................. 4

*In re Johnson*,
    756 F.2d 738 (9th Cir. 1985) ................................................................................................ 10

*Moreau v. James River-Otis, Inc.*,
    767 F.2d 6 (1st Cir. 1985)....................................................................................................... 6

*Ritch v. A M Gen. Corp.*,
    1997 WL 834214 (D.N.H. Nov. 17, 1997) ..................................................................... 10, 11

*Rodríguez Rodríguez v. Gobernador*,
    91 D.P.R. 101 (P.R. Oct. 23, 1964) ........................................................................................ 1

*Rojas v. Méndez & Co., Inc.*,
    115 D.P.R. 50, 15 P.R. Offic. Trans. 66 (P.R. Jan. 9, 1984) ............................................... 1, 5

*Smith & Nephew, Inc. v. Interlace Med., Inc.*,
    2012 WL 3560811 (D. Mass. Aug. 17, 2012) ................................................................ 10, 11

*United States v. Barone*,
    114 F.3d 1284 (1st Cir. 1997)................................................................................................ 7

*United States v. Commonwealth Energy Sys. & Subsidiary Companies*,
    235 F.3d 11 (1st Cir. 2000)..................................................................................................... 5

## TABLE OF AUTHORITIES

**Page**

*United States v. Ellis*,
   527 F.3d 203 (1st Cir. 2008) .................................................................................................. 6

**Statutes**

Article 14 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 14 .................................................. 1, 5

**Rules**

Fed. R. Evid. 104 ........................................................................................................................... 9

Fed. R. Evid. 801(d)(2) .................................................................................................................. 9

Fed. R. Evid. 801(d)(2)(D) ......................................................................................................... 7, 9

Fed. R. Evid. 802 ........................................................................................................................... 9

# PRELIMINARY STATEMENT[2]

1. Movants' Opposition fails to provide any legal authority that would justify, much less require, considering evidence of non-legislators' intent on a lift-stay motion such as this one. Movants' failure occurs at several levels:

- Movants never explain how the Puerto Rico legislature's intent in adopting Pay-Go pension reform is relevant to the issues in their lift-stay motion. Instead, their arguments center on the pension reform's *effects*, i.e., whether Pay-Go payments are "rights arising out of" or "identifiable proceeds" of employer contributions that ERS received under the former pension system. Opp. ¶ 11. These questions do not turn on what the Puerto Rico legislature intended, but what it actually did.

- Even if the intent behind Pay-Go pension reform were somehow relevant, Movants never explain how *non-legislators'* intent with respect to pension reform is relevant to understanding the intent and reasoning behind a joint resolution and a law—two purely *legislative* acts. More than two centuries of jurisprudence teach that those seeking to discern legislative intent must look to the four corners of the statute in question. Puerto Rico follows this bedrock rule of interpretation. *See Rojas v. Méndez & Co., Inc.*, 115 D.P.R. 50, 54, 15 P.R. Offic. Trans. 66 (P.R. Jan. 9, 1984) ("The clear text of the law is the expression par excellence of the legislative intent.") (quoting Rodríguez Rodríguez v. Gobernador, 91 D.P.R. 101, 107 (P.R. Oct. 23, 1964)); *Elicier v. Cautiño*, 70 D.P.R. 432, 437 (P.R. July 29, 1949) ("[S]tatutes should be interpreted on the basis of what the Legislature did, and not on what it did not do, nor on the personal action of one of its members."); *see also* Article 14 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 14 ("When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof."). Only if there is ambiguity does one look to legislative history. Movants cite no case, and Respondents are aware of none, in which a Court relied on a non-legislator's opinion to inform the interpretation of a legislative act.

- But even assuming non-legislators' intent were somehow relevant, Movants never explain how the intent of a financial advisor to a prior gubernatorial administration that was not re-elected could somehow shed light on the intention of a newly-elected legislature more than a year after the alleged April 2016 meeting. Labeling the statements this advisor made as "admissions" and characterizing all of Puerto Rico's elected Government as a "party" do not suffice to render evidence concerning the April 2016 meeting admissible for any purpose, much less for the purpose of discerning the intent of a legislature (not executive branch) after an intervening election.

2. Because they cannot demonstrate the relevance of evidence concerning the April 2016 meeting to their motion to lift the stay, Movants instead try to argue that their contentions

---

[2] Unless otherwise noted, abbreviations and names have the same meaning as in Respondents' Motion in Limine.

1

have nothing to do with legislative interpretation. This is nonsense. Their entire theory—namely, that Pay-Go fees (which are defined by a statute, Act 106) are "rights arising out of" or "identifiable proceeds" of employer contributions (which are defined in the Bond Resolution by reference to another statute, the ERS Enabling Act)—rests on interpreting and understanding the effect of Act 106. But no one, not Movants nor Respondents, has asserted any ambiguity in the legislation at issue. Rather, Movants contend it is illegal on its face. *See, e.g.*, ERS Bondholders' Amended and Supplemented Adversary Complaint, Adv. Proc. 17-219-LTS, Dkt. No. 34-1, Sixth Claim For Relief, ¶ 157 ("[T]he Post-Petition Legislation, *on its face*, constitutes an unconstitutional taking of their Pledged Property without just compensation in violation of the U.S. and P.R. Takings Clauses.") (emphasis added). Under these circumstances, *any* extrinsic evidence of legislative intent, including legislative history, should be excluded.

3.  Thus, evidence of the April 2016 meeting is irrelevant, and allowing discovery and introduction of such evidence at the hearing on Movants' lift-stay motion would be wasteful, and therefore prejudicial. Movants have, from the outset of discovery in this proceeding, had access to the legislation's text, as well as the legislative history leading to its enactment. Perhaps because these proofs contradict Movants' theory, they have sought to discover and offer evidence—at the expense of Puerto Rico's people and the disruption of their Government—that can have no bearing on any issue in this proceeding. The Court should end this frolic into the April 2016 meeting to preserve the parties' and the Court's resources for the issues that truly matter for the July 2, 2019 lift-stay hearing.

# ARGUMENT

## I. MOVANTS FAIL TO EXPLAIN THE RELEVANCE OF THE APRIL 2016 MEETING.

### A. The April 2016 Meeting Sheds No Light on Whether Pay-Go Fees Are "Rights Arising out of" or "Identifiable Proceeds" of Movants' Alleged Collateral.

4. Movants contend that evidence concerning the April 2016 meeting somehow explains that Pay-Go fees are "rights arising out of" or "identifiable proceeds" of their alleged collateral. Opp. ¶ 11. But statements by a former advisor of a prior gubernatorial administration are probative of no such thing.

5. Even if representatives of Millstein did, as Movants contend, say that the Commonwealth might convert to a Pay-Go pension system to reduce to zero the "employer contributions" that Movants allege are their collateral, that has no bearing on whether Pay-Go fees are "rights arising out of" or "identifiable proceeds" of employer contributions.

6. The answers to these questions lie in the legislation itself. Joint Resolution 188 and Act 106 eliminated employer contributions and converted ERS's trust-based pension system to a pay-as-you-go system. Whether the Commonwealth's right to Pay-Go fees arises out of the employer contributions that ERS previously received or are identifiable proceeds of employer contributions can be answered by examining two things—what Employer Contributions are (which is defined in the Bond Resolution governing Movants' bonds, and by reference to statutes governing the now-defunct pension system) and what Pay-Go fees are (which is defined in Act 106). What a former advisor to a prior administration said a year before the Legislature enacted pension reform has no bearing on these issues.

7. Movants' bizarre Bob-Alice-stolen-car analogy is inapposite. Movants' lift-stay motion does not present a question of a private actor surreptitiously converting property after

3

privately stating their intent to do so. These proceedings concern solely whether Movants' collateral is being diminished by virtue of PROMESA's automatic stay. And even if the transition to Pay-Go were somehow relevant to that question (something Movants never really explain), the issue of whether the Puerto Rico legislature, by enacting two legislative acts, somehow converted Movants' collateral involves open, legislative acts that were accomplished through public discussion, debate, and deliberation by elected officials. The only possibly relevant evidence would concern the meaning of the legislation, which is a question of legislative intent.

    **B.**  **The April 2016 Meeting with Advisors to a Former Gubernatorial Administration Is Irrelevant to the Subsequently Elected Legislature's Intent.**

  8.  Movants skirt the central question before the Court: should evidence from the April 27, 2016 meeting be considered for purposes of interpreting legislation that neither Movants, nor Respondents claim is ambiguous? Movants cite no authority that would justify using a meeting between Movants' counsel and a former government advisor as admissible evidence of the meaning or intent behind Joint Resolution 188 and Act 106. The meager authorities Movants invoke prove the Government Parties' point—only the Legislature's intent is relevant to interpreting the statutes. *See* Opposition at 11, citing *Guzmán v. Calderón*, 2005 TSPR 33, 164 D.P.R. 220, 256–58 (P.R. May 23, 2005) (When "construing a specific provision of a statute, courts should always bear in mind the true aims of the *Legislature* in enacting it, so that our interpretation may assure the efficacy of the intent behind it."); Opposition at 12, citing *Cooper v. Harris*, 137 S. Ct. 1455, 1474 (2017) (discussing need to understand the legislature's intent).

  9.  Movants' reliance on *Cooper* reveals their argument's weakness. *Cooper* involved a racial discrimination claim—a claim that rises and falls on the legislature's intent—where plaintiff had to prove that the legislature's redistricting plan was motivated by race. 137 S. Ct. 1455, 1463–64 (2017). Here by contrast, whether the automatic stay is causing a diminution in

4

collateral has nothing to do with illegal discriminatory bias or the Puerto Rico legislature's intent, let alone the intent of an advisor to a former governor from a meeting more than a year before a newly-elected Legislature enacted pension reform laws. And to the extent intent matters, the Court must look to the text of the legislation. *See, e.g.*, *Rojas*, 115 D.P.R. at 54 ("The clear text of the law is the expression par excellence of the legislative intent.") (citation omitted); *Elicier*, 70 D.P.R. at (P.R. 1949) ("[S]tatutes should be interpreted on the basis of what the Legislature did, and not on what it did not do, nor on the personal action of one of its members."); *see also* 31 L.P.R.A. § 14 ("When a law is clear and free from all ambiguity, the letter of the same shall not be disregarded, under the pretext of fulfilling the spirit thereof.").

10. If Movants take the position that the PayGo legislation is ambiguous (which they have not), at most the Court should consider legislative history. *See United States v. Commonwealth Energy Sys. & Subsidiary Companies*, 235 F.3d 11, 15 (1st Cir. 2000) ("In the absence of ambiguity, we generally do not look beyond the statutory language. However, when ambiguity exists, we may seek evidence of congressional intent in the legislative history.") (internal citation omitted)); *see also Coll. of Dental Surgeons of Puerto Rico v. Triple S Mgmt., Inc.*, No. CIV. 09-1209 JAF, 2011 WL 414991, at *3 (D.P.R. Feb. 8, 2011) (looking to legislative history after finding that "ambiguity remains after an examination of the language and context of the statute"). Notably, Movants do not claim the legislation is ambiguous and, indeed, have already filed suit challenging the legality of the legislation on its face. *See, e.g.*, ERS Bondholders' Amended and Supplemented Adversary Complaint, Adv. Proc. 17-219-LTS, Dkt. No. 34-1 at Sixth Claim For Relief, ¶ 157 ("[T]he Post-Petition Legislation, *on its face*, constitutes an unconstitutional taking of their Pledged Property without just compensation in violation of the U.S. and P.R. Takings Clauses") (emphasis added).

5

11. Even assuming the Movants could overcome this threshold issue, their remaining arguments are flawed. First, to determine whether Movants have a security interest in PayGo fees requires the legal interpretation of the Bond Resolution, a legal instrument, along with the interpretation of the relevant legislation. To the extent "intent" is relevant, only the intent of the legislators who drafted the operative legislation matters. Indeed, discerning the intent of the Legislature is not difficult because "the record of what and why the state has acted is laid out in committee hearings, public reports, and legislation, making what motivated the state not difficult to discern." *Buffalo Teachers Union v. Tobe*, 464 F.3d 362, 365 (2d Cir. 2006) (also cited in the Fiscal Plan Compliance Law, Act 26-2017 as authority for explaining a plaintiff's burden of proof in a Contracts Clause challenge to legislation). Here, the Legislature's intent is clear because they stated their motives in the legislation itself. *See* Joint Resolution 188, Statement of Legislative Intent (discussing prior failed reform efforts and the insolvency of the retirement systems); Act 106, Statement of Motives (providing nearly 20 pages of background and explanation of the reasons for the legislation and the creation of a pay-as-you-go system).

12. Second, under basic agency law principles, the opinion of an advisor to a former administration are not binding on a separate, newly-elected administration, let alone a subsequently-elected, separate legislative body. This is why the change in administration is relevant to excluding evidence of the April 2016 meeting. *See, e.g.*, *United States v. Ellis*, 527 F.3d 203, 207 (1st Cir. 2008) (explaining that "[w]hen a private party seeks performance of a promise allegedly made by the government, it must show that the government representative alleged to have entered into the agreement had actual authority to bind the United States," because "the government can be bound only by those with authorization to do so"); *see also Moreau v. James River-Otis, Inc.*, 767 F.2d 6, 10 (1st Cir. 1985) ("The agent's representations of authority to

6

a third person, standing alone, are insufficient to create apparent authority in the agent to act for the principal.").

13. Not even Movants dispute that James Millstein was replaced as an advisor to the current administration. Opp. ¶ 18. His opinions are not relevant to the positions of the current administration because he is not the current administration's agent. Movants have not even established whether Mr. Millstein's statements were authorized by the *prior* administration (although even then, they would be irrelevant). It is even more of a stretch to claim Mr. Millstein's opinions should be relevant to determine the intent of Puerto Rico's subsequently-elected Legislature in 2017, of which Mr. Milstein was never an agent.[3]

14. In the absence of an established agency relationship, Mr. Millstein's hearsay statements are not the statements of a party opponent. *See* Fed. R. Evid. 801(d)(2)(D) (describing opposing party admissions as including statements made by the party's *agent or employee* on a matter within the scope of that relationship and while it existed). Moreover, such statements cannot be established through declarations by Movants' trial counsel. The statements are quintessential hearsay since they are out-of-court statements being offered for the truth of the matter asserted. *United States v. Barone*, 114 F.3d 1284, 1292 (1st Cir. 1997) ("The rule against hearsay reflects concerns about the trustworthiness of out-of-court statements, arising from the fact that such statements are not subject to the tests normally applied to in-court testimony to ensure its reliability.").

---

[3] Movants incorrectly claim that the Government Parties withheld privileged communications with Millstein regarding pension reform legislation. Opp. ¶ 18, n.4. Ms. Abrams was mistakenly listed in the aggregate set of names for the April 10, 2019 categorical privilege log, which was then corrected in the subsequent log. No privileged communications with Millstein have been withheld.

7

## II. THE COURT SHOULD ALSO BAR EVIDENCE AND ARGUMENT REGARDING THE APRIL 27, 2016 MEETING BECAUSE IT IS MORE PREJUDICIAL THAN PROBATIVE.

15.   Movants argue that evidence of the April 2016 meeting is more probative than prejudicial because it is the "only direct evidence available to the Bondholders about Respondents' purposes in adopting the PayGo system." Opp. ¶ 21.   Movants' argument fails because, as discussed above, the intent of non-legislators is irrelevant to evaluating the purpose of the PayGo legislation and, even if it were relevant, Movants have not established the predicate for treating statements of an advisor at the April 2016 meeting as authorized admissions binding on a subsequent administration.  Movants' statement is also plainly wrong.  Direct evidence regarding the legislation's purpose does in fact exist, both in the legislation's plain, indisputably unambiguous language and the statements of legislative intent.[4]

16.   Movants maintain that no time will be wasted on the April 2016 meeting because they intend to present evidence from their trial counsel in the form of declarations, and there is no longer a need for depositions of Mr. Millstein and Ms. Abrams because they will submit declarations stating they do not recall what was said at the meeting.  Opp. ¶ 22.  But Movants ignore the additional discovery Respondents must take to rebut evidence of the meeting, including depositions of Movants' trial counsel and document discovery.  And if Mr. Millstein and Ms. Abrams were to submit declarations, Respondents would have a right to depose them, as well. Movants also fail to address the document discovery they are seeking from Millstein, which will

---

[4] Movants exaggerate when they claim that Respondents "withheld nearly all of their internal documents based on broad privilege claims." Opp. ¶ 21. Movants received ample discovery on an expedited schedule and only a small percentage of privileged documents were withheld. For example, out of a review of over 7000 documents, AAFAF, ERS and the Commonwealth withheld less than 600 documents on privilege grounds. Movants received more than 5,000 pages of financial information regarding ERS and the operation of the PayGo system. This is more than sufficient for Movants to test their theories. As Judge Dein explained, "a production with respect to the actual workings of both the pre- and post-PayGo systems, that that's what's needed for the lift stay motion, and I don't see where the intent comes in" and therefore "I don't feel that there's a substantial need for those documents." May 2, 2019 Hearing on Movants' Motion to Compel, Tr. 58:2-6.  Nothing more is necessary here.

8

further increase the expense associated with exploring this topic.

17. Nor do Movants explain how the admission of the April 2016 meeting could occur without additional proceedings and rulings by the Court to determine if there is proper foundation to introduce Movants' counsel's statements. At minimum, there would need to be consideration of evidence of whether Mr. Millstein was authorized to speak on the prior administration's behalf (which would require consideration of evidence regarding the scope of the agency relationship, which in turn requires taking discovery from the prior administration) and what knowledge, if any, the current administration had of Mr. Millstein's statements. Fed. R. Evid. 104 ("The court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."); *id.* 802; *id.* 801(d)(2).

18. The Court would also need to consider Respondents' hearsay and other objections. For example, Movants' arguments notwithstanding, Mr. Millstein's hearsay statements are not admissions of a party opponent. *See* Fed. R. Evid. 801(d)(2)(D). Mr. Millstein was neither an agent of Puerto Rico's Legislature (at any time) nor of the current gubernatorial administration. Depending on the Court's rulings, Respondents may then need to expand the scope of the July 2, 2019 hearing to accommodate additional witnesses to counter the April 2016 meeting.

19. Finally, if the April 27, 2016 meeting is not excluded, Respondents will be moving to exclude Messrs. Bennett and Cunningham from participating in the July 2, 2019 hearing under the well-worn lawyer-witness rule. *See Culebras Enterprises Corp. v. Rivera-Rios*, 846 F.2d 94, 97 (1st Cir. 1988) (Model Rule of Professional Conduct, Rule 3.7, which has been adopted in the U.S. District Court for the District of Puerto Rico, "prohibits an attorney-witness from acting as advocate at a trial"). This will be another contested matter that will consume the resources of the parties and the Court. Movants say the Rule is inapplicable because it does not bar testimony

9

relating to an uncontested issue and Respondents have yet to provide counter evidence. Opp. ¶ 24. But that is precisely why Respondents brought this motion—to avoid the unnecessary time and expense of developing evidence to counter and contest the irrelevant April 2016 meeting.

20. Movants argue that Rule 3.7 applies in the District of Puerto Rico only for jury trials, *id.*, but nothing in the Rule or its accompanying comments says so. Comment 2 (which Movants invoke) merely states that it is proper to object on grounds that the trier of fact may be confused by the testimony of a lawyer-witness. Comment 2 does not state that Rule 3.7 applies only when necessary to prevent confusion of a jury. The First Circuit has made clear that courts throughout the circuit have wide discretion to apply Rule 3.7. *See Culebras Enterprises*, 846 F.2d at 97 ("It is well settled in this circuit that the district court has the duty and responsibility to supervise the conduct of attorneys who appear before it.").

### III. THE COURT SHOULD GRANT THIS MOTION NOW TO PRESERVE RESOURCES AND TO PROMOTE JUDICIAL ECONOMY.

21. Finally, Movants argue that excluding evidence regarding the April 2016 meeting would be premature and ask the court to receive the evidence and rule on its admissibility at a later time. Opp. ¶ 25. Movants cite two cases in which courts have deferred ruling on admissibility of evidence until trial, *id.*, but neither case applies here.

22. First, both cases involved a full trial on a substantive cause of action. *See Ritch v. A M Gen. Corp.*, 1997 WL 834214, at *1 (D.N.H. Nov. 17, 1997) (wrongful death action); *Smith & Nephew, Inc. v. Interlace Med., Inc.*, 2012 WL 3560811, at *1 (D. Mass. Aug. 17, 2012) (patent trial). In contrast, the hearing on the stay relief motion is "meant to be a summary proceeding" that is "limited in scope to adequacy of protection, equity, and necessity to an effective reorganization." *Grella v. Salem Five Cent Savings Bank*, 42 F.3d 26, 33 (1st Cir. 1994); *see also In re Johnson*, 756 F.2d 738, 740 (9th Cir. 1985) (explaining that relief from stay hearing is limited

10

to valuation of collateral and adequacy of protection). Given the lack of relevance of the April 2016 meeting to determining whether the automatic stay is causing a diminution in Movants' alleged collateral, there is no need to waste any time developing and presenting this evidence for a limited and expedited hearing.

23. Second, the evidence at issue in *Ritch* and *Smith & Nephew, Inc.* was fully developed and the only question before the court was whether to *hear* the evidence at trial. *Ritch*, 1997 WL 834214 at *5; *Smith & Nephew, Inc.*, 2012 WL 3560811, at *1. Here, Respondents' motion is designed to *avoid* taking unnecessary and costly discovery and to limit the expense of preparing evidence on matters not essential for the lift-stay hearing.

## CONCLUSION

For the foregoing reasons, the Court should grant Respondents' motion and exclude all testimony and evidence regarding the alleged April 27, 2016 meeting. By granting this motion now, the Court can prevent a waste of Respondents' and the Court's limited resources. The Court should not defer on ruling especially when doing so will cause Respondents to incur unnecessary legal fees and risk turning the narrow lift-stay hearing into a mini-trial on irrelevant issues.

Dated: May 30, 2019
San Juan, Puerto Rico

| | |
|---|---|
| */s/ William J. Sushon* | */s/Luis C. Marini-Biaggi* |

John J. Rapisardi
Suzzanne Uhland
Peter Friedman
William J. Sushon
(Admitted *Pro Hac Vice*)
**O'MELVENY & MYERS LLP**
Seven Times Square
New York, New York 10036
(212) 326-2000
jrapisardi@omm.com
suhland@omm.com
pfriedman@omm.com
wsushon@omm.com

Elizabeth L. McKeen
(Admitted *Pro Hac Vice*)
610 Newport Center Drive, 17th Floor
Newport Beach, CA 92660
Tel: (787) 294-9508
Fax: (787) 294-9519
emckeen@omm.com

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority, on its own behalf and as
representative of the Commonwealth
of Puerto Rico and the Employees
Retirement System for the Government
of the Commonwealth of Puerto Rico*

Luis C. Marini-Biaggi
USDC No. 222301
lmarini@mpmlawpr.com

Carolina Velaz-Rivero
USDC No. 300913
cvelaz@mpmlawpr.com

**MARINI PIETRANTONI MUÑIZ LLC**
250 Ponce de León Ave., Suite 900
San Juan, Puerto Rico 00917
Tel: (787) 705-2171
Fax: (787) 936-7494

*Attorneys for the Puerto Rico Fiscal
Agency and Financial Advisory
Authority, on its own behalf and as
representative of the Commonwealth
of Puerto Rico and the Employees
Retirement System for the Government
of the Commonwealth of Puerto Rico*