UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF PUERTO RICO

---

| | | |
|---|---|---|
| In re: | : | PROMESA |
| | : | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : | Case No. 17-BK-3283 (LTS) |
| as representative of | : | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO et al., | : | |
| Debtors.[1] | : | |

---

| | | |
|---|---|---|
| In re: | : | PROMESA |
| | : | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | : | Case No. 17-BK-3566 (LTS) |
| as representative of | : | (Jointly Administered) |
| THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO, | : | |
| Debtors. | : | |

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## **ORDER ON MOTION TO COMPEL**

This matter is before the Court on the *Motion to Compel Production of Documents Withheld as Privileged Based on Respondents' May 9, 2019, Submissions* (Dkt. No. 510 in 17-BK-3566; Dkt. No. 6984 in 17-BK-3283) ("Motion to Compel"). Through the Motion to Compel, Bondholders[2] seek the production of certain documents from the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"), the Commonwealth of Puerto Rico ("Commonwealth"), and the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF") (together with ERS and the Commonwealth, "Respondents"). The Motion to Compel is the latest of several motions filed by the Bondholders against Respondents seeking discovery in connection with the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico for Relief from the Automatic Stay* (Dkt. No. 289)[3] ("ERS Stay Relief Motion"). The Motion to Compel follows two previous discovery orders by this Court. For the reasons detailed herein, the Motion to Compel is denied.

### I. Introduction

As relevant to the Motion to Compel, the Bondholders previously filed two discovery motions in connection with the ERS Stay Relief Motion. The first was the *Motion of Certain Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents in Privilege Log Categories 1, 5 to 7 [Deliberative Process Privilege and Executive Privilege]* (Docket No. 446) ("Deliberative Process

---

[2] As used in the Motion to Compel.

[3] Unless otherwise indicated, docket numbers refer to case 17-BK-3566.

2

Motion to Compel"). The second was the *Motion of Certain Secured Creditors of the Employees Retirement System of the Government of the Commonwealth of Puerto Rico to Compel Production of Documents in Privilege Log Categories 1 to 4 [Attorney-Client Privilege, Attorney Work Product, Common Interest]* (Dkt. No. 443) ("Attorney-Client Motion to Compel"). The Court held a hearing on the Deliberative Process Motion to Compel and the Attorney-Client Motion to Compel on May 2, 2019 ("May 2 Hearing").[4]

On May 6, 2019, this Court entered an order memorializing certain rulings made at the May 2 Hearing and requested additional information from Respondents with regard to specific arguments made in the Deliberative Process Motion to Compel and the Attorney-Client Motion to Compel. (Dkt. No. 493) ("May 6 Order"). Specifically, the Court requested declarations related to factual information being withheld pursuant to the deliberative process privilege, a document by document log for certain documents being withheld pursuant to the attorney-client privilege, a document by document log for all instances where Respondents were withholding documents solely based on the work product doctrine, and further submissions from AAFAF as to the application of the executive privilege. (See id.). On May 9, 2019, Respondents filed the requested supplemental information. (See Dkt. Nos. 500, 501, 502 and 503). On May 15, 2019, this Court, after review of the supplemental submissions, issued an order resolving the outstanding issues from the Deliberative Process Motion to Compel and the Attorney-Client Motion to Compel. (Dkt. No. 509) ("May 15 Order").

---

[4] At the May 2 Hearing, the Court also heard argument on the *Motion of Andalusian Global Designated Activity Company, Mason Capital Master Fund, LP, and The Puerto Rico Funds for a Protective Order* (Dkt. No. 440), which is not at issue in this Motion to Compel.

On May 16, 2019, Bondholders filed the instant Motion to Compel, through which they raise concerns addressed specifically to the May 9 filings, and challenge the rulings made in the May 15 Order. Respondents filed a response to the Motion to Compel on May 22, 2019 (Dkt. No. 526) ("Response") and the Bondholders filed a reply on May 24, 2019 (Dkt. No. 531) ("Reply). The Court has carefully considered the pleadings, and for the reasons addressed herein, the rulings made in the May 15 Order are affirmed and the Motion to Compel is denied.

## II. Discussion

### a. Executive privilege

In the Motion to Compel, Bondholders first take issue with AAFAF's supplemental submissions related to assertions of the executive privilege. This Court concluded at the May 2 Hearing that AAFAF qualifies for the privilege. (Dkt. No. 498 ("Hrg. Tr.") at 36:8-11, 76:9-17). Having made that ruling, this Court requested supplemental information from AAFAF as there was debate at the hearing over whether Elias Sanchez Sifonte, over whose communications with AAFAF the executive privilege was claimed, was working in his role as the Governor's representative to the Oversight Board at the time he was included on those communications. (See id. at 77:20-25). Accordingly, in the May 6 Order, this Court held that "in connection with the governmental decisions at issue, AAFAF can claim the executive privilege in connection with its role as an advisor to the Governor", but that "further submissions from AAFAF [were needed] on the application of the privilege to AAFAF's advisors, specifically as related to Elias Sanchez Sifonte's role." (May 6 Order at 4).

AAFAF submitted a declaration on May 9, 2019. (Dkt. No. 501) ("Pocha Declaration"). The Court then held in the May 15 Order that "after review of the Pocha Declaration and for

4

the reasons stated on the record at the May 2, 2019 hearing, [] AAFAF properly asserted the executive privilege." (May 15 Order at 2).

The Bondholders argue that "the May 9 Submissions say only that Elias Sanchez Sifonte served as the Governor's representative on the Oversight Board from January 2, 2017, to July 30, 2017" and that such "information does nothing to save Respondents' overbroad invocations of the executive privilege involving various members of AAFAF, a government agency rather than a personal counselor to the governor." (Motion to Compel ¶ 6). This Court does not agree.

The executive privilege protects "communications between the First Executive and his respective subordinates, counselors or assistants." Bhatia Gautier v. Gobernador, 199 D.P.R. 59, 89 (2017) (translation provided at Dkt. No. 446). AAFAF is mandated by statute to work with the Governor, and by extension the Governor's office, throughout the Commonwealth's restructuring. See, e.g., Enabling Act of the Fiscal Agency and Financial Advisory Authority, Act 2-2017 §§ 5(b), 8(h). The Court found at the May 2 Hearing, and affirms again here, that AAFAF, as an advisor to the Governor, is able to claim the executive privilege in connection with the governmental decisions at issue in the ERS Stay Relief Motion regarding pension reform.

AAFAF's May 9, 2019 submission, the Pocha Declaration, answered the Court's outstanding concern by informing that all withheld communications that included Mr. Sanchez Sifonte occurred during the time period in which he served as Governor Rossello's advisor. In reliance thereon, the Court held that AAFAF properly asserted the executive privilege. (May 15 Order at 2). The Court hereby affirms that ruling.

5

b. Attorney-Client Privilege

In the May 6 Order, the Court overruled several of the Bondholders' objections to Respondents' assertion of the attorney-client privilege. (May 6 Order at 7-8). However, the Court requested additional information related to Respondents' assertion of the privilege over communications including third-party professionals. Respondents had initially served Bondholders with a categorical privilege log asserting the attorney-client privilege. (Dkt. No. 443, Ex. B). In the May 6 Order, the Court ruled that "the description of documents in Category 3 of Respondents' privilege log [] raises the issue whether the third parties' involvement was for a business or legal purpose." (May 6 Order at 9).

The distinction between a legal and business purpose is relevant to the Court's adherence to the holding in Cavallaro v. United States, 284 F.3d 236, 247 (1st Cir. 2002), wherein the First Circuit held that in order to avoid waiver in the presence of a third party, "[t]he communication [] must be made for the purpose of obtaining legal advice from the lawyer." (internal quotation and citation omitted). In the May 6 Order, this Court ruled that "[t]his distinction applies to all of the documents withheld on the basis of the attorney-client privilege [and that] the Court expects that the distinction was applied when logging documents in Categories 1, 2, and 4." (May 6 Order at 9 n.5). Due to the descriptions of the withheld documents, this Court had reservations concerning Category 3 and thus ordered Respondents to submit a document by document log for that category. (Id.). Respondents did so on May 9, 2019. (Dkt. No. 501-1).

In the May 15 Order, the Court found that "based on the descriptions in the May 9 Log, [] the third parties present on the withheld documents served a legal purpose." (May 15 Order

6

at 7). Accordingly, the Court held that Respondents properly asserted the attorney-client privilege. Bondholders now argue in the instant Motion to Compel that the Court erred and that "[t]he document descriptions in [the] new log offer no explanation of the role played by the third parties in the communications. They therefore do nothing to show that the three required elements of the *Kovel* doctrine are met for these documents." (Motion to Compel ¶ 9). Bondholders also argue that the categorical descriptions given in categories 1, 2, and 4 of the original log are inadequate. (Id.). Bondholders' arguments are not persuasive.

In order for the presence of third parties to not constitute waiver, three elements must be present. First, "the third-party communications must be necessary, or at least highly useful, for the effective consultation between the client and the lawyer which the privilege is designed to permit." Columbia Data Prods., Inc. v. Autonomy Corp., 2012 WL 6212898 at *15 (D. Mass. Dec. 12, 2012) (internal quotations and citations omitted). As the Court found at the May 2 Hearing, multiple parties are needed for the effective resolution of Puerto Rico's restructuring. (Hr'g. Tr. 115:15-19). Respondents met their burden of showing that these third parties are necessary to legal discussions regarding Puerto Rico's restructuring. Next, "the third party's communication must serve to translate information between the client and the attorney." Columbia Data Prods., Inc., 2012 WL 6212898 at *15. Respondents have likewise met their burden to show that these third parties serve a critical role in translating complex information necessary to effectuate the restructuring. Finally, "the third party's communication must be made for the purpose of rendering legal advice, rather than business advice." Id. (internal quotations and citation omitted). The Court ordered the supplemental log to evaluate the final element of this test. (See May 6 Order at 9 ("the description of documents in Category 3 of

7

Respondents' privilege log [] raises the issue whether the third parties' involvement was for a business or legal purpose."); Hr'g. Tr. 118:19-20 ("I have questions about Category 3 documents not being simply business documents. . . ."): Hr'g. Tr. 115:13-15 ("So the question is in my mind whether the attorney on this chain is simply a recipient of a business document, or is it really for legal advice?")).

As found in the May 15 Order, Respondents have met their burden of showing that the attorney-client privilege was properly asserted over documents in Categories 1 through 4 of their original categorical log because the relevant communications served a legal purpose. The original categories of documents are as follows:

1. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with anticipated and ongoing litigation with ERS bondholders.

2. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with pension reform proposals, including conversion to PayGo, the PayGo fee structure, legal theories regarding potential litigation, and treatment of benefits.

3. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice in connection with PayGo implementation, including treatment, calculation, invoicing, and collection of PayGo fees.

4. Confidential communications with in-house counsel and/or outside counsel providing, requesting, and/or discussing legal advice concerning draft pension reform legislation including circulating and commenting on interim drafts and analyses of Joint Resolution 188 and Act 106.

(Dkt. No. 443, Ex. B).

Respondents have met their burden to show the communications in Category 1 serve a legal purpose as they concern ongoing litigation. Respondents have similarly met their burden to show the communications in Category 2 serve a legal purpose as they relate to the legality of

8

certain reform proposals and that the communications in Category 4 serve a legal purpose as they concern the legality of proposed legislation.

The communications in Category 3 relate to the "PayGo Implementation", and thus it was not clear from the description of that category whether the communications were for a legal or business purpose. However, by providing the document by document log of Category 3, Respondents have confirmed that the communications served a legal purpose. By way of example, entry number 5 of the document by document log provides "Confidential communication with in-house counsel to AAFAF and outside counsel (Dentons, O'Melveney, and Proskauer) providing and reflecting legal advice regarding memorandum on Pension Issues and Action Plan." (Dkt. No. 501-1 at 2). Thus, Respondents have adequately shown that the purpose of the communications is legal and the inclusion of necessary third party advisors does not waive the attorney-client privilege.

    c. <u>Deliberative process privilege</u>

In the May 6 Order, the Court overruled several of the Bondholders' objections to the Respondents' assertion of the deliberative process privilege. (May 6 Order at 2-6). The Court reserved decision, however, on the application of the privilege to factual information. The Court ruled that "additional submissions [were] needed for the Court to establish whether the factual information withheld from the documents should be produced." (<u>Id.</u> at 5). Respondents submitted supplemental information on May 9, 2019. (Dkt Nos. 502, 503) ("Mahmud Declaration" and "Pabon Declaration" respectively). In reliance thereon, the Court held that factual information was properly withheld under the deliberative process privilege. (May 15 Order at 4). Bondholders now argue that "the May 9 Submissions fail to justify the

withholding of factual information." (Motion to Compel ¶ 7). Having considered the Bondholders' objection, the Court upholds its ruling that the privilege was properly asserted over factual information.[5]

In the May 15 Order, the Court held that "where disclosing the factual information will disclose the deliberative information protected by privilege, that factual information is properly withheld as well." (May 15 Order at 4). In Stalcup v. CIA, 768 F.3d 65, 70 (1st Cir. 2014), the First Circuit held that "[t]he question is not merely whether the documents contain factual information – or even whether the document is predominantly comprised of findings of fact – but rather the degree to which the facts are indissolubly linked to the broader analysis." The First Circuit held that the privilege is properly applied where "[a]lthough factual findings are indeed included in the documents, they are tethered to broader policy considerations." Id. at 71 (citing Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 983 (9th Cir. 2009)).

Bondholders argue that "while Respondents flatly state that disclosing the factual information would, *e.g.*, 'reveal pension reform proposals and assumptions that were under consideration,' [(Mahmud Declaration)], they do not explain how that is so or what it is about the factual information that would enable the Bondholders to reverse engineer the proposals from the projection. They have therefore failed to show that the factual information cannot be segregated." (Motion to Compel ¶ 7). This is not so. Respondents provide sufficient detail concerning the withheld documents to carry their burden and show that factual information is

---

[5] The Court excluded certain documents from its rulings as discussed at Dkt. No. 509 at 4. Nothing herein shall be construed as a ruling on the application of the deliberative process to factual information in those documents.

10

intertwined with the privileged deliberations. By way of example, the Bondholders attack the explanation given at ¶ 4(f) of the Mahmud Declaration. (See id.). One of the documents referenced in ¶ 4(f) is document 29 to the Amended April 14 Log (Dkt. No. 459-2). That document is described on the privilege log as "Draft spreadsheet of Commonwealth Fiscal Plan projecting general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026." (Amended April 14 Log at 10-11). Through the Mahmud Declaration, AAFAF provides that document 29 consists of:

> Draft spreadsheet analyses of the March 13, 2017 Commonwealth Fiscal Plan providing alternative projections of general fund revenues and expenses, including both pre-measures and post-measures financial gap between revenues and expenses from 2017 to 2026. The projections, which include PayGo, were used by decision makers to determine appropriate revenue and expenditure levels for government entities under the Fiscal Plan. Disclosing these spreadsheets would reveal pension reform proposals and assumptions that were under consideration, thereby revealing the decision makers' thought process.

(Mahmud Declaration ¶ 4(f)). The relevant decision to this document is the enactment of pension reform legislation. (See Amended April 14 Log at 10). To the extent that financial information is being used, AAFAF has made clear that those numbers, both pre- and post-measures, are part and parcel of the policy alternatives being discussed. AAFAF has met its burden to show that facts in these spreadsheets were thus tied to the deliberative communications between officials. The Court does not find that Respondents have provided only vague explanations for their withholding. The Court overrules the Bondholders' objection and finds that Respondents have met their burden of showing the deliberative process privilege was properly invoked over factual information.

d. <u>Attorney work product</u>

Finally, Bondholders contest this Court's refusal to make a definitive ruling on Respondents' assertion of the attorney work product doctrine. Respondents informed the Court on May 9 that no documents were withheld solely based on an assertion of work product. (Pocha Declaration ¶ 4). Thus, the Court held that "the Court need not rule on whether the Government Parties appropriately invoked the work product doctrine." (May 15 Order at 6). Where the Court has upheld the Respondents' assertions of privilege on other grounds, it need not reach an independent ruling on the work product doctrine. See <u>Sprague v. Thorn Ams., Inc.</u>, 129 F.3d 1355, 1372 (10th Cir. 1997) ("we are convinced that under federal and Kansas law the critical memorandum and information sought by the motion to compel are protected by the attorney-client privilege. Since this privilege applies, it is unnecessary for us to consider the work product privilege."). Thus, the Bondholders' objection to this Court's work product holding is overruled.

### III. <u>Conclusion</u>

For the reasons stated herein, the Motion to Compel is denied. This Court's May 6 and May 15 Orders remain unchanged.

This order resolves Dkt. No. 510 in 17-BK-3566 and Dkt No. 6984 in 17-BK-3283.

SO ORDERED.

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

DATED: May 30, 2019

12