Hearing Date: June 14, 2019 at 9:30 a m. (ADT)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

--------------------------------------------------------------------- X
   :
In re:   :
   :
THE FINANCIAL OVERSIGHT AND   :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :    Title III
   :
     as representative of   :    Case No. 17-BK-3283 (LTS)
   :
THE COMMONWEALTH OF PUERTO RICO *et al.,*   :    (Jointly Administered)
   :
     Debtors.[1]   :
--------------------------------------------------------------------- X
   :
In re:   :
   :
THE FINANCIAL OVERSIGHT AND   :    PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,   :    Title III
   :
     as representative of   :    Case No. 17-BK-4780 (LTS)
   :
PUERTO RICO ELECTRIC POWER AUTHORITY   :    **This filing relates only to**
   :    **Case No. 17-BK-4780 (LTS)**
   :
     Debtor.   :
--------------------------------------------------------------------- X

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
## OMNIBUS MOTION TO COMPEL PRODUCTION OF DOCUMENTS
## IN CONNECTION WITH PREPA RSA RULE 9019 SETTLEMENT MOTION

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and  (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 6

ARGUMENT ........................................................................................................ 7

I.      NONPRODUCING PARTIES' DELIBERATIVE PROCESS PRIVILEGE
        CLAIMS ARE WITHOUT BASIS ............................................................ 8

II.     NONPRODUCING PARTIES' COMMON INTEREST PRIVILEGE CLAIMS
        ARE WITHOUT BASIS........................................................................... 10

        A.    Common Interest Privilege Does Not Apply Until On Or Near The
              Execution Date Of The Definitive RSA ......................................... 10

        ▮     ████████████████████████████████████████
              ████████████████████████████████████████████

III.    THE NONPRODUCING PARTIES' REFUSALS TO PRODUCE CERTAIN
        TYPES OR CATEGORIES OF DOCUMENTS ARE UNJUSTIFIED......................... 15

        A.    Nonproducing Parties' Refusal To Search Files Of Key Custodians ................. 16

        B.    Nonproducing Parties' Refusal To Search Documents Other Than Emails ........ 19

        C.    Certain Nonproducing Parties' Refusal to Produce Key Categories of
              Documents, or Offers Only Of Improperly Limited Productions........................ 20

        D.    Certain Nonproducing Parties' Refusal To Permit Use Of Documents
              Produced In Connection With Renewed Receiver Motion.................................. 26

        CONCLUSION.................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asymmetrx Med., Inc. v. McKeon*,
No. CIV.A. 11-11079-NMG, 2013 WL 2181084 (D. Mass. May 16, 2013) .........................13

*Bank of China v. St. Paul Mercury Ins. Co.*,
No. 03 Civ. 9797(RWS), 2004 WL 2624673 (S.D.N.Y. Nov. 18, 2004)...............................25

*Bear Republic Brewing Co. v. Cent. City Brewing Co.*,
275 F.R.D. 43 (D. Mass. 2011)........................................................................................ 14-15

*Bhatia Gautier v. Gobernador*,
199 D.P.R. 59, 80 (P.R. 2017) ..............................................................................................9

*Caparrós v. Lynch*,
No. 3:15-cv-2229-JL, 2017 U.S. Dist. LEXIS 109041 (D.P.R. June 15, 2017).....................9

*Cavallaro v. United States*,
284 F.3d 236 (1st Cir. 2002)................................................................................................10

*Columbia Data Prods., Inc. v. Autonomy Corp. Ltd.*,
No. CIV.A. 11-12077-NMG, 2012 WL 6212898 (D. Mass. Dec. 12, 2012) .........................15

*Crane Sec. Techs., Inc. v. Rolling Optics, AB*,
230 F. Supp. 3d 10 (D. Mass. 2017) ....................................................................................11

*Fairholme Funds, Inc. v. United States*,
128 Fed. Cl. 410 (2016), *mandamus granted in part and denied in part*, *In re
United States*, 678 F. App'x 981 (Fed. Cir. 2017)..................................................................9

*In re JP Morgan Chase & Co. Sec. Litig.*,
No. 06 C 4674, 2007 WL 2363311 (N.D. Ill. Aug. 13, 2007)...............................................13

*Ken's Foods, Inc. v. Ken's Steak House, Inc.*,
213 F.R.D. 89 (D. Mass. 2002)............................................................................................10

*In re Lyondell Chemical Company*,
No. 09-10023, Dkt. No. 3592 (Bankr. S.D.N.Y Jan. 14, 2011) ............................................13

*In re P & P "Quick Sett" Servs.*,
No. 10-14705, 2011 Bankr. LEXIS 1732 (Bankr. D.R.I. Apr. 19, 2011)................................6

*In re Pharm. Indus. Average Wholesale Price Litig.*,
254 F.R.D. 35 (D. Mass. 2008)..............................................................................................9

*In re Raytheon Sec. Litig.*,
218 F.R.D. 354 (D. Mass. 2003)...............................................................................25

*In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*,
145 F.3d 1422, *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998) ............................8

*Lluberes v. Uncommon Prods., LLC*,
663 F.3d 6 (1st Cir. 2011)........................................................................................25

*Saint-Jean v. Emigrant Mortg. Co.*,
11-CV-2122 (SJ), 2016 WL 11430775 (E.D.N.Y. May 24, 2016) ........................25

*Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*,
60 F.3d 867 (1st Cir. 1995).....................................................................................10

*Velazquez v. City of Chicopee*,
226 F.R.D. 31 (D. Mass. 2004)..................................................................................8

*Williams v. City of Boston*,
213 F.R.D. 99 (D. Mass. 2003) ..............................................................................8-9

**Other Authorities**

Fed. R. Evid. 502(a).......................................................................................................14

To The Honorable Magistrate Judge Judith Gail Dein:

The Official Committee of Unsecured Creditors of all Title III Debtors (the

"Committee") hereby submits the following motion (the "Motion") to compel production of

documents from (i) the Financial Oversight and Management Board for Puerto Rico ("FOMB"),

(ii) the Puerto Rico Electric Power Authority ("PREPA"), (iii) the Puerto Rico Fiscal Agency

and Financial Advisory Authority ("AAFAF", and together with FOMB and PREPA, "Movants"

or "Government Parties"), (iv) Filsinger Energy Partners ("Filsinger"), (v) Ankura Consulting

Group ("Ankura"), (vi) Citigroup Global Markets, Inc. ("Citi"), (vii) the members of the Ad Hoc

Group of PREPA Bondholders (the "Ad Hoc Group") identified on Annex A to the RSA[1] (as

such members may change from time to time), and (viii) Assured Guaranty Corp. and Assured

Guaranty Municipal Corp. (collectively "Assured," and with the Government Parties, Filsinger,

Ankura, Citi, and the Ad Hoc Group, the "Nonproducing Parties") in relation to the *Joint Motion*

*of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362,*

*502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements*

*Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods*

(Case No. 17-BK-4780-LTS, Dkt. No. 1235) (the "9019 Motion").

## **INTRODUCTION**

1.     The 9019 Motion seeks authority to restructure approximately $8.5 billion in non-

recourse bonds (the "Non-Recourse Bonds") issued by PREPA pursuant to a settlement that, if

approved, would eventually lead to the transfer of more than $20 billion in total consideration

over a period of 47 years to the PREPA bondholders and all but dictate the material terms of any

future plan of adjustment in this Title III case.  Movants have represented to the Court in the

---

[1]        Capitalized terms used but not defined herein have the meanings assigned to them in the 9019 Motion.

9019 Motion that the proposed settlement will leave the rights of all other PREPA creditors unprejudiced and unaffected, but based on what the Committee knows at this time, this is practically not true.  Rather, the RSA appears to commit all of PREPA's available economic capacity to satisfying bondholder claims (even if Movants were to exercise their rights to enter into an alternative transaction), thus ensuring that **no** other stakeholders of PREPA could receive a recovery.  In this way, the RSA appears to render impossible any alternative plan of adjustment and foreclose other resolutions to the myriad problems confronting PREPA.

2.     In light of the magnitude of the proposed settlement and the practical finality of the relief the 9019 Motion seeks, a full, in-depth evaluation of the facts and circumstances surrounding the settlement is critical.  The settlement also requires heightened scrutiny because it is far from clear that bondholders are entitled to **any** recovery from PREPA, much less the nearly full recovery they stand to receive.  Indeed, as the Committee has argued previously[2] and will again demonstrate in its objection to the 9019 Motion, the Non-Recourse Bonds (i) are non-recourse; (ii) are not secured by collateral over which the bondholders have a perfected security interest; and (iii) even if properly perfected, are secured by a very limited pool of funds since the security interest under the Trust Agreement extends only to certain funds and accounts, which contained, as of the petition date, no more than $33 million.  Movants themselves have taken this same position, arguing to this Court and to the First Circuit that the bondholders' alleged security interest "has no value."[3]  The 9019 Motion, on its face, offers no credible justification for

---

[2]       *Objection Of Official Committee Of Unsecured Creditors To Motion Of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., And Syncora Guarantee Inc. For Relief From Automatic Stay To Allow Movants To Seek Appointment Of Receiver* [Dkt. No. 1151].

[3]       *See, e.g., Opposition Of Financial Oversight And Management Board For Puerto Rico To Motion Of Ad Hoc Group Of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., And Syncora Guarantee Inc. For Relief From Automatic Stay* [Dkt. No. 149] at 18.

providing a windfall to these bondholders, which, because of the non-recourse nature of their

bonds and the lack of collateral securing the bonds, have lesser rights than unsecured creditors.

3.      Against this backdrop, the Committee has sought discovery from a variety of

parties and non-parties to this dispute to help it fully understand and evaluate all aspects of the

proposed settlement.  Through this discovery, the Committee seeks to determine, among other

things, (i) the true costs and benefits of the settlement to PREPA, including whether the Puerto

Rico electricity market is able to bear the rate surcharges imposed by the settlement (or other

surcharges that would be needed to satisfy other PREPA legacy debt), (ii) whether the settlement

will, as Movants contend, help facilitate the proposed privatization of PREPA, (iii) the timing of

the privatization transaction and risks that the conditions to privatization will never occur, and

(iv) how, given the facts outlined above, the proposed settlement could be in the best interests of

PREPA and its creditors (or whatever other standard the Court applies to its consideration of the

settlement).  An investigation of these key points (and many others) is critically important for the

Committee (and the Court) to adequately evaluate the 9019 Motion.

4.      And yet, Movants and the other RSA parties seek to withhold much of this

information from production, preferring that the facts and circumstances surrounding this

monumental, $20 billion deal remain shrouded in secrecy.  The Committee has attempted in

good faith through multiple meet-and-confer sessions to resolve as many open issues as possible,

including by offering to clarify and significantly narrow many of its requests, but these efforts

have in certain respects been unsuccessful.  In particular:

- Movants and certain other Nonproducing Parties refuse to produce nearly all documents relating to the negotiation and consideration of the settlement on the grounds that such documents are covered by either a deliberative process or a common interest privilege.  Neither privilege properly applies here, at least not nearly to the extent the Nonproducing Parties claim.

- The Nonproducing Parties refuse to search the files of necessary custodians. For example, the FOMB has refused to search the files of a ***single board member***.  AAFAF and PREPA, meanwhile, have agreed to search the files of only one custodian from AAFAF itself, and only two lawyers on their outside counsel team.  The Ad Hoc Group has also unreasonably refused to search the files of any of its group members.

- The Nonproducing Parties have flatly and without justification refused to search for and produce any categories of documents other than emails.  For example, they are unwilling to search for text messages, instant messages, or WhatsApp messages, even though such messages may be highly relevant to this dispute and have been used before by the Government Parties.  Tellingly, the Nonproducing Parties have been unwilling (or unable) to certify that no such communications exist.

- The Nonproducing Parties have refused to produce any documents at all in response to certain requests seeking key information, or have only agreed to provide documents previously produced in connection with the Renewed Receiver Motion in response to requests seeking more recent information post-dating such discovery, such as documents concerning the current state of the proposed PREPA transformation efforts.

- Certain of the Nonproducing Parties, including the FOMB, refuse to permit the Committee to access and use in this dispute the materials they produced in connection with the Renewed Receiver Motion,[4] even though such materials have already been produced to the Committee.

5.      Each of these positions of the Nonproducing Parties is without merit.  The Committee's discovery requests are reasonable and proportionate to this dispute and should be answered in the manner proposed.  Movants may argue in response to this motion that the Committee's discovery requests are inappropriately broad on a motion under Federal Rule of Bankruptcy Procedure 9019.  This argument must be rejected.  A court cannot rule on a proposed settlement under Rule 9019 without allowing parties the opportunity to evaluate the proposal through discovery and then make a determination as to whether it constitutes a reasonable

---

[4]      *Motion Of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., And Syncora Guarantee Inc. For Relief From The Automatic Stay To Allow Movants To Enforce Their Statutory Right To Have A Receiver Appointed* [Dkt. No. 975] (the "Renewed Receiver Motion").

exercise of the debtor's business judgment.  A thorough investigation of the proposed settlement here is especially important given its size, complexity, and overall significance to this case.

6.      In filing this motion, the Committee is acutely sensitive to the expedited nature of this litigation and the resulting need for efficiency.  It must be recognized, however, that the litigation schedule and its resulting time pressures are of Movants' own making, as Movants are the ones that chose to seek approval of this settlement on short notice.  Movants cannot now complain that insufficient time exists for parties to conduct reasonable discovery.

7.      Accordingly, for these and the other reasons set forth below, the Committee respectfully requests entry of an order that, among other things, (i) establishes appropriate limits to the Nonproducing Parties' assertions of the common interest and deliberative process privileges; (ii) requires the Nonproducing Parties to search all relevant file types of all relevant custodians; (iii) requires the Nonproducing Parties to produce documents in response to the key requests identified below, and (iv) provides that all documents produced as part of the Renewed Receiver Motion be deemed produced in connection with the 9019 Motion.

8.      To be clear, this motion addresses only the issues the Committee has identified in the ten days since it served its discovery requests.  The Committee files this motion today in light of the deadline set by the Scheduling Order entered by the Court and notes that it has received virtually no documents at this time.  The Committee may identify additional bases for motions to compel following further discussions with discovery targets, after reviewing the documents they produce, and after taking depositions.  The Committee reserves its right to file such further motions, including against the Nonproducing Parties, if and when necessary.

## BACKGROUND

9.      On July 2, 2017, FOMB issued a restructuring certification pursuant to

PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for PREPA pursuant

to PROMESA section 304(a), commencing this Title III case.

10.     On July 30, 2018, FOMB, AAFAF, PREPA, and the Ad Hoc Group entered into a

Preliminary Restructuring Support Agreement (the "Preliminary RSA"), which was not a binding

agreement.  Thereafter, the parties to the Preliminary RSA began to negotiate a restructuring

support agreement which would be binding on the parties.  These negotiations continued for the

next approximately nine months.

11.     On May 3, 2019, FOMB, AAFAF, PREPA, Assured, and the Ad Hoc Group

entered into the Definitive Restructuring Support Agreement (the "RSA" or the "Definitive

RSA").  Although the Definitive RSA, like the Preliminary RSA, embodies a purported

settlement of billions of dollars in PREPA bond claims, the Definitive RSA contains a number of

different and additional material terms and parties compared to the Preliminary RSA, including

the fact that is binding on FOMB and PREPA.

12.      On May 10, 2019, PREPA, AAFAF and the FOMB (collectively, "Movants")

filed the 9019 Motion, seeking an order approving the settlements embodied in the Definitive

RSA.  The Movants originally noticed the 9019 Motion for hearing on June 12, 2019.  The

Committee informed the Movants that holding a hearing in a month was not possible given,

among other things, the discovery that must be taken.  The Movants agreed to adjourn the

hearing until July 24 and consented to the schedule set forth in the scheduling order [Dkt. No.

1253] (the "Scheduling Order").

13.     As the Movants note in their 9019 Motion, as of its Title III petition date, PREPA
had outstanding approximately $8.259 billion in face amount of bonds.  With interest, the total
amount outstanding on the bonds was approximately $8.5 billion.  The bonds constitute the large
majority of PREPA's outstanding prepetition obligations, which total approximately $11.4
billion, excluding contingent and disputed claims.  The 9019 Motion proposes a settlement
structure which would – if approved by the Court – define the treatment of not only all of these
bond claims, but, practically speaking, all of PREPA's prepetition obligations, including general
unsecured claims.

14.     On May 22, 2019, pursuant to the Scheduling Order, counsel to the Committee
served Requests for Documents (the "Requests") on the Nonproducing Parties, among other
parties.  The Committee's discovery requests seek documents relating to, among other things:

- The RSA and its prior versions and incarnations, as well as any
  communications concerning the negotiation of the RSA;

- The impact that the RSA will have on PREPA's stakeholders, including the
  supporters of the RSA and PREPA's other creditors; and

- Whether and how the RSA will affect PREPA's transformation transaction,
  including the efforts to privatize portions of PREPA.

15.     Counsel to the Committee and counsel to recipients of the discovery requests have
since engaged in numerous expedited meet-and-confer discussions in an effort to narrow or
eliminate the issues requiring resolution by the Court.  As to certain parties, these efforts have
been successful.  Unfortunately, as to the Nonproducing Parties, they have not been.

## ARGUMENT

16.     During the Committee's meet-and-confer discussions, the Nonproducing Parties
have asserted four categories of objections which threaten to prevent effective discovery relating
to the 9019 Motion from ever occurring.  First, the Government Parties have asserted that the

7

overwhelming majority of their internal documents are subject to the deliberative process

privilege and are therefore not subject to discovery.  Second, the Government Parties, Assured,

and the Ad Hoc Group have asserted an overbroad and inappropriate common interest privilege

over their communications relating to the negotiation of the settlement.  Third, certain of the

Nonproducing Parties, including the Government Parties and the Ad Hoc Group, have

unjustifiably refused to allow the Committee to obtain discovery from certain key sources and

custodians of information.  Fourth, the Nonproducing parties have refused to respond or have

offered only improperly limited responses to certain critical documents requests.  Fifth, the

Government Parties have unreasonably refused to permit the Committee to use in this dispute the

discovery such parties already produced to the Committee in connection with the Renewed

Receiver Motion.  The Court should overrule each of these objections.

## I.   NONPRODUCING PARTIES' DELIBERATIVE PROCESS PRIVILEGE CLAIMS ARE WITHOUT BASIS

17.     The Government Parties have expressed the view that a significant portion (if not

all) of their internal communications and documents concerning the negotiation of and ultimate

entry into the RSA are subject to a deliberative process privilege.  The law does not support such

an expansive application of this privilege in the context of the 9019 Motion.

18.     As the D.C. Circuit has observed, "[t]he [deliberative process] privilege was

fashioned in cases where the governmental decisionmaking process is collateral to the plaintiff's

suit."  *In re Subpoena Duces Tecum Served on Office of Comptroller of Currency*, 145 F.3d

1422, 1424, *on reh'g in part*, 156 F.3d 1279 (D.C. Cir. 1998).  Where, however, "the decision-

making process itself is the subject of the litigation, it is inappropriate to allow the deliberative

process privilege to preclude discovery of relevant information."  *Velazquez v. City of Chicopee*,

226 F.R.D. 31, 34 (D. Mass. 2004); *see also Williams v. City of Boston*, 213 F.R.D. 99, 102 (D.

Mass. 2003) (same) (citing *Burka v. NYC Transit Auth.,* 110 F.R.D. 660, 667 (S.D.N.Y. 1986))

*Caparrós v. Lynch*, No. 3:15-cv-2229-JL, 2017 U.S. Dist. LEXIS 109041, at *25 (D.P.R. June

15, 2017) (ordering production of documents that, although at least arguably deliberative, "shed

light on the defendant's intent, an issue squarely implicated by the plaintiff's retaliation claim"

and thus were not protected by the deliberative process privilege).[5]

19.    Here, the Government Parties' decision-making process lies at the heart of this

dispute, as the 9019 Motion asks the Court to approve the Government Parties' decision to enter

into the RSA.  Having made the motion, the Government Parties cannot now deploy the

deliberative process privilege to shield their decision-making from scrutiny.  This is particularly

true in light of the fundamental constitutional right of the citizens of Puerto Rico to access public

information.  *Bhatia Gautier v. Gobernador*, 199 D.P.R. 59, 80 (P.R. 2017) (Ex. 1).  The Court

should therefore enter an order providing that, for purposes of the 9019 Motion, communications

and documents concerning the Government Parties' negotiation of and ultimate agreement to the

RSA are not subject to a deliberative process privilege.  Similarly, the Court should direct that

the Government Parties include internal communications in the scope of materials from which

they must identify responsive documents.

20.    To the extent the deliberative process privilege does apply to the Government

Parties' decision-making in this dispute, the privilege contains other limitations that would

prevent its wholesale application to the Government Parties' documents.  For example, the

---

[5]    This is true even when government intent is not directly at issue.  For example, in *In re Pharm. Indus.
Average Wholesale Price Litig.*, 254 F.R.D. 35, 41 (D. Mass. 2008), notwithstanding a claim of the deliberative
process privilege, the court held that defendants had "the right during discovery to see documents reflecting the
government's knowledge" where "[g]overnment knowledge could ***conceivably*** be relevant to two elements" of the
claim at issue.  *Id.* (emphasis added); *see also Fairholme Funds, Inc. v. United States*, 128 Fed. Cl. 410 (2016),
*mandamus granted in part and denied in part*, *In re United States*, 678 F. App'x 981 (Fed. Cir. 2017) (ordering
disclosure of government materials when such materials implicate the merits of the case).

privilege applies only to communications that are pre-decisional and not to factual information distinct from the government's deliberations. *See Texaco Puerto Rico, Inc. v. Dep't of Consumer Affairs*, 60 F.3d 867, 884 (1st Cir. 1995) (as a general matter, materials may only be withheld under the privilege if they are "(1) predecisional, that is, antecedent to the adoption of agency policy, and (2) deliberative, that is, actually related to the process by which policies are formulated.") (internal quotation marks omitted).  Until the Committee sees a privilege log from the Government Parties, it is premature to address these issues.[6]  The Committee reserves the right to bring a further motion to compel at the appropriate time.

## II.    NONPRODUCING PARTIES' COMMON INTEREST PRIVILEGE CLAIMS ARE WITHOUT BASIS

### A.    Common Interest Privilege Does Not Apply Until On Or Near The Execution Date Of The Definitive RSA

21.    The Government Parties and the Ad Hoc Group have asserted that the common interest doctrine protects their communications with each other beginning on July 28, 2018 – two days prior to the execution date of the Preliminary RSA.  Likewise, the Government Parties, the Ad Hoc Group, and Assured claim that they have a common interest as of March 26, 2019, when they entered into the term sheet for the Definitive RSA.  The necessary predicates for these privilege claims have not been (and cannot be) established.

22.    The common interest doctrine is "not an independent basis for privilege, but an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party." *Cavallaro v. United States*, 284 F.3d 236, 250 (1st Cir. 2002).  The First Circuit, like several other Circuits, applies a similar three-part test under which

---

[6]    Despite their awareness of the expedited nature of this litigation, the Government Parties have been unable to articulate basic components of the deliberative process privilege, such as the policy decision to which the privilege allegedly relates. *See* Ex. 2 (FOMB M&C Chain); Ex. 3 (AAFAF M&C Letter, at 4).

"the party asserting the [common interest] privilege must show that (1) the communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived."  *Ken's Foods, Inc. v. Ken's Steak House, Inc.*, 213 F.R.D. 89, 93 (D. Mass. 2002) (quoting *United States v. Bay State Ambulance and Hosp. Rental Serv. Inc.*, 874 F.2d 20, 28 (1st Cir. 1989)).  The common interest applies only "when parties share a substantially identical interest in the subject matter of a legal communication." *Crane Sec. Techs., Inc. v. Rolling Optics, AB*, 230 F. Supp. 3d 10, 16 (D. Mass. 2017).

23.     Here, the communications as to which the Government Parties, Ad Hoc Group, and Assured assert a common interest all relate to the RSA.  The purported basis for their assertion is that from the moment of the execution of the Preliminary RSA, all material terms had been agreed upon by the parties and they shared an identical legal interest in securing the RSA's approval by the Court.  The record shows otherwise.

24.     <u>First</u>, the Preliminary RSA itself was merely an agreement to agree, and many material terms remained undetermined as of its execution.  Under section 10.02(a)(iv) of the Preliminary RSA, the FOMB, AAFAF, and PREPA each had an absolute right to terminate the Preliminary RSA without any consequence if they determined not to proceed with the transaction or to proceed with an inconsistent transaction.[7]  Making the point even clearer, section 11.13 provided that the sole remedy for a breach of the preliminary agreement by any party was giving the non-breaching parties the right to walk away (*i.e.*, there would be no damages for a breach).[8]

████   ████████████████████████████████

████████████████████████████████████████████████

---

[7]     *See* Ex. 4 (Restructuring Support Agreement, dated as of July 30, 2018, at 2).

[8]     *Id.*



███████████████████████████████████████

████████████████████████████████████████████

██████████████████████

28.     In the absence of discovery, the Committee does not currently have visibility into the remainder of the parties' negotiations, but in light of this history and absent evidence to the contrary, the first date on which it is defensible for the Government Parties, the Ad Hoc Group, and Assured to claim common interest protection over their communications is May 3, 2019, the date on which they executed the Definitive RSA.  That is the earliest moment at which they became joined in interest in seeking the Court's approval for their settlement.  *See In re Lyondell Chemical Company*, Case. No. 09-10023, Dkt. No. 3592 at 15 (Bankr. S.D.N.Y Jan. 14, 2011) (holding that until court approves settlement debtors and settling financing parties are adverse and do not have common interest privilege) (Ex. 9); *Asymmetrx Med., Inc. v. McKeon*, No. CIV.A. 11-11079-NMG, 2013 WL 2181084, at *2 (D. Mass. May 16, 2013) (denying protective order for settlement communications because settlement negotiations are between adverse parties); *In re JP Morgan Chase & Co. Sec. Litig.*, No. 06 C 4674, 2007 WL 2363311, at *5 (N.D. Ill. Aug. 13, 2007) (holding no common interest between parties while negotiating agreement, because "each company wanted to get the best deal from the other company, and to the extent that one succeeded in its goal, the other suffered").

29.     Accordingly, the Court should enter an order providing that no communications between the Government Parties, Assured, and the Ad Hoc Group prior to May 3, 2019[9] are

---

[9]     Assured claimed in correspondence from counsel on the day this motion was filed that a common interest privilege arose between it and the Ad Hoc Group, and between it and two other monoline insurers that are not parties to the RSA, on October 16, 2018, and that a common interest privilege arose between it and the Government Parties commencing on March 26, 2019.  *See* Ex. 10 (Assured M&C Chain).   Counsel to the Committee has not had an opportunity to evaluate the specific factual bases for these claims, if any, and therefore reserves its rights, but

covered by the common interest privilege.[10]  The Government Parties and Assured must also be ordered not to limit the scope of their searches for responsive information so as to exclude periods that they improperly claim are subject to a common-interest privilege.



31.    Under Federal Rule of Evidence 502(a), which concerns the intentional disclosure of privileged materials, the attorney-client privilege and work-product protection will be waived when "(1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together."  Fed. R. Evid. 502(a).  All three elements are satisfied here.

32.    ████████████████████████████████████



████████   *Bear Republic Brewing Co. v. Cent. City Brewing Co*., 275 F.R.D. 43, 47 (D. Mass.

---

believes for the reasons set forth in this motion that no common interest privilege can be asserted by **any** of the parties to the RSA, including Assured, until at the earliest the date of execution of the Definitive RSA.

[10]    Even after May 3, 2019, the communications by these parties are not necessarily privileged.  The Committee reserves the right, once it receives a privilege log, to challenge the privilege as applied to any particular document as to which the privilege is claimed.

2011) ("There really can be no question in the instant case that counsel for Central City knew that what was being disclosed was protected by the work product doctrine and that Central City was waiving the protection as to the specific items disclosed.").



34.

Moreover, these communications are highly relevant to this dispute. *See Columbia Data Prods., Inc. v. Autonomy Corp. Ltd.*, No. CIV.A. 11-12077-NMG, 2012 WL 6212898, at *18 (D. Mass. Dec. 12, 2012) (Dein, M.J.) (holding that, when a party has put the subject matter purportedly covered by the privilege "directly at issue in this litigation[, u]nder such circumstances, full disclosure is only fair").

## III.   THE NONPRODUCING PARTIES' REFUSALS TO PRODUCE CERTAIN TYPES OR CATEGORIES OF DOCUMENTS ARE UNJUSTIFIED

36.   A common refrain during the Committee's meet-and-confer discussions with the Nonproducing Parties was their position that the Committee's discovery requests are overbroad and disproportional to the nature of the Court's inquiry on a Rule 9019 motion.  The Nonproducing Parties have therefore sought to severely circumscribe the searches they are

willing to perform and the documents they are willing to produce.  These positions are

inappropriate and not supported by the law.[11]

A.   Nonproducing Parties' Refusal To Search Files Of Key Custodians

37.   So far, most of the key Nonproducing Parties, including the FOMB, AAFAF,

PREPA, and their respective financial advisors, have failed to provide a reasonable set of

custodians from which they would collect and produce responsive documents.  The following is

a summary of the positions taken by these parties, and why such positions are unreasonable:

38.   **AAFAF and PREPA**.  During a May 31, 2019 meet-and-confer and in

subsequent correspondence, AAFAF and PREPA have taken the position that they will search

only the files of a single individual from AAFAF and PREPA combined (Christian Sobrino), and

two lawyers at their outside counsel.[12]  This position is unjustified, inappropriate, and severely

prejudicial to the Committee.  AAFAF and PREPA must, at a minimum, be required to search

the documents of (i) Eli Atienza Diaz (chairman of PREPA board), (ii) Jose Ortiz (PREPA

CEO), and (iii) Nelson Morales (CFO of PREPA).[13]

39.   Additionally, Filsinger has stated in its responses and objections that it does not

believe it had any responsive documents other than those that are already in the possession of

---

[11]   Contrary to the Nonproducing Parties' apparent position, discovery is necessary and important on a motion
filed under Rule 9019, particularly one that seeks approval of a settlement as significant and complicated as the one
at issue here.  *See In re P & P "Quick Sett" Servs.*, No. 10-14705, 2011 Bankr. LEXIS 1732, at *5 (Bankr. D.R.I.
Apr. 19, 2011) ("The arguments of all of the parties support the Court's conclusion that the questions regarding
ownership of the funds are complicated and varied, and should be decided *only* after discovery, in the context of an
adversary proceeding, and only after all claimants to the funds have had the opportunity to be fully heard on the
merits.").

[12]   *See* Ex. 3 (AAFAF M&C Letter).

[13]   AAFAF has already identified Mr. Morales as having relevant knowledge.  *See, e.g.*, Ex. 11 (*AAFAF's
Responses And Objections To Official Committee Of Unsecured Creditors' First Set Of Interrogatories To Puerto
Rico Fiscal Agency And Financial Advisory Authority In Connection With Joint Motion Of Puerto Rico Electric
Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy
Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support Agreement And
Tolling Certain Limitations Periods*).

PREPA or AAFAF.  Neither PREPA nor AAFAF, however, has agreed to search the documents

of all individuals who communicated with Filsinger.  Therefore, the Committee cannot obtain

Filsinger's documents from PREPA or AAFAF.  Counsel for AAFAF has stated that Filsinger

will not designate any custodians because it "did not have any significant involvement in

negotiating the RSA."[14]  Even if Filsinger had had no involvement in negotiating the RSA,

however (and it is not clear from AAFAF's correspondence that this is in fact the case), it likely

still has documents responsive to other requests, including the impact of the RSA on PREPA.

As a result, Filsinger must identify its own custodians.

40.    **FOMB**.  Counsel for the FOMB has proposed five individuals as custodians

during its discussions with the Committee:  three lawyers at the FOMB's outside counsel,

Natalie Jaresko (Executive Director of FOMB), and Alejandro Figueroa (PREPA Transformation

Manager at FOMB).  Ex. 12 (FOMB M&C Chain).  Conspicuously missing from the FOMB's

list is a single one of the eight actual members of the board – *i.e.*, the people with actual

responsibility for the decision to enter into the RSA.  These board members must be designated

as custodians; otherwise, the Committee cannot possibly obtain adequate insight into the

FOMB's decision-making process.  The same goes for the FOMB's financial advisor and

investment banker, Citi.  Thus far, Citi has only agreed to search the documents of two

custodians:  David Brownstein (Managing Director and Co-Head of Public Finance for

Municipal Securities) and James Castiglioni (Investment Banking (Public Finance) Vice

President).  This is insufficient, as it does not encompass other Citi employees who have been

identified on witness lists and interrogatory responses as having relevant information, including

John Gavin (identified as having knowledge regarding the RSA, the Preliminary RSA, the

---

14    *See* Ex. 3 (AAFAF M&C Letter, at 2).

settlement, and the proposed transformation), Thomas Green (identified as having knowledge regarding the RSA, the Preliminary RSA, and the settlement), Fred Chapados (identified as having knowledge regarding the proposed transformation), Sandip Sen (same), and Mariah Shones (same).[15]  All of these individuals must be included as custodians.

41.    **Ad Hoc Group**.[16]  During the course of telephonic meet-and-confers on May 30 and 31, 2019, counsel for the Ad Hoc Group refused to produce documents from any of its constituent members.  In an attempt to reach a compromise, on May 31, 2019, counsel for the Committee proposed that the Ad Hoc Group produce limited, specified categories of discovery from the three member funds with the largest PREPA holdings:

- "The fund will identify the team with primary responsibility for negotiations relating to the PREPA settlement, and from the members of that team, produce all communications relating to (a) the RSA, Preliminary RSA, or the Settlement, with respect to each including all negotiations, prior versions and drafts thereto, and (b) such fund's collateral position (i.e., discussion concerning whether such position is/was undersecured, oversecured, any changes in value, etc) including all emails, texts, instant messages, WhatsApp messages, etc."

- "The fund will produce documents relating to its PREPA positions maintained in the ordinary course of business from January 1, 2018 to the present by its credit committee (or similar body, even if differently titled – the purpose of this request is to capture the documents maintained by the fund in the ordinary course of its monitoring and oversight of its credit positions)."

*See* Ex. 13 (AHG M&C Chain).

---

[15]    *See, e.g.*, Ex. 12 (*Responses And Objections Of The Financial Oversight And Management Board For Puerto Rico To The General Creditors' Committee First Set Of Interrogatories*).

[16]    Ex. 22 (*Official Committee Of Unsecured Creditors' First Set Of Document Requests To Ad Hoc Group Of PREPA Bondholders And Its Advisors In Connection With Joint Motion Of Puerto Rico Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support Agreement And Tolling Certain Limitations Periods*); Ex. 23 (*Responses And Objections By Ad Hoc Group Of PREPA Bondholders To Official Committee Of Unsecured Creditors' Subpoena For Production Of Documents In Connection With Joint Motion Of Debtor And AAFAF For Approval Of Certain Settlements (Dkt. # 1235)*).

42.     The documents sought in the Committee's proposal are narrowly tailored to documents that are directly relevant to the 9019 Motion.  For example, the collateral position and credit committee files sought by the Committee will contain the Ad Hoc Group's members' key analyses of the value, scope and extent of their collateral, which are directly relevant to the Court's determination of whether or not the settlement provided by the RSA is reasonable. Moreover, the employees of individual group members may have relevant information in the form of internal and external communications concerning the negotiation of the RSA.  The Committee's offer to the Ad Hoc Group is carefully tailored to minimize the burden of retrieving these materials, and represents a reasonable compromise, particularly given the billions of dollars that the 9019 Motion proposes to transfer to the members of the Ad Hoc Group.  The Ad Hoc Group should be required to comply.

B.     Nonproducing Parties' Refusal To Search Documents Other Than Emails

43.     During the various meet-and-confers, the Nonproducing Parties each refused to search for or produce any documents other than emails.  Therefore, they have refused to produce text messages, instant messages, or other similar non-email electronic communications such as WhatsApp messages.  *See, e.g.*, Ex. 2 (FOMB M&C Chain); Ex. 3 (AAFAF M&C Letter, at 2). They have also refused to produce paper documents.  These parties have taken this position even though they are unable to certify that no such communications or documents exist.  Indeed, the only justification the parties have provided for refusing to search documents other than emails is that the search would be "costly" and "burdensome."  But these are not appropriate excuses given the magnitude of this dispute and the fact that many of these non-email documents could be highly relevant to the issues that the Court needs to consider.

44.     Indeed, if history is any indication, when it comes to negotiating the Preliminary and Definitive RSAs, one could imagine that the parties' most candid conversations may have

occurred over some medium other than email.  It is well-publicized that Puerto Rico government officials, including at least one key official directly involved in this dispute, have communicated by these other electronic means in conducting business in the past.

45.     While it may be true that certain custodians have used only email for business communications, the Committee cannot accept generalized assertions from counsel to this effect. The Committee would, however, be willing to forego its request for non-email electronic communications or paper documents for any given custodian if the custodian provides a sworn affidavit that no such communications currently exist or have existed.

C.     Certain Nonproducing Parties' Refusal to Produce Key Categories of Documents, or Offers Only Of Improperly Limited Productions

46.     In response to a number of the Committee's document requests for important information relating to the settlement, the Government Parties and Assured have offered either flat rejections or improperly limited productions.  The following summarizes the positions taken by such parties, and why these positions are unreasonable.

47.     **FOMB.**[17]  The FOMB has refused to produce any documents concerning any alternative restructuring or litigation strategies or transactions considered by the Oversight Board, AAFAF and/or PREPA, as referred to in paragraph 50 of the 9019 Motion (Request No. 8).  FOMB's consideration of possible alternative approaches bears directly on the assessment of the reasonableness of the settlement it is now urging the Court to approve.  Both AAFAF and PREPA have agreed to produce documents responsive to this request, and the FOMB – which

---

[17]     *See* Ex. 18 (*Official Committee Of Unsecured Creditors' First Set Of Document Requests To Financial Oversight And Management Board For Puerto Rico And Its Advisors In Connection With Joint Motion Of Puerto Rico Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support Agreement And Tolling Certain Limitations Periods);* Ex. 19 (*Responses And Objections Of The Financial Oversight And Management Board For Puerto Rico To The General Creditors' Committee's First Requests For Production Of Documents*).

presumably lies at the heart of any comparative assessment of strategic options – should be compelled to do so as well.

48.     The FOMB has also refused to produce its communications with the Puerto Rico Energy Bureau or the Puerto Rico legislature concerning the proposed settlement and transition charges contemplated in the RSA (Requests No. 17 and 18).  It is the Committee's understanding that implementation of the proposed settlement will require regulatory and/or legislative action, which is uncertain and which represents a potential obstacle to implementation of the proposed settlement.  Discovery of these topics is necessary to evaluate the magnitude and potential impact of this contingency on the value and purported benefits of the proposed transaction.  The FOMB has also refused to produce documents concerning any legislation that may need to be passed to implement the settlement or alternative plans or strategies in the event such legislation is not passed (Request No. 19).  Like Requests No. 17 and 18, these documents are necessary for the Committee to properly evaluate the significance of the legislative risks that accompany the proposed settlement, and the potential consequences for PREPA's stakeholders in the event that they cannot be successfully managed.

49.     Finally, the FOMB has refused to provide any documents concerning the nature, extent and value of any security interest that PREPA bondholders may hold in PREPA's assets, including the extent to which such security interest has decreased since PREPA's title III petition date (Request No. 20).  Such documents go directly to the heart of the value – or lack thereof – of the bondholder claims that would be settled through the 9019 Motion, and this request targets information that has long been directly at issue through the Renewed Receiver Motion.  At minimum, the FOMB should be required to produce materials that it has already produced in connection with that prior discovery process, and to the extent that it also possesses documents

concerning any more recent changes in the alleged value of the PREPA bondholder's purported

security interests, it should produce such documents as well.

50.     **AAFAF.**[18]  Like the FOMB, AAFAF has refused to produce its communications

with the Puerto Rico Energy Bureau or the Puerto Rico legislature concerning the proposed

settlement and transition charges contemplated in the RSA (Requests No. 17 and 18).  For the

reasons set forth above with respect to FOMB, these should be produced.  AAFAF also has not

agreed to produce documents in response to Request No. 19, and for the reasons set forth above

should be required to produce such documents.  AAFAF has also declined to produce documents

concerning the nature, extent and value of any security interest that PREPA bondholders may

hold in PREPA's assets, including the extent to which such security interest has decreased since

PREPA's title III petition date (Request No. 20).  For the reasons set forth above, AAFAF should

produce them.

51.     AAFAF has also declined to produce documents concerning the Oversight

Board's, AAFAF's and/or PREPA's analysis of the ability of Puerto Rico's electric system to

absorb and pass on the settlement and transition charges (Request No. 9)  Such materials go to

the heart of the question of whether the settlement proposed in the 9019 Motion would, as a

---

[18]        *See* Ex. 16 (*Official Committee Of Unsecured Creditors' First Set Of Document Requests To Puerto Rico
Fiscal Agency And Financial Advisory Authority And Its Advisors In Connection With Joint Motion Of Puerto Rico
Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And
Bankruptcy Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support
Agreement And Tolling Certain Limitations Periods*); Ex. 17 (*AAFAF's Responses And Objections To Official
Committee Of Unsecured Creditors' First Set Of Document Requests To Puerto Rico Fiscal Agency And Financial
Advisory Authority And Its Advisors In Connection With Joint Motion Of Puerto Rico Electric Power Authority And
AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(A)(I) And 9019
For Order Approving Settlements Embodied In Restructuring Support Agreement And Tolling Certain Limitations
Periods*).

practical matter, foreclose any potential alternative resolutions to PREPA's myriad problems. AAFAF and PREPA should be compelled to produce them.

52.    In addition, with respect to a number of requests that seek information concerning currently developing events with respect to PREPA and the proposed settlement, AAFAF has agreed only to provide responsive documents that can be located in its prior production in connection with the Renewed Receiver Motion.  This production occurred months ago, and cannot be sufficient to address requests for information concerning, for example, the impact of the settlement on the proposed PREPA transformation (Requests Nos. 10 and 11), the current state of the proposed PREPA transformation process (Request No. 12), and electricity revenue projections and the effect of the settlement upon forecasts of electricity pricing, demand and related assumptions (Requests No. 25 and 26).  These requests all seek key information concerning the current impact of the proposed settlement, which historical information cannot address, and AAFAF should therefore be directed to update its collection of materials responsive to these requests.

53.    **PREPA.**[19]  With respect to the requests[20] detailed above, PREPA's responses are identical to AAFAF's, and share exactly the same deficiencies.  PREPA should similarly be

---

[19]     *See* Ex. 14 (*Official Committee Of Unsecured Creditors' First Set Of Document Requests To Puerto Rico Electric Power Authority And Its Advisors In Connection With Joint Motion Of Puerto Rico Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support Agreement And Tolling Certain Limitations* Periods); Ex. 15 (*PREPA's Responses And Objections To Official Committee Of Unsecured Creditors' First Set Of Document Requests To Puerto Rico Electric Power Authority And Its Advisors In Connection With Joint Motion Of Puerto Rico Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support Agreement And Tolling Certain Limitations Periods*).

[20]     The discovery requests served by the Committee on the FOMB, AAFAF and PREPA are materially identical.

compelled to produce documents in its possession that are responsive to these requests, which go to the heart of the issues presented by the 9019 Motion.

54.    **Assured.**[21]   Assured has refused to produce its loss reserve calculations, in the first instance on the basis that this Court previously held them to be irrelevant in the context of the motion by Assured (among other parties) for relief from the automatic stay. The basis for that ruling by this Court, however, was that "the Insurers [including Assured] have sufficiently shown that the loss reserves at issue are based on potential litigation outcomes and not on a valuation of collateral."  [Dkt. No. 1165, at 9]  The present motion, however, turns on factual issues distinct from those previously at issue.  At its crux, the 9019 Motion asks the Court to evaluate the reasonableness of the price PREPA would pay to resolve the claims of its bondholders, including Assured.  The probabilistic assessment of various potential PREPA litigation scenarios that Assured has previously represented comprise its loss reserve calculations [Dkt. No. 1115 at 23] is thus directly and highly relevant to assessment of the RSA.

55.    Assured has also indicated that even if they are relevant, it views the loss reserves as privileged.  The Committee, however, has offered to narrow its request only to Assured's responsive loss reserve communications and documents shared with New York regulatory authorities, which the Committee understands have declined to assert a bank examiner (or any

---

[21]    *See* Ex. 20 (*Official Committee Of Unsecured Creditors' First Set Of Document Requests To Assured Guaranty Corp. And Assured Guaranty Municipal Corp. And Their Advisors In Connection With Joint Motion Of Puerto Rico Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support Agreement And Tolling Certain Limitations Periods*); Ex. 21 (*Assured Guaranty Corp.'s And Assured Guaranty Municipal Corp.'s Responses And Objections To The Official Committee Of Unsecured Creditors' Subpoena With Appendix Entitled First Set Of Document Requests To Assured Guaranty Corp. And Assured Guaranty Municipal Corp. And Their Advisors In Connection With Joint Motion Of Puerto Rico Electric Power Authority And AAFAF Pursuant To Bankruptcy Code Sections 362, 502, 922, And 928, And Bankruptcy Rules 3012(A)(I) And 9019 For Order Approving Settlements Embodied In Restructuring Support Agreement And Tolling Certain Limitations Periods*).

analogous) privilege, and as to which the Committee submits that there therefore can be no assertion of privilege by Assured.

56.     Even if Assured's loss reserve information were deemed privileged in the first instance, Assured has waived the privilege by disclosing the information to a third party— New York state regulators.  *Lluberes v. Uncommon Prods., LLC*, 663 F.3d 6, 24 (1st Cir. 2011) ("protection [of attorney client-communication] ceases, or is often said to be 'waived,' when otherwise privileged communications are disclosed to a third party"); *In re Raytheon Sec. Litig.*, 218 F.R.D. 354, 359 (D. Mass. 2003) ("The work product privilege may be waived through disclosure.").  Even if Assured anticipated when it made its submissions to New York's regulatory authorities that those regulators would subsequently take steps to protect the documents by asserting privilege over them, it is the Committee's understanding that they have not chosen to do so, and the privilege – to the extent one can be asserted at all – belongs to the regulator, not Assured.  *Bank of China v. St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797 (RWS), 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004) (bank examination privilege is a "qualified privilege [that] belongs to the regulatory authority and not to the banks that it regulates"); *Saint-Jean v. Emigrant Mortg. Co.*, 11-CV-2122 (SJ), 2016 WL 11430775, at *5 (E.D.N.Y. May 24, 2016) (privilege belongs to regulators).

57.     To the extent that Assured has confidentiality concerns about disclosure of loss reserve calculations that it has shared with New York's regulators, they can be addressed through appropriate confidentiality restrictions, and Assured should be compelled to produce them.

58.     **Ongoing discussions regarding certain requests.**  Finally, as of the evening when this motion is to be filed, the Committee and the Government Parties continue to be engaged in active meet-and-confer discussions regarding a number of requests, including the

Committee's requests from PREPA, AAFAF and the FOMB for documents reflecting analysis of

the impact of the RSA on PREPA's creditors (Request No. 4), documents reviewed and

considered by PREPA, AAFAF and the FOMB in determining whether to enter into the

settlement (Request No. 5), analyses of the ability of the Puerto Rico electric system to absorb

the proposed settlement and transition charges (Request No. 9), documents reflecting the current

status of the proposed PREPA transformation process (Request No. 12), and documents

concerning projections of topics such as electricity demand, pricing and revenues (Requests Nos.

25 and 26).  The parties continue to discuss these requests in an effort to resolve their

differences.  The Committee respectfully submits, however, that each of these requests addresses

core information necessary to proper evaluation of the proposed settlement, as well as the

statements offered by the Movants in their 9019 Motion in support of such settlement.

Accordingly, if the parties are unable to resolve their differences prior to the hearing on this

motion to compel, the Committee respectfully requests that the Court order the Government

Parties to comply in full with each of these requests.

> D.  <u>Certain Nonproducing Parties' Refusal To Permit Use Of Documents Produced In Connection With Renewed Receiver Motion</u>

59.  Many of the parties on which the Committee served discovery requests, including

certain of the Nonproducing Parties, previously produced documents as part of discovery in the

Renewed Receiver Motion.  Given the overlap of issues between the Renewed Receiver Motion

and the 9019 Motion, many of these documents are squarely relevant to this dispute.

60.  Although the parties to the Renewed Receiver Motion, including the Committee,

agreed to be bound by a Protective Order[22] governing the production of documents in that

---

[22]     *See Stipulation And Protective Order In Connection With The Motion Of National Public Finance Guarantee Corporation, Assured Guaranty Corp., Assured Guaranty Municipal Corp., And Syncora Guarantee Inc.*

litigation, the Committee believes that the Protective Order permits the use of such documents in this litigation.  Specifically, paragraph 8 of the Protective Order provides that the documents produced thereunder may be used "in connection with" the Renewed Receiver Motion.  Because the 9019 Motion seeks to at least partially resolve the Renewed Receiver Motion, the Committee believes the 9019 Motion is connected to the Renewed Receiver Motion and therefore the documents produced under the Protective Order may be used in this dispute.

61.     Nevertheless, out of an abundance of caution, the Committee asked the parties on which it served discovery in this dispute that also produced documents in the Renewed Receiver Motion whether they would (i) consent to the use of such documents in this dispute, or (ii) agree to "reproduce" all such documents.  Given the lack of any burden associated with such consent or reproduction, several parties, including Assured, National, and Syncora, agreed to the Committee's request and have either permitted the use of all Renewed Receiver Motion documents in this dispute or agreed to reproduce them.

62.     The Government Parties, however, have refused.  They have offered no justification for such refusal other than that they do not believe all the documents produced as part of the Renewed Receiver Motion are relevant to the 9019 Motion.  But relevance has no bearing on whether these documents are discoverable because they are already in the Committee's possession.  If the Committee seeks to introduce a document into evidence at the hearing on the 9019 Motion that the Government Parties believe is not relevant, they can object to the admissibility of such document at that time.  But they cannot prevent the Committee from accessing the documents already in its possession in discovery.

---

*For Relief From The Automatic Stay To Allow Movants To Enforce Their Statutory Right To Have A Receiver Appointed* [Dkt. No. 1052].

63.     Accordingly, the Court should compel the Government Parties to permit the Committee to access all of the documents they produced in the Renewed Receiver Motion as part of discovery in this matter.[23]  This relief will save valuable time and effort for all parties, as otherwise the Committee would be forced to re-request every document it received in the Renewed Receiver Motion that it believes is relevant to this dispute, and then argue with the Government Parties over whether production should occur.

## NOTICE

64.     Notice of this Motion has been provided to the following entities, or their counsel, if known: (i) the U.S. Trustee; (ii) the Office of the United State Attorney for the District of Puerto Rico; (iii) the Oversight Board; (iv) the Puerto Rico Fiscal Agency and Financial Advisory Authority; (v) the Official Committee of Retired Employees of the Commonwealth of Puerto Rico; (vi) the insurers of the bonds issued or guaranteed by the Debtors; (vii) counsel to certain ad hoc groups of holders of bonds issued or guaranteed by the Debtors; (vii) Citigroup Global Markets, Inc.; (viii) Filsinger Energy Partners, (ix) Ankura Consulting Group; and (x) all parties that have filed a notice of appearance in the above-captioned title III cases.

## CONCLUSION

WHEREFORE, the Committee respectfully requests that this Court enter an order substantially in the form attached hereto granting the relief requested herein, and granting the Committee such other relief as this Court deems just and proper.

---

[23]     Counsel for AAFAF has stated that they will only produce certain enumerated documents produced as part of the Renewed Receiver Motion.  There is no justification for this cherry picking where the documents are already in the Committee's possession

Dated:  June 3, 2019

*/s/ Luc A. Despins*
PAUL HASTINGS LLP
Luc. A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel:  (212) 318-6000
lucdespins@paulhastings.com

Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 551-1700
nicholasbassett@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors*[24]

- and –

*/s/ John Arrastia*
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Special Litigation Counsel to the Official Committee
of Unsecured Creditors for all Title III Debtors with
Respect to Claims against Citi*

- and -

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq. (USDC - PR 218312)

---

[24]     Paul Hastings LLP does not represent the Committee with respect to any statements in this Motion
regarding Citigroup Global Markets, Inc.

29

Alberto J. E. Añeses Negrón, Esq. (USDC - PR 302710)
Israel Fernández Rodríguez, Esq. (USDC - PR 225004)
Juan C. Nieves González, Esq. (USDC - PR 231707)
Cristina B. Fernández Niggemann, Esq. (USDC - PR 306008)
PO Box 195075
San Juan, PR 00919-5075
Tel.: (787) 523-3434 Fax: (787) 523-3433
jcasillas@cstlawpr.com
aaneses@cstlawpr.com
ifernandez@cstlawpr.com
jnieves@cstlawpr.com
cfernandez@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors*