**<u>EXHIBIT 18</u>**

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

-------------------------------------------------------------------- X
                                                                     :
In re:                                                               :
                                                                     :
THE FINANCIAL OVERSIGHT AND                                          :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                    :  Title III
                                                                     :
       as representative of                                         :  Case No. 17-BK-3283 (LTS)
                                                                     :
THE COMMONWEALTH OF PUERTO RICO *et al.,*                            :  (Jointly Administered)
                                                                     :
       Debtors.[1]                                                  :
-------------------------------------------------------------------- X
                                                                     :
In re:                                                               :
                                                                     :
THE FINANCIAL OVERSIGHT AND                                          :  PROMESA
MANAGEMENT BOARD FOR PUERTO RICO,                                    :  Title III
                                                                     :
       as representative of                                         :  Case No. 17-BK-4780 (LTS)
                                                                     :
PUERTO RICO ELECTRIC POWER AUTHORITY                                 :  **This filing relates only to**
                                                                     :  **Case No. 17-BK-4780 (LTS)**
                                                                     :
       Debtor.                                                      :
-------------------------------------------------------------------- X

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' FIRST SET OF
DOCUMENT REQUESTS TO FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO AND ITS ADVISORS IN CONNECTION WITH JOINT
MOTION OF PUERTO RICO ELECTRIC POWER AUTHORITY AND AAFAF
PURSUANT TO BANKRUPTCY CODE SECTIONS 362, 502, 922, AND 928, AND
BANKRUPTCY RULES 3012(A)(I) AND 9019 FOR ORDER APPROVING**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

## SETTLEMENTS EMBODIED IN RESTRUCTURING SUPPORT AGREEMENT AND
## TOLLING CERTAIN LIMITATIONS PERIODS

Pursuant to Federal Rules of Civil Procedure 26, 34 and/or 45 (applicable here under Rules 9014 and/or 9016 of the Federal Rules of Bankruptcy Procedure), the Official Committee of Unsecured Creditors of all Title III Debtors (other than COFINA) (the "Committee"), by its counsel, hereby propounds to the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), including to its advisors Citigroup Global Markets Inc. ("Citigroup"), Proskauer Rose LLP ("Proskauer"), and McKinsey & Company, Inc. Washington D.C. ("McKinsey"), this First Set of Document Requests (the "Requests").  These Requests are to be responded to fully and in accordance with the definitions and instructions set out below, and the Documents and Communications identified herein are to be produced to the offices of Paul Hastings LLP, Attn: Zachary Zwillinger, 200 Park Avenue, New York, NY 10166 (for documents from the Oversight Board, Proskauer, and McKinsey), and to the offices of Genovese Joblove & Battista, P.A., Attn: John Arrastia, 100 S.E. Second Street, 44th Floor Miami, FL (for documents from Citigroup) on or before May 29, 2019 or as otherwise ordered by the Court.  These requests are without waiver of the Committee's rights to serve further discovery requests upon the Oversight Board or any third party based on the information that may be disclosed in response to these requests or other developments in this litigation, and the Committee expressly reserves all such rights.

## INSTRUCTIONS

1.      Each Request must be responded to separately and specifically.  Each Request shall be answered fully unless it is in good faith objected to, in which event the reason for Your objection shall be stated in detail, as set forth below.  If an objection pertains only to a portion of a request,

or a word, phrase or clause contained within it, You are required to state Your objection to that portion only and to respond to the remainder of the Requests.

    2.    Electronically stored information must be produced in accordance with the following instructions:

    a) <u>Images</u>. Black and white images must be 300 DPI Group IV single-page TIFF files. Color images must be produced in JPEG format. File names cannot contain embedded spaces or special characters (including the comma). Folder names cannot contain embedded spaces or special characters (including the comma). All TIFF image files must have a unique file name, i.e. Bates number. Images must be endorsed with sequential Bates numbers in the lower right corner of each image. The number of TIFF files per folder should not exceed 1000 files. Excel spreadsheets should have a placeholder image named by the Bates number of the file.

    b) <u>Image Load File</u>.

        a. Concordance® Data File. The data file (.DAT) contains all of the fielded information that will be loaded into the Concordance® database. The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance® default delimiters: Comma  ASCII character (020) Quote þ ASCII character (254).  Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields.  If documents includes imaged emails and attachments, the attachment fields must be included to preserve the parent/child relationship between an email and its attachments.  An OCRPATH field must be included to provide the file path and name of the extracted text file on the produced storage media. The text file must be named after the FIRSTBATES. Do not include the text in the .DAT file.  For Documents with native files, a LINK field must be included to provide the file path and name of the native file. The native file must be named after the FIRSTBATES.

        b. Concordance Image® OR Opticon Cross-Reference File.  The image cross-reference file (.LOG or .OPT) links the images to the database records. It should be a comma-delimited file consisting of seven fields per line with a line in the cross-reference file for every image in the database with the following format: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCoun.

    c) <u>Document Text</u>. Text must be produced as separate text files, not as fields within the .DAT file. The full path to the text file (OCRPATH) should be included in the .DAT file. It is recommended document level ANSI text files,

named per the FIRSTBATES/Image Key.  Extracted text files must be in a separate folder, and the number of text files per folder should not exceed 1,000 files. There should be no special characters (including commas in the folder names).  Text files must be provided on a document level.

d) <u>Native Production for Certain File Types</u>.  File types that reasonably require viewing in their native format for a full understanding of their content and meaning must be produced in native format.  These include, but are not limited to, spreadsheets, spreadsheet-like files (Microsoft Excel, comma separated values, tab separated values, etc.), Microsoft PowerPoint or other special presentation files, database files, and audio/visual files.  Provide an image of a Bates numbered slip sheet indicating the presence of a native file, and include the path to the native as a field in the .dat file.  Name the produced native file with the Bates number corresponding to the slip sheet for the file.  Group native files within incrementally named "NATIVE" directories, separate from images directories.

e) <u>De-duplication</u>.  Produce a single copy of each electronic document for which exact duplicates exist.  For email messages, consolidate duplicates based on MD5 hash generated from the BCC, Body, CC, From, IntMsgID, To, and Attach properties.  For email attachments and standalone electronic files, consolidate duplicates based on MD5 hash of the entire file.

f) <u>Metadata</u>.  Produce extracted metadata for each document in the form of a Concordance compliant load file (.dat).  The first line of the .DAT file must be a header row identifying the field names. The .DAT file must use the following Concordance default delimiters: Comma , ASCII character (020) Quote þ ASCII character (254) Date fields should be provided in the format: mm/dd/yyyy. Date and time fields must be two separate fields. Required metadata listed below:

| Field Name | Sample Data | Description |
| --- | --- | --- |
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the  parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000001 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| CUSTODIAN | Smith, John | Email: Mailbox where the email  resided Native: Name of the individual or department  from whose files  the document  originated |

4

| FROM | John Smith | Email:  Sender<br>Native: Author(s) of document<br>**semi-colon should be used to separate multiple entries |
| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com] | Recipient(s)<br>**semi-colon should be used to separate  multiple entries |
| CC | Frank Thompson [mailto: frank_Thompson@cdt.com] | Carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s)<br>**semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE_NAME | BoardMeetingMinutes.docx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/2010 | Email: Date the email was sent<br>Native: (empty) |
| TIME_SENT/TIME_ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during  conversion. |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document<br>**The linked file must be named per the FIRSTBATES number |
| FILE_EXTEN | MSG | The file type<br>extension<br>representing<br>the Email or |
| AUTHOR | John Smith | Email: (empty)<br>Native: Author of the document |
| DATE_CREATED | 10/10/2010 | Email: (empty)<br>Native: Date the document was created |
| TIME_CREATED | 10:25 AM | Email: (empty)<br>Native: Time the document was created<br>**This data must be a separate field and cannot be combined with the DATE_CREATED field |
| DATE_MOD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last modified |

| TIME_MOD | 07:00 PM | Email: (empty)<br>Native: Time the document was last modified<br>**This data must be a separate field and cannot be combined with the DATE_MOD field |
| DATE_ACCESSD | 10/12/2010 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD | 07:00 PM | Email: (empty)<br>Native: Time the document was last accessed<br>**This data must be a separate field and cannot be combined with the DATE_ACCESSD field |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb8306d1@MSN> | Email: Unique Message ID Native: (empty) |
| MD5HASH | d131dd02c5e6eec4693d9a0698aff95c 2fcab58712467eab4004583eb 8fb7f89 | MD5 Hash value of the document. |
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

3.    Each Request operates and should be construed independently and, unless otherwise indicated, no Request limits the scope of any other Request.

4.    All Documents are to be produced as kept in the usual course of business or are to be organized and labeled to correspond with the categories in these Requests.

5.     Each Request contained herein extends to all Documents:  (a) in Your possession, custody, or control; or (b) in the possession, custody, or control of anyone acting on Your behalf, including Your counsel or other representatives or advisors.  A Document is to be deemed in Your possession, custody or control if: (a) it is in Your physical custody; or (b) it is in the physical custody of any other Person and You (i) own such Document in whole or in part, (ii) have a right, by contract, statute or otherwise, to use, inspect, examine or copy such Document on any terms, (iii) have an understanding, express or implied, that You may use, inspect, examine, or copy such Document on any terms, or (iv) have, as a practical matter, been able to use, inspect, examine or copy such Document when You sought to do so.  Each Document shall be produced in its entirety.

6.     If You are requested to produce a Document that is no longer in Your possession, custody, or control, then Your response must state:  (a) whether such Document (i) is missing or lost, (ii) has been destroyed, (iii) has been transferred, voluntarily or involuntarily, to others, or (iv) was otherwise disposed of; (b) the reason for, and the facts and circumstances surrounding, such disposition; (c) the Persons who authorized such disposition; (d) the date or approximate date of such disposition; (e) when the Document was most recently in Your possession, custody or control; and (f) the identity of the Person, if any, presently in possession, custody, or control of such Document.

7.     If You are requested to produce a Document that has been destroyed, then Your response must state, in addition to the information required by the preceding Instruction:  (a) the reason for the Document's destruction; (b) the identity of the Person who destroyed the Document; and (c) the identity of the Person who directed that the Document be destroyed.

8.     If You claim that a requested Document is privileged or attorney work-product, then Your response must: (a) state (i) a description of the Document adequate to support Your

contention that the Document is privileged, (ii) the title of the Document, (iii) the date of the Document, (iv) the author of the Document, (v) the addressee of the Document, (vi) the identity of each Person who received or saw the original or any draft, copy, or reproduction of the Document, (vii) whether the Document itself, or any information contained or referred to in the Document is in the possession, custody, or control of any other Persons, and if so, the identity of such Persons, as well as a statement addressing how the information came into their possession, (viii) the claim of privilege under which the Document is withheld, and (ix) all of the circumstances upon which You will rely to support such claim of privilege; and (b) produce a privilege log containing all of the information requested in Part (a) of this Instruction for each Document withheld on the basis of a claim of privilege.  If a portion of an otherwise responsive Document contains information subject to a claim of privilege, only that portion of the Document subject to the claim of privilege shall be deleted or redacted from the Document following the instructions above, and the rest shall be produced.

9.     If You cannot provide a requested Document (after exercising due diligence to secure it) that was formerly in Your possession, custody, or control, then: (a) Your response must (i) describe in detail the nature of the document and its contents, identify the person(s) who prepared or authored the Document (and, if applicable, the Person(s) to whom the Document was sent), and the date of which the document was prepared or transmitted, (ii) state that You cannot produce the requested Document, (iii) specify the reasons for Your inability to produce the requested Document (e.g., lost, destroyed or otherwise disposed of), (iv) declare that You have exercised due diligence to secure the requested Document, and (v) state all information or knowledge that You have concerning the requested Documents; and (b) You must produce all other requested Documents.

10.     The Requests are continuing in nature.  You are hereby instructed to (a) supplement or correct any responses later learned to be incomplete or incorrect immediately upon learning that a prior response was incomplete or incorrect; and (b) produce any additional Documents that are called for under the Requests.

## RULES OF CONSTRUCTION

11.     The use of (a) any singular noun shall be construed to include the plural, and vice versa, and (b) a verb in any tense shall be construed as the use of the verb in all other tenses.

12.     The terms (a) "and" and "or" shall be construed either conjunctively or disjunctively as necessary to bring within the scope of any request all responses that might otherwise be construed to be outside of its scope, and (b) "each" and "any" shall be deemed to include and encompass the words "every" and "all."

## DEFINITIONS[2]

13.     "Oversight Board", "You" or "Your" means and refers to the Financial Oversight and Management Board for Puerto Rico and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on the Oversight Board's behalf, including Proskauer, Citigroup, McKinsey, and any other advisors.

14.     "PREPA" means and refers to the Puerto Rico Electric Power Authority and its governing board, and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members,

---

[2]     Capitalized terms not otherwise defined herein shall have the meanings set forth in the Rule 9019 Motion.

agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on PREPA's behalf.

15.     "AAFAF" means and refers to the Puerto Rico Fiscal Agency and Financial Advisory Authority and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on AAFAF's behalf.

16.     "Citigroup" means and refers to Citigroup Global Markets Inc. and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on Citigroup's behalf.

17.     "Proskauer" means and refers to Proskauer Rose LLP and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on Proskauer's behalf.

18.     "McKinsey" means and refers to McKinsey & Company, Inc. Washington D.C. and any of its affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on McKinsey's behalf.

19.     "Preliminary RSA" has the meaning given to it in the Rule 9019 Motion.

20.     "Proposed Transformation" means and refers to the proposed transformation and modernization of the Puerto Rico electric system, including without limitation the proposed

privatization of PREPA and/or certain of its current functions and operations, including without limitation through an agreement with a Concessionaire.

21.  "<u>RSA</u>" means and refers to the *Definitive Restructuring Support Agreement*, dated as of May 3, 2019, among PREPA, AAFAF, the Oversight Board, and certain Supporting Holders, the exhibits and other materials attached to the RSA, and any and all amendments.

22.  "<u>Rule 9019 Motion</u>" means and refers to the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(A)(I) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Docket No. 1235].

23.  "<u>Settlement</u>" means and refers to all of the proposed settlements embodied within the RSA and the Rule 9019 Motion.

24.  "<u>Supporting Holders</u>" shall include all supporting holders of the RSA, as defined by the preamble of the RSA, and any of those supporting holders' affiliates, parents, subsidiaries, partners, associates, divisions, agencies, instrumentalities, departments, offices, officers, directors, shareholders, members, agents, attorneys, representatives, employees, predecessors or successors in interest and/or anyone acting on those supporting holders' behalf.

25.  "<u>PREPA Trust Agreement</u>" means and refers to the Trust Agreement between PRASA and U.S. Bank N.A., as Successor Trustee, dated as of January 1, 1974, as amended and supplemented through August 1, 2011, attached as Exhibit A to the *Objection of Assured Guaranty Corp. and Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. to the Urgent Joint Motion of Financial Oversight and Management Board for Puerto Rico, and the Puerto Rico Fiscal Agency and Financial Advisory Authority for Entry of Interim and Final Orders (A) Authorizing Postpetition Secured Financing, (B) Granting Priming Liens and Providing*

*Superpriority Administrative Expense Claims, (C) Modifying the Automatic Stay, (D) Scheduling a Final Hearing and (E) Granting Related Relief* [Dkt. No. 585].

26.     "<u>Communication</u>" includes every manner of transmitting or receiving facts, information, opinions, or thoughts from one person to another person, whether orally, by documents, writing, e-mail, text message, web messaging, or any other form of instant messaging, or a copy thereof, and to words transmitted by telephone, radio, or any method of voice recording.

27.     "<u>Concerning</u>" and/or "<u>relating to</u>" means, without limitation:   describing, discussing, constituting, containing, considering, embodying, evaluating, mentioning, memorializing, supporting, collaborating, demonstrating, proving, evidencing, showing, refuting, disputing, rebutting, regarding, controverting, contradicting, made in connection with or by reason of, or derived or arising therefrom.

28.     "<u>Concessionaire</u>" means Duke Energy Corp., Exelon Corp., PSEG Services Corp., the consortium composed of ATCO Ltd., IEM, and Quanta Services Inc., or any other party involved in the privatization or transformation of PREPA, and any of affiliate, parent, subsidiary, partner, associate, division, agency, instrumentality, department, office, officer, director, shareholder, member, agent, attorney, representative, employee, predecessor or successor in interest of the forgoing and/or anyone acting on the foregoing's behalf.

29.     "<u>Document</u>" is used in the broadest sense contemplated by Federal Rules of Civil Procedure, including all materials, documents, electronically stored information and tangible things within the scope of Rule 34(a).  Document means and refers to any writing, thing, record of any type, or description that is or has been in Your possession, control, or custody, or of which You have knowledge, including but not limited to:   agreements; drafts; communications; correspondence; e-mails; text messages; instant messages; web messages; WhatsApp messages;

social media messages; telegrams; cables; facsimiles; memoranda; records; books; financial statements; summaries of records or notes of personal conversations or interview; diaries; calendars; forecasts; statistical statements; accountants work papers; graphs; charts; maps; diagrams; blue prints; tables; indexes; pictures; recordings; tapes; microfilm; charge clips; accounts; analytical records; minutes or records of meetings or conferences; reports and/or summaries of investigations; opinions or reports of consultants; appraisals; reports and/or summaries of negotiations; brochures; pamphlets; circulars; trade letters; press releases; contracts; stenographic, handwritten or any other notes; projections; working papers; federal and state income tax returns; checks, front and back; check stubs or receipts; shipping documents; manifests; invoice vouchers; computer printouts and computer disks and tapes; and tape data sheets or data processing cards or disks or any other written, recorded, transcribed, punched, taped, filmed or graphic matters; however produced or reproduced.  Document also means any electronic copy which is not identical to the original, including metadata and other electronically stored information.

30.    "Including" means "including, but not limited to" and "including, without limitation."

31.    "Person" or "Persons" means any natural or artificial person, business entity or other legal entity, including, but not limited to, individuals, sole proprietorships, associations, companies, firms, partnerships, joint ventures, corporations, employees or former employees, or any other business, governmental, or labor entity, and any divisions, departments, or other units thereof.

## **DOCUMENTS TO BE PRODUCED**

1.      All drafts and prior versions of the RSA, including the Preliminary RSA, and any and all term sheets and exhibits related to such drafts and prior versions.

2.      All documents and communications concerning the Settlement, the RSA and all prior versions and drafts thereof, including but not limited to the Preliminary RSA, including communications with (a) AAFAF, (b) PREPA or any member of its governing board, (c) any Supporting Holder, (d) any Concessionaire, (e) any creditor or stakeholder of PREPA other than a Supporting Holder, (f) the news media, (g) any government official or employee, or (h) any agent of or advisor to any of the foregoing.

3.      All documents and communications concerning the Settlement, the RSA, and all prior versions and drafts thereof, including but not limited to the Preliminary RSA, exchanged between (i) the Oversight Board or any member of the Oversight Board and (ii) Citigroup or McKinsey.

4.      All documents and communications concerning Your analysis of the impact of the RSA on creditors of PREPA other than the Supporting Holders and their recoveries under a plan of adjustment, including documents and communications relating to the Oversight Board's, AAFAF's, and/or PREPA's analysis regarding whether the RSA leaves all other creditors unaffected, as referred to in paragraph 65 of the Rule 9019 Motion.

5.      All documents received and considered by You in determining whether to enter into the Settlement.

6.      All documents and communications concerning all amounts to be paid to the Supporting Holders under the Settlement and RSA, including without limitation, (i) interest on the Bonds through May 1, 2019; (ii) the Settlement Payments; (iii) Increased Settlement Payments;

(iv) the Administrative Claim as set forth in Section 2(d) of the RSA; (v) the Waiver and Support Fees set forth in Section 4 of the RSA; and (vi) the total amount of fees and expenses to be paid to the Ad Hoc Group and Assured set forth in Section 22 of the RSA.

7.      All documents and communications concerning all amounts to be paid to the Supporting Holders under the Settlement and RSA in the event that a Securitization Termination occurs, including without limitation, (i) interest on the Bonds through May 1, 2019; (ii) the Settlement Payments; (iii) Increased Settlement Payments; (iv) the Administrative Claim as set forth in Section 2(d) of the RSA; (v) the Waiver and Support Fees set forth in Section 4 of the RSA; and (vi) the total amount of fees and expenses to be paid to the Ad Hoc Group and Assured set forth in Section 22 of the RSA.

8.      All documents and communications concerning any alternative restructuring or litigation strategies or transactions considered by the Oversight Board, AAFAF, and/or PREPA, as referred to in paragraph 50 of the Rule 9019 Motion.

9.      All documents and communications concerning the Oversight Board's, AAFAF's, and/or PREPA's analysis of the ability of Puerto Rico's electric system to absorb and pass on the Settlement Charge and Transition Charge, as referred to in paragraph 9 of the Rule 9019 Motion.

10.      All documents and communications concerning the statements in paragraph 1 of the Rule 9019 Motion that (i) "transformation of PREPA into a dependable and efficient energy provider will be facilitated by resolution of PREPA's debt," (ii) "clarity as to PREPA's exit from Title III will reduce complexities in and challenges to the agreements related to the transformation, including investments in PREPA to fund the transformation," and (iii) "[d]elaying the debt restructuring may . . . delay PREPA's transformation, to the detriment of Puerto Rico, its people, its businesses, and its creditors."

11.     All documents and communications concerning the effect, if any, of the Settlement on the Proposed Transformation, including all documents and communications concerning the statement in paragraph 64 of the Rule 9019 Motion that the RSA "will facilitate the PREPA transformation process."

12.     All documents and communications concerning the current state and estimated date for completion of the Proposed Transformation.

13.     All documents and communications concerning the assertions in paragraph 42 of the Rule 9019 Motion, including all documents and communications concerning (a) the benefits or costs of the Settlement to PREPA and/or Puerto Rico, (b) the extent to which the Settlement will "facilitate[e] transformation and modernization of the power sector," and (c) the extent to which the benefits of the Settlement "outweigh the chances of success and risk in litigation . . . and the time and expense of that litigation, even if the Government Parties have to litigate against non-settling creditors."

14.     All documents and communications concerning the benefits, if any, of the Settlement to PREPA or Puerto Rico in the event that the Government Parties (i) litigate against non-settling bondholder creditors concerning the scope of their alleged security interests and (ii) prevail in that litigation.

15.     All documents and communications concerning the Oversight Board's, AAFAF's, and/or PREPA's analysis regarding whether the bondholders of PREPA have meritorious defenses that the security interests are valid, as referred to in paragraph 58 of the Rule 9019 Motion.

16.     All documents and communications concerning the ability of PREPA to provide consideration to other creditors of PREPA if the RSA is approved, including without limitation, the value of any and all assets not being pledged to the Supporting Holders under the Settlement

and RSA and the ability of PREPA to pass on additional rate surcharges for the benefit of the other creditors beyond the Settlement Charge and Transition Charge.

17.     All documents and communications exchanged between You and the Puerto Rico Energy Bureau concerning the Settlement Charge and/or the Transition Charge.

18.     All documents and communications exchanged between You and the Puerto Rico legislature concerning the Settlement Charge and/or the Transition Charge.

19.     All documents and communications concerning any legislation that would need to be passed to implement the Settlement Charge, the Transition Charge, or any other aspect of the Settlement, including documents and communications concerning the status of such legislation and any alternative plans or strategies in the event such legislation is not passed.

20.     All documents and communications concerning the nature, extent, and value of any security interest that PREPA bondholders hold in assets of PREPA, including the extent to which the value of such security interest has decreased since PREPA's title III petition date.

21.     For each of the General Fund, the Revenue Fund, the Reserve Maintenance Fund, the Self-Insurance Fund, and the Capital Improvement Fund established pursuant to the PREPA Trust Agreement (each, a "Fund"):

(a)     Documents sufficient to show the bank or banks in which moneys credited (and/or required by the PREPA Trust Agreement to be credited) to such Fund are deposited or held (each, a "Depositary Bank").

(b)     Documents sufficient to show the deposit account or deposit accounts in which such moneys are deposited or held (each, a "Deposit Account"), identified by account number and location.

(c)     Documents sufficient to show the identity of the customer/account holder with respect to each Deposit Account, including (a) the name on each Deposit Account and (b) whether such name indicates that a security interest is held in such Deposit Account by any person or entity, including the Trustee, any holder of PREPA Bonds, any insurer of PREPA Bonds, or any other person or entity representing or purported to represent, or acting or purporting act on behalf of any holder of PREPA Bonds (each, a "Secured Party").

(d)     All account documentation relating to each Deposit Account.

(e)     All agreements among PREPA, any Secured Party, and any Depositary Bank (including all agreements commonly called or referred to as "deposit account control agreements").

22.     For all other deposit accounts of PREPA not identified pursuant to Request No. 21 above, documents sufficient to show (i) the account number, bank, and location, (ii) the identity of the customer/account holder, including the name on the account and whether a security interest exist in such account, and (iii) all deposit account control agreements and other agreements among PREPA, any Secured Party, and any bank concerning such account.

23.     For (i) each of the Funds and (ii) the Sinking Fund established pursuant to the PREPA Trust Agreement:

(a)     Documents sufficient to show the investment bank, broker or other securities intermediary or securities intermediaries (each, a "Securities Intermediary") with respect to all securities accounts relating to any investment of the moneys credited (and/or required by the PREPA Trust Agreement to be credited) to such Fund (each, a "Securities Account").

(b)     Documents sufficient to show the Securities Accounts (identified by number and location).

(c)     All account documentation relating to each Securities Accounts.

(d)     All agreements among PREPA, any Secured Party, and any Securities Intermediary (including all agreements commonly called or referred to as "securities account control agreements").

24.     For all other securities accounts of PREPA not identified pursuant to Request No. 23 above, documents sufficient to show (i) the number and location of the account, (ii) the Securities Intermediary with respect to such account, and (iii) all securities account control agreements and other agreements among PREPA, any Secured Party, and any Securities Intermediary concerning such account.

25.     All documents and communications consisting of any spreadsheets or models concerning projected revenues from the sale of electricity or other revenue sources in Puerto Rico.

26.     All documents and communications concerning projected demand forecasts, sales forecasts, electricity pricing forecasts, and related assumptions for electricity in Puerto Rico, including the effect, if any, of the Settlement (including the Settlement Charge and/or the Transition Charge) on such forecasts, pricing, and assumptions, and any spreadsheets or models concerning the same.

27.     All documents and communications requested by Requests 11 through 21 in the *First Set of Document Requests of Cortland Capital Market Services LLC, as administrative agent, and Solus Alternative Asset Management LP to Financial Oversight and Management Board for Puerto Rico, the Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Authority*.

28.     All documents produced to any other party in connection with the Rule 9019 Motion.

29.     All documents and communications that You intend to use as exhibits or otherwise rely on at the hearing on the Rule 9019 Motion.

*[Remainder of page intentionally left blank.]*

Dated:  May 22, 2019
San Juan, Puerto Rico

*/s/ Nicholas A. Bassett*

PAUL HASTINGS LLP
Nicholas A. Bassett, Esq. (*Pro Hac Vice*)
875 15th Street, N.W.
Washington, D.C. 20005
Tel:  (202) 551-1700
nicholasbassett@paulhastings.com

Luc. A. Despins, Esq. *(Pro Hac Vice)*
200 Park Avenue
New York, New York 10166
Tel:  (212) 318-6000
lucdespins@paulhastings.com

*Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors (except for
COFINA) for request to the Oversight Board,
Proskauer, and McKinsey*

- and –

*/s/ John Arrastia*
John H. Genovese, Esq. (*Pro Hac Vice*)
John Arrastia, Esq. (*Pro Hac Vice*)
Jesus M. Suarez, Esq. (*Pro Hac Vice*)
Mariaelena Gayo-Guitian, Esq. (*Pro Hac Vice*)
GENOVESE JOBLOVE & BATTISTA, P.A
100 SE 2nd Street, Suite 4400
Miami, Florida 33131
Tel: 305-349-2300
jgenovese@gjb-law.com
jarrastia@gjb-law.com
jsuarez@gjb-law.com
mguitian@gjb-law.com

*Counsel to the Official Committee of Unsecured
Creditors for all Title III Debtors (except for
COFINA) for request to Citigroup*

- and-

*/s/ Juan J. Casillas Ayala*

CASILLAS, SANTIAGO & TORRES LLC
Juan J. Casillas Ayala, Esq., USDC - PR 218312
Diana M. Batlle-Barasorda, Esq., USDC - PR 213103
Alberto J. E. Añeses Negrón, Esq., USDC - PR 302710
Ericka C. Montull-Novoa, Esq., USDC - PR 230601
El Caribe Office Building
53 Palmeras Street, Ste. 1601
San Juan, Puerto Rico 00901-2419
Telephone: (787) 523-3434
jcasillas@cstlawpr.com
dbatlle@cstlawpr.com
aaneses@cstlawpr.com
emontull@cstlawpr.com

*Local Counsel to the Official Committee of Unsecured Creditors for all Title III Debtors (except for COFINA)*