Hearing Date: June 14, 2019
Response Deadline: June 7, 2019
Reply Deadline: June 10, 2019

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

-------------------------------------------------------------x
:
*In re*  :
:  PROMESA
THE FINANCIAL OVERSIGHT AND  :  Title III
MANAGEMENT BOARD FOR PUERTO RICO,  :
:
    as representative of  :  Case No. 17-BK-3283 (LTS)
:
THE COMMONWEALTH OF PUERTO RICO,  :  (Jointly Administered)
*et al.*,[*]  :
:
      Debtors.  :
:
-------------------------------------------------------------x
:
*In re*  :
:  PROMESA
THE FINANCIAL OVERSIGHT AND  :  Title III
MANAGEMENT BOARD FOR PUERTO RICO,  :
:
    as representative of  :  Case No. 17-BK-04780 (LTS)
:
PUERTO RICO ELECTRIC POWER  :  **Court Filing Relates Only to PREPA**
AUTHORITY (PREPA),  :
:
      Debtor.  :
:
-------------------------------------------------------------x

### OMNIBUS MOTION OF CORTLAND CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT, AND SOLUS TO COMPEL DISCOVERY RESPONSES IN CONNECTION WITH PREPA RSA SETTLEMENT MOTION

---

[*]     The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

JURISDICTION AND VENUE ..............................................................................................5

RELEVANT BACKGROUND ...............................................................................................5

    A.    The Fuel Line Lenders' Claims ........................................................... 5

    B.    The Proposed Bond Settlement.......................................................... 7

    C.    The Present Discovery Dispute.......................................................... 9

ARGUMENT ...........................................................................................................................13

    A.    The Settlement Proponents' refusal to respond to discovery requests regarding
priority issues means that they cannot present argument or evidence regarding
those issues in connection with the Settlement Motion. .............................................. 13

    B.    If the Settlement Proponents seek to present evidence or argument concerning
the priority of the Fuel Line Lenders' claims, the Fuel Line Lenders are
entitled to discovery on that topic. ............................................................................... 15

    C.    The Court should compel the Settlement Proponents to produce documents
beyond those produced in the prior Lift Stay Litigation............................................... 17

    D.    Cortland and Solus join in the motion to compel filed by the Official
Committee of Unsecured Creditors. ............................................................................. 18

RESERVATION OF RIGHTS ...............................................................................................19

CONCLUSION........................................................................................................................19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Autoridad de Carreteras y Transportacion* v. *Transcore Atl., Inc.*,
   319 F.R.D. 422 (D.P.R. 2016) ................................................................. 16

*Baez Cruz* v. *Municipality of Dorado*,
   780 F. Supp. 2d 154 (D.P.R. 2011) .......................................................... 14

*Diaz-Garcia* v. *Surillo-Ruiz*,
   45 F. Supp. 163 (D.P.R. 2014) ................................................................. 16

*Donovan* v. *Prestamos Presto Puerto Rico, Inc.*,
   91 F.R.D. 222 (D.P.R. 1981) .................................................................... 13

*Gilliland* v. *Hergert*,
   No. 2:05-cv-01059, 2008 WL 2682587 (W.D. Pa. July 1, 2008) ............ 15

*In re Smith*,
   No. 14-21261, 2017 WL 1190590 (Bankr. D. Conn. Mar. 29, 2017) ...... 16

*Oppenheimer Fund, Inc.* v. *Sander*s,
   437 U.S. 340 (1978) .................................................................................. 13

*Ortiz-Lopez* v. *Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de Puerto Rico*,
   248 F.3d 29 (1st Cir. 2001) ...................................................................... 14

*Republic Tobacco, L.P.* v. *N. Atl. Trading Co.*,
   254 F. Supp. 985 (N.D. Ill. 2002) ............................................................ 15

*S.E.C.* v. *Grossman*,
   887 F. Supp. 649 (S.D.N.Y. 1995) .......................................................... 15

*S.E.C.* v. *Sargent*,
   229 F. 3d 68 (1st Cir. 2000) ..................................................................... 13

*Skytec, Inc.* v. *Logistic Sys., Inc.*,
   No. CV 15-2104-BJM, 2018 WL 4372726 (D.P.R. Sept. 12, 2018) ........ 16

**Rules**

FED. R. BANKR. P. 7026 ................................................................................................ 13

FED. R. CIV. P. 26(a)(1)(A)(ii) ...................................................................................... 14

FED. R. CIV. P. 26(b)(1) ............................................................................................... 13

FED. R. CIV. P. 37(c)(1) ............................................................................................... 14

FED. R. CIV. P. 37(d)(2) ............................................................................................... 16

Cortland Capital Market Services LLC ("Cortland" or the "Agent"), as successor administrative agent[1] for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank, and the lenders party thereto (as amended, the "Scotiabank Credit Agreement"), and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders to PREPA under a certain Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and Citibank, N.A., as predecessor to the existing lenders thereunder (as amended, the "Trade Finance Facility Agreement," or the "Citibank Credit Agreement" and together with the Scotiabank Credit Agreement, the "Fuel Lines"), respectfully submit this motion to compel the Financial Oversight and Management Board for Puerto Rico (the "Oversight Board"), PREPA and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF," together with the Oversight Board and PREPA, the "Settlement Proponents") to produce documents and respond to interrogatories in connection with the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922, and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 1235] (the "Settlement Motion").[2]

## PRELIMINARY STATEMENT

1.       Aside from the bondholders, the Fuel Line Lenders are the main financial creditors of PREPA.  Beginning in 2012, the Fuel Line Lenders extended $700 million in

---

[1]       Effective May 17, 2019, Cortland replaced Scotiabank de Puerto Rico ("Scotiabank") as administrative agent for lenders under the Scotiabank Credit Agreement.

[2]       Capitalized terms not defined have the same meanings as in the Settlement Motion.  The lenders under the Fuel Lines are referred to as the "Fuel Line Lenders" and the approximately $700 million in loans they made to PREPA are referred to as the "Fuel Line Advances."

working capital to PREPA[3] to permit PREPA to purchase the fuel needed to operate its system. The Fuel Line Advances were made in reliance on PREPA's express agreement that all such advances were "Current Expenses" under the Trust Agreement governing PREPA's bond debt — meaning that they had to be repaid in full *ahead* of the bonds and *before* PREPA's revenues were deposited into accounts on which the bondholders had any lien. The legal priority of the Fuel Lines was enshrined in numerous documents, including credit agreements, government resolutions, and the offering documents for the bonds themselves, which confirmed to bondholders that their debt would be subordinate to the Fuel Lines.

2.      In light of their priority rights, the Fuel Line Lenders believe that — absent their agreement — any plan of adjustment will have to satisfy their claims in full ahead of the claims of PREPA's bondholders. The Fuel Line Lenders have actively sought to negotiate a consensual resolution, but to date the Oversight Board and AAFAF have declined to engage with the Fuel Line Lenders.

3.      Against this backdrop, the Fuel Line Lenders are investigating at least two objections to the Settlement Motion. <u>First</u>, although the Oversight Board has asserted that "[t]he rights of all other creditors are left unprejudiced and unaffected" by the settlement (Settlement Motion ¶ 65), that does not appear to be true. The settlement, rather than preserving the status quo for the Fuel Lines, including the opportunity to vindicate their priority rights, in large measure predetermines the issue of priority — *against the Fuel Line Lenders*. Under the settlement, the bondholders will get paid significant amounts, prior to approval of any plan,

---

[3]      As of the date of their proof of claim, lenders under the Scotiabank Credit Agreement were also owed $45,958,492.80 on account of accrued interest, as well as additional costs and expenses. *See* Claim No. 44378, Annex ¶ 7. As of the date of Solus's proof of claim, lenders under the Trade Finance Facility were also owed $11,075,323.70 on account of accrued interest, as well as additional costs and expenses. See Claim No. 44342, Annex ¶ 7 & Ex. A. Additional interest, costs and expenses have since accrued.

before the Fuel Line Lenders are paid anything.  The RSA also includes a "Most Favored

Nations" clause, under which the Oversight Board is precluded from proposing a plan that

provides a greater recovery to the Fuel Lines than to the bonds.  RSA § 23.  The RSA goes even

further, apparently providing a veto to bondholders over *any* restructuring agreement between

the Oversight Board and the Fuel Line Lenders, no matter the terms.  RSA § 7(a)(x).

4.  <u>Second</u>, separate and apart from priority issues, the settlement contemplates

allowance of a secured claim in favor of the bondholders equal to at least 67.5% of their

principal and accrued interest.  Based on the facts available regarding the limited scope and value

of the bondholders' lien, the settlement consideration being provided by the Oversight Board to

the bondholders appears to be well above any reasonable range.

5.  To gather facts relating to the settlement, the Fuel Line Lenders served document

requests and interrogatories on the Oversight Board, PREPA and AAFAF.  In response, the

Oversight Board, PREPA and AAFAF have refused to answer a single interrogatory or to

produce many of the documents requested.  Following a meet-and-confer, several disputes have

crystallized:  <u>First</u>, the Oversight Board, PREPA and AAFAF have all taken the position that the

priority rights of the Fuel Line Lenders, and in particular the merits of any dispute regarding

priority, "*have no bearing*" on the Settlement Motion.  Based on that position, they have refused

to produce documents or other information in response to numerous requests.  <u>Second</u>, in

responding to various document requests, including certain requests regarding the bondholders'

liens, PREPA and AAFAF have stated that they will only produce documents that were

previously produced in connection with the *Motion of National Public Finance Guarantee Corp.,*

*Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for*

*Relief from the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a*

*Receiver Appointed* [Dkt. No. 975] (Oct. 3, 2018) ("Lift Stay Motion").  Third, the Settlement Proponents proposed very limited search parameters for documents relating to the RSA.  Along with the Official Committee of Unsecured Creditors, Cortland and Solus have sought broader and more appropriate search parameters.

6.       The Fuel Line Lenders have sought to resolve those disputes consensually.  As regards discovery relating to priority issues, given the position of the Oversight Board, PREPA and AAFAF that those issues have "*no bearing*" on approval of the settlement, the Fuel Line Lenders have suggested that the discovery could be avoided if the Settlement Proponents would confirm, consistent with their discovery responses, that they will *not* argue the merits of the priority issue, but instead will argue only that the Settlement Motion should be approved *regardless* of whether the Fuel Line Lenders have priority.  On the other hand, if the Settlement Proponents intend to argue the merits of the priority issue, their "no bearing" argument does not hold up and they should already have produced responsive documents.

7.       As regards document requests that AAFAF and PREPA have answered by offering to produce only those documents that were produced in connection with the Lift Stay Motion, the Fuel Line Lenders have sought information regarding the scope of that prior production.  However, based on information provided by AAFAF and PREPA hours before the deadline for this motion, it is apparent that the documents produced in connection with the Lift Stay litigation are *not* sufficient.  The Fuel Line Lenders will continue to seek resolution of this issue, but in the meantime are constrained to seek the Court's intervention.

8.       Finally, as regards search parameters and privilege issues, the Fuel Line Lenders have been coordinating with the Creditors' Committee to negotiate with the Settlement Proponents.  Given the inadequate search parameters and overbroad assertions of privilege, the

Fuel Line Lenders join in the Committee's motion to compel regarding those matters.  As set forth in the Committee's motion to compel, the Settlement Proponents cannot, on the one hand, seek expedited approval of a settlement that will dictate the terms of any plan of adjustment while, on the other hand, refusing to produce basic documents needed to evaluate and challenge the settlement.

## JURISDICTION AND VENUE

9.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA § 306(a).

10.     Venue is proper subject to PROMESA § 307(a).

## RELEVANT BACKGROUND

**A.      The Fuel Line Lenders' Claims**

11.     Cortland is administrative agent for lenders under the Scotiabank Credit Agreement, pursuant to which approximately $550,000,000 in principal is currently outstanding. *See* Claim No. 44378.  Substantial interest and other amounts are also owed under the Scotiabank Credit Agreement.

12.     Solus is a lender under both the Scotiabank Credit Agreement and the Trade Finance Facility Agreement.  Approximately $146,000,000 in principal is currently outstanding under the Trade Finance Facility Agreement.  *See* Claim No. 44342.  Substantial interest and other amounts are also owed under the Trade Finance Facility Agreement.

13.     The Fuel Line Lenders made the Fuel Line Advances at a time when PREPA had bond debt outstanding under the Trust Agreement dated as of January 1, 1974 (the "Trust Agreement").  Unlike PREPA's bond debt, however, the Fuel Line Facilities had a specific and

narrow purpose: "to finance [PREPA's] working capital requirements, classified as Current

Expenses (as defined in the Trust Agreement), including but not limited to fuel oil purchases."[4]

14.     The Fuel Line Lenders agreed to extend credit to PREPA — at relatively modest

interest rates — on the express agreement and representation by PREPA and its representatives

that the Fuel Line Advances would be treated as "Current Expenses" under the Trust Agreement

and would be repaid prior to the bond debt under the Trust Agreement.  In addition, under the

Trust Agreement, the security interest, if any, granted to the bonds extended only to specified

accounts to which PREPA was permitted to transfer "*Net* Revenues" (namely revenues *after*

payment of Current Expenses such as the Fuel Line Advances).

15.     The governing loan agreements, as well as the full array of resolutions and other

documents confirming the priority status of the Fuel Line Advances, are described in greater

detail in the *Motion of Scotiabank de Puerto Rico, as Administrative Agent, and Funds Advised*

*by Solus Alternative Asset Management LP for Leave to Intervene* [Case No. 17-00232, Dkt.

No. 24] (Sept. 12, 2017) (the "Intervention Motion").  The Fuel Line Lenders have repeatedly

made clear, not only in the Intervention Motion but also in their proofs of claim and in many

other communications, that they have priority status as Current Expenses.[5]  At the same time, the

Fuel Line Lenders have repeatedly sought to negotiate a consensual restructuring agreement with

---

[4]      Scotiabank Credit Agreement § 5.08; Trade Finance Facility Agreement § 5.08.

[5]      *See, e.g.*, Intervention Motion; *Limited Objection and Reservation of Rights of Scotiabank de Puerto Rico, as Administrative Agent, and Solus Alternative Asset Management LP to Receiver Motion* [Dkt. No. 1207] (Apr. 30, 2019); *Limited Reply of Scotiabank de Puerto Rico, As Administrative Agent, and Solus Alternative Asset Management LP in Support of Urgent Motion for Entry of an Order Authorizing Postpetition Secured Financing* [Dkt. No. 687] (Feb. 12, 2018); *Response and Limited Objection of Scotiabank de Puerto Rico, as Administrative Agent, to Urgent Motion for Entry of an Interim Order Authorizing Postpetition Secured Financing* [Dkt. No. 572] (Feb. 1, 2018); Claim Nos. 44378, 44342.

the Oversight Board and AAFAF side by side with the bondholders.  To date, however, the

Oversight Board and AAFAF have declined to engage with the Fuel Line Lenders to negotiate a

consensual resolution.

**B.    The Proposed Bond Settlement**

16.      On May 10, 2019, Oversight Board filed the Settlement Motion, which

contemplates a settlement of claims with certain of PREPA's bondholders embodied in the

Restructuring Support Agreement ("RSA") attached as Exhibit A to the proposed order

approving the Settlement Motion.  *See* Dkt. No. 1235.

17.      As summarized above, the RSA includes provisions that appear to prejudice the

Fuel Line Lenders by predetermining critical issues that are normally addressed under a plan.

For example, despite PREPA's agreement that the Fuel Line Lenders would be paid prior to the

bonds, the RSA provides that the settling bondholders will receive payments from PREPA —

before any payments are made to the Fuel Line Lenders — during the pendency of these Title III

cases.  *See* RSA § 2(d) (describing requirement that PREPA make monthly "Settlement

Payments" to bondholders based on a charge to be imposed by PREPA on its customers).

18.      In addition, as noted, the RSA includes a "Most Favored Nations" clause

providing that no financial creditor of PREPA, including the Fuel Line Lenders, may receive

more favorable treatment than the settling bondholders.  *See* RSA § 23.  Indeed, under the RSA,

the Oversight Board cannot reach an agreement with the Fuel Line Lenders on *any* treatment

without the prior consent of the requisite bondholder parties.  RSA § 7(a)(x).  In form and

substance, those clauses appear to prevent the Oversight Board from proposing a plan that

respects the Fuel Line Lenders' state-law priority rights.

19.      The RSA also contemplates that bondholders will receive a secured claim against

PREPA.  If the settlement is approved and securitization bonds are issued under a confirmed plan

providing the treatment set forth in the RSA, bondholders will receive an allowed secured claim

"for plan distribution purposes" in an amount equal to their treatment under the settlement, *i.e.*,

67.5% of principal amount (plus interest accrued at the contract rate through May 1, 2019) of

outstanding bonds held or insured by Supporting Holders in Tranche A Bonds and 10% of

principal amount of outstanding bonds held or insured by Supporting Holders in Tranche B

Bonds.  Dkt. No. 1235-1 Ex. A ¶ 15.  Even if the securitization transaction does not occur,

consenting bondholders will still receive an allowed secured claim against PREPA's Net

Revenues in the amount of approximately 73% of the principal amount (plus interest accrued at

the contract rate through May 1, 2019).  *Id.*; RSA §§ 2(c)(i), 9(b).  The Oversight Board has

agreed to allow these secured claims despite its own consistent position that, in light of the

limited nature of the bondholders' security interest in specified accounts, the alleged security

interest "has no value."[6]

20.    In addition, the RSA provides that bondholders will receive administrative claims

in an amount equivalent to the Tranche A Bond interest payments accrued in respect of the bonds

(less the amount of Settlement Payments), commencing as early as May 1, 2019, which

administrative claims will have to be paid in full on the effective date of any plan.  RSA § 2(d).

---

[6]    *See, e.g.*, *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of
Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured
Guaranty Corp., and Syncora Guarantee Inc. for Relief from Automatic Stay* at 17-18 [Dkt. No. 149]
(July 31, 2017) ("Because PREPA's Net Revenues are negative . . . [PREPA's bondholders] have no
collateral value . . . ."); *Decl. of Kevin Lavin in Support of Opposition of Financial Oversight and
Management Board for Puerto Rico to Motion of Ad Hoc Group of PREPA Bondholders, National Public
Finance Guaranty Municipal Corp., Assured Guaranty Corp., and Syncora Guarantee Inc. for Relief
from Automatic Stay to Enforce their Statutory Right to Have a Receiver Appointed* ¶ 11 [Dkt. No. 149-1]
(July 31, 2017).

### C.   The Present Discovery Dispute

21.   In light of the issues raised by the Settlement Motion, and pursuant to the

Discovery and Scheduling Order entered by Judge Swain,[7] on May 22, 2019 the Fuel Line

Lenders served requests for document production and interrogatories on the Settlement

Proponents.  The requests for production are attached as Exhibit A; the interrogatories are

attached as Exhibit B.

22.   In addition to seeking documents and information about the terms and negotiation

of the RSA, the Fuel Line Lenders propounded requests regarding the Fuel Line Advances and,

in particular, the priority status of those loans.  Specifically:

- RFPs 5 and 6 requested communications between the Settlement Proponents and
  PREPA's bondholders "regarding the status of the Fuel Line Loans as Current
  Expenses and the treatment or priority afforded to the Fuel Line Loans."  *See* Ex.
  A at 12.

- RFPs 8-10 requested documents showing PREPA's pre-petition borrowing
  requests and repayments under the Fuel Line Loans. *See* Ex. A at 13.

- RFP 15 sought "All Documents, including all reports, filed with PREPA on or
  after May 4, 2012 by the Consulting Engineers pursuant to section 706 of the
  Trust Agreement." *See* Ex. A at 13.

- RFPs 22 and 23 sought documents "relating to the Current Expense treatment or
  priority of loans" made under each of the Scotiabank Credit Agreement and the
  Citibank Credit Agreement. *See* Ex. A at 15-16.

- Interrogatories 3 and 4 sought identification of the individuals involved in the
  negotiation of the Fuel Line Loans. *See* Ex. B at 7.

- Interrogatory 6 sought identification of the individuals involved in issuing
  borrowing requests under the Fuel Line Loans. *Id.* at 7-8.

---

[7]   *See Order Extending and Establishing Certain Deadlines Applicable to the Joint Motion of
Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922,
and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the
Restructuring Support Agreement [ECF No. 1235]* [Dkt. No. 1253] (the "Discovery and Scheduling
Order").

23.     The Fuel Line Lenders also propounded requests relating to a central dispute

being compromised in the RSA:  the amount and scope of the security interest asserted by

PREPA's bondholders.[8]  Specifically:

- RFPs 12-14 sought offering memoranda, PREPA board resolutions and materials concerning PREPA board meetings relating to the issuance of outstanding bonds. *See* Ex. A at 13.

- RFPs 16-18 sought documents showing the amount of PREPA's Current Expenses, gross revenues and net revenues.  *See* Ex. A at 14.

- RFP 19 sought "All Documents underlying, relied upon or supporting paragraphs 9 through 12 of the Lavin Declaration," filed by PREPA in opposition to the Lift Stay Motion, in which PREPA's financial advisor testified that PREPA was not projected to have *any* net revenues in 2018.  Dkt. No. 149-1.  *See* Ex. A at 14.

- RFP 20 and 21 sought documents showing the balance of, and the location and control of, the various accounts that are discussed in the Trust Agreement. *See* Ex. A at 14-15.

- Interrogatory 2 requested identification of "Persons with knowledge of any collateral securing the Bonds and its value, including whether or not the Bonds are oversecured or undersecured."  *See* Ex. B at 7.

24.     On May 29, 2019, the Oversight Board, AAFAF and PREPA served responses

and objections to the Fuel Line Lenders' requests.[9]  The responses served by the Settlement

Proponents all stated unequivocally that the Fuel Line Lenders' priority status — and the merits

of any dispute relating to priority — have no relevance to the Settlement Motion and, in

particular, have "**no bearing** on whether the RSA falls above the lowest point in the range of

---

[8]     These requests are, in some cases, also relevant to the priority and "Current Expense" issue.

[9]     The Oversight Board's responses and objections to the Fuel Line Lenders' requests for document production are attached as Exhibit C, and the Oversight Board's responses and objections to the Fuel Line Lenders' interrogatories are attached as Exhibit D.  AAFAF's responses and objections to the Fuel Line Lenders' requests for document production are attached as Exhibit E, and AAFAF's responses and objections to the Fuel Line Lenders' interrogatories are attached as Exhibit F.  PREPA's responses and objections to the Fuel Line Lenders' requests for document production are attached as Exhibit G, and PREPA's responses and objections to the Fuel Line Lenders' interrogatories are attached as Exhibit H.

reasonableness, and should therefore be approved under Rule 9019." *See* Exhibits C-H

(emphasis added).  Specifically:

- In response to RFP 5, the Oversight Board stated that "**[t]he status of the Fuel Line Loans and payment priorities between the Fuel Line Lenders and the Bondholders has no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019**." Ex. C at 14 (emphasis added).  The Oversight Board provided a nearly identical response to RFP 6, as did AAFAF and PREPA in response to RFPs 5 and 6.  *See* Ex. C at 15, Ex. E at 12-13, Ex. G at 12-13.

- Likewise, in response to RFPs 8-10, the Settlement Proponents took the position that the history of borrowings and repayments under the Fuel Line Loans have "no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." Ex. C at 17-19.  *See* Ex. E at 14-16, Ex. G at 14-16 (providing nearly identical responses).

- In response to RFPs 22 and 23, the Settlement Proponents each stated that "[p]riority of loans made under the [Citibank Credit Agreement and Scotiabank Credit Agreement] have no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." Ex. C at 28-30; *see also* Ex. E at 25-26, Ex. G at 24-26 (providing nearly identical responses).

- In response to Interrogatories 3, 4 and 6, AAFAF and PREPA responded that the negotiation of the Scotiabank Credit Agreement and the Citibank Credit Agreement and borrowing requests thereunder "have no bearing whatsoever on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." *See* Ex. F at 9-10, Ex. H at 9-10.  The Oversight Board stated that the information requested related to the Fuel Line Lenders' claims "that are irrelevant to the Rule 9019 Motion." Ex. D at 10-11.

25.     The Oversight Board, AAFAF and PREPA's responses to the Fuel Line Lenders'

requests for information relevant to the bondholders' secured claims were also unsatisfactory.  In

particular:

- The Oversight Board responded that *all* of RFPs 11, 14, 15, 16, 17, 18, 19, 20 and 21 requested documents that "have no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019," and that RFPs 12 and 13 are "beyond the scope of legitimate or necessary discovery in connection with the Court's consideration of the 9019 Motion." Ex. C at 19-28.

- With respect to RFPs 12, 14, 15, 16, 17, 18, 20 and 21, AAFAF and PREPA stated that they would only produce responsive documents "to the extent they have already been produced in connection with the Lift Stay Motion." Ex. E at 17, 19-23, 25; Ex. G at 16-24. Like the Oversight Board, AAFAF and PREPA refused to produce documents pursuant to RFP 19 concerning their advisor's prior statement that PREPA had no net revenues for the bondholders' lien to attach to. Ex. E at 22-23; Ex. G at 22.

- Despite supporting a settlement that grants the bondholders large secured claims, AAFAF and PREPA stated in response to the interrogatories that they "[do] not concede that the Bonds are secured," Ex. F at 8; Ex. H at 8, and that the preparation of the budgets "has no bearing on whether the RSA falls above the lowest point in the range of reasonableness, and should therefore be approved under Rule 9019." Ex. F at 10, 12; Ex. H at 10, 11.

26.     In addition, although AAFAF and PREPA agreed to produce documents in response to the Fuel Line Lenders' requests for documents concerning the negotiation and terms of the RSA, they only agreed to produce third-party communications from the files of two of AAFAF's outside lawyers, Nancy Mitchell and Maria DiConza. *See* Ex. E at 9-12, 14; Ex. G at 9-12, 14. This is plainly inadequate because, among other things, AAFAF and PREPA have identified Christian Sobrino, Chief Executive Officer of AAFAF, and Fernando Batlle, Senior Managing Director of Ankura Consulting Group, as potential witnesses that they may call in the hearing on the Settlement Motion.[10] In addition, AAFAF and PREPA proposed only to search for external communications and not any internal documents concerning the RSA.

27.     On May 31, 2019, counsel for the Fuel Line Lenders met and conferred with counsel for the Oversight Board, AAFAF and PREPA. In that discussion, the Fuel Line Lenders suggested that, in light of the Settlement Proponents' position that the status of the Fuel Line Advances as Current Expenses and the payment priorities between the Fuel Line Advances and

---

[10]     Shortly before this filing, the Creditors' Committee advised that AAFAF and PREPA have agreed to produce certain documents from the files of Christian Sobrino (but not from other witnesses), and that Ankura would separately produce documents from Mr. Batlle and others in response to a separate subpoena directed to Ankura.

the loans "have no bearing" on the Settlement Motion, discovery on those matters could be

deferred if the Settlement Proponents would confirm that they would not make arguments

regarding the merits of the Fuel Line Lenders' priority in connection with the Settlement Motion.

28.     With respect to the lien issues, AAFAF and PREPA agreed to provide more

information to allow the Fuel Line Lenders to assess the sufficiency of the prior production in

connection with the Lift Stay Motion.  On the afternoon of June 3, hours before the deadline for

this motion, AAFAF and PREPA sent the letter attached hereto as Exhibit I.

## ARGUMENT

29.     Parties may obtain discovery regarding any "nonprivileged matter that is relevant

to any party's claim or defense and proportional to the needs of the case."  FED. R. CIV.

P. 26(b)(1); FED. R. BANKR. P. 7026.  This broad mandate encompasses any matter that bears on,

or that reasonably could lead to other matters that could bear on, any issue that is or may be in

the case.  *See Oppenheimer Fund, Inc.* v. *Sanders*, 437 U.S. 340, 351 (1978); *see also S.E.C.* v.

*Sargent*, 229 F.3d 68, 80 (1st Cir. 2000) ("The Supreme Court has long recognized that the

Federal Rules of Civil Procedure are to be construed liberally in favor of discovery.") (citing

*Hickman* v. *Taylor*, 329 U.S. 495, 507 (1947)); *Donovan* v. *Prestamos Presto Puerto Rico, Inc.*,

91 F.R.D. 222, 223 (D.P.R. 1981) ("The basic philosophy of the present federal procedure is that

prior to trial every party to a civil action is entitled to the disclosure of all relevant information in

the possession of any person, unless the information is privileged.").

**A.      The Settlement Proponents' refusal to respond to discovery requests
regarding priority issues means that they cannot present argument or
evidence regarding those issues in connection with the Settlement Motion.**

30.     As noted, the Oversight Board, AAFAF and PREPA have all stated

unambiguously, in their responses and objections to the Fuel Line Lenders' document requests

and interrogatories, that "[t]he status of the Fuel Line Loans and payment priorities between the

-13-

Fuel Line Lenders and the Bondholders ***has no bearing*** on whether the RSA" should be

approved.  Ex. C at 14 (emphasis added); *see also* Ex. E at 12, Ex. G at 12.

31.    In light of that position, the Fuel Line Lenders expect and understand that the

Settlement Proponents will *not* present evidence or argument in connection with the Settlement

Motion regarding the status of the Fuel Line Advances as Current Expenses or their priority

rights vis-à-vis the bonds, and instead will argue that the Settlement Motion should be approved

*regardless* of whether the Fuel Line Lenders have priority rights.

32.    However, in the event that the Settlement Proponents (contrary to what their

discovery responses say) do wish to address the lenders' priority rights at this stage, they

certainly cannot refuse to produce relevant documents and other information.  Rule 37(c)(1)

provides that "[i]f a party fails to provide information or identify a witness as required by Rule

26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a

motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Rule 26(a)(1)(A)(ii) in turn requires that parties provide "a copy—or a description by category

and location—of all documents, electronically stored information, and tangible things that the

disclosing party has in its possession, custody, or control and may use to support its claims or

defenses, unless the use would be solely for impeachment."  The First Circuit has recognized that

the trial court has "wide latitude" to impose sanctions, including exclusion of evidence or

argument, for failure to disclose consistent with the Rules.  *Ortiz-Lopez* v. *Sociedad Espanola de

Auxilio Mutuo Y Beneficiencia de Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001); *see also Baez

Cruz* v. *Municipality of Dorado*, 780 F. Supp. 2d 154, 156 (D.P.R. 2011) (precluding defendant

from introducing any argument concerning contents of police logbooks due to its refusal to

produce them to plaintiff).

33.    Accordingly, courts have recognized that where a party "stonewall[s] . . . specific discovery by claiming it to be irrelevant[,] he will have to live with the consequences of having taken that position"; *i.e.*, the party's argument and evidence on that topic must be excluded. *Gilliland* v. *Hergert*, No. 2:05-cv-01059, 2008 WL 2682587, at *2 (W.D. Pa. July 1, 2008); *see also Republic Tobacco, L.P.* v. *N. Atl. Trading Co.*, 254 F. Supp. 2d 985, 993 (N.D. Ill. 2002) (where defendant refused discovery on trademark infringement claim on grounds that it was not making any such claim, it was precluded from later taking position that plaintiff infringed on its trademark); *S.E.C.* v. *Grossman*, 887 F. Supp. 649, 660 (S.D.N.Y. 1995) (defendants "were obligated to come forward with any relevant evidence in the event they wished to change their position on issues for which they previously had refused discovery"; accordingly, defendants were "precluded from offering their proposed additional evidence").

34.    Here, therefore, given that the Settlement Proponents have refused to provide discovery based on their position that the status of the Fuel Line Advances and the priority of those loans relative to PREPA's bonds are *wholly irrelevant* to the Settlement Motion, they cannot later change their position and submit evidence or argument on those issues in briefing or at the hearing on the Settlement Motion.

**B.    If the Settlement Proponents seek to present evidence or argument concerning the priority of the Fuel Line Lenders' claims, the Fuel Line Lenders are entitled to discovery on that topic.**

35.    If the Settlement Proponents do intend to submit evidence or argument concerning the priority status of the Fuel Lines — *despite uniformly stating that such priority status has "no bearing" on the relief sought* — their refusal to produce relevant information is indefensible.  In that case, the Court should order the Settlement Proponents to produce relevant documents and provide interrogatory responses.

36.    The Federal Rules are intended to "remove the elements of surprise and

gamesmanship to make trial a transparent, fair process."  *Skytec, Inc.* v. *Logistic Sys., Inc.*, No.

15-2104-BJM, 2018 WL 4372726, at \*5 (D.P.R. Sept. 12, 2018).  The documents and responses

Cortland and Solus have requested, which concern the negotiation and history of the priority

treatment of the Fuel Line Advances, would have clear relevance if the Settlement Proponents

intend to address the status of the Fuel Lines as "Current Expenses" in the context of the

Settlement Motion.  In particular:  (a) RFPs 5 and 6 ask for communications with third parties

that specifically relate to the Current Expense and priority issue; (b) RFPs 8, 9 and 10 ask for

discrete documents needed to show that the Fuel Lines were used for their intended purpose of

funding fuel purchases and repaid within the short-term maturities contemplated by the Fuel Line

Facilities; and (c) RFPs 22 and 23 again ask for documents that are specifically focused on the

Current Expense treatment of the Fuel Lines, including the specific provisions in the credit

agreements that deal with that treatment.  *See* Ex. A at 13, 15.

37.    "When a party resists the production of evidence, it bears the burden of

establishing lack of relevancy or undue burden."  *Autoridad de Carreteras y Transportacion* v.

*Transcore Atl., Inc.*, 319 F.R.D. 422, 427 (D.P.R. 2016) (internal quotation marks and citations

omitted).  The Settlement Proponents have not moved for a protective order[11] and, in any event,

have not made a showing that the requested discovery is irrelevant.  *See In re Smith*, No. 14-

21261, 2017 WL 1190590, at \*8 (Bankr. D. Conn. Mar. 29, 2017) (party resisting discovery has

burden to move for protective order or risk waiver of objections); *see also Diaz-Garcia* v.

---

[11]    Under Federal Rule of Civil Procedure 37(d)(2), a failure to produce documents is "not excused
on the ground that the discovery sought was objectionable, unless the party failing to act has a pending
motion for a protective order under Rule 26(c)."  Thus, the burden is on the Settlement Proponents to
obtain a protective order in this circumstance.

*Surillo-Ruiz*, 45 F. Supp. 3d 163, 166-68 (D.P.R. 2014) (granting motion to compel production on showing that request was relevant to plaintiff's claim).

      **C.**    **The Court should compel the Settlement Proponents to produce documents beyond those produced in the prior Lift Stay Litigation.**

      38.    In response to certain document requests, including requests for PREPA board resolutions relating to outstanding bonds, reporting and budgets required by the Trust Agreement, and documents showing information concerning PREPA bank accounts, AAFAF and PREPA have agreed to produce documents only "to the extent they have already been produced in connection with the Lift Stay Motion." *See* Ex. E at 17, 19-25, Ex. G at 17, 19-24. Based on the information available to the Fuel Line Lenders, including a letter received hours before filing this response, that is not adequate.

      39.    The Fuel Line Lenders were not parties to the Lift Stay Motion litigation and do not have first-hand knowledge of what was produced in that litigation. They also do not have other basic information regarding that discovery — for example, the requests submitted and objections made, the compromises between the parties to that litigation, and the search criteria applied. In addition, certain of the Fuel Line Lenders' requests seek documents reflecting *present* facts, such as RFPs 17 and 18, which request documents showing PREPA's *current* calculation of gross and net revenues and of Current Expenses.

      40.    In a letter sent on the afternoon of June 3 (the deadline for this motion), AAFAF and PREPA provided additional information about the contents of the document production from the Lift Stay litigation and how it relates to the Fuel Line Lenders' requests. In each case, the response does not suffice. *See* Ex. I.

- *First*, AAFAF and PREPA stated that they would produce PREPA Board resolutions and related materials only from August 2017 to December 2018. However, this would not include resolutions reflecting the Board's approval of any of the outstanding bonds, which may have important information (or may

have approved offering memoranda with important information) regarding the bonds' priority status and the extent of the liens.

- *Second*, AAFAF and PREPA stated that they would produce the reports contemplated by the Trust Agreement only from 2009-2013.  But reports after 2013 may also show whether PREPA had Net Revenues and provide information concerning how Current Expenses were accounted for.

- *Third*, the proposed production will include other cash flow and financial reports covering periods from July 2017 to February 2019.  But this limited production will provide no information about either PREPA's historical treatment of Current Expenses or its current revenues and expenses.

- *Fourth*, AAFAF and PREPA will produce documents showing the "value and location" of PREPA's accounts since March 2018, and the "value and location" of the Sinking Fund as of the Petition Date.  This proposed production apparently does not address the issue of whether PREPA's bondholders had *control* over any account at any time, including under any account control agreement.

In short, AAFAF and PREPA's exclusive reliance on their prior document production in a separate litigation excludes evidence that the Fuel Line Lenders expect could be relevant to both to the bondholders' lien and the priority issue addressed above.  Moreover, the requests at issue are relatively targeted — asking for specific resolutions, reports and account documents that should be readily available — and yet AAFAF and PREPA have still declined to comply.

### D.   Cortland and Solus join in the motion to compel filed by the Official Committee of Unsecured Creditors.

41.     The Fuel Line Lenders hereby join in the motion to compel filed by the Creditors' Committee.  As discussed in the Creditors' Committee's motion and above in paragraph 26, the search and custodian criteria proposed by AAFAF and PREPA are inadequate to provide a record that will allow objecting parties to assess the RSA and cross examine the Settlement Proponents' witnesses.  Moreover, as set forth in detail in the Creditors' Committee's motion, the Oversight Board, AAFAF and PREPA's blanket assertions of deliberative process privilege and common interest with the bondholders are unjustified.

## RESERVATION OF RIGHTS

42.     The Fuel Line Lenders reserve all rights to amend or supplement this motion and

to file additional motions to compel production of documents or other information at a future

date if necessary in light of developments.

## CONCLUSION

43.     For the foregoing reasons, the Fuel Line Lenders respectfully request that the

Court enter the Proposed Order appended hereto.  Specifically, the Settlement Proponents should

be compelled to produce documents and respond to interrogatories relating to priority issues

unless they agree and stipulate that — as stated in their discovery responses — those issues have

no bearing on the relief sought in the Settlement Motion and thus the Settlement Motion should

be granted regardless of whether the Fuel Line Lenders have priority rights.  In the alternative, in

light of their refusal to produce relevant documents and information, the Settlement Proponents

should be precluded from making any arguments or submitting evidence regarding the topics as

to which they have refused to produce documents or information.

44.     In addition, as set forth above, the Settlement Proponents should not be permitted

to limit document production to limited sets of documents provided in a prior litigation with

other parties, and should otherwise be compelled to respond to discovery requests, including

regarding the RSA, as set forth in the motion to compel filed by the Creditors' Committee.

## <u>Certification Pursuant to Fed. R. Civ. P. 37(a)(1)</u>

Pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure, I hereby certify that on May 31, 2019, I conferred in good faith with counsel for the Oversight Board, AAFAF and PREPA via telephone, and engaged in further discussion via email.  After conferring about the subject of this motion, the parties were unable to agree on a resolution as of the deadline for this filing.

Dated:  June 3, 2019                                    Respectfully submitted,

 /s/ Nayuan Zouairabani                                 /s/ Emil A. Kleinhaus
Nayuan Zouairabani                                     Richard G. Mason (admitted *pro hac vice*)
USDC-PR No. 226411                                    Amy R. Wolf (admitted *pro hac vice*)
MCCONNELL VALDÉS LLC                                   Emil A. Kleinhaus (admitted *pro hac vice*)
270 Muñoz Rivera Avenue, Suite 7                       Angela K. Herring (admitted *pro hac vice*)
Hato Rey, Puerto Rico  00918                           Joseph C. Celentino (admitted *pro hac vice*)
P.O. Box 364225                                        WACHTELL, LIPTON, ROSEN & KATZ
San Juan, Puerto Rico  00936-4225                      51 West 52nd Street
Telephone:  (787) 250-5604                             New York, New York  10019
Facsimile:  (787) 759-9225                             Telephone:  (212) 403-1000
Email:  nzt@mcvpr.com                                  Facsimile:  (212) 403-2000
                                                       Email:  rgmason@wlrk.com
                                                               arwolf@wlrk.com
                                                               eakleinhaus@wlrk.com
                                                               akherring@wlrk.com
                                                               jccelentino@wlrk.com

                                                       *Attorneys for Cortland Capital Market*
                                                       *Services LLC, as Administrative Agent*


 /s/ Jose L. Ramirez-Coll                               /s/ Bryce L. Friedman
Jose L. Ramirez-Coll                                   Sandy Qusba (admitted *pro hac vice*)
USDC-PR No. 221702                                    Bryce L. Friedman (admitted *pro hac vice*)
ANTONETTI, MONTALVO                                    Nicholas Baker (admitted *pro hac vice*)
& RAMIREZ-COLL                                         SIMPSON THACHER & BARTLETT LLP
P.O. Box 13128                                         425 Lexington Avenue
San Juan, Puerto Rico  00908                           New York, New York  10017
Telephone:  (787) 977-0303                             Telephone:  (212) 455-2000
Facsimile:  (787) 977-0323                             Facsimile:  (212) 455-2502
Email:  jramirez@amrclaw.com                           Email:  squsba@stblaw.com
                                                               bfriedman@stblaw.com
                                                               nbaker@stblaw.com

                                                       *Attorneys for SOLA LTD, Solus Opportunities*
                                                       *Fund 5 LP, Ultra Master LTD, and Ultra NB*
                                                       *LLC*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

```
------------------------------------------------------- x
                                                        :
In re                                                   :
                                                        :   PROMESA
THE FINANCIAL OVERSIGHT AND                             :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                       :
                                                        :
    as representative of                                :   Case No. 17-BK-3283 (LTS)
                                                        :
THE COMMONWEALTH OF PUERTO RICO,                        :   (Jointly Administered)
et al.,¹                                                :
                                                        :
            Debtors.                                    :
                                                        :
------------------------------------------------------- x
                                                        :
In re                                                   :
                                                        :   PROMESA
THE FINANCIAL OVERSIGHT AND                             :   Title III
MANAGEMENT BOARD FOR PUERTO RICO,                       :
                                                        :
    as representative of                                :   Case No. 17-BK-04780 (LTS)
                                                        :
PUERTO RICO ELECTRIC POWER                              :
AUTHORITY (PREPA),                                      :
                                                        :
            Debtor.                                     :
------------------------------------------------------- x
```

### [PROPOSED] ORDER GRANTING OMNIBUS MOTION OF CORTLAND CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT, AND SOLUS TO COMPEL DISCOVERY RESPONSES IN CONNECTION WITH PREPA RSA SETTLEMENT MOTION

---

¹       The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Upon consideration of the *Omnibus Motion of Cortland Capital Market Services LLC, as Administrative Agent, and Solus to Compel Discovery Responses in Connection with PREPA RSA Settlement Motion* (the "Motion"),[2] filed on June 3, 2019, and it appearing that (i) the Court has subject matter jurisdiction over this Motion pursuant to 28 U.S.C. § 1331 and 48 U.S.C. § 2166(a); (ii) venue of this proceeding and the Motion is proper under 28 U.S.C. § 1391(b) and 48 U.S.C. § 2167(a); (iii) notice of the Motion was adequate and proper under the circumstances and no further or other notice need be given; and after due deliberation and sufficient cause appearing therefor, the Court concludes that Cortland Capital Market Services LLC, as administrative agent, SOLA LTD, Solus Opportunities Fund 5 LP, and Ultra Master LTD have satisfied the requirements for an order compelling production of documents and interrogatory responses pursuant to Rules 26 and 37 of the Federal Rules of Civil Procedure, made applicable to these proceedings by Rules 7026 and 7037 of the Federal Rules of Bankruptcy Procedure and 48 U.S.C. § 2170,

IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED.

2.      The Oversight Board, AAFAF and PREPA (the "Settlement Proponents") shall, no later than June ___, 2019:  (a)  produce all non-privileged documents responsive to the requests set forth in Exhibit A to the Motion; and (b) respond to all of the interrogatories set forth in Exhibit B to the Motion.

3.      The Settlement Proponents' failure to produce documents responsive to document requests relating to the priority status, including the "Current Expense" status, of the Fuel Line

---

[2]      Capitalized terms not defined have the meanings given in the Motion.

Facilities precludes the Settlement Proponents from advancing any arguments or submitting any evidence regarding those topics at or in advance of the hearing on the Settlement Motion.

Dated: _____, 2019

_____
Honorable Judith G. Dein
United States Magistrate Judge