# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

---

| | |
|---|---|
| *In re* | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | Case No. 17-BK-3283 (LTS) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.*,[1] | (Jointly Administered) |
| Debtors. | |

---

| | |
|---|---|
| *In re* | |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | PROMESA Title III |
| as representative of | Case No. 17-BK-04780 (LTS) |
| PUERTO RICO ELECTRIC POWER AUTHORITY (PREPA), | |
| Debtor. | |

---

**FIRST SET OF DOCUMENT REQUESTS OF CORTLAND CAPITAL MARKET SERVICES LLC, AS ADMINISTRATIVE AGENT, AND SOLUS ALTERNATIVE ASSET MANAGEMENT LP TO FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, THE PUERTO RICO ELECTRIC POWER AUTHORITY, AND THE PUERTO RICO FISCAL AGENCY AND FINANCIAL AUTHORITY**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number and the last four digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

Cortland Capital Market Services LLC ("Cortland"), as administrative agent[2] for lenders under that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank, and the lenders party thereto, and SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra NB LLC (collectively, "Solus"), as lenders to PREPA under a certain Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and Citibank, N.A., pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, made applicable herein by Rule 9014 of the Federal Rules of Bankruptcy Procedure (collectively, the "Bankruptcy Rules") and section 310 of the Puerto Rico Oversight, Management and Economic Stability Act, hereby request that each of the Financial Oversight and Management Board for Puerto Rico, the Puerto Rico Electric Power Authority ("PREPA"), and the Puerto Rico Fiscal Agency and Financial Authority ("AAFAF"), respond to the following requests for production of documents and electronically stored information (individually, a "Document Request" and, collectively, the "Document Requests") by May 29, 2019 and produce all responsive documents by June 20, 2019. These Document Requests are made without prejudice to, or waiver of, any further discovery.

These Document Requests relate to the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 1235] (the "Settlement Motion").[3]

---

[2] Effective May 17, 2019, Cortland replaced Scotiabank de Puerto Rico ("Scotiabank") as administrative agent for lenders under the Scotiabank Credit Agreement.

[3] Capitalized terms not defined have the same meanings as in the Settlement Motion. Unless otherwise indicated, all "Dkt. No." references are to case number 17-BK-04780 (the PREPA docket).

## I.     DEFINITIONS

1. "9019 Settlement" has the meaning given in the RSA.

2. "AAFAF" means the Puerto Rico Fiscal Agency and Financial Authority and any of its successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals (including O'Melveny & Myers LLP and Rothschild & Co US Inc.).

3. "Ad Hoc Group" means the Ad Hoc Group of PREPA Bondholders collectively and each holder of Bonds that is or was a member of the Ad Hoc Group of PREPA Bondholders individually, as well as any of each of their successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals (including Kramer Levin Naftalis & Frankel LLP and Houlihan Lokey Inc.).

4. "All" shall be construed as "any or all" or "each and all," as the context requires, so that each Document Request shall be construed broadly, rather than narrowly, to bring within the scope of each Document Request all responses that might otherwise be construed to be outside its scope.

5. "And," "and" and "or" shall be construed either disjunctively or conjunctively, as the context requires, so that each Document Request shall be construed broadly, rather than narrowly, to bring within the scope of each Document Request all responses that might otherwise be construed to be outside its scope.

6. "Annual Budget" has the meaning given in the Trust Agreement.

7. "Assured" means Assured Guaranty Corp. and/or Assured Guaranty Municipal Corp. and any of its successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals (including Cadwalader, Wickersham & Taft LLP).

8. "Bonds" and "Bondholders" have the meanings given in the RSA.

9. "Borrowing Request" has the meaning given in the Scotiabank Credit Agreement.

10. "Capital Improvement Fund" has the meaning given in the Trust Agreement.

11. "Citi" means Citigroup Global Markets Inc. and Citibank, N.A., and any of either of their successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals, and all other persons acting or purporting to act on any of their behalf.

12. "Citibank Credit Agreement" means that certain Trade Finance Facility Agreement, dated as of July 20, 2012, among PREPA and Citibank, N.A., as amended and supplemented.

13. "Construction Fund" has the meaning given in the Trust Agreement.

14. "Communication" means every manner of communication, disclosure or exchange, and every communication, disclosure or exchange, of information, whether orally or by document, or whether face-to-face, by telephone, telegram, mail, email, personal delivery, electronically, facsimile, text message, or otherwise.

15. "Consulting Engineer" has the meaning given in the Trust Agreement.

16. "Current Expenses" has the meaning given in the Trust Agreement.

17. "Definitive RSA" has the meaning given in the Settlement Motion.

18. "Document" or "documents" means anything within the scope of Federal Rule of Evidence 1001 or Federal Rule of Civil Procedure 34, including the original, drafts, revisions and nonidentical copies of any written, typed, printed, recorded, magnetic, graphic, or other form of memorialization or communication, and also including all electronically stored information, internal memoranda, papers, books, letters, electronic mail, facsimiles, instant messages, text

messages, calendars, appointment books, schedules, telegrams, correspondence, reports, agreements, contracts, leases, recordings, notations, or memorials of telephone conversations or meetings or conferences, interoffice communications, or work papers, as well as any data, information, or statistics contained within any storage module, backup tape, disc, or other memory device, or other information retrievable from storage systems, including computer-generated reports and printouts, however produced or reproduced, of every kind and description, in every format in which they appear.

19. "Financial Indebtedness" has the meaning given in the RSA.

20. "Fuel Line Lenders" means the lenders under the Citibank Credit Agreement or Scotiabank Credit Agreement.

21. "Fuel Line Loans" means the Citibank Credit Agreement and the Scotiabank Credit Agreement and any loans or advances made to PREPA pursuant to either agreement.

22. "General Fund" has the meaning given in the Trust Agreement.

23. "General Reserve Fund" has the meaning given in the Trust Agreement.

24. "Including" means including without limitation.

25. "Lavin Declaration" means the *Declaration of Kevin Lavin in Support of Opposition of the Financial Oversight and Management Board for Puerto Rico to the Motion of the Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief from the Automatic Stay to Allow Movants to Enforce Their Statutory Right to Have a Receiver Appointed* (July 31, 2017) [Dkt. No. 149-1].

26. "Lien Challenge" has the meaning given in the RSA.

27. "Most Favored Nations Provision" means section 23 of the RSA.

28. "<u>National</u>" means National Public Finance Guarantee Corporation and any of its successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals (including Weil, Gotshal & Manges LLP), and all other persons acting or purporting to act on any of their behalf.

29. "<u>Oversight Board</u>" means the Financial Oversight and Management Board for Puerto Rico and any of its successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals (including Citigroup Global Markets Inc., Ernst & Young, LLP and Proskauer Rose LLP), and all other persons acting or purporting to act on any of their behalf.

30. "<u>Parties</u>" has the meaning given in the RSA.

31. "<u>Person</u>," "<u>person</u>" or "<u>persons</u>" means all entities, including individuals, associations, companies, partnerships, joint ventures, corporations, trusts, estates, agencies, or governmental entities. Where a person other than an individual is involved (*e.g.*, a corporation, partnership, governmental entity, or agency), "person" or "persons" includes all individuals acting or purporting to act on behalf of the person.

32. "<u>Petition Date</u>" means July 3, 2017.

33. "<u>Plan</u>" has the meaning given in the RSA.

34. "<u>Preliminary RSA</u>" has the meaning given in the Settlement Motion.

35. "<u>PREPA</u>" means the Puerto Rico Electric Power Authority and any of its successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals (including Ankura Consulting Group, LLC, Greenberg Traurig, LP, Norton Rose Fulbright US LLP and O'Melveny & Meyers, LP), and all other persons acting or purporting to act on any of their behalf.

36. "PREPA Board" has the meaning given in the Trust Agreement.

37. "Relate to," "relate to," or "relating to" means constituting, containing, embodying, comprising, reflecting on, identifying, stating, referring to, dealing with, commenting on, responding to, describing, involving, pertaining to, concerning or evidencing.

38. "Renewal and Replacement Fund" has the meaning given in the Trust Agreement.

39. "Request for Advance" has the meaning given in the Citibank Credit Agreement.

40. "Reserve Maintenance Fund" has the meaning given in the Trust Agreement.

41. "Revenue Fund" has the meaning given in the Trust Agreement.

42. "RSA" has the meaning given in the Settlement Motion.

43. "Scotiabank Credit Agreement" means that certain Credit Agreement, dated as of May 4, 2012, among PREPA, Scotiabank and the lenders party thereto, as amended and supplemented.

44. "Self-insurance Fund" has the meaning given in the Trust Agreement.

45. "Sinking Fund" has the meaning given in the Trust Agreement.

46. "Subordinate Obligations Fund" has the meaning given in the Trust Agreement.

47. "Syncora" means Syncora Guarantee Inc. and any of its successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives or professionals (including Debevoise & Plimpton LLP), and all other persons acting or purporting to act on any of their behalf.

48. "Trust Agreement" means that certain trust agreement, dated as of January 1, 1974, among Puerto Rico Water Resources Authority and First National City Bank, as Trustee, as amended and supplemented. All section references to the Trust Agreement are to the version of the Trust Agreement as amended and supplemented through August 1, 2011.

49. "You," "you" or "your" or any form of these words means AAFAF, the Oversight Board, and PREPA, and any of each of their successors, predecessors, subsidiaries, parents, affiliates, joint ventures, former or present directors, officers, employees, agents, representatives or professionals, and all other persons acting or purporting to act on any of their behalf (including Ankura Consulting Group, LLC, Citigroup Global Markets Inc., Ernst & Young, LLP, Greenberg Traurig, LP, Norton Rose Fulbright US LLP, O'Melveny & Meyers, LP, Proskauer Rose LLP and Rothschild & Co US Inc.).

50. The use of the singular form of any word includes the plural and vice versa. The feminine includes the masculine and neuter genders and vice versa. The past tense includes the present tense where the clear meaning is not distorted by the change of tense.

51. The name of any person or professional firm refers also to that person or professional firm's successors, predecessors, subsidiaries, parents, affiliates, former or present agents, representatives, employees or professionals, and all other persons or entities acting or purporting to act on any of their behalf.

## II.    INSTRUCTIONS

A.    In responding to these Document Requests, you are required to produce all responsive documents within your possession, custody or control, as well as all other responsive documents that are currently possessed or controlled by you, by your present or former attorneys, agents, professionals, employees, officers, directors or managers, advisors, representatives, or by any other legal entities controlled by or affiliated with you.

B.    These Document Requests are ongoing and continuing in nature. Any responsive documents received or identified by you after the date of your initial response must be produced pursuant to these Document Requests.

C. If an objection to any Document Request is made, such objection must be made in writing and must describe in detail the legal and factual basis for such objection, and must identify the specific Document Request and language within such Document Request to which the objection is made.

D. Electronically stored information must be produced in accordance with the following instructions:

1. <u>Images</u>. Responsive Documents shall be produced in image format, with searchable text load files that are compatible with standard litigation support software, including Relativity, Concordance and IPRO. The images shall be either black and white, single-page, 300 DPI, Group IV .tiff images or color .jpg images. Images for documents created with office or personal productivity software (*e.g.*, word-processing documents, spreadsheets, presentations, databases, charts, and graphs) shall include tracked changes, comments, hidden rows, columns or worksheets, speakers notes, and any other similar content that can be made visible within the application.

2. <u>Load File</u>. The load file shall include for each Document, to the extent practicable, information identifying the custodian file, group shared file, or other source from which the Document was obtained. For any Documents that have been globally de-duplicated, the custodian field shall include or shall be updated to include all custodians who had a copy of the Document before de-duplication. For each individual Document based on an electronic file, the load file shall, to the extent practicable, contain the path to the corresponding text that is extracted from the electronic file, not generated as an OCR file from the .tiff image(s).

   a. In addition to the foregoing, for all email, the load file shall also include, to the extent practicable, header information including: (1) the individual(s) to whom the communication was directed ("To"); (2) the author of the email communication ("From"); (3) all individuals who were copied ("cc") and/or blind copied ("bcc") on the communication; (4) the subject line of the communication ("Re" or "Subject"); and (5) the date and time sent.

   b. For each Document, the load file shall also contain: (1) the beginning Bates number (referring to the first page of the Document); (2) the ending Bates number (referring to the last page of the Document); and in the case of emails with attachments, (3) the beginning attachment range number(s) and (4) the ending attachment range number(s), where the "attachment range" records

    the relationship of emails to their attachments. The attachment range should be recorded from the first page of the first Document in the attachment range, to the last page of the last Document in the attachment range.

  3. Native Files. In addition, all Documents whose native format is that of a Microsoft Excel file (or other electronic spreadsheet file) shall be produced with a single-page placeholder (Group IV .tiff image) indicating that the file is a spreadsheet and shall be produced in native format, including the logical formulae within the cells of the spreadsheet and any metadata contained in the file. The right to demand production of any other responsive Documents in their native format (including all metadata) is expressly reserved.

  4. Metadata. Load files shall contain the following metadata fields:
- PRODBEG,
- PRODEND,
- PRODBEGATTACH,
- PRODENDATTACH,
- EMAIL_DATE,
- EMAIL_TIME,
- FROM,
- TO,
- CC,
- BCC,
- SUBJECT,
- CUSTODIAN,
- MD5 HASH,
- FILENAME,
- FILE_PATH (path to any native files being produced), and
- TEXT PRECEDENCE (path to text of file being produced).

E. All documents produced shall be organized and labeled to correspond with the requests in these Document Requests or shall be produced as they are kept in the ordinary course of business.

F. All documents produced shall be produced in their entirety notwithstanding that portions thereof may contain information not requested. All interim as well as final versions or drafts of the documents shall be produced, and all versions or copies that are not identical to the

original or another produced copy, whether due to handwritten notations, modifications, changes, amendments, revisions, or otherwise, shall be produced.

G.   For any document or other requested information no longer in existence and for which there is some record of its existence or destruction, identify the document or other information, and state how, when and why it passed out of existence or cannot be located.

H.   If any of the documents or information requested is claimed to be immune from discovery on the grounds of privilege or other exemption, then identify the purported privilege or exemption claimed, state the basis for the privilege or exemption asserted, and describe the information alleged to be privileged in detail sufficient to determine if the privilege has been properly invoked, as and to the extent required by Federal Rule of Civil Procedure 26(b)(5), made applicable by Bankruptcy Rule 9014.

### III.   REQUESTS FOR PRODUCTION OF DOCUMENTS

Please produce the following to the offices of Wachtell, Lipton, Rosen & Katz, 51 West 52nd Street, New York, New York 10019 (attention: Angela K. Herring), or in such other manner as shall be mutually agreed:

1. All Communications between or among the Parties to the RSA relating to the Preliminary RSA, the Definitive RSA or the 9019 Settlement, including: (i) all Communications relating to negotiation of the terms of the Preliminary RSA or the Definitive RSA; (ii) all Communications relating to the treatment of the Fuel Line Loans or other Financial Indebtedness under the Preliminary RSA or Definitive RSA; and (iii) all drafts and prior versions of the Preliminary RSA or Definitive RSA or term sheets or exhibits related to such drafts or prior versions.

2. All Documents relating to the Most Favored Nations Provision of the Definitive RSA.

3. All Documents relating to the treatment of the Fuel Line Loans or Fuel Line Lenders under the Definitive RSA, under any Plan of adjustment contemplated to be filed in connection with the Definitive RSA, or the effect of the Definitive RSA on the Fuel Line Loans or the Fuel Line Lenders.

4. Documents sufficient to show the amounts projected to be paid to the Supporting Holders under the 9019 Settlement and the Definitive RSA, including: (i) interest through May 1, 2019; (ii) the Settlement Payments; (iii) Increased Settlement Payments; (iv) the Waiver and Support Fees set forth in Section 4 of the Definitive RSA; and (v) the total amount of fees and expenses to be paid under Section 22 of the Definitive RSA.

5. All Communications since the Petition Date with any of (i) the Ad Hoc Group or any of its members, (ii) Assured, (iii) National and/or (iv) Syncora regarding the Fuel Line Loans, including all Communications regarding the status of the Fuel Line Loans as Current Expenses or the payment priorities between the Fuel Line Lenders and the Bondholders.

6. All Communications prior to the Petition Date with any of (i) the Ad Hoc Group or any of its members, (ii) Assured, (iii) National and/or (iv) Syncora regarding the Fuel Line Loans, including all Communications regarding the status of the Fuel Line Loans as Current Expenses and the treatment or priority afforded to the Fuel Lien Loans under prior restructuring support agreements (including the Restructuring Support Agreement dated as of November 5, 2015).

7. All Communications since the Petition Date with any of the Ad Hoc Group, Assured, National and/or Syncora relating to the Lien Challenge.

8. All Borrowing Requests and any additional materials submitted by PREPA to the agent or lenders under the Scotiabank Credit Agreement in connection with any advance requested under the Scotiabank Credit Agreement.

9. All Requests for Advances and any additional materials submitted by PREPA to the lenders under the Citibank Credit Agreement in connection with any advance requested under the Citibank Credit Agreement.

10. Documents sufficient to show the amounts and dates of all repayments by PREPA of any advance under either the Scotiabank Credit Agreement or the Citibank Credit Agreement.

11. All Annual Budgets and "amended or supplemental Annual Budget[s]" since May 4, 2012 prepared pursuant to section 504 of the Trust Agreement.

12. All resolutions of the PREPA Board authorizing the issuance of any Bonds that are currently outstanding, including all exhibits and schedules to such resolutions.

13. All "Official Statements," "Offering Memoranda" or similar offering documents relating to any issuance of any Bonds that are currently outstanding.

14. All Communications, all meeting minutes and all presentations relating to the approval of any resolution of the PREPA Board authorizing the issuance of Bonds that are currently outstanding.

15. All Documents, including all reports, filed with PREPA on or after May 4, 2012 by the Consulting Engineers pursuant to section 706 of the Trust Agreement.

16. All Documents, from May 4, 2012 to the present, in which PREPA, the Oversight Board or AAFAF has calculated, stated or estimated the amount of PREPA's Current Expenses, including all Documents in which such Current Expenses have been listed or broken down by category or line item.

17. Documents sufficient to show PREPA's gross revenues, and revenues after payment of Current Expenses, as of (i) the Petition Date, (ii) each month since the Petition Date and (iii) the present.

18. Documents sufficient to show PREPA's Current Expenses as of (i) the Petition Date, (ii) each month since the Petition Date and (iii) the present.

19. All Documents underlying, relied upon or supporting paragraphs 9 through 12 of the Lavin Declaration.

20. Documents sufficient to show the balance, as of (i) the Petition Date, (ii) each month since the Petition Date and (iii) the present, of each of the following funds or accounts referenced in the Trust Agreement:

    a. The General Fund;

    b. The Revenue Fund;

    c. The Sinking Fund (including any account within the Sinking Fund);

    d. The Reserve Maintenance Fund;

    e. The Self-Insurance Fund;

    f. The Capital Improvement Fund;

    g. The Subordinate Obligations Fund;

    h. The Renewal and Replacement Fund;

    i. The Construction Fund; and

      j. The General Reserve Fund.

21. Documents showing whether PREPA had or has control — as of the Petition Date and currently — of each of the following funds or accounts referenced in the Trust Agreement:

      a. The General Fund;

      b. The Revenue Fund;

      c. The Sinking Fund (including any account within the Sinking Fund);

      d. The Reserve Maintenance Fund;

      e. The Self-insurance Fund;

      f. The Capital Improvement Fund.

      g. The Subordinate Obligations Fund

      h. The Renewal and Replacement Fund;

      i. The Construction Fund; and

      j. The General Reserve Fund.

The response to this request should include Documents showing the location of the funds or accounts (*i.e.*, the bank) and any account control agreements or other similar agreements governing such funds or accounts.

22. All Documents, since January 1, 2012, relating to the Current Expense treatment or priority of loans made under the Citibank Credit Agreement, including all Documents relating to the negotiation of the provisions of the Citibank Credit Agreement that describe loans made thereunder as Current Expenses.

23. All Documents, since January 1, 2012, relating to the Current Expense treatment or priority of loans made under the Scotiabank Credit Agreement, including all

Documents relating to the negotiation of the provisions of the Scotiabank Credit Agreement that describe loans made thereunder as Current Expenses.

24. All insurance policies issued by Assured with respect to Bonds that are currently outstanding, including all Documents referenced in, delivered with or executed in connection with such insurance policies. The response to this request should include any agreements (including any "Agreement[s] Regarding Bond Insurance") between PREPA and the Bond Trustee in connection with each insurance policy.

25. All Documents that You intend to use as exhibits or otherwise rely on at the hearing on the Settlement Motion or in any further filing in support of the Settlement Motion.

26. All Documents produced to the Official Committee of Unsecured Creditors in connection with discovery on the Settlement Motion.

Dated: May 22, 2019

| | |
|---|---|
| /s/ Nayuan Zouairabani | /s/ Emil A. Kleinhaus |
| Nayuan Zouairabani | Richard G. Mason (admitted *pro hac vice*) |
| USDC-PR No. 226411 | Amy R. Wolf (admitted *pro hac vice*) |
| MCCONNELL VALDÉS LLC | Emil A. Kleinhaus (admitted *pro hac vice*) |
| 270 Muñoz Rivera Avenue, Suite 7 | Angela K. Herring (admitted *pro hac vice*) |
| Hato Rey, Puerto Rico 00918 | Joseph C. Celentino (admitted *pro hac vice*) |
| P.O. Box 364225 | WACHTELL, LIPTON, ROSEN & KATZ |
| San Juan, Puerto Rico 00936-4225 | 51 West 52nd Street |
| Telephone: (787) 250-5604 | New York, New York 10019 |
| Facsimile: (787) 759-9225 | Telephone: (212) 403-1000 |
| Email: nzt@mcvpr.com | Facsimile: (212) 403-2000 |
| | Email: rgmason@wlrk.com |
| | arwolf@wlrk.com |
| | eakleinhaus@wlrk.com |
| | akherring@wlrk.com |
| | jccelentino@wlrk.com |
| | |
| | *Attorneys for Cortland Capital Market Services LLC, as Administrative Agent* |
| | |
| /s/ Jose L. Ramirez-Coll | /s/ Nicholas Baker |
| Jose L. Ramirez-Coll | Sandy Qusba (admitted *pro hac vice*) |
| USDC-PR No. 221702 | Nicholas Baker (admitted *pro hac vice*) |
| ANTONETTI, MONTALVO | SIMPSON THACHER & BARTLETT LLP |
| & RAMIREZ-COLL | 425 Lexington Avenue |
| P.O. Box 13128 | New York, New York 10017 |
| San Juan, Puerto Rico 00908 | Telephone: (212) 455-2000 |
| Telephone: (787) 977-0312 | Facsimile: (212) 455-2502 |
| Facsimile: (787) 977-0323 | Email: squsba@stblaw.com |
| Email: jramirez@amrclaw.com | nbaker@stblaw.com |
| | |
| | *Attorneys for SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD and Ultra NB LLC* |

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 22, 2019, a true and correct copy of the *First Set of Document Requests of Cortland Capital Market Services LLC, As Administrative Agent, and Solus Alternative Asset Management LP to Financial Oversight and Management Board for Puerto Rico, the Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Authority* was served by electronic mail on the following: mbienenstock@proskauer.com; ppossinger@proskauer.com; ebarak@proskauer.com; ddesatnik@proskauer.com; nmitchell@omm.com; jrapisardi@omm.com; pfriedman@omm.com; emckeen@omm.com; and lmarini@mpmlawpr.com.

Dated: May 22, 2019

       */s/ Joseph C. Celentino*
Richard G. Mason
Amy R. Wolf
Emil A. Kleinhaus
Angela K. Herring
Joseph C. Celentino
WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019
Telephone: (212) 403-1000
Facsimile: (212) 403-2000
Email: rgmason@wlrk.com
      arwolf@wlrk.com
      eakleinhaus@wlrk.com
      akherring@wlrk.com
      jccelentino@wlrk.com

*Attorneys for Cortland Capital Markets Services LLC, as Administrative Agent*