# UNITED STATES DISTRICT COURT
# DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, et al.,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered) |

## REPLY IN SUPPORT OF AMBAC ASSURANCE CORPORATION'S URGENT MOTION TO SET BRIEFING SCHEDULE WITH RESPECT TO MOTION CONCERNING APPLICATION OF THE AUTOMATIC STAY TO THE REVENUES SECURING PRIFA RUM TAX BONDS

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).

To the Honorable United States District Court Judge Laura Taylor Swain:

1. Ambac[2] respectfully submits this reply brief in support of its *Urgent Motion to Set Briefing Schedule with Respect to Motion of Ambac Assurance Corporation Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (Dkt. No. 7177) ("Urgent Motion").

2. In its response brief, the Oversight Board agrees that the schedule proposed by Ambac in the Urgent Motion is reasonable, and does not oppose the request with respect to briefing the legal issues. *See Response of the Financial Oversight and Management Board for Puerto Rico to Urgent Motion to Set Briefing Schedule with Respect to Motion of Ambac Assurance Corporation Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (Dkt. No. 7191) (hereinafter "OB Response"). But the Oversight Board argues that the Court should bifurcate the legal and factual issues presented in Ambac's motion, and delay a hearing on the factual issues, including whether Ambac is adequately protected, until September or October.

3. The basis of the Oversight Board's request to bifurcate legal and factual issues appears to be the Oversight Board's contention that Ambac's Automatic Stay Motion rises or falls on the basis of what the Oversight Board describes as "one threshold issue, namely whether [Ambac] has a secured claim against rum excise tax monies before they are deposited into an account at PRIFA." OB Response 3. The Oversight Board appears to suggest that this issue might be resolved without any factual presentation whatsoever—presumably on the basis of legal arguments the Oversight Board intends to submit.

---

[2] Unless otherwise specified, defined terms have the same meanings given to them in the Urgent Motion or in *Ambac Assurance Corporation's Motion and Memorandum of Law in Support of its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* (Dkt. No. 7176) ("Automatic Stay Motion").

4. Ambac respectfully opposes the Oversight Board's proposed bifurcation and reiterates its request for a hearing of all issues presented by the Automatic Stay Motion—whether legal or factual—at the July Omnibus Hearing. The Oversight Board's proposal should be rejected because (i) the premise of the Oversight Board's request—that Ambac's Automatic Stay Motion can readily be resolved through a purely legal determination—is false; (ii) the Oversight Board has made no showing that it will not be able to efficiently prepare for a hearing on both legal and factual issues in the more than seven weeks remaining before the July Omnibus Hearing; (iii) the Oversight Board's attempt to bifurcate factual and legal issues is not a procedure contemplated by the Bankruptcy Code and indeed is at odds with the statutory policy favoring prompt determinations on lift-stay motions; and (iv) Ambac would be prejudiced by any further delay.

5. *First*, the Oversight Board is wrong that Ambac cannot prevail on its Automatic Stay Motion unless the Court determines that Ambac has a lien on the Pledged Rum Taxes in the possession of the Commonwealth. Indeed, Ambac's principal argument is that the automatic stay does not apply to the actions contemplated in the Automatic Stay Motion, because the Commonwealth has no property interest in the Pledged Rum Taxes either because it holds them in a custodial capacity or because no property interest of the Commonwealth's attaches to monies still held by the U.S. government. *See* Ambac's Automatic Stay Motion at 14-15.[3]

6. Ambac could prevail on this point, and thereby obtain relief, without regard to any other determination the Court might make regarding the nature of Ambac's lien on the Pledged Rum Taxes. And indeed, were the Court to make such a ruling, it might decide that the nature and

---

[3] Indeed, the two questions are related because, as Ambac argued in the Automatic Stay Motion, any contention that the Pledged Rum Taxes are not the property of PRIFA necessarily means that the Rum Taxes collected by the U.S. government, but not paid to the Commonwealth, are not the property of the Commonwealth—and thus not subject to the automatic stay. *See* Ambac's Automatic Stay Motion 15-16.

2

scope of Ambac's lien is best left to the alternative forum in which Ambac elects to pursue its remedies.

7. Moreover, the parties should be given an opportunity to introduce any facts they consider relevant to the issues to be decided. Indeed, it is quite plausible that the Oversight Board may introduce facts regarding where the clawed back monies are currently held, the ownership of specific accounts, and direction letters, among other facts. There is no reason why these factual issues should not presented to the Court for determination at the July Omnibus Hearing. Without these facts, the Court may be unable to resolve even the threshold question presented by the Automatic Stay Motion—whether the automatic stay applies to the U.S. Treasury Action or the PRIFA Clawback Action.

8. *Second*, the Oversight Board has made no showing that it cannot present the facts concerning the issues as to which it bears the burden of proof, or any defenses it intends to raise, by July 24, 2019. The Oversight Board certainly knows what factual issues it intends to raise in connection with its opposition. Ambac is prepared to meet and confer with the Oversight Board to narrow the issues, identify the material factual issues in dispute, and develop a reasonable discovery plan that would facilitate appropriate discovery concerning these issues prior to the July Omnibus Hearing. Given that the hearing is more than seven weeks away, there is ample time for the parties to conduct discovery and prepare any necessary factual presentation for the Court.

9. *Third*, the Oversight Board's proposed bifurcation of legal and factual issues finds no footing in the Bankruptcy Code or applicable rules; in fact, it would contravene the clear policy underlying section 362(e)(1) that motions concerning the automatic stay must be resolved promptly. The Oversight Board's proposal adds a round of what amounts to motion to dismiss briefing before the Court holds the "hearing" required by section 362(e)(1). (Indeed, the Oversight

3

Board's proposed briefing would be limited to purely legal questions, as motion to dismiss briefing ordinarily is, and discovery would be stayed until the Court rules on the legal briefs.) While in some contexts, Congress has acted to require that issues be sequenced in this fashion,[4] the Bankruptcy Code expressly requires the opposite approach here: Recognizing the importance of prompt decisions on automatic stay issues, section 362(e)(1) requires the bankruptcy court to hold a "hearing"—embracing both legal and factual arguments—on any lift-stay motion within 30 days. The mere fact that the debtor may advance legal arguments challenging the scope or existence of the creditor's lien does not relieve the debtor of its burden to, at the same time, be prepared to show that any lien held by the creditor is indeed adequately protected.

10. Ambac has proposed an extended schedule for a hearing on its Automatic Stay Motion at the July Omnibus Hearing, precisely to allow the parties to fully develop (through discovery and briefing) their arguments and prepare for an evidentiary hearing. Ambac does not consent to any adjournment of the evidentiary hearing beyond July. To the extent that the "hearing" were to consist of nothing more than oral argument on legal issues—with neither party being afforded any opportunity to put forward the factual evidence supporting their contentions—it would not be a "hearing" at all under section 362(e)(1), and the automatic stay would be lifted by operation of law after the July Omnibus Hearing.[5] The Oversight Board's apparent desire to have more time does not amount to "compelling circumstances" that would justify a further delay of Ambac's statutory right to a prompt hearing.

---

[4] *See, e.g.*, Private Securities Litigation Reform Act § 101, 15 U.S.C. § 77z–1(b) (staying discovery during the pendency of any motion to dismiss private securities class actions).

[5] If the Court were to consider argument at the July Omnibus Hearing to be a "preliminary hearing," section 362(e)(1) requires that the final hearing be held within 30 days of the conclusion of the July Omnibus Hearing. Ambac does not consent to an extension of that deadline.

11. *Fourth*, Ambac would be prejudiced by the proposed bifurcation of the issues. Given the extensive statutory protections for pledged special revenues in PROMESA and the Bankruptcy Code, *see* Ambac's Automatic Stay Motion 2-3 & n.4, 22-25, Ambac believed that the Oversight Board would uphold the Commonwealth's pledge of special revenues to revenue bondholders (despite attacking the right to continued payment during the pendency of the Title III case). That has changed. The Oversight Board has commenced litigation directly repudiating the pledge of HTA revenues and is advancing a similar position with respect to ERS. It is now clear that the Oversight Board intends to attack the validity of all revenue bondholders' liens, including PRIFA bondholders' lien. PRIFA is not a Title III debtor, and Ambac cannot be delayed in its efforts to protect its rights.

12. The need for a prompt resolution of Ambac's Automatic Stay Motion is particularly acute in light of the fact that the Oversight Board has publicly stated that it intends to submit a plan of adjustment for the Commonwealth as soon as this month.[6] The issues Ambac seeks to raise in the U.S. Treasury Action and PRIFA Clawback Action are key threshold issues that must be resolved before any plan of adjustment for the Commonwealth can be confirmed. Similar to the questions raised in the Commonwealth-COFINA Dispute, these litigations will determine whether certain revenues are Commonwealth property available for distribution in a Commonwealth restructuring. Delaying resolution of these issues would necessarily delay the plan of adjustment process.

---

[6] *Puerto Rico – UPDATE 1: PROMESA Board Says Commonwealth Budget Submission Is 'Incomplete and Non-Compliant,' Will Submit Budget to Legislature That Complies*, REORG RESEARCH, INC. (May 23, 2019), https://app.reorg.com/v3#/items/intel/1869?item_id=75427 ("PROMESA oversight board Executive Director Natalie Jaresko said the board could present a proposed plan of adjustment as soon as next month.").

5

13. For the foregoing reasons, Ambac respectfully requests that the Court grant the Urgent Motion and enter an order substantially in the form reflected in Exhibit A to the Urgent Motion.

[*Signature Page to Follow*]

Dated: June 4, 2019
San Juan, Puerto Rico

**FERRAIUOLI LLC**

By: */s/ Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
Sonia Colón (USDC-PR No. 213809)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com
scolon@ferraiuoli.com

**MILBANK LLP**

By: */s/ Atara Miller*
Dennis F. Dunne
Andrew M. Leblanc
Atara Miller
Grant R. Mainland
(admitted *pro hac vice*)
55 Hudson Yards
New York, NY 10001
Telephone: (212) 530-5000
Facsimile: (212) 530-5219
Email: ddunne@milbank.com
aleblanc@milbank.com
amiller@milbank.com
gmainland@milbank.com

**ARENT FOX LLP**

By: */s/ David L. Dubrow*
David L. Dubrow
Mark A. Angelov
(admitted *pro hac vice*)
1301 Avenue of the Americas
New York, NY 10019
Telephone: (212) 484-3900
Facsimile: (212) 484-3990
Email: david.dubrow@arentfox.com
mark.angelov@arentfox.com

7

        Randall A. Brater (admitted *pro hac vice*)
        1717 K Street, NW
        Washington, DC 20006
        Telephone: (202) 857-6000
        Facsimile: (202) 857-6395
        Email: randall.brater@arentfox.com

***Attorneys for Ambac Assurance Corporation***

## CERTIFICATE OF SERVICE

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF participants in this case.

/s/ *Roberto Cámara-Fuertes*
Roberto Cámara-Fuertes (USDC-PR No. 219002)
221 Ponce de León Avenue, 5th Floor
San Juan, PR 00917
Telephone: (787) 766-7000
Facsimile: (787) 766-7001
Email: rcamara@ferraiuoli.com