UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re**<br><br>**THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,**<br><br>As a representative of<br><br>**THE COMMONWEALTH OF PUERTO RICO** *et al.*,<br><br>**Debtors.**[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>(Jointly Administered)<br><br><br>Re: Dkt. No. 4370<br><br>**Hearing date:** June 12, 2019 at 9:30 a.m. (Atlantic Standard Time) |

**INFORMATIVE MOTION OF THE FEE EXAMINER SUBMITTING
UNCONTESTED REVISED PROPOSED ORDER
IMPOSING ADDITIONAL PRESUMPTIVE STANDARDS**

The Fee Examiner appointed in these proceedings files this *Informative Motion of the Fee Examiner Submitting Uncontested Revised Proposed Order Imposing Additional Presumptive Standards* (the "**Informative Motion**"). In support, the Fee Examiner respectfully states that:

1. On November 27, 2018, counsel filed the *Fee Examiner's Motion to Impose Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or Other Sub-Retained Professionals* [Dkt. No. 4370] (the "**Additional Presumptive Standards**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

**Motion**"). At the December 19, 2018 omnibus hearing, the Court denied the Additional Presumptive Standards Motion without prejudice [Dkt. No. 4516], requesting that the professionals and the Fee Examiner continue their discussions of the hourly rate increase issue in light of the Court's observations and comments on that subject.

2. On March 6, 2019, the Fee Examiner filed the *Fee Examiner's Fourth Interim Report on Presumptive Standards Motion and on Professional Fees and Expenses (June 1, 2018-September 30, 2018)* [Dkt. No. 5409] (the "**Fee Examiner Fourth Interim Report**"), which included a revised proposed order granting the Additional Presumptive Standards Motion that addressed the Court's concerns expressed at the December 19, 2018 omnibus hearing.

3. On March 12, 2019, AAFAF submitted its *Limited Response and Reservation of Rights Regarding Fee Examiner's Fourth Interim Report on Presumptive Standards Motion and on Professional Fees and Expenses* [Dkt. No 5572] (the "**AAFAF Response**"). AAFAF sought to adjourn the Additional Presumptive Standards Motion to the April 24, 2019 omnibus hearing to allow it and the Fee Examiner to continue discussing the issues raised in the AAFAF Response.

4. With the Fee Examiner's consent, the Court adjourned consideration of the Additional Presumptive Standards Motion—first, to the April 24 omnibus hearing and, then, to the June 12 omnibus hearing.

5. On April 23, and in additional conversations, the Fee Examiner and counsel met in person with AAFAF representatives and counsel to address concerns raised in the AAFAF Response. Taking those concerns into account, and continuing the dialogue with other counsel, the Fee Examiner now submits as **Exhibit 1** a revised proposed *Order Imposing Additional*

*Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or Other Sub-Retained Professionals* (the "**Revised Proposed Order**") for the Court's consideration.

6. The Revised Proposed Order reflects comments by the Court and many of the professionals through several months of exhaustive discussions and negotiations.

7. While the consultative process has been productive, it has reached its limits, and the issues presented by professional rate increase remain of significant concern, both immediately and as the case progresses.

8. The Fee Examiner believes the Revised Proposed Order addresses the Court's and parties' concerns, recognizing that any ultimate determination of reasonableness always will be made in the context of a currently-pending fee application taking into account all of the facts and circumstances presented.

9. The Revised Proposed Order does not affect the right of any party in interest to object to any fee application for any reason, including rate increases.

10. Attached as **Exhibit 2** in redline format is the Revised Proposed Order compared with that filed on December 12, 2018 before the hearing on the Additional Presumptive Standards Motion.

11. The Fee Examiner represents that he, again, has circulated a draft of the Revised Proposed Order to all interested constituencies and has incorporated, to the extent possible, the widely varying views of each party. The Fee Examiner is unaware of any potential objection.

12. The Fee Examiner now submits the Revised Proposed Order for the Court's consideration and for further discussion at the June 12, 2019 omnibus hearing if the Court so requests.

WHEREFORE the Fee Examiner requests that the Court enter an order substantially in the form of the attached **Exhibit 1**.

Dated this 4th day of June, 2019.

WE HEREBY CERTIFY that on this date, we electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system that will send notification of such filing to all attorneys of record registered in the use of the CM/ECF system.

EDGE Legal Strategies, PSC

  *s/Vilmarys M. Quiñones Cintrón*
Eyck O. Lugo
Vilmarys M. Quiñones Cintrón
252 Ponce de León Avenue
Citibank Tower, 12th Floor
San Juan, PR 00918
Telephone: (787) 522-2000
Facsimile: (787) 522-2010

*Puerto Rico Counsel for Fee Examiner*

GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Telephone: (608) 257-3911
Facsimile: (608) 257-0609

Katherine Stadler (*Pro Hac Vice*)

*Counsel for the Fee Examiner*

20668566.1

# EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re<br><br>THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as a representative of<br><br>THE COMMONWEALTH OF PUERTO RICO<br>*et al.*,<br><br>Debtors.[1] | PROMESA<br>Title III<br><br>No. 17 BK 3283-LTS<br><br>**(Jointly Administered)** |

### ORDER IMPOSING ADDITIONAL PRESUMPTIVE STANDARDS: RATE INCREASES AND THE RETENTION OF EXPERT WITNESSES OR OTHER SUB-RETAINED PROFESSIONALS

Upon the *Fee Examiner's Motion to Impose Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or other Sub-Retained Professionals* (the "**Motion**"); and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having conducted a hearing on December 19, 2018 denying the motion without prejudice and inviting its resubmission as in the best interests of the Debtors, their creditors, and other parties in interest; and the Court having heard status reports on

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the: (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

the parties' discussions at omnibus hearings on March 13 and April 24, 2019; and the Court having found that the Fee Examiner provided adequate and appropriate notice of the Motion under the circumstances, including that the relief sought in the Motion is supported by good cause as contemplated by Bankruptcy Rule 9006, and that no other or further notice is required; and the Court having reviewed the Motion and supplemental explanatory information and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1. The Motion is **GRANTED**;

2. The following additional presumptive standards, which the Fee Examiner has represented embody standards generally and consistently applied since the outset of the review process, shall continue to be applied in the review of fee applications filed in these Title III cases after the entry of this Order:

    a) Professionals seeking fees or expenses through the Title III fee process shall not submit reimbursement requests for any other firm's professional (legal, financial advisory, investment banking, or accounting) services, whether or not those sub-retained services are characterized as independent contractor, expert witness, or consultant fees.

        1. If a professional's retention order or agreement allows for the sub-retention of other professionals, including expert witnesses, any such sub-retention shall be the subject of a notice certifying that the professional received the prior consent of its client to retain the expert or consultant and disclosing the terms of the expert's or consultant's engagement. Prospectively, the Fee Examiner, the U.S. Trustee, the Debtors, the Financial Oversight and Management Board, or an official committee may object to the retention of a sub-retained professional for any reason, including that the services to be provided are unnecessarily duplicative of another professional's services; and

        2. Any sub-retained consultant or expert witness fees charged as expenses in another professional's fee application should be accompanied by all of the supporting information and data required of retained professionals; and

      3. This presumption shall not apply to sub-retained professionals billing less than $50,000 in any four-month interim compensation period or $250,000 in the aggregate.

  b) The Fee Examiner will continue to identify Hourly Rate Increases[2] and will evaluate such increases for reasonableness on a timekeeper-by-timekeeper basis taking into account a number of factors, including but not limited to:

      1. Whether the change is consistent with the terms of any Contract[3] between any professional and a Debtor or Commonwealth Entity;[4]

      2. Whether the increase is the result of a Promotion;[5]

      3. Whether the individual timekeeper has advanced within their organization consistent with a lock-step compensation system for associates or non-owner timekeepers based on demonstrated developing skill, experience, or competency within that timekeeper's organization (a "Seniority-based Advancement");[6]

      4. Whether the increase is at or below the reported rate of inflation as published by the Bureau of Labor statistics.[7]

      5. Whether the professional has provided the required certifications set forth in subsection (c) herein.

      6. Whether the budget and certification process mandated by PROMESA directly affects professional compensation.

      7. Whether and the extent to which the professional has agreed to a fee reduction or discount.

  c) The following notice, disclosure, and certification requirements shall apply:

      1. Every professional fee applicant proposing an Hourly Rate Increase for any reason other than pursuant to the terms of a Contract shall file:

---

[2] "Hourly Rate Increase" includes any increase in rates above those charged in the most recent interim fee period, however named or characterized.
[3] "Contract" means any written document outlining the nature and scope of a professional's representation of a client, but only to the extent the document contains provisions that specify allowable rate adjustments, both with respect to effective date and specific amount.
[4] "Debtor or Commonwealth Entity" means any Title III Debtor or the Financial Oversight and Management Board.
[5] "Promotion" means that an individual timekeeper has advanced from a position of associate or other non-owner timekeeper to a position of owner, director, partner, shareholder, special counsel, or senior counsel.
[6] An Hourly Rate Increase of seven percent or less per year will be viewed as presumptively reasonable.
[7] For a point of reference, that rate for the New York-Newark-Jersey City metropolitan area was 1.9 percent from 2017 to 2018. *See* https://www.bls.gov/regions/new-york-new-jersey.

3

      i. A sworn certification signed by the professional verifying that the professional's client authorized the rate increase, both with respect to effective date and specific amount, on a timekeeper-by-timekeeper basis; and

      ii. For Hourly Rate Increases after the date of this Order, a notice, at least 21-days prior to the proposed implementation of an Hourly Rate Increase, informing the Court and public of the proposed rate adjustment on a timekeeper-by-timekeeper basis; and

      iii. If the application includes any Hourly Rate Increase based on a Promotion or Seniority-based advancement, a certification disclosing:

          1. The firm's complete hourly rate schedule, by year of bar admission, both before and after implementation of the rate adjustment or, in the case of financial advisors, by title; and

          2. Describing the mechanism or methodology used to adjust rates based on a timekeeper's developing skill, experience, or professional advancement; and

          3. That the Hourly Rate Increases imposed for timekeepers working on these Title III cases are consistent, both in amount and timing, with those imposed for timekeepers in the same professional services organization not working on these Title III cases.

2. Every professional fee applicant proposing an Hourly Rate Increase pursuant to the terms of a Contract between the professional and a Debtor or Commonwealth Entity shall file:

      i. A sworn certification signed by the professional fee applicant attaching the Contract, identifying the rate increase provisions thereof, and certifying that the rate increases reflected in the fee application are consistent with the terms of the Contract and that the rate increase provisions in the Contract were negotiated with the professional's client in good faith and at arms' length; and

      ii. For Hourly Rate Increases after the date of this Order, a notice, at least 21-days prior to the proposed implementation of an Hourly Rate Increase, informing the Court and public of the proposed rate adjustment on a timekeeper-by-timekeeper basis.

d) Whenever possible, the following tasks should be performed by Puerto Rico counsel or co-counsel, and the failure to delegate such matters to Puerto Rico counsel may be a factor in the reasonableness analysis:

1. Routine claims objections and responses;

2. Motions to assume or reject executory contracts or leases and motions to fix cure amounts related thereto;

3. Routine avoidance actions;

4

    4. Routine motions to lift the automatic stay or for declaratory ruling on the applicability of the automatic stay.

  e) The Fee Examiner, Debtors, Financial Oversight and Management Board or official committee may object to rate increases for any reason, including, but not limited to, their failure to recognize or apply these presumptions.

  f) Other than agreement terms expressly addressing Hourly Rate Increases, the failure of a professional fee agreement to comply with these presumptive standards shall not be a basis for invalidating any other provision a fee agreement, provided that the fee agreement is otherwise valid and enforceable.

3. The burden remains on each professional to demonstrate the reasonableness and necessity of fees and expenses that do not meet the standards and certification requirements set forth above in light of the facts and circumstances presented.

4. Nothing in this Order shall restrict the U.S. Trustee or the Fee Examiner from objecting to a professional's fees and expenses even within the parameters of these presumptions.

5. Nothing in this Order shall restrict the Fee Examiner from, in his discretion, electing *not* to apply a presumption to a professional application if, in his judgment, application of the presumption would be unreasonable under the circumstances.

6. Nothing in this Order shall prevent any party from challenging or rebutting any of the presumptions set forth herein, which are general guidelines only.

7. Nothing in this Order shall alter the terms of the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932], which remains in full force and effect.

8. Fees incurred by applicants to provide the basis for rebutting a presumption in an initially filed fee application are compensable if they are otherwise reasonable, taking into account the good faith basis for the applicant's position.

9. The Fee Examiner may, upon notice and a hearing, request additional presumptions based on issues that emerge in the review of subsequent or pending but unresolved interim fee applications.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

11. This Order resolves docket entry no. 4371.

SO ORDERED.

Dated: _____, 2019

                                                                                                             LAURA TAYLOR SWAIN
                                                                                                             United States District Judge

20563928.1

# EXHIBIT 2

<del>12/12/2018</del> Fee Examiner <del>Revised</del>Submission Proposed <del>Order</del>06/04/2019

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **In re** | ) PROMESA<br>) Title III<br>) |
| THE FINANCIAL OVERSIGHT AND<br>MANAGEMENT BOARD FOR PUERTO RICO, | ) No. 17 BK 3283-LTS<br>)<br>) |
| as a representative of | ) **(Jointly Administered)**<br>)<br>) |
| THE COMMONWEALTH OF PUERTO RICO<br>*et al.*, | )<br>)<br>) |
| Debtors.[1] | )<br>) |

**ORDER IMPOSING ADDITIONAL PRESUMPTIVE STANDARDS: RATE
INCREASES AND THE RETENTION OF EXPERT WITNESSES OR OTHER
SUB-RETAINED PROFESSIONALS**

Upon the *Fee Examiner's Motion to Impose Additional Presumptive Standards: Rate Increases and the Retention of Expert Witnesses or other Sub-Retained Professionals* (the "**Motion**"); and the Court having found it has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a); and it appearing that venue is proper pursuant to PROMESA section 307(a); and the Court having <del>found that the relief requested in the Motion is</del>conducted a hearing on December 19, 2018 denying the motion without prejudice and inviting its resubmission as in the best interests of the Debtors, their creditors, and other parties in

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the:  (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and, (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

interest; and the Court having heard status reports on the parties' discussions at omnibus hearings on March 13 and April 24, 2019; and the Court having found that the Fee Examiner provided adequate and appropriate notice of the Motion under the circumstances, including that the relief sought in the Motion is supported by good cause as contemplated by Bankruptcy Rule 9006, and that no other or further notice is required; and the Court having reviewed the Motion and supplemental explanatory information and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY ORDERED THAT**:

1. The Motion is **GRANTED**;

2. The following additional presumptive standards, which the Fee Examiner has represented embody standards generally and consistently applied since the outset of the review process, shall continue to be applied in the review of fee applications filed in these Title III cases after the entry of this Order:

    a) Professionals seeking fees or expenses through the Title III fee process shall not submit reimbursement requests for any other firm's professional (legal, financial advisory, investment banking, or accounting) services, whether or not those sub-retained services are characterized as independent contractor, expert witness, or consultant fees.

        1. If a professional's retention order or agreement allows for the sub-retention of other professionals, including expert witnesses, any such sub-retention occurring on or after the date of this Order shall be the subject of a notice certifying that the professional hasreceived the prior written consent of its client to retain the expert or consultant and disclosing the terms of the expert's or consultant's engagement. The Prospectively, the Fee Examiner, the U.S. Trustee, the DebtorDebtors, the Financial Oversight and Management Board, or an official committee may object to the retention of a sub-retained professional for any reason, including that the services to be provided are unnecessarily duplicative of another professional's services; and

        2. Any sub-retained consultant or expert witness fees charged as expenses in another professional's fee application should be accompanied by all of the supporting information and data required of retained professionals; and

2

3. This presumption shall not apply to sub-retained professionals billing less than $50,000 in any four-month interim compensation period or $250,000 in the aggregate.

b) The Fee Examiner will continue to identify Hourly ~~billing rate~~ Rate Increases[2] and will evaluate such increases ~~imposed by professionals submitting fees~~ for ~~Court approval shall be presumptively unreasonable unless:~~

~~1.~~b) ~~The professional firm certifies that it has obtained the express written permission of its client for the rate increases~~reasonableness on a timekeeper-by-timekeeper basis~~; and~~ taking into account a number of factors, including but not limited to:

~~The~~

1. Whether the change is consistent with the terms of any Contract[3] between any professional and a Debtor or Commonwealth Entity;[4]

2. Whether the increase is the result of a Promotion;[5]

3. Whether the individual timekeeper has advanced within their organization consistent with a lock-step compensation system for associates or non-owner timekeepers based on demonstrated developing skill, experience, or competency within that timekeeper's organization (a "Seniority-based Advancement");[6]

4. Whether the increase is at or below the reported rate of inflation as published by the Bureau of Labor statistics.[7]

5. Whether the professional has ~~filed~~provided the required certifications set forth in subsection (c) herein.

6. Whether the budget and certification process mandated by PROMESA directly affects professional compensation.

7. Whether and the extent to which the professional has agreed to a fee reduction or discount.

c) The following notice, disclosure, and certification requirements shall apply:

---

[2] "Hourly Rate Increase" includes any increase in rates above those charged in the most recent interim fee period, however named or characterized.
[3] "Contract" means any written document outlining the nature and scope of a professional's representation of a client, but only to the extent the document contains provisions that specify allowable rate adjustments, both with respect to effective date and specific amount.
[4] "Debtor or Commonwealth Entity" means any Title III Debtor or the Financial Oversight and Management Board.
[5] "Promotion" means that an individual timekeeper has advanced from a position of associate or other non-owner timekeeper to a position of owner, director, partner, shareholder, special counsel, or senior counsel.
[6] An Hourly Rate Increase of seven percent or less per year will be viewed as presumptively reasonable.
[7] For a point of reference, that rate for the New York-Newark-Jersey City metropolitan area was 1.9 percent from 2017 to 2018. See https://www.bls.gov/regions/new-york-new-jersey.

1. Every professional fee applicant proposing an Hourly Rate Increase for any reason other than pursuant to the terms of a Contract shall file:

    i. A sworn certification signed by the professional verifying that the professional's client authorized the rate increase, both with respect to effective date and specific amount, on a timekeeper-by-timekeeper basis; and

    2.ii. For Hourly Rate Increases after the date of this Order, a notice, at least 21-days prior to the proposed implementation of such rate increasesan Hourly Rate Increase, informing the Court and public of the proposed rate adjustment on a timekeeper-by-timekeeper basis;[8] provided however, that professionals whose engagement contracts are with the Financial Oversight and Management Board or AAFAF, are a matter of public record, and contain an explicit mechanism (including timing and quantified limitations substantially consistent with the standards outlined in this Order) for the imposition of rate increases shall not be required to file such notice;[9] and

3. The rate increases do not exceed, for any individual timekeeper during any single calendar year:

    i. For any owner, director, partner, shareholder, special counsel, or senior counsel, five percent of the rates previously charged; or

    ii. For associates or non-owner professionals engaged in their field of practice for a period of 10 or fewer years:

        1. Seven percent of the rates previously charged as a result of the timekeeper's advancing seniority; and

        2. Five percent of the rates previously charged for any reason other than a timekeeper's advancing seniority.

4. These caps shall not apply to associates or non-owner timekeepers who are promoted to a position of owner, director, partner, shareholder, special counsel, or senior counsel provided that the rate increases are otherwise consistent with the rates charged by peers of similar skill and seniority within the timekeeper's organization working on these cases.

5. The term "rate increases" includes any increase in rates above those initially charged, whether denominated "step increases" or otherwise, but does not include fee adjustments made to "gross up" fees to offset the effect of any

---

[8] Notwithstanding this provision, for rate increases scheduled to take effect in January 2019, the required notice period shall be reduced to seven calendar days.
[9] If strict compliance with the notice requirements in this Order is not possible, professionals should disclose rate increases as soon as is practicable but *no later than* seven days after the increase is proposed.

4

~~Commonwealth tax on professional fees not in existence at the commencement of a professional's engagement.[10]~~

  iii. If the application includes any Hourly Rate Increase based on a Promotion or Seniority-based advancement, a certification disclosing:
    1. The firm's complete hourly rate schedule, by year of bar admission, both before and after implementation of the rate adjustment or, in the case of financial advisors, by title; and
    2. Describing the mechanism or methodology used to adjust rates based on a timekeeper's developing skill, experience, or professional advancement; and
    3. That the Hourly Rate Increases imposed for timekeepers working on these Title III cases are consistent, both in amount and timing, with those imposed for timekeepers in the same professional services organization not working on these Title III cases.

2. Every professional fee applicant proposing an Hourly Rate Increase pursuant to the terms of a Contract between the professional and a Debtor or Commonwealth Entity shall file:
  i. A sworn certification signed by the professional fee applicant attaching the Contract, identifying the rate increase provisions thereof, and certifying that the rate increases reflected in the fee application are consistent with the terms of the Contract and that the rate increase provisions in the Contract were negotiated with the professional's client in good faith and at arms' length; and
  ii. For Hourly Rate Increases after the date of this Order, a notice, at least 21-days prior to the proposed implementation of an Hourly Rate Increase, informing the Court and public of the proposed rate adjustment on a timekeeper-by-timekeeper basis.

d) Whenever possible, the following tasks should be performed by Puerto Rico counsel or co-counsel, and the failure to delegate such matters to Puerto Rico counsel may be a factor in the reasonableness analysis:

1. Routine claims objections and responses;

2. Motions to assume or reject executory contracts or leases and motions to fix cure amounts related thereto;

3. Routine avoidance actions;

---

[10] ~~To the extent such a fee adjustment is necessary, professionals should calculate the adjustments as a single line item addition to total fees requested. No adjustments to timekeeper hourly billing rates, rates (other than those embodied in the single line item adjustment), beyond those authorized in this Order, shall be imposed to offset any tax liability.~~

5

> 4. Routine motions to lift the automatic stay or for declaratory ruling on the applicability of the automatic stay.
>
> e)e) The Fee Examiner, ~~Debtor, Federal~~Debtors, Financial Oversight and Management Board or official committee may object to rate increases for any reason, including, but not limited to, their failure to ~~comply with~~recognize or apply these presumptions.
>
> d)f) Other than agreement terms expressly addressing ~~rate increases~~Hourly Rate Increases, the failure of a professional fee agreement to comply with these presumptive standards shall not be a basis for invalidating any other provision ~~of the~~a fee agreement, provided that the fee agreement is otherwise valid and enforceable.

3. The burden remains on each professional to demonstrate the reasonableness and necessity of fees and expenses ~~exceeding these standards~~that do not meet the standards and certification requirements set forth above in light of the facts and circumstances presented.

4. Nothing in this Order shall restrict the U.S. Trustee ~~and~~or the Fee Examiner from objecting to a professional's fees and expenses even within the parameters of these presumptions.

5. Nothing in this Order shall restrict the Fee Examiner from, in his discretion, electing *not* to apply a presumption to a professional application if, in his judgment, application of the presumption would be unreasonable under the circumstances.

6. Nothing in this Order shall prevent any party from challenging or rebutting any of the presumptions set forth herein, which are general guidelines only.

7. Nothing in this Order shall alter the terms of the *Order on Fee Examiner's Motion to Impose Presumptive Standards and Timeliness Requirements for Professional Fee Applications* [Dkt. No. 3932], which remains in full force and effect.

8. Fees incurred by applicants to provide the basis for rebutting a presumption in an initially filed fee application are compensable if they are otherwise reasonable, taking into account the good faith basis for the applicant's position.

9. The Fee Examiner may, upon notice and a hearing, request additional presumptions based on issues that emerge in the review of subsequent or pending but unresolved interim fee applications.

10. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

11. This Order resolves docket entry no. 4371.

SO ORDERED.

Dated: _____, ~~2018~~2019

_____
LAURA TAYLOR SWAIN
United States District Judge

20707246.1

7