# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | | |
|---|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>Debtors.[1] | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03283 (LTS) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO<br><br>as representative of<br><br>THE EMPLOYEES RETIREMENT SYSTEM OF THE GOVERNMENT OF THE COMMONWEALTH OF PUERTO RICO,<br><br>Debtor. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | PROMESA<br>Title III<br><br>Case No. 3:17-bk-03566 (LTS) |

**PUERTO RICO FUNDS' OMNIBUS REPLY TO OBJECTIONS TO MOTION TO VACATE APPOINTMENT OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN TITLE III CASE OF EMPLOYEES RETIREMENT SYSTEM**

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number listed as a bankruptcy case number due to software limitations and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481), (ii) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686), (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808), (iv) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474), and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747).

# **TABLE OF CONTENTS**

Page

TABLE OF CONTENTS ................................................................................................................. i

TABLE OF AUTHORITIES .......................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................... 1

ARGUMENT .................................................................................................................................. 3

I.    THE UCC SUFFERS FROM AN IRRECONCILABLE CONFLICT OF INTEREST. ... 3

II.   THE COMPOSITION OF THE UCC RENDERS IT AN INADEQUATE REPRESENTATIVE OF UNSECURED CREDITORS OF ERS. .................................. 7

     A.    The SEIU's Members' Claims against ERS do Not Make it an Adequate Representative of ERS's Unsecured Creditors. ........................................................ 8

     B.    The Court's Ruling at the May 16 Hearing is Inapposite. .................................... 10

III.  THE COURT HAS AUTHORITY TO VACATE APPOINTMENT OF THE UCC. ..... 11

IV.  THE TIMING OF THE MOTION IS NOT MATERIAL. .............................................. 13

V.   THE UCC IS DUPLICATIVE OF THE RETIREE COMMITTEE. .............................. 15

CONCLUSION ............................................................................................................................. 15

Case:17-03283-LTS Doc#:7217 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc: Main
Document Page 3 of 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Altair Glob. Credit Opporunities Fund (A), L.L.C. v. P.R. AAA Portfolio Bond Fund, Inc. (In re Fin. Oversight & Mgm't Bd.)*,
   914 F.3d 964 (1st Cir. 2019) ......................................................................................................... 3

*Ill. State Bd. of Elections v. Socialist Workers Party*,
   440 U.S. 173 (1979) ................................................................................................................... 13

*In re Altair Airlines, Inc.*,
   727 F.2d 88 (3d Cir. 1984) ..................................................................................................... 6, 10

*In re Barney's, Inc.*,
   197 B.R. 431 (Bankr. S.D.N.Y. 1996) ......................................................................................... 6

*In re Caesars Entm't Operating Co.*,
   526 B.R. 265 (Bankr. N.D. Ill. 2015) ........................................................................................ 12

*In re City of Detroit*,
   519 B.R. 673 (Bankr. D. Mich. 2014) ................................................................................. 11, 12

*In re Continental Airlines Corp.*,
   64 B.R. 874 (Bankr. S.D. Tex. 1986) ....................................................................................... 8, 9

*In re Dana Corp.*,
   344 B.R. 35 (Bankr. S.D.N.Y. 2006) ........................................................................................... 6

*In re Enduro Stainless, Inc.*,
   59 B.R. 603 (Bankr. N.D. Ohio 1986) ....................................................................................... 10

*In re Enron Corp.*,
   279 B.R. 671 (Bankr. S.D.N.Y. 2002) ......................................................................................... 5

*In re Garden Ridge*,
   2005 Bankr. LEXIS 323 (Bankr. D. Del. Mar. 2, 2005) .............................................................. 5

*In re McLean Industries, Inc.*,
   70 B.R. 852 (Bankr. S.D.N.Y. 1987) ........................................................................................... 8

*In re Northeast Dairy Cooperative Federation, Inc.*,
   59 B.R. 531 (Bankr. N.D.N.Y. 1986) ........................................................................................ 10

*In re Orfa Corp. of Phila.*,
  121 B.R. 294 (Bankr. E.D. Pa. 1990) ...................................................................................14

*In re Pac. Ave., L.L.C.*,
  467 B.R. 868 (Bankr. W.D.N.C. 2012).............................................................................11, 13

*In re Pub. Serv. Co.*,
  89 B.R. 1014 (Bankr. D.N.H. 1988) .....................................................................................14

*In re Schatz Fed. Bearings Co., Inc.*,
  5 B.R. 543 (Bankr. S.D.N.Y. 1980).......................................................................................10

*In re Shorebank Corp.*,
  467 B.R. 156 (Bankr. N.D. Ill. 2012) .................................................................................5, 13

*In re U.S. Truck Co.*,
  89 B.R. 618 (E.D. Mich. 1989).............................................................................................10

*In re White Motor Credit Corp.*,
  18 B.R. 720 (Bankr. N.D. Ohio 1980) ....................................................................................8

*Law v. Siegel*,
  571 U.S. 415 (2014)..............................................................................................................11

*Mirant Ams. Energy Mktg., L.P. v. Official Comm. Of Unsecured Creditors of
  Enron Corp.*,
  2003 U.S. Dist. LEXIS 18149 (Bankr. S.D.N.Y. Oct. 10, 2003) ...........................................6

## STATUTES AND OTHER AUTHORITY

11 U.S.C. § 105..................................................................................................2, 3, 11, 12

11 U.S.C. § 105(a) ........................................................................................................12

11 U.S.C. § 926..............................................................................................................10

11 U.S.C. § 1102.................................................................................................... passim

11 U.S.C. § 1102(a)(4)...........................................................................................10, 13

11 U.S.C. § 1102(b)(1) ....................................................................................................2

Fed. R. Bankr. P. 2019 ..............................................................................7, 9, 10, 11

The Puerto Rico Funds[2] submit this reply (the "Reply") to the Objection of Official Committee of Unsecured Creditors to Motion of Puerto Rico Funds to Vacate Appointment of Official Committee of Unsecured Creditors in Title III Case of Employees Retirement System [Docket No. 532][3] (the "UCC Objection") and the Objection of United States Trustee to Motion of the Puerto Rico Funds to Vacate the Appointment of the Official Committee of Unsecured Creditors in the Employees Retirement System of the Government of the Commonwealth of Puerto Rico Title III Case [Docket No. 7129 in Case No. 17-3283] (the "UST Objection," and together with the UCC Objection, the "Objections"). In support of the relief requested in the Motion, the Puerto Rico Funds respectfully state as follows:

## PRELIMINARY STATEMENT

1. The UST Objection sums up why the UCC's appointment should be vacated:

> "Although **no ERS unsecured creditors have been willing to serve on a committee**, it is not clear that the ERS unsecured creditors would be better off with no representation by the Committee." UST Objection p. 10 (emphasis added).

The above statement underscores the issue at bar—and the need for the relief sought in the Motion.

2. Put simply, as is customary, at the outset of the ERS Title III case, the U.S. Trustee sought indications of interest from ERS creditors to serve on an official committee of unsecured creditors for the ERS case, but "no ERS creditors [were] willing to serve on a committee." *Id.* Rather than ***not*** appoint a committee in the ERS case based upon the admitted lack of creditor interest to serve on such committee as is customary in bankruptcy cases, the U.S.

---

[2] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the *Motion of the Puerto Rico Funds to Vacate the Appointment of the Official Committee of Unsecured Creditors in the Employees Retirement System of the Government of the Commonwealth of Puerto Rico Title III Case* [Docket No. 433 in Case No. 17-3566] (the "Motion").

[3] All references to pleadings are to the ERS Title III case (Case No. 17-3566) unless otherwise indicated.

1

Trustee *borrowed* the committee appointed in the Commonwealth Title III case and appointed it to simultaneously act as the committee in the ERS case. Clearly, such appointment subverts the purpose of section 1102 of the Bankruptcy Code, in which Congress expressly stated that the composition of the committee "shall ordinarily consist of the persons, willing to serve, that hold the seven largest *claims against the debtor* of the kinds represented on such committee[.]" 11 U.S.C. § 1102(b)(1) (emphasis added). The U.S. Trustee importing the Commonwealth's committee to act as the committee in the ERS case (without members made up of ERS creditors) is without merit, and relief is required by this Court.

3. In their Objections, both the U.S. Trustee and the UCC argue that the Bankruptcy Code renders this Court powerless to review or remedy the U.S. Trustee's appointment of the Commonwealth's committee as the unsecured creditors committee in the ERS case. That is wrong. As the fiduciary for the Commonwealth's and ERS's unsecured creditors, the interlocking members of the UCC are caught in the cross-hairs of litigation between the Commonwealth, ERS, and the ERS bondholders. There is no way to reconcile this conflict; no matter which side the UCC supports, it will breach its fiduciary duty to a segment of its constituencies. Indeed, to date, the UCC's actions have clearly favored the interests of Commonwealth creditors over the interests of ERS creditors. This conflict of interest renders the UCC an ineffective representative of unsecured creditors in the ERS case and the Court is authorized to fashion relief.

4. None of the other Objections' arguments have merit. Section 105 of the Bankruptcy Code grants this Court broad equitable powers, including the power to vacate a committee that is unable to effectively represent all of its constituents' interests. Indeed, this power was firmly established in the *Detroit* municipal bankruptcy case and is consistent with the

2

Supreme Court's section 105 jurisprudence. The timing of the Motion reflects the fact that the UCC did not take any significant action in the ERS case until March 2019. The Retiree Committee (which has been actively involved in the ERS case) is better suited than the UCC to represent the interests of ERS' unsecured creditors.

5. As set forth herein, the Motion should be granted.

## ARGUMENT

### I. THE UCC SUFFERS FROM AN IRRECONCILABLE CONFLICT OF INTEREST.

6. Recognizing that the UCC's conflict of interest is fatal to its ability to carry out its fiduciary duties, both the UCC and the U.S. Trustee attempt to downplay the severity of such conflict. The Objections try to characterize the conflict as a "very run-of-the mill" conflict between the members of the UCC and the unsecured creditors of ERS that is common in complex, multi-debtor cases. *See* UCC Objection ¶¶ 27–30, UST Objection pp. 9–10. Such attempts to gloss over the conflict do nothing to address its disabling effect.

7. ERS is a Title III Debtor wholly distinct from the Commonwealth. Contrary to the Objections' assertions, the Title III cases are not comparable to "complex multi-debtor bankruptcy cases," UCC Objection ¶ 27, where multiple affiliated entities proceed in a jointly administered Chapter 11 case on account of their corporate parent-subsidiary relationship. Here, **ERS is a trust** created under Puerto Rico law with no subsidiary relationship to the Commonwealth. *See Altair Glob. Credit Opporunities Fund (A), L.L.C. v. P.R. AAA Portfolio Bond Fund, Inc. (In re Fin. Oversight & Mgm't Bd.)*, 914 F.3d 964, 704 (1st Cir. 2019) ("The System is a trust and government agency created in 1951 by an Act of the Commonwealth. [citing ERS enabling act] . . . It is designated as 'independent and separate' from other

3

Commonwealth agencies. [citing ERS enabling act]"). There is no relationship between these two entities that would equate their circumstances to those of a family of corporate entities.

8. The Court recognized the stark difference between the Title III cases and typical multi-debtor cases at the first day hearing in connection with the Oversight Board's motion seeking joint administration of the Title III cases. In particular, the Court acknowledged that "the Oversight Board as debtor representative is fundamentally and irretrievably conflicted," May 17, 2017 Hr'g Tr. 19:13–15,[4] and accepted the Oversight Board's proposal of a setup between the Commonwealth and COFINA to ensure unconflicted representation of both entities with respect to the Commonwealth/COFINA dispute. *See Id.* 19:12–20:3. The Court explained that the proposal from the Oversight Board was "a setup in which there is a representative body arguing the COFINA side and a separate representative body arguing the Commonwealth side," and that the "structure is expected to be adapted and continued whether it's litigation or negations[.]" *Id.* To ensure that a conflict would not impede the progress of the Title III cases, the Court limited its entry of the Joint Administration Order to "procedural purposes only." *Id.* 68:21–22; [Docket No. 1417 in Case No. 17-3283 ¶ 2].

9. The UCC's interlocking membership of ERS and Commonwealth unsecured creditors poses the same concern of "fundamental and irretrievable" conflict because its constituencies are fighting over the same funds and on all material issues in the ERS case. The Commonwealth and the ERS bondholders are currently engaged in active litigation concerning (1) whether the ERS bonds were issued *ultra vires*, and (2) the propriety of the Commonwealth's enactment of the Post-Petition Legislation to dissolve ERS, strip ERS of its assets, and implement the "PayGo" system, thereby wiping out the ERS bondholders' collateral. No matter

---

[4] The May 17, 2017 hearing transcript is attached hereto as **Exhibit A**.

4

which side the UCC favors, it will breach its fiduciary duties to either ERS' unsecured creditors or the Commonwealth's.

10. With respect to the *ultra vires* dispute, the UCC takes the position that the ERS bonds were issued illegally. *See Omnibus Objection of Official Committee of Unsecured Creditors to Claims Asserted by Holders of Bonds Issued by Employees Retirement System of Government of Puerto Rico* ¶¶ 23–55 [Docket No. 381] (the "UCC Omnibus Claim Objection"). It follows that the UCC will take the position that the funds should continue to be diverted away from ERS to the Commonwealth, which has assumed the pension obligations of ERS and has passed legislation to dissolve ERS. When it does, the UCC will breach its duty to ERS's unsecured creditors. With respect to PayGo, if the UCC takes the position that PayGo validly transferred ERS's assets to the Commonwealth, it will again breach its fiduciary duty to ERS's unsecured creditors. If it takes the position that the implementation of PayGo was illegal, it will breach its fiduciary duty to the Commonwealth's unsecured creditors.[5] The UCC is thus "unable to take a position on important matters and [is] ineffective." *In re Enron Corp.*, 279 B.R. 671, 686 (Bankr. S.D.N.Y. 2002).

11. As cases cited in both Objections indicate, conflicts of a magnitude that prevent the "committee from upholding its fiduciary obligations to all general unsecured creditors" warrant the disbandment or reconstitution of the committee. *See In re Garden Ridge*, 2005 Bankr. LEXIS 323, at *12 (Bankr. D. Del. Mar. 2, 2005); *In re Shorebank Corp.*, 467 B.R. 156, 163 (Bankr. N.D. Ill. 2012). And, contrary to the UCC's assertions, the conflict of interest that it faces is real, not hypothetical, and renders it ineffective.

---

[5] Tellingly, at the May 16, 2019 hearing, the UCC attempted to sidestep a similar problem concerning its conflicted representation of HTA and Commonwealth unsecured creditors, explaining that it will argue its position in the alternative, *i.e.* for the benefit of HTA unsecured creditors and in the alternative for Commonwealth unsecured creditors. *See* May 16, 2019 Hr'g Tr. at 32:5–15 (attached to UCC's Objection as Exhibit B). The UCC effectively admitted that it was paralyzed by the conflicting interests of its constituencies.

5

12. Cases that have allowed a conflicted committee to represent unsecured creditors rely on the fact that, despite the conflict, the creditors "nonetheless continue to possess greater commonality as unsecured creditors." *Mirant Ams. Energy Mktg., L.P. v. Official Comm. Of Unsecured Creditors of Enron Corp.*, 2003 U.S. Dist. LEXIS 18149, at *24 (Bankr. S.D.N.Y. Oct. 10, 2003). Because the kinds of conflict at issue in such cases are limited to disagreements as to strategy and negotiations, courts have sanctioned the conflict as productive and adding to the dynamic of the committee. *See In re Altair Airlines, Inc.*, 727 F.2d 88, 90 (3d Cir. 1984) (approving committee whose members would potentially disagree whether to pursue liquidation or to continue the business); *In re Barney's, Inc.*, 197 B.R. 431, 444 (Bankr. S.D.N.Y. 1996) (approving appointment of creditor to committee despite creditor's interest in avoiding claim liquidation conflicting with other creditor's interest in maximizing value); *In re Dana Corp.*, 344 B.R. 35, 38 (Bankr. S.D.N.Y. 2006) (denying appointment of additional committee because "variety of viewpoints" on creditors committee did not require a separate committee "unless they impair the ability to reach a consensus").

13. The UCC's actions in the ERS case to date are very telling. Contrary to the UCC's assertion that it has acted in favor of ERS's unsecured creditors, UCC Objection ¶¶ 31–32, the UCC has demonstrated that it disproportionately favors the Commonwealth's unsecured creditors. Most prominently, in breach of its fiduciary duty to ERS creditors, the UCC joined ERS in supporting the dissolution of ERS in favor of the implementation of the "PayGo" system. *See Motion for Relief from Stay under 362(e)* [Docket No. 289] (ERS bondholders' motion seeking to prevent the implementation of PayGo); *Joinder of Official Committee of Unsecured Creditors to Debtor's and Retiree Committee's Objections to Motion of Certain Secured Creditors of Employees Retirement System of Government of Commonwealth of Puerto Rico for*

6

*Relief from Automatic Stay* [Docket No. 296]. The UCC failed to discharge its fiduciary duties to ERS's unsecured creditors by passively accepting the dissolution of the very entity against which its constituency holds claims and the transfer of such entity's assets to the Commonwealth.

14. The UCC has acted in line with ERS's creditors' interests only when doing so would not harm the interests of creditors of the Commonwealth. For example, the UCC joined ERS in opposing *The Puerto Rico Funds' Motion Conditioning the Automatic Stay on the Continuation of ERS Bondholder Protections or, Alternatively, to Enforce the Court's July 17, 2017 Order* [Docket Nos. 221, 231]. Most recently, it joined the Oversight Board in moving for entry of the joint stipulation allowing it to serve as co-plaintiff in avoidance actions brought in the ERS case. [Docket No. 6867 in Case No. 17-3283]. These actions had no negative effect on the Commonwealth's unsecured creditors. Moreover, none of the actions listed in the UCC Objection harm the Commonwealth's unsecured creditors. UCC Objection ¶ 31.

15. The UCC's actions have demonstrated that when the interests of Commonwealth creditors are at risk, the UCC stays on the sidelines or actively favors the interests of creditors of the Commonwealth, even when doing so harms the interests of creditors of ERS. The UCC's conflict of interest could not be more evident and cannot be overcome so long as the UCC is charged with representing unsecured creditors in both cases.

## II. THE COMPOSITION OF THE UCC RENDERS IT AN INADEQUATE REPRESENTATIVE OF UNSECURED CREDITORS OF ERS.

16. The UCC's representation of ERS's unsecured creditors is necessarily inadequate when **none** of its members hold claims against ERS. As detailed in the Motion, the UCC's Rule 2019 disclosure shows that its creditors are all creditors of the Commonwealth, not ERS.

17. In *In re White Motor Credit Corp.*, 18 B.R. 720, 722 (Bankr. N.D. Ohio 1980), the court held that "[a]s a matter of law, section 1102 indicates that each case should have a Court-appointed committee," adding that "[w]hile such language does not preclude the Court from appointing identical committees in related cases, it cannot be said to authorize a single committee" where "creditors of one debtor cannot be presumed to have a material or other qualifying interest in the assets or future of an affiliated debtor." Even cases that criticize *White Motor*, for example *In re McLean Industries, Inc.*, 70 B.R. 852 (Bankr. S.D.N.Y. 1987), do not support the UCC's position. In *McLean*, the court held that the "[s]election of one committee for two or more jointly administered cases does give rise to the concern that the committee not be overloaded with the creditors of one debtor to the detriment of the representational needs of the creditors of another debtor." *Id*. at 862. The *McLean* court thus acknowledged that a single committee is inappropriate where, as here, it is overloaded with the creditors of one debtor (the Commonwealth) to the detriment of creditors of another debtor (ERS).

18. The UCC contends that SEIU's members' claims against ERS makes it an appropriate ERS representative on the UCC. UCC Objection ¶¶ 36–37. However, as set forth below, the SEIU is neither a creditor of ERS for purposes of committee membership nor can it adequately represent ERS's unsecured creditors' interests.

### A. The SEIU's Members' Claims against ERS do Not Make it an Adequate Representative of ERS's Unsecured Creditors.

19. Unions are not creditors for purposes of the Bankruptcy Code unless the union holds a "claim" as defined in the Bankruptcy Code or there is statutory or contractual authority vested in the union to act on behalf of its members to pursue claims in the bankruptcy case. *See In re Continental Airlines Corp.*, 64 B.R. 874, 876–77 (Bankr. S.D. Tex. 1986). The *Continental Airlines* case considered whether it should accept airline employees' unions proofs of claim for

8

prepetition liabilities and damages arising from the rejection of collective bargaining agreements filed on behalf of the unions' employees. *Id.* at 876–77. The court rejected the proofs of claim because the union did not have statutory or contractual authorization to act on behalf of its employees in the bankruptcy case and the proofs of claim had "made no pretense of identifying the individual employees allegedly entitled to share in any recovery on the claims or the methodology for determining individual entitlements." *Id.* at 877–79, 880.

20. Here, the SEIU, like the unions in *Continental Airlines*, proffers no evidence that it is authorized to act on behalf of its employees in the ERS case. Instead, it merely references its proof of claim *in the Commonwealth case* as general grounds for its members' claims against the Commonwealth and ERS. *See Verified Statement of the Service Employees International Union Pursuant to Federal Rule of Bankruptcy Procedure 2019* [Docket No. 6882 in Case No. 17-3283] (the "<u>SEIU Rule 2019 Statement</u>") ¶¶ 3–4. Further, its proof of claim in the Commonwealth case fails to detail under what authority it purports to act on behalf of its members, makes no attempt at identifying individual members on behalf of whom it asserts claims, and omits any description of a method for determining individual entitlements to recoveries. *See* Claim No. 21351 in Case No. 17-3283, Attachment ¶¶ 1–3 (stating, without support, that SEIU "serve[s] as collective bargaining representative[] for certain bargaining units of employees employed by the Commonwealth of Puerto Rico"); *id.* Ex. A to Attachment (listing case numbers of unpaid, resolved grievance actions, without listing individual employees or proposed recoveries).

21. The cases cited by the UCC holding that a union can function as a creditor in a bankruptcy case on behalf of its members all found an express source of authorization—either statutory or contractual—that enabled the union to represent its members in the bankruptcy case.

9

*See, e.g.*, *In re Altair Airlines, Inc.*, 727 F.2d 88, 90-91 (3d Cir. 1984) (finding that CBA authorized union to act on behalf of its members); *In re U.S. Truck Co.*, 89 B.R. 618, 622–23 (E.D. Mich. 1989) (holding union was authorized to file proof of claim arising from breach of CBA under the relevant statute); *In re Enduro Stainless, Inc.*, 59 B.R. 603 (Bankr. N.D. Ohio 1986) (relying on *Altair Airlines* for holding union was a creditor); *In re Northeast Dairy Cooperative Federation, Inc.*, 59 B.R. 531, 532 (Bankr. N.D.N.Y. 1986) (holding union that was "the exclusive collective bargaining representative" of past employees of debtor was a creditor); *In re Schatz Fed. Bearings Co., Inc.*, 5 B.R. 543, 548 (Bankr. S.D.N.Y. 1980) (holding union was a creditor because it could enforce the debtor's contractual obligations in the context of the Taft-Hartley Act). Here, the SEIU has not proffered evidence of any such authorization.

### B. The Court's Ruling at the May 16 Hearing is Inapposite.

22. The UCC seeks to bolster its argument by taking out of context the Court's finding at the May 16, 2019 hearing that "Committee member SEIU is a direct creditor of ERS[.]" UCC Objection ¶ 36. At this hearing, the Court considered the motion to approve the joint stipulation between the Oversight Board, its Special Claims Committee, and the UCC related to joint prosecution of causes of action in the HTA and ERS cases [Docket No. 6867]. In that context, the Court adopted the UCC's argument that the SEIU's joinder to the motion satisfied the standing requirements under section 926 of the Bankruptcy Code. The purpose for appointment of a trustee under section 926 "derives from the possible reluctance of a debtor to bring an action against one of its creditors," 6 COLLIER ON BANKRUPTCY ¶ 926.02—a purpose wholly distinct from that of section 1102—to provide "adequate representation of creditors." 11 U.S.C. § 1102(a)(4).

23. In the SEIU Rule 2019 Statement, the SEIU purports to represent members holding claims against the Commonwealth "as a result of their employment with the

10

Commonwealth," as well as members holding claims against ERS for "pension and other post-employment benefits . . . as a result of their participation in [ERS]". SEIU Rule 2019 Statement ¶ 4. By its own admission, the SEIU represents unsecured creditors of both the Commonwealth and ERS. It is consequently conflicted in the same manner as the UCC.

### III.  THE COURT HAS AUTHORITY TO VACATE APPOINTMENT OF THE UCC.

24. The Court has authority under section 105 of the Bankruptcy Code to vacate the appointment of the UCC. *See In re City of Detroit*, 519 B.R. 673, 675 (Bankr. D. Mich. 2014); *In re Pac. Ave., L.L.C.*, 467 B.R. 868, 870 (Bankr. W.D.N.C. 2012).[6] The UCC and the U.S. Trustee attempt to distinguish the *Detroit* and *Pacific Avenue* cases on the ground that they were decided before *Law v. Siegel*, 571 U.S. 415 (2014), a case the Objections argue limited bankruptcy courts' equitable powers under section 105. UCC Objection ¶¶ 21–24; UST Objection 5–6. The *Siegel* case, however, only reiterates the Supreme Court's long-standing construction of the bankruptcy courts' equitable powers espoused in *Norwest Bank Worthington v. Ahlers* (a case decided 26 years before *Siegel*): "whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." 485 U.S. 197, 206 (1988). Thus, the *Siegel* decision does not undermine the courts' reasoning in *Detroit* and *Pacific Avenue*.

25. The UCC and U.S. Trustee next argue that the bankruptcy court lacks authority to vacate a statutory committee because neither sections 1102 nor 105 of the Bankruptcy Code confer such power on the bankruptcy court. UCC Objection ¶¶ 16–17; UST Objection 5–6; *see*

---

[6] The UCC Objection asserts various legal standards that may be applicable to the Court's determination whether to vacate the UCC in the ERS case. UCC Objection ¶¶ 39–43. Notably, none of the cases cited in the UCC Objection actually adopted a legal standard to apply. The Puerto Rico Funds have, in the Motion and herein, met their burden to show that the Court should vacate the UCC. As the Puerto Rico Funds explained in footnote 2 of the Motion, the 2005 amendments to the Bankruptcy Code adding subsection (a)(4) to section 1102 expressly gave bankruptcy courts the authority to change the membership of the UCC without any deference to the U.S. Trustee.

*In re Caesars Entm't Operating Co.*, 526 B.R. 265, 269 (Bankr. N.D. Ill. 2015). While the courts are split on whether a bankruptcy court has authority to vacate a statutory committee, the First Circuit has not ruled on the issue, and the Puerto Rico Funds submit that *Detroit* is the correctly decided opinion. The *Detroit* court first acknowledged the bounds of its equitable power: "[t]he bankruptcy court's broad equitable powers are . . . constrained to actions or determinations that are 'not inconsistent' with the Bankruptcy Code." *In re City of Detroit*, 519 B.R. at 680 (citations omitted). But because "nowhere does the bankruptcy code explicitly prohibit the bankruptcy court from disbanding an unsecured creditors' committee," the *Detroit* court held that "interpreting § 105 to authorize a bankruptcy court to do so is simply not inconsistent with any bankruptcy code provision." *Id.*

26. The UCC tries to distinguish *Detroit* because the court there held that section 1102 of the Bankruptcy Code was not incorporated into chapter 9 of the Bankruptcy Code. UCC Objection ¶ 19. This is of no moment because the *Detroit* court held that, in the alternative, it had power to vacate the creditors committee under section 105 of the Bankruptcy Code regardless of section 1102's inapplicability to that case. *In re City of Detroit*, 519 B.R. at 675 (holding that 1102(a)(1) "does not apply in a chapter 9 case. **In the alternative**, the Court concludes that it has the discretion under 11 U.S.C. § 105(a) to disband the Committee.") (emphasis added).

27. The UCC and U.S. Trustee attack the *Pacific Avenue* case on the basis that North Carolina, where the case was decided, does not participate in the U.S. Trustee program. UCC Objection ¶ 23; UST Objection p. 7 n.7. This argument fails because the *Pacific Avenue* court merely acknowledged the limitations of section 1102, but did not raise any difference between a Bankruptcy Administrator (as used in North Carolina) versus a U.S. Trustee in another

12

jurisdiction. *In re Pac. Ave., L.L.C.*, 467 B.R. at 869–70. It appears both the UCC and the U.S. Trustee are attempting to read a holding into the *Pacific Avenue* ruling regarding the status of the Bankruptcy Administrator versus the U.S. Trustee, but this distinction does not find support in the opinion. *See Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 183 (1979) ("Questions which 'merely lurk in the record,' are not resolved, and no resolution of them may be inferred.") (internal citations omitted).

28. If the Court nevertheless holds that it lacks the power to vacate the appointment of the UCC, the Court certainly has statutory authority to reconstitute members of the unsecured creditors committee in the ERS case. 11 U.S.C. § 1102(a)(4); *see also In re Shorebank Corp.*, 467 B.R. 156, 164 (Bankr. N.D. Ill. 2012) (considering reconstitution of committee, though declining on other grounds).

29. It is well within the powers of this Court to vacate the appointment of the UCC, or in the alternative, to reconstitute its membership so as to be compromised solely of members holding unsecured claims against ERS.

## IV. THE TIMING OF THE MOTION IS NOT MATERIAL.

30. Contrary to the UCC's assertion, *see* UCC Objection 10–15, the timing of the filing of the Motion is inconsequential. From the time the UCC was appointed until March 2019, the UCC has been mostly inactive in the ERS case. When its recent actions demonstrated that the UCC faces an impermissible conflict of interest that prevents it from continuing in its role, the Puerto Rico Funds promptly filed the Motion.

31. Between September 2017 and March 2019, the UCC did practically nothing in the ERS case. At the time the ERS bondholders sent the letter to the U.S. Trustee on September 13, 2017, the UCC had filed *one* pleading in the ERS case: a reservation of rights. [Docket No. 179]. Between the time of the letter to the U.S. Trustee and March 2019, the UCC filed only

13

*three* more substantive pleadings in the ERS case, two of which were joinders. [Docket Nos. 231, 280, 296]. Since March 2019, the UCC has filed at least *ten* substantive pleadings in the span of less than three months, more than double its filings in the two years the ERS case has been open. [Docket Nos. 381, 384, 386, 390, 391, 421, 442, 448, 523, 532]. The recent filings include substantive pleadings such as the UCC Omnibus Claim Objection and the related procedures motion [Docket Nos. 381, 384, 386], its joint motion with the Oversight Board to extend time for service of complaints [Docket No. 523], and pleadings related to discovery in connection with the ERS bondholders' lift stay motion [Docket Nos. 390, 421]. The UCC's recent litigation frenzy spurred the necessity to file the Motion and bring the conflict to the Court's attention.

32. The UCC relies on *In re Enron Corp.*, Ch. 11 Case No. 01-16034, 2002 Bankr. LEXIS 1720 (Bankr. S.D.N.Y. May 23, 2002), as support for its delay argument. UCC Objection ¶ 13. However, that case is inapposite as it concerned disqualification of counsel for a creditors' committee—not vacating appointment of a committee. *Id.* at *15. The UCC's other "delay" cases are also factually inapposite. *See In re Pub. Serv. Co.*, 89 B.R. 1014, 1021 (Bankr. D.N.H. 1988) (ordering the U.S. Trustee to replace a vacancy on the creditors' committee with an individual creditor); *In re Orfa Corp. of Phila.*, 121 B.R. 294, 296 (Bankr. E.D. Pa. 1990) (denying appointment of a separate creditor's committee filed just before plan confirmation).

33. The UCC also takes umbrage with the Puerto Rico Fund's decision not to set the matter for emergency hearing before this Court. UCC Objection ¶ 14. But exigent circumstances did not exist because none of the disputes identified in the Motion and herein that could cause irreparable harm to the ERS creditors would have been decided before the June omnibus hearing. There was no basis for an emergency hearing.

### V. THE UCC IS DUPLICATIVE OF THE RETIREE COMMITTEE.

34. The Retiree Committee is already active and representing unsecured pensioners in the ERS case. It is not necessary to also have the Commonwealth's committee serve as creditors' committee in the ERS case—especially considering its conflict of interest. The UCC does not dispute that the Retiree Committee represents a significant creditor body of ERS—over 100,000 retirees covered by ERS. The UCC's appointment in this case is consequently duplicative and unnecessary.

### CONCLUSION

35. For the foregoing reasons, the Puerto Rico Funds respectfully submit that the Court should overrule the Objections and grant the Motion.

*[Remainder of page intentionally left blank]*

In San Juan, Puerto Rico, today June 4, 2019.

By:

| | |
|---|---|
| */s/ Alicia I. Lavergne-Ramirez* | */s/ John K. Cunningham* |
| José C. Sánchez-Castro | Glenn M. Kurtz (*pro hac vice*) |
| USDC-PR 213312 | John K. Cunningham (*pro hac vice*) |
| janchez@sanpir.com | WHITE & CASE LLP |
| | 1221 Avenue of the Americas |
| Alicia I. Lavergne-Ramírez | New York, NY 10036 |
| USDC-PR 215112 | Tel. (212) 819-8200 |
| alavergne@sanpir.com | Fax (212) 354-8113 |
| | gkurtz@whitecase.com |
| Maraliz Vázquez-Marrero | jcunningham@whitecase.com |
| USDC-PR 225504 | |
| mvazquez@sanpir.com | Jason N. Zakia (*pro hac vice*) |
| | Cheryl T. Sloane (*pro hac vice*) |
| SÁNCHEZ PIRILLO LLC | WHITE & CASE LLP |
| 270 Muñoz Rivera Avenue, Suite 1110 | 200 S. Biscayne Blvd., Suite 4900 |
| San Juan, PR 00918 | Miami, FL 33131 |
| Tel. (787) 522-6776 | Tel. (305) 371-2700 |
| Fax: (787) 522-6777 | Fax (305) 358-5744 |
| | jzakia@whitecase.com |

*Counsel for Puerto Rico AAA Portfolio Bond Fund, Inc., Puerto Rico AAA Portfolio Bond Fund II, Inc., Puerto Rico AAA Portfolio Target Maturity Fund, Inc., Puerto Rico Fixed Income Fund, Inc., Puerto Rico Fixed Income Fund II, Inc., Puerto Rico Fixed Income Fund III, Inc., Puerto Rico Fixed Income Fund IV, Inc., Puerto Rico Fixed Income Fund V, Inc., Puerto Rico GNMA & U.S. Government Target Maturity Fund, Inc., Puerto Rico Investors Bond Fund I, Puerto Rico Investors Tax-Free Fund, Inc., Puerto Rico Investors Tax-Free Fund, Inc. II, Puerto Rico Investors Tax-Free Fund III, Inc., Puerto Rico Investors Tax-Free Fund IV, Inc., Puerto Rico Investors Tax-Free Fund V, Inc., Puerto Rico Investors Tax-Free Fund VI, Inc., Puerto Rico Mortgage-Backed & U.S. Government Securities Fund, Inc., Tax-Free Puerto Rico Fund, Inc., Tax-Free Puerto Rico Fund II, Inc., and Tax-Free Puerto Rico Target Maturity Fund, Inc.*