# **EXHIBIT A**

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 2 of 193

1

```
 1                 UNITED STATES BANKRUPTCY COURT

 2                    DISTRICT OF PUERTO RICO

 3
       In Re:                   )        Docket Nos. 17-03283-LTS
 4                                                   17-03284-LTS
                                )        Title III
 5                              )
       COMMONWEALTH OF PUERTO RICO,)     San Juan, Puerto Rico
 6                              )        May 17, 2017
                                )
 7                  Debtor.     )

 8     _____

 9                          MOTION HEARING

10      BEFORE THE HONORABLE U.S. DISTRICT JUDGE LAURA TAYLOR SWAIN

11                  UNITED STATES DISTRICT COURT JUDGE.

12      _____

13     APPEARANCES:

14     For the U.S. Trustee:    Ms. Monsita Lecaroz Arribas,
                                  AUST
15
       For Debtor:             Mr. Martin J. Bieninstock, PHV
16                             Mr. Scott K. Rutsky, PHV
                               Mr. Hermann D. Bauer-Alvarez, Esq.
17                             Mr. Ubaldo Fernandez Barrera, Esq.
                               Mr. Daniel J. Perez Refojos, Esq.
18
       For the Financial
19     Oversight and Management
       Board for Puerto Rico:  Mr. Arthur Gonzalez, Esq.
20                             Mr. Jaime El Koury, Esq.

21
       For Creditor
22     Canyon Capitol
       Advisors:              Mr. Roberto Abesada Aguet, Esq.
23                            Mr. Kurt A. Mayr, PHV

24

25
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 3 of 193

2

```
 1   APPEARANCES, Continued:

 2
     For Creditor National
 3   Public Finance
     Guarantee Corporation:   Ms. Marcia Goldstein, PHV
 4                            Ms. Lourdes Arroyo Portela, Esq.

 5   For Creditor Ad Hoc
     Retiree Committee:       Mr. A. J. Bennazar Zequeira, Esq.
 6                            Mr. Robert D. Gordon, PHV

 7   For Creditor Mutual
     Fund Group:              Mr. Thomas Moers Mayer, PHV
 8                            Mr. Douglas Buckley, PHV
                              Mr. Manuel Fernandez Bared, Esq.
 9                            Ms. Linette Figueroa Torres, Esq.
                              Ms. Jane P. Vankirk, PHV
10
     For Creditor Ad Hoc
11   Group of General
     Obligation Bondholders:  Mr. Andrew N. Rosenberg, PHV
12                            Mr. Mark T. Stancil, PHV
                              Mr. Donald Burke, PHV
13                            Mr. Gary A. Orseck, PHV
                              Mr. Jose Ramon Rivera Morales, Esq.
14                            Ms. Karen R. Zeituni, PHV

15   For Creditor COFINA
     Senior Bondholder
16   Coalition:               Mr. Susheel Kirpalani, PHV
                              Mr. Brant Kuehn, PHV
17
     For Creditor Ambac
18   Assurance Corporation:   Mr. Roberto A. Camara Fuertes, Esq.
                              Ms. Sonia Colon Colon, Esq.
19                            Mr. Dennis F. Dunne, PHV
                              Ms. Atara Miller, PHV
20                            Mr. Andrew Lablanc, Esq.

21   For Creditor Cesar
     Castillo, Inc.:          Mr. Daniel Molina Lopez, Esq.
22
     For Creditor National
23   Public Finance
     Guarantee Corporation:   Ms. Kelly DiBlasi, PHV
24                            Mr. Gabriel A. Morgan, PHV
                              Mr. Eric Perez Ochoa, Esq.
25                            Mr. Salvatore A. Romanello, PHV
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 4 of 193

3

```
 1    APPEARANCES, Continued:

 2
      For Creditor Goldman
 3    Sachs Asset Management,
      L.P.:                        Mr. James W. Kapp, PHV
 4                                 Mr. William P. Smith, PHV
                                   Ms. Megan Thibert Ind, PHV
 5
      For Creditor
 6    Puerto Rico AAA
      Portfolio Bond
 7    Fund II, Inc., et al.:  Ms. Alicia I. Lavergne Ramirez, Esq.
                                   Mr. Jason N. Zakia, PHV
 8
      For Creditor Peaje
 9    Investments, LLC:            Ms. Dora L. Monserrate, Esq.
                                   Mr. Allan S. Brilliant, PHV
10
      For Creditor CMA
11    Architects
      & Engineers, LLC:            Mr. John Edward Mudd, Esq.
12
      For Creditor Financial
13    Guaranty Insurance
      Company:                     Ms. Maria E. Pico, Esq.
14                                 Mr. Martin A. Sosland, PHV

15    For Creditor Aristea
      Horizons, L.P.:              Ms. Sylvia M. Arizmendi Lopez,
16                                     Esq.
                                   Mr. David Cooper, Esq.
17
      For Interested Party
18    Puerto Rico Fiscal
      Agency and Financial
19    Advisory Authority:          Mr. John Rapisardi, PHV
                                   Mr. Mohammed Saleh Yassin, Esq.
20                                 Ms. Suzzanne Uhland, PHV
      For Interested Party
21    Bank of New York
      Mellon:                      Mr. Kurt F. Gwynne, Esq.
22                                 Mr. Jose F. Escobar Machin, Esq.
                                   Mr. Jose J. Santos, Esq.
23                                 Mr. Eric A. Schaffer, PHV
                                   Mr. Lee R. Sepulvado Ramos, Esq.
24                                 Mr. Luke A. Sizemore, PHV

25
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 5 of 193

4

```
 1   APPEARANCES, Continued:

 2
     For Interested Party
 3   Assured Guaranty Corp.:   Mr. Heriberto J. Burgos Perez, Esq.
                               Mr. Mark E. Ellenberg, PHV
 4                             Ms. Ellen M. Halstead, PHV
                               Ms. Diana Perez Seda, Esq.
 5
     For Interested Party
 6   Onda Virtual LLC:         Mr. Hector Juan Figueroa Vicenty,
                                   Esq.
 7
     For Whitebox Funds:       Mr. Daniel Fliman, Esq.
 8                             Ms. Melissa Hernandez Carrasquillo,
                                   Esq.
 9

10

11

12

13

14

15

16

17

18
     Proceedings recorded by stenography.  Transcript produced by
19   CAT.

20

21

22

23

24

25
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 6 of 193

5

```
 1                          I N D E X

 2   WITNESSES:                                      PAGE

 3        None offered.

 4

 5   EXHIBITS:

 6        None offered.

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 7 of 193

6

```
 1                                   San Juan, Puerto Rico

 2                                   May 17, 2017

 3                                   At or about 9:26 AM

 4                          *      *      *

 5          THE COURT:  Again, good morning and greetings to

 6   counsel, to representatives of the press, and members of the

 7   public.  We have quite a complex agenda today, and so I will

 8   try to move us through it as efficiently as possible.

 9          I would first like to make a few remarks.  And so

10   again, good morning.  I am Judge Laura Taylor Swain, and it is

11   a great honor to have been chosen to oversee these

12   proceedings, which have no historical precedent and which

13   involve the very life of Puerto Rico and its people, as well

14   as the enormously significant financial interests of creditors

15   who hold its obligations or otherwise depend on Puerto Rico

16   for their financial well-being.

17          The scope and scale of the issues are, frankly,

18   humbling.  And I thank you all for your trust, and I will do

19   all that I can to deserve it.

20          The goal of Title III and my goal here is to find the

21   way forward.  There are of course very important disputes

22   about events of the past and about the characteristics and

23   rights and obligations that were established and have accrued

24   over several decades, if not longer.

25          Devoting all of our attention to litigation of legal
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 8 of 193

7

1   issues will not and cannot, however, create circumstances

2   under which all of the original expectations of all of the

3   entities and people involved can be satisfied fully and on

4   time.  Our way forward must be based on acceptance by all who

5   are effected that the past was far from perfect, and that

6   there is no way to go back and make it perfect.

7            What we must do here together is work in good faith

8   to identify and implement the changes that are necessary to

9   enable Puerto Rico to emerge as a stronger place than it is

10   today.  One that is providing quality education for its future

11   leaders, retaining talented people who can contribute to

12   Puerto Rico's future, building a vibrant economy, and

13   maintaining public safety; and by doing so, producing economic

14   growth that will provide increasing value for creditors and

15   appropriate support for the retirements of those who have

16   spent their working lives in Puerto Rico's service.

17            Every party in interest in these proceedings has

18   already made an investment in Puerto Rico's future.  The

19   challenge is to create proper provisions for appropriate and

20   feasible returns on those investments as Puerto Rico heads

21   towards its better future.

22            The way forward will certainly involve pain and

23   disappointment for many, since there simply is not enough

24   money at present to provide the past levels of public services

25   and benefits and pay all of the debts of Puerto Rico and its

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 9 of 193

8

1    affiliated entities in full and on time.

2            In finding the way forward, we must make sure that

3    whatever sacrifices are made ensure that Puerto Rico is an

4    increasingly valuable investment for her people and her

5    creditors, many of whom live and do business here.  This is my

6    goal, and it is the basis for my expectations of all those who

7    will be working on this effort.

8            Failure, frankly, is not an option.  We cannot turn

9    off all of the lights and close the door on Puerto Rico.  So

10   let us all work together through these proceedings to help the

11   lights burn brighter and illuminate the way to a better

12   future.

13           I will do my best to make sure that information about

14   these proceedings is readily available to the parties and the

15   public.  Copies of all papers filed of important notices will

16   be available on the Court's website, and we will have overflow

17   courtroom space for observation of public hearings, as we do

18   today.

19           As we go forward, arrangements will be made for video

20   and telephone conferences, and for listening to those

21   proceedings in the courtroom.  Those arrangements are not in

22   place yet.  They will be announced by written notice when they

23   have been established.

24           Transcripts of the court proceedings, which are being

25   taken down by court reporters, will be available for

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 10 of 193

9

1  inspection and for order through the office of the Clerk of

2  the District Court as provided in the policies of the Judicial

3  Conference of the United States.  Audio recordings are not

4  being made.

5      The Title III PROMESA cases were originally filed on

6  the District Court's docketing system.  In order to make sure

7  that they are on a system that will be easier to use and that

8  keeps them in the proper order for this type of case, we moved

9  them last week to the Bankruptcy Court's docketing system.

10  This is just for administrative purposes.  And there was a

11  brief period during the switch when some documents were not

12  accessible.

13      All of the filings in the debt restructuring

14  proceedings under PROMESA and litigation relating to issues in

15  those proceedings are now kept on the Bankruptcy Court's

16  docketing system for ease of administration and are available

17  through that system.  These cases are still in the District

18  Court, however, and I preside over them as a District Judge of

19  the District of Puerto Rico.

20      And today we will also be discussing a separate

21  website that will make all of the public filings available for

22  free, and also host information concerning claims filed

23  against the debtors.

24      I would like to thank debtors' counsel for the

25  proposed agenda they prepared for today, and all counsel for

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 11 of 193

10

1    the many submissions that I have received over the past few

2    days.  I've been busy, and I know you have been, too.

3              So in general, as we go forward today, parties that

4    filed timely objections will be afforded opportunities to

5    speak, preferably briefly and non-repetitively, in opposition

6    to the motions.  Others who have filed timely requests to

7    speak will be afforded an opportunity to do so if time

8    permits.  If time runs out, as it may well do, because we have

9    such a full agenda and so many things have happened, those who

10   have not been heard here in court are invited to file succinct

11   informative motions.

12             Now I will turn to counsel for the debtors for a

13   status report.  We have much ground to cover today, so I again

14   ask all counsel to please be brief and to the point; and in

15   fact, aim for less than the minimum time estimated on the

16   agenda for each item.  And I will do my best to do the same.

17             I also ask each lawyer speaking today to simply state

18   his or her name, and identify the entity he or she represents

19   when they begin speaking.  Thank you.

20             MR. BIENENSTOCK:  Good morning, Judge Swain.

21             THE COURT:  Good morning.

22             MR. BIENENSTOCK:  May it please the Court.  My name

23   is Martin Bienenstock.  I'm a member of Proskauer Rose LLP,

24   attorneys for the Financial Oversight and Management Board of

25   Puerto Rico, as representative of the two debtors, the

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 12 of 193

11

1    Commonwealth of Puerto Rico and the Puerto Rico Sales Tax

2    Financing Corporation, known as COFINA.

3              With me today are my partners, Scott Rutsky --

4              THE COURT:  Good morning.

5              MR. BIENENSTOCK:  -- Mr. Jaime El Koury, who is

6    general counsel of the Oversight Board.  Also with us is

7    Mr. Arthur Gonzalez, one of the seven members of the Oversight

8    Board appointed by President Obama on August 31, 2016.

9              Unless the Court prefers otherwise, I propose to

10   provide Your Honor the status report requested in the Court's

11   May 10, 2017, Order, and then to proceed with the motions on

12   today's docket.

13             THE COURT:  What I would ask is that you begin with

14   the status report, and then I will hear the status report from

15   the Office of the United States Trustee.  And then I will call

16   you back to go through the motions.

17             MR. BIENENSTOCK:  Sure.

18             It's impossible to start without recognizing, as Your

19   Honor did, the special and solemn nature of the cases we are

20   all embarking on, because these cases will heavily impact the

21   lives and futures of three and a half million residents of the

22   Commonwealth.

23             In Section 405(m) of PROMESA, the United States

24   Congress already found and legislated that there is a state of

25   fiscal emergency in Puerto Rico, rendering it unable to

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 13 of 193

12

1    provide its citizens with effective services.

2         All the attorneys in this room were specially

3    selected by their respective clients to craft and influence

4    the outcomes Your Honor will adjudicate.  Your Honor was

5    specially selected by the Chief Justice of the United States

6    Supreme Court.  My client, the Oversight Board, was

7    legislatively created by Congress with a statutory mandate in

8    Sections 101 and 701 of PROMESA to provide a method for Puerto

9    Rico to achieve fiscal responsibility and access to the

10   capital markets, which methods should include permanent

11   pro-growth fiscal reforms.

12        While it may be a classic and colossal understatement

13   to say Your Honor will preside over lots of issues on which

14   the debtors and creditors disagree, I'd like to highlight two

15   positive notes.  First, despite the disagreements among the

16   debtors' attorneys and creditors' attorneys, we

17   enthusiastically recognize that this room is full of the most

18   brilliant and experienced restructuring lawyers in the world.

19   And at the end of the day, the result we achieve here can be

20   optimized with their ingenuity despite the adversarial process

21   that may lead to it.

22        Second, I am confident I can speak for all the

23   professionals here in representing that if there's anything we

24   can do to ease the strains and burdens on Your Honor and staff

25   in handling this case, we all want to cooperate and help.  We

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 14 of 193

13

1  trust the Court will not be bashful in telling us what you

2  need and expect.

3          THE COURT:  Thank you.

4          MR. BIENENSTOCK:  Now I will answer the questions

5  Your Honor raised in the Order of May 10 in the context of the

6  status report, and I will strive to do so plainly and without

7  arguing the merits of legal issues, which would provoke

8  everyone else here to ask for oral argument.

9          Some of the creditors' objections to the pending

10  motions do go into the merits of some issues, but I'm

11  certainly not going to address them now.  And it may be

12  unnecessary later.

13          To put the Commonwealth and COFINA cases in context,

14  Your Honor, they collectively have 55 percent of the 74 and a

15  half billion of bond debt, and most of the 50 billion of

16  virtually unfunded pension -- public pension debt that exists

17  in the 63 covered entities the Oversight Board is overseeing.

18          The Commonwealth is liable for approximately 12.7

19  billion of general obligation bond debt, and 5.7 billion of

20  general obligation guarantees of other entities' debts.  The

21  Commonwealth is also liable for the pension debt to public

22  employees.

23          COFINA is liable for approximately 17.3 billion of

24  bonds at issue, which bonds are payable only from certain

25  sales and use taxes.  Whether those taxes are property of

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 15 of 193

14

1   COFINA or available resources of the Commonwealth is one of

2   the primary and dominant disputed legal issues in this entire

3   situation.  I will get back to that issue in a few moments

4   simply to explain why it is so important and impacts timing,

5   and to address how it may be resolved.

6            There are many other entities liable for the balance

7   of the 74 and a half billion of bond debt, but most of it

8   resides in a handful of entities.  We call the electric

9   utility PREPA, and it is liable for nearly nine billion of

10  debt.  The Government Development Bank for Puerto Rico has

11  approximately four billion of debt, and we call that GDB.  The

12  Aqueduct and Sewer Authority is called PRASA, and that has

13  approximately 4.6 billion of debt.  The University of Puerto

14  Rico has approximately 572 million of debt.  The Employee

15  Retirement System, ERS, has approximately 3.1 billion of

16  debt.

17           And then we have what are called the clawback

18  entities.  They are called clawback entities, because they

19  each receive certain tax revenues or fees to pay their debts,

20  but under the Puerto Rico Constitution, under certain

21  circumstances, some or all of the tax revenues are subject to

22  being clawed back to the Commonwealth when there is otherwise

23  a shortage of revenues to pay appropriations.

24           There are four clawback entities.  The Highways

25  Authority is called HTA.  It owes approximately six billion

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 16 of 193

15

1   dollars.   The Convention Center is called PRCCDA.   PRCCDA.   It

2   owes approximately 531 million dollars.   The Puerto Rico

3   Infrastructure Financing Authority is called PRIFA.   It owes

4   approximately 2.1 billion.   And the Bus Authority is called

5   MBA.   It owes up to 128 million.

6          It is important to note that while the debt

7   restructurings of all these entities are the focal point for

8   everyone here, the Oversight Board is charged by PROMESA with

9   many other significant tasks that impact any plan of

10  adjustment.   For instance, PROMESA charges the Oversight Board

11  with certifying and in some cases formulating fiscal plans and

12  budgets for each entity, which it does after procuring input

13  from all kinds of municipal, accounting, banking, economics

14  and legal experts.   No budgets have been certified yet.

15         Additionally, the Oversight Board must screen all

16  Puerto Rico legislation, make management recommendations

17  concerning finance, economic forecasting, personnel training,

18  performance standards, privatization and commercialization.

19  It must also analyze pensions and approve or disapprove

20  critical projects proposed by its revitalization coordinator.

21         Now I can answer Your Honor's questions as to when we

22  believe we can propose a plan of adjustment, and whether and

23  to what extent active settlement negotiations are proceeding.

24  I'm going to answer them in the context of the entire

25  situation, not just the two pending cases, because these two

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 17 of 193

16

1    pending cases will not be the only two for long.

2         The answer is not just a few sound bites, because one

3    size does not fit all.  PROMESA contains two methods of

4    restructuring debt.  It allows something called Title VI

5    qualifying modifications when two-thirds of the debt being

6    voted in each class accepts the plan, and the Oversight Board

7    authorizes use of Title VI pursuant to PROMESA sections

8    104(i)(1) and 601(e).  And PROMESA allows the more traditional

9    Chapter Nine and 11 type of reorganization, where at least one

10   impaired class accepts, and other classes of debt can be

11   restructured without their acceptances.

12        Currently, there are two consensual modifications the

13   Oversight Board is considering.  One is for PREPA, involving

14   nine billion of debt; and one is for GDB, involving four

15   billion of debt.  Other consensual agreements have been

16   attempted, are being attempted or will be attempted in the

17   near future.

18        The PREPA modification was recently renegotiated by

19   the Governor.  That is the only modification that was somewhat

20   grandfathered by PROMESA, because it was originally negotiated

21   and signed prior to May 18, 2016.

22        In the cases of PREPA and GDB, the Oversight Board is

23   diligencing whether the proposed modifications work, which is

24   particularly critical for PREPA, because it directly impacts

25   the cost of living and doing business in Puerto Rico, which in

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 18 of 193

17

1    turn impacts the ability to end Puerto Rico's negative

2    economic growth and to start a sufficient positive growth rate

3    that can enable Puerto Rico's turnaround and achievement of

4    the Congressionally mandated objectives.

5          GDB's proposed Title VI modification results in a

6    gradual wind down. We believe it is likely that in the next

7    four to 12 weeks, the Oversight Board will authorize proposed

8    qualifying modifications in one to four cases out of the

9    universe of PREPA, GDB, PRASA and UPR.

10         Turning back to the current cases of the Commonwealth

11   and COFINA, I can better tell Your Honor about the timing of

12   certain benchmarks and what needs to be achieved before and as

13   part of plans of adjustment than I can tell Your Honor the

14   actual dates for proposing plans of adjustment.

15         First, under PROMESA Section 202, the Commonwealth

16   must produce a budget the Oversight Board should certify based

17   on the fiscal planning the Oversight Board already certified.

18   That should occur on or before June 30, 2017. And the

19   Oversight Board can impose a budget if the Commonwealth does

20   not timely produce one, but we believe it will.

21         Second, there is a gating legal issue I alluded to

22   before that must be resolved by settlement or adjudication or

23   as a contingency in the plan of adjustment. As I mentioned,

24   the COFINA debt is paid from a single source, namely sales and

25   use taxes. From the viewpoint of COFINA debtholders, the

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 19 of 193

18

1    present and future sales and use taxes are property of COFINA.

2    Conversely, from the point of view of the holders of the

3    Commonwealth's general obligation bonds, the sales and use

4    taxes are available resources of the Commonwealth, and

5    pursuant to the Puerto Rico Constitution, must be applied to

6    pay the GO bonds and not the COFINA bonds.

7         The magnitude of the COFINA debt and GO debt make

8    this a pivotal issue.  If the GO bondholders are correct,

9    there is little or nothing to pay COFINA debt.  If the GO

10   bondholders are wrong, the COFINA debt has a repayment source

11   and the funds available to pay the GO debt are acutely

12   diminished.

13        The Oversight Board has not taken sides in the COFINA

14   GO dispute.  It wants a resolution and intends to drive a

15   settlement or require litigation to proceed.  Before these

16   Title III cases were commenced, the Oversight Board and

17   Governor convened a mediation under the auspices of former

18   Bankruptcy Judge Allan Gropper for the specific purpose of

19   dealing with GO COFINA issues.

20        I've very recently spoken with representatives of

21   COFINA debtholders and GO debtholders about continuing the

22   mediation.  Both the COFINA debtholders and GO debtholders

23   have expressed a willingness to continue negotiations with

24   Mr. Gropper standing ready to help as needed.

25        The bottom line is the Oversight Board is going to

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 20 of 193

19

1    press both sides to negotiate, and if that doesn't produce a

2    settlement, we will either try to have the COFINA board of

3    directors or a special committee of it negotiate a settlement

4    with the Governor, and then bring it to Your Honor for

5    approval, or we'll press the parties to litigate the issue in

6    this Court, inside or outside a plan of adjustment.

7         Your Honor, the Supreme Court's Tmt Trailer Ferry

8    decision was the guiding light for settlement when you were a

9    bankruptcy judge, and it still is today.  COFINA concerns are

10   also the reasons for objections to our bank motion, and we may

11   have found a solution that I'll describe later.

12        THE COURT:  And so if I can just interrupt you as to

13   the assertion in the objections that the Oversight Board as

14   debtor representative is fundamentally and irretrievably

15   conflicted, I think I'm hearing from you that you have a setup

16   in which there is a representative body arguing the COFINA

17   side and a separate representative body arguing the

18   Commonwealth side in the course of this; and generally that

19   structure is expected to be adapted and continued, whether

20   it's litigation or negotiations?

21        MR. BIENENSTOCK:  That's exactly right.  And this is

22   no different than any major Chapter 11 reorganization where

23   the different affiliated entities have claims between them.

24   And methods have to be found to adjudicate those claims even

25   though they're all ultimately under one management.  So here

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 21 of 193

20

1    the Oversight Board is not taking a GO COFINA side, and

2    doesn't plan to in the future.

3              THE COURT:  Thank you.

4              MR. BIENENSTOCK:  The last point about COFINA is that

5    Bank of New York as indentured trustee filed an interpleader

6    action yesterday to get instructions about a June 1, 2017,

7    payment.  And its attorneys, Reed Smith, are here to address

8    it later if Your Honor allows or desires.

9              I'm almost finished.

10             In addition to the GO COFINA dispute, there are

11   several other issues that impede the rapid proposal of plans

12   of adjustment of which two are likely to be litigated in the

13   near term.  One is the clawback issue, combined with the

14   Bankruptcy Code Section 928(b) issue.

15             As I mentioned, there are four entities that service

16   their outstanding debt with tax revenues that under certain

17   circumstances are subject to being rerouted to the

18   Commonwealth.  Not surprisingly, the creditors of those four

19   clawback entities question whether the clawbacks to date have

20   been valid.

21             Additionally, under Bankruptcy Code Section 928(b),

22   creditors having liens against certain gross revenue streams

23   are relegated to having liens against those revenue streams

24   less the expenses of the project or system giving rise to the

25   revenues.  In other words, under certain circumstances,

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 22 of 193

21

 1   Bankruptcy Code allows the debtor to take encumbered revenues

 2   to pay operating expenses.  Here, some creditors challenge the

 3   constitutionality of applying that section of the Bankruptcy

 4   Code to debt issued before that section of the Code was

 5   rendered applicable.

 6           Finally, Judge, in Chapter --

 7           THE COURT:  May I just interrupt you again?

 8           MR. BIENENSTOCK:  Sure.

 9           THE COURT:  So is that in the context of a

10   pre-petition adversary or an adversary that has a civil case

11   that has been filed?  Or do you expect that that issue will be

12   cued up within the Title III proceedings?

13           MR. BIENENSTOCK:  Well, I have a little bit of

14   advantage, since the creditors of HTA, the Highways Authority,

15   filed an action that's not part of the Title III, because HTA

16   is not yet a Title III debtor.  It soon will be.  And so I do

17   predict with a fair amount of certainty that they will convert

18   that complaint into an adversary proceeding, and the issues I

19   mentioned will be among the issues that will be litigated, if

20   not settled.

21           THE COURT:  Thank you.

22           MR. BIENENSTOCK:  I should emphasize that in all

23   these situations, there either have been, are, or will be

24   intense negotiations.  But it's probably just as well that the

25   clock ticks towards litigation deadlines, because that often

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 23 of 193

22

1    hastens settlements.

2         Finally, just as in Chapter 11, a company's Chapter

3    11 plan normally tracks its business plan insofar as the

4    business plan shows how much money is available for debt

5    service.  Under PROMESA, the Oversight Board is charged with

6    certifying fiscal plans for each entity, which fiscal plans

7    among other things include a debt sustainability analysis and

8    a computation of amounts available for debt service.

9         Here, one of the issues proving most inflammatory is

10   that the Commonwealth certified fiscal plan shows only

11   approximately 900 million dollars per year available for debt

12   service on average.  So at the end of the day, not

13   surprisingly, it's the money.

14        This has given rise to two legal issues.  One issue

15   is the creditors contend the certified fiscal plan violates

16   several of the 14 requirements in PROMESA Section 201(b),

17   especially the requirement that fiscal plans respect the

18   lawful priorities and liens as may be applicable.

19        The other issue is the meaning and consequences of

20   PROMESA Section 106(e), which provides this Court has no

21   subject matter jurisdiction to review challenges to the

22   Oversight Board's certification determinations that the fiscal

23   plan complies with the 14 requirements of PROMESA Section

24   201(b).

25        Your Honor will be asked to determine what that means

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 24 of 193

23

1   in connection with assertions of statutory violations in

2   Section 201(b), and what that means in connection with

3   assertions that the fiscal plan violates creditors'

4   Constitutional rights.  I've mentioned these issues, because

5   the parties disparate views of the law produce very different

6   views of their economic entitlements, and have made consensus

7   more difficult.  I don't mean to suggest that I have by any

8   means listed all the issues that will come before this Court,

9   but I have most definitely mentioned some major issues with

10  major economic consequences.

11       The Oversight Board wants to emphasize that while

12  PROMESA Title III allows for cramdown, the Board nevertheless

13  desires to continue striving for consensus.  Notably, Title VI

14  of PROMESA only restructures financial debt as opposed to the

15  50 billion dollars of pension debt and other non-financial

16  debt we have to restructure.

17       Therefore, Title III is necessary for the

18  Commonwealth, but does not prevent the Oversight Board in

19  tandem with the Governor from pursuing consensual

20  arrangements.  It's very safe to say the Oversight Board is

21  pushing progress towards plans of adjustment with all

22  deliberate speed.

23       PROMESA requires that all Oversight Board members be

24  uncompensated.  Therefore, they carry out all these tasks

25  while they all have day jobs.  The Oversight Board is very

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 25 of 193

24

1   much on the Court's side in wanting this task over with and

2   done, especially because the 3.5 million people of Puerto Rico

3   will have better futures faster if this process proceeds

4   quickly.

5            Despite all the hurdles we disclosed in the Oversight

6   Board's information memorandum filed with the Title III

7   petitions, the ingredients and determination are here to

8   provide those three and a half million people reasons to

9   remain here and to enable the Commonwealth and its people to

10  achieve their great potentials.

11           Subject to any questions the Court has,

12  Mr. Rapisardi, one of the government's attorneys, has a very

13  short statement he would like to make if the Court allows.

14  And I know the Court wants to hear from the U.S. Trustee

15  before we turn to the pending motions.

16           THE COURT:  Yes.  A very short statement from

17  Mr. Rapisardi will be welcome.

18           Thank you, Mr. Bienenstock.

19           MR. RAPISARDI:  Good morning, Your Honor.

20           THE COURT:  Good morning.

21           MR. RAPISARDI:  I am John Rapisardi of O'Melveny and

22  Myers on behalf of the Fiscal Agency and Financial Advisory

23  Authority, known by its Spanish acronym AAFAF, which is the

24  government's representative in these Title III proceedings.

25  I'll keep my remarks brief as promised.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 26 of 193

25

1          Your Honor, just for some background as to AAFAF and

2    its role in these cases, it is important to understand that

3    AAFAF was created by Puerto Rico law on April 6, 2016.

4    Pursuant to Act Two of 2017, which was signed into law this

5    past January, AAFAF'S role expanded, and it was vested with

6    the sole authority to renegotiate, restructure and reach

7    accord with creditors with respect to any part of Puerto

8    Rico's public debt issued by any of Puerto Rico's governmental

9    entities.

10          AAFAF is also charged with the responsibility to

11    collaborate, communicate and cooperate with the Oversight

12    Board.  And we have been doing that to date.

13          AAFAF recognizes the role of the Oversight Board and

14    powers that Congress has given it under PROMESA, and in

15    particular acting as the debtors' representatives in these

16    Chapter 11 cases, Title III cases, Your Honor.

17          Under the legal framework as established by PROMESA,

18    there are two separate processes.  The first process is a

19    joint certification of the fiscal plan that provides for

20    fiscal reform and operational restructuring of the government.

21    And the second process, which is the approval of a plan of

22    debt adjustment.

23          The fiscal plan as certified by the Oversight Board

24    on March 13 is a product of cooperative discussions and

25    dialogue between AAFAF and the Oversight Board.  Going

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 27 of 193

26

1  forward, we will be appearing before the Court on those

2  operational matters that require the attention under Title

3  III, and we'll coordinate our efforts with the Oversight

4  Board's professionals so as not to be duplicative or

5  burdensome to the Court.

6  　　　　We are also mindful, Your Honor, that as recognized

7  by PROMESA, within the context of these Title III proceedings,

8  the government's exercise of its political and governmental

9  powers, including the right to set policy through it's elected

10 officials, will not be interfered or impeded.  The government

11 will work with creditors and parties of interest, and take

12 whatever constructive steps we can to build bridges, foster

13 useful dialogue, and engage where other parties are going to

14 be reasonable.  We are committed to consensual resolution

15 where possible.

16 　　　　As the Court -- I think Mr. Bienenstock just alluded

17 to, AAFAF just recently announced the restructuring of the

18 Government Development Bank within the Title VI proceeding.

19 That process will be moving forward.  It will be subject to

20 Oversight Board certification, and ultimately, assuming the

21 votes meet the requirements under Section 601 of PROMESA, will

22 be submitted to this Court for approval.

23 　　　　We recognize that there are a variety of different

24 constituencies involved that hold competing interests in these

25 cases.  With respect to all those parties and their roles in

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 28 of 193

27

1   this very difficult case, we are very much aware of that.

2   However, it is important to remember that the people of Puerto

3   Rico hold the greatest stake and vested interest in a swift

4   and successful resolution of these cases.

5        I would also like to note that the Governor of Puerto

6   Rico is personally and deeply committed to a restructuring

7   process that will be concluded as expeditiously as possible

8   for the benefit of the people of Puerto Rico. He's confident

9   that through the government's sustained fiscal and budgeting

10   compliance, long-term economic growth, governmental structural

11   reform, and fair restructuring of debt, Puerto Rico will

12   emerge stronger and better, with a brighter future.

13        Thank you very much, Your Honor, for having allowed

14   me to make these remarks, and I am available at any time to

15   answer any questions you may have.

16        THE COURT: Thank you, Mr. Rapisardi.

17        And now I would invite the representative of the

18   United States Trustee.

19        U.S. TRUSTEE LECAROZ ARRIBAS: Good morning, Your

20   Honor. May it please the Court.

21        THE COURT: Good morning.

22        U.S. TRUSTEE LECAROZ ARRIBAS: Monsita Lecaroz

23   Arribas, U.S. Trustee, on behalf of Guy Gebhardt, Acting

24   Trustee for Region 21. With me is Marie Giannirakis, an

25   attorney with our Cleveland office.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 29 of 193

28

1    We appear in response to the Court's Order of May 10,

2    2017, requesting the representative of the United States

3    Trustee to appear and provide a status report, including his

4    expectations and timetable relating to the formation of

5    committees.

6    The U.S. Trustee has two responsibilities under Title

7    III:  The appointment of one or more committees under

8    Bankruptcy Code Section 1102, and the review of request for

9    compensation of professionals employed by the Oversight Board,

10   the debtors, and committees.

11   The U.S. Trustee is prepared to elicit responses from

12   unsecured creditors for the appointment of committee or

13   committees.  We recognize there's a pending motion for entry

14   of an Order directing the appointment of an official retiree

15   committee, and appointing that the petition have an ad hoc

16   retiree committee and official retiree committee.  The

17   determination of such motion may effect our decision making

18   regarding the composition of the unsecured creditors

19   committee.

20   THE COURT:  May I just stop you?  One reason that I

21   wanted you to make a status report was to ascertain the

22   position of the United States Trustee as to the reading of the

23   Statute, which in the first provision says the United States

24   Trustee forms committee or committees, and then permits an

25   application -- well, and permits an application to the Court

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 30 of 193

29

1    to form a committee.

2            And so if it is the intention of the Office of the

3    United States Trustee to assay the formation of an unsecured

4    creditors committee or committees that the United States

5    Trustee would consider appropriately comprehensive, I did not

6    want to preempt the United States Trustee's exercise of its

7    judgment in the first instance as to the appropriate universe

8    of committees and representatives by acting precipitously, if

9    you will, on the pending motion.

10           And so in your remarks a minute or so ago, you

11   indicated that you would defer to me.  Your perspective is

12   more holistic than mine in this instance, and so I wonder if

13   there is a way that I can get a sense of the direction and

14   thinking of the United States Trustee's Office that will

15   inform any necessary action by me in respect to that motion.

16   I hope that makes sense.

17           U.S. TRUSTEE LECAROZ ARRIBAS:  Okay.  Well, we

18   believe that Section 1102 provides for two ways that a

19   committee can be formed.  One can be because of the Court's

20   Order of Appointment, or because the United States Trustee

21   determines that an unsecured creditors committee can be

22   formed.  And we are in that process.

23           As to the motion filed by the ad hoc committee, we

24   appreciate the important role that the retirees will play in

25   these cases.  Retirees deserve official committee

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 31 of 193

30

1    representation.  We will ensure that they receive it.  The

2    only question for the Court would be whether there should be a

3    separate committee just for retirees to adequately represent

4    their interests or not, or whether just an unsecured creditors

5    committee can incorporate those retirees.

6            The U.S. Trustee shall be guided by the Court's

7    decision on that preliminary question and proceed accordingly.

8    However, we will be filing by the deadline of this Friday a

9    limited response to the motion of the ad hoc committee to the

10   extent that it asks the Court to appoint or direct the

11   appointment of the alleged ad hoc retiree committee as

12   official retiree committee.

13           The Court we understand does not have this authority.

14   Under Section 1102(a)(2) of the Bankruptcy Code, which applies

15   under PROMESA, appointing members of an official committee is

16   a responsibility entrusted to the U.S. Trustee and not to the

17   Court.

18           THE COURT:  Thank you.  And that position will be --

19           U.S. TRUSTEE LECAROZ ARRIBAS:  In writing by this

20   Friday.

21           THE COURT:  Thank you.

22           U.S. TRUSTEE LECAROZ ARRIBAS:  Also pending before

23   the Court is a limited objection of National Public Finance

24   Guaranty Corporation filed on May 15.  In paragraph nine of

25   this limited objection, National states that PROMESA is

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 32 of 193

31

1   ambiguous regarding the U.S. Trustee's authority in cases

2   under Title III of PROMESA.

3          Section 301 of PROMESA incorporates Bankruptcy Code

4   Section 1102.  Section 1102 establishes the U.S. Trustee's

5   responsibilities with respect to the formation of an official

6   committee of creditors.  Section 316 of PROMESA requires that

7   the U.S. Trustee be served with notice of all applications for

8   compensation filed by professionals employed by the Oversight

9   Board, the debtor and official committees.

10          Section 316 is identical to Section 330, virtually

11   identical to Section 330 of the Bankruptcy Code.  This

12   includes authority for the United States to move for an award

13   of compensation less than that requested in a professional

14   fees application.  Accordingly, the U.S. Trustee will review

15   and comment on the applications under the standards generally

16   applicable under Section 330, including guidelines the U.S.

17   Trustee follows in larger cases under Chapter 11 of the

18   Bankruptcy Code.

19          The U.S. Trustee is in discussions with counsel for

20   the Board and for the Commonwealth, and expects to present to

21   the Court a proposal for the periodic submission and review of

22   applications that ensures fairness, transparency and

23   efficiency.

24          Basically, Your Honor, the U.S. Trustee's powers and

25   abilities in a PROMESA type of Title III proceeding are

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 33 of 193

32

1  limited to the two subjects discussed before.  We appreciate

2  the cooperation received from the United States Bankruptcy

3  Court of Puerto Rico in making available to us space for the

4  committee formation meeting.  We will be posting information

5  regarding the solicitation and selection process on the

6  website for the U.S. Trustee for Region 21, which is

7  www.justice.gov/ust-regions-r21.

8          We will also request that the District Court, the

9  Bankruptcy Court, the Board and Prime Clerk post this

10  information, which will be available for everybody.

11         THE COURT:  Thank you.  And so your administrative

12  people will be speaking to our respective administrative

13  people to get the same information on the websites?

14         U.S. TRUSTEE LECAROZ ARRIBAS:  That is correct, Your

15  Honor.

16         THE COURT:  Thank you.

17         U.S. TRUSTEE LECAROZ ARRIBAS:  That will be all.

18         THE COURT:  Thank you very much, Ms. Lecaroz.

19         All right.  Now I think we turn to the motions

20  agenda.

21         MR. BIENENSTOCK:  Your Honor, if it's okay, my

22  partner Scott Rutsky will start off.  He somehow drew the

23  straw with uncontested motions to start.

24         THE COURT:  Very well.  Then Mr. Rutsky.

25         MR. RUTSKY:  Good morning, Your Honor.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 34 of 193

33

1          THE COURT:  Good morning.

2          MR. RUTSKY:  Scott Rutsky with Proskauer Rose for the

3   Oversight Board as representative of the two debtors in these

4   Title III cases.

5          Your Honor, we filed our hearing agenda which lists

6   six First-Day Motions that were filed, and they're broken down

7   into two buckets.  There were three that are uncontested, and

8   three that are subject of objections.

9          The three uncontested matters are in our hearing

10  agenda at items three, four, and five.  Item three is the

11  Motion to Approve the Form of Notice of the Commencement of

12  the Title III cases, the manner of service of that notice on

13  creditors, and publication of that notice.  Item four is a

14  motion to fix the time by which the debtors have to file a

15  creditors mailing matrix with the Court, and to file their

16  official list of creditors with dollar amounts.

17         And finally, item five in the uncontested section is

18  the retention and engagement of, employment of Prime Clerk as

19  outside noticing agent, solicitation agent, and claims agent

20  to the debtors in the court.

21         Your Honor has mentioned before this is a long and

22  complex docket.  So I don't know if Your Honor wants me to

23  engage in discussion on each of these motions or address

24  questions or simply present Orders, because they are

25  uncontested.  I'm happy to proceed in any way you like.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 35 of 193

34

1        THE COURT:  Well, they are uncontested.  I think that

2   the most efficient thing would be for me to raise with you

3   certain questions that I had, and a couple of housekeeping

4   issues that I have with respect to the proposed Orders.

5        First, the notice, the proposed notice that will be

6   served on all parties, and ultimately on everyone in the

7   creditors list, is in English.  Do you propose to send that in

8   English and Spanish or with some sort of a flag on the English

9   version that says if you don't read English, you need to have

10  this read to you in Spanish, because it's an important legal

11  document?  I'm concerned about accessibility of the

12  information.

13       MR. RUTSKY:  Your Honor, our intention or what we

14  specified in the motion was with respect to the publication of

15  the Notice of Commencement, we were going to publish that once

16  for three consecutive weeks in El Nuevo Dia --

17       THE COURT:  Yes.

18       MR. RUTSKY:  -- in Spanish, and once for three

19  consecutive weeks in the Caribbean News in English.

20       THE COURT:  Yes.

21       MR. RUTSKY:  As well as posting it in a bond

22  periodical.

23       THE COURT:  And the bond periodical would be in

24  English?

25       MR. RUTSKY:  In English.

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 36 of 193

35

1      THE COURT:  My concern is that, as I understand it,

2  El Nuevo Dia, its circulation is here on the Island, as is the

3  Caribbean Business circulation principally.  And people have

4  been moving off the island, and there are people on the

5  mainland who may have invested in Puerto Rico securities who

6  would ultimately be getting the creditor notice mailed to them

7  somewhere else and may not be daily readers of these

8  publications.

9      And so have you thought about a signal to people who

10  may be primarily Spanish speakers on the mailed notice that

11  would indicate that they need to pay attention to it?

12      MR. RUTSKY:  Your Honor, we frankly did not, but we

13  are happy to mail two versions, in English and Spanish.  It's

14  really not that big of an administrative burden, and we think

15  it makes a lot of sense.

16      So we can adjust the Order.  I don't know whether

17  Your Honor would like us to present those, but we can submit

18  the Order afterwards.

19      THE COURT:  Very good.  I think we'll come back at

20  the end to a presentment schedule.  What I generally have in

21  mind for any modified Orders is five days notice, with two

22  days before the presentment date for any further objections to

23  the form of the notices.

24      Then an informational question.  This is just for

25  Rule 1005.  Does either of the debtor committees have any kind

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 37 of 193

36

1  of Federal tax ID number that should be in the caption?

2        MR. RUTSKY:  Your Honor, that's a good question.  I

3  honestly don't know.

4        Do you know?  I'm guessing --

5        MS. UHLAND:  Suzanne Uhland with O'Melveny & Myers,

6  on behalf of AAFAF.  Yes, they have Federal tax ID numbers,

7  and they can correct the caption.

8        THE COURT:  Please do that.  File the amendment, and

9  carry that through as necessary.

10        MR. RUTSKY:  We'll do that, Your Honor.  Thank you.

11        THE COURT:  Thank you.

12        And as a global note, on the signature blocks of

13  these Orders and all other references to me, it should be

14  Laura Taylor Swain.  Laura T. Swain is not a formulation that

15  I use.  And on some of the proposed Orders at least, well, I

16  think all of them as originally filed, the captions need to be

17  updated to reflect the Bankruptcy case numbers.

18        And I think it would be useful, particularly if we

19  are going to be seeing more debtors to whom there will be

20  joint administration proposals, that there be a reference to

21  the Bankruptcy case numbers in the footnotes that you have

22  that enumerate the member cases.

23        MR. RUTSKY:  We will add those, Your Honor.

24        THE COURT:  And those were my only comments on that

25  Order.  Otherwise, I approve it and direct you to submit --

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 38 of 193

37

1    present a revision that incorporates these changes.

2        MR. RUTSKY:  We will do so, Your Honor.

3        THE COURT:  Thank you.

4        And as to the Creditor Matrix Motion, I had no

5    request for changes or edits other than the signature line.

6    And so that should be presented on the same schedule.

7        And then as to the Prime Clerk authorization as to

8    which there was no objection filed, I do have a few concerns.

9    One is that paragraph six of the Proposed Order includes a --

10    I'll call it a disclaimer provision that permits Prime Clerk

11    to refuse to provide services if it doesn't receive an advance

12    or direct payment.

13        Now, internally, the document is in conflict, because

14    paragraph 26 says Prime Clerk shall not cease providing the

15    services during these cases unless it's excused from by Order

16    of the Court.  And so the paragraph 26 provision is to me the

17    appropriate one, and I would ask that that -- I think it's

18    sort of the final sentence of paragraph six on page three be

19    deleted.

20        Do you have any issues with that?

21        MR. RUTSKY:  I do not, Your Honor.  I do not know if

22    there's a representative of Prime Clerk here.

23        MR. SCHEPPER:  We can strike that sentence.

24        THE COURT:  Would you please state your name and

25    speak loud?

1           MR. SCHEPPER:  Christopher Schepper, Prime Clerk

2     executive vice president.  And that we can strike that

3     sentence from the retention application.

4           THE COURT:  Thank you.

5           The next issue is as to the list of expected duties

6     of Prime Clerk that's embodied in Section 1(b) of the

7     application.  Section 1(b)(15)(i) indicates that the claims

8     will be on the claims register, which is of course quite

9     logical.  But there's nothing that specifies that the full

10    proof of claim will be available to the public.  And it's my

11    understanding that that's typical, and we don't have any other

12    provision in ECF for doing that.

13          So can you undertake that that will be part of Prime

14    Clerk's work under this Order?

15          MR. SCHEPPER:  Your Honor, yes, the claim will be

16    available on our website.

17          THE COURT:  So the full proof of claim will be

18    available as well as the claims register?

19          MR. SCHEPPER:  Correct.

20          THE COURT:  Thank you.

21          Then there seems to be some missing language in --

22    actually, this is still the application, paragraph 16, clause

23    iv.  It's just ambiguous as its written, because it says that

24    the debtor is requesting authority to hold the advance for

25    security.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 40 of 193

39

1          I'm assuming that you meant to say the debtor is

2     requesting authority to permit Prime Clerk to hold the advance

3     as security.  If you'll just confirm that that's the

4     intention.  I wouldn't be signing the application, but I would

5     like that clear on the record.

6          MR. RUTSKY:  Yes.  That is correct, Your Honor.  That

7     is the intention.  It would be Prime Clerk holding the advance

8     as security.

9          THE COURT:  Thank you.

10          Now turning to paragraph seven of the Order.  That

11     provides that any disputes will be resolved by the Court.  But

12     the engagement letter in paragraph 11 has an arbitration

13     provision.  So the Order does say that it supercedes anything

14     to the contrary in the engagement agreement, but would you

15     confirm on the record that it is the parties' intention that

16     that arbitration provision be superseded?

17          MR. RUTSKY:  Yes, Your Honor.  That is the intention

18     of the parties.

19          THE COURT:  Thank you.

20          And going to paragraph 10(b) of the Order, which is

21     the provision for indemnification for tax obligations, clause

22     10(b) says that the debtor shall pay or reimburse any taxes

23     that are applicable to services performed hereunder or that

24     are measured by payments made hereunder, and are required to

25     be collected by Prime Clerk or paid by Prime Clerk to a taxing

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 41 of 193

40

1    authority.

2           That last clause it seems to me in the context of

3    this overall clause could be read to require the debtors to

4    indemnify Prime Clerk for income taxes on the amounts paid for

5    its services.  Is that your intention, and if so, why?

6           MR. RUTSKY:  Your Honor, I do not believe that is the

7    intention.  I think the intention of that paragraph is to

8    reimburse them for taxes that they may incur directly related

9    to the provision of the services, not for income taxes that

10   Prime Clerk might be subject to by virtue of the revenue they

11   gain under this agreement.

12          THE COURT:  And so what I would propose to you is

13   that the final clause, the "or paid by Prime Clerk to a taxing

14   authority" be excised, because I think that's the one that

15   really creates the ambiguity.  It would retain the reference

16   to "are required to be collected," and generally refer to

17   taxes that are applicable to the services.

18          So would you consider that or some other modification

19   that would make the exclusion of Prime Clerk's income taxes

20   clear and include that in the settled and modified Order?

21          MR. RUTSKY:  I would, Your Honor.  And subject to any

22   comments by Prime Clerk, I would think that that last item

23   there is really to reimburse Prime Clerk with respect to any

24   taxes paid to a taxing authority on behalf of the debtors is

25   what is intended there.  And we can fix that.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 42 of 193

41

 1              MR. SCHEPPER:  (Nodding head up and down.)

 2              THE COURT:  Thank you.  And I note for the record

 3     that the Prime Clerk representative nodded affirmatively to

 4     that general concept.  So I think we're in good shape there.

 5              And so those were the only issues that I had with

 6     respect to Prime Clerk, so kindly settle an Order reflecting

 7     those.

 8              MR. RUTSKY:  We will, Your Honor.  And we will make

 9     the other modifications to all of the Orders as you have

10     requested.  And I thank you very much for that.

11              THE COURT:  Thank you.

12              MR. RUTSKY:  I think we now get, if you're following

13     the hearing agenda, to the contested matters.

14              THE COURT:  Yes.

15              MR. RUTSKY:  And if Your Honor will permit, I think

16     between Mr. Bienenstock and myself, we've divided these

17     motions.  I think he's going to address the Court on item

18     number six, the Joint Administration Motion.

19              THE COURT:  Very well then.  Thank you.

20              MR. BIENENSTOCK:  Thank you, Your Honor.  Martin

21     Bienenstock of Proskauer Rose for the Financial Oversight

22     Board as representative of the debtor.

23              THE COURT:  Actually, before you begin, I was

24     thinking that it might be efficient for me to flag the

25     comments that I had as to form, and then for you to basically

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 43 of 193

42

1   be responsive to the objections.  And then if there are any

2   objections as to which people still want to speak in a

3   non-repetitive way, everybody can be informed of what the

4   Court's throwing in the mix as well.

5           Is that acceptable?

6           MR. BIENENSTOCK:  Sure.

7           THE COURT:  Okay.  Very good.

8           So let me -- all right.  The major conceptual issue

9   is that I have concluded that if we go with the joint

10  administration, and there is a master docket, which makes

11  sense, there should nonetheless be docket entries in the other

12  specific dockets for pleadings and other filings that are

13  identified to the other specific cases, so that we don't have

14  to deconstruct the whole master docket to be sure that we

15  identify issues that are just specific to a debtor.

16          So, for instance, in the provision for the notice to

17  be filed on the COFINA docket, I would add at the end of that,

18  unless they relate solely to this Title III proceeding, in

19  which case they are to be docketed in both the lead case and

20  in this case.  The antecedent of that being reference to the

21  COFINA case of course.

22          And then in the second caption box, there should be a

23  legend that says this filing relates only to, and again a

24  reiteration of the requirement that the filing be entered in

25  both the lead case docket and the docket of the debtor case to

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 44 of 193

43

1    which the filing is applicable.  That would be in paragraph

2    five.

3            And in paragraph six, where there's a reference to

4    the Clerk's maintenance of a master docket, and one file for

5    each of the Title III cases, and because we are at this point

6    maintaining the files for these cases on the Bankruptcy Court

7    system, I would like a specific recognition of that to the

8    effect that the Clerk's Office may for administrative purposes

9    only maintain the consolidated docket and the dockets of the

10   underlying Title III cases on the CM/ECF system of the United

11   States Bankruptcy Court for the District of Puerto Rico.

12           I'm trying to speak slowly, so it will be accurate in

13   the transcript, because I realize you're not taking down word

14   for word, and it's not necessary for you to do that.

15           Then there is also reference to the ability to obtain

16   paper copies.  I think you say they may be available from the

17   Clerk of Court.  That should indicate that paper copies may be

18   obtained from the Clerk of the District Court for a fee as

19   provided in the District Court miscellaneous fee schedule,

20   because I want throughout this to be as clear to people as

21   possible as to which court services they're going to for which

22   purposes.

23           So those were my housekeeping comments.

24           MR. BIENENSTOCK:  Thank you, Your Honor.

25           By my count, there were five of the objections that

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 45 of 193

44

1   mentioned the Joint Administration Motion, and two of them did

2   not really argue that the motion should be denied.  One was by

3   the COFINA Seniors, which basically addressed what Your Honor

4   just addressed.  And we had actually dealt with it in

5   paragraph five of the proposed Order, which is because there

6   may be pleadings filed under the consolidated or jointly

7   administered caption that only affect one debtor, you should

8   specify, as Your Honor has now outlined how it should be done,

9   which estates are effected.  And so I think that's dealt with.

10          Also, I think the spirit of our motion was basically

11   captioned in National's comment that it has no -- in paragraph

12   ten of its pleading, it said it has no objection to procedural

13   joint administration.  And I think that's really what my sense

14   is, that all the creditors wanted to hear, we have no intent

15   that this procedural joint administration have any impact on

16   whether a given party has standing in one matter or another,

17   or how many committees there should be, or anything outside

18   the fact that we're having one docket for procedural purposes

19   only, so that people don't have to file multiple pleadings

20   with different captions and with the rest of the pleadings

21   being identical.  It's just efficiency.  We're not trying to

22   go beyond that.

23          Now, several -- the three other pleadings filed that

24   mentioned the Joint Administration Motion are true objections.

25   One of them asks that the Court -- the Mutual Funds Group asks

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 46 of 193

45

1    that joint administration should be conditioned on the Court

2    saying in its Order that COFINA creditors have standing in the

3    Commonwealth case.  And as I just said, I think this Order

4    shouldn't get into that.  It wasn't the intent.  As matters

5    come up, people raise standing issues.  Your Honor will decide

6    them when Your Honor knows the facts and circumstances in

7    which standing is being challenged.

8         And several of the objections mentioned the conflict

9    that Your Honor alluded to earlier between the COFINA estate

10   and the Commonwealth estate, because of the issue that I think

11   I spent part of the status report explaining.  The existence

12   of a claim between two debtors should not be a reason to

13   deprive everyone of the efficiency of joint administration for

14   procedural purposes only.

15        Fortunately, I already had the opportunity to explain

16   to Your Honor how certainly from the Oversight Board's point

17   of view, we don't think it has any conflict, because it

18   doesn't intend to take sides in that dispute.  But even if

19   that were not the case, that is an issue Your Honor would have

20   to deal with, with or without joint administration.

21        We are the representative of both debtors, because

22   Congress enacted a Statute that says we are, and we have to do

23   that.  So it's really not a joint administration issue.

24        Your Honor, I -- and the other point I wanted to

25   make, Your Honor, is that depending how Your Honor and other

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 47 of 193

46

1  parties read Section 308(b) of PROMESA, the absence of joint

2  administration could cause the First Circuit to appoint a

3  different judge for COFINA.  And since this issue between

4  COFINA and the Commonwealth is so integral to the overall

5  outcome, we don't think having two different judges on it

6  would promote efficiency or really anything positive, even if

7  both judges are terrific.

8       THE COURT:  May I ask you to pause for just a minute

9  there?

10      MR. BIENENSTOCK:  Sure.

11      THE COURT:  Apologies for that delay, but based on

12 the information that I have, the two judge problem would not

13 be a problem either way.

14      MR. BIENENSTOCK:  Scratch that then, Your Honor.

15      THE COURT:  So we don't have to talk about that.

16      MR. BIENENSTOCK:  With that, Your Honor, unless Your

17 Honor has questions, those are my responses and the reasons

18 why we ask the Court to grant the Joint Administration Motion

19 for procedural purposes only.

20      THE COURT:  And this is subsumed to a large extent in

21 your remarks, but just to make sure that it's clear to me, may

22 I assume that your response to the COFINA constituency

23 objection that noticing the entire creditor list on issues

24 related to the COFINA petition is overbroad and potentially

25 improper, that the Board's response is that whether it's

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 48 of 193

47

 1   overbroad or not is integral to the litigation?  And there are

 2   positions on both sides, so that it would be appropriate for

 3   everyone to be noticed with issues as to standing, and the

 4   underlying legalities being ones for litigation?

 5          MR. BIENENSTOCK:  Exactly, Your Honor.  Thank you.

 6          THE COURT:  Thank you.

 7          Do any objectors wish to be heard?

 8          MR. DUNNE:  Good morning, Your Honor.

 9          THE COURT:  Good morning.

10          MR. DUNNE:  For the record, Dennis Dunne from

11   Milbank, Tweed, Hadley & McCloy on behalf of Ambac.  Ambac has

12   objected to joint administration.

13          I'll admit this is the first time I've done this in

14   my career, Your Honor, and I don't do it lightly, for reasons

15   that I'll get into in a moment.  But by way of background,

16   Ambac insures bonds.  They've insured bonds that have been

17   issued by COFINA.  They have insured bonds that have been

18   issued by the Commonwealth, and many other structures.

19          Ambac is deeply invested in the long-term financial

20   health of the Commonwealth.  Some of our insured bonds don't

21   come due for decades.  We're here for the long hall.  We want

22   to see Puerto Rico succeed.  We want to see it prosper.  And I

23   think this will be the only time in my remarks I agree with

24   Mr. Bienenstock, but that we are committed, as I think are

25   everybody in the courtroom, to finding a solution here.  And

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 49 of 193

48

1    the solution that's in the best interest of the residents of

2    Puerto Rico, and also not in derogation of people's rights

3    around the table.  But we all are going to commit maximum

4    effort to doing that, Your Honor.

5            THE COURT:  Thank you for confirming that.

6            MR. DUNNE:  With respect to the objection, Bankruptcy

7    Rule 1015 requires the Court to consider protecting creditors

8    of different estates against potential conflicts of interest.

9    I want to talk about those conflicts for a minute, because I

10   don't think Mr. Bienenstock's description is accurate.  So let

11   me go through that.

12           COFINA is a securitization vehicle that was created

13   over a decade ago, 2006, by the Puerto Rico legislature.  By

14   law, it owns a portion of the sales and use tax.  COFINA bonds

15   are not recourse bonds.  They're not backed by the full faith

16   and credit of the Commonwealth, the other debtor.  They are

17   solely recoursed to COFINA.

18           The dedicated sales tax is deposited directly into a

19   special account created by the legislature to ensure that the

20   Commonwealth had no access to it.  The enabling legislation is

21   also explicit that the sales and use tax that is property of

22   the COFINA shall not constitute resources available to the

23   Commonwealth, nor shall these be available for use by the

24   Secretary of the Treasury.

25           Now, Mr. Bienenstock wants to join issue on that, but

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 50 of 193

49

1   --

2           THE COURT:  Yes.

3           MR. DUNNE:  -- the point is if you had a pure

4   fiduciary, and I'll come back to the pure fiduciary for

5   COFINA, it's massively oppositional with the Commonwealth.  It

6   is not -- there is a general level of conflict, and there is

7   specific.  The general is Mr. Bienenstock wants to describe

8   the dispute as if it was a corporate Chapter 11 case which had

9   to submit to Chapter 11 claims, and we'll figure out each way

10  it flows.

11          It's like saying, you know, this was Kraft -- I

12  always come back to my kids eat too much mac and cheese.  And

13  Kraft was selling mac and cheese to a U.S. debtor and a

14  foreign debtor in France.  On 99 percent of the issues,

15  they're going to be aligned on advertising, on sales, on

16  growth.  They may also have an intercompany claim.  That's

17  perfectly appropriate to jointly administer this.

18          THE COURT:  Mr. Dunne, I understand that, and I have

19  read your submission, which was very helpful in illuminating

20  this issue for me.  I understand that the position of the

21  COFINA insurers and the position of the COFINA bondholders is

22  fundamentally opposed at this threshold level to the position

23  of the Commonwealth, which has approved and proposed -- has an

24  approved, proposed fiscal plan that contemplates the invasion,

25  if you will, of the funds that have been set aside for COFINA.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 51 of 193

50

1    And that there was legislative action that I will say purports

2    to, because I know that there are arguments about the validity

3    of that, authorize the invasion of funds that have heretofore

4    been identified for COFINA.

5         But whether -- two things:  Whether or not there is

6    joint administration, that issue exists in both cases.  The

7    Commonwealth plan doesn't work unless the COFINA funds can be

8    invaded.  And any notion of a COFINA only plan only works if

9    insurers and bondholders win that argument.  And so I don't

10   see why denying joint administration really changes that

11   landscape.

12        And we've had representation here from the Oversight

13   Board that it is aware of and has cued up the system for a

14   vigorous litigation of the COFINA position as against the

15   Commonwealth position.  And certainly it would not be my

16   intention in signing a Joint Administration Order to preclude

17   any party in interest from taking -- any party in interest who

18   has standing, and we can fight about standing, but from taking

19   strongly the position that COFINA's case isn't being advocated

20   strongly enough, and here are some better arguments or vice

21   versa.

22        So I with that wanted to give you some insight into

23   where I am now, and ask you to respond on the joint

24   administration issue.

25        MR. DUNNE:  Yes.  And I'll move from the general to

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 52 of 193

51

1  the specific, because Your Honor's addressing my general

2  oppositional point that if, you know, we are right, that the

3  law as existed holds, we're solving for restructuring, there

4  is no overlap.  The specific goes to the overlap that COFINA

5  doesn't have operations; they don't have any employees; they

6  don't have utilities; all of which is going on inside the

7  Commonwealth debtor box if you will.

8       We are saying that A, there may not be as many

9  filings in the COFINA.  So the need to have joint

10  administration is not as great as if you had an operating

11  entity with all those motions.

12       And so what's the harm potentially?  I'll get very

13  specific.  The utility's motion -- the utility filed a motion

14  I believe yesterday for adequate assurance.  And they, as you

15  would expect, defined the debtors to be the Commonwealth and

16  COFINA, and sought relief, adequate assurance against the

17  debtors' property and from the debtors.

18       If we proceed with joint administration, we are going

19  to have to carefully monitor every one of those filings and

20  those requested relief to carve out COFINA when it's

21  inappropriate.  And my point is it's almost always

22  inappropriate, because they don't -- there is no connection,

23  and there is no overlap.  There is no operation.

24       THE COURT:  Okay.  So it's inappropriate if you win

25  on your isolation argument.  If you don't win on your

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 53 of 193

52

1   isolation argument, the creditors of the Commonwealth's claims

2   are going to affect the claims of your constituency and vice

3   versa.

4         And with the structure that I'm mandating here, which

5   is not only a filing in the master file, but a flagging of

6   issues that are specific to COFINA, and record keeping in the

7   COFINA docket, and we can even look into whether there is a

8   way to flag, you know, creditors to COFINA or whatever so to

9   make as feasible as possible sorting of records that will be

10  identified to specific debtors, I think honestly that we have

11  done as much as we can to make the onslaught of filings at

12  NEF, which make my telephone go off night and day already, as

13  manageable as possible.

14        MR. DUNNE:  I'd like to respond to one point Your

15  Honor just made with respect to utilities, where Your Honor

16  said, well, what if they prevail with their litigation.  I

17  still don't think the utilities claim ever gets inside the

18  COFINA debtor box.  All that would happen, if they prevail in

19  litigation, is that some of the dollars that would otherwise

20  go to COFINA would go to the Commonwealth.  And within the

21  Commonwealth assets, they would be increased by way as a

22  result of whatever the litigation is.  And the utilities

23  claims would remain as to the Commonwealth, Commonwealth only.

24        And their property may be augmented, having prevailed

25  on that, but it would never be a liability in the COFINA

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 54 of 193

53

1    docket.  That's my point on it.

2          One other point Mr. Bienenstock raised, and then I'll

3    yield the podium to anyone who wants to address it, he

4    mentions -- this is the first time we've heard of this, and

5    we've been actually asking for it, is where is the independent

6    fiduciary for COFINA.  And they've been noticeably absent.

7          Mr. Bienenstock mentioned that one may surface for a

8    particular role.  We'd like to be involved in that process to

9    make sure that person is truly independent, and truly has the

10   mantle of looking out for the best interest of the creditors

11   of COFINA.  And has the typical fiduciary duties that you

12   would see for --

13         THE COURT:  I think if Mr. Bienenstock wasn't on

14   notice of it before, he certainly is now.  And I also assume

15   if you take the position that what Mr. Bienenstock is doing is

16   not satisfactory, I'll be hearing about it in filings.

17         MR. DUNNE:  Thank you, Your Honor.

18         THE COURT:  Thank you very much.

19         Is there anyone else?

20         MR. MAYER:  Good morning, Your Honor.  For the

21   record, Thomas Moers Mayer of Kramer Levin Neftalis and

22   Frankel, counsel to funds managed by Oppenheimer Funds, funds

23   managed by Franklin Advisers, and the First Puerto Rico Family

24   of Funds managed by Santander Asset Management.

25         My clients are all mutual funds who invest on behalf

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 55 of 193

54

1    of hundreds of thousands of individual investors, including

2    thousands of Puerto Ricans.  And we call ourselves the Mutual

3    Fund Group.  The Mutual Fund Group holds over 3.5 billion

4    dollars in COFINA bonds, and more than 3.6 billion dollars in

5    additional bonds issued by the Commonwealth and other

6    instrumentalities.  We think we may have more invested in

7    Puerto Rico than any other group.

8         Turning to the Joint Administration Order, we filed a

9    short objection.  And I will just focus on one piece of the

10   puzzle for why we asked for what we asked for.  Rule 1015(b)

11   does ask the Court to consider prejudice of creditors from

12   conflicts, and we have a potential solution which I know

13   Mr. Bienenstock doesn't like, which is creditors of COFINA be

14   recognized as having standing to advance the interests of

15   COFINA in the Commonwealth case.

16        Now, this case, like a Chapter Nine, is a little bit

17   different from Chapter 11 as follows:  The normal Chapter 11

18   case, we have Section 363, and the debtor has to run into

19   court and get permission to do things.  But in a Chapter Nine

20   or Title III case, that is not true; and therefore, creditors

21   always have to be moving first.

22        And the time pressures here are substantial.  The

23   date in question here, and this will come up later in the bank

24   account motion, so I'll just be brief here, is July 1, because

25   on July 1, there's 120 million dollars that is scheduled to

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 56 of 193

55

1  flow to COFINA.  That's the first installment.  Every month

2  there will be 120 million dollars.

3          And that's real money.  And we think it's our money.

4  Other people think it's their money.  But it's real money, and

5  there has to be a resolution or a decision for what happens to

6  that 120 million dollars.

7          Now, the Commonwealth, as you know from reading our

8  papers, passed legislation which certainly could be

9  interpreted as empowering the Commonwealth to just sweep that

10  money on July 1.  And to avoid that, we would have to take

11  action in the Commonwealth case.

12          Now, we believe we might have standing -- should have

13  standing as secured creditors anyway, because that money is

14  pledged to us.  But to the extent COFINA needs to protect

15  itself against a sweep by the Commonwealth, creditors of

16  COFINA will have to assert that themselves.

17          As you pointed out earlier today, you understood

18  there were representative groups of creditors who were

19  prepared to fight out these issues between each other.  And I

20  think that is correct, and I think that is what will happen.

21  But as a technical matter, we don't want to have to worry

22  about a standing hurdle of any sort if in approximately 45

23  days we are going to need an Order in the Commonwealth case

24  that limits the ability of the Commonwealth to just take our

25  money.  And that's why we suggested an easy fix to the

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 57 of 193

56

1  1015(b).

2        The suggestion is that creditors of COFINA be granted

3  standing to assert COFINA's rights in the Commonwealth case.

4  Should this be a problem, all parties can object.  And Your

5  Honor always retains jurisdiction to tell somebody not this

6  time.  But we thought it would reflect the reality of the

7  situation, and the impending fight over 120 million dollars to

8  put that in place.  And I'm happy to answer any questions you

9  may have.

10        THE COURT:  Well, I think I'd like to ask Mr.

11  Bienenstock to speak specifically to that standing issue, and

12  then we'll see how much more we need to go into that.  Thank

13  you.  So if you'll stand to the side, Mr. Mayer, you'll be

14  back.

15        MR. BIENENSTOCK:  Your Honor, Martin Bienenstock with

16  Proskauer for the Oversight Board.

17        We haven't taken a position on whether Mr. Mayer's

18  clients will have standing in the Commonwealth case in respect

19  to the matters he just described.  He may well, and he may

20  well not.  It's going to depend on who holds the debt, what

21  the issue is, you know, all the constitutional credential

22  elements of standing.  And all I was saying before is it's

23  not -- it's not the right time in the Joint Administration

24  Procedural Order to determine standing in what might be a very

25  significant contested matter or adversary proceeding.

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 58 of 193

57

1    We'll be happy to tell them well in advance if they

2  tell us the claim they want to make whether we'd agree to

3  their standing. And it's not something that we would take

4  issue with unnecessarily.

5    Also, and it's going to come up in a few minutes in

6  connection with the bank motion, and Mr. Mayer knows about

7  this, we are hopeful that there will be an understanding that

8  the normal, ordinary course transfers to COFINA under the

9  original COFINA documents back and forth from COFINA to the

10  Commonwealth, because they have a rigamarole on we get ten

11  months in taxes, and the rest is moot. We'll go forward as

12  normal without this application of Law 26 for a certain time,

13  and if the Commonwealth ever feels it wants to end that

14  understanding, it will give at least 30 days notice.

15    So I think we have this issue under control, but for

16  right now our position is very simply, they may well have

17  standing. They may not. The Joint Administration Motion is

18  simply not the right vehicle to make that determination.

19    THE COURT: Thank you.

20    MR. MAYER: I'm happy to defer on the banking until

21  we come to that. Mr. Bienenstock is directionally correct, we

22  like to think we are the folks who are, first of all, dealing

23  with that, but perhaps we should wait until it comes up.

24  Maybe other people want to speak.

25    THE COURT: It does seem to me that addressing the

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 59 of 193

58

 1    standing issue in the Joint Administration Order is premature.

 2    And if there is to be litigation, it means there will be

 3    another section in each brief about standing, if it's a

 4    disputed issue.  But then it can be presented to me, and

 5    determined in context if indeed it's controversial at all.

 6    But to create permanent standing to litigate an undefined

 7    portfolio of issues in the Joint Administration Order seems to

 8    me inappropriate.

 9         MR. MAYER:  Thank you, Your Honor.  I respect your

10    ruling.

11         THE COURT:  Thank you.

12         Ms. Goldstein.

13         MS. GOLDSTEIN:  Yes, Your Honor.  I picked a bad

14    seat.

15         THE COURT:  Sorry.  A little challenging there.

16         MS. GOLDSTEIN:  Okay.

17         Good morning, Your Honor.

18         THE COURT:  Good morning.

19         MS. GOLDSTEIN:  Marcia Goldstein on behalf of

20    National Public Finance.  National Public Finance, like Ambac,

21    is a long-term player on this island.  We are an insurer of

22    approximately 3.6 billion of debt of the Commonwealth, and

23    certain of its instrumentalities and authorities.  And we'll

24    be around for a long time, particularly with respect to

25    COFINA.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 60 of 193

59

1          And we -- particularly with respect to GOs and

2    COFINA, we insure 881 million of GO bonds and 1.1 billion of

3    created senior COFINA debt.  So we have other remarks to make.

4    We'll wait until the appropriate time.  But I did want to

5    speak to joint administration.

6          Mr. Bienenstock is correct in that we do not object

7    to joint administration for procedural purposes, but I do want

8    to echo the concerns with respect to the conflict that Mr.

9    Dunne and Mr. Mayer have spoken to.  This may be premature,

10   but Mr. Bienenstock was proposing a, quote, solution where

11   some subset of the GDB board might negotiate a settlement with

12   the Commonwealth if the GO and COFINA creditors can't resolve

13   issues.

14         That in itself is highly questionable, Your Honor.

15   We have to understand the conflict here.  Mr. Bienenstock has

16   said that the Oversight Board hasn't taken a position with

17   respect to the COFINA assets.  The Oversight Board and

18   Commonwealth have taken a position by certifying a fiscal plan

19   that just takes the assets.  Your Honor mentioned that

20   yourself.

21         So we have to be very, very wary of the conflict.  We

22   -- although we do not object to procedural consolidation, we

23   did say that we want to make sure that COFINA creditors have

24   the right to assert the position of COFINA.  As Mr. Dunne

25   said, if there's going to be a fiduciary for COFINA, we want

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 61 of 193

60

1    to have a part in the selection and understanding of the true

2    independence, otherwise I think the creditors should act.  To

3    say that the Commonwealth will negotiate with another group

4    that will also be represented by the same counsel, that's a

5    lot of home cooking as far as I'm concerned.  We've seen other

6    evidence of that here.

7              So we just wanted to make sure that our position is

8    known with respect to procedural consolidation.  I think our

9    request that COFINA creditors be able to assert the rights of

10   COFINA is actually related to Mr. Mayer's request.  We think

11   that's the only way that COFINA, at least at this point, can

12   be adequately represented.

13             THE COURT:  Thank you.

14             MR. ZAKIA:  Good afternoon, Your Honor.  Jason Zakia

15   of White and Case on behalf of the Puerto Rico Funds.  We are

16   a group of on-island mutual funds that hold 625 million

17   dollars worth of COFINA bonds.

18             My benefit of going towards the end is most of my

19   points have been covered and acknowledged in Your Honor's

20   acknowledgment.  I won't repeat them.

21             I wanted to raise two issues of clarification.  One

22   I'm going to steal from Mr. Dunne's papers.  He raised an

23   issue, and I don't know if it was addressed today.  The

24   appointment of a committee may be very appropriate in the

25   Commonwealth case where there are a lot of unsecured

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 62 of 193

61

1    creditors.  It may be a completely different story with regard

2    to COFINA, which does not have material unsecured creditors.

3           And as I understood Your Honor's ruling, the role the

4    Commonwealth committee would play in the COFINA case, which we

5    would suggest would be none, is not being addressed or

6    effected by Your Honor's ruling on this motion.

7           THE COURT:  Correct.  This motion and my ruling will

8    solely go to these administrative arrangements, and will be

9    without prejudice to any party's position as to the propriety

10   of anything that would smack in any way of substantive

11   consolidation, or whatever you want to call it, or the

12   legitimacy or legality of the fiscal plan's contemplation of

13   pooling of assets.

14          MR. ZAKIA:  I just wanted to make sure I understood

15   that.

16          And the last point, Your Honor, I heard a little

17   differently what Mr. Bienenstock said in response to Your

18   Honor's query at the beginning.  And maybe I was just wrong,

19   but if I was right, I'd like to clarify.  I thought that he

20   told you that the wall or the separate independent fiduciary

21   point had already been put in place and was in existence.

22          And if I'm wrong about that, that's fine, but if it

23   is, I think we'd all like to know who that person is or who

24   that entity is, and who speaks for the independent fiduciary

25   for COFINA in these cases.  If it's still to come, I echo

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 63 of 193

62

1    everyone else's point that we'd like to be involved in the

2    process.  But I thought I heard him say it had already been

3    selected.

4         THE COURT:  Mr. Bienenstock, would you like to offer

5    clarification?

6         MR. BIENENSTOCK:  Yes, Your Honor.

7         COFINA already has an independent board, and by that

8    I mean the government of Puerto Rico can't tell it what to do.

9    When I said in my status report that absent a settlement among

10   the parties, the Oversight Board would be interested in having

11   a settlement between COFINA on the one hand and the

12   Commonwealth on the other, I was not specific as to who on the

13   COFINA side.

14        And this is something where if we don't think

15   COFINA's independent board is independent enough, we will take

16   steps to get to independent directors or board members who are

17   totally independent with probably new independent counsel to

18   negotiate against the counterpart on the Commonwealth's side.

19   That has not been done yet, and I was not specific, so I can

20   understand how people got different impressions.

21        THE COURT:  And you acknowledge that you are on

22   notice that there is deep and intense concern on the COFINA

23   creditor side as to how this ultimately gets formulated if

24   that's necessary?

25        MR. BIENENSTOCK:  Absolutely.  And we might actually,

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 64 of 193

63

1  because of that, approach Your Honor for a ruling before we

2  start, so we don't go through the whole process and then are

3  told we didn't have an independent enough party.  So we'll

4  leave that for how it shakes out.

5      THE COURT:  Obviously I have a lot of work on my

6  plate, but transparency is important in these proceedings.

7  And so a method that, if these matters are controversial, will

8  make the steps and the issues as transparent as possible is

9  appropriate from my perspective.

10      MR. BIENENSTOCK:  Thank you.

11      THE COURT:  Thank you.

12      MR. KIRPALANI:  Good morning, Your Honor.

13      THE COURT:  Good morning.

14      MR. KIRPALANI:  Susheel Kirpalani for Quinn Emanuel

15  on behalf of the COFINA Senior Bondholder Coalition, and

16  sometimes we're called the Seniors.

17      We did file an omnibus objection to the three

18  motions.  I may not need to rise again.  I recognize how much

19  you have on your docket today, but I thought I would speak on

20  the joint administration.  And then just give you a couple of

21  minutes of remarks of who we are in this entire process, as

22  well as the view of --

23      THE COURT:  A couple as in about 90 seconds.

24      MR. KIRPALANI:  Absolutely, Your Honor.  Absolutely.

25      THE COURT:  Thank you.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 65 of 193

64

1          MR. KIRPALANI:  With respect to joint administration,

2    Your Honor already presaged how we thought the issue should be

3    resolved with a clear stamp on the front page of various

4    motions to indicate to creditors at large does this affect the

5    property of your debtor or not, and if not, then go back to

6    bed.

7          So that I think is perfect, and we are fine with the

8    Joint Administration Motion being granted with Your Honor's

9    comments and clarifications.  And we appreciate how much care

10   you've put into what seems to be an administerial issue, but

11   as you've heard, could have substantial ramifications.

12         They say, Your Honor, that away from the Joint

13   Administration, they say the debtor you know is better than

14   the debtor you don't.  I'm not so sure about that.  And the

15   reason I say that is it remains to be seen.  And what PROMESA

16   is -- I was involved personally in the drafting, as were many

17   in this courtroom.  This statute is novel.  It has some

18   parallels to Chapter Nine, some parallels to Chapter 11, and

19   some truly unique issues.

20         One of those issues, and it really does speak to what

21   Mr. Bienenstock has been discussing for the first time this

22   morning in open court about some yet to be determined

23   independent form of COFINA.  Your Honor, the Statute of

24   PROMESA is very clear, and this was a bone of contention

25   during the drafting, so I remember how clear it is.  There is

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 66 of 193

65

1   only one representative of the debtor with standing to propose

2   a plan, to sue and be sued, and that is the Oversight Board.

3   It is not some future, pragmatic, unnamed independent

4   fiduciary which no COFINA creditor has seen or heard of in the

5   last two years.

6          And so the idea we're going to borrow some pragmatism

7   from Chapter 11 and introduce and import it here, you've heard

8   already some concerns that were made.  I know Your Honor is

9   not prejudging anything, but I wanted the Court to be aware

10  that the specific statute is Section 301(c)(7).  That is very

11  clear who the Trustee in bankruptcy is.

12         What PROMESA is -- and I know Your Honor's

13  experienced in Chapter 11, but what PROMESA is is essentially

14  a Chapter 11 trustee case from the get go.  That means

15  Mr. Rapisardi, although I love Mr. Rapisardi personally, his

16  client is AAFAF, which thus far has worn many hats.  They seem

17  to forget the COFINA hat in the closet every time they try to

18  take any step whatsoever, but they do have many hats, GDB

19  representative, the Commonwealth representative, the COFINA

20  representative.

21         All that stopped upon the commencement of Title III,

22  and the statute is crystal clear on this.  So we do hope that

23  the debtor we don't know, which is the Oversight Board, will

24  take the responsibility that Congress gave it and use that,

25  and use it wisely, because our clients, we hold two and a half

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 67 of 193

66

 1   billion dollars of COFINA senior bonds.  That's one-third

 2   approximately of the COFINA senior class of creditors.

 3        We have offered many solutions.  We have been

 4   rebuffed at every turn.  And we will afford the Oversight

 5   Board every opportunity that's conceivable to try to engage

 6   with us in good faith, negotiate a solution for all of the

 7   people of Puerto Rico, including financing at the lowest

 8   possible cost.  That's why COFINA was created, and that's why

 9   Mr. Rapisardi's clients statutorily promised and committed

10   never to impair the COFINA structure.  And of course they've

11   done the exact opposite, Your Honor.

12        Thank you.

13        THE COURT:  Thank you.

14        MR. ROSENBERG:  Good morning, Your Honor.  Andrew

15   Rosenberg from Paul, Weiss, Rifkind, Wharton and Garrison,

16   counsel for Ad Hoc Bondholder Group.

17        THE COURT:  Good morning.

18        MR. ROSENBERG:  Good morning.  We did not file any

19   papers, because we actually support the Joint Administration

20   Motion, and still do.  We view it purely as a procedural

21   mechanism that doesn't have any substantive impact.

22        I did want to rise, though, just to address a couple

23   of the statements that were made.  Just a quick five seconds

24   on our group or ten seconds on our group.  We hold

25   approximately three billion dollars worth of GO bonds.  Our

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 68 of 193

67

1   group is comprised of mutual funds, municipal bond funds, and

2   hedge funds.

3           And I think a couple of points I'd like to correct

4   is, first, I guess we are the "the" or the "they" that

5   everyone keeps referring to as the other creditor group

6   opposing.  And I don't think this should necessarily be looked

7   at just as an intercreditor dispute.  The monies that

8   ultimately the Commonwealth is looking to keep or recoup or

9   make clear are its property, these are actually Commonwealth

10  funds.  They're not GO bondholder funds.  They are

11  Commonwealth funds that the Commonwealth is looking to keep.

12          The GO bondholders by virtue of their first priority

13  under the constitution on all available resources simply have

14  first claim to those monies once they're returned, but I think

15  the dispute is not simply as it's portrayed of GOs versus

16  COFINAs.  I think it's Commonwealth versus COFINA to some

17  degree in terms of whose money it is, and then we simply have

18  first claim on it.

19          Two, we share actually -- while we think the motion

20  is fine, we actually share many of the same concerns in terms

21  of the overlap as to who's looking out for who.  I think that

22  this is a Board appointed by the Governor.  I think it's

23  filled with government officials.  And we too are aware you

24  may need independent fiduciaries or separate counsel to look

25  out for both sides, because they are tied at the hip and

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 69 of 193

68

1    fighting over these same resources here.  So we share that

2    concern, also.

3            Similarly, under the legal theory what's good for the

4    goose is good for the gander, given the overlap of the cases,

5    if people are being granted -- and I don't think that's for

6    today.  I agree with Your Honor wholeheartedly, and

7    Mr. Bienenstock, if people are being granted standing in one

8    case on certain issues, I think the parallel should also be

9    true.

10           So we just wanted to make sure Your Honor had an

11   accurate framing of this, in terms of that we share many of

12   the same concerns about the COFINA, about how this is handled,

13   and making sure a fair resolution through settlement or

14   litigation is ultimately achieved.  Thank you.

15           THE COURT:  Thank you.

16           I think we have heard everyone on the Joint

17   Administration Motion, and I thank you all for your brevity.

18           I have carefully considered all of the arguments and

19   submissions.  The objections are overruled.  And subject to

20   the modifications that I have directed the debtors' counsel to

21   make, the Joint Administration Motion, which is for

22   administrative purposes only, is granted.  And I direct the

23   counsel for the debtors to settle an Order on the five days

24   notice that we talked about.

25           And so next up on the disputed list I believe is --

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 70 of 193

69

```
 1        I'm sorry.

 2                MR. BIENENSTOCK:  Your Honor, there are just two

 3        left.  And the next is the case management.  But since I

 4        started talking about the bank motion, if it's okay, while

 5        it's fresh in everyone's minds, we would take that next.

 6                THE COURT:  That's fine.

 7                MR. BIENENSTOCK:  Thank you.

 8                Your Honor, just a few short preliminary comments

 9        about this motion that we filed in order to -- well, it was in

10        reaction to the concern of the banks, whether they would honor

11        Commonwealth checks after we filed the Title III petition.

12                And we just wanted them as conduits to know that they

13        had no liability for honoring checks presented to it.  Three

14        parties have taken issue with that by my count.  I think it's

15        Ambac, the Mutual Fund Group, and the COFINA seniors.  And

16        they raise a lot of arguments, starting with case in

17        controversy under Article III of the Constitution, subject

18        matters jurisdiction, et cetera.  But at the heart of the

19        matter, this is really a concern that they don't want to

20        sanction by this Motion and Order the Commonwealth taking

21        money that COFINA believes is its property.

22                And so that's why we have been working on a

23        resolution where as a practical matter, the Oversight Board

24        would not want that to happen without Court approval.

25                THE COURT:  What's the "that"?  I just lost your --
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 71 of 193

70

1          MR. BIENENSTOCK:  That under the original deal,

2    documents setting up COFINA, where sales and use taxes are

3    transferred to COFINA, and some of them are transferred back

4    to the Commonwealth, that under that original routine, that

5    the Commonwealth would not change that and take money that it

6    previously did not take without Court approval.

7          THE COURT:  So you are not planning in the near term,

8    without an application to the Court, to --

9          MR. BIENENSTOCK:  Well, where we've gotten to, so as

10   to rope in all the relevant parties, because the Commonwealth,

11   as Mr. Rapisardi explained before, has a lot of powers on its

12   own, political powers and otherwise, that the Oversight Board

13   cannot control or does not control.

14         So where -- the resolution that we'd like to have is

15   that for a fixed -- well, until the Commonwealth gives 30 days

16   notice, all parties can be assured that the customary

17   transfers of money back and forth between the Commonwealth and

18   COFINA would not change.  And if ever the Commonwealth gives

19   that 30 days notice, then at that time parties would have to

20   approach the Court if they couldn't reach another

21   resolution.

22         And we are hopeful, based on discussions with both

23   sides, that with that, there is no concern about giving the

24   banks comfort that they can honor checks without liability,

25   because although some of the objections label the banks as

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 72 of 193

71

 1   intermediate transferees, that's not the way we see it.

 2   They're just conduits.  It's never their money.  It's money

 3   going through them from one account to another account.

 4          And this is solely -- and as Your Honor can imagine,

 5   this was quite a concern.  We were fortunate in convincing the

 6   banks that they should continue honoring checks pending this

 7   hearing.  If they feel uncomfortable honoring them, that could

 8   close down the Commonwealth, which is a horrible event.

 9          So we're hopeful that the resolution I just explained

10   will be acceptable to both the Commonwealth and the

11   bondholders based on discussions we had leading up to this.

12          THE COURT:  Right.  So I need to hear positions on

13   this.

14          MR. BIENENSTOCK:  Right.

15          THE COURT:  So I see Mr. Dunne.

16          MR. DUNNE:  Yes.

17          THE COURT:  Yes.  And then Mr. Mayer.

18          MR. DUNNE:  Your Honor, I haven't seen the language

19   yet, and the devil's always in the details here, but let me

20   start with a point that Mr. Mayer raised previously, which is

21   we don't have Section 363 applicable to these cases.  And as a

22   result, we need to be extremely vigilant.  We need parties to

23   be incentivized to raise issues they see occurring if there's

24   a request to transfer funds or to divert property.  We don't

25   want to find out about those things after the fact.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 73 of 193

72

1        And our issue with the Order is that this seemed to

2   allow somebody to just comply with the request; have, you

3   know, proactive exculpation; and then not have to worry about

4   bringing it to our attention or the Court's attention.

5        What Mr. Bienenstock proposed does get to the heart

6   of what we're concerned about, so I would like to see the

7   language.  If it's crystal clear what we're talking about is

8   allowing only those transfers that are consistent with the

9   historical practices to perform the original documents without

10  effect to the recent legislation, Law 26 and the like, that

11  may work.

12       I'm also assuming that it's not giving

13  forward-looking exculpation to the extent that not

14  withstanding Mr. Bienenstock's promise of 30 days notice, if

15  they in derogation of that went out to a bank and said we'd

16  like to transfer these funds, that that bank is going to be

17  incentivized to raise their hand, because they're not going to

18  be immunized from any liability for that.

19       So it's something I think we could potentially work

20  with, but I'd like to go through the details on that.

21       THE COURT:  Thank you.

22       And so just logistically, Mr. Bienenstock, would you

23  propose that I, you know, hold this motion under advisement

24  pending negotiation of a Consent Order?

25       MR. BIENENSTOCK:  Yes, Your Honor.  But I think we

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 74 of 193

73

1  should hear also from the Commonwealth, and if Mr. Mayer has

2  something to say, so we know if we're on a fool's errand or

3  not.  I don't think we are based on discussions I've had, but

4  people sometimes change positions.

5        THE COURT:  So Mr. Mayer, do you want to hear

6  Mr. Rapisardi first?  Do you --

7        MR. MAYER:  I'm happy to wait for Mr. Rapisardi.

8        THE COURT:  Thank you.

9        MR. RAPISARDI:  Very briefly.

10        THE COURT:  I'm sorry.  You can sit down again.

11        MR. MAYER:  Thank you, Your Honor.

12        MR. RAPISARDI:  Very briefly, Your Honor, in response

13  to that.  John Rapisardi --

14        THE COURT:  Wait.  I can't hear you.  You either have

15  to shout or come to the podium.

16        MR. RAPISARDI:  I'm sorry, Your Honor.

17        THE COURT:  And actually, everyone should speak from

18  the podium so the sound goes to the overflow courtrooms.

19        MR. RAPISARDI:  My apologies.

20        THE COURT:  Thank you.

21        MR. RAPISARDI:  John Rapisardi from O'Melveny & Myers

22  on behalf of AAFAF.

23        The proposal that Mr. Bienenstock is suggesting with

24  respect to 30 days notice in advance of use of funds in

25  accordance with the scope of practice is something that is

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 75 of 193

74

1  acceptable.  Obviously the devil is in the details in terms of

2  working out the Order, and we'll work with everyone to make

3  sure we have a mutually acceptable Order.

4          THE COURT:  Thank you, Mr. Rapisardi.

5          Mr. Mayer.

6          MR. MAYER:  Directionally, Your Honor, we are hopeful

7  that this works.  I have one client in the courtroom who has

8  already indicated that this should work.  I need to check with

9  two others, but we are hopeful that language can be worked

10  out.

11          I just want to put one specific item directly

12  relevant to this, and one sort of off to the side.  The 120

13  million starting July 1 is really the critical issue, and what

14  we're focused on is making sure we understand that money flows

15  back and forth in the ordinary course with the preceding deal

16  documents.  That's fine.  That continues.  But come July 1, in

17  accordance with those documents, 120 million dollars is due to

18  be paid to COFINA.  And our view as to what we're talking

19  about here, and I think we are, is that before anybody grabs

20  that 120 million dollars, we're going to get 30 days.  That's

21  really the focus.  And I don't think I'm saying anything

22  different.

23          MR. RAPISARDI:  That is correct.  (Nodding head up

24  and down.)

25          MR. MAYER:  Okay.  So that is the item that is

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 76 of 193

75

 1   directly relevant.

 2          Now, one that is sort of off to the side, there are

 3   actually two deadlines.  And if I may take literally 60

 4   seconds on a related topic, Your Honor, July 1 is the 120

 5   million dollar issue.  On June 1, we have a 60 million dollar

 6   issue.  This relates to something Mr. Bienenstock raised in

 7   his opening, and I think it's appropriate to raise here,

 8   because it's kind of related.

 9          There's a payment due by the Trustee of the COFINA

10   bonds on June 1.  And the Seniors, represented by

11   Mr. Kirpalani, take the position that upon a default, all the

12   money goes to them.  AAFAF, as I understand it, takes the

13   position that no default has yet occurred.  My people, who are

14   primarily -- whose holdings are focused on the juniors,

15   although we do have substantial seniors, take the position

16   that under the documentation, until debt has been accelerated,

17   if debt has been accelerated, that money continues to flow

18   without acceleration to the people whose money is due and

19   payable.

20          The indentured trustee, as I understand it, takes the

21   position that it wants this Court to tell it what to do.  We

22   are in support of an interpleader hearing on this issue

23   subject to Your Honor's availability.  Your calendar is yours

24   to control, but we would support a hearing on this prior to

25   June 1.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 77 of 193

76

1        My understanding from Mr. Kirpalani is that the

2   seniors have no objection, to the extent Your Honor can make

3   the time, to schedule a hearing before June 1 so that Your

4   Honor can look at the documents, hear people, and tell Bank of

5   New York what it's supposed to do.

6        It's not an enormous dollar amount, but it has

7   potential ramifications for the case in terms of creating

8   defaults that might not otherwise exist.  And therefore, we

9   would urge Your Honor to schedule a hearing on the motion.

10       If I've misstated anything for Bank of New York --

11       THE COURT:  I was planning to cue up the Bank of New

12   York Order to Show Cause issue in terms of scheduling and time

13   frame after we have done these other motions, so if you would

14   bear with me on that.

15       MR. MAYER:  Certainly.  I'm sorry then to have gone

16   out of sequence.

17       THE COURT:  Thank you.

18       MR. KIRPALANI:  Your Honor, I'll keep it very brief.

19   Susheel Kirpalani from Quinn Emanuel on behalf of the COFINA

20   Seniors.  I'm not going to address the issue Your Honor is

21   bringing up later today.

22       With respect to this proposed solution to the bank

23   account's motion which we did object to on the grounds in part

24   on Article III, case in controversy, but with respect to

25   Mr. Bienenstock and perhaps Mr. Rapisardi are willing to

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 78 of 193

77

1  provide blanket comfort Orders to banks that may be instructed

2  by AAFAF to invade COFINA property, we took significant issue

3  with that prospect.  And frankly, you have to really read

4  between many pages to see that that's what they are trying to

5  do, since banks and bank accounts are not even defined terms

6  in the papers.  And debtors was defined jointly, which relates

7  to the prior issue.

8       With respect to this, we'll give folks 30 days notice

9  and then creditors should run into court with their hair on

10  fire, all I can say, Your Honor, is it doesn't necessarily

11  seem to me as being fair process.  If the debtor, one debtor,

12  the Commonwealth, seeks to, I don't know, lift the stay and

13  invade another debtor's statutory property for which my

14  clients, and Mr. Mayer's clients, and Ms. Goldstein's clients,

15  and Mr. Dunne's clients all have Fifth Amendment protections

16  against such invasions, they need to come to court.  They need

17  to tell the Court exactly what they're trying to do.

18       Sending us a notice, we have no idea what this is

19  going to look like, all I will caution the participants here

20  is getting a letter that says we may try to invade or divert

21  some COFINA property at some point in the future, for some

22  unspecified amount, for some unspecified purpose, for which we

23  don't know if we're going to provide any adequate protection

24  for your liens, I think is creating an impossible situation.

25       Mr. Mayer has already told the Court what the

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 79 of 193

78

1    elephant in the room is, and that is the fiscal year starts

2    July 1.  COFINA is entitled to all the dedicated sales tax

3    commencing July 1.

4         And right now there's no issue, because COFINA's

5    house has been filled for the fiscal year for the last four

6    months, five months.  So it's come July 1 that all of the

7    sales tax collected at the merchant level and sent to Banco

8    Popular as the agent for COFINA, that's when it all starts

9    going to COFINA.

10         And under the fiscal plan that's been certified, what

11   no one's telling Your Honor is they have to access that cash

12   starting day one.  So why are we coming up with a procedure

13   that's frankly a bit artificial to say maybe we're going to

14   need the money, maybe we'll send a notice out, and maybe

15   creditors will want to run to court to try to get Your Honor's

16   attention?

17         I think it should be a more organized and thoughtful

18   process than that, Your Honor.

19         THE COURT:  Thank you.

20         Mr. Bienenstock.

21         MR. BIENENSTOCK:  Thank you, Your Honor.

22         I want to correct one statement.  Mr. Kirpalani is

23   mistaken.  That COFINA money that they believe under the

24   certified fiscal plan the Commonwealth needs as of July 1,

25   that's just not the case.  We built in lots of time for this

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 80 of 193

79

1   issue to be settled or litigated precisely so we wouldn't need

2   to have some type of emergency on July 1.

3         THE COURT:  Thank you for making that clear.  So I

4   will hold this under advisement pending an attempt to

5   negotiate a consensual document.  I think I'm hearing very

6   clearly from the creditors' side a concern about specificity

7   of the notice, and also some mechanism that will make the bank

8   less than sanguine about the prospect of the notice.  Whether

9   that is that the exculpatory provision only applies by its

10  terms for these ordinary course historically precedented

11  transfers, and then perhaps it's the obligation of the

12  Commonwealth then to apply along with the 30-day notice for a

13  Court Order that would provide protection for some specific

14  new disbursements of the money, that may be something that

15  goes to allay some of the concerns here.

16        So I urge everyone to be candid, imaginative, no

17  vaguer than is necessary.  And you'll get what is necessary

18  done to allow this ordinary course to float, and the larger

19  more substantive negotiations go on.

20        All right.  So that is under advisement pending

21  further notice.

22        All right.  So does that bring us then to the Case

23  Management Order?

24        MR. BIENENSTOCK:  Yes, Your Honor.  Mr. Rutsky will

25  handle that.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 81 of 193

80

1    THE COURT:  Thank you.

2         And so Mr. Rutsky, as I did with the -- one of those

3    other Orders, I think it was Joint Administration, I would

4    like to flag, before you speak in response to the objections

5    and speak in support of the motion, some specific concerns

6    that I have and modifications that I would require from my

7    case management perspective.

8         MR. RUTSKY:  Sure.

9         THE COURT:  And of course you can tell me if those

10   don't work for you all or anyone, why that is, but I want to

11   put them on the table.

12        MR. RUTSKY:  One question, Your Honor, before we do

13   that?

14        THE COURT:  Yes.

15        MR. RUTSKY:  And I welcome your comments.  We

16   submitted to the Court yesterday a redline version of the

17   motion which attempted to --

18        THE COURT:  My comments are based on the redline

19   version.  I read it.

20        MR. RUTSKY:  Thank you.

21        THE COURT:  And that did address some of my issues,

22   but not all of them.  And I notice it addressed some of the

23   issues that had been raised in the objections, but not all of

24   them.  So I apologize in advance.  Some of these are little,

25   and some of these are bigger.  And I'll try to speak

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 82 of 193

81

1   conceptually where possible, but clearly.

2           So first of all, in paragraph four of the Order, and

3   also the introductory paragraph of the procedures, there's a

4   general overriding provision that says that the Order

5   overrides all other relevant rules.  There are some rules that

6   we don't have the freedom to override, and so I would just ask

7   that in both of those places, a clause be added to say that it

8   supersedes the other rules to the extent that such variance is

9   permitted by the relevant rules.  And to the extent we have a

10  conflict, we can work on that, but I think we have to say

11  that.

12          And then in the procedures, page six, the second

13  paragraph of the markup, you say that there is access to

14  documents on the District Court website.  Technically, there's

15  a pass through hyperlink that takes you to the Bankruptcy

16  website, so say through the District Court website.  I'm just

17  trying to be as clear for people as possible.

18          And again, on the availability of copies, say that

19  they're available from the District Court Clerk pursuant to

20  the District Court procedures and miscellaneous fee schedule

21  of the District.

22          Then with respect to courtesy copies for the Court,

23  the general provision for standard group notice, I will need

24  copies sent both to the chambers here and to my chambers in

25  New York.  And the attention to suite number for the New York

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 83 of 193

82

1  chambers is 3212.

2       And I also want to require that all paper courtesy

3  copies, and I guess indeed even e-mailed courtesy copies,

4  include the ECF header information, so that it is easy to see

5  what docket event the particular paper relates to.

6       Again, on page nine of the procedures in paragraph E,

7  the reference should be to the Puerto Rico Bankruptcy website

8  this time.  I think that's for the location of the mailing

9  list.  So that will actually be in the Bankruptcy Court ECF

10  system.

11       And with respect to motions seeking an evidentiary

12  hearing, I would like a requirement that the evidentiary

13  hearing request be flagged prominently on the motion paper, or

14  if it's coming in the opposition paper, on the opposition

15  paper.  And the Order has to give the Court -- explicitly note

16  that the Court retains discretion regarding the scheduling of

17  evidentiary hearings.

18       And then as to the briefing schedule, I know that in

19  bankruptcy matters in general, and in this one in particular

20  with all of its moving pieces, everyone expects to move

21  quickly, but given the sheer volume that's going to go on

22  here, I need some more time after fully briefing, because

23  sometimes I'll also have travel, than you've contemplated in

24  the Order.

25       And so I am asking, for this, at this point, I may

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 84 of 193

83

1  need to ask you to back it up at some point, but to start I

2  want deadlines for objections to be ten days before the

3  hearing, and not seven.  And the deadline for replies, five

4  days before the hearing for parties, and four days before the

5  hearing for the debtors and any committees.

6       And with respect to communications with chambers,

7  other than scheduling requests from the debtors, and I

8  understand that there are objections about the -- you know,

9  debtors' prominence in scheduling, and we'll hear those if

10 they're still going on, but communications with scheduling

11 requests other than from the debtors must be initiated by

12 urgent motion or -- urgent motion if some action by the Court

13 is being requested.  And there should be reasonable good faith

14 communication beforehand in an effort to resolve or narrow the

15 issues that are being brought to the Court in that urgent

16 motion request.

17      And so the urgent motion should have just a

18 certification that that reasonable good faith effort has been

19 made under the circumstances, and if there is knowledge that

20 there is going to be an opposing position, the fact that

21 opposition is anticipated should be flagged.  That will help

22 me in scheduling responses.

23      Other communications that are informative but not

24 requesting relief, to the extent you feel a need to file them,

25 should be labeled as an informative motion.  The system in

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 85 of 193

84

1    this Court and in the Bankruptcy Court doesn't contemplate

2    letter communications, as in my home district, and I frankly

3    do not want my chambers getting substantive telephone calls.

4    I want it in writing, on the docket.  Everybody sees it.

5          I have a chambers e-mail address, which I want

6    courtesy copies of the urgent motions e-mailed, and this will

7    help me to deal with the ECF, NEF traffic, and make sure that

8    I notice things that I need to notice.  And so the courtesy

9    copy of an urgent motion needs in the first instance to be

10   e-mailed to Swaindprcorresp, which is c-o-r-r-e-s-p,

11   @nysd.uscourts.gov.

12         Those of you who have seen my District Court

13   procedures know that I ask courtesy copies to be faxed in.

14   Because we never know where we'll be, I've set up this e-mail

15   box to basically be my proxy passage.

16         In paragraph 3(c) on page 11 of the markup, the

17   provision regarding inconsistent filings should have an

18   exception for filings that have previously been authorized by

19   the Court in response to an urgent motion establishing such

20   scheduling.  And 3(d) should have a specific reference to the

21   urgent motion procedure, so that we know what we're talking

22   about.

23         Bless you.

24         All motions, whether urgent or not, that are

25   requesting relief, should be accompanied by a Proposed Order.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 86 of 193

85

1          In IV(a), delete the telephone hearing procedure.  As

2   I said earlier, I'm still working those mechanics out, and I

3   will put something out in writing once I have mechanics to

4   share.  And then we can ultimately incorporate that into an

5   Order, but I'm not ready for that yet.

6          And I would like a provision that allows the Court to

7   give notice of intended suisponte amendments to the

8   procedures.

9          And as you saw in my Order scheduling this hearing, I

10  have a general requirement that people attending proceedings

11  in locations where I'm presiding in person refrain from

12  wearing perfumes and colognes.  I have allergy issues.  There

13  may be other people who have allergy issues.  And so I thank

14  you all for that accommodation, but I'd like that to be

15  prominent maybe right after the first four omnibus hearings,

16  somewhere that people will see it.

17         So believe it or not, that's the end of my list.

18  Thank you.

19         MR. RUTSKY:  Thank you, Your Honor.

20         We will make the changes, and assuming there's an

21  Order that's acceptable after having discussion, we will

22  submit it pursuant to the same procedures we discussed

23  earlier.

24         THE COURT:  Thank you.

25         MR. RUTSKY:  So Your Honor, I guess at this point in

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 87 of 193

86

 1  time, I'm not sure -- we circulated these procedures in

 2  response to the objections.  We have not had a chance to

 3  speak.  There were eight objections, so I guess I drew the

 4  short straw for this one.

 5        We didn't have a chance to speak with the parties to

 6  see what remaining issues there may be.  I'm not sure --

 7        THE COURT:  So maybe I should ask for a show of hands

 8  as to objectors who continue to have issues with the revised

 9  proposal as further modified as outlined by me.

10        MR. BRILLIANT:  (Raised hand.)

11        MR. MOLINA LOPEZ:  (Raised hand.)

12        MS. GOLDSTEIN:  (Raised hand.)

13        THE COURT:  All right.  So let's take the objectors

14  in order, and then you can respond to those.

15        MR. RUTSKY:  Yes, Your Honor.

16        THE COURT:  Sir.

17        MR. BRILLIANT:  Good morning, Your Honor.  Allan

18  Brilliant from Dechert LLP on behalf of Peaje Investments LLC,

19  which we believe is the largest uninsured 1968 resolution

20  bondholder.

21        THE COURT:  Good morning.

22        MR. BRILLIANT:  Your Honor, like Mr. Dunne, we commit

23  to the Court to work with the debtors' Oversight Board to

24  reach a resolution that will be a win win for everyone to

25  date.  Unfortunately, our suggestions have not been taken up.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 88 of 193

87

 1            Mr. Bienenstock I think was referring to our client

 2   when he was mentioning the HTA.  We have litigation pending.

 3            THE COURT:  May I ask you to speak just a little bit

 4   slower?

 5            MR. BRILLIANT:  Sure, Your Honor.  I'm sorry.

 6            I believe Mr. Bienenstock was referring to our client

 7   when he referred to information that was currently pending in

 8   the Federal District Court here in the District of Puerto Rico

 9   in connection with HTA.  We filed that Complaint.  It's

10   obviously not under Title III, because HTA was not yet a

11   debtor in the case.

12            And Mr. Bienenstock was a little bit right, but made

13   some mistakes when he talked a little bit about what our

14   position is.  We have what we believe are special revenue

15   bonds.  I don't think the debtors disagree with that or the

16   Oversight Board disagrees with that, that our bonds are

17   special revenue bonds.  We believe under PROMESA, Title III,

18   that special revenue bonds need to continue to be paid after

19   the commencement of a Title III proceeding.

20            So we believe that, you know, not with -- if you look

21   at Section 922, the stay doesn't apply, and the effect of all

22   the amendments is special revenues would continue to be paid.

23   We don't believe that 928 applies to our special revenues,

24   because our liens are statutory liens, not contractual liens.

25   And 928(a) and (b) only apply to statutory liens.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 89 of 193

88

1     Even if 928 were to apply, we believe that the proper

2     method of calculating under 928(b) would be to only look at

3     the -- you know, we have at HTA a gross lien on toll revenues

4     in certain tolls.  So we believe the expenses would be just

5     the expenses related to creating those tolls.

6          THE COURT:  I am grateful for the level of insight

7     that you're seeking to give me here, but I would be even more

8     grateful if you would focus on things --

9          MR. BRILLIANT:  Sure.

10         THE COURT:  -- specific to the Case Management Order

11    at this point.

12         MR. BRILLIANT:  Sure, Your Honor.

13         We continue to have three issues with respect to the

14    Case Management Order.  First is with respect to Section

15    362(e) and (f) of the Bankruptcy Code.  Congress in creating

16    PROMESA decided to include 362(e) and 362(f), and make them

17    applicable to these cases.

18         Under the Case Management Order, the Oversight Board

19    and the debtors would ask Your Honor to effectively make them

20    inapplicable by deeming that all parties have consented to,

21    you know, a waiver of their rights to a speedy hearing with

22    respect to motions to lift the stay under 362(e) and (f).

23         THE COURT:  There was a slight revision of that

24    provision in the Amended Order that was filed last night that

25    I think tracked language that had been proposed by one of the

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 90 of 193

89

 1   objectors that does include a waiver of 362(e) under certain

 2   circumstances.  I think if there's an application by urgent

 3   motion for a tight schedule, and the Court denies it, then

 4   there's a deemed waiver.  But there is not the broad waiver

 5   that was contemplated by the original draft.

 6           Is that correct, Mr. Rutsky?

 7           MR. RUTSKY:  Yes, Your Honor.  That is correct.

 8           MR. BRILLIANT:  Your Honor, we don't interpret the

 9   language that way, but we still believe that that's sufficient

10   for our purposes.

11           Basically what the language does, Your Honor, is

12   allow parties to seek an expedited hearing.  But if you don't

13   get the expedited hearing, we still view that the section

14   362(e) is waived.  We don't believe it's part of a Case

15   Management Order, you know, the Court should consider on short

16   notice in the first day of the case.  The debtors want this

17   Order to be binding not just on COFINA and the Commonwealth

18   creditors, but any other debtor that were to subsequently file

19   and be jointly administered.

20           There is no notice here.  And the situations that

21   this could come up, Your Honor, are very varied.  And, you

22   know, Congress has created this provision, and we don't

23   believe it should be amended as part of the Case Management

24   Order.

25           Your Honor in its ordinary scheduling of motions --

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 91 of 193

90

1    Your Honor has been a bankruptcy judge before, so you know how

2    this comes up.  And Your Honor will be able to deal with this

3    on a one off basis.  But we don't believe that it's

4    appropriate, you know, at this point in time for there to be

5    an Order at the onset of the case that takes away the parties'

6    substantive rights.

7         And basically what they're doing is effectively

8    trying to shift the burden here.  Whereas Congress guaranteed

9    creditors that there would be an interim hearing within 30

10   days and a final hearing and ruling within 60 days, what the

11   debtors are trying to do is say basically, well, you know,

12   because of our case management issues and the fact that

13   there's only going to be omnibus hearings once a month, you

14   probably are not going to get a hearing within a month.  But

15   if you can show, the burden shifts to you, that you have an

16   emergent need, you can come into court and ask for an

17   emergency hearing.  But we don't think this is appropriate,

18   and it's just not the type of subsequent right that can be

19   modified in a Case Management Order.

20        Similarly, Your Honor --

21        THE COURT:  And so what you would want, a complete

22   blanket carved out from the omnibus motion date norm for Lift

23   Stay Orders -- I get your point and your concern about the

24   deemed waiver and waiver provision.  I also understand it to

25   be coming both from the debtors' case management perspective,

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 92 of 193

91

1    and from -- in some degree of consideration, from me, given

2    the breadth of potential players and breadth of issues in this

3    case.

4         And so I need something that is not going to give me

5    a free for all of 21-day notice, Lift Stay Motions, whenever,

6    wherever that I need to field.  And so let me just put that on

7    the table for now.  I'm going to hear also what the other

8    objections are and other suggestions.

9         MR. BRILLIANT:  Yes, Your Honor.  And I can make a

10   suggestion for now if you like or we can come back to it.

11        THE COURT:  Sure.

12        MR. BRILLIANT:  One of the things, we're in a vacuum.

13   We don't have a schedule from Your Honor as to when the

14   omnibus hearings will be.  Whether they will be every three

15   weeks, every month, we don't really know.  We don't know if

16   there's going to be gaps in them as well, you know.  If Your

17   Honor's going to be on -- you know, have other trials or other

18   things that are going on, and there won't be, you know,

19   hearings for a lengthy period of time.  So --

20        THE COURT:  I hear you, so let me --

21        MR. BRILLIANT:  So what I would suggest, Your Honor,

22   if you want --

23        THE COURT:  I can tell you the time frames that I had

24   in mind.  That might help.

25        So what I was thinking at this point is something in

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 93 of 193

92

 1   the last week of June, something in the week of August 7th or

 2   August 14th, something at the tail end of September, and

 3   something in mid November, and then something in late

 4   December.  So that's sort of six weeks.

 5        MR. BRILLIANT:  So what I was going to suggest, Your

 6   Honor, is that, you know, parties be able to, with respect to

 7   the stay motions, to the extent that 362(e) is, you know,

 8   applicable -- it's not applicable to all the stay motions, but

 9   to the extent that 362(e) is applicable, that the party notice

10   it at the next scheduled omnibus hearing which is within the

11   30 days.  And if it's not within the 30 days, there could be

12   communication.  It could be filed by a motion or however Your

13   Honor wants, but basically to go to chambers and say we have

14   this motion, you know, we're entitled to have it heard within

15   30 days.  There's not a hearing scheduled in the next 30 days.

16   You know, we'd like to have a hearing scheduled within 30

17   days.

18        It may very well be, Your Honor, based on what your

19   omnibus schedule is or based upon discussion with the other

20   parties, the other parties will agree to wait for the next

21   omnibus hearing, but it may be that they won't.  But the

22   burden shouldn't be shifted on the parties to show an urgent

23   nature or, you know, that there's a -- we shouldn't have the

24   burden to prove we're entitled to an earlier hearing rather

25   than the next omnibus hearing.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 94 of 193

93

1        THE COURT:  All right.  Doing a little negotiating

2   here from the bench, I sort of thought about that concept and

3   what I think I can work with and would be clear.  And this is

4   something I thought about when I was playing with the first

5   version of this Order, is to say that if a movement to a stay

6   schedules the lift stay hearing more than 30 days out, meaning

7   they notice it up for an omnibus that's more than 30 days out,

8   then there is the deemed waiver so that we don't have to do

9   any more paperwork on that.

10       If the movant wishes to bring on the Lift Stay Motion

11  out of the ordinary course and within the 30-day period, then

12  we figure out the Lift Stay Motion.  And I figure it out from

13  there, and there isn't a waiver of the 362(e) position.

14       Would that be acceptable to you?

15       MR. BRILLIANT:  So --

16       THE COURT:  I just don't want an ambiguity if someone

17  says all right, I want to cue up a Lift Stay Motion practice,

18  but I am content to wait until the omnibus date to have it

19  heard, so I'm just going to notice it up for the omnibus date,

20  I don't want any ambiguity as to whether there's a lurking

21  preserved 362(e) issue related to that.

22       MR. BRILLIANT:  If you voluntarily schedule it

23  outside of the 30 days, then I think it's appropriate it be a

24  deemed consent.  We can draft language that makes it very

25  clear that by doing so, you are consenting to that.  We don't

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 95 of 193

94

1   have a problem with that.

2           And then I take it if there's not an omnibus

3   scheduled for the next 30 days, then we would have a procedure

4   of asking the Court to schedule a date within the 30 days?

5           THE COURT:  Yes.

6           MR. BRILLIANT:  Then that would be acceptable to us,

7   Your Honor.

8           THE COURT:  Thank you.  And I realize you are

9   speaking for your client and not anyone else.

10          MR. BRILLIANT:  Yes, Your Honor.

11          THE COURT:  So that's the proposal that's on the

12  table right now on that.  Thank you.

13          Anything further?

14          MR. BRILLIANT:  We have two other issues, Your Honor,

15  with respect to the Case Management Order.  One was the way

16  the debtors have drafted the Order, they can file any pleading

17  on a non-omnibus hearing date.  Whereas with respect to

18  non-debtors, you know, other than, you know, the emergency

19  motions, we're required to schedule on an omnibus hearing

20  date.  We don't think that's fair.

21          All parties should start with procedural equality.

22  They may be the debtor.  They may have a lot going on in the

23  case, but they're also involved in everything in the case.

24  We'll have a big team and a big staff and can handle things on

25  non-omnibus days if necessary.  I don't think anyone has a

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 96 of 193

95

1  desire to ask for a hearing convenient to the Court but not

2  other counsel, but it should go the other way as well.

3         The way we see this case going, Your Honor, when you

4  combine the fact that they can do things on non-omnibus dates

5  and others can't -- and the other thing we want to bring to

6  your attention is with respect to the adversary proceedings.

7  They don't want there to be a first hearing until the first

8  omnibus hearing, more than 45 days after the -- you know, the

9  Complaint is filed.  This would be the first omnibus hearing

10  date more than 45 days.

11         So if hearing dates are six weeks apart, in theory

12  you could have to wait 42 days plus 44 days.  You might have

13  to wait 87 days before you can file -- get your first, you

14  know, hearing, status conference with respect to an adversary.

15  The debtors, you know, under this aren't bound by that.

16         The way we see what they're doing here, I'm not

17  saying it's intentional, but under the guise of the Case

18  Management Order, effectively there's a stay in effect with

19  respect to creditor actions.  Creditors, for instance, we

20  believe we have this right -- this is why I wanted to give

21  Your Honor a little background as to our client.  We believe

22  we're entitled to be paid even after a Title III occurred at

23  HTA.  We would want to be in court very soon, as quickly as we

24  could with respect to that motion.  We don't want to have to

25  wait and have it be delayed.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 97 of 193

96

1          I suspect that most of the issues that are going to

2    be filed here, most of the complaints, are going to be against

3    the debtors, you know, not necessarily by the debtors.  But

4    they have the opportunity through the Case Management Order to

5    expedite things.  Whereas we do not, because we're required to

6    only file on the omnibus dates.  Although they are a party to

7    this case, and they are going to be --

8          THE COURT:  You have the urgent motion to request a

9    variance from the option.  And I realize that that still isn't

10   entirely symmetrical, but the revised Order does give a party

11   wishing to ask, should something come up out of the omnibus

12   schedule, the ability to do that.

13         And I'm telling you to call it an urgent motion, and

14   copy it to my e-mail box so I notice it.  At the end of the

15   day, the scheduling will be up to me, but the proposed Order

16   sets norms.  It doesn't preclude something else.

17         So I just wanted to make sure that you are reading it

18   that way as well.

19         MR. BRILLIANT:  We were reading it that way, Your

20   Honor.  But we think it's inappropriate we have to file things

21   as an urgent motion and we have to justify why something is

22   urgent to potentially get what would ordinarily be but for

23   this case, you know, a schedule that would be consistent with

24   what Your Honor's or any other, you know, Court's rules might

25   be with respect to a hearing.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 98 of 193

97

1          Like I said, you know, parties have the ability to

2    decide when to file things so you can manipulate dates a

3    little bit, but depending upon a hearing every six weeks, you

4    could literally, if you just follow the rules without having

5    to go to Your Honor and say that it's urgent, you would have

6    to wait, you know, almost 90 days, which is a very long

7    time.

8          THE COURT:  And I understand that.

9          MR. BRILLIANT:  We don't think it's appropriate.  If

10   everybody has to live with it, both the debtors and other

11   side, then you'd say okay.  That's just the rules of the road,

12   and everybody has to file motions --

13         THE COURT:  I hear your asymmetric point, and also

14   your arithmetic.  So what's your next point?

15         MR. BRILLIANT:  That's all I have, Your Honor.

16         THE COURT:  Thank you.

17         MR. BRILLIANT:  Thank you, Your Honor.

18         THE COURT:  Ms. Goldstein, you had your hand up next.

19   I'm sorry.  I saw more hands on this side of the room.

20         MS. GOLDSTEIN:  Your Honor, we had made a number of

21   comments on the Case Administration Order.  Some of them have

22   in fact been resolved.  And I believe what is left, to some

23   extent, is resolved, so I just want to clarify that.

24         So we did have an issue with the automatic stay

25   provision.  We clearly understand when a Court needs to adjust

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 99 of 193

98

1  schedule, et cetera.  I think what you have suggested will

2  work.  We were concerned that changes to the statute, as

3  Mr. Brilliant pointed out, did shift the burden.

4        Certainly we agree that if a party schedules it for

5  the omnibus hearing, there should be an automatic waiver.  I'm

6  uncomfortable I think with the idea for the non-debtors to

7  change anything we have to show urgency, but they don't.  I

8  think our theme and our objection to the Case Management Order

9  was that there should be some procedural equality here or

10  procedural parity.

11        THE COURT:  May I just interrupt you for a minute?

12  The nomenclature convention here is urgent motion.  I didn't

13  make that one up.  That's what it is.

14        MS. GOLDSTEIN:  We've learned it recently, yes.

15        THE COURT:  Yes.  It was new to me less than two

16  weeks ago.  I would expect that an urgent motion request for a

17  hearing out of the ordinary course will say something more

18  than I'd like that date better than another date, and would

19  include some, you know, substance of the reason why this is a

20  concern that we believe ought to be addressed before the next

21  omnibus.

22        I am not reading this proposed Order, and by my

23  insertion of the urgent motion nomenclature not requiring the

24  requesting party to be making a showing that, you know, all of

25  its heirs and assigns will die within the next 18 minutes if

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 100 of 193

99

1    there is not a hearing immediately.  So the local rules here

2    distinguish an urgent motion from an informative motion, which

3    doesn't ask me to do anything.  An urgent motion is one that

4    asks me to do something other than in the ordinary set up.

5         So that's what I intend to mean by using the urgent

6    motion and expecting some explanation for why that's being

7    done.  So maybe that will help you.

8         MS. GOLDSTEIN:  It does, Your Honor.  I would

9    understand that.  It doesn't mean we have to prove irreparable

10   harm or anything of that nature.

11        THE COURT:  Thank you.  That's more succinct.

12        MS. GOLDSTEIN:  I would hope that the Oversight Board

13   would not be filing motions on a regular basis outside of the

14   omnibus hearing that don't have urgency to them.  People

15   travel far to get here.  I think you're going to resolve our

16   request, which the Oversight Board agrees with, on telephonic

17   participation.  At least that's what I heard.

18        THE COURT:  I am going to come up with a procedure,

19   and I will let you all know what that is.

20        MS. GOLDSTEIN:  Yes.

21        THE COURT:  And I will say that I, too, expect that

22   the Oversight Board isn't going to be asking me for out of

23   course hearings every five minutes.  And the Case Management

24   Order begins with "subject to consultation with the Court."

25   And so I expect to have and exercise some control over the

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 101 of 193

100

 1   extent to which that happens.

 2          MS. GOLDSTEIN:  Now, I guess I have one other

 3   question.  I think this was the last of the procedural Orders

 4   that you were considering.  I know some of us have additional

 5   comments in response to the status reports.  And I'm happy to

 6   go sit down and defer to other counsel to go first, but I just

 7   want to have an understanding as to whether we would have an

 8   opportunity to respond.  I think you had also requested views

 9   on mediation.

10          THE COURT:  Yes.  So if we can -- and actually let me

11   just check with the courtroom deputy.

12          So if we can move efficiently, and we may go just a

13   few minutes after 12:00, but I am mindful of the cafeteria

14   schedule here, and we will resume at 1:00.  I would like to

15   finish the discussion on the Case Management Order before we

16   break for lunch.  Then assuming that that is finished, when we

17   come back, I want to have just a brief discussion of a way to

18   cue up scheduling for the two matters that were recently

19   filed.  That being the utilities motion, and also the Bank of

20   New York Mellon request for an Order to Show Cause.

21          Then after that, I will take brief remarks to the

22   extent we continue to have time until two o'clock from people

23   who requested in advance to speak.  If we run out of time, I

24   invite informative motions.

25          MS. GOLDSTEIN:  Thank you, Your Honor.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 102 of 193

101

1          THE COURT:  Thank you.

2          MR. MOLINA LOPEZ:  May I?

3          THE COURT:  Yes.

4          MR. MOLINA LOPEZ:  Good morning, Your Honor.  My name

5     is Daniel Molina.  I represent Cesar Castillo.

6          THE COURT:  Good morning.

7          MR. MOLINA LOPEZ:  In this particular case, I am the

8     first attorney addressing you that does not represent a

9     bondholder, a GO, or COFINA, but rather a supplier of services

10    and materials to the Commonwealth of Puerto Rico.  And our

11    motion was based on our concern that the noticing requirements

12    that require to be served -- the motions be served by

13    overnight delivery, hand delivery or other exceptions, and to

14    make the request by e-mail elective almost, it's really going

15    to be burdensome as to the Puerto Rican small creditors that

16    are going to appear before this Honorable Court.

17         So instead of making it just a thing that can be

18    opted by each of the creditors, to make it mandatory that if

19    you have an e-mail address, which is one of the proposals they

20    do but then later mix it up again, if you have an e-mail

21    address, that should be the way that it should be served.  And

22    if the CM/ECF system is going to serve notices, that that

23    should serve notice to the parties unless the local rules

24    require that additional notice be served in the way of summons

25    or any other fashion.

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 103 of 193

102

1          So in order not to go over our motion already, our

2    position is that this Honorable Court should help us, and by

3    us I mean all the creditors that are not big firms, that are

4    not COFINA, that are not represented otherwise.  That it's

5    going to be really burdensome to serve notices to possibly

6    hundreds -- and debtors' motion identifies that as possibly

7    hundreds of thousands of creditors.  That if a portion of that

8    does file a notice of appearance, but then they want to

9    receive notices, we're going to be under the obligation of

10   serving paper copies to all those parties.  Whereas if this

11   Court directs that if you have an e-mail, that is the way

12   you're going to get notified, and if the CM/ECF service is

13   going to serve you notice, that is going to be your notice

14   unless other specific local rule requires it, that would go a

15   very long way for helping us to reduce the cost for other

16   parties that are not bondholders or that are small creditors

17   that are going to start appearing to this case.

18          So that was our remarks outside of what is already in

19   our motion.

20          THE COURT:  Thank you, Mr. Molina.

21          I would ask that Mr. Rutsky explain, because I see

22   some refinement of that in the proposed Amended Order.  So

23   will you explain what's contemplated now?

24          MR. RUTSKY:  Thank you, Your Honor.  Scott Rutsky for

25   the Oversight Board.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 104 of 193

103

1          So on the issue of service, I think we tried to

2   simplify the Order.  I think in the original version, we had a

3   definition of standard parties that inadvertently included

4   every party that filed a Notice of Appearance.  I think the

5   definition has been much simplified to include really AAFAF,

6   the Oversight Board, any statutory committees appointed in the

7   case, possibly the U.S. Trustee.

8          THE COURT:  And me.

9          MR. RUTSKY:  And the Court of course.

10          Those are the parties that would be required to be

11   provided with non-ECF service, unless they elected to do it.

12   So we think we've simplified it.

13          I'm not unsympathetic to the issue raised, and unless

14   I am mistaken, I believe that parties could call Prime Clerk

15   with their motion and ask it to be served on the list and do

16   it through that process rather than burdening them.  I'm

17   asking that as a question.

18          THE COURT:  Is the Prime Clerk representative still

19   here?

20          MR. SCHEPPER:  Yes.

21          THE COURT:  Can you -- actually, if you speak loudly

22   from there, I can repeat it, and you can tell me if I have it

23   right.

24          MR. SCHEPPER:  Okay.

25          THE COURT:  So would you, Mr. Rutsky, ask your

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 105 of 193

104

1   question again?

2          MR. RUTSKY:  So my question is, in this case, if

3   outside parties would like to serve a motion, is it possible

4   that they could, you know, reach out to you to serve that

5   motion in accordance with the typical rules?

6          MR. SCHEPPER:  As long as -- as long as the people

7   who give us our instructions, the Board is okay with that, we

8   can do that.  And we'll bill those people directly as opposed

9   to billing the state.  But yes, we can do that for our

10  people.

11         THE COURT:  So the Prime Clerk representative

12  indicated that as long as the Oversight Board as the

13  instructing entity permits and directs Prime Clerk to serve

14  motions for other movants, Prime Clerk will do that and bill

15  that service expense to the movant.  Is that what you said?

16         MR. SCHEPPER:  That's exactly right.  Correct.

17         THE COURT:  Now, if a party has filed a Notice of

18  Appearance, they're on ECF, and so the movant files the motion

19  on ECF, are you -- does this procedure require the movant to

20  go outside of that ECF universe to serve the entire mailing

21  list as maintained by Prime Clerk?

22         MR. RUTSKY:  Yes, to the extent that there was a

23  party in the master service list that was not someone that

24  filed a Notice of Appearance, that's possible.  I also think

25  it's -- and this is not my strong suit, Your Honor.  I also

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 106 of 193

105

 1    think it's possible for people to file a Notice of Appearance,

 2    but not every ECF down step comes through.  There's a list of

 3    parties that do get served I believe, and a list of parties

 4    that don't.

 5            I think we're talking about a very small universe, by

 6    the way, of parties that under these procedures do not get ECF

 7    notice or e-mail service.  We certainty on behalf of the

 8    Oversight Board, I can't speak for AAFAF, would be willing to

 9    accept e-mail service for any papers given to us.

10            You know, the only concern I have with all of that is

11    we've all experienced circumstances where due to the size of

12    files, we just don't get them.  And that's the concern, I

13    think why it's built in this way.  So if it was filed with the

14    Court, we would get ECF notice of at least the filing.  Others

15    may not.

16            THE COURT:  So what I'm going to ask you to do in

17    response to Mr. Molina's concern is refine this procedure so

18    as to -- you will be able to rely to the maximum extent

19    possible on ECF filing.  And I am not completely familiar with

20    all the 2002 requirements and everything else and the extent

21    to which they would apply here.  But what I want to see is the

22    situation which -- you know, where people are truly interested

23    in knowing everything that's going on, they have an incentive

24    and notice that they should file a Notice of Appearance.  That

25    will get them an ECF balance that to the extent the motion is

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 107 of 193

106

1   known to be one that would effect some person or constituency

2   that is not in the ECF universe, that there is an obligation

3   to ensure service by the most efficient way and timely on that

4   party.  And that the -- literally the standing required group

5   of paper notice people is that very tight group:  The Court,

6   the Oversight Board, the official committees.

7            And so will you work on refining that in the revision

8   of the Order, and also reach out to Mr. Molina and make sure

9   that he understands?

10            MR. RUTSKY:  We will do that, Your Honor.

11            THE COURT:  Thank you.

12            Anybody else?

13            MR. SOSLAND:  Your Honor, Martin Sosland of Butler

14  Snow on behalf of Financial Guaranty Assurance Corporation,

15  FGAC.  We filed an objection, which is docket 104, and

16  proposed three specific edits to the Case Management Order.

17  The third, to original paragraph 3(j), has been adopted by the

18  Board and is resolved.  The first two edits are exactly the

19  point argued by Mr. Brilliant and Ms. Goldstein regarding the

20  overbreadth of the carve out of the debtors from the Omnibus

21  Procedures Order.

22            I won't reargue it now.  I would ask you to consider

23  the two specific and brief edits that are included in our

24  objection at docket 104.

25            THE COURT:  Would you just -- if you can remind me of

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 108 of 193

107

1  what they are right now?

2  MR. SOSLAND:  They are in III, paragraph B.  We

3  proposed deleting "and any other pleadings filed by the

4  debtors" from the list of admittedly major motions that the

5  debtors proposed carving out of the omnibus hearing schedule.

6  And in C, which was a forced default omnibus hearing dates for

7  pleadings that are filed by any party, there was a provision

8  that starts "if a document is filed by a party other than the

9  debtors," and we suggested deleting "other than the debtors."

10  THE COURT:  Thank you.

11  Was there anyone else who wanted to be heard?

12  (No response.)

13  THE COURT:  Okay.  So Mr. Rutsky, if you would

14  respond?

15  MR. RUTSKY:  Thank you, Your Honor.  And I'm hopeful

16  from the earlier discussion, the points I just heard

17  Mr. Sosland raise I believe were similar to the points raised

18  by Mr. Brilliant or others.  It's the same sort of issue.

19  Let me start off by saying that none of this was done

20  in the context of it's a gotcha, you know, we have a gotcha

21  here, we're trying to do something untowardly.  We are

22  concerned about the things we don't know about, not just in

23  terms of actions that may be brought against us, but we have

24  to work with the Commonwealth.  We are not the government.  We

25  are the Oversight Board.  We are the representative of the

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 109 of 193

108

1    debtors.  And there are issues and matters that may come up

2    that may simply require us to file a pleading or a motion that

3    don't fall within an omnibus hearing date, that we couldn't

4    reasonably anticipate.

5         So we were fine.  I thought we had -- so we were

6    looking for flexibility, Your Honor, for the debtors, not as a

7    gotcha, but those types of issues.  We don't plan on filing

8    things outside of omnibus dates.  We would certainly, if it

9    effects a party, make a call and see if we could schedule it.

10   And we would have to obviously come to Your Honor in any event

11   to schedule such a hearing.

12        So I don't anticipate this is going to be a big

13   process here, but I think the debtor should be afforded some

14   additional flexibility, since again, we do not control the

15   government.  As Mr. Bienenstock talked about earlier, some

16   issues arise, and it may not fit perfectly in the schedule,

17   but we'll endeavor to maintain the omnibus hearing dates to

18   the extent we can.

19        Obviously we will still have the ability to bring an

20   emergency motion or urgent motion, whatever the appropriate

21   phrase is, if that is the case.  And certainly we don't expect

22   to change that outcome.  So we would request on those issues,

23   Your Honor, and those representations, the added flexibility.

24        On the Lift Stay Motion, I think we would agree with

25   the procedures discussed today, and we will endeavor to draft

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 110 of 193

109

1  -- redraft those provisions to accommodate Your Honor's

2  suggestions, which I think are very helpful here.

3      The last issue, which again is not intended to be a

4  gotcha, relates to the adversary proceedings. All we were

5  suggesting, Your Honor, is there be a 45-day period for a

6  status conference. It doesn't prevent anybody from coming in

7  and saying, Judge, we have an adversary proceeding. We're

8  going to move by TRO. We need an urgent motion for relief.

9  None of that is prevented.

10      All we're suggesting, and I think the thought process

11  was, someone files an adversary proceeding. There's typically

12  a 30-day answer period. We would say move for a status

13  conference, you know, after that point. So we pick a date.

14  Obviously we didn't have visibility of the omnibus dates Your

15  Honor would suggest.

16      Again, this is not something done adversarily. Some

17  may have urgent relief requests. They will be on track if

18  that request is granted. If they're not, then we ought to

19  keep some semblance of order here.

20      Just to give Your Honor an order of magnitude, I

21  think prior to the commencement of the Commonwealth's case,

22  there were some 30 odd lawsuits filed in different courts,

23  many of which will be removed here. All this is trying to do,

24  and all the Case Management Order is trying to do is to bring

25  some order to this.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 111 of 193

110

1          It's not trying to impede substantive rights if

2     parties come and say to Your Honor, we need a quicker status

3     conference.  We need urgent relief.  So that was the thought

4     process around the request on that issue, Your Honor.

5          I think those were the only issues besides the notice

6     issues.  I think those are the three themes.

7          THE COURT:  Thank you.

8          MR. RUTSKY:  Thank you.

9          THE COURT:  And so I do thank you all for your

10    submissions and your comments today.  I will confirm the

11    direction that the Lift Stay provision be modified as we had

12    discussed.

13          As to the issue which I'm generally calling

14    asymmetry, the provisions to allow the debtors to initiate

15    scheduling in a way more flexible than other parties, I am

16    overruling the objection based on the Oversight Board's

17    undertaking here not to abuse the privilege.  And also based

18    on the reality that by statute, the Oversight Board does act

19    for the debtor, has sort of unusual procedural prominence in

20    these proceedings, and does have to answer to a number of

21    other constituencies.

22          As to the Rule 16 conferences, I read that as a Rule

23    16 conference provision.  And so the -- an urgent motion that

24    says, you know, we're just dying to start discovery, so for

25    this reason we need a Rule 16 conference earlier than that,

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 112 of 193

111

1   and the issue has been joined, and everything's good to go, is

2   something that I would consider.  But I would ask that those

3   requests be sparing, and for good reason.  And it doesn't

4   preclude applications for Orders to Show Cause and other

5   urgent relief.

6          So with the 362 alteration, and the others that we

7   have discussed, the Motion to Establish the Case Management

8   Plan is granted.  And I will expect a settled, revised Order,

9   and that there be consultation in the preparation of that

10   revised Order in an effort to obviate the need for another

11   round of very heavy objections to the proposed Form of

12   Order.

13          MR. RUTSKY:  Thank you, Your Honor.

14          Just one quick point.

15          THE COURT:  Yes.

16          MR. RUTSKY:  Not on this.  I would be remiss if I

17   didn't comment on some comments made by Mr. Brilliant about

18   his clients' rights and their liens and what they are and what

19   they aren't.  I don't think that was at all, our silence,

20   intended to be any kind of admission.  Obviously everybody's

21   rights should be reserved, but I wanted to state that for the

22   record.

23          THE COURT:  I assumed had I called on you, you would

24   have given me a different position.

25          All right.  I apologize for having gone into

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 113 of 193

112

1    everybody's lunch hour a little bit.  So we now have a lunch,

2    45 minutes, and we will resume at one o'clock.  And I thank

3    you all.

4              (At 12:12 PM, recess taken.)

5              (At 1:04 PM, proceedings reconvened.)

6              THE COURT:  So the next item on our agenda is the NY

7    Mellon adversary and request for an Order to Show Cause.

8              Now, before you dive into it, I'll say that I saw

9    these documents last night.  I briefly reviewed them.  My

10   intention today is certainly not to ask for argument on them,

11   but to do two things.  One is that to the extent they are all

12   still in contention, even after some of what we've heard today

13   about the Commonwealth's intention with respect to the COFINA

14   funds, what I would like is for the parties concerned to

15   consult on a joint proposal for a briefing and hearing

16   schedule with a couple of dates, and provide that to me by

17   informative motion tomorrow or Friday.  And in the meantime,

18   as you know, I still am kind of setting up my technological

19   arrangements to facilitate the next event that is not a full

20   blown court hearing here in Puerto Rico.

21             So that will be my request.  But I will also ask that

22   you all consider whether in light of the comments that we've

23   heard today from the Oversight Board and the Commonwealth with

24   respect to immediate COFINA issues, there might be some ground

25   for stipulating to the interpleader deposit or some timetable

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 114 of 193

113

1  that is not quite as emergent if everyone is comfortable with

2  it, that sort of stand still.

3       And so would you please introduce yourself?  I'm

4  sorry for taking up so much air.

5       MR. GWYNNE:  Good afternoon, Your Honor.  Kurt Gwynne

6  for Reed Smith, along with Lee Sepulvado Ramos with Sepulvado

7  & Maldonado, and Eric Schaffer and Luke Sizemore of Reed

8  Smith.  We are counsel to Bank of New York Mellon as Trustee,

9  Bank of New York Mellon as Trustee under the resolution, and

10 with respect to the COFINA bonds in the approximate amount of

11 17.3 billion --

12      THE COURT:  I'm sorry.  I have to beg your indulgence

13 for one second.  I thought I was completely signed into my

14 computer here, and it turns out I'm not.  So if you will just

15 give me a minute to log in, I will then be able to give you my

16 full attention.  And I apologize for that.  Technology is a

17 wonderful thing until it stops you dead.

18      All right.  Thank you.

19      MR. GWYNNE:  There are two types of COFINA bonds.

20 There are capital appreciation bonds, or what we refer to as

21 CABs, for which interest is capitalized.  It's not paid in

22 cash.  It's added to the principal, and paid at maturity.  The

23 maturity of the CABs are between 2047 and 2054.  In addition,

24 there are cash interest bonds for which interest is paid in

25 cash when due.

Case:17-03283-LTS Doc#:7217-1 Filed:06/04/19 Entered:06/04/19 16:13:49 Desc:
Exhibit Exhibit A - Transcripts Page 115 of 193

114

1        With respect to both the CABs and the cash interest

2   bonds, there are both senior and secured -- I'm sorry, senior

3   and subordinated bonds.  So all are secured, but we have

4   senior and subordinated bonds within both the CABs and the

5   cash interest bonds.

6        There are different lien priorities.  There are also

7   different payment priorities at least at certain points

8   depending on what happens with the debtor.

9        Various beneficial holders of the bonds, Ambac, which

10  insures certain of the COFINA bonds, and COFINA have taken

11  conflicting positions regarding the existence and the effect

12  of a lower case default that is curable within 30 days under

13  the resolution, or the existence and effect of an immediate

14  incurable event of default.

15       Now, the senior CABs, the beneficial interest holders

16  for the senior CABs allege that the approval of the fiscal

17  plan and/or the enactment of the fiscal plan compliance law

18  gave rise to an immediate incurable event of default.  As a

19  result of that alleged event of default, the senior CABs

20  holders allege that the COFINA bonds should be accelerated and

21  that Bank of New York Mellon should cease payments to either

22  all COFINA bondholders or just to certain COFINA bondholders,

23  namely the junior bondholders.  The senior CAB holders are not

24  entitled, consistent with different groups, of what they've

25  demanded of the Trustee.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 116 of 193

115

 1              The beneficial holders of the junior CABs allege that

 2     there is or was a lower case d default, but not an event of

 3     default.   And that it is a curable default.   And the Bank of

 4     New York Mellon cannot accelerate and cannot cease payments to

 5     the junior bondholders.

 6              The dispute regarding the effect of the occurrence of

 7     an event of default and the effect that has on the right of

 8     beneficial holders of junior COFINA bonds to receive payments

 9     is a disputed issue.   And I understand from Mr. Mayer that

10     the -- his group believed that the indentured trustee was

11     taking a position consistent with Mr. Kirpalani's group that

12     upon the occurrence of an event of default, the junior

13     bondholders have no right to receive payments, as opposed to

14     saying that's something that happens after an acceleration for

15     example.   And we just want the record to be clear that the

16     indentured trustee didn't mean or intend to take a position on

17     that issue with respect to the bondholder groups.

18              COFINA takes a different position than both the

19     senior CABs and the junior CABs.   COFINA says that no default

20     has occurred, period, not even a lower case d default.   That

21     there's no right to accelerate the bonds.   That the automatic

22     stay precludes the acceleration of the bonds.   And that cash

23     in Bank of New York Mellon's possession is in fact COFINA's

24     property, and therefore Bank of New York Mellon cannot make

25     payments without COFINA's consent.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 117 of 193

116

1          Now, we do understand, and this partially answers

2    Your Honor's question about scheduling, that COFINA has agreed

3    the June 16 payment could be made in the ordinary course of

4    business.  The June 1st, 2017, sorry, payment could be made in

5    the ordinary course of business.  However, the bondholders

6    still have disputes as to who is entitled to get that payment,

7    and that's why the scheduling between now and June 1st is

8    important for resolution at least with respect to the June

9    payment.

10         Now, Bank of New York Mellon filed the interpleader

11   and declaratory judgment action, and we propose in the Order

12   of Show Cause to have a hearing with respect to the right to

13   the payment, the June 1 payment.  And that we needed that

14   hearing before June 1 so we knew how to make that payment.

15   It's possible that the funds could either be held by Bank of

16   New York Mellon until Your Honor rules, with the agreement of

17   all the bondholder groups, or an Order of Your Honor.  It's

18   also possible that payments could be made to the bondholder

19   groups consistent with either Your Honor's ruling or an

20   agreement of the bondholders between now and June 1st.  But

21   what Bank of New York Mellon is looking for is not to be in

22   the middle.

23         THE COURT:  I understand.

24         MR. GWYNNE:  Now, Bank of New York Mellon has been

25   sued prior to the filing of the bankruptcy case by both

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 118 of 193

117

 1   Whitebox, which is a beneficial owner of approximately five

 2   percent of COFINA bonds, primarily secured -- senior COFINA

 3   bonds; and also by Ambac, an insurer of certain COFINA bonds.

 4   Those actions are predicated upon the allegation that there

 5   was an event of default, and that Bank of New York Mellon did

 6   not declare an event of default and did not accelerate the

 7   bonds.

 8           Neither Whitebox nor Ambac provided many of the

 9   things required by the indenture, such as direction by

10   registered owner in the case of Whitebox, or in both their

11   cases any indemnification, let alone satisfactory

12   indemnification.  But those issues are not before Your Honor

13   today, and we're not asking in the Scheduling Order either,

14   we're not asking those to be decided today.  Those are things

15   that will be decided in the ordinary case in the adversary

16   proceeding with respect to the declaratory relief.

17           We only ask Your Honor give us a hearing before June

18   1, so we can deal with that payment or maybe set up a

19   procedure to deal with the June 1 payment, the July 1 payment,

20   the August 1 payment until necessary to resolve the dispute.

21   I believe that counsel for the various groups that have

22   interests or alleged interests in the June 1 payment are in

23   agreement with scheduling a hearing before June 1.  And that

24   would be Mr. Mayer, on behalf of the mutual funds;

25   Mr. Kirpalani on behalf of the Senior COFINA Coalition;

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 119 of 193

118

 1   Ambac's counsel, Mr. Dunne; Whitebox's counsel, Mr. Fliman,

 2   and COFINA's counsel, Ms. Uhland.

 3          And if I misrepresent in any way, I ask anyone to let

 4   the Court know.  But assuming that everyone is in agreement,

 5   Your Honor, perhaps we could just resolve the scheduling today

 6   while we're all here.

 7          THE COURT:  The reason that I hesitate to do that is

 8   that I need to see what's happening back in New York, both

 9   technologically and court calendar wise.  And so I understand

10   that at the latest, you would be wanting to have this hearing

11   the day after the Memorial Day weekend let's say?

12          MR. GWYNNE:  (Nodding head up and down.)

13          THE COURT:  And I will need briefing from you all

14   completed before the Memorial Day weekend.  And so what I

15   would ask is two things, just again I think I followed

16   everything that you've said here, but if there is a scenario

17   in which you all would be prepared to stipulate to the

18   interpleader deposit and the funds being held by Bank of New

19   York Mellon, pending a lengthier and somewhat more targeted

20   briefing process that goes to the issues that you all consider

21   fundamental.  Surprise.  Surprise.  That would be my first

22   choice.

23          Other than having to cue up this interim round of

24   briefing and technology for a hearing that is technically held

25   here but not necessarily attended by everybody here physically

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 120 of 193

119

```
 1   at the -- right after the Memorial Day weekend, if it's not
 2   possible for you all to do that, you let me know.  But that's
 3   why I'd like you to talk and file what would be a letter in
 4   the Southern District of New York, but is an informative
 5   motion copied to my e-mail address as soon as possible with
 6   your proposal for a schedule.  And I will work as promptly on
 7   my end to work out whatever I need to work out.
 8            MR. GWYNNE:   Okay.  Thank you, Your Honor.  That's
 9   all I have unless Your Honor has any questions.
10            THE COURT:  I appreciate that.  No, I don't.  Thank
11   you.
12            Mr. Mayer, did you wish to say something?
13            MR. MAYER:  Yes, Your Honor.  Just briefly, we'll
14   work on a briefing schedule.  The problem with let's just keep
15   everything the way it is and provide more time is these bonds
16   are held by thousands of people, and either there's a default
17   on June 1 or there isn't.  And we just can't get to them.
18   There are 2.3 billion dollars of these bonds that are held on
19   island.
20            THE COURT:  Yes.
21            MR. MAYER:  So if you assume the hundred thousand
22   dollar amount per bondholder, that's probably really high, but
23   that's 23,000 people, so --
24            THE COURT:  Yes.  Thank you.  It is always important
25   to see everything in context to reality.
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 121 of 193

120

```
 1             Mr. Dunne.

 2             MR. DUNNE:  Your Honor, I will be brief.  For the

 3   record, Dennis Dunne of Milbank, Tweed, Hadley & McCloy on

 4   behalf of Ambac.

 5             I think that the Order to Show Cause that we received

 6   kind of puts a torchlight on the conflicts that Bank of New

 7   York has right now that are kind of debilitating.  And we

 8   have, as Mr. Gwynne mentioned, a pending suit against Bank of

 9   New York.  Milbank's not representing them on that.  We have

10   co-counsel, Curtis Mallet, who is representing them, and

11   they're present in the court today.

12             I'm not going to get into those issues, because I

13   don't think that's before your court.  But I'd like to just

14   say where we come out in the interim.  We are fine with teeing

15   up this issue and briefing it.  If Your Honor decides that it

16   needs to be expedited before June 1, fine.  If you believe you

17   need to take more time because of the nature of the issues and

18   the ramifications you have in the case, we are fine putting

19   funding into escrow on June 1 as well.  I think that's Your

20   Honor's choice.

21             What I think we need to do with respect to some of

22   the other matters that were touched upon in the Order to Show

23   Cause and the proposed Form of Order is preserve the status

24   quo.  I can't say today, and I know we would likely be opposed

25   staying or otherwise dealing with the pending Bank of New York
```

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 122 of 193

121

1    litigation that Ambac and Whitebox have brought.  That will

2    have to be dealt with some other way or putting in any kind of

3    exculpation language.  Everybody's rights should be preserved.

4    But whatever's going on to date, whether people think there's

5    liability or defenses to that, that can't be dealt with on a

6    moment's notice in front of Your Honor today.

7           And I do echo some of the comments that it's time to

8    replace Bank of New York with a trustee for the seniors and

9    for the subs.

10          THE COURT:  Thank you.

11          MR. KIRPALANI:  Thank you, Your Honor.  For the

12   record, Susheel Kirpalani, from Quinn Emanuel on behalf of the

13   COFINA Seniors Bondholders Coalition.  And I'll be brief as

14   well.

15          We took your words to heart, and we'll work hard with

16   coming up with a schedule that makes sense not just for the

17   Court but for a lot of innocent parties that are out there.

18   And we are cognizant of that, and have been from the

19   beginning.

20          The one thing I wanted to mention is it seems to me

21   that there's 14 days between today and June 1st.  This is a

22   very significant issue.  I don't -- I'm not being critical of

23   the Bank of New York, but there's insufficient time I think

24   for parties to have the notice that I'm sure the Court would

25   like them to have, and that's why you're encouraging us to

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 123 of 193

122

1    work something out.

2          I think everyone in the courtroom has already agreed

3    that senior bond cash pay interest should happen, regardless

4    of any resolution of this issue.  The only issue is whether

5    subordinate bondholders should also get cash pay interest on

6    June 1, or if that should be escrowed or everything should go

7    just to seniors, because there's been defaults.

8          Before the lunch break, Counsel I think for AAFAF was

9    saying or counsel for the Board was saying COFINA has an

10   independent board of directors.  We talked a bit about that

11   before the lunch break, and yet we're hearing right now that

12   that independent board -- well, actually Mr. Gwynne didn't say

13   who is it from COFINA that says they could claim an interest

14   in the money that's at the Bank of New York which is creditor

15   cash.  I have a good feeling it's not the COFINA board.  I

16   have a very, very strong feeling that Mr. Rapisardi's client,

17   which is AAFAF, which again is the torchlight on the conflict,

18   there are very grabby hands on this cash.

19          And it's a lot of cash.  It's over 400 million

20   dollars at the Bank of New York.  But as of June 1st, Your

21   Honor, we're talking about I think it's six million dollars of

22   senior cash pay interest, and five and a half million dollars

23   of subordinate cash pay interest.  I would like to propose

24   that everyone agrees there should be no interruption to senior

25   cash pay interest.  They're also widely held on the island,

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 124 of 193

123

1      and on the mainland, and have equal rights wherever they live.

2             And the subordinate cash pay interest, that's really

3      the dispute.  And if we could stipulate to put that into an

4      escrow until the Court has sufficient time to hear the

5      briefing, it seems the most practical solution.  Since no one

6      can dispute that senior bond payments get made no matter what

7      other than this new concept that COFINA somehow gets to take

8      the money away from the creditors, even though COFINA itself

9      has nothing other than an empty securitization that's a

10     conduit for creditors to get to.

11            THE COURT:  Well, I urge you to be that passionate

12     and articulate in the consultations among counsel, and if it

13     works and everyone agrees, that's terrific.  Otherwise you'll

14     be making that argument again before me just after Memorial

15     Day.

16            MR. KIRPALANI:  Fair enough.  Thank you, Your Honor.

17            THE COURT:  Thank you.

18            MS. UHLAND:  Your Honor, Suzanne Uhland of O'Melveny

19     on behalf of AAFAF.

20            THE COURT:  Good afternoon.

21            MS. UHLAND:  I'd like to just clarify some of the

22     points with respect to AAFAF's position.  And AAFAF, as its

23     representative, under Puerto Rico statutes, it's a

24     representative of COFINA with respect to restructuring

25     matters.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 125 of 193

124

1          As the counsel for the Bank of New York indicated,

2    COFINA has taken the position, and it's AAFAF on behalf of

3    COFINA has taken the position that certain amounts that are in

4    pledged bank accounts constitute property of COFINA.  We're

5    trying to clarify that the debtor, COFINA -- that the property

6    is in fact subject to a security interest, and it remains

7    property of COFINA.  And it's simply pledged to the

8    bondholders.

9          That is the point we made in communication, in

10   correspondence to the Bank of New York.  And they included

11   that position in their filings with the Court.  So it's very

12   clear.  And we do not appreciate comments about being over

13   reaching or grabby on behalf of the Commonwealth.  We just

14   want to be very clear when we're representing COFINA, we're

15   talking about COFINA's rights to the property in its bank

16   accounts and its property.

17          THE COURT:  Thank you.

18          MR. STANCIL:  May it please the Court, Your Honor.

19   My name's Mark Stancil from Robin Russell.  I'm co-counsel

20   with Mr. Rosenberg on behalf the GO Ad Hoc Group.  I actually

21   think I can, and I'm hoping to, narrow some of the concern

22   here.

23          I understand this motion to concern intraCOFINA

24   issues.  Meaning disputes between the trustee, the subs, and

25   the seniors.  The GOs, as Mr. Rosenberg explained, the GOs and

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 126 of 193

125

1    the Commonwealth have a dispute as to COFINA's basic validity.

2    And I think it's important for purposes of trying to address

3    this intraCOFINA issue that it be clear that nothing that

4    would be decided in this apparently expedited context would

5    touch on the basic validity of COFINA, because I think this

6    thing will just multiply and multiply if in the course of

7    briefing, that -- what their rights are if COFINA is valid, if

8    there are things that then we ask COFINA on the part of GO

9    holders, either come in and clarify that -- they're making

10   certain assumptions or statements about the overall validity

11   of COFINA that we would want to challenge.

12            So I think we would just like to have a chance to

13   work with counsel in proposing something to make sure that if

14   this is truly an intraCOFINA dispute, it stays in that lane.

15   And we would in due course -- I think we're going to have to

16   deal with a larger COFINA validity question, but if we're

17   trying to do this by June 1, it's going to be a nightmare.

18            THE COURT:  That would be a word for it.

19            MR. STANCIL:  Yes.  Thank you.

20            THE COURT:  Thank you.  And I do urge you to discuss,

21   to try to make the process focus on the issues that have to be

22   addressed in a short time frame.  Thank you.

23            MR. FLIMAN:  Good afternoon, Your Honor.  Daniel

24   Fliman with Kasowitz Benson Torres on behalf of Whitebox.

25            Your Honor, I just have two points.  The first is I

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 127 of 193

126

 1   agree with Mr. Dunne.  I think there needs to be a bifurcation

 2   on some of the things that are going to go forward.  We agree

 3   to the idea of the interpleader.  We understand the urgency on

 4   that.

 5          Bank of New York, however, also asked to stay our

 6   litigation.  We are a plaintiff, brought an action against

 7   Bank of New York in state court in New York.  That action is

 8   proceeding.  The request to stay litigation, and I'm not going

 9   to argue the merits right now, we think that there is no merit

10   to that request, but that is certainly not an urgent thing.

11   That needs to be briefed and thought out carefully and brought

12   to Your Honor in due course as opposed to some kind of

13   unnecessarily expedited fashion.

14          The other point I want to make is to Mr. Kirpalani's

15   point.  There is not consensus about whether the senior coupon

16   bondholders should get paid with the money held at the Bank of

17   New York, and he knows that.  Whitebox disagrees with that

18   perspective.  We believe no payment should go out the door,

19   which is why we're supporting interpleader.

20          And the main reason for that, Your Honor, very

21   briefly, is what gave rise to our lawsuit against Bank of New

22   York, which is that it is inherently conflicted by

23   representing essentially four different types of bonds with

24   very, very -- very, very conflicting positions, different

25   treatment, different priorities.  And until and unless that

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 128 of 193

127

1   conflict is addressed, the right outcome is for Bank of New

2   York to hold onto the money and only make a distribution once

3   the conflicts are resolved.

4           THE COURT:  Thank you.

5           MR. FLIMAN:  Thank you, Your Honor.

6           MR. GWYNNE:  Kurt Gwynne, for the record, on behalf

7   of Bank of New York Mellon.  If I could just respond briefly?

8           THE COURT:  Very briefly, because it's 1:30.

9           MR. GWYNNE:  Your Honor, with respect to the

10  litigation against Bank of New York Mellon, that is not before

11  you today, but that litigation is based upon a premise of an

12  event of default, which many parties in this courtroom say it

13  doesn't happen.  It doesn't make sense to litigate that in

14  state court with a five percent beneficial interest holder or

15  Ambac as opposed to in this court with all participants

16  participating.

17          With respect to the general obligations bondholders'

18  interest, Your Honor, I don't think we're asking you to bless

19  the COFINA structure by allowing the June payment or having it

20  escrowed, whatever it is.  But anyone who asserts any interest

21  in those funds when the money goes out, obviously the bank has

22  to be protected from that.  And whether we have a stipulation

23  or Order from Your Honor, it would have to be -- I mean a

24  separate Order, we think we need Your Honor's signature on

25  something for the bank's protection.  Even if it's a

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 129 of 193

128

1   stipulation, we would also have an Order associated with it.

2          We're happy to talk to the parties and agree upon a

3   schedule, but as Your Honor can see, there are many disparate

4   interests.  Thank you.

5          THE COURT:  Yes.  Thank you.

6          And I think everyone has heard everyone else, and I'm

7   not presuming that anyone agrees with anyone else, but this is

8   a good basis for the next step in the process.

9          All right.  So AAFAF filed an Urgent Motion for an

10  Interim Order and Final Hearing concerning the continuation of

11  utilities and adequate protection.  And my intention is to

12  set -- to take it under advisement, quite frankly; require

13  opposition by two o'clock Friday, reply papers by two o'clock

14  Sunday.

15         I understand that May 23rd is a crucial date for you,

16  that being 20 days out from the Commonwealth filing.  So I

17  just wanted to let you know before you spoke that that's how

18  far I've gotten.

19         Ms. Uhland, now take me further.

20         MS. UHLAND:  We appreciate that, Your Honor.  I do

21  believe we tried to address maybe some of the calendar issues.

22  And taking a hard read at 366(b) which is applicable here, not

23  (c), which requires that the debtor furnish the adequate

24  assurance within 20 days, I think that could be read, since in

25  our motion we stated we would continue to pay in the ordinary

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 130 of 193

129

1    course and agreed to an administrative expense, to the extent

2    we don't, I think that could be read to say the motion itself

3    complied with the 20-day period.  And the Court could then

4    schedule the motion on regular notice, and the notice

5    procedure would then -- the Order would simply provide for

6    parties seeking to modify the adequate protection.

7         THE COURT:  All right.  And so how would that just

8    work mechanically?  Would you revise your Proposed Order and,

9    you know, make sure that no one is on the immediate time frame

10   taking the position that what has been done so far is

11   insufficient for the adequate protection offer?  Do we need to

12   have briefing on the other question of whether that is

13   sufficient for 20 days?

14        I'd just be grateful if you would play that out for a

15   me a bit more.

16        MS. UHLAND:  Really what the motion does is it

17   addresses the second sentence of (b), which says on request of

18   a party, a party can bring a motion to seek additional

19   adequate assurance.  And what our motion does is really sort

20   of a procedural addressing of the second sentence of (b).

21        THE COURT:  Yes.

22        MS. UHLAND:  So I would take the position that until

23   an Order is entered, the parties can bring their motions for

24   adequate assurance as they wish.  And once the Order is

25   entered, then that Order would apply, would channel those in

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 131 of 193

130

1    accordance with those procedures.  So I would take the

2    position no party would be prejudiced in the interim, and the

3    Court can enter the Order on regular notice.

4         THE COURT:  But honestly, the trouble is I haven't

5    memorized precisely what your Order says, and so I -- my

6    recollection of your Proposed Order was that it was seeking a

7    determination that the offer that had been made constituted --

8         MS. UHLAND:  Right.

9         THE COURT:  -- adequate protection, and then setting

10   a set of very specific requirements for any motion challenging

11   the sufficiency of that adequate protection down the road.

12   And so in reading the Order that you proposed to me, it seemed

13   that the -- that there was potential for opposition, both of

14   the proposition that what has been proposed now is adequate

15   protection, and for opposition to entry of the set of

16   requirements.

17        And so I am not certain that I fully understand the

18   distinction, whether I read it right in the first place, and

19   if I did, the distinction between that and what you're

20   proposing now, and how the -- your read over lunch simplifies

21   the process or obviates the need for hearing potential

22   objections to what you had proposed.

23        MS. UHLAND:  Our position would be that the parties

24   would still be able to challenge both, whether what we

25   furnished is adequate and whether the procedures are

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 132 of 193

131

1    appropriate, but that the Order would not need to be entered

2    within 20 days.  This Court need not determine that it's

3    adequate within 20 days.  We only need to --

4             THE COURT:  Have that motion in place?

5             MS. UHLAND:  Or make the offer, furnish.

6             THE COURT:  All right.

7             MS. UHLAND:  So we are trying to address the

8    calendaring issues.  All of that said, if the Court wants to

9    keep it with the quick briefing schedule that you proposed

10   initially, that's fine, but we were trying to take some of the

11   pressure off by putting it on regular notice.

12            THE COURT:  I am always happy to give up Sunday

13   briefing, or the reading of Sunday briefs.

14            Okay.  So this brings me back to how we proceed.

15            MS. UHLAND:  We would re-notice our motion.

16            THE COURT:  Okay.

17            MS. UHLAND:  We would re-notice our motion for

18   regular notice, and request findings consistent with ability

19   to challenge the adequacy of what we've furnished, and

20   challenge the procedure we propose.

21            THE COURT:  All right.  So your re-noticing the

22   motion then essentially withdraws the urgent motion?

23            MS. UHLAND:  Yes.

24            THE COURT:  So I don't have to sign any Order,

25   because you're going to re-notice the motion and take the

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 133 of 193

132

1  position that the current payments, instead of the offer that

2  -- of administrative priority satisfies the 20-day requirement

3  for adequate protection.  And that any litigation of the other

4  procedures would occur on the ordinary motion schedule?

5          MS. UHLAND:  Yes.

6          THE COURT:  Thank you.  I'm sorry.  I didn't -- I

7  thought you were still asking me to sign an Order, and that's

8  why I was a little bit confused.  So thank you.

9          MS. UHLAND:  All right.  You're welcome, Your Honor.

10          THE COURT:  All right.  And so we have 20 minutes.

11  And so there are parties that asked to be heard, one of which

12  being the Ad Hoc Retiree Committee.  The U.S. Trustee's Office

13  indicated that it intends to put in oppositions and

14  perspective.  I don't want to hear any premature argument of

15  that motion.

16          So I'll tell you the order I have the request to

17  speak listed on my agenda here is Ad Hoc Retiree Committee, Ad

18  Hoc Committee of General Obligation Bondholders, CMA

19  Architects and Engineers, Mutual Fund Group, Assured Guaranty,

20  Peaje Investments, National Public Finance Guaranty

21  Corporation, and COFINA Senior Bondholders Coalition.

22          Obviously, unless everyone just shouts for one minute

23  and does a round robin, that's not all going to happen by two

24  o'clock.  So I'd ask that you self identify, limit yourselves

25  to three minutes, and try to -- self identify is people whose

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 134 of 193

133

1   points have otherwise not been made here that you think would

2   be useful for the whole group to hear live.  As I said, I

3   invite informative motions with longer discourses, statements.

4            So I see one person in the aisle and one person

5   getting up here.  So I'll take the gentleman in the aisle

6   first.  And at two o'clock we're going to call time.

7            Thank you.

8            MR. GORDON:  Thank you, Your Honor.  For the record,

9   my name is Robert Gordon of Clark Hill representing the Ad Hoc

10  Committee for the Protection of Accrued Retirement Benefits of

11  Puerto Rico's Public Employees and Retirees, also known as the

12  Ad Hoc Retiree Committee, also known as the Movimiento Pro

13  Pensionados.

14           Recognizing the time is short, I will try to be

15  succinct and speak quickly.  Thank you for the time, Your

16  Honor.

17           Our motion already discusses the Committee's broad

18  and fair representation of the retiree community, so I will

19  not dwell on that other than to reiterate that we comprise at

20  least 15 Puerto Rico based retiree organizations that

21  represent in the aggregate over 91 thousand retirees from all

22  sectors of the public sector, including police and teachers

23  and school luncheon employees of the central government and

24  municipalities.

25           I want to make clear that our filing of our motion

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 135 of 193

134

1   certainly was not intended to usurp any role accorded to the

2   U.S. Trustee's Office in appointing committees.  And we

3   understand and respect the U.S. Trustee's need to conduct its

4   analysis as referenced by Ms. Lecaroz.

5         However, on the other hand, I also want to emphasize

6   that Section 1102(a)(2) of the Bankruptcy Code which is

7   incorporated into PROMESA explicitly contemplates that parties

8   in interest may file requests for the appointment of

9   additional committees and that Section 1102(b)(1) of the

10  Bankruptcy Code explicitly contemplates that there can be

11  situations in which the true economic parties at interest, the

12  creditors have already fairly formed the pre-petition ad hoc

13  committee.  And that such committees, in such situations,

14  should be given proper consideration.

15        I submit that it goes to the fundamental right of

16  parties to representation of their choosing.  And our motion

17  was simply filed in that spirit, and under the letter of

18  Sections 1102(b)(2) and 1102(b)(1) of the Bankruptcy Code.

19        In any event, there certainly are a balancing of

20  interests involved in the appointment of such committees, and

21  we have reached out to the U.S. Trustee's Office and offered

22  our assistance in providing any additional information that

23  the office needs in order to evaluate our motion and to work

24  together collaboratively to resolve any issues.  And we hope

25  we can do so.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 136 of 193

135

 1          As of today, Your Honor, we have not had any dialogue

 2   with the U.S. Trustee's Office, but we hope we will be invited

 3   to have such in the future.  The only other sentiment I'd like

 4   to express if I may, Your Honor, because a simple reading of

 5   our motion would not alert anyone to this, is just I would

 6   like to highlight the conduct of the Ad Hoc Committee leading

 7   up to today.

 8          It's important to recognize the difficult position

 9   that the members of the committee have been put in when they

10   have been reading for the last two or three months about the

11   Title VI negotiations and the development of a fiscal plan and

12   the anticipation of cuts to pension benefits and health care

13   benefits and other retirement benefits, and their constituents

14   are not at the table.  They are the effected parties, and they

15   are not at the table.

16          And there is a temptation in that situation, as you

17   can imagine, to want to take to the press or take to the

18   courts or take to the streets and express frustration.  And to

19   their credit, with the advice of counsel, they have shown

20   tremendous restraint and have not done so when others have.

21   And they have done it in an effort to demonstrate that they

22   embrace the concept that in order to play a meaningful role in

23   this process, in order to be a legitimate player in this

24   process, they must embrace the concept that negotiation,

25   sitting down and having discussions, meaningful conversations

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 137 of 193

136

  1  with the other parties has to happen first.  They have done

  2  that, and I hope and I believe that they have earned that

  3  right to then participate in this process.

  4           And again, we look forward to speaking with the U.S.

  5  Trustee's Office to hopefully make that happen.

  6           THE COURT:  Thank you, Mr. Gordon.

  7           MR. GORDON:  Thank you, Your Honor.

  8           THE COURT:  Yes, sir.

  9           MR. MUDD:  Good afternoon, Your Honor.  John Mudd for

 10  CMA Architects & Engineering LLC.  The reason I asked to speak

 11  was mediation.  Your Order asked the Board to discuss

 12  mediation.  The only thing I have heard on mediation is

 13  mediation to bondholders.  Since my client is not a

 14  bondholder, we don't have anything to say.

 15           THE COURT:  Well, my question about mediation wanted

 16  to know the current status.  And my further thinking about an

 17  overall approach to mediation will be informed by everything

 18  that I'm hearing today.  And I'm sure that the Oversight

 19  Committee's approach will be informed as well.  So we will

 20  move forward.  And I thank you.

 21           MR. MUDD:  Thank you.

 22           MS. GOLDSTEIN:  Thank you, Your Honor.  I appreciate

 23  that there will be many other opportunities for National to

 24  articulate its views before this Court, so I will be much

 25  briefer than I originally intended.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 138 of 193

137

1              THE COURT:  Thank you.  And just for the record,

2     that's Ms. Goldstein.

3              MS. GOLDSTEIN:  Yes.  I just want to make the point

4     that these Title III cases are not the beginning of the

5     negotiations or discussions between creditors and the

6     Commonwealth and its instrumentalities.  National has been at

7     this for three years approximately.  And, you know, we have

8     accomplished with other creditors an agreement, for example,

9     with respect to PREPA.

10             And I want to make a point about reaching an

11    agreement on the PREPA deal, which I think is salient to

12    moving forward with respect to the Commonwealth.  An important

13    cornerstone of that organization was transparency with respect

14    to the financial information needed with creditors to agree to

15    and support that deal.

16             It's before the Oversight Board now for

17    certification.  We hope and expect that that will happen.  The

18    good faith negotiations and the transparency as to the

19    financial information that enabled a PREPA negotiation is

20    critical as we move forward here.

21             I appreciated the comments made on behalf of the

22    Oversight Board and AAFAF that they look forward to working

23    cooperatively with creditors.  We hope that is the case.

24    We're prepared to engage in discussions or mediation as the

25    case may be.  But we are concerned that we get the type of

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 139 of 193

138

1    financial diligence that will enable our client and other

2    creditors to make informed decisions with respect to any type

3    of consensual negotiation.

4             I mentioned that National is a long-term player with

5    respect to this island, shares an interest with the

6    Commonwealth in the long-term well-being of this island.  But

7    that includes financial stability, and that has to be based in

8    our view on consensual debt restructuring with creditors that

9    will enable future access to capital markets.  Indeed, that's

10   one of the objectives of PROMESA.

11            So in order to get there, we need a mutually

12   understandable financial database, one that the creditors

13   believe in, one where there is credibility.  And I think that

14   has to go forward.

15            THE COURT:  Now, has that been the subject of

16   specific discussions yet?

17            MS. GOLDSTEIN:  To date, Your Honor, with respect to

18   the Commonwealth discussions, the answer is no.  While, you

19   know, we have made many, many diligence requests, we have

20   gotten some responses from the financial advisor -- our

21   financial advisor has gotten some responses to questions from

22   the financial advisor to AAFAF.  But we have asked for a

23   number of additional things relating to the Commonwealth,

24   relating to the data underlying the fiscal plan, relating to

25   some of the elements in the fiscal plan, relating to health

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 140 of 193

139

 1    care.  I didn't bring up my list because frankly, Your Honor,

 2    I was trying not to --

 3            THE COURT:  Yes.  I appreciate that.

 4            MS. GOLDSTEIN:  Not to get granular on that.  But we

 5    have met with obstacles.  When we have requested certain

 6    things from the Oversight Board, for example, that we thought

 7    they agreed to give us, the answer was well, the Commonwealth

 8    hasn't agreed to that.

 9            Even very recently when we reiterated the request

10    that we believe the Commonwealth had agreed to, and with the

11    Oversight Board counsel being present, Commonwealth hasn't

12    agreed to it.  We had hoped that the Oversight Board in terms

13    of its responsibilities to get to financial stability would

14    also be the enforcer of transparency, and we think that it's

15    needed by all creditors.

16            I'm prepared to look forward, and as you asked what

17    has happened to date, we've been very disappointed with what's

18    happened thus far.  Offers have been made.  We haven't been

19    included.  I don't want to get through everything.  However, I

20    think that as we move forward, as I said, whether it be

21    through mediation or otherwise, we need to have the kind of

22    diligence that you see in any debt restructuring.

23            In many senses, while this is very different and has

24    many different elements, we're talking about a debt

25    restructuring.  There needs to be serious openness about

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 141 of 193

140

1    financial data.  The only financial statements we've seen thus

2    far are stale.  I mean frankly, as a condition of filing, we

3    should have at least seen drafts of the new financial

4    statements and information that would allow a creditor to make

5    an informed decision.  We are very, very far from that.

6            We just request, and this is more to the Oversight

7    Board, that their job include the facilitation, even insisting

8    on creditor access to information.  This needs to happen

9    notwithstanding legal issues that we have raised in a

10   Complaint with respect to the legality of certain aspects of

11   the fiscal plan.

12           No matter what happens in that litigation, while that

13   may change the shape of the table a little bit, it doesn't

14   change the need for accurate financial data that is available

15   to creditors.

16           Our client is restricted.  We're under MDA.  And I

17   think it's important for -- I know other groups may have

18   different issues with trading, but there still needs to be a

19   way through advisors and other creditors for us all to have

20   the same information and the same access.

21           And I want to comment a minute on committees, because

22   I do want to respond a little bit to the U.S. Trustee.  Our

23   confusion under PROMESA was the provisions under 28 U.S.C., I

24   think it's in the 560s which authorize generally the U.S.

25   Trustee to supervise cases and basically empower them in

Case:17-03283-LTS  Doc#:7217-1  Filed:06/04/19  Entered:06/04/19 16:13:49  Desc:
Exhibit Exhibit A - Transcripts  Page 142 of 193

141

1   Chapters Seven, Nine, 11, 13, 15.  But by the way, not --

2   Chapter Nine was not incorporated in PROMESA, but it does have

3   provisions related to committees.

4          So if there will be committees based on those

5   provisions, our view would be that there should not be a

6   committee with respect to COFINA for all the many reasons that

7   have already been stated about COFINA.  We're all secured

8   creditors there.

9          And that there be a balanced membership of a

10  committee with respect to the Commonwealth.  Our client is a

11  crossholder across many island issuers.  We don't have a

12  position yet on whether we want to be a part of that

13  committee, but we do think that should be taken into

14  account.

15         THE COURT:  And I believe that the representative of

16  the United States Trustee said this morning that they would be

17  posting solicitation information as to what direction they're

18  going in.

19         MS. GOLDSTEIN:  And Your Honor, one thing I didn't

20  plan to comment on but I must comment on Ms. Uhland's

21  statements with respect to representation of COFINA.  That was

22  a huge surprise to me that AAFAF is taking the position that

23  it is the representative of COFINA.  AAFAF has clearly been

24  the representative of the Commonwealth that has not given us

25  any diligence.  And so we found that stunning.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 143 of 193

142

1              And also to say that they are going to assert a

2    property interest in the monies held by Bank of New York, I'm

3    not commenting on that, but the question is why?  For whose

4    benefit?

5              I think the conflict is just starkly in front of us

6    today, and I just think it's one of the important things that

7    needs to be addressed as we go forward.  As I said, that

8    wasn't a planned remark, but I just felt that I couldn't let

9    that go.

10             We did not take a position with respect to the Bank

11   of New York litigation.  We do want to kept informed of any

12   schedule.  Likewise, we are giving thought to the banking

13   issue with respect to COFINA, and we expect counsel will keep

14   us copied on any draft resolution.

15             Thank you.

16             THE COURT:  Thank you, Ms. Goldstein.

17             MS. HALSTEAD:  Good afternoon, Your Honor.  May it

18   please the Court.  My name is Ellen Halstead of Cadwalader,

19   Wickersham & Taft.  We represent Assured Guaranty Corp and

20   Assured Guaranty Municipal Corp.  Assured insures bonds issued

21   by Puerto Rico and various public corporations, and insures

22   approximately a total of 5.4 billion dollars of debt.

23             Like Ambac and National, Assured has been working

24   with Puerto Rico for a long time.  In the case of Assured,

25   over 25 years.  Assured views itself as a partner with Puerto

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 144 of 193

143

1  Rico.  And Assured plans to be here for a long time, and is

2  committed to Puerto Rico's long-term financial health.

3      I just want to make two very quick points.  First, as

4  to the fiscal plan, which has been addressed a few times in

5  this hearing, the current fiscal plan violates PROMESA and the

6  U.S. Constitution by disregarding lawful priorities and liens,

7  and also by allowing Puerto Rico to transfer revenues that are

8  the property of bondholders.

9      Puerto Rico has refused to engage in discussions with

10  Assured and other creditors regarding modifications to the

11  fiscal plan in order to address these important issues.  As a

12  result, Assured and National were forced to file an adversary

13  proceeding in these Title III proceedings on May 3rd seeking

14  both declaratory and injunctive relief regarding the fiscal

15  plan.

16      Although that action is not before Your Honor today,

17  before there is any confirmation of any plan of adjustment,

18  the fiscal plan must be substantially modified in order to

19  comply with PROMESA, as well as the U.S. Constitution.

20      And I just have one other point.  As Ms. Goldstein

21  stated, and I join in the statements she just made, Assured

22  and other creditors have been trying very hard to negotiate

23  with Puerto Rico.  Although no resolution has been reached

24  yet, Assured is still willing to continue these negotiations,

25  to find a path forward to reach a consensual resolution.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 145 of 193

144

1              Thank you.

2              THE COURT:  Thank you, Ms. Halstead.

3              So this will be the last party speaker, and then I

4      want to call on Mr. Bienenstock -- oh, Mr. Rapisardi.  All

5      right.

6              So Mr. Molina, I think it is, if you would be brief.

7              MR. MOLINA LOPEZ:  Your Honor, thank you for the

8      opportunity.  Just briefly, we wanted to express we had filed

9      a motion regarding the forming of the committee.  We wanted to

10     express our thanks to the U.S. Trustee that it will form such

11     a committee.

12             And we wanted to point out something different than

13     other committees that may have been appointed in Chapter Nine.

14     We believe the committee appointed here needs to be

15     diversified enough, but also a very important issue is that

16     it's going to have fiduciary duties towards its constituency,

17     which will include, for example, one of the concerns this

18     Honorable Court stated at the beginning of the proceedings,

19     and that is to provide information in Spanish to its

20     constituency.

21             We are mostly here because motions and pleadings have

22     been filed in English, but we have to take into account that

23     78 percent of the Puerto Rican population either are not

24     proficient in English or do not speak English.  Their first

25     and native language is Spanish.  Therefore, one of the

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 146 of 193

145

1    concerns that should guide that committee to be appointed is

2    to provide as part of its fiduciary duties enough information

3    of the milestones that are set by this Honorable Court, as to

4    what is going on to this Court, and provide sufficient and

5    adequate information to that pool of creditors that may not be

6    represented by able counsel of the bondholders, but are

7    nevertheless entitled to know and have due notice.

8          So that was our concern that we wanted to state to

9    the Court.  Thank you, Your Honor.

10          THE COURT:  Thank you, sir.

11          Mr. Rapisardi.

12          MR. RAPISARDI:  Thank you, Your Honor.  I just wanted

13    to address a couple of points that were made by Ms. Goldstein.

14    First, with respect to the information that has been supplied

15    to the creditors, a very extensive effort went into preparing

16    a data room of thousands of pages of documents and information

17    that would be made available to the creditors prior to the

18    mediation sessions.

19          And I know Your Honor, because I was on site working

20    with a lot of the folks at AAFAF, watching them toil and

21    getting that information together.  Now, is it perfect?  Is it

22    a hundred percent complete?  No.  But to suggest that the

23    AAFAF team was not acting in good faith or was trying to

24    somehow hide the ball from the creditors by not providing

25    information to the best their ability is simply unfair.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 147 of 193

146

1        I'm not saying, Your Honor, that we will, you know,

2   not consider additional requests for information if we've

3   overlooked things.  We've had additional discussions with the

4   various committees to provide additional information.

5        Your Honor, I submit that compared to the information

6   that was supplied by the prior administration to creditors,

7   the efforts that we have taken, together with the Oversight

8   Board and the efforts that we made through the mediation

9   process to sit down, discuss -- it wasn't just the data room.

10  Your Honor, we scheduled meetings with each of the

11  constituencies through the auspices of Judge Gropper to make

12  ourselves available and answer his questions.  I'll leave it

13  at that.

14        Now, with respect to shock and outrage, with respect

15  to my partner Suzanne Uhland's comments with respect to AAFAF

16  and it acting as a representative of COFINA, and not just

17  COFINA, but all of the entities that will be coming before

18  this Court in the form of Title III or for Title VI for that

19  matter, I prefaced my remarks this morning quoting Act 2-2017,

20  which was passed on January 18th of this year.  And it was

21  called the AAFAF Enabling Act, passed by the Puerto Rican

22  legislature, and signed into law by the Governor, which

23  established a new charter for AAFAF, granting AAFAF the sole

24  authority to renegotiate, restructure or reach accord with

25  creditors with respect to any part of the public debt or any

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 148 of 193

147

1    other debt issued by any other governmental entity, including

2    but not limited to agencies, boards, commissions,

3    instrumentalities, public corporations, and political

4    subdivisions.

5         The fact of the matter is that COFINA is a subsidiary

6    of GDB.  COFINA is an instrumentality of the government.  And

7    it is within the government's power and the legislature's

8    power to revise or enable an agency under its authority to

9    take control with respect to, as I just went through,

10   renegotiation, restructuring with respect to any of those

11   entities.  And that was done legally, pursuant to the

12   legislature acting in January of this year, and signed into

13   law by the government, by the Governor.

14        Thank you, Your Honor.

15        THE COURT:  Thank you.

16        And so I thank you all.  With respect to the

17   disclosure and mediation issues, I would like a status report

18   by mid June as to attention to and I hope further progress on

19   issues relating to the disclosure of information to creditors.

20   And if there are particular points of conflict about the

21   structure or the nature of the information to be informed as

22   to your -- not in their granular specifics, but what those

23   issues are and what is being done in terms of work on them,

24   and whether there are, there have been and are ongoing further

25   negotiation sessions, and as to what constituencies.

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 149 of 193

148

1          And as I said a few minutes ago, I will continue to

2     think further on the more global question of mediation as a

3     tool for advancing the resolution of these issues.  By that

4     time, or even beforehand, I would welcome first, you know,

5     consultation among the principals, but informative motions

6     with ideas or suggestions as to what a structure might look

7     like.  I will be forming some ideas of my own, but that will

8     also help to move that issue along.

9          And I would very much like to thank the staff of this

10    court, its judicial officers, and its administrative staff,

11    the administrative office, and the judicial officers and staff

12    of my home court.  We have come a very long way in terms of

13    creating a structure for something that has not existed before

14    in the past two weeks.

15         I know that it is not perfect, but we are here today,

16    and I think we have made substantial progress today.  And it

17    is only with the incredible hard work of everyone in these

18    courts, and this court in particular, that that has been

19    facilitated.  And so I thank you on my own behalf and on

20    behalf of all of us who are able to be here.

21         And we are adjourned.  Thank you.

22         (At 2:03 PM, proceedings concluded.)

23                        *      *      *

24

25

Case:17-03283-LTS   Doc#:7217-1   Filed:06/04/19   Entered:06/04/19 16:13:49   Desc:
Exhibit Exhibit A - Transcripts   Page 150 of 193

149

```
1    U.S. BANKRUPTCY COURT     )

2    DISTRICT OF PUERTO RICO)

3

4        I certify that this transcript consisting of 149 pages is

5    a true and accurate transcription to the best of my ability of

6    the proceedings in this case before the Honorable United

7    States District Court Judge Laura Taylor Swain on May 17,

8    2017.

9

10

11

12

13   S/ Amy Walker

14   Amy Walker, CSR 3799

15   Official Court Reporter

16

17

18

19

20

21

22

23

24

25
```

< Dates >
April 6, 2016 25:3
August 1 117:19
August 14th 92:2
August 31, 2016 11:8
August 7th 92:1
January 18th 146:20
July 1 54:24, 54:25,
   55:10, 74:13,
   74:16, 75:4, 78:2,
   78:3, 78:6, 78:24,
   79:2, 117:18
June 1 75:5, 75:10,
   75:25, 76:3,
   116:12, 116:13,
   117:16, 117:18,
   117:21, 117:22,
   119:16, 120:15,
   120:18, 122:5,
   125:17
June 1, 2017 20:6
June 16 116:2
June 1st 116:6,
   116:19, 121:20,
   122:19
June 1st, 2017 116:3
June 30, 2017 17:18
March 13 25:24
May 10 13:5
May 10, 2017 11:11,
   28:1
May 15 30:24
May 17, 2017 1:11,
   6:2, 149:7
May 18, 2016 16:21
May 23rd 128:15
May 3rd 143:13
one may 53:7


< 1 >
1(b 38:6
1(b)(15)(i 38:7
1.1 59:2
10(b 39:20, 39:22
1005. 35:25
101 12:8
1015 48:7
1015(b 54:10, 56:1
104 106:15, 106:24

104(i)(1 16:8
106(e 22:20
11 16:9, 19:22,
   22:2, 22:3, 25:16,
   31:17, 39:12,
   49:8, 49:9, 54:17,
   64:18, 65:7,
   65:13, 65:14,
   84:16, 141:1
1102 28:8, 29:18,
   31:4
1102(a)(2 30:14,
   134:6
1102(b)(1 134:9,
   134:18
1102(b)(2 134:18
1102. 31:4
12 17:7
12.7 13:18
120 54:25, 55:2,
   55:6, 56:7, 74:12,
   74:17, 74:20, 75:4
128 15:5
12:00 100:13
12:12 112:3
13 141:1
14 22:16, 22:23,
   121:20
149 149:4
15 133:20
15. 141:1
16 38:22, 110:21,
   110:22, 110:24
17-03283-LTS 1:6
17-03284-LTS 1:7
17.3 13:23, 113:10
18 98:25
1968 86:19
1:00. 100:14
1:04 112:4
1:30 127:8


< 2 >
2-2017 146:19
2.1 15:4
2.3 119:17
20 128:16, 128:24,
   129:13, 131:2,
   131:3, 132:10

20-day 129:3, 132:2
2002 105:20
2006 48:13
201(b 22:16, 22:24,
   23:2
2017 25:4
202 17:15
2047 113:22
2054. 113:22
21 32:6
21-day 91:5
21. 27:24
23,000 119:22
25 142:25
26 37:14, 37:16,
   57:12, 72:10
28 140:23
2:03 148:22


< 3 >
3(c 84:16
3(d 84:20
3(j 106:17
3.1 14:15
3.5 24:2, 54:3
3.6 54:4, 58:22
30 57:14, 70:15,
   70:19, 72:14,
   73:24, 74:20,
   77:8, 90:9, 92:11,
   92:15, 92:16,
   93:6, 93:7, 93:23,
   94:3, 94:4,
   109:22, 114:11
30-day 79:12, 93:11,
   109:12
301 31:3
301(c)(7 65:10
308(b 46:1
316 31:6, 31:10
3212. 82:1
330 31:10, 31:11,
   31:16
362 111:5
362(e 88:15, 88:16,
   88:22, 89:1,
   89:14, 92:7, 92:9,
   93:13, 93:21
362(f 88:16

363 54:18, 71:21
366(b 128:22
3799 149:14

< 4 >
4.6 14:13
400 122:18
405(m 11:23
42 95:12
44 95:12
45 55:22, 95:8,
  95:10, 112:1
45-day 109:5

< 5 >
5.4 142:22
5.7 13:19
50 13:15, 23:15
531 15:2
55 13:14
560s 140:24
572 14:14

< 6 >
60 75:3, 75:5, 90:10
601 26:21
601(e 16:8
625 60:16
63 13:17

< 7 >
701 12:8
74 13:14, 14:7
78 144:23

< 8 >
87 95:13
881 59:2

< 9 >
90 63:23, 97:6
900 22:11
91 133:21
922 87:21

928 87:23, 88:1
928(a 87:25
928(b 20:14, 20:21,
  88:2
99 49:14
9:26 6:3
@nysd 84:11

< A >
A. 1:41, 2:10, 2:25,
  2:35, 2:47, 2:49,
  3:27, 3:45, 3:47
AAA 3:11
AAFAF 24:23, 25:1,
  25:3, 25:10,
  25:13, 25:25,
  26:17, 36:6,
  65:16, 73:22,
  75:12, 77:2,
  103:5, 105:8,
  122:7, 122:16,
  123:19, 123:22,
  124:2, 128:9,
  137:22, 138:22,
  141:22, 141:23,
  145:20, 145:23,
  146:15, 146:21,
  146:23
AAFAF'S 25:5
Abesada 1:40
abilities 31:25
ability 17:1, 43:15,
  55:24, 96:12,
  97:1, 108:19,
  131:18, 145:25,
  149:5
able 60:9, 90:2,
  92:6, 105:18,
  113:14, 130:24,
  145:6, 148:20
absence 46:1
absent 53:6, 62:9
Absolutely 62:25,
  63:24
abuse 110:17
accelerate 115:3,
  115:20, 117:5
accelerated 75:16,
  75:17, 114:19

acceleration 75:18,
  115:13, 115:21
accept 105:9
acceptable 42:5,
  71:10, 74:1, 74:3,
  85:21, 93:14, 94:6
acceptance 7:4
acceptances 16:11
accepts 16:6, 16:10
access 12:9, 48:20,
  78:11, 81:13,
  138:9, 140:8,
  140:20
accessibility 34:11
accessible 9:12
accommodation 85:14
accomodate 109:1
accompanied 84:25
accomplished 137:8
accord 25:7, 146:24
accordance 73:25,
  74:17, 104:5,
  130:1
accorded 134:1
Accordingly 30:7,
  31:14
account 48:19,
  54:24, 71:3,
  76:23, 141:14,
  144:22
accounting 15:13
accounts 77:5,
  124:4, 124:16
Accrued 6:23, 133:10
accurate 43:12,
  48:10, 68:11,
  140:14, 149:5
achieve 12:9, 12:20,
  24:10
achieved 17:12,
  68:14
achievement 17:3
acknowledge 62:21
acknowledged 60:19
acknowledgment 60:20
acronym 24:23
across 141:11
Act 25:4, 60:2,
  110:18, 146:19,
  146:21

Acting 25:15, 27:23,
  29:8, 145:23,
  146:16, 147:12
action 20:6, 21:15,
  29:15, 50:1,
  55:11, 83:12,
  116:10, 126:6,
  126:7, 143:16
actions 95:19,
  107:23, 117:3
active 15:23
actual 17:14
Actually 38:22,
  41:23, 44:4, 53:5,
  60:10, 62:25,
  66:19, 67:9,
  67:19, 67:20,
  73:17, 75:3, 82:9,
  100:10, 103:21,
  122:11, 124:20
acutely 18:11
Ad 2:9, 2:20, 28:15,
  29:23, 30:9,
  30:11, 66:16,
  124:20, 132:12,
  132:17, 133:9,
  133:12, 134:12,
  135:6
adapted 19:19
add 36:23, 42:17
added 81:7, 108:23,
  113:21
addition 20:10,
  113:22
additional 54:5,
  100:4, 101:24,
  108:14, 129:18,
  134:9, 134:22,
  138:23, 146:2,
  146:3, 146:4
Additionally 15:15,
  20:21
address 13:11, 14:5,
  20:7, 33:23,
  41:17, 53:3,
  66:22, 76:20,
  80:21, 84:5,
  101:19, 101:21,
  119:4, 125:2,
  128:21, 131:7,

143:11, 145:13
addressed 44:3,
  44:4, 60:23, 61:5,
  80:22, 98:20,
  125:22, 127:1,
  142:7, 143:4
addresses 129:17
addressing 51:1,
  57:25, 101:8,
  129:20
adequacy 131:19
adequate 51:14,
  51:16, 77:23,
  128:11, 128:23,
  129:6, 129:11,
  129:19, 129:24,
  130:9, 130:11,
  130:14, 130:25,
  131:3, 132:3,
  145:5
adequately 30:3,
  60:12
adjourned 148:21
adjudicate 12:4,
  19:24
adjudication 17:22
adjust 35:16, 97:25
adjustment 15:10,
  15:22, 17:13,
  17:14, 17:23,
  19:6, 20:12,
  25:22, 143:17
administer 49:17
administered 44:7,
  89:19
administerial 64:10
administrative 9:10,
  32:11, 32:12,
  35:14, 43:8, 61:8,
  68:22, 129:1,
  132:2, 148:10,
  148:11
admission 111:19
admit 47:13
admittedly 107:4
adopted 106:17
adustment 23:21
advance 37:11,
  38:24, 39:2, 39:7,
  54:14, 57:1,

73:24, 80:24,
  100:23
advancing 148:3
advantage 21:14
adversarial 12:21
adversarily 109:16
adversary 21:10,
  21:18, 56:25,
  95:6, 95:14,
  109:4, 109:7,
  109:11, 112:6,
  117:14, 143:12
advertising 49:15
advice 135:19
advisement 72:23,
  79:4, 79:20,
  128:12
Advisers 53:23
advisor 138:20,
  138:21, 138:22
Advisors 1:40,
  140:19
Advisory 3:37, 24:22
advocated 50:19
affect 44:7, 52:2,
  64:4
affiliated 8:1,
  19:23
affirmatively 41:3
afford 66:4
afforded 10:4, 10:7,
  108:13
afternoon 60:14,
  113:4, 123:20,
  125:23, 136:9,
  142:17
afterwards 35:18
agencies 147:2
Agency 3:36, 24:22,
  147:8
agenda 6:7, 9:25,
  10:9, 10:16,
  32:20, 33:5,
  33:10, 41:13,
  112:5, 132:17
agent 33:19, 78:8
aggregate 133:21
ago 29:10, 48:13,
  98:16, 148:1
agree 47:23, 57:2,

68:6, 92:20, 98:4,
108:24, 126:1,
126:2, 128:2,
137:14
agreed 116:1, 122:1,
129:1, 139:7,
139:8, 139:10,
139:12
agreement 39:14,
40:11, 116:15,
116:19, 117:22,
118:3, 137:8,
137:11
agreements 16:15
agrees 99:16,
122:23, 123:13,
128:7
Aguet 1:40
aim 10:15
air 113:3
aisle 133:4, 133:5
al 3:13
alert 135:5
Alicia 3:13
Allan 3:18, 18:18,
86:17
allay 79:15
allegation 117:3
allege 114:15,
114:19, 114:25
alleged 30:11,
114:18, 117:21
allergy 85:12, 85:13
alligned 49:15
allow 72:2, 79:18,
89:12, 110:14,
140:4
allowed 27:13
allowing 72:8,
127:19, 143:7
allows 16:4, 16:8,
20:8, 21:1, 23:12,
24:13, 85:6
alluded 17:21,
26:16, 45:9
almost 20:9, 51:21,
97:6, 101:14
alone 117:10
already 7:18, 11:24,
17:17, 45:15,

52:12, 61:21,
62:2, 62:7, 64:2,
65:8, 74:8, 77:25,
102:1, 102:18,
122:1, 133:17,
134:12, 141:7
alteration 111:5
Although 59:22,
65:15, 70:25,
75:15, 96:6,
143:16, 143:23
Ambac 2:34, 47:11,
47:16, 47:19,
58:20, 69:15,
114:8, 117:2,
117:7, 117:25,
120:3, 120:25,
127:15, 142:23
ambiguity 40:15,
93:16, 93:20
ambiguous 31:1,
38:23
Amended 88:24,
89:23, 102:22
Amendment 36:8,
77:15
amendments 85:7,
87:22
among 12:16, 21:19,
22:7, 62:9,
123:12, 148:5
amount 21:17, 76:6,
77:22, 113:9,
119:21
amounts 22:8, 33:16,
40:4, 124:3
Amy 149:13, 149:14
analysis 22:7, 134:4
analyze 15:19
and/or 114:16
Andrew 2:22, 2:39,
66:14
announced 8:22,
26:17
answer 13:4, 15:21,
15:24, 16:2,
27:15, 56:8,
109:12, 110:20,
138:18, 139:7,
146:12

answers 115:25
antecedent 42:20
anticipate 108:4,
108:12
anticipated 83:21
anticipation 135:12
Anybody 74:19,
106:12, 109:6
anyway 55:13
apart 95:11
apologize 80:24,
111:24, 113:15
apparently 125:4
appear 28:1, 28:3,
101:16
Appearance 102:8,
103:4, 104:18,
104:24, 105:1,
105:24
APPEARANCES 1:20,
2:1, 3:1, 4:1
appearing 26:1,
102:17
applicable 21:5,
22:18, 31:16,
39:23, 40:17,
43:1, 71:21,
88:17, 92:8, 92:9,
128:22
application 28:25,
31:14, 38:3, 38:7,
38:22, 39:4,
57:12, 70:8, 89:2
applications 31:7,
31:15, 31:22,
111:3
applied 18:5
applies 30:14, 79:9,
87:23
apply 79:12, 87:21,
87:25, 88:1,
105:21, 129:25
applying 21:3
appoint 30:10, 46:2
appointed 11:8,
67:22, 103:6,
144:13, 144:14,
145:1
appointing 28:15,
30:15, 134:2

Appointment 28:7,
    28:12, 28:14,
    29:20, 30:11,
    60:24, 134:8,
    134:20
Appologies 46:11,
    73:19
appreciate 29:24,
    32:1, 64:9, 119:9,
    124:12, 128:20,
    136:22, 139:3
appreciated 137:21
appreciation 113:19
approach 63:1,
    70:20, 136:17,
    136:19
appropriate 7:15,
    7:19, 29:7, 37:17,
    47:2, 49:17, 59:4,
    60:24, 63:9, 75:7,
    90:4, 90:17,
    93:23, 97:9,
    108:20, 131:1
appropriately 29:5
appropriations 14:23
approval 19:5,
    25:21, 26:22,
    69:24, 70:6,
    114:15
Approve 15:19,
    33:11, 36:25
approved 49:23,
    49:24
approximate 113:9
approximately 13:18,
    13:23, 14:11,
    14:13, 14:14,
    14:15, 14:25,
    15:2, 15:4, 22:11,
    55:22, 58:22,
    66:2, 66:25,
    116:25, 137:7,
    142:22
Aqueduct 14:12
arbitration 39:12,
    39:16
Architects 3:21,
    132:19, 136:10
argue 44:2, 126:9
argued 106:19

arguing 13:7, 19:16,
    19:17
argument 13:8, 50:9,
    51:25, 52:1,
    112:9, 123:14,
    132:14
arguments 50:2,
    50:20, 68:18,
    69:16
arise 108:16
Aristea 3:29
arithmetic 97:14
Arizmendi 3:30
around 48:3, 58:24,
    110:4
arrangements 8:19,
    8:21, 23:20, 61:8,
    112:18
ARRIBAS 1:21, 27:19,
    27:22, 27:23,
    29:17, 30:19,
    30:22, 32:14,
    32:17
Arroyo 2:7
Arthur 1:34, 11:7
Article 69:17, 76:24
articulate 123:12,
    136:24
artificial 78:13
ascertain 28:21
aside 49:25
asks 30:10, 44:25,
    99:4
aspects 140:10
assay 29:3
assert 55:16, 56:3,
    59:24, 60:9, 142:1
assertion 19:13
assertions 23:1,
    23:3
asserts 127:20
Asset 3:5, 53:24
assets 52:21, 59:17,
    59:19, 61:13
assigns 98:25
assistance 134:22
associated 128:1
assume 46:22, 53:14,
    119:20
assumed 111:22

assuming 26:20,
    39:1, 72:12,
    85:20, 100:16,
    118:3
assumptions 125:10
Assurance 2:35,
    51:14, 51:16,
    106:14, 128:24,
    129:19, 129:24
Assured 4:5, 70:16,
    132:19, 142:19,
    142:20, 142:23,
    142:24, 142:25,
    143:1, 143:10,
    143:12, 143:21,
    143:24
asymetric 97:13
asymetry 110:13
Atara 2:38
attempt 79:4
attempted 16:16,
    80:17
attended 118:24
attending 85:10
attention 6:25,
    26:2, 35:11, 72:4,
    78:16, 81:25,
    95:6, 113:15,
    147:18
attorney 27:25,
    101:8
attorneys 10:24,
    12:2, 12:16,
    12:17, 20:7, 24:12
Audio 9:3
augmented 52:24
auspices 18:17,
    146:11
AUST 1:22
authorities 58:23
Authority 3:37,
    14:12, 14:25,
    15:3, 15:4, 21:14,
    24:23, 25:6,
    30:13, 31:1,
    31:12, 38:24,
    39:2, 40:1, 40:14,
    40:24, 146:24,
    147:8
authorization 37:7

authorize 17:7,
  50:3, 140:24
authorized 84:18
authorizes 16:7
automatic 97:24,
  98:5, 115:20
availability 75:23,
  81:18
available 8:14,
  8:16, 8:25, 9:16,
  9:21, 14:1, 18:4,
  18:11, 22:4, 22:8,
  22:11, 27:14,
  32:3, 32:10,
  38:10, 38:16,
  38:18, 43:16,
  48:22, 48:23,
  67:13, 81:19,
  140:14, 145:17,
  146:12
average 22:12
avoid 55:10
award 31:12
aware 27:1, 50:13,
  65:9, 67:23
away 64:12, 90:5,
  123:8

< B >
B. 107:2
back 7:6, 11:16,
  14:3, 14:22,
  17:10, 35:19,
  49:4, 49:12,
  56:14, 57:9, 64:5,
  70:3, 70:17,
  74:15, 83:1,
  91:10, 100:17,
  118:7, 131:14
backed 48:15
background 25:1,
  47:15, 95:21
bad 58:13
balance 14:6, 105:25
balanced 141:9
balancing 134:19
ball 145:24
Banco 78:7
banking 15:13,

57:20, 142:12
Bankruptcy 31:3
banks 69:10, 70:24,
  70:25, 71:6, 77:1,
  77:5
Bared 2:16
Barrera 1:29
based 7:4, 17:16,
  46:11, 70:22,
  71:11, 73:3,
  80:18, 92:18,
  92:19, 101:11,
  110:16, 110:17,
  127:11, 133:20,
  138:7, 141:4
bashful 13:1
basic 125:1, 125:5
Basically 31:24,
  41:25, 44:3,
  44:10, 84:15,
  89:11, 90:7,
  90:11, 92:13,
  140:25
basis 8:6, 90:3,
  99:13, 128:8
Bauer-alvarez 1:28
bear 76:14
bed 64:6
beforehand 83:14,
  148:4
beg 113:11
begin 10:19, 11:13,
  41:23
beginning 61:18,
  121:18, 137:4,
  144:18
begins 99:24
behalf 24:22, 27:23,
  36:6, 40:24,
  47:11, 53:25,
  58:19, 60:15,
  63:15, 73:22,
  76:19, 86:18,
  105:7, 106:14,
  117:23, 117:24,
  120:3, 121:11,
  123:19, 124:2,
  124:13, 124:20,
  125:24, 127:6,
  137:21, 148:19,

148:20
BEINENSTOCK 32:21
believed 115:9
believes 69:21
bench 93:2
benchmarks 17:12
beneficial 114:8,
  114:14, 114:25,
  115:7, 116:25,
  127:14
benefit 27:8, 60:18,
  142:4
Benefits 7:25,
  133:10, 135:12,
  135:13
Bennazar 2:10
Benson 125:24
besides 110:5
best 8:13, 10:16,
  48:1, 53:10,
  145:25, 149:5
better 7:21, 8:11,
  17:11, 24:3,
  27:12, 50:20,
  64:13, 98:18
beyond 44:22
Bieninstock 1:26
bifurcation 126:1
big 35:14, 94:24,
  102:3, 108:12
bigger 80:25
bill 104:8, 104:14
billing 104:9
billion 13:15,
  13:19, 13:23,
  14:7, 14:9, 14:11,
  14:13, 14:15,
  14:25, 15:4,
  16:14, 16:15,
  23:15, 54:3, 54:4,
  58:22, 59:2, 66:1,
  66:25, 113:10,
  119:17, 142:22
binding 89:17
bit 21:13, 54:16,
  78:13, 87:3,
  87:12, 87:13,
  97:3, 111:25,
  122:9, 129:15,
  132:8, 140:13,

140:22
bites 16:2
blanket 77:1, 90:22
Bless 84:23, 127:18
blocks 36:12
blown 112:19
boards 147:2
body 19:16, 19:17
Bond 3:12, 13:15,
   13:19, 14:7,
   34:21, 34:23,
   67:1, 122:2, 123:6
Bondholder 2:30,
   63:15, 66:16,
   67:10, 86:20,
   101:9, 115:16,
   116:16, 116:17,
   119:21, 136:14
Bondholders 2:22,
   18:8, 18:10,
   49:21, 50:9,
   67:12, 71:11,
   102:16, 114:21,
   114:22, 115:4,
   115:12, 116:4,
   116:19, 121:12,
   122:4, 124:8,
   126:16, 127:17,
   132:18, 132:21,
   136:13, 143:8,
   145:6
bone 64:24
borrow 65:6
bottom 18:25
bound 95:15
box 42:22, 51:7,
   52:18, 84:15,
   96:14
Brant 2:32
breadth 91:2
break 100:16, 122:7,
   122:10
brevity 68:17
bridges 26:12
brief 9:11, 10:14,
   24:25, 54:24,
   58:3, 76:18,
   100:17, 100:21,
   106:23, 120:1,
   121:12, 144:6

briefed 126:11
briefer 136:25
briefing 82:18,
   82:22, 112:14,
   118:12, 118:19,
   118:23, 119:13,
   120:14, 123:5,
   125:7, 129:12,
   131:9, 131:13
briefly 10:5, 73:9,
   73:12, 112:8,
   119:12, 126:21,
   127:7, 127:8,
   144:8
briefs 131:13
brighter 8:11, 27:12
Brilliant 3:18,
   12:18, 86:10,
   86:17, 86:18,
   86:22, 87:5, 88:9,
   88:12, 89:8, 91:9,
   91:12, 91:21,
   92:5, 93:15,
   93:22, 94:6,
   94:10, 94:14,
   96:19, 97:9,
   97:15, 97:17,
   98:3, 106:19,
   107:18, 111:16
bring 19:4, 79:22,
   93:10, 95:5,
   108:19, 109:24,
   129:18, 129:23,
   139:1
bringing 72:4, 76:21
brings 131:14
broad 89:4, 133:17
broken 33:6
brought 83:15,
   107:23, 120:25,
   126:6, 126:11
buckets 33:7
Buckley 2:15
budget 17:16, 17:19
budgeting 27:9
budgets 15:12, 15:14
build 26:12
building 7:12
built 78:25, 105:13
burden 35:14, 90:8,

90:15, 92:22,
   92:24, 98:3
burdening 103:16
burdens 12:24
burdensome 26:5,
   101:15, 102:5
Burgos 4:5
Burke 2:24
burn 8:11
Bus 15:4
Business 8:5, 16:25,
   22:3, 22:4, 35:3,
   116:3, 116:4
busy 10:2
Butler 106:13


< C >
c-o-r-r-e-s-p 84:10
CAB 114:22
Cabs 113:20, 113:22,
   113:25, 114:3,
   114:14, 114:15,
   114:18, 114:25,
   115:18
Cadwalader 142:18
cafeteria 100:13
calculating 88:2
calendar 75:23,
   118:8, 128:21
calendaring 131:8
call 11:15, 14:8,
   14:11, 37:10,
   54:2, 61:11,
   96:13, 103:14,
   108:9, 133:6,
   144:4
called 14:12, 14:17,
   14:18, 14:25,
   15:1, 15:3, 15:4,
   16:4, 63:16,
   111:22, 146:21
calling 110:13
calls 84:3
Camara 2:35
candid 79:16
Canyon 1:39
capital 12:10,
   113:19, 138:9
capitalized 113:20

Capitol 1:39
caption 36:1, 36:7,
   42:22, 44:7
captioned 44:11
captions 36:16,
   44:20
care 64:9, 135:12,
   139:1
career 47:14
carefully 51:19,
   68:18, 126:11
Caribbean 34:19,
   35:3
Carrasquillo 4:15
carry 23:24, 36:9
carve 51:20, 106:20
carved 90:22
carving 107:5
cash 78:11, 113:21,
   113:23, 113:24,
   113:25, 114:4,
   115:21, 122:2,
   122:4, 122:14,
   122:17, 122:18,
   122:21, 122:22,
   122:24, 123:2
Castillo 2:42, 101:5
CAT 4:37
Cause 46:2, 76:12,
   100:20, 111:3,
   112:6, 116:11,
   120:4, 120:22
caution 77:19
cease 37:14, 114:20,
   115:3
Center 15:1
central 133:23
certain 13:24,
   14:19, 14:20,
   17:12, 20:16,
   20:22, 20:25,
   34:3, 57:12,
   58:23, 68:8, 88:4,
   89:1, 114:6,
   114:9, 114:21,
   117:2, 124:3,
   125:10, 130:17,
   139:5, 140:10
Certainly 7:22,
   13:11, 45:16,

50:15, 53:14,
   55:8, 76:15, 98:4,
   108:8, 108:21,
   112:9, 126:10,
   134:1, 134:19
certainty 21:17,
   105:7
certification 22:22,
   25:19, 26:20,
   83:18, 137:17
certified 15:14,
   17:17, 22:10,
   22:15, 25:23,
   78:10, 78:24
certify 17:16, 149:4
certifying 15:11,
   22:6, 59:18
Cesar 2:41, 101:5
cetera 69:18, 98:1
challenge 7:19,
   21:2, 125:11,
   130:24, 131:19
challenged 45:7
challenges 22:21
challenging 58:15,
   130:10
chambers 81:24,
   82:1, 83:6, 84:3,
   84:5, 92:13
chance 86:2, 86:5,
   125:12
change 70:5, 70:18,
   73:4, 98:7,
   108:22, 140:13,
   140:14
changes 7:8, 37:1,
   37:5, 50:10,
   85:20, 98:2
channel 129:25
Chapter 16:9, 19:22,
   21:6, 22:2, 25:16,
   31:17, 49:8, 49:9,
   54:16, 54:17,
   54:19, 64:18,
   65:7, 65:13,
   65:14, 141:2,
   144:13
Chapters 141:1
characteristics 6:22
charged 15:8, 22:5,

25:10
charges 15:10
charter 146:23
check 74:8, 100:11
checks 69:11, 69:13,
   70:24, 71:6
cheese 49:12, 49:13
Chief 12:5
choice 118:21,
   120:19
choosing 134:16
chosen 6:11
Christopher 38:1
Circuit 46:2
circulated 86:1
circulation 35:2,
   35:3
circumstances 7:1,
   14:21, 20:17,
   20:25, 45:6,
   83:19, 89:2,
   105:11
citizens 12:1
civil 21:10
claim 38:10, 38:15,
   38:17, 45:12,
   49:16, 52:17,
   57:2, 67:14,
   67:18, 122:12
claims 9:22, 19:23,
   19:24, 33:19,
   38:7, 38:8, 38:18,
   49:9, 52:1, 52:2,
   52:23
clarification 60:21,
   62:5
clarifications 64:9
clarify 61:19,
   97:23, 123:21,
   124:5, 125:9
Clark 133:9
class 16:6, 16:10,
   66:2
classes 16:10
classic 12:12
clause 38:22, 39:21,
   40:2, 40:3, 40:13,
   81:7
clawback 14:17,
   14:18, 14:24,

20:13, 20:19
clawbacks 20:19
clawed 14:22
clear 39:5, 40:20,
43:20, 46:21,
64:3, 64:24,
64:25, 65:11,
65:22, 67:9, 72:7,
79:3, 81:17, 93:3,
93:25, 115:14,
124:12, 124:14,
125:3, 133:25
clearly 79:6, 81:1,
97:25, 141:23
Cleveland 27:25
client 12:6, 65:16,
74:7, 87:1, 87:6,
94:9, 95:21,
122:15, 136:13,
138:1, 140:16,
141:10
clients 12:3, 53:25,
56:18, 65:25,
66:9, 77:14,
77:15, 111:17
clock 21:25
close 8:9, 71:8
closet 65:17
CM/ECF 43:10,
101:22, 102:12
CMA 3:20, 132:18,
136:10
co-counsel 120:9,
124:19
Coalition 2:31,
63:15, 117:24,
121:12, 132:21
Code 20:14, 20:21,
21:1, 21:4, 28:8,
30:14, 31:3,
31:11, 31:18,
88:15, 134:6,
134:10, 134:18
Cofinas 67:16
cognizant 121:17
collaborate 25:11
collaboratively
134:24
collected 39:25,
40:16, 78:7

collectively 13:14
collossal 12:12
colognes 85:12
Colon 2:36
combine 95:4
combined 20:13
comes 57:23, 90:2,
105:2
comfort 70:24, 77:1
comfortable 112:25
coming 78:12, 82:14,
90:25, 109:6,
121:15, 146:17
commenced 18:16
Commencement 33:11,
34:15, 65:21,
87:19, 109:21
commencing 78:3
comment 31:15,
44:11, 111:16,
140:21, 141:20
commenting 142:3
comments 36:24,
40:22, 41:25,
43:23, 64:9, 69:8,
80:15, 80:18,
97:21, 100:5,
110:10, 111:16,
112:21, 121:6,
124:12, 137:21,
146:15
commercialization
15:18
commissions 147:2
commit 48:3, 86:22
committed 26:14,
27:6, 47:24, 66:9,
143:2
committees 28:5,
28:7, 28:10,
28:13, 28:24,
29:4, 29:8, 31:9,
35:25, 44:17,
83:5, 103:6,
106:6, 134:2,
134:9, 134:13,
134:20, 140:21,
141:3, 141:4,
144:13, 146:4
communicate 25:11

communication 83:14,
92:12, 124:9
communications 83:6,
83:10, 83:23, 84:2
community 133:18
Company 3:26, 22:2
compared 146:5
compensation 28:9,
31:8, 31:13
competing 26:24
Complaint 21:18,
87:9, 95:9, 140:10
complaints 96:2
complete 90:21,
145:22
completed 118:13
completely 61:1,
105:19, 113:12
complex 6:7, 33:22
compliance 27:10,
114:16
complied 129:3
complies 22:23
comply 72:2, 143:19
composition 28:18
comprehensive 29:5
comprise 133:19
comprised 67:1
computation 22:8
computer 113:13
conceivable 66:5
concept 41:4, 93:2,
123:7, 135:22,
135:24
conceptual 42:8
conceptually 81:1
concern 35:1, 62:22,
68:2, 69:10,
69:19, 70:23,
71:5, 79:6, 90:23,
98:20, 101:11,
105:10, 105:12,
105:17, 124:21,
124:23, 145:8
concerned 34:11,
60:5, 72:6, 98:2,
107:22, 112:13,
137:25
concerning 9:22,
15:17, 128:10

concerns 19:9, 37:8,
   59:8, 65:8, 67:20,
   68:12, 79:15,
   80:5, 144:17,
   145:1
concluded 27:7, 42:9
concluded. 148:22
condition 140:2
conditioned 45:1
conduct 134:3, 135:6
conduit 123:10
conduits 69:12, 71:2
Conference 9:3,
   95:14, 109:6,
   109:13, 110:3,
   110:22, 110:24
conferences 8:20,
   110:21
confident 12:22,
   27:8
confirm 39:3, 39:15,
   110:10
confirmation 143:17
confirming 48:5
conflict 37:13,
   45:8, 45:17, 49:6,
   59:8, 59:15,
   59:21, 81:10,
   122:16, 127:1,
   142:5, 147:20
conflicted 19:15,
   126:22
conflicting 114:10,
   126:24
conflicts 48:8,
   48:9, 54:12,
   120:5, 127:3
confused 132:8
confusion 140:23
Congress 11:24,
   12:7, 25:14,
   45:22, 65:24,
   88:15, 89:22, 90:8
Congressionally 17:4
connection 23:1,
   23:2, 51:22, 57:6,
   87:9
consecutive 34:16,
   34:19
consensual 16:15,

23:19, 26:14,
   79:5, 138:3,
   138:8, 143:25
consensus 23:6,
   23:13, 126:15
Consent 72:24,
   93:24, 115:24
consented 88:20
consenting 93:25
consentual 16:12
consequences 22:19,
   23:10
consider 29:5,
   40:18, 48:7,
   54:11, 89:15,
   106:22, 111:1,
   112:21, 118:19,
   146:2
consideration 91:1,
   134:14
considered 68:18
considering 16:13,
   100:4
consistent 72:8,
   96:23, 114:23,
   115:10, 116:18,
   131:18
consisting 149:4
consolidated 43:9,
   44:6
consolidation 59:22,
   60:8, 61:11
constituencies
   26:24, 110:20,
   146:11, 147:25
constituency 46:22,
   52:2, 106:1,
   144:16, 144:20
constituents 135:13
constitute 48:22,
   124:4
constituted 130:7
Constitution 14:20,
   18:5, 67:13,
   69:17, 143:6,
   143:19
Constitutional 23:4,
   56:21
constitutionality
   21:3

consult 112:14
consultation 99:24,
   111:8, 148:5
consultations 123:12
contains 16:3
contemplate 84:1
contemplated 82:23,
   89:5, 102:23
contemplates 49:24,
   134:7, 134:10
contemplation 61:12
contend 22:15
content 93:18
contention 64:24,
   112:11
contested 41:13,
   56:25
context 13:5, 13:13,
   15:24, 21:9, 26:7,
   40:2, 58:5,
   107:20, 119:24,
   125:4
contingency 17:23
continuation 128:10
continue 18:23,
   23:13, 71:6, 86:8,
   87:18, 87:22,
   88:13, 100:22,
   128:25, 143:24,
   148:1
Continued 2:1, 3:1,
   4:1, 19:19
continues 74:16,
   75:17
continuing 18:21
contractual 87:24
contrary 39:14
contribute 7:11
control 57:15,
   70:13, 75:24,
   99:25, 108:14,
   147:9
controversial 58:5,
   63:7
controversy 69:17,
   76:24
contructive 26:12
convened 18:17
convenient 95:1
Convention 15:1,

98:12
conversations 135:25
Conversely 18:2
convert 21:17
convincing 71:5
cooking 60:5
Cooper 3:32
cooperate 12:25,
  25:11
cooperation 32:2
cooperative 25:24
cooperatively 137:23
coordinate 26:3
coordinator 15:20
copied 119:4, 142:14
Copies 8:15, 43:16,
  43:17, 81:18,
  81:22, 81:24,
  82:3, 84:6, 84:13,
  102:10
copy 84:9, 96:14
cornerstone 137:13
Corp 142:19
Corp. 4:5, 142:20
corporate 49:8
Corporation 2:6,
  2:35, 2:46, 11:2,
  30:24, 106:14,
  132:21
corporations 142:21,
  147:3
Correct 18:8, 32:14,
  36:7, 38:19, 39:6,
  55:20, 57:21,
  59:6, 61:7, 67:3,
  74:23, 78:22,
  89:6, 89:7, 104:16
correspondence
  124:10
cost 16:25, 66:8,
  102:15
Counsel 6:6, 9:24,
  9:25, 10:12,
  10:14, 11:6,
  31:19, 53:22,
  60:4, 62:17,
  66:16, 67:24,
  68:20, 68:23,
  95:2, 100:6,
  113:7, 117:20,

117:25, 118:1,
  122:7, 122:8,
  123:12, 124:1,
  125:13, 135:19,
  139:11, 142:13,
  145:6
count 43:25, 69:14
counterpart 62:18
couple 34:3, 63:20,
  63:23, 66:22,
  67:3, 112:15,
  145:13
coupon 126:15
course 6:21, 19:18,
  38:8, 42:21, 57:8,
  66:10, 74:15,
  79:10, 79:18,
  80:9, 93:11,
  98:17, 99:23,
  103:9, 116:2,
  116:4, 125:6,
  125:15, 126:12,
  129:1
Court. 99:24
courtesy 81:22,
  82:2, 82:3, 84:6,
  84:8, 84:13
courtroom 8:17,
  8:21, 47:25,
  64:17, 74:7,
  100:11, 122:1,
  127:12
courtrooms 73:18
courts 109:22,
  135:18, 148:18
cover 10:13
covered 13:17, 60:19
craft 12:3
cramdown 23:12
create 7:1, 7:19,
  58:6
created 12:7, 25:3,
  48:12, 48:19,
  59:3, 66:8, 89:22
creates 40:15
creating 76:7,
  77:24, 88:5,
  88:15, 148:13
credential 56:21
credibility 138:13

credit 48:16, 135:19
Creditor 1:38, 2:4,
  2:9, 2:13, 2:20,
  2:29, 2:34, 2:41,
  2:44, 3:4, 3:10,
  3:16, 3:20, 3:24,
  3:29, 35:6, 37:4,
  46:23, 62:23,
  65:4, 67:5, 95:19,
  122:13, 140:4,
  140:8
critical 15:20,
  16:24, 74:13,
  121:21, 137:20
crossholder 141:11
crucial 128:15
crystal 65:22, 72:7
CSR 149:14
cue 76:11, 93:17,
  100:18, 118:22
cued 21:12, 50:13
curable 114:11
cureable 115:2
current 17:10,
  132:1, 136:16,
  143:5
Currently 16:12,
  87:7
Curtis 120:9
customary 70:16
cuts 135:12


< D >
D. 1:28, 2:11
daily 35:7
Daniel 1:30, 2:42,
  4:14, 101:5,
  125:23
daregation 72:15
data 138:24, 140:1,
  140:14, 145:16,
  146:9
database 138:12
date 20:19, 25:12,
  35:22, 54:23,
  86:25, 90:22,
  93:18, 93:19,
  94:4, 94:17,
  94:20, 95:10,

98:18, 108:3,
109:13, 121:3,
128:15, 138:17,
139:17
dates 17:14, 95:4,
95:11, 96:6, 97:2,
107:6, 108:8,
108:17, 109:14,
112:15
David 3:32
Day 12:19, 22:12,
23:25, 52:12,
78:12, 89:16,
96:15, 118:10,
118:13, 118:25,
123:15
dead 113:16
deadline 30:8, 83:3
deadlines 21:25,
75:3, 83:2
deal 45:20, 70:1,
74:15, 84:7, 90:2,
117:17, 117:18,
125:16, 137:11,
137:15
dealing 18:19,
57:22, 120:24
dealt 44:4, 44:9,
121:1, 121:4
debilitating 120:6
debtholders 17:25,
18:21, 18:22
debtors. 107:9
debts 7:25, 13:20,
14:19
decade 48:13
decades 6:24, 47:21
December 92:4
Dechert 86:18
decide 45:5, 97:2
decided 88:16,
117:13, 117:14,
125:4
decides 120:14
decision 19:8,
28:17, 30:7, 55:5,
140:5
decisions 138:2
declaratory 116:10,
117:15, 143:14

declare 117:5
deconstruct 42:14
dedicated 48:18,
78:2
deemed 89:4, 90:24,
93:8, 93:24
deeming 88:20
deep 62:22
deeply 27:6, 47:19
default 75:11,
75:13, 107:6,
114:11, 114:13,
114:17, 114:18,
115:1, 115:2,
115:6, 115:11,
115:18, 115:19,
117:4, 117:5,
119:15, 127:12
defaults 76:8, 122:6
defenses 121:4
defer 29:11, 57:20,
100:6
defined 51:15, 77:5,
77:6
definitely 23:9
definition 103:3,
103:5
degree 67:17, 91:1
delay 46:11
delayed 95:25
delete 85:1
deleted 37:19
deleting 107:3,
107:9
deliberate 23:22
delivery 101:13
demanded 114:24
demonstrate 135:21
denied 44:2
denies 89:3
Dennis 2:37, 47:10,
120:2
denying 50:10
depend 6:15, 56:20
depending 45:25,
97:3, 114:7
deposit 112:24,
118:17
deposited 48:18
deprive 45:13

deputy 100:11
derogation 48:2
describe 19:11, 49:7
described 56:19
description 48:10
deserve 6:19, 29:25
desire 95:1
desires 20:8, 23:13
Despite 12:15,
12:20, 24:5
details 71:19,
72:20, 74:1
determination 24:7,
28:17, 57:18,
130:7
determinations 22:22
determine 22:25,
56:24, 131:2
determined 58:5,
64:22
determines 29:21
Development 14:10,
26:18, 135:11
devil 71:19, 74:1
Devoting 6:25
Dia 34:16, 35:2
dialogue 25:25,
26:13, 135:1
Diana 4:8
Diblasi 2:46
die 98:25
different 19:22,
19:23, 23:5,
26:23, 44:20,
46:3, 46:5, 48:8,
54:17, 61:1,
62:20, 74:22,
109:22, 111:23,
114:5, 114:6,
114:23, 115:17,
126:23, 126:24,
126:25, 139:23,
139:24, 140:18,
144:12
differently 61:17
difficult 23:7,
27:1, 135:8
diligence 138:1,
138:19, 139:22,
141:25

diligencing 16:23
diminished 18:12
direct 30:10, 36:25,
  37:12, 68:22
directed 68:20
directing 28:14
direction 29:13,
  110:11, 117:8,
  141:17
Directionally 57:21,
  74:6
directly 16:24,
  40:8, 48:18,
  74:11, 75:1, 104:8
directors 19:3,
  62:16, 122:9
directs 102:11,
  104:13
disagree 12:14,
  87:15
disagreements 12:16
disagrees 87:16,
  126:17
disappointed 139:17
disappointment 7:23
disapprove 15:19
disbursements 79:14
disclaimer 37:10
disclosed 24:5
disclosure 147:17,
  147:19
discourses 133:3
discovery 110:23
discretion 82:16
discuss 125:20,
  136:11, 146:9
discussed 32:1,
  85:22, 108:25,
  110:12, 111:6
discusses 133:17
discussing 9:20,
  64:21
discussion 33:23,
  85:21, 92:19,
  100:15, 100:17,
  107:16
discussions 25:24,
  31:19, 70:22,
  71:11, 73:3,
  135:25, 137:5,

137:24, 138:16,
  138:18, 143:9,
  146:3
disparate 23:5,
  128:3
dispute 18:14,
  20:10, 45:18,
  49:8, 67:7, 67:15,
  115:5, 117:19,
  123:3, 123:6,
  125:1, 125:14
disputed 14:2, 58:4,
  68:25, 115:8
disputes 6:21,
  39:11, 116:5,
  124:24
disregarding 143:6
distinction 130:18,
  130:19
distinguish 99:2
distribution 127:2
District 1:3, 1:17,
  1:18, 9:2, 9:6,
  9:17, 9:18, 9:19,
  32:8, 43:11,
  43:18, 43:19,
  81:14, 81:16,
  81:19, 81:20,
  81:21, 84:2,
  84:12, 87:8,
  119:3, 149:2,
  149:7
dive 112:7
diversified 144:15
divert 71:24, 77:20
divided 41:16
Docket 1:6, 11:12,
  33:22, 42:10,
  42:11, 42:14,
  42:17, 42:25,
  43:4, 43:9, 44:18,
  52:7, 53:1, 63:19,
  82:5, 84:4,
  106:15, 106:24
docketed 42:19
docketing 9:6, 9:9,
  9:16
dockets 42:12, 43:9
document 34:11,
  37:13, 79:5, 107:8

documentation 75:16
documents 9:11,
  57:9, 70:2, 72:9,
  74:16, 74:17,
  76:4, 81:14,
  112:8, 145:16
Doing 7:13, 16:25,
  25:12, 38:12,
  48:4, 53:15, 90:7,
  93:1, 93:25, 95:16
dollar 33:16, 75:5,
  76:6, 119:21
dollars 15:1, 15:2,
  22:11, 23:15,
  52:19, 54:4,
  54:25, 55:2, 55:6,
  56:7, 60:17, 66:1,
  66:25, 74:17,
  74:20, 119:17,
  122:19, 122:20,
  122:21, 142:22
dominant 14:2
Donald 2:24
done 24:2, 44:8,
  47:13, 52:11,
  62:19, 66:11,
  76:13, 79:18,
  99:7, 107:19,
  109:16, 129:10,
  135:20, 135:21,
  136:1, 147:11,
  147:23
door 8:9, 126:18
Dora 3:17
Douglas 2:15
down 8:25, 17:6,
  33:6, 43:13, 71:8,
  73:10, 100:6,
  105:2, 130:11,
  135:25, 146:9
down. 41:1, 74:24,
  118:11
draft 89:5, 93:24,
  108:25, 142:14
drafted 94:16
drafting 64:16,
  64:25
drafts 140:3
drew 32:22, 86:3
drive 18:14

due 47:21, 74:17,
  75:9, 75:18,
  105:11, 113:24,
  125:15, 126:12,
  145:7
Dunne 2:37, 47:8,
  47:10, 48:6, 49:3,
  49:18, 50:25,
  52:14, 53:17,
  59:9, 59:24,
  60:22, 71:15,
  71:16, 71:18,
  77:15, 86:22,
  117:25, 119:25,
  120:1, 120:2,
  126:1
duplicative 26:4
during 9:11, 37:15,
  64:25
duties 38:5, 53:11,
  144:16, 145:2
dwell 133:19
dying 110:23


< E >
e-mail 84:5, 84:14,
  96:14, 101:14,
  101:19, 101:20,
  102:11, 105:7,
  105:9, 119:4
e-mailed 82:3, 84:6,
  84:10
E. 3:26, 4:6
earlier 45:9, 55:17,
  85:2, 85:23,
  92:24, 107:16,
  108:15, 110:24
earned 136:2
ease 9:16, 12:24
easier 9:7
easy 55:25, 82:4
eat 49:12
ECF 38:12, 82:4,
  82:9, 84:7,
  104:18, 104:19,
  104:20, 105:2,
  105:6, 105:14,
  105:19, 105:25,
  106:2

echo 59:8, 61:25,
  121:6
economic 7:13,
  15:17, 17:2, 23:6,
  23:10, 27:10,
  134:11
economics 15:13
economy 7:12
edits 37:5, 106:16,
  106:18, 106:23
education 7:10
Edward 3:22
effect 28:17, 43:8,
  72:10, 87:21,
  95:18, 106:1,
  114:10, 114:12,
  115:5, 115:6
effected 7:5, 44:9,
  61:6, 135:14
effective 12:1
effectively 88:19,
  90:7, 95:18
effects 108:9
efficiency 31:23,
  44:21, 45:13, 46:6
efficient 34:2,
  41:24, 106:3
efficiently 6:8,
  100:12
effort 8:7, 48:4,
  83:14, 83:18,
  111:9, 135:21,
  145:15
efforts 26:3, 146:7,
  146:8
eight 86:3
either 19:2, 21:23,
  35:25, 46:13,
  73:14, 114:20,
  116:14, 116:18,
  117:12, 119:15,
  125:9, 144:23
El 1:35, 11:5,
  34:16, 35:2
elected 26:9, 103:11
elective 101:14
electric 14:8
elements 56:22,
  138:25, 139:24
elephant 78:1

elicit 28:11
Ellen 4:7, 142:18
Ellenberg 4:6
Emanuel 63:14,
  76:19, 121:11
embarking 11:20
embodied 38:6
embrace 135:22,
  135:24
emerge 7:9, 27:12
emergency 11:25,
  79:2, 90:17,
  94:18, 108:20
emergent 90:16,
  112:25
emphasize 21:22,
  23:11, 134:5
employed 28:9, 31:8
Employee 14:14
Employees 13:22,
  51:5, 133:11,
  133:23
employment 33:18
empower 140:25
empowering 55:9
empty 123:9
enable 7:9, 17:3,
  24:9, 138:1,
  138:9, 147:8
enabled 137:19
Enabling 48:20,
  146:21
enacted 45:22
enactment 114:16
encouraging 121:24
encumbered 21:1
end 12:19, 17:1,
  22:12, 35:20,
  42:17, 57:13,
  60:18, 85:17,
  92:2, 96:14, 119:6
endeavor 108:17,
  108:25
enforcer 139:14
engage 26:13, 33:23,
  66:5, 137:24,
  143:9
engagement 33:18,
  39:12, 39:14
engenuity 12:20

Engineering 136:10
Engineers 3:22,
    132:19
English 34:7, 34:8,
    34:9, 34:19,
    34:24, 34:25,
    35:13, 144:22,
    144:24
enormous 76:6
enormously 6:14
enough 7:23, 50:20,
    62:15, 63:3,
    123:16, 144:15,
    145:2
ensure 8:3, 30:1,
    48:19, 106:3
ensures 31:22
enter 130:3
entered 42:24,
    129:23, 129:25,
    131:1
enthusiastically
    12:17
entire 14:2, 15:24,
    46:23, 63:21,
    104:20
entirely 96:10
entities 7:3, 8:1,
    13:17, 13:20,
    14:6, 14:8, 14:18,
    14:24, 15:7,
    19:23, 20:15,
    20:19, 25:9,
    146:17, 147:11
entitled 78:2,
    92:14, 92:24,
    95:22, 114:23,
    116:5, 145:7
entitlements 23:6
entity 10:18, 15:12,
    22:6, 51:11,
    61:24, 104:13,
    147:1
entries 42:11
entrusted 30:16
entry 28:13, 130:15
enumerate 36:22
equal 122:25
equality 94:21, 98:9
Eric 2:48, 3:45,

113:6
errand 73:2
ERS 14:15
Escobar 3:43
escrow 120:18, 123:4
escrowed 122:5,
    127:20
especially 22:17,
    24:2
essentially 65:13,
    126:23, 131:22
Establish 111:6
established 6:23,
    8:23, 25:17,
    146:23
establishes 31:4
establishing 84:19
estate 45:9, 45:10
estates 44:9, 48:8
estimated 10:15
et 3:13, 69:18, 98:1
evaluate 134:23
event 71:8, 82:5,
    108:10, 112:18,
    114:13, 114:17,
    114:18, 115:1,
    115:6, 115:11,
    117:4, 117:5,
    127:12, 134:19
events 6:22
Everybody 32:10,
    42:3, 47:25, 84:4,
    97:10, 97:12,
    111:19, 111:25,
    118:24, 121:2
everyone 13:8, 15:8,
    34:6, 45:13, 47:3,
    62:1, 67:5, 68:16,
    69:5, 73:17, 74:2,
    79:16, 82:20,
    86:24, 112:25,
    118:3, 122:1,
    122:23, 123:13,
    128:6, 132:22,
    148:17
everything 94:23,
    105:20, 105:23,
    110:25, 118:15,
    119:14, 119:24,
    122:5, 136:17,

139:19
evidence 60:6
evidentiary 82:11,
    82:12, 82:17
exact 66:11
Exactly 19:21, 47:5,
    77:17, 104:16,
    106:18
example 115:14,
    137:8, 139:6,
    144:17
exception 84:18
exceptions 101:13
excised 40:14
exclusion 40:19
exculpation 72:3,
    72:13, 121:2
exculpatory 79:9
excused 37:15
executive 38:2
exercise 26:8, 29:6,
    99:25
EXHIBITS 5:9
exist 76:8
existed 51:3, 148:13
existence 45:11,
    61:21, 114:10,
    114:12
exists 13:16, 50:6
expanded 25:5
expect 13:2, 21:11,
    51:15, 98:16,
    99:21, 99:25,
    108:21, 111:7,
    137:17, 142:13
expectations 7:2,
    8:6, 28:4
expected 19:19, 38:5
expecting 99:6
expects 31:20, 82:20
expedite 96:5
expedited 89:12,
    89:13, 120:15,
    125:4, 126:13
expeditiously 27:7
expense 104:15,
    129:1
expenses 20:24,
    21:2, 88:4, 88:5
experienced 12:18,

65:13, 105:11
experts 15:14
explain 14:4, 45:15,
  102:21, 102:23
explained 70:11,
  71:9, 124:25
explaining 45:11
explanation 99:6
explicit 48:21
explicitly 82:15,
  134:7, 134:10
express 135:4,
  135:18, 144:8,
  144:10
expressed 18:23
extensive 145:15
extent 15:23, 30:10,
  46:20, 55:14,
  72:13, 76:2, 81:8,
  81:9, 83:24, 92:7,
  92:9, 97:23,
  100:1, 100:22,
  104:22, 105:18,
  105:20, 105:25,
  108:18, 112:10,
  129:1
extremely 71:22


< F >
F. 2:37, 3:42, 3:43
facilitate 112:18
facilitated 148:19
facilitation 140:7
fact 10:15, 44:18,
  71:25, 83:20,
  90:12, 95:4,
  97:22, 115:22,
  124:6, 147:5
facts 45:6
Failure 8:8
Fair 21:17, 27:11,
  68:13, 77:11,
  94:20, 123:16,
  133:18
fairly 134:12
fairness 31:22
faith 7:7, 48:15,
  66:6, 83:13,
  83:18, 137:18,

145:23
fall 108:3
familiar 105:19
Family 53:23
far 7:5, 60:5,
  65:16, 99:15,
  128:18, 129:10,
  139:18, 140:2,
  140:5
fashion 101:25,
  126:13
faster 24:3
faxed 84:13
feasible 7:20, 52:9
Federal 36:1, 36:6,
  87:8
fee 43:18, 43:19,
  81:20
feel 71:7, 83:24
feeling 122:14,
  122:15
feels 57:13
fees 14:19, 31:14
felt 142:8
Fernandez 1:29, 2:16
Ferry 19:7
few 6:9, 10:1, 14:3,
  16:2, 37:8, 57:5,
  69:8, 100:13,
  143:4, 148:1
FGAC 106:15
fiduciaries 67:24
fiduciary 49:4,
  53:6, 53:11,
  59:25, 61:20,
  61:24, 65:4,
  144:16, 145:2
field 91:6
Fifth 77:15
fight 50:18, 55:19,
  56:7
fighting 68:1
Figueroa 2:17, 4:11
figure 49:9, 93:12
File 10:10, 33:14,
  33:15, 36:8, 43:4,
  44:19, 52:5,
  63:17, 66:18,
  83:24, 89:18,
  94:16, 95:13,

96:6, 96:20, 97:2,
  97:12, 102:8,
  105:1, 105:24,
  108:2, 119:2,
  134:8, 143:12
files 43:6, 104:18,
  105:12, 109:11
filing 30:8, 42:23,
  42:24, 43:1, 52:5,
  99:13, 105:14,
  105:19, 108:7,
  116:24, 128:16,
  133:25, 140:2
filings 9:13, 9:21,
  42:12, 51:9,
  51:19, 52:11,
  53:16, 84:17,
  84:18, 124:11
filled 67:23, 78:5
Final 37:18, 40:13,
  90:10, 128:10
Finally 21:6, 22:2,
  33:17
Finance 2:5, 2:45,
  15:17, 30:23,
  58:20, 132:20
Financial 1:32,
  3:24, 3:36, 6:14,
  6:16, 10:24,
  23:14, 24:22,
  41:21, 47:19,
  106:14, 137:14,
  137:19, 138:1,
  138:7, 138:12,
  138:20, 138:21,
  138:22, 139:13,
  140:1, 140:3,
  140:14, 143:2
Financing 11:2,
  15:3, 66:7
find 6:20, 71:25,
  143:25
finding 8:2, 47:25
findings 131:18
fine 61:22, 64:7,
  67:20, 69:6,
  74:16, 108:5,
  120:13, 120:15,
  120:18, 131:10
finish 100:15

finished 20:9,
   100:16
fire 77:10
firms 102:3
First-day 33:6
fit 16:3, 108:16
five 33:17, 35:21,
   43:25, 44:5,
   66:23, 68:23,
   78:6, 83:3, 99:23,
   116:25, 122:21,
   127:14
five. 33:10, 43:2
fix 33:14, 40:25,
   55:25
fixed 70:15
flag 34:8, 41:24,
   52:8, 80:4
flagged 82:13, 83:21
flagging 52:5
flexibility 108:6,
   108:14, 108:23
flexible 110:15
FLIMAN 4:14, 117:25,
   125:23, 125:24,
   127:5
float 79:18
flow 55:1, 75:17
flows 49:10, 74:14
focal 15:7
focus 54:9, 74:21,
   88:8, 125:21
focused 74:14, 75:14
folks 57:22, 77:8,
   145:20
follow 97:4
followed 118:14
following 41:12
follows 31:17, 54:17
fool 73:2
footnotes 36:21
forced 107:6, 143:12
forecasting 15:17
foreign 49:14
forget 65:17
Form 29:1, 33:11,
   35:23, 41:25,
   64:23, 111:10,
   120:22, 144:10,
   146:18

formation 28:4,
   29:3, 31:5, 32:4
formed 29:19, 29:22,
   134:12
former 18:17
forming 144:9, 148:7
forms 28:24
formulated 62:23
formulating 15:11
formulation 36:14
forth 57:9, 70:17,
   74:15
fortunate 71:5
Fortunately 45:15
forward 6:21, 7:4,
   7:22, 8:2, 8:19,
   10:3, 26:1, 26:19,
   57:11, 126:2,
   136:4, 136:20,
   137:12, 137:20,
   137:22, 138:14,
   139:16, 139:20,
   142:7, 143:25
forward-looking
   72:13
foster 26:12
found 11:24, 19:11,
   19:24, 141:25
four 14:11, 14:24,
   16:14, 17:7, 17:8,
   20:15, 20:18,
   33:10, 33:13,
   78:5, 81:2, 83:4,
   85:15, 126:23
frame 125:22, 129:9
frames 91:23
framework 25:17
framing 68:11
France 49:14
Frankel 53:22
Franklin 53:23
frankly 6:17, 8:8,
   35:12, 77:3,
   78:13, 84:2,
   128:12, 139:1,
   140:2
free 9:22, 91:5
freedom 81:6
fresh 69:5
Friday 30:8, 30:20,

   112:16, 128:13
front 64:3, 121:5,
   142:5
frustration 135:18
Fuertes 2:35
full 8:1, 10:9,
   12:18, 38:9,
   38:17, 48:15,
   112:18, 113:15
fully 7:3, 82:22,
   130:17
Fund 2:14, 3:13,
   54:3, 69:15,
   132:19
fundamental 118:20,
   134:15
fundamentally 49:22
fundamently 19:14
funding 120:18
Funds 4:14, 18:11,
   44:25, 49:25,
   50:3, 50:7, 53:22,
   53:24, 53:25,
   60:15, 60:16,
   67:1, 67:2, 67:10,
   67:11, 71:24,
   72:16, 73:24,
   112:13, 116:14,
   117:23, 118:17,
   127:21
furnish 128:23,
   131:5
furnished 130:25,
   131:19
future 7:10, 7:12,
   7:18, 7:21, 8:12,
   16:17, 18:1, 20:2,
   27:12, 65:3,
   77:21, 135:3,
   138:9
futures 11:21, 24:3


< G >
Gabriel 2:47
gain 40:11
gander 68:4
gaps 91:16
Garrison 66:15
Gary 2:25

gating 17:21
gave 65:24, 114:17,
  126:21
GDB 14:11, 16:14,
  16:22, 17:5, 17:9,
  59:11, 65:18,
  147:6
Gebhardt 27:23
General 2:21, 10:3,
  11:6, 13:19,
  13:20, 18:3, 41:4,
  49:6, 49:7, 50:25,
  51:1, 81:4, 81:23,
  82:19, 85:10,
  127:17, 132:18
generally 19:18,
  31:15, 35:20,
  40:16, 110:13,
  140:24
gentleman 133:5
gets 52:17, 62:23,
  123:7
getting 35:6, 77:20,
  84:3, 133:5,
  145:21
Giannirakis 27:24
give 50:22, 57:14,
  63:20, 77:8,
  82:15, 85:7, 88:7,
  91:4, 95:20,
  96:10, 104:7,
  109:20, 113:14,
  117:16, 131:12,
  139:7
given 22:14, 25:14,
  44:16, 68:4,
  82:21, 91:1,
  105:9, 111:23,
  134:14, 141:24
gives 70:15, 70:18
giving 20:24, 70:23,
  72:12, 142:12
global 36:12, 148:2
goal 6:20, 8:6
Goldman 3:4
Goldstein 2:6,
  58:12, 58:13,
  58:16, 58:19,
  77:14, 86:12,
  97:18, 97:20,

98:14, 99:8,
  99:12, 99:20,
  100:2, 100:25,
  106:19, 136:22,
  137:2, 137:3,
  138:17, 139:4,
  141:19, 142:16,
  143:20, 145:13
Gonalez 1:34
Gonzalez 11:7
goose 68:4
GORDON 2:11, 133:8,
  133:9, 136:6,
  136:7
Gos 59:1, 67:15,
  124:25
gotcha 107:20,
  108:7, 109:4
gotten 70:9, 128:18,
  138:20, 138:21
gov 84:11
gov/ust-regions-r21
  32:7
Government 14:10,
  24:12, 24:24,
  25:20, 26:8,
  26:10, 26:18,
  27:9, 62:8, 67:23,
  107:24, 108:15,
  133:23, 147:6,
  147:7, 147:13
governmental 25:8,
  26:8, 27:10, 147:1
Governor 16:19,
  18:17, 19:4,
  23:19, 27:5,
  67:22, 146:22,
  147:13
grabby 122:17,
  124:13
grabs 74:19
gradual 17:6
grandfathered 16:20
grant 46:18
granted 56:2, 64:8,
  68:5, 68:7, 68:22,
  109:18, 111:7
granting 146:23
granular 139:4,
  147:22

grateful 88:6, 88:8,
  129:14
great 6:11, 24:10,
  51:10
greatest 27:3
greetings 6:5
Gropper 18:18,
  18:24, 146:11
gross 20:22, 88:3
ground 10:13, 112:23
grounds 76:23
Group 2:14, 2:21,
  44:25, 54:3, 54:7,
  60:3, 60:16,
  66:16, 66:24,
  67:1, 67:5, 69:15,
  81:23, 106:4,
  106:5, 115:9,
  115:10, 124:20,
  132:19, 133:2
groups 55:18,
  114:23, 115:16,
  116:16, 116:18,
  117:20, 140:17
growth 7:14, 17:2,
  27:10, 49:16
Guarantee 2:6, 2:46
guaranteed 90:8
guarantees 13:20
Guaranty 3:25, 4:5,
  30:24, 106:14,
  132:19, 132:20,
  142:19, 142:20
guess 67:4, 82:3,
  85:25, 86:3, 100:2
guessing 36:4
guide 145:1
guided 30:6
guidelines 31:16
guiding 19:8
guise 95:17
Guy 27:23
GWYNNE 3:42, 113:4,
  113:18, 116:23,
  118:11, 119:7,
  120:7, 122:11,
  127:6, 127:9


< H >

Hadley 47:11, 120:2
hair 77:9
half 11:21, 13:15,
    14:7, 24:8, 65:25,
    122:21
hall 47:21
Halstead 4:7,
    142:17, 142:18,
    144:2
hand 62:11, 72:17,
    97:18, 101:13,
    134:5
hand. 86:10, 86:11,
    86:12
handful 14:8
handle 79:25, 94:24
handled 68:12
handling 12:25
hands 86:7, 97:19,
    122:17
happen 52:18, 55:20,
    69:24, 122:2,
    127:13, 132:23,
    136:1, 136:5,
    137:17, 140:8
happened 10:9,
    139:17, 139:18
happening 118:7
happens 55:5, 100:1,
    114:7, 115:13,
    140:12
happy 33:25, 35:13,
    56:8, 57:1, 57:20,
    73:7, 100:5,
    128:2, 131:12
hard 121:14, 128:22,
    143:22, 148:17
harm 51:12, 99:10
hastens 22:1
hat 65:17
hats 65:16, 65:18
head 41:1, 74:23,
    118:11
header 82:4
heads 7:20
health 47:20,
    135:12, 138:25,
    143:2
hear 11:14, 24:14,
    44:14, 71:12,

73:1, 73:5, 73:14,
    76:4, 83:9, 91:7,
    91:20, 97:13,
    123:4, 132:14,
    133:2
heard 10:10, 47:7,
    53:4, 61:16, 62:2,
    64:11, 65:4, 65:7,
    68:16, 92:14,
    93:19, 99:17,
    107:11, 107:16,
    112:11, 112:22,
    128:6, 132:11,
    136:12
hearings 8:17,
    82:17, 85:15,
    90:13, 91:14,
    91:19, 99:23
heart 69:18, 72:5,
    121:14
heavily 11:20
heavy 111:10
Hector 4:11
hedge 67:2
heirs 98:25
held 116:14, 118:17,
    118:23, 119:15,
    119:17, 122:24,
    126:16, 142:2
help 8:10, 12:25,
    18:24, 83:21,
    84:7, 91:24, 99:7,
    102:2, 148:8
helpful 49:19, 109:2
helping 102:15
heretofor 50:3
hereunder 39:23,
    39:24
Heriberto 4:5
Hermann 1:28
Hernandez 4:15
hesitate 118:6
hide 145:24
high 119:21
highlight 12:15,
    135:6
highly 59:14
Highways 14:24,
    21:14
Hill 133:9

hip 67:25
historical 6:12,
    72:9
historically 79:10
Hoc 2:9, 2:20,
    28:15, 29:23,
    30:9, 30:11,
    66:16, 124:20,
    132:12, 132:17,
    132:18, 133:9,
    133:12, 134:12,
    135:6
hold 6:15, 26:24,
    27:3, 38:24, 39:2,
    60:16, 65:25,
    66:24, 72:23,
    79:4, 127:2
holder 127:14
holders 18:2, 114:8,
    114:14, 114:19,
    114:22, 114:25,
    115:7, 125:9
holding 39:7
holdings 75:14
holds 51:3, 54:3,
    56:20
holistic 29:12
home 60:5, 84:2,
    148:12
honestly 36:3,
    52:10, 130:4
Honorable 1:17,
    101:16, 102:2,
    144:18, 145:3,
    149:6
honoring 69:13,
    71:6, 71:7
hope 29:16, 65:22,
    99:12, 134:24,
    135:2, 136:2,
    137:17, 137:23,
    147:18
hoped 139:12
hopeful 57:7, 70:22,
    71:9, 74:6, 74:9,
    107:15
hopefully 136:5
hoping 124:21
Horizons 3:30
horrible 71:8

host 9:22
hour 111:25
house 78:5
housekeeping 34:3,
    43:23
HTA 14:25, 21:14,
    21:15, 87:2, 87:9,
    87:10, 88:3, 95:23
huge 141:22
humbling 6:18
hundred 119:20,
    145:22
hundreds 54:1,
    102:6, 102:7
hurdle 55:22
hurdles 24:5
hyperlink 81:15

< I >
I. 3:13
ID 36:1, 36:6
idea 65:6, 77:18,
    98:6, 126:3
ideas 148:6, 148:7
identical 31:10,
    31:11, 44:21
identified 42:13,
    50:4, 52:10
identifies 102:6
identify 7:8, 10:18,
    42:15, 132:24,
    132:25
II 3:13
illuminate 8:11
illuminating 49:19
imaginative 79:16
imagine 71:4, 135:17
immediate 112:23,
    114:12, 114:17,
    129:9
immediately 99:1
immunized 72:18
impact 11:20, 15:9,
    44:15, 66:21
impacts 14:4, 16:24,
    17:1
impair 66:10
impaired 16:10
impede 20:11, 110:1

impeded 26:10
impending 56:7
implement 7:8
import 65:7
important 6:21,
    8:15, 14:4, 15:6,
    25:2, 27:2, 29:24,
    34:10, 63:6,
    116:7, 119:23,
    125:2, 135:8,
    137:12, 140:17,
    142:6, 143:11,
    144:15
impose 17:19
impossible 11:18,
    77:24
impressions 62:20
improper 46:25
in. 84:13, 141:18
inadvertently 103:3
inapplicable 88:20
inappropriate 51:21,
    51:22, 51:24,
    58:8, 96:20
Inc. 2:42, 3:13
incentive 105:23
include 12:10, 22:7,
    40:20, 82:4,
    88:16, 89:1,
    98:19, 103:5,
    140:7, 144:17
included 103:3,
    106:2, 124:10,
    139:19
includes 31:12,
    37:9, 138:7
including 26:9,
    28:3, 31:16, 54:1,
    66:7, 133:22,
    147:1
income 40:4, 40:9,
    40:19
inconsistent 84:17
incorporate 30:5,
    85:4
incorporated 134:7,
    141:2
incorporates 31:3,
    37:1
increased 52:21

increasing 7:14
increasingly 8:4
incredible 148:17
incur 40:8
incurable 114:13,
    114:17
Ind 3:8
indemnification
    39:21, 117:10,
    117:11
indemnify 40:4
indenture 117:8
indentured 20:5,
    75:20, 115:9,
    115:15
independence 60:2
independent 53:5,
    53:9, 61:20,
    61:24, 62:7,
    62:15, 62:16,
    62:17, 63:3,
    64:23, 65:3,
    67:24, 122:9,
    122:11
indicate 35:11,
    43:17, 64:4
indicated 29:11,
    74:8, 104:12,
    124:1, 132:13
indicates 38:7
individual 54:1
indulgence 113:11
inflammatory 22:9
influence 12:3
inform 29:15
information 8:13,
    9:22, 24:6, 32:4,
    32:10, 32:13,
    34:12, 46:12,
    82:4, 87:7,
    134:22, 137:14,
    137:19, 140:4,
    140:8, 140:20,
    141:17, 144:19,
    145:2, 145:5,
    145:14, 145:16,
    145:21, 145:25,
    146:2, 146:4,
    146:5, 147:19,
    147:21

informational 35:24
informative 10:11,
   83:23, 83:25,
   99:2, 100:24,
   112:16, 119:3,
   133:3, 148:5
informed 42:3,
   136:17, 136:19,
   138:2, 140:5,
   142:11, 147:21
Infrastructure 15:3
ingredients 24:7
inherently 126:22
initially 131:10
initiate 110:14
initiated 83:11
injunctive 143:14
innocent 121:16
input 15:12
insentivised 72:17
insentivized 71:23
insertion 98:23
inside 19:6, 51:6,
   52:17
insight 50:22, 88:6
insisting 140:7
insofar 22:3
inspection 9:1
installment 55:1
instance 15:10,
   29:7, 29:12,
   42:16, 84:9, 95:19
instead 101:17,
   132:1
instructed 77:1
instructing 104:13
instructions 20:6,
   104:7
instrumentalities
   54:6, 58:23,
   137:6, 147:3
instrumentality
   147:6
insufficient 121:22,
   129:11
Insurance 3:25
insure 59:2
insured 47:16,
   47:17, 47:20
insurer 58:21, 117:2

insurers 49:21, 50:9
insures 47:16,
   114:9, 142:20,
   142:21
integral 46:4, 47:1
intend 45:18, 99:5,
   115:15
intended 40:25,
   85:7, 109:3,
   111:19, 134:1,
   136:25
intends 18:14,
   132:13
intense 21:24, 62:22
intent 44:14, 45:4
intention 29:2,
   34:13, 39:4, 39:7,
   39:15, 39:17,
   40:5, 40:7, 50:16,
   112:9, 112:12,
   128:11
intentional 95:17
intercompany 49:16
intercreditor 67:7
interest 7:17,
   26:11, 27:3, 48:1,
   48:8, 50:17,
   53:10, 113:20,
   113:23, 113:25,
   114:4, 114:14,
   122:2, 122:4,
   122:12, 122:21,
   122:22, 122:24,
   123:2, 124:6,
   127:14, 127:18,
   127:20, 134:8,
   134:11, 138:5,
   142:2
Interested 3:34,
   3:40, 4:4, 4:10,
   62:10, 105:22
interests 6:14,
   26:24, 30:4,
   54:14, 117:21,
   128:4, 134:20
interfered 26:10
Interim 90:9,
   118:22, 128:10,
   130:2
intermediate 71:1

internally 37:13
interpleader 20:5,
   75:22, 112:24,
   116:9, 118:17,
   126:3, 126:19
interpret 89:8
interpreted 55:9
interrum 120:13
interrupt 19:12,
   21:7, 98:11
interruption 122:23
intracofina 124:23,
   125:3, 125:14
introduce 65:7,
   113:2
introductory 81:3
invade 77:2, 77:13,
   77:20
invaded 50:8
invasion 49:24, 50:3
invasions 77:16
invest 53:25
invested 35:5,
   47:19, 54:6
investment 7:18, 8:4
Investments 3:17,
   7:20, 86:18,
   132:20
investors 54:1
invite 27:17,
   100:24, 133:3
invited 10:10, 135:2
involve 6:13, 7:22
involved 7:3, 26:24,
   53:8, 62:1, 64:16,
   94:23, 134:20
involving 16:13,
   16:14
irreparable 99:9
irretrievably 19:14
Island 35:2, 35:4,
   58:21, 119:18,
   122:24, 138:5,
   138:6, 141:11
isolation 51:25,
   52:1
issued 21:4, 25:8,
   47:17, 47:18,
   54:5, 142:20,
   147:1

issuers 141:11
Item 10:16, 33:10,
   33:13, 33:17,
   40:22, 41:17,
   74:11, 74:25,
   112:5
items 33:10
itself 55:15, 59:14,
   123:8, 129:2,
   142:25
iv 38:23
Iv(a 85:1

< J >
J. 1:26, 1:30, 2:10,
   3:44, 4:5
Jaime 1:35, 11:5
James 3:6
Jane 2:18
January 25:5, 147:12
Jason 3:14, 60:14
job 140:7
jobs 23:25
John 3:22, 3:37,
   24:21, 73:13,
   73:21, 136:9
join 48:25, 143:21
joined 110:25
jointly 44:6, 49:17,
   77:6, 89:19
Jose 2:26, 3:43,
   3:44
Juan 1:10, 4:11, 6:1
Judge 1:17, 1:18,
   6:10, 9:18, 10:20,
   18:18, 19:9, 21:6,
   46:3, 46:12, 90:1,
   109:7, 146:11,
   149:7
judges 46:5, 46:7
judgment 29:7,
   116:10
Judicial 9:2,
   148:10, 148:11
June 92:1, 116:7,
   127:19, 147:18
junior 114:22,
   114:25, 115:4,
   115:7, 115:11,

115:18
juniors 75:14
jurisdiction 22:21,
   56:5, 69:18
Justice 12:5, 32:7
justify 96:21

< K >
K. 1:27
Kapp 3:6
Karen 2:27
Kasowitz 125:24
keep 24:25, 67:8,
   67:11, 76:18,
   109:19, 119:13,
   131:9, 142:13
keeping 52:6
keeps 9:8, 67:5
Kelly 2:46
kept 9:15, 142:11
kids 49:12
kind 35:25, 75:8,
   111:19, 112:17,
   120:5, 120:6,
   121:1, 126:12,
   139:21
kindly 41:6
kinds 15:13
Kirpalani 2:31,
   63:12, 63:14,
   63:24, 64:1,
   75:11, 76:1,
   76:18, 76:19,
   78:22, 115:10,
   117:24, 121:10,
   121:11, 123:16,
   126:14
knowing 105:23
knowledge 83:19
known 11:2, 24:23,
   60:8, 106:1,
   133:11, 133:12
knows 45:6, 57:6,
   126:17
Koury 1:35, 11:5
Kraft 49:11, 49:13
Kramer 53:21
Kuehn 2:32
Kurt 1:41, 3:42,

113:4, 127:6

< L >
L. 3:17
label 70:25
labeled 83:25
Lablanc 2:39
landscape 50:11
lane 125:14
language 38:21,
   71:18, 72:7, 74:9,
   88:25, 89:9,
   89:11, 93:24,
   121:2, 144:25
large 46:20, 64:4
larger 31:17, 79:18,
   125:16
largest 86:19
last 9:9, 20:4,
   40:2, 40:22,
   61:16, 65:5, 78:5,
   88:24, 92:1,
   100:3, 109:3,
   112:8, 135:10,
   144:3
late 92:3
later 13:12, 19:11,
   20:8, 54:23,
   76:21, 101:20
latest 118:9
Laura 1:17, 6:10,
   36:14, 149:7
Lavergne 3:13
Law 23:5, 25:3,
   25:4, 48:14, 51:3,
   57:12, 72:10,
   114:16, 146:22,
   147:13
lawful 22:18, 143:6
lawsuit 126:21
lawsuits 109:22
lawyer 10:17
lawyers 12:19
lead 12:21, 42:19,
   42:25
leaders 7:11
leading 71:11, 135:6
learned 98:14
least 16:9, 36:15,

57:14, 60:11,
99:17, 105:14,
114:6, 116:7,
133:20, 140:3
leave 63:4, 146:12
Lecaroz 1:21, 27:19,
27:22, 29:17,
30:19, 30:22,
32:14, 32:17,
32:18, 134:4
Lee 3:46, 113:5
left 69:3, 97:22
legal 6:25, 13:7,
14:2, 15:14,
17:21, 22:14,
25:17, 34:10,
68:3, 140:9
legalities 47:4
legality 61:12,
140:10
legally 147:11
legend 42:23
legislated 11:24
legislation 15:16,
48:20, 55:8, 72:10
legislative 50:1
legislatively 12:7
legislature 48:13,
48:19, 146:22,
147:7, 147:12
legitimacy 61:12
legitimate 135:23
leins 87:24
lengthier 118:18
lengthy 91:19
less 10:15, 20:24,
31:13, 79:8, 98:15
letter 39:12, 77:20,
84:2, 119:2,
134:17
level 49:6, 49:22,
78:7, 88:6
levels 7:24
Levin 53:21
liability 52:25,
69:13, 70:24,
72:18, 121:4
liable 13:18, 13:21,
13:23, 14:6, 14:9
lien 88:3, 114:5

liens 20:22, 20:23,
22:18, 77:24,
87:24, 87:25,
111:17, 143:6
life 6:13
Lift 77:12, 88:22,
90:22, 91:5, 93:6,
93:10, 93:12,
93:17, 108:24,
110:11
light 19:8, 112:21
lightly 47:14
lights 8:9, 8:11
likely 17:6, 20:12,
120:23
Likewise 142:12
limit 132:24
limited 30:9, 30:23,
30:25, 32:1, 147:2
limits 55:24
line 18:25, 37:5
Linette 2:17
list 33:16, 34:7,
38:5, 46:23,
68:25, 82:9,
85:17, 103:15,
104:21, 104:23,
105:2, 105:3,
107:4, 139:1
listed 23:8, 132:17
listening 8:20
lists 33:5
literally 75:3,
97:4, 106:4
litigate 19:5, 58:6,
127:13
litigated 20:12,
21:19, 79:1
litigation 6:25,
9:14, 18:15,
19:20, 21:25,
47:1, 47:4, 50:14,
52:16, 52:19,
52:22, 58:2,
68:14, 87:2,
120:25, 126:6,
126:8, 127:10,
127:11, 132:3,
140:12, 142:11
little 18:9, 21:13,

54:16, 58:15,
61:16, 80:24,
87:3, 87:12,
87:13, 93:1,
95:21, 97:3,
111:25, 132:8,
140:13, 140:22
live 8:5, 97:10,
123:1, 133:2
lives 7:16, 11:21
living 16:25
LLC 3:17, 3:22,
4:11, 86:18,
136:10
LLP 10:23, 86:18
local 99:1, 101:23,
102:14
location 82:8
locations 85:11
log 113:14
logical 38:9
logistically 72:22
long 16:1, 33:21,
47:21, 58:24,
97:6, 102:15,
104:6, 104:12,
142:24, 143:1,
148:12
long-term 27:10,
47:19, 58:21,
138:4, 138:6,
143:2
longer 6:24, 133:3
look 52:7, 67:24,
76:4, 77:19,
87:20, 88:2,
136:4, 137:22,
139:16, 148:6
looked 67:6
looking 53:10, 67:8,
67:11, 67:21,
108:6, 116:20
LOPEZ 2:42, 3:30,
86:11, 101:2,
101:4, 101:7,
144:7
lost 69:25
lot 35:15, 60:5,
60:25, 63:5,
69:16, 70:11,

94:22, 121:16,
122:18, 145:20
lots 12:13, 78:25
loud 37:25
loudly 103:21
Lourdes 2:7
love 65:15
lower 114:11, 115:1,
115:19
lowest 66:7
Luke 3:47, 113:6
lunch 100:16,
111:25, 122:7,
122:10, 130:20
luncheon 133:23
lurking 93:20

< M >
M. 3:30, 4:7
mac 49:12, 49:13
Machin 3:43
magnitude 18:7,
109:20
mail 35:13
mailed 35:6, 35:10
mailing 33:15, 82:8,
104:20
main 126:20
mainland 35:5,
122:25
maintain 43:9,
108:17
maintained 104:21
maintaining 7:13,
43:6
maintenance 43:4
major 19:22, 23:9,
23:10, 42:8, 107:4
Maldonado 113:6
Mallet 120:9
manageable 52:13
managed 53:22,
53:23, 53:24
Management 1:33,
3:5, 10:24, 15:16,
19:25, 53:24,
69:3, 79:23, 80:7,
88:10, 88:14,
88:18, 89:15,

89:23, 90:12,
90:19, 90:25,
94:15, 95:18,
96:4, 98:8, 99:23,
100:15, 106:16,
109:24, 111:6
mandate 12:7
mandated 17:4
mandating 52:4
mandatory 101:18
manipulate 97:2
manner 33:12
mantle 53:10
Manuel 2:16
Marcia 2:6, 58:19
Maria 3:26
Marie 27:24
Mark 2:23, 4:6,
124:19
markets 12:10, 138:9
markup 81:13, 84:16
Martin 1:26, 3:27,
10:23, 41:20,
56:15, 106:13
massively 49:5
master 42:10, 42:14,
43:4, 52:5, 104:23
material 61:2
materials 101:10
Matrix 33:15, 37:4
matter 22:21, 44:16,
55:21, 56:25,
69:19, 69:23,
123:6, 140:12,
146:19, 147:5
matters 26:2, 33:9,
41:13, 45:4,
56:19, 63:7,
69:18, 82:19,
100:18, 108:1,
120:21, 123:25
maturity 113:21,
113:22
maximum 48:3, 105:18
MAYER 2:14, 53:20,
53:21, 56:13,
56:17, 57:6,
57:20, 58:9, 59:9,
60:10, 71:17,
71:20, 73:1, 73:5,

73:7, 73:11, 74:5,
74:6, 74:25,
76:15, 77:14,
77:25, 115:8,
117:23, 119:11,
119:12, 119:20
Mayr 1:41
MBA 15:5
Mccloy 47:11, 120:2
MDA 140:16
mean 23:7, 62:8,
99:5, 99:9, 102:3,
115:15, 127:23,
140:2
Meaning 22:19, 93:6,
124:24
meaningful 135:22,
135:25
means 22:25, 23:2,
23:8, 58:2, 65:14
meant 39:1
meantime 112:16
measured 39:24
mechanically 129:8
mechanics 85:2, 85:3
mechanism 66:21,
79:7
mediation 18:17,
18:22, 100:9,
136:11, 136:12,
136:13, 136:15,
136:17, 137:24,
139:21, 145:18,
146:8, 147:17,
148:2
meet 26:21
meeting 32:4
meetings 146:10
Megan 3:8
Melissa 4:15
Mellon 3:42, 100:20,
112:6, 113:7,
113:8, 114:20,
115:3, 115:22,
115:23, 116:9,
116:15, 116:20,
116:23, 117:4,
118:18, 127:7,
127:10
member 10:23, 36:22

members 6:6, 11:7,
    23:23, 30:15,
    62:16, 135:9
membership 141:9
memorandum 24:6
Memorial 118:10,
    118:13, 118:25,
    123:14
memorized 130:5
mention 121:19
mentioned 17:23,
    20:15, 21:19,
    23:4, 23:9, 33:21,
    44:1, 44:24, 45:8,
    53:7, 59:19,
    120:7, 138:4
mentioning 87:2
mentions 53:4
merchant 78:7
merit 126:9
merits 13:7, 13:10,
    126:9
met 139:5
method 12:8, 63:7,
    88:2
methods 12:10, 16:3,
    19:24
mid 92:3, 147:18
middle 116:21
Milbank 47:11,
    120:2, 120:8
milestones 145:3
Miller 2:38
million 11:21,
    14:14, 15:2, 15:5,
    22:11, 24:2, 24:8,
    54:25, 55:2, 55:6,
    56:7, 59:2, 60:16,
    74:13, 74:17,
    74:20, 75:5,
    122:18, 122:20,
    122:21
mind 35:21, 91:24
mindful 26:6, 100:13
minds 69:5
mine 29:12
minimum 10:15
minute 29:10, 46:8,
    48:9, 98:11,
    113:14, 132:22,

140:21
minutes 57:5, 63:21,
    98:25, 99:23,
    100:13, 112:1,
    132:10, 132:25,
    148:1
miscellaneous 43:19,
    81:20
misrepresent 118:2
missing 38:21
misstated 76:10
mistaken 78:23,
    103:14
mistakes 87:13
mix 42:4, 101:20
modification 16:18,
    16:19, 17:5, 40:18
modifications 16:5,
    16:12, 16:23,
    17:8, 41:9, 68:20,
    80:6, 143:10
modified 35:21,
    40:20, 86:9,
    90:19, 110:11,
    143:18
modify 129:6
Moers 2:14, 53:21
Mohammed 3:38
MOLINA 2:42, 86:11,
    101:2, 101:4,
    101:5, 101:7,
    102:20, 105:17,
    106:8, 144:6,
    144:7
moment 47:15, 121:5
moments 14:3
money 7:24, 22:4,
    22:13, 55:3, 55:4,
    55:10, 55:13,
    55:25, 67:17,
    69:21, 70:5,
    70:17, 71:2,
    74:14, 75:12,
    75:17, 75:18,
    78:14, 78:23,
    79:14, 122:13,
    123:8, 126:16,
    127:2, 127:21
monies 67:7, 67:14,
    142:2

monitor 51:19
Monserrate 3:17
Monsita 1:21, 27:22
month 55:1, 90:13,
    90:14, 91:15
months 57:11, 78:6,
    135:10
moot 57:11
Morales 2:26
Morgan 2:47
morning 6:5, 6:10,
    10:20, 10:21,
    11:4, 24:19,
    24:20, 27:19,
    27:21, 32:25,
    33:1, 47:8, 47:9,
    53:20, 58:17,
    58:18, 63:12,
    63:13, 64:22,
    66:14, 66:17,
    66:18, 86:17,
    86:21, 101:4,
    101:6, 141:16,
    146:19
mostly 144:21
movant 93:10,
    104:15, 104:18,
    104:19
movants 104:14
move 6:8, 31:12,
    50:25, 82:20,
    100:12, 109:8,
    109:12, 136:20,
    137:20, 139:20,
    148:8
moved 9:8
movement 93:5
Movimiento 133:12
moving 26:19, 35:4,
    54:21, 82:20,
    137:12
MUDD 3:22, 136:9,
    136:21
multiple 44:19
multiply 125:6
municipal 15:13,
    67:1
municipalities
    133:24
Municiple 142:20

Mutual 2:13, 44:25,
53:25, 54:2, 54:3,
60:16, 67:1,
69:15, 117:23,
132:19
mutually 74:3,
138:11
Myers 24:22, 36:5,
73:21
myself 41:16

< N >
N. 2:22, 3:14
name 10:18, 10:22,
37:24, 101:4,
124:19, 133:9,
142:18
namely 17:24, 114:22
narrow 83:14, 124:21
National 2:4, 2:44,
30:23, 30:25,
44:11, 58:20,
132:20, 136:23,
137:6, 138:4,
142:23, 143:12
native 144:25
nature 11:19, 92:23,
99:10, 120:16,
147:21
near 16:17, 20:13,
70:7
nearly 14:9
necessarily 67:6,
77:10, 96:3,
118:24
necessary 7:8,
23:17, 29:15,
36:9, 43:14,
62:24, 79:17,
94:25, 117:19
needed 18:24,
116:12, 137:14,
139:15
needs 17:12, 55:14,
78:24, 84:9,
97:25, 120:15,
126:1, 126:11,
134:23, 139:25,
140:8, 140:18,

142:7, 144:14
NEF 52:12, 84:7
Neftalis 53:21
negative 17:1
negotiate 19:1,
19:3, 59:11, 60:3,
62:18, 66:6, 79:5,
143:22
negotiated 16:20
negotiating 93:1
negotiation 72:24,
135:24, 137:19,
138:3, 147:25
negotiations 15:23,
18:23, 19:20,
21:24, 79:19,
135:11, 137:5,
137:18, 143:24
Neither 117:7
nevertheless 23:12,
145:7
News 34:19
next 17:6, 38:5,
68:25, 69:3, 69:5,
92:10, 92:15,
92:20, 92:25,
94:3, 97:14,
97:18, 98:20,
98:25, 112:5,
112:18, 128:8
night 52:12, 88:24,
112:8
nightmare 125:17
Nine 14:9, 16:9,
16:14, 30:24,
54:16, 54:19,
64:18, 82:6,
141:1, 141:2
Nine. 144:13
No. 138:18, 145:22
nodded 41:3
Nodding 41:1, 74:23,
118:11
nomenclature 98:12,
98:23
non-debtors 94:18,
98:6
non-ecf 103:11
non-financial 23:15
non-omnibus 94:17,

94:25, 95:4
non-repetitive 42:3
non-repetitively
10:5
None 5:5, 5:11,
61:5, 107:19,
109:9
nonetheless 42:11
nor 48:23, 117:7
norm 90:22
normal 54:17, 57:8,
57:12
normally 22:3
norms 96:16
Nos. 1:6
Notably 23:13
note 15:6, 27:5,
36:12, 41:2, 82:15
notes 12:15
nothing 18:9, 38:9,
123:9, 125:3
noticeably 53:6
noticed 47:3
notices 8:15, 35:23,
101:22, 102:5,
102:9
noticing 33:19,
46:23, 101:11
notified 102:12
notion 50:8
notwithstanding
140:9
novel 64:17
November 92:3
Nuevo 34:16, 35:2
number 36:1, 41:18,
81:25, 97:20,
110:20, 138:23
numbers 36:6, 36:17,
36:21
NY 112:5

< O >
o'clock 100:22,
112:1, 128:13,
132:24, 133:6
O'melveny 24:21,
36:5, 73:21,
123:18

Obama 11:8
object 56:4, 59:6,
   59:22, 76:23
objected 47:12
objection 30:23,
   30:25, 37:8,
   44:12, 46:23,
   48:6, 54:9, 63:17,
   76:2, 98:8,
   106:15, 106:24,
   110:16
objections 10:4,
   13:9, 19:10,
   19:13, 33:8,
   35:22, 42:1, 42:2,
   43:25, 44:24,
   45:8, 68:19,
   70:25, 80:4,
   80:23, 83:2, 83:8,
   86:2, 86:3, 91:8,
   111:10, 130:22
objectives 17:4,
   138:10
objectors 47:7,
   86:8, 86:13, 89:1
Obligation 2:22,
   13:19, 13:20,
   18:3, 79:11,
   102:9, 106:2,
   132:18
obligations 6:15,
   6:23, 39:21,
   127:17
observation 8:17
obstacles 139:5
obtain 43:15
obtained 43:18
obviate 111:9
obviates 130:21
Obviously 63:5,
   74:1, 87:10,
   108:10, 108:19,
   109:14, 111:19,
   127:21, 132:22
occur 17:18, 132:4
occured 115:19
occurred 75:13,
   95:22
occurrence 115:5,
   115:11

occurring 71:23
Ochoa 2:48
odd 109:22
offer 62:4, 129:11,
   130:7, 131:5,
   132:1
offered 5:5, 5:11,
   66:3, 134:21
Offers 139:18
Office 9:1, 11:15,
   27:25, 29:2,
   29:14, 43:8,
   132:12, 134:2,
   134:21, 134:23,
   135:2, 136:5,
   148:11
officers 148:10,
   148:11
Official 28:14,
   28:16, 29:25,
   30:12, 30:15,
   31:5, 31:9, 33:16,
   106:6, 149:15
officials 26:10,
   67:23
often 21:25
Okay 29:17, 32:21,
   42:7, 51:24,
   58:16, 69:4,
   74:25, 97:11,
   103:24, 104:7,
   107:13, 119:7,
   131:14, 131:16
Omnibus 63:17,
   85:15, 90:13,
   90:22, 91:14,
   92:10, 92:19,
   92:21, 92:25,
   93:7, 93:18,
   93:19, 94:2,
   94:19, 95:8, 95:9,
   96:6, 96:11, 98:5,
   98:21, 99:14,
   106:20, 107:5,
   107:6, 108:3,
   108:8, 108:17,
   109:14
on-island 60:16
once 34:15, 34:18,
   67:14, 85:3,

   90:13, 127:2,
   129:24
Onda 4:11
one-third 66:1
one. 78:12, 86:4
ones 47:4
ongoing 147:24
onset 90:5
onslaught 52:11
open 64:22
opening 75:7
openness 139:25
operating 21:2,
   51:10
operation 51:23
operational 25:20,
   26:2
operations 51:5
Oppenheimer 53:22
opportunities 10:4,
   136:23
opportunity 10:7,
   45:15, 66:5, 96:4,
   100:8, 144:8
opposed 23:14,
   49:22, 104:8,
   115:12, 120:23,
   126:12, 127:15
opposing 67:6, 83:20
opposite 66:11
opposition 10:5,
   82:14, 83:21,
   128:13, 130:13,
   130:15
oppositional 49:5,
   51:2
oppositions 132:13
opted 101:18
optimized 12:20
option 8:8, 96:9
oral 13:8
Orders 33:24, 34:4,
   35:21, 36:13,
   36:15, 41:9, 77:1,
   80:3, 90:23,
   100:3, 111:3
ordinarily 96:22
ordinary 57:8,
   74:15, 79:10,
   79:18, 89:25,

93:11, 98:17,
99:4, 116:2,
116:4, 117:14,
128:25, 132:4
organization 137:13
organizations 133:20
organized 78:17
original 7:2, 57:9,
70:1, 70:4, 72:9,
89:5, 103:2,
106:17
originally 9:5,
16:20, 36:16,
136:25
Orseck 2:25
Others 10:6, 74:9,
95:5, 105:14,
107:18, 111:5,
135:20
Otherwise 6:15,
11:9, 14:22,
36:25, 52:19,
60:2, 70:12, 76:8,
102:4, 120:24,
123:13, 133:1,
139:21
ought 98:20, 109:18
ourselves 54:2,
146:12
outcome 46:5,
108:22, 127:1
outcomes 12:4
outlined 44:8, 86:9
outrage 146:14
outside 19:6, 33:19,
44:17, 93:23,
99:13, 102:18,
104:3, 104:20,
108:8
outstanding 20:16
overall 40:3, 46:4,
125:10, 136:17
overbreath 106:20
overbroad 46:24,
47:1
overflow 8:16, 73:18
overlap 51:4, 51:23,
67:21, 68:4
overlooked 146:3
overnight 101:13

override 81:6
overrides 81:5
overriding 81:4
overruled 68:19
overruling 110:15
oversee 6:11
overseeing 13:17
owes 14:25, 15:2,
15:3, 15:5
own 70:12, 148:7,
148:19
owner 116:25, 117:9
owns 48:14

< P >
P. 2:18, 3:7
PAGE 5:3, 37:18,
64:3, 81:12, 82:6,
84:16
pages 77:4, 145:16,
149:4
paid 17:24, 39:25,
40:4, 40:13,
40:24, 74:18,
87:18, 87:22,
95:22, 113:20,
113:21, 113:23,
126:16
pain 7:22
paper 43:16, 43:17,
82:2, 82:5, 82:13,
82:14, 82:15,
102:10, 106:5
papers 8:15, 55:8,
60:22, 66:19,
77:6, 105:9,
128:13
paperwork 93:9
paragraph 30:24,
37:9, 37:14,
37:16, 37:18,
38:22, 39:10,
39:12, 39:20,
40:7, 43:1, 43:3,
44:5, 44:11, 81:2,
81:3, 81:13, 82:6,
84:16, 106:17,
107:2
parallel 68:8

parallels 64:18
parity 98:10
part 17:13, 21:15,
25:7, 38:13,
45:11, 60:1,
76:23, 89:14,
89:23, 125:8,
141:12, 145:2,
146:25
partially 115:25
participants 77:19,
127:15
participate 136:3
participating 127:16
participation 99:17
particular 25:15,
53:8, 82:5, 82:19,
101:7, 147:20,
148:18
particularly 16:24,
36:18, 58:24, 59:1
partner 32:22,
142:25, 146:15
partners 11:3
Party 3:34, 3:40,
4:4, 4:10, 7:17,
44:16, 50:17,
61:9, 63:3, 92:9,
96:6, 96:10, 98:4,
98:24, 103:4,
104:17, 104:23,
106:4, 107:7,
107:8, 108:9,
129:18, 130:2,
144:3
pass 81:15
passage 84:15
passed 55:8, 146:20,
146:21
passionate 123:11
past 6:22, 7:5,
7:24, 10:1, 25:5,
148:14
path 143:25
Paul 66:15
pause 46:8
pay 7:25, 14:19,
14:23, 18:6, 18:9,
18:11, 21:2,
35:11, 39:22,

122:2, 122:4,
122:21, 122:22,
122:24, 123:2,
128:25
payable 13:24, 75:19
payment 20:7, 37:12,
75:9, 114:6,
116:2, 116:3,
116:5, 116:8,
116:12, 116:13,
117:17, 117:18,
117:19, 117:21,
126:18, 127:19
payments 39:24,
114:20, 115:3,
115:7, 115:12,
115:24, 116:17,
123:6, 132:1
Peaje 3:16, 86:18,
132:20
pending 13:9, 15:25,
16:1, 24:15,
28:13, 29:9,
30:22, 71:6,
72:24, 79:4,
79:20, 87:2, 87:7,
118:18, 120:7,
120:24
pension 13:16,
13:21, 23:15,
135:12
Pensionados 133:13
pensions 15:19
per 22:11, 119:21
percent 13:14,
49:14, 117:1,
127:14, 144:23,
145:22
Perez 1:30, 2:48,
4:5, 4:8
perfect 7:5, 7:6,
64:7, 145:21,
148:15
perfectly 49:17,
108:16
perform 72:9
performance 15:18
performed 39:23
perfumes 85:12
perhaps 57:23,

76:25, 79:11,
118:4
period 9:11, 91:19,
93:11, 109:5,
109:12, 115:19,
129:3
periodic 31:21
periodical 34:22,
34:23
permanent 12:10,
58:6
permission 54:19
permit 39:2, 41:15
permits 10:8, 28:24,
28:25, 37:10,
104:13
permitted 81:9
person 53:9, 61:23,
85:11, 106:1,
133:4
personally 27:6,
64:16, 65:15
personnel 15:17
perspective 29:11,
63:9, 80:7, 90:25,
126:18, 132:14
petition 28:15,
46:24, 69:11
petitions 24:7
PHF 2:23
phrase 108:21
physically 118:24
pick 109:13
picked 58:13
Pico 3:26
piece 54:9
pieces 82:20
pivotal 18:8
place 7:9, 8:22,
56:8, 61:21,
130:18, 131:4
places 81:7
plainly 13:6
plaintiff 126:6
planned 142:8
planning 17:17,
70:7, 76:11
plans 15:11, 17:13,
17:14, 20:11,
22:6, 22:17,

23:21, 143:1
plate 63:6
play 29:24, 61:4,
129:14, 135:22
player 58:21,
135:23, 138:4
players 91:2
playing 93:4
pleading 44:12,
94:16, 108:2
pleadings 42:12,
44:6, 44:19,
44:20, 44:23,
107:3, 107:7,
144:21
Please 10:14, 10:22,
27:20, 36:8,
37:24, 113:2,
124:18, 142:18
pledged 55:14,
124:4, 124:7
plus 95:12
PM 112:3, 112:4,
148:22
podium 53:3, 73:15,
73:18
point. 109:13,
126:15, 143:20
pointed 55:17, 98:3
points 60:19, 67:3,
107:16, 107:17,
114:6, 123:22,
125:25, 133:1,
143:3, 145:13,
147:20
police 133:22
policies 9:2
policy 26:9
political 26:8,
70:12, 147:3
pool 145:5
pooling 61:13
Popular 78:8
population 144:23
Portela 2:7
Portfolio 3:12, 58:7
portion 48:14, 102:7
portrayed 67:15
positions 47:2,
71:12, 73:4,

114:10, 126:24
positive 12:15,
   17:2, 46:6
possession 115:22
possible 6:8, 26:15,
   27:7, 43:21, 52:9,
   52:13, 63:8, 66:8,
   81:1, 81:17,
   104:3, 104:24,
   105:1, 105:19,
   116:14, 116:17,
   119:1, 119:4
possibly 102:5,
   102:6, 103:7
post 32:9
posting 32:4, 34:21,
   141:17
potential 48:8,
   54:12, 76:7, 91:2,
   130:13, 130:21
potentially 46:24,
   51:12, 72:19,
   96:22
potentials 24:10
power 147:7, 147:8
powers 25:14, 26:9,
   31:24, 70:11,
   70:12
practical 69:23,
   123:5
practice 73:25,
   93:17
practices 72:9
pragmatic 65:3
pragmatism 65:6
PRASA 14:12, 17:9
PRCCDA 15:1
pre-petition 21:10,
   134:12
precedent 6:12
precedented 79:10
preceding 74:15
precipitously 29:8
precisely 79:1,
   130:5
preclude 50:16,
   96:16, 111:3
precludes 115:21
predicated 117:3
predict 21:17

preempt 29:6
prefaced 146:19
preferably 10:5
prefers 11:9
prejudging 65:9
prejudice 54:11,
   61:9
prejudiced 130:2
preliminary 30:7,
   69:8
premature 58:1,
   59:9, 132:14
premise 127:11
PREPA 14:9, 16:13,
   16:18, 16:22,
   16:24, 17:9,
   137:9, 137:11,
   137:19
preparation 111:8
prepared 9:25,
   28:11, 55:19,
   118:16, 137:24,
   139:16
preparing 145:15
presaged 64:2
present 7:24, 18:1,
   31:20, 33:24,
   35:17, 37:1,
   120:10, 139:11
presented 37:6,
   58:4, 69:13
presentment 35:20,
   35:22
preserve 120:22
preserved 93:21,
   121:2
preside 9:18, 12:13
President 11:8, 38:2
presiding 85:11
press 6:6, 19:1,
   19:5, 135:17
pressure 131:11
pressures 54:22
presuming 128:7
prevail 52:16, 52:18
prevailed 52:24
prevent 23:18, 109:6
prevented 109:9
previously 70:6,
   71:20, 84:18

PRIFA 15:3
primarily 35:10,
   75:14, 117:1
primary 14:2
Prime 32:9, 33:18,
   37:7, 37:10,
   37:14, 37:22,
   38:1, 38:6, 38:13,
   39:2, 39:7, 39:25,
   40:4, 40:10,
   40:13, 40:19,
   40:22, 40:23,
   41:3, 41:6,
   103:14, 103:18,
   104:11, 104:13,
   104:14, 104:21
principal 113:21
principally 35:3
principals 148:5
prior 16:21, 75:24,
   77:7, 109:21,
   116:24, 145:17,
   146:6
priorities 22:18,
   114:5, 114:6,
   126:25, 143:6
priority 67:12,
   132:2
privatization 15:18
privilege 110:17
Pro 133:12
pro-growth 12:11
proactive 72:3
probably 21:24,
   62:17, 90:14,
   119:21
problem 46:12,
   46:13, 56:4, 94:1,
   119:13
Procedural 44:12,
   44:15, 44:18,
   45:14, 46:19,
   56:24, 59:7,
   59:22, 60:8,
   66:20, 94:21,
   98:9, 98:10,
   100:3, 110:19,
   129:20
procedure 78:12,
   84:21, 85:1, 94:3,

99:18, 104:19,
105:17, 117:18,
129:5, 131:20
Procedures 81:3,
81:12, 81:20,
82:6, 84:13, 85:8,
85:22, 86:1,
105:6, 106:21,
108:25, 130:1,
130:25, 132:4
proceed 11:11,
18:15, 30:7,
33:25, 51:18,
131:14
proceeding 15:23,
21:18, 26:18,
31:25, 42:18,
56:25, 87:19,
109:7, 109:11,
117:15, 126:8,
143:13
Proceedings 4:36,
6:12, 7:17, 8:10,
8:14, 8:21, 8:24,
9:14, 9:15, 21:12,
24:24, 26:7, 63:6,
85:10, 95:6,
109:4, 110:19,
112:4, 143:13,
144:18, 148:22,
149:6
proceeds 24:3
process 12:21, 24:3,
25:18, 25:21,
26:19, 27:7,
29:22, 32:5, 53:8,
62:2, 63:2, 63:21,
77:11, 78:18,
103:16, 108:13,
109:10, 110:4,
118:19, 125:21,
128:8, 130:21,
135:23, 135:24,
136:3, 146:9
processes 25:18
procuring 15:12
produce 17:16,
17:20, 19:1, 23:5
produced 4:36
producing 7:13

product 25:24
professional 31:13
professionals 12:23,
26:4, 28:9, 31:8
proficient 144:24
progress 23:21,
147:18, 148:16
project 20:24
projects 15:20
prominance 110:19
prominence 83:9
prominent 85:15
prominently 82:13
promise 72:14
promised 24:25, 66:9
promote 46:6
promptly 119:5
proof 38:10, 38:17
proper 7:19, 9:8,
88:1, 134:14
property 13:25,
18:1, 48:21,
51:17, 52:24,
64:5, 67:9, 69:21,
71:24, 77:2,
77:13, 77:21,
115:23, 124:4,
124:5, 124:7,
124:15, 124:16,
142:2, 143:8
proposal 20:11,
31:21, 73:23,
86:9, 94:11,
112:14, 119:5
proposals 36:20,
101:19
propose 11:9, 15:22,
34:7, 40:12, 65:1,
72:23, 116:10,
122:22, 131:20
Proposed 9:25,
15:20, 16:23,
17:5, 17:7, 34:4,
34:5, 36:15, 37:9,
44:5, 49:23,
49:24, 72:5,
76:22, 84:25,
88:25, 96:15,
98:22, 102:22,
106:16, 107:3,

107:5, 111:10,
120:22, 129:8,
130:6, 130:12,
130:14, 130:22,
131:9
proposing 17:14,
59:10, 125:13,
130:20
proposition 130:14
propriety 61:9
Proskauer 10:23,
33:2, 41:21, 56:16
prospect 77:3, 79:8
prosper 47:22
protect 55:14
protected 127:22
protecting 48:7
Protection 77:23,
79:13, 127:25,
128:11, 129:6,
129:11, 130:9,
130:11, 130:15,
132:3, 133:10
protections 77:15
prove 92:24, 99:9
provide 7:14, 7:24,
11:10, 12:1, 12:8,
24:8, 28:3, 37:11,
77:1, 77:23,
79:13, 112:15,
119:14, 129:5,
144:19, 145:2,
145:4, 146:4
provided 9:2, 43:19,
103:11, 117:7
provides 22:20,
25:19, 29:18,
39:11
providing 7:10,
37:14, 134:22,
145:24
proving 22:9
provision 28:23,
37:10, 37:16,
38:12, 39:13,
39:16, 39:21,
40:9, 42:16, 79:9,
81:4, 81:23,
84:17, 85:6,
88:24, 89:22,

90:24, 97:25,
107:7, 110:11,
110:22
provisions 7:19,
109:1, 110:14,
140:23, 141:3,
141:5
provoke 13:7
proxy 84:15
Public 2:5, 2:45,
6:7, 7:13, 7:24,
8:15, 8:17, 9:21,
13:16, 13:21,
25:8, 30:23,
38:10, 58:20,
132:20, 133:11,
133:22, 142:21,
146:25, 147:3
publication 33:13,
34:14
publications 35:8
publish 34:15
pure 49:3, 49:4
purely 66:20
purports 50:1
purpose 18:18, 77:22
purposes 9:10, 43:8,
43:22, 44:18,
45:14, 46:19,
59:7, 68:22,
89:10, 125:2
Pursuant 16:7, 18:5,
25:4, 81:19,
85:22, 147:11
pursuing 23:19
pushing 23:21
put 13:13, 56:8,
61:21, 64:10,
74:11, 80:11,
85:3, 91:6, 123:3,
132:13, 135:9
puts 120:5
putting 120:18,
121:1, 131:11
puzzle 54:10


< Q >
qualifying 16:5,
17:8

quality 7:10
query 61:18
question 20:19,
30:2, 30:7, 35:24,
36:2, 54:23,
80:12, 100:3,
103:17, 104:1,
104:2, 116:1,
125:16, 129:12,
136:15, 142:3,
148:2
questionable 59:14
questions 13:4,
15:21, 24:11,
27:15, 33:24,
34:3, 46:17, 56:8,
119:8, 138:21,
146:12
quick 66:23, 111:13,
131:9, 143:3
quicker 110:2
quickly 24:4, 82:21,
95:23, 133:15
Quinn 63:14, 76:19,
121:11
quite 6:7, 38:8,
71:5, 112:25,
128:12
quo 120:23
quote 59:10
quoting 146:19


< R >
R. 2:27, 3:46
raise 34:2, 45:5,
60:21, 69:16,
71:23, 72:17,
75:7, 107:17
Raised 13:5, 53:2,
60:22, 71:20,
75:6, 80:23,
86:10, 86:11,
86:12, 103:13,
107:17, 140:9
ramifications 64:11,
76:7, 120:17
Ramirez 3:13
Ramon 2:26
Ramos 3:46, 113:5

rapid 20:11
RAPISARDI 3:37,
24:12, 24:17,
24:19, 24:21,
27:16, 65:15,
66:9, 70:11, 73:6,
73:7, 73:9, 73:12,
73:13, 73:16,
73:19, 73:21,
74:4, 74:23,
76:25, 144:4,
145:11, 145:12
Rapisari 122:15
rate 17:2
rather 92:24, 101:9,
103:16
Re 1:6
reach 25:6, 70:20,
86:24, 104:4,
106:8, 143:25,
146:24
reached 134:21,
143:23
reaching 124:13,
137:10
reaction 69:10
read 34:9, 34:10,
40:3, 46:1, 49:19,
77:3, 80:19,
110:21, 128:22,
128:24, 129:2,
130:18, 130:20
readers 35:7
readily 8:14
reading 28:22, 55:7,
96:17, 96:19,
98:22, 130:12,
131:13, 135:4,
135:10
ready 18:24, 85:5
real 55:3, 55:4
reality 56:6,
110:17, 119:24
realize 43:13, 94:8,
96:9
Really 35:14, 40:15,
40:23, 44:2,
44:13, 45:23,
46:6, 50:10,
64:20, 69:19,

74:13, 74:21,
77:3, 91:15,
101:14, 102:5,
103:5, 119:21,
123:2, 129:16,
129:19
reargue 106:22
reason 28:20, 45:12,
64:15, 98:19,
110:24, 111:2,
118:6, 126:20,
136:10
reasonable 26:14,
83:13, 83:18
reasonably 108:4
reasons 19:10, 24:8,
46:17, 47:14,
141:6
rebuffed 66:4
receive 14:19, 30:1,
37:11, 102:9,
115:7, 115:12
received 10:1, 32:2,
120:4
recent 72:10
recently 16:18,
18:20, 26:17,
98:14, 100:18,
139:9
recess 112:3
recognition 43:7
recognize 12:17,
26:23, 28:13,
63:18, 135:8
recognized 26:6,
54:14
recognizes 25:13
Recognizing 11:18,
133:14
recollection 130:6
recommendations
15:16
reconvened. 112:4
recoop 67:8
record 39:5, 39:15,
41:2, 47:10, 52:6,
53:21, 111:21,
115:14, 120:2,
121:11, 127:6,
133:8, 137:1

recorded 4:36
recordings 9:3
records 52:9
recourse 48:15
recoursed 48:17
redline 80:16, 80:18
redraft 109:1
reduce 102:15
Reed 20:7, 113:5,
113:6
refer 40:16, 113:19
reference 36:20,
40:15, 42:20,
43:3, 43:15, 82:7,
84:20
referenced 134:4
references 36:13
referred 87:7
referring 67:5,
87:1, 87:6
refine 105:17
refinement 102:22
refining 106:7
reflect 36:17, 56:6
reflecting 41:6
Refojos 1:30
reform 25:20, 27:11
reforms 12:11
refrain 85:11
refuse 37:11
refused 143:9
regard 61:1
regarding 28:18,
31:1, 32:5, 82:16,
84:17, 106:19,
114:10, 115:5,
143:10, 143:14,
144:9
regardless 122:2
Region 27:24, 32:6
register 38:8, 38:18
registered 117:9
regular 99:13,
129:4, 130:3,
131:11, 131:17
reimburse 39:22,
40:8, 40:23
reiterate 133:19
reiterated 139:9
reiteration 42:24

relate 42:18
related 40:8, 46:24,
60:10, 75:4, 75:8,
88:5, 93:21, 141:3
relates 42:23, 75:6,
77:6, 82:5, 109:4
relating 9:14, 28:4,
138:23, 138:24,
138:25, 147:19
relegated 20:23
releif 51:20
relevant 70:10,
74:12, 75:1, 81:5,
81:9
relief 51:16, 83:24,
84:25, 109:8,
109:17, 110:3,
111:4, 117:15,
143:14
rely 105:18
remain 24:9, 52:23
remaining 86:6
remains 64:15, 124:6
remark 142:8
remarks 6:9, 24:25,
27:14, 29:10,
46:21, 47:23,
59:3, 63:21,
100:21, 102:18,
146:19
remember 27:2, 64:25
remind 106:25
remiss 111:15
removed 109:23
rendered 21:5
rendering 11:25
renegotiate 25:6,
146:24
renegotiated 16:18
renegotiation 147:10
renotice 131:15,
131:17, 131:25
renoticing 131:21
reorganization 16:9,
19:22
repayment 18:10
repeat 60:20, 103:22
replace 121:7
replies 83:3
reply 128:13

report 10:13, 11:10, 11:14, 13:6, 28:3, 28:21, 45:11, 62:9, 147:17
Reporter 149:15
reporters 8:25
reports 100:5
represent 30:3, 101:5, 101:8, 133:21, 142:19
representation 30:1, 50:12, 133:18, 134:16, 141:21
representations 108:23
representative 10:25, 19:14, 19:16, 19:17, 24:24, 27:17, 28:2, 33:3, 37:22, 41:3, 41:22, 45:21, 55:18, 65:1, 65:19, 65:20, 103:18, 104:11, 107:25, 123:23, 123:24, 141:15, 141:23, 141:24, 146:16
representatives 6:6, 18:20, 25:15, 29:8
represented 60:4, 60:12, 75:10, 102:4, 145:6
representing 12:23, 120:8, 120:9, 124:14, 126:23, 133:9
represents 10:18
request 28:8, 32:8, 37:5, 60:9, 60:10, 71:24, 72:2, 82:13, 83:16, 96:8, 98:16, 99:16, 100:20, 101:14, 108:22, 109:18, 110:4, 112:6, 112:20, 126:8, 126:10, 129:17, 131:18, 132:16, 139:9,

140:6
requested 11:10, 31:13, 41:10, 51:20, 83:13, 100:8, 100:23, 139:5
requesting 28:2, 38:24, 39:2, 83:24, 84:25, 98:24
requests 10:6, 83:7, 83:11, 109:17, 111:2, 134:8, 138:19, 146:2
require 18:15, 26:2, 40:3, 80:6, 82:2, 101:12, 101:24, 104:19, 108:2, 128:12
required 39:24, 40:16, 94:19, 96:5, 103:10, 106:4, 117:8
requirement 22:17, 42:24, 82:12, 85:10, 132:2
requirements 22:16, 22:23, 26:21, 101:11, 105:20, 130:10, 130:16
requires 23:23, 31:6, 48:7, 102:14, 128:23
requiring 98:23
rerouted 20:17
reserved 111:20
residents 11:21, 48:1
resides 14:8
resolution 18:14, 26:14, 27:4, 55:5, 68:13, 69:23, 70:14, 70:21, 71:9, 86:19, 86:24, 113:8, 114:12, 116:7, 122:3, 142:14, 143:23, 143:25, 148:3
resolve 59:12,

83:14, 99:15, 117:19, 118:4, 134:24
resolved 14:5, 17:22, 39:11, 64:3, 97:22, 97:23, 106:18, 127:3
resources 14:1, 18:4, 48:22, 67:13, 68:1
respective 12:3, 32:12
respond 50:23, 52:14, 86:14, 100:8, 107:14, 127:7, 140:22
response 28:1, 30:9, 46:22, 46:25, 61:17, 73:12, 80:4, 84:19, 86:2, 100:5, 105:17
response. 107:12
responses 28:11, 46:17, 83:22, 138:20, 138:21
responsibilities 28:6, 31:5, 139:13
responsibility 12:9, 25:10, 30:16, 65:24
responsive 42:1
rest 44:20, 57:11
restraint 135:20
restricted 140:16
restructure 23:16, 25:6, 146:24
restructured 16:11
restructures 23:14
restructuring 9:13, 12:18, 16:4, 25:20, 27:6, 27:11, 51:3, 123:24, 138:8, 139:22, 139:25, 147:10
restructurings 15:7
result 12:19, 52:22, 71:22, 114:18, 143:12

results 17:5
resume 100:14, 112:1
retain 40:15
retaining 7:11
retains 56:5, 82:16
retention 33:18,
    38:3
Retiree 2:10, 28:14,
    28:16, 30:11,
    30:12, 132:12,
    132:17, 133:12,
    133:18, 133:20
Retirees 29:24,
    29:25, 30:3, 30:5,
    133:11, 133:21
Retirement 14:15,
    133:10, 135:13
retirements 7:15
retructuring 26:17
returned 67:14
returns 7:20
revenue 20:22,
    20:23, 40:10,
    87:14, 87:17,
    87:18
revenues 14:19,
    14:21, 14:23,
    20:16, 20:25,
    21:1, 87:22,
    87:23, 88:3, 143:7
review 22:21, 28:8,
    31:14, 31:21
reviewed 112:8
revise 129:8, 147:8
revised 86:8, 96:10,
    111:7, 111:9
revision 37:1,
    88:23, 106:7
revitalization 15:20
Rican 101:15,
    144:23, 146:21
Ricans 54:2
Rifkind 66:15
rigamarole 57:10
rights 6:23, 23:4,
    48:2, 56:3, 60:9,
    88:21, 90:6,
    110:1, 111:17,
    111:20, 121:2,
    122:25, 124:15,

125:7
rise 20:24, 22:14,
    63:18, 66:22,
    114:17, 126:21
Rivera 2:26
road 97:11, 130:11
Robert 2:11, 133:9
Roberto 1:40, 2:35
Robin 124:19, 132:23
role 25:2, 25:5,
    25:13, 29:24,
    53:8, 61:3, 134:1,
    135:22
roles 26:25
Romanello 2:49
room 12:2, 12:17,
    78:1, 97:19,
    145:16, 146:9
rope 70:10
Rose 10:23, 33:2,
    41:21
Rosenberg 2:22,
    66:14, 66:15,
    66:18, 124:20,
    124:25
round 111:10,
    118:22, 132:23
routine 70:4
Rule 35:25, 48:7,
    54:10, 102:14,
    110:21, 110:24
rules 81:5, 81:8,
    81:9, 96:24, 97:4,
    97:11, 99:1,
    101:23, 104:5,
    116:15
ruling 58:10, 61:3,
    61:6, 61:7, 63:1,
    90:10, 116:18
run 54:18, 77:9,
    78:15, 100:23
runs 10:8
Russell 124:19


< S >
S. 3:18
S/ 149:13
Sachs 3:5
sacrifices 8:3

safe 23:20
safety 7:13
Saleh 3:38
Sales 11:1, 13:25,
    17:24, 18:1, 18:3,
    48:14, 48:18,
    48:21, 49:15,
    70:2, 78:2, 78:7
salient 137:11
Salvatore 2:49
San 1:10, 6:1
sanction 69:20
sanguin 79:8
Santander 53:24
Santos 3:44
satisfactory 53:16,
    117:10
satisfied 7:3
satisfies 132:2
saw 85:9, 97:19,
    112:7
saying 45:2, 49:11,
    51:8, 56:22,
    74:21, 95:17,
    107:19, 109:7,
    115:13, 122:8,
    146:1
says 28:23, 34:9,
    37:14, 38:23,
    39:22, 42:23,
    45:22, 77:20,
    81:4, 93:17,
    110:23, 115:18,
    122:12, 129:17,
    130:5
scale 6:17
scenario 118:15
Schaffer 3:45, 113:6
schedule 35:20,
    37:6, 43:19, 76:3,
    76:9, 81:20,
    82:18, 89:3,
    91:13, 92:19,
    93:22, 94:4,
    94:19, 96:12,
    96:23, 98:1,
    100:14, 107:5,
    108:9, 108:11,
    108:16, 112:15,
    119:5, 119:13,

121:15, 128:3,
129:4, 131:9,
132:4, 142:12
scheduled 54:25,
92:10, 92:15,
92:16, 94:3,
146:10
schedules 93:6, 98:4
Scheduling 76:12,
82:16, 83:7, 83:9,
83:10, 83:22,
84:20, 85:9,
89:25, 96:15,
100:18, 110:14,
116:1, 116:6,
117:12, 117:22,
118:4
SCHEPPER 37:23,
38:1, 38:15,
38:19, 41:1,
103:20, 103:24,
104:6, 104:16
school 133:23
scope 6:17, 73:25
Scott 1:27, 11:3,
32:22, 33:2,
102:24
Scratch 46:14
screen 15:15
seat 58:14
Second 12:22, 17:21,
25:21, 42:22,
81:12, 113:12,
129:17, 129:20
seconds 63:23,
66:23, 66:24, 75:4
Secretary 48:24
Sections 12:8, 16:7,
134:18
sector 133:22
sectors 133:22
secured 55:13,
114:1, 114:2,
117:1, 141:7
securities 35:5
securitization
48:12, 123:9
security 38:25,
39:3, 39:8, 124:6
Seda 4:8

seeing 36:19
seek 89:12, 129:18
seeking 82:11, 88:7,
129:6, 130:6,
143:13
seeks 77:12
seem 57:25, 65:16,
77:11
seemed 72:1, 130:12
seems 38:21, 40:2,
58:7, 64:10,
121:19, 123:5
seen 60:5, 64:15,
65:4, 71:18,
84:12, 140:1,
140:3
sees 84:4
selected 12:3, 12:5,
62:3
selection 32:5, 60:1
self 132:24, 132:25
selling 49:13
semblance 109:19
send 34:7, 78:14
Sending 77:18
Senior 2:30, 59:3,
63:15, 66:1, 66:2,
114:1, 114:3,
114:14, 114:15,
114:18, 114:22,
115:18, 117:1,
117:24, 122:2,
122:21, 122:23,
123:6, 126:15,
132:21
Seniors 44:3, 63:16,
69:15, 75:10,
75:15, 76:2,
76:20, 121:7,
121:12, 122:6,
124:25
sense 29:13, 29:16,
35:15, 42:11,
44:13, 121:15,
127:13
senses 139:23
sent 78:7, 81:24
sentence 37:18,
37:23, 38:3,
129:17, 129:20

sentiment 135:3
separate 9:20,
19:17, 25:18,
30:3, 61:20,
67:24, 127:24
September 92:2
Sepulvado 3:46,
113:5
sequence 76:16
serious 139:25
serve 101:22,
101:23, 102:5,
102:13, 104:3,
104:4, 104:13,
104:20
served 31:7, 34:6,
101:12, 101:21,
101:24, 103:15,
105:3
service 7:16, 20:15,
22:5, 22:8, 22:12,
33:12, 102:12,
103:1, 103:11,
104:15, 104:23,
105:7, 105:9,
106:3
services 7:24, 12:1,
37:11, 37:15,
39:23, 40:5, 40:9,
40:17, 43:21,
101:9
serving 102:10
sessions 145:18,
147:25
set 26:9, 49:25,
84:14, 99:4,
117:17, 128:12,
130:10, 130:15,
145:3
sets 96:16
setting 70:2,
112:17, 130:9
settle 41:6, 68:23
settled 21:20,
40:20, 79:1, 111:7
settlement 15:23,
17:22, 18:15,
19:2, 19:3, 19:8,
59:11, 62:9,
62:11, 68:13

settlements 22:1
setup 19:15
Seven 11:7, 39:10,
   141:1
seven. 83:3
several 6:24, 20:11,
   22:16, 44:23, 45:8
Sewer 14:12
shakes 63:4
shall 30:6, 37:14,
   39:22, 48:22,
   48:23
shape 41:4, 140:13
share 67:19, 67:20,
   68:1, 68:11, 85:4
shares 138:5
sheer 82:21
shift 90:8, 98:3
shifted 92:22
shifts 90:15
shock 146:14
short 24:13, 24:16,
   54:9, 69:8, 86:4,
   89:15, 125:22,
   133:14
shortage 14:23
shouldn't 45:4,
   92:22, 92:23
shout 73:15
shouts 132:22
Show 76:12, 86:7,
   90:15, 92:22,
   98:7, 100:20,
   111:3, 112:6,
   116:11, 120:4,
   120:21
showing 98:24
shown 135:19
shows 22:4, 22:10
side 19:17, 19:18,
   20:1, 24:1, 56:13,
   62:13, 62:18,
   62:23, 74:12,
   75:2, 79:6, 97:11,
   97:19
sides 18:13, 19:1,
   45:18, 47:2,
   67:25, 70:23
sign 131:24, 132:7
signal 35:9

signature 36:12,
   37:5, 127:24
signed 16:21, 25:4,
   113:12, 146:22,
   147:12
significant 6:14,
   15:9, 56:25, 77:2,
   121:21
signing 39:4, 50:16
silence 111:18
similar 107:17
Similarly 68:3,
   90:20
simple 135:4
simplified 103:5,
   103:12
simplifies 130:20
simplify 103:2
simply 7:23, 10:17,
   14:4, 33:24,
   57:16, 57:18,
   67:13, 67:15,
   67:17, 108:2,
   124:7, 129:5,
   134:17, 145:25
single 17:24
Sir 86:16, 136:8,
   145:10
sit 73:10, 100:6,
   146:9
site 145:19
sitting 135:25
situation 14:3,
   15:25, 56:7,
   77:24, 105:22,
   135:16
situations 21:23,
   89:20, 134:11,
   134:13
six 14:25, 33:6,
   37:9, 37:18,
   41:18, 43:3,
   81:12, 92:4,
   95:11, 97:3,
   122:20
size 16:3, 105:11
Sizemore 3:47, 113:6
slight 88:23
slower 87:4
slowly 43:12

smack 61:10
small 101:15,
   102:16, 105:5
Smith 3:7, 20:7,
   113:5, 113:7
Snow 106:14
sole 25:6, 146:23
solely 42:18, 48:17,
   61:8, 71:4
solemn 11:19
solicitation 32:5,
   33:19, 141:17
sollutions 66:3
solution 19:11,
   47:25, 48:1,
   54:12, 59:10,
   66:6, 76:22, 123:5
solving 51:3
somebody 56:5, 72:2
somehow 32:22,
   123:7, 145:24
someone 93:16,
   104:23, 109:11
sometimes 63:16,
   73:4, 82:23
somewhat 16:19,
   118:18
somewhere 35:7,
   85:16
Sonia 2:36
soon 21:16, 95:23,
   119:4
Sorry 58:15, 69:1,
   73:10, 73:16,
   76:15, 87:5,
   97:19, 113:3,
   113:11, 114:1,
   116:3, 132:6
sort 34:8, 37:18,
   55:22, 74:12,
   75:2, 92:4, 93:2,
   107:18, 110:18,
   113:1, 129:19
sorting 52:9
Sosland 3:27,
   106:13, 107:2,
   107:17
sought 51:16
sound 16:2, 73:18
source 17:24, 18:10

Southern 119:3
space 8:17, 32:3
Spanish 24:23, 34:8,
   34:10, 34:18,
   35:10, 35:13,
   144:19, 144:25
sparing 111:2
speaker 144:3
speakers 35:10
speaking 10:17,
   10:19, 32:12,
   94:9, 136:4
speaks 61:24
special 11:19, 19:3,
   48:19, 87:14,
   87:17, 87:18,
   87:22, 87:23
specially 12:2, 12:5
specific 18:18,
   42:12, 42:13,
   42:15, 43:7, 49:7,
   51:1, 51:4, 51:13,
   52:6, 52:10,
   62:12, 62:19,
   65:10, 74:11,
   79:13, 80:5,
   84:20, 88:10,
   102:14, 106:16,
   106:23, 130:10,
   138:16
specifically 56:11
specificity 79:6
specifics 147:22
specified 34:14
specifies 38:9
specify 44:8
speed 23:22
speedy 88:21
spent 7:16, 45:11
spirit 44:10, 134:17
spoke 128:17
spoken 18:20, 59:9
stability 138:7,
   139:13
staff 12:24, 94:24,
   148:9, 148:10,
   148:11
stake 27:3
stale 140:2
stamp 64:3

STANCIL 2:23,
   124:18, 124:19,
   125:19
stand 56:13, 113:1
standard 81:23,
   103:3
standards 15:18,
   31:15
standing 18:24,
   44:16, 45:2, 45:5,
   45:7, 47:3, 50:18,
   54:14, 55:12,
   55:13, 55:22,
   56:3, 56:11,
   56:18, 56:22,
   56:24, 57:3,
   57:17, 58:1, 58:3,
   58:6, 65:1, 68:7,
   106:4
starkly 142:5
start 11:18, 17:2,
   32:22, 32:23,
   63:2, 71:20, 83:1,
   94:21, 102:17,
   107:19, 110:23
started 69:4
starting 69:16,
   74:13, 78:12
starts 78:1, 78:8,
   107:8
state 10:17, 11:24,
   37:24, 104:9,
   111:20, 126:7,
   127:14, 145:8
stated 128:25,
   141:7, 143:21,
   144:18
statement 24:13,
   24:16, 78:22
statements 66:23,
   125:10, 133:3,
   140:1, 140:4,
   141:21, 143:21
States 1:1, 1:18,
   9:3, 11:15, 11:23,
   12:5, 27:18, 28:2,
   28:22, 28:23,
   29:3, 29:4, 29:6,
   29:14, 29:20,
   30:25, 31:12,

32:2, 43:11,
   141:16, 149:7
status 10:13, 11:10,
   11:14, 13:6, 28:3,
   28:21, 45:11,
   62:9, 95:14,
   100:5, 109:6,
   109:12, 110:2,
   120:22, 136:16,
   147:17
Statute 28:23,
   45:22, 64:17,
   64:23, 65:10,
   65:22, 98:2,
   110:18
statutes 123:23
statutorily 66:9
statutory 12:7,
   23:1, 77:13,
   87:24, 87:25,
   103:6
Stay 77:12, 87:21,
   88:22, 90:23,
   91:5, 92:7, 92:8,
   93:5, 93:6, 93:10,
   93:12, 93:17,
   95:18, 97:24,
   108:24, 110:11,
   115:21, 126:5,
   126:8
staying 120:24
stays 125:14
steal 60:22
stenography 4:36
step 65:18, 105:2,
   128:8
steps 26:12, 62:16,
   63:8
stipulate 118:16,
   123:3
stipulating 112:24
stipulation 127:22,
   128:1
stop 28:20
stopped 65:21
stops 113:16
story 61:1
strains 12:24
straw 32:23, 86:4
streams 20:22, 20:23

streets 135:18
strike 37:23, 38:2
strive 13:6
striving 23:13
strong 104:25,
    122:15
stronger 7:9, 27:12
strongly 50:19,
    50:20
structural 27:10
structure 19:19,
    52:4, 66:10,
    127:19, 147:21,
    148:6, 148:13
structures 47:18
stunning 141:25
subdivisions 147:4
Subject 14:21,
    20:17, 22:21,
    24:11, 26:19,
    33:8, 40:10,
    40:21, 68:19,
    69:17, 75:23,
    99:24, 124:6,
    138:15
subjects 32:1
submission 31:21,
    49:19
submissions 10:1,
    68:19, 110:10
submit 35:17, 36:25,
    49:9, 85:22,
    134:15, 146:5
submitted 26:22,
    80:16
subordinant 122:4
subordinate 122:22,
    123:2
subordinated 114:2,
    114:3
subs 121:8, 124:24
subsequent 90:18
subsequently 89:18
subset 59:11
subsidiary 147:5
substance 98:19
substantial 54:22,
    64:11, 75:15,
    148:16
substantially 143:18

substantive 61:10,
    66:21, 79:19,
    84:3, 90:6, 110:1
subsumed 46:20
succeed 47:22
successful 27:4
succinct 10:10,
    99:11, 133:15
sue 65:2
sued 65:2, 116:24
sufficiency 130:11
sufficient 17:2,
    89:9, 123:4,
    129:13, 145:4
suggest 23:7, 61:5,
    91:21, 92:5,
    109:15, 145:22
suggested 55:25,
    98:1, 107:9
suggesting 73:23,
    109:5, 109:10
suggestion 56:2,
    91:10
suggestions 86:25,
    91:8, 109:2, 148:6
suisponte 85:7
suit 104:25, 120:7
suite 81:25
summons 101:24
Sunday 128:14,
    131:12, 131:13
supercedes 39:13
superseded 39:16
supersedes 81:8
supervise 140:25
supplied 145:14,
    146:6
supplier 101:9
support 7:15, 66:19,
    75:22, 75:24,
    80:5, 137:15
supporting 126:19
supposed 76:5
Supreme 12:6, 19:7
surface 53:7
Surprise 118:20,
    141:22
surprisingly 20:18,
    22:13
Susheel 2:31, 63:14,

76:19, 121:11
suspect 96:1
sustainability 22:7
sustained 27:9
Suzzanne 3:39, 36:5,
    123:18, 146:15
Swain 1:17, 6:10,
    10:20, 36:14,
    149:7
Swaindprcorresp
    84:10
sweep 55:9, 55:15
swift 27:3
switch 9:11
Sylvia 3:30
symmetrical 96:10
System 9:6, 9:7,
    9:9, 9:16, 9:17,
    14:15, 20:24,
    43:7, 43:10,
    50:13, 82:10,
    83:25, 101:22

< T >
T. 2:23, 36:14
table 48:3, 80:11,
    91:7, 94:12,
    135:14, 135:15,
    140:13
Taft 142:19
tail 92:2
taken. 112:3
talented 7:11
talked 68:24, 87:13,
    108:15, 122:9
tandum 23:19
targeted 118:18
task 24:1
tasks 15:9, 23:24
Tax 11:1, 14:19,
    14:21, 20:16,
    36:1, 36:6, 39:21,
    48:14, 48:18,
    48:21, 78:2, 78:7
taxes 13:25, 17:25,
    18:1, 18:4, 39:22,
    40:4, 40:8, 40:9,
    40:17, 40:19,
    40:24, 57:11, 70:2

taxing 39:25, 40:13,
  40:24
Taylor 1:17, 6:10,
  36:14, 149:7
teachers 133:22
team 94:24, 145:23
technical 55:21
Technically 81:14,
  118:23
technological 112:17
technologically
  118:8
Technology 113:15,
  118:23
teeing 120:14
telephone 8:20,
  52:12, 84:3, 85:1
telephonic 99:16
temptation 135:16
ten 44:12, 57:10,
  66:24, 83:2
term 20:13, 70:7
terms 67:17, 67:20,
  68:11, 74:1, 76:7,
  76:12, 77:5,
  79:10, 107:23,
  139:12, 147:23,
  148:12
terrific 46:7,
  123:13
thanks 144:10
theme 98:8
themes 110:6
themselves 55:16
theory 68:3, 95:11
They've 47:16, 53:6,
  66:10, 114:23
Thibert 3:8
thinking 29:14,
  41:24, 91:25,
  136:16
third 106:17
Thomas 2:14, 53:21
though 19:25, 66:22,
  123:8
thoughtful 78:17
thousand 119:20,
  133:21
thousands 54:1,
  54:2, 102:7,

119:15, 145:16
Three 11:21, 24:8,
  33:7, 33:8, 33:9,
  33:10, 34:16,
  34:18, 37:18,
  44:23, 63:17,
  66:25, 69:13,
  88:13, 91:14,
  106:16, 110:6,
  132:25, 135:10,
  137:7
threshold 49:22
throughout 43:20
throwing 42:4
ticks 21:25
tied 67:25
tight 89:3, 106:5
timeframe 76:13
timely 10:4, 10:6,
  17:20, 106:3
timetable 28:4,
  112:24
timing 14:4, 17:11
Tmt 19:7
together 7:7, 8:10,
  134:24, 145:21,
  146:7
toil 145:20
toll 88:3
tolls 88:4, 88:5
tomorrow 112:16
took 77:2, 121:14
tool 148:3
topic 75:4
torchlight 120:5,
  122:16
Torres 2:17, 125:24
total 142:22
totally 62:17
touch 125:5
touched 120:21
towards 7:21, 21:25,
  23:21, 60:18,
  144:16
track 109:17
tracked 88:25
tracks 22:3
trading 140:18
traditional 16:8
traffic 84:7

Trailer 19:7
training 15:17
Transcript 4:36,
  43:13, 149:4
transcription 149:5
Transcripts 8:24
transfer 71:24,
  72:16, 143:7
transferred 70:3
transferrees 71:1
transfers 57:8,
  70:17, 72:8, 79:11
transparency 31:22,
  63:6, 137:13,
  137:18, 139:14
transparent 63:8
travel 82:23, 99:15
Treasury 48:24
treatment 126:25
tremendous 135:20
trials 91:17
tried 103:1, 128:21
TRO 109:8
trouble 130:4
true 44:24, 54:20,
  60:1, 68:9,
  134:11, 149:5
truly 53:9, 64:19,
  105:22, 125:14
trust 6:18, 13:1
try 6:8, 19:2,
  65:17, 66:5,
  77:20, 78:15,
  80:25, 125:21,
  132:25, 133:14
trying 43:12, 44:21,
  77:4, 77:17,
  81:17, 90:8,
  90:11, 107:21,
  109:23, 109:24,
  110:1, 124:5,
  125:2, 125:17,
  131:7, 131:10,
  139:2, 143:22,
  145:23
turn 8:8, 10:12,
  17:1, 24:15,
  32:19, 66:4
turnaround 17:3
Turning 17:10,

39:10, 54:8
turns 113:13
Tweed 47:11, 120:2
two-thirds 16:5
type 9:8, 16:9,
  31:25, 79:2,
  90:18, 137:25,
  138:2
types 108:7, 113:18,
  126:23
typical 38:11,
  53:11, 104:5
typically 109:11

< U >
Ubaldo 1:29
Uhland 3:39, 36:5,
  118:1, 123:18,
  123:21, 128:19,
  128:20, 129:16,
  129:22, 130:8,
  130:23, 131:5,
  131:7, 131:15,
  131:17, 131:23,
  132:5, 132:9,
  141:20, 146:15
ultimately 19:25,
  26:20, 34:6, 35:6,
  62:23, 67:8,
  68:14, 85:4
unable 11:25
uncomfortable 71:7,
  98:6
uncompensated 23:24
uncontested 32:23,
  33:7, 33:9, 33:17,
  33:25, 34:1
undefined 58:6
underlying 43:10,
  47:4, 138:24
understand 25:2,
  30:13, 35:1,
  49:18, 49:20,
  59:15, 62:20,
  74:14, 75:12,
  75:20, 83:8,
  90:24, 97:8,
  97:25, 99:9,
  115:8, 115:25,

116:22, 118:8,
  124:23, 126:3,
  128:15, 130:17,
  134:3
understandable
  138:12
understanding 38:11,
  57:7, 57:14, 60:1,
  76:1, 100:7
understands 106:9
understatement 12:13
understood 55:17,
  61:3, 61:14
undertake 38:13
undertaking 110:16
unfair 145:25
Unfortunately 86:25
unfunded 13:16
uninsured 86:19
unique 64:19
United 1:1, 1:18,
  9:3, 11:15, 11:23,
  12:5, 27:18, 28:2,
  28:22, 28:23,
  29:3, 29:4, 29:6,
  29:14, 29:20,
  31:12, 32:2,
  43:10, 141:16,
  149:6
universe 17:9, 29:7,
  104:20, 105:5,
  106:2
University 14:13
Unless 11:9, 37:15,
  42:18, 46:16,
  50:7, 101:23,
  102:14, 103:11,
  103:13, 119:8,
  126:25, 132:22
unnamed 65:3
unnecessarily 57:4,
  126:13
unnecessary 13:12
unsecured 28:18,
  29:3, 29:21, 30:4,
  60:25, 61:2
unsecuted 28:12
unspecified 77:22
unsympathetic 103:13
until 57:20, 57:23,

59:4, 70:15,
  75:16, 93:18,
  95:7, 100:22,
  113:16, 116:15,
  117:19, 123:4,
  126:25, 129:22
untowardly 107:21
unusual 110:19
updated 36:17
UPR 17:9
urge 76:9, 79:16,
  123:11, 125:20
urgency 98:7, 99:14,
  126:3
Urgent 83:12, 83:15,
  83:17, 84:6, 84:9,
  84:19, 84:21,
  84:24, 89:2,
  92:22, 96:8,
  96:13, 96:21,
  96:22, 97:5,
  98:12, 98:16,
  98:23, 99:2, 99:3,
  99:5, 108:20,
  109:8, 109:17,
  110:3, 110:22,
  111:4, 126:10,
  128:9, 131:22
uscourts 84:11
useful 26:13, 36:18,
  133:2
using 99:5
usurp 134:1
utilities 51:6,
  52:15, 52:17,
  52:22, 100:19,
  128:11
utility 14:9, 51:13

< V >
vacuum 91:12
vaguer 79:17
valid 20:20, 125:7
validity 50:2,
  125:1, 125:5,
  125:10, 125:16
valuable 8:4
value 7:14
Vankirk 2:18

variance 81:8, 96:9
varied 89:21
variety 26:23
Various 64:3, 114:8,
   117:20, 142:21,
   146:4
vehicle 48:12, 57:18
versa 50:21, 52:3
version 34:9, 80:16,
   80:19, 93:5, 103:2
versions 35:13
versus 67:15, 67:16
vested 25:5, 27:3
VI 16:4, 16:7, 17:5,
   23:13, 26:18,
   135:11, 146:18
vibrant 7:12
vice 38:2, 50:20,
   52:2
Vicenty 4:11
video 8:19
view 18:2, 45:17,
   63:22, 66:20,
   74:18, 89:13,
   138:8, 141:5
viewpoint 17:25
views 23:5, 23:6,
   100:8, 136:24,
   142:25
vigilent 71:22
vigorous 50:14
violates 22:15,
   23:3, 143:5
violations 23:1
Virtual 4:11
virtually 13:16,
   31:10
virtue 40:10, 67:12
visibility 109:14
volume 82:21
voluntarily 93:22
voted 16:6
votes 26:21


< W >
W. 3:6
Wait 57:23, 59:4,
   73:7, 73:14,
   92:20, 93:18,

95:12, 95:13,
   95:25, 97:6
waived 89:14
waiver 88:21, 89:1,
   89:4, 90:24, 93:8,
   93:13, 98:5
Walker 149:13,
   149:14
wall 61:20
wanted 28:21, 44:14,
   45:24, 50:22,
   60:7, 60:21,
   61:14, 65:9,
   68:10, 69:12,
   95:20, 96:17,
   107:11, 111:20,
   121:19, 128:17,
   136:15, 144:8,
   144:9, 144:12,
   145:8, 145:12
wanting 24:1, 118:9
wants 18:14, 23:11,
   24:14, 33:22,
   48:25, 49:7, 53:3,
   57:13, 75:21,
   92:13, 131:8
wary 59:21
watching 145:20
ways 29:18
wearing 85:12
website 8:16, 9:21,
   32:6, 38:16,
   81:14, 81:16, 82:7
websites 32:13
week 9:9, 92:1
weekend 118:10,
   118:13, 118:25
weeks 17:7, 34:16,
   34:19, 91:15,
   92:4, 95:11, 97:3,
   98:16, 148:14
Weiss 66:15
welcome 24:17,
   80:15, 132:9,
   148:4
well-being 6:16
wellbeing 138:6
Wharton 66:15
whatever 8:3, 26:12,
   52:8, 52:22,

61:11, 108:20,
   119:6, 121:3,
   127:20
whatsoever 65:18
whenever 91:5
Whereas 90:8, 94:17,
   96:5, 102:10
whereever 122:25
wherever 91:6
White 60:15
Whitebox 4:14,
   116:25, 117:7,
   117:9, 117:25,
   120:25, 125:24,
   126:17
whole 42:14, 63:2,
   133:2
wholeheartedly 68:6
whom 8:5, 36:19
Wickersham 142:19
widely 122:24
William 3:7
willing 76:25,
   105:8, 143:24
willingness 18:23
win 50:9, 51:24,
   51:25, 86:24
wind 17:6
wise 118:8
wisely 65:25
wish 47:7, 119:11,
   129:24
wishes 93:10
wishing 96:11
withdraws 131:22
within 21:12, 26:7,
   26:18, 52:20,
   90:9, 90:10,
   90:14, 92:10,
   92:11, 92:14,
   92:16, 93:11,
   94:4, 98:25,
   108:3, 114:3,
   114:11, 128:24,
   131:2, 131:3,
   147:7
without 11:18, 13:6,
   16:11, 45:20,
   57:12, 61:9,
   69:24, 70:6, 70:8,

70:24, 72:9,
75:18, 97:4,
115:24
withstanding 72:14
WITNESSES 5:3
wonder 29:12
wonderful 113:16
word 43:13, 43:14,
125:18
words 20:25, 121:14
work 7:7, 8:10,
16:23, 26:11,
38:14, 50:7, 63:5,
72:11, 72:19,
74:2, 74:8, 80:10,
81:10, 86:23,
93:3, 98:2, 106:7,
107:24, 119:5,
119:6, 119:13,
121:14, 121:25,
125:13, 129:8,
134:23, 147:23,
148:17
worked 74:9
working 7:16, 8:7,
69:22, 74:2, 85:2,
137:22, 142:23,
145:19
works 50:8, 74:7,
123:13
world 12:19
worn 65:16
worry 55:21, 72:3
worth 60:17, 66:25
writing 30:19, 84:4,
85:3
written 8:22, 38:23
www 32:7


< Y >
Yassin 3:38
year 22:11, 78:1,
78:5, 146:20,
147:12
years 65:5, 137:7,
142:25
yesterday 20:6,
51:14, 80:16
yield 53:3

yourself 59:20,
113:2
yourselves 132:24


< Z >
ZAKIA 3:14, 60:14,
61:14
Zeituni 2:27
Zequeira 2:10