Hearing Date: June 14, 2019
Objection Deadline: June 7, 2019

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>PUERTO RICO ELECTRIC POWER AUTHORITY,<br><br>Debtor. | PROMESA Title III<br><br>Case No. 17 BK 3283-LTS<br><br>(Jointly Administered) |
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*, Debtors.[1] | PROMESA Title III<br><br>Case No. 17 BK 4780-LTS |

## MOTION FOR PROTECTIVE ORDER REGARDING DEPOSITION NOTICES TO NELSON MORALES AND KEVIN LAVIN

---

[1] The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17-BK-3283 (LTS)) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17-BK-3284 (LTS)) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17-BK-3567 (LTS)) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17-BK-3566 (LTS)) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17-BK-4780 (LTS)) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

Pursuant to Federal Rules of Bankruptcy Procedure 7026 and 9014, and Federal Rule of Civil Procedure 26(c), made applicable to these proceedings by Section 310 of the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA") (48 U.S.C. § 2170), the Puerto Rico Electric Power Authority ("PREPA"), the Puerto Rico Fiscal Agency and Financial Advisory Authority ("AAFAF"), and Ankura Consulting LLC ("Ankura") (collectively, "Movants"), respectfully move for entry of a protective order quashing the notices of deposition to Nelson Morales (Exhibit D) and Kevin Lavin[2] (Exhibit E) issued by Cortland Capital Market Services LLC, SOLA LTD, Solus Opportunities Fund 5 LP, Ultra Master LTD, and Ultra BN LLC (collectively, the "Fuel Line Lenders").[3] In support of this Motion, Movants state as follows:

## INTRODUCTION AND BACKGROUND

1. In connection with the *Joint Motion of Puerto Rico Electric Power Authority and AAFAF Pursuant to Bankruptcy Code Sections 362, 502, 922 and 928, and Bankruptcy Rules 3012(a)(1) and 9019 for Order Approving Settlements Embodied in the Restructuring Support Agreement and Tolling Certain Limitations Periods* [Dkt. No. 1235] ("9019 Motion"), the Fuel Line Lenders have noticed the depositions of, among five other witnesses, Nelson Morales, the Chief Financial Officer of PREPA, and Kevin Lavin, the Co-President and Global Head of the Turnaround & Restructuring Practice of Ankura. Exhibit D, Notice of Deposition of Nelson Morales at 2; Exhibit E, Notice of Deposition of Kevin Lavin by Cortland Capital Market Services LLC, as Administrative Agent, and SOLUS at 2.

---

[2] As noted below, Mr. Lavin is a third party to this litigation. While the Fuel Line Lenders have served a Rule 30 deposition notice on the parties, they have not served a subpoena on Mr. Lavin as is necessary under Federal Rule of Civil Procedure 45, made applicable by Federal Rule of Bankruptcy Procedure 9016 and Section 310 of PROMESA.
[3] Cortland Capital Market Services LLC did not join the notice of deposition to Nelson Morales.

2

2. As PREPA's Chief Financial Officer, Mr. Morales leads PREPA's Finance Directorate, which is responsible for the financial and accounting aspects of PREPA's day-to-day operations. *See* Exhibit B, Declaration of Nelson Morales ("Morales Decl.") ¶ 2. These responsibilities include, among other things, day-to-day cash flow, budgeting, accounting books and records, and financial reporting. *Id*. ¶ 3.

3. Neither Mr. Morales nor PREPA's Finance Directorate participated in any negotiations or discussions that culminated in the execution the Definitive Restructuring Support Agreement dated May 3, 2019 (the "RSA"), entered into by and among PREPA, AAFAF, the Financial Oversight and Management Board ("FOMB"), the Ad Hoc Group of PREPA Bondholders ("Ad Hoc Group") and Assured Guaranty Corp. and Assured Guaranty Municipal Corp. (collectively "Assured"). *Id*. ¶ 4. Nor have Mr. Morales or PREPA's Finance Directorate been asked to evaluate the RSA or to otherwise offer their opinion on the merits of the agreement. *Id*. ¶ 5.

4. Ankura acts as financial advisor to PREPA and AAFAF and consults for PREPA on many issues. Among Ankura's roles is preparation of PREPA's fiscal plan for submission to the FOMB, and the preparation of reporting packages to the FOMB. *See* Exhibit C, Declaration of Fernando L. Batlle ("Batlle Decl.") ¶ 2. In or around August of 2018, Ankura was asked to advise PREPA and AAFAF on issues relating to the negotiations leading up to the RSA. *Id*. ¶ 3.

5. Mr. Lavin was not a member of the Ankura team that advised PREPA and AAFAF on RSA-related issues, and was not involved in Ankura's work advising PREPA and AAFAF with respect to the RSA, nor are there any plans for him to begin any work relating to the RSA in the future. *Id*. ¶ 5.

6. Mr. Lavin executed a short fact declaration two years ago in support of the *Opposition of Financial Oversight and Management Board for Puerto Rico to Motion of Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief From Automatic Stay* [ECF No. 149].[4] Mr. Lavin's declaration reported PREPA's projected Fiscal Year 2018 revenues and Current Expenses as of July 21, 2017. *Id.* ¶¶ 9-12. The Fuel Line Lenders propounded a discovery request for documents (Request No. 19) for "all documents relied upon or supporting paragraphs 9 through 12 of the Lavin Declaration."[5] AAFAF and PREPA objected on the grounds that the discovery request sought material that was privileged; overbroad, unduly burdensome, not proportional to the needs of the case to demand the collection, review and production of "all" responsive documents; and not relevant or reasonably calculated to lead to the discovery of admissible evidence relevant to the 9019 Motion.[6] Neither PREPA's July 2017 projection of what its revenues and Current Expenses would be for Fiscal Year 2018, nor Mr. Lavin's limited testimony relaying those projections, are germane to whether the RSA falls within the range of reasonableness, particularly since those projections were made a month before Hurricanes Maria and Irma decimated PREPA's electrical grid and billing infrastructure.

---

[4] Declaration of Kevin Lavin in Support of Opposition of the Financial Oversight and Management Board for Puerto Rico to the Motion of the Ad Hoc Group of PREPA Bondholders, National Public Finance Guaranty Municipal Corp., Assured Guaranty Corp., Assured Guaranty Municipal Corp., and Syncora Guarantee Inc. for Relief From the Automatic Stay to Allow Movants to Enforce their Statutory Right to Have a Receiver Appointed, Case No. 17-04780, ECF No. 149-1.

[5] *See* Exhibit F, AAFAF's Responses and Objections to First Set of Document Requests of Cortland Capital Market Services LLC, as Administrative Agent, and Solus Alternative Asset Management LP to Financial Oversight and Management Board for Puerto Rico, the Puerto Rico Electric Power Authority, and the Puerto Rico Fiscal Agency and Financial Advisory Authority, at 22, Case No. 17-04780 (May 29, 2019). PREPA's responses and objections to the Fuel Line Lenders' discovery request for documents is substantively identical to AAFAF's responses and objections.

[6] *Id.* at 22-23.

7. Permitting deposition testimony from Mr. Morales and Mr. Lavin would be disproportionate to the needs of litigating the 9019 Motion. Neither Mr. Morales nor Mr. Lavin can give any significant testimony that would be relevant to the issue before the court: whether the RSA falls below the lowest point in the range of reasonableness.[7] *See Allied Waste Serves. Of Mass., LLC (In re Am. Cartage, Inc.)*, 656 F.3d 82, 91-92 (1st Cir. 2011) ("The task of both the bankruptcy court and any reviewing court is to canvass the issues and see whether the settlement falls below the lowest point in the range of reasonableness . . . If a trustee chooses to accept a less munificent sum for a good reason (say, to avoid potentially costly litigation), his judgment is entitled to some deference." (citing *In re Thompson*, 965 F.2d 1136, 1145 (1st Cir. 1992))).

8. Under Federal Rule of Civil Procedure 26(b)(1) discovery is permissible only if it "'is relevant to any party's claim or defense and proportional to the needs of the case' considering the 'burden or expense of the proposed discovery.'" *Estate of Rosado-Rosario v. Falken Tire Corp.*, 319 F.R.D. 71, 76 (D.P.R. 2016). (quoting Fed. R. Civ. P. 26(b)). As set forth in the declarations of Nelson Morales and Fernando Batlle, who oversaw Ankura's work in connection with the RSA, neither Mr. Morales nor Mr. Lavin were involved in the negotiation of the RSA, nor did they conduct any analysis or provide any advice in connection with the RSA or RSA negotiations. Given Mr. Morales's and Mr. Lavin's lack of involvement with the RSA, their depositions are not likely to lead to the discovery of admissible evidence.

9. Moreover, because both Mr. Morales and Mr. Lavin are senior corporate officers, and Mr. Lavin is a non-party to this action, the Fuel Line Lenders must demonstrate that they have sought any relevant information from other sources. *See, e.g.*, *B. Fernandez & Hnos., Inc.*

---

[7] Movants reserve the right to subsequently object to other discovery requests or evidence on the grounds of relevance.

*v. Int'l Bhd. of Teamsters*, 285 F.R.D. 185, 186 (D.P.R. 2012) (granting protective order to bar deposition of top executive); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 193 (1st Cir. 2001) (finding deposition of third party to be an undue burden and upholding entry of protective order). Because the Fuel Line Lenders have not done so here, the deposition notices to Mr. Morales and Mr. Lavin should be quashed.

## ARGUMENT

10. Under Federal Rule of Civil Procedure 26(c), "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1)(A). "Under Rule 26, the trial court is required to balance the burden of proposed discovery against the likely benefit." *Gill v. Gulfstream Park Racing Ass'n.*, 399 F.3d 391, 400 (1st Cir. 2005). "The district court has the discretion to limit discovery. The court may limit discovery if it determines that 'the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive,'" *Ameristar Jet Charter, Inc..*, 244 F.3d at 193 (quoting Fed. R. Civ. P. 26(b)(2)(i)), and may limit discovery to be "proportional to the needs of the case," *SEC v. Navellier & Assocs., Inc.*, 2019 WL 688164, at *2 (D. Mass. Feb. 19, 2019) (internal quotation marks and citations omitted).

11. When a party seeks to depose a high-level corporate executive, courts are especially cognizant of the burdens imposed on the individual and the company, permitting the deposition to proceed only if the individual possesses specific or unique knowledge that cannot be obtained from lower-level employees or other sources. Thus, where, as here, the "deponent is a high-level corporate officer who certifies that he has no personal knowledge of the facts, the court may grant a protective order requiring the deposing party to first seek discovery through

6

less intrusive methods, *e.g.*, from lower level employees who are more likely to have direct knowledge." *B. Fernandez & Hnos., Inc.*, 285 F.R.D. at 186.

12. Here, Mr. Morales, PREPA's Chief Financial Officer, has provided a declaration attesting to his lack of knowledge regarding the RSA. Exhibit B, Morales Decl. ¶¶ 4-5. Similarly Fernando Batlle, who oversaw Ankura's advisory work in connection with the RSA, has provided a declaration attesting that Ankura's Co-President, Mr. Lavin, had no involvement in that work. Exhibit C, Batlle Decl. ¶ 5. But even if Mr. Morales and Mr. Lavin possessed any relevant information, because they are high-level corporate executives, the Fuel Line Lenders must first attempt to seek that information through less intrusive means. Here, the Fuel Line Lenders have noticed PREPA's 30(b)(6) deposition and the deposition of Mr. Batlle, and Movants are not seeking to quash either of those notices.[8] The Fuel Line Lenders will have an opportunity to depose witnesses from both PREPA and Ankura with knowledge of the RSA and can provide testimony that would be relevant to the issues before the Court on the 9019 Motion.

13. Accordingly, the burden and expense of two additional, irrelevant depositions of high-level executives who lack knowledge of the key issues implicated by the Motion should be precluded, particularly in light of the litigation schedule. *See B. Fernandez & Hnos., Inc.*, 285 F.R.D. at 186 (granting protective order to bar deposition of top executive); *see also Thomas v. Int'l Bus. Machines*, 48 F.3d 478, 483 (10th Cir. 1995) (upholding grant of protective order to bar deposition of senior executive who provided affidavit stating that he lacked personal knowledge of the relevant subjects); *Lewelling v. Farmers Ins. of Columbus, Inc.*, 879 F.2d 212, 218 (6th Cir. 1989).

---

[8] *See* Exhibit G, Notice of Deposition of Puerto Rico Electric Power Authority by Cortland Capital Market Services LLC, as Administrative Agent, and Solus, Case No. 17-4780; Exhibit H, Notice of Deposition of Fernando Battle by Cortland Capital Market Services LLC, as Administrative Agent, and Solus, Case No. 17-4780.

14. As set forth in the declaration of Mr. Battle, who is the Senior Managing Director of Ankura, Mr. Lavin was not a member of the Ankura team that advised PREPA and AAFAF on issues relating to the RSA, and was not involved in Ankura's work advising PREPA and AAFAF with respect to the RSA. Exhibit C, Battle Decl. ¶ 5. When a party seeks discovery from a non-party, courts require parties to show that the information sought from non-parties would not be cumulative or duplicative. *Ameristar Jet Charter, Inc.*, 244 F.3d at 193.

15. Similarly, as set forth in the declaration of Mr. Morales, Mr. Morales and his directorate did not participate in any negotiations or discussions that culminated in the execution of the RSA, or conduct any analysis to inform the RSA negotiations. Exhibit B, Morales Decl. ¶¶ 4-5. Allowing Mr. Lavin's and Mr. Morales's depositions to proceed would be a classic example of a "fishing expedition," undertaken "with the mere 'hope' that it will obtain such information," that courts regularly refuse to allow, especially when the subject of the request is a non-party. *Ameristar Jet Charter, Inc.*, 244 F.3d at 193 (finding deposition of third party to be an undue burden and upholding entry of protective order); *Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 187 (1st Cir. 1989) (holding that a party may not "undertake wholly exploratory operations in the vague hope that something helpful will turn up"); *Tolliver v. Fed. Republic of Nigeria*, 265 F. Supp. 2d 873, 880 (W.D. Mich. 2003) ("The mere hope that additional discovery may give rise to winning evidence does not warrant the authorization of wide-ranging fishing expeditions.").

## CONCLUSION

16. For the reasons set forth herein, Movants respectfully request that this Court enter a protective order barring the depositions of Mr. Morales and Mr. Lavin.

| | |
|---|---|
| Dated: June 5, 2019<br>San Juan, Puerto Rico | Respectfully submitted,<br><br>/s/ Luis Marini<br>Luis Marini<br>**MARINI PIETRANTONI MUÑIZ, LLC**<br>MCS Plaza<br>San Juan, Puerto Rico 00917<br>Tel: (787) 406-8555<br>Fax: (787) 936-7494<br><br>/s/ Elizabeth L. McKeen<br>John J. Rapisardi<br>Nancy A. Mitchell<br>Peter Friedman<br>(Admitted *Pro Hac Vice*)<br>**O'MELVENY & MYERS LLP**<br>7 Times Square<br>New York, NY 10036<br>Tel: (212) 326-2000<br>Fax: (212) 326-2061<br><br>Elizabeth L. McKeen<br>Ashley M. Pavel<br>(Admitted *Pro Hac Vice*)<br>610 Newport Center Drive, 17th Floor<br>Newport Beach, CA 92660<br>Tel: (949) 823-6900<br>Fax: (949) 823-6994<br><br>*Attorneys for Puerto Rico Fiscal Agency and Financial Advisory Authority, Puerto Rico Electric Power Authority, and Ankura Consulting Group, LLC* |