# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*<br><br>     Debtors.[1] | PROMESA Title III<br><br>Case No. 17-BK-3283-LTS<br><br>(Jointly Administered) |
| AMBAC ASSURANCE CORPORATION<br><br>     Movant,<br><br>v.<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br><br>     as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO,<br><br>     Respondent. | Case No. 17-BK-4780-LTS<br><br>**Re: ECF No. 7176** |

---

[1]   The Debtors in these Title III cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (*i*) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (*ii*) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (*iii*) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (*iv*) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (*v*) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747).  (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations.)

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO as
representative of the COMMONWEALTH OF
PUERTO RICO,

      Cross-Movants,

v.

AMBAC ASSURANCE CORPORATION,

      Cross-Respondents.

**URGENT MOTION OF THE FINANCIAL
OVERSIGHT AND MANAGEMENT BOARD FOR
ORDER PURSUANT TO FED. R. CIV. P. 12(b)(1)
AND 12(b)(6) DISMISSING AMBAC ASSURANCE
CORPORATION'S MOTION CONCERNING APPLICATION
OF THE AUTOMATIC STAY TO THE REVENUES SECURING
<u>PRIFA RUM TAX BONDS [ECF NO. 7176]; [PROPOSED] ORDER</u>**

# <u>TABLE OF CONTENTS</u>

**Page(s)**

## <u>CONTENTS</u>

JURISDICTION AND VENUE ..................................................................................3

RELEVANT BACKGROUND ..................................................................................4

    A.    PRIFA and the PRIFA Bonds ..........................................................4

    B.    The Trust Agreement and No-Action Clause ...................................6

    C.    The PRIFA Clawback Action ...........................................................9

    D.    The U.S. Treasury Action .................................................................9

RELIEF REQUESTED .............................................................................................10

BASIS FOR RELIEF ...............................................................................................10

    I.    THE STAY MOTION SHOULD BE DISMISSED BECAUSE IT IS BARRED AS A MATTER OF LAW BY THE TRUST AGREEMENT'S NO-ACTION CLAUSE. ...................10

    II.    BANKRUPTCY RULE 7012 SHOULD BE APPLIED TO THIS CONTESTED MATTER ..................................................................................13

CONCLUSION ........................................................................................................15

iii

To the Honorable United States District Judge Laura Taylor Swain:

The Financial Oversight and Management Board for Puerto Rico (the "Oversight Board" or "FOMB"), as sole representative of Debtor, Respondent and Cross-Movant the Commonwealth of Puerto Rico (the "Commonwealth" or the "Debtor") pursuant to section 315(b) of the *Puerto Rico Oversight, Management, and Economic Stability Act* ("PROMESA"),[2] respectfully submits this urgent motion for an order pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) dismissing *Ambac Assurance Corporation's Motion and Memorandum of Law in Support of Its Motion Concerning Application of the Automatic Stay to the Revenues Securing PRIFA Rum Tax Bonds* [ECF No. 7176] (the "Stay Motion"), filed by Movant and Cross-Respondent Ambac Assurance Corporation ("Ambac").

By order dated June 4, 2019 [ECF No. 7215], the Court set a briefing schedule for the Stay Motion and directed the parties to meet and confer and to provide a status report on June 10, 2019 relating to discovery and a hearing date for live testimony, if necessary.

The merits of Ambac's Stay Motion will trigger a torrent of hearing preparation and likely discovery consuming enormous time and resources. Because Ambac lacks standing and is contractually barred from bringing its Stay Motion and prosecuting the actions the Stay Motion is designed to allow Ambac to prosecute, the Oversight Board is bringing the instant motion to request that this gating issue be determined before all such time and resources are consumed.

As discussed in detail below, Section 705 of the Trust Agreement dated October 1, 1988 between PRIFA and Citibank N.A., as Trustee (the "Trust Agreement"),[3] provides "[n]o Holder of

---

[2]   PROMESA is codified at 48 U.S.C. §§ 2101-2241.

[3]   "In considering a motion to dismiss, the Court may properly consider "documents the authenticity of which are not disputed by the parties, documents central to plaintiffs' claim, and documents sufficiently referred to in the

any of the Bonds shall have any right to institute, appear in or defend any suit, action or proceeding in equity or at law on any Bond or for the execution of any trust hereunder or for any other remedy hereunder…." Trust Agreement § 705.  Section 701 of the Trust Agreement, entitled "Enforcement of Remedies," makes clear the enforcement of any PRIFA bondholder rights is reserved to the Trustee alone.  *See* Trust Agreement § 701.  No provision in the Trust Agreement permits any party other than the Trustee to institute, appear in, defend, or maintain any action on any Bond.

Through the Stay Motion, Ambac, in its capacity as alleged insurer and/or holder of certain PRIFA bonds, requests a ruling the stay does not apply, or, alternatively, stay relief, to pursue "certain anticipated lawsuits relating to PRIFA bonds," specifically the U.S. Treasury Action and the PRIFA Clawback Action.[4]  Stay Motion ¶ 1.  Each action, as well as Ambac's Stay Motion, is based on Ambac's status as alleged holder or insurer of PRIFA bonds issued pursuant to the Trust Agreement, and the actions request orders escrowing or otherwise controlling taxes Ambac asserts were transferred to PRIFA and secure the PRIFA bonds.  Simply put, Ambac is attempting to procure and control what it contends is its collateral for the PRIFA bonds.  Ambac's attempt is quintessentially an "action or proceeding in equity or at law on any Bond or for the execution of

---

complaint." *Claudio-de León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014) (quoting *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001)); *see also Zucker v. Rodriguez*, 919 F.3d 649, 651 n. 3 (1st Cir. 2019) ("This report, the authenticity of which is not disputed, is extensively quoted in the Administrator's complaint, has 'merge[d] into th[at] pleading[],' and may be properly considered on a motion to dismiss").  Ambac cites to, and relies upon, the Trust Agreement repeatedly in the Stay Motion (*see* ¶¶ 16, 48, 53).  The Trust Agreement clearly is central to Ambac's motion and proposed claim.  A true and correct copy of the Trust Agreement dated October 1, 1988 is attached and marked as **Exhibit A** (without page 1, which is not cited by Ambac in its motion and is not relevant to the discussion herein).  The Oversight Board notes that Ambac's motion references the Trust Agreement as being dated October 1, 1998, rather than 1988.  The Oversight Board is unaware of a trust agreement dated October 1, 1998 and assumes that this is a typographical error in the motion.  U.S. Bank Trust National Association is the successor trustee.

[4]   Capitalized terms used but not otherwise defined herein shall have the meaning given to them in the Stay Motion.

any trust hereunder or for any other remedy hereunder…" that the PRIFA bond Trustee alone may institute or maintain. Accordingly, the Trust Agreement contractually bars Ambac from bringing the Stay Motion, mandating its dismissal under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) for failure to state a claim due to Ambac's lack of standing.  By this motion (the "Motion to Dismiss"), the Oversight Board seeks an order substantially in the form of the [Proposed] Order attached hereto as **Exhibit B** (the "Proposed Order"), dismissing the Stay Motion.

Through an urgent scheduling motion, filed concurrently herewith, the Oversight Board respectfully requests that the Court set an expedited briefing schedule with respect to the Motion to Dismiss and scheduling the Motion to Dismiss for hearing at the June 12, 2019 Omnibus Hearing, or as soon as practicable thereafter.

On June 5, 2019, counsel for the Oversight Board explained the argument herein to Ambac and requested Ambac to withdraw its Stay Motion or provide its reason for not doing so.  Ambac disagreed with the Oversight Board's position.  The parties were unable to resolve the issue, and Ambac opposes the requested relief.

## JURISDICTION AND VENUE

1.      The United States District Court for the District of Puerto Rico (the "Court") has subject matter jurisdiction over this matter pursuant to PROMESA section 306(a).

2.      Venue is proper pursuant to PROMESA section 307(a).

3.      The statutory predicates for the relief sought herein are Section 2 of Article III of the United States Constitution, PROMESA section 306(a),  Bankruptcy Rules 7012 and 9014, made applicable to this case by PROMESA section 310, and Fed. R. Civ. P. 12(b)(1) and (b)(6)

incorporated by Bankruptcy Rule 7012. Bankruptcy Rule 9014 allows the Court to render Bankruptcy Rule 7012 applicable to this contested matter. *See* Part II, *infra*.

## RELEVANT BACKGROUND

### A. PRIFA and the PRIFA Bonds

4.      PRIFA was created in June 1988, by Act 44-1988 (the "Enabling Act"), to provide financial, administrative, consulting, technical, advisory, and other types of assistance to other public corporations, governmental instrumentalities, political subdivisions and municipalities authorized to develop infrastructure facilities and to establish alternate means for financing infrastructure facilities. *See* 3 L.P.R.A. §§ 1901, 1903.

5.      In previous years, PRIFA has received funding from, among other sources, the Commonwealth. The Commonwealth received a portion of certain excise taxes imposed by the federal government on imports of Puerto Rico rum and "covered into the treasury of Puerto Rico" (the "Rum Taxes."). 26 U.S.C. § 7652.

6.      The Commonwealth transferred certain of the rum excise taxes it received from the federal government to PRIFA pursuant to a Commonwealth statute, 3 L.P.R.A. § 1914. Under section 1914, "the participation shall be for an amount of up to one hundred and seventeen million dollars ($117,000,000), which when received by the Department of the Treasury of Puerto Rico, shall be covered into a Special Fund to be maintained by or on behalf of the Authority, designated

as the 'Puerto Rico Infrastructure Fund', and be used by the Authority for its corporate purposes…"

3 L.P.R.A. § 1914.[5]

       7.     PRIFA is empowered to pledge the Rum Taxes, subject to § 8 of Article VI of the

Constitution of the Commonwealth, as security for bonds. See 3 L.P.R.A. §§ 1906(m), 1907(a).

       8.     Pursuant to the Enabling Act and the Trust Agreement, PRIFA issued approximately

$1.612 billion in bonds ("Bonds," and holders of such Bonds, "Bondholders").

---

[5] 3 L.P.R.A. § 1914 provides:

    Beginning with fiscal year 1988-89, notwithstanding the provisions of Section 29A of Act No. 143 of June [30], 1969, as amended, the first proceeds of the federal excise taxes remitted to the Department of the Treasury of Puerto Rico on each fiscal year, pursuant to Section 7652(a) (3) of the United States Internal Revenue Code of 1986, as amended, for up to a maximum amount of thirty million dollars ($30,000,000), in the case of Fiscal Year 1988-89, for up to a maximum amount of forty million dollars ($40,000,000), in the case of Fiscal Years 1989-90 to 1996-97, for up to a maximum amount of sixty million dollars ($60,000,000), in the case of Fiscal Year 1997-98, for up to a maximum amount of seventy million dollars ($70,000,000), in the case of Fiscal Years 1998-1999 to 2005-2006, and up to a maximum amount of ninety million dollars ($90,000,000), in the case of Fiscal Years 2006-07 to 2008-09, and in subsequent years until Fiscal Year 2056-57, the participation shall be for an amount of up to one hundred and seventeen million dollars ($117,000,000), which when received by the Department of the Treasury of Puerto Rico, shall be covered into a Special Fund to be maintained by or on behalf of the Authority, designated as the 'Puerto Rico Infrastructure Fund', and be used by the Authority for its corporate purposes, which shall include the development of the infrastructure necessary and convenient for holding the Mayaguez 2010 Central American and Caribbean Games. In case the funds collected from said federal excise taxes are insufficient to cover the amounts herein appropriated, the Secretary of the Treasury is authorized to cover said deficiency with any funds available and the Director of the Office of Management and Budget, at the request of the Puerto Rico Infrastructure Financing Authority shall include for the budget recommended for the corresponding fiscal year the appropriations needed to cover said deficiencies.

    The Authority is hereby empowered to segregate a portion of said Funds into one (1) or more sub-accounts, subject to the provisions of Section 8 of Article VI of the Constitution of the Commonwealth of Puerto Rico for the payment of the principal and interest on bonds and other obligations of the Authority, or for the payment of bonds and other obligations issued by a benefited entity, or for any other legal purpose of the Authority. The moneys of the Special Fund may be used for the payment of interest and for the amortization of the public debt of the Commonwealth, as provided in said Section 8, only when the other resources available referred to in said Section are insufficient for such purposes.

9.      Ambac alleges it is a holder and/or insurer of $529 million or ~33% of Bonds.  Stay Motion ¶ 1.  It states that it directly owns $136 million of "those rum tax bonds."  (Stay Motion ¶ 26) and is subrogated to the rights of $167 million of Bonds.  Assuming no overlap between the Bonds it alleges it owns and Bonds it alleges it is subrogated to, Ambac owns or is subrogated to ~18.8% of Bonds.  Ambac does not allege in the Stay Motion that it can exercise the rights of Bonds it merely insures, but if it did, it would make no difference to Ambac's standing or lack thereof here.

**B.  The Trust Agreement and No-Action Clause**

10.      Article VII of the Trust Agreement sets forth the rights and remedies available to Bondholders and the Trustee.  Of particular relevance here is Section 705 of the Trust Agreement, which denies Bondholders any right to institute, appear in, defend, or maintain any action:

> SECTION 705.  <u>Restrictions Upon Actions by Individual Bondholders</u>. **No Holder of any of the Bonds shall have any right to institute, appear in or defend any suit, action or proceeding in equity or at law on any Bond or for the execution of any trust hereunder or for any other remedy hereunder**. It is understood and intended that **no one or more Holders of the Bonds** hereby secured shall have any right in any manner whatever by his or their action to affect, disturb, or prejudice the security of this Agreement, or **to enforce any right hereunder**, that **all suits, actions and proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the benefit of all holders** of such outstanding Bonds, and that any individual right of action or other right given to one or more of such holders by law is restricted by this Agreement to the rights and remedies herein provided.

Trust Agreement § 705 (emphasis added).  Section 705 is a type of indenture provision generally referred to as a no-action clause (here, the "<u>No-Action Clause</u>").

6

11.     Section 705 requires that "all suits, actions and proceedings at law or in equity shall be instituted, had and maintained in the manner herein provided and for the benefit of all holders." Section 701 provides only the Trustee can institute and maintain a suit, action, or proceeding:

> SECTION 701. <u>Enforcement of Remedies</u>. **At the request of the Holders of not less than twenty percent (20%) of the aggregate principal amount of Bonds then Outstanding, the Trustee shall proceed, subject to the provisions of Section 802 hereof, to protect and enforce its rights and the rights of the Holders under the laws of the Commonwealth or under this Agreement, including all rights with respect to funds and other moneys pledged hereunder, by such suits, actions or special proceedings in equity or at law**, or by proceedings in the office of any board or officer having jurisdiction, either for the specific performance of any covenant or agreement contained herein or in aid or execution of any power herein granted or for the enforcement of any proper legal or equitable remedy, **as the Trustee, being advised by counsel, shall deem most effectual to protect and enforce such rights**. In the enforcement of any remedy under this Agreement the Trustee shall be entitled to sue for, enforce payment of and recover judgment for, in its own name and as trustee of an express trust, any and all amounts then or after any default becoming, and at any time remaining, due from the Authority for principal, premium, if any, interest or otherwise under any of the provisions of this Agreement or of the Bonds and unpaid, with interest on overdue payments of principal; premium, if any, and interest at the rate or rates of interest specified in the Bonds, together with any and all costs and expenses of collection and of all proceedings hereunder and under the Bonds and maintain a suit, action or special proceeding in equity or at law against the Authority for any deficiency, all without. prejudice to any other right or remedy of the Trustee or of the Holders, and to recover and enforce any judgment or decree against the Authority, but solely as provided herein and in the Bonds, for any portion of such amounts remaining unpaid and interest, costs and expenses as above provided, and to collect, in any manner provided by law, the moneys adjudged or decreed to be payable.

Trust Agreement § 701 (emphasis added).

7

12.     The Trustee is required to exercise its remedial powers under Section 701 only (1) upon the request of 20% of Bondholders, and (2) if such Bondholders provide the Trustee an indemnity satisfactory to it, consistent with Trust Agreement section 802.[6]

13.     Section 704 is the only provision that provides Bondholders with any influence on remedial actions taken by the Trustee.  It enables Bondholders holding a majority of the bond debt, provided satisfactory indemnity is provided under section 802, "to direct the time, method, and place of conducting all remedial proceedings to be taken by the Trustee."  Trust Agreement § 704.[7] The Trust Agreement does not authorize or empower a Bondholder to commence any action on his, her or its own (even if the Trustee declines or unreasonably refuses to protect Bondholder rights) or to otherwise control the method of enforcement.

---

[6]   Section 802 provides, in full:

> Any other provis1ons of this Agreement to the contrary notwithstanding, the Trustee shall be under no obligation to institute any suit, or to take any remedial proceeding under this Agreement, or to enter any appearance or in any way defend in any suit in which it may be made defendant, or to take any steps in the execution of the trusts hereby created or in the enforcement of any rights and powers hereunder, until it shall be indemnified to its satisfaction against any and all costs and expenses, outlays and counsel fees and other reasonable disbursements, and against all liability; the Trustee may, nevertheless, begin suit, or appear in and defend suit, or do anything else in its judgment proper to be done by it as such Trustee, without prior indemnity and in such case it shall be indemnified and reimbursed by the Authority for all liabilities, costs and expenses, outlays and counsel fees and other reasonable disbursements properly incurred in connection therewith.

[7] Section 704 provides, in full:

> Anything in this Agreement to the contrary notwithstanding, Holders of a majority in principal amount of the Bonds Outstanding shall have, the right, subject to the provisions of Section 802 hereof, by an instrument in writing executed and delivered to the Trustee, to direct the time, method and place of conducting all remedial proceedings to be taken by the Trustee hereunder, provided that such direction shall not be otherwise than in accordance with law and the provisions of this Agreement. In the event that particular Bonds are secured by a Credit Facility or Liquidity Facility and the provider of the Credit Facility or Liquidity Facility has not defaulted on its obligations under such Credit Facility or Liquidity Facility, the provider of such Credit Facility or Liquidity Facility shall have the right, in lieu of the holders of the Bonds secured thereby, to direct the method and place of conducting such remedial proceedings and to give any consents or waivers to such remedial proceedings under this Article VII.

**C. The PRIFA Clawback Action**

14.     When the Commonwealth commenced its Title III case, Ambac had three pending lawsuits challenging the Commonwealth's retention of the Rum Taxes. The first two of these lawsuits were brought against various Commonwealth officials.  *See Assured Guar. Corp. v. García-Padilla*, No. 3:16-cv-01037 (D.P.R., filed Jan. 7, 2016); *Ambac Assurance Corp. v. Rosselló Nevares*, No. 3:17-cv-01568 (D.P.R., filed May 2, 2017) (together, the "<u>PRIFA Clawback Action</u>").  The PRIFA Clawback Action seeks (i) a declaration that certain executive orders and laws regarding the transfer of Rum Taxes are unconstitutional, and (ii) an injunction prohibiting enforcement of the executive orders and laws based on the same.  It also seeks a declaration that any transferee of property transferred as a result of certain orders and laws is liable for the value of such transfers under PROMESA section 407.

15.     The U.S. District Court for the District of Puerto Rico determined  the two actions against the Commonwealth and/or its officials were stayed. S*ee Ambac Assurance Corp. v. Rosselló Nevares*, No. 3:17-cv-01568 (D.P.R., May 17, 2017) [ECF No. 7]; *Assured Guaranty Corp. v. Garcia Padilla*, No. 1:17-cv-01037 (D.P.R., May 17, 2017) [ECF No. 82].

**D. The U.S. Treasury Action**

16.     The third action named as defendants the U.S. Department of the Treasury and the Treasury Secretary, and sought an equitable lien against the Rum Taxes and an injunction precluding the defendants from transferring any Rum Taxes to the Commonwealth until the other actions were resolved. See *Ambac Assurance Corp. v. U.S. Dep't of Treasury*, No. 1:17-cv-00809 (D.D.C., filed May 2, 2017) (the "<u>U.S. Treasury Action</u>").

9

17.     The U.S. District Court for the District of Columbia entered a minute order determining the U.S. Treasury Action was automatically stayed pending resolution of the Commonwealth's bankruptcy proceedings. *Ambac Assurance Corp. v. U.S. Dep't of Treasury*, No. 1:17-cv-00809 (D.D.C., May 25, 2017) [ECF. No. 8].

## RELIEF REQUESTED

18.     By this Motion to Dismiss, the Commonwealth seeks an order, substantially in the form of the Proposed Order, dismissing the Stay Motion pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## BASIS FOR RELIEF

**I.      THE STAY MOTION SHOULD BE DISMISSED BECAUSE IT IS BARRED AS A MATTER OF LAW BY THE TRUST AGREEMENT'S NO-ACTION CLAUSE.**

19.     Pursuant to Section 2 of Article III of the U.S. Constitution, the Court can only exercise judicial power over cases and controversies.  To have a case or controversy, the litigants on each side must have standing.  *See BNYM v. COFINA (In re Fin. Oversight & Mgmt. Bd. for P.R.)*, 301 F. Supp. 3d 306, 311 (D.P.R. 2017) ("To meet its burden of establishing that the district court has the constitutional power to adjudicate a case, a plaintiff must demonstrate that it has standing to assert its claim, such that the matter presents a 'case[] or controvers[y]' within the meaning of Article III of the Constitution.") (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also Opinion and Order Granting the Motion to Dismiss Plaintiff's Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6)*, Case No. 17-AP-159-LTS, ECF No. 156 at 12 (Plaintiff, as "[t]he party invoking federal jurisdiction[,] bears the burden of establishing

10

[constitutional standing].") (internal cites and quotes omitted). Here, because Ambac lacks

standing, the Court lacks subject matter jurisdiction to exercise its judicial power. The Stay Motion

must be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) because it is barred as a matter of

law by the Trust Agreement's No-Action Clause (section 705). Ambac lacks standing to bring the

Stay Motion.

20.      Under the No-Action Clause, Bondholders are prohibited from enforcing their rights

(or maintaining an action enforcing such rights) independently of the Trustee. ("No Holder of any

of the Bonds shall have any right to institute, appear in or defend any suit, action or proceeding in

equity or at law on any Bond or for the execution of any trust hereunder or for any other remedy

hereunder…."…[A]ll suits, actions and proceedings at law or in equity shall be instituted, had and

maintained in the manner herein provided and for the benefit of all holders of such outstanding

Bonds, and that any individual right of action or other right given to one or more of such holders by

law is restricted by this Agreement to the rights and remedies herein provided."). In all

circumstances, only the Trustee may exercise Bondholder remedies. *See Id.* § 701 (permitting the

Trustee to control the enforcement of remedies upon request of 20% of Bondholders and provision

of satisfactory indemnity).

21.      "No action" provisions like that contained in Section 705 of the Trust Agreement are

enforceable in bankruptcy cases. *See In re Innkeepers USA Trust,* 448 B.R. 131, 144 (Bankr.

S.D.N.Y. 2011). As this Court held in the context of a PREPA bondholders' motion to lift the

automatic stay [ECF No. 974], notwithstanding the broad provisions of Bankruptcy Code section

1109, a movant lacks standing where it fails to comply with a trust agreement's no-action clause.

11

*See* Transcript of November 7, 2018 Omnibus Hearing ("Nov. 7 Hr'g. Tr."), attached hereto as **Exhibit C**, at 49:13-19 ("Here, as in that case, the operative agreement defines and limits bondholders' rights and centralizes powers to take actions with respect to the bonds. The Court, therefore, finds that notwithstanding the broad provisions of Bankruptcy Code Section 1109, movant lacks standing to bring the present motion in violation of the Trust Agreement's no-action clause.").

22.     The Stay Motion constitutes an action by a Bondholder to enforce its remedies under the Trust Agreement that is expressly prohibited by the No-Action Clause.  Through the Stay Motion, Ambac, in its capacity as holder and/or insurer of Bonds, seeks either (i) a ruling the automatic stay does not apply to the U.S. Treasury and PRIFA Clawback Action (together, the "Actions"), (ii) an order lifting the stay to permit Ambac to continue to pursue the Actions, or (iii) adequate protection payments for bondholders' purported collateral.  Stay Motion ¶ 1, 84.  The Actions, as Ambac acknowledges, "relat[e] to the PRIFA bonds" (*id.*) and seek orders escrowing or otherwise controlling Rum Taxes that Ambac purports form collateral for the Bonds.  As such, the Actions directly violate the No-Action's Clause prohibition that "[n]o Holder of any of the Bonds shall have any right to institute, appear in or defend any suit, action or proceeding in equity or at law on any Bond or for the execution of any trust hereunder or for any other remedy hereunder" and "no one or more Holders of the Bonds hereby secured shall have any right in any manner whatever by his or their action to affect, disturb, or prejudice the security of this Agreement, or to enforce any right hereunder."  Ambac's request for adequate protection payments is, by definition,

based on its purported security interest as a Bondholder, and thus constitutes an attempt by Ambac to exercise bondholder remedies in violation of the No-Action Clause.

23.     Pursuant to Section 701, only the Trustee can institute and maintain the Stay Motion and the Actions.  Indeed, Ambac is requesting permission to bring actions it is contractually barred from bringing.  The Trustee is only required to pursue such action upon (1) request of not less than 20% of the Bonds, and (2) provision of indemnity satisfactory to the Trustee.  Trust Agreement § 701, 802.  In such case, the Trustee retains its sole discretion to determine the most effectual way to proceed to protect Bondholders.  Trust Agreement § 701.

24.     As detailed above, while Ambac alleges it holds and/or insures approximately $529 million (or ~33%) of Bonds, it only holds and/or is subrogated to, at most, $303 million or ~18.8% of the Bonds.  Ambac thus lacks the requisite holdings to request the Trustee to maintain the Stay Motion.  Even if Bonds that Ambac insures are credited to its total, the Trustee still need not proceed with the Stay Motion if it is not satisfied with the indemnity Ambac provides or if it determines the Stay Motion is not the most effectual way to protect and enforce Bondholder rights. In any event, only the *Trustee*, and not *Ambac* or any other party may bring the Stay Motion. As a result, the Stay Motion must be dismissed for failure to state a claim and lack of subject matter jurisdiction due to lack of standing under Fed R. Civ. P. 12(b)(1) and 12(b)(6).

## II.     BANKRUPTCY RULE 7012 SHOULD BE APPLIED TO THIS CONTESTED MATTER

25.     Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") applies certain rules from Part VII of the Bankruptcy Rules (governing adversary proceedings) to contested matters.  While Bankruptcy Rule 7012, which applies Fed. R. Civ. P. 12(b) to adversary

13

proceedings,[8] is not one of the Bankruptcy Rules automatically applied to contested matters, Bankruptcy Rule 9014(c) provides "[t]he court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply" to a contested matter.  Fed. R. Bankr. P. 9014(c).

26.    Exercising this discretion, many courts have applied Bankruptcy Rule 7012 to a contested matter when doing so would advance the overall purpose of the Bankruptcy Rules, "to secure the just, speedy, and inexpensive determination of every case and proceeding."  Fed. R. Bankr. P. 1001.  *See, e.g., In re Energy Future Holdings Corp.,* 588 B.R. 371, 378-79 (Bankr. D. Del. 2018) (granting Rule 12(b)(6) motion to dismiss contested motion for allowance of administrative expense claim);  *In re Alpha Natural Res.*, 2016 Bankr. LEXIS 4374 at *24 n.15 (Bankr. E.D. Va. Dec. 20, 2016) ("While Bankruptcy Rule 7012 is not mandatory [under Bankruptcy Rule 9014] the Court decided that it was appropriate to apply Bankruptcy Rule 7012 to this contested matter consistent with its obligation 'to secure the just, speedy, and inexpensive determination of every case and proceeding.'") (citing Fed. R. Bankr. P. 1001); *Madison Equities, LLC v. Condren (In re Theatre Row Phase II Assocs.)*, 385 B.R. 511, 519 (Bankr. S.D.N.Y. 2008) (applying Bankruptcy Rule 7012 to contested matter and granting motion to dismiss based upon it); *In re Nortel Networks, Inc.*, 469 B.R. 478, 519 (Bankr. D. Del. 2012) (bankruptcy court "exercise[d] its discretion to apply Bankruptcy Rule 7012" to a contested matter as it was "the most efficient manner" of resolving the relevant issues); *In re Diamond Mortg. Corp.*, 105 B.R. 876, 877

---

[8] Bankruptcy Rule 7012(b) provides that "Rule 12(b)-(i) F.R.Civ.P. applies in adversary proceedings."

14

n.1 (Bankr. N.D. Ill. 1989) (applying Bankruptcy Rule 7012 to contested matter in "an effort to move this litigation along.").

27.    Applying Bankruptcy Rule 7012 to the Stay Motion would allow the Court to address this threshold legal issue up front, which would eliminate the need for time-consuming and resource intensive discovery and an elaborate evidentiary hearing.  As such, the Debtor respectfully requests the Court to apply Bankruptcy Rule 7012(b) to this contested matter, so it can rule on this Motion to Dismiss as a gating matter.

## **CONCLUSION**

For the reasons set forth herein, the Oversight Board respectfully submits that Bankruptcy Rule 7012 should be applied to the Stay Motion, and the Stay Motion should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6).

*[Remainder of page intentionally left blank.]*

15

Dated: June 6, 2019                                  Respectfully submitted,


San Juan, Puerto Rico


                                        */s/ Hermann D. Bauer*
                                        Hermann D. Bauer
                                        USDC No. 215205
                                        **O'NEILL & BORGES LLC**
                                        250 Muñoz Rivera Ave., Suite 800
                                        San Juan, PR 00918-1813
                                        Tel: (787) 764-8181
                                        Fax: (787) 753-8944
                                        Email: hermann.bauer@oneillborges.com

                                        Martin J. Bienenstock (*pro hac vice*)
                                        Brian S. Rosen (*pro hac vice*)
                                        Stephen L. Ratner (*pro hac vice*)
                                        Timothy W. Mungovan (*pro hac vice*)
                                        Ehud Barak (*pro hac vice*)
                                        **PROSKAUER ROSE LLP**
                                        Eleven Times Square
                                        New York, NY 10036
                                        Tel: (212) 969-3000
                                        Fax: (212) 969-2900
                                        Email: mbienenstock@proskauer.com
                                        Email: brosen@proskauer.com
                                        Email: sratner@proskauer.com
                                        Email: tmungovan@proskauer.com
                                        Email: ebarak@proskauer.com

                                        *Attorneys for the Financial Oversight and*
                                        *Management Board for Puerto Rico, as*
                                        *representative of the Commonwealth of*
                                        *Puerto Rico*


                                        16

**Certification of Compliance with Local Rule 9013-1
and the Ninth Amended Case Management Procedures**

Pursuant to Local Rule 9013-1 and ¶ I.H of the Ninth Amended Case Management Order, the undersigned counsel hereby certify they have (a) carefully examined the matter and concluded that there is a true need for an urgent hearing; (b) not created the urgency through any lack of due diligence; (c) made reasonable, good-faith communications in an effort to resolve or narrow the issues that are being brought to the Court; and (d) contacted counsel for Ambac, and who indicated that Ambac opposes the requested relief.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on this same date, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system, which will send notifications of such filing to all CM/ECF

participants in this case.

*/s/ Hermann D. Bauer*
Hermann D. Bauer
