Hearing Date: July 24, 2019, at 9:30AM (Atlantic Standard Time)
Response Deadline: July 9, 2019 at 4:00PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

                Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**This filing relates to the Commonwealth.**

## FIFTY-THIRD OMNIBUS OBJECTION
## (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO
## RICO TO DUPLICATE, DEFICIENT, AND INCORRECT DEBTOR CLAIMS

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative

of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and*

*Economic Stability Act* ("PROMESA"),[2] files this fifty-third objection (the "Fifty-Third Omnibus

Objection") to the duplicate, deficient, and incorrect debtor proofs of claim listed on **Exhibit A**

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, THE COMMONWEALTH, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

hereto, each of which is partially filed in the wrong case, partially failed to comply with the applicable rules for filing a claim, and partially duplicative of one or more master proofs of claim asserted against the Commonwealth on behalf of the holders of certain bonds, and in support of the Fifty-Third Omnibus Objection respectfully represents as follows:

## JURISDICTION

1.      The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.      Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.      The Bar Date Orders in the Commonwealth Title III Case**

3.      On May 3, 2017, the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.      On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion").  Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case.  Upon the informative motion of certain creditors, and

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160] (together with the Initial Bar Date Order the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      Operations and Bond Debt of the Commonwealth**

5.      The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution") became effective in 1952.  The P.R. Constitution created the Commonwealth as the central government of Puerto Rico, "republican in form" and divided into three branches: legislative, judicial and executive.  *See* P.R. Const., Art. I, §§ 1, 2.

6.      The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including on the ability of the Commonwealth to pledge its revenues.  *See* P.R. Const. Art. VI § 2.  In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

7.      Since 1961, the Commonwealth has issued billions of dollars of general obligation bonds ("GO Bonds") purportedly backed by its full faith, credit, and taxing power.  GO Bonds are public debt under Article VI, § 8 of the P.R. Constitution.  Each series of GO Bonds was issued pursuant to a bond resolution and offering memorandum.

**C.      Bond Debt Master Proofs of Claim for Bonds Not Issued by the Commonwealth**

8.      Pursuant to the Initial Bar Date Order, the indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust

agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).  As explained

below, master proofs of claim (collectively, the "Master Claims") have been filed in the

Commonwealth Title III Case on behalf of the holders of certain bonds issued by the following

entities: Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control

Facilities Financing Authority ("AFICA"); Children's Trust; Employees Retirement System of the

Government of the Commonwealth of Puerto Rico ("ERS"); Puerto Rico Housing Finance

Authority ("HFA"); Puerto Rico Highways and Transportation Authority ("HTA"); Puerto Rico

Aqueduct and Sewer Authority ("PRASA"); Puerto Rico Public Buildings Authority ("PBA");

Puerto Rico Convention Center District Authority ("PRCCDA"); Puerto Rico Industrial

Development Company ("PRIDCO"); Puerto Rico Infrastructure Financing Authority ("PRIFA");

Puerto Rico Municipal Finance Agency ("PRMFA"); Puerto Rico Public Finance Corporation

("PRPFC"); and University of Puerto Rico ("UPR").

9.     ***AFICA***—AFICA is a public corporation and government instrumentality of the

Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved

June 27, 1977 (as amended and supplemented and codified as P.R. Laws Ann. tit. 12, § 1251 *et

seq.*).  P.R. Laws Ann. tit. 12, § 1254.  AFICA issued certain Puerto Rico Industrial, Tourist,

Educational, Medical and Environmental Control Facilities Financing Authority Educational

Facilities Revenue Bonds (Plaza Universitaria Project) ("Plaza Universitaria Bonds").  BNYM

serves as trustee of the Plaza Universitaria Bonds and filed a master proof of claim, which was

logged by Prime Clerk, LLC, as Proof of Claim No. 68271, asserting "a secured, contingent and

unliquidated claim against the Commonwealth on account of any and all claims, causes of action,

rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the

Commonwealth arising at law or in equity," including "for breach of covenants, failure to fund

4

requested sums, constructive trust, or for the potential diversion of revenues pledged for the payment of the Bonds."  Addendum to Proof of Claim No. 68271, ¶ 15.

10.     Additionally, AFICA issued certain Higher Education Refunding Revenue Bonds (together with the Plaza Universitaria Bonds the, "AFICA Bonds"), for which U.S. Bank Trust National Association ("US Bank Trust") and U.S. Bank National Association ("US Bank") serve as trustees.  US Bank and US Bank Trust filed a master proof of claim, logged by Prime Clerk, LLC, as Proof of Claim No. 13391 (together with Proof of Claim No. 68271 the "AFICA Master Claims").  On behalf of the holders of such bonds, US Bank and US Bank Trust assert contingent, unliquidated claims against the Commonwealth for all rights and entitlement . . ., including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future."  Addendum to Proof of Claim No. 13391, ¶ 11.

11.     ***Children's Trust***—The Children's Trust was established by the Children's Trust Act (Act No. 173 of 1999), 24 L.P.R.A. §§ 3121, *et seq.*, in connection with a settlement agreement that was entered into by participating cigarette manufacturers and Puerto Rico, 46 states, and five other U.S. jurisdictions in November 1998 in the settlement of certain smoking-related litigation, including the Commonwealth's right to receive certain annual and strategic contribution fund payments to be made by such participating manufacturers under the MSA. Art. 4 Act 173-1999, 24 L.P.R.A. § 3122.  U.S. Bank serves as trustee for certain Children's Trust Tobacco Settlement Asset-Backed Bonds Series 2002, 2005, 2008A, and 2008B (the "Children's Trust Bonds").  On behalf of the holders of the Children's Trust Bonds, US Bank filed a master proof of claim, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13354 ("Children's Trust Master Claim"), asserting "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Indenture

and the Act, or pursuant to other applicable documents or law, including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future." Rider to Children's Trust Master Claim, ¶ 9.

12.     _**ERS**_—ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees. ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A § 775. Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[4] BNYM serves as the fiscal agent with respect to the ERS Bonds. On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master Claim"), asserting claims against the Commonwealth based on, among other things, the enactment of Joint Resolution 188 and Law 106, which together created a "pay as you go" retirement system whereby pensioners are paid from the general funds of the Commonwealth, instead of employers' contributions, which is alleged to be collateral for the ERS Bonds.[5]

---

[4]   On May 21, 2017, the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof. On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void. On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*. ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[5]   On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim. *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775)* [ECF No. 7075]. For the avoidance of doubt, this Fifty-Third Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

13.     **_HFA_**—HFA is a subsidiary of the Government Development Bank ("GDB") and an independent governmental instrumentality of the Commonwealth.  US Bank serves as trustee for certain Capital Fund Modernization Program Bonds issued by HFA (the "HFA Bonds").  On behalf of the holders of HFA Bonds, US Bank filed a master proof of claim (the "HFA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 13358.  The HFA Master Claim asserts contingent, unliquidated claims against the Commonwealth and Puerto Rico Public Housing Authority ("PHA"), for "all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Indentures and the Loan Agreement, or pursuant to other applicable documents or law, including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future." Rider to HFA Master Claim, ¶ 13.  Additionally, the HFA Master Claim asserts "claims for any and all amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, whether known or unknown, against PHA, all those purporting to act on PHA's behalf, and the Commonwealth, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the Indentures, the Loan Agreement, or any covenants or other contractual obligations contained therein, or claims arising from the improper diversion of the Trust Estate or any other property securing the payment of the Bonds, as a matter of relevant state law or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claim."  *Id.*, ¶ 14.

14.     **_HTA_**—HTA is a public corporation and instrumentality of the Commonwealth constituting a corporate and political entity independent and separate from the Commonwealth,

created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act"). HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth. *See* 9 L.P.R.A § 2002. The HTA Enabling Act authorizes HTA to issue bonds. *See* 9 L.P.R.A. §§ 2004(g), (h), (l). Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution"). On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under Title III thereof. As of HTA's May 21, 2017, petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding. BNYM serves as fiscal agent with respect to the HTA Bonds. On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA Master Claim"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ." *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[6]

15. ***PRASA***—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico. PRASA issued certain revenue bonds (the "PRASA Bonds"), under the

---

[6] While BNYM initially filed three proofs of claim logged by Prime Clerk, LLC, as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 22620 (the "PRASA Master Claim").  The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto."  Addendum to PRASA Master Claim, ¶ 9.

16.     **_PBA_**—PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[7]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingents claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown

---

[7]  Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."
Rider to PBA Master Claim, ¶¶ 19-21.

17.      ***PRCCDA***—PRCCDA is a public corporation created by Act No. 142 of October 4,
2001, as amended by Act No. 185 of August 3, 2004, to develop, manage and oversee the Puerto
Rico Convention Center, the Coliseo de Puerto Rico José Miguel Agrelot, the Rivas Domenici
Executive Airport, and other adjacent hospitality, commercial and residential developments within
the District.  BNYM serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by
PRCCDA (the "PRCCDA Bonds"), and on behalf of the holders of PRCCDA Bonds filed a master
proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of
Claim No. 37319 (the "PRCCDA Master Claim").   The PRCCDA Master Claim asserts a
"contingent and unliquidated claim against the Commonwealth on account of any and all claims,
causes of action, rights, and/or remedies that the Trustee or the Owners may have against the
Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the
Pledge Agreement, the Bonds, or the Trust Estate, including, but not limited to, violations of the
United States Constitution and of the Puerto Rico Constitution, violations of The Puerto Rico
Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 *et seq.*, including, without
limitation, section 407 thereof, tortious interference with contract, conversion, fraud, fraudulent
inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or
constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, or
contribution, that have been or may be asserted in present or future litigations by, among, or
involving the Trustee, any Owners, the Authority [PRCCDA], and/or the Commonwealth."
Addendum to PRCCDA Master Claim, ¶ 11.

18.    ***PRIDCO***—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "PRIDCO Bonds"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13445 ("PRIDCO Master Claim").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the Bond Documents, lease agreements or other contractual obligations relating to the underlying collateral, any other covenants or other contractual obligations contained therein, or claims arising from the improper diversion of PRIDCO's revenues or any other property securing the payment of the Bonds under the Bond Documents, as a matter of relevant Commonwealth, state or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

19.    ***PRIFA***—PRIFA is an affiliate of GDB which was created in 1988 to provide financial, administrative and other types of assistance to the Commonwealth, its public corporations and instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the

11

"PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank Trust, and UMB Bank, N.A. ("UMB"). First, BNYM asserted three master proofs of claim: Proof of Claim No. 16759, asserting, on behalf of holders of Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15 (the "PRASA Notes"), a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the Noteholder Agreement, the Notes, or the Pledged Revenues . . . "; Proof of Claim No. 19814 asserting, on behalf of holders of PRASA Notes, claims for principal and unpaid interest, in addition to fees and expenses of the trustee; and Proof of Claim No. 103718, asserting, on behalf of holders of revenue bonds issued by PRASA, including Revenue Bonds (Port Authority Project), Series 2011A, "a secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ."

20.     Additionally, US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17, which course of conduct continues . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.  UMB also filed a master proof of claim

on behalf of holders of PRIFA Infrastructure Revenue Bonds, 2007 Series A (MEPSI Campus Project), which was logged by Prime Clerk LLC, as Proof of Claim No. 22130, and seeks recovery of unpaid principal allegedly owed in the aggregate amount of $33.9 million, unpaid interest allegedly owed in the aggregate amount of $188,552.72, in addition to unliquidated amounts for any and all amounts owed on account of any and all claims UMB may have relating to the outstanding bond obligations.  Rider to Proof of Claim No. 22130, ¶¶ 17-18.

21.      ***PRMFA***—PRMFA is a public corporation and government instrumentality of the Commonwealth created by Act No. 29 of the Legislative Assembly of Puerto Rico, approved June 30, 1972, as amended and supplemented and codified as P.R. Laws Ann. Tit. 21 § 681 *et seq.  See* P.R. Laws Ann. Tit. 21, § 684.  PRMFA allegedly may issue bonds as it deems necessary to provide funds for the purchase of municipal bonds or municipal notes on anticipation, or to refinance bonds of PRMFA.  Addendum to Proof of Claim No. 30168, ¶ 7.  BNYM and US Bank Trust each serve as trustee for bonds issued by PRMFA (collectively, the "PRMFA Bonds"), and on behalf of the holders of certain PRMFA Bonds asserted master proofs of claim against the Commonwealth (collectively, the "PRMFA Master Claims").  The master proof of claim filed by BNYM with respect to PRMFA Bonds was logged by Prime Clerk, LLC, as Proof of Claim No. 30168, and asserts a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ." *Id.*, ¶ 15.  The master proof of claim filed by US Bank Trust with respect to PRMFA Bonds was logged by Prime Clerk, LLC, as Proof of Claim No. 13364, and asserts "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever kind set forth in the Indenture and the Act, or pursuant to other applicable documents or

13

law, including for breach of covenants, failure to fund requested sums, or for the potential diversion of pledged revenue for the payment of the Bonds, whether in the past or in the future."  Rider to Proof of Claim No. 13364, ¶ 9.

22.     ***PRPFC***—PRPFC is a subsidiary corporation of the Government Development Bank ("GDB") created pursuant to Resolution 5044 of the Board of Directors of GDB.  US Bank Trust serves as trustee for certain bonds issued by the PRPFC (the "PRPFC Bonds"), specifically the Series 2012A and Series 2011A and B bonds.  On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13374 (the "PRPFC Master Claim"), for the alleged "failure to include in the annual budget of the Commonwealth the amount necessary for the debt obligations of the Authorized Debtors that issued the Notes."  US Bank Trust asserts a contingent, unliquidated claim, for "any and all amounts owed on account of any and all claims the Trustees have or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf."

23.     ***UPR***—UPR allegedly is "a public corporation of the Commonwealth constituting an organic system of higher education," pursuant to Act No. 1 of the Legislature of Puerto Rico, approved January 20, 1966 (18 L.P.R.A. §§ 601-614).  Rider to Proof of Claim No. 13382, ¶ 5. US Bank serves as trustee for certain University System Revenue Refunding Bonds Series P and Q issued by UPR, and filed a master proof of claim, logged by Prime Clerk, LLC, as Proof of Claim No. 13382 (the "UPR Master Claim").  The UPR Master Claim asserts "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Trust Agreement, or pursuant to other applicable documents or law, including for breach of covenants and for the potential

diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future."
*Id.*, ¶ 12.

**D.      Commonwealth Claims and the Omnibus Objection Procedures**

24.      To date, approximately 168,922 proofs of claim have been filed against the Debtors
and logged by Prime Clerk.  Such proofs of claim total approximately $43.6 trillion in asserted
claims against the Debtors.  Of the proofs of claim filed, approximately 104,004 have been filed
in relation to, or reclassified to be asserted against, the Commonwealth.  The Commonwealth-
related proofs of claim total approximately $33.2 trillion in asserted liabilities plus unliquidated
amounts.

25.      In order to efficiently resolve as many of the unnecessary proofs of claim as
possible, the Debtors, on October 16, 2018, filed with this Court their *Motion for Entry of an Order
(a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of
Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus
Procedures Motion").  The relief requested therein was non-substantive in nature and was designed
to expedite and streamline the claims reconciliation process by, among other things, enlarging the
number of claims permitted to be within the scope of an omnibus objection.  While no objection
to the Omnibus Procedures Motion was interposed, based upon certain comments received, a
revised form of order and related exhibit were provided to the Court.  Based upon comments of
the Court at a hearing held on November 7, 2018, such order was further revised and the Court
granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.
*See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement
of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus
Objection Procedures* [ECF No. 4230-1] (collectively, the "Omnibus Objection Procedures").  On

November 29, 2018, the Court approved the English and Spanish versions of the forms of notice

for omnibus objections to be filed in accordance with the Omnibus Objection Procedures.  *See

Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections*

[ECF No. 4381] (the "Notice Order").

26.    This Fifty-Third Omnibus Objection is filed in accordance with the Court's

Omnibus Objection Procedures.

### **OBJECTIONS TO PROOFS OF CLAIM**

27.    The Omnibus Objection Procedures allow the Commonwealth to file an omnibus

objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy

Procedure 3007(d)(1)-(7).

28.    The Fifty-Third Omnibus Objection seeks to reclassify, in accordance with Federal

Rules of Bankruptcy Procedure 3007(d)(1), 3007(d)(2), and 3007(d)(6), as well as the Omnibus

Objection Procedures, claims that are each: (a) partially asserted against the incorrect debtor, and

thus filed in the wrong case; (b) and partially duplicative of one or more Master Claims filed in

the Commonwealth Title III Case; and (c) and partially failed to comply with the applicable rules

for filing a proof of claim.

29.    First, a portion of each of the claims identified in the column titled "Asserted" in

**Exhibit A** hereto (collectively, the "Duplicate, Deficient, and Incorrect Debtor Claims") identifies

as obligor the Commonwealth, when such claims are properly asserted, if at all, against the Puerto

Rico Electrical Power Authority ("PREPA").  Some of the Duplicate, Deficient, and Incorrect

Debtor Claims state in the proof of claim or supporting documentation that a portion of the asserted

liability appropriately lies, if at all, with PREPA, not the Commonwealth, while other Duplicate,

Deficient, and Incorrect Debtor Claims should be asserted against PREPA, if at all, based upon the

Debtors' review of the names and CUSIP information provided for the bonds at issue.

Accordingly, a portion of each of the Duplicate, Deficient, and Incorrect Debtor Claims should be reclassified to be asserted against PREPA, as identified in the column titled "Corrected," in **Exhibit A** hereto (collectively, the "Reclassified Claims"). The Debtors reserve their right to object to the Reclassified Claims on any other grounds whatsoever.[8]

30.     Second, each of the Duplicate, Deficient, and Incorrect Debtor Claims purports to assert, in part, liability against the Commonwealth associated with one or more bonds that is duplicative of one or more Master Claims, which as described above were filed in the Commonwealth Title III Case by the fiscal agent and/or trustee for certain bonds issued by AFICA, the Children's Trust, ERS, HFA, HTA, PRASA, PBA, PRCCDA, PRIDCO, PRIFA, PRPFCCA, PRMFA, and UPR.  As a result, any failure to disallow these portions of the Duplicate, Deficient, and Incorrect Debtor Claims will result in the applicable claimants potentially receiving an unwarranted double recovery against the Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case.  The holders of the Duplicate, Deficient, and Incorrect Debtor Claims will not be prejudiced by the disallowance of this portion of their claims because the liabilities associated with their claims are subsumed within one or more Master Claims.

31.     Third, each of the Duplicate, Deficient, and Incorrect Debtor Claims partially failed to provide a sufficient information for the Debtors to determine the bond issuer and amount of the bonds allegedly at issue.  Due to this failure to comply with the applicable rules, neither the Debtors nor the Court are able to determine the validity of this portion of each of the Duplicate, Deficient,

---

[8] US Bank filed master proofs of claim in the Commonwealth Title III Case on behalf of the holders of bonds issued by PREPA, which were logged by Prime Clerk, LLC, as Proofs of Claim Nos. 32565 and 50049 (collectively, the PREPA Master Claims").  The PREPA Master Claims assert unliquidated claims for the alleged value of statutory rights granted by the Commonwealth to PREPA.  To the extent any holders of bonds issued by PREPA intended to assert a claim against the Commonwealth on any of the bases set forth in the PREPA Master Claims, such claims should be disallowed as duplicates of the PREPA Master Claims, in accordance with Federal Rule of Bankruptcy Procedure 3007(d)(1).

and Incorrect Debtor Claims.  As a result, these portions of the Duplicate, Deficient, and Incorrect

Debtor Claims should be disallowed as well.

32.     Finally, because each of the Duplicate, Deficient, and Incorrect Debtor Claims also

purport to assert liability associated with one or more bonds issued by the Commonwealth, the

claimant will retain a remaining claim in the Commonwealth Title III Case (collectively, the

"Remaining Claims"), as identified in the column titled "Remaining Claims" in **Exhibit A** hereto.

Because this objection does not constitute an objection to the Remaining Claims, the Debtors

reserve their rights to object to the Remaining Claims on any grounds whatsoever.

33.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay

Herriman in Support of the Fifty-Third Omnibus Objection (Non-Substantive) of the

Commonwealth of Puerto Rico to Duplicate, Deficient, and Incorrect Debtor Claims*, dated June

6, 2019, attached hereto as **Exhibit B**.

## NOTICE

34.     In accordance with the Omnibus Objection Procedures and the Court's Notice

Order, the Commonwealth has provided notice of this Fifty-Third Omnibus Objection to (a) the

individual creditors subject to this Fifty-Third Omnibus Objection, (b) the U.S. Trustee, and (c)

the Master Service List (as defined by the *Order Further Amending Case Management Procedures*

[ECF No. 3804]), which is available on the Debtors' case website at

https://cases.primeclerk.com/puertorico.   A copy of the notice for this Fifty-Third Omnibus

Objection is attached hereto as **Exhibit C**.   Spanish translations of the Fifty-Third Omnibus

Objection and all of the exhibits attached hereto are being filed with this objection and will be

served on the parties.   The Commonwealth submits that, in light of the nature of the relief

requested, no other or further notice need be given.

## <u>RESERVATION OF RIGHTS</u>

35.     This Fifty-Third Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Duplicate, Deficient, and Incorrect Debtor Claims or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## <u>NO PRIOR REQUEST</u>

36.     No prior request for the relief sought in this Fifty-Third Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: June 6, 2019                                         Respectfully submitted,
     San Juan, Puerto Rico

    /s/ Hermann D. Bauer
Hermann D. Bauer
USDC No. 215205
Daniel J. Perez-Refojos
USDC No. 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Attorneys for the Financial
Oversight and Management Board,
as representative for the
Commonwealth of Puerto Rico*

**Fecha de audiencia: 24 de julio de 2019, a las 9:30 a.m. (Hora Estándar del Atlántico)**
**Fecha límite para presentar una respuesta: 9 de julio de 2019, a las 4:00 p.m. (Hora Estándar del Atlántico)**

---

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS ANEXOS A LA MISMA PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

---

## TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS
## PARA EL DISTRITO DE PUERTO RICO

En el caso:

LA JUNTA DE SUPERVISIÓN Y
ADMINISTRACIÓN FINANCIERA PARA
PUERTO RICO,

      como representante del

ESTADO LIBRE ASOCIADO DE PUERTO RICO, *y otros*,

                           Deudores.[1]

PROMESA
Título III

N° 17 BK 3283-LTS

(Administrados en forma conjunta)

**Esta presentación corresponde al Estado Libre Asociado.**

---

### QUINCUAGÉSIMA TERCERA OBJECIÓN COLECTIVA (NO SUSTANTIVA) DEL ESTADO LIBRE ASOCIADO DE PUERTO RICO CONTRA RECLAMACIONES DUPLICADAS, DEFICIENTES Y CONTRA EL DEUDOR INCORRECTO

El Estado Libre Asociado de Puerto Rico (el "Estado Libre Asociado"), por intermedio de

la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"),

como representante del Estado Libre Asociado conforme a la sección 315(b) de la *Ley de*

---

[1] Los Deudores en estos casos iniciados al amparo del Título III, junto con el número de caso respectivo de cada Deudor y los últimos cuatro (4) dígitos del número de identificación tributaria federal de cada Deudor, según corresponda, son (i) El Estado Libre Asociado de Puerto Rico (el "Estado Libre Asociado") (Caso de quiebra No. 17 BK 3283-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 3481); (ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de quiebra No. 17 BK 3284-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 8474); (iii) la Autoridad de Carreteras y Transportación de Puerto Rico ("HTA") (Caso de quiebra No. 17 BK 3567-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 3808); (iv) Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("ERS") (Caso de quiebra No. 17 BK 3566-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 9686); y (v) Autoridad de Energía Eléctrica de Puerto Rico ("PREPA") y junto con el Estado Libre Asociado, COFINA, HTA y ERS, los "Deudores") (Caso de quiebra No. 17 BK 4780-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 3747) (los casos al amparo del Título III figuran como números del Caso de Quiebra debido a limitaciones del software).

*Administración, Supervisión y Estabilidad de Puerto Rico* ("PROMESA"),[2] presenta esta quincuagésima tercera objeción colectiva (la "Quincuagésima Tercera Objeción Colectiva") contra evidencias de reclamaciones duplicadas, deficientes y contra el deudor incorrecto que se detallan en el **Anexo A** a la presente, las cuales, individualmente, están parcialmente presentadas en el caso equivocado, incumplen parcialmente con las reglas aplicables para presentar objeciones, y son parcialmente duplicadas de una o más evidencias de reclamaciones maestras formuladas contra el Estado Libre Asociado en representación de los tenedores de determinados bonos; y para fundamentar la Quincuagésima Tercera Objeción Colectiva, con respeto manifiesta lo siguiente:

## COMPETENCIA

1.      El Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico tiene jurisdicción sobre la materia para considerar este asunto y el remedio solicitado en la presente de conformidad con la sección 306(a) de la ley PROMESA.

2.      La jurisdicción es adecuada en este distrito de conformidad con la sección 307(a) de la ley PROMESA.

## ANTECEDENTES

**A.      Resoluciones sobre Fecha Límite en el Caso del Estado Libre Asociado al amparo del Título III**

3.      El 3 de mayo de 2017, la Junta de Supervisión, a pedido del Gobernador, emitió una certificación de restructuración conforme a las secciones 104(j) y 206 de la ley PROMESA y presentó una petición voluntaria de remedio por el Estado Libre Asociado de conformidad con la

---

[2]  La ley PROMESA está incluida en el título 48 del Código de los Estados Unidos (United States' Code, U.S.C.) §§ 2101-2241.

sección 304(a) de la ley PROMESA, y dio inicio así a un caso al amparo del Título III de dicha ley (el "Caso del Estado Libre Asociado iniciado al amparo del Título III").

4.      El 16 de enero de 2018, los Deudores presentaron su *Petición para que se dicte una Resolución (A) que fije las Fechas Límite y los Procedimientos para la Presentación de Evidencias de Reclamaciones, y (B) un Formulario de Aprobación y la Forma y el Modo de su Notificación* [ECF No. 2255][3] (la "Petición para la Fijación de una Fecha Límite para la Presentación de Reclamaciones").  Conforme a la *Resolución que (A) establece Fechas Límites y Procedimientos para presentar Evidencias de Reclamaciones y (B) aprueba la Forma y el Modo para su Notificación* [ECF N° 2521] (la "Resolución sobre el Plazo Límite Inicial"), el Tribunal hizo lugar al remedio solicitado en la Petición de Resolución sobre Fecha Límite y estableció las siguientes fechas límites y procedimientos para presentar evidencias de reclamaciones en el Caso del Estado Libre Asociado al amparo del Título III.  En virtud de una petición informativa de determinados acreedores, y con el respaldo de los Deudores, el Tribunal posteriormente dictó la *Resolución (A) que prorroga la Fecha Límite para la Presentación de Evidencias de Reclamaciones y (B) que aprueba la Forma y Modo de Notificación de la Misma* [ECF No. 3160] (junto con la Resolución de Fecha Límite Inicial ("Resoluciones que Fijan Fecha Límite para la Presentación de Evidencias de Reclamaciones")) que prorrogaba estas fechas límite al 29 de junio de 2018 a las 4:00 p.m. (Hora del Atlántico).

**B.      Operaciones y Deuda de Bonos del Estado Libre Asociado**

5.      La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de P.R.") entró en vigencia en 1952.  La Constitución de P.R. creó al Estado Libre Asociado como

---

[3]  A menos que se indique lo contrario en el presente, todas las citas de ECF se refieren a documentos archivados en el Caso de Quiebra No. 17 BK 3283-LTS.

gobierno central de Puerto Rico, "con forma republicana" y dividido en tres poderes: el legislativo, el judicial y el ejecutivo. *Véase* Constitución de P.R., Art. I, secciones 1, 2.

6.      La Constitución de P.R. autoriza al Estado Libre Asociado a emitir deuda, con sujeción a diversas limitaciones, incluida la capacidad del Estado Libre Asociado de pignorar sus ingresos. *Véase* Constitución de P.R. Art. VI, sección 2.  En 1961, la Sección 2 del Artículo VI de dicha Constitución fue enmendada para limitar el endeudamiento del Estado Libre Asociado en función del monto del servicio de deuda que el Estado Libre Asociado debería pagar con relación a sus ingresos históricos.

7.      Desde 1961, el Estado Libre Asociado ha emitido mil millones de dólares en bonos de obligación general ("Bonos GO") supuestamente respaldados por su pleno poder de fe, crédito y tributación.  Los Bonos GO constituyen deuda pública conforme al Artículo VI, sección 8 de la Constitución de P.R.  Cada serie de Bonos GO se emitió en virtud de una resolución de emisión de bonos y un memorándum de oferta.

**C.      Evidencias de Reclamaciones Maestras de Deuda de Bonos por Bonos No Emitidos por el Estado Libre Asociado**

8.      Con arreglo a la Resolución de Fecha Límite Inicial, los fiduciarios, los agentes fiscales u otro agente o persona designada para cada serie respectiva de bonos emitida por uno de los Deudores pueden presentar una evidencia de reclamación maestra contra el deudor pertinente en representación de ellos mismos y de todos los tenedores de reclamaciones de bonos de las series respectivas de bonos en relación con las obligaciones que surgen de los respectivos contratos de fideicomisos, resoluciones o documentos similares de emisión bonos.  Resolución de la Fecha Límite Inicial, ¶ 5(a).  Como se explica más abajo, se han presentado evidencias de reclamaciones maestras (en conjunto, las "Reclamaciones Maestras") en el Caso del Estado Libre Asociado

4

iniciado al amparo del Título III en representación de los tenedores de algunos bonos emitidos por las siguientes entidades: Autoridad de Puerto Rico para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental ("AFICA"), el Fideicomiso de los Niños, , el Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("ERS"), la Autoridad de Carreteras y Transportación de Puerto Rico ("HTA"), la Autoridad para el Financiamiento de la Vivienda de Puerto Rico ("HFA"), la Autoridad de Acueductos y Alcantarillados ("AAA"), la Autoridad de Edificios Públicos de Puerto Rico ("PBA"), la Autoridad del Distrito del Centro de Convenciones ("PRCCDA"), la Compañía de Fomento Industrial de Puerto Rico ("PRIDCO"), la Autoridad para el Financiamiento de la Infraestructura de Puerto Rico ("PRIFA"), la Agencia de Financiamiento Municipal de Puerto Rico ("PRMFA"), la Corporación para el Financiamiento Público de Puerto Rico ("PRPFC") y la Universidad de Puerto Rico ("UPR").

9.   *AFICA*: AFICA es una sociedad que cotiza en bolsa y un organismo del gobierno del Estado Libre Asociado, creada mediante la Ley N° 121 de la Asamblea Legislativa de Puerto Rico, aprobada el 27 de junio de 1977 (con sus enmiendas y anexos, y clasificada con el título 12 § 1251 *et seq.* de las Leyes de Puerto Rico Anotadas).  Título 12, § 1254 de las Leyes de Puerto Rico Anotadas.  AFICA emitió algunos Educational Facilities Revenue Bonds de la Autoridad de Puerto Rico para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental (Proyecto Plaza Universitaria) ("Bonos del Proyecto Plaza Universitaria"). BNYM actúa como fiduciario de los Bonos del Proyecto Plaza Universitaria y presentó una evidencia de reclamación registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 68271, en la que formula "una reclamación garantizada, contingente y no liquidada contra el Estado Libre Asociado en razón de cualquier y todas las reclamaciones, cuestiones de fondo,

derechos y/o remedios que el Fiduciario o los tenedores de los Bonos posean o puedan poseer contra el Estado Libre Asociado derivados del derecho estricto o el régimen de equity", incluso "por incumplimiento de cláusulas, omisión de financiar sumas solicitadas, fideicomiso judicial o por el posible desvío de ingresos pignorados para el pago de los Bonos". Adenda a la Evidencia de Reclamación N° 68271, ¶ 15.

10.     Además, AFICA emitió algunos Bonos Garantizados por Ingresos de Educación Superior (junto con los Bonos del Proyecto Plaza Universitaria, "Bonos de AFICA"), para los cuales U.S. Bank Trust National Association ("US Bank Trust") y U.S. Bank National Association ("US Bank") actúan como fiduciarios. US Bank y US Bank Trust presentaron una evidencia de reclamación maestra, registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13391 (junto con la Evidencia de Reclamación N° 68271, las "Reclamaciones Maestras de AFICA"). En representación de los tenedores de bonos, US Bank y US Bank Trust formulan reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios… , incluso por incumplimiento de cláusulas y por el posible desvío de ingresos pignorados para el pago de los Bonos, ya sea en el pasado o en el futuro". Adenda a la Evidencia de Reclamación N° 13391, ¶ 11.

11.     ***Fideicomiso de los Niños***: El Fideicomiso de los Niños se estableció mediante la Ley del Fideicomiso de los Niños (Ley N° 173 de 1999), título 24 L.P.R.A. §§ 3121, *et seq.*, con motivo de un acuerdo de conciliación celebrado entre fabricantes de cigarrillos y Puerto Rico, 46 estados y otras cinco jurisdicciones estadounidenses, en noviembre de 1998, en el marco de un acuerdo por un litigio vinculado con el tabaquismo, incluido el derecho del Estado Libre Asociado de recibir determinados pagos de contribución anuales y estratégicos para el fondo de parte de los fabricantes mencionados, en el marco del MSA. Art. 4 Ley 173-1999, 24 L.P.R.A. § 3122. U.S.

Bank actúa como fiduciario de algunas Series de Bonos respaldados por activos del Acuerdo del Tabaco del Fideicomiso de los Niños, a saber, 2002, 2005, 2008A and 2008B (los "<u>Bonos del Fideicomiso de los Niños</u>").  En representación de los tenedores de Bonos del Fideicomiso de los Niños, US Bank presentó una evidencia de reclamación maestra, que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N°13354 ("<u>Evidencia de Reclamación Maestra del Fideicomiso de los Niños</u>"), en la cual formula "reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios que U.S. Bank posee o puede poseer en calidad de Fiduciario, de cualquier naturaleza o clase, establecidos en el Instrumento de Emisión y la Ley, o en razón de otros documentos o de leyes aplicables, incluso por incumplimiento de cláusulas y por el posible desvío de ingresos pignorados para pagar los Bonos, ya sea en el pasado o en el futuro."  Disposición adicional a la Reclamación Maestra del Fideicomiso de los Niños, ¶ 9.

    12.    <u>*ERS*</u> : el ERS es un fideicomiso constituido por el Estado Libre Asociadoen 1951 para garantizar el bienestar económico de los empleados públicos.  El ERS es un organismo público autónomo e independiente del gobierno del Estado Libre Asociadoy sus otras reparticiones.  *Véase* 3 L.P.R.A § 775.  Aparentemente con arreglo a la citada *Resolución sobre Bonos de Capitalización de Pensiones* adoptada el 24 de enero de 2008 y ciertas resoluciones complementarias, el ERS emitió bonos de capitalización de pensiones principales y subordinados (los "<u>Bonos del ERS</u>") por un monto principal original total de aproximadamente $2.900 millones.[4]

---

[4] El 12 de marzo de 2019, el Comité Oficial de Acreedores Quirografarios presentó una *Objeción Colectiva contra Reclamaciones formuladas por Tenedores de Bonos emitidos por el ERS* [Caso N° 17-3566, ECF N° 381], aduciendo que la emisión de bonos excedía las facultades otorgadas por ley al ERS y que, por ende, constituía un *exceso de jurisdicción*, correspondiendo declarar la nulidad de los Bonos emitidos por el ERS.  Con fecha 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico presentó la *Objeción Colectiva del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme a la Sección 502 del Código de Quiebras y la Regla 3007 del Procedimiento Federal de Quiebras, contra reclamaciones presentadas o formuladas por tenedores de Bonos emitidos por el ERS contra el ERS y el Estado Libre Asociado* [Caso N° 17-3283, ECF N° 6482], aduciendo, entre otras cosas, que la emisión de bonos constituía un *exceso de atribuciones*.

BNYM es el agente fiscal de los Bonos emitidos por el ERS.  En representación de los tenedores de los Bonos del ERS, BNYM presentó una evidencia de reclamación maestra en el caso del Estado Libre Asociado al amparo del Título III (la "Reclamación Maestra del ERS") en la que se formulan reclamaciones contra el Estado Libre Asociado fundadas, entre otras cosas, en la sanción de la Resolución Conjunta 188 y la Ley 106, que crearon ambas un sistema de retiro "pay as you go" (de reparto) mediante el cual se les paga a las personas que se retiran con los fondos generales del Estado Libre Asociado en lugar de con los aportes de los empleados, lo cual se alega como garantía de los Bonos del ERS.[5]

13.     _HFA_: La HFA es una subsidiaria del Banco Gubernamental de Fomento de Puerto Rico ("GDB") y una instrumentalidad gubernamental independiente del Estado Libre Asociado. US Bank actúa como fiduciario de algunos Bonos del Programa de Modernización del Fondo de Capitales emitido por HFA (los "Bonos de HFA").  En representación de los tenedores de Bonos de HFA, US Bank presentó una evidencia de reclamación maestra (la "Reclamación Maestra de HFA"), que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13358.  La Reclamación Maestra de HFA formula reclamaciones contingentes y no liquidadas contra el Estado Libre Asociado y la Autoridad para el Financiamiento de la Vivienda de Puerto Rico ("PHA"), por "todos los derechos y privilegios que U.S. Bank, en carácter de Fiduciario, posee o

---

El ERS se reserva su derecho a impugnar la emisión de bonos por cualquier causal, incluso que los bonos emitidos por el ERS constituían un _exceso de atribuciones_ y por cualquier otra causal estipulada en las antedichas objeciones.

[5]  BNYM presentó inicialmente una evidencia de reclamación registrada por Prime Clerk, LLC, el 24 de mayo de 2018, como Evidencia de Reclamación N° 16775; y posteriormente presentó una reclamación enmendada, el 25 de mayo de 2018, que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 32004.  El 22 de mayo de 2019, el Estado Libre Asociado presentó una objeción a la Evidencia de Reclamación del ERS.  _Véase la Objeción de la Junta de Supervisión y Administración Financiera, conforme a la Sección 502 del Código de Quiebras y a la Regla 3007 de Quiebras, a las Reclamaciones presentadas o formuladas contra el Estado Libre Asociado por Bank of New York Mellon, en calidad de agente fiscal (Reclamación N° 16775)_ [ECF N° 7075].  Para evitar cualquier duda, esta Quincuagésima Tercera Objeción Colectiva no perjudica los derechos de las partes con respecto a dicha objeción, incluido cualquier derecho a intervenir, todos los cuales quedan preservados.

puede poseer, de cualquier naturaleza o clase, establecidos en los Instrumentos de emisión y el

Contrato de Préstamo, o en virtud de otros documentos o leyes aplicables, incluso por violación

de cláusulas y el posible desvío de ingresos pignorados para el pago de los Bonos, ya sea en el

pasado o en el futuro." Disposición adicional a la Reclamación Maestra de HFA, ¶ 13.  Asimismo,

la Reclamación Maestra de HFA formula "reclamaciones por todos y cada uno de los montos

adeudados a raíz de cualquier y todas las reclamaciones que el Fiduciario posea o pueda poseer

con relación a las obligaciones de Bonos pendientes, ya sean conocidas o desconocidas, en contra

de la PHA; todas ellas pretenden actuar en representación de la PHA y del Estado Libre Asociado,

ya sea que se formulen en el presente o en el futuro, incluidas, sin carácter limitativo,

reclamaciones por o fundadas en incumplimientos o violación de los Instrumentos de emisión, el

Contrato de Préstamo o cualquier cláusula u otra obligación contractual allí contenida; o

reclamaciones que surjan del desvío indebido del Patrimonio del Fideicomiso o cualquier otro bien

que garantice el pago de los Bonos, como cuestión de la ley estatal o federal pertinente; incluso,

sin carácter limitativo, mediante fideicomiso judicial, transmisión o trasferencia fraudulenta,

incumplimiento de obligaciones y deberes de naturaleza contractual y fiduciaria, incumplimiento

de compromisos implícitos de buena fe y trato justo u otras reclamaciones en virtud del common

law o del régimen del equity". *Ibíd.* , ¶ 14.

14.     _HTA_**:** la HTA es una sociedad que cotiza en bolsa y una instrumentalidad del

Estado Libre Asociado que constituye una entidad corporativa y política independiente y separada

del Estado Libre Asociado, creada mediante la Ley N° 74-1965 de la Asamblea Legislativa del

Estado Libre Asociado ("Ley Orgánica de la HTA").  La HTA es responsable de la construcción,

la operación y el mantenimiento de autopistas y otros sistemas de transporte en el Estado Libre

Asociado.  *Véase* el título 9 de las L.P.R.A., § 2002.  La Ley Orgánica de la HTA la autoriza a

emitir bonos. *Véase* el título 9 de las L.P.R.A., §§ 2004(g), (h), (l).  Haciendo uso de esta facultad, la HTA emitió varias series de bonos en virtud de dos resoluciones distintas (los "Bonos de HTA"): (*i*) Resolución N° 68-18, adoptada el 13 de junio 1968 (la "Resolución de 1968") y (*ii*) la Resolución N° 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998").  Con fecha 21 de mayo de 2017, la Junta de Supervisión, a pedido del Gobernador, expidió un certificado de restructuración de conformidad con las secciones 104(j) y 206 de la ley PROMESA y presentó una petición voluntaria de remedio para la HTA conforme a la sección 304(a) de la ley PROMESA, dando inicio a un caso al amparo del Título III de la citada ley.  A la Fecha de la Petición de la HTA, el 21 de mayo de 2017, permanecen pendientes bonos emitidos en virtud de la Resolución de 1968 por un monto principal aproximado de $830 millones, y un monto principal de bonos por $3.400 millones emitidos en virtud de la Resolución de 1998.  BNYM es el agente fiscal de los Bonos emitidos por la HTA.  En representación de los tenedores de Bonos de la HTA, BNYM presentó tres evidencias de reclamaciones maestras en el Caso del Estado Libre Asociado al amparo del Título III (la "Reclamación Maestra de la HTA"), donde cada una formula "una reclamación garantizada, contingente y no liquidada contra el Estado Libre Asociado en razón de cualquier y todas las reclamaciones, cuestiones de fondo, derechos y/o recursos que el Agente Fiscal o los Propietarios pueden tener contra el Estado Libre Asociado, derivados del derecho estricto o del régimen de equity (…) ."  *Véase* la Adenda a la Evidencia de Reclamación N° 121053, ¶ 15; la Adenda a la Evidencia de Reclamación N° 120982, ¶ 15; la Adenda a la Evidencia de Reclamación N° 115380, ¶ 15.[6]

---

[6] Si bien originalmente BNYM había presentado tres evidencias de reclamaciones registradas por Prime Clerk, LLC, como Evidencias de Reclamaciones N° 21286, 26541 y 35277, estas fueron posteriormente reemplazadas y enmendadas por las Evidencias de Reclamaciones N° 121053, 120982 y 115380.

15.   _AAA_: AAA es propietaria y opera los sistemas de aguas públicas y servidas de
Puerto Rico en toda la isla.  ASA emitió una serie de bonos garantizados por ingresos (los "Bonos
de AAA") en virtud de la Resolución N° 1583 de la Autoridad de Acueductos y Alcantarillados
de Puerto Rico, que autoriza y asegura los Bonos de la Autoridad de Acueductos y Alcantarillados
de Puerto Rico garantizados por el Estado Libre de Puerto Rico y determinadas resoluciones
complementarias.  Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario de los
Bonos de ASA y presentó una evidencia de reclamación maestra contra el Estado Libre Asociado
en representación de los tenedores de Bonos de AAA, que fue registrada por Prime Clerk, LLC,
como Evidencia de Reclamación N° 22620 (la "Reclamación Maestra de AAA").  La Reclamación
Maestra de la AAA formula "una reclamación contingente contra el Estado Libre Asociado con
relación a los Bonos por una suma no inferior a $284.755.000, más los intereses y las primas que
devenguen los Bonos desde la Fecha de Petición en adelante, con más los respectivos honorarios,
costos, gastos y demás cargos devengados, o a devengarse o imputarse".  Adenda a la Reclamación
Maestra de AAA, ¶ 9.

16.   _PBA_: PBA presuntamente emitió Bonos garantizados por Ingresos para financiar
edificios de oficinas y otras instalaciones arrendadas a diversos departamentos, agencias públicas
y reparticiones del Estado Libre Asociado.  US Bank y US Bank Trust actúan como agentes
fiscales de algunos bonos garantizados por ingresos emitidos por PBA, como se identifica en la
nota al pie 3 de la Evidencia de Reclamación N° 62833 (los "Bonos de PBA"), y en representación
de los tenedores de Bonos de PBA presentó una evidencia de reclamación maestra en el Caso del
Estado Libre Asociado al amparo del Título III por todos los montos adeudados pendientes (la
"Reclamación Maestra de PBA"), que fue registrada por Prime Clerk, LLC, como Evidencia de

Reclamación N° 62833.[7]  La Reclamación Maestra de PBA formula reclamaciones liquidadas por

un supuesto monto principal de alrededor de $4.000 millones, $160 millones por presuntos

intereses impagos y reembolso de honorarios y gastos de los agentes fiscales, además de

reclamaciones no liquidadas y contingentes por todos y cada uno de los montos adeudados "en

razón de cualquier y todas las reclamaciones que el Agente Fiscal tenga o pueda tener con relación

a las obligaciones de Bonos pendientes, ya sean conocidas o desconocidas, contra el Estado Libre

Asociado y todas ellas pretenden actuar en representación del Estado Libre Asociado … ."

Disposición adicional a la Reclamación Maestra de PBA, ¶¶ 19-21.

17.     ***PRCCDA***: PRCCDA es una sociedad que cotiza en bolsa creada por la Ley N° 142

del 4 de octubre de 2001, enmendada por la Ley N° 185 del 3 de agosto de 2004, con el objeto de

desarrollar, gestionar y supervisar el Centro de Convenciones de Puerto Rico, el Coliseo de Puerto

Rico José Miguel Agrelot, el Aeropuerto Ejecutivo Rivas Domenici y otros desarrollos

hospitalarios, comerciales y residenciales dentro del Distrito.  BNYM actúa como fiduciario de

determinados Bonos garantizados por Ingresos del Impuesto a la Ocupación Hotelera (los "Bonos

de PRCCDA"), y en representación de los tenedores de Bonos de PRCCDA presentó una evidencia

de reclamación maestra en contra del Estado Libre Asociado, que fue registrada por Prime Clerk,

LLC, como Evidencia de Reclamación N° 37319 (la "Reclamación Maestra de PRCCDA").  La

Reclamación Maestra de PRCCDA formula una "reclamación contingente y no liquidada contra

el Estado Libre Asociado en razón de cualquier y todas las reclamaciones, cuestiones de fondo,

derechos y/o recursos que el Fiduciario o los Propietarios puedan tener contra el Estado Libre

Asociado, derivadas del derecho estricto o del régimen de equity, en virtud de o vinculados con el

---

[7]  Evidencia de Reclamación N° 62833 enmendada y reemplazada por la Evidencia de Reclamación N° 13351,
presentada inicialmente por el Agente Fiscal.

Contrato de Fideicomiso, el Contrato de Pignoración, los Bonos o el Patrimonio del Fideicomiso;

incluso, sin carácter limitativo, violaciones a la Constitución de Estados Unidos y a la Constitución

de Puerto Rico, violaciones a la Ley de Administración, Supervisión y Estabilidad de Puerto Rico,

título 48 del Código de Estados Unidos, § 2101 *et seq.*, incluida, sin carácter limitativo, la sección

407 de dicha ley, interferencia contractual ilícita, apropiación, fraude, instigación fraudulenta,

disposición de bienes en fraude a los acreedores, declaraciones falsas, enriquecimiento ilícito,

fideicomiso bajo el régimen de equity o judicial, subordinación derivada del régimen de equity,

violación contractual, indemnización, reembolso, o contribución, que se hayan formulado o

puedan formularse en el presente o en el futuro por, o entre, el Fiduciario, cualquiera de los

Propietarios, la Autoridad [PRCCDA]] y/o el Estado Libre Asociado, o que involucre a dichas

personas".  Adenda a la Reclamación Maestra de PRCCDA, ¶ 11.

18.     ***PRIDCO***: PRIDCO se creó por Ley N° 188 de 1942, codificada como 23 L.P.R.A.

§§ 271 *et seq.*, con el objeto de promover el desarrollo económico de Puerto Rico y proporcionar

instalaciones industriales para arrendamiento o venta a empresas manufactureras privadas.  US

Bank actúa como fiduciario de algunos Bonos de Refinanciación Garantizados por Ingresos para

Fines Especiales, Serie 1997 A y Serie 2003 (los "Bonos de PRIDCO"), y en representación de los

tenedores de Bonos de PRIDCO presentó una evidencia de reclamación maestra contra el Estado

Libre Asociado, que fue registrada por Prime Clerk, LLLC, como Evidencia de Reclamación N°

13445 ("Reclamación Maestra de PRIDCO").  La Reclamación Maestra de PRIDCO formula

reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado, y pretende "recuperar

todo otro monto adeudado en razón de cualquier y todas las reclamaciones que el Fiduciario tenga

o pueda tener vinculadas a las obligaciones de Bonos pendientes, sean conocidas o desconocidas,

contra el Estado Libre Asociado y todos los que pretendan actuar en representación del Estado

13

Libre Asociado, y ya sea que se hayan formulado en el presente o se formulen en el futuro; incluidas, sin carácter limitativo, reclamaciones por o fundadas en incumplimientos o violación de los Documentos de los Bonos, contratos de arrendamiento u otras obligaciones contractuales relacionadas con la garantía subyacente, cualquier otra cláusula u otra obligación contractual contenida en ellos, o reclamaciones que surjan del desvío indebido de ingresos de PRIDCO o de cualesquier otro bienes que garantizan el pago de los Bonos en virtud de los Documentos de los Bonos, como asunto de derecho del Estado Libre Asociado, estatal o federal, incluidos, sin carácter limitativo, mediante fideicomiso judicial, transmisión o trasferencia fraudulenta, incumplimiento de obligaciones y deberes de naturaleza contractual y fiduciaria, incumplimiento de compromisos implícitos de buena fe y trato justo u otras reclamaciones en virtud del common law o del régimen del equity"  Disposición adicional a la Reclamación Maestra de PRIDCO, ¶¶ 12-13.

19.    ***PRIFA***: PRIFA es una empresa relacionada de GDB que fue creada en 1988 para proporcionar asistencia financiera, administrativa y de otra clase al Estado Libre Asociado, sus sociedades que cotizan en bolsa y reparticiones a cargo de desarrollar y operar instalaciones de infraestructura.  En representación de los tenedores de diversos bonos y notas emitidos por PRIFA (en conjunto "los Bonos de PRIFA"), se formularon cinco evidencias de reclamaciones maestras en contra del Estado Libre Asociado (en conjunto, las "Reclamaciones Maestras de PRIFA") de parte de BNYM, US Bank Trust y UMB Bank, N.A. ("UMB").  En primer lugar, BNYM formuló las siguientes tres evidencias de reclamaciones maestras: Evidencia de Reclamaciones N° 16759 que formula, en representación de los tenedores de Notas en Anticipación de Bonos Garantizados por Ingresos del Fondo Dedicado al pago de Bonos de Renta de Impuestos, Serie 15 (las "Notas de PRASA"), una "reclamación contingente y no liquidada contra el Estado Libre Asociado a raíz de cualesquier y todas las reclamaciones, cuestiones de fondo, derechos y/o recursos que el

Fiduciario o los Propietarios puedan tener contra el Estado Libre Asociado, derivadas del derecho

estricto o del régimen de equity, fundadas en o relacionadas con el Contrato de Fideicomiso, el

Acuerdo de Tenedores de Notas, las Notas o los Ingresos Pignorados…    "; Evidencia de

Reclamación N° 19814 que formula, en representación de los tenedores de Notas de ASA,

reclamaciones por monto principal e intereses impagos, además de honorarios y gastos del

fiduciario; y la Evidencia de Reclamación N° 103718, que formula, en representación de los

tenedores de bonos garantizados por ingresos emitidos por ASA, incluidos Bonos Garantizados

por Ingresos (Proyecto de la Autoridad Portuaria), Serie 2011A, "una reclamación contingente y

no liquidada contra el Estado Libre Asociado a raíz de cualesquier y todas las reclamaciones,

cuestiones de fondo, derechos y/o recursos que el Fiduciario o los tenedores de los Bonos tengan

o puedan tener contra el Estado Libre Asociado, derivados del derecho estricto o el régimen de

equity . . . ."

20.    Asimismo, US Bank presentó una evidencia de reclamación maestra con respecto

a determinados Bonos de PRIFA, que fue registrada por Prime Clerk, LLC, como Evidencia de

Reclamación N° 13386, en representación de los tenedores de Bonos Rum Tax de PRIFA (Bonos

Garantizados por Ingresos Fiscales Especiales, Series 2005A, 2005B, 2005C, y Serie 2006B), que

formula "reclamaciones por montos contingentes, no liquidados de intereses pagaderos en el

futuro, intereses devengados y por devengarse en el futuro con respecto a montos principales e

intereses vencidos, honorarios y costos y reclamaciones de indemnización del Fiduciario por

incurrirse en el futuro en virtud de los Documentos de los Bonos, y todo otro monto adeudado a

raíz de todas y cada una de las reclamaciones que el Fiduciario tenga o pueda tener con relación a

las obligaciones de Bonos pendientes, cuyo monto asciende por lo menos a $249.099.446,17, cuya

línea de conducta continúa . . . ."  Disposición adicional a la Reclamación N° 13386, ¶ 26.  UMB

también presentó una evidencia de reclamación maestra en representación de tenedores de Bonos garantizados por Ingresos de Infraestructura de PRIFA, Serie 2007 A (Proyecto del Campus MEPSI), que fue registrada por Prime Clerk LLC, como Evidencia de Reclamación N° 22130, y pretende recuperar un monto principal impago presuntamente adeudado que asciende a $33,9 millones, intereses impagos presuntamente adeudados por un monto total de $188.552,72, además de montos no liquidados por todos y cada uno de los montos adeudados a raíz de cualquier reclamación que UMB pueda tener con relación a las obligaciones de bonos pendientes. Disposición adicional a la Evidencia de Reclamación N° 22130, ¶¶ 17-18.

21.     ***PRMFA***: PRMFA es una corporación pública y una instrumentalidad del Estado Libre Asociado, creada por Ley N° 29 de la Asamblea Legislativa de Puerto Rico, aprobada el 30 de junio de 1972, y enmendada y complementada, y codificada con el Título 21, § 681 *et seq., de las Leyes Anotadas de Puerto Rico. Véase* el título Título 21, § 684. PRMFA presuntamente puede emitir bonos según lo estime necesario para financiar la compra de bonos municipales o notas municipales de anticipación, o para refinanciar bonos de PRMFA. Adenda de la Evidencia de Reclamación No. 30168, ¶ 7. BNYM y US Bank Trust actúan como fiduciarios de los bonos emitidos por PRMFA (en conjunto, los "Bonos de PRMFA "), y en representación de los tenedores de algunos Bonos de PRMFA presentaron evidencias de reclamaciones maestras contra el Estado Libre Asociado (en conjunto, las "Evidencias de Reclamaciones de PRMFA"). La evidencia de reclamación maestra presentada por BNYM con respecto a los Bonos de PRMFA fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 30168, y formula "una reclamación contingente y no liquidada contra el Estado Libre Asociado a raíz de cualquier y toda reclamación, cuestiones de fondo, derechos y/o recursos que el Fiduciario o los tenedores de los Bonos tienen o pueden tener contra el Estado Libre Asociado, surgidos del derecho estricto o del régimen de

16

equity… ." *Ibíd.*, ¶ 15.  La evidencia de reclamación maestra presentada por US Bank Trust con respecto a los Bonos de PRMFA fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13364, y formula "reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios que U.S. Bank, en carácter de Fiduciario, posee o puede poseer, de cualquier clase, según se establece en el Instrumento de emisión y en la Ley, o de conformidad con otros documentos o leyes aplicables, incluso por incumplimiento de cláusulas, omisión de financiar sumas solicitadas o el posible desvío de ingresos pignorados para el pago de los Bonos, ya sea en el pasado o en el futuro".  Disposición adicional a la Evidencia de Reclamación N° 13364, ¶ 9.

22.  ***PRPFC***: PRPFC es una sociedad subsidiaria del Banco Gubernamental de Fomento para Puerto Rico ("GDB"), creada en virtud de la Resolución 5044 de la Junta Directiva del GDB.  US Bank Trust actúa como fiduciario de algunos bonos emitidos por PRPFC (los "Bonos de PRPFC"), específicamente la Serie 2012A, la Serie 2011A y los bonos B.  En representación de los tenedores de los Bonos de PRPFC, US Bank Trust presentó una evidencia de reclamación contra el Estado Libre Asociado, registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13374 (la "Reclamación Maestra de PRPFC"), por la presunta "omisión de incluir en el presupuesto anual del Estado Libre Asociado el monto necesario para las obligaciones de deuda de los Deudores Autorizados que emitieron las Notas."  US Bank Trust formula una reclamación contingente, no liquidada, por "todos y cada uno de los montos adeudados derivados de cualquier y todas las reclamaciones que el Fiduciario tiene o puede tener con relación a las obligaciones de Bonos pendientes, sean conocidas o desconocidas, contra el Estado Libre Asociado y todos aquellos que pretenden actuar en representación del Estado Libre Asociado."

23.     _UPR_: La UPR es supuestamente "una sociedad que cotiza en bolsa, del Estado Libre Asociado, que constituye un sistema orgánico de educación superior", conforme a la Ley N° 1 de la Legislatura de Puerto Rico, aprobada el 20 de enero de 1966 (Título 18 L.P.R.A. §§ 601-614).  Disposición adicional a la Evidencia de Reclamación N° 13382, ¶ 5.  US Bank actúa como fiduciario de ciertos Bonos de Refinanciación Garantizados por Ingresos del Sistema Universitario, Serie P y Q, emitidos por la UPR, y presentó una evidencia de reclamación maestra registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13382 (la "Reclamación Maestra de la UPR").  La Reclamación Maestra de la UPT formula "reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios que U.S. Bank, en carácter de Fiduciario, tiene o puede tener, de cualquier naturaleza o clase, según se establece en el Contrato de Fideicomiso, o en razón de otros documentos o leyes aplicables, incluso por incumplimiento de cláusulas y el posible desvío de ingresos pignorados para el pago de los Bonos, ya sea en el pasado o en el futuro."  _Ibíd._, ¶ 12.

**D.      Reclamaciones del Estado Libre Asociado y Procedimientos aplicables a Objeciones Colectivas**

24.     A la fecha, se presentaron aproximadamente 168,922 evidencias de reclamaciones contra los Deudores y fueron registradas por Prime Clerk.   Tales evidencias totalizan aproximadamente $43,6 billones en reclamaciones contra los Deudores.  Del total de evidencias de reclamaciones presentadas, aproximadamente 104,404 fueron formuladas contra el Estado Libre Asociado por obligaciones que ascienden a un total aproximado de $33.2 billones, más sumas no liquidadas.

25.     A fin de resolver de manera eficiente tantas evidencias innecesarias como sea posible, el 16 de octubre de 2018 los Deudores presentaron ante este Tribunal su _Petición para_

*que se dicte una Resolución (a) que apruebe procedimientos limitados para objeciones colectivas,*

*(b) elimine el requisito de la Regla de Quiebras 3007(e)(6) y (c) conceda el remedio relacionado*

[ECF No. 4052] (la "Petición de Procedimientos Colectivos").   La naturaleza del remedio allí

solicitado era no sustantiva y tenía por finalidad agilizar y optimizar el proceso de conciliación de

reclamaciones mediante, entre otras cosas, un incremento del número de reclamaciones que caben

en el ámbito de una objeción colectiva.   Si bien no se interpuso ninguna objeción a la Petición de

procedimientos colectivos, a la luz de algunos comentarios recibidos, se aportaron al Tribunal un

formulario revisado de resolución y un anexo relacionado.   Según comentarios del Tribunal en una

audiencia celebrada el 7 de noviembre de 2018, dicha resolución fue revisada y el Tribunal hizo

lugar al remedio solicitado en la Petición de Procedimientos Colectivos dictando una resolución

con fecha 14 de noviembre de 2018. *Véase la Resolución que (A) aprueba los procedimientos*

*limitados de objeciones colectivas, (B) elimina el requisito de la Regla de Quiebras 3007(e)(6), y*

*(c) concede el remedio relacionado* [ECF No. 4230]; *Procedimientos de Objeciones Colectivas*

[ECF No. 4230-1] (en conjunto, los "Procedimientos de Objeciones Colectivas").   Con fecha 29

de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de la forma de

notificación para las objeciones colectivas presentadas con arreglo a los Procedimientos aplicables

a las Objeciones Colectivas. *Véase la Resolución que aprueba las versiones en inglés y en español*

*de la Forma de Notificación de las Objeciones Colectivas* [ECF No. 4381] (la "Resolución del

Tribunal que ordena la Notificación").

26.     Esta Quincuagésima Tercera Objeción Colectiva se presenta de conformidad con

los Procedimientos aplicables a Objeciones Colectivas que establece el Tribunal.

## OBJECIONES A LAS EVIDENCIAS DE RECLAMACIONES

27.     Los Procedimientos aplicables a objeciones colectivas le permiten al Estado Libre

Asociado presentar una objeción colectiva contra múltiples evidencias de reclamaciones,

fundándose en cualquiera de las causales que contemplan las Reglas Federales del Proceso de Quiebra 3007(d)(1) – (7).

28.     De conformidad con las reglas 3007(d)(1), 3007(d)(2) y 3007 (d)(6) del Procedimiento Federal de Quiebras y de los Procedimientos aplicables a objeciones colectivas, la Quincuagésima Tercera Objeción Colectiva pretende reclasificar las reclamaciones que: (a) están parcialmente formuladas contra el deudor incorrecto y, por lo tanto, presentadas en el caso equivocado; (b) son parcialmente duplicados de una o más Reclamaciones Maestras presentadas en el Caso del Estado Libre Asociado al amparo del Título III; e (c) incumplen parcialmente con las reglas aplicables para la presentación de una objeción colectiva.

29.     En primer lugar, una parte de cada reclamación identificada en la columna "Formuladas" del **Anexo A** a la presente (en conjunto, las "Reclamaciones Duplicadas, Deficientes y contra el Deudor Incorrecto") identifica al Estado Libre Asociado como deudor, cuando dichas reclamaciones están correctamente formuladas, en todo caso, contra la Autoridad de Energía Eléctrica de Puerto Rico ("PREPA").  En la evidencia de reclamaciones o la documentación de respaldo, algunas Reclamaciones Duplicadas, Deficientes y contra el Deudor Incorrecto señalan que una parte de la obligación invocada recae apropiadamente, en todo caso, en PREPA y no en el Estado Libre Asociado, mientras que otras Reclamaciones Duplicadas, Deficientes y contra el Deudor Incorrecto deberían formularse contra PREPA, en todo caso, según surge del examen efectuado por los Deudores de los nombres y la información CUSIP proporcionada para los bonos en cuestión.  En consecuencia, una parte de cada una de las Reclamaciones Duplicadas, Deficientes y contra el Deudor Incorrecto debería reclasificarse para formularse contra PREPA, como se indica en la columna "Corregido" del **Anexo A** a la presente (en conjunto las "Reclamaciones

20

<u>Reclasificadas</u>").  Los Deudores se reservan el derecho a objetar las Reclamaciones Reclasificadas con base en cualquier otro fundamento.[8]

30.     En segundo lugar, cada Reclamación Duplicada, Deficiente y contra el Deudor Incorrecto pretende invocar, en parte, una obligación contra el Estado Libre Asociado vinculada a uno o más bonos, que es duplicada de una o más Reclamaciones Maestras, las cuales, como se describió más arriba, fueron presentadas en el Caso del Estado Libre Asociado al amparo del Título III por el agente fiscal y/o el fiduciario para determinados bonos emitidos por AFICA, el Fideicomiso de los Niños, ERS, HFA, HTA, PRASA, PBA, PRCCDA, PRIDCO, PRIFA, PRPFCCA, PRMFA y la UPR.  Por lo tanto, de no desestimarse estas partes de las reclamaciones citadas, el resultado será que los demandantes aplicables podrían llegar a recibir una doble indemnización injustificada del patrimonio del Estado Libre Asociado, en detrimento de otras partes interesadas en el Caso del Estado Libre Asociado al amparo del Título III.  Los tenedores de las Reclamaciones Duplicadas, Deficientes y contra el Deudor Incorrecto no resultarán perjudicados por la desestimación de esta parte de sus reclamaciones pues las obligaciones asociadas con sus reclamaciones se encuentran subsumidas dentro de una o más Reclamaciones Maestras.

31.     En tercer lugar, cada Reclamación Duplicada, Deficiente y contra el Deudor Incorrecto omite parcialmente proporcionar información suficiente para que los Deudores determinen el emisor de los bonos y el monto de los bonos supuestamente en disputa.  Debido a

---

[8] US Bank presentó evidencias de reclamaciones maestras en el Caso del Estado Libre Asociado al amparo del Título III, en representación de los tenedores de bonos emitidos por PREPA, que fueron registradas por Prime Clerk, LLC, como Evidencias de Reclamaciones N° 32565 y 50049 (en conjunto, las <u>Reclamaciones Maestras de PREPA</u>").  Las Reclamaciones Maestras de PREPA formulan reclamaciones no liquidadas por el valor supuesto de los derechos legales otorgados por el Estado Libre Asociado a PREPA.  En la medida en que cualquiera de los tenedores de bonos emitidos por PREPA tuvo por objeto formular una reclamación contra el Estado Libre Asociado fundándose en cualquiera de las causales establecidas en las Reclamaciones Maestras de PREPA, dichas reclamaciones deben desestimarse pues son duplicadas de las Reclamaciones Maestras de PREPA, de acuerdo con la Regla 3007(d)(1) del Procedimiento Federal de Quiebras.

este incumplimiento de las reglas aplicables, ni los Deudores ni el Tribunal están en condiciones

de determinar la validez de esta parte de cada Reclamación Duplicada, Deficiente y contra el

Deudor Incorrecto.  Producto de ello, estas partes de las reclamaciones mencionadas deberían

también desestimarse.

32.     Por último, dado que cada una de las Reclamaciones Duplicadas, Deficientes y

contra el Deudor Incorrecto también pretende invocar una obligación asociada a uno o más bonos

emitidos por el Estado Libre Asociado, el demandante conservará una reclamación remanente en

el Caso del Estado Libre Asociado al amparo del Título III (en conjunto, las "Reclamaciones

Remanentes"), como se identifican en la columna "Reclamaciones Remanentes" del **Anexo A** al

presente.  Dado que esta objeción no constituye una objeción a las Reclamaciones Remanentes,

los Deudores se reservan el derecho de objetar las Reclamaciones Remanentes fundándose en

cualquier causal.

33.     En respaldo de lo expresado precedentemente, el Estado Libre Asociado se basa en

la *Declaración de Jay Herriman, la cual fundamenta la Quincuagésima Tercera Objeción*

*Colectiva (no sustantiva) del Estado Libre Asociado de Puerto Rico contra las Reclamaciones*

*Duplicadas, Deficientes y contra el Deudor Incorrecto*, del 6 de junio de 2019, que se adjunta a la

presente como **Anexo B**.

### NOTIFICACIÓN

34.     De conformidad con los Procedimientos aplicables a Objeciones Colectivas y la

Resolución del Tribunal que ordena la Notificación, el Estado Libre Asociado ha notificado de

esta Quincuagésima Tercera Objeción Colectiva a (a) los acreedores particulares conforme a la

Quincuagésima Tercera Objeción Colectiva, (b) el Síndico de Estados Unidos, y (c) la Lista

Maestra de Notificaciones (como se la define en la *Resolución de Enmienda Adicional de los*

*Procedimientos de Tramitación de Casos* [ECF N° 3804]), que se encuentra disponible en el sitio

web de casos de los Deudores, en https://cases.primeclerk.com/puertorico.  Se adjunta al presente

como **Anexo C** una copia de la notificación de esta Quincuagésima Tercera Objeción Colectiva.

Se presentan las traducciones al español de la Quincuagésima Tercera Objeción Colectiva y de

todos los anexos a la misma junto con esta Objeción, y se notifica a las partes.  El Estado Libre

Asociado declara que, a la luz de la naturaleza del remedio solicitado, no es necesario cursar

ninguna otra notificación adicional.

## RESERVA DE DERECHOS

35.      Esta Quincuagésima Tercera Objeción Colectiva se limita a las causales que aquí

se exponen.  Por consiguiente, la misma se presenta sin perjuicio de los derechos de los Deudores

a objetar las Reclamaciones Duplicadas, Deficientes y contra el Deudor Incorrecto, o cualquier

otra reclamación basándose en cualquier causal.   Los Deudores se reservan expresamente el

derecho a presentar cualquier otra objeción sustantiva o procesal.   Nada de lo contenido en la

presente objeción o las acciones entabladas en pos de obtener la reparación allí pretendida tiene

por finalidad o debe interpretarse en el sentido de constituir:  (a) una admisión de la validez de

cualquier reclamación formulada contra los Deudores; (b) una renuncia al derecho de los Deudores

de disputar cualquier otra reclamación por cualquier causal; (c) una promesa o intimación de pago

de cualquier reclamación; (d) una solicitud o autorización para asumir cualquier convenio, contrato

o arrendamiento previo a la petición con arreglo a la Sección 365 del Código de Quiebras; o (e)

una renuncia a los derechos de los Deudores en virtud de la ley PROMESA, el Código de Quiebras

o cualquier otra ley aplicable.

## SIN SOLICITUD PREVIA

36.      No se ha presentado ninguna petición de remedio anterior en relación con esta

Quincuagésima Tercera Objeción Colectiva  ante este u otro tribunal.

POR LO TANTO, el Estado Libre Asociado solicita con todo respeto que se dicte una resolución esencialmente en la forma de la Propuesta de Resolución adjuntada al presente como **Anexo D**, (1) que otorgue el remedio aquí solicitado y (2) que le conceda al Estado Libre Asociado cualquier otro remedio adicional según se considere justo.

Fecha: 6 de junio de 2019                    Presentado con el debido respeto,
      San Juan, Puerto Rico

*Firma en la versión en inglés*
Hermann D. Bauer
USDC N° 215205
Daniel J. Perez-Refojos
USDC N° 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)
**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión y Administración Financiera en carácter de representantes del Estado Libre Asociado de Puerto Rico*