Hearing Date: July 24, 2019, at 9:30AM (Atlantic Standard Time)
Response Deadline: July 9, 2019 at 4:00PM (Atlantic Standard Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THE OBJECTION AFFECTS YOUR CLAIM(S).**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

In re:

THE FINANCIAL OVERSIGHT AND
MANAGEMENT BOARD FOR PUERTO RICO,

    as representative of

THE COMMONWEALTH OF PUERTO RICO, *et al.*,

                Debtors.[1]

PROMESA
Title III

No. 17 BK 3283-LTS

(Jointly Administered)

**This filing relates to the Commonwealth.**

### FIFTY-NINTH OMNIBUS OBJECTION (NON-SUBSTANTIVE) OF THE COMMONWEALTH OF PUERTO RICO TO DUPLICATE BOND CLAIMS

The Commonwealth of Puerto Rico (the "Commonwealth"), by and through the Financial

Oversight and Management Board for Puerto Rico (the "Oversight Board"), as the representative

of the Commonwealth pursuant to Section 315(b) of the *Puerto Rico Oversight, Management, and

Economic Stability Act* ("PROMESA"),[2] files this fifty-ninth objection (the "Fifty-Ninth Omnibus

Objection") to the proofs of claim listed on **Exhibit A** hereto, each of which is partially duplicative

of one or more master proofs of claim asserted against the Commonwealth on behalf of the holders

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (the "Commonwealth") (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA" and together with the Commonwealth, HTA, and ERS, the "Debtors") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

[2] PROMESA is codified at 48 U.S.C. §§ 2101-2241.

of certain bonds, and in support of the Fifty-Ninth Omnibus Objection respectfully represents as follows:

## JURISDICTION

1.     The United States District Court for the District of Puerto Rico has subject matter jurisdiction to consider this matter and the relief requested herein pursuant to PROMESA section 306(a).

2.     Venue is proper in this district pursuant to PROMESA section 307(a).

## BACKGROUND

**A.     The Bar Date Orders in the Commonwealth Title III Case**

3.     On May 3, 2017, the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for the Commonwealth pursuant to PROMESA section 304(a), commencing a case under Title III thereof (the "Commonwealth Title III Case").

4.     On January 16, 2018, the Debtors filed their *Motion for Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2255][3] (the "Bar Date Motion"). Pursuant to the *Order (A) Establishing Deadlines and Procedures for Filing Proofs of Claims and (B) Approving Form and Manner of Notice Thereof* [ECF No. 2521] (the "Initial Bar Date Order"), the Court granted the relief requested in the Bar Date Motion and established deadlines and procedures for filing proofs of claim in the Commonwealth Title III Case. Upon the informative motion of certain creditors, and the support of the Debtors, the Court subsequently entered the *Order (A) Extending Deadlines for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof* [ECF No. 3160]

---

[3]  Unless otherwise stated herein, ECF citations refer to documents filed in Bankruptcy Case No. 17 BK 3283-LTS.

(together with the Initial Bar Date Order the "Bar Date Orders") extending these deadlines to June 29, 2018 at 4:00 pm (Atlantic Time).

**B.      Operations and Bond Debt of the Commonwealth**

5.      The Constitution of the Commonwealth of Puerto Rico (the "P.R. Constitution") became effective in 1952.   The P.R. Constitution created the Commonwealth as the central government of Puerto Rico, "republican in form" and divided into three branches: legislative, judicial and executive.  *See* P.R. Const., Art. I, §§ 1, 2.

6.      The P.R. Constitution authorizes the Commonwealth to issue debt, subject to various limitations, including on the ability of the Commonwealth to pledge its revenues.  *See* P.R. Const. Art. VI § 2.  In 1961, Section 2 of Article VI of the P.R. Constitution was amended to limit the Commonwealth's borrowing on the basis of the amount of debt service the Commonwealth would have to pay relative to its historical revenues.

7.      Since 1961, the Commonwealth has issued billions of dollars of general obligation bonds ("GO Bonds") purportedly backed by its full faith, credit, and taxing power.  GO Bonds are public debt under Article VI, § 8 of the P.R. Constitution.  Each series of GO Bonds was issued pursuant to a bond resolution and offering memorandum.

**C.      Bond Debt Master Proofs of Claim for Bonds Not Issued By the Commonwealth**

8.      Pursuant to the Initial Bar Date Order, the indenture trustees, fiscal agents, or any similar agent or nominee for each respective series of bonds issued by one of the Debtors may file a master proof of claim against the applicable debtor on behalf of themselves and all holders of bond claims for the respective series of bonds for obligations arising under the respective trust agreements, resolutions, or similar bond documents.  Initial Bar Date Order, ¶ 5(a).  As explained below, master proofs of claim (collectively, the "Master Claims") have been filed in the

3

Commonwealth Title III Case on behalf of the holders of certain bonds issued by the following entities: Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority ("AFICA"); Children's Trust; Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS"); Puerto Rico Housing Finance Authority ("HFA"); Puerto Rico Highways and Transportation Authority ("HTA"); Puerto Rico Aqueduct and Sewer Authority ("PRASA"); Puerto Rico Public Buildings Authority ("PBA"); Puerto Rico Convention Center District Authority ("PRCCDA"); Puerto Rico Industrial Development Company ("PRIDCO"); Puerto Rico Infrastructure Financing Authority ("PRIFA"); Puerto Rico Municipal Finance Agency ("PRMFA"); Puerto Rico Public Finance Corporation ("PRPFC"); and University of Puerto Rico ("UPR").

9.    *AFICA*—AFICA is a public corporation and government instrumentality of the Commonwealth created by Act No. 121 of the Legislative Assembly of Puerto Rico, approved June 27, 1977 (as amended and supplemented and codified as P.R. Laws Ann. tit. 12, § 1251 *et seq.*).  P.R. Laws Ann. tit. 12, § 1254.  AFICA issued certain Puerto Rico Industrial, Tourist, Educational, Medical and Environmental Control Facilities Financing Authority Educational Facilities Revenue Bonds (Plaza Universitaria Project) ("Plaza Universitaria Bonds").  BNYM serves as trustee of the Plaza Universitaria Bonds and filed a master proof of claim, which was logged by Prime Clerk, LLC, as Proof of Claim No. 68271, asserting "a secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity," including "for breach of covenants, failure to fund requested sums, constructive trust, or for the potential diversion of revenues pledged for the payment of the Bonds."  Addendum to Proof of Claim No. 68271, ¶ 15.

10.     Additionally, AFICA issued certain Higher Education Refunding Revenue Bonds (together with the Plaza Universitaria Bonds the, "AFICA Bonds"), for which U.S. Bank Trust National Association ("US Bank Trust") and U.S. Bank National Association ("US Bank") serve as trustees.  US Bank and US Bank Trust filed a master proof of claim, logged by Prime Clerk, LLC, as Proof of Claim No. 13391 (together with Proof of Claim No. 68271 the "AFICA Master Claims").  On behalf of the holders of such bonds, US Bank and US Bank Trust assert contingent, unliquidated claims against the Commonwealth for all rights and entitlement . . ., including for breach of covenants and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future."  Addendum to Proof of Claim No. 13391, ¶ 11.

11.     ***Children's Trust***—The Children's Trust was established by the Children's Trust Act (Act No. 173 of 1999), 24 L.P.R.A. §§ 3121, *et seq.*, in connection with a settlement agreement that was entered into by participating cigarette manufacturers and Puerto Rico, 46 states, and five other U.S. jurisdictions in November 1998 in the settlement of certain smoking-related litigation, including the Commonwealth's right to receive certain annual and strategic contribution fund payments to be made by such participating manufacturers under the MSA. Art. 4 Act 173-1999, 24 L.P.R.A. § 3122.  U.S. Bank serves as trustee for certain Children's Trust Tobacco Settlement Asset-Backed Bonds Series 2002, 2005, 2008A, and 2008B (the "Children's Trust Bonds").  On behalf of the holders of the Children's Trust Bonds, US Bank filed a master proof of claim, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13354 ("Children's Trust Master Claim"), asserting "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Indenture and the Act, or pursuant to other applicable documents or law, including for breach of covenants

5

and for the potential diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future." Rider to Children's Trust Master Claim, ¶ 9.

12.    **_ERS_**—ERS is a trust established by the Commonwealth in 1951 for the economic well-being of public employees. ERS is an agency of the government, separate and apart from the Commonwealth government and its other instrumentalities. *See* 3 L.P.R.A § 775. Purportedly pursuant to that certain *Pension Funding Bond Resolution*, adopted on January 24, 2008, and certain supplemental resolutions, ERS issued senior and subordinate pension funding bonds (the "ERS Bonds"), in the aggregate original principal amount of approximately $2.9 billion.[4] BNYM serves as the fiscal agent with respect to the ERS Bonds. On behalf of the holders of ERS Bonds, BNYM filed a master proof of claim in the Commonwealth Title III Case (the "ERS Master Claim"), asserting claims against the Commonwealth based on, among other things, the enactment of Joint Resolution 188 and Law 106, which together created a "pay as you go" retirement system whereby pensioners are paid from the general funds of the Commonwealth, instead of employers' contributions, which is alleged to be collateral for the ERS Bonds.[5]

---

[4]  On May 21, 2017, the Oversight Board, at the request of the Governor, issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for ERS, pursuant to PROMESA section 304(a), commencing a case under Title III thereof. On March 12, 2019, the Official Committee of Unsecured Creditors filed an *Omnibus Objection to Claims Asserted by Holders of Bonds Issued by ERS* [Case No. 17-3566, ECF No. 381], on the ground that the bond issuance exceeded ERS's statutory authority and was thus *ultra vires*, rendering the ERS Bonds null and void. On April 23, 2019, the Official Committee of Retired Employees of the Commonwealth of the Puerto Rico filed an *Omnibus Objection Of The Official Committee Of Retired Employees Of The Commonwealth Of Puerto Rico, Pursuant To Bankruptcy Code Section 502 And Bankruptcy Rule 3007, To Claims Filed Or Asserted By Holders Of ERS Bonds Against ERS And The Commonwealth* [Case No. 17-3283, ECF No. 6482], on the ground, among others, that the bond issuance was *ultra vires*. ERS reserves its rights to challenge the bond issuance on any grounds whatsoever, including on the ground that the ERS bonds were *ultra vires*, and any other grounds set forth in the foregoing objections.

[5]  On May 22, 2019, the Commonwealth filed an objection to the ERS Master Proof of Claim. *See Objection of Financial Oversight and Management Board, Pursuant to Bankruptcy Code Section 502 and Bankruptcy Rule 3007, to Claims Filed or Asserted Against the Commonwealth by the Bank of New York Mellon, As Fiscal Agent (Claim No. 16775)* [ECF No. 7075]. For the avoidance of doubt, this Fifty-Ninth Omnibus Objection is without prejudice to the parties' rights with respect to such objection, including any rights to intervene, which are reserved.

13.    ___*HFA*___—HFA is a subsidiary of the Government Development Bank ("GDB") and

an independent governmental instrumentality of the Commonwealth.  US Bank serves as trustee

for certain Capital Fund Modernization Program Bonds issued by HFA (the "HFA Bonds").  On

behalf of the holders of HFA Bonds, US Bank filed a master proof of claim (the "HFA Master

Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 13358.  The HFA Master

Claim asserts contingent, unliquidated claims against the Commonwealth and Puerto Rico Public

Housing Authority ("PHA"), for "all rights and entitlement that U.S. Bank as Trustee has or may

have of whatever nature or kind set forth in the Indentures and the Loan Agreement, or pursuant

to other applicable documents or law, including for breach of covenants and for the potential

diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future."

Rider to HFA Master Claim, ¶ 13.  Additionally, the HFA Master Claim asserts "claims for any

and all amounts owed on account of any and all claims the Trustee has or may have relating to the

outstanding Bond obligations, whether known or unknown, against PHA, all those purporting to

act on PHA's behalf, and the Commonwealth, whether presently asserted or to be asserted,

including without limitation claims for or based upon the breach or violation of the Indentures, the

Loan Agreement, or any covenants or other contractual obligations contained therein, or claims

arising from the improper diversion of the Trust Estate or any other property securing the payment

of the Bonds, as a matter of relevant state law or federal law, including without limitation

constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and

fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or

other legal or equitable claim."  *Id.*, ¶ 14.

14.    ___*HTA*___—HTA is a public corporation and instrumentality of the Commonwealth

constituting a corporate and political entity independent and separate from the Commonwealth,

created under Act No. 74-1965 of the Legislative Assembly of the Commonwealth ("HTA Enabling Act").  HTA is responsible for the construction, operation, and maintenance of highways and other transportation systems in the Commonwealth.  *See* 9 L.P.R.A § 2002.  The HTA Enabling Act authorizes HTA to issue bonds.  *See* 9 L.P.R.A. §§ 2004(g), (h), (l).  Pursuant thereto, HTA issued several series of bonds under two different resolutions (the "HTA Bonds"): (*i*) Resolution No. 68-18, adopted June 13, 1968 (the "1968 Resolution"), and (*ii*) Resolution No. 98-06, adopted February 26, 1998 (the "1998 Resolution").  On May 21, 2017, the Oversight Board issued a restructuring certification pursuant to PROMESA sections 104(j) and 206 and filed a voluntary petition for relief for HTA pursuant to PROMESA section 304(a), commencing a case under Title III thereof.  As of HTA's May 21, 2017, petition date, approximately $830 million in principal amount of bonds issued under the 1968 Resolution remain outstanding, and approximately $3.4 billion in principal amount of bonds issued under the 1998 Resolution remain outstanding.  BNYM serves as fiscal agent with respect to the HTA Bonds.  On behalf of the holders of HTA Bonds, BNYM filed three master proofs of claim in the Commonwealth Title III Case (the "HTA Master Claim"), each asserting a "secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Fiscal Agent or the Owners may have against the Commonwealth arising at law or in equity . . . ."  *See* Addendum to Proof of Claim No. 121053, ¶ 15; Addendum to Proof of Claim No. 120982, ¶ 15; Addendum to Proof of Claim No. 115380, ¶ 15.[6]

15.   ***PRASA***—PRASA owns and operates the island-wide public water and wastewater systems in Puerto Rico.  PRASA issued certain revenue bonds (the "PRASA Bonds"), under the

---

[6]  While BNYM initially filed three proofs of claim logged by Prime Clerk, LLC, as Proofs of Claim Nos. 21286, 26541, and 35277, these were superseded and amended by Proofs of Claim Nos. 121053, 120982, and 115380.

Puerto Rico Aqueduct and Sewer Authority Resolution No. 1583, Authorizing and Securing Puerto Rico Aqueduct and Sewer Authority Bonds Guaranteed by the Commonwealth of Puerto Rico, and certain supplemental resolutions.  Banco Popular de Puerto Rico ("Banco Popular") serves as trustee for the PRASA Bonds and filed a master proof of claim against the Commonwealth on behalf of the holders of the PRASA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 22620 (the "PRASA Master Claim").  The PRASA Master Claim asserts "a contingent claim against the Commonwealth on account of the Bonds in an amount not less than $284,755,000, together with all interest, and premium accruing on the Bonds from and after the Petition Date, and all fees, costs, expenses and other charges accrued, accruing or chargeable with respect thereto."  Addendum to PRASA Master Claim, ¶ 9.

16. **_PBA_**—PBA purportedly issued Revenue Bonds to finance office buildings and other facilities leased to various departments, public agencies and instrumentalities of the Commonwealth.  US Bank and US Bank Trust serve as fiscal agents for certain revenue bonds issued by PBA, as identified in Footnote 3 of Proof of Claim No. 62833 (the "PBA Bonds"), and on behalf of the holders of the PBA Bonds, filed a master proof of claim in the Commonwealth Title III Case for all outstanding amounts owed (the "PBA Master Claim"), which was logged by Prime Clerk, LLC, as Proof of Claim No. 62833.[7]  The PBA Master Claim asserts liquidated claims for approximately $4 billion in allegedly unpaid principal, $160 million in allegedly unpaid interest, and reimbursement for fees and expenses of the fiscal agents, in addition to unliquidated and contingents claims for any and all amounts owed "on account of any and all claims the Fiscal Agent has or may have relating to the outstanding Bond obligations, whether known or unknown

---

[7] Proof of Claim No. 62833 amended and superseded Proof of Claim No. 13351, which was initially filed by the Fiscal Agent.

against the Commonwealth and all those purporting to act on the Commonwealth's behalf . . . ."
Rider to PBA Master Claim, ¶¶ 19-21.

17.  ***PRCCDA***—PRCCDA is a public corporation created by Act No. 142 of October 4,
2001, as amended by Act No. 185 of August 3, 2004, to develop, manage and oversee the Puerto
Rico Convention Center, the Coliseo de Puerto Rico José Miguel Agrelot, the Rivas Domenici
Executive Airport, and other adjacent hospitality, commercial and residential developments within
the District.  BNYM serves as trustee for certain Hotel Occupancy Tax Revenue Bonds issued by
PRCCDA (the "PRCCDA Bonds"), and on behalf of the holders of PRCCDA Bonds filed a master
proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of
Claim No. 37319 (the "PRCCDA Master Claim").   The PRCCDA Master Claim asserts a
"contingent and unliquidated claim against the Commonwealth on account of any and all claims,
causes of action, rights, and/or remedies that the Trustee or the Owners may have against the
Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the
Pledge Agreement, the Bonds, or the Trust Estate, including, but not limited to, violations of the
United States Constitution and of the Puerto Rico Constitution, violations of The Puerto Rico
Oversight, Management, and Economic Stability Act, 48 U.S.C. § 2101 *et seq.*, including, without
limitation, section 407 thereof, tortious interference with contract, conversion, fraud, fraudulent
inducement, fraudulent conveyance, misrepresentation, unjust enrichment, equitable or
constructive trust, equitable subordination, breach of contract, indemnification, reimbursement, or
contribution, that have been or may be asserted in present or future litigations by, among, or
involving the Trustee, any Owners, the Authority [PRCCDA], and/or the Commonwealth."
Addendum to PRCCDA Master Claim, ¶ 11.

18.     ***PRIDCO***—PRIDCO was created by Law No. 188 of 1942, codified as 23 L.P.R.A. §§ 271 *et seq.*, to promote economic development of Puerto Rico and provide industrial facilities for lease or sale to private manufacturing companies.  US Bank serves as trustee for certain General Purpose Revenue and Refunding Revenue Bonds Series 1997 A and Series 2003 (the "<u>PRIDCO Bonds</u>"), and on behalf of the holders of PRIDCO Bonds filed a master proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13445 ("<u>PRIDCO Master Claim</u>").  The PRIDCO Master Claim asserts contingent, unliquidated claims against the Commonwealth, and seeks "recovery of any and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf, whether presently asserted or to be asserted, including without limitation claims for or based upon the breach or violation of the Bond Documents, lease agreements or other contractual obligations relating to the underlying collateral, any other covenants or other contractual obligations contained therein, or claims arising from the improper diversion of PRIDCO's revenues or any other property securing the payment of the Bonds under the Bond Documents, as a matter of relevant Commonwealth, state or federal law, including without limitation constructive trust, fraudulent conveyance or fraudulent transfer, failure to fulfill contractual and fiduciary obligations and duties, breach of implied covenants of good faith and fair dealing, or other legal or equitable claims."  Rider to PRIDCO Master Claim, ¶¶ 12-13.

19.     ***PRIFA***—PRIFA is an affiliate of GDB which was created in 1988 to provide financial, administrative and other types of assistance to the Commonwealth, its public corporations and instrumentalities responsible for developing and operating infrastructure facilities.  On behalf of the holders of various bonds and notes issued by PRIFA (collectively, the

"PRIFA Bonds"), master proofs of claim were asserted against the Commonwealth (collectively, the "PRIFA Master Claims") by BNYM, US Bank Trust, and UMB Bank, N.A. ("UMB").  First, BNYM asserted three master proofs of claim: Proof of Claim No. 16759, asserting, on behalf of holders of Dedicated Tax Fund Revenue Bond Anticipation Notes, Series 15 (the "PRASA Notes"), "a contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the Owners may have against the Commonwealth arising at law or in equity based upon or relating to the Trust Agreement, the Noteholder Agreement, the Notes, or the Pledged Revenues . . . "; Proof of Claim No. 19814 asserting, on behalf of holders of PRASA Notes, claims for principal and unpaid interest, in addition to fees and expenses of the trustee; and Proof of Claim No. 103718, asserting, on behalf of holders of revenue bonds issued by PRASA, including Revenue Bonds (Port Authority Project), Series 2011A, "a secured, contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or the holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ."

20.     Additionally, US Bank filed a master proof of claim with respect to certain PRIFA Bonds, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13386, on behalf of holders of PRIFA Rum Tax Bonds (Special Tax Revenue Bonds, Series 2005A, 2005B, 2005C, and Series 2006B), asserting "claims for contingent, unliquidated amounts for interest payable in the future, interest accrued and accruing in the future as to past due principal and interest, fees and costs and indemnity claims of the Trustee to be incurred in the future under the Bond Documents, and all other amounts owed on account of any and all claims the Trustee has or may have relating to the outstanding Bond obligations, amount not less than $249,099,446.17, which course of conduct continues . . . ."  Rider to Proof of Claim No. 13386, ¶ 26.  UMB also filed a master proof of claim

12

on behalf of holders of PRIFA Infrastructure Revenue Bonds, 2007 Series A (MEPSI Campus Project), which was logged by Prime Clerk LLC, as Proof of Claim No. 22130, and seeks recovery of unpaid principal allegedly owed in the aggregate amount of $33.9 million, unpaid interest allegedly owed in the aggregate amount of $188,552.72, in addition to unliquidated amounts for any and all amounts owed on account of any and all claims UMB may have relating to the outstanding bond obligations.  Rider to Proof of Claim No. 22130, ¶¶ 17-18.

21.   ***PRMFA***—PRMFA is a public corporation and government instrumentality of the Commonwealth created by Act No. 29 of the Legislative Assembly of Puerto Rico, approved June 30, 1972, as amended and supplemented and codified as P.R. Laws Ann. Tit. 21 § 681 *et seq.  See* P.R. Laws Ann. Tit. 21, § 684.  PRMFA allegedly may issue bonds as it deems necessary to provide funds for the purchase of municipal bonds or municipal notes on anticipation, or to refinance bonds of PRMFA.  Addendum to Proof of Claim No. 30168, ¶ 7.  BNYM and US Bank Trust each serve as trustee for bonds issued by PRMFA (collectively, the "PRMFA Bonds"), and on behalf of the holders of certain PRMFA Bonds asserted master proofs of claim against the Commonwealth (collectively, the "PRMFA Master Claims").  The master proof of claim filed by BNYM with respect to PRMFA Bonds was logged by Prime Clerk, LLC, as Proof of Claim No. 30168, and asserts a "contingent and unliquidated claim against the Commonwealth on account of any and all claims, causes of action, rights, and/or remedies that the Trustee or holders of the Bonds has or may have against the Commonwealth arising at law or in equity . . . ." *Id.*, ¶ 15.  The master proof of claim filed by US Bank Trust with respect to PRMFA Bonds was logged by Prime Clerk, LLC, as Proof of Claim No. 13364, and asserts "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever kind set forth in the Indenture and the Act, or pursuant to other applicable documents or

13

law, including for breach of covenants, failure to fund requested sums, or for the potential diversion of pledged revenue for the payment of the Bonds, whether in the past or in the future." Rider to Proof of Claim No. 13364, ¶ 9.

22. **_PRPFC_**—PRPFC is a subsidiary corporation of the Government Development Bank ("GDB") created pursuant to Resolution 5044 of the Board of Directors of GDB. US Bank Trust serves as trustee for certain bonds issued by the PRPFC (the "PRPFC Bonds"), specifically the Series 2012A and Series 2011A and B bonds. On behalf of the holders of the PRPFC Bonds, US Bank Trust filed a proof of claim against the Commonwealth, which was logged by Prime Clerk, LLC, as Proof of Claim No. 13374 (the "PRPFC Master Claim"), for the alleged "failure to include in the annual budget of the Commonwealth the amount necessary for the debt obligations of the Authorized Debtors that issued the Notes." US Bank Trust asserts a contingent, unliquidated claim, for "any and all amounts owed on account of any and all claims the Trustees have or may have relating to the outstanding Bond obligations, whether known or unknown, against the Commonwealth and all those purporting to act on the Commonwealth's behalf."

23. **_UPR_**—UPR allegedly is "a public corporation of the Commonwealth constituting an organic system of higher education," pursuant to Act No. 1 of the Legislature of Puerto Rico, approved January 20, 1966 (18 L.P.R.A. §§ 601-614). Rider to Proof of Claim No. 13382, ¶ 5. US Bank serves as trustee for certain University System Revenue Refunding Bonds Series P and Q issued by UPR, and filed a master proof of claim, logged by Prime Clerk, LLC, as Proof of Claim No. 13382 (the "UPR Master Claim"). The UPR Master Claim asserts "contingent, unliquidated claims against the Commonwealth for all rights and entitlement that U.S. Bank as Trustee has or may have of whatever nature or kind set forth in the Trust Agreement, or pursuant to other applicable documents or law, including for breach of covenants and for the potential

diversion of revenues pledged for the payment of the Bonds, whether in the past or in the future."
*Id.*, ¶ 12.

**D.     Commonwealth Claims and the Omnibus Objection Procedures**

24.     To date, approximately 168,922 proofs of claim have been filed against the Debtors
and logged by Prime Clerk.  Such proofs of claim total approximately $43.6 trillion in asserted
claims against the Debtors.  Of the proofs of claim filed, approximately 104,004 have been filed
in relation to, or reclassified to be asserted against, the Commonwealth.  The Commonwealth-
related proofs of claim total approximately $33.2 trillion in asserted liabilities plus unliquidated
amounts.

25.     In order to efficiently resolve as many of the unnecessary proofs of claim as
possible, the Debtors, on October 16, 2018, filed with this Court their *Motion for Entry of an Order
(a) Approving Limited Omnibus Objection Procedures, (b) Waiving the Requirement of
Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4052] (the "Omnibus
Procedures Motion").  The relief requested therein was non-substantive in nature and was designed
to expedite and streamline the claims reconciliation process by, among other things, enlarging the
number of claims permitted to be within the scope of an omnibus objection.  While no objection
to the Omnibus Procedures Motion was interposed, based upon certain comments received, a
revised form of order and related exhibit were provided to the Court.  Based upon comments of
the Court at a hearing held on November 7, 2018, such order was further revised and the Court
granted the relief requested in the Omnibus Procedures Motion by order dated November 14, 2018.
*See Order (A) Approving Limited Omnibus Objection Procedures, (B) Waiving the Requirement
of Bankruptcy Rule 3007(e)(6), and (c) Granting Related Relief* [ECF No. 4230]; *Omnibus
Objection Procedures* [ECF No. 4230-1] (collectively, the "Omnibus Objection Procedures").  On

15

November 29, 2018, the Court approved the English and Spanish versions of the forms of notice

for omnibus objections to be filed in accordance with the Omnibus Objection Procedures.  *See*

*Order Approving the English and Spanish Versions of the Form of Notice for Omnibus Objections*

[ECF No. 4381] (the "Notice Order").

26.    This Fifty-Ninth Omnibus Objection is filed in accordance with the Court's

Omnibus Objection Procedures.

### OBJECTIONS TO PROOFS OF CLAIM

27.    The Omnibus Objection Procedures allow the Commonwealth to file an omnibus

objection to multiple proofs of claim on any basis provided for in Federal Rule of Bankruptcy

Procedure 3007(d)(1)-(7).

28.    The Fifty-Ninth Omnibus Objection seeks to disallow in part, in accordance with

Federal Rule of Bankruptcy Procedure 3007(d)(1) and the Omnibus Objection Procedures,

duplicate bond claims.

29.    Each claim identified in the column titled "Asserted" in **Exhibit A** hereto (the

"Duplicate Bond Claims") purports to assert, in part, liability against the Commonwealth

associated with one or more bonds issued by AFICA, the Children's Trust, ERS, HFA, HTA,

PRASA, PBA, PRCCDA, PRIDCO, PRIFA, PRPFCCA, PRMFA, and UPR.  Such portion of the

Duplicate Bond Claims is duplicative of one or more Master Claims, which as described above

were filed in the Commonwealth Title III Case by the fiscal agent and/or trustee for the bonds.  As

a result, the portions of the Duplicate Bond Claims related to bonds not issued by the

Commonwealth should be disallowed.  Any failure to disallow such duplicate portions will result

in the applicable claimants potentially receiving an unwarranted double recovery against the

Commonwealth, to the detriment of other stakeholders in the Commonwealth Title III Case.  The

holders of the Duplicate Bond Claims will not be prejudiced by the disallowance of these portions of their claims because the associated liabilities are subsumed within one or more Master Claims.

30.     Additionally, each of the Duplicate Bond Claims purport to assert liability associated with one or more bonds issued by the Commonwealth.  As to these portions of the Duplicate Bond Claims, the claimant will retain a remaining claim in the Commonwealth Title III Case (collectively, the "Remaining Claims"), as identified in the column titled "Corrected" in **Exhibit A** hereto.  Because this objection does not constitute an objection to the Remaining Claims, the Debtors reserve their rights to object to the Remaining Claims on any grounds whatsoever.

31.     In support of the foregoing, the Commonwealth relies on the *Declaration of Jay Herriman in Support of the Fifty-Ninth Omnibus Objection (Non-Substantive) of the Commonwealth of Puerto Rico to Duplicate Bond Claims*, dated June 6, 2019, attached hereto as **Exhibit B**.

## NOTICE

32.     In accordance with the Omnibus Objection Procedures and the Court's Notice Order, the Commonwealth has provided notice of this Fifty-Ninth Omnibus Objection to (a) the individual creditors subject to this Fifty-Ninth Omnibus Objection, (b) the U.S. Trustee, and (c) the Master Service List (as defined by the *Order Further Amending Case Management Procedures* [ECF No. 3804]), which is available on the Debtors' case website at https://cases.primeclerk.com/puertorico.  A copy of the notice for this Fifty-Ninth Omnibus Objection is attached hereto as **Exhibit C**.  Spanish translations of the Fifty-Ninth Omnibus Objection and all of the exhibits attached hereto are being filed with this objection and will be served on the parties.  The Commonwealth submits that, in light of the nature of the relief requested, no other or further notice need be given.

## **RESERVATION OF RIGHTS**

33.     This Fifty-Ninth Omnibus Objection is limited to the grounds stated herein. Accordingly, it is without prejudice to the rights of the Debtors to object to the Duplicate Bond Claims or any other claims on any ground whatsoever.  The Debtors expressly reserve all further substantive or procedural objections.  Nothing contained herein or any actions taken pursuant to such relief is intended or should be construed as: (a) an admission as to the validity of any claim against the Debtors; (b) a waiver of the Debtors' right to dispute any claim on any grounds; (c) a promise or requirement to pay any claim; (d) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; or (e) a waiver of the Debtors' rights under PROMESA, the Bankruptcy Code or any other applicable law.

## **NO PRIOR REQUEST**

34.     No prior request for the relief sought in this Fifty-Ninth Omnibus Objection has been made to this or any other court.

[*Remainder of Page Intentionally Left Blank*]

WHEREFORE the Commonwealth respectfully requests entry of an order, substantially in the form of the proposed order attached hereto as **Exhibit D**, (1) granting the relief requested herein, and (2) granting the Commonwealth such other and further relief as is just.

Dated: June 6, 2019                                                  Respectfully submitted,
          San Juan, Puerto Rico

                                                            /s/ Hermann D. Bauer
                                                            Hermann D. Bauer
                                                            USDC No. 215205
                                                            Carla García Benítez
                                                            USDC No. 203708
                                                            **O'NEILL & BORGES LLC**
                                                            250 Muñoz Rivera Ave., Suite 800
                                                            San Juan, PR 00918-1813
                                                            Tel:  (787) 764-8181
                                                            Fax:  (787) 753-8944

                                                            Martin J. Bienenstock (*pro hac vice*)
                                                            Brian S. Rosen (*pro hac vice*)
                                                            **PROSKAUER ROSE LLP**
                                                            Eleven Times Square
                                                            New York, NY 10036
                                                            Tel:  (212) 969-3000
                                                            Fax:  (212) 969-2900

                                                            *Attorneys for the Financial*
                                                            *Oversight and Management Board,*
                                                            *as representative for the*
                                                            *Commonwealth of Puerto Rico*

**Fecha de audiencia: 24 de julio de 2019, a las 9:30 a.m. (Hora Estándar del Atlántico)**
**Fecha límite para presentar una respuesta: 9 de julio de 2019, a las 4:00 p.m. (Hora Estándar del Atlántico)**

<div style="border:1px solid black">

**REVISE DETENIDAMENTE ESTA OBJECIÓN Y LOS ANEXOS A LA MISMA PARA DETERMINAR SI LA OBJECIÓN AFECTA A SU(S) RECLAMACIÓN(ES).**

</div>

**TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS**
**PARA EL DISTRITO DE PUERTO RICO**

En el caso:

LA JUNTA DE SUPERVISIÓN Y
ADMINISTRACIÓN FINANCIERA PARA
PUERTO RICO,

    como representante del

ESTADO LIBRE ASOCIADO DE PUERTO RICO, *y
otros*,

                      Deudores.[1]

PROMESA
Título III

N° 17 BK 3283-LTS

(Administrados en forma conjunta)

**Esta presentación corresponde
al Estado Libre Asociado.**

**QUINCUAGÉSIMA NOVENA OBJECIÓN COLECTIVA (NO SUSTANTIVA) DEL
ESTADO LIBRE ASOCIADO DE PUERTO RICO CONTRA RECLAMACIONES DE
BONOS DUPLICADAS**

El Estado Libre Asociado de Puerto Rico (el "Estado Libre Asociado"), por intermedio de

la Junta de Supervisión y Administración Financiera para Puerto Rico (la "Junta de Supervisión"),

como representante del Estado Libre Asociado conforme a la sección 315(b) de la *Ley de*

---

[1] Los Deudores en estos casos iniciados al amparo del Título III, junto con el número de caso respectivo de cada Deudor y los últimos cuatro (4) dígitos del número de identificación tributaria federal de cada Deudor, según corresponda, son (i) El Estado Libre Asociado de Puerto Rico (el "Estado Libre Asociado") (Caso de quiebra No. 17 BK 3283-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 3481); (ii) la Corporación del Fondo de Interés Apremiante de Puerto Rico ("COFINA") (Caso de quiebra No. 17 BK 3284-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 8474); (iii) la Autoridad de Carreteras y Transportación de Puerto Rico ("HTA") (Caso de quiebra No. 17 BK 3567-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 3808); (iv) Sistema de Retiro de los Empleados del Gobierno del Estado Libre Asociado de Puerto Rico ("ERS") (Caso de quiebra No. 17 BK 3566-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 9686); y (v) Autoridad de Energía Eléctrica de Puerto Rico ("PREPA") y junto con el Estado Libre Asociado, COFINA, HTA y ERS, los "Deudores") (Caso de quiebra No. 17 BK 4780-LTS) (últimos cuatro dígitos del número de identificación tributaria federal: 3747) (los casos iniciados al amparo del Título III figuran como números del Caso de Quiebra debido a limitaciones del software).

*Administración, Supervisión y Estabilidad Económica de Puerto Rico* ("<u>PROMESA</u>"),[2] presenta

esta quincuagésima novena objeción colectiva (la "<u>Quincuagésima Novena Objeción Colectiva</u>")

contra las evidencias de reclamaciones que aparecen en la lista del **<u>Anexo A</u>** al presente, las cuales

son parcialmente duplicadas de una o más evidencias de reclamaciones maestras formuladas contra

el Estado Libre Asociado, en representación de los tenedores de determinados bonos; y para

fundamentar la Quincuagésima Novena Objeción Colectiva, con respeto manifiesta lo siguiente:

<div align="center">

**<u>COMPETENCIA</u>**

</div>

1.      El Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico tiene

jurisdicción sobre la materia para considerar este asunto y el remedio solicitado en la presente de

conformidad con la sección 306(a) de la ley PROMESA.

2.      La jurisdicción es adecuada en este distrito de conformidad con la sección 307(a)

de la ley PROMESA.

<div align="center">

**<u>ANTECEDENTES</u>**

</div>

**A.      Resoluciones sobre Fecha Límite en el Caso del Estado Libre Asociado Iniciado al
amparo del Título III**

3.      El 3 de mayo de 2017, la Junta de Supervisión, a pedido del Gobernador, emitió

una certificación de restructuración conforme a las secciones 104(j) y 206 de la ley PROMESA y

presentó una petición voluntaria de remedio por el Estado Libre Asociado de conformidad con la

sección 304(a) de la ley PROMESA, y dio inicio así a un caso iniciado al amparo del Título III de

dicha ley (el "<u>Caso del Estado Libre Asociado iniciado al amparo del Título III</u>").

---

[2]  La ley PROMESA está incluida en el título 48 del Código de los Estados Unidos (United States Code, U.S.C.) §§
    2101-2241.

4.      El 16 de enero de 2018, los Deudores presentaron su *Petición para que se dicte una Resolución que fije (A) las Fechas Límite y los Procedimientos para la Presentación de Evidencias de Reclamaciones, y (B) un Formulario de Aprobación y la Forma y el Modo de su Notificación* [ECF No. 2255][3] (la "Petición para la Fijación de una Fecha Límite para la Presentación de Reclamaciones").   Conforme a la *Resolución que (A) establece Fechas Límites y Procedimientos para presentar Evidencias de Reclamaciones y (B) aprueba la Forma y el Modo para su Notificación* [ECF N° 2521] (la "Resolución sobre el Plazo Límite Inicial"), el Tribunal hizo lugar al remedio solicitado en la Petición para la Fijación de una Fecha Límite para la Presentación de Reclamaciones y estableció las siguientes fechas límites y procedimientos para presentar evidencias de reclamaciones en el Caso del Estado Libre Asociado iniciado al amparo del Título III.   En virtud de una petición informativa de determinados acreedores, y con el respaldo de los Deudores, el Tribunal posteriormente dictó la *Resolución (A) que prorroga la Fecha Límite para la Presentación de Evidencias de Reclamaciones y (B) que aprueba la Forma y Modo de Notificación de la Misma* [ECF No. 3160] (junto con la Resolución sobre el Plazo Límite Inicial ("Resoluciones que Fijan Fecha Límite para la Presentación de Evidencias de Reclamaciones")) que prorrogaba estas fechas límite al 29 de junio de 2018 a las 4:00 p.m. (Hora del Atlántico).

**B.      Operaciones y Deuda de Bonos del Estado Libre Asociado**

5.      La Constitución del Estado Libre Asociado de Puerto Rico (la "Constitución de P.R.") entró en vigencia en 1952.   La Constitución de P.R. creó al Estado Libre Asociado como gobierno central de Puerto Rico, "con forma republicana" y dividido en tres poderes: el legislativo, el judicial y el ejecutivo.   *Véase* Constitución de P.R., Art. I, secciones 1, 2.

---

[3]  A menos que se indique lo contrario en el presente, todas las citas de ECF se refieren a documentos archivados en el Caso de Quiebra No. 17 BK 3283-LTS.

6.    La Constitución de P.R. autoriza al Estado Libre Asociado a emitir deuda, con sujeción a diversas limitaciones, incluida la capacidad del Estado Libre Asociado de pignorar sus ingresos. *Véase* Constitución de P.R. Art. VI, sección 2. En 1961, la Sección 2 del Artículo VI de dicha Constitución fue enmendada para limitar el endeudamiento del Estado Libre Asociado en función del monto del servicio de deuda que el Estado Libre Asociado debería pagar con relación a sus ingresos históricos.

7.    Desde 1961, el Estado Libre Asociado ha emitido mil millones de dólares en bonos de obligación general ("Bonos GO") supuestamente respaldados por su pleno poder de fe, crédito y tributación. Los Bonos GO constituyen deuda pública conforme al Artículo VI, sección 8 de la Constitución de P.R. Cada serie de Bonos GO se emitió en virtud de una resolución de emisión de bonos y un memorándum de oferta.

**C.    Evidencias de Reclamaciones Maestras de Deuda de Bonos para Bonos No Emitidos por el Estado Libre Asociado**

8.    Con arreglo a la Resolución sobre el Plazo Límite Inicial, los fiduciarios, los agentes fiscales u otro agente o persona designada para cada serie respectiva de bonos emitida por uno de los Deudores pueden presentar una evidencia de reclamación maestra contra el deudor pertinente en representación de ellos mismos y de todos los tenedores de reclamaciones de bonos de las series respectivas de bonos en relación con las obligaciones que surgen de los respectivos contratos de fideicomisos, resoluciones o documentos similares de emisión bonos. Resolución de sobre el Plazo Límite Inicial, ¶ 5(a). Como se explica más abajo, se han presentado evidencias de reclamaciones maestras (en conjunto, las "Reclamaciones Maestras") en el Caso del Estado Libre Asociado iniciado al amparo del Título III en representación de los tenedores de algunos bonos emitidos por las siguientes entidades: Autoridad de Puerto Rico para el Financiamiento de

4

Facilidades Industriales, Turísticas, Educativas, Médicas y de Control Ambiental ("AFICA"), el
Fideicomiso de los Niños,  el Sistema de Retiro de los Empleados del Gobierno del Estado Libre
Asociado de Puerto Rico ("ERS"), la Autoridad de Carreteras y Transportación de Puerto Rico
("HTA"), la Autoridad para el Financiamiento de la Vivienda de Puerto Rico ("HFA"), la
Autoridad de Acueductos y Alcantarillados ("AAA"), la Autoridad de Edificios Públicos de Puerto
Rico ("PBA"), la Autoridad del Distrito del Centro de Convenciones ("PRCCDA"), la Compañía
de Fomento Industrial de Puerto Rico ("PRIDCO"), la Autoridad para el Financiamiento de la
Infraestructura de Puerto Rico ("PRIFA"), la Agencia de Financiamiento Municipal de Puerto Rico
("PRMFA"), la Corporación para el Financiamiento Público de Puerto Rico ("PRPFC") y la
Universidad de Puerto Rico ("UPR").

9.      *AFICA*: AFICA es una sociedad que cotiza en bolsa y un organismo del gobierno
del Estado Libre Asociado, creada mediante la Ley N° 121 de la Asamblea Legislativa de Puerto
Rico, aprobada el 27 de junio de 1977 (con sus enmiendas y anexos, y clasificada con el título 12
§ 1251 *et seq.* de las Leyes de Puerto Rico Anotadas).  Título 12, § 1254 de las Leyes de Puerto
Rico Anotadas.  AFICA emitió algunos Educational Facilities Revenue Bonds de la Autoridad de
Puerto Rico para el Financiamiento de Facilidades Industriales, Turísticas, Educativas, Médicas y
de Control Ambiental (Proyecto Plaza Universitaria) ("Bonos del Proyecto Plaza Universitaria").
BNYM actúa como fiduciario de los Bonos del Proyecto Plaza Universitaria y presentó una
evidencia de reclamación registrada por Prime Clerk, LLC, como Evidencia de Reclamación N°
68271, en la que formula "una reclamación garantizada, contingente y no liquidada contra el
Estado Libre Asociado en razón de cualquier y todas las reclamaciones, cuestiones de fondo,
derechos y/o remedios que el Fiduciario o los tenedores de los Bonos posean o puedan poseer
contra el Estado Libre Asociado derivados del derecho estricto o el régimen de equity", incluso

"por incumplimiento de cláusulas, omisión de financiar sumas solicitadas, fideicomiso judicial o por el posible desvío de ingresos pignorados para el pago de los Bonos". Adenda a la Evidencia de Reclamación N° 68271, ¶ 15.

10.     Además, AFICA emitió algunos Bonos Garantizados por Ingresos de Educación Superior (junto con los Bonos del Proyecto Plaza Universitaria, "Bonos de AFICA"), para los cuales U.S. Bank Trust National Association ("US Bank Trust") y U.S. Bank National Association ("US Bank") actúan como fiduciarios. US Bank y US Bank Trust presentaron una evidencia de reclamación maestra, registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13391 (junto con la Evidencia de Reclamación N° 68271, las "Reclamaciones Maestras de AFICA"). En representación de los tenedores de bonos, US Bank y US Bank Trust formulan reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios… , incluso por incumplimiento de cláusulas y por el posible desvío de ingresos pignorados para el pago de los Bonos, ya sea en el pasado o en el futuro". Adenda a la Evidencia de Reclamación N° 13391, ¶ 11.

11.     *Fideicomiso de los Niños*: El Fideicomiso de los Niños se estableció mediante la Ley del Fideicomiso de los Niños (Ley N° 173 de 1999), título 24 L.P.R.A. §§ 3121, *et seq.*, con motivo de un acuerdo de conciliación celebrado entre fabricantes de cigarrillos y Puerto Rico, 46 estados y otras cinco jurisdicciones estadounidenses, en noviembre de 1998, en el marco de un acuerdo por un litigio vinculado con el tabaquismo, incluido el derecho del Estado Libre Asociado de recibir determinados pagos de contribución anuales y estratégicos para el fondo de parte de los fabricantes mencionados, en el marco del MSA. Art. 4 Ley 173-1999, 24 L.P.R.A. § 3122. U.S. Bank actúa como fiduciario de algunas Series de Bonos respaldados por activos del Acuerdo del Tabaco del Fideicomiso de los Niños, a saber, 2002, 2005, 2008A and 2008B (los "Bonos del

6

Fideicomiso de los Niños"). En representación de los tenedores de Bonos del Fideicomiso de los Niños, US Bank presentó una evidencia de reclamación maestra, que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N°13354 ("Evidencia de Reclamación Maestra del Fideicomiso de los Niños"), en la cual formula "reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios que U.S. Bank posee o puede poseer en calidad de Fiduciario, de cualquier naturaleza o clase, establecidos en el Instrumento de Emisión y la Ley, o en razón de otros documentos o de leyes aplicables, incluso por incumplimiento de cláusulas y por el posible desvío de ingresos pignorados para pagar los Bonos, ya sea en el pasado o en el futuro." Disposición adicional a la Reclamación Maestra del Fideicomiso de los Niños, ¶ 9.

12.      _ERS_ : El ERS es un fideicomiso constituido por el Estado Libre Asociado en 1951 para garantizar el bienestar económico de los empleados públicos. El ERS es un organismo público autónomo e independiente del gobierno del Estado Libre Asociado y sus otras reparticiones. *Véase* 3 L.P.R.A § 775. Aparentemente con arreglo a la citada *Resolución sobre Bonos de Capitalización de Pensiones* adoptada el 24 de enero de 2008 y ciertas resoluciones complementarias, el ERS emitió bonos de capitalización de pensiones principales y subordinados (los "Bonos del ERS") por un monto principal original total de aproximadamente $2.900 millones.[4]

---

[4] El 21 de mayo de 2017, la Junta de Supervisión, a pedido del Gobernador, expidió un certificado de restructuración de conformidad con las secciones 104(j) y 206 de la ley PROMESA y presentó una petición voluntaria de remedio para el ERS conforme a la sección 304(a) de la ley PROMESA, dando inicio a un caso iniciado al amparo del Título III de la citada ley. El 12 de marzo de 2019, el Comité Oficial de Acreedores Quirografarios presentó una *Objeción Colectiva contra Reclamaciones formuladas por Tenedores de Bonos emitidos por el ERS* [Caso N° 17-3566, ECF N° 381], aduciendo que la emisión de bonos excedía las facultades otorgadas por ley al ERS y que, por ende, constituía un *exceso de jurisdicción*, correspondiendo declarar la nulidad de los Bonos emitidos por el ERS. Con fecha 23 de abril de 2019, el Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico presentó la *Objeción Colectiva del Comité Oficial de Retirados del Estado Libre Asociado de Puerto Rico, conforme a la Sección 502 del Código de Quiebras y la Regla 3007 del Procedimiento Federal de Quiebras, contra reclamaciones presentadas o formuladas por tenedores de Bonos emitidos por el ERS contra el ERS y el Estado Libre Asociado* [Caso N° 17-3283, ECF N° 6482], aduciendo, entre otras cosas, que la emisión de bonos constituía un *exceso de atribuciones*. El ERS se reserva su derecho a impugnar la emisión de bonos por cualquier causal, incluso que los

BNYM es el agente fiscal de los Bonos del ERS.  En representación de los tenedores de los Bonos del ERS, BNYM presentó una evidencia de reclamación maestra en el caso del Estado Libre Asociado iniciado al amparo del Título III (la "Reclamación Maestra del ERS") en la que se formulan reclamaciones contra el Estado Libre Asociado fundadas, entre otras cosas, en la sanción de la Resolución Conjunta 188 y la Ley 106, que crearon ambas un sistema de retiro "pay as you go" (de reparto) mediante el cual se les paga a las personas que se retiran con los fondos generales del Estado Libre Asociado en lugar de con los aportes de los empleados, lo cual se alega como garantía de los Bonos del ERS.[5]

13.     *HFA*: La HFA es una subsidiaria del Banco Gubernamental de Fomento de Puerto Rico ("GDB") y una instrumentalidad gubernamental independiente del Estado Libre Asociado. US Bank actúa como fiduciario de algunos Bonos del Programa de Modernización del Fondo de Capitales emitido por HFA (los "Bonos de HFA").  En representación de los tenedores de Bonos de HFA, US Bank presentó una evidencia de reclamación maestra (la "Reclamación Maestra de HFA"), que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13358.  La Reclamación Maestra de HFA formula reclamaciones contingentes y no liquidadas contra el Estado Libre Asociado y la Autoridad para el Financiamiento de la Vivienda de Puerto Rico ("PHA"), por "todos los derechos y privilegios que U.S. Bank, en carácter de Fiduciario, posee o puede poseer, de cualquier naturaleza o clase, establecidos en los Instrumentos de emisión y el Contrato de Préstamo, o en virtud de otros documentos o leyes aplicables, incluso por violación

---

bonos emitidos por el ERS constituían un *exceso de atribuciones* y por cualquier otra causal estipulada en las antedichas objeciones.

[5]  El 22 de mayo de 2019, el Estado Libre Asociado presentó una objeción a la Evidencia de Reclamación del ERS. *Véase la Objeción de la Junta de Supervisión y Administración Financiera, conforme a la Sección 502 del Código de Quiebras y a la Regla 3007 de Quiebras, a las Reclamaciones presentadas o formuladas contra el Estado Libre Asociado por Bank of New York Mellon, en calidad de agente fiscal (Reclamación N° 16775)* [ECF N° 7075].  Para evitar cualquier duda, esta Sexagésima Primera Objeción Colectiva no perjudica los derechos de las partes con respecto a dicha objeción, incluido cualquier derecho a intervenir, los cuales quedan preservados.

de cláusulas y el posible desvío de ingresos pignorados para el pago de los Bonos, ya sea en el pasado o en el futuro." Disposición adicional a la Reclamación Maestra de HFA, ¶ 13. Asimismo, la Reclamación Maestra de HFA formula "reclamaciones por todos y cada uno de los montos adeudados a raíz de cualquier y todas las reclamaciones que el Fiduciario posea o pueda poseer con relación a las obligaciones de Bonos pendientes, ya sean conocidas o desconocidas, en contra de la PHA; todas ellas pretenden actuar en representación de la PHA y del Estado Libre Asociado, ya sea que se formulen en el presente o en el futuro, incluidas, sin carácter limitativo, reclamaciones por o fundadas en incumplimientos o violación de los Instrumentos de emisión, el Contrato de Préstamo o cualquier cláusula u otra obligación contractual allí contenida; o reclamaciones que surjan del desvío indebido del Patrimonio del Fideicomiso o cualquier otro bien que garantice el pago de los Bonos, como cuestión de la ley estatal o federal pertinente; incluso, sin carácter limitativo, mediante fideicomiso judicial, transmisión o trasferencia fraudulenta, incumplimiento de obligaciones y deberes de naturaleza contractual y fiduciaria, incumplimiento de compromisos implícitos de buena fe y trato justo u otras reclamaciones en virtud del common law o del régimen del equity". *Ibíd.* ¶ 14.

14. _**HTA**_**:** la HTA es una sociedad que cotiza en bolsa y una instrumentalidad del Estado Libre Asociado que constituye una entidad corporativa y política independiente y separada del Estado Libre Asociado, creada mediante la Ley N° 74-1965 de la Asamblea Legislativa del Estado Libre Asociado ("Ley Orgánica de la HTA"). La HTA es responsable de la construcción, la operación y el mantenimiento de autopistas y otros sistemas de transporte en el Estado Libre Asociado. *Véase* el título 9 de las L.P.R.A, § 2002. La Ley Orgánica de la HTA la autoriza a emitir bonos. *Véase* el título 9 de las L.P.R.A., §§ 2004(g), (h), (l). Haciendo uso de esta facultad, la HTA emitió varias series de bonos en virtud de dos resoluciones distintas (los "Bonos de HTA"):

9

(*i*) Resolución N° 68-18, adoptada el 13 de junio 1968 (la "Resolución de 1968") y (*ii*) la Resolución N° 98-06, adoptada el 26 de febrero de 1998 (la "Resolución de 1998").  Con fecha 21 de mayo de 2017, la Junta de Supervisión, a pedido del Gobernador, expidió un certificado de restructuración de conformidad con las secciones 104(j) y 206 de la ley PROMESA y presentó una petición voluntaria de remedio para la HTA conforme a la sección 304(a) de la ley PROMESA, dando inicio a un caso iniciado al amparo del Título III de la citada ley.  A la Fecha de la Petición de la HTA, el 21 de mayo de 2017, permanecen pendientes bonos emitidos en virtud de la Resolución de 1968 por un monto principal aproximado de $830 millones, y un monto principal de bonos por $3.400 millones emitidos en virtud de la Resolución de 1998.  BNYM es el agente fiscal de los Bonos emitidos por la HTA.  En representación de los tenedores de Bonos de la HTA, BNYM presentó tres evidencias de reclamaciones maestras en el Caso del Estado Libre Asociado iniciado al amparo del Título III (la "Reclamación Maestra de la HTA"), donde cada una fórmula "una reclamación garantizada, contingente y no liquidada contra el Estado Libre Asociado en razón de cualquier y todas las reclamaciones, cuestiones de fondo, derechos y/o recursos que el Agente Fiscal o los Propietarios pueden tener contra el Estado Libre Asociado, derivados del derecho estricto o del régimen de equity (…)."  *Véase* la Adenda a la Evidencia de Reclamación N° 121053, ¶ 15; la Adenda a la Evidencia de Reclamación N° 120982, ¶ 15; la Adenda a la Evidencia de Reclamación N° 115380, ¶ 15.[6]

15.    *AAA*: AAA es propietaria y opera los sistemas de aguas públicas y servidas de Puerto Rico en toda la isla.  ASA emitió una serie de bonos garantizados por ingresos (los "Bonos de AAA") en virtud de la Resolución N° 1583 de la Autoridad de Acueductos y Alcantarillados

---

[6] Si bien originalmente BNYM había presentado tres evidencias de reclamaciones registradas por Prime Clerk, LLC, como Evidencias de Reclamaciones N° 21286, 26541 y 35277, estas fueron posteriormente reemplazadas y enmendadas por las Evidencias de Reclamaciones N° 121053, 120982 y 115380.

de Puerto Rico, que autoriza y asegura los Bonos de la Autoridad de Acueductos y Alcantarillados de Puerto Rico garantizados por el Estado Libre de Puerto Rico y determinadas resoluciones complementarias.  Banco Popular de Puerto Rico ("Banco Popular") actúa como fiduciario de los Bonos de ASA y presentó una evidencia de reclamación maestra contra el Estado Libre Asociado en representación de los tenedores de Bonos de AAA, que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 22620 (la "Reclamación Maestra de AAA").  La Reclamación Maestra de la AAA formula "una reclamación contingente contra el Estado Libre Asociado con relación a los Bonos por una suma no inferior a $284.755.000, más los intereses y las primas que devenguen los Bonos desde la Fecha de Petición en adelante, con más los respectivos honorarios, costos, gastos y demás cargos devengados, o a devengarse o imputarse".  Adenda a la Reclamación Maestra de AAA, ¶ 9.

16.    **_PBA_**: PBA presuntamente emitió Bonos garantizados por Ingresos para financiar edificios de oficinas y otras instalaciones arrendadas a diversos departamentos, agencias públicas y reparticiones del Estado Libre Asociado.  US Bank y US Bank Trust actúan como agentes fiscales de algunos bonos garantizados por ingresos emitidos por PBA, como se identifica en la nota al pie 3 de la Evidencia de Reclamación N° 62833 (los "Bonos de PBA"), y en representación de los tenedores de Bonos de PBA presentó una evidencia de reclamación maestra en el Caso del Estado Libre Asociado iniciado al amparo del Título III por todos los montos adeudados pendientes (la "Reclamación Maestra de PBA"), que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 62833.[7]  La Reclamación Maestra de PBA formula reclamaciones liquidadas por un supuesto monto principal de alrededor de $4.000 millones, $160 millones por

---

[7]  Evidencia de Reclamación N° 62833 enmendada y reemplazada por la Evidencia de Reclamación N° 13351, presentada inicialmente por el Agente Fiscal.

presuntos intereses impagos y reembolso de honorarios y gastos de los agentes fiscales, además de reclamaciones no liquidadas y contingentes por todos y cada uno de los montos adeudados "en razón de cualquier y todas las reclamaciones que el Agente Fiscal tenga o pueda tener con relación a las obligaciones de Bonos pendientes, ya sean conocidas o desconocidas, contra el Estado Libre Asociado y todas ellas pretenden actuar en representación del Estado Libre Asociado … ." Disposición adicional a la Reclamación Maestra de PBA, ¶¶ 19-21.

17. ___PRCCDA___: PRCCDA es una sociedad que cotiza en bolsa creada por la Ley N° 142 del 4 de octubre de 2001, enmendada por la Ley N° 185 del 3 de agosto de 2004, con el objeto de desarrollar, gestionar y supervisar el Centro de Convenciones de Puerto Rico, el Coliseo de Puerto Rico José Miguel Agrelot, el Aeropuerto Ejecutivo Rivas Domenici y otros desarrollos hospitalarios, comerciales y residenciales dentro del Distrito. BNYM actúa como fiduciario de determinados Bonos garantizados por Ingresos del Impuesto a la Ocupación Hotelera (los "Bonos de PRCCDA"), y en representación de los tenedores de Bonos de PRCCDA presentó una evidencia de reclamación maestra en contra del Estado Libre Asociado, que fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 37319 (la "Reclamación Maestra de PRCCDA"). La Reclamación Maestra de PRCCDA formula una "reclamación contingente y no liquidada contra el Estado Libre Asociado en razón de cualquier y todas las reclamaciones, cuestiones de fondo, derechos y/o recursos que el Fiduciario o los Propietarios puedan tener contra el Estado Libre Asociado, derivadas del derecho estricto o del régimen de equity, en virtud de o vinculados con el Contrato de Fideicomiso, el Contrato de Pignoración, los Bonos o el Patrimonio del Fideicomiso; incluso, sin carácter limitativo, violaciones a la Constitución de Estados Unidos y a la Constitución de Puerto Rico, violaciones a la Ley de Administración, Supervisión y Estabilidad _Económica_ de Puerto Rico, título 48 del Código de Estados Unidos, § 2101 _et seq._, incluida, sin carácter

12

limitativo, la sección 407 de dicha ley, interferencia contractual ilícita, apropiación, fraude, instigación fraudulenta, disposición de bienes en fraude a los acreedores, declaraciones falsas, enriquecimiento ilícito, fideicomiso bajo el régimen de equity o judicial, subordinación derivada del régimen de equity, violación contractual, indemnización, reembolso, o contribución, que se hayan formulado o puedan formularse en el presente o en el futuro por, o entre, el Fiduciario, cualquiera de los Propietarios, la Autoridad [PRCCDA]] y/o el Estado Libre Asociado, o que involucre a dichas personas".  Adenda a la Reclamación Maestra de PRCCDA, ¶ 11.

18.     ***PRIDCO***: PRIDCO se creó por Ley N° 188 de 1942, codificada como 23 L.P.R.A. §§ 271 *et seq.*, con el objeto de promover el desarrollo económico de Puerto Rico y proporcionar instalaciones industriales para arrendamiento o venta a empresas manufactureras privadas.  US Bank actúa como fiduciario de algunos Bonos de Refinanciación Garantizados por Ingresos para Fines Especiales, Serie 1997 A y Serie 2003 (los "Bonos de PRIDCO"), y en representación de los tenedores de Bonos de PRIDCO presentó una evidencia de reclamación maestra contra el Estado Libre Asociado, que fue registrada por Prime Clerk, LLLC, como Evidencia de Reclamación N° 13445 ("Reclamación Maestra de PRIDCO").  La Reclamación Maestra de PRIDCO formula reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado, y pretende "recuperar todo otro monto adeudado en razón de cualquier y todas las reclamaciones que el Fiduciario tenga o pueda tener vinculadas a las obligaciones de Bonos pendientes, sean conocidas o desconocidas, contra el Estado Libre Asociado y todos los que pretendan actuar en representación del Estado Libre Asociado, y ya sea que se hayan formulado en el presente o se formulen en el futuro; incluidas, sin carácter limitativo, reclamaciones por o fundadas en incumplimientos o violación de los Documentos de los Bonos, contratos de arrendamiento u otras obligaciones contractuales relacionadas con la garantía subyacente, cualquier otra cláusula u otra obligación contractual

contenida en ellos, o reclamaciones que surjan del desvío indebido de ingresos de PRIDCO o de cualesquier otro bienes que garantizan el pago de los Bonos en virtud de los Documentos de los Bonos, como asunto de derecho del Estado Libre Asociado, estatal o federal, incluidos, sin carácter limitativo, mediante fideicomiso judicial, transmisión o trasferencia fraudulenta, incumplimiento de obligaciones y deberes de naturaleza contractual y fiduciaria, incumplimiento de compromisos implícitos de buena fe y trato justo u otras reclamaciones en virtud del common law o del régimen del equity"  Disposición adicional a la Reclamación Maestra de PRIDCO, ¶¶ 12-13.

19.     ___PRIFA___: PRIFA es una empresa relacionada de GDB que fue creada en 1988 para proporcionar asistencia financiera, administrativa y de otra clase al Estado Libre Asociado, sus sociedades que cotizan en bolsa y reparticiones a cargo de desarrollar y operar instalaciones de infraestructura.  En representación de los tenedores de diversos bonos y notas emitidos por PRIFA (en conjunto "los Bonos de PRIFA"), se formularon cinco evidencias de reclamaciones maestras en contra del Estado Libre Asociado (en conjunto, las "Reclamaciones Maestras de PRIFA") de parte de BNYM, US Bank Trust y UMB Bank, N.A. ("UMB").  En primer lugar, BNYM formuló las siguientes tres evidencias de reclamaciones maestras: Evidencia de Reclamación N° 16759, que formula, en representación de los tenedores de Notas en Anticipación de Impuestos y Recaudos (Dedicated Tax Fund Revenue Bond Anticipation Notes), Serie 15 (las "Notas de AAA"), "una reclamación contingente y no liquidada contra el Estado Libre Asociado en razón de cualquier y todas las reclamaciones, cuestiones de fondo, derechos y/o recursos que el Fiduciario o los Propietarios pueden tener contra el Estado Libre Asociado, derivados del derecho estricto o del régimen de equity, fundadas o relacionadas con el Contrato de Fideicomiso, el Acuerdo de Tenedores de Notas, las Notas o los Ingresos Pignorados . . . "; Evidencia de Reclamación N° 19814 que formula, en representación de los tenedores de Notas de AAA, reclamaciones por monto

14

principal e intereses impagos, además de honorarios y gastos del fiduciario; y la Evidencia de
Reclamación N° 103718, que formula, en representación de los tenedores de bonos garantizados
por ingresos emitidos por AAA, incluidos Bonos Garantizados por Ingresos (Proyecto de la
Autoridad Portuaria), Serie 2011A, "una reclamación contingente y no liquidada contra el Estado
Libre Asociado a raíz de cualesquier y todas las reclamaciones, cuestiones de fondo, derechos y/o
recursos que el Fiduciario o los tenedores de los Bonos tengan o puedan tener contra el Estado
Libre Asociado, derivados del derecho estricto o el régimen de equity . . . ."

       20.     Asimismo, US Bank presentó una evidencia de reclamación maestra con respecto
a determinados Bonos de PRIFA, que fue registrada por Prime Clerk, LLC, como Evidencia de
Reclamación N° 13386, en representación de los tenedores de Bonos Rum Tax de PRIFA (Bonos
Garantizados por Ingresos Fiscales Especiales, Series 2005A, 2005B, 2005C, y Serie 2006B), que
formula "reclamaciones por montos contingentes, no liquidados de intereses pagaderos en el
futuro, intereses devengados y por devengarse en el futuro con respecto a montos principales e
intereses vencidos, honorarios y costos y reclamaciones de indemnización del Fiduciario por
incurrirse en el futuro en virtud de los Documentos de los Bonos, y todo otro monto adeudado a
raíz de todas y cada una de las reclamaciones que el Fiduciario tenga o pueda tener con relación a
las obligaciones de Bonos pendientes, cuyo monto asciende por lo menos a $249.099.446,17, cuya
línea de conducta continúa . . . ."  Disposición adicional a la Reclamación N° 13386, ¶ 26.  UMB
también presentó una evidencia de reclamación maestra en representación de tenedores de Bonos
garantizados por Ingresos de Infraestructura de PRIFA, Serie 2007 A (Proyecto del Campus
MEPSI), que fue registrada por Prime Clerk LLC, como Evidencia de Reclamación N° 22130, y
pretende recuperar un monto principal impago presuntamente adeudado que asciende a $33,9
millones, intereses impagos presuntamente adeudados por un monto total de $188.552,72, además

de montos no liquidados por todos y cada uno de los montos adeudados a raíz de cualquier reclamación que UMB pueda tener con relación a las obligaciones de bonos pendientes. Disposición adicional a la Evidencia de Reclamación N° 22130, ¶¶ 17-18.

21.     _**PRMFA**_: PRMFA es una corporación pública y una instrumentalidad del Estado Libre Asociado, creada por Ley N° 29 de la Asamblea Legislativa de Puerto Rico, aprobada el 30 de junio de 1972, y enmendada y complementada, y codificada con el Título 21, § 681 *et seq., de las Leyes Anotadas de Puerto Rico.  Véase* el Título  21, § 684.  PRMFA presuntamente puede emitir bonos según lo estime necesario para financiar la compra de bonos municipales o notas municipales de anticipación, o para refinanciar bonos de PRMFA.  Adenda de la Evidencia de Reclamación No. 30168, ¶ 7.  BNYM y US Bank Trust actúan como fiduciarios de los bonos emitidos por PRMFA (en conjunto, los "Bonos de PRMFA"), y en representación de los tenedores de algunos Bonos de PRMFA presentaron evidencias de reclamaciones maestras contra el Estado Libre Asociado (en conjunto, las "Evidencias de Reclamaciones de PRMFA").  La evidencia de reclamación maestra presentada por BNYM con respecto a los Bonos de PRMFA fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 30168, y formula "una reclamación contingente y no liquidada contra el Estado Libre Asociado a raíz de cualquier y toda reclamación, cuestiones de fondo, derechos y/o recursos que el Fiduciario o los tenedores de los Bonos tienen o pueden tener contra el Estado Libre Asociado, surgidos del derecho estricto o del régimen de equity… ."  *Ibíd.*, ¶ 15.  La evidencia de reclamación maestra presentada por US Bank Trust con respecto a los Bonos de PRMFA fue registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13364, y formula "reclamaciones contingentes, no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios que U.S. Bank, en carácter de Fiduciario, posee o puede poseer, de cualquier clase, según se establece en el Instrumento de emisión y en la

16

Ley, o de conformidad con otros documentos o leyes aplicables, incluso por incumplimiento de cláusulas, omisión de financiar sumas solicitadas o el posible desvío de ingresos pignorados para el pago de los Bonos, ya sea en el pasado o en el futuro". Disposición adicional a la Evidencia de Reclamación N° 13364, ¶ 9.

22. ***PRPFC***: PRPFC es una sociedad subsidiaria del Banco Gubernamental de Fomento para Puerto Rico ("GDB"), creada en virtud de la Resolución 5044 de la Junta Directiva del GDB. US Bank Trust actúa como fiduciario de algunos bonos emitidos por PRPFC (los "Bonos de PRPFC"), específicamente la Serie 2012A, la Serie 2011A y los bonos B. En representación de los tenedores de los Bonos de PRPFC, US Bank Trust presentó una evidencia de reclamación contra el Estado Libre Asociado, registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13374 (la "Reclamación Maestra de PRPFC"), por la presunta "omisión de incluir en el presupuesto anual del Estado Libre Asociado el monto necesario para las obligaciones de deuda de los Deudores Autorizados que emitieron las Notas." US Bank Trust formula una reclamación contingente, no liquidada, por "todos y cada uno de los montos adeudados derivados de cualquier y todas las reclamaciones que el Fiduciario tiene o puede tener con relación a las obligaciones de Bonos pendientes, sean conocidas o desconocidas, contra el Estado Libre Asociado y todos aquellos que pretenden actuar en representación del Estado Libre Asociado."

23. ***UPR***: La UPR es supuestamente "una Corporación pública del Estado Libre Asociado, que constituye un sistema orgánico de educación superior", conforme a la Ley N° 1 de la Legislatura de Puerto Rico, aprobada el 20 de enero de 1966 (Título 18 L.P.R.A. §§ 601-614). Disposición adicional a la Evidencia de Reclamación N° 13382, ¶ 5. US Bank actúa como fiduciario de ciertos Bonos de Refinanciación Garantizados por Ingresos del Sistema Universitario, Serie P y Q, emitidos por la UPR, y presentó una evidencia de reclamación maestra

17

registrada por Prime Clerk, LLC, como Evidencia de Reclamación N° 13382 (la "Reclamación

Maestra de la UPR").  La Reclamación Maestra de la UPRT formula "reclamaciones contingentes,

no liquidadas contra el Estado Libre Asociado por todos los derechos y privilegios que U.S. Bank,

en carácter de Fiduciario, tiene o puede tener, de cualquier naturaleza o clase, según se establece

en el Contrato de Fideicomiso, o en razón de otros documentos o leyes aplicables, incluso por

incumplimiento de cláusulas y el posible desvío de ingresos pignorados para el pago de los Bonos,

ya sea en el pasado o en el futuro."  *Ibíd.*, ¶ 12.

**D.      Reclamaciones del Estado Libre Asociado y Procedimientos aplicables a Objeciones
Colectivas**

24.      Hasta la fecha, se han presentado aproximadamente 168,922 pruebas de

reclamación contra los Deudores y registradas por Prime Clerk.  Dichas pruebas de reclamación

totalizan aproximadamente $43.6 trillones en reclamaciones presentadas contra los Deudores. De

las pruebas de reclamación presentadas, aproximadamente 104,004 se han presentado en relación

con, o se han reclasificado para reclamar contra, el Estado Libre Asociado.  Las pruebas de

reclamación relacionadas con el Estado Libre Asociado actualmente suman aproximadamente

$33.2 trillones en reclamaciones, además de los montos sin liquidar declarados.

25.      A fin de resolver de manera eficiente tantas evidencias innecesarias como sea

posible, el 16 de octubre de 2018 los Deudores presentaron ante este Tribunal su *Petición para*

*que se dicte una Resolución que (a) apruebe procedimientos limitados para objeciones colectivas,*

*(b) elimine el requisito de la Regla de Quiebras 3007(e)(6) y (c) conceda el remedio relacionado*

[ECF No. 4052] (la "Petición de Procedimientos Colectivos").  La naturaleza del remedio allí

solicitado era no sustantiva y tenía por finalidad agilizar y optimizar el proceso de conciliación de

reclamaciones mediante, entre otras cosas, un incremento del número de reclamaciones que caben

en el ámbito de una objeción colectiva.  Si bien no se interpuso ninguna objeción a la Petición de

procedimientos colectivos, a la luz de algunos comentarios recibidos, se aportaron al Tribunal un

formulario revisado de resolución y un anexo relacionado.  Según comentarios del Tribunal en una

audiencia celebrada el 7 de noviembre de 2018, dicha resolución fue revisada y el Tribunal hizo

lugar al remedio solicitado en la Petición de Procedimientos Colectivos dictando una resolución

con fecha 14 de noviembre de 2018. *Véase la Resolución que (A) aprueba los procedimientos*

*limitados de objeciones colectivas, (B) elimina el requisito de la Regla de Quiebras 3007(e)(6), y*

*(c) concede el remedio relacionado* [ECF No. 4230]; *Procedimientos de Objeciones Colectivas*

[ECF No. 4230-1] (en conjunto, los "Procedimientos de Objeciones Colectivas").  Con fecha 29

de noviembre de 2018, el Tribunal aprobó las versiones en inglés y en español de la forma de

notificación para las objeciones colectivas presentadas con arreglo a los Procedimientos aplicables

a las Objeciones Colectivas. *Véase la Resolución que aprueba las versiones en inglés y en español*

*de la Forma de Notificación de las Objeciones Colectivas* [ECF No. 4381] (la "Resolución del

Tribunal que ordena la Notificación").

26.    Se presenta esta Quincuagésima Novena Objeción Colectiva de conformidad con

los Procedimientos de Objeciones Colectivas.

## OBJECIONES A LAS EVIDENCIAS DE RECLAMACIONES

27.    Los Procedimientos de objeciones colectivas le permiten al Estado Libre Asociado

presentar una objeción colectiva contra múltiples evidencias de reclamaciones, fundándose en

cualquiera de las causales que contemplan las Reglas Federales del Proceso de Quiebra 3007(d)(1)

– (7).

28.    La Quincuagésima Novena Objeción Colectiva pretende que se desestimen en parte

las reclamaciones de bonos duplicadas, de conformidad con la Regla 3007 (d)(1) del

Procedimiento Federal de Quiebras y los Procedimientos de Objeciones Colectivas.

29.     Cada reclamación identificada en la columna "Formuladas" del **Anexo A** a la presente (las "Reclamaciones de Bonos Duplicadas") pretende invocar, en parte, una obligación contra el Estado Libre Asociado, vinculada con uno o más bonos emitidos por AFICA el Fideicomiso de los Niños, ERS, HFA, HTA, AAA, PBA, PRCCDA, PRIDCO, PRIFA, PRPFCCA, PRMFA y UPR).  Dicha parte de las Reclamaciones de Bonos Duplicadas constituye un duplicado de una o más Reclamaciones Maestras que, como se apuntó más arriba, se presentaron en el Caso del Estado Libre Asociado iniciado al amparo del Título III por el agente fiscal y/o el fiduciario de los bonos.  Por consiguiente, las partes de las Reclamaciones de Bonos Duplicadas relacionadas con bonos no emitidos por el Estado Libre Asociado deben desestimarse. De no desestimarse dichas partes duplicadas, el resultado será que los demandantes aplicables podrían llegar a recibir una doble indemnización injustificada del patrimonio del Estado Libre Asociado, en detrimento de otras partes interesadas en la Causa del Estado Libre Asociado iniciado al amparo del Título III.  Los tenedores de las Reclamaciones de Bonos Duplicadas no resultarán perjudicados por la desestimación de estas partes de sus reclamaciones pues las obligaciones asociadas con sus reclamaciones se encuentran subsumidas dentro de una o más Evidencias de Reclamaciones Maestras.

30.     Además, cada Reclamación de Bonos Duplicada pretende invocar una obligación asociada a uno o más bonos emitidos por el Estado Libre Asociado.  En cuanto a estas partes de las Reclamaciones de Bonos Duplicadas, el demandante conservará una reclamación remanente en el Caso del Estado Libre Asociado iniciado al amparo del Título III (en conjunto, las "Reclamaciones Remanentes"), tal como se identifican en la columna "Corregido" del **Anexo A** a la presente.  Dado que esta objeción no constituye una objeción a las Reclamaciones Remanentes,

los Deudores se reservan el derecho de objetar las Reclamaciones Remanentes fundándose en cualquier causal.

31.     En respaldo de lo expresado precedentemente, el Estado Libre Asociado se basa en la *Declaración de Jay Herriman, la cual fundamenta la Quincuagésima Novena Objeción Colectiva (no sustantiva) del Estado Libre Asociado de Puerto Rico contra Reclamaciones de Bonos Duplicadas*, del 6 de junio de 2019, que se adjunta a la presente como **Anexo B**.

## NOTIFICACIÓN

32.     De conformidad con los Procedimientos de Objeciones Colectivas y la Resolución del Tribunal que ordena la Notificación, el Estado Libre Asociado ha notificado de esta Quincuagésima Novena Objeción Colectiva a (a) los acreedores particulares comprendidos en la Quincuagésima Novena Objeción Colectiva, (b) el Síndico de Estados Unidos y (c) la Lista Maestra de Notificaciones (como se la define en  *la Resolución de Enmienda Adicional de los Procedimientos de Tramitación de Casos*  [ECF N° 3804]), que se encuentra disponible en el sitio web de casos de los Deudores, en https://cases.primeclerk.com/puertorico.  Se adjunta al presente como **Anexo C** una copia de la notificación de esta Quincuagésima Novena Objeción Colectiva. Las traducciones al español de la Quincuagésima Novena Objeción Colectiva y de todos los anexos adjuntos al presente se presentan conjuntamente con esta objeción y se notificarán a las partes.  El Estado Libre Asociado declara que, a la luz de la naturaleza del remedio solicitado, no es necesario cursar ninguna otra notificación adicional.

## RESERVA DE DERECHOS

33.     Esta Quincuagésima Novena Objeción Colectiva se limita a las causales que aquí se exponen.  Por consiguiente, la misma se presenta sin perjuicio de los derechos de los Deudores a objetar las Reclamaciones de Bonos Duplicadas u otras reclamaciones por cualquier otra causal. Los Deudores se reservan expresamente el derecho a presentar cualquier otra objeción sustantiva

o procesal.  Nada de lo contenido en la presente objeción o las acciones entabladas en pos de

obtener la reparación allí pretendida tiene por finalidad o debe interpretarse en el sentido de

constituir:  (a) una admisión de la validez de cualquier reclamación formulada contra los Deudores;

(b) una renuncia al derecho de los Deudores de disputar cualquier otra reclamación por cualquier

causal; (c) una promesa o intimación de pago de cualquier reclamación; (d) una solicitud o

autorización para asumir cualquier convenio, contrato o arrendamiento previo a la petición con

arreglo a la Sección 365 del Código de Quiebras; o (e) una renuncia a los derechos de los Deudores

en virtud de la ley PROMESA, el Código de Quiebras o cualquier otra ley aplicable.

## SIN SOLICITUD PREVIA

34.      No se ha presentado ninguna petición de remedio anterior en relación con esta

Quincuagésima Novena Objeción Colectiva ante este u otro tribunal.

POR LO TANTO, el Estado Libre Asociado solicita con todo respeto que se dicte una

resolución esencialmente en la forma de la Propuesta de Resolución adjuntada al presente como

**Anexo D**, (1) que otorgue el remedio aquí solicitado y (2) que le conceda al Estado Libre Asociado

cualquier otro remedio adicional según se considere justo.

Fecha: 6 de junio de 2019
San Juan, Puerto Rico

Presentado con el debido respeto,

*Firma en la versión en inglés*
Hermann D. Bauer
USDC N° 215205
Daniel J. Perez-Refojos
USDC N° 303909
**O'NEILL & BORGES LLC**
250 Muñoz Rivera Ave., Suite 800
San Juan, PR 00918-1813
Tel:  (787) 764-8181
Fax:  (787) 753-8944

Martin J. Bienenstock (*pro hac vice*)
Brian S. Rosen (*pro hac vice*)

**PROSKAUER ROSE LLP**
Eleven Times Square
New York, NY 10036
Tel:  (212) 969-3000
Fax:  (212) 969-2900

*Abogados de la Junta de Supervisión
y Administración Financiera en
carácter de representantes del
Estado Libre Asociado de Puerto
Rico*